# COMMONWEALTH OF PUERTO RICO

Basic Financial Statements
and Required Supplementary Information

June 30, 2017

(With Independent Auditors' Report Thereon)

DRA Ex. 242

**BASIC FINANCIAL STATEMENTS AND REQUIRED SUPPLEMENTARY INFORMATION**

**Fiscal Year Ended June 30, 2017**



**Commonwealth of Puerto Rico**

**Honorable Wanda Vázquez Garced**
**Governor**

Prepared by:

**Puerto Rico Department of the Treasury**

**Francisco *Parés* Alicea, CPA**
*Secretary of the Treasury*

**Angel *Pantoja* Rodríguez**
*Under Secretary of the Treasury*

**Alfonso *Rossy* Raíces, CPA**
*Assistant Secretary of Central Accounting*

**COMMONWEALTH OF PUERTO RICO**

**Table of Contents**

| | Page(s) |
|---|---|
| Independent Auditors' Report | 1–5 |
| Management's Discussion and Analysis (Unaudited) | 6–28 |
| Basic Financial Statements: | |
| Government-wide- Financial Statements: | |
| Statement of Net Position | 29–30 |
| Statement of Activities | 31–32 |
| Fund Financial Statements: | |
| Governmental Funds: | |
| Balance Sheet | 33 |
| Reconciliation of the Balance Sheet of Governmental Funds to the Statement of Net Position | 34 |
| Statement of Revenue, Expenditures, and Changes in Fund Balances | 35 |
| Reconciliation of the Statement of Revenue, Expenditures, and Changes in Fund Balances of Governmental Funds to the Statement of Activities | 36 |
| Proprietary Funds: | |
| Statement of Net Position | 37 |
| Statement of Revenues, Expenses, and Changes in Fund Net Position | 38 |
| Statement of Cash Flows | 39 |
| Fiduciary Funds: | |
| Statement of Fiduciary Net Position | 40 |
| Statement of Changes in Fiduciary Net Position – Pension (and Other Employee Benefit) Trust Funds | 41 |
| Discretely Presented Component Units: | |
| Combining Statement of Net Position | 42–43 |

# COMMONWEALTH OF PUERTO RICO

## Table of Contents

|  | Page(s) |
|---|---|
| Combining Statement of Activities | 44 |
| Notes to Basic Financial Statements | 45–277 |
| Required Supplementary Information (Unaudited): | |
| Schedule of Changes in Net Pension Liability for Single-Employer Pension Plans – TRS | 278 |
| Schedule of Changes in Net Pension Liability for Single-Employer Pension Plans – JRS | 279 |
| Schedule of Proportionate Share of the Net Pension Liability of a Cost-Sharing Multiple-Employer Pension Plan – ERS | 280 |
| Schedule of Employers' Contributions – All Pension Plans | 281 |
| Schedule of Funding Progress for the Postemployment Healthcare Plans | 282 |
| Schedule of Employers' Contributions for the Postemployment Healthcare Plans | 283 |
| Schedule of Revenue and Expenditures – Budget and Actual – Budgetary Basis – General Fund | 284 |
| Notes to Required Supplementary Information | 285–289 |
| Combining and Individual Fund financial Statements and Schedules | |
| General Fund: | |
| General Fund | 290 |
| Schedule of Expenditures by Agency – Budget and Actual – Budgetary Basis – General Fund | 291–293 |
| Nonmajor Governmental Funds: | |
| Nonmajor Governmental Funds | 294–296 |
| Combining Balance Sheet | 297–298 |
| Combining Statement of Revenue, Expenditures, and Changes in Fund Balances | 299–300 |
| Nonmajor Proprietary Funds: | |
| Nonmajor Proprietary Funds | 301 |

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

**Table of Contents**

|  | Page(s) |
|---|---|
| Combining Statement of Net Position | 302 |
| Combining Statement of Revenue, Expenditures, and Changes in Fund Net Position | 303 |
| Combining Statement of Cash Flows | 304 |
| Fiduciary Funds: | |
| Fiduciary Funds | 305–306 |
| Combining Statement of Fiduciary Net Position – Pension Trust Funds | 307 |
| Combining Statement of Changes in Fiduciary Net Position – (and Other Employee Benefit) Trust Funds | 308 |
| Combining Statement of Changes in Assets and Liabilities – Agency Funds | 309 |
| Nonmajor Discretely Presented Component Units: | |
| Nonmajor Discretely Presented Component Units | 310 |
| Combining Statement of Net Position | 311–317 |
| Combining Statement of Activities | 318 |

DRA Ex. 242



KPMG LLP
American International Plaza
Suite 1100
250 Muñoz Rivera Avenue
San Juan, PR 00918-1819

## Independent Auditors' Report

The Honorable Governor and Legislature
Commonwealth of Puerto Rico
San Juan, Puerto Rico

We have audited the accompanying financial statements of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the Commonwealth of Puerto Rico (the Commonwealth) as of and for the year ended June 30, 2017, and the related notes to the financial statements, which collectively comprise the Commonwealth's basic financial statements as listed in the table of contents.

### Management's Responsibility for the Financial Statements

Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

### Auditors' Responsibility

Our responsibility is to express opinions on these financial statements based on our audit. We did not audit the financial statements of the following entities and funds:

- *Governmental Activities*

  – Corporation of Industries for the Blind and Mentally Retarded and Incapacitated Persons of Puerto Rico, Office of Legislative Services, Office for the Improvement of Public Schools, Superintendence of the Capitol Building, Puerto Rico House of Representatives, Puerto Rico Senate, Puerto Rico Public Housing Administration, Puerto Rico Housing Finance Department – Sales and Acquisition Fund, and Puerto Rico Department of Economic Development and Commerce, which collectively represent 11.71% and 2.49% of the total assets and revenues, respectively, of the General Fund.

  – Puerto Rico Maritime Shipping Authority, Special Communities Perpetual Trust special revenue and debt service funds, Public Buildings Authority, University of Puerto Rico Comprehensive Cancer Center, Puerto Rico Infrastructure Financing Authority, The Children's Trust, Puerto Rico Fiscal Agency and Financial Advisory Authority, and Ponce Authority which are non-major governmental funds that represent 12.39% and 1.86% of the total assets and revenues, respectively, of the aggregate remaining fund information.

  These entities and funds collectively represent 49.90% and 2.61% of the total assets and revenues, respectively, of the governmental activities.

- *Business-Type Activities*

  – Unemployment Insurance Fund, which is a major enterprise fund.

  – Puerto Rico Health Insurance Administration, which is a major enterprise fund.

  – Puerto Rico Medical Services Administration, which is a major enterprise fund.

DRA Ex. 242



—  The Additional Lottery System, the Puerto Rico Water Pollution Control Revolving Fund, Puerto Rico
Safe Drinking Water Treatment Revolving Loan Fund, the Governing Board of 9-1-1 Services, Disability
Insurance Fund, Drivers' Insurance Fund, and Ponce Ports Authority which are non-major enterprise
funds that collectively represent 15.07% and 34.11% of the total assets and revenues, respectively, of
the aggregate remaining fund information.

These entities and funds collectively represent 87.05% and 89.72% of the total assets and revenues,
respectively, of the business-type activities.

- *Other Entities and Funds*

—  The Puerto Rico System of Annuities and Pensions for Teachers, which represents 14.48% and
16.07% of the total assets and revenues, respectively, of the aggregate remaining fund information.

- *Aggregate Discretely Presented Component Units*

The discretely presented component units listed in note 1(c) to the basic financial statements, except for
The Government Development Bank for Puerto Rico. These entities collectively represent 91.66% and
97.08% of the total assets and revenues, respectively, of the aggregate discretely presented component
units.

Those statements were audited by other auditors whose reports have been furnished to us, and our opinions,
insofar as they relate to the amounts included for the entities and funds indicated above, are based solely on
the reports of the other auditors. We conducted our audit in accordance with auditing standards generally
accepted in the United States of America. Those standards require that we plan and perform the audit to obtain
reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the
financial statements. The procedures selected depend on the auditors' judgment, including the assessment of
the risks of material misstatement of the financial statements, whether due to fraud or error. In making those
risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation
of the financial statements in order to design audit procedures that are appropriate in the circumstances, but
not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we
express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and
the reasonableness of significant accounting estimates made by management, as well as evaluating the overall
presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our
audit opinions.

**Opinions**

In our opinion, based on our audit and the reports of the other auditors, the financial statements referred to
above present fairly, in all material respects, the respective financial position of the governmental activities, the
business-type activities, the aggregate discretely presented component units, each major fund, and the
aggregate remaining fund information of the Commonwealth of Puerto Rico as of June 30, 2017, and the
respective changes in financial position and, where applicable, cash flows thereof for the year then ended in
accordance with U.S. generally accepted accounting principles.

**Emphasis of Matters**

Uncertainty About Ability to Continue as a Going Concern – Primary Government

The accompanying basic financial statements have been prepared assuming that the Commonwealth will
continue as a going concern. As discussed in note 2(a) to the basic financial statements, the Commonwealth is

2

DRA Ex. 242



in the midst of a fiscal, economic and liquidity crisis, an economic recession, high unemployment rate, a population decline, high levels of debt and pension related obligations, and has stated that substantial doubt exists about the Commonwealth's ability to continue as a going concern. Additionally, on May 3, 2017, the Financial Oversight and Management Board (the Oversight Board) at the request of the Governor, filed a petition for relief under Title III of the U.S. Congress Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA) in the United States District Court for the District of Puerto Rico. Management's evaluation of the events and conditions and management's plans regarding these matters are also described in note 2(a). The basic financial statements do not include any adjustments that might result from the outcome of this uncertainty. Our opinions on the basic financial statements are not modified with respect to this matter.

Uncertainty About Ability to Continue as a Going Concern – Retirement Systems

The accompanying basic financial statements have been prepared assuming that the retirement systems of the Commonwealth will continue as a going concern. As discussed in note 2(b) to the basic financial statements, the Employees' Retirement System of the Government of the Commonwealth of Puerto Rico, the Retirement System for the Judiciary of the Commonwealth of Puerto Rico, and the Puerto Rico System of Annuities and Pensions for Teachers are severely underfunded. In fiscal year 2018, each of the retirement systems sold most of their investments and started operating on a pay-as-you-go basis. Also, on May 3, 2017 and May 21, 2017, the Oversight Board commenced cases for the Commonwealth and the Employees' Retirement System of the Government of the Commonwealth of Puerto Rico, respectively, by filing petitions for relief under Title III of PROMESA. Accordingly, the Commonwealth has stated in note 2(b) to the basic financial statements that substantial doubt exists about each of the retirement systems' ability to continue as a going concern. The basic financial statements do not include any adjustments that might result from the outcome of these uncertainties. Our opinions on the basic financial statements are not modified with respect to these matters.

Uncertainty About Ability to Continue as a Going Concern – Major Discretely Presented Component Units

The accompanying basic financial statements have been prepared assuming that the major discretely presented component units of the Commonwealth will continue as a going concern. As discussed in note 2(c) to the basic financial statements, the Commonwealth has stated that substantial doubt exists for the following major discretely presented component units to continue as a going concern. Management's evaluation of the events and conditions and management's plans in regard to these matters are described in note 2(c) to the basic financial statements. The basic financial statements do not include any adjustments that might result from the outcome of these uncertainties. Our opinions on the basic financial statements are not modified with respect to these matters.

- *Government Development Bank for Puerto Rico (GDB)*

    The Commonwealth and its component units have not been able to repay their loans from the GDB, which has significantly affected the GDB's liquidity and ability to repay its obligations. Also, on March 23, 2018, the GDB ceased its operations and is currently winding down in an orderly fashion under Title VI of PROMESA.

- *Puerto Rico Highways and Transportation Authority (PRHTA)*

    The financial statements of PRHTA as of June 30, 2017 and for the year then ended were audited by other auditors, whose report thereon, dated December 14, 2018, included an emphasis of matter paragraph related to PRHTA's ability to continue as a going concern. As stated in PRHTA's independent auditors' report, PRHTA has had significant recurring losses from operations, does not have sufficient funds available to fully repay its various obligations as they come due, and has defaulted in the payments of principal and interest on multiple bond series and lines of credit. Also, on May 21, 2017, the Oversight Board, at the request of the Governor, commenced a case for PRHTA by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico.

DRA Ex. 242



- *Puerto Rico Electric Power Authority (PREPA)*

  The financial statements of PREPA as of June 30, 2017 and for the year then ended were audited by other auditors, whose report thereon, dated June 28, 2019, except for various notes as to which date is June 30, 2020, included an emphasis of matter paragraph related to PREPA's ability to continue as a going concern. As stated in PREPA's independent auditors' report, PREPA has an accumulated deficit of $6,2 billion at June 30, 2017 and due to liquidity constraints, during the year ended June 30, 2017, PREPA did not make the required deposits to the Sinking Fund, payments to current fuel lines of credit, notes payable and the complete portion of the required employer contribution to the Puerto Rico Electric Power Authority Employee Retirement System. Also, on July 2, 2017, the Oversight Board, at the request of the Governor, filed a petition on behalf of PREPA for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico.

- *Puerto Rico Aqueduct and Sewer Authority (PRASA)*

  The financial statements of PRASA as of June 30, 2017 and for the year then ended were audited by other auditors, whose report thereon, dated September 30, 2019, included an emphasis of matter paragraph related to PRASA's ability to continue as a going concern. As stated in PRASA's independent auditors' report, PRASA's relationship with the Commonwealth, credit downgrades, large non-discretionary capital expenditure requirements, and lack of access to the capital markets raise substantial doubt about its ability to continue as going concern.

- *University of Puerto Rico (UPR)*

  The financial statements of UPR as of June 30, 2017 and for the year then ended were audited by other auditors, whose report thereon, dated January 14, 2019, included an emphasis of matter paragraph related to UPR's ability to continue as a going concern. As stated in UPR's independent auditors' report, UPR is highly dependent on the Commonwealth's appropriations to finance its operations and recent developments have risen concern as to the potential withdrawal of the UPR's accreditation.

Restatement of Net Position and Fund Balance

As discussed in note 4 to the basic financial statements, the net position/fund balance of the governmental activities, the business-type activities, the Puerto Rico Health Insurance Administration Fund, the aggregate discretely presented component units, and the aggregate remaining funds have been restated as of July 1, 2016 to correct misstatements. Our opinions on the basic financial statements are not modified with respect to these matters.

**Other Matters**

Required Supplementary Information

U.S. generally accepted accounting principles require that the management's discussion and analysis on pages 6 through 28; the schedules of changes in the Commonwealth's net pension liability for single-employer pension plans on pages 278 and 279; the schedule of the Commonwealth's proportionate share of the net pension liability of the cost-sharing multiple-employer pension plan on page 280; the schedule of employers' contributions for all pension plans on page 281; the schedule of funding progress for the postemployment healthcare plans on page 282; the schedule of employers' contributions for the postemployment healthcare plans on page 283; and the schedule of revenue and expenditures – budget and actual–budgetary basis – General Fund on page 284, be presented to supplement the basic financial statements. Such information, although not a part of the basic financial statements, is required by the Governmental Accounting Standards Board who considers it to be an essential part of financial reporting for placing the basic financial statements in an appropriate operational, economic, or historical context. We and the other auditors have applied certain limited procedures to the required supplementary information in accordance with auditing standards generally accepted in the United States of America, which consisted of inquiries of management about the methods of

4

DRA Ex. 242



preparing the information and comparing the information for consistency with management's responses to our inquiries, the basic financial statements, and other knowledge we obtained during our audit of the basic financial statements. We do not express an opinion or provide any assurance on the information because the limited procedures do not provide us with sufficient evidence to express an opinion or provide any assurance.

Supplementary and Other Information

Our audit was conducted for the purpose of forming opinions on the financial statements that collectively comprise the Commonwealth's basic financial statements. The combining and individual fund financial statements and schedules listed in the accompanying table of contents are presented for purposes of additional analysis and are not a required part of the basic financial statements.

The combining and individual fund financial statements and schedules are the responsibility of management and were derived from and relate directly to the underlying accounting and other records used to prepare the basic financial statements. Such information has been subjected to the auditing procedures applied in the audit of the basic financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the basic financial statements or to the basic financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the combining and individual fund financial statements and schedules is fairly stated, in all material respects, in relation to the basic financial statements as a whole.

KPMG LLP

San Juan, Puerto Rico
August 31, 2020

Stamp No. E419633 of the Puerto Rico
Society of Certified Public Accountants
was affixed to the record copy of this report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

This management's discussion and analysis section (MD&A) provides a narrative overview and analysis of the financial activities of the Commonwealth of Puerto Rico (the Commonwealth) for the fiscal year ended June 30, 2017. The MD&A is intended to serve as an introduction to the Commonwealth basic financial statements, which have the following components: (1) Government-wide financial statements, (2) fund financial statements, and (3) notes to the basic financial statements. The MD&A is designed to (a) assist the reader in focusing on significant matters, (b) provide an overview of the Commonwealth's financial activities, (c) present an overview of results for the General Fund on a budgetary basis, and (d) highlight individual fund matters. The following presentation is by necessity highly summarized, and therefore, in order to gain a thorough understanding of the Commonwealth's financial condition, the basic financial statements, notes, and required supplementary information should be reviewed in their entirety.

**Financial Highlights**

- The Commonwealth's Primary Government, which encompasses the Commonwealth's Governmental and Business-type activities, reported, in the government-wide financial statements, a net deficit of approximately $71.1 billion at June 30, 2017, which was comprised of approximately $16 billion in total assets and approximately $8 billion in deferred outflows of resources, less approximately $94 billion in total liabilities and approximately $1.1 billion in deferred inflows of resources.

- The net deficit of the Commonwealth's Primary Government increased by approximately $391.5 million during fiscal year 2017. The net deficit for Governmental Activities increased by approximately $981.3 million and the net position for Business-type activities increased by approximately $589.8 million during the fiscal year 2017.

- The Commonwealth's Governmental Activities had total revenue of approximately $18 billion for fiscal year 2017, which was lower than total expenses of approximately $18.3 billion. The Commonwealth's Business-type activities had total revenue of approximately $3.2 billion for fiscal year 2017, which represented a decrease of approximately $191.2 million when compared to fiscal year 2016.

- The Commonwealth's Primary Government had total expenses of approximately $21.6 billion in fiscal year 2017, which included expenses of approximately $3.3 billion incurred by Business-type activities, which represented a decrease of approximately $2.6 billion when compared to total expenses incurred during fiscal year 2016 (as restated).

- For fiscal year 2017, the total excess of revenue over expenditures in the General Fund (budgetary basis) was approximately $577.2 million. It consisted of the difference between total actual revenue of approximately $9.2 billion (excluding other financing sources), less total actual expenditures of approximately $8.6 billion. The variance between the U.S. generally accepted accounting principles (U.S. GAAP) and budgetary basis deficits results from differences of accounting, entity, and perspective differences between budgetary reporting versus those established by U.S. GAAP and followed in these basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

The Commonwealth's management believes that as of June 30, 2017 there is substantial doubt as to the ability of the Primary Government to continue as a going concern in accordance with Governmental Accounting Standards Board (GASB) Statement No. 56, *Codification of Accounting and Financial Reporting Guidance Contained in the AICPA Statements on Auditing Standards.* In addition, the Commonwealth's pension trust funds, included as part of the fiduciary funds, are severely underfunded. As a result of the fiscal difficulties faced by the Commonwealth, on May 3, 2017 the Financial Oversight and Management Board for Puerto Rico (the Oversight Board), at the request of the Commonwealth, filed a petition for relief under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA). For additional information regarding going concern, uncertainties and liquidity risk, refer to Note 2 and Note 3.

**Reporting the Commonwealth as a Whole**

The Commonwealth consists of all departments, agencies, funds, functions, and public corporations that have been determined to meet the requirements for inclusion in the Commonwealth's financial reporting entity. The Commonwealth has considered all potential discretely presented component units for which it is financially accountable and other organizations for which the nature and significance of their relationship with the Commonwealth is such that exclusion would cause the Commonwealth's basic financial statements to be misleading or incomplete. As noted above, the Commonwealth's basic financial statements consist of four components: (i) government-wide financial statements, (ii) fund financial statements, (iii) discretely presented component unit's financial statements, and (iv) notes to the basic financial statements. The fund financial statements include governmental, proprietary, and fiduciary types of funds that will be described later in this MD&A. The notes to the basic financial statements provide explanations and/or additional detail for all of the above types of financial statements and are considered an integral part of the basic financial statements.

The following table summarizes the major features of the basic financial statements:

| | Government-Wide Financial Statements | Fund Financial Statements | | |
| --- | --- | --- | --- | --- |
| | | Governmental Funds | Proprietary Funds | Fiduciary Funds |
| Scope | Governmental activities, business type activities and discretely presented component units. | The activities of the Commonwealth that are not proprietary or fiduciary, including education, health, public safety services, among others. | Activities of the Commonwealth that operate similar to private businesses, including Lotteries. | Instances in which the Commonwealth is the trustee or agent for someone else's resources, such as the retirement plans for public employees. |
| Required financial statements | Statement of net position and statement of activities. | Balance sheet and statement of revenue, expenditures, and changes in fund balances. | Statement of net position; statement of revenue, expenses and changes in fund net position; and statement of cash flows. | Statement of fiduciary net position and statement of changes in fiduciary net position. |

7

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

| | Government-Wide Financial Statements | Fund Financial Statements | | |
| --- | --- | --- | --- | --- |
| | | Governmental Funds | Proprietary Funds | Fiduciary Funds |
| Accounting basis and measurement focus | Accrual basis and economic resources measurement focus. | Modified accrual basis and current financial resources measurement focus. | Accrual basis and economic resources measurement focus. | Accrual basis and economic resources measurement focus. |
| Type of asset/liability information | All assets and liabilities, both financial and capital, and both short-term and long-term. | Only assets expected to be used up and liabilities that come due during the year or soon thereafter; no capital assets or long-term obligations are included. | All assets and liabilities, both financial and capital, and both short-term and long-term. | All assets and liabilities, both financial and capital, and both short-term and long-term. |
| Type of inflow/outflow information | All revenue and expenses during the year, regardless of when cash is received or paid. | Revenue for which cash is received during the year or soon after the end of the year; expenditures when goods or services have been received and payment is due during the year or soon thereafter. | All revenue and expenses during the year, regardless of when cash is received or paid. | All revenue and expenses during the year, regardless of when cash is received or paid. |

**Government-wide Financial Statements**

The government-wide financial statements provide readers a broad view of the Commonwealth's operations in a manner similar to a private-sector business. The statements provide both short and long-term information about the Commonwealth's financial position, which assists in assessing the Commonwealth's economic condition at the end of the fiscal year. These are prepared using the economic resources measurement focus and the full accrual basis of accounting. This means they follow methods that are similar to those used by most private businesses. They take into account all revenue and expenses connected with the fiscal year even if cash involved has not been received or paid.

The government-wide financial statements include two statements:

- *Statement of Net Position* – This statement presents all of the government's assets, liabilities, and deferred outflows and inflows of resources. Net position is the difference between (a) assets and deferred outflows of resources and (b) liabilities and deferred inflows of resources. Over time, increases or decreases in the Commonwealth's net position may serve as a useful indicator of whether the financial position of the Commonwealth is improving or deteriorating.

8

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

- ***Statement of Activities*** – This statement presents information showing how the Primary Government's and its discretely presented component units' net position changed during the most recent fiscal year. All changes in net position are reported as soon as the underlying event giving rise to the change occurs, regardless of the timing of related cash flows. Thus, revenue and expenses are reported in this statement for some items that will not result in cash flows until future fiscal periods (such as uncollected taxes and earned but unused vacation leave). This statement also presents a comparison between direct expenses and program revenue for each function of the Commonwealth.

The Commonwealth's net position is one way to measure whether the Commonwealth's financial health is improving or deteriorating, but other nonfinancial factors, such as changes in the Commonwealth tax structure, population, employment, debt levels, fiscal conditions, economic factors, availability to external markets and the condition of the Commonwealth's roads, bridges and buildings, must also be taken into account in order to assess the overall health of the Commonwealth.

In the statement of net position and the statement of activities, the operations of the Commonwealth are divided into the following activities:

- ***Governmental Activities*** – Most of the Commonwealth's basic services are reported here, including education, health, public housing and welfare, public safety, economic development, general government and interest on long-term debt. Federal grants (intergovernmental), personal and corporate income taxes, consumption and use taxes, business and other taxes, transfers from lottery revenues, and bond or loan proceeds finance most of these activities. Also included in Governmental Activities are twelve blended component units, which are entities that, while legally separate from the Commonwealth, meet the blending criteria under GASB to be reported as part of the Primary Government.

- ***Business-type Activities*** – These activities are normally intended to recover all or a significant portion of their costs through user fees and charges to external users of goods and services. These Business-type activities of the Commonwealth include the operations of the following major funds: the Unemployment Insurance Trust Fund, the Puerto Rico Health Insurance Administration (PRHIA), and the Puerto Rico Medical Services Administration (PRMeSA).

- ***Discretely Presented Component Units*** – Although legally separate from the Commonwealth, these discretely presented component units are important to the Commonwealth because the Commonwealth is financially accountable for them or the nature and significance of their relationship with the Commonwealth are such that their exclusion would cause the Commonwealth's basic financial statements to be misleading or incomplete. Discretely presented component units, presented in a separate column in these basic financial statements, are discretely presented principally because of the nature of the services they provide, the Commonwealth's ability to impose its will, principally through the appointment of their governing authorities, and because such discretely presented component units provide specific financial benefits to, or impose financial burdens on, the Commonwealth. The Commonwealth classifies 45 separate legal entities as discretely presented component units, as disclosed in Note 1 to the basic financial statements.

The government-wide financial statements can be found immediately following this MD&A.

**Governmental and Proprietary Fund Financial Statements**

Financial statements prepared at the fund level provide additional details about the Commonwealth's financial position and activities. A fund is a grouping of related accounts that is used to maintain control over resources that have been segregated for specific activities or objectives. The Commonwealth uses fund accounting to help ensure and demonstrate compliance with finance-related legal requirements. The fund financial statements focus

9

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

on individual parts of the Commonwealth government, reporting the Commonwealth's operations in more detail than the government-wide financial statements. Information presented in the fund financial statements differs from the information presented in the government-wide financial statements because the perspective and basis of accounting used to prepare the fund financial statements are different from the perspective and basis of accounting used to prepare the government-wide financial statements. The Commonwealth's governmental and proprietary funds types use different perspectives and accounting basis. The funds presented in the fund financial statements are categorized as either major or nonmajor funds as required by U.S. GAAP. All of the funds of the Commonwealth can be divided into the following categories:

- **Governmental Funds** – Most of the basic services provided by the Commonwealth are financed through governmental funds. Governmental funds are used to account for essentially the same functions reported as Governmental Activities in the government-wide financial statements. However, unlike the government-wide financial statements that use the full accrual basis of accounting, the governmental funds financial statements use a modified accrual basis of accounting (also known as the current financial resources measurement focus), which focuses on near-term inflows and outflows of expendable resources. This information may be useful in evaluating the government's near-term financing requirements. These statements provide a detailed short-term view of the Commonwealth's finances and assist in determining whether there will be adequate financial resources available to meet the current needs of the Commonwealth. Since the focus of governmental funds is narrower than that of the government-wide financial statements, it is useful to compare the information presented for governmental funds with similar information presented for the Governmental Activities in the government-wide financial statements. By comparing the governmental funds financial statements to the Governmental Activities in the government-wide financial statements, readers may better understand the long-term impact of the government's near-term financing decisions. Both the governmental funds balance sheet and the governmental fund statement of revenue, expenditures, and changes in fund balances provide a reconciliation to facilitate this comparison between governmental funds and the Governmental Activities. These reconciliations are presented on the page immediately following each governmental fund financial statement.

The Commonwealth has four major governmental funds. That is, each major fund is presented in a separate column in the governmental funds balance sheet and in the governmental funds statement of revenue, expenditures, and changes in fund balances. The Commonwealth's four major governmental funds are:

- General Fund [1]
- Debt Service Fund
- COFINA Special Revenue Fund
- COFINA Debt Service Fund

The remaining nonmajor governmental funds, which consist of funds from the blending of the Ponce Authority (PA), Public Buildings Authority (PBA), Puerto Rico Infrastructure Financing Authority (PRIFA), Puerto Rico Fiscal

---

[1] The General Fund is the primary operating fund of the Commonwealth. The financial resources received and used in the General Fund mostly includes: the General Fund budgeted resources, as approved by the Legislature of Puerto Rico (the Legislature) and as adjusted for timing and basis of accounting differences, and other financial resources outside the General Fund budget such as: federal funds, pledged funds, resources that otherwise would be accounted for in special revenue funds, and agencies with independent treasuries.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

Agency and Financial Advisory Authority (FAFAA), Puerto Rico Maritime Shipping Authority (PRMSA), Special Communities Perpetual Trust (SCPT), The Children's Trust, University of Puerto Rico Comprehensive Cancer Center (UPRCCC), blended component units, and the Commonwealth's capital project funds, which are grouped and presented in a single column in the governmental funds financial statements. The basic governmental funds financial statements can be found immediately following the government-wide financial statements.

- ***Proprietary Funds*** – These funds are used to show activities that operate more like those of commercial enterprises. Because these funds charge fees for services provided to outside customers, including local governments, they are also known as enterprise funds. Proprietary funds provide the same type of information as the Business-type activities in the government-wide financial statements, but in more detail. As with government-wide financial statements, proprietary funds financial statements use the full accrual basis of accounting. There is no reconciliation needed between the government-wide financial statements for Business-type activities and the proprietary funds financial statements.

The Commonwealth has three major proprietary funds:

- Unemployment Insurance Fund

- Puerto Rico Health Insurance Administration (PRHIA)

- Puerto Rico Medical Service Administration (PRMeSA)

Other nonmajor proprietary funds consist of the Disability Insurance Fund, Drivers' Insurance Fund, the Lotteries Fund, which includes the Lottery of Puerto Rico and the Additional Lottery System, Puerto Rico Water Pollution Control Revolving Fund (PRWPCRF), Puerto Rico Safe Drinking Water Treatment Revolving Loan Fund (PRSDWTRLF), Ponce Ports Authority (PPA), and the Bureau of Emergency Services 9-1-1 which are grouped and presented in a separate column in the proprietary funds' financial statements. The basic proprietary funds financial statements can be found immediately following the governmental funds financial statements.

**Fiduciary Funds**

The Commonwealth is a trustee, or fiduciary, for its employees' pension plans. It is also responsible for other assets that, because of a trust arrangement, can be used only for the trust beneficiaries. All the Commonwealth fiduciary activities are reported in a separate statement of fiduciary net position and of changes in fiduciary net position. The Commonwealth excluded these activities from the Commonwealth government-wide financial statements because the Commonwealth cannot use these assets to finance its operations. The Commonwealth is responsible for ensuring that the assets reported in these funds are used for their intended purposes.

*New Plan for Defined Contributions for Public Servants*

On August 23, 2017, Act No. 106-2017 was signed into law to guarantee the payment to pensioners by the Commonwealth and establish a new plan for defined contributions for public servants, reformed the Commonwealth's pensions by replacing the governing boards of the Retirement Systems with a single Retirement Board of the Commonwealth of Puerto Rico (Retirement Board) and established a separate "account for the payment of accrued pensions" to implement a "pay-as-you-go" (PayGo) method by which pension benefits would be paid by the Commonwealth. Act No. 106-2017 created the legal framework so that the Commonwealth can guarantee payments to pensioners through the PayGo system.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

**Notes to Basic Financial Statements**

The notes provide additional information that is essential to a full understanding of the data provided in the government-wide and the fund financial statements. The notes to the basic financial statements can be found immediately following the major discretely presented component units' combining financial statements.

**Required Supplementary Information/Supplementary and Other Information (Unaudited)**

The basic financial statements include a section of required supplementary information and other information immediately following its notes. This section includes information of funding progress and employer contributions for the Commonwealth's three separate retirement systems, including postemployment healthcare benefits, schedule of revenue and expenditures – budget and actual – budgetary basis – General Fund, supplemental schedule of expenditures by agency – budget and actual – budgetary basis – General Fund, and combining schedules for nonmajor governmental funds, nonmajor proprietary funds, fiduciary funds, and nonmajor discretely presented component units.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

**Overall Financial Position and Results of Operations (Government-wide financial statements)**

The following is an analysis of the financial position and changes in the financial position of the Commonwealth's Governmental Activities and Business-type activities for fiscal year 2017.

*Net Position*

Condensed financial information from the statement of net position as of June 30, 2017 and 2016 is as follows (in thousands):

| | Governmental Activities | | Business-type Activities | | Primary Government | |
|---|---|---|---|---|---|---|
| | 2017 | 2016 (As restated) | 2017 | 2016 (As restated) | 2017 | 2016 (As restated) |
| **Assets:** | | | | | | |
| Non-capital assets: | | | | | | |
| Cash and investments | $ 3,349,971 | 1,650,464 | 973,603 | 793,954 | 4,323,574 | 2,444,418 |
| Receivables, net | 2,234,363 | 2,366,880 | 721,738 | 332,490 | 2,956,101 | 2,699,370 |
| Other | 99,943 | 103,161 | 46,800 | 46,877 | 146,743 | 150,038 |
| Total non-capital assets | 5,684,277 | 4,120,505 | 1,742,141 | 1,173,321 | 7,426,418 | 5,293,826 |
| Capital Assets | 8,474,221 | 8,701,952 | 89,255 | 93,170 | 8,563,476 | 8,795,122 |
| Total assets | 14,158,498 | 12,822,457 | 1,831,396 | 1,266,491 | 15,989,894 | 14,088,948 |
| **Deferred outflows of resources** | 7,753,769 | 4,806,271 | 197,866 | 153,265 | 7,951,635 | 4,959,536 |
| **Liabilities:** | | | | | | |
| Long-term liabilities | 87,087,621 | 82,929,108 | 1,661,943 | 1,659,087 | 88,749,564 | 84,588,195 |
| Other liabilities | 4,861,044 | 3,652,882 | 282,552 | 268,610 | 5,143,596 | 3,921,492 |
| Total liabilities | 91,948,665 | 86,581,990 | 1,944,495 | 1,927,697 | 93,893,160 | 88,509,687 |
| **Deferred inflows of resources** | 1,093,202 | 1,195,046 | 15,498 | 12,550 | 1,108,700 | 1,207,596 |
| **Net Position:** | | | | | | |
| Net investment in capital assets | 2,614,500 | 3,204,827 | 69,993 | 75,020 | 2,684,493 | 3,279,847 |
| Restricted | 343,550 | 346,399 | 1,025,530 | 536,152 | 1,369,080 | 882,551 |
| Unrestricted (deficit) | (74,087,650) | (73,699,534) | (1,026,254) | (1,131,663) | (75,113,904) | (74,831,197) |
| Total net position (deficit) | $ (71,129,600) | (70,148,308) | 69,269 | (520,491) | (71,060,331) | (70,668,799) |

Governmental entities are required by U.S. GAAP to report on their net position. The statement of net position presents the value of all of the Commonwealth's assets and deferred outflows of resources, and liabilities and deferred inflows of resources, with the difference between them reported as net position.

Net position (deficit) may serve over time as a useful indicator of a government's financial position. Total assets plus deferred outflows of resources and total liabilities plus deferred inflows of resources of the Primary Government as of June 30, 2017 amounted to approximately $24 billion and $95.1 billion, respectively, for a net deficit of approximately $71.1 billion as of June 30, 2017, compared to a net deficit of approximately $70.7 billion as of June 30, 2016 (as restated).

13

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

Net position (deficit) for Governmental Activities increased by approximately $981.3 million for fiscal year 2017, increasing to approximately $71.1 billion at June 30, 2017 from approximately $70.1 billion at June 30, 2016 (as restated). The unrestricted deficit for Governmental Activities – that part of net position that can be used to finance day-to-day governmental operations without constraints established by debt covenants, enabling legislation, or other legal requirements – had a deficit of approximately $74.1 billion as of June 30, 2017. The unrestricted deficit in Governmental Activities, which increased by approximately $388.1 million, exists primarily because of excessive operating expenses in disparity with actual revenues. This deficit can be expected to continue for as long as the Commonwealth continues to have obligations outstanding for purposes other than the acquisition of governmental capital assets. The statement of net position in Governmental Activities reflects outstanding bonds and notes amounting to approximately $40.8 billion and net pension liability amounting to approximately $42.5 billion as of June 30, 2017, as compared to outstanding bonds and notes amounting to approximately $40.3 billion and net pension liability amounting to approximately $36.9 billion as of June 30, 2016.

A portion of the Commonwealth's net position reflects its investment in capital assets such as land, buildings, and equipment, less any related debt used to acquire those assets. The Commonwealth uses these capital assets to provide services to its residents; consequently, these assets are not available for future spending, and except for Business-type assets, do not generate direct revenue for the Commonwealth. They do represent, however, an obligation on the part of the Commonwealth to maintain these assets into the future. Although the Commonwealth investment in its capital assets is reported net of related debt, it should be noted that the resources needed to repay this debt must be provided from other sources, since most of the capital assets themselves cannot be used to liquidate these liabilities.

The net position in Business-type activities increased by approximately $589.8 million in fiscal year 2017 when compared to fiscal year 2016 (as restated), from approximately a $520.5 million net deficit at June 30, 2016 to approximately a $69.3 million net position at June 30, 2017. The principal reason for the increase in net position is related to the recognition of a recovery of provision of loan losses of approximately $434.4 million of the State Revolving Funds.

14

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

## Statements of Activities and Results of Operations

Condensed financial information of the statements of activities for the years ended June 30, 2017 and 2016 is as follows (in thousands):

| | | Governmental Activities | | Business-type Activities | | Primary Government | |
|---|---|---|---|---|---|---|---|
| | | 2017 | 2016 (As restated) | 2017 | 2016 (As restated) | 2017 | 2016 (As restated) |
| **Revenue:** | | | | | | | |
| Program revenue: | | | | | | | |
| Charges for services | $ | 798,924 | 821,092 | 1,288,849 | 1,621,440 | 2,087,773 | 2,442,532 |
| Operating grants and contributions | | 6,238,213 | 6,446,731 | 1,874,790 | 1,739,479 | 8,113,003 | 8,186,210 |
| Capital grants and contributions | | 84,033 | 73,189 | — | — | 84,033 | 73,189 |
| | | 7,121,170 | 7,341,012 | 3,163,639 | 3,360,919 | 10,284,809 | 10,701,931 |
| General revenue: | | | | | | | |
| Taxes | | 10,498,158 | 10,314,767 | — | — | 10,498,158 | 10,314,767 |
| Revenue from global tobacco | | | | | | | |
| settlement agreement | | 72,266 | 70,665 | — | — | 72,266 | 70,665 |
| Revenue from component units | | 75,118 | 265,357 | — | — | 75,118 | 265,357 |
| Other, including (loss) on investments | | 277,600 | 302,569 | 22,999 | 16,956 | 300,599 | 319,525 |
| | | 10,923,142 | 10,953,358 | 22,999 | 16,956 | 10,946,141 | 10,970,314 |
| **Total revenue** | | 18,044,312 | 18,294,370 | 3,186,638 | 3,377,875 | 21,230,950 | 21,672,245 |
| **Expenses:** | | | | | | | |
| General government | | 2,324,564 | 3,697,913 | — | — | 2,324,564 | 3,697,913 |
| Public safety | | 1,889,296 | 2,071,961 | — | — | 1,889,296 | 2,071,961 |
| Health | | 2,704,463 | 3,080,551 | — | — | 2,704,463 | 3,080,551 |
| Public housing and welfare | | 3,464,039 | 3,314,500 | — | — | 3,464,039 | 3,314,500 |
| Education | | 4,285,123 | 3,724,041 | — | — | 4,285,123 | 3,724,041 |
| Economic development | | 815,469 | 1,026,935 | — | — | 815,469 | 1,026,935 |
| Intergovernmental | | 397,993 | 554,429 | — | — | 397,993 | 554,429 |
| Interest and other | | 2,420,007 | 2,086,720 | — | — | 2,420,007 | 2,086,720 |
| Unemployment insurance | | — | — | 122,642 | 139,993 | 122,642 | 139,993 |
| Puerto Rico Health Insurance Administration | | — | — | 2,791,508 | 2,860,076 | 2,791,508 | 2,860,076 |
| Puerto Rico Medical Services Administration | | — | — | 232,589 | 279,976 | 232,589 | 279,976 |
| Nonmajor proprietary funds | | — | — | 174,789 | 1,356,139 | 174,789 | 1,356,139 |
| **Total expenses** | | 18,300,954 | 19,557,050 | 3,321,528 | 4,636,184 | 21,622,482 | 24,193,234 |
| Increase (decrease) in net | | | | | | | |
| position before transfers | | (256,642) | (1,262,680) | (134,890) | (1,258,309) | (391,532) | (2,520,989) |
| **Transfers** | | (724,650) | (673,258) | 724,650 | 673,258 | — | — |
| **Change in net position** | | (981,292) | (1,935,938) | 589,760 | (585,051) | (391,532) | (2,520,989) |
| Net position (deficit), beginning of year, | | | | | | | |
| as adjusted (note 4) | | (70,148,308) | (68,212,370) | (520,491) | 64,560 | (70,668,799) | (68,147,810) |
| Net position (deficit), end of year | $ | (71,129,600) | (70,148,308) | 69,269 | (520,491) | (71,060,331) | (70,668,799) |

15

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

As described above, the Governmental Activities net deficit position increased from approximately $70.1 billion at June 30, 2016 (as restated) to approximately $71.1 billion at June 30, 2017, an increase of approximately $981.3 million. The increase in total net deficit position is mainly due to an increase in pension expense related to changes in net pension liability, deferred inflow and outflow of resources of approximately $600 million when compared with prior year related expense. Approximately 58% of the Governmental Activities' revenue came from taxes, while approximately 35% resulted from grants and contributions (primarily federal financial assistance). Charges for services represented approximately 4% of total revenue. The Governmental Activities' expenses cover a range of governmental services. The largest expenses were for education 23% of total expenses, public housing and welfare 18% of total expenses, general government 12% of total expenses, health 14% of total expenses, and public safety 10% of total expenses. In fiscal year 2017, Governmental Activities' expenses, which amounted to approximately $18.3 billion, were funded by approximately $11 billion in general revenue, and approximately $7.1 billion in program revenue (comprised primarily of federal financial assistance). Also, the implementation of Act No. 66-2014, known as the "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act "contributed to a reduction in expenses in areas such as:

- Reduction in payroll and payroll related expenses.

- Freeze formula-base contributions to the University of Puerto Rico, the Commonwealth's Judicial Branch and the Municipalities.

- Reduction in education expenses, such as, a reduction in school transportation services, payroll savings on account of teacher's retirement system and no contracting to fill vacancies.

- Reduction of special appropriations.

- Elimination of certain subsidies to programs or operations of discretely presented component units.

Total revenue from Governmental Activities for fiscal year 2017 decreased by approximately $250 million compared to fiscal year 2016. This decrease is mainly related to a decrease in operating grants and contributions and revenue from discretely presented component units. The Commonwealth suffers from a fiscal, economic and liquidity crisis, an economic recession (which commenced in 2006), a high unemployment rate, a population decline, and a high level of debt and pension-related obligations.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

**Revenues – Governmental Activities**



**Expenses – Governmental Activities**



DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

Business-type activities' total net position increased by approximately $589.8 million from the total net position at June 30, 2016. Approximately 40% of the Business-type activities total revenue came from charges for services, while approximately 59% resulted from grants and contributions (primarily federal financial assistance). Business-type activities expenses cover a range of services. The largest expenses were for lotteries and Health Insurance Administration. In fiscal year 2017, Business-type Activities' total expenses exceeded revenue by approximately $134.9 million. The excess of expenses over revenue in fiscal year 2017 was decreased by net transfers from other funds, mainly by the Governmental Activities, amounting to approximately $724.7 million. Total expenses decreased by approximately $1.3 billion in comparison with prior year expenses mainly for the recognition of a custodial credit loss and a loan receivable impairment of approximately $630 million in fiscal year 2016.

**Governmental Funds**

The governmental funds financial statements provide information on near-term inflows, outflows, and balances of expendable resources. Such information is useful in assessing the Commonwealth's financing requirements. In particular, unassigned fund balance may serve as a useful measure of a government's net resources available for spending at the end of the fiscal year. As of June 30, 2017, the Commonwealth's governmental funds, which include the General Fund, the Debt Service Fund, the COFINA Special Revenue Fund, the COFINA Debt Service Fund, and nonmajor governmental funds, reported a combined ending deficit of approximately $558.3 million. In fiscal year 2017, revenue in these governmental funds exceeded expenditures by approximately $463.1 million. However, this excess of revenue over expenditures was offset by other financing uses totaling approximately $716.7 million in the governmental funds. For fiscal year 2017, the excess of revenue over expenditures decreased by approximately $983.5 million when compared with the prior year, primarily as a result of a decrease in income tax and intergovernmental revenue of approximately $646.3 million.

The General Fund is the chief operating fund of the Commonwealth. At the end of fiscal year 2017, the General Fund, which encompasses other financial resources outside the General Fund budget such as federal funds, pledged funds, special revenue funds, and agencies with independent treasuries, had a total fund deficit of approximately $100.6 million. The fund balance (deficit) of the Commonwealth's General Fund decreased by approximately $1.1 billion as a result of the fiscal year's change in financial position. The non-payments of general obligation bonds due during fiscal year 2017 of approximately $1.2 billion are the main reason for the increase in the fund balance (deficit).

The Debt Service Fund is the fund in which the Commonwealth accumulates the resources for the payment of the long-term general obligations debt. The net change in fund balance of the debt service fund decreased by approximately $1.1 billion in fiscal year 2017, and the fund deficit at the end of year decreased to approximately $866.9 million at June 30, 2017. Bonds and interest payable during fiscal year 2017 increased by approximately $1.2 billion when compared with fiscal year 2016 as a result of the non-payment of general obligation bonds due during fiscal year 2017. However, as of the commencement of the Commonwealth's Title III case on May 3, 2017, interest stopped accruing on the Commonwealth's bonds and other indebtedness. Therefore, the accounting treatment of the Commonwealth's accrued interest may have to change after the Commonwealth debts are adjusted under a Title III plan of adjustment.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

The COFINA Special Revenue Fund is used to account for and report all financial resources of the Puerto Rico Sales Tax Financing Corporation (COFINA). The fund balance of the COFINA Special Revenue Fund increased by approximately $6.4 million in fiscal year 2017, increasing to a fund balance of approximately $6.3 million at June 30, 2017. The COFINA Debt Service Fund is used to account for the Commonwealth sales tax revenue being deposited in the Dedicated Sales Tax Fund for the payment of interest and principal on long-term obligations of COFINA. The fund balance of the COFINA Debt Service Fund decreased by approximately $6.1 million during fiscal year 2017, to approximately $441.8 million at June 30, 2017. COFINA had its debts adjusted under the COFINA Plan of Adjustment pursuant to Title III of PROMESA.

**Proprietary Funds**

The Commonwealth's enterprise funds provide the same type of information presented in the business-type activities in the government-wide financial statements, but in more detail. The Unemployment Insurance Fund's total net position balance increased from approximately $480.6 million at June 30, 2016 to approximately $536.5 million at June 30, 2017, an increase of approximately $55.9 million in one year. Expenses from the fund for unemployment benefits decreased by approximately $17.3 million, as compared to fiscal year 2016.

The PRHIA enterprise fund total net position decreased from a deficit of approximately $139.7 million at June 30, 2016 (as restated) to a deficit of approximately $7.3 million at June 30, 2017, a decrease of approximately $132.4 million. Expenses from the fund for medical premiums and claims decreased by approximately $73 million, as compared to fiscal year 2016.

The PRMeSA enterprise fund net position increased from a deficit of approximately $873.2 million at June 30, 2016 to a deficit of approximately $943.4 million at June 30, 2017, an increase of approximately $70.2 million. During fiscal years 2016 and 2017 the fund has experienced operating losses of approximately $126.1 million and $86.4 million, respectively.

**Fiduciary Funds**

The Commonwealth's fiduciary funds account for resources held for the benefit of parties outside the government. The Pension (and other employee benefits) trusts' net position decreased by approximately $1.2 billion to $1.6 billion at June 30, 2017. For more information regarding the Commonwealth's retirement and other post-employment benefits plans, see Note 18 and Note 19 to the basic financial statements.

**General Fund Budgetary Highlights**

The Commonwealth Constitution requires the Governor of Puerto Rico (the Governor) to submit a balanced budget that contains a plan of expenditures for the ensuing fiscal year and identifies the anticipated revenues and other resources enough to meet the proposed expenditures. The Commonwealth adopts an annual appropriations budget for its General Fund. A budgetary comparison schedule has been provided on page 284 as required supplementary information for the General Fund to demonstrate compliance with this budget. The schedule of revenue and expenditures – budget and actual – budgetary basis – General Fund presents only the information for the General Fund for which there is a legally adopted budget, as required by U.S. GAAP.

Total General Fund actual revenue on a budgetary basis for fiscal year 2017 was approximately $9.2 billion (excluding other financing sources), representing an increase of approximately $222.8 million, or 2.5%, from original budgeted revenue and an increase of approximately $183 million or 2% from actual revenue of approximately $9 billion for fiscal year 2016.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

Total General Fund actual expenditures on a budgetary basis for fiscal year 2017 were approximately $8.6 billion, representing a decrease of $361.4 million or 4% from original budgeted expenses and an increase of approximately $331.8 million or 4% from actual expenditures of approximately $8.3 billion for fiscal year 2016.

For fiscal year 2017, the budgeted excess of revenue over expenditures (budgetary basis) was approximately $577 million, consisting of the difference between total actual revenue of approximately $9.2 billion and total actual expenditures of approximately $8.6 billion. For fiscal year 2016, the excess of revenue over expenditures (budgetary basis) was approximately $726 million, consisting of the difference between total actual revenue of approximately $9 billion and total actual expenditures of approximately $8.3 billion. The budgeted excess of revenue over expenditures (budgetary basis) for fiscal year 2017 decreased by approximately $149 million when compared to the surplus of fiscal year 2016 and increased by approximately $451 million when compared to the excess of revenue over expenditures (budgetary basis) of approximately $126 million in fiscal year 2015.

For fiscal year 2017, the total excess of revenue over expenditures in the General Fund (budgetary basis) was approximately $577 million. It consisted of the difference between actual revenue of approximately $9.2 billion (excluding other financing sources), less of total expenditures of approximately $8.6 billion. This surplus of approximately $577 million in the General Fund (budgetary basis) differs from the excess of revenue over expenditures in the General Fund on a modified accrual basis (U.S. GAAP) of approximately $2.3 billion, which was offset by approximately $1.1 billion in other financing uses, principally consisting of transfers to other funds, for a resulting net increase in fund balances of approximately $1.1 billion for the fiscal year 2017. The variance between the U.S. GAAP and budgetary basis deficiency results from differences in the basis of accounting, and perspective differences between budgetary reporting versus those established by U.S. GAAP and followed in these basic financial statements. Examples of such differences include: (i) recognition of proceeds of long-term debt issued as other financing sources, (ii) recognition of receivables (revenue) for reimbursements of expenses allocated to federal funds, (iii) the recognition of revenue and expenditures of entities with independent treasuries, (iv) expenditures incurred in nonbudgetary funds (special revenue funds, internal revenue funds, and other funds), which were not included in the General Fund Budget, and (v) timing differences in basis of accounting such as (a) the recognition of receivables on income and corporate taxes and (b) recognition of expenditure accruals. A reconciliation is presented on page 289 in the notes to required supplementary information section. The Commonwealth's ability to continue reducing the deficit will depend in part on its ability to continue raising revenues and reducing expenditures and debt obligations in the face of economic uncertainties.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

The following information is presented to assist the reader in comparing the final amended budget and the actual results.

**Actual Revenue – General Fund**

Budgetary Basis

Year ended June 30, 2017

(In thousands)



DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

**Actual Expenditures – General Fund**

Budgetary Basis

Year ended June 30, 2017

(In thousands)



For more than a decade, the Commonwealth has had deficiencies of revenues under expenditures (including debt service payments) that were mainly funded through issuances of bonds and lines of credits.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

**Capital Assets and Debt Administration**

*Capital Assets*

The following is a summary schedule of the Primary Government's capital assets (in thousands):

| | Governmental activities | | Business-type activities | | Total Primary Government | |
|---|---|---|---|---|---|---|
| | 2017 | 2016 (as restated) | 2017 | 2016 | 2017 | 2016 (as restated) |
| Land | $ 932,913 | 936,891 | 36,005 | 36,005 | 968,918 | 972,896 |
| Construction in progress | 1,092,712 | 1,345,319 | — | 3,339 | 1,092,712 | 1,348,658 |
| Buildings and building improvements, net | 5,864,631 | 5,862,562 | 40,320 | 39,081 | 5,904,951 | 5,901,643 |
| Equipment, furniture, fixtures, vehicles and software, net | 176,146 | 149,544 | 12,930 | 14,745 | 189,076 | 164,289 |
| Infrastructure, net | 407,819 | 407,636 | — | — | 407,819 | 407,636 |
| Total capital assets | $ 8,474,221 | 8,701,952 | 89,255 | 93,170 | 8,563,476 | 8,795,122 |

The Commonwealth's investment in capital assets for its Governmental Activities and Business-type activities as of June 30, 2017 amounted to approximately $14 billion, less accumulated depreciation and amortization of approximately $5.4 billion, resulting in a book value of approximately $8.6 billion. Capital assets include land, constructions in progress, buildings, building improvements, equipment, and infrastructure. Capital assets included in the Governmental Activities column are principally owned by blended component units (e.g., PBA and PRIFA) and are primarily of value only to the Commonwealth, such as public schools, roads, and buildings used for governmental services. Depreciation and amortization expense for its Governmental Activities and Business-type activities amounted to approximately $319 million for the year ended June 30, 2017.

Other infrastructure assets, such as highways, bridges, toll road facilities, water and sewer systems, electricity production, transmission and distribution systems, and similar assets, are owned by discretely presented component units.

Additional information on the Commonwealth's capital assets can be found in Note 11 to the basic financial statements that accompany this report.

*Debt Administration – Primary Government*

The Commonwealth has incurred long-term debt financing and other obligations, including lease/purchases and contractual obligations where the Commonwealth's legal obligation to make payments is typically subject to and paid from annual appropriations made by the Legislature of Puerto Rico (the Legislature) of the Commonwealth. For example, the debts reported by most blended component units, by Business-type activities and certain discretely presented component units are supported, directly or indirectly, by payments from resources from the Commonwealth's Governmental Activities.

At June 30, 2017, the Primary Government's bonds and notes outstanding amounted to approximately $40.8 billion, the discretely presented component units' bonds and notes outstanding amounted to approximately $24.1 billion, and the fiduciary funds' bonds outstanding amounted to approximately $3.2 billion.

General obligation bonds are backed by the full faith, credit, and taxing power of the Commonwealth. The Constitution of the Commonwealth authorizes the contracting of debts as determined by the Legislature. Nevertheless, Section 2, Article VI of the Constitution of the Commonwealth provides that direct obligations of the Commonwealth evidenced by bonds or notes and backed by the full faith, credit, and taxing power of the Commonwealth should not be issued if the amounts of the principal of and interest on such bonds and notes and

23

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

on all such bonds and notes issued thereafter, which are payable in any fiscal year, together with any amount paid by the Commonwealth in the preceding fiscal year of such proposed issuance on account of bonds or notes guaranteed by the Commonwealth, exceed 15% of the average annual revenue raised under the provisions of Commonwealth legislation and deposited into the Treasury (hereinafter internal revenue) in the two fiscal years preceding the fiscal year of such proposed issuance. Section 2, Article VI of the Constitution of the Commonwealth does not limit the amount of debt that the Commonwealth may guarantee as long as the Commonwealth is in compliance with the 15% limitation at the time of issuance of such guaranteed debt. Internal revenue consists principally of income taxes, sales and use tax, property taxes, and excise taxes. The validity and priority of the Commonwealth's general obligation bonds is the subject of actual and possible litigation in the case filed under Title III of PROMESA by the Oversight Board (as defined herein) on behalf of the Commonwealth.

Certain revenue, such as federal excise taxes on offshore shipments of alcoholic beverages and tobacco products and customs duties, which are collected by the United States government and returned to the Commonwealth, and motor vehicle fuel taxes, crude oil and derivative products excise taxes and license fees, which are conditionally allocated to the Puerto Rico Highways Transportation Authority (PRHTA), a discretely presented component unit, are not included as revenues for the purpose of calculating the debt limit, although they may be available for the payment of debt service. Certain of these revenues are subject to ongoing litigation. For additional information on the current status of this litigation, refer to Note 17. In addition, the portion of sales and use tax conditionally allocated to COFINA is not included as internal revenues consistent with the legislation creating COFINA, which transfers ownership of such portion of the sales and use tax to COFINA and provides that such portion is not "available resources" under the constitutional provisions relating to the payment of debt service. Issues related to this matter were resolved under the COFINA Plan of Adjustment.

On September 13, 2017 the Oversight Board announced that a special committee of the Oversight Board (the Special Committee) retained an independent investigator to carry out a review of the Commonwealth's debt and its connection to the current financial crisis. The Special Committee has advised that it considers this investigation an integral part of the Oversight Board's mission to restore fiscal balance and economic opportunity and to promote the Commonwealth's reentry to the capital markets. On August 20, 2018 the final report was published and presented a series of findings and recommendations in the following areas:

- Government Development Bank (GDB)
- Puerto Rico Public Utilities (Puerto Rico Energy and Power Authority (PREPA) and Puerto Rico Aqueduct and Sewer Authority (PRASA)
- COFINA
- Employees' Retirement System
- Puerto Rico's Budgeting, External Reporting, and Accounting Functions
- Calculation of the Constitutional Debt Limit
- Credit Rating Agencies (CRAs)
- Selling Practices for Puerto Rico-Related Bonds
- Puerto Rico's Government Ethics Framework
- Issuers' Use of Interest Rate Swaps
- Puerto Rico's Lack of a Clear Mechanism for Validating Puerto Rico-Related Bonds Before They Issue

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

- Possession Tax Credit

Based on its independent investigation, the Special Committee commenced a variety of adversary proceedings against a number of defendants. For a description of this litigation, refer to Note 17.

Debt of certain discretely presented component units (other than bond anticipation notes) such as the PREPA and PRASA is supported by operating revenue. However, the debt of certain blended and discretely presented component units is supported, in whole or in part, directly or indirectly, by Commonwealth appropriations or conditionally allocated taxes.

Additional information on the Commonwealth's long-term debt can be found in Note 13 to the accompanying basic financial statements.

As a direct result of the economic crisis facing the Commonwealth, Act No. 21-2016, known as the Puerto Rico Emergency Moratorium and Rehabilitation Act (as amended, the Moratorium Act) was enacted on April 6, 2016. Pursuant to the Moratorium Act, the Governor issued a series of executive orders declaring an emergency period, a debt payment moratorium and various other measures with respect to certain obligations of the Commonwealth and several of its instrumentalities. Pursuant to these executive orders, certain Commonwealth entities have either: (i) not made debt service payments, (ii) made debt service payments with funds on deposit with the trustees of their bonds, and/or (iii) not received or transferred certain revenues. Subsequent to the filing of the Commonwealth's Title III case on May 3, 2017, such payments have not been made due to applicable provisions of PROMESA. Litigation regarding these revenues is ongoing in the Commonwealth's Title III case.

The following paragraphs detail the amount of debt service not paid:

*PFC Bonds*

On July 15, 2015, the Puerto Rico Public Finance Corporation (PFC) filed a notice with Electronic Municipal Market Access (EMMA) indicating that the Legislature had not included in the approved budget for fiscal year 2016 the funds necessary to pay principal and interest on all outstanding PFC bonds. Such appropriation is the sole source of payment of principal and interest on PFC bonds. The first payment of debt service on PFC bonds for fiscal year 2016 came due on August 3, 2015, on which date PFC made a partial payment of interest in the amount of $628 thousand (of the approximately $58 million payment due on that date) from funds held by PFC representing funds remaining from prior legislative appropriations. From August 3, 2015 through July 31, 2020, PFC has not made several debt service payments on its bonds in the total aggregate amount of approximately $436 million.

*General Obligation (GO) Bonds*

On July 1, 2016, approximately $1.1 billion of principal and interest payments were due on the Commonwealth's general obligation bonds. Of this amount, the Commonwealth paid approximately $351.9 million (leaving approximately $778.8 million unpaid). The $351.9 million payment consisted of funds held in escrow accounts ($314.4 million in principal amounts plus $37.5 million from existing capitalized interest thereon). From July 1, 2016 through July 31, 2020, the Commonwealth has not made several debt payments on its general obligation bonds in the total aggregate amount of approximately $5.2 billion.

*PBA Bonds*

On July 1, 2016, of the approximately $186.9 million of debt service payments due on the PBA outstanding revenue bonds (consisting of approximately $86.1 million in principal and $100.9 million in interest), all was paid except principal of $25.2 million. Of the outstanding bonds debt service requirements due from August 1,

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

2016 through July 31, 2020, PBA has not made several debt payments on bonds in the total aggregate amount $1.1 billion.

*PRIFA Bonds*

On January 1, 2016, of the approximately $35.9 million debt service payments (all interest) due on the PRIFA bonds, almost all remained unpaid except $14.4 thousand. Since January 1, 2016, PRIFA has not made several debt service payments on its bonds in the total aggregate amount of approximately $693.4 million, except principal of $100 thousand and interest of $1.1 million.

*Port of the Americas (PAA) Bond Purchase Agreement with GDB*

The PAA Bond Purchase Agreement with GDB remains unpaid in the aggregate amount of principal and interest of approximately $116.6 million.

**Going Concern, Liquidity Risk and Fiscal Plan**

*Going Concern and Liquidity Risk*

The Commonwealth is in the midst of a fiscal, economic and liquidity crisis, the culmination of many years of governmental deficits, an economic recession (which commenced in 2006), a high unemployment rate, a population decline, and high levels of debt and pension related obligations. As the Commonwealth's tax base has shrunk and its revenues have been affected by prevailing economic conditions, health care, pension and debt service costs have become an increasing portion of the General Fund budget, which has resulted in reduced funding available for other essential services. The Commonwealth's level of debt and unfunded pension liabilities and the resulting required allocation of revenues to service debt and pension obligations have contributed to budget deficits during the past several years, which deficits the Commonwealth has financed, further increasing the amount of its debt. These matters and the Commonwealth's liquidity constraints, among other factors, have affected its credit ratings and its ability to obtain financing at reasonable interest rates. As a result, the Commonwealth had relied on short-term financings and interim loans from the GDB, and other instrumentalities of the Commonwealth, which reliance has constrained the liquidity of the Commonwealth in general and GDB and increased near-term refinancing risk. These factors have also resulted in delays in the repayment by the Commonwealth and its discretely presented component units of outstanding GDB lines of credit, which delays have limited GDB's ability to continue providing financing to the Commonwealth and have caused GDB to fail to make principal payment on its debts obligations. Similarly, and pursuant to a series of legislations and executive orders issued during fiscal year 2016 and 2017, the Commonwealth and certain other public corporations also failed to make the debt service payments on some of its debts as they became due, including the general obligation bonds of the Commonwealth. GDB ceased its operations on March 23, 2018 and, underwent a consensual restructuring of its debts under Title VI of PROMESA in 2018, and is winding down its operations.

In response to the Commonwealth's current fiscal crisis, the United States Congress enacted the Puerto Rico Oversight, Management and Economic Stability Act (codified under 48 U.S.C. §§ 2101-2241) (PROMESA) on June 30, 2016. In general terms, PROMESA seeks to provide the Commonwealth with fiscal and economic discipline through, among other things: (i) the establishment of the Oversight Board, whose responsibilities include the certification of fiscal plans and budgets for the Commonwealth and its related entities; (ii) a temporary stay of all creditor lawsuits; and (iii) two alternative methods to adjust unsustainable debt: (a) a voluntary debt modification process under Title VI of PROMESA, which establishes a largely out-of-court debt restructuring process through which modifications to financial debt can be accepted by a supermajority of creditors; and (b) a bankruptcy-type proceeding under Title III of PROMESA, which establishes an in-court debt restructuring process substantially based upon incorporated provisions of the U.S. Bankruptcy Code (11 U.S.C. §§ 101, et seq.). For

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

additional information on the key elements of PROMESA and the Title III cases, refer to Note 23. For additional information on the civil actions related to the Title III cases and other litigation contingencies, refer to Note 17.

The risks and uncertainties facing the Commonwealth, together with other factors, have led management to conclude that there is substantial doubt as to the ability of the Commonwealth to continue as a going concern.

*Fiscal Plan*

Pursuant to PROMESA and the requirements imposed by the Oversight Board, on May 27, 2020, the Oversight Board certified the Board Fiscal Plan for the Commonwealth. The Oversight Board's Fiscal Plan commits to fiscal responsibility and implements specific revenue enhancements and targeted expenditure reductions to return Puerto Rico to fiscal stability and economic growth. For additional information regarding the Board Fiscal Plan, refer to Note 2.

**Currently Known Facts**

The following is a summary description of currently known facts, decisions, and conditions that have had, or are expected to have, an impact on the Commonwealth's financial position and results of operations. For additional information and further detail, refer to Note 23.

*Proposed Title III Joint Plan of Adjustment*

On September 27, 2019, the Oversight Board filed a proposed plan of adjustment of Commonwealth debt that would reduce the Commonwealth's debt obligations by approximately 70% and establishes a roadmap to exit bankruptcy. As of the date of these basic financial statements, the disclosure statement accompanying the proposed plan of adjustment has not yet been approved by the Title III Court and no solicitation of the proposed plan has been approved. It is uncertain that eligible creditors will vote in favor, of or if the Title III Court will ultimately confirm the Oversight Board's proposed plan of adjustment.

On February 5, 2019, the plan of adjustment of COFINA was confirmed by the U.S. District Court for the District of Puerto Rico and became effective on February 12, 2019. Pursuant to the approval of the plan of adjustment, COFINA issued new sales tax revenue bonds in the aggregate amount of approximately $12 billion, and its total outstanding debt was reduced by approximately 32 percent.

*Bonds Credit Rating Downgrades*

Soon after the missed payments on July 1, 2016, imposed by the Moratorium Act and related executive orders, S&P downgraded to the lowest level of "D" the general obligation bonds of the Commonwealth, PRIFA's Special Tax Revenue Bonds, and the PBA bonds, while Fitch did the same with the general obligation bonds of the Commonwealth and the PBA bonds. On April 6, 2017, Moody's downgraded PRIFA's Special Tax Revenue Bonds and ERS bonds to a level C rating from its previous ratings of Ca and Ca, respectively. On that same date, Moody's reaffirmed the Caa3 rating on the Commonwealth's general obligations bonds. On June 7, 2017, S&P downgraded COFINA's senior- and junior-lien bonds to the default rating of D, in response to the Title III Judge Swain order to not make the COFINA's scheduled debt service, but to maintain such funds in a trust account until the judge decides on the case. On February 8, 2019 Moody's upgraded COFINA's current senior-lien sales tax revenue bonds to Caa3 from Ca. The upgrade reflects recovery expectations in line with the Caa3 rating based on detail in the COFINA's plan of adjustment. Upon the effective date of the COFINA Plan of Adjustment on February 12, 2019, COFINA's senior- and junior-lien bonds were extinguished, and bond holders received New COFINA Bonds as provided in the COFINA Plan of Adjustment. The New COFINA Bonds are not currently rated.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Management's Discussion and Analysis (Unaudited)

June 30, 2017

*Aftermath of Hurricane Maria*

On September 20, 2017, Puerto Rico was directly impacted by Hurricane Maria, leaving in its path, economic and infrastructure-related damages and upending the daily lives of Puerto Rico's over 3 million residents. Thousands of residents were left homeless, basic utilities were completely shut down, and schools, hospitals, and businesses were destroyed. Tens of thousands of Puerto Ricans fled the Island. As a result of the impact of the hurricane, a series of actions and events have been taken by the local and federal government to improve the island condition. The revised Fiscal Plan of the Commonwealth projects that approximately $83 billions of disaster relief funding including federal and private sources, will be disbursed in the reconstruction effort. It will be used for a mix of individual assistance (e.g., reconstruction of houses, personal expenditures related to the hurricane such as clothing and supplies), public assistance (e.g., reconstruction of major infrastructure, roads, and schools), and to cover part of the Commonwealth's share of the cost of disaster relief funding.

*Earthquakes*

On January 7, 2020, Puerto Rico was struck by a 6.4 magnitude earthquake causing damages to infrastructure, an island-wide power outage, water shortages and threatening the lives of its people. On January 11, 2020, the Governor authorized the appropriation of approximately $12 million of the Emergency Fund to be distributed equally between the municipalities of Gúanica, Guayanilla, Peñuelas, Ponce, Utuado and Yauco to be used exclusively for damages and mitigation related to the emergency.

A preliminary assessment of the damages caused by the earthquake and subsequent aftershocks, calculated by the United States Geological Survey, estimated total economic damages ascending to approximately $838 million.

*COVID-19 Pandemic*

On March 11, 2020, the World Health Organization declared the Coronavirus disease ("COVID-19") as a global pandemic. As a result of the health threat and to contain the virus spread across the island, Governor Váquez-Garced issued an executive order on March 12, 2020, declaring a state of emergency in Puerto Rico to concentrate all efforts and implement necessary measures to safeguard the health, well-being and public safety of the citizens of Puerto Rico. The executive order authorizes the Commonwealth's Secretary of the Treasury and the Director of the Office of Management and Budget of the Commonwealth (PROMB) to set up a special budget, from any available funds, including the Emergency Fund, to cover all necessary costs for the containment of the virus throughout the island and sharing information with the municipalities. The impact has been preliminarily estimated at approximately $4 billion. As a direct result of the COVID-19 pandemic, the Commonwealth Management has estimated a reduction of revenue collections of approximately $1.6 billion.

**Requests for Information**

This financial report is designed to provide a general overview of the Commonwealth's finances for all of the Commonwealth's residents, taxpayers, customers, investors, and creditors. This financial report seeks to demonstrate the Commonwealth's accountability for the money it receives. Questions concerning any of the information provided in this report or requests for additional information should be addressed to: Department of the Treasury of the Commonwealth of Puerto Rico, Área de Contabilidad Central, P.O. Box 9024140, San Juan, PR 00902.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Net Position

June 30, 2017

(In thousands)

| | Primary government | | | |
| | Governmental activities | Business-type activities | Totals primary government | Component units |
|---|---|---|---|---|
| **Assets:** | | | | |
| Cash and cash equivalents in commercial banks | $ 2,048,108 | 362,000 | 2,410,108 | 1,532,768 |
| Cash and cash equivalents in governmental banks | 2,256 | 2 | 2,258 | 41,858 |
| Investments | 11,917 | — | 11,917 | 1,343,984 |
| Collateral from securities lending transactions | — | — | — | 13,842 |
| Receivables – net: | | | | |
| Income and excise taxes | 1,255,037 | — | 1,255,037 | — |
| Sales and use tax receivable | 82,638 | — | 82,638 | — |
| Insurance premium | — | 3,921 | 3,921 | 42,410 |
| Intergovernmental | 282,474 | 54,192 | 336,666 | 87,369 |
| Accounts | 26,212 | 86,477 | 112,689 | 626,667 |
| Loans | 2 | — | 2 | 2,686,922 |
| Accrued interest | 2,884 | 1,062 | 3,946 | 58,895 |
| Other | 142,559 | 1,584 | 144,143 | 44,452 |
| Due from – net : | | | | |
| Primary government | — | — | — | 119,339 |
| Component units | 10,700 | — | 10,700 | 469,510 |
| Other governmental entities | 370,783 | 1,142 | 371,925 | 432,164 |
| Internal balances | (71,931) | 71,931 | — | — |
| Inventories | 12,562 | — | 12,562 | 258,474 |
| Prepaid expenses | 29,294 | — | 29,294 | 35,914 |
| Other assets | 13,384 | 24,922 | 38,306 | 21,571 |
| Restricted assets: | | | | |
| Cash and cash equivalents in commercial banks | 652,045 | 27,781 | 679,826 | 545,329 |
| Cash and cash equivalents in governmental banks | 279 | 28 | 307 | 4,666 |
| Cash equivalents in PRGITF | 49,976 | — | 49,976 | — |
| Cash and cash equivalents under the custody of U.S. Treasury | — | 557,540 | 557,540 | — |
| Sales and use tax receivable | 99,934 | — | 99,934 | — |
| Insurance premium – net | — | 53,253 | 53,253 | — |
| Intergovernmental receivable | 21,324 | — | 21,324 | — |
| Accrued interest | 11,747 | — | 11,747 | — |
| Loans receivable from component units | — | 448,176 | 448,176 | — |
| Investments | 585,390 | 26,252 | 611,642 | 1,388,455 |
| Other | 492 | 21,878 | 22,370 | 45,776 |
| Real estate held for sale or future development | 44,211 | — | 44,211 | 240,595 |
| Capital assets: | | | | |
| Land and other nondepreciable | 2,025,625 | 36,005 | 2,061,630 | 4,693,267 |
| Depreciable, net | 6,448,596 | 53,250 | 6,501,846 | 22,922,565 |
| Total assets | 14,158,498 | 1,831,396 | 15,989,894 | 37,656,772 |
| **Deferred outflows of resources:** | | | | |
| Accumulated decrease in fair value of hedging derivatives | 72,460 | — | 72,460 | 48,132 |
| Loss on bonds refunding | 385,020 | — | 385,020 | 176,251 |
| Other post employment benefits related | — | — | — | 6,815 |
| Pension related | 7,296,289 | 197,866 | 7,494,155 | 3,056,515 |
| Total deferred outflows of resources | 7,753,769 | 197,866 | 7,951,635 | 3,287,713 |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Net Position

June 30, 2017

(In thousands)

| | Governmental activities | Business-type activities | Totals primary government | Component units |
|---|---|---|---|---|
| **Liabilities:** | | | | |
| Accounts payable and accrued liabilities | 1,247,457 | 91,342 | 1,338,799 | 2,130,649 |
| Deposits and escrow liabilities | — | — | — | 3,772,411 |
| Tax refunds payable | 576,848 | — | 576,848 | — |
| Due to: | | | | |
| Primary government | — | — | — | 727,520 |
| Component units | 162,723 | 77,578 | 240,301 | 3,476,521 |
| Other governmental entities | 573,266 | 107 | 573,373 | 175,329 |
| Securities lending obligations and reverse repurchase agreements | — | — | — | 13,842 |
| Interest payable | 1,735,735 | 81,614 | 1,817,349 | 1,343,249 |
| Grant advances | 6,496 | — | 6,496 | — |
| Unearned revenue | 84,359 | 31,911 | 116,270 | 111,454 |
| Hedging derivatives instruments – interest rate swaps | 72,460 | — | 72,460 | 48,132 |
| Notes payable to GDB | 1,700 | — | 1,700 | — |
| Tax revenue anticipation notes | 400,000 | — | 400,000 | — |
| Liabilities payable within one year: | | | | |
| Commonwealth appropriation bonds | 68,074 | — | 68,074 | 27,992 |
| General obligations and revenue bonds | 1,138,456 | — | 1,138,456 | 936,883 |
| Notes payable to component units | 393,281 | 62,000 | 455,281 | — |
| Note payable to financial institution | 9,505 | — | 9,505 | 1,703,050 |
| Capital leases | 8,614 | — | 8,614 | 1,401 |
| Compensated absences | 232,819 | 11,851 | 244,670 | 124,926 |
| Obligation for unpaid lottery prizes | — | 61,543 | 61,543 | — |
| Voluntary termination benefits | 87,564 | 1,287 | 88,851 | 33,530 |
| Net pension liability | 170,259 | — | 170,259 | — |
| Liability for insurance benefits | — | 90,213 | 90,213 | 774,781 |
| Other long-term liabilities | 220,573 | 99,578 | 320,151 | 99,480 |
| Liabilities payable after one year: | | | | |
| Commonwealth appropriation bonds | 501,672 | — | 501,672 | 500,145 |
| General obligations and revenue bonds | 36,031,935 | — | 36,031,935 | 17,635,794 |
| Bond purchase agreement with GDB | 225,534 | — | 225,534 | — |
| Notes payable to component units | 1,994,330 | 424,559 | 2,418,889 | — |
| Notes payable to financial institutions | 14,259 | — | 14,259 | 3,264,915 |
| Liability under guaranteed obligation | 374,596 | — | 374,596 | — |
| Capital leases | 327,000 | — | 327,000 | 26,504 |
| Compensated absences | 318,974 | 7,074 | 326,048 | 373,648 |
| Obligation for unpaid lottery prizes | — | 86,074 | 86,074 | — |
| Voluntary termination benefits | 696,442 | 5,905 | 702,347 | 131,604 |
| Net pension obligation | — | — | — | 21,546 |
| Net pension liability | 42,374,732 | 809,666 | 43,184,398 | 12,573,963 |
| Other postemployment benefit obligation | 270,187 | — | 270,187 | — |
| Other long-term liabilities | 1,628,815 | 2,193 | 1,631,008 | 761,699 |
| Total liabilities | 91,948,665 | 1,944,495 | 93,893,160 | 50,790,968 |
| **Deferred inflows of resources:** | | | | |
| Service concession arrangements | — | — | — | 1,819,811 |
| Gain on bonds refunding | 114,548 | — | 114,548 | — |
| Other post employment benefits related | — | — | — | 7,794 |
| Pension related | 978,654 | 15,498 | 994,152 | 411,848 |
| Total deferred inflows of resources | 1,093,202 | 15,498 | 1,108,700 | 2,239,453 |
| **Net position:** | | | | |
| Net investment in capital assets | 2,614,500 | 69,993 | 2,684,493 | 4,855,431 |
| Restricted for: | | | | |
| Capital projects | 81,606 | — | 81,606 | 76,577 |
| Debt service | 152,408 | — | 152,408 | 156,488 |
| Emergency services | — | 6,268 | 6,268 | — |
| Lending activities | — | 454,918 | 454,918 | — |
| Payment of insurance benefits | — | 564,344 | 564,344 | — |
| Public housing and welfare | — | — | — | 32,223 |
| Student loans and other educational purposes | — | — | — | 110,640 |
| Other | 109,536 | — | 109,536 | 242,891 |
| Unrestricted (deficit) | (74,087,650) | (1,026,254) | (75,113,904) | (17,560,186) |
| Total net position | $ (71,129,600) | 69,269 | (71,060,331) | (12,085,936) |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Activities

Year ended June 30, 2017

(In thousands)

| Functions | Expenses | Program revenue | | | Net (expense) revenue and changes in net position | | | Component units |
| | | Charges for services | Operating grants and contributions | Capital grants and contributions | Primary government | | | |
| | | | | | Governmental activities | Business-type activities | Total | |
| Primary government: | | | | | | | | |
| Governmental activities: | | | | | | | | |
| General government | $ 2,324,564 | 233,825 | 641,252 | — | (1,449,487) | — | (1,449,487) | — |
| Public safety | 1,889,296 | 136,885 | 60,673 | — | (1,691,738) | — | (1,691,738) | — |
| Health | 2,704,463 | 292,184 | 2,109,958 | — | (302,321) | — | (302,321) | — |
| Public housing and welfare | 3,464,039 | 17,111 | 2,485,611 | 84,033 | (877,284) | — | (877,284) | — |
| Education | 4,285,123 | 1,058 | 939,530 | — | (3,344,535) | — | (3,344,535) | — |
| Economic development | 815,469 | 117,861 | 1,189 | — | (696,419) | — | (696,419) | — |
| Intergovernmental | 397,993 | — | — | — | (397,993) | — | (397,993) | — |
| Interest and other | 2,420,007 | — | — | — | (2,420,007) | — | (2,420,007) | — |
| Total governmental activities | 18,300,954 | 798,924 | 6,238,213 | 84,033 | (11,179,784) | — | (11,179,784) | — |
| Business-type activities: | | | | | | | | |
| Unemployment insurance | 122,642 | 209,454 | 1,394 | — | — | 88,206 | 88,206 | — |
| Puerto Rico Health Insurance Administration | 2,791,508 | 157,732 | 1,866,583 | — | — | (767,193) | (767,193) | — |
| Puerto Rico Medical Services Administration | 232,589 | 121,045 | — | — | — | (111,544) | (111,544) | — |
| Nonmajor proprietary funds | 174,789 | 800,618 | 6,813 | — | — | 632,642 | 632,642 | — |
| Total business-type activities | 3,321,528 | 1,288,849 | 1,874,790 | — | — | (157,889) | (157,889) | — |
| Total primary government | $ 21,622,482 | 2,087,773 | 8,113,003 | 84,033 | (11,179,784) | (157,889) | (11,337,673) | — |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Activities

Year ended June 30, 2017

(In thousands)

| Functions | Expenses | Charges for services | Operating grants and contributions | Capital grants and contributions | Governmental activities | Business-type activities | Total | Component units |
|---|---|---|---|---|---|---|---|---|
| | | | Program revenue | | Net (expense) revenue and changes in net position | | | |
| | | | | | Primary government | | | |
| **Component units:** | | | | | | | | |
| Government Development Bank for Puerto Rico | $ 628,272 | 269,499 | 176,665 | — | — | — | — | (182,108) |
| Puerto Rico Highways and Transportation Authority | 1,031,188 | 226,641 | 33,038 | 93,102 | — | — | — | (678,407) |
| Puerto Rico Electric Power Authority | 4,514,243 | 3,264,748 | — | 7,317 | — | — | — | (1,242,178) |
| Puerto Rico Aqueduct and Sewer Authority | 1,247,589 | 1,032,003 | — | 4,016 | — | — | — | (211,570) |
| University of Puerto Rico | 1,311,984 | 197,410 | 295,822 | — | — | — | — | (818,752) |
| State Insurance Fund Corporation | 986,144 | 584,134 | — | — | — | — | — | (402,010) |
| Nonmajor component units | 1,623,028 | 702,876 | 185,410 | 5,876 | — | — | — | (728,866) |
| Total component units | $ 11,342,448 | 6,277,311 | 690,935 | 110,311 | — | — | — | (4,263,891) |
| **General revenue:** | | | | | | | | |
| Income taxes | | | | | $ 4,450,645 | — | 4,450,645 | — |
| Sales and use tax | | | | | 2,413,628 | — | 2,413,628 | — |
| Excise taxes | | | | | 3,521,787 | — | 3,521,787 | 211,489 |
| Other taxes | | | | | 112,098 | — | 112,098 | — |
| Revenue from global tobacco settlement agreement | | | | | 72,266 | — | 72,266 | — |
| Revenue from State Insurance Fund Corporation | | | | | 49,011 | — | 49,011 | — |
| Revenue from Puerto Rico Tourism Company | | | | | 20,742 | — | 20,742 | — |
| Revenue from Automobile Accidents Compensation Administration | | | | | 5,365 | — | 5,365 | — |
| Grants and contributions not restricted to specific programs | | | | | 115,663 | — | 115,663 | 3,084 |
| Revenue from primary government | | | | | — | — | — | 1,170,982 |
| Unrestricted investment (losses) earnings – net | | | | | 18,221 | 16,897 | 35,118 | 135,668 |
| Other | | | | | 143,716 | 6,102 | 149,818 | — |
| Transfers | | | | | (724,650) | 724,650 | — | — |
| Total general revenue and transfers | | | | | 10,198,492 | 747,649 | 10,946,141 | 1,521,223 |
| Change in net position | | | | | (981,292) | 589,760 | (391,532) | (2,742,668) |
| **Net position:** | | | | | | | | |
| At beginning of year, as previously reported | | | | | (69,821,688) | (473,117) | (70,294,805) | (6,247,812) |
| Correction of errors and adoption of new accounting pronouncements (note 4) | | | | | (326,620) | (47,374) | (373,994) | (3,095,456) |
| Net position (deficit) – beginning of year, as adjusted and restated | | | | | (70,148,308) | (520,491) | (70,668,799) | (9,343,268) |
| Net position (deficit) – end of year | | | | | $ (71,129,600) | 69,269 | (71,060,331) | (12,085,936) |

See accompanying notes to basic financial statements.

**COMMONWEALTH OF PUERTO RICO**

Balance Sheet – Governmental Funds

June 30, 2017

(In thousands)

| | General | Debt service | COFINA special revenue | COFINA debt service | Nonmajor governmental | Total governmental |
|---|---|---|---|---|---|---|
| Assets: | | | | | | |
| Cash and cash equivalents in commercial banks | $ 1,941,790 | — | 6,373 | — | 99,945 | 2,048,108 |
| Cash and cash equivalents in governmental banks | 2,170 | — | — | — | 86 | 2,256 |
| Investments | — | — | 167 | — | 11,750 | 11,917 |
| Receivables – net: | | | | | | |
| Income and excise taxes | 1,255,037 | — | — | — | — | 1,255,037 |
| Sales and use tax receivable | 82,638 | — | — | — | — | 82,638 |
| Intergovernmental | 281,548 | — | — | — | 926 | 282,474 |
| Accounts | 23,109 | — | — | — | 3,103 | 26,212 |
| Loans | — | — | — | — | 2 | 2 |
| Accrued interest | 2,841 | — | — | 42 | 1 | 2,884 |
| Other | 103,474 | — | — | 659 | 38,426 | 142,559 |
| Due from – net: | | | | | | |
| Other funds | 7,147 | — | — | — | 113 | 7,260 |
| Component units | 8,441 | — | — | — | 2,259 | 10,700 |
| Other governmental entities | 369,391 | — | — | — | 1,392 | 370,783 |
| Other assets | 12,358 | — | — | — | 1,026 | 13,384 |
| Restricted assets: | | | | | | |
| Cash and cash equivalents in commercial banks | 222,118 | 297,916 | — | 55,429 | 76,582 | 652,045 |
| Cash and cash equivalents in governmental banks | — | — | — | — | 279 | 279 |
| Cash equivalents in PRGITF | 2,547 | — | — | — | 47,429 | 49,976 |
| Sales and use tax receivable | — | — | — | 99,934 | — | 99,934 |
| Intergovernmental receivable | — | 21,324 | — | — | — | 21,324 |
| Investments | 31,548 | — | — | 443,725 | 110,117 | 585,390 |
| Due from other funds | — | — | — | — | 158,040 | 158,040 |
| Due from other governmental entities | — | — | — | — | 11,747 | 11,747 |
| Other assets | — | — | — | — | 492 | 492 |
| Real estate held for sale or future development | — | — | — | — | 1,854 | 1,854 |
| Total assets | $ 4,346,157 | 319,240 | 6,540 | 599,789 | 565,569 | 5,837,295 |
| Liabilities, deferred inflow of resources, and fund balances (deficit): | | | | | | |
| Liabilities: | | | | | | |
| Accounts payable and accrued liabilities | $ 1,130,085 | — | 196 | 105 | 117,071 | 1,247,457 |
| Tax refunds payable | 576,848 | — | — | — | — | 576,848 |
| Due to: | | | | | | |
| Other funds | 91,673 | — | — | 141,562 | 3,996 | 237,231 |
| Component units | 155,798 | — | — | — | 6,925 | 162,723 |
| Other governmental entities | 567,386 | — | — | — | 5,880 | 573,266 |
| Interest payable | 47,026 | 733,241 | — | 16,298 | 241,288 | 1,037,853 |
| Grant advances | 6,496 | — | — | — | — | 6,496 |
| Unearned revenue | 82,781 | — | — | — | 1,578 | 84,359 |
| Notes payable to GDB | 114,231 | — | — | — | 46,257 | 160,488 |
| Tax revenue anticipation notes | 400,000 | — | — | — | — | 400,000 |
| Commonwealth appropriation bonds | 46,328 | — | — | — | — | 46,328 |
| General obligation and revenue bonds | — | 448,340 | — | — | 144,533 | 592,873 |
| Compensated absences | — | — | — | — | 767 | 767 |
| Voluntary termination benefits payable | 713 | — | — | — | — | 713 |
| Net pension liability | 170,259 | — | — | — | — | 170,259 |
| Other liabilities | 61,000 | — | — | — | — | 61,000 |
| Total liabilities | 3,450,824 | 1,181,581 | 196 | 157,965 | 568,295 | 5,358,661 |
| Deferred inflows of resources: | | | | | | |
| Unavailable income taxes | 878,930 | — | — | — | — | 878,930 |
| Intergovernmental grants and contributions | 29,983 | 4,511 | — | — | — | 34,494 |
| Developer fees | 87,184 | — | — | — | — | 87,184 |
| Global tobacco settlement agreement | — | — | — | — | 36,344 | 36,344 |
| Total deferred inflows of resources | 996,097 | 4,511 | — | — | 36,344 | 1,036,952 |
| Fund Balances: | | | | | | |
| Nonspendable | 151 | — | — | — | — | 151 |
| Spendable: | | | | | | |
| Restricted | 75,848 | — | — | 441,824 | 286,393 | 804,065 |
| Committed | — | — | — | — | 17,059 | 17,059 |
| Assigned | — | — | — | — | 4,006 | 4,006 |
| Unassigned (deficit) | (176,563) | (866,852) | 6,344 | — | (346,528) | (1,383,599) |
| Total fund balances (deficit) | (100,564) | (866,852) | 6,344 | 441,824 | (39,070) | (558,318) |
| Total liabilities, deferred inflow of resources, and fund balances (deficit) | $ 4,346,157 | 319,240 | 6,540 | 599,789 | 565,569 | 5,837,295 |

See accompanying notes to basic financial statements.

**COMMONWEALTH OF PUERTO RICO**

Reconciliation of the Balance Sheet of Governmental Funds
to the Statement of Net Position

June 30, 2017

(In thousands)

| | | |
|---|---:|---:|
| Total fund balances (deficit) of governmental funds | $ | (558,318) |
| Amounts reported for governmental activities in the statement of net position are different than the amounts reported in the governmental funds because: | | |
| Inventories and prepaid expenses that are not reported in governmental funds and are reported in the statement of net position | | 41,856 |
| Deferred outflows of resources reported in governmental activities but not in governmental funds | | |
| Accumulated decrease in fair value of hedging derivatives | | 72,460 |
| Loss on bond refunding | | 385,020 |
| Pension related | | 7,296,289 |
| Capital assets used in governmental activities are not financial resources and, therefore, are not reported in funds | | 8,474,221 |
| Real estate held for sale or future development are not current financial resources and, therefore, are not reported in the governmental funds | | 42,357 |
| Deferred inflows of resources reported in the governmental funds are recognized as revenue in the governmental activities | | 1,036,952 |
| Deferred inflows of resources reported in governmental activities but not in governmental funds | | |
| Gain on bonds refunding | | (114,548) |
| Pension related | | (978,654) |
| Long-term liabilities are not due and payable in the current period and, therefore, are not reported in the funds: | | |
| Interest payable | | (697,882) |
| Commonwealth appropriation bonds | | (523,418) |
| General obligation and revenue bonds | | (36,577,518) |
| Bond purchase agreement with GDB | | (225,534) |
| Notes payable to component units | | (2,228,823) |
| Notes payable to financial institutions | | (23,764) |
| Guaranteed obligation | | (374,596) |
| Capital leases | | (335,614) |
| Compensated absences | | (551,026) |
| Voluntary termination benefits | | (783,293) |
| Net pension liability | | (42,374,732) |
| Hedging derivative instrument – interest rate swaps | | (72,460) |
| Other postemployment benefit obligation | | (270,187) |
| Other long-term liabilities | | (1,788,388) |
| Total net position (deficit) of governmental activities | $ | (71,129,600) |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Revenue, Expenditures, and Changes in Fund Balances – Governmental Funds

Year ended June 30, 2017

(In thousands)

| | General | Debt service | COFINA special revenue | COFINA debt service | Nonmajor governmental | Total governmental |
|---|---|---|---|---|---|---|
| **Revenue:** | | | | | | |
| Taxes: | | | | | | |
| Income taxes | $ 4,295,313 | — | — | — | — | 4,295,313 |
| Sales and use tax | 1,697,868 | — | — | 715,760 | — | 2,413,628 |
| Excise taxes | 3,521,787 | — | — | — | — | 3,521,787 |
| Property taxes | 7,404 | — | — | — | — | 7,404 |
| Other taxes | 104,694 | — | — | — | — | 104,694 |
| Charges for services | 798,923 | — | — | — | — | 798,923 |
| Revenue from global tobacco settlement agreement | 72,687 | — | — | — | — | 72,687 |
| Revenue from component units | 75,118 | — | — | — | — | 75,118 |
| Intergovernmental | 6,303,608 | 111,152 | — | — | 29,921 | 6,444,681 |
| Interest and investment earnings | 8,015 | 1,218 | — | 4,322 | 4,666 | 18,221 |
| Other | 21,696 | — | — | — | 16,378 | 38,074 |
| Total revenue | 16,907,113 | 112,370 | — | 720,082 | 50,965 | 17,790,530 |
| **Expenditures:** | | | | | | |
| Current: | | | | | | |
| General government | 1,415,470 | — | — | 1,524 | 164,272 | 1,581,266 |
| Public safety | 2,072,961 | — | — | — | 256 | 2,073,217 |
| Health | 2,770,545 | — | — | — | 17,979 | 2,788,524 |
| Public housing and welfare | 3,264,644 | — | — | — | 1,429 | 3,266,073 |
| Education | 3,615,574 | — | — | — | 180 | 3,615,754 |
| Economic development | 812,338 | — | — | — | 5,277 | 817,615 |
| Intergovernmental | 391,245 | — | — | — | 7,329 | 398,574 |
| Capital outlays | 103,959 | — | — | — | 62,916 | 166,875 |
| Debt service: | | | | | | |
| Principal | 55,175 | 448,340 | — | 38,295 | 225,209 | 767,019 |
| Interest and other | 162,327 | 733,243 | — | 670,464 | 286,435 | 1,852,469 |
| Total expenditures | 14,664,238 | 1,181,583 | — | 710,283 | 771,282 | 17,327,386 |
| Excess (deficiency) of revenue over (under) expenditures | 2,242,875 | (1,069,213) | — | 9,799 | (720,317) | 463,144 |
| **Other financing sources (uses):** | | | | | | |
| Transfers in | 219,028 | — | 6,373 | — | 397,790 | 623,191 |
| Transfers out | (1,331,957) | — | — | (15,884) | — | (1,347,841) |
| Proceeds from long term debt issued | 6,475 | — | — | — | — | 6,475 |
| Proceeds from sale of capital assets | 1,446 | — | — | — | — | 1,446 |
| Total other financing sources (uses) | (1,105,008) | — | 6,373 | (15,884) | 397,790 | (716,729) |
| Net change in fund balances | 1,137,867 | (1,069,213) | 6,373 | (6,085) | (322,527) | (253,585) |
| Fund balances (deficit) – beginning of year, as restated (note 4) | (1,238,431) | 202,361 | (29) | 447,909 | 283,457 | (304,733) |
| Fund balances (deficit) – end of year | $ (100,564) | (866,852) | 6,344 | 441,824 | (39,070) | (558,318) |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Reconciliation of the Statement of Revenue, Expenditures, and Changes in
Fund Balances of Governmental Funds to the Statement of Activities

Year ended June 30, 2017

(In thousands)

| | | | |
|---|---|---|---|
| Net change in fund balances – total governmental funds | | $ | (253,585) |
| Amounts reported for governmental activities in the statement of activities are different because: | | | |
| Governmental funds report capital outlays as expenditures. However, in the statement of activities, the cost of those assets is allocated over their estimated useful lives and reported as depreciation and amortization expense. In the current period, these amounts are: | | | |
| Capital outlays | $ 166,875 | | |
| Less depreciation and amortization expense | (312,225) | | |
| Loss on disposal of assets | (69,185) | | |
| Subtotal | | | (214,535) |
| The issuance of long-term debt (e.g., bonds and notes) provides current financial resources to governmental funds, while the repayment of the principal of long-term debt consumes the current financial resources of governmental funds. Neither transaction, however, has any effect on net position. Also, governmental funds report the effect of premiums, discounts, and similar items when debt is first issued, whereas these amounts are deferred and amortized in the statement of activities. This amount is the net effect of these differences in the treatment of long-term debt and related items: | | | |
| Principal payments of long-term debt | 767,019 | | |
| Proceed from long-term debt issued | (6,475) | | |
| Subtotal | | | 760,544 |
| Some revenues in the statement of activities do not provide current financial resources, and, therefore, are deferred in governmental funds. Also, revenue related to prior periods that became available during the current period is reported in governmental funds but are eliminated in the statement of activities. This amount is the net adjustment. | | | 253,782 |
| Some expenses reported in the statement of activities do not require the use of current financial resources and, therefore, are not reported as expenditures in governmental funds. | | | (1,524,972) |
| Generally, inventory and prepayments are recorded as expenditures in the governmental funds when purchased rather than capitalized as an asset. However, these assets are capitalized in the statement of net position. This amount is the net decrease in total inventories and prepaid expenses. | | | (2,526) |
| Change in net position of governmental activities | | $ | (981,292) |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Net Position – Proprietary Funds

June 30, 2017

(In thousands)

| | | Business-Type Activities – Enterprise Funds | | | |
|---|---|---|---|---|---|
| | Unemployment Insurance | Puerto Rico Health Insurance Administration | Puerto Rico Medical Services Administration | Nonmajor proprietary | Total proprietary |
| **Assets:** | | | | | |
| Current assets: | | | | | |
| Cash and cash equivalents in commercial banks | $ — | 199,075 | 1,345 | 161,580 | 362,000 |
| Cash and cash equivalents in governmental banks | — | 2 | — | — | 2 |
| Receivables – net: | | | | | |
| Insurance premiums | — | — | — | 3,921 | 3,921 |
| Intergovernmental | — | 49,789 | 4,403 | — | 54,192 |
| Accounts | — | 61,647 | 19,051 | 5,779 | 86,477 |
| Accrued interest receivable | — | 860 | — | 202 | 1,062 |
| Other | — | — | 77 | 805 | 882 |
| Due from other funds | — | 1,931 | 34,449 | 3,996 | 40,376 |
| Due from other governmental entities | — | — | 1,142 | — | 1,142 |
| Other assets | — | 21,305 | 3,582 | 35 | 24,922 |
| Restricted assets: | | | | | |
| Cash and cash equivalents in commercial banks | 1,678 | 1,321 | — | 14,856 | 17,855 |
| Cash and cash equivalents in governmental banks | — | — | — | 28 | 28 |
| Cash and cash equivalents under the custody the | | | | | |
| U.S. Treasury | 557,540 | — | — | — | 557,540 |
| Insurance premiums receivable | 53,253 | — | — | — | 53,253 |
| Other | 43 | — | — | 133 | 176 |
| Loans from component units | — | — | — | 1,000 | 1,000 |
| Total current assets | 612,514 | 335,930 | 64,049 | 192,335 | 1,204,828 |
| Noncurrent assets: | | | | | |
| Cash and cash equivalents in commercial banks – restricted | — | — | 9,926 | — | 9,926 |
| Receivables – net: | | | | | |
| Loans from component units – restricted | — | — | — | 447,176 | 447,176 |
| Due from other funds | — | — | — | 38,702 | 38,702 |
| Other | — | 702 | — | — | 702 |
| Restricted investments | — | — | — | 26,252 | 26,252 |
| Other restricted assets | — | — | — | 21,702 | 21,702 |
| Land and other nondepreciable | — | — | 6,872 | 29,133 | 36,005 |
| Depreciable, net | — | 2,287 | 45,181 | 5,782 | 53,250 |
| Total assets | 612,514 | 338,919 | 126,028 | 761,082 | 1,838,543 |
| Deferred outflows of resources: | | | | | |
| Pension related | — | 6,795 | 159,631 | 31,440 | 197,866 |
| **Liabilities:** | | | | | |
| Current liabilities: | | | | | |
| Accounts payable and accrued liabilities | — | 68,924 | 12,069 | 10,349 | 91,342 |
| Due to other funds | 7,147 | — | — | — | 7,147 |
| Due to component units | — | — | 77,578 | — | 77,578 |
| Due to other governmental entities | — | — | — | 107 | 107 |
| Interest payable | — | 30,708 | 47,038 | 3,868 | 81,614 |
| Unearned revenue | 19,405 | — | — | 12,506 | 31,911 |
| Notes payable to component units | — | 62,000 | — | — | 62,000 |
| Compensated absences | — | 666 | 10,504 | 681 | 11,851 |
| Obligation for unpaid lottery prizes | — | — | — | 61,543 | 61,543 |
| Voluntary termination benefits payable | — | 834 | — | 453 | 1,287 |
| Liability for insurance benefits | 49,431 | 40,137 | — | 645 | 90,213 |
| Other long-term liabilities | — | — | 99,578 | — | 99,578 |
| Total current liabilities | 75,983 | 203,269 | 246,767 | 90,152 | 616,171 |
| Noncurrent liabilities: | | | | | |
| Notes payable to component units | — | 121,251 | 282,445 | 20,863 | 424,559 |
| Compensated absences | — | 426 | 3,885 | 2,763 | 7,074 |
| Obligation for unpaid lottery prizes | — | — | — | 86,074 | 86,074 |
| Voluntary termination benefits payable | — | 3,143 | — | 2,762 | 5,905 |
| Net pension liability | — | 24,449 | 680,775 | 104,442 | 809,666 |
| Other long-term liabilities | — | — | 2,193 | — | 2,193 |
| Total liabilities | 75,983 | 352,538 | 1,216,065 | 307,056 | 1,951,642 |
| Deferred inflows of resources: | | | | | |
| Pension related | — | 468 | 13,030 | 2,000 | 15,498 |
| Net position: | | | | | |
| Net investment in capital assets | — | 2,287 | 52,053 | 15,653 | 69,993 |
| Restricted for emergency services | — | — | — | 6,268 | 6,268 |
| Restricted for lending activities | — | — | — | 454,918 | 454,918 |
| Restricted for payment of insurance benefits | 536,531 | 1,321 | — | 26,492 | 564,344 |
| Unrestricted (deficit) | — | (10,900) | (995,489) | (19,865) | (1,026,254) |
| Total net position (deficit) | $ 536,531 | (7,292) | (943,436) | 483,466 | 69,269 |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Revenue, Expenses, and Changes in Fund Net Position – Proprietary Funds

Year ended June 30, 2017

(In thousands)

| | Business-Type Activities – Enterprise Funds | | | | |
|---|---|---|---|---|---|
| | Unemployment Insurance | Puerto Rico Health Insurance Administration | Puerto Rico Medical Services Administration | Nonmajor proprietary | Total proprietary |
| Operating revenue: | | | | | |
| Health insurance administration | $ — | 157,732 | — | — | 157,732 |
| Insurance premiums | 209,454 | — | — | 18,663 | 228,117 |
| Lottery ticket sales | — | — | — | 757,686 | 757,686 |
| Patient service, net of provision for bad debts | — | — | 120,353 | — | 120,353 |
| Emergency telephone service charges | — | — | — | 22,680 | 22,680 |
| Interest | — | — | — | 1,538 | 1,538 |
| Other | — | — | 692 | 51 | 743 |
| Total operating revenue | 209,454 | 157,732 | 121,045 | 800,618 | 1,288,849 |
| Operating expenses: | | | | | |
| Insurance benefits | 122,642 | — | — | 2,236 | 124,878 |
| Medical premiums and claims | — | 2,756,139 | — | — | 2,756,139 |
| Lottery prizes | — | — | — | 487,325 | 487,325 |
| Patient services | — | — | 152,995 | — | 152,995 |
| General, administrative, and other operating expenses | — | 24,372 | 54,419 | 116,651 | 195,442 |
| Release of provision for loan losses | — | — | — | (434,362) | (434,362) |
| Total operating expenses | 122,642 | 2,780,511 | 207,414 | 171,850 | 3,282,417 |
| Operating income (loss) | 86,812 | (2,622,779) | (86,369) | 628,768 | (1,993,568) |
| Nonoperating revenue (expenses): | | | | | |
| U.S. government grants | 1,394 | 1,866,583 | — | 6,813 | 1,874,790 |
| Contributions to component units | — | — | — | (1,441) | (1,441) |
| Interest and investment earnings | 11,559 | 2,032 | — | 3,306 | 16,897 |
| Interest expense | — | (10,997) | (25,175) | (1,498) | (37,670) |
| Other | — | 5,614 | — | 488 | 6,102 |
| Total nonoperating revenue (expenses) | 12,953 | 1,863,232 | (25,175) | 7,668 | 1,858,678 |
| Income (loss) before transfers | 99,765 | (759,547) | (111,544) | 636,436 | (134,890) |
| Transfers from other funds | — | 891,942 | 41,350 | 10,386 | 943,678 |
| Transfers to other funds | (43,854) | — | — | (175,174) | (219,028) |
| Net change in net position | 55,911 | 132,395 | (70,194) | 471,648 | 589,760 |
| Net position (deficit)– beginning of year, as adjusted (note 4) | 480,620 | (139,687) | (873,242) | 11,818 | (520,491) |
| Net position (deficit)– end of year | $ 536,531 | (7,292) | (943,436) | 483,466 | 69,269 |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Cash Flows – Proprietary Funds

Year ended June 30, 2017

(In thousands)

| | | Business-Type Activities – Enterprise Funds | | | |
|---|---|---|---|---|---|
| | Unemployment Insurance | Puerto Rico Health Insurance Administration | Puerto Rico Medical Services Administration | Nonmajor proprietary | Total proprietary |
| **Cash flows from operating activities:** | | | | | |
| Receipts from customers and users | $ 221,611 | 77,908 | 100,748 | 802,574 | 1,202,841 |
| Other receipts | — | — | 692 | 51 | 743 |
| Payments to healthcare organizations and third party administrators | — | (2,764,643) | — | — | (2,764,643) |
| Payments to suppliers | — | (11,466) | (15,989) | (86,054) | (113,509) |
| Payments to employees | — | (4,207) | (101,777) | (27,350) | (133,334) |
| Payments of lottery prizes | — | — | — | (511,869) | (511,869) |
| Payments of insurance benefits | (126,499) | — | — | (2,392) | (128,891) |
| Net cash provided by (used in) operating activities | 95,112 | (2,702,408) | (16,326) | 174,960 | (2,448,662) |
| **Cash flows from noncapital financing activities:** | | | | | |
| U.S. government grants | 1,394 | 1,933,391 | — | 6,813 | 1,941,598 |
| Contributions to component units | — | — | — | (1,441) | (1,441) |
| Interest paid | — | (2) | (8,228) | — | (8,230) |
| Transfers from other funds | — | 900,229 | 33,151 | 6,996 | 940,376 |
| Transfers to other funds | (46,796) | — | — | (196,026) | (242,822) |
| Net cash provided by (used in) noncapital and related financing activities | (45,402) | 2,833,618 | 24,923 | (183,658) | 2,629,481 |
| **Cash flows from capital and related financing activities:** | | | | | |
| Transfers from other funds | — | — | — | 3,390 | 3,390 |
| Transfers to other funds | — | — | — | (2,328) | (2,328) |
| Principal payment | — | — | — | (50) | (50) |
| Capital expenditures | — | (1,906) | (1,223) | (108) | (3,237) |
| Net cash provided (used) by capital and related financing activities | — | (1,906) | (1,223) | 904 | (2,225) |
| **Cash flows from investing activities:** | | | | | |
| Interest collected on deposits, investments, and loans | 11,512 | 1,479 | — | 8,395 | 21,386 |
| Loans originated | — | — | — | (21,133) | (21,133) |
| Principal collected on loans | — | — | — | 131 | 131 |
| Proceeds from sales and maturities of investments | — | — | — | 4,964 | 4,964 |
| Purchases of investments | — | — | — | (6,000) | (6,000) |
| Net cash provided by (used in) investing activities | 11,512 | 1,479 | — | (13,643) | (652) |
| Net change in cash and cash equivalents | 61,222 | 130,783 | 7,374 | (21,437) | 177,942 |
| Cash and cash equivalents at beginning of year | 497,996 | 69,615 | 3,897 | 197,901 | 769,409 |
| Cash and cash equivalents at end of year | $ 559,218 | 200,398 | 11,271 | 176,464 | 947,351 |
| **Reconciliation of operating income (loss) to net cash provided by (used in) operating activities:** | | | | | |
| Operating income (loss) | $ 86,812 | (2,622,779) | (86,369) | 628,768 | (1,993,568) |
| Adjustments to reconcile operating income (loss) to net cash provided by (used in) operating activities: | | | | | |
| Interests earned on deposits, loans, and investments | — | — | — | (1,538) | (1,538) |
| Depreciation | — | 194 | 5,444 | 1,405 | 7,043 |
| Provision for bad debts | — | 90,677 | 18,643 | — | 109,320 |
| Gain on disposition of capital assets | — | — | 8 | — | 8 |
| Release of provision for loan losses | — | — | — | (434,362) | (434,362) |
| Changes in operating assets and liabilities: | | | | | |
| Decrease (increase) in accounts and loans receivable | 9,195 | (79,824) | (20,492) | 9,437 | (81,684) |
| Increase in due from component units | — | — | (1,142) | — | (1,142) |
| Decrease in due from other governmental entities | — | — | 1,533 | — | 1,533 |
| Decrease (increase) in other assets | — | 258 | 496 | (840) | (86) |
| Decrease (increase) in deferred outflow of resources | — | (1,479) | (37,899) | 2,811 | (36,567) |
| Decrease in accounts payable and accrued liabilities | — | (16,461) | (30,444) | (7,448) | (54,353) |
| Increase in due to component units | — | — | — | 36,110 | 36,110 |
| Decrease in due to other governmental entities | — | — | (2,120) | (1) | (2,121) |
| Increase in unearned revenue | 2,962 | — | — | 4,050 | 7,012 |
| Increase (decrease) in compensated absences | — | 272 | (734) | (3,201) | (3,663) |
| Increase in deferred inflow of resources | — | 90 | 2,465 | 132 | 2,687 |
| Increase in net pension liability | — | 2,671 | 71,698 | 2,001 | 76,370 |
| Decrease in obligation for unpaid lottery prizes | — | — | — | (24,544) | (24,544) |
| Decrease in voluntary termination benefits payable | — | (203) | — | (1,553) | (1,756) |
| Decrease in liability for unemployment, disability and health insurance | (3,857) | (75,824) | — | (157) | (79,838) |
| Increase in other long-term liabilities | — | — | 26,477 | — | 26,477 |
| Total adjustments | 8,300 | (79,629) | 70,043 | (453,808) | (455,094) |
| Net cash provided by (used in) operating activities | $ 95,112 | (2,702,408) | (16,326) | 174,960 | (2,448,662) |
| **Noncash capital and financing activities:** | | | | | |
| Retirement of capital assets | $ — | 82 | 1,648 | — | 1,730 |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Fiduciary Net Position – Fiduciary Funds

June 30, 2017

(In thousands)

| | Pension (and other employee benefit) trust | Agency |
|---|---:|---:|
| Assets: | | |
| Cash and cash equivalents in commercial banks: | | |
| Unrestricted | $ 323,650 | 629,861 |
| Restricted | 216,483 | — |
| Cash and cash equivalents with governmental banks: | | |
| Unrestricted | — | 50 |
| Receivables – net: | | |
| Employers – net | 36,172 | — |
| Accrued interest and dividends | 183 | — |
| Investments sold | 406 | — |
| Other | 20,544 | — |
| Collateral from securities lending transactions | 8,218 | — |
| Investments at fair value: | | |
| Bonds and notes | 184,655 | — |
| Nonexchange commingled trust funds | 385,718 | — |
| Investments in limited partnerships | 90,591 | — |
| Member loans and interest receivable – net | 839,660 | — |
| Capital assets – net | 24,923 | — |
| Other assets | 1,234 | — |
| Total assets | 2,132,437 | 629,911 |
| Liabilities: | | |
| Accounts payable and accrued liabilities | 291,551 | 629,911 |
| Interest payable | 14,076 | — |
| Payable for investment securities purchased | 205 | — |
| Securities lending obligations | 8,218 | — |
| # | 162,197 | — |
| Other liabilities | 55,352 | — |
| Bonds payable | 3,166,472 | — |
| Total liabilities | 3,698,071 | 629,911 |
| Net position: | | |
| Restricted for pensions to be provided by TRS | 516,966 | — |
| Restricted for pensions to be provided by JRS | 26,252 | — |
| Unrestricted (deficit) ERS | (2,108,852) | — |
| Total net position (deficit) | $ (1,565,634) | — |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Statement of Changes in Fiduciary Net Position – Pension (and Other Employee Benefit) Trust Funds

Year ended June 30, 2017

(In thousands)

| | | |
|---|---:|---:|
| Additions: | | |
| Contributions: | | |
| Employer contributions: | | |
| Basic benefits, net of provision for allowance of $442,861 | $ | 887,481 |
| Special benefits | | 444,440 |
| Member contributions | | 419,040 |
| Total contributions | | 1,750,961 |
| Investment income and investment expense: | | |
| Net appreciation in fair value of investments | | 3,592 |
| Interest | | 74,355 |
| Dividends | | 536 |
| Investment expense, other than from security lending | | (2,578) |
| Net income from investing, other than from security lending | | 75,905 |
| Securities lending income | | 31 |
| Net income from security lending | | 31 |
| Net investment income | | 75,936 |
| Other income | | 58,861 |
| Total additions | | 1,885,758 |
| Deductions: | | |
| Benefits paid to participants | | 2,432,868 |
| Refunds of contributions | | 48,849 |
| Interest on bonds payable | | 198,084 |
| General and administrative | | 48,934 |
| Other expenses | | 387,057 |
| Total deductions | | 3,115,792 |
| Net decrease in net position | | (1,230,034) |
| Net position: | | |
| Beginning of year | | (335,600) |
| End of year | $ | (1,565,634) |

See accompanying notes to basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Net Position – Discretely Presented Component Units

June 30, 2017

(In thousands)

| | Government Development Bank for Puerto Rico | Puerto Rico Highways and Transportation Authority | Puerto Rico Electric Power Authority | Puerto Rico Aqueduct and Sewer Authority | University of Puerto Rico | State Insurance Fund Corporation | Major component units totals | Nonmajor component units totals | All component units totals |
|---|---|---|---|---|---|---|---|---|---|
| **Assets:** | | | | | | | | | |
| Cash and cash equivalents in commercial banks | $ 209,609 | 33,071 | 532,943 | 85,718 | 307,322 | 41,073 | 1,209,736 | 323,032 | 1,532,768 |
| Cash and cash equivalents with governmental banks | — | — | — | — | — | — | — | 41,858 | 41,858 |
| Investments | 133,388 | — | — | — | 3,030 | 731,581 | 867,999 | 475,965 | 1,343,964 |
| Collateral from securities lending transactions | — | — | — | — | — | 13,842 | 13,842 | — | 13,842 |
| Receivables – net: | | | | | | | | | |
| Insurance premiums | — | — | — | — | — | 42,410 | 42,410 | — | 42,410 |
| Intergovernmental | — | 19,683 | 5,747 | 1,509 | 34,598 | — | 61,537 | 25,832 | 87,369 |
| Accounts | — | 6,604 | 360,037 | 153,979 | 27,991 | — | 548,611 | 78,056 | 626,667 |
| Loans and advances | 2,560,006 | — | — | — | 5,125 | — | 2,565,531 | 121,591 | 2,686,922 |
| Accrued interest | 50,163 | 1,255 | 153 | — | — | 1,540 | 53,111 | 5,784 | 58,895 |
| Other | 3,068 | — | 26,554 | — | 1,809 | 6,546 | 37,977 | 6,475 | 44,452 |
| Due from – net: | | | | | | | | | |
| Primary government | — | 12,717 | 39,274 | 17,794 | 3,837 | — | 73,622 | 45,717 | 119,339 |
| Component units | 380,203 | — | 61,887 | 2,973 | 5,026 | — | 449,889 | 19,621 | 469,510 |
| Other governmental entities | — | — | 384,050 | 23,899 | 11,506 | — | 419,455 | 12,709 | 432,164 |
| Inventories | — | — | 212,928 | 27,842 | 3,543 | 2,883 | 247,196 | 11,278 | 258,474 |
| Prepaid expenses | — | 10,412 | 878 | 4,652 | 2,793 | — | 18,735 | 17,179 | 35,914 |
| Other assets | 943 | 574 | — | — | — | — | 1,517 | 20,054 | 21,571 |
| Restricted assets: | | | | | | | | | |
| Cash and cash equivalents in commercial banks | 41,345 | 46,535 | 53,950 | 316,322 | 22,714 | — | 480,866 | 64,463 | 545,329 |
| Cash and cash equivalents with governmental banks | — | — | — | 4,636 | — | — | 4,636 | 30 | 4,666 |
| Investments | 167,026 | 78,560 | — | — | 241,929 | — | 487,515 | 900,940 | 1,388,455 |
| Other restricted assets | 6,362 | — | — | — | — | — | 6,362 | 39,414 | 45,776 |
| Real estate held for sale or future development | 59,940 | — | — | — | — | — | 59,940 | 180,655 | 240,595 |
| Capital assets: | | | | | | | | | |
| Land and other nondepreciable | 23,453 | 2,396,084 | 621,870 | 408,323 | 60,814 | 54,844 | 3,565,388 | 1,127,879 | 4,693,267 |
| Depreciable – net | 1,013 | 7,628,814 | 5,675,112 | 6,590,247 | 815,449 | 69,030 | 20,779,665 | 2,142,900 | 22,922,565 |
| Total assets | 3,636,719 | 10,234,309 | 7,975,183 | 7,637,894 | 1,547,486 | 963,749 | 31,995,340 | 5,661,432 | 37,656,772 |
| **Deferred outflows of resources:** | | | | | | | | | |
| Accumulated decrease in fair value of hedging derivatives | — | — | 48,132 | — | — | — | 48,132 | — | 48,132 |
| Loss on bonds refunding | 2,151 | 93,315 | 40,994 | 23,027 | 1,943 | — | 161,430 | 14,821 | 176,251 |
| Other post employment benefits related | — | — | — | 6,815 | — | — | 6,815 | — | 6,815 |
| Pension related | 51,404 | 105,238 | 1,541,743 | 338,868 | 220,168 | 393,366 | 2,650,787 | 405,728 | 3,056,515 |
| Total deferred outflows of resources | 53,555 | 198,553 | 1,630,869 | 368,710 | 222,111 | 393,366 | 2,867,164 | 420,549 | 3,287,713 |

(Continued)

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Net Position – Discretely Presented Component Units

June 30, 2017

(In thousands)

| | Government Development Bank for Puerto Rico | Puerto Rico Highways and Transportation Authority | Puerto Rico Electric Power Authority | Puerto Rico Aqueduct and Sewer Authority | University of Puerto Rico | State Insurance Fund Corporation | Major component units totals | Nonmajor component units totals | All component units totals |
|---|---|---|---|---|---|---|---|---|---|
| Liabilities: | | | | | | | | | |
| Accounts payable and accrued liabilities | 102,405 | 123,088 | 1,023,826 | 274,002 | 87,401 | 79,987 | 1,690,709 | 439,940 | 2,130,649 |
| Deposits and escrow liabilities | 3,215,122 | — | 246,831 | 88,371 | — | — | 3,550,324 | 222,087 | 3,772,411 |
| Due to: | | | | | | | | | |
| Primary government | — | 1,321 | 2,259 | 581,276 | — | 7,200 | 592,056 | 135,464 | 727,520 |
| Component units | — | 1,990,380 | 39,858 | 93,483 | 98,835 | 1,300 | 2,223,856 | 1,252,665 | 3,476,521 |
| Other governmental entities | — | — | — | 5,810 | 18,186 | 20,533 | 44,329 | 131,000 | 175,329 |
| Securities lending obligations and reverse repurchase agreements | — | — | — | — | — | 13,842 | 13,842 | — | 13,842 |
| Interest payable | 214,509 | 535,657 | 228,265 | 186,151 | — | — | 1,164,582 | 178,667 | 1,343,249 |
| Unearned revenue | 3,032 | — | 11,976 | 20,123 | — | 14,852 | 49,983 | 61,471 | 111,454 |
| Liabilities payable within one year: | | | | | | | | | |
| Commonwealth appropriation bonds | 170 | — | — | 19,390 | — | — | 19,560 | 8,432 | 27,992 |
| Revenue bonds | 30,414 | 130,725 | 584,582 | 68,852 | 24,455 | — | 839,028 | 97,855 | 936,883 |
| Notes payable to financial institutions | 946,685 | — | 896,897 | 1,810 | 226 | 7,148 | 1,652,566 | 50,484 | 1,703,050 |
| Capital leases | — | — | — | — | — | 1,039 | 1,039 | 362 | 1,401 |
| Compensated absences | — | 5,657 | 55,367 | 10,868 | 27,003 | — | 98,895 | 26,031 | 124,926 |
| Voluntary termination benefits | — | 11,569 | — | — | — | — | 11,569 | 21,961 | 33,530 |
| Liability for insurance benefits | — | — | — | — | — | 708,492 | 708,492 | 66,289 | 774,781 |
| Other long-term liabilities | 27,775 | 13,217 | — | 3,925 | 1,170 | 44,679 | 90,766 | 8,714 | 99,480 |
| Liabilities payable after one year: | | | | | | | | | |
| Commonwealth appropriation bonds | 3,166 | — | — | 396,668 | — | — | 399,834 | 100,311 | 500,145 |
| Revenue bonds | 86,063 | 4,202,478 | 7,771,732 | 3,910,974 | 466,700 | — | 16,437,947 | 1,197,847 | 17,635,794 |
| Notes payable to financial institutions | 2,891,850 | — | 20,569 | — | 647 | 2,231 | 2,915,297 | 349,618 | 3,264,915 |
| Capital leases | — | — | — | — | — | 25,690 | 25,690 | 814 | 26,504 |
| Compensated absences | — | 14,438 | 88,232 | 103,056 | 119,431 | 34,181 | 359,338 | 14,310 | 373,648 |
| Voluntary termination benefits | — | 50,898 | — | — | — | — | 50,898 | 80,706 | 131,604 |
| Net pension obligation | — | — | — | — | — | — | — | 21,546 | 21,546 |
| Net pension liability | 203,367 | 550,824 | 4,866,535 | 1,575,926 | 2,006,703 | 1,713,281 | 10,716,636 | 1,857,327 | 12,573,963 |
| Hedging derivative instruments – interest rate swaps | — | — | 48,132 | — | — | — | 48,132 | — | 48,132 |
| Other long-term liabilities | 169,636 | 91,406 | 247,222 | — | 120,835 | 47,248 | 676,347 | 85,352 | 761,699 |
| Total liabilities | 7,894,194 | 7,721,658 | 15,732,283 | 7,340,285 | 2,971,592 | 2,721,703 | 44,381,715 | 6,409,253 | 50,790,968 |
| Deferred inflows of resources: | | | | | | | | | |
| Service concession arrangements | — | 1,138,103 | — | — | — | — | 1,138,103 | 681,708 | 1,819,811 |
| Other post employment benefits related | — | — | — | 7,794 | — | — | 7,794 | — | 7,794 |
| Pension related | 3,892 | 20,257 | 47,343 | 30,162 | 172,913 | 32,791 | 307,358 | 104,490 | 411,848 |
| Total deferred inflows of resources | 3,892 | 1,158,360 | 47,343 | 37,956 | 172,913 | 32,791 | 1,453,255 | 786,198 | 2,239,453 |
| Net position: | | | | | | | | | |
| Net investment in capital assets | 15,815 | 2,621,106 | (2,075,907) | 2,195,602 | 390,707 | 87,765 | 3,235,088 | 1,620,343 | 4,855,431 |
| Restricted for: | | | | | | | | | |
| Capital projects | — | 13,725 | — | — | 18,360 | — | 32,085 | 44,492 | 76,577 |
| Debt service | 5,705 | 35,410 | — | — | 32,631 | — | 73,746 | 82,742 | 156,488 |
| Affordable housing and related loan insurance programs | 32,223 | — | — | — | — | — | 32,223 | — | 32,223 |
| Student loans and other educational purposes | — | — | — | — | 105,596 | — | 105,596 | 5,044 | 110,640 |
| Other | — | — | — | 79,606 | 17,642 | — | 97,248 | 145,643 | 242,891 |
| Unrestricted (deficit) | (4,261,555) | (1,117,397) | (4,097,667) | (1,646,845) | (1,939,844) | (1,485,144) | (14,548,452) | (3,011,734) | (17,560,186) |
| Total net position (deficit) | $ (4,207,812) | 1,552,844 | (6,173,574) | 628,363 | (1,374,908) | (1,397,379) | (10,972,466) | (1,113,470) | (12,085,936) |

See accompanying notes to basic financial statements.

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Activities – Discretely Presented Component Units

Year ended June 30, 2017

(In thousands)

| Major component units | Expenses | Charges for services | Operating grants and contributions | Capital grants and contributions | Net revenue (expenses) and changes in net position | Payments from (to) primary government | Payments from (to) other component units | Grants and contributions not restricted to specific programs | Interest and investment earnings | Excise taxes and others | Change in net position | Net position (deficit) – beginning of year, as previously reported | Correction of errors and adoption of new pronouncements (note 4) | Net position (deficit) – beginning of year, as adjusted and restated | Net position (deficit) end of year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Government Development Bank for Puerto Rico | $ 628,272 | 269,499 | 176,665 | — | (182,108) | — | (821) | — | — | — | (182,929) | (3,733,711) | (291,172) | (4,024,883) | (4,207,812) |
| Puerto Rico Highways and Transportation Authority | 1,031,188 | 226,641 | 33,036 | 93,102 | (678,407) | 140,339 | — | — | 24,019 | 3,355 | (510,694) | 2,569,883 | (506,345) | 2,063,538 | 1,552,844 |
| Puerto Rico Electric Power Authority | 4,514,243 | 3,264,748 | — | 7,317 | (1,242,178) | — | (6,300) | — | 37,117 | — | (1,211,361) | (4,838,066) | (124,147) | (4,962,213) | (6,173,574) |
| Puerto Rico Aqueduct and Sewer Authority | 1,247,589 | 1,032,003 | — | 4,616 | (211,570) | — | — | — | 2,329 | 4,661 | (204,580) | 2,054,488 | (1,221,545) | 832,943 | 628,363 |
| University of Puerto Rico | 1,311,984 | 197,413 | 295,822 | — | (818,752) | 872,193 | 62,225 | — | 6,491 | 10,855 | 133,012 | (1,507,920) | — | (1,507,920) | (1,374,908) |
| State Insurance Fund Corporation | 986,144 | 584,134 | — | — | (402,010) | (49,011) | — | — | — | 99,877 | (351,144) | (1,117,367) | 71,132 | (1,046,235) | (1,397,379) |
| Nonmajor component units | 1,623,028 | 702,876 | 185,410 | 5,876 | (728,866) | 207,461 | (55,104) | 3,084 | 65,712 | 92,741 | (414,972) | 324,881 | (1,023,379) | (698,498) | (1,113,470) |
| | $ 11,342,448 | 6,277,311 | 690,935 | 110,311 | (4,263,891) | 1,170,982 | — | 3,084 | 135,668 | 211,459 | (2,742,668) | (6,247,812) | (3,095,455) | (9,343,268) | (12,085,936) |

See accompanying notes to basic financial statements.

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

## (1) Summary of Significant Accounting Policies

The Commonwealth of Puerto Rico (the Commonwealth) was constituted on July 25, 1952, under the provisions of the Commonwealth's Constitution as approved by the people of Puerto Rico and the U.S. Congress. The Commonwealth's Constitution provides for the separation of powers of the executive, legislative, and judicial branches of the government. The Commonwealth assumes responsibility for general government, public safety, health, public housing and welfare, education, and economic development. On June 30, 2016, as a result of the current fiscal crisis that affects the Commonwealth (as further described below in Note 2 and Note 3), the Financial Oversight and Management Board for Puerto Rico (the Oversight Board), was established under the Puerto Rico Oversight, Management and Economic Stability Act (PROMESA) with broad powers to exercise budgeting and financial controls over the Commonwealth's fiscal affairs, including review and approval of certain governmental functions.

The accompanying basic financial statements of the Commonwealth are presented in conformity with U.S. Generally Accepted Accounting Principles (U.S. GAAP) for governments as prescribed by the Governmental Accounting Standards Board (GASB).

The accompanying basic financial statements present the financial position of the Commonwealth and its various funds and discretely presented component units, the results of operations of the Commonwealth and its various funds and discretely presented component units, and the cash flows of the proprietary funds.

### (a) Financial Reporting Entity

As required by U.S. GAAP, the financial reporting entity of the Commonwealth includes all departments, agencies, funds, functions, and public corporations that have been determined to meet the requirements for inclusion in the Commonwealth's financial reporting entity. The Commonwealth has considered all potential discretely presented component units for which it is financially accountable and other organizations for which the nature and significance of their relationship with the Commonwealth are such that exclusion would cause the Commonwealth's basic financial statements to be misleading or incomplete. The GASB has set forth criteria to be considered in determining financial accountability. These criteria include when the Commonwealth appoints a voting majority of an organization's governing body and it has (i) the ability to impose its will on that organization or (ii) the potential for the organization to provide specific financial benefits to, or impose specific financial burdens on, the Commonwealth. In situations where the Commonwealth has not appointed the voting majority of an organization's governing body, the GASB has then provided as criteria for financial accountability the fiscal dependency of such organizations on the Commonwealth and when there is a potential for the organization to provide specific financial benefits to, or impose specific financial burdens on, the Commonwealth.

### (b) Component Units

The basic financial statements of the component units discussed below have been included in the financial reporting entity either as blended component units or as discretely presented component units in accordance with GASB Statements No. 14, *The Financial Reporting Entity*, as amended by GASB Statements No. 39, *Determining Whether Certain Organizations Are Component Units—an amendment of GASB Statement No. 14* and No. 61, *The Financial Reporting Entity: Omnibus—an amendment of GASB Statements No. 14 and No. 34.*

#### (i) Blended Component Units

The following entities, while legally separate from the Commonwealth, meet the blending criteria to be reported as part of the Primary Government as follows:

*Puerto Rico Fiscal Agency and Financial Advisory Authority (FAFAA)* – On April 6, 2016, Act No. 21 (Act No. 21-16) was approved creating the FAFAA as an independent public corporation and

45

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

government instrumentality with separate legal existence, fiscal and administrative autonomy, and independence from the Commonwealth. FAFAA was created for the purpose of acting as fiscal agent, financial advisor and reporting agent of the Commonwealth, its agencies, instrumentalities, subdivisions, public corporations and/or municipalities, and to assist such entities in confronting the fiscal and economic emergency that Puerto Rico is experiencing. The FAFAA assumed the fiscal agency and financial advisory responsibilities that were previously held by the Government Development Bank (GDB). On January 18, 2017, the Governor of Puerto Rico (the Governor) signed into law the Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act No. 2-2017. This new law amended and replaced sections of the prior law that established FAFAA. Act No. 2-2017 expanded FAFAA's powers to include, among other things, sole responsibility to renegotiate, to restructure and/or to reach an agreement with creditors on all or part of the public debt or any other debt issued by any government entity. In addition, FAFAA is the entity in charge of the collaboration, communication and cooperation efforts between the Commonwealth and the Oversight Board, created under PROMESA.

The Board of Directors of FAFAA was initially composed of only one member appointed by the Governor but upon the enactment of Act No. 2-2017 the Board is now composed of five members: (1) FAFAA's Executive Director appointed by the Governor, (2) a representative of the Senate of Puerto Rico, (3) a representative of the House of Representatives of Puerto Rico which will be appointed by the President of each Legislative Body, and (4) two members appointed by the Governor. The members can only be replaced and/or removed by the entity who appointed them. The members of the Board of Directors will select a President, Vice-President and Secretary among them. FAFAA does not have legal authority to issue bonds, notes or any other debt instrument; however, it will be the principal financial advisor in future debt issuances of any instrumentality of the Commonwealth. FAFAA's annual budget will be assigned by the Legislature of Puerto Rico (the Legislature) with available funds from the General Fund, special assignments or any other identified revenue.

*Ponce Ports Authority (PPA)* – On December 12, 2011, Act No. 240 (Act No. 240-2011) was approved creating the PPA, with a seven-member board composed of (1) the Secretary of the Department of Economic Development and Commerce (DEDC), (2) the director of the Ponce port, (3) three members to be appointed by the Governor with the consent of the Senate and (4) two members to be appointed by the Mayor of Ponce with the consent of the Ponce Municipal Legislature. PPA was created to continue the development of the container terminal formerly undertaken by Ponce Authority (PA) and to implement the facilities' future operations. Therefore, all of the assets, rights and duties of PA (with the exception of its existing debt) would be transferred to PPA. Effective fiscal year 2015, the PPA board was formed and operations started. However, as of June 30, 2017, the PA assets have not been transferred to PPA. On December 19, 2013, Act No. 156 was approved amending Act No. 240-2011 by, among other things, authorizing PPA to request a line of credit of up to $60 million from GDB and establishing that the payment of such debt would be satisfied with annual Commonwealth's legislative appropriations starting in fiscal year 2015. As the total debt outstanding of PPA is payable from Commonwealth's legislative appropriations, PPA's basic financial statements are blended in the Commonwealth's fund financial statements as an enterprise fund.

*Ponce Authority (PA) (Previously Known as Port of the Americas Authority)* – On August 12, 2016 the Governor signed into law Act No. 176-2016, known as "Law of the Ponce Authority", to amend various articles from Act No. 171-2002. Act No. 176-2016 re-named the Port of the Americas Authority to Ponce Authority, changed the PA's governance structure, and expanded its purposes, faculties and powers, including through the creation of a new Coordinated Infrastructure Master Plan

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

for the City of Ponce. After the enactment of Act No. 176-2016, PA is now governed by a seven-member board co-presided by the Secretary of the DEDC and the Director of the Ponce Territorial Order Office. The other members include (1) the Secretary of the Department of Natural and Environmental Resources (DNER), (2) an architect or certified planner, who is a resident of Ponce and appointed by the Governor with the consent of the Senate, (3) an economist, who is a resident of Ponce and appointed by the Governor with the consent of the Senate, (4) a civil engineer, who must be a resident of Ponce and appointed by the Mayor of Ponce with the consent of the Municipal Legislature, and (5) a small businesses representative, who must be a resident of Ponce and appointed by the Mayor of Ponce with the consent of the Municipal Legislature. The main purpose of the PA is the promotion, development, improvement and operation of the large-scale container terminal in the city of Ponce, Puerto Rico. The PA must also prepare a coordinated master plan for the Infrastructure of Ponce. The Commonwealth provides financial support to the PA through legislative appropriations and its current existing debt is guaranteed by the Commonwealth pursuant to the provisions of Act No. 409 of September 22, 2004 (Act No. 409-2004). The Commonwealth continues to provide financial support to this new entity PA. Therefore, PA's basic financial statements are blended in the Commonwealth's fund financial statements as a special revenue fund.

*Public Buildings Authority (PBA)* – PBA is governed by a seven-member board comprised of the Secretary of the Department of Transportation and Public Works (DTPW), the Secretary of the Department of Education (DOE) of the Commonwealth, the President of the GDB, and four members appointed by the Governor with the advice and consent of the Senate. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA as of January 18, 2017. PBA is a legally separate entity, whose activities are blended within the Primary Government because it exists to construct, purchase, or lease office, school, health, correctional, social welfare, and other facilities to the Commonwealth's departments, component units, and instrumentalities. Bonds issued by the PBA to finance such facilities are payable from the rent revenues of certain government facilities leased by PBA and are further supported by a guarantee of the Commonwealth. Therefore, the basic financial statements of the PBA are blended in the Commonwealth's fund financial statements as a special revenue, debt service, and capital project fund. On September 27, 2019, the Oversight Board—at the request of the Governor—commenced a Title III case for PBA by filing a petition for relief under Title III of PROMESA in the Title III Court.

*Puerto Rico Health Insurance Administration (PRHIA)* – PRHIA is governed by a board of directors, which, by law, is composed of eleven members (six compulsory members and five discretionary members). The compulsory members are the Secretary of the Department of Health (PRDOH) of the Commonwealth, the Secretary of the Department of Treasury (DOT) of the Commonwealth, the Director of the Office of Management and Budget of the Commonwealth (PROMB), the President of the GDB, the Insurance Commissioner of Puerto Rico, and the Administrator of the Administration of Services of Mental Health and Addiction. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA as of January 18, 2017. The five discretionary members are appointed by the Governor, with the advice and consent of the Senate. The board of directors' president is designated by the Governor and all discretionary board members are executives in a trustworthy position. PRHIA was created for implementing, administering, and negotiating a health insurance system through contracts with insurance underwriters to provide quality medical and hospital care to low income individuals (via the Medicaid program administered and funded primarily by the Centers for Medicare and Medicaid Services through a memorandum of understanding with the PRDOH); and also to employees of the Commonwealth, Municipalities and policemen who voluntarily subscribe to the

47

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Puerto Rico health insurance medical plan in exchange for a fee paid by them through payroll deductions. PRHIA also recovers its operating costs through charges made to Municipalities and a rebate program with pharmacies where PRHIA retains 100% of the income derived from this program. Since 2015, the Commonwealth appropriates funds from its general fund budget to provide resources for the payment of principal and interests on the PRHIA's line of credit obligation, which is the total debt outstanding of PRHIA. Therefore, PRHIA's basic financial statements are blended in the Commonwealth's fund financial statements as an enterprise fund.

*Puerto Rico Infrastructure Financing Authority (PRIFA)* – PRIFA is governed by a seven-member board comprised of five members appointed by the board of the directors of the GDB, the Secretary of the DOT and one member appointed by the Governor. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA as of January 18, 2017. The members of PRIFA's board of directors are executives in trustworthy positions, named and supervised by the Governor. The President is appointed by the Governor from among its members. PRIFA is a financing authority whose responsibilities are to provide financial, administrative, consulting, technical, advisory, and other types of assistance to other component units and governmental instrumentalities of the Commonwealth, which are authorized to develop infrastructure facilities and to establish alternate means for financing them. PRIFA's total debt outstanding, mostly Special Tax Revenue Bonds comprising over 95% of its total debt is payable from federal excise taxes levied on the rum and other articles produced in Puerto Rico and sold in the United States, which taxes are collected by the U.S. Department of the Treasury and returned to the Commonwealth. These revenues are the subject of pending litigation in the Commonwealth's Title III case. PRIFA's remaining debt, other than the Special Tax Revenue Bonds, is payable from Commonwealth legislative appropriations. Therefore, PRIFA's basic financial statements are blended in the Commonwealth's fund financial statements as a special revenue, debt service and capital project fund.

*Puerto Rico Maritime Shipping Authority (PRMSA)* – PRMSA is governed by the President of the GDB. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA as of January 18, 2017. The operations of PRMSA have been limited to processing the remaining legal requirements resulting from the sale of certain maritime operations formerly owned and operated by PRMSA. Such legal requirements consist solely of servicing the long-term debt that remained in PRMSA after the sale. The Commonwealth should appropriate annually funds in its general operating budget to provide for the payment of principal and interest on such debt, which is the total debt outstanding. Therefore, PRMSA's basic financial statements are blended in the Commonwealth's fund financial statements as a debt service fund.

*Puerto Rico Medical Services Administration (PRMeSA)* – PRMeSA is governed by a ten-member board comprised of the Secretary of the PRDOH (who serve as the Chairman), the Dean of the Medical Sciences Faculty of the University of Puerto Rico (UPR), the President of the board of directors of the Puerto Rican League Against Cancer, the Mayor of the Municipality of San Juan, the Administrator of the State Insurance Fund Corporation, the Administrator of the Administration of Mental Health and Addiction Services, the President of the Medical Policy and Administration Committee, the Secretary of the Department of Family, and two members appointed by the Secretary of the PRDOH. PRMeSA's purpose is to plan, organize, operate, and administer the Commonwealth's centralized health services, and provided support for the hospital and other functions, offered by the member institutions and users of the medical complex known as the Puerto Rico Medical Center. The Commonwealth should annually appropriate funds from its general operating budget to provide for the payment of principal and interest of its debt, which is the total

48

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

debt outstanding of PRMeSA. Therefore, PRMeSA's basic financial statements are blended in the Commonwealth's fund financial statements as an enterprise fund.

*Puerto Rico Sales Tax Financing Corporation (Known as COFINA, its Spanish Acronym)* – COFINA was created under Act No. 91-2006, as amended by the Legislature. COFINA was originally created for the purpose of financing the payment, retirement, or defeasance of certain debt obligations of the Commonwealth outstanding at June 30, 2006 (the 2006 Appropriation Debt). During 2009, the Legislature expanded the purposes of COFINA to assist in funding operational expenses of the Commonwealth for 2009 through 2012, to the extent included in the annual budget of the Commonwealth. As of June 30, 2017, the board of directors of COFINA was comprised of the same members as the GDB board. As a consequence of Act No. 241-2018 and the effectiveness of the COFINA's Plan of Adjustment as described in Note 17(c), COFINA's board of directors is currently comprised of three members appointed by the Governor. Because COFINA's Sales Tax Revenue Bond obligations have historically been repaid with the Commonwealth's sales and use taxes as described in Note 13, its basic financial statements are blended in the Commonwealth's fund financial statements as a special revenue and debt service fund. As discussed in Note 3 and Note 17, COFINA has successfully completed its restructuring pursuant to a court-confirmed plan of adjustment under Title III of PROMESA, which became effective on February 12, 2019.

*Special Communities Perpetual Trust (SCPT)* – SCPT is governed by a board of directors composed of eleven members: the Secretary of the Department of Housing of the Commonwealth (the Commonwealth DOH), the Secretary of the DTPW of the Commonwealth, the Coordinator for the Social and Economic Financing of the Special Communities, one Mayor of a municipality of Puerto Rico, one community leader resident in one special community, four private citizens representing the public interest, and two public employees. All members of the board of directors are appointed by the Governor. SCPT's principal purpose is to fund development projects that address the infrastructure and housing needs of the underprivileged communities. Over the years since its inception, SCPT has seen its revenue sources diminish as its principal assets, mortgage loans, are being fully reserved. SCPT has accumulated debt with the GDB, which is payable from Commonwealth Legislative appropriations. Therefore, SCPT's basic financial statements are blended in the Commonwealth's fund financial statements as a special revenue and debt service fund.

*The Children's Trust* – The Children's Trust is governed by a seven-member board comprised of the Governor, who designates the president of the board, the President of the GDB, the Director of the OMB, the Secretary of Justice of the Commonwealth, and three private citizens appointed by the Governor with the advice and consent of the Senate. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA as of January 18, 2017. The Children's Trust's sole operation consists of providing financial assistance principally to the Commonwealth's departments to carry out projects aimed at promoting the wellbeing of families, children, and youth of Puerto Rico, especially in the areas of education, recreation, and health. The operation of the Children's Trust is financed with the moneys being received by the Commonwealth from a global settlement agreement (GSA) dated November 23, 1998 between certain tobacco companies and certain states, territories, and other jurisdictions of the United States of America, including the Commonwealth. The GSA calls for annual payments through the year 2025, which will vary due to inflationary and volume adjustments. After 2025, the tobacco companies should continue making contributions in perpetuity. As the Children's Trust provides financial assistance entirely or almost entirely to the Commonwealth's departments and its total debt outstanding is being repaid with the GSA resources received by the Commonwealth,

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

its basic financial statements are blended in the Commonwealth's fund financial statements as a special revenue and debt service fund.

*University of Puerto Rico Comprehensive Cancer Center (UPRCCC)* – UPRCCC is governed by a nine-member board comprising four ex officio members: the President of the UPR, the Chancellor of Medical Sciences Campus of the UPR, the Secretary of the PRDOH, and the Dean of the UPR School of Medicine. The remaining five (5) members must be citizens of Puerto Rico who have shown commitment to the fight against cancer, and are appointed by the Governor with the approval of the Commonwealth Senate with the following criteria: two members from the investigative studies or cancer treatment community; one member with experience in management, finance, or business administration, or with previous experience managing hospitals or medical investigation clinics; one member who is a cancer patient; and one member who will be a member of the "Liga Puertorriqueña Contra el Cancer." The Commonwealth provides financial support to UPRCCC through legislative appropriations. The UPRCCC was created by Act No. 230 of August 26, 2004 (Act No. 230-2004), to be the governmental entity principally responsible to execute public policy related to the prevention, orientation, investigation and treatment of cancer in Puerto Rico. On October 31, 2013, Act No. 128 (Act No. 128-2013) was approved amending Act No. 230-2004 in order to specifically establish that beginning with fiscal year 2015, annual Commonwealth legislative appropriations of $15 million could be made available to cover the debt service of the obligations incurred by the UPRCCC in its capital related projects, particularly the construction of its medical and hospital facilities. Prior to Act No. 128-2013, Act No. 230-2004 was not conclusive as to the revenue source from which to repay the aforementioned debt service. As the total debt outstanding is payable from Commonwealth's legislative appropriations, UPRCCC's basic financial statements are blended in the Commonwealth's fund financial statements as a special revenue fund.

The COFINA Debt Service Fund and the COFINA Special Revenue Fund are presented as major governmental funds, while PRMeSA and PRHIA are presented as major enterprise funds. All the other blended component units are reported in the nonmajor governmental funds column, except for PPA, which is reported in the nonmajor enterprise funds column. Complete basic financial statements of the blended component units can be obtained directly by contacting their respective administrative offices at:

Ponce Ports Authority
P.O. Box 7051
Ponce, PR 00752

Public Buildings Authority
P.O. Box 41029 – Minillas Station
San Juan, PR 00940-1029
Puerto Rico Health Insurance Administration
P.O. Box 195661
San Juan, PR 00919-5661
Puerto Rico Maritime Shipping Authority
P.O. Box 42001
San Juan, PR 00940-2001
Puerto Rico Sales Tax Financing Corporation
P.O. Box 42001
San Juan, PR 00940-2001
University of Puerto Rico Comprehensive
Cancer Center
PMB 711, 89 De Diego Ave., Suite 105
San Juan, PR 00927-6346

Ponce Authority (formerly known as Port of the
Americas Authority)
P.O. Box 195534
San Juan, PR 00919-5534
Puerto Rico Fiscal Agency and Financial
Advisory Authority
P.O. Box 42001
San Juan, PR 00940-2001
Puerto Rico Infrastructure Financing Authority
P.O. Box 41207 Minillas Station
San Juan, PR 00940
Puerto Rico Medical Services Administration
P.O. Box 2129
San Juan, PR 00922-2129
Special Communities Perpetual Trust
P.O. Box 42001
San Juan, PR 00940-2001

The Children's Trust
P.O. Box 42001
San Juan, PR 00940-2001

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(ii) *Discretely Presented Component Units*

The discretely presented component units described below, all legally separate entities, consistent with GASB Statement No. 14, as amended by GASB Statements No. 39 and No. 61, are discretely presented in the basic financial statements principally because of the nature of the services they provide, the Commonwealth's ability to impose its will, principally through the appointment of their governing authorities, and because the discretely presented component units provide specific financial benefits to, or impose financial burdens on, the Commonwealth (with the exception of Culebra Conservation and Development Authority and the Puerto Rico Science, Technology and Research Trust, which do not meet all these criteria, but the Commonwealth has determined it would be misleading to exclude them from the Commonwealth's financial reporting entity). These discretely presented component units are not blended with the Primary Government because they do not provide services entirely, or almost entirely to the Primary Government, their governing board is not substantively the same as that of the Primary Government, the Primary Government does not have any operational responsibilities over them, and they do not have total debt outstanding being repaid entirely or almost entirely with resources of the Primary Government. These discretely presented component units have been classified by management between major and nonmajor discretely presented component units. A major discretely presented component unit is determined by the Commonwealth based on the nature and significance of its relationship to the Primary Government. This determination is based on the evaluation of the following factors: a) the services provided by the discretely presented component unit to the citizenry are such that separate reporting as a major discretely presented component unit is considered to be essential to financial statement users, b) there are significant transactions with the Primary Government, or c) there is a significant financial benefit or burden relationship with the Primary Government. If a discretely presented component unit is expected to meet some of these considerations for inclusion as major discretely presented component unit in a future year, the Commonwealth may elect to report it as such.

*Major Discretely Presented Component Units*

*Government Development Bank for Puerto Rico (GDB)* – Prior to its decision on March 23, 2018 to cease operations and wind down under Title VI of PROMESA, GDB was governed by a seven-member board appointed by the Governor. GDB's board of directors' members were executives in a trustworthy position, named and supervised by the Governor. When operating prior to March 23, 2018, GDB acted as fiscal agent, depository of funds, disbursing agent, investor and financial advisor for the Commonwealth, its public corporations, and municipalities in connection with the issuance of bonds and notes; and it also issued warranties to third parties, made loans, and advanced funds predominantly to the Commonwealth's departments, component units, and municipalities.

Act No. 21-2016, known as the "Puerto Rico Emergency Moratorium and Financial Rehabilitation Act" (the Moratorium Act), created FAFAA to assume GDB's role as fiscal agent, financial advisor and reporting agent for the Commonwealth, its instrumentalities, and municipalities. This new fiscal agency and advisory authority commenced its functions as described above immediately upon the Moratorium Act's enactment. The Moratorium Act did not have an impact on the designation of GDB as a major discretely presented component unit for fiscal year 2017. The scope of FAFAA's powers were substantially expanded under Act No. 2-2017, as discussed in Note 3 and Note 23. For additional information regarding the Moratorium Act, refer to Note 3 and Note 23.

*Puerto Rico Aqueduct and Sewer Authority (PRASA)* – PRASA is governed by a nine-member board comprising six members appointed by the Governor with the advice and consent of the Senate (including the President of the Puerto Rico Planning Board), the Executive President of PREPA, the

51

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Executive Director of Mayors' Federation, and the Executive Director of Mayors' Association. PRASA owns and operates the Commonwealth's system of public water supply and sanitary sewer facilities. PRASA is authorized, among other things, to borrow money and issue revenue bonds for any of its corporate purposes. The Commonwealth guarantees the principal and interest payments of certain outstanding bonds and of all future bonds issued to refinance those outstanding bonds at the date of refinancing. Act No. 45-1994 was later amended to include other loans under the Clean Water State Revolving Funds Program (SRFP) and under the USDA Rural Development Program. The Commonwealth historically provided certain financial support to PRASA through legislative appropriations for debt service of its Public Finance Corporation (PFC) notes.

*Puerto Rico Electric Power Authority (PREPA)* – Upon enactment of Act No. 37-2017, PREPA is governed by a seven-member board, six of which are appointed by the Governor and one member is an elected consumer representative. PREPA is responsible for conserving, developing, and utilizing the power resources in order to promote the general welfare of Puerto Rico and owns and operates the Commonwealth's electrical power generation, transmission, and distribution system. The Commonwealth is entitled to receive contributions in lieu of taxes from PREPA.

*Puerto Rico Highways and Transportation Authority (PRHTA)* – PRHTA is governed by a seven-member board comprising the Secretary of DTPW (serving as the President of the board), the President of the Planning Board (PRPB), the Secretary of the DOT, the President of GDB, and three other members from the private sector appointed by the Governor with the advice and consent of the Senate. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA as of January 18, 2017. The PRHTA has broad powers to carry out its responsibilities in accordance with DTPW's overall transportation policies. These powers include, among other things, the complete control and supervision of any highway facilities constructed, owned, or operated by the PRHTA (including the ability to set tolls for the use of the highway facilities subject to compliance with certain public hearing requirements), and the power to issue bonds, notes, or other obligations. The PRHTA plans and manages the construction of all major projects relating to the Commonwealth's toll highway system, undertakes major repairs, and maintains the toll ways.

*State Insurance Fund Corporation (SIFC)* – SIFC is governed by a seven-member board appointed by the Governor with the advice and consent of the Senate. The board comprises the Commissioner of Insurance of Puerto Rico, an officer from the Department of Labor and Human Resources (DLHR) of the Commonwealth, an officer from the PRDOH, a representative of the employers' interest, a representative of the employees' interest, and two members without any of these interests. One of these members is appointed by the Governor as president of the board for a period of six years. The three public officials are appointed for a period of five years, and the rest of the members for four, three, two, and one year, respectively. SIFC provides workers' compensation and disability insurance to public and private employees. The Commonwealth has access to SIFC's resources.

*University of Puerto Rico (UPR)* – The UPR is governed by a thirteen-member Governing Board, nine of which are appointed by the Governor and confirmed by the Senate of Puerto Rico. The remaining members of the Governing Board consist of two tenured professors and two full time students. The Secretary of the DOE becomes an ex officio member of the governing board. The Commonwealth provides financial support to the UPR through legislative appropriations.

*Nonmajor Discretely Presented Component Units*

*Agricultural Enterprises Development Administration (AEDA)* – AEDA is governed by the Secretary of Agriculture of the Commonwealth. The purpose of AEDA is to provide a wide variety of services

52

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

and incentives to the agricultural sector. The Commonwealth has the ability to impose its will on AEDA. The Commonwealth provides financial support to AEDA through legislative appropriations.

*Automobile Accidents Compensation Administration (AACA)* – AACA is governed by a Cabinet Member, and a four-member board appointed by the Governor with the advice and consent of the Senate. The AACA operates a system of compulsory insurance coverage for all registered motor vehicles and compensates citizens for injuries arising from motor vehicle accidents. The Commonwealth has the ability to significantly influence rates charged by the AACA. The Commonwealth has access to AACA's resources.

*Cardiovascular Center Corporation of Puerto Rico and the Caribbean (CCCPRC)* – CCCPRC is governed by a seven-member board comprising the Secretary of the PRDOH, the Director of the Medical Sciences Campus of the UPR, the Executive Director of the PRMeSA, and four additional members appointed by the Governor with the advice and consent of the Senate, one of which should be from the Cardiology Society of Puerto Rico and another a member of a cardiology foundation properly registered in the Department of State of the Commonwealth. The purpose of the CCCPRC is to provide special treatment to patients suffering from cardiovascular diseases. The Commonwealth provides financial support to the CCCPRC through legislative appropriations.

*Center of Diabetes for Puerto Rico (CDPR)* – CDPR is governed by a nine-member board, which include the Secretary of the PRDOH, the dean of the School of Medical Sciences of the UPR, the other seven members are appointed by the Governor. The CDPR was created to be responsible for the planification, organization, operation and administration of investigative services, orientation prevention and treatments of diabetes in Puerto Rico. The Commonwealth provides financial support to the CDPR through legislative appropriations.

*Company for the Integral Development of the "Península de Cantera" (CIDPC)* – CIDPC is governed by an eleven-member board, of which six members are appointed by the Governor and five members are appointed by the Mayor of the Municipality of San Juan. The CIDPC was created to establish and implement a comprehensive development plan for the Península de Cantera area. Its main function is to supervise and coordinate governmental efforts and also promote and manage private sector initiatives for the improvements and rehabilitation of the aforementioned area. The Commonwealth generally provides financial support to the CIDPC.

*Corporation for the "Caño Martín Peña" ENLACE Project (CPECMP)* – CPECMP was created for the purpose of coordinating the public policy related to the rehabilitation of the Caño Martín Peña area. The CPECMP is governed by a board of directors of thirteen members of which seven members are appointed by the Governor and six members are appointed by the Mayor of the Municipality of San Juan. The Commonwealth generally provides financial support to the CPECMP through legislative appropriations.

*Culebra Conservation and Development Authority (CCDA)* – CCDA was created to formulate and administer the program and plan for the conservation, use, and development of natural resources of the Municipality of Culebra. The CCDA is administered through a board of directors composed of five members, including the Mayor of the Municipality of Culebra and four additional members appointed by the Mayor of the Municipality of Culebra and confirmed by the municipal legislature. The administration and operations of the CCDA are conducted by an executive director elected by the board of directors. The Commonwealth provides financial support to the CCDA through legislative appropriations. Although CCDA's board of directors is not appointed by the Commonwealth and it is not fiscally dependent on the Commonwealth, the Commonwealth believes it would be misleading to exclude it from its reporting entity, given the financial support provided by the Commonwealth.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Economic Development Bank for Puerto Rico (EDB)* – EDB is governed by a nine-member board comprising the President of the GDB, who is the Chairman, the Secretary of Agriculture of the Commonwealth, the Secretary of the DEDC, the Executive Director of the Puerto Rico Industrial Development Company (PRIDCO), the Executive Director of the PRTC (Puerto Rico Tourism Company), and four members representing the private sector and appointed by the Governor with the advice and consent of the Senate. Private sector members are appointed for a maximum period of three years. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. The EDB is responsible for the promotion and development of the private sector economy of the Commonwealth. This purpose is to be met by granting direct loans, loan guarantees, loan participation, and/or direct investments to any person or business organization devoted to manufacturing, agriculture, trade, tourism, or other service enterprises with preference, but not limited to economic activities that may have the effect of substituting imports. The Commonwealth has the ability to impose its will on the EDB.

*Farm Insurance Corporation of Puerto Rico (FICPR)* – FICPR is governed by a five-member board consisting of the Secretary of Agriculture of the Commonwealth, the Dean of the Agricultural Sciences Faculty of the UPR Mayaguez Campus, a representative of the GDB, and two bona fide farmers appointed by the Governor with the advice and consent of the Senate. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. The purpose of the FICPR is to provide insurance to farmers against losses in their farms caused by natural disasters. The Commonwealth has the ability to impose its will on the FICPR.

*Fine Arts Center Corporation (FACC)* – FACC is governed by a nine-member board comprising the President of the Musical Arts Corporation (MAC) and eight members named by the Governor. FACC was created with the purpose of administering the Fine Arts Center. The Commonwealth provides financial support to FACC through legislative appropriations.

*Independent Consumer Protection Office (ICPO)* – ICPO is overseen by the Director appointed by the Governor with the advice and consent of the Senate. ICPO is also managed by an executive director who works together with the Puerto Rico Energy Affairs Administration and provides technical advice to the commissioners. ICPO is the key component for the faithful and transparent execution of the Puerto Rico Energy Reform. The Puerto Rico Energy Commission, an entity included within the primary government of the Commonwealth, provides financial support to the ICPO equivalent to the 10% of the contributions received from PREPA.

*Institute of Puerto Rican Culture (IPRC)* – IPRC is governed by a nine-member board comprising the President of MAC and eight members appointed by the Governor with the advice and consent of the Senate. The IPRC is responsible for implementing the public policy related to the development of Puerto Rican arts, humanities, and culture. The Commonwealth provides financial support to the IPRC through legislative appropriations.

*Institutional Trust of the National Guard of Puerto Rico (ITNGPR)* – ITNGPR is governed by a seven-member board comprising the Adjutant General of the Puerto Rico National Guard, the President of the GDB, the Secretary of Justice of the Commonwealth, three members of the military from the Puerto Rico National Guard, and one representative from the community appointed by the Governor. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. ITNGPR's purpose is to provide life insurance, retirement benefits, and economic assistance to the active members of the Puerto Rico National Guard and their families. The Commonwealth generally provides financial

54

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

support to the ITNGPR through legislative appropriations and has the ability to impose its will on the ITNGPR.

*Land Authority of Puerto Rico (LAPR)* – LAPR is governed by a five-member board consisting of the Secretary of Agriculture of the Commonwealth and four members appointed by the Governor. LAPR was created to carry out the provisions of the Land Law of Puerto Rico, principally geared to the agricultural development of Puerto Rico. LAPR maintains debt that is payable from Commonwealth's appropriations and funds generated by LAPR operations.

*Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads (LRA)* – LRA is governed by a nine-member board comprising the Secretary of Economic Development and Commerce of the Commonwealth, who is the Chairman, two members appointed by the Mayor of the Municipality of Ceiba, one member appointed by the Mayor of the Municipality of Naguabo, one member appointed by the President of the Senate, one member appointed by the Speaker of the House of Representatives and three additional members appointed by the Governor, all to possess known interest and expertise in the areas of planning; commercial, tourism, residential, and institutional development; real estate; tourism and recreational facilities administration; and infrastructure projects' management. The LRA is responsible for the implementation of the reuse and redevelopment plan for the former Navy Station of Roosevelt Roads located in Ceiba, Puerto Rico. Some of the activities involved in these redevelopment plans include the direction, supervision, regulation, and maintenance of the economic development on the land and facilities formerly occupied by the U.S. Navy. The Commonwealth generally provides financial support to the LRA through legislative appropriations.

*Musical Arts Corporation (MAC)* – MAC is governed by a seven-member board appointed by the Governor with the advice and consent of the Senate. MAC was created to promote the development of the arts and cultural programs of the Commonwealth. The Commonwealth provides financial support to MAC through legislative appropriations.

*Public Corporation for the Supervision and Deposit Insurance of Puerto Rico Cooperatives (PCSDIPRC)* – PCSDIPRC is governed by a nine-member board comprising the Administrator of the Cooperative Development Administration, the Commissioner of Financial Institutions of Puerto Rico, the Secretary of the DOT, the Inspector of Cooperatives, three citizens representing the cooperative movement, one representative of the Puerto Rico Cooperatives League, and one private citizen representing the public interest. PCSDIPRC has the responsibility of providing to all the cooperatives and the Federation of Cooperatives of Puerto Rico insurance coverage over the stocks and deposits, and for monitoring the financial condition of the insured cooperatives, and the uninsured cooperatives when requested by the Inspector of Cooperatives. The Commonwealth has the ability to impose its will on PCSDIPRC.

*Puerto Rico Conservatory of Music Corporation (PRCMC)* – PRCMC is governed by a seven-member board appointed by the Governor, with the advice and consent of the Senate. The PRCMC is responsible for providing the Puerto Rican community and especially its youths with the required facilities to educate and perfect their musical skills, including secondary education programs for developing musical arts. It prepares the artistic element that nourishes the Puerto Rico Symphony Orchestra and other musical organizations, and coordinates the governmental efforts to interested industries, private enterprises, and private citizens. The Commonwealth occasionally provides financial support to the PRCMC through legislative appropriations.

*Puerto Rico Convention Center District Authority (PRCCDA)* – PRCCDA is governed by a nine-member board of directors comprising of three members from the public-sector and six

55

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

members from the private sector. The public-sector members comprise the Secretary of Economic Development and Commerce of the Commonwealth, who is the Chairman, the Executive Director of the PRTC, and the president of the GDB. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. The private sector members are individuals having experience in the areas of hotel operations, tourism, real estate, convention centers, and at least one with financial expertise who are appointed by the Governor with the advice and consent of the Senate. PRCCDA was created to be responsible, for improving, developing, managing, and operating the property and improvements within the Puerto Rico Convention Center District (the District) geographical area. PRCDA has the power to finance all of the improvements to be developed through the issuance of bonds and the imposition of assessments against the owners or lessees of land within the District who benefit from the Convention Center and other improvements. Also, PRCCDA promotes the development, construction, expansion and improvement of the Puerto Rico Convention Center (Convention Center), Bahía Urbana, and the Jose Miguel Agrelot Coliseum (the Coliseum). The administration, operation and management of the Convention Center and the Coliseum are carried out by a third-party private entity, under PRCDDA's responsibility. Bahía Urbana is administered by PRCCDA's management. The Commonwealth provides financial support to the PRCCDA through legislative appropriations.

*Puerto Rico Council on Education (PRCE)* – PRCE is governed by a board comprising nine members appointed by the Governor with the consent of the Senate. Its purpose is to develop higher education, to administer the licensing and certification of institutions of higher education, and to administer scholarship funds. The Commonwealth provides financial support to the PRCE through legislative appropriations.

*Puerto Rico Energy Commission (PREC)* – PREC is governed by a board of directors composed of a commissioner President and two associate commissioners, all appointed by the Governor with the advice and consent of the Senate. The first commissioner President and two associate commissioners appointed will occupy their positions for six years, four years and two years, respectively, with succeeding commissioners to be appointed for a term of six years. PREC was created on May 27, 2014 pursuant Act No. 57, also known as the Puerto Rico Energy Transformation and Relief Act. Under the provisions of Act No. 57-2014, PREC functions as an independent government entity in charge of regulating, overseeing and ensuring compliance with the public policy on energy of the Commonwealth and with the authority to approve electric rates proposed by PREPA, among other responsibilities. Act No. 57-2014 requires PREPA to appropriate annually $5.8 million for PREC's operations, to be remitted to the PREC through special accounts established at the DOT. The Commonwealth also has the ability to impose its will on PREC. Pursuant to a restructuring of PREC in 2018, PREC is now known as the Puerto Rico Energy Bureau (PREB).

*Puerto Rico Government Investment Trust Fund (PRGITF)* – PRGITF is governed by the Secretary of the DOT. Prior to the GDB's decision on March 23, 2018 to cease operations and wind down under Title VI of PROMESA, the GDB was PRGITF's trustee, custodian, and administrator, a role that FAFAA currently assumes. PRGITF's main objective is to provide investment opportunities in a professionally managed money market portfolio by investing in high quality securities with minimal credit risk. Qualified investors include the Commonwealth's central government, its public corporations, instrumentalities and agencies, and the municipalities of Puerto Rico. In conformity with GASB Statement No. 31, *Accounting and Financial Reporting for Certain Investments and for External Investments Pools*, the basic financial statements of the PRGITF are not included in the accompanying basic financial statements because the Primary Government and each component

56

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

unit investor is already presenting as cash or investments their corresponding share of the assets of the PRGITF.

*Puerto Rico Industrial Development Company (PRIDCO)* – PRIDCO is governed by a seven-member board comprising the Secretary of Economic Development and Commerce of the Commonwealth, who is the Chairman, the Secretary of the DOT, the President of the GDB, the President of the Puerto Rico Planning Board (PRPB), and three members from the private sector appointed by the Governor with the advice and consent of the Senate. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. The private sector members are appointed for a period of four years. PRIDCO administers the Commonwealth's sponsored economic development program by providing facilities, general assistance, and special incentive grants to manufacturing companies operating in Puerto Rico. PRIDCO has issued interim notes and revenue bonds to finance manufacturing plants and other facilities. Rentals derived from the leasing of specified facilities of PRIDCO are used for the payment of PRIDCO's revenue bonds. PRIDCO maintains debt that is payable from Commonwealth's appropriations. The Commonwealth generally provides financial support to PRIDCO through legislative appropriations and has the ability to impose its will on PRIDCO.

*Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities Financing Authority (known as AFICA, its Spanish acronym)* – AFICA is governed by a seven-member board comprising the Executive Director of PRIDCO, the President of the GDB, the Executive Director of PRIFA, the Executive Director of the Puerto Rico Tourism Company (PRTC), the President of the Environmental Quality Board (EQB), and two private citizens appointed by the Governor. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. AFICA is authorized to issue revenue bonds to finance industrial, tourist, environmental control, medical, and educational facilities in Puerto Rico and the United States of America for use by private companies, nonprofit entities, or governmental agencies. The bonds are payable solely from collections from such private companies, nonprofit entities, or governmental agencies, and do not constitute debt of the Commonwealth or any of its other component units. The Commonwealth has the ability to impose its will on AFICA.

*Puerto Rico Integrated Transit Authority (PRITA)* – PRITA is governed by a nine-member board comprising the Secretary of the DTPW, who serves as Chairman, the Executive Director of PRHTA, the President of the PRPB, the Director of PROMB, the President of GDB, two additional members from the private sector appointed by the Governor with the advice and consent of the Senate and two other members representing entities within the Metropolitan Planning Organization, who are selected through the vote from its own Board of Directors. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. PRITA was created by Act No. 123 of August 3, 2014 (Act No. 123-2014) for the purpose of implementing a uniform public policy on collective, road and maritime transportation, and with it the integration of the operations, assets, rights, obligations and funds of PRHTA's urban train, the Puerto Rico Metropolitan Bus Authority (PRMBA) and the Puerto Rico and Municipal Islands Maritime Transport Authority (PRMIMTA). As of June 30, 2017, PRITA was still in the process of obtaining the required approvals from local and federal authorities to integrate and officialize the merger of the urban train, PRMBA and PRMIMTA into PRITA. The Commonwealth generally provides financial support to PRITA through legislative appropriations and PRITA will transfer the necessary funds to the PRHTA, PRMBA and PRMIMTA, when they are engaged in construction, operations and maintenances of Mass, Rail and Maritime Transportation Facilities.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Puerto Rico Land Administration (PRLA)* – PRLA is governed by an eleven-member board comprising the Secretary of Economic Development and Commerce of the Commonwealth, who serves as President, the President of the PRPB, who serves as Vice President, the Secretary of the DOT, the Secretary of Agriculture of the Commonwealth, the Secretary of DTPW of the Commonwealth, the Secretary of Housing of the Commonwealth, the Executive Director of PRIDCO, and four members appointed by the Governor with the advice and consent of the Senate. The PRLA acquires parcels of land on behalf of government instrumentalities through negotiation or expropriation for future development or for reserve. The Commonwealth provides financial support to the PRLA through legislative appropriations.

*Puerto Rico and Municipal Islands Maritime Transport Authority (PRMIMTA)* – PRMIMTA is governed by a five-member board comprising the Secretary of DTPW, who serves as President, the Executive Director of the Puerto Rico Ports Authority, the Mayors of Vieques and Culebra, and one additional member appointed by the Governor. The operations of PRMIMTA consist of administering and operating the maritime transportation services between San Juan, Fajardo, Vieques, and Culebra. The Commonwealth generally provides financial support to PRMIMTA through legislative appropriations. Act No. 123-2014, which created PRITA, provided for the integration of PRMIMTA's operations into PRITA; however, as of June 30, 2017, PRMIMTA's operations, assets, rights, obligations and funds had not been transferred.

*Puerto Rico Metropolitan Bus Authority (PRMBA)* – PRMBA is governed by the Secretary of DTPW of the Commonwealth. The PRMBA provides bus transportation to passengers within the San Juan Metropolitan Area. The Commonwealth provides financial support to the PRMBA through the transfer of certain gasoline and diesel excise taxes collected by the Commonwealth. Act No. 123-2014, which created PRITA, and provided for the integration of PRMBA's operations into PRITA; however, as of June 30, 2017, PRMBA's operations, assets, rights, obligations and funds had not been transferred.

*Puerto Rico Municipal Finance Agency (PRMFA)* – PRMFA is governed by a five-member board comprising the President of the GDB, who is the Chairman, the Commissioner of Municipal Affairs, and three additional members appointed by the Governor, one of whom must be either the Mayor or chief financial officer of a municipality. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. The PRMFA was organized to create a capital market to assist the municipalities of Puerto Rico in financing their public improvement programs. The Commonwealth is required to cover any potential deficiency that may exist on the PRMFA reserve accounts established for debt service.

*Puerto Rico Municipal Finance Corporation (Known as COFIM, for its Spanish Acronym)* – COFIM is governed by a seven-member board comprising three members of the Board of Directors of GDB, three Mayors from municipalities in Puerto Rico (two of them from the political party controlling the majority of municipalities and the remaining Mayor elected by the rest of the municipalities) and one member representing the public interest recommended by all the Mayors of the municipalities and ratified by the Governor. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. COFIM was created by Act No. 19-2014 to issue bonds and use other financing mechanisms to pay or refinance, directly or indirectly, all or a portion of the municipalities' debt obligations payable from the municipal sales and use tax. The Commonwealth is required to cover any potential deficiency that may exist on the COFIM reserve accounts established for debt service.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Puerto Rico Ports Authority (PRPA)* – PRPA is governed by a five-member board consisting of the Secretary of DTPW of the Commonwealth, who is the Chairman, the Secretary of the DEDC, the Executive Director of the PRTC, the Executive Director of PRIDCO and one private citizen appointed by the Governor with the consent of the Senate. The purpose of the PRPA is to administer all owned ports and aviation transportation facilities of the Commonwealth and to render other related services, including the supervision and monitoring over the service concession arrangement of the Luis Muñoz Marín International Airport, as further described in Note 17. The Commonwealth generally provides financial support to the PRPA through legislative appropriations.

*Puerto Rico Public Broadcasting Corporation (PRPBC)* – PRPBC is governed by an eleven-member board of directors comprising the Secretary of the DOE, the President of the UPR, the Executive Director of the IPRC, and eight private citizens appointed by the Governor with the advice and consent of the Senate. At least three of these private citizens must have proven interest, knowledge, and experience in education, culture, art, science, or radio and television. The PRPBC was created for the purpose of integrating, developing, and operating the radio, television, and electronic communication facilities that belong to the Commonwealth. The Commonwealth provides financial support to the PRPBC through legislative appropriations.

*Puerto Rico Public Private Partnerships Authority (PPPA)* – PPPA is governed by a five-member board of directors comprising the President of the GDB, the Secretary of the DOT, the President of the PRPB, and two members appointed by the Governor, one member selected by the President of the Senate of Puerto Rico and another member, by the Speaker of the Puerto Rico House of Representatives. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. The PPPA is the only government entity authorized and responsible for implementing public policy on public private partnerships established by Act No. 29-2009, as amended, and to determine the functions, services, or facilities for which such Partnerships will be established. The Commonwealth generally provides financial support to the PPPA through legislative appropriations.

*Puerto Rico School of Plastic Arts (PRSPA)* – PRSPA is governed by a seven-member board. Four members are appointed by the board of directors of the IPRC, representing the public educational and cultural interests. Board members may not be employees of the PRSPA. The remaining three members are elected from among the members of the board of directors of the IPRC, one of whom serves as president. The PRSPA was created to develop, promote, plan, and coordinate programs of study in higher education oriented to the plastic arts, teaching, artistic techniques, and to help students to develop humanistic values. The Commonwealth generally provides financial support to the PRSPA through legislative appropriations.

*Puerto Rico Science, Technology and Research Trust (PRSTRT)* – PRSTRT is governed by an eleven-member board of trustees comprising five members ex officio representing certain Primary Government agencies and public corporations: the Secretary of the DEDC, the President of the UPR, the Director of OMB, the President of the GDB and the Executive Director of PRIDCO; and six additional trustees appointed by the board of trustees. As provided under Act No. 2-18, 2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. The PRSTRT was created by Act No, 214-2004, as amended, to foster and fund research, development and infrastructure projects related to science and technology to promote the economic, social or educational development of the Commonwealth and to operate exclusively for charitable, educational and scientific purposes. The PRSTRT was initially financially supported through various sources including moneys from certain UPR's funds, private donations and legislative appropriations which have not recurred during the past several years. But recently,

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

most of the funds come indirectly from the Commonwealth's contributions into several funds that are managed and administered by PRIDCO, which in turn makes such funds available to PRSTRT. The PRSTRT's board of trustees is not appointed by the Commonwealth. The Commonwealth believes it would be misleading to exclude it from its reporting entity, given the substantial indirect financial support provided by the Commonwealth and the fact that PRSTRT was created by law to implement and execute the Commonwealth's scientific research mission and can be eliminated by actions of the Commonwealth. The Commonwealth generally provides financial support to the PRSTRT through legislative appropriations.

*Puerto Rico Telephone Authority (PRTA)* – PRTA is governed by a five-member board comprising the President of the GDB and four members that are appointed by the board of directors of the GDB from among the GDB board members, all of which are appointed by the Governor. As provided under Act No. 2-2017, the board member position previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. PRTA is the legal entity responsible to account for the equity interest in Telecommunications de Puerto Rico, Inc. PRTA is currently inactive and waiting for a legislative process to arrange its liquidation. The Commonwealth generally provides financial support to the PRTA through legislative appropriations.

*Puerto Rico Tourism Company (PRTC)* – PRTC is governed by a seven-member board comprising of representatives of different tourist related sectors appointed by the Governor with the consent of the Senate. At least one member must represent internal tourism and two must not be residents of the metropolitan area. Its purpose is to promote the tourism industry of Puerto Rico. The Commonwealth generally provides financial support to the PRTC through legislative appropriations.

*Puerto Rico Trade and Export Company (PRTEC)* – PRTEC is governed by a nine-member board comprising the Secretary of the DEDC, who is the Chairman, the Executive Director of the PRPA, the Secretary of the Department of Agriculture (DOA), the President of the EDB, the Executive Director of PRIDCO, the Legal Division Director of the PRTEC, and three private citizens. The PRTEC has the responsibility to promote the highest efficiency in the services provided to the commercial sector, with emphasis on small and medium sized enterprises while promoting the export of products and services from Puerto Rico to other countries. The Commonwealth has the ability to impose its will on the PRTEC.

*Solid Waste Authority (SWA)* – SWA is governed by a board appointed by the Secretary of the DNER, whereby, the Secretary and the Executive Director of SWA periodically meet. SWA provides alternatives for processing of solid waste and encourages recycling, reuse, and recovery of resources from waste. The Commonwealth provides financial support to SWA through legislative appropriations.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Complete basic financial statements of the discretely presented component units can be obtained directly by contacting their administrative offices:

Agricultural Enterprises Development
  Administration
P.O. Box 9200
Santurce, PR 00908-0200

Automobile Accidents Compensation
  Administration
P.O. Box 364847
San Juan, PR 00936-4847

Cardiovascular Center Corporation of
Puerto Rico and the Caribbean
P.O. Box 366528
San Juan, PR 00936-6528

Center of Diabetes for Puerto Rico
P.O. Box 70344 PMB-87
San Juan, PR 00936

Company for the Integral Development of the
  "Península de Cantera"
P.O. Box 7187
Santurce, PR 00916-7187

Corporation for the "Caño Martín Peña"
  ENLACE Project
P.O. Box 41308
San Juan, PR 00940-1308

Culebra Conservation and Development
  Authority
P.O. Box 217
Culebra, PR 00775-0217

Economic Development Bank for Puerto Rico
P.O. Box 2134
San Juan, PR 00922-2134

Farm Insurance Corporation of Puerto Rico
P.O. Box 9200
Santurce, PR 00908

Fine Arts Center Corporation
P.O. Box 41287 – Minillas Station
San Juan, PR 00940-1287

Government Development Bank for Puerto Rico
P.O. Box 42001
San Juan, PR 00940-2001

Independent Consumer Protection Office
524 Ponce de León Ave.
San Juan, PR 00918-1314

Institute of Puerto Rican Culture
P.O. Box 9024184
San Juan, PR 00902-4184

Institutional Trust of the National Guard of
  Puerto Rico
P.O. Box 9023786
San Juan, PR, 00902-3786

Land Authority of Puerto Rico
P.O. Box 9745
Santurce, PR 00908-9745

Local Redevelopment Authority of the Lands
  and Facilities of Naval Station Roosevelt Roads
400 Calaf Street, PMB 456
San Juan, PR 00918-1314

Musical Arts Corporation
P.O. Box 41227
San Juan, PR 00940-1227

Public Corporation for the Supervision and
  Deposit Insurance of Puerto Rico Cooperatives
P.O. Box 195449
San Juan, PR 00919-5449

Puerto Rico Aqueduct and Sewer Authority
P.O. Box 7066
San Juan, PR 00916-7066

Puerto Rico Conservatory of Music Corporation
951 Ponce de León Ave.
San Juan, PR 00907-3373

Puerto Rico Convention Center District Authority
P.O. Box 19269,
San Juan, Puerto Rico, 00910-1269

Puerto Rico Council on Education
P.O. Box 19900
San Juan, PR 00910-1900

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Puerto Rico Energy Commission
268 Munoz Rivera Avenue
San Juan, PR 00918

Puerto Rico Electric Power Authority
P.O. Box 364267
San Juan, PR 00936-4267

Puerto Rico Government Investment Trust Fund
P.O. Box 42001, Millas Station
San Juan, Puerto Rico 00940-2001

Puerto Rico Highways and Transportation Authority
P.O. Box 42007
San Juan, PR 00940-2007

Puerto Rico Industrial Development Company
P.O. Box 362350
San Juan, PR 00936-2350

Puerto Rico Industrial, Tourist, Educational,
  Medical, and Environmental Control Facilities
  Financing Authority
P.O. Box 42001
San Juan, PR 00940-2001

Puerto Rico Integrated Transit Authority
P.O. Box 41267
San Juan, PR 00940

Puerto Rico Land Administration
P.O. Box 363767
San Juan, PR 00936-3767

Puerto Rico and Municipal Islands Maritime
  Transport Authority
P.O. Box 4305
Puerto Real, PR 00740

Puerto Rico Metropolitan Bus Authority
P.O. Box 195349
San Juan, PR 00919-5349

Puerto Rico Municipal Finance Agency
P.O. Box 42001
San Juan, PR 00940-2001

Puerto Rico Municipal Finance Corporation
P.O. Box 42001
San Juan, PR 00940-2001

Puerto Rico Ports Authority
P.O. Box 362829
San Juan, PR 00936-2829

Puerto Rico Public Broadcasting Corporation
P.O. Box 190909
San Juan, PR 00919-0909

Puerto Rico Public Private Partnerships Authority
P.O. Box 42001
San Juan, PR 00940-2001

Puerto Rico School of Plastic Arts
P.O. Box 9021112
San Juan, PR 00902-1112

Puerto Rico Science, Technology and Research
  Trust
P.O.Box 363475
San Juan, PR 00936-3475

Puerto Rico Telephone Authority
P.O. Box 42001
San Juan, PR 00940-2001

Puerto Rico Tourism Company
Tanca Street #500, Ochoa Building, 3rd Floor
Old San Juan, PR 00902-3960

Puerto Rico Trade and Export Company
P.O. Box 195009
San Juan, PR 00919-5009

Solid Waste Authority
P.O. Box 40285
San Juan, PR 00940-0285

State Insurance Fund Corporation
P.O. Box 365028
San Juan, PR 00936-5028

University of Puerto Rico
  Jardín Botánico Sur
1187 Street Flamboyán
San Juan, PR 00916-1117

62

**DRA Ex. 242**

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The basic financial statements of the discretely presented component units have a fiscal year-end of June 30, 2017.

*Pension Trust Funds*

The three employee retirement systems described in the following paragraphs (the Retirement Systems) administered the pension funds and other postemployment healthcare benefits for the Commonwealth and its political subdivisions until the enactment of the Act 106-2017 on August 23, 2017. These Retirement Systems are subject to legislative and executive controls, and their administrative expenses are subject to the Oversight Board's budget controls to the extent authorized under PROMESA. They meet the component units' criteria and blend into fiduciary funds of the Commonwealth. They have been omitted from the government-wide financial statements, as their resources prior to August 23, 2017 were not available to fund operations of the Commonwealth. The Retirement Systems, as governmental retirement plans, are excluded from the provisions of the Employee Retirement Income Security Act of 1974 (ERISA) consistent with Act 106-2017.

*Employees' Retirement System of the Government of the Commonwealth of Puerto Rico (ERS)* – ERS is a cost sharing, multiple employer defined benefit pension plan, which covers all regular employees of the Commonwealth and its instrumentalities and of certain municipalities and component units not covered by their own retirement systems. Before the enactment of Act 106-2017 on August 23, 2017, ERS was governed by an eleven-member board of trustees, composed of the Secretary of the DOT (who served as ERS' President), the President of the GDB, the Commissioner of Municipal Affairs, the Director of the Office of Human Resources of the Commonwealth, three employees, and two retirees, who were appointed by the Governor. The other two members were the President of the Federation of Mayors and the President of the Association of Mayors. Before August 23, 2017, ERS was administered by the Puerto Rico Government Employees and Judiciary Retirement Systems Administration (ERS and JRS Administration) which also administered the Employees' Retirement System of the Government of Puerto Rico and its Instrumentalities Medical Insurance Plan Contribution (ERS MIPC). ERS MIPC is an unfunded, cost sharing, multi-employer defined benefit other postemployment healthcare benefit plan provided by the Commonwealth to retired plan members.

*Retirement System for the Judiciary of the Commonwealth of Puerto Rico (JRS)* – JRS is a single employer defined benefit plan that covers all active judges or retired judges of the judiciary branch of the Commonwealth. Before the enactment of Act 106-2017 on August 23, 2017, JRS was governed by the same board of trustees as ERS and was administered by the ERS and JRS Administration.

*Puerto Rico System of Annuities and Pensions for Teachers (TRS)* – TRS is a single employer trust created by the Legislature for the purpose of providing pension and other benefits to all teachers of the DOE, all pensioned teachers, all teachers transferred to an administrative position in the DOE, and those who practice in private institutions accredited by the DOE who elect to become members. TRS provides retirement, death, and disability benefits. Before the enactment of Act 106-2017 on August 23, 2017, TRS was governed by a nine-member board comprising three *ex officio* members, comprised of the Secretary of the DOE, the Secretary of the DOT, the President of the GDB, and one member who was a representative of a teachers' organization designated by the Governor; three teachers appointed by the Governor, one of which represented certified teachers in active service, and two who represented retired teachers; one member who was a representative of the entity in accordance with Act No. 45-1998, as amended; and one additional member, as representative of the public interest, with knowledge of and experience in the administration and operation of financial systems, appointed by the Governor. As provided under Act No. 2-2017, the board member position

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

previously occupied by the President of the GDB is currently held by the Executive Director of FAFAA. TRS was administered by the Teachers Retirement System (TRS Administration) which also administered the Puerto Rico System of Annuities and Pensions for Teachers Medical Insurance Plan Contribution (TRS MIPC). TRS MIPC is an unfunded, cost-sharing, multi-employer defined benefit other postemployment healthcare benefit plan provided by the Commonwealth to retired teachers of the DOE and retired employees of TRS Administration.

On August 23, 2017, the Governor signed Act 106-2017 into law, which reformed ERS, JRS and TRS by substituting the governing boards of the Retirement Systems with the Retirement Board of the Government of Puerto Rico (the Retirement Board) and establishing a separate "Account for the Payment of Accrued Pensions" to implement a "pay-as-you-go" (PayGo) method for the payment of pension benefits by the Commonwealth. For additional information on the transition to the PayGo method, refer to Note 23.

Complete basic financial statements of these blended component units can be obtained directly by contacting their respective administrative offices at:

Employees' Retirement System of the
  Government of the Commonwealth of Puerto Rico
P.O. Box 42003 – Minillas Station
San Juan, PR 00940-2203

Retirement System for the Judiciary of the
  Commonwealth of Puerto Rico
P.O. Box 42003 – Minillas Station
San Juan, PR 00940-2203

Puerto Rico System of Annuities and Pensions for
  Teachers
P.O. Box 191879
San Juan, PR 00919-1879

### (c) Component Units Audited Separately

The basic financial statements of the Commonwealth include the basic financial statements of the following component units that were audited by other auditors:

#### (i) Blended Component Units

Ponce Ports Authority

Ponce Authority (formerly known as Port of the Americas Authority)

Public Buildings Authority

Puerto Rico Fiscal Agency and Financial Advisory Authority

Puerto Rico Health Insurance Administration

Puerto Rico Infrastructure Financing Authority

Puerto Rico Maritime Shipping Authority

Puerto Rico Medical Services Administration

Special Communities Perpetual Trust

The Children's Trust

University of Puerto Rico Comprehensive Cancer Center

#### (ii) Discretely Presented Component Units

Agricultural Enterprises Development Administration

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Automobile Accidents Compensation Administration

Cardiovascular Center Corporation of Puerto Rico and the Caribbean

Center of Diabetes for Puerto Rico

Company for the Integral Development of the "Península de Cantera"

Corporation for the "Caño Martín Peña" ENLACE Project

Culebra Conservation and Development Authority

Economic Development Bank for Puerto Rico

Farm Insurance Corporation of Puerto Rico

Fine Arts Center Corporation

Independent Consumer Protection Office

Institute of Puerto Rican Culture

Institutional Trust of the National Guard of Puerto Rico

Land Authority of Puerto Rico

Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads

Musical Arts Corporation

Public Corporation for the Supervision and Deposit Insurance of Puerto Rico Cooperatives

Puerto Rico Aqueduct and Sewer Authority

Puerto Rico Conservatory of Music Corporation

Puerto Rico Convention Center District Authority

Puerto Rico Council on Education

Puerto Rico Electric Power Authority

Puerto Rico Energy Commission

Puerto Rico Government Investment Trust Fund

Puerto Rico Highways and Transportation Authority

Puerto Rico Industrial Development Company

Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities
Financing Authority

Puerto Rico Integrated Transit Authority

Puerto Rico Land Administration

Puerto Rico and Municipal Islands Maritime Transport Authority

Puerto Rico Metropolitan Bus Authority

Puerto Rico Municipal Finance Agency

Puerto Rico Municipal Finance Corporation

Puerto Rico Ports Authority

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Puerto Rico Public Broadcasting Corporation

Puerto Rico Public Private Partnerships Authority

Puerto Rico School of Plastic Arts

Puerto Rico Science, Technology and Research Trust

Puerto Rico Telephone Authority

Puerto Rico Tourism Company

Puerto Rico Trade and Export Company

Solid Waste Authority

State Insurance Fund Corporation

University of Puerto Rico

   (iii)   *Pension Trust Funds*

Puerto Rico System of Annuities and Pension for Teachers

**(d)  *Basis of Presentation***

   (i)   *Government-wide Financial Statements*

The government-wide financial statements (the statement of net position and the statement of activities) report information of all the nonfiduciary activities of the Commonwealth and its discretely presented component units. For the most part, the effect of interfund activity has been removed from these government- wide financial statements. Governmental Activities, which normally are supported by taxes and intergovernmental revenue, are reported separately from Business-type activities, which rely to a significant extent on fees and charges for services or which are financed and operated in a manner similar to private business enterprises. Likewise, the Primary Government is reported separately from the legally separate discretely presented component units for which the Primary Government is financially accountable. The statement of net position presents the reporting entities' nonfiduciary assets, deferred outflows of resources, liabilities, and deferred inflows of resources, with the residual measure reported as net position. Net position is reported in three categories:

- *Net Investment in Capital Assets* – This component of net position consists of capital assets net of accumulated depreciation and reduced by the outstanding balance of any bonds, mortgages, notes, or other borrowings that are directly attributable to the acquisition, construction, or improvement of those assets. Deferred outflows of resources and deferred inflows of resources that are attributable to the acquisition, construction, or improvement of those assets or related debt also should be included in this component of net position. If there are significant unspent related debt proceeds at year end, the portion of the debt attributable to the unspent amount is not included in the calculation of this component of net position. Rather, that portion of the debt is included in the same net position component (restricted or unrestricted) as the unspent amount.

- *Restricted Net Position* – This component of net position consists of restricted assets and deferred outflows of resources reduced by related liabilities and deferred inflows of resources. Generally, a liability relates to restricted assets if the asset results from a resource flow that also results in the recognition of a liability or if the liability will be liquidated with the restricted assets reported. Restricted assets result when constraints placed on those assets use are either,

66

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

externally imposed by creditors, grantors, contributors, and the like, or imposed by law through constitutional provisions or enabling legislation.

- *Unrestricted Net Position* – This component of net position is the net amount of the assets, deferred outflows of resources, liabilities, and deferred inflows of resources that are not included in the determination of net investment in capital assets or the restricted component of net position.

  When both restricted and unrestricted resources are available for use, generally, it is the Commonwealth's policy to use restricted resources first, then the unrestricted resources as they are needed.

The statement of activities demonstrates the degree to which the direct expenses of a given function, segment, or component unit are offset by program revenue. Direct expenses are those that are clearly identifiable with a specific function, segment, or component unit. The Commonwealth does not allocate general government (indirect) expenses to other functions. Program revenue includes charges to customers who purchase, use, or directly benefit from goods or services provided by a given function, segment, or component unit. Program revenue also includes grants and contributions that are restricted to meeting the operational or capital requirements of a particular function, segment, or component unit. Revenue that is not classified as program revenue, including all taxes, is presented as general revenue. Resources that are dedicated internally are reported as general revenue rather than as program revenue.

*(ii)   Fund Financial Statements*

The Commonwealth reports its financial position and results of operations in funds, which are considered separate accounting entities, including those component units, which are required to be blended. The operations of each fund are accounted for within a set of self-balancing accounts. Fund accounting segregates funds according to their intended purpose and is used to aid management in demonstrating compliance with legal, financial, and contractual provisions.

Major funds are determined using a predefined percentage of the assets, deferred outflows of resources, liabilities, deferred inflows of resources, revenue, or expenditures/expenses of either the fund category or the governmental and proprietary funds combined. The nonmajor funds are combined in a single column in the fund financial statements.

*(iii)  Governmental Funds*

Governmental funds focus on the sources and uses of funds and provide information on near term inflows, outflows, and balances of available resources. The Commonwealth reports the following governmental funds:

- *General Fund* – The General Fund is the primary operating fund of the Commonwealth. It is used to account for and report all financial resources received and used for those services traditionally provided by a government, except those required to be accounted for and reported in another fund. The General Fund includes transactions for services such as general government, public safety, health, public housing and welfare, education, and economic development. The financial resources received and used in the General Fund mostly include: budgeted resources (such as taxes and charges for services), as approved by the Legislature and as adjusted for timing and basis of accounting differences, and other financial resources outside the General Fund budget such as: federal funds, pledged funds, other special revenue and general type funds, and agencies with independent treasuries.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

- *Debt Service Fund* – The debt service fund accounts for and reports financial resources that are restricted, committed or assigned to expenditure for general long-term bonds' principal, interest, and related costs, other than bonds payable from the operations of proprietary fund types, pension trust funds, and component units, either blended or discretely presented.

- *COFINA Special Revenue Fund* – The special revenue fund of the Puerto Rico Sales Tax Financing Corporation (COFINA) was used to account for and report all financial resources of COFINA, except those required to be accounted for and reported in the COFINA Debt Service fund.

- *COFINA Debt Service Fund* – The debt service fund of COFINA was used to account for the Commonwealth sales tax revenue being deposited in the Dedicated Sales Tax Fund for the payment of interest and principal on long-term obligations.

- *Nonmajor Governmental Funds* – The Commonwealth reports the following blended component units within the nonmajor governmental funds: PBA, FAFAA, The Children's Trust, PRIFA, PRMSA, PA, SCPT and the UPRCCC. The nonmajor governmental funds also includes the Commonwealth's capital project fund.

If a component unit is blended, it should be blended with those funds of the Primary Government by including them in the appropriate fund category of the Primary Government. Although the Primary Government's General Fund is usually the main operating fund of the reporting entity, the General Fund of a blended component unit should be reported as a special revenue fund. Special revenue funds are used to account for and report the proceeds of specific revenue sources that are restricted or committed to expenditure for specified purposes other than debt service or capital projects.

The capital project funds are used to account for and report financial resources that are restricted, committed, or assigned to expenditures for capital outlays, including the acquisition or construction of capital facilities and other capital assets. These capital expenditures may be for the Primary Government directly or for discretely presented component units and outside organizations and governments such as the municipalities of the Commonwealth and other applicable entities. Capital project funds exclude those types of capital related outflows financed by proprietary funds or for assets that will be held in trust for individuals, private organizations, or other governments.

In accordance with GASB Statement No. 54, *Fund Balance Reporting and Governmental Fund Type* Definitions, the classification of fund balance is based on the extent to which the Commonwealth is bound to observe constraints imposed upon the use of resources in the governmental funds. The classifications are as follows:

- *Nonspendable* – Amounts that are not in a spendable form or are legally or contractually required to be maintained intact.

- *Restricted* – Amounts that are legally restricted by outside parties, constitutional provisions, or enabling legislation for a specific purpose.

- *Committed* – Amounts that are constrained for specific purposes that are internally imposed by the government's formal action at the highest level of decision-making authority. The highest level of decision-making authority for the Commonwealth is the Legislature and the Governor, and the formal action is the passage of a law specifying the purposes for which amounts can be used.

- *Assigned* – includes fund balance amounts that are constrained by the Commonwealth and are intended to be used for specific purposes that are neither considered restricted or committed.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The Director of the PROMB is authorized to assign an amount for a specific purpose through the approval of budget certificates as required by statute.

- *Unassigned* – is the residual classification for the General Fund. In a governmental fund other than the General Fund, a negative amount indicates that the expenditures incurred for a specific purpose exceeded the amounts in the fund that are restricted, committed, and assigned to that purpose.

The Commonwealth uses restricted amounts first when both restricted and unrestricted fund balances are available, unless there are legal documents/contracts that prohibit doing this, such as a grant agreement requiring dollar for dollar spending. Additionally, unless required by law or agreement, the Commonwealth would first use committed, then assigned, and lastly unassigned amounts of unrestricted fund balance when expenditures are made.

The Commonwealth does not have a formal minimum fund balance policy.

*(iv) Proprietary Funds*

These funds account for those activities, which are financed and operated in a manner similar to private business enterprises. Management intends to recover, primarily through user charges, the cost of providing goods or services to the general public.

The Commonwealth reports the following major proprietary funds:

- *Unemployment Insurance Fund* – This fund accounts for amounts requisitioned for the Puerto Rico Unemployment Insurance Trust Fund held by the U.S. Treasury for payment of unemployment benefits and charges made to individual employers.

- *PRHIA* –This fund, a blended component unit, accounts for a health insurance system operated through contracts with insurance underwriters to provide quality medical and hospital care to low income individuals, employees of the Commonwealth and policemen who voluntarily subscribe to the Puerto Rico health insurance medical plan.

- *PRMeSA* – This fund, a blended component unit, accounts for the operations of the centralized health services, provided in support of hospitals and other functions offered by the member institutions and consumers of the complex known as Puerto Rico Medical Center.

The Commonwealth reports the following nonmajor proprietary funds: Disability Insurance Fund, Drivers' Insurance Fund, the Lotteries Fund, the Puerto Rico Water Pollution Control Revolving Fund (PRWPCRF), the Puerto Rico Safe Drinking Water Treatement Revovling Loan Fund (PRSDWTRLF), PPA and the Bureau of Emergency Services 9-1-1.

*(v) Fiduciary Funds*

Fiduciary funds are used to account for assets held by the Commonwealth in a trustee capacity, or as an agent for individuals, private organizations, and other governmental units. The following are the Commonwealth's fiduciary funds:

- *Pension (and Other Employee Benefit) Trust Funds* – These are used to account for the assets, liabilities, and net position held in trust for pension benefits and postemployment healthcare benefits held in trust for the public employees' retirement systems.

- *Agency Funds* – These are custodial in nature (assets equal liabilities) and do not involve measurement of the results of operations.

69

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(e)   Measurement Focus and Basis of Accounting**

*Government-wide Financial Statements* – The government-wide financial statements are reported using the economic resources measurement focus and the accrual basis of accounting. Revenue is recorded when earned and expenses are recorded when a liability is incurred, regardless of the timing of related cash flows.

*Governmental Fund Financial Statements* – The governmental fund financial statements are reported using the current financial resources measurement focus and the modified accrual basis of accounting. Revenue is recognized as soon as it is both measurable and available, and net of estimated overpayments (as applicable) and amounts considered not collectible. Revenue is considered to be available when it is collectible within the current period or soon enough thereafter to pay liabilities of the current period (see Note 1 (j) for further description about the period of availability for the principal sources of revenue in the Governmental Activities).

Principal revenue sources considered susceptible to accrual include personal and corporate income taxes (recognized as taxpayers earn the underlying income), sales and uses taxes (recognized as the underlying sales are made), excise taxes (as the underlying import or related activity takes place), property taxes (imposed on real estate property values, as defined), intergovernmental revenue (typically, when related expenditures are incurred), and other taxes and charges for services (typically, as cash is received).

Expenditures are generally recorded when a liability is incurred, as under accrual basis of accounting. Modifications to the accrual basis of accounting include the following:

- Employees' vested annual vacation are recorded as expenditures when matured. The unmatured amount of accumulated annual vacation at June 30, 2017 is reported only in the government-wide financial statements.

- Interest and principal on general long-term obligations and interest on interest rate swap agreements are recorded when due, except for interest and principal due on July 1 of the following fiscal year, if resources are available for its payment as of June 30.

- Debt service requirements, federal funds' cost disallowances, other long-term obligations, and amounts subject to judgments under litigation are recorded in the governmental funds only when payment is due; and in the case of judgments under litigation, when a settlement has been made and is awaiting payment. Until these criteria are met, these liabilities have been recorded only in the government-wide financial statements.

A summary reconciliation of the difference between total fund balances (deficit) as reflected in the governmental funds balance sheet and net position of Governmental Activities as shown on the government-wide statement of net position is presented in an accompanying reconciliation of the balance sheet of governmental funds to the statement of net position.

A summary reconciliation of the difference between net change in fund balances (deficit) as reflected in the governmental funds statement of revenue, expenditures, and changes in fund balances (deficit) and change in net position in the statement of activities of the government-wide financial statements is presented in the accompanying reconciliation of the statement of revenue, expenditures, and changes in fund balances (deficit) of governmental funds to the statement of activities.

*Proprietary Funds, Fiduciary Funds, and Discretely Presented Component Units Basic Financial Statements* – The basic financial statements of the proprietary funds, fiduciary funds, and discretely

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

presented component units are reported using the economic resources measurement focus and the accrual basis of accounting, similar to the government-wide financial statements described above.

Proprietary funds distinguish operating revenue and expenses from nonoperating items. Operating revenue and expenses generally result from providing services and producing and delivering goods in connection with a proprietary fund's principal ongoing operations. Revenue and expenses not meeting this definition are reported as nonoperating revenue and expenses. The major sources of revenue of the Commonwealth's major proprietary funds is as follows:

- *Unemployment Insurance Fund* – Insurance premiums charged to individual employers.

- *PRHIA* – Amounts received through the PRDOH representing payments by the Medicaid Program under Title XIX of the Social Security Act and State Plan, contributions from the Commonwealth to cover the local share to meet the Medicaid Program matching requirements and amounts charged and collected from employers and municipalities for direct health services provided to its members.

- *PRMeSA* – Amounts charged and collected from private citizens, member institutions and municipalities for patient services provided.

*(f)* **Cash, Cash Equivalents and Short-Term Investments**

The Commonwealth follows the practice of pooling cash. Cash balances of funds held in the Commonwealth Treasury are commingled in a general checking account and several zero balance bank accounts for special purposes. The available cash balance in the general checking account beyond immediate need is pooled in interest bearing accounts with commercial banks insured with the Federal Deposit Insurance Corporation (FDIC).

Cash and cash equivalents include investments with original maturities of 90 days or less from the date of acquisition. Short-term investments are recorded at cost.

The Puerto Rico Commissioner of Financial Institutions requires that Puerto Rico private financial institutions deposit collateral securities to secure the deposits of the Commonwealth and all other governmental entities in each of these institutions. The amount of collateral securities to be pledged for the security of public deposits must be established by the rules and regulations promulgated by the Commissioner of Financial Institutions.

The Puerto Rico Unemployment Insurance Trust Fund is maintained to account for the collection of unemployment insurance contributions from employers and the payment of unemployment benefits to eligible claimants. As required by federal law, all resources not necessary for current benefit payments are placed on deposit with the U.S. Department of the Treasury. Interests earned over such deposit is retained in the fund.

Cash and short-term investments and cash equivalents of the component units and certain funds of the Primary Government are maintained in bank accounts, separate from those of the rest of the Primary Government, in their own names. A portion of these financial instruments are invested in GDB deposits. For additional information regarding the cash deposited at GDB as of June 30, 2017, refer to Note 6.

The custodial credit risk, the availability and recoverability of cash and short-term investments is evaluated continuously by the Commonwealth. Refer to Note 6 for custodial credit loss recorded on certain cash and short-term investments. The custodial credit loss of cash and short-term investments held as of June 30, 2017 was determined based on the actual subsequent utilization of such assets.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(g)  *Securities Purchased/Sold under Agreements to Resell/Repurchase***

Certain component units of the Commonwealth enter into purchases of securities with simultaneous agreements to resell the same securities (resale agreements) and into sales of securities under agreements to repurchase (repurchase agreements). The amounts advanced or received under these agreements generally represent short-term loans and are reflected as an asset in the case of resale agreements and as a liability in the case of repurchase agreements. The securities underlying these agreements mainly consist of U.S. government obligations, mortgage backed securities, and interest-bearing deposits with other banks. Resale and repurchase agreements are authorized transactions under their respective enabling legislation and/or authorized by the Commonwealth fiscal agent.

**(h)  *Securities Lending Transactions***

Certain component units and pension trust funds of the Commonwealth enter into securities lending transactions in which governmental entities (lenders) transfer their securities to broker dealers and other entities (borrowers) for collateral with a simultaneous agreement to return the collateral for the same securities in the future. Cash received as collateral on securities lending transactions and investments made with that cash are reflected as investments. Securities received as collateral are reported as investments if the component unit has the ability to pledge or sell them without a borrower default. Liabilities resulting from these securities lending transactions also are reported in the statement of net position. Securities lending transactions collateralized by letters of credit or by securities that the component unit does not have the ability to pledge or sell unless the borrower defaults are not reported as assets and liabilities in the statement of net position.

**(i)  *Investments***

Investments mainly include U.S. government and agencies' obligations, mortgage backed securities, local government obligations, and corporate debt and equity obligations. Investments and investment contracts are carried at fair value, except for money market investments with a remaining maturity at the time of purchase of one year or less, which are carried at cost. Fair value is determined based on quoted market prices and quotations received from independent broker/dealers or pricing service organizations. Investment income, including changes in the fair value of investments, is presented as investment earnings in the statement of activities, the statement of revenue, expenditures, and changes in fund balances (deficit) – governmental funds, and the statement of revenue, expenses, and changes in net position – proprietary funds. Realized gains and losses from the sale of investments and unrealized changes in the fair value of outstanding investments are included within interest and investments earnings.

The PRGITF is considered to be like an external investment pool and, as such, reports its investments or short-term- investments at amortized cost. For additional information, refer to Note 5.

GASB Statement No. 72, *Fair Value Measurement and Application*, defines fair value as the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. This Statement requires a government to use valuation techniques that are appropriate under the circumstances and for which sufficient data are available to measure fair value. The techniques should be consistent with one or more of the following approaches: (i) the market approach, (ii) the cost approach, or (iii) the income approach. This Statement also establishes a hierarchy of inputs to valuation techniques used to measure fair value. The disclosure of fair value estimates in the hierarchy is based on whether the significant inputs into the valuations are observable.

72

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

In determining the level of hierarchy in which the estimate is disclosed, the highest level, Level 1, is given to unadjusted quoted prices in active markets and the lowest level, Level 3, to unobservable inputs.

Level 1 – inputs whose values are based are quoted prices (unadjusted) in active markets for identical assets or liabilities.

Level 2 – inputs whose values are based on quoted prices for similar instruments in active markets; quoted prices for identical or similar instruments in markets that are not active; and model-derived valuations in which all significant inputs are observable.

Level 3 – inputs are unobservable inputs for asset or liability and may require a degree of professional judgment.

In instances where inputs used to measure fair value fall into different levels in the fair value hierarchy, fair value measurements in their entirety are categorized based on the lowest level input that is significant to the valuation. The Commonwealth's assessment of the significance of particular inputs to these fair value measurements requires judgment and considers factors specific to each investment. Investments measured at Net Asset Value (NAV) for fair value are not subject to level classification.

*(j)* ***Accounts Receivable, Loans, General Revenue and Unearned Revenue***

Income taxes receivables, in both the General Fund and statement of net position, include predominantly an estimate of amounts owed by taxpayers for individual and corporate income taxes, net of estimated uncollectible amounts. Income taxes receivables in the General Fund are recognized as revenue when they become measurable and available based on actual collections during the 120 days following the current fiscal year end that are related to taxable years of prior periods. Income taxes receivable also include amounts owed by taxpayers on income earned prior to June 30, 2017, estimated to be collectible but not currently available, and thus are reported as deferred inflows of resources in the General Fund; such deferred inflows are considered revenue in the statement of activities as the availability criteria is not applicable on the government-wide financial statements for revenue recognition.

Act No. 44 of March 30, 2016 allowed citizens to prepay taxes on their individual retirements, educational savings accounts, annuities contracts and on the incremental value of property subject to capital gain. The income taxes collected in advance are recognized as unearned revenue in the balance sheet governmental funds and will be recognized as revenue when the underlying transaction occurs.

The sales and use tax receivable are recognized as revenue in the governmental funds when it becomes measurable and available based on actual collections during the 30 days following the current fiscal year end related to sales and use transactions due on or before year end. The same treatment is given in the government-wide financial statements.

Excise tax receivable is recognized as revenue in the governmental funds when it becomes measurable and available based on actual collections during the 30 days following the current fiscal year end related to transactions that occurred before year end. The same treatment is given in the government-wide financial statements. Act No. 154-2010 imposed a temporary excise tax on the acquisition of certain personal property manufactured or produced in whole or in part in Puerto Rico and on the acquisition of certain manufacturing services carried out in Puerto Rico by nonresident alien individuals, foreign corporations, and foreign partnerships. Act No. 154-2010 applies to income realized and acquisitions occurring after December 31, 2010. Initially, the excise tax would apply until the year 2017. The excise tax is based on the value of the personal property or the services acquired, and was 4% for calendar year 2011, 3.75% in 2012 and 2.75% for portions of 2013 until February 28, 2013. On February 28, 2013, Act No. 2 was enacted raising the then prevailing excise tax rate of 2.75% to 4%, effective immediately, and maintaining such rate fixed at 4% until the year 2017. On January 23, 2017, Act No. 3-2017 was

73

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

enacted extending the fixed rate of 4% for ten additional years. For additional information regarding Act No. 3-2017, refer to Note 2 and Note 23.

For purposes of the governmental fund financial statements, property tax revenue represents payments received during the year and payments received (against the current fiscal year and prior years' levies) within the first 90 days of the following fiscal year reduced by tax refunds, if any. Additionally, the government-wide financial statements recognize real property tax revenue (net of refunds), which is not available to the governmental funds in the fiscal year for which the taxes are levied. Act No. 7-2009, as amended, imposed a real property tax, in addition to the one already established for the municipalities of the Commonwealth through the Municipal Revenue Collection Center (CRIM), on residential and commercial real properties with appraised values in excess of approximately $210,000. This tax was applicable during fiscal years 2010 through 2012 and amounted to 0.591% of such properties' appraised value as determined by the CRIM. Act No. 1-2011 eliminated this additional real property tax commencing with the quarter ended June 30, 2011. Collections on this tax, which were due September 1, 2012 and March 1, 2013, were still being received during fiscal year 2017 as a result of delinquent taxpayers bringing their accounts current or taking advantages of amnesty programs offered by the DOT. The Commonwealth applies a 90-day availability period, rather than the traditional 60-day period after year end, in order to cover a period in which most tax extension payments are made. This has been applied consistently over the years.

Intergovernmental receivables are stated net of estimated allowances for uncollectible accounts, which are determined, based upon past collection experience and current economic conditions. Intergovernmental receivables primarily represent amounts owed to the Commonwealth for reimbursement of expenditures incurred pursuant to federally funded programs. This intergovernmental receivable is recognized as revenue in the governmental funds when it becomes measurable and available based on actual collections for one year following the fiscal year end related to transactions that occurred before year end. Those intergovernmental receivables not expected to be collected within the aforementioned one-year period is recorded as deferred inflows of resources. In applying the susceptible to accrual concept to federal grants, revenue is recognized when all applicable eligibility requirements are met (typically, when related expenditures are incurred) and the resources are available. Resources received before eligibility requirements, other than timing, are met are considered unearned revenue. Resources received before timing requirements are met are considered deferred inflows of resources.

Intergovernmental receivables also include taxes that the CRIM is required to remit to the Commonwealth to be used by the Commonwealth's debt service fund for payment of debt service on general obligations of the Commonwealth. The amount to be remitted is based on the special tax of 1.03% of the assessed value of all real and personal property not exonerated from taxation, which is levied by the CRIM, pursuant to Act No. 83-1991. This receivable from CRIM is recognized as revenue in the governmental funds when it becomes measurable and available based on actual collections for 180 days following the current fiscal year end that are related to transactions that occurred before year end. The amounts from CRIM not expected to be collected within the aforementioned 180 days period are recorded as deferred inflows of resources.

Unemployment, disability, driver's insurance, and other services receivables recognized in the proprietary funds are stated net of estimated allowances for uncollectible accounts.

The accounts receivable from nongovernmental customers of the component units are net of estimated uncollectible amounts. These receivables arise primarily from service charges to users. Accounts receivable from the Primary Government and other component units that arise from service charges, are evaluated for collectability.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Loans of the General Fund are net of estimated uncollectible amounts. These receivables arise from amounts owed by public corporations and municipalities for public insurance and rent paid by the General Fund on their behalf.

The loans of the pension trust funds are presented net of estimated allowances for adjustments and losses in realization. However, most of the loans are secured by mortgage deeds, plan members' contributions, and any unrestricted amounts remaining in escrow. Loans of the component units consist predominantly of loans to the Primary Government, other component units, and municipalities, and are presented net of allowances for uncollectible accounts. The remaining loans of the component units are to small and medium businesses, agricultural, and low-income housing loans from nongovernmental customers, and are presented net of estimated losses on such portfolios.

*(k) Inventories*

Generally, inventories are valued at cost and predominantly on the first in, first out basis. Governmental fund inventories are recorded as expenditures when purchased rather than capitalized as an asset. Only significant amounts of inventory at the end of the year are capitalized in the governmental funds. However, inventories are always capitalized in the statement of net position of Governmental Activities.

*(l) Restricted Assets*

Funds set aside for the payment and guarantee of notes and interest payable and for other specified purposes are classified as restricted assets since their use is limited for this purpose by applicable agreements or required by law. Restricted assets in the proprietary funds mainly include amounts set aside for the payment of insurance benefits and lending activities.

*(m) Real Estate Held for Sale or Future Development*

Real estate held for sale or future development is carried at the lower of fair value or cost, which is established by a third-party professional assessment or based upon an appraisal, minus estimated costs to sell. Subsequent declines in the value of real estate available for sale are charged to expenditure/expense.

*(n) Capital Assets*

Capital assets include land, buildings, building improvements, equipment (including software), vehicles, construction in process, and infrastructure assets, and are reported in the applicable Governmental Activities, Business-type activities, and discretely presented component unit columns in the government-wide financial statements and in the proprietary fund financial statements. The Commonwealth's Primary Government defines capital assets as assets that (i) have an initial, individual cost of $25,000 or more at the date of acquisition and (ii) have a useful life of more than one year. Capital assets are recorded at historical cost or at estimated historical cost, if actual historical cost is not available.

Capital assets donated by third parties are recorded at fair value at the time of donation. Those capital assets donated by related parties are recorded at the carrying value existing at the transferor's records. Major outlays for capital assets and improvements are capitalized as projects are constructed. Interest costs are capitalized during the construction period only for Business-type activities and most component units. The costs of normal maintenance and repairs that do not add value to the assets or materially extend asset lives are not capitalized.

Capital assets utilized in the governmental funds are recorded as expenditures in the governmental fund financial statements. Depreciation expense is recorded in the government-wide financial statements, as well as the proprietary funds and discretely presented component units' basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Capital assets of the Primary Government are depreciated on the straight-line method over the assets estimated useful life. There is no depreciation recorded for land and construction in progress. The estimated useful life of capital assets is as follows:

|  | Years |
|---|---|
| Buildings and building improvements | 20–50 |
| Equipment, furniture, fixtures, vehicles, and software | 5–15 |
| Infrastructure | 50 |

The capital assets of the discretely presented component units are recorded in accordance with the applicable standards of the discretely presented component units and under their own individual capitalization thresholds, which includes capitalization of interest. Depreciation has been recorded when required by these standards based on the types of assets, use, and estimated useful lives of the respective assets, and on the nature of each of the discretely presented component unit's operations.

The estimated useful lives of capital assets reported by the discretely presented component units are as follows:

|  | Years |
|---|---|
| Buildings and building improvements | 3–50 |
| Equipment, furniture, fixtures, vehicles, and software | 3–20 |
| Intangibles, other than software | 3–5 |
| Infrastructure | 10–50 |

In the case of capital assets under service concession arrangements pursuant to GASB Statement No. 60, *Accounting and Financial Reporting for Service Concession Arrangements* (mostly attributed to PRPA and PRHTA), these are maintained on their books and also stated at cost or at estimated historical cost. Construction in progress made by the third-party operators under these service concession arrangements is not recorded by the aforementioned discretely presented component units while such construction is still in progress and not ready for use and operation; at which time such constructed assets and improvements will be recognized at their corresponding fair value. These capital assets are not being depreciated after the closing date of their respective service concession arrangements because such agreements require the third-party operators to return the related facilities to these discretely presented component units in its original or enhanced condition. Such capital assets continue to apply existing capital asset guidance, including depreciation through the closing date of the respective service concession arrangements. Under these service concession arrangements, the aforementioned discretely presented component units have received from the third-party operator either an upfront compensation fee or capital assets (or the commitment to construct them under the agreement) or both. These resources, net of any contractual obligation from the discretely presented component units, are considered a deferred inflow of resources, which is recognized into revenue under the straight-line method over the term of the respective agreements.

The Commonwealth follows the provisions of GASB Statement No. 42, *Accounting and Financial Reporting for Impairment of Capital Assets and for Insurance Recoveries*, an amendment to GASB Statement No. 34. This statement establishes guidance for accounting and reporting for the impairment of capital assets and for insurance recoveries. In accordance with these provisions,

76

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

governments are required to evaluate prominent events or changes in circumstances affecting capital assets to determine whether impairment of a capital asset has occurred. Such events or changes in circumstances that may be indicative of impairment include evidence of physical damage, enactment or approval of laws or regulations or other changes in environmental factors, technological changes or evidence of obsolescence, changes in the manner or duration of use of a capital asset, and construction stoppage among others. The Commonwealth and its components units evaluated its capital assets as required by GASB Statement No. 42 and impairments of approximately $15.1 million and $6.2 million were identified at the Primary Government and the discretely presented component units, respectively, during the year ended June 30, 2017. Impairments at the Primary Government level are composed of $13.3 million related to public schools identified for closure and $1.8 million related to certain dwelling units identified for demolition. At the discretely presented component units level, an impairment of approximately $2.3 million was due to obsolescence of two electrical turbines of PREPA, and $3.9 of capital assets were identified as fully impaired by PRPA.

*(o) Income Tax Refunds Payable*

During the calendar year, the Commonwealth collects individual and corporate income taxes through withholdings and payments from taxpayers. At June 30 of each year, the Commonwealth estimates the amount owed to taxpayers for overpayments of income taxes during the first half of the calendar year. These estimated amounts and the actual individual and corporate income tax refunds claimed for prior years but not paid at year-end are recorded as income tax refunds payable and as a reduction of tax revenue in both the Governmental Funds and the Governmental Activities.

*(p) Deferred Outflows/Inflows of Resources*

In addition to assets, the statement of net position will sometimes report a separate section for deferred outflows of resources. This separate financial statement element, deferred outflows of resources, represents a consumption of net position that applies to a future period(s) and so will not be recognized as an outflow of resources (expense/expenditure) until then. The Primary Government and the discretely presented component units have three major captions that qualify for reporting in this category: (i) the unamortized balance of losses on bond refunding, (ii) the accumulated decrease in the fair value of hedging derivatives and (iii) several items related to pensions and other postemployment benefits, the three of them reported in the government-wide statement of net position. A loss on bond refunding results from the difference in the carrying value of refunded debt and its reacquisition price. This amount is capitalized and amortized over the shorter of the life of the refunded or refunding debt. Further information about the balances of unamortized deferred refunding losses can be found in Note 13. With respect to hedging derivatives, the accumulated losses on their fair values are also deferred and amortized as the underlying hedged instrument (in this case, debt) is being repaid or refunded and/or as the hedging derivative is terminated. Further information on the derivative instruments of the Primary Government can be found in Note 21. Of the pension related items (further disclosed in Note 1 (s) and Note 18), changes in proportionate share of contributions and differences between expected and actual experience, are capitalized and recognized over a period equal to the expected remaining working lifetime of active and inactive participants. Net differences between projected and actual earnings on pension plan investments is deferred and recognized over a five-year period. Pension contributions made subsequent to the measurement date will be recognized as a reduction of the net pension liability after the next measurement date. There were no deferred outflows of resources at the governmental funds level.

In addition to liabilities, the statement of net position and the governmental funds' balance sheet will sometimes report a separate section for deferred inflows of resources. This separate financial statement element, deferred inflows of resources, represents an acquisition of net position and resources that

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

applies to a future period(s) and so will not be recognized as an inflow of resources (revenue) until that time. The Primary Government has only one type of caption arising under the modified accrual basis of accounting that qualify for reporting in this category, and that is unavailable revenue. Deferred inflows of resources at the governmental fund level arise when potential revenue does not meet the "available" criteria for revenue recognition in the current period under the modified accrual basis of accounting. In subsequent periods, when the applicable resources become available, the deferred inflow of resources is removed from the balance sheet, and the revenue is recognized. The Primary Government and the discretely presented component units also have two captions that qualify for reporting in this category in the government-wide- statement of net position and those are the unamortized balance of gains on bond refunding and several items related to pensions. A gain on a bond refunding results when the carrying value of refunded debt is greater than its reacquisition price. This amount is capitalized and amortized over the shorter of the life of the refunded or refunding debt. Further information about the balances of unamortized deferred refunding gains can be found in Note 13. Of the pension related items (further disclosed in Note 1 (s) and Note 18), changes in proportionate share of contributions, differences between expected and actual experience and changes in actuarial assumptions, are deferred and recognized over a period equal to the expected remaining working lifetime of active and inactive participants. Net differences between projected and actual earnings on pension plan investments is deferred and recognized over a five-year period. The discretely presented component units also have one additional item that qualifies for reporting in this category in the government-wide- statement of net position, which is the unamortized balances of the upfront amounts received and related adjustments pertaining to the Service Concession Arrangements of PRPA and PRHTA, further described in Note 17.

*(q) Long-Term Debt*

The liabilities reported in the government-wide financial statements include the Commonwealth's general obligation and revenue bonds and long-term notes, liabilities under guaranteed obligations, obligations under lease/purchase agreements, obligations for voluntary termination benefits, accrued compensated absences, long-term liabilities to other governmental entities, net pension liability, legal claims, and noncurrent federal fund cost disallowances related to expenditures of federal grants. Long-term obligations financed by proprietary fund types and discretely presented component units are recorded as liabilities in those funds and in the discretely presented component units' column.

In the government-wide financial statements, premiums and discounts on long-term debt and other long- term obligations are presented in the columns for Governmental and Business-type activities. The same is presented in the proprietary fund financial statements. Bond and note premiums and discounts are deferred and amortized over the life of the debt using the effective interest method. Bonds and notes payable are reported net of the applicable bond premium or discount. Bond issuance costs, other than prepaid insurance, are reported as expenses.

In the governmental fund financial statements, governmental funds recognize bond premiums and discounts, as well as bond issuance costs, during the current period. The face amount of debt issued is reported as other financing sources. Premiums received on debt issuance are reported as other financing sources while discounts are reported as other financing uses. Issuance costs, whether or not withheld from the actual debt proceeds received, are reported as expenditures.

*(r) Derivative Instruments*

The Commonwealth accounts for derivative instruments in accordance with GASB Statement No. 53, *Accounting and Financial Reporting for Derivative Instruments*. Derivative instruments such as interest rate and commodity swaps, interest rate locks, options (caps, floors, and collars), swaptions, forward contracts, and futures contracts are entered into by governments as investments; as hedges of identified

78

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

financial risks associated with assets or liabilities, or expected transactions (i.e., hedge able items); to lower the costs of borrowings; to effectively fix cash flows or synthetically fix prices; or to offset the changes in fair value of hedgeable items. Certain derivative instruments, with the exception of synthetic guaranteed investment contracts that are fully benefit responsive, are reported at fair value in the government-wide financial statements. The changes in fair value of effective hedging derivative instruments are reported as deferred inflows or deferred outflows of resources. The changes in fair value of investment derivative instruments (which include ineffective hedging derivative instruments) are reported as part of investment revenue in the current reporting period. Effectiveness is determined by considering whether the changes in cash flows or fair values of the potential hedging derivative instrument substantially offset the changes in cash flows or fair values of the hedge able item. For additional information regarding hedging and investment derivative instruments, refer to Note 21.

**(s) Accounting for Pension Costs**

The Commonwealth accounts for pension costs under the provisions of GASB Statement No. 68, *Accounting and Financial Reporting for Pensions an amendment of GASB Statement No. 27*, and GASB Statement No. 71, *Pension Transitions for Contributions Made Subsequent to the Measurement Date an amendment of GASB Statement No. 68*. GASB Statement No. 68 replaced GASB Statement No. 27, *Accounting for Pensions by State and Local Government Employers*, and requires that employers report a net pension liability and related pension accounts, such as pension expense and deferred outflows/inflows of resources as determined by the Retirement Systems, as applicable, under the requirements contained in GASB Statement No. 67, *Financial Reporting for Pension Plans – an amendment of GASB Statement No. 25*. The major fundamental change brought by GASB Statement No. 67, was switching from the then existing "funding based" accounting model, where the Annual Required Contribution (ARC) was compared to the actual payments made and that difference determined the net pension obligation; to an "accrual basis" model, where the total pension obligation (actuarially determined) is compared to the plan net position and the difference represents the net pension liability. In essence, GASB Statement No. 68 brings the effect of GASB Statement No. 67 into the accounting records of the Primary Government and each of the component units and municipalities, whose employees participate in the Retirement Systems.

The Primary Government of the Commonwealth, as well as its component units and the municipalities, are considered "cost sharing" employers of ERS; therefore, they report their allocated share of ERS's net pension liability and the related pension amounts taking in consideration the following, as of June 30, 2017:

- The individual proportion to the collective net pension liability of all the government employer's participating.

- Each participating government employer's proportionate share was consistent with the manner in which contributions were determined and should reflect that participating government employer's projected long-term contribution effort relative to that of all the participating government employers. Contributions that separately financed specific liabilities of an individual participating government employer to ERS (such as a local participating government employer early retirement incentives) were not included in determining the proportionate share of the overall projected long-term contribution effort.

- The contributions that reflected each participating government employer's projected long-term contribution effort are the Act No. 116-2011 statutory payroll-based contribution, the Act No. 3-2013 supplemental contribution, other special contributions, and the Act No. 32-2013 Additional Uniform

79

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Contribution (AUC). Other contributions that did not reflect a participating government employer's projected long-term contribution effort were excluded from the proportionate share calculation.

- The AUC, required a contribution that it is determined in the aggregate and ERS then allocated the total amount to each participating government employer based on such participating government employer's payroll. However, due to a history of non-payment of the AUC by many participating government employers and the expected continuing nonpayment of such contributions, it was determined that the collected AUC amounts would be excluded from the proportionate share determination, in order to prevent an overallocation of net pension liability amounts to those participating government employers who paid their AUC and an under allocation of net pension liability amounts to the participating government employers who did not pay their AUC.

TRS is a single employer pension plan for purposes of GASB Statement No. 68 reporting, as it covers those eligible participants who are teachers within the Commonwealth public education system and are employed by the DOE, which is a single government employer. Similarly, JRS is a single employer pension plan for purposes of GASB Statement No. 68 reporting, as it covers those eligible participants who are judges within the Commonwealth judiciary system and are employed by the Commonwealth's Court Administration Office.

Neither GASB Statements No. 68 nor No. 71 affect the way the Commonwealth may choose to fund its pension obligations.

For purposes of the stand-alone basic financial statements of the discretely presented component units, which audit reports for fiscal year 2017 had already been issued prior to the issuance of the accompanying basic financial statements of the Commonwealth, ERS did not timely provide the information needed to apply GASB Statements No. 68 and No. 71. Therefore, a nonmajor discretely presented component unit was unable to apply these accounting pronouncements, and certain discretely presented component units applied them based on unaudited information. As a result, this nonmajor discretely presented component unit maintained the accounting for pension costs in accordance with GASB Statement No. 27, also based from the standpoint of a participant in a multiple employer cost-sharing plan. Accordingly, pension costs recognized for this discretely presented component unit was principally equal to the statutorily or contractually required contributions, with a liability recorded for any unpaid required contributions. Some discretely presented component units did not record pension related assets or liabilities because they contributed the statutorily required contributions. For additional information, refer to Note 18 (g) and Note 18 (h).

*(t)*  ***Other Postemployment Benefits***

In addition to the pension benefits described in Note 18, the Commonwealth provided, prior to August 23, 2017, other retirement benefits, such as summer and Christmas bonus, and postemployment healthcare benefits (collectively referred to as other post-employment benefits or OPEB) for its retired employees in accordance with local law. Substantially, all of the employees may become eligible for these benefits if they reach normal retirement age while working for the Commonwealth. The Commonwealth accounts for OPEB under the provisions of GASB Statement No. 45, *Accounting and Financial Reporting by Employers for Postemployment Benefits Other Than Pensions*. This statement requires a systematic, accrual basis measurement and recognition of OPEB cost (expense) over a period that approximates employees' years of service and provides information about actuarial accrued liabilities associated with OPEB and whether and to what extent progress is being made in funding the plan. Annual postemployment benefits cost should equal the annual required contribution to the plans, calculated in accordance with certain parameters. For additional information regarding OPEB, refer to Note 19.

80

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The Christmas bonus and the summer bonus benefits are provided by Commonwealth statutes. The Christmas bonus and the summer bonus paid by the Commonwealth to the retired employees during the year ended June 30, 2017 was $600 per retiree, except for those retirees of the ERS, which had their summer bonus eliminated and the Christmas bonus reduced from $600 per retiree to $200 per retiree pursuant to Act No. 3-2013, which reformed ERS. The total amount of Christmas and summer bonus paid during fiscal year 2017 was approximately $62.7 million. These benefits are recorded as expenditures in the General Fund when paid.

Bonus for medicines is also provided to retirees by Commonwealth statutes. The total amount of this bonus paid during fiscal year 2017 was approximately $15 million. These benefits are recorded as expenditures in the General Fund when paid.

*(u)* *Compensated Absences*

The vacation policy of the Commonwealth generally provides for the accumulation of 1.25 days per month up to an annual amount of 15 days, except for the teachers who accrue 4 days per month, up to an annual maximum of 40 days and policemen and firefighters who accrue 2.5 days per month. Vacation time accumulated is fully vested by the employees from the first day of work up to a maximum of 60 days. Employees generally accumulate sick leave at a rate of 1 day per month up to an annual maximum of 12 days and a maximum accumulation of 90 days. Prior to enactment of Act 26-2017, upon retirement, an employee received compensation for all accumulated unpaid vacation leave at the current rate regardless of years of service; and for all accumulated unpaid sick leave if the employee was employed by the Commonwealth for at least 10 years. Act 26-2017 was enacted to modify the existent legal and judiciary framework to be able to comply with the Fiscal Plan approved by the Oversight Board. In addition to accrual modifications, Act 26-2017 also altered the liquidation terms. After the enactment of Act 26-2017, only compensation of accrued vacation leave, up to 60 days, is paid upon employment termination. In order to be eligible to receive compensation, an employee must have been employed for at least three months. Accumulated unpaid sickness days are no longer liquidated upon employment termination. The financial impact of the change in policy resulting from the enactment of Act 26-2017 was recognized and accounted for as a change in accounting estimate in the government-wide financial statements. The liability for compensated absences reported in the government-wide and proprietary fund financial statements has been calculated using the vesting method (except for Puerto Rico Police Bureau employees), in which leave amounts for both employees who currently are eligible to receive termination payments and other employees who are expected to become eligible in the future to receive such payments upon termination, are included. The liability has been calculated based on the employees' current salary level and includes payroll related costs (e.g., social security and Medicare tax). The liability for compensated absences of Puerto Rico Police Bureau (PRPOB) employees is estimated based on actual termination payments made and projected statistically, which is a hybrid between the vesting and termination methods. The governmental fund financial statements record expenditures when employees are paid for leave, or when the balance due is accrued upon the employee's separation from employment. Compensated absences accumulation policies for blended and discretely presented component units varies by entity based on negotiated agreements and other factors agreed upon between the management of these entities and their employees.

*(v)* *Termination Benefits*

The Commonwealth accounts for termination benefits in accordance with GASB Statement No. 47, *Accounting for Termination Benefits*. Pursuant to the provisions of GASB Statement No. 47, in financial statements prepared on the accrual basis of accounting, employers should recognize a liability and expense for voluntary termination benefits (for example, early retirement incentives) when the offer is accepted, and the amount can be estimated. A liability and expense for involuntary termination benefits

81

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(for example, severance benefits) should be recognized in the government-wide financial statements when: (i) a plan of termination has been approved by those with the authority to commit the government to the plan, (ii) the plan has been communicated to the employees, and (iii) the amount can be estimated. In financial statements prepared on the modified accrual basis of accounting, liabilities and expenditures for termination benefits should be recognized to the extent the liabilities are normally expected to be liquidated with expendable available financial resources.

*(w) Interfund Activities and Intraentity Transactions*

The Commonwealth had the following interfund activities and intraentity transactions:

*Interfund Transfer* – Legally required transfers are reported when incurred as transfer in by the recipient fund and as transfer out by the disbursing fund, with receivables and payables presented as amounts due to and due from other funds. Advances between funds are also presented as amounts due to and due from other funds. However, these advances, transfers, and related amounts receivable and payable are considered internal balances and activities that have been eliminated in the government-wide financial statements. Interfund receivables are stated net of estimated allowances for uncollectible accounts, which are determined based upon past collection experience and current economic conditions.

*Intraentity Transactions* – There are two types of intraentity transactions: First, the flow of resources between the Primary Government and its discretely presented component units, and among the discretely presented component units. This flow of resources and the related outstanding balances are reported as if they were external transactions. However, flow of resources between the Primary Government and blended component units are classified as interfund activity, as described above. Second, the intraentity balances between the Primary Government and discretely presented component units are equivalent to long-term debt financing. The Primary Government's liability is reported in the statement of net position, the proceeds in the Primary Government's statement of revenue, expenditures and changes in fund balance governmental funds, and the asset in the discretely presented component units' statement of net position. Amounts due from discretely presented component units are stated net of estimated allowances for uncollectible accounts, which are determined based upon past collection experience and current economic conditions.

*(x) Lottery Revenue and Prizes*

The revenue, expenses, and prizes awarded by the Traditional Lottery of Puerto Rico and the Additional Lottery System, reported within the lotteries enterprise fund, are recognized as drawings are held. Moneys collected prior to June 30 for tickets related to drawings to be conducted subsequent to June 30 are reported as unearned revenue. Unpaid prizes awarded as of June 30, are reported as obligation for unpaid lottery prices. Unclaimed prizes expire after six months and are transferred to the General Fund.

*(y) Risk Management*

The Commonwealth purchases commercial insurance covering casualty, theft, tort claims, and other losses for the Primary Government, most component units, and the municipalities. The Commonwealth is reimbursed for premium payments made on behalf of the component units and the municipalities. The current insurance policies have not been canceled or terminated. For workers' compensation, the Commonwealth has a discretely presented component unit, the SIFC, which provides workers' compensation to both public and private employees. The Commonwealth's blended component units are responsible for assuring that its property is properly insured. Annually, these blended component units compile the information of all property owned and its respective replacement value and purchases its property and casualty insurance policies. Insurance coverage for fiscal year 2017 remained similar to those of prior years. In the last three years, the Commonwealth's or the component units' insurance settlements have not exceeded the amount of coverage.

82

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Certain discretely presented and blended component units combine commercial insurance with internal self-insurance funds covering specific risks related to their specialized operations. The most significant self-insurance funds reside at the discretely presented component unit's level and are described in detail in Note 16.

*(z)* *Tobacco Settlement*

The Commonwealth follows GASB Technical Bulletin No. 2004-1, *Tobacco Settlement Recognition and Financial Reporting Entity Issue*, as amended by GASB Statement No. 48, *Sales and Pledges of Receivables and Future Revenues and Intra Entity Transfers of Assets and Future Revenues,* (the TB), which provides accounting guidance for entities created to obtain the rights to all or a portion of future tobacco settlement resources and for the governments that create such entities.

The TB indicates that the entity created to obtain the rights, generally referred to as Tobacco Settlement Authority (in the Commonwealth's case, the Children's Trust), should be considered a blended component unit of the government that created it. The TB also states that the government receiving the payments from the tobacco companies under the agreement, referred to as settling governments, should recognize a receivable and revenue for tobacco settlement resources when an event occurs. The event that results in the recognition of an asset and revenue by the settling government is the domestic shipment of cigarettes. The TB indicates that accruals should be made by the settling government and tobacco settlement authorities for estimated shipments from January 1 to their respective fiscal year ends, since the annual payments are based on a calendar year. However, under the modified accrual basis of accounting at the fund level, revenue should be recognized only to the extent that resources are available.

*(aa)**Use of Estimates*

The preparation of the basic financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities, disclosure of contingent assets and liabilities at the date of the basic financial statements, and the reported amounts of revenue and expenses during the reporting period. Actual results could differ from those estimates.

*(bb)* *New Accounting Standards Adopted*

The following new accounting standards were adopted by the Commonwealth effective July 1, 2017:

- GASB Statement No. 74, *Financial Reporting for Postemployment Benefit Plans Other Than Pension Plans*. This statement replaces GASB Statements No. 43, *Financial Reporting for Postemployment Benefit Plans Other Than Pension Plans*, as amended, and GASB Statement No. 57, *OPEB Measurements by Agent Employers and Agent Multiple Employer Plans*. It also includes requirements for defined contribution OPEB plans that replace the requirements for those OPEB plans in GASB Statement No. 25, *Financial Reporting for Defined Benefit Pension Plans and Note Disclosures for Defined Contribution Plans*, as amended, GASB Statement No. 43, and GASB Statement No. 50, *Pension Disclosures*. The scope of this statement includes defined benefit and defined contribution OPEB plans administered through trusts that meet the following criteria:

  - Contributions from employers and nonemployer contributing entities to the OPEB plan and earnings on those contributions are irrevocable.

  - OPEB plan assets are dedicated to providing OPEB to plan members in accordance with the benefit terms.

83

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

- OPEB plan assets are legally protected from the creditors of employers, nonemployer contributing entities, and the OPEB plan administrator. If the plan is a defined benefit OPEB plan, plan assets also are legally protected from creditors of the plan members.

This statement also includes requirements to address financial reporting for assets accumulated for purposes of providing defined benefit OPEB through OPEB plans that are not administered through trusts that meet the specified criteria. This statement did not have an impact on the basic financial statements. However, certain changes were incorporated in the notes disclosures and Required Supplementary Information (RSI) of the Retirements Systems' stand-alone audited financial statements for the year ended June 30, 2017.

- GASB Statement No. 77, *Tax Abatement Disclosures*. This statement establishes financial reporting standards for tax abatement agreements entered into by state and local governments. The disclosures required by this statement encompass tax abatements resulting from both (a) agreements that are entered into by the reporting government and (b) agreements that are entered into by other governments and that reduce the reporting government's tax revenue. The provisions of this statement should be applied to all state and local governments subject to such tax abatement agreements. For financial reporting purposes, a tax abatement is defined as a reduction in tax revenue that results from an agreement between one or more governments and an individual or entity in which (a) one or more governments promise to forgo tax revenue to which they are otherwise entitled and (b) the individual or entity promises to take a specific action after the agreement has been entered into that contributes to economic development or otherwise benefits the governments or the citizens of those governments. A transaction's substance, not its form or title, is a key factor in determining whether the transaction meets the definition of a tax abatement for the purpose of this Statement. See Note 8 for further information on tax abatements.

- GASB Statement No. 78, *Pensions Provided Through Certain Multiple Employer Defined Benefit Plans*. This Statement addresses a practice issue regarding the scope and applicability of GASB Statement No. 68. This issue is associated with pensions provided through certain multiple employer defined benefit pension plans and to state or local governmental employers whose employees are provided with such pensions. Prior to the issuance of this statement, the requirements of GASB Statement No. 68 applied to the basic financial statements of all state and local governmental employers whose employees are provided with pensions through pension plans that are administered through trusts that meet the criteria in paragraph 4 of that statement. This statement amends the scope and applicability of GASB Statement No. 68 to exclude pensions provided to employees of state or local governmental employers through a cost sharing multiple employer defined benefit pension plan that (1) is not a state or local governmental pension plan, (2) is used to provide defined benefit pensions both to employees of state or local governmental employers and to employees of employers that are not state or local governmental employers, and (3) has no predominant state or local governmental employer (either individually or collectively with other state or local governmental employers that provide pensions through the pension plan). This statement establishes requirements for recognition and measurement of pension expense, expenditures, and liabilities; note disclosures; and required supplementary information for pensions that have the characteristics described above. This statement did not have an impact on the basic financial statements.

- GASB Statement No. 80, *Blending Requirements for Certain Component Units*. This statement improves financial reporting by clarifying the financial statement presentation requirements for certain component units. This statement amends the blending requirements established in paragraph 53 of GASB Statement No. 14, *The Financial Reporting Entity*, as amended. The

84

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

additional criterion requires blending of a component unit incorporated as a not for profit corporation in which the Primary Government is the sole corporate member. The additional criterion does not apply to component units included in the financial reporting entity pursuant to the provisions of GASB Statement No. 39, *Determining Whether Certain Organizations Are Component Units*. This statement did not have an impact on the basic financial statements.

**(cc) Accounting Pronouncements Issued But Not Yet Effective**

The following new accounting standards have been issued but are not yet effective:

- GASB Statement No. 75, *Accounting and Financial Reporting for Postemployment Benefits Other Than Pensions*. This Statement replaces the requirements of GASB Statements No. 45, *Accounting and Financial Reporting by Employers for Postemployment Benefits Other Than Pensions*, as amended, and GASB Statement No. 57, *OPEB Measurements by Agent Employers and Agent Multiple Employer Plan*, for OPEB. The scope of this statement addresses accounting and financial reporting for OPEB that is provided to the employees of state and local governmental employers. This statement establishes standards for recognizing and measuring liabilities, deferred outflows of resources, deferred inflows of resources, and expense/expenditures. For defined benefit OPEB, this statement identifies the methods and assumptions that are required to be used to project benefit payments, discount projected benefit payments to their actuarial present value, and attribute that present value to periods of employee service. Footnote disclosure and required supplementary information requirements about defined benefit OPEB also are addressed. In addition, this statement details the recognition and disclosure requirements for employers with payables to defined benefit OPEB plans that are administered through trusts that meet the specified criteria and for employers whose employees are provided with defined contribution OPEB. This statement also addresses certain circumstances in which a nonemployer entity provides financial support for OPEB of employees of another entity. The provisions of this statement are effective for fiscal years beginning after June 15, 2017.

- GASB Statement No. 81, *Irrevocable Split Interest Agreements*. This statement improves accounting and financial reporting for irrevocable split interest agreements by providing recognition and measurement guidance for situations in which a government is a beneficiary of the agreement. This statement requires that a government that receives resources pursuant to an irrevocable split interest agreement recognize assets, liabilities, and deferred inflows of resources at the inception of the agreement. Furthermore, this statement requires that a government recognize assets representing its beneficial interests in irrevocable split interest agreements that are administered by a third party, if the government controls the present service capacity of the beneficial interests. This statement requires that a government recognize revenue when the resources become applicable to the reporting period. This statement is not effective until fiscal year 2018.

- GASB Statement No. 82, *Pension Issues an Amendment of GASB Statements No. 67, No. 68 and No. 73*. This statement addresses certain issues that have been raised with respect to GASB Statements No. 67, No. 68, and No. 73. The statement is designed to improve consistency in the application of the pension standards by clarifying or amending related areas of existing guidance. Specifically, this statement addresses issues regarding (1) the presentation of payroll related measures in required supplementary information, (2) the selection of assumptions and the treatment of deviations from the guidance in an Actuarial Standard of Practice for financial reporting purposes, and (3) the classification of payments made by employers to satisfy employee (plan member) contribution requirements. This statement amends GASB Statements No. 67 and No. 68 to require the presentation of covered payroll, defined as the payroll on which contributions to a pension plan are based, as well as ratios that use that measure. This statement clarifies that a deviation, as the

85

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

term is used in Actuarial Standards of Practice issued by the Actuarial Standards Board, from the guidance in an Actuarial Standard of Practice is not considered to be in conformity with the requirements of GASB Statement No. 67, GASB Statement No. 68, or GASB Statement No. 73 for the selection of assumptions used in determining the total pension liability and related measures. This statement clarifies that payments made by an employer to satisfy contribution requirements that are identified by the pension plan terms as plan member contribution requirements should be classified as plan member contributions for purposes of GASB Statement No. 67 and as employee contributions for purposes of GASB Statement No. 68. It also requires that an employer's expense and expenditures for those amounts be recognized in the period for which the contribution is assessed and classified in the same manner as the employer classifies similar compensation other than pensions (for example, as salaries and wages or as fringe benefits). This statement is not effective until fiscal year 2017, except for the requirements of this statement for the selection of assumptions in a circumstance in which an employer's pension liability is measured as of a date other than the employer's most recent fiscal year end. In that circumstance, the requirements for the selection of assumptions are effective for that employer in the first reporting period in which the measurement date of the pension liability is on or after June 15, 2017.

- GASB Statement No. 83, *Certain Asset Retirement Obligations*. This statement addresses accounting and financial reporting for certain asset retirement obligations (AROs). An ARO is a legally enforceable liability associated with the retirement of a tangible capital asset. A government that has legal obligations to perform future asset retirement activities related to its tangible capital assets should recognize a liability based on the guidance in this statement. This statement requires that recognition occur when the liability is both incurred and reasonably estimable. The determination of when the liability is incurred should be based on the occurrence of external laws, regulations, contracts, or court judgments, together with the occurrence of an internal event that obligates a government to perform asset retirement activities. Laws and regulations may require governments to take specific actions to retire certain tangible capital assets at the end of the useful lives of those capital assets, such as decommissioning nuclear reactors and dismantling and removing sewage treatment plants. Other obligations to retire tangible capital assets may arise from contracts or court judgments. Internal obligating events include the occurrence of contamination, placing into operation a tangible capital asset that is required to be retired, abandoning a tangible capital asset before it is placed into operation, or acquiring a tangible capital asset that has an existing ARO. The requirements of this statement are effective for reporting periods beginning after June 15, 2018.

- GASB Statement No. 84, *Fiduciary Activities*. This statement establishes criteria for identifying fiduciary activities of all state and local governments. The focus of the criteria generally is on (1) whether a government is controlling the assets of the fiduciary activity and (2) the beneficiaries with whom a fiduciary relationship exists. Separate criteria are included to identify fiduciary component units and postemployment benefit arrangements that are fiduciary activities. An activity meeting the criteria should be reported in a fiduciary fund in the basic financial statements. Governments with activities meeting the criteria should present a statement of fiduciary net position and a statement of changes in fiduciary net position. An exception to that requirement is provided for a Business-type activity that normally expects to hold custodial assets for three months or less. This statement describes four fiduciary funds that should be reported, if applicable: (1) pension (and other employee benefit) trust funds, (2) investment trust funds, (3) private purpose trust funds, and (4) custodial funds. Custodial funds generally should report fiduciary activities that are not held in a trust or equivalent arrangement that meets specific criteria. This statement also provides for recognition of a liability to the beneficiaries in a fiduciary fund when an event has occurred that

86

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

compels the government to disburse fiduciary resources. The requirements of this statement are effective for reporting periods beginning after December 15, 2018.

- GASB Statement No. 85, *Omnibus 2017*. The objective of this statement is to address practice issues that have been identified during implementation and application of certain GASB Statements. This statement addresses a variety of topics including issues related to blending component units, goodwill, fair value measurement and application, and postemployment benefits (pensions and other postemployment benefits [OPEB]). Specifically, this statement addresses the following topics:

  – Blending a component unit in circumstances in which the Primary Government is a Business-type activity that reports in a single column for financial statement presentation.

  – Reporting amounts previously reported as goodwill and "negative" goodwill.

  – Classifying real estate held by insurance entities.

  – Measuring certain money market investments and participating interest earning investment contracts at amortized cost.

  – Timing of the measurement of pension or OPEB liabilities and expenditures recognized in financial statements prepared using the current financial resources measurement focus.

  – Recognizing on behalf payments for pensions or OPEB in employer financial statements.

  – Presenting payroll related measures in required supplementary information for purposes of reporting by OPEB plans and employers that provide OPEB.

  – Classifying employer paid member contributions for OPEB.

  – Simplifying certain aspects of the alternative measurement method for OPEB.

  – Accounting and financial reporting for OPEB provided through certain multiple employer defined benefit OPEB plans.

  The requirements of this Statement are effective for reporting periods beginning after June 15, 2017. Earlier application is encouraged.

- GASB Statement No. 86, *Certain Debt Extinguishment Issues*. This statement improves the consistency in accounting and financial reporting for in substance defeasance of debt by providing guidance for transactions in which cash and other monetary assets acquired with only existing resources – resources other than the proceeds of refunding debt – are placed in an irrevocable trust for the sole purpose of extinguishing debt. This statement also improves accounting and financial reporting for prepaid insurance on debt that is extinguished and disclosures for debt that is defeased in substance. The requirements of this statement are effective for fiscal years beginning after June 15, 2017.

- GASB Statement No. 87, *Leases*. The objective of this statement is to better meet the information needs of financial statement users by improving accounting and financial reporting for leases by governments. This statement increases the usefulness of governments' financial statements by requiring recognition of certain lease assets and liabilities for leases that previously were classified as operating leases and recognized as inflows of resources or outflows of resources based on the payment provisions of the contract. It establishes a single model for lease accounting based on the foundational principle that leases are financings of the right to use an underlying asset. Under this statement, a lessee is required to recognize a lease liability and an intangible right to use lease asset, and a lessor is required to recognize a lease receivable and a deferred inflow of resources, thereby

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

enhancing the relevance and consistency of information about governments' leasing activities. The requirements of this statement are effective for reporting periods beginning after December 15, 2019.

- GASB Statement No. 88, *Certain Disclosures Related to Debt, Including Direct Borrowings and Direct Placements.* The primary objective of this statement is to improve the information that is disclosed in notes to government financial statements related to debt, including direct borrowings and direct placements. It also clarifies which liabilities governments should include when disclosing information related to debt. This statement requires that additional essential information related to debt be disclosed in notes to financial statements, including unused lines of credit; assets pledged as collateral for the debt; and terms specified in debt agreements related to significant events of default with finance-related consequences, significant termination events with finance-related consequences, and significant subjective acceleration clauses. For notes to financial statements related to debt, this statement also requires that existing and additional information be provided for direct borrowings and direct placements of debt separately from other debt. The requirements of this statement are effective for reporting periods beginning after June 15, 2018.

- GASB Statement No. 89, *Accounting for Interest Cost Incurred Before the End of a Construction Period.* This statement establishes accounting requirements for interest cost incurred before the end of a construction period. Such interest cost includes all interest that previously was accounted for in accordance with the requirements of paragraphs 5–22 of GASB Statement No. 62, *Codification of Accounting and Financial Reporting Guidance Contained in Pre-November 30, 1989 FASB and AICPA Pronouncements,* which are superseded by this statement. This statement requires that interest cost incurred before the end of a construction period be recognized as an expense in the period in which the cost is incurred for financial statements prepared using the economic resources measurement focus. As a result, interest cost incurred before the end of a construction period will not be included in the historical cost of a capital asset reported in a business-type activity or enterprise fund. This statement also reiterates that in financial statements prepared using the current financial resources measurement focus, interest cost incurred before the end of a construction period should be recognized as an expenditure on a basis consistent with governmental fund accounting principles. The requirements of this statement are effective for reporting periods beginning after December 15, 2019.

- GASB Statement No. 90, *Majority Equity Interest.* The primary objectives of this Statement are to improve the consistency and comparability of reporting a government's majority equity interest in a legally separate organization and to improve the relevance of financial statement information for certain component units. It defines a majority equity interest and specifies that a majority equity interest in a legally separate organization should be reported as an investment if a government's holding of the equity interest meets the definition of an investment. A majority equity interest that meets the definition of an investment should be measured using the equity method, unless it is held by a special-purpose government engaged only in fiduciary activities, a fiduciary fund, or an endowment (including permanent and term endowments) or permanent fund. Those governments and funds should measure the majority equity interest at fair value. For all other holdings of a majority equity interest in a legally separate organization, a government should report the legally separate organization as a component unit, and the government or fund that holds the equity interest should report an asset related to the majority equity interest using the equity method. This Statement establishes that ownership of a majority equity interest in a legally separate organization results in the government being financially accountable for the legally separate organization and, therefore, the government should report that organization as a component unit. This Statement also requires that a component unit in which a government has a 100 percent equity interest account for its assets, deferred outflows of resources, liabilities, and deferred inflows of resources at acquisition value at

88

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

the date the government acquired a 100 percent equity interest in the component unit. Transactions presented in flows statements of the component unit in that circumstance should include only transactions that occurred subsequent to the acquisition. The requirements of this statement are effective for reporting periods beginning after December 15, 2018.

- GASB Statement No. 91, *Conduit Debt Obligations.* This Statement requires issuers to disclose general information about their conduit debt obligations, organized by type of commitment, including the aggregate outstanding principal amount of the issuers' conduit debt obligations and a description of each type of commitment. Issuers that recognize liabilities related to supporting the debt service of conduit debt obligations also should disclose information about the amount recognized and how the liabilities changed during the reporting period. The requirements of this Statement are effective for reporting periods beginning after December 15, 2020.

- GASB Statement No. 92, *Omnibus 2020.* This Statement addresses a variety of topics and includes specific provisions about the following, the effective date of Statement No. 87, *Leases,* and Implementation Guide No. 2019-3, Leases, for interim financial reports; Reporting of intra-entity transfers of assets between a primary government employer and a component unit defined benefit pension plan or defined benefit other postemployment benefit (OPEB) plan; The applicability of Statements No. 73, *Accounting and Financial Reporting for Pensions and Related Assets That Are Not within the Scope of GASB Statement 68, and Amendments to Certain Provisions of GASB Statements 67 and 68, as amended,* and No. 74, *Financial Reporting for Postemployment Benefit Plans Other Than Pension Plans, as amended,* to reporting assets accumulated for postemployment benefits; The applicability of certain requirements of Statement No. 84, *Fiduciary Activities,* to postemployment benefit arrangements; measurement of liabilities (and assets, if any) related to asset retirement obligations (AROs) in; a government acquisition; Reporting by public entity risk pools for amounts that are recoverable from reinsurers or excess insurers; Reference to nonrecurring fair value measurements of assets or liabilities in authoritative literature; and terminology used to refer to derivative instruments. The portion of this Statement that relate to the effective date of Statement 87 and its associated implementation guidance are effective upon issuance. Provisions related to intra-entity transfers of assets and applicability of Statements 73 and 74 are effective for fiscal years beginning after June 15, 2020. The remaining requirements related to asset retirement obligations are effective for government acquisitions occurring in reporting periods beginning after June 15, 2020. Earlier application is encouraged and is permitted by topic.

- GASB Statement No. 93, *Replacement of Interbank Offered Rates.* The objective of this Statement is to address those and other accounting and financial reporting implications that result from the replacement of an Interbank Offered Rate (IBOR). Some governments have entered into agreements in which variable payments made or received depend on an IBOR—most notably, the London Interbank Offered Rate (LIBOR). As a result of global reference rate reform, LIBOR is expected to cease to exist in its current form at the end of 2021, prompting governments to amend or replace financial instruments for the purpose of replacing LIBOR with other reference rates, by either changing the reference rate or adding or changing fallback provisions related to the reference rate. The removal of LIBOR as an appropriate benchmark interest rate is effective for reporting periods ending after December 31, 2021. All other requirements of this Statement are effective for reporting periods beginning after June 15, 2020. Earlier application is encouraged.

- GASB Statement No. 94, *Public-Private and Public-Public Partnerships and Availability Payments Arrangements.* The primary objective of this Statement is to improve financial reporting by addressing issues related to public-private and public-public partnership arrangements (PPPs). This Statement also provides guidance for accounting and financial reporting for availability payment arrangements

89

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(APAs). As defined in this Statement, an APA is an arrangement in which a government compensates an operator for services that may include designing, constructing, financing, maintaining, or operating an underlying nonfinancial asset for a period of time in an exchange or exchange-like transaction. This Statement requires that PPPs that meet the definition of a lease apply the guidance in Statement No. 87, *Leases,* as amended, if existing assets of the transferor that are not required to be improved by the operator as part of the PPP arrangement are the only underlying PPP assets and the PPP does not meet the definition of a service concession arrangement (SCA). This Statement also provides specific guidance in financial statements prepared using the economic resources measurement focus for a government that is an operator in a PPP that either (1) meets the definition of an SCA or (2) is not within the scope of Statement 87, as amended (as clarified in this Statement). This Statement also requires a government to account for PPP and non-PPP components of a PPP as separate contracts. This Statement also requires an amendment to a PPP to be considered a PPP modification, unless the operator's right to use the underlying PPP asset decreases, in which case it should be considered a partial or full PPP termination. The requirements of this Statement are effective for fiscal years beginning after June 15, 2022, and all reporting periods thereafter. Earlier application is encouraged.

- GASB Statement No. 95, *Postponements of Effective Dates of Certain Authoritative Guidance.* The primary objective of this Statement is to provide temporary relief to governments and other stakeholders in light of the COVID-19 pandemic. That objective is accomplished by postponing the effective dates of certain provisions in Statements and Implementation Guides that first became effective or are scheduled to become effective for periods beginning after June 15, 2018, and later.

The effective dates of certain provisions contained in the following pronouncements are postponed by one year after the original implementation date:

- GASSB Statement No. 83, *Certain Asset Retirement Obligations*

- GASB Statement No. 84, *Fiduciary Activities*

- GASB Statement No. 88, *Certain Disclosures Related to Debt, including Direct Borrowings and Direct Placements*

- GASB Statement No. 89, *Accounting for Interest Cost Incurred before the End of a Construction Period*

- GASB Statement No. 90, *Majority Equity Interests*

- GASB Statement No. 91, *Conduit Debt Obligations*

- GASB Statement No. 92, *Omnibus 2020*

- GASB Statement No. 93, *Replacement of Interbank Offered Rates*

- GASB Implementation Guide No. 2017-3, *Accounting and Financial Reporting for Postemployment Benefits Other Than Pensions (and Certain Issues Related to OPEB Plan Reporting)*

- GASB Implementation *Guide No. 2018-1, Implementation Guidance Update—2018*

- GASB Implementation Guide No. 2019-1, *Implementation Guidance Update—2019*

- GASB Implementation Guide No. 2019-2, *Fiduciary Activities.*

90

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The effective dates of the following pronouncements are postponed by 18 months after the original implementation date:

– GASB Statement No. 87, *Leases*

– GASB Implementation Guide No. 2019-3, *Leases*.

Earlier application of the provisions addressed in this Statement is encouraged and is permitted to the extent specified in each pronouncement as originally issued.

- GASB Statement No. 96, *Subscription-Based Information Technology Arrangements.* The primary objective of this Statement is to provide guidance on the accounting and financial reporting for subscription-based information technology arrangements (SBITAs) for government end users (governments). This Statement (1) defines a SBITA; (2) establishes that a SBITA results in a right-to-use subscription asset—an intangible asset—and a corresponding subscription liability; (3) provides the capitalization criteria for outlays other than subscription payments, including implementation costs of a SBITA; and (4) requires note disclosures regarding a SBITA. To the extent relevant, the standards for SBITAs are based on the standards established in Statement No. 87, *Leases,* as amended. The requirements of this Statement are effective for fiscal years beginning after June 15, 2022, and all reporting periods thereafter. Earlier application is encouraged.

Management is evaluating the impact that these statements may have on the Commonwealth basic financial statements upon adoption.

**(2) Going Concern, Uncertainties and Liquidity Risk**

The risks and uncertainties facing the Commonwealth, together with other factors, have led management to conclude that there is substantial doubt as to the ability of the Commonwealth to continue as a going concern.

*(a) Going Concern – Primary Government*

Management believes that there is substantial doubt about the Commonwealth's ability to continue as a going concern for the following reasons:

- The Commonwealth is in a midst of a fiscal, economic and liquidity crisis, the culmination of many years of significant governmental deficits, an economic recession, high unemployment rate, a population decline and a high levels of debt and pension related obligations. As the Commonwealth's tax base shrunk and its revenues were affected by the prevailing economic conditions, an increasing portion of the Commonwealth's General Fund budget was allocated to health care and pension related costs, debt service requirements through fiscal year 2017, and funding for essential services has been reduced. The Commonwealth's liquidity constraints, among other factors, affected its credit ratings and its ability to obtain financing at prevailing interests rates.

- In response to the Commonwealth's current fiscal crisis, the United States Congress enacted PROMESA establishing the Oversight Board. On May 1, 2017, the temporary stay under Title IV of PROMESA expired, permitting substantial litigation brought by bondholders and other creditors against the Commonwealth and its component units to resume and new suits to be initiated. As a result, on May 3, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the Commonwealth by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico (the Title III Court). Title III of PROMESA incorporates the automatic stay provisions of Bankruptcy Code section 362 and 922, which are made applicable to Title III cases pursuant to PROMESA section 301(a). Accordingly, upon the filing of the Commonwealth's Title III case, an automatic stay immediately went into effect to stay creditor litigation.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

- Since June 30, 2014, the principal rating agencies lowered their rating on the general obligation bonds of the Commonwealth, which had already been placed in a default rating of "D." They also lowered similarly to a default grade their ratings on the bonds of the PBA and GDB, while the ratings on the bonds of COFINA have been lowered multiple notches to a current noninvestment grade level of Ca, CC and D (depending on the particular rating agency), although certain COFINA bonds have been placed on positive outlook as the result of developments in the Title III cases.

- The Primary Government reflects a net deficit of approximately $71.1 billion as of June 30, 2017. The Commonwealth's General Fund shows a fund deficit of approximately $100.6 million as of June 30, 2017.

- For fiscal years ended June 30, 2017, the Legislature did not appropriate approximately $85.4 million, for the debt service payments of the PFC bonds which are obligations of certain component units of the Commonwealth that are payable solely from such appropriations.

- On April 6, 2016, the Moratorium Act was enacted, under which the Commonwealth and certain of its component units suspended their respective debt service payments. In particular, the Commonwealth suspended the payment of approximately $1.2 billion in debt service on general obligation bonds due June 30, 2017. For additional information regarding the Moratorium Act and other relevant legislation, refer to Note 3 and Note 23.

*Remediation Plan – Primary Government*

On March 13, 2017, the Oversight Board certified the initial fiscal plan for the Commonwealth. The fiscal plan has been subject to various revisions. On May 27, 2020, the Oversight Board certified its most recent fiscal plan for the Commonwealth (the Oversight Board Fiscal Plan), which included the following categories of structural reforms and fiscal measures:

*(i)      Human Capital and Welfare Reform*

*(ii)     Ease of Doing Business Reform*

*(iii)    Energy and Power Regulatory Reform*

*(iv)    Infrastructure and Capital Investment Reform*

*(v)     Establishment of the Office of the CFO*

*(vi)    Agency Efficiency Measures*

*(vii)   Healthcare Reform*

*(viii)  Tax Compliance and Fees Enhancement*

*(ix)    Reduction in UPR and Municipality Appropriations*

*(x)     Pension Reform*

*(xi)    Fiscal Controls and Transparency*

There is no certainty that the Oversight Board Fiscal Plan (as currently certified or as subsequently amended and recertified) will be fully implemented, or if implemented will ultimately provide the intended results. All these plans and measures, and the Commonwealth's ability to reduce its deficit and to achieve a balanced budget in future fiscal years depends on a number of factors and risks, some of which are not wholly within its control.

On September 27, 2019, the Oversight Board filed a proposed plan of adjustment of Commonwealth debt that would reduce most of the Commonwealth's debt obligations by approximately 70% and

92

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

establishes a roadmap to exit bankruptcy. As of the date of these basic financial statements, the disclosure statement accompanying the proposed plan of adjustment has not yet been approved by the Title III Court and no solicitation of the proposed plan has been approved. It is uncertain that eligible creditors will vote in favor of or if the Title III Court will ultimately confirm the Oversight Board's proposed plan of adjustment.

**(b) Going Concern – Retirement Systems**

The Commonwealth has historically maintained three retirement systems: (i) ERS; (ii) JRS; and (iii) TRS, (collectively, the Retirement Systems).

The Retirement Systems have been severely underfunded for the past years. TRS and JRS subsequently liquidated all of their assets by the end of fiscal year 2018. ERS still has assets that are in the process of being liquidated.

On May 21, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for ERS by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico. On June 15, 2017, the United States Trustee appointed the Official Committee of Retired Employees of Puerto Rico (the Retiree Committee) in the Commonwealth's Title III cases.

*Remediation Plan – Retirement Systems*

On August 23, 2017, the Governor signed into law Act No. 106-2017, known as the "Act to Guarantee the Payment to our Pensioners and Establish a New Plan of Defined Contributions for Public Servants". As of the effective date of Act 106-2017, plan participants shall not accumulate additional benefits in the Retirement Systems. Act 106-2017 established the PayGo mechanism effective July 1, 2017 and reformed the Retirement Systems so that their active participants would deposit their individual contributions in a new Defined Contribution Plan, similar to a 401(k) plan, that would be managed by a private entity.

Detailed information about the Retirement Systems' liquidity and solvency issues and the corresponding remediation plans are disclosed in the notes of the Retirement System's 2017 stand-alone audited basic financial statements.

**(c) Going Concern – Discretely Presented Component Units**

The following major discretely presented component units have been identified as having substantial doubt about their ability to continue as a going concern. Each major discretely presented component units' circumstances and remediation plan are described below:

**(i) GDB**

The stand-alone audited basic financial statements of GDB disclose that there is substantial doubt about GDB's ability to continue as a going concern for the following reasons:

- GDB, traditionally served as interim lender to the Commonwealth, its component units, and municipalities in anticipation of the issuance of long-term bonds and notes by such entities in the municipal bond market. GDB also provided financing to the Commonwealth and its component units to finance their respective budget deficits, collateral requirements under swap agreements, and to meet mandatory payments of obligations. As a result, GDB's liquidity and financial condition depended to a large extent on the repayment of loans made to the Commonwealth and its component units. Conditions that adversely affect the ability of the Commonwealth and its component units to raise cash (including limited access to capital markets) and repay their interim and other loans to GDB had an adverse effect on GDB's liquidity and financial condition.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

- Under the Moratorium Act (as amended by Act No. 2-2017), FAFAA was created, as an independent public corporation to assume GDB's role as fiscal agent, financial advisor and reporting agent for the Commonwealth, its component units, and municipalities.

*Remediation Plan – GDB*

Upon the establishment of FAFAA, GDB's role was reduced to act as an agent in (i) collecting on its loan portfolio and (ii) disbursing funds pursuant to strict priority guidelines. Therefore, taking into consideration the scenario described above, given the reduced services that GDB was then providing and given that no appropriations were assigned to GDB for fiscal years 2018 and 2019, GDB's management initiated an orderly wind down process under Title VI of PROMESA consisting of a restructuring support agreement entered into by FAFAA and GDB with a significant portion of GDB major stockholders subject to different milestones.

For detailed information about GDB's cease of operations refer to the notes of GDB's 2017 stand-alone audited basic financial statements.

*(ii)* **PRHTA**

The stand-alone audited basic financial statements of PRHTA disclose that there is substantial doubt about PRHTA's ability to continue as a going concern for the following reasons:

- PRHTA has experienced significant recurring losses from operations and faces a number of business challenges that have been exacerbated by the Commonwealth's economic recession and the fact that PRHTA has not increased its revenues to cover its rising costs.

- PRHTA does not have sufficient funds available to repay its various obligations as they come due or those that are currently in default. PRHTA has not been able to increase its revenues, reduce its costs and improve its liquidity. PRHTA's current liabilities exceed its total assets by approximately $2.5 billion and it has an accumulated deficit of approximately $1.1 billion.

- Additionally, significant support and funding for obligations of PRHTA has previously been provided by the Commonwealth and its component units, including GDB. The Commonwealth and such entities are experiencing financial difficulties and are unable to continue to extend, refinance or otherwise provide the necessary liquidity to PRHTA as and when needed. As such, current defaults may not be cured and future defaults on PRHTA's obligations may not be avoided.

- On May 21, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for PRHTA by filing a petition for relief under Title III of PROMESA in the Title III Court. PRHTA is currently operating under the protection of the Title III Court.

*Remediation Plan – PRHTA*

On June 26, 2020, the Oversight Board approved a fiscal plan to provide a roadmap for transforming not only PRHTA, but also infrastructure across Puerto Rico to catalyze economic growth. PRHTA has four objectives aligned with this goal: (a) implementing transit, security and safety projects, (b) improving existing transportation infrastructure, (c) completing highway systems, and (d) reducing traffic.

There is no certainty that any certified fiscal plan for PRHTA will be fully implemented, or if implemented will ultimately provide the intended results.

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Detailed information about PRHTA's conditions and events that raise doubt about its ability to continue as a going concern and the corresponding remediation plans are disclosed in the notes of PHRTA's 2017 fiscal year stand-alone audited basic financial statements.

(iii)   *PREPA*

The stand-alone audited basic financial statements of PREPA disclose that there is substantial doubt about its ability to continue as a going concern for the following reasons:

- PREPA has defaulted on various debt obligations and does not currently have sufficient funds available to repay its obligations as they come due.

- The Commonwealth and its component units are also experiencing financial difficulties and have been unable to repay amounts due to PREPA.

- PREPA has an accumulated deficit of approximately $6 billion as of June 30, 2017, and during the year ended June 30, 2017, the deficit increased by approximately $1.2 billion.

- On July 2, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for PREPA by filing a petition for relief under Title III of PROMESA in the Title III Court. PREPA is currently operating under the protection of the Title III Court.

*Remediation Plan – PREPA*

On June 29, 2020, the Oversight Board approved a new fiscal plan that lays out a path for the operational and financial reorganization of PREPA and the transformation of Puerto Rico's energy system.

There is no certainty that any certified fiscal plan for PREPA will be fully implemented, or if implemented will ultimately provide the intended results.

Detailed information about PREPA's conditions and events that raise doubt about its ability to continue as a going concern and the corresponding remediation plans are disclosed in the notes of PREPA's 2017 fiscal year stand-alone audited basic financial statements.

(iv)   *PRASA*

The stand-alone audited basic financial statements of PRASA disclose that there is substantial doubt about its ability to continue as a going concern for the following reasons:

- PRASA has been experiencing recurring cash flow and financing difficulties. PRASA's net position decreased by approximately $204 million during the year ended June 30, 2017, and had a working capital deficiency of approximately $426 million as of June 30, 2017. In addition, PRASA had not made the quarterly principal and interests payments of the term note payable with the GDB since December 2015.

- PRASA has had significant recurring losses, working capital deficiencies, credit downgrades, and large nondiscretionary capital expenditures.

- PRASA has historically financed its long-term Capital Improvement Progam ("CIP") with long term-debt financing arrangements. PRASA's current inability to the financial market reduces its ability to obtain long-term financing on its CIP.

- On June 30, 2017, PRASA, with the acknowledgment and support of the United States Environmental Protection Agency (EPA), executed a Forbearance Agreement with the PRDOH, administrator of the PRSDWTRLF, the EQB, administrator of the PRSDWTRLF, and PRIFA, operating agent for the SRFP, authorized to assist the PRDOH and EQB with the administrative,

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

financial and accounting activities of the SRFP. Under the Forbearance Agreement, certain payments due under the SRFP's loans were deferred through a series of amendments.

- PRASA is not a debtor under a Title III case.

*Remediation Plan – PRASA*

On July 26, 2019, PRASA and FAFAA consummated definitive agreements (the Agreements) restructuring PRASA's debt obligations under the SRFP loans and Rural Development Bonds (RD Bonds) totaling approximately $1 billion (the SRFP loans and RD Bonds are collectively referred to as the Federal Debt).

The Agreements were approved by the Oversight Board pursuant to Section 207 of PROMESA which terminated the existing nonexchange financial guaranteed provided by the Commonwealth on the Federal Debt, reducing the Commonwealth's contingent liabilities by approximately $1 billion and consolidating the restructured debt into two SRFP loans and one RD loan extending their maturities and lowering their interest rates.

On June 29, 2020, the Oversight Board approved a new fiscal plan for PRASA.

There is no certainty that any certified fiscal plan for PRASA will be fully implemented, or if implemented will ultimately provide the intended results.

Detailed information about PRASA's conditions and events that raise doubt about its ability to continue as a going concern and the corresponding fiscal plans are disclosed in the notes of PRASA's 2017 fiscal year stand-alone audited basic financial statements.

*(v)*   *UPR*

The stand-alone audited basic financial statements of UPR disclose that there is substantial doubt about its ability to continue as a going concern for the following reasons:

- UPR had an unrestricted deficit position of approximately $1.9 billion at June 30, 2017.

- The UPR has had recurring operating losses, has been highly dependent on the Commonwealth's appropriations to finance its operations, and has historically relied on GDB for liquidity. Approximately 68% of UPR's total revenues were derived from Commonwealth appropriations for the year ended June 30, 2017. The UPR's ability to continue receiving similar operational support from the Commonwealth and obtaining external financing is uncertain.

- Act No. 66-2016 froze the benefits under formula-based appropriations of the UPR at approximately $833.9 million up to fiscal years ended June 30, 2017.

- The UPR has limited ability to raise operating revenues due to the economic and political-related challenges of maintaining enrollment and increasing tuition.

- UPR is not a debtor under a Title III case.

- On June 29, 2017, the UPR and the trustee for the UPR System Revenue Bonds entered into a standstill agreement (the Standstill Agreement), pursuant to which the UPR agreed to transfer to a segregated account, for the benefit of the holders of the revenue bonds, certain amounts in respect of revenue pledged on the condition that during the covered period of the Standstill Agreement the trustee would not institute, commence, or continue any legal proceeding against the UPR, the Commonwealth or any of its agencies, instrumentalities, or municipalities thereof, to enforce rights related to the revenue bonds. The Standstill Agreement has been subject to various extensions.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Remediation Plan – UPR*

On June 12, 2020 the Oversight Board certified a new version of the UPR fiscal plan.

There is no certainty that any certified fiscal plan for UPR will be fully implemented, or if implemented will ultimately provide the intended results.

Detailed information about UPR's conditions and events that raise doubt about its ability to continue as a going concern and the corresponding remediation plans is disclosed in the notes of UPR's 2017 fiscal year stand-alone audited basic financial statements.

(vi) *Other Nonmajor Discretely Presented Component Units*

There are other nonmajor discretely presented component units that have accumulated deficits and others that even without deficits, have outstanding debt payable to GDB or subject to the Moratorium Act and related executive orders. Similar, to the reasons presented above for the Commonwealth's Primary Government and its major discretely presented component units, there is uncertainty as to the ability of other nonmajor discretely presented component units to satisfy their obligations as they become due which raises substantial doubt about their ability to continue as a going concern.

Additionally, there are other nonmajor discretely presented component units that although do not have a deficit position, or loans outstanding with GDB as of June 30, 2017, and have not been impacted by the Moratorium Act and related executive orders are highly dependent on the financial support provided by the Commonwealth and have been depending on GDB as their only option to obtain financing to fund their operations. The financial support provided by the Commonwealth is contingent on their inclusion on its General Fund's budget appropriations and approval by the Legislature. A reduction in the amount of these contributions could result in financial difficulties for these entities, including the uncertainty as to their ability to satisfy their obligations as they become due, raising substantial doubts about their ability to continue as a going concern. For additional information regarding the Moratorium Act, refer to Note 3 and Note 23.

**(3) PROMESA and Other Legislation Related to Debt Restructuring**

As discussed in Note 2, the Commonwealth and many of its component units are in the midst of an economic and fiscal crisis, which have caused, among other things, the initiation of financial measures directed to reinstate fiscal and financial stability, including a number of state and federal laws that have been passed in recent years. On June 30, 2016 the U.S. Congress enacted PROMESA to address these problems. During the fiscal years subsequent to June 30, 2016, the Commonwealth and other governmental entities such as COFINA, PRHTA, ERS, PREPA, PBA and GDB have initiated PROMESA proceedings at the request of the Governor to restructure or adjust their existing debt. Following are the most relevant state and federal legislation enacted to address the fiscal crisis and to initiate the economic recovery:

**(a) *Fiscal Measures Before PROMESA***

(i) *Retention by the Government of Tax Revenues Conditionally Allocated to Certain Public Corporations and Priority of Payment Provisions*

On December 1, 2015, the Governor signed Executive Order No. 46 (Executive Order No. 46). Executive Order No. 46 ordered the Secretary of DOT to retain certain available resources of the Commonwealth in light of revised revenue estimates for fiscal year 2016 and the Commonwealth's deteriorating liquidity situation. Pursuant to such executive order, the Secretary of the DOT retained revenues conditionally allocated to PRHTA, PRIFA, PRCCDA, and PRMBA for the payment of debt service on their bonds during fiscal year 2016. Since fiscal year 2017, such revenues are being retained by the Commonwealth pursuant to certain laws, including but not limited to (a) the

97

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Moratorium Act and Act No. 5 (discussed below), and (b) the automatic stay under Title III of PROMESA. Use of these revenues is the subject of ongoing litigation, as discussed in Note 17.

(ii) *Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Financial Emergency and Fiscal Responsibility of Puerto Rico Act and Related Executive Orders*

On April 6, 2016, the Commonwealth enacted the Moratorium Act. Pursuant to the Moratorium Act, the Governor issued a series of executive orders declaring an emergency period, a moratorium and various other measures with respect to certain obligations of the Commonwealth and several of its instrumentalities. Pursuant to these executive orders, certain Commonwealth entities have either: (i) not made debt service payments, (ii) made debt service payments with funds on deposit with the trustees of their bonds, and/or (iii) not received or transferred certain revenues. Such executive orders also placed significant restrictions on the disbursement of funds deposited at GDB and suspended the disbursement of loans by GDB.

The implementation of the Moratorium Act and its related executive orders is the subject of ongoing litigation, as discussed in Note 17. Upon the enactment of PROMESA on June 30, 2016, the Title IV Stay (discussed below) applied to stay this litigation until the Title IV Stay expired on May 1, 2017. Since the commencement of the Commonwealth's Title III case on May 3, 2017, the automatic stay under Title III of PROMESA has applied to continue the stay of this litigation and prevent debt service payments to bondholders.

**(b) PROMESA and Other Puerto Rico Legislation**

(i) *PROMESA*

In general terms, PROMESA seeks to provide the Commonwealth with fiscal and economic discipline through, among other things: (i) the establishment of the Oversight Board, whose responsibilities include the certification of fiscal plans and budgets for the Commonwealth and its related entities; (ii) a temporary stay of all creditor lawsuits under Title IV of PROMESA; and (iii) two alternative methods to adjust unsustainable debt: (a) a voluntary debt modification process under Title VI of PROMESA, which establishes a largely out-of-court debt restructuring process through which modifications to financial debt can be accepted by a supermajority of creditors; and (b) a quasi-bankruptcy proceeding under Title III of PROMESA, which establishes an in-court debt restructuring process substantially based upon incorporated provisions of Title 11 of the United States Code (U.S. Bankruptcy Code). Each of these elements are divided among PROMESA's seven titles, as briefly discussed below.

(a) *Title I – Establishment of Oversight Board and Administrative Matters*

Upon PROMESA's enactment, the Oversight Board was established for Puerto Rico. As stated in PROMESA, "the purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." On August 31, 2016, the President of the United States announced the appointment of the Oversight Board members. Each Oversight Board member is required to have "knowledge and expertise in finance, municipal bond markets, management, law, or the organization or operation of business or government." The Oversight Board was "created as an entity within the territorial government for which it was established" and is expressly not an entity of the federal government, but it was also established to act independently from the Commonwealth government, such that neither the Governor nor the Legislature may "(1) exercise any control, supervision, oversight, or review over the Oversight Board or its activities; or (2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board."

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(b)  *Title II – Fiscal Plan and Budget Certification Process and Compliance*

Title II sets forth the requirements for proposing and certifying fiscal plans and budgets for the Commonwealth and its instrumentalities. "Each fiscal plan serves as the cornerstone for structural reforms the Oversight Board deems necessary to ensure the territory, or instrumentality, will be on a path towards fiscal responsibility and access to capital markets."

Only after the Oversight Board has certified a fiscal plan may the Governor submit a fiscal year Commonwealth budget and fiscal year budgets for certain Commonwealth instrumentalities (as approved by the Oversight Board) to the Legislature.

In furtherance of the foregoing duties, PROMESA contains a provision that grants the Oversight Board powers to monitor compliance with certified fiscal plans and budgets and undertake certain actions, including spending reductions and the submission of recommended actions to the Governor that promote budgetary compliance. Please refer to the language of PROMESA for a complete description of the Oversight Board's powers related to fiscal plan and budgetary compliance.

(c)  *Title III – In-Court Restructuring Process*

Title III of PROMESA establishes an in-court process for restructuring the debts of Puerto Rico and other United States territories that is modeled after the process under Chapter 9 of the U.S. Bankruptcy Code.

The Oversight Board has sole authority to file a voluntary petition seeking protection under Title III of PROMESA, subject to the prerequisites therein.

In a Title III case, the Oversight Board acts as the debtor's representative and is authorized to take any actions necessary to prosecute the Title III case. Immediately upon filing the Title III petition, Bankruptcy Code section 362 (which is incorporated into Title III cases under PROMESA) applies to automatically stay substantially all litigation against the debtor (the Title III Stay). A Title III case culminates in the confirmation of a plan of adjustment of the debts of the debtor. The Oversight Board has the exclusive authority to file and modify a plan of adjustment prior to confirmation.

(d)  *Title IV – Temporary Stay of Litigation, Government Reporting, and Other Miscellaneous Provisions*

Title IV of PROMESA contains several miscellaneous provisions, including a temporary stay of litigation related to "Liability Claims," relief from certain wage and hour laws, the establishment of a Congressional Task Force on Economic Growth in Puerto Rico (the Task Force), the requirement that the Comptroller General of the United States submit two reports to Congress regarding the public debt levels of the U.S. territories, and expansion of the federal government's small business HUBZone program in Puerto Rico.

Pursuant to PROMESA section 405, the enactment of PROMESA immediately and automatically imposed a temporary stay (the Title IV Stay) from June 30, 2016 (the date of PROMESA's enactment) through February 15, 2017 of all "Liability Claim" litigation commenced against the Commonwealth and its instrumentalities after December 18, 2015. A "Liability Claim" is defined as any right to payment or equitable remedy for breach of performance related to "a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money, including rights, entitlements, or obligations whether such rights entitlements, or obligations arise from contract, statute, or any other source of law related [thereto]" for which the Commonwealth or one of its instrumentalities was the issuer, obligor, or guarantor and such

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

liabilities were incurred prior to June 30, 2016. The Title IV Stay was subject to a one-time 75-day extension by the Oversight Board or a one-time 60-day extension by the United States District Court. On January 28, 2017, the Oversight Board extended the Title IV Stay by 75 days to May 1, 2017, at which time the Title IV Stay expired.

Title IV of PROMESA also required several federal government reports. First, PROMESA established the Task Force within the legislative branch of the U.S. federal government. The Task Force submitted its report to Congress on December 20, 2016.

Second, PROMESA required the U.S. Comptroller General, through the Government Accountability Office (GAO), to submit a report to the House and Senate by December 30, 2017 regarding: (i) the conditions that led to Puerto Rico's current level of debt; (ii) how government actions improved or impaired its financial condition; and (iii) recommendations on new fiscal actions or policies that the Commonwealth could adopt. The GAO published this report on May 9, 2018.

Third, PROMESA required the U.S. Comptroller General, through the GAO, to submit to Congress by June 30, 2017 a report on public debt of the U.S. territories. In addition to its initial report, the GAO must submit to Congress updated reports on the public debt at least once every two years. The GAO published its initial report on October 2, 2017. On June 28, 2019, the GAO published its latest biannual report on the public debt of the U.S. territories.

*(e)   Title V – Infrastructure Revitalization*

Title V of PROMESA establishes the position of Revitalization Coordinator under the Oversight Board and provides a framework for infrastructure revitalization through an expedited permitting process for "critical projects" as identified by the Revitalization Coordinator.

*(f)   Title VI – Consensual, Out-of-Court Debt Modification Process*

Title VI of PROMESA establishes an out-of-court process for modifying Puerto Rico's debts. Under PROMESA section 601(d), the Oversight Board is authorized to establish "pools" of bonds issued by each Puerto Rico government-related issuer based upon relative priorities. After establishing the pools, the government issuer or any bondholder or bondholder group may propose a modification to one or more series of the government issuer's bonds. If a voluntary agreement exists, the Oversight Board must issue a certification and execute a number of additional processes in order to qualify the modification.

Finally, the United States District Court for the District of Puerto Rico must enter an order approving the Qualifying Modification and vesting in the issuer all property free and clear of claims in respect of any bonds.

The Title VI process was successfully implemented to restructure the debts of the GDB. The GDB Title VI process is discussed below under Discretely Presented Component Units – GDB, Qualifying Modification and Title VI Approval Process.

*(g)   Title VII – Sense of Congress*

Title VII of PROMESA sets forth the sense of Congress that "any durable solution for Puerto Rico's fiscal and economic crisis should include permanent, pro-growth fiscal reforms that feature, among other elements, a free flow of capital between territories of the United States and the rest of the United States."

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*(ii)   Puerto Rico Legislation and Other Fiscal Measures*

Act No. 2-2017, the Puerto Rico Fiscal Agency and Financial Advisory Authority Act, was enacted to expand FAFAA's powers and authority (as initially established under the Moratorium Act) so that FAFAA has the sole responsibility to negotiate, restructure, and reach agreements with creditors on all or part of the public debt or any other debt issued by any Commonwealth entity. FAFAA is also responsible for the collaboration, communication, and cooperation efforts between the Commonwealth and the Oversight Board under PROMESA. In addition, Act No. 2-2017 established FAFAA as the Commonwealth entity responsible for carrying out the roles inherited from the GDB along with additional duties and powers, which include, among other things: (i) oversight of the Commonwealth budget; (ii) an administrative presence on every board or committee where the GDB president is currently a member; (iii) authority to conduct audits and investigations; and (iv) authority to freeze budgetary items, appoint trustees, redistribute human resources, and change procedures.

Act No. 3-2017, the Fiscal Crisis Management Act, was enacted to extend most of the fiscal measures that had been adopted under Act No. 66-2014 through July 1, 2021, including a 10-year extension of the excise tax on acquisitions by foreign corporations under Act No. 154-2010.

Act No. 5-2017, the Puerto Rico Fiscal Responsibility and Financial Emergency Act, authorized the Commonwealth to segregate funds that would eventually be used to fund the payment of public debt. Act No. 5-2017 states that the Governor may pay debt service as long as the Commonwealth is able to continue to fund essential services, such as the health, safety, and well-being of the people of Puerto Rico, including providing for their education and assistance to residents. Act No. 5-2017 continued to declare the Commonwealth to be in a state of emergency and increased the Governor's powers to manage the Commonwealth's finances. The emergency period under Act No. 5-2017 was set to expire on May 1, 2017 to coincide with the expiration of the Title IV Stay (as discussed above), unless extended by an additional three months by executive order. On April 30, 2017, the Governor issued executive order OE-2017-031, which extended the Act No. 5-2017 emergency period to August 1, 2017. On July 19, 2017, the Legislature enacted Act No. 46-2017, which further extended the Act No. 5-2017 emergency period through December 31, 2017. Act No. 46-2017 allowed the Governor to sign executive orders to extend the emergency period for successive periods of six months as long as the Oversight Board remains established for Puerto Rico under PROMESA. On June 27, 2019, the Governor issued executive order EO-2019-030 extending the emergency period until December 31, 2019. On December 31, 2019, the Governor issued executive order EO-2019-066 extending the emergency period until June 30, 2020.

Act No. 106-2017, the Act to Guarantee the Payment to Our Pensioners and Establish a New Plan for Defined Contributions for Public Servants, reformed the Commonwealth's pensions by replacing the governing boards of the Retirement Systems with a single Retirement Board of the Commonwealth of Puerto Rico (Retirement Board) and established a separate "Account for the Payment of Accrued Pensions" to implement a PayGo method by which the Commonwealth will pay pension benefits to government retirees on a pay-as-you-go basis. Act No. 106-2017 created the legal framework so that the Commonwealth can make payments to pensioners through the PayGo system.

Act No. 109-2017, the Government Development Bank for Puerto Rico Debt Restructuring Act (the GDB Restructuring Act (RSA)), effectuated the GDB Fiscal Plan and provided a path for the implementation of the GDB RSA by addressing the claims of the Commonwealth and its instrumentalities against GDB. Act No. 109-2017 created two special purpose entities—the GDB Debt Recovery Authority and the Public Entity Trust—into which the GDB would divide and irrevocably transfer its assets. As discussed below, these entities were utilized to complete the

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

transactions in the GDB's Qualifying Modification, as approved by the District Court under Title VI of PROMESA.

Act No. 241-2018, the Puerto Rico Sales Tax Financing Corporation Act, amended and restated Act No. 91-2006 to establish the legal framework for the restructuring of COFINA's issued and outstanding bonds by, among other things, authorizing the issuance of new COFINA bonds necessary to complete the transactions contemplated under the COFINA Plan of Adjustment, as discussed below and in Note 17(c).

Act No. 29-2019, the Act for the Reduction of Administrative Burdens of the Municipalities, addressed the severe financial crisis and liquidity shortage of the Puerto Rico municipalities by relieving them of their obligations to make PayGo payments to the Commonwealth and other payments to the PRHIA under Act 106-2017. The Oversight Board challenged the implementation and enforcement of Act No. 29-2019, as discussed below in Note 17(c). On April 15, 2020, the Title III Court entered an order finding that Act No. 29-2019 is unenforceable and permanently enjoining the Commonwealth from implementing it and enforcing it effective May 6, 2020. FAFAA and the Oversight Board continue to discuss alternatives to Act No. 29-2019.

**(c)  PROMESA Title III Cases**

**(i)  Oversight Board Commencement of Title III Cases**

On May 1, 2017, the Title IV Stay expired, permitting the substantial litigation brought by bondholders and other creditors against the Commonwealth and its instrumentalities to resume. On May 3, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the Commonwealth by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico (the Title III Court). On May 5, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for COFINA by filing a similar petition for relief under Title III of PROMESA in the Title III Court.

On May 21, 2017, the Oversight Board, at the request of the Governor, commenced Title III cases for PRHTA and ERS by filing similar petitions for relief under Title III of PROMESA in the Title III Court. On May 5, 2017, United States Chief Justice John Roberts entered an order designating United States District Court Judge Laura Taylor Swain of the United States District Court for the Southern District of New York as the presiding judge over the Title III cases pursuant to PROMESA section 308(a). On June 7, 2017, United States District Court Chief Judge Aida M. Delgado-Colón of the United States District Court for the District of Puerto Rico entered an order appointing United States Magistrate Judge Judith Gail Dein of the United States District Court for the District of Massachusetts to assist Judge Swain in pretrial matters, evidentiary hearings, and other matters as authorized under 28 U.S.C. § 636(a)-(c). On June 15, 2017, the United States Trustee appointed an Official Committee of Retired Employees (the Retiree Committee) in the Commonwealth's Title III cases and appointed an Official Committee of Unsecured Creditors for all Title III debtors other than COFINA (the Creditors' Committee).

On July 3, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for PREPA by filing a similar petition for relief under Title III of PROMESA in the Title III Court. On September 27, 2019, the Oversight Board, at the request of the Governor, commenced a Title III case for PBA by filing a similar petition for relief under Title III of PROMESA in the Title III Court. All of the foregoing Title III cases have been consolidated for procedural purposes only and are being jointly administered under Case No. 17-3283-LTS in the Title III Court.

The Title III cases were commenced in part due to the May 1, 2017 expiration of the Title IV Stay. Title III of PROMESA incorporates the automatic stay provisions of Bankruptcy Code section 362

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

and 922, which are made applicable to the Title III cases pursuant to PROMESA section 301(a). Accordingly, upon the filing of the Title III cases, the Title III Stay immediately went into effect to stay creditor litigation. All claims against any Title III debtor that arose prior to the filing of their respective Title III case (whether or not discussed herein) may be subject to the laws governing Title III.

On August 7, 2017, a group of GO bondholders led by Aurelius Investment, LLC, Aurelius Opportunities Fund, LLC, and Lex Claims, LLC (collectively, Aurelius) filed a motion to dismiss the Title III petitions. In the motion, Aurelius argued that the appointment of the Oversight Board members violated the "Appointments Clause" of the United States Constitution, which requires that "principal officers" of the United States be appointed by the President and confirmed by the Senate. The Title III Court denied Aurelius' motion to dismiss, and Aurelius appealed to the United States Court of Appeals for the First Circuit. On February 15, 2019, the First Circuit reversed the Title III Court, holding that the Oversight Board members' appointment process violated the Appointments Clause. The First Circuit stayed its ruling for 90 days to allow the President and Senate to appoint the members of the Oversight Board in accordance with the United States Constitution. It also expressly validated all of the Oversight Board's past actions, including any actions taken by the Oversight Board during the 90-day stay period.

On April 23, 2019, the Oversight Board appealed the First Circuit's decision to the United States Supreme Court by filing a petition for a writ of certiorari. On April 24, 2019, the Oversight Board filed a motion in the First Circuit requesting an extension of the 90-day stay of its February 15 decision until the Supreme Court's final disposition of the case. On May 6, 2019, the First Circuit granted in part the Oversight Board's extension motion by extending the stay of its February 15 decision until July 15, 2019 but denied the request to extend the stay indefinitely until the Supreme Court's final disposition of the case.

On May 30, 2019, Aurelius filed a cross petition for a writ of certiorari in the United States Supreme Court to challenge the First Circuit's validation of the Oversight Board's past actions under the de facto officer doctrine. On June 6, 2019, the Solicitor General of the United States and the Creditors' Committee each filed separate petitions for writs of certiorari in the United States Supreme Court to address whether the members of the Oversight Board are "Officers of the United States" within the meaning of the Appointments Clause. On June 14, 2019, Unión de Trabajadores de la Industria Eléctrica y Riego (UTIER)—the plaintiff in a related adversary proceeding under Case Nos. 17-00228-LTS, as further discussed in Note 17(c)—filed its own separate petition for a writ of certiorari in the United States Supreme Court to challenge the First Circuit's application of the de facto officer doctrine.

On June 18, 2019, the President of the United States re-nominated all seven original Oversight Board members to complete the remainder of their terms, and these nominations are currently pending confirmation by the United States Senate.

On June 20, 2019, the United States Supreme Court granted the Oversight Board, Aurelius, Solicitor General, Creditors' Committee, and UTIER petitions for writs of certiorari and stayed the First Circuit decision pending its final determination. Oral argument on the appeal was heard before the United States Supreme Court on October 15, 2019. As of the date of these basic financial statements, the Supreme Court has not yet entered its decision on the appeal.

*(ii)*   *Mediation in the Title III Cases*

On June 23, 2017, the Title III Court appointed a team of five federal judges—led by Chief Bankruptcy Judge Barbara Houser of the United States Bankruptcy Court for the Northern District of Texas—to

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

facilitate settlement negotiations of any and all issues and proceedings arising in the Title III cases. Mediation of various disputes relating to Title III cases remains ongoing.

On July 24, 2019, the Title III Court entered an order (the July 24 Stay Order) staying certain key claims objections and related litigation involving overlapping lien and claim validity issues, among other things, through November 30, 2019 and required mandatory mediation of the issues during the stay period. On October 28, 2019, the Title III Court entered an order extending the stay through December 31, 2019 and requiring a mediation report and/or scheduling order by November 27, 2019 for the stayed matters. On November 27, 2019, the court-appointed mediation team filed an interim status report, which provided recommended scheduling and sequencing of certain key litigation issues, including (i) the validity of certain challenged series of GO and PBA bonds; (ii) the secured or unsecured status of claims on GO and PBA bonds; and (iii) the rights, as against the Commonwealth, of holders of revenue bonds and other debt issued by certain Puerto Rico instrumentalities. Under the proposed scheduling order contained in the interim status report, the mediation team has proposed initial briefing on these issues to commence in February 2020 with hearings scheduled on April 30, 2020 and in June 2020. As of the date of these basic financial statements, the Title III Court has not yet entered the scheduling order. On December 27, 2019, the Title III Court entered an amended order extending the stay through March 11, 2020. On February 10, 2020, the mediation team filed an amended report, which the Title III Court considered at a hearing held on March 4, 2020. On March 10, 2020, the Title III Court entered a final order on the stay period, authorizing certain lift stay motions and revenue bond complaints to proceed but otherwise kept the stay on non-*ultra vires* and lien-scope issues in place pending the Title III Court's decision on confirmation of the Commonwealth's Amended Plan (as discussed below).

*(iii)*  *Commonwealth Title III Case*

On May 3, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the Commonwealth by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico. The deadline by which all creditors were required to file their proofs of claim against the Commonwealth was June 29, 2018. Approximately 107,500 claims were filed against the Commonwealth in the total aggregate asserted amount of approximately $33.2 trillion. Of this amount, approximately 10,325 claims in the total aggregate asserted amount of approximately $32.9 trillion have been withdrawn or expunged by an omnibus objection order entered by the Title III Court. As a result, approximately 97,100 claims in the total aggregate asserted amount of approximately $157.2 billion remain outstanding. The validity of these remaining claims have not yet been determined and such claims remain subject to the claims reconciliation process, described in section (ix) below.

On September 27, 2019, the Oversight Board—as representative of the Commonwealth, ERS and PBA in their respective Title III cases—filed its initial joint Title III plan of adjustment for the Commonwealth, ERS, and PBA [ECF No. 8765] (the Initial Plan) along with a disclosure statement related thereto [ECF No. 8765] (the Initial Disclosure Statement), which was founded upon the pre-COVID-19 economic assumptions contained in the May 9, 2019 Board Fiscal Plan. The Initial Plan incorporated the terms of a restructuring support agreement with the Retiree Committee (the Retiree Committee RSA), in which the Retiree Committee agreed to a maximum 8.5% pension cut that would only be applicable to retirees with monthly retirement benefits of more than $1,200, as well as freezes in pension benefits for teachers and judges.

On February 9, 2020, the Oversight Board announced that it entered into a plan support agreement (the PSA) with certain Commonwealth general obligation bondholders and PBA bondholders, which would require revisions to the Initial Plan. On February 28, 2020, the Oversight Board filed its

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11946] (the Amended Plan) and an amended disclosure statement related thereto [ECF No. 11947] (the Amended Disclosure Statement), which revised the Initial Plan to conform to the PSA while retaining the terms of the Retiree Committee RSA.

Since the filing of the Initial Plan and Initial Disclosure Statement, the Governor and FAFAA carefully evaluated and considered its terms and consequences for the people of Puerto Rico. Throughout the process, the Governor was clear that if bondholders received improved treatment under any agreement, then a group of Puerto Rico's most vulnerable citizens—its pensioners—should also receive improved benefits as a matter of justice. Under the PSA, pensioners will not receive improved benefits as compared to their treatment in the Initial Plan. Instead, the Oversight Board agreed to a PSA that enhances the legal and security package for bondholders without enhancing the treatment of pensioners through the Title III process. As a result, the Governor concluded that the Commonwealth could not support the Amended Plan based on the PSA because its current terms are not in the best interests of Puerto Rico. Importantly, the Amended Plan is not confirmable without Government support to enact and enforce all legislative and public policy measures required to implement the plan.

The Amended Plan and Amended Disclosure Statement also do not reflect the potential economic impact from the ongoing outbreak of COVID-19. As a result, on March 23, 2020, the Oversight Board filed an urgent motion requesting to adjourn consideration of the Amended Disclosure Statement—which had been scheduled for June 3 and June 4, 2020—until further notice. The Title III Court granted the motion on March 27, 2020, requiring the Oversight Board to file a status report on May 1, 2020. The Oversight Board filed its status report on May 1, 2020, but in light of the ongoing uncertainties related to COVID-19 has not made any determinations on the status of the Amended Plan and will provide a further status update on July 15, 2020. On May 3, 2020, the Governor submitted a revised fiscal plan proposal for the Commonwealth, noting that the Amended Plan (including the terms of the PSA and Retiree Committee RSA) is likely not feasible and should be subject to re-evaluation and potentially substantial revision because the economic assumptions upon which the Amended Plan is based do not reflect the substantial negative effects of COVID-19 (particularly with respect to debt sustainability and the economic impact of certain cost-cutting measures).

The Amended Plan and Amended Disclosure Statement remain subject to future amendments (particularly given the negative economic impacts of the COVID-19 pandemic) and Title III Court approval, and it is not certain that the Title III Court will ultimately confirm the Amended Plan.

For additional information, refer to Note 23 and the publically available Amended Plan and Amended Disclosure Statement, available at https://cases.primeclerk.com/puertorico/Home-DocketInfo.

*(iv)   COFINA Title III Case*

On May 5, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for COFINA by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico. The deadline by which all creditors were required to file their proofs of claim against COFINA was June 29, 2018. These claims against COFINA were resolved through the COFINA Plan of Adjustment, which became effective on February 12, 2019. For additional information regarding the COFINA Plan of Adjustment, refer to Note 17(c) and the COFINA stand-alone audited basic financial statements.

Certain parties whose objections were overruled in confirming the COFINA Plan of Adjustment filed Notices of Appeal in the Title III Court. The appeals have been docketed with the United States Court

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

of Appeals for the First Circuit under case numbers 19-1181 (also discussed in relation to the adversary proceeding captioned *Manuel Natal-Albelo, et al. v. Financial Oversight and Management Board for Puerto Rico, et al.*) and 19-1182. For additional information, refer to Note 17(c).

*(v) PRHTA Title III Case*

On May 21, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for PRHTA by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico. The deadline by which all creditors were required to file their proofs of claim against PRHTA was June 29, 2018. Approximately 2,350 claims were filed against PRHTA in the total aggregate asserted amount of approximately $83.1 billion. Of this amount, approximately 735 claims in the total aggregate asserted amount of approximately $6.4 billion have been withdrawn or expunged by an omnibus objection order entered by the Title III Court. As a result, approximately 1,600 claims in the total aggregate asserted amount of approximately $76.7 billion remain outstanding. The validity of these remaining claims have not yet been determined and such claims remain subject to the claims reconciliation process, described in section (ix) below.

After the commencement of PRHTA's Title III case, numerous motions and adversary proceedings were filed both by and against PRHTA regarding creditor rights to PRHTA assets. The outcome of these proceedings and their impact on any plan of adjustment for PRHTA cannot be determined at this time. For a detailed description of these legal contingencies, refer to Note 17.

*(vi) ERS Title III Case*

On May 21, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for ERS by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico. The deadline by which all creditors were required to file their proofs of claim against ERS was June 29, 2018. Approximately 55,100 claims have been filed against ERS in the total aggregate asserted amount of approximately $10.2 trillion. Of this amount, approximately 4,800 claims in the total aggregate asserted amount of approximately $10.1 trillion have been withdrawn or expunged by an omnibus objection order entered by the Title III Court. As a result, approximately 50,300 claims in the total aggregate asserted amount of approximately $69.5 billion remain outstanding. The validity of these remaining claims have not yet been determined and such claims remain subject to the claims reconciliation process, described in section (ix) below.

On February 28, 2020, the Oversight Board—as representative of the Commonwealth, ERS and PBA in their respective Title III cases—filed its Amended Plan for the Commonwealth, ERS, and PBA, along with an Amended Disclosure Statement related thereto. For further information regarding the Amended Plan (including the PSA and Retiree Committee RSA), refer to Note 3(c)(iii) above. The Amended Plan and Amended Disclosure Statement remain subject to future amendments (particularly given the negative economic impacts of the COVID-19 pandemic) and Title III Court approval, and it is not certain that the Title III Court will ultimately confirm the Amended Plan.

For additional information, refer to Note 23 and the publicly available Amended Plan and Amended Disclosure Statement, available at https://cases.primeclerk.com/puertorico/Home-DocketInfo.

After the commencement of ERS's Title III case, numerous other motions and adversary proceedings have been filed both by and against ERS regarding creditor rights to ERS assets. The outcome of these proceedings and their impact on any plan of adjustment for ERS cannot be determined at this time. For a detailed description of these legal contingencies, refer to Note 17.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*(vii)  PREPA Title III Case*

On July 3, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for PREPA by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico. The deadline by which all creditors were required to file their proofs of claim against PREPA was June 29, 2018. Approximately 4,300 claims have been filed against PREPA in the total aggregate asserted amount of approximately $23.8 billion. The validity of these asserted claims have not yet been determined and all claims remain subject to the claims reconciliation process, described in section (ix) below.

On July 18, 2017, an ad hoc group of PREPA creditors and certain monoline insurers of PREPA bonds filed a motion seeking to lift the automatic stay in PREPA's Title III case, to permit the monoline insurers to seek the appointment of a receiver for PREPA to oversee the operations of the utility company and to seek an increase in rates. On September 15, 2017, the Title III Court denied the motion seeking to lift the automatic stay. On August 8, 2018, the United States Court of Appeals for the First Circuit reversed the Title III Court's determination that PROMESA prohibited the appointment of a receiver and instead held that the Title III Court may lift the automatic stay to permit a state court to appoint a receiver, if appropriate. On October 18, 2018, the monoline insurers filed a motion (the Receiver Motion) seeking to appoint a receiver over management at PREPA, but did not seek authority for a receiver to increase rates or exert control over energy planning or budgets. On May 3, 2019, the Oversight Board, FAFAA and PREPA, reached a Definitive Restructuring Agreement (the PREPA RSA) with a substantial portion of PREPA's bondholders and with Assured Guaranty Corp. and Assured Guaranty Municipal Corp., who were parties to the Receiver Motion. On September 9, 2019, the remaining parties to the Receiver Motion, National Public Finance Corporation (National), and Syncora Guarantee Inc. (Syncora), joined the PREPA RSA.

On May 10, 2019, the Oversight Board and FAFAA filed a motion seeking the Title III Court's approval for certain provisions of the PREPA RSA (the 9019 Motion). If the Court grants the 9019 Motion, the Receiver Motion will be dismissed. Litigation on the Receiver Motion is currently stayed pending a ruling on the 9019 Motion.

*(viii)  PBA Title III Case*

On September 27, 2019, the Oversight Board, at the request of the Governor, commenced a Title III case for PBA by filing a petition for relief under Title III of PROMESA in the United States District Court for the District of Puerto Rico. The deadline by which all creditors are required to file their proofs of claim against PBA has not yet been established.

On February 28, 2020, the Oversight Board—as representative of the Commonwealth, ERS and PBA in their respective Title III cases—filed its Amended Plan for the Commonwealth, ERS, and PBA, along with an Amended Disclosure Statement related thereto. For further information regarding the Amended Plan (including the PSA and Retiree Committee RSA), refer to Note 3(c)(iii) above. The Amended Plan and Amended Disclosure Statement remain subject to future amendments (particularly given the negative economic impacts of the COVID-19 pandemic) and Title III Court approval, and it is not certain that the Title III Court will ultimately confirm the Amended Plan.

For additional information, refer to Note 23 and the publically available Amended Plan and Amended Disclosure Statement, available at https://cases.primeclerk.com/puertorico/Home-DocketInfo.

*(ix)  Claims Reconciliation Process for Title III Cases*

As of December 4, 2019, approximately 169,000 proofs of claim have been filed against the Title III debtors (excluding COFINA and PBA) in the total aggregate asserted amount of approximately

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

$43.5 billion. Of this amount, approximately 15,800 claims in the total aggregate asserted amount of approximately $43.2 billion have been withdrawn or expunged by an omnibus objection order entered by the Title III Court. As a result, approximately 153,200 claims in the total aggregate asserted amount of approximately $326 million remain outstanding against all Title III debtors.

On October 16, 2018, the Oversight Board filed a motion seeking the approval of certain limited claim objection procedures designed to complete the claims reconciliation process in a timely, efficient, and cost-effective manner. In its motion, the Oversight Board sought authority, among other things, to file omnibus objections to claims on the non-substantive bases expressly set forth in Bankruptcy Rule 3007(d)(1)-(7), which include objections to duplicative or untimely filed claims, with the limitation that each omnibus objection may only object to up to 500 claims (the Initial Claim Objection Procedures). On November 14, 2018, the Title III Court entered an order approving the Initial Claim Objection Procedures. On May 21, 2019, the Oversight Board filed a motion seeking to amend the Initial Claim Objection Procedures by permitting omnibus objections to be filed on substantive as well as non-substantive bases, and to permit up to 1,000 claims to be included in each omnibus objection (the Amended Claim Objection Procedures). On June 14, 2019, the Title III Court entered an order approving the Amended Claim Objection Procedures. Omnibus objections to nearly 33,000 claims in the total aggregate asserted amount of approximately $43.2 billion have been filed pursuant to the Amended Claim Objection Procedures. As of the date hereof, omnibus objections related to approximately 17,000 claims in the total aggregate asserted amount of approximately $3.1 billion remain outstanding, and additional omnibus claim objections may be filed in the future.

On June 5, 2019, the Oversight Board filed a motion for the Title III Court to authorize alternative dispute resolution (ADR) procedures to resolve certain general unsecured claims. At the omnibus hearing held on July 24, 2019, the Title III Court indicated that it supported an ADR process, but that the proposed ADR procedures included a number of practical barriers to implementation, including a lack of detail on what types of claims would be subject to the ADR procedures, and failure of proposed ADR procedures to comply with federal rules and due process requirements. On January 7, 2020, the Oversight Board submitted an amended motion to approve ADR procedures (the ADR Procedures), which the Title III Court approved on April 1, 2020. The Commonwealth and Oversight Board are currently in the process of reviewing claims to be resolved through the ADR Procedures.

After the commencement of the Commonwealth's Title III case, numerous motions and adversary proceedings have been filed both by and against the Commonwealth regarding creditor rights to Commonwealth assets. At this time, there is significant uncertainty regarding what recovery, if any, creditors will receive on account of claims against the Commonwealth under Title III of PROMESA. The recovery, if any, will be determined in the Commonwealth Title III case and cannot be estimated at this time. Generally, unless otherwise provided in the plan of adjustment or ordered by the District Court, the recovery a creditor receives on account of its claim in the Commonwealth Title III case will be in full satisfaction of such claim and such claim will otherwise be released and discharged by the terms of the plan of adjustment. Once discharged, the Commonwealth will have no further liability or obligation related to such claim except to the extent set forth in the approved plan of adjustment or otherwise ordered by the District Court. For a detailed description of these legal contingencies, refer to Note 17.

*(x) GDB Qualifying Modification and Title VI Approval Process*

On November 29, 2018, GDB completed a restructuring of certain of its indebtedness pursuant to a Qualifying Modification under Title VI of PROMESA (the Qualifying Modification). Under the Qualifying Modification, holders of certain bond and deposit claims against GDB exchanged their

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

claims for bonds issued by a newly created public instrumentality—the GDB Debt Recovery Authority (the GDB DRA)—and GDB transferred to such entity its municipal loan portfolio, a portion of its public entity loan portfolio, its real estate owned assets and its unencumbered cash. In addition, pursuant to the GDB Restructuring Act, claims on account of deposits held by the Commonwealth and other public entities were exchanged for interest in a newly formed trust created pursuant to the GDB Restructuring Act, titled the Public Entity Trust (the PET).

Under the GDB Restructuring Act, the balance of liabilities owed between the Commonwealth and its agents, instrumentalities and affiliates (each a Non-Municipal Government Entity) and GDB were determined by applying the outstanding balance of any deposits held at GDB in a Non-Municipal Government Entity's name against the outstanding balance of any loan of such Non-Municipal Government Entity owed to GDB or of any bond or note of such Non-Municipal Government Entity held by GDB as of such date. Those Non-Municipal Government Entities having net claims against GDB, after giving effect to the foregoing adjustment received their pro rata share of interests in the PET, which was deemed to be full satisfaction of any and all claims such Non-Municipal Government Entity may have against GDB.

The assets of the PET (the PET Assets) consist of among other items, an unsecured claim against the Commonwealth of approximately $578 million, which is the subject of a proof of claim filed in the Commonwealth's Title III case. The Official Committee of Unsecured Creditors appointed in the Title III cases has objected to this PET Claim and, as of the date hereof, the Title III Court has not determined if the PET Claim is an allowed claim that will be entitled to a distribution. The Non-Municipal Government Entities' recoveries on account of their interests in the PET will depend upon the recovery ultimately received by the PET on account of the PET Assets. Claims that the Commonwealth and other governmental entities may have had against GDB have been released pursuant to the Qualifying Modification and the GDB Restructuring Act (except for as set forth therein).

On November 6, 2018, the District Court approved GDB's Qualifying Modification under Title VI of PROMESA and the Qualifying Modification became effective as of November 29, 2018.

(xi)   *PRIFA-Ports Exchange*

On December 27, 2019, PRIFA completed a private exchange that resulted in the resolution of over 92% of those certain Series 2011 bonds issued by PRIFA (Ports Authority Project) (the PRIFA-Ports Bonds). At the time of the exchange, the PRIFA-Ports Bonds were outstanding in an amount of approximately $190.6 million. Bondholders holding approximately $177.2 million participated in the private exchange and received their pro rata share (based on the entire amount of PRIFA-Ports Bonds outstanding) of a cash payment of approximately $82.4 million, resulting in the full resolution of such participating PRIFA-Ports Bonds. The recovery the PRIFA-Ports bondholders received in the exchange is in addition to the GDB DRA Bonds received by the PRIFA-Ports bondholders in connection with a settlement of the bondholders' letter of credit claims against GDB, which settlement was entered into as part of the GDB Title VI Qualifying Modification. After the exchange, the PRIFA-Ports Bonds remain outstanding in the amount of approximately $13.5 million.

**(d)   *Default of Bond Principal and Interest Payments***

Because of the Commonwealth's retention of certain revenues conditionally allocated to public corporations and priority of payment provisions, as well as the Commonwealth's general financial condition, the Commonwealth and such public corporations were not able to make the debt service payments as they became due prior to the commencement of the Title III cases. Subsequent to the commencement of such cases, the automatic stay and other provisions of law have prevented payment

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

of such amounts. The nature of the obligations of the Commonwealth and its public corporation to make such payments is currently the subject of ongoing litigation, as discussed in Note 17.

The table below summarizes the past due balance of principal and interest on bonds as of July 31, 2020 (in thousands):

| | Principal | Interest | Past due Balance |
|---|---|---|---|
| Governmental activities: | | | |
| Commonwealth | $   1,997,586 | 3,207,570 | 5,205,156 |
| COFINA | 66,695 | 1,325,429 | 1,392,124 |
| PBA | 322,733 | 817,842 | 1,140,575 |
| PRIFA | 310,190 | 383,168 | 693,358 |
| PA | 31,151 | 85,490 | 116,641 |
| Total governmental activities | 2,728,355 | 5,819,499 | 8,547,854 |
| PFC appropriation bonds | 160,615 | 275,502 | 436,117 |
| Fiduciary funds: | | | |
| ERS | — | 444,051 | 444,051 |
| Major component units: | | | |
| PRHTA | 479,988 | 788,165 | 1,268,153 |
| PREPA | 1,304,356 | 1,415,792 | 2,720,148 |
| PRASA | 20,325 | 39,629 | 59,954 |
| Total major component units | 1,804,669 | 2,243,586 | 4,048,255 |
| Nonmajor component units | 80,392 | 76,242 | 156,634 |
| Total | $   4,774,031 | 8,858,880 | 13,632,911 |

**(4)  Correction of Errors**

During 2017, the Commonwealth identified various errors related to prior year basic financial statements, including that certain of its blended component units applied the guidance in GASB Statements No. 68 and No. 71, which resulted in restatements of the beginning net position of the Commonwealth's government-wide financial statements. The impact of the related adjustments to beginning net position/fund balance are as follows:

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**Governmental and Business-type Activities**

The following table summarizes the changes to net position at the beginning of the year as previously reported for the Governmental and Business-type activities in the government-wide financial statements (in thousands):

|  | Governmental Activities | Business-type Activities |
|---|---|---|
| Net position (deficit) – July 1, 2016, as previously reported | $ (69,821,688) | (473,117) |
| Application of GASB Statement No. 68 and No. 71: (a) |  |  |
| Recognition of net pension liability | (389,209) | (71,835) |
| Recognition of deferred outflow of resources for pension contributions made after the measurement date (July 1, 2016) | 69,360 | 17,147 |
| Recognition of deferred inflow of resources | (2,349) | (1,246) |
| Overstatement of liabilities (b) | 939 | 8,560 |
| Overstatement of accounts receivable (c) | (4,985) | — |
| Understatement of capital assets (d) | 841 | — |
| Overstatement of cash and cash equivalents in governmental banks (e) | (1,217) | — |
| Net position (deficit) – July 1, 2016, as restated | $ (70,148,308) | (520,491) |

*Correction of Material Errors – Governmental Activities*

The correction of material errors in the beginning net position of Governmental Activities includes a combination of the following:

(a) The impact of applying the guidance in GASB Statement No. 68 and No. 71. The error correction consisted of PBA, PRIFA and PRMSA recognizing the net effects of their proportionate share of ERS' beginning net pension liability, deferred outflows of resources for pension contributions made after the beginning net pension liability measurement date and deferred inflows of resources due to differences between the projected and the actual pension plan investment earnings in different measurement periods.

(b) An overstatement of other liabilities for approximately $1.2 million corrected by DEDC and understatement of accounts payable corrected by the Superintendence of the Capitol Building (SCB) for approximately $200 thousand. Also, an overstatement in accounts payable of approximately $8.6 million in PRHIA was corrected.

(c) An overstatement of accounts receivable from federal agencies for approximately $5 million corrected by DEDC.

(d) An understatement of capital assets corrected by the Senate and DEDC for approximately $327 thousand and $514 thousand, respectively.

(e) An overstatement of cash in governmental banks corrected by SCPT for a custodial credit loss on deposits held at GDB.

*Correction of Material Errors – Business-type activities*

The correction of material errors to beginning net position of the Business-type activities includes a combination of the following:

(f) The impact of applying the guidance in GASB Statement No. 68 and No. 71. The error correction consisted of Bureau of Emergency Services 9-1-1, PRHIA and Lotteries' recognizing the net effects of

111

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

their proportionate share of ERS' beginning net pension liability, deferred outflows of resources for pension contributions made after the beginning net pension liability measurement date and deferred inflows of resources due to differences between the projected and the actual pension plan investment earnings in different measurement periods.

(g) An overstatement of liabilities of approximately $8.6 million corrected by PRHIA.

**Governmental Funds**

The following table summarizes the changes to fund balances (deficit) at the beginning of the year as previously reported for the governmental funds (in thousands):

|  | | General Fund | Nonmajor governmental funds |
|---|---|---|---|
| Fund balances (deficit) – July 1, 2016, as previously reported: | $ | (1,234,385) | 284,674 |
| Overstatement of other liablities (a) | | 939 | — |
| Overstatement of accounts receivable (b) | | (4,985) | |
| Overstatement of cash and cash equivalents in governmental banks (c) | | — | (1,217) |
| Fund balances (deficit) – July 1, 2016, as restated | $ | (1,238,431) | 283,457 |

*Correction of Immaterial Error*

(a) An overstatement of other liabilities for approximately $1.2 million corrected by DEDC and understatement of accounts payable corrected by the SCB for approximately $200 thousand.

(b) An overstatement of accounts receivable from federal agencies for approximately $5 million corrected by DEDC.

(c) An overstatement of cash in governmental banks corrected by SCPT for a custodial credit loss on deposits held at GDB

112

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**Proprietary Funds**

The following table summarizes the changes to net position at the beginning of the year as previously reported for the proprietary funds (in thousands):

| | | PRHIA | Lotteries | PRWPCRF | Nonmajor Proprietary Funds |
|---|---|---|---|---|---|
| Net position (deficit) – July 1, 2016, as previously reported | $ | (131,407) | (85,819) | 5,843 | 130,888 |
| Changes in major fund presentation | | | 85,819 | (5,843) | (79,976) |
| Application of GASB Statement No. 68 and No. 71: (a) | | | | | |
| Recognition of net pension liability | | (21,778) | — | — | (50,057) |
| Recognition of deferred outflow of resources for pension contributions made after the measurement date (July 1, 2016) | | 5,316 | — | — | 11,831 |
| Recognition of deferred inflow of resources | | (378) | — | — | (868) |
| Overstatement of liabilities (b) | | 8,560 | — | — | — |
| Net position (deficit) – July 1, 2016, as restated | $ | (139,687) | — | — | 11,818 |

The changes in major fund presentation resulted from the Lotteries and the PRWPCRF not meeting the major fund quantitative thresholds provided by GASB Statement No. 34 in 2017.

*Correction of Material Errors*

The correction of material errors in the beginning net position of nonmajor proprietary funds includes a combination of the following:

(a) The impact of applying the guidance in GASB Statement No. 68 and No. 71 by recognizing the net effects of the Lotteries, PRHIA and Bureau of Emergency Services 9-1-1's proportionate share of beginning net pension liability, deferred outflows of resources for pension contributions made after the beginning net pension liability measurement date and deferred inflows of resources due to differences between the projected and the actual pension plan investment earnings in different measurement periods.

An overstatement in accounts payable of approximately $8.6 million in PRHIA was corrected.

113

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**Discretely Presented Component Units**

The following table summarizes the changes to the beginning net position for certain discretely presented component units (in thousands):

| | | |
|---|---|---:|
| Net deficit – July 1, 2016, as previously reported | $ | (6,247,812) |
| Early adoption of GASB Statement No. 75 | | |
| PRASA | | (33,940) |
| Application of GASB Statement | | |
| No. 68 and No. 71: (a) | | |
| Recognition of net pension liability | | (3,241,659) |
| Recognition of deferred outflow | | |
| of resources for pension | | |
| contributions made after the | | |
| measurement date (July 1, 2016) | | 710,869 |
| Recognition of deferred inflow of | | |
| resources | | (108,930) |
| Overstatement of capital assets (b) | | (67,380) |
| Understatement of bonds payable (c) | | (85,963) |
| Understatement of loss contingency (d) | | (129,625) |
| Overstatement of cash and cash equivalents (e) | | (100,865) |
| Correction of immaterial errors (f) – (i) | | (37,963) |
| Net deficit – July 1, 2016, as restated | $ | (9,343,268) |

*Early Adoption of GASB Statement No. 75*

GASB Statement No. 75 "Accounting and Financial Reporting for Postemployment Benefits Other Than Pensions (OPEB)" which replaces GASB Statement No. 45 *"Accounting and Financial Reporting by Employers for Postemployment Benefits Other Than Pensions"*, is effective for fiscal years beginning after June 15, 2017, however, the PRASA's management elected an early implementation. As a result of the implementation of GASB Statement No. 75, PRASA adjusted its beginning net position as of July 1, 2016 for approximately ($33.9) million.

*Correction of Material Errors*

The correction of material errors in the beginning net position of discretely presented component units includes a combination of the following:

(a) The impact of applying the guidance in GASB Statements No. 68 and No. 71 by recognizing the net effects of discretely presented component units proportionate share of the beginning net pension liability and deferred outflows of resources for pension contributions made after the beginning net pension liability measurement date, against beginning net position. These discretely presented component units applied the provisions of GASB Statements No. 68 and No. 71 based on unaudited information, while the remaining of the nonmajor discretely presented component units did not adopt GASB Statements No. 68 and No. 71, as disclosed in Note 1(s), and Note 18(g).

(b) An overstatement of capital assets for approximately $59.8 million in PREPA's basic financial statements, and an overstatement identified by the PRPA for depreciation not taken on completed

114

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

projects of approximately $7.5 million, and an understatement of capital assets of approximately $44 thousand corrected by PRTC.

(c) An understatement of approximately ($85.9) million related to unrecorded outstanding bonds of the Teodoro Moscoso bridge service concession agreement on PRHTA's audited basic financial statements.

(d) An understatement of approximately ($77.4) million of legal claims and judgment reserve corrected to include labor related claims from prior years that were omitted from PREPA's prior year audited basic financial statements; an understatement of approximately ($52.3) million to adjust its reserve for claims corrected by PCSDIPRC; and an overstatement of approximately $1.3 million related to other adjustments corrected by PRPA.

(e) An overstatement of cash and cash equivalents in governmental banks of approximately ($4.8) million,($12) million, ($66) thousands and ($707) thousands corrected by PRCE, LAPR, PCSDIPRC and PRTEC respectively, for a custodial credit loss on deposits held at GDB. An overstatement of cash and cash equivalents in governmental banks of approximately ($83.2) million corrected by GDB for a custodial credit loss on deposits held at EDB.

(f) The inclusion for $1.8 million in 2017 of the CDPR, a nonmajor discretely presented component unit that was excluded from prior year basic financial statements because the stand-alone basic financial statements were unavailable and not deemed material, individually or in the aggregate, to the Commonwealth's basic financial statements.

(g) An understatement of receivables resulting from an overstatement of the allowance for uncollectible accounts of PREPA of approximately $13 million, and an overstatement of receivables of GDB by approximately ($67.3) million.

(h) An overstatement of accounts payable for approximately $747 thousand in CIDPC basic financial statements; $3.3 million in LAPR basic financial statements; $5.7 million in PRMBA basic financial statements; $2.1 million in PRPA basic financial statements; and $899 thousand in PRTC basic financial statements.

(i) Other immaterial errors corrected by various nonmajor discretely presented component units, FICPR for approximately $439 thousand, PRIDCO for approximately $97 thousand and and by PRPA for approximately $1.3 million.

**(5) Puerto Rico Government Investment Trust Fund (PRGITF)**

PRGITF was created by Act No. 176-1995, and began operations on December 4, 1995. The PRGITF is a no load diversified collective investment trust administered by GDB and created to provide eligible governmental investors of Puerto Rico with a convenient and economical way to invest in a professionally managed money market portfolio. The PRGITF is not an investment company or a mutual fund and is not subject to regulation or registration under the Investment Company Act of 1940. Units issued by the PRGITF are not subject to regulation or registration under the Securities and Exchange Act of 1933, as amended, because the units are issued by a government entity. The deposits on hand and the investments purchased are not collateralized, secured, or guaranteed by the Commonwealth or any of its agencies, instrumentalities, or political subdivisions.

PRGITF is considered a 2a7 like external investment pool, and as such, reports its investment at amortized cost, which approximates fair value. In addition, the Puerto Rico Government Investment Trust Fund follows GASB Statement No. 31, *Accounting and Financial Reporting for Certain Investments and for External Investments Pools*; however, as stated in Note (1)(b), such basic financial statements are not included in the

115

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

accompanying basic financial statements because the Primary Government and each component unit already present their corresponding share of the assets of the PRGITF as cash equivalents or investments.

The investment securities on hand at June 30, 2017, consisted of certificates of deposit and time deposits, money market funds, securities purchased under agreements to resell, corporate obligations, commercial paper, and U.S. government and sponsored agencies obligations, all of which may be considered highly liquid. However, the participants' investments are subject to the ability of the PRGITF to receive payment from the securities' issuer when due. The liquidity of certain investments and changes in interest rates may affect PRGITF's yield and the fair value of its investments.

The Commonwealth classified approximately $50 million of investments presented in the PRGITF (see Note 6) as cash and cash equivalents. Investments in the PRGITF with an original maturity of 90 days or less from the date of acquisition are considered to be cash equivalents.

The dollar amount of the investments at June 30, 2017 at $1.00 per unit of participation was reported in the individual basic financial statements of each of the participants, and combined in the basic financial statements as follows (in thousands):

|  | Outstanding balance | Percentage of total |
|---|---|---|
| Primary Government: |  |  |
| General Fund and Capital Project Fund | $    49,976 | 25.37 % |
| The Children's Trust (1) | 11,750 | 5.96 |
| COFINA (1) | 475 | 0.24 |
| Total for Primary Government | 62,201 | 31.57 |
| Discretely presented major component units: |  |  |
| GDB (1) | 104,013 | 52.81 |
| SIFC (1) | 1,050 | 0.53 |
| Total for discretely presented major component units | 105,063 | 53.34 |
| Nonmajor component units (1) | 22,917 | 11.63 |
| Other participants | 6,843 | 3.46 |
| Total for all participants | $    197,024 | 100.00 % |

(1)    Reported as investments in the accompanying statement of net position.

The deposits at June 30, 2017 were invested in securities with a cost that approximates fair value, plus accrued interest, for approximately $197 million. The external portion of the PRGITF was not considered significant for separate reporting in the accompanying basic financial statements.

As June 30, 2017, the PRGITF's investments were rated "A1" or "AA" by Standard & Poor's. U.S. government securities carry the explicit guarantee of the U.S. government.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Following is a table of the investments held by the PRGITF at June 30, 2017, presented at amortized cost (in thousands):

| | | |
|---|---|---:|
| Commercial paper | $ | 87,908 |
| U.S. government and sponsored agencies obligations | | 59,921 |
| Certificates of deposit and time deposits | | 35,004 |
| Money market | | 14,003 |
| Other | | 188 |
| | $ | 197,024 |

## (6) Deposits and Investments

### Primary Government

The Primary Government may invest in different types of securities, including domestic, international, and fixed income securities, among others.

The Primary Government maintains a cash and investment pool that is available for use by all funds, including some of the fiduciary funds. Each fund's portion of this pool is reported on the statement of net position as cash and cash equivalents. The fiduciary funds' investments are held and managed separately from those of other Primary Government funds.

*Cash and Cash Equivalents*

Custodial credit risk for deposits is the risk that in the event of bank failure, the Commonwealth's deposit might not be recovered. The Commonwealth requires that public funds deposited in commercial banks in Puerto Rico must be fully collateralized for the amount deposited in excess of federal depository insurance. All securities pledged as collateral are held by banks in the Commonwealth's name. There is no formal policy for custodial credit risk for cash accounts opened with commercial banks outside of Puerto Rico.

Deposits in governmental banks represent the balance of interest and noninterest bearing accounts in GDB and EDB. The deposit liability at the GDB and the EDB is substantially related to deposits from the DOT, its component units and its municipalities. However, any deposits at GDB as of June 30, 2017 were subsequently transferred to the PET on November 29, 2018 pursuant to GDB's Qualifying Modification and the GDB Restructuring Act,

Deposits maintained at GDB, EDB, and commercial banks established outside Puerto Rico are exempt from the collateral requirement established by the Commonwealth and thus represent a custodial credit risk, because in the event that these financial institutions fail, the Commonwealth may not be able to recover these deposits. On November 29, 2018, all claims that the Commonwealth and other governmental entities may have had against GDB, including their GDB deposits, were released pursuant to the Qualifying Modification and the GDB Restructuring Act. The carrying amount of deposits of the Primary Government at June 30, 2017 consists of the following (in thousands):

| | | Carrying amount | | | Bank |
|---|---|---|---|---|---|
| | | Unrestricted | Restricted | Total | balance |
| Governmental activities: | | | | | |
| Commercial banks | $ | 2,048,108 | 652,045 | 2,700,153 | 3,816,975 |
| Governmental banks | | 2,256 | 279 | 2,535 | 889,126 |
| Total | $ | 2,050,364 | 652,324 | 2,702,688 | 4,706,101 |

117

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| | | Carrying amount | | | Bank |
| | | Unrestricted | Restricted | Total | balance |
|---|---|---|---|---|---|
| Business-type activities: | | | | | |
| Commercial banks | $ | 362,000 | 27,781 | 389,781 | 404,129 |
| Governmental banks | | 2 | 28 | 30 | 229,040 |
| Under the custody of | | | | | |
| the U.S. Treasury | | — | 557,540 | 557,540 | 557,654 |
| Total | $ | 362,002 | 585,349 | 947,351 | 1,190,823 |

As of June 30, 2017, the total aggregate amount of the Primary Government's bank balance of deposits in commercial banks was approximately $4.2 billion, covered by the FDIC or by collateral held by the Commonwealth's agent in the Commonwealth's name. Deposits of approximately $558 million with the U.S. Treasury represent unemployment insurance premiums collected from employers that are transferred to the federal Unemployment Insurance Trust Fund in the U.S. Treasury. These deposits are uninsured and uncollateralized. The Primary Government's bank balance of deposits in governmental banks, which as of June 30, 2017, aggregated approximately $1.1 billion, is also uninsured and uncollateralized.

The Primary Government classified approximately $50 million of investments in the PRGITF as cash equivalents, not presented in the table above; but included in a separate line item in the accompanying statement of net position (Note 5).

*Custodial Credit Loss on Deposits held at GDB and EDB*

GDB faced a critical and economic situation as of June 30, 2017 as described in Note 2. Therefore, deposits held at GDB were subject to strict restrictions and limitations during the fiscal year, and subsequent periods. GDB served as the primary depository agent of the Commonwealth, its instrumentalities and municipalities' funds; depositors' cash and cash equivalents with GDB were thus subject to custodial credit risk. In the case of EDB, due to the spiral of economic deterioration affecting the Commonwealth, including downgrades in credit ratings of the Commonwealth's bonds led the private sector to retire deposits from EDB. Also, the GDB financial and liquidity crisis made public governmental agencies and corporations move their deposits from EDB to GDB, reducing EDB's capacity to issue commercial loans or make investments in financial instruments. In addition to these situations, the investments held by EDB had declined in value and EDB was running only on the interest income generated by its loan's portfolio. Due to the high default rate on its loans portfolio, the ability to raise cash through loan repayments was limited. Management determined that a custodial credit loss existed as of June 30, 2017 for the deposits held at GDB and EDB. Based on an evaluation of the availability and recoverability of such deposits, a custodial credit loss on these deposits has been recorded on the Primary Government's basic financial statements as follows (in thousands):

| | | Amount |
|---|---|---|
| Governmental activities: | | |
| Carrying value before loss | $ | 889,126 |
| Custodial credit loss | | (886,591) |
| Net carrying value | $ | 2,535 |

118

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| | Amount |
|---|---|
| Business-Type activities: | |
| Carrying value before loss | $ 229,040 |
| Custodial credit loss | (229,010) |
| Net carrying value | $ 30 |

A custodial credit loss of approximately $227.9 million was recognized in 2017 as general government expenditures of the Governmental Activities and belong substantially to those DOT accounts and those blended component units or agencies that issued their stand-alone basic financial statements considering the impact of the custodial credit loss. The realizable balance of the deposits held with the GDB as of June 30, 2017 was determined based on the corresponding actual collections received from the GDB on such deposits after the June 30, 2017 year end.

A custodial credit loss of approximately $1.5 million was recognized in 2017 as an operating expenses of the Business-type activities.

As discussed in Note 2(c), on November 29, 2018, GDB completed a restructuring of certain of its indebtedness pursuant to a Qualifying Modification under Title VI of PROMESA. Under the Qualifying Modification and the GDB Restructuring Act, the balance of liabilities owed between the Commonwealth and each Non-Municipal Government Entity and GDB were determined by applying the outstanding balance of any deposits held at GDB in a Non-Municipal Government Entity's name against the outstanding balance of any loan of such Non-Municipal Government Entity owed to GDB or of any bond or note of such Non-Municipal Government Entity held by GDB as of such date. As a result of this foregoing adjustment, all of the Commonwealth's deposits at GDB were extinguished as a result of the Qualifying Modification.

EDB is in the process of developing a strategy to restructure its obligations and operations. Upon the eventual restructuring of EDB obligations and operations, the recorded and unrecorded custodial credit loss on the cash and cash equivalents disclosed above may change.

*Investments*

*Custodial Credit Risk* – Custodial credit risk for investments is the risk that, in the event of the failure of the counterparty to the transaction, the Commonwealth may not be able to recover the value of the investment or collateral securities that are in the possession of an outside party.

*Credit Risk* – This is the risk of loss of principal or loss of a financial reward stemming from a borrower's failure to repay a loan or otherwise meet a contractual obligation. Investors are compensated for assuming credit risk by way of interest payments from the borrower or issuer of a debt obligation.

Credit risk is closely tied to the potential return of an investment, the most notable being that the yields on bonds correlate strongly to their perceived credit risk.

The Commonwealth's general investment policy is to apply the "prudent investor" rule, which states investments must be made with judgment and care under circumstances then prevailing, that persons of prudence, discretion, and intelligence exercise in the management of their own affairs, not for speculation but for investment, and considering the probable safety of their capital as well as the probable income to be derived. The prudent investor rule should be applied in the context of managing an overall portfolio.

Short-term funds of the agencies, including operating funds, may be invested in U.S. Treasury bills; U.S. Treasury notes or bonds with short-term maturities; short-term obligations of U.S. government agencies and instrumentalities classified within the highest rating category of Standard & Poor's Rating Services (S&P)

119

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

and Moody's Investors Service (Moody's); fully insured or collateralized certificates of deposit of eligible financial institutions designated by the Commissioner of Financial Institutions and the Secretary of the DOT; prime commercial paper rated A1/P1 by S&P and Moody's or secured by an irrevocable line of credit of an institution rated within the highest rating category of S&P and Moody's or collateralized by government securities; bankers' acceptances (as alternatives to CDs) of eligible financial institutions doing business in Puerto Rico provided adequate collateral has been pledged; the PRGITF; obligations of the Commonwealth and its instrumentalities with an expected rate of return similar to other securities with the same risk profile.

Longer term funds may also be invested in U.S. government and agency securities in the highest rating category of S&P and Moody's. This include Taxable Municipal Bonds of state and local governments in the United States classified within the three (3) highest categories of at least two of the principal rating services; taxable municipal obligations of the Primary Government and its component units; structured investments (notes and other types of on balance sheet securities issued by a U.S. Government Agency or another financial institutions in the highest rating category of at least two of the principal rating services); and any mortgage backed instrument issued by a U.S. Government Agency in the highest rating category of S&P and Moody's.

*Concentration of Credit Risk* – This is the risk of loss attributed to the magnitude of a government's investment in a single issuer. The Commonwealth policy on larger portfolios with positions in securities having potential default risk is to limit the investments in size so that in case of default, the portfolio's annual investment income will exceed a loss on a single issuer's securities.

*Interest Rate Risk* – It is the Commonwealth policy that a minimum 10% of the total portfolio be held in highly marketable U.S. Treasury bills or overnight investment instruments. Larger portfolios should not hold more than 30% of the portfolio in marketable instruments with maturities beyond one month. This policy should be followed as long as it does not reduce investment yields.

**Governmental Activities**

The Governmental Activities investments consisted of approximately $84.9 million in nonparticipating investment contracts (guaranteed investment contracts) that were exposed to custodial risk as uninsured, unregistered, and held by the counterparties or by their trust departments or agents, but not in the Primary Government's name.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

At June 30, 2017, the fair value of the Governmental Activities' investments based on the hierarchy of inputs was as follows (in thousands):

| Investment type | Level 1 | Level 2 | Level 3 | Total |
|---|---|---|---|---|
| U.S. government securities | $         — | 35,730 | — | 35,730 |
| U.S. corporate bonds and notes | — | 368,198 | — | 368,198 |
| Internal investment pools – fixed-income: securities: PRGITF | | | | |
| External investment pools – fixed-income securities: | — | 12,224 | — | 12,224 |
| U.S. Bank Money Market | 25,216 | — | — | 25,216 |
| Nonparticipating investment contracts: UniCredit Bank AG – Guaranteed: | | | | |
| Investment Contract | — | — | 83,684 | 83,684 |
| Total investments measured at fair value | $    25,216 | 416,152 | 83,684 | 525,052 |
| Investments measured at amortized cost or NAV: | | | | |
| Dreyfus Government Cash Management | | | | 39,490 |
| Money market funds | | | | 28,327 |
| Negotiable certificate of deposits | | | | 1,629 |
| Nonparticipating investment contracts | | | | 1,217 |
| Other | | | | 1,592 |
| Total investments | | | $ | 597,307 |

121

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The following table summarizes the type and maturities of investments held by the Governmental Activities at June 30, 2017 (in thousands). Investments by type in any issuer representing 5% or more of total investments have been separately disclosed. Expected maturities will differ from contractual maturities because counterparties may have the right to call or prepay obligations with or without call or prepayment penalties.

| Investment type | Within one year | After one to five years | After ten years | Total |
|---|---|---|---|---|
| U.S. government securities | $ 35,730 | — | — | 35,730 |
| U.S. corporate bonds and notes | 368,198 | — | — | 368,198 |
| Money market funds | 12,315 | 16,012 | — | 28,327 |
| Negotiable certificates of deposits | 1,629 | — | — | 1,629 |
| Other | — | 1,592 | — | 1,592 |
| Internal investment pools – fixed-income securities: | | | | |
| PRGITF | 12,224 | — | — | 12,224 |
| External investment pools – fixed-income securities: | | | | |
| Dreyfus Government Cash Management | 39,490 | — | — | 39,490 |
| U.S. Bank Money Market | — | — | 25,216 | 25,216 |
| Nonparticipating investment contracts: | | | | |
| Unicredit Bank AG-Guaranteed Investment Contract | — | — | 83,684 | 83,684 |
| Calyon | — | — | 1,217 | 1,217 |
| Total debt securities and fixed-income investment contracts | $ 469,586 | 17,604 | 110,117 | 597,307 |
| Reconciliation to the government-wide statement of net position: | | | | |
| Unrestricted investments | | | | $ 11,917 |
| Restricted investments | | | | 585,390 |
| Total | | | | $ 597,307 |

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

The credit quality ratings (S&P) and fair value by investment type for the investments reported by the Governmental Activities at June 30, 2017 consisted of the following (in thousands):

| Investment type | | AAA | A+ to A- | BBB+ to B- | Total |
|---|---|---|---|---|---|
| | | | | Rating | |
| U.S. corporate bonds and notes | $ | — | 368,198 | — | 368,198 |
| Money market funds | | 28,327 | — | — | 28,327 |
| Negotiable certificate of deposits | | 1,629 | — | — | 1,629 |
| Other | | 1,592 | — | — | 1,592 |
| Internal investment pools – fixed-income securities: | | | | | |
| PRGITF | | 12,224 | — | — | 12,224 |
| External investment pools – fixed-income securities: | | | | | |
| Dreyfus Government Cash Management | | 39,490 | — | — | 39,490 |
| US Bank Money Market | | — | 25,216 | — | 25,216 |
| Nonparticipating investment contracts: | | | | | |
| UniCredit Bank AG-Guaranteed Investment Contract | | — | — | 83,684 | 83,684 |
| Calyon | | — | 1,217 | — | 1,217 |
| Total debt securities and fixed-income investment contracts | $ | 83,262 | 394,631 | 83,684 | 561,577 |

Approximately $35.7 million of the total Governmental Activities' investments consist of U.S. Treasury instruments, which carry no credit risk and therefore, are not included within the table above.

**Business-type Activities**

At June 30, 2017, the fair value of the Business-type activities' investments based on the hierarchy of inputs is as follows (in thousands):

| Investment type | | Level 1 | Level 2 | Level 3 | Total |
|---|---|---|---|---|---|
| U.S. government and agency securities | $ | — | 4,852 | — | 4,852 |
| Mortgage and asset-backed securities: | | | | | |
| Government National Mortgage Association (GNMA) | | — | 2,895 | — | 2,895 |
| Commercial mortgages | | — | 681 | — | 681 |
| Asset-backed securities | | — | 816 | — | 816 |
| U.S. corporate bonds and notes | | — | 7,239 | — | 7,239 |
| Foreign corporate and government bonds and notes | | — | 653 | — | 653 |
| External investment pools – equity securities | | — | 9,116 | — | 9,116 |
| Total investments measured at fair value | $ | — | 26,252 | — | 26,252 |

123

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The following table summarizes the type and maturities of investments held by the Business-type activities at June 30, 2017 (in thousands). Investments by type in any issuer representing 5% or more of total investments have been separately disclosed. Expected maturities will differ from contractual maturities, because counterparties may have the right to call or prepay obligations with or without call or prepayment penalties.

| Investment type | Within one year | | After one to five years | After five to ten years | After ten years | Total |
|---|---|---|---|---|---|---|
| | | | **Maturity (in years)** | | | |
| U.S. government and agency securities | $ | — | 1,390 | 1,711 | 1,751 | 4,852 |
| Mortgage and asset-backed securities: | | | | | | |
| Government National Mortgage Association (GNMA) | | — | 26 | 684 | 2,185 | 2,895 |
| Commercial mortgages | | — | — | — | 681 | 681 |
| Asset-backed securities | | — | 816 | — | — | 816 |
| U.S. corporate bonds and notes | | — | 3,687 | 2,619 | 933 | 7,239 |
| Foreign corporate and government bonds and notes | | — | 424 | 229 | — | 653 |
| Total debt securities | $ | — | 6,343 | 5,243 | 5,550 | 17,136 |
| External investment pools – equity securities: | | | | | | |
| SPDR S&P 500 ETF Trust | | | | | | 7,203 |
| MFC ISHARES TR Russell 2000 Index Fund | | | | | | 982 |
| MFC Vanguard FTSE Developed | | | | | | 926 |
| MFC Vanguard FTSE Emergency MKTS ETF | | | | | | 5 |
| Total | | | | | $ | 26,252 |
| Reconciliation to the government-wide statement of net position: | | | | | | |
| Restricted investments | | | | | $ | 26,252 |
| Total | | | | | $ | 26,252 |

The credit quality ratings (S&P) and fair value by investment type for the investments reported by the Business-type activities at June 30, 2017 consist of the following (in thousands):

| Investment type | AAA | AA+ to AA- | A+ to A- | BBB+ to BBB- | BB+ to BB- | B+ to B- | Not rated | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | **Rating** | | | | |
| Mortgage and asset-backed securities: | | | | | | | | |
| Commercial mortgages | $ 266 | — | — | — | — | — | 415 | 681 |
| Asset-backed securities | 805 | — | — | — | — | — | 11 | 816 |
| U.S. corporate bonds and notes | 614 | 961 | 3,309 | 2,297 | — | 58 | — | 7,239 |
| Foreign corporate and government bonds and notes | — | — | 596 | — | 57 | — | — | 653 |
| Total debt securities | $ 1,685 | 961 | 3,905 | 2,297 | 57 | 58 | 426 | 9,389 |

Approximately $7.8 million of the total Business-type activities' investments consist of $2.9 million in U.S. Government National Mortgage Association (GNMA) securities and $4.9 million in U.S. Treasury Instruments, which carry no credit risk and therefore, are not included within the table above.

124

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**Fiduciary Funds**

*Cash and Cash Equivalents*

Cash and cash equivalents of the Fiduciary Funds at June 30, 2017 consisted of the following (in thousands):

| | Carrying amount | | | Bank |
| | Unrestricted | Restricted | Total | balance |
|---|---|---|---|---|
| Commercial banks | $    953,511 | 216,483 | 1,169,994 | 1,148,359 |
| Governmental banks (all with GDB), net | 50 | — | 50 | 30,077 |
| Total | $    953,561 | 216,483 | 1,170,044 | 1,178,436 |

Cash and cash equivalents consist of deposits with commercial banks, deposits with the GDB and short-term investments. Short-term investments include money market funds and other cash equivalents. The cash in commercial banks and governmental banks also include funds deposited in private banks (approximately $629.9 million) and GDB (approximately $600 thousand) held by the Commonwealth's agency fund on behalf of third parties outside the Commonwealth's reporting entity.

The total aggregate amount of restricted cash and cash equivalents amounted to approximately $216 million as of June 30, 2017 and consisted of the following:

- Approximately $1.9 million in funds restricted for the debt service of ERS bonds payable, of which 100% of such funds were deposited at a trustee in money market funds.

- Approximately $214 million in funds restricted for repayments of mortgage and personal loans, for expired checks not claimed by the plan members, and other purposes, of which approximately $11 million was deposited at a trustee in money market accounts, approximately $126 thousand was deposited at GDB and approximately $202 million were deposited at commercial banks.

Collateral received for securities lending transactions of the pension trust funds at June 30, 2017 that amounted to approximately $7.2 million was invested in short-term investment funds sponsored by the pension trust funds' custodian bank (see Note 7).

*Custodial Credit Risk* – As of June 30, 2017, the fiduciary funds had approximately $64 million in cash and cash equivalents and collateral from securities lending transactions, which were exposed to custodial credit risk as uninsured and uncollateralized. Cash collateral received from securities lending transactions invested in short-term investment funds sponsored by the pension trust funds' custodian bank are also exempt from compliance with the collateralization requirement.

125

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Custodial Credit Loss on Deposits held at GDB and EDB*

Based on an evaluation of the availability and recoverability of deposits, a custodial credit loss has been recorded on the fiduciary funds' basic financial statements within other expenses as follows (in thousands):

| | Deposits Held with GDB at June 30, 2017 | | |
| --- | --- | --- | --- |
| | Carrying value before custodial credit loss | Custodial credit loss | Carrying value |
| Cash and cash equivalents | $ 30,077 | (30,027) | 50 |

The above custodial credit loss belongs to the Retirement Systems that issued their stand-alone basic financial statements considering the impact of the custodial credit loss. The realizable balance of the deposits held with the GDB as of June 30, 2017 was determined based on the corresponding actual collections received from the GDB on such deposits after the June 30, 2017 year end. There were no funds deposited in EDB as of June 30, 2017.

*Investments*

At June 30, 2017, the fair value of the pension trust funds' investments based on the hierarchy of inputs is as follows (in thousands):

| Investment type | Level 1 | Level 2 | Level 3 | Total |
| --- | --- | --- | --- | --- |
| U.S. government securities | $ 14,192 | — | — | 14,192 |
| U.S. government sponsored agencies notes | 16,668 | — | — | 16,668 |
| Mortgage and asset–backed securities: | | | | |
| GNMA | 3,058 | — | — | 3,058 |
| FNMA | 2,581 | — | — | 2,581 |
| FHLMC | 1,420 | — | — | 1,420 |
| U.S. corporate bonds and notes | — | 71,936 | — | 71,936 |
| Non-U.S. corporate bonds and notes | — | 16,576 | — | 16,576 |
| COFINA bonds | — | 58,224 | — | 58,224 |
| Investments at fair value level | $ 37,919 | 146,736 | — | 184,655 |
| Investments measured at NAV: | | | | |
| Nonexchange commingled trust funds: | | | | |
| Fixed income funds | | | | 385,718 |
| Investments in limited partnerships | | | | 90,591 |
| Total Investments | | | $ | 660,964 |

126

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The following table summarizes the type and maturities of investments held by the pension trust funds at June 30, 2017 (in thousands). Investments by type in any issuer representing 5% or more of total investments have been separately disclosed. Expected maturities will differ from contractual maturities, because counterparties may have the right to call or prepay obligations with or without call or prepayment penalties.

| Investment type | | Maturity (in years) | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Within one year | After one to five years | After five to ten years | After ten years | Total |
| U.S. government securities: | | | | | | |
| U.S. Treasury notes | $ | 2,105 | 3,368 | 3,602 | — | 9,075 |
| U.S. Treasury note strips | | — | — | — | 2,353 | 2,353 |
| U.S. Treasury bonds | | — | 560 | — | — | 560 |
| U.S. Treasury Inflation-Protected Securities (TIPS) | | — | 2,204 | — | — | 2,204 |
| U.S. government sponsored agencies notes: | | | | | | |
| Federal Home Loan Bank (FHLB) | | — | 1,053 | 1,884 | — | 2,937 |
| FNMA | | — | 4,807 | 4,249 | — | 9,056 |
| FHLMC | | — | 2,999 | — | — | 2,999 |
| Federal Farm Credit Bank (FFCB) | | — | 1,676 | — | — | 1,676 |
| Mortgage and asset–backed securities: | | | | | | |
| GNMA | | — | 519 | — | 2,539 | 3,058 |
| FNMA | | — | — | — | 2,581 | 2,581 |
| Asset–backed securities | | — | — | — | 1,420 | 1,420 |
| U.S. corporate bonds and notes | | 9,854 | 36,527 | 25,478 | 77 | 71,936 |
| Non-U.S. corporate bonds and notes | | 1,098 | 7,324 | 7,115 | 1,039 | 16,576 |
| COFINA bonds | | — | — | — | 58,224 | 58,224 |
| Total bonds and notes | | 13,057 | 61,037 | 42,328 | 68,233 | 184,655 |
| Nonexchange commingled trust funds: | | | | | | |
| Fixed income fund – SSgA and other nonexchange Intermediate Fund: commingled trust funds | | | | | | |
| U.S. | | 230 | 125,858 | 65,798 | — | 191,886 |
| Total bonds and notes and nonexchange commingled fixed-income trust funds | $ | 13,287 | 186,895 | 108,126 | 68,233 | 376,541 |
| Stocks and equity and other nonexchange commingled trust funds: | | | | | | |
| Nonexchange commingled trust funds: | | | | | | |
| Equity and other funds: | | | | | | |
| U.S. – SSgA Russell 3000 Fund | | | | | | 120,498 |
| U.S. – SSgA S&P 500 Fund | | | | | | 8,981 |
| Non-U.S. – SSgA MSCI | | | | | | 61,201 |
| ACWI Ex USA Fund | | | | | | 3,152 |
| Total stocks and equity | | | | | | 193,832 |
| Investments in limited partnerships | | | | | | 90,591 |
| Total | | | | | $ | 660,964 |

127

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The pension trust fund's investments are exposed to custodial credit risk, credit risk, concentration of credit risk, foreign currency risk, and interest rate risk. Following is a description of these risks as of June 30, 2017:

*Custodial Credit Risk* – At June 30, 2017, securities investments were registered in the name of the pension trust fund and were held in the possession of the pension trust fund's custodian banks, State Street Bank and Trust and Bank of New York Mellon, except for securities lent. Securities lent are not exposed to custodial credit risk (see Note 7).

*Credit Risk* – All fixed income securities at the time of purchase must be of investment grade quality. All issuances must be rated investment grade by at least two of the nationally recognized rating agencies. The portfolio is expected to maintain a minimum weighted average credit quality of either "A" or better using either S&P or Moody's credit ratings. TRS's investment guidelines prohibit the investments in securities with expected maturity dates beyond 30 years. Positions that drift below investment grade should be reported to a management representative of TRS and monitored carefully. TRS's portfolio is not expected to have more than 5% invested in securities that have drifted after purchase below investment grade quality. JRS investment policy limits the investment in corporate debt securities to the top ratings issued by nationally recognized statistical rating organizations.

The credit quality ratings for investments held by the pension trust funds at June 30, 2017 are as follows (in thousands):

| Investment type | AAA | AA+ to AA- | A+ to A- | BBB+ to BBB- | BB+ to BB- | CCC- | Not Rated | Total |
|---|---|---|---|---|---|---|---|---|
| Bonds and notes: | | | | | | | | |
| U.S. government agencies obligations: | | | | | | | | |
| FHLB | $ — | 2,937 | — | — | — | — | — | 2,937 |
| FNMA | — | 9,056 | — | — | — | — | — | 9,056 |
| FHLMC | — | 2,999 | — | — | — | — | — | 2,999 |
| FFCB | — | 1,676 | — | — | — | — | — | 1,676 |
| Mortgage and asset – backed securities: | | | | | | | | |
| FNMA | — | 2,581 | — | — | — | — | — | 2,581 |
| FHLMC | — | 1,420 | — | — | — | — | — | 1,420 |
| U.S. corporate bonds and notes | 2,065 | 11,374 | 14,054 | 40,197 | 692 | — | 3,554 | 71,936 |
| Non U.S. corporate bonds and notes | — | 502 | 4,596 | 7,707 | 857 | — | 2,914 | 16,576 |
| COFINA bonds | — | — | — | — | — | 58,224 | — | 58,224 |
| Total bonds and notes | 2,065 | 32,545 | 18,650 | 47,904 | 1,549 | 58,224 | 6,468 | 167,405 |
| Nonexchange commingled trust funds: | | | | | | | | |
| Fixed income fund – SSgA | | | | | | | | |
| Intermediate Fund | 123,210 | 10,727 | 25,367 | 32,582 | — | — | — | 191,886 |
| Total debt securities and fixed-income nonexchange commingled trust fund | $ 125,275 | 43,272 | 44,017 | 80,486 | 1,549 | 58,224 | 6,468 | 359,291 |

(1) Rating obtained from Standard and Poor's or equivalent rating by Moody's Investor Service or Fitch Ratings.

Approximately $17.3 million of the total fiduciary funds' investments at June 30, 2017 consist of GNMA and U.S. Treasury securities, which carry no risk and therefore, are not included within the table above.

*Concentration of Credit Risk* – As of June 30, 2017, none of ERS and JRS investments in marketable securities in any organization represented 5% or more of ERS and JRS net assets held in trust for pension benefits. There were no TRS investments in any one issuer that represented 5% or more of total investments

128

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

as of June 30, 2017. TRS investment guidelines specify that no more than 5% of a manager's assets at market may be invested in the securities of any single issuer.

*Interest Rate Risk* – In accordance with their investment policy, ERS and JRS manage their exposure to declines in fair values by structuring the investment portfolio so that securities mature to meet cash requirements for benefit payments, thereby avoiding the need to sell securities on the open market prior to maturity. The Pension Trust Fund is expected to achieve capital preservation and income generation by investing in a diversified portfolio of marketable investment grade core fixed income securities. TRS investment guidelines specify that the duration of the portfolio is expected to vary no more than between 75% and 125% of the duration of the respective benchmark.

As of June 30, 2017, investment maturities as a percentage of total debt securities and fixed income nonexchange traded mutual funds were as follows:

| Maturity | Maximum maturity |
|---|---|
| Within one year | 4% |
| After one year to five years | 50 |
| After five years to ten years | 29 |
| After ten years | 17 |
| Total | 100% |

*Foreign Currency Risk* – This is the risk that changes in exchange rates will adversely affect the fair value of an investment or a deposit. ERS, JRS, and TRS have no investments with exposure to foreign currency risk.

*Nonexchange Commingled Trust Funds*

The pension trust funds invest in shares of the following State Street Global Advisor equity funds: SsgA S&P 500 Flagship Securities Lending Fund (the SsgA S&P 500 Fund), the SsgA Russell 3000 1qIndex Non- Lending Fund (the SsgA Russell 3000 Fund), and the SsgA MSCI ACWI Ex USA Non- Lending Fund (the SsgA MSCI ACWI Ex USA Fund). The investment objectives of the SsgA S&P 500 Fund, the SsgA Russell 3000 Fund, and the SsgA MSCI ACWI Ex USA Fund are to match the return of the Standard & Poor's 500 Index, the Russell 3000 Index, and the MSCI ACWI Ex USA Index, respectively, over the long-term. Shares of the SsgA S&P 500 Fund and of the SsgA Russell 3000 Fund can be redeemed on a daily basis at net asset value (NAV) and have no redemption restrictions. Shares of the SsgA MSCI ACWI Ex USA Fund can be redeemed semimonthly at NAV and have no redemption restrictions. The pension trust funds' investment in these funds is included as part of nonexchange commingled trust funds.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

As of June 30, 2017, the investments underlying the SsgA S&P 500 Fund, the SsgA Russell 3000 Fund and the SsgA MSCI ACWI Ex USA Fund had the following sector allocations:

| Sector | SSgA S&P 500 Fund | SSgA Russell 3000 Fund | SSgA MSCI ACWI Ex USA Fund |
|---|---|---|---|
| Information technology | 20% | 21% | 12% |
| Financials | 16 | 15 | 22 |
| Healthcare | 15 | 14 | 8 |
| Consumer discretionary | 12 | 12 | 11 |
| Industrials | 10 | 11 | 12 |
| Consumer staples | 10 | 8 | 9 |
| Energy | 7 | 5 | 8 |
| Real estate | — | 4 | 3 |
| Materials | 3 | 3 | 8 |
| Utilities | 4 | 3 | 3 |
| Telecommunication services | 3 | 2 | 4 |
| Unclassified | — | 2 | — |
| Total | 100% | 100% | 100% |

In addition, the pension trust funds invest in shares of the State Street Global Advisor Intermediate Credit Index Non- Lending Fund (the SsgA Intermediate Fund). The investment objective of the SsgA Intermediate Fund is to replicate the Barclays U.S. Intermediate Credit Bond Index over a long-term by investing exclusively in fixed income securities. Shares of the SsgA Intermediate Fund can be redeemed on a daily basis at their NAV and have no redemption restrictions. The pension trust funds' investment in the SsgA Intermediate Fund is included as part of nonexchange commingled trust funds.

As of June 30, 2017, the investments underlying the SsgA Intermediate Fund had the following sector allocations:

| Sector | Percentage |
|---|---|
| Treasury | 57% |
| Corporate – Industrial | 12 |
| Corporate – Finance | 19 |
| Noncorporates | 7 |
| Agency | 3 |
| Corporate – Utility | 2 |
| Total | 100% |

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

As of June 30, 2017, the composition of the underlying investments in the SsgA MSCI ACWI Ex USA Fund and in the SsgA Intermediate Fund by country was as follows:

| Country | SSgA MSCI ACWI Ex USA Fund |
|---|---|
| Japan | 16% |
| United Kingdom | 11 |
| Canada | 7 |
| France | 7 |
| Germany | 7 |
| Switzerland | 6 |
| Australia | 5 |
| Hong Kong | 5 |
| China | 4 |
| Korea | 4 |
| Taiwan | 3 |
| Netherlands | 3 |
| Spain | 2 |
| India | 2 |
| Other | 18 |
| Total | 100% |

**Investments in Limited Partnerships**

Pursuant to the Commonwealth's General Investment Policy, the pension trust funds invested approximately $42.3 million in limited partnerships during the year ended June 30, 2017.

The fair value of investments in limited partnerships at June 30, 2017 amounted to approximately $90.6 million. The allocations of net gains and losses to limited partners are based on certain percentages, as established in the limited partnership agreements. Investments in limited partnerships are not rated by a nationally recognized statistical rating organization. The related credit risk is measured through credit analysis, periodic reviews of results of operations, and meetings of subject companies' management.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

As of June 30, 2017, the pension trust funds had capital commitments with limited partnerships and related contributions as follows (in thousands):

| | Public sector commitments | Fiscal year contributions | Cumulative contributions | Fair value |
|---|---|---|---|---|
| Guayacán Fund of Funds II, L.P.: | | | | |
| Employees' Retirement System of the Government of the Commonwealth of Puerto Rico | $ 25,000 | — | 23,681 | 919 |
| Puerto Rico System of Annuities and Pensions for Teachers | 25,000 | — | 23,681 | 918 |
| Subtotal | 50,000 | — | 47,362 | 1,837 |
| Guayacán Private Equity Fund, L.P.: | | | | |
| Employees' Retirement System of the Government of the Commonwealth of Puerto Rico | 5,000 | — | 4,645 | 2,162 |
| Puerto Rico System of Annuities and Pensions for Teachers | 5,000 | — | 4,645 | 2,148 |
| Subtotal | 10,000 | — | 9,290 | 4,310 |
| Guayacán Private Equity Fund II, L.P.: | | | | |
| Employees' Retirement System of the Government of the Commonwealth of Puerto Rico | 25,000 | — | 24,547 | 22,638 |
| Subtotal | 25,000 | — | 24,547 | 22,638 |
| Other Funds: | | | | |
| Employees' Retirement System of the Government of the Commonwealth of Puerto Rico | 98,300 | 42,383 | 87,970 | 61,350 |
| Puerto Rico System of Annuities and Pensions for Teachers | 13,714 | — | 12,001 | 456 |
| Subtotal | 112,014 | 42,383 | 99,971 | 61,806 |
| Total | $ 197,014 | 42,383 | 181,170 | 90,591 |

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**Discretely Presented Component Units**

*Deposits*

Cash and cash equivalents consist of demand deposits, interest bearing accounts, certificates of deposit, and bank investment contracts. Cash and cash equivalents of the discretely presented component units at June 30, 2017 consisted of (in thousands):

*Major Discretely Presented Component Units*

| | | Carrying amount | | | Bank |
| | | Unrestricted | Restricted | Total | balance |
|---|---|---|---|---|---|
| Commercial banks | $ | 1,209,736 | 480,866 | 1,690,602 | 1,693,106 |
| Governmental banks | | — | 4,636 | 4,636 | 371,246 |
| Total | $ | 1,209,736 | 485,502 | 1,695,238 | 2,064,352 |

As of June 30, 2017, the major discretely presented component units had approximately $371 million of cash and cash equivalents that were exposed to custodial credit risk as uninsured and uncollateralized.

*Nonmajor Discretely Presented Component Units*

| | | Carrying amount | | | Bank |
| | | Unrestricted | Restricted | Total | balance |
|---|---|---|---|---|---|
| Commercial banks | $ | 323,032 | 64,463 | 387,495 | 399,431 |
| Governmental banks | | 41,858 | 30 | 41,888 | 444,581 |
| Total | $ | 364,890 | 64,493 | 429,383 | 844,012 |

As of June 30, 2017, the nonmajor discretely presented component units had approximately $444.6 million of cash and cash equivalents that were exposed to custodial credit risk as uninsured and uncollateralized.

*Custodial Credit Loss on Deposits held at GDB and EDB*

Management determined that a custodial credit loss existed at June 30, 2017 for the deposits held at GDB and EDB. Based on an evaluation of the availability and recoverability of such deposits, a custodial credit loss on these deposits has been recorded on the discretely presented component units' basic financial statements within general expenses as follows (in thousands):

| | | Amount |
|---|---|---|
| Major component units: | | |
| Carrying value before custodial credit loss | $ | 371,246 |
| Custodial credit loss | | (366,610) |
| Net carrying value | $ | 4,636 |

133

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

|  | Amount |
|---|---|
| Nonmajor component units: | |
| Carrying value before custodial credit loss | $ 444,581 |
| Custodial credit loss | (402,693) |
| Net carrying value | $ 41,888 |

The aforementioned custodial credit losses were related to those discretely presented component units which issued their stand-alone basic financial statements considering the impact of the custodial credit loss. The realizable balance of the deposits held with the GDB as of June 30, 2017 was determined based on the corresponding actual collections received from the GDB on such deposits after the June 30, 2017 year end.

A custodial credit loss of approximately $108.5 million was recognized as general and administrative expenses of the discretely presented component units during fiscal year 2017.

As discussed in Note 2(c), on November 29, 2018, GDB completed a restructuring of certain of its indebtedness pursuant to a Qualifying Modification under Title VI of PROMESA. Under the Qualifying Modification and the GDB Restructuring Act, the balance of liabilities owed between the Commonwealth and each Non-Municipal Government Entity and GDB were determined by applying the outstanding balance of any deposits held at GDB in a Non-Municipal Government Entity's name against the outstanding balance of any loan of such Non-Municipal Government Entity owed to GDB or of any bond or note of such Non-Municipal Government Entity held by GDB as of such date. As a result of this foregoing adjustment, all of the Commonwealth's deposits at GDB were extinguished as a result of the Qualifying Modification.

EDB is in the process of developing a strategy directed to restructure its obligations and operations. Upon the eventual restructuring of EDB obligations and operations.

*Credit Risk* – In addition to the investments permitted for the Primary Government, the discretely presented component units' investment policies allow management to invest in the following: certificates of deposit or Euro notes issued by financial institutions in the U.S. in which the issuer is classified in the highest rating category for short-term obligations and in the two highest rating category for long-term obligations as classified by S&P and Moody's: corporate notes and bonds classified in the highest categories of at least two of the principal rating services; taxable corporate debt issued through AFICA within the two (2) highest rating categories of at least two of the principal rating services; trust certificates (subject to prior written consultation with GDB); and Mortgage and Asset Backed Securities rated AAA by S&P or Aaa by Moody's; no more than 5% of a manager's assets at fair value shall be invested in the securities of any single issuer.

The discretely presented component units' investment policies establish limitations and other guidelines on amounts to be invested in the aforementioned investment categories and by issuer/counterparty and on exposure by country. In addition, such policies provide guidelines on the institutions with which investment transactions can be entered into.

The discretely presented component units' investment policies provide that investment transactions must be entered into with counterparties that are rated BBB+/A 1 or better by S&P's or equivalent rating by Fitch Ratings or Moody's, depending on the type and maturity of the investment and the counterparty to the transaction.

*Concentration of credit risk* – In addition, the investment policy specifies that no more than 5% of a manager's assets at fair value must be invested in the securities of any single issuer. The following table summarizes the type and maturities of investments held by the discretely presented component units at June 30, 2017 (in thousands). Investments by type in any issuer representing 5% or more of total investments have been

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

separately disclosed. Expected maturities will differ from contractual maturities, because counterparties may have the right to call or prepay obligations with or without call or prepayment penalties.

**Discretely Presented Component Units**

At June 30, 2017, the fair value of the discretely presented component units' investments based on the hierarchy of inputs is as follows:

| Investment type | | Level 1 | Level 2 | Level 3 | Total |
|---|---|---|---|---|---|
| U.S. government securities | $ | 20,459 | 10,792 | — | 31,251 |
| U.S. government agencies notes: | | | | | |
| by GNMA | | 19,367 | 3,621 | — | 22,988 |
| FNMA | | — | 13,570 | — | 13,570 |
| FHLMC | | — | 1,152 | — | 1,152 |
| FFCB | | — | 1,035 | — | 1,035 |
| Other | | — | 1,872 | — | 1,872 |
| Mortgage and asset-backed | | | | | |
| securities: | | | | | |
| GNMA | | 77,928 | 6,371 | — | 84,299 |
| FNMA | | 3,375 | 15,989 | — | 19,364 |
| FHLMC | | — | 8,477 | — | 8,477 |
| Commercial mortgages | | 15,690 | 4,107 | — | 19,797 |
| Asset-backed securities | | — | 4,895 | — | 4,895 |
| Other | | 170 | 221 | — | 391 |
| U.S. corporate bonds and notes | | 24,989 | 86,661 | — | 111,650 |
| Foreign government bonds and notes | | 2,898 | 1,511 | — | 4,409 |
| U.S. municipal notes | | — | 51,150 | — | 51,150 |
| Commonwealth agency bonds and notes | | — | 59,559 | — | 59,559 |
| External investment pools – fixed – | | | | | |
| income securities | | 50,689 | — | — | 50,689 |
| External investment pools – | | | | | |
| equity securities | | 118,260 | 12,160 | 60,450 | 190,870 |
| U.S. corporate stocks | | 278,455 | — | — | 278,455 |
| Other | | 547 | — | — | 547 |
| Investments at fair value level | $ | 612,827 | 283,143 | 60,450 | 956,420 |
| Investments valued at NAV | | | | | |
| or amortized cost: | | | | | |
| Cash equivalent – money market fund | | | | | 64,049 |
| Negotiable certificates of deposit | | | | | 309 |
| Mutual funds | | | | | 63,884 |
| PRGITF | | | | | 105,063 |
| Guaranteed investments contract | | | | | 64,685 |
| External investment pools – | | | | | |
| equity securities | | | | | 101,104 |
| Total major component units | | | | | 1,355,514 |
| Total nonmajor component units | | | | | 1,376,905 |
| Total investments | | | | $ | 2,732,419 |

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

The following table summarizes the type and maturities of investments held by major discretely presented component units at June 30, 2017 (in thousands). Investments by type in any issuer representing 5% or more of total investments have been separately disclosed. Expected maturities will differ from contractual maturities, because counterparties may have the right to call or prepay obligations with or without call or prepayment penalties.

| Investment type | Within one year | After one to five years | After five to ten years | After ten years | Total |
|---|---|---|---|---|---|
| | | | Maturity (in years) | | |
| U.S. government securities | $  4,298 | 8,930 | 15,209 | 2,814 | 31,251 |
| U.S. government sponsored agencies notes: | | | | | |
| FHLB | 10,584 | 9,985 | 2,419 | — | 22,988 |
| FNMA | 5,621 | 6,945 | 1,004 | — | 13,570 |
| FHLMC | — | 1,152 | — | — | 1,152 |
| FFCB | — | 1,035 | — | — | 1,035 |
| Other | — | 742 | 1,130 | — | 1,872 |
| Mortgage and asset-backed securities: | | | | | |
| GNMA | — | — | 38,964 | 45,335 | 84,299 |
| FNMA | — | 351 | 10,629 | 8,384 | 19,364 |
| FHLMC | — | 3 | 3,423 | 5,051 | 8,477 |
| Commercial mortgages | — | — | 615 | 19,182 | 19,797 |
| Asset-backed securities | 9 | 4,545 | 341 | — | 4,895 |
| Other | — | — | — | 391 | 391 |
| U.S. corporate bonds and notes | 10,509 | 58,461 | 38,018 | 4,662 | 111,650 |
| Foreign government bonds and notes | — | 1,879 | 2,397 | 133 | 4,409 |
| U.S. municipal notes | 43,821 | 4,745 | 1,338 | 1,246 | 51,150 |
| Commonwealth agency bonds and notes | — | 59,559 | — | — | 59,559 |
| Money market funds | 39,810 | 24,239 | — | — | 64,049 |
| Negotiable certificates of deposit | 309 | — | — | — | 309 |
| PRGITF | 104,013 | — | — | — | 104,013 |
| External investment pools – fixed-income securities | 2 | 37,404 | 74 | 13,694 | 51,174 |
| Nonparticipating investment contracts | — | 56,781 | — | 50,731 | 107,512 |
| Other | 64,431 | — | — | — | 64,431 |
| Total debt securities and fixed-income investment contracts | $  283,407 | 276,756 | 115,561 | 151,623 | 827,347 |
| Equity securities: | | | | | |
| U.S. corporate stocks | | | | | 278,455 |
| Non-U.S. corporate stocks | | | | | — |
| External investment pools – equity securities | | | | | 186,088 |
| Limited partnership/private equity | | | | | 63,624 |
| Total major component units | | | | | 1,355,514 |
| Total nonmajor component units | | | | | 1,376,905 |
| Total | | | | | $  2,732,419 |

136

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| | Maturity (in years) | | | | |
|---|---|---|---|---|---|
| Investment type | Within one year | After one to five years | After five to ten years | After ten years | Total |
| Reconciliation to the government-wide statement of net position: | | | | | |
| Unrestricted investments | | | | | $  1,343,964 |
| Restricted investments | | | | | 1,388,455 |
| Total | | | | | $  2,732,419 |

*Custodial Credit Risk* – The discretely presented component units had approximately $72.7 million (approximately $300 thousand and $72.4 million at major and nonmajor discretely presented component units, respectively) in various types of U.S. government and agency securities, mortgage backed securities, and other investments that were exposed to custodial credit risk as uninsured, unregistered, and held by the counterparties or by their trust departments or agents, but not in the discretely presented component units' name.

*Foreign Currency Risk* – SIFC (a major discretely presented component unit) limits its exposure to foreign currency risk by limiting the total amount invested to 10% of the portfolio. As of June 30, 2017, the SIFC had the following investments denominated in foreign currency (in thousands):

| Description | Currency | Fair value |
|---|---|---|
| Common stock | Australian dollar | $        999 |
| | Argentine peso | 493 |
| | Swiss Franc | 2,550 |
| | Danish Krone | 1,230 |
| | Euro | 8,425 |
| | British Pound | 4,138 |
| | Hong Kong Dollar | 1,063 |
| | Indonesian Rupiah | 529 |
| | Japanese Yen | 6,415 |
| | Mexican Peso | 394 |
| | Norwegian Krone | 611 |
| | Swedish Krona | 1,010 |
| | Singapore Dollar | 534 |
| | South African Rand | 550 |
| | Brazilian Real | 198 |
| Preferred stock and other equities | Euro | 1,735 |
| Total | | $      30,874 |

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

*Custodial Credit Loss on Deposits held at GDB and EDB*

Certain negotiable certificates of deposits presented in the investment tables above were deposits at GDB. As GDB served as the depository agent of these deposits, such certificates of deposits at GDB, were subject to custodial credit risk. Management determined that a custodial credit loss existed at June 30, 2017 for the deposits held at GDB. Based on an evaluation of the availability and recoverability of such deposits, a custodial credit loss on these deposits has been recorded on the corresponding discretely presented component units' basic financial statements as follows (in thousands):

| | | Certificates of Deposits Held in Governmental Banks at June 30, 2017 | | |
| --- | --- | --- | --- | --- |
| | | Carrying value before custodial credit loss | Custodial credit loss | Net carrying value |
| Major component units: | | | | |
| UPR | $ | 92,147 | (92,147) | — |
| Nonmajor component units | | 185,635 | (137,615) | 48,020 |
| Total component units | $ | 277,782 | (229,762) | 48,020 |

The aforementioned custodial credit loss was related to those discretely presented component units which issued their 2017 stand-alone basic financial statements considering the impact of the custodial credit loss. The realizable balance of the deposits held with the GDB as of June 30, 2017 was determined based on the corresponding actual collections received from the GDB on such deposits after the June 30, 2017 year end. There were no certificates of deposits in EDB as of June 30, 2017.

As discussed in Note 2(c), on November 29, 2018, GDB completed a restructuring of certain of its indebtedness pursuant to a Qualifying Modification under Title VI of PROMESA. Under the Qualifying Modification and the GDB Restructuring Act, the balance of liabilities owed between the Commonwealth and each Non-Municipal Government Entity and GDB were determined by applying the outstanding balance of any deposits held at GDB in a Non-Municipal Government Entity's name against the outstanding balance of any loan of such Non-Municipal Government Entity owed to GDB or of any bond or note of such Non-Municipal Government Entity held by GDB as of such date. As a result of this foregoing adjustment, all of the Commonwealth's deposits at GDB were extinguished as a result of the Qualifying Modification.

EDB is in the process of developing a strategy directed to restructure its obligations and operations. Upon the eventual restructuring of EDB obligations and operations.

*Subsequent Downgrades in Credit Ratings of Commonwealth's Bonds*

As explained in Note 23, beginning in fiscal year 2015, several bonds of the Commonwealth and its instrumentalities were downgraded on multiple occasions and by notches by the principal credit rating agencies in the United States. However, most of the existing investments in the tables above were not affected. Generally, the investment policies of the Commonwealth require its agencies and instrumentalities to hold only investment grade ratings debt securities in their investment portfolio. With over 85% and 81% of the investments at the Primary Government and discretely presented component unit level, respectively, with credit ratings no lower than "A" or without risks at June 30, 2017, overall average credit ratings on the entire investment portfolio have remained within the Commonwealth's required investment policies, even after the downgrades. The remaining percentage of investments is either rated throughout the B spectrum or not rated, except for a SIFC (major discretely presented component unit) investment in GDB bonds of approximately

138

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

$59.6 million and four nonmajor discretely presented component units' investments in GDB, Primary Government Bonds, and Commonwealth's Municipalities Bonds of approximately $511 million, both of which were downgraded to D after June 30, 2017.

**(7) Securities Lending and Repurchase Agreement Transactions**

During the fiscal year ending June 30, 2017, the pension trust funds (included within the fiduciary funds), GDB, and SIFC (all discretely presented component units) entered into transactions involving securities lending and the sale of securities with agreements to repurchase. These transactions are explained below:

*Pension Trust Funds*

The Retirement Systems participate in a securities lending program, whereby investment securities are transferred to an independent broker or dealer in exchange for collateral in the form of cash, government securities, and/or irrevocable bank letters of credit equal to approximately 102% of the fair value of the domestic securities on loan and 105% of the fair value of the international securities on loan, with a simultaneous agreement to return the collateral for the same securities in the future. Collateral is marked to market daily, and the agent places a request for additional collateral from brokers, if needed. The custodian bank is the agent for the securities lending program.

At year end, the Retirement Systems had no credit risk exposure to borrowers because the amounts the Retirement Systems owed the borrowers (the collateral) exceeded the amounts the borrowers owed the Retirement Systems. At June 30, 2017, the collateral received represented 102.7% of the fair value of the domestic securities lent. The securities on loan for which collateral was received as of June 30, 2017, consisted of the following (in thousands):

| Description | | Fair value of underlying securities |
|---|---|---|
| U.S. government securities: | | |
| U.S. Treasury bills | $ | 657 |
| U.S. Treasury notes | | 892 |
| U.S. government sponsored agencies notes | | 752 |
| U.S. corporate bonds and notes | | 5,058 |
| Total | $ | 7,359 |

The underlying collateral for these securities had a fair value of approximately $7.4 million as of June 30, 2017. The collateral received was invested in a money market fund sponsored by the custodian bank. As of June 30, 2017, the short-term investment fund consisted of securities purchased under agreements to resell.

Under the terms of the securities lending agreement, the Retirement Systems are fully indemnified against failure of the borrowers to return the loaned securities (to the extent the collateral is inadequate to replace the loaned securities) or failure to pay the Retirement Systems for income distributions by the securities' issuers while the securities are on loan. In addition, the Retirement Systems are indemnified against loss should the lending agent fail to demand adequate and appropriate collateral on a timely basis.

*Discretely Presented Component Units*

GDB – The Bank enters into sales of securities under agreements to repurchase. These agreements generally represent short-term borrowings and are reflected as a liability. The securities underlying these agreements are usually held by the broker or his/her agent with whom the agreement is transacted. All sales

139

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

of investments under agreements to repurchase are based on fixed terms. In investing the proceeds of securities sold under agreements to repurchase, the Bank's policy is for the term to maturity of investments to be on or before the maturity of the related repurchase agreements. As of and during the year ended June 30, 2017, there were no securities sold under agreement to repurchase.

SIFC – The Commonwealth statutes and the SIFC's board of directors' policies permit the SIFC to use its investments to enter into securities lending transactions, whereby securities are transferred to an independent broker or dealer in exchange for collateral in the form of cash, securities, and/or irrevocable bank letter of credit.

The SIFC's securities custodian, JP Morgan Chase Bank, N.A., as agent of the SIFC, manages the securities lending program and receives cash collateral, securities, or irrevocable bank letters of credit as collateral. The collateral securities cannot be pledged or sold by the SIFC unless the borrower defaults. The collateral requirement is equal to 102% for securities issued in the United States of America and 105% for securities issued outside of the United States of America, of the fair value of the securities lent. Collateral must be supplemented by the next business day if its fair value falls to less than 100% of the fair value of the securities lent. All security loans can be terminated on demand by either the SIFC or the borrower. In lending securities, the term to maturity of the securities loans is matched with the term to maturity of the investment of the cash collateral. Such matching existed at year end.

At year end, the SIFC has no credit risk exposure to borrowers because the amounts the SIFC owes the borrowers exceed the amounts the borrowers owe SIFC. Contracts with the lending agents require them to indemnify the SIFC if the borrowers fail to return the securities (and if the collateral is inadequate to replace the securities lent) or fail to pay the SIFC for income distributions by the securities' issuers while the securities are on loan.

Securities lent as of June 30, 2017 had a fair value of approximately $13.5 million and were secured with collateral received with a fair value of approximately $13.8 million. Securities lent for which cash was received as collateral as of June 30, 2017 consist of the following (in thousands):

| Investment type | | Fair value of underlying securities |
|---|---|---|
| Equity securities | $ | 5,276 |
| Corporate bonds and notes | | 6,237 |
| Foreign government and corporate bonds | | 2,003 |
| Total | $ | 13,516 |

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Cash collateral received as of June 30, 2017 amounted to approximately $13.8 million and was invested as follows (in thousands):

| Investment type | | Fair value of underlying securities |
|---|---|---|
| Certificates of deposit with other banks | $ | 1,850 |
| Resell agreements | | 11,992 |
| Total | $ | 13,842 |

In addition, the SIFC had the following lending obligations as of June 30, 2017 for which securities were received as collateral (in thousands):

| Description | | Fair value | |
|---|---|---|---|
| | | Securities lent | Investment collateral received |
| U.S. Treasury bonds and notes | $ | 1,396 | 1,425 |
| U.S. sponsored agencies bonds and notes FHLMC | | 198 | 203 |
| Equity securities | | 353 | 362 |
| | $ | 1,947 | 1,990 |

**(8)  Receivables and Payables**

*Governmental and Proprietary Funds*

Receivables in the governmental funds include approximately $1.4 billion of accrued income, excise, and sales and use taxes. Intergovernmental receivables include approximately $282.5 million from the federal government and $21.3 million from CRIM. In addition, the proprietary funds include $57.2 million of unemployment, disability, and drivers' insurance premium receivables; approximately $23.5 million receivable from private citizens, member institutions, and municipalities for patient services provided by the PRMeSA; and approximately $111.4 million receivable from the U.S. Department of Health (USDOH), municipalities and private citizens and pharmacies for the related health insurance coverage services provided by PRHIA's operations. Payables in the governmental funds include approximately $1.2 billion of trade accounts due to suppliers for purchase of merchandise and services rendered, approximately $381.5 million of salary related benefits owed to eligible police agents for annual salary increases, awards, and other monetary benefits granted to them through several laws dating back to 1954, and approximately $576.8 million of tax refunds payable.

In accordance with GASB Technical Bulletin No. 2004 1, *Tobacco Settlement Recognition and Financial Reporting Entity Issue*, as amended (the TB), a receivable of $36.3 million was recorded as other receivable in the government-wide financial statements and in the nonmajor governmental funds for estimated shipments from January 1 to June 30, 2017, which will be applied to debt service upon collection. Additionally, the TB indicated that the trust designated as the Tobacco Settlement Authority (the Children's Trust in the case of the Commonwealth) should recognize a liability for the bonds payable and an expense (and liability if unpaid) in the same period in its stand-alone basic financial statements. The expense (and liability if unpaid) recognizes the contractual obligation to remit the proceeds of the bonds sold to the settling

141

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

government (the Commonwealth). Since the Children's Trust is reported as a blended component unit, the TB indicates these remittances should be reported as transfers into the fund receiving the proceeds and transfers out of the fund that accounts for the activities of the Tobacco Settlement Authority. Since the Children's Trust has no contractual obligation, under its enabling legislation or elsewhere, to remit all bond proceeds or assets related to the Tobacco Settlement Authority to the settling government (the Commonwealth), the Children's Trust has not recognized an expense and liability for unpaid proceeds from the bonds since it records the expense as amounts are disbursed as grants to its settling government (including its instrumentalities) or third parties.

*Pension Trust Funds*

Prior to the enactment of Act 106-2017 on August 23, 2017, loans receivable from plan members were guaranteed by the contributions of plan members and by other sources, including mortgage deeds and any unrestricted amount remaining in the escrow funds. In addition, collections on loans receivable were received through payroll withholdings. The originations of mortgage loans were frozen in December 2013 and those related to personal and cultural loans were frozen in November 2016. The latest maximum amount of loans to plan members for mortgage loans was $100,000 for ERS and JRS and $125,000 for TRS, and $5,000 for personal and cultural trip loans for the three systems. During the year ended June 30, 2014 and 2013, ERS personal loans with principal balances amounting to approximately $100 million and $88 million, respectively, were sold to two financial institutions. As per the servicing agreement, ERS will be in charge of the servicing, administration and collection of loans and outstanding principal balances at the end of the closing date for a servicing fee of 2%. After August 23, 2017, pension benefits will be paid from the Primary Government's General Fund (as discussed in Note 23), and as of the date hereof, the pension trust funds are no longer in existence.

The allowance for adjustments and losses in realization is considered a general allowance for all categories of loans and interest receivable, except mortgage loans, that is a specific allowance for the special collection project loans balances.

As of June 30, 2017, the composition of loans and interest receivable from plan members is summarized as follows (in thousands):

| | | |
|---|---|---:|
| Loans receivable from plan members: | | |
| Personal | $ | 455,038 |
| Mortgage | | 321,246 |
| Cultural trips | | 39,174 |
| Total loans to plan members | | 815,458 |
| Accrued interest receivable | | 29,092 |
| Total loans and interest receivable from plan members | | 844,550 |
| Less allowance for adjustments and losses in realization | | (4,890) |
| Total loans and interest receivable from plan members – net | $ | 839,660 |

142

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

As of June 30, 2017, accounts receivable from employers, included within accounts receivable in the accompanying statement of fiduciary net position, consisted of the following (in thousands):

| | |
|---|---:|
| Early retirement programs | $ 1,865 |
| Employer contributions under special laws | 80,689 |
| Employer and employee contributions | 924,757 |
| Interest on late payments | 95,862 |
| Total accounts receivable from employers | 1,103,173 |
| Less allowance for doubtful accounts receivable | (1,067,001) |
| Accounts receivable from employers – net | $ 36,172 |

According to Act No. 447-1991, each employer must pay, on a monthly basis, the amounts corresponding to contributions and loan repayments, on or before the fifteenth day of the following month. After that date, interest is charged as established by the Retirement Systems.

The Commonwealth and many of its instrumentalities and municipalities, which are employers for the purpose of ERS and JRS, have been facing significant fiscal and economic challenges. Further, the rating downgrade and widening of credit spreads for Puerto Rico's public-sector debt, including public corporations, has put further strain on liquidity and sources of funding for the employers. Consequently, most of the receivables from employers are delinquent passed established payment dates and/or installment plan due dates. In other instances, amounts past due continue to be renegotiated to later dates.

As of June 30, 2017, ERS and JRS recorded an allowance of approximately $1.03 billion and $37 million respectively, for adjustments and losses in realization related to the uncertain collectability of the contributions due from the Commonwealth, Public Corporations and Municipalities.

Although certain measures were taken to improve the collection of such receivables, the timing of collections from employers affects the liquidity needs of ERS and JRS. Management is of the opinion that, except for the additional uniform contributions of the Commonwealth of approximately $1.03 billion due to ERS for the fiscal years 2016 and 2017 and approximately $37 million due to JRS for the fiscal year 2017, other amounts due from employers are collectible; however, this situation could ultimately affect the payment of benefits to members or repayment of ERS's bonds payable, should any such amounts become uncollectible in the future.

As of June 30, 2017, accounts receivable from employers include amounts due from PRMeSA of approximately $99.6 million (recorded within ERS), as follow (in thousands):

| | |
|---|---:|
| Employer and employee contributions | $ 57,764 |
| Withholdings of employees' loans | 7 |
| Interest | 41,807 |
| Total accounts receivable from PRMeSA | $ 99,578 |

Amounts due from PRMeSA as of June 30, 2017 mainly consist of accrued pension costs corresponding to fiscal years 2012 through 2017 amounting to approximately $99.6 million. No payment plan has been agreed to for the repayment of this debt.

On November 1, 2011, PRMeSA and ERS entered into a payment plan agreement (the Agreement) for the repayment of a debt amounting to approximately $15.3 million corresponding to fiscal year 2011. Beginning

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

on November 15, 2011, the agreement calls for sixty (60) monthly installments of $255,677 bearing no interest. Default payments of less than one year in default will bear interest at 9% and 12% for those in excess of one year. The agreement was paid in full in October 2016.

*Discretely Presented Component Units – GDB*

At June 30, 2017, loans from GDB to public corporations and agencies of the Commonwealth (excluding municipalities) amounting to approximately $6.4 billion were repayable from the following sources (in thousands):

|  |  | Amount |
|---|---|---|
| Repayment source: |  |  |
| Proceeds from future bond issuances | $ | 1,504,300 |
| General fund and/or legislative appropriations |  | 3,372,180 |
| Operating revenues |  | 1,132,986 |
| Other |  | 347,740 |
| Total | $ | 6,357,206 |

For the fiscal year ended June 30, 2017, there were no disbursements or collections of principal of public-sector loans with future bond issuances as the source of repayment. Public-sector loans payable by the Commonwealth's General Fund and/or appropriations had collections of principal amounting to approximately $23 million but had no disbursements during the year ended June 30, 2017. Public-sector loans payable to be repaid by operating revenue and other sources of repayment had disbursements and collections of principal amounting to approximately $4.3 million and $9.2 million, respectively, during the year ended June 30, 2017.

On May 23, 2016, former Governor Alejandro García Padilla proposed a $9.1 billion budget for fiscal year 2017. The proposed budget included an appropriation for the payment of the Commonwealth's debts with the Bank in the amount of $375 million. However, such appropriation was not approved by the Legislature. Rather, the approved budget included appropriations in an aggregate amount of approximately $235 million, distributed through several items, segregated between approximately $132.5 million cash appropriation that was required to be applied as payment of principal and interest of the Commonwealth's debts to the Bank, which explains the collection of public sector loans referred to in the previous paragraph; and approximately $102.5 million appropriated for the operational and program needs of different components units of the Commonwealth and disbursed to those component units, but at the same time to be applied as a non-cash application to the principal of certain of the Commonwealth's lines of credit debt with the Bank (treated for accounting purposes as a write-off in fiscal year 2017 of loans that had been already fully reserved in previous years).

At June 30, 2017, approximately $3.4 billion of the public-sector loans were payable from legislative appropriations or future tax revenue of the Commonwealth. Accordingly, the payment of these loans may be affected by budgetary constraints and the overall fiscal situation impacting Puerto Rico.

As of June 30, 2017, the PRHTA had an authorized maximum of approximately $2 billion in financing with GDB, with an outstanding balance of approximately $1.7 billion in principal. Historically, these facilities were repaid from proceeds of bond issuances. All of these facilities have been extended repeatedly and have not been paid as scheduled. On December 1, 2015, the Commonwealth announced its intention to retain certain taxes and revenues that were conditionally allocated to certain public corporations and agencies, including the PRHTA.

144

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

PRHTA is currently in a debt restructuring proceeding under Title III of PROMESA and does not currently have sufficient funds available to fully repay its various obligations, including those owed to GDB, as they come due or that are currently in default.

As of June 30, 2017, the majority of loans to public corporations and agencies totaling approximately $6.4 billion were classified as nonaccrual. Interest income that would have been recorded if under the original term of these loans amounted to approximately $400 million in fiscal year 2017.

GDB considers the public-sector loan portfolio to be impaired based on current information and events, including the significant delays in the receipt of the scheduled debt service payment mentioned above. In Management's opinion, it is highly probable that GDB will be unable to collect all amounts due according to the loan's original contractual terms, particularly in light of the Title III cases of certain borrowers. GDB's evaluation of impaired loans consisted of identifying which public-sector loans have reliable or unreliable sources of repayment, respectively. Loans with reliable sources of repayment that were performing were evaluated collectively. Loans with unreliable sources of repayment were evaluated for impairment individually. Impaired loans are measured individually based on the present value of expected future cash flows discounted at the loan's effective interest rate, or if the loan is collateral dependent, the fair value of the collateral.

During fiscal year 2017, GDB recognized a provision for loan losses of approximately $5.7 million in its public corporations and agencies loan portfolio. As of June 30, 2017, the public-sector loan portfolio had an allowance for loan losses in the amount of approximately $5.8 billion. Prior to fiscal year 2014, no charge-off has been recorded by GDB in its public-sector loan portfolio.

Loans to municipalities amounted to approximately $2.2 billion at June 30, 2017. For the year ended June 30, 2017, municipal sector loan disbursements and collections amounted to approximately $1 million and $110.4 million, respectively. These loans include approximately $1.3 billion at June 30, 2017, which are collateralized by a pledge of a portion of property tax assessments of each municipality. Loans pledged with property tax assessments include bonds and notes issued by Puerto Rico municipalities which are originated by GDB as bridge financing. Approximately $487 million in loans to municipalities at June 30, 2017, are collateralized by a pledge of a portion of municipal sales tax deposited in specially designated accounts with GDB. The funds available in such accounts increase the borrowing capacity of the corresponding municipality. Approximately $408 million in loans to municipalities at June 30, 2017, were provided mainly as interim loans to finance capital expenditures that are payable from revenues to be generated from a specific revenue generating project associated with the loan or to cover operating losses. Once operating loans are approved and if the municipality is not servicing the debt with its own funds, GDB informs the CRIM in order to withhold property taxes revenues and remit them directly to GDB before they are distributed to the municipalities. Approximately $36.5 million in municipality loans were identified as delinquent as of June 30, 2017. No interest was collected on these loans during the year ended June 30, 2017.

During fiscal year 2017, GDB recognized a release in the provision for loan losses of approximately $4 million in its municipal loans portfolio to end up with an allowance for loan losses of approximately $73.3 million at June 30, 2017.

Loans to the private sector include the outstanding principal balance of credit facilities granted by GDB and its different subsidiaries to private enterprises in Puerto Rico, the activities of which are deemed to further the economic and tourism development of Puerto Rico. Loans to the private sector also include the outstanding principal balance of mortgage loans granted to low and moderate-income families for the acquisition of single-family housing units and to developers of low- and moderate-income multifamily housing units in Puerto Rico. These credit facilities, net of allowance for loan losses, amounted to approximately $228 million at June 30, 2017, of which approximately $193 million are mortgage loans for low and

145

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

moderate-income housing units, approximately $34 million are for tourism projects and approximately $1 million are manufacturing loans. Private sector loans classified as nonaccrual amounted to approximately $158.6 million at June 30, 2017 and had a corresponding allowance for loan losses of approximately $128.6 million as of June 30, 2017. Interest income that would have been recorded if these loans had been performing in accordance with their original terms was approximately $19.6 million in 2017.

*Tax Abatements*

The Commonwealth implemented GASB Statement No. 77, *Tax Abatement Disclosures*. This Statement defines a tax abatement and requires governments that enter into tax abatement agreements to disclose certain information about the agreements. The Commonwealth enters into tax abatement agreements with local businesses for the purpose of attracting or retaining businesses within the Commonwealth. Each agreement was negotiated under a local law, which allows the Commonwealth to abate property or income taxes for a variety of economic development purposes. The abatements may be granted to local businesses located within the Commonwealth or promising to relocate within the Commonwealth. Depending on the terms of the agreement and law, abated taxes may be subject to recapture upon default of the entity. The Commonwealth is not subject to any tax abatement agreements entered into by other governmental entities. There were no amounts received or receivable from other governments; there were no government made commitments other than to reduce taxes; there were no abatements disclosed separately, and no information was omitted if required by GASB Statement No. 77. The following table represents the abated revenues for the year ended June 30, 2017:

| Name of program | Stipends received by certain physicians during their internship | Credit for construction investment in urban centers | Credit for investment in tourism development | Purchase: Tourism Development | Act 135 - 1997, Tax Incentives Law of 1998 |
|---|---|---|---|---|---|
| Purpose of program | Tax exemption of stipends to resident physicians to keep them in the public service. | Tax abatement to promote and incentive the revitalization of Urban Centers through construction of living spaces. Promote increase in property values and create jobs. | The amount of credit for tourism investment. Every investor may claim a credit for tourism investment equal to 50% of its eligible investment. | Act 78 provides 90% exemption on income from eligible tourism activities, including benefits and dividends distributed from the exempt business to his shareholders or partners, as well as distributions in liquidation. | To provide the best economic and social interests of Puerto Rico through fixed income rates of the manufacturing industry. |
| Abated tax | Individual Tax | Individual Tax | Individual Tax | Corporate Tax | Corporate Tax |
| Authorizing statute/ordinance | PR Internal Revenue Code Section 1031.02 (a) 9 | PR Internal Revenue Code Section 1051.08(b) (5) & Act 212 of 2002 | Art. 5(f) Act 78-1993 Art. 14 Act 225-1995  Schedule B  Part II Line 12 & Act 78 of 1993 | Art. 5 Act 78 -1993 | Act 135-1997 |
| Eligibility requirement | Resident doctor training at a governmental hospital facility | Project certified by the Director of Urbanism of the Department of Transportation | The business must establish a qualified project certified by the PRTC. | Every investor (including a participant) will be entitled to a credit for tourism investment in securities of a fund. | Fixed Income rate decree signed with the favorable recommendation of the Secretary of Treasury and the Executive Director |
| Type of commitment made by the recipient of the abated tax | Complete internship in a public hospital. | Provide construction services directly related to the revitalization of urban centers. | Invest in the development of the local tourism industry. | Invest in the development of the local tourism industry. | Invest in the development of the local manufacturing industry. |
| How tax is reduced | Income Tax Credit | Income tax Credit | Income tax Credit | Credit for tourism investment equal to 50% of their eligible investment or their investment in securities of a fund, to be taken in 2 terms: The first half of said credit in the year in which the exemption is obtained and the balance of said credit, in the following year. | Reduction of Tax |
| Determination of abated tax | Abated tax amount  determined by law | Abated tax percentage determined by law | Abated tax percentage determined by law | Abated tax percentage determined by law | Abated tax rate established by decree |
| Recapture agreement | none | none | none | none | none |
| Gross dollar amount of reduced tax | $                    2,300,000 | $                    1,200,000 | $                  11,100,000 | $                    2,500,000 | $            15,691,500,000 |

DRA Ex. 242

# COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

| Name of program | Act 225 - 1995, Law on Agricultural Contributive Incentives of PR | Act 22 - 2012 Transfers of Investors to Puerto Rico | Credit for purchases of products manufactured in Puerto Rico | Credit for investment in film industry development (Act 27-2011). | Act 20 - 2012, Export Services |
|---|---|---|---|---|---|
| Purpose of program | The Act establishes the requirements to qualify the "bona fide"farmers and exempt them from the payment of all kinds of taxes on movable and real property, municipal license tax, taxes, income taxes, excise taxes and all municipal and/or state taxes or fees. | To attract new residents to Puerto Rico by providing a total exemption from Puerto Rico income taxes on all passive income realized or accrued after such individuals become bona fide residents of Puerto Rico. | Incentivize the manufacturing industry and local suppliers | To encourage the use of the state as a site for filming, for the digital production of films, and to develop and sustain the workforce and infrastructure for film, digital media, and entertainment production. | Act to promote the exportation of services, provides attractive tax incentives for companies that establish and expand their export services businesses in the island. In addition, the law promotes investments on research and development and initiatives from the academic and private sectors by granting credits and exemptions for these activities. |
| Abated tax | CorporateTax | CorporateTax | CorporateTax | Individual Tax | Individual Tax |
| Authorizing statute/ordinance | Act 225 - 1995 | Act 22 -2012 | Section 5(a)(1), Act 73 - 2008 | Section 7.3 Act 27-2011 | Act 20-2012 |
| Eligibility requirement | Certification of Agricultural Bonafide Operation by the Department of Agriculture | Relocation to Puerto Rico and a full-time resident as defined by law. | Exempt business that has a decree granted under this Act or under the previous incentive laws, must buy products manufactured in Puerto Rico, including components and accessories. | Investment certified by the Auditor as disbursed in relation to Production Expenses of Puerto Rico, not including payments made to Non-Resident Talent | Relocate operations to Puerto Rico |
| Type of commitment made by the recipient of the abated tax | 50% or more of its income must derive from the agriculture industry. | Transfer operations to Puerto Rico. | Purchase raw materials from local businesses. | Invest in the development of the local film industry. | Maintain operations and export services operating from Puerto Rico |
| How tax is reduced | Reduction of Tax | Reduction of Tax | Twenty-five percent (25%) of the purchases of such products, during the taxable year in which the referred credit is taken, up to a maximum of fifty percent (50%) of the aforementioned contribution. | Reduction of Tax | Reduction of tax rate |
| Determination of abated tax | Abated tax percentage determined by law | Abated tax percentage determined by law | Abated tax rate established by decree | Abated tax percentage determined by law | Abated tax determined by law and decree approval |
| Recapture agreement | none | none | none | none | none |
| Gross dollar amount of reduced tax | $        11,100,000 | $        29,000,000 | $        33,300,000 | $        6,000,000 | $       111,300,000 |

**(9) Conditionally Allocated Receivables and Future Revenue**

**(a) COFINA Revenues**

Prior to the enactment of Act No. 241-2018 and confirmation of the COFINA Plan of Adjustment in February 2019, Act No. 91-2006 established the Dedicated Sales Tax Fund, a special revenue fund held by COFINA. Act No. 91-2006 required that the greater of the following amounts be deposited in the Dedicated Sales Tax Fund each fiscal year for the payment of COFINA bonds: (i) a minimum fixed amount, referred to as the Pledged Sales Tax Base Amount and (ii) the revenue generated by up to 2.75% of the Commonwealth's sales and use tax. On October 9, 2013, an amendment to Act No. 91-2006 was signed into law which increased from 2.75% to 3.50% the portion of the Pledged Sales Tax Base Amount deposited in the Dedicated Sales Tax Fund.

On February 5, 2019, the Title III Court confirmed the COFINA Plan of Adjustment (as discussed in Note 17), which became effective on February 12, 2019. The COFINA Plan of Adjustment together with Act 241-2018 adjusted COFINA's debts, which resulted in COFINA issuing new bonds (the New COFINA Bonds). The COFINA Plan of Adjustment also incorporated a settlement agreement between the Commonwealth and COFINA that, among other things, allocated 53.65% of the original Pledged Sales Tax Base Amount (as defined in the COFINA Plan of Adjustment) to COFINA (the COFINA Revenues) and 46.35% to the Commonwealth, thereby reducing the portion allocated to a segregated fund or funds owned by COFINA into which the COFINA Revenues are deposited (the COFINA Revenues Fund). The New COFINA Bonds issued under the COFINA Plan of Adjustment are secured by a statutory lien on the COFINA Revenues. In addition, the consummation of the COFINA Plan of Adjustment quieted COFINA's title to the COFINA Revenues, definitely resolving as a legal matter all questions of title to those revenues and COFINA's sole and exclusive ownership of them.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The Pledged Sales Tax Base Amount in fiscal year ended June 30, 2017 amounted to approximately $724.1 million. For fiscal year 2017, debt service paid by COFINA amounted to approximately to $708.8 million.

**(b)   PRIFA Allocated Revenue**

The following revenue (collectively, the PRIFA Allocated Revenue) has been conditionally allocated by the Commonwealth to PRIFA, subject to the provisions of Article VI, Section 8, of the Commonwealth's Constitution. As further discussed in Note 2 and Note 23, the PRIFA Allocated Revenues are currently being retained by the Commonwealth.

**(i)   Federal Excise Taxes**

Rum manufactured in Puerto Rico is subject to federal excise taxes once exported to the United States; however, such excise taxes are returned by the Internal Revenue Service (IRS) to the Commonwealth. Act No. 44-1988, as amended (the PRIFA Act), conditionally allocates the first $117 million of these federal excise taxes received by the Commonwealth be transferred to PRIFA, a blended component unit of the Commonwealth, each fiscal year. Historically, a portion of this first $117 million of federal excise taxes were used for the repayment of PRIFA's Special Tax Revenue Bonds. Receipt of the federal excise taxes is subject to a number of factors, including the continued imposition and remittance of such taxes to the Commonwealth and conditions affecting the Puerto Rico rum industry. The amount of federal excise taxes to be received by the Commonwealth is currently expected to decrease, although the exact amount cannot be determined. If federal excise taxes received by the Commonwealth in any fiscal year are less than $117 million, the PRIFA Act requires that PRIFA request, and the Director of the Commonwealth OMB include in the budget of the Commonwealth for the corresponding fiscal year, an appropriation sufficient to cover such deficiency. The Legislature, however, is not required to make such appropriation. For the year ended June 30, 2017, the $117 million conditionally allocated by Act No. 44-1988 was not appropriated to PRIFA.

**(ii)   Petroleum Products Tax**

The PRIFA Act and the Puerto Rico Internal Revenue Code of 2011, as amended (the Puerto Rico Code) imposes a petroleum products tax on nondiesel products ($6.25 per barrel initially) and to allocate the revenue therefrom to PRIFA to be used for payment of certain of its bonds and notes, in particular, the Dedicated Tax Fund Revenue Bond Anticipation Notes (the PRIFA BANs) issued on March 16, 2015 to redeem certain PRHTA BANs. For fiscal year 2017, debt service paid on the PRIFA BANs amounted to $13.3 million, composed of $12.7 million in principal and $625 thousand in interest.

**(c)   PRHTA Allocated Revenue**

The following revenues (collectively, the PRHTA Allocated Revenues) have been conditionally allocated by the Commonwealth to PRHTA, subject to the provisions of Article VI, Section 8 of the Commonwealth's Constitution. As further discussed in Note 2 and Note 23, prior to May 3, 2017, the PRHTA Allocated Revenues were retained by the Commonwealth pursuant to Article VI, Section 8 of the Commonwealth's Constitution. Subsequent to the filing of the Commonwealth's Title III case on May 3,

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

2017, the PRHTA Allocated Revenues have been retained by the Commonwealth for numerous reasons, including application of the automatic stay under Title III of PROMESA.

*(i)   Gasoline and Gas Oil Taxes*

The Puerto Rico Code currently imposes a $0.16 per gallon tax on gasoline and a $0.04 per gallon tax on gas oil and diesel oil. By law, the Commonwealth has conditionally allocated the entire $0.16 tax on gasoline and $0.04 tax on gas oil and diesel oil to PRHTA as a source of revenue.

*(ii)   License Fees*

Under Act No. 22-2000, as amended, known as the "Vehicle and Traffic Law," the Commonwealth imposes annual license fees on various classes of motor vehicles. Fifteen dollars ($15) of each such annual license fee was conditionally allocated to PRHTA to be used as a source of revenue. Act No. 30-2013 conditionally assigned the remaining twenty-five dollars ($25) of each such annual license fee to PRHTA.

*(iii)   Petroleum Products Tax*

The Puerto Rico Code also allocates to PRHTA $9.50 per barrel or fraction thereof of petroleum products excise tax (which include crude oil, unfinished oil, and derivative products). The tax is imposed on any petroleum product introduced, consumed, sold, or transferred in the Commonwealth.

*(iv)   Cigarette Tax*

A portion of the proceeds of the cigarette tax imposed by Section 3020.05 of the Puerto Rico Code (approximately $20 million) has been conditionally allocated to PRHTA.

**(d)   PRCCDA Allocated Revenue**

Article 24 of Act No. 272-2003, as amended, imposes a hotel occupancy tax on all hotels and motel accommodations on the island (the Hotel Occupancy Tax). A portion of the proceeds of the Hotel Occupancy Tax (the PRCCDA Allocated Revenue) has been conditionally allocated to PRCCDA for the payment of PRCCDA's bonds, subject to the provisions of Article VI, Section 8 of the Commonwealth's Constitution. As further discussed in Note 2 and Note 23, the PRCCDA Allocated Revenues are currently being retained by the Commonwealth.

**(e)   PRMBA Allocated Revenue**

A portion of the proceeds of the cigarette tax imposed by Section 3020.05 of the Puerto Rico Code (the PRMBA Allocated Revenue) has been conditionally allocated to PRMBA for the payment of certain PRMBA debt obligations, subject to the provisions of Article VI, Section 8, of the Commonwealth's Constitution. As further discussed in Note 2 and Note 23, the PRMBA Allocated Revenues are currently being retained by the Commonwealth.

**(f)   The Children's Trust Revenue**

The Children's Trust is a public trust ascribed to GDB, created pursuant to Act No. 173-1999. Through Act No. 173-1999, the Commonwealth conditionally allocated and transferred to the Children's Trust all of its rights, title, and interest in a settlement agreement entered into by and among the Commonwealth, 46 states and several cigarette manufacturers (the Tobacco Settlement Agreement), including the Commonwealth's right to receive certain annual payments from such cigarette manufacturers (the TSRs). The TSRs, otherwise deliverable to the General Fund, were conditionally allocated to the Children's Trust in consideration of the issuance of bonds by the Children's Trust and the application of the proceeds thereof to fund certain social programs.

149

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*(g)* *Executive Order OE–2015 046 (Clawback)*

On December 1, 2015, Executive Order No. 46 was signed, which ordered the Secretary of the DOT to retain certain revenues in light of revised revenue estimates for fiscal year 2017 and the Commonwealth's deteriorating liquidity situation. Pursuant to Executive Order No. 46, certain available resources of the Commonwealth conditionally allocated to PRIFA, PRHTA, PRMBA and PRCCDA to pay debt service on their obligations and to provide operational support continue to be retained by the Commonwealth (commonly referred to as the "clawback"), pursuant to Article VI, Section 8 of the Constitution of the Commonwealth and the statutory provisions pursuant to which such revenues were assigned to the applicable public corporations.

**(10)  Interfund and Intraentity Activity**

Interfund receivables and payables at June 30, 2017 are summarized as follows (in thousands):

| Receivable fund | Payable fund | | |
|---|---|---|---|
| Nonmajor governmental | COFINA Debt Service | $ | 141,562 |
| Nonmajor proprietary | General | | 38,702 |
| PRMeSA | General | | 34,449 |
| Nonmajor governmental | General | | 16,591 |
| General | Unemployment insurance | | 7,147 |
| Nonmajor proprietary | Nonmajor governmental | | 3,996 |
| PRHIA | General | | 1,931 |
| | | $ | 244,378 |

Transfers from (to) other funds for the year ended June 30, 2017 are summarized as follows (in thousands):

| Transferee fund | Transferor fund | | |
|---|---|---|---|
| PRHIA (a) | General | $ | 891,942 |
| Nonmajor governmental (b) | General | | 388,279 |
| General (c) | Nonmajor proprietary | | 175,174 |
| General (d) | Unemployment Insurance | | 43,854 |
| PRMeSA (e) | General | | 41,350 |
| Nonmajor proprietary (f) | General | | 10,386 |
| Nonmajor governmental (g) | COFINA Debt Service | | 9,511 |
| COFINA Special Revenue (h) | COFINA Debt Service | | 6,373 |
| | | $ | 1,566,869 |

The principal purposes of the interfund transfers are to (in thousands):

(a)  Transfer of $891,942 from the General Fund to PRHIA to provide funds to cover operational expenditures.

(b)  Recognize as transfers the rental payments made by the Commonwealth's agencies on properties leased by the PBA, a blended component unit of the Commonwealth amounting to ($167,708); ($72,687) related to the revenues received from the Tobacco Settlement Agreement managed by The Children's Trust, a blended component unit of the Commonwealth; ($25,850) to PRIFA for the payment of debt and capital projects; ($65,717) to UPRCCC and ($38,814) to FAFAA to provide funds to cover operational expenditures and ($17,503) to the Capital Projects Fund to cover capital related expenditures.

(c)  Transfer of ($171,446) from the Lotteries, a nonmajor proprietary fund, to the General Fund to distribute the increase in net assets of the Lotteries for the use of the General Fund, as required by the Lotteries enabling legislation; ($1,400) related to the distribution of surplus cash to the General Fund from Disability

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

and Drivers' Insurance Funds and ($2,328) to reimburse the General Fund for expenses assistance provided on emergency calls services from the Bureau of Emergency Services 9-1-1.

(d) Transfer of $43,854 from the Unemployment Insurance Fund related to the distribution of surplus cash corresponding to the General Fund for the payment of administrative expenses.

(e) Transfer of $41,350 from the General Fund to PRMeSA, a major proprietary fund, to make funds available for debt service payments, capital projects and operational expenditures.

(f) Transfer from the General Fund to the P WPCRF and to the PRSDWTRLF, nonmajor proprietary funds, to provide local matching funds ($4,638 and $2,358, respectively) and from the General Fund to Ponce Ports Authority, a nonmajor proprietary fund, to provide funds to cover operational expenditures ($3,390).

(g) Recognize as transfers $9,511 of interest income earned by PRIFA, a blended component unit, on its investment on bonds issued by COFINA, another blended component unit, where an interest expense is incurred by the same amount.

(h) Transfer $6,373 from the COFINA Debt Service Fund to the COFINA Special Revenue Fund to be transferred to the General Fund to make funds available for debt service payments.

Interfund receivables and payables represent the pending settlements of the aforementioned transfers or transactions from current and prior years.

Amounts due to the Primary Government from discretely presented component units were as follows (in thousands):

| Payable entity | | Receivable entity | | | |
| --- | --- | --- | --- | --- | --- |
| | | General fund | Nonmajor governmental | Nonmajor proprietary | Total due from component units |
| Major component units: | | | | | |
| PRASA | $ | — | — | 581,276 | 581,276 |
| PREPA | | — | 2,259 | — | 2,259 |
| PRHTA | | 1,321 | — | — | 1,321 |
| SIFC | | 7,200 | — | — | 7,200 |
| Nonmajor component units | | 108,479 | 26,985 | — | 135,464 |
| Subtotal due from component units | | 117,000 | 29,244 | 581,276 | 727,520 |
| Allowance for uncollectible balances | | (108,559) | (26,985) | (133,100) | (268,644) |
| | $ | 8,441 | 2,259 | 448,176 | 458,876 |

The amount owed by PRASA of approximately $581.3 million represents construction loans granted by the PWPCRF and the PRSDWTRLF, nonmajor proprietary funds, to finance the construction of capital assets for PRASA. PRASA has not made the required payments under the debt agreement related to this debt (see Note 2).

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Amounts due to discretely presented component units from the Primary Government were as follows (in thousands):

| Receivable entity | Payable entity | | | | | |
|---|---|---|---|---|---|---|
| | General fund | Nonmajor governmental funds | PRMeSA | Total due to component units | Allowance for uncollectible balances | Total due to component units (net) |
| Major component units: | | | | | | |
| PREPA | $ 35,506 | 3,342 | 29,217 | 68,065 | (28,791) | 39,274 |
| PRASA | 29,110 | — | 3,706 | 32,816 | (15,022) | 17,794 |
| UPR | 20,095 | 3,583 | 44,655 | 68,333 | (64,496) | 3,837 |
| PRHTA | 14,370 | — | — | 14,370 | (1,653) | 12,717 |
| Nonmajor component units | 56,717 | — | — | 56,717 | (11,000) | 45,717 |
| Total due to component units | $ 155,798 | 6,925 | 77,578 | 240,301 | (120,962) | 119,339 |

Amounts due from (to) discretely presented component units were as follows (in thousands):

| Payable entity | Receivable entity Major component units | | | | | Nonmajor component units | Total due to component units |
|---|---|---|---|---|---|---|---|
| | GDB | PRHTA | PREPA | PRASA | UPR | | |
| Major component units: | | | | | | | |
| PRHTA | $ 1,933,698 | — | 47,154 | — | — | 9,528 | 1,990,380 |
| UPR | 87,166 | — | 11,669 | — | — | — | 98,835 |
| PRASA | 65,550 | — | 27,933 | — | — | — | 93,483 |
| PREPA | 35,846 | — | — | 4,012 | — | — | 39,858 |
| SIFC | — | — | 1,300 | — | — | — | 1,300 |
| Nonmajor component units | 1,082,751 | 32,526 | 58,258 | 17,682 | 5,026 | 56,422 | 1,252,665 |
| Subtotal due from component units | 3,205,011 | 32,526 | 146,314 | 21,694 | 5,026 | 65,950 | 3,476,521 |
| Allowance for uncollectible balances | (2,824,808) | (32,526) | (84,627) | (18,721) | — | (46,329) | (3,007,011) |
| Total due from component units (net) | $ 380,203 | — | 61,687 | 2,973 | 5,026 | 19,621 | 469,510 |

The amount due from discretely presented component units presented by GDB of approximately $3.2 billion (before allowance for uncollectible accounts) represents loan balances owed to GDB by other Commonwealth's discretely presented component units. The rest of the loans receivable reported by the GDB consists of the following (in thousands):

| | |
|---|---|
| Primary government – governmental activities | $ 2,512,845 |
| Primary government – business-type activities | 486,559 |
| Other governmental entities and municipalities | 2,355,617 |
| Private sector, net of allowance for loan losses | 228,214 |
| Total loans receivable reported by GDB | 5,583,235 |
| Less allowance for public sector loans | (3,023,029) |
| | $ 2,560,206 |

The loans to the Primary Government are presented by the Commonwealth within notes payable in the statement of net position.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Expenses of the Primary Government include capital and operational contributions made by the Primary Government to the discretely presented component units during the year ended June 30, 2017 were as follows (in thousands):

| | | |
|---|---|---:|
| UPR | $ | 872,193 |
| PRHTA | | 140,339 |
| Nonmajor components units | | 235,333 |
| Total contributions made by primary government to component units | $ | 1,247,865 |

## (11) Capital Assets

Capital assets activity for the year ended June 30, 2017 was as follows (in thousands):

*Primary Government*

| | Beginning balance (as restated) | Increases | Decreases | Ending balance |
|---|---:|---:|---:|---:|
| Governmental activities: | | | | |
| Land and other nondepreciable assets: | | | | |
| Land | $ 936,891 | 1,155 | 5,133 | 932,913 |
| Construction in progress | 1,345,319 | 99,798 | 352,405 | 1,092,712 |
| Total land and other nondepreciable assets | 2,282,210 | 100,953 | 357,538 | 2,025,625 |
| Buildings and building improvements | 10,104,676 | 273,021 | 91,379 | 10,286,318 |
| Equipment, furniture, fixtures, vehicles, and software | 766,030 | 71,455 | 8,458 | 829,027 |
| Infrastructure | 599,682 | 13,258 | — | 612,940 |
| Total other capital assets, being depreciated and amortized | 11,470,388 | 357,734 | 99,837 | 11,728,285 |
| Less accumulated depreciation and amortization for: | | | | |
| Buildings and building improvements | 4,242,114 | 255,321 | 75,748 | 4,421,687 |
| Equipment, furniture, fixtures, vehicles, and software | 616,486 | 43,828 | 7,433 | 652,881 |
| Infrastructure | 192,046 | 13,075 | — | 205,121 |
| Total accumulated depreciation and amortization | 5,050,646 | 312,224 | 83,181 | 5,279,689 |
| Total other capital assets, net of depreciation and amortization | 6,419,742 | 45,510 | 16,656 | 6,448,596 |
| Governmental activities capital assets, net | $ 8,701,952 | 146,463 | 374,194 | 8,474,221 |

153

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| | Beginning balance | Increases | Decreases | Ending balance |
|---|---|---|---|---|
| Business-type activities: | | | | |
| Land and other nondepreciable assets: | | | | |
| Land | $ 36,005 | — | — | 36,005 |
| Construction in progress | 3,339 | — | 3,339 | — |
| Total capital assets, not being depreciated | 39,344 | — | 3,339 | 36,005 |
| Building and building improvements | 108,560 | 3,448 | — | 112,008 |
| Equipment | 94,768 | 3,078 | 2,327 | 95,519 |
| Total other capital assets being depreciated and amortized | 203,328 | 6,526 | 2,327 | 207,527 |
| Less accumulated depreciation and amortization for: | | | | |
| Building and building improvements | 69,479 | 2,415 | 206 | 71,688 |
| Equipment | 80,023 | 4,513 | 1,947 | 82,589 |
| Total accumulated depreciation and amortization | 149,502 | 6,928 | 2,153 | 154,277 |
| Total business-type activities other capital assets, net of depreciation and amortization | 53,826 | (402) | 174 | 53,250 |
| Total business-type activities capital assets, net | $ 93,170 | (402) | 3,513 | 89,255 |

Depreciation and amortization expense were charged to functions/programs of the Primary Government for the year ended June 30, 2017 as follows (in thousands):

| Governmental activities: | |
|---|---|
| General government | $ 111,692 |
| Public safety | 31,559 |
| Health | 10,290 |
| Public housing and welfare | 117,105 |
| Education | 23,783 |
| Economic development | 17,795 |
| Total depreciation and amortization expense – governmental activities | $ 312,224 |

154

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The Commonwealth annually performs an impairment analysis of its capital assets in accordance with the provisions of GASB Statement No. 42. The current year's analysis identified approximately $2.4 million of impaired assets, a loss was recognized by the Governmental Activities in the Statement of Activities for the year ended June 30, 2017.

General infrastructure assets include approximately $427 million representing costs of assets transferred to the DNER of the Commonwealth (at cost) in 1997 upon completion of the Cerrillos Dam and Reservoir and the Portugues River and Bucana River Projects (the Cerrillos Dam and Reservoir Project) by the United States (U.S.) Army Corps of Engineers. These infrastructure assets are reported within Governmental Activities and include dams, intake facilities, and similar items built for flood control, water supply, and recreational purposes. The depreciation is computed using the straight-line method over an estimated useful life of 50 years from the transfer date of the property. Late in April 2011, the Commonwealth received a final debt agreement from the U.S. Army Corps of Engineers establishing a repayment schedule for its allocated share of the construction costs associated with the Cerrillos Dam and Reservoir Project, excluding those costs for items built for recreational purposes, amounting to approximately $214 million. On March 21, 2014, the debt agreement with the U.S. Army Corps of Engineers was modified to reduce the interest rate and the annual payment for the remaining term of the debt. (see Note 13(o)).

On February 24, 2012, PRIFA, a blended component unit, entered into an Assistance Agreement with the Puerto Rico Department of Justice (PRDOJ) and GDB to acquire, refurbish, and operate a property to be used for the relocation of the PRDOJ's main offices. In connection with the Assistance Agreement, GDB provided a $35 million credit facility to PRIFA to undertake the acquisition and administration of this property and manage the initial phase of the rehabilitation and refurbishment of the property. On March 8, 2012, PRIFA acquired the property for approximately $27 million. The relocation of the PRDOJ's main offices never materialized but PRIFA has been working with gradually securing lease agreements with other governmental entities and third parties. The credit facility is secured by a mortgage lien on the property and is payable from future appropriations from the Commonwealth and from the assignment of current and any future lease agreement.

PRIFA has also issued certain bonds and notes to finance the construction of certain capital projects for the benefit of PRASA, municipalities and other agencies and instrumentalities of the Commonwealth. The capital projects include the construction of infrastructure and buildings to be used in the operations of, and managed by, PRASA, the municipalities and other agencies in their respective operations. The capital projects, including the land acquired, are included as part of PRIFA's capital assets until construction is completed and the conditions for transfers to the ultimate beneficiaries are met. During the year ended June 30, 2017, PRIFA incurred approximately $2.5 million in construction costs for the benefit of other instrumentalities of the Commonwealth.

In October 2010, PRIFA entered into a memorandum of understanding with PPPA, PBA, DOE, DTPW and GDB for the administration of the Schools for the 21st Century Program (the 21st Century Program). Construction in process at June 30, 2017 includes approximately $0.06 million related to this program. The program consists of remodeling over 100 schools throughout Puerto Rico. To finance the program, the PBA issued government facilities revenue bonds in the amount of $878 million during the fiscal year ended June 30, 2012 of which $10.7 million are deposited in construction funds within PBA's capital project fund at June 30, 2017.

155

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Discretely Presented Component Units*

Capital assets activity for discretely presented component units for the year ended June 30, 2017 is as follows (in thousands):

| | Beginning balance (as restated) | Increases | Decreases | Ending balance |
|---|---|---|---|---|
| Land and other nondepreciable assets: | | | | |
| Land | $  2,230,964 | 2,591 | 2,939 | 2,230,616 |
| Construction in progress | 1,273,356 | 387,087 | 325,671 | 1,334,772 |
| Total capital assets not being depreciated/ amortized | 3,504,320 | 389,678 | 328,610 | 3,565,388 |
| Depreciable assets: | | | | |
| Buildings and building improvements | 1,613,763 | 32,367 | 15,501 | 1,630,629 |
| Equipment, furniture, fixtures, vehicles, and software | 2,264,166 | 78,686 | 65,885 | 2,276,967 |
| Infrastructure | 40,898,402 | 344,927 | 96,014 | 41,147,315 |
| Total other capital assets, being depreciated/ amortized | 44,776,331 | 455,980 | 177,400 | 45,054,911 |
| Less accumulated depreciation/ amortization for: | | | | |
| Buildings and building improvements | 3,667,311 | 315,908 | 5,426 | 3,977,793 |
| Equipment, furniture, fixtures, vehicles, and software | 969,967 | 80,149 | 8,713 | 1,041,403 |
| Infrastructure | 18,377,707 | 918,557 | 40,214 | 19,256,050 |
| Total accumulated depreciation/ amortization | 23,014,985 | 1,314,614 | 54,353 | 24,275,246 |
| Total other capital assets, net of depreciation and amortization | 21,761,346 | (858,634) | 123,047 | 20,779,665 |
| Nonmajor component units | 3,338,610 | 134,976 | 202,807 | 3,270,779 |
| Capital assets (net) | $  28,604,276 | (333,980) | 654,464 | 27,615,832 |

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

## (12) Short-Term Obligations

Short-term obligations at June 30, 2017 and changes for the year then ended were as follows (in thousands):

| | Balance at June 30, 2016 | Debt issued | Debt paid | Balance at June 30, 2017 |
|---|---|---|---|---|
| Governmental activities: | | | | |
| Notes payable to GDB | $ 1,700 | — | — | 1,700 |
| Tax revenue anticipation notes | — | 400,000 | — | 400,000 |
| | $ 1,700 | 400,000 | — | 401,700 |

### (a) Notes Payable to GDB

The Commonwealth has entered into a short-term line of credit agreements with GDB (all within Governmental Activities) consisting of the following at June 30, 2017 (in thousands):

| Agency | Purpose | Interest rate | Line of credit | Outstanding balance |
|---|---|---|---|---|
| PA | To finance terms of consent decree agreement | 150 bp over PRIME with floor of 6% and ceiling of 12% | $ 1,700 | 1,700 |
| | | | $ 1,700 | 1,700 |

### (b) Tax Revenue Anticipation Notes

Act No. 1-1987, authorizes the Secretary of the DOT to issue notes to either private or governmental institutions, in anticipation of taxes and revenue (Tax Revenue Anticipation Notes or TRANs) as an alternate means of providing liquidity to cover any temporary cash shortages projected for a fiscal year. Act No. 139-2005, amended Section 2(g) of Act No. 1-1987 to provide that the total principal amount of notes issued under the provisions of Act No. 1-1987 and outstanding at any time for any fiscal year may not exceed the lesser of eighteen percent (18%) of the net revenue of the General Fund for the fiscal year preceding the fiscal year in which the notes are issued or $1.5 billion.

On September 6, 2016, the Commonwealth renewed the "intra governmental" TRANs for fiscal year 2017, in the aggregate principal amount of $400 million with the SIFC, AACA and the Disability Insurance Fund, also at the interest rate of 6%. On April 28, 2017, the Commonwealth acknowledged that it would be unable to pay the principal and interest payments on the TRANs notes as they become due and entered into a forbearance agreement with SIFC, AACA, and Disability Insurance Fund. The forbearance period expired on June 30, 2018. The repayment has not been made and the forbearance period has not been extended.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

## (13) Long-Term Obligations

*Primary Government*

Long-term obligations at June 30, 2017 and changes for the year then ended were as follows (in thousands):

| | Balance at June 30, 2016 as restated | Debt issued | Debt paid | Other increases | Other (decreases) | Balance at June 30, 2017 | Due within one year |
|---|---|---|---|---|---|---|---|
| Governmental activities: | | | | | | | |
| Commonwealth appropriation bonds $ | 570,164 | — | — | — | (418) | 569,746 | 68,074 |
| General obligation and revenue bonds | 36,996,849 | — | (154,176) | 372,353 | (44,635) | 37,170,391 | 1,138,456 |
| Bond purchase agreement with GDB | 225,534 | — | — | — | — | 225,534 | — |
| Notes payable to component units: | | | | | | | |
| GDB | 2,411,310 | — | (23,245) | — | (102,454) | 2,285,611 | 393,281 |
| Other | 102,000 | — | — | — | — | 102,000 | — |
| Note payable to financial institution | 23,764 | — | — | — | — | 23,764 | 9,505 |
| Liability under guaranteed obligation | 360,739 | — | — | 13,857 | — | 374,596 | — |
| Capital leases | 344,095 | 364 | (8,956) | 111 | — | 335,614 | 8,614 |
| Compensated absences | 1,339,221 | — | — | — | (787,428) | 551,793 | 232,819 |
| Voluntary termination benefits payable | 682,750 | — | — | 175,476 | (74,220) | 784,006 | 87,564 |
| Net pension liability | 36,850,153 | — | — | 6,403,680 | (708,842) | 42,544,991 | 170,259 |
| Other postemployment benefit obligation | 265,012 | — | — | 131,450 | (126,275) | 270,187 | — |
| Other long-term liabilities | 2,414,814 | 64,234 | (210,001) | — | (419,659) | 1,849,388 | 220,573 |
| Total governmental activities | 82,586,405 | 64,598 | (396,378) | 7,096,927 | (2,263,931) | 87,087,621 | 2,329,145 |
| Business-type activities: | | | | | | | |
| Notes payable to GDB | 486,559 | — | — | — | — | 486,559 | 62,000 |
| Compensated absences | 22,588 | — | — | 8,203 | (11,866) | 18,925 | 11,851 |
| Obligation for unpaid lottery prizes | 172,161 | — | — | 486,662 | (511,206) | 147,617 | 61,543 |
| Voluntary termination benefits | 8,948 | — | — | — | (1,756) | 7,192 | 1,287 |
| Net pension liability | 713,957 | — | — | 142,898 | (47,189) | 809,666 | — |
| Other postemployment benefit obligation | 1,834 | — | — | — | (1,834) | — | — |
| Liability for unemployment, disability and health insurance | 170,051 | — | — | 124,877 | (204,715) | 90,213 | 90,213 |
| Other long-term liabilities | 73,460 | — | — | 28,311 | — | 101,771 | 99,578 |
| Total business-type activities | 1,649,558 | — | — | 790,951 | (778,566) | 1,661,943 | 326,472 |
| Total primary government $ | 84,235,963 | 64,598 | (396,378) | 7,887,878 | (3,042,497) | 88,749,564 | 2,655,617 |

Each of the long-term obligations described in this section do not take into account the impact of the Title III cases on the priority or timing of payments that may be owed to any creditors of the Commonwealth, its instrumentalities, or its public corporations. The above schedule has been presented in accordance with original terms of the bonds payable and do not reflect the effects, if any, that may result from the PROMESA Title III proceedings or any other debt restructuring proceeding. Accordingly, the effects of the PROMESA Title III cases or any other debt restructuring proceeding may affect the carrying amounts, interest rates and the repayment terms. See Note 3 and Note 23 for additional information.

The principal balance of general obligation and revenue bonds paid reported as expenditures in the statement of revenue, expenditures, and changes in fund balances (deficit) – governmental funds do not agree with amounts reported as debt paid in the table above. The balance paid includes principal paid the first of July of each year, which was accrued at June 30 of prior year, as a fund liability. U.S. GAAP allows accrual of debt service liabilities and expenditures if a government has provided financial resources to a debt service fund for payment of liabilities that will mature within a month in the following fiscal year. As a result of the economic and liquidity challenges that the Commonwealth faced during the last two fiscal years, the Commonwealth

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

had no funds available at June 30, 2017 for debt service payment due on July 1, 2017. Based on the above, approximately $733 million related to interest was accrued as a fund liability at June 30, 2017 and $448 million principal was accrued as a fund liability at June 30, 2017.

Please refer to Note 13(e) and Note 14(a) for detailed information regarding the liability under guaranteed obligation. The remaining balance of the other increases (decreases) in bonds and notes consists of capitalization of interest on capital appreciation bonds (increases) and amortization of premiums (decreases) and accretion of discounts (increases) on bonds. These adjustments did not require any source or use of cash.

Accrual adjustments for fiscal year 2017 were made to reconcile various obligations with the new estimated balances at June 30, 2017, and other decreases resulting from payments on these obligations made during the fiscal year. These obligations include compensated absences, net pension liabilities, other postemployment benefit obligation, voluntary termination benefits, other long-term liabilities, obligation for unpaid lottery prizes, and claims liability for insurance benefits. These payments, as pertaining to Governmental Activities, are included not as principal payments in the statement of revenue, expenditures, and changes in fund balances (deficit) – governmental funds, but as expenses within their corresponding functions.

*(a) Debt Limitation and Arbitrage*

The Constitution of the Commonwealth authorizes the contracting of debts as determined by the Legislature. Nevertheless, Section 2, Article VI of the Constitution of the Commonwealth provides that direct obligations of the Commonwealth evidenced by bonds or notes and backed by the full faith, credit, and taxing power of the Commonwealth should not be issued if the amounts of the principal of and interest on such bonds and notes and on all such bonds and notes issued thereafter, which are payable in any fiscal year, together with any amount paid by the Commonwealth in the preceding fiscal year of such proposed issuance on account of bonds or notes guaranteed by the Commonwealth, exceed 15% of the average annual revenue raised under the provisions of Commonwealth legislation and deposited into the Treasury (hereinafter internal revenue) in the two fiscal years preceding the fiscal year of such proposed issuance. Section 2, Article VI of the Constitution of the Commonwealth does not limit the amount of debt that the Commonwealth may guarantee so long as the Commonwealth is in compliance with this 15% limitation at the time of issuance of such guaranteed debt. During the period ended June 30, 2017, no direct obligations were issued by the Commonwealth.

Litigation regarding whether certain bond issuances of the Commonwealth and PBA violated the Commonwealth's constitutional debt limitation is ongoing in the Commonwealth's Title III case. For additional information regarding the Commonwealth's Title III case, refer to Note 3. For additional information regarding the ongoing litigation related to the Commonwealth's Title III case (including litigation commenced by the Oversight Board against certain of the Commonwealth's general obligation bondholders), refer to Note 17.

The Commonwealth's bonds payable are subject to arbitrage regulations issued by the Internal Revenue Service of the United States of America, requiring a rebate to the federal government of excess investments earnings on tax exempt debt proceeds if the yield on those earnings exceeds the effective yield on the related tax-exempt debt issued. Excess earnings must be rebated every five years or upon maturity of the debt, whichever is earlier. Arbitrage calculations resulted in no liability as of June 30, 2017.

*(b) Bonds Payable*

The Constitution of the Commonwealth provides that public debt will constitute a first claim on the available revenue of the Commonwealth. Public debt includes general obligation bonds and debt

159

DRA Ex. 242

## COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

guaranteed by the Commonwealth. The full faith, credit, and taxing power of the Commonwealth is irrevocably pledged for the prompt payment of the principal and interest of the general obligation bonds. On April 6, 2016, the Governor signed into law the Moratorium Act. For additional information on the Moratorium Act, refer to Note 3. For additional information on litigation contingencies related to the Moratorium Act, refer to Note 17. Developments in the Title III cases, as discussed in Note 3, have affected the application of the Moratorium Act and may affect the priorities any party claims with respect to its right to debt repayment.

Act No. 83-1991, as amended, provides for the levy of an annual special tax of 1.03% of the assessed value of all real and personal property not exempt from taxation. The levy is made by CRIM, a municipal corporation, not a discretely presented component unit of the Commonwealth. CRIM is required to remit the 1.03% of property tax collected by the Commonwealth to pay debt service on general obligation bonds. During the year ended June 30, 2017, the total revenue and receivable reported by the Commonwealth amounted to approximately $111.2 million and $21.3 million, respectively, which are included in the debt service fund.

For financial reporting purposes, the outstanding amount of bonds represents the total principal amount outstanding, plus unamortized premiums and interest accreted on capital appreciation bonds, less unaccreted discount. Bonds payable outstanding at June 30, 2017, including accreted interest on capital appreciation bonds, were as follows (in thousands):

| | General obligation bonds | Revenue bonds | Total |
|---|---:|---:|---:|
| Term bonds payable through 2042; interest payable monthly or semiannually at rates varying from 3.00% to 8.00% | $     8,252,118 | 8,189,172 | 16,441,290 |
| Serial bonds payable through 2042; interest payable monthly or semiannually at rates varying from 3.00% to 6.75% | 4,169,825 | 1,589,135 | 5,758,960 |
| Fixed rate bonds payable through 2057; interest payable at rates varying from 3.38% to 6.50% | — | 6,203,929 | 6,203,929 |
| Capital appreciation bonds payable through 2056; no interest rate, yield ranging from 4.93% to 7.48%. (1) | 124,188 | 5,460,338 | 5,584,526 |
| Special Tax Revenue Bonds payable through 2045; interest payable or accreted monthly and semiannually at rates varying from 4.00% to 8.25% | — | 1,878,195 | 1,878,195 |
| Mental Health Infrastructure Revenue Bonds payable through 2038; interest payable semiannually at rates varying from 5.60% to 6.50% | — | 34,900 | 34,900 |
| The Children's Trust Fund Tobacco Settlement asset-backed bonds payable through 2057; interest payable or accreted semiannually at rates varying from 5.38% to 8.38% | — | 1,453,665 | 1,453,665 |

160

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| | General obligation bonds | Revenue bonds | Total |
|---|---|---|---|
| Capital Fund Program Bonds, maturing in various dates payable through 2025; interest payable semiannually at rates varying from 2.00% to 5.00% | — | 117,630 | 117,630 |
| LIBOR-Based Adjustable Rate Bonds due on August 1, 2057; interest payable quarterly (1.74% at June 30, 2017) | — | 136,000 | 136,000 |
| Total | 12,546,131 | 25,062,964 | 37,609,095 |
| Unamortized premium | 46,610 | 167,975 | 214,585 |
| Unamortized discount | (256,748) | (145,541) | (402,289) |
| Subtotal bonds payable | 12,335,993 | 25,085,398 | 37,421,391 |
| Elimination entry COFINA bonds issued to PRIFA | | (251,000) | (251,000) |
| Total bonds payable | $ 12,335,993 | 24,834,398 | 37,170,391 |

(1)   Revenue bonds include $969 million capital appreciation bonds convertible to fixed rate interest bonds on August 1, 2031; August 1, 2032; and August 1, 2033.

As of June 30, 2017, debt service requirements for general obligation and revenue bonds outstanding, including accreted interest of capital appreciation bonds are as follows (in thousands):

| Year ending June 30 | Principal | Interest | Interest subsidy (1) | Total |
|---|---|---|---|---|
| 2018 | $ 1,138,456 | 2,580,590 | 3,835 | 3,722,881 |
| 2019 | 525,116 | 1,720,578 | 3,835 | 2,249,529 |
| 2020 | 603,500 | 1,701,597 | 3,835 | 2,308,932 |
| 2021 | 677,940 | 1,695,153 | 3,835 | 2,376,928 |
| 2022 | 622,590 | 1,665,107 | 3,835 | 2,291,532 |
| 2023-2027 | 4,146,430 | 7,723,330 | 19,172 | 11,888,932 |
| 2028-2032 | 7,334,246 | 6,617,222 | 19,172 | 13,970,640 |
| 2033-2037 | 8,993,495 | 4,253,441 | 19,172 | 13,266,108 |
| 2038-2042 | 10,676,663 | 2,177,508 | 19,172 | 12,873,343 |
| 2043-2047 | 7,819,676 | 466,739 | 959 | 8,287,374 |
| 2048-2052 | 6,132,872 | 313,365 | — | 6,446,237 |
| 2053-2057 | 5,406,579 | 313,100 | — | 5,719,679 |
| 2058-2062 | 9,672,340 | 24,107 | — | 9,696,447 |
| Total | 63,749,903 | $ 31,251,837 | 96,822 | 95,098,562 |
| Less unaccreted interest | (26,140,808) | | | |
| Plus unamortized premium | 214,585 | | | |
| Less unamortized discount | (402,289) | | | |
| Subtotal | 37,421,391 | | | |
| Elimination of COFINA bonds issued to PRIFA | (251,000) | | | |
| Total | $ 37,170,391 | | | |

161

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The above schedule has been presented in accordance with original terms of the bonds payable and do not reflect the effects, if any, that may result from the PROMESA Title III proceedings or any other debt restructuring proceeding. Accordingly, the effects of the PROMESA Title III or any other debt restructuring proceeding may affect the carrying amounts, interest rates and the repayment terms. See Note 3 and Note 23 for additional information.

(1) Sales Tax Revenue Bonds, First Subordinate Series 2010D and 2010E were issued as Build America Bonds. COFINA will receive a subsidy payment from the federal government equal to 35% and 45%, respectively, of the amount of each interest payment. On June 24, 2013, the IRS sent notice that 8.7% of the subsidy payment on the Build America Bonds will be sequestered due to adjustments of the federal government budget.

On March 16, 2015, PRIFA issued $245.9 million of bond anticipation notes (disclosed as Special Tax Revenue Bonds) payable from the increase in the petroleum products tax imposed by Act No. 1-2015 (the PRIFA BANs), the proceeds of which were used to refinance certain outstanding PRHTA bond anticipation notes and pay-related expenses. The PRIFA BANs were originally expected to be refinanced through a long-term bond issuance by PRIFA. However, this proposed transaction has been abandoned. The PRIFA BANs had a maturity date of May 1, 2017 (which was not met), with an interest rate of 8.25% payable monthly on the first business day of each month, commencing on April 1, 2015. The aforementioned revenues that support the payment of the PRIFA BANs could instead be applied to pay the Commonwealth's general obligation debt if its available resources proved insufficient to cover all approved appropriations. The PRIFA BANs are guaranteed by the good faith, credit and taxing power of the Commonwealth (Refer to Note 14(a)). On June 24, 2016, the Governor signed an executive order, EO 2016 027, which suspended all obligations to transfer money to PRIFA for the purpose of making payments on PRIFA BANs.

The table below presents Governmental Activities-debt service payments on certain revenue variable rate bonds and the net payments on associated hedging derivative instruments (see Note 21) as of June 30, 2017 (all pertaining to COFINA). Although interest rates on variable rate debt and the current reference rates of hedging derivative instruments change over time, the calculations included in the table below are based on the assumption that the variable rate and the current reference rates of hedging derivative instruments as of June 30, 2017, will remain constant.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| | Variable-rate bonds | | Hedging derivative instruments, net | Total |
|---|---|---|---|---|
| | Principal | Interest | | |
| | | (In thousands) | | |
| Year ending June 30: | | | | |
| 2018 | $ — | 2,333 | 4,358 | 6,691 |
| 2019 | — | 2,333 | 4,358 | 6,691 |
| 2020 | — | 2,333 | 4,358 | 6,691 |
| 2021 | — | 2,333 | 4,358 | 6,691 |
| 2022 | | 2,333 | 4,358 | 6,691 |
| 2023-2027 | — | 11,665 | 21,791 | 33,456 |
| 2028-2032 | — | 11,665 | 21,791 | 33,456 |
| 2033-2037 | — | 11,665 | 21,791 | 33,456 |
| 2038-2042 | — | 11,665 | 21,791 | 33,456 |
| 2043-2047 | — | 11,665 | 21,791 | 33,456 |
| 2048-2052 | — | 11,665 | 21,791 | 33,456 |
| 2053-2057 | — | 11,665 | 21,791 | 33,456 |
| 2058 | 136,000 | 195 | 364 | 136,559 |
| Total | $ 136,000 | 93,515 | 174,691 | 404,206 |

The above schedule has been presented in accordance with original terms of the bonds payable and do not reflect the effects, if any, that may result from the PROMESA Title III proceedings or any other debt restructuring proceeding. Accordingly, the effects of the PROMESA Title III cases or any other debt restructuring proceeding may affect the carrying amounts, interest rates and the repayment terms. See Note 3 and Note 23 for additional information.

COFINA's outstanding bonds prior to consummation of the COFINA Plan of Adjustment were payable from amounts deposited in the Dedicated Sales Tax Fund in each fiscal year. The minimum amount to be deposited was the Pledged Sales Tax Base Amount, which for the fiscal year ended June 30, 2017, was approximately $724.1 million. The Pledged Sales Tax Base Amount increases each fiscal year thereafter at a statutory rate of 4% up to approximately $1.9 million.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

At June 30, 2017, the Pledged Sales Tax Base Amount, by year, was as follows (in thousands):

| | Amount |
|---|---|
| Year ending June 30: | |
| 2018 | $ 753,074 |
| 2019 | 783,197 |
| 2020 | 814,525 |
| 2021 | 847,106 |
| 2022 | 880,990 |
| 2023-2027 | 4,962,597 |
| 2028-2032 | 6,037,758 |
| 2033-2037 | 7,345,858 |
| 2038-2042 | 8,850,885 |
| 2043-2047 | 9,250,000 |
| 2048-2052 | 9,250,000 |
| 2053-2057 | 9,250,000 |
| 2058 | 1,850,000 |
| Total | $ 60,875,990 |

The above schedule has been presented in accordance with original terms of the bonds payable and does not reflect the effects, of the COFINA Plan of Adjustment as confirmed in COFINA's Title III case. See Note 3 and Note 23 for additional information on the COFINA Plan of Adjustment.

*(c)* *Commonwealth's Department of Housing Partnership Agreement*

Vivienda Modernization 1, LLC (the LLC) is a limited liability company created under the laws of the Commonwealth whose sole member is Vivienda Modernization Holdings 1, S.E. (the Partnership), a civil partnership created under the laws of the Commonwealth and pursuant to a related Partnership Agreement. The Partnership was created on August 1, 2008 with the DOH, acting as general partner (the General Partner) and Hudson SLP XL LLC, a Delaware limited liability company (the Special Limited Partner) and Hudson Housing Tax Credit Fund XL LP, a Delaware limited partnership (the Investment Partnership); acting as limited partners (collectively the Limited Partners). The Partnership has been organized to acquire, develop, rehabilitate, own, maintain, and operate thirty-three residential rental housing developments intended for low- and moderate-income tenants. Profits, losses, and tax credits are allocated in accordance with the Partnership Agreement. Profits and losses from operations and low-income housing tax credits in any year should be allocated 99.98% to the Investment Partnership, 0.01% to the Special Limited Partner, and 0.01% to the General Partner. As defined in the Partnership Agreement, certain transactions and occurrences warrant special allocations of profits and losses. All other losses should be allocated to the extent allowable under Section 704(b) of the U.S. Internal Revenue Code.

Pursuant to the Partnership Agreement, the Limited Partners are required to provide capital contributions totaling approximately $235 million to the Partnership (the Initial Projected Equity), subject to adjustment based on the amount of low-income housing credits ultimately allocated to the developments in addition to other potential occurrences as more fully explained in the Partnership Agreement. As of June 30, 2017, the Limited Partners have provided capital contributions totaling approximately $126.6 million.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Pursuant to the Partnership Agreement, the General Partner is required to provide capital contributions totaling approximately $10 million to the Partnership. Should the Partnership not have sufficient funds available to pay the outstanding balance of the developer fee thereof, as defined, the General Partner must provide additional capital contributions to the Partnership in an amount sufficient for the Partnership to pay such balance in full. The General Partner must have no right or obligation to make any other capital contributions. As of June 30, 2017, the General Partner had provided no capital contributions. In addition, the DOH as General Partner must establish the Assurance Reserve Fund at the initial closing in the amount of the initial capital contribution less approximately $4 million (plus any initial capital contribution with respect to the apartment complexes). Amounts in the Assurance Reserve Fund must be used, (i) upon the request of the General Partner, subject to the consent of the Special Limited Partner or (ii) upon the direction to the Special Limited Partner, to meet financial obligations of the General Partner, other than for excess development costs, as provided in the Partnership Agreement. As of June 30, 2017, such reserve was maintained in the Partnership.

On August 7, 2008, the LLC entered into a Master Developer Agreement with the DOH to perform services in connection with the development, rehabilitation, and modernization of certain housing projects (the Master Developer Agreement). Pursuant to the Master Developer Agreement, the DOH will earn a developer's fee in the amount of approximately $75.1 million for such services. Payment of the developer's fee must be subject to the terms and conditions of Section 6(a) (iv) of the Master Developer Agreement. As of June 30, 2017, approximately $73.3 million was recorded within other accounts receivable in the General Fund related to the Master Development Agreement (including approximately $16.6 million related to the Assurance Reserve Fund).

Additionally, on August 7, 2008, the LLC and the DOH entered into a Purchase and Sale Agreement through which the LLC acquired the surface rights of a property (the Property) and the improvement erected on such property consisting of buildings and construction in progress with a net book value and cost of approximately $45.9 million and $110 million, respectively, from the DOH. This purchase is subject to certain deeds of Constitution of Surface Rights and Transfer of Improvements dated August 7, 2008, which require the LLC to rehabilitate or construct on the Property 4,132 residential rental units (the Units or collectively the Development), all of which will receive the benefit of an operating subsidy and Low-Income Housing Tax Credits under Section 42 of the U.S. Internal Revenue Code of 1986, as amended. Eighty-four (84) of the units, all of which will be located at the Brisas de Cayey II site, are to be newly constructed. The remaining units will be modernized.

Also, on August 7, 2008, the DOH entered into a loan agreement with the LLC in the amount of approximately $102.9 million for the acquisition of the 33 residential rental properties (the deferred purchase price note). The LLC must make payments equal to the amount of net available capital contributions, as defined, for the preceding calendar quarter.

The following are the terms of the deferred purchase price note: commitment of approximately $102.9 million; interest rate 3.55%; and maturity date later of (i) funding of the last installment of the capital contribution or (ii) August 7, 2013. The note must be a full recourse liability of the LLC; however, none of the LLC's members has personal liability. As of June 30, 2017, the principal balance outstanding on the deferred purchase price note was approximately $8.8 million and accrued interest was approximately $1.9 million, and both amounts were recorded within deferred inflow of resources – developer fees in the General Fund.

The Puerto Rico Public Housing Administration (PHA) has entered into an Interagency Agreement dated August 7, 2008, with the DOH, in DOH's capacity as general partner of the Partnership, to delegate management and operational duties related to the Development to PHA as set forth in the Interagency Agreement. The LLC and PHA also intend that the units be developed, operated, and managed so as to

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

assure receipt by the LLC of the aforementioned economic and tax benefits to the full extent available to the LLC.

***(d) Commonwealth Appropriation Bonds***

Over the years, GDB, as fiscal agent and a bank for the Commonwealth, had extended lines of credit, advances, and loans to several agencies and component units of the Commonwealth in order to finance their capital improvement projects and to cover their operational deficits at the time. At different points in time, these loans were refunded through the issuance of Commonwealth appropriation bonds issued by PFC, a blended component unit of GDB, which serves only as a conduit for the issuance of the bonds. The Commonwealth has recognized a mirror effect of these refundings by PFC over the years in its own debt in proportion to the portion of the Commonwealth's notes included in such PFC refundings. Also, during more recent years, COFINA, through the issuance of bonds, has been used to repay certain other loans and existing appropriation bonds. COFINA is a blended component unit of the Commonwealth created in 2007 with the capacity to issue bonds to repay or refund advances from GDB, the appropriation bonds referred to above, and other debt obligations, collectively referred as the extra constitutional debt. There were no new activities of Commonwealth appropriation bonds during fiscal year 2017, other than the annual amortization of corresponding premiums and their related deferred inflows and outflows of resources in the form of deferred refunding gains and losses.

At June 30, 2017, the outstanding balance of the Commonwealth appropriation bonds pertaining to the Primary Government (i.e., excluding the balance pertaining to discretely presented component units), consisted of the following obligations (in thousands):

| | | |
|---|---|---|
| Act. No. 164 restructuring | $ | 438,052 |
| PRMSA | | 131,694 |
| Total Commonwealth appropriation bonds | $ | 569,746 |

**Act No. 164 Restructuring** – On December 17, 2001, Act No. 164 was approved, which authorized certain government agencies and component units to refund approximately $2.4 billion of their outstanding obligations with GDB, for which no repayment source existed, over a period not exceeding 30 years, and to be repaid with annual Commonwealth appropriations not to exceed $225 million. This refunding was originally executed with Commonwealth appropriation bonds through several bond series issued by PFC during the period between December 2001 and June 2002.

Subsequently, additional refundings (current and advance) and/or redemptions of Act No. 164-2001 restructuring have been executed through PFC and COFINA bond issuances.

Approximately $438 million of the Commonwealth appropriation bonds outstanding at June 30, 2017, belong to the Primary Government under Act No. 164-2001, consisting of the PRDOH (health reform financing and other costs), the DOT (originally the fiscal year 2001 deficit financing and the obligation assumed for defective tax liens), and PRIFA, a blended component unit of the Commonwealth. The outstanding balance of Commonwealth appropriation bonds related to Act No. 164-2001 bears interest

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

at rates ranging from 3.10% to 6.50%. Debt service requirements, subject to legislative appropriations, in future years were as follows (in thousands):

| | Principal | Interest | Total |
|---|---|---|---|
| Year ending June 30: | | | |
| 2018 | $ 68,074 | 65,140 | 133,214 |
| 2019 | 22,361 | 19,374 | 41,735 |
| 2020 | 23,257 | 18,421 | 41,678 |
| 2021 | 24,219 | 17,382 | 41,601 |
| 2022 | 25,274 | 16,248 | 41,522 |
| 2023–2027 | 64,190 | 69,705 | 133,895 |
| 2028–2031 | 208,856 | 18,809 | 227,665 |
| Total | 436,231 | 225,079 | 661,310 |
| Plus unamortized premium | 1,821 | | |
| Total | $ 438,052 | | |

The above schedule has been presented in accordance with original terms of the bonds payable and do not reflect the effects, if any, that may result from the PROMESA Title III proceedings or any other debt restructuring proceeding. Accordingly, the effects of the PROMESA Title III or any other debt restructuring proceeding may affect the carrying amounts, interest rates and the repayment terms. See Note 3 and Note 23 for additional information.

**PRMSA** – A promissory note payable owed by PRMSA to GDB was assumed by the Commonwealth in connection with the sale of the maritime operations of PRMSA. Commonwealth appropriation bonds, 2003 Series B and 2004 Series B were issued to refund this liability, which were refunded most recently in June 2012 with the issuance of PFC 2012 Series A bonds. The bond balance bears interest at a variable rate ranging from 3.10% to 5.35%. Debt service requirements in future years were as follows (in thousands):

| | Principal | Interest | Total |
|---|---|---|---|
| Year ending June 30: | | | |
| 2018 | $ — | 6,837 | 6,837 |
| 2019 | — | 6,837 | 6,837 |
| 2020 | — | 6,837 | 6,837 |
| 2021 | — | 6,837 | 6,837 |
| 2022 | — | 6,837 | 6,837 |
| 2023–2027 | 83,384 | 23,777 | 107,161 |
| 2028–2032 | 48,310 | 10,769 | 59,079 |
| Total | $ 131,694 | 68,731 | 200,425 |

The above schedule has been presented in accordance with original terms of the bonds payable and do not reflect the effects, if any, that may result from the PROMESA Title III proceedings or any other debt restructuring proceeding. Accordingly, the effects of the PROMESA Title III or any other debt restructuring proceeding may affect the carrying amounts, interest rates and the repayment terms. See Note 3 and Note 23 for additional information.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(e)  *Bond Purchase Agreement with GDB***

At various times during fiscal years ending in 2005 and 2006, the PA, a blended component unit of the Commonwealth, entered into bond purchase agreements with the GDB, whereby the GDB agreed to disburse to the PA from time to time certain bond principal advances up to a maximum aggregate principal amount of $70 million (Port of the Americas Authority 2005 Series A Bond), $40 million (Port of the Americas Authority 2005 Series B Bond), and $140 million (Port of the Americas Authority 2005 Series C Bond). These bonds are guaranteed by the Commonwealth by Act No. 409-2004, which authorized the issuance of these financing arrangements. The Commonwealth had been paying for debt service on these bonds under its guarantee pursuant to Act No 409-2004. For additional detail, refer to Note 14(a).

The proceeds of the bonds were used to finance the cost of development and construction of the PA facilities. These bonds, having an original maturity of January 2015, were refinanced on December 31, 2014 into one single bond for a period of 30 years, with the first payment of principal and interest to commence on August 1, 2015, with interest rates based on the rates borne by the general obligation of the Commonwealth. These rates should be revised on a quarterly basis provided, however, that the interest should never be less than 7% nor greater than 12%. The aggregate outstanding principal balance of the bond principal amount shall be payable in full on January 1, 2045. The principal and interest on the refinanced bond continues to be covered by the guarantee of the Commonwealth. As of June 30, 2017, the principal outstanding on the Bond purchase agreement amounted to approximately $225.5 million.

The PA debt may be paid with any of the following: (i) a long-term bond issuance, once the projects are completed or (ii) legislative appropriations, as established by Act No. 409-2004, honoring the agreement referred to above.

Act No. 409-2004, as amended, is silent as to whether there are arrangements established for recovering payments from PA for guarantee payments made; however, there is no intention from the Commonwealth to request a recovery of any such payments.

**(f)  *Advance Refunding, Defeasance and Refunding of Commonwealth Bonds***

In prior years, the Commonwealth defeased certain general obligation and other bonds by placing the proceeds of the bonds in an irrevocable trust to provide for all future debt service payments on the refunded bonds. Accordingly, the trust's account assets and liabilities for the defeased bonds are not included in the basic financial statements. For the year ended June 30, 2017 the Commonwealth had no defeased obligations.

PBA, a blended component unit, has defeased certain revenue bonds in prior years by placing the proceeds of new bonds in an irrevocable trust to provide for all future debt service payments on the old debts. Accordingly, the trust's account assets and liabilities for the defeased bonds are not included in the statement of net position. As of June 30, 2017, approximately $659.9 million of PBA's bonds are considered defeased.

During prior years, COFINA, a blended component unit, issued certain refunding bonds, the proceeds of which were placed in an irrevocable trust to provide for all future debt service payments on the refunded COFINA Series 2009A and 2009B bonds. The outstanding balance of the advance refunded bonds was approximately $41.9 million at June 30, 2017.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(g)** *Notes Payable to GDB, Other Discretely Presented Component Units and Financial Institution*

The Commonwealth financed certain long-term liabilities through GDB and other discretely presented component units, within both Governmental and Business-type activities. The outstanding balance at June 30, 2017 on the financing provided by GDB and other discretely presented component units presented within notes payable in the statement of net position-Governmental Activities, comprises the following (in thousands):

Notes payable to GDB:

| | | |
|---|---|---:|
| DOT | $ | 761,212 |
| SCPT | | 345,841 |
| PROMB | | 265,471 |
| PBA | | 182,160 |
| DOE | | 106,308 |
| DTPW | | 82,870 |
| Correction Administration | | 82,489 |
| UPRCCC | | 120,482 |
| DOA | | 65,225 |
| EQB | | 2,225 |
| PRDOJ | | 49,846 |
| PRDOH | | 44,158 |
| PRIFA | | 49,338 |
| PRPOB | | 31,679 |
| DOH | | 16,617 |
| SCB | | 27,489 |
| Court Administration Office | | 34,033 |
| DRS | | 18,168 |
| | $ | 2,285,611 |

Notes payable to component units:

| | | |
|---|---|---:|
| SIFC | $ | 100,000 |
| AACA | | 2,000 |
| | $ | 102,000 |

| | | |
|---|---|---:|
| Note payable to financial institution | $ | 23,764 |

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Notes Payable to GDB*

(i)  *Governmental Activities*

The Commonwealth has entered into the following line of credit agreements with GDB (all within Governmental Activities) which were due and recorded as a fund liability in the General Fund as of June 30, 2017 (in thousands):

| Agency | Purpose | Interest rate | Original Maturity | Line of credit | Outstanding balance |
|---|---|---|---|---|---|
| DOT | To pay several central government agencies' debt | 125 bp over three months LIBOR (7%) | September 30, 2012 | $ 100,000 | 57,597 |
| DOT | To cover operational needs of catastrophic disaster funds | 125 bp over three months LIBOR (7%) | September 30, 2013 – September 30, 2015 | 79,930 | 35,655 |
| DOT | To fund information technology project | 125 bp over GDB's commercial paper rate (7%) | June 30, 2008 | 14,782 | 11,652 |
| DOT | Purchase of mobile X-ray machines | 125 bp over three months LIBOR (7%) | June 30, 2008 | 12,000 | 2,104 |
| Office of Veteran's Ombudsman | To fund improvements to veteran's facilities | 6 % | March 31, 2015 | 7,500 | 292 |
| | | | | $ 214,212 | 107,300 |

As of June 30, 2017, the DOT had entered into various lines of credit agreements with GDB amounting to approximately $2.8 billion for different purposes, bearing fixed and variable interest rates, and various maturity dates as summarized below (in thousands):

| Purpose | Interest rate | Maturity | Lines of credit | Outstanding balance |
|---|---|---|---|---|
| To finance payroll and operational expenditures of the Commonwealth for fiscal year 2006 | 7.00% | June 30, 2040 | $ 741,000 | 141,211 |
| To pay lawsuits against the Commonwealth and to assign $15.3 million to Labor Development Program for operational expenses | 6.00% | June 30, 2018 | 160,000 | 113,685 |
| Resources to meet appropriations in annual budget of the Commonwealth (fiscal year 2004) and federal programs expenditures | 7.00% | June 30, 2040 | 640,000 | 92,370 |

170

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| Purpose | Interest rate | Maturity | Lines of credit | Outstanding balance |
|---|---|---|---|---|
| To finance capital improvements projects of agencies and municipalities | 7.00% | June 30, 2019 | $ 130,000 | 71,578 |
| To finance capital improvements of several governmental agencies | 7.00% | June 30, 2040 | 105,000 | 58,973 |
| To partially fund monthly principal and interest deposits required for 2013 debt service of General Obligation and Revenue Bonds | 150 bp over PRIME, but not less than 6% | June 30, 2042 | 384,496 | 63,135 |
| To fund monthly principal and interest deposits required for the 2014 debt service of the General Obligation and Revenue Bonds | 6.00% | June 30, 2043 | 319,645 | 50,419 |
| To finance certain capital improvement projects | 150 bp over PRIME, but not less than 6% | June 30, 2043 | 100,000 | 34,789 |
| To finance certain capital improvement projects | 150 bp over PRIME, but not less than 6% | June 30, 2041 | 215,000 | 21,096 |
| Acquisition of Salinas Correctional Facilities | 125 bp over 3 month LIBOR | June 30, 2040 | 15,000 | 6,118 |
| To pay invoices presented to the Treasury Department related to Act No. 171 "Ley de Manejo de Neumáticos" | 7.00% | June 30, 2019 | 22,100 | 538 |
| Total | | | $ 2,832,241 | 653,912 |

During the fiscal year 2017, the Commonwealth made contributions amounting to approximately $102.5 million to various of its instrumentalities, including component units, and other governmental entities in accordance with Resolution No. 60 of the Legislature. The Commonwealth's notes payable to GDB outstanding balance has been reduced for such amounts. The following table summarizes the contributions made by the Commonwealth to such entities (in thousands):

| | |
|---|---|
| PA | 3,190 |
| AEDA | 25,000 |
| UPRCCC | 40,000 |
| Puerto Rico Housing Finance Authority | 5,733 |
| SCB | 6,000 |
| Other governmental entities | 19,395 |
| Total contributions | $ 102,454 |

On November 21, 2002, Resolution No. 1028 from the Legislature authorized GDB to provide a line of credit financing for $500 million to the SCPT for the construction and rehabilitation of housing, construction and improvements of electric, water and sewage systems; repair and improvements of streets and sidewalks; construction and improvement of recreational facilities, and to develop initiatives for economic self-sufficiency for the residents of a selected group of displaced and economically disadvantaged communities, all encompassed within the Special Communities Program initiated with the creation of the SCPT by Act No. 271-2002. This non-revolving line of credit, originally for a ten-year term, was extended on June 30, 2012 to a maturity date of June 30, 2040.

DRA Ex. 242

## COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

Effective October 2009, the interest rate on this line was set at 7%. Annual payments on the line are determined using a 30-year amortization table based on the principal and interest balance as of December 31 of each year, and a 4% interest penalty is carried on late payments. Legislative Resolution No. 1762 of September 18, 2004, established that the principal plus accrued interest of this line would be repaid from Commonwealth's legislative appropriations as established by the PROMB. The outstanding balance of this line as of June 30, 2017, amounted to approximately $345.8 million.

On May 23, 2012, the PROMB entered into a $100 million line of credit agreement (amended during fiscal year 2016 to a maximum of $178 million) with GDB to cover costs of the implementation of the third phase of Act No. 70-2010. Borrowings under this line of credit bear interest at prime rate plus 1.50% with a floor of 6%. The amended line of credit matures on July 31, 2037. As of June 30, 2017, approximately $115.5 million was outstanding. On June 5, 2006, the PROMB entered into a $150 million line of credit agreement with GDB to provide economic assistance for disasters and emergencies. Borrowings under this line of credit agreement bear interest at variable rates based on 125 basis points over three-month LIBOR and were payable upon the original maturity of the line of credit on September 30, 2011. On July 22, 2011, PROMB and GDB amended the $150 million line of credit agreement to extend its maturity date to July 30, 2022. In addition, the agreement was converted to a revolving line of credit bearing interest at 150 basis points over prime rate, but in no event may such rate be less than 6% per annum. As of June 30, 2017, approximately $150 million was outstanding. Both lines of credit for the aggregate outstanding balance of approximately $265.5 million are payable from Commonwealth's legislative appropriations.

On August 18, 2010, GDB provided PBA a non-revolving credit facility in the maximum principal amount of approximately $93.6 million bearing interest at a fluctuating annual rate equal to Prime rate, plus 150 basis points, provided that such interest cannot be less than 6%, or at such other rate determined by GDB. The proceeds of the facility were used for construction projects development. The line is due on June 30, 2044 and is payable from the proceeds of future revenue refunding bond issuance of PBA. As of June 30, 2017, approximately $51 million was outstanding. PBA also maintains a $75 million line of credit agreement with GDB for payment of operational expenses. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon maturity on June 30, 2018. As of June 30, 2017, approximately $64.7 million was outstanding. In addition, on May 2, 2008, PBA executed two Loan Agreements with GDB for the interim financing of its Capital Improvement Program in an amount not to exceed approximately $226 million, bearing interest at 6%. The loans and the accrued interest are due on June 30, 2044 and are payable from the proceeds of the future revenue refunding bond issuance of PBA. The loans are divided into approximately $209 million on a tax-exempt basis and approximately $16.9 million on a taxable basis. As of June 30, 2017, approximately $66.4 million remains outstanding.

On February 6, 2003, the DOE entered into a $25 million line of credit agreement with GDB for the purchase of equipment and for school improvements. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon the maturity of the line of credit on June 30, 2018. As of June 30, 2017, approximately $4.6 million was outstanding. On August 4, 2002, the DOE entered into an additional $140 million line of credit agreement with GDB in order to reimburse the DOT for payments made on their behalf for state funds used to fund federal program expenditures. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon the maturity of the line of credit on June 30, 2040. As of June 30, 2017, approximately $101.7 million was outstanding. Both lines of credit for the aggregate outstanding balance of approximately $106.3 million are payable from Commonwealth's legislative appropriations.

172

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The DTPW of the Commonwealth entered into five line of credit agreements with GDB amounting to $104 million for improvement and maintenance of roads around the island. Borrowings under these lines of credit bear interest at a 7% rate and are payable upon maturity of the line of credit on June 30, 2040. As of June 30, 2017, approximately $82.9 million was outstanding, which is payable from Commonwealth's legislative appropriations.

On May 12, 2004, the Correction Administration of the Commonwealth (CA) entered into a $60 million line of credit agreement with GDB for improvements to certain correctional facilities. Borrowings under this line of credit agreement bear interest at a fixed 7% rate and are payable upon the maturity of the line of credit on June 30, 2018. As of June 30, 2017, approximately $18.1 million was outstanding, which is payable from Commonwealth's legislative appropriations. In addition, on November 24, 2010, the CA entered into an $80 million line of credit agreement with GDB for the construction of a new correctional medical center. Borrowings under this line of credit agreement bear interest at a rate per annum equal to Prime Rate, plus 150 basis points, but in no event may such rate be less than 6% per annum nor greater than 12% per annum and are payable upon the maturity of the line of credit on June 30, 2040. As of June 30, 2017, approximately $64.4 million was outstanding which is payable from Commonwealth's legislative appropriations.

On August 22, 2007, UPRCCC entered into an $18 million non-revolving line of credit agreement with GDB to build the UPRCCC's administrative offices and research facilities. On May 29, 2008, the agreement was amended, mainly to increase the maximum borrowing amount to $75 million, to extend the maturity date up to October 31, 2021, and to finance the construction of the hospital and radiotherapy facilities. The balance will be repaid commencing in fiscal year 2015. The non-revolving line bears interest at a fixed rate of 6%. As of June 30, 2017, approximately $31.9 million was outstanding. On November 18, 2013, the UPRCCC entered into another non-revolving line of credit facility with GDB up to an aggregate principal amount not to exceed $196 million, for the construction and development of a ninety-six bed hospital, a multi-disciplinary outpatient clinic, a diagnostic imaging center and a medical oncology infusion unit in a land lot property of the UPRCCC located in San Juan. The line of credit, including interest at a fixed rate of 6.5%, is payable in 28 consecutive annual installments, commencing on the last business day of December 2016. As of June 30, 2017, approximately $88.5 million was outstanding. Both lines of credit for the aggregate outstanding balance of approximately $120.4 million are payable from Commonwealth's legislative appropriations.

On August 9, 1999, the DOA entered into a $125 million non-revolving line of credit agreement with GDB to provide economic assistance to the agricultural sector, which sustained severe damages caused by Hurricane Georges in 1998. As of February 24, 2004, the line of credit increased by $50 million resulting in a total amount of $175 million. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon the maturity of the line of credit on June 30, 2040. As of June 30, 2017, approximately $65.2 million was outstanding, which is payable from Commonwealth's legislative appropriations.

On October 2, 2002, PRDOJ entered into a $90 million line of credit agreement with GDB for the financing of 12 public improvement projects for the Municipality of Ponce pursuant to a court order. Borrowings under this line of credit agreement bear interest at variable rates and are payable upon the maturity of the line of credit on June 30, 2018. On August 8, 2005, the PRDOJ entered into an amended agreement to increase the aforementioned line of credit from $90 million to $110 million to cover various additional projects in Ponce, pursuant to the same court order. Borrowings under the new amended line of credit agreement bear interest at a 7% rate and are payable upon the maturity of the line of credit on June 30, 2040. As of June 30, 2017, the aggregated balance outstanding

173

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

under this amended line of credit agreement amounted to $49.8 million which, is payable from Commonwealth's legislative appropriations.

On February 18, 2005, PRIFA entered into a $40 million credit agreement with GDB for the construction of an auditorium for the Luis A. Ferré Fine Arts Center. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon maturity of the loan agreement on June 30, 2040. As of June 30, 2017, approximately $4.8 million related to this credit agreement was outstanding. On June 1, 2009, PRIFA entered into an additional $7.8 million revolving line of credit agreement with GDB to provide financing for costs incurred by PRIFA under certain American Recovery and Reinvestment Act Programs (the ARRA programs). Borrowings under this line of credit agreement bear interest at variable rates based on 150 basis points over the prime rate and were payable upon the maturity of the line of credit on January 31, 2016. As of June 30, 2017, the outstanding balance of this line of credit agreement amounted to approximately $7.1 million. On March 8, 2012, PRIFA also entered into a $35 million line of credit agreement with GDB for the acquisition, refurbishments, and maintenance of certain real estate properties that are mostly occupied by various governmental agencies. This credit facility is secured by a mortgage lien on the property. This line of credit matures on June 30, 2017, and bears interest at 150 basis points over the prime rate, with a minimum interest rate of 6%. As of June 30, 2017, the outstanding balance of this line of credit agreement amounted to approximately $37.4 million. The three lines of credit for the aggregate outstanding balance of approximately $49.3 million are payable from Commonwealth's legislative appropriations.

On August 2003, the PRDOH entered into a $30 million line of credit agreement with GDB in order to repay certain outstanding debts that the PRMeSA had with other agencies and suppliers. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon maturity of the line of credit on June 30, 2040. As of June 30, 2017, approximately $21.3 million related to this line of credit agreement was outstanding. On November 8, 2004, the PRDOH entered into an additional $58.5 million line of credit agreement with GDB for the financing of a project of the PRDOH and PRMeSA. Borrowings under this line of credit agreement bear interest at variable rates based on 150 basis points over GDB's commercial paper rate and are payable upon the maturity of the line of credit on June 30, 2040. As of June 30, 2017, the outstanding balance of this line of credit agreement amounted to approximately $19.6 million, which is payable from Commonwealth's legislative appropriations. On February 14, 2008, the PRDOH also entered into an additional $8 million line of credit agreement with GDB to cover costs of treatment, diagnosis, and supplementary expenses during fiscal year 2008 in conformity with Act No. 150-1996. Borrowings under this line of credit agreement bear interest at variable rates based on 125 basis points over three-month LIBOR and are payable upon maturity of the line of credit on June 30, 2040. As of June 30, 2017, the outstanding balance of this line of credit agreement amounted to approximately $3.3 million, which is payable from Commonwealth's legislative appropriations.

On July 29, 2004, the PRPOB entered into a $45 million line of credit agreement with GDB for the acquisition of vehicles and high technology equipment. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon the maturity of the line of credit on June 30, 2040. The outstanding balance of this line of credit agreement amounted to approximately $31.7 million as of June 30, 2017, which is payable from the Commonwealth's legislative appropriations.

On February 15, 2002, the SCB entered into a $35 million line of credit agreement with GDB for the SCB parking's construction. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon the maturity of the line of credit on June 30, 2040. As of June 30,

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

2017, approximately $15.5 million remained outstanding from the line of credit agreement, which is payable from the Commonwealth's legislative appropriations. On February 9, 2012, the SCB entered into an additional $15 million line of credit agreement with GDB for permanent improvements of existing buildings. Borrowings under this line of credit agreement bear interest at 150 basis points over prime rate and may not be less than 6% nor greater than 12% per annum and are payable upon maturity of the line of credit on June 30, 2018. As of June 30, 2017, approximately $6.5 million was outstanding, which is payable from Commonwealth's legislative appropriations. On December 17, 2014, the SCB entered into another $15 million line of credit agreement with GDB for permanent improvements to the Capitol District. Borrowings under this line of credit agreement bear interest at the fixed rate of 5.8% and are payable upon maturity of the line of credit on June 30, 2024. As of June 30, 2017, approximately $5.5 million was outstanding.

On March 8, 2007, the DOH entered into a $19 million line of credit agreement with GDB, to reimburse the Puerto Rico Housing Finance Authority (PRHFA), a blended component unit of GDB, for certain advances made for a revitalization project. Borrowings under this line of credit agreement bear interest at a variable rate of three-month LIBOR 1.25%, not to exceed 5%, and are payable upon maturity of the line of credit on June 30, 2040. As of June 30, 2017, the line of credit has an outstanding balance of approximately $5.2 million, which is payable from the proceeds of the sale of properties. On December 3, 2007, the DOH entered into an additional $30 million line of credit agreement with GDB for the purchase of Juan C. Cordero Dávila building. Borrowings under this line of credit agreement bear interest based on 75 basis points over three-month LIBOR and are payable upon maturity of the line of credit on February 28, 2038. As of June 30, 2017, approximately $11.4 million related to this line of credit agreement was outstanding, which is payable from future rental revenues.

On January 18, 2005, the DRS entered into a $17.2 million line of credit agreement with GDB for the development of a series of recreational projects at different municipalities. Borrowings under this line of credit agreement bear interest at a fixed rate of 7% and are payable upon the maturity of the line of credit on June 30, 2040. As of June 30, 2017, approximately $500 thousands was outstanding. Also, on February 9, 2004, DRS entered into a $16 million line of credit agreement with GDB for the development and improvement of recreational facilities. Borrowings under this line of credit agreement bear interest on the unpaid principal amount of each advance at a fixed rate of 7% and are payable upon the maturity of the line of credit on June 30, 2018. As of June 30, 2017, approximately $600 thousands was outstanding, which is payable from Commonwealth's legislative appropriations. An additional line of credit agreement was entered into between GDB and DRS in the maximum principal amount of approximately $13 million bearing interest on the unpaid principal amount of each advance at a fixed rate of 7% and are payable upon the maturity of the line of credit on June 30, 2040. The proceeds of the line of credit were used for development and improvement of recreational facilities. As of June 30, 2017, approximately $8.2 million was outstanding, which is payable from Commonwealth's legislative appropriations.

On July 23, 2014, Act No. 107 was approved, creating the National Parks Program of the Commonwealth (NPP), which among other provisions, merged the National Parks Corporation of Puerto Rico (NPCPR), then a discretely presented component unit, into a program within the DRS, NPCPR then ceased to exist as a separate legal entity. With this transaction, the program brought three separate line of credit agreements with GDB into DRS. On August 17, 2007, NPP entered in a $10 million line of credit in order to finance an early retirement program in response to Act No. 70-2007. Borrowings under this line of credit agreement bear interest based on a fixed rate of 7%, and principal and interest are payable on October 31 of each year until December 31, 2018. The source for the repayment comes from revenues collected by NPP during the first four months of the

175

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

year and thereafter until 2018. As of June 30, 2017, approximately $3.2 million was outstanding. On February 6, 2003, NPP entered in a $9.3 million line of credit in order to finance the improvements of certain parks, seaside facilities and buildings of NPP. Borrowings under this line of credit agreement bear interest based on a variable rate (7% as of June 30, 2017). Principal and interest are payable annually through June 30, 2040 and the source for the repayment comes from legislative appropriations. As of June 30, 2017, approximately $1.1 million was outstanding. During 2003, NPP entered into a $12 million line of credit in order to finance the acquisition of a certain land lot. Borrowings under this line of credit agreement bear interest based on a variable rate (7% as of June 30, 2017). Principal and interest are payable annually through June 30, 2040, and the source for the repayment comes from future Commonwealth's legislative appropriations. As of June 30, 2017, approximately $4.5 million was outstanding.

On February 27, 2014, the Court Administration Office entered into an additional $50 million line of credit agreement with GDB for the development of several priority projects pursuant to its strategic plan and to fund additional operational commitments. Borrowings under this line of credit agreement bear interest at 150 basis points over prime rate and may not be less than 6% nor greater than 12% per annum and are payable upon maturity of the line of credit on July 31, 2027. As of June 30, 2017, approximately $34 million was outstanding, which is payable from future custom duty taxes.

On September 18, 2003, the EQB entered into a $11 million line of credit agreement with GDB for the federal funds matching requirements related to the Clean Water State Revolving Funds. Borrowings under this line of credit agreement bear interest at a variable rate of 150 basis points over Prime Rate calculated on a quarterly basis with a floor of 6% and are payable annually through March 31, 2017. If there is any unpaid principal amount after the maturity date, the interest rate will increase 200% of the applicable interest rate at such date. The interest payable will be accrued daily. As of June 30, 2017, approximately $2.2 million remained outstanding from the line of credit agreement, which is payable from the Commonwealth's legislative appropriations.

*Notes Payable to Discretely Presented Component Units*

Act No. 80-2015 was approved with the objective of addressing the Commonwealth's projected cash flow deficiencies for fiscal year 2015. This Act, among other provisions, specifically authorized the SIFC, PRTC, AACA, EDB, PRIDCO and the DEDC to grant loans and/or special contributions to the DOT, in the aggregate amount of $125 million. On June 5 and 9, 2015, SIFC and AACA granted loans to the DOT under the provisions of this Act in the amounts of $100 million and $2 million, respectively, which are payable from the Commonwealth's legislative appropriations. These loans bear interest at a rate of 1%, and principal and interest will be payable on an annual basis, effective July 31, 2017. The loan granted by ACAA matures on July 31, 2022, and that granted by SIFC matures on July 31, 2032. As of June 30, 2017, approximately $102 million remained outstanding.

*Notes Payable to Financial Institutions*

On December 26, 2013, the General Service Administration entered into a $33.3 million non-revolving line of credit agreement with a financial institution for the purchase of four helicopters to be used by the PRPOB, through a lease agreement between both government agencies. Such lease agreement has been assigned as the line of credit repayment source, which in turn will be sustained with annual future Commonwealth legislative appropriations in the amounts necessary to cover the required debt service of the line of credit. This obligation is payable in seven equal, annual and consecutive installments commencing on July 15, 2014, plus interest payable on July 15 and January 15 of every year beginning on July 15, 2014, at an interest rate based on the financial institution cost of funds, as defined, plus 0.25 basis points. The interest rate as of June 30, 2017, was 3.0204%. The good faith, credit and taxing power

176

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

of the Commonwealth are irrevocably pledged for the prompt payment of principal and interest on this obligation. As of June 30, 2017, approximately $23.8 million was outstanding. Debt service requirements in future years were as follows (in thousands):

|  | Principal | Interest | Total |
|---|---|---|---|
| Year ending June 30: | | | |
| 2018 | $ 9,505 | 1,165 | 10,670 |
| 2019 | 4,753 | 363 | 5,116 |
| 2020 | 4,753 | 218 | 4,971 |
| 2021 | 4,753 | 73 | 4,826 |
| Total | $ 23,764 | 1,819 | 25,583 |

(ii) *Business-type activities* – At June 30, 2017, the following comprised the notes payable to GDB (in thousands):

| | | |
|---|---|---|
| PRMeSA | $ | 282,445 |
| PRHIA | | 183,251 |
| PPA | | 20,863 |
| Notes payable to GDB | $ | 486,559 |

On October 14, 2010, the Legislature approved a new article 9A to Act No. 66-1978, by which it authorized PRMeSA, a blended component unit, to incur on an obligation of up to $285 million to be deposited in a special GDB account and to be used for payment of debts to suppliers, agencies and a reserve fund for self-insurance of PRMeSA, and to provide operational liquidity to ease PRMeSA's fiscal situation. GDB was named fiscal agent to administer and monitor the use of these funds. The Commonwealth is required to honor the payment of this obligation with future legislative appropriations to be made every year until fiscal year 2041–2042. Borrowings under this line of credit agreement bear interest at variable rates based on 150 basis points over the prime rate. No legislative appropriations have been made since 2015 to cover the principal payments as they have become due. As of June 30, 2017, approximately $282.4 million was outstanding.

On March 14, 2011, PRHIA, a blended component unit, entered into a credit agreement with GDB in order to pay its obligations to healthcare insurers incurred prior to fiscal year 2010. The aggregate principal amount of the non-revolving line of credit was $186 million. This line is payable in nine payments of $20.7 million each due on March 14 of the years 2015 through 2023, through future Commonwealth annual legislative appropriations. Interest is accrued at a fluctuating annual rate of interest equal to the greatest of 150 basis points over the prime rate or 6%. No legislative appropriations were made in 2016 and 2017 to cover the principal payments scheduled for March 14, 2016 and 2017. As of June 30, 2017, the outstanding principal balance amounted to approximately $183.3 million.

On August 29, 2014, the PPA, a blended component unit, entered into an $60 million line of credit agreement with GDB to cover the operational, maintenance, equipment acquisition and permanent improvement costs of the Ports of the Americas Rafael Cordero Santiago, pursuant to the provisions of Act No. 240-2011, which created the PPA (assets are owned by PA as of June 30, 2017). Borrowings under this line of credit agreement bear interest based on the rates borne by the general obligation of the Commonwealth. These rates should be revised on a quarterly basis provided, however, that the interest may never be less than 7% nor greater than 12%. Interest during fiscal

177

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

year 2017 was 7.78%. The line of credit has a maturity of June 30, 2044, and its principal and interest payments are payable through annual legislative appropriations. As of June 30, 2017, the outstanding principal balance was approximately $20.9 million, which is payable from future Commonwealth's legislative appropriations.

*(h)  Obligations under Capital Lease Arrangements*

The Commonwealth's Governmental Activities are obligated under capital leases with third parties that expire through 2044 for land, buildings, and equipment. The present value of future minimum capital lease payments at June 30, 2017 reported in the accompanying government-wide statement of net position was as follows (in thousands):

| Year ending June 30: | | |
|---|---|---:|
| 2018 | $ | 35,077 |
| 2019 | | 33,996 |
| 2020 | | 33,881 |
| 2021 | | 33,487 |
| 2022 | | 33,354 |
| 2023-2027 | | 166,669 |
| 2028-2032 | | 157,004 |
| 2033-2037 | | 108,463 |
| 2038-2042 | | 88,048 |
| 2043-2044 | | 24,947 |
| Total future minimum lease payments | | 714,926 |
| Less amount representing interest costs | | (379,312) |
| Present value of minimum lease payments | $ | 335,614 |

Leased land, buildings, and equipment under capital leases included in capital assets at June 30, 2017, include the following (in thousands):

| | | |
|---|---|---:|
| Land | $ | 7,960 |
| Buildings | | 438,784 |
| Equipment | | 4,302 |
| Subtotal | | 451,046 |
| Less accumulated amortization | | (103,929) |
| Total | $ | 347,117 |

Amortization applicable to capital leases and included within depreciation expense of capital assets amounted to approximately $12.9 million in 2017.

*(i)  Net Pension Liability*

The amount reported as net pension liability in the government-wide financial statements of approximately $43.4 billion of which approximately $170.3 million is due within one year at June 30, 2017, represents the Primary Government's proportionate share of the ERS calculation of the net pension liability measured as the total pension liability less the amount of the ERS' fiduciary net position,

178

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

plus the sum of the full TRS and JRS measure of its total pension liability less the amount of its corresponding fiduciary net positions (see Note 18).

**(j)   *Other Post Employment Benefit Obligation***

The amount reported as other post-employment benefit obligation in the Governmental Activities of approximately $270.2 million at June 30, 2017 represents the cumulative amount owed by the Commonwealth for the unfunded prior years' actuarially required other post-employment benefit contributions to the ERS MIPC, JRS MIPC, and TRS MIPC (see Note 19).

**(k)   *Compensated Absences***

Long-term liabilities include approximately $551.8 million and $18.9 million of accrued compensated absences recorded as Governmental and Business-type activities, respectively, at June 30, 2017.

**(l)   *Obligation for Unpaid Lottery Prizes***

The amount reported as unpaid lottery prizes represents the lottery prizes payable of the Lottery of Puerto Rico (commonly known as Traditional Lottery) and the Additional Lottery System (commonly known as Lotto) jointly known as the Lotteries at June 30, 2017. The minimum annual payments related to unpaid awards of both lotteries were as follows (in thousands):

|  | Principal | Interest | Total |
|---|---|---|---|
| Year ending June 30: |  |  |  |
| 2018 | $        61,543 | 9,698 | 71,241 |
| 2019 | 13,062 | 8,941 | 22,003 |
| 2020 | 11,363 | 8,315 | 19,678 |
| 2021 | 9,725 | 7,457 | 17,182 |
| 2022 | 8,606 | 6,952 | 15,558 |
| 2023–2027 | 28,726 | 23,539 | 52,265 |
| 2028–2032 | 12,918 | 9,282 | 22,200 |
| 2033–2034 | 1,674 | 1,275 | 2,949 |
| Total | $      147,617 | 75,459 | 223,076 |

The minimum annual payments related to unpaid awards of Lotto include an unclaimed prizes liability (not lapsed) of approximately $5.6 million at June 30, 2017, which is reported as prizes payable – current portion.

The liability for unpaid lottery prizes is reported in Business-type activities of the accompanying statement of net position and statement of net position of the proprietary funds.

**(m)   *Voluntary Termination Benefits Payable***

On July 2, 2010, the Commonwealth enacted Act No. 70 to establish a program that provides early retirement benefits or economic incentives for voluntary employment termination to eligible employees, as defined. Act No. 70-2010 applies to agencies and component units whose budgets are funded in whole or in part by the General Fund.

Act No. 70-2010 established that early retirement benefits (early retirement program) will be provided to eligible employees that have completed between 15 to 29 years of credited services in the Retirement System and will consist of bi-weekly benefits ranging from 37.5% to 50% of each employee's salary, as defined. Pursuant to Act No. 70-2010, the Commonwealth, as employer, will continue making the applicable employer contributions to the Retirement System, as well as covering the annuity payments

179

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

to the employees opting for early retirement, until both the years of service and age requirements for full vesting would have occurred, at which time the applicable Retirement System will continue making the annuity payments.

Economic incentives are available to eligible employees who have less than 15 years of credited service in the Retirement System (incentivized resignation program) or who have at least 30 years of credited service in the Retirement System and who have the age for retirement (incentivized retirement program). Economic incentives will consist of a lump sum payment ranging from one month to six months' salary based on employment years.

Additionally, eligible employees that choose to participate in the early retirement program or in the incentivized resignation program are eligible to receive health plan coverage for up to 12 months in a health plan selected by management of the Commonwealth.

Act No. 70 allows certain component units of the Commonwealth that operate with their own resources to implement a similar program that provides benefits for early retirement or economic incentives for voluntary employment termination to eligible employees, as defined. The benefits and the requirements are the same as provided by Act No. 70, except as follows: in the early retirement benefit program, the component unit will make the employee and employer contributions to the Retirement System and pay the corresponding pension until the employee complies with the requirements of age and 30 years of credited service in the Retirement System; and in the incentivized retirement program, the component unit will make the employee and the employer contributions to the Retirement System for a five year period.

On December 8, 2015, Act 211 was signed, called the "Voluntary Pre-Retirement Program" (the "Program"). It was created to establish a program that identifies eligible employees, who can be separated voluntarily and incentivized from their employment before they meet the requirements to retire.

The purpose of this program is to offer incentives for personnel who have been contributing to the Retirement System (the "System") before April 1, 1990 under the Act No. 447-1951 or who began to contribute at a later date, and have made all the corresponding payments before April 1, 1990, without having received a refund of their contributions and who at least have 20 years of service registered.

To ensure that this program does not affect the services to the citizenship or the operation of the agencies, only career employees who occupy positions which do not provide direct services, that are not essential for the operation of the agency or whose positions could be occupied by transfers within and between agencies may participate in the program. Essential service positions are those positions whose functions are specialized, essential or indispensable to the effective operation of the agency, so that it can serve the public purpose for which it was created as a governmental body.

At June 30, 2017, unpaid long-term benefits granted in Act No. 70-2010 and Act. No. 211-2015 were discounted at interest rates that ranged from 0.15% to 3.60% at the Primary Government level and from 1% to 2.9% at the component units level.

*(n)  Liability for Unemployment, Disability and Health Insurance*

The Commonwealth provides unemployment compensation, occupational disability, and drivers' insurance coverage to public and private employees through various insurance programs administered by the DLHR. These insurance programs cover workers against unemployment, temporary disability, or death because of work or employment related accidents or because of illness suffered as consequence of their employment.

Also, the Commonwealth, through PRHIA (a blended component unit), is responsible for implementing, administering, and negotiating a health insurance system, through contracts with insurance underwriters,

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

to provide quality medical and hospital care to the Commonwealth residents regardless of their financial condition and capacity to pay. PRHIA pays a monthly premium to such insurance underwriters based on a contracted premium and the number of members subscribed in the health plan. Funds to pay for such premiums are requested from the Commonwealth, net of funds available for such purposes from all other sources.

Under the provisions of Act No. 105-2002, which amends Act No. 72-1993, PRHIA was authorized to negotiate directly with health providers under a pilot program. PRHIA has, since then, entered into different direct contracts to cover the insured population of different regions and municipalities. Since November 1, 2006 through September 1, 2010, PRHIA directly contracted providers that served approximately 190,000 lives from the metro north region. At June 30, 2011, PRHIA has direct contracting projects with the municipalities of Vieques and Guaynabo, and effective October 1, 2011, the projects were expanded to cover the west, the metro north, the north, San Juan, the northeast, and the virtual regions under a new arrangement with a new insurance underwriter as third party administrator. In addition, PRHIA implemented certain cost containment strategies to control costs, such as establishing a co-payment that applies for the unjustified use of emergency rooms, detection and control of prescription drug overuse, implementation of a disease management program for respiratory conditions, modification of provider fees, and better coordination of benefits for members of the population that have other medical insurance.

PRHIA establishes a liability to cover the estimated amount to be paid to providers based on experience and accumulated statistical data. The estimates of medical claims incurred but not reported and other medical expense payments is developed using actuarial methods and assumptions based upon payment patterns, inflation of medical costs, historical developments, and other relevant factors.

The following table provides a reconciliation of the beginning and ending liability for incurred but unpaid benefits and benefit adjustment expenses for the period ended June 30, 2017 (in thousands):

| | | PRHIA | Unemployment insurance | Nonmajor proprietary funds | Totals |
|---|---|---|---|---|---|
| Liability for incurred but unpaidbenefits and benefit adjustment expenses at July 1 | $ | 115,961 | 53,288 | 802 | 170,051 |
| Total incurred benefits | | — | 122,642 | 2,235 | 124,877 |
| Total benefit payments | | (75,824) | (126,499) | (2,392) | (204,715) |
| Liability for incurred but unpaidbenefits and benefit adjustment expenses at June 30 | $ | 40,137 | 49,431 | 645 | 90,213 |

The liability for benefits claims is reported as a liability for unemployment, disability and health insurance in the Business-type activities of the accompanying statement of net position and in the statement of net position of the proprietary funds. The liability as of June 30, 2017, amounts to approximately $90.2 million.

181

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(o)  *Other Long Term Liabilities***

The remaining long-term liabilities of Governmental Activities at June 30, 2017 include (in thousands):

| | | |
|---|---|---|
| Liability for legal claims and judgments | | |
| (note 17) | $ | 1,303,768 |
| Liability to U.S. Army Corps of | | |
| Engineers (note 11) | | 212,637 |
| Liability for custodial credit risk loss | | |
| and uncollectible loans receivable | | |
| of State Revolving Funds | | 188,965 |
| Accrued Employees' Christmas bonus | | 63,614 |
| Liability for federal cost disallowances | | |
| (note 17) | | 56,526 |
| Other | | 23,878 |
| Total | $ | 1,849,388 |

As described in Note 11, the Commonwealth has a debt obligation with the U.S. Army Corps of Engineers in relation to its estimated allocated share of the construction costs associated with the Cerrillos Dam and Reservoir Project. Late in April 2011, the Commonwealth received a final debt agreement from the U.S. Army Corps of Engineers establishing a repayment schedule for its allocated share of the construction costs associated with the Cerrillos Dam and Reservoir Project, amounting to $214 million, excluding those costs for items built for recreational purposes. On October 10, 2012, the U.S. Army Corps of Engineers placed such debt into the U.S. Treasury Department Offset Program (the Offset Program) until May 2013 (the month in which the Offset Program was stopped). On March 21, 2014, the U.S. Army Corps of Engineers granted certain concessions on this obligation of the Commonwealth by forgiving the balance already due and payable in the amount of $35.4 million and approving a new payment plan proposed by the Secretary of the DOT for the remaining debt obligation. This new payment plan reduced the interest rate from 6.063% to 1.50% and waived all cumulative penalty interest and fees, which reduced the annual payment from approximately $12.9 million to approximately $7.1 million for the remaining term of the debt. The new payment plan consists of 33 annual payments of $7.1 million, including interest, from June 7, 2014 until June 7, 2046. These concessions qualified as a troubled debt restructuring, where the total future cash payments specified by the new terms exceeded the carrying value of the old debt, including the accrued balance matured and payable of $35.4 million. Under such circumstances, the effects of the new terms are accounted for prospectively without modifying the carrying amount of the debt in the statement of net position.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The unpaid allocated share of the construction costs associated with the Cerrillos Project amounted to approximately $165 million at June 30, 2017. Debt service requirements on this debt obligation at June 30, 2017 were as follows (in thousands):

| Year(s) ending June 30: | Principal | Interest | Total |
|---|---:|---:|---:|
| 2018 | $ 4,595 | 2,481 | 7,076 |
| 2019 | 4,664 | 2,412 | 7,076 |
| 2020 | 4,734 | 2,342 | 7,076 |
| 2021 | 4,805 | 2,271 | 7,076 |
| 2022 | 4,877 | 2,199 | 7,076 |
| 2023–2027 | 25,507 | 9,878 | 35,385 |
| 2028–2032 | 27,478 | 7,907 | 35,385 |
| 2033–2037 | 29,601 | 5,783 | 35,384 |
| 2038–2042 | 31,889 | 3,495 | 35,384 |
| 2043–2047 | 27,277 | 1,031 | 28,308 |
| Total | $ 165,427 | 39,799 | 205,226 |

In addition, the Commonwealth has a debt obligation of approximately $47.2 million with the U.S. Army Corps of Engineers in relation to its estimated allocated share of the construction costs associated with the recreational part of the Cerrillos Dam and Reservoir Project, including accrued interest of approximately $6.8 million, at June 30, 2017. The final debt agreement with the U.S. Army Corps of Engineers for the recreational part of the Cerrillos Dam and Reservoir Project has not been finalized, and therefore, terms and conditions could differ from those estimated. The related debt is expected to be payable in annual installment payments over a 35-year period. However, the debt has been presented as a long-term liability payable after one year in the accompanying statement of net position since the commencement date of repayment has not yet been determined.

The Commonwealth recorded a contingent liability for the custodial credit risk loss on deposits held at GDB by the Clean Water State Revolving Funds amounting to approximately $189 million at June 30, 2017.

The remaining other long-term liabilities within Business-type activities at June 30, 2017 are composed of an accrued pension costs and a self-insurance reserve for approximately $99.6 million and $2.2 million, respectively, corresponding to PRMeSA.

*Fiduciary Funds*

On January 31, 2008, ERS issued its first of three series of bonds (collectively, ERS Bonds), which consisted of approximately $1.6 billion aggregate principal amount of Senior Pension Funding Bonds, Series A (the Series A Bonds). On June 2, 2008, ERS issued its second series of ERS Bonds, which consisted of approximately $1,059 million aggregate principal amount of Senior Pension Funding Bonds, Series B (the Series B Bonds). Finally, on June 30, 2008, ERS issued its third and final series of ERS Bonds, which consisted of approximately $300 million aggregate principal amount of Senior Pension Funding Bonds, Series C (the Series C Bonds).

The ERS Bonds are limited, nonrecourse obligations of ERS, payable solely from employer contributions made after the date of issuance of the first series of the ERS Bonds, and from funds held on deposit with the Bank of New York Mellon (the Fiscal Agent). ERS Bonds are not payable from contributions made to ERS by participating employees, or from the assets acquired with the proceeds of the ERS Bonds, or from

183

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

employer contributions released by the Fiscal Agent to ERS after funding of required reserves, or from any other asset of ERS. ERS invested the proceeds of ERS Bonds and used these investments and the earnings thereon to provide pension benefits to its beneficiaries. The validity of the ERS Bonds and the scope of the ERS Bondholders' liens are the subject of ongoing litigation, as discussed in Note 17.

On August 23, 2017, the Commonwealth enacted Act 106-2017 which instituted a PayGo system in which pension benefits to ERS participants would be paid for by the Commonwealth. For additional information regarding the PayGo system, refer to Notes 2 and 3.

For additional information regarding the claims against ERS and the source of repayment ERS bonds, refer to Note 3.

As of June 30, 2017, the outstanding principal balance of ERS Bonds is as follows (in thousands):

| Description | |
|---|---:|
| Series A Bonds: | |
| Capital Appreciation Bonds, maturing in 2028, bearing interest at 6.20% | $ 80,042 |
| Term Bonds, maturing in 2023, bearing interest at 5.85% | 200,000 |
| Term Bonds, maturing from 2031 through 2038, bearing interest at 6.15% | 679,000 |
| Term Bonds, maturing from 2039 through 2042, bearing interest at 6.20% | 332,770 |
| Term Bonds, maturing from 2055 through 2058, bearing interest at 6.45% | 332,000 |
| Total Series A Bonds outstanding | 1,623,812 |
| Series B Bonds: | |
| Capital Appreciation Bonds, maturing from 2028 through 2030, bearing interest at 6.40% | 198,959 |
| Capital Appreciation Bonds, maturing from 2031 through 2034, bearing interest at 6.45% | 231,597 |
| Term Bonds, maturing in 2031, bearing interest at 6.25% | 117,100 |
| Term Bonds, maturing from 2036 through 2039, bearing interest at 6.30% | 270,000 |
| Term Bonds, maturing from 2055 through 2058, bearing interest at 6.55% | 429,000 |
| Total Series B Bonds outstanding | 1,246,656 |
| Series C Bonds: | |
| Capital Appreciation Bonds, maturing in 2030, bearing interest at 6.50% | 3,919 |
| Term Bonds, maturing in 2028, bearing interest at 6.15% | 110,000 |
| Term Bonds, maturing in 2038, bearing interest at 6.25% | 45,000 |
| Term Bonds, maturing in 2043, bearing interest at 6.30% | 143,000 |
| Total Series C Bonds outstanding | 301,919 |
| Total bonds outstanding | 3,172,387 |
| Less bonds discount | (5,915) |
| Bonds payable – net | $ 3,166,472 |

**Series A Bonds** – The aggregate principal amount of the Series A Bonds issued amounted to approximately $1,589 million of which approximately $1,544 million was issued as term bonds (the Series A Term Bonds) and $45 million was issued as capital appreciation bonds (the Series A Capital Appreciation Bonds). Interest on the Series A Term Bonds is payable monthly on the first day of each month. Interest on the Series A Capital Appreciation Bonds is not payable on a current basis, but is added to the principal of the Capital

184

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Appreciation Bonds on each January 1 and July 1 (Compounding Dates), and is treated as if accruing in equal daily amounts between Compounding Dates, until paid at maturity or upon redemption. Interest must be computed based on a 360-day year consisting of twelve 30-day months. The Series A Bonds are subject to redemption at the option of ERS from any source, in whole or in part at any time on or after July 1, 2018, at a redemption price equal to the principal amount (in the case of Series A Capital Appreciation Bonds, the accreted amount) of the Series A Bonds, plus accrued interest to the redemption date, and without premium.

In addition, the following Series A Term Bonds are subject to mandatory redemption in part commencing on July 1, 2021 to the extent of the sinking fund requirement for said bonds set forth below at a redemption price equal to 100% of the principal amount thereof plus accrued interest as follows (in thousands):

| Redemption period | Subject bonds | | Amount |
|---|---|---|---|
| July 1, 2021 | Term bonds maturing July 1, 2023 | $ | 50,000 |
| July 1, 2022 | Term bonds maturing July 1, 2023 | | 70,000 |
| July 1, 2023 | Term bonds maturing July 1, 2023 | | 80,000 |
| | | | 200,000 |
| July 1, 2031 | Term bonds maturing July 1, 2038 | | 3,000 |
| July 1, 2032 | Term bonds maturing July 1, 2038 | | 4,500 |
| July 1, 2033 | Term bonds maturing July 1, 2038 | | 4,000 |
| July 1, 2034 | Term bonds maturing July 1, 2038 | | 133,500 |
| July 1, 2035 | Term bonds maturing July 1, 2038 | | 133,500 |
| July 1, 2036 | Term bonds maturing July 1, 2038 | | 133,500 |
| July 1, 2037 | Term bonds maturing July 1, 2038 | | 133,500 |
| July 1, 2038 | Term bonds maturing July 1, 2038 | | 133,500 |
| | Subtotal | | 679,000 |
| | Total | $ | 879,000 |

**Series B Bonds** – The aggregate principal amount of the Series B Bonds amounted to approximately $1,059 million of which approximately $816 million was issued as term bonds (the Series B Term Bonds) and $243 million was issued as capital appreciation bonds (the Series B Capital Appreciation Bonds). Interest on the Series B Term Bonds is payable monthly on the first day of each month. Interest on the Series B Capital Appreciation Bonds is not payable on a current basis, but is added to the principal of the Series B Capital Appreciation Bonds on each January 1 and July 1 (Compounding Dates), and is treated as if accruing in equal daily amounts between Compounding Dates, until paid at maturity or upon redemption. Interest must be computed based on a 360-day year consisting of twelve 30-day months. The Series B Bonds are subject to redemption at the option of ERS from any source, in whole or in part at any time on or after July 1, 2018, at a redemption price equal to the principal amount (in the case of Series B Capital Appreciation Bonds, the accreted amount) of the Series B Bonds, plus accrued interest to the redemption date, and without premium.

**Series C Bonds** – The aggregate principal amount of the Series C Bonds amounted to approximately $300 million of which approximately $298 million was issued as term bonds (the Series C Term Bonds) and $2 million was issued as capital appreciation bonds (the Series C Capital Appreciation Bonds). Interest on the Series C Term Bonds is payable monthly on the first day of each month. Interest on the Series C Capital Appreciation Bonds is not payable on a current basis but are added to the principal of the Series C Capital Appreciation Bonds on each January 1 and July 1 (Compounding Dates), and is treated as if accruing in equal daily amounts between Compounding Dates, until paid at maturity or upon redemption. Interest must be computed based on a 360-day year consisting of twelve 30-day months. The Series C Bonds are subject

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

to redemption at the option of ERS from any source, in whole or in part at any time on or after July 1, 2018, at a redemption price equal to the principal amount (in the case of Series C Capital Appreciation Bonds, the accreted amount) of the Series C Bonds, plus accrued interest to the redemption date, and without premium.

In addition, the following Series C Term Bonds are subject to mandatory redemption in part commencing on July 1, 2024 to the extent of the sinking fund requirement for said bonds set forth below at a redemption price equal to 100% of the principal amount thereof plus accrued interest as follows (in thousands):

| Redemption period | Subject bonds | Amount |
|---|---|---|
| July 1, 2024 | Term bonds maturing July 1, 2028 | $ 18,700 |
| July 1, 2025 | Term bonds maturing July 1, 2028 | 22,000 |
| July 1, 2026 | Term bonds maturing July 1, 2028 | 29,150 |
| July 1, 2027 | Term bonds maturing July 1, 2028 | 36,300 |
| July 1, 2028 | Term bonds maturing July 1, 2028 | 3,850 |
| | Subtotal | 110,000 |
| July 1, 2029 | Term bonds maturing July 1, 2038 | 100 |
| July 1, 2030 | Term bonds maturing July 1, 2038 | 540 |
| July 1, 2031 | Term bonds maturing July 1, 2038 | 100 |
| July 1, 2032 | Term bonds maturing July 1, 2038 | 3,420 |
| July 1, 2033 | Term bonds maturing July 1, 2038 | 4,320 |
| July 1, 2034 | Term bonds maturing July 1, 2038 | 100 |
| July 1, 2035 | Term bonds maturing July 1, 2038 | 11,940 |
| July 1, 2036 | Term bonds maturing July 1, 2038 | 2,160 |
| July 1, 2037 | Term bonds maturing July 1, 2038 | 7,920 |
| July 1, 2038 | Term bonds maturing July 1, 2038 | 14,400 |
| | Subtotal | 45,000 |
| July 1, 2039 | Term bonds maturing July 1, 2043 | 28,600 |
| July 1, 2040 | Term bonds maturing July 1, 2043 | 28,600 |
| July 1, 2041 | Term bonds maturing July 1, 2043 | 28,600 |
| July 1, 2042 | Term bonds maturing July 1, 2043 | 28,600 |
| July 1, 2043 | Term bonds maturing July 1, 2043 | 28,600 |
| | Subtotal | 143,000 |
| | Total | $ 298,000 |

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Debt service requirements in future years on ERS bonds as of June 30, 2017 were as follows (in thousands):

| Year(s) ending June 30: | Principal | Interest | Total |
|---|---|---|---|
| 2018 | $ — | 166,519 | 166,519 |
| 2019 | — | 166,519 | 166,519 |
| 2019 | — | 166,519 | 166,519 |
| 2021 | — | 166,519 | 166,519 |
| 2023–2027 | — | 166,519 | 166,519 |
| 2028–2032 | 200,000 | 751,232 | 951,232 |
| 2033–2037 | 1,036,595 | 702,754 | 1,739,349 |
| 2038–2042 | 452,745 | 695,887 | 1,148,632 |
| 2043–2047 | 1,210,220 | 407,702 | 1,617,922 |
| 2048–2052 | 180,550 | 256,577 | 437,127 |
| 2053–2057 | — | 247,568 | 247,568 |
| 2058–2062 | 362,800 | 212,062 | 574,862 |
| | 398,200 | 14,041 | 412,241 |
| | 3,841,110 | $ 4,120,418 | 7,961,528 |
| Less unaccreted interest | (668,723) | | |
| Less unamortized discount | (5,915) | | |
| Total | $ 3,166,472 | | |

*Discretely Presented Component Units*

Appropriations bonds, bonds, and notes payable are those liabilities that are paid out of the discretely presented component units' own resources. These obligations do not constitute a liability or debt of the Primary Government.

*(a)* **Commonwealth Appropriation Bonds**

Commonwealth appropriation bonds payable outstanding at June 30, 2017 were as follows (in thousands):

| Component unit | Interest rates | Maturity through | Balance at June 30, 2016 | Additions | Reductions | Balance at June 30, 2017 | Amounts Due within one year |
|---|---|---|---|---|---|---|---|
| Major component units: | | | | | | | |
| PRASA | 3.10% – 6.50% | 2032 | $ 416,320 | — | 262 | 416,058 | 19,390 |
| GDB | 3.10% – 6.50% | 2032 | 3,334 | 2 | — | 3,336 | 170 |
| Sub-total | | | 419,654 | 2 | 262 | 419,394 | 19,560 |
| Nonmajor component units | 3.10% – 6.50% | 2032 | 108,814 | — | 71 | 108,743 | 8,432 |
| Total | | | $ 528,468 | 2 | 333 | 528,137 | 27,992 |

187

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Debt service requirements on the Commonwealth's appropriation bonds payable with fixed maturities at June 30, 2017 were as follows (in thousands):

|  | | Principal | Interest | Total |
|---|---|---|---|---|
| Year(s) ending June 30: | | | | |
| 2018 | $ | 27,992 | 85,774 | 113,766 |
| 2019 | | 9,229 | 27,940 | 37,169 |
| 2020 | | 9,598 | 27,554 | 37,152 |
| 2021 | | 9,996 | 27,134 | 37,130 |
| 2022 | | 10,431 | 26,604 | 37,035 |
| 2023–2027 | | 89,337 | 128,692 | 218,029 |
| 2028–2032 | | 366,125 | 45,323 | 411,448 |
| | | 522,708 | $ 369,021 | 891,729 |
| Premium | | 5,490 | | |
| Discount | | (61) | | |
| Total | $ | 528,137 | | |

The above schedule has been presented in accordance with original terms of the bonds payable and do not reflect the effects, if any, that may result from the PROMESA Title III proceedings or any other debt restructuring proceeding. Accordingly, the effects of the PROMESA Title III or any other debt restructuring proceeding may affect the carrying amounts, interest rates and the repayment terms. See Note 3 and Note 23 for additional information.

**(b)  Revenue Bonds**

Revenue bonds outstanding at June 30, 2017 were as follows (in thousands):

| Component Unit | Interest rates | Maturity through | Balance at June 30, 2016 | Additions | Reductions | Balance at June 30, 2017 | Due within one year |
|---|---|---|---|---|---|---|---|
| Major component units: | | | | | | | |
| GDB | 2.96%–6.56% | 2040 | $ 151,797 | — | 35,320 | 116,477 | 30,414 |
| PRHTA | 2.25%–6.50% | 2046 | 4,487,343 | 6,796 | 160,936 | 4,333,203 | 130,725 |
| PREPA | 4.00%–10.00% | 2043 | 8,366,753 | — | 10,439 | 8,356,314 | 584,582 |
| PRASA | 2.00%–6.125% | 2056 | 4,030,103 | — | 50,277 | 3,979,826 | 68,852 |
| UPR | 5.00%–5.63% | 2036 | 516,172 | — | 25,017 | 491,155 | 24,455 |
| Sub-total | | | 17,552,168 | 6,796 | 281,989 | 17,276,975 | 839,028 |
| Nonmajor component units | 2.75%–6.75% | 2036 | 1,405,363 | 562 | 110,223 | 1,295,702 | 97,855 |
| Total | | | $ 18,957,531 | 7,358 | 392,212 | 18,572,677 | 936,883 |

PREPA, a major discretely presented component unit, and PRIDCO, a nonmajor discretely presented component unit, have bonds that may have acceleration provisions contained in the Trust Agreements. Due to the fact that PREPA is currently a debtor in a Title III proceeding under PROMESA any action that would be taken to accelerate the bonds is subject to the automatic stay in that proceeding. Therefore,

188

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

the acceleration provision is not relevant despite the fact that an event of default arguably exists under the Trust Agreement. As for PRIDCO, the Trustee has not sent a default notice or declared the defaulted principal on all bonds outstanding due and payable immediately subject to the applicable acceleration provisions.

Debt service requirements on discretely presented component units' revenue bonds with fixed maturities at June 30, 2017 were as follows (in thousands):

| Years ending June 30: | | Principal | Interest | Total |
|---|---|---|---|---|
| 2018 | $ | 936,883 | 4,976,737 | 5,913,620 |
| 2019 | | 741,721 | 3,217,641 | 3,959,362 |
| 2020 | | 699,925 | 2,860,396 | 3,560,321 |
| 2021 | | 691,953 | 2,530,085 | 3,222,038 |
| 2022 | | 676,097 | 2,210,620 | 2,886,717 |
| 2023-2027 | | 3,788,454 | 7,001,051 | 10,789,505 |
| 2028-2032 | | 3,544,767 | 2,738,009 | 6,282,776 |
| 2033-2037 | | 3,217,948 | 1,532,153 | 4,750,101 |
| 2038-2042 | | 2,862,930 | 674,995 | 3,537,925 |
| 2043-2047 | | 911,301 | 147,222 | 1,058,523 |
| 2048-2052 | | 155,123 | 6,110 | 161,233 |
| 2053-2057 | | 3,090 | 80 | 3,170 |
| Total | | 18,230,192 | $ 27,895,099 | 46,125,291 |
| Premium | | 391,113 | | |
| Discount | | (48,628) | | |
| | $ | 18,572,677 | | |

The above schedule has been presented in accordance with original terms of the revenue bonds and do not reflect the effects, if any, that may result from the PROMESA Title III proceedings or any other debt restructuring proceeding. Accordingly, the effects of the PROMESA Title III or any other debt restructuring proceeding may affect the carrying amounts, interest rates and the repayment terms. See Note 3 and Note 23 for additional information.

Changes in deferred outflows of resources related to losses on the refunding of some of the bonds referred to in the table above follow (in thousands):

| Component unit | | Balance at June 30, 2016 | Reductions | Balance at June 30, 2017 |
|---|---|---|---|---|
| Major component units: | | | | |
| PRHTA | $ | 104,284 | 10,969 | 93,315 |
| PREPA | | 48,423 | 7,429 | 40,994 |
| PRASA | | 27,452 | 4,425 | 23,027 |
| UPR | | 2,225 | 282 | 1,943 |
| GDB | | 2,376 | 225 | 2,151 |
| Nonmajor component units | | 16,929 | 2,108 | 14,821 |
| Total | $ | 201,689 | 25,438 | 176,251 |

189

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The table that follows presents debt service payments on PREPA's variable rate bonds and the net payments on associated hedging derivative instruments as of June 30, 2017. Such variable rate bonds are included within bonds payable in the discretely presented component units column. Although interest rates on variable rate debt and the current reference rate of hedging derivative instruments change over time, the calculations included in the table below are based on the assumption that the variable rate and the current reference rate of the hedging derivative instrument at June 30, 2017 will remain the same for their term (in thousands).

| | Variable-Rate Bonds | | Hedging derivative instruments, net | Total |
|---|---|---|---|---|
| Year(s) ending June 30: | Principal | Interest | | |
| 2018 | $ — | 2,374 | 7,943 | 10,317 |
| 2019 | — | 2,374 | 7,943 | 10,317 |
| 2020 | — | 2,374 | 7,943 | 10,317 |
| 2021 | — | 2,374 | 7,943 | 10,317 |
| 2022 | — | 2,374 | 7,943 | 10,317 |
| 2023-2027 | — | 11,870 | 39,716 | 51,586 |
| 2028-2029 | 252,875 | 4,748 | 15,887 | 273,510 |
| Total | $ 252,875 | 28,488 | 95,318 | 376,681 |

Several discretely presented component units have defeased certain revenue bonds by placing the proceeds of new bonds in irrevocable trusts to provide for all future debt service payments on the old debts. Accordingly, the trust accounts' assets and liabilities for the defeased bonds are not included in the statement of net position. As of June 30, 2017, the following bonds are considered defeased (in thousands):

| | Amount outstanding |
|---|---|
| PREPA | $ 71,300 |
| PRHTA | 200,840 |
| Nonmajor component units | 170,900 |
| Total | $ 443,040 |

Since 2014, PREPA has entered into certain forbearance agreements with certain insurers and certain beneficiary owners of Power Revenue Bonds, banks that provide fuel lines of credit and the GDB (collectively, the Forbearing Creditors). As provided in the Forbearance Agreements, the Forbearing Creditors agreed not to exercise certain rights and remedies under their financing agreements. Under the Forbearance Agreements PREPA's obligations to pay any and all principal and interest payments on the Power Revenue Bonds continued. The Forbearance Agreement expired on November 5, 2015, but the agreement of the Forbearing Creditors to refrain from exercising certain rights and remedies was extended under the PREPA RSA, which is currently pending Title III Court approval as discussed in Note 3. The Forbearing Creditors consented permitting PREPA not to make transfers to the Revenue Fund or the Sinking Fund, delay making certain payments that became due to the Fuel Line Lenders, use

190

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

approximately $280 million held in its construction fund for payment of current expenses in addition to capital improvements, increase the thresholds required for the exercise of remedies under the Trust Agreement, allow for the issuance of $130.7 million in Bonds to the Monoline Bond Insurers (the 2015A Bonds) that matured on January 1, 2016 and were paid in accordance with their terms.

From January 2016 until January 2017, PREPA was able to make the principal and interest payments on its Bonds as they became due. Subsequently, PREPA has not made the principal and interest payments due on the Bonds on July 3, 2017, January 1, 2018 and thereafter.

*(c)* ***Notes Payable to Financial Institutions***

The outstanding balance of notes payable to financial institutions at June 30, 2017 is as follows (in thousands):

| Component unit | Interest rates | Maturity through | Balance at June 30, 2016 | Additions | Reductions | Balance at June 30, 2017 | Due within one year |
|---|---|---|---|---|---|---|---|
| Major component units: | | | | | | | |
| GDB | 3.375%–8.00% | 2042 | $ 3,839,903 | — | 1,368 | 3,838,535 | 946,685 |
| PREPA | 2.00%–7.25% | 2023 | 715,569 | 4,614 | 2,717 | 717,466 | 696,897 |
| PRASA | 8.75 % | 2018 | 4,153 | — | 2,543 | 1,610 | 1,610 |
| UPR | 5.95% | 2022 | 713 | 720 | 560 | 873 | 226 |
| SIFC | 6.31%–6.84% | 2019 | 15,345 | — | 5,966 | 9,379 | 7,148 |
| Sub-total | | | 4,575,683 | 5,334 | 13,154 | 4,567,863 | 1,652,566 |
| Nonmajor component units | 4.12%-7.50%, | 2031 | | | | | |
| Variable | | | 423,748 | 4,081 | 27,727 | 400,102 | 50,484 |
| Total | | | $ 4,999,431 | 9,415 | 40,881 | 4,967,965 | 1,703,050 |

Debt service requirements on discretely presented component units' notes payable with fixed maturities at June 30, 2017 were as follows (in thousands):

| | Principal | Interest | Total |
|---|---|---|---|
| Year(s) ending June 30: | | | |
| 2018 | $ 1,703,050 | 331,158 | 2,034,208 |
| 2019 | 862,855 | 145,690 | 1,008,545 |
| 2020 | 445,102 | 101,473 | 546,575 |
| 2021 | 457,172 | 77,209 | 534,381 |
| 2022 | 156,680 | 68,340 | 225,020 |
| 2023-2027 | 1,096,791 | 183,322 | 1,280,113 |
| 2028-2032 | 189,663 | 42,637 | 232,300 |
| 2033-2037 | 32,587 | 13,104 | 45,691 |
| 2038-2042 | 24,065 | 4,181 | 28,246 |
| Total | $ 4,967,965 | 967,114 | 5,935,079 |

The above schedule has been presented in accordance with original terms of the notes payable and do not reflect the effects, if any, that may result from the PROMESA Title III proceedings or any other debt restructuring proceeding, including the effect of the GDB Qualifying Modification. Accordingly, the effects

191

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

of the PROMESA Title III or any other debt restructuring proceeding may affect the carrying amounts, interest rates and the repayment terms. See Note 3 and Note 23 for additional information.

**(14) Guaranteed and Appropriation Debt**

**(a) Guaranteed Debt**

The Commonwealth may provide guarantees for the repayment of certain borrowings of component units to carry out designated projects. The guarantees are backed by the full faith and credit of the Commonwealth. The guarantees are accounted for following the guidance provided by GASB Statement No. 70, *Accounting and Financial Reporting for Nonexchange Financial Guarantees.* GASB Statement No. 70 requires that nonexchange financial guarantees be recorded when qualitative factors and historical data, if any, indicate that it is more likely than not that the Commonwealth will be required to make a payment on the guarantee. The amount of the liability to be recognized should be the discounted present value of the best estimate of the future outflows expected to be incurred as a result of the guarantee.

The table below represents amounts guaranteed by the Commonwealth and the related amount that has been recorded in the basic financial statements as of June 30, 2017 (in thousands):

|  | Maximum guarantee | Outstanding balance | Recorded commonwealth guaranteed obligation |
|---|---|---|---|
| Blended component units: |  |  |  |
| PBA | $   4,721,000 | 3,993,314 | N/A |
| PA | 250,000 | 225,534 | N/A |
| PRIFA | 245,955 | 78,145 | N/A |
| Discretely presented component units: |  |  |  |
| GDB | 2,000,000 | 110,000 | 118,066 |
| PRASA | 1,258,978 | 1,258,677 | 256,530 |
| Total | $   8,475,933 | 5,665,670 | 374,596 |

**PBA** – PBA, a blended component unit, uses the payments of rentals of certain government facilities like departments, agencies, instrumentalities and municipalities of the Commonwealth under various lease agreements executed pursuant to the enabling Act that created it (Act No. 56-1958, as amended) for the payment of principal and interest on its own debt. Act No. 56-1958 also provides that the DOT will make advances to PBA for any unpaid portion of rent payable to PBA by any departments, agencies, instrumentalities, or municipalities of the Commonwealth under a lease agreement with PBA. Such advances are recorded as reductions of rent receivables since the responsibility of reimbursement belongs to the corresponding agency or instrumentality according to the enabling Act.

On December 21, 2018, the Oversight Board and the Creditors' Committee commenced an adversary proceeding styled The Fin. Oversight and Mgmt. Bd. for Puerto Rico v. Puerto Rico Public Building Auth., Case No. 18-00149-LTS (D.P.R. Dec. 21, 2018), seeking declaratory relief and disallowance of administrative rent claims. The adversary proceeding alleges that the PBA leases are not true leases, but rather "disguised financing transactions." Multiple parties have filed motions to intervene. On January 28, 2019, PBA responded to the complaint.

192

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The debt of PBA is supported by a guarantee of the Commonwealth that if revenues or income of PBA are not sufficient for the payment of principal and interest when they come due, the DOT will withdraw from any available funds amounts as may be necessary to cover the deficiency. The debt of PBA is further supported by a Commonwealth guarantee. Act No. 56-1958 is silent as to whether there are arrangements established for recovering payments from PBA if the guarantee is exercised; however, there is no intention from the Commonwealth to request a recovery of any such eventual payments.

Rental income of PBA funds amounted to approximately $364 million during the year ended June 30, 2017, which was used to cover debt service obligations.

Beginning on July 1, 2016, a portion of PBA debt service due on that date and scheduled for service in subsequent periods through the date of these basic financial statements was not paid, including interest payments. Some of the interest that was in fact paid after July 1, 2016 reflected amounts received from applicable subsidy programs.

**PA** – At various times during fiscal years ending in 2005 and 2006, the PA, a blended component unit of the Commonwealth, entered into bond purchase agreements with the GDB, whereby the GDB agreed to disburse to the PA from time to time certain bond principal advances up to a maximum aggregate principal amount of $70 million (Port of the Americas Authority 2005 Series A Bond), $40 million (Port of the Americas Authority 2005 Series B Bond), and $140 million (Port of the Americas Authority 2005 Series C Bond). These bonds are guaranteed by the Commonwealth by Act No. 409-2004, which authorized the issuance of these financing arrangements and accounted for by the Commonwealth as a liability under bond purchase agreement with GDB. The proceeds of the bonds were used to finance the cost of development and construction of the PA facilities. The Commonwealth had been paying for debt service on these bonds under its guarantee pursuant to Act No 409-2004.

**PRIFA** – On March 17, 2015, PRIFA, a blended component unit of the Commonwealth, issued $245.9 million of Dedicated Tax Fund Revenue Bond Anticipation Notes (the PRIFA BANs or Series 2015A BANs), the proceeds of which were used to refinance certain outstanding PRHTA bond anticipation notes and pay related expenses. The PRIFA BANs are payable from, and are supported by, a Trust Estate comprising certain assets and revenues of PRIFA, which include: (i) a $6.25/barrel Petroleum Products Tax on non-diesel products; (ii) any funds received by PRIFA pursuant to the terms of a financial assistance agreement between PRIFA and PRHTA; and (iii) any additional revenues pledged to PRIFA in accordance with the Trust Agreement. The PRIFA BANs are guaranteed by the Commonwealth. The PRIFA BANs agreement and the underlying Trust Agreement are silent as to whether there are arrangements established for recovering payments from PRIFA if the guarantee were to be claimed; however, there is no intention from the Commonwealth to request a recovery of any such eventual payments. As of the date of these basic financial statements, no payments have been made honoring the aforementioned guarantee.

All of the monthly debt service due on the PRIFA BANs since August 1, 2016 remain unpaid.

**GDB** – On February 13, 2014, the Commonwealth enacted Act No. 24 that, among other provisions, increased from $500 million to $2 billion the amount of GDB obligations that can be guaranteed by the full faith and credit of the Commonwealth.

On December 13, 2013, GDB issued Senior Guaranteed Notes 2013 Series B (guaranteed by the Commonwealth). The 2013 Series B Notes consist of term notes maturing on various dates from December 1, 2017 to December 1, 2019 and carry an interest rate of 8% payable monthly on the first day of each month. At June 30, 2017, the outstanding balance of these notes amounted to $110 million. SIFC, a major discretely presented component unit of the Commonwealth, is the sole holder of these bonds. Based on the liquidity and uncertainty risks discussed in Note 2, GDB has shown all indicators to

193

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

conclude that there is substantial doubt as to GDB's ability to continue as a going concern. These risks and events impacting GDB caused the Commonwealth's management to recognize a liability on this guaranteed obligation in the amount of approximately $118 million based on the discounted present value of the best estimate of the future outflows expected to be incurred, at that moment, as a result of the guarantee. Act No. 24-2014, referred to above, is silent as to whether there are arrangements established for recovering any potential payments from GDB for guarantee payments made; however, there is no intention from the Commonwealth to request a recovery of any potential payments. As of the date of these basic financial statements, no payments have been made honoring the aforementioned guarantee. GDB made its monthly payments of interest until July 2016, but beginning on August 1, 2016, GDB has missed such payments.

As discussed in Note 2, GDB has executed an orderly wind down of its operations and has entered into a Qualifying Modification of its debts pursuant to Title VI of PROMESA.

**PRASA** – Act No. 45-1994, as amended, states that the Commonwealth guarantees the payment of principal and interest of all outstanding bonds at the date the law was enacted and of all future bond issues to refinance those outstanding bonds of PRASA, a discretely presented component unit. Act No. 140-2000 amended Act No. 45-1994 to extend the Commonwealth guarantee to include the principal and interest payments of the Rural Development Serial Bonds and the loans under the SRFP outstanding at the effective date of Act No. 140-2000, and of all future bonds and SRFP loans that may be issued through June 30, 2005. Act No. 386-2004 extended the Commonwealth guarantee to June 30, 2010. Act. No. 75-2010 amended Section 1 of Act No. 45-1994 to extend the Commonwealth guarantee over the bonds issued under the United States Department of Agriculture (USDA) Rural Development Program and SRFP's borrowings to June 30, 2015. Pursuant to Act No. 96-2015, the Commonwealth guarantee on the payment of principal and interest on most of the outstanding Clean Water State Revolving Funds loans granted to PRASA was extended to cover such loans issued through June 30, 2020. Each of these Acts, as amended, is silent as to whether there are arrangements established for recovering potential payments from PRASA if the guarantee is executed; however, there is no intention from the Commonwealth to request a recovery of any such eventual payments.

The USDA Rural Development Program assists PRASA in the financing and construction of aqueduct and sewer facilities in rural areas by purchasing revenue bonds from PRASA, the proceeds of which are used by PRASA to finance such projects. As of June 30, 2017, the USDA Rural Development Program Bonds consisted of twenty-seven (27) separate series, issued from 1983 through 2016 and bearing interest from 2% to 5% due in semiannual installments through 2055. The outstanding balance of the USDA Rural Development Program Serial Bonds as of June 30, 2017 was approximately $92.6 million. The USDA Rural Development Program Serial Bonds are guaranteed by the Commonwealth pursuant to Act No. 140-2000 as amended, and PRASA's net revenue is pledged toward the payment of debt service on the USDA Rural Development Program Bonds. The USDA Rural Development Program Bonds are subordinate to all senior and senior subordinated debt.

The PRWPCRF and the PRSDWTRLF (collectively, the Clean Water State Revolving Funds) were created by Act No. 44-1988 and Act No. 32-1997, respectively, of the Commonwealth. The PRWPCRF is administered, pursuant to Act No. 44-1988 and Act No. 9-1970, as amended, by EQB. The PRSDWTRLF is administered, pursuant to Act No. 5-1977, as amended, by the PRDOH. Pursuant to these laws, the EQB and the PRDOH, on behalf of the Commonwealth, are authorized to enter into operating agreements and capitalization grant agreements with the EPA. PRIFA, PRASA, and GDB entered into a memorandum of understanding under which each party has agreed to assume specific responsibilities in connection with the operations of the Clean Water State Revolving Funds. PRASA has entered into revolving loan agreements to finance certain capital improvements. As of June 30, 2017,

194

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

PRASA had outstanding approximately $581.3 million under these loan agreements, which bear interest at a 2% annual rate payable semiannually and are required to be paid in full within 20 years of the project completion date. PRASA has pledged its net revenue on a basis subordinate in all respects to PRASA's bonds outstanding. If PRASA's pledged revenue is not sufficient for the payment of principal and interest, the payments are guaranteed by the Commonwealth under Act No. 45-1994, as amended, which obligates the Commonwealth to pay principal and interest on the notes.

On March 18, 2008, PRASA issued approximately $284.8 million of Revenue Refunding Bonds, Series A and B (the 2008 Revenue Refunding Bonds) that were guaranteed by the Commonwealth and primarily used to refund PRASA's outstanding Revenue Refunding Bonds, Series 1995 (which were also guaranteed by the Commonwealth) in the amount of approximately $262.8 million. The 2008 Revenue Refunding Bonds bear interest at rates from 5.80% to 6.10% per annum with maturity dates ranging from July 1, 2021 to July 1, 2034. The outstanding balance of the 2008 Revenue Refunding Bonds at June 30, 2017 amounted to $284.8 million.

As a result of the voluntary disclosure statement issued by PRASA on March 4, 2016 regarding the expectation that it might not have sufficient funds to fully fund the debt service on certain of its Commonwealth guaranteed debt, management concluded that it would be more likely than not that the Commonwealth will be required to make a payment only on the USDA Rural Development Program Serial Bonds guarantee. As a result, a liability on the Rural Development Bonds guaranteed obligation in the amount of approximately $256.5 million was recognized at June 30, 2017. This measurement was based on the discounted present value of the best estimate of the future outflows expected to be incurred, at that moment, as a result of the guarantee. As of the date of these basic financial statements, no payments have been made honoring the aforementioned guarantee. The 2008 Revenue Refunding Bonds and the SRFP loans were excluded from this conclusion because: (a) the 2008 Revenue Refunding Bonds are considered senior subordinated debt and will not be affected by the aforementioned set asides; and (b) the Clean Water State Revolving Funds are proprietary funds within the Commonwealth and not a separate legal entity, and therefore there is no separate guarantee liability.

*Forbearance Agreements*

On June 30, 2016, PRASA executed a Forbearance Agreement (the "SRFP Forbearance Agreement") with the PRDOH and EQB, administrators of the Clean Water State Revolving Funds Program, and PRIFA, a blended component unit of the Commonwealth, as operating agent for the SRFPs, authorized to assist the PRDOH and the EQB in the administration, financial and accounting activities of the SRFPs. Under the SRFP Forbearance Agreement, as further amended in several occasions, the payments due until July 1, 2019, inclusive, under the SRFP Loans were deferred and the parties thereto agreed to forbear from exercising, or consenting to the exercise of, any enforcement of rights or remedies available to each under the SRFP Loans subject to certain conditions and partial payments.

PRASA also requested that the USDA Rural Development Program provide a short-term forbearance period, which included deferral of the payments due on July 1, 2016; January 1, 2017; July 1, 2017; January 1, 2018; July 1, 2018; January 1, 2019 and July 1, 2019 during which they would refrain from exercising its rights and remedies under the Rural Development ("RD Bond") documents or grants or loan agreements related to the PRASA's USDA Rural Development, Rural Utilities Service program bonds (the "RD Bonds"), subject to certain conditions and partial payments. To this effect, the PRASA and USDA Rural Development Program executed a forbearance document as of June 30, 2016. Subsequently, the forbearance period was further extended in several occasions until July 31, 2019.

195

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

On July 26, 2019, PRASA and FAFAA consummated definitive agreements (the "Agreements") restructuring the PRASA's debt obligations under SRFP loans and RD Bonds totaling almost $1 billion (the SRFP loans and RD Bonds are collectively referred to as the "Federal Debt").

The Agreements were approved by the Oversight Board pursuant to Section 207 of PROMESA. The Agreements include the termination of existing Commonwealth guarantees of the Federal Debt, thus reducing overall Government contingent liabilities by approximately $1 billion and the consolidation of all the restructured debt into two SRFP loans and one RD loan to replace the existing SRFP loans and RD Bonds with extended maturities and lower interest rates as follows:

- RD loans: 40-year term at 2% interest rate, with $10 million annual debt service from years 1 to 10 and $17 million annual debt service thereafter

- SRFP loans: 30-year term at 0% interest rate and $10 million annual principal-only payment from years 1 to 10 and 1% interest rate and $27 million annual debt service thereafter.

The restructured Federal Debt was designated as Other System Indebtedness in parity with other senior debt under PRASA's Master Agreement of Trust.

(b) *Debt Supported by Commonwealth Appropriations*

At June 30, 2017, the outstanding principal balances of debt payable by Commonwealth appropriations and sales and use taxes (PFC bonds and notes payable, as described in Note 13(d), and notes payable to GDB and others, as described in Note 13(e)), which are included in the stand-alone basic financial statements of the following discretely presented component units, were as follows (in thousands):

| | PFC bonds and notes | Notes payable to GDB and others | Total |
|---|---|---|---|
| Major Component Units: | | | |
| PRASA | $ 416,058 | — | 416,058 |
| GDB | 3,336 | — | 3,336 |
| UPR | — | 48,286 | 48,286 |
| PREPA | — | 713 | 713 |
| Sub-total | 419,394 | 48,999 | 468,393 |
| Nonmajor Component Units | 108,743 | 388,252 | 496,995 |
| Total | $ 528,137 | 437,251 | 965,388 |

(c) *Other Guarantees*

Mortgage Loan Insurance – The PRHFA, a blended component unit of GDB, provides mortgage credit insurance to low and moderate-income families through its mortgage loan insurance program. The Commonwealth guarantees up to $75 million of the principal insured by the mortgage loan insurance program. As of June 30, 2017, the mortgage loan insurance program covered loans aggregating to approximately $571 million. Currently, the Commonwealth has not been called to make any direct payments pursuant to these guarantees and there are no triggering events indicating that it is more likely than not that it will be required to make payments on these guarantees.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(15) Conduit Debt Obligations and No Commitment Debt**

From time to time, certain of the Commonwealth's component units issue revenue bonds to provide financial assistance to private sector entities for the acquisition and construction of transportation, environmental, industrial, tourism, educational, and commercial facilities, deemed to be in the public interest and that are expected to provide benefits to the citizens of Puerto Rico. These bonds are supported by the property financed and are payable solely from payments received on the underlying mortgage loans. Upon repayment of the bonds, ownership of the acquired facilities is retained by the private sector entity served by the bond issuance. Neither the Commonwealth nor any of is political subdivisions or its component unit thereof is obligated in any manner for the repayment of these bonds. Accordingly, the bonds are not reported as long-term liabilities in the stand-alone audited basic financial statements of the issuing entities. As of June 30, 2017, conduit debt obligations consisted of the following bonds issued by several Commonwealth's discretely presented component units (in thousands):

| Issuing entity | | Issued since inception to date | Amount outstanding |
|---|---|---|---|
| Major component units: | | | |
| GDB | $ | 1,047,500 | 385,600 |
| PRHTA | | 270,000 | 120,200 |
| Sub-total | | 1,317,500 | 505,800 |
| Nonmajor component units | | 1,176,855 | 881,340 |
| Total | $ | 2,494,355 | 1,387,140 |

**(a) GDB**

In December 2003, GDB, through PRHFA, a blended component unit of GDB, issued approximately $663 million in Capital Fund Program Bonds Series 2003 to lend the proceeds thereof to the PHA, a fund of the Commonwealth, in its financing of improvements to various public low and moderate-income housing projects. The Capital Fund Program Bonds Series 2003 are limited obligations of the PRHFA, which will be paid solely from an annual allocation of public housing capital funds when received from the U.S. Department of Housing and Urban Development (U.S. HUD) and other funds available under the bond indenture. Accordingly, these bonds are considered conduit debt and are excluded, along with the related assets held in trust, from the accompanying audited basic financial statements. The outstanding balance of these bonds amounted to approximately $117.6 million at June 30, 2017.

On August 1, 2008, the PRHFA issued the Capital Fund Modernization Program Subordinate Bonds amounting to approximately $384.5 million. The proceeds from the issuance were mainly used to finance a loan to a limited liability company and pay the costs of issuance. The $384.5 million bonds are limited obligations of the PRHFA, payable primarily by a pledge and assignment of federal housing assistance payments made available by the U.S. HUD, with an outstanding balance of approximately $268 million at June 30, 2017. Payment of principal of the Housing Revenue Bonds was also secured by an irrevocable standby letter of credit issued by GDB.

**(b) PRHTA**

In March 1992, the PRHTA issued Special Facility Revenue Bonds, 1992 Series A, B, and C for approximately $117 million for the construction of a toll bridge. The proceeds from the sale of these bonds

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

were transferred by the PRHTA to a private entity, Autopistas de Puerto Rico & Compañía, S.E. (Autopistas), pursuant to a signed concession agreement for the design, construction, operation, and maintenance of the bridge. On October 30, 2003, the PRHTA issued Special Facility Revenue Refunding Bonds, 2004 Series A, amounting to approximately $153 million for the purpose of refunding PRHTA's Special Facility Revenue Bonds, 1992 Series A, B, and C, which were issued to fund the construction of the bridge, and to pay the cost of issuance of the bonds. The proceeds from the sale of the bonds were transferred by the PRHTA to Autopistas pursuant to a new loan agreement by and between Autopistas and the PRHTA. The bonds should be paid from the proceeds received by Autopistas from the operation of the bridge.

Under certain circumstances, the concession agreement may be terminated and the PRHTA is then obligated to assume Autopista's entire obligation to pay principal of, and interest on, the bonds outstanding, which pursuant to the signed agreement, will be paid from the net revenue of the use and operation of the bridge. The PRHTA does not currently expect the concession agreement to terminate. The outstanding bonds (including accrued interest) at June 30, 2017 amounted to approximately $120.2 million.

**(16) Risk Management**

*Primary Government*

The risk management policies of the Primary Government are addressed on Note 1(y).

*Discretely Presented Component Units*

The following describes the risk management programs separately administered by certain discretely presented component units, including all the major discretely presented component units and certain nonmajor discretely presented component units carrying self-funded risk reserves:

**(a) GDB**

As previously noted, GDB ceased operations as of March 23, 2018 and completed a debt restructuring pursuant to a Qualifying Modification under Title VI of PROMESA, which became effective on November 29, 2018. For additional information regarding GDB's Qualifying Modification under Title VI of PROMESA, refer to Note 3(c)(x).

Prior to these developments and during fiscal year 2017, to minimize the risk of loss, GDB purchased insurance coverage for public liability, hazard, automobile, crime, and bonding, as well as workmen's compensation insurance for employees. The selection of the insurer needed to be approved by the Public Insurance Office of the DOT. Insurance coverage was updated annually to account for changes in operating risk. For the three years prior to June 30, 2017, insurance settlements did not exceed the amount of coverage. Other risk management policies of GDB involved its mortgage and loans servicing and insurance activities. Certain loan portfolios of the PRHFA were administered by private servicers who were required to maintain an errors and omissions insurance policy. The PRHFA had a program to manage the risk of loss on its mortgage loan lending and insurance activities.

**(b) PRHTA**

PRHTA carries commercial insurance to cover casualty, theft, claims, and other losses. The PRHTA has not settled any claims in excess of its insurance coverage for any of the past three years.

**(c) PREPA**

PREPA purchases commercial insurance covering casualty, theft, tort claims, natural disaster and other claims covering all risk property (excluding transmission and distribution lines), boiler and machinery,

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

and public liability. In addition, PREPA has a self-insured fund to pay the cost of repairing, replacing, or reconstructing any property damaged or destroyed from, or extraordinary expenses incurred as a result of a cause.

PREPA has a cost-plus health insurance program covering substantially all employees. PREPA contracted an administrator for the processing, approval, and payment of claims plus an administrative fee. The accrual for employees' health plan includes the liability for claims processed and an estimate for claims incurred but not reported.

Changes in the balances of the health insurance program and other self-insurance risks during fiscal year 2017 were as follows (in thousands):

| | | |
|---|---|---:|
| Claims payable – July 1 | $ | 4,116 |
| Incurred claims | | 50,582 |
| Claim payments | | (50,577) |
| Claims payable – June 30 | $ | 4,121 |

These claims payable are presented as a component of accounts payable and accrued liabilities in the accompanying combining statement of net position – discretely presented component units.

**(d) PRASA**

PRASA has acquired commercial insurance to mitigate its exposure to certain losses involving real and personal property (including windstorm, flood, and earthquake damages) and comprehensive general and automobile claims. PRASA also has an Owner Controlled Insurance Program (OCIP) under which commercial general liability, excess general liability, builder's risk, and contractors' pollution liability coverage are procured or provided on a project "wrap up" basis for contractors and subcontractors of any tier, who have been properly enrolled, while performing operations at the applicable project site. Each commercial insurance policy maintained by PRASA contains specific policy limits and deductibles. Settled claims resulting from these risks have not exceeded commercial insurance coverage in any of the past three fiscal years.

**(e) UPR**

UPR is exposed to various risks of loss related to torts; theft of, damage to, and destruction of assets, errors and omissions, injuries to employees, and natural disasters. Through January 1993, the UPR was insured under claims made insurance policies with respect to medical malpractice risks for $250,000 per occurrence up to an annual aggregate of $500,000. Subsequent to such date, the UPR was unable to obtain insurance at a cost it considered to be economically justifiable; consequently, the UPR is now self-insured for such risks. Under Act No. 98-1994, the responsibility of the UPR is limited to a maximum amount of $75,000 per person, or $150,000 if it involves actions for damages to more than one person or where a single injured party is entitled to several causes of action. Self-insured risk liabilities are reported when it is probable that a loss has occurred, and the amount of the loss can be reasonably estimated. Liabilities include an amount for claims that have been incurred but not reported. The process used in computing claims liabilities does not necessarily result in an exact amount because actual claims liabilities depend upon such complex factors as inflation, changes in legal doctrines, and damage awards. Claims liabilities are reevaluated periodically to take into consideration recently settled claims, the frequency of claims, and other economic and social factors.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Changes in the claims liability amount for medical malpractice in fiscal year 2017 were as follows (in thousands):

| | | |
|---|---|---:|
| Claims payable – July 1 | $ | 8,939 |
| Incurred claims and changes in estimates | | (304) |
| Payments for claims and adjustments expenses | | (460) |
| Claims payable – June 30 | $ | 8,175 |

In addition, the UPR is a defendant in several lawsuits other than medical malpractice arising out of the normal course of business. Management has recorded an accrual of approximately $3.3 million as of June 30, 2017 to cover claims and lawsuits that may be assessed against the UPR.

These claims payable are presented as a component of accounts payable and accrued liabilities in the accompanying combining statement of net position – discretely presented component units.

*(f)* **SIFC**

SIFC provides workers' compensation insurance to public and private employees. This insurance covers workers against injuries, disability, or death caused by work or employment related accidents, or by illness suffered as a consequence of their employment. SIFC establishes liabilities for incurred but unpaid benefits and benefit adjustment expenses based on the ultimate cost of settling the benefits. The liability includes estimates for cases reported that have not been adjudged and cases incurred but not reported. The following table provides a reconciliation of the beginning and ending liability for incurred but unpaid benefits and benefit adjustment expenses for the fiscal year 2017 (in thousands):

| | | |
|---|---|---:|
| Liability for incurred but unpaid benefits and benefit adjustment expenses at July 1 | $ | 727,998 |
| Total incurred benefits | | 359,319 |
| Total benefit payments | | (378,825) |
| Liability for incurred but unpaid benefits and benefit adjustment expenses at June 30 | $ | 708,492 |

The liability for incurred but unpaid benefits and benefit adjustment expenses is based on historical claims experience data, assumptions and projections as to future events, including claims frequency, severity, persistency, and inflationary trends determined by an independent actuarial study. This liability has been discounted at 3.80% in 2017. SIFC's management believes that discounting such liability results in a better matching of costs and revenue since compensation benefits have a long payment cycle. The assumptions used in estimating and establishing the liability are reviewed annually based on current circumstances and trends.

SIFC's management believes that the liability for incurred but unpaid benefits and benefit adjustment expenses, actuarially determined at June 30, 2017, is a reasonable estimate of the ultimate net cost of settling benefits and benefit expenses incurred. Because actual benefit costs depend upon such factors as duration of worker disability, medical cost trends, occupational disease, inflation, and other social and

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

economic factors, the process used in computing the ultimate cost of settling benefits and expenses for administering benefits is necessarily based on estimates. The amount ultimately paid may be above or below such estimates. Adjustments resulting from changes in estimates of these liabilities are charged or credited to operations in the period in which they occur.

The liability for incurred but unpaid benefits and benefit adjustment expenses is reported as liability for insurance benefits in the accompanying combining statement of net position – discretely presented component units.

**(17) Commitments and Contingencies**

*Primary Government*

*Legal Contingencies*

**(a) *Litigation Prior to Commencement of Title III Cases Related to Governmental Operations***

The Commonwealth is a defendant in numerous legal proceedings pertaining to matters incidental to the performance of routine governmental operations. Under Act No. 104-1955, as amended, persons are authorized to sue the Commonwealth only for causes of actions set forth in said Act to a maximum amount of $75,000 or $150,000 if it involves actions for damages to more than one person or where a single injured party is entitled to several causes of action. Under certain circumstances, as provided in Act No. 9-1975, as amended, the Commonwealth may provide its officers and employees with legal representation, as well as assume the payment of any judgment that may be entered against them. There is no limitation on the payment of such judgments. To the extent claims arose prior to the commencement of the Commonwealth's Title III case, their status and priority may be affected by the Title III case.

With respect to pending and threatened litigation involving the Commonwealth's Governmental Activities, excluding the litigation mentioned in the ensuing paragraphs, the Commonwealth reported approximately $447 million as an amount to cover for awarded and anticipated unfavorable judgments at June 30, 2017. This amount was included as other long-term liabilities in the accompanying statement of net position, and represents the amount estimated as a probable liability or a liability with a fixed or expected due date that will require future available financial resources for this payment. Management believes that the ultimate liability in excess of amounts provided, if any, would not be significant.

The amounts recorded as legal contingencies by the Commonwealth do not reflect the dollar value the Commonwealth may have to pay on account of any claim. Any payments made on account of such claims will reflect the impact of the Commonwealth's case under Title III of PROMESA, and the effect such filing has on the priority and allowability of such claim, and the recoveries to be provided to holders of such claims. For further information regarding the Title III of PROMESA refer to Note 3.

Of the total liability for legal claims and judgments recognized in the Governmental Activities, approximately $149.8 million are considered payable within one year, based on the payments made subsequent to June 30, 2017 through June 30, 2018.

The Commonwealth is a defendant in parallel lawsuits regarding an alleged inappropriate withholding of Medicaid funds, one filed in the state court and two in federal court. The plaintiffs are various primary healthcare centers seeking to recover from the Commonwealth approximately $800 million of Medicaid funds retained by PRDOH since 1997. In February 2005, the United States Court of Appeals for the First Circuit determined that the Commonwealth must return the funds withheld because of noncompliance with a federal law. The Commonwealth is still contesting several provisions of this determination and amounts to be returned and payment plan methods are still in the process of estimation. As of June 30, 2017, the Commonwealth accrued approximately $137 million for this legal contingency.

201

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The Commonwealth is a defendant in a class action presented by parents of special education students in the areas of education and healthcare. In October 2006, the State Court of Appeals decided in favor of the parents' request to include damage claims pursuant to the same class action case although not as a remedy in the class action per se. The court now may award damages to the members of the class action and to do so it may look at the claims by dividing them into groups or consider each case individually. This will require that the parents prove the damages suffered on an individual basis. On June 26, 2016, the court ordered the publication of a public edict that would describe in detail the process to be followed to submit claims for damages suffered. Such edict was published and opened a claims period effective August 14, 2016 through October 31, 2016. The Commonwealth plans to vigorously defend each individual case. The Commonwealth has accrued approximately $650 million for this legal contingency as of June 30, 2017.

Under the lawsuit *Vaquería Tres Monjitas, Inc. et al v. Ramírez et al.*, certain plaintiffs alleged that the price rates set by the Administrator of the Office for the Regulation of the Dairy Industry (ORIL, as its Spanish acronym) did not afford local dairy processors Suiza Dairy and Vaquería Tres Monjitas the opportunity to make the reasonable profit to which they were constitutionally entitled. The parties reached a settlement agreement on October 29, 2013. Among other things, the Commonwealth, through certain of its instrumentalities, agreed to contribute the following amounts to certain regulatory accrual payments to be made pursuant to the settlement agreement: $50 million by December 31, 2014, $15 million by December 31, 2015, $15 million by December 31, 2016, and $15 million by December 31, 2017, for a total original amount accrued by the Commonwealth during fiscal year 2014 of $95 million. The case is now closed, but the court will retain jurisdiction in order to tend to any matter of compliance or breach of compliance regarding the settlement agreement. During fiscal year 2015, the Commonwealth paid $16 million, out of the required $50 million due on December 31, 2014. As of June 30, 2017, the Commonwealth has accrued $70 million for this legal contingency, $55 million of which, pertain to the portions not paid on December 31, 2016, 2015 and 2014, are recorded as due and payable within the general fund.

On December 21, 2012, the federal government, through the U.S. Department of Justice (USDOJ), filed a lawsuit in order to demand from the Commonwealth and its PRPOB, compliance with the action and remediation plan submitted on September 8, 2011 by the Civil Rights Division of the USDOJ pursuant to an investigation which revealed a pattern of civil rights violations by the PRPOB. According to this investigation and resulting report, the pattern or practice of illegal activity is the product of an ongoing failure by the Commonwealth and its PRPOB to provide officers with the necessary guidance, training, and tools to engage in constitutional and effective law enforcement. The federal government was seeking declaratory and equitable relief to eliminate this unlawful pattern by asking the Commonwealth and its PRPOB to adopt and implement policies and procedures in the areas of recruitment, hiring, promotions, policies, training, supervision, investigation, discipline, and to prevent the police officers from depriving persons of rights, privileges, or immunities secured and protected by the Constitution or laws of the United States. Although the claim does not include damages, the action and remediation plan proposed would require an investment of approximately $600 million, which is expected to be incurred over a period of 10 years, starting with fiscal year 2015. The Secretary of Justice of the Commonwealth is still negotiating the final determinations of the measures to be implemented by the PRPOB in terms of final costs and timeframe. On July 17, 2013, a final definitive agreement was reached between the USDOJ and the Commonwealth, which was filed with the Court. Under the settlement agreement, the court dismissed the claim, but retained jurisdiction to ensure compliance with the agreement, through the appointment of a Technical Compliance Advisor. No provision for any liability is required at this time

202

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

under this remediation plan. Expenditures and related liabilities will be recognized as costs during the execution of the remediation plan are incurred which began in fiscal year 2015.

The Commonwealth receives financial assistance from the federal government in the form of grants and entitlements. Receipt of grants is generally conditioned upon compliance with terms and conditions of the grant agreements and applicable federal laws and regulations, including the expenditure of resources for eligible purposes. Substantially, all grants are subject to audit under the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, Final Rule (Uniform Guidance), usually referred to as OMB "Super Circular" all of which are performed at the individual department or agency level. Disallowance as a result of these audits may become liabilities of the Commonwealth. As of June 30, 2017, based on an evaluation of pending federal disallowances, the Commonwealth has recorded approximately $56.5 million as other long-term liabilities in the accompanying statement of net position. Expenditures that are still subject to audit could be disallowed, but management believes any such future disallowances would not be material to the basic financial statements.

**(b)** *Civil Actions Filed by Several Bondholder Groups and Other Creditors Against the Commonwealth Prior to the Commencement of the Title III Cases.*

Several groups of bondholders, monoline insurers, and indenture trustees have filed claims contesting the constitutionality of the Moratorium Act. However, these lawsuits were stayed from June 30, 2016 through May 1, 2017 under the Title IV stay and re-stayed upon commencement of the Title III cases. For additional information regarding the Moratorium Act, refer to Note 3 and Note 23. The key cases that remain subject to the PROMESA automatic stay and have not otherwise been dismissed include, among others:

- *Assured Guar. Corp. v. Garcia Padilla*, Case No. 16-1037-FAB (D.P.R. Jan. 7, 2016)

- *Fin. Guar. Ins. Co. v. Garcia Padilla*, Case No. 16-1095-FAB (D.P.R. Jan. 19, 2016)

- *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia Padilla*, Case No. 16-1610-FAB (D.P.R. Apr. 4, 2016)

- *Ambac Assurance Corp. v. Puerto Rico Highways and Trans. Auth.*, Case No. 16-1893-FAB (D.P.R. May 10, 2016)

- *Nat'l Pub. Fin. Guar. Corp. v. Garcia Padilla*, Case No. 16-2101-FAB (D.P.R. Jun. 15, 2016)

- *Jacana Holdings I LLC v. Puerto Rico*, Case No. 16-4702-GHW (S.D.N.Y. Jun. 21, 2016)

- *U.S. Bank Trust Nat'l Ass'n v. Garcia Padilla*, Case No. 16-2510-FAB (D.P.R. Aug. 19, 2016)

- *Scotiabank de Puerto Rico v. Garcia Padilla*, Case No. 16-2736-FAB (D.P.R. Sept. 28, 2016)

- *Servidores Públicos Unidos v. Fin. Oversight and Mgmt. Bd. for Puerto Rico*, Case No. 17-1483-FAB (D P.R. Apr. 12, 2017)

- *Ambac Assurance Corp. v. Commonwealth of Puerto Rico*, Case No. 17-1567 (D.P.R. May 1, 2017)

- *Ambac Assurance Corp. v. Commonwealth of Puerto Rico*, Case No. 17-1568 (D.P.R. May 2, 2017)

- *Ambac Assurance Corp. v. U.S. Dept. of the Treasury*, Case No. 17-0809 (D.D.C. May 2, 2017)

- *Aurelius Investment, LLC v. Commonwealth of Puerto Rico*, Index No. 652357/2017 (N.Y. Sup. Ct. May 2, 2017)

203

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(c) *Key Civil Actions Filed Against the Commonwealth After the Commencement of the Title III Cases*

A significant number of civil actions have been initiated against the Commonwealth, COFINA, PRHTA, ERS, PREPA, and PBA after the commencement of their Title III Cases seeking judicial determinations regarding the scope of various creditor security interests in the Title III debtors' assets, among other relief that could impact creditor priorities in a Title III plan of adjustment. The key actions likely to have the most impact on the Title III Cases are summarized below.

- *Employees Ret. Sys. of the Commonwealth of Puerto Rico v. Altair Global Credit Opportunities Fund (A), LLC, et al.*, Case No. 17-00213 (D.P.R. July 21, 2017)

On July 21, 2017, the Oversight Board, as representative of ERS in its Title III case, commenced an adversary proceeding challenging the ERS bondholders' security interests in various system assets through a declaratory relief action (the ERS Declaratory Relief Action). Through the ERS Declaratory Relief Action, the Oversight Board, as representative of ERS in the Title III case, sought declaratory relief challenging the validity, priority, extent, and enforceability of the prepetition and postpetition liens and security interests asserted by defendants with respect to bonds issued by ERS. The complaint contends that the ERS bondholders' alleged liens and security interests are not perfected because the required Uniform Commercial Code financing statements and subsequent amendments were defective, and therefore the liens could be avoided in the Title III case. The ERS Declaratory Relief Action also challenged, among other things, the ERS bondholders' alleged security interest in postpetition employer contributions to ERS.

On August 17, 2018, the Title III Court granted partial summary judgment in favor of ERS. The Title III Court held, among other things, that the ERS bondholders' liens are not perfected and their security interests are avoidable under Bankruptcy Code section 544. On September 5, 2018, the Title III Court entered an order dismissing the remaining counts and counterclaims. This decision was appealed to the United States Court of Appeals for the First Circuit.

On January 30, 2019, the First Circuit (i) affirmed the Title III Court's holding that the 2018 financing statements related to ERS's bonds did not perfect the ERS bondholders' security interest in pledged property, (ii) affirmed the dismissal of the ERS bondholders' claim regarding a January 2017 stipulation, and (iii) reversed the Title III Court by finding that the ERS bondholders met the requirement for perfection beginning on December 17, 2015. In addition, the First Circuit remanded certain counterclaims to the Title III Court for further consideration. On April 30, 2019, the Oversight Board, on behalf of ERS, filed a petition for a writ of certiorari with the United States Supreme Court, seeking to reverse the First Circuit's decision. The petition was denied on October 7, 2019.

On remand, ERS requested that the Title III Court (i) determine the undecided issue of whether the ERS bondholders' security interests attach to revenues received by ERS after commencement of its Title III case (the Post-Petition Revenue Issue) and (ii) grant it leave to file an amended adversary complaint to raise issues concerning the nature or extent of the ERS bondholders' security interests. On May 6, 2019, the Title III Court agreed to determine the Post-Petition Revenue Issue but denied ERS's request for leave to amend its complaint. On June 27, 2019, the Title III Court granted summary judgment in favor of ERS on the Post-Petition Revenue Issue, holding that Bankruptcy Code section 552 prevents the ERS bondholders' security interests from attaching to revenues received by ERS post-petition, and finding that employers' contributions are not "special revenues" within the meaning of Bankruptcy Code section 902. On July 18, 2019, the ERS's bondholders appealed the Title III Court's decision to the United States Court of Appeals for the First Circuit. On January 30, 2020, the First Circuit issued an opinion affirming the Title III Court's decision. On March 3, 2020, the First Circuit denied the ERS bondholders' petition for rehearing *en banc*.

204

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

- *Andalusian Global Designated Activity Co., et al. v. Commonwealth of Puerto Rico, et al.,* Adv. Pro. Nos. 17-00219-LTS, 17-00220-LTS (D.P.R. July 27, 2017)

  On July 27, 2017, a group of ERS bondholders commenced adversary proceedings against the Commonwealth and ERS in the cases initially captioned as *Altair Global Credit Opp. Fund (A), LLC, et al. v. Commonwealth of Puerto Rico, et al.,* Adv. Pro. Nos. 17-00219-LTS, 17-00220-LTS (D.P.R. July 27, 2017) (collectively, the PayGo Litigation), seeking a declaration that Joint Resolution 188 and Act 106-2017 (collectively, the PayGo Statute)—which requires ERS to liquidate its assets for distribution to the General Fund—are void *ab initio* because they violate the Title III automatic stay and the Contracts Clause and Takings Clause of the United States Constitution.

  On November 17, 2017, the Oversight Board, as representative of ERS in its Title III case and joined by FAFAA and the Retiree Committee, filed a motion to dismiss the PayGo Litigation. On February 2, 2018, the Title III Court issued an order informing the parties that the motion to dismiss would be taken under submission. On September 9, 2018, the Title III Court stayed the case pending the United States Court of Appeals for the First Circuit's decision on the summary judgment appeal in the ERS Declaratory Relief Action, which decision was rendered on January 30, 2019 (as discussed above). In light of the stay, on September 27, 2018, the Title III Court terminated the motion to dismiss without prejudice to its restoration on request following termination of the stay. No parties have moved to lift the stay.

  On March 1, 2019, the Title III Court dismissed this case without prejudice as to Altair Global Credit Opportunities Fund (A), LLC and Nokota Capital Master Fund, L.P. As a result, the case was re-captioned *Andalusian Global Designated Activity Co. et al v. Commonwealth of Puerto Rico, et al.,* Adv. Pro. Nos. 17-00219-LTS, 17-00220-LTS (D.P.R.). On March 5, 2019, the Title III Court entered an order allowing Crown Managed Accounts (for and on behalf of Crown/PW SP), LMA SPC (for and on behalf of Map 98 Segregated Portfolio), Oceana Master Fund Ltd., Pentwater Merger Arbitrage Master Fund Ltd., and PWCM Master Fund Ltd. to intervene in the adversary proceeding.

  On October 25, 2019, these ERS Bondholders filed a motion to inform filing of a response to certain arguments concerning the validity of bonds issued by ERS in the omnibus claims objections of the Creditors' Committee and the Retirees Committee, as well as in the motion to dismiss. As of the date of these basic financial statements, there has been no further docket activity.

- *Union de Trabajadores de la Industria Electrica y Riego (UTIER) v. Puerto Rico Elec. Power Auth., et al.,* Case No. 17-00229-LTS (D.P.R. Aug. 7, 2017)

  Plaintiff UTIER challenges the constitutionality of four Commonwealth statutes and the 2017 Commonwealth and PREPA Fiscal Plans and Budgets that allegedly "adopt" and "implement" those statutes, arguing that they violate the terms of a collective bargaining agreement between UTIER and PREPA. The motion to dismiss was fully briefed as of March 28, 2018. On September 26, 2018, the Title III Court entered an order granting in part and denying in part the motions to dismiss the amended complaint. On December 17, 2018, the remaining defendants answered the amended complaint. UTIER filed a second amended complaint on August 30, 2019, which defendants answered on October 15, 2019. On December 10, 2019, the Title III Court entered an amended scheduling order for discovery and filing of dispositive motions through August 21, 2020. As of the date of these basic financial statements, this litigation remains ongoing.

- *The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico as Agent of The Commonwealth of Puerto Rico v. Bettina Whyte as Agent of COFINA (In re: The Financial Oversight and Management Board for Puerto Rico),* Adv. Pro. No. 17-00257-LTS (D. P.R. Sept. 8,

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

2017) and Confirmation of the Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation.

On September 8, 2017, an agent for the Oversight Board as representative of the Commonwealth in its Title III Case (the Commonwealth Agent) filed a complaint against an agent for COFINA (the COFINA Agent) asserting that the SUT revenue pledged by COFINA to secure its bond debt (the Former Pledged Sales Taxes) are "the exclusive property of the Commonwealth" and that Act No. 91-2006 "did not transfer to [COFINA] present ownership of future SUT revenues" and did not assign to COFINA the Commonwealth's right to receive such revenues. Concurrently with the litigation of the adversary proceeding, the Agents participated in court-sanctioned mediation to settle the Commonwealth-COFINA Dispute that resulted in an Agreement in Principle on June 5, 2018. Under the Agreement in Principle, a portion of the 5.5% SUT revenue formerly allocated to COFINA—which portion is referred to as the "Fixed Income"— would be shared between COFINA and the Commonwealth. The Agreement in Principle proposed to, among other things, divide the Fixed Income so that COFINA receives 53.65% of the Fixed Income starting in fiscal year 2019 while the Commonwealth receives the other 46.35%, subject to certain restrictions and exceptions.

On February 4, 2019, the Title III Court entered an order approving a settlement agreement consistent with the Agreement in Principle resolving the Commonwealth-COFINA Dispute (the Settlement Agreement). On February 5, 2019, the Title III Court confirmed the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation [Case No. 17-3283, Docket No. 4652] (the COFINA Plan of Adjustment), which was substantially consummated and became effective on February 12, 2019. The COFINA Plan of Adjustment, among other things, implemented the terms of the Settlement Agreement and resolved previously stayed prepetition actions challenging the constitutionality of the Moratorium Act related to COFINA's prepetition bond debt, including *Lex Claims, LLC v. Garcia Padilla*, Case No. 16-2374 FAB (D.P.R. Jul. 20, 2016) and *Rodríguez Perelló v. Rosselló Nevares*, Case No. 17-1566 (D.P.R. May 1, 2017).

- Certain parties whose objections were overruled in confirming the COFINA Plan of Adjustment have appealed the confirmation of the COFINA Plan of Adjustment and Settlement Agreement in the United States Court of Appeals for the First Circuit under case numbers 19-1181, 19-1182, and 19-1391. As of the date of these financial statements, these appeals remain pending. Accordingly, there are ongoing legal challenges to the COFINA Plan of Adjustment that, if resolved adversely to COFINA, could, among other things, affect the validity of the Settlement Agreement and other plan provisions.

- *Cooperativa de Ahorro y Credito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Pro. No. 18-00028-LTS (D. P.R. Mar. 22, 2018)

On March 22, 2018, several credit unions chartered under Puerto Rico law, known as the cooperativas (the Cooperativas), filed an adversary complaint against the Commonwealth, the Oversight Board, and other Commonwealth's instrumentalities (including COFINA, PRHTA, ERS, and PREPA), seeking a declaratory judgment that their Puerto Rico debt holdings are not dischargeable and seeking monetary damages for alleged fraud in issuing and encouraging local credit unions to purchase Puerto Rico debt service instruments. On August 6, 2018, the Oversight Board, for itself and as representative of COFINA, the Commonwealth and certain other instrumentalities, moved to dismiss the complaint. Also, on August 6, 2018, GDB filed a separate motion to dismiss. In addition, several parties filed joinders to the motions to dismiss or were granted leave from the Title III Court to file joinders.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

On February 5, 2019, the Title III Court confirmed the COFINA Plan of Adjustment. The confirmation order provides that "the plaintiffs in that certain adversary proceeding before the Title III Court, captioned *Cooperativa de Ahorro y Credito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Proc. No. 18-00028, shall be entitled to continue pursuit of such litigation against all parties other than COFINA and Reorganized COFINA, subject to all available rights and defenses with respect to claims and causes of action asserted therein."

The Cooperativas filed a Notice of Appeal in the Title III Court and amended their previously filed adversary complaint in response to the confirmation of the COFINA Plan of Adjustment and after their motion to reconsider the confirmation of the COFINA Plan of Adjustment was denied by the Title III Court. The appeal is docketed with the First Circuit under case number 19-1391.

On July 22, 2019, defendants filed motions to dismiss the amended complaint. On December 6, 2019, plaintiffs filed their Motion for Leave to File Second Amended Complaint, which the defendants objected to on February 4, 2020. On February 5, 2020, the Oversight Board, GDB Debt Recovery Authority and its trustees, and GDB filed oppositions to plaintiffs' motion for leave to file a second amended complaint. PCSDIPRC and FAFAA filed joinders to the oppositions filed by the Oversight Board and GDB. On February 21, 2020, plaintiffs filed an omnibus reply to oppositions to the motion for leave to file a second amended complaint. The plaintiffs filed their reply to the defendants' objection on February 21, 2020. The Title III Court considered the motion for leave to amend on submission, and on April 14, 2020 entered an order granting the plaintiffs' motion. On April 16, 2020, the plaintiffs filed their Second Amended Complaint. On April 20, 2020, the Oversight Board and GDB each filed separate motions to dismiss the Second Amended Complaint, and FAFAA joined the Oversight Board's motion on April 24, 2020. Pursuant to the schedule the Title III Court entered on April 14, 2020, briefing on the motions to dismiss was completed on June 5, 2020. The Title III Court has taken the motion to dismiss under submission, but has not yet issued a decision.

- *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*, Case No. 18-00059-LTS (D.P.R. May 23, 2018)

On May 23, 2018, plaintiffs filed a complaint against the Commonwealth, the Oversight Board, FAFAA, the Governor, the Executive Director of FAFAA, and Raúl Maldonado Gautier (in his official capacity) seeking fourteen different forms of declaratory relief, which seek declaratory judgments that (1) the Revised Fiscal Plan and Compliance Law violate several sections of PROMESA; (2) the Revised Fiscal Plan violates section 928 of the Bankruptcy Code; (3) no plan of adjustment based on the Revised Fiscal Plan can be confirmed, and the court will not hold a confirmation hearing; (4) the Moratorium Act, Moratorium Orders, Revised Fiscal Plan, and Compliance Law are void because they (a) violate the Contract Clause, (b) violate the Takings and Due Process clauses, and (c) are preempted by Sections 303(1) and 303(3) of PROMESA; and (5) to the extent the court determines that PROMESA bars review of the Commonwealth fiscal plan, PROMESA violates the Due Process Clause and constitutes an unconstitutional delegation of legislative power. Defendants have yet to respond to the complaint. On August 13, 2018, the court stayed the litigation and ordered that the deadline to file a motion to dismiss will be 30 days after the United States Court of Appeals for the First Circuit renders an opinion in the appeal of *Ambac Assurance Corporation v. Commonwealth of Puerto Rico, et al.*, No. 17-00159-LTS (D.P.R. Jun. 8, 2017). On September 6, 2019, the Title III Court entered an order staying this adversary proceeding through November 30, 2019 and requiring mediation in the manner established under the Title III Court's July 24 Stay Order. By orders entered on October 28, 2019, December 27, 2019, and March 10, 2020, the Title III Court has further stayed this action pending its decision on confirmation of the Amended Plan.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

- *Hermandad de Empleados del Fondo del Seguro del Estado, Inc. et al. v. Commonwealth of Puerto Rico*, Case No. 18-00091-LTS (D.P.R. July 25, 2018)

On July 25, 2018, Hermandad de Empleados del Fondo del Seguro del Estado, Inc. (UECFSE) and Unión de Médicos de la Corporación del Fondo del Seguro del Estado Corp. (UMCFSE) filed a complaint against the Commonwealth, the Oversight Board, the State Insurance Fund Corporation, Jesus M. Rodriguez Rosa, the Governor, the Executive Director of FAFAA, Hon. Raul Maldonado Gautier, Jose Ivan Marrero Rosado, and Natalie A. Jaresko seeking an order that CFSE is a protected essential public service, that four acts of the Commonwealth Legislature violate the Contract Clause of the United States Constitution, that four acts of the Commonwealth Legislature violate the Rights to Collective Bargaining of the Commonwealth's Constitution, and an order declaring the Commonwealth fiscal plan (as certified on June 29, 2018) unconstitutional and in violation of the Contract Clause of the United States and Commonwealth Constitutions. Plaintiffs filed an Amended Complaint on October 29, 2018, seeking relief only as it relates to the four Commonwealth Legislature Acts (Acts 66-2014, 3-2017, 8-2017, and 26-2017) as allegedly violating the U.S. and Commonwealth Constitutions.

On January 25, 2019, defendants filed responses to the first amended complaint. On March 7, 2019, plaintiffs filed an omnibus objection to defendants' motions to dismiss. The motions to dismiss were fully briefed on April 5, 2019. On September 24, 2019, the Title III Court entered an opinion and order granting the motion to dismiss the first amended complaint and closed the case.

On October 4, 2019, Hermandad de Empleados del Fondo del Seguro del Estado, Inc. and Unión de Médicos de la Corporación del Fondo del Estado Corp. filed a notice of appeal (Case No. 19-2028). Plaintiffs-Appellants' filed their opening brief on December 16, 2019. Appellees filed their brief on February 18, 2020. Appellants filed their reply brief on March 9, 2020.

- *The Fin. Oversight and Mgmt. Bd. for Puerto Rico v. Puerto Rico Public Building Auth.*, Case No. 18-00149-LTS (D.P.R. Dec. 21, 2018)

On December 21, 2018, the Oversight Board and the Creditors' Committee filed an adversary proceeding against PBA seeking declaratory relief and disallowance of administrative rent claims, alleging that PBA leases are not true leases, but rather "disguised financing transactions." Multiple parties have filed motions to intervene. On January 28, 2019, PBA responded to the complaint. On June 27, 2019, the Oversight Board filed a motion to stay this adversary proceeding pending confirmation of the Commonwealth's Title III plan of adjustment. On July 24, 2019, the Title III Court entered a Stay Order, which stay this adversary proceeding (among other matters in the Title III cases) through November 30, 2019. By orders entered on October 28, 2019, December 27, 2019, and March 10, 2020, the Title III Court has further stayed this action pending its decision on confirmation of the Amended Plan.

- *Manuel Natal-Albelo, et al. v. The Fin. Oversight and Mgmt. Bd. for Puerto Rico,* Case No. 19-00003-LTS (D.P.R. Jan. 14, 2019)

On December 6, 2018, Manuel Natal Albelo, at-large independent representative in the House of Representatives of Puerto Rico and various unions filed a complaint against the Commonwealth of Puerto Rico and Carlos Mendez Nunez, in his official capacity as President of the House of Representatives of Puerto Rico in the Commonwealth of Puerto Rico Court of First Instance, San Juan Superior Court (the Superior Court) (Civil No. SJ2018cv01569). The complaint seeks declaratory relief that (i) the legislative process leading to the enactment of Act No. 241-2018, which created the legal structure necessary to execute the COFINA restructuring, was flawed, violated Puerto Rico House regulations, and thus was unconstitutional; and (ii) Act No. 91-2006 (the COFINA

208

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

legislation, as amended) and Act No. 241-2018 (which is an amendment to the COFINA legislation), violate the Commonwealth's Constitution's debt-limit and balanced-budget provisions.

On January 14, 2019, the Oversight Board, on behalf of the Commonwealth and COFINA, filed a notice of removal of the Civil Action to the Title III Court, where it became Adversary Proceeding No. 19-00003-LTS (D.P.R.), captioned *Manuel Natal-Albelo, et al. v. Financial Oversight and Management Board for Puerto Rico, et al.* (the Adversary Proceeding). On February 5, 2019, the Title III Court confirmed the COFINA Plan of Adjustment, finding that Act No. 241-2018 was duly enacted. On February 18, 2019, the plaintiffs in the Adversary Proceeding filed an appeal of the COFINA Plan of Adjustment's confirmation order to the United States Court of Appeals for the First Circuit under case number 19-1181 (the Appeal). As of the date of these financial statements, the Appeal remains pending.

On March 21, 2019, the plaintiffs filed motions to remand the Adversary Proceeding to the Superior Court, asserting that (i) the Title III Court lacks subject matter jurisdiction over the complaint because it pertains solely to violations of the Commonwealth's Constitution and Puerto Rico statutory law—not federal law—which do not involve rights created by Title III of PROMESA, and (ii) the Title III Court lacks subject matter jurisdiction over the complaint because the Oversight Board itself is unconstitutional. On August 13, 2019, the Adversary Proceeding was stayed until the final resolution of the Appeal.

- *ERS Clawback Litigation*, Case Nos. 19-00355, 19-00356, 19-00357, 19-00358, 19-00359, 19-00360, and 19-00361-LTS (D.P.R. May 19, 2019)

On May 19, 2019, the Creditors' Committee and the Oversight Board, acting through its Special Claims Committee, commenced seven adversary proceedings (collectively, the ERS Clawback Litigation) against approximately 230 defendants that owned or currently own ERS bonds. The plaintiffs seek declaratory relief relating to the ERS bonds and recovery of certain payments of principal and interest on the ERS bonds. On May 21, 2019, the plaintiffs filed a motion requesting that the Title III Court enter an order (i) extending the period for serving domestic defendants in the ERS Clawback Litigation to November 18, 2019, and (ii) otherwise staying the ERS Clawback Litigation pending a joint request by both plaintiffs to resume a particular proceeding or further order of the Title III Court.

On July 24, 2019, the Title III Court entered the Stay Order, which stayed the ERS Clawback Litigation through November 30, 2019 and required mandatory mediation of the issues during the stay period. On October 18, 2019, the parties to the ERS Clawback Litigation jointly filed a motion and stipulated order seeking to modify the Stay Order by allowing for the *ultra vires* issues related to the System bonds to proceed. On October 24, 2019, the Title III Court granted the motion to modify the Stay Order and established a discovery and briefing schedule related to the *ultra vires* issues through May 2020. On November 1, 2019, defendant bondholders commenced discovery against various parties and non-parties, including ERS, related to the *ultra vires* issues. As of the date hereof, the discovery process is ongoing.

On October 28, 2019, the Title III Court entered an order requiring a mediation report and/or scheduling order as to the remaining stayed matters by November 27, 2019 and extended the stay on non-*ultra vires* matters through December 31, 2019. On December 27, 2019, the Title III Court entered an amended order extending the stay on non-*ultra vires* matters through March 11, 2020. On March 10, 2020, the Title III Court entered a final order on the stay period, authorizing certain lift stay motions and revenue bond complaints to proceed but otherwise kept the stay in place for proceedings that do not involve *ultra vires* and/or lien-scope issues pending the Title III Court's

DRA Ex. 242

## COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

decision on confirmation of the Amended Plan. On April 17, 2020, the Title III Court entered an order regarding discovery and briefing schedule.

- *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Blackrock Fin. Mgmt., Inc., et al.*, Case No. 19-00297 (D.P.R. May 2, 2019)

On May 2, 2019, the Commonwealth and the Oversight Board commenced an adversary proceeding against various GO bondholders seeking declaratory relief that the GO bondholder defendants do not hold consensual or statutory liens on certain Commonwealth Available Resources, Property Tax Revenues, and Allocable Revenues. The Commonwealth and the Oversight Board also argue that even if defendants have statutory liens, the Title III Court should enter judgments avoiding the liens under Bankruptcy Code section 545. On June 11, 2019, defendants filed a motion to dismiss. On July 24, 2019, the Title III Court stayed the adversary proceeding through November 30, 2019 and required mandatory mediation. By orders entered on October 28, 2019, December 27, 2019, and March 10, 2020, the Title III Court has further stayed this action pending its decision on confirmation of the Amended Plan.

- *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Cortland Capital Mkt. Servs. LLC, et al.*, Case No. 19-00396-LTS (D.P.R. Jul. 9, 2019)

On July 9, 2019, Cortland Capital Market Services, LLC, as Administrative Agent and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB, LLC (the Fuel Line Lenders) filed an adversary proceeding (the Fuel Line Lenders Litigation) against the Oversight Board, PREPA, FAFAA, and U.S. Bank N.A. as Trustee to certain bondholders (the Trustee). The Fuel Line Lenders allege the PREPA bonds are not secured and the PREPA bondholders have no right to any recovery until the Fuel Line Lenders and other current expenses of PREPA are paid in full. On September 30, 2019, the Fuel Line Lenders filed an amended complaint, which added Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corp, and Syncora Guarantee Inc. as defendants (collectively, the Bondholder Defendants). On November 11, 2019 PREPA, FAFAA, and the Oversight Board filed a joint motion to dismiss and the Bondholder Defendants and the Trustee filed a separate joint motion to dismiss. The parties filed their objections to each of the joint motions to dismiss on December 5, 2019. On February 3, 2020, the Oversight Board, Bondholder Defendants, and the PREPA Bond Trustee filed replies in support of the motion to dismiss the amended complaint. FAFAA filed a limited joinder to the Oversight Board's reply. On April 2, 2020, the Title III Court entered an order adjourning all deadlines and hearings in this proceeding in light of the COVID-19 crisis.

- *Sistema de Retiro de los Empleados de la Autoridad v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico*, Case No. 19-00405-LTS (D.P.R. Aug. 6, 2019)

On August 6, 2019, Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica (SREAEE) filed a complaint against the Oversight Board, PREPA, FAFAA, the Commonwealth, the Governor, FAFAA's Executive Director, and U.S. Bank seeking declaratory relief that (a) all amounts owed to SREAEE are current expenses for purposes of the Trust Agreement; (b) the PREPA bondholders have no lien on revenues received by PREPA unless and until all current expenses have been paid in full; and (c) SREAEE should be paid in full all current and legacy liability before paying or agreeing to pay any PREPA bondholder. On September 17, 2019, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corp, and Syncora Guarantee Inc. (collectively, the Bondholder Defendants) filed a motion to intervene, which the Court granted on November 7, 2019. On October 30, 2019, SREAEE filed an amended complaint. On November 13, 2019, PREPA, FAFAA, the Oversight Board, the Commonwealth, and the Governor

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(in her official capacity) filed a joint motion to dismiss and the Bondholder Defendants and Trustee filed a separate joint motion to dismiss. The parties filed their objections to each of the joint motions to dismiss on December 4, 2019. On February 3, 2020, the Government Parties filed replies in support of the motion to dismiss the plaintiff's amended complaint. On April 2, 2020, the Title III Court entered an order adjourning all deadlines and hearings in this proceeding in light of the COVID-19 crisis.

- *The Fin. Oversight & Mgmt. Bd. for Puerto Rico, as representative of the Commonwealth of Puerto Rico v. Ambac Assurance Corp., et al.*, Adv. Pro. No. 20-00003-LTS (D.P.R. Jan. 16, 2020)

  On January 16, 2020, the Oversight Board filed an adversary complaint challenging the proofs of claims and liens asserted against the Commonwealth by holders of bonds issued by PRIFA. The Oversight Board asserts that the Commonwealth is "neither an issuer nor a guarantor" of the bonds and thus is not liable under the PRIFA enabling act or PRIFA bond documents.

- *The Fin. Oversight & Mgmt. Bd. for Puerto Rico, as representative of the Commonwealth of Puerto Rico v. Ambac Assurance Corp., et al.*, Adv. Pro. No. 20-00004-LTS (D.P.R. Jan. 16, 2020)

  On January 16, 2020, the Oversight Board filed an adversary complaint challenging the proofs of claims and liens asserted against the Commonwealth by holders of bonds issued by Puerto Rico Convention Center District Authority. The Oversight Board asserts that the defendants' proofs of claim "must be disallowed in their entirety" because "the Commonwealth is not a party to any agreement related to the Occupancy Tax Revenue, Defendants do not have any right to payment from the Commonwealth in connection with the PRCCDA Bonds, and do not possess an allowable claim against the Commonwealth."

- *The Fin. Oversight & Mgmt. Bd. for Puerto Rico, as representative of the Commonwealth of Puerto Rico v. Ambac Assurance Corp., et al.,* Adv. Pro. No. 20-00005-LTS (D.P.R. Jan. 16, 2020)

  On January 16, 2020, the Oversight Board filed an adversary complaint challenging the proofs of claims and liens asserted against the Commonwealth by holders of bonds issued by Puerto Rico Highways and Transportation Authority. The Oversight Board asserts that the Commonwealth "is neither an issuer nor a guarantor of the Bonds, and, as the Enabling Act and HTA Bond Materials state, the Commonwealth has no liability with respect to the Bonds."

- *The Fin. Oversight & Mgmt. Bd. for Puerto Rico, as Representative of Puerto Rico Highways and Transportation Authority, et al. v. Ambac Assurance Corp., et al.,* Adv. Pro. No. 20-00007-LTS (D.P.R. Jan. 16, 2020)

  On January 16, 2020, the Oversight Board and the UCC filed an adversary complaint challenging the proofs of claims and liens asserted against PRHTA by holders of bonds issued by PRHTA. The Oversight Board and the UCC argue that the defendants' secured bond claims "should be disallowed except as to amounts deposited to the credit of the 1968 Sinking Fund and the 1998 Resolution Funds." Additionally, the plaintiffs argue that the defendants' claims based on asserted constitutional and statutory violations "should be disallowed in their entirety."

- *Key Bondholder Lift Stay Motions, Case No. 17-3283-LTS (D.P.R. Jan. 16, 2020)*

  On January 16, 2020, the monoline insurers for bonds issued by PRIFA, PRCCDA, and PRHTA filed three separate motions seeking to lift the automatic stay, or in the alternative, for adequate protection of their alleged security interests in applicable pledged revenue. In the PRIFA motion, the monoline insurers assert that the Commonwealth is not entitled to use revenues generated from rum taxes, which they assert were pledged to PRIFA bondholders as collateral. The PRIFA motion seeks relief

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

from stay to pursue enforcement of the PRIFA bondholders' alleged liens against the rum tax revenues in two proceedings outside of the Title III cases. In the PRCCDA motion, the monoline insurers argue that the PRCCDA bondholders have a lien against certain hotel occupancy taxes collected by the Tourism Company and seek a lift of the automatic stay to bring an action to enforce their alleged liens. In the PRHTA motion, the monoline insurers assert that the PRHTA bondholders are secured by (i) toll revenues collected by PRHTA, and (ii) excise taxes collected by the Commonwealth. The PRHTA motion seeks relief from the stay because PRHTA and the Commonwealth allegedly do not have any equity in the toll revenues or excise taxes.

On February 4, 2020, the Oversight Board (as joined by FAFAA) objected to each of the stay motions. The monoline insurers' filed their replies on April 30, 2020. A preliminary hearing on the lift stay motions was held on June 4, 2020. These cases remain pending.

*Commitments and Other Contingencies*

On November 23, 1998, a global settlement agreement (the Global Agreement) was entered into by and between certain tobacco companies and certain states, territories, and other jurisdictions of the United States of America, including the Commonwealth. The Global Agreement calls for annual payments through the year 2025, which will vary due to inflationary and volume adjustments. Estimated payments to be received under the Global Agreement through the year ending June 30, 2025, amount to approximately $884 million. After 2025, the tobacco companies will continue making contributions in perpetuity. Pursuant to Act No. 173-1999, which created the Children's Trust (a blended component unit), the Commonwealth conditionally allocated and transferred to the Children's Trust the contributions that the Commonwealth is entitled to receive under the Global Agreement. Payments received under the Global Agreement and recognized as revenue during the year ended June 30, 2017, amounted to approximately $72.7 million. All of the revenue to be received under the Global Agreement and investment earnings on certain accounts under bond indentures is pledged as collateral for the Tobacco Settlement Asset Backed Bonds, Series 2002, 2005, and 2008. As of June 30, 2017, the approximate amount of the pledge is $1.4 billion, representing the approximate remaining principal and interest of the aforementioned bond issuances, which are committed through May 15, 2057. Accordingly, until May 15, 2057, such revenue is not available for other purposes.

The healthcare industry, under which PRMeSA operates, is subject to numerous laws and regulations, which include, among other things, matters such as government healthcare participation requirements, various licenses and accreditations, reimbursements for patient services, and Medicare and Medicaid fraud and abuse. Government action has increased with respect to investigations and/or allegations concerning possible violations of fraud and abuse and false claims statutes and/or regulations by healthcare providers. Providers that are found to have violated these laws and regulations may be subjected to fines or penalties. While management of PRMeSA believes its policies, procedures, and practices comply with governmental regulations, no assurance can be given that the Administration will not be subject to governmental inquires or actions.

The Health Information Technology for Economic and Clinical Health Act set meaningful use of interoperable Electronic Health Record (EHR) adoption in the health system as a critical national goal and incentivized the EHR adoption. Its goal is not adoption alone but meaningful use of EHRs, that is, their use by providers to achieve significant improvements in care. Meaningful use compliance is required before the Federal Fiscal Year 2016, otherwise, the hospital will incur penalties for noncompliance that may reduce future Medicare payments and potentially Medicare Advantage program payments. The Centers for Medicare and Medicaid Services (CMS) manages and has implemented an incentive program for those hospitals that implement EHR and comply with certain specific requirements. CMS' EHR Incentive Programs provide incentive payments to eligible hospitals as they adopt, implement, upgrade, or demonstrate meaningful use, as defined

212

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

by CMS, of certified EHR technology. As of June 30, 2016, PRMeSA is under the implementation of its EHR system.

The SCPT has financial assistance agreements with several municipalities of the Commonwealth to provide funding for the construction, improvement, and rehabilitation of certain projects of the Special Communities. At June 30, 2017, the SCPT's accumulated budgeted balances on these agreements amounted to approximately $1.1 billion, from which a total of approximately $1 billion had been disbursed.

As of June 30, 2017, the following blended component units maintained various unspent construction and assistance commitments as follows (in thousands):

| Entity | | Amount |
|--------|---|--------|
| UPRCCC | $ | 3,836 |
| PRIFA | | 3,285 |
| Total | $ | 7,121 |

The Commonwealth is also committed under numerous noncancelable long-term operating lease agreements, which expire through 2032, covering land, office facilities, and equipment. Rental expenditure within the governmental funds for the year ended June 30, 2017 under such operating leases was approximately $141 million.

The future minimum lease payments for these leases were as follows (in thousands):

| Years ending June 30: | | |
|-----|---|---|
| 2018 | $ | 72,647 |
| 2019 | | 57,775 |
| 2020 | | 42,122 |
| 2021 | | 29,649 |
| 2022 | | 16,108 |
| 2023-2027 | | 41,973 |
| 2028-2032 | | 4,972 |
| Total future minimum lease payments | $ | 265,246 |

*Environmental Commitments and Contingencies*

The Commonwealth accounts for pollution remediation obligations in accordance with GASB Statement No. 49, Accounting and Financial Reporting for Pollution Remediation Obligations. This Statement addresses accounting and financial reporting standards for pollution (including contamination) remediation obligations, which are obligations to address the current or potential detrimental effects of existing pollution by participating in pollution remediation activities such as site assessments and cleanups. The scope excludes pollution prevention or control obligations with respect to current operations, and future pollution remediation activities that are required upon retirement of an asset, such as landfill closure and postclosure care.

Once any of five specified obligating events occurs, a government is required to estimate the components of expected pollution remediation outlays and determine whether outlays for those components should be

213

# COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

accrued as a liability or, if appropriate, capitalized when goods and services are acquired. Obligating events include the following:

- The government is compelled to take pollution remediation action because of an imminent endangerment.

- The government violates a pollution prevention related permit or license.

- The government is named, or evidence indicates that it will be named, by a regulator as a responsible party or potentially responsible party (PRP) for remediation, or as a government responsible for sharing costs.

- The government is named, or evidence indicates that it will be named, in a lawsuit to compel participation in pollution remediation.

- The government commences or legally obligates itself to commence pollution remediation.

On June 16, 2014, the USDOJ, acting on behalf of the EPA, filed a complaint alleging unauthorized discharges of pollutants from the storm sewer systems owned and/or operated by the Municipality of San Juan (MSJ), the DTPW, and the PRHTA through certain flood control pump stations owned and operated by the DNER, into the waters of the United States, in violation of the Federal Clean Water Act. The complaint seeks the assessment of civil penalties against MSJ, DTPW/PRHTA, DNER and the Commonwealth (collectively, the Puerto Rico Defendants) for past and present violations of up to $32,500 per day per violation, for those violations that occurred between February 5, 2007 and January 12, 2009; and $37,500 per day per violation, for those violations that occurred from January 13, 2009 to the present. The complaint further seeks injunctive relief to bring the defendants into compliance with the Municipal Separate Storm Sewer Systems Permit. MSJ, DNER, and DTPW/PRHTA individually resolved the complaint by entering into three separate consent decrees with USDOJ/EPA. Pursuant to the settlement negotiations, and taking into considerations the economic impact of a civil penalty and the Puerto Rico Defendants' documented inability to pay a penalty, USDOJ/EPA agreed to waive the monetary civil penalty associated with the provisions alleged in the complaint. Thus, the three consent decrees focus on injunctive relief to enable the Puerto Rico Defendants to attain compliance with applicable statutory and regulatory provisions. The MSJ consent decree was lodged with the U.S. District Court for the District of Puerto Rico (District Court) on October 26, 2015. The DNER and the DTPW/PRHTA consent decrees were both lodged with the District Court on December 23, 2015. At this time, USDOJ has not yet filed a motion with the District Court for entry of the consent decrees, as USDOJ/EPA is evaluating public comments received during the mandatory public period pursuant to 28 C.F.R.£50.7.

**Fiduciary Funds**

ERS is a defendant in a lawsuit challenging the constitutionality of Act No. 3-2013 and in another lawsuit challenging the constitutionality of Act No. 3-2013 and Act No. 32-2013. In the first lawsuit, the plaintiffs requested the ERS to honor the participants of an employer of the ERS, the benefits available to them under Act No. 447 which were affected by Act No. 3-2013, with the economic consequences that this would entail. On February 13, 2015, the Puerto Rico Supreme Court denied the plaintiff's recourse. On March 6, 2014, the plaintiffs filed an amended complaint, including the Board of Trustees of the ERS as a defendant and including a tort claim against the ERS's Administration and its Board of Trustees. In the second lawsuit, the plaintiffs requested the annulment of the provisions of law imposing economic obligations to municipalities in favor of the ERS. Act No. 3-2013 imposed a $2,000 contribution to all municipalities and public corporations for every retiree as of June 30, 2013 and Act No. 32-2013 imposed an additional uniform contribution according to the corresponding proportion of the employer's contributions. On May 5, 2015, the Puerto Rico First Court of Instance issued a judgment dismissing the case. On July 27, 2015, the plaintiffs filed an appeal

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

at the Puerto Rico Court of Appeals. On January 5, 2016, the Puerto Rico Court of Appeals upheld the decision regarding the dismissal of the case. On April 5, 2016, the plaintiffs filed a Certiorari before the Puerto Rico Supreme Court. The Puerto Rico Supreme Court has yet to issue a ruling regarding this. Although economic compensation was not requested in this second case, if a ruling declaring invalidity of the questioned articles is made by the Puerto Rico Supreme Court, the ERS will not receive the payments imposed by Act No. 3-2013 and Act No. 32-2013 to the municipality and the ERS will probably have to refund payments already made under those law provisions. With respect to these lawsuits, the ERS, in consultation with legal counsel, has advised that at this stage of the proceedings they cannot offer an opinion as to the probable outcome. Accordingly, management does not consider it necessary to make any provision in its books for these cases and intends to contest them vigorously.

On September 29, 2011, two ERS beneficiaries commenced a derivative suit in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part (the Commonwealth Court) in the case styled *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico, et. al v. UBS Fin. Servs. Inc. of Puerto Rico, et al.*, Civ. No. KAC-2011-1067 (803) (P.R. Ct. of First Instance Sept. 29, 2011) (the UBS Action), alleging breach of fiduciary duties and breach of contract against the underwriters in the issuance and underwriting of $3 billion of ERS Bonds in 2008. On December 7, 2016, the Commonwealth Court allowed ERS to intervene and ordered the plaintiffs, which now include ERS and seven individual plaintiffs (collectively, the Plaintiffs), to file a third amended complaint against the underwriters, including UBS Financial Services Inc. of Puerto Rico (UBS), and related entities (collectively, the UBS Defendants). UBS had served as the lead underwriter of the 2008 ERS Bonds.

Among other things, Plaintiffs allege that by participating as the lead underwriter of the 2008 ERS Bonds, UBS violated its contractual, non-contractual and fiduciary obligations to ERS. The Plaintiffs seek a ruling that UBS is liable to ERS for over $800 million for underwriting the 2008 ERS Bonds.

On March 6, 2019, Plaintiffs filed the Fourth Amended Complaint against the UBS Defendants, which was accepted by the Commonwealth Court on April 15, 2019. On April 29, 2019, UBS filed its answer and an informative motion regarding its intent to file a counterclaim if ERS's Title III automatic stay were to be lifted. The proposed counterclaim attached to the informative motion alleges breach of contract and indemnification arising out of ERS's issuance of the 2008 ERS Bonds.

On June 25, 2019, the Oversight Board filed a motion to stay certain contested matters pending confirmation of a proposed plan of adjustment for the Commonwealth. On July 24, 2019, the Title III Court entered an order staying until November 30, 2019, various adversary proceedings and claims objections before it with overlapping issues, including those involving the validity of the ERS Bond issuances. Because these overlapping issues are also at stake in the UBS Action, UBS contends that the UBS Action in the Commonwealth Court should be stayed pending the Title III Court's resolution of these common legal issues.

UBS has also filed two proofs of claim against ERS related to the UBS Action, as well as two proofs of claim related to *Casasnovas Balado v. UBS Fin. Servs., Inc.*, No. KAC-2014-0072 (905) (P.R. Ct. of First Instance Jan. 29, 2016), an action filed by a group of individual plaintiffs arising from the ERS Bond issuances.

**Discretely Presented Component Units**

In the normal course of their operations, various discretely presented component units are also subject to guarantees and other actions brought by third parties seeking damages or entering into commitments. Such actions are disclosed in the separately issued reports of the major discretely presented component units, included below. With respect to commitments related to guarantees. These commitments and guarantees are summarized below:

215

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(a)  GDB**

At June 30, 2017, GDB had financial guarantees for the private sector of approximately $284 million. In addition, at June 30, 2017, standby letters of credit to the public-sector were approximately $1.3 billion. Commitments to extend credit to the public-sector were approximately $1.4 billion, while there were no commitments to extend credit to the private sector.

On July 24, 2013, Aerostar Airport Holdings, LLC (Aerostar) and PRPA entered into a lease agreement of Luis Muñoz Marín International Airport (LMMIA), for a term of 40 years. In connection with the lease of LMMIA, GDB executed a payment guarantee in favor of Aerostar for any Termination Damages due and payable in cash by PRPA under the lease agreement. In accordance with GDB's guarantee, Aerostar has the right to terminate the lease agreement mainly under three different noncompliance scenarios on the part of PRPA. The amount of Termination Damages mainly consists, among other components, of the LMMIA Facility Leasehold Value and Leasehold Compensation as defined in the agreement.

On September 22, 2011, Autopistas Metropolitanas de Puerto Rico, LLC (Metropistas) and PRHTA entered into a concession agreement (the Concession Agreement) for the administration of the toll roads PR-22 and PR-5, for which PRHTA received in exchange a lump sum payment of $1.1 billion and a commitment to make immediate improvements to the toll roads amounting to $56 million and to comply with world class operating standards, which may require investing more than $600 million over the life of the concession. In connection with the closing of the Concession Agreement, GDB executed a payment guarantee in favor of Metropistas pursuant to which GDB acts as guarantor of any Termination Damages, as defined in the Concession Agreement, due and payable in cash by PRHTA under the Concession Agreement. The amount of Termination Damages consists, among other components, of the fair market value of Metropistas' interest in the toll roads. At the same time, in connection with the payment guarantee, GDB and PRHTA also entered into a Reimbursement Agreement whereby PRHTA agreed to reimburse GDB for any amounts paid under the guarantee.

The PRHFA acts as servicer for a number of mortgage loans owned by other investors. The servicing is generally subcontracted to a third party. As of June 30, 2017, the principal balance of the mortgage loans serviced for others is approximately as follows (in thousands):

| Entity | | Amount |
|---|---|---|
| Puerto Rico Community Development Fund I | $ | 29,302 |
| Office for the Administration of the Assets of the Urban Renovation and Housing Corporation or its successor without guaranteed mortgage loan payments | | 19 |
| Total | $ | 29,321 |

GDB and certain of its component units are defendants in several lawsuits arising out of the normal course of business. Management, based on advice of legal counsel, is of the opinion that the ultimate liability, if any, resulting from these pending proceedings will not have a material adverse effect on the financial position and results of operations of GDB or its component units.

216

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(b) PRHTA**

PRHTA is a defendant or codefendant in various lawsuits for alleged damages in cases principally related to construction projects. These are generally either fully or partially covered by insurance. The contactors are required, under the terms of the construction agreements, to carry adequate public liability insurance and to hold harmless PRHTA from lawsuits brought on account of damages relating to the construction of the projects. As of June 30, 2017, PRHTA, based on legal advice, has recorded a liability of approximately $105 million for probable losses on those claims not fully covered by insurance. In the opinion of legal counsel, any liability in excess of the recorded liability that may arise for such claims will not be significant to PRHTA's financial position or results of operations. As of May 21, 2017, PRHTA is a debtor in a Title III case under PROMESA and, as a result, these cases are stayed during the pendency of PRHTA's Title III case.

**(c) PREPA**

In 2009, a large fire at a tank farm owned by CAPECO caused major damage to surrounding areas. PREPA stored some of its fuel at this facility. In the aftermath of the fire, numerous claims were filed against CAPECO. Some of the plaintiffs included PREPA as a defendant in these suits, alleging that PREPA failed in its duty (as the owner of fuel stored at the site) to properly monitor CAPECO's operations in the tank farm. On August 12, 2010, CAPECO filed` for bankruptcy. As a result, all proceedings against CAPECO were stayed. Subsequently, CAPECO'S bankruptcy proceeding ended. Subsequently, PREPA also begun a bankruptcy proceeding. Case may be reactivated, if lift of stay is granted in PREPA's bankruptcy proceeding.

In 2011, separate lawsuits were filed against PREPA by various consumers claiming damages allegedly caused by incorrect and unlawful billing and invoicing practices. The lawsuits have been consolidated and certified as complex litigation, as requested by PREPA. The consumers are claiming damages in excess of $100 million and requested that the case be certified as a class action. PREPA filed its reply in opposition to the class certification request. Discovery proceedings are still being conducted in those cases that have not been dismissed yet. On December 7, 2016, a Status Conference was held, and a new judge was assigned. On March 23, 2017, a conference was held and as a result thereof a hearing for class certification was scheduled on August 16, 2017. However, on July 3, 2017, PREPA filed for bankruptcy under Title III of PROMESA. PREPA filed the notice of stay before the state court on July 12, 2017 and the corresponding judgment staying the case was entered on August 11, 2017. PREPA will vigorously defend these cases and maintains that there is no cause of action against PREPA.

In 2011, a civil lawsuit was filed against PREPA and its directors in federal court in Puerto Rico, by eight private individuals and one local private corporation, claiming violations of the Racketeer Influenced and Corrupt Organizations Act (the RICO Act), including unlawful use of an enterprise to launder money generated by a pattern of racketeering activity, unlawful manipulation of an enterprise for purposes of engaging in, concealing, or benefiting from a pattern of racketeering activity, unlawful conspiracy to violate the RICO Act, and conspiracy to advance a money laundering scheme. Neither the United States government nor the Commonwealth is a party in this civil lawsuit. The amount claimed is unspecified. Plaintiffs have also asked the federal court to allow them to be the representatives of a class consisting of all consumers of the electricity sold by PREPA from 2007 to the present. PREPA opposed the certification of class action and was denied by the court. On September 25, 2012, the federal court dismissed all of the above claims except those claims regarding conspiracy to advance a money laundering scheme and conspiracy for acquiring an interest in an enterprise. PREPA believes that the undismissed RICO Act claims are without merit because the plaintiffs will be unable to prove the necessary elements of those claims, in particular those that require showing that PREPA conspired

217

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

through its employees to violate the RICO Act, or that its directors or Board members obtained any interest in PREPA (other than their Board position). PREPA will continue to vigorously defend this case.

In 2009, PREPA filed a lawsuit in Commonwealth court against Vitol, Inc. and certain of its affiliates and subsidiaries seeking a declaratory judgment as to the nullity of a $2 billion fuel supply agreement due to Vitol's failure to disclose certain corruption cases for which it accepted responsibility. Vitol removed this lawsuit to federal court and presented a counterclaim alleging that PREPA owed it approximately $45 million for delivered fuel and related excise taxes. On November 28, 2012, PREPA filed a second complaint against Vitol in the Commonwealth of Puerto Rico Court of First Instance seeking essentially the same remedies sought in the first action but as to four other contracts, after discovery revealed the date in which Vitol learned of the investigations in the corruption cases. Vitol also removed this action to the U.S. District Court for the District of Puerto Rico. PREPA claims approximately $3.5 billion in the aggregate. Vitol has resolved the claim for the $17 million in excise taxes and has stated that it will amend its counterclaim to dismiss that claim. Discovery in the case is closed. The parties have submitted motions for summary judgment against each other and are in the process of filing their respective oppositions thereto. The motions are pending adjudication by the court. On March 16, 2016, the District Court granted the PREPA's requests for remand and remanded both cases to State Court. On April 8, 2016, Vitol appealed to the U.S. Court of Appeals for the First Circuit (the First Circuit) the order remanding the cases to State Court. The First Circuit affirmed the order remanding the case to State Court. Vitol requested rehearing by the full court of said ruling and the First Circuit denied the request for rehearing as to PREPA's claims but left pending its ruling as to counterclaim due to said counterclaim having been stayed as a result of PREPA's petition under Title III of PROMESA. Vitol once again removed the case from the State Court to the District Court but this time pursuant to the Title III provisions.

Fifty-four plaintiffs, former and current PREPA employees, claim that they have health problems due to PREPA's intentional failure to comply with federal and local laws regarding asbestos materials. In particular, plaintiffs claim that, during a certain time frame, in which PREPA had the obligation to take measures regarding asbestos materials in its facilities, PREPA failed to comply with its duty to protect the plaintiffs from asbestos exposure. Plaintiffs claim approximately $321 million in damages. PREPA alleged employer's immunity under the Workers' Compensation Law. An evidentiary hearing on the issue took place. After trial, the Court entered judgment dismissing the claims in their entirety. The plaintiffs filed an appeal before the Puerto Rico Appeals Court. PREPA filed a motion to dismiss the appeal. The Appeals Court denied PREPA's motion to dismiss and PREPA filed its appellate brief. The case is pending adjudication by the Appeals Court.

On November 21, 2013, Tropical Solar Farms, LLC; New Horizon Solar, LLC; Jonas Solar Energy, LLC; and Roberto Torres (collectively, the Plaintiffs) filed a suit in the Commonwealth of Puerto Rico Court of First Instance, Ponce Section, against 29 defendants and several John Does. The complaint contains a plethora of claims against multiple defendants arising from an alleged multiplicity of sources of obligations: contractual, in tort, and in breach of fiduciary duties and the law. It encompasses private entities, a public corporation, PREPA and former public officers, among others. The complaint claims monetary compensation in excess of $705 million. The complaint alleges that the defendants negotiated several Renewable Power Purchase Agreements to provide up to 40 megawatts to PREPA, all of which were assigned by the plaintiffs to various other defendants. The Plaintiffs allege that the defendants never intended to comply with their obligations under the agreements, and were only buying time to advance their other renewable energy projects with PREPA.

PREPA filed a motion to dismiss and on October 2, 2015, a partial judgment was entered dismissing all claims in the case against PREPA with prejudice. Tropical Solar appealed the dismissal to the Puerto Rico Court of Appeals. On appeal, the Puerto Rico Courts of Appeals modified the dismissal on the

218

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

claims against PREPA from a dismissal with prejudice to a dismissal without prejudice. Any subsequent claims asserted by Tropical Solar against PREPA will be addressed in PREPA's Title III proceeding.

In addition to these cases, PREPA is involved in other typical litigation for an electric power utility, but management estimates the amounts of such claims are not material and will not affect adversely PREPA's operations. These other cases remain in discovery stages and PREPA will defend them vigorously.

*Securities and Exchange Commission Investigation*

The SEC requested information about certain bond issuance of PREPA dating back to 2012 and 2013. PREPA is cooperating in the inquiry, including providing the SEC with documents and information. The SEC has also sent what is known as Wells letter notifications to PREPA as well as to investment bankers, financial advisors and legal advisors who helped structure all the related bond issuances under the scope of its investigation. Wells letters notify the recipient that is being investigated by the SEC and presents an opportunity for all recipients of such notifications to respond to any allegations from the SEC. The SEC has advised that the information requests should not be construed as an indication that any violation of the federal securities laws has occurred. PREPA continues to cooperate with the SEC regarding their investigation with respect to these bond issuances. This matter is ongoing and, it cannot be predicted when it will be concluded or its outcome.

PREPA is a defendant or codefendant in several lawsuits incidental to its business, some involving substantial amounts. In those instances, that management and legal counsel believe that the outcome of the litigation will be unfavorable to PREPA, a provision has been made to cover the estimated liability. PREPA's management, based on discussions with legal counsel, believes that the additional liability, if any, resulting from the ultimate resolution of these matters will not have a material effect on PREPA's financial position or results of operations. As of July 3, 2017, PREPA is a debtor in a Title III case under PROMESA and, as a result, these cases are stayed during the pendency of PREPA's Title III case.

**(d)  PRASA**

PRASA is the defendant in a lawsuit presented by customers alleging that PRASA has over billed them due to the methodology used to estimate consumption. There is one case in which plaintiffs requested a certification of the suit as a class action and seek recovery damages and an injunction enjoining PRASA from continuing to bill using the current methodology. The class certification hearing took place in June 2011, a certification to a class action was issued. PRASA appealed the class action certification and is expecting the Court decision on the request. PRASA's potential exposure from these lawsuits is unlikely and, as such, no liability is being reported on PRASA's audited basic financial statements.

PRASA is the defendant or codefendant in various other lawsuits. The ultimate outcome of the lawsuits cannot presently be determined. However, PRASA's management, based on the advice of legal counsels, is of the opinion that these lawsuits will not have a material impact on their stand-alone audited basic financial statements.

**(e)  UPR**

UPR participates in a number of federal financial assistance programs. These programs are subject to audits in accordance with the provisions of the OMB "Super Circular", Audits of States, Local Governments, and Non-Profit Organizations, or to compliance audits by grantor agencies. The amount, if any, of expenditures that may be disallowed by the granting agencies cannot be determined at this time. Management believes the impact will not be material to UPR's basic financial statements.

Medical malpractice claims have been asserted against UPR hospital and are currently at various stages of litigation. It is the opinion of UPR hospital's legal counsel and management that the recorded accruals

219

## COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

are adequate to provide for potential losses resulting from pending or threatened litigation, as well as claims from unknown incidents that may be asserted arising from services provided to patients. Under Act No. 98-1994, maximum claims loss against UPR hospital is limited to $75,000 per person, or $150,000 if it involves actions for damages to more than one person or where a single injured party is entitled to several causes of action. It is the opinion of UPR hospital's management and its legal counsel that the outcome of these claims would not have a material effect on UPR or the hospital's operations.

*Environmental Commitments and Contingencies*

The following discretely presented component units' operations are the ones carrying and involved in specific activities that are subject to state and federal environmental regulations:

**(a)  PREPA**

Facilities and operations of PREPA are subject to regulation under numerous federal and Commonwealth environmental laws, including the Clean Air Act, Clean Water Act, Oil Pollution Act (OPA), Resource Conservation Recovery Act (RCRA), Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), and Underground Storage Tanks, among others.

In February 1992, the EPA conducted a multimedia inspection of PREPA's facilities and identified several alleged instances of noncompliance related to PREPA's air, water, and oil spill prevention control and countermeasures compliance programs. PREPA and the EPA negotiated to resolve the issues regarding the deficiencies observed during the inspection and to ensure future compliance with all applicable laws and regulations. As a result of the negotiations, PREPA and the EPA reached an agreement that resulted in a consent decree (the Consent Decree) approved by the United States federal court in March 1999. Under the terms and conditions of the Consent Decree, PREPA paid a civil penalty of $1.5 million, and implemented additional compliance measures amounting to $4.5 million. In addition, the Consent Decree requires that PREPA improve and implement compliance programs and operations in order to assure compliance with environmental laws and regulations.

In 2004, the United States federal court approved a modification to the Consent Decree in which PREPA reduced the sulfur content in the No. 6 fuel oil used in certain generating units of its Costa Sur, Aguirre, Palo Seco and San Juan Power Plants. Additionally, PREPA has completed a nitrogen oxide emissions reduction program and modified the optimal operating ranges for all its units under the Consent Decree.

PREPA believes to be in substantial compliance with the Consent Decree programs. On July 22, 2014, representatives from the Authority, EPA and United States Department of Justice ("DOJ") met to discuss towards the termination of some of the Programs. As a result, the EPA and the DOJ requested PREPA to submit information regarding the Authority's compliance with the Programs for their review and evaluation. On September 25, 2014, PREPA met again with EPA and DOJ representatives and submitted the information requested, along with a letter where PREPA formally requested the EPA to review and approve the termination of those programs/provisions of the Consent Decree and its Modification of 2004 presented, as well as begin the process toward jointly filing in the Court a stipulation for Partial Termination of such programs.

To accomplish this goal, PREPA suggested to appoint a task force composed of EPA and PREPA representatives to schedule and meet to address the details which EPA Agreed to. As of May 2018, task force meetings between PREPA and EPA have been held, and a draft of the document is being reviewed by EPA and DOJ. Once the document is final it must go through a public process for its final approval.

In 2002, PREPA received a Special Notice Concerning Remedial Investigation/Feasibility Study for Soil at the Vega Baja Solid Waste Disposal Superfund Site. The EPA has identified PREPA and six other entities as "potentially responsible parties", as defined in the CERCLA.

220

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

On April 25, 2013, the Consent Decree (CD) Civil Action No. 12-1988 (ADC) was filed in the US Court, Puerto Rico District. An Environmental Escrow Agreement (EEA) was entered into by and among the GDB, as the escrow agent, PRLA, the Puerto Rico Housing Department (PRHD) and the EPA. The EEA was created to serve as financial assurance for the performance of the obligation under the consent decree. On June 24, 2013, PREPA deposited $400 thousand into GDB escrow account as provided in the consent decree. Accounts and payments in GDB are retained due to the restructuring process. The escrow account is now deposited in a commercial bank. If the escrow account balance is reduced below $250 thousand, PREPA, PRLA and PRHD shall establish and maintain a performance guarantee for the benefit of EPA equal to the difference of the escrow account balance and $250 thousand. Public Agencies may elect to satisfy this performance guarantee requirement either individually, by providing separate performance guarantees which total the amount required to be maintained as set forth above, or collectively.

PREPA, on behalf of PRLA and PRHD, has requested disbursements charged against this account and payments have been processed. All payments required to be charged against this account are to cover projects required by the consent decree. If payments aren't fulfilled, services can be suspended by the contractors resulting in the application of fines for noncompliance as agreed by the parties.

PREPA shall pay EPA all future response costs not inconsistent with the National Contingency Plan. PREPA has not been informed about these costs and is unable to determine an estimated amount, therefore there is no amount recorded in the financial statements.

This Consent Decree can be terminated upon motion by any party, provided that all public defendants have satisfied their obligations of payments of Response Cost and Stipulated Penalties. Termination of this Consent Decree shall not affect the Covenants Not to Sue including all reservations pertaining to those covenants and shall not affect any continuing obligation of the Settling Defendants.

PREPA continues to develop and implement a comprehensive program to improve environmental compliance in all applicable environmental media. This program has been and continues to be updated to conform to new regulatory requirements.

*(b) PRASA*

Facilities and operations of PRASA's water and sewer systems are subject to regulations under Federal and Commonwealth environmental laws. PRASA is subject to two (2) court approved agreements to enforce compliance with such environmental laws, one with the Department of Health of the Government of Puerto Rico ("PRDOH") related to violations of the Safe Drinking Water Act ("SDWA") and the other with the United States Government, acting on behalf of EPA, related to violations of the Clean Water Act ("CWA").

On December 15, 2006, an Agreement (Civil Case No. KPE 2006-0858) was signed between PRASA and PRDOH (the PRDOH Agreement) to address SDWA compliance. The PRDOH Agreement was finally approved by the court on June 20, 2008. PRASA agreed to implement a work plan to remediate SDWA violations and a procedure to address future violations that may arise, establish preventive and mitigation measures, and execute a preventive maintenance program for the purpose of meeting the requirements of the SDWA. The SDWA requires the compliance with parameters of water quality and treatment techniques at PRASA's water systems. As part of the PRDOH Agreement, PRASA paid a civil penalty of $1 million during fiscal year ended June 30, 2007 for alleged non-compliances with the SDWA. The PRDOH Agreement requires that PREPA self-assess and pay stipulated penalties for failing to comply with remedial measures deadlines, failing to submit deliverables, or exceedances to maximum contaminant levels.

221

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

In addition, in accordance with the PRDOH Agreement, PRASA invoked force majeure protection for delays and noncompliances incurred attributable to the devastating impacts of Hurricanes Irma and Maria that struck Puerto Rico in September 2017. The PRDOH has provided the relief requested by PRASA on a case-by-case basis.

On September 15,2015,the Department of Justice ('DOJ), acting at the request of the Administrator of EPA, filed a complaint (the "Complaint") against PRASA and the Commonwealth, as a required party (pursuant to Section 309(e)), in the United States District Court for the District of Puerto Rico (the "District Court"). The Complaint sought injunctive relief and the assessment of civil penalties against PRASA for alleged violations of the CWA. Specifically, the Complaint alleges PRASA violated Section 301(a) of the CWA, by discharging pollutants, and/or failing to comply with the terms of the National Pollutant Discharge Elimination System ("NPDES") permits issued PRASA facilities under Section 402 of the CWA, as well as failing to report unauthorized discharges required under such permits, and failing to meet operation and maintenance requirements for certain water treatment plants and wastewater treatment plants.

Concurrently with the filing of the Complaint, DOJ filed on September 15, 2O15 a Consent Decree executed among the EPA, PRASA and the Commonwealth settling the matters addressed in the Complaint, under the terms agreed upon by PRASA, DOJ and EPA. The EPA Consent Decree is the result of an extensive negotiation process aimed, among other things, at resolving the claims addressed in the Complaint and the requirements of previous consent decrees related to the allegations included in the Complaint, specifically with the goal of implementing a system-wide NPDES permit compliance plan, continuing the implementation of operational and maintenance plans in all of PRASA's facilities, implementing remedial measures to address discharges and the alleged violations to the CWA occurring within PRASA's wastewater collection system of the Puerto Nuevo Wastewater Treatment Plant ("WWTP") in the Municipality of San Juan.

Negotiations leading to the execution of the EPA Consent Decree were commenced by PRASA in order to mitigate and consolidate in one consent decree the high capital improvement program costs mandated by existing consent decrees. Despite being in material compliance with the capital improvement project requirements of the existing consent decrees, PRASA began discussions with DOJ, on behalf of EPA, EPA and PRDOH seeking that a capital improvements program prioritization system be recognized in order to, among other things: (i) reduce required annual project expenditures and extend compliance deadlines, (ii) incorporate other regulatory projects included in PRASA's capital improvement program not currently covered by a consent decree, and (iii) include the operation, maintenance and capital improvement program requirements related to the wastewater collection system of the Puerto Nuevo WWTP, including alleged combined sewer overflows. On May 23,2016, the District Court entered judgement approving the consolidated EPA Consent Decree. The Complaint was dismissed with prejudice and civil case number 15-2283 was closed.  On December 2016, PRASA requested a time extension to EPA pursuant to Section XIII-Modification/Prioritization of Remedial Measures for certain projects of the Consent Decree, which include the remedial measures to address Washwater Discharges at Water and Wastewater Treatment Plants.

In addition, in accordance with the EPA Consent Decree, PRASA invoked force majeure protection for delays and noncompliances incurred attributable to the impact of Hurricanes Irma and Maria in September 2017.

222

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Construction Commitments*

As of June 30, 2017, the following discretely presented component units maintained various unspent construction agreements as follows (in thousands):

|  |  | Amount |
|---|---|---|
| Major: |  |  |
| PREPA | $ | 178,000 |
| PRHTA |  | 151,300 |
| UPR |  | 62,600 |
| SIFC |  | 36,000 |
| Sub-total |  | 427,900 |
| Nonmajor |  | 39,619 |
|  | $ | 467,519 |

*Service Concession Arrangements (SCA)*

*(c)* *PRHTA*

On September 22, 2011, the PRHTA entered into a toll road concession agreement (the Toll Road Service Concession Agreement) with Autopistas Metropolitanas Puerto Rico, LLC (the Concessionaire), in which the PRHTA granted to the Concessionaire the right to finance, operate and maintain PR-5 and PR-22 highways (the Toll Roads) for a period of 40 years. During the 40-year term, the Concessionaire will have the right to charge and collect tolls imposed on the Toll Roads. The PRHTA received an upfront concession fee payment of approximately $1.1 billion, from which approximately $873 million was used to redeem or defease certain bonds issued and outstanding associated with the Toll Roads. Pursuant to the provisions of GASB Statement No. 60, *Accounting and Financial Reporting for Service Concession Arrangements*, the PRHTA recognized a deferred inflow of resources of approximately $1.1 billion, which will be amortized and recognized as revenue over the 40-year term of the agreement. The PRHTA will recognize approximately $28.4 million annually through fiscal year 2052 as a result of the amortization of the recognized deferred inflow of resources. The Toll Roads will continue to be presented as an asset of the PRHTA, which at June 30, 2017 amounted to approximately $139.4 million, but are not being depreciated since September 22, 2011 until the end of the agreement in 2052, as the concession agreement required the Concessionaire to return the Toll Roads to the PRHTA in its original or enhanced condition. Toll Roads Concession improvements are recognized in PRHTA's records as soon as they are completed and placed in operations.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

On April 19, 2016, the PRHTA entered into an amendment to the Toll Road Service Concession Agreement to extend the original term for 10 additional years and to create five bi-directional tolling points on the PR-5 and PR-22 highways. The PRHTA received an upfront concession fee payment of approximately $100 million, which was used to pay approximately $18.2 million of the PRHTA's current debts and approximately $79.8 million of the Commonwealth's debts in fiscal year 2016. Also, in June 2017, the Authority received approximately an additional $15 million payment concurrently with the commencement of the bi-directional system described above.

On December 20, 1992, the PRHTA and Autopistas de Puerto Rico y Compañía S.E. (Autopistas) entered into a service concession agreement (as amended in 2004 and 2009, the Bridge Service Concession Agreement, and together with the Toll Road Service Concession Agreement, the Service Concession Agreement) for the design, construction, operation, and maintenance of the Teodoro Moscoso Bridge (the Bridge), a toll bridge that crosses the San Jose Lagoon between the municipalities of San Juan and Carolina. The initial term of this agreement was 35 years, expiring on April 3, 2027, but has been subsequently amended on September 9, 2009 to extend the term to 50 years until 2044. Also, pursuant to the provisions of GASB No. 60, as of June 30, 2013, the PRHTA recognized the Bridge at its estimated fair market value of approximately $109.5 million, amortized over an estimated useful life of 59 years, and a deferred inflow of resources, also of approximately $109.5 million that will be amortized and recognized as revenue over the remaining term of the agreement.

Toll Roads and Bridge Concessions under the Service Concession Agreements, net at June 30, 2017 consisted of (in thousands):

| | | |
|---|---|---|
| Toll roads concession | $ | 90,740 |
| Toll roads concession improvements | | 48,646 |
| Bridge concession | | 60,102 |
| Total | $ | 199,488 |

The deferred inflows of resources at June 30, 2017 consisted of approximately $1.1 billion related to the Tolls Roads Concession Agreement.

**(18) Retirement Systems**

The Retirement Systems issue stand-alone audited basic financial statements, which are publicly available and include, the required supplementary information, and any other required supplementary information. Each system is independent; thus, their assets or liabilities may not be transferred from one system to another or be used for any purpose other than to benefit the participants of each system.

*(a) ERS*

After June 30, 2017, the Commonwealth enacted legislation that changed the structure of pension benefits administered by ERS. For further information regarding such pension legislation, see Note 3 and Note 23.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Plan Description* – Prior to August 23, 2017, ERS implemented a cost-sharing, multi-employer defined benefit pension plan administered by the Puerto Rico Government Employees and Judiciary Retirement Systems Administration (ERS and JRS Administration). It is a trust created by Act No. 447-1951, as amended, to provide pension and other benefits to retired employees of the Commonwealth, its public corporations, and municipalities of Puerto Rico. ERS began operations on January 1, 1952, at which date, contributions by employers and participating employees commenced. ERS is a pension trust fund of the Commonwealth.

Prior to August 23, 2017, ERS administered different benefit structures pursuant to Act No. 447-1951 including a cost-sharing, multi-employer defined benefit program, a defined contribution program (System 2000 program) and a contributory hybrid program. Benefit provisions vary depending on member's date of hire. Substantially, all full-time employees of the Commonwealth and its instrumentalities (73 Commonwealth agencies, 78 municipalities, and 55 public corporations, including ERS) were covered by ERS. Membership was mandatory for all regular, appointed, and temporary employees of the Commonwealth at the date of employment. Membership is optional for the Governor of the Commonwealth, Commonwealth secretaries, head of public agencies, and instrumentalities, among others.

The benefits provided to members of ERS were statutorily established by Commonwealth and may be amended only by the Legislature with the Governor's approval. Act No. 3-2013, in conjunction with other recent funding and design changes, provided for a comprehensive reform of ERS. This summary details the provisions under Act No. 3-2013, which were in effect prior to August 23, 2017.

Certain provisions are different for the three groups of members who entered ERS prior to July 1, 2013 as described below:

- Members of Act No. 447-1951 are generally those members hired before April 1, 1990 (contributory, defined benefit program).

- Members of Act No. 1-1990 are generally those members hired on or after April 1, 1990 and on or before December 31, 1999 (contributory, defined benefit program).

- Members of Act No. 305-1999 (Act No. 305-1999 or System 2000) are generally those members hired on or after January 1, 2000 and on or before June 30, 2013 (defined contribution program).

All regular employees hired for the first time on or after July 1, 2013, and former employees who participated in the defined benefit program and the System 2000 program, and were rehired on or after July 1, 2013, became members of the Contributory Hybrid Program as a condition to their employment. In addition, employees who at June 30, 2013, were participants of previous programs became part of the Contributory Hybrid Program on July 1, 2013.

Each member had a nonforfeitable right to the value of his or her account. Members had three options to invest their contributions. Investment income was credited to the member's account semi-annually. The Commonwealth did not guarantee benefits at retirement age.

The assets of the defined benefit program, the defined contribution program and the Contributory Hybrid Program were pooled and invested by ERS. Future benefit payments were paid from the same pool of assets.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

This summary of ERS plan provisions is intended to describe the essential features of the plan. All eligibility requirements and benefit amounts should be determined in strict accordance with the plan document itself.

(i)  *Service Retirements*

(a)  *Eligibility for Act No. 447-1951 Members:* Act No. 447-1951 members who were eligible to retire as of June 30, 2013 would continue to be eligible to retire at any time. Prior to July 1, 2013, Act No. 447-1951 members could retire upon (1) attainment of age 55 with 25 years of credited service; (2) attainment of age 58 with 10 years of credited service; (3) any age with 30 years of credited service; (4) for Public Officers in High Risk Positions (the PRPOB and Commonwealth Firefighter Corps, the Municipal Police and Firefighter Corps and the Custody Office Corps), attainment of age 50 with 25 years of credited service; and (5) for Mayors of municipalities, attainment of age 50 with 8 years of credited service as a Mayor. In addition, Act No. 447-1951 members who would attain 30 years of credited service by December 31, 2013 would be eligible to retire at any time.

Act No. 447-1951 members who were not eligible to retire as of June 30, 2013 and did not attain 30 years of credited service by December 31, 2013 are eligible to retire upon attainment of the retirement eligibility age shown in the table below with 10 years of credited service.

| Date of birth | Attained age as of June 30, 2013 | Retirement eligibility age |
|---|---|---|
| July 1, 1957 or later | 55 or less | 61 |
| July 1, 1956 to June 30, 1957 | 56 | 60 |
| Before July 1, 1956 | 57 and up | 59 |

In addition to the requirements in the table above, Act No. 447-1951 Public Officers in High Risk Positions who were not eligible to retire as of June 30, 2013 and did not attain 30 years of credited service by December 31, 2013 are eligible to retire directly from active service upon the attainment of age 55 with 30 years of credited service.

(b)  *Eligibility for Act No. 1-1990 Members:* Act No. 1-1990 members who were eligible to retire as of June 30, 2013 continue to be eligible to retire at any time. Prior to July 1, 2013, Act No. 1-1990 members could retire upon (1) attainment of age 55 with 25 years of credited service; (2) attainment of age 65 with 10 years of credited service; (3) for public officers in high risk positions, any age with 30 years of credited service; and (4) for Mayors, attainment of age 50 with 8 years of credited service as a Mayor.

Act No. 1-1990 members who were not eligible to retire as of June 30, 2013 are eligible to retire upon attainment of age 65 with 10 years of credited service. In addition, Act No. 1-1990 public officers in high risk positions who were not eligible to retire as of June 30, 2013 are eligible to retire directly from active service upon the attainment of age 55 with 30 years of credited service.

(c)  *Eligibility for System 2000 Members*: System 2000 members who were eligible to retire as of June 30, 2013 continue to be eligible to retire at any time. Prior to July 1, 2013, System 2000 members could retire upon attainment of age 55 for public officers in high risk positions and attainment of age 60 otherwise.

226

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

System 2000 members who were not eligible to retire as of June 30, 2013 are eligible to retire upon attainment of age 55 for public officers in high risk positions and upon attainment of the retirement eligibility age shown in the table below otherwise.

| Date of birth | Attained age as of June 30, 2013 | Retirement eligibility age |
|---|---|---|
| July 1, 1957 or later | 55 or less | 65 |
| July 1, 1956 to June 30, 1957 | 56 | 64 |
| July 1, 1955 to June 30, 1956 | 57 | 63 |
| July 1, 1954 to June 30, 1955 | 58 | 62 |
| Before July 1, 1954 | 59 and up | 61 |

(d)  *Eligibility for Members Hired after June 30, 2013:* Attainment of age 58 if a public officer in a high-risk position and attainment of age 67 otherwise.

(ii)  *Service Retirement Annuity Benefits*

An annuity payable for the lifetime of the member equal to the annuitized value of the balance in the hybrid contribution account at the time of retirement, plus, for Act No. 447-1951 and Act No. 1-1990 members, the accrued benefit determined as of June 30, 2013. If the balance in the hybrid contribution account was $10,000 or less, it would have been paid as a lump sum instead of as an annuity.

(a)  *Accrued Benefit as of June 30, 2013 for Act No. 447-1951 Members:* The accrued benefit as of June 30, 2013 was determined based on the average compensation, as defined, for Act No. 447-1951 members, the years of credited service, and the attained age of the member all as of June 30, 2013. For Mayors, the highest compensation, as defined, for Act No. 447-1951 members, determined as of June 30, 2013.

If the Act No. 447-1951 member had at least 30 years of credited service as of June 30, 2013, the accrued benefit equals 65% of average compensation if the member was under age 55 as of June 30, 2013 or 75% of average compensation if the member was at least age 55 as of June 30, 2013. For participants selecting the Coordination Plan, the benefit was recalculated at the Social Security Retirement Age (SSRA), as defined, as 1.5% of average compensation up to $6,600 multiplied by years of credited service, up to 30 years, plus 65% (75% if member was at least age 55 as of June 30, 2013) of average compensation in excess of $6,600.

If the Act No. 447-1951 member had less than 30 years of credited service as of June 30, 2013 and attained 30 years of credited service by December 31, 2013, the accrued benefit equaled 55% of average compensation if the member was under age 55 as of June 30, 2013 or 60% of average compensation if the member was at least age 55 as of June 30, 2013. For participants selecting the Coordination Plan, the benefit was recalculated at SSRA as 1.5% of average compensation up to $6,600 multiplied by years of credited service, up to 30 years, plus 55% (60% if member was at least age 55 as of June 30, 2013) of average compensation in excess of $6,600. Member contributions received from Act No. 447-1951 members eligible for this transitory benefit during the period beginning July 1, 2013 and ending upon the attainment of 30 years of credited service were considered pre- July 1, 2013 contributions; the contributions to the hybrid contribution account begin after the member attains 30 years of credited service.

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

If the Act No. 447-1951 member had less than 30 years of credited service as of December 31, 2013, the accrued benefit equaled 1.5% of average compensation multiplied by years of credited service up to 20 years, plus 2% of average compensation multiplied by years of credited service in excess of 20 years. Maximum benefit is 75% of average compensation. Except for the PRPOB policemen and Commonwealth Firefighters, the benefit was actuarially reduced for each year payment commences prior to age 58. For participants selecting the Coordination Plan, the basic benefit is recalculated at SSRA as 1% of average compensation up to $6,600 multiplied by years of credited service up to 20 years, plus 1.5% of average compensation up to $6,600 multiplied by years of credited service in excess of 20 years, plus 1.5% of average compensation in excess of $6,600 multiplied by years of credited service up to 20 years, plus 2.0% of average compensation in excess of $6,600 multiplied by years of credited service in excess of 20 years. Except for police and firefighters, the benefit was actuarially reduced for each year payment commences prior to age 58.

For Act No. 447-1951, Mayors with at least 8 years of credited service as a Mayor, the accrued benefit was not to be less than 5% of highest compensation, as defined, as a Mayor for each year of credited service as a Mayor up to 10 years, plus 1.5% of highest compensation as Mayor for each year of non-Mayoral credited service up to 20 years, plus 2.0% of highest compensation as Mayor for each year of non-Mayoral credited service in excess of 20 years. Non-Mayoral credited service included service earned as a Mayor in excess of 10 years. Maximum benefit was 90% of highest compensation as a Mayor.

(b) *Accrued Benefit as of June 30, 2013 for Act No. 1-1990 Members:* The accrued benefit as of June 30, 2013 is determined based on the average compensation for Act No. 1-1990 members, the years of credited service, and the attained age of the member all as of June 30, 2013. For Act No. 1-1990 Mayors, the highest compensation as a Mayor was determined as of June 30, 2013.

If the Act No. 1-1990 member is a police officer or firefighter member that had at least 30 years of credited service as of June 30, 2013, the accrued benefit equaled 65% of average compensation if the member was under age 55 as of June 30, 2013 or 75% of average compensation if the member was at least age 55 as of June 30, 2013.

For all other Act No. 1-1990 members, the accrued benefit equaled 1.5% of average compensation multiplied by years of credited service. The benefit was actuarially reduced for each year payment commences prior to age 65.

For Act No. 1-1990 Mayors with at least 8 years of credited service as a Mayor, the accrued benefit was not to be less than 5% of highest compensation as a Mayor for each year of credited service as a Mayor up to 10 years, plus 1.5% of highest compensation Mayor for each year of non-Mayoral credited service up to 20 years, plus 2.0% of highest compensation as Mayor for each year of non-Mayoral credited service in excess of 20 years. Non-Mayoral credited service included service earned as a Mayor in excess of 10 years. Maximum benefit is 90% of highest compensation as a Mayor.

(iii) *Compulsory Retirement*

All Act No. 447-1951 and Act No. 1-1990 Public Officers in High Risk Positions were required to retire upon attainment of age 58 and 30 years of credited service. A two-year extension may be requested by the member from the Superintendent of the PRPOB, the Chief of the Firefighter Corps, or supervising authority as applicable.

228

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*(iv)* *Termination Benefits*

*(a)* *Lump Sum Withdrawal*

*Eligibility:* A Member was eligible upon termination of service prior to 5 years of service or if the balance in the hybrid contribution account is $10,000 or less.

*Benefit:* The benefit equaled a lump sum payment of the balance in the hybrid contribution account as of the date of the permanent separation of service.

*(b)* *Deferred Retirement*

*Eligibility:* A Member was eligible upon termination of service with 5 or more years of service (10 years of credited service for Act No. 447-1951 and Act No. 1-1990 members) prior to the applicable retirement eligibility, provided the member had not taken a lump sum withdrawal of the accumulated contributions from the hybrid contribution account.

*Benefit:* An annuity payable for the lifetime of the member commencing at the applicable retirement eligibility age equal to the annuitized value of the balance in the hybrid contribution account at the time of retirement, plus, for Act No. 447-1951 and Act No. 1-1990 members, the accrued benefit determined as of June 30, 2013.

*(v)* *Death Benefits*

*(a)* *Pre- retirement Death Benefit*

*Eligibility:* Any current nonretired member was eligible.

*Benefit:* A refund of the hybrid contribution account, plus the accumulated contributions for Act No. 447-1951 and Act No. 1-1990 members.

*(b)* *High Risk Death Benefit under Act No. 127-1958*

*Eligibility:* Police, firefighters, and other employees in specified high-risk positions who die in the line of work due to reasons specified in Act 127-1958, as amended.

*Spouse's Benefit:* 50% of the participant's compensation at date of death, payable as an annuity until death or remarriage.

*Children's Benefit:* 50% of the participant's compensation at date of death, payable as an annuity, and allocated pro rata among eligible children. The annuity was payable for life for a disabled child, until age 18 for a nondisabled child not pursuing studies, and until age 25 for a nondisabled child who is pursuing studies.

*Benefit if No Spouse or Children:* The parents of the member should each receive 50% of the participant's compensation at date of death, payable as an annuity for life.

*Postdeath Increases*: Effective July 1, 1996 and subsequently every three years, the above death benefits are increased by 3% provided that the beneficiary(ies) had been receiving payments for at least three years.

The cost of these benefits was paid by the Commonwealth.

*(c)* *Postretirement Death Benefit for Members Who Retired prior to July 1, 2013*

*Eligibility:* Any retiree or disabled member receiving a monthly benefit who had not elected a reversionary annuity and whose benefits commenced prior to July 1, 2013.

229

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Benefit:* The benefit is as follows (Act No. 105, as amended by Act No. 4):

(i) For those married or with dependent children at the time of death, the annual income to a widow, or widower or dependent children is equal to 60% (50% if in the Coordination Plan – 30%, prior to January 1, 2004) of the retirement benefit payable for life for a surviving spouse and/or disabled children and payable until age 18 (age 25 if pursuing studies) for nondisabled children. If in the Coordination Plan, the benefit to the surviving spouse does not begin until the spouse's attainment of age 60 and the surviving spouse must have been married to the member for at least 10 years to be eligible for this benefit. The increase in the percentage from 30% to 50% if in the Coordination Plan is paid by the Commonwealth for former government employees or by the public enterprise or municipality for their former employees.

(ii) The benefit, when there is no relation as stated above, is equal to the remaining balance of accumulated contributions at the time of retirement after the deduction of lifetime annual income paid and is payable to a beneficiary or to the Member's estate. In no case may the benefit be less than $1,000. Either the Commonwealth for former government employees or the public enterprise or municipality for their former employees pays the difference, up to $250, between (1) the accumulated contributions less the lifetime annual income paid and (2) $1,000. ERS pays for the rest.

(d) *Postretirement Death Benefit for Members Who Retired after June 30, 2013*

*Eligibility:* Any retiree or disabled member who began receiving a monthly benefit after June 30, 2013.

*Benefit:* If the member elected at the time of retirement to transfer a portion of the annuity to a beneficiary by selecting an actuarially equivalent optional form of payment, the applicable survivor benefit.

For all members, the excess, if any, of the hybrid contribution account, plus the accumulated contributions for Act No. 447-1951 and Act No. 1-1990 members, at the time of retirement over the total annuity payments paid to the member and any beneficiary per the terms of the optional form of payment must be payable to a beneficiary or the member's estate.

(e) *Beneficiaries receiving occupational death benefits as of June 30, 2013 continue to be eligible to receive such benefits.*

(vi) *Disability Benefits*

(a) *Disability*

*Eligibility:* All members are eligible upon the occurrence of disability.

*Benefit:* The balance of the hybrid contribution account payable as lump sum distribution, an immediate annuity, or a deferred annuity at the election of the participant. Act No. 447-1951 and Act No. 1-1990 members remain eligible to receive the accrued benefit as of June 30, 2013 commencing at the applicable retirement eligibility age.

(b) *High Risk Disability under Act No. 127-1958*

*Eligibility:* Police, firefighters, and other employees in specified high risk positions who are disabled in the line of work due to reasons specified in Act No. 127-1958 (as amended).

*Benefit:* 80% (100% for Act No. 447-1951 members) of compensation as of date of disability, payable as an annuity. If the member died while still disabled, this annuity benefit continued to his beneficiaries. Beneficiaries include the surviving spouse and/or disabled children (for life),

230

## COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

nondisabled children until age 18 (age 25 if pursuing studies), and the parents if no other beneficiaries. Effective July 1, 1996 and subsequently every three years, the disability benefit was increased by 3% (provided that the member (or beneficiary) had been receiving payments for at least three years (Act No. 127-1958, as amended). The cost of these benefits was paid by the Commonwealth.

(c) Members who qualified for occupational or nonoccupational disability benefits as of June 30, 2013 continue to be eligible to receive such benefits

(vii) *Special Benefits*

(a) *Minimum Benefits*

(i) *Past Ad hoc Increases*: The Legislature, from time to time, increased pensions for certain retirees as described in Act No. 124-1973 and Act No. 23-1983. The benefits were paid 50% by the Commonwealth and 50% by ERS.

(ii) Minimum Benefit for Members Who Retired before July 1, 2013 (Act No. 156-2003, Act No. 35-2007, and Act No. 3-2013): The minimum monthly lifetime income for members who retired or become disabled before July 1, 2013 is $500 per month effective July 1, 2013 ($400 per month effective July 1, 2007 and $300 per month up to June 30, 2007). The increase in the minimum monthly benefit from $200 per month to $300 per month was paid by the Commonwealth for former government and certain public corporations without their own treasuries' employees or by certain public corporations with their own treasuries or municipalities for their former employees. The increase in the minimum monthly benefit from $300 per month to $400 per month was to be paid by ERS for former government and certain public corporations without their own treasuries' employees or by certain public corporations with their own treasuries or municipalities for their former employees.

(iii) *Coordination Plan Minimum Benefit:* A minimum monthly benefit was payable upon attainment of SSRA such that the benefit, when added to the Social Security Benefit, was not less than the benefit payable prior to SSRA.

(b) *Cost of Living Adjustments (COLA) to Pension Benefits:* The Legislature, from time to time, increases pensions by 3% for retired and disabled members. Beneficiaries were not entitled to COLAs granted after the retiree's death. The first increase was granted by Act No. 10-1992. Subsequent 3% increases have been granted every third year since 1992, with the latest 3% increase established on April 24, 2007 and effective July 1, 2007 (retroactive to January 1, 2007) for retired and disabled members that were receiving a monthly benefit on or before January 1, 2004 (Act No. 35-2007). In addition, effective July 1, 2008, any retired or disabled member that was receiving a monthly annuity on or before January 1, 2004 less than $1,250 per month received an increase of up to 3% without exceeding the limit of $1,250 per month (Act No. 35-2007). The COLAs granted in 1992 to all retirees and in 1998 to retirees who are former government or municipal employees are to be paid by ERS. All other COLAs granted in 1995 and later were required to be paid by the Commonwealth for former government and certain public corporations without their own treasuries or by certain public corporations with their own treasuries or municipalities for their former employees.

(c) *Special "Bonus" Benefits*

(i) *Christmas Bonus (Act No. 144-2005, as Amended by Act No. 3-2013):* An annual bonus of $200 for each retiree, beneficiary, and disabled member has historically been paid in December provided the member retired prior to July 1, 2013. This benefit is paid from the

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

supplemental contributions received from the Commonwealth for former government and certain public corporations without their own treasuries, or by certain public corporations with their own treasuries or municipalities for their former employees.

(ii) *Medication Bonus (Act No. 155-2003, as Amended by Act No. 3-2013):* An annual bonus of $100 for each retiree, beneficiary, and disabled member to cover health costs paid in July provided the member retired prior to July 1, 2013. Evidence of coverage is not required. The amount is prorated if there are multiple beneficiaries. This benefit is paid from the Supplemental Contributions received from the Commonwealth for former government and certain public corporations without their own treasuries, or by certain public corporations with their own treasuries or municipalities for their former employees.

The special benefits contributions of approximately $194.6 million in fiscal year 2017 mainly represent contributions from the Commonwealth, public corporations and municipalities for the special benefits identified above granted by special laws. Prior to August 23, 2017, the funding of the special benefits was provided to ERS through legislative appropriations each July 1 by the Commonwealth for former government and certain public corporations without their own treasuries and by certain public corporations with their own treasuries and municipalities for their former employees. The legislative appropriations were considered estimates of the payments to be made by ERS for the special benefits. Deficiencies in legislative appropriations were covered by ERS's own funds until recovered through future legislative appropriations. Any surplus of legislative appropriations collected over special benefits paid was combined with the assets held in trust for the payment of other pension benefits.

(viii) *Contributions*

The contribution requirement to ERS is established by law and is not actuarially determined.

(a) *Member Contributions*: Effective July 1, 2013, contributions by members are 10% of compensation. However, for Act No. 447-1951 members who selected the Coordination Plan, the member contributions are 7% of compensation up to $6,600 plus 10% of compensation in excess of $6,600 during the 2013-14 fiscal year and 8.5% of compensation up to $6,600 plus 10% of compensation in excess of $6,600 during the 2014-15 fiscal year. Members may voluntarily make additional contributions to their hybrid contribution account.

Prior to July 1, 2013, contributions by Act No. 447-1951 members selecting the Coordination Plan were 5.775% of compensation up to $6,600 plus 8.275% of compensation in excess of $6,600. Contributions by all other members were 8.275% of compensation. System 2000 members could also have made voluntary contributions of up to 1.725% of compensation prior to July 1, 2013.

(b) *Employer Contributions (Article 2 116, as Amended by Act No. 116-2010 and Act No. 3-2013):* Prior to July 1, 2011, employer contributions were 9.275% of compensation. Effective July 1, 2011, employer contributions are 10.275% of compensation. For the next four fiscal years effective July 1, 2012, employer contributions will increase annually by 1% of compensation. For the next five fiscal years, employer contributions will increase annually by 1.25% of compensation, reaching an employer contribution rate of 20.53% of compensation effective July 1, 2020. Under Act 106-2017, all employers' obligations to contribute to ERS were eliminated.

(c) *Supplemental Contributions from the Commonwealth, Certain Public Corporations, and Municipalities (Act No. 3-2013):* Effective July 1, 2013, ERS will receive a supplemental contribution of $2,000 each year for each pensioner (including beneficiaries receiving survivor

232

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

benefits) that was previously benefitting an Act No. 447-1951 or Act No. 1-1990 member while an active employee. This supplemental contribution will be paid by the Commonwealth Fund for former government and certain public corporations without their own treasuries or by certain public corporations with their own treasuries or municipalities for their former employees.

(d) *Additional Uniform Contribution (Act No. 32-2013, as Amended)*: The additional uniform contribution (AUC) will be certified by the external actuary of ERS each fiscal year from fiscal year 2015 through 2033 as necessary to avoid the projected gross assets of ERS, falling below $1 billion during any subsequent fiscal year. The AUC is to be paid by the Commonwealth, public corporations with their own treasuries, and municipalities. Only a fraction of the AUC from prior years has been received by ERS. Total AUC due to the System from fiscal years 2015, 2016 and 2017 was approximately $776 million in the aggregate. The AUC determined for fiscal year 2018 is $685 million payable at the end of the year. As further described in Note 2, all employers' contributions, including the additional uniform contribution were eliminated effectively on July 1, 2017 by Act 106-2017.

(ix) *Early Retirement Programs*

The EQB implemented an early retirement program for its employees under the Law 224 Act No. 7-2008. EQB has already made the initial payment and would reimburse the remaining balance on annuities and other benefits paid by ERS in four installments on each July 31 starting in 2009 through 2012. EQB was in default on the retirement plan payment, so they requested a new payment plan. ERS Board of Trustees approved a payment plan for the debt balance due of the retirement program for 24 months starting in March 2014.

On July 2, 2010, the Commonwealth enacted Act No. 70 establishing a program that provides benefits for early retirement or economic incentives for voluntary employment termination to eligible employees, as defined. Act No. 70-2010 also established that early retirement benefits will be provided to eligible employees that have completed between 15 and 29 years of creditable services and will consist of monthly benefits ranging from 37.5% to 50% of each employees' monthly salary. Benefits under this program will be paid by the General Fund of the Commonwealth (the General Fund) and by the public corporations, covering their respective employees until the plan member reaches the later of age 55 for members under Act No. 447-1951 or age 65 for members under Act No. 1-1990, or the date the plan member would have completed 30 years of service had the member continued employment. In addition, the public corporations will also be required to continue making the required employee and employer contributions to ERS. The General Fund will be required to continue making its required employer contributions. ERS will be responsible for benefit payments afterward.

**(b) JRS**

*Plan Description* – Prior to August 23, 2017, JRS implemented a single employer defined benefit pension plan administered by ERS and JRS Administration. It is a trust created by Act No. 12-1954, as amended, to provide pension and other benefits to retired judges of the Judiciary Branch of the Commonwealth, through the Office of the Administration of Court Facilities (the Employer). JRS is a pension trust fund of the Commonwealth and is not an employer.

ERS and JRS Administration allocated 98.56% and 1.44% of its general and administrative expenses during the fiscal year ended June 30, 2017 to the JRS and ERS systems, respectively. The methodology used to determine the allocation of ERS and JRS Administration's expenses is based on total employers' and participants' contributions to ERS and JRS, combined.

233

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Prior to August 23, 2017, JRS consisted of two benefit structures pursuant to Act No. 12-1954, as amended by Act No. 162-2013. Benefit provisions vary depending on member's date of hire as follows:

- Judges hired on or before June 30, 2014 with certain distinctions for judges hired December 24, 2013 to June 30, 2014 (contributory, defined benefit program).

- Judges hired July 1, 2014 or later (contributory, hybrid program).

All judges of the Judiciary Branch of the Commonwealth are members of JRS. Members include all persons holding a position as Judge of the Puerto Rico Supreme Court, Judge of the Court of Appeals, Superior and Municipal Judges of the Court of First Instance in the Commonwealth.

The benefits provided to members of JRS are statutorily established by the Commonwealth and may be amended only by the Legislature with the Governor's approval.

This summary of JRS plan provisions is intended to describe the essential features of the plan. All eligibility requirements and benefit amounts should be determined in strict accordance with the plan document itself.

**Pension Plan Provisions Applicable to Judges Hired on or before June 30, 2014 (Pre- Act No. 162-2013 Members)**

*(1) Service Retirement Annuity Benefits*

An annuity payable for the lifetime of the member equal to the applicable benefit detailed below.

*(a) Normal Retirement*

*Basic Eligibility:* Age 60 with 10 years of credited service.

*Basic Benefit:* 25% of highest salary, as defined, plus 5% of highest salary, as defined, for each year of credited service in excess of 10 years, subject to a maximum of 75% of highest salary if hired before December 24, 2013 and 60% of highest salary if hired between December 24, 2013 and June 30, 2014.

*Eligibility for Judges who serve without a Fixed Tenure:* 10 years of credited service. This enhanced eligibility is not available to judges who are appointed after June 28, 2007 to an unlimited term.

*Benefit for Judges who serve without a Fixed Tenure:* 25% of the salary corresponding to the office during the retirement period, plus 5% of such salary for each year of credited service in excess of 10 years, subject to a maximum of 100% of such salary. If the judge has served in a position without a fixed tenure for a total of at least 8 years, the 25% increases to 50% in the preceding formula. This enhanced benefit is not available to judges who are appointed after June 28, 2007 to an unlimited term.

234

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Optional Eligibility:* Age and credited service as shown in the table below, provided at least 8 years of credited service were earned in office as a judge.

| Age | Years of credited services |
|---|---|
| Less than 60 | 30 |
| 62 | 20 |
| 61 | 21 |
| 60 | 22 |
| 59 | 23 |
| 58 | 24 |
| 57 | 25 |
| 56 | 26 |
| 55 | 27 |

*Optional Benefit:* 75% of highest salary if hired before December 24, 2013 and 60% of highest salary if hired between December 24, 2013 and June 30, 2014.

*Enhanced Eligibility:* Any judge who has served without a fixed tenure for at least 3 years and has at least 25 years of credited service. This enhanced benefit is not available to judges who are appointed after June 28, 2007 to an unlimited term.

*Enhanced Benefit:* 75% of the salary earned at the time of retirement.

*Compulsory Retirement:* All judges must retire by age 70. If the judge has less than 10 years of credited service, the judge can elect a refund of accumulated contributions or a proportional part of the basic benefit based on completed years and months of credited service.

(b) *Early Retirement*

*Basic Eligibility:* 20 years of credited service before age 60.

*Basic Benefit:* The basic benefit payable under Normal Retirement, reduced on an actuarial equivalent basis for each month that early retirement date precedes age 60. However, no actuarial reduction is applied for judges who serve without a fixed tenure.

*Optional Eligibility:* 20 years of credited service, provided at least 8 years of credited service were earned in office as a judge.

*Optional Benefit:* 75% of highest salary if hired before December 24, 2013 and 60% of highest salary if hired between December 24, 2013 and June 30, 2014, reduced on an actuarial equivalent basis for each month that early retirement date precedes the age specified in the table under Optional Eligibility under Normal Retirement for the applicable years of credited service.

(2) *Termination Benefits*

(a) *Lump Sum Withdrawal*

*Eligibility:* A member is eligible upon termination of service.

*Benefit:* The benefit equals a refund of accumulated contributions.

(b) *Deferred Retirement*

235

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Eligibility:* A member is eligible upon termination of service prior to age 60 and after 10 years of credited service, provided the member has not taken a lump sum withdrawal.

*Benefit:* The benefit, commencing at age 60, is equal to the benefit payable upon Normal Retirement.

(3) *Death Benefits*

  (a) *Occupational Death Benefit*

*Eligibility:* The beneficiaries of any active participant who dies from an employment related cause under the Workmen's Accident Compensation Act.

*Spouse's Benefit:* 50% of the participant's salary at date of death, payable as an annuity until death or remarriage.

*Children's Benefit:* $10 ($20 if full orphan) for each child payable monthly until child reaches age 18 or completion of studies, if later. The maximum family benefit is 75% of the participant's salary at date of death.

*Benefit if No Spouse or Children:* Refund of accumulated contributions, plus an amount equal to one year of compensation, as defined, in effect at the time of death.

  (b) *Pre-retirement Death Benefit*

*Eligibility:* Any current non-retired member is eligible, provided they are not eligible for the Occupational Death Benefit.

*Benefit:*

  (i) While in active service, the benefit equals a refund of accumulated contributions; plus, an amount equal to one year of compensation in effect at the time of death.

  (ii) While not in active service, the benefit equals a refund of accumulated contributions.

  (c) *Special Pre-retirement Death Benefit*

*Eligibility:* An active participant who was eligible to retire at the date of death with a surviving spouse or dependent children.

*Benefit:* The post-retirement death benefits described below assuming the active participant retired the day before the date of death.

  (d) *Post-retirement Death Benefit*

*Eligibility:* Any retiree or disabled member receiving a monthly benefit.

*Benefit:*

  (i) For those married or with dependent children at the time of death, an annual income equal to 60% of the retirement benefit at time of death, payable for life for a surviving spouse and/or disabled children, and payable until age 18 or completion of studies, if later, for nondisabled children.

  (ii) The benefit, when there is no relation as stated above, is equal to the remaining balance of accumulated contributions at the time of retirement after the deduction of lifetime annual income paid and is payable to a beneficiary or to the Member's estate. In no case may the benefit be less than $1,000. The Commonwealth pays the difference, up to $500, between (1) the accumulated fees, as defined, with interest less the lifetime annual income paid and (2) $1,000. JRS pays for the rest.

236

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

(4) *Disability Benefits*

   (a) *Non-occupational Disability*

   *Eligibility*: All members are eligible for non-occupational disability upon 10 years of credited service and the occurrence of disability.

   *Benefit*: 30% of average compensation, plus 1% of average compensation for each year of credited service in excess of 10 years, payable as an annuity; subject to a maximum of 50% of average compensation.

   (b) *Occupational Disability*

   *Eligibility*: All members disabled while in the course and as a consequence of their work, as certified by two physicians appointed by the Plan Administrator, and provided the member is receiving compensation from the Workmen's Accident Compensation Act.

   *Benefit*: 50% of salary at date of disability, payable as an annuity, reduced by any payments received from the State Insurance Fund Corporation under the Workmen's Accident Compensation Act.

(5) *Special Benefits*

   (a) *Cost-of-Living Adjustments (COLA) to Pension Benefits*: Effective January 1, 2001, commencing January 1, 2002 and subsequently every three years thereafter, the annual benefit is increased by 3% for retirees and disabled members provided that the member had been receiving payments for at least three years.

   These COLAs are paid by the Commonwealth. In addition, an ad hoc 3% COLA was granted effective January 1, 1999 and is paid by JRS.

   (b) *Special "Bonus" Benefits*

      (i) *Christmas Bonus (Act No. 144-2005):* An annual bonus of $600 for each retiree, beneficiary, and disabled member paid in December provided the judge was hired before December 24, 2013. JRS pays $150 per retiree, beneficiary, and disabled member and the balance is paid by the Commonwealth.

      (ii) *Summer Bonus (Act No. 37-2001):* An annual bonus of $100 for each retiree, beneficiary, and disabled member paid in July provided the judge was hired before December 24, 2013. The amount is prorated if there are multiple beneficiaries. This benefit is paid by the Commonwealth.

      (iii) *Medication Bonus (Act No. 155-2003):* An annual bonus of $100 for each retiree, beneficiary, and disabled member to cover health costs paid in July provided the judge was hired before December 24, 2013. Evidence of coverage is not required. The amount is prorated if there are multiple beneficiaries. This benefit is paid by the Commonwealth.

   Judges hired on December 24, 2013 and thereafter are not eligible for these special "bonus" benefits.

   The special benefits contributions of approximately $1.9 million in fiscal year 2017 represent contributions from the Commonwealth for the special benefits identified above granted by special laws. Prior to August 23, 2017, the funding of the special benefits was provided to JRS through legislative appropriations each July 1. The legislative appropriations were considered estimates of the payments to be made by JRS for the special benefits. Deficiencies in legislative appropriations were covered by JRS's own funds until recovered through future legislative appropriations. Any surplus of legislative appropriations collected over special benefits paid was combined with the assets held in trust for the payment of other pension benefits.

237

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**Pension Plan Provisions Applicable to Judges Hired on or after July 1, 2014 (Act No. 162-2013 Members)**

Prior to August 23, 2017, members hired on or after July 1, 2014 were covered by a contributory, hybrid plan with defined benefit and defined contribution components as follows:

(1) *Service Retirement Annuity Benefits*

An annuity payable for the lifetime of the member equal to the applicable benefit detailed below.

(a) *Normal Retirement*

*Eligibility*: Age 65 with 12 years of credited service.

*Basic Benefit*: 1.5% of average compensation, as defined, for each year of credited service, plus the annualized value of the balance in the hybrid program contribution account at the time of retirement.

*Compulsory Retirement*: All judges must retire by age 70. If the judge has less than 12 years of credited service, the judge will receive a refund of the hybrid program contribution account.

(b) *Early Retirement*

*Basic Eligibility*: Age 55 with 12 years of credited service before age 65.

*Basic Benefit*: 1.5% of average compensation, as defined, for each year of credited service, reduced by 1/180 for each for the first 60 months and by 1/360 for each of the next 60 months by which the early retirement date precedes age 65, plus the annualized value of the balance in the hybrid program contribution account at time of retirement.

(2) *Termination Benefits*

(a) *Lump Sum Withdrawal*

*Eligibility*: A member is eligible upon termination of service with less than 12 years of credited service.

*Benefit*: The benefit equals a refund of the hybrid program contribution account.

(b) *Deferred Retirement*

*Eligibility*: A member is eligible upon termination of service prior to age 65 and after 12 years of credited service, provided the member has not taken a lump sum withdrawal.

*Benefit*: The benefit, commencing at age 65, is equal to the benefit payable upon Normal Retirement. The benefit may commence as early as age 55, subject to the reductions described under early retirement.

(3) *Death Benefits*

(a) *Pre-retirement Death Benefit*

*Eligibility*: Any current non-retired member is eligible.

*Benefit*: The benefit equals a refund of the hybrid program contribution account.

(b) *Post-retirement Death Benefit*

*Eligibility*: Any retiree or disabled member.

*Benefit*: If a member elected at the time of retirement to transfer a portion of the annuity to a beneficiary by selecting an actuarially equivalent optional form of payment, the applicable survivor benefits.

238

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

For all members, the excess, if any, of the hybrid program contribution account at the time of retirement over the total hybrid program annuity payments paid to the member and any beneficiary per the terms of the optional form of payment is payable to a beneficiary or the member's estate.

(4) *Disability Benefits*

*Eligibility*: All members are eligible upon 5 years of credited service and the occurrence of disability prior to age 65.

*Benefit:* 1.5% of average compensation, as defined, for each year of credited service plus the annuitized value of the balance in the hybrid program contribution account at the time of disability, payable as an annuity; subject to a maximum of 33% of average compensation, as defined.

(5) *Special Benefits*

(a) *Cost-of-Living Adjustments (COLA) to Pension Benefits*

Commencing January 1, 2017 and subsequently every three years thereafter, the annual benefit is increased by 3% for retirees and disabled members provided that the member had been receiving payments for at least three years.

These COLAs are paid by the Commonwealth.

**Contributions**

The contribution requirement to JRS is established by law and is not actuarially determined.

(1) *Member Contributions:* Contributions by members are 8% of compensation if hired before December 24, 2013, 10% of compensation if hired between December 24, 2013 and June 30, 2014 and 12% of compensation if hired on or after July 1, 2014.

(2) *Employer Contributions:*

(a) Payroll based Employer Contributions: Contributions by the Commonwealth are 30.34% of compensation. Prior to July 1, 2008, the employer contribution rate was 20.0% of compensation.

(b) Additional Uniform Contribution (Act No. 162-2013): Beginning with the fiscal year 2015, JRS will receive an additional uniform contribution as necessary to avoid having the projected gross assets of JRS, during any subsequent fiscal year, to fall below $20 million. The Annual Additional Contribution is to be funded by the Commonwealth from fiscal year 2015 through fiscal year 2046. The additional uniform contributions determined for fiscal years 2015, 2016, and 2017 were approximately $11.6 million, $12.1 million and $13.5 million, respectively. The additional uniform contribution is payable at the end of the corresponding fiscal year. For additional information on the status of the contributions, refer to Note 2.

(c) **TRS**

*Plan Description –* Prior to August 23, 2017, the TRS was a single employer defined benefit pension plan administered by the Puerto Rico Teachers Retirement System. It was a trust created by Act No. 218-1951, as superseded by Act No. 91-2004, to provide pension and other benefits mainly to retired teachers of the DOE and the employees of TRS.

Prior to August 23, 2017, TRS administered two benefit structures pursuant to Act No. 160-2013, as modified by the April 11, 2014 decision of the Puerto Rico Supreme Court. Benefit provisions vary depending on member's date of hire as follows:

Members hired on or before July 31, 2014 with certain distinctions for members who retire August 1, 2014 or later (contributory, defined benefit program).

239

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Members hired August 1, 2014 or later (contributory, hybrid program).

All active teachers of the DOE and the employees of TRS became plan members of TRS at their date of employment. Licensed teachers working in private schools or other educational organizations had the option to become members of TRS so long as the required employer and employee contributions were satisfied.

The benefits provided to members of TRS are statutorily established by the Commonwealth and may be amended only by the Legislature with the Governor's approval.

This summary of TRS plan description is intended to describe the essential features of the plan. All eligibility requirements and benefit amounts should be determined in strict accordance with the plan document itself.

As part of the plan description information, the most important aspects of Act No. 160-2013, as modified by the April 11, 2014 decision of the Puerto Rico Supreme Court, are as follows: (i) active participants as of July 31, 2014 will continue to participate in the defined benefit pension program; (ii) starting August 1, 2014, the defined benefit pension program will be closed for future participants and they will contribute to a contributory hybrid program; (iii) the retirement age for employees hired on or after August 1, 2014 will increase to age 62; (iv) the employee contribution for employees hired on or after August 1, 2014 will increase to 10% from August 1, 2014 to June 30, 2017, 13.12% from July 1, 2017 to June 30, 2020, and 14.02% from July 1, 2020 and thereafter; (v) special benefits payable to active participants that retire on or before July 31, 2014 will be reduced, and (vi) special benefits and post-employment healthcare benefits will be eliminated for future retirees.

**Defined Benefit Pension Program**

Prior to August 23, 2017, the members of TRS hired on or before July 31, 2014 were eligible for the benefits described below:

*(1) Retirement Annuity*

Members were eligible for monthly benefit payments determined by the application of stipulated benefit ratios to the member's average compensation. Average compensation was computed based on the highest 36 months of compensation recognized by TRS. The monthly annuity for which a member was eligible was limited to a minimum of $400 per month and a maximum of 75% of the average compensation.

Members were eligible for retirement annuity benefits upon complying with the following:

| Age | Years of creditable services | Retirement annuity compensation |
|---|---|---|
| 55 or more | 30 or more | 75% of average compensation |
| 50 | 30 or more | 75% of average compensation(1) |
| Under 50 | 30 or more | 65% of average compensation |
| 50 | At least 25, but less than 30 | 1.8% of average compensation times years of service |
| 47, but less than 50 | At least 25, but less than 30 | 95% of 1.8% of average compensation times years of service |
| 60 or more | At least 10, but less than 25 | 1.8% of average compensation times years of service |

(1) Refer to subsection (g) under Early Retirement Program.

240

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(2) *Deferred Retirement Annuity*

A participating employee who terminated service before age 60, after having accumulated a minimum of 10 years of creditable service, qualified for a deferred retirement annuity payable beginning at age 60. A participating employee who completed 25 or more years of creditable service and is under the age of 47 at termination qualified for a deferred retirement annuity payable beginning at age 47. The vested rights described above were provided if his or her contributions to TRS are left within TRS until the attainment of the respective retirement age.

(3) *Occupational Disability Annuity*

A participating employee, who as a direct result of the performance of his or her occupation became disabled, was eligible for an annuity of 1.8% of average compensation based on the highest 60 months or the number of months of creditable service, if less than 5 years, recognized by TRS, times years of creditable service, but not less than $400 per month.

(4) *Death Benefits*

Pre-retirement – The beneficiaries receive the member contributions made plus 2% interest accumulated as of the date of death (after reducing debts with TRS). Additionally, for beneficiaries of members who died on or before July 31, 2014, they will receive an amount equal to the annual compensation of the member at the time of death.

Post-retirement – For members who retire on or before July 31, 2014: The surviving spouse receives 50% of the member's pension and the other 50% is shared among the members' children (if any) and only if such children are under 22 years of age or disabled (until disability ceases). If there is no surviving spouse or qualifying children, the beneficiaries receive the excess, if any, of the accumulated contributions at the time of retirement over the total annuity benefits received before death. The benefit includes the full pension for the month in which the pensioner died plus an additional fifteen-day pay period payable to the member's eligible beneficiaries, but in no case, may the benefit be less than $1,000 per month (prior to discounting any debts with TRS).

Post-retirement – For members who retire on or after August 1, 2014: If the member elected at the time of retirement to transfer a portion of the annuity to a beneficiary by selecting an actuarially equivalent option form of payment, the applicable survivor benefit will be granted. Otherwise, the excess, if any, of the accumulated contributions at the time of retirement over the total annuity benefits received before death is payable to the beneficiaries or to the member's estate.

(5) *Refunds*

A participating employee who ceases his or her employment with the Commonwealth on or before July 31, 2014 without the right to a retirement annuity has the right to a refund of the employee contributions paid to TRS, plus any interest earned thereon.

(6) *Early Retirement Program*

On January 27, 2000, Act No. 44 was approved, which provided that effective March 9, 2000, members were eligible for early retirement upon attaining the age of 50 and 28 years of service in the first year of implementation and age 50 and 25 years of service in subsequent years. Those who selected early retirement under these conditions receive monthly benefits equal to 75% of their average compensation, which was computed based on the highest 36 months of compensation recognized by TRS. Effective July 31, 2001, the option for early retirement was closed. On January 27, 2001, Act No. 45 was approved, that established 50 years as the minimum age requirement to obtain a pension benefit equal to 75% of average compensation with 30 years of service. In these cases, the retiree pays the participating

241

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

employee contribution until attaining 55 years of age. Act No. 160-2013 imposed the same obligation on the employer.

**Contributory Hybrid Program**

A hybrid plan, such as a cash balance plan, (i) determines the benefit amount based on a formula using contributions and earning credits; (ii) has notional individual accounts for members; and (iii) provides lifetime annuity benefits. Prior to August 23, 2017, each member had a defined contribution account that was credited with member contributions and investment yield. Upon retirement, the balance in the account was paid as a lifetime annuity. The program was defined as hybrid because it contained some features that are commonly found in defined benefit plans and other features that are commonly found in defined contribution plans, such as:

- The members contributed a fixed percentage of payroll to their account. In defined benefit plans, the percentage is usually fixed. In defined contribution plans, the percentage is usually elected by the member.

- The defined contribution account was credited each semester with TRS's investment portfolio's net rate of return. The return was determined by the Board and will not be less than 80% of TRS's investment portfolio net rate of return. Account growth via the application of investment earnings is a common feature of defined contribution plans.

- Assets were invested by TRS. This feature is more commonly found in defined benefit plans. Conversely, defined contribution plans commonly allow for the members to elect their investments on an individual basis and the member contributions are then actually invested in the options selected by the member.

- Upon retirement, the balance in the account was paid to the member in the form of a lifetime annuity with optional survivor benefits. TRS was responsible for investment and longevity risk during retirement. This annuity feature is common in defined benefit plans.

Prior to August 23, 2017, members of TRS hired on or after August 1, 2014 were eligible for the benefits described below:

(1) *Retirement Annuity*

Members with five or more years of service and $10,000 or more in contributions at the age of 62 will qualify for an annuity of the percentage acquired by contributions based on the actuarial formula.

The pension of each member is computed upon retirement as follows: (i) the accumulated balance of member contributions to the defined contribution account on the date of retirement; divided by (ii) a factor, established by TRS Board in consultation with its actuaries and to be determined on the basis of the actuarial life expectancy of the participant and a specific interest rate.

(2) *Deferred Retirement Annuity*

Members with five or more years of service and $10,000 or more in contributions will qualify for an annuity calculated based on the balance of the defined contribution account. If separated from service with the requirements but with less than 62 years of age, the annuity will be deferred until reaching 62 years of age.

(3) *Disability Annuity*

Any member who enrolled in TRS after August 1, 2014, and after five years in the public service suffers a disability, whether work related or not, is granted a disability pension by TRS computed on the basis of such members individual contributions, as determined by TRS through regulations.

242

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(4) *Death Benefits*

Prior to August 23, 2017, there were two death benefit options for beneficiaries of new members joining on or after August 1, 2014 upon such members retirement and death:

(a) continue to receive the monthly annuity payments until the balance, if any, of the contributions to the defined contribution account is exhausted or

(b) request reimbursement in one global payment of the balance, if any.

(5) *Refunds*

Prior to August 23, 2017, a member with less than five years of service or less than $10,000 in contributions qualified for a reimbursement. Specifically, a refund of contributions and earnings in such member's defined contribution account.

**Special Benefits**

Act No. 160-2013 provides for a reduction in the special laws for pensioners as of July 31, 2014 and the elimination of special laws for future pensioners who retire on or after August 1, 2014. Special benefits include the following:

(1) *Christmas Bonus*

An annual bonus of $600 for each retiree and disabled member paid each December. TRS pays $150 per retiree and disabled member and the remaining bonus is paid by the Commonwealth. After August 1, 2014, for active participants that retired on or before July 31, 2014, the bonus will be $200 and paid from the Commonwealth.

(2) *Medication Bonus*

An annual bonus of $100 for each retiree, beneficiary, and disabled member paid each July to cover health costs; evidence of coverage is not required. This benefit is paid from the Commonwealth. Act No. 160-2013 kept this benefit for active participants that retired on or before July 31, 2014.

(3) *Summer Bonus*

Prior to Act No. 160-2013 an annual bonus of $100 for each retiree, beneficiary, and disabled member was paid each July. This benefit was prorated if there were multiple beneficiaries and was paid from the Commonwealth. Act No. 160-2013 eliminated this benefit for all retirees.

(4) *Cost of Living Adjustments*

Act No. 62-1992 provided, subject to the Legislature's approval, for increases of 3% every three years in pensions to those members with three or more years of retirement. In years 1995, 1998, 2001, 2004, and 2007, the Legislature replicated the benefit granted per Act No. 62-1992. This benefit is paid from the Commonwealth. Act No. 160-2013 did not alter this benefit.

(5) *Other Pension Increase Acts*

Act No. 128-1967, and Act No. 124-1973, provided a pension increase (from 2% to 10%) based on the monthly pension. Act No. 47-1984, provided a pension increase based on credited service worked. These increases are paid from the Commonwealth. Act No. 160-2013 did not alter this benefit.

(6) *Cultural Loans*

Act No. 22-1965, provides a 50% repayment of the interest that would be paid by active teachers and retirees. This benefit is paid from the Commonwealth. Act No. 160-2013 did not alter this benefit.

243

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

(7) *Death Benefit*

Act No. 272-2004, increased the death benefit of $500 to $1,000. This $500 increase is paid from the Commonwealth. Under Act No. 160-2013, this benefit will apply only at the death of members who joined TRS on or before July 31, 2014.

The special benefits contributions of approximately $157 million in 2017 represent contributions from the General Fund of the Commonwealth for the special benefits granted by special laws. The funding of the special benefits is provided to TRS through legislative appropriations each January 1 and July 1. The legislative appropriations are considered estimates of the payments to be made by TRS for the special benefits. Deficiencies in legislative appropriations are covered by TRS's own funds until recovered through future legislative appropriations. Any surplus of legislative appropriations collected over special benefits paid is combined with the assets held in trust for the payment of other pension benefits.

**Contributions**

The contribution requirement to TRS is established by law and is not actuarially determined.

(1) *Member Contributions*

(a) Contributions by members hired on or before July 31, 2014 are 9% of compensation.

(b) Contributions by members hired on or after August 1, 2014 are as follows: (i) 10% of compensation for fiscal years 2015 through 2017; (ii) 13.12% of compensation for fiscal years 2018 through 2020; and (iii) 14.02% of compensation for fiscal year 2021 and each year thereafter.

(2) *Employer Contributions*

(a) Payroll-Based Employer Contributions: Commonwealth and TRS contributions, as applicable, are 9.5% of compensation for the fiscal year beginning July 1, 2011. For the next four fiscal years (July 1, 2012 through July 1, 2015) employer contributions will increase annually by 1%. For the next five fiscal years, (July 1, 2016 through July 1, 2020) employer contributions will increase annually by 1.25%, reaching an employer contribution rate of 19.75% effective July 1, 2020. Effective July 1, 2021 and later fiscal years, the employer contribution rate will be 20.53%.

(b) Supplemental Contributions: From fiscal year 2015 and each subsequent fiscal year thereafter, the General Fund of the Commonwealth will provide TRS with a supplemental a contribution of $1,675 per pensioner, regardless of whether the pensioner retired before or after August 1, 2014, to pay for special benefits (i.e., Christmas and medication bonuses) and the medical insurance plan contribution.

(c) Teacher's Justice Uniform Contribution: The annual contribution to be made to TRS is equal to $30 million in fiscal year 2017, $30 million in fiscal year 2018, and $60 million in each fiscal year from fiscal year 2019 through fiscal year 2042. The Teacher's Justice Uniform Contribution is paid from the Commonwealth.

(d) Annual Additional Contribution: The annual contribution certified by the external actuary of TRS as necessary to prevent the value of the projected gross assets of TRS from falling below $300 million during any subsequent fiscal year. The Annual Additional Contribution is paid from the Commonwealth for each fiscal year from fiscal year 2019 through fiscal year 2042. For additional information on the status of these contributions, refer to Note 2.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

### (d) Membership as of July 1, 2015

|  | JRS | TRS |
|---|---|---|
| Retirees, beneficiaries and disabled members currently receiving benefits | 448 | 41,751 |
| Current participating employees | 371 | 37,684 |
| Terminated vested participants not yet receiving benefits | 39 | 750 |
| Total | 858 | 80,185 |

### (e) Net Pension Liability

The Commonwealth's net pension liability as of June 30, 2017 was measured as of June 30, 2016, and the total pension liability used to calculate the net pension liability was determined by an actuarial valuation with beginning of year census data as of July 1, 2015 that was updated to roll forward the total pension liability to June 30, 2016, assuming no gains or losses. After June 30, 2017, the Commonwealth enacted legislation that changed the structure of pension benefits administered by ERS. For further information regarding such pension legislation, see Note 3 and Note 23.

#### (i) Actuarial Methods and Assumptions

The total pension liabilities in the June 30, 2016 actuarial valuations were determined using the following actuarial methods and assumptions, applied to all periods included in the measurement:

|  | ERS | JRS | TRS |
|---|---|---|---|
| Actuarial cost method | Entry age normal | Entry age normal | Entry age normal |
| Asset-valuation method | Market value of assets | Market value of assets | Market value of assets |
| Actuarial assumptions: |  |  |  |
| Inflation | 2.5% | 2.5% | 2.5% |
| Investment rate of return, net of investment expenses, including inflation | 6.5 | 5.5 | 6.7 |
| Municipal bond index | 3.8 | 3.8 | 3.8 |
| Discount rate | 2.85 | 2.86 | 2.86 |
| Projected salary increases per annum | 3.0% per annum. No compensation increases are assumed until July 1, 2021 as a result of Act No. 66 and the current general economy. | 3.0% per annum. No compensation increases are assumed until July 1, 2021 as a result of Act No. 66 and the current general economy. | 2.5% per annum general wage inflation plus service-based merit increases. No compensation increases are assumed until July 1, 2021 as a result of Act No. 66 and the current general economy. |
| Cost-of-living adjustments | None assumed. | None assumed. | None assumed. |

The mortality tables used in the June 30, 2016 actuarial valuations were as follows:

- Pre-Retirement Mortality: For ERS general employees not covered under Act No. 127-1958 and for TRS members, RP-2014 Employee Mortality Rates for males and females adjusted to reflect Mortality improvement Scale MP-2016 from the 2006 base year and projected forward using MP-2016 on a generational basis. For ERS members covered under Act No. 127-1958, RP 2014

245

DRA Ex. 242

COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

Employee Mortality Rates are assumed with blue collar adjustments for males and females, adjusted to reflect Mortality Improvement Scale MP-2016 from the 2006 base year, and projected forward using MP-2016 on a generational basis. As generational tables, they reflect mortality improvements both before and after the measurement date.

- For ERS, 100% of deaths while in active service are assumed to be occupational only for members covered under Act No. 127-1958. For JRS, among deaths while in active service, 50% are assumed to be occupational and 50% are assumed to be nonoccupational.

- Post-Retirement Healthy Mortality: For ERS and TRS, rates which vary by gender are assumed for healthy retirees and beneficiaries based on a study of the plan's experience from 2007 to 2012 equal to 92% of the rates from the UP 1994 Mortality Table for Males and 95% (ERS) or 87% (TRS) of the rates from the UP 1994 Mortality Table for Females. The rates are projected on a generational basis using Mortality Improvement Scale MP-2016 on a generational basis. As a generational table, it reflects mortality improvements both before and after the measurement date.

- For JRS, RP 2014 Healthy Annuitant Mortality Rates are assumed with white collar adjustments for males and females, adjusted to reflect Mortality Improvement Scale MP-2016 from the 2006 base year, and projected forward using MP-2016 on a generational basis. As generational tables, it reflects mortality improvements both before and after the measurement date.

- Post-Retirement Disabled Mortality: For ERS, rates which vary by gender are assumed for disabled retirees based on a study of the plan's experience from 2007 to 2012 equal to 105% of the rates from the UP 1994 Mortality Table for Males and 115% of the rates from the UP 1994 Mortality Table for Females. The base rates are projected using Mortality Improvement Scale MP-2016 on a generational basis. No provision was made for future mortality improvement for disabled retirees.

- For TRS, rates which vary by gender are assumed for disabled retirees based on a study of the plan's experience from 2007 to 2012 equal to the rates in the UP 1994 Mortality Table for Males and Females. The base rates are projected using Mortality Improvement Scale MP-2016 on a generational basis. No provision was made for future mortality improvement for disabled retirees.

- For JRS, RP 2014 Disabled Annuitant Mortality Rates for males and females are assumed adjusted to reflect Mortality Improvement Scale MP-2016 from the 2006 base year and projected forward using MP-2016 on a generational basis. No provision was made for future mortality improvement for disabled retirees.

(ii)   *Long-term Expected Rate of Return on Investments*

The long-term expected rate of return on pension benefit investments was determined in accordance with the portfolio asset allocation adopted by the corresponding boards of the Retirement Systems during December 2013 for ERS, January 2016 for TRS and October 2016 for JRS and the actuary's capital market assumptions as of June 30, 2016. The long-term expected rate of return on pension benefit investments as of June 30, 2016 was 6.55% for ERS, 5.85% for TRS, and 5.70% for JRS. In the case of ERS, the long-term expected rate of return on pension benefit investments was slightly higher than the debt service of the senior pension funding bonds payable which ranged from 5.85% per year to 6.55% per year. After June 30, 2017, the Commonwealth enacted legislation that changed the structure of pension benefits and administration managed by ERS and TRS. For further information regarding such pension legislation, see Note 3 and Note 23.

The Retirement Systems' policies in regard to allocation of invested assets is established and may be amended by the corresponding Retirement System's Board. Plan assets are managed on a total return basis with a long-term objective of achieving and maintaining a positive impact on each of the

246

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Retirement Systems' financial condition for the benefits provided through the pension programs. The following are the Retirement System Board's adopted asset allocation policies as of June 30, 2016:

| | ERS | | TRS | | JRS | |
|---|---|---|---|---|---|---|
| | Target allocation | Long-term expected rate of return | Target allocation | Long-term expected rate of return | Target allocation | Long-term expected rate of return |
| Asset class: | | | | | | |
| Domestic equity | 25% | 6.4% | 14% | 6.8% | 15% | 6.8% |
| International equity | 10 | 6.7 | 6 | 7.6 | 10 | 6.6 |
| Fixed income | 64 | 6.3 | 79 | 3.9 | 74 | 5.5 |
| Cash | 1 | 3.0 | 1 | 2.9 | 1 | 2.3 |
| Total | 100% | | 100% | | 100% | |

The long-term expected rates of return on pension benefit investments were determined using a building block method in which best estimate ranges of expected future real rates of return (expected returns, net of pension plan investment expense and inflation) were developed for each major asset class. These ranges were combined to produce the long-term expected rate of return by weighting the expected future real rates of return by the target asset allocation percentage and by adding expected inflation.

(iii)  *Date of Depletion and Discount Rate*

The asset basis for the date of depletion projection is each of the Retirement Systems' fiduciary net position (the gross assets plus deferred outflows of resources less the gross liabilities, including the senior pension funding bonds payable, plus deferred inflows of resources). On this basis, ERS's fiduciary net position was exhausted in fiscal year 2015. The fiduciary net positions for TRS and JRS are expected to be exhausted in fiscal years 2019 and 2018, respectively. After June 30, 2017, the Commonwealth enacted legislation that changed the structure of pension administration managed by ERS. For further information regarding such pension legislation, see Note 3 and Note 23.

The discount rate used to measure the total pension liability decreased from 3.8% per annum at June 30, 2015 to 2.85% per annum at June 30, 2016 for ERS, and from 3.8% per annum at June 30, 2015 for both TRS and JRS to 2.86% per annum at June 30, 2016.

The fiduciary net position of ERS was not projected to be available to make all projected future benefit payments of current active and inactive employees. The date of depletion projection in the actuarial report does not include any amounts from the additional uniform contribution required by Act No. 32-2013 because of actual fiscal and budgetary financial difficulties, continued budget deficits and liquidity risks of the Commonwealth and its municipalities, and the risk that the financial condition of the Commonwealth and its municipalities does not improve in the near term. Therefore, the tax-free municipal bond index (Bond Buyer General Obligation 20 Bond Municipal Bond Index) was applied to all periods of projected benefits payments to determine the total pension liability. The discount rate for ERS was 2.85% as of June 30, 2016.

The fiduciary net positions of TRS and JRS are not expected to be available to make all projected future benefit payments of current active and inactive members. Therefore, the discount rate for calculating the total pension liability is equal to the single equivalent rate that results in the same actuarial present value as the long-term expected rate of return applied to benefit payments, to the extent that the pension plan's fiduciary net position is projected to be sufficient to make projected benefit payments, and the tax free municipal bond index rate (Bond Buyer General Obligation 20 Bond Municipal Bond Index) applied to benefit payments, to the extent that the pension plan's

247

## COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

fiduciary net position is not projected to be sufficient. The TRS and the JRS discount rate was 2.86% as of June 30, 2016.

(iv) *Changes in Net Pension Liability of TRS and JRS*

Changes in the Commonwealth's net pension liability of TRS and JRS as of June 30, 2017 (using a June 30, 2016 measurement date) were as follows (in thousands):

| | TRS | | | JRS | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Total pension liability | Plan fiduciary net position | Net pension liability | Total pension liability | Plan fiduciary net position | Net pension liability |
| Balance at July 1, 2015 | $ 16,307,731 | 1,311,081 | 14,996,650 | 585,312 | 40,172 | 545,140 |
| Changes for the year: | | | | | | |
| Service cost | 294,692 | — | 294,692 | 19,155 | — | 19,155 |
| Interest on total pension liability | 648,407 | — | 648,407 | 22,625 | — | 22,625 |
| Differences between expected and actual experience in measuring the total pension liability | 43,202 | — | 43,202 | (2,826) | — | (2,826) |
| Changes in assumptions | 1,621,712 | — | 1,621,712 | 51,960 | — | 51,960 |
| Contributions – employer | — | 213,724 | (213,724) | — | 15,223 | (15,223) |
| Contributions – employees | — | 99,557 | (99,557) | — | 3,190 | (3,190) |
| Contributions – transfers | — | 1,804 | (1,804) | — | — | — |
| Pension plan net investment income | — | 45,060 | (45,060) | — | 1,751 | (1,751) |
| Other income | — | 1,350 | (1,350) | — | — | — |
| Benefit payments, including refunds of contributions | (750,172) | (751,245) | 1,073 | (24,560) | (24,560) | — |
| Pension plan net administrative expenses | — | (25,876) | 25,876 | — | (946) | 946 |
| Net changes | 1,857,841 | (415,626) | 2,273,467 | 66,354 | (5,342) | 71,696 |
| Balance at June 30, 2016 | $ 18,165,572 | 895,455 | 17,270,117 | 651,666 | 34,830 | 616,836 |

The net pension liabilities for TRS and JRS of approximately $17.3 billion and $616.8 million, respectively, as of June 30, 2016 are included as part of the Governmental Activities of the Primary Government in the statement of net position.

Actuarial assumptions are revised periodically to more closely reflect both actual and anticipated future experience. Due to the change in the census collection date to the beginning of the fiscal year rather than the end of the fiscal year, demographic gain/loss during the year is limited to the difference between actual and expected benefit payments, which arise from differences in termination and retirement activity versus expectations.

The June 30, 2016 actuarial valuation for TRS reflect increases in the total pension liability as follows: (i) approximately $1.6 billion loss as a result of the changes in assumptions, and (ii) approximately $73 million loss as a result of the update of the census data to reflect outsized retirement activity during the fiscal year 2016, plus the difference between actual and expected benefit payments, which arise from differences in retirement activity and actual mortality versus expectations.

The June 30, 2016 actuarial valuation for JRS reflects an increase of approximately $66 million in the total pension liability because of changes in assumptions related to the change in the discount rate as required by GASB Statement No. 67 from 3.82% in 2015 to 2.86% in 2016 and a decrease of approximately $3 million in the total pension liability because of differences between expected and

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

actual experience. No compensation increases are assumed until July 1, 2021 as a result of Act No. 66-2014.

(v)   *Sensitivity of Net Position Liability to Changes in Discount Rate*

The following table presents the Commonwealth's net pension liability for TRS and JRS calculated as follows (in thousands): (i) using the discount rate of 2.86%, as well as what such rate would be if calculated using a discount rate of 1% point lower (1.86%) or 1% percentage point higher (3.86%) than the current rate:

| | | TRS | | | JRS | |
| | 1% decrease (1.86%) | Current discount rate (2.86%) | 1% increase (3.86%) | 1% decrease (1.86%) | Current discount rate (2.86%) | 1% increase (3.86%) |
|---|---|---|---|---|---|---|
| Net pension liability | $ 20,095,291 | 17,270,117 | 14,982,985 | 715,586 | 616,836 | 537,054 |

The following table presents the Commonwealth's proportionate share of the net pension liability for ERS calculated using the discount rate of 2.85%, as well as what the Commonwealth's proportionate share of the net pension liability would be if it were calculated using a discount rate of 1% point lower (1.85%) or 1% percentage point higher (3.85%) than the current rate (in thousands):

| | 1% decrease (1.85%) | discount rate (2.85%) | 1% increase (3.85) |
|---|---|---|---|
| Commonwealth's proportionate share of the net pension liability | $ 29,210,451 | 25,467,704 | 22,420,351 |

(vi)   *Commonwealth Proportion of Net Pension Liability of ERS*

The following table presents the Commonwealth's proportionate share of the net pension liability of ERS as of June 30, 2017 and the proportion percentage of the aggregate net pension liability of ERS allocated to the Commonwealth (in thousands):

| | Governmental activities | Business-type activities | Total primary government |
|---|---|---|---|
| Commonwealth's proportion of the net pension liability | 65.41 % | 2.15 % | 67.56 % |
| Commonwealth's proportionate share of the net pension liability | $ 24,658,038 | 809,666 | 25,467,704 |

The Commonwealth's proportion of ERS's net pension liability was based on the actual required contributions of each of the participating employers that reflect each employer's projected long-term contribution effort. The contributions that reflect each employer's projected long-term contribution effort included in the proportionate share calculation are: (1) Act No. 116-2010 statutory payroll-based contribution; (2) Act No. 3-2013 supplemental contribution; and (3) other special law

249

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

contributions. Contributions to ERS of approximately $464 million were required during the period subsequent to the measurement date or during the period ended June 30, 2017. Other contributions to ERS that do not reflect an employer's projected long-term contribution effort, such as contributions that separately finance specific liabilities of an individual employer to ERS (i.e. local employer early retirement incentives), were excluded from the proportionate share calculation.

In addition, Act No. 32-2013 Additional Uniform Contribution (AUC), which is a contribution that reflects each employer's projected long-term contribution effort, was excluded from the proportionate share calculation because its collectability from various employers, including the Commonwealth, is uncertain. This prevents an overallocation of GASB Statement No. 68 amounts to the employers who have paid their AUC (or are expected to do so) and an underallocation of GASB Statement No. 68 amounts to the employers who have not paid their AUC (or are not expected to do so).

(vii)  *Changes in Assumptions*

Actuarial assumptions are revised periodically to more closely reflect both actual and anticipated future experience. Due to the change in the census collection date to the beginning of the fiscal year, rather than the end of the fiscal year, demographic gain/loss during the year is limited to the difference between actual and expected benefit payments, which arise from differences in termination and retirement activity and mortality versus expectations.

The June 30, 2016 actuarial valuation for ERS reflects an increase of approximately $3.9 billion in the total pension liability because of the changes in assumptions related to the change in the discount rate as required by GASB Statement No. 67 and a decrease of approximately $250 million in the total pension liability because of differences between expected and actual experience. With the enactment of Act No. 3-2013, termination, retirement and disability rates were added for new Act No. 3 members. Also, the compensation increase assumption was revised due to Act No. 66-2014.

After June 30, 2017, the Commonwealth enacted legislation that changed the structure of pension benefits administered by ERS. For further information regarding such pension legislation, see Note 3 and Note 23.

(f)  ***Pension Expense and Deferred Outflows of Resources and Deferred Inflows of Resources from Pension Activities***

Pension expense recognized by the Commonwealth for the year ended June 30, 2017 related to the Retirement Systems were as follows (in thousands):

| Retirement systems | Governmental activities | Business-type activities | Total primary government |
|---|---|---|---|
| ERS | $  1,674,448 | 69,983 | 1,744,431 |
| TRS | 1,227,648 | — | 1,227,648 |
| JRS | 66,459 | — | 66,459 |
| Total | $  2,968,555 | 69,983 | 3,038,538 |

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Deferred outflows and deferred inflows of resources from pension activities by source reported by the Commonwealth in the statement of net position as of June 30, 2017 for each of the Retirement Systems were as follows (in thousands):

| Retirement system | Source | Governmental activities | | Business-type activities | |
| | | Deferred outflows of resources | Deferred inflows of resources | Deferred outflows of resources | Deferred inflows of resources |
|---|---|---|---|---|---|
| ERS | Differences between expected and actual experience in measuring total pension liability | $ 20,160 | 338,517 | 662 | 11,116 |
| | Changes in assumptions | 3,760,647 | — | 123,499 | — |
| | Net difference between projected and actual earnings on pension plan investments | — | 133,421 | — | 4,382 |
| | Changes in proportion and differences between actual contributions and proportionate share | 92,551 | 498,325 | 48,062 | — |
| | Employer contributions made subsequent to the measurement date | 494,558 | — | 25,643 | — |
| | Total ERS | 4,367,916 | 970,263 | 197,866 | 15,498 |
| TRS | Differences between expected and actual experience in measuring total pension liability | 222,699 | — | — | — |
| | Changes in assumptions | 2,320,636 | — | — | — |
| | Net difference between projected and actual earnings on pension plan investments | 11,990 | — | — | — |
| | Employer contributions made subsequent to the measurement date | 270,302 | — | — | — |
| | Total TRS | 2,825,627 | — | — | — |

251

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| Retirement system | Source | Governmental activities | | Business-type activities | |
|---|---|---|---|---|---|
| | | Deferred outflows of resources | Deferred inflows of resources | Deferred outflows of resources | Deferred inflows of resources |
| JRS | Differences between expected and actual experience in measuring total pension liability | $ — | 6,020 | — | — |
| | Changes in assumptions | 77,273 | — | — | — |
| | Net difference between projected and actual earnings on pension plan investments | — | 2,371 | — | — |
| | Employer contributions made subsequent to the measurement date | 25,473 | — | — | — |
| | Total JRS | 102,746 | 8,391 | — | — |
| Total | Differences between expected and actual experience | 242,859 | 344,537 | 662 | 11,116 |
| | Changes in assumptions | 6,158,556 | — | 123,499 | — |
| | Net difference between projected and actual earnings on pension plan investments | 11,990 | 135,792 | — | 4,382 |
| | Changes in proportion and differences between actual contributions and proportionate share | 92,551 | 498,325 | 48,062 | — |
| | Employer contributions made subsequent to the measurement date | 790,333 | — | 25,643 | — |
| | Total | $ 7,296,289 | 978,654 | 197,866 | 15,498 |

252

DRA Ex. 242

## COMMONWEALTH OF PUERTO RICO

Notes to Basic Financial Statements

June 30, 2017

Amounts reported as deferred outflows/inflows of resources from pension activities as of June 30, 2017 will be recognized in the pension expense as follows (in thousands):

|  | | ERS | TRS | JRS | Total |
|---|---|---|---|---|---|
| Year ending June 30: | | | | | |
| 2018 | $ | 657,903 | 463,929 | 28,939 | 1,150,771 |
| 2019 | | 657,903 | 463,929 | 27,454 | 1,149,286 |
| 2020 | | 686,693 | 480,809 | 12,435 | 1,179,937 |
| 2021 | | 694,083 | 473,313 | 54 | 1,167,450 |
| 2022 | | 363,238 | 431,296 | — | 794,534 |
| Thereafter | | — | 242,049 | — | 242,049 |
| Total | $ | 3,059,820 | 2,555,325 | 68,882 | 5,684,027 |

Deferred outflows of resources related to pensions resulting from the Commonwealth required contributions subsequent to the measurement date were approximately $520.2 million, $270.3 million and $25.5 million as of June 30, 2017 for the corresponding proportionate share of ERS, for TRS and for JRS, respectively, and will be recognized as a reduction of the net pension liability in the year ended June 30, 2018. This amount is not included in the table above.

After June 30, 2017, the Commonwealth enacted legislation that changed the structure of pension benefits administered by ERS. For further information regarding such pension legislation, see Note 3 and Note 23.

### (g) Net Pension Liability Information for Discretely Presented Component Units

As mentioned in Note 1(s), for purposes of the stand-alone basic financial statements of each of the discretely presented component units, which audit reports for fiscal year 2017 had already been issued prior to the issuance of the accompanying basic financial statements of the Commonwealth, ERS did not timely provide the information needed to apply GASB Statements No. 68 and No. 71. Consequently, the PRMIMTA, a nonmajor discretely presented component unit, was unable to apply these accounting pronouncements.

#### (i) Plan Description and Membership

**University of Puerto Rico Retirement System**

The University of Puerto Rico Retirement System (UPR Retirement System) is a single-employer, defined benefit pension plan that covers all employees of UPR with the exception of hourly, temporary, part-time, contract and substitute employees, and visiting professors. It is qualified and exempt from Puerto Rico and United States income taxes. The UPR Retirement System is not subject to the requirements of the Employees Retirement Income Security Act of 1974 (ERISA). The UPR Retirement System issues a publicly available financial report that includes additional financial information, other required disclosures and required supplementary information for the plan. That report may be obtained by writing to the University of Puerto Rico Retirement System at P.O. Box 21769, San Juan, Puerto Rico 00931-1769.

**Puerto Rico Electric Power Authority Retirement System**

The Puerto Rico Electric Power Authority Retirement System (PREPA Retirement System) is a single-employer, defined benefit pension plan that covers all permanent full-time employees of PREPA administered by Employees' Retirement System of the Puerto Rico Electric Power Authority.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

It is qualified and exempt from Puerto Rico and United States income taxes. The PREPA Retirement System is not subject to the requirements of the Employees Retirement Income Security Act of 1974 (ERISA). The PREPA Retirement System issues a publicly available financial report that includes additional financial information, other required disclosures and required supplementary information for the plan. That report may be obtained by writing to the Retirement System of the Puerto Rico Electric Power Authority, PO Box 13978, San Juan, Puerto Rico 00908-3978.

*(ii)    Recognition of Pension Amounts*

For those discretely presented component units that did apply GASB Statements No. 68 and No. 71, the following consists of the Net Pension Liability and Pension Expense recognized in the accompanying audited basic financial statements under the discretely presented component units opinion unit (in thousands):

|  | Net pension liability | Pension expense |
|---|---|---|
| Major component units: | | |
| GDB | $    203,367 | 20,805 |
| PREPA | 4,666,535 | 812,100 |
| PRASA | 1,575,926 | 126,647 |
| PRHTA | 550,824 | 28,800 |
| UPR | 2,006,703 | 42,650 |
| SIFC | 1,713,281 | 137,503 |
| Nonmajor | 1,857,327 | 125,032 |
| Total component units | $    12,573,963 | 1,293,537 |

254

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The following consists of the deferred outflows and deferred inflows of resources from pension activities by source reported at June 30, 2017 by those discretely presented component units referred to above (in thousands):

| Major component unit | Source | | Deferred outflows of resources | Deferred inflows of resources |
|---|---|---|---|---|
| GDB | Employer contributions made subsequent to the measurement date | $ | 6,853 | — |
| | Changes in proportion and differences between actual contributions and proportionate share | | 13,365 | — |
| | Differences between expected and actual experience in measuring the total pension liability | | 166 | 2,300 |
| | Changes in assumptions | | 31,020 | |
| | Net difference between projected and actual earnings on pension plan investments | | — | 1,592 |
| | Total GDB | | 51,404 | 3,892 |
| PREPA | Employer contributions made subsequent to the measurement date | | 120,272 | — |
| | Differences between expected and actual experience in measuring the total pension liability | | 23,380 | — |
| | Changes in assumptions | | 1,360,576 | 32,482 |
| | Net difference between projected and actual earnings on pension plan investments | | 37,515 | 14,861 |
| | Total PREPA | | 1,541,743 | 47,343 |
| PRASA | Employer contributions made subsequent to the measurement date | | 97,203 | — |
| | Differences between expected and actual experience in measuring the total pension liability | | 1,288 | 21,635 |
| | Changes in assumptions | | 240,377 | — |
| | Net difference between projected and actual earnings on pension plan investments | | — | 8,527 |
| | Total PRASA | | 338,868 | 30,162 |

255

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| Major component unit | Source | Deferred outflows of resources | Deferred inflows of resources |
|---|---|---:|---:|
| PRHTA | Employer contributions made subsequent to the measurement date | $ 20,770 | — |
| | Differences between expected and actual experience in measuring the total pension liability | — | 9,715 |
| | Changes in assumptions | 84,018 | 7,562 |
| | Net difference between projected and actual earnings on pension plan investments | 450 | 2,980 |
| | Total PRHTA | 105,238 | 20,257 |
| UPR | Employer contributions made subsequent to the measurement date | 78,775 | — |
| | Differences between expected and actual experience in measuring the total pension liability | — | 172,913 |
| | Changes in assumptions | 138,627 | — |
| | Net difference between projected and actual earnings on pension plan investments | 2,766 | — |
| | Total UPR | 220,168 | 172,913 |
| SIFC | Employer contributions made subsequent to the measurement date | 63,947 | — |
| | Differences between expected and actual experience in measuring the total pension liability | — | 32,791 |
| | Changes in assumptions | 329,419 | — |
| | Total SIFC | 393,366 | 32,791 |
| Total | Employer contributions made subsequent to the measurement date | 387,820 | — |
| | Changes in proportion and differences between actual contributions and proportionate share | 13,365 | — |
| | Differences between expected and actual experience in measuring the total pension liability | 24,834 | 239,354 |
| | Changes in assumptions | 1,854,618 | 40,044 |
| | Net difference between projected and actual earnings on pension plan investments | 370,150 | 27,960 |
| | Total major component units | $ 2,650,787 | 307,358 |

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| Nonmajor component units | Source | | Deferred outflows of resources | Deferred inflows of resources |
|---|---|---|---|---|
| | Employer contributions made subsequent to the measurement date | $ | 61,238 | — |
| | Differences between expected and actual experience | | 1,519 | 25,516 |
| | Changes in assumptions | | 283,480 | — |
| | Net difference between projected and actual earnings on pension plan investments | | — | 10,056 |
| | Changes in proportion and differences between actual contributions and proportionate share | | 59,491 | 68,918 |
| | | | 405,728 | 104,490 |
| Total | Employer contributions made subsequent to the measurement date | | 449,058 | — |
| | Differences between expected and actual experience | | 26,353 | 264,870 |
| | Changes in assumptions | | 2,138,098 | 40,044 |
| | Net difference between projected and actual earnings on pension plan investments | | 370,150 | 10,056 |
| | Changes in proportion and differences between actual contributions and proportionate share | | 72,856 | 96,878 |
| | | $ | 3,056,515 | 411,848 |

(iii)   *Unrecorded Pension Amounts*

The following pension amounts (in thousands) of GASB Statement No. 68 and No. 71 should have been recognized as of June 30, 2017 and are considered unaudited because they relate to a discretely presented component unit of the Commonwealth which was audited by other auditors that did not implemented the requirements of GASB Statements No. 68 and No. 71 on its stand-alone audited basic financial statements.

| | Net pension liability | Pension expense | Deferred outflows of resources | Deferred inflows of resources |
|---|---|---|---|---|
| Aggregate discretely presented component units | $   63,436 | 4,616 | 13,027 | 1,214 |

**(h)  *Payable to the Retirement Systems***

Payable to the Retirement Systems reported by the Commonwealth at June 30, 2017 related to unpaid contributions for each of the Retirement Systems were as follows (in thousands):

| Retirement systems | | Amount |
|---|---|---|
| ERS | $ | 661,137 |
| JRS | | 37,262 |
| Total | $ | 698,399 |

257

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

As of June 30, 2017, ERS had an obligation with the Commonwealth of approximately $361.5 million. The accounts receivable from and accounts payable to ERS are presented in the statement of net position as part of the due from (to) other governmental entities. After June 30, 2017, the Commonwealth enacted legislation that changed the structure of pension benefits administered by ERS. For further information regarding such pension legislation, see Note 3 and Note 23.

**(19)  Other Post-Employment Benefits**

As further described in Note 1(t), the Commonwealth provides post-employment healthcare benefits through the following defined benefit plans that are administered by ERS and JRS Administration or by the TRS Administration:

- Employees' Retirement System of the Government of Puerto Rico and its Instrumentalities Medical Insurance Plan Contribution (ERS MIPC)

- Retirement System for the Judiciary of the Commonwealth of Puerto Rico Medical Insurance Plan Contribution (JRS MIPC)

- Puerto Rico System of Annuities and Pensions for Teachers Medical Insurance Plan Contribution (TRS MIPC)

After June 30, 2017, the Commonwealth enacted legislation that changed the structure of pension benefits administered by the ERS and JRS Administration. For further information regarding such pension legislation, see Note 3 and Note 23.

**(a)  Plans Descriptions**

ERS MIPC is an unfunded cost sharing, multiple employer defined benefit other post-employment (OPEB) plan sponsored by the Commonwealth. JRS MIPC and TRS MIPC are unfunded, single employer defined benefit OPEB plans sponsored by the Commonwealth. These OPEB plans were created under Act No. 95-1963. Healthcare benefits are provided through insurance companies whose premiums are paid by the retiree with the Commonwealth providing a matching share. ERS MIPC covers substantially all full-time employees of (1) the Primary Government and (2) certain municipalities of Puerto Rico and certain component units of the Commonwealth not having their own post-employment benefit plans. JRS MIPC covers all judges of the Judiciary Branch of the Commonwealth. TRS MIPC covers all active teachers of the DOE and employees of the TRS Administration.

For ERS MIPC and TRS MIPC, Commonwealth employees became plan members upon their date of employment. Plan members were eligible for benefits upon reaching the applicable pension benefits retirement age. Act No. 3-2013 eliminated this healthcare benefit to ERS MIPC members retired after June 30, 2013. Act No. 160-2013 eliminated this healthcare benefit to TRS MIPC members retired after July 31, 2014.

For JRS MIPC, judges of the Judiciary Branch of the Commonwealth become plan members upon their date of employment. Plan members are eligible for benefits upon reaching the age of 60 with 10 years of service.

Funding Policy – The contribution requirement of ERS MIPC, JRS MIPC, and TRS MIPC are established by Act No. 95-1963. Its benefit consists of a maximum of $100 per month per retiree or disabled member. Each of these OPEB plans is financed by the Commonwealth and its public corporations and municipalities on a pay as you go basis. The funding of the OPEB benefits are provided to the ERS MIPC, the JRS MIPC and TRS MIPC through legislative appropriations each July 1 by (i) the Commonwealth for former government employees; (ii) certain public corporations without their own

258

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

treasuries; and, (iii) certain public corporations with their own treasuries and municipalities for their former employees. The legislative appropriations are considered estimates of the payments to be made by the ERS MIPC, the JRS MIPC and TRS MIPC for the healthcare benefits throughout the year. There is no contribution requirement for plan members during active employment.

Retirees contribute the amount of the healthcare insurance premium not covered by the Commonwealth contribution.

**(b)  *Membership as of July 1, 2016***

|  | ERS | JRS | TRS | Total |
|---|---|---|---|---|
| Retirees, disabled members and currently receiving benefits | 108,793 | 414 | 39,884 | 149,091 |

**(c)  *Annual OPEB costs and Net OPEB obligation***

The annual OPEB cost and the annual required contribution (ARC) were computed as part of an actuarial valuation in accordance with parameters of GASB Statement No. 45 based on beginning of year census (demographic) data as of July 1, 2015, as adjusted. Prior year actuarial valuations were made using end of year census data.

The Commonwealth's annual OPEB cost and the net OPEB obligation for the post-employment healthcare benefits plans as of and for the year ended June 30, 2017 were as follows (in thousands):

|  |  | ERS MIPC | JRS MIPC | TRS MIPC | Total |
|---|---|---|---|---|---|
| Annual OPEB cost: |  |  |  |  |  |
| ARC | $ | 105,859 | 1,023 | 37,490 | 144,372 |
| Interest on net OPEB obligation |  | 6,186 | 81 | 1,742 | 8,009 |
| Adjustment to annual required contribution |  | (16,415) | (295) | (4,221) | (20,931) |
| Annual OPEB cost |  | 95,630 | 809 | 35,011 | 131,450 |
| Statutory sponsor's contributions made |  | (91,280) | (336) | (36,493) | (128,109) |
| Increase (decrease) in net OPEB obligation |  | 4,350 | 473 | (1,482) | 3,341 |
| Net OPEB obligation at beginning of year |  | 206,184 | 2,606 | 58,056 | 266,846 |
| Net OPEB obligation at year-end | $ | 210,534 | 3,079 | 56,574 | 270,187 |

The net OPEB obligation at June 30, 2017 for ERS MIPC, JRS MIPC, and TRS MIPC was approximately $270 million recorded in the Governmental Activities in the accompanying statement of net position.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

**(d) Actuarial Methods and Assumptions**

The OPEB funded status as of June 30, 2017 was determined by the actuarial valuation with beginning of year census data as of July 1, 2016, which was updated to roll forward the funded status to June 30, 2017 and assumed no liability gains or losses.

The following are the most significant actuarial methods and assumptions used to estimate the net OPEB obligation at June 30, 2017 and the OPEB required annual contribution for the year ended June 30, 2017:

|  | ERS MIPC | JRS MIPC | TRS MIPC |
|---|---|---|---|
| Actuarial-cost method | Entry age normal | Entry age normal | Entry age normal |
| Amortization method | 18 years closed (beginning July 1, 2014), level dollar | 30 years closed, level percentage of payroll | 20 years closed (beginning July 1, 2014), level dollar |
| Remaining amortization period | 16 years | 10 years | 18 years |
| Discount rate | 2.90 % | 3.00 % | 2.90 % |
| Projected payroll growth | N/A | 0% until June 30, 2021; 3% thereafter | N/A |
| Projected salary increases | N/A | 0% until June 30, 2021; | N/A |
| Inflation | N/A | N/A | N/A |

N/A = Not applicable.

The ERS MIPC, JRS MIPC, and TRS MIPC statutory contributions as a percentage of the annual required contribution for the current year and each of the two preceding years were as follows:

|  | ERS MIPC | JRS MIPC | TRS MIPC |
|---|---|---|---|
| Year ended June 30, 2017 | 98.0 % | 36.0 % | 99.4 % |
| Year ended June 30, 2016 | 89.5 | 34.4 | 98.5 |
| Year ended June 30, 2015 | 93.7 | 36.3 | 104.1 |

Actuarial valuations of an ongoing plan involve estimates of the net value of reported amounts and assumptions about the probability of occurrence of events far into the future; including for example, assumptions about future employment and mortality. Amounts determined regarding the funded status of the plan and the ARC of the employer are subject to continuous revision because actual results are compared with past expectations and new estimates are made about the future.

Calculations are based on the types of benefits provided under the terms of the substantive plan at the time of each valuation and the pattern of sharing of costs between the employer and plan members at the time of each valuation. The projections of benefits for financial reporting purposes does not explicitly incorporate the potential effects of legal or contractual funding limitations on the pattern of cost sharing between the employer and plan members in the future.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

The actuarial calculations reflect a long-term perspective. Consistent with that perspective, the actuarial methods and assumptions used include techniques designed to reduce short-term volatility in actuarial accrued liabilities and actuarial value of assets.

**(e) Three Year Trend Information**

The three-year trend information is as follows (in thousands):

|  | | ERS MIPC | JRS MIPC | TRS MIPC |
|---|---|---|---|---|
| Annual OPEB cost: | | | | |
| Year ended June 30, 2017 | $ | 95,630 | 809 | 35,011 |
| Year ended June 30, 2016 | | 98,565 | 783 | 35,689 |
| Year ended June 30, 2015 | | 95,267 | 745 | 33,946 |
| Percentage of annual OPEB cost contributed: | | | | |
| Year ended June 30, 2017 | | 95.5% | 41.5% | 104.2% |
| Year ended June 30, 2016 | | 95.1 | 40.5 | 105.0 |
| Year ended June 30, 2015 | | 102.2 | 41.2 | 111.3 |
| Net OPEB obligation: | | | | |
| At June 30, 2017 | $ | 210,534 | 3,079 | 56,574 |
| At June 30, 2016 | | 206,184 | 2,606 | 58,056 |
| At June 30, 2015 | | 201,347 | 2,140 | 59,848 |

Funded status of the post-employment healthcare benefit plans as of June 30, 2017, the most recent actuarial valuation date, is as follows (in thousands):

|  | | ERS MIPC | JRS MIPC | TRS MIPC |
|---|---|---|---|---|
| Actuarial accrued liability (AAL) | $ | 1,138,309 | 7,429 | 501,655 |
| Actuarial value of assets | | — | — | — |
| Unfunded actuarial accrued liability | $ | 1,138,309 | 7,429 | 501,655 |
| Funded ratio | | —% | —% | —% |
| Covered payroll | $ | 3,344,197 | 31,829 | 1,033,224 |
| Unfunded actuarial accrued liability as a percentage of covered payroll | | 34.0% | 23.3% | 48.6% |

The schedule of funding progress presented as required supplementary information following the notes to the basic financial statements, present multiyear trend information about whether the actuarial value of plan assets is increasing or decreasing over time relative to the actuarial accrued liability for benefits.

**(20) Debt Service Deposit Agreements**

On May 26, 2005, the Commonwealth, PFC, and GDB (together the Commonwealth Entities) and Lehman Brothers Special Financing Inc. (Lehman) entered into Debt Service Deposit Agreements (DSD Agreements) effective on July 1, 2005. The objective of the DSD Agreement was for the Commonwealth Entities to secure

261

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

an upfront payment in exchange for granting Lehman the rights to earnings generated from eight of its debt service funds. On September 25, 2008, as a result of Lehman commencing a case in the United States Bankruptcy Court for the Southern District of New York under Chapter 11 of Title 11 of the United States Code, Lehman selected Hexagon Securities LLC to act as the Qualified Dealer under the DSD Agreements and delivered Qualified Securities as permitted under the DSD Agreement. Seven of the funds are associated with the Commonwealth PFC bonds, presented in the accompanying basic financial statements as Commonwealth appropriation bonds, and one fund is associated with the Commonwealth's general obligation bonds. On May 26, 2005 the Commonwealth Entities received the upfront payment of approximately $82.7 million, representing the present value of the projected earnings income adjusted for credit timing risks as well as an appropriate amount of compensation for Lehman.

With the upfront payment made as explained above, the Commonwealth Entities delivered to Lehman the required and scheduled debt service deposits and Lehman delivered qualified government debentures, which will mature before the next debt service payment date at an amount approximating such next debt service payment. Lehman will attempt to earn sufficient funds on the debt service deposit amounts, less its cost for the qualified government debentures, to make back the $82.7 million over time. At the same time, the Commonwealth Entities will be managing their borrowings and investments by increasing the predictability of its cash flows from earnings on its investments and not for purposes of speculation. The Commonwealth Entities acknowledge that, in exchange for the upfront payment received, they are foregoing their rights to receive investment earnings on the deposit amounts referred to above in the future and that, by accepting the upfront payment, the Commonwealth Entities have minimized the risks resulting from fluctuations in interest rates during the term of the DSD Agreements but also have foregone the possibility of receiving greater returns on such amounts from such fluctuations.

Under the DSD Agreements, the Commonwealth Entities will be exposed to the payment to Lehman of a Termination Amount, as defined in the agreement, principally upon the occurrence of redemption or a defeasance of the related bonds on or prior to the last scheduled deposit date. The amount of the Termination Amount will vary depending on various market conditions, as defined in the DSD Agreements. Under certain market conditions, the Termination Amount owed to Lehman by the Commonwealth may exceed the amount of the original upfront payment received.

The $82.7 million upfront payment received by the Commonwealth Entities was recognized as other revenue for budgetary purposes in 2005; however, under U.S. GAAP, such upfront payment was deferred and is being recognized proportionally over the future periods the Commonwealth Entities would have otherwise earned such interest earnings. The unamortized balance amounted to approximately $13.2 million and is a component of unearned revenue at June 30, 2017. During fiscal year 2017, approximately $2.7 million was amortized into other revenue in the Governmental Activities of the accompanying statement of activities. For additional information regarding potential claims with respect to the debt service deposit agreements, refer to Note 23.

**(21) Derivative Instruments**

*Hedging Derivative Instruments*

The sole hedging derivative instrument at the Primary Government as of June 30, 2017 resided at COFINA, which has entered into an interest rate exchange agreement (swap) with a counterparty in connection with the issuance of $136 million LIBOR based adjustable rate bonds within the Sales Tax Revenue Bonds Series 2007A (the Adjustable Rate Bonds) maturing August 1, 2057. The Adjustable Rate Bonds expose COFINA to variability in interest payments due to changes in interest rates. Management believes that it is prudent to

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

limit the variability of interest payments on the Adjustable Rate Bonds. To meet this objective, management entered into a $136 million interest rate swap agreement to manage fluctuations in cash flows resulting from interest rate risk. This swap effectively changes the variable rate cash flow exposure on the Adjustable Rate Bonds to fixed cash flows. Under the terms of the interest rate swap, COFINA receives variable interest rate payments equal to the interest payment on the Adjustable Rate Bonds and makes fixed interest rate payments at 4.92% through August 1, 2057, thereby creating the equivalent of a fixed rate debt. At June 30, 2017, the credit rating of the counterparty to this swap agreement was BBB+ by Standard & Poor's.

COFINA rejected the Swap Agreement in its Title III case, and the claim for termination payment was discharged under the COFINA Plan of Adjustment during fiscal year 2020.

The fair value and notional amount of the derivative instrument (pay fixed interest rate swap) outstanding as of June 30, 2017, designated as cash flow hedge, was as follows (in thousands):

| Notional amount | Fair value | Change in fair value from June 30, 2016 | Effective date | Floating rate indicator | Maturity date | Receives | | Pays | | Counterparty credit rating Moody's |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Type | Rate | Type | Rate | |
| $ 136,000 | 72,460 | (13,185) | 7/31/2007 | 67% of 3m LIBOR +0.93% | 8/1/2057 | Variable | 1.716% | Fixed | 4.92% | Ba3 |

The fair value of the interest rate swap is classified as Level 2 of the fair value hierarchy and was estimated using the zero-coupon method. This method calculates the future net settlement payments required by the swap, assuming that the current forward rate implied by the yield curve correctly anticipates future spot interest rates. These payments are then discounted using the spot rates implied by the current yield curve for hypothetical zero-coupon bonds due on the date of each future net settlement of the swaps.

*Risks on Hedging Derivative Instruments*

By using derivative financial instrument to hedge the exposure to changes in interest rates, COFINA exposes itself to interest rate risk, credit risk, and termination risk.

Credit or Counterparty Risk – Credit risk is the failure of the counterparty (or its guarantor) to perform under the terms of the derivative contract. When the fair value of a derivative contract is positive, the counterparty owes COFINA, which creates credit risk for COFINA. When the fair value of a derivative contract is negative, COFINA owes the counterparty and, therefore, does not possess credit risk. COFINA minimizes the credit risk in derivative instruments by entering into transactions with counterparties whose credit rating is acceptable under the investment policies of COFINA. As of June 30, 2017, there was no credit risk because the fair value of the derivative instrument was negative.

Interest Rate Risk – Interest rate risk is the adverse effect on the value of a financial instrument that results from a change in interest rates. COFINA is exposed to interest rate risk on its pay fixed, receive variable swap; as LIBOR decreases, COFINA's net payment on the swap increases. At the same time, interest payments on the hedged adjustable rate bonds decrease. The interest rate risk associated with interest rate swap contracts is managed by establishing and monitoring parameters that limit the types and degree of interest rate risk that may be undertaken.

Termination Risk – Termination risk is the possibility that a hedging derivative instrument's unscheduled end will affect COFINA's liability strategy or will present COFINA with potentially significant unscheduled termination payments to the counterparty. COFINA or its counterparty may terminate a derivative instrument

263

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

if the other party fails to perform under the terms of the contract. COFINA is at risk that the counterparty will terminate a swap at a time when COFINA owes it a termination payment. COFINA has mitigated this risk by specifying that the counterparty has the right to terminate only as a result of certain events, including a payment default by COFINA, insolvency of COFINA (or similar events), or a downgrade of COFINA's credit rating below BBB+ or Baa1. If at the time of termination, an investment derivative instrument is in a liability position, COFINA would be liable to the counterparty for a payment equal to the liability, subject to netting arrangements.

*Investment Derivative Instruments*

In connection with the COFINA swap agreement, on July 1, 2014, Moody's issued a downgrade on the LIBOR 2007A Bonds to a rating of Ba3. On September 24, 2014, rather than terminate the Swap Agreement, COFINA and the counterparty entered into a new credit annex (the 2014 Credit Support Annex) as well as an Amendment to the ISDA Master Agreement (the 2014 ISDA Amendment) to permit COFINA to collateralize its obligations under the Swap Agreement and to amend the termination events thereunder. The impact of the new agreement was for COFINA to post $12 million in collateral to the counterparty, as well as set up a restricted account in which a portion of the collateral be deposited for the benefit of counterparty. In addition, COFINA has committed to post up to $15 million annually in additional collateral by March 15 of each year until fiscal year 2018. Over time, the maximum amount COFINA would have to post is $60 million. In December 2016, COFINA posted $15 million in additional collateral due on March 31, 2017. As of June 30, 2017, the collateral amount held by the counterparty is $48.6 million.

**(22) Fund Balance (Deficit)**

Below is the detail included in the fund balance (deficit) classifications for the governmental funds as of June 30, 2017 (in thousands):

| | General | Debt service | COFINA Special revenue | COFINA Debt service | Nonmajor governmental | Total governmental |
|---|---|---|---|---|---|---|
| Nonspendable: | | | | | | |
| Inventory | $ 151 | — | — | — | — | 151 |
| Subtotal | 151 | — | — | — | — | 151 |
| Spendable: | | | | | | |
| Restricted for: | | | | | | |
| General government | 9,707 | — | — | — | — | 9,707 |
| Public housing and welfare | 65,736 | — | — | — | — | 65,736 |
| Education | 405 | — | — | — | — | 405 |
| Capital projects | — | — | — | — | 177,012 | 177,012 |
| Debt service | — | — | — | 441,824 | 109,381 | 551,205 |
| Subtotal | 75,848 | — | — | 441,824 | 286,393 | 804,065 |
| Committed to: | | | | | | |
| Public housing and welfare | — | — | — | — | 11,751 | 11,751 |
| Capital projects | — | — | — | — | 5,308 | 5,308 |
| Subtotal | — | — | — | — | 17,059 | 17,059 |
| Assigned to: | | | | | | |
| Capital projects | — | — | — | — | 4,006 | 4,006 |
| Subtotal | — | — | — | — | 4,006 | 4,006 |

264

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

| | | General | Debt service | COFINA Special revenue | COFINA Debt service | Nonmajor governmental | Total governmental |
|---|---|---|---|---|---|---|---|
| Unassigned | | (176,563) | (866,852) | 6,344 | — | (346,528) | (1,383,599) |
| | Total fund balance (deficit) | $ (100,564) | (866,852) | 6,344 | 441,824 | (39,070) | (558,318) |

## (23) Subsequent Events

Subsequent events were evaluated through August 31, 2020 to determine if any such events should either be recognized or disclosed in the 2017 basic financial statements. The subsequent events disclosed below are principally those related to debt activities, including credit rating downgrade events, other revenue and/or budget related matters and fiscal events and related legislation, both local and federal, that management believes are of public interest for disclosure.

*Primary Government*

### (a) Debt Investigation Report

On August 2, 2017, the Oversight Board announced its intention, pursuant to its authority under PROMESA, to conduct an investigation to review the fiscal crisis and its contributors, and examine Puerto Rico's debt and its issuance, including disclosure and selling practices. To that end, the Oversight Board named a special investigation committee (the Special Investigation Committee) to select an independent firm to conduct the investigation. On September 13, 2017 the Oversight Board announced that the Special Investigation Committee retained an independent investigator to carry out a review of the Commonwealth's debt and its connection to the current financial crisis. The Special Investigation Committee considers this investigation an integral part of the Oversight Board's mission to restore the fiscal balance and economic opportunity and to promote the Commonwealth's reentry to the capital markets. The Oversight Board published the independent investigator's final report on August 20, 2018 (the Debt Investigation Report). The Debt Investigation Report provides an analysis of the historical and more recent macroeconomic and political factors contributing directly and indirectly to the Commonwealth's fiscal and economic crisis, the Commonwealth's municipal bond issuance process, and legislative efforts to restructure the debt, as well as the Oversight's Board investigative findings, policy recommendations, and identification of potential claims and matters for regulatory attention.

The Debt Investigation Report presented findings and recommendations on the following areas:

- GDB
- Puerto Rico Public Utilities (PREPA and PRASA)
- COFINA
- ERS
- Puerto Rico's Budgeting, External Reporting, and Accounting Functions
- Calculation of the Constitutional Debt Limit
- Credit Rating Agencies (CRAs)
- Selling Practices for Puerto Rico-Related Bonds

265

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

- Puerto Rico's Government Ethics Framework
- Issuers' Use of Interest Rate Swaps
- Puerto Rico's Lack of a Clear Mechanism for Validating Puerto Rico-Related Bonds Before They Issue
- Possession Tax Credit

Finally, the independent investigator presented an overview of potential causes of action. The Debt Investigation Report in its entirety can be found on the Oversight Board's website.

On August 28, 2018, the Oversight Board appointed its Special Claims Committee and delegated to the Special Claims Committee any and all authority of the Oversight Board to review the findings in the Debt Investigation Report and to take any appropriate steps, including, but not limited to, recommending and/or initiating the negotiation and/or prosecution of claims based on the findings in the Debt Investigation Report on behalf of the Title III debtors for the benefit of all creditors and parties in interest in the Title III cases. The Special Claims Committee is entitled, in its full discretion, to determine the scope of any further action, including, but not limited to, additional investigation, as well as claims to be pursued, and to retain such advisors, consultants, attorneys or other advisors as in its sole discretion sees fit. On October 25, 2018, the Oversight Board requested proposals for counsel to assist the Special Claims Committee regarding consideration of potential claims described in the Debt Investigation Report. On November 28, 2018, the Special Claims Committee signed the contract with the firm that will provide those services. The Commonwealth is cooperating with this investigation.

On January 14, 2019, the Special Claims Committee and the Creditors' Committee filed a joint omnibus objection (the GO Claims Objection) seeking the disallowance of more than $6 billion of claims related to the Commonwealth's general obligation bonds issued on or after March 2012, including (a) $2.3 billion in Public Improvement Refunding Bonds, Series 2012 A issued in April 2012; (b) $415.27 million in Public Improvement Refunding Bonds, Series 2012 B issued in March 2012; and (c) $3.5 billion in general obligation bonds of 2014, Series A issued in March 2014 (collectively, the Challenged GO Bonds). According to the GO Claims Objection, the Challenged GO Bonds are "invalid" because, among other things, they were issued in violation of: (i) the Commonwealth Constitution's debt service limit, which should have included debt service on bonds issued by the PBA that the GO Claims Objection characterizes as a "sham" structure; (ii) the Commonwealth's constitutional balanced budget clause, which should have included $425 million of interest that was excluded; and (iii) the Commonwealth's constitutional balanced budget clause because proceeds of the Challenged GO Bonds were used to finance deficit spending. On February 15, 2019, the Title III Court entered a procedures order related to the GO Claims Objection, which gave parties until April 16, 2019 to provide notice of their participation in the proceedings related to the GO Claims Objection. On April 22, 2019, the Special Claims Committee filed an informative motion notifying the Title III Court of all parties who provided notice of their participation. This participation list was last updated by an informative motion filed on July 23, 2019. On July 24, 2019, the Title III Court entered an order staying several complex litigations in the Title III cases, including the GO Claims Objection, until November 30, 2019 and mandating mediation to resolve overlapping issues. By order entered on October 28, 2019, the Title III Court extended its stay order until December 31, 2019.

Between April 30, 2019 and May 20, 2019, the Special Claims Committee and the Creditors' Committee filed 272 separate avoidance actions seeking to avoid and recover certain transfers made by the Commonwealth to its creditors prior to the Commonwealth's Title III petition date. Of these avoidance actions, approximately 254 actions seek to recover funds from the Commonwealth's vendors (collectively, the Vendor Avoidance Actions). On July 12, 2019, the Title III Court entered an order

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

establishing litigation procedures for the Vendor Avoidance Actions. Under these procedures, all defendants may participate in a voluntary information exchange and negotiate with the Special Claims Committee to resolve their respective Vendor Avoidance Actions consensually prior to litigation. If negotiations fail or a defendant elects not to participate in the information exchange, all such defendants must respond to the complaint in their respective Vendor Avoidance Actions by no later than January 13, 2020.

These matters remain ongoing and the Commonwealth cannot predict when they will be concluded or their outcome.

*(b) Former Governor Rosselló's Resignation and Government Transition under Governor Wanda Vázquez Garced*

On July 24, 2019, then Governor Ricardo Rosselló Nevares announced his resignation as Governor of the Commonwealth effective August 2, 2019 at 5pm Atlantic Standard Time. Before his resignation became effective, then Governor Rosselló appointed former resident commissioner Pedro Pierluisi as Secretary of State. After being confirmed by the House of Representatives (but not the Senate), Mr. Pierluisi was sworn in as acting Governor. On August 7, 2019, the Puerto Rico Supreme Court unanimously determined that Mr. Pierluisi was unlawfully sworn into office as Governor. As a result, Justice Secretary Wanda Vázquez Garced was sworn in as Governor on August 7, 2019 to complete former Governor Rosselló's term through 2020. As of the date of these basic financial statements, Wanda Vazquez Garced currently serves as the Governor of the Commonwealth.

*(c) Certain U. S. Internal Revenue Service Examinations*

The United States Internal Revenue Service (the IRS) issued several letters dated from February 7, 2019 to March 28, 2019 to PBA, PREPA, COFINA and PRMFA to inform them that the IRS is conducting certain investigations. The investigations are related to certain Forms 8038-CP (Return for Credit Payments to Issuers of Qualified Bonds, as defined by IRS) and some Bond issuances.

On April 2019, the IRS filed an administrative expense claim against COFINA for the return of post-petition direct subsidy payments with respect to certain COFINA bonds. On June 12, 2019, with permission of the Oversight Board, FAFAA filed an objection to the IRS claim on behalf of COFINA. On October 25, 2019, the IRS filed a response to COFINA's objection. COFINA's reply deadline was November 26, 2019. COFINA and the IRS have engaged in settlement negotiations, but settlement has not been reached as of the date hereof.

PBA, PREPA, COFINA and PRMFA intend to respond to all correspondences from the IRS and intend to continue to cooperate with the IRS in connection with the above referenced examinations and are working with their representatives to respond to these IRS examinations in a timely manner.

*(d) Aftermath of Hurricane Maria*

On September 20, 2017, Puerto Rico was directly impacted by Hurricane Maria, leaving in its path the destruction of thousands of homes, knocking out power across the entire island and flooding many streets and roads. As a result of the massive impact of the hurricane, a series of actions and events have been taken. Some of these actions, events and considerations are discussed in the ensuing paragraphs.

On September 20, 2017, the same day that Hurricane Maria made landfall in Puerto Rico, the Governor requested funds from categories A and B of FEMA's public assistance program to address the state of emergency, which were immediately approved. Shortly thereafter, the Governor requested funds from categories C through G of FEMA's public assistance program, which are the categories dealing with permanent infrastructure projects such as roads, bridges, electricity and water infrastructure, public buildings, and parks and recreation spaces.

267

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

After FEMA's processing of the categories C through G funding requests, on November 1, 2017, the U.S. President approved the use of such funds for permanent projects on November 1, 2017. By doing so, the federal share on these funds was also increased from 75% to 90%, given the major disaster caused by the Hurricane Maria in Puerto Rico.

On September 21, 2017, pursuant to its authority under PROMESA and section 3 of the fiscal year 2018 budget resolutions, the Oversight Board announced its approval for the Commonwealth to reallocate up to $1 billion of its fiscal year 2018 budget to be used for emergency funding in the aftermath of Hurricane Maria.

On October 23, 2017, the Governor issued executive order EO 2017-065, creating the Central Recovery and Reconstruction Office of Puerto Rico (CRRO) pursuant to Act No. 211-1999, Act No. 5-2017, and Act No. 20-2017. The CRRO is created as a division within the PPPA for the purpose of (i) identifying, procuring, and administering resources to invest in the recovery of Puerto Rico, (ii) coordinating and channeling efforts of the Commonwealth related to the recovery of Puerto Rico, (iii) financing, executing, or effecting works and infrastructure projects related to the recovery of Puerto Rico, and (iv) advising the Governor and providing technical assistance and advice to other governmental entities regarding any matter related to the recovery of Puerto Rico. On November 10, 2017, the Governor issued executive order EO 2017-069, which amended EO 2017-065 to clarify the creation of the CRRO and their applicability.

On October 26, 2017, the U.S. President signed into law the Additional Supplemental Appropriations for Disaster Relief Requirements Act of 2017, which provided for approximately $36.5 billion of disaster relief funds for Texas, Florida, Puerto Rico and the United States Virgin Islands (USVI) related to damage from Hurricanes Harvey, Irma, and Maria. The law included $4.9 billion of Disaster Assistance Direct Loans to maintain liquidity for Puerto Rico and the USVI.

On November 8, 2017, the Governor issued executive order EO 2017-066 pursuant to his authority under Act No. 5-2017. EO 2017-066 delegates the Governor's receivership powers under Section 206(a) of Act No. 5-2017 to FAFAA so that it may act as receiver of PREPA's procurement division and any other division or office whose duties affect PREPA's procurement processes for goods and services in order to supervise and reform the procurement processes. EO 2017-066 also created within PREPA the Office of Contract and Procurement Compliance, which reports to FAFAA.

On November 8, 2017, the Governor also issued executive order EO 2017-068, which established a 10% reimbursement for certain small and mid-sized businesses on their sales and use tax filings from August 2017 through November 2017.

On February 9, 2018, the U.S. Congress approved, and the U.S. President signed an amendment of the Continuing Appropriations Act of 2018 to provide continuing fiscal year 2018 appropriations to most federal agencies through March 23, 2018. The Continuing Appropriations Act allocated additional budget appropriations of approximately $15 billion to the U.S. Corps of Engineers for necessary expenses to address emergency situation projects, and to construct, and rehabilitate and repair damages caused by natural disasters. Of the total amount of $15 billion, not less than $10.4 billion will be available for such projects within states and insular areas that were impacted by Hurricanes Harvey, Irma, and Maria and all repair, rehabilitation, study, design, and construction of the U.S. Corps of Engineers projects in Puerto Rico and the USVI will be conducted at full federal expense. The Act also allocated approximately $28 billion to the Community Development Fund to cover for necessary expenses related to disaster relief, long-term recovery, restoration of infrastructure and housing, economic revitalization, and mitigation in the most impacted and distressed areas resulting from a major declared disaster that occurred in 2017; of the amounts made available under this provision, no less than $11 billion will be

268

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

allocated to the States and units of local government affected by Hurricane Maria, and of such amounts allocated to such grantees affected by Hurricane Maria, $2 billion will be used to provide enhanced or improved electrical power systems. In addition, the budget appropriation include $4.8 billion in Medicaid funds for Puerto Rico, $39 million to carry out U.S. Customs and Border Protection activities in fiscal year 2018 in Puerto Rico and the USVI, $30.9 million for construction, rehabilitation and acquisition for Job Corps Centers in Puerto Rico, $64 million to repair the U.S. Immigration & Customs Enforcement Service (ICE) facilities in Puerto Rico, USVI, Texas and Florida, $1.37 billion for the Emergency Recovery Program of the Federal Highway Administration of which Puerto Rico will receive 100 percent federal contribution to repair damages from Hurricanes Irma and María, $14 million for the Special Supplemental Nutrition Program for Women, Infants, and Children (known as PAN in Spanish) for infrastructure grants to Puerto Rico and the U.S. Virgin Islands to assist in the repair and restoration of buildings, equipment, technology, and other infrastructure damaged as a consequence of Hurricanes Irma and Maria, and $24 million for the Commodity Assistance Program for the emergency food assistance program to cover necessary expenses related to the consequences of Hurricanes Harvey, Irma, and Maria or due to wildfires in 2017.

*(e)* *Earthquakes*

On January 7, 2020, Puerto Rico was struck by a 6.4 magnitude earthquake causing devastating damages to infrastructure, an island-wide power outage, water shortages and threatening the lives of its people. In order to safeguard the health and public safety of its citizens, the Governor issued executive orders EO 2020-01 and EO 2020-02 declaring a state of emergency to activate the emergency purchasing protocol allowing emergency management agencies to acquire the necessary supplies and essential services to provide a timely and effective response and activating the National Guard to provide support during the emergency management.

In addition, the Oversight Board authorized the utilization of Emergency Reserve funds from fiscal years 2019 and 2020 as needed by the Commonwealth without prior approval of reapportionments through January 31, 2020.

President Trump also approved an emergency declaration allowing direct federal assistance for emergency measures to protect lives, property and public health after the series of earthquakes.

On January 11, 2020, the Governor issued executive order EO 2020-07 authorizing the appropriation of $12 million from the Emergency Fund to be distributed equally between the municipalities of Gúanica, Guayanilla, Peñuelas, Ponce, Utuado and Yauco to be used exclusively for damages and mitigation related to the emergency.

A preliminary assessment of the damages caused by the earthquake and subsequent aftershocks (excluding the May 2, 2020 earthquake discussed below), calculated by the United States Geological Survey, estimated total economic damages ascending to approximately $838 million.

Puerto Rico continues to experience aftershocks that are not expected to stop any time soon. According to a January 29, 2020 report published by the United States Geological Survey, Puerto Rico is at risk of many potentially catastrophic earthquakes in the near term. In fact, on May 2, 2020, an earthquake with a 5.4 magnitude struck Puerto Rico's southern coast. The seismic event, which briefly knocked out power in some areas, hit near the city of Ponce where hundreds of structures, including homes and houses of worship, remain damaged or destroyed from the devastating earthquakes earlier in 2020. These continued earthquakes are a powerful reminder that although the global COVID-19 pandemic is currently controlling the public spotlight, the physical and psychological threat of natural catastrophes has not subsided for Puerto Rico and its residents.

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*(f)* *COVID-19 Pandemic*

    *(i)* *Executive Orders*

On March 11, 2020, the World Health Organization declared the Coronavirus disease caused by a novel coronavirus (COVID-19) as a global pandemic. As a result of the health threat and to contain the virus spread across the island, Governor Vázquez-Garced issued executive order EO 2020-020, on March 12, 2020, declaring a state of emergency in Puerto Rico to concentrate all efforts and implement necessary measures to safeguard the health, well-being and public safety of the citizens of Puerto Rico. The executive order authorizes the Secretary of the DOT and the Executive Director of the PROMB to set up a special budget, from any available funds, including the Emergency Fund, to cover all necessary costs for the containment of the virus throughout the island and sharing information with the municipalities.

On March 15, 2020, the Governor issued executive order EO 2020-023 ordering a curfew for all citizens requiring them to stay at home from 9 p.m. to 5 a.m., allowing them to use the public roads, within this time frame, under specific circumstances such as: (1) purchasing food, pharmaceutical and basic necessity products; (2) keeping medical appointments or visiting a hospital, laboratory, or healthcare facility; (3) commuting, for public and private employees who provide essential services; (4) returning to place of residence from an allowed activity; (5) providing assistance, care, transportation of senior citizens, children, dependents, people with disabilities or requiring medical or professional attention; and (6) visiting financial institutions, provided that all necessary precautions are taken to prevent the risk of spreading the disease. Also, the executive order mandated that any person with reasonable suspicion of being exposed to the COVID-19 remain quarantined for fourteen (14) days, as of the issuance of the order, to prevent them from posing a risk to public health and transmission to non-infected persons. In addition, it ordered the closure of all governmental operations, except for those related to essential services, and the closure of all businesses in Puerto Rico from March 15, 2020, at 6 p.m., until March 30, 2020, unless otherwise provided.

On March 23, 2020, the Governor issued executive order EO 2020-026 to create and establish the Executive Committee of Medical Advice, also known as the COVID-19 Medical Task Force, which will perform functions jointly with the PRDOH and will be in charge of studies, research and development of strategic plans to manage the Coronavirus pandemic emergency and provide a coordinated response to the citizens of Puerto Rico.

On March 27, 2020, the Governor issued executive order EO 2020-028 to activate the National Guard Medical Unit to provide support to the DOH and any other agency providing services during the pandemic emergency.

On March 30, 2020, the Governor issued executive orders EO 2020-029 and EO 2020-030 ordering a lockdown in Puerto Rico. The citizens of Puerto Rico are instructed to stay at their residences the 24 hours of a day for the 7 days of the week from March 31, 2020 to April 12, 2020 and only be allowed to use the public roads, during the hours between 5 a.m. and 7 p.m., under the circumstances previously allowed by EO 2020-023. In addition, the executive order established a transit order, based on the last number of the vehicle license plates, for their citizens to use their cars to buy food, pharmaceutical and basic necessity products, visit financial institutions and receiving any of the allowed services. Moreover, the order provides a description of the services and businesses that are allowed to operate during the emergency; informs its citizens that the collection of tolls fees will be reinstated after March 31, 2020; provides a limited window for payroll related employees to visit their employer's offices to process the payroll payments for the month of March; orders the DNER to shut down all docks to discourage the maritime traffic of recreational boats and authorized the agency to

270

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

establish a surveillance plan of the island's coasts, in coordination with the state and municipal police, to enforce compliance with the instructions provided by the executive order; established a mandatory 14-day quarantine for all passengers arriving to the Luis Muñoz Marin international airport as of the issue date of the executive order.

On April 12, 2020, the Governor issued executive order EO 2020-033 extending the curfew imposed on the citizens of Puerto Rico and the control measures implemented to contain the spread of the COVID-19 through the island until May 3, 2020. On May 1, 2020, the Governor issued executive order EO 2020-038, which extended the curfew and other COVID-19 control measures through May 25, 2020 but also lifted certain business restrictions to allow limited openings of certain industries, shops, and services at specific times while continuing to observe social distancing rules. This initial reopening is limited to primary and specialist doctors and dentists, animal shelters, vehicle repair and parts services, laundromats, elevator inspections, services to ports and airports, air conditioner repair and maintenance services, notary services, and critical infrastructure services, among others. As the Government observes and assesses the results of this limited reopening, it will re-evaluate and further amend business restrictions as necessary to promote economic recovery while preserving the health, welfare and safety of the people of Puerto Rico. On May 21, 2020, the Governor issued executive order EO 2020-041, which extended the curfew until June 15, 2020, and to continue with the gradual reopening of various economic sectors. From June 12 through August 20, 2020 various executive orders have been approved with the intention of minimize the spread of the COVID-19 since a spike in new cases among the population was noted after trying to reopen the economy. Executive order EO-2020-062 issued on August 20, 2020 extended the curfew until September 11, 2020.

*(ii)* *Economic Stabilization Measures*

On March 23, 2020, the Oversight Board agreed with the Commonwealth to provide support to the Puerto Rican people, frontline workers, educators and students, and small businesses. The $787 million Emergency Measure Support Package consists of $500 million that had to be authorized as an incremental appropriation to the fiscal year 2020 General Fund budget in compliance with the budgetary process under PROMESA, $157 million of reapportionment within the current fiscal year 2020 Commonwealth General Fund budget, and $131 million of Federal funds. This Emergency Measures Support Package is in addition to the availability of $160 million from Puerto Rico's Emergency Reserve Fund the Oversight Board had already authorized.

On March 27, 2020, President Trump signed into law the *Coronavirus, Aid, Relief, and Economic Security Act* (CARES Act), commonly known as "Phase Three" of coronavirus economic relief. The CARES Act provides a stimulus to individuals, businesses, and hospitals in response to the economic distress caused by the COVID-19 pandemic; creates a $349 billion loan program for small businesses, including 501(c)(3) non-profits and physician practices; allocates $500 billion for assistance to businesses, states, and municipalities; expands telehealth services in Medicare, including services unrelated to COVID-19 treatments; expands eligibility for unemployment insurance and provides people with an additional $600 per week on top of the unemployment amount determined by each state; expands the Defense Production Act, allowing for a period of two years when the government may correct any shortfall in resources without regard to the current expenditure limit of $50 million; provides the U.S. Secretary of the Treasury with the authority to make loans or loan guarantees to states, municipalities, and eligible businesses and loosens a variety of regulations prior legislation imposed through the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Economic Stabilization Act of 2008, and others; and authorizes supplemental appropriations to help the government respond to COVID-19 pandemic emergency.

271

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*Discretely Presented Component Units*

On September 30, 2016, the Oversight Board designated certain of the Commonwealth's discretely presented component units as covered entities subject to PROMESA. These covered entities include, among others, PRASA, UPR, PREPA, and PRHTA.

Further specific subsequent events for major discretely presented component units follow:

**(a) *PRHTA***

On July 3, 2017, the trustee for the bonds issued by PRHTA notified PRHTA that it failed to make payment on principal and interest amounting to approximately $107.2 million and $116.9 million, respectively, under the 1968 and 1998 Bond Resolutions. Of the total amount defaulted by PRHTA, approximately $76.5 million and $66.7 million of principal and interest, respectively, was paid by the monoline bond insurers under PRHTA's the financial guarantee insurance policies.

During September 2017, Hurricanes Irma and Maria struck the island of Puerto Rico causing widespread damages throughout the island. PRHTA's management is in the process of determining the amount of damages suffered by PRHTA's roads, bridges, mass transportation system and other capital assets. PRHTA's management has been unable to determine the amount of damages, but a preliminary assessment of the physical damages to its roads and bridges amounts to approximately $437 million. PRHTA is also in the process of assessing the physical damages suffered by its urban train system. In addition, Hurricane Maria caused an interruption in PRHTA's electronic toll system and train operation resulting in a loss of revenue. PRHTA had insurance policies in force at the time of both hurricanes and expects to recover part of such damages with assistance to be provided by Federal Emergency Management Agency (FEMA).

On June 5, 2019, the Oversight Board approved a revised six-year fiscal plan to provide a roadmap for transforming not only PRHTA, but also infrastructure across Puerto Rico to catalyze economic growth. PRHTA has four objectives aligned with this goal: (a) transit security and safety projects; (b) improvement of existing transportation infrastructure; (c) completing highway systems; and (d) traffic reduction.

**(b) *PREPA***

(i) *The Energy Bureau Orders*

As further disclose in PREPA's financial statements, on May 1, 2019 PREPA began collecting the Permanent Rate of $0.9948 cents/kWh. In addition, in July 2019, PREPA started billing/collecting rider adjustments ordered on June 27, 2019. Additional revisions of riders and reconciliation processes are conducted on a periodic basis as ordered by the Energy Bureau.

(ii) *Superpriority Post-Petition Revolving Credit Loan Agreement*

On February 22, 2018, PREPA (as borrower) and the Commonwealth (as lender) entered into a Revolving Credit Loan Agreement, in which the Commonwealth agreed to make  a revolving loan to PREPA (the Revolving Credit Loan) consisting of a superpriority post-petition credit facility in an aggregate principal amount not to exceed $300 million available to PREPA until June 30, 2018, unless extended by necessary governmental action by the Commonwealth. The Revolving Credit Loan will bear 5% interest, provided that, in the event the Commonwealth funds or refinances the Revolving Credit Loan with the proceeds of a Commonwealth financing, the interest rate on the such funded or refinanced Revolving Credit Loan will automatically accrue interest at the rate equal to the interest rate on the Revolving Credit Loan not funded or refinanced with any Commonwealth financing. On March 8, 2019 the Revolving Credit Loan was paid off by PREPA.

272

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

*(iii)   Impact of Hurricanes Irma and Maria*

The PREPA electric system sustained significant damage as a result of Hurricanes Irma and Maria. As of June 2020, PREPA had incurred approximately $2.1 billion in restoration and reconstruction expenses and had recovered approximately $1.4 billion from FEMA.

*(iv)   Bond Ratings Downgrade*

On July 6, 2017, Moody's downgraded its rating for PREPA's bonds to Ca from Caa3, with the outlook remaining negative. This latest downgrade reflected PREPA having commenced a proceeding under Title III of PROMESA. On the same date, Fitch also downgraded its rating for PREPA's bonds from C to D. On February 9, 2018 S&P withdrew its D rating and is now not rated (NR).

*(v)   Transformation*

On January 22, 2018, the Governor announced that the Commonwealth will begin the transformation of PREPA. Pursuant to the Fiscal Plan certified August 1, 2018, the transformation and privatization process will take several months in preparation, market process and approvals. There will be a Working Group established between the Governor, the Oversight Board and advisory teams to coordinate and lead the transaction process for the sale of power generation assets and a concession for Transmission and Distribution assets and activities. On June 20, 2018, the Governor signed Act 120, which establishes a legal framework for the disposition, transfer and sale of PREPA's assets, operations, functions and services.

On October 31, 2018, the Governor announced the request for qualifications (RFQ) from interested entities in managing and operating PREPA's electric power transmission and distribution system, pursuant to a long-term public-private partnership agreement.

The objective of the RFQ is to identify qualified respondents that are eligible to receive Request for Proposals (RFP) from the PPPA. On April 16, 2019, the PPPA, in collaboration with PREPA, requested Statements of Qualifications (SOQs) from companies and consortia interested in rehabilitating, upgrading, managing and operating sixteen hydroelectric generating units and their respective turbines, switchyards, dams and reservoirs at nine facilities (each a Project Hydropower Facility and together, the Project Hydropower System) located throughout the island of Puerto Rico, including the administration of federal disaster recovery funding, if any, pursuant to a long term contract. Additional facilities may be included. Responses to the SOQs were due by June 3, 2019. As of June 28, 2019, the date PREPA's basic financial statements were issued, the qualified respondents were engaged with the PPPA in a Q&A process.

On June 22, 2020, the PPPA announced that Luma Energy, LLC (LUMA) has been selected to operate, maintain and modernize the power transmission and distribution (T&D) system of PREPA for fifteen years through a public-private partnership agreement.

LUMA is a Puerto Rico company established by ATCO Ltd. (ATCO), and Quanta Services, Inc. (Quanta). LUMA is also working in conjunction with Innovative Emergency Management, Inc. (IEM) for its federal funding expertise. Selected through a competitive bidding process, LUMA and its primary partner, IEM, are comprised of industry leaders in: (i) delivering safe and reliable energy to millions of customers; (ii) building reliable, sustainable infrastructure; (iii) providing best-in-class craft skilled workforce training; (iv) procuring and implementing federal funds; (v) helping the public and private sectors enhance preparedness, mitigate risks and effectively respond to and recover from disasters; and (vi) managing public-private partnerships.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

Over the course of this public-private partnership, LUMA will provide the following services and benefits:

- increase service reliability to improve customer well-being and foster economic development;

- infuse a safety-focused culture throughout the entire organization to help ensure the safety of LUMA employees and the public;

- deliver a best-in-class customer service organization;

- improve operational efficiency and financial stability to help make electric service more affordable to all customers in the long-term; and

- leverage the breath of its skilled workforce to meet emergency response needs on Puerto Rico when called upon.

(c) *PRASA*

On July 12, 2016, the Governor signed into law Act No. 68-2016, providing for the creation of a new public corporation to be known as the Puerto Rico Aqueduct and Sewer Authority Revitalization Corporation (the PRASARC) as a single-purpose, bankruptcy remote entity. PRASARC is authorized to fix and collect securitization charges for the purpose of issuing bonds, the proceeds of which may be used by PRASA for its Capital Improvement Program (CIP), refinancing of bond anticipation notes, and the cancelation, defeasance and refinancing of its Bonds, among other approved financing costs. Act No. 68-2016 limits the securitization charge which may be imposed by the PRASARC to an amount equivalent to 20% of PRASA's revenues and provides that PRASARC may issue up to a maximum of $900 million in bonds for the purpose of financing the development of the PRASA's CIP. The difference between the $900 million that may be used for the financing of the CIP and the maximum amount that can be financed with the 20% of PRASA's revenues may be used to retire, cancel (defease) or refinance Bonds of the PRASA subject to certain conditions.

On December 18, 2018, a Deed of Trust was entered into, by and among PRIFA, the DNER as successor to EQB, and Banco Popular de Puerto Rico, as trustee of the Clean Water Fund (the Clean Water Fund Deed of Trust) to create a trust to hold all funds related to the Clean Water Fund in a trust separate from the assets of the Commonwealth, its agencies and instrumentalities (the Clean Water Fund Trust). Also, a Deed of Trust was entered into, by and among PRIFA, PRDOH, and Banco Popular de Puerto Rico, as trustee of the Drinking Water Fund (the Drinking Water Fund Deed of Trust), to hold all funds related to the Drinking Water Fund in trust separate from the assets of the Commonwealth, its agencies and instrumentalities (the Drinking Water Fund Trust, and together with the Clean Water Fund Trust, the SRFP Trusts).

During February 2019, the Commonwealth transferred approximately $194.5 million to the SRFP Trusts. Specifically, approximately $141.2 million was transferred to the Clean Water Fund Trust and approximately $53.3 million was transferred to the Drinking Water Fund Trust. These funds were transferred to the SRFP Trusts to safeguard the future viability of the Clean Water State Revolving Funds to ensure continued assistance to communities with critical water and wastewater infrastructure problems.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

On June 25, 2019 the Oversight Board certified its own 6-year fiscal plan for PRASA (the PRASA Fiscal Plan) pursuant to PROMESA and the requirements imposed by the Oversight Board. The PRASA Fiscal Plan includes a series of new initiatives, including, among other things: (i) rate increases; (ii) PPPA projects for commercial services; (iii) increases in government account collections; (iv) reduction in physical water losses; and (v) new federal funding commencing in fiscal year 2020.

*(g)* *UPR*

On August 5, 2016, the trustee of the Desarrollos Universitarios Inc. (DUI)'s AFICA Bonds notified UPR that it failed to make the basic lease payment to the trustee on July 25, 2016 and that a default under the lease agreement with DUI constitutes an event of default under the DUI's AFICA Bonds Trust Agreement. At this time, the trustee did not seek to collect or recover any indebtedness from, enforce any judgment against, obtain possession of, or exercise control over, any property of or from, the Commonwealth or any of its instrumentalities, including DUI and UPR, or exercise any act that was stayed by PROMESA, the Moratorium Act, or any Executive Orders related thereto. For additional information regarding the Moratorium Act, refer to Note 3. On or around the time that the PROMESA Title IV stay expired, the trustee again notified UPR that it was in default for failure to make the outstanding lease payments. In May 2017, UPR made the outstanding lease payments and continued to do so until July 2018. On December 19, 2018, DUI notified to the trustee of its AFICA Bonds that the UPR took the position that its Qualified Operations and Management Agreement (the "Operations and Management Agreement") with the UPR for the operation, maintenance and management of Plaza Universitaria facilities is no longer in existence. According to DUI, the UPR has not made a payment to DUI pursuant to the Operations and Management Agreement since July 2018, which now constitutes an event of default under the lease agreement, the loan agreement, and the trust agreement. On January 3, 2019, the trustee of the DUI's AFICA Bonds notified the UPR that its failure to comply with the terms of the Operations and Management Agreement may constitute a default under the lease agreement, and that a default under the lease agreement could lead to an event of default under the loan agreement, which causes an event of default under the trust agreement. On January 11, 2019, the UPR and FAFAA notified the trustee of the DUI's AFICA Bonds that they dispute several of the statements set forth in the DUI letter, including the obligation of the UPR to satisfy certain of the payments DUI alleges are outstanding under the Operations and Management Agreement. The UPR and FAFAA will meet with DUI to resolve these matters consensually.

On August 19, 2016, the U.S. Bank Trust National Association, in its capacity as Trustee for UPR System Revenue Bonds, filed a civil lawsuit under the United States Court, District of Puerto Rico against the Commonwealth, the Governor, UPR and UPR's President. The motion sought relief from the Title IV Stay under PROMESA for claims related to the Moratorium Act and the executive orders related thereto, and a preliminary injunction against the Commonwealth's diversion and expropriation of pledged revenues, which the trustee alleges constitute collateral supporting UPR system revenue bonds. On May 1, 2017, The Title IV Stay under PROMESA expired. However, pursuant to the standstill agreement (defined below), the lawsuit is not currently active.

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

On June 29, 2017, the Trustee for UPR System Revenue Bonds entered into a standstill agreement (the Standstill Agreement) with UPR, pursuant to which UPR agreed to transfer to a segregated account, for the benefit of the holders of the revenue bonds, certain amounts in respect of revenue pledged on the condition that during the covered period of the Standstill Agreement the trustee would not institute, commence, or continue any legal proceeding against UPR, the Commonwealth or any other agency, instrumentality, or municipality thereof to enforce rights related to the revenue bonds. Under the initial Standstill Agreement, which expired on August 31, 2017, UPR made two payments of $20 million to the segregated account. UPR and the Trustee have agreed to extend the Standstill Agreement on several occasions, and the standstill period is currently set to expire on May 31, 2020. During the time that the Standstill Agreement remains in effect, UPR has agreed to transfer approximately $3.65 million a month (the approximate amount required to cover debt service payments during such period) to a segregated account in exchange for the trustee's agreement to not commence or continue any legal proceeding related to the revenue bonds. Pledged revenues mostly include student's tuition fees.

UPR, like many other institutions in Puerto Rico and across the globe, is facing a significant shock to its systems and operations related to the spread of the COVID-19 virus. In light of the evolving COVID-19 crisis, on April 3, 2020, FAFAA, on behalf of UPR, and the Trustee at the direction of holders of a majority of the total outstanding principal amount of the Bonds, entered into an amendment to the Standstill Agreement deferring (i) the payment for March 2020 to the first to occur of (a) execution of a revised forbearance agreement extending beyond May 29, 2020 or (b) May 25, 2020; and (ii) the April Payment to May 25, 2020.

UPR and FAFAA shall provide the Trustee with detailed plans and specifications for repairing, replacing or reconstructing its property that was damaged or destroyed by Hurricane Maria as these plans are approved. UPR shall deposit all proceeds of casualty insurance policies in a separate account and of direct federal aid (the Repair Funds) in one or more separate accounts at a commercial bank to facilitate the audit of the expenditure of such accounts. All Repair Funds in excess of $1 million shall be used pursuant to a written requisition. UPR will submit the preceding month's requisitions to the Trustee on or before the fifteenth calendar day of each month. Pursuant to the extended letter agreement, the majority bondholders expanded their direction to instruct the Trustee not to call a default during the pendency of the new compliance period if UPR sends to the Trustee copies of the preceding month's requisitions, as set forth above. UPR and FAFAA will provide, or cause relevant agencies to provide, the Trustee with all project requests, progress or other reports provided by FEMA or to any casualty insurance company with respect to the expenditure of the Repair Funds during the preceding month.

On June 5, 2019 the Oversight Board approved a revised UPR fiscal plan. UPR plays an essential role as the Island's engine for economic and workforce development. In many ways, the future of Puerto Rico depends on a vibrant and sustainable UPR. The UPR fiscal plan returns the system to a three campus "hub" model, whereby the footprint of secondary campuses is reduced, and shared services are increasingly relied upon to drive down operating expenditures. Also, the UPR fiscal plan makes every effort to minimize the increase of tuition and fees that could jeopardize affordability and access to quality higher education on the island. It does so by first maximizing opportunities to increase revenue from nontuition sources, such as: (i) federal grants and awards; (ii) intellectual property and patent monetization; and (iii) ancillary service fees for providing training to external institutions. The UPR fiscal plan is currently undergoing a recertification process, which has been delayed due to the ongoing COVID-19 crisis.

On November 29, 2018, FAFAA and GDB announced the consummation of GDB's financial restructuring pursuant to a Qualifying Modification under Title VI of PROMESA (the Qualifying Modification). As a result of the Qualifying Modification, the credit facilities the UPR owed to the GDB (approximately

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Basic Financial Statements

June 30, 2017

$87.3 million, including accrued interest, as of November 29, 2018) were fully offsett on a dollar-for-dollar basis by the amount of the UPR's deposits held at GDB (approximately $94.4 million, including accrued interest, as of November 29, 2018) and such facilities were extinguished. The remainder of UPR's recovery on account of its deposits held at GDB (approximately $7.1 million) will ultimately depend on the recovery received from the Public Entity Trust (PET) on account of the PET Assets.

*(i)   Impact of Hurricanes Irma and Maria*

As a result of Hurricane Maria, the UPR's eleven campuses sustained damages ranging from approximately $130 and $140 million. A portion of the repair costs are expected to be covered by insurance funds and by disaster-relief funds granted by FEMA. The UPR's commercial property and fine arts insurance coverages have an aggregate lost limit of $100 million each. On September 28, 2018, the insurance company was intervened by the Puerto Rico Insurance Commissioner for insolvency under a "rehabilitation order" for the insurance company before the Court of First Instance, Superior Court of San Juan. The order designates the Puerto Rico Insurance Commissioner, as "rehabilitator" and orders him to take possession of the insurer's assets, in protection of the interests of the policyholders with claims, creditors of the insurer and the public in general. On November 8, 2018, the UPR settled the claim with the insurance company for a total consideration of approximately $40 million. On November 15, 2018, the insurance company's businesses were sold to third parties and it is in the process of its liquidation. The UPR has only received advanced funds from the insurance company of approximately $38.8 million and from FEMA of approximately $1 million.

DRA Ex. 242

**REQUIRED SUPPLEMENTARY INFORMATION**

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Required Supplementary Information (Unaudited)

Schedule of Changes in Net Pension Liability for Single-Employer Pension Plans – TRS

(Amounts in thousands)

The Schedule of Changes in the Net Pension Liability for Single-Employer Pension Plans presents the changes in net pension liability for the System of Annuities and Pensions for Teachers (TRS) at June 30, 2017:

|  | | 2017 | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|
| Total pension liability: | | | | | |
| Service cost | $ | 335,237 | 294,692 | 273,754 | 354,159 |
| Interest | | 518,214 | 648,407 | 637,849 | 690,742 |
| Changes in benefit terms | | | | | (599,560) |
| Differences between expected and annual experience | | 131,134 | 43,202 | 88,544 | 169,851 |
| Changes in assumptions | | (1,964,234) | 1,621,712 | 1,235,988 | 83,560 |
| Benefit payments, including refunds of contributions | | (768,279) | (750,172) | (736,107) | (683,698) |
| Net change in total pension liability | | (1,747,928) | 1,857,841 | 1,500,028 | 15,054 |
| Total pension liability – beginning | | 18,165,572 | 16,307,731 | 14,807,703 | 14,792,649 |
| Total pension liability – ending (a) | | 16,417,644 | 18,165,572 | 16,307,731 | 14,807,703 |
| Plan fiduciary net position: | | | | | |
| Contributions – employers, net of provision | | 270,302 | 213,724 | 194,541 | 189,367 |
| Contributions – participating employees | | 95,217 | 99,557 | 105,120 | 115,461 |
| Contributions – transfers | | 644 | 1,804 | 2,345 | 4,131 |
| Net investment income | | 36,489 | 45,060 | 59,921 | 190,023 |
| Other income | | 1,925 | 1,350 | 1,057 | 1,416 |
| Benefit payments, including refunds of member contributions | | (768,279) | (751,245) | (736,300) | (683,698) |
| Administrative expenses | | (14,787) | (25,876) | (19,382) | (19,803) |
| Net change in plan fiduciary net position | | (378,489) | (415,626) | (392,698) | (203,103) |
| Plan fiduciary net position – beginning | | 895,455 | 1,311,081 | 1,703,779 | 1,906,882 |
| Plan fiduciary net position – ending (b) | | 516,966 | 895,455 | 1,311,081 | 1,703,779 |
| Employer's net pension liability – ending (a)-(b) | $ | 15,900,678 | 17,270,117 | 14,996,650 | 13,103,924 |
| Plan fiduciary net position as a percentage of the total pension liability | | 3.15% | 4.93 % | 8.04 % | 11.51 % |
| Covered-employee payroll | $ | 1,033,224 | 1,101,896 | 1,127,500 | 1,171,154 |
| Employer's net pension liability as a percentage of covered-employee payroll | | 1538.94% | 1567.31% | 1330.08% | 1118.89% |

Notes:
   The Commonwealth's net pension liability as of June 30, 2017 was measured as of June 30, 2016, and the total pension
   liability used to calculate the net pension liability was determined by an actuarial valuation with beginning-of-year census data
   as of July 1, 2015 that was updated to roll forward the total pension liability to June 30, 2016 and assuming no gains or losses.

   Schedules are intended to show information for ten years. Additional years will be displayed as they become available.

See accompanying notes to required supplementary information and independent auditors' report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Required Supplementary Information (Unaudited)

Schedule of Changes in Net Pension Liability for Single-Employer Pension Plans – JRS

(Amounts in thousands)

The Schedule of Changes in the Net Pension Liability for Single-Employer Pension Plans presents the changes in net pension liability for the Retirement System for the Judiciary of the Commonwealth of Puerto Rico (JRS) at June 30, 2017:

|  | | 2017 | 2016 | 2015 | 2014 |
|---|---|---|---|---|---|
| Total pension liability: | | | | | |
| Service cost | $ | 25,917 | 19,155 | 16,375 | 16,764 |
| Interest | | 19,018 | 22,625 | 21,861 | 22,620 |
| Changes in benefit terms | | (408) | — | — | — |
| Differences between expected and annual experience | | 10,872 | (2,826) | (6,970) | (1,658) |
| Changes in assumptions | | (66,464) | 51,960 | 72,805 | 7,601 |
| Benefit payments, including refunds of contributions | | (25,405) | (24,560) | (23,134) | (22,667) |
| Net change in total pension liability | | (36,470) | 66,354 | 80,937 | 22,660 |
| Total pension liability – beginning | | 651,666 | 585,312 | 504,375 | 481,715 |
| Total pension liability – ending (a) | | 615,196 | 651,666 | 585,312 | 504,375 |
| Plan fiduciary net position: | | | | | |
| Contributions – employers, net of provision | | 11,973 | 15,223 | 12,337 | 11,992 |
| Contributions – participating employees | | 3,084 | 3,190 | 3,676 | 3,804 |
| Net investment income | | 2,074 | 1,751 | 899 | 9,713 |
| Other income | | 310 | — | 873 | 59 |
| Benefit payments, including refunds of member contributions | | (25,405) | (24,560) | (23,134) | (22,667) |
| Administrative expenses | | (614) | (946) | (546) | (2,150) |
| Net change in plan fiduciary net position | | (8,578) | (5,342) | (5,895) | 751 |
| Plan fiduciary net position – beginning | | 34,830 | 40,172 | 46,067 | 45,316 |
| Plan fiduciary net position – ending (b) | | 26,252 | 34,830 | 40,172 | 46,067 |
| Employer's net pension liability – ending (a)-(b) | $ | 588,944 | 616,836 | 545,140 | 458,308 |
| Plan fiduciary net position as a percentage of the total pension liability | | 4.27% | 5.36 % | 6.86 % | 9.17 % |
| Covered-employee payroll | $ | 31,829 | 32,204 | 31,917 | 31,707 |
| Employer's net pension liability as a percentage of covered-employee payroll | | 1850.34% | 1915.40% | 1707.99% | 1445.45% |

See accompanying notes to required supplementary information and independent auditors' report.

**COMMONWEALTH OF PUERTO RICO**

Required Supplementary Information (Unaudited)

Schedule of the Proportionate Share of the Net Pension Liability of a

Cost-Sharing Multiple-Employer Pension Plan – ERS

(Amounts in thousands)

The following Schedule of the Proportionate Share of the Net Pension Liability presents the proportionate share of the pension amounts of the Commonwealth for the Employees' Retirement System of the Government of the Commonwealth of Puerto Rico (ERS), a Cost-Sharing Multiple-Employer Pension Plan, at June 30,:

| | | ERS | | |
|---|---|---|---|---|
| | | 2017 | 2016 | 2015 |
| Commonwealth's proportion of the net pension liability | | 67.56 % | 65.87 % | 64.74 % |
| Commonwealth's proportionate share of the net pension liability | $ | 25,467,704 | 21,960,015 | 19,512,798 |
| Commonwealth's covered-employee payroll | | 2,259,464 | 2,186,540 | 2,258,946 |
| Commonwealth's proportionate share of the net pension liability as a percentage of its covered-employee payroll | | 1,127.16 % | 1,000.32 % | 864.00 % |
| Plans fiduciary net position as a percentage of the total pension liability | | (3.47) | (2.05) | 0.27 |

Notes:

The Commonwealth's net pension liability as of June 30, 2017 was measured as of June 30, 2016, and the total pension liability used to calculate the net pension liability was determined by an actuarial valuation with beginning-of-year census data as of July 1, 2015 that was updated to roll forward the total pension liability to June 30, 2016 and assuming no gains or losses.

Schedules are intended to show information for ten years. Additional years will be displayed as they become available.

See accompanying notes to required supplementary information and independent auditors' report.

**COMMONWEALTH OF PUERTO RICO**

Required Supplementary Information (Unaudited)

Schedule of Employers' Contributions for All Pension Plans

(Amounts in thousands)

| | | 2017 (measurement date June 30, 2016) | 2016 (measurement date June 30, 2015) | 2015 (measurement date June 30, 2014) |
|---|---|---|---|---|
| **ERS:** | | | | |
| Statutorily required contributions | $ | 515,234 | 535,664 | 492,972 |
| Contributions (a) | | 497,019 | 460,659 | 415,933 |
| Contribution deficiency | $ | 18,215 | 75,005 | 77,039 |
| Covered-employee payroll (b) | $ | 2,186,540 | 2,258,946 | 2,307,688 |
| Contributions as a percentage of covered-employee payroll (a)/(b) | | 22.73% | 20.39% | 18.02 % |
| **TRS:** | | | | |
| Statutorily required contributions | $ | 213,675 | 194,541 | 189,367 |
| Contributions (a) | | 213,675 | 194,541 | 189,367 |
| Contribution deficiency | $ | — | — | — |
| Covered-employee payroll (b) | $ | 1,101,896 | 1,127,500 | 1,171,154 |
| Contributions as a percentage of covered-employee payroll (a)/(b) | | 19.40 % | 17.25 % | 16.17 % |
| **JRS:** | | | | |
| Statutorily required contributions | $ | 26,823 | 24,437 | 23,592 |
| Contributions (a) | | 15,223 | 12,337 | 11,992 |
| Contribution deficiency | $ | 11,600 | 12,100 | 11,600 |
| Covered-employee payroll (b) | $ | 32,204 | 31,917 | 31,707 |
| Contributions as a percentage of covered-employee payroll (a)/(b) | | 47.27% | 38.65 % | 37.82 % |

Notes:

The contribution requirement to each retirement system is established by law and is not actuarially determined.

Schedule is intended to show information for ten years. Additional years will be displayed as they become available.

See accompanying notes to required supplementary information and independent auditors' report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Required Supplementary Information (Unaudited)

Schedule of Funding Progress for the Postemployment Healthcare Plans

(Amounts in thousands)

The Schedule of Funding Progress for the Commonwealth Postemployment Healthcare Plans presents the results of the other than pension postemployment benefits (OPEB) valuations for the past ten years. The schedule provides a ten year information trend about whether the actuarial values of plan assets are increasing or decreasing over time relative to the actuarial accrued liabilities for benefits. All actuarially determined information has been calculated in accordance with actuarial assumptions and methods reflected in the actuarial valuations as of the indicated actuarial valuation date.

**ERS:**

| Actuarial Valuation Date (1) | Actuarial Value of Assets | Actuarial Accrued Liability (AAL) | Unfunded Actuarial Accrued Liability (UAAL) | Funded Ratio | Covered Payroll | UAAL as a Percentage of Covered Payroll |
|---|---|---|---|---|---|---|
| June 30, 2017 | $ — | 1,138,309 | 1,138,309 | —% | $ 3,344,197 | 34% |
| June 30, 2016 | — | 1,349,503 | 1,349,503 | — | 3,344,382 | 40 |
| June 30, 2015 | — | 1,428,788 | 1,428,788 | — | 3,319,280 | 43 |
| June 30, 2014 | — | 1,438,475 | 1,438,475 | — | 3,489,096 | 41 |
| June 30, 2013 | — | 1,482,879 | 1,482,879 | — | 3,489,096 | 43 |
| June 30, 2012 | — | 2,120,970 | 2,120,970 | — | 3,570,339 | 59 |
| June 30, 2011 | — | 1,758,389 | 1,758,389 | — | 3,666,402 | 48 |
| June 30, 2010 | — | 1,699,373 | 1,699,373 | — | 3,818,332 | 45 |
| June 30, 2009 | — | 1,633,159 | 1,633,159 | — | 4,292,552 | 38 |
| June 30, 2008 | — | N/D | N/D | — | N/D | N/D |

**TRS:**

| Actuarial Valuation Date (1) | Actuarial Value of Assets | Actuarial Accrued Liability (AAL) | Unfunded Actuarial Accrued Liability (UAAL) | Funded Ratio | Covered Payroll | UAAL as a Percentage of Covered Payroll |
|---|---|---|---|---|---|---|
| June 30, 2017 | $ — | 501,655 | 501,655 | —% | 1,033,224 | 49% |
| June 30, 2016 | — | 523,300 | 523,300 | — | 1,101,896 | 48 |
| June 30, 2015 | — | 548,518 | 548,518 | — | 1,127,500 | 49 |
| June 30, 2014 | — | 543,205 | 543,205 | — | 1,171,154 | 46 |
| June 30, 2013 | — | 792,875 | 792,875 | — | 1,248,674 | 64 |
| June 30, 2012 | — | 797,332 | 797,332 | — | 1,292,975 | 62 |
| June 30, 2011 | — | 706,069 | 706,069 | — | 1,320,400 | 54 |
| June 30, 2010 | — | 694,230 | 694,230 | — | 1,370,344 | 51 |
| June 30, 2009 | — | 750,382 | 750,382 | — | 1,418,304 | 53 |
| June 30, 2008 | — | N/D | N/D | — | N/D | N/D |

**JRS:**

| Actuarial Valuation Date (1) | Actuarial Value of Assets | Actuarial Accrued Liability (AAL) | Unfunded Actuarial Accrued Liability (UAAL) | Funded Ratio | Covered Payroll | UAAL as a Percentage of Covered Payroll |
|---|---|---|---|---|---|---|
| June 30, 2017 | $ — | 7,429 | 7,429 | —% | 31,829 | 23% |
| June 30, 2016 | — | 6,985 | 6,985 | — | 32,204 | 22 |
| June 30, 2015 | — | 6,917 | 6,917 | — | 31,917 | 22 |
| June 30, 2014 | — | 6,540 | 6,540 | — | 31,707 | 21 |
| June 30, 2013 | — | 6,705 | 6,705 | — | 32,138 | 21 |
| June 30, 2012 | — | 6,592 | 6,592 | — | 33,066 | 20 |
| June 30, 2011 | — | 5,810 | 5,810 | — | 31,811 | 18 |
| June 30, 2010 | — | 5,808 | 5,808 | — | 32,061 | 18 |
| June 30, 2009 | — | 5,643 | 5,643 | — | 30,587 | 19 |
| June 30, 2008 | — | N/D | N/D | — | N/D | N/D |

N/D=Not determined.

(1) The System's OPEB funded status as of June 30, 2017 and 2016 were determined by the actuarial valuation at beginning of year that was updated to roll forward the funded status to June 30, 2017 and 2016 and assuming no liability gains or losses. Prior year actuarial valuations were made using end-of-year census data.

See accompanying notes to required supplementary information and independent auditors' report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Required Supplementary Information (Unaudited)

Schedule of Employers' Contributions for the  Postemployment Healthcare Plans

(Amounts in thousands)

The Schedule of Employers' Contributions for the Commonwealth Postemployment Healthcare Plans provides information about the annual required contributions (ARC) for OPEB and the extent to which contributions were made to cover the ARC for OPEB for the past ten years. The ARC is the annual required contribution for the year calculated in accordance with certain parameters, which include actuarial methods and assumptions.

| | ERS | | TRS | | JRS | |
|---|---|---|---|---|---|---|
| Fiscal Year Ended (1) | Annual Required Contribution | Percentage Contributed | Annual Required Contribution | Percentage Contributed | Annual Required Contribution | Percentage Contributed |
| June 30, 2017 | 105,859 | 86% | 37,490 | 97% | 1,023 | 33% |
| June 30, 2016 | 107,739 | 87 | 38,049 | 99 | 923 | 34 |
| June 30, 2015 | 103,878 | 94 | 36,292 | 104 | 847 | 36 |
| June 30, 2014 | 88,508 | 115 | 46,403 | 77 | 684 | 44 |
| June 30, 2013 | 154,999 | 59 | 45,669 | 75 | 643 | 45 |
| June 30, 2012 | 133,654 | 71 | 41,069 | 84 | 554 | 53 |
| June 30, 2011 | 129,395 | 73 | 39,925 | 84 | 529 | 48 |
| June 30, 2010 | 128,294 | 69 | 42,487 | 71 | 488 | 53 |
| June 30, 2009 | 111,683 | 77 | 38,015 | 77 | 425 | 55 |
| June 30, 2008 | 110,650 | 72 | 36,836 | 77 | 408 | 55 |

(1) The System's annual required contributions for the years ended June 30, 2017 and 2016 were determined by the actuarial valuation at beginning of year that was updated to roll forward the funded status to June 30, 2017 and 2016 and assuming no liability gains or losses. Prior year actuarial valuations were made using end-of-year census data.

See accompanying notes to required supplementary information and independent auditors' report.

**COMMONWEALTH OF PUERTO RICO**

Required Supplementary Information – Unaudited

Schedule of Revenue and Expenditures – Budget and Actual –

Budgetary Basis – General Fund

Year ended June 30, 2017

(In thousands)

|  | | Original budget | Amended budget | Actual |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Income taxes | $ | 4,288,000 | 4,288,000 | 4,235,961 |
| Sales and use taxes | | 1,608,000 | 1,608,000 | 1,692,373 |
| Excise taxes | | 2,679,000 | 2,679,000 | 2,897,994 |
| Property taxes | | 5,000 | 5,000 | 7,223 |
| Other taxes | | 24,000 | 24,000 | 10,355 |
| Charges for services | | 90,000 | 90,000 | 92,427 |
| Revenue from component units | | 18,000 | 18,000 | 18,832 |
| Intergovernmental | | 206,000 | 206,000 | 187,518 |
| Other | | 62,000 | 62,000 | 60,118 |
| Total revenue | | 8,980,000 | 8,980,000 | 9,202,801 |
| **Expenditures – current:** | | | | |
| General government | | 1,606,454 | 1,602,679 | 1,325,476 |
| Public safety | | 1,969,808 | 1,942,761 | 1,930,593 |
| Health | | 1,392,322 | 1,410,568 | 1,382,233 |
| Public housing and welfare | | 431,179 | 423,170 | 400,758 |
| Education | | 2,689,326 | 2,698,976 | 2,752,561 |
| Economic development | | 481,331 | 467,600 | 442,641 |
| Intergovernmental | | 416,580 | 441,246 | 391,361 |
| Total expenditures | | 8,987,000 | 8,987,000 | 8,625,623 |
| Surplus of revenue over expenditures | | (7,000) | (7,000) | 577,178 |
| **Other financing sources:** | | | | |
| Transfer in from Lotteries Fund | | 120,000 | 120,000 | 75,515 |
| Total other financing sources | | 120,000 | 120,000 | 75,515 |
| Excess of revenue and other financing sources over expenditures and other financing uses | $ | 113,000 | 113,000 | 652,693 |

See accompanying notes to required supplementary information and independent auditors' report.

284

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Required Supplementary Information (Unaudited)

June 30, 2017

**(1) Schedule of Funding Progress – Postemployment Health Care Plans**

The schedule of funding progress provides information about the funded status of the Post-Employment Healthcare Plans and the progress being made in accumulating sufficient assets to pay benefits when due. The information was obtained from the last actuarial report as of June 30, 2017.

**(2) Schedule of Employers' Contributions – Postemployment Health Care Plans**

The schedule of employers' contributions provides information about the annual required contributions (ARC) and the extent to which contributions were made to cover the ARC. The ARC is the annual required contribution for the year calculated in accordance with certain parameters, which include actuarial methods and assumptions.

The Retirement Systems' and the Post-Employment Healthcare Plans' schedule of employers' contributions includes both Commonwealth and participating employees contributions because ultimately the Commonwealth's contributions should cover any deficiency between the participating employees' contributions, pension benefits, and the Retirement Systems' administration costs.

The information was obtained from the last actuarial report as of June 30, 2017.

**(3) Changes of Benefit Terms and Assumptions**

**(a) ERS**

For purposes of the 2016 actuarial valuation of ERS, the projected mortality improvement scale was updated from Scale MP-2015 to Scale MP-2016, which was published by the Society of Actuaries in October 2016.

The investment return assumption of 6.55% per year does not reflects any change for GASB Statement No. 67 purposes. The 6.55% assumption reflects the asset allocation for the non-loan portion of the portfolio that was adopted by the ERS during the year ended December 31, 2013 and the capital market assumptions as of June 30, 2016. Please note that this new interest rate assumption of 6.55% per year is equal to the highest debt service of the Pension Obligation Bonds of the ERS. The debt on the Pension Obligations Bonds ranges from 5.85% to 6.55% In addition, the assumption reflects that loans to members comprise approximately 20% of the portfolio and have an approximate return of 9.1% with no volatility.

**(b) JRS**

The projected mortality improvement scale was updated from Scale MP-2015 to Scale MP-2016, which was published by the Society of Actuaries in October 2016.

The investment return assumption was increased from 5.50% per year in fiscal year 2015 to 5.70% per year in fiscal year 2016. Accordingly, the assumed investment return on the defined contribution hybrid program contribution account (80% of the net investment return assumption) was increased from 4.40% per year in fiscal year 2015 to 4.56% per year in fiscal year 2016.

**(c) TRS**

The projected mortality improvement scale was updated from Scale MP-2015 to Scale MP-2016, which was published by the Society of Actuaries in October 2016.

The valuation reflects an investment return assumption of 5.85% as of June 30, 2016.

The index selected for the System is the Bond Buyer General Obligation 20-Bond Municipal Bond Index. The index rate decreased from 3.80% as of June 30, 2015 to 2.85% as of June 30, 2016. Therefore, the discount rates used to determine the annual required contributions and the total pension liability

285

**COMMONWEALTH OF PUERTO RICO**

Notes to Required Supplementary Information (Unaudited)

June 30, 2017

decreased from 3.82% at June 30, 2015 to 2.86% at June 30, 2016, in accordance with GASB Statement No. 67.

**(4) Budgetary Control**

The Governor is constitutionally required to submit to the Legislature an annual balanced budget of the Commonwealth for the ensuing fiscal year. The annual budget is prepared by the PROMB and takes into consideration the advice provided by the PRPB (annual economic growth forecasts and four-year capital improvements plan), the DOT (revenue estimates, accounting records, and the comprehensive annual financial report), FAFAA (the fiscal agent), and other governmental offices and agencies. Section 7 of Article VI of the Constitution of Puerto Rico provides that "the appropriations made for any fiscal year shall not exceed the total revenue, including available surplus, estimated for the said fiscal year, unless the imposition of taxes sufficient to cover the said appropriations is provided by law."

The annual budget, which is developed utilizing elements of program budgeting, includes an estimate of revenue and other resources for the ensuing fiscal year under: (i) laws existing at the time the budget is submitted and (ii) legislative measures proposed by the Governor and submitted with the proposed budget, as well as the Governor's recommendations as to appropriations that in his judgment are necessary, convenient, and in conformity with the four year capital improvements plan adopted by the PRPB.

The Legislature may amend the budget submitted by the Governor but may not increase any items so as to cause a deficit without imposing taxes or identifying other sources of revenue to cover such deficit. Upon passage by the Legislature, the budget is referred to the Governor who may decrease or eliminate any line item but may not increase or insert any new line item in the budget. The Governor may also veto the budget in its entirety and return it to the Legislature with his objections. The Legislature, by two-thirds majority in each house, may override the Governor's veto. If a budget is not adopted prior to the end of the fiscal year, the annual budget for the preceding fiscal year, as approved by the Legislature and the Governor, is automatically renewed for the ensuing fiscal year until a new budget is approved by the Legislature and the Governor. This permits the Commonwealth to continue making payments for its operating and other expenses until the new budget is approved. The appropriated annual budget for fiscal year 2017 (including other financing uses) amounted to approximately $9 billion, including several special budget appropriations to the General Fund made by the Legislature throughout the year which amounted to approximately $4.8 billion.

The PROMB has authority to amend the budget within a department, agency, or government unit without legislative approval.

PROMESA has significantly changed the approval process for the Commonwealth's general fund budget. Starting with fiscal year 2018 the process to approve the budget will be controlled by the Oversight Board. The Oversight Board will submit to the Governor a notice delineating a schedule for the development, submission, approval, and certification of proposed budgets to be submitted by the Governor and the Legislature to the Oversight Board for its approval. The Oversight Board, at its discretion, would be responsible for determining the number of fiscal years to be covered by the budget submission.

The Oversight Board would be responsible for submitting revenue estimates for the period covered by the proposed budgets to the Governor and Legislature for use by the Governor in developing budgets to be submitted for review and approval to the Oversight Board. The bill outlines three means by which a proposed budget could be approved.

- **Budget Submission by Governor**. If the Oversight Board determines that the proposed budget is compliant with the applicable fiscal plan, then the bill would allow the Oversight Board to approve the proposed budget and submit it to the Legislature for approval. If the proposed budget is found to be

286

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Required Supplementary Information (Unaudited)

June 30, 2017

non-compliant with the applicable fiscal plan, then the bill would allow the Oversight Board to issue a "notice of violation" which would include recommendations to correct the deficiencies.

- **Oversight Board Budget**. Should the Governor fail to submit a compliant budget then the bill would permit the Oversight Board to develop and submit to the Governor and Legislature a revised compliant budget for the territory, and only to the Governor in the case of a territorial instrumentality.

- **Budget Adopted by Legislature.** The bill would direct the Legislature to adopt a proposed budget for submission to the Oversight Board. If the proposed budget is found to be non-compliant with the applicable fiscal plan, then the Oversight Board may issue a "notice of violation" which includes recommendations to correct the deficiencies.

- **Oversight Board Budget**. Should the Legislature fail to submit a compliant budget then the bill would allow the Oversight Board to develop and submit to the Governor and Legislature a revised compliant budget for the territory.

- **Certification of Budget as Compliant.** Under provisions of the bill, if the Governor and Legislature approve a territorial budget that is compliant, or if the Governor develops a budget for the Commonwealth that is compliant with the applicable fiscal plan then the Oversight Board could issue a certificate of compliance. If the Governor and Legislature fail to develop and approve a budget that would be compliant, then the Oversight Board could develop and submit a budget to the Governor and Legislature and such budget would be deemed approved by the Governor and the Legislature. In the case of a territorial instrumentality, only the Governor could submit a proposed budget for review by the Oversight Board.

- **Budget jointly developed by the Oversight Board, the Governor, and Legislature**. The bill would allow the Oversight Board, the Governor, and the Legislature to work collaboratively to develop a consensus budget for the territorial government. In the case of a territorial instrumentality, the bill would allow the Oversight Board and the Governor to work collaboratively to develop a budget.

For budgetary purposes, encumbrance accounting is used. The encumbrances (that is, purchase orders and contracts) are considered expenditures when a commitment is made. For U.S. GAAP reporting purposes, encumbrances outstanding at year-end are reported within the restricted, committed, assigned, and unassigned fund balance classifications and do not constitute expenditures or liabilities on a U.S. GAAP basis because the commitments will be honored during the subsequent year. The unencumbered balance of any appropriation of the General Fund at the end of the fiscal year lapses immediately. Appropriations, other than in the General Fund, are continuing accounts for which the Legislature has authorized that an unspent balance from the prior year be carried forward and made available for current spending. In addition, for budgetary purposes, revenue is recorded when cash is received.

During any fiscal year in which the resources available to the Commonwealth are insufficient to cover the appropriations approved for such year, the Governor may take administrative measures to reduce expenses and submit to both houses of the Legislature a detailed report of any adjustment necessary to balance the budget, or make recommendations to the Legislature for new taxes or authorize borrowings under provisions of existing legislation or take any other necessary action to meet the estimated deficiency. Any such proposed adjustments must give effect to the "priority norms" established by law for the disbursement of public funds in the following order of priority: (i) the payment of the interest on and amortization requirements for public debt (Commonwealth general obligations and guaranteed debt for which the Commonwealth's guarantee has been exercised); (ii) the fulfillment of obligations arising out of legally binding contracts, court decisions on eminent domain, and other unavoidable obligations to protect the name, credit, and full faith of the Commonwealth; (iii) current expenditures in the areas of health, protection of persons and property, education, welfare, and retirement systems; and (iv) all other purposes.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Notes to Required Supplementary Information (Unaudited)

June 30, 2017

In addition, the Legislature may direct that certain revenue be retained and made available for spending within a specific appropriation account. Generally, expenditures may not exceed the level of spending authorized for an individual department. However, the Commonwealth is statutorily required to pay debt service, regardless of whether such amounts are appropriated. Appropriations are enacted for certain departments, agencies, and government units included in the General Fund.

For these funds, a schedule of revenue and expenditures – budget and actual budgetary basis – General Fund is included. Appropriations for capital projects are made for each bond issue and the authorization continues for the expected construction period.

The PROMB has the responsibility to ensure that budgetary spending control is maintained on an individual department basis. The PROMB may transfer part or all of any unencumbered balance within a department to another department subject to legislative approval. Budgetary control is exercised through the Puerto Rico Integrated Financial Accounting System (PRIFAS). PRIFAS ensures that encumbrances or expenditures are not processed if they exceed the department's total available spending authorization, which is considered its budget. The legal level of budgetary control is at the individual department level for General Fund expenditures, principal and interest due for the year for the debt service fund, and by bond authorization for capital expenditures.

Notwithstanding the foregoing, the enactment of PROMESA (as discussed in Note 3) created an Oversight Board with the power to review and approve budgets for the Commonwealth and its instrumentalities. Under PROMESA, a fiscal plan for each covered entity must be certified by the Oversight Board before the Commonwealth can propose any fiscal year budgets. All budgets proposed after the enactment of PROMESA must be certified by the Oversight Board as being consistent with the applicable certified fiscal plan. For additional information on the budget certification process under PROMESA, refer to Note 3.

**(5)  Statutory (Budgetary) Accounting**

The Commonwealth's budget is adopted in accordance with a statutory basis of accounting, which is not in accordance with U.S. GAAP. Revenue is generally recognized when cash is received. Income tax revenues are reduced for the amount of income tax refunds paid during the year and claimed but unpaid at year end. Short-term and long-term borrowings may be used to finance budgetary excess of expenditures over revenue. Expenditures are generally recorded when the related expenditure is incurred or encumbered. Encumbrances generally lapse the year following the end of the fiscal year when the encumbrance was established, as established by Act No. 123-2001. Unencumbered appropriations lapse at year-end. Amounts required for settling claims and judgments against the Commonwealth and certain other liabilities are not recognized until they are encumbered or otherwise processed for payment.

Under the statutory basis of accounting, the Commonwealth uses encumbrance accounting to record the full amount of purchase orders, contracts, and other commitments of appropriated resources as deductions from the appropriation prior to actual expenditure. In the governmental funds, encumbrance accounting is a significant aspect of budgetary control.

The schedule of revenue and expenditures – budget and actual – budgetary basis – General Fund only presents the information for the General Fund for which there is a legally adopted budget, as required by U.S. GAAP. For a reconciliation of the statement of revenue and expenditures – budget and actual – budgetary basis – General Fund with the statement of revenue, expenditures, and changes in fund balances (deficit) for the General Fund, refer to Note 6 to Required Supplemental Information. The Special Revenue Funds do not have a legally mandated budget.

**COMMONWEALTH OF PUERTO RICO**

Notes to Required Supplementary Information (Unaudited)

June 30, 2017

**(6) Budget/U.S. GAAP Reconciliation**

Because accounting principles applied for purposes of developing data on a budgetary basis differ significantly from those used to present financial statements in conformity with U.S. GAAP, a reconciliation of entity, timing, and basis differences in the excess (deficiency) of revenue and other financing sources over expenditures and other financing uses for the year ended June 30, 2017 is presented below for the General Fund (in thousands):

| | | |
|---|---|---:|
| Excess of revenue and other financing sources under expenditures and other financing uses – budgetary basis | $ | 652,693 |
| Entity differences–excess of revenues and other financing sources over expenditures and other financing uses for: | | |
| Nonbudgeted funds | | 692,996 |
| Inclusion of agencies with independent treasuries | | (295) |
| Timing differences: | | |
| Adjustment for encumbrances | | 208,925 |
| Current year expenditures against prior year encumbrances | | (176,132) |
| Basis of accounting differences: | | |
| Revenue accrual adjustment | | (98,661) |
| Expenditures accrual adjustments | | (141,659) |
| Excess of revenue and other financing sources over expenditures and other financing uses – U.S. GAAP basis | $ | 1,137,867 |

See accompanying independent auditors' report.

DRA Ex. 242

**COMBINING AND INDIVIDUAL FUND
FINANCIAL STATEMENTS AND SCHEDULES**

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

General Fund

Year ended June 30, 2017

(In thousands)

The General Fund is the primary operating fund of the Commonwealth. The General Fund is used to account for and report all financial resources received and used for those services traditionally provided by a government, which are not required legally or by sound financial management to be accounted for in another fund. Included are transactions for services such as general government, public safety, health, public housing and welfare, education, and economic development. Following is the supplemental schedule of expenditures – budget and actual – General Fund (budgetary basis).

290

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Supplemental Schedule of Expenditures by Agency – Budget and Actual
Budgetary Basis – General Fund

Year ended June 30, 2017

(In thousands)

| | Original budget | Amended budget | Actual |
|---|---|---|---|
| Expenditures – Current: | | | |
| General government: | | | |
| Senate of Puerto Rico | $  41,704 | 43,112 | 43,112 |
| House of Representatives of Puerto Rico | 47,696 | 50,362 | 50,361 |
| Comptroller's Office | 39,690 | 39,690 | 39,690 |
| Governor's Office | 20,567 | 20,891 | 16,828 |
| Office of Management and Budget (1) | 243,131 | 309,391 | 58,783 |
| Planning Board | 11,601 | 11,900 | 12,597 |
| Department of State | 5,681 | 6,610 | 4,624 |
| Department of the Treasury (1) | 201,527 | 239,447 | 214,263 |
| Central Office of Personnel Administration | 3,580 | 3,551 | 3,511 |
| Commonwealth Elections Commission | 73,116 | 72,168 | 70,093 |
| Federal Affairs Administration | 3,336 | 3,957 | 3,630 |
| General Services Administration | 3,765 | 3,765 | 5,664 |
| Municipal Complaints Hearing Commission | 9,835 | 11,766 | 12,505 |
| Civil Rights Commission | 1,089 | 1,087 | 1,040 |
| Office of the Citizen's Ombudsman | 4,000 | 4,000 | 4,061 |
| Government Ethics Board | 9,278 | 9,278 | 9,278 |
| Legislative Affairs Office | 36,393 | 13,013 | 13,013 |
| Office of the Superintendent of the Capitol | 31,518 | 29,174 | 29,174 |
| Comptroller's Special Reports Joint Commission | 662 | 812 | 743 |
| Legislative Donation Commission | 2,747 | 24,247 | 22,282 |
| Corporation "Enlace" Caño Martín Peña | 6,274 | 6,258 | 6,258 |
| Puerto Rico Statistics Institute | 2,292 | 2,165 | 2,135 |
| Permits Management Office | 11,038 | 10,007 | 5,649 |
| Employees' Retirement System of the Government of the Commonwealth of Puerto Rico | 492,788 | 401,962 | 425,784 |
| Financial Oversight and Management Board for Puerto Rico | — | 31,000 | 27,000 |
| Puerto Rico System of Annuities and Pensions for Teachers | 206,290 | 156,290 | 156,290 |
| Public Buildings Authority | 90,200 | 90,200 | 80,605 |
| Office of Elections Comptroller | 3,574 | 3,570 | 3,584 |
| Appellative Board of the Personnel System Administration | 3,082 | 3,006 | 2,939 |
| Total general government | 1,606,454 | 1,602,679 | 1,325,476 |
| Public safety: | | | |
| Puerto Rico General Court of Justice | 323,967 | 323,967 | 322,885 |
| Civil Defense | 7,898 | 7,663 | 7,741 |
| Commission of Investigation, Processing and Appeals Board | 407 | 398 | 352 |
| Department of Justice | 166,500 | 161,361 | 169,375 |
| Puerto Rico Police Department | 817,029 | 812,783 | 792,301 |
| Puerto Rico Firefighters Corps | 65,066 | 64,511 | 65,842 |
| Puerto Rico National Guard | 11,451 | 10,985 | 10,900 |
| Public Service Commission | 5,073 | 4,922 | 4,888 |
| Consumer Affairs Department | 7,192 | 6,995 | 7,361 |
| Natural Resources Administration | 29,879 | 29,786 | 29,766 |
| Office of the Model Forest | 300 | 300 | 355 |
| Department of Correction and Rehabilitation | 415,547 | 405,925 | 402,433 |
| Parole Board | 2,366 | 2,342 | 2,285 |
| Forensic Sciences Institute | 18,025 | 17,891 | 17,611 |
| Special Prosecutor Panel | 2,614 | 2,604 | 2,604 |
| Correctional Health | 74,527 | 68,421 | 69,025 |
| Medical Emergencies Service | 21,967 | 21,927 | 25,069 |
| Total public safety | 1,969,808 | 1,942,761 | 1,930,593 |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Supplemental Schedule of Expenditures by Agency – Budget and Actual
Budgetary Basis – General Fund

Year ended June 30, 2017

(In thousands)

|  | Original budget | Amended budget | Actual |
|---|---|---|---|
| **Health:** | | | |
| Environmental Quality Board | $ 14,690 | 14,573 | 14,460 |
| Department of Health | 268,420 | 284,923 | 276,156 |
| Puerto Rico Medical Services Administration | 52,169 | 51,700 | 42,350 |
| Mental Health and Drug Addiction Services Administration | 90,012 | 92,397 | 86,867 |
| Puerto Rico Solid Waste Authority | 7,540 | 7,496 | 4,429 |
| Puerto Rico Health Insurance Administration | 892,383 | 892,371 | 892,254 |
| University of Puerto Rico Comprehensive Cancer Center | 67,108 | 67,108 | 65,717 |
|  | 1,392,322 | 1,410,568 | 1,382,233 |
| **Public housing and welfare:** | | | |
| Department of Labor and Human Resources | 13,969 | 14,964 | 15,560 |
| Labor Relations Board | 805 | 802 | 800 |
| Department of Housing | 14,899 | 14,701 | 14,485 |
| Department of Recreation and Sports | 47,962 | 45,861 | 44,117 |
| Administration for the Horse Racing Sport and Industry | 1,769 | 1,735 | 2,037 |
| Women's Affairs Commission | 4,932 | 4,503 | 3,684 |
| Public Housing Administration | 450 | 450 | 449 |
| Office of the Veteran's Ombudsman | 2,504 | 2,388 | 2,592 |
| Department of Family | 28,489 | 28,694 | 30,571 |
| Family and Children Administration | 188,860 | 184,204 | 175,246 |
| Minors Support Administration | 12,964 | 12,473 | 11,884 |
| Vocational Rehabilitation Administration | 16,216 | 15,449 | 15,448 |
| Social Economic Development Administration | 72,885 | 70,965 | 61,628 |
| Office of the Disabled Persons Ombudsman | 1,495 | 1,457 | 1,692 |
| Office for Elderly Affairs | 2,940 | 2,897 | 2,698 |
| Company for the Integral Development of the Peninsula de Cantera | 479 | 461 | 761 |
| Patient Ombudsman | 2,366 | 2,253 | 2,113 |
| Administration for the Care and Development of the Childhood | 14,169 | 15,134 | 12,068 |
| Special Communities Trust | 3,026 | 3,779 | 2,925 |
|  | 431,179 | 423,170 | 400,758 |
| **Education:** | | | |
| Department of Education | 1,755,984 | 1,765,977 | 1,822,011 |
| Institute of Puerto Rican Culture | 18,862 | 18,444 | 16,862 |
| Puerto Rico School of Plastics Arts | 2,242 | 2,239 | 2,204 |
| State Office for Historic Preservation | 1,694 | 1,683 | 1,230 |
| University of Puerto Rico | 872,432 | 872,432 | 872,432 |
| Musical Arts Corporation | 7,727 | 7,584 | 7,514 |
| Fine Arts Center Corporation | 3,896 | 3,896 | 3,776 |
| Puerto Rico Public Broadcasting Corporation | 10,897 | 11,038 | 11,038 |
| Puerto Rico Conservatory of Music Corporation | 6,021 | 5,951 | 5,857 |
| Puerto Rico Council on Education | 9,571 | 9,732 | 9,637 |
|  | 2,689,326 | 2,698,976 | 2,752,561 |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Supplemental Schedule of Expenditures by Agency – Budget and Actual

Budgetary Basis – General Fund

Year ended June 30, 2017

(In thousands)

| | Original budget | Amended budget | Actual |
|---|---|---|---|
| Economic development: | | | |
| Department of Transportation and Public Works | $ 45,339 | 52,100 | 47,902 |
| Department of Natural and Environmental Resources | 11,322 | 9,039 | 9,487 |
| Department of Agriculture | 52,463 | 53,510 | 48,361 |
| Cooperative Enterprises Development Administration | 2,444 | 2,323 | 1,914 |
| Department of Economic Development and Commerce | 3,814 | 3,809 | 3,434 |
| Agricultural Enterprises Development Administration | 111,237 | 108,419 | 101,772 |
| Economic Development Bank for Puerto Rico | 3,000 | 3,000 | — |
| Energy Affairs Administration | 991 | 885 | 1,033 |
| Puerto Rico Trade and Export Company | 4,410 | 4,410 | 4,233 |
| Ponce Ports Authority | 3,300 | 3,300 | 3,190 |
| Puerto Rico Government Development Bank | 132,500 | 132,500 | 132,500 |
| Puerto Rico Infrastructure Financing Authority | 19,000 | 4,000 | 4,000 |
| Puerto Rico Housing Finance Authority | 11,000 | 11,000 | 10,511 |
| Puerto Rico Integrated Transportation Authority | 33,000 | 33,000 | 29,000 |
| Puerto Rico Land Administration | 1,000 | 1,000 | 900 |
| Puero Rico Diabetes Center | 450 | 450 | 657 |
| Puerto Rico Fiscal Agency and Financial Advisory Authority | 40,020 | 38,814 | 38,814 |
| Puerto Rico Metropolitan Bus Authority | 722 | 722 | — |
| Puerto Rico Public Partnership Authority | 2,353 | 2,353 | 3,517 |
| Culebra Conservation and Development Authority | 252 | 252 | 241 |
| Ports of Americas Authority | 1,247 | 1,247 | — |
| Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads | 1,215 | 1,215 | 1,175 |
| Puerto Rico Maritime Transportation Authority | 252 | 252 | — |
| Total economic development | 481,331 | 467,600 | 442,641 |
| Intergovernmental – Municipal Services Administration | 416,580 | 441,246 | 391,361 |
| Total expenditures | $ 8,987,000 | 8,987,000 | 8,625,623 |

(1)   As a department and a fiscal agent.

See accompanying independent auditors' report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Governmental Funds

Year ended June 30, 2017

(In thousands)

**Special Revenue Funds**

Special revenue funds are used to account for and report the proceeds of specific revenue sources that are restricted or committed to expenditure for specified purposes other than debt service or capital projects. Other resources (investment earnings and transfers from other funds, for example) also may be reported in the fund if those resources are restricted, committed, or assigned to the specified purpose of the fund.

**(1) Public Buildings Authority Special Revenue Fund**

The operating fund of the Public Buildings Authority, a blended component unit, used to account for the operation, maintenance, equipment replacement, and other extraordinary operation and maintenance costs of the buildings and facilities that, when constructed, are leased to the Commonwealth's Primary Government agencies.

**(2) Puerto Rico Fiscal Agency and Finance Advisory Authority's Special Revenue Fund**

The special revenue fund of the Puerto Rico Fiscal Agency and Finance Advisory Authority, a blended component unit, is used to account for the moneys received from the Commonwealth for the purpose of overseeing compliance with the certified budget and fiscal plan pursuant to the PROMESA Act of 2016; revise matters including, but not limited to, agreements, transactions, and regulations of the agencies and instrumentalities of the Commonwealth; enter into a creditors' agreement, and/or renegotiate or restructure the public debt, in whole or in part, or any other debt issued by any Government body.

**(3) Puerto Rico Infrastructure Financing Authority's Special Revenue Fund**

The special revenue fund of the Puerto Rico Infrastructure Financing Authority, a blended component unit, is used to account principally for the moneys received by the Commonwealth, up to $117 million, of certain federal excise taxes levied on rum and other articles produced in Puerto Rico and sold in the United States, which are collected by the U.S. Treasury and returned to the Commonwealth. Under Act No. 44-1988, as amended, the Commonwealth conditionally allocates to this fund the first $117 million of these federal excise taxes reimbursed, which are subsequently transferred to the Puerto Rico Infrastructure Financing Authority's Debt Service Fund to provide for the debt service of its special tax revenue bonds.

**(4) Ponce Authority's Special Revenue Fund**

The special revenue fund of Ponce Authority, a blended component unit, is used to account for its remaining legal and certain other administrative requirements resulting after the transfer of all rights and duties to Ponce Ports Authority. The main purpose of the Ponce Authority was the planning, development and construction of a large-scale container terminal in the city of Ponce, Puerto Rico.

**(5) Special Communities Perpetual Trust's Special Revenue Fund**

The special revenue fund of the Special Communities Perpetual Trust, a blended component unit, is used to account for the moneys received from the Governmental Development Bank, through a line of credit financing and cash contributions, upon inception of the Special Communities Perpetual Trust. The financial resources received by this fund are used to carry out development projects that address the infrastructure and housing needs of certain under privileged communities.

**(6) The Children's Trust Special Revenue Fund**

The special revenue fund of the Children's Trust, a blended component unit, is used to account for the money received by the Commonwealth from a global settlement agreement dated November 23, 1998 between certain tobacco companies and certain states, territories, and other jurisdictions of the United State of

294

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Governmental Funds

Year ended June 30, 2017

(In thousands)

America, including the Commonwealth. The financial resources received by this fund are used to carry out projects aimed at promoting the well-being of children and youth of Puerto Rico.

**(7)  University of Puerto Rico Comprehensive Cancer Center's Special Revenue Fund**

The special revenue fund of the University of Puerto Rico Comprehensive Cancer Center, a blended component unit, is used to account for the moneys received from the Commonwealth and certain other grants from both the private sector and the Federal government, to execute public policy related to the prevention, orientation, investigation and treatment of cancer in Puerto Rico.

**Debt Service Funds**

The debt service funds are used to account for and report financial resources that are restricted, committed, or assigned to expenditure for principal and interest, and related costs other than bonds payable from operations of proprietary fund types, pension trust funds, and discretely presented component units. Long-term debt and interest due on July 1 of the following year are accounted for as a fund liability if resources are available as of June 30 for its payment.

**(1)  Public Buildings Authority Debt Service Fund**

A blended component unit engaged in the construction and/or acquisition of building facilities for lease mainly to the Primary Government agencies. Its debt service fund is used to account for the financial resources that are restricted, committed, or assigned to expenditure for the payment of revenue bonds and other liabilities incurred to finance the construction of the buildings and facilities.

**(2)  Puerto Rico Infrastructure Financing Authority's Debt Service Fund**

The debt service fund of the Puerto Rico Infrastructure Financing Authority accounts for the financial resources that are restricted to expenditure for the payment of interest and principal on its special tax revenue bonds. These resources are received from operating transfers from the Puerto Rico Infrastructure Financing Authority Special Revenue Fund.

**(3)  Puerto Rico Maritime Shipping Authority Debt Service Fund**

This is the remainder of a former shipping company owned by the Commonwealth. Its debt service fund is used to account for the financial resources that are restricted for the payment of the long-term liability that resulted from the sale of its marine operations. This fund is mainly subsidized by appropriations and operating transfers from the General Fund.

**(4)  The Children's Trust Debt Service Fund**

The debt service fund of The Children's Trust accounts for the financial resources that are restricted, committed, or assigned to expenditure for the payment of interest and principal on long-term obligations financed with moneys to be received by the Commonwealth from the global settlement agreement signed by certain tobacco companies.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Governmental Funds

Year ended June 30, 2017

(In thousands)

**Capital Projects Funds**

Capital project funds are used to account for and report financial resources that are restricted, committed, or assigned to expenditure for capital outlays, including the acquisition or construction of capital facilities and other capital assets not being financed by the Public Buildings Authority's Capital Projects Fund, the Puerto Rico Infrastructure Financing Authority's Capital Project Fund, proprietary fund types, pension trust funds, and discretely presented component units.

**(1) Commonwealth of Puerto Rico Capital Project Fund**

These funds present the activities of the capital improvements program of the Commonwealth, financed with the proceeds of the general obligation bonds.

**(2) Public Buildings Authority's Capital Projects Fund**

The Public Buildings Authority's capital projects fund is used to account for and report financial resources that are restricted, committed, or assigned to expenditure for capital outlays, including the acquisition or construction of capital facilities and other capital assets not financed by proprietary fund types, pension trust funds, and discretely presented component units.

**(3) Puerto Rico Infrastructure Financing Authority's Capital Projects Fund**

The Puerto Rico Infrastructure Financing Authority's capital projects fund is used to account for and report financial resources that are restricted, committed, or assigned for the acquisition or construction of capital assets and capital improvements, not financed by proprietary fund types, pension trust funds, and discretely presented component units.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Balance Sheet – Nonmajor Governmental Funds

June 30, 2017

(In thousands)

| | | Special Revenue | | | | | |
|---|---|---|---|---|---|---|---|
| | Public Buildings Authority | Puerto Rico Fiscal Agency and Financial Advisory Authority | Puerto Rico Infrastructure Financing Authority | Ponce Authority | Special Communities Perpetual Trust | The Children's Trust | University of Puerto Rico Comprehensive Cancer Center |
| **Assets:** | | | | | | | |
| Cash and cash equivalents in commercial banks | $ 58,669 | 16,067 | 5,425 | — | — | — | 19,784 |
| Cash and cash equivalents in governmental banks | — | — | 2 | 9 | — | 67 | — |
| Investments | — | — | — | — | — | 11,750 | — |
| Receivables – net: | | | | | | | |
| Intergovernmental | — | — | 82 | — | — | — | 844 |
| Accounts | — | — | 633 | — | — | — | 1,463 |
| Loans | — | — | — | — | — | — | — |
| Accrued interest | — | — | — | — | — | 1 | — |
| Other | 1,985 | 12 | 23 | — | — | — | 62 |
| Due from: | | | | | | | |
| Other funds | — | — | — | — | — | — | — |
| Component units | — | 2,259 | — | — | — | — | — |
| Other governmental entities | — | 902 | — | — | 490 | — | — |
| Other assets | 985 | — | — | — | 5 | — | 36 |
| Restricted assets: | | | | | | | |
| Cash and cash equivalents in commercial banks | — | — | — | — | 404 | — | 4,018 |
| Cash and cash equivalents in governmental banks | — | — | — | — | — | — | 207 |
| Cash equivalents in PRGITF | — | — | — | — | — | — | — |
| Investments | — | — | — | — | — | — | — |
| Due from other funds | — | — | 151,408 | — | — | — | — |
| Other | — | — | — | — | — | — | — |
| Real estate held for sale or future development | — | — | — | — | — | — | — |
| **Total assets** | $ 61,639 | 19,240 | 157,573 | 9 | 899 | 11,818 | 26,414 |
| **Liabilities, deferred outflow of resources, and fund balances (deficit):** | | | | | | | |
| Accounts payable and accrued liabilities | $ 17,536 | 14,212 | 1,662 | 442 | 20,605 | 203 | 6,993 |
| Due to: | | | | | | | |
| Other funds | — | — | — | 3,996 | — | — | — |
| Component units | 3,342 | — | — | — | — | — | 3,583 |
| Other governmental entities | 3,425 | 373 | — | 26 | 32 | — | — |
| Interest payable | — | — | 10,027 | — | — | — | — |
| Unearned revenue | 1,578 | — | — | — | — | — | — |
| Notes payable to GDB | — | — | 44,557 | 1,700 | — | — | — |
| General obligation and revenue bonds | — | — | — | — | — | — | 480 |
| Compensated absences | — | 287 | — | — | — | — | — |
| **Total liabilities** | 25,881 | 14,872 | 56,246 | 6,164 | 20,637 | 203 | 11,056 |
| Deferred inflow of resources: | | | | | | | |
| Global tobacco settlement agreement | — | — | — | — | — | — | — |
| **Total deferred inflow of resources** | — | — | — | — | — | — | — |
| Fund balances: | | | | | | | |
| Restricted for: | | | | | | | |
| Debt service | — | — | — | — | — | — | — |
| Capital projects | — | — | 101,327 | — | — | — | — |
| Committed to: | | | | | | | |
| Public housing and welfare | — | — | — | — | — | 11,751 | — |
| Capital projects | — | — | — | — | — | — | 5,308 |
| Assigned to: | | | | | | | |
| Capital projects | — | — | — | — | — | — | 4,006 |
| Unassigned (deficit) | 35,758 | 4,368 | — | (6,155) | (19,738) | (136) | 6,044 |
| **Total fund balances (deficit)** | 35,758 | 4,368 | 101,327 | (6,155) | (19,738) | 11,615 | 15,358 |
| **Total liabilities, deferred inflow of resources, and fund balances (deficit)** | $ 61,639 | 19,240 | 157,573 | 9 | 899 | 11,818 | 26,414 |

See accompanying independent auditors' report.

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Balance Sheet – Nonmajor Governmental Funds

June 30, 2017

(In thousands)

| | Debt Service | | | | Capital Projects | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | The Children's Trust | Public Buildings Authority | Puerto Rico Infrastructure Financing Authority | Puerto Rico Maritime Shipping Authority | Commonwealth of Puerto Rico | Public Buildings Authority | Puerto Rico Infrastructure Financing Authority | Eliminations | Total Nonmajor Governmental Funds |
| Assets: | | | | | | | | | |
| Cash and cash equivalents in commercial banks | $  — | — | — | — | — | — | — | — | 99,945 |
| Cash and cash equivalents in governmental banks | — | — | — | 8 | — | — | — | — | 86 |
| Investments | — | — | — | — | — | — | — | — | 11,750 |
| Receivables – net: | | | | | | | | | |
| Intergovernmental | — | — | — | — | — | — | — | — | 926 |
| Accounts | — | — | — | — | 707 | — | 300 | — | 3,103 |
| Loans | — | — | — | — | 2 | — | — | — | 2 |
| Accrued interest | — | — | — | — | — | — | — | — | 1 |
| Other | 36,344 | — | — | — | — | — | — | — | 38,426 |
| Due from: | | | | | | | | | |
| Other funds | — | — | — | — | 113 | — | — | — | 113 |
| Component units | — | — | — | — | — | — | — | — | 2,259 |
| Other governmental entities | — | — | — | — | — | — | — | — | 1,392 |
| Other assets | — | — | — | — | — | — | — | — | 1,026 |
| Restricted assets: | | | | | | | | | |
| Cash and cash equivalents in commercial banks | — | 4,704 | 131 | — | 8,760 | 21,482 | 37,063 | — | 76,582 |
| Cash and cash equivalents in governmental banks | — | — | — | 37 | — | — | 35 | — | 279 |
| Cash equivalents in PRGITF | — | — | — | — | 47,429 | — | — | — | 47,429 |
| Investments | 108,900 | — | 1,217 | — | — | — | — | — | 110,117 |
| Due from other funds | — | — | 3,073 | — | — | — | 3,559 | — | 158,040 |
| Due from other governmental entities | — | — | — | — | — | — | 11,747 | — | 11,747 |
| Other | 481 | — | — | — | — | — | 11 | — | 492 |
| Real estate held for sale or future development | — | — | — | — | 1,854 | — | — | — | 1,854 |
| Total assets | $  145,725 | 4,704 | 4,421 | 45 | 58,885 | 21,482 | 52,715 | — | 565,569 |
| Liabilities, deferred outflow of resources, and fund balances (deficit): | | | | | | | | | |
| Accounts payable and accrued liabilities | $  — | — | — | 45 | 5,619 | 11,598 | 38,156 | — | 117,071 |
| Due to: | | | | | | | | | |
| Other funds | — | — | — | — | — | — | — | — | 3,996 |
| Component units | — | — | — | — | — | — | — | — | 6,925 |
| Other governmental entities | — | — | — | — | 1 | 2,023 | — | — | 5,880 |
| Interest payable | — | 104,155 | 113,432 | 13,674 | — | — | — | — | 241,288 |
| Unearned revenue | — | — | — | — | — | — | — | — | 1,578 |
| Notes payable to GDB | — | — | — | — | — | — | — | — | 46,257 |
| General obligation and revenue bonds | — | 25,273 | 119,260 | — | — | — | — | — | 144,533 |
| Compensated absences | — | — | — | — | — | — | — | — | 767 |
| Total liabilities | — | 129,428 | 232,692 | 13,719 | 5,620 | 13,621 | 38,156 | — | 568,295 |
| Deferred inflow of resources: | | | | | | | | | |
| Global tobacco settlement agreement | 36,344 | — | — | — | — | — | — | — | 36,344 |
| Total deferred inflow of resources | 36,344 | — | — | — | — | — | — | — | 36,344 |
| Fund balances: | | | | | | | | | |
| Restricted for: | | | | | | | | | |
| Debt service | 109,381 | — | — | — | — | — | — | — | 109,381 |
| Capital projects | — | — | — | — | 53,265 | 7,861 | 14,559 | — | 177,012 |
| Committed to: | | | | | | | | | |
| Public housing and welfare | — | — | — | — | — | — | — | — | 11,751 |
| Capital projects | — | — | — | — | — | — | — | — | 5,308 |
| Assigned to: | | | | | | | | | |
| Capital projects | — | — | — | — | — | — | — | — | 4,006 |
| Unassigned (deficit) | — | (124,724) | (228,271) | (13,674) | — | — | — | — | (346,528) |
| Total fund balances (deficit) | 109,381 | (124,724) | (228,271) | (13,674) | 53,265 | 7,861 | 14,559 | — | (39,070) |
| Total liabilities, deferred inflow of resources, and fund balances (deficit) | $  145,725 | 4,704 | 4,421 | 45 | 58,885 | 21,482 | 52,715 | — | 565,569 |

See accompanying independent auditors' report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Revenue, Expenditures, and Changes in Fund Balances – Nonmajor Governmental Funds

Year ended June 30, 2017

(In thousands)

| | Special Revenue | | | | | | |
| | Public Buildings Authority | Puerto Rico Fiscal Agency and Financial Advisory Authority | Puerto Rico Infrastructure Financing Authority | Ponce Authority | Special Communities Perpetual Trust | The Children's Trust | University of Puerto Rico Comprehensive Cancer Center |
|---|---|---|---|---|---|---|---|
| Revenue: | | | | | | | |
| Intergovernmental | $ — | — | — | — | — | — | 2,252 |
| Interest and investment earnings | 354 | 15 | 338 | — | 1 | 104 | 28 |
| Other | 357 | 679 | 6,906 | 53 | 214 | 12 | 4,171 |
| Total revenue | 711 | 694 | 7,244 | 53 | 215 | 116 | 6,451 |
| Expenditures: | | | | | | | |
| Current: | | | | | | | |
| General government | 118,604 | 35,087 | 1,683 | — | — | 387 | — |
| Public safety | — | — | — | — | — | — | — |
| Health | — | — | — | — | — | 2,479 | 15,500 |
| Public housing and welfare | — | — | — | — | 552 | 69 | — |
| Education | — | — | — | — | — | — | — |
| Economic development | — | — | — | 71 | — | — | — |
| Intergovernmental | — | — | — | — | — | 129 | — |
| Capital outlays | — | 53 | 37 | — | — | — | 34,416 |
| Debt service: | | | | | | | |
| Principal | — | — | 37,361 | — | — | — | — |
| Interest and other | — | — | 10,027 | — | — | — | — |
| Total expenditures | 118,604 | 35,140 | 49,108 | 71 | 552 | 3,064 | 49,916 |
| Deficiency of revenue under expenditures | (117,893) | (34,446) | (41,864) | (18) | (337) | (2,948) | (43,465) |
| Other financing sources (uses): | | | | | | | |
| Transfers in | 167,708 | 38,814 | 13,949 | — | — | 165 | 65,717 |
| Transfers out | (11,575) | — | (5,738) | — | — | — | — |
| Total other financing sources | 156,133 | 38,814 | 8,211 | — | — | 165 | 65,717 |
| Net change in fund balances | 38,240 | 4,368 | (33,653) | (18) | (337) | (2,783) | 22,252 |
| Fund balances (deficit) – beginning of year (as restated)(note 4 to financial statements) | (2,482) | — | 134,980 | (6,137) | (19,401) | 14,398 | (6,894) |
| Fund balances (deficit) – end of year | $ 35,758 | 4,368 | 101,327 | (6,155) | (19,738) | 11,615 | 15,358 |

See accompanying independent auditors' report.

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Revenue, Expenditures, and Changes in Fund Balances – Nonmajor Governmental Funds

Year ended June 30, 2017

(In thousands)

| | Debt Service | | | | Capital Projects | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | The Children's Trust | Public Buildings Authority | Puerto Rico Infrastructure Financing Authority | Puerto Rico Maritime Shipping Authority | Commonwealth of Puerto Rico | Public Buildings Authority | Puerto Rico Infrastructure Financing Authority | Eliminations | Total Nonmajor Governmental Funds |
| Revenue: | | | | | | | | | |
| Intergovernmental | $  — | 27,669 | — | — | — | — | 199 | — | 29,921 |
| Interest and investment earnings | 3,493 | — | 133 | 1 | — | — | — | — | 4,666 |
| Other | — | — | 3,840 | 3 | 4 | — | 139 | — | 16,378 |
| Total revenue | 3,493 | 27,669 | 3,973 | 4 | 4 | — | 338 | — | 50,965 |
| Expenditures: | | | | | | | | | |
| Current: | | | | | | | | | |
| General government | — | — | — | — | 5,786 | — | 2,725 | — | 164,272 |
| Public safety | — | — | — | — | 7 | — | 249 | — | 256 |
| Health | — | — | — | — | — | — | — | — | 17,979 |
| Public housing and welfare | — | — | — | — | 246 | — | 562 | — | 1,429 |
| Education | — | — | — | — | — | — | 180 | — | 180 |
| Economic development | — | — | — | 94 | 3,589 | — | 1,523 | — | 5,277 |
| Intergovernmental | — | — | — | — | 7,200 | — | — | — | 7,329 |
| Capital outlays | — | — | — | — | 15,023 | — | 13,387 | — | 62,916 |
| Debt service: | | | | | | | | | |
| Principal | 29,815 | 25,273 | 132,760 | — | — | — | — | — | 225,209 |
| Interest and other | 46,656 | 142,232 | 80,683 | 6,837 | — | — | — | — | 286,435 |
| Total expenditures | 76,471 | 167,505 | 213,443 | 6,931 | 31,851 | — | 18,626 | — | 771,282 |
| Deficiency of revenue under expenditures | (72,978) | (139,836) | (209,470) | (6,927) | (31,847) | — | (18,288) | — | (720,317) |
| Other financing sources (uses): | | | | | | | | | |
| Transfers in | 72,687 | 9,598 | 990 | — | 17,503 | 1,977 | 26,954 | (18,272) | 397,790 |
| Transfers out | (165) | — | — | — | — | — | (794) | 18,272 | — |
| Total other financing sources | 72,522 | 9,598 | 990 | — | 17,503 | 1,977 | 26,160 | — | 397,790 |
| Net change in fund balances | (456) | (130,238) | (208,480) | (6,927) | (14,344) | 1,977 | 7,872 | — | (322,527) |
| Fund balances (deficit) – beginning of year (as restated)(note 4 to financial statements) | 109,837 | 5,514 | (19,791) | (6,747) | 67,609 | 5,884 | 6,687 | — | 283,457 |
| Fund balances (deficit) – end of year | $  109,381 | (124,724) | (228,271) | (13,674) | 53,265 | 7,861 | 14,559 | — | (39,070) |

See accompanying independent auditors' report.

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Proprietary Funds

Year ended June 30, 2017

Proprietary funds are used to account for operations that are financed and operated in a manner similar to private business enterprises where the intent of the government is that the costs of providing goods or services to the general public on a continuing basis be financed or recovered primarily through user charges.

### Bureau of Emergency Services 9-1-1

This fund was created by Act No. 144-1994. The Bureau of Emergency Services 9-1-1 is responsible for providing an efficient service of fast response to emergency calls through the 9-1-1 number and transferring these to the appropriate response agencies.

### Disability Insurance

This fund was created by Act No. 139-1968. It is used to account for disability benefits to remedy temporarily the loss of income as a result of disability caused by sickness or accident unrelated to employment.

### Drivers' Insurance

This fund was created by Act No. 428-1950. It is used to account for contributions made by the drivers and their employers to provide a social security plan for the benefit of the drivers in Puerto Rico. The plan also includes payment of benefits for health and life insurance.

### Lotteries Fund

This fund accounts for the assets and operations of the two lottery systems administered by the Commonwealth.

### Ponce Ports Authority

This fund was created by Act No. 240-2011. It is used to account for the development of the container terminal formerly undertaken by Ponce Authority and handle such facilities future operations.

### Puerto Rico Safe Drinking Water Treatment Revolving Loan Fund

This fund was created by Act No. 9-1970, as amended, by the PRDOH. Pursuant to such act, the PRDOH, on behalf of the Commonwealth, is authorized to enter into operating and capitalization grant agreements with the EPA for lending activities.

### Puerto Rico Water Pollution Control Revolving Fund

This fund, administered by the EQB, is authorized to enter into operating agreements and capitalization grant agreements with the EPA, mostly for water infrastructure projects, under a joint cooperation agreement between the EQB, PRIFA, PRASA, and the FAFAA, where each entity has agreed to assume their corresponding responsibilities.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Net Position – Nonmajor Proprietary Funds

June 30, 2017

(In thousands)

| | 9-1-1 Service Governing Board | Disability Insurance | Drivers' Insurance | Lotteries | Ponce Ports Authority | Puerto Rico Safe Drinking Water Treatment Revolving Loan Fund | Puerto Rico Water Pollution Control Revolving Fund | Total |
|---|---|---|---|---|---|---|---|---|
| **Assets:** | | | | | | | | |
| Current assets: | | | | | | | | |
| Cash and cash equivalents in commercial banks | $ — | 52,981 | 9,851 | 97,861 | 887 | — | — | 161,580 |
| Receivables - net: | | | | | | | | |
| Insurance premiums | — | 2,911 | 1,010 | — | — | — | — | 3,921 |
| Accounts | 1,844 | — | — | 3,935 | — | — | — | 5,779 |
| Accrued interest | — | 202 | — | — | — | — | — | 202 |
| Other | 55 | 750 | — | — | — | — | — | 805 |
| Due from other funds | — | — | — | — | 3,996 | — | — | 3,996 |
| Other assets | 35 | — | — | — | — | — | — | 35 |
| Restricted assets: | | | | | | | | |
| Cash and cash equivalents in commercial banks | 7,963 | 240 | — | — | — | 2,444 | 4,209 | 14,856 |
| Cash and cash equivalents in governmental banks | 14 | — | — | — | — | 2 | 12 | 28 |
| Other assets | — | — | — | — | — | — | 133 | 133 |
| Loans from component units | — | — | — | — | — | 333 | 667 | 1,000 |
| Total current assets | 9,911 | 57,084 | 10,861 | 101,796 | 4,883 | 2,779 | 5,021 | 192,335 |
| Noncurrent assets: | | | | | | | | |
| Receivables - net: | | | | | | | | |
| Loans from component units – restricted | — | — | — | — | — | 143,460 | 303,716 | 447,176 |
| #   Due from other funds | — | 15,000 | 9,139 | 14,563 | — | — | — | 38,702 |
| Restricted investments | — | 26,252 | — | — | — | — | — | 26,252 |
| Other restricted assets | — | — | — | 21,212 | — | — | 490 | 21,702 |
| Land and other nondepreciable assets | 490 | — | — | — | 28,643 | — | — | 29,133 |
| Depreciable assets | 5,202 | 5 | — | 575 | — | — | — | 5,782 |
| Total assets | 15,603 | 98,341 | 20,000 | 138,146 | 33,526 | 146,239 | 309,227 | 761,082 |
| **Deferred outflows of resources:** | | | | | | | | |
| Pension related | 15,353 | — | — | 16,087 | — | — | — | 31,440 |
| **Liabilities and net position:** | | | | | | | | |
| Current liabilities: | | | | | | | | |
| Accounts payable and accrued liabilities | 2,457 | 1,175 | 460 | 5,701 | 8 | 213 | 335 | 10,349 |
| Due to other governmental entities | 101 | 1 | 5 | — | — | — | — | 107 |
| Interest payable | — | — | — | — | 3,868 | — | — | 3,868 |
| Unearned revenue | — | 1,599 | 14 | 10,893 | — | — | — | 12,506 |
| Compensated absences | — | 385 | 224 | 72 | — | — | — | 681 |
| Obligation for unpaid lottery prizes | — | — | — | 61,543 | — | — | — | 61,543 |
| Voluntary termination benefits payable | — | — | — | 453 | — | — | — | 453 |
| Liability for insurance benefits | — | 544 | 101 | — | — | — | — | 645 |
| Total current liabilities | 2,558 | 3,704 | 804 | 78,662 | 3,876 | 213 | 335 | 90,152 |
| Noncurrent liabilities: | | | | | | | | |
| Notes payable to component units | — | — | — | — | 20,863 | — | — | 20,863 |
| Compensated absences | 930 | 577 | 337 | 919 | — | — | — | 2,763 |
| Obligation for unpaid lottery prizes | — | — | — | 86,074 | — | — | — | 86,074 |
| Voluntary termination benefits payable | 299 | — | — | 2,463 | — | — | — | 2,762 |
| Net pension liability | 50,338 | — | — | 54,104 | — | — | — | 104,442 |
| Total liabilities | 54,125 | 4,281 | 1,141 | 222,222 | 24,739 | 213 | 335 | 307,056 |
| **Deferred inflows of resources:** | | | | | | | | |
| Pension related | 964 | — | — | 1,036 | — | — | — | 2,000 |
| **Net position:** | | | | | | | | |
| Net investment in capital assets | 5,692 | 5 | — | 575 | 9,381 | — | — | 15,653 |
| Restricted for emergency services | 6,268 | — | — | — | — | — | — | 6,268 |
| Restricted for lending activities | — | — | — | — | — | 146,026 | 308,892 | 454,918 |
| Restricted for payment of insurance benefits | — | 26,492 | — | — | — | — | — | 26,492 |
| Unrestricted | (36,093) | 67,563 | 18,859 | (69,600) | (594) | — | — | (19,865) |
| Total net position | $ (24,133) | 94,060 | 18,859 | (69,025) | 8,787 | 146,026 | 308,892 | 483,466 |

See accompanying independent auditors' report.

302

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Revenue, Expenses, and Changes in Fund Net Position – Nonmajor Proprietary Funds

Year ended June 30, 2017

(In thousands)

| | Business-Type Activities – Nonmajor Enterprise Funds | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 9-1-1 Service Governing Board | Disability Insurance | Drivers' Insurance | Lotteries | Ponce Ports Authority | Puerto Rico Safe Drinking Water Treatment Revolving Loan Fund | Puerto Rico Water Pollution Control Revolving Fund | Total |
| Operating revenue: | | | | | | | | |
| Insurance premiums | $ — | 14,261 | 4,402 | — | — | — | — | 18,663 |
| Emergency telephone service charges | 22,680 | — | — | — | — | — | — | 22,680 |
| Lottery ticket sales | — | — | — | 757,686 | — | — | — | 757,686 |
| Interest | — | — | — | — | — | 399 | 1,139 | 1,538 |
| Other | — | — | — | 51 | — | — | — | 51 |
| Total operating revenue | 22,680 | 14,261 | 4,402 | 757,737 | — | 399 | 1,139 | 800,618 |
| Operating expenses: | | | | | | | | |
| Insurance benefits | — | 1,580 | 656 | — | — | — | — | 2,236 |
| Lottery ticket sales | — | — | — | 487,325 | — | — | — | 487,325 |
| General, administrative, and other operating expenses | 24,472 | 6,802 | 3,509 | 77,235 | 2,023 | 928 | 1,682 | 116,651 |
| Release of provision for loan losses | — | — | — | — | — | (140,094) | (294,268) | (434,362) |
| Total operating expenses | 24,472 | 8,382 | 4,165 | 564,560 | 2,023 | (139,166) | (292,586) | 171,850 |
| Operating income (loss) | (1,792) | 5,879 | 237 | 193,177 | (2,023) | 139,565 | 293,725 | 628,768 |
| Nonoperating revenue (expenses): | | | | | | | | |
| U.S. government grants | — | — | — | — | — | 686 | 6,127 | 6,813 |
| Contributions to component units | — | — | — | — | — | — | (1,441) | (1,441) |
| Interest and investment earnings | 12 | 2,844 | 205 | 245 | — | — | — | 3,306 |
| Interest expense | — | — | — | — | (1,498) | — | — | (1,498) |
| Other | 488 | — | — | — | — | — | — | 488 |
| Total nonoperating revenue | 500 | 2,844 | 205 | 245 | (1,498) | 686 | 4,686 | 7,668 |
| Income (loss) before transfers | (1,292) | 8,723 | 442 | 193,422 | (3,521) | 140,251 | 298,411 | 636,436 |
| Transfers from other funds | — | — | — | — | 3,390 | 2,358 | 4,638 | 10,386 |
| Transfers to other funds | (2,328) | (1,400) | — | (171,446) | — | — | — | (175,174) |
| Net change in net position | (3,620) | 7,323 | 442 | 21,976 | (131) | 142,609 | 303,049 | 471,648 |
| Net position – beginning of year, as adjusted (see note 4 to the financial statement) | (20,513) | 86,737 | 18,417 | (91,001) | 8,918 | 3,417 | 5,843 | 11,818 |
| Net position – end of year | $ (24,133) | 94,060 | 18,859 | (69,025) | 8,787 | 146,026 | 308,892 | 483,466 |

See accompanying independent auditors' report.

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Cash Flows – Nonmajor Proprietary Funds

Year ended June 30, 2017

(In thousands)

| | Business-Type Activities – Nonmajor Enterprise Funds | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 9-1-1 Service Governing Board | Disability Insurance | Drivers' Insurance | Lotteries | Ponce Ports Authority | Puerto Rico Safe Drinking Water Treatment Revolving Loan Fund | Puerto Rico Water Pollution Control Revolving Fund | Total |
| Cash flows from operating activities: | | | | | | | | |
| Receipts from customers and users | $ 21,311 | 12,547 | 4,454 | 764,262 | — | — | — | 802,574 |
| Other receipts | — | — | — | 51 | — | — | — | 51 |
| Payments to suppliers | (4,760) | (1,149) | (726) | (73,491) | (2,444) | (1,082) | (2,402) | (86,054) |
| Payments to employees | (10,723) | (5,971) | (2,760) | (7,837) | (59) | — | — | (27,350) |
| Payments of lottery prizes | — | — | — | (511,869) | — | — | — | (511,869) |
| Payments of insurance benefits | — | (1,589) | (803) | — | — | — | — | (2,392) |
| Net cash provided by (used in) operating activities | 5,828 | 3,838 | 165 | 171,116 | (2,503) | (1,082) | (2,402) | 174,960 |
| Cash flows from noncapital financing activities: | | | | | | | | |
| U.S. government grants | — | — | — | — | — | 686 | 6,127 | 6,813 |
| Contributions to component units | — | — | — | — | — | — | (1,441) | (1,441) |
| Transfers from other funds | — | — | — | — | — | 2,358 | 4,638 | 6,996 |
| Transfers to other funds | — | (1,400) | (1,378) | (193,248) | — | — | — | (196,026) |
| Net cash provided by (used in) noncapital financing activities | — | (1,400) | (1,378) | (193,248) | — | 3,044 | 9,324 | (183,658) |
| Cash flows from capital and related financing activities: | | | | | | | | |
| Transfers from other funds | — | — | — | — | 3,390 | — | — | 3,390 |
| Transfers to other funds | (2,328) | — | — | — | — | — | — | (2,328) |
| Principal Payment | (50) | — | — | — | — | — | — | (50) |
| Capital expenditures | (71) | — | — | (37) | — | — | — | (108) |
| Net cash provided by (used in) capital and related financing activities | (2,449) | — | — | (37) | 3,390 | — | — | 904 |
| Cash flows from investing activities: | | | | | | | | |
| Interest collected on deposits, investments, and loans | 542 | 2,164 | 3,637 | 245 | — | 484 | 1,323 | 8,395 |
| Loans originated | — | (15,000) | — | — | — | (1,518) | (4,615) | (21,133) |
| Principal collected on loans | — | — | — | — | — | — | 131 | 131 |
| Proceeds from sales and maturities of investments | — | 4,964 | — | — | — | — | — | 4,964 |
| Purchases of investments | — | (6,000) | — | — | — | — | — | (6,000) |
| Net cash provided by (used in) investing activities | 542 | (13,872) | 3,637 | 245 | — | (1,034) | (3,161) | (13,643) |
| Net increase (decrease) in cash and cash equivalents | 3,921 | (11,434) | 2,424 | (21,924) | 887 | 928 | 3,761 | (21,437) |
| Cash and cash equivalents – beginning of year | 4,056 | 64,655 | 7,427 | 119,785 | — | 1,518 | 460 | 197,901 |
| Cash and cash equivalents – end of year | $ 7,977 | 53,221 | 9,851 | 97,861 | 887 | 2,446 | 4,221 | 176,464 |
| Reconciliation of operating income (loss) to net cash provided by (used in) operating activities: | | | | | | | | |
| Operating income (loss) | $ (1,792) | 5,879 | 237 | 193,177 | (2,023) | 139,565 | 293,725 | 628,768 |
| Adjustments to reconcile operating income (loss) to net cash provided by (used in) operating activities: | | | | | | | | |
| Interests earned on deposits, loans, and investments | — | — | — | — | — | (399) | (1,139) | (1,538) |
| Depreciation | 773 | 34 | — | 598 | — | — | — | 1,405 |
| Release of provision for loan losses | — | — | — | — | — | (140,094) | (294,268) | (434,362) |
| Changes in operating assets and liabilities: | | | | | | | | |
| Decrease (increase) in accounts receivable | 7,737 | (621) | 51 | 2,270 | — | — | — | 9,437 |
| Decrease (increase) in other assets | (5) | — | — | (835) | — | — | — | (840) |
| Decrease (increase) in deferred outflow of resources | — | — | — | 2,811 | — | — | — | 2,811 |
| Increase (decrease) in accounts payable and accrued liabilities | (76) | (192) | 97 | (5,923) | (480) | (154) | (720) | (7,448) |
| Increase (decrease) in due to other governmental entities | — | — | — | (1) | — | — | — | (1) |
| Increase (decrease) in unearned revenue | — | (1,093) | 2 | 5,141 | — | — | — | 4,050 |
| Increase (decrease) in compensated absences | (699) | (160) | (73) | (2,269) | — | — | — | (3,201) |
| Increase in deferred inflow of resources | — | — | — | 132 | — | — | — | 132 |
| Increase in net pension liability | — | — | — | 2,001 | — | — | — | 2,001 |
| Increase in obligation for unpaid lottery prizes | — | — | — | (24,544) | — | — | — | (24,544) |
| Decrease in voluntary termination benefits payable | (110) | — | — | (1,443) | — | — | — | (1,553) |
| Increase (decrease) in liability for disability benefits payable | — | (9) | (146) | — | — | — | — | (157) |
| Total adjustments | 7,620 | (2,041) | (72) | (22,061) | (480) | (140,647) | (296,127) | (453,808) |
| Net cash provided by (used in) operating activities | $ 5,828 | 3,838 | 165 | 171,116 | (2,503) | (1,082) | (2,402) | 174,960 |

See accompanying independent auditors' report.

**COMMONWEALTH OF PUERTO RICO**

Fiduciary Funds

Year ended June 30, 2017

Fiduciary funds are used to account for funds held by the Commonwealth in a trustee capacity, or as an agent for individuals, organizations, and other governmental units. Following are the Commonwealth's fiduciary funds:

**Pension Trust Funds**

Prior to the enactment of Act No. 106-2017, the pension trust funds were used to account for the assets, liabilities, and net assets available for pension benefits held in trust for the public employees of the Commonwealth. After August 23, 2017, all pension benefits will be paid from the Primary Government's General Fund (as discussed in Note 23).

**(1) Employees' Retirement System of the Government of the Commonwealth of Puerto Rico (ERS)**

ERS is a cost-sharing multiple-employer defined-benefit pension plan that, prior to August 23, 2017, was administered by the Puerto Rico Government Employees and Judiciary Retirement Systems Administration and was created by Act No. 447-1951. ERS is sponsored by the Commonwealth, public corporations, and municipalities of Puerto Rico. Substantially all full-time employees of the Commonwealth and its instrumentalities are covered by the ERS. All regular appointed and temporary employees of the Commonwealth become plan members at the date of employment. Prior to August 23, 2017, ERS was administered by the Puerto Rico Government Employees and Judiciary Retirement Systems Administration (the ERS and JRS Administration) that also administered the Employees' Retirement System of the Government of Puerto Rico and its Instrumentalities Medical Insurance Plan Contribution (ERS MIPC). The ERS MIPC is an unfunded, cost-sharing, multi-employer, defined-benefit other postemployment healthcare benefit plan provided by the Commonwealth to retired plan members.

**(2) Puerto Rico System of Annuities and Pensions for Teachers (TRS)**

TRS is a cost-sharing single-employer defined-benefit pension plan that, prior to August 23, 2017, was administered by the Puerto Rico Teachers Retirement System and was created by Act No. 91-2004, that superseded Act No. 218-1951. TRS is sponsored by the Commonwealth. All active teachers of the DOE are covered by the TRS. Licensed teachers working in private schools or other educational organizations have the option to become members of TRS as long as the required employer and employee contributions are satisfied. The employees of the TRS are also plan members. Prior to August 23, 2017, TRS was administered by the Puerto Rico Teachers Retirement System (the TRS Administration) that also administered the Puerto Rico System of Annuities and Pensions for Teachers Medical Insurance Plan Contribution (TRS MIPC), an unfunded, cost-sharing, single-employer defined-benefit other postemployment healthcare benefit plan provided by the Commonwealth to retired teachers of the DOE and retired employees of the TRS Administration.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Fiduciary Funds

Year ended June 30, 2017

**(3)  Retirement System for the Judiciary of the Commonwealth of Puerto Rico (JRS)**

JRS is a single-employer defined-benefit pension plan that, prior to August 23, 2017, was administered by the Puerto Rico Government Employees and Judiciary Retirement Systems Administration and was created by Act No. 12-1954. The JRS is sponsored by the Commonwealth. All judges of the judiciary branch of the Commonwealth are plan members. The JRS provides retirement benefits to the employees of the judiciary branch of the Commonwealth through the office of the Administration of Court Facilities. Prior to August 23, 2017, JRS was administered by the ERS and JRS Administration that also administered the Retirement System for the Judiciary of the Commonwealth of Puerto Rico Medical Insurance Plan Contribution (JRS MIPC), an unfunded, single-employer defined-benefit other postemployment healthcare benefit plan provided by the Commonwealth to retired judges of the Judiciary Branch of the Commonwealth.

**Agency Fund**

Agency fund is used to account for assets held by the Commonwealth as an agent for individuals, private organizations, and other governments. This fund is custodial in nature (assets equal liabilities) and does not involve measurement of the results of operations.

**Special Deposits**

This fund acts in a fiduciary capacity in order to account for moneys received with specified purposes for which the law does not specify its recording in any other fund. It mainly includes deposits under the custody of the courts of justice for alimony payments, escrows, revenue collections, and agency accounts for which the Commonwealth act in an agent's capacity.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Fiduciary Net Position – Pension Trust Funds

June 30, 2017

(In thousands)

| | | Pension Trust Funds | | | | | |
| | (ERS) | | (TRS) | | (JRS) | | |
| | Pension | Postemployment healthcare benefits | Pension | Postemployment healthcare benefits | Pension | Postemployment healthcare benefits | Total |
|---|---|---|---|---|---|---|---|
| **Assets:** | | | | | | | |
| Cash and cash equivalents in commercial banks: | | | | | | | |
| Unrestricted | $ 260,219 | — | 62,387 | — | 1,044 | — | 323,650 |
| Restricted | 216,483 | — | — | — | — | — | 216,483 |
| Receivables – net: | | | | | | | |
| Employers | 36,172 | — | — | — | — | — | 36,172 |
| Accrued interest and dividends | — | — | 14 | — | 169 | — | 183 |
| Investments sold | 401 | — | 5 | — | — | — | 406 |
| Other | 17,259 | — | 3,223 | — | 62 | — | 20,544 |
| Due from JRS (Due to ERS) | 628 | — | — | — | (628) | — | — |
| Collateral from securities lending transactions | 7,359 | — | — | — | 859 | — | 8,218 |
| Investments at fair value: | | | | | | | |
| Bonds and notes | 163,187 | — | — | — | 21,468 | — | 184,655 |
| Nonexchange commingled trust funds | 181,699 | — | 191,886 | — | 12,133 | — | 385,718 |
| Investments in limited partnerships | 87,069 | — | 3,522 | — | — | — | 90,591 |
| Member loans and interest receivable– net | 523,443 | — | 315,732 | — | 485 | — | 839,660 |
| Capital assets – net | 9,902 | — | 15,021 | — | — | — | 24,923 |
| Other assets | 816 | — | 418 | — | — | — | 1,234 |
| Total assets | 1,504,637 | — | 592,208 | — | 35,592 | — | 2,132,437 |
| **Liabilities:** | | | | | | | |
| Accounts payable and accrued liabilities | 279,907 | — | 11,644 | — | — | — | 291,551 |
| Interest payable | 14,076 | — | — | — | — | — | 14,076 |
| Payable for investment securities purchased | — | — | 5 | — | 200 | — | 205 |
| Securities lending obligations | 7,359 | — | — | — | 859 | — | 8,218 |
| Due to Commonwealth of Puerto Rico | 98,044 | — | 56,443 | — | 7,710 | — | 162,197 |
| Other liabilities | 47,631 | — | 7,150 | — | 571 | — | 55,352 |
| Bonds payable | 3,166,472 | — | — | — | — | — | 3,166,472 |
| Total liabilities | 3,613,489 | — | 75,242 | — | 9,340 | — | 3,698,071 |
| Net position (deficit) restricted for pensions | $ (2,108,852) | — | 516,966 | — | 26,252 | — | (1,565,634) |

See accompanying independent auditors' report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Changes in Fiduciary Net Position – Pension (and Other Employee Benefit) Trust Funds

Year ended June 30, 2017

(In thousands)

| | Pension Trust Funds | | | | | | |
| | (ERS) | | (TRS) | | (JRS) | | |
| | Pension | Postemployment healthcare benefits | Pension | Postemployment healthcare benefits | Pension | Postemployment healthcare benefits | Total |
|---|---|---|---|---|---|---|---|
| **Additions:** | | | | | | | |
| Contributions: | | | | | | | |
| Employer contributions: | | | | | | | |
| Basic benefits, net of provision to allowance of $405,661 for the ERS and $37,200 for the JRS | $ 726,911 | — | 150,505 | — | 10,065 | — | 887,481 |
| Special benefits | 194,626 | 91,280 | 119,797 | 36,493 | 1,908 | 336 | 444,440 |
| Member contributions | 320,095 | — | 95,861 | — | 3,084 | — | 419,040 |
| Total contributions | 1,241,632 | 91,280 | 366,163 | 36,493 | 15,057 | 336 | 1,750,961 |
| Investment income and investment expense: | | | | | | | |
| Net appreciation (depreciation) in fair value of investments | (7,856) | — | 10,102 | — | 1,346 | — | 3,592 |
| Interest | 46,800 | — | 26,828 | — | 727 | — | 74,355 |
| Dividends | 253 | — | 283 | — | — | — | 536 |
| Investment expense, other than from security lending | (1,854) | — | (724) | — | — | — | (2,578) |
| Net income from investing, other than from security lending | 37,343 | — | 36,489 | — | 2,073 | — | 75,905 |
| Securities lending income | 30 | — | — | — | 1 | — | 31 |
| Net income from security lending | 30 | — | — | — | 1 | — | 31 |
| Net investment income | 37,373 | — | 36,489 | — | 2,074 | — | 75,936 |
| Other income | 56,626 | — | 1,925 | — | 310 | — | 58,861 |
| Total additions | 1,335,631 | 91,280 | 404,577 | 36,493 | 17,441 | 336 | 1,885,758 |
| **Deductions:** | | | | | | | |
| Benefits paid to participants | 1,524,695 | 91,280 | 754,751 | 36,493 | 25,313 | 336 | 2,432,868 |
| Refunds of contributions | 35,229 | — | 13,528 | — | 92 | — | 48,849 |
| Interest on bonds payable | 198,084 | — | — | — | — | — | 198,084 |
| General and administrative | 33,576 | — | 14,787 | — | 571 | — | 48,934 |
| Other expenses | 387,014 | — | — | — | 43 | — | 387,057 |
| Total deductions | 2,178,598 | 91,280 | 783,066 | 36,493 | 26,019 | 336 | 3,115,792 |
| Net change in net position | (842,967) | — | (378,489) | — | (8,578) | — | (1,230,034) |
| **Net position restricted for pensions (deficit):** | | | | | | | |
| Beginning of year | (1,265,885) | — | 895,455 | — | 34,830 | — | (335,600) |
| End of year | $ (2,108,852) | — | 516,966 | — | 26,252 | — | (1,565,634) |

See accompanying independent auditors' report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Combining Statement of Changes in Assets and Liabilities – Agency Funds

Year ended June 30, 2017

(In thousands)

| Assets | | Balance at June 30, 2016 | Additions | Deletions | Balance at June 30, 2017 |
|---|---|---|---|---|---|
| Cash and cash equivalents in commercial banks | $ | 664,397 | 1,698,302 | 1,732,838 | 629,861 |
| Cash and cash equivalents with governmental banks | | 897 | — | 847 | 50 |
| Total assets | $ | 665,294 | 1,698,302 | 1,733,685 | 629,911 |
| **Liabilities** | | | | | |
| Accounts payable and accrued liabilities | $ | 665,294 | 1,698,302 | 1,733,685 | 629,911 |
| Total liabilities | $ | 665,294 | 1,698,302 | 1,733,685 | 629,911 |

See accompanying independent auditors' report.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Year ended June 30, 2017

These entities, all legally separate entities, consistent with GASB Statement No. 14, as amended by GASB Statement No. 39 and No. 61, are discretely presented in a separate column of the basic financial statements of the Primary Government principally because of the nature of the services they provide, the Commonwealth's ability to impose its will, principally through the appointment of their governing authorities, and because these discretely presented component units provide specific financial benefits to, or impose financial burdens on, the Commonwealth (with the exception of Culebra Conservation and Development Authority and the Puerto Rico Science, Technology and Research Trust, which does not meet all these criteria, but the Commonwealth has determined it would be misleading to exclude them from the Commonwealth's financial reporting entity). These entities have been classified as nonmajor discretely presented component units because management believes they do not meet the following factors for inclusion as major: a) the services provided by the discretely presented component unit to the citizenry are such that separate reporting as a major discretely presented component unit is considered to be essential to financial statement users, b) there are significant transactions with the Primary Government, or c) there is a significant financial benefit or burden relationship with the Primary Government. The accounting principles followed by each of the discretely presented component units included herein may vary depending on the type of industries they are involved in (that is, banking, construction, public utilities, and so forth). The detailed information for each of these entities may be obtained directly from the administrative offices of the corresponding entities, as described in Note 1 to the basic financial statements.

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Combining Statement of Net Position

June 30, 2017

(In thousands)

| | Agricultural Enterprises Development Administration | Automobile Accidents Compensation Administration | Cardiovascular Center Corporation of Puerto Rico and the Caribbean | Center of Diabetes for Puerto Rico | Company for the Integral Development of the "Península de Cantera" | Corporation for the "Caño Martín Peña" ENLACE Project |
|---|---|---|---|---|---|---|
| **Assets:** | | | | | | |
| Cash and cash equivalents in commercial banks | $ 45,045 | 12,643 | 7,603 | 1,277 | 1,665 | 3,652 |
| Cash and cash equivalents in governmental banks | — | — | — | — | — | — |
| Investments | — | 101,513 | — | — | — | — |
| Receivables – net: | | | | | | |
| Insurance premiums | — | — | — | — | — | — |
| Intergovernmental | — | — | — | — | 79 | — |
| Accounts | 3,988 | — | 3,483 | 26 | — | — |
| Loans and advances | 321 | — | — | — | 5,728 | — |
| Accrued interest | — | 312 | — | — | — | — |
| Other | 1,613 | 973 | 508 | 75 | 22 | — |
| Due from – net: | | | | | | |
| Primary government | 23,455 | — | — | — | — | — |
| Component units | — | — | — | — | — | — |
| Other governmental entities | 887 | 911 | 432 | — | — | 379 |
| Inventories | 3,452 | — | 1,571 | 2 | — | — |
| Prepaid expenses | 481 | — | 313 | 2 | 1 | — |
| Other assets | — | 167 | — | — | — | — |
| Restricted assets: | | | | | | |
| Cash and cash equivalents in commercial banks | — | 8 | — | — | — | — |
| Cash and cash equivalents in governmental banks | — | — | — | — | — | — |
| Investments | — | — | — | — | — | — |
| Other restricted assets | — | — | — | — | 497 | — |
| Real estate held for sale or future development | — | — | — | — | 1,061 | — |
| Capital assets: | | | | | | |
| Land and other nondepreciable | 3,739 | 901 | 103 | — | 80 | 837 |
| Depreciable, net | 19,462 | 4,624 | 14,778 | 494 | 3,150 | 495 |
| Total assets | 102,423 | 122,652 | 28,791 | 1,876 | 12,283 | 5,363 |
| **Deferred outflows of resources:** | | | | | | |
| Loss on bonds refunding | — | — | — | — | — | — |
| Pension related | 31,801 | 47,116 | 41,101 | — | — | 2,498 |
| Total deferred outflows of resources | 31,801 | 47,116 | 41,101 | — | — | 2,498 |
| **Liabilities:** | | | | | | |
| Accounts payable and accrued liabilities | 49,990 | 3,658 | 36,186 | 75 | 1,456 | 205 |
| Deposits and escrow liabilities | — | — | — | — | — | — |
| Due to: | | | | | | |
| Primary government | — | — | 26,985 | — | — | — |
| Component units | 97,789 | — | 12,528 | — | 37,791 | — |
| Other governmental entities | 237 | 5,815 | 511 | 222 | — | — |
| Interest payable | 13,921 | — | — | — | 7,362 | — |
| Unearned revenue | — | 38,753 | — | — | — | 45 |
| Liabilities payable within one year: | | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — | — |
| Revenue bonds | — | — | — | — | — | — |
| Notes payable to financial institutions | — | — | — | — | — | — |
| Capital leases | — | — | — | — | — | — |
| Compensated absences | 1,493 | 960 | 3,952 | 49 | — | 55 |
| Voluntary termination benefits payable | 1,950 | 10,520 | — | — | — | — |
| Liability for insurance benefit | — | 66,289 | — | — | — | — |
| Other long-term liabilities | 4,387 | — | 382 | — | — | — |
| Liabilities payable after one year: | | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — | — |
| Revenue bonds | — | — | — | — | — | — |
| Notes payable to financial institutions | — | — | — | — | — | — |
| Capital leases | — | — | — | — | — | — |
| Compensated absences | 1,638 | — | — | 66 | — | 158 |
| Voluntary termination benefits payable | 11,300 | — | — | — | — | — |
| Net pension obligation | — | — | — | — | — | — |
| Net pension liability | 167,554 | 176,520 | 168,823 | — | — | 6,812 |
| Other long-term liabilities | — | 4,601 | 5,736 | — | — | — |
| Total liabilities | 350,229 | 307,116 | 253,103 | 412 | 46,609 | 7,275 |
| **Deferred inflows of resources:** | | | | | | |
| Service concession arrangements | — | — | — | — | — | — |
| Pension related | 12,274 | 3,379 | 3,193 | — | — | 130 |
| Total deferred inflows of resources | 12,274 | 3,379 | 3,193 | — | — | 130 |
| **Net position:** | | | | | | |
| Net investment in capital assets | 23,201 | 5,525 | 14,881 | 494 | 3,230 | 1,332 |
| Restricted for: | | | | | | |
| Capital projects | — | — | — | — | — | 3,237 |
| Debt service | — | — | — | — | — | — |
| Student loans and other educational purpose | — | — | — | — | — | — |
| Other specified purposes | — | — | — | — | 497 | — |
| Unrestricted (deficit) | (251,480) | (146,852) | (201,285) | 970 | (38,053) | (4,113) |
| Total net position (deficit) | $ (228,279) | (141,327) | (186,404) | 1,464 | (34,326) | 456 |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Combining Statement of Net Position

June 30, 2017

(In thousands)

| | Culebra Conservation and Development Authority | Economic Development Bank for Puerto Rico | Farm Insurance Corporation of Puerto Rico | Fine Arts Center Corporation | Independent Consumer Protection Office | Institute of Puerto Rican Culture |
|---|---|---|---|---|---|---|
| **Assets:** | | | | | | |
| Cash and cash equivalents in commercial banks | $ 54 | 38,865 | 4,047 | 2,722 | 308 | 2,895 |
| Cash and cash equivalents in governmental banks | — | 35,128 | — | — | — | — |
| Investments | — | 35,128 | — | — | — | — |
| Receivables — net: | | | | | | |
| Intergovernmental | — | — | — | — | — | 638 |
| Accounts | — | — | — | 68 | — | 598 |
| Loans and advances | — | 100,099 | — | — | — | 54 |
| Accrued interest | — | 596 | — | — | — | — |
| Other | — | — | 155 | — | — | — |
| Due from — net: | | | | | | |
| Primary government | — | — | 1,593 | — | — | — |
| Component units | — | — | — | — | — | — |
| Other governmental entities | — | 84 | 1,302 | — | — | 54 |
| Inventories | — | — | — | — | — | 2,062 |
| Prepaid expenses | — | — | 3 | 98 | — | — |
| Other assets | — | 13,412 | — | — | 3 | — |
| Restricted assets: | | | | | | |
| Cash and cash equivalents in commercial banks | — | 13,220 | — | — | — | 1,816 |
| Cash and cash equivalents in governmental banks | — | — | — | — | — | — |
| Investments | — | — | — | — | — | — |
| Other restricted assets | — | — | — | — | — | — |
| Real estate held for sale or future development | — | — | — | — | — | — |
| Capital assets: | | | | | | |
| Land and other nondepreciable | 640 | 2,735 | — | 3,176 | — | 55 |
| Depreciable, net | 173 | 5,617 | 51 | 11,914 | 30 | 45,282 |
| **Total assets** | 867 | 209,756 | 7,151 | 17,978 | 341 | 53,400 |
| Deferred outflows of resources: | | | | | | |
| Loss on bonds refunding | — | — | — | — | — | — |
| Pension related | 507 | 11,033 | 2,714 | 2,351 | — | 7,096 |
| **Total deferred outflows of resources** | 507 | 11,033 | 2,714 | 2,351 | — | 7,096 |
| **Liabilities:** | | | | | | |
| Accounts payable and accrued liabilities | 35 | 1,847 | 304 | 124 | 3 | 630 |
| Deposits and escrow liabilities | — | 146,835 | — | 226 | — | — |
| Due to: | | | | | | |
| Primary government | — | — | — | — | — | — |
| Component units | — | 7,239 | 4,692 | — | — | 5,041 |
| Other governmental entities | — | — | 981 | — | 15 | — |
| Interest payable | — | 115 | — | — | — | 660 |
| Unearned revenue | — | — | 1,793 | — | — | 85 |
| Liabilities payable within one year: | | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — | — |
| Revenue bonds | — | — | — | — | — | — |
| Notes payable to financial institutions | — | — | — | — | — | — |
| Capital leases | — | — | — | — | — | — |
| Compensated absences | 65 | — | 869 | 103 | — | 51 |
| Voluntary termination benefits payable | 10 | — | — | 261 | — | 625 |
| Liability for insurance benefits | — | — | — | — | — | — |
| Other long-term liabilities | — | — | 43 | — | — | — |
| Liabilities payable after one year: | | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — | — |
| Revenue bonds | — | — | — | — | — | — |
| Notes payable to financial institutions | — | — | — | — | — | — |
| Capital leases | — | — | — | — | — | — |
| Compensated absences | — | 1,261 | — | 405 | 31 | 959 |
| Voluntary termination benefits payable | 65 | 5,029 | — | 1,938 | — | 3,191 |
| Net pension obligation | — | — | — | — | — | — |
| Net pension liability | 2,131 | 44,849 | 11,993 | 11,470 | — | 36,238 |
| Other long-term liabilities | — | 4,007 | — | — | — | — |
| **Total liabilities** | 2,306 | 211,182 | 20,475 | 14,527 | 49 | 47,480 |
| Deferred inflows of resources: | | | | | | |
| Service concession arrangements | — | — | — | — | — | — |
| Pension related | 41 | 858 | 230 | 1,662 | — | 694 |
| **Total deferred inflows of resources** | 41 | 858 | 230 | 1,662 | — | 694 |
| **Net position:** | | | | | | |
| Net investment in capital assets | 813 | 1,113 | 51 | 15,090 | 30 | 42,011 |
| Restricted for: | | | | | | |
| Capital projects | — | — | — | — | — | — |
| Debt service | — | — | — | — | — | — |
| Student loans and other educational purpose | — | — | — | — | — | — |
| Other specified purposes | — | 6,413 | — | — | — | 1,798 |
| Unrestricted (deficit) | (1,786) | (777) | (10,891) | (10,950) | 262 | (31,487) |
| **Total net position (deficit)** | $ (973) | 8,749 | (10,840) | 4,140 | 292 | 12,322 |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Combining Statement of Net Position

June 30, 2017

(In thousands)

| | Institutional Trust of the National Guard of Puerto Rico | Land Authority of Puerto Rico | Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads | Musical Arts Corporation | Public Corporation for the Supervision and Deposit Insurance of P.R. Cooperatives |
|---|---|---|---|---|---|
| Assets: | | | | | |
| Cash and cash equivalents in commercial banks | $ 14,174 | 13,011 | 950 | 4,698 | 4,435 |
| Cash and cash equivalents in governmental banks | — | 2,945 | — | — | — |
| Investments | — | — | — | — | 262,503 |
| Receivables – net: | | | | | |
| Intergovernmental | — | 1,022 | 58 | — | — |
| Accounts | 1,893 | 18,283 | 224 | 8 | — |
| Loans and advances | — | — | — | — | 3,731 |
| Accrued interest | 51 | — | — | — | 1,506 |
| Other | — | — | — | — | 88 |
| Due from – net: | | | | | |
| Primary government | — | 19,266 | — | — | — |
| Component units | — | 8,062 | — | — | — |
| Other governmental entities | — | 1,677 | — | 10 | — |
| Inventories | — | — | — | — | — |
| Prepaid expenses | 46 | — | 82 | — | — |
| Other assets | 43 | 5,676 | — | 102 | — |
| Restricted assets: | | | | | |
| Cash and cash equivalents in commercial banks | — | 942 | — | 211 | — |
| Cash and cash equivalents in governmental banks | — | — | — | — | — |
| Investments | 16,606 | — | — | — | — |
| Other restricted assets | — | — | — | — | — |
| Real estate held for sale or future development | — | — | — | — | — |
| Capital assets: | | | | | |
| Land and other nondepreciable | 7,887 | 88,185 | 12,137 | 578 | 35 |
| Depreciable, net | 9,722 | 6,024 | 4,127 | 560 | 2,589 |
| Total assets | 50,222 | 165,093 | 17,578 | 6,167 | 274,887 |
| Deferred outflows of resources: | | | | | |
| Loss on bonds refunding | — | — | — | — | — |
| Pension related | 252 | 20,126 | — | 2,772 | 9,052 |
| Total deferred outflows of resources | 252 | 20,126 | — | 2,772 | 9,052 |
| Liabilities: | | | | | |
| Accounts payable and accrued liabilities | 1,478 | 4,415 | 774 | 256 | 194,160 |
| Deposits and escrow liabilities | — | 2,648 | 145 | — | — |
| Due to: | | | | | |
| Primary government | — | — | — | — | — |
| Component units | — | 30,392 | — | — | — |
| Other governmental entities | — | 16,471 | 16,916 | 294 | 50 |
| Interest payable | — | 451 | — | — | — |
| Unearned revenue | — | 9,441 | — | 203 | — |
| Liabilities payable within one year: | | | | | |
| Commonwealth appropriation bonds | — | 4,354 | — | — | — |
| Revenue bonds | — | — | — | — | — |
| Notes payable to financial institutions | — | — | — | — | — |
| Capital leases | — | — | — | — | — |
| Compensated absences | 78 | 800 | 155 | 508 | 2,825 |
| Voluntary termination benefits payable | — | — | — | 48 | — |
| Liability for insurance benefits | — | — | — | — | — |
| Other long-term liabilities | — | 992 | — | — | — |
| Liabilities payable after one year: | | | | | |
| Commonwealth appropriation bonds | — | 51,464 | — | — | — |
| Revenue bonds | — | — | — | — | — |
| Notes payable to financial institutions | — | — | — | — | — |
| Capital leases | — | — | — | — | — |
| Compensated absences | — | 938 | — | — | — |
| Voluntary termination benefits payable | — | 5,125 | — | 478 | — |
| Net pension obligation | — | — | — | 21,546 | — |
| Net pension liability | 1,065 | 107,017 | — | 10,387 | 40,017 |
| Other long-term liabilities | — | 36,717 | — | — | — |
| Total liabilities | 2,621 | 271,225 | 17,990 | 33,720 | 237,052 |
| Deferred inflows of resources: | | | | | |
| Service concession arrangements | — | — | — | — | — |
| Pension related | 20 | 2,268 | — | 199 | 766 |
| Total deferred inflows of resources | 20 | 2,268 | — | 199 | 766 |
| Net position: | | | | | |
| Net investment in capital assets | 17,609 | 94,209 | (115) | 1,138 | 2,624 |
| Restricted for: | | | | | |
| Capital projects | — | — | — | — | — |
| Debt service | — | — | — | — | — |
| Student loans and other educational purpose | — | — | — | — | — |
| Other specified purposes | 29,421 | — | — | 211 | 92,931 |
| Unrestricted (deficit) | 803 | (182,483) | (297) | (26,329) | (49,434) |
| Total net position (deficit) | $ 47,833 | (88,274) | (412) | (24,980) | 46,121 |

(Continued)

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Combining Statement of Net Position

June 30, 2017

(In thousands)

| | Puerto Rico Conservatory of Music Corporation | Puerto Rico Convention Center District Authority | Puerto Rico Council on Education | Puerto Rico Energy Commission | Puerto Rico Industrial Development Company | Puerto Rico Industrial, Tourist, Educational, Medical and Environmental, Control Facilities Financing Authority |
|---|---|---|---|---|---|---|
| **Assets:** | | | | | | |
| Cash and cash equivalents in commercial banks | $ 1,936 | 9,503 | 295 | 3,608 | 32,926 | 144 |
| Cash and cash equivalents in governmental banks | — | — | — | — | — | — |
| Investments | — | 7,898 | — | — | 4,093 | — |
| Receivables – net: | | | | | | |
| Intergovernmental | — | — | — | — | — | — |
| Accounts | — | 7,824 | — | 1,443 | 11,372 | — |
| Loans and advances | — | 1,296 | — | — | — | — |
| Accrued interest | — | — | — | — | — | — |
| Other | 306 | — | 804 | — | — | — |
| Due from – net: | | | | | | |
| Primary government | — | — | — | — | — | — |
| Component units | — | 8,322 | — | — | — | — |
| Other governmental entities | — | — | — | — | — | — |
| Inventories | — | — | — | — | — | — |
| Prepaid expenses | 8 | 8,435 | — | — | 1,252 | — |
| Other assets | — | 248 | — | — | — | — |
| Restricted assets: | | | | | | |
| Cash and cash equivalents in commercial banks | 1,995 | 5,271 | 642 | — | — | — |
| Cash and cash equivalents in governmental banks | — | — | — | — | — | — |
| Investments | — | 9,658 | — | — | 13,723 | — |
| Other restricted assets | — | — | — | — | — | — |
| Real estate held for sale or future development | — | — | — | — | — | — |
| Capital assets: | | | | | | |
| Land and other nondepreciable | 5,157 | 277,437 | — | 444 | 236,789 | — |
| Depreciable, net | 71,022 | 374,762 | 27 | 606 | 405,245 | — |
| Total assets | 80,424 | 710,654 | 1,768 | 6,099 | 705,400 | 144 |
| **Deferred outflows of resources:** | | | | | | |
| Loss on bonds refunding | — | — | — | — | 522 | — |
| Pension related | 4,726 | — | 1,975 | — | 40,815 | — |
| Total deferred outflows of resources | 4,726 | — | 1,975 | — | 41,337 | — |
| **Liabilities:** | | | | | | |
| Accounts payable and accrued liabilities | 826 | 7,325 | 692 | 339 | 15,157 | 15 |
| Deposits and escrow liabilities | — | 3,946 | — | — | 7,531 | — |
| Due to: | | | | | | |
| Primary government | — | — | — | — | 7,159 | — |
| Component units | — | 146,423 | — | — | 77,772 | — |
| Other governmental entities | 40 | — | — | — | — | — |
| Interest payable | — | 38,248 | — | — | 10,138 | — |
| Unearned revenue | 622 | 6,438 | — | — | — | — |
| Liabilities payable within one year: | | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — | — |
| Revenue bonds | — | 11,780 | — | — | 10,250 | — |
| Notes payable to financial institutions | — | — | — | — | 19,957 | — |
| Capital leases | — | — | — | — | 117 | — |
| Compensated absences | 258 | — | 262 | 12 | 1,539 | — |
| Voluntary termination benefits payable | 55 | — | 127 | — | 1,530 | — |
| Liability for insurance benefits | — | — | — | — | — | — |
| Other long-term liabilities | — | — | — | — | 141 | — |
| Liabilities payable after one year: | | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — | — |
| Revenue bonds | — | 378,772 | — | — | 147,804 | — |
| Notes payable to financial institutions | — | — | — | — | 74,603 | — |
| Capital leases | — | — | — | — | 174 | — |
| Compensated absences | 493 | — | 394 | 222 | 2,204 | — |
| Voluntary termination benefits payable | — | — | 1,203 | — | 9,420 | — |
| Net pension obligation | — | — | — | — | — | — |
| Net pension liability | 22,445 | — | 9,714 | — | 180,808 | — |
| Other long-term liabilities | — | — | — | — | 23,248 | — |
| Total liabilities | 24,738 | 592,932 | 12,392 | 573 | 589,562 | 15 |
| **Deferred inflows of resources:** | | | | | | |
| Service concession arrangements | — | — | — | — | — | — |
| Pension related | 430 | — | 275 | — | 3,461 | — |
| Total deferred inflows of resources | 430 | — | 275 | — | 3,461 | — |
| **Net position:** | | | | | | |
| Net investment in capital assets | 76,179 | 78,113 | 27 | 1,050 | 389,129 | — |
| Restricted for: | | | | | | |
| Capital projects | — | 913 | — | — | — | — |
| Debt service | — | 8,745 | — | — | 2,343 | — |
| Student loans and other educational purpose | 1,995 | — | 643 | — | — | — |
| Other specified purposes | — | 1,335 | — | — | — | — |
| Unrestricted (deficit) | (18,193) | 28,626 | (9,594) | 4,476 | (237,748) | 129 |
| Total net position (deficit) | $ 59,981 | 117,722 | (8,924) | 5,526 | 153,724 | 129 |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Combining Statement of Net Position

June 30, 2017

(In thousands)

| | Puerto Rico Integrated Transit Authority | Puerto Rico Land Administration | Puerto Rico and Municipal Islands Maritime Transport Authority | Puerto Rico Metropolitan Bus Authority | Puerto Rico Municipal Finance Agency |
|---|---|---|---|---|---|
| **Assets:** | | | | | |
| Cash and cash equivalents in commercial banks | $ 5,298 | 5,268 | 1,219 | 428 | — |
| Cash and cash equivalents in governmental banks | — | — | 3 | — | 281 |
| Investments | — | 1,130 | — | — | — |
| Receivables – net: | | | | | |
| Intergovernmental | — | — | — | 622 | — |
| Accounts | — | 1,524 | 272 | 73 | — |
| Loans and advances | — | — | — | — | — |
| Accrued interest | — | 11 | — | — | — |
| Other | — | 316 | — | — | — |
| Due from – net: | | | | | |
| Primary government | — | — | — | — | — |
| Component units | — | — | — | 1,644 | — |
| Other governmental entities | — | — | — | 797 | — |
| Inventories | — | — | 49 | 4,142 | — |
| Prepaid expenses | — | 211 | 1,185 | — | 2,575 |
| Other assets | — | — | — | — | — |
| Restricted assets: | | | | | |
| Cash and cash equivalents in commercial banks | — | — | — | — | 13,348 |
| Cash and cash equivalents in governmental banks | — | — | — | — | 602,569 |
| Investments | — | — | — | — | 13,566 |
| Other restricted assets | — | — | — | — | 36 |
| Real estate held for sale or future development | — | 176,958 | — | — | — |
| Capital assets: | | | | | |
| Land and other nondepreciable | — | 29,990 | 93 | 2,500 | — |
| Depreciable, net | 262 | 6,947 | 54,516 | 19,583 | — |
| Total assets | 5,560 | 222,355 | 57,337 | 29,789 | 632,375 |
| **Deferred outflows of resources:** | | | | | |
| Loss on bonds refunding | — | — | — | — | 1,572 |
| Pension related | — | 7,498 | — | 54,990 | — |
| Total deferred outflows of resources | — | 7,498 | — | 54,990 | 1,572 |
| **Liabilities:** | | | | | |
| Accounts payable and accrued liabilities | 309 | 3,073 | 8,675 | 21,345 | 598 |
| Deposits and escrow liabilities | — | 32,601 | — | — | 24,292 |
| Due to: | | | | | |
| Primary government | — | — | — | 19,848 | — |
| Component units | — | — | 71,609 | 6,256 | — |
| Other governmental entities | 1,631 | — | 7,877 | 57,747 | 11,703 |
| Interest payable | — | — | — | — | — |
| Unearned revenue | — | 1,816 | — | — | — |
| Liabilities payable within one year: | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — |
| Revenue bonds | — | — | — | — | 72,645 |
| Notes payable to financial institutions | — | — | — | 28,255 | — |
| Capital leases | — | — | — | — | — |
| Compensated absences | — | 331 | 740 | 3,478 | — |
| Voluntary termination benefits payable | — | 395 | 335 | 927 | — |
| Liability for insurance benefits | — | — | — | — | — |
| Other long-term liabilities | — | — | 487 | — | — |
| Liabilities payable after one year: | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — |
| evenue bonds | — | — | — | — | 477,628 |
| Notes payable to financial institutions | — | — | — | — | — |
| Capital leases | — | — | — | — | — |
| Compensated absences | 157 | — | 1,566 | 2,122 | — |
| Voluntary termination benefits payable | — | 2,022 | 2,988 | 4,858 | — |
| Net pension obligation | — | — | — | — | — |
| Net pension liability | — | 34,519 | — | 297,446 | — |
| Other long-term liabilities | — | — | 3,610 | 4,188 | — |
| Total liabilities | 2,097 | 74,757 | 97,887 | 446,470 | 586,866 |
| **Deferred inflows of resources:** | | | | | |
| Service concession arrangements | — | — | — | — | — |
| Pension related | — | 661 | — | 26,250 | — |
| Total deferred inflows of resources | — | 661 | — | 26,250 | — |
| **Net position:** | | | | | |
| Net investment in capital assets | 262 | 5,802 | 54,609 | 22,083 | — |
| Restricted for: | | | | | |
| Capital projects | — | — | — | — | — |
| Debt service | — | — | — | — | 71,654 |
| Student loans and other educational purpose | — | — | — | — | — |
| Other specified purposes | — | — | — | — | — |
| Unrestricted (deficit) | 3,201 | 148,633 | (95,159) | (410,024) | (24,573) |
| Total net position (deficit) | $ 3,463 | 154,435 | (40,550) | (387,941) | 47,081 |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Combining Statement of Net Position

June 30, 2017

(In thousands)

| | Puerto Rico Municipal Finance Corporation | Puerto Rico Ports Authority | Puerto Rico Public Broadcasting Corporation | Puerto Rico Public Private Partnerships Authority | Puerto Rico School of Plastic Arts |
|---|---|---|---|---|---|
| Assets: | | | | | |
| Cash and cash equivalents in commercial banks | $ 34,286 | 7,876 | 969 | 176 | 65 |
| Cash and cash equivalents in governmental banks | 33,587 | 1,530 | — | — | — |
| Investments | — | — | — | — | — |
| Receivables – net: | | | | | |
| Intergovernmental | 22,485 | 857 | 71 | — | — |
| Accounts | 201 | 16,256 | — | — | 51 |
| Loans and advances | — | — | — | — | — |
| Accrued interest | — | — | — | — | — |
| Other | — | — | 23 | — | — |
| Due from – net: | | | | | |
| Primary government | — | — | — | — | — |
| Component units | — | — | — | — | — |
| Other governmental entities | — | 1,512 | 173 | — | — |
| Inventories | — | — | — | — | — |
| Prepaid expenses | — | 2,333 | — | — | — |
| Other assets | — | — | 180 | — | — |
| Restricted assets: | | | | | |
| Cash and cash equivalents in commercial banks | — | 14,991 | 797 | 3,656 | — |
| Cash and cash equivalents in governmental banks | — | — | — | — | 2,406 |
| Investments | — | — | — | — | — |
| Other restricted assets | — | 25,351 | — | — | — |
| Real estate held for sale or future development | — | — | — | — | — |
| Capital assets: | | | | | |
| Land and other nondepreciable | — | 343,591 | 83 | — | — |
| Depreciable, net | — | 920,958 | 4,371 | 7 | 7,699 |
| Total assets | 90,559 | 1,335,255 | 6,667 | 3,839 | 10,221 |
| Deferred outflows of resources: | | | | | |
| Loss on bonds refunding | — | 11,401 | — | — | — |
| Pension related | — | 48,547 | 11,699 | 342 | 3,595 |
| Total deferred inflows of resources | — | 59,948 | 11,699 | 342 | 3,595 |
| Liabilities: | | | | | |
| Accounts payable and accrued liabilities | — | 26,416 | 3,685 | 886 | 991 |
| Deposits and escrow liabilities | — | 1,402 | — | — | — |
| Due to: | | | | | |
| Primary government | — | 44,197 | — | — | — |
| Component units | 326,188 | 332,929 | — | 6,302 | — |
| Other governmental entities | 3,698 | 11,748 | — | 604 | — |
| Interest payable | — | 68,134 | — | — | — |
| Unearned revenue | — | 254 | — | 2,021 | — |
| Liabilities payable within one year: | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — |
| Revenue bonds | — | 3,180 | — | — | — |
| Notes payable to financial institutions | — | 1,665 | — | — | — |
| Capital leases | — | — | — | — | — |
| Compensated absences | — | 5,889 | 892 | — | 40 |
| Voluntary termination benefits payable | — | 2,383 | 437 | — | — |
| Liability for insurance benefits | — | — | — | — | — |
| Other long-term liabilities | — | 1,223 | — | — | — |
| Liabilities payable after one year: | | | | | |
| Commonwealth appropriation bonds | — | — | — | — | — |
| revenue bonds | — | 193,643 | — | — | — |
| Notes payable to financial institutions | — | 9,858 | — | — | — |
| Capital leases | — | — | — | — | — |
| Compensated absences | — | — | 1,482 | — | 45 |
| Voluntary termination benefits payable | — | 15,453 | 3,224 | — | — |
| Net pension obligation | — | — | — | — | — |
| Net pension liability | — | 253,649 | 48,953 | 793 | 14,053 |
| Other long-term liabilities | — | 439 | 1,680 | — | — |
| Total liabilities | 329,886 | 972,462 | 60,353 | 10,606 | 15,129 |
| Deferred inflows of resources: | | | | | |
| Service concession arrangements | — | 681,708 | — | — | — |
| Pension related | — | 40,895 | 937 | 104 | 269 |
| Total deferred inflows of resources | — | 722,603 | 937 | 104 | 269 |
| Net position: | | | | | |
| Net investment in capital assets | — | 584,911 | 4,454 | 7 | 7,699 |
| Restricted for: | | | | | |
| Capital projects | — | 40,342 | — | — | — |
| Debt service | — | — | — | — | — |
| Student loans and other educational purpose | — | — | — | — | 2,406 |
| Other specified purposes | — | — | 898 | — | — |
| Unrestricted (deficit) | (239,327) | (925,115) | (48,274) | (6,536) | (11,687) |
| Total net position (deficit) | $ (239,327) | (299,862) | (42,924) | (6,529) | (1,582) |

(Continued)

DRA Ex. 242

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Combining Statement of Net Position

June 30, 2017

(In thousands)

| | Puerto Rico Science, Technology and Research Trust | Puerto Rico Telephone Authority | Puerto Rico Tourism Company | Puerto Rico Trade and Export Company | Solid Waste Authority | Nonmajor Component Units Total |
|---|---|---|---|---|---|---|
| **Assets:** | | | | | | |
| Cash and cash equivalents in commercial banks | $ 8,002 | — | 46,742 | 4,900 | 1,349 | 323,032 |
| Cash and cash equivalents in governmental banks | 3,512 | — | — | — | — | 41,858 |
| Investments | 45,637 | — | 17,863 | — | — | 475,965 |
| Receivables – net: | | | | | | |
| Intergovernmental | — | — | — | — | — | 25,832 |
| Accounts | — | — | 10,544 | 125 | — | 78,056 |
| Loans and advances | — | — | 10,416 | — | — | 121,591 |
| Accrued interest | — | 1 | — | 3,307 | — | 5,784 |
| Other | 775 | — | 817 | — | — | 6,475 |
| Due from – net: | | | | | | |
| Primary government | — | — | — | — | 2,996 | 45,717 |
| Component units | — | — | — | — | — | 19,621 |
| Other governmental entities | 3,373 | — | — | — | 1,118 | 12,709 |
| Inventories | — | — | — | — | — | 11,278 |
| Prepaid expenses | — | — | 40 | 134 | — | 17,179 |
| Other assets | 90 | — | — | — | 133 | 20,054 |
| Restricted assets: | | | | | | |
| Cash and cash equivalents in commercial banks | — | — | — | 7,566 | — | 64,463 |
| Cash and cash equivalents in governmental banks | — | 30 | — | — | — | 30 |
| Investments | 3,200 | — | — | 252,778 | — | 900,940 |
| Other restricted assets | — | — | — | — | — | 39,414 |
| Real estate held for sale or future development | — | — | 2,600 | — | — | 180,655 |
| Capital assets: | | | | | | |
| Land and other nondepreciable | 43,806 | — | 5,053 | 40,048 | 21,798 | 1,127,879 |
| Depreciable, net | 2,760 | — | 17,256 | 44,463 | 63,324 | 2,142,900 |
| Total assets | 111,357 | 31 | 111,331 | 353,321 | 110,718 | 5,561,432 |
| **Deferred outflows of resources:** | | | | | | |
| Loss on bonds refunding | — | — | 1,326 | — | — | 14,821 |
| Pension related | — | — | 37,648 | 12,293 | 3,181 | 405,728 |
| Total deferred outflows of resources | — | — | 38,974 | 12,293 | 3,181 | 420,549 |
| **Liabilities:** | | | | | | |
| Accounts payable and accrued liabilities | 5,925 | 5 | 39,078 | 5,193 | 3,821 | 439,940 |
| Deposits and escrow liabilities | — | — | — | 2,461 | — | 222,087 |
| Due to: | | | | | | |
| Primary government | — | — | 36,034 | 1,241 | — | 135,464 |
| Component units | — | — | 13,346 | — | 76,368 | 1,252,665 |
| Other governmental entities | 4 | — | — | 1,399 | 4,740 | 131,000 |
| Interest payable | — | — | 5,871 | 3,074 | 16,990 | 178,667 |
| Unearned revenue | — | — | — | — | — | 61,471 |
| Liabilities payable within one year: | | | | | | |
| Commonwealth appropriation bonds | — | — | 3,471 | — | 607 | 8,432 |
| Revenue bonds | — | — | — | — | — | 97,855 |
| Notes payable to financial institutions | — | — | — | 607 | — | 50,484 |
| Capital leases | 3 | — | 180 | 62 | — | 362 |
| Compensated absences | — | — | — | 632 | 195 | 26,031 |
| Voluntary termination benefits payable | — | — | 735 | 1,166 | 457 | 21,961 |
| Liability for insurance benefits | — | — | — | — | — | 86,289 |
| Other long-term liabilities | 9 | — | 1,050 | — | — | 8,714 |
| Liabilities payable after one year: | | | | | | |
| Commonwealth appropriation bonds | — | — | 41,654 | — | 7,193 | 100,311 |
| Revenue bonds | — | — | — | — | — | 1,197,847 |
| Notes payable to financial institutions | — | — | — | 265,157 | — | 349,618 |
| Capital leases | — | — | 544 | 96 | — | 614 |
| Compensated absences | — | — | — | — | 189 | 14,310 |
| Voluntary termination benefits payable | — | — | 4,427 | 5,854 | 4,131 | 60,706 |
| Net pension obligation | — | — | — | — | — | 21,546 |
| Net pension liability | — | — | 143,954 | 52,222 | 15,895 | 1,857,327 |
| Other long-term liabilities | — | — | — | 1,126 | — | 95,352 |
| Total liabilities | 5,941 | 5 | 290,346 | 340,290 | 132,584 | 6,409,253 |
| **Deferred inflows of resources:** | | | | | | |
| Service concession arrangements | — | — | — | — | — | 681,708 |
| Pension related | — | — | 2,755 | 999 | 1,740 | 104,490 |
| Total deferred inflows of resources | — | — | 2,755 | 999 | 1,740 | 786,198 |
| **Net position:** | | | | | | |
| Net investment in capital assets | 46,568 | — | 21,585 | 71,368 | 33,261 | 1,620,343 |
| Restricted for: | | | | | | |
| Capital projects | — | — | — | — | — | 44,492 |
| Debt service | — | — | — | — | — | 82,742 |
| Student loans and other educational purpose | — | — | — | — | — | 5,044 |
| Other specified purposes | 3,200 | 26 | — | 6,925 | — | 145,643 |
| Unrestricted (deficit) | 55,648 | — | (164,381) | (53,968) | (53,686) | (3,011,734) |
| Total net position (deficit) | $ 105,416 | 26 | (142,796) | 24,325 | (20,425) | (1,113,470) |

See accompanying independent auditors' report.

**COMMONWEALTH OF PUERTO RICO**

Nonmajor Discretely Presented Component Units

Combining Statement of Activities

Year ended June 30, 2017

(In thousands)

| | Expenses | Program revenue: Charges for services | Operating grants and contributions | Capital grants and contributions | Net revenues (expenses) and changes in net position | General revenue and transfers: Payments from (to) primary government | Payments from (to) other component units | Grants and contributions not restricted to specific programs | Interest and investment earnings | Excise taxes and others | Change in net position | Net position (deficit) beginning of year as previously reported | Correction of errors and adoption of new accounting pronouncements (note 4) | Net position (deficit) beginning of year, as adjusted and restated | Net position (deficit) end of year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Agricultural Enterprises Development Administration | $ 177,877 | 90,730 | — | — | (81,147) | 103,669 | — | — | 14 | 1,921 | 24,457 | (274,349) | 21,613 | (252,736) | (228,279) |
| Automobile Accidents Compensation Administration | 148,009 | 83,876 | — | — | (64,133) | (5,366) | — | — | 7,602 | — | (61,893) | (82,605) | 3,172 | (79,434) | (141,327) |
| Cardiovascular Center Corporation of Puerto Rico and the Caribbean | 92,891 | 80,936 | — | — | (16,955) | — | — | — | 1 | 3 | (16,955) | (169,449) | — | (169,449) | (186,404) |
| Center of Diabetes for Puerto Rico | 1,021 | 206 | — | — | (815) | 450 | — | — | 1 | — | (361) | 1,825 | — | 1,825 | 1,464 |
| Company for the Integral Development of the "Peninsula de Cantera" | 4,521 | — | 1,210 | — | (3,311) | — | — | 67 | 50 | — | (3,194) | (31,879) | 747 | (31,132) | (34,326) |
| Corporation for the "Caño Martin Peña" Enlace Project | 97,276 | — | — | 1,408 | (8,868) | 9,629 | — | — | 10 | — | 771 | 3,437 | (3,752) | (315) | 456 |
| Culebra Conservation and Development Authority | 491 | 224 | — | — | (267) | 241 | — | — | — | — | (26) | (947) | — | (947) | (973) |
| Economic Development Bank for Puerto Rico | 124,906 | 11,613 | 949 | 65 | (113,028) | — | — | — | 548 | — | (112,430) | 153,966 | (32,606) | 121,179 | 8,749 |
| Farm Insurance Corporation of Puerto Rico | 3,918 | 1,110 | 949 | — | (1,799) | — | — | — | 3 | — | (1,796) | (1,053) | (7,699) | (9,044) | (10,840) |
| Fine Arts Center Corporation | 6,843 | 2,331 | — | — | (4,512) | 3,775 | — | — | 3 | 20 | (714) | 15,486 | (10,842) | 4,654 | 4,140 |
| Independent Consumer Protection Office | 560 | — | — | — | (560) | — | 560 | — | — | — | 20 | 272 | — | 272 | 292 |
| Institute of Puerto Rican Culture | 16,669 | — | 1,683 | 88 | (14,898) | 560 | — | — | — | — | (5,052) | 44,939 | (27,560) | 17,379 | 12,322 |
| Institutional Trust of the National Guard of Puerto Rico | 6,519 | 5,322 | — | — | (797) | — | — | — | 1,239 | — | 442 | 48,188 | (797) | 47,391 | 47,833 |
| Land Authority of Puerto Rico | 30,510 | 8,948 | 435 | — | (21,127) | 13,635 | — | — | — | 5,031 | (2,461) | (92,671) | 7,056 | (85,833) | (88,274) |
| Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads | 2,653 | 667 | 1,153 | — | (833) | 1,175 | — | — | 31 | 165 | 342 | (754) | — | (754) | (412) |
| Musical Arts Corporation | 7,622 | 451 | — | — | (7,171) | 8,052 | — | — | 31 | 185 | 1,107 | (14,912) | (11,175) | (26,087) | (24,980) |
| Public Corporation for the Supervision and Deposit Insurance of Puerto Rico Cooperatives | 48,863 | 23,447 | 168 | — | (25,248) | — | — | — | — | 1,002 | (24,246) | 152,903 | (82,566) | 70,367 | 46,121 |
| Puerto Rico Conservatory of Music Corporation | 12,812 | 3,289 | — | 27 | (9,496) | 6,438 | — | 667 | 7 | 69 | (2,315) | 79,399 | (17,100) | 62,299 | 59,981 |
| Puerto Rico Convention Center District Authority | 75,121 | 27,373 | — | — | (47,748) | — | 3,603 | — | 317 | 1,062 | (42,766) | 160,488 | — | 160,488 | 117,722 |
| Puerto Rico Council on Education | 11,239 | 418 | 1,337 | — | (9,474) | 9,476 | — | — | 33 | 145 | 180 | 3,353 | (12,857) | (9,104) | (8,924) |
| Puerto Rico Energy Commission | 4,157 | — | 1,740 | — | (2,417) | — | — | 5,720 | 9 | — | 3,312 | 2,274 | — | 2,274 | 5,536 |
| Puerto Rico Industrial Development Company | 92,281 | 57,880 | — | 2,180 | (32,231) | — | — | — | 307 | 5,844 | (25,970) | 314,200 | (134,506) | 179,694 | 153,724 |
| Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities Financing Authority | 10 | — | — | — | (10) | — | — | — | 10 | — | 129 | 129 | — | 129 | 529 |
| Puerto Rico Integrated Transit Authority | 1,996 | — | 263 | — | (1,733) | 4,015 | — | — | 6 | — | 2,288 | 1,175 | — | 1,175 | 3,463 |
| Puerto Rico Land Administration | 12,361 | 10,615 | 2,539 | — | 774 | — | — | — | 501 | — | 1,275 | 179,468 | (26,306) | 153,160 | 154,435 |
| Puerto Rico and Municipal Islands Maritime Transport Authority | 42,714 | 4,811 | 13,113 | 2,108 | (22,682) | 16,003 | — | — | — | — | (6,679) | (33,874) | — | (33,871) | (40,550) |
| Puerto Rico Metropolitan Bus Authority | 75,079 | 2,602 | 8,770 | — | (63,707) | 27,609 | — | — | 1 | — | (36,097) | (96,254) | (255,590) | (301,844) | (367,941) |
| Puerto Rico Municipal Finance Agency | 32,593 | — | — | — | (32,593) | — | — | — | 20,642 | 128 | 3,177 | 43,904 | — | 43,904 | 47,081 |
| Puerto Rico Municipal Finance Corporation | 528,416 | — | 127,521 | — | (895) | — | 821 | — | 2,770 | 41 | 2,737 | (242,064) | — | (242,064) | (239,327) |
| Puerto Rico Ports Authority | 142,559 | 100,291 | 7,493 | — | (34,775) | 28 | — | — | 59 | 3,479 | (31,206) | (19,195) | (249,456) | (268,653) | (299,862) |
| Puerto Rico Public Broadcasting Corporation | 22,577 | 2,265 | — | — | (20,312) | 11,838 | — | 2,350 | 108 | — | (6,016) | (757) | (36,171) | (36,908) | (42,924) |
| Puerto Rico Private Partnerships Authority | 11,089 | 3,024 | — | — | (10,065) | — | — | — | 9 | 60 | (9,996) | 63 | 3,404 | 3,467 | (6,529) |
| Puerto Rico School of Plastic Arts | 6,734 | 960 | 1,791 | — | (4,375) | 2,728 | — | — | 269 | — | (1,378) | (1,226) | 1,022 | (204) | (1,582) |
| Puerto Rico Science, Technology and Research Trust | 54,762 | 9 | 9,927 | — | (44,826) | — | — | — | 3,870 | 629 | (40,327) | 145,743 | — | 145,743 | 105,416 |
| Puerto Rico Telecommunications Regulatory Board | 76 | — | — | — | (76) | — | — | — | 17 | 84 | 25 | 1 | — | 1 | 26 |
| Puerto Rico Tourism Company | 148,076 | 157,165 | 1,100 | — | 10,189 | (20,742) | (65,828) | — | — | 70,024 | (6,357) | (36,919) | (99,526) | (136,439) | (142,795) |
| Puerto Rico Trade and Export Company | 40,554 | 14,830 | 4,237 | — | (21,487) | — | — | — | 12,420 | 1,982 | (7,085) | 70,675 | (39,265) | 31,410 | 24,325 |
| Solid Waste Authority | 17,283 | 1,612 | — | — | (15,671) | 4,936 | — | — | 404 | 225 | (10,106) | 3,831 | (14,150) | (10,319) | (20,425) |
| Total nonmajor component units | $ 1,673,038 | 702,876 | 185,419 | 5,876 | (728,866) | 207,461 | (55,104) | 3,564 | 65,712 | 92,741 | (414,972) | 324,881 | (1,023,379) | (698,498) | (1,113,470) |

See accompanying independent auditors' report.