# Debtors' Ex. 81

Debtors' Ex. 81

**Municipal Property Tax Act**
Act No. 83-1991
August 30, 1991

**(Senate Bill 1104)**
**(House Bill 1345)**
**(Conference)**

To adopt the "Municipal Property Tax Act of 1991" conferring powers and authority and assigning functions to the Municipal Revenue Collection Center and transferring to it those related to real and personal property taxes previously assigned to the Secretary of the Treasury; providing for everything relative to the appraisal, levy, notice, determination, and collection of property taxes; providing for the classification valuation and appraisal of the property and the releases and exemptions granted by law; amending Subsection (1) of Article 1823 and Subsection (1) of Article 1824 of the Civil Code of Puerto Rico of 1930, as amended, and Article 200 of Act No. 198 of August 8, 1979, as amended, and Article 1301 of Act No. 3 of January 9, 1956, as amended; repealing Articles 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 302, 303, 304, 305, 306, 307, 308, 309, 311, 314, 315, 316, 317, 319, 320, 321, 322, 323, 324, 325, 326, 328, 330, 331, 332, and 333 of the Political Administrative Code of 1902, as amended, Article 1 of Act No. 1 of September 27, 1951, as amended, clause 3 of Subsection A of Article 2 of Act No. 235 of May 10, 1949, as amended, Act No. 80 of May 10, 1937, as amended, Act No. 81 of May 10, 1947, as amended, Act No. 27 of April 29, 1943, as amended, Act No.61 of May 5,1945, as amended, Act No. 117 of May 9, 1947, as amended, Act No. 151 of May 11, 1948, as amended, Act No. 269 of May 11, 1949, as amended, Act No. 142 of April 24, 1951, as amended, Act No. 100 of June 25, 1957, as amended, Act No. 60 of June 20, 1958, as amended, Act No. 80 of June 25, 1959, as amended, Act No. 71 of June 8, 1960, as amended, Act No. 34 of June 15, 1965, as amended, Act No. 70 of June 25, 1969, as amended, Act No. 54 of May 29, 1970, as amended, Act No. 31 of May 10, 1974, as amended; and Act No. 80 of July 21, 1977, as amended; and establishing penalties.

## STATEMENT OF REASONS

Property taxes constitute the main source of revenue for the municipalities. However, under the current plan, the functions and powers relative to such income are under the control and administration of the Secretary of the Treasury.

In view of this situation, and in keeping with the interest of this Administration to adopt a municipal reform based on greater fiscal autonomy for the municipalities, it was deemed appropriate and necessary to transfer and grant to them maximum financial independence. To this end, all the powers and authority relative to the appraisal, levy, notice, determination, and collection of property taxes are hereby conferred upon them.

Through this new plan, the local governments are given alternatives for revenues and programs, and systems and services, that promote a more effective financial and managerial administration, and thus protect the proper use of public funds. Thus, the system is geared towards ensuring a fairer and more equitable distribution of the tax burden, a better quality of life as well as a greater degree of excellence in the services rendered to our fellow citizens.

*Be it enacted by the Legislature of Puerto Rico:*

TITLE I

Article 1.01. Short Title. This Act shall be known as the "Municipal Property Tax Act of 1991"

Article 1.02. Transfer of Powers. All powers, authority, and functions relative to real and personal property taxes in Puerto Rico, including credit rights and ratings, and preferential liens held and exercised by the Secretary of the Treasury up to the date on which this Act is passed are hereby transferred to the Municipal Revenue Collection Center, hereinafter the "Collections Center" or "the Center."

1

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

TITLE II

TAX RATE ON REAL AND PERSONAL PROPERTY.

Article 2.01. Basic Tax, Non-Exempt and Non-Exonerated Property

(A) Through municipal ordinances passed to that effect, for fiscal year 1992-93 and for each subsequent fiscal year, municipalities are hereby authorized to impose a basic tax of up to four percent (4%) per annum on the appraised value of all personal property and up to six percent (6%) per annum on the appraised value of all real property that is not tax-exempt or exonerated, located within their territorial limits, which will be in addition to any other tax levied by virtue of other laws in effect.

The municipalities are hereby authorized to impose, by ordinance, property tax rates lower than those provided previously when the type of business or industry to which the property is dedicated, or its geographical location, makes it convenient to do so for the development of commercial activity or of any rehabilitation and development zone defined or established through a municipal ordinance. This authorization includes the power to promulgate scaled or progressive rates within the maximum or the minimum, as well as to establish lower rates and even to exonerate from payment of property taxes, when seeking to promote investment in the development and rehabilitation of deteriorated or decaying urban areas of the municipality, all of which is subject to compliance with the conditions and formalities established by the municipality through ordinances, and subject to the person or business being up to date on paying Commonwealth and municipal taxes. Imposing lower rates and/or exoneration from payment of property taxes shall be uniform for businesses of the same nature within each industrial and commercial sector. Until a municipality adopts new tax rates, the rates corresponding to each municipality shall be the sum of the rates adopted by each municipality pursuant to the provisions of law in effect up to the date on which this Act is passed, plus one percent (1%) per annum on the appraised value of all personal property in the municipality and three percent (3%) on the appraised value of all real property in the municipality, which is not tax-exempt or exonerated that had been covered into the General Fund of the Commonwealth of Puerto Rico up to the date on which this Act is passed.

(B) The Collection Center shall appraise and collect said tax pursuant to the same procedures and subject to the same limitations and rights provided by this Act for the appraisal and collection of property taxes in Puerto Rico.

(C) The proceeds of the tax imposed by this Article shall be deposited into the Matching Fund for the Municipalities as set forth by Article 2.04 of this Title.

Article 2.02. Special Tax for Amortization and Redemption of General Obligations. Exemption.

 A special tax of one point zero three (1.03) percent per annum on the appraised value of all non-exempt personal and real property in Puerto Rico is hereby imposed for fiscal year 1992-93 and for each subsequent year, for the amortization and redemption of the general obligations of the Commonwealth. Municipalities are hereby authorized and empowered to impose another additional surtax subject to the requirements established in Act No. 4 of April 25, 1962, as amended. This surtax shall be in addition to all other taxes imposed by virtue of other laws in effect. The Municipal Revenue Collection Center is hereby empowered and directed to collect these taxes annually.

The owners of property for residential purposes are hereby exonerated from the payment of the special surtax and the basic tax imposed by virtue of Articles 2.01 and 2.02 of this Act and the property taxes imposed by the municipalities of Puerto Rico corresponding to fiscal year 1992-93 and to each subsequent fiscal year in an amount equal to the tax imposed on said properties up to fifteen thousand (15,000) dollars of the appraised value of the property, subject to the provisions of Article 2.07 of this Act. For properties partially devoted to residential use, the exoneration from payment of said taxes which would otherwise be payable, shall be recognized only as to that portion of the property devoted to such purposes for up to an amount equal to fifteen thousand (15,000) dollars of the appraised value.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
 *By Targem Translations Inc.*

For veterans, the exemption from payment of taxes granted by the provisions of this Article, shall be calculated after deducting the exemption granted to veterans by legislation in effect from the appraised value of the property.

For taxpayers who avail themselves of the exemption benefits established by this Article and the benefits of a discount for prompt payment as established by Article 3.48 of this Act, said discount shall be calculated on the basis of the difference resulting after subtracting the amount of the exemption granted by virtue of the provisions of this Article from the total tax imposed, subject to collection.

Buildings dedicated to "residential purposes" shall be deemed to be any structures that, as of the 1st of January of the corresponding year are being used as residences by their owners or their families, or any new structures, built to be sold and appraised for tax purposes in the name of the entity or person who built them, if on the date when the tax invoice is issued are being used or available for use by the buyer or buyer's family as their home, provided the owner did not receive rent for its occupancy; including, for properties located in the urban zone, the lot where such structures are located, and for properties located in the rural and suburban zones, the land where such structures are located, for up to a maximum capacity of one (1) *cuerda*. When a taxpayer acquires a new structure built after the 1st of January of any year and submits the certification as evidence that he/she uses it as a personal or family home, the mortgage creditor shall withhold the tax corresponding to the excess of the appraised value over fifteen thousand (15,000) dollars or the tax corresponding to that part of the property not being used as a personal or family home by the owner.
[*Translator's note: A "cuerda" is a measurement unit used in Puerto Rico to measure area, and equivalent to 3,930.39 square meters. 1 cuerda is equivalent to about 0.971 acre.]

Once the certification is submitted, the mortgage creditor shall so notify the Collection Center within a period of thirty (30) days from the date of acquisition of the property.

The tax exemption benefits established by Articles 2.01 and 2.02 of this Title are limited to only one (1) dwelling in every case in which the same owner has more than one property.

For the purposes of this Article, the term "family" includes the spouses and their relatives within the fourth degree of consanguinity or the second degree of affinity.

For purposes of this Article, the term "owner" includes any housing cooperative, limited dividends corporation or non-profit association. For housing cooperatives, the tax exemption provided by Articles 2.01 and 2.02 of this Title shall be calculated on the appraised value for tax purposes proportionally attributable to each housing unit. It will be optional for such cooperatives to avail themselves of the exemption provided by this Article, or the tax exemption provided by Act No. 291 of Apr. 9, 1946, known as the "General Law of Cooperative Societies of Puerto Rico".

"Limited dividends corporation" shall be understood to be those corporate organizations, created exclusively for the purpose of providing housing to low or moderate income families, which are limited as to the distribution of their income by the law authorizing their incorporation or by their own corporate charter, provided they qualify under Articles 221(d) or (3) or 236 of the National Housing Act (Public Law 90-448, 82 Stat. 476, 498) and operate in accordance with the regulations of the Federal Housing Administration Commissioner regarding the distribution of income, the availability of housing for low or moderate income families, rent establishing, fees, rates of return, and operating methods, according to a certificate issued by the Department of Housing of Puerto Rico.

For the purposes of this Article, a nonprofit association shall be understood as a nonprofit organization providing housing for low or moderate income families on condition that the property be used and that the rental fees be established pursuant to the rules and regulations promulgated by the Federal Housing Administration under Articles 221(d)(3) or 236 of the National Housing Act, as amended (Public Law 90-448, 82 Stat. 476, 498), when so certified by the Department of Housing.

Nonprofit associations shall also be understood to be those nonprofit organizations providing housing for rental to persons over sixty-two years (62) of age on condition that said corporations qualify under Article 202 of the National Housing Act, as amended (Public Law 36-372, 86th Congress, 73 Stat. 654), when certified by the Department of Housing.

3

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

In order to enjoy the tax exemption benefits provided by Articles 2.01 and 2.02 of this Title, the taxpayer shall be required to prove, by filing a certification with the Collection Center, or the mortgage creditor, if any, in the manner and on the date set forth by the Collection Center, indicating that the taxpayer meets the requirements established herein, including all the necessary information for the Collection Center to correctly calculate the tax exemption authorized under this Article. Any taxpayer who has submitted the certification referenced in this paragraph shall be required to report any changes in his/her qualifications to enjoy the tax exemption granted herein, and any transfer and modification of the domain on the property for which said certification was filed, as set forth below. If the property secures a loan, the taxpayer is required to periodically deposit the amount of the property taxes with the mortgage creditor, and the taxpayer shall report the changes in qualifications to the mortgage creditor who, in turn, shall notify the Collection Center. In all other cases the changes in the qualifications shall be reported directly to the Collection Center. In both cases, the changes in the qualifications shall be reported prior to the first of January following the date when changes to said qualifications were made.

In all cases in which the property backing a loan is devoted to residential use and the taxpayer is required to periodically deposit taxes that are to be paid on that property with the creditor, the creditor shall pay the net tax imposed according to the invoice, minus the corresponding discount for advance payment, in those cases where the invoice is for an invoice which takes into consideration the tax exemption granted for taxes established by Articles 2.01 and 2.02 of this Title. When the invoice has been made for the total tax levied without taking into consideration the tax exemption, but the mortgage creditor is able to prove that the taxpayer is entitled to the exemption, he/she will deduct the amount corresponding to the exemption from the total tax levied and the discount for advance payment. The mortgage creditor shall pay the difference and include the certification proving the right to the exemption along with the payment.

When the property has not been appraised, but the mortgage creditor is able to prove that the property is taxable pursuant to this Act or any other ordinance in effect, and that the taxpayer is entitled to the tax exemption granted by Article 2.02 of this Act, he/she will proceed to determine a preliminary tax pursuant to the valuation parameters in effect to be supplied by the Collection Center. The mortgage creditor will deduct from the total of the determined tax the amount corresponding to the exemption and the discount for prompt payment and will collect the corresponding tax and pay same to the Collection Center. Said payment will be accompanied by a certification attesting to the location of the property, its official real estate district record number or the taxpayer's social security number, the preliminary appraised tax, the amount of the tax exemption and the tax paid to the Collection Center. The Center will appraise the property for which the payment is made within the six (6) -month period after the certification is received.

If, after making the adjustment and the payment indicated in the previous paragraphs, there is a difference between the amount deposited by the taxpayer for payment of taxes and the real amount paid by the mortgage creditor in the name of the taxpayer, the mortgage creditor shall be required to reimburse the resulting surplus to the taxpayer.

As an indispensable condition for the taxpayer to enjoy the benefits of the exemption provided under this Article, it is established that by January 1st, prior to the fiscal years for which the tax exemption is requested, the taxpayer must not owe any amount in real property taxes on the property subject to the tax exemption application, or that instead, the taxpayer draw up a payment plan have it approved so as to ensure the liquidation of the debt in arrears. This payment plan must be set up within thirty (30) days after the exemption certificate has been filed. Should the taxpayer fail to comply with the requirement to set up the payment plan, the right to the tax exemption authorized under this Article shall not be recognized for those fiscal years for which the taxpayer filed the certificate but did not set up any payment plan whatsoever.

Should the taxpayer fail to pay the amount due as agreed in the payment plan, the total debt will be deemed due and the Collections Center will proceed to collect it through legal collections proceedings pursuant to the provisions of this Act, including expenses for auction notices and subtracting what has been paid up to that moment. The Collections Center is hereby empowered to enter a lien to last until the total liquidation of the tax debt.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

None of the provisions of Articles 2.01 and 2.02 of this Title shall prevent the Collection Center from resorting to the sale at public auction of any property devoted to residential use when such property is, or could be, securing a lien for tax debts.

When a payment plan is granted to partially tax-exempt owners to liquidate a debt in arrears, the provisions of Article 3.46 of this Act, concerning the application of payments in a rigorous date-due order shall not apply upon liquidation of the tax corresponding to the 1992-93 fiscal year and subsequent fiscal years, regarding the tax exemption provided for taxes imposed under Articles 2.01 and 2.02 of this Title.

Any person who, in order to take advantage of the tax exemption benefits established by Articles 2.01 and 2.02 of this Title, submits any fraudulent statements, evidence or information, or intentionally fails to report any changes whatsoever in his/her qualifications for the tax exemption benefits established herein, or intentionally fails to report any ownership transfers or modifications concerning the property for which he/she enjoys the benefits of said exemption, or who knowingly fails to submit or conceals the true details which allow the Collection Center to correctly calculate the authorized tax exemption for the taxes established by Articles 2.01 and 2.02 of this Title, shall incur a misdemeanor and, upon conviction, shall face a fine of five hundred dollars ($500) or imprisonment for six (6) months, or both, at the court's discretion.

The Collection Center shall prescribe the rules and regulations needed to comply with the provisions of Articles 2.01 to 2.08 of this Title.

Article 2.03. Exemptions for New Construction

The owners of newly built properties operating same under the provisions of Article 8 of the National Homes Act of 1974 (Public Law 93-383, 88 Stat. 659) are exempt from taxes imposed pursuant to Articles 2.01 and 2.02 of this Title, corresponding to fiscal years subsequent to this act, as long as they continue to operate under the aforementioned provisions, for the purpose of providing rental housing with rent subsidy to low or moderate income families, when so certified by the Puerto Rico Housing Department.

Property owners who have acquired low-cost housing projects from the Department of Housing in order to partially rehabilitate them for the purpose of providing subsidized rental housing to low- and moderate-income families under the Rent Subsidy Plan provided by Article 8 of the National Homes Act of 1974 (Public Law 93-383, 88 Stat. 659), shall further be exempt from the tax imposed pursuant to Articles 2.01 and 2.02 of this Title so long as same continue to operate under the aforementioned provisions and when so certified by the Department of Housing. The aforementioned exemption shall apply to any acquisition of low-cost housing projects made beginning in fiscal year 1992-93.

Article 2.04. Taxes and Application of Funds

The proceeds from taxes levied under Articles 2.01 and 2.02 of this Act shall be deposited into the general trust established jointly by the Collections Center and the Government Development Bank, pursuant to the provisions of Subsection (c) of Article 4 of the "Municipal Revenue Collection Center Act". The proceeds from taxes imposed by Article 2.02 of this Act shall be applied by the Government Development Bank for Puerto Rico for payment of the principal and interest on the general obligations of the Commonwealth of Puerto Rico and the municipalities as evidenced by bonds or notes, or to the early redemption of said obligations, including the payment of any premium that is required for the redemption of any general obligation of the Government of Puerto Rico and of the municipalities, as evidenced by bonds or notes. Such early redemption shall be executed with the approval of the Government Development Bank for Puerto Rico.

Article 2.05. Preferential Obligation

 The provisions of Articles 2.02 to 2.08 of this Title regarding the payment of principal and interest on general obligations of the Government of Commonwealth of Puerto Rico and of the municipalities, evidenced by bonds or notes, shall be considered as a preferential obligation and same shall constitute sufficient authorization for the Government Development Bank for Puerto Rico to carry out the corresponding distributions pursuant to this Act.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
 *By Targem Translations Inc.*

Article 2.06. Compensation to Municipalities for Exemptions

Pursuant to the provisions of Article 2.09 of this Act, the Secretary of the Treasury shall compensate the corresponding municipalities for uncollected property taxes resulting from the tax exemption provided by Article 2.02 of this Title on residential properties whose exemption had been requested [up] to January 1st, 1992, as set forth in this Act.

The Secretary of the Treasury, under the appropriation provided in Article 2.09 of this Act, shall continue to remit annually to the Government Development Bank for Puerto Rico, for the benefit of each municipality, the amount equivalent to the uncollected basic tax and tax levied for the payment of municipal borrowings from the tax exemptions requested up until January 1, 1992, as indicated above.

Article 2.07. Modification of Tax Exemption

The tax release or exemption on residential properties provided by Article 2.02 of this Title cannot be eliminated or reduced.

Article 2.08. Commitment on Good Faith, Credit, and Taxing Power

Nothing contained in this Act shall be construed to modify a prior action taken according to law that commits the good faith, credit, and taxing power of the Commonwealth or of any municipality for the payment of the principal or interest on any bonds or notes of the Commonwealth or of any municipality, nor does it impair guaranty of commitments of such a nature entered into from now on according to the law. When the resources available for a fiscal year are not sufficient to cover the appropriations approved for that year, the procedures provided in Sec. 8 of Art. VI of the Constitution of the Commonwealth of Puerto Rico shall be followed.

Article 2.09. Appropriation to the Municipal Revenue Matching Fund

An amount equal to the uncollected tax on residences for which tax exemption had been requested by January 1, 1992, as provided by this Act, resulting from the tax exemption provided by Article 2.02 of this Act, plus the equivalent of the amount of twenty hundredths of one percent on property tax, for which the municipalities are compensated by Act No. 16 of May 31, 1960, is hereby appropriated to the Collection Center from available funds in the Puerto Rico Commonwealth Treasury for 1992-93, and for each subsequent fiscal year, for deposit in the Government Development Bank for Puerto Rico as trustee, pursuant to the provisions of Article 2.04 of this Act.

Article 2.10. Payment in Lieu of Taxes

Payment in lieu of taxes made by public corporations to municipalities shall include the property taxes corresponding to them according to the applicable provisions of law up to the date on which this Act is passed, plus the rate increase adopted by each municipality pursuant to this Act.

The tax corresponding to one (1) percent and to three (3) percent per annum of the appraised value of the real and personal property, respectively, which tax was deposited into the General Fund in accordance with the provisions of law in effect on the date on which this Act is passed, is hereby excluded from said calculation.

The formula for payment in lieu of taxes shall be kept unaltered except when a municipality adopts a rate increase within the available margin under said former act and under this Act, in which case the rate increase decreed by the municipality shall modify the base for calculating the amount which the municipality will pay in lieu of taxes.

TITLE III. CADASTRAL SURVEY, PROPERTY CLASSIFICATION AND APPRAISAL

Article  3.01. Cadastral Survey, Property Classification and Appraisal

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

The Collection Center is hereby empowered, subject to applicable provisions of law, to perform a cadastral survey of all real property in Puerto Rico, and to classify and appraise all real and tangible personal property and establish valuation and assessment norms so scientifically accurate and detailed that adequate and equitable property valuation rates may be set for tax purposes.

Article 3.02. New Appraisal

The Collection Center may only perform a new appraisal of property in Puerto Rico when the conditions and requirements imposed by this Article are met.

The Governing Board of the Collection Center may authorize the Center, by means of a resolution issued as set forth below, to carry out a new appraisal for real, as well as personal property. For the purposes of said appraisal, the Center must establish a new classification, adopt valuation norms, and perform a new cadastral survey if needed.

The Governing Board may issue such a resolution only when it is shown, after a duly substantiated evaluation and report, that the Collection Center has substantially appraised all the unappraised real and personal property and that it has reached a level of operational efficiency in collecting taxes as well as in performing its functions and operations to allow it to have the personnel and mechanisms needed to perform a new appraisal.

The resolution ordering the Collection Center to perform a new appraisal of all tangible real and personal property in Puerto Rico must be approved by the unanimous vote of all the mayors who are members of the Governing Board and ratified by the Secretary of the Treasury.

Once the resolution ordering a new appraisal is approved and ratified, the Collection Center shall classify and appraise all real property in its real and current value using any of the recognized methods and factors for the appraisal or valuation of property, so that the appraisal of each of the different types of property will yield uniform results.

Article 3.03. Classification of Real Estate

For the purposes of Articles 3.01 and 3.02 of this Act, and in order to determine the size of different properties, the Collection Center may use the proper and reasonable methods and information and may also make such determinations based on the physical information found in the field and that which is furnished by the owner's agent. Should it be subsequently discovered that the Collection Center has not been correctly informed as to the legal division of any land into lots, said incorrect information shall not grant rights of any kind to the alleged owners of these properties. Thereafter, the Collection Center shall use as taxable units the original land lots or estates as they existed before being illegally divided. According to the Real Estate Office, the owner shall be liable for all unpaid taxes after deduction of those payments that have already been made with all the consequences this may entail, including the attachment of the original land lot, provided for all effects and purposes, that no division or splitting into lots whatsoever has been made.

The Collection Center is hereby authorized to consider as approved for tax purposes only, the adjoining parcels belonging to the same owner within the same municipality, provided said grouping logically and reasonably expedites the appraisal of said property. At the request of the taxpayer, his/her heirs or assignees, or a mortgage creditor, the Collection Center shall distribute the tax thus assessed among the various parcels considered as a group, as provided above, when the boundaries of said parcels are clearly laid out in the deeds and can be established on the spot. The forms, cards, plans, maps, photographs, tables, graphics and all the documentation and information obtained and used by the Collection Center to classify, valuate and appraise the properties by the scientific method ordered by the Articles in this title, shall be evidence and shall constitute prima facie proof for taxable purposes, of the circumstances and appraised value of the referenced property and, as such, shall be admitted in evidence by the Courts of Puerto Rico. The Collection Center, or any agent by it designated, may testify as to the information contained within such evidence and its connection to the value of the property to which it refers.

