# Debtors' Ex. 93

Debtors' Ex. 93



DATE DOWNLOADED: Fri Jul 23 22:13:01 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1988 3 .

ALWD 6th ed.
; ., , 1988 3 .

Chicago 17th ed.
"," Puerto Ricoo - 10th Legislature, 4th Regular Session : 3-1197

AGLC 4th ed.
'' Puerto Ricoo - 10th Legislature, 4th Regular Session 3.

OSCOLA 4th ed.
'' 1988 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

Commonwealth of Puerto Rico

DEPARTMENT OF STATE

San Juan, Puerto Rico

I, Salvador M. Padilla, Secretary of State of Puerto Rico, DO HEREBY CERTIFY: That the copies of the Acts and Resolutions of the Fourth Regular Session of the Tenth Legislature of the Commonwealth of Puerto Rico, February 9 to August 12, 1988, herein inserted, are correct transcripts of such copies of the text of the original of such Acts and Resolutions, according to certification submitted to the Secretary of State by the publishers.

Given under my hand at San Juan, Puerto Rico this 23rd day of April in the year of our Lord one thousand nine hundred and ninety-two.

Salvador M. Padilla, Ph.D.

*Salvador M. Padilla*

Secretary of State

xvii

Act No. 43  4th REGULAR SESSION—10th ASSEMBLY      June 21

Section 35.—Effectiveness

This Act shall take effect one hundred eighty (180) days after its approval.

―――――――

## Infrastructure Financing Authority

(S.B. 1567)

### [No. 44]

*[Approved June 21, 1988]*

## AN ACT

To create the Puerto Rico Infrastructure Financing Authority for the purpose of establishing a mechanism to provide financial, administrative or other types of assistance to public corporations and instrumentalities of the Commonwealth of Puerto Rico, authorized by law to develop infrastructure facilities, and to establish an alternate means for the financing of infrastructure facilities; provide for the organization of the Authority; define its powers, authority and functions; authorize it to issue bonds; grant it tax exemption; authorize the transfer or assignment of property; authorize a special deposit for the corporate purposes of the Authority; establish the Puerto Rico Water Pollution Control Revolving Fund under the provisions of Title VI of the Federal Clean Waters Act as amended; provide for the administration of said Fund by the Authority, and establish penalties.

### STATEMENT OF MOTIVES

The government's investment in infrastructure is a basic link for the promotion of the economic development of any country. This public investment in infrastructure not only generates an immediate flow of economic activity, in itself, but also is indispensable for the influx of new private investment which use the facilities established by the public sector, without which it would be difficult to attract this private capital.

Classic examples of such investment in infrastructure are roads, dams, electric power systems, the aqueduct, sewer, and waste treatment plants systems, telephone facilities, and many others of a similar nature which result in our collective well-being.

June 21   INFRASTRUCTURE FINANCING AUTHORITY Act No. 44

The development of this infrastructure involves a substantial investment of resources. The corporations and public instrumentalities which are responsible for the development and operation of the various elements of the infrastructure frequently, have financial limitations which prevent them from carrying out their infrastructure investment programs. A good example of a public instrumentality which has an urgent need of resources for a massive program for the improvement and development of new infrastructure, is the Puerto Rico Aqueduct and Sewer Authority. The Aqueduct and Sewer Authority's capital improvements program for the coming years requires an investment of over one billion (1,000,000,000) dollars.

In view of the fundamental importance of the government's investment in the infrastructure, it is necessary to create a specialized body with two cardinal functions. The first consists of providing financial, administrative, and any other type of assistance to public enterprises that undertake such capital improvements, to expedite their corresponding programs and maintain a constant and uninterrupted flow of infrastructure investment. The second shall be to provide an alternate means to finance the infrastructure needs of our public sector directly.

The body created hereunder shall be known as the "Puerto Rico Infrastructure Financing Authority" (the "Authority"). This Authority is created as a body corporate and politic which is a public corporation and an instrumentality of the government of the Commonwealth of Puerto Rico, with sufficient authority to exercise its powers independently from any other public entity.

The Authority shall have a Board of Directors constituted by the members of the Board of Directors of the Government Development Bank and the Secretary of the Treasury in his capacity as such, who shall preside.

The main reason to identify the Authority's Board of Directors with that of the Government Development Bank is that the Bank is the Fiscal Agent of the Government of Puerto Rico and its agencies, municipalities and instrumentalities, and in the performance of this function, coordinates, obtains and provides financing for the capital improvements of the public sector, which is a very similar function to that of the Authority.

The Authority shall have all the powers which are necessary and convenient to execute and put into effect the purposes and provisions of this Act. Specifically, it shall have the power to

181

negotiate and execute assistance contracts with other public corporations and instrumentalities with the purpose of providing financial, administrative and other assistance and produce the financing programs needed for the development of infrastructure. The government entity that receives financial assistance, from the Authority shall have to meet all the operational, administrative and budgetary requirements, and comply with the filing of reports as required by the Authority in said assistance contract. Likewise, such contracts can include clauses that grant the Authority the power to declare special periods during which the entity that receives these benefits may be required to comply with the conditions established by the Authority.

The Authority shall be empowered to borrow money and issue bonds for any of its corporate purposes, including the financing of the construction, rehabilitation, purchase, repair, conservation and replacement of any part of the Commonwealth's infrastructure. The Authority may also provide consulting, technical, administrative and advisory assistance to public corporations and instrumentalities in all matters related to the operation, maintenance, and improvement of their physical structure.

