# Debtors' Ex. 101

# *2014 PR H.B. 1591*

Enacted, January 24, 2014

**Reporter**
2014 PR ALS 18; 2014 PR LAWS 18; 2014 PR ACT 18; 2014 PR H.B. 1591

**Copyright © 2014 > SEVENTEENTH LEGISLATIVE ASSEMBLY--THIRD REGULAR SESSION > NO. 18 > HOUSE SUBSTITUTE FOR HOUSE BILL 1591**

## Synopsis

AN ACT

To create the "Municipal Administration Fund Act"; establish a special fund to be known as the "Municipal Administration Fund" (MAF), authorize municipalities to pledge the monies deposited in such Municipal Administration Fund corresponding to them to guarantee the repayment of any loan, bond, note, or other evidence of debt whose repayment source is the monies deposited therein and to defray any budgeted expense of the municipality and any activity or project thereof; authorize the Government Development Bank for Puerto Rico to make disbursements for the purposes set forth in this Act; amend subsection (b) of Section 4020.01; amend subsection (b) of Section 4020.02, and amend subsection (a) and repeal subsection (e) of Section 6080.14 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," in order to restructure the sales and use tax so that the State tax and Municipal tax is six percent (6%) and one percent (1%), respectively; to establish a tax advance mechanism for municipalities; and for other related purposes.

## Text

STATEMENT OF MOTIVES

The purposes of this measure are, firstly, to strengthen the financial capacity of the Puerto Rico Sales Tax Financing Corporation (COFINA, Spanish acronym) created by virtue of Act No. 91-2006, as amended, known as the "Dedicated Sales Tax Fund Act," by adjusting the State Sales and Use Tax (IVU, Spanish acronym) to six percent (6%) and reducing the Municipal sales and use tax to one percent (1%), as of February 1, 2014; secondly, to address the urgent need not to increase the projected deficit in the General Fund, which is necessary to keep our investment grade rating and strengthening our credibility before the investment market; and thirdly, to protect the financial stability of municipalities by establishing a mechanism whereby the same shall continue to receive the economic benefits of the revenues attributable to that zero point five percent (0.5%), notwithstanding the zero point five percent (0.5%) sales tax reduction provided in Act No. 40-2011.

Act No. 40-2013, as amended, known as the "Tax Burden Redistribution and Adjustment Act," made general amendments to various provisions of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico." Among others, Act No. 40-2013 amended Section 6080.14 in order to reduce the Municipal IVU rate in effect from one point five percent (1.5%) to one percent (1%), beginning on December 1, 2013. Subsequently, said Act was amended to postpone such tax rate reduction to February 1, 2014. This legislative piece provides for the creation of a mechanism whereby the revenues of the Sales and Use Tax to be received by the Commonwealth of Puerto Rico (hereinafter, the "Commonwealth") every fiscal year shall be deposited in a special fund created for the benefit of, and designated to municipalities, once the deposits to the Dedicated Sales Tax Fund required under Act No. 91-2006 are made. Such special fund shall be known as the "Municipal

Administration Fund" (hereinafter, the "MAF"), which shall be under the custody of the "Government Development Bank for Puerto Rico (hereinafter, the "Bank" or "GDB").

Every year, an amount equal to zero point five percent (0.5%) of the State IVU collected by the Commonwealth during the fiscal year shall be deposited in the MAF. The monies therein deposited shall originate from the IVU deposited in the financial institution acting as custodian of the State IVU revenues. Once the State IVU is deposited in the Dedicated Sales Tax Fund, as required by Act No. 91-2006, the Bank shall transfer the IVU revenues, up to an amount equal to zero point five percent (0.5%) of the State IVU collected during the fiscal year, to the MAF in the GDB so they can be allocated to municipalities. Such transfer shall be made without the intervention of the Department of the Treasury or the General Fund.

