# Debtors' Ex. 104

(H. B. 1648)
(Conference)

## (No. 41)

(Approved July 22, 2009)

## AN ACT

To adopt the "Puerto Rico Proper Scrap Tire Management Act" and to repeal Act No. 171 of August 31, 1996, as amended, known as the "Tire Management Act."

### STATEMENT OF MOTIVES

Proper scrap tire management has been one of the great challenges of the Solid Waste Disposal Authority, which is the government instrumentality responsible for establishing the public policy on waste disposal in Puerto Rico. It is estimated that around 18,000 tires are discarded on a daily basis, which equals to 4.7 millions annually.

Act No. 171 of August 31, 1996, as amended, known as the "Tire Management Act," was the first special law approved to manage such material and to promote the use thereof in the manufacture of new products, as well as to prohibit the disposal thereof in the sanitary landfills of the Island. Said legislation contributed to the creation and establishment of an industry of scrap tire haulers, processors, exporters, recyclers and end-use facilities.

However, nearly twelve (12) years after its approval, new situations and issues have arisen that said legislation either failed to address or that need to be clarified. One of the main situations is the claim by the different sectors of the tire management industry for the tire management

environmental fee to be tempered with the actual costs of the material and to be in harmony with the same. On the other hand, in view of the growth experienced by the tire management industry, it is necessary to lay a more effective groundwork for paperwork verification and oversight.  For all of the foregoing, this legislative piece is geared toward addressing said needs thus strengthening the proper scrap tire management industry. This can be achieved by substituting the tire counting method with a weighting method, which, in turn, would allow for a more efficient tire management and oversight.  Furthermore, the number of agencies involved in the process is reduced in order for its implementation to be more effective.

Likewise, the fact that the use of the material originating from scrap tires can be diverse and varied is so acknowledged. Such material may be used as raw material to manufacture other products, such as rubber asphalt and molded products like aggregates in nonstructural civil engineering projects, such as:  gardening uses, storm sewer systems, construction works, and erosion control. It can also be used as supplementary fuel. All these alternatives are useful and valuable to the modern Puerto Rican society.

For this reason, the adoption of a new legislation for tire management and the repeal of Act No. 171, *supra*, are hereby proposed. This legislation promotes the strengthening of the tire management industry and provides more oversight tools for the agencies in charge of watching over the compliance therewith, so that, at the same time, the environmental fund is in better financial health, thus achieving the proper disposal and management of this kind of material.

### *BE IT ENACTED BY THE LEGISLATURE OF PUERTO RICO:*

**Section 1.- Title**:

This Act shall be known as the "Puerto Rico Proper Scrap Tire Management Act."

**Section 2.- Definitions**:

The following words or terms shall have the meaning stated below whenever they are used or referred to in this Act, except when the context clearly indicates otherwise:

a.   Scrap Tire Warehouseperson – A person who collects and stores scrap tires in his/her place of business.

b.   Authority – Means Solid Waste Authority created under Act No. 70 of June 23, 1978, as amended.

c.   Crumb Rubber - Crushed tire without metal content measuring a quarter of an inch (1/4") or less. Usable as intermediate product or raw material for asphalt, rubber based end products, to surface children's playgrounds, among other purposes.

d.   Tire Chips - Processed tire pieces measuring more than a quarter of an inch (1/4"), but less than three inches (3"). It may be used as Tire Derived Fuel, concrete additive in nonstructural uses, and as raw material for crumbed rubber, among others. This is not an end-use product, but rather an intermediate product or raw material.

e.   Tire-derived Fuel - Whole tires or tire chips which are used due to their heat generating value in industrial combustion processes. The use thereof as fuel is not deemed to be recycling.

f.  Intermunicipal Agreements - Agreements by and between municipalities to jointly develop the municipal duties established through this legislation.

g.  DACO (Spanish Acronym) - Means the Department of Consumer's Affairs created under Act No. 5 of April 23, 1973, as amended.

h.  Distributor - Any person who is bound to distribute the product of a tire manufacturer or seller in Puerto Rico.

i.  Tire Exporter - Any person who receives, collects, and/or handles whole scrap tires to be recycled or disposed of in facilities outside of Puerto Rico or any person who exports processed or crumbled tires.

j.  Invoice – The document adopted or approved by the Authority which shall be used to process payments for the work carried out by haulers, processors, exporters, end-use facilities and recyclers. Such document shall contain, among other things, the scrap tires in pounds, whether whole or processed, and its origin, if so required.

k.  Fund – The Proper Scrap Tire Management Fund to be administered by the Solid Waste Authority is nourished from the money collected from the disposal fee imposed on tires, whether these tires are imported or manufactured in Puerto Rico.

l.  Government of Puerto Rico - Shall include the Commonwealth of Puerto Rico and the departments, agencies, instrumentalities, and municipal governments thereof.

m.  Tire Importer - Any person who receives or imports new or used tires to Puerto Rico for the distribution, sale, use or final disposal thereof. It includes any person who imports tires as part of a vehicle or motor vehicle.

n.  End-Use Facility - Any facility that, according to the activity conducted, may certify the end-use of tires, whether to be used as an energy source or for non-structural uses. Such end-use facilities engaged in the use of tires as energy sources shall not act as haulers.

o.  Board – Shall mean The Environmental Quality Board, a government entity created by virtue of Act No. 416 of September 22, 2004, as amended.

p.  Tire Importer License - An authorization issued by the Solid Waste Authority to every importer of new and used tires which shall credit him/her as a bona fide entity to import tires and do business in Puerto Rico.

q.  Manufacturer License - An authorization issued by the Solid Waste Authority to every tire manufacturer within the Commonwealth of Puerto Rico, which shall credit him/her as a bona fide entity to manufacture tires and do business in Puerto Rico.

r.  Manifest - Such document adopted by the Authority and produced by the hauler that shall state the origin, route, and final destination of tires, as well as the amount of scrap tires handled and transported to a processing, exporting, and/or final disposal facility.

s.  Tire Manufacturer - The person within the jurisdiction of the Commonwealth of Puerto Rico who is engaged in tire manufacturing.