Article 3.04. Right to Enter Any Property, Take Measurements, etc.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

In order to comply with the provisions of Articles 3.01 to 3.08 of this Title, the Collection Center, its officials, agents, or employees, shall have the right to enter any property to take measurements, ascertain boundaries, perform soil tests or carry out any other task that may be necessary or pertinent for such an appraisal, after notifying the owner or his/her representative at least five (5) days in advance.

Article 3.05. General Authority of the Governing Board

Pursuant to the authority and duties granted by the Municipal Revenue Collection Center Act, the Governing Board of the Collection Center may:

(a) Contract and recruit personnel and carry out all administrative duties needed to enforce and implement this Act.

(b) Adopt and promulgate such rules and regulations as may be necessary for the administration of this Act, which shall be effective after due notice to the Governor of the Commonwealth and subject to Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act of the Commonwealth of Puerto Rico. "

(c) Hold public and administrative hearings, summon witnesses, require the submission of books and documents pertaining to any investigation needed for the purposes of this Act, and take the oath of those witnesses appearing before it.

Article 3.06. Access to the Work of Other Agencies

All departments, agencies, authorities, and instrumentalities of the Commonwealth of Puerto Rico are hereby directed to make available to the Collection Center any report already prepared or being prepared or any work already performed or being performed, which is directly or indirectly relevant to the purposes of Articles 3.01 to 3.08 of this Title. The Planning Board and the Permits and Regulations Administration are also directed to notify the Municipal Revenue Collection Center as to changes in zoning, segregation, and construction.

Article 3.07. Judicial Orders and Writs

The Superior Court is hereby invested with jurisdiction to issue any orders or writs needed to enforce the provisions of Articles 3.01 to 3.08 of this Title by petition of the Collection Center.

Article 3.08. Review of the Real Property Appraisal; Unappraised Property

The Collection Center shall proceed to draft a plan to allow the continuous review of real property in order to keep it up to date, whether through modifications for depreciation due to use or any of the factors indicated in Subsections (b), (c), and (d) of this Article. This review must be carried out pursuant to the valuation norms in effect at the time the appraisal is reviewed.

Regarding unappraised property, the Center, in its continuous obligation to maintain the cadaster, classification and appraisal of real estate up to date, must appraise:

(a) All property that has not been appraised by the date on which this Act is passed;

(b) all new construction;

(c) all unappraised substantial improvements to, or reconstruction of real property that has been previously appraised;

(d) segregation and parceling pending processing on the effective date of this Act, as well as those authorized thereafter.

The classification and appraisal of real property described in the appraisals set forth under Subsections (a), (b), (c) and (d) of this Article shall be performed under the standards of accuracy and scientific appraisal details adopted by

8

the Secretary of the Treasury that are being applied and are in effect on the date on which this Act is passed. The regulations, rules and procedures adopted to such effects by the Secretary of the Treasury shall remain in effect and shall only be amended, repealed, or substituted by the Governing Board of the Collections Center after having met the conditions and procedures set forth in Article 3.02.

The levy, notice and collection of taxes corresponding to the property indicated in Subsections (a) and (b) of this Article, shall only be retroactive for five (5) years from the date said property was appraised.

For properties listed in Subsection (c), which constitute the taxpayer's main residence, the levy, notice and collection of the corresponding tax shall be prospective from the date the appraisal is performed.

Article 3.09. Appraisal and Collection Districts

For the purpose of implementing this Act and performing the duties imposed and powers conferred upon it, the Collection Center is hereby authorized to create the necessary Appraisal and Collection Districts, and appoint the personnel, agents or representatives to whom it shall delegate its powers and duties pursuant to the Municipal Revenue Collection Center Act.

Article 3.10. Books, Blank Forms and Instructions; Designation, Powers and Duties of the Agents

The Collection Center shall have the duty to ensure that the books, blank forms and other papers needed to perform the task of revising and keeping the property appraisal complete pursuant to the provisions of this Act are prepared; to publish the regulations that may be needed as guidelines for the taxpayers and as instructions for the agents and other officials charged with the obligation of appraising or revising the appraisal of the property, and to direct the preparation of complete forms for the appraisal of every kind of property which is, or could be subject to taxes under the laws of Puerto Rico, to which any interrogatories deemed to be in the interest of obtaining a complete disclosure of all said property may be added. In order to carry out the appraisal, revision, inspection and collection efforts, the Collection Center shall designate agents, officials or representatives who shall have and exercise the powers corresponding to such agents, officials and representatives, subject to the Municipal Revenue Collection Center Act. When so ordered by the Collection Center, said agents, officials, or representatives, shall serve judicial warrants, execute attachments, and take charge of the general inspection of the foreclosure and sale of the property of delinquent taxpayers in the manner determined by this Act. They shall also assist the Center's employees, public agencies, and any financial institutions and auditing and credit cooperatives that have a tax collection agreement with the Center in matters relating to tax collection. They shall also have free access to the files of the property registrars and be responsible for any other duties assigned to them by the Collection Center.

The agents charged with property appraisal by order of the Collection Center shall be empowered to: enter any property after due notice to the owner or his/her representative, in order to take the necessary steps to appraise said property or an adjoining property; demand that an owner or person in charge of a property produce existing maps or documents in their possession which may be necessary or useful for measuring or appraising said property; inspect and copy information from accounting books that may yield information necessary to the valuation or appraisal of any property. When the owner or person in charge of the property who has been previously notified, refuses to allow the entry of the agent designated by the Collection Center without just cause, he/she or said agent may make an appraisal on his own initiative that shall have the same value and force as any other appraisal. In this case, the Collection Center may also obtain the necessary order from the Superior Court to allow entry to the property, pursuant to Article 3.06 of this Title.

Article 3.11. Definition of Personal and Real Property.

All tangible personal and real property that is not expressly tax-exempt shall be appraised as taxable. For tax-appraisal purposes, "real property" is defined as the land, subsoil, structures, objects, machinery, and devices attached to the building or the land in any way which indicates permanency without taking into consideration whether the owner of the object or machinery is the owner of the structure, or if the owner of the building or other object resting on the land is the owner of the land, and without considering other aspects such as the intention of the parties in contracts which affect said property or other aspects which are not objective conditions of the property

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

itself in the manner in which the same is attached to the building or the land and which help in the objective classification of the property itself as personal or real property.

Personal property shall include said machinery, containers, instruments or devices not adhered to the building or the land in a way which indicates permanence; grazing cattle, money, whether in the possession of the owner or another person or deposited in some institution; bond, shares, credit certificates in non-incorporated syndicates or association; copyrights, trademarks, franchises, concessions, and all other matters and things susceptible to being private property, not included in the meaning of the phrase "real property", although that shall not include credits in checking accounts, savings accounts, established rate deposits, notes or other personal credits.

Article 3.12. Personal Property Partnership

Partners in commercial firms and other businesses, whether residing in the same place or in different places, shall jointly be subject to taxation under their trade name at the location where their businesses are established, for all personal property used in these businesses, including all types of ships or vessels, boats and launches, except when these are tax-exempt pursuant to Sub-Article (i) of Article 5.01 of this Act. In the event that the established partners have their businesses in two or more appraisal districts, they shall be subject to taxation in each of said locations or offices, in proportion to the property they have in each district. When several partners are thus jointly subject to taxation, each partner shall be responsible for the total amount of the taxes.

Article 3.13. Personal Property in the Possession of an Individual Other than the Owner

Personal property in the possession of merchants, representatives, agents authorized to sell, persons who deal or do business on commission, and persons who have in their possession personal property belonging to others, subject to the payment of property taxes, shall be appraised in the municipality where said property is located under the name of its true owner, except in those cases in which the true owner of said property resides outside Puerto Rico and has no representation or office in Puerto Rico, when said property shall be appraised in the name of the person or entity in possession of said property. Personal property shown to have entered Puerto Rico, originating outside Puerto Rico for the purpose of being manufactured or assembled or worked on in any other way, shall be exempt from property taxes if it is shown that once it is manufactured or assembled in any way, it is sent outside Puerto Rico. The Collection Center is hereby authorized to return the taxes collected on the merchandise referenced in this Article, pursuant to the laws in effect on the matter, although without discretion, as soon as it is shown that same has been sent outside Puerto Rico, as set forth above.

Article 3.14. Manufacturer, Merchant, or Dealer Inventory

That part of the property of any manufacturer, merchant or dealer consisting of merchandise in stock or other items for sale shall be accounted for separately and appraised according to the annual average inventory value for the calendar year immediately preceding the appraisal date as it appears on said manufacturer, merchant, or dealer's books, should they keep an acceptable accounting system which clearly and exactly includes periodic inventories for said year. For appraisal purposes, the inventory appraisal method known as "LIFO" (last-in-first-out) is not an acceptable accounting method for the purposes of this Act. If the accounting system does not clearly and exactly reflect the periodic inventories during said year, or in the event that said manufacturer, merchant or dealer does not keep any accounting system whatsoever, the determination of the manufacturer's, merchant's or dealer's annual average inventory shall be made according to the method which clearly reflects its value, such as the value of the stock on the date of the appraisal for the calculation of the tax as established by this Act, in which case, the annual average inventory value will represent the cost of replacement or reproduction for the dealer during the closest preceding year to the date of appraisal, but not its retail sale price. The above shall be subject to the non-limitation of the ways in which to clearly and exactly determine the taxpayer's average inventory.

Article 3.15. Appraisal List, Cards, and Tax Return Form

The appraisal of real property, as it appears on the tax list for the preceding fiscal year, shall constitute the appraisal list for the following fiscal year after it has been corrected, amended and revised, as provided herein. As soon as possible after the first of January of each year, the Collections Center must prepare a return or appraisal card, listing

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

separately and in detail each real estate property and the improvements thereto taxable in the same municipality, belonging by the first of January to any person whose taxable assets had not been previously appraised, or that in the judgment of the Collection Center or its authorized agent should be appraised, or the appraisal of which should be revised pursuant to Article 3.08 of this Act, or the revision of which has been requested by the property owner, the municipal authorities of the district in which it is located, or any citizen of Puerto Rico in order to be taxed accordingly. In cases where the same person owns taxable assets in more than one municipality, separate returns or cards shall be prepared for each municipality. In order to expedite any program or plan for appraisal revision, or for new property appraisal, after prior approval by the Governing Board of the Collection Center, same may establish an appraisal return system through which the taxpayer will directly provide detailed information on the taxable property. To those ends, the Collection Center or its agent may deliver to any owner of taxable assets in its tax district or to any adult member of his/her family, or commercial establishment, the blank appraisal cards or returns in question, accompanied by the interrogatories it may deem necessary to ascertain the taxable assets and their value and it will require that this person issue the corresponding invoice for such a return or card, fill it out properly and return it within a term not to exceed ten (10) days. It shall be the duty of the person subject to taxation to provide on said return, form or interrogatory, a complete list and exact valuation of all taxable personal property that he/she owns in his/her own right, or that is in his/her possession, and deliver said returns, forms or interrogatories to the Collection Center or its agents, within the term indicated in Article 3.22 of this Act. Every partnership, trustee, or depositary, administrator, guardian, agent and any person who has any equitable legal title, who owns any property in his/her own right, or who has, or claims to have as his/her own, for any other circumstance, any property that should be listed in said form, interrogatory, or return, shall be deemed to be subject to the provisions of this Act and shall be required to complete and deliver said return, form or interrogatory as provided herein. Whenever two (2) or more persons have, own, or occupy any property as administrators, executors, trustees or depositaries, or as trustees or agents, either of said persons may take the oath required by Article 3.20 of this Title and every return, form or interrogatory corresponding to the assets of a partnership must be sworn to by at least one member of said partnership. However, the Collection Center or its agent, shall in no way rely on the list of assets nor on the value established on the taxpayer's return; instead, it will proceed to appraise the real and effective property value in view of the reports thus acquired, or of the other data that it might be able to obtain, taking into consideration all the factors in matters of valuation or appraisal, including the market value, without taking into account a forced sale.

Article 3.16. Property under Litigation; Deposited with a Government Official; Reputed to Belong to the Commonwealth; Owner Unknown.

Property under litigation in which the Commonwealth of Puerto Rico is not a party shall be appraised as belonging to the person who is in possession of same. Should the property be deposited in the hands of any administrative, judicial or municipal employee, it shall be appraised as if belonging to said employee, who shall dispose of an amount of it enough to cover the payment of the taxes imposed thereon, unless said taxes are paid by some person who possesses, acquires or claims any right or title to it, or share in it, in which case, and in regard to the amount paid, said payment shall constitute a lien on the property and shall give the person who made it a preferential right over any other creditor, except the Commonwealth of Puerto Rico. All property generally known to belong to the Commonwealth of Puerto Rico shall be appraised in the name of the usufructuary, if any, but said appraisal shall not diminish the right or title that the Commonwealth of Puerto Rico has on any other property of said usufructuary. If the owner or claimant of a property appraised in the name of another person is unknown, the appraiser will evaluate and appraise said property making an appropriate description of same on behalf of "owner unknown."

Article 3.17. Place of Appraisal of Personal Property; Name to which It Shall Be Appraised

All personal property existing in Puerto Rico shall be assessed in the name of its respective owner, or of the person who, as provided in this Act, is liable for the tax in the municipality where he/she resides as of the first of January, except that the personal property such as articles, effects, merchandise and other stock, and the machinery used in certain branches of manufacturing or in any industry or business, including among said machinery that which has been leased and is being used through an agreement in which the payment of a fee is stipulated, equine and any other type of livestock, and any other personal property which is permanently located in a municipality, shall be assessed for taxation in the name of its respective owners or of the person who, as set forth in this Act, is liable for the taxes under this Act in the municipality where such property is located. The shares of banks that do business in

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*  By Targem Translations Inc.*

Puerto Rico shall be assessed and charged to their owners in the municipality in which said banks are located, as set forth below.

Article 3.18. Place of Appraisal of Real Estate; Name to which It Shall Be Appraised; Mortgage Deduction, etc.

All real property shall be assessed in the municipality in which it is located, to be taxed in the name of the person who is the owner or is in possession thereof on the first day of January. If the property is registered in the Property Registry, the Collections Center shall assess the property in the name of the person under whose name it is registered in the Property Registry on date of the assessment, unless the Collection Center has knowledge that said person is not its true owner, in which case the Collection Center shall perform the assessment in the name of the true owner. If after the Collection Center has prepared and issued an invoice to the registered owner it is discovered that the true owner of said property on the date of the assessment is a different person or entity, the Collection Center is hereby authorized to cancel the incorrect invoice, perform a new assessment and prepare a new invoice in the name of the true owner. It is also authorized to cancel any real estate tax invoice upon the voluntary purchase or expropriation by the Government of the Commonwealth of Puerto Rico and its instrumentalities, or by the Government of the United States and its instrumentalities, after the first of January and before the first of July of any year. In this case, it shall issue new invoices in the name of the agency or public corporation should either be required to pay property taxes, which shall be liable for its payment as if it had been taxed from the first of January. Should the agency or public corporation be tax-exempt, no invoice whatsoever shall be issued. No deduction whatsoever shall be made on account of any debt secured by a mortgage, annuity contract, sales contract with repurchase clause, a contract or other obligation which said real property has been encumbered with, it being up to the mortgagee or holder of the mortgage, annuity contract, sales contract with repurchase clause, contract or other obligation to fulfill the tax obligations on said property, which in that case, shall continue to be deemed and treated as interest in the property affected by them, and the mortgagee or annuitant shall continue to be subject to the payment of the corresponding taxes, and the value of the property affected by said liens, which shall be deducted therefrom, shall be what is taken into account for taxation on the owner thereof in the local municipal district in which the property is located; and the taxes so levied shall constitute a lien on the property and the collateral, which may be paid by any of the parties in said collateral, but should the owner of the property pay the same, said taxes shall constitute a payment on account of the debt and its amount, and shall be an acquittance thereof.

Article 3.19. Owner's Duty to Declare Unappraised Assets; Penalty

Each person who owns taxable assets pursuant to the laws of Puerto Rico which have not been appraised for the levy of taxes or which have not been appraised nor paid taxes during any fiscal year, shall have the duty to report such properties to the Collection Center. Any person who willfully fails to make the abovementioned report shall incur a misdemeanor, and upon conviction shall face a fine of five hundred dollars ($500) or imprisonment for six (6) months, or both, at the court's discretion.

Article 3.20. Taxpayer's Oath

Any person subject to taxation pursuant to this Act, when submitting the appraisal list or return pursuant to Article 3.15 of this Title to said appraiser, shall present or sign an oath or affirmation in the following terms:

" I, _____, under oath or affirmation, state that to the best of my knowledge and belief, the preceding statement contains a full, true and complete list of all the properties that I have or own (or that I own in partnership or that I have in my possession as depositary, administrator, tutor or guardian of an insane person, or as an agent) in the Municipality of _____ and that all of said property has been described fully and equitably, and that its true value and condition has been declared, and that all questions asked regarding said property have been answered fully and truthfully; that under no circumstance have I attempted to mislead said appraiser with respect to the quantity and quality of said assets; that I have not, directly or indirectly, converted or changed any part of my property for another which is tax-exempt, nor for securities of any type, for the purpose of evading their appraisal for taxation.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*  By Targem Translations Inc.*

Signed and sworn [before] me on this _____ day of _____, 19 _____

Appraiser"

Article 3.21. Notice to Municipalities of Changes in the Appraisal; Appeal by the Municipality

Whenever the Collection Center makes a review of the appraisal of a taxpayer's property, or makes an appraisal of a taxpayer's property that has not been previously appraised, or makes any change in the list and appraisal form of the property presented by any taxpayer which form has been returned for such purposes, the Collection Center shall, within thirty (30) calendar days, notify the Mayor of the municipality in which same is located of its resolution in writing with a description of the appraised property, and if several municipalities are involved, the Mayors of each such municipalities. The mayor shall report said appraisal to the Municipal Assembly so that the latter may determine whether or not said appraisal seems correct.

Article 3.22. Property Omitted from Appraisal; Penalties; Void Appraisals

Whenever the Collection Center becomes aware that any real property subject to taxes has been omitted from the appraisal of the property of any taxpayer during any fiscal year or years, it shall be its duty to have it appraised immediately for the years that said property has not been appraised, and to add it to the tax list for said years, proceeding to the collection of the corresponding taxes as well as to the collection of the interest and penalties accrued for not having paid said taxes on time, which it shall do in the same way in which it collects the other taxes prescribed in this Act. However, if the appraisal and taxation of said property has been omitted and its owner is not guilty of that omission, it shall be the duty of the Collection Center to fully write off the penalties thereon. In every case in which real property has been appraised, for one or several fiscal years, but the appraisal has been made in the name of a person other than the true owner or possessor of said property, or made in such a way as to be void, the Collection Center shall cancel said appraisal, remove it from the tax lists and withdraw and cancel the corresponding tax invoices, and shall then proceed to perform a new appraisal of said property and correct the tax lists accordingly, as well as to collect the still pending taxes corresponding to the aforementioned new appraisal, as set forth in this Article for the appraisal and collection of taxes on real property that has not been mistakenly appraised. Likewise, it shall be the duty of the Collections Center to write off interest, fines, and penalties when the taxpayer has not been advised as to the appraisal and taxation.

Article 3.23. Penalty for Failing to Complete and Return the Appraisal Form

Any person who willfully fails to complete and return the appraisal return form when required by an appraiser, within a period of ten (10) days after it has been delivered, shall incur a misdemeanor, and upon conviction shall face a fine of five hundred (500) dollars or imprisonment for six (6) months, or both, at the court's discretion.

Article 3.24. Interviewing Witnesses upon Declaring and Valuating Undeclared Property.

When declaring or valuating the property of persons who have not submitted a list of same on the return, in the cases and pursuant to the provisions of Articles 3.19 and 3.22 of this Title, the appraiser is authorized to interview any person whom he/she believes has knowledge as to the amount and value of said property, under oath or affirmation.

Article 3.25. Taking the Oath or Affirmation.

The Collection Center and the appraiser and agents in charge of the appraisal are hereby authorized to take the oath or affirmation of any person or persons who declare and valuate their assets.

Article  3.26. Remittance of Returns to the Collections Center; Taxation; Notice thereof

As the appraisal or review of property appraisal, as provided herein, is carried out, or at such intervals of time as the Collection Center may indicate, each appraiser shall promptly remit the completed returns to the Collection Center, which shall have them examined and sorted, and shall impose taxes accordingly. Once the tax has been levied, it

13

shall be the duty of the Collection Center, within ten (10) days following the date on which it remits the corresponding invoices to the various collectors and authorized representatives, to give notice thereof to the public in at least one (1) daily newspaper of general circulation in the Commonwealth of Puerto Rico. In addition, the Collection Center shall mail a notice of the levying of the real property tax to each taxpayer. The Collections Center may, at its discretion, use additional means to give notice to the public. No other notice or notification of taxation shall be necessary and, for the purposes of the payment thereof, as provided in Article 3.44 of this Title, the publication of the notices as set forth herein, shall constitute, with respect to each taxpayer, full notice of the levy of the tax. When, during the course of the fiscal year, in isolated cases, new, additional or substitute invoices are issued, which for any reason could not be issued at the beginning of the fiscal year, other than those specified in Article 3.27 of this Title, the publication of these notices shall not be necessary, and in such cases the Collections Center shall notify the taxpayer in writing by sending the notice by mail, addressed to the taxpayer, to the post office of the municipality where the taxpayer resides, and if the address is unknown, to the post office of the municipality where the property is located. In these cases, sending the notice by mail shall constitute sufficient notice of taxation.

Article 3.27. Notice to the Taxpayer of Changes in Appraisal; Superior Court Review

Whenever any change is made in any taxpayer's current property appraisal, or a taxpayer's previously unappraised property is appraised, or any change is made in the appraisal form filed by any taxpayer, or when the taxpayer has requested the reappraisal of property, the Collection Center or its authorized representative shall notify said taxpayer of the appraisal and the tax imposed by delivering a copy thereof to the taxpayer or to any adult family member or employee who is of legal age, or to the person in charge of said property, or by sending the notice by mail, addressed to the taxpayer at the post office of the taxpayer's municipality of residence, and if the address is unknown, to the post office of the municipality where the property is located in those cases in which personal service was impossible; and the taxpayer shall be obligated to pay the tax in the manner and within the term set forth in Article 3.44 of this Title. In the cases referred to in this Title, the taxpayer may, however, request a review of the tax thus imposed, by filing same with the Superior Court in the manner, within the term and upon meeting the requirements provided by law. When the taxpayer requests an administrative review of the tax levied pursuant to the provisions of this Act, the taxpayer shall comply with the provisions of this Act prior to any judicial proceeding on the matter.

If the decision of the Superior Court or, upon review, that of the Supreme Court, is adverse to the taxpayer, said decision shall provide that the tax challenged, or the part thereof that is deemed to be correctly levied, shall be paid with the corresponding interest from the date of expiration of the term granted to pay the tax without interest under this Act.

If, upon review of a decision adverse to the taxpayer, the decision of the Supreme Court is favorable to the taxpayer, and the taxpayer has paid the challenged tax after the decision of the Superior Court, said decision shall provide that the taxpayer shall be reimbursed for the tax or the part thereof that the Supreme Court deems was illegally or excessively collected, with interest on said amount at the annual interest rate authorized by law, calculated from the date of payment of the challenged tax.