With the purpose of endowing the Authority with the needed resources to ensure the payment of the principal and interest on bonds and any other obligations which it shall issue at a given time, as well as the bonds and obligations which other public entities which receive the Authority's financial assistance may issue, a special fund designated as the "Puerto Rico Infrastructure Fund" is hereby created.

This Fund shall be nourished annually for the next thirty (30) fiscal years, with thirty (30) million dollars for the 1988-89 fiscal year, and forty (40) million dollars for each one of the following twenty-nine (29) fiscal years, from the first proceeds received by the Department of the Treasury from federal excise taxes on rum and tobacco shipments, which the Federal Government imposes and collects, and are then returned to the Treasury of Puerto Rico once the administrative costs have been deducted.

In order to continue receiving Federal Government assistance under the provisions of the Federal Clean Water Act, a revolving fund is hereby established pursuant to the provisions of said Act, and its administration by the Authority is hereby provided.

To ensure the most effective compliance of all the provisions of this Act, the Authority is required to submit reports on the

development of all its affairs and the progress of its financings and activities, to the Legislature and the Governor, in the manner provided herein.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Title.

This Act shall be known as the "Puerto Rico Infrastructure Financing Authority Act".

Section 2.—Purpose.

The construction, rehabilitation, acquisition, repair, preservation and replacement of the infrastructure of the Commonwealth, or any part thereof, is essential to the general well being. It is a fact that it is necessary for the Commonwealth to give financial, administrative, or other assistance to public corporations and instrumentalities of the Commonwealth, to allow them to fulfill their public purpose to provide, preserve, operate, maintain, repair, replace, and improve parts of the infrastructure of Puerto Rico. It is hereby declared that the People of Puerto Rico shall benefit by providing an alternate method of financing our infrastructure needs. It is necessary to immediately establish a Water Pollution Control Revolving Fund, and the standards and provisions that are essential for its administration, so that the Commonwealth may benefit from the Federal Capital Grants program established under Title VI of the Federal Clean Water Act, as amended. It is the firm intent of the Legislature of Puerto Rico to adopt whatever measures are necessary and convenient to fulfill the abovementioned needs and purposes, and therefore, it hereby creates the Puerto Rico Infrastructure Financing Authority, as a public corporation and instrumentality of the Commonwealth which is an independent body corporate and politic, and establishes the Water Pollution Control Revolving Fund.

Section 3.—Definitions

The following words and terms when used or referred to in this Act, shall have the meaning indicated unless it is otherwise clearly construed from the context:

(a) "Authority" shall mean the Puerto Rico Infrastructure Financing Authority, established by this Act, or if said Authority should be abolished or otherwise divested of its functions under this Act, the public body or entity which succeeds the Authority in its

main functions or in which the rights, powers and duties conferred by this Act to the Authority, are vested.

(b) "Benefited Entity" shall mean every public corporation or instrumentality of the Commonwealth to which financial, administrative, consulting, technical, advisory or other assistance is provided, pursuant to the provisions of this Act.

(c) "Board" shall mean the Board of Directors of the Authority created hereby and if said Board is abolished, whatever Board or entity that succeeds it in the performance of its main functions.

(d) "Bonds" shall mean bonds, temporary bonds, refunding bonds, obligations, notes, bond anticipation notes, interim receipts or provisional bonds, certificates, or any other evidences of indebtedness of the Authority, issued under the provisions of this Act.

(e) "Clean Water Act" shall mean the 1972 Water Pollution Control Act, P.L. 92–500 as amended, and the regulations promulgated thereunder.

(f) "Commmonwealth" shall mean the Commonwealth of Puerto Rico.

(g) "Revolving Fund" shall mean the Puerto Rico Water Pollution Control Fund which shall be constituted independently and separately from any other Commonwealth fund, and in accordance with the provisions and purposes of Title VI of the Clean Water Act.

(h) "Government Development Bank" shall mean the Government Development Bank for Puerto Rico, created by Act No. 17 of September 23, 1948, as amended.

(i) "Infrastructure" shall mean those capital works and facilities of a substantial public interest, such as water supply systems, waste water treatment and disposal systems, improvements financed under the provisions of Title VI of the Clean Water Act, solid and hazardous waste disposal systems, resource recovery systems, electric power systems, expressways, highways, airports, bridges, maritime ports, tunnels, transportation systems including mass transit systems, communication systems including telephones, industrial facilities, land and natural resources, and tourist infrastructure facilities.

(j) "Assistance Contract" shall mean any contract, including a lease, sublease, or other type of agreement, contract or written instrument, executed between the Authority and a benefited entity, whereby the Authority agrees to provide to said entity financial,

June 21   INFRASTRUCTURE FINANCING AUTHORITY   Act No. 44

administrative, consulting, technical, advisory or any other type of assistance, pursuant to the provisions of this Act.

(k) "Person" shall mean any natural or juridical person, including, but not limited to any municipality or political subdivision, any agency, department or instrumentality of the Commonwealth, or any individual, firm, partnership, joint venture, trust, joint stock company, association, or private or public corporation, organized or existing under the laws of the Commonwealth, the United States of America, or any state, any United States agency, department or instrumentality, or any combination of the above.

Section 4.—Creation of the Authority.

A public corporation and instrumentality of the Commonwealth is hereby created which constitutes an independent body corporate and politic, which shall be known as the Puerto Rico Infrastructure Financing Authority, which shall exercise its powers independently from any other person. The Authority's powers shall be exercised by the Board which shall be composed of the members of the Board of Directors of the Government Development Bank and by the Secretary of the Treasury of the Commonwealth, in the event he is not a member of the Board of Directors of the Government Development Bank. When the Secretary of the Treasury is not a member of the Board of Directors of the Government Development Bank, the Board shall be composed of the Secretary of the Treasury and six (6) members of the Board of Directors of said Bank designated by the Governor.