Finally, as recognized by credit rating agencies, this Administration has worked, and continues to work in the implementation of a comprehensive and ambitious economic plan which along with a fiscal stabilization plan, have laid the groundwork for a fast-paced and long-term economic growth. However, given the volatility of the financial markets and the pressing need of the Commonwealth to access capital markets to finance works and meet its obligations, it is necessary to take additional measures to reinforce the fiscal and financial conditions of the government. In view of the number of new revenue-raising measures approved by the Legislative Assembly for the 2013-2014 Fiscal Year's budget, it is also necessary to take measures to prevent a higher General Budget deficit than projected. Although by November 30, 2013, the General Fund revenues were nearly $ 78 million above the forecast for said period, given the market and credit rating agencies approach on the Commonwealth's ability to keep its revenues and expenses within the passed budget, it is imperative to pass measures that ensure the health of the General Fund, which, in turn, would allow the Government to continue operating normally.

*BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:*

**Article 1.-** To create the Municipal Administration Fund Act.

**Section 1.- Title.-**

This Act shall be known as the "Municipal Administration Fund Act."

**Section 2.- Creation of the Fund.-**

(a) A Special Fund, to be known as the "Municipal Administration Fund" ("MAF"), is hereby created to be administered by and under the custody of the Government Development Bank for Puerto Rico ("GDB"). Except for the transitory period between February 1, 2014, and June 30, 2014, the revenues of the State IVU received every fiscal year by the Commonwealth of Puerto Rico ("Commonwealth") shall be deposited into said special fund, once the Fixed Income is deposited in the Dedicated Sales Tax Fund, as required under §§ 11a-16 of Title 13, as amended, known as the "Dedicated Sales Tax Fund Act". The amount to be deposited every fiscal year in said special fund shall be the product of the amount of the State IVU collected during the current fiscal year multiplied by a fraction whose numerator shall be zero point five percent (0.5%) and whose denominator shall be the rate of such tax during such fiscal year (the "required annual deposit"). Deposits to this special fund shall be made: (1) after an amount which bears the same ratio to the required annual deposit accumulated once the fixed income has been deposited in the Dedicated Sales Tax Fund, as required under §§ 11a-16 of Title 13, is deposited from the first revenues of the State IVU; and (2) after such amount is deposited, periodically every month, by the financial institution acting as custodian of the revenues of the State IVU imposed by the Commonwealth. If the Commonwealth fails to comply with the provisions of this paragraph, it shall pay the MAF an interest equal to the interest established in § 32126(e) of Title 13.

(b) During the transitory period between February 1, 2014, and June 30, 2014, the Commonwealth shall deposit (from the funds of the State IVU, including the transfer of the municipal zero point five percent (0.5%) to the Commonwealth established under this chapter) the sum of forty-three million four hundred forty thousand one hundred eighty-four dollars ($ 43,440,184). Provided, That such amount shall be

distributed among the funds as provided in §§ 32127--32129 of Title 13, and to municipalities in the same proportion as during the period between February 1, 2013, and June 30, 2013. The Commonwealth shall make the monthly deposits to the funds established in §§ 32127--32129 of Title 13, in the same proportion that such municipal funds were deposited during the period between February 1, 2013, and June 30, 2013. The municipalities shall have no obligation whatsoever to return the funds to be deposited by the Commonwealth under this subsection.

**Section 3.- Purpose of the Fund.-**

(a) Beginning on July 1, 2014, the funds transferred to the MAF as provided in § 6741 of this title shall be distributed to the municipalities in the manner provided below. Such distribution shall be made automatically without the need for further action by the GDB.

(1) An amount equal to forty percent (40%) of the zero point five percent (0.5%) of the State IVU deposited in the MAF shall be transferred to the Municipal Development Fund of each municipality and distributed in accordance with § 32127 of Title 13. Notwithstanding the foregoing, in the case of those municipalities that have availed themselves of the exception provided in § 6743 of this title and have permanently waived the Municipal Development Fund distribution corresponding to them as provided in § 32127 of Title 13, the Municipal Development Fund distribution corresponding to such municipality shall be redistributed among those municipalities that have not availed themselves of the exception provided in § 6743 of this title.