t.  Tire - Tire or rubber cushion, whether from natural or synthetic rubber, which is inflatable with air or other substance, thus allowing a vehicle or motor vehicle to move. It includes solid and rimless tires that are usually manufactured with a natural or synthetic rubber base and other combination of materials.

u.  Scrap Tire - A tire which has lost its worth or use for its originally intended purpose, whether due to use, damage or defect.

v.  Public Works - Any construction, reconstruction, alteration, extension or improvement work carried out by means of an administration, private contract or awarded to a subcontractor by the Government of Puerto Rico, its municipalities or public corporations.

w.  Person - A natural or juridical person, whether public or private, and any group thereof.

x.  Permit - Approval issued by the Board, whether for the operation of scrap tire transportation, processing, export, recycling or end-use service facility.

y.  Scrap Tire Processor - Person authorized by the Environmental Quality Board who carries out the partial, physical or chemical transformation process of scrap tire matter through crushing, crumbling or other means other than recycling. The scrap tire

processor may act as tire hauler or recycler, provided that he/she complies with the requirements set forth in this Act and the applicable Regulations.

z.    Retreading - Process whereby a worn out tire is fit with a new tread thus outfitting it for use.

aa.   Scrap Tire Recycler - The person authorized by the Environmental Quality Board to intervene in the transformation process of scrap tire matter to produce new products. The scrap tire recycler may also act as processor or hauler, provided that he/she complies with the requirements established in this Act.  It shall not include power recovery facilities.

bb.   Scrap Tire Hauler - Any person authorized by the Board to receive, pick up, and transport whole scrap tires to processing, recycling or end-use facilities, according to specifications of the facilities or for export. The municipalities may act as haulers, provided that they comply with the requirements established by the Board. Scrap tire haulers may act as tire recyclers or processors, provided that they comply with the requirements set forth in this Act and the applicable Regulations.

cc.   Nonstructural Use - The use of scrap tires or tire chips or crumb rubber as an aggregated in engineering works that supports a structural load of less than three thousand (3,000) pounds of pressure per square inch, such as: sidewalks, curbs, cemetery niches and graves, retaining and architectural walls, flower-boxes, sound-control and impact barriers, ground erosion control, boundary fences, construction of dikes for lagoons, among others, as accepted by the American Society for Testing

and Materials (ASTM).  For said uses, the tire chips may be substituted with construction aggregates from the earth cortex. The Authority shall authorize the nonstructural use of tires without curtailing any other government approval that may apply according to the proposed activity.

dd.  Vehicle - Means any device in which or whereby any property is, or may be transported or carried on public thoroughfares, except for those used exclusively on railroad tracks.

ee.  Motor Vehicle - Means any self-propelled vehicle including the following or similar vehicles which use tires:

    1.  Tractors.

    2.  Steamrollers.

    3.  Backhoes.

    4.  Specialized road-construction equipment.

    5.  Deep-wells drilling equipment.

    6.  Vehicles that move on rails, by sea or air.

ff.  Tire Salesperson - Means the person who sells new or used tires.

**Section 3.- Statement of Public Policy.**

The public policy of the Government of the Commonwealth of Puerto Rico is geared toward reducing the volume of solid waste that is finally disposed of in authorized solid waste disposal facilities by employing alternatives such as recycling and/or using it as raw material that has an economic value within the market. As part of this policy, a program shall be implemented to control the final disposal of tires in authorized solid waste disposal facilities and promote the establishment of tire recovery, processing and recycling systems, thus returning their value to the economy of the

Island through the manufacture of end products, and to use it as aggregate in nonstructural civil engineering projects or fuel. The attainment of free competition in the scrap tire transportation, processing, and recycling markets in Puerto Rico is of pressing public interest. This is the manner to develop enough participants and the demand in such markets so as to enable them to absorb the supply of scrap tires in Puerto Rico. Likewise, the Government of Puerto Rico's demand for scrap tire products and works shall be promoted.

The following is hereby provided for the implementation of the abovestated public policy:

a. To establish a proper scrap tire management program.

b. To establish the proper scrap tire management fund through the tire management and disposal fee.

c. To promote the creation of scrap tire recycling industries in Puerto Rico.

d. To promote the scrap tire end-use as defined in this Act.

e. To promote the development of markets in Puerto Rico that use scrap tires by-products as raw material.

f. To establish controls for the storage of scrap tires.

g. To establish penalties for noncompliance with this Act.

h. To foster the construction of public works by the Government of Puerto Rico with construction materials made from scrap tires by-products from Puerto Rico.

i. To ensure free competition in the scrap tire transportation, processing, recycling, export, and end-use markets in Puerto Rico.

**Section 4. Powers and Functions.**

A. **Environmental Quality Board**:

    1. The Environmental Quality Board shall be responsible for overseeing and enforcing the environmental protection provisions set forth in this Act, its Organic Act, and Regulations, pursuant to its duties and authorities.

    2. Shall adopt or amend, if necessary, its regulations so as to implement, administer and enforce this Act, on or before three hundred (300) days as of the approval of this Act.

    3. Shall issue, modify or revoke permits issued by virtue of this Act, and shall verify, through inspections, environmental compliance of those scrap tire handling facilities.

    4. Shall require posting a bond or surety as a requirement for issuing permits to tire processors, exporters, haulers, recyclers and end-use facilities. The Board shall determine the amount of the bond or surety based, among other criteria, on the environmental hazard posed by the activity in the event of abandonment, fire, noncompliance with the terms of the permit, or other environmental disaster.

    5. When granting a dispensation to processors, recyclers, haulers and end-use facilities, as provided in Sections 9(F), 10(k), 11(L), and 12(I) of this Act, or when they are found to be in violation of their permits, the Board may request the Authority to freeze any funds that may belong to them, as provided in Section 15 of this Act, to ensure compliance with the terms under which the dispensation was granted, the permit, or any necessary remedial action.

6. Shall keep an updated list of warehousepersons, haulers, processors, exporters, end-use facilities holding valid permits and authorizations. Provided, that the Board shall share with the Solid Waste Authority and the Department of Transportation and Public Works the information collected on tire haulers and processors. The information shall be available to the public and through its web page.

B. **Solid Waste Authority**.

1. The Solid Waste Authority shall be responsible for coordinating the implementation of this Act within a period of three hundred (300) calendar days as of the approval of this Act.