Article 3.28. Record of Judicial Decisions Affecting Appraisal; Notice to the Taxpayer.

In a book kept for such purpose, the Collection Center shall record each case resolved by the Superior Court or by the Supreme Court of Puerto Rico regarding those cases it has reviewed, and each appraisal modified by said courts, as well as the date in which the change in the appraisal was ordered. The taxpayer whose property appraisal was altered or whose rights were affected by the final order of the aforementioned courts shall be notified of said resolution in writing, and same shall also be recorded in the referenced book.

Article 3.29. Appraisal Book Contents; Presumption of Validity; Endorsement by the Collection Center

The tax returns or lists referenced in the previous Articles shall jointly constitute the appraisal book for the district to which they refer, according to which the tax prescribed by this Act shall be levied and collected; and it shall be presumed as definitive and valid by every court, and shall not be altered nor rejected except to correct a material error. In each appraisal book corrected according to the decisions of said Superior Court or Supreme Court, the Collection Center shall endorse and sign a notation as evidence to the effect that said book is the appraisal book for

14

the district to which it refers, and said appraisal book, endorsed as mentioned, shall constitute the appraisal of the property for tax purposes for the fiscal year beginning on the first of July.

Article 3.30. Description of Real Property; Tax Constitution a Lien; Notice of Sale

It shall be the duty of the Collection Center, upon verifying the appraisal or reviewing the existing one, to cause every farm or parcel of real property to be listed separately, and to record the appraised value of each, together with a description of same and the information needed to identify its owner as far as it may be possible to obtain those reports. When the real property includes lands and improvements jointly, the appraised value of the lands shall be separated from the improvements. The tax levied for the current fiscal year and for the previous five (5) fiscal years on each farm or parcel of real estate property, as well as any [improvements] that exist on it or that are made afterwards shall constitute the first lien on said property which shall have priority over any other liens on said farm or parcel regardless of their nature, whether they rest upon it before or after the lien determined by the tax. Said encumbrance on each farm, parcel of land or real estate shall only be liable for the taxes that encumber them and their improvements. Each notice of attachment for delinquent taxes, whether for personal or real property, shall produce the same effect as a judicial decision against all the seized property of the delinquent taxpayer, and every lien hereby created shall have the force and effect of a duly executed seizure. In any case in which real property is seized and sold for taxation, the Collection Center shall notify the recording of said sale to all those holding a mortgage or lien on said property stating in the notice the date of sale, the sum of money for which the property was sold, and any other data deemed relevant.

Article 3.31. Corporations; Appraisal of Real Property

Real property belonging to institutions, corporations and companies incorporated pursuant to the laws of Puerto Rico, and all shares in said property and corporations, and joint stock companies not incorporated in Puerto Rico but engaging in business in the Commonwealth, shall be appraised for taxable purposes in the appraisal district in which said real assets are located. Whenever the president, director or other head of any of these institutions, corporations or companies is thus notified, he/she shall provide for the appraiser of the district in which said corporation or company has or owns any real properties, or any shares in properties of this type, a list or true valuation of such real property or of the shares it has in such assets, and said list and valuation shall be accompanied by the sworn statement of said president, director or other head, which shall be the same as the oath or affirmation prescribed by Article 3.20 of this Title; thus attesting that the list and appraisal in question is true and complete and that it includes completely and equitably all real properties and all shares in real property he/she owns in said appraisal district, or which same institution, corporation or company holds or owns. The appraiser shall valuate said property or shares therein and send duplicate certificates of same appraisal to the Collection Center and to said president, director or any other person who heads that institution, corporation, or company. If the appraisal made by the president, director or other head has been increased by the appraiser, it shall have the right to review, which is presently granted to private individuals before the Superior Court.

Article 3.32. Appraisal of Personal Property

Personal property belonging to institutions, corporations and companies incorporated under the laws of Puerto Rico apart from banking institutions with issued stock, shall be appraised by the Collection Center as belonging to such institutions, corporations and companies as set forth in this Article. The present cash value of the capital of said corporations shall be established by the Collection Center pursuant to the sworn statements of the presidents, directors or any other officials at the head of such corporations, as required by Article 3.33 of this title, or on the basis of any other trustworthy report that the Collection Center has or acquires, and in no case shall the present cash value be less than the value of the capital and bonds, plus the surplus and undivided earnings of said institutions, corporations and companies; nor shall it be less than the market value of the real estate and personal property of said institutions, corporations and companies, and said personal property shall include all rights, franchises and concessions.

The total value of the real property of said corporations which is the product of the appraisal verified according to the provisions of Article of 3.31 of this Title, shall be deducted from the appraisal obtained in this manner; and the rest shall be deemed to represent the personal property of said corporations that will be taxed.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

For banks or financial institutions with issued stock incorporated under the laws of Puerto Rico, personal property tax shall be based on the total market value of the assets and personal property belonging to said institutions. The personal property of banking institutions consisting of cash accounts shall be appraised on the basis of the average monthly balance of each account as revealed in the institution's accounting books kept during the calendar year prior to the appraisal date. The term cash account shall be understood to mean all the accounts covered under the cash item, not including the balances of the accounts deposited in other financial institutions.

Article 3.33. Personal Property Forms Submitted by Corporations

Whenever a president, director or other person in charge of any institution, corporation, or company incorporated under the laws of Puerto Rico, or corporations and partnerships not incorporated in Puerto Rico but which engage in business in the Commonwealth, receives the corresponding notice, such individual shall deliver to the Collection Center the list, in duplicate, of the real property and interests held therein, previously mentioned herein, together with a list and appraisal of all property owned, possessed or held by such institution, corporation or company. Said property must be itemized and said list must contain, in addition to true and complete answers to questions asked by the Collection Center, an accounting of the capital (and of the par and market value of the capital stock, if divided into shares); the value of the plant and machinery owned, the amount of bonds issued, their market value and the names and respective residences of the holders of said bonds; any surplus and undivided profits; any interest, stock or interest in any ship or vessel, whether such ship or vessel be in port or out of port; the gross and net profit from the most recent business year; the aggregate amount of deposits (in case money or other valuables are received on deposit); all moneys, and the nature and value of all franchises and concessions owned or held and possessed by such institutions, corporations or companies. Said president, director or other person in charge, when delivering said lists and appraisals to the Collection Center, shall take and subscribe an oath as to the truth and accuracy of said lists and appraisals, which oath shall be equal in substance to the oath or affirmation required of owners of private property by Article 3.20 of this Title; and the aforementioned lists or appraisals shall be made on blank return forms to be furnished by the Collection Center.

Article 3.34. Corporations Not Incorporated in Puerto Rico

Property appraisals for corporations not incorporated in Puerto Rico but engaged in business in the Commonwealth, other than banks and banking institutions with capital shares, shall be made according to the provisions of this Act for the appraisal of the property of institutions, corporations and companies incorporated pursuant to the laws of Puerto Rico. In order to determine the real and the cash value, as per the capital ratio of said corporations, only that part of the capital that they have employed in the transaction of business in Puerto Rico shall be considered and valuated; but under no circumstances may said capital amount be less than the value of the real and personal property located in Puerto Rico belonging to such corporations or companies, including as personal property all franchises or concessions granted to said corporations or companies pursuant to the laws of Puerto Rico. All obligations imposed on the institutions, corporations or companies incorporated pursuant to the laws of Puerto Rico, or indicated to their officials, regarding the completion and filing of returns under a sworn statement or otherwise, shall also include the corporations that have not been incorporated in Puerto Rico and their officials.

For banks or financial institutions with capital shares not incorporated in Puerto Rico, the personal property tax shall be levied on the sum of the market value amount of the assets and personal property belonging to said institutions.

The personal property of banking institutions consisting of cash accounts shall be appraised on the basis of the average monthly balance reflected by each account on the institution's accounting books kept during the calendar year prior to the date of appraisal. The term "cash accounts" shall be understood to mean all accounts covered under the cash category, not including the balances of accounts on deposit with other financial institutions.
All obligations imposed on institutions, corporations, and companies, including banks incorporated pursuant to the laws of Puerto Rico, or their officials, regarding the completion and filing of returns, the presentation of statements under oath or otherwise, shall apply equally to the banks described in this Article and their officials.

Article 3.35. Taxation on Capital Shares

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

The Commonwealth and municipal taxes imposed on shares, capital, and property of institutions, corporations and companies included in this Act and on the stock of banks established in Puerto Rico, shall be paid at the offices of the Collection Center or its authorized representatives, who, according to law, shall deposit the corresponding part of said overdue taxes in the Government Development Bank for Puerto Rico for the corresponding distribution to the Commonwealth and the Municipalities. Said institutions, corporations, and companies are hereby authorized to retain the taxes corresponding to capital shares, from the earnings or dividends derived in favor of the stockholders, or to cancel a portion of said shares sufficient to pay said taxes. The Commonwealth and municipal taxes levied on said institutions, corporations and companies shall be accrued in semiannual installments, and all penalties for nonpayment, subjection to seizure, attachment, and sale of property prescribed below, shall apply to said institutions, corporations and companies as they apply to private individuals.

Article 3.36. Penalties

(a) Fraudulent returns -Any person, agent or officer or any institution, corporation or company that provides or furnishes a fraudulent list, return or report as required by this Act, shall incur a felony and, upon conviction, shall face a fine of three thousand (3,000) dollars or imprisonment for three (3) years, or both, at the court's discretion.

(b) Refusal to take an oath or make a statement -Any person, agent or officer of any institution, corporation or company who intentionally omits, or refuses to take an oath and sign any of the oaths, sworn statements or affirmations required by this Act, or that without just cause refuses to answer any interrogatory from the Collections Center, its representative or appraiser, shall incur a misdemeanor and, upon conviction, shall face a fine of three hundred and fifty dollars ($350) or imprisonment for three (3) months, or both, at the court's discretion.

(c) Appraiser's failure to obtain an oath -Any appraiser or authorized representative of the Collection Center who intentionally, or without just cause, omits or neglects to obtain any oath, affirmation or statement as prescribed by this Act, from any person whose property has been appraised by him/her, shall be fined and will pay to the Commonwealth of Puerto Rico the sum of five hundred dollars ($500) for each similar case of omission and willful or unjustified neglect, and said sum shall be withheld from said appraiser or representative's salary or compensation, and the Collection Center shall account for the money thus retained subject to the law. If any public employee, appraiser or authorized representative of the Collection Center intentionally or without just cause, fails to perform the duties of his/her office, or venially receives any fee, compensation, emolument, perquisite or favor, with the purpose of influencing his/her conduct or the performance of the duties of his/her office, with regard to this Act, shall incur a felony and upon conviction shall face a fine of five thousand dollars ($5,000) or imprisonment for five (5) years, or both, at the court's discretion. In addition, the cases contemplated in this Subsection shall require that the public employee responsible for or participating in same be dismissed from office.

Article 3.37. Property Transfers; Prorating of Taxes and Lien upon Partition

No change in the appraisal of any property shall be made during any fiscal year either because it has been ceded or because of any other transfer whatsoever; except that in cases in which real property is divided by a sale, by a request for partition, or for any other reason after the tax corresponding to said property has been established, and the division has been duly registered at the Property Registry, the Collection Center or its authorized representative, at any time before said real properties are sold so as to pay taxes upon the written request of the owners of any portion thereof, shall make the corresponding division and shall establish the fees, costs and interest accrued on the respective parcels or portions according to the value of each, and only that part of said taxes, interest and costs adjudicated to each portion shall continue to constitute a lien thereon, and its owner shall be liable only for the taxes corresponding to the portion that he/she owns in whole or in part. The Collection Center or its authorized representative shall mail a notice of the request for said division to all those having an interest in said property whose address is known. Any person affected by such division made by the Collection Center may request a review before the Superior Court within thirty (30) days following said notice after the requirements under Article 3.49 of this Act have been met. In all cases in which the ownership of the property has been transferred after the tax invoice for said property has been issued and delivered to the collector or authorized representative for collection, or had it been made prior to this but without the Collection Center having received notice of the transfer in time to issue the tax invoice in the name of the new owner, the taxes will be paid in the name of the person who appears on the tax

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*  By Targem Translations Inc.*

invoice; but the new owner may pay the taxes stated in the tax notice and demand that the internal revenue collector or authorized representative make a note on the back of the invoice certifying that said taxes were paid by him/her.

Article 3.38. Property Transfer Record

 Every transfer deed for real property or a share thereof, and every mortgage or other debt collateral backed by real property which is presented before the Property Registry shall be set aside and specially registered by the corresponding Property Registrar in a special transfer book which shall be made available by the Collection Center, and this book shall include the date of transfer, the real estate registry number of the transferred property, the name and address of the person to whom the property has been transferred, the name and address of the person under whose name said real properties, the shares therein, or the debt secured by the real property were appraised and on whom the payment of the tax was levied, and a reference to the registrar's files or registry in which said property is most thoroughly described. Said transfer books or copies shall be sent to the Collection Center at its request and shall be made available for inspection by the Secretary of the Treasury.

Article 3.39. Calculation of the Taxes; Entry in the Registries

The Collection Center shall calculate the sum of the Commonwealth and municipal taxes owed by any such person based on the property's appraised value. Said amount shall be entered in the proper registries, indicating the name of the taxpayer, his/her account number, the property coding, and the description of the property subject to taxation. In due time the Collection Center shall deliver the necessary invoices or tax lists to the respective collectors or authorized representatives and will charge their total amount to the account of said collectors or authorized representatives. The possession of said invoices or tax lists pertaining to delinquent taxes owed by any property shall be sufficient authorization for the collector or authorized representative to proceed to collect said taxes, and for the seizure, attachment and sale of the debtor's real and personal property as provided by Article 4.01 of this Act, should said taxes be not paid off within the term determined by Article 3.42 of this Title.

Article 3.40. Collection Districts; Authorized Representatives; Bonds

The Collection Center is hereby authorized to create any number of collection districts needed to collect taxes under this Act, and any other taxes delegated to it, as well as to perform any of the duties authorized for such a purpose; and to delegate their collection in each one of the districts to the authorized representative, who shall post a bond before the Secretary of the Treasury in favor of the Commonwealth of Puerto Rico in the amount that the Secretary of the Treasury determines and as provided in the Municipal Revenue Collection Center. The form and execution of said bond, as well as its sufficiency, shall be approved by the Secretary of the Treasury. Said bond shall be posted to cover the liability of said authorized representatives for the monies that they collect and receive on account of said taxes.

Article 3.41. Tax Payment Date; Penalty for Delay; Tax Collection before Due Date

The tax levied on the value of real property shall be payable in advance every semester to the Collection Center or its authorized representative on the first of July and January of each year. Said tax shall become overdue if not paid within ninety (90) days after its due date, and the collectors or authorized representatives shall also collect, in addition to said overdue tax and as a part thereof, the following surcharges and interest:

(a) A five percent (5%) surcharge on the total tax when payment is made after thirty (30) days from the date on which the tax should have been paid, not exceeding sixty (60) days.

Ten percent (10%) of the total tax when payment is made after sixty (60) days from the date on which the tax should have been paid.

(b) Interest on the total tax calculated at a rate of ten percent (10%) per annum from the date established for payment.

Said additional sum shall be collected together with the principal of the tax that originates it, as well as the legal fees, if any. When the collectors or authorized representatives do not have the tax invoices in their possession by

18

the first of July of each year, the stated term of ninety (90) days shall then be counted as of the date the invoices are in his/her possession, and it is so announced. The part of the invoice corresponding to the second semester shall neither be collected nor paid if the amount for the first semester has not already been paid, and in case any taxpayer is found to owe taxes on the same property corresponding to more than one fiscal year and he/she wishes to pay a part thereof, said payment shall be applied by the collector or authorized representative to the taxes corresponding to prior years by strict date of expiration. When the property has been passed on to a third person, this order of payment shall apply to the taxes that said third person would be required to pay on such a property. This provision shall not be interpreted in any way in the sense of it repealing, limiting or modifying any of the provisions of the laws by virtue of which the property tax payment has been deferred. Whenever the Collection Center believes that the collection of any property taxes will be compromised by a delay, or finds that the taxpayer intends to remove his/her properties from the Commonwealth or conceal his/her properties in Puerto Rico, or perform any act tending to impair or totally or partially annul collection of property taxes corresponding to any fiscal year, it shall immediately proceed to levy the taxes and issue the invoices based on the appraisal existing on January 1st immediately prior to the fiscal year to which the taxes correspond, based on the tax rate in effect on said January 1st, if the fiscal year to which the taxes correspond has not commenced. As soon as such taxes have been levied and the corresponding invoices issued, they shall be payable on demand and the Collection Center, through its agents, shall immediately proceed to attach the taxpayer's real and personal property in an amount sufficient to comply with the payment of the taxes levied and shall immediately notify the taxpayer of the levying of the tax and of the attachment of his/her property. If the taxpayer does not wholly or partially agree with the taxes thus levied, he/she may request their review before the Superior Court of Puerto Rico in the manner, within the term and once the requirements in Article 3.51 of this Act have been met.

Should the taxpayer not request a revision of the taxes levied, as provided by law, the Collection Center shall proceed as soon as possible with the sale at public auction of the assets attached for the collection of taxes, including fees and legal costs, and interest and surcharges, after the thirty-first day from the date of notice. The sale shall be conducted as prescribed in Articles 4.03 and 4.05 of this Act.

When the tax rate on the basis of which the tax would have been levied is greater than that used by the Collection Center to calculate the taxes, the taxpayer shall be liable for the payment of the resulting difference and the Collection Center shall proceed according to law to collect said resulting tax. If, on the other hand, the tax rate is less than that used by the Collection Center to calculate the taxes, then said official will reimburse the taxpayer or credit him/her with the amount collected in excess. The Collection Center is authorized to promulgate any rules not incompatible with the provisions of this Article that it believes are necessary to execute its purposes.

Article 3.42. Extensions; Payment Plans; Interest

If a taxpayer is undergoing severe adverse financial circumstances that, in the judgment of the Collection Center, constitute an undue hardship, and provided that the taxpayer requests an extension prior to the date the real property tax becomes overdue, the official is authorized to extend the time of payment without imposing surcharges, by granting a payment plan for a term that shall not exceed eighteen (18) months and, in exceptional cases, for an additional period that shall not exceed twelve (12) months. If an extension is granted, the Collection Center may require the taxpayer to post a bond for an amount not greater than double the unpaid total of the tax and with those guarantors that, in the judgment of the Collection Center, are necessary to secure payment of the deficiency according to the terms of the extension. Interest shall be collected at a rate of ten percent (10%) per annum in every extension granted under this Article.

When a bond is not required and the taxpayer fails to meet the terms of the payment plan, he/she shall also be required to pay the surcharges prescribed by law as of the moment he/she ceases to meet said terms.

Article 3.43. —Discounts

The following discounts shall be allowed on the biannual amount of the property tax corresponding to the 1992-93 fiscal year if the payment is made in the proper manner and within the corresponding term.

19

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(a) Ten percent (10%) of the total for the semester if payment is made within thirty (30) days from the date the invoice is in the possession of the collector, or the authorized representative and it is so announced.

(b) Five percent (5%) of the total for the semester if payment is made after thirty (30) days but does not exceed sixty (60) days.

Article 3.44. Property Securing a Loan

In all cases in which real or personal property secures a loan and the taxpayer is required to periodically deposit the taxes to be paid on that property with the creditor, the creditor must pay said taxes in full within the shortest term the accrued amount allows and thus obtain the highest discount possible for the benefit of the taxpayer, or he/she shall be liable to him/her for a sum equal to three (3) times the discount that he/she failed to obtain.

Article 3.45. Properties of Bankrupt or Deceased Persons; Preferential Nature of Tax Debts over Other Debts

Upon liquidation of the assets of bankrupt or deceased persons, the taxes owed for said properties shall have preference over any other type of debt. No executor or administrator of the assets of a deceased person shall divide or distribute said properties until after all the taxes due have been paid, and no Registrar shall record any document of adjudication or share of the property of any deceased person whose current taxes have not been paid; and the administrators, executors or Property Registrars who violate this Article shall be liable to the Commonwealth of Puerto Rico for all the taxes not collected due to said violation. It shall be the duty of the depositary or other person in charge, or trustee of the property of any bankrupt or insolvent person, to pay the taxes due on said property up to the limit of the value of such assets. No bankrupt person shall be acquitted and no trustee or similar person in charge shall be exempt from his/her obligation, nor shall he/she receive any compensation or commission until said taxes have been duly paid.

Article 3.46. Tax Payment by the Owner of the Lien, by the Tenant, or by the Leaseholder

Any person who holds a lien over another's property may pay the taxes and surcharges imposed on said property at any time after they have become due and have not been paid and said taxes and surcharges shall be added to the lien and shall be reimbursed at the interest rate specified in the document that constitutes the lien. A tenant or leaseholder of the real property may pay the taxes and surcharges imposed on said real property any time after they have expired without having been paid, and deduct the amount paid by him/her from the rent.

Article 3.47.  Administrative Review Committees - Real Property

Administrative Review Committees are hereby created and shall be made up of no fewer than three public officials appointed by the Governing Board of the Collection Center. At least two of said officials shall be representatives of the Commissioner of Municipal Affairs (CAM) and the Government Development Bank. The Administrative Review Committees must be constituted in each of the municipalities of Puerto Rico, at a place to be announced by said Governing Board through the national press, no less than five (5) days prior to the date of their first meeting, and must be in office as of the same date on which the notice of the real property tax levied by the Collection Center to the different taxpayers of each municipality begins, for a term to be determined by the Collection Center, but no less than one (1) week in any municipality. It shall be the function of the Administrative Review Committees to receive evidence on complaints regarding any allegations in connection with the appraisal and levying of the tax. The proceedings before the Administrative Review Committees shall be conducted in the municipality where the property subject to taxation is located.

Said Committees must also submit a report to the Executive Director of the Collection Center within ten (10) days following the conclusion of the meetings held in connection with the allegations of complaints and the final rulings thereon, including their recommendations. The Executive Director of the Center shall issue the final decision on the complaints within ten (10) days of receiving the report.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
* By Targem Translations Inc.*

After the twenty (20) days that the aforementioned Committees and the Executive Director of the Center have to render the reports and make the final decision on the matter, taxpayers who do not agree shall have a term of thirty (30) days to request a review by the Superior Court of the valuation and taxation.

TITLE IV

Attachment, Sale, and Redemption of Property

Article 4.01 Attachment and Sale of Debtor's Assets.

Should any person fail or refuse to pay the property taxes within the terms established in this Act, the Collections Center or its authorized representative shall proceed to collect the overdue taxes through an attachment and sale of said debtor's property as prescribed below.

Every debtor whose personal property has been attached for the collection of taxes may appeal before the Superior Court within the term established in the notice of attachment and obtain the cancellation of the attachment, unless the Collections Center proves it had sufficient legal grounds to perform the attachment at the hearing set by the court to that effect.

If no real property or real rights belonging to the debtor are found on which a preventive embargo can be entered in order to ensure the payment of the tax, the Collections Center will require the person who holds any property, property rights, credits or money payable to the taxpayer, including salaries or bank deposits belonging to or payable to the taxpayer, not exempted from attachment, to withhold from such assets or rights the amounts informed to him/her by the Collections Center in order to cover the unpaid tax debt prior to filing the corresponding legal action and pursuant to the legal provisions in effect.