No member of the board of directors or officer of a benefited entity can be a member of the Board of the Authority. The Authority thus constituted, shall exercise public and essential government functions.

The Secretary of the Treasury of the Commonwealth shall be the Chairman of the Authority's Board. The Board may elect the officers it deems are necessary or convenient to execute the public purposes for which the Authority is created.

The members of the Board of the Authority shall receive no compensation whatsoever for their services. The Authority shall reimburse the members of the Board who are not public officials or employees for the necessary expenses incurred in the performance of their duties.

A majority of the Board shall constitute a quorum and the affirmative vote of at least a majority of the members present shall

185

Act No. 44  4th REGULAR SESSION—10th ASSEMBLY        June 21

be needed for any action the Board may take. No absence or
vacancy in the member of the Board shall prevent it, once there
is a quorum, from exercising all its rights and performing all its
duties.

The Board and its individual directors, and the officers, agents
or employees of the Authority shall not incur civil liability for any
action taken in good faith in the performance of their duties and
responsibilities pursuant to the provisions of this Act, and they shall
be indemnified for any costs incurred in connection with any claim
for which they enjoy immunity as provided hereunder. The Board
and its individual directors, and officers, agents or employees of the
Authority shall be fully indemnified for any civil liability
adjudicated under the laws of the United States of America.

Section 5.—Authorization to grant assistance.

The Authority may grant assistance to any public corporation or
government instrumentality empowered to provide infrastructure
facilities related to water supply, treatment and distribution
systems, waste water treatment and disposal systems, and
improvements which are financed under the provisions of Title VI
of the Federal Clean Water Act.

With regard to the other infrastructure facilities indicated in
subsection (i) of Section 3 of this Act, the Authority will only have
the power and jurisdiction to request and compile data from the
various public corporations and instrumentalities that develop
infrastructure facilities and to evaluate the nature and condition
of such facilities. When the Authority, after said evaluation,
determines that it is necessary and convenient to the public interest
to execute an assistance contract with a public corporation or
government instrumentality empowered to provide such infrastruc-
ture facilities, it shall so inform the Legislature, and request and
obtain its authorization to grant assistance to the government entity
that requires it.

Said request for authorization shall be accompanied by a report
stating the circumstances that justify that the Authority provide
assistance to the public corporation or government instrumentality,
which shall include the following, without being construed as a
limitation.

(a) The financial statements of the public corporation or
government instrumentality to which assistance will be granted.

(b) A report of the public corporation or government
instrumentality's operations for which the authorization is being

requested, and a copy of any technical report that has been prepared.

(c) The trust agreements and collective bargaining agreements in effect, if any, of the public corporation or government instrumentality for which the authorization is being requested.

(d) A detailed description of the measures, assistance, and any probable contractual provisions that the Authority deems to be necessary to require according to the findings of its evaluation.

(e) An estimate of the financial resources needed to grant assistance.

(f) Any other information, studies, evaluations, evidence, reports and documents that are needed to give a comprehensive view of the general situation of the corporation or instrumentality for which the authorization is being requested.

The Authority shall present its request at the Office of the Secretary of both Legislative Bodies and the Secretary of each Legislative Body shall remit it to the Committee or Committees with jurisdiction, which shall evaluate the request within thirty (30) days following the date in which is referred to Committee or Committees, and shall submit a report with its conclusions and recommendations to the respective Body.

The Legislature, by Joint Resolution, may authorize the Authority to grant such assistance. Once the Joint Resolution is approved, the Authority may execute the assistance contract with the public corporation or Commonwealth instrumentality for which the authorization has been granted, and shall present a copy of the assistance contract together with the corresponding explanations, to the Office of the Secretary of each Legislative Body no later than five (5) working days following its date of execution.

Section 6.—Assistance Contracts with Benefited Entities.

Pursuant to what is established in this Act, any public corporation or government instrumentality is empowered to execute assistance contracts with the Authority, and any public corporation or instrumentality which executes said contracts is authorized and bound to comply with the provisions of said contracts and to comply with the actions taken by or in behalf of the Authority under said contracts, provided that said benefited entity could have taken such action without violating any laws, contracts or agreements in effect.

The Authority shall execute the necessary assistance contracts with any benefited entity to which it provides assistance pursuant to the provisions of this Act. Said contracts shall include all the

Act No. 44  4th REGULAR SESSION—10th ASSEMBLY      June 21

provisions the Authority deems pertinent to achieve the purposes
of said assistance, subject to the provisions of this Act and any other
acts, agreements and contracts of the Authority or the benefited
entity which are in effect. Said contracts shall include, without it
being understood as a limitation, provisions under which:

(a) The benefited entity is bound to comply with all operational,
administrative and budget requirements and the drafting and
manner of presenting reports, or those of any other nature that the
Authority may impose as a condition to provide assistance.

(b) The benefited entity agrees to:

(1) File with the Authority budgets, capital improvement
plans, reports of engineers, consultants and financial statements
with the frequency and on such dates as may be required by the
Authority.

(2) Employ consulting engineers, auditors and any other
professionals and technical personnel that the Authority may
require.

(3) Proceed promptly with the development of the project or
projects, if any, for which assistance is being provided and assume
the operation of such project immediately after the construction has
been completed.