(2) An amount equal to forty percent (40%) of the zero point five percent (0.5%) of the State IVU deposited in the MAF shall be transferred to the Municipal Redemption Fund of each municipality and distributed in accordance with § 32128 of Title 13. Notwithstanding the foregoing, in the case of those municipalities that have not availed themselves of the exception provided in § 6743 of this title and have not permanently waived the Municipal Development Fund distribution corresponding to them as provided in § 32127 of Title 13, the amount corresponding to their Municipal Redemption Fund shall be deposited directly into their general fund as received. At their discretion, and if they deem so convenient, any portion of the funds corresponding to municipalities may also be transferred to their general fund to contribute such amount to their Municipal Redemption Fund, in accordance with § 32128 of Title 13. Thus, they can increase their credit capacity and/or cover any deficiency in the Redemption Fund to service municipal debts, provided that such municipalities deposit at least ninety percent (90%) of the Municipal IVU in their general fund. Such transfer shall be made as provided in the regulations to be adopted by the GDB.

(3) An amount equal to twenty percent (20%) of the zero point five percent (0.5%) of the State IVU deposited in the MAF shall be transferred to the Municipal Improvement Fund of each municipality and distributed in accordance with § 32129 of Title 13. If, as a result of an insufficiency in municipal tax revenues for any fiscal year, the "Municipal Finance Corporation" (COFIM, Spanish acronym) debt service exceeds: (a) the product of (X) the amount of Municipal IVU collected during the preceding fiscal year multiplied by (Y) a fraction whose numerator shall be zero point three percent (0.03%) and whose denominator shall be the Municipal IVU rate (COFIM's deficiency), the funds deposited in the MAF to be allocated to the Municipal Improvement Fund shall be reduced by COFIM's deficiency, and such deficiency shall be distributed in favor of municipalities according to the proportion of total revenues represented by the portion collected by each municipality. The total funds remaining in the Municipal Improvement Fund after deducting the portion used to cover the Deficiency shall be distributed by means of legislation as provided in § 32129 of Title 13.

(b) Notwithstanding subsection (a) of this section and any other applicable law, the distribution from the Redemption Fund and/or the Municipal Development Fund corresponding to any municipality shall be reduced as provided below:

(1) First, with regards to all municipalities, if there are any outstanding advances made in accordance with the Enabling Act of COFIM, such outstanding advances corresponding to a municipality shall first be reimbursed to the GDB, and

**(2)** once the outstanding advances are reimbursed to the GDB, municipalities that have not availed themselves of the exception provided in § 6743 of this title and have not permanently waived the Development Fund distribution corresponding to them, as provided in § 32127 of Title 13, shall have the amount corresponding to them reduced by an amount equal to the debt servicing of such municipality transferred to, and refinanced by, COFIM that is in excess of such municipality's contribution from their Municipal IVU to pay COFIM's debt service ("Municipal Deficiency"). The amount deducted from any municipality as a result of a Municipal Deficiency, if any, shall, for any period in question, be distributed and deposited as provided below:

**(A)** first, in the general fund of municipalities that have not availed themselves of the exception provided in § 6743 of this title, whose Municipal IVU contribution to pay COFIM's debt service was in excess of the debt service of such municipalities transferred to, and refinanced by COFIM, and that have not been otherwise compensated by COFIM and this chapter; and

**(B)** if there were an excess after such compensation, in the general fund of municipalities whose Municipal Deficiency has been covered by COFIM and this chapter, in proportion to their Municipal IVU revenues.

**Section 4.-  Exception by choice.-**

As of July 1, 2014, municipalities at their discretion may choose to:

**(a)** Receive advances twice a year, which shall consist of the estimated revenues of the following six (6) months based on that same period during the immediately preceding year, which shall never be later than July and January 10 of each year, subject to the conditions and penalties of the Municipal Finance Corporation Act, §§ 6751 et seq. of this title;

**(b)** semiannually withdraw any excess available in the Municipal Redemption Fund, as defined in subsection (ii) of Section 3 of this Act[sic], once the debt service payment is made,

**(c)** if the GDB refinances any existing loans whose source of repayment or guarantee is forty percent (40%) of the zero point five percent (0.5%) of the State IVU provided in § 6741 of this title, the GDB shall assume any increase in the interest rate, but only until such obligations become due, and

**(d)** require priority in the distributions of revenues from the one percent (1%) Municipal IVU after the COFIM's "fixed income" payment is made, subject to the following two conditions:

**(1)** To assign to the municipalities that chose not to exercise this option the amounts of the Municipal Development Fund corresponding to forty percent (40%) of the zero point five percent (0.5%) of the State IVU referred to in subsection (i) of Section 3 of this Act[sic], and

**(2)** to refrain from resorting to the GDB to obtain loans backed or pledged by the revenues generated by the Municipal IVU. In order for a municipality to avail itself of this option, it shall sign an agreement with the GDB after the approval of this act, but prior to its effective date of February 1, 2014.