2. The Authority shall coordinate the implementation of this Act, in harmony with Act No. 70 of June 23, 1978, as amended, known as the "Puerto Rico Solid Waste Authority Act," and Act No. 70 of September 18, 1992, as amended, known as the "Puerto Rico Solid Waste Reduction and Recycling Act."

3. In the event of an emergency situation, the Authority shall have the power to establish moratoria for compliance with the provisions set forth in this Act. The same may be coordinated by the Board.

4. The Authority shall collect from tire importers and manufacturers in Puerto Rico, the tire management and disposal fee set forth in Section 6 of this Act, and shall deposit the same in the Proper Scrap Tire Management Fund account which shall be under its administration.

5.   The Authority shall verify the net weight of all new or used
     tires, whether imported or manufactured in Puerto Rico, and
     shall determine the category and the number of tires in
     imported vehicles or motor vehicles, as well as the full
     payment of the corresponding fee therefor. To such effects,
     the Authority shall have the authority to inspect containers
     or cargo entering Puerto Rico, for the purpose of verifying
     whether these contain tires, so as to be able to enforce the
     provisions pertaining to tire licensing and to impose the
     management and disposal fee established in Section 6 of this
     Act, as well as to discharge the functions entrusted thereto
     under this Act.

6.   The Authority shall have access to the bills of lading,
     commercial invoices and, in the case of foreign imports, the
     form used by the United States Customs and Border
     Protection, which authorizes release thereof. The foregoing
     for the purpose of reviewing the amounts corresponding to
     the collections from the tire management and disposal fee
     set forth in Section 6 of this Act.

7.   The Authority shall issue a tire importer or manufacturer
     license for the purpose of certifying that the license holder is
     authorized to manufacture or import tires into Puerto Rico as
     part of his/her business. A fee of two thousand (2,000)
     dollars shall be paid for the license every two (2) years, as of
     the date in which it is issued.

8.   The Authority may deny, suspend or revoke the tire importer or manufacturer license to any person who fails to comply with the provisions of this Act and the regulations adopted thereunder, or both. The denial, suspension or revocation shall be governed pursuant to the provisions of Act No. 170 of August 12, 1988, as amended, known as "Uniform Administrative Procedures Act."

9.   The Authority shall conduct audits to verify the accuracy of the payment of the tire management and disposal fee, set forth in Section 6 of this Act.

10.  The Authority shall impose an annual ten percent (10%)-interest rate; as well as an additional ten percent (10%) late fee on the total amount of any insufficiency or deficiency regarding the payment of the tire management and disposal fee, set forth in Section 6 of this Act.

11.  The Authority, through emergency regulations or administrative orders issued by means of a public notice, shall adopt such transitory provisions as necessary to achieve the objectives of this Act.

12.  The Authority shall adopt, amend, or repeal such regulations, procedures or forms as necessary for the implementation of its powers and authorities under this Act, including, but not limited to licenses, fees, weighting systems, endorsement requirements, fines, and penalties. The regulations should be approved not later than three hundred (300) days as of the approval of this Act.

13. The Authority shall administer the Proper Scrap Tire Management Fund and the Emergency Scrap Tire Management Fund.

14. Failure to comply with this Act or its regulations may result in the retention of funds payable to any hauler, processor, recycler or end-use facility by the Authority, as set forth in Section 16 of this Act. Such retention shall be governed pursuant to the provisions of Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act."

15. The Authority shall be responsible for making payments to scrap tire haulers, exporters, processors, recyclers, and end-use facilities, pursuant to the fee schedule set forth by this Act and the regulations adopted by the Authority.

16. The Authority shall conduct all necessary administrative actions, including pre-intervention and auditing works on the invoices billed to the Proper Scrap Tire Management Fund.

17. The Authority, when deemed necessary, may review, modify, and redistribute the fee to be adopted in Section 6 of this Act, by virtue of Section 5(n) of Act No. 70 of June 23, 1978, as amended, known as the "Puerto Rico Solid Waste Authority Act." Furthermore, if deemed necessary, the Authority shall establish weight-based equivalencies for tires, tire chips, tire-derived fuel, crumb rubber or any other natural or synthetic rubber scrap tire by-product, as well as for the fee structure schedule.

18. The Authority shall ensure that all weighting systems (scales or steelyards) of processors, recyclers, exporters or end-use facilities are certified by DACO or the corresponding Agency. At the very least, one annual calibration certification of the systems shall be required. Furthermore, it shall also establish through regulations the method to be followed in the event that the weighting system breaks down, the term within which it shall be repaired, as well as the fines and penalties.

19. The Authority shall develop an educational program to raise awareness among citizens on the importance of the proper disposal of scrap tires.

20. The Authority shall designate inspectors to oversee compliance with the operating stage of this Act within the facilities of processors, exporters, as well as the end-use facilities or any other that may be deemed necessary.

C. **Municipalities**:

1. The municipalities, in coordination with the Environmental Quality Board, shall control and oversee compliance with the requirements set forth in this Act by any person who stores scrap tires or any tire salesperson who stores scrap tires.

2. The municipalities shall prepare a list of the tire warehousepersons who are within their territorial limits and submit it to the Authority and the Board within six (6) months from the approval of this Act, and subsequently, every six (6) months.

3. The municipalities shall coordinate with other municipalities, with scrap tires haulers, as well as with bona fide processors or end-use facilities for the management and disposal of scrap tires outside of their territorial limits, pursuant to the provisions of this Act.

4. The municipalities may approve ordinances pursuant to the provisions of this Act, to make the development, implementation, and compliance of tire management and disposal activities feasible. However, the Authority shall be consulted as to any ordinance related to the management and disposal of scrap tires or any other matter relative to this Act to ensure uniformity in the implementation of this Act, its public policy and the free competition in this industry. The Municipal Legislatures shall submit the ordinance bills to be evaluated by the Authority, which shall issue any comments with respect to them within thirty (30) working days as of the receipt thereof.

5. Ordinances that grant warehousepersons, haulers, recyclers, processors and exporters, exclusive rights to operate in a municipal jurisdiction are hereby prohibited. This prohibition shall be prospective in nature.