The notice and demand made by the Collections Center to the person in possession of the assets, properties or any obligation to pay the taxpayer sums of money for whatever reason, excluding salaries, shall constitute a prior lien on such assets or rights that the depositary is required to retain until the Collections Center is paid what it is owed. Any depositary who disposes of or allows such assets or rights to be disposed of shall be required to pay the total amount of the value of the assets. He/she shall also be required to pay a special penalty amounting to fifty percent (50%) of the unpaid tax. The amount of such a special penalty may not be credited towards the payment of the tax debt. The person withholding such assets, rights or properties shall not incur any obligation with the taxpayer, provided that he or she does so in compliance with an order to that effect from the Collections Center.

Notwithstanding the foregoing, the Collections Center may postpone the sale of real property which is subject to such a procedure due to a tax debt belonging to elderly taxpayers or to those who are stricken by any terminal or permanently disabling illness, and who produce a medical certificate to that effect, and under the following circumstances:

(a) Should it be the taxpayer's only real property and permanent dwelling, and

(b) Should the taxpayer not have enough assets or income to pay the total tax debt, nor should it be possible for him/her to avail himself/herself of a payment plan.

This provision shall not apply to the heirs nor to the taxpayer once the illness or condition for which the sale of the property in question was postponed has ceased.

The term established in Article 144 of the Mortgage and Property Registration Act of 1979, as amended, for the cancellation of the filings of writs of attachment for taxes shall be suspended until the death of the taxpayer or until the condition that caused the postponement of the sale of the real property has ceased.

The Collections Center shall adopt the necessary rules and regulations to postpone the sale of the real property of the debtor in the cases provided in the preceding paragraph of this Article, including the definition of the term

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

"elderly" and the criteria for determining whether a taxpayer does not have sufficient assets or income for the total payment or for a payment plan, pursuant to the experience of the Collections Center and the procedures and terms for requesting and decreeing the postponement of the sale of a property due to the previously established conditions.

Article 4.02. Procedure for the Attachment of Real and Personal Property

Immediately after the expiration of the terms granted by Article 3.42 of this Act, the Collections Center or its representative shall issue a written notice of attachment which shall include the taxpayer's total debt and shall proceed to attach the delinquent debtor's property. Said notice shall state the total taxes due and unpaid, the interest and surcharges indicated by said Article 3.42 of this Act, and the total fees for the person who duns for payment as provided below. The Collections Center shall notify the debtor by delivering a copy of the notice to him/her and warning him/her that if he/she does not pay the taxes within the thirty (30) day term from the date of the notice, the attached property, or that part of it which is strictly sufficient to cover the amount of the debt, shall be sold at public auction as soon as possible after said term without further notice. If any debtor, or any of his/her relatives or dependents, refuses to deliver the attached property to the collector or agent when required to do so, once the above mentioned thirty (30) day term has expired, or if after the attachment has been executed, sells, conceals, destroys, transfers, cedes or disposes of said property in any way with the purpose of voiding the attachment or evading taxation, he/she shall face a fine of three thousand dollars ($3,000) or imprisonment for three (3) years, or both, at the court's discretion. Said attachment shall be executed as soon as a copy of the notice has been served to the debtor or to any member of his/her family in charge of said property. Should the collector or agent not find the debtor or any member of his/her family who is in charge of said property, the collector or agent shall serve the notice of the attachment on the debtor by certified mail with return receipt to the address which appears on or can be ascertained from the documents or records of the Collections Center, and the act of serving the attachment in the manner stated above shall be prima facie evidence that said delinquent taxpayer was notified of the attachment; and notice given in any such manner shall be as valid and effective as if the debtor had personally received it. As soon as the attachment is processed in the manner indicated above, the Collections Center or its representative is authorized to seize the attached property or close the business or location should it believe that to be necessary. When serving said attachment, the Collections Center or its representative is hereby authorized to enter the debtor's home or dwelling, if necessary, and said debtor should consent and in the event that the consent in question should not be given, a judicial order authorizing entry into the debtor's dwelling or residence shall be requested from a court of law, with the exclusive purpose of enforcing said ruling. If after the order has been served, any debtor, his/her relatives or dependents, should present any resistance to any official, employee or representative of the Collections Center under said circumstances, he/she shall incur a misdemeanor and upon conviction shall face a fine of two hundred dollars ($200) or imprisonment for three (3) months, or both, at the court's discretion. It shall be the duty of the police authorities or their agents to give the Collections Center or its representative all the necessary assistance for the proper compliance of its duties as required by this Act. As soon as an attachment is served, the attached property may be deposited in the possession of any person who is required to hold it for the Collections Center until the debtor pays the taxes or the sale is executed at public auction; and if any depositary of attached properties should dispose of them, he/she shall incur a felony and upon conviction, he/she shall face a fine of three thousand dollars ($3,000) or imprisonment for three (3) years, or both, at the court's discretion. When the attachment of the personal property or the notice to the debtor, his/her relatives or dependents is executed as set forth by this Act, the Collections Center or its representative may collect, in addition to the taxes, interest, surcharges and penalties, an amount sufficient to cover the cost of the custody and the care and keeping of the attached property together with the fees in an amount equal to ten percent (10%) of the total tax excluding surcharges. Said amount shall be paid to the person who served the notice thereof, or it will be deposited to the account of the Collections Center if the service was executed by the Collections Center or its authorized representative.

Article 4.03. Sale of Personal Property for Tax Payment; Exemptions

The sale of personal property for tax payment shall take place through public auction and if some parts could be separated or split from others, only the amount or part of said attachable personal property that is strictly necessary for the payment of all taxes, interest, penalties and costs shall be sold. It shall be understood that the above condition is met with the amount of said attachable personal property whose appraised value is sufficient to cover, with the adjudication price at a third auction, the probable total tax debt and its interest, surcharges, penalties and costs, in said third auction. Prior to starting the personal property sale at public auction, the Collections Center or its

Certified to be a correct and true translation from the source text in Spanish to the target language English.
13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
 By Targem Translations Inc.

representative shall appraise same. The sale of the personal property shall be done at a public auction held no sooner than thirty (30) nor later than sixty (60) days after the attachment has been executed, establishing as the minimum adjudication rate for the first auction seventy-five percent (75%) of the appraised amount set by the Collections Center. Should the first auction not produce competitive bidding or an adjudication, a minimum of sixty percent (60%) of the appraisal value set by the Collections Center for said properties will serve as the minimum rate for the second auction held. Should the second auction not produce competitive bidding or an adjudication and should it be necessary to hold a third or other successive auctions, fifty percent (50%) of the value of the appraisal that the Collections Center set for such personal properties will serve as the minimum rate for such a third or other successive auctions. Should there be no competitive bidding or adjudication at any of these auctions, the Collections Center may adjudicate itself the attached personal property for the minimum rate of appraisal, which corresponds to the auction by which the property is to be adjudicated. When the personal property is adjudicated to a third party, as well as when it is adjudicated to the Collections Center, the proceeds of the sale of such property will be devoted to the payment of the tax debt. In case the property is adjudicated to the Collections Center, it will issue and deliver to the taxpayer a credit note for a sum equal to the difference between the adjudication price and the tax debt being collected. This credit note shall be sufficient for the future cancellation of an equal amount owed by the same taxpayer on account of property taxes. For an adjudication to a third party, the remainder, if any, will be delivered by the Collections Center to the taxpayer. Should the amount obtained at the auction be insufficient to cancel the tax debt, the Collections Center shall collect from said delinquent taxpayer the amount of the tax that is not covered, with its surcharges and interest, as soon as it has knowledge that said delinquent taxpayer has and owns attachable real and personal property, in which case the legal proceeding for debt collection established by law shall be instituted against him/her for collection of the difference. Real properties related to the homestead exemptions established by Article 249 of the Civil Procedure Code of 1993, as amended, shall be exempted from being sold for nonpayment of taxes.

Article 4.04. Transfer of Title to Buyer; Distribution of Sale Proceeds

Payment of the bidding price of the personal property sold, its delivery and that of the sales account, shall give the buyer title to and rights over said property. All of the remainder of the proceeds of the sale received in excess of the taxes, penalties and costs shall be returned by the Collections Center to the owner of the property sold, or his/her assignees in the manner prescribed by Article 4.03 of this Title. The unsold part of said personal property shall be left at the site of the auction at the owner's expense and risk.

Article 4.05. Attachment and Sale of Real Property

In case it should be decided in the first instance to attach the real properties of a delinquent taxpayer and these should not be sufficient for paying the taxes, interest, penalties and costs owed by him/her to the Collections Center, or should the taxpayer not own real properties subject to attachment and sale, the Collections Center or its representative shall attach the real property of said debtor not exempted from attachment pursuant to what is prescribed in Article 4.01 of this Title and sell the attached real property belonging to said delinquent taxpayer for the payment of said taxes, interest, penalties and costs. The real properties thus attached shall be sold at public auction at a minimum rate that will be the value of the delinquent taxpayer's equity in the attached property or the value of the credit represented by the tax debt, whichever is less. Equity shall be understood to be the difference between the real value of the property and the amount for which it is mortgaged. The credit represented by the tax debt includes surcharges, interest and costs. The minimum adjudication rate shall be established through the appraisal performed by the Collections Center for said real properties prior to the publication of the notice of auction. The minimum rate shall be a confidential matter between the Center and the taxpayer. However, the Center may only announce it during the auction after the best offer has been received, only when said offer does not exceed the minimum rate. The number of auctions to be held in each sale, as well as the minimum rate to be used in each, shall be determined by the Center through regulations.

Should there be no competitive bidding or adjudication in any of said auctions in favor of a particular person, the Collections Center may, through the representative before whom the auction is held, adjudicate upon itself the attached real property for the corresponding minimum amount of the adjudication rate. If the real property subject to the legal proceedings for collection is adjudicated to a third party at any auction held, and the amount obtained at the auction is not sufficient to cover the total amount owed for taxes, interest and surcharges, the Collections Center

Certified to be a correct and true translation from the source text in Spanish to the target language English.
13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
 By Targem Translations Inc.

may collect from said delinquent taxpayer the amount of the tax with its surcharges and interest that is not covered as a result of the auction held as soon as the Center obtains knowledge that said delinquent taxpayer holds and is the owner of attachable real or personal property, in which case the legal proceedings for collection established by this Act shall be filed against him/her. Notwithstanding the above provisions, no attached real property shall be sold through the legal collection proceedings for an amount lower than the total amount owed by said property for taxes, plus surcharges and interest.

The person to whom the real property is adjudicated at public auction acquires it "as is" and will not be entitled to take legal action for reparations against the Collections Center.

In case it is decided to collect the taxes through the attachment and sale of the real properties of the delinquent taxpayer without first attaching and selling personal properties belonging to him/her, the provisions of this Article shall be followed insofar as they are applicable.

Notwithstanding the above provisions, no real property attached exclusively for the collection of the taxes comprised in Article 4.01 above title shall be sold through legal collection procedures for an amount that is less than the total amount of the taxes owed by said property plus surcharges and interest.

Article 4.06. Certificate of Attachment; Registration

Immediately after the expiration of the terms granted by Article 3.42 of this Act for taxation in those cases in which the property to be attached is real property, the Collections Center or its representative shall prepare a certificate of attachment describing the attached real property and will cause said certificate to be presented for registration at the corresponding Property Registry. Said certificate shall contain the following details: the name of the delinquent taxpayer, if known; the official cadastral number assigned by the Collections Center to the attached real property for fiscal purposes; the total amount of said taxes, penalties and costs owed by same; the description of the attached real property, and the fact that the attachment shall be valid on behalf of the Collections Center. Once the notice of attachment is presented at the Property Registry, it is sufficient as notice to the taxpayer and to initiate the collection procedures.

Article 4.07. Attachment Certificate Registration; Personnel Cooperation with Registrars

Immediately after invoice of the above-mentioned certificate of attachment, it shall be the duty of every Property Registrar to duly register and return same to the Collections Center within the term of ten (10) days together with a note from the Property Registrar attesting to the fact that it has been duly registered. The Property Registrar shall collect no fee whatsoever for such a service. The Collections Center is hereby authorized to appoint, pursuant to the Act Governing the Center for the Matching of Municipal Revenues, whatever personnel is deemed necessary to cooperate with the property registrars in the task of searching the archives for attached real properties, in the notation of attachments and any other tasks related to the attachment of real properties for the collection of taxes.

Article 4.08. Notice of Attachment; Notice of Auction

Once the certificate of attachment is presented at the corresponding Property Registry, the Collections Center or its representative, shall give notice of said attachment in the manner determined by Article 4.02 of this Title, to the effect that if all taxes, interest, penalties and costs owed by the owner of the attached property are not paid within the term prescribed below for the notice of the sale of said property, it will be sold at public auction for a minimum rate established on the basis of the value of the taxpayer's equity on the property subject to attachment, or for the value of the tax debt, whichever is less. If the person to whom the attachment is served because he/she appears as owner of the property in the records of the Collections Center is not the owner on the date of service, he/she will have the obligation to notify the Collections Center or its representative of that circumstance in writing within ten (10) days following the date that he/she received said notice. If he/she does not do so, a fine of two hundred dollars ($200) will be imposed. Said notice of auction shall be published in two newspapers of general circulation in Puerto Rico, at least three (3) times a week for a period of one week, and edicts shall be issued to that same effect. The costs of said notices and edicts, together with the fees established by Article 4.02 of this Title for serving the notice to the taxpayer or his/her representative, shall be collected as part of the costs of the sale and will be paid to the

24

Collections Center. Copies of said notice and of the edict published in the newspapers together with the sworn statements of each of the managers of the newspapers in which such a notice was published, shall be kept by the Collections Center. These documents shall be prima facie evidence of the proper notice of said auction.

Article 4.09. Auction; Notice and Delivery of the Surplus to the Taxpayer; Effect on the Right to Redemption

The time, place, and conditions under which said auction shall be held must be clearly stated in the notice. Upon expiration of the aforementioned period for the publication of the notice, or as soon as possible after its expiration, said property shall be sold by the Collections Center at public auction to the highest bidder. No offer whatsoever shall be accepted for a sum that is less than the amount established in Article 4.05 of this Title for the auction. Nor shall an offer be accepted unless a cash deposit of ten percent (10%) of the amount of the offer is included; such a deposit will be forfeited if the buyer fails to pay the rest of the sum for which the property was sold within ten (10) days following the date of sale.

Within thirty (30) days after the auction is held, and after applying the corresponding amount to the payment of the debt, the Collections Center shall notify the taxpayer of the result of the auction, info rming him/her of the surplus amount, should the adjudication price be greater than the debt to be collected, and also informing him/her whether the successful bidder was a third party or the Collections Center. Upon request of the taxpayer, the Collections Center shall be required to deliver said surplus to him/her at any time within the term of one year from the date of the auction should the successful bidder be a third party able to certify that the taxpayer has conveyed ownership of the property to him/her, or that such a conveyance has been agreed upon to the satisfaction of both. In such a case the right to redemption under Article 4.14 of this Title shall be deemed extinguished as soon as said amount is delivered to the taxpayer or his/her assignees. If the taxpayer has not exercised his/her redemption right within one year, or if it has been extinguished, as provided above, the Collections Center shall be required to notify the taxpayer or his/her assignees that the surplus is available for delivery after the right to same has been established before it by the interested parties. When the adjudication has been made to the Collections Center, the taxpayer may request that the surplus be given to him/her at any time after he/she is notified of the result of the auction, and such a request will be interpreted as an offer to waive the right of redemption, which will be completed when the corresponding delivery is made to the taxpayer or his/her assignees. Said delivery must be made by the Collections Center or its representative.

Prior to verifying the payment of the surplus to the taxpayer, the Collections Center may allow any instrumentality or agency of the Government of Puerto Rico to acquire the auctioned property should the nature of its business be compatible with said acquisition. In that case, the agency or instrumentality shall pay the surplus to the taxpayer or his/her assignees through the Collections Center, and pay the Collections Center the amount of the debt for payment of which the property was auctioned. The certificate from the Collections Center stating that both payments have been made will constitute sufficient title on the property in favor of the instrumentality or agency, said title being recordable at the Property Registry. The Collections Center shall make no payment whatsoever of the remainder to the taxpayer or his/her assignees prior to having conveyed possession of the real estate property.

Article 4.10. Extension or Postponement of the Sale

The Collections Center or its representative may continue the sale from day to day should it deem its delay necessary and may extend it for just cause for a term not to exceed sixty (60) days, of which due notice will be given through an announcement as set forth in Article 4.08 of this Title.

Article 4.11. Unauthorized sale; Penalty

If any official, employee or representative of the Collections Center sells or assists in the sale of any real or personal property, knowing that said property is exempted from attachment; or that the taxes for which it has been sold have been paid in full; or knowingly and intentionally sells or contributes to the sale or any real or personal property whatsoever for taxation in order to defraud the owner; or restricts the participation of bidders in any way; or knowingly or willfully issues a purchase certificate of the real assets thus sold: such individual shall incur a felony and upon conviction, shall face a fine of five thousand dollars ($5,000), or imprisonment for a term of five (5) years,

25

or both, at the court's discretion and shall be subject to pay the injured party all damages caused to same by his/her acts, and all sales thus carried out will be void.

Should the Center or its Representative expressly or implicitly offer the bidders guarantees on the validity of the title, the quality, size, or condition of the property, the Center or Representative shall be subject to the penalties indicated in the preceding paragraph, although the sale shall be valid.

Article 4.12. Prohibited Purchase; Penalty

Any official, employee or representative of the Collections Center or any guarantor thereof, who directly or indirectly purchases any part of any personal or real property sold for the payment of unpaid taxes, shall be liable with his/her official bond for all damages suffered by the owner of said property, and all those sales shall be void. In addition to this, the employee committing said offense shall incur a felony and upon conviction shall face a fine of five thousand dollars ($5,000) or imprisonment for five (5) years, or both, at the court's discretion.

Article 4.13. Certificate of Purchase; Registration; Title

Within sixty (60) days following the date of the auction, the Collections Center shall prepare, sign, and deliver a certificate of purchase to the buyer of any real property whatsoever which is sold for nonpayment of taxes, including the name and residence of said buyer, the date of sale of said real property, the amount for it was sold, a certification stating that said amount has been paid in full by the buyer, the amount of taxes, fines, and costs, and the description of the property as required by Article 4.06 of this Title, and the folio and volume of the Property Registry of the district where the real estate property is registered, if it had been registered.

Should the right of redemption set forth below not be exercised within the prescribed term, said certificate, once registered in the Property Registry in the corresponding district, shall constitute absolute title to the property in favor of said buyer subject to the liens registered on said property. Said certificate shall constitute prima facie evidence of the events described therein, in any dispute or proceeding or suit that involves or concerns the rights of the purchaser, his/her heirs or assigns, to the property transferred by virtue thereof. Upon receipt of said certificate, the purchaser, his/her heirs or assigns, may duly file it with the corresponding division of the Property Registry by paying the corresponding registration fee.

Article  4.14. Redemption of Assets Sold for Taxation.

With the exception of the provisions of Article 4.09 of this Title, any person who, as of the date of the sale, owns any real assets that are later sold to another individual or legal entity or to the Collections Center for taxation, or any person, or his/her heirs or assigns, who on the date of the sale has any right or interest in the same, may redeem them within the term of one year from the date the certificate of purchase is issued, by paying to the Collections Center or  its [representative], or to the purchaser, heirs or  assigns, the total amount of the purchase value plus the improvements and expenses incurred by the buyer, together with the costs accrued and taxes due up to the date of the redemption, to which twenty percent (20%) of all of the preceding shall be added as compensation to the buyer. When payment of said amounts is verified, the person redeeming the property shall be entitled to receive from the buyer, or his/her heirs or assigns, said purchase certificate, on the back of which shall be issued in due form and before a notary public the receipt of the money paid, and the person redeeming the property shall pay the notary public's fee. The certificate duly issued on the back of the purchase certificate, or in lieu thereof; the certificate from the Collections Center as set forth below, shall  have the effect of a letter of payment of all claims of the Collections Center on the property title of the real estate property sold because, or by virtue of said auction for the payment of unpaid taxes and cancellation of the purchase certificate. If the property has been adjudicated to the Collections Center, once the amounts indicated above have been paid, the Collections Center shall issue a certificate for the Property Registry, attesting to the redemption and ordering that same be recorded in the Property Registry cancelling the purchase in its name. The person redeeming the property may file said letter of payment, or in lieu thereof, the Collections Center certificate, for registration with the Property Registry against the purchase certificate by paying the registration cost required by the Registrar. The property thus redeemed will continue to be subject to all encumbrances and legal claims against it other than taxes, to the same extent and manner as if said property had not been sold for taxation. When the property is redeemed by a mortgage creditor, the money paid by same to redeem

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*  By Targem Translations Inc.*

the property shall be accumulated to its mortgage credit and may be recovered at the same rate of interest accrued by the mortgage credit. When the tenant or lessee redeems the property, he/she may deduct the total of said redemption from the rent payable. Except as provided by Article 4.09 of this Title, when the property has been adjudicated to the Collections Center, same may agree, at its discretion, or after a year has elapsed from the date of issue of the sale certificate, that same may be redeemed by any person so entitled within that year, provided that when the redemption is requested, the property is not being used by the Commonwealth of Puerto Rico and has not been sold, transferred or conveyed by lease to the Collections Center, or the surplus of the proceeds of the auction has not been delivered, and provided that the person who requests the redemption previously deposits at the Collections Center the total amount of the taxes to be collected at auction plus the improvements and expenses incurred by the Collections Center together with all the accrued costs and the taxes that would have been levied on the property had the same continued in the possession of any taxpayer, with its surcharges and interest, plus twenty percent (20%) of the foregoing as a penalty. In these cases, once the Collections Center has agreed to the redemption, a certificate of redemption shall be issued, and the sale shall be cancelled in the Property Registry in the same manner as described in this Article for redemption within one year.

Article 4.15. Buyer with Unknown Address

A. When the taxpayer whose real estate property has been auctioned for tax payment wishes to recover same and does not know the address of the person to whom it was auctioned, or cannot locate him/her at the address provided on the certificate of sale, he/she shall so announce in an edict that shall be published in a newspaper of general circulation for thirty (30) days, one time per week, and in addition, shall post it for one month at the internal revenue collection office or offices of the municipality where the real estate property was sold, making the offer of the sum paid by the successful bidder plus interest up to the day of the deposit, and once the term has expired, the taxpayer shall make said deposit at the Property Registry in the manner and to the effects determined in Article 4.16 of this Title.

B. The person with an interest in the auctioned real estate property shall have the same rights as the delinquent taxpayer.

Article 4.16. Procedure if the Buyer Refuses Redemption Money or Address is Unknown; Redemption Certificate

Should said buyer, his/her heirs or assignees refuse to accept the cash offer made to redeem the property, as stated, or if they cannot be located, the person entitled to redeem the property shall pay the amount of the redemption to the Collections Center or its representative. In that case, the Collections Center shall calculate the legal amount of money that must be paid in order to redeem the property pursuant to the prescriptions of this title and upon receipt of same will issue the property redemption certificate to the person who, in fact, redeems said property. The payment of the redemption money to the Collections Center shall restore to said prior owner and his/her heirs or assigns all rights and title to said real property and their share therein, and dominion that said former owner had over same prior to said property being sold for payment of taxes.