(4) Continue the operation and maintenance of the project or
projects, if any, for which assistance is being provided, until the
Authority determines otherwise.

(5) Provide resources and establish a fund for renewals,
replacements or other permanent improvements, pursuant and
subject to the requirements of any trust agreement or other loan
instrument of the benefited entity, and establish said fund with
Government Development Bank or in any other institution
authorized by law to receive deposits of public funds, determined
by the Authority.

(c) The Authority may declare special periods during which it
can require the benefited entity to comply with certain conditions,
or to perform or adopt those actions or measures that the Authority
deems necessary and convenient to guarantee that said benefited
entity shall comply with the provisions of the assistance contract
and with its purposes, and establish, in the corresponding
assistance contract, the conditions under which said special periods
shall begin and end, the measures which the Authority may
implement during said periods, and the remedies available to the

June 21  INFRASTRUCTURE FINANCING AUTHORITY Act No. 44

Authority when the benefited entity does not comply with the provisions of the assistance contract.

To be able to declare a special period, the Authority shall:

(1) Approve a Resolution stating the need to put a special period into effect, in which it shall state in detail the grounds for declaring said period and the information furnished or recommendations made by consultants, officers or employees of the Authority, on which said resolution is grounded.

(2) File with the Office of the Secretary of each Legislative Body, at least five (5) days prior to the effective date of the special period, a certified copy of the Board's Resolution declaring a special period.

During a special period, and as the only exception to any public bidding requirement imposed by the organic act or by the regulations of a benefited entity, the Authority shall be empowered, to require the same not to conduct said procedure in the adjudication of construction or purchase contracts or any other type of service contract, under special circumstances.

The Authority may only require a benefited entity not to comply with any public bidding requirement when it has been so provided in the assistance contract and a Resolution to that effect has been adopted by the Authority for each particular case.

In said Resolution the Board shall state the special circumstances which justify that the benefited entity in that particular case not be required to comply with any public bidding requirements. A copy of the Resolution shall be filed with the Office of the Secretary of each of the Legislative Bodies no later than five (5) working days after the date the Board adopts its Resolution.

Section 7.—General Powers

The Authority shall have all of the powers necessary and convenient to carry out and accomplish the purposes and provisions of this Act including, but without being limited to the following:

(a) Adopt by-laws for the administration of its corporate affairs and business and adopt the regulations and standards needed to exercise its functions and duties.

(b) Adopt an official seal and alter it at will.

(c) Maintain one or more offices in the municipality of San Juan or in any other place within or without Puerto Rico as it may deem necessary.

(d) Sue and be sued in its own name, to implead and be impleaded.

189

Act No. 44  4th REGULAR SESSION—10th ASSEMBLY       June 21

(e) Receive and administrate any gift, grant, loan or donation of any property or money, including, without being limited to those made by the Commonwealth and the Federal government or any agency or instrumentality thereof, and lend or expend the proceeds thereof for any of its corporate purposes and comply with all such conditions and requirements, with respect thereto including those for the administration of the Revolving Fund under Title VI of the Clean Water Act, created in Section 16 hereof, and to take all such steps to meet such conditions and otherwise exercise such powers that may be needed to obtain the benefits of the programs established pursuant to said law for the Commonwealth.

(f) Provide any type of assistance to a benefited entity which is consistent with the purposes of this Act, including financial assistance, such as:

(1) Provide funds in the form of loans, grants or transfer of financial resources.

(2) Pay any debt of the benefited entity in full or in part.

(3) Assume the obligations of the benefited entity.

(4) Guarantee the payment of any debt of the benefited entity.

(5) Execute lease or sublease contracts with a benefited entity.

(6) Provide the necessary assistance to obtain financial guarantees or letters of credit.

(g) Make and execute with any person, contracts, leases, subleases and all such other necessary or convenient instruments and agreements to exercise the powers and functions conferred on the Authority by this Act and negotiate and execute assistance contracts with benefited entities.

(h) Acquire in any lawful manner, including, but not limited to, by purchase, eminent domain, lease, donation, or other legal means, real or personal property, improved or unimproved, encumbered or unencumbered, and property rights of land, as necessary or convenient, to exercise the powers and functions conferred on the Authority under this Act.

(i) Sell, lease, assign, transfer, convey, exchange, mortgage, or otherwise dispose of or encumber any property. The Authority may also lease, reacquire or otherwise obtain title to, or hold any property which it has previously sold, leased or otherwise conveyed, transferred or disposed of.

(j) Grant options for the purchase of any property or the renewal of any lease granted by it in connection with any of its properties, under such terms and conditions as it may deem advisable.

190

June 21  INFRASTRUCTURE FINANCING AUTHORITY Act No. 44

(k) Pledge or assign any moneys, income, fees or any other revenues, as well as the proceeds from the sale of properties, and compensation under the provisions of insurance policies or condemnation awards.

(*l*) Borrow money and issue bonds of the Authority for any of its corporate purposes, including, but not limited to, financing the construction, rehabilitation, purchase, repair, conservation and replacement of portions of the infrastructure of the Commonwealth, and for lending or otherwise providing funds to any benefited entity, including, without it being a limitation, for the payment of all or any part of any indebtedness of such benefited entity or for any other purposes authorized by this Act.

(m) Mortgage or pledge any property for the payment of the principal of and interest on any bonds issued by the Authority, or bonds issued by a benefited entity, and pledge all or a portion of such revenues as the Authority may receive, including, but not being limited to, and subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico, all or any portion of the Federal excise taxes or other funds which should be transferred by the Commonwealth to the Authority.