**Section 5.-  Responsibility of the Fund.-**

The President of the GDB shall be the official responsible for establishing and implementing all the procedures to be followed in the administration of the MAF and the advances provided in this chapter.

**Section 6.-  Guarantee and authority to cover deficiencies.-**

If the amount of the revenues deposited in the MAF is, at the close of any fiscal year, lower than the required annual deposit for said fiscal year, the necessary appropriations to cover such deficiency shall be included in the recommended budget for the following fiscal year. Therefore, the Secretary of the Treasury shall, exclusively and with priority, cover any existing deficiency so that the amounts deposited in the MAF during any fiscal year are equal to the amount that must be deposited in the Fund as provided in § 6741 of this title.

**Article 2.-** Subsection (b) of Section 4020.01 of Act No. 1-2011, as amended, is hereby amended to read as follows:

"**Section 4020.01.- Sales tax.-**

  **(a)** …

  **(b)** The tax rate shall be five point five percent (5.5%) of the sales price of the taxable item and combined transactions; provided, that as of February 1, 2014, the tax rate shall be six percent (6%) of the sales price of the taxable item and combined transactions."

**Article 3.-** Subsection (b) of Section 4020.02 of Act No. 1-2011, as amended, is hereby amended to read as follows:

"**Section 4020.02.- Use tax.-**

  **(a)** …

  **(b)** The tax rate shall be five point five percent (5.5%) of the purchase price of the taxable item; provided that, as of February 1st, 2014, the tax rate shall be six percent (6%) of the sales price of the taxable item and combined transactions."

**Article 4.-** Subsection (a) is hereby amended and subsection (e) is hereby repealed in Section 6080.14 of Act No. 1-2011, as amended, to read as follows:

"**Section 6080.14.- Municipal imposition of sales and use tax.-**

  **(a) Authorization and mandatory requirement.-**Beginning on February 1, 2014, until June 30, 2014, all municipalities shall uniformly and mandatorily impose a sales and use tax pursuant to the authorization established in § 32030 of this title. Such tax shall consist of a one percent (1%) fixed tax rate to be collected by municipalities. The one percent (1%) tax rate to be collected by municipalities shall be imposed pursuant to the same base, exemptions, and limitations provided in §§ 32001 et seq. of this title, except for the exemptions provided in this section.

  For periods beginning on July 1, 2014, the one percent (1%) fixed tax rate shall be collected in full by the municipalities or fiduciaries to be designated in accordance with this subtitle.

  **(1)** Municipalities, upon approval by the Municipal Legislature, may discretionarily impose the one percent (1%) tax on food products and food product ingredients as defined in § 32001(a) of this title. Provided, That in the case of municipalities that had in effect an ordinance issued by the Municipal Legislature empowering them to impose a tax on food products and food product ingredients, such ordinances shall remain in effect until June 30, 2014.

  Beginning on July 1, 2014, municipalities shall impose a one percent (1%) tax on food products and food product ingredients, as defined in § 32001(a) of this title.

  **(2) Credit provided by § 32124 of this title.-**

    **(A)** The manner in which the portion of the credit provided in § 32124 of this title against the one percent (1%) tax collected by municipalities by virtue of this section shall be prescribed by the Secretary through regulations.

  **(3)** …

  **(4)** …

  **(b)** …

**(c)** …

**(d)** ..."

### Article 5.- Severability.-

If any article, subsection, paragraph, subparagraph, clause, subclause, or part of this Act were held to be null or unconstitutional by a court with competent jurisdiction, such holding shall not affect, impair, or invalidate the remaining provisions and parts of this Act.

### Article 6.- Effectiveness.-

This Act shall take effect on February 1, 2014.

# History

Approved January 24, 2014

Copyright © 2014
by THE SECRETARY OF STATE OF PUERTO RICO for THE COMMONWEALTH OF PUERTO RICO All rights reserved PUERTO RICO ADVANCE LEGISLATIVE SERVICE Official English Translation: Materials added to this file as received from Translation Bureau

**End of Document**