**Section 5.- Tire Importer and Manufacturer**

A. Any tire importer and manufacturer must obtain a license issued by the Authority.

B.   Any tire importer and manufacturer shall comply with the authorizations, permits, licenses, business licenses, and any other requirement from the corresponding Commonwealth, municipal or Federal Authorities.

C.   Any tire importer and manufacturer shall pay the tire management and disposal fee to be adopted on Section 6 of this Act, prior to the acquisition or sale of such tires, as the case may be. The fee shall be paid based on the weight of each tire, whether imported or manufactured, as the case may be.

D.   Any tire importer in Puerto Rico who fails to weight tire containers, vans or receptacles shall pay double the net weight thereof. This shall also apply to manufacturers when the sale of tires is completed.

E.   Any tire importer of manufacturer may post a bond or surety in the Authority on behalf of the Authority for the purpose of delaying the payment of the referred fee. The total amount of the bond or surety shall be determined by the Authority through regulations and shall include an additional twenty-five percent (25%) to guarantee the payment of interests, late fees, penalties, and fines, equal to the cost of management and total disposal of the imported or manufactured product.

F.   The Authority shall establish, through regulations, the sum to be paid for the tires on each imported vehicle or motor vehicle.

G.  No ocean freight carrier may dispatch merchandise without the release authorization issued by the Authority. Noncompliance with this norm shall result in the payment of the sum corresponding to the dispatched merchandise by the ocean freight carrier and the imposition of fine.

H.  Any tire importer that, in turn, imports tires weighting five hundred (500) pounds or more, shall be bound to receive from consumers those tires of the same weight sold and discarded and shall be responsible for properly disposing of them pursuant to this Act. The importer shall be responsible for defraying the costs for the proper management and disposal of such tires, pursuant to this Act. The tire importer shall inform the retail salesperson about this legal provision and may coordinate with him/her the receipt of such tires with the salesperson. Any sales invoice of such tires shall include the following, in writing: any tire weighting 500 pounds or more shall be managed and disposed of by the importer; therefore, at the time of their disposal, the tires may be returned to such company at no cost.

**Section 6.- Tire Management and Disposal Fee**

A fee shall be imposed on every imported tire, whether new or used or manufactured in Puerto Rico, based on its weight. Those imported tires which are part of any new or used vehicle or motor vehicle shall also be included. Solid tires with rims, tires weighting five hundred (500) pounds or more, and bicycle tires or similar tires are excluded from the provisions of

this Act. The management and disposal fee for each tire, whether imported or manufactured in Puerto Rico, as well as the fee for used imported tires to be retreaded shall be similar.

The Authority shall adopt the necessary regulations so as to fix a tire management and disposal fee once the tire is disposed of, based on the tire weight. Such fee shall take effect as of the effective date of this Act, the necessary regulations are adopted and the requirement for registration in the Department of State of the Commonwealth of Puerto Rico is met. The Authority shall submit a copy of the Fee Regulations to the Legislature prior to registration thereof in the Department of State.

The amount collected on account of the tire management and disposal fee, whether these tires are imported or manufactured in Puerto Rico, shall be covered into a special account in the Authority, which shall be known as the Proper Scrap Tire Management Fund. The Authority shall transfer the amount of the revenues corresponding to the Environmental Quality Board every three (3) months.

### Section 7.-Tire Salesperson

On or before one hundred and eighty (180) days as of the approval of this Act, all tire salespersons shall inform their clients through a visible and legible sign that every tire that is removed from an automobile for replacement shall remain in their facilities without any additional cost, in order to be processed or disposed of according to this Act.

**Section 8.- Scrap Tire Warehouseperson**

A.   The tire warehouseperson, whether a tire salesperson or other, shall not accumulate more than three hundred (300) scrap tires in his/her place of business unless he/she is, in turn, a hauler, a tire processing or end-use facility. Every scrap tire warehouseperson shall comply with the following provisions:

1.   Fire prevention safety measures.

2.   Sanitary provisions to prevent the propagation of mosquitoes, including without it being understood as a limitation, pesticide spraying.

3.   Tire accumulation in green areas is prohibited to avoid vectors.

4.   Measures to prevent water accumulation in tires.

5.   Such other measures established by the Board.

B.   Scrap tire warehousepersons shall be responsible for the periodic disposal of tires or when a maximum of three hundred (300) scrap tires are accumulated, whichever comes first, through tire haulers duly authorized to transfer them to processors, end-use facilities or exporters.

C.   Tire warehousepersons shall receive scrap tires dropped-off by citizens who have them in their homes, at no cost, in order to recycle or reuse such tires.

D.   The tire warehouseperson shall fill out a manifest on the approximate amount of tires generated and transferred to the hauler to be hauled to the recycling, processing, export or end-use facility. A copy of the manifest shall be referred to the Authority on a monthly basis.

**Section 9.-Tire Haulers**

A.   Is the person who receives, collects, handles and/or transports scrap tires to be taken to processing centers, end-use or export facilities according to the specifications of such facilities. Haulers shall be duly authorized by means of a permit issued by the Environmental Quality Board.

B.   Tires shall be taken by the haulers to authorized processing, export or end-use facilities that comply with the applicable laws and regulations.

C.   The scrap tire hauler shall ensure that the same are transported in a heavy truck or van, pursuant to the provisions of Sections 10(H), Section 11(I), and Section 13(F) when delivering to processing, export or end-use facilities. The hauler shall prepare his/her invoice based on the weight and fee schedule, pursuant to this Act and its regulations.

D.   The hauler shall forward to the Authority, on a weekly basis, copies of the scale receipts together with the net weight invoices so as to process the corresponding payment. It shall be required to attach the original manifests to the invoices, among other certifications, as may be required by the Authority.

E.   The Authority shall pay the hauler for the tires hauled to the processing, export and end-use facility, within the term established by the Authority through Regulation. The payment shall be made based on the net weigh of scrap tire load received.

F.  The hauler shall transfer the tires to a processor, exporter or-end use facility and may not accumulate more than the amount of tires established by the Board in his/her permit. The Board shall adopt, through regulations, the norms to establish the accumulation of tires by haulers, as well as the criteria to issue a dispensation on this matter. The payment shall only be made once per hauling to any of the said locations.