Article 4.17. Notice to the Buyer Concerning Deposit of Redemption Money

Upon receipt of money to redeem the property in the above-mentioned manner, the Collections Center shall notify the buyer, his/her heirs or assigns, of the payment of said money and shall keep it at the disposal of said buyer, heirs or assigns. The aforementioned notification may be sent by certified mail to the most recent residence of the purchaser, his/her heirs or assigns, in the manner stated in the purchase certificate.

Article 4.18. Purchase of Personal or Real Property by the Collections Center

All personal property or parcels of real property offered at public auction for the payment of unpaid taxes which are not sold for lack of an offer sufficient to cover all taxes, penalties and costs that encumber said property, may be purchased in the name of the Collections Center at any public auction. The Collections Center shall publicly bid for said property for the amount of said taxes, penalties and costs and should it not make the best offer, it will release and have a certificate of purchase drafted to the name of the Collections Center to be field with  the Property Registry of the district in which said property is located, containing the report and description of the property prescribed by

27

Article 4.13 of this Title. If the right of redemption granted by Article 4.14 of this Title is not exercised within the prescribed term, said certificate, once field with the Property Registry of the district where said property is located, will constitute absolute title to said property in favor of the Collections Center, free from any mortgage, lien or any other encumbrance. Said certificate shall constitute prima facie evidence of the events inscribed therein in any dispute, proceeding, or lawsuit concerned with or related to the right that the purchaser, his/her heirs or assigns might have to the property assigned by same. No fees shall be charged by the property registrars for recording said certificate or copies they may issue thereof. The Governing Board of the Collections Center shall adopt and promulgate the rules needed to regulate the authorities granted to it by this Act to purchase in its name real or personal property, or both, at tax collection auctions, and in specific cases it may instruct any of its representatives to purchase or abstain from purchasing the attached property.

In cases in which the property is adjudicated to the Collections Center, it is empowered to pay to the person entitled to a homestead the sum established in the statutes in order to protect that right.

The Collections Center shall transfer to the corresponding municipality the title to the personal and real property which it acquires through the process of attachment, free of charge, and shall register it in its books for the indebted value.

Article 4.19. Cancellation of an Irregular Sale by the Collections Center

When any real property has been sold due to a default on taxes and auctioned in favor of the Collections Center, and it is later discovered that, for whatever reason, there were irregularities in said sale, and that its owner has been unduly deprived of property, the Collections Center is empowered to cancel said sale and, when necessary, to issue a certificate of redemption which shall have the effect of a new transfer of the property to its owner or to his/her heirs or assigns, whichever the case might be, and the property shall remain subject to all liens and legal claims against it to the same extent and in the same manner as if it had not been sold for tax payment, and the Property Registrar shall file the certificate of redemption without charging any fee whatsoever for that service.

Article 4.20. Partial or Total Property Redemption; Puerto Rico Land Act

Regardless of whether the one-year term established by Article 4.14 of this Title for the redemption of property sold for the collection of taxes has expired, in all those cases in which the Collections Center adjudicates to itself rural property at public auction for the collection of taxes, penalties and costs that encumber it, by which sale agreements are executed by the delinquent taxpayer with the Secretary of Agriculture to comply with Title V of the Land Act of Puerto Rico approved April 12, 1941, as amended, the Collections Center may issue redemption certificates for all or that part of said real property committed by sale by said taxpayer in favor of the Secretary of Agriculture by paying all or the proportional part of the redemption price, and the main real estate property corresponding to the redeemed parcel.

TITLE V

PROPERTY TAX EXEMPTIONS

Article 5.01. Tax-Exempt Property

The following assets shall be exempt from all personal and real property taxes:
(a) Household personal property, such as furniture; jewelry; coin, stamp, and artwork collections, etc., and others of a similar nature; securities; furniture of a second home; boats, and any other article strictly for personal use.

(b) Property of the United States and all property that is tax-exempt under the laws of the United States; property of the Commonwealth of Puerto Rico, of the Puerto Rico Housing and Human Development Trust and of the Puerto Rico Conservation Trust, with the exception of those set forth in Article 3.16 of this Act; the property of any municipality exclusively set aside for public use, even though said property is a source of revenue for the municipality to which it belongs. In cases where the Commonwealth Government has conveyed or later conveys lands or property belonging to it in usufruct to private persons or entities, said lands or property thus conveyed shall

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
 *By Targem Translations Inc.*

be subject to the property tax laws and the usufructuaries shall be required to pay such taxes. In the event said usufructs are for a term of more than five (5) years, or for life, the usufructuaries shall be deemed to be the owners of the property for all effects of the tax exemption laws and ordinances.

(c) Debts of any person, partnership, or corporation subject to taxation, with the limitations and in the manner prescribed in Articles 3.16 and 3.17 of this Act.

(d) Capital stock of institutions, corporations, or companies organized under the laws of Puerto Rico, when the ownership of such corporations is exempt or when such institutions, corporations or companies are subject to taxation on such shares, with the limitations and as set forth in Articles 3.31 and 3.35 of this Act; and the capital stock of foreign corporations owned by individuals or investment companies registered and organized under the laws of Puerto Rico.

(e) Real and personal property belonging to and registered in the name of any nonprofit corporation, institution, partnership or entity established under the laws of Puerto Rico, dedicated to religious, charitable, scientific, literary, educational, and recreational purposes, among others, as well as commercial leagues, chambers of commerce, civic leagues or organizations, ownership boards, tenant associations, employee associations, and any other nonprofit organization in general, whose net properties and utilities do not benefit any shareholder or person in particular. The personal and real property used as parish houses in which preachers, ministers or priests live shall be exempt; as well as those partially or totally used as Masonic and Oddfellow lodges, or as theosophic or psychic study centers or charitable centers. However, if part of the property is not occupied by the organization or institution for its nonprofit purposes and ends, or that part of the property is leased and making a profit, the part of the property thus used shall be subject to taxation in the manner, within the term, and upon meeting the requirements provided by law.

(f) Property of any hospital, clinic or polyclinic belonging to a religious institution, organization, partnership, foundation, or any other type of institution organized and devoted to the performance of medical-hospital activities for nonprofit purposes, including land, buildings, garages, annexes, housing for resident physicians, nurses and nursing students, in existence or to be built in the future as an integral and indispensable part of the physical plant, of said hospitals, clinics or polyclinics; also including all equipment and personal property used in the operation and performance of its medical-hospital activities. The tax exemption granted under this Subsection is subject to compliance with the requirement that the religious institution, organization, partnership, foundation or any other type of nonprofit institution in question that owns said medical-hospital facility, has established and maintained, or establishes and maintains at said hospitals, clinics or polyclinics, free of charge or at a nominal cost, such dispensary, medical-surgical and hospitalization and laboratory services for indigent persons, that in the judgment of the Collections Center, in consultation the proportion of said services in relation to the total volume of services rendered during the preceding tax period, justified the tax exemption privilege provided by this Subsection. The benefits or surplus obtained in the operation of such activities may not be distributed among partners, individual shareholders or members of the religious institution or nonprofit organization. Said benefits or surplus shall be devoted to the improvement and expansion of their facilities and services or to any other end closely related to the objectives and purposes for which said religious institutions and nonprofit organizations were created. As an indispensable requirement for receiving the tax exemption established herein, the Secretary of Health must certify that the applicant meets the minimum requirements for rendering hospitalization, medical-surgical and laboratory services. Likewise, an indispensable condition for enjoying benefits under this title, every institution covered by it must remit in a timely manner any tax withheld from salaries pursuant to the provisions of Article 141 of Act No. 91 of June 29, 1954, as amended, known as the "Income Tax Act of 1954".

The right to the tax exemption granted under this Subsection shall be exercised by filing the official form to be provided by the Collections Center for this purpose and the exemption shall take effect during the fiscal year corresponding to the appraisal date following its filing, except for any hospital, clinic or polyclinic, or any other type of nonprofit institution engaged in rendering medical-hospital services which is already tax-exempt as set forth herein as of the date on which this Act is passed, which shall continue to enjoy same and shall not be required to file the official from mentioned above. It shall be the indispensable obligation of every religious institution, organization, partnership, foundation, or any other type of nonprofit institution enjoying this tax exemption, to submit a written report to the Collections Center no later than April 15th of each year, regarding its operational

29

activities and services rendered to indigent persons. Said report shall include a list of the names and addresses of the indigent patients attended and the cost of the services rendered. Noncompliance with this requirement in the time and manner provided shall constitute sufficient legal grounds not to recognize or to revoke any tax exemption granted previously, unless an extension for filing the report has been requested before the expiration of the established term. The Collections Center may grant an extension that shall not exceed sixty (60) days from the date said report should have been submitted, when it is satisfactorily shown that special circumstances have prevented, or will prevent the preparation and filing of said report within the term provided herein. In case any part of the personal or the real property is not used or occupied by it for its nonprofit ends and purposes, the hospital, clinic or polyclinic belonging to a religious institution, organization, partnership, foundation or any other type of nonprofit institution organized and engaged in performing medical-hospital activities, or that part of the personal or real property is leased or making a profit, the part of said property not used or occupied for its nonprofit purposes or that is leased shall be subject to the levy and payment of taxes in the manner, within the term, and upon meeting the requirements provided by law.

(g) Real and personal property belonging to any nonprofit organization incorporated under the laws of Puerto Rico for the purpose of selling prepaid programs or plans for medical and hospital services, provided it complies with the requirements of Act No. 142 of May 9, 1942, as amended. If part of the property is not be occupied by the partnership for its nonprofit ends and purposes, or that part of the property is leased and making a profit, the part of the property so used shall be subject to taxation in the manner, within the term, and upon meeting the requirements provided by law.

(h) Cemeteries, tombs, and the right to burial at a specific location, provided these places are destined for the burial of cadavers and no dividends or profit are obtained from them, except for dividends or profits derived from cemeteries owned by the municipalities.

(i) Vessels of all types not used in any industry or business, except for commercial fishing or leasing for recreational purposes, which are duly registered with the Office of the Navigation Commissioner of the Department of Natural and Environmental Resources. Also exempt shall be the fish in the possession of the fishermen who caught them, vessels of all types which constitute the working tools of the fishermen and the fishing vessels exclusively devoted to fishing as part of any industrial unit, or any entity engaged in fishing and in the exclusive transportation of fish for industrial processing in Puerto Rico, or to any of these.

(j) Fruit to be harvested and land products that are precisely the property of the producer and while they are in his/her possession; cattle and silos used exclusively to ferment fodder for raising cattle; poultry and the equipment and structures specifically constructed for poultry production; pigs and the equipment and structures specifically built for raising pigs, and thoroughbred horses raised for breeding, race horses, equipment and structures built and the land developed specifically for breeding thoroughbred race horses. "Thoroughbred horses" raised for breeding shall be understood to mean those registered in the Puerto Rico Racehorse Stud Book kept by the Horse Racing Administration pursuant to the regulations in effect.

(k) Private property of artisan workshops when they are directly operated by the artisan in the practice of his/her craft even though they may be available to more than one artisan.

(l) Any license, authorization, diploma, or certificate granted by virtue of the law to individuals to exercise a profession, occupation, or craft. Texts and professional books and private libraries shall also be exempt.

(m) Non-interest-bearing mortgage bonds, and other obligations used exclusively as bonds or guaranties of the faithful performance of public office.

(n) Motor vehicles subject to payment of license plate and sticker fees provided by Act No. 141 of July 20, 1960, as amended, known as the "Vehicle and Traffic Act of Puerto Rico", except those kept in stock by individual or legal entities who are motor vehicle dealers.

(o) Raw sugar and the syrup produced from sugar cane in Puerto Rico as long as they are in the possession of the producer, and refined sugar in the possession of the refiner.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(p) Real and personal property owned by the government of a foreign country to be used completely or exclusively for the official use of a consulate in Puerto Rico, and while said property is used for such a purpose, provided that the respective countries grant a similar exemption to properties belonging to the United States of America devoted to a similar use within their territory. The diplomatic or consular representatives requesting such an exemption must cite before the Department of State the legal provision, or stipulation by treaty or agreement, which establishes such a privilege in the country represented by them; and they must, likewise, notify the Department of State of Puerto Rico in a timely manner when the government of their nation sells, transfers, donates or in any other way conveys said property in Puerto Rico.

(q) Machinery and equipment used in Puerto Rico for:

   (1) Research about and/or exploration for minerals or oil by individual or legal entities who perform such studies with the approval of the Puerto Rico Mining Commission. This exemption shall be in effect regardless of whether said machinery and equipment is not being used for any reason.

   (2) The conversion of coal into a source of energy. This exemption shall be granted for the five (5) years immediately following the acquisition or installation of the equipment. The equipment acquired prior to the date on which this Act is passed shall be governed by the applicable legal provisions and shall be in effect until the date on which this Act is passed.

   (3) The control, reduction or prevention of environmental pollution caused by a cement production plant.

(r) Broadcasting licenses or franchises granted by the Federal Communications Commission to radio and television stations that operate in Puerto Rico.

(s) Any solar-powered material, equipment, or accessory. This exemption shall be recognized for five (5) years immediately following the acquisition and installation of such equipment.

(t) Real and personal property belonging to an international banking institution to which a license has been issued under International Banking Center Regulatory Act.

(u) Properties built or under construction on the effective date of this Act, and which are devoted to the rental housing market under Article 515 or Article 521, Plan II of the Federal Rural Housing Act of 1949, as amended, Public Law 81-171, pursuant to the following norms:

   (1) The tax exemption shall not exceed fifteen thousand (15,000) dollars of the appraised value per housing unit, pursuant to the criteria for the classification and appraisal of property for tax purposes as provided in Title III of this Act;

   (2) the lessor shall not own property, directly or indirectly, for residential purposes;

   (3) the exemption shall be granted for a period of twenty (20) years while the property is maintained in the housing rental market under Plan II of Article 515 or 521 of the Federal Farmer's Home Administration and operates on the basis of limited profits; and,

   (4) the Secretary of Housing of the Commonwealth shall issue a certification as to the social interest of the housing under Program 515 or 521 of the Farmer's Home Administration once he/she receives documentation to that effect from that federal agency. The Collections Center shall issue the corresponding tax exemption in keeping with this certification.

(v) Any authorization and/or license granted by the Public Service Commission to an individual as a public carrier, provided said person is the one using the license and/or the authorization thus granted, and that the same is his/her working tool. No individual shall be permitted more than one exemption under this Subsection.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(w) Intangible personal property including good will, privilege rights, trademarks, grants, franchises, value of contracts, patents, inventions, formulas, processes, designs, patterns, special technical know-how, methods, programs, systems, procedures, campaigns, surveys, studies, forecasts, estimates, client lists, technical information and any other of a like or similar nature.

(x) Real property located in historic zones declared as such by the Puerto Rico Planning Board or by the Institute of Puerto Rican Culture pursuant to legislation in effect.

Article 5.02. Buildings under Construction; Equipment and Machinery to Be Installed or Used; Property Tax Exemption

Every building under construction as of July 1, 1991, or whose construction begins after said date shall be exempt from all property tax levied and payments. All equipment, material and machinery acquired to be installed or used, and which is installed or used in a building or partly in the lot and partly in said building or exclusively in a lot, shall also be covered by this exemption, but said exemption shall expire as soon as such installation or use is ended and said equipment, material and machinery becomes a part of the job; but in no case will this exemption be in effect for more than three (3) years from the date on which such machinery, material or equipment is available in Puerto Rico for installation or use in a construction work in progress.

Article 5.03. Exemption Term

The exemption established by Articles 5.02 to 5.09 of this Title shall be in effect until the exempt building is finished or is in a condition to be used for the purposes for which it was constructed, or starts to be partially or totally occupied; but in no case shall the exemption be in effect for more than three (3) years from the date on which the construction of the building was begun. The effective term of this exemption with regards to machinery, material and equipment shall be governed by the provisions of Article 5.02 of this Title.

Article 5.04. Taxation upon Expiration of Exemption

If the tax exemption ceases on or after January 1st but no later than June 30th of any year, the building shall remain subject to property taxes for the fiscal year beginning on the following July first. When this occurs, the Collections Center shall immediately proceed to appraise the building as of immediately preceding January 1st, and to issue the corresponding invoices in manner determined by law.

Article 5.05. Exemption Request

Any person who believes he/she is entitled to the exemption established by Articles 5.02 and 5.09 of this Title, shall present an exemption request to the Collections Center providing all the information required. For building construction beginning after July 1, 1991, the exemption request must be submitted within thirty (30) days following the start of the project. For machinery, material and equipment available for installation, or in the process of being installed on the effective date of this Act, the request must be submitted within thirty (30) days following said effective date; in all other cases of this nature the request must be submitted within thirty (30) days following the date on which the machinery or equipment was received by the firm that will finally use it, or by its agent in Puerto Rico for the purpose of installing same. Regarding the materials, the Collections Center will prescribe through regulations the date on which the exemption request must be submitted. Exemption requests submitted after the terms prescribed herein have expired will be refused by the Collections Center, unless it is satisfactorily shown to said agency that special circumstances have prevented the timely presentation of the request.

Article 5.06. Additional Information

In addition, the Collections Center is hereby empowered to require from any petitioner, any additional information that in its judgment is needed prior to approving the exemption. If the petitioner does not furnish the information requested within the term of thirty (30) days, or within an additional term granted to him/her by the Collections Center for that purpose, the Collections Center may deny the exemption.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
 *By Targem Translations Inc.*

Article 5.07. Other Taxes to Be Paid

The Collections Center shall not recognize any exemption whatsoever in virtue of Articles 5.02 and 5.09 of this Title until the petitioner shows that he/she has paid in full all the property taxes owed on properties belonging to him/her to the Collections Center, with the exception of cases in which the tax owed is challenged before the courts, is postponed, or is pending collection.

Article 5.08. Collections Center Rulings Shall Be Final

A ruling of the Collections Center approving or denying a tax exemption under Articles 5.02 and 5.09 of this Title shall be final and unappealable.

Article 5.09. Regulations

The Governing Board of the Collections Center shall adopt the rules and regulations needed to implement the provisions of Articles 5.02 and 5.09 of this Title subject to the provisions of Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act of the Commonwealth of Puerto Rico."

Article 5.10. Exempt Raw Materials; Definition

For the purpose of  Articles 5.10 to 5.13 of this Title, "raw materials" shall be understood to mean not only products derived from farming or the so-called extractive industries in their natural form, but any subproduct, any partially processed product, or any finished product, provided it is used as an ingredient or as an integral part of another industrial product, so that when the industrial process is performed, said "raw materials" totally and completely become part of the finished product, or are completely consumed, totally extinguished and cease to exist.

Article 5.11. Finished Products; Definition

"Finished products" shall be understood to mean commercial goods obtained by combining two or more "raw materials" or by subjecting one or more of these to industrial processes, provided that in one case or the other, predetermined methods and manual labor are used directly or indirectly.

Article 5.12. Property Tax Exemption

"Raw materials" guaranteed to be used in the production of finished goods shall be exempt from payment of all property taxes while in the possession of the producer of the finished goods.

Article 5.13. Regulations

Subject to Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act", the Governing Board of the Center shall provide, through rules and regulations, the methods and norms needed to implement Articles 5.10 to 5.13 of this Title, and may require that taxpayers to submit any of the evidence needed for that purpose.

Article 5.14. Products Stored for Aging; Exemption after First Year

For the purpose of stimulating the improvement of quality of products whose quality the Secretary of the Treasury recognizes will improve with aging, pursuant to the provisions of Act No. 53 of May 5, 1945, as amended, are hereby exempt from all property taxes for every fiscal year subsequent to the first fiscal year in which they were stored for aging.

Provided, however, that in order to grant said exemption the Secretary of the Treasury must submit to the Collections Center the corresponding administrative resolutions issued to that effect.

Article 5.15. Tax Exemption for Properties Affected by Slum Clearance and Urban Renewal Projects – Generally

33

Property that is wholly or partially affected by housing, slum clearance and urban renewal projects, is hereby exempted from all property taxes, following the procedures provided below.

Properties "affected by housing, slum clearance or urban renewal projects" shall be deemed to be those located in areas in which the Planning Board has favorably recommended the development of a housing, slum clearance or urban renewal project. The Planning Board shall notify the Collections Center by providing it with a copy of its recommendation, which will include a map indicating the affected area.

Article 5.16. Request for Exemption; Notice of Rights to Owners

The owner of a property affected by a housing, slum clearance or urban renewal project, as set forth above, may submit a request to the Collections Center to take advantage of the benefits under Articles 5.15 to 5.21 of this Act.

In order to enjoy such benefits, the taxpayer must file the tax exemption request at the Collections Center, within sixty (60) days following the date in which the Planning Board notifies him/her that his/her property has been affected by a housing, slum clearance or urban renewal project, as provided in this Article, or within thirty (30) days following the date of notice of the tax levied on the affected property, whichever occurs first. In cases in which the taxpayer files his/her request beyond the terms indicated above, the Collections Center will grant him/her such benefits prospectively, starting with the year of the current levy if he/she files the request prior to the first of July or at the beginning of the following year if he/she should file after that date.

It will be the duty of the Planning Board to notify the Collections Center of every case in which they have proceeded to freeze a property affected by said housing, slum clearance, or urban renewal projects and notify the owners of the properties thus affected of the rights granted them by Articles 5.15 to 5.21 of this Title.

Article 5.17. Vacant Property or Property Not in Use and Not Producing Income

Property affected pursuant to the provisions of Article 5.16 of this Title, which is vacant or not in use and not producing income, shall be exempt from all property taxes as long as it remains in such a condition.

Article 5.18. Property Subject to Building Restrictions

Built-up lots in which the building has been affected in the manner established in Articles 5.15 to 5.16 of this Title, and the building is being used by its owner as his/her own dwelling, shall be exempt from all property taxes for the total appraised value of the lot and building for tax purposes while the legal building restriction which causes the exemption lasts. In cases in which the affected or built-up lots are producing income, they will only be exempt from fifty percent (50%) of the property taxes while the legal building restriction which causes the exemption lasts.

Article 5.19. Change in Determinations

The reconstruction, extension or improvement of any structures or the productive use of a property that has availed itself of the benefits of Articles 5.15 to 5.20 of this Title, shall be sufficient cause for the Collections Center to revise its determinations and notify the owner of the property of any change made to said determinations.

Article 5.20. Revision of Determinations

An interested party may make use of the procedure established in Article 3.29 of this Title to revise the determinations of the Collections Center.

Article 5.21. Start and Duration.

The exemption granted by Articles 5.15 to 5.21 of this Title shall take effect as of January 1st of the year in which the property was partially or totally affected as set forth in Article 5.21 of this Title if the date when it begins to be affected occurs prior to July 1st of any year, and for the entire time that it remains in such a condition.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Article 5.22. Tax Exemption for Property Affected by Official Plans or Maps, and Plans and Programs of the Planning Board

All property that is totally or partially affected by the Official Road and Street Plans or Maps approved by the Planning Board of Puerto Rico, as well as property that is totally or partially affected by the recommendations included by the Planning Board in the Integral Development Plan for Puerto Rico, the Four-Year Investment Program and/or the Land Use Plans established by Act. No. 75 of June 24, 1975, known as "Organic Act of the Puerto Rico Planning Board", is hereby exempt from taxation, following all procedures provided below.

Article 5.23. Request

The owner of a totally or partially affected property as set forth above, may submit a request to the Collections Center to take advantage of the benefits of Articles 5.22 to 5.29 of this Title, accompanied by a certification from the Planning Board indicating the part of the lot affected by the official plans or maps or which is in conflict with the plans and programs recommended by the Planning Board. The Planning Board shall notify the owner of the property thus affected of his/her rights under this Act.