(n) Commence any legal action, including, but not limited to, proceedings for writs of mandamus and injunctions, to protect or enforce any right conferred upon it by any law, contract or other agreement and, notwithstanding any provision of law to the contrary, exercise any remedy provided for breach under any contract or other agreement, as provided by such contract or agreement.

(o) Appoint officers and hire agents and employees and fix their powers and duties as the Authority may determine and, without being a limitation, contract consulting engineers, architects, superintendents, general contractors, managers, attorneys, accountants and other consultants and contractors as determined by the Authority and delegate such functions and powers to such persons as the Authority may designate, and fix and pay the corresponding remuneration from funds available to the Authority therefor. The directors, officers and employees of the Authority shall be subject to the provisions of Act No. 12 of July 12, 1985, known as the 'Ethics in Government Act of the Commonwealth of Puerto Rico'.

(p) Purchase insurance against loss in such amounts and from such insurers which it deems desirable, which may include, without

191

Act No. 44  4th REGULAR SESSION—10th ASSEMBLY        June 21

being limited to civil liability insurance for directors, officers, agents and employees.

(q) Invest its funds as authorized by a Resolution of the Board, subject to any restrictions in trust agreements or Resolutions authorizing bond issues.

(r) Purchase bonds issued by the Authority, subject to the provisions of any contract with the holders of such bonds; and purchase any bonds or other obligations issued by municipalities, political subdivisions, public corporations and instrumentalities of the Commonwealth, and to sell without relation to cost such bonds or other obligations at such prices and in such manner as the Authority shall deem advisable.

(s) Construct, rehabilitate, repair, preserve, replace, extend, improve, renovate, furnish, equip, maintain and operate portions of the insfrastructure and other property that are used or may be useful to provide portions of the infrastructure, or to cause them to be constructed, rehabilitated, repaired, preserved, replaced, extended, improved, renovate, furnished, equipped, maintained and operated and to pay all or any part of the costs thereof from the funds of the Authority available therefor, including those it may receive from any benefited entity.

The Authority shall be exempt from complying with any public auction and bidding requirement for the adjudication of construction, purchase, or any other types of contracts when it is deemed necessary and convenient to comply with the public purposes of this Act and is so authorized by the Board in each particular case, by a Resolution to such effect. Said Resolution shall state the circumstances which justify that the Authority may be exempted from the public bidding requirements. A copy of said Resolution shall be submitted to the Office of the Secretary of each Legislative Body within five (5) working days after the Board adopts said Resolution.

(t) Fix, impose and collect rentals, fees, rates and other charges for the use of any of its properties, including portions of the infrastructure, and for its services, without being subject to any limitations that would be applicable if such property were owned or operated or such services were provided by any other persons. The Authority shall not bind any benefited entity to increase any rent, charge or fee for its services, without complying with the provisions of Act No. 21 of May 5, 1985, which provides a uniform procedure for the establishment of rates.

192

June 21  INFRASTRUCTURE FINANCING AUTHORITY Act No. 44

(u) Provide advisory, consulting, technical and administrative assistance to public corporations and instrumentalities of the Commonwealth to enable them to provide, operate, maintain and improve the infrastructure.

(v) Indemnify any of its directors, officers, agents or employees for any liability incurred in the performance of their duties and responsibilities as provided in Section 4 of this Act.

(w) Exercise any additional powers and rights that have been granted or shall be legally bestowed on the benefited entities in the future.

(x) Exercise all the powers inherent to the functions, prerogatives and responsibilities conferred to it by this Act and perform any act or activity which is necessary or convenient to carry out its purposes.

Section 8.—Bonds of the Authority

The Authority is hereby authorized to issue bonds from time to time in such principal amounts, which in the opinion of the Authority, are necessary to provide sufficient funds to finance infrastructure, including, but not limited to, all costs for developing and designing infrastructure projects, to repay obligations of, or provide financial assistance to the public corporations and instrumentalities of the Commonwealth which provide infrastructure, to pay interest on its bonds for such period as the Authority may determine, and to pay such other expenses of the Authority or such other benefited entities, including, but not limited to, working capital, which are incidental, necessary or convenient to execute its or their corporate purposes and powers, and to pay any costs of issuance and to establish reserves to secure such bonds. The Authority may also issue bonds to acquire obligations of any benefited entities. Without it being a limitation, any bond proceeds may be applied to any cost or purpose for which the proceeds of the obligations of any benefited entity may be disbursed or, in those cases in which the Authority provides financing in lieu of a public corporation or instrumentality of the Commonwealth, the Authority may apply the proceeds of the bonds to any cost or purpose for which the proceeds of the obligations of said government entity could have been legally applied.

(a) The Bonds issued by the Authority may be payable from all or any part of the gross or net revenues and other income derived by the Authority which, subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico,