G.  Every processor, exporter or end-use facility shall be bound to receive and weight every load of tires from any hauler, during his/her working hours, holding the corresponding permits issued by the Board or other agencies of the Government of Puerto Rico. The processor, exporter or end-use facility shall take into account the provisions of subsection F of this Section when dealing with any request of such nature. It is expressly prohibited to processors, exporters or end-use facilities to impose any additional requirement to those already mentioned, which results more burdensome, in order to receive loads from haulers, except for public liability insurance.

H.  Exclusive contracts by and between haulers, warehousepersons, recyclers, processors, and exporters are hereby expressly prohibited. This prohibition shall be prospective in nature.

**Section 10.-Tire Processing Facilities**

A.  The tire processing facility shall obtain the corresponding permits shall meet all the requirements established in the laws and regulations of the Environmental Quality Board, the Solid Waste Authority, and the Commonwealth of Puerto Rico. The permit to establish a facility of this kind shall have the endorsement of the

Authority, which shall certify that the proposed activity shall be a tire processing activity, among other considerations. Furthermore, it shall comply with the bond or surety posting requirement as provided by Section 4 A (4) of this Act.

B. Any person requesting a permit before the Board for a processing facility, shall previously obtain the endorsement of the Authority for the proposed activity:

1. To obtain the endorsement of the Authority, the proponent shall submit the following information:

   a) Endorsement Request Letter or letter of intent, signed by the owner or his/her authorized representative.

   b) Explanatory memorial including, at least, the following requirements:

      i. Operating and rubber marketing plan with a thorough description of the activities whereby the entire logistics pertaining to the processing, marketing, and exporting is explained. The marketing plan shall include written agreements with final buyers and markets, through a letter of intent certified by the End-Use Facility for the acquisition of rubber generated in such facility.

      ii. In the event that a Scrap Tire Processor engages in the export of his/her production, whether in whole or in part, he/she shall submit an alternate plan with another final consignee, in the event that the main final disposal facility closes down.

    iii.   Specify where the processor facilities shall be located including the address, the land capacity, and the zoning classification of the area.

    iv.   Specify the approximate number of scrap tires to be processed on a daily basis, and the daily processing capacity of the equipment to be acquired.

    v.   Proof of the potential haulers who shall supply tires.

    vi.   The nature of the activity.

    vii.   Description of the process to receive tires in his/her facilities.

    viii.   The processing capacity of the equipment to be used.

    ix.   An inventory based on volume and weight, among others.

    x.   Facility's business hours.

    xi.   The information of the proponent, including a registration in the Department of State authorizing him/her to do business in Puerto Rico. In the event of an existing corporation or entity, it shall present a certificate of good standing.

C.   The processing facility shall have a copy of the permits required by the Commonwealth of Puerto Rico available for inspection at the time of starting its operations.

D.   The processing facility shall submit to the Authority the following:

    1.   The weighting report, in pounds, of the tires received in the facility together with copies of the haulers invoices.

2.  A report on the amount of processed tires in pounds.

3.  The provisions of paragraphs D(1) and D(2) shall be submitted bimonthly.

4.  A report or list of the persons or markets that use or acquire tire chips, crumb rubber, tire-derived fuel, as well as data on the use thereof, if it applies. This document shall be submitted annually or when required by the concerned entities.

5.  A permit duly approved by the Board within seven (7) days after its issue.

E.  The processing facility shall submit to the Authority proof of an updated safety plan.

F.  The processing facilities shall submit, annually or when required, to the Board and the Authority, a list of tire haulers registered in such facility.

G.  The processing facility shall be responsible for using an electronic weighting system with a reliable record and control mechanism containing the data, and with the capability to electronically transfer this information to the Authority. Furthermore, the same shall follow a regular calibration program, as per the recommendations of the manufacturer of such system, and may be certified by DACO or the corresponding agency at least annually.

H.  The processing facility shall weight any and all of the scrap tire loads received in the facility without charging for such weighting. The initial and final weight of the trucks or containers shall be the basis to determine the net weight of the tires to be

processed. In order to determine the initial weight, it may be used any other accurate measurement approved by another Commonwealth or federal agency regarding the type of transportation equipment used, which shall be provided for through regulations.

I. The processing facility shall sign and keep copies of the receipts or invoices on the amount of tires received from the hauler upon verifying that the information contained therein is correct.

J. The Authority shall adopt, through regulations, the method and payment term of the fee corresponding to the processing facility, pursuant to the stages carried out.

K. The processing facility shall transfer the tires to a recycler or an end-use facility and shall not accumulate more than the amount of tires established by the Board in permit thereof. The Board shall adopt, through regulations, the norms to determine the accumulation of tires for processors as well as the criteria to issue dispensations regarding this matter.

L. The processor shall keep signed copies of the invoices for a term of not less than five (5) years as of the date of origin.

M. Exclusive contracts by and between processors, recyclers, end-use facilities and municipalities are hereby prohibited.

N. Noncompliance by the processor with the permits issued by the Board, as well as with the terms of this Act or its regulations, shall entail the forfeiture of the bond or surety required by Section 4 A(4) of this Act, provided that the Board deems that the funds are necessary to correct the noncompliance with the permit by the processor.

**Section 11.- End-Use Facilities**

A.  The End-Use Facility shall obtain the corresponding permits and meet all the requirements established in the laws and regulations of the Environmental Quality Board, the Solid Waste Authority, the Commonwealth of Puerto Rico, and the Federal Government, if applicable. The permit to establish a facility of such kind shall have an endorsement of the Authority, which shall certify that the proposed activity is one of those mentioned in the definition of end-use facility of this Act, among other considerations.

B.  Any person who requests a permit before the Board for an end-use facility, may have previously obtained an endorsement of the Authority for the proposed activity:

1.  To obtain the endorsement of the Authority, the proponent shall submit the following information:

a)  Endorsement Request Letter or letter of intent, signed by the owner or his/her authorized representative.

b)  Explanatory memorial including, as a minimum, the following requirements:

i.  A plan whereby the nature and end-use facility activity shall be described in detail.

ii.  Operating plan of the facility.

iii.  Specify where the end-use facility shall be located including the address, the land capacity, and the zoning classification of the area.

iv.  Specify the approximate amount of scrap tires that shall be processed on a daily basis, and the daily processing capacity of the equipment to be acquired.

    v. An inventory based on volume and weight, among others.

    vi. End product marketing plan with the written agreement of buyers and markets to acquire the total amount of the production.

    vii. Facility's business hours.

    viii. Indicate the name and physical address of the suppliers of tires, whether in whole, crushed or granulated, needed by the company to conduct its main activity.

    ix. The information of the proponent, including registration in the Department of State authorizing him/her to do business in Puerto Rico. If it is an existing corporation or entity, it shall present a certificate of good standing.