In order for the owner of the property thus affected to be able to enjoy such benefits, the taxpayer must file a tax exemption request at the Collections Center within thirty (30) days following the date of said notice, or within thirty days (30) following the date of the notice of the tax assessment for the affected property, whichever occurs first.

Article 5.24. Exemption Scope and Terms

Lots affected by the official plans or maps and programs adopted by the Planning Board as indicated above, that are vacant, or unused, and are not producing income, shall be exempt from all property taxes as long as they remain in such a condition and for the duration of the legal building restriction that causes the exemption.

Likewise, built-up lots which are vacant or unused and are not producing income shall be exempt from all property taxes as long as they remain in such a condition and for the duration of the legal building restriction that causes the exemption.

For lots and real estate properties with a greater surface area that are only partially affected by government projects, and those where the remainder of the land may continue to be used or is destined for the uses allowed by the Puerto Rico Planning Board, the tax exemption provided by Articles 5.22 to 5.29 of this Title shall be limited exclusively to the appraisal of the portion of the property thus affected as long as it remains in the condition that caused the exemption.

Article 5.25. Own Dwelling; Income-Producing Assets

Built-up lots included in Articles 5.22 to 5.29 of this Title, in which the building thus affected is being used by its owner as his/her dwelling, or is producing income, shall be exempt from all property taxes up to fifty percent (50%) of the appraisal value for tax purposes on the lot and the building, as long as the legal restriction to build that causes the exemption persists. Property being used as parking areas for vehicles, or lots for the sale of new or used motor vehicles and thus producing income shall be excluded from the benefits of the exemption provided herein.

Article 5.26. Property with Building Restrictions

Lots that are not built up and that are producing income, which are affected by the official plans or maps, or by the aforementioned plans and programs recommended by the Planning Board, shall likewise be exempt from all property taxes up to fifty percent (50%) of the appraisal value for taxation purposes if the project indicated in them were to be developed, and no construction could be done on the remainder of the lot because it would be prohibited by the planning regulations. This exemption shall be allowed for the duration of the legal building restriction that causes the exemption. Properties that produce income because they are being used as parking areas for vehicles, or lots for the sale of new or used motor vehicles, shall be excluded from the benefits of the exemption provided herein.

Certified to be a correct and true translation from the source text in Spanish to the target language English.
13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

Article 5.27. Commencement and Duration

The exemption granted by Articles 5.22 to 5.29 of this Title shall be effective as of January 1st of the year in which the property was totally or partially affected, as provided by Article 5.22 of this Title, should the date of the encumbrance occur prior to July 1st of any year and shall continue for the time it remains in the condition that caused the exemption, and it must furthermore comply with the provisions of Act No. 46 of June 26, 1987 in order to qualify for the tax exemption for properties affected by official plans or maps and programs of the Planning Board.

Article 5.28. Productive Use of Exempt Property

The construction of any structure or the productive use of a lot that has benefited from Articles 5.22 to 5.29 of this Title shall be sufficient reason for the Collections Center to revise its determinations and notify the owner of the property of any change made to said determinations.

Article 5.29. Revision of Determinations

An interested party may use the procedure established in Article 3.29 of this Title to revise the determinations of the Collections Center related to Articles 5.22 to 5.29 of this Title.

Article 5.30. Exemption of Assets of Persons Displaced from Their Residences by Urban Renewal, Housing or Public Improvement Projects or Any Government Action; In General

The property tax corresponding to fiscal year 1992-93 and subsequent fiscal years on any property whose appraisal value for tax purposes does not exceed $10,000 and which was acquired or built to be used as a home by any person displaced from his/her residence in a zone in decay or in a slum as the result of any urban renewal and housing development or public improvements project or any government action, shall be reduced by 75 percent of its total for a term of ten (10) years, and by fifty (50) percent of its total for an additional term of five (5) years as of the date it is registered in the Property Registry in the name of said person or when said person's ownership is registered.

For the purposes of this Article, "acquired or constructed to be used as a home" shall be understood to be any structure that, as of January 1st of each year is being used, or is available for use as a dwelling by its own owner with his/her family, if any; including the lot where said structure is located for property located in an urban zone, and for properties located in an rural zone, the parcel where the structure is located up to a maximum capacity of one *cuerda*. The condition of being a "person displaced from his/her residence by the development of any urban renewal, housing or public improvement program or by any government action" may be verified only by submitting to the Collections Center a certificate to such effect authorized by the Housing Department of Puerto Rico.

The tax reduction granted by the provisions of this Article shall cease as soon as the buyer or the builder conveys the property or ceases to reside in the property subject of this reduction or fails to comply with the zoning regulations in effect.

Article 5.31. Effect on Other Taxation Provisions

The provisions of Articles 5.30 to 5.33 of this Title shall in no way affect the homestead exemption, the property tax exemption granted to veterans of the Armed Forces of the United States, and the discount for prompt payment; but benefits granted by Articles 5.30 to 5.33 of this Title and tax relief benefits granted to properties used as dwellings are hereby declared incompatible; and the owners of property that qualifies for both benefits may claim only one of said benefits for any fiscal year.

Article 5.32. Nonprofit Organization

Property taxes corresponding to the 1992-93 fiscal year and for any subsequent fiscal year on any property in the possession of any non-profit organization duly authorized under the laws of Puerto Rico, to be rented to any person displaced by the development of any urban renewal or housing project or any government action, shall likewise be

36

reduced by seventy-five percent (75%) of its total, provided the property is used and the rental fees established pursuant to the rules and regulations promulgated by the Federal Housing Administration under the provisions of Article 221 of the National Housing Act, as amended.

The Collections Center shall apply the tax reduction established by this Article only to those dwellings that the Department of Housing of Puerto Rico certifies as destined to be rented to persons displaced as a result of the development of urban renewal or housing projects; that the rental fees established do not include any profit for the organization; that said dwellings and fees are subject to the regulations promulgated by the Federal Housing Administration pursuant to Article 221 of the National Housing Act, as amended, and that said dwellings are necessary in the public interest.

Article 5.33. Regulations

The Collections Center shall prescribe the rules and regulations needed to comply with Articles 5.30 to 5.33 of this Title.

Article 5.34. Property acquired by the Commonwealth or by the Government of the United States of America

a. Every owner of property acquired by voluntary purchase or expropriation by the Commonwealth of Puerto Rico and its instrumentalities or by the Government of the United States of America, shall be exempt from paying property taxes when said voluntary purchase or expropriation occurs after the January 1st but before July 1st of any year, and subject to the conditions set forth below.

b. The only exempt taxes under this Article shall be those corresponding to the fiscal year beginning on July 1st after the voluntary purchase or expropriation.

c. Nothing provided herein shall be deemed to limit the right of the Collections Center to collect any taxes owed on the property sold or expropriated prior to the exemption granted by this Article.

Article 5.35. Retailers with Sales under $150,000 - Eligibility

Any retailer that is an individual or legal entity and is directly engaged in the sale of goods or services to consumers, and does not currently have a larger exemption, is hereby exempt from the personal property tax levied by virtue of Articles 2.01 and 2.02 of this title, and the real property tax levied by the municipalities of Puerto Rico for an amount equal to the tax levied on said property up to a valuation of fifty thousand dollars ($50,000); provided that the annual sales volume of said individual or legal entity's business or businesses has not exceeded one hundred fifty thousand dollars ($150,000) during the calendar year immediately preceding the fiscal year for which the tax is calculated. Individual or legal entities engaged in the concurrent manufacture and retail sale of goods shall be entitled to the exemption granted by Articles 5.35 and 5.41 of this Title only for that part of their operations which properly corresponds to retail sales.

Article 5.36. Payment of Prior Debts

It is hereby established that, in order to receive the benefits of Articles 5.35 and 5.41 of this Title, it is indispensable that the taxpayer not owe any amount of taxes on personal property, on the date on which, according to legislation in effect, the taxable nature of the property is determined, or that if he/she should owe said taxes, the taxpayer should prepare and obtain the approval of a payment plan ensuring the liquidation of the debt in arrears. As an additional condition for granting the benefits of Articles 5.35 and 5.41 of this Title, should the taxpayer obtain a payment plan pursuant to what is provided herein, he/she must be in compliance with the terms of same as of the first of January immediately prior to the fiscal year for which he/she requests the tax exemption.

Article 5.37. Exception

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

For the purpose of Articles 5.35 and 5.41 of this Title, when a payment plan to liquidate a debt in arrears is granted pursuant to the provisions of Articles 5.36 of this title, the provisions of Article 3.46 of this Title shall not apply regarding the application of payments in strict order as they become due.

Article 5.38. Commitment with Bondholders

Nothing contained in Articles 5.35 and 5.41 of this Title shall be deemed to modify any former action pursuant to the law binding the good faith, credit and taxing power of the Commonwealth or any municipality to a commitment for payment of the principal or interest on any bonds or notes of the Commonwealth or any municipality, nor does it impair the guarantees of commitments of this nature made hereinafter, pursuant to the law. Should the Legislature during any fiscal year discontinue the appropriation provided by Article 5.39 of this title, the exemption granted by Articles 5.35 and 5.41 of this Title on the payment of property taxes levied by the Commonwealth or the municipalities, as the case may be, shall be suspended for said fiscal year and this provision shall constitute a commitment from time to time, with holders of bonds and notes for payment of which the power of the Commonwealth or of any municipality to levy taxes has been committed.

Article 5.39. Appropriation to the Special Fund.

A sum equal to the amount of tax not collected as a result of the tax exemption under Article 5.35 of this Title, plus the sum equivalent to the amount of 20 hundredths of one percent (1%) for which the municipalities are compensated by Act No. 16 of May 31, 1960, as amended, is hereby appropriated to be paid into the funds in trust with the Government Development Bank, as provided in Subsection (c) of Article 4 of the Municipal Revenue Collection Center Act, out of the funds of the Collections Center, for each fiscal year, subsequent to July 1, 1992, and as long as Articles 5.35 to 5.41 of this Title remain in force. Likewise, from any available funds in the State Treasury, an amount is hereby appropriated equal to the amount of the taxes not collected as a result of the aforementioned exemption granted prior to July 1, 1991. The Secretary of the Treasury shall remit said funds to the Government Development Bank.

The funds provided herein shall be applied by the Government Development Bank to pay the principal and interest on general obligations of the Government of the Commonwealth of Puerto Rico.

Article 5.40. Fraudulent Reporting

Any person who, in order to take advantage of the benefits of the tax exemption authorized by Articles 5.35 and 5.41 of this Title, submits any fraudulent statement, evidence or information, or fails to present or conceals the true details that will allow the Collections Center to correctly calculate of the exemption authorized by Articles 5.35 and 5.41 of this Title, shall be guilty of a felony and upon conviction shall face a fine of three thousand dollars ($3,000) or imprisonment for three (3) years, or both, at the court's discretion.

Article 5.41. Rules and Regulations

The Governing Board of the Collections Center shall adopt the necessary rules and regulations to comply with the provisions of Articles 5.35 and 5.41 of this Title, subject to Act No. 170 of August 12, 1988, as amended, known as "Uniform Administrative Procedures Act of Puerto Rico". The rules and regulations adopted by the Secretary of the Treasury on this matter shall be in effect as long as they are not prescribed.

Article 5.42. Exemption for Lands under Intensive Agricultural Use

Articles 5.42 to 5.50 of this Title shall apply to all property tax exemptions for lands under intensive agricultural use.

Article 5.43. Definitions

For purposes of Articles 5.42 to 5.50 of this Title, the following terms and phrases shall have the meaning stated below:

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(a) Secretary of Agriculture -Shall mean the Secretary of the Department of Agriculture of the Commonwealth of Puerto Rico.

(b) Land under intensive agricultural use -Shall mean land specified in Articles 5.42 to 5.50 of this Title during the year that crops are cultivated using the technical recommendations promulgated for each crop.

(c) Farmer -Shall mean that individual or legal entity who operates one or more agricultural farms for profit.

(d) Single crop farm -Shall mean that specific area where only one product is sowed and cultivated.

(e) Netting -Shall mean interwoven thread devices used for the harvesting of coffee in the coffee plantation.

(f) Starch -Shall mean any of the following products: sweet potatoes, bananas, yams, plantains, tanniers, cassava, celery, and any others within that classification, which the Secretary of Agriculture has an interest in fostering.

(g) Fruit -Shall mean avocados, citrus fruits, mangos, and any others within that classification, which the Secretary of Agriculture has an interest in fostering.

(h) Vegetables -Shall mean pumpkins, peppers, cabbages, tomatoes, and any others within this classification, which the Secretary of Agriculture has an interest in fostering.

Article  5.44. —Limits to number of *cuerdas*

The following shall be exempt from taxation for the term established by Article 5.45 of this Title: any land up to a combined total of two hundred (200) *cuerdas* owned under any legal category, dedicated by a farmer to the cultivation of coffee planted under the sun, to be harvested with nets; to the cultivation of coffee in the shade under intensive management in accordance with the recommendations of the Department of Agriculture; tobacco; starches; fruit; vegetables; pigeon peas; rice, and sugar cane. The minimum and maximum limits of the land dedicated to each crop entitled to the exemption granted by Articles 5.42 to 5.50 of this Title, are established as follows:

Limit in *cuerdas*

| Crop | Minimum | Maximum |
|---|---|---|
| Coffee under the sun | 1 | 40 |
| Coffee under the shade | 1 | 40 |
| Tobacco | 0.5 | 10 |
| Sweet Potatoes | 0.5 | 20 |
| Bananas | 0.5 | 25 |
| Yams | 0.5 | 10 |
| Plantains | 0.5 | 40 |
| | | |
| Tanniers | 0.5 | 10 |
| Cassava | 0.5 | 10 |
| Other Starches | 0.5 | 10 |
| Avocados | 1 | 50 |
| Citrus | 1 | 50 |
| Mangos | 1 | 50 |
| Other fruit trees | 1 | 50 |
| Pumpkins | 1 | 20 |
| Peppers | 0.5 | 20 |
| Cabbages | 0.5 | 10 |
| Tomatoes | 0.5 | 50 |
| Other vegetables | 0.5 | 50 |
| Pigeon peas | 1 | 50 |

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
 *By Targem Translations Inc.*

| | | |
|---|---|---|
| Rice | 10 | 200 |
| Sugar Cane | 10 | 200 |

The total area to which tax exemption shall be granted under the provisions of Articles 5.42 to 5.50 of this Title shall not exceed 130,000 *cuerdas*.

Article 5.45. Duration of Exemption

The duration of the exemption granted under this title is limited from the time of planting and according to the qualifying number of *cuerdas*, pursuant to Article 5.44 of this title, as provided below:

| | |
|---|---|
| A. Fruit | 25 years |
| B. Coffee | 15 years |
| C. Starches | 15 years |
| D. Vegetables | 15 years |
| E. Pigeon Peas | 15 years |
| F. Tobacco | 15 years |
| G. Rice | 10 years |
| H. Sugar Cane | 15 years |

The exemption shall be granted for the area dedicated to cultivating sugar cane annually for a period that shall not exceed fifteen (15) years. In order to be entitled to the exemption, the producers must renew no less than ten percent (10%) of the crops annually.

Article 5.46. Renewal of Exemption, Requirements; Department of Agriculture Regulations and Recommendations

Although granted for a number of years, the exemption bestowed by Articles 5.42 to 5.50 of this Title shall be renewable every year after an inspection and a certification to the effect that the practices decreed for said purpose by the Department of Agriculture are still being followed. In order to qualify for the property tax exemption, the area in question shall be planted and cultivated following the recommendations and regulations of the Department of Agriculture.

Article 5.47. Official Form Filing; Compliance with Requirements

The right to the tax exemption granted by Articles 5.42 to 5.50 of this Title must be exercised by filing the official form provided by the Collections Center for that purpose at the Department of Agriculture. It shall be an indispensable requirement for granting the annual tax exemption established herein, that the Secretary of Agriculture certify on that form that the applicant meets all the requirements established by the Department of Agriculture by regulations and that he/she is a "bona fide" farmer pursuant to the regulatory provisions adopted by the Secretary of Agriculture for such purpose.

The exemption granted herein shall be applied on or before December 31 of the calendar year in which the crop was planted. Said planting shall be certified by the Secretary of Agriculture as meeting all the requirements established by said Department. The exemption shall be in effect as of the first of January prior to the date in which said application was filed. The exemption granted herein shall cease upon noncompliance with the provisions of Articles 5.42 to 5.50 of this Title or the requirements established by the Department of Agriculture through regulations; and the land shall begin to be taxed in the calendar year in which the conditions and requirements necessary for the enjoyment of said exemption cease to exist.

When the crop is abandoned or when the land exempted for intensive agricultural use is segregated or urbanized, the corresponding taxes shall be collected from the date the use for which the right to exemption was granted.

Article 5.48. Regulations

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

The Secretary of Agriculture is hereby empowered to establish through regulations the requirements every applicant must meet and the norms to comply with in order to continue receiving an exemption under Articles 5.42 to 5.50 of this Title.

Article 5.49. Coordination between the Secretary of Agriculture and the Collections Center

The Secretary of Agriculture shall coordinate the implementation of Articles 5.42 to 5.50 of this Title with the Collections Center and establish the mechanisms needed to process the farmers' applications, the inspection of farms, the evaluation of crops, and the certification stating that the granting or the denial of the exemption established herein is in order.

Article 5.50. Compensation to Municipalities

The Secretary of the Treasury is hereby authorized to compensate the municipalities for the total taxes not collected by virtue of Articles 5.42 to 5.50 of this Title, chargeable to the General Fund of the Commonwealth Treasury. Commencing with fiscal year 1992-93 and for subsequent years, the amount to be transferred to the Collections Center shall not exceed the total transferred in fiscal year 1991-92.

TITLE VI

SYSTEM OF SELF-DETERMINATION AS TO THE PERSONAL PROPERTY TAX

Article 6.01. Establishment

A system of self-determination as to personal property tax is hereby established and provisions are made for the judicial and administrative procedures as indicated hereinbelow.

Article 6.02. Definitions

(a) Taxpayer - Means every individual or legal entity subject to taxation by law.

(b) Deficiency

    (1) Means the amount by which the property tax levied by law surpasses the excess of:

        (a) The sum of: (i) The amount declared as taxes by the taxpayer in his/her tax return, if he/she filed a tax return and declared in the same any amount as tax, plus (ii) the previously appraised amounts or those collected without an appraisal, as a deficiency, over

        (b) the total reductions made as defined in Subsection (2)(b) of this Article.

    (2) Rules for the application of clause (1)

        For purposes of this Subsection:

        (a) The tax imposed by law and the tax declared on the tax return shall both be determined without considering excess payments credited pursuant to Subsection (d) of Article 6.05 of this Title.

        (b) The term "reduction" means that part of a reduction, credit, reimbursement, or other refund made because the tax imposed by law was less than the excess of the amount specified in clause (1)(A) of this Subsection over the total of previously made reductions.

        (c) Appraised - When used in relation to the tax pending levy and notification, means the personal property tax that must be set for collection by the Collections Center.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(d) Valuation - Means the total value of the personal property to be taxed.

(e) Market value - Means the price that a person wishing to purchase would be willing to pay for a property to another wishing to sell, both acting with complete freedom and with full knowledge of all the factors subject to valuation, if same should be put up for sale in a free market. For merchandise for sale during the regular course of business of a merchant, trader or manufacturer, market value means what is provided by Article 3.16 of this title. The market value of property includes, among others, the excise taxes paid or pledged, freights, transport and insurance.

(f) Appraised value - Means the value the taxpayer and/or the Collections Center has assigned to the personal property by the first of January of each year.

(g) Book value - Means the acquisition or production cost of the personal property adjusted for depreciation, obsolescence, and other factors as reflected in the accounting books pursuant to generally accepted accounting principles.

(h) Business Volume -The term business volume means the gross income received or earned for rendering any service, for the sale of any goods, or for any other business activity.

Article 6.03. Income Tax Return on Personal Property

(a) Persons subject to payment of personal property taxes. Any individual or legal entity engaged in an industry or business who, by the first of January of each year, is the owner of personal chattels used in his/her industry or business even though it may be leased to another person, or is held by him/her in a fiduciary capacity, will be subject to the personal property tax levied by law and shall annually submit an income tax return on personal property to the Collections Center, on the tax return form provided by said Center for such a purpose. When the owner of the property is domiciled outside Puerto Rico, or cannot be located or identified, this responsibility shall rest on the person who holds said personal chattels. Said return shall be filed under penalty of perjury. For corporations, the return must be sworn by the president, vice-president or any other principal officer and by the treasurer or deputy treasurer and for a partnership, by a managing partner.

(b) Persons not subject to payment of taxes. Individuals, partnerships or associations that, as of January 1 of each year, own, or have under their exclusive control tax exempt property as listed in Articles 5.01 and 5.40 of this title shall not be subject to taxation nor will they be required to file a tax return on personal property, provided that those individual or legal entities who, as of January 1 of each year, own, or have under their control tax exempt or exonerated property as established by this Act, as well as property subject to taxation, shall be required to file the tax return on personal property which shall include the exempt and exonerated property as well as that property which is subject to taxes.

(c) Revised tax returns and tax returns accompanied by financial statements audited by certified public accountants

Every corporation, except for nonprofit corporations and without capital stock, and/or for profit corporations whose volume of business does not exceed one million dollars ($1,000,000) a year, must submit their tax return revised by a certified public accountant licensed by the Commonwealth of Puerto Rico accompanied by financial statements (balance sheet, income and expense statement, cash flow statement and the corresponding notations to the financial statements) corresponding to the corporation's last year of operations. Said financial statements shall be prepared in accordance with generally accepted accounting principles and duly audited by a certified public accountant licensed by the Commonwealth of Puerto Rico who is not a shareholder or employee of the corporation, or by a Certified Public Accounting company authorized by the Puerto Rico Accounting Board to practice public accounting in Puerto Rico and accompanied by the corresponding opinion of said certified public accountant or company, and any other information that may be required by the Collections Center. When the financial statements are not dated as of the immediately preceding December 31, the return must be accompanied by a trial balance as of January 1, with a report from an accountant in which, in good faith, he or she affirms that he or she agrees with the business's

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

accounting books. For foreign corporations doing business in Puerto Rico, the financial statements and the trial balance referred to in this paragraph shall show only the financial condition of the corporation in Puerto Rico.

A list of the names and mailing addresses of all directors and officers of the corporation and the dates on which the term of their respective offices expires must be attached to the return.

(d) The Collections Center shall annually indicate, as part of the instructions on the tax return to be filed, the corresponding total percentages of Commonwealth or municipal property taxes.

Article 6.04. Valuation and Tax Calculation

Any person obligated to file a tax return on personal property shall include in it all of his/her taxable personal property according to the law and shall calculate the tax on the basis of its book value as of the 1st of January of each fiscal year for which the tax is calculated. When the book value of the personal property is minimal, as established by regulations, the same shall be appraised for its estimated residual value. Said residual value shall vary between ten percent (10%) and twenty percent (20%) of the original cost of the property.

Notwithstanding the foregoing, if the book value of the personal property does not reasonably reflect its market value, the same shall be appraised at its market value.

Article 6.05. Tax Return and Tax Payment Filing Dates; Excess Payments; Ex Officio Tax Return

(a) Tax return or extension filing dates, and tax payment date

The personal property tax return or the extension must be filed at the Collections Center with the full payment on or before May 15th of each year. In the event that full payment of the self-determined tax is received on or before May 15th, the taxpayer shall be entitled to a five percent (5%) discount on the self-determined tax.