Act No. 44 4th REGULAR SESSION—10th ASSEMBLY        June 21

may include the proceeds of any tax or other funds which may be
made available to the Authority by the Commonwealth, as provided
in the trust agreement or Resolution whereby the bonds are issued.
The principal of, and interest on the bonds issued by the Authority
may be secured by a pledge of all or part or any of its revenues
which, subject to the provisions of Section 8 of Article VI of the
Constitution of the Commonwealth of Puerto Rico, may include the
proceeds of any tax or other funds which may be made available
to the Authority by the Commonwealth, all as provided in the trust
agreement or Resolution under which the bonds are issued. Such
pledge shall be valid and binding from the time it is made without
the need for a public or notarized instrument. The revenues so
pledged, including those subsequently received by the Authority,
shall immediately be subject to said lien without the need of the
physical delivery thereof or any other act, and said lien shall be
valid and binding and shall prevail against any third party having
any kind of claim against the Authority, for damages, breach of
contract or other reasons, regardless of whether such third party
has been so notified. Neither the trust agreement, nor the bond
Resolution, nor any collateral agreement by which the Authority's
rights on any revenues are pledged or assigned, shall have to be
presented or recorded in order to perfect the lien thereon against
any third party, except in the records of the Authority. The
Resolution or Resolutions authorizing the bond issue or the trust
agreement securing the bonds may contain provisions, which shall
be part of the contract with the holders of the bonds issued under
such Resolution or Resolutions or under such trust agreement,
regarding the pledge and creation of liens on the Authority's
revenues and assets, the creation and maintenance of sinking funds
and reserve funds, limitations concerning the purposes to which
bond proceeds may be applied, limitations concerning the issuance
of additional bonds, limitations concerning the introduction of
amendments or supplements to such Resolution or Resolutions, or
to the trust agreement, the granting of rights, powers and
privileges and the imposition of obligations and liabilities upon the
trustee under any trust agreement or Resolution, the rights,
powers, obligations and liabilities that shall arise in the event of
a default of any obligation under such Resolution or Resolutions or
under such trust agreement, or in connection with any rights,
powers or privileges conferred on the bondholders as security for
the bonds in order to enhance their marketability.

194

June 21   INFRASTRUCTURE FINANCING AUTHORITY Act No. 44

(b) The bonds may be authorized by a Resolution or Resolutions of the Board. They may be such series, bear such date or dates, mature as such time or times not to exceed fifty (50) years from their respective dates of issue and may bear interest, if any, at such rate or rates (which may be fixed or variable) that do not exceed the maximum allowable legal rate of interest at that time. The bonds may be payable in such place or places, whether within or without the Commonwealth, may be of such denomination or denominations, and in such form, as coupon bonds or registered bonds, may have such registration or conversion privileges, may be issued in book-entry form, may be executed in such manner, may be payable in such medium of payment, may be subject to such redemption terms, with or without premiums, may provide for the replacement of mutilated, destroyed, stolen or lost bonds, may be authenticated in such manner and upon compliance with such conditions, and contain such terms and conditions, and be issued in temporary form ending the execution and delivery of definitive bonds, as may be provided in the Resolution or Resolutions or by the terms of the trust agreement. The bonds may be exchanged for obligations of the benefited entity or may be sold at public or private sale for such price or prices as the Authority may determine; provided, however, that refunding bonds may be sold or exchanged for outstanding bonds of the Authority on such terms as the Authority may deem to be in the best interests thereof. Notwithstanding the form and tenor thereof, and in the absence of an express notice on its face that the bond is not negotiable, all bonds of the Authority, including any coupons appertaining thereto, shall at all times have, and shall be understood to have, all the qualities and incidents, including negotiability, of negotiable instruments under the laws of the Commonwealth.

(c) The proceeds from the sale of each bond issue shall be disbursed in such manner and under such restrictions, if any, as the Authority may provide in the resolution or resolutions authorizing the bond issue or in the trust agreement securing such bonds.

(d) The bonds of the Authority bearing the signatures of the officers thereof who were in office on the date said bonds were signed shall be valid and binding obligations, even though, any or all the officers whose signatures or facsimile signatures appear thereon have ceased as such officers of the Authority before the delivery and payment of said bonds. Any trust agreement or

Act No. 44  4th REGULAR SESSION—10th ASSEMBLY       June 21

Resolution securing the bonds may provide that any such bonds may contain a statement to the effect that they were issued pursuant to the provisions of this Act, and any bond containing such statement under the authority of any such trust agreement or Resolution shall be conclusively deemed to be valid and to have been issued pursuant to the provisions of this Act. Neither the members of the Board of the Authority, nor any person executing the bonds shall be personally liable, nor shall they be subject to any civil liability for the issuance of said bonds.

Section 9.—Refunding Bonds.

The Authority is hereby authorized to issue refunding bonds of the Authority for the purpose of refunding those bonds in effect and outstanding at that time, which have been issued under the provisions of this Act, including the payment of any redemption premium thereon and any interest accrued or accruing as of the redemption or maturity date of such bonds, and, if deemed advisable by the Authority, for any of the purposes for which it may issue bonds. The issuance of such bonds, the maturities and other pertinent details, the rights of the bondholders, and the rights, duties and obligations of the Authority with regard thereto shall be governed by the provisions of this Act concerning the issuance of bonds insofar as such provisions shall be applicable.

Refunding bonds issued under this Section may be sold or exchanged for outstanding bonds issued under this Act, and, if sold, the proceeds thereof may be applied, in addition to any other authorized purpose, to the purchase, redemption or payment of such outstanding bonds in effect, and may be invested pending such application. Refunding bonds may be issued, at the Authority's discretion at any time, on or before the date of maturity or maturities, or the date selected for the redemption of the bonds being refunded.

Section 10.—Tax Exemption.

(a) It is resolved and declared that the purposes for which the Authority is created and shall exercise its powers are public purposes for the benefit of the people of Puerto Rico, and the exercise of the powers conferred under this Act constitutes the performance of essential government functions.

The Authority shall be exempt from the payment of all taxes, permits, fees or licenses imposed by the Commonwealth or its municipalities on the properties of the Authority and those under

196

June 21  INFRASTRUCTURE FINANCING AUTHORITY Act No. 44

the jurisdiction, authority, control, domain, possession or supervision of the Authority and on the income derived from any of the Authority's undertakings or activities. The Authority shall pay excise taxes on articles subject to the provisions of Act No. 5 of October 8, 1987, known as the Excise Tax Act of 1987 of the Commonwealth of Puerto Rico.