C. The end-use facility shall have a copy of the permits required by the Commonwealth of Puerto Rico available for inspection after having started its operations.

D. The End-Use Facility shall submit to the Authority the following:

1. A bimonthly weighting report, in pounds, of the scrap tires received in the facility, whether in whole, crushed or crumbled. A report or list of the persons and markets that use the product resulting from the activity, as well as data on the use of the scrap tire by-product, if applicable. The report or list of persons and markets shall be submitted annually or when required.

    2.  A permit duly approved by the Board within seven (7) days after its issue.

E.  The End-Use Facility shall submit to the Board proof of an updated safety plan, annually or when required.

F.  The facility shall submit a list to the Authority of tire haulers or processors registered in such facility, annually or when required.

G.  For a term of not less than three (3) years, the facility shall sign and keep copies of the receipts and invoices of the amount of tires, in pounds, received from haulers or processors, after verifying that all the information contained therein is correct.

H.  The facility shall be responsible for using an electronic weighting system with a reliable record and control mechanism containing the data on the identification of each heavy truck or van, and with the capability to electronically transfer such information to the Authority. Furthermore, the facility shall follow a regular calibration program, as per the recommendations of the manufacturer of such system, and shall be certified by DACO or the corresponding agency at least annually.

I.  The facility shall weight any and all of the scrap tire loads received in the facility without charging for such weighting. The initial and final weight of the trucks or containers shall be the basis to determine the net weight of the received tires. In order to determine the initial weight, it may be used any other accurate measurement and approved by another Commonwealth or federal agency, regarding the type of transportation equipment used, which shall be provided for through regulations.

J.   The Authority shall pay the hauler for the tires transported to the end-use facility within the term established by the Authority through Regulations. The payment shall be made based on the net weight of the scrap tire load received, and the regulations to be adopted pursuant to Section 6.

K.   The Authority shall adopt, through regulations, the method and payment term of the fee corresponding to the end-use facility.

L.   The End-Use Facility may not accumulate more than the tire amount established by the Board in the permit thereof. The Board shall adopt, through regulations, the norms to determine the accumulation of tires for end-use facilities as well as the criteria to issue dispensations regarding this matter.

M.   The End-Use Facility shall keep signed copies of the invoices for a term of not less than five (5) years, as of the date of origin.

N.   Exclusive contracts by and between recyclers, end-use facilities, processors, and municipalities are hereby prohibited. This prohibition shall be prospective in nature.

O.   Noncompliance by the End-Use Facility with the permits issued by the Board, as well as with the terms of this Act or its regulations, shall entail the forfeiture of the bond or surety required by Section 4A(4) of this Act, if it is deemed that the funds are necessary to correct the noncompliance.

**Section 12.- Scrap Tire Recycler**

A.   The Scrap Tire Recycler shall obtain the corresponding permits and meet all the requirements established in the laws and regulations of the Environmental Quality Board, the Solid Waste Authority, the Commonwealth of Puerto Rico, and Federal

Agencies, if applies. The permit to establish a facility of such kind shall have an endorsement of the Authority, which shall certify that the proposed activity shall be a tire recycling activity, among other considerations, pursuant to this Act and Act No. 70 of September 18, 1992, as amended, known as the "Puerto Rico Solid Waste Reduction and Recycling Act."

B.  Any person requesting a permit from the Board for a recycling facility, may have previously obtained an endorsement of the Authority for the proposed activity:

1.  To obtain the endorsement from the Authority, the proponent shall submit the following information:

    a)  Endorsement Request Letter or Letter of Intent, signed by the owner or his/her authorized representative.

    b)  Explanatory memorial including, at least, the following requirements:

        i.  A plan whereby the nature and recycling activity is described in detail.

        ii.  Operating plan of the facility.

        iii.  Specify where the facility shall be located including the address, the land capacity, and the zoning classification of the area.

        iv.  Specify the amount of scrap tires to be processed daily, and the daily processing capacity of the equipment to be acquired, if applies.

        v.  An inventory based on volume and weight, among others.

vi. Marketing plan for the end product with the written agreement of the buyers and markets to acquire the entire production.

vii. Facility's business hours.

viii. Indicate the name and physical address of the tire suppliers needed by the company to conduct its main activity.

ix. The information of the proponent, including registration in the Department of State authorizing him/her to do business in Puerto Rico. In the case of an existing corporation or entity, it shall present a certificate of good standing.

C. The recycling facility shall have a copy of the permits required by the Commonwealth of Puerto Rico available for inspection after having started its operations.

D. The Scrap Tire Recycler shall submit to the Authority the following:

1. A bimonthly weighting report, in pounds, of scrap tires received in the facility for the manufacture of its product. The purchase receipt from the processor shall be attached to the report.

2. Show evidence that identifies end markets by means of executed agreements or letters of intent, if applicable.

3. A report or list of the persons and markets that use the product resulting from the activity, as well as data on the use of the tire by-product, if applicable.

4. The provisions of subsections D(2) and D(3), shall be submitted annually.

E. The Scrap Tire Recycler shall submit to the Board proof of an updated safety plan.

F. The Scrap Tire Recycler shall submit a list to the Authority annually and when required of the tire registered processors who supply the product.

G. For a term not less than five (5) years, the facility shall sign and keep copies of the receipts and invoices in the amount of tires, in pounds, received from processors, after verifying that all the information contained therein is correct.

H. The Authority shall adopt, through regulations, the method and payment term of the fee corresponding to the scrap tire recycler facility.

I. The Scrap Tire Recycler may not accumulate more than the amount of tires or their equivalent in pounds as established by the Board in its permit. The Board shall adopt, through regulations, the norms to determine the accumulation of tires for scrap tire recyclers as well as the criteria to issue dispensations regarding this matter.