(b) Automatic extension - Taxpayers shall be granted an automatic extension for filing the tax returns, provided they comply with the rules and regulations prescribed by the Collections Center for granting said extension. For taxpayers other than corporations, the automatic extension shall be granted for a period of thirty (30) days from the date prescribed by law for filing the tax return. Corporations shall be entitled to an automatic extension of ninety (90) days from the date prescribed by law for filing.

(c) Additional extension - For taxpayers other than corporations, the Governing Board of the Collections Center may grant a reasonable extension under the rules and regulations prescribed by it, for filing the return in addition to the automatic extension. This additional extension shall not exceed sixty (60) days, except for individuals who are outside the country, in which case the additional extension shall not exceed one hundred and fifty (150) days.

(d) Excess payments - In those cases in which the taxpayer makes a payment in excess of the tax levied by this Title, the Collections Center is authorized to credit the amount of such a payment against the pending real property tax. Should the taxpayer not owe any real property tax, the Collections Center may reimburse the remainder or credit it against the tax payable the following year, at the taxpayer's option.

(e) Ex officio tax return - If any person required to file a personal property tax return fails to file the same on the date prescribed by this Act, the Collections Center shall prepare the return form on the basis of such information as it may be able to obtain through an investigation. Any return thus made and signed by the Collections Center or by any official or employee on whom it delegates shall be prima facie correct and sufficient for all legal purposes.

Article 6.06. Deficiencies, Notice; Administrative and Judicial Recourse

(a) The Collections Center may assess and determine the correct amount of taxes at any time after the personal property tax return has been filed, regardless of whether the tax has been paid or not.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(b) Should the Collections Center determine, for any given taxpayer, that there is a deficiency regarding the tax under this title, whether it was because the taxable value of the property was determined incorrectly, or because property has been omitted, or for any other reason, the Collections Center shall notify the taxpayer of said deficiency by certified mail. The taxpayer may request a reconsideration of said deficiency and an administrative hearing within thirty (30) days following the mailing date of the notice. Should the taxpayer not request reconsideration in the manner and within the term provided herein, or if, after having made the request, the notified deficiency is confirmed in whole or in part, the Collections Center shall notify the taxpayer of its final decision by certified mail, whatever the case may be, stating the total of the bond the taxpayer must present in favor thereof, before and subject to the approval of the Collections Center, should he/she wish to appeal to the Superior Court against said determination of deficiency. The bond shall not exceed the total of the notified deficiency plus interest thereon calculated for the period of one (1) additional year at ten percent (10%) per annum.

(c) Should the taxpayer not agree with the final determination of deficiency served by the Collections Center, he/she may appeal to the Superior Court within the term of thirty (30) days from the mailing date of the Collections Center's final determination, provided said taxpayer:

   (1) Pays said deficiency under oath; or

   (2) Pays the part of the deficiency with which he/she is in agreement, and posts a bond for the amount with which he/she is not in agreement plus interest for one additional year on the unpaid difference at the rate of ten percent (10%) per annum; or

   (3) Posts a bond for the total amount of the deficiency should he/she disagree with said total amount, plus interest thereon for one additional year at the rate of ten percent (10%) per annum, and

   (4) In any of the above cases, the bond shall be posted in favor of the Collections Center, before it and subject to its approval.

(d) Should the taxpayer not file suit before the Superior Court against a final determination of deficiency, it will be appraised and paid through notice and requirement of the Collections Center or its representative.

(e) If the taxpayer files suit before the Superior Court against a final determination of deficiency served as set forth in this Article, the final judgments of the Superior Court may be appealed in the manner and within the terms provided by law to appeal the final judgments of the Superior Court before the Supreme Court, also subject to the additional requirements imposed by Article 6.07 of this title. In those cases in which the judgment of the Superior Court determines that a deficiency does exist, an order for filing a calculation of the tax will be issued and said judgment shall not be deemed final and the term for an appeal shall not begin to count for the parties, but from the date the notice to the taxpayer and to the Collections Center concerning the Superior Court's ruling approving the calculation of the tax determined by said court is filed in the record.

(f) No appraisal of a deficiency concerning to the tax levied by law shall be made, nor shall a legal collection procedure or a court procedure for its collection be initiated before the notice of the final determination mentioned in this Article has been sent to the taxpayer, nor until the term granted the taxpayer by this title to appeal before the Superior Court against said final determination has expired, and if an appeal has been filed before the Superior Court, until the judgement of that court is final.

(g) The taxpayer shall be entitled at any time to waive the restrictions concerning the appraisal and collection of the total or of any part of the deficiency, through a written notice filed with the Collections Center as provided in this Article.

Article 6.07. Collection after appeal before the Superior Court

(a) General rule - If a taxpayer files an appeal before the Superior Court against a final determination of deficiency and said court issues a judgment declaring it has no jurisdiction to hear the matter or to determine that a deficiency

44

does exist, the deficiency determined by the court, as the case may be, shall be appraised once the judgment is firm and final, and it shall be paid through notice and requirement of the Collections Center or its representative. No part of the amount determined as a deficiency by the Collections Center, but refused as such by a final and firm judgment of the Superior Court, shall be appraised or collected through a legal collection procedure or through a court procedure, with or without an appraisal.

(b) In case of appeal - When a taxpayer appeals the judgement of the Superior Court determining a deficiency, he/she shall be required to pay the total deficiency so determined within the term for an appeal, and noncompliance with said payment requirement, except as provided below in Subsections (c) and (d) of this Article, shall deprive the Supreme Court of the power to take cognizance of the appeal on its merits. Should the Supreme Court resolve that the deficiency determined by the Superior Court or part thereof does not exist, and the taxpayer has paid said deficiency partially or totally upon appeal, the Collections Center shall proceed to reimburse the proper amount, charged to any of its available funds, pursuant to the Supreme Court judgment, plus the annual interest provided by law on the total to be reimbursed calculated from the date of payment. Should the Collections Center appeal the judgment of the Superior Court determining that no deficiency exists in whole or in part, or if the taxpayer has appealed without having paid the total tax, in any of these cases in which the Supreme Court judgment is favorable to the Collections Center, the deficiency determined on appeal or the unpaid part thereof shall be appraised and shall be paid through notice and requirement of the Collections Center.

(c) For a taxpayer who has appealed the Superior Court's finding of a deficiency and who cannot comply with the requirement of paying the deficiency, or can only pay part of the deficiency, the Superior Court may direct that the appeal follow its course until a final disposition of the same on its merits has been reached without the total payment of said deficiency; provided that the appeal involves a substantial matter, and subject to that which is provided below. In such a case, the taxpayer shall file in the Superior Court a sworn petition together with his writ of appeal stating the reasons why he/she cannot pay the deficiency in whole or in part, and the grounds for the basis of the allegation that the appeal involves a substantial matter. Should the Superior Court determine that the taxpayer cannot pay the deficiency, or can only pay a part thereof, and that the appeal involves a substantial matter, it shall direct, in lieu of the total payment, as the case may be: (i) that the appeal follow its course under the bond posted in order to resort to the Superior Court should it be sufficient to answer for the deficiency which is definitely determined and for the interest thereof; or (ii) that the taxpayer post a new bond to the satisfaction of the Court in an amount sufficient to answer for the deficiency and the interest thereof for a reasonable period; or (iii) that the taxpayer pay part of the deficiency and secure the unpaid portion in any manner previously provided in clauses (i) and (ii).

(d) Should the Superior Court determine that the taxpayer is able to pay the deficiency, or part thereof, or that he/she must post a bond, the taxpayer shall proceed with the payment of the deficiency, or the determined part thereof, or post the bond within the term of thirty (30) days from the date the resolution of the Superior Court to that effect was served, and the payment of the deficiency, or of the determined part, or the posting of the bond within said term, will perfect the appeal for all legal purposes. Should the taxpayer not pay within the said thirty (30)-day term, nor not post the required bond, the Supreme Court will not have the power to hear the appeal on its merits and same will be dismissed. The resolutions of the Superior Court dictated under the provisions of Subsections (c) and (d) of this Article shall not be appealable, although any party may request through a writ of certiorari that the Supreme Court review same within ten (10) days from the date of notice of any such rulings.

Article 6.08. Superior Court Jurisdiction to Increase It; Additional Amounts or Additions to the Tax

The Superior Court shall have the power to redetermine the correct amount of the deficiency even though the amount thus determined is greater than the total deficiency notified by the Collections Center in the form provided by Articles 6.06 of this Title, and to determine if any additional amounts should be levied or added to the tax, provided the Collections Center or its representative files a claim to that effect at any time prior to sentencing.

Article 6.09. Additional Deficiencies

If the Collections Center has sent a notice of deficiency to the taxpayer by certified mail as provided by Articles 6.06 of this Title, and the taxpayer has resorted to the Superior Court within the term and, as set forth, the Collections Center shall not be entitled to determine any additional deficiency regarding the same taxable year, except in cases

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
 *By Targem Translations Inc.*

of fraud, and except as provided by Article 6.08 of this Title (concerning the power of the Superior Court to determine deficiencies).

Article 6.10. Mathematical Error

Should the taxpayer be notified that due to an mathematical error which appears on the tax return, he/she owes taxes in excess of what was declared on the tax return, and that an appraisal of the tax based on what should have been the correct total of the tax, had it not been for the mathematical error, has been made or will be made, such notification shall not be considered as a notification of deficiency for purposes of this Article or Articles 6.06 of this Title, and the taxpayer shall not be entitled to file suit before the Superior Court against said notice, nor will such an appraisal or collection be prohibited by the aforementioned provisions.

Article 6.11. Payment Extensions

When it is shown to the satisfaction of the Collections Center that the payment of said deficiency on the date prescribed for it will be unduly onerous for the taxpayer, the Collections Center may grant an extension for the payment of the deficiency for a period that shall not exceed eighteen (18) months, and in exceptional cases, for an additional period that shall not exceed twelve (12) months. Should an extension be granted, the Collections Center may require the taxpayer to post a bond for that amount which is not greater than double the amount of the deficiency and with such sureties as the Collections Center may deem necessary to assure payment of the deficiency according to the terms of the extension. Interest at ten percent (10%) shall be collected in every extension granted by this Article. No extension whatsoever shall be granted if the deficiency is due to negligence, intentional contempt of the rules and regulations, or fraud with intent to avoid the tax.

Article 6.12. Address for Service of Notices

In the absence of a notice to the Collections Center regarding the existence of a fiduciary relationship, the notice of a deficiency with respect to the tax levied by this Title will suffice if it has been sent to the taxpayer by mail to his/her last known address even when said taxpayer is deceased or is legally incompetent or, for a partnership, even when it no longer exists.

Article 6.13. Service of Summons and Subpoenas

The summons and subpoenas issued by the Collections Center through any of its officials, employees or authorized representatives under the provisions of this Title, to appear, testify or produce books, papers or evidence, shall be served pursuant to the provisions of Act No. 27 of March 20, 1951.

Article 6.14. Appraisal; Taxes in Jeopardy

(a) Should the Collections Center at any time believe that the collection of the tax levied by this title will be compromised by a delay or find that the taxpayer intends to remove his/her properties from the jurisdiction of the Commonwealth of Puerto Rico, or conceal his properties in Puerto Rico, or perform any other act which tends to impair or partially or totally annul the collection of the taxes corresponding to any year, it will proceed to immediately appraise the taxes and deficiencies and notify and demand payment thereof along with all interest, penalties, additional amounts, and additions to the tax provided by this Title, regardless of the provisions in Subsection (f) of Articles 6.06 of this Title.

(b) Bond to suspend collection - When a tax or deficiency is appraised pursuant to Subsection (a) of this Article, within ten (10) days following the notice and requirement for the payment thereof by the Collections Center, the taxpayer may obtain the suspension of the collection of all or any part of the total appraised herein by posting a bond with the Collections Center, for that amount (not greater than the amount with regard to which the suspension of the collection has been requested plus interest thereon calculated for the term of one additional year at ten percent (10%) per annum) and with such surety as the Collections Center may deem necessary. Said bond shall be liable for the payment of that part of the total, the collection of which has been thereby suspended, and which is not reduced:
(i) by a final determination of the Collections Center regarding the deficiency should the taxpayer not appeal said

Certified to be a correct and true translation from the source text in Spanish to the target language English.
13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

final determination before the Superior Court, or, if having appealed, the Court pronounces judgment declaring itself without the power to consider the matter once the judgment is final, or (ii) through a final judgment of the Superior Court on its merits.

(c) Bond under Article 6.06 -When an appeal is made to the Superior Court against the final determination of the Collections Center concerning a deficiency appraised according to Subsection (a) of this Article, the taxpayer shall not have to post the bond required by Subsections (b) and (c) of Articles 6.06 of this Title, if in the judgement of the Collections Center or of the Court the bond posted under Subsection (b) of this Article secures the litigated tax until complete payment is made thereof.

(d) Deficiency determined by the Superior Court - Should an appeal be made to the Superior Court against the final determination of the Collections Center about a deficiency appraised under Subsection (a) of this Article, then, as soon as the amount that should have been appraised is determined by the final judgment of the court, any unpaid amount, the collection of which has been suspended by the bond, shall be collected through a notice and requirement of the Collections Center and any remainder of the appraisal shall be cancelled. Should the total already collected exceed the amount determined as that amount which should have been appraised, said excess shall be credited or reimbursed to the taxpayer as provided in Subsection (d) of Article 6.05 of this Title without having to file a claim for such an excess.

(e) In case of appeal -The applicable provisions of Article 6.07 of this Title shall govern in case the taxpayer should appeal the judgment of the Superior Court on the merits of a deficiency which has been appraised under Subsection (a) of this Article.

(f) In the absence of an appeal - Should the taxpayer not file suit before the Superior Court against the final determination of the Collections Center on a deficiency appraised under Subsection (a) of this Article, any unpaid amount the collection of which has been suspended by the bond must be paid through notice and requirement of the Collections Center together with interest at ten percent (10%) per annum calculated from the date of the appraisal made under Subsection (a) of this Article until the date of the notice and requirement made under this Subsection.

(g) Claims for reductions - No claim for reduction shall be presented with respect to any appraisal related to the taxes levied by law.

Article 6.15. Prior to Notice of Deficiency

Should an appraisal under Article 6.14 of this Title be made before the taxpayer has been notified under Articles 6.06 of this Title of any determination with respect to the deficiency which said appraisal refers to, the Collections Center shall notify the taxpayer of said deficiency, pursuant and subject to the provisions of Articles 6.06 of this Title, within thirty (30) days following the date of its appraisal.

Article 6.16. Scope and Total

(a) Appraisal after notice of deficiency - An appraisal under Article 6.14 of this title made after the taxpayer has been notified of the deficiency subject to such appraisal, pursuant to the provisions of Article 6.14 above, will in no way affect the procedure established in Articles 6.06 of this Title, nor shall it deprive the taxpayer of the resources provided therein with respect to said deficiency. When the appraisal is made after an administrative hearing concerning the deficiency subject to such an appraisal has been held, but prior to the Collections Center's notice of its final decision, it shall notify the taxpayer as to said final determination within thirty (30) days following the date of said appraisal. Furthermore, when the appraisal of a deficiency under Article 6.14 of this title is made after sentencing by the Superior Court on the merits of said deficiency, the appraisal may only be made with respect to the amount of the deficiency determined by the judgment of the Court.

(b) Amount to be appraised prior to the Superior Court's ruling

The appraisal referred to in Article 6.14 of this Title may be made with respect to a larger or smaller deficiency than that which has been notified to the taxpayer under Articles 6.06 of this Title, without considering the provisions of

47

Article 6.09 of this Title, which prohibit the determination of additional deficiencies, or whether an appeal has or has not been filed before the Superior Court with regard to the notified decision. The Collections Center or its representative may reduce such an appraisal or any unpaid part thereof to the limit to which it considers the total amount of the appraisal to be excessive, at any time before the decision of said court is issued. The Collections Center shall notify the Superior Court of the amount of said appraisal or reduction should the appeal be filed before said court prior to the appraisal or subsequently filed, and the court shall have jurisdiction to redetermine the total amount of the deficiency and of all the amounts appraised at the same time with regard thereto.

Article 6.17. Bankruptcies and Receiverships

(a) Immediate appraisal - When any taxpayer is adjudicated as bankrupt in any bankruptcy procedure or when a trustee is appointed for any taxpayer in any judicial procedure, any personal property taxes pending payment (together with interest, penalties, additional amounts and additions to the tax provided by this Title), as well as any deficiency established by the Collections Center regarding to the tax levied by this title on said taxpayer, will be appraised immediately if the deficiency had not been appraised until then pursuant to the law. In those cases the trustee shall notify the Collections Center of the adjudication of bankruptcy or of the receivership, and the term of prescription for the appraisal shall be suspended for the period comprising the date of adjudication of bankruptcy or from the beginning of the receivership for up to thirty (30) days after the trustee's notice has been received by the Collections Center; but the suspension under this provision shall in no case whatsoever be for a period greater than two (2) years. The claims for the deficiency and for said interest, additional amounts or additions to the tax may be presented, to be decided pursuant to the law, to the court before which the bankruptcy or receivership procedure is pending, regardless of whether the procedures pertaining to any appraised deficiency are pending before the Superior Court.

(b) Unpaid claims; extension for payment and interest - Any tax approved in a bankruptcy or receivership procedure that was not paid by the taxpayer may be collected through legal collection proceedings and attachment, within a period of five (5) years after the termination of said bankruptcy or receivership procedure. An extension for the payment of said taxes may be granted by the Collections Center upon demonstration, to its satisfaction, that the payment thereof by the date prescribed for such payment will place an undue burden on the taxpayer. Such extension shall not exceed eighteen (18) months, and in exceptional cases shall be granted for an additional period that shall not exceed twelve (12) months. Should an extension be granted, the Collections Center may require that the taxpayer post a bond for an amount no greater than double the amount of the deficiency with those guarantors deemed necessary by the Collections Center to secure payment of the deficiency according to the terms of the extension. No extension whatsoever shall be granted if the deficiency is due to negligence, to willful disregard for the rules and regulations, or to fraud with the intent to evade taxes. Interest shall be collected at a rate of ten percent (10%) per annum on the amount of the extended tax. If the amount of the extended tax is not paid according to the terms of the extension, interest shall be collected on the unpaid amount at the rate of ten percent (10%) per annum, as part of the tax for the period from the date established by the terms of the extension until the same is paid.

Article 6.18. Prescription - Term for Appraisal and Collection

The Collections Center shall have a term of four (4) years, from the date the [taxpayer] filed his/her tax return, to review the personal property tax return, the valuation of the properties, the tax calculation made by the taxpayer, and to determine the correct tax to be paid, and no court procedure for the collection of said taxes shall commence after said period has expired, provided that, for purpose of this Article, a tax return filed prior to the last day prescribed by this Title for filing the same shall be deemed as filed on the last day.

Article 6.19. Prescription - Exceptions

(a) Omission of assets - In case [assets] valued at twenty five percent (25%) or more of the taxable value were omitted in the tax return, the tax may be appraised by the Collections Center, or a court procedure may be commenced for the collection of said tax without an appraisal, within a period of six (6) years after the tax return was filed.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(b) Fraud or lack of a return - In case a false or fraudulent return is filed with the intention of evading taxes, or in case the return is not filed, the tax may be appraised by the Collections Center, or a court procedure for the collection of said tax without an appraisal may be commenced at any time.

(c) Waiver - When prior to the expiration of the statute of limitations established in Article 6.18 of this title or Subsection (a) of this Article for the revision of the personal property tax return, the valuation of the properties, the tax calculation made by the taxpayer, and for the collection of said tax, the Collections Center and the taxpayer have agreed in writing to appraise the personal property and the tax after such a period, the tax may be appraised at any time prior to the expiration of the term agreed to. The term thus agreed to may be extended by successive written agreements made prior to the expiration of the term previously agreed to.

(d) Collection after appraisal -When the appraisal of the personal property and the tax levied by this title has been made by the Collections Center within the proper prescription term for the same, said tax may be collected through legal proceedings for collection in court, provided they commence:

(1) Within seven (7) years after the tax appraisal, or

(2) prior to the expiration of any term for said collection agreed to in writing by the Collections Center and the taxpayer before said seven (7)-year term has expired. The term thus agreed to may be extended by successive agreements made prior to the expiration of the term previously agreed upon.

Article 6.20. Prescription - Stay of Proceedings

The statute of limitations for the appraisal by the Collections Center and for the beginning of a legal collection procedure or of a court procedure for the collection of any deficiency, shall be stayed for the period during which the Collections Center is estopped from making the appraisal or from beginning the legal collection procedure or the court procedure (and in every case, if there is an appeal to the Superior Court until the decision of the court is final) and for the sixty (60) days after the notice of the final deficiency determination is sent by certified mail as provided in Articles 6.06 of this Title.

Article 6.21. Interest, Surcharges, Additions, and Tax Penalties

When a taxpayer fails to pay the personal property tax levied by law within the term established in this Title, the following interest, surcharges and additions to the tax shall be imposed, in addition to and as part of the unpaid tax:

  (a)   Declared Tax

      (1) General rule - When the amount determined by the taxpayer to be the tax levied by this title or any part thereof is not paid on or before the date prescribed for its payment, the interest on the unpaid amount shall be collected as part of the tax at the rate of ten percent (10%) per annum from the date prescribed for its payment until the tax is paid.

      (2) If an extension is granted - When an extension is granted to pay the amount thus determined by the taxpayer to be the tax and the amount whose payment date has been extended, and the interest thereon as determined under Article 6.11 of this Title have not been fully paid before the expiration of the term of the extension, then, in lieu of the interest provided in clause (1) of this Subsection, interest shall be collected at a rate of ten percent (10%) per annum on the unpaid amount from the date of expiration of the extension until the same is paid.

  (b) Interest on deficiencies

      (1) General rule -Interest on the amount determined to be a deficiency will be appraised at the same time as the deficiency and shall be paid through notice and requirement of the Collections Center and collected as part of the tax at the rate of ten percent (10%) per annum, from the date prescribed for the payment of the tax until the date the deficiency is appraised. For a waiver of the restrictions on the appraisal and

49

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*  By Targem Translations Inc.*

collection of the deficiency under Articles 6.06 of this Title, said interest shall be appraised, paid, and collected for up to the thirtieth (30th) day following the date said waiver is filed or until the day the deficiency is appraised, whichever comes first. If any portion of the appraised deficiency is not to be collected because of a prior tax payment, the proper adjustment shall be made with respect to the interest on that portion.

(2) Unpaid deficiencies - When a deficiency or any interest or additional amounts appraised concerning the same, or any addition to the tax under this Article are not paid in full within ten (10) days following service of notice and requirement from the Collections Center, interest on the unpaid amount shall be collected as part of the tax at a rate of ten percent (10%) per annum, from the date of such a notice and requirement until the same is paid.

(c) Additional surcharge - Whenever interest is to be added appropriately pursuant to Subsection (a) and Subsection (b)(2) of this Article, the following surcharges shall also be collected as part of the tax and in the same manner as the interest is collected:

(1) For a delay in payment of thirty (30) days or less there will be no surcharge;

(2) for a delay in payment in excess of thirty (30) days but not in excess of sixty (60) days, five percent (5%) of the unpaid amount; or

(3) for a delay in payment in excess of sixty (60) days, but not in excess of ninety (90) days, ten percent (10%) of the unpaid amount, or

(4) for a delay in payment in excess of ninety (90) days, fifteen percent (15%) of the unpaid amount.