(b) In order to facilitate the procurement of funds to enable it to carry out its corporate purposes, the bonds issued by the Authority under the provisions of this Act, their transfer and the income therefrom, including any gains obtained from their sale, shall be and at all times remain exempt from the payment of all taxes, licenses or fees levied by the Commonwealth or any of its municipalities.

(c) The Authority or any benefited entity shall also be exempt from the payment of all kinds of charges, internal revenue stamps and receipts, fees or taxes required by law for the prosecution of judicial proceedings, the issuing of certifications in all offices and dependencies of the Commonwealth, and the execution of public documents and their registration in any public registry of the Commonwealth.

Section 11.—The Commonwealth and Its Political Subdivisions Not Liable for Bonds; Authority Not Liable to Holders of Other Obligations nor to Third Parties.

The bonds issued by the Authority shall not constitute an indebtedness of the Commonwealth nor of any of its political subdivisions, and neither the Commonwealth nor any of its political subdivisions shall be liable therefor, and such bonds shall be payable solely out of those funds pledged for the payment thereof.

The Authority shall not be deemed to be acting on behalf of or to have incurred any obligation to the holders of any indebtedness of the Commonwealth or any benefited entity or to third parties, even when the Authority has taken any action under this Act which affects such benefited entity.

Section 12.—Trust Agreement.

In the discretion of the Authority, any bonds issued under the provisions of this Act shall be secured by a trust agreement by and between the Authority and any bank or trust company described in the following paragraph, which may be a bank or trust company within or without the Commonwealth. Notwithstanding any provision of law to the contrary, said trust agreement need not be

197

Act No. 44  4th REGULAR SESSION—10th ASSEMBLY  **June 21**

constituted pursuant to a public deed in order to be a valid trust under the laws of the Commonwealth.

It shall be lawful for any bank or trust company incorporated under the laws of the Commonwealth, the United States of America or any state of the United States of America which may act as depositary of the proceeds of the bonds, revenues or other moneys, to provide such indemnity bonds or to pledge such securities as may be required by the Authority. In addition to the above, the trust agreement may contain all such provisions as the Authority may deem reasonable and proper for the protection of the bondholders.

Section 13.—Transfers, Assistance and Fees Paid by Other Benefited Entities.

Subject to the provisions of trust agreements, resolutions or other agreements in effect on the effective date of this Act, any benefited entity is authorized to:

(a) Assign and transfer to the Authority, at its request and upon such terms and conditions as the parties may agree, any property or interest therein, including property already devoted to public use which the Authority may deem necessary or convenient to achieve its purposes. Every assignment or transfer of property pursuant to the provisions of this clause shall be previously approved by the Governor of Puerto Rico and notified to the Legislature, no later than five (5) working days after the date on which the Governor approves the assignment or transfer of the property in question, by filing with the Office of the Secretary of each Legislative Body, a document certified by the Secretary of the Board containing a description of the assigned or transferred property and the reasons for such transfer or assignment.

(b) Pledge its revenues and other property for the payment of bonds issued by the Authority.

(c) Render all types of services to the Authority, including those of its officers, agents and employees to assist it in performing its functions and duties under this Act. In performing its functions as authorized under this Act, the Authority is empowered to set and charge fees for its services rendered to the benefited entity and the latter shall be responsible for the payment of such fees and the reimbursement of any costs incurred by the Authority in providing services to the benefited entity.

Section 14.—Covenant of Commonwealth with Bondholders.

The Commonwealth pledges and agrees with the holders of any

bonds issued under this Act, and with those persons or entities that enter into contracts with the Authority, pursuant to the provisions hereof, that it shall not limit or alter the rights hereby conferred to the Authority until such bonds and the interest thereon are paid in full and such contracts are fully performed and honored on the part of the Authority; provided, however, that nothing provided herein shall affect or alter such limitation if adequate measures are provided by law for the protection of said holders of the Authority's bonds or of those who have entered into such contracts with the Authority. The Authority, as an agent of the Commonwealth, is hereby authorized to include this pledge on behalf of the Commonwealth on such bonds or contracts.

Section 15.—Special Deposit for the Benefit of the Authority.

During the next thirty (30) fiscal years, commencing with the 1988-89 fiscal year, notwithstanding the provisions of Section 29A of Act No. 143 of June 30, 1969 as amended, the first proceeds of the federal excise taxes remitted to the Department of the Treasury of Puerto Rico in each one of said fiscal years, pursuant to Section 7652(a) (3) of the United States Internal Revenue Code of 1986, as amended, and up to a maximum amount of thirty million dollars ($30,000,000), in the case of the 1988-89 fiscal year, and of forty million dollars ($40,000,000), in the case of each of the following twenty-nine (29) fiscal years, shall be transferred upon receipt by the Department of the Treasury of Puerto Rico into a Special Fund to be maintained by or on behalf of the Authority, to be designated as the "Puerto Rico Infrastructure Fund" and to be used by the Authority for its corporate purposes. In case the proceeds of said federal excise taxes shall be insufficient to cover the amount appropriated herein, of thirty million dollars ($30,000,000) for fiscal year 1988-89 and of forty million dollars ($40,000,000) for each of the following twenty-nine (29) years, the Authority shall request and the Director of the Office of the Budget and Management shall include in the recommended budget for the corresponding fiscal year the appropriations needed to cover such deficiencies.