J. The Scrap Tire Recycler shall keep signed copies of the invoices for a term of not less than five (5) years as of the date of origin.

K. Noncompliance by the Scrap Tire Recycler with the permits from the Board, as well as with the terms of this Act and of its regulations shall entail the forfeiture of the bond or surety required by Section 4 A(4) of this Act, if it is deemed that the funds are necessary to correct the noncompliance.

**Section 13.- Scrap Tire Exporter**

A.   The Scrap Tire Exporter shall obtain the corresponding permits and meet all the requirements established in the laws and regulations of the Environmental Quality Board, the Solid Waste Authority, the Commonwealth of Puerto Rico, and the Government of the United States of America. The permit to establish a facility of such kind shall have an endorsement of the Authority, which shall certify that the proposed activity shall be a tire export activity, among other considerations. It shall further meet the bond or surety posting requirement as required in Section 4A (4) of this Act.

B.   Any person who requests a permit before the Board for an exporting facility, may have previously obtained an endorsement of the Authority for the proposed activity.

1.   To obtain the endorsement from the Authority, the proponent shall submit the following information:

a) Endorsement Request Letter or letter of intent, signed by the owner or his/her authorized representative.

b) Explanatory memorial including, at least, the following requirements:

i.   A description of the logistics of the tire collection process in Puerto Rico and the export thereof.

ii.   Specify where the exporting facility shall be located including the address, the land capacity, and the zoning classification of the area.

iii.   Describe the type of tires to be exported.

    iv.  Provide the name or names of the haulers that shall supply the tires for their export.

    v.  Specify the approximate amount of scrap tires to be collected on a daily basis in the export lot.

    vi.  The information of the proponent, including his/her registration in the Department of State authorizing him/her to do business in Puerto Rico. In the case of an existing corporation or entity, it shall present a certificate of good standing.

2. Specify the approximate amount of containers that shall be used on a daily or weekly basis for the scrap tire export.

3. Present a letter of intent certified by the End-Use or Recycling Facility, stating that it shall receive scrap tires outside of Puerto Rico and the manner in which they shall be used or disposed of.

4. Present an alternate plan with another end consignee, in the event that the original facility closes down.

5. The proponent exporting facility may provide a copy of the agreement executed with the ocean freight company for the export of tires.

C. The scrap tire exporter shall be allowed to export scrap tires from Puerto Rico, and may handle, process or dispose of them outside of Puerto Rico. 'Authorized facilities' shall be understood as such facilities that the exporter is able to certify through attesting evidence that shall use the rubber as raw material or fuel.

D.  For the purpose of Section 16 of this Act, the "Proper Scrap Tire Management Fund," the exporter shall not be deemed to be a hauler, recycler or local processor, and the Authority shall designate its percentage in its regulations.

E.  The exporter shall be responsible for using an electronic weighting system with a reliable record and control mechanism containing the data on the identification of each and every heavy truck or van, and with the capability to electronically transfer this information to the Authority. Furthermore, the same shall follow a regular calibration program, as per the recommendations of the manufacturer of such system, and shall be certified by DACO or the corresponding agency at least annually.

F.  The exporter shall weight any and all of the scrap tire loads received in his/her facility without charging the haulers for such weighting. The initial and final weight of the trucks or containers shall be the basis to determine the net weight of the tires to be exported. In order to determine the initial weight, it may be used any other accurate measurement and approved by another Commonwealth or federal agency regarding the type of transportation equipment used, which shall be provided through regulations.

G.  The tire exporter shall prepare an invoice in the amount of exported tires, in pounds, and pursuant to the fee corresponding to the stages and received in the authorized facility.  Such invoice shall include the certification furnished by the end-use facility as well as the certification of the ocean freight company that transported such material outside of Puerto Rico.

H.    The Authority shall adopt, through regulations, the method and term for the payment of the fee corresponding to the exporter, pursuant to the stages reached.

I.    In the event that an exporter hires a hauler to haul tires to the shipping port, the latter shall not be entitled to receive payment from the Fund, but rather the exporter shall be responsible for the payment of such service.

J.    The exporter shall submit, annually or when required, to the Board and the Authority a list of tire haulers registered in such facility or with whom he/she does business.

K.    The exporter shall keep signed copies of the invoices for a term of not less than five (5) years as of the date of origin.

L.    Noncompliance by the exporters with the permits issued by the Board, as well as with the terms of this Act or its regulations, shall entail the forfeiture of the bond or surety required by Section 4A (4) of this Act, provided that the Board deems that the funds are necessary to correct the noncompliance.

M.    The exporter shall sign and keep copies of the receipts or invoices on the amount of tires, in pounds, received from the haulers or collected, after verifying that all the information contained is correct.

**Section 14.- Tire Dropped-off in Sanitary Landfills.**

A.    The final disposal of whole tires in the sanitary landfills of the Island, except for bicycle tires or similar tires and solid tires with rims, is hereby prohibited.

B.   Scrap tires shall be dropped-off in sanitary landfills as a last resort, in the absence of end-use, processing, exporting or recycling facilities that are able to manage them. Such drop-offs must have the approval of the Board and the previous endorsement of the Authority. The tires shall be dropped-off crushed or in pieces. If they are in pieces, its longest part shall measure between one (1) and three (3) inches so that they do not accumulate water, and do not adversely affect the operating method of the sanitary landfill system, nor the useful life of such facilities. The foregoing provisions are in harmony with the applicable legislation and regulations. These provisions shall not be deemed to be as a non-structural use and shall not be billed to the Fund.

## Section 15.- Tire Burning Prohibition

Tire burning is prohibited, except when:

A.   It is a power recovery facility approved by the Environmental Quality Board, and endorsed by the Authority.

B.   It meets Federal and Commonwealth clean air laws and standards as well as other environmental laws promulgated by the Environmental Quality Board and the Federal Environmental Protection Agency (EPA).