This Subsection shall not apply in cases in which a tax payment extension has been granted and its terms have been complied with.

(d) Failure to file tax returns; additions - In the event the required tax return is not filed within the term prescribed by Article 6.05 of this title and unless it is shown to the satisfaction of the Collections Center that such omission was due to a reasonable cause beyond the control of the taxpayer and not to the willful carelessness of the taxpayer, there shall be added to the tax:

(1) Five percent (5%) if the omission is for not more than thirty (30) days, and

(2) an additional five percent (5%) for each period or fraction of an additional thirty (30)-day period while the omission persists, without exceeding a total of twenty-five percent (25%).

The amount thus added to any tax will be collected at the same time, in the same form and as part of the tax, unless it has been paid prior to the discovery of the omission, in which case the amount thus added will be collected in the same manner as the tax.

(e) Penalty for negligence - Should any part of any deficiency be due to negligence or intentional disregard of the rules and regulations but without intent to defraud, ten percent (10%) of the total amount (in addition to said deficiency) shall be appraised, collected and paid in the same way as if it were a deficiency together with the corresponding interest.

(f) Penalty for fraud - Should the failure to file the tax return, or filing a false or fraudulent one, be due to fraud with intent to evade the tax, one hundred percent (100%) of said amount shall be added to the amount of the deficiency appraised by the Collections Center.

Article 6.22. Publication of Tax Returns; Public Documents and Inspection – In general

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(a) Tax returns filed under this Title on which the tax has been revised or determined by the Collections Center shall constitute public documents; however, they shall not be subject to inspection, except as provided below.

(b) Tax returns shall be subject to inspection only by regulatory provision of the Governing Board of the Collection Center after showing just cause therefor.

(c) The Governing Board of the Collections Center shall prescribe the regulatory provisions under which the inspection of the tax returns may be carried out.

(d) Whenever a tax return is subject to inspection by any person, a certified copy of the same will be issued to said person, upon their request, under the rules and regulations prescribed by the Governing Board of the Collections Center which will establish a reasonable fee to furnish said copy.

Article 6.23. Tax Return Review at the Request of Shareholders

All bona fide registered shareholders who own one percent (1%) percent or more of the shares issued by any corporation shall be allowed to examine the personal property tax returns of said corporation and its subsidiaries when requested of the Collections Center.

Article 6.24. Information Requested by Legislative Committees

(a) By request of the Committee on Finance of the House of Representatives, of the Committee on Finance of the Senate, of a Select Committee of the Senate or the House of Representatives especially authorized to inspect tax returns by a Senate or House Resolution, or of a Joint Committee thus authorized by a Concurrent Resolution, the Collections Center shall provide said Committee while in executive session with any information of any nature included or stated in any tax return.

(b) Any of these committees acting directly as a committee, or through those investigators appointed or designated thereby, shall be entitled to inspect any or all tax returns on those occasions and in the manner it so determines.

(c) Any information thus obtained by the Committee may be submitted to the Senate or to the House of Representatives, as the case may be.

Article 6.25. Taxpayer Lists at the Internal Revenue Collections Centers

The Collections Center shall have lists prepared and be made available, annually, for public inspection, in the manner determined by it, at the Internal Revenue Collections Centers of each municipality and at any other location provided by it, containing the name and mailing address of each person who has filed a personal property tax return in that municipality and the amount of the tax declared.

Article 6.26. Publication of Tax returns - Information Requested by Municipal Treasurers

At the request of the municipal treasurers, the Collections Center shall provide them with that information in the tax returns filed under this title necessary to determine the license fee applicable to a merchant, the imposition and collection of which is authorized by Act No. 113 of July 10, 1974, known, as the "Municipal License Act."

Article 6.27. Disclosure of Information

It shall be illegal for any collector, agent, inspector or other official or employee of the Collections Center or its authorized representative, to disclose or make known information or data stated or revealed in the personal property tax return in prejudice of the taxpayer's best interests, or provide any tax return or copy thereof, or a volume including a summary or details of said tax return, without being authorized by the Collections Center, except as provided in this Title. It shall be illegal for any person to print or publish in any form not provided by law, a tax return, or any part thereof or any information, data or matters contained in it.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Any collector, agent, inspector or other official or employee of the Collections Center or its authorized representative who violates the preceding provisions shall incur a felony, and upon conviction, shall face a fine of five thousand dollars ($5,000) or imprisonment for five (5) years, or both, at the court's discretion.

If the violator is an official or employee of the Collections Center or its authorized representative, and is convicted, he/she shall also be removed from the position or employment he/she holds.

Article 6.28. Taxpayer Surveys

From time to time, the Collections Center may carry out surveys regarding all persons required to pay personal property taxes and make lists of said persons and the personal property they own.

Article 6.29. Review of Books and Interviewing Witnesses

(a) Taxpayer's liability - In order to determine whether any tax return is correct or for the purpose of preparing a tax return when none has been filed, the Collections Center may examine any books, papers, records or memoranda pertaining to matters that should be included in the tax return through any its officials, employees or representatives, and it may require the appearance of the person filing the tax return or of any official or employee of said person, or the appearance of the person who has knowledge regarding the matter in question, and take a statement concerning those matters that, according to law, must be included in the tax return, with the power to take oath of said person or persons.

No taxpayer shall be subjected to unnecessary investigations or examinations and only one inspection of the taxpayer's accounting books and records for each fiscal year will be made, unless the taxpayer should request otherwise, or unless the Collections Center, after an investigation, should notify the taxpayer in writing that an additional investigation is necessary.

(b) Liability of the assignee - In order to determine the liability in law or in equity of an assignee of the personal property of any person regarding to the tax levied on such a person, the Collections Center may examine any books, papers, records or memorandums pertaining to said liability through any of its officials, employees or representatives, and may require the appearance of the assignor or the assignee or of any official or employee of said persons, or the appearance of any other person who has knowledge concerning the matter and may take their statement with respect to such a matter.

Article 6.30. Power to Take Oaths and Statements

(a) Officials and employees of the Collections Center - Every official, employee or representative of the Collections Center who has been assigned functions regarding the provisions of this Title, is hereby authorized to take oaths and statements concerning any phase thereof, or in any other case in which he/she is authorized to take said oaths and statements by legal authority or regulations promulgated under the legal authority.

(b) Other persons - Any oath or statement required or authorized by this Title or by any regulations under the authority of the same, may be taken by any person authorized to take oaths of a general nature by the laws of the Commonwealth of Puerto Rico, of the United States, or of any state, territory or possession of the United States, or of the District of Columbia, where said oath or affirmation is to be taken, or by any consular official of the United States. This Subsection shall not be construed as an exclusive listing of the persons who may take such oaths or statements.

Article 6.31. Final Agreements; Authority of the Collections Center

The Collections Center is hereby empowered to execute a written agreement with any person regarding said person's responsibility, or that of the person in whose name action is taken with regard to the personal property tax levied by this Title corresponding to any taxable year.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

In the absence of fraud or mathematical error, the determinations as to the facts and the decision of the Collections Center on the merits of any claim filed or authorized by this Title shall not be subject to review by any other administrative official, employee, or agent of the Commonwealth of Puerto Rico. In the absence of fraud or mathematical error, any interest granted on any credit or reimbursement by the Collections Center under this Title shall not be subject to review by any other administrative official, employee or agent of the Commonwealth of Puerto Rico, provided that the case shall not be reopened with regard to the matters agreed upon nor the agreement modified by any official, employee or agent of the Commonwealth of Puerto Rico and that said agreement or any determination, appraisal, collection, payment, reduction or reimbursement pursuant thereto shall not be voided, modified, rendered ineffective or disregarded in any suit, action or proceeding.

Article 6.32. Additional Penalties

Any person who, with regard to a final agreement, intentionally conceals from any official, employee or representative of the Collections Center any personal property belonging to the taxpayer or any other responsible person concerning taxes; or who receives, destroys, mutilates or falsifies any book, document, or record, or makes any false statement under oath regarding the taxpayer's personal property or regarding the taxes on said property, shall incur a felony, and upon conviction, shall face a fine of five thousand dollars ($5,000) or punished by imprisonment for five (5) years; or both, at the court's discretion.

Article 6.33. Payments

(a) Authority to receive payments - The Collections Center or its representative shall have to be authorized to receive tax payments for personal property levied by this Title in currency of the United States of America, in cash delivered personally to the Tax Collector's Office or its authorized representatives, with certified checks, cashier's checks or money orders drawn against a bank or trust company, and postal, bank, express and telegraph money orders payable to the Collections Center.

(b) Disclaimer

(1) Duly paid check or money order - No person who is indebted to the Collections Center for personal property taxes levied by law who has delivered a certified check, a manager's check, or a cashier's check or money order as provisional payment for said taxes pursuant to the terms of this Subsection shall be relieved from the obligation of making the definitive payment thereof until said certified check, manager's check, or cashier's check or money order, has been duly paid.

(2) Unpaid check or money order - If any check or money order thus received is not duly paid, the Collections Center shall, in addition to its right to obtain payment from the tax debtor, hold a lien in the amount of said check on all the bank's assets against which it has been drawn, or for the amount of said money order on the assets of the drawer thereof; and said amount shall be paid from its assets with preference over any other claims of any type against said bank or drawer, except administrative disbursements and expenses.

(c) Other checks - In addition to the checks specified in Subsection (a) of this Article, the Collections Center or its authorized representative may receive uncertified checks in payment of personal property taxes levied by this Title, for the term and under those rules and regulations prescribed by it.

If a check thus received is not paid by the bank against which it was drawn, the taxpayer who delivered said check in payment of his/her tax shall remain liable for the payment of the tax and all penalties and legal additions for up to the same limit as if said check had not been drawn.

Article 6.34. Legal Collection Procedure - Lien

(a) Except as otherwise provided by law with respect to other taxes, the amount of the personal property taxes levied by law, including interest, penalties, additional amounts and additions to said taxes, shall constitute a preferential lien in favor of the Collections Center on all the real and personal property, as well as the real rights of the taxpayer as of the date on which payment therefore is required by the Collections Center or authorized representative, and

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

shall continue to be in effect until the amount owed is totally paid, or until the term for commencing a legal collection procedure or a court proceeding for its collection, has expired.

(b) Such a lien shall not be valid against a mortgage creditor, a financially backed creditor or buyer or a judgment creditor, until the Collections Center or its authorized representative has annotated or registered the attachment referred to in Article 6.35 of this title in the Real Estate Record Office, but in such case, the lien will be valid and shall have preference only from and after the date of such annotation or registration and solely with respect to liens and encumbrances after such a date.

Article 6.35. Tax Collection

Personal property taxes levied by law, including interest, penalties, additional amounts and additions to said taxes, may be collected by the Collections Center or its authorized representative through the legal collection procedure established by this title for the collection of taxes on real property. The Collections Center may direct the collector or the corresponding authorized collector to attach, pursuant to the legal collection procedure, the taxpayer's real and personal property or real rights, to secure or collect the payment of said taxes, including interest, penalties, additional amounts and additions thereto, as soon as said taxes, including interest, penalties, additional amounts and additions to the same have been appraised, and without it being necessary to let the period provided by this title for their payment prescribe, nor to proceed prior to attaching the taxpayer's chattels. The Property Registrar shall annotate the attachments corresponding to real property in the Real Property Attachment Record in favor of the Collections Center and will also make a note in the margin thereof or following the registry entries for the taxpayer's real assets or real rights. Should the Collections Center adjudicate upon itself real property or real rights subject to prior preferred liens as payment for said taxes and other additional amounts, the owner of such a lien may enforce same against said property making the Collections Center a defendant in the procedure to be followed, for which the Collections Center grants consent.

Article 6.36. Penalties for Failing to File Personal Property Tax Returns or Submit Information

Any person required under this title to file a tax return, to keep evidence or furnish information, data and other matters for appraisal, calculation or collection of any personal property tax under the law, who willfully fails to file said tax return, to keep said evidence or furnish said information, data or other matters imposed by this title within the term or terms established by law or regulations, shall, in addition to all the penalties provided by law, incur a misdemeanor, and upon conviction shall face a fine of five hundred dollars ($500), or punished by imprisonment for six (6) months, or both, at the court's discretion.

Article 6.37. Tax returns, sworn statements and fraudulent claims

Any person who willfully aids or abets, seeks, counsels, or instigates, the preparation of a false or fraudulent tax return, sworn statement, claim or document, under this Title, or with regard to any matter that arises under this title, regardless of whether or not said falsehood or fraud has been committed with the knowledge of the person authorized or required to file said tax return, sworn statement, claim or document, shall incur a felony, and upon conviction, shall face a fine of three thousand dollars ($3,000) or punished by imprisonment for three (3) years, or both, at the court's discretion.

Article 6.38. Tax Return Authentication; Penalty for Perjury

(a) Penalties - Any person who willfully completes or signs any tax return, statement or other document that includes or is authenticated by a sworn statement to the effect that it is given under the penalties for perjury, which tax return form or statement, or said document, he/she does not believe to be true and correct with regard to every pertinent fact, shall incur a misdemeanor, and upon conviction, shall face a fine of five hundred dollars ($500) or punished by imprisonment for six (6) months, or both, at the court's discretion.

(b) Signature presumed authentic - The fact that the name of an individual is signed on a tax return, statement or other document that is filed, shall be prima facie evidence for all purposes that the tax return form, statement, or other document was, in fact, signed by said person.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(c) Definition of the term "person" As used in this Article, the term "person" includes an individual as such, an official, director, agent or employee of a corporation or a financial organization, and a partner, agent or employee of a partnership, who in such a capacity is required to perform the act with respect to which the violation occurs.

Article 6.39. Illegal Acts by Officials or Employees

(a) Felony - Any official or employee of the Department of the Treasury, the Collections Center, or any authorized representative to whom functions are delegated, who while acting under the authority of this Act commits any of the acts listed hereinbelow, is guilty of a felony, and upon conviction, shall face a fine of five thousand dollars ($5,000), or punished by imprisonment for five (5) years, or both, at the court's discretion.

(1) commits the crime of extortion; or

(2) conspires or agrees with any other person to defraud the Collections Center or the Commonwealth of Puerto Rico; or

(3) voluntarily gives the opportunity to any person to defraud the Collections Center or the Commonwealth of Puerto Rico; or

(4) enforces or fails to enforce any act with the intention of allowing any other person to defraud the Collections Center or the Commonwealth of Puerto Rico;

(5) willfully makes or signs any false entry in any book, or willfully makes or signs any false statement, return, or certificate in any case in which under this title or by regulation he/she is required to make or sign such an entry, statement, return, or certificate; or

(6) having knowledge or information of such a violation of this Title by any person, or of fraud committed by any person against the Collections Center or the Commonwealth of Puerto Rico, fails to communicate the knowledge or information he/she has of such violation or fraud, in writing, to his/her immediate superior; or

(7) willfully demands other or greater amounts than those authorized by law, or receives any fee, compensation or gratuity for the performance of any duty; or directly or indirectly solicits, accepts or collects as payment, gift or otherwise, any amount of money or other thing of value, favor or sinecure for transacting, adjusting or establishing any charge or claim for any violation or alleged violation of this Title, or

(8) negligently or intentionally allows any violation of this Title by any person.

(b) Misdemeanor

Any official or employee of the Department of the Treasury, of the Collections Center, or any of their authorized representatives upon whom functions are delegated, and who, acting under the authority of this Act, willfully, and without a valid excuse fails to carry out any of the duties imposed on them shall incur a misdemeanor, and upon conviction, shall face a fine of five hundred dollars ($500), or punished by imprisonment for six (6) months, or both, at the court's discretion. Any public official, employee, or authorized representative who is convicted for any of the illegal acts listed in this Article shall be removed from their position.

Article 6.40. Fraud or Misrepresentation in Requests for Exemption or Exonerations

Any person who, in order to take advantage of the benefits of the exemption or exoneration from payment of the taxes authorized by this Act, presents any fraudulent statement, evidence or information, or intentionally fails to present or conceals the true details that allows the Collections Center, or its authorized representative, to correctly calculate of the exemption or exoneration granted by this Act, will incur a misdemeanor, and upon conviction, shall face a fine of three thousand dollars ($3,000), or punished by imprisonment for three (3) years, or both, at the court's discretion.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
 *By Targem Translations Inc.*

TITLE VII

GENERAL PROVISIONS

Article 7.01. Superior Court Jurisdiction

Exclusive jurisdiction is hereby granted to the Superior Court to hear trials for the crimes stipulated in this Act.

Article 7.02. Rules and Regulations

The Governing Board of the Collections Center shall prescribe and promulgate the rules and regulations needed for the compliance, enforcement, and proper interpretation of this Act. It shall also prescribe any other regulations that become necessary due to any change in property tax law. All rules, regulations, norms, and directives previously issued by the Secretary of the Treasury to that effect, that are not in conflict with the provisions of this Act shall continue in effect until the Governing Board of the Collections Center promulgates said regulations.

Article 7.03. Taxpayer Rights under the Previous Law

The rights acquired by taxpayers under previous law or any other special acts, shall continue in effect provided they are not in conflict with the provisions of this Act.

Article 7.04. Balances Owed for Tax Advances

The Secretary of the Treasury shall review his/her records in order to ascertain the balances owed by the municipalities or in their favor on account of advances on property taxes, provided that once the debt has been ascertained, the balances owed by the municipalities to the Secretary of the Treasury shall be paid within a term no greater than 15 years. Balances owed by the Secretary of the Treasury to the municipalities shall be paid within a term not to exceed three years.

Article 7.05. Transfer of Collectable Debts

During the Collections Center's organization period, the Secretary of the Treasury shall determine from his/her records the collectable balances owed by taxpayers on account of property taxes. Said balances will be transferred to the Center so that it may carry out the necessary collection efforts. These collections shall belong to the Department of the Treasury or to the municipalities, depending on the dates the debts were incurred, provided that the Center, in coordination with the Secretary of the Treasury, establishes the fees for the efforts to be carried out for the collection of debts corresponding to said Department.

Article 7.06. Amendments to the Civil Code

Subsection (1) of Article 1823 and Subsection (1) of Article 1824 of the Civil Code of Puerto Rico, 1930 Edition, are hereby amended to read as follows:

"Article 1823.

With respect to certain real property and real debtor rights, the following take precedence:

1) Credits in favor of the Commonwealth of Puerto Rico, the Municipal Revenue Collection Center, or the corresponding municipality, on the property of taxpayers in the amount of the last five (5) years and the unpaid current year of taxes levied thereon.

2) ........................................................

56

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
 *By Targem Translations Inc.*

Article 1824.

In relation to the other personal and real property of the debtor, the following take precedence:

1) Credits in favor of the Commonwealth of Puerto Rico, of the Municipal Revenue Collection Center, or of the corresponding municipality, for past-due taxes of the last five (5) years, and unpaid tax of the current year, not included in Subsection 1) of Article 1823 of the Civil Code of 1903.

2) .......................................................

Article 7.07. Amendments to the Mortgage and Property Registry Act.

Article 200 of Act No. 198 of August 8, 1979, as amended, is hereby amended to read as follows:

Article 200. A legal mortgage is hereby created in favor of the Commonwealth of Puerto Rico, the Municipal Revenue Collection Center of the Commonwealth of Puerto Rico and the corresponding municipalities, on the real property of taxpayers for the amount of the last five years of unpaid local property taxes and those of the current year, levied against them. This legal mortgage is tacit in nature and is preferential to its holders over any other creditor, and over a third-party purchaser, even if their rights have been registered.

Article 7.08. Amendments to the Corporations Law

Article 1301 of Act No. 3 of January 9, 1956, as amended, is hereby amended to read as follows:

Article 1301. Puerto Rican Corporations; Annual Reports.

(a) Any corporation created under the laws of the Commonwealth of Puerto Rico that conducts business in Puerto Rico shall file a report with the Office of the Secretary of State annually, no later than April 15, which shall be authenticated by the signatures of the president or vice president and the treasurer or assistant treasurer.

The report shall contain:

(1) .......................................................

(2) .......................................................

(3) .......................................................

Failure to pay this fee shall be sufficient cause for the certificate of incorporation to be cancelled outright as soon as the Secretary of the Treasury or the Municipal Revenue Collection Center certifies to the Secretary of State that the corporation does not owe any taxes.

(b) .......................................................

(1) .......................................................

Article 7.09. Repeals

(a) Articles 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 302, 303, 304, 305, 306, 307, 309, 311, 314, 315, 316, 317, 319, 320, 321, 322, 323, 324, 325, 326, 328, 330, 331, 332 and 333 of the Political Administrative Code of 1902, as amended, are hereby repealed.

(b) Article 1 of Act No. 1 of September 27, 1951, as amended, is hereby repealed.

(c) Article 2-A-3 of Act No. 235 of May 10, 1949, as amended, is hereby repealed.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*  By Targem Translations Inc.*

(d) Act No. 80 of May 10, 1937, as amended, is hereby repealed.

(e) Act No. 81 of May 10, 1937, as amended, is hereby repealed.

(f) Act No. 27 of April 29, 1943, as amended, is hereby repealed.

(g) Act No. 61 of May 5, 1945, as amended, is hereby repealed.

(h) Act No. 117 of May 9, 1947, as amended, is hereby repealed.

(i) Act No. 151 of May 11, 1948, as amended, is hereby repealed.

(j) Act No. 269 of May 11, 1949, as amended, is hereby repealed.

(k) Act No. 142 of April 24, 1951, as amended, is hereby repealed.

(l) Act No. 100 of June 25, 1957, as amended, is hereby repealed.

(m) Act No. 60 of June 20, 1958, as amended, is hereby repealed.

(n) Act No. 80 of June 25, 1959, as amended, is hereby repealed.

(o) Act No. 71 of June 8, 1960, as amended, is hereby repealed.

(p) Act No. 34 of June 15, 1965, as amended, is hereby repealed.

(q) Act No. 70 of June 25, 1969, as amended, is hereby repealed.

(r) Act No. 54 of May 29, 1970, as amended, is hereby repealed.

(s) Act No. 31 of May 10, 1974, as amended, is hereby repealed.

(t) Act No. 80 of June 21, 1977, as amended, is hereby repealed.

Article 7.12. Reservation

This Act shall not affect the authority of the Central Government to grant property tax exemptions under any other acts.

Article 7.13. Effective Date

The provisions of this Act shall take effect immediately once it is passed, except with regard to the transfer of functions and authority previously granted to the Secretary of the Treasury, which shall take effect as they are performed, but under no circumstance later than June 30, 1993.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*13/OCTOBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*



718.384.8040
TargemTranslations.com
projects@targemtranslations.com
185 Clymer St. Brooklyn, NY 11211

**TRANSLATOR'S CERTIFICATE OF TRANSLATION**

Translation from: Spanish (Puerto Rico) into English (US)

TARGEM Translations Inc.

I, Andreea I. Boscor, ATA-certified Spanish-English #525556, acting as translator at TARGEM Translations Inc., a NEW YORK City corporation, with its principal office at 185 Clymer Street, Brooklyn, NY, 11211, USA, certify that:

the English translated document is a true and accurate translation of the original Spanish and has been translated to the best of my knowledge.

Original Document Name: **Act 83 approved 8.30.1991**

Signed this 13th day of October 2021

_____

Andreea I. Boscor

Verify at www.atanet.org/verify