The Authority is hereby empowered to segregate a portion of said funds into one or more subaccounts and to pledge all or a part of said funds in one or more subaccounts, subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico, for the payment of the principal of and interest on bonds and other obligations of the Authority or for the payment

Act No. 44  4th REGULAR SESSION—10th ASSEMBLY     **June 21**

of bonds and other obligations issued by a benefited entity, or for any other legal purpose of the Authority. The moneys of the special fund shall be used for the payment of interest and for the amortization of the public debt of the Commonwealth, as provided in said Section 8, only when the other resources available, referred to in said Section, are insufficient for such purposes.

Section 16.—Puerto Rico Water Pollution Control Revolving Fund.

A revolving fund is hereby established with the Authority to be known as the "Puerto Rico Water Pollution Control Revolving Fund", to be constituted separately and independently from any other funds or resources of the Commonwealth in accordance with the provisions of, and for the exclusive purposes set forth in Title VI of the Clean Water Act. The Authority shall administer the Revolving Fund in accordance with Title VI of the Clean Water Act and in furtherance thereof shall, without it being understood as a limitation, be empowered to apply for, accept and receive all capitalization grants thereunder, enter into capitalization grant agreements with the United States Environmental Protection Agency, receive Commonwealth matching funds required under Title VI of the Clean Water Act, deposit such grants and matching funds in the Revolving Fund, enter into loan agreements and lend the moneys deposited in the Revolving Fund to borrowers qualifying under Title VI of the Clean Water Act, or use such moneys in any other way permitted by said Act, monitor the use and repayment of moneys in the Revolving Fund by recipients, conduct environmental tests in accordance with the requirements of Title VI of the Clean Water Act and do any and all other things required under the Clean Water Act in connection with the administration of the Revolving Fund. The Authority may contract with any person to implement its environmental tests and perform other responsibilities under this Section.

Section 17.—Reports.

The Authority shall render to the Legislature and the Governor of Puerto Rico, a quarterly report which shall include the following.

(a) A financial statement and complete report of the business of the Authority for the preceding quarter.

(b) A complete and detailed description of all its contracts and transactions for the quarter corresponding to the report.

June 21   INFRASTRUCTURE FINANCING AUTHORITY Act No. 44

(c) Complete information on the status and progress of all its financings and activities up to the date of its last report.

Section 18.—Legislative Monitor

Due to the nature of the exceptional faculties and powers conferred upon the Authority by this Act and the pressing public interest of everything related to Puerto Rico's infrastructure facilities, the Legislature by agreement of the Presidents of each Body thereof, shall designate a qualified natural or juridical person to inform the Legislative Assembly of the progress and resolution of the problems which this Act attempts to address through the Authority's interaction with any benefited entity.

The Authority and each benefited entity shall be obligated to furnish to the Legislative Monitor copies of the documents, registers, books or accounts concerning all matters leading to the Authority's intervention with the benefited entity. They will also allow the Legislative Monitor, after due notice from the latter, to inspect the infrastructure facilities of the benefited entity or those under the Authority's control. Likewise, they will provide copies of the documents, registers, books or accounts he may request free of charge. The provisions of this Section shall not be interpreted as a limitation of the broad investigative powers of the Legislature, and the specific functions, responsibilities and duties of the Legislative Monitor shall be established by the Legislature.

Section 19.—Funds and Accounts of Authority.

All moneys of the Authority shall be deposited in depositaries qualified to receive funds of the Commonwealth, but they shall be kept in a separate account or accounts in the name of the Authority. The disbursements shall be made by it pursuant to regulations and budgets approved by the Authority.

The Authority shall establish, pursuant to generally accepted accounting principles, the accounting system required for the proper statistical control and recording of all expenses and income belonging to, managed, or controlled by the Authority. The Authority's accounting records appropriately shall be kept in such manner so as to identify the accounts and maintain them separate, insofar as advisable, with regard to the different kinds of undertakings and activities of the Authority.

Section 20.—Bonds, Legal Investments and Collateral for Deposits.

The bonds of the Authority shall be lawful investments, and may

201

Act No. 44 4th REGULAR SESSION—10th ASSEMBLY    June 21

be accepted as collateral, for all fiduciary, trust, and public funds, whose investment or deposit shall be under the authority or control of the Government of Puerto Rico, or any officer or official thereof.

Section 21.—Penalties.

The directors, officers and employees of the Authority and of any benefited entity who, in the performance of their functions, duties and responsibilities under this Act are guilty of conduct classified as an offense against public office shall be subject to the applicable penalties established in Section Twelve of the Penal Code of the Commonwealth of Puerto Rico.

Section 22.—Effective Date

This Act shall take effect immediately after its approval.

---

## Fisheries Act—Amendment

(H.B. 639)

### [No. 45]

### *[Approved June 27, 1988]*

### AN ACT

To amend Section 11 of Act No. 83 of May 13, 1936 as amended, known as the "Fisheries Act" in order to increase the duration of the commercial fisherman's license from one (1) year to four (4) years.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Section 11 of Act No. 83 of May 13, 1936 as amended,[89] is hereby amended to read as follows:

"Section 11.—Validity of Licenses.—All licenses mentioned in this Act shall be valid for one year, and shall be effective on the first of July of each year and shall expire on June 30 of the following year, and shall be renewed annually, except for the commercial fisherman's license which shall be valid for a four (4)-year term which shall be computed as of the date of issuance and shall be

---

[89] 12 L.P.R.A. § 51.