## Section 16.-Proper Scrap Tire Management Fund

A.   The Proper Scrap Tire Management Fund is hereby created under the responsibility and jurisdiction of the Solid Waste Authority to be mainly nourished from the proceeds of the Tire Management and Disposal Fee received by the Authority, as described in

Section 6, which shall be charged to tire importers and manufacturers. Such fund shall be distributed, through the regulation required under Section 6 of this Act, following the general structure described hereinbelow:

1. Between seventy-one (71) and seventy-five (75) cents of each dollar collected by the Proper Scrap Tire Management Fund, shall be used to pay for a tire transported, recycled, processed, and to exported or used by an end-use facility.

2. Between four (4) and eight (8) cents of each dollar from the money collected, shall be allotted to the Environmental Quality Board to cover the expenses relative to the enforcement of this Act.

3. Between nineteen (19) and twenty-three (23) cents of each dollar from the money collected, shall be allotted to the Solid Waste Authority, of which 75% shall be used to cover the expenses relative to the Fund administration operations, and the other 25% shall be used to cover any other operations designated under this Act.

B. The payment of the fees set forth by the Authority shall be made in light of the proceeds of the fee collected per pound of tire, whether imported or manufactured in Puerto Rico.

C. One hundred percent (100%) of the interest accrued by the Emergency Proper Scrap Tire Management Fund shall be transferred to a special account for the development of the recycling businesses.

D. No payment shall be processed for invoices submitted to the Authority with more than ninety (90) days after the receipt or delivery of the material, as applicable.

E. Funds appropriated to the Board and the Authority under this Act shall be used solely for the administration of the powers and functions delegated under the same.

F. The total amount of the fund to be distributed shall never exceed one hundred percent (100%) of the proceeds.

G. The percentage of money allotted to each one of the tire or weight equivalent stages not used, shall be transferred to a special account of the Authority that shall be designated as the Emergency Proper Scrap Tire Management Fund. Emergency situations related to tires that pose a risk to the health, the environment, and the property may be addressed by the Proper Scrap Tire Management Fund. Emergency situations of such a nature shall be declared by both the Authority and the Environmental Quality Board.

Any expenses incurred by the Authority to address emergencies related to tires may be recovered through an administrative order issued by the same or civil action initiated in the General Court of Justice of Puerto Rico or the United States of America against any person responsible for the emergency and the Authority shall reimburse the Fund created under this Act.

H. The payment shall only be made once for the same material until it reaches its final destination.

**Section 17.-Additional Prohibitions and Penalties**

A.   Additional Prohibitions

    1.   The omission of information or furnishing or certifying false information is hereby prohibited.

    2.   The alteration or counterfeiting of invoices or other documents as mentioned in this Act is hereby prohibited.

    3.   The import or manufacture of tires for the purpose of doing business in Puerto Rico, without holding an importer or manufacturer license as provided in this Act is hereby prohibited.

    4.   The use of weighting scales not authorized by this Act or regulation is hereby prohibited.

B.   Penalties

    1.   Any tire importer or manufacturer who omits information or furnishes false information on the net weight of imported or manufactured tires shall pay to the Authority a penalty equal to double the amount of the load multiplied by the tire management and disposal fee which shall be covered into the special account for the Proper Scrap Tire Management Fund.

    2.   The Authority and the Environmental Quality Board may impose penalties including the suspension of any permit, license or authorization contained in this Act, for any violation of the provisions of this Act, pursuant to the powers and authorities delegated onto them, or the regulations approved by virtue of such powers and

authorities. The amount of the penalty imposed for each violation shall be established pursuant to the Organic Act of each agency. The Authority and the Board are hereby empowered to adopt penalties, through regulations to such effects.

3. Any person who violates the provisions of this Act or rules and regulations thereunder or fails to comply with any resolution, order or agreement dictated by the Authority or the Board shall incur a misdemeanor.

**Section 18.-Provisions for Transition**

The payment of the invoices submitted to the Department of the Treasury under Act No. 171 of August 31, 1996, as amended, shall be the responsibility of the Department of the Treasury and shall not be assumed by the Authority under this Act.

The Department of the Treasury must pay in full all debts resulting from Act No. 171 of August 31, 1996, as amended, six (6) months as of the effectiveness of this Act. If there shall be a surplus after satisfying all debts, it shall be transferred to the Authority to be covered into the Proper Scrap Tire Management Fund created by this Act.

**Section 19.- Special Requirement**

The Department of Transportation and Public Works, as well as the Highways and Transportation Authority are required to conduct a study to establish the corresponding regulations regarding the minimum depth that a tread of a tire must have in order to travel through the highways of the Island. This shall provide a higher degree of safety to vehicles users and passengers that use our highways. The Department of Transportation and

Public Works and the Highways and Transportation Authority shall have 180 days, as of the effectiveness of this Act, to conduct such study and draft the regulations necessary to enforce the results of the same. Such study and regulations shall specifically provide for the minimum thickness that a tire must have to travel through the highways without constituting a safety hazard. Once the proper regulation is drafted the same shall be submitted to both Legislative Bodies with a copy of the study.

The Department of Transportation and Public Works and the Highways and Transportation Authority shall develop strategies to implement projects that use asphalt manufactured from recycled tires for the construction of public works.

### Section 20.- Substitution of Conflictive Provisions

Once this Act takes effect, in the event that the provisions of this Act are contrary to the provisions of any other law of the Legislature of Puerto Rico, the provisions of this Act shall prevail and no other previously or subsequently approved Commonwealth Law or municipal ordinance shall be interpreted as to apply to this Act, unless it is explicitly provided.

### Section 21.- Severability Clause

The provisions of this Act are independent from one another and should any of its provisions were to be declared unconstitutional by any court with jurisdiction and competence, such ruling shall not affect nor invalidate any of the remaining provisions, except that the judicial ruling expressly states so.

**Section 22.- Repealing Clause**

Act No. 171 of August 31, 1996, as amended, is hereby repealed.

**Section 23.- Effectiveness**

This Act shall take effect three hundred (300) days after its approval.

# CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 41 (H. B. 1648) (Conference)** of the **1st Session of the 16th Legislature** of Puerto Rico:

**AN ACT**   to adopt the "Puerto Rico Proper Scrap Tire Management Act" and to repeal Act No. 171 of August 31, 1996, as amended, known as the "Tire Management Act."

has been translated from Spanish to English and that the English version is correct.

In San Juan, Puerto Rico, on the 2nd day of June, 2010.


Solange I. De Lahongrais, Esq.
Director