# Debtors' Ex. 105

## *2011 PR H.B. 3070*

Enacted, January 31, 2011

**Reporter**

2011 PR ALS 1; 2011 PR LAWS 1; 2011 PR ACT 1; 2011 PR H.B. 3070

**Copyright © 2011 > SIXTEENTH LEGISLATIVE ASSEMBLY--FIFTH REGULAR SESSION > NO. 1 > HOUSE BILL 3070**

# Synopsis

AN ACT

To establish the "Internal Revenue Code for a New Puerto Rico," in order to provide for an annual 1.2 billion-dollar tax relief to individuals and corporations, so as to stimulate the creation of jobs; to set forth transitory provisions to repeal Act No. 120 of October 31, 1994, as amended, known as the "Puerto Rico Internal Revenue Code of 1994"; and for other purposes.

# Text

STATEMENT OF MOTIVES

"We believe in the Puerto Rican worker; therefore, we have a plan that rewards and incentivizes labor. Our plan transfers power from the government to workers … because a dollar has a higher yield in the hands of the People of Puerto Rico than in the hands of the government." Emphasis supplied. The Hon. Luis G. Fortuno, January 21, 2008 [Our translation].

During the 1990s, Puerto Rico enjoyed a strong and dynamic economy, owing to progressive measures launched by the government administration in power at that time, whose economic policies were set forth under the leadership of the present Governor of all Puerto Ricans, the Hon. Luis G. Fortuno, who was then the first to hold office as Secretary of the Department of Economic Development and Commerce. Such economy rested on the groundwork laid by a tax reform that represented a $ 400 million-a-year tax relief by virtue of reductions on taxes to be paid by our workers: Act No. 120 of October 31, 1994, as amended, known as the "Puerto Rico Internal Revenue Code of 1994" (hereinafter, the Internal Revenue Code of 1994). Furthermore, Act No. 157 was approved in the year 2000 in order to further the aforementioned measures by increasing such tax reliefs.

However, in 2000, before the most beneficial measures provided by Act No. 157 took effect, the government administration changed. The incoming government, constituted in great part by the architects of the lavish spending of the 1980s, deserted the philosophy that predicated that "one dollar in the hands of citizens has higher yields than one dollar in the hands of government," which had so furthered the economy of the Island and benefited all Puerto Ricans.

In 2001, the government administration in office at that time began to repeal provisions of the tax reform which had taken effect in 1995, thus revoking tax reliefs which had been extended to the working class. Under Act No. 172 of December 6, 2001, said administration forced thousands of married couples to pay higher taxes by virtue of revoking the elimination of the so-called "marriage penalty." Subsequently, Act No. 134 of August 8, 2002, postponed the implementation of lower tax rates, as previously set forth through legislation, and the third phase of the tax reform of 1994 was eliminated. In fact, hundreds upon thousands of taxpayers had to pay higher taxes. In

2003, Act No. 165 of July 22, provided for the adoption of new tax rates which, according to the administration, would result in lower taxes for everyone. The measure, as it turns out, had the opposite effect. In 2006, Act No. 117 imposed an additional tax burden of $ 180 million a year on the People of Puerto Rico. Even though the 6.6% general excise tax was eliminated, the administration in office at that time established a 7% general sales and use tax (IVU, Spanish acronym). Income tax rates remained the same.

Meanwhile, beginning with fiscal year 2001-2002, the government was spending uncontrollably, with no restraint, and at a bewildering pace. Such irresponsible and reckless behavior left in its wake: (i) a budget deficit of $ 3.306 billion; (ii) a current account deficit of $ 4.459 billion; and (iii) $ 960 million in overdraft government checks. In fact, in the year 2006, much before the effects of the global economy crisis were palpable, Puerto Rico entered a recession, as a manifest result, to a great extent, of the government shutdown brought on by the administration in office during that year.

This was, in part, the ruinous economic picture that we encountered when, in January 2009, we assumed the sacred duty of leading Puerto Rico. With the welfare of our people as our only guiding principle, we have taken the measures necessary to achieve the fiscal stabilization of the government and to put the economic development of the Island back on track. We have cleaned house and salvaged our credit, thus managing to save hundreds upon thousands of jobs. Even though the past few years have been hard, a new sense of optimism has already began to emerge; after nearly one lost decade, the worst is over and we usher in a new era of hope and well-being--a new era in which all Puerto Ricans hold in their hands the power to change their future.

For the first time in decades, we have been able to improve Puerto Rico's credit, which was on the brink of being rated as "junk"--the worst rating of any state. Puerto Rico's credit was rated as A3 as a result of the implementation of the fiscal plan of the current administration. Credit rating agencies, such as Standard and Poor's and Moody's, have given improved ratings in terms of the credit capacity of our government, while others, such as Fitch, have issued their first evaluation on our credit. The achievements of this administration include, among others: (i) a reduction in the highest deficit throughout the nation, from 44% to 11%; (ii) an injection of over $ 3.75 billion to our economy; and (iii) the creation of thousands of new jobs under the Strategic Model for a New Economy.

We approved the Public-Private Partnerships Act, which shall provide an additional boost of billions of dollars to our economy, while generating new jobs in the construction industry by making major infrastructure projects feasible.

We have also resumed works on infrastructure projects that are necessary for the progress of our people, among which are: (i) the extension of the expressway to Aguadilla and of Route 66 to Fajardo; (ii) the restoration of over 150 miles of highway; (iii) the construction of over 60 projects for new highways, bridges, and avenues; and (iv) the completion of the commuter train from Toa Baja to Bayamon by the end of 2012.

Furthermore, we are building the first 6-star hotel in the Municipality of Dorado and we have also inaugurated 12 new hotels, for a total of 2,400 rooms.

We are injecting over $ 750 million into the creation or total renovation of 100 schools through the *Escuelas para el Siglo XXI* [Schools for the 21st Century] Program.

We have adopted the Puerto Rico Permit Process Reform Act, in order to streamline and simplify the processing of permits for all our development projects and works.

Through the *Hogar Digno* [Decent Home] Program, we are investing over $ 350 million in affordable housing. Furthermore, we have implemented the most aggressive plan in our history in order for our working class to be able to buy a home. Thus we are providing a boost to the housing and construction sectors, which shall generate thousands of additional jobs.

With *Puerto Rico Verde* [Green Puerto Rico], we have implemented--for the first time ever--strategies at all government levels to protect our environment. We have acquired over 40 hybrid buses and 2,038 LED (light-emitting diode) traffic lights, as well as installed the first wind turbines and photovoltaic panels to generate electric power. We have also put a stop to rising water utility prices, which the past administration had the intent to charge,

and we have taken concrete steps for a significant reduction in electric power utility pricing. With the establishment of *Via Verde* [Green Passageway], we shall ensure a lower dependency on oil by replacing it with natural gas, which shall lower electric power bills by over 20% before 2012.

Through *Mi Salud* [My Healthcare]--the most ambitious and successful healthcare services program in the history of Puerto Rico--we have accorded 200,000 Puerto Ricans with the ability to effectively care for their health.

Today, we can responsibly fulfill the promise we made to all workers in Puerto Rico: the most comprehensive, equitable, fair, and progressive tax reform ever to be adopted in Puerto Rico. A reform grounded on our firm commitment to "provide relief for the pockets of Puerto Ricans by establishing fair tax rates and controlling government spending," as the formula for our economic growth. In essence, *Mas Dinero en tu Bolsillo* is a tax reform that, at long last, delivers justice to all Puerto Ricans by lowering taxes, rewarding labor, and leaving more money in people's pockets.

On November 15, 2010, Act No. 171 took effect, which constituted the first step toward fulfilling that promise. By virtue of said Act, we granted a credit of: (i) 15% to taxpayers with an income of up to $ 40,000; (ii) 10% to taxpayers with an income ranging between $ 40,001 and $ 100,000 ($ 150,000 for married couples); and (iii) 7% to taxpayers with an income of over $ 100,000. In addition, we have granted a credit of 7% to all businesses (nonexempt corporations) that are to pay the Christmas Bonus in full to all their employees. We have also provided an extension, from seven (7) to ten (10) years, on the term for carryovers so as to lessen operating losses incurred between 2005 and 2011. We have likewise provided no deductions on Christmas Bonuses or salary checks for December 2010.

Moreover, we eliminated the 2 payments corresponding to fiscal year 2011-2012 on account of the temporary supertax on real property taxes.

With this first phase of the tax reform, we delivered reliefs totaling $ 240 million to our taxpayers; that is, $ 306 per taxpayer on average.

This Act, which is a part of our *Mas Dinero en tu Bolsillo* public policy, constitutes the second and last phase of the tax reform that we had promised to the People of Puerto Rico. With this Act, we provide a relief to taxpayers that shall average $ 1.2) billion a year for the next 6 years (over $ 1,500 a year per taxpayer), which constitutes, without a doubt, the greatest tax relief granted in our history (3 times greater than the 1994 tax reform). The *Mas Dinero en tu Bolsillo* policy is geared toward fulfilling our programmatic commitments to our People:

    **1.** To provide financial relief by dramatically lowering tax rates for ALL Puerto Ricans;

    **2.** To establish a fair and simple taxation system with tools to aggressively fight tax evasion;

    **3.** To provide work incentives and reliefs for the elderly; and

    **4.** To promote economic development and job creation.

Tax reliefs are already becoming palpable. As of the issue for the first biweekly term of January 2011, all Puerto Ricans shall see a raise in their payroll checks, owing to a substantial lowering of the rates for taxes to be withheld by employers. Taxpayers shall thus have more money in their pockets all year round. This adjustment--made possible by the tax reform introduced by our administration--equals a pay raise for all the People, a raise that each and every taxpayer is able to measure in dollars and cents.

*Mas Dinero en tu Bolsillo* includes countless changes which dramatically lowers taxes for individuals. For example, taxpayers with a gross income of less than $ 20,000, which constitutes the income of 46% of taxpayers in Puerto Rico, shall not pay taxes.

Firstly, the personal exemption shall be increased. Under the Internal Revenue Code of 1994, the personal exemption is $ 1,300 for single persons, $ 1,500 for married couples that file their returns separately, and $ 3,000 for married couples that file a joint tax return, or for heads of household. Under *Mas Dinero en tu Bolsillo*, the

2011 PR H.B. 3070

exemption is raised to $ 3,500 per taxpayer (including individuals and married couples that file their tax returns separately). As for married couples that file a joint tax return, the exemption shall be $ 7,000 ($ 3,500 per taxpayer).

The deduction for dependents shall remain at $ 2,500 per dependent. We are also providing a new, additional personal exemption of $ 1,500 for each taxpayer who is also a veteran.

Furthermore, a deduction is established for taxpayers whose sole source of income is their compensation for services as employees, professional services, business ownership, profits made from selling properties, pensions, or alimony. For taxable years 2011, 2012, 2013, and 2014, the deduction shall be $ 9,350; $ 7,850; $ 5,350; $ 2,350, respectively. As for married couples in which both spouses work, each spouse, as an individual, shall be entitled to this deduction. This deduction shall be available, in full, to taxpayers whose income does not exceed $ 20,000, but the same shall be reduced at a rate of fifty cents ($ 0.50) for each dollar earned as income over $ 20,000.

In terms of tax credits, the earned income tax credit is kept and raised, and the limit on income is raised as well, to promote work and to boost our economy. Under the Internal Revenue Code of 1994, the earned income tax credit is three percent (3%) of income earned up to a maximum of $ 300. Under this measure, the maximum amount of this credit shall be raised by $ 50 (0.5%) each year, until reaching 6% of income earned in Taxable Year 2016 and a maximum credit of $ 600. At present, 330,000 people benefit from this credit under the Internal Revenue Code of 1994. With the approval of this Act, 547,000 people shall benefit by the year 2016.

Moreover, all taxpayers shall see substantially lowered tax rates. These tax rates shall be lowered by broadening the schedules so that taxpayers with the highest tax burdens at this time may pay taxes at a lower rate. As of taxable year 2011, the following fringe tax rates shall be implemented on taxable net income:

* The first $ 5,000 earned as net income shall be tax exempt;

* 7%--for taxpayers earning between $ 5,001 and $ 22,000;

* 14%--for taxpayers earning between $ 22,001 and $ 40,000;

* 25%--for taxpayers earning between $ 40,001 and $ 60,000; and

* 33%--for taxpayers earning over $ 60,000.

* However, taxpayers earning up to $ 20,000 shall not be under the obligation to pay taxes by virtue of the raise in the personal exemption, the deduction for salaried workers, and the earned income tax credit, as seen below:

| Taxable Year 2011 | |
|---|---|
| Income | $ 20,000 |
| Personal Exemption | ($ 3,500) |
| Deduction for Salaried Workers | ($ 9,350) |
| Tax-exempt Income | ($ 5,000) |
| Taxable Income | $ 2,150 |
| Assessed Tax | $ 150 |
| Earned Income Tax Credit | ($ 150) |
| Tax Liability | $ 0 |

For taxable year 2016, the following fringe tax rates shall be implemented on taxable net income:

* 0%--for taxpayers earning up to $ 16,500;

* 7%--for taxpayers earning between $ 16,501 and $ 26,500;

2011 PR H.B. 3070

* 14%--for taxpayers earning between $ 26,501 and $ 66,500;

* 25%--for taxpayers earning between $ 66,501 and $ 121,500; and

* 30%--for taxpayers earning over $ 121,500.

In other words, taxes to be paid on the same income shall become progressively lower by virtue of lower tax rates. On the other hand, the 5% supertax and the special tax on real property which was applicable for Fiscal Year 2011-2012, are hereby eliminated.

In keeping with lower tax rates, the Gradual Adjustment shall be progressively eliminated. This change shall be implemented by stages, by increasing the minimum income subject to the gradual adjustment, from $ 75,000 to $ 100,000 for Taxable Year 2011 and so on, to $ 200,000 for 2012, $ 300,000 for 2013, $ 500,000 for 2014, until its complete elimination by taxable year 2015. The elimination of this adjustment shall benefit over 40,500 taxpayers.

Likewise, with the purpose of lowering taxes and providing fair and equal treatment to all taxpayers, *Mas Dinero en tu Bolsillo* eliminates the last remnants of the marriage penalty, by providing that, in the case of married taxpayers who file separate tax returns and married couples in which both spouses work and who choose to use the optional computation for their income taxes, the 50% limits applicable to the cap on net income subject to gradual adjustment and to the cap on income subject to the alternative basic tax are hereby eliminated. The applicable cap in these cases shall be the same cap that applies to individual taxpayers. Moreover, the separate tax schedules, which penalized married taxpayers who chose to file separate tax returns, are hereby eliminated.

In addition to lowering tax rates, another purpose that this reform pursues is making the process easier for our taxpayers. Therefore, this Act simplifies many of the Internal Revenue Code provisions in order to facilitate compliance with taxation laws. For example, the number of personal statements for tax returns is lowered from five to three. Likewise, only certain deductions shall be allowed, so the separation between itemized deductions and additional deductions shall be eliminated.

The deductions allowed hereunder are subordinate to the compelling interest of this Administration to seek the welfare and quality of life of our citizens. The objectives pursued by each of the allowable deductions are:

* To enable all individuals to acquire a home (deduction for mortgage interest);

* To promote education among citizens so they may have higher expectations with better job opportunities (deduction for student loan interest);

* To enable our elderly to enjoy their retirement with dignity (deductions for contributions to retirement plans);

* To safeguard the welfare of our citizens who incur special medical expenses (deduction for medical expenses and medications);

* To recognize that nonprofit organizations provide citizens with important services which the government is unable to provide, or unable to provide as efficiently (deduction for gifts); and

* To mitigate the impact of natural disasters so as to make a speedier recovery possible (deduction for loss of main residence and certain personal property due to fortuitous causes).

In recognizing the particular needs of our citizens in their golden years, the $ 300 credit is maintained for pensioners whose sole source of income is a pension for services rendered when the amount received does not exceed $ 4,800. A $ 400 credit is hereby added to the aforesaid credit for persons over the age of 65 whose annual gross income does not exceed $ 15,000, including nontaxable income, such as social security benefits. This measure should have an impact on over 440,864 Puerto Ricans in their old age.

*Mas Dinero en tu Bolsillo also* increases the limits on contributions to qualified pension plans, in order to promote retirement savings. For taxable years starting after January 1, 2011, 2012, and 2013, limit amounts shall be $ 10,000, $ 13,000, and $ 15,000, respectively.

However, the most effective way to envision the tax reliefs to be provided under *Mas Dinero en tu Bolsillo* is by presenting concrete examples, to wit:

* An employee being paid the Federal minimum wage who earns $ 15,000 a year … paid $ 619 in taxes last year. In the year 2010, he/she shall pay $ 93 less and, starting in 2011, he/she shall no longer pay taxes. In 2011, he/she shall receive a tax refund of $ 248 … which shall progressively increase every year, until reaching the amount of five hundred dollars ($ 500), to be received each year thereafter;

* An unmarried nurse with no dependents, whose income is $ 22,050, paid $ 1,421 in taxes last year. With *Mas Dinero en tu Bolsillo*, this nurse shall pay $ 213 less this year. Next year, instead of paying $ 1,421 in taxes, she shall pay $ 257, for a tax relief of $ 1,164. Within five years, she will be receiving a tax refund instead of paying taxes.

* A family with an income of $ 61,490, in which both spouses work and have 3 dependents, paid $ 4,318 in taxes for the past years. With *Mas Dinero en tu Bolsillo*, they shall receive a $ 648 tax relief this year. Next year, their taxes shall be lowered to less than half the original sum, from $ 4,318 to $ 2,032. Within six years, this family shall only pay $ 609 in taxes, for a tax burden reduced by 86%. During this term, this family shall save $ 16,816.

* A family with an income of $ 100,000, in which both spouses work and have one dependent, paid $ 14,675 in taxes last year. With *Mas Dinero en tu Bolsillo*, they shall receive a $ 1,386 tax relief this year. Next year, their taxes shall be lowered by 32%, from $ 14,675 to $ 10,045, for savings of $ 4,630. For the year 2016, their taxes shall be lowered to less than half their original amount, paying only $ 6,650. In six years, this family shall save $ 38,846.

The changes presented above shall provide our citizens with a $ 1 billion annual tax relief on average for the next 6 years, thus lowering income taxes imposed on individuals in a fair and equitable manner, while making it easier for taxpayers to comply with tax laws and promoting activities and interests that boost our economy. Even so, if the taxpayer believes that this is not the case, this Act provides the option to compute his/her taxes and to file his/her return corresponding to Taxable Year 2011, and for the 4 taxable years that follow, based on the provisions of the Internal Revenue Code of 1994.

On the other hand, the high tax rates paid by businesses in Puerto Rico constitute one of the greatest hurdles for our economic development. Due to these rates, our small and medium sized businesses are left with no incentive to expand and grow. As with our working class families, the government withholds too much money from our enterprises. This will not stand--it is time to set the venturous and creative spirit of the Puerto Rican business owner free. The time has come for us to compensate business owners--who invest their best efforts in their business and in the creation of jobs--in the same manner in which we seek to benefit our working class.

In keeping with the lowering of taxes that apply to individuals, this bill seeks to substantially lower the taxes to be paid by corporations. Under the Internal Revenue Code of 1994, corporations pay taxes at a fixed rate of 20% plus surtax if the net taxable income exceeds $ 25,000. The rate for this surtax ranges from 5% to 19%) which means that a corporation that generates $ 275,000 or more in net taxable income pays taxes at an effective rate of 39% (41% when we take the gradual adjustment into consideration). *Mas Dinero en tu Bolsillo* provides a corporate relief by lowering rates on this surtax and by broadening the schedules. Consequently, a corporation that generates a net taxable income of $ 750,000 or less shall pay, under the new Code, a tax totaling 20%. This surtax, which shall apply to corporations that generate over $ 750,000 in net taxable income, shall be applied as follows: (i) 5% if the net taxable income is equal or less than $ 1,750,000, and (ii) 10% in all other cases. The result is a maximum combined rate of 30%, which is substantially lower than the present 39% rate.

This tax reform is particularly advantageous for small and medium sized businesses (PyMES, Spanish acronym) in Puerto Rico, which contribute greatly to the creation of jobs and to economic activity. Over 35,000 PyMES that

report a net income of $ 750,000 or less shall pay taxes at a fixed rate of 20%, whereas, at present, their income is taxable at a maximum rate of 41% (including the gradual adjustment).

These initiatives shall provide an average annual tax relief of $ 260 million over the next four years and a relief of 30% on the tax burden, which shall allow for the creation of more jobs and a better investment climate.

In addition, as of taxable year 2014, the 10% surtax shall be eliminated, which would place the combined tax rate for corporations at 25% as of that date.

As pertains to corporate reorganizations, amendments are made to certain provisions to eliminate loopholes in the Internal Revenue Code of 1994. For example, the corporate reorganization provisions in effect are not clear as to the treatment for corporate breakup reorganizations. This bill incorporates a provision equal to those in Federal rules, with the purpose of allowing corporate breakup reorganizations in which part or all of the assets in a spin-off, split-off or split-up are transferred to one or more corporations within the same controlled group, and such transfer is tax-exempt. Thus, if a transaction falls within the corporate breakup reorganization provisions, stockholders who receive only stock shall not be under the obligation to acknowledge profits or losses in that respect. We also provide for detailed rules for the carryover of operating losses in certain reorganizations, and the terms "controlled group of corporations" and "related party" are hereby consolidated so as to dispel the confusion generated by the existence of various definitions for the same term throughout the entire Code.

As pertains to sources of income, we hereby establish that (i) income generated from the sale of personal property other than inventory by a Puerto Rico resident shall be deemed to be income from sources within Puerto Rico, and (ii) income from the sale of personal property by a Puerto Rico nonresident shall be deemed to be income from sources outside Puerto Rico. Furthermore, we are simplifying the rules on sources of income related to air and sea transportation, so that if the trip in question starts and ends in Puerto Rico, 100% of the income may constitute income from sources within Puerto Rico, whereas, if the trip in question is between Puerto Rico and a destination other than Puerto Rico, 50% of the income may be deemed to be income from sources within Puerto Rico.

Likewise, in order to make doing business in Puerto Rico easier, this Act conforms the provisions on partnerships to the provisions in the Federal Code. For this reason, a new chapter on partnerships is included herein, in order to provide the new taxation rules for partnerships in Puerto Rico. This Chapter provides that partnerships shall not be taxable as entities separate from their partners, and therefore, partnerships shall not be subject to payment of income taxes. Partners shall pay taxes on their distributive share in income and partnership expenses as reported in their tax returns. Besides, the special partnership vehicle turns moot, since the tax treatment for these shall be available to any business that wishes to organize under such system. Therefore, no elections for new special partnerships shall be allowed for taxable years beginning after December 31, 2010.

In addition, this Act also provides greater flexibility to limited liability companies and establishes the tax treatment for certain trusts which, among other things, shall prevent a disruption in the tax treatment for trustees based upon the current differences between the tax treatment for Federal and local purposes.

In order to ease the tax return collection process and to enable individuals to receive their information returns on time (to file their individual tax returns), different dates are established for the filing of income tax returns for partnerships, special partnerships, limited liability companies, corporations of individuals, trusts, and pension plans.

Insofar as this is a comprehensive tax reform, measures to prevent tax evasion must be implemented. An example of this is the express prohibition on certain expenditures that are currently claimed as regular and necessary expenditures. Expenditures related to the ownership, operation, and maintenance of boats, airplanes, and helicopters and expenditures related to the ownership, use, and maintenance of residences outside Puerto Rico shall be expressly prohibited for being considered lavish rather than regular or necessary expenditures for the operation of a business.

On the other hand, it has been noted that provisions related to special partnerships and corporations of individuals establish different rules without any rational explanation, in addition to allow room for certain modalities of abuse. For this reason, various provisions which apply to these entities are hereby amended. For example, provisions are

hereby included to require stockholders or partners of these entities to declare a reasonable amount as salary in their individual tax returns in proportion to the income of their respective entities. On the other hand, this Act also limits the use of special partnerships by leasing businesses that lease to third parties (except when the property is destined for personal use or is leased to related persons). Furthermore, this Act sets forth that personal use for over 14 days in one year shall cause the business to become disqualified as special partnership.

History has taught us that, without a doubt, one dollar in the hands of citizens has a far higher yield than one dollar in the hands of the government. By adopting this Act, we are putting more money in the pockets of our workforce, in recognition of the fact that it is the exclusive prerogative of our workers--and not our Government--to determine what is best for them and their loved ones.

*Be it enacted by the Legislative Assembly of Puerto Rico:*

### Section 1000.01.-- Short Title.--

This Act, divided into Subtitles, chapters, subchapters, parts, and sections, shall constitute and be known as the "Internal Revenue Code for a New Puerto Rico," and shall be cited hereinafter as the "Code."

### Section 1000.02.-- Classification of Provisions.--

The provisions of this Code are hereby classified and designated as:

Taxpayer Bill of Rights

**Subtitle A.--** Income Taxes

**Subtitle B.--** Estate and Gift Taxes

**Subtitle C.--** Excise Taxes

**Subtitle D.--** Sales and Use Tax

**Subtitle E.--** Beverages

**Subtitle F.--** Administrative Provisions, Interest, Penalties, and Additions to Taxes

### Section 1000.03.-- Application of this Code.--

The provisions establishing the effectiveness and application of this Code are found in Chapter 10 of Subtitle F.

TAXPAYER BILL OF RIGHTS

### Section 1001.01.-- Taxpayer Rights.--

In interviews, investigations, claims for tax refund and credit, and other matters that are carried out by the Department of the Treasury, hereinafter the "Department," every taxpayer shall be entitled to:

(a) Receive a fair, proper, and unbiased treatment by all officials and employees of the Department during any proceedings carried out at the Department.

2011 PR H.B. 3070

**(b)** Have the confidentiality of the information furnished to the Department by the taxpayer or the person authorized to act on his/her behalf guaranteed. No person outside the Department who is not authorized by the taxpayer, except as expressly allowed under the Internal Revenue Code for a New Puerto Rico, shall have access to such information. The taxpayer shall also be entitled to know the purpose for which such information is requested, the use to be given thereto, and the consequences of failing to provide the same. In the case of information requested by the Department which is incidental to an investigation for purposes of determining the tax liability of the taxpayer, such information shall be used solely for such purposes, and only relevant information in connection with the case under investigation shall be requested.

**(c)** Require that every interview be carried out at a reasonable time and place, in coordination with the official or employee of the Department.

**(d)** Have the interview or investigation not be utilized to harass or intimidate the interviewee in any way.

**(e)** At the beginning of an investigation, receive a clear and simple explanation of the procedure to which he/she will be submitted and the rights to which he/she is entitled.

**(f)** Be assisted by an attorney, accountant, certified public accountant, or any person authorized to represent registered taxpayers before the Department, or authorized by law, subject to the provisions of subsection (n) of this Section.

**(g)** Be informed, prior to the interview, investigation, administrative hearing, or any other proceedings, of the intent to record the same and to be provided with an exact copy of that recording at his/her request, subject to payment of its cost.

**(h)** Be notified of the nature of his/her tax liability as part of the procedures carried out by the Department with the purpose of determining such responsibility.

**(i)** In the event that he/she might be exposed to a criminal action, be advised of his/her right not to incriminate him/herself through his/her own testimony, to remain silent, and not to have this taken into account nor have it taken against him/her.

**(j)** Consult, at any time during the interview or tax proceeding, with an attorney, public accountant, or agent authorized to represent him/her before the Department, or to end the interview even after it has begun.

**(k)** Be notified in writing of any adjustment made by the Department as a result of a tax investigation when this involves adding interest, penalties, and surcharges, as provided by law, as well as the exact amount of the adjustment and the grounds for such changes.

*(l)* Pay the corresponding tax in accordance with the law; if unable to make such payment in full within the time required, the taxpayer shall be entitled to request an installment plan.

**(m)** Waive the rights described above if this waiver is made voluntarily and knowingly.

**(n)** Execute a written power of attorney to any registered person authorized to represent taxpayers before the Department, or legally authorized to represent him/her during an interview or tax proceeding, which person shall receive treatment equal to that of the taxpayer for purposes of the interview. The Department shall notify the taxpayer if the person is responsible for unreasonable delays or negligence in connection with the investigation, in order for the taxpayer to be able to take the necessary corrective action to protect his/her interests.

**(o)** Not be discriminated against by reason of race, color, sex, birth, origin or social condition, nor for political or religious ideas, or association with any taxpayer or person whom he/she represents. It shall be guaranteed that no records which contain tax information for these purposes shall be maintained.

Nothing set forth in this Section should be construed as a limitation of the powers of the Secretary to carry out investigations, provided that these are carried out without violating the constitutional rights of the taxpayer or the person who represents him/her.

**Section 1001.02.-- Taxpayer's Rights Protection Office.--**

2011 PR H.B. 3070

**(a)** The Taxpayer's Rights Protection Office is hereby created within the Department to be charged with addressing the problems and claims of the taxpayer, in addition to other functions set forth in this Section. The Office shall be administered by a Director, appointed by the Governor.

The Office shall carry out the following functions:

**(1)** Oversee compliance with the provisions of the "Taxpayer Bill of Rights."

**(2)** Facilitate matters between the taxpayer and the Department in any complaint related to a violation of any right granted under this Subtitle.

**(3)** Promote the swift, effective solution of the problems faced by the taxpayer that cannot be resolved through the regular procedures of the Department.

**(4)** Issue Taxpayer Assistance Orders, *motu proprio* or at the request of the taxpayer, if it determines that the taxpayer is suffering or is about to suffer a significant hardship as a result of the violation of the provisions contained in the Taxpayer Bill of Rights. The term "significant hardship," as used in this subsection, shall be understood as a serious privation caused or about to be caused as a result of the improper administration of tax laws and their regulations by the Department. However, a mere economic or personal inconvenience caused to a taxpayer shall not constitute a "significant hardship."

**(b)** The Secretary shall establish through regulations the criteria that shall regulate the issue and processing of Taxpayer Assistance Orders. Noncompliance with a Taxpayer Assistance Order by an official or employee of the Department shall result in a disciplinary action according to the provisions of the Personnel Regulations.

**(c)** Likewise, the Secretary shall by regulation establish the parameters that shall govern the procedures between the Office and the taxpayers

**(d)** The Director shall be responsible for the internal operations of the Office, subject to the norms and regulations established by the Secretary for the operations of the Department.

**(e)** The budget appropriation of the Department of the Treasury shall include a separate item for the operations of the Office.


# SUBTITLE A -- INCOME TAXES


# CHAPTER 1 -- DEFINITIONS AND GENERAL PROVISIONS


# Section 1010.01.-- Definitions.--

**(a)** As used in this Subtitle, where not otherwise manifestly incompatible with the intent thereof--

**(1)** **Person.--** The term "person" shall be construed to mean and include an individual, trust or estate, partnership or corporation.

**(2)** **Corporation.--** The term "corporation" includes limited company, joint-stock companies, private corporations, insurance companies and any other corporations organized under Act No. 164 of December 16, 2009, as amended [14 L.P.R.A. §§ 3501 et seq.], known as the "General Corporations Act," receiving income or earning profits taxable under this Subtitle. The terms "association" or "partnership" also include other similar entities, any organization other than a partnership created for purposes of carrying out transactions or achieving certain purposes, which in like manner as corporations, may continue to exist regardless of the changes in the membership or stockholders, and whose business is directed by one person, committee, board or any other body acting in a representative capacity. The terms "association" and "corporation" also include voluntary associations, business trusts, Massachusetts trusts, and common law trusts, and except as otherwise provided in this Code, limited liability companies. The term "corporation" also includes those entities not otherwise

incompatible with the provisions of Subchapter M of Chapter 3 of this Subtitle A to Special Employee-owned Corporations.

**(3) Limited Liability Company.--**The term "limited liability company" means those entities organized under Chapter XIX of Act No. 164 of December 16, 2009, as amended [14 L.P.R.A. §§ 3951- 4006], known as the "General Corporations Act," or under similar laws of any state of the United States of America or foreign country. For purposes of this Chapter, limited liability companies shall be subject to taxation in the same manner and form as corporations; provided, however, that they may elect to be treated as partnerships for tax purposes under the rules applicable to partnerships and partners contained in Chapter 7 of this Subtitle, even when the company has only one single member. The Secretary shall establish through regulations, the form and manner of making such election, as well as the deadline for the filing thereof.

**(A) Exception.--** Any limited liability company that, for reasons of an election or provision of law or regulation under the Federal Internal Revenue Code of 1986, Title 26 of the United States Code, as amended, or similar provision of a foreign country, is treated as a partnership or whose revenues and expenses are attributable to its members for federal or foreign country income tax purposes, shall be treated as a partnership for purposes of this Subtitle, subject to the provisions of Chapter 7, and shall not be eligible to pay taxes as a corporation.

**(B)** The exception provided in paragraph (A) of this subsection shall not apply to a limited liability company that, as of the effective date of this Code, is covered under an exemption decree issued under Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," or any other analogous law, or under Act No. 78 of September 10, 1993 [23 L.P.R.A. §§ 6001 et seq.], known as the "Puerto Rico Tourist Development Act," as amended and any other preceding or subsequent analogous law.

**(4) Partnership.--** The term "partnership" includes general or limited, civil societies, business, industrial, agricultural, professional partnerships or of any other kind, whether or not its organization is set forth by public instrument or private document; and it shall include, further, two or more persons, whether under a common name or not, engaged in a joint venture for profit except as provided with regard to special partnerships. The term "partnership" includes any other unincorporated organization through which any trade or business is carried on.

**(A) Exception for Partnerships Existing on the Effective Date of this Code.--**In the case of partnerships existing on the effective date of this Code, may elect to be treated as corporations for purposes of the tax imposed under this Subtitle, in accordance with the provisions of subsection (e) of Section 1061.03.

**(5) Special Partnership.--** The term "special partnership" includes a partnership or corporation engaged in any of the activities listed in Section 1114.01 that has elected to avail itself of the provisions of Sections 1114.01 to 1114.28 of this part. A partnership whose only partners are persons married to each other shall not be recognized as a special partnership.

**(6) Domestic.--** The term "domestic" when applied to a corporation or partnership means created or organized in Puerto Rico or under the laws of Puerto Rico.

**(7) Foreign.--** The term "foreign" when applied to a corporation or partnership means a corporation or partnership which is not domestic.

**(8) Fiduciary.--** The term "fiduciary" means a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person.

**(9) Stock.--** The term "stock" includes shares in an association, limited company, joint-stock company, private corporation or insurance company.

**(10) Shareholder.--** The term "shareholder" includes a member of a limited company, joint-stock company, private corporation or insurance company.

2011 PR H.B. 3070

**(11) Partner.--** The term "partner" includes a member of a partnership, special partnership or participant therein.

**(12) Secretary.--** The term "Secretary" means the Secretary of the Treasury of Puerto Rico.

**(13) Collector.--** The term "collector" means an internal revenue collector.

**(14) Taxpayer.--** The term "taxpayer" means any person subject to any tax imposed under this Subtitle.

**(15) Withholding Agent.--** The term "withholding agent" means any person required to deduct and withhold any tax under the provisions of Sections 1023.06, 1023.07, 1023.04, 1023.05, 1062.02, 1062.03, 1062.04, 1062.05, 1062.08,l [sic] 1062.09, 1062.10, and 1062.11.

**(16) Spouse.--** The term "spouse," as used in Sections 1032.02 and 1083.09, means, wherever appropriate, husband or wife. If the spouses therein referred to were divorced, such term shall mean "former spouse."

**(17) Taxable Year.--** The term "taxable year" means:

**(A)** the taxpayer's annual accounting period, whether a calendar or fiscal year;

**(B)** the calendar year, if subsection (g) of Section 1040.01 is applicable; or

**(C)** the period for which the tax return is filed, if the return covers a period of less than twelve (12) years.

**(18) Economic Year.--** "Economic year" means an accounting period of 12 months ending on the last day of any month other than December. In the case of any taxpayer who has chosen the option provided in paragraph (1) subsection (f) of Section 1040.01, such term means the annual period thus chosen (that fluctuates between 52 and 53 weeks).

**(19) Paid or Incurred, Paid or Accrued.--** The terms "paid or incurred" and "paid or accrued" shall be construed according to the method of accounting upon the basis of which the taxable income is computed under this Subtitle.

**(20) Trade or Business.--** The term "trade or business" includes the performance of the functions of a public office.

**(21) Nonresident Alien.--** "nonresident alien" means an individual who is not a United States citizen and is not a resident of Puerto Rico.

**(22) Court of First Instance, Court of Appeals and Supreme Court.--** The term "Court of First Instance" means the Court of First Instance of Puerto Rico, the term "Court of Appeals" means the Court of Appeals of Puerto Rico, and the term "Supreme Court" means the Supreme Court of Puerto Rico.

**(23) International Organization.--** The term "international organization" means a public international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act, approved on December 29, 1945.

**(24) Hotel.--** A building or group of buildings mainly and bona fide devoted to the furnishing of accommodation for pay, primarily to transient guests, in which no less than fifteen (15) rooms are furnished for accommodation of such guests, and having one or more dining rooms where meals are served to the general public; provided, that such facilities are operated in Puerto Rico under conditions and standards of sanitation and efficiency that meet the requirements of the applicable laws of the Government of Puerto Rico.

**(25) Shipping Business.--** The term "shipping business" means:

**(A)** A business engaged in the transportation of freight between ports in Puerto Rico and ports in foreign countries;

**(B)** A business leasing ships which are used in said transportation, or personal and real property utilized in relation with the operation of said ships when the transportation meets the above requirements.

**(26) Gross Income.--** The term "gross income" shall have the meaning provided in Section 1031.01.

**(27) Adjusted Gross Income.--** The term "adjusted gross income" shall have the meaning provided in Section 1031.03.

**(28) Net Income.--** The term "net income" shall have the meaning provided in Section 1031.05.

**(29) Industrial Development Income.--** The term "industrial development income" shall have the same meaning as in the Act No. 73 of may 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," and as in the term "industrial development income" under the various Puerto Rico Industrial Incentives Acts or analogous laws.

**(30) Resident Individual.--** The term "resident individual" means an individual who is domiciled in Puerto Rico. It shall be presumed that an individual is a resident of Puerto Rico, if he/she has been present in Puerto Rico for a period of one hundred eighty-three (183) days during the calendar year.

The Secretary shall establish by regulations to that effect the factors to be considered in determining domicile for purposes of this paragraph.

**(31) Account or Social Security Number.--** The term "account or social security number" shall mean the number assigned by the Secretary to a person under Act No. 50 of June 6, 1963, as amended or the social security number assigned to a person under the U.S. Social Security Act.

**(32) Fiscal Year.--** The term "fiscal year" means an accounting year of the Government of Puerto Rico that comprises a period of twelve (12) months beginning on July 1 and ending on June 30 of the following year.

**(b) Includes.--** The term "includes" when used in a definition contained in this Subtitle shall not be deemed to exclude other things otherwise within the meaning of the term defined.

## Section 1010.02.-- Types of Taxpayers.--

**(a)** The provisions of Subtitle A shall apply to each one of the following special types of taxpayers, subject to the additional provisions set forth in this Subtitle that apply to each type, as follows:

**(1)** Individuals, corporations and associations;

**(2)** Partnerships and partners (See Chapter 7);

**(3)** Trusts and estates (See Chapter 8);

**(4)** Foreign taxpayers (See Chapter 9);

**(5)** Nonprofit entities (See Chapter 10); and

**(6)** Other special entities (See Chapter 11).

In the case of other special entities, the provisions of this Subtitle A shall be applied as provided in subsection (b) of this Section.

**(b)** For purposes of this Section, the term "other special entities" shall include the following:

**(1)** Insurance Companies (See Chapter 11, Subchapter A);

**(2)** Registered Investment Companies (See Chapter 11, Subchapter B);

**(3)** Special Employee-Owned Corporations and regular and special members (See Chapter 11, Subchapter C);

**(4)** Special Partnerships (See Chapter 11, Subchapter D)

(5) Corporations of Individuals (See Chapter 11, Subchapter E)

(6) Entities with an Exemption Decree under the Special Tax Incentive Laws (See Chapter 11, Subchapter F);

(7) Claims Against Transferees and Fiduciaries (See Chapter 11, Subchapter G).

**Section 1010.03.-- Classification of Individual Taxpayers -- Determination of Filing Status.--**

(a) In the case of individual taxpayers, for purposes of the provisions of this Subtitle, the taxpayer shall be subject to taxation under one of the following categories:

(1) **Individual Taxpayer.--For purposes of this Subtitle.--**an individual shall be considered an "individual taxpayer" if at the close of his/her taxable year:

(A) Is unmarried, whether because he/she has never been married, he/she is a widower or widow or divorced; or

(B) Is married, but before the celebration of the marriage he/she has entered into a prenuptial agreement that expressly provides for the division of assets; or

(C) Is married, but separated from his/her spouse. An individual shall be deemed to be separated from his/her spouse if at the close of the taxable year he/she were not living with his/her spouse, and during an uninterrupted period of twelve (12) months including the close date for the taxable year, he/she was not living under the same roof with his/her spouse uninterruptedly for one hundred eighty-three (183) days.

(2) **Married Individual.--** The term "married individual" includes couples that have celebrated their marriage in accordance with the Civil Code of Puerto Rico or who are treated as married couples under the body of laws of Puerto Rico. Those spouses that, before the celebration of their marriage executed a prenuptial agreement, expressly providing that the marital property regime is the full division of assets, shall pay taxes each individually as single taxpayer for purposes of the provisions of this Subtitle A.

(3) **Married Individual Filing a Separate Return.--**The term "married individual filing a separate return" includes those spouses entitled to file as married individuals as provided in paragraph (2) of this subsection, who elect to file separate returns. In these cases, spouses shall determine their income as provided in Section 1021.03(a).

(b) For purposes of determining the personal status of an individual for a taxable year, such determination shall be made at the close of his/her taxable year; provided, that in the case one of the spouses dies during such taxable year, such determination shall be made as of the date of death.

**Section 1010.04.-- Controlled Group of Corporations.--**

(a) **Controlled Group of Corporations.--**For purposes of this Subtitle, the term "controlled group of corporations" shall mean:

(1) **A Parent-subsidiary Controlled Group.--**One or more chains of corporations connected through stock ownership with a common parent corporation if--

(A) stock possessing at least eighty percent (80%) of the total combined voting power of all classes of stock entitled to vote or at least eighty percent (80%) of the total value of shares of all classes of stock of each of the corporations, except the common parent corporation, is owned (within the meaning of subsection (d)(1)) by one or more of the other corporations; and

(B) the common parent corporation owns (within the meaning of subsection (d)(1)) stock possessing at least eighty percent (80%) of the total combined voting power of all classes of stock entitled to vote or at least eighty percent (80%) of the total value of shares of all classes of stock of at least one of

the other corporations, excluding, in computing such voting power or value, stock owned directly by such other corporations.

**(2) Brother-sister Controlled Group.--**Two or more corporations if five (5) or fewer persons other than corporations own stock possessing (within the meaning of subsection (d)(2)) at least fifty percent (50%) of the total combined voting power of all classes of stock entitled to vote or at least fifty percent (50%) of the total value of shares of all classes of stock of each corporation.

**(3) Combined Group.--** Three or more corporations each of which is a member of a group of corporations described in paragraph (1) or (2), and one of which--

**(A)** is a common parent corporation included in a group of corporations described in paragraph (1), and also

**(B)** is included in a group of corporations described in paragraph (2).

**(b) Component Member.--**

**(1) General Rule.--** For purposes of this Subtitle, a corporation is a component member of a controlled group of corporations on December 31 of any taxable year (and with respect to the taxable year which includes December 31) if such corporation--

**(A)** is a member of such controlled group of corporations on December 31 included in such year and is not treated as an excluded member under paragraph (2), or

**(B)** is not a member of such controlled group of corporations on December 31 included in such year but is treated as an additional member under paragraph (3).

**(2) Excluded Members.--** A corporation which is a member of a controlled group of corporations on December 31 of any taxable year shall be treated as an excluded member of such group for the taxable year including such December 31 if such corporation--

**(A)** is a member of such group for less than one-half the number of days in such taxable year which precede such December 31, is exempt from taxation under Chapter 10 (except a corporation which is subject to tax on its unrelated net business taxable income under Section 1102.01) for such taxable year,

**(B)** is a foreign corporation subject to tax not engaged in trade or business in Puerto Rico, or

**(C)** is an insurance company subject to taxation under Subchapter A of Chapter 11.

**(3) Additional Members.--** A corporation which--

**(A)** was a member of a controlled group of corporations at any time during a calendar year,

**(B)** is not a member of such group on December 31 of such calendar year, and

**(C)** is not described, with respect to such group, in subparagraph (B), (C), or (D) of paragraph (2),

shall be treated as an additional member of such group on December 31 for its taxable year, including such December 31, if it was a member of such group for one-half (or more) of the number of days in such taxable year which precede such December 31.

**(4) Corporation Member of More than one Controlled Group.--**If a corporation is a component member of more than one controlled group of corporations with respect to any taxable year, such corporation shall be treated as a component member of only one controlled group. The determination as to the group of which such corporation is a component member shall be made under regulations prescribed by the Secretary which are consistent with the purposes of this section and this Subtitle.

**(c) Certain Stock Excluded.--**

**(1) General Rule.--** For purposes of this Section, the term "stock" does not include--

**(A)** nonvoting stock which is limited and preferred as to dividends,

2011 PR H.B. 3070

**(B)** treasury stock, and

**(C)** stock which is treated as "excluded stock" under paragraph (2).

**(2) Stock Treated as "Excluded Stock".--**

**(A) Parent-subsidiary Controlled Group.--**For purposes of subsection (a)(1), if a corporation (referred to in this paragraph as "parent corporation") owns (within the meaning of subsections (d)(1) and (e)(4)), fifty percent (50%) or more of the total combined voting power of all classes of stock entitled to vote or fifty percent (50%) or more of the total value of shares of all classes of stock in another corporation (referred to in this paragraph as "subsidiary corporation"), the following stock of the subsidiary corporation shall be treated as excluded stock--

**(i)** stock in the subsidiary corporation held by a trust which is part of a plan of deferred compensation for the benefit of the employees of the parent corporation or the subsidiary corporation,

**(ii)** stock in the subsidiary corporation owned by an individual (within the meaning of subsection (d)(2)(A)) who is a principal stockholder or officer of the parent corporation. For purposes of this paragraph, the term "principal stockholder" of a corporation means an individual who owns (within the meaning of subsection (d)(2)(A)) five percent (5%) or more of the total combined voting power of all classes of stock entitled to vote or five percent (5%) or more of the total value of shares of all classes of stock in such corporation, or

**(iii)** stock in the subsidiary corporation owned (within the meaning of subsection (d)(2)(A)) by an employee of the subsidiary corporation if such stock is subject to conditions which run in favor of such parent (or subsidiary) corporation and which substantially restrict or limit the employee's right (or if the employee constructively owns such stock, the direct owner's right) to dispose of such stock.

**(B) Brother-sister Controlled Group.--**For purposes of subsection (a)(2)(A), if a person other than a corporation (referred to in this subparagraph as "common owner") owns (within the meaning of subsection (d)(2)(A)), fifty percent (50%) or more of the total combined voting power of all classes of stock entitled to vote or fifty percent (50%) or more of the total value of shares of all classes of stock in a corporation, the following stock of such corporation shall be treated as excluded stock--

**(i)** stock in such corporation held by an employees' trust described in Section 1081.01 which is exempt from tax under Section 1101.01(a)(4)(D) or Section 1081.01, if such trust is for the benefit of the employees of such corporation,

**(ii)** stock in such corporation owned (within the meaning of subsection (d)(2)(A)) by an employee of the corporation if such stock is subject to conditions which run in favor of any of such common owners (or such corporation) and which substantially restrict or limit the employee's right (or if the employee constructively owns such stock, the direct owner's right) to dispose of such stock. If a condition which limits or restricts the employee's right (or the direct owner's right) to dispose of such stock also applies to the stock held by any of the common owners pursuant to a *bona fide* reciprocal stock purchase arrangement, such condition shall not be treated as one which restricts or limits the employee's right to dispose of such stock.

**(d) Rules for Determining Stock Ownership.--**

**(1) Parent-subsidiary Controlled Group.--**For purposes of determining whether a corporation is a member of a parent-subsidiary controlled group of corporations (within the meaning of subsection (a)(1)), "stock owned" by a corporation means--

**(A)** stock owned directly by such corporation, and

**(B)** stock owned with the application of subsection (e)(1).

**(2) Brother-sister Controlled Group.--**

**(A) Corporations.--** For purposes of determining whether a corporation is a member of a brother-sister controlled group of corporations (within the meaning of subsection (a)(2)(A)), "stock owned" by a person other than a corporation" means--

**(i)** stock owned directly by such person, and

**(ii)** stock owned with the application of subsection (e).

**(e) Constructive Ownership.--**

**(1) Options.--** If any person has an option to acquire stock, such stock shall be considered as owned by such person. For purposes of this paragraph, an option to acquire such an option, and each one of a series of such options, shall be considered as an option to acquire such stock.

**(2) Stock Owned by Partnerships.--**Stock owned, directly or indirectly, by or for a partnership shall be considered as owned by any partner having an interest of five percent (5%) or more in either the capital or profits of the partnership in proportion to their interest in capital or profits, whichever such proportion is the greater.

**(3) Stock Owned by Estates or Trusts.--**

**(A)** Stock owned, directly or indirectly, by or for an estate or trust shall be considered as owned by any beneficiary who has an actuarial interest of five percent (5%) or more in such stock, to the extent of such actuarial interest. For purposes of this subparagraph, the actuarial interest of each beneficiary shall be determined by assuming the maximum exercise of discretion by the fiduciary in favor of such beneficiary and the maximum use of such stock or partnership shares to satisfy his/her rights as a beneficiary.

**(B)** Stock owned, directly or indirectly, by or for any portion of a trust of which a person is considered the owner under Section 1083.05 and 1083.06 shall be considered as owned by such person.

**(C)** This paragraph shall not apply to stock owned by any employees' trust described in Section 1081.01 which is exempt from tax under Section 1101.01 or Section 1081.01.

**(4) Stock Owned by Corporations.--**Stock owned, directly or indirectly, by or for a corporation shall be considered as owned by any person who owns (within the meaning of subsection (d)) five percent (5%) or more in value of its stock in that proportion which the value of the stock which such person so owns bears to the value of all the stock in such corporation.

**(5) Stock Owned by Spouse.--** An individual shall be considered as owning stock in a corporation owned, directly or indirectly, by or for his/her spouse (other than a spouse who is separated from the individual), except in the case of a corporation with respect to which each of the following conditions is satisfied for its taxable year--

**(A)** The individual does not, at any time during such taxable year, directly own any stock in such corporation;

**(B)** The individual is not a director or employee and does not participate in the management of such corporation at any time during such taxable year;

**(C)** Not more than fifty percent (50%) of such corporation's gross income for such taxable year was derived from royalties, rents, dividends, interest, and annuities; and

**(D)** Such stock in such corporation is not, at any time during such taxable year, subject to conditions which substantially restrict or limit the spouse's right to dispose of such stock and which run in favor of the individual or his/her children who have not attained the age of 21.

**(6) Stock Owned by Children, Grandchildren, Parents, and Grandparents.--**

**(A) Minor Children.--** An individual shall be considered as owning stock owned, directly or indirectly, by or for his/her children who have not attained the age of twenty-one (21), and, if the individual

has not attained the age of twenty-one (21), the stock owned, directly or indirectly, by or for his/her parents.

**(B) Adult Children and Grandchildren.--**An individual who owns (within the meaning of subsection (d)(2), but without regard to this subparagraph) more than fifty percent (50%) of the total combined voting power of all classes of stock entitled to vote or more than fifty percent (50%) of the total value of shares of all classes of stock in a corporation shall be considered as owning the stock in such corporation owned, directly or indirectly, by or for his/her parents, grandparents, grandchildren, and children who have attained the age of twenty-one (21) years.

**(C) Adopted Children.--** For purposes of this Section, a legally adopted child of an individual shall be treated as a child of such individual by blood.

**(f) Other Definitions and Rules.--**

**(1) Definition of Employee.--** For purposes of this section the term "employee" has the same meaning such term is given in Section 1062.01.

**(2) Operating Rules.--**

**(A) In General.--** Except as provided in subparagraph (B), stock constructively owned by a person by reason of the application of paragraphs (1), (2), (3), (4), (5), or (6) of subsection (e) shall, for purposes of applying such paragraphs, be treated as actually owned by such person.

**(B) Members of Family.--** Stock constructively owned by an individual by reason of the application of paragraph (5) or (6) of subsection (e) shall not be treated as owned by him/her for purposes of again applying such paragraphs in order to make another the constructive owner of such stock.

**(3) Special Rules.--** For purposes of this Section--

**(A)** If stock may be considered as owned by a person under subsection (e)(1) and under any other paragraph of subsection (e), it shall be considered as owned by him/her under subsection (e)(1).

**(B)** If stock is owned (within the meaning of subsection (d)) by two or more persons, such stock shall be considered as owned by the person whose ownership of such stock results in the corporation being a component member of a controlled group. If by reason of the preceding sentence, a corporation would (but for this sentence) become a component member of two controlled groups, it shall be treated as a component member of one controlled group. The determination as to the group of which such corporation is a component member shall be made under regulations prescribed by the Secretary which are consistent with the purposes of this Section.

**(C)** If stock is owned by a person within the meaning of subsection (d) and such ownership results in the corporation being a component member of a controlled group, such stock shall not be treated as excluded stock under subsection (c)(2), if by reason of treating such stock as excluded stock the result is that such corporation is not a component member of a controlled group of corporations.

**Section 1010.05.-- Affiliated Group, Related Party.--**

**(a) An Affiliated Group.--** For purposes of this Subtitle an "affiliated group" means:

**(1)** A controlled group of corporations, as such term is defined in Section 1010.04; or

**(2)** One or more chains of corporations connected through stock ownership with a common parent corporation, if--

**(A)** the parent corporation owns directly stock with at least fifty percent (50%) of the total voting power of the stock of such corporation or stock is owned directly by at least one (1) of the corporations within the group of corporations.

2011 PR H.B. 3070

(B) For each of the corporations within the group, other corporation within such group owns fifty percent (50%) or more of the voting stock or shares or of the total value of all classes of stock of such corporation.

**(b) Related Party.--** A person shall be considered as a taxpayer's "related party" if such person is:

**(1)** A component member of a controlled group of corporations, as such term is defined in Section 1010.04, except that, for these purposes, paragraph (2) of subsection (b) of such Section shall not be taken into account to exclude corporations described therein; or

**(2)** A corporation in which the taxpayer owns directly or indirectly fifty percent (50%) or more of the value of the stock of such corporation; or

**(3)** A corporation that owns directly or indirectly fifty percent (50%) or more of the value of its stock; or

**(4)** A corporation in which fifty percent (50%) or more of the value of its stocks is owned by a person who also owns, directly or indirectly, fifty percent (50%) or more of the value of the stock of the taxpayer; or

**(5)** A brother or sister (whether by the whole or half blood), the spouse, ancestor or lineal descendant.


**CHAPTER 2 --** TAX RATES


**SUBTITLE A --** INDIVIDUAL TAX


**Section 1021.01.-- Normal Tax on Individuals.--**

There shall be imposed, charged and paid on the net income of every individual in excess of the exemptions provided in Section 1033.18, and on the net income of an estate or a trust in excess of the credit provided in Section 1083.03, a tax which shall be determined according to the following tables:

**(a) Regular Tax.--**

**(1)** Tax for taxable years beginning after December 31, 2010 but before January 1, 2012:

| If the net taxable income is: | The tax shall be: |
| --- | --- |
| Not more than $ 5,000 | 0 percent |
| In excess of $ 5,000 but | 7 percent of |
| not over $ 22,000 | the excess over $ 5,000 |
| In excess of $ 22,000 but | $ 1,190 plus 14 percent of |
| not over $ 40,000 | the excess over $ 22,000 |
| In excess of $ 40,000 but | $ 3,710 plus 25 percent of |
| not over $ 60,000 | the excess over $ 40,000 |
| In excess of $ 60,000 | $ 8,710 plus 33 percent of |
| | the excess over $ 60,000 |

**(2)** Tax for taxable years beginning after December 31, 2011, but before January 1, 2013:

| If the net taxable income is: | The tax shall be: |
| --- | --- |
| Not more than $ 6,500 | 0 percent |
| In excess of $ 6,500 but | 7 percent of |
| not over $ 23,000 | the excess over $ 6,500 |

2011 PR H.B. 3070

| If the net taxable income is: | The tax shall be: |
|---|---|
| In excess of $ 23,000 but | $ 1,155 plus 14 percent of |
| not over $ 41,300 | the excess over $ 23,000 |
| In excess of $ 41,300 but | $ 3,717 plus 25 percent of |
| not over $ 61,500 | the excess over $ 41,300 |
| In excess of $ 61,300 | $ 8,717 plus 33 percent of |
| | the excess over $ 61,300 |

**(3)** Tax for taxable years beginning after December 31, 2012, but before January 1, 2014:

| If the net taxable income is: | The tax shall be: |
|---|---|
| Not more than $ 9,000 | 0 percent |
| In excess of $ 9,000 but | 7 percent of |
| not over $ 25,000 | the excess over $ 9,000 |
| In excess of $ 25,000 but | $ 1,120 plus 14 percent of |
| not over $ 41,500 | the excess over $ 25,000 |
| In excess of $ 41,500 but | $ 3,430 plus 25 percent of |
| not over $ 61,500 | the excess over $ 41,500 |
| In excess of $ 61,500 | $ 8,430 plus 33 percent of |
| | the excess over $ 61,500 |

**(4)** Tax for taxable years beginning after December 31, 2013, but before January 1, 2015:

| If the net taxable income is: | The tax shall be: |
|---|---|
| Not more than $ 12,000 | 0 percent |
| In excess of $ 12,000 but | 7 percent of |
| not over $ 26,000 | the excess over $ 12,000 |
| In excess of $ 26,000 but | $ 980 plus 14 percent of |
| not over $ 42,750 | the excess over $ 26,000 |
| In excess of $ 42,750 but | $ 3,325 plus 25 percent of |
| not over $ 62,750 | the excess over $ 42,750 |
| In excess of $ 62,750 | $ 8,325 plus 33 percent of |
| | the excess over $ 62,750 |

**(5)** Tax for taxable years beginning after December 31, 2014, but before January 1, 2016:

| If the net taxable income is: | The tax shall be: |
|---|---|
| Not more than $ 16,500 | 0 percent |
| In excess of $ 16,500 but | 7 percent of |
| not over $ 26,500 | the excess over $ 16,500 |
| In excess of $ 26,500 but | $ 700 plus 14 percent of |

| If the net taxable income is: | The tax shall be: |
| --- | --- |
| not over $ 47,250 | the excess over $ 26,500 |
| In excess of $ 47,250 but | $ 3,605 plus 25 percent of |
| not over $ 67,250 | the excess over $ 47,250 |
| In excess of $ 67,250 | $ 8,605 plus 33 percent of |
| | the excess over $ 67,250 |

**(6)** Tax for taxable years beginning after December 31, 2015:

| If the net taxable income is: | The tax shall be: |
| --- | --- |
| Not more than $ 16,500 | 0 percent |
| In excess of $ 16,500 but | 7 percent of the excess |
| not over $ 26,500 | over $ 16,500 |
| In excess of $ 26,500 but | $ 700 plus 14 percent of |
| not over $ 66,500 | the excess over $ 26,500 |
| In excess of $ 66,500 but | $ 6,300 plus 25 percent of |
| not over $ 121,500 | the excess over $ 66,500 |
| In excess of $ 121,500 | $ 20,050 plus 30 percent of |
| | the excess over $ 121,500 |

For taxable years beginning after December 31, 2013, the tax imposed under paragraphs (4), (5), and (6) of this subsection, shall be subject to compliance with the test established in Section 6100.03 of Subtitle F on expenditure control, as certified by the Office of Management and Budget of the general fund's net income as certified by the Department of the Treasury, and economic growth, as certified by the Planning Board.

**(b)** Gradual adjustment of tax rates lower than the rate of thirty-three percent (33%) and the personal exemption and exemption for dependents.

**(1)** For taxable years beginning after December 31, 2010, but before January 1, 2012, the tax imposed under paragraph (1) subsection (a) of this Section (determined without taking this subsection into account) shall be increased by five percent (5%) of the excess of the net income subject to taxation over one hundred thousand dollars ($ 100,000).

**(2)** For taxable years beginning after December 31, 2011, but before January 1, 2013, the tax imposed under paragraph (2) subsection (a) of this Section (determined without taking this subsection into account) shall be increased by five percent (5%) of the excess of the net income subject to taxation over two hundred thousand dollars ($ 200,000).

**(3)** For taxable years beginning after December 31, 2012, but before January 1, 2014, the tax imposed under paragraph (3) subsection (a) of this Section (determined without taking this subsection into account) shall be increased by five percent (5%) of the excess of the net income subject to taxation over three hundred thousand dollars ($ 300,000).

**(4)** For taxable years beginning after December 31, 2013, but before January 1, 2015, the tax imposed under paragraph (3) subsection (a) of this Section (determined without taking this subsection into account) shall be increased by five percent (5%) of the excess of the net income subject to taxation over five hundred thousand dollars ($ 500,000).

**(5) Limitation.--** The increase determined under paragraphs (1), (2), (3), and (4) of this subsection (b) with regard to any taxpayer:

**(A)** For taxable years specified in paragraph (1) of subsection (a), shall not exceed nine thousand four hundred forty dollars ($ 9,440) plus thirty-three percent (33%) of the personal exemption and the exemption for dependents admissible for the taxpayer under Section 1033.18.

**(B)** For taxable years specified in paragraph (2) of subsection (a), shall not exceed nine thousand three hundred sixty-seven dollars ($ 9,367) plus thirty-three percent (33%) of the personal exemption and the exemption for dependents admissible for the taxpayer under Section 1033.18.

**(C)** For taxable years specified in paragraph (3) of subsection (a), shall not exceed eight thousand eight hundred ninety-five dollars ($ 8,895) plus thirty-three percent (33%) of the personal exemption and the exemption for dependents admissible for the taxpayer under Section 1033.18.

**(D)** For taxable years specified in paragraph (4) of subsection (a), shall not exceed eight thousand four hundred twenty-three dollars ($ 8,423) plus thirty-three percent (33%) of the personal exemption and the exemption for dependents admissible for the taxpayer under Section 1033.18.

**(6)** In the case of married individuals living with their spouses and filing separately, and in the case of married individuals living with their spouses and filing jointly who elect the optional tax computation as provided in Section 1021.03, the income levels for purposes of the gradual adjustment provided in this subsection shall be determined separately for each spouse as if he/she were a single taxpayer.

**(7)** The provisions of this subsection (b) shall not apply for taxable years beginning after December 31, 2014.


**Section 1021.02.-- Alternative Basic Tax on Individuals.--**

**(a) Imposition of Alternative Basic Tax on Individuals.--**

**(1) General Rule.--** There shall be imposed, collected, and paid by every individual for each taxable year, in lieu of any other tax imposed under this part, a tax on the net income subject to Alternative Basic Tax, determined according to the following table and minus the basic optional credit for taxes paid abroad (when greater than the regular tax):

| If the adjusted gross income | The tax shall be: |
|---|---|
| subject to alternative basic tax is: | |
| From $ 150,000 but not | |
| over $ 250,000 | 10 % |
| In excess of $ 250,000 but | |
| not over $ 500,000 | 15 % |
| In excess of $ 500,000 | 20 % |

**(2) Net Income Subject to Alternative Basic Tax.--**For purposes of this subsection, the term "net income subject to alternative basic tax" shall mean the taxpayer's gross income for the taxable year, determined according to the provisions of Section 1031.01 of this Subtitle, minus the exemptions established in paragraphs (1), (2), (3)(A), (3)(B), (3)(L), (3)(M), (4)(D), (6), (7), (10), (11), (12), (15), (16), (17), (18), (20), (22), (23), (24), (25), (26), (27), (29), (30), (32), (33), and (34) of subsection (a) of Section 1031.02, the sum of the exempt income received from registered investment companies, in accordance with Section 1112.01, the deductions allowed under Section 1033.15 and 1033.16 and the deductions granted for personal exemptions and exemption for dependents provided in Section 1033.18, except that, for purposes of determining the amount of the net income subject to alternative basic tax shall not apply to income exclusions or exemptions arising from this Subtitle, notwithstanding the same are granted under special laws, except for those provided in Act No. 225 of December 1,

1995, as amended [13 L.P.R.A. §§ 10401 et seq.], known as the "Agricultural Tax Incentives Act," Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," or any previous or subsequent similar law, or in Act No. 78 of September 10, 1993, as amended [23 L.P.R.A. §§ 6001 et seq.], known as the "Puerto Rico Tourist Development Act of 1993," or any successor law, including the "Puerto Rico Tourist Development Act of 2010."

**(3) Regular Tax.--** For purposes of this subsection, the term "regular tax" means the tax liability imposed by Section 1021.01 before the credit granted by Section 1051.01, and the special taxes provided in Sections 1023.06, 1023.07 (related to the compensation paid by international sports associations or federations), 1023.08 (related to special tax on variable annuities in separate accounts), 1023.04, 1023.05, and 1023.02 of this Subtitle.

**(4)** In the case of married individuals living with their spouses and filing separately, and in the case of married individuals living with their spouses and filing jointly who elect the optional tax computation as provided in Section 1021.03, the levels of net income subject to alternative basic tax provided in paragraph (1) for purposes of the alternative basic tax shall be determine separately for each spouse as if he/she were a single taxpayer.

**(5) Credit for Taxes paid to the United States, Possession of the United States and Foreign Countries.--**A credit against the alternative basic tax determined in paragraph (1) of this subsection, for taxes paid to the United States, possessions of the United States and foreign countries may be claimed as follows:

**(A) In General.--** The credit against the alternative basic tax paid to the United States, possessions of the United States and foreign countries for any taxable year shall be the credited that would be determined under Section 1051.01(b) of this Subtitle for such taxable year, if--

**(i)** The sum determined under paragraph (1) of this subsection (b) were the tax against which such credit was claimed for purposes of Section 1051.01(b) of this subtitle with respect to such taxable year and all preceding taxable years; and

**(ii)** Section 1051.01(b) of this Subtitle would have applied on the basis of the net income subject to alternative basic tax in lieu of the net income.

**(6) Credit for Alternative Basic Tax of Previous Taxable Years.--**

**(A) Granting of Credit.--** An amount equal to the credit for alternative basic tax of previous years shall be allowed as a credit against the tax imposed by Section 1021.01.

**(B) Credit for Alternative Basic Tax of Previous Taxable Years.--**For purposes of subparagraph (A) of paragraph (6), the credit for alternative basic tax of previous years is the excess, if any, of:

**(1)** The sum of the net alternative basic tax determined for all previous taxable years beginning after December 31, 2008.

**(2)** The sum of the net alternative basic tax determined for all such previous taxable years beginning after December 31, 2008.

**(C) Limitation.--** The credit allowed under paragraph (6) of this subsection for any taxable years shall not exceed the excess, if any, of:

**(1)** The net regular income, as defined in this subsection, on

**(2)** The net alternative basic tax for such taxable year

**(D) Definitions.--** For purposes of this paragraph (6):

**(i) Net Alternative Basic Tax.--**The term "net alternative basic tax" means the amount of the net income subject to alternative basic tax for each taxable year multiplied by the applicable alternative basic tax rate, and reduced by the credit against the alternative basic tax paid to the United States, possessions of the United States and foreign countries provided in paragraph (5) of this subsection (b).

    **(ii)  Net Regular Tax.--** The term "net regular tax" means the regular tax, as reduced by the credit granted by Section 1051.01 of this Subtitle.

**(7)** In addition to the provisions of paragraphs (1), (2), (3), (4) and (5) of this subsection, and paragraphs (1) and (4) of subsection (b) of Section 1061.01, those individuals whose net income subject to alternative basic tax is one hundred fifty thousand dollars ($ 150,000) or more for the taxable year, shall be bound to file an income tax return under Section 1061.01.

**(8)** Any person, acting in any capacity, who credits or make payments to any individual on account of interests, rents, dividends, interest, and annuities or any other income item subject to alternative basic tax, shall be bound to report such payments to the Secretary and the individual, in such forms, date and manner established by the Secretary through regulations, circular letter or other determination or general administrative communication.

**Section 1021.03.-- Optional Tax Computation in the Case of Married Individuals Living Together, Filing a Joint Return and Both of Whom Work.--**

**(a)** In the case of spouses both of whom work, and who live together and file a joint return, the tax under Sections 1021.01 and 1021.2[sic] shall be, at their choice, the sum of the taxes determined individually, in the form provided to such purposes by the Secretary, as follows:

**(1)** The personal exemption shall be that provided in subparagraph (A) of paragraph (1) of subsection (b) of Section 1033.18;

**(2)** Each spouse shall be entitled to claim fifty percent (50%) of the total sum of the exemption for dependent granted by Section 1033.18(b);

**(3)** The gross income of each spouse shall be determined as follows:

    **(A)** The income earned from services rendered shall be that generated by each spouse individually. For purposes of this paragraph, income for rendered services shall be deemed to be the wages, daily pay, salaries, professional fees, commissions, annuities and pensions incomes, the profit attributable to a trade or business and the income pertaining to distributive shares in partnerships, special partnerships and corporations of individuals, among other; and

    **(B)** The income not covered under subparagraph (A) shall be attributed to each spouse on the basis of fifty percent (50%) of the total;

**(4)** Deductions allowed under paragraphs (1) through (6) and (10) of subsection (a) of Section 1033.15 shall be attributed to each spouse on the basis of fifty percent (50%) of the total.

**(5)** Deductions allowed under paragraphs (7), (8), and (9) of subsection (a) of Section 1033.15 shall be granted to the spouse to whom they individually belong, up to the limits and subject to the provisions of such paragraphs; and

**(6)** Each spouse shall determine his/her normal tax under Section 1021.01(a), the gradual adjustment under Section 1021.01(b) and the alternative basic tax as provided in Section 1021.02 as if he/she were a single taxpayer.

**Section 1021.04.-- Option to File the Income Tax Return under the Provisions of the Internal Revenue Code of 1994, as amended.--**

**(a)** Every taxpayer, who is an individual, shall have the option to compute his/her taxes and file the corresponding tax return to his/her first taxable year beginning after December 31, 2010, and before January 1, 2012 and during the following four taxable years, on the basis of the appropriate provisions of Act No. 120 of October 31, 1994, as amended [13 L.P.R.A. §§ 8006 et seq.] known as the Internal Revenue Code of 1994, in effect as of December 31, 2010.

2011 PR H.B. 3070

**(b)** The taxpayer shall elect the option provided in this Section by filing the income tax return for the first taxable year beginning after December 31, 2010, and before January 1, 2012. Once such option is elected, the same shall be final and binding for the taxable year in which he/she made such election and for each of the following four years.

## SUBCHAPTER B -- TAX ON CORPORATIONS

### Section 1022.01.-- Normal Tax on Corporations.--

**(a)** **Definition of Net Income Subject to Normal Tax.--**For purposes of this Subtitle, the term "net income subject to normal tax," when used in respect to corporations, shall mean the net income minus the credits for dividends received as provided in Section 1033.19(a). In the case of a foreign corporation engaged in the operation of a trade or business, the term "net income subject to normal tax" shall mean the net income actually related to the operation of a trade or business in Puerto Rico.

**(b)** **Imposition of Tax.--** There shall be imposed, collected and paid for each taxable year on the net income subject to normal tax of every regular corporation a tax of twenty percent (20%) of the net income subject to normal tax.

**(c)** **Regular Corporation.--Definition.--**For purposes of this Section and Section 1022.05, the term "regular corporation" means any corporation other than:

**(1)** A corporation subject to the tax imposed by Subchapter A of Chapter 11,

**(2)** A special employee-owned corporation subject to the provisions of Subchapter C of Chapter 11,

**(3)** A special partnership subject to the provisions of Subchapter D of Chapter 11,

**(4)** A corporation of individuals subject to the provisions of Subchapter E of Chapter 11,

**(5)** A foreign corporation not engaged in the operations of a trade or business in Puerto Rico, subject to the tax imposed by Section 1092.01, or

**(6)** A Limited Liability Company subject to the provisions of Chapter 7 of this Subtitle.

### Section 1022.02.-- Surtax on Corporations.--

**(a)** **Net Income Subject to Surtax.--**For purposes of this Subtitle, the term "net income subject to surtax," when used in respect to regular corporations, means the net income subject to normal taxes minus the credit provided in subsection (c) of this Section.

**(b)** **Imposition of Tax.--** It shall be imposed, collected, and paid for each taxable year, on the net income subject to surtax of every corporation of every "regular corporation" (as such term is defined in subsection (c) of Section 1022.01):

**(1)** For taxable years beginning after December 31, 2010, but before January 1, 2014:

| If the net income subject to surtax is: | The tax shall be: |
|---|---|
| Not over $ 1,750,000 | 5 percent |
| Over $ 1,750,000 | $ 87,500 plus 10 percent of the excess of $ 1,750,000 |

**(2)** For taxable years beginning after December 31, 2013, five percent (5%) of the net income subject to surtax, subject to compliance with the test date established in Section 6100.03 of Subtitle F on expenditure control, certified by the Office of Management and Budget of the general fund's net income

as certified by the Department of the Treasury, and economic growth, as certified by the Planning Board.

**(c)** In the case of a controlled group of corporations, under Section 1010.04 or affiliated group under Section 1010.05, for purposes of determining the surtax rate established in this subsection applicable to each one of the corporations members of said group, the total sum of the net income subject to normal tax of each one of the corporations member of the controlled group or affiliated group that are required to file an income tax return under this Subtitle shall be taken into account, minus the deduction provided in subsection (d), subject to the limitations of subsection (e).

**(d)** For purposes of the surtax, a seven hundred fifty thousand dollars ($ 750,000) deduction shall be granted, except that, in the case of a corporation to which this Section and Section 1010.04 apply, such deduction shall be equal to the amount determined under subsection (e).

**(e) Determination of the Deduction Applicable to Certain Controlled Corporations under this Section.--**If a corporation is a member of a controlled group of corporations on a December 31, then, for purposes of subsection (d) of the deduction allowed under said subsection for such corporation for the taxable years that includes said December 31, shall be equal to--

**(1)** seven hundred fifty thousand dollars ($ 750,000) divided by the number of corporations that are component members of the group on such December 31, or

**(2)** if all component members of said controlled group consent (on such date and in such manner as the Secretary by regulations prescribed) to an apportionment plan, such portion of the seven hundred fifty thousand dollars ($ 750,000) allocated to each member in accordance with the plan.

The sum of the prorated amounts under paragraph (2) among the component members of any controlled group or affiliated group shall not exceed seven hundred fifty thousand dollars ($ 750,000).

**(f) Certain Taxable Years of Less than Twelve Months.--**If a corporation:

**(1)** Has a taxable year of less than twelve (12) months that does not include a December 31, and

**(2)** Is a component member of a controlled group of corporations with respect to such taxable year, then for purposes of subsection (d), the deduction allowed under the same of such corporation for such taxable year shall be equal to seven hundred fifty thousand dollars ($ 750,000), divided by the number of corporations which are component members of such group on the last day of such taxable year. For purposes of this subsection, Section 1010.04 shall be applied as if such last day were substituted for December 31.

**Section 1022.03.-- Alternative Minimum Tax Applicable to Corporations.--**

**(a) General Rule.--** It shall be imposed, collected, and paid for each corporation (except foreign corporations not engaged in trade or business in Puerto Rico whose election under Section 1092.01(d) of this Code is not in effect) for each taxable year, in addition to any other tax imposed by this Subtitle, a tax equal to the excess (if any) of--

**(1)** the tentative minimum tax for the taxable year, over

**(2)  the regular tax for the taxable year.**

**(b) Tentative Minimum Tax.--** For purposes of this Section, the term "tentative minimum tax" for the taxable year shall be the greater of:

**(1)** Twenty percent (20%) of so much of the net alternative minimum taxable income for the taxable year as exceeds the exemption amount, reduced by the alternative minimum tax foreign tax credit for the taxable year; or

**(2)** One percent (1%) of the value of the personal property purchases of a related party.

**(c) Definitions.--** For purposes of this Section:

(1) **Alternative Minimum Net Income.--**For purposes of this Section, the term "alternative minimum net income" means the net income subject to normal tax for the taxable year reduced by the deduction granted in Section 1022.02(d), determined on the basis of the adjustments provided in Section 1022.04.

(2) **Regular Tax.--** For purposes of this Section, the term "regular tax" means the regular tax liability for the taxable year, as established in Sections 1022.01 and 1022.02, reduced by the credit granted by Section 1092.01.

(3) **Exemption Amount.--** For purposes of this Section, the term "exemption amount" means the amount of fifty thousand dollars ($ 50,000) (but not to less than zero), reduced by twenty-five percent (25%) of the excess of the alternative minimum net income in excess of five hundred thousand dollars ($ 500,000).

(4) **Personal Property.--** The term "personal property" means tangible personal property used or to be used in connection with the operation of a trade or business in Puerto Rico, except for raw material and intermediate products to be used by the acquirer in manufacturing process in Puerto Rico. The term personal property does not include any property subject to the provisions of Subtitle E.

(5) **Value of the Personal Property.--**

    (A) **General Rule.--** If a bill is rendered to the taxpayer, the amount on which the tax shall be determined shall be the sum collected for the property included in the bill.

    (B) **If No Bill is Rendered.--** If the taxpayer acquires personal property in a transaction in which no bill is rendered, the amount on which the tax shall be determined shall be the fair market value of such property.

(6) **Related Party.--** The term "related party" shall have the same meaning as in Section 1010.05(b).

(7) **Gross Receipts.--** The term "gross receipts" shall have the meaning given to such term in Section 1123(h)(6) of the Puerto Rico Internal Revenue Code of 1994, as amended.

(d) **Exceptions for the Tentative Minimum Tax in Subsection (b)(2) of this Section.--**The tentative minimum tax imposed by subsection (b)(2) of this Section shall not apply to:

(1) When the acquirer of the personal property has gross receipts derived from the operation of a trade or business in Puerto Rico of less than fifty million dollars ($ 50,000,000) for any of the three preceding taxable years.

(2) The personal property acquired for tax exempt operations under a tax exemption decree under Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], or any previous or subsequent similar law.

(3) When the acquirer or any member of the controlled group of which he/she is a member is subject to excise taxes provided in Chapter 7 of Subtitle B of the Internal Revenue Code of Act No. 120 of October 31, 1994, as amended [13 L.P.R.A. §§ 8006 et seq.], known as the "Puerto Rico Internal Revenue Code of 1994."

(4) When the Secretary determines that the value of the personal property acquired from the related party is equal to or substantially similar to the value for which such related party sells such property to a nonrelated party in Puerto Rico.

(5) In the case of the acquisition of a personal property from a related party in tax-exempt exchanges under Subtitle A of this Code, or incidental to the sale or exchange of all or substantially all of the assets of a business outside the ordinary course of business.

(e) **Anti-abuse Rule.--** For purposes of the tentative minimum tax in subsection (b)(2) of this Section, no transaction, or series or transactions the principal purpose of which is to avoid the application of this section, including but not limited to, the use of corporations, partnerships, and other affiliated entities, the use of other Commission arrangements, or the use of any plan resulting in the non-application of this

2011 PR H.B. 3070

Section shall not be deemed to be valid, and any transaction in which market prices with respect to a personal property are not used shall be rendered invalid.

**Section 1022.04.-- Alternative Minimum Net Income Computation Adjustments.--**

(a) **Adjustment.--** In determining the amount of the alternative minimum net income for any taxable year, the following treatment shall apply, in lieu of the treatment applicable for purposes of determining the regular tax.

    (1) **Depreciation.--**

        (A) **Accelerated Depreciation.--**In the case of a taxpayer that elected to use the alternative accelerated depreciation method authorized under Section 1040.11, the straight-line depreciation method authored by Section 1033.07 shall be used.

        (B) In the case of a taxpayer that is not specifically excluded in subsection (e) of this Section, who pursuant to a special law, has used an alternative accelerated depreciation method or other exemptions to the capitalization or depreciation requirements established in this Code, the straight-line depreciation method authorized under Section 1033.07 shall be used.

    (2) **Installment Sales.--** In the case of a dealer in personal property who, after December 31, 1986, disposes of personal property through the installment sales plan as contemplated in Section 1040.05, the income from said disposition shall be determined without taking into account the installment sales method, and all payments to be received shall be deemed as received in the taxable year of such disposition.

    (3) **Long-term Contracts.--** In the case of a taxpayer who uses the contract completion method to declare income under long-term contracts as provided in Section 1040.06, the gross taxable income related to such contract shall be determined through the accounting method known as percentage of completion method.

    (4) **Interest Expense.--** In the case of a financial institution, Section 1033.17(f) shall apply with regard to the proportional assignment of interest expenses attributable to the interest income from exempt liabilities, regardless of their date of acquisition, except that the term "exempt liability" subject to this assignment shall not include liabilities consisting of mortgage loans granted or secured before September 1, 1987, by the Government and its agencies, municipalities, and instrumentalities, whose interest would have been deductible from gross income for purposes of the taxes imposed by Act No. 34 of June 4, 1975, as amended [7 L.P.R.A. §§ 1171 et seq.].

    (5) **Deduction of Net Operating Loss.--**In determining the alternative tax, the deduction of a net operating loss shall be allowed, as provided in subsection (d), in lieu of what is provided in Section 1033.14.

    (6) **Deduction for Expenses for Services Rendered Outside of Puerto Rico.--**In determining the alternative minimum tax no deduction shall be allowed for expenses incurred or paid to a related party, as such term is defined in Section 1091.01(a)(3) or 1092.01(a)(3) of this Subtitle, whichever applies, for services rendered outside of Puerto Rico if such payment for services are not subject to income taxes under this Code.

(b) **Adjustment for Excess Net Income on the Books.--**The alternative minimum net income shall be increased by fifty percent (50%) of the amount, if any, by which the adjusted net income on the books exceeds the alternative minimum net income, determined without considering the increase provided herein, nor the deduction for net operating loss admissible for purposes of the alternative tax. For purposes of this subsection, the following is provided:

    (1) **In General.--** The term "adjusted net income on the books" shall mean the net income or net loss determined in the income statement of the taxpayer, adjusted as provided in this subsection.

    (2) **Tax-exempt Interest.--** The taxpayer shall exclude income from interest derived from tax-exempt liabilities under the provisions of Section 1031.02(b)(4) or under the provisions of any special law. The

net income on the books shall be increased by the amount of interest expense assigned to exempt interest under subsection (a)(4) and any amount that can be attributed to said exempt interest pursuant to the provisions of Section 1033.17(a)(5). Those expenses (including interest expenses) incurred upon the acquisition or retention of exempt liabilities consisting of mortgage loans granted or secured before September 1, 1987, by the Government and its agencies, municipalities, and instrumentalities, which would have been deductible from gross income for purposes of the tax imposed by Act No. 34 of June 4, 1975, as amended [7 L.P.R.A. §§ 1171 et seq.], known as the "Financial Institutions Franchise Act," shall not be taken in consideration in the determination of this adjustment.

**(3) Adjustment for Amortization of Goodwill and Other Intangibles Other Than Goodwill.--**The taxpayer shall adjust his/her costs or expenses for any difference between the cost of the amortization of goodwill and other intangibles taken in the determination of his/her net income on the books and the deduction for amortization of goodwill and other intangibles allowed by Section 1033.07.

**(4) Dividends.--** The taxpayer shall exclude the total amount received as dividends from a domestic corporation or from industrial development income or tourist development income (as defined in the Puerto Rico Tourist Development Act of 1993, as amended, or any previous or subsequent similar law) up to the amount that such dividends have not been included in the net income for regular tax purposes.

**(5) Industrial Development Income and Tourist Development Exempt Income.--**Net income on the books shall not include net industrial development income or net income that constitutes net tourist development income, as said term is defined in the Puerto Rico Tourist Development Act of 1993, as amended, or any previous or subsequent similar law.

**(6) *Bona-fide*** Agricultural Business Income.--Net income on the books shall be reduced by the amount of the deduction for income derived from a *bona-fide* agricultural business allowable under the provisions in Section 1033.12.

**(7) Adjustment for Use of the Equity Method.--**The taxpayer shall exclude or include, as the case may be, the amount of any income or loss items attributable to his/her investment in another corporation that have been computed by the accountant in the taxpayer's income statement, having used the equity method.

**(8) Adjustments for Certain Taxes.--**The taxpayer shall exclude any Puerto Rico income taxes and any income and excess profit taxes imposed by the United States, any United States possessions, or any foreign country, that were directly or indirectly taken into account in the taxpayer's income statement. The preceding sentence shall not apply to taxes imposed by a foreign country, the United States, or United States possessions, if the taxpayer elects not to avail him/herself of the benefits of Section 1051.01.

**(9) Foreign Corporations.--** In the case of a foreign corporation, the necessary adjustments shall be made for the net income on the books to reflect only the income, expense, and loss items that are actually related to the operation of a trade or business in Puerto Rico.

**(10) Catastrophe Loss Insurance Reserve.--**The net income on the books shall be reduced by the amount provided as reserve for payment of catastrophe loss insurance required by Chapter XXV of Act No. 77 of June 19, 1957, as amended [26 L.P.R.A. §§ 101 et seq.], known as the Insurance Code of Puerto Rico.

**(11) Secretary's Authority to Adjust Items.--**The Secretary shall, through regulations to that effect, adopt the necessary provisions to avoid the omission or duplication of any item when determining the adjusted net income on the books.

**(c) Income Statement.--** For purposes of this Section, the term "income statement" shall have the meaning provided in subsection (c) of Section 1061.15.

**(d) Definition of Net Operating Loss Deduction for Determining the Alternative Tax.--**

(1) **In General.--** For purposes of subsection (a)(5) of this Section, the term "net operating loss deduction for determining the alternative tax" means the net operating loss deduction allowed under Section 1033.14, except that--

    (A) The amount of such deduction shall not exceed ninety percent (90%) of the alternative minimum net income, determined without regard to such deduction; and

    (B) in determining the amount of such deduction, the net operating loss for any taxable year, within the meaning of Section 1033.14(a), shall be adjusted as provided in subsections (a) and (b) of this Section.

(e) **Exception for Certain Corporations.--**The provisions of Sections 1022.03 to 1022.04 shall not apply to:

(1) special partnerships that have an election in effect for the taxable year under the provisions of Section 1114.12;

(2) corporations of individuals who have an election in effect for the taxable year under the provisions of Section 1115.02;

(3) the registered investment companies that pay taxes according to the provisions of Subchapter B of Chapter 11;

(4) real estate investment trusts exempt under Section 1101.01(a)(8)(F);

(5) special employee-owned corporations organized pursuant to Act No. 164 of December 16, 2009, as amended [14 L.P.R.A. §§ 3501 et seq.], known as the "General Corporations Act," or any other similar or subsequent law;

(6) corporations that are operating or operate under the provisions of Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," or any other preceding or subsequent similar law, or under Act No. 78 of September 10, 1993 [23 L.P.R.A. §§ 6001 et seq.], known as the "Puerto Rico Tourist Development Act,", or any other preceding or subsequent similar law, or under the provisions of any other special law that grants a tax exemption with regard to income derived from its operations, but only with regard to income derived from its operations covered under a tax exemption decree, resolution or grant conferred under said laws, or up to the amount of the exemption granted by any special law; and

(7) corporations that operate a *bona fide* agricultural business up to the limit that the income derived from such activity is allowed as a deduction under the provisions of Section 1033.12.

### Section 1022.05.-- Surtax on Corporations Improperly Accumulating Surplus or Benefits.--

(a) **Imposition of Tax.--** If a corporation, however created or organized, is formed or utilized for the purpose of avoiding the imposition of the surtax upon its shareholders or the shareholders of any other corporation by permitting earnings and profits to accumulate instead of being divided or distributed, there shall be imposed, collected, and paid for each taxable year, in addition to other taxes imposed by this Subtitle, upon the net income of such corporation, a surtax equal to fifty percent (50%) of the amount of the "net income determined by Section 1022.05."

*(b) Prima Facie* Evidence.--The fact that any corporation is a mere holding or investment company shall be *prima facie* evidence of the purpose to avoid the income tax with respect to shareholders.

(c) **Evidence of Purpose.--** The fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary. In determining the reasonable needs of the business, exempt income or income that has been exempt, referred to in subsection (f), shall not be taken into account.

(d) **Definition of Net Income Determined by Section 1022.05.--**As used in this subtitle, the term "net income determined by Section 1022.05" means the net income computed without the capital loss carry over benefit

set forth in Section 1034.01(e), of a taxable year beginning after June 30, 1995, and computed without the net operating loss deduction set forth in Section 1033.14, minus the sum of--

(1) **Taxes.--** Income Taxes imposed by the Government of Puerto Rico, paid or accrued during the taxable year up to the amount not allowable as a deduction by Section 1033.04; but not including the tax imposed by this Section or the corresponding section of a prior income tax law.

(2) **Disallowed Charitable Contributions.--**Contributions or gifts payments made within the taxable year, not otherwise allowed as a deduction, to or for the use of donees described in Section 1033.10, for the purposes therein specified. For purposes of the preceding sentence, payment of any contribution or gift shall be considered as made within the taxable year if and only if it is considered for purposes of Section 1033.10, as made within such year.

(3) **Disallowed Losses.--** Losses from sales or exchanges of capital assets which are disallowed as a deduction by Section 1034.01(d).

(e) **Income Not Placed on Annual Basis.--**Section 1040.10 shall not apply in the computation of the tax imposed by this Section.

(f) **Exempt Income.--** The term "net income determined by Section 1022.05" shall not include the income exempt or that has been exempt from taxes under Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," or under Act No. 78 of September 10, 1993 [23 L.P.R.A. §§ 6001 et seq.], known as the "Puerto Rico Tourist Development Act," and any other preceding or subsequent similar law.

(g) The surtax to which this Section refers shall not apply to any corporation having at least eighty percent (80%) of its "net income determined by Section 1022.05" invested in: obligations of the Government of Puerto Rico or any of its instrumentalities or political subdivisions.

## Section 1022.06.-- Election to File under the Provisions of the Internal Revenue Code of 1994, as amended.--

(a) Any taxpayer that is a corporation, including limited liability companies, are hereby granted the option of computing its taxes and filing the income tax return pertaining to its first taxable year beginning after December 31, 2010, and before January 1, 2012, and during the following four taxable years, in accordance with the provisions of Act No. 120 of October 31, 1994, as amended [13 L.P.R.A. §§ 8006 et seq.], known as the "Internal Revenue Code of 1994," in effect as of December 31, 2010.

(b) Any partnership organized before the effective date of the Code, for purposes of Subtitle A, is hereby granted the option of computing its taxes and filing the income tax return pertaining to its first taxable year beginning after December 31, 2010, and before January 1, 2012, and during the following four taxable years, in accordance with the provisions of Act No. 120 of October 30[sic], 1994, as amended [13 L.P.R.A. §§ 8006 et seq.], known as the "Internal Revenue Code of 1994," in effect as of December 31, 2010.

(c) The taxpayer shall elect the option provided in this Section by filing the income tax return for the first taxable year beginning after December 31, 2010, and before January 1, 2012. Once such option is elected, the same shall be final and binding for the taxable year in which he/she made such election and for each one of the following four (4) years.

## SUBCHAPTER C --  PREFERRED RATE TAXES

## Section 1023.01.-- Special Surtax on Separate Accounts.--

(a) A tax shall be imposed and collected, in addition to other taxes imposed by law to life insurance companies, in the amount of point ten percent (.10%) on the total amount of assets at the close of its taxable year in the separate accounts maintained by said life insurance company established under the terms and

conditions provided in Sections 13.290 to 13.350 of the Insurance Code of Puerto Rico, as shown on the annual report required from the life insurance company under the Insurance Code of Puerto Rico.

**(b)** The tax imposed by this Section for any taxable year shall be reported and be payable in its entirety by the life insurance company not later than the due date prescribed by Subtitle A to file its income tax return for that taxable year.

## Section 1023.02.-- Special Tax to Individuals, Estates, and Trusts on Net Long-term Capital Gains.--

**(a)** Ten Percent (10%) Tax Rate.--Any individual, estate, or trust shall pay, in lieu of any other taxes imposed by this Subtitle, a ten percent (10%) tax on the excess amount of any net long-term capital gain on any net short-term capital loss, as said terms are defined in Section 1034.01, or may opt to pay taxes according to the normal tax rates, whichever is of greater benefit to the taxpayer.

**(b)** Form of Payment.-- The tax imposed by subsection (a) shall be paid as provided in Section 1061.19 and 1061.20.

## Section 1023.03.-- Alternative Tax to Corporations on Net Long- Term Capital Gains.--

**(a)** If, for any taxable year, the net long-term capital gain of any taxable year exceeds the short-term capital loss, there shall be imposed, collected and paid, in lieu of the tax imposed by Sections 1022.01, 1022.02, and 1022.03, a tax determined as follows, but solely if such tax were lower that the tax imposed by said Sections:

**(1)** Firstly, a partial tax shall be computed on the net income without including the total amount of the excess of the net capital gain at the rate and in the manner as if this section did not exist.

**(2)** Then, an amount equal to fifteen percent (15%) of such excess shall be determined.

**(3)** The total tax shall be the partial tax computed under paragraph (1), plus the amount computed under paragraph (2).

## Section 1023.04.-- Tax on Individuals, Estates, and Trusts with Regard to the Interest Paid or Credited on Deposits in Interest Bearing Accounts.--

**(a)** Tax Rate.--

**(1)** Special Tax Rate.-- Any individual, estate or trust may avail itself of the option to pay, in lieu of any other taxes imposed by this Subtitle, a tax equal to ten percent (10%) or to seventeen percent (17%) in the case of an individual retirement account, on the total amount of nonexempt interest paid to it, or credited on deposits to the interest-bearing accounts in credit unions, savings associations authorized by the Federal Government or the Government of Puerto Rico, commercial and mutual banks, or any other banking institution located in Puerto Rico, provided that said taxpayer meets the requirements of subsection (b).

**(2)** Normal Tax Rate.-- Any individual, estate or trust may opt to pay a tax determined according to the normal tax rates.

**(3)** Excess of Withheld Tax.-- In the event that the tax withheld in accordance with this Section is greater that the tax resulting from the application of the applicable preferred tax rate provided in paragraph (1) of this subsection (a), the net income subject to such preferred tax rate, may be applied to such excess as a credit against the regular tax.

**(4)** Special Rules.--

**(A)** Brokerage House as Nominee.--This section applies to the interest paid or credited on deposits in interest-bearing accounts belonging to one (1) or more individuals, estates and trusts and are registered in the name of a brokerage house as nominee.

**(B) Individual Retirement Account.--**The seventeen percent (17%) tax shall apply to the portion of any amount paid or distributed from an individual retirement account consisting of interest described in this section.

**(C)** In the cases described in subparagraphs (A) and (B), said provisions shall apply only to interest paid or credited with respect to shares in said account owned by individuals, estates and trusts.

**(b) Requirements to Avail Oneself of the Provisions of this Section.--**

**(1) Option.--**

**(A)** The option to pay only the ten percent (10%) tax referred to in paragraph (1) of this subsection (a) is available to those recipients of interest that not later than April 15 of each taxable year or on the opening date of an interest-bearing account authorize the payer thereof to withhold the tax imposed by subsection (a).

**(B)** The interest paid or credited to the taxpayer on accounts in effect between January 1 of each year and the date on which the option is exercised, provided that the latter is exercised within the term prescribed, may be taxed at the rate of ten percent (10%) when filing the income tax return.

**(C)** In the case of an individual retirement account (IRA), the option to pay the seventeen percent (17%) tax may be exercised at the time of making the payment or the distribution of the account.

**(D)** When an individual, estate, or trust has one or more interest-bearing accounts in one or more financial institutions, the same shall be bound to select the financial institution or account where the exemption on paid or credited interest shall be applied as established in Section 1031.02(a)(3)(K) and to notify the latter, and each of the other institutions in which said accounts are held, of the selection. In these cases, the institution thus selected shall be required to deduct and withhold the ten percent (10%) tax or the seventeen percent (17%) tax, as applicable, on the amount paid or credited for interest in excess of the first five hundred dollars ($ 500) accrued in each quarter. The other financial institutions shall withhold said ten percent (10%) or seventeen percent (17%), as applicable, taking as the base the total amount of interest paid or credited.

**(E)** Every individual, estate or trust that does not exercise the option provided herein shall be required to pay the income tax based on the normal rates.

**(F)** The withholding agent shall proceed to withhold, with regard to interest paid or credited from the date the option is exercised according to the procedure established in Section 1062.09 and shall be subject to the provisions thereof.

**(G)** Once exercised, this option shall continue in effect until the recipient of the interest chooses otherwise.

**(2) Manner of Exercising the Option.--**For purposes of claiming the benefits of the option provided in paragraph (1), the recipient of interest shall deliver to each payor of the same a written authorization in which it is stated under his/her signature that he/she opts for the withholding of the tax imposed by subsection (a).

**(3) Special Procedure in the Case of Accounts in Brokerage Houses.--**

**(A)** For the purpose of applying paragraphs (1) and (2), in the case of an account belonging partially or wholly to one (1) or more individuals, estates or trusts, which has been acquired through a brokerage house and is registered in the name of a brokerage house as nominee, or of interest attributable to the distributive share in a partnership, special partnership or corporation of individuals, all references in said paragraphs to the phrases "payor of interest," "financial institution that shall apply the exemption on interest," "selected institution," and "withholding agent" include the brokerage house in whose name the account is registered, the partnership, special partnership, or the corporation of individuals, as the case may be.

**(B)** With regard to the portion of an account that belongs to one (1) or more individuals, estates or trusts, said brokerage house can act as the withholding agent and may receive the authorization of

each individual, estate or trust to withhold the ten percent (10%) or the seventeen percent (17%), as applicable, on interest paid or credited by the financial institution to the brokerage house, and in turn, paid or credited to the taxpayer by the brokerage house, and can be the institution selected to deduct and withhold the ten percent (10%) tax or the seventeen percent (17%) tax, as applicable, on the amount paid or credited on account of interest in excess of the first five hundred dollars ($ 500) accrued in each quarter.

**Section 1023.05.-- Tax on Individuals, Estates, and Trusts with Regard to the Interest Paid or Credited on Bonds, Notes, or other Obligations of Certain Corporations or Partnerships and on Certain Mortgages.--**

(a) **Tax Rate.--**

(1) **Special Tax Rate.--** Any individual, estate, corporation, partnership or trust may avail itself of the option to pay, in lieu of any other taxes imposed by this Subtitle, a tax equal to ten percent (10%) on the total amount of nonexempt eligible interest paid to it, or credited on bonds, notes, or other obligations issued by a corporation or partnership described in paragraph (1) of subsection (b), on mortgages constituted on residential property located in Puerto Rico described in paragraph (2) of said subsection.

(2) **Normal Tax Rate.--** Any individual, estate, corporation, partnership or trust may opt to pay a tax determined according to the normal tax rates.

(3) **Excess of Withheld Tax.--** In the event that the tax withheld in accordance with this Section is greater that the tax resulting from the application of the preferred tax rate provided in paragraph (1) of this subsection (a), the net income subject to such preferred tax rate, may be applied to such excess as a credit against the regular tax.

(b) **Definition of Eligible Interest.--**For purposes of this Section, the term "eligible interest" means:

(1) **Bonds, Notes, or other Obligations.--**Any interest on:

(A) Bonds, notes and other obligations issued:

(i) By a domestic corporation or partnership; or

(ii) By a foreign corporation or partnership when not less than eighty percent (80%) of its gross income derived during the three (3) taxable year period ending with the close of the taxable year prior to the date of payment or crediting of the interest, constitutes income that is actually related to the operation of a trade or business in Puerto Rico.

(B) Shares in trusts that represent an interest on the bonds, notes or other obligations described in subparagraph (A), provided, that the proceeds of said bond, note or other obligation is solely and exclusively used in the trade or business in Puerto Rico of said corporation or partnership, whether domestic or foreign, or its subsidiaries, within a period of not more than twenty-four (24) months following the date of issue of said bond, note or other obligation.

(2) **Mortgages on Residential Property Located in Puerto Rico.--**

(A) Any mortgage loan interest on residential property located in Puerto Rico, whose mortgage has been executed after July 31, 1997, and insured or secured by virtue of the provisions of the National Housing Act, approved on June 27, 1934, as amended, or by virtue of the provisions of the Servicemen's Readjustment Act of 1944, as amended.

(B) Any interest on mortgage loans on residential property located in Puerto Rico, that is not exempt under Section 1031.02 and shares in trusts that represent an interest on said loans (or any other instrument that represents an interest on said loans), provided, that the interest recipient is not a financial institution as such term is defined in Section 1033.17(f).

(c) **Requirements to Avail Oneself of the Provisions of this Section.--**

(1) **Investment Report.--** Every domestic or foreign corporation or partnership shall be bound to render a report to the Secretary on the investments made within ninety (90) days following the twenty-four (24)

months from the date of issue of the bond, note or other obligation, or after having made the total investment, whichever occurs first.

**(2) Manner of Exercising the Option.--**

**(A)** The option to pay only ten percent (10%) of the tax referred to in paragraph (1) of subsection (a), is available to the recipients of eligible interest that, on the date of acquiring the bond, note, or other obligation or mortgage loan described in the above subsection (b), authorize the payer thereof to withhold the tax imposed by said subsection (a).

**(B)** Any individual, estate, corporation or trust that does not exercise the option provided herein shall be bound to pay the income tax based on the normal rates.

**(C)** The withholding agent shall make the withholding with regard to interest paid or credited as of the date on which the option is exercised pursuant to the procedures established in Section 1062.09 and shall be subject to the provisions thereof. This option, once exercised, shall continue in force until the interest recipient should opt otherwise.

**(D) Manner of Exercising the Option.--**In order to avail him/herself of the option provided in subparagraph (A), the interest recipient shall render to each payor thereof a written authorization stating under his/her signature that he/she opts for the withholding of tax imposed by subsection (a).

**Section 1023.06.-- Special Tax over Dividend Distribution of Certain Corporations.--**

**(a) Imposition of Tax.--** There shall be imposed, collected and paid, in lieu of any other taxes imposed by this Subtitle, on the total amount received by any eligible person (as said term is defined in subsection (d)), derived from any eligible distribution (as said term is defined in subsection (c)) of dividends:

**(1)** of a domestic corporation, or

**(2)** of dividends of a foreign corporation when not less than eighty percent (80%) of its gross income derived during the three (3) taxable year period ending with the close of the taxable year prior to the statement of such dividends, constitutes income that is actually related to the operation of a trade or business in Puerto Rico, the special tax provided in subsection (b), without taking into consideration any deduction or credit provided by this Subtitle. This section shall not apply to the amounts distributed in a total or partial liquidation of a corporation.

**(b) Special Tax.--** The special tax provided in subsection (a) shall be ten percent (10%) of the total amount received by every eligible person derived from any eligible distribution made by a corporation.

**(c) Definition of Eligible Distribution.--**For purposes of this Section, the term "eligible distribution of dividends" means any distribution made by a corporation described in subsection (a), to an eligible person, be it in money or in property, from its earnings or profits accumulated after February 28, 1913. In the case of an eligible person who is a resident of Puerto Rico or a Citizen of the United States, the term "eligible distribution of dividends" shall include the distributive share or proportional share, as the case may be, of said eligible person in such portion of the net income of a partnership, special partnership or corporation of individuals from eligible distributions.

Notwithstanding the above, the term "eligible distribution of dividends" shall not include the distributions totally or partially exempt by subparagraphs (A), (B), (C), and (D) of paragraph (4), subsection (b) of Section 1031.02, or by Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], better known as the "Economic Incentives Act for the Development of Puerto Rico," or any other preceding or subsequent similar law, and that portion of the distribution received by a nonresident of Puerto Rico which is deemed to be from sources outside Puerto Rico under Section 1035.02. Eligible distributions shall not include those made by corporations under Subchapter E of Chapter 11, except with respect to a distribution described in Section 1115.06(c)(1), or those effected by real estate investment trusts exempt under the provisions of Section 1101.01(a)(8)(F) or Section 1082.01.

**(d) Definition of Eligible Person.--**For purposes of this Section, the term "eligible person" means any individual, resident or nonresident, trust or estate.

**(e) Requirement to Deduct and Withhold at the Source and Pay or Deposit the Tax Imposed by this Section.--**

    **(1) Requirement to Deduct and Withhold.--**Every person, notwithstanding the capacity in which the person is acting, that has control, receipt, custody, disposition or payment of eligible distributions described in subsection (c) shall deduct and withhold from said distributions an amount equal to ten percent (10%) of the total amount of each distribution of dividends of corporations. A partnership, special partnership or a corporation of individuals receiving an eligible distribution shall be the person required to meet the requirements of this subsection. For these purposes, the distributive share or proportional share of an eligible person in the net income of a partnership, special partnership or corporation of individuals derived from eligible distributions shall be treated as if received by said eligible person at the same time that the distribution is received by the partnership, special partnership or corporation of individuals.

    **(2) Requirement to Pay or Deposit Deducted or Withheld Taxes.--**Every person required to deduct and withhold any tax under the provisions of this section, under regulations prescribed by the Secretary in accordance with this Subtitle, and to remit the payment of said tax to the Government of Puerto Rico, shall pay the amount of tax so deducted and withheld in the Internal Revenue Tax Collection Offices of Puerto Rico, the Treasury Department, or shall deposit the same in any of the banking institutions designated as depositories of public funds that have been authorized by the Secretary to receive said tax. The tax shall be paid or deposited on or before the fifteenth day of the month following the date in which the eligible distribution was made.

    **(3) Liability for the Tax.--** Every person required to deduct and withhold any tax under the provisions of this section shall be liable to the Secretary for the payment of said tax and shall not be liable to any other person for the amount of any of these payments.

    **(4) Tax Return.--** Every person required to deduct and withhold any tax under the provisions of this section shall file a return in connection to the same on or before February 28 of the following year. Said return shall be filed with the Secretary and shall have that information and shall be made in such manner as prescribed by the Secretary by regulation.

    **(5) Failure to Withhold.--** If the withholding agent, in violation of the provisions of this section, fails to make the withholding referred to in paragraph (1), the amount which should have been deducted and withheld (unless the recipient of the eligible distribution pays the tax to the Secretary) shall be collected from the withholding agent following the same procedure that would be used if it were a tax owed by the withholding agent.

    **(6) Penalty.--** See Section 6041.01 of Subtitle F of this Code for provisions related to penalties and additions to the tax.

**(f) Non-deductibility of the Tax when Computing Net Income.--**The tax deducted, withheld, and paid under this section shall not be allowed as a deduction to the withholding agent nor to the recipient of the eligible distribution when computing net income for purposes of any income tax.

**(g)** If the amount of any tax imposed by this section or any part thereof is not paid on or before its due date, the total unpaid amount of the tax shall be assessed, collected and paid in the same manner as any other tax imposed by this Subtitle, and the provisions regarding interest, surcharges, and penalties established in Subtitle F of the Code shall apply.

**(h) Liability of the Eligible Person.--**Any liable eligible person, as stated in paragraphs (1), (2) and (3), shall be liable for the special tax imposed by this section with respect to any eligible distribution received, to be deducted, withheld at the source and paid to the Secretary within the date prescribed by this Subtitle. If with respect to any distribution, the special tax provided by this section or any portion thereof, is not paid within the period prescribed by this Subtitle, said distribution shall not be considered an eligible distribution

subject to the payment of the special tax provided in this section to the liable eligible person stated in paragraphs (1), (2) and (3), unless it is shown that said failure is due to a reasonable cause, and not to a willful disregard. The fact that a distribution is considered as non-eligible by reason of the provisions of this subsection, shall have no effect, in any way of releasing or exonerating the withholding agent from the requirements and liabilities provided in this section: For purposes of this subsection, the term "liable eligible person" includes:

**(1)** The directors of a corporation in office when the withheld tax was not timely paid to Treasury;

**(2)** any shareholder that owns more than fifty percent (50%) of the total combined voting power of all classes of voting stocks in a corporation, or

**(3)** a partner in any type of partnership or joint venture.

**(i) Exceptions.--**

**(1) Option.--** The provisions pertaining to the special tax imposed by this section shall apply to every eligible distribution, except those which the eligible person opts for them not to apply. The option shall be exercised pursuant to the regulations promulgated by the Secretary. When the taxpayer exercises the option so that the provisions pertaining to the special tax imposed by this Section are not applicable, this shall not have the effect, in any way, of releasing or exonerating the withholding agent from the duties of making the corresponding withholding under the provisions of Section 1062.08. The option shall be final and irrevocable.

**(2) Option in the Return.--** The Secretary shall allow the taxpayer to include the dividend as net income subject to taxation and receive a credit for the tax withheld pursuant to this section, as provided under regulations.

**(3) Excess of Withheld Tax.--** In the event that the tax withheld in accordance with subsection (e) is greater that the tax resulting from the application of the preferred tax rate provided in subsection (b), the net income subject to such preferred tax rate, may be applied to such excess as a credit against the regular tax.

**(4) Transitory Provisions.--** Any eligible distribution made by a corporation or partnership during the period comprising from July 1, 2006 to December 31, 2006, shall be subject to a special tax rate of five percent (5%) of the total amount received by any eligible person, in lieu of the special tax established by subsection (b) and was not regularly distributed to the stockholders or partners of such entities may be kept in the books of the corporation or partnership in question in order to comply with any sort of contractual, commercial or statutory commitment of said entities, to be taken into account at the time any sort of distribution is to be made by the Board of Directors or managing partners or directors of said corporations or partnerships, and subject to the discretion of the former, in terms of the source or origin of the money to be distributed in the future by any of said entities.

### Section 1023.07.-- Compensation Paid by International Sports Associations or Federations.--

**(a) Imposition of Tax.--** A tax shall be imposed, collected and paid, in lieu of any other taxes imposed by this Subtitle, a special twenty percent (20%) tax on the total amount received by any resident or nonresident individual (including, but without limitation, players, coaches and technical staff) for any compensation received for personal services rendered in Puerto Rico as employee or independent contractor of any team member of international associations or federations or associations or entities affiliated to such teams described in subsection (c).

**(b)** For purposes of this Section, the amount of the compensation attributable to personal services rendered in Puerto Rico shall be determined on the basis of the proportion there is between the number of days of service in Puerto Rico over the total number of calendar days covered in the compensation agreement of said individual with the team, the association or affiliated entity that includes the days of service in Puerto Rico.

(c) The special tax provided by this section shall apply to compensation paid by the following international associations or federations:

(1) Major League baseball teams, including without it being understood as a limitation, the Office of the Commissioner of Major League Baseball, Major League Baseball Properties Inc., Major League Baseball Enterprises Inc., Baseball Television Inc., Major League Baseball Advanced Media, L.P. and their succeeding entities, in it being understood as a limitation, the National Basketball Association Commissioner's Office, the NBA TV, NBA Latin America Inc., the Women's National Basketball Association, better known as the "WNBA" or the National Basketball Development League, better known as the "NBDL" and any succeeding entity in connection with the holding of "NBA" basketball games in Puerto Rico.

(d) **Requirement to Deduct and Withhold at the Source and to Pay and Deposit the Tax Imposed by this Section.--**Any person regardless of the capacity in which he/she is acting, who has control, receipt, custody, disposal or payment of the amounts of compensation described in subsections (a) and (b) of this section, shall deduct and withhold said twenty percent (20%) tax and shall pay the amount of said tax thus deducted and withheld in the Internal Revenue Tax Collection Offices of Puerto Rico or deposit it in any of the banking institution designated as depositories of public funds that have been authorized by the Secretary to receive said tax. The tax shall be paid or deposited not later than the fifteenth day of the month following the date on which the payment subject to the twenty percent (20%) withholding imposed by this subsection was made. The amounts subject to the deduction and withholding imposed by this subsection shall not be subject to the provisions of Section 1062.08.

(e) **Failure to Withhold.--** If the withholding agent, in violation of the provisions of subsection (d), fails to withhold the twenty percent (20%) tax imposed by said subsection (d), the amount that should have been deducted and withheld (unless the recipient of the income pays the tax to the Secretary) shall be collected from the withholding agent, following the same procedure that would be used if it were a tax owed by the withholding agent. The recipient of the payment shall be required to pay the tax not withheld through the filing of a return within the term provided in Section 1061.15 and the payment of the tax pursuant to the provisions of Section 1061.16. Notwithstanding the payment of the tax by the recipient, the withholding agent shall be subject to the penalties provided in subsection (h) of this section.

(f) **Tax Liability.--** Any person who is required to deduct and withhold the twenty percent (20%) tax imposed by this Section shall be liable to the Secretary for the payment of said tax and shall not be liable to any other person whatsoever for the amount of any payment thereof.

(g) **Tax Return.--** Any person who is required to deduct and withhold the twenty percent (20%) tax imposed by this section shall file a return with regard to the same no later than February 28 of the year following the year in which the payment was made. Said return shall be filed with the Secretary and shall contain such information and be prepared in such form as established by the Secretary through regulations. Any person who files the return required by this subsection shall not be required to file the information return required by subsection (j) of Section 1062.08.

(h) **Penalty.--** See Section 6041.01 of Subtitle F of this Code for provisions related to penalties and additions to the tax.


**Section 1023.08.-- Special Tax on Variable Annuities in Separate Accounts.--**

(a) **Imposition of Tax.--** When filing his/her income tax return, the taxpayer may elect to treat the amount of the lump sum includible in the gross income as a long-term capital gain.

(b) **Definitions.--**

(1) **Lump Sum.--** For the sole purposes of this section, the term "lump sum" means amounts payable during the same taxable year under a variable annuity contract issued by an eligible insurance company.

(2) **Eligible Insurance Company.--**For the sole purposes of this section, the term "eligible insurance company" means an insurance company organized under the Laws of the Government of Puerto Rico and authorized as such by the Insurance Commissioner of Puerto Rico, or a foreign insurance company duly authorized to conduct insurance business by the Insurance Commissioner of Puerto Rico, when not less than eighty percent (80%) of its gross income derived during the period of three (3) taxable years ending at the close of the taxable year prior to the date of payment of the annuity or eligible periodic payment that constitutes income that is actually related to the operation of a trade or business in Puerto Rico.

(3) **Variable Annuity Contract.--**For the sole purposes of this section, the term "variable annuity contract" means an annuity insurance contract or an endowment insurance contract, the funds of which were deposited in separate accounts subject to the special surtax imposed under Section 1023.01 of this Act.

## CHAPTER 3.-- COMPUTATION OF TAXABLE INCOME

## SUBCHAPTER A -- DETERMINATION OF NET INCOME, GENERAL CONCEPTS

## Section 1031.01.-- Gross Income.--

(a) **General Definition.--** Except as otherwise provided in this Code, the term "Gross Income" means any income, gain, or profit from whatever source derived or earned. Gross income includes, but is not limited to, the following types of sources:

(1) Gains, profits, and income derived from salaries, wages, or compensation for personal services (including the compensation received for services rendered as an official or employee of the Government of Puerto Rico, of any state of the Union, the United States, or any political subdivision thereof, or of any agency or instrumentality of any of the abovementioned entities) of any sort and in whichever manner they are paid;

(2) Gains, profits, and income from professions, occupations, trades, businesses, commerce, or sales, or of deals in property whether real or personal that arise from the ownership or use, or the interest in such property;

   (A) In the case of gains or income derived from the production or sale of property in the ordinary course of the business, whether real or personal, the gross income under this Section shall be the gross gain from the sale of such products as determined under generally accepted accounting principles. For purposes of this paragraph, gross income means the total amount generated from the sale of goods or products minus the cost of the sold goods or products.

   (B) When, in the judgment of the Secretary, the use of inventory is necessary to clearly determine the income of any taxpayer, the latter shall be required to make inventories on the basis provided by the Secretary, pursuant to accounting principles generally applicable to the trade or business that show the income more clearly. The taxpayer may use the merchandise inventory method provided in Section 1040.06, whether or not it has been provided under the preceding paragraph, subject to the requirements established in Section 1040.06.

(3) **Gains, Profits, and Income Derived from the Sale or Other Disposal of any Type of Property that Does Not Constitute Inventory Held by the Taxpayer.--**In the case of the sale or other disposal of property, the gain or loss shall be computed as provided in Section 1034.03

(4) Gains, profits, and income derived from pensions, annuities (including life insurance, annuity or endowment contracts) estates and trusts.

(5) Pensions by reason of divorce or separation, subject to the provisions of Section 1032.02

**(6)** Profits derived from the cancellation of indebtedness, except as provided in paragraph (b)(10) of this Section.

**(7)** Distributions made by corporations, subject to the provisions of Section 1034.09

**(8)** Gains, profits, and income derived from interest, rents, royalties, dividends, or interest in partnerships, profits from corporations of individuals, profits from limited liability corporations, securities, or the operation of any business conducted for profit or earnings;

**(9)** Gains or profits and income derived from any source.

**(b)** **Exclusions from Gross Income.--**The following items shall be excluded from the definition of gross income:

**(1)** **Life Insurance.--** There shall be excluded from gross income:

**(A)** Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a lump sum or in installments, but if such amounts were held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income;

**(B)** Upon previous authorization from the Secretary, the amounts received during life, under a life insurance contract by reason of a terminal illness of the insured, who, as certified by a competent medical authority, will live less than one year.

**(2)** **Gifts, Bequests, Devises, and Inheritances.--**The value of the property acquired by gift, bequest, devise, or inheritance shall be excluded from gross income. The income derived from such property shall not be excluded from gross income under this paragraph or, in case the gift, bequest, devise, or inheritance consists of income derived from such property, the amount of such income. For purpose of this paragraph, if under the terms of the gift, bequest, devise, or inheritance, payment, crediting, or distribution thereof is to be made at intervals, to the extent that it is paid or credited or to be distributed out of income derived from property, it shall be treated as a gift, bequest, devise, or inheritance of income derived from property.

**(3)** **Compensation for Injury or Sickness.--**Except in the case of amounts attributable to, but not in excess of, deductions allowed under Section 1033.15(a)(2)(F) in any prior taxable year, amounts received as sickness or accident insurance or under workmen's compensation acts, as compensation for personal physical injuries or sickness (except the amount received by an employee, up to the amount that said amounts are directly paid by the employer), plus the amount of any indemnification received in a legal action or a settlement out of court for such personal physical injuries or physical sickness, and amounts received as a pension, annuity or similar allowance for personal physical injury or physical sickness, and for occupational or non-occupational disability, including those resulting from active service in the armed forces of any country.

**(4)** **Death Benefits Received by Heirs or Beneficiaries of Members of Certain Retirement or Pension Systems.--**Amounts received by the heirs or beneficiaries of the members of the retirement system of the employees of the Government of Puerto Rico and its instrumentalities, of the system of pensions and annuities for teachers of Puerto Rico, of the retirement system of the University of Puerto Rico, of the retirement system of the employees of the Puerto Rico Electric Power Authority, or of any other system created in the future, as well as of any retirement system of the federal or state government or instrumentalities or political subdivisions thereof, as a death benefit of the participant or member of any of said systems.

**(5)** **Scholarships.--** The amounts received from the Government of Puerto Rico or its agencies, instrumentalities or political subdivisions as scholarships for studies when the beneficiary is other than a public official or employee, or when said amounts do not represent the compensation or part of the compensation of an office or job or are not related to such office or job.

**(6)** **Literary, Journalistic, Scientific, and Artistic Awards, and Awards for Industrial, Agricultural or Professional Development.--**Income derived from literary, journalistic, scientific, and artistic awards,

and awards for the promotion of industrial, agricultural or professional progress, obtained in competitions or contests to promote and encourage literature, the arts, journalism, agriculture, industry, the professions, and the sciences.

**(7) Federal Social Security for Old-age and Survivors.--**Payments for benefits received under the provisions of Section 202 of Title II of the Social Security Act, as heretofore or hereafter amended.

**(8) Crop Insurance.--** The amounts received under any crop insurance, excluding fire insurance, as a result of losses suffered by the insured.

**(9) Foster Care Maintenance Payments.--**The amount received by Foster Homes as monthly maintenance under the Families with Children Service Program of the Administration for Children and Families.

**(10) Income from the Cancellation of Indebtedness.--**

    **(A) Exclusion.--** The income derived from the cancellation discharge of indebtedness shall not be subject to income taxes under this Subtitle, in whole or in part, if such cancellation of indebtedness is due to any of the following cases:

        **(i)** The cancellation occurs as a result of filing for bankruptcy in an action under the provisions of Title 11 of the United States Code and such cancellation is approved by a court with jurisdiction.

        **(ii)** the cancellation occurs when the taxpayer is insolvent, in which case the amount excluded by virtue of this clause shall not exceed the amount by which the taxpayer is insolvent. For purposes of this clause:

            **(I)** the term "insolvent" means the excess of liabilities over the fair market value of assets; and

            **(II)** the taxpayer's insolvency shall be determined on the basis of the taxpayer's assets and liabilities immediately before the cancellation.

        **(iii)** The cancelled of indebtedness is a student loan and the cancellation is made pursuant to a provision of said loan that allows for such cancellation, in whole or in part, if the taxpayer worked for a certain amount of time in certain professions or for certain employers (other than the lender).

    **(B) Reduction of Tax Attributes.--**The amount excluded under this subparagraph shall be applied to reduce the tax attributes of the taxpayer in the following order:

        **(i)** The net operating loss incurred for the taxable year of the cancellation, and any net operating loss carryover to such taxable year and available for the taxable year in which the cancellation occurred.

        **(ii)** The net capital loss for the taxable year of the cancellation, and any net capital loss carryover to such taxable year and available for the taxable year in which the cancellation occurred.

        **(iii)** The tax basis of any asset held by the taxpayer used as collateral of the debt subject to the cancellation.

**(11) Annuities.--** Except as otherwise provided in Section 1031.02(a)(1), the following amounts with respect to annuities shall be excluded from gross income:

    **(A) In General.--**

        **(i)** Amounts received, other than amounts paid due to the death of the insured and payment of interest in such amounts other than those received as annuities under a life insurance or endowment contract, but if such amounts, when added to amounts received before the taxable year under such contract, exceed the aggregate amount of premiums or consideration paid, whether or not paid during the taxable year, then the excess shall be included in gross income.

**(ii)** Amounts received as an annuity under an annuity or endowment contract shall be included in gross income, except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to three percent (3%) of the aggregate amount of the premiums or consideration paid for such annuity, whether or not paid during such year, until the aggregate amount excluded from gross income under this Subtitle or prior income tax laws with respect to such annuity equals the aggregate premiums or consideration paid for such annuity.

**(iii)** In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance endowment or annuity contract, or any interest therein, only the actual value of such consideration plus the amount of the premiums and other amounts subsequently paid by the transferee shall be exempt from taxation under Section 1031.01(b)(1) or this paragraph.

**(iv)** The preceding clause (iii) shall not apply in case of a transfer if said contract or interest therein is the basis for determining gain or loss in the hands of a transferee determined, in whole or in part, by reference to such basis of such contract or interest therein in the hands of the transferor.

**(v)** This clause and paragraph (1) of this subsection shall not apply to that portion of a payment under a life insurance, endowment, or annuity contract, or any interest therein, which is includible in gross income, under paragraph (5) of subsection (a) of this Section.

**(vi) IVU-Loto Prizes.--** The amounts or goods, of any type, received on account of prizes from draws held as part of the Sales and Use Tax Oversight Program, known as the "IVU-Loto."


**Section 1031.02.-- Exemptions from Gross Income.--**

**(a)** The following income items shall be exempt from taxation under this Subtitle:

**(1) Annuities.--**

**(A) Employees' Annuities.--**

**(i)** If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under Section 1033.09(a)(1)(B), or if an annuity contract is purchased for an employee by an employer exempt under Section 1101.01, the employee shall include in his/her income the amounts received under such contract for the year received, except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his/her income, as provided in Section 1031.01(b)(11)(A), the consideration for such annuity being considered the amount contributed by the employees.

**(ii)** In all other cases, if the employee's rights under the contract are nonforfeitable except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on or after such rights become nonforfeitable shall be included in the income of the employee in the year in which the amount is contributed. Such amount, together with any amounts contributed by the employee, shall constitute the consideration paid for the annuity contract in determining the amount of the annuity required to be included in the income of the employee under Section 1031.01(b)(11)(A).

**(B) Education Policies.--** The amount received from education policies by the insured on the maturity or liquidation of the insurance, whether the total amount of the policy is received or whether the policy is paid in annual or monthly installments, shall not be treated as gross income and shall be exempt from taxation under this Subtitle up to the amount of ten thousand dollars ($ 10,000).

**(2) Certain Fringe Benefits Paid by an Employer to its Employees.--**The following amounts paid or accumulated by an employer in benefit of an employee:

**(A) Life Insurance Premiums.--**The premiums paid by an employer for group or collective life insurance policies that cover the lives of his/her employees who meet the requirements of Section

14.010 of the Insurance Code of Puerto Rico, as amended, up to the amount of fifty thousand dollars ($ 50,000) of coverage. The premiums attributable to the cost of insurance coverage in excess of this limit shall be taxable for the employee in the taxable year when they are paid.

**(B) Flexible Benefit Plan.--** The amounts paid or accumulated by an employer for the benefit of an employee under a flexible benefit plan shall be exempt from taxation pursuant to Section 1032.06.

**(C) Payments for the Care of Dependants.--**The amounts paid or accumulated by an employer for the benefit of an employee pursuant to the provisions Section 1032.07, provided that said benefits are part of a flexible benefit plan established according to the provisions of Section 1032.06.

**(D) Health or Accident Plan Contributions.--**The contributions made by an employer to the health or accident group plans of its employees to cover personal injuries or illnesses of its employees, whether through insurance or that otherwise comply with the provisions of Section 1032.08, including contributions to a health savings account of an employee pursuant to Section 1081.04.

**(3) Tax Exempt Interest.--** Interest on:

**(A)** The obligations of the United States, any state or territory of the United States, or political subdivision thereof and the District of Columbia;

**(B)** the obligations of the Government of Puerto Rico or any instrumentality or political subdivision thereof;

**(C)** Securities issued by virtue of the Agricultural Loans Act of 1971, or by virtue of the provisions thereof, as thereafter amended, including obligations issued by any subsidiary of the Farm Credit Banks of Baltimore directly or indirectly engaged in financing loans to farms and farmers in Puerto Rico with said funds, including loans to rural residents to finance rural housing, loans to cooperatives owned and controlled by farmers, and engaged in marketing or distributing farm produce, the purchase of materials, or to provide services to farm businesses and the acquisition of loans or discounts of notes previously granted;

**(D)** Mortgages secured under the provisions of the National Housing Act, approved June 27, 1934, or by virtue of the provisions thereof, as thereafter amended, which are:

**(i)** Executed on or before February 15, 1973, and held on May 5, 1973 by residents of Puerto Rico.

**(ii)** Executed within the one hundred eighty (180) days following February 15, 1973, and to acquire those which a resident of Puerto Rico has on said date a contractual obligation.

**(E)** Mortgages on residential property located in Puerto Rico executed after June 30, 1983, and before August 1, 1997, and secured or guaranteed by virtue of the provisions of the National Housing Act, approved June 27, 1934, as amended, or by virtue of the provisions of the Servicemen's Readjustment Act of 1944, as amended;

**(F)** Mortgages on residential properties located in Puerto Rico executed after July 31, 1997, that are newly-constructed and have been simultaneously granted with the first transfer of the mortgaged property to a new owner. For purposes of this section, the term "newly constructed" shall mean the newly-built residential property that is secured or guaranteed by virtue of the provisions of the National Housing Act, approved June 27, 1934, as amended, or by virtue of the provisions of the Servicemen's Readjustment Act of 1944, as amended;

**(G)** Mortgages originated to provide permanent financing for the construction or acquisition of low income housing, such as Act No. 124 of December 10, 1993, administered by the Department of Housing, and the low-income housing programs sponsored by the Federal Government;

**(H)** Mortgages insured by the Secretary of Agriculture of the United States of America by virtue of the provisions of Congress' Bankhead-Jones Farm Tenant Act, approved July 22, 1937, or by virtue of provisions thereof as hereafter amended;

**(I)** Obligations secured or guaranteed under the provisions of the Servicemen's Readjustment Act of 1944, or under the provisions thereof as hereafter amended, which are:

**(i)** Executed not later than February 15, 1973, and held on May 5, 1973 by residents of Puerto Rico.

**(ii)** Executed within one hundred and eighty (180) days following February 15, 1973, and to acquire those which a resident of Puerto Rico has on said date a contractual obligation.

**(J)** Securities issued by cooperative associations organized and operating under the provisions of Act No. 239 of September 1, 2004, known as the "General Cooperative Associations Act of 2004," or under the provisions of Act No. 225 [255] of October 28, 2002 [7 L.P.R.A. §§ 1361 et seq.], known as the "Cooperative Savings and Credit Unions Act of 2002," up to a maximum of five thousand dollars ($ 5,000);

**(K)** Deposits in interest-bearing accounts, in cooperatives, savings associations authorized by the Federal Government, or by the Government of Puerto Rico, commercial and mutual banks, or in any other organization of a banking nature located in Puerto Rico, up to the total amount of two thousand dollars ($ 2,000) for each individual taxpayer. In the case of a taxpayer that files a joint return, the exclusion shall not exceed four thousand dollars ($ 4,000). If spouses who live together choose to file separate returns, the exclusion for each shall not exceed two thousand dollars ($ 2,000). This provision shall apply to the portion of the interest paid or accredited on deposits in interest-bearing accounts that belong to one (1) or more individuals, estates or trusts and are registered in behalf of a brokerage firm as nominee. It shall also apply to that part of any paid or distributed amount of an individual retirement account that consists of interest as described in Section 1023.04;

**(L)** Obligations issued by:

**(i)** the Conservation Trust of Puerto Rico, as created and operated pursuant to Deed No. 5 of January 23, 1970, executed before Notary Luis F. Sanchez-Vilella;

**(ii)** the Housing and Human Development Trust of Puerto Rico, as created and operated pursuant to Deed No. 135 of May 15, 2004, executed before Notary Jose Orlando Mercado-Gelys; and

**(iii)** the Monument Trust of San Juan, provided that the same obtains and keeps an exemption under Section 1101.01 of the Code, whose purpose is to raise funds for the restoration and maintenance of the San Jose Church in Old San Juan.

**(M)** loans granted by a commercial bank or any other organization of a banking or financial nature established in Puerto Rico to an employee-owned special corporation, whose proceeds are to be used by said special corporation for any of the following purposes:

**(i)** Financing the acquisition, development, construction, extension, rehabilitation, or improvements to real property located in Puerto Rico to be used for commercial purposes by the special corporation, provided that the loan does not exceed the cost of the property or improvements to be made in relation thereto;

**(ii)** Financing the acquisition of machinery or any other tangible personal property to be used for commercial purposes by the special corporation in connection to its business operation in Puerto Rico, provided, that the loan does not exceed the purchase price of said property; or

**(iii)** Financing the acquisition of capital stock in a corporation that is to be treated as a purchase of assets of said corporation for Puerto Rico income tax purposes;

**(N)** loans granted by a commercial bank or any other organization of a banking or financial nature established in Puerto Rico to a person for the acquisition and payment of membership certificates as a regular, special, or corporate member, as applicable, in a special employee-owned corporation;

**(O)** loans granted by a commercial bank or any other organization of a banking or financial nature established in Puerto Rico to a person for the purchase or investment by and for him/herself of preferred stock in a special employee-owned corporation;

**(P) Loans for Small and Medium Businesses.--**The interest on loans of up to two hundred fifty thousand dollars ($ 250,000) in the aggregate per tax-exempt business to small or medium businesses, as said term is defined in Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," for their establishment or expansion; provided, that the loan meets the requirements established in the Act known as the "Community Reinvestment Act of 1977," Pub. Law 95-128, *91 Stat. 1147,* as amended, and those requirements prescribed by the Commissioner of Financial Institutions through regulations;

**(Q) Loans for Capitalization by Small and Medium Businesses.--**The interest on loans of up to two hundred fifty thousand dollars ($ 250,000) in the aggregate per tax-exempt business, granted to tax-exempt business stockholders to be used in the initial capitalization or to meet the subsequent requirement of tax-exempt business capital for small or medium businesses, as said term is defined in Section 2(i) of Act No. 73 of May 28, 2008, known as the "Economic Incentives Act for the Development of Puerto Rico."

Any person who has any obligations of those listed in this paragraph, shall submit together with the return required by this Subtitle, a statement that shows the number of his/her obligations and the revenues earned therefrom in the manner and submitting the information required by the Secretary.

**(4) Dividends.--**

**(A)** Dividends received by corporations from industrial development income which are derived from interest on:

**(i)** Obligations of the Government of Puerto Rico or any of its instrumentalities or political subdivisions.

**(ii)** Mortgages secured by the Puerto Rico Housing Financing Authority acquired after March 31, 1977.

**(iii)** Loans or other mortgage-guaranteed securities granted under any general pension or retirement system established by the Legislative Assembly of Puerto Rico, the municipalities and the agencies, instrumentalities, and corporations of the Government of Puerto Rico, acquired after March 31, 1977.

**(B) Distributions from Limited Dividend Corporations.--**In the case of an individual, the dividends he/she receives from a limited dividend corporation that qualifies under Section 1101.01(a)(6)(A). The taxpayer shall file with the return a statement showing the number of shares of the limited dividend corporation which he/she owns and the dividends received on said shares during the taxable year.

**(C) Dividends from Cooperative Associations.--**The income received by residents of Puerto Rico by reason of distribution of dividends made by domestic cooperative associations.

**(D) Dividends from an International Insurer or International Insurer Holding Company.--** Distributions of dividends from an International Insurer or International Insurer Holding Company, in accordance with the provisions of Article 61.240 of the Insurance Code of Puerto Rico.

**(5) Priests or Ministers.--** The fair rental value of a dwelling house and appurtenances thereof, as well as the payment for water, electricity, gas, and telephone services, granted to a duly-ordained priest or minister of any religion as part of his/her compensation. In order to be eligible for the exemption provided in this paragraph, the expenses on this account shall be neither lavish nor extravagant, as determined by the Secretary.

**(6) Incentives Received by Farmers.--**

**(A)** In the case of any farmer, the incentives received from the Government of Puerto Rico for:

**(i)** the purchase of farm machinery used in the production of sugar cane, coffee, vegetables, rice and food crops;

**(ii)** the purchase of fertilizer, herbicide, fungicides, and material for soil improvement, for apiculture, mariculture, aquaculture, and others determined or added by the Secretary of Agriculture;

**(iii)** the purchase of wire, posts, material to fence in cattle, and others determined or added by the Secretary of Agriculture; and

**(iv)** for the construction of cattle, hog, and poultry facilities and fishing vessels.

**(B)** These incentives are to be considered as a reduction of the costs or expenses incurred by the farmer, as the case may be. The Secretary of Agriculture shall submit a report to the Secretary, annually, on or before January 31 of the year following the calendar year in which said incentives were granted, including the following information:

**(i)** Name, account number, and address of each farmer who has been granted incentives, and

**(ii)** An account and amount of the incentives.

**(7)** **Improvements by Lessee on Lessor's Property.--**Income, other than rent, derived by a lessor of real property upon the termination of a lease, representing the value of such property attributable to buildings erected or other improvements made by the lessee.

**(8)** **Recovery of Bad Debts, Prior Taxes, Delinquency Amounts, and Other Items.--**Income attributable to the recovery during the taxable year of a bad debt, prior tax, delinquency amounts, and other items, to the extent of the amount of the recovery exclusion with respect to such debt, tax, delinquency amounts, and other items. For purposes of this paragraph:

**(A)** **Definition of Bad Debt.--** The term "bad debt" means a debt on account of worthlessness or partial worthlessness of which a deduction was allowed for prior taxable year.

**(B)** **Definition of Prior Tax.--**The term "previous tax" means tax on an account of which a deduction or credit was allowed for a prior taxable year.

**(C)** **Definition of Surcharge.--**The term "surcharge" means an amount paid or accumulated with respect to which a deduction or credit was allowed for a prior taxable year and is attributable to failure to file a return or pay a tax within the term provided by this Subtitle or under any income tax law under which such tax is imposed, or failure to file a return in connection with a tax or failure to pay a tax.

**(D)** **Definition of Other Item.--**Means an amount paid or accumulated on account of which a deduction was allowed for a prior taxable year.

**(E)** **Excludible Recovery.--** The term "excludible recovery," with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Secretary, of the deduction or credits allowed, on account of such bad debt, prior tax or delinquency amounts, which did not result in a reduction of the taxpayer's tax under this Subtitle, without including the tax under Section 1022.05, or corresponding provisions of prior income tax laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax or delinquency amount under this subparagraph.

**(F)** **Special Applicable Rules in Case of Tax under Section 1022.05.--**In the application of subparagraphs (A), (B), (C), (D), and (E) of this paragraph, in determining the tax under Section 1022.05, an excludible recovery shall be allowed for purposes of said section whether or not the bad debt, prior tax or delinquency amount resulted in a reduction of the tax under Section 1022.05 for the prior taxable year; and in the case of a bad debt, prior tax or delinquency amount not allowable as a deduction or credit for the prior taxable year under this Subtitle, except for Section 1022.05, but allowable for the same taxable year under said section, a recovery exclusion shall be

allowed for purposes of said section if said bad debt, prior tax or delinquency amount did not result in a reduction of the tax under such Section 1022.05. As used in this subparagraph, references to this Subtitle and Section 1022.05, in case of taxable years not subject to this Subtitle shall be held to have been made to appropriate provisions of prior income tax laws.

**(9) Stipends Received by Certain Physicians During their Internship Period.--**The stipend received by a physician during his/her period of internship under a contract signed with the Department of Health of Puerto Rico or with any municipality or political subdivision thereof to receive medical training through practice in a hospital. This exclusion shall apply as well to the stipend for monthly subsidy as to the additional subsidy for the payment of room and board, and shall be allowed for a maximum period of seventy-two (72) months.

**(10) Mustering-out Payments for Military and Naval Personnel.--**Amounts received during the taxable year as mustering-out out payments with respect to service in the military or naval forces of the United States.

**(11) Income of News Agencies or Syndicates.--**The income of news agencies or syndicates or other press services, received from newspaper or radio broadcasting enterprises as rents or royalties for the use or publication of, or for the right to use or publish in Puerto Rico, literary or artistic property of said agencies or syndicates.

**(12) Prizes from the Lottery of Puerto Rico.--**The amounts received as prizes won in the Lottery of Puerto Rico.

**(13)** The amounts received from pensions granted, or to be granted, by the retirement systems or funds subsidized by the Government of Puerto Rico, from annuities or pensions granted by the Government of the United States of America, and by the instrumentalities or political subdivisions of both governments, and from pension, retirement or annuity plans granted by private sector employers up to the limit provided below:

**(A)** In the case of pensioners who, as of the last day of the taxable year are sixty (60) years of age or more, the exemption shall be fifteen thousand dollars ($ 15,000) annually.

**(B)** In all other cases the exemption shall be eleven thousand dollars ($ 11,000).

**(C)** The exemption allowed under this paragraph shall apply only to amounts received on account of separation from employment in the form of annuity or periodic payments.

**(14)** The amounts received by pensioners of the retirement systems of the Government of Puerto Rico and its instrumentalities, the Judiciary, the University of Puerto Rico, of the system of Pensions and Annuities for Teachers on account of the Christmas and Summer Bonuses granted by Acts No. 37 and No. 38 of June 13, 2001, and the Medications Bonus granted by Act No. 155 of June 13, 2003, and Act No. 162 of July 15, 2003.

**(15) Racetrack Winnings.--** The amount from winnings in pools, pari-mutuels, *dupletas*, daily doubles, *exacta*, subscription funds and any other gaming in racetracks in Puerto Rico.

**(16) Gains in the Sale or Exchange of Their Main Residence by Certain Individuals.--**

**(A) General Rule.--** In the case of an individual, the profits obtained from the sale or exchange of his/her main residence, up to the sum of one hundred fifty thousand dollars ($ 150,000) for each taxpayer. This exclusion shall apply if--

**(i)** the individual opts for this exclusion;

**(ii)** the individual is sixty (60) years of age or over on the date of said sale or exchange; and

**(iii)** during the 5-year period that ends on the date of the sale or exchange, the property has been owned and used by the individual as his/her principal residence for total periods of three (3) years or more.

**(B) Limitations.--** Subparagraph (A) of this paragraph shall not apply to any profit from a sale or exchange, if the taxpayer has previously taken an option with respect to the exclusion of profit from the sale or exchange of his/her principal residence account pursuant to the provisions of Section 1081.02(d)(6).

**(C) Election.--** An election under the provisions of subparagraph (A) of this paragraph may be made at any time before the expiration of the limitation period for establishing a claim for credit or refund of income taxes imposed by this Subtitle for the taxable year in which the sale or exchange is made, and must be made in writing and, once the regulations are issued to that effect, in the manner that the Secretary may prescribe by regulation. In the case of a taxpayer who is married, the election may be made only if his/her spouse joins him/her in said election.

**(D) Special Rules.--**

**(i)** For purposes of this paragraph, if the taxpayer has shares as member-participant in a cooperative housing association (as such terms are defined in Section 1033.15(a)(2)(B)), then the requirement of a period of ownership specified in subparagraph (A)(iii) of this paragraph and the requirement of said subparagraph shall apply to the house or apartment that the taxpayer was entitled to occupy as such member-participant.

**(ii)** For purposes of this paragraph, total or partial destruction, theft, seizure, or the exercise of the power of requisition or eminent domain, or the threat or imminence thereof, shall be considered as a sale or exchange of the residence.

**(iii)** In the case of part of a property which has been owned and used by the individual as his/her principal residence for total periods of three (3) or more years during the 5-year period which ends on the date of the sale or exchange, this paragraph shall apply to that part of the profit from the sale or exchange of said property attributable to the part of the property thus owned and used by the taxpayer, as determined under the regulations prescribed by the Secretary.

**(iv)** When applying Section 1034.04(m) (regarding the sale or exchange of residence), the sum obtained from the sale or exchange of the property shall be deemed as the determined sum without taking this paragraph into consideration, reduced by the amount of profits excluded from the gross income, pursuant to an option under this paragraph.

**(v)** In the case of property owned jointly by husband and wife, if said property is jointly owned by both spouses, and one of the spouses meets the requirements of age, ownership, and use of subparagraph (A) with respect to such property, then both spouses shall be deemed to meet the requirements of age, ownership and use.

**(vi)** In the case of sale or exchange of a property acquired by the surviving spouse by inheritance from the deceased spouse, if--

**(I)** The deceased spouse (during the period of five (5) years ending on the date of the sale or exchange) met the requirements of ownership and use established in subparagraph (A) with respect to said property, and

**(II)** there is no election in effect by the deceased spouse under subparagraph (A) with respect to a previous sale or exchange, then the surviving spouse shall be considered as satisfying the requirements of age, ownership and use.

**(vii)** For purposes of this paragraph:

**(I)** The determination of whether an individual is married shall be made at the time of the sale or exchange, and

**(II)** a married person not living with his/her spouse or an individual legally separated from his/her spouse under a decree of divorce or separation shall not be considered as married.

**(17) Certain Income from the Operations of Special Employee-Owned Corporations.--**The following income shall be exempt from income taxes:

(A) **Income from Special Employee-Owned Corporations that are Credited to the Collective Reserve Account and the Joint Stock.--**In order for contributions to the joint stock to qualify for the exclusion granted herein, it shall be necessary for the benefits of the joint stock to be accessible to all the residents of the municipality where the Special Employee-Owned Corporation has its main office established, except for the regular and corporate members of the corporation; furthermore, the Secretary shall be given proof that the joint stock is used for the purposes indicated in Section 1507 of Act No. 144 of August 10, 1995, as amended.

(B) The portion of the notices of credit for productivity and patronage that Special Employee-Owned Corporations capitalize in the regular and special members' internal accounts and that may not be distributed or paid until the regular or special member ends all relations with the Special Employee-Owned Corporation. Any amount in the notices of credit for productivity and for patronage that enjoy the exclusion provided in this section, and that is subsequently distributed to the regular or special member prior to his/her discontinuance of all relations with the Special Employee-Owned Corporation, shall be subject to a penalty in the amount of ten percent (10%) of the distributed amount and shall be included as gross income for that year. The ten percent (10%) penalty shall be withheld by the Special Employee-Owned Corporation and immediately remitted to the Secretary.

(C) Ninety percent (90%) of the income received by a person from the rental of real and personal property of any kind, used by the Special Employee-Owned Corporation in its development, organization, construction, establishment or operations.

(18) **Cost-of-living Allowance.--**The cost-of-living allowance received by employees of the Government of the United States of America who work in Puerto Rico, up to the amount exempt from taxation for purposes of the income taxes imposed by the U.S. Internal Revenue Code. The taxpayer shall enclose with the tax return the evidence that proves the amount of cost-of-living allowance received during the year. The Department shall be responsible for verifying that the taxpayers have met their tax duties in the four (4) years preceding the year of filing the return; in case they have not met their tax duty, the Department may revoke the privilege granted in this paragraph, and the taxpayer shall have to pay the amount owed plus penalties and surcharges.

(19) **Unemployment Compensation.--**The amounts received as unemployment compensation under a law of the United States, a state of the Union, or the Government of Puerto Rico.

(20) Active Military Service Rendered in "Combat Zone."--This exclusion does not apply to military personnel mobilized outside of Puerto Rico to relieve military personnel sent to the combat zone.

(A) **Enlisted Personnel.--** The exclusion includes the maximum basic pay received by enlisted personnel, for active military service rendered in combat zone.

(B) **Commissioned Officers.--** In the case of commissioned officers, the exclusion provided in subparagraph (A) shall be limited to the maximum basic pay received by the enlisted personnel.

(C) **Definitions.--** For purposes of this paragraph:

(i) The term "commissioned officer" does not include warrant officers;

(ii) The term "military personnel" includes the Members of the United States Armed Forces, as well as the members of the Puerto Rico National Guard in active service during a period of conflict and serving in combat zones.

(iii) The term "combat zone" means an area which the President of the United States has designated by Executive Order as an area in which Armed Forces of the United States shall engaged in combat during a period of conflict.

(21) **Income Received or Earned in Connection with the Holding of Sports Events Organized by International Associations or Federations.--**Any income received or earned by teams that are members of international associations or federations or entities affiliated to such teams and any

income earned by entities contracted by said teams or associations or entities affiliated to them to organize and take charge of the operation, promotion or administration of such games in Puerto Rico. These provisions shall apply to the following international associations or federations:

(A) Major League Baseball, including, but without limitation, the Office of the Commissioner of Major League Baseball, Major League Baseball Properties, Inc., Major League Baseball Enterprises, Inc., Baseball Television, Inc., Major League Baseball Advanced Media, L.P., and their successor entities related to the holding of Major League Baseball games in Puerto Rico.

(B) The National Basketball Association of the United States, better known as "NBA," including but without limitation, the Office of the Commissioner of the National Basketball Association, NBA TV, NBA Latin America, Inc., Women's National Basketball Association, better known as "WNBA," or the National Basketball Development League, better known as "NBDL," and their successor entities related to the holding of NBA basketball games in Puerto Rico.

(22) **Income Earned by Participants in the Caribbean Series.--**Income earned by the nonresident players, coaches, technical personnel, and foreign teams, who participate in the Caribbean Series of professional baseball held in Puerto Rico.

(23) Income Derived by an International Insurer or an International Insurer Holding Company, subject to the provisions of Article 61.240 of the Insurance Code of Puerto Rico, including the income derived from the liquidation and/or dissolution of their operations in Puerto Rico.

(24) **Federal Subsidy for Prescription Drugs Plans.--**The payments on account of the subsidy received under the provisions of Section 1860D-22 of the Social Security Act, as amended or subsequently amended. This exclusion from the gross income shall not affect the determination of any deduction allowed under Section 1033.01 of this Subtitle. Thus, a taxpayer may claim a deduction under Section 1033.01 of this Subtitle even when said taxpayer also receives an excludable subsidy related to the deduction allowed under Section 1033.01 of this Subtitle.

(25) The amounts received by an employee in accordance with Act No. 84 of March 1, 1999 [8 L.P.R.A. §§ 36 et seq.], known as the "Act for the Creation of Child Day Care Centers in the Government," provided that the expenses are related to a dependent over which the employee is entitled to claim an exemption under Section 1033.18(b). No other deduction under any other provision of this Subtitle shall be allowed for any amount exempt under this paragraph.

(26) The compensation received by an eligible investigator or scientist for services rendered to the University of Puerto Rico and to all those higher education institutions accredited in Puerto Rico for scientific research up to a sum equal to the maximum established by the National Institutes of Health for grants for salaries of investigators who receive grants from any of the organizations that constitute the National Institutes of Health for the applicable period in accordance to the notices published by the Institutes; provided, that for the calendar year beginning on January 1, 2008, the amount to be excluded shall be one hundred ninety-five thousand dollars ($ 195,000). Any income received by the investigator or scientist for services rendered to natural or juridical persons other than the University of Puerto Rico or any other higher education institution is excluded from this benefit.

(A) **Higher Education Institution.--**Means a public or private educational institution duly accredited by the Council on Higher Education in accordance with Act No. 17 of June 16, 1993, as amended, or by the Middle States Commission on Higher Education of the Middle States Association of Colleges and Schools.

(B) **Eligible Investigator or Scientist.--**Means an individual who is a resident of Puerto Rico during the taxable year, contracted by the University of Puerto Rico or any other higher education institution in Puerto Rico, engaged mainly in conducting eligible scientific research and who has submitted a scientific research proposal to the National Institutes of Health or to other organizations of the Federal Government of the United States or Government of Puerto Rico, and that due to the approval of said proposal, the academic institution receives a grant for research under the RO1 Research Project or its equivalent, whose amount covers the costs of the research,

including the compensation of said investigator and of key personnel, purchase of equipment and supplies, publications and other related expenses; provided, that with the exception of the cases of multiple principal investigators (PI's) there shall be more than one individual eligible for this deduction for grant approved.

(C) **Eligible Scientific Research.--**Means any research that is conducted by the University of Puerto Rico or any other higher education institution in Puerto Rico that receives a grant under the RO1 Research Project or other similar project of any of the organizations that constitute the National Institutes of Health or under similar programs or mechanisms sponsored by any other organization that promotes competitive scientific research, including but not limited to the National Science Foundation.

(27) The compensation received by an eligible investigator or scientist for rendering services related to science and technology research and development activities to the District established in Section 7 of Act No. 214 of August 18, 2004, as amended, up to the amount of two hundred fifty thousand dollars ($ 250,000). For purposes of this paragraph, the term "eligible investigator or scientist" shall mean an individual residing in Puerto Rico during the taxable year, contracted by an institution within the District established in Section 7 of Act No. 214 of August 18, 2004, as amended, engaged mainly in conducting eligible scientific and technology research and development. The initial recommendation of whether the individual is an "eligible investigator or scientist" for purposes of this paragraph and the number of eligible investigators or scientists that may avail of the exemption granted under this paragraph shall be made with the advise of the council of trustees, as such term is defined in Act No. 214, *supra*. The initial recommendation shall be submitted for final approval before the Secretary and the Secretary of Economic Development and Commerce. The Secretary may delegate in the Secretary of Economic Development and Commerce the final determination if the Secretary so provides through Circular Letter, administrative determination or any other informational document. If the Secretary does not make a decision within twenty (20) days after the recommendation of the Council of Trustees was submitted for his/her approval, the Secretary of the Department of Economic Development and Commerce shall make the final decision regarding whether or not to accept the recommendations of the Council of Trustees.

(28) **Rents in Historic Zone.--**Subject to the requirements of Act No. 7 of March 4, 1955, as amended, and of any other law substituting or complementing it, up to the limit provided in said laws, the rents (or payments) received as the result of the lease of buildings located in the Historic Zone of the City of San Juan Bautista of Puerto Rico or in any historic zone established in Puerto Rico by the Institute of Puerto Rican Culture or the Planning Board, which have been substantially improved, restored, restructured or rebuilt or newly built in accordance with the rules established by the Institute of Puerto Rican Culture to harmonize with the characteristics of the historic zone where they are located, having obtained the appropriate permits from the pertinent agencies and a certificate from the Institute of Puerto Rican Culture attesting to its conformity with the work as completed.

(29) **Per Diems and Travel Expenses of Legislators.--**The amounts received by the members of the Legislative Assembly of the Government of Puerto Rico on account of per diems and travel expenses, which represent reimbursements for expenses actually incurred.

(30) **Per Diems and Travel Expenses of Municipal Legislators.--**The amounts received by the members of municipal legislatures on account of per diems and travel expenses, which represent reimbursements for expenses actually incurred.

(31) **Income of International Banking Entities.--**The income derived from any activities described in subsection (a) of Section 12 of Act No. 52 of August 11, 1989, as amended, known as the "International Banking Center Regulatory Act," carried out by an International Banking Entity duly authorized to carry out such activities under the provisions of said Act, including the income derived from the liquidation or dissolution of operations in Puerto Rico.

(32) **Compensation to Citizens and Nonresident Aliens of Puerto Rico for Producing Film Projects.--**
Any wages, fees or compensation paid by any foreign natural person or corporate entity to citizens or

nonresident aliens of Puerto Rico, on account of technical services rendered by them during a cinematographic production, for the purpose of distributing them to film or television production companies.

**(33) Amounts Paid by an Employer to an Employee on Account of Travel Expenses, Meals, Lodging, Entertainment and Other Expenses in Connection with Employment.--**The amounts paid by an employer on account of reimbursable expenses paid or incurred by the taxpayer in connection with the performance by him/her of services as an employee, which consist of travel expenses, meals, lodging while away from home, entertainment (except those amounts considered excessive or extravagant under the circumstances), and other expenses connected with the employment; provided that such reimbursement is made under a expense reimbursement plan established by the employer that meets the requirements established by the Secretary through regulations to those purposes.

**(34) Miscellaneous Items.--**

**(A) Income from Sources Outside of Puerto Rico.--**

**(i) Nonresident of Puerto Rico During the Entire Taxable Year.--**In the case of a nonresident individual who is a United States citizen and establishes to the satisfaction of the Secretary that he/she has not been a resident of Puerto Rico during the entire taxable year, the amounts received from sources outside of Puerto Rico; however, no deduction shall be allowed to such individual from gross income properly allocable to or chargeable against amounts excluded from gross income under this paragraph.

**(ii) Change of Residence Status During Taxable Year.--**In the case of an individual who has not been a resident of Puerto Rico and changes his/her residence to Puerto Rico, the amounts received from sources outside of Puerto Rico attributable to the period of residence outside of Puerto Rico, however, no deduction shall be allowed to the individual from gross income properly allocable to or chargeable against amounts excluded from gross income under this paragraph.

**(B) Income from the United States Government or Foreign Governments and International Organizations.--**The income from the United States Government, foreign governments or international organizations received from investments in Puerto Rico in stocks, bonds, or other domestic securities owned by such governments or international organizations, or interest on deposits in banks in Puerto Rico of moneys belonging to such governments or international organizations of any source within Puerto Rico;

**(C) Income from States, Municipalities, and Other Political Subdivisions.--**Income derived from any public service enterprise or from any essential government service performed generated in any state, territory, of the District of Columbia, or any political subdivision of an state or territory or income generated by the government from any possession of the United States or political subdivision thereof;

**(D)** Receipts of Ship Owner's Mutual Protection and Indemnity Associations;

**(E) Compensation of Employees of Foreign Governments or International Organizations.--**

**(i) Exclusion Rule.--** The wages, fees or salaries of any employee of a foreign government, including consular or other officers or nondiplomatic representative, received by them for official services rendered to such foreign government or international organization--

**(I)** If the employee is not a United States citizen;

**(II)** If, in the case of an employee of a foreign government, the services are of a character similar to those performed by employees of the Government of the United States in foreign countries; and

**(III)** If, in the case of an employee of a foreign government, the foreign government whose employees are claiming exemption grants an equivalent exemption to employees of the Government of the United States performing similar services in that foreign country.

**(F)** Income from buildings leased or rented to the government of the Commonwealth of Puerto Rico for government hospitals, health or nursing homes and facilities complementary to said hospitals and health or nursing homes, such as dwellings for nurses, cafeteria, laundry services, physical and vocational rehabilitation centers; for public schools and physical facilities complementary to education, such as libraries, bookstores, residences for students and professors and multiple service centers for cafeteria, meeting and leisure; or in the construction of buildings to be leased to nonprofit entities to be used as hospitals, health or nursing homes and complementary physical facilities. This exemption shall be available only and exclusively to those buildings that had a leasing contract in effect as of November 22, 2010.

**(G)** Income derived from the resale of personal property or services whose acquisition by the taxpayer was subject to taxation under Section 3070.01 of this Code or Section 2101 of Act No. 120 of October 31, 1994, as amended, known as the "Internal Revenue Code of 1994."

## Section 1031.03.-- Adjusted Gross Income.--

**(a) Definition.--** "Adjusted Gross Income" means the gross income as defined in Section 1031.01, minus:

**(1) Exemptions.--** The exemptions provided in Section 1031.02.

**(2) Trade or Business Deductions.--**The deductions allowed under Section 1033.01 and 1033.02, which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

**(3) Interest and Other Expenses Paid for the Purchase of Investments.--**Expenses related to investments in deposit accounts or certificates of deposit or investment accounts, bonds, notes or other liabilities whose sum has been invested in such investments, up to the amount of the income derived therefrom, but there shall not be allow as deduction the sum of the interest and expenses on investment, which are attributable to investments whose income is exempt from income taxes under the provisions of Section 1033.17(a)(5) and (10);

**(4) Deductions Attributable to Rents and Royalties.--**Deductions other than those provided in paragraphs (2), (5) or (6) of this subsection, allowed under Section 1033.01, which are attributable to property held for the production of rents or royalties;

**(5) Certain Deductions of Life Tenants and Income Beneficiaries of Property.--**Deductions other than those provided in paragraph (2) for depreciation and depletion allowed by Section 1033.07 to a life tenant of property, or an income beneficiary of property held in trust;

**(6) Losses from Sale or Exchange of Property.--**Deductions other than those provided in paragraph (2) allowed by Section 1033.01 as losses from the sale or exchange of property;

**(7) Alimony.--** The deduction allowed by Section 1033.13(w); and

**(8) Expenses Incurred or Paid in the Generation of Income other Than the Trade or Business of the Taxpayer.--**Amounts incurred and paid by the taxpayer related to the generation of income other than the trade or business of the taxpayer, up to the amount generated during the taxable year as provided in Section 1033.02 under the regulations promulgated by the Secretary.

## Section 1031.04.-- Deductions.--

**(a)** The following deductions shall be allowed on computing net income:

**(1)** Expenses related to trade or business, as provided in Section 1033.01, which have not been claimed as deduction from adjusted gross income.

**(2)** Expenses not related to the trade or the main business, as provided in Section 1033.02.

**(3)** Interest, as provided in Section 1033.03.

**(4)** Taxes, as provided in Section 1033.04.

**(5)** Losses by individuals, by corporations, losses of capital, and wagering losses, as provided in Section 1033.05.

**(6)** Bad Debts, as provided in Section 1033.06.

**(7)** Depreciation and amortization, that have not been claimed as deduction in determining the adjusted gross income as provided in Section 1033.07.

**(8)** Automobile expenses, as provided in Section 1033.07(C)(3).

**(9)** Contributions by an employer to an employee trust or annuity plan and compensation under a deferred-payment plan, as provided in Section 1033.09.

**(10)** Charitable and other contributions by corporations and partnerships, as provided in Section 1033.10.

**(11)** Net operating loss deduction, as determined in Section 1033.14.

**(12)** Deduction for employers in the private sector who employ severely impaired persons who have graduated from the training workshops of the rehabilitation programs of the Department of the Family or any other training workshops for such persons as provided in Section 1033.11.

**(13) Bond Premium Deduction.--**In the case of a bondholder, other than an individual, the deduction for amortizable bond premium provided in Section 1034.08.

**(14) Deductions of the Estate and Other Persons on Account of Decedent's Deductions.--**In the case of persons referred to in subsections (b) and (c) of Section 1032.03, the amount of the deductions with respect to a decedent to the extent allowed by said subsections (b) and (c) of Section 1032.03.

**(15)** Deductions applicable to individuals, subject to the provisions of Section 1033.15.

**(16)** Special deductions for salaried individuals, subject to the provisions of Section 1033.16.

**(17)** Deductions of personal exemptions and for dependents, subject to the provisions of Section 1033.18.

**(18)** Deductions to corporations for dividends received as provided in Section 1033.19(a).


**Section 1031.05.-- Net Income.--**

**(a) Definition.--** "Net income" means the gross income computed in accordance with Section 1031.01, minus the following items:

**(1)** The exemptions provided in Section 1031.02 less the expenses attributable to such exempt income, as provided in Section 1033.20;

**(2)** The deductions allowed by Section 1031.04, subject to the provisions of Section 1033.20; and

**(3)** The income subject to preferred tax rates, as described Section 1032.01, less the expenses attributable to such income, as provided in Section 1033.20.


**SUBCHAPTER B --** TREATMENT OF CERTAIN INCOME ITEMS


**Section 1032.01.-- Income Subject to Preferred Tax Rates.--**

**(a) In General.--** "Income subject to preferred tax rates" means the income subject to tax or tax rate different from regular income taxes on individuals, estates, trusts, partnerships and corporations imposed by Subchapter A and B of Chapter 2 of this Subtitle, including but not limited to:

(1) **Special Surtax on Separate Accounts.--**Income subject to special surtax on separate accounts in accordance with Section 1023.01.

(2) **Net Capital Gains.--** The net long-term capital gain subject to the taxes provided in Section 1023.02.

(3) **Alternative Tax to Corporations on Net Long-term Capital Gains.--**The alternative tax to corporations on net long-term capital gains subject to taxation as provided in Section 1023.03.

(4) **Interest Paid or Credited on Interest Bearing Accounts.--**In the case of any individual, estate or trust who benefits from the provisions of Section 1023.04, the interest received that were subject to the special tax rates under said section. Nothing provided in this paragraph shall affect in any way the tax imposed by Section 1023.04 on such interest.

(5) Nonexempt Eligible Interest that are paid or credited on bonds, notes or other liabilities or mortgage loans described in subsection (b) of Section 1023.05, that are subject to the special tax rate established in Section 1023.05.

(6) **Eligible Dividend and Distributive Shares of Partnerships.--**In the case of an eligible person under Section 1023.06, the eligible dividend or distributive share of a partnership received that was subject to the income taxes imposed by said Section. Nothing provided in this paragraph shall affect in any way the tax imposed by Section 1023.06 on such distributions.

(7) **Compensation Paid by the International Sports Team Associations or Federations.--**The compensation received or earned by any resident or nonresident individual from a sports team that is member of an international association or federation, association or affiliated entity, attributable to personal services rendered in Puerto Rico in connection with the holding of such association or federation games in Puerto Rico, which is subject to a twenty percent (20%) tax imposed by Section 1023.07. Nothing provided in this paragraph shall affect in any way the tax imposed by said Section 1023.07 on such income. This paragraph shall apply to teams members of the following international associations or federation:

(A) Major League Baseball teams, including without it being understood as a limitation, the Office of the Commissioner of Major League Baseball, Major League Baseball Properties Inc., Major League Baseball Enterprises Inc., Baseball Television Inc., Major League Baseball Advanced Media, L.P. and their succeeding entities in connection with the holding of Major League Baseball games in Puerto Rico.

(B) National Basketball Association, including without it being understood as a limitation, the National Basketball Association Commissioner's Office, the NBA TV, NBA Latin America Inc., the Women's National Basketball Association, better known as the "WNBA" or the National Basketball Development League, better known as the "NBDL" and any succeeding entity in connection with the holding of "NBA" basketball games in Puerto Rico.

(8) **Special Tax on Variable Annuities in Separate Accounts.--**Income subject to special tax on variable annuities pursuant to Section 1023.08.

(9) **Special Tax on Additional Lottery Prizes.--**The prizes received on account of additional lottery shall pay taxes as provided in Section 1023.09.

**Section 1032.02.-- Income on Account of Alimony or Separate Maintenance Payments.--**

(a) **Income on Account of Alimony or Separate Maintenance Payments.--**

(1) **General Rule.--Gross income includes amounts received as alimony or separate maintenance payments during the taxable year.--**

(2) **Definition of alimony or separate maintenance payments.--**

(A) **In General.--** The term "alimony or separate maintenance payment" means any payment in cash, if--

2011 PR H.B. 3070

    **(i)** Such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

    **(ii)** The divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this subsection and not allowable as a deduction under Section 1033.13,

    **(iii)** In the case of an individual legally separated from his/her spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

    **(iv)** there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

**(B) Divorce or Separation Instrument.--**The term "divorce or separation instrument" means:

    **(i)** a decree of divorce or separate maintenance or a written instrument incident to such a decree,

    **(ii)** a valid and binding written separation agreement, or

    **(iii)** a judicial decree, order or resolution (not described in clause (i)) requiring a spouse to make payments for the support or maintenance of the other spouse, or

    **(iv)** a public instrument executed by both spouses attesting to an alimony or separate maintenance payment agreement, or in the case of spouses who are separated and required to file separate returns, as provided in Section 1061.01(b)(2). Notwithstanding the provision of any law or law to the contrary, the spouses shall be authorized to enter into and execute such instruments, and the validity thereof shall not be affected or impaired in any way for the fact that they are married on the date of the execution thereof.

**(3) Payments to Support Children.--**

**(A) In General.--** Paragraph (1) shall not apply to that part of any payment which the terms of a judicial decree, order or resolution, or public instrument fix (in terms of an amount of money or a proportional part of the payment) as a sum which is payable for the support of children of the payor spouse.

**(B) Treatment of Certain Reductions Related to Contingencies Involving Children.--**For purposes of subparagraph (A), if any amount specified in the instrument will be reduced:

    **(i)** on the happening of a contingency specified in the instrument related to a child such as attaining a specified age, leaving school, marrying, dying, or a similar contingency; or

    **(ii)** at a time which can clearly be associated with a contingency of a kind specified in clause (i), an amount equal to the amount of such reduction will be treated as an amount fixed as payable for the support of children of the payor spouse;

**(C) Special Rule Where Payment is Less than Specified Amount.--**For purposes of this paragraph, if any payment is less than the amount specified in the instrument, then so much of the payment as does not exceed the sum payable for support shall be considered a payment for the support.

**(4) Special Rule on Excess Alimony Payments.--**In the case that the amount of alimony or separate maintenance payments are in excess of twenty thousand dollars ($ 20,000) during any calendar year, such payment shall not be considered alimony or separate maintenance payments, unless it is to be made during each one of the six (6) post-divorce or separation years.

**(5) Applicability.--** The provisions of this subsection shall not apply if the spouses file a joint return in accordance with Section 1061.01(b)(1).

**Section 1032.03.-- Income in Respect to Decedent.--**

**(a) Inclusion in Gross Income.--**

    **(1) General Rule.--** The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his/her death or a prior period shall be included in the gross income, for the taxable year when received, of:

        **(A)** the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent; or

        **(B)** the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

        **(C)** the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

    **(2) Income in Case of Sale or Other Provisions.--**If a right, described in paragraph (1), to receive an amount is transferred by the estate of the decedent or a person who received such right by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent, there shall be included in the gross income of the estate or such person, as the case may be, for the taxable period in which the transfer occurs, the fair market value of such right at the time of such transfer plus the amount by which any consideration for the transfer exceeds such fair market value. For purposes of this paragraph, the term "transfer" includes sale, exchange, or other disposition, but does not include transmission at death to the estate of the decedent or a transfer to a person pursuant to the right of such person to receive such amount by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent.

    **(3) Character of Income Determined by Reference to Decedent.--**The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction in which the decedent acquired such right and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if he/she had lived and received such amount.

**(b) Allowance of Deductions and Credits.--**The amount of any deduction specified in Sections 1033.01, 1033.02, 1033.03, 1033.07, and 1033.15(a)(2)(A) and (B) relating to deductions for expenses, interest, taxes, and depletion or credit specified in Section 1051.01 in respect of a decedent which is not properly allowable to the decedent in respect of the taxable period in which falls the date of his/her death, or a prior period, shall be allowed:

    **(1) Expenses, Interest, and Taxes.--**In the case of a deduction specified in Sections 1033.01, 1033.02, 1033.03, and 1033.15(a)(2)(A) and (B) a credit specified in Section 1051.01, in the taxable year when paid:

        **(A)** to the estate of the decedent; except that

        **(B)** if the estate of the decedent is not liable to discharge the obligation to which the deduction or credit relates, to the person who, by reason of the decedent's death or by bequest, devise, or inheritance acquires, subject to such obligation, from the decedent an interest in property of the decedent.

    **(2) Depletion.--** In the case of the deduction specified in Section 1033.07, to the person described in subsection (a)(1)(A), (B), or (C) who, in the manner described therein, receives the income to which the deduction relates, in the taxable year when such income is received.

**(c) Deduction for Estate Tax.--**

    **(1) Allowance of Deduction.--**

        **(A) General Rule.--** A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in

subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1).

**(2) Method of Computing Deduction.--**For purposes of paragraph (1):

**(A)** The term "estate tax" means the tax imposed on the estate of the decedent (reduced by the credits against such tax) imposed by Subtitle B of this Code.

**(B)** The net value for estate tax purposes of all the items described in subsection (a)(1) shall be the excess of the value for estate tax purposes of all the items described in subsection (a)(1) over the deductions from the gross estate in respect of claims which represent the deductions and credit described in subsection (b).

**(C)** The estate tax attributable to such net value shall be an amount equal to the excess of the estate tax over the estate tax computed without including in the gross estate such net value.

## Section 1032.04.-- Gross Income from Sources Within and Outside of Puerto Rico.--

The Gross income from sources within or outside of Puerto Rico shall be determined as provided in Subchapter E of Chapter 3 of this Subtitle.

## Section 1032.05.-- Services of a Child.--

**(a)** Amounts received in respect of the services of a child shall be included in his/her gross income and not in the gross income of the parent, even though such amounts are not received by the child.

**(b)** All expenditures paid or incurred by the parent or the child attributable to amounts which are includible in the gross income of the child and not of the parent solely by reason of subsection (a) shall be treated as paid or incurred by the child.

**(c)** Any tax assessed against a child, to the extent attributable to amounts includible in the gross income of the child, and not of the parent, solely by reason of subsection (a), shall, if not paid by the child, for all purposes be considered as having also been properly assessed against the parent.

## Section 1032.06.-- Cafeteria Plans.--

**(a) General Rule.--** No amount shall be included in the gross income of a participant in a cafeteria plan used according to such plan to acquire qualified benefits solely because, under the plan, the participant may choose among the benefits of the plan.

**(b) Exception for Highly Compensated Participants.--**

**(1) Highly Compensated Participants.--**In the case of a highly compensated participant, the provisions of subsection (a) shall not apply to any benefit attributable to a plan year for which the plan discriminates in favor of:

**(A)** highly compensated individuals as to eligibility to participate, or

**(B)** highly compensated participants as to contributions and benefits.

**(2) Year of Inclusion.--** Any benefit described in paragraph (1) shall be treated as received or accrued in the taxable year of the participant in which the plan year ends.

**(c) Discrimination as to Benefits or Contributions.--**For purposes of subparagraph (B) of paragraph (1) of subsection (b), a cafeteria plan does not discriminate where qualified benefits and total benefits (or employer contributions allocable to benefits exempt by law and employer contributions for total benefits) available under the plan do not discriminate in favor of highly compensated participants.

**(d) Definitions.--** For purposes of this Section:

**(1) Cafeteria Plan.--**

**(A)** The term "cafeteria plan" means a written plan approved by the Secretary under which:

**(i)** all participants are employees, and

**(ii)** the participants may choose among two (2) or more benefits consisting of cash and qualified benefits.

**(B) Deferred Compensation Plans Excluded.--**The term "cafeteria plan" does not include any plan which provides for deferred compensation, except profit-sharing or stock bonus plan that includes a qualified cash or deferred arrangement (as defined in Section 1081.01(e)) to the extent of amounts which a covered employee may elect to have the employer pay under such plan on behalf of the employee.

**(C) Limitation for Group Health or Accident Plans.--**An employee covered under a Cafeteria Plan that provides for employer contributions to a group health or accident plan described in subparagraph (D) of paragraph (2) of subsection (a) of Section 1031.02, shall not exclude such health or accident benefits, except that such employee shows that he/she is covered by another private health plan whether as the insured, spouse, or dependent.

**(3)** [sic] Highly Compensated Participant and Individual.--

**(A)** The term "highly compensated individual" means an individual described in clauses (i), (ii), (iii) or (iv) of Subparagraph (B).

**(B)** The term "highly compensated participant" means a participant who is:

**(i)** an officer,

**(ii)** a shareholder owning more than five percent (5%) of the voting power or value of all classes of stock of the employer,

**(iii)** highly compensated, in accordance with the provisions of Section 1081.01(e)(3)(E)(iii),

**(iv)** a spouse or dependent (within the meaning of Section 1033.18(d)) of an individual described in clauses (i), (ii) or (iii).

**(3) Qualified Benefits.--** The term "qualified benefit" means the cost or the value of any benefit which is not includible in the gross income of the employee by reason of an express provision Section 1031.02(a)(2). Such term includes any group term life insurance which, as provided in Section 1031.02(a)(2)(A), is includible in gross income of the insured as well as any other benefit permitted under regulations. However, such term shall not include any product which is advertised, marketed, or offered as long-term care insurance.

**(e) Special Rules.--**

**(1)** A collectively bargained plan not considered discriminatory for purposes of this Section, a plan shall not be treated as discriminatory if the plan is maintained under an agreement which the Secretary of Labor and Human Resources and the Labor Relations Board finds to be a collective bargaining agreement between employee representatives and one or more employers.

**(2) Health Benefits.--** For purposes of subsection (b)(1)(B) of this Section, a cafeteria plan which provides health benefits shall not be treated as discriminatory if--

**(A)** contributions under the plan on behalf of each participant include an amount which;

**(i)** Equals one hundred percent (100%) of the cost of the health benefit coverage under the plan of the majority of the highly compensated participants similarly situated, or

    **(ii)** equals or exceeds seventy-five percent (75%) of the cost of the health benefit coverage of the participant (similarly situated) having the highest cost health benefit coverage under the plan, and

  **(B)** contributions or benefits under the plan in excess of those described in subparagraph (A) bear a uniform relationship to compensation.

**(3) Certain Participation Eligibility Rules not Treated as Discriminatory.--**For purposes of subsection (b)(1)(A) of this Section, a classification shall not be treated as discriminatory if the plan:

  **(A)** benefits a group of employees described in Section 1081.01(a)(3)(B)(i)(I), and

  **(B)** meets the following requirements:

    **(i)** No employee is required to complete more than three (3) years of employment with the employer or employers maintaining the plan as a condition of participation in the plan, and the employment requirement for each employee is the same; and

    **(ii)** Any employee who has satisfied the preceding employment requirement and who is otherwise entitled to participate in the plan commences participation no later than the first day of the first plan year beginning after the date the employment requirement was satisfied unless the employee was separated from service before the first day of that plan year.

**(f) Required Reports.--**

  **(1) Recordkeeping.--** Every employer maintaining a cafeteria plan during any taxable year shall keep such records as may be necessary for purposes of determining whether the requirements of the applicable exclusion are met.

  **(2) Additional Information or Documents.--**The Secretary may require by regulations the filing of any information or document related to the plan as necessary.

**(g) Ineligibility of the Commonwealth and Municipal Governments.--**A cafeteria plan shall not be considered as a cafeteria plan under the provisions of this Section if it is part of a plan established by the Legislative Assembly of Puerto Rico, the Government of the Capital City, the municipalities and the agencies, instrumentalities and public corporations of the Government of Puerto Rico.


**Section 1032.07.-- Payment for Dependent Care.--**

**(a) General Rule.--** An employee who supports a household that includes one or more qualifying individuals (as defined in subsection (d) of this Section), many exclude under Section 1031.02(a)(2)(C) the amounts paid or accrued by his/her employer to cover those expenses incurred by the employee that are related to the care of such qualifying individuals.

**(b) Limitation of Exclusion.--**

  **(1) General Rule.--** The amount which may be excluded under subsection (a) shall not shall not exceed three thousand dollars ($ 3,000) for one qualifying individual or six thousand dollars ($ 6,000) for two (2) or more qualifying individuals.

  **(2) Inclusion.--** Any amount paid in excess to the limit established under paragraph (1) shall be included in gross income in the taxable year in which the dependent care services were provided (even if payment of dependent care assistance for such services occurs in a subsequent taxable year).

**(c) Payments to Related Individuals.--**No amount paid or incurred during the taxable year to an employee by an employer in providing dependent care to such employee shall be excluded under this Section, if such amount was paid or incurred to an individual with respect to whom, for such taxable year, a deduction is allowable under Section 1033.18(b).

**(d) Definition of Qualifying Individual.--**The term "qualifying individual" means:

**(1)** A dependent of the employee under the age of fourteen (14) and with respect to whom the employee is entitled to claim an exemption under Section 1033.18(b);

**(2)** A dependent of the employee who is mentally or physically incapable of caring for him/herself; or

**(3)** The spouse of the employee, if mentally or physically incapable of caring for him/herself.

**(e) Services Rendered Outside of the Employee Household.--**

**(1) General Rule.--** The expenses referred to in subsection (a) shall not include any amount paid for services rendered outside of the employee's household.

**(2) Exception.--** Expenses related to the care of qualifying individuals, which are incurred for services outside the employee's household shall be taken into account only if incurred for the care of:

**(A)** a qualifying individual described in paragraph (1) of subsection (d), or

**(B)** a qualifying individual (not described in paragraph (1) of subsection (d)) who regularly spends at least eight (8) hours each day in the employee's household.

**(3) Dependent Care Centers.--** Employment-related expenses described in subparagraph (A) which are incurred for services provided outside the taxpayer's household by a dependent care center (as defined in subparagraph (D)) shall be taken into account only if--

**(A)** such center complies with all applicable laws and regulations, and

**(B)** the requirements of paragraph (2) are met.

**(4) Definition of Dependent Care Center.--** For purposes of this paragraph, the term "dependent care center" means any facility that:

**(A)** provides care for more than six (6) individuals other than individuals who reside at the facility; and

**(B)** receives a fee, payment or grant for providing services for any of the individuals (regardless of whether such facility is operated for profit).

**(f) Special Rules.--For purposes of this Section.--**

**(1) Maintenance of a Household.--** An employee is considered to be as maintaining a household during any period only if the employee has furnished over one half of the cost incurred in maintaining such household during for such period (or, in the case the employee is married during the period, both the employee and his/her spouse furnish the cost of maintaining such household).

**(2) No Deduction shall be Allowed for Excluded Amounts.--** The employee shall not be allowed to claim any amount excluded from his/her gross income under this section, as a deduction under any other provision of this Subtitle.

**(3) Treatment of Facilities at Place of Employment.--** In the case of facilities provided by the employer at the place of employment, the amount excludible for the care of qualifying individuals shall be based on:

**(A)** The use of the facility by the qualifying individual, and

**(B)** The value of the services provided with respect to the qualifying individual.

**(4) Information Required with Respect to Service Provider.--** No amount shall be excluded from the gross income of the employee in accordance with the provisions of this Section unless the name, address, and employer identification or account number of the person to whom payment is made, is included on the income tax return of the employee, or

**(5) Special Rule in the Case of Divorced or Separated Parents.--** If--

**(A)** Paragraph (2) of Section 1033.18(e) to any child with respect to any calendar year, and

**(B)** The child is under the age of fourteen (14), the custodial parent (as defined in Section 1033.18(d)(1)), may treat the child as a qualifying individual.

**Section 1032.08.-- Amounts Received Under Accident or Health Plans.--**

**(a) Amounts Attributable to Employer  Contributions.--**Except as otherwise provided in this Section, amounts directly paid by the employer to an employee for personal injuries or sickness shall be included in gross income of the employee.

**(b) Amounts Expended for Medical Care in Health Reimbursement Arrangements.--**Except in the case of amounts attributable to and not in excess of deductions allowed under Section 1033.15(a)(2)(F) (relating to medical expenses) for any prior taxable year, gross income does not include amounts referred to in subsection (a) of this Section if such amounts are paid, directly or indirectly, by the employer to the taxpayer to reimburse the taxpayer through Health Reimbursement Arrangements for expenses incurred by him/her for the medical care (as described in subsection (c)).

**(c)** For purposes of this Section, a health reimbursement arrangement shall be those which comply with the following conditions:

**(1)** Shall cover the reimbursement for expenses in medical care of employees incurred by employees. In the discretion of the employer, the Health Reimbursement Arrangements may include reimbursement for expenses incurred for:

**(A)** Dependents of the employee;

**(B)** Retired employees; or

**(C)** If it includes retired employees, the dependents of the retired employees.

**(D)** For purposes of this subsection, the term dependent shall include the spouse and any person described in subsection (d) of Section 1033.18.

**(2)** Reimbursement shall be paid, directly or indirectly, by the employer, who shall have the sole control over the health reimbursement arrangements.

**(3)** The employee shall not make contributions to the same.

**(4)** The reimbursement limit, if any, shall be in the discretion of the employer.

**(5)** The health reimbursement arrangements shall not be established through accounts, shall not accrue interest or dividends, and shall not be transferrable.

**(6)** Reimbursements shall not be used to defray expenses incurred in medical care (as defined in Section 1081.04(d)(2)(A)) and shall not be deductible under subsection (a) of this Section, but rather, under this subsection for the year in which the employer makes the reimbursement.

**(7)** The employee shall not be required to have a high annual deductible health plan as established under Section 1081.04, but at the option of the employer, he/she may require the employee to acquire said kind of plan to receive the reimbursement benefits under the health reimbursement arrangement.

**(8)** A health reimbursement arrangement may include the reimbursement through direct payment of the premiums of a person eligible to receive said reimbursements under this subsection.

**(9)** At the discretion of the employer, the amount of the reimbursement not used in a year may be rolled over to any other year; or shall determine that the funds allotted or encumbered may not be rolled over to subsequent years.

**(10)** In addition to using the same to defray medical expenses, prescription and over-the-counter medications, as well as the premiums of an individual health insurance, employees may apply for the reimbursement of the premiums paid for Medicare and long term care, and premiums for a preventive health care or health maintenance insurance such as weight control and tobacco use control programs and others.

**(11)** The employer shall establish in a document of health insurance plan and a summary plan description, the benefits to which employees are entitled under the health insurance plan and the format of which

shall be approved by the Secretary within a term not to exceed sixty (60) days as of its submittal by the interested person, whether the employer or an insurance company or health services organization authorized under the Insurance Code of Puerto Rico.

**(12)** The employer may provide that the arrangements for retired employees that, at the time of their retirement, have an available balance, may be used to defray medical expenses after the retirement of said employees. At the time of retirement, the employer may also add an amount equal to the balance accumulated and not paid on account of sick or vacation leaves to the balance of an employee's account. Provided, that the added sum shall be used pursuant to the provisions of this subsection.

**(d) Compensation for Illness.--**Any amounts paid in lieu of wages during a period in which the employee is absent from work due to injuries or illness shall be excluded from the gross income.

**(e) Payments Not Related to Absence From Work.--**Gross income shall not include the amounts referred to in subsection (a) of this Section, provided that said amounts:

**(1)** Are the payment for the permanent loss or function of a limb or bodily functions, or permanent disfigurement of the taxpayer, his/her spouse or dependent (as defined in Section 1033.18(d)), and

**(2)** Are computed according to the nature of the injury without taking into account the period during which the employee was absent from work.

**(f) Accident and Health Plans.--**For purposes of this subsection:

**(1)** Amounts received under a Savings Plan as expense reimbursement related to an accident or health plan for employees, and

**(2)** Amounts received from the fund for employees to cover injuries and illness shall be treated as amounts received through an accident or health insurance.

**(g) Rule for the Application of Section 1033.15(a)(2)(F).--**For purposes of Section 1033.15(a)(2)(F), the amounts excluded from gross income shall not be considered as a compensation (for insurance or otherwise) for expenses defrayed for medical care.

**(h) Self-employed Persons shall be Considered Employees.--**For purposes of this Section, the term "employee" includes an individual who is self-employed or who works independently, as defined in Section 1081.01(f)(1)(B).


**Section 1032.09.-- Compensation for Services Rendered for a Period of Thirty-six (36) Months or More and Back Pay.--**

**(a) Personal Services.--** If at least eighty percent (80%) of the total compensation for personal services covering a period of thirty-six (36) calendar months or more, from the beginning to the completion of such services, is received or accrued in one (1) taxable year by an individual, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of the individual, ratably over that part of the period which precedes the date of such receipt or accrual.

**(b) Artistic Works or Inventions.--**For purposes of this subsection, the term "artistic work or invention," in the case of an individual, means a literary, musical, or artistic composition of such individual or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work by which such individual covered a period of thirty-six (36) calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him/her is not less than eighty percent (80%) of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve (12) months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than six (6) months shall not be greater than the

aggregate of the taxes attributable to such part had it been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six (36) calendar months.

**(c) Fractional Parts of a Month.--**For purposes of this Section, a fractional part of a month shall be disregarded unless it amounts to more than half a month, in which case it shall be considered as a month.

**(d) Back Pay.--**

**(1) In General.--** If the amount of the back pay received or accrued by an individual during the taxable year exceeds fifteen percent (15%) of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Secretary.

**(2) Definition of Back Pay.--** For purposes of this subsection, "back pay" means:

**(A)** Remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his/her employer and which would have been paid prior to the taxable year except for the intervention of one of the following events:

**(i)** Bankruptcy or receivership of the employer;

**(ii)** dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings;

**(iii)** if the employer is the Government of Puerto Rico, the United States, a state, a territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration, or

**(iv)** any other event determined to be similar in nature under regulations prescribed by the Secretary;

**(B)** wages or salaries which are received or accrued during the taxable year by an employee for services performed prior to the taxable year for his/her employer and which constitute retroactive wage or salary increases ordered, recommended, or approved by any Federal or Government of Puerto Rico agency, and made retroactive to any period prior to the taxable year; and

**(C)** payments which are received or accrued during the taxable year as the result of an alleged violation by an employer of any law of Government of Puerto Rico or the Federal government relating to labor standards or practices, and which are determined under regulations prescribed by the Secretary to be attributable to a prior taxable year.

**(3)** Amounts not includible in gross income under this Subtitle shall not constitute "back pay."


**SUBCHAPTER C -** DEDUCTIONS


**Section 1033.01.-- Trade or Business Expenses.--**

**(a) In General.--** There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including:

**(1)** Except as provided in subsection (l) of Section 1062.01, a reasonable allowance for salaries or other compensation for personal services actually rendered;

**(2)** traveling expenses including amounts expended for meals, lodging, and entertainment other than amounts which are lavish or extravagant under the circumstances while away from home in the pursuit of a trade or business in accordance with the limit established in Section 1033.17(e);

(3) expenses incurred or paid for the use of motor vehicles in relation to carrying on any trade or business, in accordance with the limits established in Section 1033.07(a)(3); and

(4) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he/she has no equity.

**(b) Special Rules.--**

**(1) One Single Principal Trade or Business.--**An individual shall be entitled to claim deductions and allowances under subsection (a) of this Section only with respect to one trade or business that constitutes his/her principal trade or business. Excess deductions and allowances of a principal business for a taxable year may be claimed against net income from one or more activities or businesses specified in Section 1033.02 for said taxable year. Any activity which by itself constitutes a trade or business but which is not the taxpayer's principal trade or business shall be separately subject to the provisions of Section 1033.02. A trade or business which for a taxable year constitutes the taxpayer's principal trade or business shall be treated as such for all subsequent taxable years, unless such trade or business is discontinued or under any other circumstances that the Secretary may determine by regulations. In the case of husband and wife where each has a principal trade or business on their own, the same may be treated as a single principal trade or business for purposes of this paragraph with respect to any taxable year in which they file a joint return under the provisions of Sections 1010.03(a)(2) and 1061.01(b). The Secretary's regulations shall also establish the rules and criteria to be followed in the determination of what constitutes the taxpayer's trade or business.

**(2) Charitable Contributions by Corporations and Partnerships.--**No deduction shall be allowable under subsection (a) of this Section to a corporation or partnership for any contribution or gift which would be allowable as a deduction under Section 1033.10 were it not for the ten percent (10%) limitation therein contained and for the requirement therein that payment must be made within the taxable year.

(3) In the case of an individual carrying on any trade or business, he/she shall be entitled to a fifty percent (50%) deduction on gross income for the self-employment Federal tax paid to the Internal Revenue Service on the income reported for the same taxable year.

(4) In the case of an individual carrying on his/her own trade or business whose gross income does not exceed five hundred thousand dollars ($ 500,000), shall be able to deduct the cost of health insurance, individual and family, as an expense of his/her trade or business, provided that said health insurance covers all employees, if any. In the case of those individuals opting for the provisions herein, they shall not be able to include the expense paid for health insurance under Section 1033.15(a)(4)(B).

**Section 1033.02.-- Expenses Not Related to the Principal Trade or Business.--**

(a) In the Case of an Individual:

**(1)** All the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income, or in the conduct of one or more trades or businesses other than the principal trade or business, up to the amount of the gross income derived from said activity, trade or business.

**(2)** The deductions of an activity in excess of the gross income from that activity shall be treated as deductions allowed against the income from such activity in subsequent years.

**(3)** If an individual recognizes gain in the sale or exchange of a property used in a trade or business, and said gain is not excluded from gross income under Section 1023.02, the gain so recognized shall constitute gross income from the activity where the property sold or exchanged was being used.

**(4)** If the taxpayer has more than one activity or trade or business, other than his/her principal trade or business, the determination of the deductible expenses shall be made separately with respect to each activity or trade or business.

**(5)** The deduction allowed for traveling, meals, lodging and entertainment shall be subject to the limit established in Section 1033.17(e).

**(6)** The Secretary shall establish by regulations the rules and criteria to be followed in determining whether, in the application of this paragraph, an activity or trade or business constitutes by itself a separate activity or trade or business, or whether it should be grouped with another activity or trade or business.

**(b)** If during the taxable year, a taxpayer disposes of all of his/her interest or of the properties used in an activity other than his/her principal trade or business, the following rules shall apply:

**(1)** Fully Taxable Transaction--.

**(A) General Rule.--** If the total gain or loss is recognized in the transaction, any excess deductions of previous years shall be granted as a deduction against the income of said activity generated during the taxable year. The excess deductions, if any, may be claimed against any capital gain recognized in the provision. Any excess deductions for any capital gains recognized in the transaction, shall be considered as a capital loss subject to the provisions of Section 1034.01.

**(B) Transactions Between Related Parties.--**If the taxpayer and the person who acquires the interest or the property are related parties within the meaning of Section 1033.17(b)(2), subparagraph (A) shall not apply until the taxable year in which said interest or property is acquired (in a transaction described in subparagraph (A)) by a party not related to the taxpayer.

**(2) Installment Sale of the Total Interest.--**In the event of a sale of the total interest in the activity or of the property used in it with respect to which the taxpayer chooses to apply Section 1040.05, paragraph (1) shall apply to said portion of the excess expenses for each taxable year in the same proportion to the total of the excess expenses that the gain recognized in the sale during the taxable year bears with the total gross gain made, or to be made upon completion of the total payment.

**(3) Provision by Gift or Death.--**If the total of the interest or the property used in an activity that does not constitute the principal trade or business of the taxpayer is transferred by gift or in case of the death of the taxpayer:

**(A)** The adjusted base of said interest immediately before the transfer (as provided in Section 1034.02(a)(5)) shall be increased by the amount of the excess of expenses not allowed as deduction due to the limitations of this subsection, and

**(B)** such excess shall not be allowed as a deduction in any taxable year.

**(c) Expenses Related to the Rendering of Services as an Employee.--**

**(1) General Rule.--** The compensation received by a taxpayer from the rendering of services as an employee, as said term is defined in Section 1062.01(a)(3), and the pensions received by reason of said services, do not constitute a trade or business for purposes of Section 1033.01, nor an activity described Section 1033.02. Any excess of expenses over income under Sections 1033.01 and 1033.02, shall not reduce the compensation received from the rendering services as an employee or the pension by reason of services rendered, except:

**(A)** the loss incurred from the sale or exchange of preferred stock of a special employee-owned corporation;

**(B)** the loss incurred by an regular member of a special employee-owned corporation with respect to his/her private capital account balance at the time of his/her disassociation from the special corporation; or

**(C)** the distributive share of a regular or special member in the operating loss of a special employee-owned corporation;

**(2)** The deductible expenses related to the rendering of services as an employee are expenses for traveling, meals, lodging, while away from home, entertainment (other than amounts which are lavish or extravagant under the circumstances), and other expenses related to the employment which are paid or incurred by the taxpayer in relation to the rendering of his/her services as an employee, up to the amount of the reimbursement received from the employer.

**(3) Exception.--** The limitation contained in paragraph (1) shall not be applicable to the taxable year in which the taxpayer begins an activity which constitutes his/her principal trade or business, other than the rendering of services as an employee, and to the two (2) succeeding taxable years. This exception shall apply to the taxpayer only once.

**(4) Salespersons on Commission.--**As a general rule, salespersons on commission are regarded as employees subject to the limitation provided in paragraph (1) of this subsection.

**(d) Loss of a Corporation of Individuals.--**

**(1) General Rule.--** A shareholder's pro-rata share in the losses of a corporation of individuals described in Section 1115.04(b)(9) and (10) (as recognized under Section 1115.04(a)) incurred during a taxable year ending within the taxable year of the shareholder, shall be allowed in the following order, subject to the limitations established in subsection (g) of Section 1115.04, only to the extent of the pro-rata share in:

**(A)** The income of other corporations of individuals or partnerships or special partnerships whose taxable years end within the shareholder's taxable year;

**(B)** the income attributable to such corporation of individuals for taxable years ending within the subsequent taxable years of the shareholder; and

**(C)** the income of other corporations of individuals, partnerships, or special partnerships for taxable years ending within the subsequent taxable years of the shareholder.

**(e) Losses of a Partnership or Special Partnership.--**The distributive share of a partner in the loss of a partnership or special partnership incurred during a taxable year ending within the taxable year of a partner, shall be allowed as a deduction to such partner in the following order, subject to the limitations established in this subsection and in Sections 1071.04 and 1114.15 of this Subtitle.

**(1) General Rule.--** For purposes of this subsection, the amount of the loss allowable as a deduction attributable to the distributive share of a partner in the net loss of one or more special partnerships shall be determined as follows:

**(A)** The distributive share of a partner in the loss described in Section 1071.02(a)(9) and (10) and 1114.06(a)(9) and (10) shall be limited to the adjusted basis of the partner in the partnership that sustained the loss. Once the loss in each of the partnerships or special partnerships is determined, the same shall be grouped to determine the amount of the net loss;

**(B)** The distributive share of a partner in the net income described in Section 1071.02(a)(9) and (10) and 1114.06(a)(9) and (10) of other partnerships or special partnerships shall be added to the net income of other partnerships or special partnerships which taxable year ends with the taxable year of the partner.

**(C)** The total of the net loss determined in subparagraph (A) may be claimed as a deduction against the income of other partnerships or special partnerships, as determined in subparagraph (B). The excess of the net loss, if any, may be claimed as a deduction against the income of corporations of individuals.

**(2) Basis of the Partner's Interest.--**Except as provided in Sections 1075.02 and 1114.22, the adjusted basis of any of the partner's interest in the partnership or special partnership shall not include debts of the partnership or special partnership.

2011 PR H.B. 3070

(3) **Carryover Loss.--** If, for any taxable year the distributive share of a partner in the net loss of a partnership or special partnership under Sections 1071.02(a)(9) and (10) or Section 1114.06(a)(9) and (10) exceeds the amount allowable as a deduction under paragraph (1), then:

   (A) Such excess shall be allowed first as a deduction against the partner's distributive share in the net income of the partnership or special partnership in the subsequent taxable year;

   (B) the amount allowed as a deduction under subparagraph (A), shall reduce the basis of the partner's interest in the partnership or special partnership (but not to less than zero); and

   (C) the amount not allowed as a deduction under subparagraph (A) shall be considered as a distributive share of a partner in a net loss under Section 1071.02(a)(9) and (10) or Section 1114.06(a)(9) and (10) of said partnership or special partnership for such taxable year for purposes of paragraph (1)(A) of this subsection.

(4) **Special Rules in the Case of Tourist Businesses.--**

   (A) **Application of Paragraph (1).--**For purposes of the application of subparagraphs (A), (B), and (C) of paragraph (1) a partnership or special partnership that has in effect a resolution or grant as provided by the "Tourist Development Act of 1993", as amended, or any previous or subsequent similar law and that for a taxable year it incurs a loss in any of the items described in Sections 1071.02(a)(9) and (10) or Section 1114.06(a)(9) and (10) and at the same time derives net income in the other item, such loss and net income shall be treated as if incurred or earned by different partnerships or special partnerships. For purposes of paragraph (1)(A), in applying this rule, the partner's adjusted basis for purposes of the loss limitation shall be such partner's adjusted basis in the partnership disregarding the net income derived in the other item.

   (B) A loss or net income generated by such partnership or special partnership in a year in which it has in effect a flexible exemption election under such statutes, shall be considered as one of the items described in 1071.02(a)(10) or Section 1114.06(a)(10), as the case may be.

   (C) **Application of Paragraph (3).--**The Secretary shall adopt regulations related to the application of subparagraphs (A), (B), and (C) of paragraph (3) in the case of persons having in effect a resolution or grant provided under the "Tourist Incentive Act of 1983", as amended, or the "Tourism Development Act of 1993", respectively.


**Section 1033.03.-- Interest.--**

In the case of a taxpayer other than an individual, all interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations the interest upon which is wholly exempt from the taxes imposed by this Subtitle to which Section 1033.17(a)(10) refers and the proportional designation of interest expense of financial institutions to which Section 1033.17(f) refers.


**Section 1033.04.-- Taxes.--**

(a) **Taxes in General.--** In the case of a taxpayer other than an individual, taxes paid or accrued within the taxable year, except:

   (1) Income tax imposed by the authority of the Government of Puerto Rico;

   (2) Taxes on income and excess profits imposed by authority of the United States, any possession of the United States, or any foreign country, if the taxpayer opts to avail him/herself to any extent of the benefits of Section 1051.01;

   (3) Estate, inheritance, devise, bequest, and gift taxes when the value of the property donated, inherited or devised is excluded from gross income under the provisions of Section 1031.01(b)(2);

**(4)** Taxes assessed for local benefits of a kind tending to increase the value of the property assessed; but this paragraph shall not exclude the allowance as a deduction of so much of such taxes as is properly allocable to maintenance or interest charges; and

**(5)** Federal import duties and State excise taxes paid by dealers or manufacturers on goods imported, manufactured, produced or acquired in Puerto Rico for sale; but this paragraph shall not prevent the deduction of said duties and excises under Section 1033.01.

**(b) Shareholders Taxes Paid by Corporation.--**The deduction for taxes allowed by subsection (a) shall be allowed to a corporation in the case of taxes imposed to a shareholder of the corporation upon his/her interest as shareholder which are paid by the corporation without reimbursement from the shareholder, but in such cases no deductions shall be allowed to the shareholder for the amount of such taxes.


**Section 1033.05.-- Deduction for Losses by Individuals, by Corporations, Capital Losses, and Wagering Losses.--**

**(a) Losses by Individuals.--** In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise:

**(1)** If incurred in trade or business shall be allowed against the net income of the trade or business, or

**(2)** if incurred in any transaction entered into for profit, though not connected with the trade or business, the deduction shall be limited to the income generated by said for profit transaction.

**(b) Losses by Corporations.--** In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise shall be allowed as a deduction against gross income.

**(c) Capital Losses.--**

**(1) Limitation.--** Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in Section 1033.01.

**(2) Securities Becoming Worthless.--**If any securities, as defined in paragraph (3) of this subsection, become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for purposes of this Subtitle, be considered as a loss from the sale or exchange of capital assets, on the last day of such taxable year.

**(3) Definition of Securities.--**As used in paragraph (2) the term "securities" means:

**(A)** Shares of stock in a corporation; and

**(B)** rights to subscribe for or to receive such shares.

**(4) Stock in Affiliate Corporation.--**For purposes of paragraph (2), stock in a corporation affiliated with the taxpayer shall not be considered a capital asset. For purposes of this paragraph a corporation shall be deemed to be affiliated with the taxpayer only if--

**(A)** At least ninety-five percent (95%) of each class of its stock is owned directly by the taxpayer; and

**(B)** more than ninety percent (90%) of the aggregate of its gross income for all taxable years has been from sources other than royalties, rents (except rents derived from rental of properties to employees of the company in the ordinary course of its operating business), dividends, interest (except interest received on deferred purchase price of operating assets sold), annuities, or gains from sales or exchanges of stocks and securities; and

**(C)** the taxpayer is a domestic corporation.

**(d) Wagering Losses.--** Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

**(e) Basis for Determining Loss.--**The basis for determining the amount of deduction for losses sustained, to be allowed in accordance with subsections (a) or (b) of this section, and for bad debts, to be allowed under

Section 1033.06, shall be the adjusted basis provided in Section 1034.02(b) for determining the loss from the sale or other disposition of property.

## Section 1033.06.-- Bad Debts.--

**(a) Bad Debts.--**

**(1) General Rule.--** For debts which become worthless within the taxable year, and when satisfied that a debt is recoverable only in part, the Secretary may allow such debt as a deduction in an amount not in excess of the part charged off within the taxable year. This paragraph shall not apply with respect to a debt evidenced by securities as defined in paragraph (3). This paragraph shall not apply in the case of a taxpayer other than a corporation or partnership, with respect to a non-business debt, as defined in paragraph (4). The use of the reserve method for determining the deduction for bad debts shall not be allowed.

**(2) Securities Becoming Worthless.--**If any securities, as defined in paragraph (3), become worthless within the taxable year and are capital assets, the loss resulting therefrom shall, for purposes of this Subtitle, be considered a loss from the sale or exchange of capital assets, on the last day of such taxable year.

**(3) Definition of Securities.--**As used in paragraphs (1), (2), and (4); the term "security" means bonds, debentures, notes, or certificates, or other evidence of indebtedness, issued by any corporation, including those issued by a government or political subdivision thereof, with interest coupons or in registered form.

**(4) Nonbusiness Debts.--** In the case of a taxpayer other than a corporation or partnership, if a nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a short-term capital loss.

**(A)** For purposes of this paragraph the term "nonbusiness debt" means a debt other than:

**(i)** a debt created or acquired, as the case may be, in connection with a trade or business of the taxpayer; or

**(ii)** a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. This paragraph shall not apply to a debt evidenced by securities as defined in paragraph (3).

**(5) Securities of Affiliate Corporations.--**Bonds, debentures, notes or certificates, or other evidences of indebtedness issued with interest coupons or in registered form by any corporation affiliated with the taxpayer shall not be deemed capital assets for purposes of paragraph (2), and paragraph (1) shall apply with respect to such debt, except that no such deduction shall be allowed under such paragraph with respect to any such debt which is recoverable only in part. For purposes of this paragraph a corporation shall be deemed to be affiliated with the taxpayer only if--

**(A)** At least ninety-five percent (95%) of each class of its stock is owned directly by the taxpayer; and

**(B)** more than ninety percent (90%) of the aggregate of its gross income for all taxable years has been from sources other than royalties, rents (except rents derived from rental of properties to employees of the company in the ordinary course of its operating business), dividends, interest (except interest received on deferred purchase price of operating assets sold), annuities, or gains from sales or exchanges of stock and securities; and

**(C)** the taxpayer is a domestic corporation.

## Section 1033.07.-- Depreciation, Amortization, and Depletion.--

**(a) Current Depreciation.--** A reasonable allowance for exhaustion, wear and tear, including a reasonable allowance for obsolescence of:

**(1)** Property used in trade or business,

**(A)** Using the applicable straight-line method for property, and the recovery and acquisition period provided in Section 1040.12 for tangible property (other than property described in subparagraph (B)) acquired after December 31, 2009, or similar provisions of the Federal Internal Revenue Code and the regulations approved thereunder may apply, if no depreciation terms are fixed by Section 1040.12, until the Secretary promulgates the corresponding regulations; or

**(B)** using the applicable depreciation method, and the applicable recovery and acquisition period as provided in Section 1040.12 for tangible property acquired by purchase during taxable years commencing after June 30, 1995;

**(C)** that constitutes goodwill acquired by purchase during taxable years commencing after June 30, 1995, using the straight-line method and a useful life of fifteen (15) years.

**(D)** That constitutes intangible property, other than goodwill, acquired by purchase or developed during taxable years commencing after December 31, 2009, by using the straight-line method and a useful life of fifteen (15) years or the useful life of said intangible property, whichever is less;

**(E)** Using any alternative accelerated depreciation method, as provided in special laws;

**(F)** For purposes of subparagraphs (A) through (E) of this paragraph, "purchase" means any acquisition of property, provided that the transferor is not a related party and the basis of the property in the hands of the transferee is not determined in whole or in part by reference to the basis of such property in the hands of the transferor. The term "related party" shall have the meaning provided in Section 1010.05.

**(G)** Any business that during the taxable year has generated less than three million dollars ($ 3,000,000) of gross income may opt to deduct the total cost of computer equipment and installation thereof during the year of its acquisition and installation. Any equipment previously depreciated or acquired by the related party shall not qualify for the accelerated depreciation.

**(H)** Any business that during the taxable year has generated less than three million dollars ($ 3,000,000) of gross income may determine the deduction established in subparagraph (A) of this paragraph, by using the useful life of two (2) years for ground transportation equipment except for automobiles (as defined in paragraph (3) of this Section) and environmental conservation equipment.

**(I)** In the case of property acquired before January 1, 2010, by using the straight-line method for property other than goodwill or property with respect to which an option to claim flexible depreciation under Section 1117 of the Internal Revenue Code of 1994 or property described in subparagraph (B) is in effect.

**(J)** If, for taxable years commencing before January 1, 2011, the taxpayer used a depreciation method with respect to any property other than the straight-line or accelerated depreciation method allowed under the Internal Revenue Code of 1994, then in applying subparagraph (A) to such property, the taxpayer shall use the adjusted basis of the property as of January 1, 2011.

**(2) Property Held for the Production of Income.--**In the case of property with usufruct for life held by one person, and the bare legal title of another, the deduction shall be computed as if the usufructuary were the absolute owner of the property and it shall be allowed to the usufructuary. In the case of property held in trust, the allowable deduction shall be prorated between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

**(A)** In the case of any new property built or acquired after December 31, 1976, or built or acquired before January 1, 1976, but not used for any purpose until after said date, which, when used for the first time were destined to be leased for residential purposes, the allowance for current depreciation shall be computed on a basis of a thirty-year (30) period, while the same is used for such purposes.

**(B)** In the case of any structure, whose construction begun after May 31, 1980, and before January 1, 1996, and which is destined to be leased for residential purposes, the allowance for depreciation shall be computed on a basis of a ten-year (10) period if the structure is made of wood, or of fifteen (15) years in all other cases, while the same is used for residential purposes.

**(3) Limitation to the Amount of the Deduction for Depreciation for Properties that are Automobiles.--**

**(A) General Rule.--** In the case that the property is an automobile, as said term is defined in subparagraph (B), the amount of the deduction to be allowed under this subsection shall not exceed six thousand dollars ($ 6,000) annually per automobile up to a maximum of thirty thousand dollars ($ 30,000) for the useful life of the automobile.

**(i)** In the event that the taxpayer is a salesperson, the amount of the deduction to be allowed under this subsection shall not exceed ten thousand dollars ($ 10,000) annually per automobile up to a maximum of thirty thousand dollars ($ 30,000) for the useful life of the automobile.

**(ii) Limitation for Personal Use of the Automobile.--**In case an automobile is used by the taxpayer in his/her trade or business or for the production of income and the same is also used for personal purposes, the amount of the deduction determined under subparagraph (A) shall be reduced by the amount corresponding to the personal use of the automobile.

**(B) Definition of Automobile.--**For purposes of this paragraph, the term "automobile" means any motor vehicle manufactured principally to be used in public streets, highways, and avenues, provided by any means of self-propulsion which may have been designed for transporting persons, except for:

**(i)** Automobiles used directly in the business of transporting passengers or property for compensation or pay such as limousines, taxis, public vehicles, etc.

**(ii)** Hearses, wreath carriages, omnibuses, ambulances, motorcycles, trucks, vans and any other similar vehicle used principally in the transportation of cargo.

**(iii)** Automobiles leased or possessed for leasing by persons regularly devoted to automobile leasing.

**(C) Automobile Leases.--** In the cases of automobile leases, which would be tantamount to a purchase, as provided in subparagraph (D), no deduction for depreciation granted under subparagraph (A) of this paragraph shall be allowed. In lieu of the depreciation, the sum paid for leasing the automobile during the taxable year that shall not exceed six thousand dollars ($ 6,000) annually per automobile, up to thirty thousand dollars ($ 30,000) for the useful life of the automobile shall be allowed as deduction.

**(i)** If the taxpayer is a salesperson, the amount of the deduction to be allowed under this subsection shall not exceed ten thousand dollars ($ 10,000) annually per automobile up to a maximum of thirty thousand dollars ($ 30,000) for the useful life of the automobile.

**(D) Automobile Leases that are Tantamount to a Purchase.--**An automobile lease shall be considered as essentially equivalent to a purchase if, under the lease, one of the following requirements is fulfilled:

**(i)** If, under the lease contract, the title to the property is transferred to the lessee.

**(ii)** If the lease contract contains an option to purchase at a substantially lower price than the fair market value of the automobile at the time the option is exercised.

**(iii)** If the term of the lease contract is equal to or greater than seventy-five percent (75%) of the useful life of the leased automobile.

**(iv)** If the present value of the minimum lease payments, excluding administrative expenses, is equal to or greater than ninety percent (90%) of the fair market value of the leased automobile.

    **(E) Deduction in the Case of Operating Leases.--**In the case of an operating lease, as established in subparagraph (F), the amount of rent paid during the taxable year shall be allowed as a deduction up to six thousand dollars ($ 6,000) annually per automobile. If the taxpayer is a salesperson, the amount of the deduction to be allowed on account of operating lease shall be the rent paid up to a maximum of ten thousand dollars ($ 10,000). Notwithstanding the foregoing, the amount of the rent paid on account of an operating lease shall not be deductible as an expenditure under the provisions of Section 1033.01.

    **(F) Operating Lease.--** An operating lease shall be that in which, under the lease contract, none of the requirements established in subparagraph (D) is fulfilled.

    **(G) Deductions for Expenses in Connection with Motor Vehicle Use and Maintenance.--**In the case of expenses incurred or paid for the use and maintenance of an automobile, including, but not limited to repairs, insurance, maintenance, gas, and related expenditures, such expenses shall not be allowed as automobile use and maintenance expenses. In lieu of such expense, there shall be allowed a deduction for the use of an automobile to carry out trade or business, computed on a standard mileage rate basis. The Secretary shall determine through regulations the standard mileage rate applicable to each taxable year.

    **(H) Requirement to Report Payment Automobile Lease.--**Any entity engaged in the automobile leasing business, that are essentially equivalent to a purchase, as defined in subparagraph (D), shall be required to file an information return that includes the amount paid for the automobile lease during the calendar year. Said information return shall be filed as provided in Section 1063.11.

**(b) Depletion.--** In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case;

    **(1)** such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Secretary;

    **(2)** In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate, but not the basis for depletion, shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such revised estimate;

    **(3)** In the case of leases the deductions shall be equitably apportioned between the lessor and lessee;

    **(4)** In the case of property held by one person for life and whose bare ownership is held by another, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant.

    **(5)** In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.

**(c) Basis for Depreciation and Depletion.--**The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect to any property shall be as provided in Section 1033.08.

**Section 1033.08.-- Basis for Depreciation and Depletion.--**

**(a) Basis for Depreciation.--** The basis upon which consumption, exhaustion, wear and tear, and obsolescence are to be allowed with respect to any property shall be the adjusted basis provided in Section 1034.02(b) in order to determine the gain in the sale or other disposition of the property.

**(b) Basis for Depletion.--** The basis upon which depletion, are to be allowed with respect to any property shall be the adjusted basis provided in Section 1034.02(b) in order to determine the gain in the sale or other disposition of the property.

**Section 1033.09.-- Contributions by an Employer to Employees' Trust or Annuity Plan and Compensation Under a Deferred-payment Plan.--**

**(a)** Subject to the provisions of this Section, the contributions made by an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan may be deducted against gross income of the trade or business.

**(1)** **General Rule.--** If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under Section 1033.01; however, if they would otherwise be deductible under Section 1033.01, they shall be deductible under this subsection, subject, however, to the following limitations:

**(A)** In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under Section 1081.01(a), in an amount determined as follows:

**(i)** **In the case of a Defined Benefit Pension Plan.--**

**(I)** An amount not in excess of five percent (5%) of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Secretary upon periodical examinations at not less than five (5) year intervals to be more than the amount reasonably necessary to provide the remaining unfunded cost of past and current service credits of all employees under the plan, plus

**(II)** any excess over the amount allowable under subclause (I) necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their former and current credits for service distributed as an equal amount, or an equal percentage of compensation, on the remaining future services of each one of said employees, as determined under regulations prescribed by the Secretary, but if such remaining unfunded cost with respect to any three (3) individuals were greater than fifty percent (50%) of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least five (5) taxable years, or

**(III)** in lieu of the amounts allowable under the preceding subclauses (I) and (II), an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Secretary, plus, if the plan provides credit past services or other supplementary pension or annuity credits, an amount not in excess of ten percent (10%) of the cost that would be required to totally cover or purchase said pension or annuity credits as of the date of their inclusion in the plan, as determined by regulations prescribed by the Secretary, except that in no case shall a deduction be allowed for any amount, other than the normal cost, paid in after such pension or annuity credits have been totally funded or purchased.

**(IV)** In lieu of the amounts allowed under the preceding subclauses (I), (II), and (III), the amount necessary to satisfy the minimum funding standard provided by Sections 302(a)(2)(A) and (C) of the Employee Retirement Income Security Act of 1974 ("ERISA") or any section or provision of any successor law for the plan year which ends with or within such taxable year or for any prior plan year.

**(V)** Any amount paid in a taxable year in excess of the amount deductible in such year under the foregoing limitations shall be deductible in the succeeding taxable years in order of time to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year in accordance with the foregoing limitations.

**(ii)** **In the case of Defined Contribution Pension Plan.--**

**(I)** In the taxable year when paid, if the contributions are paid into a defined contribution pension plan trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under Section 1081.01(a), in an amount not in excess of twenty-five percent (25%) of the compensation otherwise paid or accrued during the taxable year to all employees under the defined contribution pension plan. If in any taxable year beginning after December 31, 1953, there are paid into the trust, or a similar trust then in effect, amounts less than the amounts deductible under the preceding sentence, the excess, or if no amount is paid, the amounts deductible, shall be carried forward and deductible, when paid in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any such succeeding taxable year shall not exceed twenty-five percent (25%) of the compensation otherwise paid or accrued during such succeeding taxable year to the beneficiaries under the plan. In addition, any amount paid into the trust in a taxable year beginning after December 31, 1953, in excess of the amount allowable with respect to such year under the preceding provisions of this subsection shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this clause shall not exceed twenty-five percent (25%) of the compensation otherwise paid or accrued during such taxable year to the beneficiaries under the plan. If the contributions are made to two or more in defined contribution plan trusts, such trusts shall be considered a single trust for purposes of applying the limitations in this clause.

**(B)** In the taxable year when paid, in an amount determined in accordance with subparagraph (A), if the contributions are paid toward the purchase of retirement annuities and such purchase is a part of a plan which meets the requirements of Section 1081.01(a)(3), (4), (5), and (6), and if refunds of premiums, if any, are applied within the current taxable year or next succeeding taxable years towards the purchase of such retirement annuities.

**(C)** In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under Section 1081.01(a), in an amount not in excess of twenty-five percent (25%) of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan. If in any taxable year beginning after December 31, 1953, there are paid into the trust, or a similar trust then in effect, amounts less than the amounts deductible under the preceding sentence, the excess, or if no amount is paid, the amounts deductible, shall be carried forward and be deductible when paid in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any such succeeding taxable year shall not exceed twenty-five percent (25%) of the compensation otherwise paid or accrued during such succeeding taxable year to the beneficiaries under the plan. In addition, any amount paid into the trust in a taxable year beginning after December 31, 1953, in excess of the amount allowable with respect to such year under the preceding provisions of this clause shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this subparagraph shall not exceed twenty-five percent (25%) of the compensation otherwise paid or accrued during such taxable year to the beneficiaries under the plan. The term "stock bonus or profit-sharing trust," as used in this paragraph, shall not include any trust designed to provide benefits upon retirement and covering a period of years, if under the plan the amounts to be contributed by the employer can be determined actuarially as provided in subparagraph (A). If the contributions are made to two (2) or more stock bonus or profit-sharing trusts, such trusts shall be considered a single trust for purposes of applying the limitations in this subparagraph.

**(D)** When paid within the taxable year, if the plan is not one included in subparagraphs (A), (B) or (C), if the employees' rights to or derived from such employer's contribution or such compensation are non-forfeitable at the time when the contribution or compensation is paid.

2011 PR H.B. 3070

**(E)** For purposes of subparagraphs (A), (B) and (C), a taxpayer shall be deemed to have made a payment on the last day of the year if the payment is on account of such taxable year and is made on or before the last day authorized by this Subtitle to file the income tax return for such year, including any extension granted by the Secretary for the filing of the same, if the payments are made to a plan established and existing on or before the last day of the taxable year for which such plan is effective.

**(F)** If amounts are deductible under subparagraphs (A)(i) or (B), with regard to a trust or an annuity plan, or under subparagraphs (A) and (C), or (B) and (C), or (A), (B) and (C) with regard to two or more trusts, or one or more trusts and an annuity plan, the total deductible amount in taxable year under said trusts and plans shall not exceed twenty-five percent (25%) of the compensation otherwise paid or accrued during the taxable year to the persons who are the beneficiaries of the trusts or plans. In addition, in the case of two or more trusts, or one or more trusts and an annuity plan, any amount paid to such trust or under said annuity plan in a taxable year commencing after June 30, 1995, in excess of the admissible amount with respect to said year under the preceding provisions of this subparagraph, shall be deductible in the following taxable years in order of time, but the amount thus deductible under this sentence in any of said following taxable years, along with the amount allowable under the first sentence of this subparagraph, shall not exceed thirty percent (30%) of the compensation otherwise paid or accrued during said taxable years to the beneficiaries under the trusts or plans.

**(G) Contributions to Employee Stock Ownership Plans.--**Notwithstanding the provisions of subparagraphs (C) and (F), if contributions are paid into a trust which forms a part of an employee stock ownership plan (as described in paragraph (1) of subsection (h) of Section 1081.01) and such contributions are applied by the plan to the repayment of the principal of a loan incurred for the purpose of acquiring qualifying employer securities (as described in paragraph (2) of subsection (h) of Section 1081.01), such contributions shall be deductible under this Section for the taxable year in which they are paid in an amount that shall not exceed twenty-five percent (25%) of the compensation otherwise paid or accrued during the taxable year to the employees under such employee stock ownership plan. Any amount paid into such trust in any taxable year in excess of the amount deductible under this subparagraph shall be deductible in the succeeding taxable years in order of time to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year under the preceding sentence.

If there is no plan but a method of employer contributions or compensation has the effect of a stock-bonus, pension, profit sharing, or annuity plan, or similar plan deferring the receipt of compensation, this paragraph shall apply as if there were such a plan.

**(2) Deductions Under Prior Income Tax Laws.--**Any deduction allowable under the Internal Revenue Code of 1994, as amended, for a taxable year beginning before January 1, 2011, or under the Income Tax Act of 1954, as amended, for a taxable year beginning before July 1, 1995, which under said Code or Act, as applicable, was carried over to any taxable year beginning after December 31, 2010, shall be allowed as a deduction for the years to which it was so carried over to the extent allowable under said Code or Act if it had remained in force with respect to said year.

**(3) Self-employed Individuals.--**In the case of a plan covered in paragraph (1) which provides contributions or benefits for employees, all or any of whom are employees within the meaning of Section 1081.01(f)(1) and the employer of said individual is the person treated as his/her employer under Section 1081(f)(4):

**(A)** The term "employee" includes an individual which is an employee within the meaning of Section 1081.01(f)(1) and the employer of said individual is the person who is treated as his/her employer under Section 1081.01(f)(4);

**(B)** the term "earned income" has the meaning established in Section 1081.01(f)(2);

**(C)** the contributions to said plan in benefit of an individual who is an employee within the meaning of Section 1081.01(f)(1) shall be considered as satisfying the conditions of ordinary and necessary expenditure of subsection (a) of this section, up to the limit that the contribution in benefit of an individual that is treated as an employee within the meaning of Section 1081.01(f)(1) does not exceed twenty-five percent (25%) of the income earned by said individual (determined without considering the deductions allowable under this subsection) derived from the trade or business with respect to which said plan is established, and to the extent that said contributions are not attributable (determined in agreement with the regulations prescribed by the Secretary) to the purchase of life, accident, health, or other insurance; and

**(D)** in case of an individual who is an employee within the meaning of Section 1081.01(f)(1), any reference to compensation shall be considered as a reference to the income earned by said individual derived from the trade or business with respect to which the plan is established.

**(4)** In addition to the deductions allowed under paragraph (1), a corporation may deduct the amount of any dividend paid in cash by said corporation during the taxable year with regard to its stock, if--

**(A)** Said stock is owned as of the registration date of the dividend by an employee stock ownership plan (as defined in paragraph (1) of subsection (h) of Section 1081.01), maintained by said corporation or by any other corporation that is a component member of a controlled group of corporations (within the meaning of subsection (a) of Section 1010.04) which includes the corporation that maintains the plan; and

**(B)** pursuant to the provisions of the plan the dividend, whether assigned to the participants or not, is used to make payments on a loan described in subparagraph (G) of paragraph (1) of this Section.

Any deduction under subparagraph (B) shall be allowed in the corporation's taxable year in which the dividend is used to pay the loan described in said subparagraph. Subparagraph (B) shall apply to dividends in employer stock assigned to any participant, unless the plan provides for an employer's stock with a fair market value of not less than the amount of said dividends to be assigned to said participant for the year in which (if it were not for the provisions of subparagraph (B)) said dividends would have been assigned to said participant.

**(5) Tax on Nondeductible Contributions to Qualified Retirement Plans.--**

**(A) Imposition of Tax.--** In the case of any qualified retirement plan under Section 1081.01, it is hereby imposed a tax equal to ten percent (10%) of the nondeductible contributions under the plan (determined as of the close of the taxable year of the employer). This contribution shall apply even if the nondeductible contribution is not claimed as deduction in the income tax return of the employer.

**(B) Employer Liable for Tax.--**The tax imposed by this paragraph shall be paid by the employer making the nondeductible contributions.

**(C) Nondeductible Contributions.--**

**(i)** The term "nondeductible contributions" means the sum of:

**(I)** the excess of the amount contributed for the taxable year by the employer to or under such plan, over the amount allowable as a deduction under this Section, plus

**(II)** the excess of any nondeductible contribution for the preceding taxable year over the amount properly returned to the employer during the taxable year, and the amounts deductible under this Section for the current taxable year.

**(ii)** In determining the amount of nondeductible contributions, the deductible amount under this section for any taxable year, shall be treated first from nondeductible contributions made in preceding taxable years and carried forward to such taxable year. Then, nondeductible contributions made during such taxable year shall continue to be subject to the payment of the

tax provided herein until they are properly returned to the employer or deducted in subsequent taxable years.

    **(iii)** In the case of employers that are tax-exempt organizations under Section 1101.01, the nondeductible contributions shall be determined by applying the limits of this Section but assuming that the employer is not a tax-exempt organization under Section 1101.01.

**(D) Contributions that may be Returned to Employer.--**In determining the amount of nondeductible contributions for any taxable year, there shall not be taken into account any contributions that have been made under the condition that they be deductible under this Section and returned to the employer not later than the last day on which the employer must file the income tax return for the taxable year in which the contribution was made, including any extension granted by the Secretary.

## Section 1033.10.-- Charitable Gift and other Contributions by Corporations.--

**(a)** In the case of a corporation:

**(1)** Contributions or gifts shall be deducted from gross income, whose payment has been made during the taxable year to or for the use of:

**(A)** The Government of Puerto Rico, the United States, any state, territory, or any political subdivision of any of the foregoing, the District of Columbia or any possession of the United States, but exclusively for public purposes; or

**(B)** An entity described in Sections 1101.01(a)(1) and (2) created or organized in Puerto Rico, the United States, or in any possession thereof, or any state or territory organized and operated exclusively for the purposes described therein, but in the case of a contribution or gift to a trust, chest, fund, or foundation only if it is to be used within Puerto Rico or the United States or any of its possessions exclusively for such purposes, provided, that no part of the net earnings of which inures to the benefit of any private shareholder or individual. For denial of certain deductions for charitable contributions or gifts, otherwise admissible under this paragraph, see Sections 1083.02(f) and 1102.06; or

**(C)** a post or organization of war veterans, or an auxiliary unit of, or trust or foundation for, if any such post or organization unit, trust or foundation is organized in Puerto Rico, the United States, or any of its possessions, and no part of the net earnings of which inures to the benefit of any private shareholder or individual up to an amount that shall not exceed ten percent (10%) of the net income of the taxpayer computed without the benefits of this subsection.

**(2)** In the event that a corporation makes contributions or gifts in excess of the ten percent (10%) allowed under this subsection, the corporation may carry forward such excess to each of the five (5) succeeding taxable years, in order of time, but the deduction allowed as donation under this subsection for each one of the five (5) succeeding taxable years shall not exceed ten percent (10%) of the net income of the taxpayer determined without the benefits of this subsection.

**(3)** The contributions or gifts provided in this subsection shall be allowable as a deduction only if verified under the rules and regulations prescribed by the Secretary.

**(4)** In the case of a corporation or partnership reporting its taxable income on the accrual basis, at the option of the taxpayer, any payment of the contribution made after the close of the taxable year and on or before the fifteenth (15th) day of the fourth (4th) month following the close of the taxable year, shall be treated for purposes of this subsection, as paid during the taxable year if the Board of Directors or partners authorized said contribution or gift during such year. The option may be made only at the time of the filing of the return for the taxable year, and shall be signified in such manner as the Secretary shall by regulations prescribe.

**(b)** In the case of a corporation making contributions or gifts to any municipality, of historical or cultural value, as certified by the Institute of Puerto Rican Culture or the Cultural Center of each Municipality, or that

makes possible the carrying out of work with historical or cultural value, when the amount of the contribution or gift is fifty thousand dollars ($ 50,000) or more and it is done for the celebration of the centennial of the establishment of said municipalities, the contribution deduction under this subsection shall be allowed to the extent of the value of the donation, and will not be subject to the limits provided in subsection (a). The Secretary shall establish by regulations the requirements, conditions, and terms for the corporation's or partnership's claiming of this deduction.

## Section 1033.11.-- Deduction for Employers in the Private Sector who employ Severely Handicapped Persons who have Graduated from the Training Workshops of the Rehabilitation Programs of the Department of Social Services or any other Training Workshops for such Persons.--

(a) In the case of an employer in a private company, there shall be allowed a deduction of four hundred dollars ($400) for each severely handicapped person who is employed during at least twenty (20) hours a week for nine (9) months of the taxable year. The deduction may be claimed for a maximum of five (5) severely handicapped persons employed. For purposes of this subsection, the definition of the term "severely handicapped person" that is contained in the regulations in effect of the Program of Vocational Rehabilitation of the Department of Social Services shall apply.

(b) Any employer in the private sector claiming this deduction must attach to his/her income tax return the following documents:

(1) A certificate attesting to the fact that the person for whom the deduction is requested has been his/her employee for at least nine (9) months of the taxable year for which the deduction is being claimed, and

(2) a certificate issued by the Secretary of Social Services, in accordance with the norms and procedures adopted by him/her and through the administrative agency designated by him/her, in which it is stated that the person for whom the deduction is claimed is severely handicapped.

## Section 1033.12.-- Agricultural Income.--

(a) **Allowance.--** In the case of a *bona fide* farmer, duly certified as such by the Secretary of Agriculture, there shall be allowed a deduction of ninety percent (90%) of the farmer's net income from the agricultural business declared in the corresponding income tax return filed within the term prescribed by this Subtitle.

(b) **Definitions.--** For purposes of this Section:

*(1) Bona fide* Farmer.--The term "*bona fide* farmer" means any natural or juridical person that during the taxable year for which he/she claims the deduction provided in this Section, holds a certificate in effect issued by the Secretary of Agriculture certifying that during said year he/she was engaged in the conduct of an agricultural business, as defined in paragraph (2), and derives fifty percent (50%) or more of his/her gross income from an agricultural business, as an operator, owner, or lessee, as declared in his/her income tax return.

(2) **Agricultural Business.--** The term "agricultural business" means the operation of one or more of the following businesses:

(A) The tilling and/or cultivation of the land for the production of fruit, vegetables, spices for seasoning, and all kinds of food for humans or animals;

(B) the breeding of animals for the production of meat, milk, or eggs;

(C) the breeding of purebred race horses;

(D) agroindustrial or agropecuary operations; operations engaged in the packing, crating or classifying of Puerto Rican agricultural products which are part of the same agricultural business;

(E) seaculture, commercial fishing and aquaculture;

(F) the commercial production of flowers and ornamental plants for the local market and for export;

**(G)** the cultivation of vegetables by using hydroponic methods, the sheds and other equipment used for these purposes;

**(H)** the processing of grains by associations of *bona fide* farmers of grains for the consumption of the livestock industry, and

**(I)** the breeding of Puerto Rican Pure *Paso Fino* horses.

**(c) Beginning of the Partial Exemption Period.--**The partial exemption period during which the deduction provided by this Section can be used shall begin with the taxable year for which the Secretary is notified of the taxpayer's intent to avail him/herself of the benefits thereof. Said notice shall be given at the time the corresponding income tax return is filed, and it shall be a part thereof.

**(d) Expenses or Losses Deduction.--**The deduction for expenses or losses incurred in the farming business shall be subject to the provisions of Section 1033.01.


**Section 1033.13.-- Alimony or Separate Maintenance Payment.--**

**(a) General Rule.--** In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such taxable year.

**(b) Definition of Alimony or Separate Maintenance Payment.--**For purposes of this Section, the term "alimony or separate maintenance payment" means any alimony or separate maintenance payment as defined in Section 1032.02) which is includible in the gross income of the recipient under Section 1032.02.

**(c) Requirement of Account Number.--**The Secretary may prescribe regulations under which--

**(1)** any individual receiving alimony or separate maintenance payments is required to furnish the individual's taxpayer account number (social security number) to the person making the payments, and

**(2)** the individual making the payments is required to include the taxpayer account number on the individual's return for the taxable year in which the payments are made.

**(d) Coordination with Section 1083.09.--**No deduction shall be allowed under this Section with respect to any payment if, by reason of Section 1083.09 (relating to income of alimony trusts, estates in case of divorce or separation), the amount thereof is not includible in the individual's gross income.


**Section 1033.14.-- Net Operating Loss Deduction.--**

**(a) Definition of Net Operating Loss.--**As used in this Section, the term "net operating loss" means the excess of the deductions and exemptions allowed by this Subtitle over gross income, with the exemptions, additions, and limitations specified in subsection (d). In the case of taxpayer other than a corporation or partnership, the term "net operating loss" means the excess of the deductions of the taxpayer's trade or business, as such term is defined in Section 1033.01(b), allowed by this Subtitle on the gross income of such trade or business, with the exemptions, additions, and limitations specified in subsection (d).

**(c)** [sic] Amount of Carryovers.--

**(1) Net Operating Loss Carryovers.--**

**(A)** If for any taxable year the taxpayer has a net operating loss, the same shall be a net operating loss to be carried over to each of the following seven (7) taxable years.

**(B)** In the case of net operating losses incurred in taxable years beginning after December 31, 2004, and before December 31, 2012, the carryover period shall be of ten (10) years.

**(C)** The amount to be carried over to each one of said following taxable years shall be the excess, if any, of the amount of such net operating loss over the sum of the net income for each one of the taxable years involved, computed:

**(i)** with the exemptions, additions, and limitations specified in subsection (d) (1), (3), and (5); and

**(ii)** by determining the net operating loss deduction for each one of the taxable years involved, without regard to said net operating loss or the net operating loss for any taxable year thereafter, and without regard to any reduction specified in subsection (c).

**(2)** Subject to the provisions of paragraph (3),

**(A)** A transferee that acquires all or substantially all the property of a transferor on an exchange described in Section 1034.04(b)(4), (6), or (8) of this Subtitle, may claim the deduction provided in paragraph (1) for the taxable years of the transferee ending after said exchange with respect to:

**(i)** Net operating losses incurred by the transferor during taxable years ending not later than such exchange and otherwise available under paragraph (1). Provided, however, that the amount of the net operating loss of the transferor that qualifies under paragraph (1) as a net operating loss carryover to a taxable year of the transferee shall be an amount equal to the net income for such year derived from the same commercial activity or trade or business that generated the losses;

**(ii)** Net operating losses of the transferee for taxable years ending not later than such exchange.

**(B)** The amount of said losses may be claimed as a deduction only against net income derived from any commercial activity or trade or business of the transferee, other than the commercial activity or trade or business acquired from the transferor in the exchange.

**(C)** The provisions of this paragraph that limit the amount of the net operating losses of a transferor or transferee that may be carried over by the transferee shall not apply to net operating losses of a transferor or transferee when the transferee acquires the transferor in an exchange described in Section 1034.04(b)(4) of this Subtitle in connection with a reorganization described in Section 1034.04(g)(1)(F).

**(3)**

**(A)** If--

**(i)** fifty percent (50%) or more of the value of the stock of a corporation or interest in a partnership capital as of the close of the taxable year in which the net operating loss is incurred has been sold, exchanged, or otherwise transferred after such taxable year, or

**(ii)** one or more persons acquire fifty percent (50%) or more of the value of the stock or capital interest in a corporation or partnership, or of a corporation or partnership that is a party to a reorganization, after a taxable year in which a net operating loss is incurred, then the amount of said net operating loss that shall qualify as a net operating loss to be carried over to any taxable year of such corporation or partnership under paragraph (1) shall be an amount equal to the net income in the carryover year derived from the same commercial activity or trade or business that generated the net operating loss.

**(B)** The provisions of this paragraph shall not apply to those sales, exchanges, transfers, or acquisitions of stock or shares of a corporation or partnership if immediately after such transactions the transferor or transferors who owned fifty percent (50%) or more of the value of the stock or shares of such corporation or partnership on the date of such sales, exchanges, transfers, or acquisition also own fifty percent (50%) or more of the value of the acquirer of such stock or shares.

**(4)** For rules related to net operating losses carryovers after certain transactions described in Section 1034.04(b)(5) and (g), see Section 1034.04(t)(3)(A).

**(5)** For rules related to net operating losses carryovers after certain changes of control, see Section 1034.04(u).

**(c)** **Amount of Net Operating Loss Deduction.--**The amount of the net operating loss deduction shall be the sum of the net operating loss carryovers to the taxable year reduced by the amount, if any, by which the net income computed with the exceptions and limitations provided in subsection (d)(1)(2)(3), and (5)

exceeds, in the case of a taxpayer other than a corporation, the net income computed without such deduction or, in the case of a corporation, the normal-tax net income computed without said deduction.

**(d) Exceptions, Additions, and Limitations.--**The exceptions, additions, and limitations referred to in subsections (a), (b) and (c) shall be as follows:

**(1)** In computing gross income, there shall be included the amount of interest received that would be fully exempt from the taxes imposed by this Subtitle, decreased by the amount of interest paid or accrued which is not allowed as a deduction by Sections 1033.03, 1033.17(a)(10), or 1033.17(f), related to interest on debt incurred or continued to purchase or carry certain tax-exempt obligations, and decreased by the items described in Section 1033.03(a)(5), related to expenses attributable to tax-exempt interest;

**(2)** No net operating loss deduction shall be allowed;

**(3)** The amount deductible on account of losses from sales or exchanges of capital assets shall not exceed the amount includible on account of gains from said sales or exchanges;

**(4)** Deductions otherwise allowed by this Subtitle not attributable to the operation of a principal trade or business of the taxpayer, other than a corporation, shall be allowed only to the extent of the amount of the gross income not derived from such principal trade or business. For purposes of this paragraph, deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1), (2), (3), and (5) of this subsection;

**(5)** The compensation received or accrued by reason of the rendering of personal services as an employee, or pension for services rendered, shall be excluded from the computation of gross income and net income for purposes of this section and shall not reduce the amount of the net operating loss for the year, nor the amount of the net operating loss to be carried over.

**(e)** The Secretary shall prescribe regulations for the implementation of this section. The regulations shall include a definition of the term "commercial activity or trade or business" for purposes of paragraphs (2) and (3) of subsection (b).


**Section 1033.15.-- Deductions Applicable to Taxpayers who are Individuals.--**

**(a)** For purposes of this Section, the taxpayer may claim the following items as deduction:

**(1) Deduction for Interest Paid or Accrued on Residential Property.--**

**(A) In General.--** In the case of individuals, interest paid shall be allowed as a deduction, including interest paid by a tenant-stockholder of a cooperative housing association allowable as a deduction under paragraph (2), paid or accrued during the taxable year on debts incurred on account of secured loans for the acquisition, construction or improvements, or refinancing of a property when said loans are totally secured with a mortgage on a property, which at the time such interest is paid or accrued, is a qualified residence of the taxpayer.

**(B) Special Rule.--** There shall be allowed as a deduction under this subsection the interest paid or accrued during a taxable year on debts on account of personal loans made for the acquisition, construction, or improvement of a housing unit that is a qualified residence, when such property is not admitted by a financial institution to secure the loan.

**(C)** Limitation:

**(i)** There shall be allowed as a deduction under subparagraphs (A) and (B) the total amount of the interest paid; provided, that said amount does not exceed the greater of:

**(I)** Thirty percent (30%) of the adjusted gross income of the taxpayer, as modified pursuant to clause (ii) of the taxable year for which the deduction is claimed; or

**(II)** Thirty percent (30%) of the adjusted gross income of the taxpayer, as modified pursuant to clause (ii) for any of the three (3) taxable years preceding the year for which the deduction is claimed.

**(ii)** For purposes of this clause, "adjusted gross income" of the taxpayer, as defined in Section 1031.03, shall be increased by the gross income exclusions described in Section 1031.01(b), payment to support children described in Section 1032.02(a)(3), and exempt income items described in Section 1031.02.

**(iii)** The limitation in this subparagraph (C) shall not apply when the taxpayer (or, in the case of a married individual filing a joint return, the taxpayer or his/her spouse) has reached the age of sixty-five (65) at the close of the taxable year.

**(D) Definition of Qualified Residence.--**For purposes of this subparagraph, the term "qualified residence" means:

**(i)** the principal residence of the taxpayer, within the meaning of Section 1034.04(m), except that, for purposes of this subsection, said residence may be located within or outside of Puerto Rico, and

**(ii)** other residence of the taxpayer which is selected by the taxpayer, for purposes of this subsection for the taxable year, which is located in Puerto Rico and is used by the taxpayer, any member of his/her family or any other person having any interest in said property, as a residence during the taxable year for a number of days which exceeds the greater of:

**(I)** fourteen (14) days, or

**(II)** ten percent (10%) of the number of days during such taxable year for which such unit had been rented at the fair market rental value of the property. If during the rental period the property is used by the lessor as his/her principal residence, it shall not be considered that the taxpayer has used it as other residence.

**(E) Married Individuals Filing Separate Returns.--**In the case of a married individuals living together at the end of their taxable year and filing separate returns for the taxable year--

**(i)** Shall be treated as one taxpayer for purposes of subparagraph (D), and

**(ii)** Each individual shall be entitled to take into account one residence unless both individuals consent in writing to one individual taking into account the principal residence and the other residence.

**(2) Amounts Representing Interest Paid to Cooperative Housing Association.--**

**(A) Allowance of Deduction.--** In the case of a tenant-stockholder (as defined in subparagraph (B)(ii)), there shall be allowed as a deduction amounts (not otherwise deductible) paid or accrued to a cooperative housing association within the taxable year, but only to the extent that such amounts represent the tenant-stockholder's proportionate share of:

**(i)** the interest allowable as a deduction to the association under Section 1033.03, which is paid or incurred by the association on its indebtedness incurred in the acquisition, construction, alteration, rehabilitation, or maintenance of housing or apartment building, or in the acquisition of the land on which the housing or apartment building are situated.

**(ii) Limitation.--** There shall be allowed as a deduction under clause (i) the total amount of the interest attributable to the tenant-stockholder; provided, that said amount does not exceed the greater of:

**(I)** Thirty percent (30%) of the adjusted gross income of the taxpayer, as modified pursuant to clause (ii), of the taxable year for which the deduction is claimed; or

**(II)** Thirty percent (30%) of the adjusted gross income of the taxpayer, as modified pursuant to clause (ii), for any of the three (3) preceding taxable years for which the deduction is claimed.

**(iii)** For purposes of clause (ii), adjusted gross income of the taxpayer, as defined in Section 1031.03, shall increase by the gross income exclusions described in Section 1031.01(b), payment to support children described in Section 1032.02(a)(3) and exempt income items described in Section 1031.02,

**(iv)** The limitation in clause (ii) shall not apply when the taxpayer (or, in the case of a married individual who is not filing a separatate [sic] return, the taxpayer or his/her spouse) has reached the age of sixty-five (65) at the close of the taxable year.

**(B) Definitions.--For purposes of this paragraph.--**

**(i)** The term "cooperative housing association" means a corporation--

**(I)** Having one class of outstanding stock,

**(II)** each of the stockholders of which is entitled, solely by reason of his/her ownership of stock in the corporation, to occupy for dwelling purposes a house, or an apartment in a building, owned or leased by such corporation,

**(III)** no stockholder of which is entitled, either conditionally or unconditionally, to receive any distribution not out of earnings and profits of the corporation except on a complete or partial liquidation of the corporation, and

**(IV)** eighty percent (80%) or more of the corporation's gross income for such taxable year in which the interest described in subparagraph (A) are paid or incurred is derived from tenant-stockholders.

**(ii) Tenant-stockholder.--** The term "tenant-stockholder" means an individual who is a stockholder in a cooperative housing association, and whose stock is fully paid-up in an amount not less than an amount shown to the satisfaction of the Secretary or his/her delegate as bearing a reasonable relationship to the portion of the value of the association's equity in the housing or apartment building and the land on which situated is attributable to the housing or apartment which such person is entitled to occupy.

**(iii)** The term "tenant-stockholder's proportionate share" means that proportion which the stock of the cooperative housing association owned by the tenant-stockholder is of the total outstanding stock of the corporation, including any stock held by the corporation.

**(3) Charitable Contributions and Other Gifts.--**

**(A) General Rule.--** In the case of an individual, there shall be allowed as a deduction, the amount of charitable contributions or gifts made during the taxable year to, or for use by, nonprofit organizations or entities described in this paragraph, subject to the limitations established in subparagraph (B).

**(B) Limitation.--** The deduction allowed under this paragraph shall be subject to the following limitations:

**(i)** In the case of contributions or gifts to:

**(I)** The Government of Puerto Rico, the United States, any state, territory, or political subdivision thereof or the District of Columbia, or any possession of the United States, for exclusively public purposes;

**(II)** Entities described in Section 1101.01(a)(1):

**(III)** Nonprofit entities described in Section 1101.01(a)(2) duly qualified by the Secretary or the United States Internal Revenue Service (other than those described in clause (ii));

**(IV)** Entities described in subparagraph (C), there shall be allowed as a deduction equal to the amount contributed, the deduction of which shall not exceed fifty percent (50%) of the adjusted gross income of the taxpayer for the taxable year. The Secretary shall promulgate through regulations, administrative order, circular letter or any other information bulletin a list of nonprofit entities qualified to receive such contributions.

**(ii)** In the case of:

**(I)** donations of conservation easements to agencies of the Government of Puerto Rico or nonprofit organizations, subject to the requirements established in the Conservation Easement Act, or

**(II)** donations to private or public museological institutions consisting of works of art duly appraised or any other objects of acknowledged museological value, if the fair market value of the donated property exceeds its adjusted basis of the donor (as determined in Section 1034.02) for over twenty-five percent (25%), the fair market value of the contributed property up to thirty percent (30%) of the adjusted gross income of the taxpayer for the taxable year shall be allowed as deduction.

**(iii)** In the case of donations made to private museological institutions, described in clause (ii)

**(I)** they have to be conditioned so as to prohibit any type of future negotiation with the donated work or object and that in the case of the dissolution of the private museological institution in question, ownership of the donated work of art or object of museological value shall pass to the Government of Puerto Rico and become part of the National Collection of the Institute of Puerto Rican Culture.

**(II)** To those ends, the Institute of Puerto Rican Culture shall adopt the necessary regulations to identify the work in question in an official registry and guarantee the future transfer of ownership if necessary.

**(III)** The Secretary of the Treasury shall establish, in coordination with the Institute of Puerto Rican Culture, the regulations necessary for, among other things, guarantee the museological nature and the proper monetary appraisal of the donated works of art and other objects, as well as to determine any other conditions deemed pertinent.

**(iv) Unlimited Deduction for Charitable Contributions and Other Gifts.--**If in the taxable year and in each one of the ten (10) preceding taxable years, the amount of contributions or gifts made to those donees described in clause (i), or in corresponding provisions of prior income tax laws, plus the amount of income taxes paid during such year with respect to said taxable year or preceding taxable years, exceeded ninety percent (90%) of the taxpayer's net income for each of such years, as computed without the benefit of the applicable deduction for contributions, then the deduction for contributions or gifts made to donees described in clause (i) shall not be subject to any limitation whatsoever.

**(C)** Are described in this subparagraph (C):

**(i)** Accredited educational institutions at university level established in Puerto Rico,

**(ii)** the Jose Jaime Pierluisi Foundation,

**(iii)** the National Fund for Financing Cultural Endeavors,

**(iv)** the Puerto Rico Community Foundation,

**(v)** a post or organization of war veterans, or an auxiliary unit of, or trust or foundation for, any such post or organization, if such post, organization, unit, trust or foundation have been organized in Puerto Rico, the United States or any of its States or possessions; provided, that no part of the net earnings of which inures to the benefit of any private shareholder or individual, and

**(vi)** The Puerto Rico Symphony Orchestra Corporation.

**(D) Contributions for the Celebration of the Centennial Anniversary of the Establishment of Municipalities.--**There shall be allowed as a deduction, without being subject to the limitations provided in subparagraph (B), the payments or contributions made to any municipality of a historic or cultural value, as certified by the Institute of Puerto Rican Culture or the cultural center of each municipality, or that make possible the carrying out of work of historic or cultural value, when the amount of the contribution or donation is fifty thousand dollars ($ 50,000) or more and it is made for the celebration of the centennial anniversary of the establishment of said municipalities. The Secretary shall establish by regulations the requirements, conditions, and terms for taxpayers to claim this deduction.

**(E)** Contributions to the Curable Catastrophic Ilnesses [sic] Services Fund.--A maximum deduction of one hundred dollars ($ 100) shall be allowed for contributions made to the Curable Catastrophic Ilnesses [sic] Services Fund created by Act No. 150 of August 19, 1996.

**(F)** The Secretary may, when he/she deems pertinent, require the organization receiving any donation described in this paragraph (3), a verification of the amount donated by the taxpayer during a particular taxable year. In addition, the Secretary shall be empowered to prescribe through regulations those reports and statements to be filed by the entities receiving the donations allowed as deductions in this paragraph so that taxpayers may claim such deduction.

**(4) Deductions for Medical Expenses.--**In the case an individual, the amount by which the total amount of medical expenses not compensated by insurance or otherwise, paid during the taxable year exceeds six (6%) percent of his/her adjusted gross income. For purposes of this paragraph, the term "medical expenses" includes the following:

**(A)** Professional services rendered by physicians, dentists, radiologists, clinical pathologists, minor surgeons or nurses, or hospitals within or outside of Puerto Rico;

**(B)** Accident or health insurance premiums;

**(C)** Medications for human consumption, to be used in the diagnosis, cure, mitigation, treatment or prevention of diseases, that have been acquired solely and exclusively through medical prescription, if the same are prescribed by a physician authorized to practice medicine in Puerto Rico, and dispensed by a pharmacist licensed in Puerto Rico; and

**(D)** expenses incurred in the purchase of any assistive technology equipment for persons with disabilities, specialized treatment or chronic illness.

**(i) Definitions.--** For purposes of this subparagraph (D) the terms "person with disabilities," "assistive technology equipment," and "chronic illness or conditions", and "treatment" shall have the following meanings:

**(I)** The term "person with disabilities" includes any person who, as a consequence or as a result of a congenital defect, a disease or a deficiency in his/her development, an accident or for any other reason suffers a condition that affects one or more of his/her main functions, such as: mobility, communication, self-care, self-direction, tolerance for work in terms of his/her own life or employability, or whose functions have been seriously affected, thus limiting his/her functions significantly.

**(II) Assistive Technology Equipment.--**Any object, equipment or system part purchased by the consumer or provided by any government agency or instrumentaliy [sic], whether original, modified or adapted, that is used to maintain, increase or improve the capabilities of persons with disabilities. Including, but not limited to: wheelchairs, motorized wheelchairs, motorized equipment used for mobility, adapted computers, electronic communication equipment, adapted computer software, mechanical equipment for reading, headphones, among others.

**(III) Chronic Conditions or illnesses.--**Included, but not limited to, are:

> **a.** Anatomical loss or disorder that affects one or more of the following body systems: neurological, muscular-skeletal, respiratory, epidermal, gastric, auditory, visual, cardiovascular, reproductive, genital-urinary, hematological, lymphatic, and endocrine;
>
> **b.** Chronic illnesses that require regular intensive care or cardiovascular services;
>
> **c.** Cancer.
>
> **d.** Hemophilia.
>
> **e.** HIV positive factor or Acquired Immunodeficiency Syndrome (AIDS);
>
> **f.** Mental and psychological disorders, such as: mental or emotional disorders and mental retardation.
>
> **g.** other permanent or chronic conditions that require equipment or treatment which exceeds medical plan coverage.
>
> **(IV) Treatment.--** Includes, but it is not limited to:
>
> > **a.** Cardiovascular or neurosurgical procedures.
> >
> > **b.** Dialysis, hemodialysis, and related services including maintenance treatments for transplant patients.
> >
> > **c.** Neonatal, regular or cardiovascular intensive care unit services.
> >
> > **d.** Radiotherapy, cobalt, chemotherapy, and radio isotopes.
> >
> > **e.** Hyperbaric chamber.
>
> **(ii) Verification.--** The parent, guardian, custodian of or person with disabilities who claims the deduction provided in this subparagraph shall attach to his/her tax return the invoice and receipt containing the information related to the cost of the assistive technology equipment, special treatment or chronic illness, and a medical certificate stating that such assistive technology equipment, special treatment or chronic illness is adequate and necessary for his/her condition or illness. In the case of returns filed electronically, the taxpayer must keep for his/her records the evidence of the deduction claimed under this paragraph, for a term of six (6) years.

**(5) Interest Paid on Student Loans at University Level.--**In the case of an individual, there shall be allowed as a deduction, the interest paid or accrued during the taxable year on indebtedness incurred for student loans to cover expenses of such individual, his/her spouse or dependent for registration and tuition fees and textbooks at university level, as well as expenses for transportation, meals, and room and board in those cases in which the student must live away from home in order to pursue such studies.

**(6) Contributions to Certain Pensions or Retirement Systems.--**Any contribution of money made by an individual to a pension or retirement system of a general character established by the Congress of the United States, the Legislative Assembly of Puerto Rico, the Government of the Capital, the municipalities and the agencies, instrumentalities and public corporations of the Government of Puerto Rico to the extent such contribution is included in the taxpayer's gross income for the taxable year.

**(7) Retirement Savings.--**

> **(A) Deductions Allowed.--** In the case of an individual, the contribution in cash of said individual to an individual retirement account, in accordance with Section 1081.02, shall be allowed as a deduction.
>
> **(B) Maximum Amount Allowed as a Deduction.--**Except as provided in subparagraph (C), the maximum amount allowed as deduction under subparagraph (A) for the taxable year shall not exceed five thousand dollars ($ 5,000) or the adjusted gross income for wages or earnings attributable to professions or occupations, whichever is less.

**(C) Maximum Amount Allowed as a Deduction in the Case of Married Individuals.--**In the case of married individuals filing a joint tax return under Section 1061.01(b)(1), the maximum amount allowed as a deduction under subparagraph (A) for any taxable year shall not exceed ten thousand dollars ($ 10,000), or the aggregate adjusted gross income received for wages or earnings attributed to professions or occupations, whichever is less. The deduction for any taxable year for contributions to any individual retirement account established in the name and for the benefit of each spouse shall not exceed the amounts provided in subparagraph (B).

**(D)** No deductions shall be allowed under this paragraph for one (1) taxable year in which the individual has attained the age of seventy-five (75).

**(E)** In the case of an employer, his/her contributions to a trust that complies with the provisions of Section 1081.02(c), shall be allowed as a deduction on the tax return corresponding to the taxable year in which such contributions are made. The maximum amount allowed as a deduction for any taxable year shall not exceed the amounts provided in subparagraph (B) for each participant or the adjusted gross income of each participant on account of wages and of the earnings attributable to professions or occupations, whichever is less. This deduction shall be in lieu of the deduction allowed under Section 1033.01, but shall be subject in all other respects to the requirements of said Section.

**(F)** In the case of an annuity or endowment contract described in Section 1081.02(b), that part of the contribution paid under the contract applicable to the cost of life insurance shall not be allowed as a deduction under this paragraph.

**(G)** For purposes of this paragraph, it shall be considered that a taxpayer has made contributions to an individual retirement account on the last day of the taxable year, if the contributions are attributable to said taxable year and are made on or before the last day established in this Subtitle for filing the income tax return for said year, including any extension granted by the Secretary for the filing thereof.

**(8) Savings for Education.--**

**(A) Deductions Allowed.--** In the case of an individual, the cash contribution by said individual to an education savings account for the exclusive benefit of his/her children or relatives up to the third degree of consanguinity or second degree of affinity, as provided in Section 1081.05 of this Subtitle, shall be allowed.

**(B) Maximum Amount Allowed as a  Deduction.--**The maximum amount allowed as a deduction under subparagraph (A) for any taxable year shall not exceed five hundred dollars ($ 500) for each beneficiary. In those cases that more than one parent contributes to the account created for a beneficiary, the amount of the deduction shall be in accordance with the amount contributed by the parent who makes the deposit. The institution that receives the contributions shall issue the certifications corresponding to the contributions made in the order that such contributions are registered in the account, until said account receives the maximum amount allowed of five hundred dollars ($ 500) for said taxable year. There is no limit with regard to the number of educational savings accounts to which each individual may contribute, provided that each beneficiary of said accounts is described in subparagraph (A) of this paragraph.

**(C)** No deduction shall be allowed, according to this paragraph, for the taxable year in which the beneficiary has attained the age of twenty-six (26).

**(D)** In the case of an annuity or endowment contract described in Section 1081.05(b) of this Subtitle, that portion of the contribution paid under the contract applicable to the cost of life insurance shall not be allowed as a deduction under this Section.

**(E)** For purposes of this paragraph, an individual shall be deemed to have made contributions to an education savings account the last day of the taxable year, if the contributions are attributable to said taxable year and are made on or before the last day established in this Subtitle for filing the

income tax return for said year, including any extension granted by the Secretary for the filing thereof.

**(9) Contributions to Health Savings Accounts with a High Annual Deductible Health Plans.--** Contributions to Health Savings Accounts during the taxable year shall be subject to the provisions of Section 1081.04.

**(10) Loss of Property as a Result of Certain Acts of God.--**

**(A) Loss of Property by Fire, Hurricane and Other Acts of God.--**

**(i)** In the case of an individual, there shall be allowed as a deduction losses not compensated by insurance or otherwise, sustained during the taxable year from fire, hurricane or other acts of God, to the real property that, at the time of the event constitutes the principal residence of the taxpayer.

**(ii)** In the case of spouses who lived together at the close of their taxable year and choose the optional tax computation in Section 1021.03 or file separate returns, each one shall have the right to claim only fifty percent (50%) of this deduction.

**(B) Loss of Personal Property as a Result of Certain Acts of God.--**

**(i) Allowance.--** In the case of an individual, there shall be allowed as a deduction the losses with regard to automobiles, furniture, household goods and other chattels, excluding the value of jewelry or cash, not compensated by insurance or otherwise sustained during the taxable year due to earthquakes, hurricanes, storms, tropical depressions, and floods occurring as a result of such unexpected events in an area subsequently designated by the Governor of Puerto Rico, as areas whose residents are eligible for assistance under the disaster assistance programs of the Government of Puerto Rico. This deduction shall be limited to five thousand dollars ($ 5,000); except that in the case of married individuals living together at the close of the taxable year and who chooses the optional tax computation in Section 1021.03 or file separate returns, the amount of the deduction shall not exceed two thousand five hundred dollars ($ 2,500). The amount of said loss not used in the year it is sustained, shall be an unexpected loss to be carried over to any of the two (2) subsequent taxable years, subject to the annual limits provided herein.

**(ii) Requirements and Verification.--**In order to be entitled to the deduction provided in clause (i), there shall be necessary that the affected area be designated a disaster area by the Governor of Puerto Rico and that the aggrieved taxpayer claim, within the term and place provided therefor, the assistance program benefits approved for disaster cases. A copy of the claim filed and approved to that effect, stating the losses sustained, must be submitted together with the income tax return. The method of appraising the loss and the amount to be deducted shall be determined by regulation.

**(b)** An individual who claims one or more deductions allowable under this Section shall attach to his/her income tax return any cancelled checks, receipts, or certifications as proof for the deductions claimed. The preceding notwithstanding, the Secretary may, when he/she deems pertinent, exempt the taxpayer from this requirement for any particular taxable year. The taxpayer shall keep the evidence in connection with the deduction claimed under this paragraph for a period of six (6) years.

**Section 1033.16.-- Special Deduction for Certain Individuals.--**

**(a)** In the case of an individual whose only source of income consists of the incomes described in paragraphs (1) and (5) of Section 1031.01(a), or that part of paragraph (4) of said section related to pensions granted or to be granted by the retirement systems or funds subsidized by the Government of Puerto Rico, of annuities or pensions granted by the Government of the United States of America, and by the instrumentalities or political subdivisions of both governments, and pension, retirement or annuity plans

provided by private employers, there shall be allowed as deduction, in addition to any other deduction provided by this Subtitle, a deduction determined as follows:

| Taxable Year | The deduction shall be: |
|---|---|
| For taxable years beginning after December 31, 2010, but before January 1, 2012: | $ 9,350 |
| For taxable years beginning after December 31, 2011, but before January 1, 2013 | $ 7,850 |
| For taxable years beginning after December 31, 2012, but before January 1, 2014 | $ 5,350 |
| For taxable years beginning after December 31, 2013, but before January 1, 2015 | $ 2,350 |

**(b)** In the case of married individuals, both whom work, file a joint return, and choose the optional tax computation provided in Section 1021.03, the deduction established in subsection (a) shall be available for each one of the spouses individually; provided, that they comply with the requirements of such subsection.

**(c) Limitation.--** The total amount of the deduction provided in subsection (a) of this Section shall be available for those individuals whose gross income does not exceed twenty [sic] dollars ($ 20,000), provided that for each dollar of gross income in excess of twenty thousand dollars ($ 20,000), the deduction allowable in subsection (a) shall be reduced by fifty cents ($ 0.50) until it is reduced to zero.

**(d)** This deduction shall not reduce the net income to less than zero.


**Section 1033.17.-- Non-deductible Items.--**

**(a) General Rule.--** In computing the net income in no case shall deductions be allowed with respect to:

**(1)** Personal expenses, of subsistence, of family or those related to the exercise of a profession or occupation as an employee, except those expenses deductible according to the provisions of Sections 1033.15;

**(2)** Any amount paid out for new buildings or for capital improvements made to increase the value of any property or estate.

**(3)** Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made.

**(4)** Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy.

**(5)** Any amount otherwise allowable as a deduction (except interest expenses of financial institutions subject to the proportional allocation of subsection (f)) that is attributable to one or more types of

income wholly exempt from the taxes imposed by this Subtitle, whether or not any income of that class or classes is received or accrued;

**(6)** Any amount paid or accrued on indebtedness incurred or continued to purchase a single premium life insurance or endowment contract. For purposes of this paragraph, if substantially all the premiums on a life insurance or endowment contract are paid within a period of four (4) years from the date on which such contract is purchased, such contract shall be considered a single premium life insurance or endowment contract.

**(7)** Amounts paid or accrued for such taxes and carrying charges as, under regulations prescribed by the Secretary, are chargeable to capital account with respect to a property, if the taxpayer elects, in accordance with such regulations, to treat such taxes or charges as so chargeable.

**(8)** Premiums on insurance policies against any risk, paid to any insurer not authorized to contract insurance in Puerto Rico and/or through an agent or broker not authorized to transact insurance in Puerto Rico according to the provisions of the Insurance Code of Puerto Rico.

**(9)** Any amount paid as interest on which no information return has been filed under Sections 1063.02 and 1063.06, pursuant to the requirements provided in said sections, or that having been filed, the Secretary should determine that the financial business failed to comply with the provisions of said sections and the regulations implementing them;

**(10)** Interest paid or accrued on indebtedness incurred or continued to purchase or carry obligations the interest upon which is wholly exempt from the taxes imposed by this Subtitle.

**(11)** Expenses related to the ownership, use and maintenance, and depreciation of boats, except:

    **(A)** Boats of all kinds which constitute fishermen's working instruments and fishing boats used exclusively for fishing as part of an industrial unit or tourist attraction, or of any entity engaged in fishing and to the exclusive transportation of fish for purposes of industrial elaboration in Puerto Rico; or

    **(B)** boats used exclusively in the transportation of passengers or freight, and tugboats and ships used for bunkering, which have been duly authorized to carry out this type of business in Puerto Rico.

    **(C)** Expenses incurred by entities engaged in leasing boats.

    **(D)** To be entitled to this deduction for the use of boats, the businesses described in subparagraphs (A) and (B) of this paragraph shall derive more than eighty percent (80%) of their total income from fishing or passenger or freight transportation, respectively.

**(12)** Amounts, other than interest, paid or accrued by a corporation that are directly or indirectly related with the redemption of its stock.

**(13)** Expenses related to the ownership, use, maintenance, and depreciation of airplanes, helicopters or other kind of aircraft, except for airplanes, helicopters or aircraft of all kind which constitute working instruments of business exclusively engaged in the transportation passengers or freight, duly authorize to carry out this kind of business in Puerto Rico or expenses incurred by entities engaged in leasing aircraft. To be entitled to this deduction for the use of airplanes, helicopters or other aircraft, said businesses shall derive more than eighty percent (80%) of their total income from the transportation of passenger or freight.

**(14)** Expenses related to the use, maintenance, and depreciation of residential property located outside of Puerto Rico, except in the case of business exclusively engaged in leasing properties to nonrelated parties. To be entitled to this deduction for the use of residential property located outside of Puerto Rico, said businesses shall derive more than eighty percent (80%) of their total income from the leasing activity, except for income derived from leasing property to related parties. For purposes of this paragraph, the term "related party" shall have the meaning provided in Section 1010.05.

2011 PR H.B. 3070

**(15)** Except as provided in subparagraph (A) of paragraph (3) of subsection (a) of Section 1033.07, expenses related to the ownership, use, maintenance, and depreciation of automobiles.

**(b) Losses from the Sale or Exchange of Property.--**

**(1) Losses Disallowed.--** In computing net income no deduction shall be allowed in any case with respect to losses from sales or exchanges of property, directly or indirectly--

**(A)** Between family members, as defined in paragraph (2)(C);

**(B)** Except in the case of distributions in liquidation, between an individual and a corporation or partnership, more than fifty percent (50%) in value of the issued stock or capital of which is owned, directly or indirectly, by or for such individual;

**(C)** Except in the case of distribution in liquidation, between two (2) corporations, or between two (2) partnerships, or between a corporation and a partnership, more than fifty percent (50%) in value of the issued stock or capital of which is owned, directly or indirectly, by or for the same individual;

**(D)** Between a grantor and a fiduciary of any trust;

**(E)** Between the fiduciary of a trust and the fiduciary of another trust, if the same person is a grantor with respect to each trust; or

**(F)** Between a fiduciary of a trust and a beneficiary of such trust.

**(2) Stock Ownership, Family and Partnership Rule.--**For purposes of determining, in applying paragraph (1), the ownership of stock or the interest in partnership capital--

**(A)** Stock or interest in partnership capital owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries;

**(B)** An individual shall be considered as owning the stock or interest in partnership capital owned, directly or indirectly, by or for his/her family;

**(C)** The family of an individual shall include only his/her brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and

**(D) Constructive Ownership as Actually Owned.--**The stocks, or the interest in partnership capital, constructively owned by a person by reason of the application of subparagraph (A) shall, for the purpose of applying subparagraphs (A) or (B), be treated as actually owned by such person; but stock or interest in partnership capital constructively owned by a person by reason of the application of subparagraph (B) shall not be treated as owned by him/her, for the purpose of again applying either of such paragraphs in order to make another the constructive owner of such stock or interest in partnership capital.

**(3) Losses Disallowed from the Sale or other Disposition of Certain Automobiles.--**Notwithstanding the provisions in Section 1033.05(a) and (b), in the case of any automobile, as defined in Section 1033.07(a)(3)(B), no deduction whatsoever shall be allowed with respect to losses from the sale or other disposition thereof.

**(c) Unpaid Expenses and Interest.--**In computing net income, no deduction shall be allowed under Section 1033.01, relating to expenses incurred, or under Sections 1033.03 and 1033.15(a)(2)(A) and (B), relating to interest accrued--

**(1)** If such expenses or interest are not paid within the taxable year or within two and one-half (2 1/2) months after the close thereof; and

**(2)** If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, allowed in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months (2 1/2) thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom the losses would be disallowed under subsection (b).

**(d) Holders of Life or Terminable Interest.--**Amounts paid under the laws of the Government of Puerto Rico, any state, territory, the District of Columbia, or a possession of the United States, or a foreign country as income to the holder of a life or terminable interest acquired by gift, bequest, or inheritance shall not be reduced or diminished by any deduction for shrinkage (by whatever name called) in the value of such interest due to the lapse of time, nor by any deduction allowed by this Subtitle, except for deductions provided in Section 1033.07, for the purpose of computing the net income of an estate or trust, but not allowed under the laws of the Government of Puerto Rico, or of such state, territory, the District of Columbia, possession of the United States, or foreign country for the purpose of computing the amount to which such holder is entitled.

**(e)** Food and Entertainment Expenses and Expenses for Conventions Held Outside of Puerto Rico and the United States.

**(1) Food and Entertainment Expenses.--**

**(A) General Rule.--** There shall be no deduction for food and entertainment expenses in excess of fifty percent (50%) of the amount actually paid or incurred up to the limit of twenty-five percent (25%) of the gross income for the taxable year, without considering as part of said expenses the items that otherwise would not constitute ordinary and necessary expenses of a trade or business or of an activity for the production or collection of income, or for the administration, conservation or maintenance of property held for the production of income.

**(B)** For purposes of this paragraph, personal expenses for "entertainment, amusement or recreation" shall be considered as all those expenses related to an activity which is generally considered entertainment, amusement or recreation, unless the taxpayer establishes that the activity was directly related to, or, in the case of an activity preceding or following a substantial and *bona fide* business meeting, that such activity was associated with the active conduct of the taxpayer's trade or business.

**(C)** "Food expenses" under this paragraph shall refer to those expenses incurred in food and beverages provided to any person under circumstances which, taking into account the surroundings in which provided; the taxpayer's trade or business, or income-producing activity; and the relationship to such trade, business or activity of the persons to whom the food and beverages were provided, would be of a type generally considered to be of such a nature or leading to an active discussion of business.

**(2) Expenses for Conventions Held Outside of Puerto Rico and the United States.--**

**(A) General Rule.--** Except as provided further and the provisions of Section 1033.02(c)(1), transportation, food, lodging, and registration expenses and any other expense attributable to the attendance of an individual to a convention or similar meeting to be held outside of Puerto Rico and the United States shall not be allowed as a deduction when computing the net income for such individual.

**(B) Definitions.--**

**(i) Outside of Puerto Rico and the United States.--**For purposes of this paragraph, the term "outside of Puerto Rico and the United States" means any convention or similar meeting held outside of the territorial limits of the Government of Puerto Rico, the United States of America, including its territories and possessions, or on a vessel which at any time during the length of the convention or similar meeting docks outside the territorial waters of the United States of America.

**(ii) Convention or Similar Meeting.--**For purposes of this paragraph, the term "convention" or "similar meeting" means any meeting of a large number of persons organized and called for any purpose, except:

**(I)** A seminar programmed officially for the discussion of a topic directly related to the trade or business of a taxpayer, sponsored by a professional or business organization and which includes work activities scheduled to be shared by teachers and pupils with the purpose of training the latter in the research of a specific discipline; or

**(II)** Expenses incurred by a teacher to pursue higher or additional studies, when such studies are of beneficial to the institution where the teacher works because of the improvement of his/her better academic education, when the teacher has been authorized to pursue his/her studies and when the studies have been pursued, not with the purpose of obtaining a pay raise, but to maintain his/her professional skill and improve his/her capacity to teach the subject matter assigned to him/her.

**(C)** This subparagraph shall not apply in the case of an employer or other person who pays the expenses incurred by an individual for his/her attendance to a seminar described in subclause (II) of clause (ii) of subparagraph (B), provided that such expenses are ordinary and necessary and such individual may be required to include the amount of these expenses as part of his/her gross income or such employer or person may be required to report, on an information return or on the individual's withholding statement, the amount of the expenses paid on this account.

**(D)** In the case of a self-employed individual, the amounts actually paid for food and entertainment incurred because of his/her attendance to a seminar, otherwise deductible under Section 1033.01, shall be deductible for the individual subject to the provisions of paragraph (1).

**(E)** In those cases where, in the activity to be held outside of Puerto Rico or the United States, activities which are properly attributed to a convention or similar meeting are combined with educational activities, to which the attendance of the taxpayer is indispensable and, if it were not for this provision, the expenses would be deductible as trade or business expenses or income production expenses, a deduction shall be allowed for that portion of the expenses which represent the cost of such seminar.

**(f) Pro Rata Allocation of Interest Expense of Financial Institutions to Tax Exempt Interest.--**

**(1) In General.--** In the case of a financial institution, no deduction whatsoever shall be allowed for that portion of interest expenses which may be attributable to exempt interest on exempt obligations acquired after December 31, 1987.

**(2) Allocation.--** For purposes of paragraph (1), the portion of the taxpayer's interest expense that shall be attributable to exempt interests shall be that amount which bears the same ratio to such interest expense as the taxpayer's daily average adjusted basis of the exempt obligations, in accordance with Section 1034.02, bears with the daily average adjusted basis for all assets of the taxpayer. In the case of alien individuals, to determine the allocation of the expense, only the property related to the active conduct of a trade or business in Puerto Rico shall be taken into account.

**(3) Definitions.--** For purposes of this subsection:

**(A) Interest Expense.--** The term "interest expense" means the aggregate amount allowable to the taxpayer as an interest deduction for the taxable year (determined without regard to this subsection). For purposes of the preceding sentence, the term "interest" includes amounts (whether or not designated as interest) paid with respect to deposits, investment certificates, and redeemable shares or repurchase agreements.

**(B) Exempt Obligation.--** The term "exempt obligation" means any obligation the interest on which is wholly exempt from taxes imposed by this Subtitle. Such term includes shares of stock of registered investment companies which during the taxable year of the holder thereof distributes dividends from exempt interest.

**(4) Financial Institution.--** For purposes of this subsection, the term "financial institution" means any person doing business in Puerto Rico that is:

**(A)** A commercial bank or trust company;

**(B)** A private bank;

**(C)** A savings and loan association or a building and loan association;

**(D)** An insured institution, as defined in Section 401 of the "National Housing Act";

**(E)** A savings bank, industrial bank or other institution of savings or economy;

**(F)** A securities firm or brokerage house;

**(G)** Institutions involved in mortgage loans, commonly known as mortgage banks or mortgage brokers;

**(H)** Any other entity organized or authorized to operate under the banking or financing laws of the Government of Puerto Rico, the United States of America, any State of the Union or a foreign country.

**(5) Special Rule.--** If any interest expense on indebtedness is disallowed under subsection (a) with respect to any exempt obligation:

**(A)** Such interest disallowed as a deduction shall not be taken into account for purposes of applying this subsection; and

**(B)** for purposes of applying paragraph (2), the adjusted basis of such exempt obligation shall be reduced (but not below zero) by the amount of such indebtedness.

**(g) Loss on Wash Sales of Stock or Securities.--**The loss from the sales of stock or securities when within thirty (30) days before or after the date of the sale the taxpayer has acquired substantially identical property. The disallowance of this loss deduction shall be as provided in Section 1034.07.


**Section 1033.18.-- Allowance of Deductions for Personal Exemptions and for Dependents.--**

**(a)** In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing net income:

**(1) Personal Exemption.--**

**(A)** In the case of an individual taxpayer, a personal [sic] personal exemption of three thousand five hundred dollars ($ 3,500).

**(B)** In the case of married individuals living together and filing a joint return, a personal exemption of seven thousand dollars ($ 7,000).

**(C) Additional Personal Exemption for Veterans.--**An additional personal exemption of one thousand five hundred dollars ($ 1,500) shall be allowed as deduction to all veterans, as such term is defined in Act No. 13 of October 2, 1980, as amended, known as the "Bill of Rights of Puerto Rican Veterans." In the case of married individuals living together and filing a joint return, if both were veterans, the additional personal exemption shall be of three thousand dollars ($ 3,000).

**(b) Exemption for Dependents.--**

**(1) General Allowance of Deduction.--**

**(A)** For each dependent, as defined in subparagraph (A) of paragraph (1) of subsection (c) of this section, an exemption of two thousand five hundred dollars ($ 2,500) shall be allowed for each taxable year of the taxpayer.

**(B)** No exemption shall be allowed with respect to a married dependent filing, under the provisions of Section 1061.01, a joint return with his/her spouse for the taxable year beginning within such calendar year.

**(C) Allowance of Deduction when the Dependent Earns Income.--**

**(i) General Rule.--** Except as provided in clause (ii), the exemption specified in subparagraph (A) of this paragraph shall be allowed only with respect to a dependent whose gross income for the calendar year in which the taxpayer's taxable year begins is less than the amount which the taxpayer is allowed on this account.

**(ii) Special Rule in the Case of a Dependent Child of the Taxpayer who is a Student.--**In those cases in which the dependent is a child of the taxpayer, is a regular student, and complies with the requirements set forth in this section for the allowance of the exemption specified in subparagraph (A) of this paragraph, the amount of said exemption shall be granted disregarding whether said dependent, during the natural year, earned income in excess of the amount that is granted to the taxpayer on account of this exemption. The amount of such income shall not exceed seven thousand five hundred dollars ($ 7,500).

**(2) Supplying of Account Number for Certain Dependents.--**Any taxpayer who claims a dependent on his/her return for any taxable year and said dependent is one (1) or more years of age before the close of said taxable year must include the identification number (social security number) of said dependent on the return.

**(c) Definitions.--** As used in this Subtitle:

**(1)** The term "dependent" means:

**(A)** Any of the following persons over half of whose support for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer:

**(i)** A person who at the close of the calendar year in which the taxable year of the taxpayer begins has not reached the age of twenty-one (21);

**(ii)** the father and mother of the taxpayer;

**(iii)** a person who is sixty-five (65) years old or more, or

**(iv)** who has attained the age of twenty-one (21) or more and is blind or incapable of self-support because of being mentally or physically impaired.

**(B)** It also means any person who, as of the calendar year in which the taxpayer's taxable year begins, has received from the taxpayer over half of his/her support, and has attended as a regular student at least one semester of undergraduate studies during said calendar year at a university or post-secondary technical-professional institution, recognized as such by the educational authorities of Puerto Rico, or those of the appropriate country, until he/she obtains a university or technical-professional degree, provided, that at the close of the calendar year in which the taxable year of the taxpayer begins neither, he/she has not reached the age of twenty-six (26). The taxpayer who claims this exemption must attach to his/her income tax return a certificate to such effect issued by the appropriate university or technical professional post-secondary institution.

**(C)** The term "dependent" does not include any individual who is not a citizen of the United States, unless such individual is a "resident alien individual," as said term is defined in Section 1010.01(a)(30) of this Subtitle. For purposes of this subparagraph, there shall not be excluded from the term "dependent" any child legally adopted by the taxpayer, who is a citizen of the United States or a resident alien of Puerto Rico, if during the taxable year the main residence of the was the home of the taxpayer.

**(2)** The taxpayer who claims in his/her tax return any of the dependents comprised in clause (iii) or (iv) of subparagraph (A) shall attach to his/her return a certificate attesting to the satisfaction of the Secretary:

**(A)** The mental or physical impairment of the dependent for self-support;

**(B)** the blindness of the dependent; or

**(C)** the age of the dependent if he/she is not blind or impaired.

**(3) Blindness Defined.--** For purposes of this subsection, an individual is blind only if his/her central visual acuity does not exceed 20/200 in the better eye with corrective lenses, or if his/her visual acuity is greater than 20/200, but is accompanied by such a limitation in the fields of vision that the widest diameter of the visual field subtends an angle not greater than twenty (20) degrees.

**(d) Proof of Support in the case of Minor Children of Divorced Parents.--**

**(1) Allowance of Deduction to the Custodial Parent.--**Except as otherwise provided in this subsection, if--

**(A)** A minor child receives over half his/her support during the calendar year from his/her divorced or separated parents, or parents who are not eligible to file as married individuals, and

**(B)** said child is under the custody of one of said parents for over half the calendar year, said child shall be considered, for purposes of subsection (b) of this section, as receiving over half of his/her support during the calendar year from that parent who holds his/her custody during the greater part of the calendar year.

**(2) Exception where Custodial Parent Releases Claim to Exemption for the Year.--**A minor child of parents described in paragraph (1) shall be considered to have received over half of his/her support during a calendar year from the non-custodial parent if--

**(A)** The custodial parent signs a written statement, in the form and manner as the Secretary may prescribe through regulations, that such custodial parent shall not claim said child as a dependent for any taxable year beginning within said calendar year, and

**(B)** the non-custodial parent attaches the written statement to his/her return for the taxable year beginning within said calendar year.

**(3) Special Rule for Support Received from a New Spouse of a Parent.--**For purposes of this subsection, in case of remarriage of a parent, the child support received from the parent's spouse shall be considered as received from the parent, as the case may be.

**(4) Special Rule for Parents with Joint Custody.--**

**(A)** Except as provided in subparagraph (B), in the case of separated or divorced parents or who that are not entitled to file, and hold joint custody of their minor child, the exemption for dependents provided in this Section shall be divided equally between both parents.

**(B)** Only one parent shall claim the exemption for dependents, if the other parent signs a written statement, in the form and manner as the Secretary may prescribe through regulations, that he/she shall not claim half the deduction for said child as a dependent for any taxable year beginning within a calendar year, and that the parent claiming such exemption attaches the written statement to his/her return for the taxable year beginning within said calendar year.

### Section 1033.19.-- Deductions Applicable to Corporations for Dividends Received from their Subsidiaries.--

**(a) Dividends Received.--** Eighty-five percent (85%) of the amount received as dividends from a domestic corporation that is subject to taxation under this Subtitle, or from industrial development income subject to taxation under this Subtitle, but the deduction shall not exceed eighty-five percent (85%) of the net income of the taxpayer. Said deduction shall be extensive to the notice of credit for capital distributed to a corporation by a special employee-owned corporation, during the time said entities keep a parent-subsidiary relationship, as provided in Section 1509 of Act No. 3 of January 9, 1956, as amended, which may not exceed ten (10) years. However, in the case of a distribution of dividends from industrial development income derived from operations covered under the provisions of Act No. 57 of June 13, 1963, as amended, known as the "Puerto Rico Industrial Incentives Act of 1963", the deduction shall not exceed seventy-seven point five percent (77.5%) of the amount received as dividend from industrial development income subject to taxation under this Subtitle, but such deduction shall not exceed seventy-seven point five percent (77.5%) of the net income of the taxpayer. Provided, that, the deduction established in this

subsection shall not apply in the case of a distribution of dividends of income derived from operations covered by the provisions of Act No. 78 of September 10, 1993 [23 L.P.R.A. §§ 6001 et seq.], known as the "Puerto Rico Tourism Development Act."

**(1) Exceptions.--**

**(A)** In the case of a small business investment company operating in Puerto Rico under the Act of the U.S. Congress known as the "Small Business Investment Act of 1958," there shall be allowed as a deduction from the net income, an amount equal to one hundred percent (100%) of the amount received as dividends from a domestic corporation subject to taxation under this Subtitle.

**(B)** There shall be allowed as a deduction from the net income, one hundred percent (100%) of the amount received as dividends by corporations organized under the laws of any State of the United States or the Government of Puerto Rico, whose principal is derived from industrial development income accumulated during taxable years beginning before January 1, 1993, and invested in obligations of the Government of Puerto Rico or any of its agencies or political subdivisions or invested in mortgages secured by the Puerto Rico Housing Bank and Finance Agency or in home-equity loans or other securities granted by any general pension or retirement system established by the Legislative Assembly of Puerto Rico, the municipalities and the agencies, instrumentalities and public corporations of the Government of Puerto Rico, upon compliance with the following requirements:

**(i)** That they are owned by March 31, 1977, and retained by the investing corporation for a period of more than eight (8) years as of said date; and/or

**(ii)** that they are acquired after March 31, 1977, and owned by the investing corporation for a period of more than eight (8) years from the date of acquisition.

For purposes of this subparagraph, if the corporation has owned the note or mortgage for more than five (5) years, the aforesaid period of ownership shall not be deemed as interrupted because of the fact that the corporation owning said note or mortgage sells, transfers or exchanges the same, provided it reinvests the principal in other notes or mortgages specified in this paragraph within a period of not more than thirty (30) days. Only one transfer shall be permitted in the case of any note or mortgage during said period of eight (8) years. When the investment is made in obligations of the Government of Puerto Rico or any of its instrumentalities or political subdivisions with a maturity date of more than eight (8) years as of the date of acquisition of such obligation, and such obligation is redeemed, retired, or prepaid by the issuing government entity before eight (8) years as of the date of acquisition, the investing corporation may distribute the proceeds as a dividend with a credit against the net income equivalent to one hundred percent (100%) of the amount of said dividend, as provided in this subparagraph.

**(C)** There shall be allowed as a deduction from the net income, one hundred percent (100%) of the amount received as dividends from corporations organized under the laws of any State of the United States or the Government of Puerto Rico, whose principal is derived from industrial development income accumulated during taxable years beginning before January 1, 1993, and invested in obligations of the Government Development Bank for Puerto Rico or any of its subsidiary corporations, for the financing through the purchase of mortgages, construction, acquisition, improvement of housing in Puerto Rico, begun after December 31, 1984, and/or the refinancing of mortgage obligations whose interests are subsidized according to the provisions of Acts No. 10 of July 5, 1973; No. 58, of June 1, 1979, and No. 141 of June 14, 1980, as amended, under the terms and conditions to be established by the Bank through regulation, at the rate of a fraction whose numerator shall be number one (1) and whose denominator shall be the total number of time periods established for the payment of interest on said liabilities. In no case shall said fraction be less than one eighth (1/8) annually or one sixteenth (1/16) semiannually, based on the dates established for the payment of interests on said liabilities, provided that the investment company has owned the liability for the whole year or semester immediately preceding said dates.

At the option of the investment corporation, the amounts eligible for annual or semiannual distributions under this paragraph can be accumulated for distribution in any subsequent dates. In the case of the investments described in subparagraph (B) of paragraph (1) of this subsection:

**(i)** A sum equal to the total of the distributions authorized under this clause shall be excluded from the principal invested in liabilities as described herein; Provided, that a sum equal to said principal (excluding from it a sum equal to the total of the distributions authorized under this paragraph) may be distributed under said subparagraph (B) at the end of the eight (8)-year period provided in such subparagraph. Provided, that the investment shall continue to be eligible for distribution under this clause for the term in excess of said eight (8)-year period during which it is owned by the investing corporation.

**(ii)** Those sold, transferred or exchanged at any time and the principal is reinvested within thirty (30) days following said sale, transfer or exchange, in liabilities described in this paragraph, shall be deemed as complying with said subparagraph (B), but a sum equal to the total of the distributions authorized by this clause shall be excluded; provided, that the period of ownership of the investing corporation in the two (2) types of investments adds up to eight (8) years or more, including the thirty (30)-day period mentioned in this paragraph. A sum equal to said principal (excluding from it a sum equal to the total of the authorized distributions under this paragraph) may be distributed under said subparagraph (B) at the end of said eight (8)-year period. The investment shall continue to be eligible for distribution under this clause for the term in excess of said eight (8)-year period that it is owned by the investing corporation. In the case of the investments described in this clause that are sold, transferred, or exchanged at any time, the principal reinvested within thirty (30) days after the sale, transfer or exchange, in liabilities described in subparagraph (B) of paragraph (1) of this subsection shall be deemed as complying with said subparagraph (B), but a sum equal to the total of the distributions authorized by this clause shall be excluded therefrom; provided, that the period of ownership of the investing corporation in the two (2) types of investments adds up to eight (8) years or more, including the thirty (30)-day period mentioned in this subparagraph. A sum equal to that principal (excluding from it a sum equal to the total of the distributions authorized by this subparagraph) may be distributed under said subparagraph (B) at the end of said eight (8)-year period. The distributions authorized under this clause shall reduce, during the year that they are made, the industrial development net income for purposes of determining the investment requirements of Act No. 26 of June 2, 1978, as amended [13 L.P.R.A. §§ 255 et seq.], and/or any other similar Act that supersedes them.

**(D) Dividends Received from a Domestic Controlled Corporation.--**In the case of a domestic corporation, there shall be allowed as a deduction from the net income, one hundred percent (100%) of the amount received as dividends from domestic-controlled corporations (as defined in paragraph (1) of subsection (a) of Section 1010.04) that is subject to taxation under this Subtitle.

## Section 1033.20.-- Deductions Applicable to Taxpayers as Individuals.--Limitation in Computing Net Income.--

**(a)** In the case of individuals who are taxpayers who have earned income subject to preferred rates of twenty thousand dollars ($ 20,000) or more during the taxable year, in computing the net income subject to regular taxes for said year, there shall not be allowed as deduction such part thereof described in Section 1033.15 that is attributable to income subject to preferred rates, as established in Section 1032.01.

**(b)** In order to determine the limitation imposed in subsection (a) of this Section, the adjusted gross income (as defined in Section 1031.03) shall be classified into two income categories:

**(1)** Income subject to preferred rates; and

**(2)** Income subject to regular tax.

(c) The total of deductions allowable for the taxable year under Section 1033.15 shall be prorated between the two categories of income generated during the same taxable year, as described in subsection (b) of this Section. In each income category, there shall be allowed as deduction the proportional amount of said deductions for purposes of computing the taxable net income.

## SUBCHAPTER D --  DETERMINATION OF CAPITAL GAINS AND LOSSES

### Section 1034.01.-- Capital Gains and Losses.--

(a) **Definitions.--** As used in this Subtitle--

(1) **Capital Assets.--** The term "capital assets" means property held by the taxpayer (whether or not connected with his/her trade or business), but does not include--

(A) Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his/her trade or business;

(B) property used in his/her trade or business, of a character which is subject to the allowance for depreciation provided in Section 1033.07, or real property used in his/her trade or business;

(C) a copyright, a literary, musical, or artistic composition, a letter or memorandum, or similar property, held by--

(i) a taxpayer whose personal efforts created such property;

(ii) in the case of a letter, memorandum or similar property, a taxpayer for whom such property was prepared or produced; or

(iii) a taxpayer in whose hands the basis of such property is determined, for purposes of determining gain from a sale or exchange, in whole or in part by reference to the basis of such property in the hands of a taxpayer described in clauses (i) or (ii); or

(D) accounts or notes receivable acquired in the ordinary course of trade or business for services rendered, or on account of loans, or from the sale of property as described in subparagraph (A).

(E) renewable energy certificates, as such term is defined in the Puerto Rico Green Energy Incentives Act.

(2) **Short-term Capital Gain.--**The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than six (6) months, if and to the extent that such gain is taken into account in computing gross income;

(3) **Short-term Capital Loss.--**The term "short-term capital loss" means loss from the sale or exchange of a capital asset held for not more than six (6) months, if and to the extent that such loss is taken into account in computing net taxable income;

(4) **Long-term Capital Gain.--** The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than six (6) months, if and to the extent that such gain is taken into account in computing gross income;

(5) **Long-term Capital Loss.--** The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than six (6) months, if and to the extent that such loss is taken into account in computing net taxable income;

(6) **Net Short-term Capital Gain.--**The term "net short-term capital gain" means the excess of short-term capital gains for the taxable year over the short-term capital losses for such year;

(7) **Net Short-term Capital Loss.--**The term "net short-term capital loss" means the excess of short-term capital losses for the taxable year over the short-term capital gains for such year;

2011 PR H.B. 3070

(8) **Net Long-term Capital Gain.--**The term "net long-term capital gain" means the excess of long-term capital gains for the taxable year over the long-term capital losses for such year;

(9) **Net Long-term Capital Loss.--**The term "net long-term capital loss" means the excess of long-term capital losses for the taxable year over the long-term capital gains for such year;

(10)  **Net Capital Gain.--**

(A)  **Corporations.--** In the case of a corporation, the term "net capital gain" means the excess of the gains from the sale or exchange of capital assets over the losses from such sale or exchange.

(B)  **Other Taxpayers.--** In the case of a taxpayer other than a corporation, the term "net capital gain" means the excess of--

(i) The sum of the gains from the sale or exchange of capital assets, plus net income of the taxpayer or one thousand dollars ($ 1,000), whichever is less, over

(ii) the losses from such sale or exchange. For purposes of this paragraph, net income shall be computed without regard to gains or losses from the sale or exchange of capital assets.

(11)  **Net Capital Loss.--** The term "net capital loss" means the excess of the losses from the sale or exchange of capital assets over the sum allowed under subsection (d). For purposes of determining losses under this paragraph, amounts which are short-term capital losses under subsection (e) of this Section shall be excluded.

(b)  **Special Tax in the Case of a Taxpayer Other than a Corporation.--**If for any taxable year, the net long-term capital gain of any taxpayer other than a corporation exceeds the net short-term capital loss, the tax provided in Section 1023.02 shall be imposed, collected and paid.

(c)  **Limitation on Capital Losses.--**

(1)  **Corporations.--** In the case of a corporation, losses from the sale or exchange of capital assets shall be allowed only to the total amount of the gains from such sale or exchange.

(2)  **Other Taxpayers.--** In the case of a taxpayer other than a corporation, losses from the sale or exchange of capital assets shall be allowed only to the total amount of the gains from such sale or exchange, plus the net income of the taxpayer or one thousand dollars ($ 1,000), whichever is less.

For purposes of this subsection, net income shall be computed regardless of gains or losses from the sale or exchange of capital assets.

(d)  **Capital Loss Carry-over.--**If for any taxable year beginning after June 30, 1995, the taxpayer has a net capital loss, the total amount thereof shall be a short-term capital loss in each of the five (5) succeeding taxable years, to the extent that such amount exceeds the total of any net capital gains for each of the prior taxable years in which the net capital loss may be carried over and such succeeding taxable year. For purposes of this subsection, a net capital gain shall be computed regardless of such net capital loss or any net capital losses arising in any such prior taxable years.

(e)  **Withdrawal of Bonds and Other Securities.--**For purposes of this Subtitle, amounts received by the holder upon the withdrawal of bonds, debentures, notes, or certificates, or other evidences of indebtedness issued by any corporation or partnership, including those issued by a government or political subdivision thereof, with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

(f)  **Short Sales and Options.--**For purposes of this Subtitle:

(1) Gains or losses from short sales of property shall be considered as gains or losses from sales or exchanges of capital assets; and

(2) gains or losses attributable to the failure to exercise privileges or options to buy or sell property shall be considered as short-term capital gains or losses.

(g)  **Determination of Holding Period of Property.--**For purposes of this Section:

**(1)** In determining the period for which the taxpayer has held property received in an exchange, there shall be included the period for which he held the property exchanged if, under Section 1034.02, the received property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in the hands of the taxpayer as the property exchanged. For purposes of this paragraph, an involuntary conversion described in Section 1034.04(f) shall be considered an exchange of the property converted for the property acquired.

**(2)** In determining the period for which the taxpayer has held property however acquired, there shall be included the period during which such property was held by any other person, if under Sections 1034.02, 1114.26 or 1114.27, such property has, for purposes of determining gain or loss from a sale or exchange, the same basis in whole or in part in the hands of the taxpayer as it would have in the hands of such other person.

**(3)** In determining the period for which the taxpayer has held stock or securities received through a corporate distribution in which no gain was recognized to the shareholders under the provisions of Section 6(c) of the Income Tax Act of 1924, there shall be included the period for which the taxpayer held the stock or securities in the issuing corporation prior to the receipt of such stock or securities upon such distribution.

**(4)** In determining the period for which the taxpayer has held stock or securities, the acquisition of which (or the contract or option to acquire which) resulted in the nondeductibility (under Section 1034.07 of this Subtitle or under Section 16(a)(5) of the Income Tax Act of 1924, relating to wash sales) of the loss from the sale or other disposition of substantially identical stock or securities, there shall be included the period for which the taxpayer held the stock or securities, the loss from the sale or other disposition of which was not deductible.

**(5)** In determining the period for which the taxpayer has held stock or rights to acquire stock received on a distribution, if the basis of such stock or rights is determined under Section 1034.02(a)(14)(A), there shall, under regulations prescribed by the Secretary, be included the period for which the taxpayer held the stock in the distributing corporation prior to the receipt of such stock or rights upon such distribution.

**(6)** In determining the period for which the taxpayer has held stock or securities acquired from a corporation by the exercise of rights to acquire such stock or securities, only the period beginning with the date on which the right to acquire was exercised shall be included.

**(7)** In determining the period for which the taxpayer has held a residence or sole proprietorship, the acquisition of which resulted under Section 1034.04(m) or 1034.04(n) in the nonrecognition of any part of the gain realized on the sale, exchange, or involuntary conversion of another residence or another sole proprietorship, there shall be included the period for which such other residence or other proprietorship had been held as of the date of such sale, exchange, or involuntary conversion.

**(h) Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business.--**

**(1) Definition of Property Used in the Trade or Business.--**For purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in Section 1033.07, held for more than six(6) months, and real property used in the trade or business, held for more than six (6) months, which is not:

**(A)** property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or

**(B)** property held by the taxpayer primarily for sale to customers in the ordinary course of his/her trade or business, or

**(C)** a copyright, a literary, musical, or artistic composition, a letter or memorandum or similar property, held by a taxpayer described in subparagraph (C) of paragraph (1) of subsection (a).

2011 PR H.B. 3070

**(2) General Rule.--** If during the taxable year the recognized gains on the sale or exchange of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (see Section 1034.04(f)(3) for cases of individuals, as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof), of property used in the trade or business and capital assets held for more than six (6) months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than six (6) months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses of capital assets. For purposes of this paragraph:

**(A)** In determining under this subparagraph whether gains exceed losses, the gains described therein shall be included only if, and to the extent, taken into account in computing gross income, and the losses described therein shall be included only if, and to the extent, taken into account in computing net income, except that subsection (d) shall not apply.

**(B)** Losses due to the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business, or capital assets held for more than six (6) months, shall be treated as losses from a compulsory or involuntary conversion.

**(i) Collapsible Corporations.--**

**(1) Treatment of Gain to Shareholders.--**Gain from--

**(A)** The sale or exchange of stock of a collapsible corporation;

**(B)** a distribution in partial or total liquidation of a collapsible corporation, which distribution is treated as in part or full payment in exchange for stock; and

**(C)** a distribution made by a collapsible corporation which is treated, to the extent it exceeds the basis of the stock, in the same manner as a gain from the sale or exchange of property, to the extent that it would be considered (except for the provisions of this subsection) gain from the sale or exchange of a capital asset shall, except as provided in paragraph (4), be considered gain from the sale or exchange of property which is not a capital asset.

**(2) Definitions.--**

**(A) Collapsible Corporation.--**For purposes of this subsection, the term "collapsible corporation" means a corporation formed or principally organized for the manufacture, construction or production of property, for the purchase of property, which (in the hands of the corporation) is property described in subparagraph (C), or for the holding of stock in a corporation so formed or availed of, with a view to:

**(i)** the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, before the realization by the corporation manufacturing, constructing, producing, or purchasing the property, of a substantial part of the net income to be derived from such property; and

**(ii)** the realization of gain by such shareholders attributable to such property.

**(B) Production or Purchase of Property.--**For purposes of subparagraph (A), a corporation shall be deemed to have manufactured, constructed, produced, or purchased property, if--

**(i)** It engaged in the manufacture, construction, or production of such property to any extent;

**(ii)** it holds property having a basis determined, in whole or in part, by reference to the cost of such property in the hands of a person who manufactured, constructed, produced, or purchased the property; or

**(iii)** it holds property having a basis determined, in whole or in part, by reference to the cost of property manufactured, constructed, produced, or purchased by the corporation.

(C)  **Section 1034.01(i) Assets.--**For purposes of this subsection, the term "Section 1034.01(i) assets" means property held for a period of less than three (3) years, which is--

    **(i)** stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year;

    **(ii)** property held by the corporation primarily for sale to customers in the ordinary course of its trade or business;

    **(iii)** unrealized receivables or fees, except receivables from sales of property other than property described in this subparagraph; or

    **(iv)** property described in Section 1034.01(h) (without regard to any holding period therein provided), except such property which is or has been used in connection with the manufacture, construction, production or sale of property described in paragraphs (i) or (ii).

    In determining whether the three (3) year holding period specified in this subparagraph has been satisfied, Section 1034.01(g) shall apply, but no such period shall be deemed to begin before the completion of the manufacture, construction, production or purchase.

(D)  **Unrealized Receivables.--** For purposes of subparagraph (C)(iii), the term "unrealized receivables or fees" means, to the extent not previously includible in income under the method of accounting used by the corporation, any rights (contractual or otherwise) to payment for:

    **(i)** Goods delivered, or to be delivered, to the extent the proceeds therefrom would be treated as amounts received from the sale or exchange of property other than a capital asset, or

    **(ii)** services rendered or to be rendered.

**(3)  Presumption in Certain Cases.--**

(A)  **In General.--** For purposes of this subsection, a corporation shall, unless shown otherwise, be deemed to be a collapsible corporation if (at the time of the sale or exchange or the distribution, described in paragraph (1)) the fair market value of its Section 1034.01(i) assets (as defined in paragraph (2)(C)) is:

    **(i)** fifty percent (50%) or more of the fair market value of its total assets, and

    **(ii)** one hundred twenty percent (120%) or more of the adjusted basis of such Section 1034.01(i) assets.

    Absence of the conditions described in paragraphs (i) and (ii) shall not give rise to a presumption that the corporation was not a collapsible corporation.

(B)  **Determination of Total Assets.--**In determining the fair market value of the total assets of a corporation for purposes of subparagraph (A)(i), there shall not be taken into account:

    **(i)** Cash,

    **(ii)** obligations which are capital assets in the hands of the corporation, and

    **(iii)** stock in any other corporation or partnership.

**(4)  Limitations on the Application of this Subsection.--**In the case of gain realized by a shareholder in respect to his/her stock in a collapsible corporation, this Section shall not apply:

(A)  Unless, at any time after the commencement of the manufacture, construction, or production of the property, or at the time of the purchase of the property described in paragraph (2)(C) or at any time thereafter, such shareholder

    **(i)** owned (or was considered as owning) more than five percent (5%) in value of the issued stock of the corporation, or

(ii) owned stock of such corporation which was considered as owned at such time by another shareholder who then owned (or was considered as owning) more than five percent (5%) in value of the issued stock of the corporation;

**(B)** to the gain recognized during a taxable year, unless more than seventy percent (70%) of such gain is attributable to the property so manufactured, constructed, produced or purchased; and

**(C)** to the gain realized after the expiration of three (3) years following the completion of such manufacture, construction, production, or purchase.

For purposes of subparagraph (A), the ownership of stock shall be determined in accordance with the rules prescribed in Section 1033.17(b)(2), except that, in addition to the persons prescribed by subparagraph (D) of that Section, the family of an individual shall include the spouses of that individual's brothers and sisters (whether by whole or half blood) and the spouses of that individual's lineal descendants.

**(j) Gain from the Sale of Certain Property between an Individual and a Controlled Corporation.--**

**(1) Treatment of Gain as Ordinary Income.--**In the case of a sale or exchange, directly or indirectly, of property described in paragraph (2) between an individual and a corporation in respect to which more than eighty percent (80%) in value of the issued stock is owned by such individual, his/her spouse, and his/her minor children and minor grandchildren, any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in subsection (h).

**(2) Subsection Applicable only to Sales or Exchanges of Depreciable Property.--**This subsection shall apply only in the case of a sale or exchange of property, by a transferor, which in the hands of the transferee shall be property of a nature which is subject to the allowance for depreciation provided in Section 1033.07.

**(k) Losses on Small Business Investment Company Stock.--**If a loss is on stock in a small business investment company operating in Puerto Rico under the Act of the United States Congress known as "Small Business Investment Act of 1958," and such loss would (but for this subsection) be a loss from the sale or exchange of a capital asset, then such loss shall be treated as a loss from the sale or exchange of property which is not a capital asset. For purposes of Section 1033.14 (relating to the net operating loss deduction), any amount of loss treated by reason of this subsection as a loss from the sale or exchange of property which is not a capital asset, shall be treated as attributable to a trade or business of the taxpayer.

**(l) Loss of Small Business Investment Company.--**In the case of a small business investment company operating in Puerto Rico under the Act of the United States Congress known as "Small Business Investment Act of 1958," if--

**(1)** A loss is on convertible debentures (including stock received pursuant to the conversion privilege) acquired pursuant to Section 304 of the Small Business Investment Act of 1958, and

**(2)** such loss would (but for this subsection) be a loss from the sale or exchange of a capital asset, then such loss shall be treated as a loss from the sale or exchange of property which is not a capital asset.


**Section 1034.02.-- Basis to Determine Gain or Loss.--**

**(a) Unadjusted Basis of Property.--**The basis of property shall be the cost of such property, except that--

**(1) Inventory Value.--** If the property should have been included in the last inventory, the basis shall be the last inventory value thereof.

**(2) Gifts after December 31, 1923.--**

**(A) Property acquired by gift after December 31, 1923, and before January 1, 1983.--**If the property was acquired by gift after December 31, 1923, and before January 1, 1983, the basis shall be the same as it would be if said property were in the hands of the donor or the last

preceding owner by whom it was not acquired by gift, except that if such basis, adjusted for the period prior to the date of the gift as provided in subsection (b), is greater than the fair market value of the property at the time of the gift, then, for the purpose of determining loss, the basis shall be such fair market value. If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donor, the Secretary shall, if possible, obtain such facts from such donor or last preceding owner, or from any other person cognizant thereof. If the Secretary finds it impossible to obtain such facts, the basis in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Secretary as of the date or approximate date on which, according to the best information that the Secretary is able to obtain, such property was acquired by such donor or last preceding owner.

**(B) Property Acquired by Gift after December 31, 1982.--**If the property was acquired by gift after December 31, 1982, but before July 1, 1985, the basis shall be the fair market value of said property at the time of said gift, except as provided in subparagraph (C).

**(C) Property Acquired by Gift after June 30, 1985 and before January 1, 2011.--**If the property was acquired by gift after June 30, 1985, and before January 1, 2011, and the same qualifies for the deduction provided in Subtitle C of this The Puerto Rico Internal Revenue Code of 1994, as amended, or qualified for those purposes under Act No. 167 of June 30, 1968, known as the "Estate and Gift Tax Act of Puerto Rico," as amended, with regard to properties located in Puerto Rico, the basis shall be determined in the same manner as provided in subparagraph (A).

**(D) Property Acquired by Gift after December 31, 2010.--**If the property was acquired by gift after December 31, 2010, the basis shall be the fair market value of said property on the date of said gift, except in the case of gifts that qualify for the deduction provided in Section 2042.02 of Subtitle B of this Code, in which case the basis of the property shall be the same basis such property had in the hands of the owner, increased by the portion of the amount of the exclusions provided in Sections 2041.03 and, if applicable, 2042.13 of Subtitle B of this Code, that proportionately corresponds, pursuant to the information provided in the tax return filed in accordance with Section 2051.02 of Subtitle B of this Code, but such basis shall not exceed the fair market value at the time of the gift.

**(3) Transfer in Trust after December 31, 1923.--**If the property was acquired after December 31, 1923, by a transfer in trust (other than by a transfer in trust by a gift, bequest, or devise), the basis shall be the same as it would be in the hands of the grantor, increased in the amount of gain or decreased in the amount of loss recognized by the grantor upon such transfer under the law applicable to the year in which the transfer was made.

**(4) Gift or Transfer in Trust before January 1, 1924.--**If the property was acquired by gift or transfer in trust on or before December 31, 1923, the basis shall be the fair market value of such property at the time of such acquisition.

**(5) Basis of Property Acquired from a Decedent.--**

**(A) If the property was acquired by bequest, devise or inheritance of the decedent, or by the decedent's estate prior to July 1, 1985.--**The basis of property acquired by bequest or inheritance prior to July 1, 1985 shall be the fair market value of such property at the time of such acquisition, except that:

**(i)** In the case of corporate stock and securities not traded in recognized stock markets and received from the decedent, the basis shall be the value used in the decedent's estate tax return.

**(ii)** In the case of property transferred in trust to pay the income for life to, or upon the order or under direction of the decedent, with the right reserved to the decedent at all times prior to his/her death to revoke the trust, the basis of such property in the hands of the persons entitled to it under the terms of the trust instrument after the decedent's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the decedent's

death. For purposes of this paragraph, property transferred without full and adequate consideration under a general power of appointment exercised by will, shall be deemed to be property transferred from the individual exercising such power by bequest or devise.

**(B)** **Property Acquired by Bequest, Devise or Inheritance, or by the Decedent's Estate from the Decedent after July 1, 1985 and before January 1, 2011.--**If the property was acquired from the decedent by bequest, devise or inheritance or the decedent's estate from the decedent after July 1, 1985, but before January 1, 2011, the basis shall be determined as follows:

    **(i)** In the case of property that qualifies for the deduction with regard to property located in Puerto Rico, or the fixed exemption provided in Subtitle C of the Puerto Rico Internal Revenue Code of 1994, as amended, or Act No. 167 of June 30, 1968, as amended, the basis shall be the same as it would be if said property were in the hands of the decedent or of the last preceding owner who did not acquire it by bequest, devise or inheritance. Notwithstanding, for the purpose of computing gains in any sale or exchange of this type of property, a maximum increment of the basis of four hundred thousand dollars ($ 400,000) shall be allowed, which shall be available until it is exhausted.

    **(ii)** In the case of any other property other than that described in paragraph (i) above, the basis shall be determined according to subparagraph (A) of this paragraph.

    **(iii)** In the case of a property which is the principal residence of the decedent, and the lot where the structure is located up to a maximum of one (1) cuerda, the basis shall be the fair market value of said property on the date of said acquisition.

**(C)** **Property acquired by bequest, devise or inheritance, or by the decedent's estate from the decedent after December 31, 2010.--**If the property was acquired from the decedent by bequest, devise or inheritance, or by the decedent's estate from the decedent after December 31, 2010, the basis shall be determined as follows:

    **(i)** If the bequest, devise or inheritance was subject to the corresponding taxation on account of the estate, then the basis of the property so acquired shall be the fair market value on the date of the decedent's death as it was stated in the estate's tax return for the purpose of obtaining the lien release certification.

    **(ii)** In the case of an estate that qualifies for the deduction provided in Section 2023.02 of Subtitle B of this Code, or the credit provided in Section 2024.04 of Subtitle B of this Code, the basis of the property shall be the same it had in the hands of the decedent, adjusted by such portion of the total of the fixed exemption provided in Section 2023.08 of Subtitle B of this Code that proportionately corresponds, as stated in the tax return filed pursuant to Section 2051.01 of Subtitle B of this Code.

**(6)** **Tax-exempt Exchanges.--** If the property was acquired after February 28, 1913, on an exchange described in Section 1034.04(b) to (e), inclusive, or Section 1034.04(l), the basis (except as provided in paragraph (15) of this subsection) shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized on such exchange under the law applicable to the year in which the exchange was made. If a property so acquired consisted in part of the type of property permitted by Section 1034.04(b) or Section 1034.04(l) to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation, an amount equivalent to its fair market value at the date of the exchange shall be assigned to such other property. Where as part of the consideration paid to the taxpayer, another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition (in the amount of the liability) shall, for purposes of this paragraph, be considered as money received by the taxpayer on the exchange. This paragraph shall not apply to

property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.

**(7) Transfers to Corporations.--**If the property was acquired:

**(A)** after December 31, 1923, and in a taxable year beginning before January 1, 1954, by a corporation in connection with a reorganization, and immediately after the transfer, an interest or control in such property of fifty percent (50%) or more remained in the hands of the same persons or any of them,

or

**(B)** in a taxable year beginning after December 31, 1953, by a corporation in connection with a reorganization, then the basis shall be the same as it would be if said property were in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor on such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation party to the reorganization unless such stock or securities were acquired by the exchange of stock or securities of the transferee (or of a corporation which is in control, determined under Section 1034.04(h), of the transferee) as the consideration in whole or in part for the transfer.

**(8) Property Acquired by Issuance of Stock or as Paid-in Surplus.--**If the property was acquired after December 31, 1923, by a corporation:

**(A)** by the issuance of its stock or securities in connection with a transaction described in Section 1034.04(b)(5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

**(B)** as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be if such property were in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor on such transfer under the law applicable to the year in which the transfer was made.

**(9) Involuntary Conversion.--** If the property was acquired after February 28, 1913, as the result of a compulsory or involuntary conversion described in Section 1034.04(f)(1), the basis shall be the same as in the case of the property so converted decreased in the amount of any money received by the taxpayer which was not expended in accordance with the provisions of law applicable to the year in which such conversion was made determining the taxable status of the gain or loss upon such conversion, and increased in the amount of gain or decreased in the amount of loss to the taxpayer recognized upon such conversion under the law applicable to the year in which such conversion was made. In the case of property purchased by the taxpayer which resulted, under the provisions of Section 1034.04(f)(2), in the nonrecognition of any part of the gain realized as the result of a compulsory or involuntary conversion, the basis shall be the cost of such property decreased in the amount of the gain not so recognized; and if the property purchased consists of more than one piece of property, the basis determined under this sentence shall be allocated to the purchased properties in proportion to their respective costs. This paragraph shall not apply with respect to property acquired as a result of a compulsory or involuntary property used by the taxpayer as his/her main residence.

**(10) Wash Sales of Stock.--** If the property consists of stock or securities the acquisition of which, or the contract or option to acquire which, resulted in the nondeductibility (under Section 1034.07 or corresponding provisions of prior income tax laws, relating to wash sales) of the loss from the sale or other disposition of substantially identical stock or securities, then the basis shall be the basis of the stock or securities so sold or otherwise disposed of, increased or decreased, as the case may be, by the difference, if any, between the price at which the property was acquired and the price at which such substantially identical stock or securities were sold or otherwise disposed of.

**(11) Basis Established by the Income Tax Act of 1924.--**If the property was acquired after February 28, 1913, in any taxable year beginning prior to January 1, 1954, and the basis thereof, for purposes of the

2011 PR H.B. 3070

Income Tax Act of 1924, was prescribed by Section 7(a)(6), (7), or (8) of said law, then, for purposes of this Subtitle, the basis shall be the same as the basis therein prescribed in the Income Tax Act of 1924.

**(12)  Property Acquired before March 1, 1913.--**In the case of property acquired before March 1, 1913, if the basis otherwise determined under this subsection, adjusted for the period prior to March 1, 1913, as provided in subsection (b), is less than the fair market value of the property as of March 1, 1913, then the basis for determining gain shall be such fair market value. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date.

**(13)  Basis of Property Received in Liquidations.--**

**(A)  General Rule.--** If property is received in a distribution in a total or partial liquidation of a corporation, and if gain or loss is recognized on receipt of said property, then the basis of the property in the hands of the distributee shall be the fair market value of such property at the time of the distribution.

**(B)  Liquidation of Subsidiary.--**If property was received by a corporation on a distribution in total liquidation of another corporation (within the meaning of Section 1034.04(b)(6)), then the basis of the property in the hands of such distributee shall be the same as if said property were in the hands of the transferor.

**(14)  Property Acquired by Corporate Stock Distribution.--**

**(A)** If the property was acquired by a shareholder in a corporation and consists of stock in such corporation, or rights to acquire such stock, acquired by him/her after February 28, 1913, in a distribution by such corporation (hereinafter referred to in this subparagraph as "new stock"), or consists of stock in respect to which such distribution was made (hereinafter referred to in this subparagraph as "old stock"), and

**(i)** the new stock was acquired in a taxable year beginning before January 1, 1954, or

**(ii)** the new stock was acquired in a taxable year beginning after December 31, 1953, and its distribution did not constitute income to the shareholders within the meaning of the Sixteenth Amendment to the Constitution of the United States, then the basis of the new stock and of the old stock, respectively, in the shareholder's hands, shall be determined by allocating among the old stock and the new stock the adjusted basis of the old stock; such allocation to be made under regulations which shall be prescribed by the Secretary.

**(B)** Subparagraph (A) shall not apply if the new stock was acquired in a taxable year beginning before January 1, 1954, and an amount on account of such stock was included, as a dividend, in gross income for such year, and after such inclusion, such amount was not excluded from gross income for such year.

**(15)  Property Acquired on the Reorganization of Certain Corporations.--**If the property was acquired by a corporation upon a transfer to which Section 1034.04(b)(8), or that part of Section 1034.04(d) or (e) as relates to Section 1034.04(b)(8), is applicable, then the basis in the hands of the acquiring corporation shall be the same as it would be as if said property were in the hands of the corporation whose property was so acquired, increased in the amount of gain recognized to the corporation whose property was so acquired under the law applicable to the year in which the acquisition occurred.

**(16)  Basis of Qualified Replacement Property Acquired by Purchase as Defined in Section 1034.04(r).--**The basis of a qualified replacement property (as defined in Section 1034.04(r)(3)(D)) purchased by the taxpayer during the replacement period shall be reduced by the amount of gain not recognized by reason of such purchase and the application of paragraph(1) of Section 1034.04(r). If more than one item of qualified replacement property is purchased, the basis of each of such items shall be reduced by an amount determined by multiplying the total gain not recognized by reason of such purchase and the application of paragraph (1) of Section 1034.04(r) by a fraction whose

numerator is the cost of such item of property, and whose denominator is the total cost of all such items of property.

**(b) Adjusted Basis.--** The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as provided hereinbelow.

**(1) General Rule.--** Proper adjustment in respect of the property shall in all cases be made--

**(A)** for expenditures, receipts, losses, or other items, properly chargeable to capital account, but no such adjustment shall be made for taxes or other carrying charges described for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years;

**(B)** in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount allowed, but not less than the amount allowable under this Subtitle or prior income tax laws. The adjustment herein provided shall be only in respect to the current depreciation provided in Section 1033.07 and shall be made irrespectively of any option for or deduction of flexible depreciation under Section 1040.11 or accelerated depreciation under Section 1040.12, or the use of any method of accelerated depreciation or exception to the attribution of capital accounts allowed by special fiscal incentives laws;

**(C)** in respect of any period before March 1, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent sustained;

**(D)** in the case of stock (to the extent not provided in the foregoing paragraphs) for the amount of distributions previously made which, under the law applicable to the year in which the distribution was made, either were tax-free or were applicable in reduction of basis;

**(E)** in the case of any bond, as defined in Section 1034.08, the interest on which is wholly exempt from the tax imposed by this Subtitle, to the extent of the amortizable bond premium disallowable as a deduction pursuant to Section 1034.08(a)(2), and in the case of any other bond as defined in said Section, to the extent of the deductions allowable pursuant to Section 1034.08(a)(1) with respect thereto;

**(F)** in the case of a residence or sole proprietorship, the acquisition of which resulted, under Section 1034.04(m) or 1034.04(n), in the nonrecognition of any part of the gain realized on the sale, exchange, or involuntary conversion of another residence, or sole proprietorship, to the extent provided in Section 1034.04(m)(4);

**(G)** in the case of a residence for which an acquisition credit was granted pursuant to Sections 1052.03 and 1052.04, for an amount equivalent to the credit so granted;

**(H)** in the case of transfers by gift or due to death, the interest of the property used in an activity other than the main trade or business of the transferor or decedent, respectively, for the amount in excess of the expenses disallowable as a deduction, pursuant to Section 1033.02(b)(3).

**(2) Substituted Basis.--** The term "substituted basis," as used in this subsection, means a basis determined under any provision of subsection (a) or under any corresponding provision of a prior income tax law, provided that the basis shall be determined--

**(A)** by reference to the basis in the hands of a transferor, donor, or grantor, or

**(B)** by reference to other property held at any time by the person for whom the basis is to be determined.

Whenever it appears that the basis of the property in the hands of the taxpayer is a substituted basis, then the adjustments provided in paragraph (1) of this subsection shall be made after first making, in respect of such substituted basis, proper adjustments of a similar nature in respect of the period during which the property was held by the transferor, donor, or grantor, or during which

2011 PR H.B. 3070

the other property was held by the person for whom the basis is to be determined. A similar rule shall be applied in the case of a series of substituted bases.

(c) **Property on which Lessee has Made Improvements.--**Neither the basis nor the adjusted basis of any portion of real property shall, in the case of the lessor of such property, be increased or diminished on account of income derived by the lessor in respect of such property and excludable from gross income under Section 1031.02(a)(7). If an amount representing any part of the value of real property attributable to buildings erected or other improvements made by a lessee in respect of such property was included in gross income of the lessor for any taxable year beginning before January 1, 1954, the basis of each portion of such property shall be properly adjusted for the amount so included in gross income.


## Section 1034.03.-- Determination of Amount of and Recognition of Gain or Loss.--

(a) **Computation of Gain or Loss.--**The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in Section 1034.02(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) **Amount Realized.--** The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property received other than money.

(c) **Recognition of Gain or Loss.--**In the case of sale or exchange of property the extent to which the gain or loss determined under this Section shall be recognized for purposes of this Subtitle shall be determined under Section 1034.04.

(d) **Installment Sales.--** Nothing in this Section shall be construed to prevent, in the case of property sold under contract providing for payment in installments, the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received.


## Section 1034.04.-- Recognition of Gain or Loss.--

(a) **General Rule.--** In the sale or exchange of property, the total amount of the gain or loss determined under Section 1034.03 shall be recognized, except for the provisions of this Section hereinafter.

(b) **Exchanges Solely in Kind.--**

(1) **Property Held for Productive Use or Investment.--**No gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment (excluding stock in trade or other property held primarily for sale, stocks, bonds, or notes, shares, and interests, certificates of trust or beneficial interests or other securities or evidences of indebtedness or interest) if such property is exchanged solely for property of like kind which is to be held either for productive use in a trade or business or for investment.

(2) **Stock for Stock of Same Corporation.--**No gain or loss shall be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

(3) **Stock for Stock in Case of Reorganization.--**No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(4) **Property for Stock or Securities in Case of Reorganization.--**No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in compliance with the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

(5) **Transfer to Corporation Controlled by Transferor.--**

**(A)** No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control of the corporation.

**(B) Special Rules to Shareholders.--**

**(i)** The fact that any corporation that transfers property to another corporation in an exchange described in subparagraph (A) distributes part or all of the stock in the corporation which it receives in the exchange to its shareholders shall not be taken into account provided that the requirement of control of such subparagraph has been met.

**(ii) Special Rule for Section 1034.04(s).--**If the requirements of Section 1034.04(s) (or so much of Section 1034.04(c)(1) as relates to Section 1034.04(s)) are met with respect to a distribution described in item (i), then, solely for purposes of determining the tax treatment of the transfers of property to the controlled corporation by the distributing corporation, the fact that the shareholders of the distributing corporation dispose of part or all of the distributed stock, or the fact that the corporation whose stock was distributed issues additional stock, shall not be taken into account in determining control for purposes of this Section.

**(C) Treatment of Controlled Corporation.--**If property is transferred to a corporation (hereinafter in this subsection referred to as the "controlled corporation") in an exchange with respect to which gain or loss is not recognized (in whole or in part) to the transferor under subparagraph (A), and such exchange is not in pursuance of a plan of reorganization, Section 1034.04 shall apply to any transfer in such exchange by the controlled corporation in the same manner as if such transfer were a distribution in respect to its shares.

**(D) Exception.--** This paragraph shall not apply to a transfer of property to an investment company, as said term is defined in regulations prescribed by the Secretary.

**(6) Property Received by a Corporation in Total liquidation of Another Corporation.--**No gain or loss shall be recognized on the receipt by a corporation of property distributed in total liquidation of another corporation. For purposes of this paragraph, a distribution shall be considered to be in total liquidation only if--

**(A)** The corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock in such other corporation who held at least eighty percent (80%) of the total combined voting power of the classes of stock entitled to vote and the owner of at least eighty percent (80%) of the total number of all the other classes of stock (except stock without voting rights, and limited and preferred stock in terms of dividends), and was not, at any moment whatsoever on or before the date of the adoption of the liquidation plan and until the receipt of the property, the owner of a percent of any class of stock greater than the percent of said class of stock owned at the moment of receipt of the property; and

**(B)** no distribution whatsoever was made under the liquidation plan before the first day of the taxable year of the corporation beginning after June 30, 1995; and either

**(C)** the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution; or either

**(D)** such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within three (3) years from the close of the taxable year during which is made the first of the series of distributions under the plan,

except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under paragraph (A) until the completion of such transfer, no distribution under the plan shall be considered a distribution in total liquidation.

**(E)** If such transfer of all the property does not occur within the taxable year, the Secretary may require of the taxpayer such bond, or waiver of the statute of limitations on assessment and collection, or both, as he/she may deem necessary to insure (if the transfer of the property is not completed within such three (3)-year period, or if the taxpayer does not continue qualified under paragraph (A) until the completion of such transfer) the assessment and collection of all income taxes imposed by this Subtitle for such taxable year or subsequent taxable years, to the extent attributable to property so received.

**(F)** A distribution otherwise constituting a distribution in total liquidation within the meaning of this subsection shall not be considered as not constituting such a distribution merely because it does not constitute a distribution or liquidation within the meaning of the corporate law under which the distribution is made; and for purposes of this subsection, a transfer of property of such other corporation to the taxpayer shall not be considered as not constituting a distribution, or one of a series of distributions, in complete cancellation or redemption of all the stock of such other corporation, merely because the carrying out of the plan involves--

**(i)** the transfer under the plan to the taxpayer by such other corporation of property, not attributable to shares owned by the taxpayer, on an exchange described in paragraph (4) of this subsection, and

**(ii)** the complete cancellation or redemption under the plan, as a result of exchanges described in paragraph (3) of this subsection, of the shares not owned by the taxpayer.

**(7) Transfer of property between spouses or incident to divorce.--**

**(A)** **General Rule.--** No gain or loss shall be recognized on a transfer of property from an individual to or in trust for the benefit of--

**(i)** a spouse, or

**(ii)** a former spouse, but only if the transfer is incident to the divorce.

**(B)** **Transfer Treated as Gift and the Transferee has Transferor's Basis.--**For the purpose of this Subtitle, in the case of any transfer of property described in subparagraph (A)--

**(i)** the property shall be treated as acquired by the transferee by gift, and

**(ii)** the basis of the transferee in the property shall be the adjusted basis of the transferor.

**(C)** **Incident to Divorce.--** For purposes of subparagraph (A)(ii), a transfer of property is incident to the divorce if such transfer--

**(i)** occurs within one (1) year after the date on which the marriage ceases, or

**(ii)** is related to the cessation of the marriage.

**(D)** **Special Rule where Spouse is Nonresident Alien.--**Item (i) of subparagraph (A) shall not apply if the spouse of the individual making the transfer is a nonresident alien.

**(E)** **Transfers in Trust where Liability Exceeds Basis.--**Subparagraph (A) shall not apply to the transfer of property in trust to the extent that the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred.

**(F)** Proper adjustment shall be made under subparagraph (B) in the basis of the transferee in such property to take into account gain recognized by reason of the subparagraph (E).

**(8) Gain or Loss Not Recognized on Reorganization of Corporations in Certain Receivership and Bankruptcy Proceedings.--**No gain or loss shall be recognized if property of a corporation is transferred in pursuance of an order of the court having jurisdiction over such corporation--

**(A)** In a receivership, foreclosure, or similar proceeding; or

**(B)** in a proceeding under Section 77B or Chapter X of the National Bankruptcy Act, as amended, to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation.

**(9) Indirect Exchanges and Transfers Solely of Insurance Policies.--**

**(A) Definitions.--** For the purpose of this subsection, the following terms shall have the meaning stated hereinbelow:

**(i) Endowment Contract.--** The term "contract of endowment insurance" means a contract with an insurance company which depends in part on the life expectancy of the insured, but which may be payable in full in a single payment or installments during his/her life.

**(ii) Annuity Contract.--** The term "annuity contract" means a contract that may be payable during the life of the annuitant only in installments. The annuity may be fixed or variable, and the amounts may be covered into one or more accounts separated under the terms and conditions provided by the Insurance Code of Puerto Rico.

**(iii) Life Insurance Contract.--**The term "contract of life insurance" means a contract of endowment insurance that is not ordinarily payable in full during the life of the insured.

**(B) Exchange on Insurance Contracts.--**No gain or loss shall be recognized on the exchange if--

**(i)** a contract of life insurance is exchanged for another contract of life insurance or for an endowment or annuity contract or any combination thereof; or

**(ii)** a contract of endowment insurance is exchanged for another contract of endowment insurance which provides for regular payments beginning at a date not later than the date payments would have begun under the contract exchanged, or for an annuity contract, or any combination thereof; or

**(iii)** an annuity contract is exchanged for another annuity contract or a contract of endowment insurance which provides for regular payments beginning at a date not later than the date payments would have begun under the contract exchanged, or a combination thereof.

**(C) Indirect Transfers.--** No gain or loss in the total distribution of the benefits acquired in a life insurance contract, endowment or annuity contract shall be recognized if the total amount received is paid within sixty (60) days following the receipt of the distribution for the purchase or acquisition of another insurance contract, as provided in subparagraph (C).

**(i)** In the case of a total distribution of a life insurance contract, the total amount distributed is paid for the purchase of another life insurance, endowment, or annuity contract or any combination thereof;

**(ii)** in the case of a total distribution of an endowment contract, the total distributed amount is paid for the purchase of another endowment contract that provides for regular payments beginning on a date not later than the date payments would have begun under the exchanged contract, an annuity contract or any combination thereof; and

**(iii)** in the case of a total distribution of an annuity contract, the total distributed amount is paid for the purchase of another annuity contract or an endowment contract that provides for regular payments beginning on a date not later than the date payments would have been made under the exchanged contract, an annuity contract or any combination thereof.

**(D) Exchanges and Transfers Involving Nonresidents.--**Subparagraphs (B) and (C) of this paragraph shall not apply in the case of any indirect exchange or transfer resulting from the

transfer of property to a nonresident individual of Puerto Rico. The Secretary is hereby empowered to prescribe exceptions through regulations to such effect.

**(c) Gain from Exchanges not Solely in Kind.--**

**(1)** If an exchange would be within the provisions of paragraphs (1), (2), (3), (5) or (9) of subsection (b), of the provisions of subsection (l) or of Section 1034.04(s) if it were not for the fact that the property received in exchange consists not only of property permitted by the provisions of subsection (l) or of Section 1034.04(s) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

**(2)** If a distribution made in pursuance of reorganization plan would be within the provisions of paragraph (1) of this subsection, but results in the distribution of a taxable dividend, then the amount of the gain recognized under paragraph (1) shall be taxable as a dividend for each of the distributees to the extent that does not exceed the distributees' share ratable to the undistributed commodities and benefits of the corporation accrued after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxable as a gain in the exchange of property.

**(d) Property in Exchange for Stock or Securities and Other Property or Money in Case of Reorganization.--**If an exchange would be within the provisions of paragraphs (4) or (8) of subsection (b) if it were not for the fact that the property received in exchange consists not only of stocks or securities permitted by such paragraphs to be received without the recognition of gain, but also of property or money, then--

**(1)** if the corporation receiving such other property or money distributes them in compliance with the reorganization plan, no gain on the exchange shall be recognized to the corporation; but

**(2)** if the corporation receiving such other property or money does not distribute them in compliance with the reorganization plan, the gain for the corporation, if any, shall be recognized but in an amount not in excess of the sum of such money and the fair market value of such other property so received and undistributed.

**(e) Loss from Exchanges Not Solely in Kind.--**If an exchange would be within the provisions of paragraphs (1), (2), (3), (4), (5), (8) or (9) of subsection (b), or within the provisions of paragraph (1), if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized.

**(f) Involuntary Conversions.--**If property, as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof, is compulsorily or involuntarily converted--

**(1) Conversion into Similar Property.--**Into property similar or related in service or use to the property so converted, no gain shall be recognized;

**(2) Conversion into Money.--** Into money or into property not similar or related in service or use to the converted property, the gain, if any, shall be recognized except to the extent hereinafter provided in this paragraph:

**(A) Nonrecognition of Gain.--** If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, or invests in the purchase of stocks of corporations that are engaged in industry or hotels (as hotel owner or operator) in Puerto Rico, or in the purchase of bonds of the Government of Puerto Rico or any of its instrumentalities or political subdivisions, or in the construction of buildings to be leased to nonprofit entities for hospitals, convalescent homes, and complementary facilities for said hospitals, clinics or convalescent homes, and complementary physical facilities at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one

or more taxable years) exceeds the cost of such other property, stock or bonds. Such election shall be made at such time and in such manner as the Secretary may prescribe by regulations. Notwithstanding the provisions of any other law, the gain not recognized in this manner shall be recognized in any subsequent sale or other disposition of such property, stock or bonds thus acquired.

For purposes of this paragraph--

**(i)** no property, stock or bond acquired before the disposition of the converted property shall be considered to have been acquired for the purpose of replacing such converted property unless held by the taxpayer on the date of such disposition; and

**(ii)** the taxpayer shall be considered to have purchased property, stock or bond only if, but for the provisions of Section 1034.02(a)(9), the unadjusted basis of such property, stock or bond would be its cost within the meaning of Section 1034.02(a)(9).

**(B) Period Within Which Property Must be Replaced.--**The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending--

**(i)** one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

**(ii)** subject to such terms and conditions as may be specified by the Secretary, at the close of such later date as the Secretary may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary may prescribe by regulations.

**(C) Time for Assessment of Deficiency Attributable to Gain upon Conversion.--**If a taxpayer has made the election provided in subparagraph (A), then

**(i)** the statutory period for the assessment of any deficiency, for any taxable year in which any part of the gain on such conversion is realized, attributable to such gain shall not expire prior to the expiration of three (3) years from the date the Secretary is notified by the taxpayer (in such manner as the Secretary may prescribe by regulations) of the replacement of the converted property or of an intention not to replace, and

**(ii)** such deficiency may be assessed before the expiration of such three (3) year period notwithstanding the provisions of Section 6010.02(f) of Subtitle F or the provisions of any other law or rule of law which would otherwise prevent such assessment.

**(D) Time for Assessment of Other Deficiencies Attributable to Election.--**If the election provided in subparagraph (A) is made by the taxpayer and such other property or such stock was purchased before the beginning of the last taxable year in which any part of the gain upon such conversion is realized, any deficiency, to the extent resulting from such election, for any taxable year ending before such last taxable year may be assessed (notwithstanding the provisions of Subtitle F or the provisions of any other law or rule of law which would otherwise prevent such assessment) at any time before the expiration of the period within which a deficiency for such last taxable year may be assessed.

**(3) Impossibility to Acquire Similar Property.--**When the taxpayer is an individual and proves that he/she has been unable to acquire a similar property within the term prescribed by this Subtitle to the satisfaction of the Secretary, the gain, if any, shall be considered as if it were a long-term capital gain as said term is defined in Section 1034.01(a)(4).

**(4) Definition.--** For purposes of paragraph (2), the term "disposition of the converted property" means the destruction, theft, seizure, requisition, or condemnation of the converted property, or the sale or exchange of such property under threat or imminence of requisition or condemnation.

**(5)** For purposes of this subsection, it shall also be understood that an involuntary conversion has occurred in every case in which a dealer receives from his/her principal or determined grantor payment for the modification, damage or conclusion of his/her dealer contract, but only if the dealer had a substantial investment of capital in his/her dealer business. In such case, and for purposes of subparagraph(A) of paragraph (2), no gain shall be recognized as to any part of that so received that the taxpayer invests during the period prescribed in subparagraph (B), on property related to service or in use in his/her dealer business. If said payment is received through agreement with the principal or grantor in exchange of said contract, in order to apply the provision of this paragraph, the taxpayer shall prove, to the satisfaction of the Secretary, that said agreement was carried out under threat or imminence of damage or involuntary conclusion of said contract.

**(6)** This subsection shall not apply in the case of property used by the taxpayer as his/her principal residence.

**(g) Definition of Reorganization.--**As used in this Section (except in subsection (b)(8) and in paragraph (1) of this section) and in Section 1034.02 (except in subsection (a)(15))--

**(1)** The term "reorganization" means:

**(A)** a statutory merger or consolidation; or

**(B)** the acquisition by a corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition); or

**(C)** the acquisition by a corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that the acquired property is subject to a liability, shall be disregarded; or

**(D)** a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, immediately after the transfer and in pursuance of the plan of reorganization, stock or securities of the transferee are distributed in a transaction which qualifies under subsections (b)(3) or (s) of this Section 1034.04; or

**(E)** a recapitalization; or

**(F)** a mere change in identity, form, or place of organization of a corporation, however executed.

**(2)** Special Rules for paragraph (1)--

**(A)** Any transaction otherwise qualifying under paragraphs (1)(A), (1)(B), or (1)(C) shall not be disqualified by reason of the fact that part or all of the assets or stock acquired in the transaction are transferred to a corporation (transferee corporation) controlled by the corporation acquiring such assets or stock in the transaction. No gain or loss shall be recognized to the transferee corporation on receipt of the assets or stock in the transaction herein described. In determining the basis of the assets or stock received by the transferee corporation in the transaction, refer to Section 1034.02(a)(7)(B).

**(B)** The acquisition by one corporation, in exchange for stock of a corporation referred to in this paragraph as "controlling corporation," which is in control of the acquiring corporation of substantially all of the properties of another corporation, shall not disqualify a transaction under paragraph (1)(A) if--

**(i)** no stock of the acquiring corporation is used in the transaction, and

**(ii)** such transaction would have qualified under paragraph (1)(A) had the merger been into the controlling corporation.

**(C)** A transaction otherwise qualifying under paragraph (1)(A) shall not be disqualified by reason of the fact that stock of a corporation (controlling corporation) which before the merger was in control of the merged corporation is used in the transaction, if--

**(i)** after the transaction, the corporation surviving the merger holds substantially all of its properties and of the properties of the merged corporation (other than stock of the controlling corporation distributed in the transaction); and

**(ii)** in the transaction, former shareholders of the surviving corporation exchanged, for an amount of voting stock of the controlling corporation, an amount of stock in the surviving corporation which constitutes control of such corporation.

**(D)** A transaction shall fail to meet the requirements of paragraph (1)(C) unless the acquired corporation distributes the stock, securities, and other properties it receives, as well as its other properties, in pursuance of the plan of reorganization. For purposes of the preceding sentence, if the acquired corporation is liquidated pursuant to the plan of reorganization, any distribution to its creditors in connection with such liquidation shall be treated as pursuant to the plan of reorganization.

**(E) Reorganizations Qualifying under Paragraphs (1)(C) and (1)(D).--**If a transaction is described in both paragraphs (1)(C) and (1)(D), then, for purposes of this Section (other than subparagraph (A)), such transaction shall be treated as qualifying only under subparagraph (1)(D).

**(F)** Additional Considerations for Certain Cases under Paragraph (1)(C). If--

**(i)** a corporation acquires substantially all properties of another corporation,

**(ii)** the acquisition shall qualify under paragraph (1)(C) but for the fact that the acquiring corporation transfers money or other property in addition to voting stocks, and

**(iii)** the acquiring corporation acquires, solely in exchange for voting stocks described in paragraph (1)(C), property of the other corporation whose fair market value is at least eighty percent (80%) of the fair market value of all the property of the other corporation, then such acquisition shall (subject to the provisions of subparagraph (E) of this paragraph) be treated as qualifying under paragraph (1)(C).

Only for purposes of determining the applicability of item (iii) applies, the amount of any liability assumed by the acquiring corporation shall be treated as money paid for the property.

**(G)** Requirement for Paragraph (1)(D) of Section 1034.04(b)(3) shall apply to an exchange in pursuance of a plan of reorganization within the meaning of paragraph (1)(D) only if--

**(i)** the transferee corporation substantially acquires all the properties of the transferor corporation; and

**(ii)** the stocks, securities and other assets received by the transferor and the other properties of the transferor are distributed in pursuance of a plan of reorganization.

**(H) Transactions under Section 1034.04(b)(5) and Paragraph (1)(C).--**If a transaction is described in Section 1034.04(b)(5) and paragraph (1)(C), such transaction shall be treated as qualifying only under paragraph (1)(C).

**(3) Party to a Reorganization.--**As used in this Section,

**(A)** the term "a party to a reorganization" includes a corporation resulting from a reorganization, and including both corporations, in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

**(B)** In the case of a reorganization qualifying under paragraph (1)(B) or (1)(C), if the stock exchanged for the stock or properties is stock of a corporation which is in control of the acquiring corporation, the term "a party to a reorganization" includes the corporation controlling the acquiring corporation.

**(C)** In the case of a reorganization qualifying under paragraph (1)(A), (1)(B), or (1)(C), or by reason of paragraph (2)(A), the term "a party to a reorganization" includes the corporation controlling the corporation to which the acquired assets or stock are transferred.

**(D)** In the case of a reorganization qualifying under paragraph (1)(A) by reason of paragraph (2)(B), the term "a party to a reorganization" includes the "controlling corporation" referred to in such paragraph.

**(E)** In the case of a reorganization qualifying under paragraph (1)(A) by reason of subsection (2)(C), the term "party to a reorganization" includes the "controlling corporation" therein referred to.

**(h) Control Defined.--**

**(1) General Rule.--** Except as provided in paragraph (2), as used in this Subtitle, except as otherwise provided, the term "control" means the ownership of stock possessing at least eighty percent (80%) of the total combined voting power of all classes of stock entitled to vote and at least eighty percent (80%) of the total number of shares of all other classes of stock of the corporation.

**(2) Special Rule to Determine Compliance with Section 1034.04(g)(1)(D).--**For the purpose of determining if a transaction qualifies under the provisions of subsection (g)(1)(D):

**(A)** In the case of a transaction in respect to which the requirements of Section 1034.04(b)(3) are met, the term "control" means the ownership of stock possessing at least fifty percent (50%) of the total combined voting power of all classes of stock entitled to vote and at least fifty percent (50%) of the number of shares of all other classes of stock of the corporation.

**(B)** In the case of a transaction in respect to which the requirements of Section 1034.04(s) (or provided in Section 1034.04(c)(1), as relates to Section 1034.04(s)) are met, the fact that shareholders of the distributing corporation dispose of all or part of the distributed stock, or the fact that the corporation whose stocks was distributed issues additional stock, shall not be taken into account.

**(i) Foreign Corporations.--**

**(1) General Rule.--** If, in connection with any exchange described in subsections (b)(3), (4), (5) or (6), or provided in subsection (c) as relates to subsection (b)(3) or (5), or of subsection (d), a Puerto Rico person transfers property (other than stock or securities of a foreign corporation a party to an exchange or a reorganization) to a foreign corporation, the foreign corporation shall not, for purposes of determining the extent to which gain shall be recognized on such transfer, be considered to be a corporation, except that said corporation, by documentation to such effect, attests to the satisfaction of the Secretary and in accordance with the regulations prescribed by him/her, within a period of one hundred eighty-three (183) days after the exchange was made, that it does not have the purpose of evading income taxes of the Government of Puerto Rico.

**(2)** The Secretary shall also establish through regulations to such effect, the cases in which it shall not be a requirement to submit the documentation described in paragraph (1).

**(3) Definition of Person of Puerto Rico.--**For the purpose of paragraph (1), the term "person of Puerto Rico" means a domestic corporation or resident corporation.

**(j) Installment Liabilities.--**The nonrecognition of gain or loss in the case of installment liabilities shall be governed by Section 1040.05(e).

**(k) Assumption of Liability Not Recognized.--**Where, by virtue of an exchange, a taxpayer received, as part of the consideration to the taxpayer, property allowed by paragraphs (b)(4), (5) or (8) to be received without recognition of gain if said property were the only consideration, and as part of the consideration another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition shall be considered as "other property or money" received by the

taxpayer within the meaning of subsections (c), (d) or (e), and shall not prevent the exchange from being within the provisions of (b)(4), (5) or (8); except that if, taking into account the nature of the liability and the circumstances under which the arrangement for the assumption or the acquisition were made, the main purpose of the taxpayer in respect to the assumption or the acquisition appears to be the evasion of income taxes of the Government of Puerto Rico on the exchange, or rather, such purpose was not one that served a *bona fide* purpose of the business, such assumption or acquisition (in the amount of the liability) shall be, for purposes of this section, considered as money received by the taxpayer on the exchange. In any lawsuit or proceeding where the taxpayer has the burden of proving that such assumption or acquisition is not to be considered as money received by him/her, such fact shall not be deemed as proven unless the taxpayer attests to it by clear preponderance of evidence.

**(l) Exchange by Security Holders in Respect to Certain Corporate Reorganizations.--**No gain or loss shall be recognized in an exchange consisting of the relinquishment or extinguishing of stock or securities in a corporation whose plan of reorganization was approved by a court in any proceeding described in subsection (b)(8), in consideration of the acquisition solely of stock or securities in a corporation organized or made use of to effectuate such plan or reorganization.

**(m) Gain from Sale or Exchange of Residence.--**

**(1) Nonrecognition of Gain.--** If a property (hereinafter in this subsection "old residence") used by the taxpayer as his/her main residence is sold by him/her and, within a period beginning two (2) years prior to the date of such sale and ending two (2) years after such date, another property located in Puerto Rico (hereinafter in this subsection "new residence") is purchased and used by the taxpayer as his/her main residence, gain, if any, from such sale shall be recognized only to the amount that the taxpayer's adjusted sales price of the old residence exceeds the taxpayer's cost of purchasing the new residence. For purposes of these provisions, the term "adjusted sales price" means the amount realized, as such term is defined in Section 1034.03(b), reduced by the amount of the costs incurred by the taxpayer for work performed on the old residence in order to make it marketable. The adjusted sales price shall only apply to expenses:

**(A)** For work performed during the ninety (90)-day period ending on the date on which the contract of sale of the old residence is entered into;

**(B)** which are paid on or before thirty (30) days after the date of the sale of the old residence; and

**(C)** which are not allowable as a deduction in computing net income under Section 1034.05 and are not taken into account in computing the amount realized from the sale of the old residence.

**(2) Rules for Application of this Subsection.--**For purposes of this subsection:

**(A)** An exchange by the taxpayer of his/her residence for other property shall be considered as a sale of such residence, and the acquisition of a residence on the exchange of property shall be considered as a purchase of such residence.

**(B)** If the taxpayer's residence, as a result of its destruction in whole or in part, theft, or seizure, is compulsory or involuntarily converted into property or into money, such destruction, theft or seizure shall be considered as a sale of the residence, and if the residence is so converted into property which is used by the taxpayer as his/her residence, such conversion shall be considered as a purchase of such property by the taxpayer.

**(C)** In the case of an exchange or conversion described in subparagraph (A) or (B), in determining the extent to which the sales price of the old residence exceeds the taxpayer's cost of purchasing the new residence, the amount realized by the taxpayer upon such exchange or conversion shall be considered the sales price of the old residence.

**(D)** A residence, any part of which was constructed or reconstructed by the taxpayer, shall be considered as purchased by the taxpayer. In determining the taxpayer's cost of purchasing a residence, there shall be included only so much of the cost as is attributable to the acquisition,

construction, reconstruction, and improvements made which are properly chargeable to capital account, during the period specified in paragraph (1).

**(E)** If a residence is purchased by the taxpayer prior to the date of his/her sale of the old residence, the purchased residence shall not be treated as his/her new residence if sold or if otherwise disposed of by the taxpayer prior to the date of the sale of the old residence.

**(F)** If the taxpayer, during the period described in paragraph (1), purchases more than one residence which are used by him/her as his/her principal residences at some time within two (2) years after the date of the sale of the old residence, only the last of such residences so used by him/her after the date of such sale shall constitute the new residence. If within the two (2) years referred to in the preceding sentence, the property used by the taxpayer as his/her principal residence is object of destruction, theft, seizure, requisition or condemnation, or is sold or exchanged under threat or imminence thereof, then for purposes of the preceding sentence, such two (2) year period shall be considered as ending on the date of such destruction, theft, seizure, requisition, expropriation, sale or exchange.

**(3) Limitation.--** The provisions of paragraph (1) shall not be applicable in respect to the sale of the taxpayer's residence if within two (2) years prior to the date of such sale, the taxpayer sold at a gain other property used by him/her as his/her principal residence, and any part of such gain was not recognized by reason of the provisions of paragraph (1). For purposes of this paragraph, the destruction, theft, seizure, requisition or condemnation of property or the sale or exchange of property under threat or imminence thereof, shall not be considered as a sale of such property.

**(4) Basis of New Residence.--** Where the purchase of a new residence results in the nonrecognition of gain on the sale of an old residence, under paragraph (1), in determining the adjusted basis of the new residence as of any time following the sale of the old residence, the adjustments to basis shall include a reduction by an amount equal to the amount of the gain not so recognized on the sale of the old residence. For this purpose, the amount of the gain not so recognized on the sale of the old residence includes only so much of such gain as is not recognized by reason of the cost, up to such time, of purchasing the new residence.

**(5) Participating Partner in a Cooperative Housing Association.--**For purposes of this subsection, Section 1034.02(b)(1)(F), and Section 1034.01(i)(7), references to property used by the taxpayer for his/her principal residence and references to the residence of a taxpayer, shall include shares held by a participating partner in a housing cooperative or association, as these terms are defined in Section 1033.15(a)(2)(B) if--

**(A)** in the case of stock sold, the house or apartment which the taxpayer was entitled to occupy as such stockholder was used by him/her as his/her main residence, and

**(B)** in the case of stock purchased, the taxpayer used for his/her principal residence, the house or apartment he/she was entitled to occupy as such stockholder.

**(6) Exception.--** The provisions of this subsection shall not be applicable to the amount of the gain realized from the sale of a residence which may have been acquired in accordance with Section 1081.2(d)(6) up to the amount upon which the taxation was deferred under said Section because of the purchase or construction of the residence.

**(7) Statute of Limitations.--** If during a taxable year the taxpayer sells at a gain property used by him/her as his/her principal residence, then--

**(A)** The statutory period for the assessment of any deficiency attributable to any part of such gain shall not expire prior to the expiration of three (3) years from the date the Secretary is notified by the taxpayer (in such manner as the Secretary may prescribe by regulations) of:

**(i)** The taxpayer's cost of purchasing the new residence which the taxpayer claims results in non-recognition of any part of such gain,

(ii) the taxpayer's intention not to purchase a new residence within the period specified in paragraph (1), or

(iii) the failure to make such purchase within such period, and

(B) such deficiency may be assessed prior to the expiration of such three (3) year period, notwithstanding the provisions of any other law or rule of law which would otherwise prevent such assessment.

(8) **Coordination with Other Provisions.--**For the exclusion available to individuals sixty (60) years of age or older, refer to Section 1031.02(a)(16).

**(n) Gain or Loss from the Sale or Exchange of all Trade or Business Assets of Certain Individuals.--**

(1) **Nonrecognition of Gain.--** If an individual sells, exchanges or otherwise disposes of all assets used in a trade or business carried on in his/her individual capacity ("sole proprietorship") and, within a period of twelve (12) months beginning immediately after the date of such sale, exchange or disposition, he/she purchases another property located in Puerto Rico to be operated by him/her as a sole proprietorship, the gain, if any, from such sale, exchange or disposition shall be recognized only to the extent that the sales price of the assets of the first sole proprietorship exceeds his/her cost of purchasing the new business. This provision shall be applicable to any sale, exchange or disposition, covered by the same, but for those that the taxpayer elects not to be applicable. This election shall be made according to the regulations prescribed by the Secretary.

(2) **Applicability of the Provisions of Subsection (m).--**The nonrecognition of gain in the sale or exchange of a sole proprietorship shall be subject to the provisions of paragraphs (2), (3), (4) and (7) of subsection (m) of this Section, as they may be applicable. For these purposes, the phrases "old residence" and "new residence" shall be substituted by the phrases "first sole proprietorship" and "new sole proprietorship."

(3) **Eligible Businesses.--** The term "sole proprietorship" shall not include businesses carried out by a corporation, partnership or other type of organization. The Secretary shall establish by regulations the requirements for a business to qualify as a "sole proprietorship."

(4) **Regulations.--** The Secretary shall determine by regulation the application of this Section when the assets object of the disposition are of a different nature or character and the treatment to be given to the gains and losses attributable thereto.

**(o) Nonrecognition of Gain or Loss on the Receipt of Money or other Property in Exchange for Certain Stock.--**No gain or loss shall be recognized by a corporation on the receipt of money or other property,

(1) in exchange for stock (including treasury stock) of such corporation, or

(2) in exchange for stock of a corporation that is a "party to a reorganization" as defined in Section 1034.04(g)(1) of this Subtitle.

**(p) Nonrecognition of Gain or Loss on Distribution (not in total liquidation) of Property.--**

(1) **General Rule.--** Except as otherwise provided in paragraph (2), no gain or loss shall be recognized by a corporation on the distribution of property (other than a distribution in total liquidation) in respect to its stock.

(2) **Distributions of Appreciated Property.--**If--

(A) a corporation distributes property (other than stock of such corporation or rights to acquire said stock) to a shareholder, and

(B) the fair market value of such property at the time of the distribution exceeds its adjusted basis in the hands of the distributing corporation, then the gain shall be recognized to the distributing corporation as if such property were sold to the shareholder at its fair market value.

(3) For purposes of this subsection, if any property distributed is subject to a liability, or the shareholder assumes a liability of the distributing corporation in connection with the distribution, it shall be understood that the fair market value of such property shall be an amount equal to such value or the amount of such liability, whichever is greater.

(4) The provisions of paragraph (2) shall not apply to a distribution of property to:

(A) a corporation that is a party to a reorganization in compliance with a plan of reorganization,

(B) a corporation that has an election in effect under Section 1114.12 or 1115.02 for the taxable year in which the distribution was made.

(C) an International Insurer or an International Insurer Holding Company that complies with Article 61.040 of the Insurance Code of Puerto Rico.

(5) **Distributions in Total Liquidation.--**In respect to the treatment of a distribution of property in total liquidation of a corporation, see subsection (q) of Section 1034.04.

(q) **Gain or Loss Recognized on Property Distributed in Total Liquidation of a Corporation.--**

(1) **General Rule.--** Except as otherwise provided in paragraphs (2) and (3), gain or loss shall be recognized to a corporation on the distribution of property in total liquidation as if such property were sold to the shareholder at its fair market value.

(2) For purposes of this subsection (q), if any distributed property is subject to a liability or the shareholder assumes a liability of the liquidating corporation in connection with the distribution, the fair market value of such property shall be an amount equal to such value or the amount of such liability, whichever is greater.

(3) **Distributions in Liquidation under Section 1034.04(b)(6).--**No gain or loss shall be recognized to the corporation on the distribution of property in total liquidation to a distributee to which Section 1034.04(b)(6) applies in respect to such distribution. If a corporation is liquidated in a transaction to which Section 1034.04(b)(6) applies, and on the date of adoption of the plan of liquidation it has outstanding debts or liabilities to the distributee corporation, any transfer of property to the distributee in satisfaction of such debts or obligations shall be treated as a distribution in liquidation.

(4) **Exception.--** No gain or loss shall be recognized to a corporation that is

(A) a party to a reorganization on the distribution of property to its shareholders in compliance of a plan of reorganization; or

(B) a corporation that has an election in effect under Section 1114.12 or 1115.02 for the taxable year in which the plan of liquidation is adopted.

(C) an International Insurer or a International Insurer Holding Company that complies with Article 61.040 of the Insurance Code of Puerto Rico.

(r) **Sales of Stock to Employee Stock Ownership Plans.--**

(1) **Nonrecognition of Gain.--** If--

(A) the taxpayer elects in such form as the Secretary may prescribe, the application of this subsection with respect to any sale of qualified securities (as defined in subparagraph (A) of paragraph (3) of this subsection),

(B) the taxpayer purchases qualified replacement property (as defined in subparagraph (C) of paragraph (3) of this subsection) within the replacement period (as defined in subparagraph (B) of paragraph (3) of this subsection), and

(C) the requirements of paragraph (2) are met with respect to such sale, then the gain (if any) on such sale, which would be recognized as long-term capital gain, shall be recognized only to the extent that the amount realized on such sale exceeds the cost to the taxpayer of such qualified replacement property.

**(2)** **Requirements to Qualify for Nonrecognition.--**A sale of qualified securities meets the requirements of this subsection if--

**(A)** the qualified securities are sold to an employee stock ownership plan (as defined in paragraph (1) of subsection (h) of Section 1081.01) or

**(B)** the plan specified in subparagraph (A) owns (after the application of paragraph (1) of subsection (e) of Section 1010.04) immediately after the sale,

**(i)** not less than ten percent (10%) of all the classes of outstanding stock of the corporation (other than stock not entitled to vote; limited and preferred as to dividends, does not participate in corporate growth to any significant extent; or has redemption and liquidation rights which do not exceed

the issue price of such stock except for a reasonable redemption or liquidation premium, and is not convertible into another class of stock), or

**(ii)** at least ten percent (10%) of the total value of (outstanding) stock of such corporation (except for any above described stock), or

**(iii)** such lower stock holding percentage authorized by the Secretary when to his/her judgment it is justified.

**(C)** the employer whose employees are covered by the plan described in subparagraph (A) shall file with the Secretary a written sworn statement consenting to the application of paragraphs (7) and (8).

**(3)** **Definitions; Special Rules.--**For purposes of this subsection--

**(A)** **Qualified Securities.--** The term "qualified securities" means employer stock (as defined in paragraph (2) of subsection (h) of Section 1081.01), which--

**(i)** are issued by a domestic corporation or by a foreign corporation that has derived at least eighty percent (80%) of its gross income from sources within Puerto Rico or in connection with the active conduct of its trade or business in Puerto Rico during the period between three (3) taxable years ending with the close of the preceding taxable year as of the date in which the stock is sold to an employee stock ownership plan and that has no stock outstanding that is readily tradable on an established securities market before July 1, 1995, and

**(ii)** were not received by the taxpayer in a distribution from a plan described in subsection (a) of Section 1081.01, or a transfer pursuant to an option or other right to acquire stock in consideration with the services rendered to the corporation by the taxpayer or by any reason in connection with his/her employment.

**(B)** **Stock Trading in the Stock Exchange.--**

**(i)** The employer's stock (as defined in paragraph (2) of subsection (h) of Section 1081.01) shall not be considered qualified securities under the above subparagraph (A) unless that at least twenty percent (20%) of the equity of the company is offered to investors through a recognized stock exchange or a stock exchange in Puerto Rico as of July 1, 1998, not later than the third anniversary of the effective date of the plan of stock acquisition for employees of the company or business.

**(ii)** The Secretary may authorize the extension of the three (3) year term provided in item (i) for up to one (1) additional year, when in his/her judgment it is justified.

**(iii)** Any corporation that fails to comply with this requirement shall be subject to denial of any tax benefits granted in connection with the plan.

**(C)** **Replacement Period.--** The term "replacement period" means the period beginning three (3) months prior to the date on which the sale of qualified securities occurs and which ends twelve (12) months after the date of such sale.

2011 PR H.B. 3070

**(D) Qualified Replacement Property.--**

**(i) In General.--** The term "qualified replacement property" means any security issued by an "operating corporation" which did not have, for the taxable year preceding the taxable year in which such security was purchased, passive investment income in excess of twenty-five percent (25%) of the gross receipts of the preceding taxable year, and is not the corporation that issued the qualified securities which stock is replacing, or a member of the same controlled group of corporations (within the meaning of paragraph (1) of subsection (a) of Section 1010.04) of which the corporation that issued the qualified securities is a member. For purposes of this item, the term "passive investment interest" means the total amounts received which are derived from royalties, fees, dividends, interests, annuities, and the sale or exchange of stock or securities (limited in the case of such sales or exchanges up to the amount of the gains obtained in such sales or exchanges), except for what is prescribed otherwise by the Secretary through regulations.

**(ii) Operating Corporation.--** The term "operating corporation" means

**(I)** a domestic corporation or a foreign corporation that has derived at least eighty percent (80%) of its gross income from sources within Puerto Rico or in connection with the active conduct of its trade or business in Puerto Rico during the period of three (3) taxable years ending with the close of the preceding taxable year before the security was purchased;

**(II)** that at the time the security was purchased or before the close of the replacement period, more than fifty percent (50%) of the assets were used in the active conduct of the trade or business; and

**(III)** the term "operating corporation" shall include any financial institution (as described in paragraph (4) of subsection (f) of Section 1033.17), and any insurance company.

**(iii)** For purposes of this subsection, if the corporation issuing the security owns stock representing control of one or more corporations, or one or more corporations own stock representing control of the corporation issuing the security, or both, then all such corporations shall be treated as one corporation. For purposes of this clause, the term "control" means the ownership of stock with at least fifty percent (50%) of the total voting right combined of all the stocks entitled to vote, or at least fifty percent (50%) of the total value of all the classes of stock of the corporation. In determining control, any qualified replacement property of the taxpayer with respect to this Section shall be disregarded.

**(iv) Meaning of Security.--** For purposes of this paragraph, the term "security" means a share of stock in a corporation; a right to subscribe for, or to receive, a share of stock in a corporation; or a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation with interest coupons or in registered form.

**(E)** No sale of qualified securities by an underwriter to an employee stock ownership plan or eligible worker-owned cooperative in the ordinary course of his/her trade or business as an underwriter, whether or not guaranteed, shall be treated as a sale for purposes of subsection (a).

**(F) Time for Filing Election.--**An election under paragraph (1) of subsection (r) shall be filed not later than the last day prescribed by law (including extensions thereof) for filing the income tax return for the taxable year in which the sale occurs.

**(4) Basis of Qualified Replacement Property.--**The basis of the taxpayer in qualified replacement property purchased by the taxpayer during the replacement period shall be reduced by the amount of gain not recognized by reason of such purchase and the application of paragraph (1). If more than one item of qualified replacement property is purchased, the basis of each of such items shall be reduced by an amount determined by multiplying the total gain not recognized by reason of such purchase and the application of paragraph (1) by a fraction the numerator of which is the cost of each item of property, and the denominator of which is the total cost of all such items of property.

**(5) Recapture of Gain on Disposition of Qualified Replacement Property.--**

**(A)** If a taxpayer disposes of any qualified replacement property, then, notwithstanding any other provision of the Code, the gain (if any) shall be recognized to the extent of the gain which was not recognized under paragraph (1) by reason of the acquisition by the taxpayer of such qualified replacement property.

**(B)** If a corporation issuing qualified replacement property disposes of a substantial portion of its assets other than in the ordinary course of its trade or business, and any taxpayer owning stock representing control (within the meaning clause (iii) of subparagraph (D) of paragraph (3) of this subsection) of such corporation at the time of the disposition, holds any qualified replacement property of such corporation at such time, then the taxpayer shall be treated as having disposed of such qualified replacement property at that time.

**(C)** Subparagraph (A) shall not apply to any transfer of qualified replacement property--

**(i)** in any corporate reorganization (within the meaning of subsection (g) of Section 1034.04) unless the person making the election under paragraph (1) owns stock representing control in the acquiring or acquired corporation and such property is substituted basis property in the hands of the transferee,

**(ii)** by reason of the death of the person making such election,

**(iii)** by gift, or

**(iv)** in any transaction to which paragraph (1) applies.

**(6) Statute of Limitations.--** If any gain is realized by the taxpayer on the sale or exchange of any qualified securities and there is in effect an election under paragraph (1) with respect to such gain, then--

**(A)** the statutory period for the assessment of any deficiency with respect to such gain, shall not expire before the expiration of four (4) years from the date the Secretary is notified by the taxpayer (in such manner as the Secretary may prescribe by regulations) of:

**(i)** the taxpayer's cost of purchasing qualified replacement property, which the taxpayer claims results in nonrecognition of any part of such gain,

**(ii)** the taxpayer's intention not to purchase qualified replacement property within the replacement period, or

**(iii)** a failure to make such purchase within the replacement period, and

**(B)** such deficiency may be assessed before the expiration of such four (4) year period notwithstanding the provisions of any other law or rule of law which would otherwise prevent such assessment.

**(7) Tax on Certain Dispositions by Employee Stock Ownership Plans.--**

**(A)** If during the three (3) year period after the date on which an employee stock ownership plan (as defined in paragraph (1) of subsection (h) of Section 1081.01) acquired any qualified securities (as defined in subparagraph (A) of paragraph (3) of this subsection (r) in a sale to which paragraphs (1) through (6) of this subsection apply, or said plan disposes of any of the qualified securities and:

**(i)** the total number of shares held by the plan after such disposition is less than the total number of employer securities (as defined in paragraph (2) of subsection (h) of Section 1081.01) held immediately after the sale, or

**(ii)** except to the extent provided by regulation, the value of qualified securities held by such plan after the disposition is less than ten percent (10%) of the total value of all the employer securities as of such disposition, a special tax equal to ten percent (10%) of the amount realized in such disposition is hereby imposed.

**(B)** The amount realized taken into account under subparagraph (A) shall not exceed that portion allocable to qualified securities acquired in the sale to which the provisions of paragraphs (1) through (6) of this subsection (r) applied.

**(C)** The amount realized on any distribution to an employee for less than fair market value shall be determined as if the qualified security had been sold to the employee at fair market value.

**(D)** The tax herein imposed shall be paid by the employer that filed the written statement described in subparagraph (C) of paragraph (2) of this subsection (r).

**(E)** This section shall not apply with respect to any distribution of qualified securities (or the sale thereof) realized by reason of--

**(i)** the death of the employee,

**(ii)** the retirement of the employee after the employee has attained the age of fifty-nine and one-half (59 1/2),

**(iii)** the disability of the employee (within the meaning of subparagraph (A) of paragraph (2) of subsection (q) of Section 1081.02, or

**(iv)** the separation of the employee from service for any period which results in a one (1) year break in service, during which the employee has not completed more than five hundred (500) hours of service.

**(F)** In the case of any exchange of qualified securities in any reorganization described in paragraph (1) of subsection (g) of Section 1034.04 for stock of another corporation, such exchange shall not be treated as a disposition for purposes of this section.

**(G)** This Section shall apply to any disposition of qualified securities under paragraph (10) of subsection (a) of Section 1081.01.

**(H)** For purposes of this section, the term "disposition" shall include any distribution.

**(8) Tax on Certain Prohibited Allocations of Qualified Securities.--**

**(A)** If there is a prohibited allocation of qualified securities (as defined in subparagraph (A) of paragraph (3) of this subsection) by any employee stock ownership plan, there is hereby imposed a tax on such allocation equal to fifty percent (50%) of the amount involved.

**(B)** For purposes of this Section, the term "prohibited allocation" means--

**(i)** any allocation of qualified securities acquired in a sale to which the provisions of paragraphs (1) through (6) of this subsection (r) apply which violates the provisions of Section 1081.01, and

**(ii)** any benefit which accrues to any person in violation of the provisions of Section 1081.01(h)(1)(B)(iv).

**(C)** The tax herein imposed shall be paid by the employer that filed the written statement described in subparagraph (C) of paragraph (2) of this subsection (r).

**(D)** The terms used in this paragraph shall have the same respective meaning as when used in paragraph (7).

**(s) Distribution of Stock and Securities of a Controlled Corporation.--**

**(1) Effect on Distributees.--**

**(A)** No gain or loss shall be recognized to (and no amount shall be includible in the income of) a shareholder or security holder on the receipt of such stock or securities, if--

**(i)** a corporation (referred to in this Section as the "distributing corporation")--

**(I)** distributes to a shareholder, with respect to its stock, or

**(II)** distributes to a security holder, in exchange for its securities, solely stock or securities of a corporation (referred to in this Section as "controlled corporation") which it controls immediately before the distribution,

**(ii)** it is established to the satisfaction of the Secretary, that the transaction was not used principally as a device for the distribution of the earnings and profits of the distributing corporation or the controlled corporation or both (but the mere fact that subsequent to the distribution stock or securities in one or more of such corporations are sold by all or some of the distributees (other than pursuant to an arrangement negotiated or agreed upon prior to such distribution) shall not be construed to mean that the transaction was used principally as such a device),

**(iii)** as part of the distribution, the distributing corporation distributes--

**(I)** all of the stock and securities in the controlled corporation held by it immediately before the distribution, or

**(II)** an amount of stock in the controlled corporation constituting control within the meaning under Section 1034.04(h), and it is established to the satisfaction of the Secretary that the retention by the distributing corporation of stock (or stock and securities) in the controlled corporation was not in pursuance of a plan having as one of its principal purposes evading Puerto Rico income tax, and

**(iv)** the requirements of paragraph (2) are met.

**(2)** Requirements as to Active Trade or Business:

**(A)** General Rule: The requirements of this paragraph shall be deemed met only if--

**(i)** the distributing corporation, and the controlled corporation (or, if stock of more than one controlled corporation is distributed, each of such corporations), is engaged immediately after the distribution in the active conduct of a trade or business, or

**(ii)** the distributing corporation had no assets other than stock or securities in the controlled corporations and each of the controlled corporations is engaged immediately after the distribution in the active conduct of a trade or business.

**(B) Definition.--** For purposes of subparagraph (A), a corporation shall be treated as engaged in the active conduct of a trade or business if and only if--

**(i)** it is engaged in the active conduct of a trade or business,

**(ii)** such trade or business has been actively conducted throughout the five (5) year period ending on the date of the distribution,

**(iii)** such trade or business was not acquired within the period described in clause (ii) in a transaction in which gain or loss was recognized in whole or in part, and

**(iv)** control of a corporation which (at the time of acquisition of control) was conducting such trade or business--

**(I)** was not acquired by any distributee corporation directly (or through one (1) or more corporations) within the period described in clause (ii) and was not acquired by the distributing corporation directly (or through one (1) or more corporations) within such period, or

**(II)** was acquired by any such corporation only by reason of one or more transactions in which gain or loss was not recognized, in whole or in part, or only by reason of such transactions combined with acquisitions before the beginning of such period.

For purposes of clause (iv), all distributee corporations, which are members of the same affiliated group under Section 1010.04, shall be treated as a single distributee corporation.

(3) **Coordination with Section 1034.02(a)(6).--**For purposes of Section 1034.02(a)(6) and the basis *pro rata* rule therein established, if a distribution that qualifies under this paragraph is realized without the surrendering of stock or securities by the distributee in exchange for the stocks or securities of the controlled corporation, the distribution shall be treated as if such exchange has been made, and for such purposes the stocks and securities of the distributing corporation which are retained by the shareholder shall be treated as transferred to the distributing corporation and once again received in the exchange.

(4) **Taxability of Corporation on Distribution.--**

    (A) **In General.--** Except as provided in subparagraph (B), no gain or loss shall be recognized to a corporation on any distribution to which this paragraph applies and which is not in pursuance of a plan of reorganization.

    (B) **Distribution of Appreciated Property.--**

        (i) **In General.--** If--

            (I) in a distribution referred to in subparagraph (A), the corporation distributes property other than qualified property, and

            (II) the fair market value of such property exceeds its adjusted basis in the hands of the distributing corporation, then a gain shall be recognized to the distributing corporation as if such property were sold to the distributee at its fair market value.

        (ii) **Qualified Property.--** For purposes of clause (i), the term "qualified property" means any stock or securities in the controlled corporation. Notwithstanding the above, and except as provided through regulations, the term "qualified property" shall not include stock or securities distributed as part of a plan (or a series of transactions) whereby one (1) or more persons acquire directly or indirectly stock representing fifty percent (50%) or more of the interest in the distributing corporation or any controlled corporation.

        (iii) **Treatment of Liabilities.--**If any property distributed in the distribution referred to in subparagraph (A) is subject to a liability or the shareholder assumes a liability of the distributing corporation in connection with the distribution, then, for purposes of clause (i), the fair market value of such property shall be treated as not less than the amount of such liability.

    (C) **Coordination with Subsections (o) and (p).--**Subsections (o) and (p) of this Section shall not apply to a distribution referred to in subparagraph (A).

(t) **Carryovers in Certain Corporate Acquisitions.--**

    (1) **General Rule.--** In the case of the acquisition of assets of a corporation by another corporation--

        (A) in a distribution to such other corporation to which the provisions of Section 10234.04(b)(6) (relating to liquidations of subsidiaries) apply; or

        (B) in a transfer to which the provisions of Section 1034.04(b)(4) (relating to nonrecognition of gain or loss to corporations) apply, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D), or (F) of Section 1034.04(g)(1).

        The acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in paragraph (3) of the distributor or transferor corporation, subject to the conditions and limitations specified in paragraph (2) and (3). For purposes of the preceding sentence, a reorganization shall be treated as meeting the requirements of subparagraph (D) of Section 1034.04(g)(1) only if the transferee corporation substantially acquires all of the assets of the transferor corporation.

    (2) **Operating Rules.--** Except in the case of a reorganization described in subparagraph (F) of Section 1034.04(g)(1)--

(A) the taxable year of the distributor or transferor corporation shall end on the date of distribution or transfer, and

(B) for purposes of this section, the date of distribution or transfer shall be the day on which the distribution or transfer is completed; except that, under regulations prescribed by the Secretary, the date when substantially all of the property has been distributed or transferred may be used if the distributor or transferor corporation ceases all operations, other than liquidating activities, after such date.

**(3) Items of the Distributor or Transferor Corporation.--**The items referred to in paragraph (1) are:

(A) **Net Operating Loss Carryovers.--**The net operating loss carryovers determined under Section 1033.14(b) of the distributor or transferor, subject to the following conditions and limitations:

(i) The distribution or transfer is made in taxable years beginning after December 31, 2010.

(ii) The taxable year of the acquiring corporation to which the net operating loss carryovers of the distributor or transferor corporation are first carried, shall be the first taxable year ending after the date of distribution or transfer.

(iii) In determining the net operating loss deduction, the portion of such deduction attributable to the net operating loss carryovers of the distributor or transferor corporation to the first taxable year of the acquiring corporation ending after the date of distribution or transfer, shall be limited to an amount which bears the same ratio to the taxable income (determined without regard to a net operating loss deduction) of the acquiring corporation for that taxable year as the number of days in the taxable year after the date of distribution or transfer bears to the total number of days in the taxable year.

(iv) For the purpose of determining the amount of the net operating loss carryovers under Section 1033.14(b), a net operating loss for a taxable year (hereinafter in this subparagraph referred to as the "loss year") of a distributor or transferor corporation which ends on or before the end of a loss year of the acquiring corporation shall be considered to be a net operating loss for a year prior to such loss year of the acquiring corporation; except that, if the date of distribution or transfer is on a day other than the last day of a taxable year of the acquiring corporation--

(I) such taxable year shall (for the purpose of this subparagraph only) be considered to be two (2) taxable years (hereinafter in this subparagraph referred to as the "pre-acquisition part year" and the "post-acquisition part year");

(II) the pre-acquisition part year shall begin on the same day as such taxable year begins and shall end on the date of distribution or transfer;

(III) the post-acquisition part year shall begin on the day following the date of distribution or transfer and shall end on the same day as the end of such taxable year;

(IV) the taxable income for such taxable year (computed with the modifications specified in Section 1034.14(b)(1) but without a net operating loss deduction) shall be divided between the pre-acquisition part year and the post-acquisition part year in proportion to the number of days in each;

(V) the net operating loss deduction for the preacquisition part year shall be determined as provided in Section 1033.14(c), but without regard to a net operating loss year of the distributor or transferor corporation; and

(VI) the net operating loss deduction for the post-acquisition part year shall be determined as provided in Section 1033.14(c).

(B) **Earnings and Profits.--** In the case of a distribution or transfer described in paragraph (1)--

(i) the earnings and profits or deficit in earnings and profits, as the case may be, of the distributor or transferor corporation shall, subject to clause (ii), be deemed to have been received or

incurred by the acquiring corporation as of the close of the date of the distribution or transfer; and

**(ii)** a deficit in earnings and profits of the distributor, transferor, or acquiring corporation shall be used only to offset earnings and profits accumulated after the date of transfer. For this purpose, the earnings and profits for the taxable year of the acquiring corporation in which the distribution or transfer occurs shall be deemed to have been accumulated after such distribution or transfer in an amount which bears the same ratio to the undistributed earnings and profits of the acquiring corporation for such taxable year (computed without regard to any earnings and profits received from the distributor or transferor corporation, as described in clause (i) of this subparagraph) as the number of days in the taxable year after the date of distribution or transfer bears to the total number of days in the taxable year.

**(C) Capital Loss Carryover.--** The capital loss carryover determined under Section 1034.01(d), subject to the following conditions and limitations:

**(i)** The taxable year of the acquiring corporation to which the capital loss carryover of the distributor or transferor corporation is first carried shall be the first taxable year ending after the date of distribution or transfer.

**(ii)** The capital loss carryover shall be a capital loss in the taxable year determined under clause (i) but shall be limited to an amount which bears the same ratio to the capital gain net income (determined without regard to a capital loss attributable to capital loss carryover), if any, of the acquiring corporation in such taxable year as the number of days in the taxable year after the date of distribution or transfer bears to the total number of days in the taxable year.

**(iii)** For purposes of determining the amount of such capital loss carryover to taxable years following the taxable year determined under clause (i), the capital gain net income in the taxable year determined under clause (i) shall be considered to be an amount equal to the amount determined under clause (ii).

**(D) Method of Accounting.--** The acquiring corporation shall use the method of accounting used by the distributor or transferor corporation on the date of distribution or transfer unless different methods were used by several distributor or transferor corporations or by a distributor or transferor corporation and the acquiring corporation. If different methods were used, the acquiring corporation shall use the method or combination of methods of computing taxable income adopted pursuant to regulations prescribed by the Secretary.

**(E) Inventories.--** In any case in which inventories are received by the acquiring corporation, such inventories shall be taken by such corporation (in determining its income) on the same basis on which such inventories were taken by the distributor or transferor corporation, unless different methods were used by several distributor or transferor corporations or by a distributor or transferor corporation and the acquiring corporation. If different methods were used, the acquiring corporation shall use the method or combination of methods of taking inventory adopted pursuant to regulations prescribed by the Secretary.

**(F) Method of Computing Depreciation Allowance.--**The acquiring corporation shall be treated as the distributor or transferor corporation for purposes of computing the depreciation allowance under Sections 1033.07, 1040.11 and 1040.12 on property acquired in a distribution or transfer with respect to the amount of the basis in the hands of the acquiring corporation as does not exceed the adjusted basis in the hands of the distributor or transferor corporation.

**(G) Installment Sale Method.--**If the acquiring corporation acquires installment obligations (the income from which the distributor or transferor corporation reports on the installment basis under Section 1040.05) the acquiring corporation shall, for purposes of Section 1040.05, be treated as if it were the distributor or transferor corporation.

2011 PR H.B. 3070

(H) **Amortization of Bond Premium.--**If the acquiring corporation assumes liability for bonds of the distributor or transferor corporation issued at a premium, the acquiring corporation shall be treated as the distributor or transferor corporation after the date of distribution or transfer for purposes of determining the amount of amortization allowable with respect to such or premium.

(I) **Contributions to Qualified Plans.--**The acquiring corporation shall be considered to be the distributor or transferor corporation after the date of distribution or transfer for the purpose of determining the amounts deductible under Section 1033.09 with respect to pension plans, employees' annuity plans, and stock bonus and profit-sharing plans.

(J) **Recovery of Tax Benefit Items.--**If the acquiring corporation is entitled to the recovery of any amounts previously deducted by (or allowable as credits to) the distributor or transferor corporation, the acquiring corporation shall succeed to the treatment under Section 1031.02(a)(8) which would apply to such amounts in the hands of the distributor or transferor corporation.

(K) **Involuntary Conversions under Subsection (f).--**The acquiring corporation shall be treated as the distributor or transferor corporation after the date of distribution or transfer for purposes of applying subsection (f).

(L) **Certain Obligations of Distributor or Transferor Corporation.--**If the acquiring corporation--

  (i) assumes an obligation of the distributor or transferor corporation which, after the date of the distribution or transfer, gives rise to a liability, and

  (ii) such liability, if paid or accrued by the distributor or transferor corporation, would have been deductible in computing its taxable income, the acquiring corporation shall be entitled to deduct such items when paid or accrued, as the case may be, as if such corporation were the distributor or transferor corporation. However, this paragraph shall not apply if such obligations are reflected in the amount of stock, securities, or property transferred by the acquiring corporation to the transferor corporation for the property of the transferor corporation.

(M) **Charitable Contributions in Excess of Prior Years' Limitation.--**Contributions made in the taxable year ending on the date of distribution or transfer and the four (4) prior taxable years by the distributor or transferor corporation in excess of the amount deductible under Section 1033.10 for such taxable year shall be deductible by the acquiring corporation for its taxable years which begin after the date of distribution or transfer, subject to the limitations imposed by such Section. In applying the preceding sentence, each taxable year of the distributor or transferor corporation beginning not later than the date of distribution or transfer shall be treated as a prior taxable year with reference to the acquiring corporation's taxable years beginning after such date.

(N) **Other Items Prescribed by the Secretary Through Regulations.--**

(u) **Limitation on Net Operating Loss Carryforwards Following Ownership Change.--**

(1) **General Rule.--** The amount of the taxable income of any new loss corporation for any post-change year which may be offset by pre-change losses shall not exceed the paragraph (2) limitation for such year.

(2) **Limitation.--** For purposes of this section--

(A) **In General.--** Except as otherwise provided in this section, the limitation for any post-change year is an amount equal to--

  (i) the value of the old loss corporation, multiplied by

  (ii) the long-term tax-exempt rate, as such term is defined in paragraph (5) of this section.

(B) **Carryforward of Unused Limitation.--**If the limitation for any post-change year exceeds the taxable income of the new loss corporation for such year which was offset by pre-change losses, the limitation for the next post-change year shall be increased by the amount of such excess.

**(C) Special Rule for Post-change Year which Includes Change Date.--**In the case of any post-change year which includes the change date--

**(i) Limitation Does Not Apply to Taxable Income Before Change.--**Paragraph (1) of this subsection shall not apply to the portion of the taxable income for such year which is allocable to the period in such year ending on the change date. Except as provided through regulations, taxable income shall be allocated ratably to each day in the year.

**(ii) Limitation for Period After Change.--**For purposes of applying the limitation of paragraph (1) to the remainder of the taxable income for such year, the limitation described in paragraph (2)(A) shall be an amount which bears the same ratio to such limitation (determined without regard to this paragraph) as--

**(I)** the number of days in such year after the change date, bears to

**(II)** the total number of days in such year.

**(iii) Carryforwards Disallowed if Continuity of Business Requirements Are Not Met.--**If the new loss corporation does not continue the business enterprise of the old loss corporation at all times during the two (2) year period beginning on the change date, the limitation described in paragraph (2)(A) for any post-change year shall be zero.

**(3) Pre-change Loss and Post-change Year.--**For purposes of this section--

**(A) Pre-change Loss.--** The term "pre-change loss" means--

**(i)** any net operating loss carryforward of the old loss corporation to the taxable year ending with the ownership change or in which the change date occurs, and

**(ii)** the net operating loss of the old loss corporation for the taxable year in which the ownership change occurs to the extent such loss is allocable to the period in such year before the change date.

**(iii)** Except as provided through regulations, the net operating loss shall, for purposes of clause (ii), be allocated ratably to each day in the year.

**(B) Post-change Year.--** The term "post-change year" means any taxable year ending after the change date.

**(4) Value of Old Loss Corporation.--**For purposes of this section--

**(A) In General.--** Except as otherwise provided in this subsection, the value of the old loss corporation is the value of the stock of such corporation immediately before the ownership change.

**(B) Special Rule in the Case of Redemption or Other Corporate Contraction.--**If a redemption or other corporate contraction occurs in connection with an ownership change, the value under subparagraph (A) shall be determined after taking such redemption or other corporate contraction into account.

**(C) Treatment of Foreign Corporations.--**Except as otherwise provided in regulations, in determining the value of any old loss corporation which is a foreign corporation, there shall be taken into account only items treated as connected with the active conduct of a trade or business in the Puerto Rico.

**(5) Long-term Tax-exempt Rate.--**For purposes of this section--

**(A) In General.--** The long-term tax-exempt rate shall be the highest of the adjusted Federal long-term rates in effect for any month in the three (3) calendar-month period ending with the calendar month in which the change date occurs.

**(B) Adjusted Federal Long-term Rate.--**For purposes of subparagraph (A), the term "adjusted Federal long-term rate" means the Federal long-term rate as determined monthly by the Secretary

of the Federal Treasury, but adjusted for differences between rates on long-term taxable and tax-exempt obligations.

**(6) Ownership Change.--** For purposes of this section--

**(A) In General.--** There is an ownership change if, immediately after any owner shift involving a five percent (5%) shareholder or any equity structure shift--

**(i)** the percentage of the stock of the loss corporation owned by one (1) or more five percent (5%) shareholders has increased by more than fifty (50) percentage points, over

**(ii)** the lowest percentage of stock of the loss corporation (or any predecessor corporation) owned by such shareholders at any time during the testing period.

**(B) Owner Shift Involving Five Percent (5%) Shareholders.--**There is an owner shift involving a five percent (5%) shareholder if--

**(i)** there is any change in the respective ownership of stock of a corporation, and

**(ii)** such change affects the percentage of stock of such corporation owned by any person who is a five percent (5%) shareholder before or after such change, and

**(iii)** such change occurs in taxable years beginning after December 31, 2010.

**(C) Equity Structure Shift Defined.--**

**(i) In General.--** The term "equity structure shift" means any reorganization (within the meaning of Section 1034.04(g)(1)) made in taxable years beginning after December 31, 2010. Such term shall not include--

**(I)** any reorganization described in subparagraph (D) of Section 1034.04(g)(1) unless all assets are substantially transferred, and

**(II)** any reorganization described in subparagraph (F) of Section 1034.04(g)(1).

**(ii) Certain Taxable Reorganization-type Transactions.--**To the extent provided in regulations, the term "equity structure shift" includes taxable reorganization-type transactions, public offerings, and similar transactions.

**(D) Special Rules for Application of Subsection.--**

**(i)** Treatment of Less Than Five Percent (5%) Shareholders.--Except as provided in clauses (ii)(I) and (iii), in determining whether an ownership change has occurred, all stock owned by shareholders of a corporation who are not five percent (5%) shareholders of such corporation shall be treated as stock owned by one (1) five percent (5%) shareholder of such corporation.

**(ii) Coordination with Equity Structure Shifts.--**For purposes of determining whether an equity structure shift (or subsequent transaction) is an ownership change--

**(I)** Less than Five Percent (5%) Shareholders.--Clause (i) shall be applied separately with respect to each group of shareholders (immediately before such equity structure shift) of each corporation which was a party to the reorganization involved in such equity structure shift.

**(II) Acquisitions of Stock.--** Unless a different proportion is established, acquisitions of stock after such equity structure shift shall be treated as being made proportionately from all shareholders immediately before such acquisition.

**(iii) Coordination with Other Owner Shifts.--**Except as provided in regulations, rules similar to the rules of clause (ii) shall apply in determining whether there has been an owner shift involving a five percent (5%) shareholder and whether such shift (or subsequent transaction) results in an ownership change.

**(iv) Treatment of Worthless Stock.--**If any stock held by a fifty percent (50%) shareholder is treated by such shareholder as becoming worthless during any taxable year of such shareholder and such stock is held by such shareholder as of the close of such taxable year, for purposes of determining whether an ownership change occurs after the close of such taxable year, such shareholder--

**(I)** shall be treated as having acquired such stock on the first day of his/her first succeeding taxable year, and

**(II)** shall not be treated as having owned such stock during any prior period.

**(v)** For purposes of clause (iv), the term "fifty percent (50%) shareholder" means any person owning fifty percent (50%) or more of the stock of the corporation at any time during the three (3) year period ending on the last day of the taxable year with respect to which the stock was so treated.

**(7) Testing Period.--** For purposes of this section--

**(A) Three (3)-year Period.--** Except as otherwise provided in this section, the testing period is the three (3) year period ending on the day of any owner shift involving a five percent (5%) shareholder or equity structure shift.

**(B) Shorter Period where there has been Recent Ownership Change.--**If there has been an ownership change under this section, the testing period for determining whether a second ownership change has occurred shall not begin before the first day following the change date for such earlier ownership change.

**(C) Shorter Period where all Losses Arise after the three (3) year Period Begins.--**The testing period shall not begin before the earlier of the first day of the first taxable year from which there is a carry forward of a loss or of an excess credit to the first post-change year or the taxable year in which the transaction being tested occurs.

**(8) Change Date.--** For purposes of this section, the change date is--

**(A)** in the case where the last component of an ownership change is an owner shift involving a five percent (5%) shareholder, the date on which such shift occurs, and

**(B)** in the case where the last component of an ownership change is an equity structure shift, the date of the reorganization.

**(9) Definitions and Special Rules.--**For purposes of this section--

**(A) Loss Corporation.--** The term "loss corporation" means a corporation entitled to use a net operating loss carryforward or having a net operating loss for the taxable year in which the ownership change occurs.

**(B) Old Loss Corporation.--** The term "old loss corporation" means any corporation--

**(i)** with respect to which there is an ownership change, and

**(ii)** which (before the ownership change) was a loss corporation.

**(C) New Loss Corporation.--** The term "new loss corporation" means a corporation which (after an ownership change) is a loss corporation. Nothing in this Section shall be treated as implying that the same corporation may not be both the old loss corporation and the new loss corporation.

**(D) Taxable Income.--** Taxable income shall be computed with the modifications set forth in Section 1033.14(d).

**(E) Value.--** The term "value" means fair market value.

**(F) Rules Relating to Stock.--**

(i) **Preferred Stock.--** Except as provided in regulations and paragraph (4), the term "stock" means stock other than stock--

(I) not entitled to vote,

(II) limited and preferred as to dividends and does not participate in corporate growth to any significant extent,

(III) has redemption and liquidation rights which do not exceed the issue price of such stock, and

(IV) not convertible into another class of stock.

(ii) **Treatment of Certain Rights, etc.--**The Secretary shall prescribe such regulations as may be necessary--

(I) to treat options, contracts to acquire stock, convertible debt interests, and other similar interests as stock, and

(II) to treat stock as not stock.

(iii) **Determinations on Basis of Value.--**Determinations of the percentage of stock of any corporation held by any person shall be made on the basis of value.

(G) Five Percent (5%) Shareholder.--The term "five percent (5%) shareholder" means any person holding five percent (5%) or more of the stock of the corporation at any time during the testing period.

(10) **Certain Additional Operating Rules.--**For purposes of this section--

(A) **Certain Capital Contributions Not Taken into Account.--**

(i) **In General.--** Any capital contribution received by an old loss corporation as part of a plan a principal purpose of which is to avoid or increase any limitation under this section shall not be taken into account for purposes of this section.

(ii) **Certain Contributions Treated as Part of Plan.--**For purposes of clause (i), any capital contribution made during the two (2) year period ending on the change date shall, except as provided in regulations, be treated as part of a plan described in clause (i).

(B) **Ordering Rules for Application of Section.--**

(i) **Coordination with Section 1033.14(b)(1) Carryover Rules.--**In the case of any pre-change loss for any taxable year (hereinafter in this subparagraph referred to as the "loss year") subject to limitation under this section, for purposes of determining under Section 1033.14(b)(1) the amount of such loss which may be carried to any taxable year, taxable income for any taxable year shall be treated as not greater than--

(I) the limitation described in paragraph (2) for such taxable year, reduced by

(II) the unused pre-change losses for taxable years preceding the loss year.

(ii) **Ordering rule for losses carried from same taxable year.--**In any case in which--

(I) a pre-change loss of a loss corporation for any taxable year is subject to the limitation described in paragraph (2), and

(II) a net operating loss of such corporation from such taxable year is not subject to such limitation, taxable income shall be treated as having been offset first by the loss subject to such limitation.

(C) **Operating Rules Relating to Ownership of Stock.--**

**(i) Constructive Ownership.--** Section 1033.17(b)(2) shall apply in determining ownership of stock with the exceptions and modifications as prescribed by the Secretary through regulations.

**(ii)** Stock acquired by reason of death, gift, divorce, separation, etc. If.--

**(I)** the basis of any stock in the hands of any person is determined

    **a.** under Section 1034.02(a)(2),

    **b.** under Section 1034.02(a)(5), or

    **c.** under Section 1034.04(b)(7),

**(II)** stock is received by any person in satisfaction of a right to receive a pecuniary bequest, or

**(III)** stock is acquired by a person pursuant to any divorce or separation instrument (within the meaning of Section 1032.02(a)(2)(B)), such person shall be treated as owning such stock during the period such stock was owned by the person from whom it was acquired.

**(iii) Certain changes in percentage ownership which are attributable to fluctuations in value not taken into account.--**Except as provided in regulations, any change in proportionate ownership which is attributable solely to fluctuations in the relative fair market values of different classes of stock shall not be taken into account.

**(D) Reduction in Value where Substantial Nonbusiness Assets.--**

**(i) In General.--** If, immediately after an ownership change, the new loss corporation has substantial nonbusiness assets, the value of the old loss corporation shall be reduced by the excess (if any) of--

**(I)** the fair market value of the nonbusiness assets of the old loss corporation, over

**(II)** the nonbusiness asset share of indebtedness for which such corporation is liable.

**(ii) Corporations Having Substantial Nonbusiness Assets.--**For purposes of clause (i), the old loss corporation shall be treated as having substantial nonbusiness assets if at least one-third (1/3) of the value of the total assets of such corporation consists of nonbusiness assets.

**(iii) Nonbusiness Assets.--** For purposes of this paragraph, the term "nonbusiness assets" means assets held for investment.

**(iv) Nonbusiness Asset Share.--**For purposes of this paragraph, the nonbusiness asset share of the indebtedness of the corporation is an amount which bears the same ratio to such indebtedness as--

**(I)** the fair market value of the nonbusiness assets of the corporation, bears to

**(II)** the fair market value of all assets of such corporation.

**(v) Treatment of Subsidiaries.--**For purposes of this paragraph, stock and securities in any subsidiary corporation shall be disregarded and the parent corporation shall be deemed to own its ratable share of the subsidiary's assets. For purposes of the preceding sentence, a corporation shall be treated as a subsidiary if the parent corporation owns fifty percent (50%) or more of the combined voting power of all classes of stock entitled to vote, and fifty percent (50%) or more of the total value of shares of all classes of stock.

**(E) Coordination with Alternative Minimum Tax.--**The Secretary shall by regulation provide for the application of this section to the alternative minimum tax net operating loss deduction under Section 1022.04(d).

**(F) Predecessor and Successor Entities.--**Except as provided in regulations, any entity and any predecessor or successor entities of such entity shall be treated as one entity.

**Section 1034.05.-- Payment to Dealer in Dealer's Contract Cancellation.--**

Amounts paid to a dealer, by its principal or grantor, on account of a dealer's contract cancellation (if the dealer has a substantial capital investment in the dealership) shall be considered as amounts received in exchange for such agreement.

**Section 1034.06.-- Certain Stock Purchases Treated as Asset Acquisitions.--**

(a) **General Rule.--** For purposes of this Subtitle, if a purchasing corporation makes an election under this Section (or is treated under subsection (d) of this Section as having made such an election), then, in the case of any qualified stock purchase, the target corporation--

    (1) shall be treated as having sold all of its assets at the close of the acquisition date at fair market value in a single transaction, and

    (2) shall be treated as a new corporation which purchased all of the assets referred to in paragraph (1) as of the beginning of the day after the acquisition date.

(b) **Basis of Assets After Deemed Purchase.--**

    (1) **In General.--** For purposes of subsection (a), the assets of the target corporation shall be treated as purchased for an amount equal to the sum of--

        (A) the grossed-up basis of the recently purchased stock, as determined in paragraph (4) of this subsection, and

        (B) the basis of the nonrecently purchased stock.

    (2) **Adjustment for Liabilities and Other Relevant Items.--**The amount described in paragraph (1) shall be adjusted under regulations prescribed by the Secretary for liabilities of the target corporation and other relevant items.

    (3) **Election to Step-up the Basis of Certain Target Stock.--**

        (A) **In General.--** Under regulations prescribed by the Secretary, the basis of the stock described in subsection (b)(1)(B) shall be the basis amount determined under subparagraph (B) of this paragraph if the purchasing corporation makes an election to recognize gain as if such stock were sold on the acquisition date for an amount equal to the basis amount determined under subparagraph (B).

        (B) **Determination of Basis Amount.--**For purposes of subparagraph (A), the basis amount determined under this subparagraph shall be an amount equal to the grossed-up basis of the stock described under subparagraph (A) of paragraph (1) multiplied by a fraction--

            (i) the numerator of which is the percentage of stock (by value) described in subsection (b)(1)(B), and

            (ii) the denominator of which is one hundred percent (100%) minus the percentage referred to in clause (i).

    (4) **Grossed-up Basis.--** For purposes of paragraph (1), the grossed-up basis shall be an amount equal to the basis of the stock described in subsection (b)(1)(A), multiplied by a fraction--

        (A) the numerator of which is one hundred percent (100%), minus the percentage of stock (by value) described in subsection (b)(1)(B), and

        (B) the denominator of which is the percentage of stock (by value) described in subsection (b)(1)(A).

    (5) **Allocation of Basis.--** The amount determined under paragraphs (1) and (2) shall be allocated among the assets of the target corporation in accordance with the regulations prescribed by the Secretary.

(6) **Definitions of Recently Purchased Stock and Nonrecently Purchased Stock.--**For purposes of this subsection--

    (A) **Recently Purchased Stock.--**The term "recently purchased stock" means any stock in the target corporation which is held by the purchasing corporation on the acquisition date and which was purchased by such corporation during the applicable period.

    (B) **Nonrecently Purchased Stock.--**The term "nonrecently purchased stock" means any stock in the target corporation which is held by the purchasing corporation on the acquisition date and which is not recently purchased stock.

(c) **Purchasing Corporation, Target Corporation, and Qualified Stock Purchase Defined.--**For purposes of this section--

    (1) **Purchasing Corporation.--** The term "purchasing corporation" means any corporation which makes a qualified stock purchase of stock of another corporation.

    (2) **Target Corporation.--** The term "target corporation" means any corporation the stock of which is acquired by another corporation in a qualified stock purchase.

    (3) **Qualified Stock Purchase.--**The term "qualified stock purchase" means any transaction or series of transactions in which stock with at least eighty percent (80%) of the total combined voting power of the stock entitled to vote of the target corporation, and at least eighty percent (80%) of the total value of the stock of such corporation is acquired by another corporation by purchase during the applicable period.

(d) **Deemed Election Where Purchasing Corporation Acquires Asset of Target Corporation.--**

    (1) **In General.--** A purchasing corporation shall be treated as having made an election under this section with respect to any target corporation if, at any time during the consistency period, the purchasing corporation acquires any asset of the target corporation (or a target affiliate).

    (2) **Exceptions.--** Paragraph (1) shall not apply with respect to any acquisition by the purchasing corporation if--

        (A) such acquisition is pursuant to a sale by the target corporation (or the target affiliate) in the ordinary course of its trade or business,

        (B) the basis of the property acquired is determined (wholly) by reference to the adjusted basis of such property in the hands of the person from whom acquired,

        (C) such acquisition was before July 1, 1995, or

        (D) such acquisition is described in regulations prescribed by the Secretary and meets such conditions as such regulations may provide.

    (3) **Special Rules.--** Whenever necessary to carry out the purpose of this subsection and subsection (e), the Secretary may treat stock acquisitions which are pursuant to a plan and in which stock with at least eighty percent (80%) of the total combined voting power of all the classes of stock entitled to vote of a target corporation, and at least eighty percent (80%) of the total value of all the classes of stock of such corporation is acquired as a qualified stock purchase.

(e) **Consistency Required for all Stock Acquisitions from Same Affiliated Group.--**If a purchasing corporation makes qualified stock purchases with respect to the target corporation and also makes a qualified stock purchase with respect to one or more target affiliates during any consistency period, then (except as otherwise provided in subsection (d))--

    (1) any election under this section with respect to the first qualified stock purchase shall apply to each other such purchase, and

    (2) no election may be made under this section with respect to the second or subsequent qualified stock purchase if such an election was not made with respect to the first such purchase.

2011 PR H.B. 3070

**(f) Election.--**

    **(1) Date.--** Except as otherwise provided in regulations, an election under this section shall be made not later than the fifteenth (15th) day of the ninth (9th) month beginning after the month in which the acquisition date occurs.

    **(2) Manner.--** An election by the purchasing corporation under this section shall be made in such manner as the Secretary may prescribe by regulations.

    **(3) Election Irrevocable.--** An election by a purchasing corporation under this section, once made, shall be irrevocable.

**(g) Definitions and Special Rules.--**

    **(1) Applicable Period.--** The term "applicable period" means the 12-month period beginning with the date of the first acquisition by purchase of stock included in a qualified stock purchase. No applicable period shall begin before July 1, 1995.

    **(2) Acquisition Date.--** The term "acquisition date" means, with respect to any corporation, the first day on which there is a qualified stock purchase with respect to the stock of such corporation.

    **(3) Purchase.--**

        **(A) In General.--** The term "purchase" means any acquisition of stock, but only if--

            **(i)** the basis of the stock in the hands of the purchasing corporation is not determined,

                **(I)** in whole or in part by reference to the adjusted basis of such stock in the hands of the person from whom acquired, or

                **(II)** under Sections 1034.02(a)(2), 1034.02(a)(4) or 1034.02(a)(5).

            **(ii)** the stock is not acquired in an exchange to which Sections 1034.04(b)(3), 1034.04(b)(4), 1034.04(b)(5), 1034.04(l) or other transaction described in regulations in which the transferor does not recognize the entire amount of the gain or loss realized on the transaction, and

            **(iii)** the stock is not acquired from a related corporation.

        **(B) Deemed Purchase Under Subsection (a)(2).--**The term "purchase" includes any deemed purchase under subsection (a)(2).

        **(C) Certain Stock Acquisitions from Related Corporations.--**

            **(i) In General.--** Clause (iii) of subparagraph (A) shall not apply to an acquisition of stock from a related corporation if at least fifty percent (50%) in value of the stock of such related corporation was acquired by purchase (within the meaning of subparagraphs (A) and (B)).

            **(ii) Certain Distributions.--** Clause (i) of subparagraph (A) shall not apply to an acquisition of stock described in clause (i) of this subparagraph if the corporation acquiring such stock--

                **(I)** made a qualified stock purchase of stock of the related corporation, and

                **(II)** made an election under this section (or is treated under subsection (d) as having made such an election) with respect to such qualified stock purchase.

    **(4) Consistency Period.--**

        **(A) In General.--** Except as provided in subparagraph (B), the term "consistency period" means the period consisting of--

            **(i)** the one-year period before the beginning of the applicable period,

            **(ii)** the applicable period, and

            **(iii)** the one-year period beginning on the day after the acquisition date.

**(B) Extension of the Consistency Period.--**The period referred to in subparagraph (A) shall also include any period during which the Secretary determines that there was in effect a plan to make a qualified stock purchase plus one or more other qualified stock purchases (or asset acquisitions described in subsection (d)) with respect to the target corporation or any target affiliate.

**(5) Related Person.--** The term "related person" shall have the same meaning used in Section 1010.05.

**(6) Related Corporation.--** The term "related corporation" means a corporation that is either related party or a member of a controlled group as defined in Sections 1010.05 and 1010.04, respectively.

**(7) Coordination with Estimated Tax Rules.--**The tax imposed on the gain realized on the sale described in subsection (a)(1) shall not be considered for purposes of Section 1061.23 of this Subtitle.

**(8) Foreign Corporations.--** Except as provided in regulations, the term "target corporation" and the term "target affiliate" shall not include foreign corporations.

**(9) Scope of this Section.--** The rules of this section shall only apply to such transactions that comply with the provisions of this section. The basis of the property received by a corporation in a distribution in total liquidation of another corporation shall be determined pursuant to the provisions of Section 1034.02(a)(13)(B) regardless of the intention of the distributee at the time, on or after the distribution in liquidation.

## Section 1034.07.-- Loss from Wash Sales of Stock or Securities.--

**(a)** In the case of any loss claimed to have been sustained from any sale or other disposition of shares of stock or securities where it appears that, within a period beginning thirty (30) days before the date of such sale or disposition and ending thirty (30) days after such date, the taxpayer has acquired by purchase or by an exchange on which the entire amount of gain or loss was recognized by law, or has entered into a contract or option so to acquire, substantially identical stock or securities, then no deduction shall be allowed under Section 1033.05(a)(2) nor such deduction shall be allowed under Section 1033.05(b) unless the claim is made by a corporation, a dealer in stock or securities, with respect to a transaction made in the ordinary course of such business.

**(b)** If the amount of stock or securities acquired or covered by the contract or option to acquire is less than the amount of stock or securities sold or otherwise disposed of, then the particular shares of stock or securities the loss from the sale or other disposition of which is not deductible shall be determined under the rules and regulations prescribed by the Secretary.

**(c)** If the amount of stock or securities acquired or covered by the contract or option to acquire is not less than the amount of stock or securities sold or otherwise disposed of, then the particular shares of stock or securities the acquisition of which or the contract or option to acquire which resulted in the nondeductibility of the loss shall be determined under the rules and regulations prescribed by the Secretary.

## Section 1034.08.-- Amortizable Bond Premium.--

**(a) General Rule.--** In the case of any bond, as defined in subsection (d), the following rules shall apply to the amortizable bond premium determined under subsection (b):

**(1) Taxable Bonds.--** In the case of a bond other than a bond the interest on which is tax-exempt under this Subtitle, the amount of the amortizable bond premium for the taxable year shall be allowed as a deduction.

**(2) Tax-exempt Bonds.--** In the case of any bond the interest on which is tax-exempt under this Subtitle, no deduction shall be allowed for the amortizable bond premium for the taxable year.

**(3)** The adjustment to basis on account of amortizable bond premium, shall be in accordance with Section 1034.02(b)(1)(E).

**(b) Amortizable Bond Premium.--**

(1) **Amount of Bond Premium.--** For purposes of paragraph (2), the amount of bond premium, in the case of the holder of any bond, shall be determined with reference to the amount of the basis for determining loss on sale or exchange of such bond, and with reference to the amount payable on maturity or on earlier call date, with proper adjustments to reflect unamortized bond premium, with respect to the bond, for the period before the date as of which subsection (a) becomes applicable with respect to the taxpayer with respect to such bond.

(2) **Amount Amortizable.--** The amortizable bond premium of the taxable year shall be the amount of the bond premium attributable to such year.

(3) **Method of Determination.--**The determinations required under paragraphs (1) and (2) shall be made--

  (A) using the bond premium amortization basis regularly used by the bond holder, if such method is reasonable;

  (B) in every other case, according to the regulations of the Secretary that set forth reasonable methods for bond premium amortization.

(c) **Election as to Taxable Bonds.--**

(1) **Eligibility to Elect; Bonds with Respect to Which Election Permitted.--**This section shall apply to any taxpayer other than an individual, with respect to bonds the interest on which is not tax exempt, provided that the taxpayer has so elected.

(2) **Manner and Effect of Election.--**The election authorized under this subsection shall be made in accordance with such regulations as the Secretary shall prescribe. If such election is made with respect to any bond described in paragraph (1) of the taxpayer, it shall also apply to all such bonds held by the taxpayer at the beginning of the first taxable year to which the election applies and to all such bonds thereafter acquired by him/her and shall be binding for all subsequent taxable years with respect to all such bonds of the taxpayer, unless, upon request by the taxpayer, the Secretary permits him/her, subject to such conditions as the Secretary deems necessary, to revoke such election.

(d) **Bond Defined.--** For purposes of this section, the term "bond" means any bond, obligation, note, or certificate or other evidence of indebtedness, issued by any corporation and which accrues interest, including any similar obligation issued by a government or political subdivision thereof, with interest coupons or in registered form, but does not include any such obligation which constitutes stock in trade of the taxpayer or any such obligation of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or any such obligation held by the taxpayer primarily for sale to customers in the ordinary course of his/her trade or business.

## Section 1034.09.-- Distributions to Corporations.--

(a) **Dividend Defined.--**

(1) For purposes of this Subtitle (except insurance company dividends paid to policy holders), the term "dividend" means any distribution of property made by a corporation to its shareholders whether it is money or property,

  (A) out of its earnings or profits accumulated after February 28, 1913, or

  (B) out of its earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

(2) The amount of the distribution in other property which qualifies as a dividend shall not exceed the earnings or profits of the corporation without regard to the amount of the basis of the property in the hands of the corporation. To determine the amount of a distribution refer to subsection (j) of this Section.

(b) **Origin of Distributions.--**

2011 PR H.B. 3070

**(1) In General.--** For purposes of this Subtitle, any distribution is made out of earnings and profits to the extent thereof, and out of the most recently accumulated earnings and profits. Any accumulated earnings or profits or increase in the value of the property accumulated before March 1, 1913 may be distributed exempt from tax after the accumulated earnings and profits after February 28, 1913 have been distributed, however any of such exempt distributions shall be applied against or shall reduce the adjusted basis of the stock as established in Section 1034.02.

**(2) Special Rule for Industrial Development Income Distributions.--**The distribution of industrial development income shall be deemed to be made pursuant to the provisions of subsection (d) of Section 3 of Act No. 73 of May 28, 2008 [13 L.P.R.A. § 8422], or any applicable provision of any previous or subsequent similar law, except that for purposes of this Subtitle, the distributions of such income shall be deemed made pursuant to the provisions of Section 1092.01(a)(2)(E).

**(c) Distributions in Liquidation.--**The amounts distributed in a total liquidation of a corporation shall be treated as full payment in exchange for stock, and the amounts distributed in a partial liquidation of a corporation shall be treated as a partial or full payment in exchange for stock. The distribuee's gain or loss resulting from such exchange shall be determined under Section 1034.03, however, it shall be recognized only to the extent established in Section 1034.04. In the case of amounts distributed whether before January 1, 1954, or on or after such date, in a partial liquidation (other than a distribution to which the provisions of subsection (h) shall apply), the portion of such distribution that is duly attributable to the earnings and profits shall be an amount not exceeding the ratable amount of earnings and profits accumulated after February 28, 1913 that are attributable to the stock cancelled or redeemed in the partial liquidation.

**(d) Other Capital Distributions.--**If any distribution made by a corporation to its shareholders does not originate from the increase accrued in the value of a property, accumulated before March 1, 1913, and were not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of stock set forth in Section 1034.02, and if it were in excess of such basis, such excess shall be attributable in the same manner that a gain in a sale or transfer of property. This subsection shall not apply to a liquidation in partial or total distribution, or a distribution that, under subsection (f)(1), were not treated as a dividend, whether or not it was a dividend.

**(e) Distributions in Redemption of Stock to Pay Estate Tax.--**

**(1) General Rule.--** A distribution of property to a shareholder by a corporation in redemption of part or all of the stock of such corporation which (for estate tax purposes) is included in determining the gross estate of the decedent, to the extent that the amount of such distribution does not exceed the sum of:

**(A)** The estate tax (including any interest collected as par of such taxes) imposed because of the decedent's death, and

**(B)** The amount of funeral and administration expenses allowable as deductions to the estate under Section 2023.03 of Subtitle B (or under Section 2030.06 of said Subtitle, in the case of the estate of a decedent nonresident of Puerto Rico), shall be treated as a distribution in full payment in exchange for the stock so redeemed.

**(2) Limitations on application of paragraph (1).--**

**(A) Period for Distribution.--**Paragraph (1) shall apply only to the amounts distributed after the death of the decedent, and

**(i)** within the period of limitations established in Section 6010.05(a) of Subtitle F for estate tax assessment (determined without the application of any other provision other that Section 6010.05(a) of such Subtitle) or within ninety (90) days after the expiration of such period, or

**(ii)** if a petition for redetermination of a deficiency in such estate tax has been filed with the Court of First Instance within the time prescribed in Section 6010.02 of Subtitle F, any time before the expiration of sixty (60) days after the decision of the Court of First Instance becomes final, or

(iii) if an election for extension has been made for the payment of the tax under Section 2051.09 of Subtitle B, and if the time prescribed by this clause expires at a later date than the time prescribed by clause (ii), within the time determined under Section 2051.09 of the referred Subtitle for the payment of the tax.

**(B) Relation of Stock to the Decedent's Estate.--**

**(i) In General.--** Paragraph (1) shall apply to a distribution by a corporation only if the value (for purposes of the tax imposed in Subtitle B) of all of the stock of such corporation which is included in determining the value of the decedent's gross estate exceeds thirty-five percent (35%) of the excess of the value of the gross estate of the decedent, over the sum of the amounts allowable as a deduction under sections 2023.03 and 2030.06 of Subtitle B.

**(ii) Special Rule for Stock of Two or More Corporations.--**For purposes of clause (i), stock of two or more corporations, with respect to each of which there is included in determining the value of the decedent's gross estate more than twenty percent (20%) in value of the outstanding stock, shall be treated as the stock of a single corporation. For purposes of the twenty percent (20%) requirement of the preceding sentence, stock which, at the decedent's death, represents the surviving spouse's interest in property held by the decedent and the surviving spouse as community property shall be treated as having been included in determining the value of the decedent's gross estate.

**(C) Relationship of Shareholder to Estate Tax.--**Paragraph (1) shall apply to a distribution by a corporation only to the extent that the interest of the shareholder is reduced directly (or through a binding obligation to contribute) by any payment of an amount described in subparagraph (A) or (B) of paragraph (1).

**(D) Additional Requirements for Distributions Made More Than Four (4) Years after Decedent's Death.--**In the case of amounts distributed more than four (4) years after the date of the decedent's death, paragraph (1) shall apply to a distribution by a corporation only to the extent of the lesser of-

**(i)** the aggregate of the amounts referred to in subparagraph (A) or (B) of paragraph (1) which remained unpaid immediately before the distribution, or

**(ii)** the aggregate of the amounts referred to in subparagraph (A) or (B) of paragraph (1) which are paid during the one (1)-year period beginning on the date of such distribution.

**(f) Dividends in Stock.--**

**(1) General Rule.--** A distribution made by a corporation to its shareholders in capital stock or rights to acquire capital stock shall not be treated as a dividend to the extent it does not constitute income for the shareholder within the meaning of the Sixteenth Amendment of the Constitution of the United States.

**(2) Shareholders' Form of Payment Election.--**If a distribution by a corporation is, by election from any of its shareholders, made before or after the filing thereof, payable,

**(A)** in capital stock or rights to acquire capital stock of a class that if distributed without election shall be tax exempt under paragraph (1), or

**(B)** in money or any other property (including capital stock or rights to acquire stock that if distributed without election shall not be tax exempt under paragraph (1)).

then, the distribution shall constitute a taxable dividend held by any and all shareholders regardless of the form of payment.

**(g) Redemption of Stock.--** If a corporation cancels or redeems its stock (whether or not such stocks were issued as a stock dividend) in such time and manner as to make all or part of the distribution and the cancellation or redemption essentially equivalent to the distribution of a taxable dividend, the amount so

distributed in redemption or cancellation of the stock shall be treated as a taxable dividend to the extent that such distribution represents a distribution of earnings or profits accumulated after February 28, 1913.

**(h) Effect of the Distribution in Stock on Earnings and Profits.--**The distribution, if it were made before, on or after January 1, 1954, to a distribute by or on behalf of a corporation of its stock or securities, of stock or securities in another corporation or of property, or money, shall not be considered a distribution of the earnings and profits of any corporation--

**(1)** if no gain to such distributee from the receipt of such stock or securities, property or money, was recognized under this Subtitle; or

**(2)** if the distribution was not subject to tax in the hands of such distributee because the same did not constitute income for the distributee within the meaning of the Sixteenth Amendment of the Constitution of the United States or because it was exempt under subsection (f) or under any appropriate provision of a previous income tax law.

As used in this section, the term "stock and securities" includes rights to acquire stock and securities.

**(i) Partial Liquidation Defined.--**As used in this section, the term "amounts distributed in partial liquidation" means a distribution by a corporation in total cancellation or redemption of a part of its stock or one of a series of distributions in complete cancellation or redemption of all or one part of its stock.

**(j) Assessment of Distributions.--**For purposes of this Section, the amount of any distribution shall be the sum of the money received with the fair market value on the date of the distribution of any other property received. The fair market value of any other property received shall be reduced by any debt or obligation of the corporation assumed by the shareholder with respect to such distribution.

**(k) Effect on Earnings and Profits of Gain or Loss and of Receipt of Tax-free Distributions.--**

**(1)** the gain or loss realized from the sale or other disposition (after February 28, 1913) of property by a corporation--

**(A)** for the purpose of the computation of the earnings and profits of the corporation, shall, except as provided in subparagraph (B) be determined by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain, except that no regard shall be had to the value of the property as of March 1, 1913; but

**(B)** for purposes of the computation of the earnings and profits of the corporation for any period beginning after February 28, 1913, shall be determined by using the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain.

**(2)** Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing taxable income under the law applicable to the year in which such sale or disposition was made. Where, in determining the adjusted basis used in computing such realized gain or loss, the adjustment to the basis differs from the adjustment proper for the purpose of determining earnings and profits,

then the latter adjustment shall be used in determining the increase or decrease above provided.

**(3)** For purposes of this subsection, a loss with respect to which a deduction is disallowed under Section 1034.07 or the corresponding provision of prior income tax act, shall not be deemed to be recognized.

**(4)** Where a corporation receives (after February 28, 1913) a distribution from a second corporation which under the law applicable to the year in which the distribution was made was not a taxable dividend to the shareholders of the second corporation, the amount of such distribution shall not increase the earnings and profits of the first corporation in the following cases:

**(A)** no such increase shall be made in respect of the part of such distribution which under such law is directly applied in reduction of the basis of the stock in respect of which the distribution was made; and

(B) no such increase shall be made if under such law the distribution causes the basis of the stock in respect of which the distribution was made to be allocated between the stock and the property received.

**(l) Earnings and Profits.--Increase in Value Accrued Before March 1, 1913.--**

**(1)** If any increase or decrease in the earnings and profits for any period beginning after February 28, 1913, with respect to any matter would be different had the adjusted basis of the property involved been determined without regard to its March 1, 1913, value, then, except as provided in paragraph (2), an increase properly reflecting such difference shall be made in that part of the earnings and profits consisting of increase in value of property accrued before March 1, 1913.

**(2)** If the application of subsection (k) to a sale or other disposition after February 28, 1913, results in a loss which is to be applied in decrease of earnings and profits for any period beginning after February 28, 1913, then, notwithstanding subsection (k) and in lieu of the rule provided in paragraph (1) of this subsection, the amount of such loss so to be applied shall be reduced by the amount, if any, by which the adjusted basis of the property used in determining the loss exceeds the adjusted basis computed without regard to the value of the property on March 1, 1913, and if such amount so applied in reduction of the decrease exceeds such loss, the excess over such loss shall increase that part of the earnings and profits consisting of increase in value of property accrued before March 1, 1913.

**(m)  Earnings and Profits.--Depreciation Adjustment.--**Regarding any depreciation adjustment, computing of the earnings and profits of a corporation shall be made only with respect to the straight line method of depreciation established in Section 1033.07, and regardless of any election by, or deduction of flexible depreciation under Section 1040.11, or accelerated depreciation under Section 1040.12, or special deduction prescribed by Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," and any prior or subsequent similar law, or the use of any accelerated depreciation method or exception to the credit of capital accounts allowed by special fiscal incentive laws.

**(n)  Effect on Earnings and Profits in Distributions of Money or Other Property.--**

**(1)  General Rule.--** A corporation that makes a distribution of money or other property shall reduce its earnings and profits (to the available extent thereof) by the sum of the distributed money and the adjusted basis of other distributed property (or its fair market value if paragraph (2) applies).

**(2)  Distribution of Appreciated Property.--**A corporation that makes a distribution of property subject to Section 1034.04(p) shall increase its earnings and profits by the amount of the gain recognized under such Section.

**(o)  Redemption through Use of Related Corporations.--**

**(1)  Acquisition by Related Corporation (other than a subsidiary).--**For purposes of subsections (c) and (e), if--

**(A)** one (1) or more persons are in control, as defined in Section 1034.04(h)(2), of each of the two (2) corporations, and

**(B)** in return for property, one of the corporations acquires stock in the other corporation from the person or persons described in subparagraph (A), then, except as provided in paragraph (2), such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock.

**(2)  Acquisition by Subsidiary.--**For purposes of subsections (c) and (e), if--

**(A)** in return for property, one corporation acquires from a shareholder of another corporation stock in such other corporation, and

**(B)** the issuing corporation controls, as defined in Section 1034.04(h)(2), the acquiring corporation, then such property shall be treated as a distribution in redemption of the stock of the issuing corporation.

**SUBCHAPTER E --** INCOME SOURCE RULES

**Section 1035.01.-- Income from Sources Within Puerto Rico.--**

(a) **Gross Income from Sources Within Puerto Rico.--**The following items of gross income shall be treated as income from sources within the Puerto Rico:

(1) **Interest.--** Interest on bonds, notes, or other interest-bearing obligations of resident persons, whether natural or juridical, not including:

(A) interest on deposits of persons engaged in the banking business paid to persons not engaged in the active conduct of a business in Puerto Rico,

(B) interest on mortgage loans executed before July 1, 1995 that are guaranteed by real property located in Puerto Rico, paid to persons not engaged in the active conduct of a business in Puerto Rico,

(C) interest received from a foreign corporation engaged in the active conduct of a trade or business in Puerto Rico, or a domestic corporation when the payer of the interest is not a person engaged in the commercial banking business and proves to the satisfaction of the Secretary that less than twenty percent (20%) of the payer's gross income has been derived from sources within Puerto Rico, as determined under the provisions of this Section for the three (3) year period ending with the close of the payer's taxable year preceding the payment of such interest or by such portion of said term that applies.

(D) income derived from the issuance of banker's acceptances by a foreign central bank,

(E) interest on loans, obligations of originating companies guaranteed by such loans, as well as shares on such loans originated by such companies, made to small businesses provided that these loans are guaranteed by the Government Development Bank for Puerto Rico, the Government Investment Company or the Commercial Development Company, and are paid to a person not engaged in a trade or business in Puerto Rico.

(i) For purposes of this subparagraph (E), "small business" means any business qualified as such under the provisions of the Federal Law known as the "Small Business Investment Act of 1958," as amended.

(ii) It shall qualify as an originating company under this subsection:

(I) **any entity created under Section 301-**

(d) (MESBIC) of the Federal Law, known as the "Small Business Investment Act of 1958," as amended, authorized by the Small Business Administration (SBA) to grant loans to small business, as such term is defined in this Act, or

(II) any company authorized to grant loans to small business under Section 120-4(a) and (b) of the Regulations of the law known as the "Small Business Investment Act of 1958."

(F) interests or finance charges on loans made to International Banking Entities to which a license has been issued under Act No. 52 of August 11, 1989.

(G) interests on bonds, notes, or other interest-bearing obligation or obligations that accrue interests from individuals who are United States citizens nonresidents of Puerto Rico.

(2) **Dividends and Earnings.--** The amount received as dividends--

(A) from a domestic corporation other than a corporation with less than twenty percent (20%) of its gross income derived from sources within Puerto Rico proved to the satisfaction of the Secretary, as determined under the provisions of this Section, for a three (3)-year period ending with the close of its taxable year preceding the declaration of such dividends, or for

such part of such period as the corporation has been in existence, or was effectively connected, or

**(B)** from a foreign corporation unless less than twenty percent (20%) of the gross income of such foreign corporation for the three (3)-year period ending with the close of its taxable year preceding the declaration of such dividends, or for such part of such period as the corporation has been in existence, was effectively connected or treated as effectively connected with the active conduct of a trade or business in Puerto Rico, except for income described in Section 1092.02, as determined under the provisions of this Section, but only in an amount which bears the same ratio to such dividends or benefits as the gross income of the corporation for such period which was effectively connected or treated as effectively connected with the active conduct of a trade or business in Puerto Rico other than income described in Section 1092.02 to its gross income from all sources; but dividends from a foreign corporation shall, for purposes of Section 1051.01, be treated as income from sources without Puerto Rico.

**(3)   Personal Services.--** Compensation for labor or personal services performed in Puerto Rico, but, in the case the labor or services are performed by a nonresident alien individual temporarily present in Puerto Rico for a period or periods not exceeding a total of ninety (90) days during the taxable year (if such compensation does not exceed three thousand dollars ($ 3,000) in the aggregate), the compensation is for labor or services performed as an employee of or under a contract with, a nonresident alien, foreign partnership, or foreign corporation, not engaged in trade or business within Puerto Rico shall not be deemed to be income from sources within Puerto Rico.

**(4)   Rentals and Royalties.--** Rentals or royalties from property located in Puerto Rico or from any interest in such property, including rentals or royalties for the use of or for the privilege of using in Puerto Rico patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, broadcasting rights for movies, television and radio programs in Puerto Rico, and other like property.

**(5)   Sale of Real Property.--** Gains, profits, and income from the sale of real property located in Puerto Rico.

**(6)   Sale of Personal Property.--**Gains, profits, and income from the sale of personal property shall be subject to the application of the rules provided in Sections 1035.03, 1035.04, and 1035.05.

**(7)   Distributions in Liquidation.--The amount received as distribution in total or partial liquidation.--**

**(A)** from a domestic corporation, or

**(B)** from a foreign corporation except that less than twenty percent (20%) of the gross income of said foreign corporation for the three (3)-year period ending with the close of its taxable year preceding the distributions in liquidation, or for such part of said period during which the corporation has existed, was effectively connected or treated as effectively connected with the active conduct of a trade or business in Puerto Rico, except for income described in Section 1092.02, but only in an amount which bears the same ratio to such distributions in liquidation as the gross income of the corporation for such period which was effectively connected or treated as effectively connected with the active conduct of a trade or business in Puerto Rico other than income described in Section 1092.02 to its gross income from all sources.

**(8)   Insurance Premiums.--** Income derived from an insurance contract securing risks located in Puerto Rico, except income on account of premiums paid by life insurance derived by a person not engaged in a trade or business in Puerto Rico.

**(b) Net Income from Sources within Puerto Rico.--**Any expense, loss, and other deduction properly apportioned or allocated thereto and a ratable part of any expense, loss or other deduction that may not be definitely allocated to any other item or class of gross income shall be deducted from the gross income items specified in subsection

**(a)** this Section. The remainder, if any, shall be totally included as a net income from sources within Puerto Rico. The deduction of Section 1033.15 shall be treated as deductions attributable to any item of gross income.

## Section 1035.02.-- Income from Sources Outside Puerto Rico.--

**(a) Gross Income from Sources Outside Puerto Rico.--**The following gross income items shall be treated as income from sources outside Puerto Rico:

**(1)** Interest not derived from sources within Puerto Rico, as provided in subsection (a)(1) of Section 1035.01;

**(2)** Dividends and benefits not derived from sources within Puerto Rico as provided in subsection (a)(2) of Section 1035.01;

**(3)** Compensation for labor or personal services performed outside Puerto Rico;

**(4)** Rentals or royalties of property located outside Puerto Rico or of any interest on said property, including rentals or royalties for the use of or for the privilege of using outside Puerto Rico patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property;

**(5)** Gains, profit and income from the sale of real property located outside Puerto Rico;

**(6)** Distribution in complete or partial liquidation that are not derived from sources within Puerto Rico, as provided in subsection (a)(7) of Section 1035.01; and

**(7) Insurance Premiums.--** Income derived from an insurance contract securing risks located outside Puerto Rico.

**(b) Net Income from Sources Outside Puerto Rico.--**Any expense, loss, and other deduction properly apportioned or allocated thereto and a ratable part of any expense, loss or other deduction that may not be definitely allocated to any other item or class of gross income shall be deducted from the gross income items specified in subsection (a) this Section. The remainder, if any, shall be totally included as a net income from sources within Puerto Rico.

## Section 1035.03.-- Sale or Exchange of Personal Property.--

**(a)** Except as provided in this Section or Sections 1035.04 and 1035.05, any gain, profit or income derived from the sale or exchange or personal property,

**(1)** by a domestic corporation or partnership or by an individual resident of Puerto Rico shall constitute income from sources within Puerto Rico; and

**(2)** by a foreign corporation or partnership or by nonresident alien individual of Puerto Rico shall constitute income from sources outside Puerto Rico.

**(b) Exception for Inventory Property.--**In the case of personal inventory property in the hands of the seller,

**(1)** this section shall not apply,

**(2)** the source of any gain, profit or income derived from its sale or exchange shall be determined pursuant to Sections 1035.04 and 1035.05.

**(c) Exception for Depreciable Property.--**In the case of depreciable property, any gain, profit or income derived from its sale or exchange shall be attributable to sources within and outside Puerto Rico as follows:

**(1)** such part of the gain, profit or income which bears the same ratio to the aggregate of the gain, profit or income that the allowed depreciation (or allowable) against income from sources within Puerto Rico bears to the total depreciation adjustment established in Section 1034.02(b)(1)(B) of this Code, shall be treated as sources within Puerto Rico; and

**(2)** any portion of the gain, profit or income whose source is not determined under paragraph (1) of this subsection (c) shall be determined under subsection (a).

**(d) Exception for Intangible Property.--**

**(1)** In the case of sale or exchange of intangible property,

**(A)** subsection (a) shall only apply to the extent that payments in consideration of such sale or exchange are not contingent to productivity, use or disposition of the intangible; and

**(B)** to the extent that payments in consideration of such sale or exchange are contingent to the productivity, use and disposition of the intangible, the source of any gain, profit or income shall be determined in the same manner as if such payments were rentals or royalties.

**(2)** For purposes of paragraph (1), the term "intangible property" means any patent, copyright, secret process or formula, goodwill, trademark, trade brand, franchise, or other like property.

**(3)** For purposes of paragraph (1), the source of any payment in consideration of the sale of goodwill shall be determined by reference to the place in which the same was developed.

**(4)** Notwithstanding the provisions of paragraph (1), in the case of intangible property that has been subject to amortization,

**(A)** such part of the gain, profit or income which bears the same ratio to the aggregate of the gain, profit or income that the allowed amortization (or allowable) against income from sources within Puerto Rico bears to the total depreciation adjustment established in Section 1034.02(b)(1)(B) of this Code, shall be treated as sources within Puerto Rico; and

**(B)** any portion of the gain, profit or income whose source is not determined under subparagraph (A) of this paragraph (4) shall be determined under paragraph (1) of this subsection (d).

**(e) Sale or Exchange through Offices or Fixed Places of Business.--**Except in the case of income whose source is determined under subsections (b), (c) or (d)(1)(B), or as provided in Sections 1035.04 and 1035.05, if a Puerto Rico resident maintains an office or other fixed place of business outside Puerto Rico, income from the sale or exchange of personal property attributable to such office or other fixed place of business outside of Puerto Rico shall be treated as income from sources outside Puerto Rico.

**Section 1035.04.-- Income from Sources Partially Within and Partially Outside Puerto Rico.--**

**(a) In General.--**

**(1)** Items of gross income, expenses, loss and deductions other than those specified in Section 1035.01 and 1035.02 shall be allocated or apportioned to sources within or outside Puerto Rico under the rules and regulations prescribed by the Secretary. Where items of gross income are separately allocated to sources within Puerto Rico, they shall be deducted for the purpose of computing the gross income therefrom, the expenses, losses, and other deductions properly apportioned or allocated thereto, and a ratable part of other expenses, losses or other deductions which cannot definitely be allocated to any item or class of gross income. The remainder, if any, shall be included in full as net income from sources within Puerto Rico.

**(2)** In the case of gross income derived from sources partly within and partly outside Puerto Rico, the net income may first be computed by deducting the expenses, losses or other deductions apportioned or allocated thereto, and a ratable part of any expenses, losses or other deductions which cannot definitely be allocated to any item or class of gross income; and the portion of such net income

2011 PR H.B. 3070

attributable to sources within Puerto Rico may be determined by processes or formulas of general apportionment prescribed by the Secretary.

**(3)** Gains, profits and income from transportation and other services rendered partly within and partly outside Puerto Rico as determined under Section 1035.07.

**(4)** Gains, benefits and income from the sale of personal property produced in whole or in part by the taxpayer within, and sold outside Puerto Rico, or produced in whole or in part by the taxpayer outside, and sold within Puerto Rico, shall be treated as derived from sources partly within and partly outside Puerto Rico. Gains, profits and income derived from the acquisition of personal property within, and their sale outside Puerto Rico or from the acquisition of personal property outside and their sale within Puerto Rico shall be treated as completely derived from sources within the country in which such property was sold, except as provided in Section 1035.05.

## Section 1035.05.-- Special Rule on Effectively Connected Income.--

**(a)** **In General.--** For purposes of this Subtitle, to determine the income, gain or loss which shall be treated as effectively connected with the active conduct of a trade or business within Puerto Rico, the rules provided in subsection (f) and the definitions established in subsection (h) of Section 1123 of Act No. 120 of October 31, 1994, a[s] amended, known as the "Puerto Rico Internal Revenue Code of 1994," in effect as of the date of approval of this Code, shall apply, except that any reference in such subsections to specific provisions of Subtitle A of the Puerto Rico Internal Revenue Code of 1994 shall be treated, for purposes of this Code, as references to the similar provisions of Subtitle A of this Code.

## Section 1035.06.-- Special Rule in the Case of International Communications Income.--

**(a)** **Sources Rules.--**

**(1)** **Person of Puerto Rico.--** In the case of any natural or juridical person of Puerto Rico, fifty percent (50%) of any international communications income shall be sourced in Puerto Rico and fifty percent (50%) of such income shall be sourced outside Puerto Rico.

**(2)** **Foreign Persons.--**

**(A)** **In General.--** Except as provided in regulations or subparagraph (B), in the case of a foreign natural or juridical person, any international communications income shall be sourced outside Puerto Rico.

**(B)** **Special Rule.--** In the case of a foreign natural or juridical person who maintains an office or other fixed place of business in Puerto Rico, any international communications income attributable to such office or other fixed place of business shall be sourced in Puerto Rico.

**(b)** **Definitions.--** For purposes of this section, the term "international communications income" includes all income derived from the transmission of communications or data from Puerto Rico to the United States or any foreign country, or from the United States or any foreign country to Puerto Rico.

## Section 1035.07.-- Special Rules in the Case of Transportation Income.--

**(a)** **Transportation Beginning and Ending in Puerto Rico.--**Except as otherwise provided in this Section, all transportation income attributable to transportation which begins and ends in Puerto Rico shall be treated as totally derived from sources within Puerto Rico.

**(b)** **Transportation Having Puerto Rico Connection.--**There shall be treated as from sources in Puerto Rico, fifty percent (50%) of all transportation income attributable to transportation which--

**(1)** is not described in subsection (a), and

**(2)** begins or ends in Puerto Rico.

**(c) Special Rule in the Case of Cruises.--**Gains profits and income derived from the operation of passenger cruise ships by foreign corporations or partnerships shall be treated as income sourced outside Puerto Rico.

**(d) Transportation Income.--** For purposes of this Subchapter E, the term "transportation income" means any gain, profit or income derived from or in connection with

**(1)** the use or hiring (leasing for use by others) of a vessel or aircraft, or

**(2) the performance of services directly related to the use of a vessel or aircraft.**

**(e)** For purposes of the subsection (d), the term "vessel or aircraft" includes any container used in connection with a vessel or aircraft.

## CHAPTER 4 -- ACCOUNTING PERIODS AND METHODS OF ACCOUNTING

**Section 1040.01.-- Period for Computation of Taxable Income.--**

**(a) Computation of Taxable Income.--**Taxable income shall be computed on the basis of the taxpayer's taxable year.

**(b) Taxable Year.--** For purposes of this Subtitle, the term "taxable year" means--

**(1)** the taxpayer's annual accounting period, if it is a calendar year or a fiscal year;

**(2)** the calendar year, if subsection (g) applies; or

**(3)** the period for which the tax return is filed, if a tax return is filed for a period of less than twelve (12) months.

**(c) Annual Accounting Period.--**For purposes of this Subtitle, the term "annual accounting period" means the annual period on the basis of which the taxpayer regularly computes his/her income in keeping his/her books.

**(d) Calendar Year.--** For purposes of this Subtitle, the term "calendar year" means a period of twelve (12) months ending on December 31.

**(e) Fiscal Year.--** For purposes of this Subtitle, the term "fiscal year" means a period of twelve (12) months ending on the last day of any month other than December.

**(f) Taxable Year Consisting of Fifty-two (52) and Fifty-three (53) Weeks.--**

**(1) Election of year consisting of fifty-two (52) and fifty-three (53) weeks.--** A taxpayer who, in keeping his/her books, regularly computes his/her income on the basis of an annual period which varies from fifty-two (52) to fifty-three (53) weeks and ends always on the same day of the week and ends always--

**(A)** on whatever date such same day of the week last occurs in a calendar month, or

**(B)** on whatever date such same day of the week falls which is nearest to the last day of a calendar month, may (in accordance with the regulations prescribed by the Secretary) elect to compute his/her taxable income for purposes of this Subtitle on the basis of such annual period.

**(2)** Special rules for fifty-two (52) to fifty-three (53) weeks taxable year

**(A) Effective Dates.--** In any case in which the effective date or the applicability of any provision of this Subtitle is expressed in terms of taxable years beginning, including, or ending with reference to a specified date which is the first or last day of a month, a taxable year described in paragraph (1) shall be treated--

**(i)** as beginning with the first day of the calendar month beginning nearest to the first day of such taxable year, or

**(ii)** as ending with the last day of the calendar month ending nearest to the last day of such taxable year, as the case may be.

**(B) Change in the Annual Accounting Period.--** In the case of a change from or to a taxable year described in paragraph (1) of this subsection--

**(i)** if such change results in a short period of three hundred fifty-nine (359) days or more, or of less than seven (7) days, Section 1061.24(c) (relating to alternative tax computation) shall not apply;

**(ii)** if such change results in a short period of less than seven (7) days, such short period shall, for purposes of this Section, be added to and deemed a part of the following taxable year; and

**(iii)** if such change results in a short period to which subsection (c) of Section 1061.24 applies, the taxable income for such short period shall be placed on an annual basis for purposes of such subsection by multiplying such income by three hundred and sixty-five (365) and dividing the result by the number of days in the short period, and the tax shall be the same part of the tax computed on the annual basis as the number of days in the short period is of three hundred and sixty-five (365) days.

**(g) No Books Kept; No Accounting Period.--** Except as provided in Section 1061.24 (relating to tax returns for periods of less than twelve (12) months), the taxpayer's taxable year shall be the calendar year if--

**(1)** the taxpayer keeps no books;

**(2)** the taxpayer does not have an annual accounting period; or

**(3)** the taxpayer has an annual accounting period, but such period does not qualify as a fiscal year.


**Section 1040.02.-- General Rule for Methods of Accounting.--**

**(a) General Rule.--** Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his/her income in keeping his/her books.

**(b) Exceptions.--** If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect taxable income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect taxable income.

**(c) Permissible Methods.--** Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting--

**(1)** the cash receipts and disbursements method;

**(2)** an accrual method;

**(3)** any other method permitted by this Subtitle; or

**(4)** any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

**(d) Limitation on Use of Cash Method of Accounting.--**

**(1)** Notwithstanding the provisions of subsection (c), the use of the cash receipts and disbursements method of accounting shall only be allowable if it meets the following two (2) conditions:

**(A)** the business does not require the use of inventory; and

**(B)** the business has a gross income annual average (determined on the basis of the last three (3) years of business operations) of one million dollars ($ 1,000,000) or less.

**(2)** When the business has regularly used other methods of accounting to compute its income, gains or losses for purposes of reports or statements to its shareholders, partners or other owners, or

beneficiaries, or for purposes of obtaining credit, the use of the cash receipts and disbursements method shall not be allowable.

**(e)  Taxpayers Engaged in More Than One Business.--**  A taxpayer engaged in more than one (1) trade or business may use a different method of accounting to compute the taxable income of each trade or business, subject to the provisions of subsection (d).

**(f)  Requirements Respecting Change in the Method of Accounting.--**  Except as otherwise expressly provided in this Subtitle, a taxpayer who changes the method of accounting on the basis of which he/she regularly computes his/her income in keeping his/her books shall, before computing his/her taxable income under the new method, secure the consent of the Secretary.

**(1)**  In computing the taxable income for the taxable year in which the change in the method of accounting shall be effective, it shall be taken into consideration such adjustments as necessary to prevent that items from income or expenses be duplicated or omitted as a result of the change in the method of accounting; provided, that

**(A)**  Fifty percent (50%) of the amount resulting from such adjustments shall be included in the computation to determine the taxable income subject to taxation in the return for the taxable year in which the change of the method of accounting is effective, and

**(B)**  The remaining fifty percent (50%) shall be included in the computation to determine the taxable income subject to taxation in the return for the following taxable year.

**(2)**  However, where the change in the method of accounting is by reason of the provisions of subsection (d) of this Section, the adjustment, whether negative or positive, shall be included in the computation to determine the taxable income subject to taxation at a ratio of one-fifth (1/5) every year, for a period of five (5) taxable years, beginning on the taxable year in which the change of the method of accounting, under subsection (d), becomes effective.

**(3)**  The Secretary shall establish through regulations, circular letter, informational bulletin or general administrative determination the procedure to be followed in order to request a change of the method of accounting.


**Section 1040.03.-- Taxable Year for Which Items of Gross Income Shall be Included.--**

The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the methods of accounting permissible under Section 1040.02, such amount is to be properly accounted for as of a different period. In the case of the death of a taxpayer whose taxable income is computed under an accrual method of accounting, any amount accrued only by reason of the death of the taxpayer shall not be included in computing taxable income for the period in which falls the date of the taxpayer's death.


**Section 1040.04.-- Taxable Year for Which Deductions and Credits Taken.--**

**(a)  General Rule.--**  The amount of any deduction or credit allowed by this Subtitle shall be taken for the taxable year in which they were "paid and incurred" or "paid and accrued" depending on the method of accounting used in computing taxable income, unless that to clearly reflect the income, the deductions and the credit, these should be claimed in another period. In the case of the death of a taxpayer whose taxable income is computed under an accrual method of accounting, any amount accrued as a deduction or credit only by reason of the death of the taxpayer shall not be allowed in computing taxable income for the period in which falls the date of the taxpayer's death.

**(b)  Interests, Rentals and Other Pre-Paid Expenses.--**

**(1)  In General.--**  If a taxpayer determines his/her net income based on the cash receipts and disbursements method of accounting, the interests, rentals and other expenses paid by such taxpayer which, under the regulations prescribed by the Secretary, are treated as allocable to any period

2011 PR H.B. 3070

occurring after the close of the taxable year in which they are paid, shall be charged to the capital account and treated as paid in the period during which they are allocable.

**(2) Exception.--**  This subsection shall not apply to the points paid on indebtedness incurred for the acquisition, construction, or improvement of, and secured by the principal residence of the taxpayer to the extent that, under the regulations prescribed by the Secretary, such payment of points is an established business practice in the area in which such indebtedness is incurred, and the amount of such payment does not exceed the amount generally charged in such area.

**Section 1040.05.-- Installment Sales.--**

**(a) Personal Property Dealer.--**  A person who regularly sells or otherwise disposes of personal property through the installment plan may, in the manner prescribed by the Secretary through regulations, declare on any taxable year as income from said transactions, a ratable part of the installment payments effectively received during such year in which the gross gain realized or to be realized when the total payment is made, with the total contract price.

**(b) Casual Sale of Personal Property and Sale of Real Property.--**  In the case of--

**(1)** a casual sale or other casual disposition of personal property (other than property that because of its nature should be properly included in the taxpayer's inventory if on hand at the close of the taxable year), for a price in excess of one thousand dollars $ (1,000), or

**(2)** of a sale or other disposition of real property, if in any of such cases the initial payments, if any, did not exceed thirty percent (30%) of the sales price, the income may under the regulations prescribed by the Secretary be declared over the basis and in the manner provided in this Section.

**(3)** As used in this section the term "initial payments" means payments received in cash or property other than buyer's proof of indebtedness, during the taxable period in which the sale or other disposition was made.

**(c) Use of Installment Obligations as Loan Security.--**  In such cases in which the taxpayer uses an installment obligation to secure a loan, the proceeds of such loan shall be treated as a payment of the installment obligation. However, in case the loan is obtained in the ordinary course of the taxpayer's trade or business and it is secured, among other assets, by an installment obligation received from the sale of property in the ordinary course of his/her trade or business, only the excess of the proceeds of the loan over the basis of the installment obligation and of the other assets shall be treated as payment of the installment obligation.

**(d) Change from the Accrual Method to the Installment Sales Method.--**  If a taxpayer entitled to the benefits of subsection (a) elects to declare his/her net income on the installment basis for any taxable year, then, in computing his/her income for the year of the change or any subsequent year, the amounts effectively received during any of said years on account of sales or other disposition of property made in any prior year shall not be excluded.

**(e) Gain or Loss on Disposition of Installment Obligations.--**

**(1)** If an installment obligation is satisfied at other than its face value or distributed, transferred, sold or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation, and

**(A)** in the case of payment at other than face value or of a sale or exchange, the amount realized, or

**(B)** in the case of a distribution, transfer, or disposition other than by sale or exchange, the fair market value of the obligation at the time of such distribution, transfer or disposition.

**(2)** Any such gain or loss shall be deemed as resulting from the sale or exchange of the property in respect to which the installment obligation was received. The basis of the obligation shall be the excess

of the face value of the obligation over an amount equal to the income which would be declarable if the obligation had been paid in full.

**(3)**  This subsection shall not apply to the transfer by death of installment obligations if a bond is filed with the Secretary at such time as he/she may prescribe by regulations, in such amount and with such sureties as he/she may deem necessary, conditioned on the declaration as income by the person receiving any payment on such obligations the same proportion of such payment that would be declared as income by the decedent if he/she had lived and received such payment.

**(4)**  If an installment obligation is distributed by one corporation to another corporation in the course of a liquidation, subject to Section 1034.04(b)(6) and the basis of the installment obligation in the hands of the recipient is determined under Section 1034.02(a)(13)(B), then no gain or loss whatsoever shall be recognized with respect to the distribution of such obligation in the case of the distributor or transferor corporation.

**Section 1040.06.-- Long-term Contracts.--**

**(a)  In General.--**

**(1)**  The period during which income from long-term contracts are recognized shall be determined based on any of the methods described in subsection (b), provided that the used method clearly shows the net income earned by the taxpayer with respect to the long-term contract, and

**(A)**  the method used is that required to recognize the income to the taxpayer under the generally accepted accounting methods, and the taxpayer recognizes such income in such manner for purposes of his/her financial statements; or

**(B)**  the method used is that approved by the Secretary after December 31, 2010.

**(2)**  For purposes of this subsection, the Secretary shall prescribe through regulations, after the effective date of this Code, the method allowed under this Section.

**(3)**  In promulgating or approving alternate methods for the recognition of income from long-term contracts, the Secretary shall take into account the effect of withholdings or retained earnings that the owner of a construction work usually makes to the periodical payments of the builder until the construction work is completed.

**(b)  Methods to Recognize Income from Long-term Contracts.--**

**(1)  Percentage of Completion Method.--**  Under the percentage of completion method, the taxpayer shall declare the gross income earned from long-term contracts as the work is performed, in proportion to the work completed, based on the estimate on the portion of the construction work to be carried out under the contract that has been completed during the taxable year, deducting the expenditure made during such taxable year from the gross income, by virtue of the contract, taking into account the inventory of materials and supplies at the beginning and close of the taxable period, to be used in connection with the construction work subject of such contract, but not yet applied to such use.

**(2)  Completed Contract Method.--**  The taxpayer may declare gross income from a long-term contract in the taxable year in which the contract is complied with and the construction work is accepted, if this method is used by the taxpayer as a consistent practice, in which case the taxpayer shall deduct from the gross income all the expenditures incurred during the term of the contract and that are properly attributable to the contract, taking into account the materials and supplies charged to the construction work, but that remain in inventory as of the date of the completion.

**(3)**  Any other method approved by the Secretary after December 31, 2010.

**(c)**  As used in this Section, the term "long-term contract" means any contract for the building, installation, and construction that cover a period in excess of one (1) year from the date the contract was executed to the date in which the contract is completed and the construction work is accepted.

**(d)**  Entities engaged in land and structure development shall not be treated as having earning from long-term contracts, therefore, they may not use the percentage completion method or completed contract method to recognize their incomes.

**(e)**  A taxpayer may not change the method of accounting prescribed in paragraphs (1) or (2) of subsection (b) of this Section, as the case may be, without the previous authorization of the Secretary, as provided in Section 1040.02(f) of the Code.

**(f)**  The Secretary may prescribe through regulations, circular letter, information bulletin or general administrative determination such guidelines or definitions as necessary or convenient to establish the extent to which a project is considered subject to a long-term contract, as well as such other measures he/she deems convenient or necessary to implement the provisions of this Section.

**(g)  Temporary Provisions.--**

**(1)**  As of the effective date of this Code, any taxpayer who uses, in determining the taxable net income, a method of accounting for long-term contracts different from the method used in keeping his/her books and reported in his/her financial statements may continue using such method to compute his/her taxable net income under this Subtitle solely with respect to projects that are under construction as of June 30, 2013.

**(2)**  The provisions of subsections (a) through (f) of this Section shall apply to projects whose construction begins on July 1, 2013, with respect to which the taxpayer shall be bound to use the method of accounting used in keeping his/her books and reported in his/her financial statements, or such other method authorized by the Secretary through regulations, circular letter or administrative determination.

**(3)**  For purposes of this subsection, it shall be understood that a project is under construction as of June 30, 2013 only and solely if as of such date the construction permits and the financing for the construction thereof have being obtained and are in effect.


**Section 1040.07.-- Last-in First-out Method of Goods Inventory.--**

**(a)**  The taxpayer may use the following method, whether or not prescribed under Section 1031.01(a)(2)(B) in inventorying goods specified in an application required under subsection (b):

**(1)**  Inventory them at cost;

**(2)**  Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year, in the order of acquisition, to the extent thereof; and second, those acquired in the taxable year; and

**(3)**  Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method.

**(b)**  The method prescribed in subsection (a) may be used--

**(1)**  Only in inventorying goods that, under Section 1031.01(a)(2)(B) are required to be inventoried, specified in an application to use the method filed at such time and in the manner as the Secretary may prescribe; and

**(2)**  Only if the taxpayer establishes to the satisfaction of the Secretary that the taxpayer has used no procedure other than that specified in paragraphs (2) and (2) of subsection (a) in inventorying such goods to ascertain the income, profit, or loss of the first taxable year for which the method described in subsection (a) is to be used, for the purpose of a report or statement covering such taxable year:

**(A)**  to shareholders, partners, or other proprietors or beneficiaries, or

**(B)**  for credit purposes.

**(c)** The change to, and the use of, such method shall be in accordance with the regulations the Secretary may prescribe as necessary in order that the use of such method may clearly reflect income.

**(d)** In determining the income for the taxable year preceding the taxable year in which such method was first used, the final inventory of such preceding taxable year of the goods specified in the application shall be valued at cost.

**(e)** If a taxpayer, having complied with subsection (b), uses the method described in subsection (a) for any taxable year, then it shall be used in all subsequent taxable years unless--

**(1)** with the approval of the Secretary, a change to a different method is authorized; or,

**(2)** the Secretary determines that the taxpayer has used for any subsequent taxable year some procedure other than that specified in paragraph (2) of subsection (a) in inventorying the goods specified in the application to ascertain the income, profit, or loss of the subsequent taxable year for the purpose of a report or statement covering such taxable year

**(A)** to shareholders, partners, or other proprietors or beneficiaries, or

**(B)** for credit purposes; and requires a change to a method different from that prescribed in paragraph (2) subsection (a) beginning with such subsequent taxable year or any taxable year thereafter.

**(3)** In any of such cases, the change to, and the use of, the different method shall be in accordance with such regulations as the Secretary may prescribe as necessary in order that the use of such method may accurately reflect income.

### Section 1040.08.-- Incentive Stock Option.--

**(a) In General.--** If corporate stock is transferred to an individual in a transference with respect to which the provisions of subsection (b) are complied with:

**(1)** No income shall be recognize at the time the individual exercises the option with respect to such stock, not at the time in which the transfer of such stock to the individual after he/she has exercised such option;

**(2)** No deduction under the provisions of Section 1033.01 (in connection with expenses of the trade or business) shall be allowed at any time to the corporation of which the individual is an employee or director, or its parent or subsidiary corporation with respect to the transferred stock; and

**(3)** No amount other than the price paid under the option shall be treated as received by such corporations for any transferred stock.

**(b) Qualified Transfer.--** The provisions of subsection (a) of this Section shall apply with respect to the transfer of corporate capital stock from a corporation to an individual for his/her exercise of a qualified option (as such term is defined in subsection (c) of this Section), if at all times during the period beginning on the date of the granting of the option and ending three (3) months before the date of such exercise, the individual was an employee or director of either the corporation granting the option or a parent or subsidiary corporation of such corporation.

**(c) Incentive Stock Option.--** For the purpose of this Section, the term "incentive stock option" means an option granted to an individual for any reason in connection with his/her employment or function as director of a corporation, if such option is granted by the employer corporation or its parent or subsidiary corporation, to purchase stock of any of such corporations, but only if--

**(1)** the option is granted pursuant to a plan which:

**(A)** includes the aggregate number of shares which may be issued under options; and

**(B)** includes the employees (or class of employees or directors) eligible to receive options, and

**(C)** is approved by the stockholders of the granting corporation within twelve (12) months before or after the date such plan is adopted;

**(2)** Such option is granted within ten (10) years from the date the plan is adopted, or the date the plan is approved by the stockholders, whichever is earlier;

**(3)** Such option by its terms is not exercisable after the expiration of ten (10) years from the date the option is granted;

**(4)** In case the stock of such options are traded in recognized stock exchanges, the option price may not be less than the fair market value of the stock at the time such option is granted. In case the stock of options that are not traded in recognized stock exchanges, the option price may not be less than the book value per share, determined according to the financial statements of the granting corporation for the taxable year immediately preceding the date on which the option is granted. The statements shall be made in accordance with generally accepted accounting principles.

**(5)** Such option by its terms is not transferable by such individual otherwise than by will or the laws of descent and distribution, and is exercisable, during his/her lifetime, only by him/her.

**(6)** Under the terms of the plan, the aggregate market value or the aggregate book value (determined at the option is granted) of the stock, with respect to which the incentive stock option may be exercised for the first time by such individual during any calendar year (under any incentive stock option plan of the employer corporation or its parent or subsidiary corporation) shall not exceed one hundred thousand dollars ($ 100,000).

**(d)** **Special Rules.--**

**(1)** **Exercise of Option by Estate.--** If an option to which this Section applies is exercised after the death of an employee or director by the estate of such decedent or the person who acquired the rights to exercise such option by bequeath or inheritance or by reason of death of the decedent, the provisions of subsection (a) shall apply in the same manner as if the option had been exercised by the decedent, except that the requirement set in subsection (b) that he/she be an employee or director, shall not apply.

**(2)** **Permissible Provisions.--** An option which meets the requirements of subsection (b) shall be treated as an incentive stock option even if--

**(A)** the employee may pay for the stock with stock of the corporation granting the option,

**(B)** the employee has a right to receive property at the time of exercise of the option, or

**(C)** the option is subject to any condition not inconsistent with the provisions of subsection (b) of this Section.

**(3)** **Special Rule When Disabled.--** For purposes of subsection (b) of this Section, in the case of an employee or a director who is disabled, the three (3)-month period of subsection (b) shall be one (1) year.

**(4)** **Fair Market Value.--** For purposes of this section, the fair market value of stock shall be determined without regard to any restriction other than a restriction which, by its terms, will never lapse.

**(5)** **Application of Plans in Effect.--** The provisions of this Section shall apply to plans established under Section 1046 of the Puerto Rico Internal Revenue Code of 1994, as amended, and Section 44A of the Income Tax Act of 1954, as amended.

**(e)** **Temporary Provisions.--**

**(1)** Election to pay in advance the special tax on gains accrued on the incentive stock options or partnership interest or interest or on stock or transferred proprietary interest. It shall be subject to the provisions of paragraphs (2) and (3) of this Section.

**(A)** Any individual who, being the holder of an incentive stock option (whether or not it is an incentive stock option under Section 1046 of the Internal Revenue Code of 1994, as amended) or partnership interest, had paid in advance during the period between July 1 of 2006 to December 31, 2006, a special tax of five percent (5%) on the total or part of the gain accrued on the option, and

**(B)** any individual who, being the holder of corporate stock or partnership interest acquired through the exercise of an option (whether or not it is an incentive stock option under Section 1046 of the Internal Revenue Code of 1994, as amended) or proprietary interest, had paid in advance during the period between July 1, 2006 to December 31, 2006, a special tax of five percent (5%) on the total or part of the gain accrued on the stock or proprietary interest so transferred.

**(2) Increase in the Gain Accrued on the Option or Corporate Stock or Partnership Interest Acquired Through the Exercise of the Option.--** The basis of the individual in the option or corporate stock or partnership interest acquired through the exercise of an option shall include the increase in the gain accrued upon which the individual made an election to pay taxes pursuant to the provisions of subsection (e) of Section 1046 of the Internal Revenue Code of 1994, as amended. The basis so determined shall be taken into account at the time or on the date in which the individual sells the stock or partnership interest transferred. Notwithstanding the above, any increase in the gain accrued on such corporate stock or partnership interest occurred after the election provided in said section shall pay taxes pursuant to the provisions of law in effect at the time in which the sale of such stock or partnership interest is finally completed.

**(3) Recognition of Loss.--** The amount of loss generated as a result of the subsequent sale of corporate stock or partnership interest subject to Section 1046 of the Internal Revenue Code of 1994, as amended, shall be adjusted pursuant to the tax rate in effect applicable to this type of transaction at the time in which the sale of such stock or partnership interest is made, prior to its use or carryforward by the taxpayer or individual. In accordance to which, such loss shall be adjusted by a formula or fraction whose numerator shall be the five percent (5%) rate and whose denominator is the tax rate in effect as on the date in which the sale of such stock or partnership interest is made.

## Section 1040.09.-- Allocation of Income and Deductions.--

In any case of two or more organizations, trades, or businesses, whether or not incorporated, whether or not organized in Puerto Rico, and whether or not affiliated, owned or controlled directly or indirectly by the same interests, the Secretary is authorized to distribute, apportion, or allocate gross income and deductions, credits, or allowances between such organizations, trades, or businesses, if he/she determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or to clearly reflect the income of any of such organizations, trades, or businesses. The Secretary is also authorized to impute income by reason of interest, dividends, compensation or for any other concept or nature in transactions, trades or businesses when it is necessary to avoid tax evasion or to accurately reflect the income of any of such organizations, trades or businesses.

## Section 1040.10.-- Change of Accounting Period.--

If a taxpayer changes his/her accounting period from fiscal year to calendar year, from calendar year to fiscal year, or from one fiscal year to another, the net income shall, with the approval of the Secretary, be computed on the basis of such new accounting period, subject to the provisions of Section 1061.24.

## Section 1040.11.-- Method of Flexible Depreciation.--

**(a) Flexible Depreciation Deduction.--**

**(1) General Rule.--** In the case of flexibly depreciable property with respect to which the option provided in subsection (b) is effective for the taxable year, a taxpayer, in computing his/her net income

for said taxable year, may deduct the whole, or any part, or no part, of the flexibly adjusted basis of said property, except that the amount of the deduction under this subsection shall not exceed the net benefit (determined without taking into consideration the deduction provided herein, but after taking into consideration the deduction provided in Section 1033.07) of said business or commercial activity in which the flexibly depreciable property is used.

(2)   In the case of flexibly depreciable property acquired after December 31, 1972, and before January 1, 1985, the total amount of said deduction shall not exceed fifty percent (50%) of the net benefit (determined without taking into consideration the deduction provided herein) of said business or commercial activity.

(3)   The taxpayer who elects to take the deduction provided in this subsection cannot reduce his/her net benefit (determined by taking into consideration such deduction) to less than zero.

(4)   This deduction shall be in lieu of the deduction under Section 1033.07 for current depreciation of the property for the taxable year, but it shall be subject in all other respects to the requirements of said section.

(5)   The property acquired and used by a taxpayer enjoying tax exemption nor the property leased to an exempt business and/or deemed as exempt because of its being property engaged in industrial development as said term is defined in Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentive Act for the Development of Puerto Rico," or any other previous or subsequent similar law, may not be flexibly depreciated during the tax exemption period. Once the exemption period has expired, the taxpayer may claim the flexible depreciation.

(b)   **Option to Claim Flexible Depreciation.--**   The option to claim flexible depreciation shall be exercised according to regulations prescribed by the Secretary.

(c)   **Transfer of Flexibly Depreciable Property.--**

(1)   **Treatment of Gain or Loss in the Transfer.--**

(A)   In addition to any amount of gain or loss prescribed in Section 1034.03, the amount by which the adjusted basis to determine gain provided in Section 1034.02(b) exceeds the flexibly adjusted basis to determine gain shall be realized and recognized as a gain in the transfer of flexibly depreciable property.

(B)   In addition to any amount of gain or loss prescribed in Section 1034.03, the amount by which the flexibly adjusted basis to determine loss exceeds the adjusted basis to determine loss provided in Section 1034.02(b), shall be realized and recognized as a loss in the transfer of flexibly depreciable property.

(C)   Any gain or loss thus determined shall not be treated as gain or loss in the sale or exchange of a capital asset. However, the tax attributable to any gain thus determined which is in excess of any loss prescribed in Section 1034.03, includable in the gross income in the taxable year, shall not exceed the aggregate amount of taxes which would have been attributable to gain had such gain been ratably included in the taxable year and the two (2) preceding taxable years, or the period during which the property is owned, whichever is less.

(2)   **Notice of Transfer.--**   A taxpayer who transfers any flexibly depreciable property in respect of which the option provided in subsection (b) of this section has been effective for any taxable year shall file a notice of transfer according to regulations prescribed by the Secretary.

(3)   **Limitation.--**   The limitation for assessment in respect of any deficiency involving the transfer of flexibly depreciable property with respect to which the option provided in subsection (b) has been effective for any taxable year shall not begin to run before the date of the filing of the notice of transfer corresponding to said property.

(d)   **Definitions.--**

**(1)  Flexibly Depreciable Property.--**   For purposes of this Section the term "flexibly depreciable property" means any property acquired before the first taxable year beginning after June 30, 1995, which, in the absence of the option provided in subsection (b), would be subject to the current depreciation provided in Section 1033.07 and is exclusively used in one of the following businesses:

**(A)** a *bona fide* agricultural business;

**(B)** a construction business;

**(C)** a land development business;

**(D)** a business for the substantial rehabilitation of structures or buildings;

**(E)** a business for the sale or lease of structures or buildings;

**(F)** a manufacturing business;

**(G)** a hotel or tourism business;

**(H)** a business to export products or services to foreign countries, or

**(I)** a shipping business.

**(2)**  The business must be operated by the taxpayer in Puerto Rico, and the property with respect to which the election under subsection (b) is made must be used therein and have been acquired after December 31, 1954 and before the first day of the first taxable year begun after June 30, 1995.

**(3)**  In the case of flexibly depreciable property acquired to be used exclusively in a business devoted to land development, the substantial rehabilitation of buildings or structures, sale or lease of buildings or structures, tourism, or exporting of products or services to foreign countries, the property with respect to which the election is made must have been acquired after December 31, 1984 and before the first day of the first taxable year begun after June 30, 1995.

**(4)**  In the case of a taxpayer, or of property devoted to industrial development, or property leased to a shipping business, which has totally exhausted the tax exemption period to which subsection (a) refers, the term "flexibly depreciable property" also means any real property (excluding land) acquired by the taxpayer after February 14, 1949, and used originally in a manufacturing, hotel or shipping business operated by the taxpayer, and real property (excluding land) acquired by the taxpayer after February 14, 1949, to be owned for the production of income and leased originally to a manufacturing, hotel or shipping business operated by the lessee.

**(5)**  In the Case of Real Property:

**(A)**  Any property acquired prior to December 31, 1954, but used originally by the taxpayer after December 31, 1954, in a *bona fide* agricultural, construction, manufacturing or shipping business shall, for this purpose, be deemed as acquired after December 31, 1954, and

**(B)**  any property acquired prior to February 14, 1949, but used originally after February 14, 1949, in a manufacturing, hotel or shipping business operated by a taxpayer to whom subsection (a) refers, or any property acquired prior to February 14, 1949, devoted to industrial development, which has exhausted said tax-exemption period, but was originally leased after February 14, 1949, to a manufacturing, hotel or shipping business operated by the lessee shall be deemed for these purposes as acquired after February 14, 1949.

**(6)**  Any property excluded from the term "flexibly depreciable property" under this paragraph, but in respect to which there has been in effect a flexible depreciation option in any taxable year for which the property qualified as "flexibly depreciable property" shall continue to be deemed as "flexibly depreciable property" only for purposes of the provisions on transfers contained in subsection (c).

**(7)  Flexibly Adjusted Basis.--**  "Flexibly adjusted basis" of property shall be the adjusted basis of property provided in Section 1034.02(b).--

(A)  Reduced in the amount by which the flexible depreciation allowed exceeds the amount of current depreciation used for determining the adjusted basis during the period in which the flexible depreciation option provided in subsection (b) has been effective, or

(B)  increased in the amount by which the current depreciation used for determining the adjusted basis, during the period in which the option provided in subsection (b) has been effective, exceeds the flexible depreciation allowed.

**(8)  Transfer.--**  "Transfer," for purposes of this section, includes:

(A)  Any sale or other disposition of property, or any transfer of title or ownership of property, but shall not include a transfer in the course of an exchange as described in Section 1034.04(b)(5) or (6) or of a reorganization as described in Section 1034.04(g)(1)(A), (E) or (F) unless the effect of the transfer is to make applicable any other subparagraph of this paragraph;

(B)  the discontinuance for a period of more than six (6) months of the use of the property in an agricultural, construction, manufacturing, hotel or shipping business operated by the taxpayer; it being understood that this shall not apply in the case of property held for the production of income and leased to a manufacturing, hotel or shipping business operated by the lessee when the same becomes vacant; provided that the property is continued to be offered on the market exclusively for lease for such businesses;

(C)  the physical removal of the property outside Puerto Rico;

(D)  in the case of a foreign corporation or partnership, or of a nonresident individual the discontinuance of the business thereof in Puerto Rico;

(E)  in the case of property under construction, a stoppage of the construction for a period of more than six (6) months or failure to complete construction within three (3) years after it was started, and

(F)  any other act or situation classified as a transfer in regulations prescribed by the Secretary.

The Secretary may, according to regulations, upon just cause shown, grant an extension of time for or an exemption from classifying as a transfer in respect of any act or situation specified in the foregoing paragraphs if he/she is satisfied that treatment as a transfer would not be appropriate under all circumstances.

**(9) Bona fide**  Agricultural Business.--For purposes of this section the term "*bona fide* agricultural business" means:

(A)  The farming or cultivation of the land for the production of fruits, vegetables, spices for condiments and all kinds of foods for human beings or animals; the raising of animals for the production of meat, milk or eggs; the raising of thoroughbred racehorses; those operations involved in packing, canning or classifying fresh agricultural products which form part of the same agricultural business; mariculture and aquaculture; the commercial production of flowers and ornamental plants both for the local market and for exporting; the cultivation of vegetables by hydroponic methods, the sheds and other equipment utilized for these purposes, by a *bona fide* farmer.

(B)  The determination of what constitutes a bona fide agricultural business shall be made taking into account such factors as lucrative purposes; the policies issued by the State Insurance Fund; the returns filed with the Federal Social Security Administration; the government programs for farmers, and the agricultural loans which the taxpayer may have taken out and any other factors which, in the opinion of the Secretary, in consultation with the Secretary of Agriculture may be essential to qualify the taxpayer as engaged in a *bona fide* agricultural business.

**(10)  Shipping Business.--**  For the definition of the term "shipping business" see paragraph (25) of subsection (a) of Section 1010.01 of this Subtitle.

**(e) Regulations.--**  The provisions of this section shall be applied according to the regulations prescribed by the Secretary. The regulations shall include:

**(1)** The procedure to be followed in exercising the option provided in subsection (b);

**(2)** the procedure to be followed in filing the notice of transfer prescribed in subsection (c);

**(3)** rules applicable in determining if the property was acquired before the first taxable year commencing after June 30, 1995.

**(4)** rules applicable to determine if a taxpayer is operating an agricultural, construction, land development, substantial rehabilitation of buildings or structures, sale or lease of buildings or structures, manufacturing, hotel, tourism, exporting of products or services to foreign countries, or shipping, and if the flexibly depreciable property is being used in said business, and

**(5)** rules applicable for the computation of the tax provided in subsection (c)(1).


**Section 1040.12.-- Accelerated Cost Recovery Depreciation Method.--**

**(a) Election to Use the Accelerated Depreciation Method.--**

**(1)** The election to use the accelerated depreciation method shall be made with the corresponding income tax return for the first taxable year in which the deduction is claimed, in the form and manner established by regulations. The election to use the accelerated method shall be made only with respect to property acquired by "purchase" (as defined in Section 1033.07) during taxable years beginning after June 30, 1995.

**(2)** If the taxpayer makes an election under this subsection with respect to any class of property for any taxable year, the accelerated depreciation method under this section shall apply to all property in such class placed in service during such taxable year. In the case of real property devoted to residential rental purposes and nonresidential real property, such election may be made separately with respect to each property.

**(3) Election Irrevocable.--**  An election under this subsection, once made, shall be irrevocable.

**(4)** A taxpayer may not make an election to use the accelerated depreciation method with respect to property:

**(A)** covered under Section 1033.07(a)(3);

**(B)** used predominantly outside of Puerto Rico;

**(C)** used by entities exempt under Section 1101.01;

**(D)** used totally or partially in activities covered by Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.] or any similar preceding or subsequent law, or

**(E)** intangible property.

**(b) Depreciation Method, Recovery Period and Applicable Convention Period.--**  The depreciation deduction under the accelerated depreciation method shall be determined by using:

**(1)** The applicable depreciation method;

**(2)** the applicable recovery period, and

**(3)** the applicable depreciation period to commence depreciation.

**(c) Applicable Depreciation Method.--**  For purposes of this section:

**(1)** The applicable depreciation method shall be:

**(A)** The two-hundred percent (200%) declining balance method in the case of three (3), five (5), and ten (10)-year property; and

**(B)** the one hundred fifty percent (150%) declining balance method in the case of real property devoted to residential rental purposes, nonresidential real property and fifteen (15) and twenty (20) year property.

Notwithstanding the above, the taxpayer may switch to the straight line depreciation method when the use of this method when applied to the adjusted basis of the assets being depreciated under the accelerated method yields a larger allowance.

**(2) Salvage Value.--** No salvage value shall be considered for purpose of this section.

**(d) Applicable Recovery Period.--** For purposes of this section, the applicable recovery period shall be determined in accordance with the following table:

| In the case of: | The recovery period shall be: |
| --- | --- |
| 3-year property | 3 years |
| 5-year property | 5 years |
| 10-year property | 10 years |
| 15-year property | 15 years |
| 20-year property | 20 years |
| Residential rental real property | 30 years |
| Nonresidential real property | 35 years |

**(e) Applicable Acquisition Period.--**

**(1) In General.--** Except as provided in paragraph (2) of this subsection with respect to real property, the applicable acquisition period shall be half-year.

**(2) Real Property.--** In the case of:

**(A)** Residential rental real property, and

**(B)** nonresidential real property, the applicable acquisition period shall be mid-month.

**(3) Definitions.--**

**(A) Half-year Acquisition Period.--** All property placed in service during the taxable year (or disposed of during any taxable year) shall be treated as placed in service (or disposed of) on the mid-point of such taxable year.

**(B) Mid-month Acquisition Period.--** All property placed in service during any month of the taxable year (or disposed of during any month of the taxable year) shall be treated as placed in service (or disposed of) on the mid-point of such month.

**(f) Classification of Property.--**

**(1) In General.--** Except as otherwise provided in this subsection, property shall be classified as provided in subsection (d).

**(2) Residential Rental and Nonresidential Real Property.--**

**(A) Residential Rental Real Property.--** The term "residential rental real property" means any building or structure if eighty percent (80%) of the gross rental income from such building or structure for the taxable year is rental income from dwelling units.

**(i) Definition.--** For purposes of this paragraph--

**(l)** The term "dwelling unit" means a house or apartment used to provide living accommodations in a building or structure, but does not include a unit in a hotel, motel, or

other establishment more than fifty percent (50%) of such units in which are used on a transient basis, and

**(II)**  if any portion of the building or structure is occupied by the taxpayer, the gross rental income from such building or structure shall include the rental value of the portion so occupied.

**(B)  Nonresidential Real Property.--**  The term "nonresidential real property" means real property which is not residential real property.

**(3)  Other Property.--**

**(A)  Three (3)-year Property.--**  The term "three (3)-year property" includes any electronic equipment such as computers and related equipment and any other similar asset that qualifies for a three (3)-year recovery period.

**(B)  Five (5)-year Property.--**  The term "five(5)-year property" shall include automobiles and trucks not covered by the provisions of Section 1033.07, qualified high-technology equipment, cargo vans and trailers, tools, milk and breeding cattle and any other similar assets that qualify for a five (5)-year recovery period.

**(C)  Ten (10)-year Property.--**  The term "ten (10)-year property" shall include assets used in the business of wholesale and retail sales, personal and professional services, furniture and appliances, manufacturing equipment used, among others, for making textiles, textile products, medical and dental products, chemical products, electrical machinery and aero-space products, equipment used in certain agricultural activities, in satellite, telegraph and undersea cable communications, waste reduction and resource recovery plants, assets used in the printing industry and any other similar assets that qualify for a ten (10)-year recovery period.

**(D)  Fifteen (15) year Property.--**  The term "fifteen-year property" shall include assets used in air transportation, theme and recreation parks, satellite communications, natural gas production plants, structures for use in agricultural and horticultural activities, manufacturing equipment used, among others, for making jewelry, musical instruments, managing pulp and paper materials, glass products, tobacco products and any other similar assets that qualify for a fifteen (15)-year recovery period.

**(E)  Twenty (20) year Property.--**  The term "twenty-year property" shall include ships, maritime transportation equipment, electric power generators in satellite communications, land improvements, electricity and steam generation systems, manufacturing equipment used, among others, for manufacturing natural gas with methanol, assets utilized in the production of sugar, vegetable oil, cement and any other similar assets that qualify for a twenty (20)-year recovery period.

**(g)  Treatment of Gain or Loss in the Transfer of Property Depreciated under Accelerated Depreciation Method.--**

**(1)  General Rule.--**  A taxpayer who transfers property that has been depreciated under the accelerated depreciation method shall recognize ordinary gain or loss, as the case may be, in addition to any amount of gain or loss recognized under Section 1034.03, in an amount equal to the difference between the depreciation otherwise allowable under Section 1033.07 and the depreciation determined under this section.

**(2)  Exceptions and Limitations.--**

**(A)  Gifts.--**  Paragraph (1) of this subsection shall not apply to transfers of property by gift.

**(B)  Transfers by Reason of Death.--**  Except as provided in Section 1032.03 (relating to income with respect to a decedent), paragraph (1) shall not apply to a transfer by reason of death.

**(C)  Certain Tax-free Transactions.--**  If the base of the property in the hands of the assignee is determined with reference to the base in the hands of the transferor by reason of the application of

Sections 1034.02(a)(7), 1034.02(a)(8), 11034.02(a)(13)(B)(i) [sic], 1114.26 or 1114.27, the gain to be recognized by the transferor under paragraph (1) shall not exceed the amount of the gain to be recognized to the transferor in the transfer of said property (determined without considering this subsection). This subparagraph shall not apply to a transfer to an organization that is tax exempt.

**(D)  Exchanges of Similar Property and Involuntary Conversions.--**  If property is transferred and gain (determined without taking into consideration this subsection) is not totally or partially recognized under Sections 1034.04(b)(1) or 1034.04(f), then the amount of the gain to be recognized by the transferor under paragraph (1) of this subsection shall not exceed the sum of:

**(i)**  The amount of the gain recognized in such transfer (determined without taking into consideration this subsection), plus

**(ii)**  the market value of property acquired other than personal property subject to depreciation under Section 1033.07(k) of this Subtitle.

**(E)  Property Distributed to a Partner by a Special Partnership.--**

**(i)  In General.--**  For purposes of this subsection, the basis of personal property distributed to a partner by a partnership or special partnership shall be presumed as determined by reference to the adjusted basis of such property in the hands of the partnership or special partnership as prescribed in Section 1114.27.

**(ii)  Adjustments to Property Distributed to a Partner.--**  The Secretary shall prescribe by regulations any adjustment, if any, that may be necessary for purposes of redetermining the basis of the personal property distributed to a partner by a partnership or special partnership under subparagraph (E)(i) of this paragraph.

**(h)  Administrative Determinations.--**  The Secretary shall issue public administrative determinations, circular letters and other similar pronouncements establishing the recovery periods, applicable convention methods and the classification of other properties under subsections (d), (e) and (f) not otherwise included in paragraphs (2) and (3) of subsection (f).

**(i)  Regulations.--**  The Secretary shall issue the necessary regulations for the implementation of this section.


# CHAPTER 5 --  CREDITS AGAINST TAX


# SUBCHAPTER A --  NONREFUNDABLE CREDITS


**Section 1051.01.-- Taxes of the United States, Possessions of the United States, and Foreign Countries.--**

**(a)  Allowance of Credit.--**  If the taxpayer elects to avail him/herself of the benefits provided in this Section, the tax imposed by this Subtitle, except the tax imposed under Section 1022.05 of this Subtitle shall be credited to:

**(1)  Citizens and Domestic Corporations.--**  In the case of an individual who is a United States citizen resident of Puerto Rico and of a domestic corporation or partnership, the amount of any income tax and excess-profits taxes paid or accrued during the taxable year to the United States, any possession of the United States, or any foreign country; and

**(2)  Alien Resident of Puerto Rico.--**  In the case of an alien resident of Puerto Rico, the amount of any such taxes paid or accrued during the taxable year to the United States, or any possession of the United States, and to any foreign country, if the foreign country of which such alien resident is a citizen or subject, in imposing such taxes, allows a similar credit to citizens of the United States residing in such country; and

2011 PR H.B. 3070

**(3) Estates and Trusts.--**   In the case of any individual who is a beneficiary of an estate or trust, his/her ratable share of such taxes of the estate or trust paid or accrued during the taxable year to the United States, any possession of the United States, or any foreign country, as the case may be; and

**(4) Nonresident Aliens and Foreign Corporations and Partnerships.--**   In the case of a nonresident alien individual or a foreign corporation or partnership engaged in trade or business within Puerto Rico during the taxable year, a credit shall be allowed for the amount of taxes paid or accrued during the taxable year to the United States, any possession of the United States or any foreign country with respect to income from sources outside Puerto Rico effectively connected with the conduct of a trade or business within Puerto Rico. For special rules for the application of this paragraph, see subsection (h).

Such election may be made or changed at any time prior to the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this Subtitle.

**(b) Limits to Credit.--**   The amount of the credit taken under this section shall be subject to each of the following limitations:

**(1)** The amount of the credit in respect of the tax paid or accrued to any country shall not exceed, in the case of a taxpayer other than a corporation the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources within such country bears to his/her entire net income for the same taxable year, or in the case of a corporation, the same proportion of the tax against which such credit is taken, which the taxpayer's normal-tax net income from sources within such country bears to its entire normal-tax net income for the same taxable year; and

**(2)** The total amount of the credit shall not exceed, in the case of a taxpayer other than a corporation, the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources outside Puerto Rico bears to his/her entire net income for the same taxable year; or, in the case of a corporation, the same proportion of the tax against which such credit is taken, which the taxpayer's normal-tax net income from sources outside Puerto Rico bears to its entire normal-tax net income for the same taxable year.

**(3)** For purposes of this subsection, income received by a resident of Puerto Rico from sources outside of Puerto Rico or the United States and which is taxable in the United States shall be further considered as income from sources within the United States.

**(c) Adjustments on Payments of Accrued Taxes.--**   If accrued taxes when paid differ from the amounts claimed as credits by the taxpayer, or if any tax paid is refunded in whole or in part, the taxpayer shall notify the Secretary, who shall redetermine the amount of the tax for the year or years affected, and the amount of tax due upon such redetermination, if any, shall be paid by the taxpayer upon notice and demand by the Secretary, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of Subtitle F of this Code. In the case of a tax accrued but not paid, the Secretary as a condition precedent to the allowance of this credit may require the taxpayer to give bond with sureties satisfactory to and to be approved by the Secretary in such sum as the Secretary may require, conditioned upon the payment by the taxpayer of any amount of tax found due upon any such redetermination; and the bond herein prescribed shall contain such further conditions as the Secretary may require. In such redetermination by the Secretary of the amount of tax due by the taxpayer for the year or years affected by a refund, the amount of the taxes refunded for which credit has been allowed under this section shall be reduced by the amount of any tax described in subsection (a) imposed by the United States, possession of the United States or foreign country with respect to such refund; but no credit under this section, and no deduction under Section 1033.04, shall be allowed for any taxable year with respect to such tax imposed on the refund. No interest shall be assessed or collected on any amount of tax due upon any redetermination by the Secretary, resulting from a refund to the taxpayer, for any period prior to the receipt of such refund, except to the extent interest was paid by the United States, possession of the United States or foreign country on such refund for such period.

**(d) Year in Which Credit Taken.--**   The credits provided in this section may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his/her books, be taken in the year in

which the taxes of the United States, the foreign country, or the possession of the United States were accrued, subject, however, to the conditions prescribed in subsection (c). If the taxpayer elects to take such credits in the year in which the taxes of the United States, the foreign country, or the possession of the United States were accrued, the credits for all subsequent years shall be taken upon the same basis, and no portion of any such taxes shall be allowed as a deduction in the same or any succeeding year.

**(e) Proof of Credits.--**   The credits provided in this section shall be allowed only if the taxpayer establishes to the satisfaction of the Secretary:

   **(1)**   The total amount of income derived from sources outside Puerto Rico determined, as provided in Section 1035.02;

   **(2)**   the amount of income derived from each country, the tax paid or accrued claimed as credit under this section to be determined under rules and regulations prescribed by the Secretary, and

   **(3)**   all other information necessary for the verification and computation of such credits.

**(f) Taxes of Foreign Subsidiary.--**

   **(1)**   For purposes of this section, a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, or excess-profits taxes paid or treated as paid by such foreign corporation to the United States, any possession of the United States, or any foreign country upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits.

   **(2)**   The term "accumulated profits" when used in this subsection in reference to a foreign corporation means the amount of its gains, profits, or income in excess of the income, and excess-profits taxes imposed upon or with respect to such profits or income. The Secretary shall have full power to determine from the accumulated profits of what year or years such dividends were paid; treating dividends paid in the first sixty (60) days of any year as having been paid from the accumulated profits of the preceding year or years, unless to his/her satisfaction shown otherwise, and in other respects treating dividends as having been paid from the most recently accumulated gains, profits or earnings.

   **(3)**   In the case of a foreign corporation, the income, and excess-profits taxes of which are determined on the basis of an accounting period of less than one year, the word "year," as used in this subsection, shall be construed to mean such accounting period.

**(g) Credit for Taxes Equivalent to Income, and Excess-profits Taxes.--**   For purposes of this section and Section 1033.04, the term "income, and excess-profits taxes" shall include a tax paid equivalent to a tax upon income and excess-profits otherwise generally imposed by the United States, any possession of the United States or any foreign country.

**(h) Special Rules for Application of Subsection (a)(4).--**

   **(1)**   For purposes of subsection (a)(4) and for purposes of determining the deductions allowable under Sections 1091.03 and 1092.03, in determining the amount of any tax paid or accrued to the United States, any possession of the United States or foreign country, there shall not be taken into account any amount of tax to the extent the tax so paid or accrued is imposed with respect to income from sources within Puerto Rico which would not be taxed by the United States, any possession of the United States or foreign country, except for the fact that:

      **(A)**   In the case of a nonresident alien, such individual is a citizen or resident of a foreign country or possession, or

      **(B)**   in the case of a foreign corporation or partnership, such corporation or partnership was created or organized under the law of the foreign country or is domiciled for tax purposes in such country or possession.

**(2)**  For purposes of subsection (a)(4), in applying subsection (b) the taxpayer's net income shall be treated as consisting only of the net income effectively connected with the taxpayer's active conduct of a trade or business within Puerto Rico.

**(3)**  The credit allowed pursuant to subsection (a)(4) shall not be allowed against any tax imposed by Sections 1091.01(a) and 1092.01(a).

**(4)**  No credit whatsoever shall be allowed for the tax imposed by Section 1092.02.

**(i) Tax Withheld at Source.--**  For purposes of this Subchapter the tax imposed by this Subtitle shall be the tax computed without regard to the credit provided in Sections 1053.01, 1053.02, 1053.04, 1053.05, 1053.07, 1053.08, and 1053.09.

## Section 1051.02.-- Credit for Prior Year Minimum Tax Liability.--

**(a) Allowance of Credit.--**  There shall be allowed as a credit against the tax imposed by this Subtitle an amount equal to the minimum tax credit.

**(b) Minimum Tax Credit.--**  For purposes of subsection (a), the minimum tax credit for any taxable year is the excess, if any, of--

**(1)**  the net minimum tax imposed for all prior taxable years, over

**(2)**  the amount allowable as a credit under subsection (a) for such prior taxable years.

**(c) Limitation.--**  The credit allowable under subsection (a) for any taxable year shall not exceed the excess, if any, of--

**(1)**  the regular tax liability of the taxpayer for the taxable year reduced by the credit for foreign taxes paid provided in Section 1051.01, over

**(2)**  the tentative minimum tax for the taxable year.

**(d) Definitions.--**  For purposes of this section--

**(1) Net Minimum Tax.--**  The term "net minimum tax" means the tax imposed by Section 1022.03.

**(2) Tentative Minimum Tax.--**  The term "tentative minimum tax" has the meaning given to such term by Section 1022.03(b).

## Section 1051.03.-- Alternative Minimum Tax Foreign Tax Credit.--

**(a) Alternative Minimum Tax Foreign Tax Credit.--**  For purposes of Section 1022.03--

**(1) In General.--**  The alternative minimum tax foreign tax credit for any taxable year shall be the credit which would be determined under Section 1051.01 for such taxable year if--

**(A)**  the amount determined under Section 1022.03(b) were the tax against which such credit was taken for purposes of Section 1051.01(b) for the taxable year and all prior taxable years,

**(B)**  Section 1051.01(b) were applied on the basis of alternative minimum net income instead of net income, and

**(C)**  for the purpose of Section 1051.01(b), any increase in the alternative minimum net income by reason of the application of Section 1022.04(b) in respect to the adjustment on the net income according to the books, shall have the same proportional source and nature than the alternative minimum net income determined without regard to the referred increase.

**(2) Ninety (90)-day Limitation on the Tax Percentage.--**

**(A) In General.--**  The alternative minimum tax foreign tax credit for any taxable year shall not exceed the excess, if any, of--

**(i)** the amount determined under Section 1022.03(b) for the taxable year, over

**(ii)** the ten percent (10%) of the sum which shall be determined under Section 1022.03(b) without regard to the net loss deduction in operations for the alternative tax.

**(B) Carryforward.--** If the alternative minimum tax foreign tax credit exceeds the amount determined under subparagraph (A), such excess may be carried forward for seven (7) taxable years, in a timely order, for the purpose of treating it as part of the alternative minimum foreign tax credit, in addition to any other alternative minimum tax foreign tax credit corresponding to any of such carryforward taxable years. In no case, the alternative minimum foreign tax credit shall exceed the amount determined under subparagraph (A).

## Section 1051.04.-- Credit for Investment in Securities of Qualified Businesses.--

The credit against tax for investment and loss of investment in securities of qualified businesses shall be regulated by the corresponding provisions of law which are in force or any others that may be approved to that effect.

## Section 1051.05.-- Investment Increase Credit.--

**(a)** The tax imposed by this Subtitle on the dividends derived from industrial development income received by corporations organized under the laws of any state of the United States engaged in trade or business in Puerto Rico shall be credited by three percent (3%) of the investment made by the subsidiary before January 1, 1993, in the acquisition, construction and enlargement of buildings and other structures used in the manufacture in excess of the investment in such properties possessed by the subsidiary as of March 31, 1977. In such cases of corporations which have not enjoyed tax exemption under Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," or any other preceding similar law, any other law that substitutes or supplements them, for two (2) taxable years, this credit shall be allowed to the parent corporation for the increase in investments made by the subsidiary after the termination of its second year of tax exemption. This credit may be carried forward to subsequent taxable years.

**(b)** The investments in real property made for the purpose of obtaining the waiver provided in paragraph (6) of subsection (a) of Section 4 of the Puerto Rico Tax Incentives Act, as amended, may not be used for purposes of this section.

## Section 1051.06.-- Credit for Donations to the Santa Catalina Palace Endowment (*Patronato del Palacio de Santa Catalina*).--

**(a) Amount of the Credit.--** A tax credit shall be granted against the tax imposed by this Subtitle for the amount of credits for donations made or generated as a result of the efforts of the Santa Catalina Palace Endowment. The amount of said credit shall be fifty percent (50%) of the amount donated during the taxable year.

**(b)** This credit shall be in lieu of the deduction for donations granted under Sections 1033.15(a)(3). The amount of the credit that cannot be claimed in the taxable year in which the donation is made may be carried over to subsequent taxable years until used in its entirety.

**(c)** The tax credits to be granted shall not exceed two million five hundred thousand dollars ($ 2,500,000) for any taxable year.

**(d) Verification.--** All individuals, corporations, or partnerships that claim the tax credit set forth herein must attach a certification issued by the Palace of Santa Catalina Endowment to their income tax return as evidence that the donation was made and accepted.

## Section 1051.07.-- Credit for Increase in Procurements of Puerto Rican Agricultural Products.--

Every eligible business that increases the purchases of Puerto Rican agricultural products in lieu of products imported for local sale may claim a credit against the tax imposed under Subtitle A, as provided in this section.

(a) **Amount of Credit.--**  The credit provided in this section shall not be less than five percent (5%) and up to a maximum of twenty percent (20%) of the increase in the value of the purchase of agricultural products harvested, produced and manufactured in Puerto Rico during the specific taxable year in which the credit is claimed on the purchase of said products during the base period. The credit to which the business is entitled shall be fixed by means of a contract between the eligible business, the Secretary of Agriculture and the agricultural production centers developed by the Department of Agriculture or the agricultural sectors organized by the Department of Agriculture, through the implementation of Act No. 238 of September 18, 1996, known as the "Puerto Rico Agriculture and Livestock Industry Regulating Act," or with a qualified farmer. The criteria to determine the percentages to be granted shall be established through regulations approved by mutual agreement between the Secretary of Agriculture and the Secretary of the Treasury.

(b) **Limitation of Credit.--**  The credit provided by this section may be used to reduce the tax under Subtitle (A) up to twenty-five percent (25%). Any credit that is not used by the eligible business may be carried over to subsequent taxable years until used entirely, subject to the above limitation.

(c) **Definitions.--**  For purposes of this section, the following terms shall have the meanings stated hereinbelow:

(1) **Eligible Business.--**  Any business that acquires a Puerto Rican agricultural product under a contract between it, the Secretary of Agriculture and an agricultural production center developed by the Department of Agriculture or an agricultural sector organized by the Department of Agriculture through the implementation of Act No. 238 of September 18, 1996, known as the "Puerto Rico Agriculture and Livestock Industry Regulating Act," or a qualified farmer, to be sold directly to the consumer. To remain an eligible business and benefit from the credit provided through this section, the eligible business shall not reduce the level of procurements of qualified products in a proportion greater than fifteen percent (15%) of the level of procurements reached during the year prior to the period for which credit is requested. The Secretary of Agriculture shall issue a certificate of eligibility to qualify an eligible business under this section.

(2) **Agricultural Production Center Developed by the Department of Agriculture.--**  Groups of farmers and processing plants under the Agriculture Program of the Department of Agriculture promoted and developed through its Economic and Agricultural Development Program.

(3) **Agricultural Sector Organized by the Department of Agriculture.--**  Those agricultural sectors that have been organized and comply with Act No. 238 of September 18, 1996, known as the "Puerto Rico Agriculture and Livestock Industry Regulating Act."

(4) **Puerto Rican Agricultural Product.--**  Any product that can be sold to consumers, in its natural or processed state, which has been manufactured with products that are completely Puerto Rican or harvested in Puerto Rico by a qualified farmer. Products that qualify as "manufactured products," as said term is defined in Section 4050.10 of this Subtitle, are hereby excluded from the term "Puerto Rico agricultural product."

(5) **Qualified Farmer.--**  A farmer engaged in agricultural production and whose specific sector has not been regulated pursuant to the Puerto Rico Agriculture and Livestock Industry Regulating Act of September 18, 1996, or that an Agricultural Production Center has not been developed and is qualified by the Secretary of Agriculture pursuant to the parameters established by regulation.

(6) **Base Period.--**  Means the three (3) taxable years prior to the year in which the credit is claimed, or that part of said period that is applicable for businesses that do not have three (3) years of operations prior to the date of the request for credit. Provided, that those taxpayers who claim the credit provided in this section and who have maintained the increased level of purchases of qualified products from the date of the granting of the contract set forth in subsection (a), the base period shall be set as the period of three years ending during the second year of effectiveness of this section.

**Section 1051.08.-- Tax Credit Moratorium.--**

**(a)**   Notwithstanding the provisions of this Subtitle and of subsection (b) of this Section, for each taxable year starting after December 31, 2008, and before January 1, 2012, no credit may be claimed against the taxes imposed by this Subtitle on account of credits subject to moratorium prescribed in subsection (b) of this Section generated or granted prior to March 9, 2009. This moratorium shall not apply to any natural or juridical person to whom such credits were awarded or granted or to credits granted or awarded pursuant to final agreements with the Secretary of the Treasury made before to March 4, 2009. In the case of credit purchase, per request of the Secretary, attesting evidence of the date of purchase of such credits may be presented. In the case of such credits that have been granted, awarded or otherwise recognized under the exception provided in subsection (b) of Section 30 of Act No. 7 of March 9, 2009, as amended, the moratorium provided in this Section shall be for each of the taxable years starting after December 31, 2009 and before January 1, 2012.

**(b) Credits Subject to Moratorium.--**

**(1)**   Subsection (b) of Section 21 of Act No. 70 of June 23, 1978, as amended, known as the "Puerto Rico Solid Waste Authority";

**(2)**   Subsection (a) of Section 14 of Act No. 46 of January 28, 2000, as amended, known as the "Puerto Rico Investment Capital Fund Act of 1999";

**(3)**   Subsection (a) of Section 11 of Act No. 178 of August 12, 2000, as amended, known as the "Act to create a Theater District whose parameters shall cover from *Calle Bolivar to Calle Ernesto Cerra* in Santurce";

**(4)**   Subsection (a) of Section 17 of Act No. 183 of December 27, 2001, as amended, known as the "Puerto Rico Conservation Easement Act";

**(5)**   Subparagraphs (E) and (F) of Section 4.03 and Section 4.4 of Act No. 212 of August 29, 2002, as amended, known as the "Urban Centers Revitalization Act," except in the case of those credits grated under subparagraph (A) of paragraph (6) of subsection (a) of Section 30 of Act No. 7 of March 9, 2009, as amended, the moratorium shall apply as follows:

**(A)**   Credits Granted During Fiscal Year 2009-2010; it may only be claimed up to fifty percent (50%) of such credit in fiscal years starting after December 31, 2009, and before January 1, 2011; likewise, it may be claimed up to fifty percent (50%) in taxable years starting after December 31, 2010, and before January 1, 2012; and any remainder, in subsequent taxable years.

**(B)**   Credits Granted During Fiscal Year 2010-2011; it may only be claimed up to fifty percent (50%) of such credit in fiscal years starting after December 31, 2010, and before January 1, 2012; likewise, it may be claimed up to fifty percent (50%) in taxable years starting after December 31, 2011, and before January 1, 2013; and any remainder, in subsequent taxable years.

**(6)**   Subparagraph (A) of Section 3 of Act No. 140 of October 4, 2001, known as the "Tax Credits for Investment in New Construction and Rehabilitation of Affordable Housing," except such credits granted or pending final approval on sale or rental affordable housing projects or facilities for the elderly that meet the following requirements: (1) that have a qualification certificate and (2) that have a number of reserved credits.

**(7)**   Subsections (a) and (b) of Section 4 of Act 98 of August 10, 2001, as amended, known as the "Tax Credits for Special Investments in Housing Infrastructure Act,"

**(c)**   Any expiration term or period established to claim any of the credits prescribed in subsection (b) of this Section shall be deemed to be suspended during the period of moratorium and shall start to elapse again on January 1, 2012.

**(d) Information Return.--**   It shall be an unavoidable requirement to be entitled to claim any of the credits prescribed in subsection (b) of this Section in taxable years starting on or after January 1, 2012, and any

credit granted by Act No. 78 of September 10, 1993, as amended [23 L.P.R.A. §§ 6001 et seq.], Act No. 362 of December 24, 1999, as amended [23 L.P.R.A. §§ 571 et seq.], Sections 5(b) and 5A of Act No. 135 of December 2, 1997, as amended, Section 5 and 6 of Act No. 73 of May 28, 2008, and under Sections 4050.10, 1051.07, 1052.03, and 1052.04 of this Subtitle in taxable years starting on or after January 1, 2009, that the holder of such credit files with the Secretary on or before August 31, 2009, an information return, under penalty of perjury, in the manner and containing such details as the Secretary prescribes, indicating the amount of credits previously granted as of June 30, 2009. The credits shall be subject to a moratorium and, and such other credits that are not subject to moratorium and are not declared in such information return may not be claimed except that the Secretary of the Treasury determines that there was a reasonable cause for the exclusion of such credits from the information return. The Secretary of the Treasury shall make all the necessary efforts through the media to enforce this Section.


## SUBCHAPTER B -- REFUNDABLE CREDITS


### Section 1052.01.-- Earned Income Credit.--

(a) **Allowance of Credit.--**  As provided in this Section, there shall be allowed as a credit against income tax to any individual resident of Puerto Rico who earns gross income, as such term is defined in subsection (b) of this Section, and who are not claimed as dependents of another taxpayers for the taxable year, as such term is defined in Section 1033.18.

(1) For taxable years starting after December 31, 2010, but before January 1, 2012, the earned income credit shall be equivalent to three point five percent (3.5%) of such income earned up to a maximum credit of three hundred fifty dollars ($ 350) in a taxable year. In the case of individuals whose income earned is in excess of ten thousand dollars ($ 10,000), but not in excess of twenty-two thousand five hundred dollars ($ 22,500), the maximum credit prescribed in this paragraph shall be reduced to an item equal to two percent (2%) of the income earned in excess of ten thousand dollars ($ 10,000).

(2) For taxable years starting after December 31, 2011, but before January 1, 2013, the earned income credit shall be equivalent to four percent (4%) of such income earned up to a maximum of four hundred dollars ($ 400) in a taxable year. In the case of individuals whose income is in excess of ten thousand dollars ($ 10,000), but not in excess of twenty-five thousand dollars ($ 25,000), the maximum credit prescribed in this paragraph shall be reduced by an item equal to two percent (2%) of the income earned in excess of ten thousand dollars ($ 10,000).

(3) For taxable years starting after December 31, 2012, but before January 1, 2014, the earned income credit shall be equivalent to four point five percent (4.5%) of such income earned up to a maximum of four hundred fifty dollars ($ 450) in a taxable year. In the case of individuals whose income is in excess of ten thousand dollars ($ 10,000), but not in excess of twenty-seven thousand five hundred dollars ($ 27,500), the maximum credit prescribed in this paragraph shall be reduced by an item equal to two percent (2%) of the income earned in excess of ten thousand dollars ($ 10,000).

(4) For taxable years starting after December 31, 2013, but before January 1, 2015, the earned income credit shall be equivalent to five percent (5%) of such income earned up to a maximum of four hundred fifty dollars ($ 500) [sic.] in a taxable year. In the case of individuals whose income is in excess of ten thousand dollars ($ 10,000), but not in excess of thirty thousand dollars ($ 30,000), the maximum credit prescribed in this paragraph shall be reduced by an item equal to two percent (2%) of the income earned in excess of ten thousand dollars ($ 10,000).

(5) For taxable years starting after December 31, 2014, but before January 1, 2016, the earned income credit shall be equivalent to five point five percent (5.5%) of such income earned up to a maximum of four hundred fifty dollars ($ 550) [sic.] in a taxable year. In the case of individuals whose income is in excess of ten thousand dollars ($ 10,000), but not in excess of thirty-two thousand five hundred dollars ($ 32,500), the maximum credit prescribed in this paragraph shall be reduced by an item equal to two percent (2%) of the income earned in excess of ten thousand dollars ($ 10,000).

(6)  For taxable years starting after December 31, 2015, the earned income credit shall be equivalent to six percent (6%) of such income earned up to a maximum of four hundred and fifty dollars ($ 600) [sic.] in a taxable year. In the case of individuals whose income is in excess of ten thousand dollars ($ 10,000), but not in excess of thirty-five thousand dollars ($ 35,000), the maximum credit prescribed in this paragraph shall be reduced by an item equal to two percent (2%) of the income earned in excess of ten thousand dollars ($ 10,000).

**(b)  Earned Income.--**  The term "earned income" means wages, salaries, tips, any payment for services rendered by an employee to his/her employer, or any other employee compensation for services rendered, but only if such amounts are includible in gross income for the taxable year.

**(c)  Limitations.--**  For purposes of subsection (b) of this Section, the gross income earned shall be computed without regard to any community property laws, any amount received as a pension or annuity, taxable income under Section 1091.01 (relating to income of nonresident alien individuals), no amount received for services rendered by an individual while the individual is an inmate at a penal institution.

**(d)  Taxable Year of Less than Twelve (12) Months.--**  Except in the case of a taxable year ended by reason of the taxpayer's death, no credit shall be allowed under this Section in the case of a taxable year that covers a period of less than twelve (12) months.

**(e)  Credit Denial.--**  No credit whatsoever shall be allowed under subsection (a) if the taxpayer earns net income on account of interests or dividends, rentals or royalties, the sale of capital assets, child support payments in connection with divorce or separation, any other kind of income not treated as earned income, as defined under subsection (b) of this section, in excess of two thousand two hundred dollars ($ 2,200) for the taxable year.

**(f)  Credit Refund.--**  Any individual eligible for this credit may claim it in the income tax return, such credit shall be claimed against the tax determined after all other credits provided in this Subtitle. The amount of this credit that exceeds the determined tax shall be refunded to the taxpayer or may be credited against the estimated tax for the following taxable year.

**(g)  Restrictions to Individuals Who Unduly Claimed the Credit for the Prior Year.--**  Any taxpayer who unduly claims the earned income credit shall be responsible for the payment of an amount equal to the credit unduly claimed as income surtax, including interests, surcharges, and penalties, as provided in Subtitle F of this Code in the year in which the amount of the unduly claimed amount is determined. In case of fraud, the taxpayer, in addition to being responsible of the payment herein provided, shall be prevented from benefitting from the earned income tax for a period of ten (10) years counted as of the year in which the Secretary has determined the total of any amount unduly claimed.

## Section 1052.02.-- Credit for Low-income Persons Older than Sixty-five (65) Years of Age.--

**(a)  General Rule.--**  Any individual who, on the last day of the taxable year has reached the age of sixty-five (65) or more shall be entitled to a refundable personal compensatory credit of four hundred dollars ($ 400), but only if the gross income of such individual for the taxable year added to the items included in the gross income under Section 1031.01(b) for such year do not exceed fifteen thousand dollars ($ 15,000). In the case of married taxpayers, each one, separately, shall be entitled to claim the credit provided in this subsection if both are eligible thereto.

**(b)  Compensatory Credit for Low-income Pensioners.--**  In addition to the provisions of subsection (a), any individual who is pensioned by the Retirement System Administration of the Employees of the Government and the Judiciary, the Teacher's Retirement System, the Retirement System of the University of Puerto Rico, the Electric Power Authority Retirement System, or private-sector retirement system, whose only source of income is the pension for services rendered, if the amount received from such pension does not exceed four thousand eight hundred dollars ($ 4,800) during the taxable year, shall be entitled to claim a three hundred dollar ($ 300) annual credit. In the case of married individuals, each spouse shall be entitled to claim the credit provided in this subsection if both qualify therefor.

**Section 1052.03.-- Tax Credit Program for the Acquisition of Newly-built Housing.--**

(a)  **Definitions.--**   For purposes of this section, the following terms, words, and phrases shall have the general meaning stated below, except when the context clearly indicates otherwise:

(1)  **Certification or Certificate of Credit.--**  Means the written grant issued pursuant to the provisions of this section whereby the Secretary certifies that the credit is available to be claimed.

(2)  **Credit.--**   Means the tax credit for the acquisition, after December 14, 2007, of a newly-built housing with the endorsement of the Secretary by a certification of credit issued under this section.

(3)  **Developer.--**   Means any natural or juridical person duly licensed as developer by the Department of Consumer's Affairs, engaged in the construction business as entrepreneur or chief of marketing, design, sale, construction of housing developments and project works, whether single or multi-story type, provided that only for the purpose of this section the term "developer" shall also include such financial institutions that by virtue of a judicial or extrajudicial proceeding, or by agreement of dation in payment or similar transaction become the successor in interest of a developer.

(4)  **Predesigned Home Company.--**   Means any judicial entity registered in the Department of State of the Government of Puerto Rico to do business in the Government of Puerto Rico, engaged in the sale of one-story, two-story, or elevated predesigned homes, whose plans have been approved by the Administration of Regulations and Permits (ARPE, Spanish Acronym) on or before November 30, 2007.

(5)  In the case of a financial institution holding a credit approved under this section, at the close of any of its taxable years starting after December 31, 2007, and which is not able to use the tax credit provided by this section against its tax liability, if any, and has not assigned, sold or transferred the same, it may request such credit as a refundable credit within the term of effectiveness of the certificate of credit granting the right to such credit, following the procedures and rules establish by the Secretary of the Treasury through regulations or circular letter. Notwithstanding the foregoing, the Secretary of the Treasury shall not issue refunds under the provisions of this paragraph before January 1, 2011, unless the credits have been duly requested on or before March 9, 2009. A refund request under this provision shall not be subject to payment of interests, nor to the provisions of Section 9(j) of Act No. 230 of July 23, 1974, as amended, known as the "Accounting Act of the Government of Puerto Rico."

(7)  **Sales Price.--**   Means the acquisition price of the newly-built housing, as stated in the public instrument. Sales price shall not include attorney fees, internal revenue stamps, or other fees or charges in connection with the financing for the acquisition of the housing. The sales price shall not exceed the sales price established by the developer for purposes of the Newly-built Housing Inventory in effect by the developer as of October 31, 2007.

In the case of predesigned homes, the sales price means the cost of construction materials of the model selected by a predesigned enterprise, plus the labor and lot cost (if included in the loan), which is financed by a financial institution on a construction loan. The price shall not include attorney fees, internal revenue stamps, or other fees or charges in connection with the financing for the granting of the construction loan. The sales price of the construction materials of the model selected shall not exceed the price that the predesigned enterprise had in effect as of October 31, 2007.

(8)  **Qualified Residence.--**   Means a property that constitutes the main residence, acquired by the individual between December 14, 2007 and December 31, 2008, be it understood that for such purposes a main residence shall mean a newly-built housing that has been owned or used by the acquirer as his/her main residence for a term of not less than three (3) years, from its acquisition; provided, that if the acquirer fails to comply with the term herein provided, such failure shall not invalidate the credit originally granted.

(9)  **Newly-built Housing.--**

(A)   Means any housing unit included in the newly-built housing inventory that has not been previously occupied, and which has a sales price not exceeding two-hundred percent (200%) of the

limit set by the Federal Housing Administration (FHA) for the corresponding location, and also has all the endorsements, approvals, and permits required by the applicable laws and regulations, and which is directly acquired from a developer between December 14, 2007 and December 31, 2008 through a sale for which the financing of the sales price by a financial institution is required.

**(B)**   Also, means any predesigned home model whose plan has been approved by the Administration of Regulations and Permits (ARPE, Spanish acronym) on or before March 31, 2008, or whose permanent loan has been approved after such date, and which is suitable for family living, and has all the endorsements, approvals, and permits required by the applicable laws and regulations; and which acquired directly from a predesigned home company by an acquirer on or before December 31, 2008, requiring financing by a financial institution for the acquisition thereof; provided, further that if such property may be eligible for the benefits provided in this Act it shall be completed together with the request for the appropriate use permit and a sworn certification of completion of works on or before March 31, 2009.

**(b) Newly-built Housing Acquisition Tax Credit Grant.--**   The Secretary shall grant a credit against the income tax imposed in Subtitle A of the Code, including the estimated tax, subject to the provisions of this section and the regulations promulgated by the Secretary, as follows:

**(1) General Rule.--**   In the case of an individual who acquires newly-built housing, a credit equal to ten percent (10%) of the sales of such newly-built housing shall be granted up to a maximum of fifteen thousand dollars ($ 15,000).

The credit herein provided shall be issued through three (3) separate certificates of credit, as provided below:

**(A) First Installment.--**   In such cases in which the credit is approved in the maximum amount of fifteen thousand dollars ($ 15,000), the certificate attesting the first installment shall be issued in the amount of five thousand two hundred dollars ($ 5,200). If the credit is approved in an amount lower than the maximum amount of fifteen thousand dollars ($ 15,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

**(B) Second Installment.--**   In such cases in which the credit is approved in the maximum amount of fifteen thousand dollars ($ 15,000), the certificate attesting the first installment shall be issued in the amount of five thousand five hundred dollars ($ 5,500). If the credit is approved in an amount lower than the maximum amount of fifteen thousand dollars ($ 15,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

**(C) Third Installment.--**   In such cases in which the credit is approved in the maximum amount of fifteen thousand dollars ($ 15,000), the certificate attesting the first installment shall be issued in the amount of five thousand eight hundred dollars ($ 5,800). If the credit is approved in an amount lower than the maximum amount of fifteen thousand dollars ($ 15,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

**(2) Qualified Residence Acquisition.--**   In the case an individual acquires a qualified residence, the credit shall be equal to twenty percent (20%) of the sales price up to a maximum amount of twenty-five thousand dollars ($ 25,000).

The credit herein provided shall be issued through three (3) separate certificates of credit, as provided below:

**(A) First Installment.--**   In such cases in which the credit is approved in the maximum amount of twenty-five thousand dollars ($ 25,000), the certificate attesting the first installment shall be issued in the amount of eight thousand eight hundred dollars ($ 8,800). If the credit is approved in an amount lower than the maximum amount of twenty-five thousand dollars ($ 25,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

**(B)  Second Installment.--**  In such cases in which the credit is approved in the maximum amount of twenty-five thousand dollars ($ 25,000), the certificate attesting the first installment shall be issued in the amount of nine thousand two hundred dollars ($ 9,200). If the credit is approved in an amount lower than the maximum amount of twenty-five thousand dollars ($ 25,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

**(C)  Third Installment.--**  In such cases in which the credit is approved in the maximum amount of twenty-five thousand dollars ($ 25,000), the certificate attesting the first installment shall be issued in the amount of nine thousand six hundred dollars ($ 9,600). If the credit is approved in an amount lower than the maximum amount of twenty-five thousand dollars ($ 25,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

**(3)**  To be entitled to the credit herein provided, the balance of principal of the acquirer's obligation to acquire the newly-built housing shall be credited in an amount equal to the amount of tax credit granted.

**(4)**  Under no circumstances an individual may claim more than twice the benefit of the tax credit provided in this section and in Section 1052.04. In the case of an individual who claims the benefit of both Sections, the two (2)-transaction limit shall apply in the aggregate.

**(5)  Financing Required Sale.--**  For the purpose of this section, the phrase "sale for which financing is required", except as provided below, shall mean that the promissory note attesting the loan from the financial institution shall never be higher than the sales price of the housing minus the credit requested pursuant to the provisions of this section.

**(6)**  In the instances described below, the promissory note attesting the loan from the financial institution may be higher than the sales price of the housing minus the credit requested pursuant to the provisions of this section:

**(A)  Loans under the Federal Housing Administration (FHA).--**  In the case of FHA loans, only for the amount of the mortgage insurance premium granted by the FHA. Furthermore, in the case of the FHA's Rehabilitation Mortgage Insurance Program (FHA 203k), the promissory note attesting the loan from the financial institution may be up to one hundred ten percent (110%) of the appraisal price, as allowed under the FHA 203K program prohibiting the use of the loan to turn the residence into a unit of two (2) or more housing units.

**(B)  Loans under Rural Economic and Community Development Formerly Farmer's Home Administration (Farmer's Home Rural Development).--**  In the case of loans granted under the guaranty program (regular program), up to the appraisal price, as allowed under the Farmer's Home Rural Development Program.

**(C)  Loans for Veterans under Veterans Affairs (VA).--**  In the case of loans granted under the VA Funding Fee program, up to the appraisal price, as allowed under the VA.

**(D)  Mortgage Guaranty Insurance Corporation Loans.--**  In the case of mortgage guaranty insurance loans granted, only for the financed amount of the mortgage guaranty insurance loan.

**(c)  Request for Credit.--**  Any financial institution interested in obtaining credit under this section shall submit to the Secretary the following information:

**(1)**  In the case of the credits provided in subsection (b) of this section:

**(A)**  Identification number of the housing in the newly-built housing inventory;

**(B)**  A copy of the deed of sale;

**(C)**  A copy of the deed of mortgage whereby the financing of such housing is guaranteed; and

**(D)**  Copy of the request for tax exemption for purposes of the Municipal Revenue Collections Center (CRIM, Spanish Acronym) in case the newly-built housing is a qualified residence.

**(2)** In addition to the requirements established in paragraph (1), the financial institution shall comply with the terms, documents, and information required by the Secretary through regulations or any official communication issued by him/her to such effects.

**(3)** The Secretary shall approve or deny the credits within thirty (30) calendar days following the date in which all the documents necessary to grant the credit provided in this section have been filed. If the Secretary fails to deny the request for credit within the above provided term, the credit shall be deemed to be granted.

**(d) Availability of Credit.--** The credit provided in this section shall be available to the person who is entitled thereto, against the income tax provided by Subtitle A of this Code, including the estimated tax, according to the effective term of each certification of credit issued by the Secretary. The certifications of credit to be issued pursuant to this section shall be used in three (3) installments to be claimed during a period of three (3) consecutive taxable years from the taxable years starting after December 31, 2007. For such purposes, the term to use the credits granted pursuant to this section under the first installment shall be between January 1, 2008 and June 30, 2009; the term to use the credits granted pursuant to this section under the second installment shall be between July 1, 2009 and June 30, 2010; the term to use the credits granted pursuant to this section under the third installment shall be between July 1, 2010 and June 30, 2011.

**(e) Credit Assignment, Sale or Transfer.--**

**(1)** The credit granted by this section may be totally assigned, sold, or otherwise transferred by a financial institution.

**(2) Notice.--** The financial institution or person interested in the assignment, sale, or transfer of the credit as well as the acquirer of the credit shall notify the Secretary of the assignment, sale, or transfer in accordance with the terms and conditions prescribed by the Secretary.

**(3)** The money or the value of the property received in exchange for the credit shall be tax-exempt under the Code up to an amount which is equal to the amount of the credit assigned, sold, or transferred.

**(4)** When the tax credit granted by this section is assigned sold, or transferred, the difference between the amount of the credit and the amount paid for the same shall not be treated as income for the acquirer of the credit.

**(5)** In the case of a financial institution that holds a credit granted under this section at the close of any of its taxable years starting after December 31, 2007, and is not able to use such credit against its tax liability, if any, and has not assigned, sold, or transferred such credit, the institution may request such credit as a refundable credit within the effective term of the certificate of credit that entitled it thereto, following the procedures and rules established by the Secretary through regulations or circular letter. Notwithstanding the foregoing, the Secretary shall not issue refunds under the provisions of this paragraph before January 1, 2011, unless the same have been duly requested not later than March 9, 2009. A refund requested under these provisions shall not be subject to payment of interests nor to the provisions of Section 9(j) of Act No. 230 of July 23, 1974, as amended, known as the "Accounting Act of the Government of Puerto Rico." The duly requested refunds under the provisions of this paragraph shall be issued by the Secretary at a maximum ratio of twenty million dollars ($ 20,000,000) per fiscal year, starting in fiscal year 2011-2012. In no case the total amount of the refunds issued under this Section 1052.03 and under Section 1052.04 shall exceed the maximum amount of twenty million dollars ($ 20,000,000) per fiscal year.

**(f) Credit Denial or Revocation.--**

**(1) Denial.--** The Secretary may deny any request filed under this section when he/she determines in his/her discretion that a credit grant is not warranted, taking into consideration the facts presented, the conditions and requirements provided in this section, and the regulations adopted thereunder.

**(2) Revocation.--** The credits granted under this section shall be irrevocable.

**(g)  Special Surtax.--**  In the case of an acquirer of a qualified residence who fails to comply with the three (3)-year term of ownership and use thereof, pursuant to paragraph (8) of subsection (a) of Section 1052.03 and its equivalent under the Puerto Rico Internal Revenue Code of 1994, the acquirer shall be responsible to the Secretary for a special surtax equal to the originally granted credit. To such effects, a clause shall be added in the deed of sale for the acquisition of a qualified residence pursuant to this section.

**(h)  Maximum Credit Cap.--**  The aggregate maximum amount of tax credits available to be distributed under this section shall be two hundred twenty million dollars ($ 220,000,000).

**(i)  Housing Inventory Registration Requirement.--**  Any Developer interested in one (1) or more units of a residential project, to be eligible for the credit provided in this section, shall submit to the Department of Consumer's Affairs an inventory of the units to be qualified, including the following information:

**(1)**  identification of the consultation for the project in question;

**(2)**  name of the project;

**(3)**  total units approved;

**(4)**  total units sold as of October 31, 2007;

**(5)**  total units completed that have the endorsements, approvals, and permits required by the applicable laws and regulations, but not sold as of October 31, 2007;

**(6)**  total units started but not completed as of October 31, 2007;

**(7)**  sales price of the units stated in paragraph (4);

**(8)**  the sales price of the units stated in paragraphs (5) and (6).

The sales price for the purpose of these paragraphs shall not exceed the price that the developer has had in effect as of October 31, 2007 as the sales price of a completed unit, taking into consideration that a reduction equivalent to the fair market value of any goods, services, or discounts in effect as of the date in which it has been used as an offer to the acquirer to incentivize the sale thereof, such as the inclusion of home appliances, landscaping design or gardening offer, club membership, maintenance fee exemption, expense reimbursement, and any other similar offer.

**(9)**  Copy of every promotion that the developer has used as an offer to the acquirer to incentivize the purchase of the housing as of October 31, 2007.

**(10)**  Certification of solar water heater installation on each housing that has its own private roof.


### Section 1052.04.-- Existing Housing Acquisition Tax Credit Program.--

**(a)  Definitions.--**  For purposes of this section, the following terms, words, and phrases shall have the general meaning stated below, except when the context clearly indicates otherwise:

**(1)  Certification or Certificate of Credit.--**  Means the written grant issued pursuant to the provisions of this section whereby the Secretary certifies that the credit is available to be claimed.

**(2)  Credit.--**  Means the tax credit for the acquisition, after December 14, 2007, of an existing housing with the endorsement of the Secretary by a certification of credit issued under this section.

**(3)  Financial Institution.--**  Shall have the meaning provided in Section 1033.17(f)(4) of the Code, and includes any entity authorized to grant mortgage financing.

**(4)  Sales Price.--**  Means the acquisition price of the existing housing, as stated in the public deed. The same shall not include attorney fees, internal revenue stamps, or other fees or charges in connection with the financing for the acquisition of the housing.

**(5)  Existing Housing.--**  Means property included in the inventory that for purposes of this section is kept by the Department of Consumer's Affairs, which property has a sales price with the permits, endorsements, and approvals required by the applicable laws and regulations, which constitutes the

main residence acquired by an individual on or before December 31, 2008 through a sale for which sales price financing by a financial institution is required; be it understood that, for these purposes, a main residence shall mean an existing housing owned or used by the acquirer as his/her main residence for a term of not less than three (3) years, after the acquisition thereof; provided, that if the acquirer fails to comply with the term herein provided the credit originally granted shall not be invalidated.

**(6) Sale for which Financing is Required.--**   For the purpose of this section, the phrase "sale for which financing is required," except as provided below, shall mean that the promissory note attesting the loan from the financial institution shall never be higher than the sales price of the housing minus the credit requested pursuant to the provisions of this section, nor lower than two hundred twenty-five percent (225%) of the total amount of the tax credit for which the individual is eligible.

In the instances described below, the promissory note attesting the loan from the financial institution may be higher than the sales price of the housing minus the credit requested pursuant to the provisions of this section:

**(A) Loans under the Federal Housing Administration (FHA).--**   In the case of FHA loans, only for the amount of the mortgage insurance premium granted by the FHA. Furthermore, in the case of the FHA's Rehabilitation Mortgage Insurance Program (FHA 203k), the promissory note attesting the loan from the financial institution may be up to one hundred ten percent (110%) of the appraisal price, as allowed under the FHA 203K program prohibiting the use of the loan to turn the residence into a unit of two or more housing units.

**(B) Loans under Rural Economic and Community Development Formerly Farmer's Home Administration (Farmer's Home Rural Development).--**   In the case of loans granted under the guaranty program (regular program), up to the appraisal price, as allowed under the Farmer's Home Rural Development program.

**(C) Loans for Veterans under Veterans Affairs (VA).--**   In the case of loans granted under the VA Funding Fee program, up to the appraisal price, as allowed under the VA.

**(D) Mortgage Guaranty Insurance Corporation Loans.--**   In the case of mortgage guaranty insurance loans granted, only for the financed amount of the mortgage guaranty insurance loan.

**(b) Existing Housing Acquisition Tax Credit Grant.--**   The Secretary shall grant a credit against the income tax imposed in Subtitle A of the Code, including the estimated tax, subject to the provisions of this section and the regulations promulgated by the Secretary, as follows:

**(1) General Rule.--**   In the case of an individual who acquires an existing housing, a credit equal to ten percent (10%) of the sales of such existing housing shall be granted up to a maximum of ten thousand dollars ($ 10,000).

**(A)**   The credit herein provided shall be issued through three (3) separate certificates of credit, as provided below:

**(i) First Installment.--**   In such cases in which the credit is approved in the maximum amount of ten thousand dollars ($ 10,000), the certificate attesting the first installment shall be issued in the amount of three thousand five hundred dollars ($ 3,500). If the credit is approved in an amount lower than the maximum amount of ten thousand dollars ($ 10,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

**(ii) Second Installment.--**   In such cases in which the credit is approved in the maximum amount of ten thousand dollars ($ 10,000), the certificate attesting the first installment shall be issued in the amount of three thousand six hundred dollars ($ 3,600). If the credit is approved in an amount lower than the maximum amount of ten thousand dollars ($ 10,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

(C)  **Third Installment.--**  In such cases in which the credit is approved in the maximum amount of ten thousand dollars ($ 10,000), the certificate attesting the first installment shall be issued in the amount of three thousand eight hundred dollars ($ 3,800). If the credit is approved in an amount in lower than the maximum amount of ten thousand dollars ($ 10,000), the certificate attesting the first installment shall be issued in an amount in the same proportion as the one herein stated.

(2)  To be entitled to the credit herein provided, the balance of the principal of the acquirer's liability to acquire the existing housing shall be credited in an amount equal to the amount of tax credit granted.

(3)  Under no circumstances an individual may claim more than twice the benefit of the tax credit provided in this section and in Section 1052.03. In the case of an individual who claims the benefit of both Sections, the two (2)-transaction limit shall apply in the aggregate.

(c)  **Request for Credit.--**  Any financial institution interested in obtaining credit under this section shall submit to the Secretary the following information:

(1)  In the case of the credits provided in subsection (b) of this section:

(A)  Identification number of the housing in the existing housing inventory;

(B)  a copy of the deed of sale;

(C)  a copy of the deed of mortgage whereby the financing of such housing is guaranteed; and

(D)  copy of the request for tax exemption for purposes of the Municipal Revenue Collections Center (CRIM, Spanish Acronym).

(2)  In addition to the requirements established in paragraph (1), the financial institution shall comply with the terms, documents, and information required by the Secretary through regulations or any official communication issued by him/her to such effects.

(3)  The Secretary shall approve or deny the credits within twenty (20) calendar days following the date in which all the documents necessary to grant the credit provided in this section have been filed. If the Secretary fails to deny the request for credit within the above provided term, the credits shall be deemed to be granted.

(d)  **Availability of Credit.--**  The credit provided in this section shall be available to be used by the person who is entitled thereto, against the income tax provided by Subtitle A of this Code, including the estimated tax, according to the effective term of each Certification of Credit issued by the Secretary. The certifications of credit to be issued pursuant to this section shall be used in three (3) installments to be claimed during a period of three (3) consecutive taxable years from the taxable years starting after December 31, 2007. For such purposes, the term to use the credits granted pursuant to this section under the second installment shall be between January 1, 2008 and June 30, 2009; the term to use the credits granted pursuant to this section under the second installment shall be between July 1, 2009 and June 30, 2010; the term to use the credits granted pursuant to this section under the third installment shall be between July 1, 2010 and June 30, 2011.

(e)  **Credit Assignment, Sale or Transfer.--**

(1)  The credit granted by this section may be totally assigned, sold, or otherwise transferred by a financial institution.

(2)  **Notice.--**  The financial institution or person interested in the assignment, sale, or transfer of the credit as well as the acquirer of the credit shall notify the Secretary of the assignment, sale, or transfer in accordance with the terms and conditions prescribed by the Secretary to such effects.

(3)  The money or the value of the property received in exchange for the credit shall be tax-exempt under the Code up to an amount which is equal to the amount of the credit assigned, sold, or transferred.

**(4)** When the tax credit granted by this section is assigned sold, or transferred, the difference between the amount of the credit and the amount paid for the same shall not be treated as income for the acquirer of the credit.

**(5)** In the case of a financial institution that holds a credit granted under this section at the close of any of its taxable years starting after December 31, 2007, and is not able to use such credit against its tax liability, if any, and has not assigned, sold, or transferred such credit, the institution may request such credit as a refundable credit within the effective term of the certificate of credit that entitles it thereto, following the procedures and rules established by the Secretary through regulations or circular letter. Notwithstanding the foregoing, the Secretary shall not issue refunds under the provisions of this paragraph before January 1, 2011, unless the same have been duly requested not later than March 9, 2009. A refund requested under these provisions shall not be subject to payment of interests nor to the provisions of Section 9(j) of Act No. 230 of July 23, 1974, as amended, known as the "Accounting Act of the Government of Puerto Rico." The refunds duly requested under the provisions of this paragraph shall be issued by the Secretary at a maximum ratio of twenty million dollars ($ 20,000,000) per fiscal year, starting in fiscal year 2011-2012. In no case the total amount of the refunds issued under this Section 1052.03, and under Section 1052.04 shall exceed the maximum amount of twenty million dollars ($ 20,000,000) per fiscal year.

**(f)  Credit Denial and Revocation.--**

**(1)  Denial.--**  The Secretary may deny any request filed under this section when he/she determines in his/her discretion that a credit grant is not warranted, taking into consideration the facts presented, and the conditions and requirements provided in this section and the regulations adopted thereunder.

**(2)  Revocation.--**  The credits granted under this section shall be irrevocable.

**(g)  Special Surtax.--**  In the case of an acquirer of an existing housing who fails to comply with the three (3)-year term of ownership and use thereof, pursuant to this section, the acquirer shall be responsible to the Secretary for a special surtax equal to the originally granted credit. A clause shall be added in the deed of sale for the acquisition of an existing housing pursuant to this section.

**(h)  Maximum Credit Cap.--**  The maximum amount of two hundred twenty million dollars ($ 220,000,000) in tax credits available to be distributed under Section 1052.03 of this Code, shall be reduced by the total amount of tax credits available under this section for the acquisition of a maximum of three thousand five hundred (3,500) existing housing units. In no case the total amount of tax credits available under Sections 1052.03 and 1052.04 of the Code shall exceed the amount of two hundred twenty million dollars ($ 220,000,000).

**(i)  Housing Inventory Registration Requirement.--**  Any individual, estate, financial institution or any other juridical person interested in an existing residence eligible for the credit provided in this section shall resort to a financial institution in order for it to report to the Department of Consumer's Affairs the sales price offered for such housing and obtain a certification from the Department of Consumer's Affairs establishing that such existing housing is one of the three thousand five hundred (3,500) housing units eligible for the credit provided in this section.

## SUBCHAPTER C -- CREDIT FOR TAX WITHHELD AND PAID

### Section 1053.01.-- Credit for Withholding at the Source on Payments Made for Services Rendered.--

The tax withheld at the source in accordance with Section 1062.03 with respect to payments made for services rendered shall be allowed as a credit against the tax imposed by this Subtitle.

### Section 1053.02.-- Tax Withheld at Source.--

The amount of tax withheld at the source under Section 1062.08 or Section 1062.11 shall be allowed as a credit against the tax.

**Section 1053.03.-- Credit for Overpayment.--**

The credit against the tax for tax overpayments imposed by this Subtitle for other taxable years shall be governed by the provisions of Section 6021.02 of Subtitle F of this Code.

**Section 1053.04.-- Credit for Tax Withheld on Wages and Interest.--**

    **(a) In General.--**   The amount deducted and withheld as tax under Section 1062.11 during any calendar year on the wages of any individual shall be allowed as a credit to the recipient of the income against the tax imposed by this Subtitle for the taxable year beginning in such calendar year. If more than one taxable year begins in any such calendar year, such amount shall be allowed as a credit against the tax for the last taxable year so beginning.

    **(b) Credit for Withholdings on Interest.--**   When a recipient of interest opts to pay the ten percent (10%) tax or the seventeen percent (17%) tax, as applicable, provided in Sections 1023.04 or 1023.05, and then when he/she files his/her income tax return he/she decides to include and fails to include said interest as part of his/her net taxable income, the tax withheld pursuant to the provisions of Section 1062.09 shall be allowed as a credit against the tax that he/she should pay.

    In case the recipient of the interest opts not to include the same as part of his/her net taxable income subject to regular tax in his/her income tax return, he/she shall be allowed a credit for the tax withheld on the interest exempt under Section 1031.02(a)(3)(K).

    **(c) Exception.--**   No credit shall be allowed under this section to the persons indicated in the following paragraphs (1), (2) and (3) of this subsection, when the amounts withheld by the corporation or partnership as income tax have not been paid to the Secretary:

        **(1)** The directors of a corporation who were in office when the withheld taxes were not duly paid to the Treasury;

        **(2)** any shareholder who holds more than fifty percent (50%) of the total combined voting power of all the classes of voting stock in a corporation, or

        **(3)** a partner in any kind of partnership or joint venture.

    **(d) Ownership of Stock.--**   For purposes of subsection (c)(2), the ownership of stock shall be determined pursuant to the rules prescribed in Section 1010.05.

**Section 1053.05.-- Credit for Taxes Withheld on Dividend Distributions.--**

In the case of a taxpayer that has elected under Section 1023.06(i)(2), to include the dividend distribution in the return as part of his/her net taxable income subject to regular tax, the amount of tax withheld at source, pursuant to Section 1023.06, with respect to said payments shall be allowed as a credit against the tax imposed by this Subtitle.

**Section 1053.06.-- Credit for Taxes Withheld on the Distributive Share in a Partnership or Limited Liability Company.--**

The amount of tax withheld at source under Sections 1062.06 and 1062.07 with respect to the distributive share in a partnership or limited liability company shall be allowed as a credit against the tax imposed by this Subtitle to the partners of a partnership or members of a limited liability company.

**Section 1053.07.-- Credit for Taxes Withheld on Distributive Share in a Special Partnership.--**

The amount of tax withheld at the source under Sections 1062.04, 1062.10, and 1062.11 with respect to the distributive share in a special partnership shall be allowed as a credit against the tax imposed by this Subtitle to the partners of a partnership.

**Section 1053.08.-- Credit for Withheld Taxes on Ascribed Items in a Corporation of Individuals.--**

The tax withheld at the source pursuant to Section 1062.05 with respect to the estimate of ascribed items in a corporation of individuals shall be allowed as a credit against the tax imposed by this Subtitle to the stockholders of a corporation of individuals.

**Section 1053.09.-- Credit for Taxes Withheld at Source on Indemnification Payments Received in Judicial and Extrajudicial Proceedings.--**

The amount of tax withheld at the source under Section 1062.02 with respect to indemnification payments received in judicial and extrajudicial proceedings shall be allowed as a credit against the tax imposed by this Subtitle.

**Section 1053.10.-- Credits for Payment of Estimated Tax.--**

The tax paid in accordance with Sections 1061.21 (regarding the estimated tax payment by individuals) and 1061.23 (regarding the estimated tax paid by corporations) shall be allowed as a credit against the tax imposed by this Subtitle.

**CHAPTER 6 --** TAX RETURNS AND PAYMENT

**SUBCHAPTER A --** INCOME TAX RETURNS

**Section 1061.01.-- Individual Tax Returns.--**

**(a)  Requirement to File.--**  Each of the following individuals shall file a return which shall contain or shall be authenticated by means of a written statement or by electronic signature, in those cases in which electronic means are used to file a return, that such return is filed under penalty of perjury, on which it is stated and included those details that the Secretary shall prescribe through regulations, the gross income, deductions, and credits items allowed under this Subtitle and any other information needed in order to comply with the provisions of this Subtitle, as required by said regulations:

**(1)**  Any individual resident of Puerto Rico who is a single or married taxpayer, if having a gross income for the taxable year of over five thousand dollars ($ 5,000);

**(2)**  Any individual nonresident of Puerto Rico during all or part of the taxable year and who is a citizen of the United States, if he/she is single or married and if he/she has for the taxable year a gross income from sources within Puerto Rico of more than five thousand dollars ($ 5,000), unless the tax on said income has been paid in full at source;

**(3)**  Any nonresident alien individual in Puerto Rico who has had gross income from sources within Puerto Rico for the taxable year, unless the tax on said income has been paid in full at source.

**(a)  Married Taxpayers.--**

**(1)**  In the case of married individuals, as defined in Section 1010.03(a)(2), if a husband and wife live together and have an aggregate gross income for the taxable year of over five thousand dollars ($ 5,000), the total income of both shall be included in a joint return and the tax imposed under Section 1021.01 shall be computed on the aggregate income. The gross income received by any one of the spouses shall not be divided between them.

**(2)**  If a husband and wife do not live together, each one of them, pursuant to the provisions of paragraph (1) or (2) of subsection (a), shall file a tax return including the corresponding total income earned according to the provisions of paragraph (3), and the tax imposed under Section 1021.01 shall be computed on said income.

**(3)**  In case of spouses who, in accordance with the provisions of paragraph (2), are required to file separate returns, the following items shall be considered as corresponding individually to each one of said spouses:

**(A)**  Gross income derived from salaries, wages, pay or compensation of any kind and in whatever manner paid for personal services rendered or for remuneration in the exercise of a profession, trade or business on his/her part; and

**(B)**  The aggregate of the earnings, profits (or losses) on incomes derived from any source other than that prescribed in subparagraph (A), over which the spouse has control or has actually and effectively enjoyed. In the event that one of the spouses has the control over certain earning, profit or income, but it is the other spouse who has actually and effectively enjoyed it, said earning, profit or income shall correspond to the spouse who has actually and effectively enjoyed it.

**(4)  Separate Returns of Spouses.--**  Notwithstanding the provisions in subsection (a) and in paragraph (1) of this subsection, spouses who are living together at the close of the taxable year may opt to file separate returns for such taxable year, subject to the following conditions:

**(A)**  The statement required under subsection (a) shall be filed when the gross income of the spouse is two thousand five hundred dollars ($ 2,500) or more.

**(B)**  The gross income, the personal exemption, the allowable deductions (except for the provisions of Section 1033.15(a)(1)(E)) and the tax on such income of each spouse shall be determined pursuant to paragraphs (1) through (6) of subsection (a) of Section 1021.03 as if the spouses were filing a joint return, and have opted to determine the tax under the optional computation.

**(C)**  The spouses may not have paid their estimated joint tax for said taxable year.

**(c)  Persons with Disabilities.--**  If the taxpayer is unable to file his/her own return, the return shall be filed by a duly authorized agent or by the guardian or other person charged with the care of the person or property of such taxpayer.

**(d)  Fiduciaries.--**  Returns to be filed by fiduciaries shall be governed by the provisions of Section 1061.13. However, in the case of the death of one of the spouses, when a receiver or executor of the estate has not been appointed prior to the due date to file the return for the taxable year provided in subsection (f) of Section 1061.24, said return may be signed by the surviving spouse. If a receiver or executor of the estate has been appointed, said receiver or executor may, upon filing a return on behalf of the deceased spouse, challenge the return originally filed by the surviving spouse within a term of one (1) year as of the due date established in the Code to file the return of the deceased spouse for the taxable year set forth in subsection (f) of Section 1061.24. In said case, the return filed by the receiver or executor shall be considered to be the return of the deceased spouse.

**(e)  Time and Place to File an Individual Return.--**  The individual returns shall be filed as provided in Section 1061.16.

## Section 1061.02.-- Corporation Returns.--

**(a)**  Every corporation subject to taxation under this Subtitle shall file a return stating specifically the items of its gross income and the deductions and credits allowed by this Subtitle, and such other information, for the purpose of complying with the provisions of this Subtitle as the Secretary may by regulations prescribe. The return shall be sworn under penalty of perjury by the person or persons appointed president, vice-president, or other chief officer, and by the treasurer or assistant treasurer or other chief accounting officer. Notwithstanding the above, in those cases in which returns are filed electronically, the electronic signature

of the above mentioned officers shall be accepted as evidence of authentication that the returns are filed under penalty of perjury. Such returns must enclose financial statements, subject to the provisions of Section 1061.15. In cases where receivers, trustees in bankruptcy, or assignees are managing the property or business of corporations, such receivers, trustees, or assignees shall file returns for such corporations in the same manner and form as profitable corporations are required to file. Any tax due on the basis of such returns filed by receivers, trustees, or assignees shall be collected in the same manner as if from the corporations over whose business or property they have custody and control.

**(b) Time and Place to File the Corporation Returns.--**  Corporation returns shall be filed as provided in Section 1061.16.

**(c)**  The provisions of this subsection shall not apply to International Insurers or to International Insurer Holding Companies that comply with Article 61.040 of the Insurance Code of Puerto Rico. However, International Insurer Holding Companies that comply with Article 61.040 of the Insurance Code of Puerto Rico shall file the certification required by Article 61.040(6) of the Insurance Code of Puerto Rico with the Secretary of the Treasury.


**Section 1061.03.-- Partnership Returns.--**

**(a) General Rule.--**  Every partnership shall file a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by this Subtitle, the names, address, and account numbers of partners who shall participate in the partnership's gain or loss for such taxable year, and the amounts of such gains or losses. The returns filed under this Section on a calendar year basis shall be filed not later than March 15 following the close of such calendar year. The returns submitted on the basis of fiscal year shall be filed not later than the fifteenth (15th) day of the third (3rd) month following the close of the taxable year of the partnership. Any amount due on the account of estimated payment as provided in Section 1062.07 shall be paid in full when filing the return required by this Section. The return shall be signed under penalty of perjury by the managing partner. Notwithstanding the above, in those cases in which returns are filed electronically, the electronic signature of the managing partner shall be accepted as evidence of authentication that the returns are filed under penalty of perjury. Such returns must enclose financial statements, subject to the provisions of Section 1061.15. The Secretary may prescribe by regulations such other information that shall be included in this return.

**(b) Report to Partners.--**  Each partnership required to file a return under subsection (a) for any taxable year shall, not later than the third (3rd) month following the close of its taxable year, furnish to each person who is a partner, a report containing such information as required to be included in the partner's return, including the amount of the distributive share in each of the items prescribed in Sections 1071.03 and 1071.04, the initial contribution, and the additional contributions made by the partner to the partnership capital, the distributions made by the partnership, and any other additional information required by regulations.

**(c) Automatic Extension.--**  An automatic extension shall be granted to file a return required under subsection (a) provided that the rules and regulations that the Secretary prescribes to grant such extension are complied with. This automatic extension shall be granted for a three (3) month period counted as of the due date set in subsection (a) for filing the return, provided that the partnership requests such extension not later than on the return filing date.

**(d) Extension.--**  The Secretary may, under the rules and regulations he/she prescribes, grant partnerships an automatic extension to file the information required under subsection (b) for a period which shall not exceed one (1) month counted as of the date established in such subsection (b) to submit the report to partners. The Secretary shall prescribe by regulation the information to be included in the return.

**(e)**  In the case of a partnership existing as of the effective date of this Code that, pursuant to the requirements prescribed by the Secretary through regulations, administrative determination, or circular letter to such effect, opts to continue to be treated as a corporation for purposes of this Subtitle, shall file its

income tax return in the same manner and form as a corporation, subject to the provisions of Section 1061.02.

**Section 1061.04.-- Limited Liability Company Return.--**

(a) **General Rule.--** Every limited liability company shall file a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by this Subtitle. It must state the names, address, and account numbers of members who shall participate in the limited liability company gain or loss for such taxable year, and the amounts of such gains or losses. The returns filed under this Section on a calendar year basis shall be filed not later than March 15 following the close of such calendar year. The returns submitted on a fiscal year basis shall be filed not later than the fifteenth (15th) day of the third (3rd) month following the close of the taxable year of the limited liability company. Any amount due on the account of estimated payment as provided in Section 1062.06 shall be paid in full when filing the return required by this Section. The return shall be sworn under penalty of perjury by the president, vice-president, treasurer or assistant treasurer, or other chief accounting officer. Notwithstanding the above, in those cases in which returns are filed electronically, the electronic signature of the above mentioned officers shall be accepted as evidence of authentication that the returns are filed under penalty of perjury. Such returns must enclose financial statements, subject to the provisions of Section 1061.15. The Secretary may prescribe by regulations the information to be included in this return.

(b) **Report to Members.--** Each limited liability company required to file a return under subsection (a) for any taxable year shall, not later than the last day of the third (3rd) month following the close of its taxable year, furnish to each person who is a member of said limited liability company a report containing such information as required to be included in the member's return, including the amount of the distributive share of the member in each of the items prescribed in Sections 1071.03 and 1071.04, the initial contribution, and the additional contributions made by the member to the limited liability company capital, the distributions made by the limited liability company, and any other additional information required by regulations.

(c) **Automatic Extension.--** An automatic extension shall be granted to file the return required under subsection (a) provided that such rules and regulations that the Secretary prescribes to grant such extension are complied with. This automatic extension shall be granted for a three (3) month period counted as of the due date set in subsection (a) for filing the return, provided that the limited liability company requests such extension not later than on the return filing date.

(d) **Extension.--** The Secretary may, under such rules and regulations as he/she prescribes, grant limited liability companies an automatic extension to file the information required under subsection (b) for a period which shall not exceed one (1) month counted as of the date set in such subsection (b) to submit the report to members. The Secretary shall prescribe by regulation the information to be included in the return.

(e) In the case of limited liability companies treated as corporations, for purposes of this Subtitle they shall file their income tax returns in the same manner and form as corporations, subject to the provisions of Section 1061.02.

**Section 1061.05.-- Nonprofit Entity Returns.--**

(a) **General Rule.--** Except as provided below, every tax-exempt organization under Chapter 10 of this Subtitle shall file an annual return which shall contain or be authenticated through a written statement attesting that the return is filed under penalty of perjury or through electronic signature in those cases in which returns are filed electronically, stating specifically the items of its gross income and the incomes and expenditures and any such other information necessary to comply with the provisions of this Subtitle, and shall keep such proofs, and file sworn financial statements, and file such returns, and comply with the rules and regulations the Secretary may from time to time prescribe.

(b) **Exceptions.--** It shall not be necessary to file a return described in subsection (a) in the case of any tax-exempt organization under Section 1101.01 that is--

**(1)** An exempt religious organization under Section 1101.01(a); or

**(2)** An exempt organization under Section 1101.01, if said organization is a corporation wholly owned by the Government of Puerto Rico or by any agency or instrumentality thereof, or by a subsidiary wholly owned by said corporation; or

**(3)** An exempt trust as provided in Subchapter A of Chapter 8 of this Subtitle.

**(c)  Time and Place to File Returns of Nonprofit Entities.--**   Nonprofit entity returns shall be filed as provided in Section 1061.16.


## Section 1061.06.-- Special Partnership Returns.--

**(a)  General Rule.--**  Every special partnership shall file a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by this Subtitle, the names, address, and account numbers of partners who shall participate in the special partnership gain or loss for such taxable year, and the amounts of such gains or losses. The returns filed under this Section on a calendar year basis shall be filed not later than March fifteen (15) following the close of such calendar year. The returns filed on a fiscal year basis shall be filed not later than the fifteenth (15th) day of the third (3rd) month following the close of the taxable year of the special partnership. Any amount due on account of estimated payment as provided in Section 1062.04 shall be paid in full when filing the return required by this Section. The return shall be signed under penalty of perjury by the person or persons appointed managing partner, president, vice-president or treasurer or other chief accounting officer. Notwithstanding the above, in those cases in which returns are filed electronically, the electronic signature of the above mentioned officers shall be accepted as evidence of authentication that the returns are filed under penalty of perjury. Such returns must enclose financial statements, subject to the provisions of Section 1061.15. The Secretary may prescribe by regulation such other information that must be included in this return.

**(b)  Report to Partners.--**  Each special partnership required to file a return under subsection (a) for any taxable year shall, not later than the last day of the third (3rd) month following the close of its taxable year, furnish to each person who is a partner of said special partnership a report containing such information as required to be included in the partner's return, including the amount of the distributive share of the partner in each of the items prescribed in Section 1114.06(a), the initial contribution, and the additional contributions made by the partner to the partnership's capital, the distributions made by the partnership, and any other additional information required by regulations.

**(c)  Automatic Extension.--**   An automatic extension shall be granted to file a return required under subsection (a) provided that such rules and regulations that the Secretary prescribes to grant such extension are complied with. This automatic extension shall be granted for a three (3) month period counted as of the due date set in subsection (a) for filing the return, provided that the special partnership makes a request to such effect no later than on such return filing date.

**(d)  Extension.--**  The Secretary may, under such rules and regulations as he/she prescribes, grant special partnerships an automatic extension to file the information required under subsection (b) for a period which shall not exceed thirty (30) days counted as of the date set in such subsection (b) to submit the report to members. The Secretary shall prescribe through regulations any such other information that shall be included in the return.


## Section 1061.07.-- Corporation of Individuals' Returns.--

**(a)  General Rule.--**  Every corporation of individuals shall file a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by this Subtitle, the names, address, and account numbers of shareholders who shall participate in the gain or loss of the corporation of individuals for such taxable year, and the amounts of such gains or losses. The returns filed under this Section on a calendar year basis shall be filed not later than March fifteen (15) following the close of such calendar year. The returns filed on a fiscal year basis shall be filed not later than the fifteenth (15th) day of

the third (3rd) month following the close of the taxable year of the special partnership [sic]. Any amount due on account of estimated payment as provided in Section 1062.05 shall be paid in full when filing the return required by this Section. The return shall be signed under penalty of perjury by the person or persons appointed president, vice-president, treasurer or assistant treasurer or other chief accounting officer. Notwithstanding the above, in those cases in which returns are filed electronically, the electronic signature of the above mentioned officers shall be accepted as evidence of authentication that the returns are filed under penalty of perjury. Such returns must enclose financial statements, subject to the provisions of Section 1061.15. The Secretary may prescribe by regulations any other information that shall be included in this return.

**(b) Report to Shareholders.--**  Each corporation of individuals required to file a return under subsection (a) for any taxable year shall, not later than the last day of the third (3rd) month following the close of its taxable year, furnish to each person who is a shareholder of said corporation of individuals a report containing such information as required to be included in the shareholder return, including the amount of the distributive share of the shareholder in each of the items prescribed in Section 1115.04, and any other additional information required by regulations.

**(c) Automatic Extension.--**  An automatic extension shall be granted to file a return required under subsection (a), provided that such rules and regulations that the Secretary prescribes to grant such extension are complied with. This automatic extension shall be granted for a three (3) month period counted as of the due date set in subsection (a) for filing the return, provided that the corporation of individuals requests such extension not later than on such return filing date.

**(d) Extension.--**  The Secretary may, under such rules and regulations as he/she prescribes, grant a corporation of individuals an automatic extension to file the information required under subsection (b) for a period which shall not exceed thirty (30) days counted as of the due date set in such subsection (b) to submit the report to shareholders. The Secretary may prescribe through regulations any such other information that shall be included in such return.

## Section 1061.08.-- Registered Investment Company Returns.--

**(a)**  Any registered investment company that during its whole taxable year complies with the requirements and conditions established in Subchapter B of Chapter 11 of this Subtitle and with any other law of the Government of Puerto Rico with respect to investment companies shall file an annual return stating specifically the items of its gross income, its money inflow and outflow, and any such other information necessary to comply with the provisions of this Subtitle, and shall keep records, file sworn financial statements, file such other returns, and comply with the rules and regulations the Secretary may from time to time prescribe. The return shall be filed under penalty of perjury by the person or persons appointed president, vice-president or other chief officer or treasurer, assistant treasurer or other chief accounting officer. Notwithstanding the above, in those cases in which returns are filed electronically, the electronic signature of the above mentioned officers shall be accepted as evidence of authentication. Such returns shall be filed as provided in Section 1061.16.

## Section 1061.09.-- Estate and Trust Returns.--

**(a) Filing of Return.--**

**(1) General Rule.--**  Any taxable estate or trust under the provisions of Subchapter C of Chapter 8 of this Subtitle shall file an annual return, under penalty of perjury, stating specifically the items of gross income, its money inflow and outflow, and any other information in the form and manner prescribed by the Secretary through regulations, circular letter, informational bulletin, or general administrative determination.

**(2) Exception.--**  When a trust set up under the laws of the Government of Puerto Rico is considered, for purposes of the U. S. Internal Revenue Code of 1986, as amended, as a revocable trust or a

grantor trust, then for purposes of this Subtitle, the trust shall be treated as a revocable trust subject to the provisions of Section 1083.05 and 1083.06, and shall:

(A) **Information Return.--**  Submit an information return which shall include the items of gross income, its money inflow and outflow, and any other information in the form and manner prescribed by the Secretary through regulations, circular letter, informative bulletin, or general administrative determination; and

(B) **Report to Trust Grantor.--**  Furnish the trust grantor a report containing such information as required to be included in the trust grantor return, including the items of gross income, deductions, credits, and any other information in the form and manner prescribed by the Secretary through regulations, circular letter, informative bulletin, or general administrative determination.

(b) **Filing Due Date.--**

(1) **General Rule.--**  Except as provided in paragraph (2) below, the returns required under paragraph (1) of subsection (a) of this section to be filed on a calendar year basis, shall be filed not later than the fifteen (15th) of April following the close of the calendar year. The returns filed on a fiscal year basis shall be filed not later than the fifteenth (15th) day of the fourth (4th) month following the close of the taxable year.

(2) **Rule for Trusts Treated as Revocable Trusts or Grantor's Trusts.--**  A revocable trust under Section 1083.05 or a grantor's trust under Section 1083.06 shall file the information return required under paragraph (2) of subsection (a) of this Section not later than the fifteenth (15th) of March following the close of the calendar year of such trust. The returns filed on a fiscal year basis shall be filed not later than the fifteenth (15th) day of the third (3rd) month following the close of the fiscal year.

(3) **Report to Trust Grantor.--**  Any trust required to file an information return under paragraph (2) of subsection (a) of this section for any taxable year shall furnish a report to the trust grantor not later than the last day of the third (3rd) of the month following the close of its taxable year.

(4) **Automatic Extension.--**  An automatic extension shall be granted for a three (3) month period, counted as of the due date set for filing the return required under paragraphs (1) and (2) of this section, provided that the taxpayer requests such extension not later than on such return filing date as established in this Subtitle.

(5) **Extension.--**  The Secretary may, under such rules and regulations as he/she prescribes, grant revocable trusts or grantor trusts an automatic extension to file the information required under paragraph (3) of this subsection for a period which shall not exceed thirty (30) days counted as of the due date set in such paragraph (3) to submit the report to the trust grantor. The Secretary may prescribe through regulations any such other information that must be included in such return.


**Section 1061.10.-- Employee and Pension Plan Trust Return.--**

(a) **Requirement to File.--**

(1) Any trust exempt from taxation under Sections 1101.01(a)(4)(D) and 1081.01 shall file an annual return under penalty of perjury, stating specifically the items of gross income, its money inflow and outflow, and any other information in the form and manner prescribed by the Secretary through regulations, circular letter, informative bulletin or general administrative determination.

(2) Notwithstanding the provisions of paragraph (1), in the case of an exempt trust under Section 1081.01, if the plan to which such trust belongs is subject to the provisions of Title 1 of the Employee Retirement Income Security Act (hereinafter ERISA), the Secretary may require through regulations, circular letter, informative bulletin, or general administrative determination to such effect, that in lieu of filing the return required under paragraph (1), such trust file a true and accurate copy of the return required by Federal law to report such pension plans.

(b) **Filing Due Date.--**

**(1)  General Rule.--**  The returns required under this section that are filed on a calendar year basis shall be filed not later than the thirty-first (31st) of July following the close of the calendar year. The returns filed on a fiscal year basis shall be filed not later than the last day of the seventh (7th) month following the close of the taxable year of such plan.

**(2)  Automatic Extension.--**  An extension shall be granted until the fifteenth (15th) day of the (3rd) month following the due date set for filing the return, provided that the taxpayer requests such extension not later than on such return filing date and subject to compliance with the rules and regulations prescribed by the Secretary for granting such extension.

## Section 1061.11.-- Employee-Owned Special Corporations.--

**(a)  General Rule.--**  Every Special Employee-Owned Corporation shall file a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by this Subtitle, the names, address, and account numbers of regular, special or corporate members who shall participate in the gain or loss of the special corporation for such taxable year, and the amounts of net gains or losses. Such returns must enclose financial statements prepared in accordance with generally accepted accounting principles, which shall be audited by a Certified Public Accountant licensed to practice in Puerto Rico, pursuant to the provisions of Section 1061.15. The Secretary may prescribe by regulations any such other information that must be included in such return.

**(b)  Report to Members.--**  Each Special Employee-Owned Corporations required to file a return under subsection (a) for any taxable year shall, not later than the last day of the third (3rd) month following the close of its taxable year, furnish to each person who is a regular, special or corporate member of such special corporation a report containing such information as required to be included in such member's income tax return, including the amount of the distributive share of the member in each of the items prescribed in Section 1113.04 of this Subtitle, notices of Credit for Productivity, Patronage or Capital, as applicable, and any other additional information required by regulations.

**(c)  Extension.--**  The Secretary may, under such rules and regulations as he/she prescribes, grant Special Employee-Owned Corporations an extension to file the information required under subsection (b) for a period which shall not exceed thirty (30) days counted as of the expiration of the period established in such subsection (b) to submit the report to members.

## Section 1061.12.-- Insurance Company Returns.--

Any insurance company subject to taxation under this Subtitle shall file a return not later than the fifteenth (15th) day of the fourth (4th) month following the close of its taxable year stating specifically the items of its gross income, the deductions and the credits granted by this Subtitle and any other information necessary to comply with the provisions of this Subtitle as prescribed through regulations by the Secretary. The return shall be sworn by the person or persons appointed president, vice-president or other chief officer, or by the treasurer or assistant treasurer. Notwithstanding the above, in such cases in which the returns are filed electronically, the electronic signature of the above mentioned officers shall be accepted as evidence of authentication.

The provisions of this section shall not apply to an International Insurer or to an International Insurer Holding Company that complies with Article 61.040 of the Insurance Code of Puerto Rico. However, any International Insurer Holding Company that complies with the provisions of Article 61.040 of the Insurance Code of Puerto Rico shall file with the Secretary of the Treasury the certification required by Article 61.040(6) of the Insurance Code of Puerto Rico.

## Section 1061.13.-- Fiduciary Returns.--

**(a)  Requirement to File Return.--**  Any fiduciary, except for trustees appointed by law who only hold part of the assets of an individual, shall file a sworn return on behalf of any of the following individuals, estates or trusts on whose behalf he/she is acting. Such return shall specifically state the items of gross income

thereof and the deductions and credits allowed under this Subtitle and any other information prescribed by the Secretary through regulations for the purpose of complying with the provisions of this Subtitle.--

**(1)** Any individual whose gross income for a taxable year is over five thousand dollars ($ 5,000) if he/she is a single taxpayer or a married taxpayer filing a joint return, or whose gross income is over two thousand five hundred dollars ($ 2,500) if he/she is a married individual and files a separate return;

**(2)** Any estate whose gross income for a taxable year is one thousand three hundred dollars ($ 1,300) or over;

**(3)** Any trust whose net income for a taxable year is one hundred dollars ($ 100) or over, or whose gross income for a taxable year is one thousand three hundred dollars ($ 1,300) or over without taking into account the amount of net income; and

**(4)** Any estate or trust whose beneficiaries were nonresident individuals.

**(b) Joint Fiduciaries.--** Under such regulations as the Secretary may prescribe, a return filed by one of two or more joint fiduciaries shall constitute sufficient compliance with the above requirement. Such fiduciary shall swear:

**(1)** that he/she has sufficient knowledge of the affairs of the individual, the estate or the trust on behalf of which he/she is filing a return, which knowledge enables him/her to file; and

**(2)** that the return to the best of his/her knowledge and understanding is true and accurate.

**(c) Law Applicable to Fiduciaries.--** Any fiduciary required by this Subtitle to file a return shall be subject to all of the provisions of this Subtitle that apply to individuals.

**(d) Responsibility of the Fiduciaries.--** Any executor, receiver, proxy or assignee, or any other person who knowingly pays any amount due by the person or the estate on behalf of which he/she acts, except for the taxes that shall be prioritized by law, before payment to the Government of Puerto Rico of the tax imposed by this Subtitle is made, due by such person or estate, shall pay personally and with his/her assets the tax due imposed by this Subtitle or such part thereof that appears payable and unpaid.


**Section 1061.14.-- Real Estate Investment Trust Returns.--**

A real estate investment trust subject to taxation under the provisions of Section 1082.01 shall file an annual return stating specifically the items of its gross income, the money inflow and outflow, and any other information necessary to comply with the provisions of this Subtitle, and shall keep evidence, file sworn financial statements, file returns, and comply with the rules and regulations as the Secretary may from time to time prescribe. The return shall be sworn by the fiduciary. Notwithstanding the above, in those cases in which returns are filed electronically, the electronic signature of the above mentioned officers shall be accepted as evidence of authentication.


**Section 1061.15.-- Requirement to Submit Financial Statements with the Returns.--**

**(a) Financial Statements.--** Any business, including an individual business, corporation, partnership, special partnership, limited liability company, corporation of individuals, insurance company, registered investment company, special employee-owned corporation, association, cooperative, real estate investment trust or any other entity engaged in a trade or business or in the generation of income in Puerto Rico, shall submit financial statements enclosed with its income tax return subject to the following requirements:

**(1)** When the business volume during a taxable year is equal to or higher than one million dollars ($ 1,000,000) but not lower than three million dollars ($ 3,000,000), the business may opt to submit the financial statements required by this section enclosed with an Auditor's Report issued by a Certified Public Accountant with license to practice in Puerto Rico; such statements shall be in accordance with the Generally Accepted Auditing Standards of the United States of America (hereinafter US GAAS). The Secretary may relieve any business that is current with its tax liability and that opts to enclose

financial statements with the Auditor's Report pursuant to this paragraph from the withholding at source requirement provided in Section 1062.03 on payments received for rendered services.

**(2)** When the business volume during a taxable year is equal to or higher than three million dollars ($ 3,000,000), the business shall submit the financial statements required by this section enclosed with an Auditor's Report issued by a Certified Public Accountant with license to practice in Puerto Rico. Said Auditor's Report shall state that the financial statements have been submitted according to the Generally Accepted Auditing Standards of the United States of America. However, it shall not be necessary for the Certified Public Accountant to issue an opinion without qualifications. Qualified opinions shall be allowed as defined by US GAAS, provided that the qualification of the opinion is not due to restrictions within the scope of the audit imposed by the business. No disclaimer of opinion report due to restrictions within the scope of the audit imposed by the business shall be allowed. No adverse opinion reports shall be allowed.

**(3)** Any group of related entities, as defined by Section 1010.05, constituted by entities engaged in a trade or business in Puerto Rico shall submit the financial statements required in paragraphs (1) and (2) as consolidated statements showing the financial situation and the results of the operations of the parent entity and its subsidiaries as if they were one entity, according to the Generally Accepted Accounting Principles of the United States (US GAAP). In this case, such consolidated financial statements shall be submitted with an attachment of consolidation (also subject to audit or review, as pertinent) showing in columns the financial situation and the results of the operations of the parent company and each one of its subsidiaries or variable interest entities, including columns with the entries of write-offs and the consolidated totals. In the case of foreign entities engaged in trade or business in Puerto Rico that are subject to the provisions of this section, an auditing report showing financial statements with supplementary information shall not be allowed to comply with this requirement, since they have not been subject to auditing standards that allow for the issue of a separate opinion on the operations of Puerto Rico. An Auditor's Report just stating that the entity was subject to a consolidated audit shall not be allowed either. Foreign entities that have branches engaged in trade or business in Puerto Rico may issue financial statements including the results from the operations carried out in Puerto Rico and shall not be required to issue consolidated statements. In case they opt to issue consolidated statements, they shall comply with the requirement set forth in this section, provided that the financial statements required under this section show the result from the total operations of the foreign entity with an attachment (also subject to an audit or review, as pertinent), showing in separate columns the financial situation and the results from the operations of the home office and the branch, including columns with the consolidated totals and the entries of write-offs between the branch and the home office.

**(4)** The audit requirement shall not apply to nonprofit corporations or to entities engaged in trade or business in Puerto Rico whose business volume does not exceed three million dollars ($ 3,000,000) during the taxable year.

**(b)** For purposes of this section, the term "business volume", in the case of a group of related entities as defined in Section 1010.05, shall be determined by adding up the business volume of each of the entities included in such group.

**(c)** For the purpose of this section, the term "financial statements" means, with respect to any taxable year, a report that includes: an income statement that shows the results from the operation of the business for said taxable year, a balance sheet as of the date of the close of the taxable year in question, a statement of cash flows and a statement of stockholders equity for such year. Such financial statements shall be prepared in accordance with the Generally Accepted Accounting Principles of the United States of America and be enclosed with notes that constitute a summary of major accounting policies and other corresponding disclosures, according to the disclosure requirements of said accounting principles.

## Section 1061.16.-- Time and Place to File Returns.--

**(a) Filing Due Date.--**

(1) **General Rule.--**  Except as otherwise provided in this Subtitle, the returns filed on a calendar year basis shall be filed on or before April 15 following the close of the calendar year. The returns filed on a fiscal year basis shall be filed on or before the fifteenth (15th) day of the fourth (4th) month following the close of the fiscal year.

(2) **Automatic Extension.--**  Except as otherwise provided in this Subtitle, an automatic extension to file returns shall be granted to individuals, corporations, and estates, provided that they comply with such rules and regulations that the Secretary may prescribe to grant such extension. This automatic extension shall be granted for a three (3) month period counted as of the due date set for filing the returns, provided that the taxpayer requests such extension not later than on the return filing date set in this Subtitle.

(3) **Additional Extension.--**  In the case of individuals who are outside of Puerto Rico, the Secretary may, under such rules and regulations as he/she may prescribe, grant an extension in addition to the automatic extension to file returns. Such additional extension shall not exceed three (3) months.

(4)  A six (6) month extension to file returns shall be granted to any taxpayer who during any armed conflict is activated and transferred to render military services outside of Puerto Rico. Such extension shall be granted as of the date on which the taxpayer ceases his/her active military service. The Secretary shall prescribe through regulation to such effect the conditions under which such extension shall be granted.

(b) **With Whom to File the Return.--**  Any return required under this Subtitle shall be filed with the Secretary.

(c)  Whenever the return filing due date, including any extension, falls on a Saturday, Sunday or legal holiday, the due date to file such return shall be the next business day.

## Section 1061.17.-- Payment of Tax.--

(a) **Date of Payment.--**  Except as otherwise provided in this Subtitle, the total amount of the tax imposed in this Subtitle shall be paid on April fifteen (15th) following the close of the calendar year or, if the return should have been filed on a fiscal year basis, then on the fifteenth (15th) day of the fourth (4th) month following the close of the fiscal year.

(b) **Installment Payment.--**  Except in the case of individuals who have been required to make estimated tax payments under Section 1061.20, and except in the case of corporation taxes, the taxpayer may opt to pay the unpaid tax amount in two (2) equal installments, in which case the first installment shall be paid on the date set for the payment of tax by the taxpayer; and the second installment shall be paid on the fifteenth (15th) day of the sixth (6th) month following such date. If any installment is not paid on or before the date set for its payment, the total unpaid tax amount shall be paid upon notice and demand from the Secretary. The phrase "unpaid tax amount," as used in this subsection, shall mean the tax determined in the return, minus the credits provided in the Code or special laws.

(c) **Payment Extension.--**  At the taxpayer's request, the Secretary may extend the term to pay the determined tax amount by the taxpayer, or any installment thereof, for a term that shall not exceed six (6) months from the date set for the payment of the tax or any installment thereof. In such case, the amount with respect to which the extension was granted shall be paid on or before the due date of the extension period. A six (6) month payment extension shall be granted to any taxpayer who during an armed conflict is activated and transferred to render military service outside of Puerto Rico. Such extension shall be granted as of the date on which the taxpayer ceases active military service.

(d) **Voluntary Advance Payment.--**  A tax imposed by this Subtitle or any installment thereof may be paid prior to the date set for its payment at the option of the taxpayer.

(e) **Advance Payment of Taxes in Jeopardy.--**  Advance payment of taxes in jeopardy shall be governed by Section 1062.12.

**(f) Receipts.--** By request, the Secretary shall provide to the person who made any income tax payment, a formal written or printed receipt for the amount paid.

**(g)** Payment of the tax to which this section refers may be made electronically.

## Section 1061.18.-- Return Examination and Tax Determination.--

The Secretary shall examine and determine the correct amount of tax as soon as possible.

## Section 1061.19.-- Computation on Returns and other Documents.--

**(a) Items Stated in Returns.--** The Secretary is authorized to disregard, with respect to any amount required to be shown on a return and other related documents or schedules, any fractional part of a dollar when such amount consists of dollars and cents.

**(b) Applicability to Computation and Payment of the Tax.--** The provisions of subsection (a) shall apply to items which must be taken into account in making the computations necessary to determine the amounts required to be stated on the return and on the documents or schedules, as well as to the final resulting amounts and to the payment of the determined tax.

## Section 1061.20.-- Requirement to Pay Estimated Tax by Individuals.--

**(a) Requirement to Pay Estimated Tax.--** Any individual other than an estate or trust, or a nonresident individual, whose wages, as defined in Section 1062.01(a), are not subject to withholding under said section and whose estimated tax for any taxable year, as computed in subsection (b) of this section, is greater than one thousand dollars ($ 1,000), shall pay an estimated tax for the taxable year on the date set in subsection (a) of Section 1061.21. However, the following individuals shall not be subject to pay estimated tax:

**(1)** any individual whose gross income originates solely from wages or pensions subject to tax withholding at the source under the provisions of Section 1062.01 of the Code;

**(2)** any individual whose gross income originates solely from compensation received on account of services rendered to the Government of the United States subject to withholding at the source for purposes of the Government of the United States;

**(3)** any individual whose gross income originates solely from compensation received on account of services rendered on agricultural labor not subject to withholding at the source under such Section 1062.01 of the Code; or

**(4)** any individual who, in addition to the income set forth in paragraphs (1), (2), and (3) of this subsection, receives an income of less than five thousand dollars ($ 5,000) from other sources.

**(b) Computation of the Estimated Tax and Information Required by the Secretary.--** The estimated tax required under subsection (a) shall be the excess of:

**(1)** the amount that the individual estimates to be the amount of the tax under this Subtitle for the taxable year, including the alternative basic tax and the gradual adjustment, among other taxes, over

**(2)** the amount that the individual estimates as credits provided by this Code or special laws for the taxable year, including the non-refunded tax paid in excess corresponding to the previous taxable year.

When making payments of estimated tax, the taxpayer shall enclose with such payment any other information as prescribed by the Secretary through regulations or any public determination to such effect in order to enforce the provisions of this Subtitle.

**(c) Husband and Wife.--** In the case of married taxpayers as defined in Section 1010.03(a)(2), they shall make a joint payment of the estimated tax, unless they opt to file separate tax returns pursuant to Section 1061.01(b)(4) for said taxable year. In the case that a joint payment is made, the estimated tax shall be

determined on the aggregate income. If a joint payment is made with regard to a taxable year, married individuals shall not opt to file separate returns for said taxable year. However, when married individuals separate during the taxable year under any divorce or separation decree, they may file separate returns following such rules and requirements prescribed by the Secretary of the Treasury through regulations or any public determination issued to that effect.

**(d)  Return as Payment or Change in Computation of Estimated Tax.--**  If on or before January fifteen (15) of the following taxable year, the taxpayer files a return for the taxable year for which payment of the estimated tax is required and pays in full the amount computed in the returns as payable, then--

**(1)**  If not required to pay estimated tax during the taxable year, but required to pay it on or before said January fifteen (15), such return, for purposes of this Subtitle, shall be treated as payment; and

**(2)**  If the tax reported in the return, minus the credits provided in this Code or special laws for the taxable year, is greater than the tax estimated by the taxpayer, such return shall be treated, for purposes of this Subtitle, as a change in the computation of the estimated tax, as established in Section 1061.21 of this Subtitle.

**(e)  Persons with Disabilities.--**  If the taxpayer has a disability and, therefore, is not able to make a payment of the estimated tax, such payment shall be made by a duly authorized agent or by the guardian, or any other person charged with the care of the person or property of the taxpayer.

**(f)  Failure to Pay the Estimated Tax.--**  For the penalty applicable for failure to pay the estimated tax by individuals, see Subtitle F.


### Section 1061.21.-- Payment of Estimated Tax by Individuals.--

**(a)  Due Date for Payment of Estimated Tax.--**  The estimated tax shall be paid as follows:

**(1)**  The due date of the first installment of the estimated tax required under Section 1061.20 of this Subtitle is the fifteenth (15th) day of the fourth (4th) month of the taxable year, except as provided in paragraph (2) of this subsection. In this case, the estimated tax shall be paid in four (4) equal installments. The second (2nd) installment shall be paid the fifteenth (15th) day of the sixth (6th) month of the taxable year. The third (3rd) installment shall be paid the fifteenth (15th) day of the ninth (9th) month of the taxable year. The fourth (4th) installment shall be paid the fifteenth day of the first month of the following taxable year.

**(2)  Exceptions.--**  If the requirements of subsection (a) of Section 1061.20 are satisfied for the first time--

**(A)**  After the last day of the third (3rd) month and before the first day of the sixth month of the taxable year, the due date of the first installment shall be the fifteenth day of the sixth month of the taxable year. In this case, the estimated tax shall be paid in three (3) equal installments. The second installment shall be paid the fifteenth day of the ninth month of the taxable year, and the third installment shall be paid the fifteenth day of the first month of the following taxable year; or

**(B)**  After the last day of the fifth month and before the first day of the ninth month of the taxable year, the due date of the first installment shall be the fifteenth day of the ninth month of the taxable year. In this case, the estimated tax shall be paid in two (2) equal installments. The second installment shall be paid the fifteenth day of the first month of the following taxable year; or

**(C)**  After the last day of the eighth month of the taxable year, the due date of the first and only payment shall be the fifteenth day of the first month of the following taxable year.

**(b)  Changes in the Computation of the Estimated Tax.--**  If any change in the computation of the estimated tax should arise, the remaining installments, if any, shall be ratably increased or reduced, as the case may be, to show the increase or reduction, as the case may be, in the estimated tax due to such change in the estimate.

**(c)  Installments Paid in Advance.--**  At the election of the individual, any installment of the estimated tax may be paid prior to the date prescribed for its payment.

**(d)  Payment as Part of Tax for Taxable Year.--**  Payment of the estimated tax, or any installment thereof, shall be considered payment on account of the tax for the taxable year. Assessment in respect of the estimated tax shall be limited to the amount paid.

**Section 1061.22.--** Special Rules for the Application of Sections 1061.20 and 1061.21 of this Subtitle.--

**(a)  Farmers.--**  In the case of an individual whose estimated gross income from farming for the taxable year is at least two- thirds of the total estimated gross income from all sources for the taxable year, in lieu of the date prescribed in Section 1061.21(a), the due date to pay the estimated tax for the taxable year shall be January fifteen (15) of the following taxable year; and if such an individual files a return on or before January 31 of the following taxable year, and pays in full the amount computed on the return as payable, the estimated tax shall be deemed as paid on or before January fifteen (15).

**(b)  Application to Taxable Years of Less Than Twelve Months.--**  Sections 1061.20 and 1061.21 of this Subtitle and subsection (a) of this section, shall apply to taxable years of less than twelve (12) months as prescribed by the Secretary through regulations.

**(c)  Fiscal Years.--**  In the application of Sections 1061.20 and 1061.21 of this Subtitle and subsection (a) of this section, as to a taxable year starting on any date other than January 1, the months specified therein shall be substituted by the months which correspond thereto.

**Section 1061.23.-- Estimated Tax Payment by Corporations.--**

**(a)  Requirement to Pay the Estimated Tax.--**  Every corporation engaged in a trade or business in Puerto Rico, and subject to taxation under the provisions of this Subtitle, shall pay an estimated tax for the taxable year on the date provided in subsection (c).

**(b)  Computation of the Estimated Tax and Information Required by the Secretary.--**  The computation of the estimated tax established under subsection (a) of this section shall be made by using an approximate calculation of the gross income that may be reasonably expected to be received or accrued by the corporation, as the case may be, depending on the method of accounting used to determine the net income, and an approximate calculation of the deductions and credits available under this Code or special laws, including the non-refunded tax paid in excess that corresponds to the previous taxable year. When making the payments of estimated tax the taxpayer shall include with such payment any other information for purposes of complying with the provisions of this Subtitle that the Secretary may prescribe through regulations or any public determination issued to such effect.

**(c)  Due Date of the Estimated Tax Payments.--**

**(1)  General Rule.--**  The due date for the first installment of the estimated tax required under subsection (a) of this Section shall be the fifteenth (15th) day of the fourth (4th) month of the taxable year, except as provided in paragraph (2) of this subsection. In that case, the estimated tax shall be paid in four equal installments. The second installment shall be paid on the fifteenth (15th) day of the sixth (6th) month of the taxable year. The third installment shall be paid on the fifteenth (15th) day of the ninth (9th) month of the taxable year, and the fourth installment shall be paid on the fifteenth (15th) day of the twelfth (12th) month of the taxable year.

**(2)  Exceptions.--**  If the requirements of subsection (a) are met for the first time--

**(A)**  After the last day of the third (3rd) month and before the first day of the sixth month of the taxable year, the due date of the first installment shall be on the fifteenth day of the sixth month of the taxable year. In this case, the estimated tax shall be paid in three (3) equal installments. The second installment shall be paid on the fifteenth day of the ninth month of the taxable year, and the third installment shall be paid on the fifteenth day of the twelfth month of the taxable year; or

**(B)**  After the last day of the fifth month and before the first day of the ninth month of the taxable year, the due date of the first installment shall be the fifteenth day of the ninth month of the taxable year. In this case, the estimated tax shall be paid in two (2) equal installments. The second installment shall be paid on the fifteenth day of the twelfth month of the taxable year; or

**(C)**  After the last day of the eighth month and before the fifteenth day of the twelfth month of the taxable year, the due date for the first and only payment shall be on the fifteenth day of the twelfth month of the taxable year.

**(3)  Changes in the Computation of the Estimated Tax.--**  If any change in the computation of the estimated tax should arise, the remaining installments, if any, shall be ratably increased or reduced, as the case may be, to show the increase or reduction, as the case may be, in the estimated tax due to such change in the estimate

**(d)  Payment of Estimated Tax.--**

**(1)  Date for Payment.--**  The amount of the estimated tax shall be paid as follows:

| Period obligation begins tax to Payments to be deposited on or before be deposited and paid 4th 6th 9th 12th Month Month Month Month | Number of the fifteenth day of the: | Percent of estimated |
|---|---|---|
| Before the first day of the fourth month of the taxable year | 4 25% 25% | 25% 25% |
| After the last day of the third month and before the first day of the sixth month of the taxable year 33 1/2% | 3 - 33 1/2% | 33 1/2% |
| After the last day of the fifth month and before the first day of the ninth month of the taxable year | 2 -- 50% | 50% |
| After the last day of the eighth month and before the fifteenth day of the twelfth month of the taxable year | 1 -- 100% | |

**(e)  Application to Taxable Years of Less than Twelve Months.--**  The application of this section to taxable years of less than twelve (12) months shall be as prescribed by the Secretary through regulations or any public determination issued to such effect.

**(f)  Installments Paid in Advance.--**  At the election of any corporation, any installment of the estimated tax may be paid prior to the date prescribed for its payment.

**(g)  Payment as Part of Tax for Taxable Year.--**  Payment of the estimated tax as provided by subsection (c) of this section, or any installment thereof, shall be treated as payment on account of the tax for the taxable year. Assessment in respect of the estimated tax shall be limited to the amount paid.

**(h)  Failure to Pay the Estimated Tax by Corporations.--**  For the penalty applicable to failure to pay the estimated tax by a corporation, see Subtitle F.

**Section 1061.24.-- Returns for a Period of Less than Twelve Months.--**

**(a)  Returns for Short Period Due to a Change of Accounting Period.--**  When the taxpayer, with the approval of the Secretary, changes the basis on which the net income is computed from fiscal year to calendar year, the taxpayer shall file a separate return for the period comprised between the close of the last fiscal year for which the taxpayer filed a return and the following December 31. If the change is from calendar year to fiscal year, a separate return shall be filed for the period comprised between the end of the last calendar year for which a return was filed and the date established as the close of the fiscal year. If the change is from one fiscal year to another fiscal year, a separate return shall be filed for the period comprised between the close of the previous fiscal year and the date established as the close of the new fiscal year.

**(b)  Income Computed Based on Short Period.--**  When a separate return is filed under subsection (a) due to a change in the accounting period, and in all the other cases in which it is required or allowed, under the regulations prescribed by the Secretary to file a separate return for a fraction of the year, the income shall be computed on the basis of the period for which the separate return is filed.

**(c)  Income Placed on Annual Basis.--**

**(1)  General Rule.--**  If a separate return is filed under subsection (a) due to a change in the accounting period, the net income, computed on the basis of the period for which the separate return is filed (referred to in this subsection as "the short period"), shall be placed on an annual basis by multiplying the amount thereof by twelve (12), and dividing the product by the number of months in the short period. The tax shall be the same part of the tax computed on such annual basis as the number of months in the short period and twelve (12) months.

**(2)  Exception.--**  If the taxpayer establishes the amount of his/her net income for the period of twelve (12) months beginning with the first day of the short period, computed as if such twelve-month period were a taxable year, under the law applicable to such year, then the tax for the short period shall be reduced to an amount which bears the same ratio to the tax computed on the net income for such twelve-month period as the net income computed on the basis of the short period bears to the net income for the twelve-month period. The taxpayer, other than a taxpayer to whom the next sentence applies, shall compute the tax and file his/her return without the application of this paragraph. If the taxpayer, other than a corporation, was not in existence at the end of the twelve-month period, or if the taxpayer is a corporation and has disposed of substantially all its assets prior to the end of such twelve-month period, then, in lieu of the net income for such twelve-month period there shall be used, for purposes of this paragraph, the net income for the twelve-month period ending on the last day of the short period. The tax computed under this paragraph shall in no case be less than the tax computed on the net income for the short period without placing such net income on an annual basis. The benefits of this paragraph shall not be allowed unless the taxpayer, at such time as regulations prescribed hereunder require (but not after the date prescribed for filing the return for the first taxable year which ends on or after twelve (12) months after the beginning of the short period), applies therefor in accordance with such regulations. Such application, in case the return was filed without regard to this paragraph, shall be considered a claim for credit or refund with respect to the amount by which the tax is reduced under this paragraph. The Secretary shall prescribe any regulations deemed necessary for the application of this paragraph.

**(d)  Reduction of Personal Exemptions and for Dependents.--**  In the case of a return prepared for a fraction of a year under Section 1062.12(a)(1), the exemptions provided in Section 1033.18 shall be reduced to amounts which bear the same ratio to the complete exemptions so provided, the same proportion that the number of months included in the period for which the return is prepared bears with the twelve (12) months.

**(e)  Close of Taxable Year for Tax in Jeopardy.--**  The close of taxable year as to a tax in jeopardy shall be governed by the provisions of Section 1062.12.

2011 PR H.B. 3070

**(f)  Returns of Taxpayers Not in Existence for Twelve (12) Months.--**  In the case of a taxpayer who was not in existence during the entire annual accounting period ending on the last day of any month for whichever reason, including the death of an individual, or if the taxpayer has no such annual accounting period or did not keep books during the entire calendar year, the return shall be filed for the fractional part of the year during which the taxpayer was in existence. For purposes of this subsection, the term "taxpayer who was not in existence during the entire annual accounting period" shall include any of the spouses who die during the annual period.

**SUBCHAPTER B --**  INCOME TAX WITHHOLDING AT THE SOURCE

**Section 1062.01.-- Income Tax Withholding at the Source in the Case of Wages.--**

**(a)  Definitions.--**  As used in this section:

**(1)  Wages.--**  The term "wages" means any compensation for services rendered by an employee for his/her employer, and every compensation as pension for services rendered, including the cash value of all compensation paid by any medium other than cash; except that said term shall not include compensation paid--

**(A)**  For such services in agricultural labor, as defined in paragraph (12) of this subsection, excluding services performed by executive, administrative, office, or supervisory employees and by the employees occupying permanent positions, or

**(B)**  for domestic services in a private home, local college club, or local chapter of a college fraternity or sorority, or

**(C)**  for services not in the course of the employer's trade or business performed in any calendar quarter by an employee, unless the cash compensation paid for is more than eight hundred seventy-five dollars ($ 875) and such service is performed by an individual who is regularly employed by such employer. For purposes of this subparagraph, an individual shall be deemed to be regularly employed by an employer during a calendar quarter only if: (i) on each of any twenty-four (24) days during such quarter such individual performs for his/her employer for some portion of the day services not in the course of the employer's trade or business, or (ii) such individual was regularly employed, as determined under clause (i), by such employer in the performance of services during the preceding calendar quarter, or

**(D)**  for services performed by a citizen or resident of Puerto Rico for a foreign government or an international organization, or

**(E)**  for services performed by a nonresident individual, other than compensation as pension for services rendered, or

**(F)**  for services performed by a duly ordained, commissioned, or licensed minister of a church in the exercise of his/her ministry or by a member of a religious order in the exercise of duties required by such order, or

**(G)**  by reason of indemnification in case of dismissals in which there was no just cause, as provided in Act No. 80 of May 30, 1976 or under a severance pay agreement between the employer and the employee, or

**(H)**  for services rendered outside of Puerto Rico by a resident of Puerto Rico if at the time the compensation is paid the employer is required by the laws of the United States or of any possession of the United States or of any foreign country to withhold at the source the tax on all or any part of said compensation, or

**(I)**  for pensions subject to withholding under other provisions of this Subtitle, as well as such amount received from said pensions that is excludible from gross income under Section 1031.02(a)(13).

**(2) Payroll Period.--** The term "payroll period" means a period for which a payment of wages is ordinarily made to the employee by his/her employer, and the term "miscellaneous payroll period" means a payroll period other than a daily, weekly, bi-weekly, bi-monthly, monthly, quarterly, semiannual, or annual payroll period.

**(3) Employee.--** The term "employee" includes an officer, employee, or elected official of the Government of Puerto Rico or any political subdivision thereof, or of any agency or instrumentality of any of the foregoing. The term "employee" also includes an officer of a corporation.

**(4) Employer.--** The term "employer" means the person for whom an individual performs or has performed any service, of whatever nature, as the employee of such person, except that:

**(A)** If the person for whom the individual performs or has performed the services does not have control of the payment of the wages for such services, the term "employer," except for purposes of paragraph (1), means the person having control of the payment of such wages, and

**(B)** in the case of a person paying wages on behalf of a nonresident individual, foreign partnership, or foreign corporation not engaged in trade or business within Puerto Rico, the term "employer," except for purposes of paragraph (1) of this subsection, means such person.

**(5) Single Person.--** The term "single person" means a person with respect to whom a withholding exemption certificate is in effect under subsection (f) stating that such person is an individual single taxpayer, as defined in Section 1010.03(a)(1).

**(6) Married Person.--** The term "married person" means a person with respect to whom a withholding exemption certificate is in effect under subsection (f) stating that said person is married, as defined in Section 1010.03(a)(2).

**(7) Dependent.--** The term "dependent" means a person included in a withholding exemption certificate in effect under subsection (f) as a person dependent upon the employee according to the definition of "dependent" provided in Section 1025(d)(1).

**(8) Agricultural Labor.--** The term "agricultural labor" includes all service performed--

**(A)** On a farm, in the employ of any person, in connection with the cultivating of the soil, or in connection with the raising or harvesting of any agricultural or horticultural commodity, including the raising, shearing, caring for, training, and management of livestock, bees, poultry, and wildlife.

**(B)** In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of the farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm.

**(C)** In connection with the production or harvesting of any commodity defined as an agricultural commodity in Section 15(g) of the U.S. Congress Act known as the "Agricultural Marketing Act," as amended, or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, used exclusively for supplying and storing water for farming purposes.

**(D)**

**(i)** In the employ of the operator of a farm in the handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivery to storage or to market or to a carrier for transportation to market in its unmanufactured state, of any agricultural or horticultural commodity; but only if such operator produced more than one-half of the commodity with respect to which such service is performed.

**(ii)** In the employ of a group of operators of farms (other than a cooperative organization) in the performance of service described in clause (i), but only if such operators produced all of the commodity with respect to which such service is performed. For purposes of this clause, any unincorporated group of operators shall be deemed to be a cooperative organization if the

number of operators comprising such group is more than twenty (20) at any time during the calendar quarter in which such service is performed.

**(iii)** The provisions of clauses (i) and (ii) of shall not be deemed to apply with respect to service performed in connection with commercial canning or commercial refrigeration or in connection with any agricultural or horticultural commodity after its delivery to an end market for distribution for consumption.

**(E)** On a farm operated for profit if such service is not in the conduct of the employer's trade or business or is domestic service in a private home of the employer.

As used in this paragraph, the term "farm" includes cattle, dairy, poultry, fruit, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards.

**(b)  Requirement to Withhold.--**  Every employer who makes payment of wages shall deduct and withhold a tax on the sum of all wages determined according to the withholding schedules that, in harmony with the tax rates fixed in this Subtitle, shall be approved by the Secretary of the Treasury and which shall be part of the regulations of this Subtitle. For purposes of applying said schedules, the term "amount of the wages" shall mean the amount by which the wages exceed the allowable exemption for withholding allowable under subsection (c)(1).

**(c)  Withholding Exemption.--**

**(1)**  In computing the tax required to be deducted and withheld in accordance with the tables promulgated by the Secretary, as provided in subsection (b), there shall be allowed, as a withholding exemption with respect to the wages paid for each payroll period, an exemption determined according to the withholding exemption tables which, in harmony with the provisions of this Subtitle, the Secretary shall approve and that shall be part of the regulations of this Subtitle. Said tables shall take into consideration the amount of the personal exemption and credit for dependents allowable to the taxpayer according to Section 1033.18, as well as the concession for withholding based on the deductions provided in paragraph (2) of this subsection.

**(2)  Concession for Withholding Based on Deductions.--**

**(A)**  In determining the amount of the exemption for withholding under paragraph (1), concessions shall be allowed based on deductions in a number equal to the result of dividing:

**(i)**  the amount of any payments, if any, made by an employee towards a government pension or retirement plan by five hundred dollars ($ 500).

**(ii)**  At the option of the employee, the amount of the deductions which he/she deems he/she is entitled to deduct under Section 1033.15, upon computing his/her net income for the corresponding taxable year, by five hundred dollars ($ 500).

For purposes of this paragraph, the system established under the Social Security Act shall not be considered as a government pension or retirement system and a fraction shall not be considered unless the same exceeds fifty percent (50%), in which case this fraction shall be considered as an additional concession.

**(B)**  In the case of a husband and wife living together who, on determining the withholding concession, exercise the option under clause (ii) of subparagraph (A), the number of concessions to which they are entitled under this paragraph shall be determined taking as a basis their combined wages and deductions. They may divide among themselves the total concessions as they wish, but on the basis of the complete concessions. However, any concession claimed by one of the spouses in a withholding exemption certificate shall not be claimed by the other spouse.

**(3)**  If wages are paid with respect to a period other than a payroll period, the withholding exemption allowable with respect to each payment of such wages shall be the exemption allowed for a miscellaneous payroll period containing a number of days, including Sundays and holidays, equal to the number of days in the period with respect to which such wages are paid.

**(4)**  In any case in which wages are paid by an employer without regard to any payroll period or other period, the withholding exemption allowable with respect to each payment of such wages shall be the exemption allowed for a miscellaneous payroll period containing a number of days equal to the number of days, including Sundays and holidays, which have elapsed since the date of the last payment of such wages by such employer during the calendar year, or since the date of commencement of employment with such employer during such year, or since January 1 of such year, whichever of these dates is the latest.

**(5)**  In any case in which the period, or the time described in paragraph (4), in respect to any wages, were less than one week, the Secretary may, under regulations prescribed by him/her, authorize an employer to use, in computing the tax required to be deducted and withheld, the excess of the aggregate of the wages paid to the employee during the calendar week over the withholding exemption allowed by this subsection for a weekly payroll period.

**(6)**  In determining the amount to be deducted and withheld under this subsection, the wages may, at the election of the employer, be computed to the nearest dollar.

**(d)  Alternative Withholding.--**  The Secretary is hereby empowered to prescribe through regulations, under such conditions and to the extent he/she deems convenient, a withholding method which substitutes that method otherwise required under this section, when at his/her discretion he/she deems it necessary or convenient to provide for such alternative withholding method. Such alternative withholding shall be treated for all purposes as tax required to be deducted and withheld under this section.

**(e)  Additional Withholding.--**  The Secretary is authorized to prescribe by regulations, under such conditions and to such extent as he/she deems proper for withholding in addition to that otherwise required under this section, in cases in which the employer and the employee agree (in such form as the Secretary may by regulations prescribe) to such withholding. Such additional withholding shall for all purposes be treated as tax required to be deducted and withheld under this section.

**(f)  Withholding Exemption Certificates.--**  Every employee receiving wages shall furnish his/her employer a signed withholding exemption certificate for the purpose of computing his/her withholding exemption. In case of a change that affects the withholding exemption, a new certificate shall be furnished not later than ten (10) days after such change occurs. The certificate shall be in such form and shall contain such information as the Secretary may by regulations prescribe.

**(1)**  Such Certificate--

**(A)**  If furnished after the date of commencement of employment with the employer by reason of a change of status, shall take effect with respect to the first payment of wages made on or after the first status determination date which occurs at least thirty (30) days from the date on which such certificate is furnished to the employer, except that at the election of the employer such certificate may be made effective with respect to any previous payment of wages made on or after the date such certificate is furnished. For purposes of this paragraph, the term "status determination date" means January 1 and July 1 of each year.

**(B)**  If furnished otherwise than by reason of a change of status, shall take effect as of the beginning of the first payroll period ending, or the first payment of wages made without regard to a payroll period, on or after the date on which such certificate is furnished to the employer, except that if the reason for filing the new certificate is one which will become effective from and after the following calendar year, said certificate shall not be taken into consideration with respect to any payment made in the calendar year in which it is filed.

**(2)**  A certificate which takes effect under this subsection shall continue in effect with respect to the employer until another such certificate furnished by the employee takes effect under this subsection. If no certificate is in effect under this subsection with respect to an employee, such employee shall be treated, for purposes of the withholding exemption, as a married person claiming none of the personal exemptions for withholding and having no dependents nor any concession based on deductions.

(3)   An employer who receives from any employee an exemption certificate in which the number of dependents claimed exceeds eight (8), must submit to the Secretary, under regulations prescribed by him/her, a copy of said certificate, as well as a copy of any written statement received from the employee in support of the information contained in the certificate.

**(g)   Included and Excluded Wages.--**   If the compensation paid by an employer to an employee for services performed during one-half or more of any payroll period of not more than thirty-one (31) consecutive days constitutes wages, all the compensation paid by such employer to such employee for such period shall be treated as wages; but if the compensation paid by an employer to an employee for services performed during more than one-half of any such payroll period does not constitute wages, then none of the compensation paid by such employer to such employee for such period shall be deemed to be wages.

**(h)   Overlapping Pay Periods.--**   If a payment of wages is made to an employee by an employer:

(1)   With respect to a payroll period or other period, any part of which is included in a payroll period or other period with respect to which wages are also paid to such employee by such employer; or

(2)   without regard to any payroll period or other period, but on or prior to the expiration of a payroll period or other period with respect to which wages are also paid to such employee by its employer; or

(3)   with respect to a period beginning in one and ending in another calendar year, or

(4)   through an agent, fiduciary, or other person who also pays or has the control, receipt, custody, or disposal of the wages payable by another employer to such employee; the manner of withholding and the amount to be deducted and withheld under this section shall be determined in accordance with regulations prescribed by the Secretary under which the withholding exemption allowed to the employee in any calendar year shall approximate the withholding exemption allowable with respect to an annual payroll period.

**(i)   Withholding on Basis of Average Wages.--**   The Secretary may, under regulations prescribed by him/her, authorize employers: (1) to estimate the wages which will be paid to any employee in any quarter of the calendar year, (2) to determine the amount to be deducted and withheld upon each payment of wages to such employee during such quarter as if the appropriate average of the wages so estimated constituted the wages actually paid, and (3) to deduct and withhold upon any payment of wages to such employee during such quarter, such amount as may be necessary to adjust the amount actually deducted and withheld upon the wages of such employee during such quarter to the amount required to be deducted and withheld during such quarter without regard to this subsection.

**(j)   Return and Payment.--**   A person required to deduct and withhold any tax under this section shall, on or before the last day of the month following the close of each of the quarters ending on March thirty-first (31st), June thirty (30), September thirty (30), and December thirty-first (31st) of each year, in lieu of on the date prescribed in Sections 1061.15 and 1061.16, file a return therefor and pay such part thereof which has not been paid or deposited in the form and manner prescribed in Subtitle F. Such return shall be filed with the Secretary and contain such information and be made in such manner as the Secretary may by regulation prescribe.

**(k)   Return and Payment by Government Employer.--**   If the employer is the Government of Puerto Rico, or any political subdivision thereof, or any agency or instrumentality thereof, the return of the amount deducted and withheld upon any wages may be filed by any officer or employee of the Government of Puerto Rico, or of such political subdivision, or of such agency or instrumentality, as the case may be, having control of the payment of such wages, or duly designated for that purpose.

**(l)   Liability for Tax.--**   The employer shall be liable to the Secretary for the payment of the tax required to be deducted and withheld under this section and shall not be liable to any person for the amount of any such payment. Any employer who, at the time of filing its income tax return, has failed to remit to the Department of the Treasury the total amount deducted and withheld from the wages paid to its employees corresponding to the taxable year it is filing, shall not claim the wages paid as operating expenses.

**(m) Tax Paid by Recipient.--** If the employer, in violation of the provisions of this Subtitle, fails to deduct and withhold the tax under this section, and thereafter the tax against which such tax may be credited is paid, the tax so required to be deducted and withheld shall not be collected from the employer, but this subsection shall in no way relieve the employer from liability for any penalties or additions to the tax otherwise applicable in respect of such failure to deduct and withhold.

**(n) Statements.--**

**(1) Annual Reconciliation Statement.--** An employer required to deduct and withhold any tax with respect to the wages of his/her employees and to file a monthly return for such tax so deducted and withheld shall submit, on or before January thirty-first (31st) of the following year, in addition to any other documents, an annual reconciliation statement showing the amount of the tax deducted and withheld monthly, under this section, with respect to said wages.

**(2) Evidence of Withholding.--** An employer required to deduct and withhold a tax with respect to the wages of an employee, or who has been required to do so if the employee had claimed only the personal exemption allowed to a individual who is single, shall furnish to each such employee with respect to his/her employment during the calendar year, on or before January thirty-first (31st) of the following year, or, if his/her employment is terminated before the close of such calendar year, then on the day the last payment of wages is made, a written statement showing the following information:

**(A)** name, address, and employer's identification number (social security);

**(B)** name, address, and employee's account number (social security);

**(C)** total amount of wages paid, as said term is defined in subsection (a)(1);

**(D)** amount of the tax deducted and withheld under this section with respect to such wages;

**(E)** amount of expenses reimbursed to the employee, and

**(F)** cash or deferred contributions to qualified plans under Section 1081.01(e).

**(3) Statements to Constitute Information Returns.--** The statements required to be furnished by this subsection with respect to any wages shall be furnished at other times, shall contain such other information, and shall be in such form as the Secretary may by regulation prescribe. A duplicate of such statement, if made and filed in accordance with regulations prescribed by the Secretary, shall constitute the return required to be made with respect to such wages under this Subtitle.

**(4) Extension.--** The Secretary may, under such regulations as he/she may prescribe, grant to any employer a reasonable extension, not in excess of thirty (30) days, with respect to the statements required to be furnished under this subsection.

**(o) Nondeductibility of Tax in Computing Net Income.--** The tax deducted and withheld under this section shall not be allowed as a deduction either to the employer or to the recipient of the income in computing net income for purposes of any income tax imposed by a law of the Legislative Assembly.

**(p) Refunds or Credits.--**

**(1) Employers.--** Where there has been an overpayment of tax under this section, refund or credit shall be made to the employer only to the extent that the amount of such overpayment was not deducted and withheld under this section by the employer.

**(2) Employees.--** The refund or credit in cases of excessive withholding shall be governed by Subtitle F.

**(q) Penalties.--** For penalties applicable to fraudulent statements or failure to furnish statements and/or information required under subsection (e) or under subsection (n) of this section, see Subtitle F.

**(r)** For those cases regarding wages for services rendered in occasional, temporary or seasonal labor in which the payroll period with respect to the employee is daily and the amount thereof is based on an hourly wage, if the employer shows to the satisfaction of the Secretary that by determining the amount of the tax to

be deducted and withheld from said wages under the provisions of subsection (b) it would cause him/her serious inconvenience, he/she may, upon previous authorization of the Secretary, deduct and withhold the income tax at its source on said wages applying to the total amount thereof, without considering any withholding exemption, at two percent (2%). For purposes of determining whether the application of the provisions of subsection (b) would cause serious inconvenience to the employer, the following factors, among others, shall be taken into consideration:

(A)   Number of employees which the employer may have and who receive wages under such circumstances;

(B)   regularity of employment of each of the employees;

(C)   rotation of employees in the business of the employer;

(D)   amount of compensation per employee;

(E)   available time for preparing and transacting the payrolls corresponding to said wages; and

(F)   difficulties in determining the amount of the wage of the employee because of being unable to foresee the duration of the job.


**Section 1062.02.-- Withholding of Tax at Source on Indemnity Received on Judicial Proceedings or in Extrajudicial Claims.--**

**(a)  Indemnity Payments Received on Judicial Proceedings or in Extrajudicial Claims that Constitute Taxable Income for the Purpose of this Subtitle.--**  Every employer, insurance company or any other person required to make indemnity payments under a Court order or extrajudicial claim, shall be required to withhold seven percent (7%) of the amount of those payments made which constitute taxable income for purposes of this Subtitle. For purposes of this section, taxable income includes, among others, the following items:

(1)   Any compensation portion representing or substituting loss of income or salaries, including lost profits; and

(2)   Indemnity for lost salaries in the case of destitution or suspension from employment and salary, or for illegal dismissal.

**(b)  Withholding Subject to Provisions on Withholding at Source on Salaries.--**  The deduction and withholding made under subsection (a) shall be subject to the provisions of this Subtitle applicable to income tax withheld at source on wages as it relates to the manner and time to make the deposit of the amounts withheld and the payer's responsibilities with respect to the amounts withheld. Likewise, there shall apply the penalties established for employers that fail to withhold and deposit the amounts withheld established in Subtitle F.

**(c)  Information Returns.--**  The Secretary shall prescribe by regulations to that effect, the manner in which the payments described under subsection (a) and the amounts withheld thereunder shall be reported.

**(d)  Withholding as Credit Against Tax.--**  Every person to whom withholding at source and or subsection (a) has been made may claim the amount withheld during the taxable year as a credit against his/her tax liability.

**(e)  Exception.--**  The requirement to deduct and withhold set forth in subsection (a) will not apply to payments by reason of indemnity under a sentence pronounced by the Court or under an extrajudicial claim made to nonresident individuals or foreign corporations or partnerships not engaged in trade or business in Puerto Rico who are subject to the withholding set forth in Sections 1062.08 and 1062.11.


**Section 1062.03.-- Withholding at Source on Payments Made for Services Rendered.--**

**(a)  General Rule.--**  The Government of Puerto Rico and every natural or juridical person who, in the exercise of a trade or business activity or for the generation of income in Puerto Rico, makes payments to another person by reason of services rendered, and every payer who makes payments to a health service provider for health services rendered by said provider to any person, shall deduct and withhold seven percent (7%) of said payments. However, at the election of the service provider, the payer may deduct and withhold in lieu of seven percent (7%), an amount equivalent to ten percent (10%) or fifteen percent (15%) of said payments. The term "Government of Puerto Rico" includes the Government of the Commonwealth of Puerto Rico, its agencies, instrumentalities, public corporations and political subdivisions. The term "payer" means insurers, nonprofit associations, health insurance cooperatives, health service organizations, and any other person who makes payments in the name of the persons mentioned herein. The term services does not include the contracting of insurance, the lease or sale of tangible real or personal property, printing services, sale of newspapers, magazines, and other publications (including the placement of advertisements) and contracting of radio or television time.

**(b)  Special Rules.--**  The requirement to deduct and withhold provided in subsection (a) of this section shall not apply to:

**(1)**  The first one thousand five hundred dollars ($ 1,500) paid during the calendar year to the person who rendered the services. In the case of corporations or partnerships that operate in Puerto Rico through branches, the limit of one thousand five hundred dollars ($ 1,500) provided herein shall apply to each branch individually, at the option of the withholding agent.

**(2)**  Payments made to hospitals, clinics, hospices for terminally ill patients, homes for the elderly, and institutions for persons with disabilities. The term "hospital or clinic" does not include the rendering of laboratory services, except in the case that said services are rendered by laboratories that form an integral part of a hospital or clinic.

**(3)**  Payments made to exempt organizations, as provided in Section 110101. [sic]

**(4)**  Payments for commissions made to direct salesperson for the sale of consumer products. The term "direct salesperson" means an individual who:

**(A)**  Is engaged in the sale (or solicitation of sale) of consumer goods to any buyer on the basis of a purchase-sale agreement, commission for deposit, or any similar arrangements as the Secretary may determine by regulation, for resale (by the buyer or any other person) in the home or other site that is not a retail sales establishment, or

**(B)**  is engaged in the sale (or solicitation of sale) of consumer products in the home or other site that is not a retail sales establishment.

**(5)**  Payments made to contractors or subcontractors for construction works. The term "construction works" does not include architectural, engineering, design, or consulting services and other services of a similar nature.

**(6)**  Payments for services rendered by nonresident individuals or foreign corporations or partnerships not engaged in trade or business in Puerto Rico that are subject to withholding under Sections 1062.08 and 1062.11.

**(7)**  Payments of wages subject to withholding under Section 1062.01.

**(8)**  Payments for services to individuals, corporations, and partnerships during the first three (3) years as of the beginning of a service rendering activity. This exemption may be enjoyed only once by the taxpayer.

**(9)**  Payments to the Government of Puerto Rico, their agencies, public corporations, and political subdivisions.

**(10)**  Payments for services to a bona fide farmer who complies with the requirements for deduction provided in Section 1033.12 or in any other equivalent provision of special law.

**(11)**  Payments made directly, or through agents, representatives, or other intermediaries, to an eligible carrier. The term "eligible carrier" means a person whose principal trade or business is air transportation, maritime cargo, or passenger transportation, or telephone communications service between Puerto Rico and any point outside of Puerto Rico.

**(12)**  Payments made by an eligible carrier (as said term is defined in paragraph (11)) to nonprofit entities, for the purpose of carrying out accounting, registration, reporting, and collection of air or maritime transportation fare sales and other related services in the name or for the benefit of said eligible carrier.

**(13)**  Payments for ecclesiastical services rendered by priests or other duly authorized or ordained ministers, including Jewish rabbis.

**(14)**  Payments for services rendered outside of Puerto Rico.

**(c)  Liability of the Payer.--**  Unless otherwise provided, any person required to deduct and withhold any taxes under any of the provisions of this section shall be liable to the Secretary for the payment of such taxes and shall not be liable to any other person for the amount of any of such payments.

**(d)  Income Tax Return and Payment of Withheld Income.--**  Every payer required to deduct and withhold the tax provided in subsection (a) shall file a return and pay or deposit the same no later than the tenth (10th) day of the month following the close of the calendar month in which the tax was deducted and withheld. Said return shall be filed with the Secretary and shall contain such information and be made in the manner established through regulations by the Secretary.

**(e)  Failure to Withhold.--**  If the withholding agent fails to withhold the amount referred to in subsection (a), unless the taxpayer pays the income tax directly to the Secretary, the amount that should have been deducted and withheld shall be collected directly from the government instrumentality or from the person in which the responsibility to deduct and withhold was delegated.

**(f)**  Any person who fails to meet his/her responsibility to deduct and withhold the income tax described in subsection (a) of this section shall be subject to the penalties set forth in Sections 6030.12 and 6041.01 of Subtitle F.

**(g)  Waivers.--**

**(1)**  In the case of corporations and partnerships that are up to date with their tax liabilities, in lieu of the withholding provided in subsection (a), three percent (3%) shall be deducted and withheld.

**(2)**  In the case of corporations with a business volume of one million (1,000,000) or more that are up to date with their tax liabilities and which submit financial statements enclosed with an Auditor's Report subject to the provisions of Section 1061.15, in lieu of the withholding provided in subsection (a), no withholding shall be made on account of payments for services rendered by these corporations.

**(3)**  In the case of other sectors or categories of enterprises or businesses where it is shown to the satisfaction of the Secretary, or where the Secretary him/herself determines that the obligation of this section shall cause undue inconvenience to said sectors or categories of enterprises or businesses, without leading to any practical end, since the amounts thus withheld will have to be reimbursed to the taxpayers or because said withholding will be excessive, the Secretary may, under such rules and regulations which he/she may promulgate, release the withholding agent from making such withholding wholly or partially, from all enterprises or businesses included in the sector or category. The Secretary may use the aforementioned criteria to release the withholding agent, wholly or partially, from making the withholding provided in subsection (a) or in this subsection, in the cases of corporations and partnerships that carry over a substantial amount of net operating loss with regard to the annual business volume of said corporation or partnership.

**(h)  Annual Reconciliation Statement.--**  Any payer who is required to make the deduction and withholding set forth in subsection (a) and to file a return for the amounts deducted and withheld as established in subsection (d) must submit, on or before February 28 of the following year, an annual

reconciliation statement stating the total of the amounts withheld under this section with respect to payments made during the year for services rendered.

**(i)  Information Statements.--**  The Secretary shall establish, through regulations, the method of reporting the payments described in this section and the amounts withheld pursuant to the provisions of subsection (a).

### Section 1062.04.-- Required Estimated Income Tax Payment Attributable to the Distributive Share of a Resident or a Nonresident Citizen Partner in a Special Partnership.--

**(a)  Requirement to Withhold.--**  The partner to whom the administration of the special partnership has been delegated, or any other persons to whom the obligation to furnish the partners with the report, as described in paragraph (2) of Section 1061.06 has been delegated, shall determine and remit an amount equal to: (1) thirty percent (30%) of the estimated amount of the distributive share in the income of the special partnership of a partner who is a resident individual, nonresident United States citizen, or a Puerto Rico resident estate or trust and, in the case of a domestic or resident foreign corporation, an amount equal to thirty percent (30%) of the item described in Section 1114.06(a)(10) minus, (2) the amount withheld pursuant to Sections 1062.02 and 1062.03 during those periods specified in subsection (b).

**(b)  Requirement to File a Return and Pay the Tax Withheld.--**  Every special partnership shall file a return and pay the tax determined pursuant to subsection (a) not later than the fifteenth (15th) day of the fourth (4th), sixth (6th), ninth (9th), and twelfth (12th) month of the taxable year of such partnership. Such return shall be filed with the Secretary and shall contain such information and be made in such a manner as the Secretary may prescribe through regulations to such effect.

**(c)  Liability of the Payer.--**  Except as otherwise provided, every person required to determine and remit any tax under the provisions of this section shall be liable to the Secretary for the payment of such tax and shall not be liable to any other person for the amount of any of such payments.

**(d)  Failure to Withhold.--**  If the payer agent fails to withhold the amount referred to in subsection (a), the amount which should have been determined and remitted, unless the partner pays the tax to the Secretary, shall be collected directly from the special partnership or from the person to whom the requirement to determine and remit the income tax was delegated.

**(e)**  Any person who fails to meet the requirement to determine and remit the income tax described in subsection (a) of this section shall be subject to the penalties set forth in Subtitle F.

**(f)**  Whenever it is shown to the satisfaction of the Secretary, or when the Secretary him/herself determines that the requirement provided in subsection (a) shall cause undue inconvenience without leading to any practical end, since the amounts thus withheld will have to be reimbursed to the taxpayers, or because said withholding will be excessive, the Secretary may, under such rules and regulations which he/she may promulgate, release the withholding agent from making such withholding wholly or partially.

### Section 1062.05.-- Requirement of Estimated Income Tax Payment on the Distributive Share in the Income of a Corporation of Individuals.--

**(a)  Requirement to Withhold.--**  The corporation, or any other persons to whom the obligation to furnish the report to shareholders as described in paragraph (2) of Section 1061.07 has been delegated, shall determine and remit an amount equal to: (1) thirty percent (30%) of the estimated amount of the distributive share of a shareholder in the income of a corporation of individuals described in Section 1115.04(b)(10) minus, (2) the amount withheld pursuant to Sections 1062.02 and 1062.03 during those periods specified in subsection (b).

**(b)  Return and Payment of Requirement to File a Return and Pay the Tax Withheld.--**  Every special corporation of individuals shall file a return and pay the tax determined pursuant to subsection (a) not later than the fifteenth (15th) day of the fourth (4th), sixth (6th), ninth (9th), and twelfth (12th) month of the taxable year of such corporation. Such return shall be filed with the Secretary and shall contain such

information and be made in such a manner as the Secretary may prescribe through regulations to such effect.

**(c)  Liability of the Payer.--**  Except as otherwise provided, every person required to determine and remit any tax under the provisions of this section shall be liable to the Secretary for the payment of such tax and shall not be liable to any other person for the amount of any of such payments.

**(d)  Failure to Withhold.--**  If the payer agent fails to determine and withhold the amount referred to in subsection (a), unless the shareholder pays the tax to the Secretary, the amount which should have been determined and remitted shall be directly collected from the corporation of individuals or from the person to whom the requirement to determine and remit the income tax was delegated.

**(e)**  Any person who fails to meet the requirement to determine and remit the income tax described in subsection (a) of this section shall be subject to the penalties set forth in Section 6030.12 of Subtitle F.

**(f)  Regulations by the Secretary.--**  The Secretary shall regulate the determination of the estimated amount of the distributive share in the income of the corporation of individuals for purposes of this section.

**(g)**  Whenever it is shown to the satisfaction of the Secretary, or when the Secretary him/herself determines that the obligation provided in subsection (a) shall cause undue inconvenience without leading to any practical end, since the amounts thus withheld will have to be reimbursed to the taxpayers, or because said withholding will be excessive, the Secretary may, under such rules and regulations which he/she may promulgate, release the withholding agent from making such withholding wholly or partially.

## Section 1062.06.-- Required Estimated Income Tax Payment Attributable to the Distributive Share of a Member of a Limited Liability Company.--

**(a)  Requirement to Withhold.--**  The member to whom the administration of the limited liability company has been delegated, or any other persons to whom the obligation to furnish the report to the members as described in subsection (b) of Section 1061.04 has been delegated, shall determine and remit an amount equal to: (1) thirty percent (30%) of the estimated amount of the distributive share in the income of the limited liability company of a member who is an individual, estate, or trust and, in the case of a corporation, an amount equal to thirty percent (30%) of the item described in Section 1071.04 minus, (2) the amount withheld pursuant to Sections 1062.02 and 1062.03 during those periods specified in subsection (b).

**(b)  Requirement to File a Tax Withheld.--**  Every special corporation of individuals shall file a return and pay the tax determined pursuant to subsection (a) not later than the fifteenth (15th) day of the fourth (4th), sixth (6th), ninth (9th), and twelfth (12th) month of the taxable year of such corporation. Such return shall be filed with the Secretary and shall contain such information and be made in such a manner as the Secretary may prescribe through regulations to such effect. Any unpaid balance at the close of the fiscal year of the limited liability company shall be paid not later than the fifteenth (15th) day of the fourth (4th) month following the close of the taxable year together with the filing of the return required under Section 1061.04(a) or the appropriate request for extension.

**(c)  Liability of the Payer.--**  Except as otherwise provided, every person required to determine and remit any tax under the provisions of this section shall be liable to the Secretary for the payment of such tax and shall not be liable to any other person for the amount of any of such payments.

**(d)  Failure to Withhold.--**  If the payer agent fails to withhold the amount referred to in subsection (a), unless the member pays the tax to the Secretary, the amount which should have been determined and remitted shall be directly collected from the limited liability company or from the person to whom the requirement to determine and remit the income tax was delegated.

**(e)**  Any person who fails to meet the requirement to determine and remit the income tax described in subsection (a) of this section shall be subject to the penalties set forth in Subtitle F.

2011 PR H.B. 3070

**(f) Regulations by the Secretary.--**   The Secretary shall establish, through regulation, the manner in which the estimated amount of the distributive share in the income of the limited liability company shall be determined for purposes of this section.

**(g)** Whenever it is shown to the satisfaction of the Secretary, or when the Secretary him/herself determines that the withholding provided in subsection (a) shall cause undue inconvenience without leading to any practical end, since the amounts thus withheld will have to be reimbursed to the taxpayers, or because said withholding will be excessive, the Secretary may, under such rules and regulations which he/she may prescribe, release the withholding agent from making such withholding wholly or partially.

## Section 1062.07.-- Required Estimated Income Tax Payment Attributable to the Distributive Share of a Partner in a Partnership.--

**(a) Requirement to Withhold.--**   The member to whom the administration of a partnership has been delegated, or any other persons to whom the requirement to furnish the report to the partners as described in subsection (b) of Section 1061.03 has been delegated, shall determine and remit an amount equal to: (1) thirty-three percent (33%) of the estimated amount of the distributive share in the income of the partnership of a partner who is an individual, estate, or trust and, in the case of a corporation, an amount equal to thirty percent (30%) of the item described in Section 1071.04 minus, (2) the amount withheld pursuant to Sections 1062.02 and 1062.03 during those periods specified in subsection (b).

**(b) Requirement to File a Return and Pay the Tax Withheld.--**  Every partnership shall file a return and pay the tax determined pursuant to subsection (a) not later than the fifteenth (15th) day of the fourth (4th), sixth (6th), ninth (9th), and twelfth (12th) month of the taxable year of such partnership. Such return shall be filed with the Secretary and shall contain such information and be made in such a manner as the Secretary may prescribe through regulation to such effect. Any unpaid balance at the close of the fiscal year of the limited liability company shall be paid not later than the fifteenth (15th) day of the fourth (4th) month following the close of the taxable year together with the filing of the return required under Section 1061.03(a) or the appropriate request for extension.

**(c) Liability of the Payer.--**  Except as otherwise provided, every person required to determine and remit any tax under the provisions of this section shall be liable to the Secretary for the payment of such tax and shall not be liable to any other person for the amount of any of such payments.

**(d) Failure to Withhold.--**  If the payer agent fails to withhold the amount referred to in subsection (a), unless the partner pays the tax to the Secretary, the amount which should have been determined and remitted shall be directly collected from the partnership or from the person to whom the requirement to determine and remit the income tax was delegated.

**(e)** Any person who fails to meet the requirement to determine and remit the income tax described in subsection (a) of this section shall be subject to the penalties set forth in Subtitle F.

**(f) Regulations by the Secretary.--**   The Secretary shall establish, through regulation, the manner in which the estimated amount of the distributive share in the income of the partnership shall be determined for purposes of this section.

**(g)** Whenever it is shown to the satisfaction of the Secretary, or when the Secretary him/herself determines that the withholding provided in subsection (a) shall cause undue inconvenience without leading to any practical end, since the amounts thus withheld will have to be reimbursed to the taxpayers, or because said withholding will be excessive, the Secretary may, under such rules and regulations which he/she may promulgate, release the withholding agent from making such withholding wholly or partially.

## Section 1062.08.-- Tax Withholding at the Source in the Case of Nonresident Individuals.--

**(a) Requirement to Withhold.--**  Except as otherwise provided in subsection (c), all persons acting in whatever capacity, including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the Government of Puerto Rico, and its agencies, instrumentalities, and

political divisions, having the control, receipt, custody, disposal, or payment of any interest, rents or royalties, salaries, wages, annuities, compensations, remunerations, emoluments, distributions made by exempt entities under the provisions of paragraphs (a)(8)(F), (a)(6), or (a)(5) of Section 1101.01 or other fixed or determinable annual or periodical gains, profits, and income (except for insurance premiums) of any nonresident individual (only to the extent that any of the aforementioned items constitutes gross income from sources within Puerto Rico), shall deduct and withhold from such annual or periodical gains, profits, and income an amount equal to twenty-nine percent (29%) thereof if the receiver is an alien, and an amount equal to twenty percent (20%) thereof if the receiver is a United States citizen. The Secretary may authorize such tax to be deducted and withheld from the interest on any securities whose owners are not known to the withholding agent.

**(2)** [sic.] Withholding on Dividends.--In the case of income on account of dividends (except as provided in Sections 1062.04 and 1062.10), a ten percent (10%) tax shall be deducted and withheld.

**(3) Exceptions.--** The provisions of this section shall not apply to:

**(A)** dividends received from International Banking Entities organized under the provisions of Act No. 52 of August 11, 1989 [7 L.P.R.A. §§ 232 et seq.], known as the "International Banking Center Regulatory Act,"

**(B)** interests (including the original issue discount, letters of credit, and other financial guarantees), dividends, partnership profit sharing, distributions in a total or partial liquidation, or other income items similar to these received from an International Insurer or by an International Insurer Holding Company that complies with Article 61.040 of the Insurance Code of Puerto Rico.

**(4) Withholding Exemption.--** In those cases where the withholding agent shows, to the satisfaction of the Secretary, or when the Secretary him/herself determines that the withholding provided in this subsection will cause undue inconvenience without leading to any practical end, because the amounts thus withheld would have to be reimbursed to the taxpayers, or the withholding will be excessive, the Secretary may, under such rules and regulations which he/she may prescribe, release the withholding agent from making such withholding wholly or partially.

**(5) Special Rules.--**

**(A)** The amounts received as distributions in complete or partial liquidation of a corporation or partnership shall be deemed as fixed or determinable annual or periodic income and shall be subject to withholding to the extent they constitute income from sources within Puerto Rico.

**(B)** No deduction or withholding shall be made pursuant to the provisions of this subsection in the case of any income item that is effectively related to the exploitation of a trade or business within Puerto Rico and that is included in the gross income of the recipient of the income for the recipient's income year [sic] for the taxable year, pursuant to Section 1091.02, except if said item is by reason of compensation for personal services.

**(C)** Compensation for personal services rendered by a nonresident individual, other than remuneration on account of pension for services rendered, shall be subject to the withholding provided in this subsection.

**(D)** For special rules with regard to withholding at the source in the case of corporations of individuals, see Sections 1062.05 and 1062.10.

**(E)** In the case of interests received by a nonresident alien, the requirement to deduct and withhold an amount equal to twenty-nine percent (29%) of such interest imposed by this subsection shall apply only if such individual is a related person (as defined in Section 1010.05) of the debtor of the liability.

**(b) Return and Payment.--**

**(1) General Rule.--** Every person required to deduct and withhold any tax under this section shall file a return thereof not later than April 15 of the following year and pay to the Secretary said tax or such

part thereof which has not been deposited in the form and manner prescribed in Section 6080.08 of Subtitle F. Every such person shall be liable to the Secretary for the payment of such tax and shall not be liable to any other person for the amount of any such payments.

**(2) Public Shows.--**   Any person operating, in any form whatsoever, the business of public shows, functions, or exhibitions and who, in connection therewith, is required to deduct and withhold any tax under this Section, shall file a return thereof and pay the tax to the Secretary on the day after each public show, function, or exhibition is held, rather than within the terms prescribed in paragraph (1) of this subsection and on the date prescribed in Subtitle F. Every such person shall be liable to the Secretary for the payment of such tax and shall not be liable to any other person for the amount of any such payments.

**(c) Income of Recipient.--**   Income upon which tax is required to be withheld at the source under this Section shall be included in the return of the recipient of such income, but any amount of tax so withheld shall be credited against the total amount of income taxes as computed in such return.

**(d) Tax Paid by Recipient.--**   If any tax required to be deducted and withheld under this Section is paid by the recipient of the income, it shall not be collected from the withholding agency; nor in cases in which the tax is so paid shall any penalty be imposed upon or collected from the recipient of the income or withholding agent for failure to declare or pay the same, unless such failure was fraudulent and for the purpose of evading payment of the tax.

**(e) Refunds and Credits.--**   Where an overpayment of tax has occurred under this Section, any refund or credit made under the provisions of Subtitle F shall be made to the withholding agent unless the amount of such tax was not actually withheld by the withholding agent.

**(f) Withholding Required from Foreign Corporations Notifying Their Withdrawal from Puerto Rico.--** A foreign corporation that has filed with the Secretary of State of Puerto Rico a waiver of its right to do business in Puerto Rico, pursuant to the General Corporations Act, shall withhold from its shareholders and pay to the Secretary the appropriate tax in the same manner as if the undistributed amount of its earnings and profits from sources in Puerto Rico (including the earnings and profits attributable to the period comprised between the close of the last taxable year and the date on which the corporation notified the Secretary of State of its withdrawal from Puerto Rico) had actually been distributed as dividends in the year in which such surrender of right had been filed. For purposes of this Subtitle, the earnings and profits deemed to have been distributed under this subsection shall constitute taxable income for the shareholders in the taxable year in which the corporation filed the surrender of its right to do business in Puerto Rico before the Secretary of State.

The provisions of this subsection shall not be applicable to the aforementioned earnings and profits in the event of their distribution if, under the different tax of industrial incentive laws, no taxes may be imposed thereon. The provisions of this subsection shall not apply to earnings and profits subject to the tax imposed by Section 1092.02.

**(g) Special Rule in Cases of Sale of Property by Nonresident Individuals.--**

**(1) Requirement to Withhold.--**   Notwithstanding any other provisions of this Subtitle, a person who acquires real property or shares from any nonresident individual (if the profit made in the transaction constitutes income from sources in Puerto Rico) shall deduct and withhold twenty-five percent (25%) of the payments he/she makes to the nonresident individual during the current taxable year, or in subsequent taxable years, as part of the purchase price of said property. Such withholding shall be of the same nature, and be declared and paid to the Secretary in the same manner and subject to the same conditions provided in the other subsections of this section. When the recipient is an individual who is a United States citizen, the withholding provided herein shall be ten percent (10%).

**(2)** For purposes of this paragraph, the term "purchase price," when referring to real property, means the total amount of payments that the purchaser is bound to make reduced by:

**(A)** the acquisition price of the property, as it appears in the public deed or in the original private acquisition document of the seller;

2011 PR H.B. 3070

**(B)**   the notary fees, the internal revenue stamps of the deeds and the Property Registry fees corresponding to the cancellation of the mortgage paid by the seller;

**(C)**   the commission paid by the seller to a real estate broker in connection with the purchase-sale of the real property, and

**(D)**   the value increase of the property over which the seller has paid the special tax in advance, pursuant to Section 1014A of the Puerto Rico Internal Revenue Code of 1994, as amended.

**(E)**   No other reduction shall be allowed to the purchase price for purposes of this paragraph. If the seller acquired the real property through bequest, legacy, inheritance, or donation, the purchase price shall only be reduced by the expenses described in subparagraphs (B), (C) and (D).

**(3) Refund of the Amounts Withheld.--**   The amounts withheld under paragraph (1) may be refunded by the purchaser directly to the seller in cases where, prior to their being paid to the Secretary, the nonresident individual has paid the tax on the profit derived from the transaction and the Secretary so acknowledges in writing, or when the Secretary determines that no profit was derived from the transaction and therefore no tax is due.

**(4) Failure to Withhold.--**   If the purchaser, in violation of the provisions of this subsection, fails to withhold as provided in paragraph (1) the amount that should have been deducted and withheld (unless the seller pays to the Secretary the tax on the profit derived from the transaction) shall be collected from the purchaser following the same procedure as if the purchaser were liable for the tax.

**(5) Request to Relieve.--**   In the event that an individual resident alien qualifies under the provisions of Section 1034.04(n), he/she may request a waiver from the Secretary to prevent the seller from making the withholding provided in paragraph (1). The Secretary shall determine the requirements to grant this waiver through regulation.

**(h) Withholding on Certain Foreign Tax-exempt Organizations.--**   In the case of income of a foreign organization subject to the tax imposed by Section 1102.01, the provisions of this section and Section 1062.11 shall apply to rents includible under Section 1102.02 when computing its unrelated business net income, but only to the extent and subject to such conditions as may be provided under regulations prescribed by the Secretary.

**(i) Exception in the Case of Eligible Distribution and Distributions of Corporations of Individuals.--**   None of the provisions of this Section shall apply to eligible distributions of dividends or shares of partnership benefits subject to the payment of the special tax provided in Section 1023.06 of this Subtitle, or to the distribution, other than in total or partial liquidation, derived from income earned by a corporation of individuals.

**(j) Information Return.--**   Every person who is required to deduct and withhold any tax under this section, in addition to filing the return required by subsection (b), shall file an information return to the Secretary as he/she establishes through regulations. Said return shall include the total amount paid, the tax deducted and withheld, and the name, address, and account number of the person to whom the payment was made. A copy thereof shall be provided to the person to whom payment was made not later than April 15 of the year following the calendar year for which the return was filed.

**Section 1062.09.-- Income Tax Withheld at Source from Individuals, Estates, Corporations, Partnerships, and Trusts on Interest Paid or Credited on Deposits in Interest-earning Accounts, or on Bonds, Notes or Other Obligations of Certain Corporations or Partnerships and on Certain Mortgages.--**

**(a) Withholding Requirements.--**   Except as otherwise provided in this Subchapter, in those cases in which the recipient of the interest exercises the option provided in subsection (b), of Section 1023.04 or subsection (c) of Section 1023.05, the payer of interest described in subsection (a) of said Sections shall deduct and withhold a tax equal to ten percent (10%) or to seventeen percent (17%), as applicable, of the total amount of non-exempt interest paid or credited. In the cases described in Section 1023.04, the payer of interest shall be bound to withhold the aforesaid tax with the total interest paid or credited to the taxpayer

as a basis. In cases of savings accounts or certificates registered in the name of a brokerage firm as nominee for one or more individuals, estates, or trusts covered by Section 1023.04(b)(3), the phrase "payer of interest," both in this subsection and in the subsequent subsections of this section, shall refer to said brokerage firm.

**(b)  Special Rules.--**

**(1)  Term to Make the Withholding.--**  Except as otherwise provided in this Subtitle, and for purposes of the same, a payment of interest shall be deemed as received and the tax provided in Sections 1023.04 and 1023.05 shall be deducted and withheld at the time that such payment is effectively made or at the time the recipient is notified that he/she was credited for the same.

**(2)  Unknown Recipient.--**  If the payer cannot determine the person to whom the interest is paid or credited, the tax imposed in subsection (a) of this section shall be withheld as provided in said subsection as if the recipient were known and had authorized the withholding of such tax.

**(c)  Liability of the Payer.--**  Except as otherwise provided in this Subtitle, every person required to deduct and withhold any tax under the provisions of this section shall be liable to the Secretary for the payment of such tax and shall not be liable to any other person for the amount of any such payments.

**(d)  Failure to Withhold.--**  If the withholding agent, in violation of the authorization conferred by the recipient of the interest, fails to make the withholding to which subsection (a) refers, the amount that should have been deducted and withheld, unless the recipient of the interest pays the tax to the Secretary, shall be collected directly from the payer following the same procedure that would be used had the tax been owed by the payer.

**(e)  Nondeductibility of the Tax When Computing the Net Income.--**  The tax deducted, withheld, and paid under this section shall not be allowed as a deduction to the payer nor to the recipient of the income when computing the net income for purposes of any income tax imposed by this Subtitle.

**Section 1062.10.-- Income Tax Withholding at Source Attributable to Distributive Share of a Nonresident Alien Partner of a Special Partnership or Shareholder of a Corporation of Individuals.--**

**(a)  Requirement to Withhold.--**  The partner or shareholder to whom the administration of the special partnership or of the corporation of individuals has been delegated, or any other persons to whom the requirement to furnish the partners or stockholders with the report described in Sections 1061.02 or 1061.07 has been delegated, shall deduct and withhold an amount equal to twenty-nine percent (29%) of the distributive share of a partner in the income of the special partnership, or an amount equal to thirty-three percent (33%) of the distributive share of a shareholder in the income of the corporation of individuals, of a partner, or of a shareholder who is a foreign individual, an estate, or a nonresident trust. The distributive share in the income of the partnership shall be deemed to be distributed pursuant to the provisions of Sections 1114.16 or 115.04(j), as applicable. The provisions of this subsection shall not apply to the share attributable to a nonresident shareholder who is not engaged in a trade or business in Puerto Rico related to international insurers or international insurer holding companies that are in compliance with Article 61.040 of the Insurance Code of Puerto Rico.

**(b)  Liability of the Payer.--**  Except as otherwise provided, every person required to deduct and withhold any tax under the provisions of this section shall be liable to the Secretary for the payment of such tax and shall not be liable to any other person for the amount of any of such payments.

**(c)  Failure to Withhold.--**  If the withholding agent fails to withhold the amount referred to in subsection (a), unless the nonresident partner or shareholder pays the tax to the Secretary, the amount which should have been deducted and withheld shall be collected directly from the special partnership, the corporation of individuals, or the person in which the requirement to deduct and withhold the income tax was delegated.

**Section 1062.11.-- Tax Withholding at Source on Foreign Corporations and Partnerships Not Engaged in Trade or Business in Puerto Rico.--**

**(a)  Requirement to Withhold.--**

**(1)  General Rule.--**  In the case of foreign corporations subject to taxation under this Subtitle that are not engaged in trade or business in Puerto Rico, a tax equal to twenty-nine percent (29%) of said income shall be deducted and withheld at the source, in the same manner and on the same items of income that are provided in Sections 1062.08 (including its subsection (g)) and 1062.10.

**(2)  Withholding on Dividends.--**

**(A)**  Except as provided in subparagraph (B), income from dividends shall be subject to a deduction and withholding of an amount equal to ten percent (10%) thereof.

**(B)**  In the case of dividends referred to in Section 1092.01(a)(2)(D), the withholding shall be of seven percent (7%).

**(3)  Exceptions.--**  The deduction and withholding provided in this subsection shall not apply with respect to:

**(A)**  Dividends received from industrial development income that originate from interest on obligations of the Government of Puerto Rico or any of its instrumentalities or political subdivisions, on mortgages insured by the Puerto Rico Housing Finance Agency and Bank acquired after March 31, 1977, and on loans or other assets with mortgage security granted by any pension or retirement system of a general nature established by the Legislature of Puerto Rico, the municipalities, agencies, instrumentalities and public corporations of the Government of Puerto Rico and acquired after March 31, 1977,

**(B)**  Dividends received from International Banking Entities organized under the provisions of Act No. 52 of August 11, 1989 [7 L.P.R.A. §§ 232 et seq.], known as the "International Banking Center Regulatory Act," and

**(C)**  Interest (including the original issue discount, letters of credit, and other financial guarantees), dividends, distributions in total or partial liquidation or other income items similar to those received from international insurers or from international insurer holding companies which are in compliance with Article 61.040 of the Insurance Code of Puerto Rico.

**(4)**  In the case of interest received by a foreign corporation not engaged in a trade or business in Puerto Rico, the requirement to deduct an amount equal to twenty-nine percent (29%) of such interest imposed by this subsection shall apply only if such corporation is a related person (as defined in Section 1010.05) to the debtor of the liability. In the case of any income item effectively connected to the exploitation of a trade or business within Puerto Rico and that, pursuant to Section 1092.01(c)(2), may be included in the gross income of the recipient's income for the taxable year, there will be no deduction or withholding.

**(b)  Limitation.--**  If a corporation organized under the laws of a foreign country receiving dividends from an entity which is or was exempt and is engaged in a trade in Puerto Rico or is the owner or operator of a hotel or hotels in Puerto Rico, or leases property, machinery, or equipment for use in a trade or hotel in Puerto Rico can establish to the satisfaction of the Secretary that said corporation is not bound to pay, in any jurisdiction outside Puerto Rico or outside the United States, any tax on dividends derived from industrial development income, then no tax shall be deducted or withheld on such dividends; or that the tax withheld under subsection (a) may not be claimed as credit against the tax payable on the dividends to the country where the corporation was organized, or that said tax may only be taken partially as credit, because the tax withheld is greater than the tax imposed in said country, the tax so withheld, or the part thereof that could not be claimed as credit, shall be reimbursed to the taxpayer.

**(c)**  Any corporation claiming a refund, either from the Secretary or from the withholding agent under the provisions of subsection (b), shall present to the Secretary:

**(1)**  A certificate issued by the proper government authorities of the country where the corporation was organized, establishing the extent to which the income tax imposed in Puerto Rico on such dividends may be claimed as credit in such country; or

**(2)**  A certified copy of the return filed in said country, showing the tax paid and the extent to which the Puerto Rico tax was allowed as credit, or

**(3)**  Any other satisfactory evidence.

Based on this evidence, the Secretary shall grant a refund or authorize the withholding agent refund the corresponding amount in case the funds have not been paid to the Department of the Treasury.

**(d)**  The taxes withheld under the provisions of this section shall be declared and paid in the same manner and subject to the same conditions as provided in Section 1062.08.

**(e)  Income Tax Withheld on Nonresident Alien Partner of a Special Partnership.--**  In the case of a nonresident foreign corporation that is a partner in a special partnership, there shall be deducted and withheld an amount equal to twenty-nine percent (29%) of the amount of the distributive share of the corporation in the income of the special partnership. The income tax to be withheld under this subsection shall be subject to the provisions of Section 1062.10.

## Section 1062.12.-- Close of Taxable Year by Secretary.--

**(a)  Tax in Jeopardy.--**

**(1)  Departure of Taxpayer or Removal of Property from Puerto Rico.--**  If the Secretary determines that a taxpayer intends to depart suddenly from Puerto Rico or to remove his/her property therefrom, or to conceal him/herself or his/her property therein, or to do any other act tending to prejudice or render wholly or partly ineffective the proceedings to collect the tax for the then last past taxable year or the then current taxable year unless such proceedings are brought without delay, the Secretary shall declare the taxable period for such taxpayer immediately terminated and shall serve notice of such finding and declaration to the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing the return and paying the tax has expired; and such tax shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes prima facie evidence of the taxpayer's intentions.

**(2)  Corporation in Liquidation.--**  If the Secretary finds that the collection of the tax of a corporation or a partnership for the current or immediately preceding taxable year will be jeopardized by the distribution of all or a portion of the assets of such corporation or partnership in the liquidation of the whole or any part of its capital stock, the Secretary shall declare the taxable period for such taxpayer immediately terminated and shall serve notice of such finding and declaration to the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the last preceding taxable year, or so much of such tax as is unpaid, whether or not the time otherwise allowed by this Subtitle for filing the return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable.

**(b)  Security for Payment.--**  A taxpayer who has not failed to file any return or pay income tax under any law of the Legislative Assembly of Puerto Rico may provide to the Government of Puerto Rico, under regulations to be prescribed by the Secretary, security approved by the Secretary that he/she shall duly make the return next thereafter required to be filed and pay the tax next thereafter required to be paid. The Secretary may approve and accept in like manner security for return and payment of taxes declared due and payable by virtue of the provisions of this section, provided the taxpayer has paid in full all other income taxes owed by him/her.

**(c)  Effect of Security.--**  If security is approved and accepted pursuant to the provisions of this section and such further or other security with respect to the tax or taxes covered thereby is provided, as the Secretary shall from time to time find necessary and require, payment of such taxes shall not be enforced by any proceedings under the provisions of this section prior to the expiration of the time otherwise allowed for paying such respective taxes.

**(d)  Departure of Alien or Nonresident.--**  No alien shall leave Puerto Rico unless he/she first procures from the Secretary a certificate of compliance with all the obligations imposed upon him/her by the income tax laws.

**(e)  Addition to Tax.--**  For additions to the tax for violating or attempting to violate the provisions of this section, see Subtitle F.

## SUBTITLE C -- INFORMATION RETURNS

### Section 1063.01.-- Information at Source.--

**(a)**  Payments of Fixed or Determinable Income of Five Hundred Dollars ($ 500) or More.--All persons engaged in a trade or business in Puerto Rico, including lessees or mortgagors of personal or real property, fiduciaries and employers who made payments to individuals for rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments or other fixed or determinable gains, profits, or income other than the payments described in Sections 1063.05 or 1063.06 of this Subtitle, of five hundred dollars ($ 500) or more, or who made interest payments of five hundred dollars ($ 500) or more to individuals in any taxable year, except tax-exempt interest under this Subtitle, not including interests considered in Section 1031.02(a)(3), (or, in the case that such payments are made by the Government of Puerto Rico or any instrumentality or political subdivision thereof, the officials or employees who have information as to such payments and are required to make returns in regard thereto under the regulations provided hereinafter) shall render, on or before February 28 of the following year, a true and accurate return to the Secretary, under such regulations and in such form and manner and to such extent as may be prescribed by the Secretary, setting forth the amount of such gains, profits, and income, and the name, address, and account number of the recipient of such payments.

**(b)  Returns Regardless of Amount of Payment.--**  Such returns may be required, regardless of amounts: (1) in the case of payments of interest on bonds, mortgages, deeds of trust, or other similar obligations of corporations or partnerships, and (2) in the case of collections of items, not payable in Puerto Rico, of interest on bonds of foreign countries and interest on the bonds of and dividends or profits from foreign corporations or partnerships by persons undertaking as a matter of business or for profit the collection of foreign payments of such interest, dividends, or profits by means of coupons, checks, bills of exchange, or in any other form.

**(c)  Recipient to Furnish Name, Address, and Account Number.--**  To make effective the provisions of this section, the name, address, and account number of the recipient of income shall be furnished upon demand of the person paying the income.

**(d)  Statements to be Furnished to Individuals With Respect to Whom the Information is Required.--** Every person who renders the information return described in subsection (a) shall furnish a copy thereof to every individual with respect to whom said return is made, on or before the date prescribed in said subsection (a).

### Section 1063.02.-- Information on Transactions with Financial Businesses.--

**(a)**  Any financial business, as this term is defined in subsection (c), and every broker shall file a report to the Secretary under such regulations and in such form, manner, and extent as prescribed by him/her through regulations, of each deposit, withdrawal, currency exchange, payment, investment, transfer, or purchase and sale of securities made by, through, or from said financial business or broker, which involves a transaction in currency in excess of ten thousand dollars ($ 10,000). This report shall contain the taxpayer's name, street and/or mailing address, and account number, and the amount of the transaction or the total sum of the transactions, in the event that more than one transaction per person has been made within a thirty-one (31)-day period. The financial businesses and the brokerage houses shall exercise the highest degree of diligence in fulfilling the obligation imposed above.

**(b)**  For purposes of this section, the term "currency transaction" shall mean any physical transfer of legal tender in the United States, or a foreign country.

**(c)**  For purposes of this section, the term "financial business" shall mean and include every agency, branch, office, or establishment of any person doing business in the Government of Puerto Rico, in one or more of the following capacities:

**(1)**  A commercial bank or trust company;

**(2)**  A private bank;

**(3)**  A savings and loan association or a building and loan association;

**(4)**  An insured institution as defined in Section 401 of the National Housing Act;

**(5)**  A savings bank, industrial bank, or other savings or financial institution;

**(6)**  A credit union;

**(7)**  A savings and credit union;

**(8)**  A securities or brokerage house;

**(9)**  Institutions engaged in making mortgage loans, commonly known as Mortgage Banks or Mortgage Brokers;

**(10)**  Any other entity organized or authorized under the banking or financial laws of the Government of Puerto Rico, the United States of America, of any State of the Union, or a foreign country.

**(d)**  For purposes of this section, financial institutions and brokerage houses shall comply with the requirements established herein by filing with the Department of the Treasury a true and exact copy of the report on transactions in currency that they must file with the U.S. Department of the Treasury pursuant to the requirements established by Public Law No. 91-508 of October 26, 1970, known as the "Bank Secrecy Act," as amended, and codified by Public Law 97-258 of September 13, 1982, or any subsequent law that replaces it.


**Section 1063.03.-- Reports on Interest Payments.--**

**(a)**  Any person who credits or makes payments of fifty dollars ($ 50) or more for interest as described in Sections 1023.04 or 1023.05 to any individual and is bound under Section 1062.09 to withhold taxes on the payment of such interest, shall file a return pursuant to the forms and regulations prescribed by the Secretary, stating the total amount of interest paid or credited, the tax deducted and withheld, and the name, address, social security number or employer identification number issued by the Internal Revenue Service, and account number, if granted, of the person to whom the payment was made, or the tax withheld. Said return shall be filed on or before February 28 of the year following the calendar year in which the interest was paid or credited.

**(b)  Reports to Recipients.--**

**(1)  In General.--**  Every person who files a return under subsection (a) shall furnish a written statement to every individual included in said return stating:

**(A)**  The name, address, and account number of the payer of the interest;

**(B)**  The name, account number, and address of the recipient of the interest;

**(C)**  The amount of interest paid or credited to the individual included in the return; and

**(D)**  The amount of tax deducted and withheld from such individual under Section 1062.09.

**(2)  Date of Statement.--**  The written statement, required by paragraph (1) of this subsection shall be furnished to the individual on or before February 28 of the year following the calendar year for which

the return referred to in subsection (a) was filed. A duplicate of said statement shall be filed with the Secretary.

**Section 1063.04.-- Information to the Secretary as to Receipt of Mortgage Interest Paid by an Individual.--**

**(a) Information with Respect to Mortgage Interest Received.--**  Any person who is engaged in a trade or business in Puerto Rico and that, in the operation of said trade or business, receives from any individual interest on any mortgage, shall be required to file an annual information return, as provided in subsection (b) of this section. The original of said return must be supplied to the individual whose name appears on said document, on or before January 31 following the calendar year for which the copy of the return must be filed with the Secretary.

**(b)** Information Return on Mortgage Interests:

For purposes of this section, the information return shall be made and filed in the form that the Secretary prescribes and shall contain, without limitation, the following information:

**(1)** The name, address, and account number of the individual who is required to file the return and the individual from whom the interest described in subsection (a) was received;

**(2)** The amount of interest received from said individual during the calendar year; and

**(3)** Any other information as the Secretary may prescribe by regulation.

**(c) Application to Governmental Units.--**  For purposes of subsection (a) the following is provided:

**(1) Person.--**  In addition to the provisions of Section 1010.01(a)(1) of this Subtitle, the term "person" includes any governmental unit or any public agency, corporation, or instrumentality.

**(2) Special Rules.--**  In the case of a governmental unit or any public agency, corporation, or instrumentality:

**(A)** Subsection (a) shall be applied without regard to the requirement of being engaged in a trade or business as established in said subsection; and

**(B)** The information return required under subsection (a) shall be made by the official or employee duly designated to perform said function.

**(d) Definition of Mortgage.--**  For purposes of this section, except as provided in regulations prescribed by the Secretary, the term "mortgage" means any obligation secured by real property that is duly recorded in the Property Register.

**(e) Return That Could be Required From Two (2) or More Persons.--**  Except as provided in regulations prescribed by the Secretary, in the case of interest received by any person on behalf of another person, only the person first receiving said interest shall be required to make the information return required under subsection (a).

**(f) Rules Applicable to Cooperative Housing.--**  For purposes of subsection (a), the amount of interest received by a cooperative housing from a tenant-stockholder partner shall be deemed to be interest received on a mortgage in the course of a trade or business of said cooperative, to the extent of the share of interest of the tenant-stockholder in said cooperative housing.

**Section 1063.05.-- Information by Corporations and Partnerships.--**

**(a) Dividend or Profit Payments.--**  Every corporation or partnership shall file, on or before February 28 of the following year, a correct and duly sworn return of its payments of dividends or profits, stating the name, address, and account number of each shareholder or partner, the number of shares of stock he/she owns or his/her interest in the shares and the amount of the dividends or profits paid to him/her during the taxable year.

**(b) Earnings Distributed.--**  Every corporation or partnership shall, when required by the Secretary, furnish him/her a statement of such facts as will enable him/her to determine the portion of the earnings or profits of the corporation or partnership, including gains, profits, and income not taxed, accumulated during such periods as the Secretary may specify, which have been distributed or ordered to be distributed to its shareholders or partners during such taxable years as the Secretary may specify.

**(c) Accumulated Earnings and Profits.--**  When required by the Secretary, every corporation or partnership shall submit to him/her a correct statement of accumulated earnings and profits, and the names, addresses, and account numbers of the persons who would be entitled to the same if divided or distributed, and of the amounts that would be payable to each.

**(d) Dissolution or Liquidation.--**  Every corporation or partnership shall, within thirty (30) days after the adoption by the corporation or partnership of a resolution or plan for its dissolution or for the total or partial liquidation of its capital stock, file a correct and duly sworn statement with the Secretary setting forth the terms of such resolution or plan and such other information as the Secretary may by regulation prescribe.

**(e) Distributions in Liquidation.--**  Every corporation or partnership shall file, on or before February twenty-eight (28) of the following year or on such other date as established by the Secretary through regulations, a duly sworn return of its distributions in liquidation, stating name, address, and account number of each shareholder or partner, number, and class of shares he/she owns or his/her interest in the profits and the amount paid to him/her or, if the distribution is in property other than money, the fair market value as of the date of distribution of the property distributed to said shareholder or partner.

**(f) Statements Shall be Furnished to the Persons About Whom the Information is Provided.--**  Every corporation or partnership that files the return required in subsection (a) or (e) of this Section shall furnish a copy thereof to every shareholder or partner in whose name the return is made, on or before the date prescribed in subsection (a) or (e), whichever applies.


## Section 1063.06.-- Statements of Brokers and Stockbrokers.--

Any person doing business as a broker or stockbroker, as determined by the Secretary through regulations, including financial institutions established in Section 1063.02(c) of this Subtitle, that act as a broker or stockbroker shall submit to the Secretary a true and exact statement that contains the name, street or mailing address, his/her taxpayer account number, and information concerning interests, gross interests, and dividends paid to every natural person, as determined by the Secretary by regulations. This statement shall be filed on or before February 28 of the year following the calendar year in which said income payment was made.

The broker or stockbroker shall exercise the highest degree of diligence in complying with the obligation imposed by this section.


## Section 1063.07.-- Information Returns on Extension of Credit--Approved Amount Transaction Statement.--

**(a)** Any financial business, as such term is defined in subsection (d), and any stock broker shall file with the Secretary, pursuant to such regulations and in such form or manner prescribed through regulations by the latter or other general written communication, an information return to be known as Approved Amount Transaction Statement (Statement) of each approved credit application or approved extension of credit in the amount of two hundred fifty thousand dollars ($ 250,000) or more (five hundred thousand dollars ($ 500,000) or more in the case of mortgages); provided that in case there is more than one credit application approved in connection with a person within a term of thirty (30) days, the total amount of approved credit applications shall be treated as only one application for the purpose of the applicability of this section.

**(b)** Such Approved Amount Transaction Statement shall contain the following information:

**(1)** The name of the main applicant and the co-applicants, if any;

(2) Street address (residential or commercial) and mailing address of the applicant and the co-applicants;

(3)   The Social Security Number or employer identification number of the applicant and the co-applicants, if apply;

(4)   The account number of the applicant and the amount of the transaction or the total sum of the transactions if more than one transaction was made by the same applicant within a term of thirty (30) days; and

(5)   An itemization of the financial information provided by the applicant and the co-applicants to evidence the source of repayment of the requested credit--

(A)   In the case of applications in which the financial business uses financial information of corporations or partnerships affiliated to the entity applying for credit, the Statement shall include an itemization of the financial information of said affiliate corporations or partnerships.

(B)   In the case of applications made by corporations or partnerships in which the financial business uses financial information of shareholders or partners to grant credit, the Statement shall also include the itemization of the financial information of said shareholders or partners.

(c)   For purposes of this section, the term "approved credit application or approved extension of credit" shall mean any loan application (personal or commercial), line of credit, margin account, credit card, mortgage loan, or any other kind of application to borrow money which has been duly approved by a financial business and is within the amounts limits provided herein.

(d)   For purposes of this section, the term "financial business" shall mean and include any agency, branch, office, or establishment of any person doing business in one or more of the following capacities:

(1)   A commercial bank or trust company;

(2)   A private bank;

(3)   A savings and loan association or a building and loan association;

(4)   An insured institution as defined in Section 401 of the National Housing Act;

(5)   A savings bank, industrial bank, or other savings or financial institution;

(6)   A credit union;

(7)   A savings and credit union;

(8)   A securities firm or brokerage house;

(9)   Institutions engaged in servicing mortgage loans, commonly known as Mortgage Banks or Mortgage Brokers; or

(10)   Insurance companies;

(11)   Any other entity organized or authorized under the banking or financial laws of Puerto Rico, the United States of America, of any State of the Union, or a foreign country.

(12)   Any government, state, or municipal agencies, or entities granting loans supported by such agencies.

(e)   For purposes of this section, the term "financial information" shall mean the itemization of assets, liabilities, income, and expenses of an applicant or co-applicant, affiliate entity, shareholder, or partner submitted to the financial business to support the income level and the source of repayment of the credit requested. The Secretary of the Department of the Treasury shall adopt regulations for the purpose of defining the information fields to be reported to the Secretary.

(f)   The Statement required under this section shall be filed by the financial business not later than the last day of the calendar month following the date in which the credit application or extension of credit was approved. This Statement shall be required for credit application and extension of credit transactions approved after November 30, 2010.

**(g)  Penalty for Failure to File the Statement.--**   A penalty of one thousand dollars ($ 1,000) for each Statement not filed shall be imposed on and collected from any financial business that fails to file the Statement as established in this section, being also subject to the provisions of Sections 6030.11 and 6041.03 of Subtitle F of this Code.

**(h)**   No contractual or extra-contractual civil or criminal liability shall be imposed on any financial business or any official, employee, or agent of a financial business for filing with the Secretary or any other governmental agency the information return on Approved Amount Transaction Statement with the information required by them, in compliance with the provisions of this Section.


**Section 1063.08.-- Information Required from Certain Tax-exempt Organizations and Trusts.--**

**(a)  Certain Tax-exempt Organizations.--**   Any organization described in Section 1101.01(a)(1) and (2), which is subject to the requirements of Section 1061.05 shall provide information annually, at the time and in the manner that the Secretary may prescribe by forms or regulations, stating--

**(1)**  Its gross income for the year;

**(2)**  Its expenses attributable to such income and incurred within the year;

**(3)**  Its disbursements of income within the year for the purposes for which it is exempt;

**(4)**  Its accumulation of income within the year;

**(5)**  Its aggregate income accrued at the beginning of the year;

**(6)**  Its disbursements of principal in the current and prior years for the purposes for which it is exempt;

**(7)**  A balance sheet showing its assets, liabilities, and net worth as of the beginning of such year, and

**(8)**  The aggregate of contributions and gifts received by the organization during the year.

**(b)  Trusts Claiming Deductions for Charitable or Other Contributions Under Section 1083.02(a).--**   Every trust claiming deductions for charitable or other contributions under Section 1083.02(a) for the taxable year shall furnish such information with respect to such taxable year, as the Secretary may by regulation prescribe, setting forth:

**(1)**   The amount of charitable or other contribution taken as a deduction under Section 1083.02(a) within such year (showing separately the amount of such deduction which was paid and the amount which was permanently earmarked during such year for charitable or other purposes described in Section 1083.02(a));

**(2)**   The amount paid within such year which represents amounts for which deductions for charitable or other contributions made under Section 1083.02(a) have been taken in prior taxable years;

**(3)**   The amount for which deductions for charitable or other contributions have been taken in prior years, but which has not been paid at the beginning of such year;

**(4)**   The amount paid of the principal in the current and prior years for charitable or other purposes, specified in Section 1083.02(a);

**(5)**   The total income of the trust for such year and the expenses attributable thereto, and

**(6)**   A balance sheet showing the assets, liabilities, and net worth of the trust as of the beginning of such year.

This subsection shall not apply in the case of a taxable year if all the net income for such year, determined under the provisions of law applicable to trusts, is required to be distributed currently to the beneficiaries.

**(c)  Information Available to the Public.--**   The information required to be furnished by subsection (a) or (b), together with the names and addresses of such organizations, shall be made available to the public at such times and in such places as the Secretary may prescribe.

**(d)  Penalties.--**  Failure to voluntarily furnish the information required under this Section, the penalties established in Section 6041.02 of Subtitle F shall apply.

## Section 1063.09.-- Regulations to Require Information Statements Using Electronic Means.--

**(a)  In General.--**  The Secretary may require that the information statements that must be filed under the provisions of this Subtitle, be filed using magnetic or electronic means. The Secretary shall promulgate the regulations needed to establish the standards that shall apply when electronic means are required to be used for these purposes.

**(b)  Requirements of the Regulations.--**  Upon promulgating the regulations under subsection (a), the Secretary shall not require that any person files information statements using electronic means unless a person must file at least five (5) statements during a calendar year. However, the Secretary may, whenever he/she deems it convenient, reduce to less than five (5) the number of information statements required to be filed through electronic means in any taxable year.

**(c)**  The Department of the Treasury shall provide an electronic authentication mechanism which serves as confirmation of the electronic transaction to those citizens who file information statements through electronic means.

**(d)  Failure to File.--**  If any person who is required to submit information statements using electronic means fails to file same in such manner, it shall be considered as if such statements have not been filed; therefore, said person shall be subject to penalties for failure to file the income tax returns or statements set forth in Subtitle F.

## Section 1063.10.-- Annual Statement of Reconciliation of Income Subject to Withholding.--

Any teller or withholding agent who is required to make the deduction and withholding at source, imposed by Sections 1023.06, 1062.02, 1062.09 as well as any deduction and withholding at the source imposed under Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," or any other previous or subsequent analogous law, or Act No. 78 of September 10, 1993 [23 L.P.R.A. §§ 6001 et seq.], known as the Puerto Rico Tourist Development Act," or any other previous or subsequent analogous law, and to file an information statement for the amounts deducted and withheld, shall submit, no later than on February 28 of the following year, an annual reconcilement statement for each kind of income. Said reconciliation statement shall include the amounts paid and withheld, as well as the kind of income paid.

## Section 1063.11.-- Information to the Secretary on Payment Received on Account of Automobile Lease.--

**(a)  Information Regarding Payment of Automobile Lease.--**  Any person engaged in a trade or business in Puerto Rico, and that in the operation of said trade or business, received from any individual, business, partnership, or corporation payments on account of vehicle leasing, pursuant to the provisions of Section 1033.07(a)(3)(H), shall be required to file an annual information statement, as provided in subsection (b) of this Section. The original of such statement shall be furnished to the payer whose name appears in the document on or before January 31 of the following calendar year for which the copy of the statement must be filed with the Secretary.

**(b)**  Information Statement on Payments of Automobile Lease:

For the purpose of this section, the information statements shall be prepared and filed adjusting it to the manner prescribed by the Secretary, and shall contain, without limitation, the following information:

**(1)**  The name, address, and account number of the person required to file the statement of the payer from whom the payments described in subsection (a) are received;

**(2)**  The amount of the payments received from such individual during the calendar year;

(3) Any other information prescribed by the Secretary through regulations.

## CHAPTER 7 -- PARTNERSHIPS AND PARTNERS

**Section 1070.01.-- Definitions.--**

**(a) Partnership.--** For purposes of this Subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Subtitle, a corporation or a trust or estate. The Secretary may, upon the election of all the members of an unincorporated organization, exclude such organization from the application of all or part of this Chapter, if it is availed of--

(1) for investment purposes only and not for the active conduct of a business;

(2) for the joint production, extraction, or use of property, but not for the purpose of selling services or property produced or extracted; or

(3) by dealers in securities for a short period for the purpose of underwriting, selling, or distributing a particular issue of securities, if the income of the members of the organization may be adequately determined without the computation of partnership taxable income.

The term "partnership" also includes such limited liability companies that, pursuant to the provisions of Section 1010.01(a)(3), are subject to taxation under the provisions of this Chapter.

**(b) Partner.--** For purposes of this Subtitle, the term "partner" means a member of a partnership. The term "partner" includes a member of a limited liability company subject to taxation under the provisions of this Chapter, pursuant to Section 1010.01(a)(3).

**(c) Partnership Agreement.--** For purposes of this Chapter, a partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement.

**(d) Liquidation of a Partner's Interest.--** For purposes of this Chapter, the term "liquidation of a partner's interest" means the termination of a partner's entire interest in a partnership by means of a distribution, or a series of distributions, to the partner by the partnership.

**(e) Distributions of Partnership Interests Treated as Exchanges.--** Except as otherwise provided in regulations, for purposes of--

(1) Section 1071.08 (relating to continuation of partnership);

(2) Section 1074.03 (relating to optional adjustment to basis of partnership property); and

(3) Any other provision of this Chapter specified in the regulations prescribed by the Secretary, any distribution of an interest in a partnership (not otherwise treated as an exchange) shall be treated as an exchange.

**(f) Qualified Joint Venture.--**

(1) **In General.--** In the case of a qualified joint venture conducted by a husband and wife who qualified as married individuals, as provided in Section 1010.03(a)(2), for purposes of this Chapter--

(A) such joint venture shall not be treated as a partnership;

(B) all items of income, gain, loss, deduction, and credit shall be divided between the spouses in accordance with their respective interests in the venture; and

(C) each spouse shall take into account such spouse's respective share of such items as if they were attributable to a trade or business conducted by such spouse as a sole proprietor.

**(2) Qualified Joint Venture.--**  For purposes of paragraph (1), the term "qualified joint venture" means any joint venture involving the conduct of a trade or business if--

**(A)** the only members of such joint venture are a husband and wife;

**(B)** both spouses materially participate in such trade or business; and

**(C)** both spouses elect the application of this subsection.

**(g) Cross Reference.--**  For rules applicable in the case of the sale, exchange, liquidation, or reduction of a partner's interest, see Sections 1071.04(b) and 1071.06(c)(2).

## SUBCHAPTER A -- TAX IMPOSITION

### Section 1071.01.-- Tax Imposition on Partners, Not Partnerships.--

A partnership subject to the provisions of this Chapter shall not be subject to the income tax imposed by this Subtitle. The persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities. For the purpose of this Subtitle, any partner of a partnership engaged in a trade or business in Puerto Rico shall be deemed as engaged in a trade or business in Puerto Rico with respect to its distributive share in the income, gain, loss, deduction, or credit of the partnership.

### Section 1071.02.-- Income and Credits of Partner.--

**(a) General Rule.--**  In determining his/her income tax, each partner shall take into account separately his/her distributive share of the partnership's (subject to the conditions and limitations provided in this Chapter) for any of its taxable years ending within or simultaneously with the taxable year of the partner, regarding:

**(1)** gains and losses from sales or exchanges of capital assets held for not more than six (6) months;

**(2)** gains and losses from sales or exchanges of capital assets held for more than six (6) months;

**(3)** gains and losses from sales or exchanges of property described in Section 1034.01(i);

**(4)** gains and losses in the sale or exchange of all the assets of an exempt business pursuant to the Puerto Rico Tourist Development Act of 1993, the Puerto Rico Tourist Development Act of 2010, and any subsequent or similar law;

**(5)** charitable contributions (subject to the provisions of Section 1033.10);

**(6)** dividends with respect to which the provisions of Section 1023.06 apply,

**(7)** taxes withheld on dividends described in paragraph (6);

**(8)** taxes described in Sections 1051.01, 1062.02, 1062.03, and 1062.04;

**(9)** income or loss derived from the activities covered by an exemption grant or decree, as the case may be, under the Puerto Rico Tourist Development Act of 1993, the Puerto Rico Tourist Development Act of 2010, the Economic Incentives Act for the Development of Puerto Rico, or any other subsequent or similar law;

**(10)** net income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection; and

**(11)** other items of income, gain, loss, deduction, or credit, to the extent provided by regulations prescribed by the Secretary.

**(b) Character of Items Constituting Distributive Share.--**  The character of any item of income, gain, loss, deduction, or credit included in a partner's distributive share under paragraphs (1) through (11) of

subsection (a) shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership.

**(c) Gross Income of a Partner.--**  In any case where it is necessary to determine the gross income of a partner for purposes of this Subtitle, such gross income shall include his/her distributive share of the gross income of the partnership.

**(d) Tax Treatment of Partnership Items.--**  For rules relating to procedures for determining the tax treatment of partnership items see Subtitle F of the Code.

**Section 1071.03.-- Partnership Computations.--**

**(a) Income and Deductions.--**  The net taxable income of a partnership for any taxable year shall be computed in the same manner as in the case of an individual except that--

**(1)** the items described in Section 1071.02(a) shall be separately stated; and

**(2)** the following deductions shall not be allowed to the partnership:

**(A)** the deductions for personal exemptions provided in Section 1033.18(a);

**(B)** the net operating loss deduction provided in Section 1033.14;

**(C)** the taxes provided in Section 1033.04 with respect to the taxes described in Section 1051.01;

**(D)** the deductions granted by Section 1033.15;

**(3)** Shall be entitled to the accelerated depreciation provided in Section 1040.12.

**(b) Elections of the Partnership.--**  Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, except that any election under Section 1051.01 (relating to taxes of the United States and its possessions, and of foreign countries) shall be made by each partner individually.

**Section 1071.04.-- Partner's Distributive Share.--**

**(a) Effect of Partnership Agreement.--A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this Chapter, be determined by the partnership agreement.--**

**(b) Determination of Distributive Share.--**  A partner's distributive share of income, gain, loss, deduction, or credit of the partnership shall be determined in accordance with the partner's interest in the partnership (determined by taking into account all facts and circumstances), if--

**(1)** the partnership agreement does not provide specifically as to the partner's distributive share of income, gain, loss, deduction, or credit of the partnership; or

**(2)** the allocation to a specific partner of the share of income, gain, loss, deduction, or credit of the partnership does not have substantial economic effect.

For purposes of this subsection, it shall be understood that, the allocations provided under partnership agreements operating pursuant to the Puerto Rico Tourist Development Act of 1993, the Puerto Rico Tourist Development Act of 2010, or any subsequent law similar in nature, have a substantial economic effect.

**(c) Contributed Property.--**

**(1) General Rule.--**  Under regulations prescribed by the Secretary--

**(A)** income, gain, loss, and deduction with respect to property contributed to the partnership by a partner shall be shared among the partners so as to take account of the variation between the basis of the property to the partnership and its fair market value at the time of contribution;

**(B)**  if any property so contributed is distributed (directly or indirectly) by the partnership (other than to the contributing partner) within seven (7) years of being contributed--

**(i)**  the contributing partner shall be treated as recognizing gain or loss (as the case may be) from the sale of such property in an amount equal to the gain or loss which would have been allocated to such partner under subparagraph (A) by reason of the variation described in subparagraph (A) if the property had been sold at its fair market value at the time of the distribution,

**(ii)**  the character of such gain or loss shall be determined by reference to the character of the gain or loss which would have resulted if such property had been sold by the partnership to the distributee; and

**(iii)**  appropriate adjustments shall be made to the adjusted basis of the contributing partner's interest in the partnership and to the adjusted basis of the property distributed to reflect any gain or loss recognized under this subparagraph; and

**(C)**  if any property so contributed has a built-in loss--

**(i)**  such built-in loss shall be taken into account only in determining the amount of items allocated to the contributing partner; and

**(ii)**  except as provided in regulations, in determining the amount of items allocated to other partners, the basis of the contributed property in the hands of the partnership shall be treated as being equal to its fair market value at the time of contribution.

For purposes this subparagraph, the term "built-in loss" means the excess of the adjusted basis of the property (determined without regard to subparagraph (C)(ii)) over its fair market value at the time of contribution.

**(2)  Special Rule for Distributions where Gain or Loss Would not be Recognized Outside Partnerships.--**  Under regulations prescribed by the Secretary, if--

**(A)**  property contributed by a partner (hereinafter referred to as the "contributing partner") is distributed by the partnership to another partner; and

**(B)**  other property of a like kind (within the meaning of Section 1034.04(b)(1)) is distributed by the partnership to the contributing partner not later than the earlier of--

**(i)**  the one hundred eightieth (180th) day after the date of the distribution described in subparagraph (A), or

**(ii)**  the due date (including extensions) for the filing of the contributing partner's income tax return for the taxable year in which the distribution described in subparagraph (A) occurs, to the extent of the fair market value of the property described in subparagraph (B), paragraph (1)(B) shall be applied as if the contributing partner had contributed to the partnership the property described in subparagraph (B).

**(3)  Other Rules.--**  Under regulations prescribed by the Secretary, rules similar to the rules of paragraph (1) shall apply to contributions by a partner (using the cash receipts and disbursements method of accounting) of accounts payable and other accrued but unpaid items. Any reference in paragraph (1) or (2) to the contributing partner shall be treated as including a reference to any successor of such partner.

**(d)  Limitation on Allowance of Losses.--**  A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership.

**(e)  Family Partnerships.--**

**(1)  Recognition of Interest Created by Purchase or Gift.--**  A person shall be recognized as a partner for purposes of this Chapter if he/she owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person.

**(2)  Distributive Share of Donee Includible in Gross Income.--**  In the case of any partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his/her gross income, except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and to the extent that the portion of such share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital.

**(3)  Purchase of Interest by Member of Family.--**  For purposes of this Section, an interest purchased by one member of a family from another shall be considered to be created by gift from the seller, and the fair market value of the purchased interest shall be considered to be donated capital. For purposes of this Section, the family of any individual shall include only his/her spouse, ancestors, and lineal descendants, and any trusts for the primary benefit of such persons.

## Section 1071.05.-- Determination of Basis of Partner's Interest.--

**(a)  General Rule.--**  The adjusted basis of a partner's interest in a partnership shall, except as provided in subsection (b), be the basis of such interest determined under Section 1072.02 (relating to contributions to a partnership) or Section 1074.02 (relating to transfers of partnership interests)--

**(1)**  increased by the sum of his/her distributive share for the taxable year and prior taxable years of--

**(A)**  taxable income of the partnership as determined under Section 1071.03;

**(B)**  income of the partnership exempt from tax under this Subtitle, or under the provisions of any other law that grants total or partial tax exemption with respect to income derived from its operations; and

**(C)**  the amount of the deductions of agricultural income granted by Section 1033.12 of this Subtitle.

**(2)**  decreased (but not below zero) by distributions by the partnership as provided in Section 1073.03 and by the sum of his/her distributive share for the taxable year and prior taxable years of--

**(A)**  losses of the partnership, and

**(B)**  the amount of credits from Section 58, Section 5(a) of the Puerto Rico Tourist Development Act of 1993, Section 5(a) of the Puerto Rico Tourist Development Act of 2010, or from any other law granting similar credits.

**(C)**  the withholdings at the source of Sections 1062.10, and 1062.04; and

**(D)**  expenditures of the partnership not deductible in computing its taxable income and not properly chargeable to capital account; and

## Section 1071.06.-- Taxable Years of Partner and Partnership.--

**(a)  Year in Which Partnership Income is Includible.--**  In computing the taxable income of a partner for a taxable year, the inclusions required by Section 1071.02 and Section 1071.07(c) with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner.

**(b)  Taxable Year.--**

**(1)  Partnership's Taxable Year.--**

**(A)  Partnership Treated as Taxpayer.--**  The taxable year of a partnership shall be determined as though the partnership were a taxpayer.

2011 PR H.B. 3070

**(B)  Taxable Year Determined by Reference to Partners.--**  Except as provided in subparagraph (C), a partnership shall not have a taxable year other than--

**(i)**  the majority interest taxable year (as defined in paragraph (4));

**(ii)**  if there is no taxable year described in clause (i), the taxable year of all the principal partners of the partnership; or

**(iii)**  if there is no taxable year described in clause (i) and (ii), the calendar year unless the Secretary by regulations prescribes another period.

**(C)  Business Purpose.--**  A partnership may have a taxable year not described in subparagraph (B) if it establishes, to the satisfaction of the Secretary, a business purpose therefor. For purposes of this subparagraph, any deferral of income to partners shall not be treated as a business purpose.

**(2)  Partner's Taxable Year.--**  A partner may not change to a taxable year other than that of a partnership in which he/she is a principal partner unless he/she establishes, to the satisfaction of the Secretary, a business purpose therefor.

**(3)  Principal Partner.--**  For the purpose of this subsection, a principal partner is a partner having an interest of five percent (5%) or more in partnership profits and capital.

**(4)  Majority Interest Taxable Year; Limitation on Required Changes.--**

**(A)  "Majority Interest Taxable Year" defined.--**  For purposes of paragraph (1)(B)(i)--

**(i)  In General.--**  The term "majority interest taxable year" means the taxable year (if any) which, on each testing day, constituted the taxable year of one (1) or more partners having (on such day) an aggregate interest in partnership profits and capital of more than fifty percent (50%).

**(ii)  Testing Days.--**  The testing days shall be--

**(I)**  the first day of the partnership taxable year (determined without regard to clause (i)); or

**(II)**  the days during such representative period as the Secretary may prescribe.

**(B)  Further Change Not Required for Three (3) Years.--**  Except as provided in regulations necessary to prevent the avoidance of this Section, if, by reason of paragraph (1)(A)(i), the taxable year of a partnership is changed, such partnership shall not be required to change to another taxable year for either of the two (2) taxable years following the year of change.

**(5)  Application With Other Sections.--**  Except as provided in regulations, for purposes of determining the taxable year to which a partnership is required to change by reason of this subsection, changes in taxable years of other persons required by this subsection, or Sections 1114.05(a) and 1115.10(a) shall be taken into account.

**(c)  Close of Partnership Year.--**

**(1)  General Rule.--**  Except in the case of a termination of a partnership and except as provided in paragraph (2) of this subsection, the taxable year of a partnership shall not close as the result of the death of a partner, the entry of a new partner, the liquidation of a partner's interest in the partnership, or the sale or exchange of a partner's interest in the partnership.

**(2)  Treatment of Dispositions.--**

**(A)  Disposition of Entire Interest.--**  The taxable year of a partnership shall close with respect to a partner whose entire interest in the partnership terminates (whether by reason of death, liquidation, or otherwise).

**(B)  Disposition of Less than Entire Interest.--**  The taxable year of a partnership shall not be deemed closed with respect to a partner who sells or exchanges less than his/her entire interest in the partnership or with respect to a partner whose interest is reduced whether by entry of a new

partner, partial liquidation of a partner's interest, gift of a portion of such interest, or any other reason.

**(d)  Determination of Distributive Share when Partner's Interest Changes.--**

**(1)  In General.--**  Except as provided in paragraphs (2) and (3), if during any taxable year of the partnership there is a change in any partner's interest in the partnership, each partner's distributive share of any item of income, gain, loss, deduction, or credit of the partnership for such taxable year shall be determined by the use of any method prescribed by the Secretary by regulations which takes into account the varying interests of the partners in the partnership during such taxable year.

**(2)  Certain Cash Basis Items Prorated over Period to Which Attributable.--**

**(A)  In General.--**  If during any taxable year of the partnership there is a change in any partner's interest in the partnership, then (except to the extent provided in regulations) each partner's distributive share of any allocable cash basis item shall be determined--

**(i)**  by assigning the appropriate portion of such item to each day in the period to which it is attributable; and

**(ii)**  by allocating the portion assigned to any such day among the partners in proportion to their interests in the partnership at the close of such day.

**(B)  Allocable Cash Basis Item.--**  For purposes of this paragraph, the term "allocable cash basis item" means any of the items described in Section 1114.06(a) of this Code with respect to which the partnership uses cash basis.

**(C)  Items Attributable to Periods Not Within Taxable Year.--**  If any portion of any allocable cash basis item is attributable to--

**(i)**  any period before the beginning of the taxable year, such portion shall be assigned under subparagraph (A)(i) to the first day of the taxable year; or

**(ii)**  any period after the close of the taxable year, such portion shall be assigned under subparagraph (A)(i) to the last day of the taxable year.

**(D)  Treatment of Deductible Items Attributable to Prior Periods.--**  If any portion of a deductible cash basis item is assigned under subparagraph (C)(i) to the first day of any taxable year:

**(i)**  such portion shall be allocated among persons who are partners in the partnership during the period to which such portion is attributable in accordance with their varying interests in the partnership during such period; and

**(ii)**  any amount allocated under clause (i) to a person who is not a partner in the partnership on such first day shall be capitalized by the partnership and treated in the manner provided through regulations.

**(3)  Items Attributable to Interest in Tiered Partnership.--**  If--

**(A)**  during any taxable year of the partnership there is a change in any partner's interest in the partnership (hereinafter in this paragraph referred to as the "upper tier partnership"), and

**(B)**  such partnership is a partner in another partnership (hereinafter in this paragraph referred to as the "lower tier partnership"), then (except to the extent provided in regulations) each partner's distributive share of any item of the upper tier partnership attributable to the lower tier partnership shall be determined by assigning the appropriate portion (determined by applying principles similar to the principles of subparagraphs (C) and (D) of paragraph (2)) of each such item to the appropriate days during which the upper tier partnership is a partner in the lower tier partnership and by allocating the portion assigned to any such day among the partners in proportion to their interests in the upper tier partnership at the close of such day.

**(4)  Taxable Year Determined Without Regard to Subsection (c)(2)(A).--**   For purposes of this subsection, the taxable year of a partnership shall be determined without regard to subsection (c)(2)(A).

## Section 1071.07.-- Transactions Between Partner and Partnership.--

**(a)  Partner Not Acting in Capacity as Partner.--**

**(1)  In General.--**   If a partner engages in a transaction with a partnership other than in his/her capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.

**(2)  Treatment of Payments to Partners for Property or Services.--**   Under Regulations Prescribed by the Secretary--

**(A)  Treatment of Certain Services and Transfers of Property.--**   If--

**(i)**   a partner performs services for a partnership or transfers property to a partnership;

**(ii)**   there is a related direct or indirect allocation and distribution to such partner; and

**(iii)**   the performance of such services (or such transfer) and the allocation and distribution, when viewed together, are properly characterized as a transaction occurring between the partnership and a partner acting other than in his/her capacity as a member of the partnership, such allocation and distribution shall be treated as a transaction described in paragraph (1).

**(B)  Treatment of Certain Property Transfers.--**   If--

**(i)**   there is a direct or indirect transfer of money or other property by a partner to a partnership;

**(ii)**   there is a related direct or indirect transfer of money or other property by the partnership to such partner (or another partner); and

**(iii)**   the transfers described in clauses (i) and (ii) of paragraph (2)(A), when viewed together, are properly characterized as a sale or exchange of property, such transfers shall be treated either as a transaction described in paragraph (1) or as a transaction between two (2) or more partners acting other than in their capacity as members of the partnership.

**(3)  Other Transactions.--**   If--

**(A)**   A corporation ("the transferor corporation") transfers property ("the transferred property") to a partnership ("the transferee") in exchange for interest in such partnership or as a contribution to the capital of the same;

**(B)**   When the transfer of property occurs, the fair market value of the property exceeds the its basis in the hands of the transferor corporation; and

**(C)**   During the "applicable period" (as defined in this subsection) the transferee or any partnership controlled directly or indirectly by the transferee, distributes the transferred property to a person, who at the time of the transfer described in subparagraph (A) of this paragraph, was a shareholder of the transferor corporation, then, the transfers and distributions described in subparagraph (B) of this paragraph and in this subsection shall be treated as if they never occurred between the persons indicated therein, and the transferred property shall be treated as distributed by the transferor corporation to the shareholder described in this paragraph, at the time in which the transfer described in subparagraph (A) of this paragraph occurred.

For purposes of this paragraph, the term "applicable period" means a period of sixty (60) months beginning with the first month of the first taxable year of the transferor corporation that begun after the transfer. The prescriptive period for the assessment and collection of deficiencies provided in Subtitle F in connection with the provisions of this paragraph shall not begin to elapse until the filing of the income tax return of the transferor corporation corresponding to the last taxable year within which the last month of the applicable period shall end.

**(b)   Certain Sales or Exchanges of Property with Respect to Controlled Partnerships.--**

**(1)   Losses Disallowed.--**   No deduction shall be allowed in respect of losses from sales or exchanges of property (other than an interest in the partnership), directly or indirectly, in transactions described in Section 1033.17(b).

**(2)   Ownership Rules.--**   For purposes of paragraph (1), the ownership of the capital or profits interest of a partnership shall be determined pursuant to the ownership rules provided in Section 1033.17(b).

**(c)   Gains Treated as Ordinary Income.--**   In the case of a sale or exchange, directly or indirectly, of property, which in the hands of the transferee, is property other than a capital asset as defined in Section 1034.01(a)(1):

**(1)**   Between a partnership and a person owning, directly or indirectly, more than fifty percent (50%) of the capital interest, or profits interest, in such partnership; or

**(2)**   between two partnerships in which the same persons own, directly or indirectly, more than fifty percent (50%) of the capital interest or profits interests, any gain recognized shall be considered as ordinary income.

**(d)   Ownership of a Capital or Profits Interest.--**   For purposes of paragraphs (1) and (2) of subsection (c), the ownership of a capital or profits interest in a partnership shall be determined in accordance with the rules for constructive ownership of stock provided in Section 1033.17(b)(2).

**(e)   Guaranteed Payments.--**   To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for purposes of Sections 1031.01 and 1033.01(a) subject to the limitation of Section 1033.17.

## Section 1071.08.-- Continuation of Partnership.--

**(a)   General Rule.--**   For purposes of this Chapter, an existing partnership shall be considered as continuing if it is not terminated.

**(b)   Termination.--**

**(1)   General Rule.--**   For purposes of subsection (a), a partnership shall be considered as terminated only if--

**(A)**   no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or

**(B)**   within a twelve (12)-month period there is a sale or exchange of fifty percent (50%) or more of the total interest in partnership capital and profits.

**(2)   Special Rules.--**

**(A)   Merger or Consolidation.--**   In the case of the merger or consolidation of two or more partnerships, the resulting partnership shall, for purposes of this Section, be considered the continuation of any merging or consolidating partnership whose members own an interest of more than fifty percent (50%) in the capital and profits of the resulting partnership.

**(B)   Division of a Partnership.--**   In the case of a division of a partnership into two or more partnerships, the resulting partnerships (other than any resulting partnership the members of which had an interest of fifty percent (50%) or less in the capital and profits of the prior partnership) shall, for purposes of this section, be considered a continuation of the prior partnership.

## Section 1071.09.-- Organization and Syndication Fees.--

**(a) General Rule.--**  Except as provided in subsection (b), no deduction shall be allowed to the partnership or to any partner for any amounts paid or incurred to organize a partnership or to promote the sale of, or to sell, an interest in such partnership.

**(b) Deduction of Organization Fees.--**

**(1) Allowance of Deduction.--**  Pursuant to the regulations prescribed by the Secretary, a partnership may elect that the organizational expenses to promote the sale of, or to sell, an interest in said partnership be allowable as a deduction ratably during a period of not less than sixty (60) months starting with the month in which the partnership begins business.

**(2) Dispositions Before Close of Amortization Period.--**  In any case in which a partnership is liquidated before the end of the period to which paragraph (1) refers, any deferred expenses attributable to the partnership which were not allowed as a deduction by reason of this section may be deducted to the extent allowable under Section 1033.05(a) and (b).

**(3) Organizational Expenses.--**  For purposes of this Section, organizational expenses are expenditures that--

**(A)** are incident to the creation of the partnership;

**(B)** are chargeable to capital account; and

**(C)** are of a character which, if expended incident to the creation of a partnership having an ascertainable life, would be amortized over such life.

**(4)** The Secretary shall establish the application of this Section through regulations.


**SUBCHAPTER B --**  COMPUTATION ON CONTRIBUTIONS


**Section 1072.01.-- Nonrecognition of Gain or Loss on Contribution of Property.--**

**(a) General Rule.--**  No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of money or other property to the partnership in exchange for an interest in the partnership, except as provided in subsections (b), (c), (d) and (e) of this Section.

**(b) Flexibly Depreciable Property.--**  In the case of a contribution of flexibly depreciable property, no gain or loss shall be recognized to a partnership or its partners unless they elect otherwise. The election to recognize gain or loss in said contribution shall be irrevocable.

**(c) Property Subject to Obligation or Lien.--**  In the case of a contribution of property subject to obligation or lien, which is assumed by the partnership, gain shall be recognized to the contributing partner to the extent that the portion of the obligation or lien from which it is released exceeds the adjusted basis, for the contributing partner, of the contributed property.

**(d) Special Rule.--**  Subsection (a) shall not apply to a gain realized on a transfer of property to a partnership which would be treated as an investment company if the partnership were incorporated. For purposes of this section, determination of whether a company is an investment company shall be made--

**(1)** by taking into account all stock and securities held by the company, and

**(2)** by treating as stock and securities:

**(A)** money;

**(B)** stocks and other equity interests in a corporation, evidences of indebtedness, options, forward or futures contracts, notional principal contracts and derivatives;

**(C)** any foreign currency;

**(D)** any interest in a real estate investment trust, a common trust fund, a regulated investment company, a publicly-traded partnership or any other equity interest (other than in a corporation)

which pursuant to its terms or any other arrangement is readily convertible into, or exchangeable for, any asset described in subparagraph (C), or subparagraphs (E) or (H);

**(E)** except to the extent provided in regulations prescribed by the Secretary, any interest in a precious metal, unless such metal is used or held in the active conduct of a trade or business after the contribution;

**(F)** except as otherwise provided in regulations prescribed by the Secretary, interests in any entity if substantially all of the assets of such entity consist (directly or indirectly) of any assets described in any preceding subparagraph or subparagraph (H);

**(G)** to the extent provided in regulations prescribed by the Secretary, any interest in any entity not described in subparagraph (F), but only to the extent of the value of such interest that is attributable to assets listed in subparagraphs (A) through (E) or subparagraph (H); or

**(H)** any other asset specified in regulations prescribed by the Secretary.

The Secretary may prescribe regulations that, under appropriate circumstances, treat any asset described in subparagraphs (A) through (E) as not listed in such subparagraphs.

**(e) Regulations Relating to Certain Transfers to Partnerships.--**  The Secretary may provide by regulations that the provisions on nonrecognition of gain of subsection (a) shall not apply to gain realized on the transfer of property to a partnership if such gain, when recognized, will be includible in the gross income of a person other than a resident of Puerto Rico or a nonresident United States citizen.


## Section 1072.02.-- Basis of Contributing Partner's Interest.--

The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under Section 1072.01(b), (c), or (d) to the contributing partner at such time.


## Section 1072.03.-- Basis of Property Contributed to Partnership.--

The basis of property contributed to a partnership by a partner shall be the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under Section 1071.01(b) to the contributing partner at such time.


## Section 1072.04.-- Character of Gain or Loss on Contributed Unrealized Receivables, Inventory Items, and Capital Loss Property.--

**(a) Contributions of Unrealized Receivables.--**  In the case of any property which:

**(1)** was contributed to the partnership by any partner; and

**(2)** was an unrealized receivable in the hands of such partner immediately before such contribution, any gain or loss recognized by the partnership on the disposition of such property during the five (5)-year period beginning on the date of such contribution shall be treated as ordinary income or ordinary loss, as the case may be.

**(b) Contributions of Inventory Items.--**  In the case of any property which--

**(1)** was contributed to the partnership by a partner, and

**(2)** was an inventory item in the hands of such partner immediately before such contribution, any gain or loss recognized by the partnership on the disposition of such property during the five (5)-year period beginning on the date of such contribution shall be treated as ordinary income or ordinary loss, as the case may be.

**(c) Contributions of Capital Loss Property.--**  In the case of any property which--

**(1)** was contributed by a partner to the partnership, and

**(2)** was a capital asset in the hands of such partner immediately before such contribution, any loss recognized by the partnership on the disposition of such property during the five (5)- year period beginning on the date of such contribution shall be treated as a loss from the sale or exchange of a capital asset to the extent that, immediately before such contribution, the adjusted basis of such property in the hands of the partner exceeded the fair market value of such property.

**(d) Definitions.--**  For purposes of this Section--

**(1) Unrealized Receivable.--**  Shall have the meaning given in subsection (c) of Section 1075.01 (determined by treating any reference to the partnership as referring to the partner).

**(2) Inventory Item.--**  Shall have the meaning given in subsection (d) of Section 1075.01 (determined by treating any reference to the partnership as referring to the partner and by applying Section 1034.01(a) without regard to any holding period).

**(3) Substituted Basis Property.--**  If any property described in subsection (a), (b), or (c) is disposed of in a nonrecognition transaction, the tax treatment which applies to such property under such subsection shall also apply to any substituted basis property resulting from such transaction. A similar rule shall also apply in the case of a series of nonrecognition transactions.


**SUBCHAPTER C --**  COMPUTATIONS IN DISTRIBUTIONS


**Section 1073.01.-- Recognition of Gain or Loss on Distributions Made by Partnerships.--**

**(a) Partners.--**  In the case of a distribution by a partnership to a partner--

**(1)**  gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, and

**(2)**  loss shall not be recognized to such partner, except that, in the case of a total liquidation of a partner's interest if the property to be distributed is among those described in subparagraph (A) or (B), loss shall be recognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of--

**(A)**  any money distributed, and

**(B)**  the basis to the partner, as determined under Section 1073.02, of any unrealized receivables (as defined in Section 1075.01(c)) or inventory (as defined in Section 1075.01(d)). Any gain or loss recognized under this subsection shall be considered as gain or loss from the sale or exchange of a capital asset.

**(b) Partnerships.--**  No gain or loss shall be recognized to a partnership on a distribution to a partner of property, including money.

**(c) Treatment of Marketable Securities.--**

**(1)**  For purposes of subsection (a)(1) and Section 1073.07--

**(A)**  the term "money" includes marketable securities, and

**(B)**  such securities shall be taken into account at their fair market value as of the date of the distribution.

**(2) Marketable Securities.--**  For purposes of this subsection:

**(A) In General.--**  The term "marketable securities" means financial instruments and foreign currencies which are, as of the date of the distribution, actively traded.

2011 PR H.B. 3070

**(B) Other Property.--**   Such term includes--

**(i)** any interest in--

**(I)**  a common trust fund, or

**(II)**  a regulated investment company which is offering for sale or has outstanding any redeemable security (as defined in Section 2(a)(32) of the Investment Company Act of 1940) of which it is the issuer,

**(ii)** any financial instrument which, pursuant to its terms or any other arrangement, is readily convertible into, or exchangeable for, money or marketable securities,

**(iii)** any financial instrument the value of which is determined substantially by reference to marketable securities,

**(iv)** except to the extent provided in regulations prescribed by the Secretary, any interest in a precious metal which, as of the date of the distribution, is actively traded unless such metal was produced, used, or held in the active conduct of a trade or business by the partnership,

**(v)** except as otherwise provided in regulations prescribed by the Secretary, interests in any entity if substantially all of the assets of such entity consist (directly or indirectly) of marketable securities, money, or both, and

**(vi)** to the extent provided in regulations prescribed by the Secretary, any interest in an entity not described in clause (v) but only to the extent of the value of such interest which is attributable to marketable securities, money, or both.

**(C)  Financial Instrument.--**   The term "financial instrument" includes stocks and other equity interests, evidences of indebtedness, options, forward or futures contracts, notional principal contracts, and derivatives.

**(3) Exceptions.--**

**(A) In General.--**   Paragraph (1) shall not apply to the distribution from a partnership of a marketable security to a partner if--

**(i)** the security was contributed to the partnership by such partner, except to the extent that the value of the distributed security is attributable to marketable securities or money contributed (directly or indirectly) to the entity to which the distributed security relates,

**(ii)** to the extent provided in regulations prescribed by the Secretary, the property was not a marketable security when acquired by such partnership, or

**(iii)** such partnership is an investment partnership and such partner is an eligible partner thereof.

**(B) Limitation on Gain Recognized.--**   In the case of a distribution of marketable securities to a partner, the amount taken into account under paragraph (1) shall be reduced (but not below zero) by the excess (if any) of--

**(i)** such partner's distributive share of the net gain which would be recognized if all of the marketable securities of the same class and issuer as the distributed securities held by the partnership were sold (immediately before the transaction to which the distribution relates) by the partnership for fair market value, over

**(ii)** such partner's distributive share of the net gain which is attributable to the marketable securities of the same class and issuer as the distributed securities held by the partnership immediately after the transaction, determined by using the same fair market value as used under clause (i).

Under regulations prescribed by the Secretary, all marketable securities held by the partnership may be treated as marketable securities of the same class and issuer as the distributed securities.

**(C) Definitions Relating to Investment Partnerships.--** For purposes of subparagraph (A)(iii):

**(i) Investment Partnership.--** The term "investment partnership" means any partnership which has never been engaged in a trade or business and substantially all of the assets (by value) of which have always consisted of--

**(I)** money,

**(II)** stocks in a corporation,

**(III)** notes, bonds, debentures, or other evidences of indebtedness,

**(IV)** interest rate, currency, or equity notional principal contracts,

**(V)** foreign currencies,

**(VI)** interests in or derivative financial instruments (including options, forward or futures contracts, short positions, and similar financial instruments) in any asset described in any other subclause of this clause or in any commodity traded on or subject to the rules of a board of trade or commodity exchange,

**(VII)** other assets specified in regulations prescribed by the Secretary, or

**(VIII)** any combination of the foregoing.

**(ii) Exception for Certain Activities.--** A partnership shall not be treated as engaged in a trade or business by reason of--

**(I)** any activity undertaken as an investor, trader, or dealer in any asset described in clause (i), or

**(II)** any other activity specified in regulations prescribed by the Secretary.

**(iii) Eligible Partner.--**

**(I) In General.--** The term "eligible partner" means any partner who, before the date of the distribution, did not contribute to the partnership any property other than assets described in clause (i).

**(II) Exception for Certain Nonrecognition Transactions.--** The term "eligible partner" shall not include the transferor or transferee in a nonrecognition transaction involving a transfer of any portion of an interest in a partnership with respect to which the transferor was not an eligible partner.

**(iv) Look-thru of Partnership Tiers.--** Except as otherwise provided in regulations prescribed by the Secretary--

**(I)** a partnership shall be treated as engaged in any trade or business by, and as holding (instead of a partnership interest) a proportionate share of the assets of any other partnership in which the partnership holds an interest, and

**(II)** a partner who contributes to a partnership an interest in another partnership shall be treated as contributing a proportionate share of the assets of the other partnership.

If the clause (iv) does not apply under such regulations with respect to any interest held by a partnership in another partnership, the interest in such other partnership shall be treated as if it were specified in a subclause of clause (i).

**(4) Basis of Securities Distributed.--**

(A)  **In General.--**  The basis of marketable securities with respect to which gain is recognized by reason of this subsection shall be--

(i)  their basis determined under Section 1073.02, increased by

(ii)  the amount of such gain.

(B)  **Allocation of Basis Increase.--**  Any increase in basis attributable to the gain described in subparagraph (A)(ii) shall be allocated to marketable securities in proportion to their respective amounts of unrealized appreciation before such increase.

(5)  **Subsection Disregarded in Determining Basis of Partner's Interest in Partnership and of Basis of Partnership Property.--**  Sections 1070.03 and 1070.04 shall be applied as if no gain were recognized, and no adjustment were made to the basis of property under this subsection.

(6)  **Character of Gain Recognized.--**  In the case of a distribution of a marketable security which is an unrealized receivable (as defined in Section 1075.01(c)) or an inventory item (as defined in Section 1075.01(d)), any gain recognized under this subsection shall be treated as ordinary income to the extent of any increase in the basis of such security attributable to the gain described in paragraph (4)(A)(ii).

(7)  **Regulations.--**  The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this subsection, including regulations to prevent the avoidance of such purposes.

(d)  **Exceptions.--**  This section shall not apply to the extent otherwise provided by Section 1073.06 (relating to payments to a retiring partner or a decedent partner's successor), Section 1075.01 (relating to unrealized receivables and inventory items), and Section 1073.01 (relating to recognition of precontribution gain in case of certain distributions).


**Section 1073.02.-- Basis of Distributed Property Other Than Money.--**

(a)  **General Rule.--**  The basis of property, other than money, distributed by a partnership to a partner other than in liquidation of the partner's interest in the partnership shall be its adjusted basis of the property to the partnership immediately before such distribution. The basis to the distributee partner of property shall not exceed the adjusted basis of such partner's interest in the partnership reduced by any money distributed in the same transaction.

(b)  **Distributions in Liquidation.--**  The basis of property, other than money, distributed by a partnership to a partner in liquidation of the partner's interest in the partnership shall be an amount equal to the adjusted basis of such partner's interest in the partnership reduced by any money distributed in the same transaction.

(c)  **Allocation of Basis.--**

(1)  **In General.--**  The basis of distributed properties to which subsection (a) or (b) is applicable shall be allocated--

(A)

(i)  first to any unrealized receivables (as defined in Section 1075.01(c)) and inventory items (as defined in Section 1075.01(d)) in an amount equal to the adjusted basis of each such property to the partnership, and

(ii)  if the basis to be allocated is less than the sum of the adjusted bases of such properties to the partnership, then, to the extent any decrease is required in order to have the adjusted bases of such properties equal the basis to be allocated, in the manner provided in paragraph (3), and

(B)  to the extent of any basis remaining after the allocation under subparagraph (A), to other distributed properties--

**(i)** first by assigning to each such other property such other property's adjusted basis to the partnership, and

**(ii)** then, to the extent any increase or decrease in basis is required in order to have the adjusted bases of such other distributed properties equal such remaining basis, in the manner provided in paragraph (2) or (3), whichever is appropriate.

**(2) Method of Allocating Increase.--** Any increase required under paragraph (1)(B) shall be allocated among the properties--

**(A)** first to properties with unrealized appreciation in proportion to their respective amounts of unrealized appreciation before such increase (but only to the extent of each property's unrealized appreciation), and

**(B)** then, to the extent such increase is not allocated under subparagraph (A), in proportion to their respective fair market values.

**(3) Method of Allocating Decrease.--** Any decrease required under paragraph (1)(A) or (1)(B) shall be allocated--

**(A)** first, to properties with unrealized depreciation in proportion to their respective amounts of unrealized depreciation (but only to the extent of each property's unrealized depreciation), and

**(B)** then, to the extent that such decrease is not allocated under subparagraph (A), in proportion to their respective adjusted bases (as adjusted under subparagraph (A)).

**(d) Special Partnership Basis to Transferee.--** For purposes of subsections (a), (b), and (c), a partner who acquired all or part of his/her interest by transfer with respect to which the election provided in Section 1075.04 is not in effect, and to whom a distribution of property (other than money) is made with respect to the transferred interest within two (2) years after such transfer, may elect, under regulations prescribed by the Secretary, to treat as the adjusted partnership basis of such property the adjusted basis such property would have if the adjustment provided in Section 1074.03(b) were in effect with respect to the partnership property. The Secretary may, by regulations to such effect, require the application of this subsection in the case of a distribution to a transferee partner, whether or not made within two (2) years after the transfer if, at the time of the transfer, the fair market value of the partnership property (other than money) exceeded one hundred ten percent (110%) of its adjusted basis to the partnership.

**(e) Exception.--** This section shall not apply to the extent that a distribution is treated as a sale or exchange of property under Section 1075.01(b) (relating to unrealized receivables and inventory items).

**(f) Corresponding Adjustment to Basis of Assets of a Distributed Corporation Controlled by a Corporate Partner.--**

**(1) In General.--** If--

**(A)** a corporation (hereafter in this subsection referred to as the "corporate partner") receives from a partnership a distribution of stock in another corporation (hereafter in this subsection referred to as the "distributed corporation"),

**(B)** the corporate partner has control of the distributed corporation immediately after the distribution or at any time thereafter, and

**(C)** the partnership's adjusted basis in such stock immediately before the distribution exceeded the corporate partner's adjusted basis in such stock immediately after the distribution, then an amount equal to such excess shall be applied to reduce (in accordance with subsection (c)) the basis of property held by the distributed corporation at such time (or, if the corporate partner does not control the distributed corporation at such time, at the time the corporate partner first has such control).

**(2) Exception for Certain Distributions Before Control is Acquired.--** Paragraph (1) shall not apply to any distribution of stock in the distributed corporation if--

(A)  the corporate partner does not have control of such corporation immediately after such distribution, and

(B)  the corporate partner establishes to the satisfaction of the Secretary that such distribution was not part of a plan or arrangement to acquire control of the distributed corporation.

**(3)  Limitations on Basis Reduction.--**

**(A)  In General.--**  The amount of the reduction under paragraph (1) shall not exceed the amount by which the sum of the aggregate adjusted bases of the property and the amount of money of the distributed corporation exceeds the corporate partner's adjusted basis in the stock of the distributed corporation.

**(B)  Reduction not to Exceed Adjusted Basis of Property.--**  No reduction under paragraph (1) in the basis of any property shall exceed the adjusted basis of such property (determined without regard to such reduction).

**(4)  Gain Recognition Where Reduction is Limited.--**  If the amount of any reduction under paragraph (1) (determined after the application of paragraph (3)(A)) exceeds the aggregate adjusted bases of the property of the distributed corporation--

**(A)**  such excess shall be recognized by the corporate partner as long-term capital gain, and

**(B)**  the corporate partner's adjusted basis in the stock of the distributed Corporation shall be increased by such excess.

**(5)  Control.--**  For purposes of this subsection, the term "control" means ownership of stock meeting the requirements of Section 1034.04(h).

**(6)  Indirect Distributions.--**  For purposes of paragraph (1), if a corporation acquires (other than in a distribution from a partnership) stock the basis of which is determined (by reason of being distributed from a partnership) in whole or in part by reference to subsection (a)(2) or (b), the corporation shall be treated as receiving a distribution of such stock from a partnership.

**(7)  Special Rule for Stock in Controlled Corporation.--**  If the property held by a distributed corporation is stock in a corporation which the distributed corporation controls, this subsection shall be applied to reduce the basis of the property of such controlled corporation. This subsection shall be reapplied to any property of any controlled corporation which is stock in a corporation which it controls.

**(8)  Regulations.--**  The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subsection, including regulations to avoid double counting and to prevent the abuse of such purposes.

## Section 1073.03.-- Basis of Distributee Partner's Interest.--

In the case of a distribution by a partnership to a partner other than in liquidation of a partner's interest, the adjusted basis to such partner of his/her interest in the partnership shall be reduced (but not below zero) by--

**(1)**  the amount of any money distributed to such partner, and

**(2)**  the amount of the basis attributable to such partner of distributed property other than money, as determined under Section 1073.02.

## Section 1073.04.-- Adjustment to Basis of Undistributed Partnership Property Where Section 1075.04 Election or Substantial Basis Reduction.--

**(a)  General Rule.--**  The basis of partnership property shall not be adjusted as the result of a distribution of property to a partner unless the election provided in Section 1075.04 (relating to optional adjustment to basis of partnership property) is in effect with respect to such partnership, or unless there is a substantial basis reduction with respect to such distribution.

**(b)  Method of Adjustment.--**  In the case of a distribution of property to a partner by a partnership with respect to which the election provided in Section 1075.04 is in effect, or with respect to which there is a substantial basis reduction, the partnership shall--

**(1)** increase the adjusted basis of partnership property by--

**(A)**  the amount of any gain recognized to the distributee partner with respect to such distribution under Section 1073.01(a)(1), and

**(B)**  in the case of distributed property to which Section 1073.02(a)(2) or (b) applies, the excess of the adjusted basis of the distributed property to the partnership immediately before the distribution (as adjusted by Section 1073.02(d)) over the basis of the distributed property to the distributee, as determined under said Section 1073.02, or

**(2)** decrease the adjusted basis of partnership property by--

**(A)**  the amount of any loss recognized to the distributee partner with respect to such distribution under Section 1073.01(a)(2), and

**(B)**  in the case of distributed property to which Section 1073.02(b) applies, the excess of the adjusted basis of the distributed property to the distributee, as determined under Section 1073.02, over the adjusted basis of the distributed property to the partnership immediately before such distribution (as adjusted by Section 1073.02(d)).

Paragraph (1)(B) shall not apply to any distributed property which is an interest in another partnership with respect to which the election provided in Section 1075.04 is not in effect.

**(c)  Allocation of Basis.--**  The allocation of basis among partnership properties where subsection (b) is applicable shall be made in accordance with the rules provided in Section 1075.05.

**(d)  Substantial Basis Reduction.--**

**(1)  In General.--**  For purposes of this section, there is a substantial basis reduction with respect to a distribution if the sum of the amounts described in subparagraphs (A) and (B) of subsection (b)(2) exceeds two hundred fifty thousand dollars ($ 250,000).

**(2)  Regulations.--**  For regulations necessary to carry out this subsection, see Section 1074.03(d)(2).

**(e)  Exception for Securitization Partnerships.--**  For purposes of this Section, a securitization partnership (as defined in Section 1074.03(f)) shall not be treated as having a substantial basis reduction with respect to any distribution of property to a partner.


**Section 1073.05.-- Character of Gain or Loss on Disposition of Distributed Property.--**

**(a)  Sale or Exchange of Certain Distributed Property.--**

**(1)  Unrealized Receivables.--**  Gain or loss on the disposition by a partner of unrealized receivables (as defined in Section 1075.01(c)) distributed by a partnership, shall be considered ordinary.

**(2)  Inventory Items.--**  Gain or loss on the sale or exchange by a partner of inventory items (as defined in Section 1075.01(d)) distributed by a partnership shall, if sold or exchanged within five (5) years from the date of the distribution, be considered ordinary.

**(b)  Holding Period for Distributed Property.--**  In determining the period for which a partner has held the distributed property, other than for purposes of subsection (a), the provisions of Section 1034.01(h) of this Code shall apply.

**(c)  Special Rules.--**

**(1)  Substituted Basis Property.--**

**(A)  In General.--**  If any property described in subsection (a) is disposed of in a nonrecognition transaction, the tax treatment which applies to such property under such subsection shall also

apply to any substituted basis property resulting from such transaction. A similar rule shall also apply in the case of a series of nonrecognition transactions.

**(B) Exception for Stock in a Corporation or Other Entity Subject to Taxation as a Regular Corporation.--**   Subparagraph (A) shall not apply to any stock in a corporation or other entity subject to taxation as a regular corporation received in an exchange described in Section 1034.04(b)(5).

### Section 1073.06.-- Payments to a Retiring Partner or a Decedent Partner's Successor.--

**(a) Payments Considered as Distributive Share or Guaranteed Payment.--**   Payments made in liquidation of the interest of a retiring partner or a decedent partner shall, except as provided in subsection (b), be considered--

**(1)** as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or

**(2)** as a guaranteed payment described in Section 1071.07(c) if the amount thereof is determined without regard to the income of the partnership.

**(b) Payments for Interest in Partnership.--**

**(1) General Rule.--**   Payments made in liquidation of the interest of a retiring partner or a decedent partner, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary, to be made in exchange for the interest of such partner in partnership property, shall be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).

**(2) Special Rules.--**   For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for--

**(A)** unrealized receivables of the partnership (as defined in Section 1075.01(c)), or

**(B)** good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.

**(3) Limitation on Application of Paragraph (2).--**   Paragraph (2) shall apply only if--

**(A)** capital is not a material income-producing factor for the partnership, and

**(B)** the retiring or decedent partner was a general partner in the partnership.

### Section 1073.07.-- Recognition of Pre-contribution Gain in Case of Certain Distributions to Contributing Partner.--

**(a) General Rule.--**   In the case of any distribution by a partnership to a partner, such partner shall be treated as recognizing gain in an amount equal to the lesser of--

**(1)** the excess (if any) of--

**(A)** the fair market value of the property (other than money) received in the distribution, over

**(B)** the adjusted basis of such partner's interest in the partnership immediately before the distribution, reduced (but not below zero) by the amount of money received in the distribution, or

**(2)** the net pre-contribution gain of the partner.

Gain recognized under the provisions of this subsection shall be in addition to any gain recognized under Section 1073.01. The character of such gain shall be determined by reference to the proportionate character of the net pre-contribution gain.

**(b) Net Pre-contribution Gain.--** For purposes of this section, the term "net pre-contribution gain" means the net gain (if any) which would have been recognized by the distributee partner under Section 1071.04(c)(1)(B) if all the property which--

**(1)** had been contributed to the partnership by the distributee partner during the seven (7)-year period prior to the distribution, and

**(2)** is held by such partnership immediately before the distribution, had been distributed by such partnership to another partner.

**(c) Basis Rules.--**

**(1) Partner's Interest.--** The adjusted basis of a partner's interest in a partnership shall be increased by the amount of any gain recognized by such partner under subsection (a). For purposes of determining the basis of the distributed property (other than money), such increase shall be treated as occurring immediately before the distribution.

**(2) Partnership's Basis in Contributed Property.--** Appropriate adjustments shall be made to the adjusted basis of the partnership in the contributed property referred to in subsection (b) to reflect gain recognized under subsection (a).

**(d) Exceptions.--**

**(1) Distributions of Previously Contributed Property.--** If any portion of the distributed property consists of property which had been contributed by the distributee partner to the partnership, such property shall not be taken into account under subsection (a)(1) and shall not be taken into account in determining the amount of the net pre-contribution gain. If the distributed property consists of an interest in an entity, the preceding sentence shall not apply to the extent that the value of such interest is attributable to property contributed to such entity after such interest had been contributed to the partnership.

**(2) Coordination with Section 1075.01.--** This section shall not apply to the extent Section 1075.01(b) applies to such distribution.

**(e) Marketable Securities Treated as Money.--** For treatment of marketable securities as money, for purposes of this section, see Section 1073.01(c).


## SUBCHAPTER D -- COMPUTATION IN SALES OR EXCHANGES


## Section 1074.01.-- Recognition and Character of Gain or Loss on Sale or Exchange.--

In case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such recognized gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in Section 1075.01 (relating to unrealized receivables and inventory items).


## Section 1074.02.-- Basis of Transferee Partner's Interest.--

The basis of an interest in a partnership acquired other than by contribution shall be determined under Section 1034.02.


## Section 1074.03.-- Special Rules Where Substantial Built-in Loss and Section 1075.04 Election.--

**(a) General Rule.--** The basis of partnership property shall not be adjusted as the result of a transfer of an interest in a partnership by sale or exchange or on the death of a partner unless the election provided in Section 1075.04 (relating to optional adjustment to basis of partnership property) is in effect with respect to such partnership, or unless the partnership has a substantial built-in loss immediately after such transfer.

2011 PR H.B. 3070

**(b)  Adjustment to Basis of Partnership Property.--**   In the case of a transfer of an interest in a partnership by sale or exchange or upon the death of a partner, a partnership with respect to which the election provided in Section 1075.04 is in effect or which has a substantial built-in loss immediately after such transfer shall--

**(1)** increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his/her interest in the partnership over his/her proportionate share of the adjusted basis of the partnership property, or

**(2)** decrease the adjusted basis of the partnership property by the excess of the transferee partner's proportionate share of the adjusted basis of the partnership property over the basis of his/her interest in the partnership.

Under regulations to be prescribed by the Secretary, such increase or decrease shall constitute an adjustment to the basis of partnership property with respect to the transferee partner only. A partner's proportionate share of the adjusted basis of partnership property shall be determined in accordance with his/her interest in partnership capital and, in the case of property contributed to the partnership by a partner, Section 1074.02(c) (relating to contributed property) shall apply in determining such share. In the case of an adjustment under this subsection to the basis of partnership property subject to depletion, any depletion allowable shall be determined separately for the transferee partner with respect to his/her interest in such property.

**(c)  Allocation of Basis.--**   The allocation of basis among partnership properties where subsection (b) applies shall be made in accordance with the rules provided in Section 1075.05.

**(d) Substantial Built-in Loss.--**

**(1)  In General.--**   For purposes of this section, a partnership has a substantial built-in loss with respect to a transfer of an interest in a partnership if the partnership's adjusted basis in the partnership property exceeds the fair market value of such property by more than two hundred fifty thousand dollars ($ 250,000).

**(2)  Regulations.--**   The Secretary shall prescribe such regulations as may be appropriate to carry out the purposes of paragraph (1) and Section 1073.04(d), including regulations aggregating related partnerships and disregarding property acquired by the partnership in an attempt to avoid such purposes.

**(e) Alternative Rules for Electing Investment Partnerships.--**

**(1)  No Adjustment of Partnership Basis.--**   For purposes of this section, an electing investment partnership shall not be treated as having a substantial built-in loss with respect to any transfer occurring while the election under paragraph (6)(A) is in effect.

**(2)  Loss Deferral for Transferee Partner.--**   In the case of a transfer of an interest in an electing investment partnership, the transferee partner's distributive share of losses (without regard to gains) from the sale or exchange of partnership property shall not be allowed except to the extent that it is established that such losses exceed the loss (if any) recognized by the transferor (or any prior transferor to the extent not fully offset by a prior disallowance under this paragraph) on the transfer of the partnership interest.

**(3)  No Reduction in Partnership Basis.--**   Losses disallowed under paragraph (2) shall not decrease the transferee partner's basis in the partnership interest.

**(4)  Effect of Termination of Partnership.--**   This subsection shall be applied without regard to any termination of a partnership under Section 1071.08(b)(1)(B).

**(5)  Certain Basis Reductions Treated as Losses.--**   In the case of a transferee partner whose basis in property distributed by the partnership is reduced under Section 1073.02(a)(2), the amount of the loss recognized by the transferor on the transfer of the partnership interest which is taken into account under paragraph (2) shall be reduced by the amount of such basis reduction.

**(6) Electing Investment Partnership.--**  For purposes of this subsection, the term "electing investment partnership" means any partnership if--

**(A)** the partnership makes an election to have this subsection apply,

**(B)** the partnership would be an investment company under Section 3(a)(1)(A) of the Investment Company Act of 1940 but for an exemption under paragraph (1) or (7) of Section 3(c) of such Act,

**(C)** such partnership has never been engaged in a trade or business,

**(D)** substantially all of the assets of such partnership are held for investment,

**(E)** at least ninety-five percent (95%) of the assets contributed to such partnership consist of money,

**(F)** no assets contributed to such partnership had an adjusted basis in excess of fair market value at the time of contribution,

**(G)** all interests of such partnership are issued pursuant to a private offering before the date which is twenty-four (24) months after the date of the first capital contribution to such partnership,

**(H)** the partnership agreement of such partnership has substantive restrictions on each partner's ability to cause a redemption of the partner's interest, and

**(I)** the partnership agreement of such partnership provides for a term that does not exceed fifteen (15) years.

The election described in subparagraph (A), once made, shall be irrevocable except with the consent of the Secretary.

**(7) Regulations.--**  The Secretary shall prescribe such regulations as may be appropriate to carry out the purposes of this subsection, including regulations for applying this subsection to tiered partnerships.

**(f) Exception for Securitization Partnerships.--**

**(1) No Adjustment of Partnership Basis.--**  For purposes of this section, a securitization partnership shall not be treated as having a substantial built-in loss with respect to any transfer.

**(2) Securitization Partnership.--**  For purposes of paragraph (1), the term "securitization partnership" means any partnership the sole business activity of which is to issue securities which provide for a fixed principal (or similar) amount and which are primarily serviced by the cash flows of a discrete pool (either fixed or revolving) of receivables or other financial assets that by their terms convert into cash in a finite period, but only if the sponsor of the pool reasonably believes that the receivables and other financial assets comprising the pool are not acquired so as to be disposed of.


# SUBCHAPTER E --  MISCELLANEOUS PROVISIONS


## Section 1075.01.--  Unrealized Receivables and Inventory Items.--

**(a) Sale or Exchange of Interest in Partnership.--**  The amount of any money, or the fair market value of any property, received by a partner in exchange for all or part of his/her interest in the partnership attributable to--

**(1)** unrealized receivables of the partnership, or

**(2)** inventory items of the partnership, shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

**(b) Certain Distributions Treated as Sales or Exchanges.--**

**(1) General Rule.--**  To the extent that a partner receives in a distribution--

**(A)** partnership property which is--

**(i)** unrealized receivables, or

**(ii)** inventory items which have appreciated substantially in value, in exchange for all or a part of his/her interest in other partnership property (including money), or

**(B)** partnership property (including money) other than property described in subparagraph (A)(i) or (ii) in exchange for all or part of his/her interest in partnership property described in said subparagraph (A)(i) or (ii), such transactions shall, under regulations prescribed by the Secretary, be considered as a sale or exchange of such property between the distributee partner and the partnership (as constituted after the distribution).

**(2) Exceptions.--**  Paragraph (1) shall not apply to--

**(A)** a distribution of property which the distribute partner contributed to the partnership, or

**(B)** payments described in Section 1073.06(a) to a retiring partner or successor in interest of a decedent partner.

**(3) Substantial Appreciation.--**  For purposes of paragraph (1)--

**(A) In General.--**  Inventory items of the partnership shall be considered to have appreciated substantially in value if their fair market value exceeds one hundred twenty percent (120%) of the adjusted basis to the partnership of such property.

**(B) Certain Property Excluded.--**  For purposes of subparagraph (A), any inventory property shall be excluded if a principal purpose for acquiring such property was to avoid the provisions of this subsection related to inventory items.

**(c) Unrealized Receivables.--**  For purposes of this Chapter, the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for--

**(1)** goods delivered, or to be delivered, to the extent that the proceeds therefrom would be treated as amounts received from the sale or exchange of property other than a capital asset, or

**(2)** services rendered, or to be rendered.

**(d) Inventory Items.--**  For purposes of this Chapter, the term "inventory items" means--

**(1)** property of the partnership of the kind described in Section 1034.01(a)(1)(A),

**(2)** any other property of the partnership which, on sale or exchange by the partnership, would be considered property other than a capital asset and other than property described in Section 1034.01(i), and

**(3)** any other property held by the partnership which, if held by the selling or distributee partner, would be considered property of the kind described in paragraph (1) or (2).

**(e) Special Rules in the Case of Tiered Partnerships, etc.--**  In determining whether property of a partnership is--

**(1)** an unrealized receivable, or

**(2)** an inventory item, such partnership shall be treated as owning its proportionate share of the property of any other partnership in which it is a partner. Under regulations to be promulgated by the Secretary, rules similar to the rules of the preceding sentence shall also apply in the case of interests in trusts.

**Section 1075.02.-- Treatment of Certain Liabilities.--**

**(a) Increase in Partner's Liabilities.--**  Any increase in a partner's share of the liabilities of a partnership of which the partner is personally responsible pursuant to the laws under which the partnership was organized, or which such partner secures, or any increase in a partner's individual liabilities by reason of

the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

**(b) Decrease in Partner's Liabilities.--**   Any decrease in a partner's share of the liabilities of a partnership of which the partner is personally responsible pursuant to the laws under which the partnership was organized or which such partner secures, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

**(c) Liability to Which Property is Subject.--**   For purposes of this section, a liability to which property is subject shall, to the extent of the fair market value of such property, be considered as a liability of the owner of the property provided that the partner is personally responsible pursuant to the laws under which the partnership was organized, or that such partner secures said liabilities.

**(d) Sale or Exchange of an Interest.--**   In the case of a sale or exchange of an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships.

## Section 1075.03.-- Payments to a Partner's Sucessor.--

The amounts allowed under Section 1073.06(a) as gross income of a successor in the interest of a decedent partner shall be treated as income with respect to the decedent as provided in Section 1032.03.

## Section 1075.04.-- Manner of Electing Optional Adjustment to Basis of Partnership Property.--

If a partnership files an election in accordance with regulations prescribed by the Secretary, the basis of partnership property shall be adjusted, in the case of a distribution of property, in the manner provided in Section 1073.04 and, in the case of a transfer of a partnership interest, in the manner provided in Section 1074.03. Such an election shall apply with respect to all distributions of property by the partnership and to all transfers of interests in the partnership during the taxable year with respect to which such election was filed and for all subsequent taxable years. Such election may be revoked by the partnership subject to such limitations as may be provided by regulations prescribed by the Secretary.

## Section 1075.05.-- Rules for Allocation of Basis.--

**(a) General Rule.--**   Any increase or decrease in the adjusted basis of partnership property under Section 1073.04(b) (relating to the optional adjustment to the basis of undistributed partnership property) or Section 1074.03(b) (relating to the optional adjustment to the basis of partnership property in case of transfer of an interest in a partnership) shall, except as provided in subsection (b), be allocated--

**(1)** in a manner which has the effect of reducing the difference between the fair market value and the adjusted basis of partnership properties, or

**(2)** in any other manner permitted by regulations prescribed by the Secretary.

**(b) Special Rule.--**   In applying the allocation rules provided in subsection (a), increases or decreases in the adjusted basis of partnership property arising from a distribution of, or a transfer of an interest attributable to, property consisting of--

**(1)** capital assets and property described in Section 1034.01(a)(1)(B), or

**(2)** any other property of the partnership, shall be allocated to partnership property of a like character except that the basis of any such partnership property shall not be reduced below zero. If, in the case of a distribution, the adjustment to basis of property described in paragraph (1) or (2) is prevented by the absence of such property or by insufficient adjusted basis for such property, such adjustment shall be applied to subsequently acquired property of a like character, in accordance with regulations prescribed by the Secretary.

2011 PR H.B. 3070

**(c) No Allocation of Basis Decrease to Stock of Corporate Partner.--** In making an allocation under subsection (a) of any decrease in the adjusted basis of partnership property under Section 1073.04(b)--

**(1)** no allocation shall be made to stock in a corporation (or any person related (within the meaning of Sections 1033.17(b) and 1071.07(b)(1)) to such corporation) which is a partner in the partnership, and

**(2)** any amount not allocable to stock by reason of paragraph (1) shall be allocated under subsection (a) to other partnership property.

Gain shall be recognized to the partnership to the extent that the amount required to be allocated under paragraph (2) to other partnership property exceeds the aggregate adjusted basis of such other property immediately before the allocation required by paragraph (2).

### Section 1076.01.-- Effect of the Application of the Provisions of Chapter 7.--

**(a) Partnerships and Limited Liability Companies subject to Taxation as Corporations pursuant to Subtitle A of the Internal Revenue Code of 1994.--** Any partnership or limited liability company subject to taxation as a corporation pursuant to the provisions of Subtitle A of the Puerto Rico Internal Revenue Code of 1994, during the last taxable year prior to January 1, 2011, shall be considered, on the last day of such year, as transferring its assets and liabilities to its partners and members, as the case may be, in liquidation of the partnership or limited liability company and, immediately after, the partners and members, as the case may be, contribute the assets and liabilities distributed to a new partnership. Except as provided in this subsection, no gain or loss shall be recognized to the partnership, limited liability company, and partners or members, as the case may be, as a result of the distributions made under this subsection. Such partnership or limited liability company shall be subject to the provisions of subsections (d), (e), (f), (g) and (h) of Section 1115.03 and Section 1115.08 of Subchapter E of Chapter 11.

**(b) Limited Liabilities Company Subject to Taxation under the provisions of this Chapter, pursuant to Section 1010.01(a)(3).--** Any limited liability company that, prior to the taxable year during which it is subject to taxation under this Chapter, as provided in Section 1010.01(a)(3), was subject to taxation under the provisions of Subchapter B of Chapter 2 shall be considered, on the last day of such year, as transferring its assets and liabilities to its members in liquidation of the limited liability company and, immediately after, the members contribute the assets and liabilities distributed to the new partnership. Such limited liability company shall be subject to the provisions of subsections (d), (e), (f), (g) and (h) of Section 1115.03 and Section 1115.08 of Subchapter E of Chapter 11.

### SUBCHAPTER E -- MISCELLANEOUS PROVISIONS

### Section 1075.01.-- Unrealized Receivables and Inventory Items.--

**(a) Sale or Exchange of Interest in Partnership.--** The amount of any money, or the fair market value of any property, received by a partner in exchange for all or part of his/her interest in the partnership attributable to--

**(1)** unrealized receivables of the partnership, or

**(2)** inventory items of the partnership, shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

**(b) Certain Distributions Treated as Sales or Exchanges.--**

**(1) General Rule.--** To the extent that a partner receives in a distribution--

**(A)** partnership property which is--

**(i)** unrealized receivables, or

**(ii)** inventory items which have appreciated substantially in value, in exchange for all or a part of his/her interest in other partnership property (including money), or

**(B)** partnership property (including money) other than property described in subparagraph (A)(i) or (ii) in exchange for all or part of his/her interest in partnership property described in said subparagraph (A)(i) or (ii), such transactions shall, under regulations prescribed by the Secretary, be considered as a sale or exchange of such property between the distributee partner and the partnership (as constituted after the distribution).

**(2) Exceptions.--** Paragraph (1) shall not apply to--

**(A)** a distribution of property which the distribute partner contributed to the partnership, or

**(B)** payments described in Section 1073.06(a) to a retiring partner or successor in interest of a decedent partner.

**(3) Substantial Appreciation.--** For purposes of paragraph (1)--

**(A) In General.--** Inventory items of the partnership shall be considered to have appreciated substantially in value if their fair market value exceeds one hundred twenty percent (120%) of the adjusted basis to the partnership of such property.

**(B) Certain Property Excluded.--** For purposes of subparagraph (A), any inventory property shall be excluded if a principal purpose for acquiring such property was to avoid the provisions of this subsection related to inventory items.

**(c) Unrealized Receivables.--** For purposes of this Chapter, the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for--

**(1)** goods delivered, or to be delivered, to the extent that the proceeds therefrom would be treated as amounts received from the sale or exchange of property other than a capital asset, or

**(2)** services rendered, or to be rendered.

**(d) Inventory Items.--** For purposes of this Chapter, the term "inventory items" means--

**(1)** property of the partnership of the kind described in Section 1034.01(a)(1)(A),

**(2)** any other property of the partnership which, on sale or exchange by the partnership, would be considered property other than a capital asset and other than property described in Section 1034.01(i), and

**(3)** any other property held by the partnership which, if held by the selling or distributee partner, would be considered property of the kind described in paragraph (1) or (2).

**(e) Special Rules in the Case of Tiered Partnerships, etc.--** In determining whether property of a partnership is--

**(1)** an unrealized receivable, or

**(2)** an inventory item, such partnership shall be treated as owning its proportionate share of the property of any other partnership in which it is a partner. Under regulations to be promulgated by the Secretary, rules similar to the rules of the preceding sentence shall also apply in the case of interests in trusts.


## Section 1075.02.-- Treatment of Certain Liabilities.--

**(a) Increase in Partner's Liabilities.--** Any increase in a partner's share of the liabilities of a partnership of which the partner is personally responsible pursuant to the laws under which the partnership was organized, or which such partner secures, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

**(b) Decrease in Partner's Liabilities.--**  Any decrease in a partner's share of the liabilities of a partnership of which the partner is personally responsible pursuant to the laws under which the partnership was organized or which such partner secures, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be considered as a distribution of money to the partner by the partnership.

**(c) Liability to Which Property is Subject.--**  For purposes of this section, a liability to which property is subject shall, to the extent of the fair market value of such property, be considered as a liability of the owner of the property provided that the partner is personally responsible pursuant to the laws under which the partnership was organized, or that such partner secures said liabilities.

**(d) Sale or Exchange of an Interest.--**  In the case of a sale or exchange of an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships.

## Section 1075.03.-- Payments to a Partner's Sucessor.--

The amounts allowed under Section 1073.06(a) as gross income of a successor in the interest of a decedent partner shall be treated as income with respect to the decedent as provided in Section 1032.03.

## Section 1075.04.-- Manner of Electing Optional Adjustment to Basis of Partnership Property.--

If a partnership files an election in accordance with regulations prescribed by the Secretary, the basis of partnership property shall be adjusted, in the case of a distribution of property, in the manner provided in Section 1073.04 and, in the case of a transfer of a partnership interest, in the manner provided in Section 1074.03. Such an election shall apply with respect to all distributions of property by the partnership and to all transfers of interests in the partnership during the taxable year with respect to which such election was filed and for all subsequent taxable years. Such election may be revoked by the partnership subject to such limitations as may be provided by regulations prescribed by the Secretary.

## Section 1075.05.-- Rules for Allocation of Basis.--

**(a) General Rule.--**  Any increase or decrease in the adjusted basis of partnership property under Section 1073.04(b) (relating to the optional adjustment to the basis of undistributed partnership property) or Section 1074.03(b) (relating to the optional adjustment to the basis of partnership property in case of transfer of an interest in a partnership) shall, except as provided in subsection (b), be allocated--

**(1)** in a manner which has the effect of reducing the difference between the fair market value and the adjusted basis of partnership properties, or

**(2)** in any other manner permitted by regulations prescribed by the Secretary.

**(b) Special Rule.--**  In applying the allocation rules provided in subsection (a), increases or decreases in the adjusted basis of partnership property arising from a distribution of, or a transfer of an interest attributable to, property consisting of--

**(1)** capital assets and property described in Section 1034.01(a)(1)(B), or

**(2)** any other property of the partnership, shall be allocated to partnership property of a like character except that the basis of any such partnership property shall not be reduced below zero. If, in the case of a distribution, the adjustment to basis of property described in paragraph (1) or (2) is prevented by the absence of such property or by insufficient adjusted basis for such property, such adjustment shall be applied to subsequently acquired property of a like character, in accordance with regulations prescribed by the Secretary.

**(c) No Allocation of Basis Decrease to Stock of Corporate Partner.--**  In making an allocation under subsection (a) of any decrease in the adjusted basis of partnership property under Section 1073.04(b)--

**(1)** no allocation shall be made to stock in a corporation (or any person related (within the meaning of Sections 1033.17(b) and 1071.07(b)(1)) to such corporation) which is a partner in the partnership, and

**(2)** any amount not allocable to stock by reason of paragraph (1) shall be allocated under subsection (a) to other partnership property.

Gain shall be recognized to the partnership to the extent that the amount required to be allocated under paragraph (2) to other partnership property exceeds the aggregate adjusted basis of such other property immediately before the allocation required by paragraph (2).

**Section 1076.01.-- Effect of the Application of the Provisions of Chapter 7.--**

**(a) Partnerships and Limited Liability Companies subject to Taxation as Corporations pursuant to Subtitle A of the Internal Revenue Code of 1994.--** Any partnership or limited liability company subject to taxation as a corporation pursuant to the provisions of Subtitle A of the Puerto Rico Internal Revenue Code of 1994, during the last taxable year prior to January 1, 2011, shall be considered, on the last day of such year, as transferring its assets and liabilities to its partners and members, as the case may be, in liquidation of the partnership or limited liability company and, immediately after, the partners and members, as the case may be, contribute the assets and liabilities distributed to a new partnership. Except as provided in this subsection, no gain or loss shall be recognized to the partnership, limited liability company, and partners or members, as the case may be, as a result of the distributions made under this subsection. Such partnership or limited liability company shall be subject to the provisions of subsections (d), (e), (f), (g) and (h) of Section 1115.03 and Section 1115.08 of Subchapter E of Chapter 11.

**(b) Limited Liabilities Company Subject to Taxation under the Provisions of this Chapter, pursuant to Section 1010.01(a)(3).--** Any limited liability company that, prior to the taxable year during which it is subject to taxation under this Chapter, as provided in Section 1010.01(a)(3), was subject to taxation under the provisions of Subchapter B of Chapter 2 shall be considered, on the last day of such year, as transferring its assets and liabilities to its members in liquidation of the limited liability company and, immediately after, the members contribute the assets and liabilities distributed to the new partnership. Such limited liability company shall be subject to the provisions of subsections (d), (e), (f), (g) and (h) of Section 1115.03 and Section 1115.08 of Subchapter E of Chapter 11.

**CHAPTER 8 --** ESTATES AND TRUSTS

**SUBCHAPTER A --** EMPLOYEE TRUSTS

**Section 1081.01.-- Employee Trusts.--**

**(a) Exemption.--** A trust which is part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of its employees or of their beneficiaries shall not be taxable under this Subchapter and no other provision of this Subchapter shall apply with regard to said trust or its beneficiaries--

**(1)** If contributions are made to the trust by such employer, or employees or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan;

**(2)** If under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of its employees or their beneficiaries (but this paragraph shall not be construed to prohibit the return of a contribution under Section 403(c) of the Employee Retirement Income Security Act of 1974 (ERISA));

**(3)**  If the trust, or two (2) or more trusts, or the trust or trusts and the annuity plan or plans are designated by the employer as constituting part of a plan intended to meet the minimum coverage requirements provided in this paragraph.

**(A)**  Coverage Requirements--

**(i)**  The plan benefits at least seventy percent (70%) of the employees who are not highly compensated employees, as defined in subsection (e)(3)(E)(iii); or

**(ii)**  the plan benefits a percentage of employees who are not highly compensated employees which is at least seventy percent (70%) of the percentage of highly compensated employees benefiting under the plan; or

**(iii)**  the plan meets with the requirements of subparagraph (B).

**(B)  Average Benefit Percentage Test.--**

**(i)  In General.--**  A plan shall be treated as meeting the requirements of this subparagraph if--

**(I)**  The plan benefits such employees as qualify under a classification set up by the employer, and found by the Secretary not to be discriminatory in favor of highly compensated employees, and

**(II)**  the average benefit percentage for employees who are not highly compensated employees is at least seventy percent (70%) of the average benefit percentage for highly compensated employees.

**(ii)  Average Percentage Benefit.--**  For purposes of this subparagraph the term "average benefit percentage" means, with respect to any group of employees, the average of the "benefit percentages" computed separately with respect to each employee in such group (whether or not the employee is a participant in the plan).

**(iii)  Benefit Percentage.--**  For purposes of this clause:

**(I)**  The term "benefit percentage" means the employer-provided contribution or benefit for an employee under all qualified plans maintained by the employer, determined on the basis of a percentage of such employee's compensation.

**(II)  Period for Computing the Percentage of Benefit.--**  At the election of an employer, the benefit percentage for any plan year shall be computed on the basis of contributions or benefits for such plan year, or any consecutive plan year period (not greater than three (3) years), which ends with such plan year and which is specified in such election. An election under this item, once made, may be modified or revoked only with the consent of the Secretary.

**(C)  Exclusion of Certain Employees.--**  For purposes of the computation required under the previous subparagraph, the following employees shall be excluded--

**(i)**  Employees who are included in a unit of employees covered by an agreement which the Secretary of Labor finds to be a collective bargaining agreement between employee representatives and one or more employers, if there is evidence that retirement benefits were the subject of good faith bargaining between such employee representatives and such employer or employers;

**(ii)**  Employees who are nonresident aliens and who receive no earned income from the employer from sources within Puerto Rico.

**(iii)**  a plan prescribes minimum age and service requirements as a condition of participation and excludes all employees not meeting such requirements from participation, then such employees shall be excluded from consideration for purposes of this paragraph.

**(D)  Special Rules for Certain Dispositions or Acquisitions.--**

(i)  **In General.--**  If, as a result of a corporate disposition or acquisition transaction, an entity becomes, or ceases to be a member of a controlled group of corporations, as defined in Section 1010.04, then the requirements of Subsection (a)(3) of this Section shall be treated as having been met during the transition period with respect to any plan covering employees of such entity or controlled group of entities if--

(I)  The plan has met the requirements of Section 1081.01(a)(3)(C) immediately before the change in members of the controlled group of corporations, and

(II)  The coverage under such plan is not significantly changed during the transition period (other than by reason of the change in members of a controlled group of corporations) or such plan meets such other requirements as the Secretary may prescribe by regulation.

(ii)  **Transition Period.--**  For purposes of this subparagraph, the term "transition period" means the period beginning on the date of the change in members of a controlled group of corporations, and ending on the last day of the first plan year beginning after the date of such change.

**(4)**  If the contribution or benefits provided under the plan do not discriminate in favor of employees who are partners, officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees. For purposes of this paragraph, employees excluded under paragraph (3)(C) shall not be taken into account.

**(5)**  A classification shall not be considered discriminatory within the meaning of clauses (3)(A)(ii) and (iii) or paragraph (4), merely because it is limited to salaried or clerical employees. Neither shall a plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of, or on behalf of, the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation of such employees, or differ because of any retirement benefits established by any state or Federal law.

**(6)**  A plan shall be considered as meeting the requirements of paragraph (3) during the whole of any taxable year of the plan if on one day in each quarter it satisfied such requirements.

**(7)**  For purposes of this subsection, in the case of a pension or profit-sharing plan established by an employer, which is a partnership, the term "employees" includes the partners of said partnership that render services to it. For purposes of these provisions, the term "partners" includes all industrial partners, even when there are professional service contracts between the partnership and the partner. Capital partners whose only relationship with the partnership is as investors shall not be treated as employees.

**(8)**  In the case of any plan that provides contributions or benefits to employees, all or any of which are owner-employees (as defined in subsection (f)), a trust that is part of such plan shall constitute a qualified trust under this section only if it meets the requirements of subsection (g). For the loss of exemption under certain circumstances in the case of employee trusts, see Sections 1102.06 and 1102.07.

**(9)**  The plan shall also comply with the applicable provisions of the Employee Retirement Income Security Act of 1974, known as ERISA.

**(10)**  A trust that is part of an employee stock ownership plan (as defined in subsection (h)), shall not constitute a qualified trust under subsection (a) of this section, unless it meets the requirements provided in subparagraphs (A) and (B).

(A)  **Diversification of Investments.--**

(i)  **In General.--**  A plan meets the requirements of this subparagraph if each qualified participant in the plan may elect within ninety (90) days after the close of each plan year in the qualified election period to direct the plan as to the investment of at least twenty-five percent (25%) of the participant's account in the plan (to the extent such portion exceeds the amount to

which a prior election under this subparagraph applies). In the case of the election year in which the participant can make his/her last election, the preceding sentence shall be applied by substituting fifty percent (50%) for "twenty-five percent (25%)."

**(ii)** A plan shall be treated as meeting the requirements of clause (i) if--

**(I)** The portion of the participant's account covered by the election under clause (i) is distributed within ninety (90) days after the period during which the election may be made, or

**(II)** the plan offers at least three (3) investment options (not inconsistent with the regulations prescribed by the Secretary) to each participant making an election under clause (i) and within ninety (90) days after the period during which the election may be made, the plan invests the portion of the participant's account covered by the election in accordance with such election.

**(iii) Qualified Participant.--** For purposes of this subparagraph, the term "qualified participant" means any employee who has completed at least ten (10) years of participation under the plan and has attained age 55.

**(iv) Qualified Election Period.--** For purposes of this subparagraph, the term "qualified election period" means the six (6)-plan-year period beginning with the first plan year in which the individual first became a qualified participant.

**(v) Coordination with Rules of Distribution.--** Any distribution required under this paragraph (10) shall not be considered when determining whether a subsequent distribution is a total distribution within one single taxable year for purposes of subsection (b) of this section.

**(B) Valuation Formula by a Qualified Professional.--** A plan meets the requirements of this subparagraph if all valuations of the employers securities which are not readily tradable on an established securities market, with respect to activities carried on by the plan, are by a qualified professional (as defined in the regulations promulgated by the Commissioner of Financial Institutions).

**(11)** For taxable years beginning after January 1, 2012, a trust shall not constitute an exempt trust under subsection (a) of this section, if the plan of which the trust is a part provides for the payment of benefits or contributions with respect to a participant in excess of the following limitations:

**(A)** In the case of a defined benefit pension plan, the annual benefit with respect to a participant, when expressed as a benefit payable annually in the form of a straight line annuity with no ancillary benefits under a plan to which employees do not contribute and under which no rollover contributions are made, shall not exceed the lesser of:

**(i)** One hundred ninety-five thousand dollars ($ 195,000), or

**(ii)** One hundred percent (100%) of the participant's average annual compensation for the period of consecutive calendar years (not more than three (3)) during which the participant had the greatest aggregate compensation from the employer.

**(B)** In the case of a defined benefit pension plan, the annual contributions of the employer and the participant and other additions with respect to a participant, without including contributions rolled over from another qualified retirement plan, shall not exceed the lesser of--

**(i)** Forty-nine thousand dollars ($ 49,000), or

**(ii)** One hundred percent (100%) of the participant's compensation paid by the employer during the calendar or plan year, as elected by the employer. The participant's compensation includes the contributions made by the participant to a qualified plan under a cash or deferred contribution arrangement said year.

(C)  In determining that requirements of this paragraph are met, all defined benefit pension plans maintained by the same employer shall be grouped and treated as one single defined benefit pension plan and all defined contribution plans maintained by the same employer shall be grouped and treated as one single defined contribution plan.

(12)  For taxable years beginning after January 1, 2012, a trust shall not constitute an exempt trust under subsection (a) of this section, if the plan of which such trust is a part, the annual compensation of a participant taken into account in determining the contributions or benefits under the plan and the application of nondiscrimination testing and the limitations on benefits and contributions provided in subsections (a) and (e) exceed two hundred forty-five thousand dollars ($ 245,000). However, when a qualified plan under subsection (a) of this section is duly qualified by the Federal Internal Revenue Service, the provisions of Section 401(a)(17) of the United States Internal Revenue Code of 1986, as amended, shall apply in lieu of the provisions of this paragraph.

(13)  **Exemption Test.--**  For taxable years beginning after January 1, 2012, any trust claiming an exemption under subsection (a) must request and obtain an administrative determination of the Secretary to such effects. Said request shall be submitted not later than the last day prescribed under this Subtitle for filing the income tax return of the employer maintaining or sponsoring the plan of which such trust is a part, including any extension granted by the Secretary for the filing thereof, for the taxable year of the employer in which such plan began to cover participants who are Puerto Rico residents. The administrative determinations with respect to the exemption of a trust under subsection (a) shall be in effect during the period prescribed by the Secretary through regulations, circular letters, or general administrative determinations.

(14)  **Groups of Corporations.--**

(A)  **In General.--**  For purposes of Sections 1081.01(a) and 1081.02(e), all employees of all corporations, partnerships, or other persons which are members of a controlled group of corporations or partnerships, as defined in Section 1010.04, or of an affiliated service group, as defined in this paragraph shall be treated as employed by a single employer.

(B)  **Affiliated Service Group.--**  For purposes of this paragraph, the term "affiliated service group" means a group consisting of a service organization (hereinafter in this paragraph referred to as the "first organization") and one or more of the following:

(i)  Any service organization which--

(I)  is a shareholder or partner in the first organization, and

(II)  regularly performs services for the first organization or is regularly associated with the first organization in performing services for third persons, and

(ii)  any other organization if--

(I)  a significant portion of the business of such organization is the performance of services (for the first organization, for organizations described in clause (i), or for both) of a type historically performed in such service field by employees, and

(II)  ten percent (10%) or more of the interests in such organization is held by persons who are highly compensated employees of the first organization or an organization described in clause (i).

(iii)  **Service Organizations.--**  For purposes of this paragraph, the term "service organization" means an organization whose principal business is the performance of services.

(iv)  **Certain Organizations Performing Management Functions.--**  For purposes of this subsection, the term "affiliated service group" also includes a group consisting of--

(I)  an organization whose principal business is performing, on a regular and continuing basis, management functions for one (1) organization (or for one (1) organization and other organizations related to such organization), and

**(II)** the organization (and related organizations) for which such functions are so performed by the organization described in subclause (I).

**(III)** For purposes of this clause, the term "related organizations" has the same meaning as the term "related persons" when used in section 1033.17(b)(1).

**(b)  Taxability of Beneficiary.--**

**(1)  In General.--**  The amount actually distributed or made available to any participant or beneficiary by any such trusts shall be taxable to such participant or beneficiary in the taxable year in which it is so distributed or made available under Section 1031.0(b)(11)(A), as if it were an annuity whose price or consideration are the amounts contributed by the participant, except for those amounts contributed by the participant on the basis of a cash or deferred contributions arrangement under subsection (e). If the total benefits under such trust with respect to any participant are paid to the participant or his/her beneficiary within a single taxable year of the latter due to the participant's separation from service for any reason, or the termination of the plan (hereinafter referred to as "total distribution"), the amount of such distribution, in the amount which exceeds the amount contributed by the participant, for which he/she has already paid taxes shall be treated as long-term capital gains subject to a twenty percent (20%) rate. The preceding notwithstanding, in the case of total distributions made after January 30, 2006, by a trust which is a part of a stock bonus, pension, profit-sharing or employee stock ownership plan, if--

**(A)**  The trust is organized under the laws of the Government of Puerto Rico or has a trustee resident of Puerto Rico and uses said trustee as paying agent; and

**(B)**  At least ten percent (10%) of the total assets of the trust attributable to the participants residents of Puerto Rico, computed on the basis of the average daily balance of the investments of the trust on the plan year during which the distribution is made and during each of the two plan years that precede the date of the distribution, have been invested in registered investment companies organized under the laws of Puerto Rico and subject to taxation under Section 1112.01 of the Code, or any other property which through regulations or circular letter the Secretary qualifies as property located in Puerto Rico, then the amount of such distribution in excess of the amount contributed by the participant for which he/she has already paid taxes shall be treated long-term capital gains subject to a ten percent (10%) rate. In the case of defined contribution plans whereby a separate account is maintained for each participant or beneficiary, the requirement for investment in "property located in Puerto Rico" may be met related to the assets accredited to the account of the participant or beneficiary. In the case of the transfer of a qualified plan under subsection (a) of this section (the transferor plan) to another qualified plan under subsection (a) of this section, the requirement for investment in "property located in Puerto Rico" of this subparagraph (B) shall be met with respect to the transferor plan taking into account the period during which the transferor plan, or the account of the participant in the transferor plan, met the investment requirement of this subparagraph (B). The Secretary may, through regulations, circular letter, administrative determination or final agreement, provide the manner in which the requirement for investment in Puerto Rico shall be met.

**(2)  Exception and Special Rule.--**

**(A)**  The provisions of paragraph (1) of this subsection shall not apply to total or partial distributions made after the participant's separation from service, paid or distributed from a qualified trust to a participant or beneficiary if the total amount received, to the extent it exceeds the amount contributed by the participant, for which he/she has already paid taxes, is distributed to an individual retirement account or annuity under the provisions of Section 1081.02, to a nondeductible individual retirement account or to a qualified retirement plan under the provisions of this section for the benefit of said participant or beneficiary not later than sixty (60) days after said payment or distribution has been received. In the case of a transfer to a nondeductible individual retirement account, the exception to which this paragraph refers shall only apply to those contributions described in Section 1081.03(d)(5)(A). The preceding notwithstanding, rollovers to

nondeductible individual retirement accounts shall be subject to taxation as provided in Section 1081.03(d)(5) and, for purposes of this paragraph, it shall be considered that the requirements of the same have been met if a contribution is made to the nondeductible individual retirement account in an amount equal to the total amount received from the qualified trust by the participant or beneficiary minus the contribution provided in said Section 1081.03(d)(5) that has been withheld as provided therein.

**(B)** If a total distribution as described in paragraph (1) of this subsection includes employer securities, that portion of the total distribution which consists of employer securities shall be excluded from the total distribution for purpose of computing the tax provided in paragraph (1) of this subsection. To determine profits or losses in the future disposition of these securities, the base of the distributed employer securities shall be zero, increased by the amount contributed by the participant for which he/she has already paid taxes and that has not been taken into consideration under the preceding paragraph (1) of this subsection when determining the taxation of other trust distributions. The terms "employer securities" and "controlled group" shall have the same meaning provided in paragraph (2) of subsection (h) of this section. The withholding agent shall not be required to make the withholding required by paragraph (3) of subsection (b) of this section on that portion of the total distribution consisting of employer securities.

**(3) Requirement to Deduct and Withhold.--**

**(A) Total Distributions.--** Any person, acting in any capacity, who makes total distributions payable with respect to any participant or beneficiary shall deduct and withhold from said distributions an amount equal to twenty percent (20%) of the amount thereof in excess of the amounts contributed by the participant to the plan for which he/she has already paid taxes. This deduction and withholding shall be of ten percent (10%) if the trust meets the requirements provided in subparagraphs (A) and (B) of paragraph (1) of this subsection. The employer whose employees participate in the plan or the administrator of the plan shall certify to the person making the distributions of the trust that the requirement of investment in "property located in Puerto Rico" has been met. Once the certification issued by the employer is received, the person making the distributions of the trust shall not be liable for the payment of taxes, interest, or penalties in case this requirement has not been met, but shall be liable for deducting and withholding the ten percent (10%).

**(B) Other Distributions.--** Any person, acting in any capacity, who makes distributions other than total distributions and loans to participants payable with respect to any participant or beneficiary, such as partial distributions made after the participant's separation from service and withdrawals made before separation from service, shall deduct and withhold from said distributions or payments an amount equal to ten percent (10%) of the total amount thereof in excess of the amounts contributed by the participant to the plan for which he/she has already paid taxes.

**(4) Duty to Pay or Deposit Deducted or Withheld Taxes.--** Any person required to deduct and withhold any tax pursuant to the provisions of paragraph (3), and to pay over any tax to the Secretary shall pay the amount of the tax thus deducted and withheld to the Puerto Rico Internal Revenue Collection Offices of the Department of the Treasury, or deposit it in any of the banking institutions designated as the depositary of public funds, which have been authorized by the Secretary to receive said tax. The tax shall be paid or deposited not later than the fifteenth (15th) day of the month following the date on which the distribution was made.

**(5) Tax Liability.--** Any person required to deduct and withhold any tax pursuant to the provisions of paragraph (3), shall be liable to the Secretary for the payment of the tax and shall not be liable to any other person for the amount of any such payment.

**(6) Tax Return.--** Any person required to deduct and withhold any tax pursuant to the provisions of paragraph (3), shall file a return with respect thereto, not later than February 28 of the following year. Said return shall be filed with the Secretary and shall contain such information and be prepared in such manner as prescribed by the Secretary through regulations. If the person who makes the distribution or

payment fails to file the tax return as required in this paragraph, he/she shall be subject to the penalty provided in Subtitle F.

**(7) Failure to Withhold.--** If the withholding agent, in violation of the provisions of paragraph (3), fails to make the withholding under said paragraph, the amount that should have been deducted and withheld (unless the recipient of the eligible distribution pays the tax to the Secretary) shall be collected from the withholding agent following the same procedure that would be used if it were a tax owed by the withholding agent.

**(8) Penalty.--** In the event that any person fails to deposit the taxes deducted and withheld pursuant to paragraph (3), within the term prescribed by law, a penalty of two percent (2%) of the amount of the insufficiency shall be imposed on said person if the omission is for thirty (30) days or less, and two percent (2%) for each period or fraction of the additional thirty (30)-day period while the omission subsists, without exceeding a total of twenty-four percent (24%). For purposes of this paragraph, the term "insufficiency" means the excess of the amount of the tax that should have been deposited on the amount thereof, if any, that was deposited on or before the date prescribed therefor. For purposes of this paragraph, the omission shall not be deemed as continued after the date on which the tax is paid.

**(9) Temporary Provisions.--** Any distribution or distributions originating from such trusts, only by reason of separation from the service, paid between May 16, 2006, and December 31, 2006, or any undistributed amount accrued from said trusts on which, within the same period, the taxpayer chooses to pay taxes in advance, shall be subject to a special five percent(5%) tax rate in lieu of any tax imposed by the Code or any subsequent similar law. The preceding notwithstanding, and subject to the additional considerations or requirements stated further, said distributions shall be subject to all other provisions of this subsection.

**(A)  Additional Considerations and Requirements.--**

**(i)**  The special five percent (5%) tax shall apply to the amount distributed in excess of the amount contributed by the participant for which he/she has already paid taxes. Likewise, the participant or beneficiary may pay in advance the special tax on the total amount deposited or accrued, or part thereof, which is in excess of the amount contributed for which the participant has already paid taxes. The amounts on which said taxes have been paid in advance, but that are distributed after the payment of said taxes, shall not be subject to the requirement that the distribution be only made by reason of separation from service.

**(ii)**  The basis of the participant or beneficiary in said trusts shall increase by the amount for which the taxpayer chose to pay taxes in advance pursuant to the provisions of this paragraph, which shall include the amounts that the participant and/or employee decides to withdraw, if any, in order to pay the special tax provided in this paragraph, which shall not have the effect of disqualifying said distribution. Such partial distributions shall be subject to the rules and limitations applicable to said trust and shall not be available for trusts covered under subsection (h) of Section 1081.01 of the Code. Likewise, the partial amounts thus distributed shall not be subject to taxation.

**(iii)**  In the case of taxes paid in advance by the participant or beneficiary pursuant to this paragraph, but distributed after payment of such tax, shall not include the amounts accrued in said trusts after the aforementioned payment. At the time of their distribution, said amounts, as well as any amount accrued before their payment and for which taxes have not been paid in advance, shall pay taxes pursuant to paragraph (1) of this subsection.

**(A)  Option to Pay in Advance Taxes on Undistributed Amounts.--**  The option to pay taxes in advance shall be made within the term provided in paragraph (9) of this subsection, upon completing the form provided for such purposes by the Secretary. The tax shall be paid at the Internal Revenue Collection Centers of the Department of the Treasury of Puerto Rico.

**(B)  Requirement to Deduct and Withhold.--**

2011 PR H.B. 3070

(i)  Any person, acting in any capacity, who makes total distributions payable with respect to any participant or beneficiary by reason of separation from service during the period specified in paragraph (9) of this subsection, shall deduct and withhold from said distributions an amount equal to five percent (5%) of the amounts thereof in excess of the amounts paid by the participant of the plan for which he/she has already paid taxes.

(ii)  Any person required to deduct and withhold the five percent (5%) tax pursuant to clause (i), shall be subject to paragraphs (4), (5), (6), (7), and (8) of this subsection, except that the deposit of the tax deducted and withheld shall be made only in the Internal Revenue Collection Centers of the Department of the Treasury.

**(10)**  The employer who maintains or sponsors the plan under which the trust is created shall be severally liable for failure to meet the requirement of the withholding or paying agent established herein.

**(c)  Treatment of Beneficiaries of a Trust Not Exempt Under Subsection(a).--**  Contributions to a trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt under subsection (a), shall be included in the gross income of an employee for the taxable year in which the contribution is made to the trust in the case of an employee whose beneficial interest in such contribution is nonforfeitable at the time the contribution is made.

**(d)  Cash or Deferred Contribution Arrangement.--**

**(1)  General Rule.--**  A profit-sharing plan or a stock bonus plan shall not be considered as not satisfying the requirements of subsection (a) merely because the plan includes a qualified cash or deferred contribution arrangement.

**(2)  Qualified Cash or Deferred Contribution Arrangement.--**  A qualified cash or deferred contribution arrangement is any arrangement which is part of a profit-sharing plan or stock bonus plan which meets the requirements of subsection (a) of this section and:

**(A)**  Under which a covered employee may elect to have the employer make payments as contributions to a trust under the plan on behalf of the employee or to the employee directly in cash.

**(B)**  Under which amounts held by the trust which are attributable to employer contributions made according to the employee's election may not be distributable to participants or other beneficiaries earlier than:

(i)  separation from service, death, or disability;

(ii)  termination of the plan without the establishment of a successor plan;

(iii)  the date of the sale by a corporation of substantially all of the assets used by such corporation in its trade or business with respect to an employee who continues employment with the corporation acquiring such assets;

(iv)  the date of sale by a corporation of its shares in a subsidiary when the employee continues his/her employment with such subsidiary;

(v)  reaching the age of fifty-nine and a half (59 1/2), or

(vi)  a case of extreme economic hardship, and

(vii)  the amounts shall not be distributable merely by reason of the completion of a stated period of participation or the lapse of a fixed number of years, and

**(C)**  which provides that an employee's right to his/her accrued benefit derived from employer contributions to the trust according to the election of the employee is nonforfeitable, and

**(D)**  which does not require. as a condition to participate in the arrangement, that an employee complete more than one (1) year of service with the employer.

**(3)  Application of Participation and Discrimination Standards.--**

**(A)**  A cash or deferred contribution agreement shall not be treated as a qualified cash or deferred contribution arrangement unless:

**(i)**   those employees eligible to benefit under the arrangement satisfy the provisions of subsection (a)(3), and

**(ii)**  the actual deferral percentage for highly compensated employees as such term is defined in paragraph (E)(iii) for any year bears a relationship to the actual deferral percentage of all other eligible employees for the taxable plan year which meets either of the following tests:

**(I)**  The actual deferral percentage for the group of highly compensated employees is not more than the actual deferral percentage of all other eligible employees multiplied by one point twenty-five (1.25).

**(II)**  The excess of the actual deferral percentage for the group of highly compensated employees over that of all other eligible employees is not more than two (2) percentage points and the actual deferral percentage for the group of highly compensated employees is not more than the actual deferral percentage of all other eligible employees multiplied by two (2).

If two (2) or more plans which include cash or deferred contribution agreements are considered as one plan for purposes of subsections (a)(3) and (4), the cash or deferred contribution arrangements included in such plans shall be treated as one arrangement for purposes of this clause.

If any highly compensated employee is a participant under two (2) or more cash or deferred contribution arrangements of the employer, for purposes of determining the deferral percentage with respect to such employee, all such cash or deferred contribution arrangements shall be treated as one single arrangement.

**(B)**  For purposes of paragraph (A), the actual deferral percentage for a specified group of employees for the taxable plan year shall be the average of the ratios calculated separately for each employee in such group, of:

**(i)**  the amount of employer contributions actually paid over to the trust on behalf of each of such employees, for such taxable plan year with

**(ii)**  the employee's compensation for such plan year.

**(C)**  A cash or deferred agreement shall be treated as meeting the requirements of subsection (a)(4) with respect to contributions, if the requirements of paragraph (A)(ii) are met.

**(D)**  For purposes of paragraph (B), the employer contributions paid on behalf of any employee:

**(i)**  shall include any employer contribution made according to the employee's election under paragraph (2), and

**(ii)**  under such rules and regulations as the Secretary may prescribe, may, at the election of the employer, include:

**(I)**  matching contributions as defined in subparagraph (E)(i), which meet the requirements of paragraphs (2)(B) and (C), and

**(II)**  qualified nonelective contributions (within the meaning of subparagraph (E)(ii)).

**(E)  Definitions.--**  For purposes of this section--

**(i)  Matching Contributions.--**  The term "matching contributions" means--

**(I)**   any employer contribution to the plan on behalf of an employee, to match the contributions made by such employee, and

(II)  any employer contribution made to the plan on behalf of an employee, on account of an employee's elective deferral.

(ii)  **Qualified Nonelective Contributions.--**   The term "qualified nonelective contributions" means any employer contribution, other than a matching contribution, with respect to which--

(I)  the employee may not elect to have the contribution paid to him/her in cash instead of being contributed to the plan, and

(II)  the requirements of clause (e)(2)(B) and (C) are met.

(iii)  **Highly Compensated Employees.--**   For purposes of this subsection, the term "highly compensated employees" means:

(I)  an official,

(II)  a stockholder who owns more than five percent (5%) of the voting stock or of the total value of all the classes of employer securities,

(III)  an employee who, for the preceding taxable year, had a compensation from the employer in excess of one hundred ten thousand dollars ($ 110,000). However, when a qualified plan under subsection (a) of this Section is duly qualified by the United States Internal Revenue Service, in lieu of the provisions of this subclause, the provisions of Section 414(q)(1)(B) of the United States Internal Revenue Code of 1986, as amended, shall apply, or

(IV)  the spouse or dependent (within the definition of Section 1033.18(c)(1)) of an individual described in subclauses (I), (II), or (III).

**(4)  Other Requirements.--**

(A)  **Benefits Other Than Matching Contributions Shall Not be Considered Under the Conditions for the Election to Defer.--**   A cash or deferred contribution arrangement of any employer shall not be treated as a qualified cash or deferred contribution arrangement, if any other benefit provided by such employer is conditioned, directly or indirectly, on the employee electing to have the employer make or not make contributions under the arrangement, in lieu of receiving cash. The preceding sentence shall not apply to any matching contribution made by reason of such an election.

(B)  **Non-eligibility of the State and Municipal Governments.--**   A cash or deferred contribution arrangement shall not be treated as a qualified cash or deferred contribution arrangement if it is part of a plan maintained by the Legislative Assembly of Puerto Rico, the Administration of the Capital City, municipalities and agencies, instrumentalities and public corporations of the government of Puerto Rico.

**(5)  Contributions to the Plan.--**   Employer contributions made on behalf of an employee to a trust that is a part of a cash or deferred contribution arrangement, shall not be treated as distributable or available to the employee, nor as contributions made by the employee to the trust, merely because the agreement includes provisions by which the employee may elect whether the contributions shall be made to the trust or received in cash.

**(6)  Excess Contributions.--**

(A)  **In General.--**   A cash or deferred contribution arrangement shall not be treated as failing to meet the requirements of clause (3)(A)(ii) for any taxable plan year if, before the close of the following taxable plan year--

(i)  the amount of the excess contributions for such taxable plan year and any income allocable to such contributions is distributed, or

**(ii)** to the extent provided in regulations, the employee elects to treat the amount of excess contributions as an amount distributed to the employee and then contributed by the employee to the plan.

Any distribution of excess contributions and income attributable to such excess contribution may be made without regard to any other provision of law.

**(B)  Excess Contributions.--**  For purposes of subparagraph (A), the term "excess contributions" means, with respect to any taxable year of the plan, the excess of:

**(i)**  the aggregate amount of employer contributions actually paid to the trust on behalf of highly compensated employees for such taxable plan year over

**(ii)**  the maximum amount of such contributions permitted under the limitations of clause (3)(A)(ii), determined by reducing the contributions made on behalf of highly compensated employees in order of the actual deferral percentages beginning with the highest of such percentages.

**(C)  Method of Distributing Excess Contributions.--**  Any distribution of the excess contributions for any taxable plan year shall be made to highly compensated employees on the basis of their respective portion of excess contributions attributable to each of such employees.

**(D)  Imposition of Tax.--**  If a plan does not adjust (through distributions or any other method provided by the Secretary through regulations, circular letter, or administrative determination of a general nature) the excess contributions not later than the last day provided by this Subtitle to file the income tax return of the employer that maintains or sponsors the plan of which the trust is a part, including any extension granted by the Secretary to file the same, for the taxable year of the employer during which the excess contributions were made, a contribution equal to ten percent (10%) of the unadjusted excess contributions shall be imposed to such employer.

**(7)  Limitations on Cash or Deferred Contributions.--**

**(A)**  Cash or deferred contributions with regard to which the employee has exercised the option provided in paragraph (2)(A) for any taxable year shall not exceed the amounts stated hereinbelow:

| Taxable year starting on | Amount |
|---|---|
| January 1, 2011 | $ 10,000 |
| January 1, 2012 | $ 13,000 |
| January 1, 2013 | $ 15,000 |

If the employee participates in two (2) or more plans, said plans shall be treated as if they were one for purposes of determining the amount of the preceding limitation. However, in the case of an employee of the Federal Government, the limitation provided in Section 402(g) of the United States Internal Revenue Code of 1986, as amended, shall apply, in lieu of the limitation provided in this subparagraph.

**(B)  Treatment of Contributions in Excess of the Limitations Established Under Paragraphs (6)(A) or (7)(A) of this Subsection.--**  Any cash or deferred payment in excess of the limit established in clauses (6)(A) or (7)(A), for any taxable year, shall be included in the gross income of the employee for such taxable year.

**(C)**  Employees participating in a plan containing a cash or deferred contribution arrangement, known as a "catch up", shall be allowed an additional contribution if, at the close of the plan year, the employee has attained the age of fifty (50). The additional contribution shall not exceed the amounts indicated hereinbelow:

| Taxable year starting on | Contribution |
|---|---|
| January 1, 2011 | $ 1,000 |

2011 PR H.B. 3070

| Taxable year starting on | Contribution |
|---|---|
| After December 31, 2011 | $ 1,500 |

These amounts shall not affect the actual deferral percentage tests, itemized in paragraphs 3(A)(ii)(I) and (II), and paragraphs (3)(B)(i) and (ii). This additional contribution shall not be considered for purposes of the limitation established in subparagraph (A) for those cases in which a participant of a plan having a cash or deferred contribution arrangement also makes contributions to an individual retirement account.

These "catch up" contributions may receive matched contributions, as defined in paragraph (3)(E)(i) of this subsection.

**(e)  Definitions and Rules Related to Self-employed Individuals and Owner-employees.--**   For purposes of this section--

**(1)  Self-employed Individual Treated as Employee.--**

**(A)  In General.--**  The term "employee" includes, for any taxable year, an individual who is self-employed for said taxable year.

**(B)  Self-employed Individual.--**  The term "self-employed individual" means, with respect to any taxable year, an individual who had earned income for such year, as defined in paragraph (2). To the extent provided in the regulations prescribed by the Secretary, such term also includes, for any taxable year--

**(i)**  an individual who would be a self-employed individual within the meaning of the preceding sentence, but for the fact that the trade or business carried on by such individual did not have net profits for the taxable year, and

**(ii)**  an individual who has been a self-employed individual within the meaning of the preceding sentence, for any prior taxable year.

**(2)  Earned Income.--**

**(A)  In General.--**  The term "earned income" means the net earnings from self employment. Such net earnings shall be determined--

**(i)**  only with respect to a trade or business in which the personal services of the taxpayer are a material income-producing factor;

**(ii)**  without regard to items which are not included in gross income for purposes of this Subtitle and the deductions properly allocable to, or chargeable against such items, and

**(ii)**  with regard to the deductions allowed to a taxpayer under Section 1033.09.

**(B)**  For purposes of this subsection, the term "earned income" includes gains, other than any gains under any other provision of this Subtitle treated as gains from the sale or exchange of a capital asset, and net gains derived from the sale or other disposition of, or the transfer of any interest in, or the licensing of the use of property (other than good will) by an individual whose personal efforts created such property.

**(3)  Owner-employee.--**  The term "owner-employee" means an employee who--

**(A)**  owns the entire interest in an unincorporated business, or

**(B)**  in the case of a special partnership or corporation of individuals, is the partner or shareholder, as the case may be, who owns more than ten percent (10%) of either the capital or the profit interest in such partnership or corporation of individuals.

To the extent provided in regulations prescribed by the Secretary, the term "owner-employee" also means an individual who has been an "owner-employee" within the meaning of the preceding sentence.

**(4) Employer.--** An individual who owns the entire interest in an unincorporated business shall be treated as his/her own employer. A special partnership or corporation of individuals shall be treated as the employer of each partner or shareholder who is an employee within the meaning of paragraph (1).

**(5) Contributions on Behalf of an Owner-employee.--** The term "contribution on behalf of an owner-employee" includes, except as the context otherwise requires, a contribution under a plan--

   **(A)** by the employer for an owner-employee, and

   **(B)** by the owner-employee as an employee.

**(f) Additional Requirements for Qualification of Trusts and Plans Benefiting Owner-employees.--** A trust which is a part of a pension or profit-sharing plan and which provides contributions or benefits for employees, some or all of whom are owner-employees, shall constitute a qualified trust under this section only if, in addition to meeting the requirements of subsection (a), the plan and the trust which is a part of the plan meets the following requirements:

**(1)**

   **(A)** If the plan provides contributions or benefits for an owner-employee who controls, or for two (2) or more owner-employees who jointly control the trades or businesses with respect to which the plan is established, and who also control as owner-employee or as owner-employees, one or more of other trades or businesses, such plan and the plans established with respect to such other trades or businesses, when coalesced, shall constitute a single plan that meets the requirements of subsection (a) and of this subsection with respect to the employees of all such trades or businesses, including the trade or business with respect to which the plan intended to qualify under this section is established.

   **(B)** For purposes of subparagraph (A), an owner-employee, or two (2) or more owner-employees, shall be considered to control a trade or business if such owner-employee, or such two (2) or more owner-employees jointly--

      **(i)** Own the entire unincorporated business, or

      **(ii)** in the case of a special partnership or a corporation of individuals, own more than fifty percent (50%) of the capital or the profit interest in such partnership or corporation of individuals. For purposes of this subparagraph, an owner-employee, or two (2) or more owner-employees, shall be treated as owning any interest in a special partnership which is owned, directly or indirectly, by a special partnership that such owner-employee, or such two (2) or more owner-employees, are considered to control within the meaning of the preceding sentence.

**(2)** The plan does not provide contributions or benefits for any owner-employee who controls, or two (2) or more owner-employees who jointly control, as owner-employee or as owner-employees, any other trade or business, unless the employees of each trade or business which such owner-employee or owner-employees control are included in a plan that meets the requirements of subsection (a) and of this subsection, and provides contributions and benefits for employees that are not less favorable than contributions and benefits provided for owner-employees under the plan.

**(3)** Under the plan, the contributions or benefits on behalf of any owner-employee may be made only with respect to earned income by such owner-employee that is derived from the trade or business with respect to which such plan is established.

**(4)** Under the Plan--

   **(A)** contributions and benefits shall not be available for any owner-employee, unless such owner-employee opts to have him/herself included in the plan, and

   **(B)** no benefit in excess of the contributions made by an owner-employee shall be paid to such owner-employee, unless he/she becomes disabled, before attaining the age of fifty-nine and a half (59 1/2).

**(g) Definitions and Rules Applicable to Employee Stock Ownership Plans.--** For purposes of this section--

**(1) Employee Stock Ownership Plan.--**

**(A) In General.--** The term "employee stock ownership plan" means a defined contributions plan:

**(i)** that is a qualified stock bonus plan, or a combination of a qualified stock bonus plan and a cash contribution plan, qualified under subsection (a) of this section, designed to invest primarily in the employer securities that qualify under the definition of paragraph (2) of this subsection, and

**(ii)** that not less than twenty percent (20%) of the equity of the company shall be offered to investors through a recognized stock market, or a stock market of Puerto Rico as of July 1, 1998, no later than the third anniversary of the effective date of the employee stock ownership plan of the company or business. Provided, that the Secretary may authorize the extension of this three (3)-year term for up to one (1) additional year, when in his/her judgment it is justified. The provisions of this clause (ii) shall not be applicable to stock ownership plans established by a corporation with respect to the privatization of a program, service, or enterprise of the Government of Puerto Rico, or of a public corporation.

**(iii)** those otherwise defined in the regulations promulgated by the Secretary.

**(B) Additional Requirements.--** A plan shall not be treated as an employee stock ownership plan unless it meets the following requirements:

**(i)** If the employer securities are not tradable in an established market, each participant in the plan shall be entitled to require the employer to repurchase his/her stock, under a fair value formula, as provided in subsection (a)(10)(B) of this section. Provided, that the Commissioner of Financial Institutions shall be empowered to promulgate the form and manner in which the stock repurchase procedure shall be conducted.

**(ii)** The plan provides for the distribution of the account balance of the participant of the plan, should he/she so choose, to begin not later than one (1) year after the close of the year in which the participant separates from the service, whether for having reached the normal retirement age under the plan, disability, or death, or not later than one (1) year after the close of the fifth (5th) plan year in which the participant otherwise separates from service, except that the latter shall not apply if the participant is reemployed by the employer before distribution is required to begin, as provided under this clause. For purposes of this clause, the account balance of a participant shall not include any employer securities acquired with the proceeds of a loan described in Section 1033.09(a)(1)(G) until the close of the plan year in which said loan is repaid in full.

**(iii)** Unless the participant elects otherwise, the plan provides that the distribution of the participant's account balance shall be made in substantially equal periodic payments (but not less frequently than annually) over a period not greater than five (5) years, or in the case of a participant with an account balance of five hundred thousand dollars ($ 500,000), five (5) years plus one (1) additional year (but not more than five (5) additional years) for each one hundred thousand dollars ($ 100,000) or fraction thereof by which said balance exceeds five hundred thousand dollars ($ 500,000), whichever of these two (2) periods is greater.

**(iv)** A plan to which Section 1034.04(r) applies shall provide so that no portion of the assets of the plan attributable to (or allocable in lieu of) such employer securities acquired by the plan in a sale to which said Section 1034.04(r) applies, may be accrued (or allocated directly or indirectly under any employer plan meeting the requirements of subsection (a) of this Section):

**(I)** during the nonallocation period, for the benefit of any taxpayer who makes an election under Section 1034.04(r)(1) with regard to employer securities, or for the benefit of any individual who is related to the taxpayer, or

**(II)**  for the benefit of any other person who holds (after applying Section 1010.04(e)), without regards to subsection (e)(3)(A) of said section) more than twenty-five percent (25%) of any class of outstanding stock of the corporation that issued the employer securities or of any other corporation that issued the employer securities or of any other corporation that is a component member of the same controlled group of corporations to which said corporation belongs, or more than twenty-five percent (25%) of the total value of any class of outstanding stock from any of said corporations.

**(v)**  For purposes of clause (iv), an individual shall be deemed to be related to the taxpayer, if any of the following relationships exists between them:

**(I)**  Whole or half-blood brother or sister, spouse, ancestors or lineal descendants.

**(II)**  An individual and a corporation with more than fifty percent (50%) of the value of the issued stock, of which is owned directly or indirectly by or for such individual.

**(III)**  A grantor and a fiduciary of a trust.

**(IV)**  A fiduciary of a trust and the fiduciary of another trust, if the same person is the grantor of both trusts.

**(V)**  A fiduciary and a beneficiary of the same trust.

**(VI)**  A fiduciary of a trust and a beneficiary of another trust, if the same person is the grantor of both trusts.

**(VII)**  A fiduciary of a trust and a corporation more than fifty percent (50%) in value of the issued stock of which is owned directly or indirectly by or for the trust, or by or for a person who is a grantor of the trust.

**(VIII)**  A person and an organization to which Section 1101.01 (related to certain tax exempt educational and charitable organizations) applies, which is controlled directly or indirectly by said person or by members of his/her family.

**(vi)**  If a plan does not meet the requirements of clause (iv):

**(I)**  The plan shall be treated as having distributed to any person described therein the amount allocated to the account of said person in violation of the provisions therein, as of the date of said allocation;

**(II)**  the provisions of Section 1102.06 shall apply; and

**(III)**  the period for the assessment of any tax imposed under Section 1102.06 shall not expire before four (4) years counted from the first allocation of employer securities with regard to the sale to the plan to which Section 1034.04(r) applies, or the date on which the Secretary is notified of the noncompliance with the above, whichever date is later.

**(vii)**  For purposes of clause (iv), the provisions of subclause (I):

**(I)**  Shall not apply to any individual related to the taxpayer if said individual is a lineal descendant of the taxpayer and the total amount allocated to the benefit of all such lineal descendants during the nonallocation period does not exceed more than five percent (5%) of the employer securities (or the amounts allocated in lieu thereof) held by the plan, which are attributable to a sale to the plan by any person related to said descendants for being his/her brother or sister (whether whole or half-blood), spouse, or ancestor or lineal descendant, in a transaction to which Section 1034.04(r) applies.

**(II)**  A person shall be treated as failing to meet the twenty-five percent (25%) limitation established under clause (iv)(II) of this paragraph, if the person fails to meet said limitation at any time during the one (1) year period ending on the date of the sale to the plan of the qualified stock on the date in which the qualified stock is allocated to the participants in the plan.

**(viii)**  The term "Non-allocation Period" shall mean the period beginning on the date of the sale of the qualified stock and ending ten (10) years after the date of sale or the date of the plan allocation attributable to the final payment of the indebtedness incurred in connection with such sale, whichever date is later.

**(ix)**  If the employer holds any class of stock subject to registration under Section 12 of the Securities Exchange Act of 1934 or any class of stock that could be required to be registered if it were not for the exception provided in subsection (g)(2)(H) of said Section 12, or registrable under any similar provision pursuant to the "Uniform Securities Act" of Puerto Rico, each participant or beneficiary in the plan shall be entitled to instruct the plan on how to vote with regards to the employer's voting stock and which are allocated to the account of said participant or beneficiary.

**(C)**  Any corporation that fails to meet this requirement shall be subject to denial of the tax benefits granted in connection with this plan. In said case, the deductions claimed by the employer under the provisions of Section 1033.04(a)(1)(G) and (d) for contributions made to a trust that is part of an employee stock ownership plan and for the dividends paid in cash shall be denied and the taxable net income for said years shall be recomputed. The deficiency, if any, shall be computed from the year in which the deductions were claimed and shall be subject to the payment of interest, penalties, and surcharges, as applicable.

**(2) Employer Stock.--**

**(A)  In General.--**  The term "employer securities" means common stock issued by the employer (or by a corporation which is a member of the same controlled group), which is readily tradable on an established securities market.

**(B)  Special Rule When There is no Readily Tradable Common Stock.--**  If there is no common stock which meets the requirements of subparagraph (A), the term "employer securities" means common stock issued by the employer (or by a corporation that is a member of the same controlled group) having a combination of voting power and dividend rights equal to or in excess of:

**(i)**  that class of common stock of the employer (or of any other corporation of the same controlled group) with the greatest voting power, and

**(ii)**  that class of common stock of the employer (or of any other corporation of the same controlled group) having the greatest dividend right.

**(C)  Certain Preferred Stock Deemed as Employer Securities.--**  Noncallable preferred stock shall be treated as employer securities if said stock is convertible at any time into stock that meets the requirements of subparagraphs (A) or (B) (whichever is applicable), and if said conversion is at a conversion price as of the date of the acquisition by the employee stock ownership plan is reasonable. For purposes of this subparagraph, and pursuant to the regulations promulgated by the Secretary, preferred stock shall be treated as noncallable if, after the call in, there shall be a reasonable opportunity for a conversion that meets the requirements of this subparagraph.

**(D)  Application to Controlled Groups of Corporations.--**

**(i)**  For purposes of this paragraph, the term "controlled group of corporations" shall have the same meaning given to said term under Section 1010.04(a) (determined without regard to Section 1010.04(e)(3)(C)).

**(ii)**  For purposes of clause (i), if the common parent corporation owns directly stock possessing at least fifty percent (50%) of the voting power of all classes of voting stock and at least fifty percent (50%) of each class of nonvoting stock in a subsidiary (and all other corporations below it in the chain that would meet the eighty percent (80%) test of Section 1010.04(a) if the first tier subsidiary were the parent corporation), they shall be treated as includible corporations in the controlled group of corporations.

**(iii)**   For purposes of clause (i), if the common parent corporation owns directly stock possessing all of the total combined voting power of all classes of stock and all the nonvoting stock in a first tier subsidiary, and if said subsidiary owns directly stock possessing at least fifty percent (50%) of the total combined voting power of all classes of stock and at least fifty percent (50%) of each class of nonvoting stock in a second tier subsidiary of the common parent corporation, such second tier subsidiary (and all other corporations below it in the chain that could meet the eighty percent (80%) test of Section 1010.04(e) if the second tier subsidiary were the common parent corporation) they shall be treated as includible corporations in the controlled group of corporations.

**Section 1081.02.-- Individual Retirement Accounts.--**

**(a)**   For purposes of this section, the term "Individual Retirement Account" shall mean a trust created or organized under the laws of the Government of Puerto Rico for the exclusive benefit of an individual or his/her beneficiaries, or the share of the individual for his/her exclusive benefit or that of his/her beneficiaries in a trust created or organized under the laws of the Government of Puerto Rico, and whose governing instrument states that the participants shall be those individuals who, through a contract or request to such effect avail themselves of the provisions of said trust, provided that the instrument creating the trust meets the following requirements:

**(1)**   That, except in the case of a rollover, described in subsection (d)(4), every contribution to the fund shall be in cash and not exceed the amount allowed as a deduction pursuant to Section 1033.15(a)(8), per taxable year on behalf of any individual.

**(2)**   That the fund be administered by a bank, savings and loan association, savings bank, securities brokerage house, trust companies, insurance companies, federations of credit and savings unions, credit and savings unions, and life insurance cooperatives, which demonstrates to the satisfaction of the Commissioner of Financial Institutions that the system whereby the trust shall be administered shall be consistent with the requirements of this section. The federations of credit and savings cooperatives and the credit and savings cooperatives which this subsection refers to include both federal and local ones the depositor accounts of which are secured by the Credit and Savings Cooperatives' Shares and Deposits Fund, or pursuant to the provisions of Act No. 99 of June 4, 1980, of the Government of Puerto Rico, or insured by the National Credit Union Administration of the Federal Government, as provided by the Federal Credit Union Act (P.L. 86-354, *12 U.S.C. § 1751),* whichever the case may be.

**(3)**

**(A)**   That thirty-four percent (34%) or more of the contributions received pursuant to paragraph (1) of subsection (a) and paragraph (4) of subsection (d) of this Section, and in paragraph (2) of subsection (b) of Section 1081.01, shall be invested in obligations of the Government of Puerto Rico or any of its instrumentalities or political subdivisions, or in mortgage loans constituted for the financing of construction or the acquisition of residential properties in Puerto Rico, or in loans enabled to special employee-owned corporations, their members or stockholders in accordance with the purposes established in Section 1031.02(a)(3)(L) and (M) of this Subtitle.

**(B)**   That not more than sixty-six percent (66%) of the contributions received pursuant to paragraph (1) of subsection (a) and paragraph (4) of subsection (d) of this Section, and in paragraph (2) of subsection (b) of Section 1081.01, shall be invested in general assets in Puerto Rico, pursuant to the regulations that to these effects shall be promulgated by the Commissioner of Financial Institutions. For purposes of this subsection, the stock of domestic corporations registered in the capital stock index of Puerto Rico of the Government Development Bank for Puerto Rico shall be deemed to be general assets in Puerto Rico.

**(C)**   Up to thirty-three percent (33%) of the contributions received pursuant to paragraph (1) of subsection (a) and paragraph (4) of subsection (d) of this Section, and in paragraph (2) of subsection (b) of Section 1081.01, shall be invested in assets in the United States, including capital

stock and investment grade assets, pursuant to the regulations to be promulgated by the Commissioner of Financial Institutions.

**(D)** A trustee who invests in stock of an investment company organized and authorized to operate as such under the Investment Companies Act of Puerto Rico shall rate, with respect to said investment, with the investment requirements established in the preceding paragraphs (A), (B) and (C), provided that the product of said investment by the investment company is designated by said company to be invested according to said subsections and that said company meets all the requirements of the regulations to be adopted by the Commissioner pursuant to the authority conferred in the same. A bank or institution authorized to do trust business in Puerto Rico may invest the funds of their individual retirement accounts through one or several common investment funds as authorized by this Code.

**(E)** The trustees shall meet the investment requirements of the preceding paragraphs (A), (B) and (C) if they deposit the income generated by the individual retirement accounts in the institutions described in paragraph (2) of subsection (a) which, in turn, invest said income as required by paragraphs (A), (B) and (C).

**(F)** The income derived from the securities described in the preceding paragraphs (A), (B) and (C) shall be reinvested in any of the assets described under the subsection corresponding to the asset that generated said income.

**(4)** That the interest of an individual in the balance of his/her account is irrevocable and non-transferable.

**(5)** That the assets of said trust shall be kept in a common trust or in a common investment fund for these purposes, but separate accounting shall be kept for each trust.

**(6)** That the entire interest of the owner is distributed on or before the close of the taxable year in which he/she attains the age of seventy-five (75), or shall be distributed according to the regulations approved by the Secretary to such effect, which shall prescribe for such interest to be distributed during:

**(A)** the life of the owner or his/her life and that of his/her spouse;

**(B)** a term that shall not extend beyond the life expectancy of the owner or the life expectancy of the owner and his/her spouse.

In the case of fixed-term individual retirement accounts for which the interest is available to be distributed within the term agreed at the time the individual retirement account is established, the participants shall be notified thirty (30) days before its expiration date by the entity managing the fund.

**(7)** That if the individual for whose benefit the trust is maintained dies before the entirety of his/her interest in the trust has been distributed, or when the distribution of the benefits of the trust would have begun for the benefit of the surviving spouse, in accordance with paragraph (6), and the latter dies before the totality of the benefits has been distributed to him/her, then the total undistributed interest shall be distributed within a period of five (5) years as of the date of the death of the trust's owner, or that of the surviving spouse. The preceding provision shall not be applicable if, prior to the death of the owner, the distribution of the benefits of the contract had been initiated on the basis of a fixed term, insofar as said term would have been allowed under paragraph (6) of this subsection.

**(8)** No part of the trust funds shall be invested in life insurance contracts.

**(b)** For purposes of this section, the term "individual retirement account" shall also mean an "individual retirement annuity." An "individual retirement annuity" means an annuity contract or an endowment contract, as determined by regulations promulgated by the Secretary, issued by a life insurance company or life insurance cooperative duly authorized by the of the Government of Puerto Rico to do business in Puerto Rico, and which meets the following requirements:

**(1)** That the contract is not transferable by the owner.

**(2)** That under the contract:

  **(A)** the premiums are not fixed;

  **(B)** the annual premium on behalf of any individual shall not exceed the amount allowable as a deduction pursuant to paragraph (8) of subsection (a) of Section 1033.15;

  **(C)** in the case of married individuals who file a joint return under Section 1061.01, the annual premium regarding each spouse shall not exceed the permissible amount as deduction pursuant to paragraph (8) of subsection (a) of Section 1033.15, and

  **(D)** any refund of premiums shall be applied before the close of the calendar year following the year of the refund toward the payment of future premiums or the purchase of additional benefits.

**(3)** The entire interest of the owner shall be distributed on or before the close of the taxable year in which he/she attains the age of seventy-five (75), or shall be distributed according to the regulations that the Secretary may prescribe to such effects--

  **(A)** during the life of the owner or the lives of said owner and his/her spouse, or

  **(B)** during a period not to extend beyond the life expectancy of such owner or the life expectancy of said owner and his/her spouse.

**(4)** If the owner dies before the entirety of his/her interest in the policy has been distributed, or if the distribution of the contract's benefits had begun for the benefit of his/her surviving spouse, as provided in the preceding paragraph (3), and the latter dies before the entirety of the benefits of the policy have been distributed to him/her, then the total undistributed interest shall be distributed within a period of five (5) years as of the date of the demise of the owner or of the surviving spouse. The preceding sentence shall not be applicable if, prior to the death of the owner, the distribution of the benefits of the policy had been initiated on the basis of a fixed term, insofar as said term is one of those allowed under the preceding paragraph (3).

**(5)** The interest of the owner is non-forfeitable, in whole or part.

**(6)** That one hundred percent (100%) of the premiums received as contributions described in subsections (a)(1) and (d)(4) of this section, and in subsection (b)(2) of Section 1081.01, be invested according to the provisions of Act No. 77 of June 19, 1957, as amended [26 L.P.R.A. §§ 101 et seq.], known as the "Insurance Code of Puerto Rico". Should the investment requirements provided in the Insurance Code of Puerto Rico not be complied with, it shall be necessary to comply with the investment requirements described below. That thirty-four percent (34%) or more of the premiums received as contributions described in subsections (a)(1) and (d)(4) of this section, and in subsection (b)(2) of Section 1081.01, shall be invested in obligations of the Government of Puerto Rico or of any of its instrumentalities or political subdivisions, or in mortgage loans executed for financing the construction or acquisition of residential properties. That not more than sixty-six percent (66%) of the premiums received as contributions described in subsections (a)(1) and (d)(4) of this section, and in subsection (b)(2) of Section 1081.01, shall be invested in general assets in Puerto Rico, pursuant to the regulations that to such effects shall be promulgated by the Insurance Commissioner together with the Commissioner of Financial Institutions. For these purposes, shares in domestic corporations registered in the Puerto Rico index of capital stock of the Government Development Bank for Puerto Rico shall be deemed general assets in Puerto Rico. Up to thirty-three percent (33%) of the premiums received as contributions described in subsections (a)(1) and (d)(4) of this section, and in subsection (b)(2) of Section 1081.01, may be invested in assets in the United States, including capital stock and investment grade assets, pursuant to the regulations to be promulgated by the Insurance Commissioner together with the Commissioner of Financial Institutions. The income derived from securities that qualify for the investment portfolios of thirty-four percent (34%) or more, up to sixty-six percent (66%) or up to thirty-three percent (33%) of the premiums, as described above, must be reinvested in any of the assets described in the portfolio corresponding to the asset that generated such an income. It shall be the

responsibility of both the Commissioner of Financial Institutions and the Insurance Commissioner of the Government of Puerto Rico to ensure faithful compliance with the provisions of this paragraph.

The term "individual retirement annuity" does not include an annuity contract for any taxable year of the owner in which he/she is disqualified on the application of subsection (e) or for any subsequent taxable year. For purposes of this subsection, no contract shall be treated as an endowment contract if it matures on or before the taxable year in which the individual in whose name such contract is purchased attains the age of seventy-five (75), and if it is not for the exclusive benefit of the individual in whose name it is purchased, or his/her beneficiaries, and only if the aggregate annual premiums under all such contracts do not exceed the amount allowed as deduction pursuant to Section 1033.15(a)(8).

**(c)  Accounts Established by Employers and Certain Employee Associations.--**  A trust created or organized under the laws of the Government of Puerto Rico by an employer for the exclusive benefit of his/her employees or their beneficiaries, or by an employee association, which may include owner-employee individuals, for the exclusive use of its members or their beneficiaries, shall be treated as an individual retirement account, as defined in subsection (a), but only if the written governing instrument creating the trust meets the following requirements:

**(1)**  The trust meets the requirements of subsection (a).

**(2)**  There is a separate accounting for the interest of each employee or member. The assets of the trust may be held in a common fund for the account of all individuals who have an interest in the trust.

**(d)  Distribution of Individual Retirement Account Assets.--**

**(1)  Taxing of payments or Distributions of an Individual Retirement Account.--**

**(A)**  Unless otherwise provided in this subsection, any amount paid or distributed out of an individual retirement account shall be included in gross retirement income by the payee or distributee in the taxable year during which the payment or distribution is received. The basis of any person in said account is zero, increased by the proportion of tax exempt income derived from these funds. In case a partial distribution is made, the basis, if any, shall be prorated.

**(B)**  That portion of any amount paid or distributed out of an individual retirement account that consists of the interest described in Section 1023.04 shall be subject to the provisions of said Section 1023.04 for the taxable year in which the owner or beneficiary of an individual retirement account actually receives such interest in total or partial distribution of an individual retirement account.

**(C)**

**(i)**  The owner or beneficiary of an individual retirement account who receives a total or partial distribution from an individual retirement account which does not constitute a distribution of interest described in Section 1023.04, nor a distribution of his/her contribution to the individual retirement account, and which consists of income from sources within Puerto Rico, as defined in clause (ii) of this paragraph, received by said individual retirement account, may opt to pay a tax on said amount, in lieu of any other tax imposed by this Subtitle, equal to seventeen percent (17%) for the taxable year in which the owner or beneficiary of the individual retirement account actually receives said total or partial distribution. If the owner or beneficiary of the individual retirement account opts to pay the seventeen percent (17%)-tax provided in this clause (i), the trustee of the individual retirement account shall be bound to deduct and withhold the seventeen percent (17%)-tax of the distributed amount. The trustee shall not be required to make the deduction and withholding provided herein if the distribution qualifies as a rollover under Section 1081.02(d)(4), and the rollover is made directly by the trustee to the trustee of another individual retirement account by the instructions of the owner or beneficiary thereof.

**(ii)**  The term "income from sources within Puerto Rico" shall be defined, for purposes of this section, according to the regulations, circular letter, or other administrative determination of

general application promulgated by the Secretary. In these regulations, circular letter, or other administrative determination of general application, the Secretary shall give similar treatment, for purposes of this paragraph, to the distributions on the shares in common or collective investment trusts maintained by a bank or trust company organized under the laws of Puerto Rico for the investment of common or collective investment trust funds of individual retirement accounts and the dividends distributed by registered investment companies.

**(D)**  Notwithstanding the provisions of paragraphs (B) and (C) of this subsection, the owner or beneficiary of an individual retirement account who receives a total or partial distribution from an individual retirement account which does not constitute a distribution of his/her contribution to the individual retirement account, may opt to pay a tax equal to ten percent (10%) on said account in lieu of any other contribution imposed by this Subtitle, for the taxable year in which the owner or beneficiary of the individual retirement account actually receives said total or partial distribution, provided that he/she is enjoying the retirement benefits offered by the Retirement System of the Government of Puerto Rico and its instrumentalities, the Judiciary Retirement System, and the Teachers' Retirement System. If the owner or beneficiary of the individual retirement account opts to pay the ten percent (10%)-tax provided in this paragraph, the trustee of the individual retirement account shall be required to deduct and withhold a ten percent (10%)-tax from the distributed amount.

**(E)**  Requirements to Avail Him/herself of the Seventeen Percent (17%) or Ten Percent (10%)-Tax.--The option to pay the seventeen percent (17%)-tax provided in Section 1023.04, or the ten percent (10%)-tax provided in subparagraph (D), may be made at any time before the trustee of the individual retirement account makes the payment or distribution out of the individual retirement account.

**(F)  Requirement to Pay or Deposit Deducted or Withheld Taxes.--**  Every trustee of an individual retirement account who is required to deduct and withhold the tax provided in subparagraph (C)(i), and in subparagraph (D), shall pay the amount of the tax thus deducted and withheld in the Internal Revenue Collection Centers of Puerto Rico, in the Department of the Treasury, or deposit it in any of the banking institutions designated as receivers of public funds authorized by the Secretary to receive such tax. The tax shall be paid or deposited on or before the tenth (10th) day of the month following the date the distribution was made.

**(G)  No Withholding.--**  If the trustee of the individual retirement account, in violation of the provisions of this subsection, fails to make the withholding referred to in subparagraph (C), the amount that should have been deducted and withheld (unless the receiver of the distribution pays the tax to the Secretary) shall be collected from the trustee of the individual retirement account following the same procedure and in the same way as if it were a tax owed by the trustee.

**(H)  Penalty.--**  For the provisions regarding penalties and surtaxes, see Subtitle F.

**(2)  Excess Contributions Returned Before the Due Date for Filing.--**  The provisions of paragraph (1) do not apply to the reimbursement of any contribution made during a taxable year to an individual retirement account to the extent that said contribution exceeds the amount allowable as a deduction under Section 1033.15(a)(8), if--

**(A)**  said reimbursement is received on or before the day prescribed by law (including extensions of time) for filing such individual's income tax return for such taxable year;

**(B)**  no deduction is allowed under Section 1033.15(a)(8) with respect to such excess contributions, and

**(C)**  such reimbursement is accompanied by the amount of the net income attributable to such excess contribution. Any net income described in this subparagraph shall be included as the individual's income for the taxable year in which such contribution was made. Any reimbursement during the taxable year that corresponds to interests as described in Section 1023.04 and to income described in subsection (d)(1)(C) of this Section, shall be taxed according to the provisions

of Section 1023.04 and subsection (d)(1)(C) of this Section, provided that the requirements of Section 1023.04 and Section 1081.02(d), respectively, are met.

**(3)  Transfer of an Individual Retirement Account Incident to Divorce.--**   The transfer of an individual's interest in an individual retirement account to his/her former spouse under a divorce decree or separation instrument shall not be considered as a taxable transfer made by such individual notwithstanding any other provision of this Subtitle, and such interest at the time of the transfer shall be treated as an individual retirement account of such spouse and not of such individual. Thereafter, such account, for purposes of this Subtitle, shall be treated as maintained for the benefit of such spouse.

**(4)  Rollover Contribution.--**   Any amount paid or distributed shall be treated as a rollover contribution under this paragraph if it meets the requirements of subparagraphs (A) and (B).

**(A)  In General.--**   The provisions of the preceding paragraph (1) shall not apply to any amount paid or distributed out of an individual retirement account to the individual for whose benefit the account is maintained if the total or partial amount received (including money or any other type of property) is paid to an individual retirement account (other than an endowment contract) or to a nondeductible individual retirement account for the benefit of such individual or to the Government of Puerto Rico Employees Retirement System, be it from an individual retirement account of the individual or an individual retirement account of his/her spouse, not later than sixty (60) days after having received said payment or distribution. The preceding notwithstanding, rollover contributions to nondeductible individual retirement accounts shall be subject to the taxes provided in Section 1081.04(d)(4) and, for purposes of this paragraph, it shall be deemed that the requirements of the same are met if an amount equal to the entire amount received from the individual retirement account reduced by the tax provided in said Section 1081.03(d)(4) that has been withheld as provided therein is paid into a nondeductible individual retirement account.

**(B)  Limitation.--**   The provisions of this paragraph shall not apply to any amount described in the preceding subparagraph (A), received by an individual from an individual retirement account, if at any time during the year preceding the day on which such amount was received, such individual received any other amount from an individual retirement account which was not includible in his/her gross income because of the application of this paragraph.

**(5)  Distribution of Annuity Contracts.--**   The provisions contained in the preceding paragraph (1) shall not apply to an annuity contract that meets the requirements of paragraphs (1), (3), (4) and (5) of subsection (b) and that is distributed from an individual retirement account.

**(6)  Distribution for the Purchase or Construction of a Residence.--**   The provisions of paragraph (1) shall not apply to any amount distributed from an individual retirement account which is used for the acquisition or construction of a property to be used as the first principal residence of the taxpayer, subject to the following conditions:

**(A)**   The taxpayer shall certify to the trustee of the individual retirement account that the amount which is distributed shall be used for the acquisition or construction of his/her first principal residence and that, before the date of the distribution, such individual has not been the owner of a residential property which he/she has utilized as his/her principal residence;

**(B)**   the entire amount received shall be used for that purpose not later than fifteen (15) days after having received such distribution, and

**(C)**   in the deed of purchase there shall be recorded the cost of purchase of the residence that has been paid out of funds of the individual retirement account, as well as the number of such account.

The amount distributed in accordance with this paragraph shall not be treated as a distribution subject to taxation in the year in which it is received, but rather its taxation is deferred. In such case, the distribution whose treatment as income has been deferred, shall be treated as ordinary income in the sale or other disposition of the residence thus acquired or built, regardless of whether such disposition has resulted in gain or loss and of the provisions of Sections 1031.02(a)(16) and 1031.02(m).

For purposes of this paragraph, the term "first principal residence" means the first property owned by an individual that is used by him/her as his/her principal residence.

**(e) Tax Treatment of Individual Retirement Accounts.--**

**(1) Tax Exemption.--** Any individual retirement account shall be exempt from taxation under this Subtitle unless such account has ceased to be an individual retirement account by reason of paragraph (2) or (3) of this subsection. Notwithstanding the preceding sentence, any such account shall be subject to the taxes imposed by Section 1102.01(a).

**(2) Loss of the Exemption of Account Where the Individual Engages in Prohibited Transactions.--**

**(A) In General.--** If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his/her beneficiary engages in any "prohibited transaction," as this term is defined in Section 1083.02(f)(2)(B), with respect to said account, such account shall cease to be an individual retirement account as of the first day of such taxable year, and for purposes of this paragraph:

**(i)** The individual for whose benefit any account was established is treated as the owner of such account, and

**(ii)** the separate account for any individual within an individual retirement account maintained by an employer or employee association shall be treated as a separate individual retirement account.

**(B) Account Treated as Distributing all its Assets.--** In any case in which any account ceases to be an individual retirement account by reason of paragraph (A), it shall be treated, as of the first day of such taxable year, as if there were a distribution in an amount equal to the fair market value of all assets in the account on such date.

**(3) Effect of Pledging an Individual Retirement Account as Collateral.--**

**(A)** If, during any taxable year of the individual for whose benefit an individual retirement account is established, that individual uses the account, totally or partially, as collateral for a loan, the portion thus used shall be treated as distributed to such individual.

**(B)** If, during any taxable year, the owner of an individual retirement annuity borrows any money under or by use of such contract, the contract ceases to be an individual retirement account for purposes of Section 1033.15, as of the first day of such taxable year. Such owner shall include in his/her gross income for such year, an amount equal to the fair market value of such contract as of such first day of said year.

**(4) Withdrawal of Contributions and Closing of the Account.--** If, at any time during the first seven working days after opening an individual retirement account, the person or entity that opened the account decides not to continue it, said person or entity may withdraw any contribution made to the account and close it without the application of the provisions of this Section and Section 1033.15(a)(8).

**(f) Reports.--**

**(1)** The trustee of an individual retirement account created under the terms of subsection (a) and the life insurance company or cooperative that issues an endowment contract or an individual retirement annuity under the terms of subsection (b) shall make reports to the Secretary and to the individuals for whom the account, endowment contract or annuity is maintained. Such reports shall be made with respect to the contributions, distributions and such other matters as the Secretary may require through regulations. The reports required in accordance with this subsection shall be filed on such date and manner as required by said regulations.

**(2)** Any trustee or life insurance company or cooperative which, after being notified by the Secretary of any noncompliance with preceding paragraph (1), once again fails to comply with the same shall lose his/her eligibility to act as trustee with respect to any individual retirement account, as of the

determination of said noncompliance. The Secretary shall require the transfer of all individual retirement accounts administered by the disqualified trustee, company, or cooperative, to any other trustee to be selected by the participant. This change of trustee whereby the funds are transferred directly from the administration of a trustee authorized to accept individual retirement accounts to another, without there being any distribution whatsoever to the individual in whose benefit the account is maintained, shall not be treated as a payment, distribution, or reimbursement and shall not be subject to taxation or to the ten-percent (10%) penalty provided in subsection (g).

**(g) Penalties for Distributions Prior to Attaining the Age of Sixty (60).--**

**(1)**   Any amount distributed, or deemed to be distributed, in accordance with the provisions of this Section, before the beneficiary of the individual retirement account attains the age of sixty (60) shall be subject to a penalty of an amount equal to ten percent (10%) of the amount distributed and which is includable as income in said year. The preceding ten-percent (10%) penalty shall be withheld by the trustee and sent to the Secretary, in accordance with Section 1062.01.

**(2)** The provisions of preceding paragraph (1) shall not apply in the following situations:

**(A)**   In the case that the amount paid or distributed, or considered as distributed, pursuant to subsection (d) is attributed to a taxpayer who became disabled.

An individual shall be deemed to be disabled if he/she is incapable of being employed in any significant lucrative activity, due to a medically-determined disability, whether it be physical or mental, which is expected to have a long or indefinite duration or that may result in death. An individual shall not be deemed to be disabled unless he/she proves his/her disability in the form and manner required by the Secretary.

**(B)**   When the Secretary, through regulation to such effects, exempts a taxpayer who is forced to make withdrawals in advance due to the loss of his/her employment or the need of funds to cover the expenses of the university studies of his/her direct dependents.

**(C)**   In those cases in which the taxpayer withdraws funds for the purchase or construction of the first principal residence, subject to the provisions of subsection (d)(6) of this section.

**(D)**   In those cases in which the taxpayer withdraws funds for the repair or reconstruction of his/her principal residence that has been affected by fire, a hurricane, an earthquake, or other fortuitous cause; or when he/she withdraws funds to avoid the foreclosure of the mortgage, or default thereof, of his/her principal residence, including refinancing, due to loss of employment or a verifiable substantial reduction of income; subject to the presentation of evidence of such need, circumstance, and use, provided, that in this last case, and regarding refinancing to avoid default, the person may withdraw up to half of the funds deposited in each financial institution, or up to twenty thousand dollars ($ 20,000), whichever is greater.

**(E)**   In those cases in which the taxpayer withdraws up to the maximum amount of one thousand two hundred dollars ($ 1,200) for the acquisition or purchase of a computer for the enjoyment of a dependent to the second degree of consanguinity who is pursuing studies up to university level. This withdrawal may only be made once (1) every six (6) months.

**(F)**   In those cases in which the taxpayer withdraws the funds for the treatment of severe, chronic, degenerative, and terminal illness of any family member, up to the fourth degree of consanguinity and the second degree of affinity. For purposes of this section, a severe, chronic, degenerative, and terminal illness is a disease whose foreseeable effect, as certified by a physician, is the loss of life or the permanent physical disability of the patient.

**Section 1081.03.-- Individual Nondeductible Retirement Account.--**

**(a)   General Rule.--**   Except as otherwise provided in this Section, and as provided by regulations promulgated by the Secretary, a nondeductible individual retirement account shall be treated, for purposes

of this Subtitle, in the same manner as an individual retirement account under Section 1081.02, and shall be subject to the requirements provided in said Section.

**(b) Nondeductible Individual Retirement Account.--** For purposes of this Subtitle, the term "nondeductible individual retirement account" shall mean an individual retirement account that meets the definition and the requirements established in subsections (a), (b), or (c) of Section 1081.02, and which is designated as a nondeductible individual retirement account (as required by the Secretary) at the time of its establishment as a nondeductible individual retirement account. The designation of an individual retirement account as a nondeductible individual retirement account shall be made as provided by the Secretary.

**(c) Treatment of Contributions.--**

**(1) No Deduction Allowed.--** No deduction shall be allowed for contributions made to a nondeductible individual retirement account.

**(2) Contribution Limit.--** The aggregate amount of contributions for any taxable year to all nondeductible individual retirement accounts maintained for the benefit of an individual shall not exceed the excess (if any) of:

**(A)** the maximum amount allowable as a deduction under Section 1033.15(a)(8) with respect to such individual for such taxable year (computed without regard to subparagraph (D) of said Section 1033.15(a)(8), over

**(B)** the aggregate amount of contributions for such taxable year to all other individual retirement accounts (other than nondeductible individual retirement accounts) maintained for the benefit of the individual.

**(3) Contributions Permitted After Attaining the Age of Seventy-and-a-half (70 1/2).--** Contributions to nondeductible individual retirement accounts shall be allowed even after the individual for whom the account is maintained has attained the age of seventy and a half (70 1/2) years.

**(4) Mandatory Distribution Rules Not to Apply Before Death.--** The provisions of subsections (a)(6) and (b)(3) of Section 1081.02 shall not apply to any nondeductible individual retirement account.

**(5) Rollover Contributions.--**

**(A) In General.--** No rollover contribution shall be made to a nondeductible individual retirement account unless it is a qualified rollover contribution, as said term is defined in subsection (e) of this section.

**(B) Coordination with Maximum Amount of Contributions.--** A qualified rollover contribution shall not be taken into account for purposes of the limit provided in paragraph (2) of this subsection.

**(6) Time When Contribution is Made.--** For purposes of this section, a taxpayer shall be deemed to have made contributions to a nondeductible individual retirement account on the last day of the taxable year if the contribution is made on account of such taxable year and is made not later than the last day provided by this Subtitle for filing the income tax return of such taxable year, including extensions thereof granted by the Secretary.

**(d) Tax Treatment of Distributions.--** For purposes of this subtitle:

**(1) Exclusion.--** Any qualified distribution of a nondeductible individual retirement account shall not be includible in gross income and shall be exempt from taxation.

**(2) Qualified Distribution.--** For purposes of this section:

**(A) In General.--** The term "qualified distribution" means any payment or distribution:

**(i)** made on or after the date on which the taxpayer attains the age of sixty (60) years;

**(ii)** made to the beneficiary (or to the estate of the individual) on or after the death of the individual;

**(iii)** which is a qualified special purpose distribution, as said term is defined in paragraph (6) of this subsection.

**(B) Distributions of Excess Contributions and Earnings.--** The term "qualified distribution" shall not include any distribution of an excess contribution described under Section 1081.02(d)(2), and any amount of net income attributable to said excess contribution.

**(3) Nonqualified Distributions.--** Any distribution of a nondeductible individual retirement account other than a qualified distribution shall be subject to taxation pursuant to the provisions of Section 1081.02(d), and shall be subject to the penalties set forth in Section 1081.02(g) in the same manner as the distributions of individual retirement accounts described in Section 1081.02. For purposes of Section 1081.02(d)(1)(A), the basis of any person in the nondeductible individual retirement account shall be equal to the sum of:

**(A)** nondeductible contributions made to the account;

**(B)** qualified rollover contributions made to the account, and

**(C)** the income earned by the account exempt from income taxes.

**(4) Rollovers from an Individual Retirement Account to a Nondeductible Individual Retirement Account.--**

**(A) In General.--** Notwithstanding the provisions of Section 1081.02(d)(4), in the case of any distribution to which the provisions of this paragraph apply:

**(i)** The amount that would be includible as gross income under Section 1081.02(d) (without taking into account the provisions of Section 1081.02(d)(4)), shall be included as gross income; and, except as otherwise provided in clause (iii) of this subparagraph, the same shall be subject to taxation and to the withholdings provided in said Section 1081.02(d);

**(ii)** the provisions of Section 1081.02(g) shall not apply; and

**(iii)** any amount which may be included as gross income for a taxable year by reason of this subparagraph for any distribution made before July 1, 2003, shall be subject to a twelve-and-a-half-percent (12.5%) tax, in lieu of any other tax imposed by the Code.

For purposes of this paragraph, the total amount of the distribution includible as gross income under Section 1081.02(d) shall be equal to the total amount of the distribution less the basis attributable to said distribution pursuant to the provisions of Section 1081.02(d)(1)(A), increasing said basis, as it may apply, by the amount provided in Section 1081.06(a)(2)(A).

**(B) Distribution to Which Paragraph Applies.--** This paragraph shall apply to a distribution from an individual retirement account (other than a nondeductible individual retirement account) maintained for the benefit of an individual, which is contributed to a nondeductible individual retirement account as a qualified rollover contribution. However, the distributions of an individual retirement account that were subject to the special taxes imposed by Section 1081.06 shall not be subject to the taxes provided in subparagraph (A) of this paragraph.

**(C) Conversions.--** The conversion of an individual retirement account (other than a nondeductible individual retirement account) to a nondeductible individual retirement account shall be treated, for purposes of this paragraph, as a distribution to which this paragraph applies. However, the Secretary shall establish through regulations the application of the provisions of subparagraph (F) to this subparagraph.

**(D) Use of the Nondeductible Individual Retirement Account as Collateral.--**

**(i) Limit.--** An individual may use a nondeductible individual retirement account as collateral for a loan only if the entirety of the proceeds of the loan is used to pay the income tax imposed in a rollover to which the provisions of subparagraph (A)(iii) of this paragraph apply.

**(ii) Effect of Pledging a Nondeductible Individual Retirement Account as Collateral.--** Notwithstanding the provisions of Section 1081.02(e)(3), the use of a nondeductible individual retirement account as collateral shall not be treated as a distribution subject to taxation provided that the proceeds of the loan are used for the purpose stated in clause (i) of this subparagraph.

**(E) Additional Requirements of Information.--** The trustees of nondeductible individual retirement accounts and of individual retirement accounts other than nondeductible individual retirement accounts, or both, as the case may be, shall include in the reports referred to under subsection (f) of Section 1081.02, any additional information required by the Secretary to ensure that the amounts that should be included as part of the gross income under subparagraph (A) of this paragraph are thus included.

**(F)** Special Rules for the Contributions to Which the Twelve-and-a-Half-Percent (12.5%) Tax Applies.--In case of a qualified rollover contribution to a nondeductible individual retirement account of a distribution subject to the provisions of subparagraph (A)(iii) of this paragraph, the following rules shall apply:

**(i)** Requirement to Deduct and Withhold at the Source and Pay or Deposit the Tax Imposed by Subparagraph (A)(iii) of this Paragraph:

**(I) Requirement to Deduct and Withhold.--** Every individual retirement account trustee who makes distributions of individual retirement accounts subject to the tax established in clause (iii) of subparagraph (A) of this paragraph, shall deduct and withhold from said distributions an amount equal to twelve and a half percent (12.5%) of the amount thereof that constitutes gross income.

**(II) Requirement to Pay or Deposit Deducted and Withheld Taxes.--** Every trustee of an individual retirement account who is required to deduct and withhold a tax provided in subclause (I), shall pay the amount of the tax thus deducted and withheld pursuant to the provisions of Section 1081.02(d)(1)(E). Every trustee shall be responsible to the Secretary for the payment of said tax, and shall not be responsible to any other person for the amount of any payment thereof.

**(III) No Withholding.--** If the trustee of the individual retirement account, in violation of the provisions of this clause, fails to make the withholding referred to in subclause (I), the amount that should have been deducted and withheld (unless the receiver of the distribution pays the tax to the Secretary) shall be collected from the trustee of the individual retirement account following the same procedure and in the same way as if it were a tax owed by the trustee.

**(IV) Penalty.--** For the provisions related to the penalties applicable for failure to withhold or deposit the tax provided in subclause (I), see Subtitle F.

**(5)** Transfers of Distributions of an Employee Trust to a Nondeductible Individual Retirement Account:

**(A) In General.--** Notwithstanding the provisions of Section 1081.01(b)(2), a distribution that has been fully paid to or placed at the disposal of any participant, by an exempt trust under Section 1081.01, within only one (1) taxable year of the participant by reason of separation of service, which is contributed to a nondeductible individual retirement account as a qualified rollover contribution, shall be subject to taxation and the withholdings applicable thereto pursuant to the provisions of 1081.01(b).

**(B) Additional Requirements.--** The requirements and rules established under subparagraphs (E) and (F) of paragraph (4) of this subsection shall apply to the distributions covered by this paragraph.

**(6) Special Purpose Distribution.--** For purposes of this section, the term "special purpose distribution" means any distribution to which Section 1081.02(g)(2) applies.

**(7) Adjustments Before Due Date.--**

**(A) In General.--**   Except as provided by the Secretary, if, not later than the due date under this Subtitle for filing the income tax return for one particular taxable year, including any extension thereof granted by the Secretary, a taxpayer transfers in a trust-to-trust transfer any contribution to an individual retirement account made during such taxable year to any other individual retirement account, for purposes of this Subtitle, such contribution shall be treated as having been made to the transferee account (and not the transferor account).

**(B) Special Rules.--**

**(i) Transfer of Earnings.--**   Subparagraph (A) of this paragraph shall not apply to the transfer of any contribution unless said transfer is accompanied by any net income allocable to such contribution.

**(ii) No Deduction.--**   Subparagraph (A) of this paragraph shall apply to the transfer of any contribution only to the extent no deduction was allowed with respect to the contribution to the transferor account.

**(e) Qualified Rollover Contribution.--**   For purposes of this section, the term "qualified rollover contribution" means:

**(1)** A rollover contribution to a nondeductible individual retirement account from another nondeductible individual retirement account or individual retirement account other than a nondeductible individual retirement account, but only if said rollover contribution meets the requirements of Section 1081.02(d)(4). For purposes of Section 1081.02(d)(4)(B), there shall be disregarded any qualified rollover contribution from an individual retirement account (other than a nondeductible individual retirement account) to a nondeductible individual retirement account.

**(2)** A contribution by distributions of an exempt trust under the provisions of Section 1081.01(a), but only if said rollover contribution originates from a fully paid distribution within one (1) single taxable year of a participant by reason of separation of service, and if the rollover contribution meets the requirements of subsection (b)(2) of said section.

**(3)** A rollover contribution of the balance of the savings account of the participants in the Retirement Savings Accounts Program, created under the provisions of Act No. 447 of May 15, 1951, as amended, but only if said rollover contribution meets the requirements set forth in Section 3-109(B)(5) of said Act No. 447, *supra*.

For purposes of this subsection, and subject to the limitations of paragraphs (1) and (2), the qualified rollover contribution shall be equal to the amount paid or distributed out of an individual retirement account, a nondeductible individual retirement account, or a trust exempt under the provisions of Section 1081.01(a), reduced by the tax withheld pursuant to subsection (d)(4)(A) and subsection (d)(5)(A) of this section.

**Section 1081.04.-- Health Savings Accounts with a High Annual Deductible Health Plan.--**

**(a)** For purposes of the Code, a health savings account with a high annual deductible health plan shall be a plan that complies with the provisions of this section.

**(b) Limitations.--**

**(1) In General.--**   In the case of an individual who is an eligible individual for any month during the taxable year, there shall be allowed as a contribution for the taxable year an amount equal to the aggregate amount paid in cash during such taxable year by or on behalf of such individual to a health savings account of such individual. Provided, that said contribution by or for an individual for the taxable year shall not exceed the sum of the limitations set forth in paragraph (2) of this subsection.

**(2) Annual Limitation.--**   For purposes of this section, the contributions to a Health Savings Accounts with a qualified high deductible health plan shall be limited to the following limitations:

**(A)**  In the case of an individual who has an individual coverage under a high annual deductible health plan during the taxable year, the maximum annual contribution allowed shall be three thousand one hundred dollars ($ 3,100).

**(B)**  In the case of an eligible individual who has family coverage under a high annual deductible health plan during the taxable year, the maximum annual contribution allowed shall be six thousand two hundred dollars ($ 6,200).

**(C)**  Amounts deposited in a health savings accounts for each taxable year that exceed the limits established in this subsection, shall be deemed to be:

**(i)**  Income subject to taxation if such excess amounts were contributed by an employer for the benefit of an employee, as provided in Section 1031.02(a)(2)(D).

**(ii)**  In the case of individuals making direct contributions to a Health Savings Accounts, the amounts in excess to the limits set forth in this subsection shall not be deductible under Section 1033.15(a)(11) on additional deductions)

**(3)  Additional Contributions for Individuals Age Fifty-five (55) or Older.--**

**(A)  In General.--**  Any individual who has attained the age of fifty-five (55) before the close of the taxable year, the limitation established under subparagraphs (A) and (B) of paragraph (2) above, shall be increased by the additional contribution amount.

**(B)  Additional Contribution.--**  For purposes of this section, an additional contribution is the amount determined according to the following table:

| For the taxable year beginning in: | The additional contribution amount shall be: |
|---|---|
| 2009 | $ 500 |
| 2010 | $ 600 |
| 2011 | $ 700 |
| 2012 | $ 800 |
| 2013 | $ 900 |
| 2014 and thereafter | $ 1000 |

**(4)  Special Rule for Married Individuals.--**  In the case of married individuals, if either spouse has coverage under a family health insurance plan, both spouses shall be treated as having only family coverage.

**(5)  Deduction to Dependents not Allowed.--**  No contributions shall be allowed to any individual with respect to whom a deduction is allowable to another taxpayer for the taxable year beginning in the taxable year of said individual.

**(6)  Eligible Individuals Under the Federal Medicare Program.--**  The limitations in this subsection for any taxable year with respect to an individual shall be zero for each year said individual is entitled to the benefits under Title XVIII of the Social Security Act and for each month thereafter.

**(c)  Definitions and Special Rules.--**  For purposes of this section:

**(1)  Eligible Individual.--**

**(A)  In General.--**  For purposes of this section, the term "eligible individual" means, with respect to any year, any individual if--

**(i)**  Said individual is covered under a High Deductible Health Plan during the taxable year or during a consecutive term of twelve (12) months, including that part of the taxable year for which the contributions are made.

**(ii)**  such individual is not, while covered under a high deductible health plan, covered under any health plan:

**(I)**  which is not a High Deductible Health Plan, and

**(II)**  which provides coverage for any benefit covered under the High Deductible Health Plan.

**(iii)**  is not covered under Medicare or Tricare; or

**(iv)**  has not received medical benefits through the Department of Veteran Affairs (VA) during the past three (3) months; or

**(v)**  is not claimed as dependent in the income tax return of another person.

**(B)  Excluded Coverage.--**  Clause (ii) of subparagraph (A) shall not apply to:

**(i)**  Coverage for any benefit provided by permitted insurance, and

**(ii)**  coverage for accidents, disability, dental care, vision care, or long-term care, whether through insurance or otherwise.

**(2)  High Deductible Health Plan.--**

**(A)  In General.--**  The term "High Deductible Health Plan" means a health plan:

**(i)**  Which has an annual deductible that is not less than:

**(I)**  Five hundred dollars ($ 500) for individual coverage; and

**(II)**  One thousand dollars ($ 1,000) for family or couple coverage,

**(ii)**  Provided that the Secretary may modify the limitations set forth in clause (i) of this subparagraph through regulations.

**(B)  Exclusion of Certain Plans.--**  Said definition shall not include health plans if substantially all of their coverage is that coverage described in subparagraph (B) of paragraph (1) of this subsection.

**(C)  Deductible shall not Apply to Preventive Care.--**  A plan shall not fail to be treated as a High Deductible Health Plan by reason of failing to have a deductible for preventive care, to wit, care that tends to provide preventive care services for health conditions such as routine exams, immunizations pursuant to the protocols of the Department of Health, prenatal care, smoking cessation programs, obesity control, mammograms, prostate tests, and other similar tests, other than treatment for preexisting conditions or injuries. These services shall be subject to the corresponding copayment.

**(D)  Special Rules for Preferred Provider Organization Plans and Health Service Organization Plans.--**  In the case of a plan using a directory or network of preferred providers under contract with the plan or of a network of a health services organization under Chapter 19 of the Insurance Code of Puerto Rico, the annual deductible of said plan for services provided outside of said network of plan providers shall be different from the initial deductible of the High Deductible Health Plan. Disbursements paid to by the insured for services provided outside of the network of providers shall not treated as eligible expenses to be accrued to the initial deductible, these shall only be treated as eligible expenses, to the initial deductible of the plan, those established and underwritten as such by the insurance company.

**(3)  Permitted Insurance.--**  The term "permitted insurance" means:

**(A)**  Insurance if substantially all of the coverage provided under such insurance relates to:

**(i)** Liabilities incurred under the Workers Compensation Act;

**(ii)** tort liabilities;

**(iii)** expenses and liabilities relating to ownership or use of property, or

**(iv)** other similar liabilities as the Secretary may establish by regulations.

**(B)** Insurance for a specified disease or illness.

**(C)** Insurance paying a fixed amount per day (or other period) of hospitalization or covering high deductible amounts.

**(D) Family Coverage.--**  The term "family coverage" means any coverage other than individual coverage.

**(d) Health Savings Accounts.--**  For purposes of this section:

**(1) In General.--**  The term "health savings account" means an account created exclusively for the purpose of paying the qualified medical expenses of the account holder or beneficiary, but only if the insurance contract meets the following requirements:

**(A)** Except in the case of a direct contribution described in this section, no contribution shall be accepted:

**(i)** Unless it is in cash, or

**(ii)** if, when added to previous contributions for the calendar year, it exceeds the sum of the contributions allowed under subsection (b) of this Section.

**(B)** The health savings account may be created by an insurance company and health services organization authorized to do business in Puerto Rico and pursuant to the Insurance Code of Puerto Rico and by a financial institution with a license issued as such by the Officer of the Insurance Commissioner or by a cooperative savings and credit union with a license issued by the Public Corporation for the Supervision and Insurance of Cooperatives in Puerto Rico (hereinafter "COSSEC") that complies with the laws and regulations in effect with respect to similar accounts created in trusts such as individual retirement accounts or other entities authorized by the Secretary, such as non-financial and deposit institutions.

**(C)** No part of the assets of the health savings account shall be invested in life insurance contracts.

**(D)** The assets of the health savings account shall be deposited in a trust whose trustee shall be a bank duly licensed by the Office of the Commissioner of Financial Institutions of Puerto Rico or any person who demonstrates to the satisfaction of the Secretary that the manner in which said person shall administer the trust shall be consistent with the requirements of this Section. The assets of a health savings account shall also be contributed to an insurance company or health services organization, in which case, it shall not be necessary to transfer the funds to a trust. In this case, the funds shall be part of the general assets of the insurance company or a separate account as established by the insurance company.

**(E)** The interest of the individual in the balance in his/her account is non-forfeitable.

**(2) Qualified Medical Expenses.--**  Medical expenses include those associated with the diagnosis, cure, mitigation, treatment or prevention of an illness, as well as those expenses related to medical treatment for any bodily part or function. This includes the cost of the equipment, accessories, and equipment to make diagnosis for such purposes. It also includes dental and vision expenses other than payment for insurance premiums.

Medical care expenses shall be primarily to alleviate or prevent an illness or physical or mental defect. These do not include those expenses that are merely necessary for the general health of a person such as nutritional supplements. Provided, that the immunizations required by the Department of Health shall be deemed to be qualified medical expenses.

Medical expenses include the expenses incurred in obtaining transportation to receive medical care. It also includes expenses incurred to obtain qualified extended-care services.

**(A)  In General.--**  The term "qualified medical expenses" means, with respect to an account beneficiary, the amounts paid by said beneficiary for medical care for him/herself, his/her spouse or any qualified dependent under the policy. For purposes of this subsection, the term "medical care" means:

**(i)**  Diagnosis, cure, mitigation, treatment or prevention of illnesses.

**(ii)**  Any medical intervention that affects any structure or function of the body.

**(iii)**  Transportation expenses incurred mainly for and essentially to what is described in clauses (1) and (2).

**(iv)**  Mammograms, prenatal and well-childcare, immunizations for children and adults, smoking cessation programs, obesity and weight loss programs, and preventive care programs, chiropractors, osteopaths and naturopaths and other healthcare professionals. It may be used to pay the premium of a health plan free of taxes if the individual losses his/her coverage due to unemployment, for individuals covered under Medicare (to pay Medicare premiums and, part A deductibles and part B copayments, which provide coverage complementary to Medicare, Medicare HM and pharmacy copayment and coinsurance) and for long-term care related expenses.

**(v)  Wellness Care.--**  Products and services that are proactively promoted to healthy persons for them to be healthier and feel better or to reduce aging effects or prevent illnesses.

**(B)**  In addition to the qualified medical expenses, those incurred in the care of children between 0 and 14 years of age and elderly whether in their own homes or in elderly care centers shall be treated as qualified medical expenses.

**(3)  Account Beneficiary.--**  The term "account beneficiary" means the individual on whose behalf the health savings account was established.

**(4)**  The contributions to a savings account with respect to a taxable year shall be made not later than the due date for filing the income tax return of the owner of the account, including any extension for the filing thereof.

**(5)  Other Applicable Rules.--**  The Secretary shall promulgate any rules that he/she may deem necessary with respect to a rollover contribution and the payments or contributions of the employer and other similar contributions.

**(e)  Exemptions on Health Savings Accounts.--**  Income derived from an insurance company or bank which originate from the investment of the funds in a separate account that is part of a health savings account shall be exempt from income taxes under this Code.

**(f)  Tax Treatment of Distributions.--**

**(1)  Amounts Used for Qualified Medical Expenses.--**  Any amount paid or distributed from a health savings account which is used exclusively to pay for the qualified medical expenses of any beneficiary of the account or which is a rollover contribution shall not be included in the gross income.

**(2)  Amounts Used for Unqualified Medical Expenses.--**  Any amount paid or distributed from a health savings account which is not used exclusively to pay for the qualified medical expenses of the owner of the account; provided, that any distributions made after he/she has attained the age of sixty-five (65) shall be exempt from taxes, and in the case of a distribution made to another account by means of a rollover.

**(3)  Excess Contributions Returned Before the Due Date of Return.--**

**(A)  In General.--**  In the event of any excess contribution to a health savings account of an individual for any taxable year, the preceding paragraph (2) shall not apply to distributions from

health savings account of such individual, provided that said distributions do not exceed the aggregate excess contributions to all such accounts of such individual for such year, if--

**(i)**  Said distribution is received by the individual on or before the last day prescribed by law for filing the tax return of the individual for said taxable year, including extensions, and

**(ii)**  said distribution is accompanied by the amount of net income attributable to such excess contribution.

Any net income described in clause (ii) shall be included in the gross income attributable to said excess contribution.

**(B)  Excess Contribution.--**  For purposes of subparagraph (A), the term "excess contribution" means any contribution (other than a rollover contribution) that is neither excludable from gross income nor deductible under this Code.

**(4)  Additional Tax on Distributions Not Used for Qualified Medical Expenses.--**

**(A)  In General.--**  The tax imposed by this chapter on the account beneficiary for any taxable year, in which there is a payment or distribution from a health savings account of said beneficiary which is includible in gross income under paragraph (2) of this subsection shall be increased by ten percent (10%) of the amount which is so includible.

**(B)  Exception for Disability or Death.--**  Subparagraph (A) shall not apply if the payment or distribution is made due to the disability or death of the beneficiary.

**(C)  Exception for Distributions After Medicare Eligibility.--**  Subparagraph (A) shall not apply to any payment or distribution after the date on which the account beneficiary attains the age specified by the Medicare Program to be eligible under said program and as specified in Section 1811 of the Social Security Act.

**(5)  Rollover Contribution.--**  An amount paid or distributed shall be deemed to be a rollover contribution if it is an amount paid or distributed from a health savings account, if the total amount received (in money or in other type of property) is paid into a health savings account for the benefit of such individual not later than sixty (60) days after he/she has received said payment or distribution.

**(6)  Coordination with Medical Expense Deduction.--**  For purposes of determining the amount of the deduction under this Code, any payment or distribution out of a health savings account for qualified medical expenses shall not be treated as an expense paid for medical care.

**(7)  Transfer of Account Incident to Divorce.--**  The transfer of an individual's interest in a health savings account to an individual's spouse or former spouse under a divorce decree or separation instrument shall not be considered a taxable transfer made by such individual notwithstanding any other provision of this Code, and such interest shall, after such transfer, be treated as a health savings account with respect to which such spouse is the account beneficiary.

**(8)  Treatment After the Death of Account Beneficiary.--**

**(A)  Treatment if Designated Beneficiary is Spouse.--**  If the account beneficiary's surviving spouse acquires the account holder's interest in a health savings account by reason of being the designated beneficiary of such account at the death of the account beneficiary, such health savings account shall be treated as if the spouse were the account beneficiary.

**(B)  Other Cases.--**

**(i)  In General.--**  If, by reason of the death of the account holder, any person acquires the account holder's interest in a health savings account in a case to which subparagraph (A) does not apply:

**(I)**  Such account shall cease to be a health savings account as of the date of death, and

**(II)**  an amount equal to the fair market value of the assets in such account shall be treated as distributed to the decedent on the date before his/her death.

**(ii) Special Rules.--Reduction of Inclusion for Predeath Expenses.--** The amount includible in gross income under clause (i) shall be reduced by the amount of qualified medical expenses which were incurred by the decedent before the date of the decedent's death.

**(g) Reports.--** The Secretary may require:

**(1)** The insurance company or the trustee of a trust who maintains a health savings account to make any report regarding such account to the Secretary and to the account beneficiary with respect to contributions, distributions, the return of excess contributions, and any other matters as the Secretary determines appropriate, and

**(2)** any person who provides an individual with a high annual deductible health plan to make such reports to the Secretary and to the account beneficiary with respect to such plan as the Secretary determines appropriate.

The reports required by this subsection shall be filed at such date and in such manner as required by the Secretary.


**Section 1081.05.-- Education Savings Account.--**

**(a)** For purposes of this Section, the term "education savings account" shall mean a trust created or organized under the laws of the Government of Puerto Rico by an individual for the exclusive benefit of his/her children or relatives up to the third degree of consanguinity or second degree of affinity, or the share of an individual for the exclusive benefit of his/her children or relatives up to the third degree of consanguinity or second degree of affinity, in a trust created or organized under the laws of the Government of Puerto Rico. An individual may contribute the maximum amount allowed in paragraph (1) of this subsection, without limitation regarding the number of education savings accounts, provided, that the beneficiary of said accounts is described in this subsection. For purposes of this section, the individual authorized to open an education savings account shall be understood solely as the person having the legal and physical custody of the beneficiary of said account. This individual shall be responsible for informing the parents and other relatives of the beneficiary of the account, as to where it is kept, and also shall be responsible in the event that there is an interest in using the account transfer provisions per beneficiary for the same taxable year. In the case of an employer, he/she shall be allowed to make contributions to the education savings accounts of the beneficiaries of its employees, up to the maximum amount allowed by this section. The contributions of an employer shall be deemed as regular operating expenses of an trade or business and as such, shall be deducted in the year they are made, under the provisions of Section 1033.01 of this Subtitle. These contributions shall be included as income of the employees for the year they are made by the employer, as provided in Section 1031.01 of this Subtitle, and may be claimed as a deduction by the employee in that same year. The governing instrument creating the trust shall state that the participants thereof shall be those individuals who, through a contract or application to such effects, accept the provisions of said trust provided the governing instrument creating the trust meets the following requirements:

**(1)** That, except in the case of a rollover contribution described in paragraph (7) of this subsection, in paragraph (4) of subsection (b), and paragraph (3) of subsection (c), every contribution to the fund shall be in cash and shall not be in excess of five hundred dollars ($ 500) for each beneficiary for each taxable year. In no event shall it be allowed, for the total contributions received in the education savings account established for each beneficiary, to exceed five hundred dollars ($ 500) for each taxable year.

**(2)** That the fund shall be administered by a bank, savings and loan associations, savings bank, stock brokerage house, trust company, insurance company, credit and savings cooperative federation, savings and credit cooperative bank, and life insurance cooperative that prove to the satisfaction of the Commissioner of Financial Institutions, that their system of administering the trust is consistent with the requirements of this section. The credit and savings federation of cooperatives and the saving and credit cooperatives referred to in this clause, include both Federal and state cooperatives whose accounts of their depositors are secured by the Share and Deposit Insurance Corporation for

Cooperative Saving and Credit Unions as provided by Act No. 5 of January 15, 1990, as amended, of the Government, or by the Federal Government's National Credit Union Administration insurance, provided by the Federal Credit Union Act (P.L. 86-354. *12 USC 1751),* as the case may be.

**(3)** That it meets the investment requirements provided in Section 1081.02(a)(3) of this Subtitle.

**(4)** The total balance of the education savings account created by the individual on behalf of the beneficiary shall be irrevocable and nontransferable by law, except as provided by this section.

**(5)** That the assets of said trust shall be kept in a common trust or in an investment fund to such purposes, but keeping a separate accounting for each trust.

**(6)** That the total balance of the education savings account be distributed to the beneficiary after graduating from high school, and not later than the taxable year that the beneficiary attains the age of thirty (30) years, and is used to defray the cost of the post-secondary education of the beneficiary and is distributed pursuant to the regulations adopted to such effect by the Secretary. Said regulations shall include a definition of the term "post-secondary education," which shall include, without being construed as a limitation, studies in universities, technical colleges, and vocational schools.

**(7)** If the person for whose benefit the trust is maintained dies before the total balance of the trust is distributed during the period he/she is receiving the same, then the total undistributed balance shall be returned to the person or persons who contributed to the trust. Notwithstanding the foregoing, the total balance of the trust or any part thereof may be transferred for the benefit of other members of the same family who qualify under this section, furthermore, authorizing the transfer of the interest in the account, from one institution to another, in order to obtain higher benefits or yields.

**(8)** No part of the trust assets shall be invested in life insurance contracts.

**(9)** The ownership of the education savings account shall belong to the beneficiary for whom it is created. However, the individual who contributed to the same retains the rights stipulated in this section regarding the return of the sums contributed under the circumstances described in this section.

**(10)** The total balance of the beneficiary's account is non-forfeitable in whole or in part.

**(11)** The education savings account shall be established by the individual (or his/her authorized representative) who holds the legal custody of the beneficiary for whom said account is created.

**(b)** For purposes of this section, the term "education savings account" shall also mean an "education savings annuity." "Education savings annuity" means an annuity or endowment contract as described by regulations promulgated by the Secretary, issued by a life insurance company or life insurance cooperative duly authorized by the Insurance Commissioner of the Government of Puerto Rico to do business in Puerto Rico and that meets the following requirements:

**(1)** That the contract is not transferable by the taxpayer.

**(2)** That under the contract:

**(A)** The premiums shall not be fixed.

**(B)** The annual premium with regard to any individual shall not exceed five hundred dollars ($ 500) for each beneficiary.

**(C)** Any refund of premiums shall be used prior to the close of the calendar year following that year in which the refund for the payment of future premiums or the purchase of additional benefits was made.

**(3)** That the total balance of the account is distributed to the beneficiary after he/she graduates from high school, and not later than the taxable year in which he/she attains the age of thirty (30) years; and is used to defray the cost of post-secondary education of the beneficiary and is distributed pursuant to the regulations approved by the Secretary to such effect. In said regulations, a definition of the term "post-secondary education" shall be included which shall, without it being construed as a limitation, include studies in universities, technical colleges, and vocational schools.

**(4)** If the beneficiary of the trust dies before the total balance of the trust is distributed, or while he/she is receiving the same, then the total undistributed balance shall be returned to the person or persons who contributed to the annuity. Notwithstanding the foregoing, the total of the annuity or part thereof, may be transferred for the benefit of other members of the same family who qualify under this section. In addition, the transfer of the account's interest, from an institution to another, in order to obtain higher benefits or yields is also authorized.

**(5)** The total balance of the beneficiary's account is non-forfeitable in whole or in part.

**(6)** The total balance of the education savings account created by the individual on behalf of the beneficiary shall be irrevocable and nontransferable by law, except as provided in this section.

**(7)** That meets the investment requirements provided by Section 1081.02(a)(3) of this Subtitle.

The term "educational savings annuity" does not include an annuity contract for any taxable year of the taxpayer during which he/she does not qualify for reason of the application of subsection (d) or for any subsequent taxable year. For purposes of this subsection, an endowment contract shall only be deemed to be that which matures on or before the taxable year in which the individual, on whose behalf the contract is acquired, attains the age of thirty (30) years, and only that which is created for the exclusive benefit of the individual on whose behalf it is acquired and only if the total sum of the annual premiums corresponding to such annuity does not exceed five hundred dollars ($ 500) per taxable year per beneficiary.

**(c)   Distribution of the Education Savings Account Assets.--**

**(1)   Taxation of Payments or Distributions of Education Savings Account.--**

**(A)** The tax treatment of the total or partial distributions of an education savings account shall be determined pursuant to the provisions of Section 1081.02(d)(1) of this Subtitle.

**(2) Excess Contributions Returned Before the Due Date for Filing.--** The provisions of paragraph (1) above, shall not apply to the reimbursement of any contribution made during a taxable year to an education savings account up to the amount that said contribution exceeds the amount allowable as a deduction pursuant to Section 1033.15(a)(9) of this Subtitle, if--

**(A)** Such reimbursement is received not later than the day prescribed by law (including any extension period granted) to file the income tax return of said individual for said taxable year;

**(B)** no deduction whatsoever shall be allowed under Section 1033.15(a)(9) of this Subtitle, with respect to said excess contributions; and

**(C)** such reimbursement is accompanied by the amount of the net income attributable to said excess contribution. Any net income described in this paragraph shall be included as income of the individual for the taxable year in which the contribution was made. The tax treatment of the amount of net income attributable to the excess contribution, shall be according to the provisions of Section 1081.02(d)(1) of this Subtitle.

**(3) Rollover Contribution.--** An amount paid or distributed shall be treated as a rollover contribution under this paragraph if it meets the requirements of subparagraphs (A) and (B).

**(A) In General.--** The provisions of paragraph (1) above shall not apply to any amount paid or distributed of an education savings account to the taxpayer or individual for whose benefit the account is established if the total amount received (in cash or any other type of property) is contributed to an education savings account (except an endowment contract) for his/her benefit or that of any other individual who qualifies to have an education savings account as provided in this section, not later than sixty (60) days after having received said payment or distribution.

**(B) Limitation.--** The provisions of this paragraph shall not apply to those amounts described in the above subparagraph (A) received by an individual or beneficiary from an education savings account if at any time during the year prior to the day that said amount was received, said individual

received any other amount from an education savings account which could not be included in the gross income as a result of the application of this paragraph.

**(4) Distribution of Annuity Contracts.--**   The provisions in the above paragraph (1) shall not apply to an annuity contract that meets the requirements of paragraphs (1), (3), (4), and (5) of subsection (b) of this section and that is distributed from an education savings account.

**(d) Tax Treatment of Education Savings Accounts.--**

**(1) Tax Exemptions.--**   Any educational savings account shall be exempt from taxation under this Subtitle, unless said account has ceased to be an education savings account in accordance with paragraph (2) of this subsection.

**(2) Loss of Exemption and Statement of Income.--**   In the following cases, the contributor of the account shall be bound to declare the total balance of said account as income for the taxable year in which the exemption is lost:

**(A)**   In every case in which the beneficiary for whom the account was created dies and the individual or individuals who contributed to the account receive the total of the balance of the account or the undistributed portion thereof which represent the contributions made, and does not use it or transfer it for the benefit of other persons who qualify under this section.

**(B)**   In every case in which the beneficiary for whom the account was created, having attained legal age under the Civil Code, decides not to use the funds for post-secondary education; and the individual or individuals that contributed to the account are returned the total balance or undistributed portion of the contribution made, and do not use it or transfer it for the benefit of other persons who qualify under this section.

**(3) Effect of Pledging an Education Savings Account as Collateral.--**

**(A)**   If during any taxable year the beneficiary for whose benefit an education savings account is established totally or partially uses the account as collateral for a loan, the portion thus used shall be treated as distributed to said individual.

**(B)**   If during any taxable year, the beneficiary of an education savings account borrows any amount of money under, or using said contract, it shall cease to be an education savings account for purposes of Section 1033.15(a)(9), as of the first day of said taxable year. The beneficiary shall include in his/her gross income for said year, an amount equal to the fair market value of said contract on the first day of said year.

**(4) Withdrawal of Contributions and Closing of the Account.--**   If at any time during the first seven (7) business days after opening an education savings account, the individual who opened the account determines not to continue it, said person or entity may withdraw any appropriation made to the account and close it without the provisions of this section and Section 1033.15(a)(9) being applied.

**(e) Reports.--**

**(1)**   The trustee of an education savings account created under the terms of subsection (a), and the life insurance company or cooperative that issues an endowment contract or an education savings annuity under the terms of subsection (b), shall make reports to the Secretary and for the individuals for whom the account, endowment or annuity contract is maintained. Such reports shall be made with respect to the contributions, distributions, and such other matters as the Secretary may require by regulations. The reports required pursuant to this subsection shall be filed at such time and in such manner as required by said regulations.

**(2)**   Any trustee or life insurance company or cooperative that, after being notified by the Secretary of any noncompliance of the preceding paragraph (1), once again fails to comply with the same, shall lose his/her eligibility to act as trustee with respect to any education savings account, from the date of the determination of said noncompliance. The Secretary shall require the transfer of all education savings accounts administered by the disqualified trustee, company or cooperative, to any other trustee who

shall be selected by the participant. This change of trustee whereby the funds are directly transferred from the administration of a trustee authorized to accept education savings accounts to another, without there being any distribution whatsoever to the individual on whose behalf the account is maintained, shall not be treated as a payment, distribution or reimbursement.

### Section 1081.06.-- Transitory Provisions for Individual Retirement Accounts.--

**(a) General Rule.--**  In the event that any amount accrued and undistributed in an individual retirement account on which, and in accordance with Sections 1169A and 1169C of the Puerto Rico Internal Revenue Code of 1994, as amended, the taxpayer opts to pay the ten-percent (10%) or five-percent (5%) tax in advance, as the case may be, the basis of the taxpayer in such individual retirement account shall increase by the amount in which the taxpayer opted to pay such tax in advance.

**(b)**  The basis of the taxpayer in such individual retirement account shall increase by the amount on which the taxpayer opts to pay such tax in advance.

### SUBCHAPTER B - REAL ESTATE INVESTMENT TRUSTS

### Section 1082.01.-- Definition of Real Estate Investment Trust.--

**(a) In General.--**  For purposes of this Subchapter, the term "real estate investment trust" means a corporation, partnership, trust, or association that meets the following requirements:

**(1)**  is managed by one or more trustees or directors;

**(2)**  the beneficial ownership of which is evidenced by transferable shares, or by transferable certificates of beneficial interest;

**(3)**  would be taxable as a domestic corporation, but for the provisions of this Subchapter;

**(4)**  is neither a financial institution referred to in Section 1033.17(f), or an insurance company subject to taxation under the provisions of Subchapter A of Chapter 11 of this Subtitle;

**(5)**  the beneficial ownership of which is held by not less than fifty (50) persons;

**(6)**  at no time during the second half of its taxable year more than fifty percent (50%) of the total value of its shares issued and outstanding shall be owned (based on the tax assessment rules established by Section 1033.17(b)(2)) by or for not more than five (5) individuals;

**(7)**  meets the requirements of subsection (c) of this section.

**(8)**  complies with the provisions of Section 1082.02(d)(2);and

**(9)**  makes an election pursuant to subsection (c)(1).

**(b) Determination of Status.--**  The conditions described in paragraphs (1) to (4), inclusive, of subsection (a) of this section must be met during the entire taxable year, and the condition described in paragraph (5), subsection (a) of this section must exist during at least three hundred thirty-five (335) days of each taxable year of twelve (12) months, or during a proportionate part of a taxable year of less than twelve (12) months. The days during which the last condition must exist during the taxable year are not necessarily consecutive. However, the conditions set forth in paragraphs (5) and (6) of subsection (a) of this section shall not have to be met during the first taxable year on which the election described in subsection (c)(1) of this section is made.

**(c) Limitations.--**  A corporation, company, partnership, trust, or association shall not be considered a real estate investment trust for any taxable year unless:

**(1)**  it files with its return for the taxable year an election to be a real estate investment trust or has made such election for a previous taxable year;

**(2)**  at least ninety-five percent (95%) of its gross income (excluding gross income from prohibited transactions) is derived from:

**(A)**  dividends;

**(B)**  interest;

**(C)**  rents from real property;

**(D)**  gain from the sale or other disposition of stock, securities, and real property (including interests in real property and interests in mortgages on real property) other than property described in Section 1034.04(a)(1)(A);

**(E)**  amounts (other than amounts the determination of which depends in whole or in part on the income or profits of any person) received or accrued as consideration for entering into agreements (i) to make loans secured by mortgages on real property or on interests in real property or (ii) to purchase or lease real property (including interests in real property or interests in mortgages on real property);

**(F)**  gain from the sale or other disposition of a real estate asset which is not a prohibited transaction solely by reason of Section 1082.02(c)(3).

**(3)**  at least seventy-five percent (75%) of its gross income (excluding gross income from prohibited transactions) is derived from:

**(A)**  rents from real property located in Puerto Rico;

**(B)**  interest on obligations secured by mortgages on real property or on interests in real property located in Puerto Rico;

**(C)**  gain from the sale or other disposition of real property (including interests in real property and interests in mortgages on real property) other than property described in Section 1034.01(a)(1)(A);

**(D)**  dividends or other distributions on, and gain (other than gain from prohibited transactions) from the sale or other disposition of, transferable shares (or transferable certificates of beneficial interest) in other real estate investment trusts which meet the requirements of this section;

**(E)**  amounts (other than amounts the determination of which depends in whole or in part on the income or profits of any person) received or accrued as consideration for entering into agreements (i) to make loans secured by mortgages on real property or on interests in real property or (ii) to purchase or lease real property (including interests in real property or interests in mortgages on real property);

**(F)**  gain from the sale or other disposition of a real estate asset which is not a prohibited transaction solely by reason of Section 1082.02(e)(3); and

**(G)**  qualified temporary investment income.

**(4)**  at the close of each quarter of the taxable year:

**(A)**  at least seventy-five percent (75%) of the value of its total assets is represented by real estate assets, cash or cash items (including receivables), and securities and obligations of the Government of Puerto Rico or the United States and any instrumentalities or political subdivisions thereof; and

**(B)**  not more than twenty-five percent (25%) of the value of its total assets is represented by securities (other than those includible under subparagraph (A)). For purposes of this computation, the real estate investment trust shall not have securities of the same issuer, except those includible under subparagraph (A), not more than five percent (5%) of the value of its total assets is represented by securities of any one issuer, (II) the trust does not hold securities possessing more than ten percent (10%) of the total voting power of the outstanding securities of said issuer.

A real estate investment trust which meets the requirements of this paragraph (4) at the close of any quarter shall not lose its status as a real estate investment trust because of a discrepancy during a subsequent quarter between the value of its various investments and such requirements unless such discrepancy exists immediately after the acquisition of any security or other property and is wholly or partly the result of such acquisition. A real estate investment trust which does not meet such requirements at the close of any quarter of any fiscal year by reason of a discrepancy existing immediately after the acquisition of any security or other property which is wholly or partly the result of such acquisition during such quarter shall not lose its status for such quarter as a real estate investment trust if such discrepancy is eliminated within thirty (30) days after the close of such quarter and, in such cases, it shall be considered to have met such requirements at the close of such quarter for purposes of applying the preceding sentence.

**(5)**  all its stock, shares or interests have been issued solely and exclusively in exchange for cash; and

**(6)**  the acquisition of the real property by the trust and/or its subsidiaries (as this term is defined in Section 1082.01(c)(7)(G)), or the interest of the trust on the subsidiaries, is conducted through transactions for the purchase of assets, stock or shares in partnerships that generate income from sources within the Government of Puerto Rico and that are subject (with the exception of assets purchased from the Government of Puerto Rico, its agencies, and instrumentalities), to income taxes under this Code.

**(7)**  For purposes of this Subchapter:

**(A)**  The term "value" means, with respect to securities for which market quotations are readily available, the market value of such securities or fair value (when there is no determinable market value) as determined according to the valuation methods established by the Secretary through regulations, except that in the case of securities of real estate investment trusts such fair value shall not exceed market value or asset value, whichever is higher.

**(B)**  The term "real estate assets" means real property (including interests in real property and interests in mortgages on real property) and shares (or transferable certificates of beneficial interest) in other real estate investment trusts that are exempt from taxation by virtue of the provisions of this Subchapter. Such term also includes any property (not otherwise a real estate asset) attributable to the temporary investment of new capital, but only if such property is stock or a debt instrument, and only for the one (1) year period beginning on the date the real estate trust receives such capital.

**(C)**  The term "interests in real property" includes fee ownership and co-ownership of land or improvements thereon, usufructs, the surface right, the mortgage, leaseholds of personal property, bare ownership, administrative concessions for trains, canals, bridges, and other works destined for public service or similar, options to acquire real property, and options to acquire leaseholds of land or improvements thereon. Mineral, oil, or gas royalty interests are not included in this term.

**(D)**  The term "real property" means land located in Puerto Rico or any improvements thereon used as:

**(i)**  Hospitals or facilities used by and related to the health industry;

**(ii)**  schools or universities;

**(iii)**  public or private housing;

**(iv)**  transportation facilities or public or private roadways;

**(v)**  office or housing buildings;

**(vi)**  government facilities or buildings occupied by any agency, department or corporation of the Government of Puerto Rico;

**(vii)**   manufacturing industry facilities, such as warehouses, distribution or manufacturing facilities or those given any other use needed for their exploitation provided the trust does not possess a tax exemption decree under Act No. 135 of December 2, 1997 [13 L.P.R.A. §§ 10101 et seq.] or under any other tax or industrial incentives law with respect to those facilities;

**(viii)**  recreational centers;

**(ix)**  parking facilities;

**(x)**  commercial facilities and shopping centers;

**(xi)**  buildings or structures purchased from the Government of Puerto Rico, its agencies and instrumentalities; and

**(xii)**  hotels.

**(E)**   The term "qualified temporary investment income" means any income which:

**(i)**  is attributable to stock or a debt instrument;

**(ii)**  is attributable to the temporary investment of new capital; and

**(iii)**  is received or accrued during the one (1) year period beginning on the date on which the real estate investment trust receives such capital.

For purposes of this subparagraph (E), the term "new capital" means any amount received by the real estate investment trust in exchange for stock or certificates of beneficial interests in such trust (other than amounts received pursuant to a dividend reinvestment plan), or in a public offering of debt obligations of such trust which have maturities of at least five (5) years.

**(F)   Treatment of Certain Hedging Instruments.--**  Except to the extent provided by the Secretary through regulations, any:

**(i)**  payment to a real estate investment trust under an interest rate swap or cap agreement, option, futures contract, forward rate agreement, or any other similar financial instrument, entered into by the trust in a transaction to reduce the interest rate risks with respect to any indebtedness incurred or to be incurred by the trust to acquire or carry real estate assets; and

**(ii)**  gain from the sale or other disposition of any such investment mentioned in subparagraph (E)(i) of this paragraph, shall be treated as income qualifying under subsection (c)(2) of this section.

**(G)**   The term "subsidiary" means a corporation, company, partnership, trust, or association wholly owned, directly or indirectly, by a real estate investment trust. For purposes of this subchapter, a corporation, partnership or special partnership that qualifies as a subsidiary, as provided in the preceding sentence shall not be treated as a separate entity, and all assets, liabilities, and items of income, deduction and credit thereof shall be treated as they belong to the real estate investment trust.

**(8)**  A corporation, company, partnership, trust, or association that fails to meet the requirements of paragraphs (2) and (3) of this subsection (c), or both, for any taxable year shall nevertheless be considered to have satisfied such requirements or such taxable year if--

**(A)**  the nature and amount of each item of its gross income described in such paragraphs is set forth in a schedule attached to its income tax return for such taxable year;

**(B)**  the inclusion of any incorrect information in the schedule referred to in subparagraph (A) is not due to fraud with intent to evade tax; and

**(C)**  the failure to meet the requirements of paragraph (2) or (3), or of both, is due to reasonable cause and not due to willful neglect.

**(d)   Rents from Real Property.--**

**(1)  In General.--**  For purposes of paragraphs (2) and (3) of subsection (c) of this section, the term "rents from real property"' includes subject to paragraph (2) of this subsection:

**(A)**  rents from interests in real property;

**(B)**  charges for services customarily furnished or rendered in connection with the rental of real property, whether or not such charges are separately stated, and

**(C)**  rent attributable to personal property which is leased under, or in connection with, a lease of real property, but only if the rent attributable to such personal property for the taxable year does not exceed fifteen percent (15%) of the total rent for the taxable year attributable to both the real and personal property leased under, or in connection with, such lease.

For purposes of subparagraph (C), with respect to each lease of real property, rent attributable to personal property for the taxable year is that amount which bears the same ratio to total rent for the taxable year as the average of the fair market values of the personal property at the beginning and at the end of the taxable year bears to the average of the aggregate fair market values of both the real property and the personal property at the beginning and at the end of such taxable year.

**(2)  Amounts Excluded.--**  For purposes of paragraphs (2) and (3) of subsection (c), the term "rents from real property" does not include:

**(A)**  except as provided in paragraphs (3) and (4) of this subsection, any amount received or accrued, directly or indirectly, with respect to any real or personal property, if the determination of such amount depends in whole or in part on the income or profits derived by any person from such property except that any amount so received or accrued shall not be excluded from the term "rents from real property" solely by reason of being based on a fixed percentage of gross receipts or percentage of sales (regardless of whether said total gross receipts or sales have been adjusted with respect to returned merchandise or with respect to any type of taxes or levies); and

**(B)**  any amount received or accrued directly or indirectly from any person if the real estate investment trust owns, directly or indirectly:

**(i)**  in the case of any person which is a corporation, stock of such person possessing ten percent (10%) or more of the total combined voting power of all classes of stock entitled to vote, or ten percent (10%) or more of the total value of shares of all classes of stock of such person; or

**(ii)**  in the case of any person which is not a corporation, an interest of ten percent (10%) or more in the assets or net profits of such person.

**(C)**  any impermissible tenant service income (as defined in paragraph (7) of this subsection).

**(3)  Independent Contractor Defined.--**  For purposes of this subsection, the term "independent contractor" means any person:

**(A)**  who does not own, directly or indirectly, more than thirty-five percent (35%) of the shares, or certificates of beneficial interest, in the real estate investment trust; and (B) if such person is a corporation, not more than thirty-five percent (35%) of the total combined voting power of whose stock (or thirty-five percent (35%) of the total shares of all classes of whose stock), or, if such person is not a corporation, not more than thirty-five percent (35%) of the interest in whose assets or net profits is owned, directly or indirectly, by one or more persons owning thirty-five percent (35%) or more of the shares or certificates of beneficial interest in the trust.

**(4)  Contingent Rents.--**  Where a real estate investment trust receives or accrues, with respect to real or personal property, any amount which would be excluded from the term "rents from real property" solely because the tenant of the real estate investment trust receives or accrues, directly or indirectly, from subtenants any amount the determination of which depends in whole or in part on the income or profits derived by any person from such property, only a proportionate part (determined pursuant to

regulations prescribed by the Secretary) of the amount received or accrued by the real estate investment trust from that tenant shall be excluded from the term "rents from real property."

**(5)  Constructive Ownership of Stock.--**  For purposes of this subsection, the rules prescribed by Section 1082.03 for determining the ownership of stock shall apply in determining the ownership of stock, assets, or net profits of any person.

**(6)  Property Subleased by Tenant of Real Estate Investment Trusts.--**

**(A)  In General.--**  If--

**(i)**  a real estate investment trust receives or accrues, with respect to real or personal property, amounts from a tenant which derives substantially all of its income with respect to such property from the subleasing of substantially all of such property; and

**(ii)**  a portion of the amount such tenant receives or accrues, directly or indirectly, from subtenants consists of qualified rents, then the amounts which the trust receives or accrues from the tenant shall not be excluded from the term "rents from real property" by reason of being based on the income or profits of such tenant to the extent the amounts so received or accrued are attributable to qualified rents received or accrued by such tenant.

**(B)  Qualified Rents.--**  For purposes of subparagraph (A), the term "qualified rents" means any amount which would be treated as rents from real property if received by the real estate investment trust.

**(7)  Impermissible Tenant Service Income.--**  For purposes of subsection (d)(2)(B) of this section:

**(A)  In General.--**  The term "impermissible tenant service income" means, with respect to any real or personal property, any amount received or accrued directly or indirectly by the real estate investment trust for:

**(i)**  services furnished or rendered by the trust to the tenants of such property, or

**(ii)**  managing or operating such property.

**(B)  Disqualification of all Amounts where more than De Minimis Amount.--**  If the amount described in subparagraph (A) with respect to a property for any taxable year exceeds one percent (1%) of all amounts received or accrued during such taxable year directly or indirectly by the real estate investment trust with respect to such property, the impermissible tenant service income of the trust with respect to the property shall include all such amounts.

**(C)  Exceptions.--**  For purposes of subparagraph (A):

**(i)**  services furnished or rendered, or management or operation provided, through an independent contractor from whom the trust itself does not derive or receive any income shall not be treated as furnished, rendered, or provided by the trust; and

**(ii)**  there shall not be taken into account any amount which would be excluded from unrelated business taxable income under Section 1102.02(b)(3) if received by an organization described in Section 1102.02(a)(2).

**(D)  Amount Attributable to Impermissible Services.--**  For purposes of subparagraph (A), the amount treated as received for any service (or management or operation) shall not be less than one hundred fifty percent (150%) of the direct cost of the trust in furnishing or rendering the service (or providing the management or operation).

**(E)  Coordination with Limitations.--**  For purposes of paragraphs (2) and (3) of subsection (c), amounts described in subparagraph (A) shall be included in the gross income of the corporation, trust, or association.

**(e)  Interest.--**

**(1) In General.--** For purposes of paragraphs (c)(2)(B) and (c)(3)(B) of this section, the term "interest" does not include any amount received or accrued, directly or indirectly, if the determination of such amount depends in whole or in part on the income or profits of any person except that:

**(A)** any amount so received or accrued shall not be excluded from the term "interest" solely by reason of being based on a fixed percentage of gross receipts or percentages of sales; and

**(B)** where a real estate investment trust receives any amount which would be excluded from the term "interest" solely because the debtor of the real estate investment trust receives or accrues any amount the determination of which depends in whole or in part on the income or profits of any person, only a proportionate part (determined pursuant to regulations prescribed by the Secretary) of the amount received or accrued by the real estate investment trust from the debtor shall be excluded from the term "interest".

**(2) Special Rule.--** If--

**(A)** a real estate investment trust receives or accrues with respect to an obligation secured by a mortgage on real property or an interest in real property amounts from a debtor which derives substantially all of its gross income with respect to such property (not taking into account any gain on any disposition) from the leasing of substantially all of its interests in such property to tenants; and

**(B)** a portion of the amount which such debtor receives or accrues, directly or indirectly, from tenants consists of qualified rents (as defined in subsection (d)(6)(B) of this Section), then the amounts which the trust receives or accrues from such debtor shall not be excluded from the term "interest" by reason of being based on the income or profits of such debtor to the extent the amounts so received are attributable to qualified rents received or accrued by such debtor.

**(f) Termination of Election.--**

**(1) Failure to Qualify.--** An election under subsection (c)(1) made by a corporation, partnership, trust, or association shall terminate if the corporation, partnership, trust, or association is not a real estate investment trust to which the provisions of this section apply for the taxable year with respect to which the election is made, or for any succeeding taxable year. Such termination shall be effective for the taxable year for which the corporation, partnership, trust, or association is not a real estate investment trust to which the provisions of this Section apply, and for all succeeding taxable years.

**(2) Revocation.--** An election under subsection (c)(1) made by a corporation, partnership, trust, or association may be revoked by it for any taxable year after the first taxable year for which the election is effective. A revocation under this paragraph shall be effective for the taxable year in which made and for all succeeding taxable years. Such revocation must be made not later than ninety (90) days after the first day of the first taxable year for which the revocation is to be effective. Such revocation shall be made in such manner as the Secretary shall prescribe by regulations.

**(3) Election after Termination or Revocation.--** Except as provided in paragraph (4), if a corporation, partnership, trust, or association has made an election under subsection (c)(1) and such election has been terminated or revoked under paragraph (1) or paragraph (2), such corporation, partnership, trust, or association (and any successor corporation, partnership, trust, or association) shall not be eligible to make an election under subsection (c)(1) for any taxable year prior to the fifth (5th) taxable year which begins after the first taxable year for which such termination or revocation is effective.

**(4) Exception.--** If the election of a corporation, company, partnership, trust, or association has been terminated under paragraph (1) by reason of its failure to meet the requirements of subsection (c)(2) or (c)(3), or both subsections, paragraph (3) of this subsection (f) shall not apply, if--

**(A)** the corporation, partnership, trust, or association does not willfully fail to file within the time prescribed by law an income tax return for the taxable year with respect to which the termination of the election under subsection (c)(1) occurs;

**(B)** the inclusion of any incorrect information in the return referred to in subparagraph (A) is not due to fraud with intent to evade tax; and

**(C)** the corporation, partnership, trust, or association establishes to the satisfaction of the Secretary that its failure to qualify as a real estate investment trust to which the provisions of this section apply is due to reasonable cause and not due to willful neglect.

**Section 1082.02.-- Method of Taxation of Real Estate Investment Trusts and Beneficiaries.--**

**(a) In General.--** Every real estate investment trust that complies with the provisions of Section 1082.01 shall be subject to taxation under Subtitle A, except if during the taxable year it distributes to its beneficiaries, as taxable dividends, an amount of not less than ninety percent (90%) of its net taxable income (determined without regard to the credits provided in Section 1022.02(d) and 1033.19); and as exempt dividends, an amount of not less than ninety percent (90%) of its exempt net income as defined in subparagraph (C) of paragraph (4) of subsection (d).

**(b)** In computing the net taxable income of a real estate investments trust:

**(1)** The deduction for net losses provided in Section 1033.14 shall not be taken into account;

**(2)** such trust shall not be entitled to the flexible depreciation provided in Section 1040.11 nor to the accelerated depreciation provided in Section 1040.12; and

**(3)** the provisions of Section 1061.24(c) shall not be taken into account.

**(c)** For purposes of subsection (a) any taxable dividend or any exempt dividend declared by a real estate investment trust after the close of the taxable year and prior to the due date for filing its tax return for the taxable year (including any extension thereof) shall be, if the trust so chooses in said return, treated as though it had been paid during such taxable year, provided said dividend is in fact distributed to the stockholders within the period of three months (3) following the close of said taxable year.

**(d) Taxation of Stockholders or Beneficiaries of a Real Estate Investment Trust.--**

**(1) Residents of Puerto Rico or Citizens of the United States.--** Every individual resident of Puerto Rico or citizen of the United States, and every domestic corporation or partnership subject to taxation:

**(A)** Shall exclude from its gross income the exempt dividends as defined in subparagraph (A) of paragraph (4), and

**(B)** shall include in its gross income and pay taxes at a tax rate of ten percent (10%), in lieu of any other tax imposed by this subtitle:

**(i)** The real and effective total amount of the taxable dividends, as defined in subparagraph (C) of paragraph (4) of this subsection, or

**(ii)** in lieu of the amount that may be included under the preceding clause (i), the total of said dividends, plus the proportional part corresponding to the beneficiary of any income taxes and excessive benefits paid to the United States, to any possession or any other part of the United States other than a state or to any foreign country, by the real estate investment trust with respect to the benefits from which it is considered that said dividends have been paid. If a stockholder or beneficiary should opt to include in the gross income such dividends plus such taxes allocable to the same, said beneficiary shall be entitled to credit the tax imposed with the total amount of said allocable taxes, subject to the limitations of Section 1051.01, except that, when applying said section, the foreign residents of Puerto Rico shall be treated in the same manner as the residents of Puerto Rico who are citizens of the United States.

**(2) Requirement to Withhold.--** The trustee(s) or director(s) who has/have been entrusted with the management of the real estate investments trust, must deduct and withhold an amount equal to ten percent (10%) of the distributed taxable dividends. The deduction, withholding, and payment of said tax shall be governed by the provisions of subsections (e), (f), (g) and (h) of Section 1023.06.

2011 PR H.B. 3070

**(3)  Foreign Individuals and Foreign Corporations and Partnerships.--**  Any real estate investment trust that pays dividends to a stockholder or beneficiary subject to taxation shall be subject to the tax rate of ten percent (10%) imposed by subsection (d)(1)(B) of this section, and shall deduct and withhold, subject to the limitation of Section 1051.01, said tax according to the provisions under Sections 1062.08 and 1062.11 and accredit said tax with the proportional part pertaining to said stockholder from the income taxes and benefits paid in excess to the United States, to any possession or any other part of the United States other than a state or any foreign country, by such a real estate investment trust on or with respect to the benefits from which it is considered that such dividends have been paid. For the purpose of determining the gross amount of the tax that must be deducted and withheld prior to said credit, the dividends paid during the taxable year by the real estate investment trust to the beneficiary shall be considered:

**(A)**  Not to include the exempt dividends, as defined in subparagraph (A) of paragraph (4); and

**(B)**  as including the real and effective total of all other dividends, plus the proportional part pertaining to the beneficiary of any of the income taxes and benefits paid in excess to the United States, to any possession or to any other part of the United States other than a state or to any foreign country, by said real estate investment trust on and with respect to the benefits about which said dividends are deemed to have been paid.

**(4)  Definitions.--**  For purposes of this section:

**(A)  Exempt Dividends.--**  "Exempt dividends" means any dividend or benefit, or a part thereof, designated as such by a real estate investment trust in a notice sent by mail to its stockholder or beneficiaries on any date prior to the expiration of the period of sixty (60) days following the close of the taxable year, or the date of the statement of dividends, whichever is later. If the total aggregate thus designated with respect to a taxable year of the trust is greater than its current or accumulated assets and benefits attributable to exempt income under Section 1031.02(a)(4) of the Code.

The part of each distribution that shall constitute exempt dividends shall be only that proportion of the thus designated total that such current or accumulated assets keeps with the thus designated total aggregate.

**(B)  Taxable Dividends.--**  "Taxable dividends" means any distribution of dividends, or a part thereof, made by a real estate investment trust of its current or accumulated assets or benefits attributable to sources other than those specified in subparagraph (A) of this paragraph.

**(C)  Exempt Net Income.--**  "Exempt net income" means the total current or accumulated assets or benefits attributable to income exempt from taxation under Section 1031.02 of the Code.

**(5)**  The deduction provided in Section 1033.19 shall neither be available nor apply to the distributions of dividends made by a real estate investment trust subject to the provisions of this Subchapter.

**(e)  Taxation of Net Income from Prohibited Transactions.--**

**(1)  Imposition of Tax to Trust.--**  There is hereby imposed for each taxable year of every real estate investment trust a tax equal to one hundred percent (100%) of the net income derived from prohibited transactions.

**(2)  Definitions.--**  For purposes of this section:

**(A)**  The term "net income derived from prohibited transactions" means the excess of the gain from prohibited transactions over the deductions allowed by this Subtitle which are directly connected with prohibited transactions;

**(B)**  in determining the amount of the net income derived from prohibited transactions, there shall not be taken into account any item attributable to any prohibited transaction for which there was a loss; and

**(C)**  the term "prohibited transaction" means a sale or other disposition of property described in Section 1034.01(a)(1)(A).

**(3)  Certain Sales Not to Constitute Prohibited Transactions.--**  For purposes of this section, the term "prohibited transaction" does not include a sale of property which is a real estate asset as defined in Section 1082.01(c)(6)(B), if--

**(A)**  the trust has held the property for more than four (4) years;

**(B)**  aggregate expenditures made by the trust, or any partner, stockholder or beneficiary of the trust, during the four (4)-year period preceding the date of sale which are includible in the basis of the property do not exceed thirty percent (30%) of the net selling price of the property;

**(i)**  during the taxable year the trust does not make more than seven (7) sales of property; or

**(ii)**  the aggregate adjusted bases (as determined for purposes of computing earnings and profits) of property sold during the taxable year does not exceed ten percent (10%) of the aggregate bases of all of the assets of the trust as of the beginning of the taxable year; and

**(C)**  the trust has held the property for more than four (4) years for production of rental income in the case of property, which consists of land or improvements.

**(D)**  If the requirement of clause (B)(i) of this paragraph is not satisfied, substantially all of the marketing and development expenditures with respect to the property were made through an independent contractor (as defined in Section 1082.01(d)(3)) from whom the trust itself does not derive or receive any income.

**(4)  Special Rules.--**  The following rules shall apply to the provisions of paragraph (3):

**(A)**  The holding period of property acquired through foreclosure or termination of the lease, includes the period for which the trust held the loan secured by such property or the lease of such property.

**(B)**  In the case of a property acquired through foreclosure or termination of a lease, expenditures made by, or for the account of, the mortgagor or lessee after default became imminent shall be regarded as made by the trust.

**(C)**  Expenditures will not be taken into account if they are made solely to meet the standards or requirements of any government or governmental authority having relevant jurisdiction, or if they are made to restore the property as a result of losses arising from fire, storm or other casualty.

**(D)**  The term "expenditures" does not include advances on loans made by the trust.

**(E)**  The sale of more than one property to one buyer as part of one transaction constitutes one sale.

**(F)**  The term "sale" does not include any transaction in which the net selling price is less than ten thousand dollars ($ 10,000).

**(5)  Sales Not Meeting Requirements of Paragraph (3).--**  In determining whether or not any sale constitutes a "prohibited transaction" for purposes of paragraph (1), the fact that such sale does not meet the requirements of paragraph (3) of this subsection shall not be taken into account; and such determination, in the case of a sale not meeting such requirements, shall be made as if paragraphs (3) and (4) had not been enacted.

**(f)  Imposition of Tax in Case of Failure to Meet Certain Requirements.--**  If a real estate investment trust fails to meet the requirements of subsection (c)(2) or (c)(3), or both subsections, for any taxable year, but its option under subsection (c)(1) is not deemed to be terminated by virtue of Section 1082.01(f)(4), then there shall be imposed on such trust a one hundred percent (100%) tax to the greater of:

**(1)** the excess of:

**(A)** Ninety-five percent (95%) of the gross income (excluding gross income from prohibited transactions) of the real estate investment trust, over

**(B)** the amount of such gross income which is derived from sources referred to in Section 1082.01(c)(2); or

**(2)** the excess of:

**(A)** Seventy-five percent (75%) of the gross income (excluding gross income from prohibited transactions) of the real estate investment trust, minus

**(B)** the amount of such gross income which is derived from sources referred to in Section 1082.01(c)(3), multiplied by a fraction the numerator of which is the real estate investment trust taxable income for the taxable year (determined without regard to any net operating loss deduction) and the denominator of which is the gross income for the taxable year (excluding gross income from prohibited transactions).

### Section 1082.03.-- Constructive Ownership of Stock, Net Assets or Gains.--

**(a) In General.--** For purposes of this Subtitle--

**(1) Attribution from Partnerships, Estates, Trusts, and Corporations.--**

**(A) From Partnerships and Estates.--** Stock owned directly or indirectly by or for a partner or beneficiary of an estate shall be considered as owned by the partnership or estate.

**(B) For Trusts.--**

**(i)** Stock owned directly or indirectly by or for a beneficiary of a trust (other than a trust exempted from taxation under Section 1081.01) shall be considered as owned by the trust, unless the interest of the beneficiary in the trust is a remote contingent interest. For purposes of this clause, a contingent interest shall be considered as remote if, under the utmost exercise of discretion by the trustee in favor of the beneficiary, the value of said interest, computed actuarially, is of five percent (5%) or less of the value of the property of the trust.

**(ii)** Stock owned directly or indirectly by or for a person who is considered to be the owner of any portion of a trust under the subchapter of Subtitle C of Chapter 8 of this Subtitle (related to grantors and others treated as owners) shall be considered as owned by the trust.

**(iii) For Corporations.--** If ten percent (10%) or more in value of the stock in a corporation is owned directly or indirectly by or for any person, it shall be considered that said corporation possesses the stock owned directly or indirectly by or for said person.

### SUBCHAPTER C - OTHER ESTATES AND TRUSTS

### Section 1083.01.-- Imposition of Tax.--

**(a) Application of Tax.--** The tax imposed by this Subtitle on individuals shall apply to the income of estates or of any kind of property held in trust, including:

**(1)** income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

**(2)** income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of a minor which is to be held or distributed as the court may direct;

**(3)** income received by estates during the period of administration or settlement of the estate; and

(4)  income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

**(b)  Computation and Payment.--**  The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in Section 1083.05, related to revocable trusts, and Section 1083.06, related to income for benefit of the grantor.

**(c)**  Notwithstanding the provisions of this Section, any trust that, as provided by law or regulation under the Federal Internal Revenue Code of 1986, United States Code Title 26, as amended, or by an analogous provision of a foreign country, is treated as a grantor trust for purposes of the Federal Government, shall also be treated as a grantor trust for purposes of this Subtitle, subject to the provisions of Section 1083.06.


## Section 1083.02.-- Net Income.--

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except as provided herein below:

**(a)**  Subject to the provisions of subsection (f), there shall be allowed as a deduction, instead of the deduction for gifts authorized by Section 1033.15(a)(3), any part of the gross income, without limitation, that complying with the terms of the testament or the instrument creating the trust, is paid or permanently separated during the taxable year with the purpose and in the manner specified in Section 1033.15(a)(3), or it must be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance, or operation of a public cemetery not operated for profit.

**(b)**  There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income required to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. No amount allowed as a deduction under this subsection shall be allowed as a deduction under subsection (c) in the same or any succeeding taxable year.

**(c)**  In the case of income received by estates during the period of its administration or settlement, and in the case of income which, at the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is duly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

**(d)  Rules for Application of Subsections (b) and (c).--**  For purposes of subsections (b) and (c):

**(1)  Amounts Distributable Out of Income or Corpus.--**  In those cases where the amount paid, credited, or to be distributed can be paid, credited, or distributed out of sources other than income, the amount paid, credited, or to be distributed (except under a gift, bequest, devise, or inheritance not to be paid, credited, or distributed at intervals) during the taxable year of the estate or trust shall be considered as income of the estate or trust which is paid, credited, or to be distributed, if the aggregate of the amounts so paid, credited, or to be distributed does not exceed the distributable income of the estate or trust for its taxable year. If the aggregate of the amounts so paid, credited, or to be distributed during the taxable year of the estate or trust in such cases exceeds the distributable income of the estate or trust for its taxable year, the amount so paid, credited, or to be distributed to any legatee, heir, or beneficiary shall be considered income of the estate or trust for its taxable year which is paid, credited, or to be distributed, in an amount which bears the same ratio to the amount of such distributable income as the amount so paid, credited, or to be distributed to the legatee, heir, or beneficiary bears to the aggregate of the amounts so paid, credited, or to be distributed to legatees,

heirs, and beneficiaries for the taxable year of the estate or trust. For purposes of this clause, "distributable income" means either: (A) the net income of the estate or trust calculated with the deductions allowed under subsections (b) and (c) in cases to which this clause does not apply, or (B) the income of the estate or trust minus the deductions provided in subsections (b) and (c) for cases in which this clause does not apply, whichever is greater. When computing such distributable income, the deductions under subsections (b) and (c) shall be determined without the application of paragraph (2).

**(2) Amounts Distributable from Income of a Prior Period.--**  In cases other than those described in paragraph (1), if on a date more than sixty-five (65) days after the beginning of the taxable year of the estate or trust, income of the estate or trust for any period becomes payable, the amount of such income shall be considered income of the estate or trust for its taxable year in which paid, credited, or to be distributed to the extent of the income of the estate or trust for such period, or if such period is a period of more than twelve (12) months, the last twelve (12) months thereof.

**(3) Distributions in the First Sixty-five (65) Days of Taxable Year.--**

**(A) General Rule.--**  If within the first sixty-five (65) days of any taxable year of the estate or trust, any income of the estate or trust for a period beginning before the beginning of the taxable year becomes payable, such income, up to the income of the estate or trust for the part of such period not falling within the taxable year or, if such part is longer than twelve (12) months, then the last twelve (12) months thereof, shall be considered paid, credited, or distributed on the last day of the preceding taxable year. This paragraph shall not apply with respect to any amount to which paragraph (B) applies.

**(B) Payable Out of Income or Corpus.--**  If within the first sixty-five (65) days out of any taxable year of the estate or trust, an amount which can be paid at intervals out of sources other than income becomes payable, there shall be considered as paid, credited, or distributed on the last day of the preceding taxable year the part of such amount which bears the same ratio to such amount as the part of the interval not falling within the taxable year bears to the period of the interval. If the part of the interval not falling within the taxable year is a period of more than twelve (12) months, the interval shall be considered to begin on the date twelve (12) months before the end of the taxable year.

**(4) Excess Deductions.--**  If for any taxable year of an estate or trust the deductions allowed under subsections (b) or (c) solely by reason of paragraphs (2) or (3)(A) regarding any income which becomes payable to a legatee, heir, or beneficiary exceed the net income of the estate or trust for such year, computed without such deductions, the amount of such excess shall not be included when computing the net income of such legatee, heir, or beneficiary under subsections (b) or (c). In those cases where the income deductible solely by reason of paragraphs (2) or (3)(A) becomes payable to two or more legatees, heirs, or beneficiaries, the benefit of such exclusion shall be divided among such legatees, heirs, and beneficiaries, in the proportions in which they share in such income. In any case where the estate or trust is entitled to a deduction by reason of paragraph (1), in the determination of the net income of the estate or trust for purposes of this paragraph, the amount of such deduction shall be determined with the application of paragraph (3)(A).

**(e) Rules for Application of Subsection (a) in the Case of Trusts.--**

**(1) Trade or Business Income.--**  When computing the deduction allowable under subsection (a) to a trust, no amount otherwise allowable under subsection (a) as a deduction shall be allowed as a deduction with respect to income of the taxable year which is allocable to its unrelated business income for such year. As used in this paragraph, the term "unrelated business income" means an amount equal to the amount which, if such trust were exempt from taxation under Section 1101.01(a)(1) and (2), would be computed as its unrelated business net income under Section 1102.02 regarding income derived from certain business activities and from certain leases.

**(2) Operations of Trusts.--**

**(A)  Limitation on Deductions for Charitable and Other Contributions.--**  The amount otherwise allowable under subsection (a) as a deduction shall not exceed fifteen percent (15%) of the net income of the trust (computed without the benefit of subsection (a)) if the trust has engaged in a prohibited transaction, as defined in subparagraph (B) of this paragraph.

**(B)  Prohibited Transactions.--**  For purposes of this paragraph, the term "prohibited transactions" means any transaction in which any trust holding income or corpus that has been permanently set aside or is to be used exclusively for charitable or other purposes described in subsection (a):

**(i)**  lends any part of such income or corpus, without receipt of adequate security, and a reasonable rate of interest, to;

**(ii)**  pays any remuneration, salary, or other compensation from its income or corpus, in excess of a reasonable allowance for personal services actually rendered, to;

**(iii)**  makes any part of its services available on a preferential basis, to;

**(iv)**  uses such income or corpus to make any substantial purchase of securities or any other property, for more than an adequate consideration in money or money's worth, from;

**(v)**  sells any substantial part of the securities or other property comprising such income or corpus, for less than an adequate consideration in money or money's worth, to; or

**(vi)**  engages in any other transaction which results in a substantial diversion of such income or corpus to; the grantor of such trust; any person who has made a substantial contribution to such trust; a member of the family (as defined in Section 1033.17(b)(2)(D)) of an individual who is the grantor of the trust or who has made a substantial contribution to the trust; or a corporation controlled by any such grantor or person, or by the trust itself, through the ownership, directly or indirectly, of fifty percent (50%) or more of the total combined voting power of all classes of stock entitled to vote, or fifty percent (50%) or more of the total value of all classes of stock of the corporation.

**(C)  Taxable Years Affected.--**  The amount otherwise allowable under subsection (a) as a deduction shall be limited as provided in subparagraph (A) only for the taxable year subsequent to the taxable year during which the trust is notified by the Secretary that it has engaged in such transaction, unless such trust entered into such prohibited transaction with the purpose of diverting such corpus or income from the purposes described in subsection (a), and such transaction involved a substantial part of such corpus or income.

**(D)  Future Charitable or Other Contributions of Trusts and Denied as a Deduction under Subparagraph (C).--**  If the deduction of any trust under subsection (a) has been limited as provided in this paragraph, such trust, with respect to any taxable year following the taxable year in which notice is received of limitation of deduction under subsection (a), may, under regulations prescribed by the Secretary, file claim for the allowance of the unlimited deduction under subsection (a), and if the Secretary, pursuant to such regulations, is satisfied that such trust will not again knowingly engage in a prohibited transaction, the limitation provided in subparagraph (A) shall not apply with respect to taxable years subsequent to the year in which such claim is filed.

**(E)  Disallowance of Certain Deductions for Charitable or Other Contributions.--**  No gift or bequest for religious, charitable, scientific, literary, or educational purposes (including the encouragement of art and the prevention of cruelty to children or animals) otherwise allowable as a deduction under Section 1033.10(a)(1), 1033.15(a)(3), or 1083.02(a), shall be allowed as a deduction if made in trust and, in the taxable year of the trust in which the gift or bequest is made, the deduction allowed the trust under subsection (a) is limited under subparagraph (A). With respect to any taxable year of a trust in which such deduction has been so limited by reason of having engaged in a prohibited transaction with the purpose of diverting such corpus or income from the purposes described in subsection (a), and such transaction involved a substantial part of such income or corpus, and which taxable year is the same, or prior to the taxable year of the trust

in which such prohibited transaction occurred, such deduction shall be disallowed to the donor only if such donor or, if such donor is an individual, any member of his/her family, as defined in Section 1033.17(b)(2)(D), was a party to such prohibited transaction.

**(F)  Definition.--**  For purposes of this paragraph, the term "gift or bequest" means any gift, contribution, bequest, devise, legacy, or transfer for less than the fair value in money or money's worth, made after December 31, 2010.

**(3)**  For Disallowance of Certain Charitable Deductions Otherwise Allowable under Subsection (a), see Section 1102.06.

**(4) Accumulated Income.--**  If the amounts permanently set aside or to be used exclusively for charity and other purposes described in subsection (a) during the taxable year or any preceding taxable year and not actually paid out by the end of the taxable year are:

**(A)**  unreasonable in amount or duration in order to carry out such purposes of the trust, or

**(B)**  used to a substantial degree for purposes other than those prescribed in subsection (a), or

**(C)  invested in such a manner as to jeopardize the interests of religious, charitable, scientific, and other beneficiaries.--**  The amount otherwise allowable under subsection (a) as a deduction shall be limited to the amount actually paid out during the taxable year and shall not exceed fifteen percent (15%) of the net income of the trust (computed without the benefit of subsection (a)).

## Section 1083.03.-- Credits Against Net Income.--

For purposes of the tax imposed under Section 1021.01, an estate shall be allowed, in lieu of the exemptions granted under Section 1033.18(a), a credit of one thousand three hundred dollars ($ 1,300) against its net income, and a trust shall be allowed, in lieu of the exemptions granted under Section 1033.18(a), a credit of one hundred dollars ($ 100) against its net income.

## Section 1083.04.-- Different Taxable Years.--

If the taxable year of a legatee, heir, or beneficiary is different from that of the estate or trust, the amount which he/she is required, under Section 1083.02(a), to include when computing his/her net income shall be based upon the income of the estate or trust for any taxable year of the estate or trust ending within or with the taxable year of such legatee, heir, or beneficiary.

## Section 1083.05.-- Revocable Trusts.--

Where, at any time, the power to revest in the grantor title, to any portion of the corpus of the trust is exercisable by:

**(1)**  the grantor, either alone or together with any person not having a substantial adverse interest in the disposition of such portion of the corpus or the income therefrom, or

**(2)**  by any person not having a substantial adverse interest in the disposition of such portion of the corpus or the income therefrom, then the income of such portion of the trust shall be included when computing the net income of the grantor.

## Section 1083.06.-- Grantor's Trust.--

**(a)**  Where any portion of the income of a trust:

**(1)**  Is or, at the discretion of the grantor or in any person not having a substantial adverse interest in the disposition of such portion of the income, may be held or accumulated for future distribution to the grantor; or

**(2)** may, at the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such portion of the income, be distributed to the grantor; or

**(3)** is or, at the discretion of the grantor or in any person not having a substantial adverse interest in the disposition of such portion of the income, may be applied to the payment of premiums for insurance policies on the life of the grantor, except insurance policies irrevocably payable for the purposes and in the manner specified in Section 1033.15(a)(3), related to the deduction for charitable contributions, then such portion of the income of the trust shall be included when computing the net income of the grantor.

**(b)** As used in this section, the term "at the discretion of the grantor" means at the discretion of the grantor, either alone or together with any person not having a substantial adverse interest in the disposition of the portion of the income in question.

**(c)** The income of a trust shall not be considered taxable to the grantor under subsection (a) or under any other provision of this Subtitle merely because such income, at the discretion of another person, the trustee, or the grantor acting as trustee or co-trustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed. In cases where the amounts so applied or distributed are paid out of the corpus or out of sources other than income for the taxable year, such amounts shall be considered paid out of income to the extent of the income of the trust for such taxable year which is not paid, credited, or to be distributed under Section 1083.01 and which is not otherwise taxable to the grantor.

### Section 1083.07.-- Taxes of the United States, Possessions of the United States, and Foreign Countries.--

The amount of income or excess profits of taxes imposed by the United States, possessions of the United States, and foreign countries shall be allowed as credit against the tax of the beneficiary of an estate or trust up to the limit provided in Section 1051.01.

### Section 1083.08.-- Net Operating Losses.--

The benefit of the deduction for net operating losses allowed by Section 1031.04(a)(11) shall be allowed to estates and trusts under regulations prescribed by the Secretary.

### Section 1083.09.-- Income from an Estate or Trust in Cases of Divorce or Separation.--

**(a)  Inclusion in Gross Income.--**  There shall be included in the gross income of a spouse legally separated under a decree of divorce, or of separate maintenance (or who is separated from his/her spouse under a valid written separation agreement) or of a spouse who, by reason of being separated from his/her spouse is required, in accordance with the provisions of Section 1061.01, to file a separate return, the amount of income of any trust that such spouse is entitled to receive and which, except for the provisions of this section, would be includable in the gross income of the other spouse. This amount shall not, despite Sections 1083.05 and 1083.06 or any other provision of this Subtitle, be includable in the gross income of such other spouse. This subsection shall not apply to that part of any such income from the trust which the terms of the decree of divorce or of separate maintenance or the valid written separation agreement or trust instrument or any agreement between the parties appearing in a notarized document, in case of separation, fix, in terms of an amount of money from a portion of such income, as a sum which is payable for the support of minor children of said spouse. For purposes of this subsection, in the event that such income is less than the amount specified in the decree, in the trust instrument or in the agreement, as the case may be, such income shall be considered a payment for such support to the extent of the sum paid for these purposes.

**(b)  Spouse Considered as Beneficiary.--**  For purposes of computing the net income of the estate or trust and the net income of the spouse to whom Section 1032.02 or subsection (a) of this Section refers, said spouse shall be considered as the beneficiary specified in this Subchapter. A payment in accordance

with Section 1032.02 to any part of which the provisions of this subchapter are applicable shall be included in the gross income of the beneficiary in the taxable year in which said part of the payment must be included according to this Subchapter.

## CHAPTER 9 -  FOREIGN TAXPAYERS

**SUBCHAPTER A -** NONRESIDENT ALIEN INDIVIDUALS

**Section 1091.01.-- Tax on Nonresident Alien Individuals.--**

   **(a) Income Not Related to Trade or Business in Puerto Rico.--**

      **(1) General Rule.--**

         **(A) Imposition of Tax.--**  There shall be imposed, collected, and paid for each taxable year, in lieu of the tax imposed by Sections 1021.01 and 1021.02, upon the amount received, or constructively received, by any nonresident alien individual who is not engaged in trade or business in Puerto Rico, the tax provided below:

            **(i)** Interests received by a related person, rents, royalties, salaries, annuities, compensations, remunerations, emoluments, distributions from entities exempt by the provisions of subsections (a)(8)(F) or (a)(5)(A) of Section 1101.01, incomes pertaining to the distributive share of a partner's interest in a partnership, special partnership, limited liability company, net capital earnings, or other fixed or determinable annual or periodical gains, profits, and income (other than insurance premiums or interests), a tax of twenty-nine percent (29%).

            **(ii)** Dividends, a tax of ten percent (10%).

            **(iii)** Income pertaining to the distributive shares of a stockholder in a corporation of individuals, a tax of thirty-three percent (33%).

         **(B)**  The provisions of this subsection shall not apply to the interests (including the original issue discount, letters of credit, and other financial guarantees), dividends, interest in a partnership, or other income items similar to these that are received from international insurers or from international insurer holding companies that comply with Section 61.040 of the Insurance Code of Puerto Rico.

      **(2) Definition of "Net Capital Gains".--**  Means the amount by which gains derived from sources within Puerto Rico in sales or exchanges of capital assets exceed losses, allocable to sources within Puerto Rico, from such sales or exchanges.

      For purposes of determining capital gains, the gains and losses shall be taken into account only if and to the extent that they would be recognized and taken into account if such individual was engaged in trade or business in Puerto Rico, except that such losses shall be determined without the benefits of capital loss carry-over provided in Sections 1021.01 and 1021.02.

      **(3) Definition of "Related Person".--**  The term "related person" shall have the same meaning established in Section 1010.05 of this Subtitle.

   **(b) Engaged in Trade or Business in Puerto Rico.--**  A nonresident alien individual engaged in trade or business in Puerto Rico during the taxable year shall pay tax on net income which is effectively connected with the conduct of trade or business within Puerto Rico, as provided in Subchapter A of Chapter 2 of this Subtitle. When determining net income for purposes of this subsection, gross income shall only consist of the gross income which is effectively connected with the conduct of trade or business within Puerto Rico.

   **(c) Option to Treat Real Estate Income as Income Related to Business in Puerto Rico.--**

      **(1) In General.--**  A nonresident alien individual that is not engaged in trade or business in Puerto Rico who, during the taxable year, derives any income from real property located in Puerto Rico and owned

for the production of income, or from any interest in said property, including gains in the sale or exchange of such real property or any interest thereon and that, if it were not for this subsection, would not be treated as income which is effectively connected with the conduct of trade or business within Puerto Rico, may opt, for each taxable year, to consider all such income as income which is effectively connected with the conduct of trade or business within Puerto Rico. In such case, such income shall be taxed as provided in subsection (b). An option pursuant to this paragraph for any taxable year shall remain in effect for all the following taxable years, except that, with the consent of the Secretary, such option may be revoked with respect to any taxable year.

**(2)** If an option made pursuant to paragraph (1) has been revoked, a new option may not be made for the next four (4) taxable years following that for which the revocation is effective, unless the Secretary approves the same.

**(3) Form and Date of Option and Revocation.--** An option under paragraph (1) or any revocation of said option shall be made only in the form and on the date that the Secretary may prescribe by regulations.

**(4) Special Rules.--** For purposes of this Subtitle--

**(A)** With regard to other income from sources within or outside Puerto Rico derived by a nonresident alien individual, an option under paragraph (1) alone shall not have the effect of treating such individual as engaged in trade or business in Puerto Rico, and

**(B)** A nonresident alien individual who is a partner in a special partnership shall not be allowed to effect an option under paragraph (1) with respect to the distributive share of the net income of the special partnership, or with respect to any real estate owned by said special partnership.

**(d) Transitory Provisions.--** Any distribution of dividends and partnership profit shares (except special partnership profit shares) made during the period from July 1, 2006 to December 31, 2006, shall be subject to a special tax rate of five percent (5%) of the total amount received by a nonresident alien individual in lieu of the special tax established under subsection (a)(1)(A)(ii). The distributions made by a public corporation to said individuals are excluded from the application of this provision.

Notwithstanding the foregoing, the distributions made and taxed pursuant to the provisions of this subsection do not have to be ordinarily distributed to stockholders or partners of the entities that make said distributions. Thus, said money may be kept in the books of the corporation or partnership in question for the purpose of complying with any type of contractual, commercial, or statutory commitment of said entities, to be taken into consideration at the time of making any type of distribution by the Board of Directors or managing partner or directors of said corporations or partnerships, and subject as such to their discretion in terms of the source or origin of the money to be distributed in the future by any of said entities.

## Section 1091.02.-- Gross Income.--

In the case of a nonresident alien individual, the gross income includes only:

**(a)** The gross income derived from sources within Puerto Rico, and

**(b)** The gross income effectively connected with the conduct of trade or business within Puerto Rico.

## Section 1091.03.-- Deductions.--

**(a) General Rule.--** In the case of a nonresident alien individual, deductions shall be allowed only for purposes of Section 1091.01(b) and, except as provided in subsection (b), only if, and to the extent that they are connected with income effectively connected with the conduct of trade or business in Puerto Rico. The proper apportionment and allocation of deductions for these purposes shall be determined by rules and regulations prescribed by the Secretary.

2011 PR H.B. 3070

(b) **Exceptions.--**  The following deductions shall be allowed whether related or not with income effectively connected with the conduct of trade or business within Puerto Rico:

(1) **Losses.--**  The deduction allowed by Section 1033.15(a)(2), for losses not connected with the trade or business if incurred in transactions entered into for profit, shall be allowed whether or not connected with income from sources within Puerto Rico, but only if the profit, if such transaction had resulted in a profit, would have been taxable under this Subtitle.

(2) **Charitable Contributions or Gifts.--**  A deduction shall be allowed for contributions as provided by Section 1033.15, whether or not connected with income which is effectively connected with the conduct of trade or business within Puerto Rico, but only if such contributions or gifts are made to domestic corporations or to community chests, funds, or foundations created in Puerto Rico (provided that no portion of the net earnings results in the benefit of any private shareholder or individual), or to the special fund for vocational rehabilitation authorized by the Vocational Rehabilitation Act. The amount so allowable, as a whole, shall not exceed fifty percent (50%) of the adjusted gross income which is effectively connected with the conduct of trade or business within Puerto Rico.

## Section 1091.04.-- Personal Exemptions and for Dependents.--

In the case of a nonresident alien individual, no exemptions under Section 1033.18 shall be allowed.

## Section 1091.05.-- Allowance of Deductions.--

A nonresident alien individual shall receive the benefit of the deductions allowed under this Subtitle only if he/she files or causes to be filed with the Secretary a true and accurate return of his/her total income received from sources inside Puerto Rico, and his/her income effectively connected with the conduct of trade or business in Puerto Rico, in the manner prescribed in this Subtitle; including therein all the information that the Secretary deems necessary to determine said deductions. This section shall not be interpreted to deny the credits provided in Sections 1053.01, 1053.02, 1053.04, 1053.05, 1053.07, 1053.08, and 1053.09.

## Section 1091.06.-- Credits Against Tax.--

An nonresident alien individual engaged in trade or business within Puerto Rico during the taxable year shall be allowed the credits against the tax, for taxes paid to the United States, possessions of the United States, and foreign countries, with respect to income from sources outside Puerto Rico effectively connected with the conduct of trade or business in Puerto Rico allowed by Section 1051.01.

## Section 1091.07.-- Returns.--

(a) **Time to File.--**  In the case of an nonresident alien individual who has no income effectively connected with the conduct of trade or business in Puerto Rico, or with respect to whose wages, as defined in Section 1062.01(a), withholding under said Section is not applicable, the return, in lieu of the time prescribed in Section 1061.16, shall be filed on or before the fifteenth (15th) day of the sixth (6th) month following the close of the fiscal year, or, if the return is filed on the basis of the calendar year, then on or before the fifteenth (15th) day of June.

(b) **Exemption from Requirement to File.--**  Subject to such conditions, limitations, and exceptions and under such regulations as may be prescribed by the Secretary, nonresident alien individuals not engaged in trade or business in Puerto Rico subject to the tax imposed by Section 1091.01(a), may be exempt from the requirement of filing returns of such tax.

## Section 1091.08.-- Payment of Tax.--

**(a)  Time of Payment.--**  In the case of a nonresident alien individual not engaged in trade or business within Puerto Rico with respect to whose wages, as defined in Section 1061.01(a), withholding under said Section is not applicable, the total amount of tax imposed by this Subtitle shall be paid, in lieu of the time prescribed in Section 1061.16(a), on the fifteenth (15th) day of June following the close of the calendar year, or, if the return should be filed on the basis of a fiscal year, then on the fifteenth (15th) day of the sixth (6th) month following the close of the fiscal year.

**(b)  Withholding at Source.--**  The withholding at source of tax on income of nonresident alien individuals not engaged in trade or business in Puerto Rico shall be as provided in Section 1062.08.

## SUBCHAPTER B -- FOREIGN CORPORATIONS

**Section 1092.01.-- Tax on Foreign Corporations and Partnerships.--**

**(a)  Tax on Foreign Corporations Not Related to Trade or Business in Puerto Rico.--**

**(1)  General Rule.--**

**(A)  Imposition of Tax.--**  There shall be imposed, collected, and paid for each taxable year, in lieu of the tax imposed by Sections 1022.01, 1022.02, 1022.03, and 1023.03, upon the amount received or constructively received by any foreign corporation not engaged in trade or business in Puerto Rico, from sources within Puerto Rico, the tax provided below:

**(i)**  Interests received by a related person (as this term is defined in Section 1010.05) from rents, royalties, salaries, annuities, compensations, remunerations, emoluments, distributions from entities exempt by the provisions of subsections (a)(8)(F) or (a)(5)(A) of Section 1101.01, incomes pertaining to the distributive share of a partner's interest in a partnership, special partnership, limited liability company, net capital earnings, or other fixed or determinable annual or periodical gains, profits, and income (other than insurance premiums or interests), a tax of twenty-nine percent (29%).

**(ii)**  Dividends, a tax of ten percent (10%).

**(B)  Special Rule and Definitions.--**

**(i)  Special Rule.--**  The tax imposed by subparagraph (A) on dividends is subject to the following limitations and exceptions:

**(I)**  In the case of corporations to which Section 1062.11(b) refers, the tax shall be limited to that portion, if any, of said ten percent (10%) that may be taken as a credit against the tax payable on said dividends to the country where the corporation was organized.

**(II)**  A tax shall not be imposed on dividends or benefits received from income of industrial development coming from interests over obligations of the Commonwealth of Puerto Rico or any of its instrumentalities or political subdivisions, on mortgages insured by the Puerto Rico Housing Bank and Finance Agency, acquired after March 31, 1977, and on loans or other mortgage guaranteed securities granted by any general pension or retirement system established by the Legislative Assembly of Puerto Rico, the municipalities and agencies, instrumentalities, and public corporations of the Commonwealth of Puerto Rico, acquired after March 31, 1977.

**(III)**  In the case of a corporation organized under the laws of a foreign country that is not required to pay, in any jurisdiction outside of Puerto Rico or outside of the United States, any tax whatsoever on dividends derived from industrial development income, said corporation shall not be subject to any tax with respect to the amount of such dividends derived from industrial development income.

**(ii)**  The term "net capital gains" means the amount by which the gains derived from sources within Puerto Rico in sales or exchanges of capital assets exceed losses, allocable to sources

within Puerto Rico, from such sales or exchanges. For purposes of determining capital gains, gains and losses shall be taken into account only if, and to the extent that, the same would be recognized and taken into account if said corporation was engaged in trade or business in Puerto Rico, except that such gains and losses shall be computed without the benefits of the capital loss carryover provided in Section 1034.01(e). Any gain or loss taken into consideration upon determining the tax under subsection (b) shall not be taken into consideration upon determining the tax under this clause.

**(2)  Exceptions.--**   For purposes of paragraph (1), dividends derived from industrial development income received by corporations organized under the laws of any state of the United States shall be subject to the following exceptions:

**(A)  Investments of Eligible Funds in Government Obligations.--**   The principal derived from industrial development income accumulated during taxable years beginning before January 1, 1993, and invested in obligations of the Commonwealth of Puerto Rico or any of its instrumentalities or political subdivisions, or in mortgages secured by the Puerto Rico Housing Bank and Finance Agency, and on loans or other mortgage-guaranteed securities granted by any general pension and retirement system established by the Legislative Assembly of Puerto Rico, the municipalities and agencies, instrumentalities, and public corporations of the Commonwealth of Puerto Rico which is distributed in dividends, shall not be subject to the tax imposed by paragraph (1) of this subsection and shall be tax exempt upon meeting the following requirements:

**(i)**   That they are possessed as of March 31, 1977, and held by the investing corporation for a period of more than eight (8) years starting from said date; or

**(ii)**   That they are acquired after March 31, 1977, and held by the investing corporation for a period of more than eight (8) years starting from the date of acquisition.

For purposes of this paragraph, if the corporation has held the note or mortgage for more than five (5) consecutive years, the aforesaid period of possession shall not be deemed as interrupted because of the fact that the holding corporation of said note or mortgage sells, transfers, or exchanges the same, provided that it reinvests the principal in other notes or mortgages specified in this paragraph within a period not to exceed thirty (30) days. Only one transfer shall be permitted in the case of any note or mortgage during said period of eight (8) years.

When the investment is made in obligations of the Commonwealth of Puerto Rico, or any of its instrumentalities or political subdivisions, with a maturity date of more than eight (8) years beginning from the date of acquisition of such obligation, and such obligation is redeemed, retired, or prepaid by the issuing government entity before eight (8) years beginning from the date of acquisition, the investing corporation may remit the proceeds received as a dividend, which dividend shall not be subject to the tax imposed by paragraph (1) and shall be tax exempt.

**(B)  Investment of Eligible Funds in Obligations of the Government Development Bank for Puerto Rico or any of its Subsidiary Corporations, for the Financing of Construction, Acquisition, or Improvements of Housing in Puerto Rico.--**   A sum equal to the principal derived from industrial development income accumulated during taxable years beginning before January 1, 1993 and invested in obligations of the Government Development Bank for Puerto Rico, or any of its subsidiary corporations, for financing through the purchase of mortgages for the construction, acquisition, or improvement of housing in Puerto Rico begun after December 31, 1984, or for refinancing mortgage obligations the interests of which are subsidized according to the provisions of Act No. 10 of July 5, 1973, as amended, Act No. 58 of June 1, 1979, as amended, and Act No. 141 of June 14, 1980, as amended, under the terms and conditions that said Bank establishes through regulations, could be distributed exempt from taxation and shall not be subject to taxes imposed by paragraph (1) of this subsection, at a rate of a fraction whose numerator shall be the number one (1) and whose denominator shall be the total number of periods established for

the payment of interests in said obligations and in no case shall said fraction be less than one eighth (1/8) annually or one sixteenth (1/16) semi-annually, based on the dates established for the payment of interests over said obligations, provided that the investing corporation has possessed the obligation for the entirety of the year or semester immediately preceding said dates. It is an option of the investing corporation to accumulate the amounts that qualify for annual or semi-annual distribution under this paragraph to distribute at any later dates. In the case of investments described in subparagraph (A) of this paragraph (2) of this Section:

(i)   A total amount of the principal invested in obligations described in this paragraph equal to the amount of the distributions allowed under the same shall be excluded. An amount equal to said principal (excluding from the same a total amount equal to the amount of the authorized distributions under this paragraph) shall be distributed under said subparagraph (A) at the end of the period of eight (8) years provided by said paragraph. The investment shall continue to qualify for distribution under this paragraph for the time period in excess of said period of eight (8) years that it is possessed by the investing company.

(ii)   Those that are sold, transferred, or exchanged at any time and the principal is reinvested within the thirty (30) days following said sale, transfer, or exchange in obligations described in this subparagraph shall be considered to comply with said subparagraph (A), but a total amount equal to the amount of the authorized distributions under this subparagraph shall be excluded from the same, provided that the investing corporation has possessed the two (2) classes of investments for eight (8) years or more, including the thirty (30)-day period referred to in this clause. A total amount equal to said principal (excluding from the same a total amount equal to the amount of the authorized distributions under this subparagraph) shall be distributed under said subparagraph (A) at the end of said period of eight (8) years. The investment shall continue to qualify for distribution under this subparagraph for the time period in excess of said period of eight (8) years that it is possessed by the investing corporation. In the case of investments described in this subparagraph that are sold, transferred, or exchanged at any time and the principal is reinvested within thirty (30) days following said sale, transfer, or exchange in obligations described in subparagraph (A), shall be considered to comply with said subparagraph (A), but it shall be excluded from the same a total amount equal to the amount of the authorized distributions under this subparagraph, provided that the investing corporation has possessed the two (2) classes of investments for eight (8) years or more, including the thirty (30)-day period referred to in this subparagraph. A total amount equal to said principal (excluding from the same a total amount equal to the amount of the authorized distributions under this subparagraph) shall be distributed under said subparagraph (A) at the end of said period of eight (8) years. The distributions authorized under this subparagraph shall reduce, in the year in which they are made, the net income of industrial development for purposes of determining the investment requirements provided by Act No. 26 of June 2, 1978, as amended, and Act No. 8 of January 24, 1987, or by any other similar laws that might substitute them.

(C)   Investment Increase Credit.--   The tax imposed by paragraph (1)(A)(ii) or by subparagraph (D) of this Section shall be credited by three percent (3%) of the investment made by the subsidiary before January 1, 1993, in the acquisition, construction, and extension of buildings and other structures used in manufacturing, in excess of the investment in such properties owned by the subsidiary as of March 31, 1977.

In the case of corporations that have not enjoyed tax exemption under the appropriate industrial or tax incentives act for two (2) taxable years, this credit shall be granted to the nonresident corporation for the increase in investments made by the subsidiary after the end of its second tax exempt year. This credit may be carried over to subsequent taxable years.

The investments in real property made for purposes of obtaining the waiver provided in paragraph (6) of Subsection (a) of Section 4 of the Puerto Rico Tax Incentives Act of 1987, as amended, may not be used for purposes of this subsection.

**(D)  Alternative Tax.--**  In lieu of the tax imposed by paragraph (1) of this subsection, a tax of seven percent (7%) shall be imposed, collected, and paid in the case of dividends derived from industrial development income, under the following conditions:

**(i)**  The dividend paid on industrial development income accumulated in taxable years beginning prior to October 1, 1976, shall not exceed twenty-five percent (25%) of the undistributed amount of said industrial development income available at the beginning of any taxable year. Provided, that a sum equal to the amount of the dividend distributed in the taxable year in which the distribution is made shall be invested in Puerto Rico.

**(ii)**  The dividend paid from industrial development income accumulated during any taxable year beginning after September 30, 1976, shall not exceed seventy-five percent (75%) of the industrial development income accrued in said taxable year. Provided, that twenty-five percent (25%) of the industrial development income of said taxable year shall be invested in Puerto Rico for a period of more than eight (8) years.

**(iii)**  For purposes of clauses (i) and (ii), the industrial development income accumulated during taxable years prior to October 1, 1976, and the industrial development income accumulated in each taxable year beginning after September 30, 1976, shall be as the same appears in the income tax returns of exempt corporations filed by the corporation.

For taxable years beginning after December 31, 1992, the alternative tax herein provided shall not be applicable in those cases in which the taxpayer avails him/herself of the provisions of Section 4(h) of Act No. 26 of June 2, 1978, as amended.

**(E)  Distribution Order.--**  For purposes of this paragraph, dividends shall be considered as made in the following order:

**(i)**  The distribution of industrial development income to which subparagraph (A) of this paragraph refers, the distribution of interests derived on obligations of the Commonwealth of Puerto Rico or any of its instrumentalities or political subdivisions, the distribution of interests on mortgages secured by the Puerto Rico Housing Bank and Finance Agency, acquired after March 31, 1977, and on loans or other mortgage-guaranteed securities granted by any general pension or retirement system established by the Legislative Assembly of Puerto Rico, the municipalities and agencies, instrumentalities, and public corporations of the Government of Puerto Rico, acquired after March 31, 1977.

**(ii)**  The distribution of industrial development income accumulated in taxable years beginning before October 1, 1976, or the distribution of industrial development income accumulated in taxable years beginning after September 30, 1976, as it may be designated by the corporation paying the dividend in a written notice sent to its stockholders and in the annual return of income tax withheld at the source filed with the Secretary of the Treasury.

**(F)**  In any case in which election is made for the provisions of subparagraph (D)(ii) for any taxable year and, subsequently, the requirements established in said subparagraph are not met, the dividends shall be subject to the tax imposed by paragraph (1). The corporation shall file an annual return of the income tax withheld at the source, amended for any year in which the distribution of the dividend of that particular year was made, and shall pay the unpaid tax. The statute of limitations for assessment regarding any tax thus owed shall not begin to run prior to the date on which the amended return mentioned in the preceding sentence is filed.

**(3)  Definition of "Related Person".--**

**(A)  General Rule.--**  For purposes of paragraph (1), a foreign corporation not engaged in trade or business in Puerto Rico shall be considered a related person according to the provisions in Section 1010.05 of this Subtitle.

Any foreign corporation not engaged in trade or business within Puerto Rico shall also be considered a related person when the debtor of the obligation possesses fifty percent (50%) or

more of the value of the stocks or shares of said corporation. For the purpose of determining whether the debtor of the obligation possesses fifty percent (50%) or more of the value of the stocks or shares of a foreign corporation not engaged in trade or business within Puerto Rico, the rules of Section 1010.05 shall be applied, but substituting the phrase "foreign corporation," where it appears in said clauses, with the phrase "debtor of the obligation."

**(4)** The provisions of paragraph (1) of this Section shall not apply to the interests (including the original issue discount, letters of credit, and other financial guarantees), dividends, interest in a partnership, or other income items similar to those received from international insurers or from international insurer holding companies that comply with Section 61.040 of the Insurance Code of Puerto Rico.

**(b)  Tax on Foreign Corporations Engaged in Trade or Business within Puerto Rico.--**  A foreign corporation engaged in trade or business within Puerto Rico during the taxable year shall pay taxes as provided in Sections 1022.01, 1022.02, 1022.03, and 1023.03 on net income effectively connected with the conduct of trade or business within Puerto Rico.

**(c)  Gross Income.--**  In the case of a foreign corporation, gross income only includes:

**(1)** Gross income derived from sources within Puerto Rico, and

**(2)** Gross income effectively connected with the conduct of trade or business within Puerto Rico.

**(d)  Option to Treat Real Estate Income as Income Connected with Business within Puerto Rico.--**

**(1)  In General.--**  A foreign corporation not engaged in trade or business in Puerto Rico that, during the taxable year, derives any income from real estate located in Puerto Rico owned for the production of income, or from any interest in said property, including gains from the sale or exchange of said real property or any interest therein and that, if not for this subsection, would not be treated as income effectively connected with the conduct of trade or business within Puerto Rico, may elect, for such taxable year, to treat all such income as income effectively connected with the conduct of trade or business within Puerto Rico. In such case, such income shall be taxable as provided in subsection (b). An election under this paragraph for any taxable year shall remain in effect for all subsequent taxable years, except that it may be revoked, with the consent of the Secretary, with respect to any taxable year.

**(2)  Election after Revocation.--**  If an election made under paragraph (1) has been revoked, a new election may not be made under such paragraph for any taxable year before the fifth (5th) taxable year that begins after the first taxable year for which such revocation is effective, unless the Secretary consents to such new election.

**(3)  Form and Time of Election and Revocation.--**  An election under paragraph (1) and any revocation of such an election may be made only in such manner and at such time as the Secretary may provide through regulation.

**(4)  Special Rules.--**  For purposes of this Subtitle--

**(A)**  With respect to other income from sources within or outside Puerto Rico derived by a foreign corporation, an election under paragraph (1) by itself does not have the effect of treating such corporation as engaged in trade or business in Puerto Rico; and

**(B)**  A foreign corporation that is a partner in a partnership or special partnership may not effect an election under paragraph (1) with respect to its distributive share in the net income of a partnership or special partnership with respect to any real property owned by such partnership or special partnership.

## Section 1092.02.-- Tax on Dividend-Equivalent Amount.--

**(a)  Imposition of Tax.--**  In addition to the taxes imposed by Sections 1022.01, 1022.02, 1022.03, and 1023.03, a tax shall be imposed, collected, and paid for each taxable year upon every foreign corporation

engaged in trade or business in Puerto Rico equal to ten percent (10%) of the dividend-equivalent amount for the taxable year.

**(b)  Dividend-Equivalent or Profit Distribution Amount.--**  For purposes of subsection (a), the terms "dividend-equivalent amount" and "profit distribution" mean the effectively connected earnings and profits of a foreign corporation or partnership engaged in trade or business in Puerto Rico for the taxable year, adjusted in the following manner:

    **(1)  Reduction Due to Increase in Puerto Rico Net Equity.--**  The effectively connected earnings and profits for the taxable year shall be reduced, but not below zero, by that amount which the Puerto Rico net equity of the foreign corporation or partnership as of the close of the taxable year exceeds the Puerto Rico net equity of the foreign corporation or partnership as of the close of the preceding taxable year.

    **(2)  Increase Due to Decrease in Puerto Rico Net Equity.--**  The effectively connected earnings and profits for the taxable year shall be increased by that amount which the Puerto Rico net equity of the foreign corporation as of the close of the preceding taxable year exceeds the Puerto Rico net equity of the foreign corporation as of the close of the taxable year.

    **(3)  Limitation.--**

        **(A)**  The increase under paragraph (2) for any taxable year shall not exceed the effectively connected earnings and profits accumulated as of the close of the preceding taxable year.

        **(B)**  For purposes of subparagraph (A), the term "effectively connected earnings and profits accumulated" means the excess of:

            **(i)**  The aggregate effectively connected earnings and profits for taxable years beginning after December 31, 1986, over,

            **(ii)**  the aggregate dividend- or profit distribution-equivalent amounts determined for such taxable years.

**(c)  Puerto Rico Net Equity.--**  For purposes of this Section--

    **(1)  In General.--**  The term "Puerto Rico net equity" means assets in Puerto Rico reduced, including below zero, by liabilities in Puerto Rico.

    **(2)  Assets in Puerto Rico and Liabilities in Puerto Rico.--**  For purposes of paragraph (1)--

        **(A)  Assets in Puerto Rico.--**  The term "assets in Puerto Rico" means the money plus the aggregate adjusted basis of property of the foreign corporation considered as effectively connected with the conduct of trade or business in Puerto Rico under the regulations prescribed by the Secretary. For purposes of the preceding sentence, the adjusted basis of any property shall be its adjusted basis for purposes of computing earnings and profits.

        **(B)  Liabilities in Puerto Rico.--**  The term "liabilities in Puerto Rico" means the liabilities of the foreign corporation considered as effectively connected with the conduct of trade or business in Puerto Rico under the regulations prescribed by the Secretary.

**(d)  Effectively Connected Earnings and Profits.--**  For purposes of this section, the term "effectively connected earnings and profits" means earnings and profits, without decrease by reason of any distributions made during the taxable year that are attributable to income that is effectively connected, or treated as effectively connected, with the conduct of trade or business within Puerto Rico. Effectively connected earnings and profits for a taxable year shall be decreased by the income tax paid under this Subtitle with respect to such taxable year, except for the tax provided in this section. The term "earnings and profits" shall not include dividends from sources within Puerto Rico.

**(e)  Coordination of Taxation and Withholding.--**  If, for any taxable year, a foreign corporation is subject to the tax imposed by subsection (a), no tax shall be imposed nor withholding made under Sections

1062.08, 1062.11, and 1092.01, upon any dividend or partnership interest paid by the foreign corporation or partnership from such year's earnings and profits.

**(f) Limitation.--**

**(1)** The provisions of this section shall not apply to any taxable year in which the foreign corporation engaged in trade or business in Puerto Rico derives at least eighty percent (80%) of its gross income from sources within Puerto Rico or from income effectively connected, or treated as effectively connected, during the period of three (3) taxable years ending with the close of such taxable year.

**(2)** Industrial development income, pursuant to the provisions of the Economic Incentives Act for the Development of Puerto Rico and any analogous or subsequent law, tourism development income exempt pursuant to the provisions of the Puerto Rico Tourist Development Act of 1993, and income derived by international banking entities organized under the provisions of Act No. 52 of August 11, 1989 [7 L.P.R.A. §§ 232 et seq.], known as the "International Banking Center Regulatory Act," shall not be subject to the provisions of this section.

**(3)** The provisions of this section shall not apply to partnerships, special partnerships, or corporations of individuals.

**(4)** The provisions in this section shall not apply to income derived by an international insurer, as defined in Section 61.040(4) of the Insurance Code of Puerto Rico.

## Section 1092.03.-- Deductions.--

**(a) In General.--** In the case of a foreign corporation, deductions shall be allowed only for purposes of Section 1092.01(b) and, except as provided in subsection (b) and in Section 1092.04, only if and to the extent that they are effectively connected with income which is effectively connected the conduct of trade or business within Puerto Rico. Proper apportionment and allocation of deductions for these purposes shall be determined as per the rules and regulations prescribed by the Secretary.

**(b) Charitable Contributions.--** Deductions for charitable contributions allowed by Section 1033.10 shall be allowed whether or not connected with income which is effectively connected with the conduct of trade or business within Puerto Rico.

## Section 1092.04.-- Requirements for Allowing Deductions and Credits.--

**(a)** A foreign corporation shall receive the benefit of the deductions and credits allowed to it only if it meets each of the following requirements:

**(1)** Files or causes to be filed with the Secretary a true and accurate return of its total income which is effectively connected with the conduct of trade or business within Puerto Rico, in the manner prescribed in this Subtitle; including therein all the information that the Secretary may deem necessary for the computation of such deductions and credits.

**(2)** The corporation or partnership shall have available at all times the accounting books containing the operations of branches or divisions in Puerto Rico, including all the pertinent documents evidencing such deductions and the basis used for the apportionment and allocation of deductions to income effectively connected with the conduct of trade or business within Puerto Rico.

**(3)** The corporation or partnership shall accompany its income tax return with financial statements in relation to the assets and liabilities effectively connected to its trade or business in Puerto Rico.

## Section 1092.05.-- Credits Against Tax.--

**(a) Credits Allowed by Section 1051.01.--** Foreign corporations shall be allowed credits against tax for taxes paid to the United States, to possessions of the United States, and to foreign countries, with respect

to income from sources outside Puerto Rico effectively connected with the conduct of trade or business in Puerto Rico, allowed by Section 1051.01.

**(b) Credit for Investment Increase.--** Foreign corporations shall be allowed the investment increase tax credit provided in Sections 1051.05 and 1092.01(a)(2)(C).

## Section 1092.06.-- Returns.--

**(a) Time to File.--** In the case of a foreign corporation not having any office or place of business in Puerto Rico, the return, in lieu of the time prescribed in 1061.16(a)(1), shall be filed on or before the fifteenth (15th) day of the sixth (6th) month following the close of the fiscal year, or if the return is filed on the basis of the calendar year, on or before the fifteenth (15th) day of June. If any corporation has no office or place of business in Puerto Rico but has an agent in Puerto Rico, the return shall be filed by the agent.

**(b) Exemption from Requirement to File.--** Subject to such conditions, limitations, and exceptions and under such regulations as may be prescribed by the Secretary, corporations and partnerships subject to the tax imposed by 1092.01(a)(1)(A) may be exempt from the requirement of filing returns of such tax.

## Section 1092.07.-- Payment of Tax.--

**(a) Time of Payment.--** In the case of a foreign corporation not having any office or place of business in Puerto Rico, the total amount of tax imposed by this Subtitle shall be paid, in lieu of the time prescribed in Section 1061.16(a), on the fifteenth (15th) day of June following the close of the calendar year, or if the return is made on the basis of a fiscal year, then on the fifteenth (15th) day of the sixth (6th) month following the close of the fiscal year.

**(b) Withholding at Source.--** The withholding at source of tax on income of foreign corporations and partnerships shall be as provided in Section 1062.11.

## Section 1092.08.-- Educational or Charitable Foreign Organizations and Certain Other Exempt Organizations.--

For special provisions regarding unrelated business net income of foreign educational, charitable, and certain other exempt organizations, see Section 1102.02(a).

## SUBCHAPTER C -- FOREIGN PARTNERSHIPS

## Section 1093.01.-- Treatment of Foreign Partnerships; Tax on Partners.--

**(a)** In the case of foreign partnerships engaged in trade or business in Puerto Rico, it shall be understood that a partner is engaged in trade or business in Puerto Rico in his/her distributive share of the partner's interest in such partnership.

**(b)** The foreign partnership shall be subject to:

**(1)** The provisions of Chapter 7 of this Subtitle related to the determination of the distributive share of a partner in the income and expenses of the partnership,

**(2)** Section 1062.05, related to the requirement of estimated tax payment allocable to the distributive share of the partner's interest in a partnership,

**(3)** Section 1061.03, related to the requirement for partners to file partnership and information returns.

## CHAPTER 10 -- NONPROFIT ORGANIZATIONS

**SUBCHAPTER A --** TAX EXEMPT ORGANIZATIONS

**Section 1101.01.-- Tax Exemption to Corporations and Nonprofit Organizations.--**

**(a)**  Except as provided in Subchapter B of Chapter 10 of this Subtitle, the following organizations shall be exempt from taxation under this Subtitle:

**(1)**  Churches, church conventions or associations, as well as religious and apostolic organizations, including corporations and any community chest, fund, or foundation, organized and operated exclusively for religious purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

**(2)**  Organizations that provide services to the community:

**(A)**  Corporations, and any community chest, fund, or foundation, organized and operated exclusively for:

**(i)**  charitable purposes,

**(ii)**  scientific purposes,

**(iii)**  literary purposes,

**(iv)**  educational purposes,

**(v)**  prevention of cruelty or abuse to children, the elderly or the disabled,

**(vi)**  prevention of cruelty or abuse to animals,

**(vii)**  prevention of domestic violence or hate crimes, or

**(viii)**  museums

**(B)**  Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to the purposes listed in paragraph (A).

**(C)**  Subject to the requirements of Act No. 148 of May 10, 1948, any institution, college, academy, or school that is accredited by the Department of Education for Teaching Fine Arts, including cinematography.

**(D)**  Nonprofit educational organizations that maintain, in the regular course of business, a faculty, an established curriculum, and a student body that regularly attends a facility to participate in educational activities.

**(E)**  The provisions of this paragraph shall apply solely to those organizations that comply with the following criteria:

**(i)**  No part of the net earnings of the organization inures to the benefit of any private shareholder or individual; and

**(ii)**  No substantial part of the activities of the organization is lobbying or carrying on propaganda or proselytism on behalf of or against any political party or candidate for public office.

**(3)**  Organizations for the exclusive benefit of members:

**(A)**  Fraternal beneficiary societies, orders, or associations--

**(i)**  Operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and

**(ii)** Providing for the payment of life, sick, accident or other benefits to the members of such society, order, or association or their dependents.

**(B)** Clubs organized and managed for pleasure, recreation, and other non-profitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.

**(C)** Business leagues, chambers of commerce, real-estate boards, and boards of trade not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

**(D)** Local employee association the membership of which is limited to employees of a specific person or persons in a municipality, and the net earnings of which are dedicated exclusively for recreational purposes.

**(4)** Organizations that provide benefits to employees:

**(A)** Voluntary employees' beneficiary associations providing for the payment of life, sick, accident, or other benefits to the members of such association or their dependents, if

 **(i)** Eighty-five percent (85%) or more of its income consist of amounts collected from its members and amounts contributed to the association by the employer of said members for the exclusive purpose of making those benefit payments and covering costs, and

 **(ii)** No part of the net earnings of such association inures (other than through such payments) to the benefit of any private shareholder or individual.

**(B)** Voluntary employees' beneficiary associations providing for the payment of life, sick, accident, or other benefits to the members of such association or their dependents, or designated beneficiaries, if

 **(i)** Admission as member to such association is limited to individuals who are officials or employees of the Government of Puerto Rico or any instrumentality or political subdivision thereof, or of the United States or its agencies and instrumentalities that render services in Puerto Rico, and

 **(ii)** No part of the net earnings of such association inures (other than through such payments) to the benefit of any private shareholder or individual.

**(C)** Teachers' retirement fund associations of a purely local character, if

 **(i)** The income consists solely of amounts received from public taxation, amounts received from assessments on the teaching salaries of members, and income in respect of investments.

 **(ii)** No part of the net earnings inures (other than through payment of retirement benefits) to the benefit of any private shareholder or individual.

**(D)** A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his/her employees or their beneficiaries, or any public or private employee association that provides similar benefits to its members, and which is constituted or organized under the laws of any state of the United States of America, provided that

 **(i)** Said trust or association qualifies as a tax exempt organization under the Federal Internal Revenue Code, and

 **(ii)** No part of the net earnings inures (other than through payment of said benefits) to the benefit of any private shareholder or individual.

**(5)** Homeowner associations:

 **(A) Condominium Management or Residential Real Estate Management Associations.--**

**(i)**  Qualified condominium or residential real estate associations organized and operated to provide for the management, construction, maintenance, care of association property, surveillance control, and similar activities for the benefit of the community, including:

**(I)**  Condominium projects substantially all the units of which are used for residential purposes;

**(II)**  A subdivision, development, or similar area all the lots or buildings of which may only be used by individuals for residential purposes; and

**(III)**  Property owned by a governmental unit and used for the benefit of residents of such unit.

**(ii)**  For purposes of this paragraph, the term "properties" includes property owned by the organization, as well as property owned in common by the members of the organization.

**(iii)**  The provisions of this paragraph shall apply only to those associations that comply with the following income, expenses, and earnings criteria:

**(I)**  Sixty percent (60%) or more of their income for the taxable year must consist of dues, charges, or apportionments of the residential unit titleholders (condominium owners' association) or residence or residential lot titleholders (real estate owners' associations),

**(II)**  At least ninety percent (90%) of their expenses for the taxable year must be attributable to the acquisition, construction, management, maintenance, and care of association property; and

**(III)**  No part of the net earnings may inure to the benefit of any private individual or member.

**(B)  Timeshare Owner and Vacation Club Member Associations.--**

**(i)**  The associations of timeshare or vacation clubs titleholders, organized to give maintenance, care for property, and provide surveillance control and other similar activities for the common benefit of the titleholders as this term is defined in Act No. 252 of December 26, 1995, as amended.

**(ii)**  For purposes of this paragraph, the term "property" includes the property owned by the association, if any, and the property owned in common by the titleholders, members of the association,

**(iii)**  The provisions of this subsection shall only apply to those associations that meet the following criteria:

**(I)**  That they not be covered by the provisions of the Puerto Rico Tourist Development Act, Act No. 78 of September 10, 1993, as amended [23 L.P.R.A. §§ 6001 et seq.], or any similar subsequent law;

**(II)**  That sixty percent (60%) or more of their income for the taxable year consist of dues, charges, or apportionments of the titleholders;

**(III)**  That at least ninety percent (90%) of their expenses for the taxable year be attributable to the acquisition, construction, management, maintenance, and care of association property;

**(IV)**  That no portion of the profits proceeding from the regular course of operation of the association or existing remainder after the association is liquidated or dissolved, inures to the benefit of any titleholder, any specific individual or partner, any developer, or any administrative entity; and

**(V)**  That the property must be located in Puerto Rico.

**(C)**  The Associations of Owners of a Tourism Improvement District, created as provided on September 1, 2001, in the Tourism Improvement District Act of 1998, Act No. 207 of August, 8, 1998, insofar as they do not enjoy benefits under the provisions of any other special law.

**(6)**  Organizations providing rental housing:

**(A)**  Limited dividend corporations, organized under the laws of Puerto Rico or any state of the United States of America, providing rental housing to low- or moderate-income families and which qualify for such limited dividend corporations under Sections 221(d)(3) or 236 of the National Housing Act, as amended (Public Law 73-479, 48 Stat. 1246, 82 Stat. 476), certified by the Department of Housing of Puerto Rico or any other agency, instrumentality, or political subdivision authorized for these purposes. Such corporations shall file, for each taxable year, an income tax return specifically showing the items of their gross income, deductions, and net income, and shall add to the return, as a part thereof, a report showing the name and address of each member of the corporation and the amount of dividends paid to each one during said year.

**(B)**  Nonprofit associations providing rental housing to low-or moderate-income families and which qualify as such under Sections 221(d)(3) or 236 of the National Housing Act (Public Law 73-479, 48 Stat. 1246, Public Law 90-448, 82 Stat. 476, 498), when so certified by the Department of Housing of Puerto Rico or any other agency, instrumentality, or political subdivision authorized for these purposes, which have duly requested a tax exemption before January 1, 2011, and that have been declared as tax exempt by the Secretary.

**(C)**  Nonprofit associations providing rental housing to persons over sixty-two (62) years of age, provided said corporations qualify under Section 202 of the National Housing Act, as amended (Public Law 86-372, *73 Stat. 654),* when so certified by the Department of Housing of Puerto Rico or any other agency, instrumentality, or political subdivision authorized for these purposes, which have duly requested a tax exemption before January 1, 2011, and that have been declared as tax exempt by the Secretary.

**(7)**  Cooperatives:

**(A)**  Subject to the requirements of Act No. 50 of August 4, 1994, known as "General Cooperative Associations Act," the cooperative associations organized and operated under the provisions of said Act.

**(B)**  Subject to the requirements of Act No. 6 of January 15, 1990, known as "Cooperative Savings and Credit Unions Act of 1989," the cooperative credit unions organized and operated under the provisions of said Act.

**(C)**  Subject to the requirements of Act No. 77 of June 19, 1957, as amended [26 L.P.R.A. §§ 101 et seq.], known as the Insurance Code of Puerto Rico, the insurance cooperatives organized and operated under the provisions of said Act.

**(8)**  Other Organizations:

**(A)**  Labor, agricultural, or horticultural organizations.

**(B)**  Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation authorized exclusively for the purpose of burial as a cemetery corporation which is not permitted by its charter to engage in any business not necessarily incident to that purpose, insofar as no part of its net earnings inures to the benefit of any private shareholder or individual.

**(C)**  Corporations organized under any statute of the Legislative Assembly, if such corporations are instrumentalities of the Government of Puerto Rico.

**(D)**  Subject to the requirements of Act No. 57 of June 13, 1963 [13 L.P.R.A. §§ 252 et seq.]; Act No. 26 of June 2, 1978 [13 L.P.R.A. §§ 255 et seq.]; Act No. 8 of January 24, 1987 [13 L.P.R.A. §§ 256 et seq.]; Act No. 135 of December 2, 1997 [13 L.P.R.A. §§ 10101 et seq.]; Act No. 73 of May

28, 2008 [13 L.P.R.A. §§ 10641 et seq.]; Act No. 52 of June 2, 1983 [23 L.P.R.A. §§ 693 et seq.]; Act No. 78 of September 10, 1993 [23 L.P.R.A. §§ 6001 et seq.]; all of them as amended, and any other law substituting or complementing them, and to the extent provided therein, the entities that have obtained or may obtain tax exemption under said laws, or subject to the requirements of any similar law to be approved in the future.

**(E)**  Subject to the requirements of Act No. 168 of June 30, 1968 [13 L.P.R.A. §§ 371 et seq.], and any other law substituting or complementing it, and to the extent provided therein, the entities that have obtained or may obtain tax exemption under said law, or subject to the requirements of any similar law to be approved in the future.

**(F)**  Any entity created or organized under the laws of the United States of America, or those of any state of the United States of America, which, during the taxable year, qualifies as a registered real estate investment company or investment trust under the United States Internal Revenue Code of 1986. In the case of these real estate investment trusts, including its subsidiaries, the exemption on all income from sources within or outside Puerto Rico shall be granted only if all the assets in real property belonging to the trust and its subsidiaries constitute real property as that term is defined in Section 1082.01(c)(7)(D), and the acquisition of said real property by the trust or its subsidiaries (as that term is defined in Section 1082.01(c)(7)(G)), or the interest of the trust in its subsidiaries, occurred after the effective date of Act No. 120 of October 31, 1994, as amended, and through transactions concerning the purchase of assets, stocks, or interests in partnerships that generate income from sources within the Government of Puerto Rico and subject (except for assets purchased from the Government of Puerto Rico, its agencies and instrumentalities) to taxation under this Subtitle, or its equivalent under preceding laws.

**(9)**  Organizations granted exemption under Act No. 120 of October 31, 1994 [13 L.P.R.A. §§ 8006 et seq.]:

**(A)**  Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax established under this Subtitle, which duly requested a tax exemption prior to January 1, 2011, and were declared tax exempt by the Secretary.

**(B)**  Nonprofit organizations or entities devoted exclusively to promoting and developing sports for recreational purposes, and which duly requested a tax exemption prior to January 1, 2011, and were declared tax exempt by the Secretary, provided that they do not do business with the general public in a manner similar to that of for-profit organizations, and comply with the following conditions:

**(i)**  The exempt entity uses its income for expenses related to trainers, managers, administrative operations, sports clinics for children and youths, minor team programs, such as, among others, exhibition games, tournaments for children and youths, social programs related to basketball and other activities related to the development of sports that promote a benefit for general society, as well as for recreational activities.

**(ii)**  Operations devoted to the management of taxable activities, such as the payment of professional or semiprofessional players, income from ticket sales, the sale of snacks, private sponsorships, or transactions that are not devoted to the development of sports, shall remain within a separate taxable entity.

**(iii)**  Donations received by the Commonwealth of Puerto Rico, its agencies, instrumentalities, public corporations, or municipalities must remain accountably separate from other funds generated by the exempt entity. The entities or organizations exempt under the provisions of this subparagraph may receive government donations that have been separated, appropriated, or which are pending disbursement, even when the exemption for the entity or organization has been granted after the designation, identification, or appropriation of the government donations.

**(iv)**  The exempt entity shall submit the financial statements, audited by a certified public accountant licensed to practice in Puerto Rico, to the Department every year.

**(v)**  The net income of the exempt entity shall not inure, in whole or in part, to the benefit of private individuals or shareholders.

**(b)**  An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under any subsection of this section based on the fact that all of its profits are payable to one or more organizations exempt from taxation under this section. For purposes of this paragraph, the term "trade or business" shall not include the rental by an organization of its real property (including personal property leased with the real property).

**(c)**  Notwithstanding the provisions of Subchapter B of Chapter 10, an organization described in this section (except in subsection (b)) shall be considered an organization exempt from income tax for purposes of any law making reference to organizations exempt from income tax.

**(d)**  In the case of organizations declared as tax exempt under paragraphs (2), (3), (4)(A), (4)(B), (4)(C), (5), (6), (8)(A), (8)(B), and (9) of subsection (a):

**(1)**  They shall begin benefiting from the tax exemption as of the first day of the taxable year of the organization in which the tax exemption request was filed before the Secretary. However, the date of effectiveness established herein shall never be a prior date to that on which the organization was legally instituted or was registered in the Department of State.

**(2)**  The operations of the exempt organization shall be governed by a Board of Directors composed of at least three (3) members, less than fifty (50%) percent of which may be members of the family circle of the person that establishes, or is one of the chief executive officers, of the organization or who holds the position of Chair of the Board. For these purposes, the term "family circle" includes, but is not limited to the mother, father, brother or sister (whether whole- or half-blood sibling), spouse, son or daughter (biological or adopted), father-in-law or mother-in-law, grandparents, aunt or uncle (by consanguinity or affinity), and any person who lives under the same roof as the person who organizes, or is one of the chief executive officers of, the organization or who holds the position of Chair of the Board.

**(3)**  The Secretary may revoke any determination of tax exemption previously granted when he/she determines that the organization:

**(A)**  Does not comply with the purposes on which the granting of the exemption was based, or

**(B)**  Does not meet any of the requirements established in this Section for said exemption, including those established in paragraph (2), or

**(C)**  Has violated any of the provisions of this Code, or applicable law, except when it is demonstrated, to the satisfaction of the Secretary, that such violation is due to reasonable cause and not to willful disregard or gross negligence.

**(4)**  The process of revoking a determination of tax exemption pursuant to paragraph (3) shall be governed by the provisions of the Uniform Administrative Procedure Act of the Commonwealth of Puerto Rico, Act No. 170 of August 12, 1988, as amended [3 L.P.R.A. secs. 2101 et seq.].

**(d)**  For the loss of the exemption under certain circumstances, in the case of organizations exempt under subsections (2)(A) and (4)(D), see Sections 1102.06 and 1102.07.


**SUBCHAPTER B --**  TAXATION OF BUSINESS INCOME OF CERTAIN EXEMPT ORGANIZATIONS AND DENIAL OF EXEMPTION FOR CERTAIN PROHIBITED TRANSACTIOS AND IMPROPERLY ACCUMULATING SURPLUS

**Section 1102.01.-- Imposition of Tax on Unrelated Business Income of Charitable Organizations, and with Other Purposes.--**

**(a) Charitable and Other Organizations With Other Purposes, Taxable at Corporation Rates.--**

**(1) Imposition of Tax.--** There shall be imposed, for each taxable year, on the unrelated business net income (as defined in Section 1102.02) of every organization described in paragraph (2) a normal tax of twenty percent (20%) of said amount, and a surtax (computed at the rates and as provided in Section 1022.02) or an alternative minimum tax (computed at the rates and as provided in Section 1022.03) on the unrelated business net income in excess of the credits provided in Sections 1022.02(d) and 1033.19. In computing the surtax or the minimum tax for purposes of this paragraph, the term "net income subject to surtax" or "alternative minimum net income" as used in Sections 1022.02 and 1022.03 shall be read as "unrelated business net income."

**(2) Organizations Subject to Tax.--** The tax imposed by paragraph (1) shall apply in the case of any organization (other than a trust as described in subsection (b)) which is exempt, except as provided in this Subchapter, from taxation under this Subtitle by reason of subsection (a)(1), (a)(3)(C), and (a)(8)(A) of Section 1101.01; subsection (a) of Section 1081.01; or subsection (e) of Section 1081.02. Such tax shall also apply in the case of a corporation described in Section 1101.01(a)(9)(A) if the income is payable to an organization which in itself is subject to the taxes imposed by paragraph (1) or to a church or a convention or association of churches.

**(b) Tax on Charitable and Other Trusts.--**

**(1) Imposition of Tax.--** There is hereby imposed, for each taxable year, on the unrelated net business income of every trust described in paragraph (2) a tax computed as provided in Section 1021.01. When making such computation for purposes of this section, the term "each individual's net income in excess of the credits against net income provided in Section 1033.18," as used in Section 1021.01, shall be read as "unrelated net business income".

**(2) Charitable and Other Trusts Subject to Tax.--** The tax imposed by paragraph (1) shall apply in the case of any trust which is exempt, except as provided in this Subchapter, from taxation under this Subtitle by reason of Section 1101.01(a)(4)(D), or Sections 1081.01(a) or 1081.02(a), and which, were it not for such exemption, would be subject to the tax imposed by Chapter 8, related to estates and trusts.

**Section 1102.02.-- Unrelated Business Net Income.--**

**(a) Definition.--** The term "unrelated business net income" means the gross income derived by any organization from any unrelated trade or business (as defined in Section 1102.03) regularly carried on by it, less the deductions allowed by Subchapter C of Chapter 3 of this Code that are directly connected with the carrying on of such trade or business, both computed with the exceptions, additions and limitations provided in subsection (b). In the case of an organization described in Section 1102.01 which is a foreign organization, the unrelated business net income will be the gross income derived from sources within Puerto Rico, and the gross income which is effectively connected with the operation of a trade or business in Puerto Rico, determined under Sections 1035.01 and 1035.04, and Sections 1091.02, 1091.03(a), 1092.01(c), and 1092.03(a).

**(b) Exceptions, Additions, and Limitations.--** The exceptions, additions, and limitations applicable to the determination of the unrelated business net income are the following:

**(1)** There shall be excluded all dividends, partnership profits, interest, and annuities, and all deductions directly connected with such income.

**(2)** There shall be excluded all royalties, including overriding royalties, whether measured by production or by gross or net income from the property, and all deductions directly connected with such income.

**(3)**  There shall be excluded all rents from real property (including personal property leased with the real property), and all deductions directly connected with such rents.

**(4)**  Notwithstanding the provisions of paragraph (3), in the case of a business lease (as defined in Section 1102.04) there shall be included, as an item of gross income derived from an unrelated trade or business, the amount determined under Section 1102.04(a)(1), and there shall be allowed, as a deduction, the amount determined under Section 1102.04(a)(2).

**(5)**  There shall be excluded all gains or losses from the sale, exchange, or other disposition of property other than:

**(A)**  Stock in trade or other property of such kind which would properly be includible in inventory if on hand at the close of the taxable year, or

**(B)**  Property held primarily for sale to customers in the ordinary course of trade or business.

**(6)**  The net operating loss deduction provided in Section 1033.14 shall be allowed, except that:

**(A)**  The net operating loss for any taxable year, the amount of the net operating loss carryover to any taxable year, and the net operating loss deduction for any taxable year shall be determined under Section 1033.14 without taking into account any amount of income or deduction which is excluded under this Subchapter in computing the unrelated business net income; and

**(B)**  the term "preceding taxable year," as used in Section 1033.14, shall not include any taxable year for which the organization was not subject to the provisions of this Subchapter.

**(7)**  There shall be excluded all income derived from research for:

**(A)**  The United States, or any of its agencies or instrumentalities, or any state or political subdivision thereof, and

**(B)**  The Government of Puerto Rico, or any agency, instrumentality or political subdivision thereof, and there shall be excluded all deductions directly connected with said income.

**(8)**  In the case of a college, university, or hospital, there shall be excluded all income derived from research performed for any person, and all deductions directly connected with such income.

**(9)**  In the case of an organization operated primarily for purposes of carrying on fundamental research, the results of which are freely available to the general public, there shall be excluded all income derived from research performed for any person, and all deductions directly connected with such income.

**(10)**  In the case of any organization described in Section 1102.01(a), the deduction allowed by Section 1033.10 (related to charitable and other gifts and contributions), shall be allowed (whether or not directly connected with the carrying on of the trade or business), but shall not exceed five percent (5%) of the unrelated business net income computed without the benefit of this paragraph.

**(11)**  In the case of any trust described in Section 1102.01(b), the deduction allowed by Section 1033.15(a)(3) (related to charitable and other gifts and contributions), shall be allowed (whether or not directly connected with the carrying on of the trade or business), and for that purpose a distribution made by the trust to a beneficiary described in Section 1033.15(a)(3) shall be considered as a gift or contribution. The deduction allowed by this paragraph shall not exceed fifteen percent (15%) of the unrelated business net income computed without the benefit of this paragraph, except that an additional deduction of fifteen percent (15%) of said net income shall be allowed for gifts paid to accredited educational institutions at the university level established in Puerto Rico.

**(12)**  A specific deduction of one thousand dollars ($ 1,000) shall be allowed.

**Section 1102.03.-- Unrelated Trade or Business.--**

**(a)  General Rule.--**  The term "unrelated trade or business" means, in the case of an organization subject to the tax imposed by Section 1102.01, any trade or business the conduct of which is not substantially

related to the exercise or performance by that organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under Section 1101.01, except that said term does not include any trade or business:

(1)   In which substantially all the work in carrying on such trade or business is performed for the organization without compensation; or

(2)   Which is carried on, in the case of an organization described in Section 1101.01(a)(2), by the organization primarily for the convenience of its members, students, patients, officers, or employees; or

(3)   Which is the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions.

(b)  Special Rule for Trusts.--   The term "unrelated trade or business" means, in the case of:

(1)   A trust computing its unrelated business net income under Section 1102.02 for purposes of Section 1083.02(f)(1), or

(2)   a trust described in Sections 1101.01(a)(4)(D), 1081.01(a) or 1081.02(a) which is exempt from tax; any trade or business regularly carried on by such trust.

(c)  Special Rule for Certain Advertising Businesses.--   If an Advertising business carried on by an organization is, without regard to this subsection, an unrelated trade or business during a taxable year beginning January 1, 1962, but before the beginning of the third succeeding taxable year the business is carried on by the organization (or by a successor who acquired such business in a liquidation which constituted a tax-free exchange under Section 1034.04(b)(6)) in such a manner that the conduct thereof is substantially related to the exercise or performance by such organization (or such successor) of its educational or other purpose or function described in Section 1101.01(a)(2), such advertising business shall not be considered, for the taxable year, as an unrelated trade or business.


### Section 1102.04.-- Business Leases.--

(a)  Rents and Deductions of Business Leases.--   In computing under Section 1102.02 the unrelated business net income for any taxable year:

(1)  Percentage of Income Taken into Account.--   There shall be included with respect to each business lease, as an item of gross income derived from an unrelated trade or business, an amount which is the same percentage (but not in excess of one hundred percent (100%)) of the total income derived during the taxable year under such lease as the business lease indebtedness, at the close of the taxable year, with respect to the premises covered by such lease is of the adjusted basis, at the close of the taxable year, of said premises.

(2)  Percentage of Deductions Taken into Account.--   There shall be allowed as a deduction with respect to each business lease, to be taken into account in computing unrelated business net income, an amount which shall be determined by applying the percentage derived under paragraph (1) to the sum determined under paragraph (3).

(3)  Deductions Allowable.--   The sum referred to in paragraph (2) is the sum of the following deductions allowable under Subchapter C of Chapter 3 of this Code:

(A)  Taxes and other expenses paid or accrued during the taxable year upon, or with respect to, the real property subject to the business lease;

(B)  Interest paid or accrued during the taxable year on the business lease indebtedness; and

(C)  A reasonable allowance for exhaustion, wear and tear (including a reasonable allowance for obsolescence) of the real property subject to such lease.

When only part of the real property is subject to the business lease, there shall be taken into consideration under subparagraphs (A), (B), and (C) only such amounts as are properly allocable to the premises covered by the lease.

2011 PR H.B. 3070

**(b) Definition of Business Lease.--**

**(1) General Rule.--**  For purposes of this section, the term "business lease" means a lease for a term of more than five (5) years of real property by an organization, if at the close of the lessor's taxable year there is a business lease indebtedness (as defined in subsection (c)) with respect to such property.

**(2) Special Rules for Applying Paragraph (1).--**  For purposes of paragraph (1):

**(A)**  In computing the term of a lease which contains an option for renewal or extension, the term of such lease shall be considered as including any period for which such option may be exercised, and the term of any lease made pursuant to an exercise of such option shall include the period during which the prior lease was in effect. If real property is acquired subject to a lease, the term of such lease shall be considered to begin on the date of such acquisition.

**(B)**  If the property has been occupied by the same lessee for a total period of more than five (5) years beginning not earlier than the date of acquisition of the property by the organization or trust (whether such occupancy is under one or more leases, renewals, extensions, or continuations thereof), the occupancy of such lessee shall be considered to be under a lease for a term of more than five (5) years within the meaning of paragraph (1). However, subsection (a) shall apply in the case of a tenancy described in this paragraph (and not within paragraph (A)) only with respect to the sixth (6th) and succeeding years of occupancy by the same lessee. For purposes of this paragraph, the term "same lessee" shall include any lessee of the property whose relationship with a lessee of the same property is such that losses with respect to sales or exchanges of property between the two (2) lessees would be disallowed under Section 1033.17(b).

**(3) Exceptions.--**

**(A)**  No lease shall be considered a business lease if--

**(i)**  Such lease is entered into primarily for purposes which are substantially related (aside from the need of such organization for income or funds or the use it makes of the rents derived) to the exercise and performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under Section 1101.01, or

**(ii)**  The lease is of premises in a building primarily designed for occupancy, and occupied, by the organization.

**(B)**  If a lease for more than five (5) years to a tenant is for only a portion of the real property, and space in the real property is rented during the taxable year under a lease for not more than five (5) years to any other tenant of the organization, leases of the real property for more than five (5) years shall be considered as business leases during the taxable year only if--

**(i)**  The income derived from the real property during the taxable year under leases for more than five (5) years (not including, as a lease for more than five (5) years, an occupancy which is considered as such a lease by reason of paragraph (2)(B)) represent fifty percent (50%) or more of the total income derived during the taxable year from the real property; or the area of the premises occupied under leases for more than five (5) years (not including, as a lease for more than five (5) years, an occupancy which is considered as such a lease by reason of paragraph (2)(B)) represents, at any time during the taxable year, fifty percent (50%) or more of the total area of the real property rented at such time; or

**(ii)**  The income derived from the real property during the taxable year from any tenant under a lease for more than five (5) years (including as a lease for more than five (5) years an occupancy which is considered as such a lease by reason of paragraph (2)(B)), or from a group of tenants (under such leases) who are partners, represents at any time during the taxable year, more than ten percent (10%) of the total income derived during the taxable year from such property, or the area of the premises occupied by any such tenant, or by any such group of tenants, represents at any time during the taxable year more than ten percent (10%) of the total area of the real property rented at such time.

In the application of clause (i), if during the last half of the term of a lease, a new lease is made to come into effect after the expiration of such lease, the unexpired portion of such lease on the date the second lease is made shall not be treated as a part of the term of the second lease.

**(c) Business Lease Indebtedness.--**

**(1) General Rule.--** The term "business lease indebtedness" means, with respect to any real property leased for a term of more than five (5) years, the unpaid amount of:

**(A)** The indebtedness incurred by the lessor in acquiring or improving such property;

**(B)** The indebtedness incurred before the acquisition or improvement of such property, if such indebtedness would not have been incurred but for such acquisition or improvement; and

**(C)** The indebtedness incurred after the acquisition or improvement of such property, if such indebtedness would not have been incurred but for such acquisition or improvement, and the incurrence of such indebtedness was reasonably foreseeable at the time of such acquisition or improvement.

**(2) Property Acquired Subject to Mortgage or Other Similar Lien.--** If real property is acquired subject to a mortgage or other similar lien, the amount of the indebtedness secured by such mortgage or lien shall be considered (whether the acquisition was by bequest, devise, or purchase) as an indebtedness of the lessor incurred in acquiring such property even though the lessor did not assume or agree to pay such indebtedness, except that, if real property was acquired by gift, bequest, or devise before January 1, 1962, subject to a mortgage or other similar lien, the amount of such mortgage or other similar lien shall not be considered as an indebtedness of the lessor incurred in acquiring such property.

**(3) Certain Property Acquired by Gift, Devise, or Bequest.--** If real property was acquired by gift, bequest, or devise before January 1, 1962, subject to a lease requiring improvements of such property on the happening of stated contingencies, indebtedness incurred in improving such property in accordance with the terms of such lease shall not be considered as an indebtedness for purposes of this subsection.

**(4) Certain Corporations Described in Section 1101.01(a)(9)(A).--** In the case of a corporation described in Section 1101.01(a)(9)(A), all of the stock of which was acquired before January 1, 1962, by an organization described in subsections (a)(8)(A), (a)(2)(A), or (a)(3)(C) of Section 1101.01 (and more than one-third of such stock was acquired by such organization by gift or bequest), any indebtedness incurred by such corporation before January 1, 1962, and any indebtedness incurred by such corporation on or after such date for the improvement of real property in accordance with the terms of a lease entered into before such date, shall not be considered as an indebtedness with respect to such corporation or such organization for purposes of this subsection.

**(5)** Certain Trusts Described in Section 1101.01(a)(4)(D) or 1081.01(a).--In the case of a trust described in Section 1101.01(a)(4)(D) or 1081.01(a), or in the case of a corporation described in Section 1101.01(a)(9)(A), all the stock of which was acquired prior to January 1, 1962, by a trust described in Section 1101.01 or 1081.01(a), any indebtedness incurred by such trust or such corporation before January 1, 1962, in connection with real property which is leased before such date, and any indebtedness incurred by such trust or such corporation on or after such date necessary to carry out the terms of such lease, shall not be considered as an indebtedness with respect to such trust or such corporation for purposes of this subsection.

**(6) Business Lease on a Portion of Property.--** In determining the amount of the business lease indebtedness where only a portion of the real property is subject to a business lease, proper allocation to the premises covered by such lease shall be made of the indebtedness incurred by the lessor with respect to the real property.

**(7)** Special Rule Applicable to Trusts Described in Section 1101.01(a)(4)(D) or 1081.01(a).--In the application of paragraph (1), if a trust described in Section 1101.01(a)(4)(D) or 1081.01(a) which is part

of a stock bonus, pension, or profit-sharing plan of an employer lends any money to another trust described in Section 1101.01(a)(4)(D) or 1081.01(a) which is part of a stock bonus, pension, or profit-sharing plan of the same employer, such loan shall not be treated as an indebtedness of the borrowing trust, except to the extent that the loaning trust:

    **(A)**  Incurred any indebtedness in order to make such loan;

    **(B)**  Incurred indebtedness before the making of such loan which would not have been incurred but for the making of such loan; or

    **(C)**  Incurred indebtedness after the making of such loan which would not have been incurred but for the making of such loan and which was reasonably foreseeable at the time of making such loan.

**(d)  Personal Property Leased with Real Property.--**  For purposes of this section, the term "real property" and the term "premises" include personal property of the lessor leased by the same to a lessee of its real estate if the lease of such personal property is made under, or in connection with, the lease of such real estate.

### Section 1102.05.-- Taxes of the United States, Possessions of the United States and Foreign Countries.--

The amount of income, war profit, and excess profit taxes imposed by the United States, any possession of the United States, or any foreign country, shall be allowed as a credit against the tax of an organization subject to taxation under Section 1102.01 to the extent provided in Section 1051.01, and in the case of the tax imposed by Section 1102.01, the term "normal tax net income" and the term "net income" as used in Section 1051.01 shall be read as "unrelated business net income."

### Section 1102.06.-- Exemption Requirements.--

**(a)  Denial of Exemption to Organizations Engaged in Prohibited Transactions.--**

    **(1)  General Rule.--**  An organization as described in Sections 1101.01(a)(1), 1101.01(a)(2), 1101.01(a)(4)(D), 1101.01(a)(8)(A), 1101.01(a)(9), or 1081.01, which is subject to the provisions of this section shall not be exempt from taxation under Section 1101.01 or under Section 1081.01(a) if it has engaged in a prohibited transaction after January 1, 1962.

    **(2)  Taxable Years Affected.--**  An organization as described in Sections 1101.01(a)91)[sic], 1101.01(a)(2), 1101.01(a)(4)(D), 1101.01(a)(8)(A), 1101.01(a)(9), or 1081.01 shall be denied exemption from taxation by reason of paragraph (1) only for taxable years after the taxable year during which it is notified by the Secretary that it has engaged in a prohibited transaction, unless such organization entered into such prohibited transaction with the purpose of diverting corpus or income of the organization from its exempt purposes, and such transaction involved a substantial part of the corpus or income of such organization.

**(b)  Organizations to which this Section Applies.--**  This section shall apply to any organization described in Sections 1101.01(a)(1), 1101.01(a)(2), 1101.01(a)(4)(D), 1101.01(a)(8)(A), 1101.01(a)(9), or 1081.01 except:

    **(1)**  An educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its education activities are regularly carried out, as defined in Section 1101.01(a)(2)(D);

    **(2)**  an organization which normally receives a substantial part of its support (excluding income received in the exercise or performance by such organization of its charitable, educational, or other purposes or functions constituting the basis for its exemption under Section 1101.01 or 1081.01(a)) from the United States, any state of the United States, the Commonwealth of Puerto Rico, or any political subdivision thereof, or from direct or indirect contributions from the general public;

(3)  An organization the principal purposes or functions of which are providing medical or hospital care or medical education or medical or agricultural research.

(4)  A labor, agricultural, or horticultural organization which is exempt under Section 1101.01(a)(8)(A).

(c)  **Prohibited Transactions.--**  For purposes of this section, the term "prohibited transaction" means any transaction in which--

(1)  An organization subject to the provisions of Section 1101.01(a), 1101.01(a)(4)(D), or 1081.01(a):

(A)  Makes any part of its services available on a preferential basis to;

(B)  engages in any transaction described in paragraph (2);

(2)  Any organization that is not described in paragraph (1) and which is subject to the provisions of this section--

(A)  Lends any part of its income or corpus, without the receipt of adequate security and a reasonable rate of interest to;

(B)  Pays any compensation, in excess of a reasonable allowance for salaries or other compensation for personal services actually rendered, to;

(C)  Makes any substantial purchase of securities or any other property, for more than an adequate consideration in money or money's worth, from;

(D)  Sells any substantial part of its securities or other property, for less than an adequate consideration in money or money's worth to, or

(E)  Engages in any other transaction which results in a substantial diversion of its income or corpus to; the creator of such organization (if a trust); a person who has made a substantial contribution to such organization; a member of the family (as defined in Section 1033.17(b)(2)(D)) of an individual who is the creator of such trust or who has made a substantial contribution to such organization; or a corporation controlled by such creator or person, or by the organization itself, through the ownership, directly or indirectly, of fifty percent (50%) or more of the total combined voting power of all classes of stock entitled to vote or fifty percent (50%) or more of the total value of shares of all classes of stock of the corporation.

(d)  **Future Status of Organizations Denied Exemption.--**  Any organization which is denied exemption under Sections 1101.01(a), 1101.01(b)(3), 1101.01(b)(4)(D), 1101.01(b)(5) or 1081.01 by reason of subsection (a), with respect to any taxable year following the taxable year in which notice of denial of exemption was received, may, under regulations prescribed by the Secretary, file claim for exemption, and if the Secretary, pursuant to such regulations, is satisfied that such organization will not again knowingly engage in a prohibited transaction, such organization shall be exempt with respect to taxable years subsequent to the year in which such claim is filed.

(e)  **Disallowance of Certain Charitable and Other Deductions.--**  No gift or bequest for religious, charitable, scientific, literary, or educational purposes (including the encouragement of art and the prevention of cruelty to children or animals), otherwise allowable as a deduction under Sections 1033.10, 1033.15(a)(3), or 1083.02(a), shall be allowed as a deduction if made to an organization which, in the taxable year of the organization in which the gift or bequest is made, is not exempt under Section 1101.01 by reason of this Section. With respect to any taxable year of the organization for which the organization is not exempt pursuant to subsection (a) by reason of having engaged in a prohibited transaction with the purpose of diverting the corpus or income of such organization from its exempt purposes and such transaction involved a substantial part of such corpus or income, and which taxable year is the same or prior to the taxable year of the organization in which such transaction occurred, such deduction shall be disallowed to the donor only if such donor or (if such donor is an individual) any member of his/her family (as defined in Section 1033.17(b)(2)(D)) was a party to such prohibited transaction.

2011 PR H.B. 3070

**(f)  Definition.--**   For purposes of this section, the term "gift or bequest" means any gift, contribution, bequest, devise, legacy, or transfer.

**(g)  Special Rule for Loans.--**   For purposes of the application of subsection (c)(1), in the case of a loan by a trust described in Section 1101.01(b)(4)(D) or 1081.01(a), the following rules shall apply with respect to a loan made before March 1, 1962, which would constitute a prohibited transaction if made on or after March 1, 1962.

> **(1)**  If any part of the loan is repayable prior to December 31, 1962, the renewal of such part of the loan for a period not extending beyond December 31, 1962, on the same terms, shall not be considered a prohibited transaction.

> **(2)**  If the loan is repayable on demand, the continuation of the loan without the receipt of adequate security and a reasonable rate of interest beyond December 31, 1962, shall be considered a prohibited transaction.

**(h)**   Special Rules Related to Lending by Trusts in Section 1101.01(b)(4)(D) or 1081.01(a) to Certain Persons.--For purposes of subsection (c)(1) of this Section, a bond, debenture, note, or certificate or other evidence of indebtedness (hereinafter in this subsection referred to as "obligation") acquired by a trust described in Section 1101.01(b)(4)(D) or 1081.01(a) shall not be treated as a loan made without the receipt of adequate security if--

> **(1)**  Such obligation is acquired:

>> **(A)**  On the market, either:

>>> **(i)**  At the price of the obligation prevailing on a national securities exchange which is registered with the Securities and Exchange Commission, or

>>> **(ii)**  If the obligation is not traded on such a national securities exchange, at a price not less favorable to the trust than the offering price for the obligation as established by the current bid and asked prices quoted by persons independent of the issuer;

>> **(B)**  From an underwriter, at a price:

>>> **(i)**  Not in excess of the public offering price for the obligation as set forth in a prospectus or offering circular filed with the Securities and Exchange Commission, and

>>> **(ii)**  At which a substantial portion of the same issue is acquired by persons independent of the issuer, or

>> **(C)**  Directly from issuer, at a price not less favorable to the trust than the price paid currently for a substantial portion of the same issue by persons independent of the issuer;

> **(2)**  Immediately following the acquisition of such obligation:

>> **(A)**  Not more than twenty-five percent (25%) of the aggregate amount of obligations issued in such issue and outstanding at the time of acquisition is held by the trust, and

>> **(B)**  At least fifty percent (50%) of the aggregate amount referred to in subparagraph (A) is held by persons independent of the issuer, and

> **(3)**  Immediately following the acquisition of the obligation, not more than twenty-five percent (25%) of the assets of the trust is invested in obligations of persons described in subsection (c).

**(i)  Loans with Respect to which Employers are Prohibited from Pledging Certain Assets.--** Subsection (c)(2)(A) shall not apply to a loan made by a trust described in Section 1101.01(b)(4)(D) or 1081.01(a) to the employer (or to a renewal of such a loan or, if the loan is repayable upon demand, to a continuation of such loan) if the loan bears a reasonable rate of interest and if, (in the event that a renewal is made):

> **(1)**  The employer is prohibited (at the time of such renewal) by any law of the Government of Puerto Rico or of the United States, or regulation thereunder, from directly or indirectly pledging, as security for

such a loan, a particular class or classes of his/her assets the value of which (at such time) represents more than one-half of the value of all his/her assets;

**(2)** The making or renewal, as the case may be, is approved in writing as an investment which is consistent with the exempt purposes of the trust by a trustee who is independent of the employer, and no other such trustee had previously refused to give such written approval; and

**(3)** Immediately following the making or renewal, as the case may be, the aggregate amount loaned by the trust to the employer, without the receipt of adequate security, does not exceed twenty-five percent (25%) of the value of all the assets of the trust. For purposes of paragraph (2), the term "trustee" means, with respect to any trust for which there is more than one trustee who is independent of the employer, a majority of such independent trustees. For purposes of this paragraph, the determination as to whether any amount loaned by the trust to the employer was loaned without the receipt of adequate security shall be made without regard to subsection (h).

**(j) Exemption for Employee Stock Ownership Plans.--**

**(1) In General.--** The following shall not be deemed as a prohibited transaction:

**(A)** Any acquisition of employer securities, as defined in paragraph (2) of subsection (h) of Section 1081.01.

**(B)** Any loan to an employee stock ownership plan that meets the requirements of Section 1081.01(h) for the acquisition of employer securities if--

**(i)** Said loan is mainly for the benefit of the participants and beneficiaries of the plan, and

**(ii)** Said loan bears interest at a reasonable rate.

## Section 1102.07.-- Denial of Exemption.--

In the case of any organization described in Section 1101.01(a) to which Section 1102.06 is applicable, the exemption shall be denied for the taxable year if the amounts accumulated out of income during the taxable year or any prior taxable year and not actually paid out by the end of the taxable year:

**(1)** Are unreasonable in amount or duration in order to carry out the charitable, educational, or other purpose or function constituting the basis for exemption under Section 1101.01(a); or

**(2)** Are used to a substantial degree for purposes or functions other than those constituting the basis for exemption under Section 1101.01(a); or

**(3)** Are invested in such a manner as to jeopardize the carrying out of the charitable, educational, or other purpose or function constituting the basis for exemption under Section 1101.01(a).

Paragraph (1) shall not apply to income attributable to property of a decedent dying before January 1, 1962, which is transferred under his/her will to a trust created by that will. In the case of a trust created by the will of a decedent dying on or after January 1, 1962, if income is required to be accumulated pursuant to the mandatory terms of the will creating the trust, paragraph (1) shall apply only to income accumulated during a taxable year of the trust beginning more than twenty-one (21) years after the date of death of the last life being designated in the trust instrument.

## CHAPTER 11 -- OTHER SPECIAL TAXPAYERS

## SUBCHAPTER A -- INSURANCE COMPANIES

## Section 1111.01.-- Taxation on Domestic Life Insurance Companies.--

**(a) Definition.--** As used in Sections 1111.01 through 1111.03, the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts, including

combined with life, health and accident insurance, whose reserve funds for the fulfillment of said contracts comprise more than fifty (50) percent of its total reserve funds.

**(b) Imposition of Tax.--**

**(1) In General.--**   There shall be imposed, collected, and paid for each taxable year upon the net income subject to normal tax as defined in subsection (c), and upon the net income subject to surtax as defined in subsection (d), of every life insurance company, the same tax rates imposed on other corporations in Sections 1022.01(b), 1022.02(b).

**(c) Net Income Subject to Normal Tax.--**   For purposes of this Section, the term "net income subject to normal tax" means the net income as defined in Section 1111.03.

**(d) Net Income Subject to Surtax.--**   For purposes of this Section, the term "net income subject to surtax" means the net income subject to normal tax as defined in subsection (c), minus the deduction provided in Section 1022.02(d).

**(e) Alternative Minimum Tax.--**   Domestic life insurance companies shall be subject to the provisions related to alternative minimum tax for corporations.


## Section 1111.02.-- Life Insurance Companies Gross Income.--

In the case of a life insurance company, the term "gross income" means the gross amount of the gains from the sale of the property of the company, but does not include the income earned during the taxable year from interest, dividends, capital gain distributions made by a registered investment company, and rents.

Provided, that in the case of net capital gains made from the sale or exchange of assets kept in separate accounts under the terms and conditions provided in the Insurance Code of Puerto Rico, there shall only be included in the gross income any such net capital gains attributable to risks not assigned to other insurers during the taxable year. Furthermore, in the case of net capital gains made from the sale or exchange of assets kept in separate accounts, there shall be granted a deduction on the reserve for paying benefits, which shall never be greater than net capital gains included in the gross income, minus service fees and death benefits attributable to and directly charged on such gains.


## Section 1111.03.-- Life Insurance Companies Net Income.--

In the case of a life insurance company, the term "net income" means the gross income, minus those expenses directly related to the production and earning of the gross income.


## Section 1111.04.-- Taxation on Foreign Life Insurance Companies.--

**(a) Tax Imposed.--**   There shall be imposed, collected, and paid for each taxable year, a tax on net income subject to normal tax and on net income subject to additional tax of all foreign life insurance companies, at the same rates as set forth in Sections 1022.01(b), 1022.02(b).

**(b) Taxation on Amount Equivalent to Dividend.--**   In addition to the tax imposed by subsection (a), there shall be imposed, collected, and paid for each taxable year by all foreign life insurance companies, the tax provided in Section 1092.02. The Secretary shall establish through regulation the rules to be followed in the application of Section 1092.02 on foreign life insurance companies subject to taxation under subsection (a).

**(c)**   For purposes of this Section and Sections 1111.05 and 1111.06, the following terms shall have the meaning provided in this subsection:

**(1)**   Foreign life insurance company shall mean any life insurance company organized--

**(A)**  under the laws of the United States of America, any of its states, territories, and possessions, or the District of Columbia, which qualifies as such life insurance company under the provisions of Part I, Subchapter L of the United States Internal Revenue Code, or

**(B)**  under the laws of any other country, engaged in the business of life insurance in the Government, and which would qualify as a life insurance company under subsection (a) of Section 1111.01, were it not for the fact of it having been organized outside Puerto Rico.

**(2)**  Foreign life insurance net income subject to normal tax shall mean the amount resulting after applying to the taxable income of the life insurance company a fraction whose numerator shall be the sum of the direct life, accident, and health insurance premiums and the direct annuity premiums assigned to the Government, as the same appear in the annual statement required by Article 3.310 of the Insurance Code of Puerto Rico; and the denominator of which shall be the sum of all the direct life, accident, and health insurance premiums and direct annuity premiums underwritten anywhere else by the foreign life insurance company, as the same appear in the above mentioned annual statement.

**(3)**  Foreign life insurance company net income subject to surtax shall mean the net income subject to normal tax of a foreign life insurance company as defined in paragraph (2), minus the credit provided in Section 1022.02(d).

**(4)**  The taxable income of a foreign life insurance company subject to the provisions of paragraph (1)(A) shall mean the taxable income of the life insurance company determined in accordance with the provisions of Part I, Subchapter L of the United States Internal Revenue Code.

**(5)**  The taxable income of a foreign life insurance company subject to the provisions of paragraph (1)(B) shall mean the taxable income of the life insurance company determined in accordance with the provisions of the tax laws in its country of origin or organization. If these companies are not subject to taxation in their country of origin or organization on all of their income from all sources, they shall be subject to the rules of Section 1092.01(b) and not to this section.

**(6)**  United States of America Internal Revenue Code shall mean the United States Internal Revenue Code, as amended.

**(d)  Alternative Minimum Tax.--**  Foreign life insurance companies shall be subject to the provisions related to the alternative minimum tax for corporations.


**Section 1111.05.-- Taxable Income Not Declared in Return Filed with the Secretary by a Foreign Life Insurance Company.--**

**(a)**  Any life insurance company subject to the provisions of Section 1111.04 to which notice of a deficiency has been served in accordance with the provisions of Section 6212 of the United States Internal Revenue Code or any similar provision in the country of origin or organization, shall be under obligation to notify in writing to the Secretary the amount attributable to the Government of the income of the life insurance company determined by the Federal Internal Revenue Commissioner or tax official of the country of origin or organization, in excess of that declared in the income tax return filed with said official for the taxable year in question, and to pay the tax pertaining to the taxable income not declared in the return filed with the Secretary.

**(b)**  The statutory period for the assessment of the tax that may result after applying subsection (a) shall not expire before the term of three (3) years has elapsed, counting as of the date in which the Secretary is notified of the foregoing. For purposes of this subsection, the date of notice shall be understood to be the date on which the communication to such effect that the taxpayer sends by registered mail, with return receipt requested, is received in the Department.

**(c)**  Regardless of the provisions of paragraph (2) of subsection (a) of Section 1061.15, the Secretary may grant to every foreign life insurance company subject to the provisions of Section 1111.04, an extension of not more than six (6) months to file the return required in Section 1061.02.

**Section 1111.06.-- Income Tax Returns Filed in Other Jurisdictions.--**

Any foreign life insurance company covered by the provisions of Section 1111.04(c)(1)(A) and subject to the provisions of Section 1111.04, shall accompany with the return required in Section 1061.02, a certified copy of the income tax return (without annexes) filed with the Federal Internal Revenue Commissioner. In the case of a foreign life insurance company described in Section 1111.04(c)(1)(B), a true and accurate copy of the income tax return (without annexes) filed with the tax official of its country of origin or organization shall accompany the return required under Section 1061.02.

**Section 1111.07.-- Insurance Companies Other than Life or Mutual.--**

**(a) Tax Imposed.--** There shall be imposed, collected, and paid for each taxable year upon net income subject to normal tax and upon net income subject to surtax of any insurance company, other than a life or mutual insurance company, the same tax rates imposed upon other corporations as provided in Sections 1022.01(b) and 1022.02(b). For purposes of this Section, "net income subject to normal tax" means net income as defined in subsection (c)(2), minus the deduction provided in Section 1033.19(a), and "net income subject to surtax" means net income subject to normal tax as defined in this subsection, minus the deduction set forth in Section 1022.02(d).

**(b) Tax Imposed on Amount Equivalent to Dividend.--** In addition to the tax imposed by subsection (a), there shall be imposed, collected, and paid for each taxable year upon every insurance company subject to taxes under subsection (a), the tax provided in Section 1092.02. The Secretary shall prescribe by regulations the rules to be followed in the application of the provisions of Section 1092.02 to an insurance company subject to taxation under subsection (a).

**(c) Definitions.--** In the case of an insurance company subject to taxes imposed under this Section:

**(1) Gross Income.--** "Gross income" means the sum total of:

**(A)** The combined gross amount earned during the taxable year from investment income and from underwriting income, as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, and

**(B)** The gain during the taxable year from the sale or other disposition of property;

**(2) Net Income.--** "Net income" means the gross income, as defined in paragraph (1), less the deductions allowed by subsection (d);

**(3) Investment Income.--** "Investment income" means the gross amount of income earned during the taxable year from interest, dividends, and rents, adding all interest, dividends, and rents due and accrued during the taxable year, to which all interest, dividends, and rents due and accrued at the end of the taxable year shall be added, deducting all interest, dividends, and rents due and accrued at the end of the preceding taxable year.

**(4) Underwriting Income.--** "Underwriting income" means the premiums earned on insurance contracts during the taxable year, less losses and expenses incurred;

**(5) Premiums Earned.--** "Premiums earned on insurance contracts during the taxable year" means the amount of gross premiums written on insurance contracts, determining any losses paid during the taxable year, deducting return premiums and premiums paid for reinsurance. To the result thus obtained, unearned premiums on outstanding business at the end of the preceding taxable year shall be added and unearned premiums on outstanding business at the end of the taxable year shall be deducted.

**(6) Losses Incurred.--** "Losses incurred" means losses incurred during the taxable year on insurance contracts, determining losses paid during the taxable year, adding salvage and reinsurance recovered and outstanding at the end of the preceding taxable year, and deducting salvage and reinsurance

recovered and outstanding at the end of the taxable year. To the result thus obtained, all unpaid losses outstanding at the end of the taxable year shall be added and unpaid losses outstanding at the end of the preceding taxable year shall be deducted.

**(7) Expenses Incurred.--** "Expenses incurred" means all expenses shown on the annual statement approved by the National Convention of Insurance Commissioners, determined by adding to all expenses paid during the taxable year, the expenses unpaid at the end of said year, and deducting expenses unpaid at the end of the preceding taxable year. For purposes of computing the net income subject to taxes imposed under this Section, from expenses incurred, as defined in this paragraph, all expenses incurred which are not allowed as deductions under subsection (d) shall be deducted.

**(d) Deductions Allowed.--** In computing the net income of an insurance company subject to the tax imposed by this Section, the following deductions shall be allowed:

**(1)** All ordinary and necessary expenses incurred, as provided in Section 1033.01;

**(2)** All interest, as provided in Section 1033.03;

**(3)** Taxes, as provided in Section 1033.04;

**(4)** Losses incurred, as defined in subsection (c)(6) of this Section;

**(5)** Bad debts in the nature of agency balances and bill receivable ascertained to be worthless;

**(6)** The amount of interest earned during the taxable year which under Section 1031.02(a)(3) is exempt from taxation;

**(7) Depreciation.--** A reasonable allowance for the exhaustion, wear and tear of property, as provided in 1033.07 and 1040.12; and

**(8)** Contributions to an employee trust or annuity plan or deferred compensation plan.

**(e) Deductions Disallowed.--** With regard to subsection (d)(6)--

**(1)** No deduction shall be allowed for an amount otherwise allowable which under the rules of Section 1033.07(a)(5) is attributable to interest described in subsection (d)(6).

**(2)** No deduction shall be allowed for that part of the interest expense which is attributable to interest described in subsection (d)(6). That part of the interest expense that is attributable to interest described in subsection (d)(6) shall be that amount which bears the same proportion to such interest expense as the average daily adjusted basis of the indebtedness generating the interest described in subsection (d)(6) bears to the daily adjusted basis of all assets of the taxpayer.

**(f) Deductions of Foreign Corporations.--** In the case of a foreign corporation, the deductions allowed in this Section shall be allowed to the extent provided in Subchapter I.

**(g) Limitation.--** None of the provisions of this Section shall be construed to permit the same item to be deducted more than once.

**(h) Alternative Minimum Tax.--** Insurance companies to which the tax imposed by this Section is applicable shall be subject to the provisions relative to the alternative minimum tax for corporations.

## Section 1111.08.-- Net Operating Loss.--

**(a) General Rule.--** The benefit of the deduction for the net operating loss as allowed by Section 1033.14 shall be allowed to insurance companies subject to the tax imposed by Section 1111.07, under regulations prescribed by the Secretary.

**(b) Special Rules.--**

**(1) Determination of Net Operating Loss.--** In determining the net operating loss for a taxable year of an insurance company subject to the tax imposed by Section 1111.07, no deduction shall be allowed for interest described in Section 1111.07(d)(6).

(2)  **Application of Section 1033.14(b)(1).--**   In applying Section 1033.14(b)(1) to a subsequent taxable year of an insurance company subject to the tax imposed by Section 1111.07, no deduction shall be allowed for interest described in Section 1111.07(d)(6) for such subsequent taxable year.

## Section 1111.09.-- Taxes of the United States, Possessions of the United States, and Foreign Countries.--

The amount of income, war-profit, and excess-profit taxes imposed by the United States, the possessions of the United States, and foreign countries shall be allowed as a credit against the tax of a domestic insurance company subject to the tax imposed by Section 1111.01 or 1111.07, to the extent provided in Section 1051.01 for domestic corporations, and in those cases, "net income," as used in such Section, means the net income as defined in this Subchapter.

## Section 1111.10.-- Computation of Gross Income.--

The gross income of insurance companies subject to the tax imposed in Section 1111.07 shall not be determined in the manner provided in Subchapter E of Chapter 3.

## Section 1111.11.-- Mutual Insurance Companies Other than Life.--

(a)  **Application of the Law.--**   Mutual insurance companies, other than life, shall be taxed in the same manner as other corporations, except as hereinafter provided in this Section.

(b)  **Gross Income.--**   Mutual marine insurance companies shall include in their gross income the gross premiums collected and received, minus any amounts paid for reinsurance.

(c)  **Deductions.--**   In addition to the deductions allowed to corporations by Section 1031.04, the following deductions shall also be allowed to insurance companies, unless otherwise allowed:

(1)  **Mutual Insurance Companies Other than Life.--**   In the case of mutual insurance companies other than life--

(A)  The net addition required by law to be made within the taxable year to reserve funds, including in the case of assessment insurance companies the actual deposit of sums with officials of the Government of Puerto Rico or officials of any state or territory pursuant to law, as additions to guaranty or reserve funds; and

(B)  The sums, other than dividends, paid within the taxable year on policy and annuity contracts.

(2)  **Mutual Marine Insurance Companies.--**   In the case of mutual marine insurance companies, in addition to the deductions allowed in paragraph (1), unless otherwise allowed, amounts repaid to policy holders on account of premiums previously paid by them and interest paid thereon from the ascertainment and the payment thereof.

(3)  **Mutual Insurance Companies Other than Life or Marine.--**   In the case of mutual insurance companies (including interinsurers and reciprocal underwriters, but not including mutual life and mutual marine insurance companies) requiring their members to make premium deposits to provide for losses and expenses, the amount of premium deposits returned to their policy holders, and the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves.

## Section 1111.12.-- Exceptions.--

The provisions of this Subchapter G shall not apply to International Insurers as defined in Article 61.020(4) of the Insurance Code of Puerto Rico.

**SUBCHAPTER B --**   REGISTERED INVESTMENT COMPANIES

**Section 1112.01.-- Taxation on Registered Investment Companies and Their Stockholders.--**

(a) **Registered Investment Companies.--**   Any registered investment company which, during its entire taxable year, fulfills all of the requirements and conditions provided in any law of the Commonwealth of Puerto Rico related to investment companies shall be subject to taxation in accordance with the provisions applicable to domestic corporations, except that:

(1)  In computing the net income of such company:

(A)  There shall be included in its gross income the amount of dividend or profit distributions received from corporations exempt from taxation under Act No. 184 of May 13, 1948, as amended, under Act No. 6 of December 15, 1953, or under any other tax exemption law of Puerto Rico; and

(B)  There shall be disregarded:

(i)  Gains or losses from the sale or other disposition of capital assets;

(ii)  The net operating loss deduction provided in Section 1033.14; and

(iii)  The provisions of Section 1061.24(c);

(2)  If such company pays out to its stockholders during the taxable year as taxable dividends or as dividends from industrial development income, as defined in subsection (c), an amount not less than ninety percent (90%) of its net income, computed as provided in this subsection, such company shall be exempt from taxation. For purposes of this subsection, taxable dividends or dividends from industrial development income declared by a registered investment company after the close of the taxable year and prior to the date prescribed by this Subtitle for filing its return for the taxable year (including any extension thereof), shall, if the company so chooses in such return, be treated as paid during such taxable year but only if the distribution of such dividends is actually made to stockholders within the four (4) month period following the close of such taxable year and not later than the date of the first regular dividend distribution made after such declaration.

(b) **Registered Investment Company Stockholders.--**

(1) **Puerto Rico Residents.--**   All Puerto Rico residents who are registered investment company stockholders shall:

(A)  Exclude from their gross income:

(i)  Tax-exempt dividends, as defined in subsection (c)(1); and

(ii)  Dividends from industrial development income, as defined in subsection (c)(2), to the extent that the sums to which such dividends amount would be tax-exempt for them if received directly from a tax-exempt corporation under Act No. 184 of May 13, 1948, as amended, under Act No. 6 of December 15, 1953, or under any other tax exemption law of Puerto Rico; and

(B)  Include in their gross income:

(i)  Capital gain dividends, as defined in subsection (c)(3), plus

(ii)  Dividends from industrial development income, as defined in subsection (c)(2), to the extent that the sums to which such dividends amount would be taxable for them if received directly from a tax-exempt corporation under Act No. 184 of May 13, 1948, as amended, under Act No. 6 of December 15, 1953, or under any other tax exemption law of Puerto Rico; plus

(iii)  The actual amount of taxable dividends, as defined in subsection (c)(4); or

(iv)  In lieu of the amount includible under clause (i), the amount of such dividends plus the stockholders' pro rata portion corresponding to stockholders of any income tax, war profits, and excess profits paid to the United States, any possession of the United States or any other part of the United States other than a state, to the Government of Puerto Rico, or any foreign country, by the registered investment company or any subsidiary of which ninety percent (90%)

of the stock is owned by the registered investment company, upon or with respect to the profits from which such dividends are deemed to have been paid. If a stockholder chooses to include in gross income such dividends plus such allocable taxes, such stockholder shall be entitled to credit the tax imposed by this Subtitle with the amount of such allocable taxes, subject to the limitations of Section 1051.01, except that in applying said Section, alien residents of Puerto Rico shall be treated in the same manner as residents of Puerto Rico who are United States citizens.

**(2)  Puerto Rico Nonresidents.--**    Registered investment companies which pay dividends to nonresident stockholders shall, subject to the limitations of Section 1051.01, credit the tax required to be deducted and withheld under Sections 1062.08 and 1062.11, with such stockholders' pro rata portion of the income, war profit, and excess profit taxes paid by such registered investment companies or any subsidiaries, ninety percent (90%) of the stock of which is owned by such registered investment companies, to the United States, any possession of the United States or any other part of the United States other than a state, to the Government of Puerto Rico, or any foreign country, upon or with respect to the profits from which such dividends are deemed to have been paid. For purposes of determining the gross tax required to be deducted and withheld prior to such credit, dividends paid during the taxable year by such registered investment companies to stockholders shall be regarded:

**(A)** As excluding the amount of tax-exempt dividends, as defined in subsection (c)(1); and

**(B)** As including the actual amount of all other dividends, plus the amount of the stockholders' pro rata portion of any income, war profit, and excess profit taxes paid by registered investment companies or any subsidiaries, ninety percent (90%) of the stock of which is owned by such registered investment companies, to the United States, any possession of the United States or any part of the United States other than a state, the Government of Puerto Rico, or any foreign country, upon or with respect to the profits from which such dividends are deemed to have been paid.

**(c)  Definitions.--**   For purposes of this Section:

**(1)  Tax-Exempt Dividends.--**   "Tax-exempt dividend" means any dividend or part of a dividend designated as such by a registered investment company in a written notice mailed to its stockholders at any date prior to the expiration of sixty (60) days after the close of its taxable year. If the aggregate amount so designated with respect to a company's taxable year is greater than its current or accrued earnings and profits attributable to tax exempt income (A) under Section 1031.02; (B) under Section 6(b)(1) of Act No. 184 of May 13, 1948; (C) under Section 3 of Act No. 6 of December 15, 1953; (D) under Section 3 of Act No. 57 of June 13, 1963; (E) under any other tax exemption law of Puerto Rico; or (F) under Section 8 of Act No. 121 of June 29, 1977, as amended, the portion of each distribution which shall constitute tax-exempt dividends shall only be that ratio of the so designated amount that said current or accrued earnings and profits bear to the accrued amount so designated.

**(2)  Dividends from Industrial Development Income.--**   "Dividend from industrial development income" means any dividend or part thereof which is designated as such by a registered investment company in a written notice mailed to its stockholders at any time prior to the expiration of sixty (60) days after the close of its taxable year. If the aggregate amount so designated with respect to a taxable year of the company is greater than its current or accumulated earnings and profits attributable to dividend or profit distributions of tax-exempt corporations or partnerships under Act No. 184 of May 13, 1948, as amended, under Act No. 6 of December 15, 1953, or under any other tax exemption law of Puerto Rico, made by such corporations or partnerships from income derived from the operations thereof covered by the exemption, the portion of each distribution which shall be dividends from industrial development income shall only be the ratio of the amount so designated that such current or accrued earnings and profits bear to the aggregate amount so designated.

**(3)  Capital Gain Dividends.--**   "Capital gain dividend" means any dividend distribution or part thereof, made by a registered investment company out of its current or accrued earnings and profits attributable to gains, sale or other disposition of property. Such term shall not include, however, any dividend distribution or part thereof made by a registered investment company out of its current or accrued

earnings or profits attributable to tax-exempt profits under Section 6(b)(1) of Act No. 184 of May 13, 1948, under Section 3 of Act No. 6 of December 15, 1953, or under Section 3 of Act No. 57 of June 13, 1963, or under any other tax exemption law of Puerto Rico.

**(4) Taxable Dividends.--** "Taxable dividend" means any dividend distribution or part thereof made by a registered investment company out of its current or accrued earnings and profits attributable to sources other than those specified in paragraphs (1), (2), and (3).

**(5) Registered Investment Company Stockholders.--** For purposes of subsection (b)(1), the term "registered investment companies" also includes, subject to the provisions in regulations as the Secretary may promulgate, any registered real estate investment company or real estate investment trust created or organized under the laws of the United States of America or any state of the United States of America that, during the taxable year, qualifies as a registered real estate investment company or real estate investment trust under the United States Internal Revenue Code.

**(d) Treatment of Capital Gain Dividends.--** Capital gain dividends shall be treated by stockholders as long-term capital gains.

**(e)** The provisions of subsection (a) notwithstanding, the separate accounts of an insurer established under the terms and conditions provided in the Insurance Code of Puerto Rico shall not be treated as a registered investment company for purposes of this Code.

**(f) Treatment of Interest Over Registered Investment Company Notes.--** The Secretary may establish by regulation, circular letter or any other general communication, the tax treatment for interest on notes issued by registered investment companies.

## SUBCHAPTER C -- SPECIAL EMPLOYEE-OWNED CORPORATIONS AND REGULAR AND SPECIAL MEMBERS

### Section 1113.01.-- Application of Provisions.--

The provisions of this Subchapter shall be applicable to Special Employee-Owned Corporations (hereinafter denominated "special corporations" in this Subchapter) incorporated according to the provisions of Chapter XVI of Act No. 144 of August 10, 1995, as amended.

### Section 1113.02.-- Computations of Special Corporation.--

**(a) Income and Deductions.--** The gross income of a special employee-owned corporation for any taxable year shall be determined as provided in Sections 1031.01 and 1031.02 of this Subtitle. Likewise, its net income or loss for any taxable year shall be determined as in the case of any other corporation, except that it must separately establish the items described in Section 1113.04, and

**(1)** There shall not be allowed a deduction for net operating losses as provided in Section 1033.14 of this Subtitle.

**(2)** There shall not be allowed a deduction for taxes as provided in Section 1033.04(c) of this Subtitle with respect to the taxes described in Section 1051.01 of this Subtitle.

**(3)** There shall not be allowed the deductions provided in Sections 1022.02(d) and 1033.19 of this Subtitle.

**(4)** There shall not be allowed a deduction for gifts provided in Section 1033.10 of this Subtitle.

**(5)** Shall be entitled to flexible depreciation as provided in Section 1040.11 and to accelerated depreciation as provided in Section 1040.12, subject to the limitations contained in such Sections.

**(b) Options for Special Corporations.--** Any option affecting the computation of net income of a special employee-owned corporation shall be exercised by the same.

**Section 1113.03.-- Imposition of Tax to Regular and Special Members, Not the Special Corporation, on Balances in Internal Capital Accounts.--**

The proportion of credit notices for productivity and patronage that special employee-owned corporations credit to internal capital accounts of ordinary and special members and which are not excluded from the members' gross income pursuant to the provisions of Section 1031.02(a)(17)(B) of this Subtitle shall not be subject to the income tax imposed by this Subtitle to corporations. Regular and special members shall be liable for income tax attributable to distributions made to them by means of credit notices for productivity and patronage, as if they had carried out the activity in their individual capacity. Notwithstanding the distributive share of regular and special members with respect to credited credit notices for productivity and patronage, which consist of tax-exempt interest earned and paid out by the special corporation, as well as income derived from agriculture subject to the deduction provided in Section 1033.12 of this Subtitle, to the extent established in said Section, shall preserve its character as tax-exempt income in the hands of regular and special members. Likewise, the distributive share of credit notices for productivity and patronage credited to internal capital accounts of regular and special members, with respect to income earned and paid out by the special corporation from activities or commercial transactions declared tax-exempt under the industrial and tax incentives laws, including for that purpose Act No. 52 of June 2, 1983, as amended [23 L.P.R.A. §§ 693 et seq.], known as the "Puerto Rico Tourism Incentives Act of 1983," and Act No. 78 of September 10, 1993, as amended [23 L.P.R.A. §§ 6001 et seq.], known as the "Puerto Rico Tourism Development Act of 1993," or any other tax exemption law similar in nature, shall be subject to the provisions related to distributions of tax-exempt income of each one of said laws, as applicable.

**Section 1113.04.-- Inclusion of Special Corporation Income.--**

**(a)  General Rule.--**  Upon determining his/her tax liability, each regular and special member shall take into consideration, separately, his/her distributive share of the income, gains or losses of the special employee-owned corporation, as well as the distributive share of the credit notices for productivity and patronage credited, for any taxable year of the special corporation ended within or simultaneously with the taxable year of such regular or special member, with respect to:

**(1)** Gains and losses from the sale or exchange of capital assets;

**(2)**  Gains and losses from the sale or exchange of property described in Section 1034.01(i) of this Subtitle;

**(3)** Contributions made to the entities described in Section 1033.15(a)(3) of this Subtitle;

**(4)** Dividends with respect to which the provisions of Section 1023.06 of this Subtitle apply;

**(5)** Tax withheld on the dividends described in paragraph (4);

**(6)** Taxes described in Section 1051.01 of this Subtitle;

**(7)** Other items of income, gains, losses, deductions or credits, as established by the Secretary by Regulation.

**(b)  Nature of Items Constituting Distributive Shares.--**  The nature of any item of income, gain, loss, deduction or credit included in the distributive share of a regular or special member under paragraphs (1) through (7) of subsection (a) shall be determined as if said item were realized by the member directly from the source from which it was realized by the special corporation, or incurred in the same manner incurred by the special corporation. Nevertheless, the distributive share which consists of dividends or profits subject to the provisions of Section 1023.06 of this Subtitle in the hands of the special corporation will not retain their eligible distribution nature under said sections when the member is not him/herself an eligible person, as said term is defined in Section 1023.06(d) of this Subtitle.

**Section 1113.05.-- Accounting Method for Special Employee-Owned Corporations and Their Regular and Special Members.--**

The special employee-owned corporation and its regular and special members may opt for any of the accounting methods provided in Section 1040.02 of this Subtitle. The accounting method selected by the special employee-owned corporation shall be the same as the accounting method of regular and special members.

### Section 1113.06.-- Taxable Year of Corporations and Their Regular and Special Members.--

**(a)  Special Corporation.--**  A special employee-owned corporation may adopt any taxable year regardless of the taxable year of its regular and special members. It may also change its taxable year, pursuant to the provisions of Section 1040.10 of this Subtitle and any other rules established by the Secretary.

**(b)  Regular and Special Members.--**  A regular or special member may adopt any taxable year regardless of the taxable year of the special employee-owned corporation and may change his/her taxable year pursuant to the provisions of Section 1040.10 of this Subtitle and any other rules established by the Secretary.

### Section 1113.07.-- Organization Expenditures.--

Expenditures and fees incurred by the special employee-owned corporation for its organization, or to promote the sale of, or for selling a share in said corporation, or to attract members, shall be deducted by the special corporation as a regular expense.

### Section 1113.08.-- Nonrecognition of Gain or Loss on Contributions of Property Made to Special Corporations.--

**(a)  General Rule.--**  No gain or loss shall be recognized to a Special Employee-Owned Corporation or to its members or shareholders in the case of a contribution of money or other property to the special corporation, except as provided in subsections (b) and (c) of this Section.

**(b)  Flexibly Depreciated Property.--**  In the case of a contribution of flexibly depreciated property, no gain or loss shall be recognized to a special corporation or its members or stockholders unless they elect otherwise. The election to recognize gain or loss shall be irrevocable.

**(c)  Property Subject to Liability or Lien.--**  In the case of a property contribution that is subject to liability or lien, which is assumed by the special corporation, gain shall be recognized to the contributing member or stockholder to the extent that the liability or lien portion from which he/she is discharged exceeds the adjusted basis for the contributing member or stockholder, on the contributed property.

### Section 1113.09.-- Income and Credits of Regular and Special Members.--  In computing his/her taxable income and his/her income tax for any taxable year, each regular and special member shall include as income or as loss from the operation of a trade or business, the share of the credit notices for productivity or patronage distributed to him/her, or the losses included in his/her internal capital account in the special employee-owned corporation shall be reduced. Provided, that the regular or special members of a special employee-owned corporation shall pay, in lieu of any other taxes imposed by this Subtitle, a twenty percent (20%) tax on the amount of any distribution of the credit notices for productivity and patronage that has been capitalized and excluded from the gross income of the special employee-owned corporation, pursuant to the provisions of Section 1031.02(a)(17)(B) of this Subtitle, and that has been withheld until the complete disassociation of the regular or special member from the corporation; the regular or special member may opt to include such distribution as part of his/her gross income in the income tax return for the year the distribution is made and pay a tax, in accordance with normal tax rates, whichever is more beneficial to the regular or special member. In the case that at the time of the disassociation of the regular member from the special corporation, the balance in the capital internal account reflects a loss, it shall be treated a regular loss.

In the event that the regular member uses the amount received to acquire his/her membership certificate in another special corporation in which he/she is subsequently a regular member, the gain realized, if any, to the extent of the

amount used for such purposes, shall be deferred while his/her relationship as regular member in such special corporation continues. Such transfer or reinvestment shall be made within a term not greater than one (1) year from the close of the regular member's taxable year in which the transfer was made or the distribution effected. In the alternative, the gain realized will be taxed in accordance with the provisions of this Section.

**Section 1113.10.-- Determination of Internal Capital Account Basis for Payment of Membership Certificates through Property Contribution.--**

**(a)  General Rule.--**  The basis of the internal capital accounts of regular, special or corporate members, with regards to the payment of the certificate of membership in a special employee-owned corporation through property contribution, shall be the adjusted basis on said property for the member in question at the time of the contribution.

**(b)  Exceptions.--**

**(1)  Flexibly Depreciated Property.--**  When the property contributed to the special employee-owned corporation has been flexibly depreciated, the basis of the internal capital account of the regular, special or corporate member shall be equal to the flexibly adjusted basis (as defined in Section 1040.11(d)(2) of this Subtitle) of the contributed property, increased by the gain or decreased by the loss recognized in the contribution.

**(2)  Property Subject to Accelerated Depreciation.--**  When the property contributed to the special employee-owned corporation has been subject to accelerated depreciation, the basis of the internal capital account of the regular, special or corporate member shall be equal to the contributed property basis, decreased by the depreciation claimed under the accelerated depreciation method, increased by any gain, or decreased by any loss recognized in the contribution.

**(3)  Property Subject to Encumbrance.--**  When the property contributed to the special employee-owned corporation is subject to liabilities or encumbrances from which the transferor is discharged, the basis of the internal capital account of the regular, special or corporate member shall be the adjusted basis on such property for that particular member at the time of the contribution, increased by the recognized gain to the contributing member or decreased by the amount of the part of the liability or encumbrance from which such member is discharged as a result of the contribution.

**Section 1113.11.-- Basis of Property Contributed to Special Employee-Owned Corporations.--**

The basis to a special employee-owned corporation for the contributed property by an ordinary, special or corporate member shall be the adjusted basis of said property for the member in question at the time of the contribution, increased by the gain recognized to the contributing member (pursuant to Section 1113.08 of this Subtitle) in case of property subject to liabilities or encumbrances. In the event that the contributed property had been flexibly depreciated, the basis of such property for the special corporation shall be equal to the flexibly adjusted basis (as defined in Section 1040.11(d)(2) of this Subtitle) of the contributed property, increased by the gain or decreased by the loss recognized to the contributing member. In the event that the contributed property had been subject to accelerated depreciation, the basis of said property for the special corporation shall be equal to the contributed property basis, decreased by the depreciation claimed under the accelerated depreciation method, increased by the gain, or decreased by the loss recognized to the contributing member.

**Section 1113.12.-- Effect of Certain Corporate Reorganizations.--**

When a for-profit corporation establishes a subsidiary under the provisions of this Subchapter and Chapter XVI of Act No. 144 of August 10, 1995, as amended, as part of a reorganization plan through which the parent corporation, in turn, will be converted to a special employee-owned corporation by means of merger, consolidation or any other method, or with the purpose to segregate a part or segment of its operations, or to liquidate the entity as such, it shall have a maximum term of five (5) years to complete said reorganization and conversion plan. Such term shall

also apply to for-profit corporations that amend their certificate of incorporation to convert to a Special Employee-Owned Corporation, whose amendment or conversion should also be consigned in a reorganization plan.

For these purposes, the parent corporation or special employee-owned corporation involved should, on or before a period of one hundred eighty-three (183) days after effecting the reorganization or amendment, file an application with the Secretary for an administrative opinion to the effect that such conversion meets the requirements contained in Section 1501 of Act No. 3 of January 9, 1956, as amended, and said transaction does not have the purpose of evading the payment of taxes. The administrative opinion thus requested shall be issued by the Secretary within a term not greater than ninety (90) days. The Secretary may establish by regulation the information and any other documentation that he/she may deem necessary in order to issue such opinion.

The requirement for an administrative opinion shall also be applicable to special employee-owned corporations which do not emerge as a result of a conversion or corporate reorganization, but which have been organized to carry out a new economic activity.

In those cases in which the Secretary determines that terms of the reorganization were not complied with within the prescribed time period, this shall constitute prima facie evidence that the sole purpose of the transaction was to evade payment of income taxes of the Government of Puerto Rico, in which case said parent corporation and subsidiary shall be subject to the assessment, by the Secretary, of the tax corresponding to the years during which said corporation and its members received the benefits of this Subchapter. The procedure to be used shall be equivalent to that provided in Subtitle F related to the assessment of taxes in jeopardy and pursuant to the regulations that the Secretary may adopt for this purpose.

### Section 1113.13.-- Treatment of Certain Distributions.--

**(a) Taxation on Regular, Special or Corporate Members With Respect to Accrued Earnings and Profits from Taxable Years in which the Corporation was not a Special Employee-Owned Corporation.--** Any distribution made by a Special Employee-Owned Corporation to regular, special or corporate members from earnings and profits accrued during years in which the corporation was not a special corporation, including earnings and profits derived from reorganizations with persons other than special corporations, shall be subject to the provisions of this Subtitle without regard to this Subchapter.

**(b) Source of Distributions.--** In those cases in which the special employee-owned corporation has accrued earnings and profits of those described in subsection (a), the Board of Directors of the special corporation will determine the source of the distribution or credit notices made.

### Section 1113.14.-- Credit for Payment of Membership Certificates by Ordinary and Special Members.--

**(a) General Rule.--** It shall be granted to any person to whom a certificate of membership is issued as a regular or special member of the special corporation, a credit equal to twenty-five percent (25%) of the total amount paid for said certificate, up to a maximum of one thousand dollars ($ 1,000). In the event that the certificate has been paid by a regular member in property, the cost or adjusted basis of the contributed property for such member shall be taken as credit. The credit shall be taken against the determined income tax for the year in which the required payments to acquire the certificate are made, whether in full or in installments in one or more taxable years, as applicable. The granted credit shall not be applicable against the alternate minimum tax of individuals. Such credit shall not be available if the regular member terminates his/her relationship with the special corporation and uses the amount received to pay for his/her membership certificate in another special corporation in which he/she subsequently becomes an ordinary member, except and to the extent that the cost of the new membership certificate exceeds the cost of the certificate in the corporation where he/she used to be a regular member.

**(b) Credit Carryover.--** In the event that the amount of credit allowed exceeds the determined income tax for the taxable year referred to in subsection (a), the excess may be carried over during the two (2) succeeding taxable years.

**Section 1113.15.-- Treatment of Interest Paid on Balance of Productivity and Patronage Credit Notices.--**

To the extent that the bylaws of the special corporation authorize payment of interest over unpaid credit notices for productivity and patronage or over other unpaid credited distributions to regular and special members, as reflected in the individual internal capital accounts of each member, the interest thus paid shall be exempt from the payment of income tax under this Subtitle. This treatment is not extensive to interest paid to corporate members.

**Section 1113.16.-- Payment to Deceased Regular or Special Member's Successor in Interest.--**

The amounts to be paid to the heirs or successors of a deceased regular or special member of a special corporation, pursuant to the provisions of subsection (g) of Section 16.03 of Chapter XVI of Act No. 164 of December 16, 2009, known as the "General Corporations Act," or that may be includible, pursuant to Section 1113.09 in the gross income of a successor in interest of a deceased member, shall be considered as income with respect to a decedent, pursuant to the provisions of Section 1032.03 of this Subtitle.

**Section 1113.17.-- Treatment of Preferred Stock.--**

**(a) Distributions.--**  The amounts distributed to preferred stock holders by a special corporation that is not subject to preferential tax treatment under any special statute with respect to tax exemptions which constitute a taxable dividend, shall be subject to a tax equal to ten percent (10%) of the amount of the distribution.

**(b) Sale or Exchange of Preferred Stock.--**  The gain from the sale or exchange of preferred stock in a special corporation shall be subject to a ten-percent (10%) tax over the amount of the realized gain, if any. In the event that a loss is sustained, the same shall be considered as a regular loss.

**Section 1113.18.-- Special Exemption to Special Employee-Owned Corporations Engaged in Manufacturing and Not Enjoying Tax Exemption under Tax or Industrial Incentive Laws.--**

**(a)**   Special corporations engaged in manufacturing that are not enjoying tax exemption under tax or industrial incentive laws, shall be entitled to choose one of the two (2) following deductions:

**(1)**   Special corporations whose net income not assigned to the collective reserve account and the social fund, and which has not been capitalized, exceeds two hundred thousand dollars ($ 200,000), and which has maintained an average employment or working position for regular members of twenty (20) or more persons during such taxable year, may deduct the first forty thousand dollars ($ 40,000) of said income from credit notices for productivity and patronage ratably distributed to their regular and special members that have not been capitalized, as applicable, so that said amount may be fully exempt from the payment of income tax.

**(2)**   Special corporations which for any taxable year derive total net income of less than twenty thousand dollars ($ 20,000) per job or working position for regular production members, may take a deduction equal to fifteen percent (15%) of their payroll or total production income advances, up to a maximum of fifty percent (50%) of the credit notices for productivity and patronage distributed during the taxable year to its regular and special members, as applicable.

**Section 1113.19.-- Deduction for Special Employee-Owned Corporations for the Creation of New Jobs.--**

A fifteen percent (15%) annual deduction from the payroll or total income advances attributable to the creation of three (3) to five (5) jobs or working positions for new regular members by a special employee-owned corporation shall be granted. Such deduction shall be twenty percent (20%) of said payroll or total income advances when six (6) to ten (10) jobs or working positions for regular members are created and twenty-five percent (25%) when eleven (11) or more new jobs or working positions for regular members are created. Such deduction shall be

allowed starting with the first three (3) taxable years from the creation or organization of the special corporation. To enjoy the allowable deduction, the special corporation shall keep the existing employment or working position level for regular members and payroll or total income advance existing during the immediately preceding taxable year, as applicable.

Any special employee-owned corporation that claims this deduction shall include, as part of its information return, a list of the jobs or working positions for new regular members created during such taxable year, including the name of the employee or regular member, beginning date of employment, his/her classification and salary or income advance earned during said taxable year.

### Section 1113.20.-- Sale of Shares to a Special Employee-Owned Corporation or to Employees to Organize a Special Employee-Owned Corporation.--

(a)  **General Rule.--**  No gain shall be recognized if shares of a corporation were sold or exchanged to a special corporation or to employees for the organization of a special corporation, subject to compliance with the following requirements:

(1)  The Special Employee-Owned Corporation or such employees hold immediately after such sale or exchange, at least fifty-five percent (55%) of the outstanding voting stock of said corporation.

(2)  The special corporation or such employees acquire within a period of time not greater than three (3) years, eighty percent (80%) of the outstanding voting stock of said corporation.

(3)  The proceeds from the sale or exchange are invested in similar property.

(4)  The period to replace or reinvest the proceeds from the sale or exchange begins three (3) months before the sale or exchange of the shares of the corporation and ends twelve (12) months after said sale or exchange takes place.

(5)  The taxpayer must file a written statement verified by the special corporation whereby he/she certifies that said shares have been sold or exchanged at the price paid for the same, and the percentage represented by said shares with regards to the total voting stock issued and outstanding of said corporation.

(b)  **Definition of Similar Property.--**  For purposes of this Section, the term "similar property" shall have the same meaning as that provided in Section 1034.04(f) of this Subtitle to the extent that it is not inconsistent with the provisions of this Section.

(c)  **Impossibility of Acquiring Similar Property.--**  When the taxpayer is an individual and proves to the Secretary's satisfaction that he/she has not been able to acquire similar property within the prescribed statutory period, the gain, if any, shall be treated as if it were a long-term capital gain, as said term is defined in Section 1034.01(a)(4) of this Subtitle.

### SUBCHAPTER D --  SPECIAL PARTNERSHIPS AND PARTNERS

### Section 1114.01.-- General Rule.--

(a)  **Application of Provisions.--**  The provisions of this Subchapter shall only apply to those partnerships that file a statement with the Secretary whereby they choose to operate as a special partnership, provided they derive at least seventy percent (70%) of their gross income during each taxable year from sources within Puerto Rico, and at least seventy percent (70%) of said gross income is derived from the operation of one of the following activities:

(1)  A construction business;

(2)  A land development business;

(3)  A business for the substantial rehabilitation of buildings or structures;

**(4)** A business for the sale of buildings or structures;

**(5)** A business for the lease of buildings or structures;

**(6)** A manufacturing business when it generates a substantial number of jobs, it being understood that the criterion to be used shall be the unemployment rate and the personal income, in relation to the workforce available in the municipality where the activity is to be conducted;

**(7)** A tourism business;

**(8)** An agricultural business;

**(9)** A business for the export of goods or services to foreign countries;

**(10)** A business engaged in the production of feature films;

**(11)** A business for the construction, operation or maintenance of public roads and attached facilities; or

**(12)** A tax-exempt business under Section 2(d)(1)(E) in connection with property devoted to green energy production, as defined in Act No. 83 of July 19, 2010 [13 L.P.R.A. §§ 10421 et seq.], Section 2(d)(1)(H) or 2(d)(1)(M) of Act No. 73 of May 28, 2008, known as the "Economic Incentives Act for the Development of Puerto Rico," or any analogous provisions in Act No. 135 of December 2, 1998 [13 L.P.R.A. §§ 10103 et seq.], known as the "Tax Incentives Act of 1998," or any succeeding law of a similar nature, including the Puerto Rico Green Energy Incentives Act or any law that provides incentives for the generation of energy from sustainable renewable sources or from alternate sources.

**(b)   Special Rules.--**

**(1)   Sale of Assets used in Eligible Activity.--**   Gross income from the operation of one of the activities described in paragraphs (1) through (11) of subsection (a) shall include gains derived from the sale, exchange or other disposition of property used in the corresponding activity described in subsections (a) and (h) of Section 1034.01.

**(2)   Gross Income during Special Partnership Organization Period.--**

**(A)   General Rule.--**   The gross income of the operation of one of the activities described in paragraphs (1) through (11) of subsection (a), shall include income from the temporary investment of the funds of a special partnership during the period prior to the beginning of operations of the activity that qualifies the special partnership for the benefits of this Subchapter. Said period may not be greater than thirty-six (36) months starting at the organization of the partnership.

**(B)   Extension.--**   In those cases in which the special partnership shows to the satisfaction of the Secretary that it has been impossible to begin the operations of the activity that shall qualify it as a special partnership within the period established under subparagraph (A), the Secretary may grant a time extension for a period that does not exceed eighteen (18) months from the expiration of the original period, for the partnership to begin the eligible activity. The income from the temporary investment of funds from the special partnership during the extended period shall constitute gross income from the operation of one of the activities described in paragraphs (1) through (11) of subsection (a).

**(3)   Business Engaged in the Production of Feature Films.--**   In the case of the activity covered under paragraph (10) of subsection (a), the partnership shall only need to meet the requirement that at least seventy percent (70%) of its gross income be derived from the operation of such activity.

**(4)   Special Partnerships Owned by Other Special Partnerships.--**   Those partnerships ("investment partnerships") that, whether directly or indirectly, (through other intermediate special partnerships) own shares in other special partnerships ("lower tier partnerships") that meet the seventy percent (70%) requirement described in subsection (a) shall qualify as special partnerships, provided that investment partnerships meet, in turn, with said seventy percent (70%) requirement. In determining satisfaction of said requirement, and for that purpose only, the gross income from any source and nature derived by

the lower tier partnership during its taxable year shall be treated as gross income of the investment partnership, in a proportion equal to its distributive share in the items described in subsection (a) of Section 1114.05. A share in the losses described in Section 1033.02(e)(4)(A) of the lower tier partnership shall be attributed to the investment partnership.

**(c) Corporations.--** For purposes of this Subchapter, the term "partnership" includes the term "corporation," provided that such corporation does not have in effect an option under Section 1115.02 for the corporation's taxable year. The terms "partners," "shares," and "partnership agreement" shall include the terms "stockholders," "stock," "articles of incorporation," and "bylaws," respectively.

## Section 1114.02.-- Partners, Not the Special Partnership, Subject to Tax.--

A special partnership that has made an option under the provisions of this Subchapter shall not be subject to the income tax imposed by this Subtitle on partnerships. Partners shall be liable for taxes on income attributable to their distributive share of the special partnership's net income. The application of this provision by itself shall not have the effect of treating a partner not otherwise engaged in trade or business within Puerto Rico, as engaged in trade or business in Puerto Rico.

## Section 1114.03.-- Special Partnership Computations.--

**(a) Income and Deductions.--** Gross income of a special partnership for any taxable year shall be determined as provided in Sections 1031.01 and 1031.02. Likewise, net income or loss shall be determined for any taxable year as in the case of any other partnership, except that it shall separately determine the items described in Section 1114.06(a), and:

**(1)** No deduction shall be allowed for net operating losses as provided in Section 1033.14.

**(2)** No deduction shall be allowed for taxes as provided in Section 1033.04 with regard to the taxes described in Section 1051.01.

**(3)** The deductions provided in Sections 1022.02(d) and 1033.19 shall not be allowed.

**(4)** It shall be entitled to flexible depreciation as provided in Section 1040 within the limitations of said section, and to accelerated depreciation as provided in Section 1040.11.

**(b) Special Partnership Options.--** Any option affecting the computation of a special partnership's net income shall be made by the partnership.

## Section 1114.04.-- Accounting Method for Special Partnerships and Their Partners.--

The special partnership may choose any of the accounting methods provided in Section 1040.02. A partner's distributive share of the special partnership's net income shall be determined in accordance with the accounting method chosen by the special partnership.

## Section 1114.05.-- Taxable Year of Special Partnerships and Their Partners.--

**(a) Special Partnership.--** A special partnership may adopt any taxable year regardless of its partners' taxable year. It may also change its taxable year pursuant to the provisions of Section 1040.10 and all other rules as established by the Secretary.

**(b) Partners.--** A partner may adopt any taxable year regardless of the special partnership's taxable year, and may change his/her taxable year pursuant to the provisions of Section 1040.10 and all other rules as established by the Secretary.

**(c) Close of Special Partnership's Taxable Year.--**

**(1) General Rule.--** Except in case of termination of a special partnership and, except as provided in paragraph (2) of this subsection, a special partnership's taxable year shall not close as a result of the

death of a partner, entry of a new partner, the liquidation of a partner's interest in the special partnership, or the sale or exchange of a partner's interest in the partnership.

**(2) Partner Who Retires or Sells Interest in the Special Partnership.--**

**(A) Disposition of Entire Interest.--**  The taxable year of a special partnership shall close:

**(i)**  With respect to a partner who sells or exchanges his/her entire interest in the special partnership; and

**(ii)**  With respect to a partner whose interest is liquidated, except that the taxable year of a special partnership with respect to a partner who dies shall not end prior to the close of the special partnership's taxable year.

**(B) Disposition of Less than Entire Interest.--**  The taxable year of a special partnership shall not be deemed to be closed with respect to a partner who sells or exchanges less than his/her entire interest in the special partnership or with respect to a partner whose interest is reduced by entry of a new partner, partial liquidation of a partner's interest in the special partnership, gift of a portion of such interest, or otherwise.

**(d) Determination of Distributive Share when Partner's Interest Changes.--**

**(1) In General.--**  Except as provided in paragraphs (2) and (3), if during any taxable year of the special partnership there is any change in any partner's interest in the special partnership, each partner's distributive share of any item of income, gain, loss, or credit of the special partnership described in Section 1114.06 for such taxable year shall be determined by the use of any method prescribed by the Secretary through regulation which takes into account the varying interests of the partners in the special partnership for such taxable year.

**(2) Certain Cash Basis Items Prorated over a Period of Time to which Attributable.--**

**(A) In General.--**  If during any taxable year of the special partnership there is a change in any partner's interest in the special partnership (except to the extent provided in regulations), each partner's distributive share of any allocable cash basis item shall be determined:

**(i)**  By assigning the appropriate portion of such item to each day in the period to which it is attributable; and

**(ii)**  By allocating the portion assigned to any such day among the partners in proportion to their interests in the partnership at the close of such day.

**(B) Cash Basis Items.--**  For purposes of this paragraph, the term "cash basis item" means any of the items described in Section 1114.06(a) with respect to which the partnership uses the cash receipts and disbursements method.

**(C) Items Attributable to Periods Not within Taxable Year.--**  If any portion of any cash basis item is attributable to:

**(i)**  Any period before the beginning of the taxable year, such portion shall be assigned under subparagraph (A)(i) to the first day of the taxable year; or

**(ii)**  Any period after the close of the taxable year, such portion shall be assigned under subparagraph (A)(i) to the last day of the taxable year.

**(D) Treatment of Deductible Items Attributable to Prior Periods.--**  If any portion of a deductible cash basis item is assigned under subparagraph (C)(i) to the first day of the taxable year:

**(i)**  Such portion shall be allocated among persons who are partners in the special partnership during the period to which such portion is attributable in accordance with their varying interests during such period, and

**(ii)**  Any amount assigned under item (i) to a person who is not a partner in the special partnership on such first day shall be capitalized by the partnership and treated in the manner provided in regulations.

**(3) Items Attributable to Interest in Multi-Tiered Partnerships.--**  If--

**(A)**  During any taxable year of the special partnership there is a change in any partner's interest in the special partnership (hereinafter in this paragraph referred to as "upper tier special partnership"), and

**(B)**  Such special partnership is a partner in another special partnership (hereinafter in this paragraph referred to as "lower tier special partnership"), then (except to the extent provided in regulations) each partner's distributive share of any item of the upper tier special partnership attributable to the lower tier special partnership shall be determined by assigning the appropriate portion (determined by applying principles similar to the principles of subparagraphs (C) and (D) of paragraph (2)) of each such item to the number of days during which the upper tier special partnership is a partner in the lower tier special partnership and by allocating the portion assigned to any such day among the partners in proportion to their interests in the upper tier special partnership at the close of such day.

**(4) Taxable Year Determined Without Regard to Subsection (c)(2)(A).--**  For purposes of this subsection, the taxable year of a special partnership shall be determined without regard to subsection (c)(2)(A).

## Section 1114.06.-- Inclusion of Special Partnership Income.--

**(a)  General Rule.--**  In determining his/her tax liability, each partner shall take into account separately (subject to the conditions and limitations provided in this Subtitle) his/her distributive share of the special partnership for any of its taxable years ended within or simultaneously with the partner's taxable year, with respect to:

**(1)**  Gains and losses from sales or exchanges of capital assets held by the special partnership for not more than six (6) months;

**(2)**  Gains and losses from sales or exchanges of capital assets held by the special partnership for more than six (6) months;

**(3)**  Gains and losses from sales or exchanges of property described in Section 1034.01(i);

**(4)**  Gains and losses from sales or exchanges of all assets of a tax-exempt business under the Puerto Rico Tourism Development Act of 1993, as amended, or under any other succeeding law of a similar nature;

**(5)**  Dividends to which the provisions of Section 1023.06 apply;

**(6)**  Tax withheld on dividends described in paragraph (5);

**(7)**  Taxes described in Sections 1051.01 and 1062.02;

**(8)**  Taxes described in Sections 1062.03 and 1062.04;

**(9)**  Income or loss derived from activities covered by a tax exemption resolution or concession, as the case may be, under the Puerto Rico Tourism Incentives Act of 1983, as amended, or the Puerto Rico Tourist Development Act of 1993, as amended, or under any other succeeding law of similar in nature;

**(10)**  Partnership's net income or loss, excluding items requiring separate consideration under other paragraphs of this subsection; and

**(11)**  Other items of income, gain, loss, deductions, or credit, as prescribed by the Secretary through regulations.

The provisions of this subsection shall apply to a partner that is subject to the tax imposed under Section 1091.01(a) or 1092.01(a). For purposes of Sections 1091.01(a) and 1092.01(a), the partner's distributive share in the special partnership's net income shall be the taxable sum total of items (1) through (5) and (9) through (11) of subsection (a).

**(b) Option to Treat Certain Items as Ordinary Income or Loss.--**

**(1)** For any taxable year, a partner can opt, with respect to each special partnership, to treat his/her distributive share in the items described in paragraphs (1) through (3) and (5) and (11) of subsection (a) as part of his/her ordinary income or loss under subsection (a)(10), except that for such purposes, the amount allowed as a deduction for his/her distributive share in the losses on the sale or exchange of capital assets by the partnership shall be limited to the amount includible on account of his/her distributive share in the gains of said partnership on said sales or exchanges.

**(2)** The option provided in paragraph (1) shall be made by the partner in accordance with the regulations promulgated by the Secretary and, once made for a particular taxable year, shall be irrevocable with respect to that whole year.

**(c) Nature of Items that Constitute Distributive Share.--** The nature, source, and character of any item of income, gain, loss, deduction, or credit included in the distributive share of the partner under paragraphs (1) through (11) of subsection (a), shall be determined as if said item were realized by the partner directly from the source from which it was realized by the special partnership, or incurred in the same manner as was incurred by the special partnership.

**(d) Gross Income of a Partner.--** In any case in which it is necessary to determine the gross income of a partner for purposes of this Subtitle, said gross income shall include his/her distributive share in the special partnership in the items described in paragraphs (1) through (5) and (9) through (11) of subsection (a). Notwithstanding the above stated, to determine, under Sections 1035.01 and 1035.02 of this Subtitle, the source of interest and dividends paid by a partner, the gross income of the partner shall include his/her distributive share in the special partnership of the aggregate amount of the items described in paragraphs (1) through (5) and (9) through (11) of subsection (a).


**Section 1114.07.-- Transactions Between Partner and Special Partnership.--**

**(a) Partner Not Acting in Capacity as Partner.--**

**(1) In General.--** If a partner engages in a transaction with a partnership other than in his/her capacity as a member of such partnership, the transaction shall, except as otherwise provided in this Section, be considered as occurring between the partnership and one who is not a partner.

**(2) Treatment of Payments to Partners for Property or Services.--** Under the regulations prescribed by the Secretary:

**(A) Treatment of Certain Services and Transfers of Property.--** If--

**(i)** A partner performs services for a special partnership or transfers property to a special partnership;

**(ii)** There is a related direct or indirect allocation and distribution to such partner; and

**(iii)** The performance of such services (or such transfer) and the allocation and distribution, when viewed together, are properly characterized as a transaction occurring between the special partnership and a partner acting other than in his/her capacity as a member of the special partnership, such allocation or distribution shall be treated as a transaction described in paragraph (1).

**(B) Treatment of Certain Property Transfers.--** If--

**(i)** There is a direct or indirect transfer of money or other property by a partner to a special partnership;

**(ii)**  There is a related direct or indirect transfer of money or other property by the special partnership to such partner (or another partner); and

**(iii)**  The transfers described in clauses (i) and (ii), when viewed together, are properly characterized as a sale or exchange of property,

such transfers shall be treated either as a transaction described in paragraph (1) or as a transaction between two (2) or more partners acting other than in their capacity as members of the special partnership.

**(3) Other Transactions.--**  If--

**(A)**  A corporation ("the transferor corporation") transfers property ("the transferred property") to a special partnership ("the transferee") in exchange for an interest in such partnership or as a capital contribution,

**(B)**  At the time of the transfer of property the fair market value of the property exceeds its basis to the transferor corporation, and

**(C)**  During the "applicable period" (as defined in this paragraph), the transferee or any special partnership directly or indirectly controlled by the transferee, distributes the transferred property to a person who at the time of the transfer described in subparagraph (A) was a shareholder of the transferor corporation, then the transfers and distributions described in subparagraphs (B) and (C) shall be treated as if they never occurred between the persons therein indicated, and the transferred property shall be considered as distributed by the transferor corporation to the shareholder described in subparagraph (C) at the time of the contribution described in subparagraph (A).

For purposes of this paragraph, the term "applicable period" means the period of sixty (60) months that begins with the first month of the first taxable year of the transferor corporation that begins after the transfer. The period prescribed for the assessment and collection of a deficiency provided in Subtitle F relative to that which is provided in this paragraph shall not be initiated until the income tax return of the transferor corporation for the last taxable year within which the last month of the applicable period ends is filed.

**(b) Certain Sales or Exchanges of Property with Respect to Controlled Partnerships.--**

**(1)  Losses Disallowed.--**  No deduction shall be allowed in respect of losses from sales or exchanges of property (other than interest in the partnership), directly or indirectly, in transactions described in Section 1033.17(b).

**(2) Rules of Ownership.--**  For purposes of paragraph (1), the ownership of a capital or profits interest in a partnership shall be determined in accordance with the rules of constructive ownership provided in Section 1033.17(b).

**(c)  Gains Treated as Ordinary Income.--**  In the case of a sale or exchange, directly or indirectly, of property which in the hands of the transferee is property other than a capital asset as defined in Section 1034.01(a)(1):

**(1)**  Between a special partnership and a person owning, directly or indirectly, more than fifty percent (50%) of the capital interest, or profits interest, in such partnership; or

**(2)**  Between two special partnerships in which the same persons own, directly or indirectly, more than fifty percent (50%) of the capital interest or profits interests, any gain recognized shall be considered as ordinary income.

**(d)  Ownership of a Capital or Profits Interest.--**  For purposes of paragraphs (1) and (2) of subsection (c), the ownership of a capital or profits interest in a partnership shall be determined in accordance with the rules of constructive ownership of a partnership's capital provided in Section 1033.17(b)(2) of this Subtitle.

**(e)  Guaranteed Payments.--**  To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a

member of the partnership, but only for purposes of Sections 1031.01 and 1033.02, subject to the limitations of Section 1033.17.

## Section 1114.08.-- Organization and Syndication Expenses.--

The expenses and fees incurred by the special partnership for its organization, or to promote the sale of, or to sell an interest in such special partnership, shall be treated as deferred expenses allowable as a deduction proportionately over a period of not less than sixty (60) months beginning with the first month in which the partnership begins its operations. The Secretary shall prescribe by regulation the application of this Section.

## Section 1114.09.-- Nonrecognition of Gain or Loss on Contributions of Property to a Special Partnership.--

**(a) General Rule.--** No gain or loss shall be recognized to a special partnership or to any of its partners in the case of a contribution of money or other property to the special partnership, in exchange for an interest in the special partnership, except as provided in subsections (b) and (c).

**(b) Flexibly Depreciated Property.--** Except as provided in Section 1114.12(c), in the case of a contribution of flexibly depreciated property, no gain or loss shall be recognized to a special partnership or to any of its partners unless opted otherwise. The option to recognize gain or loss with respect to such contribution shall be irrevocable.

**(c) Property Subject to Liability or Lien.--** In the case of a contribution of property subject to a liability or lien, which is assumed by the special partnership, gain shall be recognized to the contributing partner to the extent in which the part of the liability or lien from which he/she is discharged exceeds the adjusted basis for the contributing partner on the contributed property.

## Section 1114.10.-- Character of Gain or Loss on Contributed Unrealized Receivables, Inventory Items, and Capital Loss Property to a Partnership.--

**(a) Contribution of Unrealized Receivables.--** In the case of any property which:

**(1)** Was contributed to the special partnership by any partner; and

**(2)** Was an unrealized receivable in the hands of such partner immediately before such contribution, any gain or loss recognized by the partnership on the disposition of such property during the five (5)-year period beginning on the date of such contribution shall be treated as ordinary income or loss, as the case may be.

**(b) Contribution of Inventory Items.--** In the case of any property which:

**(1)** Was contributed to the special partnership by any partner; and

**(2)** Was an inventory item in the hands of such partner immediately before such contribution, any gain or loss recognized by the partnership on the disposition of such property during the five (5)-year period beginning on the date of such contribution shall be treated as ordinary income or loss, as the case may be.

**(c) Contribution of Capital Loss Property.--** In the case of any property which:

**(1)** Was contributed by any partner to the special partnership; and

**(2)** Was a capital asset in the hands of such partner immediately before such contribution, any loss recognized by the partnership on the disposition of such property during the five (5)- year period beginning on the date of such contribution shall be treated as a loss from the sale or exchange of a capital asset to the extent that, immediately before such contribution, the adjusted basis of such property in the hands of the partner exceeded the fair market value of such property.

**(d) Definitions.--** For purposes of this Section--

**(1) Unrealized Receivables.--**  The term "unrealized receivables" shall have the same meaning given to such term by Section 1114.20(c).

**(2) Inventory Items.--**  The term "inventory items" shall have the same meaning given to such term by Section 1114.20(d).

**(3) Substituted Basis Property.--**  If any property described in subsection (a), (b) or (c) is disposed of in a nonrecognition transaction, the tax treatment which applies to such property under such subsections shall also apply to any substituted basis property resulting from such transaction. A similar rule shall apply in the case of a series of nonrecognition transactions.

## Section 1114.11.-- Continuation of Special Partnerships.--

**(a) General Rule.--**  An existing special partnership shall be considered as continuing if it is not terminated. A special partnership shall be considered as terminated only if--

**(1)**  The revocation of the election to operate as a special partnership is requested, or the election is revoked on the Secretary's own motion, as provided in Section 1114.12(b).

**(2)**  Any of the requirements stated in Section 1114.01 are not met.

**(3)**  The partners agree to terminate the existing special partnership for a valid business reason. The termination shall be effective from the date of notice thereof.

**(b)**  In the case of a merger or consolidation of two or more special partnerships, the resulting special partnership shall be considered the continuation of any merging or consolidating special partnerships whose partners own an interest of more than fifty percent (50%) in the capital and the profits of the resulting special partnership.

## Section 1114.12.-- Election.--

**(a) Option.--**  The statement of a partnership where it elects the provisions of this Subchapter shall be filed with the Secretary within ninety (90) days following the beginning of the first taxable year for which the election shall apply. Said election shall be made by sworn statement undersigned by the partners or such partner to whom the administration of the special partnership has been delegated.

**(b) Irrevocability of Election.--**  Such election shall be irrevocable, except that the Secretary may revoke it by petition of the special partnership or on his/her own motion for the year in which the requirements of this Subchapter are not met, or for any taxable year in which it is determined that the special partnership has been used to evade the payment of taxes. The Secretary may revoke such election whenever the special partnership fails to comply with its tax liabilities, including, without limitation, those related with taxes imposed and those liabilities involving its acting as employer or withholding agent.

**(c) Effect of Election.--**  A partnership making an election under Section 1114.12 shall be subject to the provisions of subsections (d), (e), (f), and (g) of Section 1115.03.12 and of Section 1115.08 of Subchapter E of Chapter 11.

**(d)**  No election shall be allowed for a partnership to seek coverage under this Subchapter for any taxable year beginning after December 31, 2010.

## Section 1114.13.-- Noneligible Partnerships.--

**(a)**  The provisions of this Subchapter shall not apply to those partnerships that enjoy total or partial tax exemption under any provision of this Subtitle or under Act No. 6 of December 15, 1953, Act No. 57 of June 13, 1963, Act No. 26 of June 2, 1978, Act No. 121 of June 29, 1964, Act No. 126 of June 28, 1966, and Act No. 8 of January 24, 1987, as these have been amended, or under the provisions of any other special law granting tax exemption with respect to its operating income.

**(b)**  Notwithstanding the above, the provisions of this Subchapter shall apply to partnerships enjoying tax exemption under the Tourism Incentives Act of 1983, as amended, the Puerto Rico Tourist Development Act of 1993, or any successor act of a similar nature, under Act No. 47 of June 26, 1987, as amended, known as the "Public and Private Sector Co-Participation Act for the New Housing Operation," or under Act No. 225 of December 1, 1995 [13 L.P.R.A. §§ 10401 et seq.], known as the "Puerto Rico Agricultural Tax Incentives Act," or Section 2(d)(1)(E), 2(d)(1)(H) or 2(d)(1)(M) of Act No. 73 of May 28, 2008, known as the "Economic Incentives Act for the Development of Puerto Rico," or any similar provisions of Act No. 135 of December 2, 1998 [13 L.P.R.A. §§ 10101 et seq.], known as the "Tax Incentives Act of 1998," or any successor law of a similar nature, including the Green Energy Incentives Act of Puerto Rico and laws that provide incentives for the generation of energy from sustainable renewable sources or alternate sources.

**(c)**  The Secretary shall adopt regulations in connection with the application of the provisions of Act No. 120 of October 31, 1994, as amended [13 L.P.R.A. secs. 8006 et seq.], pertaining to special partnerships that operate under a tax exemption decree by virtue of Section 2(d)(1)(E), 2(d)(1)(H) or 2(d)(1)(M) of Act No. 73 of May 28, 2008, known as the "Economic Incentives Act for the Development of Puerto Rico," any analogous provisions of Act No. 135 of December 2, 1998 [13 L.P.R.A. §§ 10101 et seq.], known as the "Tax Incentives Act of 1998," or any successor law of a similar nature, including any laws providing incentives to generate energy from alternate or sustainable renewable sources, so that such businesses may opt for the tax treatment under Subchapter D of Chapter 11 of Subtitle A of said Act, and keep income tax fixed rates, full exemption on distributions, special deductions, and tax credits available to grantees of decrees under such laws, regardless of the place of organization, operation or residence of such partner. It shall be understood that tourism businesses referred to in Sections 1033.02(e)(4)(A), 1114.06(a)(4), 1114.06(a)(9), 1114.14(b), and 1114.15(b)(2) of Act No. 120 of October 31, 1994, includes special partnerships that operate under an exemption decree granted pursuant to Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], known as the "Economic Incentives Act for the Development of Puerto Rico," Act No. 135 of December 2, 1998 [13 L.P.R.A. §§ 10101 et seq.], known as the "Tax Incentives Act of 1998," or any successor laws of a similar nature, including the Green Energy Incentives Act of Puerto Rico and any laws that provide incentives for the generation of energy from sustainable renewable sources or alternate sources.

## Section 1114.14.-- Income and Credits.--

**(a)**  In computing his/her taxable income and income tax for any taxable year, each partner shall include as income or loss his/her distributive share of the special partnership's income or loss as provided in Section 1114.06. The deduction for the partner's share of the partnership's net loss shall be subject to and governed by the provisions and limitations of Section 1033.02(e) and the regulations prescribed thereunder.

**(b)  Credit.--**  The partner may claim as credit against his/her tax liability his/her share of any credit provided in Sections (5)(a) and (5)(f) of the Puerto Rico Tourist Development Act of 1993, the credits under Sections 14 and 16 of the Capital Investments Fund Act, and the tax imposed under Section 4(a) of the Tax Incentives Act of 1987, or any other successor law of a similar nature. A partner's share in the credits described in this subsection shall be determined and reported by the partnership in accordance with Section 1114.06(a).

## Section 1114.15.-- Determination of Partner's Distributive Share.--

**(a)  General Rule.--**  A partner's distributive share of income or loss of the special partnership, or of any tax credit of the special partnership shall be determined by the partnership agreement, except under the circumstances described in subsection (b) of this Section.

**(b)  Exceptions.--**  The distributive share of a partner of the special partnership's income or loss, or of any tax credit of the special partnership shall be determined in accordance with the partner's interest if, when all facts and circumstances are taken into account:

**(1)**  The partnership agreement does not provide as to the partner's share of special partnership's income, loss or tax credit, or

**(2)**  The allocation to a specific partner of share in the gains, losses of the special partnership or in the tax credits of the partnership does not respond to economic realities. It shall be understood that the allocations contained under the agreements of partnerships operating under the Tourism Incentives Act of 1983, as amended, and the Tourist Development Act of 1993, or any successor law of a similar nature, respond to economic realities.

**(c)  Family Partnership.--**

**(1)  Distributive Share of Donee Includible in Gross Income.--**  In the case of any special partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his/her gross income, except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital.

**(2)  Purchase of Interest by Member of Family.--**  For purposes of this Section, an interest purchased by one member of a family from another member shall be considered to be created by gift from the seller, and the fair market value of the purchased interest shall be considered to be donated capital.

**(3)**  For purposes of this subsection, the family of any individual shall include only his/her spouse, ancestors, and lineal descendants, and any trusts for the primary benefit of such persons.


### Section 1114.16.-- Treatment of a Nonresident Partner's Distributive Share.--

The share in the income of a special partnership, prorated to its partners that are nonresident aliens or corporations or nonresident foreign partnerships shall be considered as a distribution made at the end of the taxable year of the special partnership, and the same shall be ruled by the provisions of Sections 1062.08, 1062.10, 1062.11, 1091.01, and 1092.01. However, the amount of the withheld tax under said provisions shall be remitted to the Department not later than the fifteenth (15th) day of the third month following the close of the taxable year of the special partnership, or than the fifteenth (15th) day of the fourth month following said close, when an extension has been granted, according to the provisions of Section 1061.06(c)(3).


### Section 1114.17.-- Determination of Adjusted Basis of Partner's Interest.--

**(a)  General Rule.--**  The adjusted basis of a partner's interest in a special partnership shall be the basis of said interest, determined under subsection (b), (c), or (d) of this Section, increased by the items described in paragraph (1) and reduced by the items described in paragraph (2).

**(1)  Increases to the Basis.--**  The adjusted basis of the partner's interest in a special partnership shall be increased by:

**(A)**  The incomes and profits described in paragraphs (1) through (5) and (9) through (11) of Section 1114.06(a);

**(B)**  the income exempt under the provisions of this Subtitle or under the provisions of any other law that grants total or partial tax exemption with respect to income derived from its operations; and

**(C)**  the amount of deductions from agriculture income granted by Section 1033.12.

**(2)  Reductions to the Basis.--**  The adjusted basis of a partner's interest in a special partnership shall be reduced (but not below zero) by the following items:

**(A)**  The partner's distributive share from the losses of the special partnership allowed as a deduction under Section 1033.02(e);

**(B)**  the distributions made by the special partnership, as provided in Section 1114.18;

(C)  the amount of credits of Section 1114.28, Section 5(a) of the Puerto Rico Tourist Development Act of 1993, and Section 14 of the Puerto Rico Investment Capital Funds Act, as amended, or by any other law that grants credits of a similar nature;

(D)  the withholdings at source of Sections 1062.09 and 1062.10; and

(E)  any expense of the special partnership not allowable as a deduction upon determining its net income and that is not capitalizable.

**(b)  Basis of Contributing Partner's Interest in the Special Partnership.--**  The basis of a partner's interest in a special partnership acquired by a contribution of money or other property shall be the amount of money contributed or the adjusted basis of such other property to the contributing partner at the time of the contribution.

**(c)  Basis of Partner's Interest when Property Subject to Liens or Flexible or Accelerated Depreciation is Contributed.--**

**(1)  Property Subject to Liens.--**  When the property contributed to the special partnership is subject to an obligation or lien from which the contributing partner is discharged, the basis of the partner's interest shall be the adjusted basis of such property to the partner at the time of contribution, reduced by the amount of that portion of the obligation or lien from which the contributing partner is discharged and increased by any gain recognized to the contributing partner at such time.

**(2)  Flexibly Depreciated Property.--**  When the contributed property has been flexibly depreciated, the basis of the partner's interest shall be equal to the flexibly adjusted basis (as defined in Section 1040.11(d)(2)) of the contributed property, increased by any gain or decreased by any loss recognized in the contribution.

**(3)  Property Subject to Accelerated Depreciation.--**  When the contributed property has been subject to accelerated depreciation, the basis of the partner's interest shall be equal to the contributed property basis, decreased by the depreciation claimed under the accelerated depreciation method, increased by any gain or decreased by any loss recognized in the contribution.

**(d)  Basis of Interest in the Special Partnership Not Acquired by Contribution to the Special Partnership.--**  The basis of a partner's interest in a special partnership that has not been acquired by contribution to the special partnership shall be determined in accordance with the provisions of Section 1034.02.

## Section 1114.18.-- Basis of Interest of Partner Who Receives a Distribution.--

In the case of a distribution by the special partnership to a partner other than the total liquidation of his/her interest, the adjusted basis for said partner of his/her interest in the partnership shall be reduced, but not below zero, by:

**(1)**  The amount of any money distributed to such partner, and

**(2)**  the amount of the basis for said partner of distributed property, other than money, determined as provided in Section 1114.27.

## Section 1114.19.-- Recognition of Profit or Loss in Distributions Made by Special Partnerships.--

In case of a distribution of interests by the special partnership or a distribution in total or partial liquidation of the interest of a partner in said special partnership:

**(1)**  Gain shall only be recognized to such partner to the extent that the money received exceeds the adjusted basis of his/her interest in said special partnership immediately before the distribution, and

**(2)**  losses shall only be recognized to such partner in the case of a distribution in total liquidation of a partner's interest if the distributed property is part of the property described in subparagraphs (A) or (B)

below. The amount of the loss shall be the excess of the adjusted basis of the partner's interest in the special partnership over the sum of:

**(A)** Any money distributed; and

**(B)** the partner's basis determined as provided in Section 1114.27, of any unrealized receivables or inventory (as defined in Section 1114.20).

Any gain recognized under this subsection shall be treated as realized in the sale or exchange of a capital asset. Any loss recognized under this subsection shall be an ordinary loss.

**(3) Special Rule.--**  This Section shall not apply to distributions made to a retiring partner or a deceased partner successor in interest. In these cases, the provisions of Section 1114.25 shall apply.


### Section 1114.20.-- Character of Gain or Loss on Disposition of Distributed Property.--

**(a) Sale or Exchange of Certain Distributed Property.--**  The gain or loss on the disposition by a partner of unrealized receivables or inventory items, as they are defined in this Subtitle, which are distributed by a special partnership shall be considered as ordinary. This subsection shall not apply to the sale or exchange of inventory items carried out after five (5) years from the date of distribution.

**(b) Holding Period for Distributed Property.--**  In determining the period for which a partner has held distributed property, other than for purposes of subsection (a), the provisions of Section 1034.01(i) shall apply.

**(c) Unrealized Receivables.--**  For purposes of this Subchapter, the term "unrealized receivables" includes, to the extent that these are not previously includible in income of the special partnership, any right to payment for:

**(1)** Goods delivered, or to be delivered, to the extent that the proceeds therefrom would be treated as ordinary income, or

**(2)** services rendered, or to be rendered.

**(d) Inventory Items.--**  For purposes of this Subchapter, the term "inventory items" shall mean:

**(1)** Property of the special partnership of the type described in Section 1034.01(a)(1)(A);

**(2)** any other property of the special partnership which, if sold or exchanged by the partnership, would not be considered as a capital asset or property of the type described in Section 1034.01(i); and

**(3)** any other property held by the partnership which, if held by the partner, would be considered property of the type described in paragraph (1) or (2) above.


### Section 1114.21.-- Sale or Exchange of Interest in a Special Partnership.--

Gain or loss from the sale or exchange of a partner's interest in a special partnership, shall be treated as realized from the sale or exchange of a capital asset.


### Section 1114.22.-- Treatment of Certain Liabilities.--

**(a) Increase in the Partner's Liabilities.--**  The assumption by a partner of partnership liabilities shall be treated as a contribution of money by such partner to the special partnership.

When a partner assumes partnership liabilities, the basis of his/her interest in the special partnership shall be increased by the amount of the liability assumed.

**(b) Decrease in Partner's Liabilities.--**  The assumption by the special partnership of a partner's individual liabilities shall be treated as a distribution of money to the partner.

**Section 1114.23.-- Payments to a Deceased Partner's Successor in Interest.--**

The amounts includible under Section 1114.14 in the gross income of a successor in interest of a deceased partner shall be treated as income with respect to a decedent as provided in Section 1032.03.

**Section 1114.24.-- Treatment of Certain Distributions.--**

    **(a)  Taxation of Partners on Earnings and Profits Accrued during Taxable Years in which the Partnership was not a Special Partnership or from Liquidations or Reorganizations Involving Corporations or Partnerships and a Special Partnership.--**   Any distribution made by a special partnership of earnings and profits accrued during the years in which the partnership was not a special partnership, including earnings and profits received in liquidations or reorganizations with other corporations or partnerships that are not special partnerships, whether such transactions are made by reason of the creation of the special partnership or after the partnership has been enjoying the benefits of Subchapter D of Chapter 11, shall be subject to the following rules:

        **(1)  Origin of Distributions.--**   In the cases where the special partnership has accrued earnings and profits at the close of the taxable year before the first year in which the option described in Section 1114.12 takes effect, said earnings and profits shall be treated as distributed during the first two (2) taxable years of the partnership in which the election under Section 1114.12 is in effect. The amount of the earnings or profits that according to this last sentence shall be deemed distributed or treated as distributed in the first year of the period indicated, shall not be less than fifty percent (50%) of such total earnings and profits. The amount of said earnings and profits that has been neither distributed nor treated as distributed in said first year, shall be deemed distributed in the second year. Earnings and profits distributed or treated as distributed under this paragraph shall be recognized as gross income for each partner, and as such, shall be subject to all other provisions of this Subtitle as if said distribution had been made by a partnership that is not a special partnership.

        **(2)  Earnings and Profits Received in Liquidations or Reorganizations.--**   Earnings and profits from liquidations or reorganizations described in this subsection shall be deemed distributed in the first two (2) years of existence of the special partnership or upon the close of the first two (2) taxable years after the liquidation or reorganization occurs in special partnerships already in existence, as the case may be. Earnings and profits distributed or treated as distributed under this last sentence, shall not be less than fifty percent (50%) of such total earnings and profits so transferred, for the first taxable year of the special partnership in which the liquidation or reorganization occurs. The amount of said earnings and profits that has been neither distributed nor treated as distributed in said first year, shall be deemed as distributed in the second year of said period. Earnings and profits distributed or treated as distributed under this paragraph shall be recognized as gross income for each partner, and as such, shall be subject to all other provisions of this Subtitle as if said distribution had been made by a partnership that is not a special partnership.

        **(3)  Earnings and Profits That Exist at the Close of the Last Taxable Year Begun before July 1, 1995.--**   If a special partnership has in effect an option under Section 340 of the Income Tax Act of 1954, as amended, at the close of the last taxable year begun before July 1, 1995 and on that date, it had earnings and profits attributable to periods during which it was not a special partnership, or received in liquidations and reorganizations, the distributions of profits that are carried out after said date shall be deemed to have been made out of the undistributed balance of said earnings and profits until the same are depleted, and shall be subject to taxation under the provisions of this Subtitle, without considering this Subchapter.

    **(b)  Effect of Distributions on Basis of Partner's Interest.--**   The basis of a partner's interest in a special partnership shall not be increased or decreased as a result of amounts recognized as gross income under subsection (a) or for a distribution of earnings and profits subject to the provisions of subsection (a).

**Section 1114.25.-- Payments to a Retiring Partner or a Deceased Partner's Successor in Interest.--**

**(a)  General Rule.--**  Payments made to a retiring partner or the successors of a deceased partner shall be considered:

**(1)**  As a distributive share to the recipient of special partnership income, if the amount thereof is determined with regard to the special partnership's income; or

**(2)**  as a secured payment, if the amount is determined without regard to the special partnership's income.

**(b)**  The Secretary shall determine by regulations the circumstances in which such payments shall be treated as a distribution by the special partnership in exchange for the interest of such partner and not as a distributive share or secured payments under subsection (a).

**Section 1114.26.-- Basis of Property Contributed to Special Partnership.--**

The basis of the property contributed to a special partnership by a partner shall be the adjusted basis of such property to the partner at the time of the contribution, increased by the gain recognized to the contributing partner (under Section 1114.09) in the case of property subject to an obligation or lien. In the case that the contributed property has been flexibly depreciated, the basis of such property to the special partnership shall be equal to the flexibly adjusted basis (as defined in Section 1040.11(d)(2)) of the contributed property, increased by the gain or decreased by the loss recognized to the contributing partner. In the case of contributed property which has been subject to accelerated depreciation, the basis of such property to the special partnership shall be equal to the basis of the contributed property, decreased by the depreciation claimed under the accelerated depreciation method, increased by the gain, or decreased by the loss recognized to the contributing partner.

**Section 1114.27.-- Basis of Distributed Property Other Than Money.--**

**(a)  General Rule.--**  The basis of property, other than money, distributed by a special partnership to a partner other than in liquidation of the partner's interest in the special partnership, shall be the adjusted basis of the property to the special partnership immediately before such distribution.

The partner's basis of the property thus distributed shall not exceed the adjusted basis of the partner's interest in the special partnership, decreased by any amount of money distributed in the same transaction.

**(b)  Distribution in Liquidation.--**   The basis of property, other than money, distributed by a special partnership to a partner in liquidation of the partner's interest in the special partnership shall be an amount equal to the adjusted basis of the partner's interest in the special partnership, reduced by any money distributed in the same transaction.

**Section 1114.28.-- Credit for Contribution to Special Partnership Described in Section 1114.01(a)(10).--**

**(a)**  A credit is allowed to the partner of a special partnership described in paragraph (10) of subsection (a) of Section 1114.01 of this Subtitle, equal to twenty-five percent (25%) of the amount of his/her annual contribution to the special partnership, made before the effective date of the provisions of any law of the Government of Puerto Rico that grants tax credit to the film industry, but said credit shall not exceed two hundred fifty thousand dollars ($ 250,000) in the taxable year in which the contribution is made. When determining the amount of the annual contribution of the partner to the special partnership, only the cash amounts contributed shall be considered. The credit shall be applied against the determined tax under the provisions of this Subtitle after taking into account any net loss of the partner in the special partnership. Such credit shall neither be applied against the alternative minimum tax, nor against the alternate basic tax applicable to individuals.

**(b)  Credit Carryover.--**  In the event that the credit described in subsection (a) of this Section exceeds the amount of the tax determined for a taxable year, such excess may be carried over to each of the next five

(5) succeeding taxable years in chronological order, and claimed as a credit up to the limit of tax determined in each year, until the credit is exhausted, but never in excess of two hundred fifty thousand dollars ($ 250,000) for any taxable year.

## SUBCHAPTER E - CORPORATIONS OF INDIVIDUALS

### Section 1115.01.-- General Rule.--

**(a) Application of Provisions.--**

**(1) In General.--** The provisions of this Subchapter shall only apply to those corporations that file with the Secretary an election to be treated as a corporation of individuals.

**(2) Partnerships.--** For purposes of this Subchapter, the term "corporation" includes the term "partnership" provided that such partnership does not have an election under Section 1114.12 for the taxable year of the partnership. The terms "stockholder" and "stock" include the terms "partners" and "shares," respectively.

**(b) Definitions.--**

**(1) Corporation of Individuals.--** For purposes of this Subchapter, the term "corporation of individuals" means, with respect to any taxable year, an eligible corporation of individuals for which an election under Section 1515.02 of this Subchapter is in effect.

**(2) Regular Corporation.--** For purposes of this Subchapter, the term "regular corporation" means, with respect to any taxable year, a corporation which is not a corporation of individuals for such year.

**(c) Eligible Corporation of Individuals.--**

**(1) In General.--** For purposes of this Subchapter, the term "eligible corporation of individuals" means a domestic corporation which is not an ineligible corporation and which does not--

**(A)** have more than seventy-five (75) stockholders;

**(B)** have as a stockholder person (other than an estate or trust described in subsection (d)(2), or who is not an individual;

**(C)** have more than one class of stock.

**(2) Corporations Organized in the States of the United States.--** For purposes of paragraph (1), the term "domestic corporation" includes a corporation organized under the laws of any of the states of the United States or the District of Columbia which is engaged in the active conduct of a trade or business solely in Puerto Rico.

**(3) Eligible Corporation.--** For purposes of paragraph (1), the term "eligible corporation" means any domestic corporation other than--

**(A)** an insurance company subject to taxation under Subchapter G;

**(B)** a regulated investment company subject to taxation under Subchapter L;

**(C)** a special corporation subject to taxation under Subchapter M;

**(D)** a tax-exempt corporation under the provisions of Act No. 57 of June 13, 1963 [13 L.P.R.A. §§ 252 et seq.], Act No. 26 of June 2, 1978 [13 L.P.R.A. §§ 255 et seq.], Act No. 8 of January 24, 1987 [13 L.P.R.A. §§ 256 et seq.], or any other similar laws, except for an exempt corporation under the provisions of Act No. 78 of September 10, 1993 [23 L.P.R.A. §§ 6001 et seq.];

**(E)** an exempt corporation under Section 1101.01;

**(F)** a financial institution as defined in Section 1033.17(f)(4); or

**(G)** an entity that holds a license issued by the Commissioner of Financial Institutions, pursuant to Act No. 3 of October 6, 1987 [7 L.P.R.A. §§ 1241 et seq.], known as the "Investment Capital Funds Act," as amended.

**(d)  Special Rules for Applying Subsection (c).--**

**(1)  Married Individuals Treated as One (1) Stockholder.--**   For purposes of subsection (c) a husband and wife (or their estates) shall be treated as one stockholder.

**(2)  Certain Trusts Permitted as Shareholders.--**

**(A)  In General.--**   For purposes of subsection (c)(1)(B), the following trusts may be stockholders:

**(i)**   A trust all of which is treated as owned by an individual who is a resident of the Puerto Rico or a nonresident United States citizen.

**(ii)**   A trust created primarily to exercise the voting power of stock transferred to it, and which beneficiary is an individual.

**(B)  Treatment as Stockholder.--**   For purposes of subsection (c)(1)--

**(i)**   In the case of a trust described in clause (i) of subparagraph (A), the deemed owner shall be treated as the stockholder.

**(ii)**   In the case of a trust described in clause (ii) of subparagraph (A), each beneficiary of the trust shall be treated as a stockholder.

**(3)  Estate of Individual Debtor in Bankruptcy may be Stockholder.--**   For purposes of subsection (c)(1)(B), the term "estate" includes the estate of an individual debtor in bankruptcy in a case under Title 11 of the United States Code.

**(4)  Differences in Common Stock Voting Rights.--**   For purposes of subsection (c)(1)(C), a corporation shall not be treated as having more than one (1) class of stock solely because there are differences in voting rights among the shares of common stock.

**(5)  Straight Debt Safe Harbor.--**

**(A)  In General.--**   For purposes of subsection (c)(1)(C), straight debt shall not be treated as a second class of stock.

**(B)  Straight Debt Defined.--**   For purposes of this paragraph, the term "straight debt" means any written unconditional promise to pay on demand or on a specified date a sum certain in money if--

**(i)**   the interest rate (and interest payment dates) are not contingent on profits, the borrower's discretion, or similar factors;

**(ii)**   there is no convertibility (directly or indirectly) into stock; and (iii) the creditor is an individual, an estate, or a trust described in paragraph (2).

**(C)  Regulations.--**   The Secretary shall prescribe such regulations as may be necessary or appropriate to provide for the proper treatment of straight debt.

**(e)  Special Rule for Qualified Subchapter Trust.--**

**(1)  In General.--**   In the case of a qualified subchapter trust with respect to which a beneficiary makes an election under paragraph (2)--

**(A)**   such trust shall be treated as a trust described in subsection (d)(2)(A)(i), and

**(B)**   the beneficiary of such trust shall be treated as the owner of that portion of the trust which consists of stock in a corporation of individuals with respect to which the election under paragraph (2) is made.

**(2)  Election.--**

**(A) In General.--** A beneficiary of a qualified subchapter trust (or his/her legal representative) may elect to have this subsection apply.

**(B) Manner and Time of Election.--**

**(i) Separate Election with Respect to each Corporation.--** An election under this paragraph shall be made separately with respect to each corporation the stock of which is held by the trust.

**(ii) Elections with Respect to Successive Income Beneficiaries.--** If there is an election under this paragraph with respect to any beneficiary, an election under this paragraph shall be treated as made by each successive beneficiary unless such beneficiary affirmatively refuses to consent to such election.

**(iii) Time, Manner, and Form of Election.--** Any election, or refusal, under this paragraph shall be made in such manner and form, and at such time, as the Secretary may prescribe through regulation.

**(C) Election Irrevocable.--** An election under this paragraph, once made, may be revoked only with the consent of the Secretary.

**(D) Effectiveness.--** An election shall be effective up to a maximum of fifteen (15) days and two (2) months before the date of the election.

**(3) Qualified Subchapter Trust.--** For purposes of this subsection, the term "qualified subchapter trust," in accordance with this Subchapter, means a trust--

**(A)** the terms of which require that--

**(i)** during the life of the current income beneficiary, there shall be only one (1) income beneficiary of the trust,

**(ii)** any corpus distributed during the life of the current income beneficiary may be distributed only to such beneficiary,

**(iii)** the income interest of the current income beneficiary in the trust shall terminate on the earlier of such beneficiary's death or the termination of the trust, and

**(iv)** upon the termination of the trust during the life of the current income beneficiary, the trust shall distribute all of its assets to such beneficiary, and

**(B)** all of the income (pursuant to Section 1083.02(d)) of which is distributed (or required to be distributed) currently to an individual who is a resident of Puerto Rico or a nonresident United States citizen.

**(4) Trust Ceasing to be Qualified.--**

**(A) Failure to meet requirements of paragraph (3)(A).--** If a qualified subchapter trust ceases to meet any requirement of paragraph (3)(A), the provisions of this subparagraph shall not apply to such trust as of the date it ceases to meet such requirement.

**(B) Failure to meet requirements of paragraph (3)(B).--** If any qualified subchapter trust ceases to meet any requirement of paragraph (3)(B), but continues to meet the requirements of paragraph (3)(A), the provisions of this subparagraph shall not apply to such trust as of the first day of the first taxable year beginning after the first taxable year for which it failed to meet the requirements of paragraph (3)(B).

**(5) Trust Constituted before October 31, 1994.--**

**(A) In General.--** For purpose of determining compliance with the requirements of paragraphs (3)(A) and (3)(B), a trust constituted before October 31, 1994, may have more than one income beneficiary of the trust, provided that all income beneficiaries of the trust are beneficiaries thereof as of October 31, 1994.

**(B) Compliance with the Requirement of Subsection (c)(1)(A) of Section 1115.01 of the Code.--** For purposes of determining compliance with the requirement of subsection (c)(1)(A) of Section 1115.01 of the Code, each income beneficiary of a trust described in subparagraph (A) shall be treated as a stockholder.

## Section 1115.02.-- Election; Revocation Termination.--

**(a) Election.--**

**(1) In General.--** Except as provided in subsection (g), an eligible corporation may elect to be a Corporation of Individuals.

**(2) All Shareholders must Consent to Election.--** An election under this subsection shall be valid only if all persons who are stockholders in such corporation on the day on which such election is made consent to such election.

**(b) Effectiveness.--**

**(1) In General.--** An election under subsection (a) may be made by a corporation of individuals for any taxable year--

**(A)** at any time during the preceding taxable year, or

**(B)** not later than the fifteenth (15th) day of the fourth (4th) month of the taxable year for which the election was effective.

**(2) Certain Elections made During the First Three and a Half (3 1/2) Months Treated as made for the Next Taxable Year.--** If--

**(A)** an election under subsection (a) is made for any taxable year during such year and on or before the fifteenth (15th) day of the fourth (4th) month of such year, but

**(B)** Either--

**(i)** on one (1) or more days in such taxable year before the day on which the election was made, the corporation did not meet the requirements of subsection (c) of Section 1115.01, or

**(ii)** one (1) or more of the persons who held stock in the corporation during such taxable year and before the election was made did not consent to the election, then such election shall be treated as made for the following taxable year.

**(3) Election Made After the First Three and a Half (3 1/2) Months Treated as made for Following Taxable Year.--** If--

**(A)** a corporation of individuals makes an election under subsection (a) for any taxable year, and

**(B)** such election is made after the fifteenth (15th) day of the fourth (4th) month of the taxable year and on or before the fifteenth (15th) day of the fourth (4th) month of the following taxable year, then such election shall be treated as made for the following taxable year.

**(4) Taxable years of three and a half (3 1/2) months or less.--** For purposes of this subsection, an election for a taxable year made not later than three and a half (3 1/2) months after the first day of the taxable year shall be treated as timely made during such year.

**(c) Effectiveness.--** An election under subsection (a) shall be effective for the taxable year of the corporation for which it is made and for all succeeding taxable years of the corporation, until such election is terminated under subsection (d).

**(d) Termination.--**

**(1) By Revocation.--**

**(A) In General.--** An election under subsection (a) may be terminated by revocation.

**(B)** Stockholders Owning more than Fifty Percent (50%) of Stock must Consent to Revocation.--An election may be revoked only if stockholders holding more than fifty percent (50%) of stock of the corporation on the day on which the revocation is made the such stockholders consent to the revocation through a sworn statement duly notarized.

**(C)  Effectiveness.--**  Except as provided in subparagraph (D)--

**(i)**  a revocation made during the taxable year and not later than the fifteenth (15th) day of the fourth (4th) month thereof shall be effective on the first day of such taxable year, and

**(ii)**  a revocation made during the taxable year, but after such fifteenth (15th) day shall be effective on the first day of the following taxable year.

**(D)  Revocation Effective on a Prospective Date.--**  If the revocation specifies an effective date which is on or after the day on which the revocation is made, the revocation shall be effective on and after the date so specified.

**(2)  By Corporation Ceasing to be a Corporation of Individuals.--**

**(A)  In General.--**  An election under subsection (a) shall be terminated whenever (at any time on or after the first day of the first taxable year for which the corporation is a corporation of individuals) such corporation ceases to be an eligible corporation.

**(B)  Effectiveness.--**  Any termination under this paragraph shall be effective on and after the date of cessation.

**(3)**  Where gross receipts derived from the active conduct of a trade or business in Puerto Rico for the taxable year of the corporation are less than ninety percent (90%) of the gross receipts total.--

**(A)  Termination.--**

**(i)  In General.--**  An election under subsection (a) shall be terminated whenever the corporation has accumulated gross receipts from income not derived from the active conduct of a trade or business in Puerto Rico in excess of ten percent (10%) for the taxable year.

**(ii)  Effectiveness.--**  Any termination under this paragraph shall be effective on and after the first day of the taxable year referred to in clause (i).

**(B)  Special Rules.--**

**(i)  Active Conduct of a Trade or Business.--**  For purposes of this paragraph "trade or business" shall not include a lending business unless under the criteria established through regulations promulgated by the Secretary the corporation of individuals renders significant services to the lender as part of such business.

**(ii)  Gross receipts derived from the active conduct of a trade or business.--**  For purposes of this paragraph, the term "gross receipts" related to the active conduct of a trade or business shall include:

**(I)  Sale of Assets used in Trade or Business.--**  Gain derived from the sale, exchange or other disposition of property used in the corresponding trade or business.

**(II)  Gross Income during the Organization Period of the Corporation.--**  Income from the temporary investment of funds of a corporation during the period prior to the beginning of the active conduct of a trade or business that qualifies the corporation for the benefits of this Subchapter. Such period may not be more than thirty-six (36) months as of the organization of the corporation.

**(e)  Treatment of Election Termination Year.--**

**(1)  In General.--**  In case of termination of a year covered by the election, for purposes of this Subchapter--

**(A) Short Year Covered by the Election.--** The portion of such year ending before the first day for which the termination is effective shall be treated as a short taxable year for which the corporation is a corporation of individuals.

**(B) Short Year Not Covered by the Election.--** The portion of such year beginning on such first day shall be treated as a short taxable year for which the corporation is a regular corporation.

**(2) Pro Rata Allocation.--** Except as provided in paragraph (3) and subparagraph (C) and paragraph (6), the determination of which items are to be taken into account for each of the short taxable years referred to in paragraph (1) shall be made--

**(A)** first, by determining the amount of each of the items of income, loss, deduction, or credit described in Section 1115.04(a)(1) for the termination of a year covered by the election;

**(B)** then, by assigning an equal portion of each amount determined under subparagraph (A) to each day of the election termination year.

**(3) Election to Have Items Assigned to Each Short Taxable Year under Normal Tax Accounting Rules.--**

**(A) In General.--** A corporation may elect to have paragraph (2) not apply.

**(B) Shareholders Must Consent to Election.--** An election under this paragraph shall be valid only if all persons who are stockholders in the corporation at any time during the short year covered by the election and all persons who are stockholders in the corporation on the first day of the short year not covered by the election consent to such election.

**(4) Election Termination Year.--** For purposes of this subsection, the term "election termination year" means any taxable year of a corporation (determined without regard to this subsection) in which a termination of an election made under subsection (a) takes effect (except for terminations that take effect on the first day of such year).

**(5) Tax Determined on Annualized Basis for Short Year Not Covered by the Election.--**

**(A) In General.--** The taxable net income for the short year described in subparagraph (B) of paragraph (1) shall be placed on an annual basis by multiplying the taxable net income for such short year by the number of days in the election termination year and by dividing the result by the number of days in the short year. The tax shall be the same part of the tax computed on the annual basis as the number of days in such short year is of the number of days in the election termination year.

**(B) Application of Section 1034.09.--** Section 1034.09 shall apply to the short taxable year described in subparagraph (B) of paragraph (1).

**(6) Other Special Rules.--**

**(A) Short Years Treated as One (1) Year for Carryover Purposes.--** The short taxable year described in subparagraph (A) of paragraph (1) shall not be taken into account for purposes of determining the number of taxable years to which any item may be carried back or carried forward by the corporation.

**(B) Due Date for Year Covered by Election.--** The due date for filing the return for the short taxable year described in subparagraph (A) of paragraph (1) shall be the same as the due date for filing the return for the short taxable year described in subparagraph (B) of paragraph (1) (including extensions thereof).

**(C)** Pro Rata Allocation for Election Termination Year Not to Apply if Fifty Percent (50%) Change in Ownership.--Paragraph (2) shall not apply to an election termination year if there is a sale or exchange of fifty percent (50%) or more of the stock in such corporation during such year.

**(f) Inadvertent Terminations.--** If--

**(1)** an election made under subsection (a) or terminated pursuant to paragraphs (2) or (3) of subsection (d) by any corporation;

**(2)** the Secretary determines that the termination was inadvertent;

**(3)** no later than a reasonable period of time after discovery of the circumstances resulting in such termination, steps were taken for the corporation to become once again a corporation of individuals; and

**(4)** the corporation and each person who was a stockholder in such corporation at any time during the period specified pursuant to this subsection, agrees to make such adjustments (consistent with the treatment of such corporation as a corporation of individuals) as may be required by the Secretary with respect to such period, then, notwithstanding the circumstances resulting in such termination, such corporation shall be treated as continuing to be a corporation of individuals during the period specified by the Secretary.

**(g) Election After Termination.--** If a corporation of individuals has made an election under subsection (a) and if such election has been terminated under subsection (d), such corporation (and any successor corporation) shall not be eligible to make an election under subsection (a) for any taxable year before its fifth (5th) taxable year which begins after the first taxable year for which such termination is effective, unless the Secretary consents to such election.

## Section 1115.03.-- Effect of Election on Corporation.--

**(a) General Rule.--** Except as otherwise provided in this Subchapter, a corporation of individuals shall not be subject to the taxes imposed by this Subtitle.

**(b) Computation of the Taxable Net Income of the Corporation.--** The taxable net income of a corporation of individuals shall be computed in the same manner as in the case of an regular corporation, except that--

**(1)** the items described in Section 1115.04(a)(1) shall be separately stated, and

**(2)** the deductions referred to in Section 1114.03(a)(1), (2), and (3) shall not be allowed to the corporation.

**(c) Elections of the Corporation of Individuals.--**

**(1) In General.--** Except as provided in paragraph (2), the corporation of individuals shall make any election affecting the computation of items derived from such corporation.

**(2) Exceptions.--** In the case of a corporation of individuals, elections under the Section 1051.01(a) (relating to taxes paid to the United States, possessions of the United States and foreign countries) shall be made by each stockholder separately.

**(d) Recapture of Last-In, First-Out (LIFO) Method Benefits.--**

**(1) In General.--** If--

**(A)** a corporation of individuals was a regular corporation for the last taxable year before the first taxable year for which the election under Section 1115.02(a) was effective, and

**(B)** the corporation had an election under Section 1040.07(d) in effect for inventoried goods under the LIFO method for such last taxable year, the LIFO recapture amount shall be included in the gross income of the corporation for such last taxable year (and appropriate adjustments to the basis of inventory shall be made to take into account the amount included in gross income under this paragraph).

**(2) Additional Tax Payable in Installments.--**

**(A) In General.--** Any increase in the tax imposed by this Subtitle by reason of this subsection shall be payable in three (3) equal installments.

**(B)  Date for Payment of Installments.--**  The first installment under subparagraph (A) shall be paid not later than on the due date (determined without regard to extensions) for the filing of the return of the tax imposed by this Subtitle for the last taxable year for which the corporation was a regular corporation and the two (2) succeeding installments shall be paid not later than on the due date (as so determined) for the corporation's return for the two (2) succeeding taxable years.

**(C)  No Interest for Period of Extension.--**  Notwithstanding the provisions of Subtitle F, the date prescribed for the payment of each installment under this paragraph shall be determined under this paragraph.

**(3)  LIFO Recapture Amount.--**  For purposes of this subsection, the term "LIFO recapture amount" means the amount (if any) by which--

**(A)**  the inventory amount of the inventory asset under the first-in, first-out (FIFO) method authorized by Section 1040.07(d), exceeds

**(B)**  the inventory amount of such assets under the LIFO method.

For purposes of this paragraph, inventory amounts shall be determined as of the close of the last taxable year referred to in paragraph (1).

**(4)  Other Definitions.--**  For purposes of this subsection--

**(A)  LIFO Method.--**  The term "LIFO method" means the method authorized by Section 1040.07(d).

**(B)  Inventory Assets.--**  The term "inventory assets" means stock or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year.

**(C)  Method of Determining Inventory Amount.--**  The inventory amount of assets under a method authorized by Section 1040.07(d) shall be determined--

**(i)**  if the corporation uses the retail method of valuing inventories under Section 1040.07(d), by using such method, or

**(ii)**  if clause (i) does not apply, by using cost or market, whichever is lower.

**(e)  Recapture of Benefits of Flexible Depreciation, Accelerated Depreciation or any other Authorized Accelerated Depreciation Method.--**

**(1)  In General.--**  If--

**(A)**  A corporation of individuals was a regular corporation for the last taxable year before the first taxable year for which the election under Section 1115.02(a) was effective, and

**(B)**  for said last taxable year the corporation had in effect an election under Section 1040.11 for the use of the method of flexible depreciation, accelerated depreciation or any other accelerated depreciation method authorized under the Income Tax Act of 1954, the recapture of the benefits of the flexible depreciation method, or of the accelerated depreciation method, shall be included in the gross income of the corporation for such last taxable year (and appropriate adjustments to the flexible or accelerated adjusted basis of the property shall take into consideration the amount included in gross income under this paragraph).

**(2)**  Any increase in the tax imposed by this Subtitle by reason of this subsection shall be payable not later than on the due date for the filing of the return imposed by this Subtitle for the last taxable year for which the corporation was a regular corporation.

**(3)  Benefits Recapture Amount of Flexible Depreciation or Accelerated Depreciation Methods or any Other Accelerated Depreciation Method Authorized Under the Income Tax Act of 1954.--**  For purposes of this subsection, the term "recapture of benefits of the methods of flexible depreciation,

accelerated depreciation or any other accelerated depreciation method authorized under the Income Tax Act of 1954" means the amount (if any) by which:

**(A)** the depreciation amount under the method of flexible or accelerated depreciation, authorized by Sections 1040.11 and 1040.12, or any other depreciation method authorized by the Income Tax Act of 1954, as amended, exceeds

**(B)** the depreciation amount under the straight-line depreciation method.

For purposes of the preceding phrase, depreciation amount shall be determined as of the close of the last taxable year referred to in paragraph (1).

**(4) Straight-line Depreciation Method.--** The term "straight-line depreciation method" means the method authorized by Section 1033.07 of this Subtitle or Section 23(l) of the Income Tax Act of 1954, as amended.

**(f) Recognition of Deferred Income Under Long-term Contracts.--**

**(1) In General.--** If--

**(A)** a corporation of individuals was a regular corporation for the last taxable year before the first taxable year for which the election under Section 1115.02(a) was effective, and

**(B)** for said last taxable year, the corporation elected to recognize gross income from installation, edification, and construction work contracts under the completed contract method, the income deferred under such method shall be included in the gross income of the corporation for such last taxable year.

**(2)** Any increase in the tax imposed by this Subtitle by reason of this subsection shall be payable not later than on the due date for the filing of the return of the tax imposed by this Subtitle for the last taxable year for which the corporation was a regular corporation.

**(3) Recognition of Deferred Income Under Long-term Contracts.--** For purposes of this paragraph, the term "recognition of deferred income under long-term contracts" means the amount (if any) by which:

**(A)** the amount of gross income under the percentage of completion method, exceeds

**(B)** the amount of gross income under the straight-line depreciation method.

For purposes of the preceding phrase, said amount shall be determined as of the close of the last taxable year referred to in paragraph (1) of this subsection.

**(4) Completed Contract.--** The term "completed contract" means the method authorized under the regulations of Section 1040.02.

**(g) Recognition of Deferred Income from Installment Sales.--**

**(1) In General.--** If--

**(A)** a corporation of individuals was a regular corporation for the last taxable year before the first taxable year for which the election under Section 1115.02(a) was effective, and

**(B)** for said last taxable year or any preceding taxable year, the corporation disposed of personal property under the installment sales method, the income deferred under said method shall be included in the gross income of the corporation for said last taxable year.

**(2)** Any increase in the tax imposed by this Subtitle by reason of this subsection shall be payable not later than on the due date for the filing of the return of the tax imposed by this Subtitle for the last taxable year for which the corporation was a regular corporation.

**(3) Recognition of Deferred Income Under the Installment Sales Plan.--** For purposes of this subsection, the term "recognition of deferred income under the installment sales method" means the amount (if any) by which:

**(A)** the amount of gross income disregarding the installment sales method, exceeds

**(B)** the amount of gross income under the installment sales method.

For purposes of the preceding phrase, said amount shall be determined as of the close of the last taxable year referred to in subparagraph (A) of paragraph (1).

**(h)  Earnings and Profits Deemed Distributed.--**  In the case of a corporation of individuals which has earnings and profits accumulated as of the close of the taxable year prior to the first year for which the election described in Section 1115.02 is effective, or which has earnings and profits derived from liquidations or reorganizations, said earnings and profits shall be considered as distributed during the first two (2) taxable years of the corporation of individuals subject to the provisions of paragraphs (1) and (2) of Section 1114.24 of this Subtitle. When referring to paragraphs (1) and (2) of Section 1114.24, the term "special partnership" shall be understood to be "corporation of individuals."

**Section 1115.04.-- Pass-through of Items to Shareholders.--**

**(a) Determination of Stockholder's Tax Liability.--**

**(1)  In General.--**  In determining the tax under this Subtitle of a stockholder for the stockholder's taxable year in which the taxable year of the corporation of individuals ends (or for the final taxable year of a stockholder who dies, or of a trust or estate which terminates, before the end of the taxable year of the corporation), there shall be taken into account the stockholder's pro rata share of the corporation's income loss, deduction, or credit to be included separately as determined in subsections (b) and (d) which could affect the tax liability of any stockholder, and

**(2)  Limitation on Allowable Losses or Deductions.--**  For purposes of paragraph (1), the pro rata share of a stockholder in the losses or deductions of a corporation of individuals incurred during a taxable year shall be allowed only to the amount established in Section 1033.02(d)(1).

**(b) Income, Loss, Deductions or Credit Items.--**  Each shareholder shall take in consideration separately (subject to conditions and limitations provided by this Subtitle) its distributive share in the corporation of individuals, with respect to:

**(1)** gains and losses in the sale or exchange of capital assets owned by the corporation of individuals for not more than six (6) months;

**(2)** gains and losses in the sale or exchange of capital assets owned by the corporation of individuals for more than six (6) months;

**(3)** gains and losses in the sale or exchange of properties described in Section 1034.01(i);

**(4)** gains and losses in the sale or exchange of all the assets in an exempt business under the Puerto Rico Tourist Development Act of 1993;

**(5)** dividends to which the provisions of Section 1023.06 apply;

**(6)** withheld tax from dividends described in paragraph (5);

**(7)** taxes described in Sections 1051.01 and 1062.02;

**(8)** taxes described in Sections 1062.03 and 1082.09;

**(9)** income or losses derived from activities covered by a resolution or concession of an exemption, as the case may be, under the Puerto Rico Tourist Incentive Act of 1983, as amended or the Puerto Rico Tourist Development Act of 1993, as amended, or any other succeeding similar law;

**(10)** net income or losses of the corporation of individuals, excluding the items whose separate consideration is required under other clauses of this subsection; and

**(11)** other income, gains, losses, deductions or credit items, as the Secretary may establish through regulations.

The provisions of this subsection shall not apply to a stockholder subject to the tax imposed by Section 1091.01(a), in accordance with subsection (i) of this section. For purposes of Section 1091.01(a), the stockholder's distributive share in the net income of the corporation of individuals shall be the total amount of paragraphs (1) through (5) and (9) through (11) of subsection (a).

**(c) Option for Treatment of Some Items as Ordinary Income or Ordinary Loss.--**

**(1)** For any taxable year, a stockholder may opt, with respect to each corporation of individuals, to treat its distributive share in the items described in paragraphs (1) through (3), (5) and (11) of subsection (b) as part of its ordinary income or loss under subsection (b)(10), except that for such purposes the amount allowed as a deduction for its distributive share in the losses of the sale or exchange of capital assets by the corporation shall be limited to the amount includible as its distributive share in the gains of the corporation in said sales or exchanges.

**(2)** The option provided in paragraph (1) shall be made by the stockholder in accordance with the regulations promulgated by the Secretary and, once it is made for a particular taxable year, shall be irrevocable with respect to that year.

**(d) Credit.--** The stockholder may claim as credit against its tax responsibility the participation of any credit provided by Sections 5(a) and 5(f) of the Puerto Rico Tourist Development Act of 1993, credits under Articles 14 and 16 of the Investment Capital Funds Act, and the tax imposed under Section 4(a) of the Tax Incentives Act of 1987, or by any future law of similar nature. The participation of a stockholder in the credits described in this subsection shall be determined and reported by the corporation in accordance with subsection (b).

**(e) Character of Attributed Items.--** The character of any item included in a stockholder's pro rata share pursuant to paragraph (1) of subsection (a) shall be determined as if said item was derived directly from the source from which it was derived by the corporation.

**(f) Gross Income of a Stockholder.--** In any case where it is necessary to determine the gross income of a stockholder for purposes of this Subtitle, said gross income shall include the stockholder's pro rata share of the gross income of the corporation.

**(g) Special Rules for Losses and Deductions.--**

**(1) Cannot Exceed Stockholder's Basis in Stock and Debt.--** The aggregate amount of losses and deductions used by a stockholder under subsection (a) for any taxable year shall not exceed the sum of:

**(A)** The adjusted basis of the stockholder's stock in the corporation of individuals (determined considering paragraph (1) of Section 1115.05(a) for the taxable year), and

**(B)** the stockholder's adjusted basis of any indebtedness of the corporation of individuals to the stockholder (determined without regard to any adjustment under paragraph (2) of Section 1115.05(b) for the taxable year).

**(2) Indefinite Carryover of Disallowed Losses and Deductions.--** Any loss or deduction which is disallowed for any taxable year by reason of paragraph (1) shall be treated as incurred by the corporation in the following taxable year with respect to that stockholder.

**(3) Carryover of Disallowed Losses and Deductions to Post-termination Transition Period.--**

**(A) In General.--** If for the last taxable year of a corporation for which it was a corporation of individuals a loss or deduction was disallowed by reason of paragraph (1), such loss or deduction shall be treated as incurred by the stockholder on the last day of any post-termination transition period.

**(B) It Cannot Exceed Stockholder's Basis in Stock.--** The aggregate amount of losses and deductions taken into account by a stockholder under subparagraph (A) shall not exceed the adjusted basis of the shareholder's stock in the corporation (estimated at the close of the last day of the post-termination transition period and without regard to this paragraph).

**(C) Adjustment in Basis of Stock.--** The basis in the stock of the corporation shall be reduced by the amount allowed as a deduction by reason of this paragraph.

**(h) Treatment of Family Group.--** If an individual who is a member of a family (within the meaning of Section 1115.09(c)) of one or more stockholders of a corporation of individuals renders services for the corporation or furnishes capital to the corporation without receiving reasonable compensation therefor, the Secretary shall make the proper adjustments to the items allowed to said individual and said stockholders in order to reflect the value of said services or capital.

**(i) Treatment of Tax Imposed on Built-in Gains.--** If any tax is imposed on a corporation of individuals pursuant to Section 1115.08 for any taxable year, for purposes of subsection (a), the amount so imposed shall be treated as a loss incurred by the corporation of individuals during said taxable year. The character of said loss shall be determined by the pro rata allocation of the loss among the recognized built-in gains that gave rise to said tax.

**(j) Treatment of Distributive Participation to Alien Stockholders.--** The income share of a corporation of individuals distributable to its shareholders who are alien non-residents of Puerto Rico shall be treated as a distribution made at the end of the corporation of individual's taxable year, and the same shall be regulated by the provisions of Sections 1062.08, 1062.10, and 1091.01. Notwithstanding, the amount of tax withheld under said provisions shall be remitted to the Department no later than the fifteenth (15th) day of the third (3rd) month following the close day of the taxable year of the corporation of an individual or the fifteenth (15th) day of the forth (4th) month following said close, when an extension has been granted in accordance with the provisions of Section 1061.07(c).

## Section 1115.05.-- Adjustments to Basis of Stock of the Stockholders.--

**(a) General Rule.--**

**(1) Increases in Basis.--** The basis of each shareholder's stock in a corporation of individuals shall be increased for any period by the pro rata share of the shareholder in the items of income described in Section 1115.04(a)(1).

**(2) Decreases in Basis.--** The basis of each shareholder's stock in a corporation of individuals shall be decreased for any period (but not below zero) by the sum of the following items determined with respect to the shareholder for such period:

**(A)** distributions by the corporation which were not includible in the income of the shareholder by reason of Section 1115.06,

**(B)** the allowed items of loss and deduction described in Section 1115.04(a)(1),

**(C)** the credits of Section 5(a) of the Puerto Rico Tourist Development Act of 1993, Section 14 of the Investment Capital Funds Act, and the credit of Section 1114.28 of this Subtitle, as well as any other similar credit; and

**(D)** the withholding at the source of Sections 1062.05 and 1062.10.

**(E)** any expense of the corporation of individuals not deductible in computing its taxable income and not properly chargeable to capital account.

**(b) Special Rules.--**

**(1) Income Items.--** An amount which is required to be included in the gross income of a shareholder and shown on his/her return shall be taken into account under subsection (a)(1) only to the extent such amount is included in the shareholder's gross income on his/her return, increased or decreased by any adjustment of such amount in a redetermination of the shareholder's tax liability.

**(2) Adjustments in Basis of Indebtedness.--**

**(A) Reduction of Basis.--** If for any taxable year the amounts specified in subparagraphs (B) and (E) of subsection (a)(2) exceed the amount which reduces the shareholder's basis to zero, such

excess shall be applied to reduce (but not below zero) the shareholder's basis in any indebtedness of the corporation of individuals to the shareholder.

**(B) Restoration of Basis.--** If for any taxable year beginning after June 30, 1995, there is a reduction under subparagraph (A) in the shareholder's basis in the indebtedness of a corporation of individuals to a shareholder, any net increase (after the application of paragraphs (1) and (2) of subsection (a)) for any subsequent taxable year shall be applied to restore such reduction in basis before any of it may be used to increase the shareholder's basis in the stock of the corporation of individuals.

**(3)** Coordination with Sections 1033.05(c)(2) and 1033.06.--This Section and Section 1115.04 shall be applied before the application of Sections 1033.05 and 1033.06 to any taxable year of the shareholder or the corporation in which the security or debt becomes worthless.

## Section 1115.06.-- Distributions.--

**(a) General Rule.--** A distribution of property made by a corporation of individuals with respect to its stock to which (but for this subsection) Section 1034.09 would apply shall be treated in the manner provided in subsection (b) or (c), whichever applies.

**(b) Corporation of Individuals Having No Earnings and Profits.--** In the case of a distribution described in subsection (a) by a corporation of individuals which has no accumulated earnings and profits--

**(1) Amount Applied Against Basis.--** The distribution shall not be included in gross income to the extent that it does not exceed the adjusted basis of the stock.

**(2) Amount in Excess of Basis.--** If the amount of the distribution exceeds the adjusted basis of the stock, such excess shall be treated as gain from the sale or exchange of capital assets.

**(c) Corporation of Individuals Having Earnings and Profits.--** In the case of a distribution described in subsection (a) by a corporation of individuals which has accumulated earnings and profits--

**(1) Dividend.--** Any distribution in excess of the earnings and profits treated as distributed pursuant to the provisions of subsection (h) of Section 1115.03 shall be treated as a dividend to the extent it does not exceed the accumulated earnings and profits of the corporation of individuals.

**(2) Accumulated Adjustments Account.--** That portion of the distribution which remains after the application of paragraph (1) to the extent that it does not exceed the accumulated adjustments account shall be treated in the manner provided by subsection (b)(1).

**(3) Treatment of Remainder.--** Any portion of the distribution remaining after the application of paragraph (2) of this subsection, shall be treated in the manner provided by subsection (b)(2). Except to the extent provided in regulations, if the distributions during the taxable year exceed the amount in the accumulated adjustments account at the close of the taxable year, for purposes of this subsection, the balance of such account shall be allocated among such distributions in proportion to their respective balances.

**(d) Certain Adjustments Taken into Account.--** Subsections (b) and (c) shall be applied by taking into account (to the extent proper)--

**(1)** the adjustments to the basis of the shareholder's stock described in Section 1115.05, and

**(2)** the adjustments to the accumulated adjustments account which are required by subsection (e)(1).

**(e) Definitions and Special Rules.--** For purposes of this section--

**(1) Accumulated Adjustments Account.--**

**(A) In General.--** Except as otherwise provided in subparagraph (B), the term "accumulated adjustments account" means an account of the corporation of individuals which is adjusted for the election covered period in a manner similar to the adjustments under Section 1115.05 (except that

no adjustment shall be made for income (and related expenses) which is exempt from tax under the provisions of this Subtitle and the phrase "but not below zero" shall be disregarded in Section 1115.05(b)(2)(A)) and no adjustment shall be made for income taxes attributable to any taxable year in which the corporation was a regular corporation.

**(B)  Amount of Adjustment in the Case of Redemptions.--**  In the case of any redemption which is treated as an exchange under Section 1034.09(c) or 1034.09(e), the adjustment in the accumulated adjustments account shall be an amount which bears the same ratio to the balance in such account as the number of shares redeemed in such redemption bears to the number of shares of stock in the corporation immediately before such redemption.

**(2)  Election Covered Period.--**  The term "election covered period" means the most recent continuous period during which the corporation has been a corporation of individuals. Such period shall not include any taxable year beginning before July 1, 1995.


**Section 1115.07.-- Coordination with Other Provisions of this Subtitle.--**

**(a)  Application of General Provisions.--**

**(1)  In General.--**  Except as otherwise provided in this Subtitle, and except to the extent inconsistent with this Subchapter, the general provisions of this Subtitle applicable to regular corporations shall apply to a corporation of individuals and their stockholders.

**(2)  A Corporation of Individuals in its Shareholder Capacity shall be Treated as an Individual.--** For purposes of Sections 1034.04 and 1034.09, a corporation of individuals in its capacity of shareholder of another corporation shall be treated as an individual.

**(b)  No Carryovers Between Regular Corporation Years and Corporation of Individual Years.--**

**(1)  From Regular Corporation Year to Corporation of Individuals Year.--**  No carryforward and carrybacks arising for a taxable year for which a corporation was a regular corporation may be carried to a taxable year for which such corporation is a corporation of individuals.

**(2)  No Carryover from Corporation of Individuals Year.--**  No carryforward, and no carryback, shall arise at the corporate level for a taxable year for which a corporation is a corporation of individuals.

**(3)  Treatment of a Corporation of Individuals Year as an Elapsed Year.--**  None of the provisions of paragraphs (1) and (2) shall prevent treating a taxable year for which a corporation is a corporation of individuals as a taxable year for purposes of determining the number of taxable years to which an item may be carried back or carried forward.

**(c)  Earnings and Profits.--**

**(1)  In General.--**  Except as provided in paragraphs (2) and (3), no adjustment shall be made to the earnings and profits of a corporation of individuals.

**(2)  Adjustments for Redemptions, Liquidations, and Reorganizations.--**  In the case of any transaction involving the application of Section 1034.04 to any corporation of individuals, proper adjustment to any accumulated earnings or profits of the corporation shall be made.

**(3)  Adjustments in Case of Distributions Treated as Dividends under Section 1115.06(c)(1).--** Paragraph (1) shall not apply with respect to that portion of a distribution which is treated as a dividend under Section 1115.06(c)(1).

**(d)  Cash Distributions During Post-termination Transition Period.--**

**(1)  In General.--**  Any distribution of money made by a corporation with respect to its stock during a post-termination transition period shall be applied against and reduced the adjusted basis of the stock, to the extent that the amount of the distribution does not exceed the accumulated adjustments account (as defined in Section 1115.06(e)).

**(2)  Election to Distribute Earnings First.--**  A corporation of individuals may elect to have paragraph (1) not apply to all distributions made during a post-termination transition period described in Section 1115.09(b)(1)(A). Such election shall not be effective unless all shareholders of the corporation of individuals to whom distributions are made by the corporation of individuals during such post-termination transition period consent to such election.

### Section 1115.08.-- Tax Imposed on Certain Built-in Gains.--

**(a)  General Rule.--**  If for any taxable year beginning in the recognition period a corporation of individuals has a net recognized built-in gain, there is hereby imposed a tax (computed under subsection (b)) on the income of such corporation for such taxable year.

**(b)  Amount of Tax.--**

**(1)  In General.--**  The amount of the tax imposed by subsection (a) shall be computed by applying the tax rate established in Section 1022.01 plus the highest rate of tax specified in Section 1022.02 to the net recognized built-in gain of the corporation of individuals for the taxable year.

**(2)  Net Operating Loss Carryforwards from Regular Years.--**  Notwithstanding Section 1115.07(b)(1), any net operating loss carryforward arising in a taxable year for which the corporation was a regular corporation shall be allowed for purposes of this section as a deduction against the net recognized built-in gain of the corporation of individuals for the taxable year. For purposes of determining the amount of any such loss which may be carried to subsequent taxable years, the amount of the net recognized built-in gain shall be treated as taxable income. Rules similar to the rules of the preceding sentences of this paragraph shall apply in the case of a capital loss carryforward arising in a taxable year for which the corporation was a regular corporation.

**(3)  Coordination with Section 1023.03.--**  The amount of the net recognized built-in gain shall not qualify for the alternative tax established in Section 1023.03, regardless of the nature of the asset that generated the same.

**(c)  Limitations.--**

**(1)  Corporations which were Always Corporations of Individuals.--**  Subsection (a) shall not apply to any corporation if an election under Section 1115.02(a) has been in effect with respect to such corporation for each of its taxable years. Except as provided in regulations, a corporation of individuals and any predecessor corporation shall be treated as a corporation for purposes of the preceding sentence.

**(2)  Limitation on Amount of Recognized Built-in Gains.--**  The amount of the net recognized built-in gain for any taxable year shall not exceed the excess (if any) of--

**(A)**  the net unrealized built-in gain, over

**(B)**  the net recognized built-in gain for prior taxable years beginning in the recognition period.

**(d)  Definitions and Special Rules.--**  For purposes of this section--

**(1)  Net Unrealized Built-in Gain.--**  The term "net unrealized built-in gain" means the amount (if any) by which--

**(A)**  the fair market value of the assets of the corporation of individuals as of the beginning of its first taxable year for which an election under Section 1115.02 is in effect, exceeds

**(B)**  the aggregate adjusted bases of such assets at such time.

**(2)  Net Recognized Built-in Gain.--**

**(A) In General.--**  The term "net recognized built-in gain" means, with respect to any taxable year in the recognition period, the lesser of--

(i)  the amount which would be the taxable income of the corporation of individuals for such taxable year if only recognized built-in gains and recognized built-in losses were taken into account, or

(ii)  such corporation's taxable income for such taxable year determined as provided in Section 1031.05.

**(B) Carryover.--**  If, for any taxable year, the amount referred to in clause (i) of subparagraph (A) exceeds the amount referred to in clause (ii) of subparagraph (A), such excess shall be treated as a net recognized built-in gain in the succeeding taxable year.

**(3)  Recognized Built-in Gain.--**  The term "recognized built-in gain" means any gain recognized during the recognition period on the disposition of any asset except to the extent that the corporation of individuals establishes that--

**(A)**  such asset was not held by the corporation of individuals as of the beginning of the first taxable year for which it was a corporation of individuals, or

**(B)**  such gain exceeds the excess (if any) of--

(i)  the fair market value of such asset as of the beginning of such first taxable year, over

(ii)  the adjusted basis of the asset as of such time.

**(4)  Recognized Built-in Losses.--**  The term "recognized built-in loss" means any loss recognized during the recognition period on the disposition of any asset to the extent that the corporation of individuals establishes that--

**(A)**  such asset was held by the corporation of individuals as of the beginning of the first taxable year for which it was a corporation of individuals, and

**(B)**  such loss does not exceed the excess of--

(i)  the adjusted basis of such asset as of the beginning of such first taxable year, over

(ii)  the fair market value of such asset as of such time.

**(5)  Treatment of Certain Built-in Items.--**

**(A)  Income Items.--**  Any item of income which is properly taken into account during the recognition period but which is attributable to periods before the first taxable year for which the corporation was a corporation of individuals shall be treated as a recognized built-in gain for the taxable year in which it is properly taken into account.

**(B)  Deduction Items.--**  Any amount which is allowable as a deduction during the recognition period (determined without regard to any carryover) but which is attributable to periods before the first (1st) taxable year referred to in subparagraph (A) shall be treated as a recognized built-in loss for the taxable year for which it is allowable as a deduction.

**(C)  Adjustment to Net Unrealized Built-in Gain.--**  The amount of the net unrealized built-in gain shall be properly adjusted for amounts which would be treated as recognized built-in gains or losses under this paragraph if such amounts were properly taken into account (or allowable as a deduction) during the recognition period.

**(6)  Treatment of Certain Property.--**  If the adjusted basis of any asset is determined (in whole or in part) by reference to the adjusted basis of any other asset held by the corporation of individuals as of the beginning of the first taxable year referred to in paragraph (3)--

**(A)**  such asset shall be treated as held by the corporation of individuals as of the beginning of such first taxable year, and

**(B)**  any determination under paragraph (3)(B) or (4)(B) with respect to such asset shall be made by reference to the fair market value and adjusted basis of such other asset as of the beginning of such taxable year.

**(7) Recognition Period.--**

**(A)  In General.--**  The term "recognition period" means the ten (10)-year period beginning with the first day of the first taxable year for which the corporation was a corporation of individuals.

**(8) Treatment of Transfer of Assets from a Regular Corporation to a Corporation of Individuals.--**

**(A)  In General.--**  Except to the extent provided in regulations, if--

**(i)**  a corporation of individuals acquires any asset, and

**(ii)**  the basis of the corporation of individuals in such asset is determined (in whole or in part) by reference to the basis of such asset (or any other property) in the hands of a regular corporation, then a tax is hereby imposed on any net recognized built-in gain attributable to any such assets for any taxable year beginning in the recognition period. The amount of such tax shall be determined under the rules of this section as modified by subparagraph (B).

**(B)  Modifications.--**  For purposes of this paragraph, the following modifications shall be made:

**(i)**  The preceding paragraphs of this subsection shall be applied by taking into account the day on which the assets were acquired by the corporation of individuals in lieu of the beginning of the first taxable year for which the corporation was a corporation of individuals.

**(ii)**  Subsection (c)(1) shall not apply.

**(9) Reference to First Taxable Year.--**  Any reference in this section to the first taxable year for which the corporation was a corporation of individuals shall be treated as a reference to the first taxable year for which the corporation was a corporation of individuals pursuant to its most recent election under Section 1115.02.

**(e)  Regulations.--**  The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this section. Such regulations shall provide for the appropriate treatment of successor corporations.


**Section 1115.09.-- Definitions and Special Rules.--**

**(a)  Pro Rata Share.--**  For purposes of this Subchapter--

**(1) In General.--**  Except as provided in paragraph (2), each shareholder's pro rata share of any item for any taxable year shall be the sum of the amounts determined with respect to the shareholder--

**(A)**  by assigning an equal portion of such item to each day of the taxable year, and

**(B)**  then by dividing that portion pro rata among the shares outstanding on such day.

**(2) Election to Terminate Year.--**  Under regulations prescribed by the Secretary, if any shareholder terminates the shareholder's interest in the corporation during the taxable year and all affected shareholders and the corporation agree to the application of this paragraph, paragraph (1) shall be applied to the affected shareholders as if the taxable year consisted of 2 taxable years the first of which ends on the date of the termination.

**(b)  Post-termination Transition Period.--**

**(1) In General.--**  For purposes of this Subchapter, the term "post-termination transition period" means--

**(A)**  the period beginning on the day after the last day of the corporation's last taxable year as a corporation of individuals and ending on the later of--

(i)  the day which is one (1) year after such last day, or

(ii)  the due date for filing the return for such last year as a corporation of individuals (including extensions), and

**(B)**  the one hundred twenty (120)-day period beginning on the date of a determination that the corporation's election under Section 1115.02 had terminated for a previous taxable year.

**(2) Determination Defined.--**  For purposes of paragraph (1), the term "determination" means--

**(A)**  a final judicial ruling,

**(B)**  a final agreement,

**(C)**  an agreement between the corporation and the Secretary that the corporation failed to qualify as a corporation of individuals.

**(c)  Member of a Family.--**  For purposes of this Subchapter, the term "member of a family" means, spouses, ancestors, descendants, and any trust in benefit of such persons.

**(d)  Manner of Making Elections.--**  Any election under this Subchapter, and any revocation under Section 1115.02(d)(1), shall be made in such manner as the Secretary shall prescribe by regulations.

**(e)  Expenses Not Connected with the Active Conduct of a Trade or Business in Puerto Rico.--**  For purposes of Section 1033.02, expenses not directly connected to the active conduct of a trade or business of the corporation of individuals shall not be allowed.

**(f)  Services Rendered by a Shareholder to the Corporation of Individuals.--**  In determining the net income of a corporation of individuals pursuant to Section 1115.03(b), a corporation of individuals shall appropriate a reasonable compensation that reflects the value of the services in connection with the active conduct of the trade or business of the corporation which services were rendered by a shareholder of such corporation.


**Section 1115.10.-- Taxable Year of a Corporation of Individuals.--**

**(a)  General Rule.--**  For purposes of this Subchapter, the taxable year of a corporation of individuals shall be a year allowed.

**(b)  Year Allowed Defined.--**  For purposes of this Section, the term "year allowed" means that the taxable year is--

**(1)**  a year that ends on December 31, or

**(2)**  any other accounting period for which the corporation establishes a business purpose to the satisfaction of the Secretary. For purposes of paragraph (2), any postponement of income to the shareholders shall not be treated as a business purpose.


**SUBCHAPTER F --**  ENTITIES WITH EXEMPTION DECREE UNDER SPECIAL LAWS


**Section 1116.01.-- Industrial Incentives.--**  Entities covered under Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], better known as the "Economic Incentives Act for the Development of Puerto Rico," as amended, or any other previous or subsequent similar law.


**Section 1116.02.-- Hospital Units.--**

Entities covered under Act No. 168 of June 30, 1968 [13 L.P.R.A. §§ 371 et seq.], better known as the "Hospital Facilities Tax Exemption Act," as amended.

2011 PR H.B. 3070

**Section 1116.03.-- Tourist Incentives Administered by the Tourism Company.--**

Entities covered under Act No. 74 of July 10, 2010 [23 L.P.R.A. §§ 6341 et seq.], better known as the "Puerto Rico Tourist Development Act of 2010," as amended, or any other previous or subsequent similar law.

**Section 1116.04.-- Exemption on Income from Rents in Historic Zones.--**

Entities covered under Act No. 7 of March 4, 1955 [13 L.P.R.A. §§ 551 nt], which provides for the tax exemption payment on account of real, restored, improved, or rebuilt property on the historic zone of San Juan, as amended.

**Section 1116.05.-- Exemption on Excise Tax for Air Carriers.--**

Entities covered under Act No. 135 of May 9, 1945 [13 L.P.R.A. §§ 194 et seq.], better known as the "Air Transportation Act," as amended.

**Section 1116.06.-- Deductions for the Revitalization of Santurce.--**

Entities covered under Act No. 148 of August 4, 1988 [23 L.P.R.A. §§ 226 et seq.], better known as the "Special Act for the Rehabilitation of Santurce," as amended.

**Section 1116.07.-- Film Incentives.--**

Entities covered under Act No. 362 of December 24, 1999 [23 L.P.R.A. §§ 571 et seq.], better known as the "Film Industry Development Act," as amended, or any other preceding or successor similar law.

**Section 1116.08.-- Santurce Theater District.--**

Entities covered under Act No. 178 of August 18, 2000 [23 L.P.R.A. §§ 591 et seq.], better known as the "Special Act for the Creation of the Santurce Theater District."

**Section 1116.09.-- Agricultural Incentives.--**

Entities covered under Act No. 225 of December 1, 1995 [13 L.P.R.A. §§ 10401 et seq.], better known as the "Puerto Rico Agricultural Tax Incentives Act of 1995," as amended, or any other previous or subsequent similar law.

**Section 1116.10.-- Urban Centers Revitalization.--**

Entities covered under Act No. 212 of August 29, 2002 [21 L.P.R.A. §§ 1095 et seq.], better known as the "Urban Centers Revitalization Act," as amended.

**Section 1116.11.-- Revitalization of Rio Piedras.--**

Entities covered under Act No. 75 of July 5, 1995 [23 L.P.R.A. §§ 7002 et seq.], better known as the "Special Act for the Rehabilitation of Rio Piedras."

**Section 1116.12.-- Castaner Development.--**

Entities covered under Act No. 14 of March 15, 1996 [23 L.P.R.A. §§ 5201 et seq.], better known as the "Special Act for the Development of Castaner," as amended.

Case:17-03283-LTS   Doc#:18803-15   Filed:10/27/21   Entered:10/27/21 03:33:51   Desc:
Debtors Ex. 105   Page 381 of 623
2011 PR H.B. 3070

Page 380 of 622

**Section 1116.13.-- Solid Waste.--**

Entities covered under Act No. 70 of June 23, 1978 [sic] [12 L.P.R.A. §§ 1301 et seq.], better known as the "Tax Incentives Act for the Investment in Solid Waste Reduction, Disposal and/or Treatment Facilities," as amended, or any other preceding or successor similar law.

**SUBCHAPTER G --** CLAIMS AGAINST TRANSFEREES AND FIDUCIARIES

**Section 1117.01.-- Assets Transferred.--**

**(a) Collection Method.--** The amount of the following obligations shall be assessed, collected, and paid, except as hereinafter provided in this section, in the same manner and subject to the same provisions and limitations as in the case of a deficiency in the tax imposed hereunder, including the provisions covering payment default after notice and demand, the provisions authorizing collection and court proceedings, and the provisions concerning claims and suits for refund:

**(1) Transferees.--** The liability, at law or in equity, of a transferee of property of a taxpayer with respect to the tax imposed on the taxpayer by this Subtitle including interest, additional amounts and tax additions provided by law.

**(2) Fiduciaries.--** The liability of a fiduciary imposed by Section 1061.13(d) in respect of the payment of the tax imposed by this Subtitle from the person or estate on which behalf he/she acts.

Any of the referred to liabilities may be either as to the amount of tax reported on a return or as to any deficiency of any tax.

**(b) Period of Limitation.--** The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

**(1)** In the case of a liability of an initial transferee of the property of the taxpayer, within one (1) year after expiration of the period of limitation for assessment against the taxpayer;

**(2)** In the case of the liability of the transferee of a transferee of the property of the taxpayer, within one (1) year after expiration of the period of limitation for assessment against the preceding transferee, but never more than two (2) years after the expiration of the period of limitation for assessment against the taxpayer; except that, if before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the taxpayer or the last preceding transferee, respectively, then the period of limitation for assessment of the liability of the transferee shall expire one (1) year after the return of execution in the court proceeding.

**(3)** In the case of the liability of a fiduciary, not later than one (1) year after the liability arises or not later than the expiration of the period for collection of the tax in respect of which such liability arises, whichever is the latest.

**(4)** If before the expiration of the time prescribed in paragraphs (1), (2), or (3) for the assessment of the liability, both the Secretary and the transferee or fiduciary have both consented in writing to its assessment after such time, the liability may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

**(c) Period for Assessment Against the Taxpayer.--** For purposes of this Section, if any person is deceased, or is a corporation or a partnership which has terminated its existence, the period of limitation for assessment against the taxpayer shall be the period that would be in effect had death of the taxpayer or termination of existence of the corporation or partnership not occurred.

**(d) Suspension of Period of Limitation.--**   The period or limitation to assess the liability of a transferee or fiduciary shall, after the mailing to the transferee or fiduciary of the notice of final determination provided in Subtitle F, be suspended for a period of sixty (60) days from the date said notice is deposited in the mail, and if an appeal from said notice is taken to the Court of First Instance, until the decision of the court shall have become final and for the next sixty (60) days.

**(e) Address for Notice of Liability.--**   In the absence of notice to the Secretary under Section 1117.02(b) of the existence of a fiduciary relationship, any notice of liability enforceable under this section with respect to a tax imposed by this Subtitle shall be sufficient for purposes of this Subtitle if it shall have been mailed to the person responsible for the liability at his/her last known address, even if said person is deceased or is under legal disability, or in the case of a corporation or a partnership, has terminated its existence. The addresses to which this subsection refers include barcode intelligent mail and the arrangement of said addresses in accordance with the standards of the United States Postal Service.

**(f) Definition of Transferee.--**   As used in this section, the word "transferee" includes an heir, a legatee or distributee.

**(g) Burden of Proof.--**   In an appeal to the Court of First Instance, the burden of proof shall be upon the Secretary to show that a petitioner is liable as transferee of the property of a taxpayer, but not to show that the person was liable for the tax.

**(h) Evidence.--**   Upon petition to the Court of First Instance, a transferee of the property of a taxpayer shall be entitled to a preliminary examination of the books, papers, documents, correspondence, and other evidence of the taxpayer or a preceding assignee of the property of the taxpayer, provided that the assignee making the petition is a petitioner in the Court of First Instance as to his/her liability in respect of the tax imposed on the taxpayer, including interest, fines, additional amounts, and tax additions established under Subtitle F. Upon such petition, the Court of First Instance may request the presentation of all such books, papers, documents, correspondence, and other evidence the production of which, in the judgment of the Court, is necessary to enable the transferee to ascertain the liability of the taxpayer or of the preceding transferee, provided that it does not result in undue hardship to the taxpayer or to the preceding transferee. Such examination shall be conducted at such time and place designated by Court.

## Section 1117.02.-- Notice of Fiduciary Relationship.--

**(a) Fiduciary of the Taxpayer.--**   Upon notice to the Secretary that any person is acting in a fiduciary capacity, such fiduciary shall assume the powers, rights, duties, and privileges of the taxpayer in respect of a tax imposed by this Subtitle (except as otherwise specifically provided and except that the tax shall be collected from the estate of the taxpayer), until notice is given that the fiduciary capacity has terminated.

**(b) Fiduciary of the Transferee.--**   Upon notice to the Secretary that any person is acting in a fiduciary capacity for a person responsible for the liability specified in Section 1117.01, such fiduciary on behalf of such person shall assume the powers, rights, duties, and privileges of such person under said Section (except that the tax shall be collected from the estate of the taxpayer), until notice is given that the fiduciary capacity has terminated.

**(c) Manner of Notice.--**   Notice under subsections (a) or (b) shall be given in accordance with regulations prescribed by the Secretary.

## SUBTITLE B --  DECEDENT'S ESTATE AND GIFTS

## CHAPTER 1 --  CLASSIFICATION AND APPLICATION OF PROVISIONS AND DEFINITIONS

## Section 2010.01.-- Provision Classification and Applicability.--

Classification.--The provisions of this Subtitle are hereby classified and designated as follows:

2011 PR H.B. 3070

**Chapter 1.--** Classification and Application of Provisions and Definitions;

**Chapter 2.--** Decedent's Estate--Puerto Rico Residents;

**Chapter 3.--** Decedent's Estate--Puerto Rico Nonresidents;

**Chapter 4.--** Taxes on Gifts;

**Chapter 5.--** Tax Returns, Payment of Taxes, Procedures, and Administration.

### Section 2010.02.-- Definitions.--

For purposes of this Subtitle, the following terms shall have the meaning stated below:

**(1)  Stock.--**  Includes shares in any corporation or partnership, including, but not limited to, associations, limited companies, joint stock companies, professional services corporations, private corporations, limited liability partnerships, limited liability companies, insurance companies, and investment companies.

**(2)  Stockholder.--**  Includes members or owners of stock or shares in any corporation or partnership, including, but not limited to, associations, limited companies, joint stock companies, professional services corporations, limited liability partnerships, private corporations, limited liability companies, insurance companies, and investment companies.

**(3)  Executor.--**  Includes executor or any person appointed to administer the estate of a decedent; or, in absence of an executor or any other person appointed to administer such estate, then such term shall include any heirs or person who holds all or part of the decedent's estate.

**(4)  Death Benefits.--**  Means any amount payable to heirs or beneficiaries of the members of any retirement system for the employees of the Government of Puerto Rico, the municipal governments, and the Federal government, or any instrumentality thereof currently established or to be established in the future, as well as any retirement or pension system of a private business that qualifies for exempt status under the provisions of Subtitle A of this Code on account of benefits payable upon the death of such participant or member of any of said systems.

**(5)  Possessions, Property or Share in Property.--**  Includes real property, personal property, and livestock, as well as any kind of share therein, including life annuities, pension or annuity of any other kind, as well as the usufruct, the bare ownership, or any kind of rights over or shares in the same.

**(6)  Gross Decedent's Estate.--**  (See Section 2022.01).

**(7)  Taxes Previously Paid.--**  (See Section 2024.01(e)).

**(8)  Taxpayer.--**  Means any person subject to any tax imposed by this Subtitle.

**(9)  Domestic.--**  Applied to corporations or partnerships, means those created in and organized under the laws of Puerto Rico.

**(10)  Gifts.--**  (See Section 2042.01(a)).

**(11)  Puerto Rico Resident.--**  The term "Puerto Rico Resident" means an individual who is domiciled in Puerto Rico on the date of his/her death.

**(12)  Donor.--**  Means the person who makes or has the power to make or withhold a gift, or change the donee thereof.

**(13)  Donee.--**  Means the person who receives a gift, as this term is defined in Chapter 4 of this Subtitle.

**(14) Trustee.--** Means a guardian, fiduciary in a trust, executor, Executor, trustee, conservator or any other person acting on behalf of another in any fiduciary capacity.

**(15) Foreign.--** Applied to corporations or partnerships, means those that are not domestic.

**(16) Heir.--** Includes any successor, legatee, beneficiary or any other person entitled to participate in any way in the estate of a decedent.

**(17) Includes.--** When used in any definition contained in this Subtitle, it shall not be construed so as to exclude what would otherwise fall properly within the scope of the meaning of the term thus defined.

**(18) Person.--** Includes an individual, a trust, a decedent's estate, a partnership, a corporation or an association of any kind.

**(19) Secretary.--** Means the Secretary of the Treasury of Puerto Rico.

**(20) Insurance.--** Excludes those insurance policies on the life of a decedent, regardless of whether the same contains transfers of the proceeds thereof to beneficiaries.

**(21) Partner.--** Includes a member of a partnership or a person holding shares therein, including but not limited to joint stock company and limited liability partnerships.

**(22) Preceding Transfer.--** (See Section 2024.01(e)).

**(23)** Court of First Instance, Court of Appeals for the [First] Circuit, and Supreme Court.--The term "Court of First Instance" means the Court of First Instance of Puerto Rico; the term "Court of Appeals for the [First] Circuit" means the Court of Appeals for the [First] Circuit of Puerto Rico; and the term "Supreme Court" means the Supreme Court of Puerto Rico.

**(24) Value.--** Means the market value, as this last term is defined in Section 2022.02(a) of this Subtitle.

**(25) Voluntarily.--** Means any act or series of acts that stand proof of a mental state inclined toward disregarding the law or infringing the law in full awareness, as this term is used in Subtitle F.


## CHAPTER 2 -- DECEDENT'S ESTATE--RESIDENTS OF PUERTO RICO


## SUBCHAPTER A -- IMPOSITION OF TAX


### Section 2021.01.-- Imposition and Rate of Tax.--

**(a)** A tax is hereby imposed on the transfer of the taxable estate, assessed pursuant to Section 2023.01 of this Subtitle, of any Puerto Rico decedent, as defined in Section 1010.01 of Subtitle A of this Code, who dies after December 31, 2010.

**(b)** The tax imposed by this Section shall be ten percent (10%) of the amount of the taxable decedent's estate.

**(c)** The tax to be paid on the transfer of the taxable estate of any decedent who was a Puerto Rico resident shall be equal to the tax assessed pursuant to subsections (b) and (c) of this Section, minus the credits provided in Sections 2024.01, 2024.02, and 2024.04 of this Subtitle.


### Section 2021.02.-- Duty to Pay Tax.--

**(a) General Rule.--** Any tax imposed by this Chapter shall be paid to the Secretary by the Executor, who shall be responsible for said tax, subject to the provisions of subsection (b), even if he/she does not come to hold of the property included or includible in the gross decedent's estate. If the Executor were to be relieved by the Secretary of his/her responsibility under this Subtitle, the heirs, donees, or beneficiaries shall be severally responsible of the tax until the same has been paid in full.

**(b)  Requirement of the Executor to Withhold Tax.--**   The Executor shall not pay any amount, nor shall he/she surrender or transfer any property subject to the tax imposed by Section 2021.01 to any person until after having collected and paid to the Secretary the tax thus imposed, except when a lien is cancelled pursuant to the provisions established in Section 2054.02. If the Executor were to dispose in any way of property that is taxable under this Subtitle without previous authorization as set forth in Section 2054.02, he/she shall be personally accountable with his/her property for the tax attributable to the property thus disposed of.

**(c)  Responsibility of Any Owner of Property.--**   If an Executor has not been designated, or if the same has been designated, there has been a failure to include in the gross decedent's estate any property whose inclusion in the estate would be pertinent, the person holding the same in the capacity of owner shall be responsible for the payment of the tax that is attributable to the value of the property he/she is holding or owns.

**(d)  Executor's Release from Liability.--**   After the tax has been paid, the Executor may request the Secretary to release him/her from personal liability with respect to the payment of any deficiency assessed under this Subtitle in connection with the decedent's estate. The Executor shall be released of the liability imposed on him/her under this Subtitle if, within a term of one year as of the date he/she requests such release, the Secretary has not acted upon the request.

**(e)  Authority of the Executor to Recover Taxes.--**   The Executor, unless otherwise provided in the will and testament, shall recover from the heirs the tax that, in proportion to the total tax paid as may correspond over the property included in the gross decedent's estate transferrable to each heir, by using the formula as the Secretary determines by regulation.


**SUBCHAPTER B --**  GROSS DECEDENT'S ESTATE


**Section 2022.01.-- Definition of Gross Decedent's Estate.--**

**(a)  In General.--**   The gross estate of a decedent shall include, up to the limit established in this Subchapter, the value at the time of his/her death of all property or rights over personal or real property, tangible or intangible, wherever situated. The term "Gross Decedent's Estate" shall include the value of the share that by virtue of the marital property corresponds to the surviving spouse to the sole effect of attributing to such share the proportional portion of debts, encumbrances, and obligations corresponding to the marital property hold him/her responsible under the terms of Section 2054.01 of the tax debts demandable from the decedent pursuant to Section 2023.03(a)(2). Such estate shall not include payments made and the value of services rendered to the decedent's beneficiaries pursuant to the provisions of the Federal Social Security Act. Furthermore, it shall not include the total sum of gifts made and reported to the Secretary as of the date of approval of this Subtitle; however, it shall include the total sum of any gifts, whether taxable or nontaxable, whose term to report had expired by the time of death of the decedent, has not been reported to the Secretary. When by the time of death of the decedent, the term to report gifts has not expired, such term shall be deemed to be expired and the tax payable within ninety (90) days following the time of death of the donor.

**(b)  Property Transferred with Reserved Rights in Favor of the Assignor.--**   The gross decedent's estate includes, up to the amount of the share in such estate that is attributable to the decedent, the value of all property that the decedent transferred while living if:

**(1)**  He/she retained possession and use of the property or any part thereof, or if he/she received or was entitled to receive a life annuity or the income from the transferred property; or

**(2)**  He/she retained the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property, the life annuity, or the income therefrom.

2011 PR H.B. 3070

**(c) Transfer Effective Upon Time of death.--**   In the case of transfers that are to become effective at the time of death of the decedent, the value of the transferred property shall be included in the gross decedent's estate up to the limit of the share of the decedent in such property.

**(d) Annuities.--**   The gross decedent's estate includes the value of an annuity or any other payment receivable by any beneficiary under any formal contract or agreement by reason of surviving the decedent, that is, if under the terms of such contract or agreement an annuity was payable or any other payment was due to the decedent or a beneficiary of the latter, or if the decedent, either alone or in conjunction with another person, owned the right to receive the payment of such an annuity during his/her lifetime or for any period not ascertainable without reference to his/her death or for any period which does not in fact end before the time of death, the payment of such an annuity.

**(e) Joint Interests.--**   The gross decedent's estate includes the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person and that which has been deposited with any person carrying on the banking business on behalf of the decedent and any other person and payable to either or the survivor, except such part thereof as may be shown to the Secretary to have originally belonged to such other person and never to have been received by the latter from the decedent for less than its value. When proven that the other co-owner acquired from the decedent such property or a part thereof for less than an adequate consideration, be it in money or its equivalent, there shall be excepted only such part of the property's value as is proportionate to the consideration furnished, be it in money or its equivalent, which was the means for said co-owner to acquire the aforementioned property or part thereof. Furthermore, when any property has been acquired by gift, bequest or inheritance, as a tenancy by the entirety by the decedent and his/her spouse, then the exclusion shall be for one-half of the property's value, or when so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then the exclusion shall be for the value of a fractional part determined by dividing the property's value by the number of joint tenants.


**Section 2022.02.-- Valuation of Property Includible in Gross Decedent's Estate.--**

**(a) In General.--**   The value of any property includible in the gross estate of a decedent in Sections 2022.01 and 2030.03 of this Subtitle, shall be the market value at the time of death of the decedent. Market value shall be understood to be the price that a person who wishes to buy a property would be willing to pay to a person who wishes to sell, when both these persons are acting freely and with full knowledge of all relevant factors regarding the property subject to appraisal, if such property were to be offered for sale in a free market.

**(b) Valuation of Corporate Stock and Securities.--**

**(1) Those Sold in Recognized Stock Markets.--**   Their value shall be, for purposes of this Chapter, the average between the highest and the lowest sales price as quoted in recognized stock markets at the time of death of the decedent. If at the time of death of the decedent no prices have been quoted, but within reasonable periods preceding and following that date there were quotations and sales for such stock and securities, then their value shall be the inversely weighted average resulting from the highest and the lowest average prices paid for such stock and securities on the closest dates preceding and following the time of death of the decedent, to be computed based on the security market days comprised within such time lapse.

**(2) Those Not Sold in Recognized Stock Exchanges.--**   Their value shall be that their value known in the market. If unknown, they shall be assigned their value in the accounting books of the issuing corporation as it appears in the corporation's financial statement at the normal close of operations nearest to the time of death of the decedent, prepared according to generally accepted accounting principles and certified by a certified public accountant. The Executor, executor or trustee shall be offered the choice to determine the value based on the valuation corporate assets plus its profit, deducting its liabilities and the value of preferred stock, if any, and dividing the valuation's remainder by the number of common shares, in order to determine the value of each common share. As to individual

businesses and partnerships that represent family businesses, a similar method shall be used for the valuation of the business, except that assets shall be valued as a single unit.

**(3)  Recognized Stock Exchanges.--**  The term "recognized stock exchanges" means all stock exchanges authorized to operate as such by any government or entity empowered to authorize their operation.

**(c)  Valuation of Other Property.--**  Any kind of property that has not been specifically described in the preceding subsections of this Sections shall be valued by using the general principles established in the valuation practice, taking into account all such relevant factors as the Secretary may determine by regulation.

## Section 2022.03.-- Alternate Valuation Option Regarding Property Includible in the Gross Decedent's Estate.--

**(a)  In General.--**  The value of any property includible in the gross decedent's estate, pursuant to Sections 2022.01 and 2030.03 of this Subtitle, may be determined as follows, if the Executor, executor or trustee so elects:

**(1)**  As for distributed, sold, exchanged or otherwise transferred property within six (6) months following the time of death of the decedent, its value shall be determined on the date of the distribution, sale, exchange or any other transfer.

**(2)**  As for property not distributed, sold, exchanged or otherwise transferred within six (6) months following the time of death of the decedent, its value shall be determined on the date within the six (6)-month term following the time of death of the decedent.

**(3)**  Any interest or property affected by the mere passage of time shall be included in the gross decedent's estate, with its market value at the time of death of the decedent (in lieu of the later date), adjusted by any difference in value on the later date, which difference has not been caused by the mere passage of time, which date may never be after the due date for filing the appropriate tax return.

**(b)  Time to Make the Election.--**  The election set forth in this Section shall be made by the Executor, executor or trustee not later than the date provided in this Subtitle to file tax returns or statements or before the due date of the time extension granted to that effect to file such returns or statements, pursuant to the regulations that the Secretary may promulgate to such effect.

## SUBCHAPTER C --  TAXABLE DECEDENT'S ESTATE

## Section 2023.01.-- Determining the Value of the Taxable Decedent's Estate.--

For purposes of the tax imposed by Section 2021.01, the value of the taxable decedent's estate shall be determined by deducting from the gross decedent's estate the exemptions and deductions set forth in this Subchapter.

## Section 2023.02.-- Deduction Regarding Property Located in Puerto Rico.--

**(a)**  The value of any property located in Puerto Rico (as defined and listed in this Section) at the time of death of a decedent shall be deductible from the gross estate of a decedent who was a Puerto Rico resident, except for the provisions set forth in Section 2023.06 of this Subtitle.

**(b)**  For purposes of this Section, the term "property located in Puerto Rico" shall mean and include the following:

**(1)**  Except as provided in this Section, any personal and real property located in Puerto Rico that belongs to a Puerto Rico resident. As for personal property of the kinds described in paragraphs (2) through (10) of this subsection, the deduction shall be limited to those properties that conform to the description provided in such paragraphs.

**(2)**  Stock issued by any domestic corporation or partnership, provided that, when the decedent owned over ten percent (10%) of the shares (by value or voting power) in said corporation or partnership, such shares shall be deemed to be property located in Puerto Rico only if such domestic corporation or partnership derives not less than eighty percent (80%) of its gross income from the exploitation of a trade or business by the three (3)-year period ending on the close of its taxable year before the time of death of the decedent, or which period may correspond from the date of existence of such corporation or partnership, or if one hundred percent (100%) of the assets of said corporation or partnership constitute property located in Puerto Rico, as defined in paragraphs (1) and (3) through (10) of this Section. For purposes of determining whether a domestic corporation or partnership meets the requirement of having eighty percent (80%) or more of its gross income originate from the exploitation of a trade or business, the gross income of any corporation or partnership in which such domestic corporation or partnership holds, directly or indirectly, over fifty percent (50%) of stock (by value or voting power), shall be taken into consideration, in addition to the gross income of such domestic corporation or partnership.

**(3)**  Stock issued by any foreign corporation or partnership, when not less than eighty percent (80%) of the gross income of such foreign corporation or partnership by the three (3)-year period ending on the close of its taxable year before the time of death of the decedent, or which period may correspond from the date of existence of such corporation or partnership, if such income was truly related to the exploitation of a trade or business in Puerto Rico pursuant to the provisions of Subtitle A of this Code, provided, that when the decedent owned over ten percent (10%) of the stock (by value or voting power) in said foreign corporation or partnership, for purposes of determining whether it meets with the requirement of having eighty percent (80%) or more of its gross income being truly related with the exploitation of a trade or business in Puerto Rico for the period mentioned above, the gross income of any corporation or partnership in which such domestic [sic] corporation or partnership holds, directly or indirectly, over fifty percent (50%) of stock (by value or voting power), shall be taken into consideration, in addition to the gross income of such foreign corporation or partnership.

**(4)**  Bonds, notes or other debentures issued by:

    **(i)**  The Government of Puerto Rico;

    **(ii)**  Municipalities located within the jurisdiction of the Government of Puerto Rico;

    **(iii)**  Public authorities or corporations, both from the Government of Puerto Rico and from its municipalities, which belong to a decedent who was a Puerto Rico resident.

**(5)**  Bonds, notes or other debentures of a Puerto Rico resident; or from a domestic corporation or partnership; or secured with real property located in Puerto Rico; or from foreign corporations or partnerships when not less than eighty percent (80%) of the gross income of such foreign corporation or partnership by the three (3)-year period ending on the close of its taxable year before the time of death of the decedent, if such income was earned from sources in Puerto Rico under the provisions of Subtitle A of this Code, which belong to a Puerto Rico resident.

**(6)**  The amounts payable on account annuity contracts and individual retirement accounts eligible under Subtitle A of this Code.

**(7)**  Deposits, certificates of deposit, and savings accounts with persons carrying on in the banking business in Puerto Rico, insofar as the accounting for such deposits, certificates or savings accounts is kept in branches in Puerto Rico.

**(8)**  Deposits, certificates of deposit, and savings accounts in savings and loan associations, credit unions or similar institutions devoted to conducting business in Puerto Rico, insofar as the accounting for such deposits, certificates or savings accounts is kept in branches in Puerto Rico.

**(9)**  Death benefits, as this term is defined in this Subtitle.

2011 PR H.B. 3070

**(10)** Funds accrued under bonus plans in stock, pensions, profit sharing, or annuities that qualify under Subtitle A of this Code, as well as under the United States Internal Revenue Code, held by a Puerto Rico resident.


## Section 2023.03.-- Specific Deductions or Exclusions from the Decedent's Estate.--

**(a)** The following items shall be deductible from the gross decedent's estate:

**(1)  Decedent's debts.--**   Personal debts enforceable at the time of death or on the fixed or determinable date proven to be the date on which the decedent assumed the same during his/her lifetime.

**(2)  Taxes.--**   Taxes of any kind that at the time of death are enforceable from the decedent by the Government of Puerto Rico. Tax debts that were not duly bonded must be paid in full by the Executor of the gross decedent's estate before the issuance of the Certificate of Cancellation in Full or the conditioned authorization mentioned in Section 2054.02.

**(3)  Mortgages.--**   The total sum of mortgages in effect or other debts in connection with a specific property, if the value of the share of the decedent therein, without discounting the value of such mortgages or other debts, shall be included in the gross decedent's estate. The deductions granted under this paragraph are limited to the amount owed on the mortgages or other debts at the time of death, but up to a maximum of the value of the share of the decedent in the mortgaged property. When dealing with deductions originated by transactions between relatives that are within the third degree of consanguinity or second degree of affinity, it shall necessary to prove that the consideration, whether money or its equivalent, involved in the transaction that originated the mortgage or debt was sufficient.

**(4)  Funeral Expenses.--**   Funeral expenses up to a maximum of six thousand dollars ($ 6,000), insofar such expenses are justified by presenting the corresponding receipts of payments.

**(5)  Fortuitous Losses Not Compensated by Insurance or Otherwise.--**   The total sum of losses caused by fire, earthquakes, or hurricanes that have taken place within nine (9) months following the time of death of the decedent, up to the total sum of such losses that are not compensable by insurance or otherwise.

**(6)  Fees.--**   The total sum of fees charged by attorneys, accountants, appraisers, land surveyors, estate appointee, and executors, actually payable until the date of filing the final tax return, up to a maximum amount of five percent (5%) of the total sum of the gross decedent's estate.

**(7)  Property Received by the Surviving Spouse.--**   The value of the property received from a testator by bequest or inheritance (except for the dower) by the surviving spouse, insofar as such transfers do not exceed the amount that the decedent would have been able to transfer without impairing the rights of his/her heir apparent, as these are established under the Civil Code of Puerto Rico. This deduction shall be available only if the value of such property has been included in the gross estate of the testator.


## Section 2023.04.-- Deduction in Connection with Estates Invested or to be Invested in Activities Conducive to Greater Development of Puerto Rico's Economy.--

**(a)  General Rule.--**   For purposes of the tax imposed by Section 2021.01, in what concerns decedent's estates described in Section 2030.08, the value the taxable decedent's estate shall be determined by deducting from the gross decedent's estate fifty percent (50%) of the value of the following eligible investments:

**(1)** Bonds of the Government of Puerto Rico;

**(2)** Outstanding common or preferred stock, the share of a partner in equity, or the net capital that an individual, a trust or any other entity holds in an enterprise directly engaged in any of the following

qualified economic activities, insofar as at least eighty percent (80%) of the enterprise's capital is being used in such activity:

    **(i)** Exporting items and services;

    **(ii)** Tourism;

    **(iii)** Supply of items and services that are being imported in Puerto Rico;

    **(iv)** Farming, animal husbandry or poultry breading;

    **(v)** Supply of items and services to enterprises engaged in the activities described above; and

    **(vi)** Construction, reconstruction or remodeling of buildings to be leased to the Government of Puerto Rico to be used as public schools and for facilities complimentary thereto, such as libraries, book stores, housing for students and professors, and multiple uses centers, such as cafeteria facilities, or for meetings or for leisure, or for public hospitals or health houses and facilities complimentary to such hospitals and health houses, such as housing for nurses, cafeteria, laundry services, physical and vocational rehabilitation centers or to be leased to nonprofit entities that will use them as hospitals, health houses, and facilities complimentary thereto, and which are located in a plot of land with a maximum capacity of one (1) *cuerda*.

**(b)  Limitations.--**

**(1)** The deduction granted by subsection (a) shall only be granted in cases in which eligible investments have been held by the decedent or by the decedent and his/her heirs during a continuous term of not less than three (3) years before the sale or exchange of such eligible investments. However:

    **(A)** If the decedent dies before three (3) years have elapsed from the date of having made the eligible investments, in order for his/her estate receive the deduction granted under subsection (a), it shall be necessary to post a bond to the satisfaction of the Secretary in the amount set by him/her in order to ensure payment of any deficiency that may arise in the course of the sale or exchange of the eligible investment;

    **(B)** In case that the eligible investments are sold or exchanged before three (3) years have elapsed from the date the decedent made such investments, any deduction that has been or that could be granted under subsection (a) shall be revoked or denied and the amount of any reduction in taxes on account of the deduction granted under subsection (a) must be paid to the Secretary;

    **(C)** If within thirty (30) days after the date of the sale or exchange of the eligible investments, the net proceeds of such sale is reinvested in other eligible investments, or if the value acquired in the exchange is an eligible investment and the acquirer retains the same, such sale or exchange shall not be taken into consideration for purposes of subparagraph (B), and the period elapsed from the date on which the decedent originally made the eligible investments shall considered as a continuous term for purposes of paragraph (1) and subparagraph (A).

**(2)** Substituting an eligible investment by another eligible investment within a term of ninety (90) days shall not interrupt the three (3)-year period. Such three (3)-year period shall be computed separately in respect of each eligible investment.

**(3)** As for taxable decedent's estates of Puerto Rico residents, whose estate is fully taxable in the United States or is fully or partially taxable in any foreign country, the benefits established in subsection (a) shall be determined pursuant to the provisions of Section 2030.08 when dealing with nonresidents.

**(4)** When dealing with an enterprise engaged in different activities, this deduction shall be granted only if the enterprise separate books and records in connection with such activities, identifying the assets used and the income earned from these. These books shall be at all times available for the Secretary for any audit that in his/her judgment is necessary for the proper application of this Subtitle.

**(c)  Definitions.--** As used in this Subtitle, the following terms shall mean:

**(1)  Net Capital.--**   The term "net capital" means the value of the asset minus the liability of the individual business of a decedent.

**(2)  Net Proceeds.--**   The term "net proceeds" means the gross proceeds of a sale or exchange minus taxes and fees payable directly from such proceeds, except that the amount to be deducted on account of such fees shall not exceed five percent (5%) of the gross proceeds.

**(d)  Designation of Qualified Economic Activity.--**

**(1)  Powers.--**   The Governor, with the advice of the Secretary, the Chairperson of the Planning Board, the Secretary of Agriculture, the Secretary of Economic Development and Commerce, the Executive Director of the Industrial Development Company, the Secretaries of Health and Education, as he/she may deem necessary, is hereby authorized to designate which economic activities are to receive stimulus.

**(2)**   The Governor, with the advice of the Secretary, the Chairperson of the Planning Board, the Secretary of Economic Development and Commerce, the Executive Director of the Industrial Economic Development Company, the Secretaries of Health and Education, as may be necessary, may eliminate prospectively any economic activity previously qualified for purposes of this Section, when he/she determines that it is no longer necessary or desirable to provide stimulus for investments in such activities, which would otherwise qualify under this Section.

**(e)  Effect of Eliminating a Qualified Economic Activity.--**   The deduction granted under subsection (a) shall by no means be denied due to the fact that the qualified economic activity has lost its qualification as such at any time after the time of death of the decedent pursuant to subsection (d)(2).

**(f)**   The deduction granted by this Section shall be determined on the basis of the market value of the eligible investments made in a qualified enterprise as such value can be proven by the Secretary of Economic Development and Commerce to the satisfaction of the Secretary.

**Section 2023.05.-- Deductions of Bequest or Legacies for Public, Charitable or Religious Purposes.--**

**(a)  In General.--**   For purposes of the tax imposed by Section 2021.01, the taxable decedent's estate shall be determined by deducting from the gross decedent's estate the amount of any bequest or legacy made:

**(1)**   To or for the use of the Government of the United States, the Government of Puerto Rico, their agencies and instrumentalities, or any political subdivision thereof, exclusively for public purposes;

**(2)**   To or for the use of a corporation, association or trust organized and operated exclusively for religious, charitable, scientific, museologic, veteran rehabilitation services, literary or educational purposes, including the encouragement of arts and the prevention of domestic violence, hate crimes or child, elderly, or animal abuse, which operates in Puerto Rico and whose net earnings do not inure to the benefit of any shareholder or private individual, and whose activities by no means include furthering propaganda or proselytism of a political-partisan nature or in favor or against any candidate for any elective office, insofar as the entity qualifies as an entity exempt from income taxes under Subtitle A of this Code or the United States Internal Revenue Code;

**(3)**   To a trustee or trustees, a foundation or a society, an order or a brotherly association that operates under the lodge system, insofar as such bequests or legacies are to be used by such trustee or trustees, or by such society, order, or fraternal association, exclusively for religious, charitable, scientific, museologic, veteran rehabilitation services, literary or educational purposes, including the encouragement of art and the prevention of domestic violence, hate crimes or child, elderly or animal abuse, which operates in Puerto Rico, whose activities by no means include intervening in or furthering propaganda or proselytism of a political-partisan nature or in favor or against any candidate for any elective office, insofar as the entity qualifies as an entity exempt from income taxes under Subtitle A of this Code or the United States Internal Revenue Code;

(4)  To or for the use of war veteran posts or organizations, or auxiliary units or societies of any such posts or organizations, insofar as such posts, organizations, units or societies are organized in Puerto Rico or the United States or in any of its possessions, and if no part of its net earnings inures to the benefit of any shareholder or private individual.

**(b)  Payable Inheritance Taxes on Account of Bequests or Legacies.--**  If the taxes imposed by Section 2021.01 or any other taxes on the decedent's estate, patrimony, legacy or inheritance are on account of the last will and testament's terms or the laws in the jurisdiction where the patrimony is administered or the laws of the jurisdiction that levies the taxes in question--payable in whole or in part from the bequests or legacies, which are otherwise deductible under this Section, the amount deductible under this Section shall be the total sum of such bequests or legacies, minus the amount of such taxes.

**(c)  Limitation on the Deduction.--**  The amount of the deduction granted under this Section shall not exceed the value of the property transferred through bequest or legacy that is includible in the gross decedent's estate, as required under this Chapter. No amount whatsoever pertaining to bequests or legacies made to organizations mentioned in this Section shall not be admissible as a deduction if the Secretary finds that such organizations conduct or have conducted prohibited transactions within the meaning of such term in Sections 1083.02(f)(2) and 1102.06 of Subtitle A.

**(d)  Future Interests.--**  If the bequest or legacy otherwise deductible under this Section consists, in whole or in part, of future interests, no deduction shall be granted under this Section for the portion of the total sum of such bequest or legacy which pertains to such future interests.

**Section 2023.06.-- Taxation of Decedent's Estates Belonging to Certain United States Residents Who Are Puerto Rico Residents.--**

**(a)**  As for United States citizens who are Puerto Rico residents at the time of their death, whose gross estate, wherever located, is included in their gross decedent's estate for purposes of the tax on decedent's estates imposed by the United States Internal Revenue Code, a tax shall be imposed on that portion of the gross decedent's estate located in Puerto Rico equal to the maximum credit computed in Section 2014(b)(2) of such Code. In determining the portion of such gross decedent's estate located in Puerto Rico, the rules contained in Sections 2030.03, 2030.04, 2030.05 shall be used.

**(b)**  If the gross estate of the decedent referred to in subsection (a) has not been included in his/her gross estate for the purposes set forth in said subsection, the taxes on such estate, wherever located, shall be determined pursuant to the provisions of Section 2021.01.

**Section 2023.07.-- Deduction for Farming, Poultry or Animal Husbandry Industries.--**

**(a)**  When dealing with taxable gross estates and the decedent has earned for three (3) years before the date of his/her death over fifty percent (50%) of his/her net income from farming, poultry or animal husbandry industries, one hundred percent (100%) of the value of such properties which constitute active units of farming, poultry or animal husbandry production shall be deductible, insofar as such properties remain as active production units for a period of not less than ten (10) years from the time of death of the decedent.

**(b)**  Taxes deferred pursuant to this Section shall constitute a preferred lien in favor of the Government of Puerto Rico on transferred properties eligible for the one hundred percent (100%) deduction above. This lien shall originate at the time of death of the decedent and shall be preferred over all other debts, credits or obligations of any kind which originate on or after the time of death and shall remain effective for a period of ten (10) years as long as the properties continue to be active production units. At the end of the ten (10) year term, the property shall be fully exempt from payment of taxes on gross decedent's estates.

**(c)**  The Secretary of Agriculture shall certify annually to the Secretary that the eligible unit is an active farming, poultry or animal husbandry production unit.

**(d)**  The exemption granted under this Section may be claimed together with the deductions established in Section 2023.04.

## Section 2023.08.-- Fixed Exemption.--

**(a)**  In computing taxes on taxable gross decedent's estates under this Subtitle, the same shall be deducted from the value of the sum of one million dollars ($ 1,000,000). This deduction shall be claimed before the deduction on property located in Puerto Rico as provided in Section 2023.02; provided, further, that the fixed deduction provided under this subsection shall be prorated among all assets included in the gross decedent's estate by using as base their fair market value.

## SUBCHAPTER D -- CREDITS AGAINST TAXES

## Section 2024.01.-- Credits for Taxes on Prior Transfers.--

**(a)  General Rule.--**  All or part of the taxes paid pursuant to this Chapter or Chapter 3 of this Subtitle or the corresponding provisions of preceding laws shall be credited against the taxes imposed by Section 2021.01, as determined below with respect to transfer of property made to the decedent by a person (hereinafter designated as the transferor) who died or who made the gift within ten (10) years before the death of the decedent. Such credit shall be equal to the following percentages of the taxes previously paid, computed and adjusted pursuant to subsection (b) of this Section:

**(1)**  One hundred percent (100%), if the decedent died within the first two (2) years after the date of the prior transfer;

**(2)**  Eighty percent (80%), if the decedent died after the first two (2) years, but before the first four (4) years after the date of the prior transfer;

**(3)**  Sixty percent (60%), if the decedent died after the first four (4) years, but before the first six (6) years after the date of the prior transfer;

**(4)**  Forty percent (40%), if the decedent died after the first six (6) years, but before the first eight (8) years after the date of the prior transfer;

**(5)**  Twenty percent (20%), if the decedent died after the first eight (8) years, but before the first ten (10) years after the date of the prior transfer.

**(b)  Computation of Credit for Taxes Paid under this Subtitle.--**  Subject to the limitation provided in subsection (c), the credit provided by this Section in connection with taxes paid under this Subtitle or the corresponding provisions in preceding laws, shall be an amount which bears the same ratio to the amount paid with respect to the estate of the transferor as the value of the property transferred bears to the taxable decedent's estate or the taxable gift, as the case may be, decreased by taxes on inheritances or gifts paid in connection with such estate. Credits shall only be granted in connection with prior transfers where the transferor acquired property from a person who died or made the gift within ten (10) years before the death of the decedent.

**(c)  Limitation on the Credit.--**

**(1)  In General.--**  The credit provided in this Section shall not exceed the amount by which:

**(A)**  The taxes imposed by Section 2021.01 (after deducting the tax credits provided in Section 2024.02), computed without regard to this Section, exceeds

**(B)**  Such tax computed by excluding from the decedent's gross estate the value of such property transferred. For purposes of this Section, the value of such property transferred shall be the value set forth in subsection (d).

**(2)  Two or More Transferors.--**  If the credit provided in this Section is granted in connection with property received from two (2) or more transferors, the limitation provided in paragraph (1) of this

subsection shall be computed by aggregating the value of the property so transferred to the decedent. The limitation thus determined shall be apportioned in accordance with the value of the property transferred to the decedent by each transferor.

**(d)  Valuation of Property Transferred.--**   The value of the property transferred to the decedent shall be the value used to determine the taxes on the prior transfer made in benefit of the transferor, minus:

**(1)**  Any taxes on inheritances or gifts applicable to the property transferred in the net value of such property for the decedent;

**(2)**  Any encumbrance or any obligation imposed by the transferor to the decedent in connection with such property.

**(e)  Definition.--For purposes of this Section.--**

**(1)**  The term "property" includes any beneficial interest of a person in a property.

**(2)**  The term "previously paid taxes" includes taxes on gifts as well as taxes on decedent's estates or inheritances; and

**(3)**  The term "prior transfer" includes a transfer by gift, as well as a transfer by inheritance.

## Section 2024.02.-- Credits for Inheritance Taxes Paid in Other Jurisdictions.--

**(a)  In General.--**   The amount of any taxes on decedents' estates, successions or inheritances paid to the United States of America, or to a state, or territory or possession of the United States, or to any foreign country, in connection with any property located within such country, state, possession or foreign country, as the case may be, and included in the gross estate of the decedent (without including any such taxes paid in connection with the estate of a person other than the decedent), shall be credited against the taxes imposed by Section 2021.01.

**(b)  Limitations on Credit.--**   The credit provided in this Section in connection with taxes paid to the United States or to a state, or territory or possession of the United States, or to any foreign country, shall not exceed whichever is the less amount among:

**(1)**  Such amount which bears the same ratio to the amount of such tax actually paid to the country, state or possession in question, as the value of property which is:

**(A)**  Located in such country, state, or possession,

**(B)**  Subject to such tax, and

**(C)**  Included in the gross decedent's estate,

**(2)**  And the amount which bears the same ratio to the amount of the tax imposed by Section 2021.01 (after deducting from such tax the credit provided by Section 2024.01), as the value of the property which is:

**(A)**  Located in such country, state or possession,

**(B)**  Subjected to the taxes of said jurisdiction, and

**(C)**  Included in the gross decedent's estate and bears to the value of the entire gross decedent's estate reduced by the aggregate amount of the deductions allowed in Sections 2023.02 and 2023.05.

**(c)  Valuation of Property.--**

**(1)**  The indicated values in the ratio stated in subsection (b)(1) are the values determined for purposes of the tax imposed by such country, state or possession.

**(2)**  The value referred to in the ratio stated in subsection (b)(2) are the values determined under this Chapter; but in applying such ratio, the value of any property described in subparagraphs (A), (B), and

(C) of such subsection shall be reduced by such amount as will properly reflect, pursuant to the regulations promulgated by the Secretary, the deductions allowed in connection with such property in Section 2023.05 of this Subtitle.

**(d) Proof of Credit.--**   The credit provided in this Section shall be allowed only if the taxpayer submits to the Secretary the following:

**(1)**   A certified copy of the receipt of payment of the taxes on decedent's estate, succession or inheritance paid to the other jurisdiction;

**(2)**   The description and valuation of the property in connection with which such taxes are imposed; and

**(3)**   Any other information necessary for the verification and computation of the credit.

## Section 2024.03.-- Recovery of Taxes Claimed as Credit.--

If any amount claimed as a credit in Section 2024.02 is in any way recovered, the Executor or any other person or persons recovering such amount shall give written notice of such recovery to the Secretary within thirty (30) days after the date on which the recovery was received or credited. Notwithstanding the provisions in Subtitle F of this Code, regarding the prescriptive term for the assessment and collection of the taxes imposed by this Subtitle, the Secretary shall redetermine the amount of the tax under this Chapter, and the tax due on such determination shall be paid by the Executor or by such person or persons, as the case may be, on notice and demand by the Secretary. No interest shall be assessed or collected on the tax due on any redetermination by the Secretary under this Section for any period before the receipt or credit of such refund, except up to the total sum of interest paid by such other country, state or possession on such refund.

## Section 2024.04.-- Credit to the Taxpayer Liable.--

**(a)  In General.--**   The total sum of the taxes imposed by Section 2021.01(a), reduced by the credits provided in Sections 2024.01 and 2024.02 of this Subtitle, shall be credited against such taxes, insofar as:

**(1)**   At the time of his/her death, the decedent has no debts pending payment on account of tax liabilities; and

**(2)**   The Executor meets the payments, within the terms established by law, of the tax liabilities payable after the time of death of the decedent.

**(b)  Tax Liability.--**   For purposes of this Section, the term "tax liability" shall include all taxes imposed by this Code, under the Puerto Rico Internal Revenue Code of 1994, or under any preceding laws of a similar nature, as well as the taxes imposed by Act No. 83 of August 30, 1991, as amended [21 L.P.R.A. §§ 5001 et seq.], known as the "Municipal Property Tax Act," or any succeeding law superseding it, and the taxes imposed by Act No. 113 of July 10, 1974, as amended [21 L.P.R.A. §§ 651 et seq.], known as the "Municipal License Tax Act." The term "tax liability" shall also include those taxes applicable to a corporation or partnership, when the decedent holds over ten percent (10%) of stock (by value or voting stock) in such corporation or partnership.

## CHAPTER 3 --  DECEDENT'S ESTATES BELONGING TO PUERTO RICO NONRESIDENTS

## Section 2030.01.-- Imposition and Payment of Taxes.--

**(a)  Imposition.--**   Except as provided in Section 2030.07, a tax shall be imposed, which shall be computed pursuant to Section 2021.01 of this Subtitle on the transfer of taxable gross estates, as defined in Section 2030.06, of any decedent who at the time of his/her death was an alien and a Puerto Rico alien nonresident, except when the gross estate of the nonresident alien (who is not domiciled in Puerto Rico) is subject to taxes in his/her country, in which case, in lieu of the taxes imposed by Section 2021.01 of this Subtitle, a tax equal to the maximum tax credit that the country of origin has granted on the estate of the

nonresident alien (not domiciled in Puerto Rico) shall be imposed and paid on property located in Puerto Rico, after presenting a certificate of the credit granted by the government of the country of origin.

**(b)  Duty to Pay Taxes.--**  The taxes imposed by this Section shall be paid by the Executor, and if such taxes or any portion thereof were not paid on or before the due date therefor, the heir, legatee or beneficiary of any transfer shall be personally liable, with all his/her property, for the payment of the taxes thus imposed up to the amount of the value of the property transferred.

## Section 2030.02.-- Credits Against Taxes.--

The amounts determined as credits for taxes on prior transfers pursuant to Section 2024.01 shall be credited against the taxes imposed by Section 2030.01.

## Section 2030.03.-- Definition of Gross Decedent's Estate.--

For purposes of taxes imposed by Sections 2030.01 and 2030.07, the value of the gross estate of a decedent who is a Puerto Rico nonresident shall be that portion of his/her gross estate (to be determined as provided in Section 2022.01) located in Puerto Rico at the time of his/her death.

## Section 2030.04.-- Property Located in Puerto Rico.--

**(a)  Stock in Domestic Corporations and Partnerships.--**  For purposes of this Subchapter, stock certificates, as these are defined in paragraph (1) of subsection (a) of Section 2010.02, issued by domestic corporations or partnerships, belonging or held by a Puerto Rico nonresident, shall be deemed to be property located in Puerto Rico.

**(b)**  Transfer *Inter Vivos.*--For purposes of this Subchapter, any property in connection with which a decedent who is a Puerto Rico nonresident has made a transfer, within the meaning of subsections (b) or (c) of Section 2022.01, shall be deemed to be property located in Puerto Rico, if in fact it is located in Puerto Rico on the date of transfer or at the time of death of the decedent.

**(c)  Debentures.--**  For purposes of this Subchapter:

   **(1)**  Bonds, notes or other obligations:

      **(A)**  Issued by:

         **(i)**  The Government of Puerto Rico,

         **(ii)**  Municipalities located within the jurisdiction of the Government of Puerto Rico;

         **(iii)**  Public authorities or corporations of the Government of Puerto Rico and its municipalities; or

      **(B)**  Of a Puerto Rico resident other than a domestic corporation or partnership, belonging to or held by a Puerto Rico nonresident shall be deemed to be property located in Puerto Rico.

      **(C)**  Notwithstanding the provisions of this paragraph, the debentures contemplated in clauses (i) through (iii) of subparagraph (A) of this paragraph, issued for money taken on a loan, when both the decedent and the heir are Puerto Rico nonresidents, shall be deemed to be property located outside Puerto Rico.

   **(2)**  Bonds, notes or other debentures of a domestic corporation or partnership, shall be deemed to be property located in Puerto Rico.

**(d)**  Subsection (c) shall not apply when the interest on such debentures, if received by the decedent who was a Puerto Rico nonresident as of the time of his/her death, were to be, by virtue of the provisions of Section 1035.02 of Subtitle A of this Code, deemed to be income from sources outside Puerto Rico or when the provisions of Section 2030.05(b) apply.

**Section 2030.05.-- Property Located Outside Puerto Rico.--**

For purposes of this Subchapter:

    **(a)  Annuities and Individual Retirement Accounts.--**   The amounts receivable by reason of annuity contracts and individual retirement accounts not eligible under Subtitle A of this Code shall be deemed to be property located outside Puerto Rico.

    **(b)** Certain Bank Deposits and Other Items:

        **(1)** Deposits with persons engaged in the banking business in Puerto Rico;

        **(2)** Deposits or savings accounts in savings and loan associations or similar institutions doing business in Puerto Rico;

        **(3)** Amounts withheld by an insurance company doing business in Puerto Rico under an agreement whereby interest is to be paid on such amounts, payable to a Puerto Rico nonresident, shall be deemed to be property located outside Puerto Rico if, at the time of death of the decedent, the interest on such deposits or amounts were not effectively connected with a trade or business in Puerto Rico.

    **(c)  Works of Art.--**   Works of art owned by a Puerto Rico nonresident shall be deemed to be property located outside Puerto Rico, if such works of art are:

        **(1)** imported into Puerto Rico solely for exhibition purposes;

        **(2)** loaned for such purposes to a public museum or gallery, insofar as no part of the net earnings of which inure to the benefit of any stockholder or private individual; and

        **(3)** at the time of death of the owner, such works were on exhibition or en route to or from exhibition in such public museum or gallery.

**Section 2030.06.-- Taxable Decedent's Estate.--**

    **(a)  Definition of Taxable Decedent's Income.--**   For purposes of the tax imposed by Section 2030.01 of this Subtitle, the value of the taxable estate of any decedent who is a Puerto Rico nonresident shall be determined by deducting the items below from the value of that portion of his/her gross estate that, at the time of his/her death, is located in Puerto Rico:

        **(1)  Indebtedness of the Decedent, Taxes and Funeral Expenses, Among Others.--**   That portion of the specific deductions or discounts from the gross decedent's estate mentioned in Section 2023.03, except for those established in paragraph (3) of subsection (a) of said Section, which the value of such part of the gross decedent's estate located in Puerto Rico bears to the value of the total gross decedent's estate, wherever located. Any deduction that is allowable in Section 2023.03, in the case of a claim against the gross decedent's estate that was based on a promise or agreement but was not contracted for an adequate or full consideration, whether money or its equivalent, shall be allowable under this paragraph up to the amount that would be allowable under paragraph (2), if such promise or agreement constituted a bequest or legacy.

        **(2)** Bequests or Legacies for Public, Charitable, and Religious Purposes:

            **(A)  In General.--**   The amount of any bequest or legacy:

                **(i)** To or for the use of the Government of the United States, the Government of Puerto Rico or any political subdivision thereof, exclusively for public purposes;

                **(ii)** To or for the use of any domestic corporation organized and being operated exclusively for religious, charitable, scientific, museologic, veteran rehabilitation services, literary or educational purposes, including the encouragement of the arts and the prevention of domestic violence, hate crimes or child, elderly or animal abuse, no part of the net earnings of which inure to the benefit of any stockholder or private individual, and whose activities by no means

include furthering propaganda or proselytism of a political-partisan nature or in favor or against any candidate for any elective office, insofar as the entity qualifies as an entity exempt from income taxes under Subtitle A of this Code or the United States Internal Revenue Code.

**(B)  Payable Inheritance Taxes on Bequests or Legacies.--**  If the taxes imposed by Section 2030.01 of this Subtitle, or any taxes on decedent's estates, successions, inheritances or legacies are, be it by reason of the terms in the last will and testament or the laws of the jurisdiction that imposes such taxes, payable in whole or in part on the bequests or legacies otherwise deductible under this Section, the amount deductible thereunder shall be the total sum of such bequests or legacies, minus the amount of such taxes.

**(C)  Limitation on the Deduction.--**  The amount of the deduction allowed under this Section for any bequest or legacy, as specified in this paragraph (2), shall not exceed the value of the property transferred by bequest or legacy, which is includible in the gross decedent's estate, as required under this Chapter.

**(D)  Future Interests.--**  If the bequest or legacy otherwise deductible under this Section consists in whole or in part of future interests, then no deduction shall be allowed under this Section for the portion of the total sum of said bequest or legacy pertaining to such future interests.

**(3)  Death Benefits.--**  The amounts payable to heirs or beneficiaries as death benefits, as such term is defined in this Subtitle, shall be deducted from the gross decedent's estate, up to a maximum amount of fifteen thousand dollars ($ 15,000).

**(4)  Mortgages.--**  The total sum of mortgages or other debts in connection with a specific property shall be deducted from the gross decedent's estate, if the value of the decedent's interest in such property, without deducting the value of such mortgages or other debts, is included in the gross decedent's estate and is also subject to the limitations provided in Section 2023.03(a)(3).

**(5)  Deduction for Eligible Investments.--**  The amount of the deduction for eligible investments referred to in Section 2030.08 of this Subtitle.

**(6)  Fixed Exemption.--**  The amount of the fixed exemption referred to in Section 2030.09 of this Subtitle.

**(c)  Requirement to Furnish Copy of Tax Return Liquidated in the Other Jurisdiction.--**  No deduction shall be allowed under paragraphs (1), (2), (3), and (4) of Section 2030.06(a) unless the Executor submits as a supplement to the tax return required in Section 2051.01 of this Subtitle, a certified copy of the tax return as liquidated in the other jurisdiction. In default thereof, a sworn statement shall be submitted, listing the properties owned by the decedent in such other jurisdiction, as well as their value.

**Section 2030.07.-- Taxation of Decedent's Estates of Certain United States Citizens Who Are Puerto Rico Nonresidents.--**

**(a)**  As for United States citizens who are Puerto Rico nonresidents at their time of death, whose gross estate located in Puerto Rico is included in their gross estates for purposes of estate taxes imposed by the United States Internal Revenue Code, a tax shall be imposed on that portion of the gross decedent's estates located in Puerto Rico equal to the maximum credit computed in Section 2014(b)(2) of such Code. In determining such credit, the value to be assigned to properties located in Puerto Rico shall be the value determined by the Secretary for such purposes, pursuant to the provisions of Section 2022.02.

**(b)**  If the gross estate of the decedent referred to in subsection (a) has not been included in his/her gross estate for purposes stated in said subsection, the taxes on the portion of such estate which is located in Puerto Rico shall be determined pursuant to the provisions of Section 2030.01.

**Section 2030.08.-- Deduction on Estates Invested or to be Invested in Activities Conductive to Greater Development in the Economy of Puerto Rico.--**

**(a)**  Gross decedent's estates of the persons listed below shall be entitled to the deduction allowed under subsection (a) of Section 2023.04:

**(1)**  From those Puerto Rico nonresidents not required to pay, in any jurisdiction outside Puerto Rico, estate taxes in connection with the value of the investments referred to in said Section;

**(2)**  From those Puerto Rico nonresidents who, due to the laws of their country of residence, are not able to claim as a deduction or as credit against estate taxes paid in said country, the taxes that would be imposed in Puerto Rico on such investments; or

**(3)**  From those Puerto Rico nonresidents who, due to the laws of their country of residence, are only able to partially claim as a deduction or as a credit against estate taxes payable in said country, the taxes that would be imposed in Puerto Rico on the value of such investments.

**(b)**  The deduction provided under subsection (a) of Section 2023.04 of this Subtitle shall only apply to that portion of the estate tax which can be imposed in Puerto Rico on said investments that is not deductible or creditable against estate taxes to be paid in said country on such investments.

**(c)**  In order for any person to be entitled to avail him/herself of the provisions of subsections (a) and (b), he/she shall file together with his/her tax return any documents as the Secretary may require by regulation. If such person fails to submit the documents required taxes shall be determined without taking into consideration the deduction allowed under this Section. If proven to the satisfaction of the Secretary that such person is entitled to this deduction, the appropriate refund shall be made after the requirements established under Subtitle F have been met.

### Section 2030.09.-- Fixed Exemption.--

**(a)**  The sum of ten thousand dollars ($ 10,000) shall be exempt from the gross estate of any decedent who is not a United States citizen.

**(b)**  As for United States citizens who are Puerto Rico nonresidents, whose decedent's estate is subject to taxes imposed by Section 2030.01, the exemption shall be the greater amount between:

**(1)**  The sum of thirty thousand dollars ($ 30,000); or

**(2)**  The amount resulting from the proportion between the value of the joint gross estate of the decedent subject to estate taxes in both jurisdictions, multiplied by sixty thousand dollars ($ 60,000).

The maximum exemption determined under this Section shall be granted only if, in addition to the tax return required in Section 2051.01, a certified copy of the estate tax return, as liquidated, or the release from the requirement of filing the same or from paying taxes in the appropriate jurisdiction, is submitted.

### CHAPTER 4 --  GIFT TAX

### SUBCHAPTER A --  DETERMINATION OF TAX LIABILITY

### Section 2041.01.-- Imposition and Rate of Tax.--

**(a)**  There shall be imposed for each calendar year, a tax computed pursuant to the provisions of this Section on any transfer of property by gift, made during such calendar year, regardless of whether the person making such gift is a Puerto Rico resident or nonresident.

**(b) Tax Computation.--**  The tax imposed by this Section for each calendar year shall be based on a ten percent (10%) tax rate, using as base to determine such tax the fair accrued market value of taxable gifts made during the calendar year for which the tax is being computed.

### Section 2041.02.-- Duty to Pay Taxes and Keep Records.--

(a)  **Duty to Pay Taxes.--**  The tax imposed by Section 2041.01 of this Subtitle shall be paid by the donor, and if such tax or any portion thereof is not paid on or before the due date therefor, the person receiving the gift shall also be personally liable, with all his/her property, for such tax up to the total sum of the value of the gift received by him/her.

(b)  **Requirement to Keep Records.--**  All donors shall be required to keep and preserve documents relative to any gifts made, as well as the receipts for taxes paid, for a period of four (4) years from the date on which the tax return was filed or the due date to file the same, including time extensions, whichever is the later date.

### Section 2041.03.-- Definition of Taxable Gifts.--

(a)  **General Definition.--**  Taxable gift means the amount of gifts made during a calendar year, minus deductions and exemptions established in Subchapter 2 of this Chapter.

(b)  **Excluded Gifts.--**  For purposes of subsection (a), the first ten thousand dollars ($ 10,000) given as a gift to each person in each calendar year shall be excluded from the amount of gifts. This exclusion shall not apply if the amount of the gift consists of future interests. For purposes of this Section, in the case of married individuals, each spouse shall be entitled to the exclusion provided herein.

### Section 2041.04.-- Credit for Gift Taxes Paid in Another Jurisdiction.--

There shall be credited against the tax imposed by Section 2041.01, the amount of any gift tax actually paid to the United States of America, or to any foreign country, in connection with any property, wherever located, whose value has been determined pursuant to the provisions of this Subchapter and has been included in the total sum of taxable gifts. The credit provided in this Section shall be allowed and computed under all conditions, provisions and limitations provided in Section 2024.02 in the same way as if the gift had been a transfer by inheritance or legacy and the tax for which credit is being claimed had been a tax on decedent's estate, succession or inheritance, except that the credit provided in this Section shall be allowed and determined without limitation as to whether the property is located in the United States of America or in another foreign country where such tax is paid.

### SUBCHAPTER B --  THE TERM "GIFT"

### Section 2042.01.-- Definition of Gift.--

(a)  **In General.--**  The value of gifts, for purposes of this Chapter, shall include, in the case of a donor who is a Puerto Rico resident, the value of any property, wherever located, that such donor transfers by gift to another person. As for persons making gifts who are Puerto Rico nonresidents, such term shall include any property that such donors transfer in the form of a gift, only if such property is located in Puerto Rico pursuant to the provisions established in subsection (b).

(b)  **Property Located in Puerto Rico.--**  For purposes of this Chapter, the following shall be deemed to be property located in Puerto Rico:

(1)  Any property of a nonresident that is in fact located in Puerto Rico;

(2)  **Shares.--**  All shares issued by a domestic corporation or partnership; and

(3)  Any intangible property physically located in Puerto Rico, except for bonds, notes or other obligations issued or to be issued by the Government of Puerto Rico or its municipalities, or by public authorities or corporations of either the Government or the municipalities, for money taken on loan when both the person making the gift and the person receiving the gift are nonresidents of the Government of Puerto Rico. The place of location of these bonds, notes or other obligations shall not be taken into account when determining whether this exemption is in order.

**(c)  Valuation of Property Transferred in the Form of a Gift.--**  For purposes of this Chapter, the value of the property, possessions or rights transferred by gift, subject to be appraised pursuant to this Subtitle, shall be the market value of these on the date of the transfer as such value may be determined in Section 2022.02 for each particular case.

**Section 2042.02.-- Deduction in Connection with Properties Located in Puerto Rico.--**

**(a)**  The value of property located in Puerto Rico, as defined and listed in this Section, on the date of the transfer, shall be deductible from any transfer by gift made by a Puerto Rico resident.

**(b)**  For purposes of this Section, the term "property located in Puerto Rico" means and shall include the following:

**(1)**  Except as provided in this Section, all real and personal property located in Puerto Rico belonging to a Puerto Rico resident. As for personal property of the kinds described in paragraphs (2) through (8) of this subsection, the deduction shall be limited to those properties that meet the description stated in such paragraphs.

**(2)**  Stock certificates issued by any domestic corporation or partnership, provided that, when the donor holds over ten percent (10%) of the stock (by value or voting power) in said corporation or partnership, such stock shall be deemed to be property located in Puerto Rico only if the domestic corporation or partnership earns not less than eighty percent (80%) of its gross income for the three (3) year period ending at the close of its taxable year before the date the gift was made, or the period that may correspond from the date of existence of such corporation or partnership, from the exploitation of a trade or business. For purposes of determining if a domestic corporation or partnership meets the requirement of having eighty percent (80%) or more of its gross income is earned from exploitation of a trade or business, the gross income of any corporation or partnership in which such domestic corporation or partnership holds, directly or indirectly, over fifty percent (50%) of the stock (by value or voting power).

**(3)**  Stock certificates issued by any foreign corporation or partnership, when not less than eighty percent (80%) of the gross income of such foreign corporation or partnership as of the three (3) year period ending at the close of its taxable year before the date the gift was made, or the period that may correspond from the date of existence of such corporation or partnership, when such income was actually earned from the exploitation of a trade or business in Puerto Rico pursuant to the provisions of Subtitle A of this Code, provided, that when the donor holds over ten percent (10%) of stock (by value or voting power) in such foreign corporation or partnership, for purposes of determining if such corporation or partnership meets the requirement of having actually earned eighty percent (80%) of its income from the exploitation of a trade or business in Puerto Rico for the period mentioned above, the gross income of any foreign corporation or partnership in which such foreign corporation or partnership holds, whether directly or indirectly, over fifty percent (50%) of stock (by value or voting power).

**(4)**  Bonds, notes or other debentures issued by:

**(i)**  The Government of Puerto Rico;

**(ii)**  Municipalities located within the jurisdiction of the Government of Puerto Rico;

**(iii)**  Public authorities or corporations of the Government of Puerto Rico and its municipalities, which belong to a donor who is a Puerto Rico resident.

**(5)**  Bonds, notes or other debentures of a Puerto Rico resident or domestic corporation or partnership, or secured with real property located in Puerto Rico, or belonging to a foreign corporation or partnership when not less than eighty percent (80%) of the gross income of such foreign corporation or partnership for the three (3)-year period ending at the close of its taxable year before the transfer by gift, was earned from sources in Puerto Rico under the provisions of Subtitle A of this Code, belonging to a Puerto Rico resident.

**(6)**  Annuity contracts as defined under Subtitle A of this Code and individual retirement accounts that are eligible under such Subtitle.

**(7)**  Deposits, certificates of deposit and savings accounts with persons engaged in the banking business in Puerto Rico, insofar as the accounting for such deposits, certificates or savings accounts is kept by branches in Puerto Rico.

**(8)**  Deposits, certificates of deposit, and savings accounts in savings and loans associations, credit unions or similar institutions conducting business in Puerto Rico, insofar as the accounting for such deposits, certificates or savings accounts is kept by branches in Puerto Rico.

## Section 2042.03.-- Purely Gratuitous, Onerous, and Remunerative Gifts.--

**(a)  In General.--**  In determining the value of gifts, purely gratuitous as well as onerous gifts, as defined in the Civil Code of Puerto Rico, shall be both included. Notwithstanding the foregoing provisions, of the value of remunerative gifts made for services rendered to the donor, the gift shall only be deemed to be that portion of the value thereof that exceeds the amount that is properly includible in the gross income of the person receiving the gift under Subtitle A of this Code.

**(b)  Special Rules for Onerous Gifts.--**  For purposes of the taxes imposed by this Chapter, the market value of the obligation imposed on the person receiving the gift on the date the gift is made, shall be excluded from the value of onerous gifts. No amount whatsoever shall be excluded from such obligation if the person receiving the gift is a relative of the transferor up to the third degree of consanguinity or the second degree of affinity.

## Section 2042.04.-- Payment of Obligations Belonging to Another Person.--

The amount paid by a person (who shall be the donor) to satisfy in whole or in part any obligation for which another person (who shall be the person receiving the gift) is responsible, shall be deemed to be a gift, insofar as there is no sufficient consideration in money or its equivalent, when making such payment.

## Section 2042.05.-- Discharge of Indebtedness.--

The value of debts discharged in whole or in part by the creditor (who shall be the donor) in favor of the debtor (who shall be the person receiving the gift) shall be included in the total sum of the gifts, insofar as there is no sufficient consideration in money or its equivalent, and insofar as such debt discharge does not constitute taxable income for purposes of Subtitle A. The cancelling of debts that are actually bad debts shall not be deemed to be a gift for purposes of this Chapter.

## Section 2042.06.-- Transfers in Trusts.--

The value of any property transferred in trust shall be included in the total sum of gifts insofar as there is no sufficient consideration in money or its equivalent was involved in said transfer.

## Section 2042.07.-- Property Transfer for Less than its Value.--

When a property is transferred for less than its value, that amount which constitutes the difference between the property value and its price, paid in money or its equivalent, shall be included in the total sum of gifts. For purposes of this Chapter, the donor shall be the assignor of the property and the person receiving the gift shall be the acquirer of such property, as established in this Section. In such cases, the assignor shall be required to evince with legitimate proof that the sales price was the property's fair market value on the date of the transaction.

## Section 2042.08.-- Insurance Policy Transfers.--

The value of any insurance policy or annuity contract, payable on a fixed date, transferred or assigned with no sufficient consideration in money or its equivalent involved, shall be included in the total sum of gifts. The payments of premiums of any kind of insurance which have been made directly or indirectly on behalf or in representation of any policy holder shall also be included. For purposes of this Section, the policy holder shall be deemed to be the person who signed the policy agreement or who holds or has control over the same.

### Section 2042.09.-- Benefits from Certain Life Insurance Policies.--

Except in cases in which the proceeds of any insurance policy are included in the gross estate of a decedent, the proceeds of any policy shall be a gift if the person paying the premiums on such policy is not the same person who receives the policy proceeds when the same is liquidated. In these cases, the policy beneficiaries shall be required to pay the appropriate taxes.

### Section 2042.10.-- Joint Responsibility in Connection with Marital Asset Gifts.--

The marital property, with its assets, as well as both spouses with their private property, shall be severally responsible for the taxes imposed by Section 2041.01, in connection with property given as gifts, which is part of the marital community property.

### Section 2042.11.-- Transfers Made by Persons Over the Age of Sixty-Five.--

Any transfer made by a person over the age of sixty-five (65) in favor of his/her ancestors, his/her progeny or any other person as a natural demonstration of his/her liberality, shall be deemed to be a gift, unless the taxpayer shows that the transfer thus made involved sufficient consideration in money or its equivalent and that such consideration was derived, whether directly or indirectly, from the acquirer's income or property.

### Section 2042.12.-- Other Gifts Includible in the Decedent's Estate.--

If pursuant to the last sentence of Section 2022.01(a), a gift made not later than the time of death of the donor were not to be reported and paid for as provided under such Section, then said gift shall be included in the gross estate of the donor, assigning to such gift the value it had at the time of death of the donor.

### Section 2042.13.-- Special Deduction for Gifts Made to Disabled Children.--

In determining the value of taxable gifts for each calendar year, an annual deduction on the first five thousand dollars ($ 5,000) that the donor transfers to each one of his/her children, whether born in wedlock, out of wedlock or adopted, who has been ruled to be permanently disabled by a competent court, shall be allowed in addition to all other deductions allowed under this Subtitle.

### Section 2042.14.-- Special Deduction for Gifts Made for Educational Purposes and Medical Expenses.--

In determining the value of taxable gifts for each calendar year, in addition to all other deductions allowed under this Subtitle, there shall be allowed an annual deduction on the amount paid:

> **(a)** To an educational organization that normally maintains a permanent faculty and curriculum and that normally has students regularly enrolled that attend the place where the institution regularly carries out its educational purposes, to cover tuition for the education or training of an individual; or

> **(b)** To any person or entity that offers medical assistance, to cover the expenses incurred by an individual for such assistance. For purposes of this subsection, the term "medical assistance" means:

>> **(1)** The diagnosis, cure, mitigation, treatment or prevention of diseases;

>> **(2)** Any medical intervention affecting any bodily structure or function;

2011 PR H.B. 3070

(3)   Transportation expenses incurred primarily and which are essential to meet the provisions in paragraphs (1) and (2);

(4)   Amounts paid by insurance which cover the medical assistance mentioned above.

(c)   **Limitation.--**   The deduction provided in this Section shall not be allowed in those cases in which the amount has been paid to cover the expenses of an individual with whom the donor has an obligation to provide support.

## Section 2042.15.-- Deduction of Gifts Made for Public, Charitable, and Religious Purposes.--

(a)   **Puerto Rico Residents.--**   When computing the value of taxable gifts for the calendar year, a deduction shall be allowed to donors who are Puerto Rico residents, on all gifts made during said calendar year to or for the use of any of the entities or organizations mentioned in Section 2023.05 of this Subtitle and subject to the rules and limitations established thereunder.

(b)   **Puerto Rico Nonresidents.--**   When computing the value of taxable gifts for the calendar year, a deduction shall be allowed to donors who are Puerto Rico nonresidents, on all gifts made during said calendar year to or for the use of any of the entities or organizations mentioned in Section 2030.06(a)(2) and subject to the rules and limitations established thereunder.

## CHAPTER 5 --   TAX RETURNS, PAYMENT OF TAXES, PROCEDURE AND ADMINISTRATION

## SUBCHAPTER A --   TAX RETURNS AND PAYMENT OF TAXES

## Section 2051.01.-- Final Gross Decedent's Estate Tax Return.--

(a)   **Final Tax Return to be Filed by the Executor.--**   All Executors shall file with the Secretary, within a term of nine (9) months immediately after the time of death of the decedent, a final tax return, under oath, observing such requirements as the Secretary may provide by regulation, circular letter, informational bulletin or administrative determination of a general nature, which determines the decedent's estate tax imposed by this Subtitle. Except in cases in which the Executor has failed to include all the information or documents required, the Secretary shall have a term not greater than thirty (30) days, counted from the date of having filed the return, to issue an opinion in connection with those properties located in Puerto Rico which have been included in the final decedent's estate tax return. In those cases in which the Secretary does not issue an opinion within the term established herein, the Executor may request a decedent's estate tax return certification. Such certification shall state that the term established herein has elapsed, that the certification replaces the release, and that such certification constitutes a legitimate and official document before administrative agencies, including the Property Registry and the Courts of Justice, to continue conducting the transactions relative to the disposal of such properties located in Puerto Rico which have been included in said final tax return.

(b)   **Tax Return to be Filed by Beneficiary.--**   If the Executor is unable to file a final tax return that is complete in terms of any portion of the gross estate of the decedent, but is aware of its existence, he/she shall include in the final tax return that he/she files a description of such portion and, if known to him/her, the names of each and every person with any kind of share therein. Within thirty (30) days after receiving notice from the Secretary, the person with an interest in the property shall file a final tax return that includes that portion of the gross decedent's estate that had not been included in the final tax return filed by the Executor.

(c)   The Secretary may require, by regulation, circular letter, informational bulletin or administrative determination of a general nature, for the tax return required under this Section to be filed using electronic media.

**(d)**  If after having filed a decedent's estate tax return, subject to the provisions of subsection (a) of this Section, the same were to be amended to include additional property whose value exceeds twenty-five percent (25%) of the total value of the gross decedent's estate originally reported, such amended tax return shall entail payment of additional fees equal to ten percent (10%) of the difference between the amount of the estate as reflected in the original tax return and the amount as reflected in the amended tax return.

**(1)**  The Secretary shall have discretion to exonerate any person in whole or in part from payment of such additional fees in those cases in which just cause for the amendment is shown. The Secretary is hereby authorized to establish by Regulation, circular letter, informational bulletin, or administrative determination of a general nature, the circumstances and requirements to request the exoneration provided in this paragraph.

**Section 2051.02.-- Tax Returns and Information Statements in Connection with Taxes on Gifts.--**

**(a)  Tax Return to be Filed by Donor.--**  Any person who in any calendar year makes any gift in excess of the ten thousand dollars ($ 10,000) annual exemption per person receiving the gift as provided in subsection (b) of Section 2041.03 shall, not later than January 31 of the year following the calendar year in which the gift was made, file with the Secretary a tax return under oath, observing such requirements and such manner as the Secretary may provide by regulation, circular letter, informational bulletin, or administrative determination, and reporting the amount thereof and the taxes to be paid. Notwithstanding the foregoing provisions, such tax return shall be required in all cases in which the gift is real property. When the gift is made out of marital community property, the tax return shall be signed by both spouses for purposes of applying Section 2042.10. Otherwise, the gift shall be taken to be made out of any marital community property or private asset of the spouse making the gift.

**(b)  Information Statement by Person Receiving a Gift.--**  Any person who during any calendar year receives any gift, which is not made before a notary public and which exceeds the ten thousand dollars ($ 10,000) exemption per person receiving the gift as provided in Section 2041.03(b), shall, not later than February 28 of the year following the calendar year in which he/she received the gift, file with the Secretary a statement under penalty of perjury, in such manner as the Secretary may provide for by Regulation, circular letter, informational bulletin, or administrative determination of a general nature, stating the value of such gift, the date on which such gift was received, and the address and age of the donor.

**(c)  Information Statement by Notary Public.--**  Any notary who authorizes any document in connection with a gift shall notify the Secretary of such a fact, under penalty of perjury, in such manner as the Secretary may provide by Regulation, circular letter, informational bulletin or administrative determination of a general nature, within ten (10) days after the date such document was executed.

**(d)**  The Secretary may require by regulation, circular letter, informational bulletin or administrative determination of a general nature that the tax returns and information statement required under this Section are filed electronically.

**Section 2051.03.-- Time Extension to File Tax Returns or Statements.--**

The Secretary may, pursuant to such rules and regulations as he/she may establish to that effect, grant reasonable time extensions to file the tax returns referred to in this Subtitle, except that in cases in which the person required under this Subtitle to file such tax returns is not in Puerto Rico, the time to file the same may not be extended for more than six (6) months.

**Section 2051.04.-- Keeping Documents and Filing Special Tax Returns.--**

**(a)**  Any person subject to payment of any taxes imposed by this Subtitle or responsible for collecting such taxes and paying them to the Secretary, shall keep such attestations, submit under oath such statements, file such tax returns, and meet all such requirements as the Secretary may provide by regulation.

**(b)**  The Secretary, when necessary in his/her judgment, may require by notice that any person file such tax return, submit under oath such statements, or keep such attestations as the Secretary may consider necessary to determine whether such person is or is not subject to payment of taxes under this Subtitle.

## Section 2051.05.-- Public Nature of Tax Returns.--

**(a)  Public Document and Inspection.--**

**(1)**  All tax returns filed pursuant to the provisions of this Subtitle shall constitute public documents and be subject to public inspection and examination to such extent as authorized by the Secretary by rule and/or regulation.

**(2)**  Whenever a tax return is subject to inspection by any person, such person shall be issued, after making a written request, a certified copy of such tax return pursuant to such rules and regulations as the Secretary may approve. The Secretary shall fix a reasonable fee for providing such copies.

## Section 2051.06.-- Payment of Taxes.--

**(a)  Time of Payment.--**  Taxes imposed by this Subtitle shall be paid with no need for assessment, notice or requirement by the Secretary, within the following terms:

**(1)  Decedent's Estates.--**  As for decedent's estate taxes imposed by Sections 2021.01 and 2030.01, within nine (9) months immediately following the time of death of the decedent.

**(2)  Gifts.--**  As for gift taxes imposed by Section 2041.01, on January 31 of the year following the calendar year in which the gift was made, if the tax return is being filed by the donor, or on February 28 of the year following the calendar year in which the gift was made if the tax return is being filed by the person receiving the gift.

**(b)  Voluntary Advance Payment.--**  Any taxes imposed by this Subtitle may be paid, at the taxpayer's choice, before the date prescribed for payment thereof.

**(c)  Advance Payment when Taxes are in Jeopardy.--**  Advance payments when taxes are in jeopardy shall be governed by Section 2051.11.

## Section 2051.07.-- Sale of or Encumbrance on Decedent's Property and Release of Funds to Pay Taxes.--

**(a)**  In the event that there are not sufficient funds to pay the taxes imposed by this Subtitle, as well as any other taxes owed to the public treasury, the Executor may request, and the Secretary is hereby authorized to approve, that, before the corresponding legal transaction, any portion of the decedent's property be sold or encumbered in any way, when indispensable in order to have access to sufficient funds to pay the taxes mentioned above as provided in Section 2054.02. The Executor shall be required, when the property is sold or encumbered, to withhold such amounts of money as necessary to pay the amount of taxes owed and to immediately send such amounts to the Secretary.

**(b)**  The corresponding property registrar is hereby authorized in these cases to record such recordable documents executed to that effect, pursuant to the terms of the conditioned authorization granted by the Secretary.

**(c)**  For purposes of this Section, the release of funds from the decedent's estate, as provided in Section 2054.02(b), may be authorized.

## Section 2051.08.-- Time Extension on Payment.--

**(a)  Granting the Time Extension.--**  When the Secretary determines that paying any portion of the taxes imposed on the time established to make such payment would impose an onerous burden on the taxpayer, the Secretary may, after the person with such tax liability has made a written request, grant a time extension on the date of payment of such portion of taxes for a period that shall not exceed:

**(1)  Taxes According to Tax Return.--**  As for decedent's estate or gift taxes determined according to the information reported on the filed tax return, ten (10) years counting from the time of death or the time the gift was made.

**(2)  Decedent's Estate and Gift Tax Deficiencies.--**  As for deficiencies in decedent's estate taxes as well as in gift taxes as determined by the Secretary, three (3) years counting from the date such deficiency is imposed and assessed.

**(b)  Negligence.--**  In the cases established in paragraph (2) of subsection (a), no time extension whatsoever shall be granted if the deficiency has been caused by negligence or by intentional disregard of rules and regulations or by fraud with the intent to evade payment of taxes.

**(c)  Bond.--**  When a time extension has been granted for payment of taxes or deficiencies pursuant to the provisions of this Section, the Secretary may demand that a bond be posted before him/her, subject to his/her approval, which bond shall not be greater than double the amount of the taxes for which the time extension was thus granted, with such securities as the Secretary may judge necessary.

**(d)  Accepting as Security for Properties Part of the Decedent's Estate or Being Given as a Gift.--**  Properties that are part of a decedent's estate or which are being given as a gift may be accepted by the Secretary, for purposes of meeting the bond requirement mandated by subsection (c) if, in the Secretary's judgment, the value of such properties constitute sufficient security for the payment of taxes pursuant to the terms of the time extension.

### Section 2051.09.-- Time Extension on Payment for Controlled Businesses.--

**(a)  Allowable Time Extension.--**  If the value of the interest in a controlled business that is included in determining the gross estate of a decedent who was (at the time of his/her death) a Puerto Rico resident, exceeds:

**(1)**  Thirty-five percent (35%) of the value of the gross estate of such decedent; or

**(2)**  Fifty percent (50%) of the taxable estate of said decedent, the Executor may elect to pay all or part of the taxes imposed by Section 2021.01 in two (2) or more (but not in excess of ten (10)) equal installments. Such election shall be made not later than the date provided in Section 2051.01(a) to file the return on such taxes (including any time extension granted to that effect) pursuant to such regulations as the Secretary may promulgate. If the election provided in this Section is made, the provisions of this Subtitle shall be applied as if it were the Secretary who was granting a time extension at the time of payment of such taxes. For purposes of this Section, the value shall be the value determined for purposes of the decedent's estate tax.

**(b)  Limitation.--**  The maximum amount of the tax that may be paid in installments as provided in this Section shall be that amount which is in a proportion equal to the taxes imposed by Section 2021.01 (minus the credits against such taxes and the deductions), as the proportion between the value of the interest in the controlled business that qualifies under subsection (a) and the total value of the gross decedent's estate.

**(c)  Controlled Business.--**  For purposes of this Section, the term "interest in a controlled business" means:

**(1)**  An interest as owner of a trade or business operated in Puerto Rico as an individual business;

**(2)**  An interest as partner of a partnership engaged in a trade or business in Puerto Rico, if:

**(A)**  Twenty percent (20%) or more of the total interest in the capital of such partnership is included in determining the gross estate of the decedent, or

**(B)**  Such partnership had eleven (11) partners or less,

**(3)**  Stock in a corporation engaged in a trade or business in Puerto Rico, if:

**(A)**  Twenty percent (20%) or more of the value of voting stock in such corporation is included in determining the gross estate of the decedent, or

**(B)  Such corporation had eleven (11) stockholders or less.--**  For purposes of this subsection, such determinations shall be made immediately before the time of death of the decedent.

**(d)  Special Rule for Interest in Two or More Controlled Businesses.--**  For purposes of subsections (a), (b), and (h)(1), interest in two (2) or more controlled businesses, each of which is included in determining the value of the gross estate of the decedent, over fifty percent (50%) of the total value of each business shall be treated as interest in a single controlled business. For purposes of the fifty percent (50%) requirement set forth in the preceding sentence, interest in a controlled business that represents the surviving spouse's interest in marital community property shall be deemed to be included in determining the gross estate of the decedent.

**(e)  Time to Pay Installments.--**  If the election provided in subsection (a) is made, the first installment shall be paid not later than the time selected by the Executor, executor or trustee, which shall not be after five (5) years following the date established in Section 2051.06(a) of this Subtitle, for the payment of taxes, and each subsequent installment shall be paid not later than such time in which one (1) year has elapsed from the time established in this subsection for the payment of the preceding installment.

**(f)  Prorating the Deficiency Over the Installments.--**  If the election set forth in subsection (a) is made to pay in installments the taxes imposed by Section 2021.01, and if a deficiency has been assessed, the same shall be (subject to the limitations established in subsection (b)) prorated over the installments. The portion of any deficiency thus prorated over any installment not due shall be collected at the same time and as part of such installment. The portion of any deficiency thus prorated or any installment paid or whose time of payment has become due, shall be paid by notice and demand by the Secretary. This subsection shall not apply if the deficiency is caused by negligence, intentional omission of rules and regulations or fraud with the intent to evade taxes.

**(g)  Time for the Payment Interest.--**  If a time extension has been granted under this Section on the time of payment of taxes, the interest established in the provisions of Subtitle F of this Code related to interest on deficiencies determined under this Subtitle, and in cases of bankruptcy and receivership, imposed on the unpaid amount of taxes attributable to the first five (5) years following the time established in Section 2051.06(a) of this Subtitle for the payment of taxes, shall be paid annually; the interest established in the applicable Sections of Subtitle F, on the unpaid amount of the taxes attributable to any period after the first five (5) years referred to in the above sentence, shall be paid annually at the same time and as part of each installment for paying taxes. The interest on any portion of a prorated deficiency before the time fixed for the payment of the last installment preceding the imposition of the deficiency, shall be paid upon notice and demand by the Secretary. In applying the provisions of Subtitle F of this Code related to the additions to taxes imposed by this Subtitle in cases of nonpayment, the time extension to pay the taxes declared in the tax return under this Subtitle, and the time extension to pay the deficiency determined under this Subtitle (relative to the imposition of an interest rate in certain time extensions for the payment of decedent's estate taxes), a deficiency that is entirely prorated over the installments under this Section shall be deemed to be taxes for whose payment a time extension has been granted under this Section.

**(h)  Accelerated Payments.--**

**(1)  Withdrawal of Business Funds; Disposal of Interest.--**

**(A)**  If:

**(i)**  Any interest in a controlled business described in subsection (a) is distributed, sold, exchanged or disposed of, or

**(ii)**  Money or other property of said business, which is attributable to said interest, is withdrawn, and

**(iii)**  The amount of such distributions, sales, exchanges, disposals, or withdrawals represents fifty percent (50%) or more of the value of the interest in the controlled business described in

subsection (a), then the time extension to make the payment provided in this Section shall no longer apply, and any unpaid portion of the taxes payable in installments shall be paid as determined by the Secretary.

**(B)** In the case of distributions to redeem stock on which Section 1034.09(e) of Subtitle A of this Code applies:

**(i)** Subparagraph (A)(i) shall not apply on withdrawals of money and distributions of property; and for purposes of said subparagraph, the value of the business shall be deemed to be said value, minus the amount of money and other properties thus distributed, and

**(ii)** Subparagraph (A)(ii) shall not apply on redeemed stock; and for purposes of said subparagraph, the interest in the controlled business shall be deemed to be such interest, minus the value of the redeemed stock.

**(iii)** This subparagraph (B) shall apply only if, not later than the time set forth in subsection (e) for the payment of the first installment that becomes due after the time the distribution was made, an amount of the taxes imposed by Section 2021.01 shall be paid, which amount shall not be less than the amount of money or other properties thus distributed.

**(C)** Subparagraph (A)(ii) shall not apply on a stock exchange conducted in compliance with a reorganization plan described in Section 1034.04(g)(1) of Subtitle A of this Code, but stock received in said exchange shall be treated, for purposes of subparagraph (A)(i), as interest that qualifies under subsection (a).

**(D)** Subparagraph (A)(ii) shall not apply on transfers of property of the decedent made by the Executor to a person entitled to receive such property under the last will and testament of the decedent or under the corresponding inheritance laws.

**(2) Omission in Payment of an Installment.--** If any installment under this Section is not paid not later than the date fixed for such payment (including any time extension on the date to pay such installment), the unpaid portion of the taxes payable in installments shall be paid upon requirement by the Secretary or his/her representative.

**(A) Option to Defer Time to Pay Deficiencies.--**

**(i) In General.--** If:

**(I)** after the tax return required in Section 2051.01(a) has been filed, a deficiency in the taxes imposed by Section 2021.01 is imposed, and

**(II)** the decedent's estate qualifies under subsection (a) the Executor may opt to pay the deficiency in installments.

**(B) Time of Choice.--** The choice provided in this subsection shall be made not later than sixty (60) days after the Secretary has required the payment of the deficiency, and the same shall be made in such manner as the Secretary may establish by regulation.

**(3) Effects of Choice on Payment.--** If a choice is made under this subsection:

**(A)** The deficiency shall be (subject to the limitation provided in subsection (b)) prorated over the installments that have become due as if the option had been made at the time of filing the estate tax return in Section 2051.01(a); and

**(B)** The portion of the deficiency thus prorated over any installment whose time of payment has become due, shall be paid at the time of making the election under this subsection.

**(C)** The portion of the deficiency prorated as indicated above over installments that have not become due shall be paid on the date on which such installments would have become due and payable if the election under subsection (a) was made.

(4)  This subsection shall not apply if the deficiency is caused by negligence, by an intentional omission of the terms established in the rules and regulations or by fraud with the intent to evade taxes.

## Section 2051.10.-- Receipts.--

By request, the Secretary shall give to the person who pays any taxes imposed by this Subtitle, a formal receipt, whether written or printed out, for the amount received. The form and contents of the receipt shall be determined by regulation.

## Section 2051.11.-- Acceleration of the Due Date to File Tax Return and Pay Taxes.--

(a)  **Taxes in Jeopardy.--Departure of Taxpayer or His/Her Representative from, or Removal or Concealment of Property in Puerto Rico.--**

(1)  **Decedent's Estate Taxes.--**  This Section shall apply on estate taxes, represented by the Executor, under the same circumstances in which the same applies to gift taxes. For purposes of this subsection, the term "for the calendar years elapsed until the time of such determination or for the current calendar year as of that time" shall mean the period comprised between the time of death of the decedent and the due date provided in Sections 2051.01 and 2051.06(a)(1) to file tax returns and to pay estate taxes.

(2)  **Gift Taxes.--**  If the Secretary determines that a taxpayer intends to suddenly leave Puerto Rico, or remove his/her property from Puerto Rico, or conceal his/her property in Puerto Rico, or engage in any other act intended to impair or render entirely or partially ineffective the procedures to collect gift taxes for calendar years elapsed until the time of such determination or for the current calendar year as of that time, unless such procedures are started without delay, the Secretary shall accelerate the due date to file the tax return and pay taxes and shall cause notice to be given to the taxpayer about such determination and statement, together with a demand for immediate payment of the taxes for preceding calendar years, or of that portion of such taxes that remain unpaid, regardless of whether the terms otherwise granted by law to file tax returns and pay taxes had become due or not, and such taxes shall become immediately due and payable. In any court proceedings instituted to enforce payment of taxes declared due and payable by virtue of the provisions of this Section, the determination made by the Secretary pursuant to the provisions herein, regardless of whether the determination was made after having notified the taxpayer or not, shall constitute for all purposes prima facie evidence of the taxpayer's intent.

## SUBCHAPTER B -- DEFICIENCY ASSESSMENT AND COLLECTION

## Section 2052.01.-- Examination of Tax Returns and Tax Assessment.--

Immediately after the tax return reporting the property has been received, together with payment of the corresponding self-assessed estate or gift taxes, the Secretary shall make a preliminary examination of such tax return and after having verified that all taxes referred to in Section 2054.01 owed by the decedent at the time of his/her death have been paid, the Secretary shall then issue a lien cancellation certificate pursuant to Section 2054.02, except in those cases in which the preliminary examination reveals that the property valuation made is seventy percent (70%) under its true value, in which case the Secretary may require an independent appraisal, such action shall interrupt the term established in Section 2054.02 until the information required is filed with the Secretary. Once the information requested by the Secretary has been filed, the term established in Section 2054.02 for issuing the corresponding lien cancellation certificate shall begin to run again.

Notwithstanding the above, the Secretary, within the term fixed under this Subtitle for such purposes, shall then examine the tax return in detail and determine the right amount of taxes for purposes of imposing any deficiency that may be in order.

**SUBCHAPTER C --** CLAIMS AGAINST ASSIGNEE AND FIDUCIARY

**Section 2053.01.-- Transferred Asset.--**

**(a)  Method to Collect.--**  There shall be imposed, charged, and paid the amount of the obligation that corresponds under the law to an assignee of a property belonging to a decedent or a person who made such gift, on account of the taxes imposed by this Subtitle (including interest, additional amounts, and additions to taxes as provided by law), except as provided further in this Section, in the same manner and subject to the same provisions and limitations that, in case of deficiency in taxes imposed by this Subtitle, including provisions for cases of nonpayment after notice and demand, the provisions authorizing payment demand and court proceedings to collect and the provisions related to claims and lawsuits on credits or refunds. Any such obligation may be either for the amount of the taxes declared in the tax refunds or for any deficiency in taxes.

**(b)  Prescription Term.--**  The prescription term for the assessment on any obligations of an assignee shall be as follows:

**(1)**  In the case of an obligation of an initial assignee of a property belonging to a decedent or the donor, within one year following the expiration of the prescription term for assessment in connection with the decedent;

**(2)**  In the case of an assignee's obligation of an assignee of a property belonging to a decedent or the person making such gift, within one (1) year following the expiration of the prescription term for the assessment in connection with the preceding assignee, but never two (2) years after the prescription term has expired for assessment in connection with the initial assignee; except that if before the prescription term for assessment on the assignee's obligation court proceedings had been instituted to demand payment of taxes or the obligation in connection with such taxes, against the initial assignee or against the last preceding assignee, respectively, then the prescription term for assessment of the assignee's obligation shall expire one (1) year after notice on court proceedings has been served.

**(3)**  When before the expiration of the term provided in paragraphs (1) or (2), whichever applies, to assess the obligation, the Secretary and the assignee have agreed in writing to assess the obligation after such term, the obligation may be assessed at any time before the expiration of the term agreed. The term thus agreed may be extended by means of succeeding written agreements made before the expiration of the term previously agreed.

**(c)  Term for Assessment to the Assignor.--**  For purposes of this Section, if the taxpayer has died, or if dealing with a corporation or partnership whose existence has been terminated, the prescription term for assessment to such taxpayer shall be the term that would have applied were not for the death or the termination of the existence of the corporation or partnership.

**(d)  Interruption of the Prescription Term.--**  The prescription term to assess the obligation of an assignee shall be, after having mailed to the assignee the notice of the final determination as provided in Subtitle F of this Code, interrupted for a term of sixty (60) days counting from the time such notice is mailed, and if resorted to the Court of First Instance against such notice, up to sixty (60) days after the time at which the court's decision becomes final and binding.

**(e)  Address to Notify Obligation.--**  In default of notice to the Secretary in Section 2053.02 regarding the existence of a trust relationship, the notice of an obligation enforceable under this Section with respect to taxes imposed by this Subtitle, it shall be sufficient for purposes of this Subtitle if such notice has been mailed to the person responsible for the obligation to his/her last known address, even when such person has died or is legally disabled, or in the case of a corporation or a partnership, even if no longer existent.

**(f)  Definition of Assignee.--**  As used in this Section, the term "assignee" includes a donee, an heir, a legatee, a successor, a beneficiary, and any participant in a distribution. Such term also includes, regarding

estate taxes, any person who in Section 2021.02 is responsible for the payment of any portion of such taxes.

**(g) Burden of Proof.--**   In a recourse before the Court of First Instance, the burden of proof shall lie with the Secretary, to demonstrate that the plaintiff is responsible as assignee of property belonging to a taxpayer, but not to demonstrate that the taxpayer is responsible for paying taxes.

**(h) Evidence.--**   After due request to the Court of First Instance, an assignee of a property belonging to a taxpayer shall be entitled to a preliminary examination of the books, papers, documents, mail, and other evidence of the taxpayer or a preceding assignee of the property belonging to a taxpayer, insofar as the assignee making the request is a party to the lawsuit before the Court of First Instance in terms of his/her responsibility regarding the taxes imposed on the taxpayer, including interest, penalties, additional amounts, and additions to taxes as established under this Subtitle. When making such request, the Court of First Instance may require submittal of all such books, papers, documents, mail, and other evidence, if in its judgment, the production thereof is necessary in order to allow the assignee to determine the taxpayer's or the preceding assignee's liability, insofar as such measure does not cause undue hardship to the taxpayer or the preceding assignee. Such examination shall be conducted on such date and place as the Court may designate.

## Section 2053.02.-- Notice of Trust Relationship.--

**(a) Fiduciary of Taxpayer.--**   When notifying the Secretary that any person is acting as a fiduciary, the fiduciary shall assume the powers, rights, duties, and privileges of such other person regarding taxes imposed by this Subtitle (except as otherwise specifically provided, and except that taxes shall be charged on the property of such other person), until notice is given that the trust relationship has been terminated.

**(b) Notice.--**   Notice under this Section shall be given pursuant to the regulations promulgated by the Secretary.

## SUBCHAPTER D --  TAX LIENS

## Section 2054.01.-- Preferred Liens.--

**(a) Lien on Transferred Property.--**   All taxes imposed by this Subtitle, and all other kinds of taxes already assessed and included or includible as discounts from the estate pursuant to Section 2023.03, shall constitute a preferred lien in favor of the Government of Puerto Rico on each and every property comprising the gross decedent's estate or being transferred as a gift, as the case may be. The lien provided in this Section shall originate at the time of transfer and shall be preferred lien over any debts, credits or obligations of any kind which originate at or after the time of such transfer and shall continue to be in effect until the same is cancelled, pursuant to the provisions in Section 2054.02.

Any notes, stock, bonds, and other securities, as such term is defined in Act No. 60 of June 18, 1963, as amended, known as the "Uniform Securities Act," subject to such lien, which have been acquired afterwards by a third party in good faith, by means of an adequate consideration, shall be released from the lien, but such lien shall then encumber all properties of the transferor.

**(b) Lien Regarding the Person and His/Her Property.--**   If any person required to pay any taxes imposed by this Subtitle forgets or refuses to pay such taxes after notice and demand from the Secretary, such amount (including any interest, penalties, additional amounts or additions to such taxes) shall constitute a lien in favor of the Government of Puerto Rico on all properties and property rights, whether real or personal, belonging to such person. The lien established under this subsection shall originate as soon as taxes have been imposed and the Secretary has demanded payment by notice and demand pursuant to the law. Such lien shall continue to be in effect until the same is cancelled, pursuant to the provisions of Section 2054.02.

Case:17-03283-LTS   Doc#:18803-15   Filed:10/27/21   Entered:10/27/21 03:33:51   Desc:
Debtors Ex. 105   Page 413 of 623
2011 PR H.B. 3070

Page 412 of 622

**Section 2054.02.-- Lien Cancellation.--**

**(a)  Obligation Has Been Met.--**  The Secretary shall, subject to such rules and regulations as he/she may promulgate, issue a lien cancellation certificate in connection with any and all property subject to the lien imposed in Section 2054.01, if the obligation secured by such lien has been fully met.

Notwithstanding the foregoing provisions, the Secretary shall not issue the certificate cancelling the lien in full on property intended for release from such lien, if it is proven that the self-assessed taxes under this Subtitle was not reasonably determined. Neither shall the Secretary issue the lien cancellation certificate in those cases in which the decedent or the donor holds over ten percent (10%) of the stock and the deduction for property located in Puerto Rico provided in subsections (b)(2), (b)(3), and (b)(5) of Section 2023.02 and under subsections (b)(2) and (b)(4) of Section 2042.02 is claimed, unless the corporation or partnership, whichever applies, is current in the payment of its tax obligations with the Department.

**(b)  Conditioned Authorization.--**  The Secretary may, notwithstanding the provisions in subsection (a) and subject to such rules and regulations as he/she may promulgate, issue a conditioned authorization regarding any lien imposed under this Subtitle in connection with any portion of property subject to such lien, if the Secretary determines that the value of the portion of such property subject to lien is, after having discounted all preceding liens, at least double the unpaid amount of the obligation secured by such lien. The purpose of such conditioned authorization shall be to sell the property or obtain financing for payment of any taxes imposed by the Government of Puerto Rico, the municipal governments, or any instrumentality thereof. When the proceeds of the sale do not cover the amount owed, the Secretary shall receive the amount of the proceeds of such sale as partial payment of the debt.

**(c)  Uncollectible Taxes.--**  The Secretary may, subject to such rules and regulations as he/she may establish, issue a cancellation or a conditioned authorization certificate, as the case may be, on the lien provided in Section 2054.01, if he/she ascertains that the taxes imposed, together with interest thereon, have become uncollectible by reason of the time elapsed.

**(d)  Term to Issue Lien Cancellation Certificate.--**  The Secretary shall issue the lien cancellation certificate provided in Section 2054.02 within a term that by no means shall be greater than thirty (30) days counting from the time to file the final estate tax return together with the payment of the corresponding self-assessed taxes in connection with the decedent's estate, as well as any such information as the Secretary may establish by regulation. Any tax returns filed with the Secretary that fail to include the documents required by law or by regulation, shall be treated as tax returns which had never been filed at all. The Secretary shall notify the executor or the heirs, within a term of thirty (30) days, as provided above, of any request for information which impedes accreditation for having filed the tax return and continuation of the procedures to issue the cancellation certification. Except in cases in which the corresponding tax obligation is in dispute, or all of the information or documents required have not been submitted, after expiration of the thirty (30) day term from the time of having filed the final tax return and the Secretary has not taken any action, the immediate issue of the lien cancellation certificate shall be mandatory at the request of any interested party.

Notwithstanding the preceding provisions, the parties may extend this term by mutual agreement when the time extension is convenient for the executor or the heirs.

**(e)  Effect of Full Cancellation or Conditioned Authorization Certificates.--**  A full cancellation or conditioned authorization certificate issued pursuant to the provisions of this Section shall by no means impair the rights of the Secretary to impose and collect taxes under this Subtitle regarding the transfer that originated the lien provided in Section 2054.01.


**Section 2054.03.-- Charging of Fees.--**

**(a)**  The Secretary is hereby authorized to charge such fees as he/she deems to be reasonable or convenient for the issue of lien cancellation certificates under the provisions of this Subtitle, provided, that

the Secretary may exempt from payment of such fees in cases in which the corresponding tax return is filed electronically.

**(b)** Funds collected on account of payment for issue of releases shall be accounted for separately from any other funds received by the Department. The Secretary shall use such funds to develop systems and procedures and to acquire the necessary equipment to streamline procedures inherent to the Division of Internal Revenues of the Department. Before using such funds, and chargeable to such funds, the Secretary shall submit annually an Expense Budget for approval by the Office of Management and Budget. Any remainder of such funds not used or encumbered by June 30 of each fiscal year, shall be transferred to the General Fund of the Government of Puerto Rico.

### Section 2054.04.-- Attachment and Collection.--

If any person subject to payment of any taxes imposed by this Subtitle forgets or refuses to pay such taxes within ten (10) days following the date of notice and demand by the Secretary, he/she shall collect such taxes, together with interest and additional amounts as required by law, by means of attachment and sale, in the same manner provided by law for collecting property taxes.

### Section 2054.05.-- Prohibited Actions Unless Document Crediting Lien Cancellation is Submitted.--

**(a)  Property Comprising Decedent's Estate.--**   Regarding any property subject to the lien imposed in Section 2054.01 of this Subtitle on account of having been transferred as inheritance, bequest or legacy, in connection to which a lien cancellation certificate as provided in Section 2054.02 of this Subtitle has not been submitted, the following rules shall be observed:

**(1)  Courts, Notaries, and Property Registrars.--**  Except in the specific cases authorized in Sections 2051.08 and 2051.01 of this Subtitle, no court shall approve the division or distribution, sale, surrender, assignment or mortgage foreclosure without there being a deduction, to be deposited with the court, of the proceeds of the auction, in favor of the Secretary, the amount of the taxes that he/she has determined or determines to be attributable to such property; and no notary shall authorize, issue or certify any document pertaining to a division or distribution, sale, surrender, assignment or mortgage on such property, with the exception from this prohibition of the certification of documents executed before the time of death of the decedent; and no property registrar shall record in any register under his/her care, any notary document, judgment or court action, executed, ruled or issued, in connection with any division or distribution, sale, surrender or mortgage of said property.

**(2)  Financial Institutions.--**   No financial institution shall surrender to the heirs, legatees or beneficiaries of a decedent the funds in accounts to the name of the deceased, or the deceased and another person jointly, in any amount that exceeds fifteen thousand dollars ($ 15,000), or twenty-five percent (25%) of the amount of such funds, whichever amount is greater, unless the Secretary authorizes a greater amount pursuant to the provisions in Section 2051.08, or that a lien cancellation certificate as provided in Section 2054.02 is submitted to the financial institution. For purposes of this Section, the term "financial institution" shall include banks, investment trusts, savings and loan associations, brokerage houses or securities firms, and savings and credit unions doing business in Puerto Rico.

**(3)  Safe Deposit Boxes.--**   Any person who, as a main or collateral function within his/her operations, shall be required to keep current, for inspection by and information of the Secretary, a Register with the names and addresses of the persons to whom such safe deposit boxes are leased during every calendar year, which Register shall include the number of each safe deposit box, the date of the lease contract, and in the event that such lease contract has been assigned, the date of assignment and the name and address of the assignee. When dealing with leases made out to two or more persons jointly, he/she shall keep the same information in connection with the co-lessees. Likewise, he/she shall keep a register indicating the date and time in which said person or the lessees open said safe deposit boxes. Such person shall not allow the safe deposit box to be opened by anyone when such safe

deposit box is leased by any decedent or by him/her jointly with any other person, without there being an authorized representative of the Secretary present.

**(4)  Insurance.--**   No person engaged in the insurance business shall surrender any amount before having obtained authorization from the Secretary, except in the event that the amount to be surrendered does not exceed five thousand dollars ($ 5,000) or forty percent (40%) of the cash amount of said insurance policy or agreement, whichever amount is greater, or except when the Secretary authorizes that a greater amount be surrendered pursuant to the provisions of Section 2051.08.

**(b)  Requirement to Notify Payments.--**   The persons listed in paragraphs (2) and (4) of subsection (a) shall give written notice to the Secretary about payments made under the provisions of such paragraphs within thirty (30) days following the date each payment is made. Such notice shall include the names and addresses of the persons receiving such payments, the amount paid, and the additional amount, if any, pending payment.

**(c)  Property Transferred by Gift.--**   Regarding any property subject to the lien imposed in Section 2054.01 on account of having been transferred by gift, in connection with which property no lien cancellation certificate as provided in Section 2054.02 is submitted, no registrar shall record in any register under his/her care, any notary instrument, judgment or court action executed, ruled, or issued in connection with any division, distribution, surrender, sale or mortgage on such property.

## SUBCHAPTER E --   MISCELLANEOUS PROVISIONS

### Section 2055.01.-- Execution of Transfer Documents.--

Any person who transfers any share, right, interest or other valuable intangible property that is transferable by endorsement or surrender, to any heir or any other person as a natural demonstration of his/her liberality, shall, within thirty (30) days following the time at which he/she made the transfer, execute before a notary public and send to the Secretary, a document that describes in detail the share, right, interest or intangible property transferred and providing a record of the total compensation received in exchange, if any, as well as the names and addresses of the parties involved in said transfer and the time of such transfer. Failure to comply with this requirement shall not entail any penalties, except for that specified in Section 2055.02 of this Subtitle.

### Section 2055.02.-- Inclusion of Property Comprised Within the Decedent's Estate When No Tax Return Has Been Filed.--

If after the time of death of the decedent, any heir or any other person as a natural demonstration of the decedent's liberality, should be holding any share, right, interest, or other valuable intangible property that is transferable by endorsement or surrender, which previously belonged to the decedent, in connection with which no gift tax return has been filed pursuant to Section 2051.02, such property shall be deemed to be part of the decedent's estate for purposes of the taxes imposed by Chapter 2 of this Subtitle.

### Section 2055.03.-- Statement of Assets and Liabilities.--

Insofar as, in the judgment of the Secretary, this is necessary to properly administer this Subtitle, the Secretary may demand from any person, by means of notice to that effect, that he/she submit a financial statement that includes all his/her assets and liabilities, with such details and in such manner as the Secretary may demand and on such date as the Secretary may specify, which date by no means may precede the date of notice by more than five (5) years.

### Section 2055.04.-- Presumptive Assessment.--

Insofar as the asset and liability adjustment concerning an estate (pursuant to the income reported for income tax purposes, with gifts made and notified, and with other adjustments that affect the estate, during the last five (5)

years preceding the time of death of the decedent) reveals that such estate has sustained an unjustifiable decrease after a reasonable allowance has been granted to cover subsistence expenses, it shall be presumed that such decrease arises from gifts not reported and the Secretary shall then impose and collect the corresponding taxes thereon as a deficiency, together with the additions to taxes provided under Subtitle F in connection with the additions to taxes imposed by this Subtitle in cases of fraud.

## Section 2055.05.-- Necessary Proof and Presumption of Accuracy.--

**(a)  Requirement to Prove Allegations.--**   The estate executor or the donor shall be required to prove his/her assertions or allegations with trustworthy proof, which he/she shall submit to the Secretary.

**(b)  Presumption of Accuracy.--**   The determinations made by the Secretary to administer this Subtitle shall have standing before the courts as presumptively accurate.

## Section 2055.06.-- Effect of Preceding Laws.--

The Internal Revenue Code of 1994, as amended, Act No. 167 of June 30, 1968, as amended, and Act No. 303 of April 12, 1946, as amended, and preceding laws which impose taxes on inheritances or gifts shall continue to apply pursuant to their terms in all cases in which the decedent has died or the gift has been made before the effective date of this Subtitle.

## SUBTITLE C --  EXCISE TAXES

## CHAPTER 1 --  DEFINITIONS AND GENERAL PROVISIONS

## Section 3010.01.-- General Definitions.--

**(a)**  For purposes of this Subtitle, the following terms shall have the meaning stated below:

**(1)  "Good".--**   Shall mean any object, device, or thing for use and consumption, regardless of its form, material or essence and regardless of its name.

**(2)  "Cost in Puerto Rico".--**   Shall mean and shall be determined in each case, as established hereinafter:

**(A)  Importers.--**   The "cost in Puerto Rico" shall be the sum of all the costs, excluding freight charges and insurance, that make possible the arrival of goods to the ports, regardless of its name or origin, including all types of royalties, payments for distribution rights, licenses or any other similar payment or commissions, plus ten percent (10%) of the sum of the related costs in this paragraph for freight and insurance. Notwithstanding the above, in the case of truck tractors, buses and trucks, the "cost in Puerto Rico" shall be the f.o.b. factory price quoted by the manufacturer of said motor vehicles to its distributors in Puerto Rico, plus ten percent (10%) of the f.o.b. factory price for freight and insurance.

In no case shall the cost in Puerto Rico be reduced by discounts for down payment or for discounts granted for volume of purchases, for sales volume or for considerations of a speculative nature, but it may be reduced in an appropriate measure for commercial discounts granted to make the prices stipulated in lists, catalogues, advertisements or other publications comparable to the prevailing market prices, or to convert the consumer price figures to wholesaler or retailer prices, provided that the Secretary determines that said reduction is duly justified under the circumstances to determine the cost in Puerto Rico. This definition shall be interpreted by the Secretary in a manner that is analogous to the existing one. The term "cost in Puerto Rico" shall not apply in the case of automobiles.

**(B)  Manufacturers.--**  The cost in Puerto Rico shall be sixty percent (60%) of the sales price. The cost in Puerto Rico shall not be reduced by any tax paid. The manufacturer's sales price shall not be reduced by discounts for down payments or by discounts granted for volume of sales or considerations of a speculative nature.

**(C)**  The preceding notwithstanding, the Secretary may determine the "taxable price in Puerto Rico" in accordance with the method that reflects the value or price of the goods subject to taxation, when he/she deems that the documents needed to establish the "cost in Puerto Rico" are not authentic, are insufficient or inadequate for such purpose; or when, on the basis of the documents submitted by the taxpayer to establish the "cost in Puerto Rico", it differs considerably from the "cost in Puerto Rico" for similar goods; or when no rule is prescribed to determine the "cost of Puerto Rico" in this Subtitle.

**(3)  "Manufacturer".--**  Shall mean any person engaged in the manufacture of any goods, including assemblers or finishers of goods, and persons who further process partially processed goods.

Any person who begins or undertakes the processing or manufacturing of any goods subject to taxation under this Subtitle shall notify so to the Secretary and post a bond in favor of the Secretary in the manner provided by regulations.

**(4)  "Date of Introduction".--**  Shall mean the day the goods are unloaded at the port. However, when due to applicable customs, military or sanitary regulations or for strikes at the ports or other labor conflicts, or when for any event of *force majeure*, the taxpayer or the person liable for the payment of the excise taxes is prevented from taking possession of the goods introduced from abroad within the term of thirty (30) days counting from their arrival in Puerto Rico, the date of introduction shall be deemed as the date on which the customs office or the appropriate authority allows the taxpayer or the person liable for the payment of the excise taxes to take possession of the goods introduced, or the date on which the Secretary of Labor and Human Resources officially announces the termination of the strike, or that on which, in the judgment of the Secretary, the circumstances of *force majeure* have ceased.

In the case of tax exempt goods introduced into the Foreign Trade Zones in Puerto Rico, the date of introduction shall be the date on which the merchandise is removed from the premises of said zone, event which shall be verified through the presentation of the document known as the "Statement of Entry for Consumption" of the Customs Service of the United States of America.

**(5)  "Introduction".--**  Shall mean the arrival of goods to the ports of Puerto Rico from abroad that are effectively unloaded.

**(6)  "Introducer".--**  Shall mean any person who receives or acquires goods from abroad, either as a consignee or through a bank, shipping agent or any other middleman.

**(7)  "Municipality".--**  Shall mean all the municipal governments of the Government of Puerto Rico.

**(8)  "Person".--**  Shall mean any natural or juridical person.

**(9)  "Tax-exempt Person".--**  Shall mean every person who by reason of his/her status and in accordance with the requirements and provisions of this Subsection, is legally qualified to acquire taxable goods without the need to pay the excise taxes or taxes established in this Subsection.

**(10)  "Taxable Price in Puerto Rico".--**  Shall mean the "cost in Puerto Rico" plus twenty percent (20%) of said cost, except in the cases below:

**(A)  "Buses, Truck Tractors, and Trucks".--**  In the case of buses, truck tractors and trucks introduced by any person, the "taxable price in Puerto Rico" shall be determined as follows:

**(i)  "New Buses, Truck Tractors, and Trucks".--**  In this case, the "taxable price in Puerto Rico" shall be the f.o.b. factory price quoted by the manufacturer of such motor vehicles to its distributors in Puerto Rico, multiplied by 1.32.

(ii)  **"Used Buses, Truck Tractors, and Trucks".--**  In this case, the "taxable price in Puerto Rico" shall be that which appears in an independent publication recognized by the industry for similar models (*Black Book, Blue Book, Automotive Invoice Services,* and others) including the value of any optional equipment installed. This way, the depreciation for the corresponding model shall be recognized. The quantity thus reflected shall be multiplied by 1.32.

In the case of automobiles, the "taxable price in Puerto Rico" shall be the "suggested consumer sales price", as indicated herein.

**(11)**  "Suggested Consumer Sales Price" shall mean, for purposes of this Subtitle, the following for each of the cases stated below:

**(A)  New Vehicles for Sale.--**  In the case of new automobiles introduced from abroad by distributors and authorized dealers, the suggested consumer sales price shall mean the basic cost of the automobile model, including the optional factory-installed equipment, plus the insurance and import freight, the estimated sales profit margin, and the costs associated with the preparation and delivery of the vehicle.

The "Suggested Consumer Sales Price" shall be determined by the importer or distributor, as provided in Section 3020.08(c) before introducing the vehicle to Puerto Rico.

**(B)  New Vehicles for Private Use.--**  In the case of new automobiles introduced from abroad by persons who will use them for private purposes, the "Suggested Consumer Sales Price" shall be the suggested manufacturer's retail price as published in the most recent edition of the *Black Book New Car Market Guide* or the *Black Book Truck and Vans Guide* available at the time of introduction of the vehicle, depending on the corresponding vehicle, or in any other authoritative and independent source duly recognized by the industry, as determined by the Secretary. The quantity found in the corresponding publication shall then be multiplied by one point thirty (1.30) in order to configure the "Suggested Consumer Sales Price" shall be the suggested manufacturer's retail price as published in the most recent edition of the *Black Book New Car Market Guide or the Black Book Truck and Vans Guide* available at the time of introduction of the vehicle, depending on the corresponding vehicle, or in any other authoritative and independent source duly recognized by the industry, as determined by the Secretary. The quantity found in the corresponding publication shall then be multiplied by one point thirty (1.30) so as to configure the "Suggested Consumer Sales Price" in order to apply the tax rate and determine the excise tax payable.

**(C)  Used Vehicles for Sale.--**  In the case of used automobiles including vehicles known as "vans," "minivans," and customized vehicles, introduced from abroad by authorized dealers, the "Suggested Consumer Retail Price" shall be the suggested retail price, without any other increase or decrease, as it appears in the most recent edition of the *Black Book Used Car Market Guide* available at the date of introduction of the corresponding vehicle, or in any other authoritative and independent source duly recognized by the used car industry, as determined by the Secretary, under the classification of "wholesale clean" or its equivalent. The quantity thus reflected shall then be multiplied by one point forty (1.40) so as to configure the "Suggested Consumer Sales Price" in order to apply the tax rate and determine the excise tax payable.

Notwithstanding the foregoing, in the case of used automobiles regarding available models of the calendar year in which the taxable event takes place and of models of that calendar year or the immediately preceding calendar year, the "taxable price in Puerto Rico" shall be determined in the same manner as in the case of new automobiles, as applicable.

**(D)  Used Vehicles for Private Use.--**  In the case of used automobiles introduced from abroad by persons for their private use, the taxable price shall be that which appears in the column "Retail Clean" of the *Black Book Used Car Market Guide*, or the suggested retail sales price established by any other authorized independent source recognized by the industry, as determined by the Secretary, multiplied by one point thirty (1.30).

For purposes of this paragraph, "private use" shall mean particular, personal, private, own use or any other use that is not for the resale or sale to third parties.

**(E)  Ships.--**

**(i)  "New Ships for Sale".--**  In the case of new ships introduced by distributors and authorized dealers, the "Suggested Consumer Sales Price" shall mean the price for which the ship is retailed to the consumer (regardless of whether such ship is retailed by a seller different from the distributor or authorized dealer who introduced the ship), excluding the excise tax.

**(I)**  At the time of introduction, the distributor or authorized dealer shall estimate the consumer sales price for the corresponding shipment, including all the necessary pricing elements which make the presentation of the ships to the consumer possible, and which constitute the retail asking price of those ships.

**(II)**  The "consumer sales price" shall in no way be altered by units taken as "trade ins."

**(ii)  New Ships for Private Use or Used Ships for Private Use.--**  In the case of new ships introduced by persons for their private use, or used ships introduced by persons for their private use, that is, not for sale, the "consumer sales price" shall be the suggested sales price as published in any authorized and independent source duly recognized by the industry, as determined by the Secretary. The quantity reflected in the corresponding publication shall then be multiplied by 1.30 so as to configure the "consumer sales price" in order to apply the tax rate and determine the excise tax payable.

**(iii)  Used Ships for Sale.--**  In the case of used ships, the "consumer sales price" shall be the suggested sales price as published in any authorized and independent source duly recognized by the industry, as determined by the Secretary. The quantity thus reflected shall then be multiplied by 1.30 so as to configure the "consumer sales price" in order to apply the tax rate and determine the excise tax payable.

**(iv)**  Notwithstanding the foregoing, in the case of used ships models of the calendar year in which the taxable event takes place and of models of that calendar year or the immediately preceding calendar year, the term "consumer sales price" shall be determined in the same manner as in the case of new ships, as applicable.

**(12)  "Port".--**  Shall mean any pier, dock, wharf, terminal, air or maritime zone or port of entry of persons or goods from abroad, including all warehouses, businesses, stores and structures, facilities and the premises thereof.

**(13)  "Territorial Waters".--**  Shall mean those navigable waters extending up to 12 nautical miles off the coastal limits of the Government of Puerto Rico, as provided by Presidential Proclamation No. 5928 of December 27, 1998.

**(14)  "Secretary".--**  Shall mean the Secretary of the Treasury.

**(15)  "Bonded Warehouse".--**  Shall mean those buildings or premises authorized by the Secretary, used or destined to store, deposit and keep imported, or locally-manufactured merchandise subject to taxation, pursuant to this Subsection, but that are pending payment thereof. The bonded warehouses may be private or public. The private ones are those belonging to importers or local manufactures that solely and exclusively devote them to store their own products. The public ones shall be those in which products that belong to persons other than their owners or Executors, can be deposited.

**(16)  "Foreign-trade Zone".--**  Shall mean those areas in ports or adjacent to them, provided with facilities for loading and unloading, handling, manufacturing, exhibiting, storing, packing, classifying, cleaning or any other handling of merchandise within the area duly designated as such by the Foreign Trade Zones Board pursuant to the provisions of the U.S. Foreign-Trade Zones Act of June 18, 1934, as amended.

**(17)  "Ship".--**  Shall mean any concave construction made of wood, iron, steel, or any other material, which is capable of floating in water and which serves as a form of transportation, including every type of boat, barge, sailboat or vessel of any kind which can navigate on water.

**(18) "Heavy Machinery".--** Shall mean the machines and large tools used for agricultural, industrial, forest, maritime, or construction purposes, among others, including all types of equipment used for earthworks, such as excavators or paving equipment, but excluding trucks.

### Section 3010.02.-- Scope of Term "Include".--

For purposes of the terms and phrases defined in this Subtitle, the words "includes" and "including" shall not be construed as to exclude, omit or eliminate other matters within the meaning of the defined term. Likewise, the specified objects shall only be taken as an illustration or characterization but not as including the entire universe of the objects subject to the provisions of this Subtitle.

### Section 3010.03.-- Limitation to Set Taxes.--

No municipality, whether autonomous or not, of the Government of Puerto Rico may impose or collect a local excise tax on any goods subject to taxation under the provisions of this Subtitle, as established in Subtitle F.

### Section 3010.04.-- Application to Government Agencies.--

Except as provided in Chapter 3 of this Subtitle, regarding tax exemption to goods, the departments, agencies, administrations, bureaus, boards, commissions, offices, instrumentalities and public corporations, and municipalities of the Government of Puerto Rico, as well as the Legislative and the Executive Branch, shall be subject to the excise taxes established in this Subtitle, even though their enabling acts contemplate an exemption in the payment of an excise tax, except in those cases in which their enabling acts contain an exemption to the provisions of this Section, or to the predecessor of this section under Act No. 120 of October 31, 1994, as amended.

## CHAPTER 2 -- TAXES ON GOODS

### Section 3020.01.-- General Excise Tax Provision.--

An excise tax shall be imposed, collected, and paid, at the rates prescribed in Sections 3020.02 to 3020.07 of this Subtitle, on cement manufactured locally or introduced into Puerto Rico, sugar, plastic products, the introduction or manufacture of cigarettes, gasoline, aviation fuel, gas oil or diesel oil, crude oil, partially finished or finished by-products, as well as on any other mixture of hydrocarbons (excluding natural gas) and motor vehicles. The fixed excise tax shall apply if the goods have been introduced, sold, consumed, used, transferred or acquired in Puerto Rico, and it shall be paid only once, at the time and in the manner specified in Chapter 6 of this Subtitle. The application of the tax shall be subject to the exemptions granted in Chapter 3 of this Subtitle.

### Section 3020.02.-- Cement Manufactured Locally or Introduced by Dealers.--

A six-cent (6 [cents]) excise tax shall be imposed, collected and paid for each hundredweight or fraction thereof of all hydraulic cement, or substitute thereof, manufactured locally or introduced by dealers or local manufacturers who hold the license required in this Subtitle.

### Section 3020.03.-- Sugar.--

An excise tax of fourteen cents (14 [cents]) shall be imposed, collected, and paid for every pound or fraction thereof of all types of sugar, regardless of its state and its appearance and on all sugar substitutes. For purposes of this Subtitle, the term "sugar" shall mean and include cane sugar, beet sugar, corn sugar, sorghum sugar, or any other form of natural or artificial sucrose.

The sugar packaged in two-(2) or five-(5) pound bags or packages, or in any other denomination, shall bear, clearly and visibly attached or stamped, a stamp or label showing that the tax provided in this Section has been paid in the form and manner determined by the Secretary.

**Section 3020.04.-- Plastic Products.--**

A six point six percent (6.6%) excise tax of the taxable price in Puerto Rico shall be imposed, collected and paid on all plastic products described below, which have been manufactured outside Puerto Rico and that do not meet the standards established by the following entities:

Pipes and Fittings for Drinking Water

    **(1)** National Sanitation Foundation (NSF); Standard 61

    **(2)** American Society for Testing and Materials (ASTM)

    **(3)** American Water Works Association (AWWA); ANSI/AWWA C900-97 & C905-97; 909-97

    **(4)** FM Approvals, Class Number 1612

    **(5)** Underwriters Laboratories Inc., (UL)

Pipes, Conduits and Fittings for Electrical Use

    **(1)** Underwriters Laboratories Inc., (UL)

    **(2)** National Electrical Manufacturers Association (NEMA)

    **(3)** Canadian Standards Association (CSA)

Pipes and Fittings for Sanitary Use and Drainage

    **(1)** National Sanitation Foundation (NSF); Standard 61

    **(2)** American Society for Testing and Materials (ASTM)

    **(3)** The American Association of State Highway and Transportation Officials (AASHTO)

    **(4)** International Association of Plumbing and Mechanical Officials (IAMPO)

    **(5)** Canadian Standards Association (CSA)

Plastic Furniture

    **(1)** American Society for Testing and Materials (ASTM)

**Section 3020.05.-- Cigarettes.--**

An excise tax of eleven dollars and fifteen cents ($ 11.15) shall be imposed, paid, and collected on each hundred or fraction of one hundred (100) cigarettes. For the purpose of this Subtitle, the term "cigarette" shall mean any roll of finely cut natural or synthetic tobacco or any other finely cut natural vegetable or synthetic matter, or any mixture thereof, or any other finely cut solid matter or substance that is used to make the products known as cigarettes, cigars, or little cigars. Cigars or cigarettes introduced or made in Puerto Rico for export are excluded, subject to those requirements or conditions imposed by the Secretary through regulations, as well as handcrafted cigars or cigarettes as defined by the Secretary through regulations.

Cigarettes manufactured, introduced, sold, conveyed, used or consumed in Puerto Rico shall have affixed upon the boxes, packages or packs in which they are packed, a label with the information and characteristics which are prescribed by regulation. Each cigarette box, package, or pack must bear the word "taxable" stamped on a visible place and in clear and legible form. These provisions shall not apply to exempt cigarettes.

**Section 3020.06.-- Fuels.--**

**(a)**  An excise tax shall be imposed, collected, and paid as herein stated on each gallon or fraction thereof of the following fuels:

| | |
|---|---|
| (1) Gasoline | 16 cents |
| (2) Aviation fuel | 3 cents |
| (3) Gas oil or diesel oil or any other fuel | 8 cents |

**(b)**  For purposes of this Subtitle, the term "gasoline" shall include all types of gasoline, combustible products and gasoline mixtures with any combustible product for use or consumption in propelling aircraft. Liquid gases such as propane, butane, ethane, ethylene, propylene, butylene, and any mixture thereof shall be excluded from the term "gasoline" for purposes of this section.

**(c)**  The tax on all transactions and transfer of fuels established in this section shall be computed on the basis of a corrected temperature of sixty degrees Fahrenheit (60 [degrees] F). The volume of fuel subject to the payment of excise taxes shall be the total of gallons dispatched from the tanks of the provider to the tanks or trucks of the local importer, distributor or manufacturer, as the case may be, and as evidenced by the measurements taken and certified by the authorized inspector before and after initiating the transfer.

**(d)**  The excise tax established in subsection (a) of this section shall not apply to residual fuel oil no. 6 acquired by the Puerto Rico Electric Power Authority for the generation of electricity. This subsection will apply if the specific gravity of said fuel does not exceed 24.9 API degrees on the basis of a corrected temperature of sixty degrees Fahrenheit (60 [degrees] F).

**(e)**  The excise tax established in subsection (a) of this section shall not apply to residual fuel oil no. 6 acquired by trades and businesses established in Puerto Rico to be used in their production processes. This subsection shall apply if the specific gravity of said fuel does not exceed 24.9 API degrees on the basis of a corrected temperature of sixty degrees Fahrenheit (60 [degrees] F).

**(f)**  The goods, including gasoline, aviation fuel, gas oil or diesel oil or any other fuel subject to the provisions of this section shall be exempt from the sale and use tax established in Subtitle D.

**(g)**  Pursuant to Act No. 82 of June 26, 1959, as amended, the imposition and collection of the excise tax on gasoline prescribed in subsection (a)(1) of this section shall be suspended with regard to aviation fuel and any other fuel product for use or consumption in the propelling of aircraft that are destined to be consumed in air travel between Puerto Rico and other places, or in air travel within the territorial limits of Puerto Rico, provided that in lieu of the tax imposed in this section, the Ports Authority shall impose upon said products a tax of two cents (2 [cents]) per gallon or fraction thereof and collects it from the suppliers operating in the airports of Puerto Rico.


## Section 3020.07.-- Crude Oil, Partially Finished and Finished Oil By-products and Other Hydrocarbon Mixtures.--

**(a)**  In addition to any other excise tax prescribed in this Subtitle, a tax shall be imposed, collected and paid for the use in Puerto Rico of crude oil, and partially finished and finished oil by-products any other hydrocarbon mixture at the rates fixed in the following table:

**Price Index per Barrel**

| | | | | | |
|---|---|---|---|---|---|
| Up to | $ 16.01 | $ 24.01 | Over | | |
| | to | to | | | |
| $ 16.00 | $ 24.00 | $ 28.00 | $ 28.00 | | |
| Excise Tax per Barrel | | | | | |
| or Fraction thereof | | $ 6.00 | $ 5.00 | $ 4.00 | $ 3.00 |

**(b)**  In the case of refineries and petrochemical companies, if a gain in volume of end product is obtained as part of their oil refining process, such gain shall be subject to the tax imposed by this section.

**(c)**   For purposes of this section, the term "use" shall include the introduction, use, consumption, sale, acquisition, and transfer in Puerto Rico of the crude oil or oil products taxed in this section.

**(d)**   The tax on all transactions and transfers of fuel taxed by this section shall be computed on the basis of a corrected temperature of 60 degrees Fahrenheit (60 [degrees] F).

**(e)**   The volume of fuel subject to the payment of excise taxes shall be the total of barrels dispatched from the tanks of the supplier to the tanks of the local importer, distributor or manufacturer, as the case may be, and as evidenced by the measurements taken and certified by the inspector authorized by the U.S. Customs and the Department of Consumer Affairs before and after the transfer.

**(f)   Determination of Index Price.--**   For purposes of this section, "index price" shall mean the monthly arithmetical average of the price of crude oil prevailing in the first of the two (2) months preceding the month for which the price of the product taxed in Puerto Rico is fixed. The Secretary shall fix the index price using as a basis the price quoted in two (2) of the following markets, among others: the New York Mercantile Exchange, West Texas Intermediate, Saudi Light, and North Sea Brent. The Secretary shall establish the mechanism to calculate the index price through regulations. In the event that there are no quotations in one (1) or two (2) of these markets, the Secretary may fix the price taking any other reliable market as a basis.

**(g)**   The "index price" shall be determined monthly by the Secretary in accordance with the procedure established in this subsection and shall notify the taxpayers of the applicable excise tax one (1) week before the first day of each month.

**(h)**   The provisions of Chapter 3 of this Subtitle shall not apply to this section, except for the provisions of Sections 3030.01 and 3030.02.

**(i)   Exemptions.--**   The tax imposed by this section shall not apply to:

**(1)**   Crude oil, partially finished and finished oil by-products, or any other hydrocarbon mixture (including natural gas) used by the Electric Power Authority to generate electricity.

**(2)**   Crude oil, partially finished and finished oil by-products, or any other hydrocarbon mixture exported from Puerto Rico.

**(3)**   Crude oil, partially finished and finished oil by-products, or any other hydrocarbon mixture imported or sold locally to the agencies and instrumentalities of the Federal government.

**(4)**   Crude oil, partially finished and finished oil by-products, or any other hydrocarbon mixture used by local refineries or petrochemical companies in the oil refining process, whether for a shrinkage in the raw material used in production (plant loss) or in refinery fuel expenses. In the case of refineries that use crude oil, this exemption shall never exceed, individually or jointly, six percent (6%) of the verified total of the oil products used in the refining process. In the case of petrochemical companies, the exemption may exceed six percent (6%), but for that, the petitioner must submit evidence to the Secretary that justifies a greater exemption, and the Secretary shall determine the amount of the exemption by evaluating the evidence submitted and any other pertinent information.

**(5)**   Crude oil, partially finished and finished oil by-products, or any other hydrocarbon mixture used in the manufacture of goods which, after finishing, cannot be identified as oil products taxable under this Subtitle. All persons covered by this exemption must have a prior acknowledgement and authorization of the Secretary.

**(6)**   Crude oil, partially finished and finished oil by-products, or any hydrocarbons mixture used as lubricant or fuel in the propulsion of air and maritime transportation vehicles in their air and maritime travels between Puerto Rico and other places.

**(7)**   Crude oil, partially finished and finished oil by-products, or any hydrocarbon mixture used as lubricant or fuel for the generation of vapor for the cooking, canning, and sterilization of raw material proceeding from industrial fishing.

**(8)**   Crude oil, partially finished and finished oil by-products, or any hydrocarbon mixture used by vessels that provide towing service and/or fueling service to freight ships, cruise ships and/or other vessel that requires these services, be it within or outside territorial waters.

**(j)**   The goods, including crude oil, partially finished and finished oil by-products, or any hydrocarbon mixture subject to the provisions of this section shall be exempt from the sale and use taxes established in Subtitle D.

**(k)  Time to Pay.--**   The tax shall be paid pursuant to Section 3060.01 of Chapter 6 of this Subtitle, except in the case of local manufacturers, which shall be paid pursuant to the provisions of Section 3060.02.

**(l)  Refund for Exemptions.--**   In the cases of refineries and petrochemical companies, the Secretary shall grant a credit or shall refund the excise taxes paid to the treasury if the exempt person proves, to the satisfaction of the Secretary, that he/she is entitled to enjoy one or more of the exemptions established in this section. In such cases, the credit or refund shall be limited to:

**(1)**   The exempt person when he/she has paid the tax directly.

**(2)**   The exempt person, upon prior consent by the person who paid the tax.

**(3)**   The person who, after paying the tax, has not transferred it, in whole or in part, in the sale price billed to the exempt person.

**(m)  Amount of the Bond.--**   The bond or endorsement to an existing bond, if any, shall be equal to the average of the taxes paid during thirty (30) days in favor of the Secretary to ensure the faithful compliance of the provisions of this section.

**(n)**   The Secretary shall require that a monthly inventory be carried out under the FIFO (First-In First-Out) method in accordance with generally accepted accounting principles for transactions related to the payment of taxes, acceptance of credits, and allowable refunds, in accordance with the provisions of this section.

**Section 3020.08.-- Vehicles.--**

**(a)**   An excise tax shall be imposed, collected, and paid on every vehicle that is introduced from abroad or manufactured in Puerto Rico, as established below following the description of said vehicle:

**(1)**   Automobiles introduced from abroad or manufactured in Puerto Rico before March 16, 2007, the percent corresponding to the taxable price in Puerto Rico, as per the following table:

TAX TO BE PAID

| If the taxable price in Puerto Rico is: | The tax will be: |
| --- | --- |
| Up to $ 6,170 | $ 750 (minimum tax) |
| Over $ 6,170 and up to $ 10,690 | $ 750 plus 13% of the |
| excess of $ 6,170 | |
| Over $ 10,690 and up to $ 21,380 | $ 1,338 plus 25% of the |
| excess of $ 10,690 | |
| Over $ 21,380 and up to $ 31,780 | $ 4,011 plus 30% of the |
| excess of $ 21,380 | |
| Over $ 31,780 and up to $ 44,890 | $ 7,130 plus 35% of the |
| excess of $ 31,780 | |
| Over $ 44,890 | 40% |

**(2)**   Automobiles introduced from abroad or manufactured in Puerto Rico after March 15, 2007:

**(A)** The percent corresponding to the taxable price in Puerto Rico, as per the following table:

TAX TO BE PAID

| If the taxable price in Puerto Rico is: | The tax will be: |
|---|---|
| Up to $ 6,170 | $ 750 (minimum tax) |
| Over $ 6,170 and up to $ 10,690 | $ 750 plus 12% of the |
| excess of $ 6,170 | |
| Over $ 10,690 and up to $ 21,380 | $ 1,292 plus 23% of the |
| excess of $ 10,690 | |
| Over $ 21,380 and up to $ 31,780 | $ 3,751 plus 27% of the |
| excess of $ 21,380 | |
| Over $ 31,780 and up to $ 44,890 | $ 6,559 plus 32% of the |
| excess of $ 31,780 | |
| Over $ 44,890 | $ 10,866 plus 40% of the |
| excess of $ 44,890 | |

**(B)** The table in subparagraph (A) shall apply to all new and used automobiles introduced into Puerto Rico, except in the case of new automobiles to be exported.

**(C)** The Secretary shall adjust the price brackets of the table in subparagraph (A) with the purpose of protecting consumers from the adverse tax effect that inflation and its consequent increase in the consumer sales price may have over the effective excise tax specified in that table. Such adjustment shall be made by means of administrative determination, in a period no greater than three (3) years from the effective date of this Subtitle, and in subsequent successive periods no greater than three (3) years. The basis for making the adjustment shall be the Durable Goods Consumption Expenditures Implicit Deflator, as published by the Planning Board. The Secretary shall publish the adjustments in a newspaper of general circulation and shall submit a copy of the adjustments to the Legislative Assembly.

**(D)** In any case, the adjustments made by the Secretary in the price brackets shall have the effect of lowering the taxes that would otherwise apply had the inflationary adjustments not been made.

| | |
|---|---|
| (3) Trailer trucks | 17% over the taxable price in Puerto Rico |
| (4) Buses | 20% over the taxable price in Puerto Rico |
| (5) Trucks | 10% over the taxable price in Puerto Rico |
| (6) Motorcycles | 10% over the taxable price in Puerto Rico |
| (7) All-terrain Vehicles (ATVs) | 10% over the taxable price in Puerto Rico |

**(8) Transitory Provisions.--**

**(A)** In the case that the excise tax on new or used automobiles in inventory has not been paid before the effective date of a revision, as provided in paragraph (2)(C), of the tax rates provided in paragraph (2)(A) of this Section, the excise taxes to be imposed shall be in accordance with the new rates.

**(B)** In the case that the excise tax on new automobiles in inventory has been paid before the effective date of a new revision, as provided in paragraph (2)(C), of the tax rates provided in subparagraph (2)(A) of this section, the introducer, authorized distributor, or dealer may claim credit for any difference resulting from the excise tax to be imposed pursuant to the tax rates provided in paragraph (2)(C) of this section and the excise taxes paid pursuant to the tax rates provided in paragraph (2)(A) of this section prior to the revision. The credit shall apply to future excise tax payments on automobiles upon previous authorization of the Secretary.

**(9)**   In no case shall the automobiles, trailer trucks, buses, and trucks pay a tax lower than seven hundred fifty dollars ($ 750).

**(10)**   Category III ambulances are excluded from the tax provided in this Section, in which case no quantity related to tax payments shall be imposed or collected. For purposes of this Act, "Category III ambulance" shall refer to every ambulance destined to the transportation of the sick, injured, wounded, handicapped, disabled, or invalid, according to the regulations established by the Public Service Commission for the category of reference. Moreover, the ambulances of this category shall be especially designed, built, and equipped as a mobile emergency room. Said ambulances shall be operated by medical emergency technicians authorized by the Secretary of Health.

**(b)   Definitions.--**   For purposes of this section and of any other applicable provisions of this Subtitle, the following terms shall have the meaning stated below:

**(1)   "Automobile".--**   Shall mean any vehicle provided with any self-propelled means designed to transport persons, including hearses and wreath coaches, but excluding buses, ambulances and motorcycles. It shall also mean those multipurpose vehicles that due to their design, internal structure, mechanical features and physical configuration may be used to transport freight as well as passengers. It also includes vehicles known by the generic name of "vans", "minivans" and "customized vehicles."

**(2)   "Bus".--**   Shall mean and include any passenger motor vehicle, commonly known as autobuses or *guaguas* with a capacity of fifteen (15) passengers or more, including the driver, ambulances, as well as the chassis and bodies and the passenger buses constructed on truck chassis.

**(3)   "Trailer Truck".--**   Shall mean and include all trucks especially designed to haul trailers.

**(4)   "Trucks".--**   Shall mean and include:

**(A)**   Trucks, light trucks, trailers and similar self-propelled vehicles by whatever name they are known, designed for the basic purpose of transporting freight. This term excludes those motor vehicles that due to their design and internal structure are used for the transportation of passengers, and the basic though not exclusive purpose of which is the transportation of passengers, which shall be taxable as automobiles.

**(B)**   Motor vehicles provided with any number of wheels, horizontal or vertical platform, scoop or bucket, or crane geared to the motor power of the vehicle, designed expressly for the transportation, hauling, towing, lifting, stowing or storing of freight, materials or bundles, regardless of the distance traveled or said vehicle's area of activity.

**(C)**   Any device or hoisting unit designed or built for adaptation to, installation on, or coupling to any vehicle mentioned in subparagraphs (A) and (B) of this paragraph, thereby extending, specializing or otherwise modifying the usefulness of said vehicle.

**(D)**   The term "trucks" shall also mean the trailers designed to be hauled by truck trailers or trucks including the bodies for the storage or transportation of merchandise.

**(5)   "Motorcycles".--**   Shall mean and include any vehicle with less than four (4) wheels provided with any means of self-propulsion designed to transport persons, and which is commonly known as motorcycle, bike or scooter.

**(6)   "ATVs".--**   Shall mean vehicles with more than three (3) wheels known as all-terrain vehicles or four-tracks, which are not authorized for use on public roads.

**(c)**   The following provisions shall compliment the application and compliance of this section:

**(1)   Determination of the Suggested Sales Price.--**   The suggested consumer sales price of new and used automobiles shall be determined by the importer or distributor pursuant to the provisions of this Subtitle prior to the introduction of the vehicle into Puerto Rico. The suggested consumer sales price for each vehicle does not necessarily have to be the same for all dealers, but the excise tax to be paid

shall be determined and paid pursuant to the suggested consumer sales price shown on the price tag affixed to the vehicle and determined by the distributor.

**(2)   Determination of the Secretary if the Taxable Price does not Reasonably Reflect the Vehicle Price.--**   In the case that the suggested consumer sales price reported by a specific importer does not reasonably reflect the suggested consumer sales price of similar models at the time of the vehicle's introduction to Puerto Rico, the Secretary shall determine and collect from this importer the tax imposed by this Subtitle, using as reference any other source of information that is duly recognized by the United States automotive industry. However, in no case shall it be understood that this power authorizes the Secretary to substitute, as a general applicable rule, the suggested consumer sales price basis for any other alternative fiscal base, except to correct the taxable price unreasonably determined by the importer in that particular case.

The determination of the Secretary shall be presumed to be correct without impairment to the provisions established in Subtitle F.

**(3)   Affixing of Suggested Sales Price Tag.--**   The importer or distributor shall affix a tag or label to each automobile with the information that the Secretary determines necessary so that each vehicle is visibly identified with its suggested consumer sales price. In the case of used automobiles, the Secretary shall determine the manner of complying with the labeling requirement.

**(4)   Notification of Shipments to the Secretary.--**   Every importer or distributor of new vehicles shall be required to submit to the Secretary, 15 days before the date of authorization of the release of shipment from the port, a description of the vehicles to be received and the suggested consumer sales price of each, along with the information or any document that the Secretary deems necessary.

**(5)   Partial Withdrawal of Shipments.--**   The Secretary may authorize the partial withdrawal of the vehicle shipment from the place where it is deposited, as provided by regulation.

**(6)   Scanner.--**   The Secretary may require from the manufacturer or distributor, the labeling for scanners in vehicles to be introduced into Puerto Rico. The implementation by regulation of this means shall allow the Secretary to mechanize the operations related to the implementation of this Subtitle.

**(7)   Provisions Applicable to Automobile Models not Comprised Among Those Covered Herein.--**   The Secretary shall establish, for models of automobiles or vehicles not covered or contemplated under the provisions of this Subtitle, the listing of information he/she deems pertinent to clearly determine the "Suggested Consumer Sales Price" that shall be used to impose the tax to be applied pursuant to this Subtitle. In every case, this reference price shall not be less than that corresponding to the *Black Book New Car Market Guide*, or to what is established in any authorized and independent sources recognized by the industry, as determined by the Secretary, in effect on the date it is used as reference, multiplied by 1.32.

**(8)   Time for Payment for Imported Vehicles for Private Use.--**   In the case of motor vehicles imported or manufactured for private use of the importer or manufacturer, the time for payment shall be the time of introduction. The release from the port of any vehicle introduced into Puerto Rico for the importer's personal use shall not be authorized until it is demonstrated that the unit has been registered with the Department of Transportation and Public Works, and it is demonstrated, before retrieving the automobile from the place where it has been deposited, that the importer, in fact, has the vehicle license issued to his/her name.

**(9)**   No person shall be granted a license or license plate for a vehicle taxed by this Subtitle, nor shall the Secretary of Transportation and Public Works issue any such license or license plate, unless the person shows the Excise Tax Payment Certification issued by the Secretary to allow the registration of the automobile at the Department of Transportation and Public Works.

**(10)**   The Secretary shall furnish, free of charge, information on the cost in Puerto Rico and the taxable price of any motor vehicle introduced into or manufactured in Puerto Rico to any person that so requests.

**(11)** Every automobile, trailer truck, bus, truck, motorcycle, or ATV subject to the provisions of this section shall be exempt from the sales and use tax established in Subtitle D of this Code.

## Section 3020.09.-- Ships and Heavy Equipment.--

**(a)** An excise tax of seven percent (7%) shall be imposed, collected, and paid on every type of ship and every type of heavy equipment that is introduced from abroad or manufactured in Puerto Rico.

**(1) Ships.--** In the case of ships, the excise tax shall be imposed on the suggested consumer sales price. The maximum excise tax amount to be imposed and collected per ship under this Section shall not exceed ten thousand dollars ($ 10,000.00).

**(2) Heavy Equipment.--** In the case of heavy equipment, the excise tax shall be imposed on the price in Puerto Rico. The maximum excise tax amount to be imposed and collected per unit of heavy equipment under this Section shall not exceed twenty five thousand dollars ($ 25,000).

**(b)** Notwithstanding the provisions of subsection (b) of Section 3060.01, in the case of ships and heavy equipment introduced to Puerto Rico by bonded authorized dealers, the tax shall be paid within fifteen (15) days following the time of sale, or within fifteen (15) days following the time at which the dealer permitted the use of said ship or unit of heavy equipment, whichever happens first.

**(c)** After the retail sale of a ship or unit of heavy equipment has been carried out, the retailer of the ship or unit of heavy equipment (or dealer), importer or distributor, shall submit to the Department the corresponding bill of sale required by the Secretary, along with any other document that the Secretary requires and which demonstrates that the sale took place and that the appropriate excise tax was paid in full. In the case of ships, what was provided in the preceding sentence shall be required before the Secretary issues to said ship retailer (or dealer), importer or distributor, the excise tax payment certification that enables the ship to be registered in the Ship Registry of the Office of the Navigation Commissioner.

**(d)** The ships and heavy equipment in stock on the effective date of the imposed excise tax provided in this Section shall be treated as introduced to Puerto Rico on said date. The Excise Tax Statement required by Section 3020.09 shall be filed at said time of introduction. In the case of a bonded importer or goods manufacturer subject to taxation under this Subtitle, he/she shall file a Monthly Excise Tax Return not later than the tenth (10th) day of the month following the time of introduction or manufacture. Notwithstanding the above and the provisions of Section 3060.01:

**(1)** In the case of ships and heavy equipment in stock and introduced by bonded authorized dealers, the payment of the tax shall be subject to the provisions of subsection (b) of this section. The Secretary shall establish through regulations, circular letter, or any other administrative determination of a general nature, the norms necessary for the application of the provisions in this Section; and

**(2)** In the case of ships and heavy equipment in stock and introduced by authorized dealers that are not bonded, the payment date shall expire sixty (60) days after the effective date of the imposed excise tax, insofar as said dealer does not pay the bond within that period.

**(e)** Every ship and every unit of heavy equipment subject to the provisions of this Section shall be exempt from the sales and use taxes established in Section D.

**(f) Exemption on Nonresident Ships.--**

**(1)** Ships with foreign registration or documented by the United States Coast Guard shall be exempt from the excise tax provided by this Section if they are acquired by a Puerto Rico nonresident, who has the title and ownership of said ship, and who does not engage in the sale of ships in Puerto Rico.

**(2)** For purposes of this Section, a ship acquired, or the title or ownership or both of which is held by a nonresident corporation, limited liability society or company shall not be considered eligible for the tax exemption provided in this Section if one or more Puerto Rico residents jointly own, directly or indirectly, fifty percent (50%) or more of the stocks or shares of the entity holding the title or ownership

of said ship. Furthermore, for purposes of subsection (a) of this Section, the exemption shall apply to the ship as well as to its furnishings ("bare boat"), but not to merchandise inside the ship.

**(3) Stocks and Shares Considered as Constructively Owned.--**  For purposes of this Section, the following stocks and shares in a foreign corporation or partnership or nonresident limited liability company, with the title and ownership of a ship shall be considered as constructively owned by Puerto Rico residents.

**(A)**  Stocks and shares of said nonresident corporation or partnership or limited liability company owned by a resident corporation, limited liability society or company (shareholding company) of Puerto Rico, if the shareholding corporation or partnership owns fifty percent (50%) or more of the value of the stocks or shares of the nonresident corporation or partnership or limited liability company holding the title and ownership of the ship; and

**(B)**  Stocks and shares owned by one or more Puerto Rico residents and who jointly own fifty percent (50%) or more of the value of the stocks or shares of the shareholding corporation. For these purposes, any stocks or shares in corporations or partnerships owned directly or indirectly through one or more corporations or partnerships, tiered corporations or partnerships described in this paragraph (3) shall be treated as owned by a Puerto Rico resident.

**(4) Nonresident Ships.--**  For purposes of this Section, the term "nonresident ships" means ships with a foreign registration or documented by the United States Coast Guard.

**(g)**  The Secretary shall establish, through regulations, circular letter or administrative determination of a general nature, a voluntary disclosure program for ships and heavy equipment in which he/she shall stipulate the rules applicable to them under said program, including provisions for their treatment under the provisions of this Section.

## Section 3020.10.-- Excise Tax Statement and Monthly Excise Tax Return.--

**(a)**  Every importer shall file an excise tax return on all goods subject to taxation under this Subtitle, and which have been introduced from abroad. The return shall be made concurrently with the due date to pay the appropriate excise taxes. The return shall contain the information on goods subject to taxation under this Subtitle and established by regulations, and shall be made in the form and manner set forth by the Secretary.

**(1) Exceptions.--**

**(A)**  Dealers bonded to introduce vehicles shall file the return indicated in subsection (a) not later than ten (10) days after the date on which they take possession of the vehicles, and

**(B)**  In the case of merchandise introduced by mail and air courier, the return on goods subject to taxation under this Subtitle shall be filed not later than the fifth (5th) work day following the time at which possession of the merchandise is taken.

**(b)**  Every bonded importer or manufacturer of goods subject to taxation under this Subtitle shall file a monthly excise tax return not later than the tenth (10th) day of the month following the date of introduction or manufacture. Said return shall be filed even when no transactions subject to taxation have been conducted. The monthly excise tax return shall contain the information on goods subject to taxation under this Subtitle established by regulations and shall be made in the form and manner set forth by the Secretary.

**(c)**  The Secretary may request through regulations, circular letter, information bulletin or administrative determination of a general nature that the returns required by this Section be filed electronically.

## Section 3020.11.-- Goods Introduced in Vans.--

**(a)**  Any person who introduces goods subject to taxation under this Subtitle into Puerto Rico using a system of vans to transfer them from the port to their warehouses shall file with the Secretary an excise tax

return on all goods subject to taxation under this Subtitle contained in the van and the bill of lading corresponding to the goods introduced and subject to taxation under this Subtitle prior to removing the van from the custody of the carrier.

**(b)**   The excise tax return and the bill of lading shall include all the information required by the Secretary through regulations. Said documents may be filed electronically in accordance with the mechanisms provided by the Secretary.

**(c)**   When the taxpayer does not have the bill of lading available at that time, he/she shall submit the corresponding commercial invoices to the Secretary. If he/she does not have said invoices available or refuses to submit them, he/she shall be prevented from taking possession of the goods.

**(d)**   These provisions shall not relieve the introducer from complying with the provisions of this Subtitle regarding the determination of the taxpayer and the term of payment or from his/her obligation to submit the commercial invoices to the Secretary at the time the tax is paid.

**(e)**   In the case of perishable goods subject to taxation under this Subtitle and introduced from abroad using the van system, the Secretary shall establish adequate administrative mechanisms so that the introducer can promptly take possession thereof.

**(f)**   Once the taxpayer, consignee or carrier has been authorized to move the van from the premises of the carrier company, whether directly or through his/her authorized representative, he/she shall be liable and shall be guilty of a felony, as of that moment, for any rupture to the binding, latch, padlock or seal of the van, if said rupture was not made in the presence of a treasury official of the Department or by express authorization through an official document from the Secretary. The Secretary, however, shall not prevent nor delay the removal process of merchandise if the advance payment of taxes is necessary.

## Section 3020.12.-- Duties of Port Owners, Lessees and Executors.--

**(a)**   No owner, lessee, or Executor of any port who has goods and vans subject to the payment of excise taxes pursuant to this Subtitle in his/her custody shall deliver them to the consignee, nor to the person that properly claims them, unless they present a certification issued by the Secretary authorizing the delivery.

**(b)**   When, pursuant to Act No. 15 of May 9, 1941, as amended, and to its regulations, the owner, lessee, or Executor of any port transfers the cargo to any depot or warehouse, the owner of the warehouse depot shall be required not to deliver the taxable goods, under this Subtitle, or vans unless the appropriate certification issued therefor by the Secretary has been previously obtained. If such owner, lessee, or Executor sells the goods because they have not been claimed, he/she shall pay the Secretary such excise taxes plus the surcharges and interest that said goods encumber up to the time of payment.

## CHAPTER 3 --   EXEMPTIONS TO TAXES ON GOODS

## Section 3030.01.-- Exemptions - Powers of the Secretary.--

**(a)**   The Secretary is hereby empowered to establish, through regulations, the conditions regarding the enjoyment of any exemption granted in this Subtitle in order to ensure due compliance of the terms, provisions, and purposes by virtue of which the exemption is granted.

**(b)**   The Secretary may impose the following requirements and conditions, among any others that he/she may deem pertinent:

**(1)**   Require the taxpayer to file returns and reports, and to keep accounting books and records, as well as to present any document or evidence that is deemed pertinent to the exemption claimed or granted, as the case may be.

**(2)**   Require the posting of a bond for the amount of the exemption requested and of any administrative fine, surcharge, or interest that may be imposed pursuant to this Subtitle.

**(3)** Require that he/she be authorized to conduct periodic inspections, or any other kind of inspection, in connection with the exempt goods and that the contracts, orders, or other information regarding permits to transfer or sell exempt goods be filed beforehand.

**(4)** Establish a time limit during which the goods on which the exemption is claimed may be used for the purpose which entitles it to the exemption, unless otherwise provided in this Subtitle.

**(c)** The Secretary may deny any petition for exemption, or prospectively revoke the recognition of any previously granted exemption, when he/she determines that the exempt person has failed to comply with a provision of this Subtitle or of its regulations by virtue of which the exemption had been granted.

### Section 3030.02.-- Tax Refund.--

**(a)** In order to achieve due oversight of the exemptions granted by this Subtitle, the Secretary is hereby empowered to collect the excise tax, prior to the recognition of the exemption, except in respect to:

**(1)** The exemption granted to a manufacturing plant when the latter acquires raw material, equipment, and machinery directly from abroad.

**(2)** The exemption granted to a manufacturing plant when the latter acquires raw material, equipment, and machinery deposited in bonded warehouses belonging to importers.

**(3)** The exemption granted to importers on goods introduced into Puerto Rico and deposited in bonded warehouses with the purpose of selling the goods abroad.

**(4)** The exemption granted to nonprofit institutions under the provisions of Section 3030.14 of this Chapter; and

**(5)** The exemption granted in Section 3030.09 of this Chapter.

**(b)** Likewise, excise taxes paid to the public treasury may be refunded or credited if the exempt person shows to the satisfaction of the Secretary that he/she is entitled to enjoy one or more of the exemptions provided in this Chapter. In such cases, the refund or credit shall be limited to:

**(1)** The exempt person when the latter has paid the tax directly.

**(2)** The exempt person with the previous consent of the person who paid the tax.

**(3)** The person who, after paying the tax, has not transferred it, in whole or in part, in the selling price charged to the exempt person.

### Section 3030.03.-- Excise Tax Refund for Vehicles Propelled by Combined or Alternative Energy.--

**(a) Definitions.--** For purposes of this Section, the following shall be treated as vehicles propelled by combined or alternative energy:

**(1)** Hybrids--Those that combine a conventional combustion engine with an electric engine with regenerated and rechargeable energy.

**(2)** Electric--Those that are propelled by electric power and do not produce any kind of emissions to the environment.

**(3)** Hydrogen-propelled--Those that are propelled by hydrogen for combustion or by hydrogen-fed fuel cells.

**(4)** Biodiesel-propelled--Those propelled by the combustion of diesel derived from vegetable oil and animal fat.

**(5)** Ethanol-propelled--Those propelled by alternative energy produced from alcohol originating from natural crops.

**(6)** Methanol-propelled--Those propelled by methanol produced by the combustion of coal or wood oil.

**(7)**  Natural gas-propelled--Those propelled by the combustion of a mixture of hydrocarbon gases that emerge from oil deposits, primarily methane mixed with a variety of amounts of ethanol, propane, butane, and other gases.

**(8)**  Propane gas-propelled--Those propelled by the combustion of liquefied petroleum gas.

**(9)**  "P-series" Automobiles--Those propelled by the combustion of a mixture of liquefied natural gases (pentanes plus), ethanol, and the biomass-derived co-solvent methyltetrahydrofuran (MeTHF).

**(b)**  A payment refund for the excise taxes established herein shall be granted to motor vehicles propelled by combined or alternative energy which are introduced into or manufactured in Puerto Rico.

**(c)**  The motor vehicle dealership or the person who pays the excise tax upon the introduction of the vehicle into Puerto Rico shall issue an invoice to the buyer of the vehicle itemizing the amount paid on account of excise taxes.

**(d)**  The buyer of the vehicle shall have one hundred and eighty (180) days from the time of acquisition of the vehicle to request the Department for the excise tax payment refund. Said request shall be submitted, along with the invoice issued by the dealership or the person who paid the excise tax upon the introduction of the vehicle into Puerto Rico, in the form that the Secretary establishes for such purposes.

**(e)**  The refund granted in this Section shall not exceed two thousand dollars ($ 2,000) per vehicle per year.

**(f)**  The Secretary shall establish through regulations, circular letter, or any other administrative determination or general communication the procedure and requirements for requesting the refund in accordance with this Section.


**Section 3030.04.-- Conditional Exemption; Goods in Transit, for Re-export or Return.--**

No conditional exemption shall be recognized in the cases stated in Sections 3030.10 and 3030.11 of this Chapter, unless the goods to which the exemption is granted is once again exported, returned to the manufacturer, destroyed, or otherwise disposed of as required by the provisions of such sections.

Subject to the provisions of Subtitle F, the Secretary may extend the time limit for a taxpayer to once again export, return to the manufacturer, destroy, or otherwise dispose of the goods subject to conditional exemptions for any of the reasons or causes established in Sections 3030.10 and 3030.11 of this Chapter.


**Section 3030.05.-- Public Carrier Vehicles.--**

**(a)**  The following vehicles shall be exempt from the excise tax imposed in Section 3020.07 of Chapter 2 of this Subtitle, provided they are acquired to be devoted to transportation for pay:

**(1)**  Every new or used motor vehicle initially registered with the Department of Transportation and Public Works by a person who, immediately after its acquisition, devotes it to public transportation for pay, shall be treated as public transportation (P).

**(A)**  When the carrier is the owner of more than one motor vehicle and uses the same for public paid transportation of passengers, he/she shall be entitled to avail him/herself of this excise tax exemption on the first motor vehicle that he/she registers, but not on the second or any other thereon. Said first motor vehicle shall continue to benefit from the exemption granted herein in case of its sale, alienation or transfer, provided that the original acquirer has devoted it to public paid transportation of passengers for at least three (3) years.

**(B)**  In the event that the owner of said motor vehicle owns more than one motor vehicle destined for public paid transportation of passengers, twenty percent (20%) of the excise tax imposed by Section 3020.07 of Chapter 2 of this Subtitle shall be paid for the second motor vehicle and any other thereon. Said motor vehicles shall continue to benefit from the exemption granted herein in the event of sale, alienation or transfer, provided that the original acquirer has devoted it to public

paid transportation of passengers for at least three (3) years. Motor vehicles devoted to school transportation shall also be exempt.

**(2)** Every heavy motor vehicle initially registered in the Department of Transportation and Public Works of Puerto Rico by a person who, as a public carrier, devotes it immediately after its acquisition to public paid freight transportation, and is considered as a working tool of its owner under the provisions of Sections 1-109 and 1-165 of Act No. 141 of July 20, 1960, as amended, and in Section 2(d) of Act No. 109 of June 29, 1962, as amended, also known as the "Puerto Rico Public Service Act."

**(A)** When the owner of a heavy motor vehicle sells, alienates, or otherwise transfers the same to another person who does not devote the same immediately after its acquisition to the usage and conditions established in this paragraph, the new acquirer shall be required to pay the difference between the total exemption provided in this paragraph and the amount he/she would have to pay pursuant to this Subtitle. Said difference shall be computed taking into consideration the taxable price of said vehicle in Puerto Rico on the basis of which the excise tax was paid or the exemption granted, as the case may be, and the depreciation suffered.

**(3)** Every new or used motor vehicle acquired by a natural or juridical person who operates as a tourist transportation enterprise, if immediately after its acquisition, the vehicle is devoted to the transportation of passengers for direct or indirect pay. Said motor vehicle shall continue to enjoy the exemption herein granted in the case of sale, alienation, or transfer, provided that the original acquirer had devoted it to the transportation of passengers for pay and operated it regularly as a tourist transportation business for at least three (3) years.

**(b)** When the owner of a motor vehicle subject to the exemption established in paragraph (1) of Section (a) sells, alienates or otherwise transfers it to another person, the new acquirer shall continue to enjoy the exemption of the partial payment of the excise taxes granted, provided the original owner has complied with the use and conditions established in said paragraph, pursuant to applicable regulations. Every owner of a motor vehicle exempt from the payment of excise tax or subject to a partial payment thereof established in paragraph (1) of Section (a) who subsequently decides to destine it for personal use, shall continue to enjoy the exemption granted, provided he/she complies with the uses and conditions established in said paragraph.

**(c)** When an importer or dealer pays the excise tax on a motor vehicle and subsequently sells it for the purposes established in paragraphs (1) or (2) of Section (a), the Secretary shall return to such importer or dealer any difference between the tax paid and the partial tax or applicable exemption according to said paragraphs, provided said difference has not been passed to the purchaser, and if so, the difference shall be returned to the latter.

## Section 3030.06.-- Consular Officials and Employees.--

**(a)** The vehicles acquired or introduced into Puerto Rico for the personal use of consular officials and employees of foreign countries in Puerto Rico shall be exempt from the excise tax imposed in Section 3020.07 of Chapter 2 of this Subtitle, provided that said countries extend the same privilege to the representatives of the United States of America pursuant to the 1961 Vienna Convention Treaty on Consular Relations and/or to the officers who hold positions in the offices of the Government outside Puerto Rico.

**(b)** The terms "consular official" and "consular employee" shall have the meaning established in Section 1 of said Treaty.

**(c)** The exemption provided in paragraph (a) shall be granted provided that the consular official or employee is not a citizen of the United States or a Puerto Rico resident, and the compensation he/she receives is for professional services rendered to the government of said foreign country.

**(d)** When the owner of a vehicle who is enjoying the exemption granted in this section sells, transfers, or otherwise conveys it, the new acquirer shall be required to pay the excise tax that results from applying the

table contained in Section 3020.07 of Chapter 2 of this Subtitle, taking as a basis the taxable price on which the exemption was granted minus depreciation, before taking possession thereof. It shall be the obligation of the exempt person to require evidence from the new acquirer of the payment of the excise tax prior to delivering the vehicle to him/her.

**Section 3030.07.-- Persons with Disabilities.--**

**(a)**   Any person whose hands or legs have been amputated or who is permanently paraplegic, or any person with a permanent disability of a similar nature shall benefit from the excise tax exemption established in Section 3020.08 for one (1) motor vehicle especially prepared and equipped to meet the needs associated with his/her disability, in accordance to the rules adopted to such effect.

**(b)**   In accordance with the regulations established by the Secretary, the exemption provided in Subsection (a) may be claimed directly by the person authorized in said subsection or by a representative duly authorized, by a parent or guardian in the case of a minor that is not emancipated, or by a guardian of an adult who has been judicially declared disabled. Judicial disability shall not become a requirement to claim the exemption.

**(c)**   The exemption from the excise tax imposed by Section 3020.08, up to the amount of five thousand dollars ($ 5,000), shall apply to motor vehicles provided to disabled veterans [other than those described in Subsections (a) or (d)] for their personal use by or with the assistance of the Veterans Administration. Said exemption shall also apply to the replacement of the motor vehicle thus acquired, provided that the motor vehicle to be replaced has been owned by the veteran for his/her personal use for a period of at least six (6) years.

**(d)**   Any person who is blind or who has a permanent physical disability which renders him/her unable to drive a vehicle, but who uses the services of an authorized driver to perform the activities of his/her daily life and to fulfill his/her civil and family obligations, shall be exempt from the payment of the excise tax established in Section 3020.08 for one (1) motor vehicle. The vehicle to be acquired shall be destined to the transportation of the person entitled to the exemption. Having a tutor shall not be a requirement for handicapped persons to qualify for the exemption, unless the person with disabilities falls under one of the categories of Section 168 of the Civil Code of Puerto Rico (31 L.P.R.A. 662). A certification from a physician authorized to practice medicine in Puerto Rico indicating the permanent disability of the person who claims the exemption shall be the only document required to claim the exemption. The Secretary may grant the exemption to the claimant without the need of a certification when the disability is of such nature that it is visibly evident.

**(e)**   The exemption established in this section shall also apply to the replacement of the motor vehicle acquired by the persons described in Subsections (a) and (d), provided that the motor vehicle to be replaced has been owned by the person with disabilities for his/her personal use for a period of at least six (6) years.

**(f)**   Notwithstanding the provisions of Subsections (c) and (e), when the motor vehicle to be replaced is no longer useful due to fortuitous causes that cannot be attributed to the negligence of its owner, the exemption shall be applied to the replacement.

**(g)**   When the owner of a motor vehicle who is enjoying said exemption sells, transfers, or otherwise alienates the motor vehicle, the new acquirer shall be required to pay the excise tax that results from applying the table contained in Section 3020.07 of Chapter 2 of this Subtitle, taking as basis the taxable price on which the exemption was granted minus depreciation, before taking possession thereof. It shall be the obligation of the exempt person to require evidence from the new acquirer of the payment of the excise tax prior to delivering the vehicle to him/her.

**(h)**   If the new acquirer is a person who has a disability described in this section, he/she may avail him/herself of the benefits of the exemption for the remainder of the six (6) year term of the original exemption granted.

**Section 3030.08.-- Exemptions to Churches.--**

(a)   New vehicles with a capacity of twelve (12) or more passengers, excluding the driver, that are registered for the first time in Puerto Rico, acquired and used by churches exclusively for the transportation of their parishioners to the religious services, shall be exempt from the payment of the excise taxes imposed in Section 3020.07 of Chapter 2 of this Subtitle. The churches that wish to avail themselves of this exemption shall meet the following requirements:

(1)   Be recognized by the Secretary as a tax exempt organization pursuant to Section 1101.01(a)(1) of Subtitle A.

(2)   The exempt vehicle must remain in the possession of the institution which acquires it for a minimum term of six (6) years.

(3)   Obtain an express authorization from the Secretary recognizing the exemption, and justify the necessity and convenience of acquiring the vehicle in the petition to such effects.

(b)   The Secretary may revoke the exemption provided herein in those cases in which the church devotes the vehicle to a use other than that established in this section.

(c)   When the church sells, transfers, or alienates the vehicle enjoying the exemption provided herein, the new acquirer shall pay the excise tax that results from applying the table contained in Section 3020.07 of Chapter 2 of this Subtitle, taking as a basis the taxable price on which the exemption was granted minus depreciation, prior to taking possession thereof. It shall be the duty of the exempt church to require evidence from the new acquirer of the payment of the excise taxes prior to delivering the vehicle to him/her.

**Section 3030.09.--** Donations to the P.R. Police and the Municipal Governments' Police.--

(a)   New vehicles acquired by a non-exempt natural and/or juridical person for the sole purpose of donating them to the Police of Puerto Rico and to the municipal governments for patrol duty, crime prevention, protection of property and other public services rendered by the Municipal Guard shall be exempt from the payment of the excise taxes imposed by this Subtitle.

(b)   Any exemption granted by the Secretary by virtue of this provision shall:

(1)   Be subject to the registration of the donated item in the name of the Police of Puerto Rico, or of the Municipal Governments for the use of the Municipal Guard; and

(2)   Upon the receipt of the motor vehicle, it must be delivered to the entity to which it will be donated.

**Section 3030.10.-- Exemptions on Goods for Manufacturing.--**

Any raw material, excluding hydraulic cement, to be used in Puerto Rico for the manufacture of finished products, as well as trailers, trucks, or lifts, as said terms are defined in Section 3020.08, that are used exclusively and permanently within the manufacturing plant circuit, shall be exempt from the payment of the excise tax established in this Subtitle.

**Section 3030.11.-- Goods in Transit and for Export.--**

The goods comprised in the cases indicated herein below shall be exempt from the payment of excise taxes established in this Subtitle, provided the provisions of the Section 3030.02 of this Subtitle are complied with.

(a)   Goods in transit in Puerto Rico consigned to persons outside Puerto Rico, as stated in the shipping documents while they remain in the custody of the carrier or customs authorities, or deposited in a bonded warehouse, or in the warehouses of the shipping company that is the intermediary consignee in Puerto Rico, and that are stripped from Puerto Rico within one hundred and twenty (120) days from the date of their introduction.

**(b)**  Goods introduced into Puerto Rico consigned to dealer-importers with the intention of exporting them while they remain in the custody of the customs authorities or in the Foreign Trade Zones in Puerto Rico.

**(c)**  Goods introduced into Puerto Rico or acquired from local manufacturers that, without having been subject to sale, use, or transfer in Puerto Rico, are in the custody of dealer-importers or dealers who have acquired them from manufacturers in Puerto Rico and that are sold for use or consumption outside Puerto Rico. The goods thus sold must be reshipped abroad before they are subject to internal commerce, or use or consumption in Puerto Rico in order to be exempt from the payment of taxes.

For purposes of this clause, the term "internal commerce" does not include a sale or transfer transaction that initiates the completion of the reshipping of the goods outside Puerto Rico.

## Section 3030.12.-- Returned Goods.--

The goods in the cases described herein below shall be exempt from payment of the excise taxes imposed by this Subtitle, provided that the provisions of this section are complied with.

**(a)**  Goods returned by the introducer to persons abroad, or by the dealer or local manufacturer, without having been commercially exhibited or used in Puerto Rico, provided said return is made within sixty (60) days from the time of their introduction in Puerto Rico, when dealing with goods brought from abroad. In the case of goods manufactured locally, the aforementioned term for their return abroad shall be counted starting from the time of sale.

**(b)**  Goods found upon receipt to be damaged, spoiled, broken, or which have evaporated or are lost because of breakage, if returned or destroyed within a term of sixty (60) days counted from the time of introduction in Puerto Rico, if dealing with goods brought from abroad. In the case of goods manufactured locally, the sixty-day term for their return abroad shall be counted from the time of the sale.

**(c)**  Goods whose concealed flaws or intrinsic defects are not readily noticed by the importer or acquirer at the time of taking possession thereof when there has been no negligence or intent of tax evasion on the part of the introducer, dealer, or acquirer, and if said goods are returned or destroyed within one hundred and twenty (120) days from the time of introduction in Puerto Rico, when dealing with goods brought from abroad. In the case of goods manufactured locally, the term established above for its return or destruction shall be counted from the time of the sale. The Secretary shall have discretion to grant this exemption and the same shall not exceed eighty percent (80%) of the applicable tax.

**(d)**  Goods manufactured in Puerto Rico and subsequently exported to markets abroad which are rejected or returned to the manufacturer or to his/her distributor in Puerto Rico for reprocessing, reconditioning, or repacking. This exemption may only be granted when the manufacturer, upon previous notice to the Secretary, has reshipped the repaired, reconditioned, or repacked goods outside Puerto Rico, not later than the last day of the third (3rd) month following the month of introduction, or has destroyed them within the same period of time, or used them as raw material in the processing of other products within the same period.

## Section 3030.13.-- Exemption to Tourists and Residents of Puerto Rico Traveling Abroad.--

The introduction of two hundred (200) cigarettes shall be allowed without the imposition of the excise tax established in this Subtitle. Any excess over two hundred (200) cigarettes shall be subject to the payment of the corresponding excise tax. It shall be understood that the cost of the exempt cigarettes is included in the amount of the exemption.

## Section 3030.14.-- Goods Sold in Air or Maritime Terminal Stores to Persons Leaving Puerto Rico.--

The goods introduced or manufactured in Puerto Rico to be sold in stores established in air or maritime terminals that are duly authorized to sell duty-free goods to persons leaving the jurisdictional limits of Puerto Rico shall be exempt from the payment of excise taxes. This exemption shall be granted when the store that sells them:

**(a)** Has the required license to operate this type of business.

**(b)** Meets the requirements established to such effects by the Secretary for the sale of duty-free goods and the regulations adopted for the granting of said exemption.

**(c)** Delivers the duty-free goods on board the plane or vessel in which the acquirer is to travel, or in the area or immediate boarding concourse of the air or maritime vessel.

### Section 3030.15.-- Nonprofit Charitable Institutions.--

**(a)** The organizations recognized by the Secretary as exempt from the payment of income tax pursuant to Section 1101.01(a)(1), (2)(A), (2)(B) (in the case of a civic league) and (5)(A) (in the case of nursing homes) of Subtitle A, and that upon an investigation to such effects demonstrate that they are engaged in Puerto Rico in social service work such as hospitals, dispensaries or nursing homes that, among other things, provide free transportation services to the elderly and persons with disabilities, or that are engaged in the teaching of educational material that appears in the general curriculum of the public education system of Puerto Rico, including vocational training, shall be exempt from the payment of the excise taxes fixed in this Subtitle on:

**(1)** The first five thousand dollars ($ 5,000) of the excise tax on any automobile that is not a luxury car;

**(2)** The amount of the excise taxes on trucks and buses especially designed and equipped for the transportation of persons with disabilities or the elderly; and

**(3)** Buses that, in accordance with the rules adopted by the Secretary, are necessary for the operation of the institution.

The organizations described in Subsection (a) that render free emergency services to the people of Puerto Rico shall be entitled to a total exemption on any vehicle that is donated to them under the condition that they use it to render said emergency services.

**(c)** Any institution that wishes to avail itself of the exemption of the payment of excise taxes on vehicles established in this section shall meet the following requirements:

**(1)** The organization must be recognized by the Secretary as an organization exempt from the payment of income tax pursuant to Section 1101.01(a)(1), (2)(A), (2)(B) (in the case of a civic league) and (5)(A) (in the case of nursing homes) of Subtitle A, engaged in the rendering of social services or free emergency services.

**(2)** The exempt vehicle must remain in the possession of the nonprofit charitable institution for a term of four (4) years; and

**(3)** In the case of institutions that render emergency services, it shall be necessary for the donor to obtain express authorization from the Secretary acknowledging the exemption prior to donating the vehicle.

**(d)** If at any time after its acquisition, the nonprofit charitable institution sells, transfers, or otherwise alienates the vehicle exempt from the partial payment of excise tax, the new acquirer shall be bound to pay the excise tax that results from the application of the table contained in Section 3020.08 of Chapter 2 of this Subtitle, taking as basis the taxable price over which the partial exemption was granted minus depreciation, prior to taking possession thereof. It shall be the duty of the exempt nonprofit charitable institution to demand evidence of the payment of the excise tax from the new acquirer prior to delivering the vehicle to him/her. Likewise, a notice and payment of excise taxes shall be required in every case in which any other exempt goods is sold, transferred, or alienated.

**(e)** The exemptions granted in this section shall not apply to fuel.

**(f)** Every nonprofit charitable institution that wishes to acquire any goods or vehicle for the exclusive use of the institution, free from the payment of the excise taxes fixed in this Subtitle, must request it in advance

from the Secretary. The equipment it wishes to acquire shall be described in the petition as well as the necessity and convenience of its acquisition.

**(g)** For purposes of this section and of other applicable provisions of this Subtitle, "social services" shall mean any systematic and effective program to improve living conditions in the rural zones or slum areas in Puerto Rico, also including the hospitalization of insolvent or needy persons, the maintenance of outpatient clinics, the teaching of educational material comprised in the public education system of Puerto Rico, vocational training, reeducation or reorientation of persons with deficiencies in their physical or mental development, and the maintenance of prevention centers, sanitariums, reformatories, and orphanages.

**(h)** In the case of religious institutions engaged in different activities, the exemption shall apply to those programs or units of the institution that are exclusively engaged in social service work. With regard to teaching, the fact that religious doctrine is taught shall not be an impediment for the granting of this exemption if, in the judgment of the Secretary, the teaching of the courses in the general curriculum of the public education system of Puerto Rico and vocational training prevails.

**(i)** "Nonprofit charitable institution" shall mean that partnership, association, organization, or entity that renders social services free of charge, at cost price or at less than cost price, or if at more than cost price, the amount of the profits is invested in extending the physical structure or the social services, including the American Red Cross and the United Way of Puerto Rico. The Secretary may, at any time, prospectively revoke his/her recognition to these institutions as an exempt person, when he/she determines that the institution does not qualify as a "nonprofit charitable institution," based on the following considerations, among others:

    **(1)** That it pays its directors, officers, officials, or employees salaries, per diems, perquisites, or other emoluments higher than those prevailing for similar institutions of the Government of Puerto Rico.

    **(2)** That it incurs in extravagant expenses, or its expenditures are not clearly related to the objectives of social services as established in this section; and

    **(3)** That it refuses, as required by the Secretary, to file any reports on its operations and the services rendered, or its accounting books.

**Section 3030.16.-- Exemptions on Goods Acquired by Government Agencies.--**

**(a)** Any goods acquired for official use by the agencies and instrumentalities of the Government of the United States of America shall be exempt from the payment of the excise taxes imposed in this Subtitle.

**(b)** Vehicles, ships, and heavy construction equipment acquired for official use by the departments, agencies, administrations, bureaus, boards, commissions, offices, public corporations, public instrumentalities and municipalities of the Government of Puerto Rico, including the Legislative Branch and the Judicial Branch, shall be exempt from the payment of the excise taxes prescribed in Section 3020.08 of Chapter 2 of this Subtitle.

**(c)** Every automobile of the Government of the United States of America and the Government of Puerto Rico sold in public auction shall be subject to the payment of the excise taxes imposed by this Subtitle for used vehicles.

**(d)** It shall be considered that the excises taxes on an goods acquired by the Department of the Treasury have been paid at the introduction of said goods when said goods have been acquired as a prize as part of the Sales and Use Tax Oversight Program, known as "IVU Lotto", as part of the prizes awarded under Act No. 10 of May 24, 1989, as amended [15 L.P.R.A. §§ 801 et seq.], known as "Additional Lottery System," or by any other purpose. The excise tax imposed in Section 12 of Act No. 10 of May 24, 1989, as amended, on the prizes awarded by the Department of The Treasury shall not apply to non-cash prizes, either.

The agency that auctions the vehicle shall require from the acquirer proof as to the payment of the excise tax before delivering the vehicle to him/her.

**Section 3030.17.-- Exemption on Goods Belonging to Persons in Government Service.--**

**(a)**   Persons in the service of the Government of the United States of America or of the Government of Puerto Rico who are officially transferred to render services in Puerto Rico shall be entitled to introduce into the Island one (1) vehicle exempt from excise taxes, provided such introduction is as a result of and contemporaneous with the transfer order.

**(b)**   Servicemembers in the Armed Forces of the United States of America that are transferred to Puerto Rico, or to any foreign country, shall also be entitled to the exemption. In such cases, the exemption shall be extended to the spouse and dependents of the service member domiciled in Puerto Rico who is transferred from the United States or any other foreign country to serve in a place where he/she is not allowed to take his/her family and that for said reason is forced to introduce such vehicle to Puerto Rico.

**(c)**   For purposes of the exemption provided in this Section, the term "dependent" shall mean the father, mother, or any other relative that lives under the immediate custody of the servicemember and that must return to Puerto Rico because said servicemember has been assigned to serve in a place where he/she cannot take them.

**(d)**   Servicemembers who live abroad by themselves without their spouse or any other dependent, through which the person may introduce the aforementioned vehicle to Puerto Rico, may send it to the spouse or closest relative accompanied by a certified copy of the transfer order.

**(e)**   The exemption allowed in this section shall cease at the time in which the transferred person or the spouse or dependent of the servicemember, when he/she is the introducer, sells or transfers the vehicle so introduced or remitted. The new acquirer shall pay the corresponding excise taxes at the time of the sale or transfer.

**Section 3030.18.-- Exemption on Cigarettes.--**

**(a)**   Cigarettes sold or transferred to foreign flag ships and of United States registration and those sold to foreign warships and to ships of a foreign country on courtesy visits to Puerto Rico, shall be exempt from the tax imposed in this Subtitle. This exemption shall only be allowed when the cigarettes are delivered in accordance with the rules and procedures established by the Secretary and the violation thereof shall entail the obligation of the introducer or the distributor, as the case may be, to pay the corresponding excise taxes. The introducers or distributors who wish to avail themselves of this exemption shall post a bond to answer for the payment of said excise taxes.

**(b)**   Cigarettes which, having been withdrawn from the factories or ports, are removed from the market because they are unsuitable for consumption, shall likewise be exempt from the payment of excise taxes, provided they are destroyed under the supervision of the Secretary. In such case, the Secretary shall refund or credit the tax to the person who paid it.

**Section 3030.19.-- Exemption on Gasoline or Contaminated Diesel Oil or for Marine Use.--**

**(a)**   Gasoline and diesel oil which, before or when being pumped from a ship or from the refineries into tanks or facilities in Puerto Rico, have become contaminated with water or other products and thereby rendered unusable or not to be sold commercially shall be exempt from the excise tax imposed in this Subsection. This exemption shall be granted only if the contamination was accidental and not attributable to negligence on the part of the introducer, manufacturer, or wholesale distributor or his/her agents or employees, and when the facts can be subject to visual verification or technical analysis by state fiscal officials or Customs Service Officials of the United States of America.

**(b)**   Diesel oil or gas oil distributed for use outside Puerto Rico shall likewise be exempt from the excise taxes imposed in this Subtitle, including the supply of gas oil or diesel oil to ships to be used by them in trips by sea between Puerto Rico and other places. For purposes of this exemption, the term "trips by sea" does not include trips or voyages for recreational or sports purposes.

**Section 3030.20.-- Partial Exemption on Gasoline for Air or Marine Use.--**

The Secretary shall refund the amount of eleven cents (11 [cent]) for each gallon of gasoline which has been used in sea and air trips between Puerto Rico and other places outside of the territorial limits of Puerto Rico. For purposes of this section, the term "trips by sea or air" does not include flights or air trips, nor recreational or sports sea trips or voyages.

**Section 3030.21.-- Vessels Used for Towing or Bunkering Services.--**

**(a)** All vessels used to render towing services within or outside territorial waters shall be exempt from the payment of the taxes under this Subtitle.

**(b)** Likewise, all towing vessels and barges used for bunkering other vessels shall be exempt. For purposes of this exemption, the service may be rendered within or outside territorial waters.

**CHAPTER 4 --** TAX ON CERTAIN TRANSACTIONS

**Section 3040.01.-- General Tax Provision on Certain Transactions.--**

A tax shall be imposed, collected, and paid at the rates fixed in Sections 3040.02 and 3040.03 on winnings in racing pools, parimutuels, *quinielas*, daily doubles, subscription funds, and any other wager in the racetracks of Puerto Rico on official bets on horse races. The tax imposed on said transactions shall be paid at the time and in the manner established in this Subtitle.

**Section 3040.02.-- Taxes on Winnings from Racetrack Wagers.--**

A ten percent (10%) tax on all the winnings in the pari-mutuels, and twenty percent (20%) on all the winnings in pools, *quinielas*, daily doubles, subscription funds, or obtained in any other legally authorized wager at the racetracks in Puerto Rico shall be imposed, collected, and paid.

**Section 3040.03.-- Tax on Horse Racing Betting.--**

A tax of five cents (5 [cent]) shall be imposed, collected, and paid on each *papeleta* bet; a tax of fifteen cents (15 [cent]) on each double bet, *exacta* bet, and any other legally authorized bet; and a tax of twenty-five cents (25 [cent]) on any pari-mutuel bet made at horse racing agencies established pursuant to Act No. 83 of July 2, 1987 [15 L.P.R.A. §§ 198 et seq.], known as the "Puerto Rico Horse Racing Sport and Industry Act."

**CHAPTER 5 --** RETAIL AND WHOLESALE LICENSING FEES FOR CERTAIN GOODS AND OTHER BUSINESSES OR ACTIVITIES

**Section 3050.01.-- License Fees for Wholesale or Retail Dealers of Certain Goods.--**

**(a)** Any wholesale or retail dealer of any of the goods listed hereinafter, who sells the goods at a fixed place or as an itinerant merchant, shall pay an annual tax as a license fee at the rate established in the following table:

| DEALERS | FEES |
| --- | --- |
| Cigarettes -- Wholesale | $ 200 |
| Cigarettes -- Retail in a fixed place, by an | $ 100 |
| itinerant merchant, or in a vending | |

2011 PR H.B. 3070

| DEALERS | FEES |
|---|---|
| machine | |
| Cigarettes -- Wholesale from a motor vehicle, per vehicle | $ 100 |
| Gasoline -- Wholesale | Class A - $ 6,000 |
| | Class B - $ 2,500 |
| Gasoline -- Retail | Class A - $ 900 |
| | Class B - $ 100 |
| Sale of alcoholic beverages, cigarettes, and auto parts and accessories -- Retail | $ 200 |
| Motor vehicles -- Dealers | Class A - $ 1,000 |
| | Class B - $ 200 |
| Auto parts and accessories -- Wholesale and retail | Class A - $ 2,000 |
| | Class B - $ 800 |
| | Class C - $ 100 |
| Cigarettes and alcoholic beverages for a limited time only (15 days) -- Retail dealers | $ 25 |
| Auto shows for a limited time only (vehicles, parts, and accessories) -- Retail dealers | $ 100 |
| Cement -- Manufacturer or wholesale dealer | Class A - $ 250,000 |
| | Class B - $ 200,00 |
| | Class C - $ 80,000 |
| Armory -- Arms and munitions dealer | $ 200 |

**(1)**  For purposes of this section and the other provisions applicable to this Subtitle, the following terms shall have the meaning expressed herein below:

**(A)**  "Dealer" shall mean any person who is engaged in the business of selling or exchanging goods, whether at a fixed place or as an itinerant merchant, or who displays the goods to the public in a shop window, unless such goods, in a strictly indispensable number, do not have any other purpose than the exhibition of such goods, or that acquires goods in such amount over normal consuming needs. The term "manufacturer" does not include a person engaged in the financial leasing or daily rental of goods and who, incidental to said business or businesses, sells goods object of financial leasing or daily rental.

**(B)**  "Wholesale Dealer or Wholesaler" shall mean any person that sells to a dealer, regardless of whether he/she maintains stock of goods in the places where he/she deals or regarding such sale.

**(C)**  "Retail Dealer or Retailer" shall mean any dealer that sells exclusively for individual use and consumption, without intermediaries.

**(D)**  "Itinerant Dealer" shall mean any person engaged in the business of selling or exchanging goods and whose characteristic is that said business does not have a fixed place from which to operate.

2011 PR H.B. 3070

**(b)**  For purposes of this section, a manufacturer who sells or disposes of goods at wholesale in and from his/her own plant, or exhibits them there without selling or disposing of them at retail prices, shall not be deemed to be a dealer, except for hydraulic cement manufacturers, who shall be deemed to be dealers for purposes of this Subtitle.

**(c)**  The fees fixed in the preceding table shall apply separately for each of the goods dealt, and for each kept establishment.

**(1)**  The Secretary shall determine the license category which must be obtained by every dealer according to the goods dealt, the form, manner and volume of sales.

**(2)**  The license must be displayed in a place that is visible to the general public at the fixed or moving location in which the dealer sells the goods for which it is issued.

**(3)**  In the case that cigarettes, alcoholic beverages, and auto parts and accessories are sold in the same location, the license for "Retail Dealer in Cigarettes and Alcoholic Beverages for a Limited Time Only" may be requested, all other requirements and permits for the sale of such goods must also be complied with, and in order to qualify for this consolidated license, the main business activity cannot be the particular sale of one of such goods, or generate an earnings volume greater than five million dollars ($ 5,000,000) per year.

**(d)**  In the case of itinerant dealers, each vehicle used in the sale or distribution of taxable goods is deemed to be a separate establishment. Every itinerant dealer who maintains a stock of goods in any place other than where he/she usually deposits the goods during inactive periods shall have the obligation of obtaining a fixed place dealer's license for each place where he/she maintains a stock of taxable goods, in addition to the itinerant dealer license.

**(e)**  Licenses shall be granted for the operation of cigarette vending machines to be placed or operated by the concessionaires.

**(1)**  The licensing fees established herein shall be applied separately for each cigarette vending machine imported or distributed.

**(2)**  The license shall be visibly displayed to the public in each machine to which it applies.

**(3)**  Every cigarette vending machine operator shall, when requesting the appropriate licenses, inform the Secretary the location of every machine he/she operates or leases, specifying the name and address of the operator or lessor, the brand and serial number of said machines or devices, or the place or specific address in which each machine or device is operating. If the operator wishes to relocate the machines or devices, he/she shall notify the Secretary beforehand in the form and terms that the Secretary establishes through regulations or any determination of public nature that he/she issues to such effects. Failure to notify the Secretary of the change in location of any machine operated under this Section, or the relocation of any of them to places not authorized by the Code or any special applicable law, shall entail the payment of a five hundred dollar ($ 500) fine per infraction.

**(4)**  When the cigarette vending machine is located in a business or commercial establishment where admission is not restricted for persons under eighteen (18) years of age, it shall be the responsibility of the concessionaire to place the machine in an area to which minors do not have access. At the time of operating the machine, the owner or Executor of the business or commercial establishment may require any person who does not appear to be over twenty-seven (27) years of age, a photo identification that is valid on its face that proves that the person is over eighteen (18) years of age. Failure to comply with the above required responsibility shall entail the suspension of the license fees as provided in Section 3050.06 of this Code, and a fine of not less than five thousand dollars ($ 5,000) nor greater than ten thousand dollars ($ 10,000) shall be imposed, depending on the nature of the noncompliance, to the owner or Executor of the business or commercial establishment in which the cigarette vending machine is located or operated.

**(f)**   Wholesale cigarette dealers carrying out operations from motor vehicles shall obtain, on an annual basis, a license from the Secretary for each motor vehicle. The fees to be paid for each license are established in Subsection (a) of this Section.

**(g)**   The license for "Retail Dealer in Cigarettes and Alcoholic Beverages for a Limited Time Only" and the license for "Sale of Alcoholic Beverages, Cigarettes, and Auto Parts and Accessories -- per location -- Retail" provided in Subsection (a) constitute the same type of license provided in Section 5022.01(a) of the Code; therefore, the dealers shall pay the applicable fees for only one (1) of such licenses.

**(h)**   Except as provided in this Code, or that which is specifically established by a special law, no law that authorizes a tax exemption, or by virtue of which a tax exemption is granted shall apply, in whole or in part, to the taxes or license fees established in this Subtitle.


**Section 3050.02.-- License Fees for Coin Operated Machines.--**

**(a)**   Any person who operates pool tables or amusement machines or devices operated by coins or tokens shall pay an annual tax on account of license fees in the amount indicated below:

| | |
|---|---|
| (1) For each jukebox, pool table, amusement machine or device operated by coins or tokens of a mechanical, electronic type, or video games intended for children and youths, when the abilities or skills of the player significantly affect the final result of the game. | $ 100 |
| (2) For each video and electronic game machine operated by coins or tokens that contains violent material or of a sexual nature, when the abilities or skills of the player significantly affect the final result of the game. | $ 400 |
| (3) For each adult entertainment machine, as defined in Act No. 11 of August 22, 1933, as amended, known as "Games of Chance Act." | $ 2,250 |

**(b)**   The license fees established above will be applied separately for each coin or token-operated amusement machine or device, as well as for each pool table that is imported or distributed. The license shall be displayed in a visible manner to the public on each machine or device to which it belongs.

**(c)**   Every operator of coin or token-operated amusement machines or devices, of pool tables and cigarette vending machines must, at the time he/she requests the appropriate licenses, inform the Secretary about the location of all the machines or devices which he/she operates or leases, specifying the name and address of the operator or lessor, the make and serial number of the machines or devices and the exact place or address in which he/she is operating each machine or device. If the operator wishes to relocate the machines or devices, he/she shall notify the Secretary beforehand in the form and terms that the Secretary establishes through regulations or any determination of public nature that he/she issues to such effects. Failure to notify the Secretary about the change in location of any machine operated under the provisions of this Section, or the relocation of any of said machines to locations not authorized by this Code or by any special applicable law, shall entail the payment of a five hundred dollar ($ 500) fine per infraction.

**(d)   Exclusions from Tax.--**   The following shall not be required to pay the license fees established in this Section:

**(1)**   Persons who keep or have pool tables or any coin- or token-operated amusement machine or device other than for profit or gain and who do not charge or collect anything for their use;

**(2)**   Persons who operate coin- or token-operated machines or devices, such as public telephones, money-changing machines, postage-stamp vending machines, and amusement machines for the exclusive use of children; and

(3)  Persons who operate slot machines in the gambling casinos of tourist hotels in accordance with Act No. 221 of May 15, 1948, as amended [15 L.P.R.A. §§ 71 et seq.].

## Section 3050.03.-- License Fee for Businesses where Amusement Machines are Operated.--

Any person who operates a business, establishment, or locale where four (4) or more coin- or token-operated amusement machines or devices, or pool tables, are operated, shall pay an annual tax on account of license fees for each business, establishment, or locale, for the sum of two hundred dollars ($ 200). The license must be displayed in a place visible to the general public in the establishment, business, or locale for which it is granted. The exclusions to which subsection (d) of Section 3050.02 of this Subtitle refers shall also apply to license fees established in this section.

## Section 3050.04.-- License Fee for Duty-free Stores and Sea, Air, and Land Carrier Businesses.--

**(a)**  Any person who operates one of the businesses described below shall pay an annual tax on account of license fees for the following amount:

(1) For each store in the duty-free zones of air
and sea ports                                                                                     $ 1,000
(2) For each air, sea, or land carrier business                                          $ 2,000

**(b)**  The license shall be displayed in a place that is visible to the general public in the establishment or business for which it is granted.

**(c)**  For purposes of this section and the applicable provisions of this Subtitle, the following terms shall have the meaning stated below:

**(1)**  Duty-free Zone Store -- shall mean any store or business established in air or sea ports engaged in the retail sale of goods exempt from the payment of excise taxes imposed by this Subtitle to persons leaving the jurisdictional limits of Puerto Rico.

**(2)**  Air, Land or Sea Carrier -- shall mean any person engaged in providing transportation services for pay of goods introduced from abroad. These services may include, among others, the grouping or consolidation of shipments, their distribution, as well as the responsibility of transporting them from the point of entry to their final destination.

## Section 3050.05.-- Requirements for Granting Licenses.--

**(a)**  Any person who wishes to obtain a license under the provisions of this Chapter shall comply, in addition to any other requirements set forth in this Code or by special laws, with the requirements and follow the procedures and rules established by the Secretary through regulations or any determination of a public nature issued to those effects.

## Section 3050.06.-- Denial, Suspension or Revocation of the License.--

The Secretary may deny, suspend, or revoke any license requested or issued pursuant to the provisions of this Chapter to any person who does not meet the requirements of this Subtitle and to any person convicted of a felony for illegal trafficking of drugs or controlled substances, or of weapons or ammunition, or for having been convicted of a felony for violations of this Subtitle. Furthermore, in the case of dealer licenses for motor vehicles or vehicle parts and accessories, the Secretary may deny, suspend, or revoke a license when the person has been convicted of a crime in violation of Act No. 22 of January 7, 2000 [9 L.P.R.A. §§ 5001 et seq.], known as the "Vehicle and Traffic Act of Puerto Rico."

## Section 3050.07.-- Restrictions and Requirements -- Weapons and Ammunition Dealers.--

**(a)**  The Secretary shall not issue a license to deal in weapons and ammunition, as those terms are defined in Act No. 404 of September 11, 2000, as amended [25 L.P.R.A. §§ 455 et seq.], to establishments located in a person's home or residence, or in any type of vehicle or mobile establishment. Nor shall he/she issue licenses to establishments located in rural zones, unless there is a commercial area with proper sites for such purposes in the zone. Furthermore, the Secretary shall not issue any license to deal in weapons and ammunition when the building where the establishment is located does not meet the security standards required by regulations of the Puerto Rico Police for the protection of said weapons and ammunition against theft, fire, improper use, or any other risk to life and property.

**(b)  Inspection.--**  At least once a year, the Puerto Rico Police shall inspect the establishments engaged in the dealing of weapons and ammunition to determine if they meet the safety standards required by regulations. The Superintendent of the Puerto Rico Police shall issue a certificate to the Secretary approving or disapproving the security measures taken by the dealer within ten (10) days from the date of said inspection. He/she shall also send a copy of the certificate to the dealer.

**(c)  Weapons and Ammunitions Depot.--**  The required security measures established in Subsection (b) of this Section shall not apply to firearm dealers who have deposited all the weapons and ammunition they possess for sale in the Weapons and Ammunition Depot established in Item 5.13 of Act No. 404 of September 11, 2000, as amended [25 L.P.R.A. §§ 455 et seq.]. These merchants shall present a certificate from the Puerto Rico Police to the Secretary certifying that all the weapons they possess for sale have been turned over to the Depot, in lieu of the certificate on security measures.

**(d)  Negative Certification.--**  A denied security certificate, as required by subsection (b) of this section, as well as noncompliance with any one of the security measures by a dealer who has not deposited all the weapons and ammunition for sale at the Police Weapons and Ammunition Depot, or the lack of a Police certificate stating that the dealer has turned in his/her weapons for sale at the Depot, shall be sufficient cause to deny issuance or renewal of the license.

## Section 3050.08.-- Restrictions and Requirements -- Duty-free Stores.--

**(a)**  The Secretary shall not grant any license whatsoever to a duty-free business or store at airports or sea ports unless it complies with the applicable requirements of Section 3050.03 of this chapter.

**(b)**  The authorization to open and exploit this type of business shall be granted through public bidding. Once the authorization has been granted and the exemption recognized, the concessionaire shall operate the business subject to the regulations that the Puerto Rico Tourism Company adopts to such effects.

**(c)**  Noncompliance with any provision of this section or of the applicable regulations shall be sufficient cause to revoke or deny the renewal of the required license.

## Section 3050.09.-- Restrictions and Requirements -- Air, Sea or Land Carrier Businesses.--

No license whatsoever shall be granted to operate an air, sea, or land carrier business unless, in addition to complying with the applicable requirements of Section 3050.03 of this Chapter, the applicant presents a copy of the rates filed at the Federal Maritime Commission to the Secretary and posts a bond to secure payment of the taxes and any surcharges, interest, or penalties that may be imposed under this Subtitle.

## Section 3050.10.-- License Transfer.--

**(a)**  Upon prior written application of the holder of a license issued under this Subtitle for use or exploitation in a particular site or building, the Secretary may approve the authorization for the transfer of said license to another site or building. Except for the provisions of Subsection (b), the licenses required by this Subtitle may not be transferred from one person to another.

**(b)**  When the holder of a license granted pursuant to the provisions of this Code sells or transfers the same to another person, the latter may continue the business for a term not to exceed one hundred and twenty

(120) days after the time of the sale or transfer, term during which he/she shall certify to the Secretary compliance with the requirements established by law and by regulations to hold a license permanently.

**(c)** For such purpose, the buyer shall be required to inform the transaction to the Secretary within ten (10) days after it takes place, and the Secretary shall issue a temporary permit in his/her name backed by the license in effect, the term of which shall not exceed the remainder of the sixty (60)-day term previously granted.

**(d)** The license and temporary permit of any business sold or transferred shall be automatically cancelled one hundred and twenty (120) days after the time of the sale or transfer transaction.

**(e)** In case of the death of the holder of a license required by this Subtitle, the spouse, child, heir, executor, Executor, or other legal representative of the deceased license holder may continue the decedent's business during the remaining period for which the deceased had paid the license fees, without having to make additional payments for said period.


**Section 3050.11.-- Secretary's Authorization to Carriers for Merchandise Delivery.--**

**(a)** No sea, air, or land carrier who has taxable goods under this Subtitle in custody, may deliver them to the consignee or person properly claiming them unless the person presents a certificate from the Secretary authorizing their delivery. Any carrier who violates this provision shall be subject to the imposition of an administrative fine as provided in this Code and to the payment of the tax corresponding to said goods, including surcharges and interest computed from the time of introduction of the goods, when the taxpayer fails to make such payment. Likewise, the license issued to him/her may be suspended.

**(b)** When the sea, air or land carrier is bound to deposit shipments of goods from abroad subject to taxation under this Subtitle in the custody of the Federal Customs Service, pursuant to applicable customs regulations, the obligation of not authorizing delivery through the Carrier's Certificate and Release Order shall rest on the carrier unless he/she has obtained the Secretary's certificate attesting to the payment of such taxes. The sea, air, or land carrier that, through the Carrier's Certificate and Release Order, authorizes delivery of such goods without the Secretary's certificate shall be subject to the imposition of an administrative fine and payment of the corresponding taxes thereon, including surcharges and interest computed from the time of introduction of the goods.


**Section 3050.12.-- Exemption for Manufacturers.--**

Manufacturers of goods subject to the taxes fixed by this Subtitle shall be exempt from the payment of license fees required in this Chapter provided their manufacturing activities are developed completely isolated from the manufacturer's premise or site in which any business, occupation, or activity subject to the license fees established by this Subtitle is performed. The exemption established by this section shall not apply to manufacturers of hydraulic cement, who must obtain the license required in Section 3050.01 of this Subtitle.


**CHAPTER 6 --**  TIME, FORM OF PAYMENT, AND WITHHOLDING


**Section 3060.01.-- Payment of Taxes on Goods Introduced from Abroad.--**

**(a)** In the case of goods taxed by this Subtitle that are introduced from abroad in any way, the person liable for the payment of taxes or the taxpayer shall be:

**(1)** The consignee, if the goods are directly consigned to a consignee.

**(2)** The person determined by the Secretary pursuant to the economic reality of the transaction when the goods are sent to the order of a shipper or to an intermediary, or when the consignee is not defined. If the goods are not claimed within thirty (30) days from the time of introduction, the taxpayer shall be the shipper.

**(3)** The person or member of the crew who introduces the goods when they are introduced by a person coming from abroad.

**(b)** The tax on goods introduced from abroad shall be paid as established below, as the case may be:

**(1)** In the case of goods introduced to Puerto Rico by any means other than the mail or personally, the tax shall be paid before the taxpayer takes possession of the goods.

**(2)** In the case of goods introduced by mail by any person, the tax shall be paid not later than the fifth (5th) business day following the day the taxpayer takes possession of the goods.

**(3)** In the case of goods introduced by a person arriving from abroad, the tax shall be paid not later than the fifth (5th) business day following the day that person arrives in Puerto Rico.

**(4)** Notwithstanding the provisions of paragraph (1), in the case of goods introduced into Puerto Rico by a bonded importer, the tax shall be paid not later than the tenth (10th) day of the month following the month on which he/she takes possession of the goods. Regardless of the above, in the case of vehicles introduced by bonded authorized dealers, the tax shall be paid not later than six (6) months after the time of their introduction or within fifteen (15) days following the time of sale, or within fifteen (15) days following the time which the dealer has allowed for the use of the vehicle on public thoroughfares, whichever occurs first.

**(5)** Any bonded importer-dealer, upon previous authorization of the Secretary, may sell motor vehicles from its inventory to another bonded dealer, without said event being deemed as a taxable sale. In such case, the bonded importer-dealer, as well as the acquiring bonded-dealer, shall be required to declare said transaction to the Secretary within the term established in Section 3020.08 of this Subtitle. The bonded-dealer who acquired the motor vehicles from the bonded importer shall be responsible for the payment of the excise taxes. The sale transaction described herein shall not extend the term provided above for the payment of the excise taxes on said vehicles, which shall continue to be counted from the time the vehicles are introduced.

**(c)** The payment of taxes established in this Subtitle shall be made via electronic transfer in those cases in which the Secretary so requires through regulations, circular letter, informative bulletin, or administrative determination of a general nature.

**Section 3060.02.-- Payment of Taxes on Goods Manufactured Locally.--**

**(a)** In the case of goods taxed by this Subtitle that are manufactured in Puerto Rico, the person responsible for the payment of the tax, or the taxpayer, shall be the manufacturer. Notwithstanding the above, when dealing with oil products manufactured in Puerto Rico, and when there is a mutual agreement or accord approved by the Secretary between the manufacturer and the bonded dealer-distributor for the latter to distribute the manufactured product, the dealer-distributor shall be the taxpayer.

**(b)** The tax on goods manufactured in Puerto Rico shall be paid no later that the tenth (10th) day of the month following the month in which the taxable event occurs. In the case of oil products manufactured in Puerto Rico in which there is a mutual agreement or accord between the manufacturer and the bonded dealer-distributor for the latter to distribute the manufactured product, the tax shall be paid not later than the tenth (10th) day of the month following the month of the sale of the product, or of the month in which the transfer of the dealer-distributor's tanks begins.

**Section 3060.03.-- Payment of Taxes on Prizes from Wagers at Racetracks.--**

The tax fixed in Section 3040.02 of this Subtitle on prizes obtained in pools, pari-mutuels, *quinielas*, daily doubles, subscription funds, or in any other wager at racetracks shall be paid by the winner of any prize and the total tax shall be deducted and withheld from the winnings at the time the amount corresponding to such prize is paid to him/her.

2011 PR H.B. 3070

**Section 3060.04.-- Payment of Taxes on Printed Betting Forms for Horse Race Wagers.--**

In the case of the taxes fixed in Section 3040.03 of this Subtitle on the official printed forms for stamping bets at racing agencies, the person responsible for their payment or the taxpayer shall be the person who uses the forms. The payment shall be for each wager transaction in the printed betting form. This tax shall be paid at the time the racing agent stamps the corresponding printed form.

**Section 3060.05.-- Responsibility for Withholding Taxes.--**

**(a)** Every person who operates a racetrack or racing agency shall have the obligation to collect, withhold, and remit the taxes fixed by Sections 3040.02 and 3040.03 of this Subtitle to the Secretary.

**(b)** The persons described in paragraph (a) shall post a bond in the amount fixed by the Secretary through regulations, in order to secure the timely payment of all taxes that must be collected pursuant to this Subtitle, as well as to answer for any surcharge, interest, or administrative fine imposed in the event of a violation of the provisions of this Subtitle and its regulations.

**Section 3060.06.-- Payment of Taxes on Freight Carriers.--**

**(a)** Pursuant to the regulations to be approved, the Secretary may authorize air and sea freight carriers to pay the excise taxes on goods subject to taxation under this Subtitle introduced into Puerto Rico by their clients and authorize these carriers to take possession thereof, taking into consideration the volume or frequency of the carrier's imports, as well as his/her record in paying excise and other taxes.

**(b)** Every carrier who wishes to be authorized to pay excise taxes in representation of his/her clients shall request it in writing on the form provided such purposes by the Secretary. If such authorization is granted, he/she shall post a bond satisfactory to the Secretary to secure the payment of all the corresponding excise taxes and any surcharges, interest, or administrative fines imposed on this account under this Subtitle, before taking possession of the goods. Said bond shall be posted with the Secretary in cash, letter of credit, or through a bonding company duly authorized to post bonds under the laws of Puerto Rico.

**(c)** The Secretary may also impose any other requirements with respect to goods subject to taxation under this Subtitle that could lead to the best operation of the system, such as the requirement to pay electronically.

**Section 3060.07.-- Term to Remit Withheld Taxes to the Secretary.--**

Every person who pursuant to Section 3060.03 of this Subtitle is bound to collect and withhold taxes on prizes obtained from race track wagers and from the official forms for stamping bets shall remit the amount of the taxes collected to the Secretary not later than the second (2nd) business day following the day the races for which they were collected.

**Section 3060.08.-- Term for License Fee Payment.--**

**(a)** The license fees required in Sections 3050.01, 3050.02, 3050.03, and 3050.04 of this Subtitle shall be paid on an annual basis. In the case of new licenses, the required license fees shall be paid proportionately to the number of months during which they shall be valid in accordance with the table in paragraph (b). In these cases, the payment shall cover, and be apportioned to, the total number of months from the date in which the new license is issued to the date in which the payment of the license fee is once again due. Notwithstanding, the taxpayer shall have the option to make the payment corresponding to the number of months from the date in which the new license is issued to the date in which the payment of the license fee is once again due, plus and additional year. In the cases in which the taxpayer opts for this option of payment, the license shall cover the number of months that such a payment covers.

2011 PR H.B. 3070

**(b)**   The license fee payment due date shall be based on the last digit of the taxpayer's social security number or employer identification number, as applicable, according to the following table:

| Last digit of social security number | Month in which the license fee is due |
|---|---|
| 1 | January |
| 2 | February |
| 3 | March |
| 4 | April |
| 5 | May |
| 6 | June |
| 7 | July |
| 8 | August |
| 9 | September |
| 0 | October |

**(c)**   No person shall engage in, or shall continue a business, trade, or occupation for which a license is required until the fees have been paid in the manner and time established in this Subtitle.

### Section 3060.09.-- Manner in Which the Tax Shall be Paid.--

**(a)**   The excise taxes, taxes, or license fees fixed by this Subtitle shall be paid by postal or bank money order, legal tender, credit card, or in any other manner established by the Secretary by regulation.

**(b)**   When the payment of the excise taxes on motor vehicles is made by check, it must be a manager's, official, or certified check; exempt from this requirement are those taxpayers with adequate bond to guarantee the total payment of the excise taxes.

**(c)**   The Secretary may require taxpayers with a history of issuing checks that have been returned by the banks to make subsequent payments by certified, official, or manager's check.

**(d)**   When the due date for the payment of an excise tax, tax, or any license fee is not a business day, or when the taxpayer is unable to make the payment because the Internal Revenue Collector's Offices are closed to the public during business hours, the payment shall be made on the next day said offices are open.

### Section 3060.10.-- Extension for the Payment of Taxes.--

**(a)**   The Secretary may extend the term established in this Subtitle for the payment of excise taxes on goods introduced into Puerto Rico and authorize the introducer to take possession thereof, taking into consideration the volume or frequency of the introducer's imports, as well as his/her history of excise tax payments.

**(b)**   Every taxpayer interested in being granted an extension to pay excise taxes shall request it in writing on the form provided by the Secretary for such purposes, and if such extension is granted before taking possession of the goods, he/she shall post a bond to the satisfaction of the Secretary to secure the full payment of the corresponding excise taxes and of any surcharges, interest, or administrative fines imposed for not paying them within the term fixed in this Subtitle. The bond must be posted with the Secretary by means of a cash deposit, letter of credit, or through a company duly authorized to post bonds pursuant to the laws of Puerto Rico.

(c)  Except as otherwise provided in any other section of this Subtitle, no extension for the payment of excise taxes may exceed ten (10) days, counting from the last day of the month in which the goods are taken possession of.

## Section 3060.11.-- Disposition of Funds.--

The product from taxes and license fees collected by virtue of this Subtitle shall be deposited into the General Fund of the Treasury of Puerto Rico except as provided below:

(1)  The total tax collected on gasoline and four cents (4 [cent]) of the gas oil or diesel oil tax fixed by Section 3020.06 of this Subtitle, and up to one hundred and twenty million dollars ($ 120,000,000) per fiscal year of the excise tax collected for crude oil, partially finished and finished oil by-products, and other hydrocarbon mixtures fixed in Section 3020.07 of this Subtitle, shall be covered into a special deposit in favor of the Highways and Transportation Authority for its corporate purposes.

(A)  The Secretary shall transfer every month, or as agreed with the Highways and Transportation Authority, the amounts covered into said special deposit, deducting from these the amounts reimbursed according to the provisions of Section 3030.19 and 3030.20 of this Subtitle.

(B)  The Secretary of the Treasury shall pay the one hundred and twenty million dollars ($ 120,000,000) per fiscal year proceeding from the excise tax on crude oil, partially finished and finished oil by-products, and any other mixture of hydrocarbons fixed in Section 3020.07 of this Subtitle in monthly contributions of up to eleven million dollars ($ 11,000,000). If, in any month of the fiscal year, the collection on account of said excise tax is not sufficient to meet the monthly payment of eleven million dollars ($ 11,000,000) herein provided, the Secretary shall pay said deficiency using the excess of the eleven million dollars ($ 11,000,000) collected on account of said excise tax in previous months or in subsequent months of the same fiscal year.

(C)  The Highways and Transportation Authority is hereby authorized to commit or pledge the proceeds of the collection thus received on gasoline and the tax of four cents (4 [cent]) on gas oil or diesel oil fixed in Section 3020.06 and the amount appropriated by virtue of this Subtitle of the excise tax on crude oil, partially finished and finished oil by-products, and any other mixture of hydrocarbons fixed in Section 3020.07, for the payment of the principal and the interest on bonds or other obligations or for any other legal purpose of the Authority. Said commitment or pledge shall be subject to the provisions of Section 8 of Item VI of the Constitution of the Commonwealth of Puerto Rico. The proceeds of said collection shall be solely used for the payment of interest and amortization of the public debt, as provided in said Section 8 of Item VI of the Constitution, until the other resources available to which reference is made in said section are insufficient for such purposes. Otherwise, the proceeds of said collection, in the amount that may be necessary, shall be used solely for the payment of the principal and interest on bonds and other obligations of the Authority and to comply with any stipulations agreed to by the latter with the holders of said bonds or other obligations.

(D)  The Government of Puerto Rico hereby agrees and is committed to any person, firm, or corporation, or any agency of the United States of America, or of any state or of the Government of Puerto Rico, that subscribes or acquires bonds of the Highways and Transportation Authority of Puerto Rico for the payment of which the proceeds of the tax on gasoline, gas oil, or diesel oil and the amount appropriated of the excise tax on crude oil, partially finished and finished oil by-products, and any other mixture of hydrocarbons fixed in Section 3020.07 are thus pledged, as authorized by this section, to not reduce the tax on gasoline, gas oil, or diesel oil fixed in Section 3020.06, to an amount of less than sixteen cents (16 [cent]) per gallon of gasoline or of four cents (4 [cent]) per gallon of gas oil or diesel oil, respectively, and to not reduce the rates fixed in Section 3020.07 in effect by the date of approval of this Code. It also agrees and is committed to not eliminate or reduce the tax to an amount less than sixteen cents (16 [cent]) per gallon of gasoline or of four cents (4 [cent]) per gallon of gas oil or diesel oil fixed in Section 3020.06 of this Subtitle, nor reduce or eliminate the rates of the excise tax on crude oil, partially finished and finished oil by-products, and any other mixture of hydrocarbon fixed in Section

3020.07. It also agrees and is committed to ensure that said amounts shall be covered into a special deposit in the name and for the benefit of the Highways and Transportation Authority of Puerto Rico, as provided in this Section, until said bonds issued at any time, including their interest, have been paid in full.

**(E)**   The payer of the excise tax on the sale of gasoline, gas oil or diesel oil, crude oil and other oil by-products shall furnish to the Highways and Transportation Authority copies of the tax statements and excise tax payment receipts.

**(F)**   In case the amount of the proceeds of the tax on gasoline, gas oil, or diesel oil fixed in Section 3020.06 or the amount of the excise tax on crude oil, partially finished and finished oil by-products, and any other mixture of hydrocarbons fixed in Section 3020.07, appropriated or to be appropriated in the future to said Highways and Transportation Authority may at any time be insufficient to pay the principal and the interest on the bonds or other obligations over money taken on a loan or issued by said Highways and Transportation Authority for paying the cost of traffic facilities and the payment of said tax on gasoline, gas oil, or diesel oil fixed in Section 3020.06 or that amount of the excise tax on crude oil, partially finished and finished oil by-products, and any other mixture of hydrocarbons fixed in Section 3020.07, has been pledged and the reserve funds of the Highways and Transportation Authority for the payment of the requirements of the debt apply to cover the deficiency in the amount needed to make such payments, the amounts of said reserve fund used to cover said deficiency shall be reimbursed to the Highways and Transportation Authority from the first proceeds received on the next fiscal year or subsequent fiscal years by the Government of Puerto Rico proceeding from: (1) any other taxes in effect on any other fuel or means of propulsion used, among other purposes, to propel highway vehicles; and (2) any remaining part of the tax on gasoline, gas oil, or diesel oil fixed in Section 3020.06 and the excise taxes on crude oil, partially finished products and finished products derived from oil, and any other mixture of hydrocarbons fixed in Section 3020.07 of this Subtitle that are in effect. The product of other taxes and the remaining part of the tax on gasoline and gas oil or diesel oil fixed in Section 3020.06 and on the excise taxes on crude oil, partially finished and finished products derived from oil, and any other mixture of hydrocarbons fixed in Section 3020.07 that are to be used under the provisions of this Section to reimburse the reserve funds for the requirements of the debt, shall not be covered into the General Fund of the Government of the Government of Puerto Rico when collected, but shall be covered into the aforementioned special deposit for the benefit of the Highways and Transportation Authority of Puerto Rico and subject to the provisions of Section 8 of Item VI of the Constitution of Puerto Rico, shall be used to reimburse said reserve fund for the payment of the requirements of the debt.

**(2)**   The remaining four cents (4 [cent]) of the tax on gas oil or diesel oil fixed in Section 3020.06 of this Subtitle shall be covered into a special deposit in favor of the Metropolitan Bus Authority, henceforth "The Authority", for its corporate purposes and powers. The provisions of this Subsection shall be subject to Section 8 of Item VI of the Constitution of the Commonwealth of Puerto Rico. The contribution to the Authority of these four cents (4 [cent]) shall not be deemed as surplus of the excise tax on gas oil or diesel oil.

The Secretary shall transfer from time to time as agreed with the Authority, the amounts covered into the special deposit, deducting from these the amounts reimbursable according to the provisions of Sections 3030.19 and 3030.20 of this Subtitle.


**CHAPTER 7 --**   EXCISE TAX ON CERTAIN ACQUISITIONS OF PERSONAL PROPERTY AND SERVICES BETWEEN RELATED PERSONS


**Section 3070.01.-- Tax Imposed on the Acquisition of Certain Personal Property and Services.--**

The provisions related to the excise tax on acquisitions of personal property and services between related persons made after December 31, 2010, shall be those established in Sections 2101, 2102, 2103, 2104, and 2105 of Act No. 120 of October 31, 1994, as amended [13 L.P.R.A. §§ 8006 et seq.], known as the "Internal Revenue Code of

Puerto Rico of 1994," in effect as of the date of approval of this Code, except that any reference in said sections to specific provisions of the Internal Revenue Code of Puerto Rico of 1994 (other than subsections (f) and (h) of Section 1123 of said Code) shall be understood, for purposes of this Code, as referring to the analogous provision of this Code.

## SUBTITLE D -- SALES AND USE TAX

## CHAPTER 1 -- DEFINITIONS AND GENERAL PROVISIONS

### Section 4010.01.-- General Definitions.--

For purposes of this Subtitle, the following terms, words, and phrases shall have the general meaning expressed below, except when the context clearly indicates otherwise:

**(a) Food and Food Ingredients.--**  Substances, whether they are liquid, concentrated, solid, frozen, dry, or dehydrated, that are sold to be ingested by humans and consumed because of their flavor or nutritional value. Food and food ingredients exclude the following:

**(1)** Dietary supplements;

**(2)** Alcoholic beverages;

**(3)** Tobacco and its byproducts;

**(4)** Candy, sweets;

**(5)** Pastries;

**(i)**  This term does not include bread, crackers, or any other product considered food under the Federal Nutrition Assistance Program (FNAP), which shall be exempt from the IVU.

**(6)** Carbonated beverages, and

**(7)** Prepared foods.

**(b)** Prepared Foods:

**(1)** Foods that are sold hot or that are heated by the merchant;

**(2)**  Two (2) or more food ingredients that are mixed or combined by the merchant to be sold as a single item or product, except foodstuffs that are only cut, repackaged, or pasteurized by the merchant, and eggs, fish, meat, poultry, and food that contains them in a raw state and requires cooking by the consumer, as recommended by the Food and Drug Administration in Chapter 3, Part 401.11 of the Food Code, to prevent foodborne illness; or

**(3)**  Food sold with eating utensils by the merchant, including plates, flatware, knives, forks, and/or spoons, glasses, cups, napkins, or straws. The term "plates" does not include containers or packaging used to carry food.

**(c) Store or Storage.--**  Includes maintaining or keeping in Puerto Rico tangible personal property to be used or consumed in Puerto Rico or for any purpose, excluding the sale in the ordinary course of business in Puerto Rico or abroad. To store or storage excludes the aging of distilled spirits in Puerto Rico performed pursuant to the provisions of Subtitle E of this Code.

**(d) Taxable Year.--**  The calendar or fiscal year of the taxpayer, as defined in Section 1010.01(a)(18), in those cases in which the Secretary authorizes the use of the fiscal year in lieu of the calendar year.

**(e) Item or Good.--**  Any object, device, or thing, regardless of its shape, material, or essence, and of its name.

**(f)  Lease or Leasing.--**  Any transfer of ownership or control of tangible personal property or real property for a fixed or indefinite term in exchange for cause or consideration. A leasing may include future options for purchase or extension of its term. The term "lease" or "leasing" does not include:

**(1)**  The transfer of ownership or control of property under a security agreement or payment plan that requires the transfer of title once the required payments are met;

**(2)**  The transfer of ownership or control of property under an agreement that requires the transfer of title once the required payments are met and the purchase option price does not exceed one hundred dollars ($ 100) or one percent (1%) of the total payment required;

**(3)**  Providing tangible personal property together with an operator for a fixed or indefinite term. As a condition for the exclusion, the need for an operator so that the equipment performs as designed is required. For purposes of this paragraph, an operator must provide additional services besides maintaining, inspecting, and preparing the tangible personal property for its use;

**(4)**  Agreements that involve motor vehicles or trailers when the amount of the rental payment may be increased or decreased by reference to the amount realized in the sale or disposition of the property;

**(5)**  The room occupancy tax fixed by the Puerto Rico Tourism Company;

**(6)**  The leasing of properties whose owner is the Puerto Rico Industrial Development Company or its successor entity; and

**(7)**  Financial lease constituting a sale pursuant to subsection (ww) of this Section, and the financial leases that meet the requirements set forth in Section 1(c) of Act No. 76 of August 13, 1994, as amended.

For purposes of this Subsection, the term "lease" or "leasing" may not be used in reference to generally accepted accounting principles.

**(g)  Delivery Charges.--**  The charges set by the merchant of taxable items for handling and delivery to premises designated by the purchaser of the taxable item, including, but not limited to, transportation, shipping, stamps, handling, and packaging.

**(1)**  If the delivery consists of exempt and taxable personal property, the merchant must impose the delivery charges using:

**(A)**  A percentage based on the total sales price of the taxable personal property compared to the total sales price of all the personal property delivered, or

**(B)**  A percentage based on the total weight of the taxable personal property compared to the total weight of all the personal property delivered.

**(2)**  The merchant must pay taxes on the percentage of the delivery charges pertaining to the taxable property, but does not have to pay taxes on the percentage imposed to the exempt property.

**(h)  Retailer.--**  Any person engaged in the business of selling taxable items in the Government of Puerto Rico, including any wholesaler. For purposes of this Section, a person shall be deemed to be engaged in the business of selling taxable items in the Government of Puerto Rico when:

**(1)**  The merchant maintains establishments or offices in Puerto Rico; or

**(2)**  The merchant has employees or agents in Puerto Rico who solicit business or conduct business transactions on behalf of said retailer; or

**(3)**  The merchant owns tangible personal or real property located in Puerto Rico; or

**(4)**  The merchant creates a nexus with Puerto Rico in any manner, including, but not limited to the execution of sales contracts in Puerto Rico, direct merchandising, or mail order sales, or sales through the radio, the distribution of unsolicited catalogs through computers, television, or other electronic media, or advertising in magazines or newspapers or other media; or

(5)   Through an agreement or reciprocity with another jurisdiction of the United States, and such jurisdiction uses its authority to tax and its jurisdiction over the merchant in support of the authority of Puerto Rico; or

(6)   The merchant agrees, expressly or implicitly, to the taxation imposed by this Subtitle, or

(7)   The merchant has a sufficient connection of some sort or a relationship with Puerto Rico or its residents, other than those described in paragraphs (1) through (6), for purposes of creating a sufficient nexus with Puerto Rico to impose on the merchant the responsibility of collecting the sales and use tax fixed by this Subtitle.

(i)  **Purchaser.--**  A person who acquires a taxable item.

(j)  **Consumption.--**  Includes the gradual use, deterioration, or erosion of tangible personal property.

(k)  **Department.--**  The Department of the Treasury.

(l)  **Admission Rights, Charges, or Fees.--**  The term "admission rights, charges, or fees"

(1)  Includes the amount of money paid to or for:

(A)  Admit a person or vehicle with passengers to any place of entertainment, sports, or recreation;

(B)  The privilege of entering or remaining at any place of entertainment, sports, or recreation, including, but not limited to movie theaters, theaters, open air theaters, shows, exhibitions, games, races, or any place where the admission rights, charges, or fees for are obtained through the sale of tickets, entrance fees, seating charges, charges for exclusive areas, charges for season tickets, charges for participating, or other charges;

(C)  Receiving anything of value as part of the admission or entrance to, or length of stay, or accommodation at any exhibition or place of entertainment, sports, or recreation; and

(D)  The fees and charges paid to private clubs and membership clubs that provide recreational and physical training facilities, including, but not limited to golf, tennis, swimming, sailing, sports canoeing, and fitness and gym facilities, except for those that operate as nonprofit facilities and gym facilities property of or operated by any hospital.

(2)  The term "admission rights, charges, or fees" excludes the amount of money paid to admit a person or vehicle to mass transit systems established by the Government of Puerto Rico, such as the Metropolitan Bus Authority, the Ports Authority, and the Department of Transportation and Public Works, or by an operator or subcontractor of these, including persons certified by the Government of Puerto Rico, its agencies or instrumentalities, to provide these services. It also excludes those charges to be collected by box offices or ticket services.

(m)  **Candy or Sweets.--**  Means any confection of sugar, honey, and any other natural or artificial sweetener which is combined with chocolate, fruit, nuts, or other ingredients or condiments to form bars, drops, or pieces. The term "candy" does not include confections that contain flour and that do not require refrigeration.

(n)  **In Puerto Rico.--**  Within the territorial limits of the Commonwealth of Puerto Rico.

(o)  **State.--**  Any of the states of the United States, the District of Columbia, or a possession of the United States.

(p)  **The Government of Puerto Rico.--**  The departments, agencies, administrations, bureaus, boards, commissions, offices, public corporations, public instrumentalities, and municipalities of the Government of Puerto Rico, including the Legislative Branch and the Judicial Branch. The term "Government" shall also include those persons who operate or act in the name of or on behalf of it.

(q)  **Sales Tax.--**  The tax imposed by this Subtitle on account of the retail sale, use, consumption, or storage of a taxable item in Puerto Rico.

**(r)  Use Tax.--**  The tax imposed by this Subtitle on account of use, consumption, or storage, as defined in this Section.

**(s)  Machinery and Equipment Used in Manufacture.--**  Machinery and equipment used exclusively in the manufacturing process or in the construction or repair of vessels inside or outside the premises of a manufacturing plant, including all machinery, equipment, and accessories used to carry out the manufacturing process or that the manufacturing plant is required to acquire by federal or Commonwealth laws or regulations to operate a manufacturing plant.

**(t)  Vending Machine.--**  A machine operated with coins, bills, credit or debit cards, tokens, coupons, or a similar device, to sell taxable items.

> **(1)**  The term "vending machine" includes, but is not limited to food, beverage, and cigarette vending machines.

> **(2)**  The term "vending machine" excludes:

> > **(A)**  Jukeboxes;

> > **(B)**  Slot machines operated with coins or tokens, either mechanical or electronic;

> > **(C)**  Videos for children or youths;

> > **(D)**  Video and electronic game machines that contain material of a violent or sexual nature;

> > **(E)**  Adult entertainment machines; and

> > **(F)**  Pool tables.

**(u)  Tangible Advertising or Publicity Material.--**  Includes the displays, display containers, pamphlets, catalogs, price lists, point-of-sale publicity, technical manuals, or any tangible personal property which is part of the consumer end product.

**(v)  Raw Material.--**  Any product in its natural form derived from agriculture or extractive industries, byproduct, residual product, partially finished product, or finished product, to be transformed or integrated by a manufacturing plant into finished products that are different from the product deemed raw material, or used in the manufacturing process of said products, including, but not limited to the process for the production of electric power or cement.

**(w)  Wholesaler.--**  Any person who sells to merchants.

**(x)  Medications.--**  Compounds, substances, or preparations, and any component of a compound, substance, or preparation that is not a "dietary supplement," "alcoholic beverage," or "food" or "food ingredient," except for food used in enteral nutrition:

> **(1)**  Recognized in the United States Pharmacopeia, the Homeopathic Pharmacopeia of the United States, or the National Formulary; or

> **(2)**  Destined to be used in the diagnosis, cure, mitigation, treatment, or prevention of disease; or

> **(3)**  Destined to be used to affect the structure of the body or any bodily function.

**(y)  Business.--**  Any for-profit or not-for-profit activity in which any person is engaged with the intention to generate profit or benefits, either directly or indirectly. "Business" includes the sale or lease of tangible personal property, as well as the sale of taxable services and admission rights.

**(z)  Operator.--**  Any person who owns a vending machine for purposes of generating sales through said machine and who maintains his/her inventory inside and removes or accredits the funds obtained by or attributable to the receipts of said vending machine.

**(aa)  Taxable Item.--**  Tangible personal property, taxable services, admission rights, and combined transactions.

**(bb)  Person.--**   Any individual, enterprise, partnership, joint venture, association, corporation, limited liability company, estate, trust, trustee or receiver, syndicate or other entity, group, or combination that acts as a unit. It also includes any government and its political subdivisions, municipalities, government agencies, bureaus or departments, and public corporations.

**(cc)  Manufacturing Plant.--**   Includes any plant engaged in assembling or integrating "tangible personal property," or devoted to transforming "raw materials" into finished products that are different from their original state. Any factory that avails itself of any tax and industrial incentive laws existing in Puerto Rico, or any substitute thereof, shall likewise be treated as a manufacturing plant for purposes of the exemption established in Section 4030.06.

**(dd)  Purchase Price.--**  Has the same meaning as the sales price.

**(ee)  Sales Price.--**

**(1)**   The amount of the consideration paid in cash, credit, property, or services in a sale of taxable items, without deducting the following:

**(A)**  The cost of the property sold, including excise taxes and taxes that this Code may impose on said property;

**(B)**  The cost of the materials, labor and service, interest, losses, all transportation costs, and taxes of the merchant, as well as all other costs of the merchant;

**(C)**   Fees billed by the merchant for any service needed to complete the sale other than the delivery or installation charges;

**(D)**  Delivery charges;

**(E)**  Installation charges;

**(F)**  The value of the exempt personal property delivered to the purchaser when tangible taxable and exempt personal property has been sold in a combined transaction, and

**(G)**  Tips and other charges imposed by a merchant as part of the sales price of the taxable item.

**(2)  Sales Price.--**  The sales price shall not include:

**(A)**  Discounts allowed by the merchant and used by the purchaser in a sale, including cash or food stamps that are not reimbursable by third parties;

**(B)**   Interest and finance charges, if they appear as separate items in the sales invoice or any similar document given to the purchaser;

**(C)**   Any tax or charge imposed by law to the consumer, if the amount is separately stated in the sales invoice or in any similar document given to the purchaser;

**(D)**  The value assigned to goods received as trade-in by the merchant as credit or as part of the payment of the sales price of the taxable item sold; and

**(E)**  Any service that is part of the sale, such as warranty service, warranty, and extended warranty.

**(ff)  Computer Software.--**   A collection of coded instructions designed so that a computer or automatic data processing equipment may carry out a function or task.

**(gg)  Tangible Personal Property.--**

**(1)**  Includes items or personal property that may be seen, weighed, measured, or touched, or that is in any manner perceptible to the senses, or that is susceptible to appropriation, including computer software and prepaid phone cards, among others.

**(2)**  The term "tangible personal property" excludes--

**(A)**   Money or the equivalent of money, stock, bonds, notes, promissory notes, mortgages, insurance, securities, or other obligations;

**(B)** Automobiles, propellants, all-terrain vehicles (ATVs), motorcycles, ships, heavy equipment, buses, and trucks;

**(C)** Intangibles;

**(D)** Gasoline, airplane fuel, gas oil or diesel oil, crude oil, partially manufactured and finished products derived from petroleum, and any other hydrocarbon mixture; except for propane gas and its byproducts and other gases of similar nature;

**(E)** Electric power generated by the Electric Power Authority or any other entity which generates electric power; and

**(F)** The water supplied by the Aqueducts and Sewers Authority.

**(hh) Real Property.--** Land, subsoil, soil, buildings, objects, machinery, equipment and tools attached to a building or to the land so as to indicate permanency. For these purposes, the objects, machinery, equipment, tools, and plants permanently attached, to wit, that cannot be removed from a building without destroying or damaging the building or property, shall be deemed as buildings. Real property is synonymous with real estate and real goods.

**(ii) Prosthesis.--** Device used to replace, correct, or assist, including the repair and replacement of parts thereof, used on or in the body for:

**(1)** Artificially replacing a missing body part;

**(2)** Preventing or correcting deformities or physical defects; or

**(3)** Assisting a weak or deformed body part.

**(jj) Endorsement.--** The authorization issued by the Secretary to a promoter approving the sale and collection of admission rights, charges, or fees to a public event, after receiving the written notice required to such effects.

**(1)** The promoter is required to request the Secretary's endorsement for the sale of admission rights, charges, or fees not later than ten (10) days before the date on which said sale begins. Failure to meet this requirement shall result in the imposition of administrative fines as provided in Subtitle F.

**(2)** Along with the endorsement, the promoter shall post a bond to the order of the Secretary in the form and manner established by the Secretary through regulations, which shall cover the amount of the taxes on admission rights, charges, or fees, as well as the payment of any interest, fines, and penalties that could be imposed pursuant to this Subtitle.

**(3)** The promoter shall have a non-deferrable term, which shall not exceed five (5) business days after the presentation of each public event, to claim the adjustment for any endorsed tickets not sold and, consequently, the redemption of the bond.

**(kk) Telecommunications Services.--**

**(1)** Shall include the following services:

**(A)** Transmissions or transfers by electronic media of voice, video, audio, or any other type of information or signal to a fixed point or between two fixed points;

**(B)** Calls to 800 numbers through which a user is allowed to make a toll-free call. This service is usually marketed under toll-free numbers "800," "855," "866," "877," and "888," and any other numbers designated by the Federal Telecommunications Commission;

**(C)** Calls to 900 numbers through which a person permits his/her subscribers to call his/her telephone to receive a prerecorded message or a live service. The charges for this service do not include collection services provided to the subscriber by the telecommunications service provider and the charges for some good or service sold to the person who makes the call. The 900 number service is typically marketed under the name "900" and any other subsequent number designated by the Federal Telecommunications Commission;

**(D)**  Fixed wireless services through which radio waves are transmitted between two fixed points;

**(E)**  The lease for the use of beepers or paging services that allow the transmission of coded messages for the purpose of activating a beeper. Said transmission may include messages or sounds;

**(F)**  Prepaid calling services that permit exclusive access to telecommunications services that have been prepaid to originate calls using an access number or code to be dialed manually or digitally, and which is sold in units or by its monetary value, which decreases with use;

**(G)**  Prepaid wireless calling services that grant the right to use the prepaid wireless telecommunications service through the sale in units or by its monetary value, which decreases with use;

**(H)**  Private communication services that entitle a subscriber to have priority or exclusive access to use a communications channel or group of channels between two points, except in the case of services acquired by the Puerto Rico Police Department to those effects;

**(I)**  Calls generated through a coin operated telephone service that provides telephone service when a coin is deposited in a telephone; and

**(J)**  Other value-added data management services, excluding voice transmission using computer software as to the contents, form, or coding of the information for purposes other than the transmission or transfer of said information;

**(K)**  Mobile wireless transmission services.

**(2)**  Shall not include the following services or charges:

**(A)**  Data or information processing that allows the generation, acquisition, storage, processing, withdrawal, and delivery of information through electronic transmission to a purchaser when the main objective of said transaction is the acquisition by said purchaser of the information thus managed or processed;

**(B)**  Installation and maintenance of cables or equipment at the client's facilities;

**(C)**  Charges for the use of tangible personal property;

**(D)**  Publicity, but not limited to the yellow pages of the phone book;

**(E)**  Billing to and collecting from third parties;

**(F)**  Internet access;

**(G)**  Audio or video programming services of radio or television programs regardless of the medium, including the broadcasting, transfer, and channeling of said services;

**(H)**  Incidental services;

**(I)**  The sale or transfer of products in digital format, including computer software, music, video, and reading materials, among others;

**(J)**  Service charges required by any local or federal law; and

**(K)**  Services to other telecommunications companies.

**(3)**  Incidental services are those services associated with the provision of telecommunications services, including the following:

**(A)**  Conference bridging services whereby two or more participants are linked in a video or voice joint transmission and which may include providing a connecting telephone number. Conference bridging services do not include telecommunications services used to access the conference call;

**(B)**  Detailed telecommunications billing services to provide details or information related to the calls made from a telephone number and other details related to the phone bill;

**(C)** Directory assistance whereby the user is provided with the telephone number or address of a particular place;

**(D)** Vertical services whereby the user is provided with one or more advanced service options, such as caller ID and multiple calls, among others; and

**(E)** Voice mail services whereby the user is able to receive, save, and send messages. Voice mail services do not include any vertical service required for the subscriber to be able to use the voice mail service.

**(4)** The term "service charges required by any local or federal law" shall include the following:

**(A)** 911 emergency services; and

**(B)** The universal service fund.

**(ll)  Designated Professional Services.--**  Means legal services and the following professional services, as regulated by their respective Boards of Examiners attached to the Department of State of Puerto Rico:

**(1)** Agronomists;

**(2)** Architects and landscape architects;

**(3)** Certified public accountants;

**(4)** Real estate brokers, salespersons, and companies;

**(5)** Professional draftsmen;

**(6)** Professional real estate appraisers;

**(7)** Geologists; and

**(8)** Engineers and land surveyors.

**(mm)  Cable or Satellite Television Services.--**  Means the distribution of video programming by cable or satellite, including the installation, leasing, or sale of related equipment.

**(nn)  Taxable Services.--**

**(1)** Means any service rendered to any person, including:

**(A)** Storage of tangible personal property, excluding motor vehicles and all types of foodstuffs;

**(B)** Leasing;

**(C)** Computer programming, including modifications to predesigned programs;

**(D)** Installation of tangible personal property by the merchant or a third party; and

**(E)** Repair of tangible personal property.

**(2)** Taxable services shall exclude the following:

**(A)** Services rendered to a person engaged in the exercise of an income-producing, or trade or business-related activity;

**(B)** Designated professional services;

**(C)** Services provided by the Government of Puerto Rico, including sewer services;

**(D)** Educational services, including registration fees;

**(E)** Interest and other charges for the use of money; and the service charges established by financial institutions, as defined in Section 1033.17(f)(4);

**(F)** Insurance services and commissions, including the underwriting of any insurance contract, and including, but not limited to life, health, property, and contingency insurance, warranty and extended warranty service contracts, title deeds, reinsurance and excess limit, disability, credit

insurance, annuities and bonds, and service fees for the underwriting of the aforementioned instruments;

**(G)** Health or medical-hospital services;

**(H)** Services rendered by persons whose annual volume of business does not exceed fifty thousand dollars ($ 50,000). When a person belongs to a controlled group as defined in Section 1010.04, the volume of business of said person shall be determined considering the volume of business of all members of the controlled group. In case of a person who is an individual, the volume of business shall be determined considering the volume of business of all of his/her income-producing, or trade or business-related activities.

**(I)** Services rendered by a "tax return, statement, or refund claim specialist," as defined in Subtitle F of this Code. For these purposes, the services excluded shall only be those related to the preparation or revision of tax returns, statements, or refund claims regarding the taxes imposed by this Code or by the United States Internal Revenue Code.

**(oo) Dietary Supplements.--** Any product, other than tobacco, used to supplement a diet and that:

**(1)** Contains one (1) or more of the following dietary ingredients:

**(A)** Vitamins;

**(B)** Minerals;

**(C)** Herbs or other botanicals;

**(D)** Amino acids;

**(E)** Dietary substances used to supplement a diet, increasing the total dietary intake, or

**(F)** Concentrates, metabolic supplements, components, extracts, or the combination of any of these ingredients, taken as pills, tablets, capsules, powder, softgels, gelcaps or in liquid form, or if taken in a manner other than the aforementioned, not presented as conventional food and not considered as the sole course of a meal or of a diet; and

**(2)** Requires to be identified as a dietary supplement on the label that contains the nutritional data, as provided in 21 CFR Section 101.36.

**(pp) Tobacco.--** Cigarettes, as defined in Section 3020.04 of Subtitle C, cigars, chewing or pipe tobacco, or any other item that contains tobacco, as said products may be defined in the future.

**(qq) Combined Transaction.--**

**(1)** The retail sale of two (2) or more tangible personal properties or services, whereby the properties or services:

**(A)** Are different and identifiable, and

**(B)** Are sold at a non-itemized total price.

**(2)** A "combined transaction" excludes the sale of any tangible personal property or service whose sales price varies or is negotiable, based on the selection by the purchaser of the properties or services included in the transaction.

**(3)** Different and Identifiable Property or Services Exclude:

**(A)** Packing materials such as containers, boxes, sacks, bags, and bottles; other materials such as wrapping paper, labels, and instruction manuals included in the "retail sale" of tangible personal property and that are incidental or immaterial to the "retail sale". Some examples of packing materials that are incidental or immaterial are: plastic bags used at supermarkets, shoe boxes, laundry bags, and postal service boxes and envelopes.

**(B)** Taxable tangible personal property obtained free of cost with the purchase of other property or service. Tangible personal property is free of cost if the sales price of the property or service acquired does not vary because free of cost property has been included.

**(4)** The term "non-itemized total price" excludes the price identified separately as tangible personal property or services in documents furnished to the purchaser, such as sales invoices, sales receipts, contracts, service contracts, lease contracts, periodic notices of rates and services, price lists, or any other similar document.

**(5)** A transaction that complies with the definition of combined transaction shall not be deemed to be a combined transaction if it is:

**(A)** A retail sale of taxable tangible personal property and of a tax-exempt service, where the taxable tangible personal property is essential for using the exempt service, is exclusively provided in connection with the exempt service and when the actual object of the transaction is to render the exempt service;

**(B)** A retail sale of more than one service in which one of the services provided is essential for using or obtaining a second exempt service, the first service is exclusively provided in connection with the second exempt service, and when the actual object of the transaction is to render the second service, or

**(C)** A transaction that includes exempt and taxable tangible personal property in which the purchase or the sales price of the taxable property is immaterial.

**(i)** For these purposes, the term "immaterial" means that the purchase or the sales price of the taxable tangible personal property does not exceed ten percent (10%) of the total sales or purchase price of the combined tangible personal properties.

**(ii)** The merchant shall use the purchase or the sales price of the taxable tangible personal property to determine whether the taxable tangible personal property is immaterial.

**(iii)** The merchant shall use the full term of the service contract to determine whether the price or value of the property is immaterial.

**(rr)  Use.--**  Includes the exercise of any right or power over a taxable item incidental to its ownership thereof, or interest on said item, including the use, storage, or consumption of any tangible promotional goods imported into Puerto Rico. The term "use" shall not include:

**(1)** When the taxable item is subsequently the object of commerce in the ordinary course of business in Puerto Rico;

**(2)** The use of taxable items that constitute normal baggage and clothing of the tourists and visitors who arrive in Puerto Rico;

**(3)** The use of taxable items with an added value that does not exceed five hundred dollars ($ 500) and which and are introduced by residents of Puerto Rico arriving in Puerto Rico from abroad; and

**(4)** The use of taxable items temporarily introduced into Puerto Rico that are directly related to film production, construction, trade shows, seminars, conventions, or for other purposes, and which will be re-exported from Puerto Rico.

**(ss)  Sale.--**

**(1)** Includes:

**(A)** Any transfer of title or ownership of taxable items, be it conditional, on installments, or otherwise, in any manner or by any means, in exchange for consideration or remuneration, including exchange, transfer, or licensing for use, among others;

**(B)** The production, manufacture, processing, or printing of taxable items in exchange for cause or consideration for the purchasers who, directly or indirectly, provide the materials used for the production, manufacture, processing, or printing;

**(C)** Providing, preparing, or serving in exchange for cause or consideration, any taxable item for consumption inside or outside the premises of the person who provides, prepares, or serves said tangible personal property;

**(D)** The transfer of taxable items requested by mail or other communication media, including the Internet, to a merchant located in or outside Puerto Rico who receives the order and transports the property or delivers it to be transported, be it by mail or other means of transportation, to a person in Puerto Rico; and

**(E)** A financial lease that constitutes a purchase according to generally accepted accounting principles, except for those financial leases that meet the requirements set forth in Section 1(c) of Act No. 76 of August 13, 1994, as amended.

**(2)** For purposes of this subsection, the term "sale" excludes the exchange exempt under Subtitle A of this Code, and the sale or exchange of all or substantially all the assets of a business, outside the ordinary course of business.

**(tt) Retail Sales.--**

**(1)** The sale, lease, or licensing of taxable items to a purchaser or to any person for any purpose, except as provided in this Subtitle, other than the resale, sublet, or sublease. This includes all those transactions that may be executed in lieu retail sales, as defined in this Subtitle. A retail sale includes the sale of taxable items which are used or consumed by a contractor in the fulfillment of a contract to the extent that the cost of the property is fixed or charged as a direct-cost item to said contract, the title of which property is acquired or transferred to the purchaser pursuant to the contract. The term "contractor" includes principal contractors and their subcontractors.

**(2)** As used in this Subtitle, the terms "retail sale," "use," "storage," and "consumption" do not include materials, containers, labels, sacks, bags, or similar items that accompany the product sold to a purchaser without which delivery of the product would be impossible due to the nature of the contents, and that is used only once for packing taxable items or for the convenience of the purchaser. When a purchaser pays a separate charge for packing materials, said transaction shall be treated as a retail sale of the packing material.

**(uu) Gross Sales.--**   The amount of all sales of taxable items as defined in this Subtitle, without any deduction whatsoever of any kind or nature, except as provided in this Subtitle.

## Section 4010.02.-- Scope of the Term "Includes".--

For purposes of the terms and phrases defined in this Subtitle, the words "includes" and "including" shall not be interpreted in the sense of excluding, omitting, or eliminating other matters within the meaning of the term defined. Likewise, the objects specified shall only be interpreted as an illustration or characterization, but not as representatives of the universe of objects therein described.

## Section 4010.03.-- Regulations.--

The Secretary shall be empowered to promulgate those rules and regulations related to the imposition, exemption, interpretation, administration, and collection of the sales and use tax fixed in this Subtitle.

## CHAPTER 2 --  IMPOSITION, COLLECTION, AND PERSON LIABLE

## Section 4020.01.-- Sales Tax.--

**(a)** A tax on every sales transaction of a taxable item in Puerto Rico shall be imposed, collected, and paid at the rates established in this Section. The application of the tax shall be subject to the exemptions granted in Chapter 3 of this Subtitle.

**(b)** The tax rate shall be five point five percent (5.5%) of the sale price of the taxable item and combined transactions.

### Section 4020.02.-- Use Tax.--

**(a)** A tax on the use, storage, or consumption of a taxable item in Puerto Rico shall be imposed, collected, and paid at the rates established in this Section.

**(b)** The tax rate shall be five point five percent (5.5%) of the purchase price of the taxable item.

### Section 4020.03.-- Rules for Determining the Source of Revenues Generated by the Sale of Taxable Items.--

**(a)** The source of the sale of tangible personal property shall be determined using the following rules:

**(1)** When the property is delivered to the purchaser at the facilities of the merchant, said facilities shall be treated as the source;

**(2)** When the property is not delivered to the purchaser at the facilities of the merchant, the place where the property is received by the purchaser, including the address indicated to the merchant for the transportation and delivery of the property, shall be treated as the source;

**(3)** If paragraphs (1) and (2) do not apply, the source of the sale shall be the address of the purchaser as it appears in the records kept by the merchant in the ordinary course of business, when the use of said address does not constitute an act in bad faith;

**(4)** If paragraphs (1) through (3) do not apply, the address of the purchaser obtained in the sales process, including the address which appears in the payment instrument of the purchaser, if no other is available, shall be treated as the source to the extent that the use of said address does not constitute an act in bad faith; and

**(5)** When none of the above paragraphs apply, including the situation whereby the merchant does not have sufficient information to apply said rules, then the source of the sale shall be determined in reference to the address from where the tangible personal property was sent or shipped.

**(b)** The source of the sale of taxable services, except for telecommunications, cable or satellite television services, and the leasing of tangible personal property, shall be the place where the services are rendered.

**(c)** The source of the sale of telecommunications services shall be as follows:

**(1)** In the case of telecommunications services provided by wireline, the source shall be the place where two of the following three events occur: where the service originates, terminates, or is billed; and

**(2)** In the case of wireless telecommunications services, including prepaid services, the source shall be the location of the place of primary use of the client, which shall be the residential or business address of the latter.

**(d)** In the case of cable or satellite television services, the source shall be the location of the place of primary use of the client, which shall be the residential or business address of the latter.

**(e)** In the case of lease of tangible personal property, the source of the sale shall be as follows:

**(1)** In the case of any lease that requires recurrent periodic payments, the source of the first payment shall be determined according to the provisions applicable to the sale of tangible personal property. The source of subsequent payments shall be according to the primary location of the leased property during the period covered by the payment. The primary location of the leased property shall be the one indicated by the lessee and available to the lessor in the records the latter keeps in the ordinary course of business, to the extent that the use of said address does not constitute an act in bad faith. The

primary location of the leased property shall not be considered altered by the intermittent or temporary use of the property leased in another location, as would be the case of leased commercial property that accompanies an employee during a business trip.

**(2)**   In the case of any lease that does not entail periodic payments, its source shall be determined according to the provisions applicable to the sale of tangible personal property.

**(f)**   It is hereby provided that the rules set forth in this Section shall be exclusively applied to the imposition of the sales or use tax, and that they shall not apply nor may be used additionally for income tax purposes.

### Section 4020.04.-- Persons Liable for the Payment of the Tax.--

**(a)   In General.--**   Except as otherwise provided in this Subtitle, any person who buys, uses, consumes, or stores a taxable item for use or consumption in Puerto Rico shall be the person mainly liable for the payment of said tax to the Secretary.

**(b)   Exception.--**   Whenever a transaction is subject to the sales and use tax imposed under this Subtitle and the merchant is required to collect the tax as withholding agent (as defined in Section 1010.01(a)(15)), the latter shall be the person mainly liable for the payment of the tax attributable to the transaction. However, the Secretary may collect from a purchaser the tax imposed under this Subtitle on a taxable item when said merchant fails to meet his/her requirement to collect the tax.

### Section 4020.05.-- Collection of the Tax.--

**(a)**   Any merchant engaged in any business where taxable items subject to taxation under this Subtitle are sold shall be required to collect the sales tax as withholding agent.

**(b)**   Any merchant required to collect the sales tax provided in this Subtitle shall record it separately in any receipt, invoice, stub, or other evidence of sale, except as provided in Section 4020.06. In case of the sale of admission tickets, any merchant shall prominently display in the ticket booth, or other place where admission tickets are sold, a notice indicating the admission price and the sales tax which shall be computed and collected on the basis of the price of admission charged by the merchant.

**(c)**   The tax shall constitute, together with the sales price, evidence of indebtedness of the purchaser to the merchant until it is paid, and it may be collected by law in the same manner other debts are collected. The taxes imposed under this Subtitle shall become funds of the Government at the time they are collected.

**(d)**   Except as otherwise specifically provided in this Subtitle, any merchant who refuses, fails, or neglects to collect the sales tax for each and every retail sale of a taxable item made by the merchant, agents, or employees shall be liable for the payment of the taxes imposed in this Subtitle.

**(e)**   A merchant engaged in any business where taxable items are sold subject to the taxes imposed under this Subtitle may in no way publicly announce or express that he/she shall directly or indirectly absorb all or part of the tax; or that he/she shall relieve the purchaser from the payment of all or part of the sales tax; or that the tax shall not be added to the sales price; or that, when it is added, the tax or part thereof shall be reimbursed, directly or indirectly, by any means.

### Section 4020.06.-- Collection of the Tax Together with the Sales Price.--

**(a)**   When it is impractical, due to the nature of the business, to meet the requirements of Section 4020.05(b), the Secretary may exempt the merchant, *motu proprio* or through a prior request to that effect, from meeting with said requirement, and require or authorize that the merchant reflect the sales tax together with the sales price.

**(b)**   In the case mentioned in subsection (a), the taxes to be paid on taxable items shall be computed by subtracting from the total gross sales for the applicable period of the report, the total taxable sales for the

2011 PR H.B. 3070

same period. The taxable sales shall be determined by dividing the gross sales by one point zero seven (1.07).

### Section 4020.07.-- Collection of Sales Tax on Sales for Resale.--

**(a)**  A duly registered merchant may be relieved from the requirement of collecting, withholding, and depositing the tax fixed in this Subtitle on the sale of taxable items bought exclusively for resale to merchants who hold a certificate of exemption duly issued by the Secretary.

**(b)**  Except as otherwise provided in this Subtitle, any merchant who makes a sale for resale to a holder of a certificate of exemption shall document the exempt nature of the transaction through the retention of a copy of said certificate of exemption of the purchaser, or through any other method provided by the Secretary.

**(c)**  Any merchant who does not hold a certificate of exemption or who acquires merchandise subject to the sales tax established in this Subtitle shall be required to satisfy the sales tax at the time of the purchase.

### Section 4020.08.-- Collection of the Sales Tax on Sales Delivered by Mail.--

**(a)**  Any merchant engaged in the business of mail-order sales is subject to the requirements of this Subtitle for the collection of sales tax, provided that no payment or charge shall be imposed on said merchant for conducting any of the activities required.

**(b)**  The Secretary shall, with the consent of other jurisdictions of the United States whose cooperation may be necessary, enforce this Subtitle in that jurisdiction, directly or by choice of the jurisdiction through its officials or employees.

**(c)**  The tax to be collected pursuant to this Subtitle and any other amount, be it part of the tax or not, that is not returned to a purchaser but that was collected from the purchaser under the representation that it was a tax, constitute funds of the Government of Puerto Rico from the moment of their collection.

### Section 4020.09.-- Necessary Evidence and Presumption of Correctness.--

**(a) Presumption of Taxable Acquisition.--**  It shall be presumed that any purchaser that acquires taxable items from a merchant for delivery in Puerto Rico, shall have done so for use, consumption, or storage in Puerto Rico, unless said person submits evidence to refute said presumption.

**(b) Presumption of Correctness.--**  The determinations made by the Secretary regarding the administration of this Subtitle shall be presumed to have administrative procedural correctness before the Courts.

**(c) Presumption of Exemption.--**  It shall be presumed that any person who acquires taxable items from a merchant for delivery in Puerto Rico by submitting a valid certificate of exemption is entitled to enjoy the exemption therein granted. A merchant who trusts in said certificate shall not have to require additional documentation to validate said presumption.

### Section 4020.10.-- Limitation for Fixing Taxes.--

Except as provided in Subtitle F, no municipality, whether autonomous or not, of the Government of Puerto Rico may impose or collect any excise or tax whatsoever on items, services, taxable items, or transactions that are subject to or exempt from the sales and use tax established in this Subtitle, as set forth in Subtitle F.

### Section 4020.11.-- Taxable Items Acquired by Internal Revenue Agents.--

**(a) Power to Rescind a Transaction.--**  Any Internal Revenue Agent who, in the performance of his/her official duties, acquires taxable items in any commercial establishment or business, and makes the

corresponding payment, may rescind the transaction once the corresponding payment has been made, whether or not he/she receives a sales receipt. In this case, the merchant or vendor shall be required to return the amount collected in the transaction, and the agent must return the taxable item, provided that the sales transaction and the rescission and return of the purchased item occur within the same calendar month.

**(b)** This Section shall not apply in the case of taxable merchandise that, due to its nature, cannot be returned to the merchant or merchant to be sold later.

**(c) Imposition of Administrative Fine.--** Any merchant or merchant who refuses to return to the Internal Revenue Agent the amount collected in the transaction of taxable merchandise that said agent opts to rescind, including the sales tax collected in said transaction, if any, shall be subject to the administrative fine provided in Subtitle F.


**CHAPTER 3 --** EXEMPTIONS


**Section 4030.01.-- Exemptions -- Powers of the Secretary.--**

**(a)** The Secretary is empowered to establish, through regulations or otherwise, conditions with respect to the granting of certificates of exemption from payment or withholding of the tax fixed in this Subtitle. In order to ensure due compliance with the terms, provisions, and purposes by virtue of which the exemption is granted, the Secretary may impose, among any others he/she may deem necessary, the following requirements and conditions:

**(1)** To demand that the taxpayer file tax returns and reports, keep accounting books and files, and present any document or evidence deemed pertinent to the exemption claimed or granted, as the case may be.

**(2)** To require the posting of a bond for the amount of the exemption requested, and any administrative fine, surcharge, or interest that may be imposed pursuant to this Subtitle.

**(3)** To require authorization for conducting periodic inspections or other types of ascertainments (including via control terminals, applications, or other electronic media) to, among others, points of sale, commercial locations, vans, containers, warehouses, storage areas, and exhibition areas, with regards to taxable items.

**(4)** To require the prior filing of contracts, orders, or other information related to the permits to transfer or sell taxable items.

**(b)** If a person uses a certificate of exemption from the payment of the tax established in this Subtitle for the acquisition of taxable items and subsequently uses, stores, or consumes the latter for nonexempt purposes, he/she shall be liable for the payment of the tax established in this Subtitle.


**Section 4030.02.-- Certificate of Exemption.--**

**(a)** Any person duly registered as a merchant and whose volume of business is equal to or greater than five hundred thousand dollars ($ 500,000) in the case of an existing business, or, in the case of a new business, that estimates in good faith to the satisfaction of the Secretary that its volume of business during the twelve (12) months following the start of business operations shall be equal to or greater than five hundred thousand dollars ($ 500,000), and that acquires taxable items for resale, except those that are entitled to any exemption under this Subtitle may, subject to meeting the requirements established by the Secretary, request a certificate of exemption from the sales and use tax.

**(b)** Any duly registered merchant whose turnover is less than five hundred thousand dollars ($ 500,000) and who acquires taxable items for resale, except those that are entitled to any exemption under this Subtitle may, subject to meeting the requirements established by the Secretary, request a certificate of

exemption from the sales and use tax, provided that he/she is in total compliance with the provisions of this Subtitle.

**(c)** Any manufacturing plant or person entitled to an exemption under this Subtitle may, subject to meeting the requirements established by the Secretary, request a certificate of exemption from the sales and use tax.

**(d)** Each certificate issued must be numbered and shall be valid for the term established by the Secretary. The Secretary may, in the use of his/her discretion and by a determination to those effects, limit or extend the validity of such certificates.

**(e)** The Secretary may revoke the certificate of exemption from the sales and use tax of any person who fails to meet any of the requirements provided in this Subtitle. Any person whose certificate of exemption has been revoked may, after one (1) year, request the issuance of a new certificate of exemption, subject to the requirements established in this Section.

**(f)** When issuing the certificates of exemption, the Secretary must make sure of the following:

**(1)** That the person requesting said certificate is a merchant or the holder of some exemption as established in this part;

**(2)** That the person is duly registered in the Registry for Merchants; and

**(3)** In the case of a reseller, that the latter provides a detailed description of the tangible personal property he/she shall buy for resale in the ordinary course of business; and

**(4)** In the case of a reseller, whose volume of business is less than five hundred thousand dollars ($ 500,000), and who wishes to request a certificate of exemption pursuant to subsection (b) of this Section, that he/she:

**(A)** Has no outstanding debt whatsoever with the Department;

**(B)** Has filed all of his/her tax returns, including income tax returns and those related to the sales and use tax; and

**(C)** Provides the Statements of Volume of Business for the payment of the municipal license taxes in all the municipalities in which he/she conducts business.

**(g)** The Secretary may require that a person presents documents and evidence of his/her organizational structure, certifications of tax debts, or any other information or document needed during the examination process ordered by this Section.


## Section 4030.03.-- Exemptions for Export.--

**(a)** Except for the reciprocity requirement concerning the collection of sales and use taxes in Puerto Rico provided in this Subtitle, the taxable items sold for use or consumption outside Puerto Rico shall be exempt from the payment of the sale and use tax established in this Subtitle, even when the sale takes place in Puerto Rico. In order for the taxable items thus sold to be exempt from the taxation, they must be exported within sixty (60) days as of the date of sale.

**(b)** The sale or transfer of tobacco or cigarettes to foreign-registered ships and to United States ships, to warships from foreign countries and to vessels from foreign countries that pay courtesy visits to Puerto Rico shall be treated as sales for use or consumption outside Puerto Rico for purposes of subsection (a) of this Section.

**(c)** Subject to the provisions of Subtitle F, the Secretary may extend the time limit established in subsection (a) of this Section for a taxpayer to export taxable items.


## Section 4030.04.-- Exemptions for Taxable Items in Transit.--

**(a)** Any "taxable item" temporarily introduced into Puerto Rico that is directly related to film production, construction, trade shows, conventions, seminars, or for other purposes, and that is re-exported from Puerto Rico, shall be exempt from the payment of the use tax.

**(b)** Any person who claims the exemption established in subsection (a) of this Section must request said exemption from the Secretary by presenting the information provided by regulations.

### Section 4030.05.-- Giveaways.--

**(a)** Any tangible personal property which is considered to be Giveaways in accordance with this Section shall be exempt from the payment of the use tax.

**(b)** Giveaways are defined as any tangible personal property that is handed out free of charge for promotional purposes by a promoter, exhibitor, as such term is defined in Section 4060.04, or by a meeting or conference planner to a participant at conventions, trade shows, forums, meetings, incentive trips, and conferences.

**(c)** The prizes, gifts, emoluments, or awards granted as part of incentive trips or recognitions shall be covered under the provisions of this Section.

### Section 4030.06.-- Exemptions on Items for Manufacture.--

**(a)** All manufacturing plants shall be exempt from the payment of the sales and use tax established in this Subtitle for the purchase of:

    **(1)** "Raw materials," including hydraulic cement, and

    **(2)** The "machinery and equipment used in manufacture" for the production of finished products or used in the manufacturing process of said products, including, but not limited to the electric power process.

**(b)** Manufacturing plants shall also be exempt from the sales and use tax with respect to the items for which an exemption from the payment of excise taxes is provided in Section 9(a) of Act No. 73 of May 28, 2008, known as the "Economic Incentives Act for the Development of Puerto Rico," or any similar provision of any analogous preceding law, or under any law that substitutes it.

**(c)** In order to enjoy the exemption provided in this Section, the manufacturing plant shall, as established through regulations, request the appropriate certificate of exemption from the Secretary.

**(d)** Any person entitled to claim the exemption herein granted shall certify to the merchant his/her condition as exempt person through the mechanisms provided such purposes by the Secretary.

### Section 4030.07.-- Items Sold at Shops in Airport or Ship Terminals to Persons Leaving Puerto Rico.--

**(a)** The taxable items available for sale in shops established in airport or ship terminals to persons traveling outside the jurisdictional boundaries of Puerto Rico shall be exempt from the sales and use tax. This exemption shall be granted when the shop that sells such items holds the license required to operate that type of business and meets with the requirements established by the Secretary for the sale of taxable items free from the payment of taxes as well as with the regulations adopted for granting said exemption.

**(b)** Any person entitled to claim the exemption herein granted shall certify to the merchant of his/her condition as an exempt person through the mechanisms provided such purposes by the Secretary.

### Section 4030.08.-- Exemption on Taxable Items Acquired by Government Agencies.--

**(a)** Any taxable item acquired for official use by the agencies and instrumentalities of the Government of the United States of America and the Government of Puerto Rico shall be exempt from the payment of the sales and use tax imposed in this Subtitle.

**(b)**   Those taxable items that have enjoyed the exemption provided in this Section and that are subsequently sold, transferred, or otherwise alienated, shall be subject to the taxation under this Subtitle. The person who sells, transfers, or otherwise alienates the taxable items shall have the obligation to:

**(1)**   Require from the person who acquires the taxable items, prior to their delivery, evidence of:

**(A)**   Payment of the sales and use tax on the taxable items; or

**(B)**   Being a government agency entitled to the exemption provided in this Section; and

**(2)**   Notify the Department of said sale, transfer, or alienation within five (5) business days as of the date of the sale, transfer, or alienation in the form provided by the Secretary for such purposes.

**(c)**   The exemption provided in subsection (a) of this Section shall apply to items acquired by the Department of the Treasury to be given away as prizes of the sales and use tax control program known as "IVU Loto."

**(d)**   The provisions of subsection (b) of this Section notwithstanding, the transfer of a taxable item exempt as per subsection (c) of this Section, and which is subsequently sold, transferred, or in any way alienated, shall not be subject to taxation under this Subtitle.

### Section 4030.09.-- Exemption on Taxable Items That Constitute Moving.--

**(a)**   Any individual who is not a resident of Puerto Rico, as well as those persons serving in the Armed Forces of the United States of America or the Government of Puerto Rico who are officially transferred to serve in Puerto Rico and who are interested in establishing or reestablishing their residence in Puerto Rico, shall be entitled to introduce, free from the payment of the sales and use tax established in this Subtitle, the used taxable items which reasonably and effectively constitute part of the moving process and which belong to said person, as well as to the other family members who accompany him/her.

**(b)**   In the case of persons serving in the Armed Forces of the Government of the United States of America or the Government of Puerto Rico who are officially transferred to serve in Puerto Rico, the exemption provided in subsection (a) of this Section shall apply to the other family members who accompany them. For these purposes, the term "family members" shall mean the father, mother, or any other relative under the immediate custody of the person in the military who has to return to Puerto Rico because said servicemember has been called to serve at a place where the family member cannot be taken.

**(c)**   Military personnel who live alone abroad, without their spouse, or who have no dependents whatsoever through which they may introduce the taxable items into Puerto Rico, may remit them to their spouse or nearest relative, accompanied by a certified copy of their transfer orders.

### Section 4030.10.-- Exemption on Admission Fees.--

**(a)**   The admission fees to athletic events and other types of events sponsored by public or private elementary and secondary schools and high schools, universities or colleges engaged in rendering educational services shall be exempt from taxation under this Subtitle.

**(b)**   Any person interested in claiming the exemption herein granted must be duly registered according to the provisions of Section 4060.01.

### Section 4030.11.-- Exemption on Food.--

The following foods shall be exempt from the payment of the sales tax:

**(a)**   Foods and food ingredients as defined in Section 4010.01(a);

**(b)**   Prepared foods served to patients or residents at any hospital or any other physical facility or facility designed and operated primarily for the care of sick, elderly, frail, physically or mentally disabled persons,

or who require special care and attention, provided that they constitute a part of a combined transaction for the sale of health or medical and hospital services;

**(c)** Prepared foods served to students in school cafeterias and those that constitute a part of a combined transaction for the sale of educational services; and

**(d)** Prepared and served foods, provided that they constitute a part of a combined transaction for the charges for room occupancy subject to the tax imposed by the Puerto Rico Tourism Company.

### Section 4030.12.-- Exemption on Prescription Medications.--

**(a)** The medicines for human consumption that may be acquired solely and exclusively with a medical prescription shall be exempt from taxation under this Subtitle if they are:

**(1)** Prescribed by a physician licensed to practice the medical profession in Puerto Rico and dispensed by a pharmacist licensed in Puerto Rico;

**(2)** Given or sold to physicians, surgeons, dentists, or podiatrists who hold a valid license for the treatment of their patients;

**(3)** Given by a hospital unit or health facility for the treatment of patients following the orders of a physician licensed to practice medicine in Puerto Rico.

**(b)** The following items shall also be exempt from the payment of the sales and use tax provided by this Subtitle:

**(1)** Hypodermic needles, hypodermic syringes, chemical compounds used for treating diseases, ailments, or injuries in humans generally sold for curing, mitigating, treating, or preventing diseases or ailments, whether for external or internal, use in human beings;

**(2)** Prostheses;

**(3)** Insulin;

**(4)** Oxygen, and

**(5)** Any device used for medical treatment and that qualifies for total or partial reimbursement by Medicare, Medicaid, the Government of Puerto Rico Health Insurance, or by a health insurance contract or premium issued by a person authorized to underwrite health service insurance or contracts in the Government of Puerto Rico.

**(c)** The exemption herein provided does not include cosmetics or toiletries, regardless of the presence of ingredients classified as medications in these products.

### Section 4030.13.-- Exemption on Items and Equipment for Persons with Disabilities to Compensate for Physical and Physiological Deficiencies.--

**(a)** The items and equipment specifically designed to compensate for physical and physiological deficiencies in "persons with disabilities," as said term is defined in Act No. 264 of August 31, 2000, as amended [8 L.P.R.A. §§ 831 et seq.], known as the "Assistive Technology Programs Act," and in Act No. 238 of August 31, 2004, as amended [1 L.P.R.A. §§ 512 et seq.], known as the "Bill of Rights of Persons with Disabilities," shall be exempt from taxation under this Subtitle.

**(b)** The exemption herein provided also contemplates assistive technology equipment, which includes any device, part of equipment, or system, be it original, modified, or adapted, used to maintain, increase, or improve the abilities of a "person with disabilities." The aforementioned equipment includes the following: wheelchairs, motorized wheelchairs, motorized equipment used for mobility, adapted computers, electronic communication equipment, adapted computer software, mechanical equipment for reading, and earphones, among others.

**(c)** Any person entitled to claim the exemption herein granted shall certify to the merchant his/her condition as an exempt person through the procedures provided by the Secretary to such effects.

## Section 4030.14.-- Exemption on Real Property Leases.--

The following shall be exempt from the sales and use tax:

**(a)** The payment for leasing real property made by a lessor to a lessee on what constitutes the main residence of the lessor or student housing; and

**(b)** The payment for leasing real property for commercial purposes, made by a merchant, including the payment for office spaces or sales offices, warehouses or storage areas, and parking facilities.

## Section 4030.15.-- Exemption on Child Day Care Centers.--

Child day care centers licensed by the Department of the Family shall be exempt from taxation under this Subtitle.

## Section 4030.16.-- Exemption on Funeral Services.--

Funeral services up to the amount of four thousand dollars ($ 4,000) are hereby exempt from the payment of the sales and use tax. It shall be understood that funeral services are those services, whether combined or individually, that are provided by a funeral home for the wake and final disposition of a human body, such as, but not limited to registration of death certificate, obtaining burial permits, embalming, use of facilities or personnel, recovery or transfer of the body, use of hearse and flower car, preparation of the body, treatment for transfer overseas, cremation, including the purchase of a plot in the case of cemeteries, and any others related to the same purposes. The casket shall be included in the funeral services. The excess of the amount herein provided shall be subject to the payment of the sales and use tax.

## Section 4030.17.-- Exemption on Solar Powered Equipment.--

Solar powered equipment used to produce electric power, including any parts and accessories thereof, provided that they are necessary for the solar powered equipment to meet its purposes, shall be exempt from the sales and use tax. In order to qualify for this exemption, the dealer or manufacturer shall submit a certification to the Department of the Treasury indicating that the solar powered equipment, or the parts and accessories thereof, comply with the standards and specifications established by the Energy Affairs Administration, as well as a certification indicating that the solar powered equipment is guaranteed for five (5) years or more.

## Section 4030.18.-- Exemption on Taxable Items Acquired by Higher Education Institutions.--

**(a)** Any taxable item acquired for official use by higher education institutions shall be exempt from the sales and use tax imposed under by Subtitle. It shall be understood by "higher education institutions" those institutions covered under the definition provided in subsection (2) of Section 3 of Act No. 17 of June 16, 1993 [18 L.P.R.A. § 852a], known as the "Council on Higher Education of Puerto Rico Act."

**(b)** Any person that sells, transfers, or otherwise alienates the taxable items shall have the obligation to:

**(1)** Require from the acquirer, prior to the delivery of the taxable items, an Exempt Purchase Certification issued by the Department, and

**(2)** Notify the Department of said sale, transfer, or alienation within five (5) business days after the sale, transfer, or alienation was completed in the form provided by the Secretary to such effects.

**(c)** The exemption granted in this Section shall be available to higher education institutions actively operating in Puerto Rico.

2011 PR H.B. 3070

**Section 4030.19.-- Exemptions on Machinery, Surgical Material, Supplies, Items, Equipment, and Technology Used in the Rendering of Health Services.--**

**(a)**  Every health service facility covered under the provisions of Act No. 168 of June 30, 1968, as amended [13 L.P.R.A. §§ 371 et seq.], known as the "Hospital Facilities Tax Exemption Act," or a subsequent similar act, shall be exempt from the payment of the sales and use tax set forth in this Subtitle in the same manner they were exempt from the payment of Commonwealth excise taxes set forth in subsection (c) of Section 1 of said Act.

**(b)**  Any health service facility that enjoys tax exemption benefits under the provisions of Section 1101.01(a)(2), granted to nonprofit entities, shall be exempt from the payment of the sales and use tax set forth in this Subtitle in the purchase of items acquired for exclusive use of the facilities, such as machinery, surgical material, supplies, items, equipment, and technology used in rendering health services during the process of diagnosing and treating diseases in human beings.

**(c)**  In order to enjoy the exemption provided in this Section, the health service facility shall, as established by regulations, request the appropriate certificate of exemption from the Secretary.

**(d)**  Every person entitled to claim the exemption granted herein shall certify to the salesperson his/her status of exempt person by the mechanism provided to such effects by the Secretary.

**Section 4030.20.-- Back-to-School Tax-free Holiday.--**

**(a)**  The Secretary shall issue, not later than June 1 of each year, a circular letter specifying a three (3)-day period in July during which the payment of the sales and use tax, as provided in Section 4020.01, shall be exempt, including the sales and use tax provided by Subtitle F, on the retail sale of those items covered and defined herein. In those years where said circular letter is not issued, it shall be understood that the period to which this Section refers shall begin at 12:01 A.M. on July 15 and end at midnight on July 17 of each year.

**(b)**  For purposes of this Section, "covered items" means:

**(1)**  Apparel items with a sales price of seventy five dollars ($ 75) or less, per apparel item. The exemption applies regardless of how many items are sold under the same invoice or receipt to one client. For purposes of this subsection, "apparel" means all apparel items for people which are suitable for general use, including sandals, shoes, and sneakers. "Apparel" shall not include the following items, which are excluded from the exemption:

**(A)**  Belt buckles sold separately;

**(B)**  Costume masks sold separately;

**(C)**  Patches and emblems sold separately, except if these are part of a school uniform;

**(D)**  Sewing gear and items, including, but not limited to knitting needles, sewing patterns, pins, scissors, sewing machines, sewing needles, tape measures, and thimbles;

**(E)**  Sewing materials that are or become a part of an apparel item, including, but not limited to buttons, fabrics, lace, thread, yarn, and zippers;

**(F)**  "Apparel gear or accessories" that constitute incidental items worn on the body or jointly with apparel. The following list includes examples of apparel accessories and gear:

**(i)**  Briefcases;

**(ii)**  makeup;

**(iii)**  hair accessories, including, but not limited to hairpins, bows, and hair nets;

**(iv)**  handbags;

2011 PR H.B. 3070

**(v)** handkerchiefs;

**(vi)** jewelry;

**(vii)** non-prescription sunglasses;

**(viii)** umbrellas

**(ix)** wallets;

**(x)** watches; and

**(xi)** wigs and hairpieces.

**(G)** Protective gear to be used by people and designed to protect users from injuries or disease, or as protection from damages or injuries to other persons or property, but not suitable for general use. The following list includes examples of protective gear:

**(i)** Protective breathing masks;

**(ii)** Sterile room gear and clothing;

**(iii)** Hearing and ear protective gear;

**(iv)** Masks;

**(v)** Safety helmets;

**(vi)** Hard hats;

**(vii)** Paint or dust respirators;

**(viii)** Safety or protective gloves;

**(ix)** Safety glasses or goggles;

**(x)** Safety belts;

**(xi)** Tool belts; and

**(xii)** Welding masks, helmets, and gloves.

**(H)** Sporting and recreational gear designed for human use and used jointly or as part of a creative or sports activity, but not suitable for general use. The following list includes examples of sporting and recreational gear:

**(i)** Ballet slippers and tap shoes;

**(ii)** Sporting footwear with spikes or cleats;

**(iii)** Gloves, including, but not limited to baseball, bowling, boxing, hockey, and golf gloves;

**(iv)** Goggles;

**(v)** Kneepads and elbow and hand protectors;

**(vi)** Lifesavers and other vests;

**(vii)** Mouth guards;

**(viii)** Skates and ice skates;

**(ix)** Shin guards;

**(x)** Shoulder pads;

**(xi)** Skiing boots;

**(xii)** Rain boots; and

**(xiii)** Wetsuits and fins.

**(2)** A single retail sale where computers shall be exempt from the sales tax up to the amount of seven hundred fifty dollars ($ 750) or less, computer software up to the amount of two hundred dollars ($ 200) or less, and computer school supplies up to the amount of two hundred dollars ($ 200) or less. Computers, computer software, and computer school supplies shall not include furniture, systems, devices, or peripheral software or equipment designed or primarily intended for recreational use, or non-educational videogames.

**(A)** Computer means an electronic device that accepts information in digital or similar format and manipulates it for a result based on a sequence of instructions, also known as a central processing unit (CPU). For purposes of the exemption provided in this Section, during the days of the sales tax exemption, a computer may also include a laptop, or a desktop consisting of a CPU, a monitor, a keyboard, a mouse, and speakers sold as a computer ensemble or as a sole unit. However, monitors, keyboards, mice, speakers, and other computer parts or fixtures designed to be used with a personal computer that are not sold as part of the ensemble shall not qualify for the exemption.

**(B)** Computer software means a set of codified instructions designed for a computer or automatic data processing device to carry out or perform a function or task. The term "computer software" refers to predesigned or prefabricated software that is not designed, modified, or developed by an author or programmer by following the specifications of a specific buyer.

**(C)** "Computer school supplies" means items commonly used by a student in a study course that employs a computer. The following is a thorough list of computer school supplies:

    **(i)** Storage media, including discs, compact discs, and flash drives;

    **(ii)** Portable electronic agendas, except for fixtures or devices that are cellular phones;

    **(iii)** Personal digital assistants, except for fixtures or devices that are cellular phones;

    **(iv)** Computer printers; and

    **(v)** Computer printing materials, including paper and ink.

**(3)** School supplies, art school supplies, music school supplies, and educational school materials sold at retail, up to a sales price of fifty dollars ($ 50) per item.

**(A)** "School supplies" are items commonly used by a student in a study course. The following is a thorough list:

    **(i)** Binders;

    **(ii)** Book bag;

    **(iii)** Calculator;

    **(iv)** Tape;

    **(v)** Chalk;

    **(vi)** Compass;

    **(vii)** Notebooks;

    **(viii)** Crayons;

    **(ix)** Erasers;

    **(x)** Folders, expanding files, expanding file pockets, plastic covers and manila envelopes;

    **(xi)** Glue, adhesive, and glue stick;

    **(xii)** Markers, including highlighters;

    **(xiii)** Index cards;

**(xiv)** Index card files;

**(xv)** Legal or letter notepads;

**(xvi)** Lunchboxes;

**(xvii)** Markers;

**(xviii)** Notebooks;

**(xix)** Loose leaves, ruled paper for ring binders, copy paper, quadrille paper, tracing paper, manila paper, color paper, poster boards, and construction paper;

**(xx)** Pencil cases and other school supply cases;

**(xxi)** Pencil sharpeners;

**(xxii)** Pencils;

**(xxiii)** Pens;

**(xxiv)** Protractors;

**(xxv)** Rulers;

**(xxvi)** Scissors; and

**(xxvii)** Notepads.

**(B)** Art or music school supplies are items usually used by a student in an art or music study course. The following is a thorough list:

**(i)** Clay and enamels;

**(ii)** Paints, including acrylic paints, tempera, and oil paints;

**(iii)** Brushes for art work;

**(iv)** Drawing and sketch pads;

**(v)** Watercolors; and

**(vi)** Musical instruments.

**(C)** Educational school materials are written materials commonly used by a student in a study course as reference and to learn the subject taught. The following is a thorough list:

**(i)** World maps and globe for reference;

**(ii)** Textbooks as required in an official school book list. An official list shall be understood to be one provided by an educational institution to its students, which makes an account of the school texts to be used for a particular grade or course, including music books.

**(4)** Textbooks required in an official school or university book list and sold at retail for a price not greater than two hundred dollars ($ 200) per book. An official list shall be understood to be one provided by an educational institution to its students, which makes an account of the school texts to be used for a particular grade or course.

**(c)** Covered items are exempt only if the price of the individual item complies with the corresponding exemption parameters. To apply the exemption provided in this Section on a portion or a proportional part of an individual item is not permitted.

**(d) Separation of Items Usually Sold Jointly.--** In order to qualify for the exemption, items usually sold in pairs shall not be separated, and items usually sold as a single unit shall continue to be sold as such.

**(e) Buy-one-get-one-free and Other Similar Offers.--** If a merchant has offers such as "buy one, get one free", or "two for the price of one" on covered items, the purchase shall qualify for the exemption when all

other conditions for exemption as provided in this Section are met. However, if a merchant offers a second item at lower price with the purchase of one item, the prices on the two items cannot be averaged so as to have both items qualify for the exemption.

**(f) Discounts, Coupons, and Rebates.--** A discount by the merchant lowers the sales price of an item and the sales price at discount determines whether the sales price of the item falls within the price limits eligible for exemption provided in this Section. A coupon that lowers the sales price is tantamount to a discount if the amount of the coupon is not refunded to the merchant by a third party. If a discount is applied on the amount paid by the buyer instead of the sales price of a particular item, and the buyer has bought both covered items and taxable items, the merchant shall award the discount based on the proportion that arises from comparing the total sales price of taxable items with the total sales price of all items sold in that same transaction.

On the other hand, rebates shall be understood to be usually awarded after the sale, so the amount of the rebate does not affect the sales price of the item bought.

**(g) Sales on Lay-away Plans.--** A sale on a lay-away plan is a transaction whereby items are reserved for future delivery to a buyer that makes a deposit, agrees to pay the balance of the sales price within a specific period, and receives the merchandise at the end of the payment period.

Sales on lay-away plans of covered items shall qualify for exemption when the final lay-away plan payment is made and the item is delivered to the buyer during the tax-free holiday; or when ownership of the covered item is transferred to the buyer and delivery is made to the buyer during the tax-free holiday. A sale made by means of transferring ownership after the tax-free holiday does not qualify for exemption.

**(h) Rain Checks.--** A rain check allows the client to buy an out-of-stock item at a certain price in the future. Covered items bought during the tax-free holiday using rain checks shall qualify for exemption regardless of when the rain check was issued. Issue of a rain check during the tax-free holiday shall not render a covered item eligible for exemption if the item is actually bought after the tax-free holiday.

**(i) Sales by Mail, Phone, E-mail, and on the Internet.--** When a covered item is sold by mail, phone, e-mail, or on the Internet, the sale qualifies for the exemption provided in this Section when the item is paid and delivered to the client during the tax-free holiday; or when ownership of the covered item is transferred to the buyer and delivery is made to the buyer during the tax-free holiday. For purposes of this section, the sale of an item is not completed or closed until the moment delivery is made to the buyer, after transportation concludes, and the item arrives to Puerto Rico for use and consumption. Covered items that are pre-ordered and delivered to the client during the tax-free holiday shall qualify for exemption.

**(j) Gift Certificates and Gift Cards.--** Covered items bought during the tax-free holiday using a gift certificate or card shall qualify for exemption regardless of when the gift certificate or gift card was bought. Covered items bought after the tax-free holiday using a gift certificate or gift card are taxable even if the gift certificate or gift card was bought during the tax-free holiday. A gift certificate or gift card may not be used to lower the sales price of a covered item so as to render the item eligible for exemption.

**(k) Returns.--** For a period of sixty (60) days immediately following the sales tax exemption period provided in this Section, when a client returns an item that would qualify for exemption, no credit or refund shall be given on the sales tax unless the client furnishes the receipt or invoice attesting to the payment of the tax, or the merchant has sufficient documentation to prove that the tax was paid on said specific item. This sixty (60)-day period is hereby fixed with the sole purpose of designating a period during which the client shall furnish documentation attesting to the payment of the sales tax on the merchandise returned. The sixty (60)-day period does not intend to change the return policy of the merchant.

**(l) Different Time Zones.--** The time zone of the location of the buyer determines the period of time authorized for the sales tax exemption period provided in this Section when the buyer is in one time zone and the merchant is in another.

**(m) Records.--** Merchants are not required to obtain a Tax Exemption Certificate or a Tax-Exempt Purchases Certificate on retail sales of covered items during the tax-free holiday provided in this Section.

However, the merchants' records shall clearly identify the type of item sold, the date of sale, the sales price of all items, and, if applicable, any sales tax charged.

**(n)   Tax-exempt Sales Report.--**  No special procedures are required to prepare the report on tax-exempt sales of covered items made during the tax-free holiday. Tax-exempt sales shall be reported in the same manner as tax-exempt sales are reported under the Code and the regulations prescribed by the Secretary. To wit, taxable sales and tax-exempt transactions shall be reported as required by law or regulation.

**(o)   Transportation Charges.--**

**(1)**  When delivery is made by a freight carrier or by the United States Postal Service, if transportation charges are billed separately, and directly or indirectly paid by the buyer, said transportation charges shall be excluded from the sales price of the covered item. Transportation charges made by any other means are included as part of the sales price of the covered item, whether or not indicated separately. Transportation charges are not indicated separately if these are included with other charges and are billed as shipping and handling.

**(2)**  Shipping and handling charges are included as part of the sales price of the covered item, whether or not indicated separately. If various items are shipped under a single invoice, in order to determine whether a covered item qualifies for the exemption provided in this Section, shipping and handling charges shall be allocated in proportion to each item ordered, and these shall be identified separately on the invoice.


# CHAPTER 4 --  TERM AND MEANS OF PAYMENT


# SUBCHAPTER A --  RETURNS AND REPORTS


## Section 4041.01.-- Accounting Method.--

For purposes of this Subtitle, all merchants shall use the same accounting method they use to report their income in their income tax returns. In any case, the responsibility for the merchant's payment shall begin the moment he/she receives payment from the client. In the case of nonprofit entities, they shall use the accounting method used to keep their accounting books.


## Section 4041.02.-- Monthly Sales and Use Tax Return.--

**(a)   In General.--**  In order to determine the amount of the sales tax to be paid under this Subtitle, all merchants must file a Monthly Sales and Use Tax Return and, except as provided through regulations pursuant to Section 4042.03 of this Subtitle, shall remit to the Secretary the sales tax not later than the tenth (10th) day of the month following the month on which said taxes were collected, using the forms prepared and supplied by the Secretary. Said return shall show, separately for each municipality, the leases, admissions, gross sales, or purchases, as the case may be, that may arise from all taxable leases, admissions, sales or purchases, deposits of the sales tax, credits during the preceding month, and any other information the Secretary may require through regulations.

**(b)**  Any person who has purchased taxable items subject to the use tax shall file a Monthly Sales and Use Tax Return and shall remit the tax to the Secretary not later than the tenth (10th) day of the month following the month in which the transaction subject to taxation was carried out in the forms prepared and supplied by the Secretary.

**(c)**  The Secretary shall accept all returns as filed on time if postmarked not later than the tenth (10th) day of the month following the month in which said taxes are collected or the month following the month in which the transaction subject to taxation was carried out, as the case may be. Should the tenth (10th) day fall on a Saturday, Sunday, or Federal or Commonwealth holiday, the returns shall be accepted if they are postmarked the following business day. Those returns the Secretary may require through regulations to be

filed through electronic means must be received not later than the tenth (10th) day of the month following the month in which said taxes are collected or the month following the month in which the transaction subject to taxation was carried out, as the case may be.

**(d)**   Any merchant required to remit the sales tax through electronic transfer of funds, and any merchant required by the Secretary through regulations, circular letter, or administrative determination of a general nature, shall file the Monthly Sales and Use Tax Return through electronic means. The acceptable transfer method regarding the form and content of the electronic information exchange, the circumstances under which an electronic information exchange shall serve as substitute for the filing of the tax form, and the means, if any, through which taxpayers shall receive confirmation, shall be established by the Secretary through regulations, circular letter, or administrative determination of a general nature. The Secretary shall accept said returns as having been filed on time if said transmission is initiated and accepted not later than the tenth (10th) day of the month following the month in which said taxes are collected.

**(e)**   The Secretary may relieve the merchant from the requirement of making an electronic information exchange transfer because of problems with the computer system of the merchant or of the Department. To obtain said relief, the merchant must prove in writing to the Secretary that said circumstances exist.

**(f)**   Except as provided in subsection (g) of this Section, for purposes of the segregation by municipality of the information required in the return according to subsection (a) of this Section, the sale of taxable items shall be deemed to have taken place in the municipality where the premises or other place of business of the merchant is located.

**(g)**   In case of the sale of telecommunications, or cable or satellite television services, the determination of the municipality where the sale takes place shall be made using the address of the client to whom the services are billed.

## SUBTITLE B --   PAYMENT

### Section 4042.01.-- Remittance of the Sales and Use Tax.--

The remittance to the Secretary of the taxes imposed under this Subtitle shall be made as provided below:

**(a)**   By the merchant, except in the case covered in subsection (b), as provided in Section 4042.03 of this Subtitle;

**(b)**   In the case of merchants who collect the sales tax in representation of other merchants under a billing and collection agreement, the person liable for remitting the taxes to the Secretary shall be the person who acknowledges the sale in his/her books according to generally accepted accounting principles;

**(c)**   By the person who uses, consumes, or stores taxable items in Puerto Rico, as provided in Section 4042.03 of this Subtitle.

### Section 4042.02.-- Payment of Sales Tax Computed Together with the Sales Price.--

The taxes to be paid on taxable items computed pursuant to Section 4042.06 shall be remitted to the Department by the operator or the merchant.

### Section 4042.03.-- Time to Remit the Sales and Use Tax.--

**(a)  In General.--**   The taxes imposed in this Subtitle shall be payable to the Secretary by the person liable for issuing the payment, not later than the tenth (10th) day of the month following the month in which the transaction subject to taxation was carried out, or on that other date or manner, as established through regulations promulgated by the Secretary regarding the manner, time, and conditions that shall govern the payment or deposit of said withheld taxes.

**(b)**  Electronic Deposits or Those in Excess of Twelve Thousand Dollars ($ 12,000).--Those merchants whose deposits of the tax imposed under this Subtitle for the preceding taxable year exceed twelve thousand dollars ($ 12,000), or who are required by the Secretary through regulations to make their tax payments via electronic transfer, shall make the payment not later than the (10th) day of the month following the calendar month in which the transactions subject to taxation were carried out, or in any other date or manner established through regulations, circular letters, or administrative determinations promulgated by the Secretary. Any change in the date or manner of the tax deposit shall be notified at least ninety (90) days in advance.

### Section 4042.04.-- Payment Method.--

**(a)**  The taxes imposed in this Subtitle shall be paid by postal money order or bank draft, legal currency, credit card, debit card, electronic transfer, or any other method as provided by the Secretary through regulations.

**(b)**  Any merchant with a sales volume equal to or greater than two hundred thousand dollars ($ 200,000) annually, as reported in the Registry for Merchants Application or the Monthly Sales and Use Tax Return, shall remit the sales and use tax through electronic transfer. The acceptable transfer method regarding the manner and contents of the electronic transfer of funds shall be established by the Secretary.

**(c)**  The Secretary may require the merchant who issues a check that is returned by the bank for insufficient funds to make subsequent payments through certified, official, or cashier's checks.

**(d)**  When the due date of the tax payment is not a business day, the payment shall be made the following business day.

**(e)**  The Secretary shall accept all payments as remitted on time if they are postmarked not later than the tenth (10th) day of the month following the month in which said taxes are collected or the month following the month in which the transaction subject to taxation was carried out, as the case may be. Should the tenth (10th) day fall on a Saturday, Sunday, or Federal or Commonwealth holiday, the payments shall be accepted if they are postmarked on the following business day. Those payments that the Secretary requires to be electronically transferred must be received not later than the tenth (10th) day of the month following the month in which said taxes are collected or the month following the month in which the transaction subject to taxation was carried out, as the case may be, or on the date established by the Secretary through regulations, pursuant to Section 4042.03 of this Subtitle, whichever is applicable.

### CHAPTER 5 --  DEDUCTION, CREDIT, AND REFUND

### Section 4050.01.-- Deduction for Return of Taxable Items.--

**(a) Refund to Purchaser.--**  When the merchant receives taxable items returned by a purchaser from whom said merchant withheld the taxes under this Subtitle, the merchant must return the amount of the tax collected from the purchaser in the manner provided by the Secretary.

**(b) Deduction to Merchant.--**  When the merchant, pursuant to subsection (a) of this section, receives taxable items returned by a purchaser, he/she may deduct the sales price of said returned taxable items from the total gross sales he/she must report in the monthly sales and use tax return of the month in which the return was made.

**(c)**  At the time any returned taxable item is sold, the sale shall be subject to the sales tax imposed in this Subtitle.

### Section 4050.02.-- Credit for the Sale of Merchant's Property.--

A registered merchant who has purchased a taxable item for his/her own use, consumption, or storage, and who has paid the sales and use tax and sells said item subsequently without having used the same, shall be entitled to a credit for the amount paid on account of the use tax on the taxable item in the manner provided by the Secretary.

### Section 4050.03.-- Credit for Uncollectible Accounts.--

**(a) In General.--**   A merchant who has paid the taxes provided in this Subtitle on taxable items under the accrual method may claim a credit in the subsequent monthly sales and use tax return for those taxes paid by the merchant on the amount of uncollectible accounts.

**(b) Conditioned Sales.--**   When a merchant has paid the tax established in this Subtitle on a taxable item sold and repossesses (with or without a judicial proceeding) the taxable item, he/she may claim a credit in the subsequent monthly sales and use tax return for an amount equal to the taxes attributable to the balance due that becomes uncollectible for said merchant.

**(c) Recovery.--**   In the case of the recovery of uncollectible accounts for which the merchant had claimed a credit, the amount recovered shall be included as a "gross sale" in the subsequent monthly sales and use tax return the merchant shall file after said recovery, and the merchant shall then pay the appropriate tax.

### Section 4050.04.-- Credit for Taxes Paid by the Merchant.--

**(a)**   Any registered merchant who has paid a sales tax for the purchase of taxable items for resale may claim a credit for the sales tax paid in the Monthly Sales and Use Tax Return for the period in which said tax was paid.

**(b) Carry-over.--**   If the credit provided by this Section exceeds the sales and use tax to be paid in the Monthly Sales and Use Tax Return for the period in which the tax that entitles the merchant to said credit is paid, the excess may be carried over to subsequent Monthly Sales and Use Tax Returns until it has been exhausted.

### Section 4050.05.-- Refund of Taxes Paid.--

**(a) In General.--**   A person who has paid the sales tax or has had the same improperly collected or has overpaid the same, may request, in writing, a refund thereof from the Secretary within the term and pursuant to the procedures established by the Secretary.

**(b) Application for Refund.--**   A refund of the sales tax that has been improperly paid or collected or paid in excess may not be claimed in any of the sales tax returns. The Secretary shall issue the appropriate form to claim the refund. The right to receive any refund under the provisions of this Section is nontransferable, except to a successor entity in a corporate reorganization, to the executor, Executor, receiver, trustee in case of bankruptcy, or assignee in an insolvency procedure, of the person entitled to the refund.

**(c)**   No refund whatsoever may be claimed unless the Secretary is presented with a sworn application within the period established to claim a refund of the tax paid or improperly collected, or paid in excess, pursuant to Subtitle F of this Code. The application for refund shall include at least the following information:

**(1)** The name and address of the person claiming the refund;

**(2)** A description of each taxable item;

**(3)** Copies of the sales invoices of the taxable items object of the refund claim; and

**(4)** A detailed explanation of the reason to claim the refund.

**(d)**   When the Secretary approves an application for refund, or when he/she determines *motu proprio* that the taxpayer has made an improper payment or an overpayment, he/she shall credit the amount that corresponds to the refund to any tax debt of the taxpayer. Any amount that remains from the total of the tax

overpaid or improperly paid in those cases whereby the taxpayer has no outstanding tax debt whatsoever must be returned to the taxpayer.

**(e)**  A total or partial denial of an application for refund must be notified in the form and manner provided in Subtitle F of this Code.

**(f)**  When the Secretary concludes that a refund has been erroneously paid, he/she may reconsider the case and re-determine the tax denying the refund and notifying the taxpayer of a deficiency in the form and pursuant to the procedure established in Subtitle F of this Code.

**(g)**  Should the application for refund be denied in whole or in part, the taxpayer may initiate the procedure provided in Subtitle F.

## Section 4050.06.-- Special Disposition of Funds.--

**(a)**  The taxes on admission fees imposed under this Subtitle, collected at the municipal stadium of the Capital City, shall be deposited into a special account and transferred to the municipality of San Juan by the Secretary in the manner and at the time the latter may determine and for the time the Secretary may deem necessary, considering the revenues and expenditures that result from the operation and construction of the stadium and its facilities.

**(b)**  The taxes on admission fees collected at the stadiums of other municipalities shall be deposited into a special account and be transferred to the corresponding municipality until the total of any debt or obligation said municipality may incur for the purpose of defraying the cost of improvements or expansions to said stadiums is paid in full. This provision shall take effect as of the date the improvement or expansion works in said stadiums are initiated. The Sports and Recreation Secretary shall supervise and approve the works and notify the date of their initiation to the Secretary. For purposes of this subsection, the works for the improvement and expansion of the stadiums shall be deemed to have begun once the Municipal Legislature of the municipality in question authorizes a loan for financing said works. Said funds shall revert to the General Fund of the Government of Puerto Rico when the improvements and expansions are not physically initiated within a period of two (2) years as of the date of the authorization for the municipal loan.

**(c)**  Ten percent (10%) of the proceeds of the tax collected on admission fees, except for those taxes on admission fees referred to in subsections (a) and (b) of this section and those corresponding to admission fees for events held at the Pachin Vicens Coliseum in Ponce and at the Roberto Clemente Coliseum in San Juan, shall be deposited in a special fund for the operating expenditures of the Festival Casals, Inc., the Puerto Rico Symphony Orchestra Corporation, the Strings Program for Children, and the Puerto Rico Conservatory of Music Corporation.

Every three (3) months, the Secretary of the Treasury shall transfer sixty-six percent (66%) of the amounts deposited in said fund to the Musical Arts Corporation, created by Act No. 4 of July 31, 1985 [1 L.P.R.A. §§ 1165 et seq.], so that according to the applicable laws they may be made available to the Festival Casals, Inc., and the Puerto Rico Symphony Orchestra in equal parts. The remaining thirty-four percent (34%) of the amounts deposited in said fund shall be transferred by the Secretary of the Treasury every three (3) months to the Puerto Rico Conservatory of Music Corporation so that they may be used for its operation and the operation of the String Program for Children in equal parts.

**(d)**  The Secretary shall make a monthly appropriation in the amount of two hundred seventy thousand dollars ($ 270,000) from the proceeds of the collection of the sales and use tax, which shall be deposited in an account denominated the "Puerto Rico Motion Picture Arts, Sciences, and Industry Development Fund," in the books of the Department of the Treasury, without a specific fiscal year, and they shall be entered separately from any other funds under the custody of the Secretary. The income of said fund shall not be considered in determining the total annual income of the General Fund. The Secretary shall make a quarterly transfer of the amounts entered into said fund to the Puerto Rico Motion Picture Arts, Sciences and Industry Development Corporation so that, according to the applicable laws, he/she may make them available to said entity for purposes of the latter and in the manner and time the Secretary may determine.

**(e)**  The proceeds from the zero point five percent (0.5%) portion of the municipal sales and use tax authorized by Section 4020.10 and Subtitle F shall be collected by the Secretary, in accordance with Subtitle F, to be deposited in special accounts or funds in the Government Development Bank for Puerto Rico (hereinafter, the "Bank"), which shall be used exclusively for purposes indicated hereinafter. Said amounts may not be deposited, transferred, or loaned at any time in the General Fund of the Government of Puerto Rico, with no exception whatsoever. In this same context, the Commonwealth may not deduct any amount whatsoever for debts the municipalities may have with any department, agency, instrumentality, or public corporation of any nature, with the exception of the amount established in Section 4050.06(h). The revenues generated from the sales and use tax shall be specifically distributed for the following purposes:

**(1)**  Zero point two percent (0.2%) of the zero point five percent (0.5%) sales and use tax to be collected by the Secretary shall be deposited in a special account or fund in the Bank denominated "Municipal Development Fund," created pursuant to Section 4050.07.

**(2)**  Zero point two percent (0.2%) of the zero point five percent (0.5%) sales and use tax to be collected by the Secretary shall be deposited in a special fund in the Bank to grant loans to the municipalities of Puerto Rico denominated "Municipal Redemption Fund," created pursuant to Section 4050.08.

**(3)**  Zero point one percent (0.1%) of the zero point five percent (0.5%) sales and use tax to be collected by the Secretary shall be deposited in a special account or fund in the Bank denominated "Municipal Improvement Fund," created pursuant to Section 4050.09.

**(f)**  For purposes of implementing subsection (e) of this Section, the obligation of the Secretary, the Bank, and all the municipalities of Puerto Rico to expedite and furnish among themselves, to one another, all information pertaining to the revenues of the sales and use tax authorized by Sections 4020.01, 4020.02, and 4020.10, is hereby established, regardless of the mechanisms used for the collection thereof or the entity, agency, or company contracted or authorized by law to carry out the collections, as well as the transfer thereof to the different special funds administered by the Bank mentioned in subsection (e) of this Section. The Secretary and the Bank shall furnish the municipalities on a quarterly basis, and at the request of the latter, any information regarding the collection, imposition, and administration of the municipal sales and use tax, including, but not limited to that which pertains to the filing of returns, Registry for Merchants, and the amount remitted, from the moneys collected and deposited, to each of the special funds established in Sections 4050.07, 4050.08, and 4050.09.

**(g)**  The remittance or deposit of the moneys corresponding to each one of the special funds established in Sections 4050.07, 4050.08, and 4050.09, shall be immediately transferred to the Bank as soon as they are collected by the Secretary, but never later than ten (10) days after the collection thereof, being it established that these moneys shall not be used by the Secretary for any other purpose. To such effect, it is established that the delay in the remittance of said funds for a period of ten (10) days after their collection shall entail the payment of interest on the amount not remitted on time, to be computed at a rate of ten percent (10%) annually on the amount not remitted on time.

**(h)**  The cost of programming the collection system to be implemented by the Department of the Treasury for the collection by the Secretary of the zero point five percent (0.5%) sales and use tax for the benefit of the municipalities pursuant to Subtitle F shall be defrayed through a one-million-dollar ($ 1,000,000) contribution to be allocated equally among the seventy eight (78) municipalities from the revenues of the Municipal Development Fund established in Section 4050.07 prior to the distribution to the municipalities of the moneys deposited in said fund. Any amount additional to the one million dollars ($ 1,000,000) contributed by the municipalities that is needed to implement the collection of the zero point five percent (0.5%) shall be defrayed by the Secretary of the Treasury. To such effect, the President of the Bank is hereby empowered to establish a line of credit so that the Secretary may defray the cost related to the programming and implementation of the collection system.

**Section 4050.07.-- Municipal Development Fund -- Creation.--**

**(a) Creation of the Fund.--**   A Municipal Development Fund is hereby created under the custody of the Bank, which shall be nourished from the deposits made from the revenues corresponding to zero point two percent (0.2%) of the proceeds of the zero point five percent (0.5%) authorized by Section 4020.10 and Subtitle F, obtained from the zero point five percent (0.5%) of the sales and use tax imposed by the municipalities, and collected and deposited by the Secretary, pursuant to Section 4050.06(e)(1).

**(b) Responsibility of the Municipal Development Fund.--**   The President of the Bank shall be the official responsible for implementing the procedure to be followed for the administration of the Municipal Development Fund, including all matters related to the distribution of the moneys accrued or deposited in the Fund to be distributed among all the municipalities of Puerto Rico, as provided hereinafter, after the repayment of the one-million-dollar ($ 1,000,000) contribution to defray the cost of programming the collection system of the Department of the Treasury, as provided in subsection (h) of Section 4050.06.

**(c)**   Establishment of the Formula or Criteria for the Distribution of the Moneys Deposited in the "Municipal Development Fund."-- The Bank shall distribute the moneys deposited in the Municipal Development Fund pursuant to the following criteria or formula:

**(1)**   Ten percent (10%) of the Municipal Development Fund shall be distributed to each municipality on the basis of the inverse proportion corresponding to each municipality with respect to the proceeds of the sales and use tax collected by all municipalities pursuant to the authorization established by Subtitle F.

**(2)**   Seventy-five percent (75%) of the Municipal Development Fund shall be distributed to every municipality on the basis of the inverse proportion corresponding to the individual budget of the regular fund with respect to the budget of the regular fund of all municipalities. For such purposes, said proportion shall be determined taking as basis the budgets of the regular funds of the municipalities during the immediately preceding fiscal year.

**(3)**   Fifteen percent (15%) of the Municipal Development Fund shall be distributed to each municipality on the basis of the direct proportion corresponding to its population with respect to the population of all the municipalities. For these purposes, said proportion shall be determined taking as basis the U.S. Census, as it is revised from time to time, according to the periodicity with which it is prepared.

**(d) Limitations.--**   The amounts of money determined to be received by each of the municipalities as the result of the application of the formula provided in subsection (c) of this Section shall be subject to the following limitations:

**(1)**   No municipality shall receive, during a fiscal year, an amount greater than one million three hundred thousand dollars ($ 1,300,000), taking in the aggregate the amounts determined on a monthly basis through the application of the formula.

**(2)**   In accordance to the foregoing, the amounts determined through the application of said formula in favor of any of the municipalities, regardless of their size, in excess of one million three hundred thousand dollars ($ 1,300,000), shall be distributed using the same formula for the payment of the operating debt of the municipalities with any financial institution. In the event that the municipality does not have an operational debt with any financial institution, these funds shall be covered into its regular fund.

**(e) Distribution of the Moneys Deposited in the Municipal Development Fund.--**   The moneys corresponding to each of the municipalities as determined pursuant to the implementation of the formula provided in subsection (c) of this Section shall be distributed and deposited monthly by the Bank in the particular account of each of the municipalities not later than the tenth (10th) day of the following month, after said moneys are received by the Bank, subject to the limitations established in subsection (d) of this Section. To such effect, it is established that the delay in the distribution of said moneys for a period of ten (10) days after being received by the Bank, shall entail the payment of interest on the amount not distributed on time, to be computed on the basis of a ten percent (10%) annual rate on the amount not distributed on time.

(f)  **Revision of the Formula.--**  The formula established in subsection (c) of this Section shall be revised annually by the President of the Bank, not later than July 31 of each fiscal year, regarding the changing factors thereof that require revision for the purpose of its implementation for the following fiscal year and, specifically, all matters related to the amount of the sales and use tax collected by each one of the municipalities, the operating budgets of each one of the municipalities, and the U.S. Census, as it may correspond. Notwithstanding the foregoing, the revision of said factors does not constitute an actual authorization to change or modify said formula by the Bank. Accordingly, the changes to be made that comprise a modification of said formula shall be approved through legislation by the Legislative Assembly. Furthermore, the Bank shall provide information to the Legislative Assembly on the changing factors used for the annual implementation of said formula.

(g)  **Use of the Moneys from the Municipal Development Fund.--**  The moneys proceeding from the Municipal Development Fund distributed monthly to the municipalities through the implementation of the formula established in subsection (c) may be used by the municipalities for solid waste collection and recycling programs; the construction of capital works and improvements; health and security, including the payment of payrolls and related expenses, such as employer contribution or payroll taxes; and in any activity or project within the sound public administration of the municipality, except for payroll and expenditures related to such programs or projects.

(h)  **Audit.--**  The President of the Bank shall direct that an annual external audit be conducted to evaluate the accuracy and propriety of the application of the formula established in subsection (c) of this Section, and of the deposits made in the particular accounts of each of the municipalities, including a special certification expressing an opinion on such respect. A copy of said audit, as well as of the special certification issued for such purposes, shall be sent to the Legislative Assembly and to the Office of the Commissioner of Municipal Affairs (hereinafter "OCAM," Spanish acronym), within a term of thirty (30) days after they have been concluded or issued, as it may correspond. In this respect, OCAM shall furnish said information to the municipalities that request it within a term of five (5) business days.

**Section 4050.08.-- Municipal Redemption Fund -- Creation.--**

(a)  **Creation of the Fund.--**  A "Municipal Redemption Fund" is hereby created under the custody of the Government Development Bank for Puerto Rico (hereinafter, the "Bank") which shall be nourished from the deposits made from the revenues corresponding to the zero point two percent (0.2%) of the proceeds of the zero point five percent (0.5%) municipal tax authorized by Section 4020.10 and Subtitle F, and collected and deposited by the Secretary pursuant to Section 4050.06(e)(2).

(b)  **Purpose of the Municipal Redemption Fund.--**  The moneys deposited in the Municipal Redemption Fund shall be used by the Bank exclusively to loans in favor of the municipalities. Said loans shall be granted taking as basis the sums of money collected by the Secretary in each of the municipalities and deposited in the Bank pursuant to the authorization established in Section 4050.06(e)(2). In accordance to this, the municipalities interested in obtaining said loans are hereby authorized to contribute to the Municipal Redemption Fund an amount equivalent to up to one hundred percent (100%) of the participation of the municipality in the Municipal Development Fund, pursuant to Section 4050.07, in order to increase their borrowing capacity. Notwithstanding the foregoing, in the case of municipalities that are not interested in obtaining or making said loans, they may withdraw from the Municipal Redemption Fund the amounts corresponding to their municipality that to such effect were collected by the Secretary. The municipality may use said funds to make loans in any other financial institutions under the same conditions and limitations contained in this Section, subject to the condition that the financing terms offered by private financial institutions are better than those offered by the Bank. The loans to be obtained in this manner from private financial institutions shall not be subject to the limitations on borrowing capacity contained as part of Act No. 64 of July 3, 1996, as amended [21 L.P.R.A. §§ 6001 et seq.], known as the "Puerto Rico Municipal Financing Act of 1996."

(c)  **Responsibility of the Municipal Redemption Fund.--**  The President of the Bank shall be the official responsible for implementing all the procedures to be followed for the administration of the Municipal

Redemption Fund, as well as for granting the loans authorized by this Section, including the imposition of interests and fees, and the repayment terms.

**(d)  Use of the Moneys from the Municipal Redemption Fund.--**  The moneys proceeding from the Municipal Redemption Fund made available to the municipalities through loans shall be used for solid waste collection and recycling programs; the construction of capital works and improvements; health and security, including the payment of payrolls and related expenses, such as employer contribution or payroll taxes; and in any activity or project within the sound public administration of the municipality, including the amortization of operational deficits and the payment of statutory debts, except for payroll and expenses related to such programs or projects. The use of these monies for the amortization of operational deficits and the payment of statutory debts shall apply until June 30, 2012.

**(e)  Audit.--**  The President of the Bank shall direct that an annual external audit be conducted to evaluate the accuracy and propriety of the amounts deposited in the Municipal Redemption Fund, as well as of all matters related to the loans granted to the municipalities in accordance with this Section, and on the amounts withdrawn by the municipalities that choose not to make said loans with the Bank, including a special certification expressing an opinion on such respect. A copy of said audit, as well as of the special certification issued for such purposes, shall be sent to the Legislative Assembly and to OCAM within a term of thirty (30) days after the same have been concluded or issued, as it may correspond. In this respect, OCAM shall furnish said information to the municipalities that request it within a term of five (5) business days.

## Section 4050.09.-- Municipal Improvement Fund -- Creation.--

**(a)  Creation of the Fund.--**  A "Municipal Improvement Fund" is hereby created to be nourished from the deposits made from the revenues corresponding to the zero point one percent (0.1%) of the proceeds of the sales and use tax authorized by Section 4020.10 and Subtitle F, obtained from the zero point five percent (0.5%) of the sales and use tax imposed by the municipalities and collected and deposited by the Secretary pursuant to Section 4050.06(e)(3) of this Subtitle, in an account or special fund in the Bank to be distributed through legislation by the Legislative Assembly to be appropriated for capital works and improvement projects in the municipalities, such as:

**(1)**  Improvements to the schools of the public education system, whether property of the Commonwealth or of the municipalities;

**(2)**  Capital works and improvements in low-income communities;

**(3)**  Capital works and improvements in Commonwealth or municipal public housing projects;

**(4)**  Capital works and improvements in recreational or sports facilities;

**(5)**  Capital works and improvements; or

**(6)**  Housing rehabilitation or construction works for low-income people within capital works and improvement projects.

## Section 4050.10.-- Credit for Purchasing Products Manufactured in Puerto Rico.--

**(a)**  Any eligible business that purchases eligible products manufactured in Puerto Rico, including components and accessories, shall be entitled to claim a credit against the taxes established in subsection (h), as provided in subsection (c) of this Section.

**(b)  Definitions.--**  For purposes of this Section:

**(1)  Eligible Business.--**  An "eligible business" shall be considered to be:

**(A)  A Manufacturing Business.--**  Any person or entity engaged in the manufacture of any item or product in Puerto Rico, including assemblers, bottlers, integrators, and persons who remanufacture items that are partially manufactured, and

**(B)  Other Business.--**  Business engaged in trade or business in Puerto Rico, subject to the following limitations:

**(i)  Exports.--**  If the business acquires the eligible products solely to export them, it shall be able to acquire said products directly or through related persons.

**(ii)  Local Sale or Consumption.--**  In the case of business that purchase the eligible products for local sale or consumption, they shall be eligible for the credit provided by this Section insofar as the annual sales volume of the purchaser does not exceed the limit established by the Secretary through regulations, circular letter, or administrative determination of general application.

**(C)**  The term "eligible business" shall not include persons and entities with tax exemption decrees under Act No. 73 of May 28, 2008 [13 L.P.R.A. §§ 10641 et seq.], better known as the "Economic Incentives Act for the Development of Puerto Rico," or any previous or subsequent similar law.

**(2) Eligible Products.--**  For purposes of this credit:

**(A)**  The term "products manufactured in Puerto Rico" means products transformed from raw materials into commodities through any process, and any product made in a manufacturing business in Puerto Rico, as defined in subparagraph (A) of paragraph (1).

**(B)**  A product shall be considered manufactured in Puerto Rico only if more than thirty percent (30%) of its value has been added in Puerto Rico.

**(C)**  Purchases of products manufactured by persons related to the eligible business shall be excluded.

**(D)**  The purchase of energy or water shall never be eligible for credit for purchases of products manufactured in Puerto Rico.

**(E)**  Neither shall products manufactured by any manufacturing business that, individually or together with other members of a controlled group to which it belongs, has had a net sales volume (inside or outside Puerto Rico) in excess of one hundred million dollars ($ 100,000,000) for calendar year 2010, or any other higher limit that can be established by the Secretary through Circular Letter or Administrative Determination of

general application, be considered eligible products.

**(i)**  The exclusion in this subparagraph (E) shall not apply to tuna products manufactured in Puerto Rico by plants engaged in the processing of tuna, regardless of the sales volume said processing plant may have.

**(ii)**  For purposes of this subparagraph (E), two (2) or more corporations or partnerships shall not be considered related persons if shareholders or partners of said legal entities are members of the same family, unless the same member of the family owns more than fifty percent (50%) of the value of the shares or of the interests in each corporation or partnership.

**(iii)**  For purposes of clause (ii), "members of the same family" shall include brothers or sisters, be they whole-blood siblings or not, and linear ancestors or descendants.

**(iv)**  Any transaction or series of transactions shall be rendered without effect if one of its main purposes is to circumvent subparagraph (C) or (E), including, but not limited to the organization or use of corporations, partnerships or other entities, the use of shareholder representative agreements (including facilitation agreements) or the use of any other plan or agreement to avoid matching the description of related person provided in subparagraph (C) meeting the requirement of net sales volume provided in subparagraph (E).

**(3)  Added Value in Puerto Rico.--**  For purposes of this section, added value in Puerto Rico shall be understood to be the difference between the price collected by the manufacturing business for the manufactured product, and the cost of any imported raw material or any other cost incurred outside

Puerto Rico. Added value in Puerto Rico includes, without it being understood as a limitation, direct or indirect costs incurred in Puerto Rico such as labor, general expenditures related to overhead, and the cost of locally manufactured raw material.

**(c)** The credit provided in this Section shall be computed as follows:

**(1)** First, the amount of the purchases of eligible products manufactured in Puerto Rico made by the eligible business during the taxable year shall be determined;

**(2)** Then, the average of the purchases of eligible products manufactured in Puerto Rico made by the eligible business shall be determined for three (3) of the ten (10) previous taxable years that reflect the lowest purchase amount, that is, excluding the seven (7) years in which the amount of the purchases was higher.

**(3) Amount of the Credit.--**

**(A) In General.--** The credit for purchases of eligible products shall be ten percent (10%) of the excess of the purchases of said eligible products, as provided in paragraph (1), on the average determined pursuant to paragraph (2).

**(B)** In the case of products manufactured in Puerto Rico by plants engaged in the processing of tuna, the credit shall be ten percent (10%) of the total purchases of said eligible products, as provided in paragraph (1), but the limitations provided in Subsection 4050.10(b)(2)(B) of this Section shall not apply.

**(d)** The Secretary shall establish, through regulations, the documentation that the eligible business shall submit as evidence to claim the credit provided in this Section.

**(e)** The credit shall not be transferrable, except in the case of an exempt reorganization. However, in the case of the credit for purchases of eligible products manufactured in Puerto Rico for export, such credit may be transferred to affiliated entities engaged in trade or business in Puerto Rico.

**(f)** The amount of unused credit of the eligible business in a taxable year may be carried over to subsequent taxable years until it is exhausted.

**(g)** The credit granted in this section shall not generate a refund.

**(h) Use of the Credit.--** The credit provided in this Section shall be applied, first and foremost, to the sales and use tax established in Sections 4020.01 and 4020.02, collected by the eligible business and payable pursuant to Subchapter B of this Subtitle. However, at the taxpayer's request, the Secretary shall be empowered to allow the application of this credit to any other tax imposed in this Code.

**(i) Credit Subject to Taxation.--** The eligible business shall recognize the amount of the credit thus applied as income in the taxable year(s) in which the credit is used.

**(j)** In addition to any other penalty applicable by law, any person who submits false or incorrect information to an eligible business or to the Secretary about the place of manufacture or the amount of added value in Puerto Rico of any product with the purpose of qualifying for the provisions of this Section shall be liable to the Secretary for the amount of any credit illegally claimed by the eligible business under this Section, and shall also have to pay a penalty of one hundred percent (100%) of the amount of the illegally claimed credit.

# CHAPTER 6 -- REGISTRY AND DOCUMENTS REQUIRED

## Section 4060.01.-- Registry for Merchants.--

**(a)** Any person who wishes to conduct business in Puerto Rico as a merchant must file with the Secretary an Application for Certification in the Registry for Merchants for every commercial establishment, stating the names of the persons with an interest in said business and their residences, the address of the main office of the business, and any location where sales are carried out, as well as any other information the Secretary may require.

**(b)** The application described in subsection (a) of this Section must be submitted to the Secretary before the person, enterprise, partnership, or corporation begins to operate a business. The Secretary may impose a service charge that must accompany the application for registration.

**(c)** No merchant may sell, assign, transfer, or otherwise convey to another any Certificate of Registration for Merchants according to the provisions of this Subtitle unless such transfer is duly authorized by the Secretary after meeting the requirements established in this Subtitle and the regulations adopted for its administration.

**(d)** The Secretary, after approving the application for the certificate of registration for merchants, shall grant the applicant a merchant's registry certificate in which the requirement of the merchant as a withholding agent is established.

**(e)** Every merchant shall be required to notify the Secretary about any change or amendment to the information required in the application for the registry of merchants, the theft of the merchant's registry certificate, or the total or partial cease of operations, not later than thirty (30) days after the change or the event.

## Section 4060.02.-- Display of Certificate of Registration.--

The certificate of registration shall be displayed at all times in a place visible to the general public in each place of business for which it is issued. No person may conduct business as a merchant, nor may any person sell or receive anything of value in lieu of admissions, without first having obtained a certificate or after said certificate has been cancelled; and no person shall receive a license from any entity of the Government of Puerto Rico to conduct such business without having obtained a certificate or after said certificate has been cancelled.

## Section 4060.03.-- Commercial Undertaking Without a Certificate of Registration.--

Any person who conducts business in Puerto Rico as a merchant without having applied for a certificate of registration, or whose registration has been revoked, shall be subject to the penalties established in Subtitle F.

## Section 4060.04.-- Registry of Exhibitors.--

**(a)** As used in this Section, the term "exhibitor" means a person who enters into an agreement which authorizes the display of taxable items in a specialized convention or exhibition. The following provisions apply to the registry of exhibitors as merchants under this Subtitle:

**(1)** An exhibitor whose agreement prohibits the sale of taxable items shall not be subject to the requirement of registering as a merchant;

**(2)** An exhibitor whose agreement provides only for the wholesale of taxable items must obtain a certificate of exemption from the purchaser, but shall not be subject to the requirement of registering as a merchant;

**(3)** An exhibitor whose agreement authorizes the retail sale of taxable items must register as a merchant and collect the sales and use tax imposed by this Subtitle on said sales; and

**(4)** Any exhibitor who makes a sales order by mail pursuant to Section 4020.08 must register as a merchant.

**(b)** Any person who organizes a specialized convention or exhibition must have his/her agreement as exhibitor available for inspection by the Secretary.

## Section 4060.05.-- Resources of the Secretary.--

The Secretary is empowered to purchase supplies and equipment and incur in any other proper expenditures needed to enforce this Subtitle.

**Section 4060.06.-- Requirement of Conservation of Documents.--**

Any merchant, as defined in this Subtitle, shall ensure the conservation in Puerto Rico for a period not less than six (6) years, of all information that provides evidence of the taxable items received, used, sold at retail, distributed or stored, and leased by said merchant, such as invoices, bills of lading, collections for said sales, and other documents the Secretary may require.

**Section 4060.07.-- Documents Required from Merchants and Purchasers.--**

**(a) Documents Required from Merchants.--** Any merchant subject to the provisions of this Subtitle must keep accounting books, papers, documents, and any other evidence related to the sales and the amounts of the sales taxes withheld and deposited for a period not less than six (6) years. The documents and information to be kept shall include, but not be limited to, statements, invoices, sales invoices, commercial receipts, cancelled checks, payment receipts, and certificates of exemption.

**(b) Documents Required from Purchasers.--**

**(1) In General.--** The purchaser subject to the provisions of this Subtitle must conserve the sales receipts, documents, and any other evidence of the retail purchase and the payment of the corresponding taxes for a period of not less than twenty four (24) hours.

**(2) Exception.--** In the case that the taxable item acquired has a purchase price of one thousand dollars ($ 1,000) or more, the purchaser must conserve the documents mentioned in paragraph (1) of this Section for a period of not less than four (4) years.

**Section 4060.08.-- Documents Required for Claiming Credits.--**

**(a)** Any merchant who claims a credit granted in this Subtitle against his/her liability for the sales tax must conserve and have available for the Secretary all documents needed to verify the right of said merchant to said credits in the manner established by the Secretary through regulations, including by means of electronic transmission.

**(b)** The Secretary may deny a credit claimed in the return to the extent that it is not supported by the information required under this Section, in which case the amount owed shall be treated as a deficiency, as established in Subtitle F.

**Section 4060.09.-- Sampling.--**

**(a)** In the case that a merchant does not keep proper accounting books for his/her retail sales, the Secretary may, based on a sample of the available registers of the merchant or on other information related to the sales or purchases made by said merchant during a representative period, determine the sales ratio of taxable items compared with the total sales, or the ratio between the purchase of taxable items and the total purchases made by the merchant. This Section does not intend to relieve the merchant from collecting the sales and use tax.

**(b)** In case the accounting books of a merchant are properly kept but very voluminous, the Secretary may select a sample of the transactions and make a projection on the basis of the data collected during the whole period of the audit. This shall be done for the purpose of determining the ratio of taxable item sales compared with the total sales or the proportion between the purchase of taxable items and the total purchases made by the merchant.

To conduct said sampling, the Secretary may reach an agreement with the merchant to determine the means and methods to be used in the sampling process. In the event that they do not reach an agreement, the merchant shall be entitled to a review by the Secretary.

**(c)** In the case of a request for refund, every merchant is entitled, when his/her registers are properly kept but voluminous, to establish the amount of the refund through statistical sampling or through any other sampling method agreed to with the Secretary. Regardless of the sampling method selected, it must reflect the payments in excess as well as the deficiencies in the payment of the sales and use tax, as applicable.

The sampling method must be approved by the Secretary before a request for refund is submitted. Therefore, a request for refund submitted before the sampling method has been approved by the Secretary may not be deemed a completed request for refund.

**(d)** For purposes of this Section, the Secretary shall establish the procedures, through regulations, related to the sampling methods, including the criteria for their use and the approval of the sampling method selected by a merchant.

### Section 4060.10.-- Bond.--

**(a)** In all cases in which it is necessary to ensure the payment of the sales tax established by the provisions of this Subtitle, the Secretary may require a cash deposit, a bond, or any other security as a condition for a person to obtain or retain a certificate as a registered merchant under this Subtitle. Said bond shall be in the manner and for the amount the Secretary may deem appropriate under the circumstances.

**(b)** Any person who fails to make such a cash deposit, post a bond or any other security as provided by subsection (a) of this section, shall not be entitled to obtain or retain a certificate of registration under this Subtitle, and the Secretary of Justice is hereby empowered to initiate the corresponding legal proceedings when so required by the Secretary in order to prevent the person from doing business, subject to the provisions of this Subtitle, until the cash deposit has been made or the bond or other security has been posted with the Secretary.

### Section 4060.11.-- Permit to Pay the Sales and Use Tax Directly to the Secretary.--

**(a)** Any person who, pursuant to the provisions of subsection (d) of this Section, holds a permit to pay the sales and use tax directly to the Secretary may present a certificate of total exemption to the merchants who sell taxable items to said person and the latter shall be relieved from the requirement to collect the sales and use tax. This certificate shall cover every future sale of taxable items to the holder of said permit.

**(b)** The certificate of total exemption issued pursuant to this section shall contain the number of the permit the Secretary has issued to that effect. It shall also contain a certification stating that the holder is committed to pay the sales and use tax on taxable items acquired with said certificate of total exemption.

**(c)** The Secretary shall be solely responsible for evaluating the application to obtain the permit to pay the sales and use tax directly to him/her, pursuant to the requirements established in subsection (d) of this Section.

In these cases, the decision may not be appealed. In those cases in which the permit is denied, a person may only require the authorization of the Secretary to submit an amended application or a new application after a reasonable period has elapsed from the moment the original application was denied.

**(d)** Any person interested in applying for the permit to pay the sales and use tax directly to the Secretary shall submit a written application that includes the following documents:

**(1)** An agreement signed by the applicant or his/her authorized representative. In said agreement, the applicant shall make a commitment to pay the sales and use tax on taxable items on the date established in Section 4042.03;

**(2)** A description, with the detailed information the Secretary may determine, of the accounting method through which the applicant shall make a distinction between taxable items and exempt items; and

**(3)** Evidence of registers that establish that the applicant will annually purchase taxable items with a value of eight hundred thousand dollars ($ 800,000) or more when purchased, excluding the value of

the taxable items for which a certificate of exemption would have been issued pursuant to subsection (a) of Section 4030.02.

**(e)**  The holder of a permit to pay the sales and use tax directly to the Secretary may voluntarily rescind the same. However, said permit shall be valid until revoked by the Secretary and a notice is issued to that respect, as established in subsection (f) of this Section.

**(f)**  The Secretary may, at his/her discretion, cancel the permit of a person who has been granted a permit to pay the sales and use tax directly to the Secretary. Said cancellation is not revocable, and the Secretary shall send a written notice by certified mail to the person in question about the cancellation.

## CHAPTER 7 --  TRANSITORY PROVISIONS

### Section 4070.01.-- Exclusion of Contracts and Preexisting Public Bids.--

**(a)**  Except for as provided in subsection (b) of this Section, retail sales covered by contracts and bids related to taxable items that have been executed or adjudicated before October 31, 2006, shall be exempt from the sales and use tax. The Secretary shall provide the manner in which this Section shall be administered through regulations.

**(b)**  In the case of retail sales of taxable services, these shall be subject to the sales and use tax if they were rendered after October 31, 2006, regardless of whether they are the result of contracts or bids that were executed or adjudicated before October 31, 2006.

## SUBTITLE E --  TAXES ON ALCOHOLIC BEVERAGES

## CHAPTER 1 -  DEFINITIONS

### Section 5001.01.-- Definitions.--

**(a)**  For purposes of this Subtitle, the following terms shall have the general meaning expressed below and the same may be amended through regulations as the Secretary may determine from time to time in view of the changes in the liquor industry:

**(1) Gauging.--**  The measure of any spirits or alcoholic beverages taken by gauge tanks, steelyards, hydrometers, thermometers, ebulliometers, small stills, or any other method prescribed by the Secretary to determine the volume, weight, proof, temperature, and alcohol percentage in alcoholic beverages based on a wine gallon at one hundred (100) proof gallons at sixty (60) degrees Fahrenheit, for the purpose of determining the correct number of gallons of any container of alcoholic beverages.

**(2) Agent.--**  Any Internal Revenue Agent of the Department of the Treasury.

**(3) Distillery or Still.--**  Any apparatus designed, or that may be used, for the purpose of separating alcoholic vapors or liquids from any alcoholic mixture through the process of distillation.

**(4) Absolute Alcohol.--**  Includes all distilled spirits with:

**(A)**  An alcohol content of not less than one hundred ninety eight (198) degrees proof at sixty (60) degrees Fahrenheit;

**(B)**  An ester content in the form of ethyl acetate of not more than five (5) milligrams for each one hundred (100) milliliters;

**(C)**  A total acid content in the form of acetic acid of not more than two (2) milligrams for each one hundred (100) milliliters, and

**(D)**  Such a permanganate time for reducing substances that the typical change in color of this test does not occur before the first five (5) minutes after the reaction has begun.

**(5) Industrial Alcohol.--** Includes all distilled spirits with:

**(A)** An alcohol content of not less than one hundred ninety (190) degrees proof;

**(B)** An ester content in the form of ethyl acetate of not more than eight (8) milligrams for each one hundred (100) milliliters;

**(C)** A total acid content of not more than three (3) milligrams for each one hundred (100) milliliters; and

**(D)** Such a permanganate time for reducing substances that the typical change in color of this test does not occur before the first five (5) minutes after the reaction has begun.

**(6) Neutral Alcohol.--** Any distilled spirit with:

**(A)** An ester content in the form of ethyl acetate of not more than eight (8) milligrams for each one hundred (100) milliliters of absolute alcohol;

**(B)** A total acid content in the form of acetic acid of not more than three (3) milligrams for each one hundred (100) milliliters of absolute alcohol; and

**(C)** Such a permanganate time for reducing substances that the typical change in color of this test does not occur before the first five (5) minutes after the reaction has begun.

**(7) Bonded Warehouses.--** Those buildings or sites exclusively used or devoted to store, deposit, and keep products subject taxation according to this Subtitle, but which taxes have not been paid. There shall be two types of bonded warehouses: (i) private and (ii) public. Private bonded warehouses shall be those belonging to distillers, rectifiers, manufacturers, or wholesale import dealers of alcoholic beverages, who use them solely and exclusively to store their own products. Public bonded warehouses shall be those in which products belonging to persons other than their owners or operators can be deposited.

**(8) Alcoholic Beverages.--** All spirits that have been reduced to a proof suitable for human consumption, as well as liquors and beverages that contain alcohol, whether produced by fermentation or distillation, and whose alcohol content is more than half of one percent (1/2 of 1%) of alcohol per volume.

**(9) Special Alcoholic Beverages.--** Distilled spirits with added fruit flavors such as, but not limited to, lemon, grapefruit, orange, pineapple, or spices, and bottled at not less than forty (40) degrees proof.

**(10) Beverages Derived from Wine.--** Alcoholic beverages manufactured by mixing wines, distilled spirits, fruit juices, aromas or flavors, and cane sugar, including sangria, wine coolers, and any product by any other name used to label these, whose alcohol content does not exceed twenty-four percent (24%) of alcohol per volume. The tax corresponding to these beverages shall be that which applies to the wine category that prevails in the mixture.

**(11) Beer and Other Malt Products.--** Any beverage with an alcohol content that is manufactured by the fermentation in drinking water of an infusion of malt, barley, or their byproducts, or of rice or any other substitute, with or without the addition of other grains, whether prepared or not, of other carbohydrates or byproducts, of carbonic acid, or of other substances suitable for human consumption.

**(12) Champagne and Sparkling or Carbonated Wines.--** Sparkling wines are those made effervescent by the carbonic gas produced in a later fermentation of wine inside a closed tank or bottle; champagne is sparkling wine from the Champagne region of France. Carbonated wines are those wines which are made effervescent by adding carbonic gas so that such an addition shall produce a total content of said gas of more than zero point three hundred ninety-two (0.392) grams in one hundred (100) cubic centimeters of wine.

**(13) Sparkling or Carbonated Wines from Concentrated Must.--** Those wines made effervescent by the carbonic gas produced in a later fermentation of the wine from concentrated must inside a closed tank or bottle, or those wines from concentrated must made effervescent by the addition of

carbonic gas so that such an addition produces a total content greater than zero point three hundred ninety-two (0.392) grams in one hundred (100) cubic centimeters of wine.

**(14) Substandard Sparkling or Carbonated Wines.--** Those wines made effervescent by the carbonic gas produced in a later fermentation of the substandard wine inside a closed tank or bottle, or those substandard wines made effervescent by the addition of carbonic gas so that such an addition produces a total content greater than zero point three hundred ninety-two (0.392) grams in one hundred (100) cubic centimeters of wine.

**(15) Cocktail.--** Alcoholic beverage concocted by mixing distilled spirits such as rum, wines, fruit juices, soda pop, spices, and other flavors, and whose alcohol content is less than twenty percent (20%) of alcohol per volume.

**(16) Beer Concentrate.--** The product, whether in liquid form or emulsion, paste, flakes, grains, or powder, obtained from any industrial process employed during any stage in the manufacture of beer to extract a portion or all the water that beer normally contains.

**(17) Congenerics.--** Includes all chemical components in distilled spirits which may be classified as acid, ester, aldehyde, or alcohol, except for ethyl alcohol, as well as any other component that is a natural product of the process of fermentation, distillation, or aging of distilled spirits.

**(18) Cordials.--** Alcoholic beverages prepared by mixing or distilling spirits with fruits, essences, or aromatic preparations, and whose sugar content is not less than two and one half percent (2 1/2 %) per weight of the final product.

**(19) Distillers.--** Any person who produces distilled spirits or who, through any process of distillation or evaporation, separates pure or impure spirits from any substance, whether fermented or not, or who, being in possession of or using a still, makes, prepares, or is in possession of any substance suitable for distillation.

**(20) Age of the Spirits.--** The age of the manufactured spirits shall be the time these have remained kept in good quality wooden casks of the type traditionally used by the industry for aging strong alcoholic beverages.

**(21) Bottlers or Canners.--** Any person who, habitually engaged in business, has in his/her possession distilled spirits, alcohol, alcoholic spirits, wines, beer, cider, or any other alcoholic beverage in large containers and who, without needing to rectify these, transfers them from their original containers to smaller ones, such as demijohns, bottles, cans, or any other container for the purpose of marketing them.

**(22) Container.--** This term includes any receptacle or vessel that may be used to deposit or keep alcoholic beverages.

**(23) School.--** Includes all public or private schools, including nurseries or preschools, kindergartens, elementary, secondary, and postsecondary schools, and universities.

**(24) Distilled Spirits.--** Distilled spirits, spirits, alcohol, and alcoholic spirits are those substances known as ethyl alcohol, hydrated ethyl oxide or wine spirit, that are commonly produced by the fermentation of grain, starch, molasses, sugar, sugarcane juice, beet juice, or any other substance obtained by distillation, including all dilutions and mixtures of said substances.

**(25) Handcrafted Distilled Spirits.--** Any distilled spirit obtained by fermenting or distilling any product derived from sugarcane, and whose production for the preceding taxable year is less than two hundred thousand (200,000) wine gallons. Spirits shall be considered to be sugar cane byproducts only if:

**(A)** They are derived exclusively from the fermentation and distillation of sugarcane, or

**(B)** They are mixed with spirits obtained from the fermentation and distillation of products that are not derived from sugar cane, have an alcohol content that does not exceed one hundred and

twenty (120) degrees proof, and are used as ingredients in a proportion that does not exceed two and a half percent (2 1/2 %) for the manufacture of rum and a proportion of five percent (5%) for the manufacture of other liquors.

**(26)  Proof Spirits.--**  All alcoholic liquor containing half its volume of alcohol of a specific weight in air of seven thousand, nine hundred thirty-six ten-thousandths and a half (0.79365) at sixty (60) degrees Fahrenheit.

**(27)  Rectified Spirits.--**  All alcoholic beverages manufactured by a rectifier, as said term is defined in this Subtitle. This term also includes distilled spirits that have been subjected to a partial process of manufacture or elaboration subsequent to distillation.

**(28)  Commercial Establishment.--**  Site or place where alcoholic beverages are sold, at wholesale or retail, including any division or branch that has direct communication with said site or place.

**(29)  Export.--**  The act of sending taxable products, in accordance with this Subtitle, from Puerto Rico to a territory other than the United States.

**(30)  Manufacturer.--**  Any person who, not being a distiller or rectifier, is engaged in the manufacture of products subject to taxation under this Subtitle.

**(31)  Formula.--**  The description of the processes and ingredients used in the manufacture of alcoholic beverages.

**(32)  Wine Gallon.--**  The standard liquid measure recognized in the United States, containing two hundred thirty-one (231) cubic inches.

**(33)  Gin.--**  Alcoholic beverage prepared by mixing or distilling spirits with aromatic substances, mainly with juniper, and bottled at not less than eighty (80) degrees proof.

**(34)  Church.--**  Includes, but is not limited to, seminaries, temples, monasteries, chapels, and other similar places used mainly for religious purposes.

**(35)  Import.--**  The act of bringing taxable products to Puerto Rico, in accordance with this Subtitle, from a territory other than the United States.

**(36)  License.--**  The official document issued by the Secretary as evidence of payment of the duties prescribed in this Subtitle to engage in any occupation or trade authorized in this Subtitle.

**(37)  Liter.--**  The metric unit with a capacity equal to one thousand (1,000) cubic centimeters measured at a temperature of four degrees Celsius (4 [degrees] C), for wines, or at a temperature of fifteen point fifty-six degrees Celsius (15.56 [degrees] C), for distilled spirits. For purposes of this Subtitle, one liter of wine equals zero point twenty-six thousand, four hundred seventeen (0.26417) wine gallons, and one liter of distilled spirits equals zero point two hundred sixty-four thousand, one hundred seventy-two (0.264172) wine gallons.

**(38)  Sticker or Label.--**  Shall be understood to mean the combination of words or phrases which describe the contents of a container, be it printed or painted on paper, lithographed, or engraved, which appears on the stopper, cap, or body of the container or a combination of these.

**(39)  Bureau.--**  The Alcoholic Beverages Licensing Bureau of the Department of the Treasury.

**(40)  Foreign Country.--**  Any territory, place, or region which is outside the sovereignty of the United States.

**(41)  Permit.--**  The written authorization of the Secretary which shall specifically indicate the business, trade, or activity which is authorized or allowed.

**(42)  Person.--**  Any natural or juridical person, the latter including partnerships, companies, societies, associations, and corporations, whatever the name by which they may be known.

**(43)  Denaturing Plants.--**  Includes those buildings or premises used for denaturing distilled spirits in accordance with the formulas approved and following the procedure established by the Secretary.

**(44) Industrial Plants.--**   Includes distilleries, rectifying plants, wineries, breweries, and alcoholic beverage bottling plants.

**(45) Sugar Cane Byproducts.--**   Include molasses, sugar, juices, honey, syrups, sugar cane solutions, and any other sugar cane byproduct.

**(46) Rectifier.--**   Any person who uses distilled spirits to manufacture alcoholic beverages by methods other than the original distillation of fermented batters, except in the manufacturing operations of wine or beer.

**(47) Rum.--**   Includes all distilled spirits below one hundred ninety (190) degrees proof and any mixture of said spirits derived from the fermentation of juices, molasses, syrups and solutions of sugar cane and other similar byproducts of sugar cane, whether or not such proof is later reduced to not less than eighty (80) degrees proof, and which, through the manufacturing process, have come to acquire the maturity, bouquet, flavor, and other characteristics attributed to what the market and the consumers recognize as rum. The rum to be exported may have an alcohol content of less than eighty (80) degrees proof, according to the limitations established by the country to where the rum is to be exported.

**(48) Secretary.--**   The Secretary of the Treasury of Puerto Rico.

**(49) Cider.--**   The product of the fermentation of apple juice or of any substitute thereof.

**(50) Dealer.--**   Any person who, on his/her own or through his/her employees, sells, exchanges, changes, offers or displays for sale, or has for sale in his/her commercial establishment or in any other location, any product subject to taxation under this Subtitle. All products subject to taxation under this Subtitle which are displayed to the public in a commercial establishment shall be treated as being sold there. The distillers, manufacturers, and rectifiers who sell or dispose of their products in their respective factories shall not be treated as dealers.

**(51) Retail Dealer.--**   Includes all merchants, commission merchants, and other persons who sell to persons, other than merchants or dealers, any product subject to taxation under this Subtitle in quantities that are generally sold for individual use and consumption.

**(52) Wholesale Dealer.--**   Includes all merchants, commission merchants, and other persons who sell to other dealers, or who are engaged, in Puerto Rico, in the sale, delivery, or distribution to other dealers of any product subject to taxation under this Subtitle.

**(53) Wholesale Importer.--**   Includes all merchants engaged in the import, distribution, and sale of distilled spirits and alcoholic beverages within the geographical boundaries of Puerto Rico.

**(54) Wine.--**   The product of the regular alcoholic fermentation of the juice of fresh grapes or raisins, or of the juices and byproducts of other fruits (with the exception of tropical fruits) and agricultural products, including champagne and sparkling, carbonated, or fortified wines.

**(55) Tropical Fruit Wine.--**   The product of the regular alcoholic fermentation of citrus fruit, pineapple, acerola, tomato, gooseberry, and passion fruit, and the maceration of guava, mango, banana, papaya, soursop, and other fruits commonly produced in tropical zones and whose alcoholic content does not exceed twenty-four percent (24%) of alcohol per volume. This product may be offered either in its simple or carbonated state.

**(56) Concentrated Must Wine.--**   The product of the normal alcoholic fermentation of the pure must of grapes and other fruits, except tropical fruits, concentrated to a minimum density of twenty-eight (28) degrees Baume and a maximum density of forty-two point five (42.5) degrees Baume, and diluted by adding water to the original and exact concentration of fresh juice. The product may have a carbonation level of carbonic gas of up to zero point three hundred ninety-two (0.392) grams in one hundred (100) cubic centimeters of wine.

**(57) Substandard Wine.--**   Any wine manufactured in its country of origin using sugar, water, alcohol, or any other substance in excess of what is needed to correct the natural deficiencies of the fruit, and

whose alcohol content by fermentation has been complemented by fortifying it exclusively with distilled spirits obtained from the fermentation or distillation of products derived from sugar cane or any substitute thereof. The product may have a carbonation level of up to zero point three hundred ninety-two (0.392) grams in one hundred (100) cubic centimeters of wine. To convert wines manufactured under other categories into substandard wines by merely adding sugar, water, or alcohol shall not be permitted.

**(58) Foreign Trade Zone.--** An isolated and restricted area regulated to operate as a public service, in or adjacent to a port, with facilities for loading, unloading, handling, manufacturing, manipulating, storing, displaying and reshipping products, established pursuant to Public Law No. 397, 73rd Congress, approved on June 18, 1934, *48 Stat. 998,* as amended, known as the Foreign Trade Zone Act.

## CHAPTER 2 -- TAXES AND LICENSE FEES

## SUBCHAPTER A -- TAXES

### Section 5021.01.-- Tax Provision.--

An internal revenue tax shall be imposed, collected, and paid only once on the following products kept in a warehouse or which have been or may be, in the future, distilled, rectified, produced, manufactured, imported, or introduced to Puerto Rico at the following rate:

**(a) Distilled Spirits.--**

**(1)** All those obtained through the fermentation and distilling of any product other than sugar cane byproducts shall pay a tax of thirty-one dollars and twenty-nine cents ($ 31.29) per wine gallon and a proportional tax at equal rate per fraction of wine gallon.

**(2)** All those obtained through the fermentation and distilling of any sugar cane byproduct shall pay a tax of fifteen dollars and twelve cents ($ 15.12) per wine gallon and a proportional tax at equal rate per fraction of wine gallon.

**(3)** All those obtained through the fermentation and distilling of any sugar cane byproduct and aged for a period equal to or greater than twelve (12) months shall pay a tax of twelve dollars and nine cents ($ 12.09) per wine gallon and a proportional tax at equal rate per fraction of wine gallon.

**(4)** Any handcrafted distilled spirit shall pay a tax of twelve dollars and nine cents ($ 12.09) per wine gallon and a proportional tax at equal rate per fraction of wine gallon.

**(5)** The taxes imposed under this Subtitle for spirits obtained from sugar cane byproducts shall only apply when said spirits are pure, or when they have been mixed with spirits obtained from the fermentation and distilling of products other than sugar cane byproducts with an alcohol content that does not exceed one hundred twenty (120) degrees proof, used as ingredients in a proportion that does not exceed two and a half percent (2 1/2%) for the manufacture of rum and in a proportion of five percent (5%) for the manufacture of other liquors.

**(6)** For a distilled spirit to qualify under paragraphs (3) and (4) of subsection (a) of this Section, as a spirit derived from sugar cane and aged for a period equal to or greater than twelve (12) months, or as a handcrafted distilled spirit, it shall be an indispensable requirement that the manufacturer or importer file, with the Bureau of Alcoholic Beverages and Licenses of the Department of the Treasury, a certification of the formula and process of the spirit issued by a government agency or entity with a rank or standing similar to that of the Bureau of Alcohol, Tobacco, and Firearms (BATF) or the Bureau of Alcoholic Beverages and Licenses of the Department of the Treasury of Puerto Rico attesting to the satisfaction of the requirements established herein. Furthermore, the manufacturer or importer must file with the Bureau of Alcoholic Beverages and Licenses a certification from the BATF approving the label

of the product. The Secretary, or the official designated by him/her, shall be empowered to order chemical tests or analyses, or tests or analyses of any other nature, to verify the accuracy of any information regarding a formula registered with the Bureau of Alcoholic Beverages.

**(b) Wines.--**

**(1)** On wines elaborated from concentrated must (excluding sparkling or carbonated wines, or imitations thereof), and especially those substandard quality wines whose alcohol content does not exceed twenty four percent (24%) per volume, a tax of two dollars ($ 2.00) per wine gallon, and a proportional tax at equal rate per fraction of wine gallon, shall be paid.

**(2)** On wine (excluding champagne and sparkling or carbonated wines) and cider, whose alcohol content does not exceed twenty-four percent (24%) per volume, a tax of twelve dollars and five cents ($ 12.05) per wine gallon, and a proportional tax at an equal rate on every fraction of wine gallon, shall be paid.

**(3)** On all simple or carbonated tropical fruit wines, whose alcohol content through fermentation has been complemented by fortifying them exclusively with distilled spirits obtained through the fermentation and distilling of sugar cane byproducts, whose alcohol content does not exceed twenty-four percent (24%) per volume, a tax of ninety seven cents (97 [cent]) per wine gallon, and a proportional tax at an equal rate on every fraction of wine gallon, shall be paid.

**(4) Champagne and Sparkling Wine.--**

**(A)** On champagne and sparkling or carbonated wines whose alcohol content does not exceed twenty-four percent (24%) per volume, a tax of fourteen dollars and forty-five cents ($ 14.45) per each wine gallon, and a proportional tax at an equal rate on every fraction of wine gallon, shall be paid.

**(B)** On sub-standard sparkling or carbonated wines, or wines from concentrate must wines, whose alcohol content does not exceed twenty-four percent (24%) per volume, a tax of two dollars and fifty five cents ($ 2.55) per each wine gallon, and a proportional tax at an equal rate on every fraction of wine gallon, shall be paid.

**(C)** For wines manufactured outside of the United States or Puerto Rico to qualify as sub-standard wines, wines obtained from concentrated must, or wines made from tropical fruit, it shall be an indispensable requirement that the manufacturer or importer file, with the Bureau of Alcoholic Beverages and Licenses of the Department of the Treasury, a certification of the formula of said wines issued by a government agency or entity with a rank or standing similar to that of the Bureau of Alcohol, Tobacco and Firearms (BATF) or the Bureau of Alcoholic Beverages and Licenses of the Department of the Treasury. The manufacturer or importer must furthermore file with the Bureau of Alcoholic Beverages and Licenses a certification from the BATF approving the label of the product. The Secretary of the Treasury, or the official designated by him/her, shall be authorized to order chemical tests or analyses, or tests or analyses of any other nature, to verify the accuracy of any information regarding a formula registered with the Bureau of Alcoholic Beverages.

**(c) Beer.--**

**(1)** On all beers, malt extract, and other analogous products, whether fermented or unfermented, whose alcohol content is half of one percent (1/2 of 1%) per volume, and does not exceed one and a half percent (1 1/2%) per volume, a tax of one dollar ($ 1.00) per each wine gallon, and a proportional tax at an equal rate on every fraction of wine gallon, shall be paid.

**(2)** On all beers, malt extract, and other analogous products, whether fermented or unfermented, whose alcohol content exceeds one and a half percent (1 1/2%) per volume, a tax of four dollars and thirty five cents ($ 4.35) cents per each wine gallon, and a proportional tax at an equal rate on every fraction of wine gallon, shall be paid, except as provided in Section 5023.04 of this Subtitle.

(d)  **Transitory Provision.--**  Any distiller, manufacturer, industrial plant, importer, or bonded warehouse that, at the effective date of this Code, has in stock any distilled spirits, wines, champagne, sparkling wines, carbonated wines, or beer subject to the payment of the tax established in this Subtitle, shall be bound to declare and pay said tax at the rates established in this Subtitle.

## Section 5021.02.-- Tax Uniformity.--

Taxes shall be uniform and general for products manufactured or produced abroad and introduced or imported into Puerto Rico, as well as for those manufactured or produced in Puerto Rico, and said taxes shall be assessed and collected by the Secretary according to the provisions of Subtitle F.

## Section 5021.03.-- Time of Taxation.--

(a)  **Distilled Spirits.--**  The tax shall be imposed on distilled spirits, spirits, and alcohols as soon as they are separated in either a pure or impure state, by distillation or any other evaporation process, from any substance, whether fermented or not, even if at any time they are transformed into any other substance, either during the original distillation or evaporation process or by any other process. However, the tax rate to be paid shall be imposed on the basis of the finished product.

(b)  **Wines and Beer Manufactured in Puerto Rico.--**  The tax shall be imposed on wines and beer manufactured in Puerto Rico once these products, in the process of their fermentation, have generated measurable amounts of alcohol. The tax shall be imposed on beer and unfermented malt products once alcohol has been added to the products. However, the tax rate and the tax base to be paid shall be imposed on the basis of the finished product.

(c)  **Distilled Spirits and Alcoholic Beverages Introduced or Imported into Puerto Rico.--**  The tax shall be imposed on distilled spirits and alcoholic beverages brought from abroad at the time of their arrival at a port in Puerto Rico in the sea or air vessel transporting them. However, the tax rate and the tax base to be paid shall be imposed on the basis of the finished product.

## Section 5021.04.-- Time for Producers and Importer-dealers to Pay Taxes.--

(a)  **Distillers.--**  The taxes established under this Subtitle shall be paid by the distiller before the removal of the spirits from the distillery, except in those cases whereby the removal of spirits therefrom without paying the taxes is authorized by this Subtitle or through regulations to that effect.

(b)  **Rectifiers.--**  Those rectifiers who obtain spirits from a distillery without the appropriate taxes having been previously paid shall be bound to pay such taxes before the products rectified or bottled by them are definitely removed from the bonded warehouse where they were deposited.

(c)  **Manufacturers, Bottlers and Canners.--**  Manufacturers, bottlers, and canners whose products are subject to the provisions of this Subtitle shall declare and pay the appropriate taxes before the products manufactured, bottled, or canned by them leave or are removed from the bonded facilities in their respective factories.

(d)  **Importer-dealers.--**  The taxes established in this Subtitle shall be paid on distilled spirits and alcoholic beverages imported or introduced into Puerto Rico, whether for commercial purposes or for personal or domestic consumption, before they are taken or removed from the custody of the customhouse, post office, express carrier, dock, pier, transportation company, or any public or private carrier that brought them to Puerto Rico, or in the manner prescribed by the Secretary through regulations, except as provided in Section 5023.03 of this Subtitle. The person who imports such distilled spirits or alcoholic beverages shall declare the import of said products and dispose of the same according to and in the manner prescribed by the Secretary.

(e)  **Exceptions.--**  The Secretary may authorize the removal of distilled spirits or alcoholic beverages from:

**(1)**  Distilleries, factories or bonded warehouses to be rectified, bottled or canned in Puerto Rico and stored in bonded warehouses;

**(2)**  Industrial plants and bonded warehouses without payment of taxes, to be deposited in bonded warehouses;

**(3)**  Industrial plants and importer bonded warehouses without payment of the taxes established in this Subtitle, if the distiller, rectifier, manufacturer, or dealer has posted bond to guarantee the taxes which encumber said products at the time of their removal, under the conditions and in the amount prescribed by the Secretary. In those cases, the Secretary is hereby authorized to establish the time and manner in which to taxes shall be paid on said products, assessed and computed at the time of their removal from industrial plants; or

**(4)**  Bonded warehouses without the payment of taxes, for the purposes exempt by this Subtitle.

## Section 5021.05.-- Taxes as First Lien.--

Any person who owns, possesses, or exploits any still, distillery, or distilling apparatus, rectifying plant or factory, public or private bonded warehouse, or who in any way is interested in the use and operation thereof shall be individually or severally responsible, as the case may be, for the taxes imposed by this Subtitle on the distilled spirits and alcoholic beverages produced in said plants or stored in said bonded warehouses. The taxes on distilled spirits and alcoholic beverages shall be deemed to be and shall constitute a first lien on the distillery, factory, or rectifying plant which has produced them; on stills, distilling devices, containers, vessels, fixtures, appliances, and tools used in their manufacture as well as those in the bonded warehouses where they are stored. They shall also constitute a first lien on the lot or parcel of land where the distillery, rectifying plant, factory, or public or private bonded warehouse is located, as well as on any building located thereon. Said first lien shall be effective and valid from the exact instant said spirits or alcoholic beverages exist as such and shall cease to be effective only when said taxes have been paid in full pursuant to this Subtitle.

## Section 5021.06.-- Obligation of Taxpayer -- Liquidation of Taxes and Refunds.--

**(a)**  Those persons who, in accordance with the provisions of this Subtitle, must pay the taxes specified therein shall do so without waiting for the Secretary to require that they do so. Otherwise, the amount owed shall count as a deficiency for the purposes established in this Code. The payment of the taxes specified in this Subtitle shall not be deemed to be final and definitive until approved by the Secretary.

**(b)**  As to the claims filed by taxpayers concerning the taxes and license fees illegally or unduly charged, or in excess of the amount due, the Secretary is hereby authorized to refund said taxes and license fees pursuant to the provisions of Acts 231 and 232 of May 10, 1949, as amended, insofar as the taxpayer demonstrates to the satisfaction of the Secretary that he/she has satisfied the tax burden.

**(c)**  It shall be assumed that the taxpayer has passed on the taxes to another person in the amount resulting to be the difference between the sale price of the items subject to taxation which have been or would be the object of credit or refund, and the sum of:

**(1)**  the cost of said items and

**(2)**  the average benefit of the amount involved.

## SUBCHAPTER B -- LICENSE FEES

## Section 5022.01.-- Occupations Bound to Pay License Fees.--

**(a) Table of Annual License Fees.--**

| Occupations | License Fees |
|---|---|

2011 PR H.B. 3070

| Occupations | License Fees |
|---|---|
| Distillers | $ 6,000 |
| Alcoholic beverage manufacturers (beer, wine, denatured alcohol) | $ 1,500 |
| Rectifiers | $ 1,000 |
| Public Bonded Warehouses | $ 1,000 |
| Alcoholic beverage canners and bottlers | $ 2,200 |
| Importer -dealer of alcoholic beverages at wholesale | $ 4,000 |
| Dealer of alcoholic beverages at wholesale (beer, wine, industrial alcohol) | Class A $ 2,000 Class B $ 500 |
| Dealer of alcoholic beverages out of motor vehicles -- per vehicle | $ 200 |
| Dealer of alcoholic beverages at retail (Category A and Category B) | $ 500 |
| Dealer of alcoholic beverages at retail -- duty-free (Category C) | $ 1,300 |
| License for Dealer of alcoholic beverages and cigarettes at retail for a limited time only (15 days) | $ 25 |
| Retailer -- Sale of alcoholic beverages, cigarettes and auto parts and accessories -- per store | $ 200 |

**(b)  Time to Pay License Fees.--**   The license fees shall be paid annually at the time each license is obtained or renewed. Any person who engages in any of the businesses or occupations subject to the payment of license fees under the provisions of this Subtitle, shall pay them on or before the date on which he/she begins to be engaged in such a business or occupation, at the rate imposed in this Section, for those months for which the license is to be issued, including the month in which he/she undertakes such activities.

**(c)**   In the case of new licenses, the required fees shall be paid in proportion to the number of months during which the license shall be valid, according to the table in subsection (d). In these cases, the payment shall cover and be apportioned among the months counted from the date in which the new license is issued to the date in which the payment of the license fees is due again. Notwithstanding the foregoing, the taxpayer shall have the option of making the payment corresponding to the number of months counted from the date in which the license is issued to the next due date, plus another year. In such cases in which the taxpayer selects this payment option, the license shall be issued for the number of months covered by the payment.

**(d)**  The license fee payment due date shall be based on the last digit of the social security number or employer identification number of the taxpayer, as applicable, according to the following table:

| Last digit of social security number or employer identification number | Month in which the payment of the license fee is due |
|---|---|
| 1 | January |
| 2 | February |
| 3 | March |
| 4 | April |
| 5 | May |
| 6 | June |
| 7 | July |
| 8 | August |
| 9 | September |
| 0 | October |

**(e)  Time to Pay in Case of License Renewal.--**  In case of license renewal, taxpayers shall renew their internal revenue licenses during the applicable month, as appropriate, according to the table in subsection (d) of this Section.

**(f)**  No person shall engage in, or continue to be engaged in any business, trade, or occupation for which a license is required until he/she has paid the fees in the form and at the time established in this Subtitle.

**(g)**  The license for "Dealer of Alcoholic Beverages and Cigarettes at Retail for a Limited Time Only" and the license for "Retailer -- Sale of Alcoholic Beverages, Cigarettes, and Auto Parts and Accessories -- Per Store" provided under subsection (a) are the same type of license provided in Section 3050.01(a) of this Code, so the dealers shall pay the applicable fees for only one of such licenses.


**Section 5022.02.-- Payment of Taxes, License Fees, and Penalties.--**

Those persons required to pay taxes, license fees, penalties, or to make other payments provided by this Code shall pay said taxes, fees, or penalties and other items by check or legal tender against correlatively and/or alphabetically pre-numbered receipts.


**Section 5022.03.-- Classification of Licenses for Industrial Plants and Commercial Establishments.--**

When imposing license fees, the Secretary shall classify all industrial plants and commercial establishments in accordance with their production and volume of business. The Secretary shall establish the license classifications through regulations.


**SUBCHAPTER C --**  EXEMPTIONS AND REFUNDS


**Section 5023.01.-- Exempt Persons, Organizations, and Agencies.--**

Distilled spirits and alcoholic beverages shall be exempt from taxation as provided in this Subtitle when they are sold or transferred to the following persons, agencies, and organizations:

**(1)** United States Armed Forces, including the Puerto Rico National Guard (land and air).

**(A)** The United States Armed Forces, when the same are for use and consumption within duly authorized military establishments only. This exemption shall be extended for use and consumption by active military personnel in their homes outside of military bases;

**(B)** Military Forces of Puerto Rico, when the same are for use and consumption within duly authorized military establishments only.

**(2)** International organizations entitled to the privileges, exemptions, and immunities, such as international organizations under Public Law No. 291, 79th Congress, *59 Stat. 669,* their foreign officials and employees.

**(3)** Career consuls credited by the Department of State of Puerto Rico, when reciprocity treaties exist between the government they represent and the government of the United States.

**(4)** The exemption established in this subsection shall not apply to the persons included in subsections (4), (5), (6), and (7) of Section 6 of Act No. 23 of July 23, 1991, as amended, known as the "Puerto Rico National Guard Institutional Trust".

**Section 5023.02.-- Use of Distilled Spirits and Alcoholic Beverages in Manufacturing Processes, Research, Development, or Laboratory Experiments, or for Medical Purposes.--**

**(a)** The taxes prescribed in this Subtitle shall not be imposed on those alcoholic beverages dispatched by or withdrawn from a rectifying, bottling or canning plant, or factory to be used in laboratories for analytical or experimental purposes. Neither shall the taxes prescribed by this Subtitle be imposed on such distilled spirits or alcoholic beverages dispatched by a factory or distillery to be used in:

**(1)** Laboratories for analytical or experimental purposes.

**(2)** The manufacture of products during the elaboration of which distilled spirits are changed into another chemical substance or do not appear in the end product.

**(3)** The manufacture of rubbing alcohol, insecticides, or perfumes.

**(4)** The manufacture of medicinal products.

**(5)** The official service of hospitals, clinics, and laboratories.

**(6)** The fortification of wines.

**(7)** The production of concentrates or essences for the manufacture of soft drinks provided that the end product does not have more than half of one percent (1/2 of 1%) of alcohol per volume.

**(8)** The preparation, canning, or packaging of fruits in syrup and other food products, provided that the product that is prepared, canned, or packaged does not contain a volume of distilled spirits in excess of that which is established by the Secretary for such use, in each case.

**(9)** Research and development.

**(b)** Absolute alcohol produced, introduced, or imported to Puerto Rico shall also be exempt from taxation under this Subtitle when said absolute alcohol is used in the preparation of medicinal products, or in laboratories for analytical or experimental purposes.

**(c)** The taxes imposed by this Subtitle shall not be collected on distilled spirits contained in products imported, introduced, or manufactured in Puerto Rico other than alcoholic beverages, provided they do not contain a volume of distilled spirits in excess of what is established by the Secretary in each case.

**(d)** Any person who wishes to obtain alcohol or distilled spirits under the provisions of this Section shall submit conclusive evidence to the Secretary of his/her right to obtain such products free of tax, post the bonds, and provide warehousing facilities required by the Secretary.

**Section 5023.03.-- Conditioned Exemptions.--**

2011 PR H.B. 3070

The tax on distilled spirits or alcoholic beverages shall not be collected in the following cases:

**(a) Distilled Spirits and Alcoholic Beverages in Transit.--**  When the distilled spirits or alcoholic beverages pass through Puerto Rico in transit, consigned to persons abroad, while they remain in the custody of customs authorities deposited in a free foreign trade zone or deposited in a bonded warehouse authorized by the Secretary, if they are shipped out of Puerto Rico within one hundred and twenty (120) days from the time they are introduced or imported.

**(b) Distilled Spirits or Alcoholic Beverages Introduced or Imported for Re-exporting.--**  When the spirits and alcoholic beverages introduced or imported to Puerto Rico, consigned to dealers with the intention of being re-exported, while they remain in the custody of customs authorities deposited in a free foreign trade zone, or deposited in a bonded warehouse authorized by the Secretary, if they are re-exported within three hundred and sixty (360) days from the time they are introduced or imported.

**(c) Distilled Spirits and Alcoholic Beverages Imported or Introduced to be Sold in Puerto Rico.--**  When the spirits or alcoholic beverages are imported or introduced to be used or consumed in Puerto Rico, while they remain in the custody of customs authorities deposited in a free foreign trade zone or deposited in a bonded warehouse authorized by the Secretary, for a term not to exceed three hundred sixty (360) days from the time they are introduced or imported.

In all cases, the alcoholic beverages and distilled spirits may be removed for consumption and use in Puerto Rico, pursuant to the provisions of this Subtitle.

The term of three hundred and sixty (360) days provided in subsections (b) and (c) of this Section to pay taxes may be extended at the discretion of the Secretary for an additional term of up to one hundred and eighty (180) days.


**Section 5023.04.-- Special Exemptions.--**

**(a)**  In lieu of the tax imposed in paragraph (2) of subsection (c) of Section 5021.01 of this Subtitle on all beer, malt extract, and other fermented or unfermented analogous products with an alcohol content that exceeds one and a half percent (11/2%) per volume, referred to in paragraph (2) of subsection (c) of said Section, which are produced or manufactured by persons whose total production, if any, of such products during their most recent taxable year has not exceeded thirty-one million (31,000,000) wine gallons, there shall be collected a tax in a staggered manner, per wine gallon produced, imported, or introduced, as follows:

**(1)** Up to nine million (9,000,000) wine gallons -- two dollars and fifty five cents ($ 2.55);

**(2)** Per each wine gallon in excess of nine million (9,000,000) up to ten million (10,000,000) -- two dollars and seventy-six cents ($ 2.76);

**(3)** Per each wine gallon in excess of ten million (10,000,000) up to eleven million (11,000,000) -- two dollars and ninety-seven cents ($ 2.97);

**(4)** Per each wine gallon in excess of eleven million (11,000,000) up to twelve million (12,000,000) -- three dollars and eighteen cents ($ 3.18);

**(5)** Per each wine gallon in excess of twelve million (12,000,000) up to thirty-one million (31,000,000) - three dollars and thirty-nine cents ($ 3.39).

**(b)**  Subject to the provisions of Sections 5023.05 to 5023.09, the benefits of this Section shall apply to a person in any taxable year following the year in which the total production of the products described in this subsection, if any, has not exceeded thirty-one million (31,000,000) wine gallons.

**(c)**  The benefits of this Section shall also apply to the importers of the products described in this subsection whose producers meet the requirements established in the previous paragraph.


**Section 5023.05.-- Rules of Availability for Tax Exemption.--**

**(a)**  Any person who wishes to avail him/herself of the benefits of Section 5023.04 shall file an application for exemption with the Director of the Industrial Tax Exemption Office.

**(1)**  The Director may require, through regulations, all the information he/she deems necessary and shall, likewise, include upon granting the exemption, those terms and conditions that, in his/her judgment, promote the economic welfare of all sectors of the industry.

**(2)**  The exemption shall take effect from the time the application is filed, and shall continue in effect unless it is rescinded by the Director. The concessionaire shall maintain the level of employment established in the exemption, taking as a basis the level of employment prevailing as of May 31, 1978, in applicable cases; otherwise, the concessionaire shall be subject to the following options:

**(A)**  In the event the concessionaire is forced to maintain a level of employment that is less than the level required in the exemption, but not less than ninety percent (90%) thereof, he/she shall be required to notify the Director of the Industrial Tax Exemption Office of the fact, stating the reasons that justify such reduction.

**(B)**  In the event that the concessionaire is forced to reduce the level of employment to a figure that is less than ninety percent (90%) of the level required in the exemption, he/she shall file a sworn application justifying the reduction, before the Director of the Office of Industrial Tax Exemption, with a copy to the Secretary of the Treasury and to the Secretary of Labor and Human Resources.

**(3)**  The Director shall take into consideration the grounds adduced by the concessionaire to justify the need to reduce employment, but not limited to strikes, war, government action, natural causes, or any other reasonable cause that is beyond the control of the concessionaire, and issue his/her determination, in writing, within thirty (30) days following the date of receipt and acceptance of the petition.

**(4)**  The Director may cancel the exemption in those cases that the concessionaire fails to comply with the corresponding option, or may reduce the type of exemption in proportion to the ratio between the reduced level of employment and the level of employment established in the concession.

**(b)**  Nothing provided herein shall be construed as to alter or modify the provisions of a labor-management agreement between any concessionaire and a labor organization.


## Section 5023.06.-- Rules to Determine Total Production.--

In the case of persons who individually or collectively, directly or indirectly, control enterprises that produce one or more classes of the products described in Section 5023.04, under one or more trademarks, the total annual production of all said classes and marks shall be considered to determine whether these persons may avail themselves of the benefits of Section 5023.04. In order to determine the total production of the products described in Section 5023.04 of any person during a specific year, not only the direct production of said person shall be taken into account, but also any indirect production thereof made by other persons under franchises, licenses, rights, or similar contracts.


## Sections 5023.07.--Rules for Controlled Groups.--

In the case of controlled groups of corporations or partnerships, the total of thirty-one million (31,000,000) wine gallons stated in Section 5023.04 shall apply to each controlled group. As used in this Section, the term "controlled group" shall have the same meaning that said term has in Section 1010.04 of Subtitle A of this Code.


## Section 5023.08.-- Violations.--

Any person who unduly avails him/herself of the benefits of Section 5023.04 shall be subject to the sanctions and penalties provided in Subtitle F.

**Section 5023.09.-- Administration and Regulations.--**

**(a)**   The Director of the Office of Industrial Tax Exemption is hereby empowered in Section 12 of Act No. 73 of May 28, 2008, as amended, known as "Economic Incentives Act for the Development of Puerto Rico", or any other analogous or subsequent law, to grant the exemption provided in Section 5023.04 of this Subtitle. The determinations of the Director shall be final, unless it is otherwise provided by regulations.

**(b)**   The Director is hereby empowered to revoke the exemption granted when the Secretary determines, through an investigation, that the concessionaire has failed to comply with the requirements and conditions thereof.

**(c)**   The Director of the Office of Industrial Tax Exemption is hereby authorized to approve such rules and regulations that are necessary to enforce the provisions of Section 5023.04, and once said regulations are promulgated, they shall have force of law.

**Section 5023.10.-- Reconditioning of Alcoholic Beverages, Spirits, and Wines Used as Ingredients.--**

**(a)**   The taxes imposed in this Subtitle shall not apply to:

**(1)**   Distilled spirits and alcoholic beverages, except wine and beer, produced in Puerto Rico, that have been or were shipped or exported and have been or were returned to the shipper, rectifier, or manufacturer who bottled them in Puerto Rico, for the correction of deficiencies in said spirits or alcoholic beverages or defects in their containers. The Secretary may give credit for the taxes paid on these distilled spirits and alcoholic beverages, which shall be applied to identical quantities of said products as provided by said official. The Secretary may authorize the destruction, under his/her supervision, of those alcoholic beverages produced in Puerto Rico with distilled spirits that have been or were shipped or exported and were returned to the shipper or rectifier who bottled them in Puerto Rico, which can be proved to his/her satisfaction that cannot be reconditioned, and shall give credit to the producer thereof for those taxes paid on said alcoholic beverages. He/she may likewise give credit for those taxes on alcoholic beverages, except wines and beer, manufactured or sold in Puerto Rico that are returned to the rectifier or bottler who bottled them to correct any deficiencies of said alcoholic beverages or defects in the containers, or when their destruction is authorized because they cannot be reconditioned, as provided by said official by regulations.

**(2)**   Distilled spirits that are not derived from sugar cane, with forty percent (40%) or more alcohol content per volume, (eighty (80) or more degrees proof), and wine imported or introduced into Puerto Rico to be used in Puerto Rico as ingredients in the manufacturing of alcoholic beverages in a proportion that does not exceed two and a half percent (21/2%) per volume in the manufacture of rum, and five percent (5%) per volume in the manufacture of liquors other than rum, provided that is it shown to the satisfaction of the Secretary that said distilled spirits or wines are an integral part of said alcoholic beverages when they are appraised for the payment of the taxes established by this Subtitle or to dispose of them for tax exemption purposes.

**(b)**   A credit, without interest, shall be granted for taxes paid on all alcoholic beverages that are withdrawn from the market because they are damaged and unfit for human consumption, and are therefore returned to the industrial plants or establishment of the dealer-distributor who imported or introduced them to Puerto Rico, to be destroyed under the immediate supervision of representatives of the Secretary, pursuant to the regulations approved by said official to such ends.

**Section 5023.11.-- Transfer of Distilled Spirits, Wine or Beer from one Bonded Warehouse to Another of a Distillery or Factory.--**

**(a)**   Distilled spirits from the cistern and storage rooms of a distillery may be withdrawn in the manner provided by the Secretary, and be transferred without paying the taxes established by this Subtitle;

**(1)**   To any public or private bonded warehouse established in accordance with this Subtitle;

**(2)** From a bonded warehouse to the processing room of a rectifier and from the processing room to a bonded warehouse of a rectifier.

**(3)** From a bonded warehouse or a processing room to a rectifying, bottling or bonded warehouse section.

**(b)** The manufacturers of wine and beer may also transfer their products from any bonded warehouse of their factory to a private or public bonded warehouse, as prescribed by the Secretary.

## Section 5023.12.-- Loss of Bonded Distilled Spirits and Alcoholic Beverages.--

**(a)** No tax shall be collected on distilled spirits and alcoholic beverages:

**(1)** Lost while in a bonded warehouse:

**(A)** Due to filtration or absorption in the containers or by evaporation and other natural causes; or

**(B)** Because they were withdrawn, if the owner of the spirits or alcoholic beverages shows to the satisfaction of the Secretary that the withdrawal occurred without connivance, collusion, fraud, fault, or negligence on his/her part, or

**(C)** Because they were destroyed with the prior authorization of the Secretary because the distilled spirits or alcoholic beverages were unfit for human consumption or for sale.

**(2)** Lost in any cistern or storage room of a distillery, in rectification, bottling and canning, or bonded deposit sections, in processing rooms, fermentation and aging tanks, or factories under the control of the government, for the following reasons:

**(A)** Natural or inevitable causes, or

**(B)** As a result of fire or force majeur.

**(b)** To be entitled to this exemption, the distiller, rectifier, or manufacturer must prove to the satisfaction of the Secretary that there was no intent, fraud, connivance, collusion, fault, or negligence on their part.

**(c)** The distiller, rectifier, manufacturer, or owner of the alcoholic beverages or distilled spirits shall not be liable for the payment of taxes on lost distilled spirits or alcoholic beverages because of a culpable or negligent act carried out by his/her employees in those cases in which the distiller, rectifier, manufacturer, or owner of the product can prove that he/she took prudent and reasonable measures to prevent the occurrence of said loss, and when the treasury will not suffer any damage because the lost product was replaced by another on which the appropriate taxes shall be paid.

**(d)** The distiller, rectifier, manufacturer, or owner of the alcoholic beverages or distilled spirits shall establish by sworn statement that he/she has not received any compensation by virtue of insurance that covers the amount or any portion of the taxes that have been imposed on the alcoholic beverages or distilled spirits that were lost.

## Section 5023.13.-- Distilled Spirits and Alcoholic Beverages to be Exported or Furnished to Vessels.--

**(a)** Distilled spirits and alcoholic beverages may be withdrawn from the distilleries, factories, breweries, rectification plants, and bottling sections in Puerto Rico and in bonded warehouses, as provided by the Secretary, without paying taxes, when said products are:

**(1)** Furnished to vessels in Puerto Rico as supplies for navigation and for sale to passengers;

**(2)** Exported to foreign countries;

**(3)** Exported for use and consumption in the Virgin Islands, Guam, Samoa, or other possessions and dependencies of the United States where the Government of the United States allows tax-free shipments, or returns the taxes paid on items shipped to such places;

**(4)** Shipped to any free foreign trade zone in order to be:

**(A)**  Exported from there to a foreign country and to be sold to passengers;

**(B)**  Furnished from there to sea or air vessels as supplies for navigation and for sale to passengers, or

**(C)**  Shipped for use and consumption in the Virgin Islands, Guam, Samoa or other possessions and dependencies of the United States to where the government of the United States allows tax-free shipments, or returns the taxes paid on items shipped to such places; or

**(5)**  Shipped to the United States.

**(6)**  Exported to foreign countries or the Virgin Islands, Guam and Samoa from a free foreign trade zone in Puerto Rico;

**(7)**  Shipped in containers of any capacity to a United States customs Class Six (6) bonded warehouse, to be reduced in proof, rebottled, and then transferred as finished products to a United States customs Class Three (3) bonded warehouse, to be:

**(A)**  Exported to a foreign country; or

**(B)**  Furnished to air or sea vessels as supplies for navigation or for sale to passengers; or

**(8)**  Sold in establishments located in air or sea terminals in Puerto Rico to persons who travel outside of the jurisdictional limits of the Government of Puerto Rico.

**(b)**  The operations described in subsection (a) shall be subject to the conditions provided by the Secretary. The exemption established with regards to the alcoholic beverages sold in establishments located in air or sea terminals in Puerto Rico to persons who travel outside of the jurisdictional limits of the Government of Puerto Rico shall only be recognized when:

**(1)**  The delivery of the items sold in this manner is made aboard the plane or vessel. Provided, that when, to the satisfaction of the Secretary, the air or sea terminal has adequate facilities and protection to prevent the tax-free introduction of said items to Puerto Rico, the Secretary may promulgate rules and regulations establishing the requirements and conditions under which said items can be delivered immediately and directly to the buyer;

**(2)**  Upon recommendation of the Puerto Rico Ports Authority, the appropriate license has been obtained to operate this type of business, as provided in this Subtitle;

**(3)**  The license fees established by Subchapter B of Chapter 2 of this Subtitle have been paid; and

**(4)**  The provisions of this Subtitle and its regulations have been complied with.

**(c)**  When the distilled spirits and alcoholic beverages are withdrawn from the distillery, factory, rectification plant, processing room, or bonded warehouse with the purpose of shipping them to the United States, the payment of Federal internal revenue taxes due thereon shall be paid or deferred according to the applicable Federal regulations before the same are withdrawn and shipped.

**(d)**  The operations related to this Section shall be subject to the conditions established by the Secretary.


**Section 5023.14.-- Alcoholic Beverages Imported by Passengers for Personal Use.--**

**(a)**  Persons over the age of eighteen (18) who arrive in Puerto Rico may import or introduce alcoholic beverages to Puerto Rico, as part of their luggage and free from the taxes prescribed by this Subtitle, in an amount not to exceed one (1) liter, except those that proceed from the United States Virgin Islands, who may introduce alcoholic beverages that do not exceed one (1) wine gallon. Provided, that no person shall be entitled to this exemption unless he/she has remained outside Puerto Rico for more than forty-eight (48) hours, except those persons over the age of eighteen (18) who arrive in Puerto Rico from the United States Virgin Islands, Samoa, or Guam.

**(b)**  In addition to the imports or introductions authorized in subsection (a), persons over the age of eighteen (18), except those arriving from the United States Virgin Islands, may import or introduce to Puerto

2011 PR H.B. 3070

Rico, as part of their luggage, alcoholic beverages in an amount not to exceed three (3) liters, paying the appropriate taxes at the time and in the manner provided in this Subtitle.

**(c)** The imports and introductions authorized in subsections (a) and (b):

**(1)** Shall not be traded in Puerto Rico; and

**(2)** May only be made once every thirty (30) days.

**(d)** The Secretary shall seize and sell at public auction the alcoholic beverages introduced in violation of any of the provisions of this Section, or shall destroy them when, in his/her judgment, it is so justified.

**CHAPTER 3 --** PRODUCTION, IMPORT, AND INTRODUCTION OF SPIRITS AND ALCOHOLIC BEVERAGES

**SUBCHAPTER A --** INDUSTRIAL PLANTS

**Section 5031.01.-- Plant Registration.--**

Any person who intends to establish an industrial plant, device, mechanism, still, utensil, deposit, or warehouse that shall be destined to distill, manufacture, or store distilled spirits or alcoholic beverages shall request the Secretary to register his/her establishment or device in the Registry of Industrial Plants, which shall be kept for such purpose by said official. The application shall state the place where the establishment or device is or will be located, as well as the name of the owner and any other information that the Secretary deems necessary.

**Section 5031.02.-- Permits.--**

No person may engage in the business of distilling, rectifying, manufacturing, bottling or canning, or storing distilled spirits, rectified spirits, or alcoholic beverages in Puerto Rico, unless said person has received a permit from the Secretary to engage in said activities. A permit issued by the Secretary shall be required for each type of these activities.

**Section 5031.03.-- Denial of Permit to Persons Convicted of Certain Crimes of Who Offer False Statements or Omit Information.--**

**(a)** The Secretary may deny the issuance of a permit to operate an industrial plant or a public bonded warehouse to natural persons who:

**(1)** Have been convicted of a felony in Puerto Rico, the United States, or any foreign country;

**(2)** Have been convicted of a misdemeanor for violations to this Code, the Puerto Rico Internal Revenue Code of 1994, as amended, or any preceding tax law; or

**(3)** Have misrepresented or concealed information required to obtain said permit, and for any other just and reasonable cause.

**Section 5031.04.-- Denial of Permit to Distilleries 100 Meters or Less from Industrial Plants.--**

The Secretary may deny the permit provided in this Subtitle for the operation of a distillery in a building that is located at a distance of one hundred (100) meters or less from a rectifying plant, an alcoholic beverage factory, or an industry that manufactures products in which alcohol is used.

**Section 5031.05.-- Denial of Permit to Establish Similar Industries by Different persons in the Same Building.--**

2011 PR H.B. 3070

The Secretary may deny a permit to establish or operate a distillery, a rectifying plant, or a factory for products subject to taxation by this Subtitle, in a building where there is an equal or similar industry, belonging to another person who holds a permit for equal or similar products. The persons who operate distilleries may rectify and bottle their own products provided that these operations are carried out in buildings separate from said distilleries.


### Section 5031.06.-- Term of Effectiveness.--

Every permit shall remain in effect until it is suspended, revoked, or voided by the Secretary, or is voluntarily relinquished by its holder. Said permits shall be deemed cancelled from the time when the industrial plant is sold or otherwise voluntarily or involuntarily transferred to another person. The Secretary may, likewise, revoke or suspend any permit whose holder has voluntarily violated any of the conditions imposed by the Secretary, or any of the provisions of the Code or regulations promulgated by the Secretary, or that the holder of the permit has ceased the activities for which it was issued for more than two (2) years. Any permit may also be voided by the Secretary if he/she reaches the conclusion that it was obtained by fraudulent means and through misrepresentations or concealing of facts, or when, in the judgment of the Secretary, any of the persons authorized by a permit establishes a monopoly of the industry, as well as for any just and reasonable cause. No permit shall be revoked or voided before having first given the person concerned the opportunity to be heard. The holder of a permit may have recourse against the action of the Secretary to revoke, suspend, void, or cancel the permit, by filing a complaint before the Clerk of Adjudicative Procedures of the Department under Act No. 170 of August 12, 1988, as amended [3 L.P.R.A. §§ 2101 et seq.], known as the "Uniform Administrative Procedures Act of the Commonwealth of Puerto Rico".


### Section 5031.07.-- Bond.--

Every person who intends to or is engaged in the manufacture, distilling, or rectifying of any product that is subject to taxation under this Subtitle shall post a bond in favor of the Commonwealth of Puerto Rico in the form and amount determined by the Secretary and subject to his/her approval.


### Section 5031.08.-- Official Books and Statements Related to Alcoholic Beverages.--

The manufacturers, distillers, rectifiers, bottlers or canners, or operators of public bonded warehouses established pursuant to this Subtitle shall keep the official stock books and statements of alcoholic beverages in their distilleries, factories, and public bonded warehouses, from where such books shall not be removed. Said books and documents shall be kept by the distillers, rectifiers, manufacturers, and operators of bonded warehouses for the term established by the Secretary, and the movement of all the products manufactured, distilled, rectified, bottled or canned, or stored shall be registered therein according to the regulations approved by the Secretary. The Secretary shall provide these books and statements at no charge.

It shall be permitted for the information found in the official stock books, as well as the statements of alcoholic beverages that register the movement of the products manufactured, distilled, rectified, bottled or canned, or stored to be kept on microfiches or electronic systems which, in turn, generate the required reports and documentation, subject to the abovementioned systems being submitted to and approved by the Secretary once he/she determines that the required information is provided and verified according to the established criteria.


### Section 5031.09.-- Documents Related to Operations.--

Any person who distills, rectifies, manufactures, distributes, retails, imports, sells, trades, or has in his/her possession as the owner or depositary, or who has had products subject to taxation in accordance with this Subtitle, shall furnish the authentic commercial invoices and any other document or report required of him/her by the Secretary with regard to said products. The Secretary shall establish the term, which shall never be less than four (4) years, during which the distiller, rectifier, bottler or canner, manufacturer, wholesale or retail dealer, and bonded

warehouse operator shall keep the commercial invoices and other documents regarding the manufacture, storage, purchase, and sale of products subject to taxation under this Subtitle.

### Section 5031.10.-- Production Report.--

Every distiller, rectifier, bottler or canner, manufacturer, and bonded warehouse operator shall furnish to the Secretary, not later than the tenth (10th) day of each month, a report in which the amount and class of the taxable products distilled, rectified, manufactured, imported, or stored under bond during the preceding month, on the forms or substitute means provided by the Secretary.

### Section 5031.11.-- Denatured Alcohol.--

(a) **Formulas.--**  No person shall manufacture denatured spirits or alcohol, especially denatured alcohol for industrial or commercial purposes, including alcohol for external use and products manufactured with denatured alcohol, unless the Secretary has approved the formula for the manufacture thereof. Said person shall remit samples of said products when so required by the Secretary.

(b) **Exemption from Purity Requirements.--**  The spirits and denatured alcohol shall not be compelled to meet the requirements established by this Subtitle with regard to purity, content of congenerics, age, and permanganate time, considering the impurities they may contain as part of the denaturing agents used to make said spirits unfit for drinking.

### Section 5031.12.-- Control of Industrial Plants.--

The custody of every industrial plant, bonded warehouses, and other bonded facilities of said plants shall be governed by the regulations promulgated by the Secretary to such purposes.

### Section 5031.13.-- Puerto Rican Rum.--

(a)  Any rum that states on its label the phrase "*Ron de Puerto Rico*" or "Rum of Puerto Rico" must be manufactured and aged for a minimum of twelve (12) months in Puerto Rico, and meet the rum requirements established in this Subtitle as well as the quality requirements established by the Secretary through regulations to such effect.

(b)  Any rum to be shipped or exported from Puerto Rico shall be manufactured and aged in Puerto Rico, and shall meet the rum requirements established in this Subtitle and the quality requirements established by the Secretary through regulations to such effect. Distilled spirits shall not be aged less than twelve (12) months when removed from the bonded warehouse where they are aged.

(c)  The casks used to age spirits shall be of the type traditionally used by strong alcoholic beverage industries for the aging of their products and shall have a capacity of at least forty (40) wine gallons, but not more than one hundred and fifty (150) wine gallons. At the time the aging process begins, or after the spirits have been reprocessed for aging, the casks shall be filled to a volume of not less than forty (40) wine gallons. In determining the age of a mixture of spirits, the age of the youngest spirits used in the mix shall govern the total mixture and said age shall be credited to the processed rums that are re-aged. In order to specify the age of the spirits on the labels of the containers, they shall have to be manufactured and aged in Puerto Rico.

(d)  The Secretary is empowered to eliminate the twelve (12)-month aging requirement established above, when he/she is furnished, to his/her satisfaction, with a legally required commitment by the buyer of the rum to the effect that he/she shall not identify the entity that produces said rum in Puerto Rico or allow said rum to be identified in any way as rum originated or produced in Puerto Rico.

(e)  In the event that the legal commitment stated above is violated in any way, the producing entity shall file an injunction in the proper forum to stop said violation immediately; the producing entity shall be subject

to the penalties provided in Subtitle F; and the producing entity shall reserve its obligation in the buyer's contract to collect all the remaining inventory of the rum that is unduly identified as "Rum of Puerto Rico", or in which the entity that produces said rum in Puerto Rico is identified, for its immediate destruction.

### Section 5031.14.-- Installation of Pipes, Valves, and Other Devices.--

Every operator of an industrial plant may install pipes, valves, pumps, or other mechanisms with the previous authorization and under the supervision of the Secretary.

### SUBCHAPTER B -- IMPORT AND INTRODUCTION OF SPIRITS AND ALCOHOLIC BEVERAGES

### Section 5032.01.-- Prior Requirements for Importers.--

(a)  The Secretary may deny permits to import or introduce spirits and/or alcoholic beverages to natural or juridical persons whose principal shareholders or directors:

(1)  Have been convicted of a felony in Puerto Rico, the United States, or any foreign country;

(2)  Have been convicted of a misdemeanor for violation to this Code, the Puerto Rico Internal Revenue Code of 1994, as amended, or any preceding tax law; or

(3)  Have misrepresented or concealed the information required to obtain said permit, and for any other just and reasonable cause.

### Section 5032.02.-- Delivery of Beverages by Carriers.--

(a)  Land, Sea, or Air Carrier.--  No land, sea, or air carrier who has in his/her custody taxable alcoholic beverages under this Subtitle shall deliver the merchandise to the consignee, or the person who may appropriately claim it, unless a certification of the Secretary is produced authorizing the delivery of said merchandise.

(b)  Importer or Dealer.--  No importer or dealer shall remove any alcoholic beverages from the custody of customs without the prior written consent of the Secretary.

### Section 5032.03.-- Requirements for the Import or Introduction of Distilled Spirits or Alcoholic Beverages.--

(a)  Those persons who obtain a permit to engage in importing or introducing distilled spirits or alcoholic beverages shall meet the following requirements:

(1)  Obtain a wholesale or retail alcoholic beverage dealer license, and

(2)  Submit the official documents required by the Secretary to determine who is mainly responsible for the corresponding commercial entity.

(b)  When an importing wholesale dealer intends to deal at wholesale from a motor vehicle, he/she shall avail himself/herself of the license established for said purpose in this Subtitle.

### Section 5032.04.-- Tax Liability.--

(a)  Every person who imports or introduces distilled spirits and alcoholic beverages shall be liable individually or jointly, as the case may be, of the taxes that are imposed under this Subtitle on the taxable products he/she imports or introduces.

(b)  The person who imports or introduces distilled spirits or alcoholic beverages shall be relieved of tax liability when he/she transfers or endorses the bill of lading or other document regarding said spirits and alcoholic beverages to another dealer authorized by the Secretary, while the same remain under the

custody of the shipping company, customs, express, or any carrier that brought them to Puerto Rico. In this case, the tax liability shall rest on the dealer who acquires said spirits and alcoholic beverages.

**Section 5032.05.-- Time to Pay Taxes.--**

Distilled spirits, spirits, alcohols, and alcoholic beverages imported or introduced for commercial purposes or for personal use shall pay the taxes established in this Subtitle in the time and form provided in Sections 5021.04(d) and 5023.03 of this Subtitle.

**Section 5032.06.-- Import or Introduction Statement.--**

Upon the written request of the dealer by means of a sworn statement, the Secretary shall authorize the import or introduction of alcoholic beverages after posting a bond on behalf of the Commonwealth of Puerto Rico for the amount of the taxes payable on said liquors.

**SUBCHAPTER C --** BOTTLING AND CANNING AND LABELING

**Section 5033.01.-- Size of Containers.--**

The Secretary shall establish the sizes of the containers to be used for all alcoholic beverages and distilled spirits through regulations.

**Section 5033.02.-- Limitation in the Size of the Containers.--**

(a) Distilled spirits shall only be shipped or exported from Puerto Rico, or imported or introduced to Puerto Rico, in containers that do not hold more than one (1) gallon. Exempt from this prohibition are:

(1) Distilled spirits other than rum, with an alcohol content of forty percent (40%) or more (eighty (80) or more degrees proof), imported or introduced to be used as ingredients in the manufacture of rum, in a proportion that does not exceed two and one-half percent (2 1/2%); or as an ingredient in the manufacture of liquors other than rum, in a proportion that does not exceed five percent (5%).

(2) Alcohol and denatured spirits for industrial purposes and absolute alcohol and industrial alcohol, as said terms are defined in this Subtitle, solely and exclusively when they are for export to foreign countries, or shipped for use and consumption in the Virgin Islands, in the amounts and for the purposes established by the Secretary; or when they are shipped for use and consumption in the United States; or when they are introduced to Puerto Rico to be used in the preparation of medicinal products.

(3) Distilled spirits that are exported to foreign countries, as said term is defined in this Subtitle, in the amounts that are established by the Secretary.

(4) Distilled spirits that are shipped to United States customs Class Six (6) bonded warehouses, as established by this Subtitle, or bonded warehouses of industrial plants, or to be deposited in bonded warehouses in the United States, pursuant to federal regulations applicable to said warehouses.

(5) Distilled spirits other than rum, mixed or processed in Puerto Rico in a form considered to be Puerto Rican products for purposes of federal laws and regulations that are subsequently shipped to the United States.

(6) Rum produced in Puerto Rico that is exported or shipped to the United States to be used by the exporter, the shipper, or a third party under his/her control, to prepare mixtures of alcoholic beverages such as cocktails, cordials, or similar special alcoholic beverages, provided the controls established by the Secretary through regulations are maintained, so that the prestige and good name of the rum of Puerto Rico is protected.

**(7)** Distilled spirits imported or introduced into Puerto Rico by rectifiers with bonded warehouses authorized by the Secretary of the Treasury and used only and exclusively for the confection of cocktails.

**(8)** Distilled spirits other than rum that have an alcohol content of forty percent (40%) or more (eighty (80) degrees proof or more), which are imported or introduced by industrial plants with bonded warehouses authorized by the Secretary to be used as ingredients in the manufacture of alcoholic beverages.

**(9)** Distilled spirits for further distillation in Puerto Rico in such a way that (after carrying out such a distillation in Puerto Rico) are deemed to be products of Puerto Rico for the purpose of federal laws and regulations, and which are subsequently shipped to the United States or exported overseas.

**(b)** The distillers or rectifiers that want to ship rum produced in Puerto Rico to the United States in containers larger than one (1) gallon shall obtain express authorization for it from the Secretary.

**(c)** When granting said authorization, the Secretary shall ensure in each case that the shipment of rum in containers larger than one (1) gallon shall not decrease the economic activity of the Island. Likewise, he/she shall ensure that this activity will not harm the prestige and good name of Puerto Rican rum abroad. To such ends, the Secretary shall impose the following conditions on the distillers or rectifiers who wish to ship rum from Puerto Rico to the United States in containers larger than one (1) gallon:

**(1)** They shall use in their operations, to the greatest extent possible, raw material and intermediate products made in Puerto Rico, taking into consideration the prevailing conditions regarding the price and quality therefor.

**(2)** No distiller that ships rum in bulk shall reduce his/her present work force except for death, disability, voluntary resignation, or duly justified dismissal for improper conduct of the employee, nor reduce wages when a worker's position is reclassified because of bulk exports.

**(3)** They shall not sell or carry out any transaction to transfer Puerto Rican rum shipped in containers larger than one (1) gallon to other firms engaged in bottling and canning or labeling rum outside Puerto Rico, when the bottling and canning and labeling operations are not under the direct or immediate control of the distiller or rectifier that shipped the rum.

**(4)** They shall not allow plants located in the United States to bottle or can rums or distilled spirits similar to rum distilled outside Puerto Rico under the name, brand, label, or names that are equal or similar to those approved and used to label and market Puerto Rican Rum under the provisions of this Subtitle or of applicable federal regulations.

**(5)** The right granted by this Subtitle to any firm engaged in distilling or rectifying Puerto Rican rum shall cease as soon as the main entity to which the right is granted fails to comply with the provisions of this Subtitle regarding the labeling and shipping of rum in containers larger than one (1) gallon.

**(6)** The provisions of Section 5033.05(a) of this Subtitle shall apply to the stickers or labels used in bottling the rum shipped in containers larger than one (1) gallon.

## Section 5033.03.-- Prohibition of Containers with Another Name, Brand, or Trademark.--

No holder of a permit granted pursuant to the provisions of this Subtitle or any other law shall use or allow the use in any way or manner of any receptacle, bottle, or container that bears the brand, trademark, or commercial or corporate name belonging to or used by another permit holder entitled thereto, without the consent of said owner.

## Section 5033.04.-- Exemption from Requirements.--

Spirits and alcoholic beverages that are bottled or canned for export shall be exempt from meeting the requirements established in this Subtitle for said products, with the exception of the provisions in Section 5031.14, with regard to the minimum aging required for rum. In the case of aged rum for export, the Secretary, upon consultation with the

Executive Director of the Industrial Development Company, shall be empowered to allow distillers, rectifiers, manufacturers, or bottlers not to identify the product on their labels as "*Ron de Puerto Rico*" or "Puerto Rican Rum".

**Section 5033.05.-- Labeling.--**

**(a) Labels.--**  Any person who distills, rectifies, manufactures, bottles or cans, introduces, or imports spirits or alcoholic beverages to Puerto Rico shall have the obligation to affix on every container a label or sticker previously approved by the Secretary. The information on said label or sticker may be painted, engraved, printed in an easily legible type, engraved, or lithographed on the bottles or containers. Said label or sticker, except when the dispensation provided in Section 5031.41 of this Subtitle applies, shall have the following information:

**(1)**  Exact contents of the container;

**(2)**  Alcohol content per volume of the beverage or liquor, stated in percentage of alcohol or degrees proof;

**(3)**  Brand or trademark by which it is known in the market;

**(4)**  When the contents of the container are rum distilled, rectified, or manufactured in Puerto Rico, the label or sticker shall prominently bear the phrase "*Ron de Puerto Rico*" in Spanish, or "Puerto Rican Rum" or "Rum of Puerto Rico" in English, in letters proportionate to the container, as prescribed by the Secretary though regulations. Any rectifier, distiller, or bottler or canner of rum or alcoholic beverages who allows the use of this phrase in a deceitful manner shall be subject to the sanctions provided in Subtitle F of this Code;

**(5)**  Name of the corporation, partnership, or the owner of the distillery in which the rum was distilled, or otherwise, the trademark under which it operates, which shall be stated in the distillation permit;

**(6)**  The location of the distillery or factory in which the rum has been distilled or manufactured, or of an office maintained by the distiller or refractor;

**(7)**  The age of the rums may be stated on the labels only when they are distilled, aged, rectified and bottled or canned under strict government control. No government official may certify the age of the Puerto Rican rums unless the Internal Revenue Agent who made the appraisal certifies on the appraisal report the data on the time they have remained in bonded warehouses in Puerto Rico;

**(8)**  In the event the distilled spirits or alcoholic beverages are not distilled or manufactured, but only bottled or canned by a specific person, the label or sticker shall bear the name of the bottler after the phrase "Bottled by";

**(9)**  The words distilled, rectified, blended, prepared, or bottled or canned shall appear on the label or sticker, as the case may be, as provided below:

**(A)**  The word "distilled" shall be used on the label to identify those distilled spirits bottled by the distiller, or by another person for the distiller.

**(B)**  If the distiller is, in turn the rectifier, the label of his/her product shall bear the term "Produced by"

**(C)**  When the taxpayer is only a rectifier, he/she shall use the term "Prepared by" on the label.

**(D)**  If the taxpayer is a bottler, the term "Bottled by" should appear on the label.

**(10)**  The phrase "*Impuesto Pagado*" or "Tax Paid", insofar as the alcoholic beverage is not sold tax-free in Puerto Rico. Any person who distills, rectifies, manufactures, bottles or cans, introduces, or imports spirits or alcoholic beverages into Puerto Rico shall have the obligation to submit an application for the approval of the new label including the phrase "*Impuesto Pagado*" or "Tax Paid" within one hundred and eighty (180) days following the approval of this Code, or a subsequent date authorized by the Secretary at the request of said distiller, rectifier, manufacturer, bottler or canner, or importer; and

**(11)**  The above information may appear on the label either in English or Spanish.

**(b)  Approval of the Use of Labels or Stickers.--**

**(1)**  No person shall bottle or can, import, or introduce alcoholic beverages into Puerto Rico without first having obtained a Certificate of Approval of Labels. In order to obtain said certificate, the interested party shall file an application, in triplicate, with such information as determined by the Secretary and shall submit at least three (3) copies of each label or sticker he/she intends to be approved. Said label or sticker shall not be used until it has been approved. The original of the application for approval of a label shall be returned to the applicant. One of each of the labels that appear on the bottle shall be securely affixed to the original application, as well as to the copies. The certificate shall be subject to inspection by any official of the Bureau.

**(2)**  The introducers or importers of alcoholic beverages, except beer, shall identify the alcoholic beverages imported by them on the label, on which the name and address of the importer shall appear.

**(3)**  The distillers, rectifiers, or bottlers or canners of rum in Puerto Rico who ship Puerto Rican rum shall not use or allow the use of any label on containers of shipped Puerto Rican rum that has not been approved by the Secretary.

**(4)**  The shipments of Puerto Rican rum in containers of less than one (1) gallon shall bear the labels or stickers approved by the Secretary adhered with good quality glue.

**(c)  Identification for Malt and Beer Products.--**

**(1)**  Any fermented or unfermented malt beverage, as well as beer that has been imported or introduced into, or manufactured in Puerto Rico, and in the possession of any person for sale or consumption in Puerto Rico, shall be labeled with an inscription on the body of the can or crown of the bottle, or printed on the label. The inscription shall appear in letters of at least eight points, and shall bear the name "PUERTO RICO" and the trademark, or the name or brand of the manufacturer of said beverages. Except in the case of fermented or unfermented malt beverage or beer sold tax-free, the container, cap or label shall also include the phrase "*Impuesto Pagado*" or "Tax Paid". Any person who manufactures, bottles or cans, introduces, or imports fermented or unfermented malt beverages and beer into Puerto Rico shall have the obligation to submit an application for the approval of the new container, cap, or label including the phrase "*Impuesto Pagado*" or "Tax Paid" within one hundred and eighty (180) days following the approval of this Code, or a subsequent date authorized by the Secretary at the request of said manufacturer, bottler or canner, or importer.

**(2)**  Such malt beverages or beer in the possession of and for use in freight ships and airplanes from Puerto Rico to places abroad shall be exempt from the provisions herein.

**(3)**  Manufacturers, importers, or distributors of malt beverages and beer shall submit to the Secretary samples of such bottle caps or cylindrical bodies of cans bearing the inscriptions required in paragraph (1) with the purpose of obtaining approval thereof before being able to use them in containers for sale in Puerto Rico.

**(4)**  Beer containers shall bear in any of their labels, in a clear and visible manner, the phrase "*Proteja el ambiente, no la tire*" ("Protect the environment, do not litter") or a similar phrase expressing this concept. The information above may appear on the label either in English or Spanish.

## Section 5033.06.-- Approval of Containers and Labels for Beer and Malt Products.--

Any person who manufactures, imports, or introduces beer and other fermented or unfermented malt products for sale and consumption in Puerto Rico, shall obtain prior approval of the containers, labels, and stoppers or caps of the bottles, and to such ends shall submit for the approval of the Secretary, three (3) samples of the bottles, three (3) samples of the labels, and three (3) samples of the bottle caps or stoppers before being able to use them in Puerto Rico. The Secretary shall authorize their use if, in his/her judgment, the bottles or cans, labels, and stoppers or caps meet the requirements as established by regulations.

**Section 5033.07.-- Control of the Containers.--**

The Secretary shall establish requirements as he/she deems it pertinent with regards to the size, brand, labeling, sale, possession, and use of the containers.

**CHAPTER 4 --**  BONDED WAREHOUSES

**Section 5040.01.-- Construction of Bonded Warehouses.--**

The buildings destined for bonded warehouses shall be built on the site, in the form, and of the material prescribed by the Secretary.

**Section 5040.02.-- Requirements.--**

    **(a)** Every person who wishes to operate a bonded warehouse shall:

        **(1)** Obtain a permit from the Secretary;

        **(2)** In the case of public bonded warehouses, obtain a permit from the Secretary and a permit;

        **(3)** Post a bond in favor of the Government of Puerto Rico; and

        **(4)** Obtain a stock and movement book of spirits and alcoholic beverages that will be furnished by the Secretary.

**Section 5040.03.-- Register and Reports.--**

All stored products shall be entered in the stock and movement book, in the manner established by the Secretary, and the reports required by the Secretary on the operations of bonded warehouses shall be filed with him/her.

**Section 5040.04.-- Inspection of Books and Other Documents.--**

The stock and movement books, the statements of alcoholic beverages, and other documents regarding the operation of bonded warehouses shall be available for inspection by the Secretary or an authorized representative at any time.

**Section 5040.05.-- Control of the Bonded Warehouses.--**

The custody of every public or private bonded warehouse shall be governed by the regulations promulgated by the Secretary to such effect.

**Section 5040.06.-- Bonds.--**

Every person who undertakes or is engaged in the operation of public or private bonded warehouses in which products subject to taxation under this Subtitle are stored, shall post a bond on behalf of the Government of Puerto Rico in the amount and form provided by the Secretary, and subject to his/her approval.

**Section 5040.07.-- Changes in the Firms and Companies that Operate Bonded Warehouses.--**

Every operator of a bonded warehouse shall have the obligation to furnish any certification required to the Secretary, or notify the Secretary of any change in the status or condition of the interested parties in the firms or companies engaged in said business.

2011 PR H.B. 3070

**Section 5040.08.-- Tax Liability and Time to Pay Taxes.--**

Every operator of a bonded warehouse shall have the obligation to pay the taxes provided under this Subtitle at the time and in the manner set forth in the Code.

**Section 5040.09.-- Installation of Pipes, Valves, and Other Devices.--**

Every bonded warehouse operator may install pipes, valves, pumps, or other devices with prior authorization and under the supervision of the Secretary.

**Section 5040.10.-- Transfer of Spirits and Alcoholic Beverages from Industrial Plants.--**

With the previous authorization of the Secretary or an authorized representative, spirits or alcoholic beverages may be transferred from an industrial plant to any public or private bonded warehouse established pursuant to this Subtitle without having to pay the taxes established herein.

**Section 5040.11.-- Transfer of Spirits and Alcoholic Beverages between Bonded Warehouses.--**

Spirits or alcoholic beverages may be transferred from a legally established bonded warehouse to another legally established bonded warehouse according to regulations promulgated by the Secretary to such effects.

**Section 5040.12.-- Period to Keep Invoices and Other Documents.--**

Any person engaged in the operation of a bonded warehouse, who has or has had in his/her possession products subject to taxation, under this Subtitle, shall keep and present at the Secretary's request, the authentic invoices and statements of alcoholic beverages, or photocopies thereof, as well as any other document or report required regarding said products, concerning operations that have been carried out, for the term established by the Secretary.

**CHAPTER 5 --** LICENSES

**Section 5050.01.-- Requirements for Corporations and Societies.--**

Every corporation or partnership engaged in a trade or business for which a license is required under this Subtitle, shall submit to the Secretary such documents and comply with such requirements, procedures, and rules established by the Secretary through regulations or any determination of a public character that he/she issues to such effects.

**Section 5050.02.-- Industrial Plants.--**

Every person engaged in distilling or rectifying distilled spirits, or manufacturing beer, wines or denatured alcohol, or bottling or canning alcoholic beverages, shall obtain a license from the Secretary each year in order to operate each one of said trades, and shall pay for each license the fees established in Section 5022.01 of this Subtitle.

**Section 5050.03.-- Public Bonded Warehouses.--**

Every person engaged in operating public bonded warehouses shall obtain a license from the Secretary each year for each warehouse and shall pay for each license the fees established in Section 5022.01 of this Subtitle.

**Section 5050.04.-- Distilled Spirit and Alcoholic Beverage Wholesalers.--**

Every wholesale dealer in distilled spirits, industrial alcohol, and alcoholic beverages shall obtain each year from the Secretary a license for each business, site, warehouse, or commercial establishment, and shall pay for each license the fees established in Section 5022.01 of this Subtitle. The Secretary shall require the dealer, as a condition to grant said license, to meet the requirements, procedures, and rules established by the Secretary through regulations or any determination of a public nature that he/she issues to such effects.

**Section 5050.05.-- Wholesale Sales from Motor Vehicles.--**

Wholesale dealers in alcoholic beverages, wines, and beer who operate from motor vehicles shall obtain a license each year from the Secretary for each motor vehicle. They shall pay for each license the fees established in Section 5022.01 of this Subtitle.

**Section 5050.06.-- Alcoholic Beverage Retailer.--**

(a)  Any person who is interested in being issued a retail dealer's license shall file with the Secretary the appropriate application and shall meet the requirements, procedures, and rules established by the Secretary through regulations or any determination of a public nature that he/she issues to such effects.

(b)  Retail dealers' licenses shall be issued annually and shall be obtained for each business, site, or commercial establishment. These may be conditioned at any time, provided that the situation requires it to protect the health, welfare, safety, and peace of mind of the People of Puerto Rico. The documents required by the Secretary shall be submitted for each renewal. The fees established in Section 5022.01 of this Subtitle shall be paid for each license. Said licenses shall be of the following categories:

(1)  **Category A.--**  These licenses shall be issued to establishments that sell alcoholic beverages to be consumed in the establishment. Under this category, they can also be sold sealed and corked to be consumed outside of the establishment or its vicinity.

(2)  **Category B.--**  These licenses shall be issued exclusively for those establishments where alcoholic beverages are sold in corked and sealed containers to be taken and consumed outside of the establishment and its vicinity.

(3)  **Category C.--**  This license shall be issued exclusively for those establishments located in air and sea terminals in Puerto Rico engaged in the sale of duty-free alcoholic beverages to persons traveling outside of the jurisdictional limits of the Commonwealth of Puerto Rico.

**Section 5050.07.-- Limitation on the Exploitation of Category B and C Licenses Issued to Retailers.--**

No person who holds a Category B or C license as an alcoholic beverage retail dealer shall allow the consumption of such beverages in his/her establishment or its vicinity.

**Section 5050.08.-- Temporary Retail Dealer Licenses.--**

The Secretary may issue temporary retail dealer licenses to temporary establishments, to be effective for the term and for the fees established for each license in Section 5022.01 of this Subtitle.

**Section 5050.09.-- Fees Due Date.--**

The due dates for payment of the license fees established in this Subtitle are established in Section 5022.01.

**Section 5050.10.-- Licenses for Retailers in Permanent Locations.--**

Category A, B, and C retail dealer licenses shall be issued solely for establishments located in permanent buildings and structures. This limitation shall not apply to franchised ships with a fixed itinerary engaged in the transportation of passengers through ports, lakes, and rivers in Puerto Rico.

### Section 5050.11.-- Licenses for Retailers Located Less than One Hundred (100) Meters from Schools, Churches, Religious Centers, or Public or Private Drug or Alcohol Rehabilitation Facilities.--

**(a)**  The Secretary shall not issue new licenses to new businesses intending to engage in the retail sale of alcoholic beverages from sites located at a distance of less than one hundred (100) meters from a public or private school, a church or religious center, or a public or private facility for the rehabilitation of addicts to controlled substances or alcohol. The distance of one hundred (100) meters shall be considered as radial or linear, as the case may be, and shall be counted from the fence, wall, or any other sign of demarcation of the school, church or religious center, or public or private facility for the rehabilitation of addicts to controlled substances or alcohol.

**(b)**  Any person that is interested in being issued a new license under the provisions of this Section shall state in the petition required in Section 5050.06 of this Subtitle whether, at the time of filing the application, the site he/she plans to establish for the retail sale of alcoholic beverages is located or not at a distance of less than one hundred (100) meters from a public or private school, a church or religious center, or a public or private facility for the rehabilitation of addicts to controlled substances or alcohol.

**(c)**  If the applicant for a new license falsely declares that the commercial establishment for the retail sale of alcoholic beverages is not located at a distance that is less than that established above with regards to a public or private school, a church or religious center, or a public or private facility for the rehabilitation of addicts to controlled substances or alcohol, the Secretary shall not issue the license, or if he/she has already issued it, he/she shall proceed to revoke it, pursuant to the powers granted by Subtitle F, following the procedures indicated therein.

### Section 5050.12.-- Establishments that Communicate to Dwellings shall not be Eligible.--

The Secretary shall neither issue nor authorize the transfer of licenses for the wholesale or retail sale of alcoholic beverages to establishments or locations used as residences or that communicate directly with a residence through any opening.

### Section 5050.13.-- Revocation or Denial to Issue or Renew a License for the Retail Sale of Alcoholic Beverages.--

The issuance or renewal of a license for the retail sale of alcoholic beverages shall be revoked or denied if the natural or juridical person that holds said license operates or intends to operate an establishment for the retail sale of alcoholic beverages in conjunction with, or directly related to an establishment whose owner, manager, or person in charge has been convicted of violating Section 108 or 109 of the Penal Code, as amended, with regards to brothels or disorderly or sodomy houses.

### Section 5050.14.-- Fees shall be Paid before Starting a Taxed Occupation.--

No person shall be engaged in or continue any business, trade, or occupation for which a license is required until the fees for such license are paid in the manner and time provided in Section 5022.01 of this Subtitle.

### Section 5050.15.-- Prohibition of the Sale or Donation of Alcoholic Beverages to Persons under 18 Years of Age.--

**(a)**   No dealer shall sell or give alcoholic beverages to any person under eighteen (18) years of age, whether for personal use or the use of other persons, nor shall he/she employ any person younger than eighteen (18) years of age to sell alcoholic beverages.

**(b)**   Every wholesale or retail dealer of alcoholic beverages shall require any person who appears to be younger than eighteen (18) years of age to present an identification card with a picture and date of birth prior to the sale of alcoholic beverages, or the employment or use of said person in dispensing, selling, or dealing alcoholic beverages.

### Section 5050.16.-- Transfer of Licenses and Stock of Alcoholic Beverages.--

**(a)**   Upon written application of the holder of a license required under this Subtitle, the Secretary may approve the authorization for the transfer of said license and the stock of alcoholic beverages to another site or building. The licenses required by this Subtitle shall not be transferred from one person to another.

**(b)**   When the holder of a license sells or transfers his/her stock of alcoholic beverages to another person, the latter may continue the business for a period no greater than sixty (60) days following the date of the sale or transfer. The holder of the license, as well as the purchaser thereof, shall report the transaction to the Secretary within thirty (30) days following the same. The license of any business that is sold, transferred, leased, or otherwise alienated, shall be automatically cancelled sixty (60) days after the date of the corresponding transaction. In case of the death of the holder of a license required under this Subtitle, the spouse, child, heir, executor or administrator, or other legal representative of the deceased license holder may continue the business of the deceased person during the remaining period for which said deceased person had paid the license fees without having to make an additional payment for said period.

### Section 5050.17.-- Transfer of Licenses and Stock of Distilled Spirits.--

The holder of a license required by this Subtitle shall not transfer said license or the stock of distilled spirits to another site or building without the prior authorization of the Secretary.

### Section 5050.18.-- Persons who shall not Operate Establishments where Alcoholic Beverages are Sold.--

The Secretary may deny the issuance of wholesale or retail alcoholic beverage dealer licenses to convicted persons as established in Subtitle F of this Code, or to those whose license has been revoked. The Secretary may deny the issuance of a wholesale or retail dealer license for distilled spirits or alcoholic beverages to natural or juridical persons if any of its directors or principal shareholders:

**(1)**  Have been convicted of a felony in Puerto Rico, the United States, or any foreign country;

**(2)**  Have been convicted of a misdemeanor for violations to the internal revenue laws of Puerto Rico;

**(3)**  Have misrepresented or concealed information required to obtain said license;

**(4)**  Have violated Section 5050.14 of this Chapter; or

**(5)**  For any other just and reasonable cause.

### Section 5050.19.-- Documents and Reports not Subject to Inspection.--

Documents related to the payment of taxes and license fees; reports on the production, import, and distribution of alcoholic beverages, and documents referring to the approval, denial, and revocation of permits and licenses shall be filed in the Department of the Treasury and shall be deemed as public documents, but they shall not be subject to inspection nor shall copies thereof be issued except by request of the person who submitted the report, document, or statement; or by a person with jurisdiction therefor, or by order of a competent court, the House of Representatives, or the Senate of Puerto Rico; or any Committee of any of said bodies.

**Section 5050.20.-- Cancellation of Licenses.--**

The holder of any license who ceases to carry out the activities for which said license was obtained shall request the cancellation thereof to the Secretary and shall surrender the license certificate within thirty (30) days following the cease of the activities.

**SUBTITLE F --** ADMINISTRATIVE PROVISIONS, PROCEDURES, INTERESTS, PENALTIES, AND ADDITIONS TO TAXES

**CHAPTER 1 --** DEFICIENCY ASSESSMENT AND COLLECTION

**Section 6010.01.-- Definitions.--**

**(a) Taxes.--** For purposes of this Subtitle, and unless otherwise provided in this Code, the term "taxes" means any taxes, license fees, or levy provided in Subtitles A, B, C, D, and E of this Code.

**(b) Deficiency.--** As used in this Code in connection with taxes imposed by any Subtitle of the Code, the term "deficiency" means the amount by which the taxes imposed by any Subtitle of this Code is greater than the excess in:

    **(1)** The sum of (A) the amount declared as taxes by the taxpayer in his/her tax return or in his/her tax statement if a tax return or tax statement was filed by the taxpayer and the taxpayer declared therein a certain amount as taxes or levy, plus (B) the amounts previously assessed or charged without assessment as deficiency, over;

    **(2)** The amount of the reductions made, as these are defined in subsection (c)(2).

**(c) Rules for the Application of Subsection (b).--** For purposes of this Section:

    **(1)** The taxes imposed by any Subtitle of this Code and the taxes declared in the tax return or tax statement shall be both determined without taking into account any payments made on estimated taxes, and without taking into account the credits in Sections 1053.01, 1053.02, 1053.04, 1053.05, 1053.07, 1053.08, and 1053.09 of this Code.

    **(2)** The term "reduction" means that part of a reduction, credit, refund, or other reimbursement made because the taxes imposed by any Subtitle of this Code were less than the excess of the amount specified in subsection (b)(1) over the amount of previously made reductions.

**(d) Last Known Address.--** For purposes of this Subtitle, the term "last known address" means the last address reported by the taxpayer in his Income Tax Return, Monthly Sales and Use Tax Return, or any other tax return filed, or in the form designed for such purposes. The address referred to in this Section shall be that which is used by the Department of the Treasury which incorporates barcode smart mail systems and the update of such address pursuant to the parameters established by the United States Postal Service.

**Section 6010.02.-- Procedures In General.--**

    **(a) Notice of Deficiency and Taxpayer Resources.--**

        **(1) Reconsideration and Administrative Hearing.--**

            **(A)** If, in the case of any taxpayer, the Secretary were to determine that there is a deficiency in connection with the taxes imposed by any Subtitle of this Code, the Secretary shall notify the taxpayer about such deficiency by certified mail.

**(B)**  The taxpayer may, within thirty (30) days following the mailing date of the notice, or within the time extension granted by the Secretary for such purpose, request in writing that the Secretary reconsider such deficiency and grant an administrative hearing concerning such issue.

**(C)**  If the taxpayer does not request a reconsideration in the manner and within the term provided herein or, if having requested the same, the notified deficiency is confirmed in whole or in part, the Secretary shall notify, by certified mail in either case, his/her final determination to the taxpayer stating the amount of the original deficiency, the interest, the penalties, and the bond, as applicable, that the taxpayer shall post if he/she wishes to resort to the Court of First Instance against such deficiency determination. Such bond shall not exceed the amount of the taxes notified, plus interest on the deficiency as computed for the term of one (1) additional year at an annual rate of ten percent (10%).

**(D)**  It shall be required that the Secretary state the grounds for his/her final determinations with findings of fact and conclusions of law.

**(E)**  Except in the case of a notice concerning a final determination on a deficiency in excise taxes imposed by Chapter 7 of Subtitle C of this Code or Chapter 7 of Subtitle B of Act No. 120 of October 31, 1994, as amended, known as the "Internal Revenue Code of 1994," the notice concerning the final determination of the Secretary shall state the amount of the original deficiency, the interest, the penalties, and the bond to be posted by the taxpayer if he/she wishes to resort to the Court of First Instance against such deficiency determination. Such bond shall not exceed the amount of the taxes notified, plus interest on the deficiency as computed for the term of one (1) additional year at an annual rate of ten percent (10%).

**(F)**  In the case of a notice concerning a final determination on a deficiency in excise taxes imposed by Chapter 7 of Subtitle C of this Code or Chapter 7 of Subtitle B of Act No. 120 of October 31, 1994, as amended, known as the "Internal Revenue Code of 1994," the notice concerning the final determination of the Secretary shall state the amount of the deficiency and the additions to taxes to be paid by the taxpayer if he/she wishes to resort to the Court of First Instance against such deficiency determination.

**(2)  Lawsuit Before the Court of First Instance.--**

**(A)**  If a taxpayer is not satisfied with a final determination on a deficiency notified by the Secretary in the manner provided in paragraph (1), the taxpayer may resort to the Court of First Instance against such determination as follows:

**(i)**  In the case of a notice concerning a final determination on a deficiency other than a deficiency in excise taxes imposed by Chapter 7 of Subtitle C of this Code or Chapter 7 of Subtitle B of Act No. 120 of October 31, 1994, as amended, known as the "Internal Revenue Code of 1994":

**(I)**  The taxpayer may file a lawsuit in the manner established by law within a term of thirty (30) days counting from the mailing date of the notice concerning the final determination, and

**1.**  Post a bond previously in favor of the Secretary, before him/her, and subject to his/her approval, for the amount stated in the aforementioned notice concerning a final determination; or

**2.**  Pay that portion of taxes with which he/she agrees and contest the rest in court, in which case, the bond shall not exceed the amount of taxes being contested in court, plus interest, surcharges, and any other additions to taxes on the deficiency, as computed in the manner provided in paragraph (1).

**(II)**  In the case of a taxpayer who dies on or after the mailing date of the notice concerning the final determination, but before the expiration of the aforementioned thirty (30)-day term, the term for his/her heirs or legal representatives to post the bond demanded herein and to

resort to the Court of First Instance shall be sixty (60) days counting from the mailing date of the notice concerning the final determination of deficiency.

**(III)**   Except as otherwise provided in this subsection, the posting of the bond for the amount stated by the Secretary in the notice concerning a final determination, as well as filing a lawsuit before the Court of First Instance, both within the term provided above, shall be requirements of a jurisdictional nature, and failure to comply with such requirements shall bar the Court of First Instance from reviewing the matter.

**(ii)**   In the case of a notice concerning a final determination of deficiency regarding the excise taxes imposed by Chapter 7 of Subtitle C of this Code or Chapter 7 of Subtitle B of Act No. 120 of October 30, 1994, as amended, known as the "Internal Revenue Code of 1994":

**(I)**   The taxpayer may file a lawsuit in the manner established by law within a term of thirty (30) days counting from the mailing date of the notice concerning the determination, insofar as he/she pays the amount of the deficiency, plus interest, surcharges, and any other additions to taxes on the deficiency thus determined within the term to file the lawsuit, except as provided further in this subsection.

**(II)**   Except as otherwise provided in this subsection, the payment of the full amount of the deficiency, plus interest, surcharges, and other additions to taxes for the amount stated by the Secretary in the notice concerning the final determination, such as filing the lawsuit at the Court of First Instance, both within the term previously provided, shall be requirements of a jurisdictional nature, and failure to comply with such requirements shall bar the Court of First Instance from reviewing the matter.

**(III)**   In the case of a taxpayer who is unable to meet the requirement to pay the deficiency and additions to taxes, or who is only able to pay part of the deficiency and additions to taxes, the Court of First Instance may order, insofar as the lawsuit involves a substantial question and subject to that which is provided further, that the lawsuit run its course until the final ruling on such lawsuit in its merits without full payment of such deficiency and additions.

**(IV)**   In the cases described in subclause (III), the taxpayer shall file, together with his/her lawsuit, a sworn petition stating the reasons why he/she is unable to pay, in whole or in part, the deficiency and the additions to taxes, and the grounds he/she has to claim that the lawsuit involves a substantial question.

**(V)**   If the Court accepts the arguments presented, the Court shall issue an Order for the Secretary to state his/her views regarding the taxpayer's petition.

**(VI)**   Within thirty (30) days counting from the date of notice of the Order, or in any other term set by the Court, the Secretary shall submit his/her objections against such petition made by the taxpayer, after which the Court shall hold a hearing and hear the parties without delving into the merits of the notified deficiency and shall issue a resolution on the taxpayer's petition.

**(VII)**   If the Court of First Instance determines that the taxpayer is unable to pay the deficiency and the additions thereon, or that he/she is only able to pay these in part, and that the lawsuit involves a substantial question, the Court shall order, in lieu of full payment, as the case may be:

**1.**   That the taxpayer post a bond, to the satisfaction of the Secretary, in a sufficient amount so as to answer for the deficiency and the additions to taxes for a reasonable term; or

**2.**   That the taxpayer pay part of the deficiency and the additions to taxes, and to post a bond for the unpaid part.

**(VIII)**   In the case of a taxpayer who proves that he/she is unable to either pay taxes or post a bond, if the lawsuit involves a substantial question, the Court of First Instance may order that the lawsuit run its course until the final resolution in its merits without any requirement for payment or for posting a bond.

**(3)**   The taxpayer may file a lawsuit as referred to in paragraph (2) at the district of the Court of First Instance pertaining to his/her municipality of residence, and notwithstanding any other provisions of law on transfer of actions or site of judgment, he/she shall be entitled, by reason of convenience for the witnesses, to have his/her case judged at said district of the Court of First Instance. Notwithstanding the provisions of Act No. 328 of May 13, 1949, the subpoena shall be served pursuant to Rule 4.4 of the Rules of Civil Procedure of 2009.

**(4)   Request for Reduction of, Exemption from, or Approval of Bond.--**

**(A)**   In the case of a notice concerning a final determination of a deficiency other than a deficiency in the excise taxes imposed by Chapter 7 of Subtitle C of this Code or Chapter 7 of Subtitle B of Act No. 120 of October 30, 1994, as amended, known as the "Internal Revenue Code of 1994," if the taxpayer is unable to post the bond for the amount required by the Secretary, or is unable to post a bond or, if having already posted such bond for the amount required, the Secretary denied the same before the lawsuit was filed, the taxpayer may, however, file his/her lawsuit at the Court of First Instance within the term provided above, but in such cases, he/she shall file jointly with the lawsuit a request of which the Secretary shall receive notice, so that the Court may reduce the amount of the bond or exempt him/her from posting the same, or approve the bond thus posted, as the case may be, stating the grounds for such action.

**(B)**   In cases in which a taxpayer files a request for reduction, exemption, or approval of bond, the Court shall issue an Order so that the Secretary may state his/her views on the request.

**(C)**   Within thirty (30) days counted from the date on which notice of the Order has been served or within any other term that the Court may provide, the Secretary shall submit his/her objections against the taxpayer's request, after which the Court shall hold a hearing and hear the parties without delving into the merits of the notified deficiency and issue a resolution, either upholding the bond amount required by the Secretary, or reducing such amount, or exempting the taxpayer from posting bond, or approving the bond denied by the Secretary or ordering the taxpayer to post another.

**(5)   Rejection of Bond.--**

**(A)**   If the taxpayer has posted a bond for the amount required and before filing his/her lawsuit, the post has not been rejected, the Secretary shall have a thirty (30)-day term, counting from the date on which he/she is given notice of the lawsuit, in order to submit before the Court, with notice to the taxpayer, his/her objections against the bond thus posted, and if such objections are not submitted within the aforementioned thirty (30)-day term, or within any time extension granted by the Court for those purposes, it shall be understood that the bond has been approved by the Secretary.

**(B)**   If the Secretary objects such bond, the Court shall issue an Order so that the taxpayer may state his/her views on the objection submitted and, at the Secretary's request, the taxpayer shall be required to disclose information regarding his/her financial condition.

**(C)**   Within thirty (30) days counting from the date on which notice is served concerning the Order, or within any other term provided by the Court, the taxpayer shall submit his/her reply to such objections, after which the Court shall hold a hearing and hear the parties on the matter of the objections without delving into the merits of the deficiency and shall issue a resolution, either upholding the bond posted by the taxpayer, or demanding the taxpayer to post another in the manner and with the securities determined by the Court.

**(6)**   In all cases in which the Court determines that the taxpayer shall post a bond, the same shall be submitted to the Secretary for his/her approval within a reasonable term set by the Court, as dictated by

the circumstances in each case, which by no means shall exceed sixty (60) days counting from the date on which the Court's resolution to set such bond becomes binding and enforceable. If the Secretary has no objection regarding the bond thus submitted within thirty (30) days, or within any time extension granted by the Court for such purposes, it shall be understood that the bond has been approved by the Secretary.

**(7)  Grounds to Table Lawsuit.--**

**(A)**  It shall be sufficient grounds to table the lawsuit if the taxpayer:

**(i)**  Does not submit his/her lawsuit together with the request as provided in paragraph (4) of this subsection in order for the amount of the bond to be reduced, or to be exempt from posting the same, or for the bond posted to be approved; or

**(ii)**  Does not reply to the objections of the Secretary to any bond made after the case has been filed before the Court, or fails to appear to the hearing about any bond; or

**(iii)**  Fails to post any bond required by the Court within the term he/she has been granted; or

**(iv)**  Does not file his/her lawsuit before the Court of First Instance within the term established therefor; or

**(v)**  Fails otherwise to post bond within said term to resort to the Court; or

**(vi)**  Fails to comply with any of the requirements imposed by this subsection so that the Court of First Instance may review the matter.

**(B)**  In cases in which the order to shelve is dictated on the grounds that the taxpayer has failed to post any bond required by the Court by virtue of a resolution, for whose review, the recourse of writ of certiorari is hereby granted, before the Court of Appeals, such order to table shall become final and binding.

**(8)**  The decisions of the Court of First Instance on the merits in any event involving a bond, as well as its decisions reviewing or refusing to review any matter due to alleged noncompliance by the taxpayer with the requirements established in this subsection so that the Court may review the matter, cannot be appealed, but any party affected may, within ten (10) days counting from the date of notice of such decision, request a review on the matter by the Court of Appeals by writ of certiorari.

**(9)**  The final judgments of the Court of First Instance dictated on the merits of the deficiency may be appealed in the manner and within the term established by law by filing the corresponding recourse of appeal with the Court of Appeals, subject to the requirement of keeping bond posted, as applicable. In cases in which the judgment of the Court of First Instance determines that there is a deficiency, it shall order the submittal of a computation of the deficiency, and such sentence shall not be deemed to be final, and the term to appeal shall not begin to count for the parties until the date the notice to the taxpayer and the Secretary of the resolution of the Court of First Instance approving the computation of the deficiency determined by such Court are filed on record.

**(10)**  No assessment shall be made of a deficiency in connection with taxes imposed by any Subtitle of this Code, nor shall any demand for payment procedure or court proceedings for collecting be started or filed, before the notice concerning a final determination referred to in paragraph (1) has been sent via certified mail to the taxpayer, nor until the expiration of the term granted by this Subtitle to the taxpayer to resort to the Court of First Instance against such final determination, nor, if the taxpayer has resorted to the Court of First Instance, until the judgment of the Court becomes binding. Notwithstanding the provisions of Section 6080.10(a) of this Subtitle, such appraisal or the commencement of such demand for payment procedures or court proceedings during the period in which these are prohibited, may be impeded or annulled by a court proceeding.

**(b)  Collection of the Deficiency after Resorting to the Court of First Instance.--**

**(1)  General Rule.--**  If the taxpayer resorts to the Court of First Instance against a final determination of a deficiency and said Court passes judgment and rules itself without competence to review that

matter, or, having determined that there is a deficiency, the final deficiency determined by the Secretary, or the deficiency determined by the Court, as the case may be, shall be assessed once the judgment becomes binding and shall be paid by notice and demand from the Secretary. No portion of the amount determined to be a deficiency by the Secretary, but rejected as such by a binding decision of the Court of First Instance, shall be assessed or collected by demand for payment procedures or by court proceedings with or without assessment.

**(2) Appeal or Certiorari of the Supreme Court.--**

**(A)** When a taxpayer requests an appeal or a writ of certiorari to the Supreme Court of the judgment from the Court of Appeals determining a deficiency, he/she shall be required to pay the full amount of the deficiency thus determined which has not been previously paid in whole or in part within the term to request the appeal or certiorari, and noncompliance with such demand to pay, except as provided further in paragraphs (3) and (4), shall divest the Supreme Court from competence to review the request for appeal or certiorari in its merits.

**(B)** If the Supreme Court resolves that the deficiency determined by the Court of Appeals or a portion thereof is nonexistent, and the taxpayer paid such deficiency in whole or in part when requesting appeal or certiorari, the Secretary shall then refund the taxpayer, chargeable to any funds available in the Public Treasury, the pertinent amount pursuant to the judgment of the Supreme Court, plus interest at an annual rate of six percent (6%) on the amount to be refunded, computed from the date of payment.

**(C)** If the Secretary requests appeal or certiorari on the judgment of the Court of Appeals determining that the deficiency is, in whole or in part, nonexistent, or, if having requested the appeal or certiorari, the taxpayer has not paid the deficiency in full, in any case in which the judgment of the Supreme Court favors the Secretary, the deficiency determined in appeal or certiorari, or the unpaid portion thereof, shall be assessed and shall be paid by notice and demand from the Secretary.

**(3) Substantial Question.--**

**(A)** In the case of a taxpayer who requests an appeal or a certiorari for a judgment of the Court of Appeals determining a deficiency and he/she is unable to meet the requirement to pay the deficiency, or is only able to pay part of the deficiency, the Court of Appeals may order, insofar as the request for appeal or certiorari involves a substantial question and subject to that which is provided further, that the appeal or certiorari run its course until the final resolution thereon in its merits, without full payment of such deficiency.

**(B)** In such case, the taxpayer shall file together with his/her writ of appeal or certiorari with the Court of Appeals, a sworn petition, stating the reasons for which he/she is unable to pay the deficiency in whole or in part, and his/her grounds for claiming that the request for appeal or certiorari involves a substantial question.

**(C)** If the Court of Appeals determines that the taxpayer is unable to pay the deficiency or that he/she is only able to pay the same in part, and that the appeal involves a substantial question, the Court shall order, in lieu of payment in full, as the case may be:

**(i)** That the request for appeal or certiorari run its course under the bond posted to resort to the Court of Appeals if the amount posted is sufficient to respond for the deficiency ultimately determined and any interest thereon; or

**(ii)** That the taxpayer post a new bond, to the satisfaction of the Court, in an amount sufficient to respond for the deficiency and any interest thereon for a reasonable term; or

**(iii)** That the taxpayer pay part of the deficiency and that a bond be posted for the unpaid part in any manner provided above in clauses (i) and (ii).

**(D)** In the case of a taxpayer that has been exempt from posting bond to contest the deficiency before the Court of First Instance and who proves that he/she is unable to pay the tax or to post the

bond, if the request for appeal or certiorari involves a substantial question, the Court of Appeals shall provide that the request for appeal or certiorari run its course until the final resolution thereon in its merits, without any requirement to pay or to post bond.

**(4) Other Cases.--**

**(A)** If the Court of Appeals determines that the taxpayer is able to pay the deficiency, or a part thereof, or that he/she should post a bond, the taxpayer shall then pay the deficiency or the determined part thereof, or post the bond, within a term of thirty (30) days counting from the date on which he/she is given notice of the resolution from the Court of Appeals to that effect, and the payment of the deficiency, or the determined part thereof, or the posting of the bond within such term, shall execute the request for review for all purposes of the law.

**(B)** If, within such thirty (30)-day term, the taxpayer fails to make a payment, or fails to post the bond required, or, if having posted a bond that was not accepted, fails to post another within the term granted by the Court of Appeals, the Supreme Court shall not be competent to review the request for appeal or certiorari in its merits and the same shall be dismissed.

**(C)** The resolutions of the Court of Appeals, issued under the provisions of paragraphs (3) or (4) of this subsection, cannot be appealed, but any party may, within ten (10) days counting from the date of notice of any of such resolutions, request a review thereof by the Supreme Court by writ of certiorari.

**(c) In Default of Recourse.--** If the taxpayer does not file a lawsuit before the Court of First Instance against a final determination of deficiency of which he/she has been given notice in the manner established in subsection (a), the deficiency shall be assessed and paid by notice and demand from the Secretary.

**(d) Waiver of Restrictions.--** The taxpayer shall be entitled at any time, through written notice filed with the Secretary, to waiver restrictions on assessment and collection, in whole or in part, of the deficiency as established in subsection (a) of this Section.

**(e) Jurisdiction of the Court of First Instance to Raise Deficiency, Additional Amounts, or Additions to Taxes.--** The Court of First Instance shall have competence to redetermine the correct amount of the deficiency, even if the amount thus redetermined is greater than the amount of the deficiency notified by the Secretary in the manner established in subsection (a) of this Section, and to determine whether any additional amounts or additions to taxes should be imposed, insofar as the Secretary or his/her representative establishes a claim to that effect at any time before judgment is issued.

**(f) Restricted Additional Deficiencies.--** If the Secretary has mailed to the taxpayer a notice of a deficiency in connection with taxes, license fees, and levies provided in Subtitles A, B, C, D, or E of this Code, as provided in subsection (a) of this Section, and the taxpayer had resorted to the Court of First Instance within the term and in the manner provided in this Subtitle, the Secretary shall not be entitled to determine any additional deficiency in connection with the same kind of taxes for which notice of deficiency was given or in connection with the same taxable year, except in case of fraud and except as provided in subsection (e) of this Section (regarding the competence of the Court of First Instance to redetermine deficiencies) and subsection (c) of Section 6010.03 of this Code (regarding the assessment of taxes in jeopardy).

**(g) Exceptions to Restrictions on Assessment.--**

**(1) Assessment Attributable to Mathematical or Clerical Error.--** If the taxpayer has been notified that, due to a mathematical or clerical error readily visible in the tax return or tax statement, he/she owes taxes exceeding those stated in the tax return or tax statement and that a tax assessment has been made or shall be made based on what would have been the right amount of taxes, were it not for the mathematical or clerical error, such notice shall not be deemed to be a notice of deficiency under subsection (a) of this Section or subsection (f) above; and the taxpayer shall not be entitled to file a recourse before the Court of First Instance based on such notice, nor shall such assessment or

collection be prohibited under the provisions of subsection (a) of this Section. Any notices under this paragraph shall state the nature of the alleged error and the explanation for the same.

**(2) Reduction of Assessment Due to Mathematical or Clerical Error.--**

**(A) Request for Cancellation.--** Notwithstanding the provisions of Section 6010.03(i), a taxpayer may submit before the Secretary, within sixty (60) days following the date the notice is sent under paragraph (1), a request for a reduction in any assessment specified in said notice, and when evaluating such request, the Secretary may cancel the assessment.

**(B) Collection Suspended.--** In the case of any assessment under paragraph (1), and notwithstanding paragraph (1), no lien or court proceedings to collect such assessment shall be imposed, started, or enforced during the term within which such assessment may be reduced under this paragraph.

**(3) Special Definitions.--**

**(A) Tax Return.--** The term "tax return" includes any tax return, statement, attachment, form, information statement or listing, as well as any amendment or supplement thereto, filed in connection with any taxes imposed by this Code.

**(B) Mathematical or Clerical Error.--** The term "mathematical or clerical error" means:

**(i)** An error in addition, subtraction, multiplication or division that appears in any tax return,

**(ii)** The incorrect use of any table included in the Code in connection with any tax return if such incorrect use is apparent from the existence of any other information in the tax return,

**(iii)** An entry in a tax return of an item that is inconsistent with another entry in the same item or with another item in said tax return,

**(iv)** Any omission of information, whose inclusion in the tax return is required to evidence an entry in the tax return,

**(v)** An entry in a tax return of a deduction or credit in an amount that exceeds the statutory limit imposed under the Code if such limit is stated:

**(I)** As a specific amount of money, or

**(II)** As a percentage, proportion, or fraction if the items over which such limit applies appear in the tax return, and

**(vi)** The omission in the tax return of the correct account number or social security number, as defined in Section 1010.01, when required. It shall be considered that a taxpayer has omitted the correct account number or social security number if the information submitted by the taxpayer is not consistent with the information that the Secretary obtains from the agency that issues the account number and the social security number.

**(i) Time Extension for Payment of Deficiency.--** When it is proven to the satisfaction of the Secretary that the payment of a deficiency on the date established for such payment would cause undue hardship to the taxpayer, the Secretary may grant a time extension to pay such deficiency for a term not to exceed eighteen (18) months, and in exceptional cases, for an additional term not to exceed twelve (12) months. If a time extension is granted, the Secretary may require the taxpayer to post a bond for such amount, not to be greater than double the amount of the deficiency and with such guarantors as the Secretary may deem necessary to ensure the payment of the deficiency pursuant to the terms of the time extension. No time extension shall be granted if the deficiency is caused by negligence, intentional disregard of the rules and regulations, or fraud with the intent to evade taxes.

**(j) Address to Notify Deficiency.--**

**(1)** In default of notice to the Secretary under this Code of the existence of a trustee relationship, the notice concerning a deficiency in taxes imposed by any Subtitle of this Code shall suffice for purposes

of this Code if the same has been sent via certified mail to the taxpayer to his/her last known address, even if such taxpayer has died or is legally disabled, or in the case of a corporation or partnership, even if the same no longer exists.

**(2)** In case of a notice concerning a deficiency in estate taxes, it shall suffice for purposes of this Subtitle if the same has been addressed to the decedent or any other person responsible for such taxes.

**(3)** The address referred to in this subsection shall be that which is used by the Department of the Treasury that incorporates barcode smart mail systems and the update of such address pursuant to the parameters established by the United States Postal Service.

### Section 6010.03.-- Assessment of Taxes in Jeopardy.--

**(a) Power to Assess.--** If the Secretary believes that the assessment or collection of a deficiency is in jeopardy due to delay, he/she shall immediately assess such deficiency together with any interest, additional amounts, or additions to taxes imposed by this Subtitle and shall issue notice and demand for payment thereof via certified mail, notwithstanding the provisions in Section 6010.02(a)(10) of this Subtitle.

**(b) Assessment before Notice Concerning a Deficiency.--** If an assessment under subsection (a) is made before the taxpayer has been given notice in Section 6010.02(a) of this Subtitle, any determination in connection with the deficiency under assessment, the Secretary shall, within thirty (30) days following the date of assessment, give notice to the taxpayer concerning such deficiency pursuant and subject to the provisions of Section 6010.02(a) of this Subtitle.

**(c) Scope and Amount of Assessment.--**

**(1) Assessment after Notifying the Deficiency.--**

**(A)** An assessment under subsection (a) made after having notified the taxpayer pursuant to the provisions of Section 6010.02(a) of this Subtitle, of the deficiency under assessment, shall by no means affect the procedure established in Section 6010.02(a) of this Subtitle or divest the taxpayer of the recourses provided therein, in connection with such deficiency.

**(B)** When the assessment is made after holding an administrative hearing about the deficiency under assessment, but before the Secretary has notified his/her final determination, he/she shall notify such final determination to the taxpayer within thirty (30) days following the date of such assessment.

**(C)** When the assessment of a deficiency under subsection (a) is made after the Court of First Instance has pronounced judgment concerning the merits of such deficiency, the assessment may only be made in connection with the amount of the deficiency determined per the judgment of the Court.

**(2) Assessable Amount Before the Court of First Instance Issues an Opinion.--**

**(A)** The assessment referred to in subsection (a) may be made in connection with a deficiency which is less or greater than that which has been notified to the taxpayer in Section 6010.02(a) of this Subtitle, without considering the provisions of Section 6010.02(f) of this Subtitle, which prohibits the determination of additional deficiencies, and regardless of whether a recourse has or has not been filed before the Court of First Instance in connection with the deficiency thus notified.

**(B)** The Secretary or his/her representative may, at any time before the Court pronounces judgment, reduce such assessment or any unpaid portion thereof up to the limit he/she deems that the assessment is excessive in terms of amount.

**(C)** The Secretary shall notify the Court of the amount of such assessment or reduction, if the recourse is filed before such Court before the assessment is made or if the same is filed subsequently, and the Court shall have jurisdiction to redetermine the amount of such deficiency and all amounts assessed at the same time in connection therewith.

2011 PR H.B. 3070

(d)  **Bond to Stay Collection.--**   When a deficiency is assessed pursuant to subsection (a), the taxpayer may, within ten (10) days counting from the mailing date of the notice and demand from the Secretary for the payment thereof, obtain the stay of the collection, in full or in any part, of the amount thus assessed by posting with the Secretary a bond for such amount (not greater than the amount in connection with which the stay of the collection applies, plus interest on such amount, computed for the term of one additional year at an annual rate of ten percent (10%)) and with such surety as the Secretary may deem necessary, which bond shall respond for the payment of such portion of the amount for which collection has been stayed for such amount by which it has not been reduced:

> (1)  By a final determination by the Secretary concerning the deficiency if the taxpayer does not resort against such final determination before the Court of First Instance or, if the taxpayer has indeed resorted and such Court pronounces judgment finding itself to be without competence to review the matter, once the judgment becomes binding; or

> (2)  By binding judgment of the Court of First Instance on its merits.

(e)  **Bond In Section 6010.02(a).--**   When resorting to the Court of First Instance against a final determination by the Secretary concerning a deficiency assessed pursuant to subsection (a), the taxpayer shall not be required to post bond as required in Section 6010.02(a) of this Subtitle if the bond posted under subsection (d) of this Section secures, in the judgment of the Secretary or in the judgment of the Court, payment in full of the taxes in contest before the Court.

(f)  **Deficiency Determined by the Court of First Instance.--**   If the taxpayer has resorted to the Court of First Instance against the final determination of the Secretary concerning a deficiency assessed under subsection (a), then, as soon as the amount which should have been assessed is determined by virtue of a binding judgment of such Court, any unpaid amount on which collection had been stayed by the bond shall be collected upon notice and demand of the Secretary, and any remainder of the assessment shall be canceled. If the amount already collected were to exceed the determined amount as it should have been assessed, such excess shall be credited or refunded to the taxpayer, for which filing a claim on such excess shall not be necessary.

(g)  **In Case of Appeal or Review.--**   The applicable provisions of Section 6010.02(b) of this Subtitle shall govern in cases of appeal and review filed by the taxpayer in connection with the judgment of the Court of First Instance on the merits of a deficiency assessed under subsection (a).

(h)  **In Default of Recourse.--**   If the taxpayer does not file a lawsuit with the Court of First Instance against the final determination of the Secretary concerning a deficiency assessed under subsection (a), any unpaid amount on which collection had been stayed by a bond shall be paid upon notice and demand of the Secretary, plus interest at an annual rate of ten percent (10%), computed from the date the assessment was made under subsection (a) until the date the notice and demand is made under this subsection.

(i)  **Reduction Claims.--**   No reduction claim shall be filed in connection with any assessment concerning taxes imposed by any Subtitle of this Code.


## Section 6010.04.-- Bankruptcies and Receiverships.--

(a)  **In General.--**   Upon filing bankruptcy or upon assigning a Receiver for any taxpayer at any court proceeding, any deficiency (plus interest, additional amounts, or additions to taxes imposed by this Code) determined by the Secretary in connection with any taxes imposed by this Code on the taxpayer shall be, notwithstanding the provisions of Section 6010.02(a) of this Subtitle, immediately assessed pursuant to the provisions of this Subtitle.

(b)  **Stay of Prescriptive Term.--**

> (1)  The prescriptive term for collecting debts covered by filing bankruptcy or requesting a receivership shall be stayed for the period comprised between the date bankruptcy is filed, or the date the receivership starts, and ninety (90) days after the date the bankruptcy case is discharged or closed, whichever occurs the latest.

**(2)** Likewise, a filing for bankruptcy shall extend the term for the expiration of the attachment made by the Secretary by the remainder of the term pending expiration as of the date bankruptcy was filed. The term shall begin to run again from the date bankruptcy proceedings are dismissed or discharged and closed. In the event that an attachment made by the Secretary is modified during bankruptcy or receivership proceedings, and after such proceedings are cancelled or dismissed, the attachment shall revert to its original state, before the modification, by reinstating the taxes owed, plus interest, additional amounts, or additions to taxes, as provided in this Code.

**(c)   Interruption of Prescriptive Term.--**   If the Secretary starts an investigation within the four (4) years granted under this Code to assess debts, the prescriptive term for assessment shall be deemed to be interrupted until the Bankruptcy Court makes a final adjudication as to the correction of the debt notified as deficiency, or until the taxpayer accepts the deficiency as notified, whichever occurs first. The prescriptive term for assessment shall be deemed to be interrupted until the conclusion of the controversy regarding whether the deficiency resulting from an investigation started within a bankruptcy case. Any objections by the taxpayer within a bankruptcy case concerning the deficiencies notified by the Secretary shall stay the term to assess deficiencies until the controversy concerning the same is resolved.

**(d)   Deficiencies.--**   Any deficiency identified by an investigation by the Secretary, of which final notice has been given to the taxpayers within three hundred sixty-five (365) days before the date bankruptcy is filed, or after the bankruptcy case has been filed, shall be deemed to be incurred and enforceable in the taxable year of the date of notice. Deficiencies shall thus be claimed and collected during bankruptcy cases.

**(e)   Deficiency Claim.--**   Claims in connection with deficiencies and interest, additional amounts, or additions to taxes shall be filed with the Bankruptcy Court, or the court conducting receivership proceedings, notwithstanding the fact that there are proceedings pending before the Court of First Instance in connection with an assessed deficiency.

**(f)   Unpaid Claims.--**

   **(1)**   After discharging the taxpayer and closing bankruptcy or receivership proceedings, the Secretary may demand payment of any portion of the claim confirmed by the Court, accepted by the taxpayer, and included as part of the confirmed plan, and which has not been discharged or paid by the taxpayer, reorganized debtor, or receiver.

   **(2)**   After notice and demand, the debt may be collected by means of demand for payment proceedings or by court proceedings within a term of five (5) years, or within the remainder of the prescriptive term interrupted by the bankruptcy, whichever is greater, counted from the term provided in subsection (b).

   **(3)**   In cases in which there is a novation of the debt with the Secretary as a result of a reorganization plan, he/she may file proceedings by means of demand for payment or by court proceedings without prior notice and demand.

   **(4)**   Time extensions for such payment may be obtained in the same manner, and subject to the same provisions and limitations as provided in Sections 6010.02 and 6030.05 concerning deficiencies in connection with any taxes imposed by any Subtitle of this Code.

### Section 6010.05.-- Prescriptive Term for Assessment and Collection.--

**(a)   General Rule.--**

   **(1)**   Except as provided in Sections 6010.06 and 6080.01, the amount of taxes or levies set forth under any Subtitle of this Code shall be assessed within four (4) years after the date the tax return or statement was filed, and no court proceedings without assessment for the collection of such taxes shall be filed after the expiration of such term. If a taxpayer amends his/her tax return within a term of sixty (60) days before the expiration of the prescriptive term for assessing taxes, and such amendment yields an increase in the amount of taxes or levies determined in the original tax return, the Secretary shall have one (1) year from the date he/she receives the amended tax return or statement to assess additional taxes or levies.

**(2)**  In the case of traders who are importers or manufacturers, the term "tax return" or "tax statement" refers to the tax return required in Section 3020.08.

**(b)  Petition for Prompt Assessment.--**  As for income received during the lifetime of a decedent or by his/her estate during the administration period, or by a corporation, taxes as determined under Subtitle A of this Code shall be assessed, and any court proceedings without assessment for the collection of such taxes shall be filed within a term of eighteen (18) months after having filed a written request to such effect (filed after having filed the tax return or statement) by the executor, Executor, or other trustee representing the estate of such decedent, or by the corporation, but not later than four (4) years from the date the tax return or statement was filed. This subsection shall not apply to corporations unless:

**(1)**  In said written request, notice is given to the Secretary that the corporation intends to go into liquidation not later than the date of expiration of such eighteen (18)-month term; and

**(2)**  The liquidation is started in good faith before the date of expiration of such eighteen (18)-month term; and

**(3)**  The liquidation is completed.

**(c)  Omission in Tax Returns or Statements.--**

**(1)**  As for income taxes imposed by Subtitle A of this Code, if the taxpayer omits from his/her gross income an amount properly includible therein which exceeds twenty-five percent (25%) of the amount of the gross income declared in the tax return, such taxes may be assessed, or court proceedings without assessment for the collection of such taxes may be filed at any time within six (6) years following the date the tax return was filed.

**(2)**  As for excise taxes provided in Subtitle C of this Code, if the taxpayer omits the statement required in Section 3020.10 of Subtitle C, and amount of the taxable price that is includible therein and which exceeds twenty-five percent (25%) of the full taxable price reported in such statement, such taxes may be assessed, or court proceedings without assessment for the collection of such taxes may be filed at any time within six (6) years following the date the tax statement was filed.

**(3)**  As for the sales and use tax imposed by Subtitle D of this Code, if a merchant or taxpayer omits from gross sales or purchases an amount that is properly includible therein and which exceeds twenty-five percent (25%) of such sales or purchases, such taxes may be assessed, or court proceedings without assessment for the collection of such taxes may be filed at any time within six (6) years following the date the Monthly Sales and Use Tax Return has been filed.

**(d)  Distributions in Liquidation to Stockholders.--**  For purposes of Subtitle A, if the taxpayer omits from his/her gross income an amount that is properly includible therein as an amount distributed during the liquidation of a corporation, such taxes may be assessed, or court proceedings without assessment for the collection of such taxes may be filed at any time within six (6) years following the date the tax return was filed.

**(e)  Tax Returns Filed Before the Due Date.--**  For purposes of subsections (a), (b), (c), or (d), a tax return or statement filed before the due date established under the applicable Subtitle to file such tax return shall be deemed as filed on such due date.

## Section 6010.06.-- Exceptions to the Prescriptive Term.--

**(a)  False Tax Return or Statement or Absence of Tax Return or Statement.--**  As for tax returns or statements required under any Subtitle of this Code that have been filed falsely or fraudulently with the intent to evade taxes, or when there is failure to file tax returns or statements, such taxes may be assessed or court proceedings for the collection may be filed without assessment at any time.

**(b)  Waiver.--**  In the event that, before the expiration of the term established in Section 6010.05 of this Subtitle for tax assessment, both the Secretary and the taxpayer had agreed in writing that such taxes would be assessed after such term, such taxes may be assessed at any time before the expiration of the

term agreed upon. The term thus agreed upon may be extended by virtue of successive written agreements made before the expiration of the previously agreed term.

**(c)   Property Valued Inconsistently.--**   If any property of a decedent's estate or which has been transferred as a gift is valued by the taxpayer for the purpose of determining his/her tax base pursuant to the provisions of Subtitle A of this Code, or complying with such provisions, in an amount greater than the valuation used in connection with such property for the purposes of the taxes imposed by Subtitle B, or that which is used subsequently in any disposition, sale, or exchange of such property, the prescriptive term for assessment and collection under the provisions of subsection (a) of Section 6010.05 of this Code shall begin to run at whichever date is later between:

**(1)**   The date of filing the income tax return, as such date is determined pursuant to the provisions of any applicable income tax law; or

**(2)**   The date on which such valuation was used to the benefit of the taxpayer or the taxes imposed by Subtitle B.

**(d)   Collection after Assessment.--**

**(1)**   When the assessment of any taxes imposed by this Code has been made within the prescriptive term properly applicable thereon, such taxes may be collected by means of demand for payment proceedings or court proceedings, insofar as these are filed:

**(A)**   Within seven (7) years following the date of tax assessment; or

**(B)**   Prior to the expiration of any term for collection agreed upon in writing before any seven (7)-year term between the Secretary and the taxpayer.

**(2)**   The term agreed upon pursuant to subparagraph (B) of paragraph (1) may be extended by successive written agreements made before the expiration of the term previously agreed upon.

**(3)**   Notwithstanding the provisions of Act No. 230 of July 23, 1974, as amended [3 L.P.R.A. §§ 283 et seq.], known as the "Puerto Rico Government Accounting Act," the Secretary, on his/her own initiative or by request of the taxpayers, shall proceed to eliminate from the files of the Department, and shall be barred to collect, any debts imposed under this Code or preceding laws of which ten (10) years have already elapsed from the date of their assessment. For purposes of determining the prescriptive term, any interruption thereof shall be deemed to be the result of collection efforts made by the Secretary by means of demand for payment proceedings or court proceedings.

**(e)   Profit from Sale or Exchange of Residence or Sole Proprietorship of Business.--**   As for the deficiency mentioned in Section 1034.04(m)(7) of this Code, such deficiency may be assessed at any time before the expiration of the term established therein.

**(f)   Involuntary Conversion.--**   As for the deficiency mentioned in Section 1034.04(f)(2)(C) or (D) of this Code, such deficiency may be assessed at any time before the expiration of the term established therein.

**(g)   Special Tax Imposed by Section 3701 of the Puerto Rico Internal Revenue Code of 1994.--**   The prescriptive terms for the assessment and collection of the special tax imposed by Section 3701 of Act No. 120 of October 31, 1994, as amended, known as the Puerto Rico Internal Revenue Code of 1994, shall be those provided in the Municipal Property Tax Act of 1991, Act No. 83 of August 30, 1991, as amended [21 L.P.R.A. §§ 5001 et seq.], known as the Municipal Property Tax Act of 1991, for the assessment and collection of real property taxes.

**Section 6010.07.-- Interruption of Prescriptive Term.--**

The prescriptive term established in Sections 6010.05 or 6010.06 of this Subtitle for the assessment and for filing of demand for payment proceedings or court proceedings for collection in connection with any deficiency, shall be interrupted after mailing the notice concerning the final determination established in Section 6010.02(a) of this Subtitle by the term during which the Secretary is barred from making the assessment and filing the demand for

payment proceedings or court proceedings (and in any case, when resorting to the Court of First Instance, until the decision of the Court becomes binding), and for the sixty (60) days that follow.

## CHAPTER 2 -- PAYMENTS IN EXCESS

## SUBCHAPTER A -- INCOME TAXES, ESTATE TAXES, AND GIFT TAXES

### Section 6021.01.-- Installment Paid in Excess.--

If the taxpayer has paid as taxes or as an installment thereof, an amount in excess of the amount determined as the correct amount for such taxes or installment, such payment in excess shall be credited against any unpaid taxes or installments, if any. If the amount already paid, whether payable in installments or not, exceeds the amount determined as the correct amount for the taxes, such payment in excess shall be credited or refunded as provided in this Subchapter.

### Section 6021.02.-- Refunds and Credits.--

(a) **Authorization.--**

(1) **Payment in Excess.--**   When a payment in excess of any taxes imposed by Subtitles A and B has been made, the amount of such payment in excess shall be credited, by request of the taxpayer or on the initiative of the Secretary, for which no request to that effect shall be necessary, against any taxes imposed by this Code or the installment thereof which is then enforceable, and any remainder shall be immediately refunded to the taxpayer.

(2) **Excessive Withholding.--**

(A)   When the amount of taxes withheld at the source in Sections 1062.01, 1062.02, 1062.03, 1062.04, 1062.05, 1062.08, and 1062.11 of Subtitle A exceeds the taxes imposed by such Subtitle against which taxes thus withheld should be credited in Sections 1053.01, 1053.02, 1053.04, 1053.05, 1053.07, 1053.08, and 1053.09, the amount of such excess shall be deemed to be a payment in excess, and shall be refunded to the taxpayer as soon as he/she files the corresponding tax return, notwithstanding the provisions of subsection (a)(1), subsection (j) of Section 9 of Act No. 230 of July 23, 1974, as amended, the Puerto Rico Government Accounting Act, or any other law of the Legislative Assembly.

(B)   In the event there are liquid and enforceable debts in connection with any taxes imposed by this Code, the Secretary may credit the taxpayer's payment in excess against any taxes owed or any enforceable installment thereof, and any remainder shall be immediately refunded to the taxpayer.

(C)   When, in the judgment of the Secretary, the budgetary financial condition of the Government and the Puerto Rico Treasury so require, he/she may postpone the refund of the remainder of the payment in excess until July 31 of the fiscal year following the date fixed for filing tax returns. In that case, refunds granted administratively under the provisions of this paragraph shall only accrue interest computed from July 31 until the date the refund check is issued.

(D)   Notwithstanding the foregoing provisions, in the event that the Child Support Administration orders the withholding of the refund pursuant to its Organic Act, the refund shall be credited, firstly, to the child support debt of the taxpayer.

(3) **Credits Against Estimated Taxes.--**   The Secretary is hereby authorized to promulgate regulations in order to provide that the amount determined by the taxpayer, or by the Secretary, as a payment in excess of taxes for a preceding taxable year be credited against estimated taxes for any subsequent taxable year.

**(4)  Presumption of Payment Date.--**  For purposes of this Section, any taxes that have been deducted and withheld at the source during any calendar year in Section 1062.01 shall be with regards to the receiver of the income, deemed to be paid by him/her not before the fifteenth (15th) day of the fourth month following the close of his/her taxable year in connection with which such taxes are allowed as credit in Section 1053.04. For purposes of this Section, any amount paid as estimated taxes for any taxable year shall be deemed to be paid not before the fifteenth (15th) day of the fourth month following the close of such taxable year.

**(b)  Limitations.--**

**(1)  Prescriptive Term.--**

**(A)**  Unless a credit or refund claim is filed by the taxpayer within four (4) years from the date on which the tax return or statement was filed by the taxpayer, or within three (3) years from the date on which taxes were paid, no credit or refund shall be granted or made after the expiration of that term which expires the latest.

**(B)**  If the taxpayer has not filed a tax return or statement, then no credit or refund shall be granted or made after three (3) years from the date on which such taxes were paid, unless the taxpayer files a claim for such credit or refund before the expiration of such term.

**(2)  Amount of Credit or Refund.--**  The amount of credit or refund shall not exceed the portion of taxes paid:

**(A)**  During the four (4) years that immediately precede the date the claim is filed, if a tax return or a statement was filed by the taxpayer, and the claim was filed within four (4) years from the date on which such tax return or statement was filed.

**(B)**  During the three (3) years that immediately precede the date the claim is filed, if a claim was filed and

**(i)**  No tax return or statement was filed; or

**(ii)**  If the claim was not filed within four (4) years counting from the date the taxpayer filed the tax return or statement.

**(C)**  During the four (4) years immediately preceding the date the credit or refund was granted, if no claim was filed and the credit or refund is granted within a term of four (4) years counting from the date the taxpayer filed the tax return or statement.

**(D)**  During the three (3) years immediately preceding the date the credit or refund was granted, if no claim was filed; and

**(i)**  No tax return or statement was filed; or

**(ii)**  No credit or refund is granted within a term of four (4) years counting from the date the taxpayer filed the tax return or statement.

**(3)  Exceptions in Waivers of Prescriptive Term.--**

**(A)**  If, within the term established in paragraph (1) for filing a credit or refund claim, both the Secretary and the taxpayer have agreed in writing under the provisions of Section 6010.06(b) to extend beyond the date established in Section 6010.02 the term within which the Secretary may make an assessment, then the term within which a credit or refund claim may be filed, or a credit or refund may be granted if no claim has been filed, shall be the term within which the Secretary may make an assessment pursuant to such agreement or any extension of such term, and six (6) months after, except that the provisions of paragraph (1) shall be applied to any claim filed, or to credit or refund granted or made, before the execution of such agreement.

**(B)**  The amount of the credit or refund shall not exceed the amount of the portions of the taxes paid;

**(i)** During the three (3) years immediately preceding the date the agreement is executed, or if such agreement was executed within four (4) years counting from the date the tax return was filed, during the four (4) years immediately preceding the date the agreement was executed;

**(ii)** After the execution of the agreement and before the expiration of the term within which the Secretary may make an assessment pursuant to such agreement or of any extension of said term; and

**(iii)** During six (6) months after the expiration of such term, except that the provisions of paragraph (2) shall apply to any claim filed, or to any credit or refund granted, before the execution of the agreement.

**(C)** If any portion of the taxes is paid after the expiration of the term within which the Secretary may make an assessment pursuant to such agreement, and if no credit or refund claim has been filed after the date such payment was made and before the six (6) months following the expiration of such term, then a credit or refund may be granted or made if a claim therefor was filed by the taxpayer within six (6) months counting from the date the payment was made, or if no claim was filed within such six (6)-month term following the date of payment, if the credit or refund was granted or made within such term, but the amount of the credit or refund shall not exceed the portion of the amount of taxes paid during the six (6) months immediately preceding the date the claim was filed, or if no claim was filed (and the credit or refund was granted after six (6) months counting from the expiration of the term within which the Secretary may make an assessment), during the six (6) months immediately preceding the date the credit or refund was granted.

**(4) Exception for Claims Regarding Tax Debts or for Certain Claims Pending Judicial Action.--** The prescriptive term established in paragraph (1) shall not apply to tax refunds which result from a reliquidation of an inheritance case that stems from a court ruling if such reliquidation is requested within one hundred twenty (120) days counted from the date of the court resolution. In these cases, the refund shall be issued without interest.

**(5) Tax Return Deemed as Filed on Due Date.--**

**(A)** For purposes of this Section, a tax return filed before the due date prescribed by law to file the same shall be deemed to be filed on said due date.

**(B)** For purposes of paragraphs (2) and (3) of this Section, and for purposes of subsection (d), a payment in advance of any portion of the tax which is made on the date on which such return was filed shall be deemed to be made on the due date prescribed by law for the payment of the tax or, if the taxpayer has opted for paying the tax in installments, on the day prescribed for the payment of the first installment.

**(C)** For purposes of this paragraph, the due date prescribed by law to file the return or to pay the tax shall be determined without considering any extensions granted to the taxpayer.

**(6) Special Prescriptive Term When Prescriptive Term for Assessments for the Preceding Year has not Expired.--** If the prescriptive term to assess any taxes imposed by Subtitle B in connection with any transfer has not expired because the prescriptive term to assess taxes imposed by said Subtitle concerning a transfer of a preceding year has not expired, and if the credit or refund claim can be attributed to a readjustment in taxes for such preceding year, in that case, in lieu of the four (4)-year prescriptive term established in paragraph (1), the term shall be that which expires upon expiration of the prescriptive term for making assessments. As for such claims, the amount of credit or refund may exceed the portion of the amount of taxes paid within the term provided in any applicable paragraphs, up to the amount of payment in excess that could be attributed to such readjustment.

**(7) Special Prescriptive Term for Bad Debts and Securities No Longer Valuable.--**

**(A)** If the credit or refund claim is related to a payment in excess due to:

**(i)**   The fact that the taxpayer may deduct a debt in Section 1033.06(a)(1), Section 1033.06(a)(4) or Section 1111.07(d), as a debt that became a bad debt, or in Section 1033.06(a)(2) of a loss of securities that are no longer valuable; or

**(ii)**   The effect that the ability to deduct a debt or a loss described in subparagraph (A) has on the application of a carryover to the taxpayer, in lieu of the four (4)-year prescriptive term established under paragraph (1), the term shall be seven (7) years counting from the date prescribed by law to file a tax return for the year in connection with which the claim was made.

**(B)**   As for claims described in this paragraph, the amount of credit or refund may exceed the portion of the amount of taxes paid within the term established under paragraph (2) or (3), whichever may apply, up to the limit of the amount of payment in excess that can be attributed to the ability to deduct items described in this paragraph.


**SUBCHAPTER B --**  GENERAL EXCISE TAXES


**Section 6022.01.-- Credits or Refunds of Taxes Paid in Excess or Unduly Paid.--**

**(a)**   When a taxpayer believes that he/she has paid or has been charged unduly or in excess of the owed amount of taxes imposed by Subtitle C, he/she may make a written request to the Secretary for a refund or credit on such amount within such term and pursuant to the proceedings established in this Subtitle. Act No. 232 of May 10, 1949, as amended, shall be used as a supplement in refund claim proceedings established under this Subtitle.

**(b)**   Any air or sea cargo carrier authorized to pay excise taxes in advance in representation of his/her clients and end receivers and who has posted a satisfactory bond with the Secretary to secure payment of the amount of excise taxes to that effect, may claim a credit for taxes paid on returned items by reason of undue payment or payment in excess against any taxes imposed by Subtitle C, by then enforceable from the carrier, and any remainder shall be immediately refunded to such carrier. The Secretary may arrange for such credits to be granted by adopting regulations to that effect.

**(c)**   The Secretary may, *motu proprio*, after having determined that the taxpayer was burdened on account of paying such taxes, grant to a taxpayer a refund or credit on any amount that, in his/her judgment, the taxpayer has paid unlawfully or unduly or in excess of the proper amount.

**(d)**   No refund or credit shall be granted unless the person shows to the satisfaction of the Secretary that he/she was financially burdened on account of paying such taxes. Furthermore, no refund shall be granted after four (4) years have elapsed from the date the taxes were paid, nor shall the amount thereof exceed the portion that has been paid during the four (4) years immediately preceding the date the refund was granted.

**(e)**   When the Secretary finds a request for a refund or credit to be in order, or when, *motu proprio*, he/she determines that the taxpayer has made an undue payment or a payment in excess, he/she shall investigate whether the taxpayer has any enforceable tax debts under this Code or the Puerto Rico Internal Revenue Code of 1994, and he/she shall apply, as credit on such debt, the amount that would correspond as refund. Any remainder that may result or the amount of taxes unduly paid or paid in excess when the taxpayer has no tax debts shall be immediately refunded to the taxpayer. If there is more than one enforceable tax debt, the Secretary shall apply the refund on the debts in strict order by their expiration date, beginning by the oldest debts and applying the amount as credit, firstly, on any interest, surcharges, and penalties.

**(f)**   In those cases in which the Secretary denies totally or partially a request for refund or credit, he/she shall so notify the taxpayer via certified mail. The provisions of Section 6025.01 of this Subtitle shall apply on denials by the Secretary, in whole or in part, of requests for refund or credit pursuant to this Section.

**(g)**   When the Secretary concludes that a refund has been made by mistake, he/she may reconsider the case and reliquidate the taxes, denying the refund and notifying the taxpayer that there is a deficiency in such manner and pursuant to such proceedings as established in Section 6010.02 of this Subtitle.

**Section 6022.02.-- Prescriptive Terms to Request Credits or Refunds for Taxes Paid on Any Exempt Item Under Subtitle C.--**

Any person who wishes to be granted a refund or a credit for all or part of the excise taxes paid on any exempt item under Subtitle C shall submit a request for credit or refund, together with any documents required by the Secretary, within one hundred eighty (180) days following the date the items are delivered to the exempt person. As for exemptions established in Section 3030.10 of Subtitle C, such term shall begin to run from the date on which the items causing the claim exit Puerto Rico. When the exempt person has previously made the payment, he/she shall submit his/her request for refund and any documents required by the Secretary within one hundred and eighty (180) days following the date he/she paid the taxes.

**SUBCHAPTER C --** TAXES ON ALCOHOLIC BEVERAGES

**Section 6023.01.-- Credits for Taxes on Spirits and Alcoholic Beverages for Tax-Exempt Purposes.--**

**(a)** The Secretary is hereby authorized to grant to wholesale manufacturers and dealers a credit for taxes paid by them on spirits and alcoholic beverages of which they shall dispose in the way and manner specified in Sections 5023.01 and 5023.13 of Subtitle E.

**(b)** In cases in which the Secretary totally or partially denies a request for credit, he/she shall notify so to the taxpayer via certified mail. The provisions of Section 6025.01 of this Subtitle shall apply to denials by the Secretary, whether total or partial, of requests for credit pursuant to this Section.

**Section 6023.02.-- Refund for Losses Sustained By Reason of Force Majeure, Vandalism or Willful Damage.--**

**(a)** Loss By Reason of *Force Majeure*, Vandalism or Willful Damage Sustained in Puerto Rico.--

The Secretary shall refund, pursuant to the laws in effect, without interest, to the distiller, rectifier, manufacturer, importer, or introduction dealer, those amounts paid in Puerto Rico by reason of the taxes imposed by Subtitle E by such distiller, rectifier, manufacturer, importer, or introduction dealer on distilled spirits, rectified spirits, wine, or beer lost or declared unfit for sale or unfit for human consumption by the appropriate Government authorities, due to hurricanes, earthquakes, fire, landslides, floods, or other *force majeure*, or as a result of vandalism or willful damage where there has not been any culpability or negligence by the taxpayer. No refund shall be given in losses sustained due to theft or other kinds of unlawful taking.

**(b)** Loss By Reason of *Force Majeure*, Vandalism, or Willful Damage Sustained in the United States.--

**(1)** The Secretary shall refund, pursuant to the laws in effect, without interest, an amount equal to the amount of taxes paid on distilled spirits, wine, rectified spirits, or beer manufactured in Puerto Rico and shipped to the United States that were lost, or declared unfit for human consumption, or seized in the United States by the appropriate state or Federal authorities due to hurricanes, earthquakes, fire, landslides, floods, or other *force majeure*, or as a result of vandalism, willful damage, where there has not been any culpability or negligence by the taxpayer. No refund shall be given in case of losses sustained as a result of theft or other kinds of unlawful taking.

**(2)** The losses described in this subsection must have been sustained anywhere in the United States, and the distilled spirits, wine, rectified products, or beer thus affected must be in their possession for sale on the date such loss was sustained.

**(c) Claims.--** The Secretary shall process any claims filed under this Section by the persons thus affected when the following requirements are met:

**(1)** The claim shall be filed within a term of six (6) months from the date the distilled spirits, wine, rectified spirits, or beer were declared unfit for sale or seized.

(2)  The claim shall be accompanied by a certification issued by the Secretary, or when the losses have been sustained in the United States, by the competent state or Federal authority, noting for the record that such distilled spirits, wine, rectified spirits, or beer were lost or declared unfit for sale, or unfit for human consumption, or seized in the United States or Puerto Rico.

(3)  The claimant shall furnish evidence to the satisfaction of the Secretary that proves that he/she has not received any indemnity by virtue of insurance or otherwise in connection with the taxes claimed on distilled spirits, wine, rectified spirits, or beer covered by the claim.

(4)  The claimant shall prove that he/she is entitled to the refund authorized under this Section by reason of having been financially burdened by such taxes.

(d)  Refunds authorized under this Section shall be made in favor of the claimant who had the beverages in his/her possession for sale on the date such damages were sustained. The minimum amount to be claimed for breakage or destruction as a result of vandalism or willful damage shall be two hundred and fifty dollars ($ 250).

(e)  In cases in which the Secretary totally or partially denies a request for refund, he/she shall notify so to the taxpayer via certified mail. The provisions of Section 6025.01 shall apply to total or partial denials by the Secretary concerning requests for credit or refund pursuant to this Section.


### Section 6023.03.-- Refund of Fees, Issuance, Revocation, and Suspension of License.--

(a)  The Secretary is hereby authorized to refund license fees unlawfully or unduly collected or collected in excess of the proper amount and to issue, revoke, or suspend licenses specified in Subtitle E.

(b)  The Secretary may revoke the license of any person who fails to meet any of the requirements of Subtitle E, who violates regulations or the norms established by the Secretary, as well as for any other reasonable and just cause after the interested party has been heard.

(c)  Likewise, the Secretary is hereby empowered to suspend, at his/her discretion and for the term he/she may fix, the operation of a licensed business when the infraction committed by the license holder is the first one, and furthermore, the infraction is of a nature that does not warrant permanent license revocation, after the interested party has been heard.

(d)  Against the action by the Secretary whereby he/she revokes or suspends a license, the holder of such license may resort, by filing a complaint with the Office of the Clerk of Adjudicative Proceedings of the Department, pursuant to the provisions of Act No. 170 of August 12, 1988, as amended [3 L.P.R.A. §§ 2101 et seq.], known as the "Uniform Administrative Procedure Act." Such complaint shall be filed within thirty (30) days following the date of notice of the resolution by the Secretary to that effect.


### Section 6023.04.-- Charge or Credit By Reason of Differences in Taxes.--

The Secretary shall be empowered to charge any distiller, rectifier, manufacturer, or dealer, or to grant them credit for any differences that may arise from investigations and liquidations in the manner that he/she may deem convenient and appropriate.


### SUBCHAPTER D -- LICENSE FEES


### Section 6024.01.-- Refund of License Fees.--

The Secretary is hereby authorized to refund license fees provided in Subtitle C which have been unlawfully or unduly charged, or charged in excess of the proper amount, pursuant to the provisions of Act No. 231 and 232 of May 10, 1949, as amended. The provisions of Section 6025.01 shall apply to total or partial denials by the Secretary of requests for refund of license fees unlawfully or unduly charged, or charged in excess of the proper amount.

**SUBCHAPTER E --**  GENERAL RULES APPLICABLE TO PAYMENTS IN EXCESS

**Section 6025.01.-- Lawsuits By Reason of Refund.--**

**(a)  General Rule.--**

**(1)**  If a credit or refund claim in connection with any taxes imposed by this Code which was filed by a taxpayer is totally or partially denied by the Secretary, he/she shall notify so to the taxpayer via certified mail, and the taxpayer may resort against such denial before the Court of First Instance by filing a lawsuit in the manner provided by law within thirty (30) days following the date in which such notice was mailed.

**(2)**  Failure to file a lawsuit within the term provided herein shall divest the Court of First Instance of competence to review the matter.

**(3)**  Notwithstanding the provisions of Act No. 170 of August 12, 1988, as amended [3 L.P.R.A. §§ 2101 et seq.], or any other law which replaces or complements the same, the taxpayer affected by a total or partial denial of a credit or refund in connection with any taxes imposed by this Code shall have no right to request an informal hearing or any other administrative procedure before the Secretary, being only able to seek remedy by resorting to the Court of First Instance within the term provided herein.

**(4)**  Against any judgment pronounced by the Court of First Instance granting or refusing to grant a credit or refund requested pursuant to this subsection, the taxpayer or the Secretary, as the case may be, may resort to the Court of Appeals by filing a writ of appeal with the Office of the Clerk of such Court within thirty (30) days following the entry into records of a copy of the notice concerning the judgment pronounced by the Court of First Instance.

**(5)**  Against the judgment pronounced by the Court of Appeals granting or refusing to grant a credit or refund requested pursuant to this subsection, the taxpayer or the Secretary, as the case may be, may resort to the Supreme Court by filing a writ of certiorari or appeal with the Office of the Clerk of such Court within thirty (30) days following the entry into records of a copy of the notice concerning the judgment pronounced by the Court of Appeals.

**(b)  Limitation.--**  The Court of First Instance shall not consider any recourse whatsoever to claim a credit or refund in connection with any taxes imposed by this Code unless there is a denial by the Secretary regarding such credit or refund, notified as provided in subsection (a).

**Section 6025.02.-- Payment in Excess Determined by the Court of Appeals.--**

**(a)**  If the Court of Appeals determines that no deficiency exists and determines, further, that the taxpayer has made a payment in excess of taxes regarding the taxable year in connection with which the deficiency was determined by the Secretary, or if the Court should determine that a deficiency exists, but that the taxpayer has made a payment in excess of taxes regarding such taxable year, the Court of Appeals shall be empowered to determine the amount of such payment in excess, and such amount shall be, when the decision of the Court of Appeals becomes binding, credited or refunded to the taxpayer. No such credit or refund shall be made regarding any portion of taxes unless the Court of Appeals determines in its decision:

**(1)**  That such portion was paid:

**(A)**  Within three (3) years before the date on which the claim is filed, of the mailing of the notice concerning the deficiency, or the execution of an agreement between the Secretary and the taxpayer pursuant to Section 6010.06 of this Subtitle to extend beyond the term established in Section 6010.05 of this Subtitle the term within which the Secretary may assess taxes, whichever is earlier; or

**(B)**  Within four (4) years before the date on which the claim is filed, of the mailing of the notice concerning the deficiency, or the execution of an agreement, whichever is earlier, if the claim was

filed, the notice concerning the deficiency was mailed, or the agreement was executed, within four (4) years counting from the date on which the taxpayer filed the tax return; or

**(C)**  After executing such agreement and before the expiration of the term within which the Secretary may make an assessment pursuant to such agreement or to any extension to such term; or

**(D)**  After mailing the notice concerning the deficiency; or

**(2)**  If such portion was not paid within the term described in paragraph (1), but the notice concerning the deficiency was mailed within a term of seven (7) years counting from the date prescribed for filing the tax return, or a claim such as those specified in subsection (b)(7) of Section 6021.02, that such portion does not exceed the amount of payment in excess that may be attributed to the ability to deduct items described in subsection (b)(7) of Section 6021.02.

### Section 6025.03.-- Interest on Payments in Excess.--

**(a)**  Credits or refunds granted administratively or judicially under this Subtitle shall earn interest at an annual rate of six percent (6%), computed from the date of payment of the taxes related to the credit or refund and until a date that precedes the date of the refund check by not more than thirty (30) days or, in the case of a credit, until the date on which the Secretary notifies to the taxpayer that the credit has been granted.

**(b)**  Refunds granted in connection with taxes or levies paid correctly in transactions made with or by tax-exempt persons shall not earn interest.

**(c)**  The amount of such credits or refunds with interest thereon, and the costs, if any, shall be credited or paid by the Secretary, chargeable to funds to which credit the product of such taxes had been originally covered into, and in the event of insufficiency in one fund, or when it impracticable to prorate such charge against various funds, chargeable to the General Fund of the Public Treasury.

### CHAPTER 3 --  INTEREST, PENALTIES, AND, ADDITIONS TO TAXES

### Section 6030.01.-- Interest on Deficiencies.--

Interest on the amount determined as a deficiency shall be assessed simultaneously with the deficiency, shall be paid upon notice and demand of the Secretary, and shall be collected as part of the taxes, at an annual rate of ten percent (10%), from the date prescribed for payment of taxes until the date the deficiency is assessed or, in case of waivers in Section 6010.02(d) of this Subtitle, until the thirtieth (30th) day following the date on which such waiver was filed or until the date on which the deficiency is assessed, whichever is earlier. If any portion of the deficiency thus assessed is not to be collected by reason of a previous payment of taxes, whether in whole or in part, the proper adjustment shall be made concerning the interest on such portion.

### Section 6030.02.-- Additions to Taxes Due to Nonpayment.--

**(a)  Taxes Determined by Taxpayer.--**

**(1)  General Rule.--**  When the amount determined by the taxpayer to be the taxes imposed by any Subtitle of this Code, or any installment thereof, or any portion of such amount or installment, is not paid not later than the date prescribed for payment, interest on the unpaid amount shall be charged as part of such taxes, at an annual rate of ten percent (10%) counting from the date prescribed for such payment, until such taxes are paid.

**(2)  If a Time Extension is Granted.--**  When a time extension has been granted in connection with the amount thus determined to be the taxes by the taxpayer, or any installment thereof, and the amount for which the date of payment has been extended, and interest thereon are determined in Section 6030.04

of this Subtitle are not fully paid before the expiration of the term of the time extension, then, in lieu of the interest provided in paragraph (1) of this subsection, interest shall be charged at an annual rate of ten percent (10%) on the unpaid amount, from the date of expiration of the time extension until the same is paid.

**(b)  Deficiency.--**   When a deficiency or any interest or additional amounts assessed in connection therewith, or any addition to taxes, are not fully paid within ten (10) days following the date of notice and demand by the Secretary, interest on the unpaid amount shall be charged as part of the taxes, at an annual rate of ten percent (10%), from the date of such notice and demand until the date the same is paid.

**(c)  Additional Surcharges.--**

**(1)**   In all cases in which the addition of interest is in order pursuant to subsection (a) or (b), the following surcharges shall also be charged as part of the taxes and in the same manner in which interest is charged, as follows:

**(A)**   For tardiness in payment of thirty (30) days or less, there shall be no surcharge;

**(B)**   For tardiness in payment over thirty (30) days, but which does not exceed sixty (60) days, five percent (5%) of the unpaid amount;

**(C)**   For tardiness in payment over sixty (60) days, ten percent (10%) of the unpaid amount.

**(2)**   Notwithstanding the provisions of paragraph (1) of this subsection, the Secretary shall be empowered to reduce, commute, or exempt any taxpayer from payment of any surcharge on any unpaid amount, in any case in which the addition of interest is in order under subsections (a) or (b) of this Section when, at the judgment of this official, the cases in question so warrant or such action would best serve the public interest or when such official deems that such reduction, commutation, or exemption is necessary or convenient to meet the ends or purposes of this Code or any regulation thereunder. This power shall be in effect until June 30, 2012, although the same may be extended for one (1) additional year by the Legislative Assembly by request of the Secretary of the Treasury.

**(3)**   This subsection shall not apply in cases in which a time extension has been granted for payment of taxes and the terms thereof are met.

**(d)  Surcharges for Tardy Payment of License Fees.--**

**(1)  In General.--**

**(A)**   Any person who has not obtained a license under the provisions of Subtitle E not later than the date he/she started business operations or first engaged in his/her trade subject to such license, shall pay, upon obtaining his/her license, in addition to such fees and as a surcharge, fifty percent (50%) of the annual amount of the corresponding license fees.

**(B)**   Any license holder who has not paid the annual amount within thirty (30) days following the date fixed therefor in Subtitle D, shall pay, when renewing his/her license, in addition to such fees, a surcharge equal to thirty percent (30%) of the amount owed.

**(C)**   As for repeat offenders, the surcharge shall be one hundred percent (100%) of the amount owed. The Secretary, at his/her discretion, may, in the case of repeat offenders, file the appropriate proceedings in law to have such licenses revoked.

**(2)**   Notwithstanding the provisions of paragraph (1) of subsection (d) of this Section, the Secretary shall be empowered to reduce, commute, or exempt any taxpayer from payment of any surcharge imposed under paragraph (1) of subsection (d) when, at the judgment of such official, the cases in question so warrant or such action would best serve the public interest or when such official deems that such reduction, commutation, or exemption is necessary or convenient to meet the ends or purposes of this Code or any regulation thereunder. This power shall be in effect until June 30, 2012, although the same may be extended for one (1) additional year by the Legislative Assembly by request of the Secretary of the Treasury.

**Section 6030.03.-- Additions to Taxes in Cases of Deficiency.--**

 **(a)  Substantial Undervaluation or Negligence.--**

  **(1)**  If any portion of any deficiency is the result of:

   **(A)**  Negligence or intentional disregard for rules and regulations;

   **(B)**  A substantial undervaluation of income taxes;

   **(C)**  A statement of a valuation of a property that is substantially incorrect;

   **(C)**  A substantial overvaluation of obligations for contributions made under Section 1033.09 of Subtitle A; or

   **(D)**  The denial of tax benefits claimed by reason of a absence of financial substance in the transaction, but with no intention to defraud, twenty percent (20%) of the amount of the deficiency (in addition to such deficiency) shall be assessed, charged, and paid in the same manner as a deficiency, except that the provisions of Section 6030.01 of this Subtitle related to interest on deficiencies shall not apply.

  **(2)  Negligence.--**  For purposes of this subsection, the term "negligence" includes failure to make a reasonable effort to comply with the provisions of this Code, and the term "disregard" includes carelessness, recklessness, or willful noncompliance.

  **(3)  Substantial Undervaluation of Income Taxes.--**

   **(A)  Substantial Undervaluation.--In General.--**  For purposes of this subsection, there is a substantial undervaluation of income taxes for any taxable year if the amount of the undervaluation for such taxable year exceeds, whichever is the greater amount:

    **(i)**  Ten percent (10%) of the taxes required to be reported in the tax return for the taxable year; or

    **(ii)**  Five thousand dollars ($ 5,000).

   **(B)  Special Rule for Corporations.--**  As for corporations other than corporations of individuals, there shall be a substantial undervaluation of income taxes for any taxable year in which the amount of the undervaluation for such taxable year exceeds, whichever is the less amount:

    **(i)**  Ten percent (10%) of the taxes required to appear in the tax return for such taxable year; or

    **(ii)**  One million dollars ($ 1,000,000).

   **(C)  Undervaluation.--In General.--**  For purposes of this paragraph, the term "undervaluation" means the excess of:

    **(i)**  The amount of taxes required to be included in the tax return for such taxable year, over

    **(ii)**  The amount of taxes imposed included in the tax return, minus any reduction (within the meaning of Section 6010.01(c)(2)).

  **(4)  Substantially Incorrect Valuation of any Property.--In General.--**  For purposes of this subsection, there is a substantially incorrect valuation of any property if the value of such property (or its adjusted base) as appears in a tax return under this Code is one hundred and fifty percent (150%) or more of the amount determined to be the correct amount for such valuation or adjusted base (as the case may be). No penalty shall be imposed on account of subsection (a)(1)(C) of this Section, unless the portion of the insufficiency for the taxable year which may be attributed to substantially incorrect statements of valuation exceeds five thousand dollars ($ 5,000) (ten thousand dollars ($ 10,000) for corporations other than corporations of individuals).

  **(5)  Substantial Overvaluation of Obligations for Contributions in Section 1033.09 of Subtitle A.--**  For purposes of this subsection, there is a substantial overvaluation of obligations for contributions in

Section 1033.09 of Subtitle A if the actuarial determination of the obligations taken into account for the purpose of computing the deduction is 200 percent or more over the amount determined to be the correct amount of such obligations. No penalty shall be imposed on account of subsection (a)(1)(D), unless the portion of the insufficiency for the taxable year which may be attributed to substantial overvaluations of pension obligations exceeds one thousand dollars ($ 1,000).

**(6)   Increase of Penalty for Grossly Incorrect Valuation Statements.--**

**(A)**   To the extent that a portion of the insufficiency to which this Section applies may be attributed to one or more grossly incorrect valuation statements, subsection (a)(1) shall apply with regards to such portion, except that the phrase "forty percent (40%)" shall replace the phrase "twenty percent (20%)" in such subsection.

**(B)**   The term "grossly incorrect valuation statements" means:

**(i)**   Any statement of a substantially incorrect valuation of a property as determined under paragraph (3), except that the phrase "two hundred percent (200%)" shall replace the phrase "one hundred fifty percent (150%)" in such paragraph.

**(ii)**   Any substantial overvaluation of the obligations for contributions in Section 1033.09 of this Subtitle of a pension, as determined under paragraph (5), except that the phrase "four hundred percent (400%)" shall replace the phrase "two hundred percent (200%)" in such paragraph.

**(b)   Fraud.--**   If any portion of any deficiency is the result of fraud with the intent to evade taxes, then one hundred percent (100%) of the total sum of the deficiency (in addition to such deficiency) shall be thus assessed, charged, and paid, regardless of any criminal action that may be filed against the taxpayer for such actions.

**(c)   Valuation of Property Included in Decedent's Estate as a Gift for Less than Its Value.--**   If all or part of any deficiency determined under Subtitle B arose because the taxpayer included and valued in his/her tax return any property included in the gross decedent's estate, or is the object of any property included in the gross decedent's estate, or is the object of any gift under seventy percent (70%) of its value, an amount not to exceed double the part of such deficiency attributable to the digression from the value of such property in excess of thirty percent (30%) shall be imposed and collected in addition to the deficiency.


**Section 6030.04.-- Time Extension to Pay Declared Taxes.--**

**(a)**   If the term to pay the amount determined as taxes by the taxpayer, or any installment thereof, is extended under the authority of Section 1061.17(c), Sections 2051.08, 2051.09 or 3060.11 of this Code, interest thereon shall be charged as part of such amount, at an annual rate of ten percent (10%), starting from the date in which the payment should have been made if the time extension had not been granted, until the expiration of the term of the time extension.

**(b)**   The payment of interest under this Section shall not apply when time extensions have been granted in Section 1061.17(c) to taxpayers who, during any armed conflict, are called to duty and transferred to serve in the military outside Puerto Rico and who meet the terms established in such time extension.


**Section 6030.05.-- Time Extension to Pay Deficiency.--**

**(a)**   If the term to pay any part of a deficiency is extended, interest on such part of the deficiency for which the date of payment has been thus extended shall be charged as part of the taxes at an annual rate of ten percent (10%), for the term of the time extension, and no other interest shall be charged on such part of the deficiency during such term.

**(b)**   If the part of the deficiency for which the date of payment has been thus extended is not paid pursuant to the terms of the time extension, interest on such unpaid amount shall be charged as part of the taxes, at an annual rate of ten percent (10%) for the term comprised between the date fixed by the terms of the time

extension for such payment and the date the same is paid, and no other interest shall be charged on such unpaid amount during such term.

### Section 6030.06.-- Interest and Surcharges in Jeopardy Assessments.--

**(a) Interest and Surcharges.--**

**(1)**  As for amounts collected in Section 6010.03(f) of this Subtitle, interest shall be charged together with such amount and as part of the taxes, at an annual rate of ten percent (10%) on such amount, from the date of notice concerning the assessment in Section 6010.03(a) of this Subtitle to the date of notice and demand in Section 6010.03(f) of this Subtitle.

**(2)**  If the amount included in the notice and demand by the Secretary in Section 6010.03(f) of this Subtitle is not fully paid within ten (10) days following the date of such notice and demand, then interest on the unpaid amount shall be charged as part of the taxes, at an annual rate of ten percent (10%), from the date of such notice and demand to the date the same is paid.

**(3)**  Except in cases in which, in Section 6010.03(d) of this Subtitle, a stay in the collection of the deficiency has been obtained, the following surcharges shall also be charged from the date of notice and demand by the Secretary:

**(A)**  For tardiness in payment of thirty (30) days or less, there shall be no surcharge;

**(B)**  For tardiness in payment over thirty (30) days, but not to exceed sixty (60) days, five percent (5%) of the unpaid amount; or

**(C)**  For tardiness in payment over sixty (60) days, ten percent (10%) of the unpaid amount.

**(b)**  Notwithstanding the provisions of paragraphs (1), (2), and (3) of subsection (a) of this Section, the Secretary shall be empowered to reduce, commute, or exempt any taxpayer from payment of any surcharge imposed under paragraphs (1), (2), and (3) of subsection (a) of this Section when, at the judgment of such official, the cases in question so warrant or such action would best serve the public interest, or when such official deems such reduction, commutation, or exemption to be necessary or convenient to meet the ends and purposes of this Code or any regulation thereunder. This power shall be in effect until June 30, 2012, although the same may be extended for one (1) additional year by the Legislative Assembly by request of the Secretary of the Treasury.

### Section 6030.07.-- Exemption from Surcharges and Interest on Taxes Imposed under Subtitle C or D.--

**(a)**  The Secretary may, at his/her judgment and discretion, release a taxpayer from surcharges and interest established in Section 6030.02 of this Subtitle as pertains to taxes imposed under Subtitle C or D, and he/she may fix a new date of payment under the following circumstances:

**(1)**  When, within six (6) months of the effectiveness of a new provision of law or a regulation, a taxpayer submits a written consultation to the Secretary concerning a construction of such legal or regulatory provision due to the complexity of the matter involved, and the Secretary takes over ninety (90) days from the date of receipt of such consultation at his/her office to issue his/her answer.

**(2)**  When dealing with new items or taxable items that are new in the market of Puerto Rico, which create a reasonable doubt in terms of their taxable status, classification, or extent pursuant to the laws in effect, insofar as the taxpayer submits to the Secretary the necessary information, not later than ten (10) days before the taxable event, to determine its taxable status, if any.

**(3)**  When the taxpayer files a well grounded, written allegation concerning his/her status as exempt from paying taxes, and the Secretary, by reason of the legal difficulty or complexity, takes more than ninety (90) days from the date of receipt of such consultation in his/her office to issue his/her answer.

**(4)**  When the Secretary clearly and definitely leads a taxpayer to error when the taxpayer submits a written consultation concerning a contentious issue that until that time has not been clarified by any

regulations or promulgation by the Secretary. In such case, it shall be the duty of the taxpayer thus affected to prove beyond any reasonable doubt that he/she acted diligently when consulting the Secretary.

**Section 6030.08.-- Exemption from Penalties or Additions to Taxes Attributable to Erroneous Written Notice Sent by the Secretary.--**

**(a) In General.--**  The Secretary shall exempt any portion of any penalty or addition to taxes, license fees, or levies imposed under Subtitles A, B, C, D, or E of the Code that may be attributable to faulty information or advice furnished in writing to the taxpayer by an officer or employee of the Department acting in such capacity as officer or employee.

**(b) Limitations.--**  Subsection (a) shall apply only if:

**(1)**  The taxpayer followed the written advice he/she received, and such advice was the answer to a specific written request made by the taxpayer; and

**(2)**  The portion of the penalty or addition to taxes was not imposed as a result of the failure of the taxpayer to furnish adequate or correct information.

**(c) Regulations.--**  The Secretary shall establish by regulation the necessary rules to implement the provisions of this Section.

**Section 6030.09.-- Bankruptcies and Receiverships.--**

**(a)**  If the taxes owed, of which payment is demanded after completing bankruptcy or receivership proceedings, as provided in Section 6010.04 of this Subtitle, are not fully paid within ten (10) days from the date of notice and demand by the Secretary, interest on such amount as part of the unpaid amount of the claim shall be accrued and charged, at an annual rate of ten percent (10%), from the date of notice and requirement to the date the same is paid.

**(b)** Furthermore, the following surcharges shall be charged from the date of such notice and demand:

**(1)** By reason of tardiness in payment of thirty (30) days or less, no surcharge shall be charged;

**(2)**  By reason of tardiness in payment over thirty (30) days, but not to exceed sixty (60) days, five percent (5%) of the unpaid amount; or

**(3)** By reason of tardiness in payment over sixty (60) days, ten percent (10%) of the unpaid amount.

**(c)** Notwithstanding the provisions of subsection (b) of this Section, the Secretary shall be empowered to reduce, commute, or exempt any taxpayer from paying any surcharge imposed under subsection (b) of this Section when, at the judgment of such official, the cases in question so warrant, or such action would best serve the public interest, or when such official deems such reduction, commutation, or exemption to be necessary or convenient to meet the ends or purposes of this Code or any regulation thereunder. This power shall be in effect until June 30, 2012, although the same may be extended for one (1) additional year by the Legislative Assembly by request of the Secretary of the Treasury.

**Section 6030.10.-- Penalties.--**

**(a) In General.--**  Any person who, pursuant to any Subtitle of this Code, is required to pay any taxes or estimated taxes to withhold at the source and to pay any taxes, to file any tax return or statement, to keep any attesting or other documents, or to furnish any information for the purposes of computation, assessment, or collection of any taxes or levies, and willfully fails to meet such requirement shall be subject to the penalties and additions to taxes described in this Subchapter as established further. Except as otherwise provided in this Code, penalties shall be imposed, assessed, and collected in the same manner as taxes.

2011 PR H.B. 3070

**(b)  Penalties for Misdemeanors.--**  Except as otherwise expressly provided in this Code, in all cases of conviction for a misdemeanor established by this Code, the person thus convicted shall be punished by a fine not greater than five thousand dollars ($ 5,000), or by penalty of imprisonment for a maximum term of ninety (90) days, or both penalties, at the discretion of the Court, plus costs arising from proceedings.

**(c)  Penalties for Felonies.--**

**(1)**  Except as otherwise expressly provided in this Code, in all cases of conviction for a third-degree felony established by this Code, the person thus convicted shall be punished by imprisonment, for which the term shall range between three (3) years and one (1) day and eight (8) years. The Court, at its discretion, may impose the fixed imprisonment penalty established or the penalty of a fine not to exceed twenty thousand dollars ($ 20,000), or both penalties, plus costs arising from proceedings.

**(2)**  Except as otherwise expressly provided in this Code, in all cases of conviction for a fourth-degree felony established by this Code, the person thus convicted shall be punished by imprisonment, for which the term shall range between six (6) months and one (1) day and three (3) years. The Court, at its discretion, may impose the fixed imprisonment penalty established or the penalty of a fine not to exceed ten thousand dollars ($ 10,000), or both penalties, plus costs arising from proceedings.

**(d)  Penalty for Failure to Keep Attesting Documents or Submit Information.--**  Any person that, pursuant to any Subtitle of this Code or to any regulations promulgated by authority of law, is required to keep any records or furnish any information for the purposes of computing, assessing, or collecting any estimated or other taxes imposed by any Subtitle of this Code, who willfully fails to keep such records or furnish such information, within the term or terms fixed under any Subtitle of this Code or under regulations, in addition to other penalties imposed by this Code, shall be guilty of a misdemeanor.

**(e)  Criminal Liability of Juridical Persons.--**

**(1)**  Juridical persons and unincorporated partnerships or associations shall be criminally liable when their members, directors, agents, or representatives commit criminal acts while fulfilling their functions or agreements, or while committing acts that can be attributable to such juridical persons and the unincorporated partnerships or associations which they represent.

**(2)**  The liability established herein does not preclude the individual liability that members, directors, agents, or representatives of the juridical persons or unincorporated partnerships or associations that partake in criminal acts may have.

**(3)**  In addition to the penalties established in this Code, juridical persons that incur the offenses classified herein shall be punishable by the penalties established in Sections 83 through 90 of the Puerto Rico Penal Code, both inclusive, to the extent that these are not incompatible with the penalties provided in this Code.

**Section 6030.11.-- Penalty for Failure to File Tax Returns or Statements.--**

**(a)**  Any person who fails to file any tax return or statement required under any Subtitle of this Code within the term provided in the corresponding Subtitle of this Code or provided by the Secretary pursuant to this Code, unless he/she proves that such omission arises from a reasonable cause and not from willful carelessness, in addition to any other penalties imposed by the Code, shall have five percent (5%) of his/her taxes added to his/her payable amount, if the omission is not for more than thirty (30) days, and an additional ten percent (10%) for any additional period or fraction of an additional period of thirty (30) days while the omission persists, not to exceed twenty-five percent (25%) in total. The amount thus added to any taxes shall be collected at the same time and in the same manner and as part of the taxes, unless such taxes have been paid before the omission was discovered, in which case, the amount thus added shall be collected in the same manner as the taxes.

**(b)  Imposition of Penalty on Net Taxes Owed.--**  For purposes of subsection (a), the taxes determined in the tax return shall be reduced by any amount of such taxes which has been paid not later than the date

established for the payment of taxes and by the amount of any credit against taxes which has been claimed or could be claimed in the tax return.

**(c)**   Any person who, by virtue of any Subtitle of this Code, is required to file a tax return, statement, certification, or report and who willfully fails to file such tax return, statement, certification, or report within the term or terms fixed by the appropriate Subtitle or by regulations, in addition to other penalties established by this Code, shall be guilty of a misdemeanor.

**(d)**   As for any person who willfully fails to file such tax return, statement, certification, or report (within the terms imposed by the appropriate Subtitle or by regulations) with the intent to evade or defeat any taxes imposed by this Code, in addition to other penalties established by this Code, shall be guilty of a third-degree felony.

### Section 6030.12.-- Offense for Failure to Raise and Deliver Payment of Taxes or for Attempting to Defeat or Evade Taxes.--

In addition to any other penalties established by this Code, shall be guilty of a third-degree felony:

**(a)**   Any chief operations officer, president, chief financial officer, chief accounting officer or comptroller, as well as any officer holding a similar office in an entity or of a person (as such term is defined in Section 6030.19 of this Code) whose responsibility, duty, function, or obligation within such entity or person is to raise, account for, and deliver payment any taxes or levies established under any Subtitle of this Code, who willfully fails to raise or account for and faithfully deliver payment of such taxes, in the manner and under the terms established by any Subtitle of this Code; and

**(b)**   Any person who willfully attempts in any way to evade or defeat any taxes imposed by any Subtitle of this Code or the payment thereof.

### Section 6030.13.-- For Disclosing Information.--

**(a) Commonwealth Employees and Other Persons.--**

**(1)**   It shall be unlawful for any collector, deputy collector, agent, notary public or other official or employee of the Government of Puerto Rico, to disclose or make known in any manner not provided by this Code, to any person, the amount or source of income, gross sales, profits, losses, expenditures, taxes, excise taxes, sales and use taxes, decedent's estates, gifts, or any detail thereof which are exposed or revealed in any tax return or statement established by this Code or who allows any tax return or statement, or any copy thereof, or any book that contains any summary or details thereof, to be seen or examined by any person, except as provided in this Subtitle.

**(2)**   It shall be unlawful for any person to print or publish in any manner not provided in this Subtitle any tax return or statement or any part thereof or the source of income, gross sales, profits, losses, expenditures, or taxable prices that appear in any tax return or in any statement.

**(3)**   Any violation of the preceding provisions shall constitute a fourth-degree felony. If the offender is an official or employee of the Government of Puerto Rico, he/she shall also be removed from office or severed from his/her job.

**(b) Stockholders.--**   Any stockholder or partner who, pursuant to the provisions of Section 6051.13 of this Code, is allowed to examine the tax return of any corporation or partnership, respectively, and who makes known in any manner not established in this Code the amount or the source of income, profits, losses, expenditures, or any detail thereof exposed or revealed in such tax return, shall be guilty of a misdemeanor.

### Section 6030.14.-- For Removal of Property or Item of Taxpayer.--

**(a)**   The additions to taxes when the taxpayer suddenly departs from Puerto Rico or when he/she removes or conceals his/her property so as to hinder the collection of taxes shall be those provided in Section

6041.06 of this Subtitle for violating Section 1062.12. These additions shall be imposed jointly with any other additions, interest, penalties, or fines imposed by this Code.

**(b)** Any person who willfully attempts to evade or defeat any taxes imposed by any Subtitle of this Code, or the payment thereof by removing or concealing any property, shall be guilty of a third-degree felony.

## Section 6030.15.-- For Violations in Connection with Final Agreements.--

**(a)** Any person shall be guilty of a third-degree felony when, in connection with any final agreement or any offer to execute any final agreement, he/she willfully:

**(1) Concealment of Property .--**  Conceals from any official or employee of the Government of Puerto Rico any property belonging to the taxpayer or any other person who is liable for such taxes; or

**(2) Suppression, Falsification, or Destruction of Evidence.--**  Receives, destroys, mutilates, or falsifies any book, attesting or other document, or makes, under oath, any false statement in connection with the estate or financial status of the taxpayer or any other person who is liable for such taxes.

## Section 6030.16.-- Penalty for Filing Fraudulent Tax Returns, Statements, Affidavits, and Claims.--

**(a) Fraudulent Documents.--**  Any person who willfully submits or furnishes the Secretary with any tax return, statement, affidavit, certification, report, claim, or other document or information knowing that the same is false or fraudulent shall be guilty of a third-degree felony.

**(b) Assistance in Preparation or Submittal.--**  Any person who willfully aids or assists, or seeks, advises, or instigates the preparation or submittal under this Code, or in connection with any matter arising under this Code, of a false or fraudulent tax return, statement, affidavit, certification, report, claim, or document (regardless of whether such falsehood or fraud has been perpetrated with the full knowledge or consent of the person authorized or required to submit such tax return, statement, affidavit, certification, report, claim, or document), shall be guilty of a third-degree felony.

**(c) Authentication of Tax Return, Statement, or Other Document; Penalty of Perjury.--**

**(1) Penalties.--**  Any person who willfully makes or signs any tax return, statement, certification, report, or other document that contains or is authenticated by means of a written statement to the effect that it is being filed under penalty of perjury, which tax return, statement, certification, report, or document said person believes not to be true and correct in connection with any pertinent facts shall be guilty of a third-degree felony.

**(2) Signature Presumed to be Authentic.--**  The fact that the name of an individual appears in signature in a tax return, statement, certification, report, or other document filed shall constitute prima facie evidence, for all purposes, that such individual did sign said tax return, statement, certification, report, or other document.

**(3) Statement In Lieu of Oath.--**  The Secretary, under such regulations as promulgated by him/her, may demand that any tax return, statement, or other document that is to be filed under any provision of this Code contain or be authenticated by means of a written statement to the effect that such tax return, statement, certification, report, or other document has been filed under penalties of perjury, and such statement shall stand in lieu of any oath otherwise required.

## Section 6030.17.-- Misrepresentation.--

Any person who misrepresents him/herself as an Internal Revenue Agent, official, or employee of the Department and who, in such capacity, attempts to collect or does collect taxes, levies, or license fees under this Code, or who attempts to obtain or does obtain information which taxpayers are required to furnish to duly authorized Internal Revenue Agents or fiscal officials only, shall be guilty of a third-degree felony.

**Section 6030.18.-- Unlawful Acts by Officials or Employees.--**

**(a)** Any official or employee of the Department of the Treasury shall be guilty of a third-degree felony when, acting under authority conferred by any Subtitle of this Code:

**(1)** Perpetrates the crime of extortion; or

**(2)** Conspires or colludes with any other person to defraud the Government of Puerto Rico; or

**(3)** Willfully provides any person with the opportunity to defraud the Government of Puerto Rico; or

**(4)** Engages or fails to engage in any act with the intent to allow any other person to defraud the Government of Puerto Rico; or

**(5)** Knowingly prepares or signs any tax return, statement, false entry in any book, or knowingly prepares or signs any false tax return or certificate, under any circumstance in which under any Subtitle of this Code and/or regulations, he/she is placed required to make such entry or prepare such tax return, statement, or certificate; or

**(6)** Being aware or informed of the violation of any Subtitle of this Code by any person, or with fraud perpetrated by any person against the Government of Puerto Rico under this Code, fails to communicate in writing to his/her immediate supervisor such knowledge or information which he/she has regarding such violation or fraud; or

**(7)** Directly or indirectly accepts or collects as payment, gift, or otherwise, any amount of money or other thing of value for the transaction, adjustment, or correction of any charge or claim for any violation or alleged violation of any Subtitle of this Code.

**Section 6030.19.-- Definition of Person.--**

For purposes of this Subtitle, and except when otherwise provided, the term "person" means and includes any individual, partnership, trust, corporation, association, or any official, agent, or employee of a corporation, or a partner, agent, or employee of a partnership or trust on account of which such individual, official, agent, employee, partner, or trustee is required to engage in the act which constitutes a violation. Said term also includes any official, agent, or employee of a department, agency, instrumentality, public corporation, or municipality of the Government of Puerto Rico.

**Section 6030.20.-- Criminal Proceedings.--**

The Court of First Instance is hereby vested with exclusive competence to conduct proceedings in connection with crimes established under any Subtitle of this Code.

**Section 6030.21.-- Offense for General Violations of this Code.--**

Any person who fails to comply with any provision of any Subtitle of the Code or the regulations promulgated thereunder, or of any other law or regulation of Puerto Rico on the matter of internal revenue taxes, or who knowingly cooperates, induces, or otherwise assists any person in the violation of the laws and regulations mentioned herein and for which there is no specific provision dictating otherwise in this Subtitle, shall be guilty of a misdemeanor.

**CHAPTER 4 --** SPECIAL PROVISIONS

**SUBCHAPTER A --** INCOME TAXES

2011 PR H.B. 3070

**Section 6041.01.-- Penalty for Failure to Withhold or Deposit Certain Taxes.--**

**(a)**   In the event that any person fails to deposit taxes deducted and withheld in Sections 1023.06, 1023.07, 1062.01, 1062.02, 1062.03, 1062.04, 1062.05, 1062.08, 1081.02, 1081.06, and 1081.03, and which should have been withheld and deposited within the term established in Subtitle A of this Code, there shall be imposed on such person, in addition to any other penalties imposed under the Code, a penalty of two percent (2%) of the total amount of the insufficiency if the omission persists for thirty (30) days or less, and an additional two percent (2%) for any additional term of thirty (30) days or fraction thereof while the omission persists, not to exceed twenty-four percent (24%) total.

**(b)**   For purposes of this Section, the term "insufficiency" means the excess of the amount of taxes that should have been deposited over the amount, if any, of the same which was deposited not later than the date established therefor. For purposes of this Section, the omission shall not be deemed to persist after the date such taxes are paid.

**Section 6041.02.-- Penalty for Failure to Submit Information or Pay Taxes.--**

Any person who, pursuant to Subtitle A, is required to pay any taxes or estimated taxes, or who is required by law or regulations established thereunder to keep any records or to furnish any information for purposes of computation, assessment or charging any estimated taxes or taxes imposed by Subtitle A, who willingly fails to pay such estimated or other taxes, to keep such records or to furnish such information within the term or terms imposed by Subtitle A or by regulations, in addition to other penalties established by this Subtitle, shall be guilty of a misdemeanor.

**Section 6041.03.-- Penalty for Failure to File Information Return as Required.--**

Any person who willingly seeks, advises, instigates, or conspires for his/her own benefit or for the benefit of a financial or brokerage business, with or without its authorization, for such business to omit filing its information return in such way and manner and to such extent as established in Section 1063.02, 1063.06 or 1063.07 of Subtitle A, as applicable, in addition to any other penalty, he/she shall be guilty of a third-degree felony.

**Section 6041.04.-- Penalty for Failure to Furnish Information Statement to the Recipient of Income.--**

In the event that the person required to furnish to the recipient of income on the date established, the information statement required by Sections 1062.01(n)(2), 1062.02, 1062.03, 1062.08, 1062.11, 1063.01, 10630.02 [sic.], 1063.03, 1063.04, 1063.05, and 1063.06, unless it is shown that such an omission is due to a reasonable cause, a penalty of one hundred dollars ($ 100) shall be imposed on such person for each statement he/she has failed to furnish on time or at all.

**Section 6041.05.-- Penalty for Failure to Pay or Deposit Income Taxes on Salaries.--**

**(a) Omission to Pay or Deposit Deducted and Withheld Taxes.--**

**(1)**   Any person who, in violation of the provisions of Section 6080.05 of this Subtitle, fails to pay or to deposit any taxes in such manner and on such date as established therein, shall be subject to the provisions of Section 6030.12 of this Subtitle, and a penalty of not less than twenty-five percent (25%) and not greater than fifty percent (50%) of the insufficiency thus determined, shall be imposed on such person.

**(2)**   As for repeat offenders, the penalty imposed herein for such insufficiency may amount up to one hundred percent (100%), in addition to any other penalties provided by law.

**(b) Exception.--**   This Section shall not apply to any person who shows that his/her failure to comply with the provisions of subsection (a) was due to circumstances beyond his/her control. For these purposes, the

lack of funds immediately after paying salaries, even if resulting from paying such salaries, shall not be treated as a circumstance beyond such person's control.

**(c)** For purposes of this Section, the term "insufficiency" means the excess of the amount of taxes that should have been deposited over the amount, if any, of such taxes, which were deposited not later than the date prescribed therefor.

### Section 6041.06.-- Penalty for Violating Section 1062.12.--

If a taxpayer violates or attempts to violate Section 1062.12 of this Code, there shall be added, as part of the tax, and in addition to any other penalties, the twenty-five percent (25%) of the amount of taxes or tax deficiency, together with interest at an annual rate of ten percent (10%) starting on the date taxes became due and payable.

### Section 6041.07.-- For Failure to Furnish Information Required from Certain Tax-Exempt Organizations and Trusts.--

In the event that the information required in Section 1063.08 is not furnished willingly, the penalties provided in Section 6041.02 of this Subtitle (for failure to furnish information or to pay taxes) shall apply.

### Section 6041.08.-- Penalty for Failure to File Certain Statements as Provided in Section 1062.01.--

**(a) Penalties for Fraudulent Statements or for Failure to Furnish Statements.--** In lieu of any penalty provided under this Subtitle, any person that, pursuant to the provisions of subsection (n) of Section 1062.01, is required to furnish a statement and who willingly fails to furnish such statement in such manner, within such term, and including any such information as required under said subsection (n) or the regulations promulgated thereunder, shall be guilty of a misdemeanor for each violation.

**(b) Penalties Related to Withholding Exemption Certificates.--** In lieu of any penalty otherwise established, except for the penalty provided in subsection (c) of this Section, any individual required to furnish information pursuant to subsection (f) of Section 1062.01 of this Code who willingly furnishes false or misleading information, or who willingly fails to furnish information under such subsection (f), which would require a raise in the taxes to be withheld pursuant to subsections (b) or (d) of Section 1062.01, shall be guilty of a misdemeanor.

**(c)** As for employees who, in determining the concession for withholding based on deductions, choose the option provided under subsection (c)(2)(A)(ii) of Section 1062.01 of this Code, in addition to the criminal penalty established in subsection (b), if seventy percent (70%) of the taxes attributable to income originating from salaries subject to withholding, as defined in subsection (a) of Section 1062.01 of this Code, exceeds the taxes withheld at the source on such income, there shall be added to such taxes an amount equal to such excess, or equal to eighteen percent (18%) of the amount for which the taxes so determined exceeds withheld taxes, whichever is less. For purposes of this subsection, "taxes attributable to income originating from salaries subject to withholding" shall be a proportional part of the total taxes imposed by Subtitle A on the individual for the taxable year, based on the same proportion that his/her adjusted gross income on account of salaries bears with his/her total adjusted gross income.

### Section 6041.09.-- Additions to Taxes Upon Failure to Pay Individual Estimated Taxes.--

**(a)** In the event that there is a failure to pay an estimated tax installment within the term established or that the payment made to cover the estimated tax installment is incomplete, unless it is shown to the satisfaction of the Secretary that this was due to a reasonable cause and not due to willing carelessness, there shall be an addition to the taxes of ten percent (10%) of the unpaid amount of such installment. For these purposes, the estimated tax shall be:

**(1)**  Ninety percent (90%) of the tax of such taxable year, in the case of individuals, other than farmers, who exercise an option under Section 1061.22(a), or sixty-six and two-thirds percent (66 2/3%) of the tax so determined, in the case of those farmers; or

**(2)**  the total of the tax determined, as reported in the income tax return filed for the preceding year, whichever is less.

### Section 6041.10.-- For Failure to Pay the Estimated Tax in the Case of Corporations and Partnerships.--

**(a)**  In the event that there is a failure to pay an estimated tax installment within the term established or that the payment made to cover the estimated tax installment is incomplete, unless it is shown to the satisfaction of the Secretary that this was due to a reasonable cause and not to willing carelessness, there shall be an addition to the taxes of ten percent (10%) of the unpaid amount of such installment. For these purposes, the estimated tax shall be ninety percent (90%) of the tax of such taxable year or the total of the tax determined, as reported in the income tax return filed for the preceding year, whichever is less.

### Section 6041.11.-- Penalty for Failure to File Certain Information Statements, Returns, Reconciliation Statements, Transaction Reports, Statements of Brokers or Stockbrokers.--

**(a)**  The penalties established under subsection (b) shall apply when there is failure to file on the prescribed date (taking any extensions granted into account) or failure to file in such way and manner as prescribed by the Secretary, including filing through electronic means when so required:

**(1)**  A statement of the amount paid to another person, as required in Sections 1062.01(n)(2), 1062.08, 1062.11, 1063.01(a), 1063.03, 1063.04, 1063.05(a);

**(2)**  The return required in Section 1061.05;

**(3)**  The return required in Section 1062.01(j);

**(4)**  The annual reconciliation statement required under Sections 1062(n)(1), 10626.02(h)[sic], and 1063.10;

**(5)**  The information statement related to payments subject to withholding required in Sections 1062.02 and 1062.03;

**(6)**  The information on transactions with financial businesses required in Section 1063.02;

**(7)**  The statements required from brokers or stockbrokers under Section 1063.06; or

**(8)**  The information return on the plotting, merging, or transfer of real property required in Section 11 of Act No. 75 of July 2, 1987, as amended, known as the "Puerto Rico Notarial Law."

**(b)**  Unless it is shown that such omission is due to a reasonable cause, the person who failed to file in such way and manner as prescribed by the Secretary, or who failed to file at all such statements, tax returns, or the annual reconciliation statement described in subsection (a), shall pay, upon notice and demand from the Secretary and in the same manner as taxes, the following penalties:

**(1)**  For each statement required in Sections 1062.01(n)(2), 1062.08, 1062.11, 1063.01(a), 1063.02, 1063.03, 1063.04, 1063.05(a), 1063.06, five hundred dollars ($ 500).

**(2)**  For each return required in Section 1062.01(j) of this Code that is not filed, five hundred dollars ($ 500).

**(3)**  For each annual reconciliation statement required in Sections 1062.01(n)(1), 1062.03(h), and 1063.10 of this Code, five hundred dollars ($ 500).

**(4)**  For each annual return required in Section 1061.05, five hundred dollars ($ 500).

**(5)**  For each information return required in Section 11 of the Puerto Rico Notarial Law, five hundred dollars ($ 500).

**Section 6041.12.--** Penalty for Failure to Deposit Taxes Withheld In Sections 1062.08, 1062.10, and 1062.11.--

**(a)** In the event that any person fails to deposit taxes deducted and withheld in Sections 1062.08, 1062.10, and 1062.11 of this Code within the term established by law, unless it is shown that such omission is due to a reasonable cause, a penalty shall be imposed on such person equal to two percent (2%) of the amount of the insufficiency if such omission persists for thirty (30) days or less, and an additional two percent (2%) for each additional period of thirty (30) days or fraction thereof in which such omission persists, not to exceed twenty-four percent (24%) total.

**(b)** For purposes of this Section, the term "insufficiency" means the excess of the amount of taxes that should have been deposited over the amount, if any, of such taxes which was deposited not later than the date prescribed therefor.

**(c) Limitation.--** For purposes of subsection (a), the omission shall not be deemed to persist after the date (determined without regard to any extensions) prescribed in Section 1062.08(b)(1) for the payment of taxes or after the date such taxes are paid, whichever date is the earliest.

**Section 6041.13.-- Penalties for Failure to Furnish Reports to Special Employee-Owned Corporation Members or to Include the Correct Information.--**

**(a) Penalty for Failure to Submit Reports.--** In the event that the special corporation fails to furnish to any of its members the report required in Section 1061.11(b) (on the date prescribed, taking any extension granted into account), unless it is shown that such omission is due to a reasonable cause, it shall pay a penalty of one thousand dollars ($ 1,000) for each report not furnished. The amount of this penalty shall not exceed four thousand dollars ($ 4,000) for each taxable year.

**(b) Penalty for Failure to Include Correct Information.--** In the event that the special corporation furnishes its stockholders the report required in Section 1061.11(b), but fails to include all the information required, or includes incorrect information, unless it is shown that such omission or error is due to a reasonable cause, it shall pay five hundred dollars ($ 500) for each report in which the omission or error is present. The amount of this penalty shall not exceed fifty thousand dollars ($ 50,000) for each taxable year.

**Section 6041.14.-- Penalty for Payment of Excess Benefits.--**

**(a) Initial Penalty.--**

**(1) On a Disqualified Person.--** Any disqualified person who receives payment of excess benefits from a tax-exempt organization under the provisions of Section 1101.01(a)(1), (2), (3), (4)(A), (4)(B), and (4)(C) of this Code, shall be required to return such amounts of excess benefits paid and, in addition, a penalty equal to twenty-five percent (25%) of the amount of each excess benefits transaction shall be imposed on such person. The penalty imposed under this Section shall be paid by any disqualified person as described in subsection (e)(1) of this Section in connection with such transaction.

**(2) On Management.--** In the event that a penalty under paragraph (1) is imposed, a penalty equal to ten percent (10%) of the excess benefits shall also be imposed on each organization manager who, knowing such approval, has participated in the excess benefit transaction, unless it is shown that such participation was not willful.

**(b) Additional Penalty for Disqualified Persons.--** In any case in which the initial penalty imposed under subsection (a)(1) of this Section for an excess benefit transaction, if such situation is not corrected within the same taxable period, an additional penalty equal to two hundred percent (200%) of the excess benefit paid shall be imposed. The penalty imposed under this subsection shall be paid by any disqualified person referred to in subsection (a)(1) in connection with such transaction.

**(c) Excess Benefits Transaction.--** For purposes of this Section:

2011 PR H.B. 3070

**(1) Excess Benefits Transaction.--**

**(A)  In General.--**  The term "excess benefit transaction" refers to any transaction in which an economic benefit is provided by a tax-exempt organization under Sections 1101.01(a)(1), (2), (3), (4)(A), (4)(B), and (4)(C) of this Code, directly or indirectly to or for the use of any disqualified person, if the value of the economic benefit thus provided exceeds the value of the consideration (including the performance of services) received for providing such benefit. For purposes of the preceding sentence, an economic benefit shall not be treated as a consideration for the performance of services, unless such organization clearly indicated its intent to so treat such benefit.

**(B)  Excess Benefits.--**  The term "excess benefits" means the excess referred to in subparagraph (A) of this paragraph.

**(2)**  An excess benefit transaction shall be deemed to be any activity that a tax-exempt organization under Sections 1101.01(a)(1), (2), (3), (4)(A), (4)(B), and (4)(C) of this Code conducts, whose income is used to pay benefits to a disqualified person, and which activity is not covered under said Sections 1101.01(a)(1), (2), (3), (4)(A), (4)(B), and (4)(C) of this Code.

**(d)  Tax-Exempt Organization.--**  For purposes of this Section, the term "tax-exempt organization" means:

**(1)**  Any tax-exempt organization under Sections 1101.01(a)(1), (2), (3), (4)(A), (4)(B), and (4)(C) of this Code; and

**(2)**  Any organization that qualifies under such Sections at any time during the five (5) years ending on the date of the transaction.

**(e)  Other Definitions.--**  For purposes of this Section:

**(1)  Disqualified Person.--**  The term "disqualified person" means, with respect to any transaction:

**(A)**  Any person who was, at any time during the five (5)-year period ending on the date of such transaction, in a position to exercise substantial influence over the affairs of the organization;

**(B)**  A member of the family of the individual described in subparagraph (A); and a thirty-five percent (35%)-controlled entity by persons described in subparagraphs (A) and (B) of this subsection.

**(2)  Organization Manager.--**  The term "organization manager" means, with respect to any tax-exempt organization under Sections 1101.01(a)(1), (2), (3), (4)(A), (4)(B), and (4)(C) of this Code, any officer, director, receiver, or trustee of such organization, or any individual having powers or responsibilities similar to those of such officers, directors, receivers, or trustees of the organization.

**(3)**  Thirty-Five Percent (35%)-Controlled Entity.--

**(A)  In General.--**  The term "thirty-five percent (35%)- controlled entity" means:

**(i)**  A corporation in which persons described in subparagraphs (A) or (B) of paragraph (1) of this subsection own more than thirty-five percent (35%) of the total combined voting power;

**(ii)**  A partnership in which such persons own more than thirty-five percent (35%) of profits interest; or

**(iii)**  A trust in which such persons own more than thirty-five percent (35%) of the beneficial interest.

**(4)  Family Member.--**  The member of a disqualified person's family shall be determined pursuant to Section 1010.05 of this Code, except that such members shall also include the spouses of the brothers and sisters of the disqualified person.

**(5)  Taxable Period.--**  The term "taxable period" means, with respect to any excess benefit transaction, the period beginning with the date on which the transaction occurs and ending on the earliest of:

**(A)**  The date notice is sent with respect to an amount imposed under paragraph (1) of subsection (a) of this Section; or

**(B)**  The date on which the penalty imposed under paragraph (1) of subsection (a) of this Section is determined.

**(6)  Correction.--**   The term "correction" means, with respect to any excess benefit transaction, undoing the excess benefit and taking additional measures necessary to restore the organization to a financial position equal to that in which it would be if the disqualified person were dealing under the highest fiduciary standards.

## SUBCHAPTER B --  EXCISE TAXES AND LICENSE FEES

### Section 6042.01.-- Administrative Fine.--

**(a)  General.--**   The Secretary may administratively impose to and collect from, in addition to the surcharges and interest provided in this Subtitle, an administrative fine not greater than twenty thousand dollars ($ 20,000) for each violation, any person who violates any of the provisions of Subtitle C, regarding excise taxes, or the regulations thereunder. The amount of such fine shall be determined pursuant to the magnitude of the violation and no amount exceeding two thousand dollars ($ 2,000) shall be imposed, except in cases involving fraud, tort, systematic evasion, or when the commission of the prohibited act or the omission of the mandated act could seriously compromise the efficiency of the administration of Subtitle C regarding excise taxes, pursuant to such regulations as the Secretary may adopt.

**(b)  Special.--**   As for repeat offenders who violate the provisions of Subtitle C regarding excise taxes:

**(1)**  If they declare an amount of items that is less than that introduced, transferred, sold, used, acquired, or consumed; or

**(2)**  If they declare a taxable price in Puerto Rico that is inconsistent with the provisions of this Code; or

**(3)**  If they present commercial invoices that are not authentic, or which indicate an incorrect amount of items; or

**(4)**  If they falsify the extent or the nature of the discounts credited in their favor; or

**(5)**  If they systematically fail to declare any items or merchandise that they trade and sell at a market price comparable to that of their competitors, who indeed pay such taxes, and fails to show to the satisfaction of the Secretary that their actions were due to an error in good faith or to inadvertence, the Secretary, in lieu of the general administrative fine established in subsection (a), may administratively impose and collect, in addition to the surcharges and interest provided in this Subtitle, a special administrative fine for an amount not less than fifty percent (50%) and not greater than one hundred percent (100%) of the taxes owed.

**(c)**   In the cases indicated in subsection (b), if the person voluntarily discloses having incurred such violation to the Secretary and furnishes information on the true amount owed in taxes, or in any other way cooperates with the Department to determine the deficiency, the Secretary may treat the debt as a regular debt and not impose a special administrative fine. This benefit for voluntary disclosure may not be granted to any taxpayer who seeks to avail him/herself of such benefit after an investigation has been initiated and after having found any evidence implying fraud, or in cases in which there has been an attempt to coerce public officials, or in cases in which there is connivance with such public officials.

### Section 6042.02.-- Administrative Fine for Fraudulent Credit Claim.--

Any taxpayer who knowingly submits false documents, or who does not keep the documents required for a period of five (5) years, or who furnishes any false or incorrect information for the purpose of fraudulently claiming a credit to which he/she is not entitled, shall be subject to the imposition of an administrative fine for double the amount of

the credit unlawfully claimed, plus the corresponding interest and surcharges. The Secretary shall not, during a period of five (5) years, authorize this type of credit in favor of a taxpayer on whom such fine has been imposed.

### Section 6042.03.-- Administrative Fine for Special Oil Taxes.--

Any person who violates the provisions of Section 3020.06 of Subtitle C, related to taxes on crude oil, partially manufactured products, or finished oil byproducts, and products of any other hydrocarbon mixture, shall be subject to the imposition of an administrative fine of twenty thousand dollars ($ 20,000), plus surcharges and interest, as established in Section 6030.02 of this Subtitle.

### Section 6042.04.-- Administrative Fine for Connivance Between Shipper and Consignee.--

**(a)**   When the Secretary has clear and convincing evidence against any shipper or sender of taxable merchandise to Puerto Rico, that proves connivance between a consignee or any other person in Puerto Rico to conceal taxable items, or to reduce them, or to alter, mutilate, or distort the nature of the items thus introduced, or to exaggerate the true extent of the discounts, or to interpret the extent of these to their benefit, he/she should take administrative action against the persons who connived directly, in one or other of the following ways, or both:

**(b)**   The person in Puerto Rico shall be required to pay the taxes, surcharges, and interest, plus an administrative fine in an amount equal to four times the taxes owed.

**(c)**   The person outside Puerto Rico shall be required to pay taxes, surcharges, and interest, plus an administrative fine in an amount equal to four (4) times the taxes owed.

### Section 6042.05.-- Fine for Delivering Items without the Secretary's Authorization.--

Any port owner, lessee, or Executor who delivers items introduced from abroad in contravention of the provisions of Section 3020.10 of this Code, shall be required to pay taxes corresponding to such items, including surcharges and interest as established under this Subtitle, when such payment is not made by the taxpayer. Furthermore, he/she shall be subject to the imposition of an administrative fine pursuant to Section 6042.01.

### Section 6042.06.-- Administrative Fine for Submitting False Documents.--

Any person who submits to the Secretary any documents that are not authentic or which contain numbers of items or valuables that are not accurate or true with respect to items received, shall be subject, in addition to paying the corresponding taxes plus surcharges and interest, to the imposition of an administrative fine equal to fifty percent (50%) of the value of the merchandise thus introduced. Furthermore, and subject to the discretion of the Secretary, from that point thereafter, he/she may not open any van he/she may receive, unless he/she does so with a fiscal official present, who, together with the taxpayer, shall examine the contents, and if he/she does so without a fiscal official present, he/she shall be guilty of a fourth-degree felony.

### Section 6042.07.-- Imposition and Collection of Administrative Fines.--

The Secretary is hereby authorized, at his/her discretion and by request of the offender, to impose and collect administrative fines not to exceed ten thousand dollars ($ 10,000) for each infraction of the provisions of Subtitles C and E, related to license fees, or the regulations approved for their implementation, in the case of a misdemeanor, at any time before the trial is held. In such cases, the Court, after notice from the Secretary, shall stay or terminate the criminal proceedings filed to address this matter.

### Section 6042.08.-- Cigarette-Related Crimes.--

**(a)**  Any person shall be guilty of a misdemeanor if:

2011 PR H.B. 3070

(1)  He/she packs in any box or package an amount of cigarettes that is greater or less than that which Subtitle C of this Code or its regulations provide for each box or package; or

(2)  He/she fails to adhere, print, or otherwise affix the label required under Subtitle C or its regulations, or who falsely adheres, prints, or otherwise affixes another label, or who adheres, prints, or otherwise affixes in any box, package, or pack containing cigarettes, a label that does not contain all the information and has the characteristics required by regulations; or

(3)  He/she knowingly has possession of, or has in any space or premises under his/her control and at his/her disposal, any cigarettes that have not been packed or have not paid the corresponding taxes as required under Subtitle C; or

(4)  He/she, with the intent to commit fraud, gives away, sells, buys, accepts, or otherwise uses any pack of cigarettes that does not have the label affixed as required under Subtitle C or such regulations as the Secretary may promulgate.

(b)  Any natural or juridical person, or owner or Executor of a business or a business establishment shall have his/her license to trade cigarettes, whether at wholesale or at retail, or any cigarette-related license suspended for a term of twelve (12) months and an administrative fine of ten thousand dollars ($ 10,000) shall be imposed for each incident, without prejudice to the provisions of the Act to Correct Exploitation of Underage Children of February 25, 1902, as amended, when he/she:

(1)  Sells, gives away, dispenses, delivers or, distributes cigarettes, whether individually or in packs of any size or any other kind of wrapping, cigars, chewing tobacco, or any tobacco preparation to be inhaled or chewed, and any other kind of material, regardless of what it is made of, that can be used to roll any kind of cut tobacco to prepare cigarettes, cigars, or flavored cigarettes, as these are defined in Act No. 62 of August 5, 1993, as amended [23 L.P.R.A. §§ 1041 et seq.], to persons under the age of eighteen (18), or to any person who does not look older than twenty-seven (27), who does not present a photo identification card that appears to be valid on its face showing that such person is over the age of eighteen (18), whether for such person's consumption or for the consumption of a third party. Any transaction in connection with the aforementioned products in this paragraph shall be conducted in a direct and immediate manner between both parties, in order for the product not to be accessible to the person who intends to buy, be it because the product is on a counter or in a self-service machine, except as otherwise provided in subsection (e) of Section 3050.01 of this Code.

(2)  Any owner or Executor of a business or a business establishment where cigarettes are sold, given away, dispensed, delivered, or distributed at retail, whether individually or in packs of any size or any kind of wrapping, cigars, chewing tobacco, or any tobacco preparation to be inhaled or chewed, who does not affix conspicuously in the business or the business establishment, a copy of the provisions of this subsection, in addition to the provisions of Section 4-A of the Act to Correct Exploitation of Underage Children, approved on February 25, 1902, as amended.

(c)  Upon completion of the twelve (12)-month period established in subsection (b), a person may request reinstatement of his/her license. If, after such license has been reinstated, such person is found guilty for a second time of the same violation, his/her license shall be permanently revoked. For purposes of the above provisions, any violation that occurs five (5) years after the date the determination on the first violation became final and binding, shall not be treated as a second violation of the provisions of subsection (b).


**Section 6042.09.-- Crime for Effacing the Manufacturer's Serial Number.--**

Any person who knowingly buys, sells, receives, disposes of, conceals, or has in his/her possession any items over which a lien is imposed by the provisions of Subtitle C of this Code, whose manufacturer's serial number or any other identification number, if any, has been removed, altered, covered, mutilated, or effaced, shall be guilty of a third-degree felony.


**Section 6042.10.-- Crime for Forcing or Manipulating Security Seals.--**

**(a)** Any person, other than a duly authorized official, employee, or internal revenues agent of the Department of the Treasury, who destroys, breaks, or damages, or who attempts to destroy, break, or damage any padlock, lock, seal, or security seal placed on any warehouse, van, depository, wagon, package, device, room, or building by an official or internal revenue agent, or who opens the lock or door to, or who enters any of the aforementioned places, shall be guilty of a third-degree felony.

**(b)** Once a taxpayer, consignee, or carrier has been authorized, whether directly or through his/her authorized representative, to move the van from the premises of the carrier company, he/she shall be responsible and be guilty of a third-degree felony as of that time for breakage of the security seal, lock, padlock, or seal of the van, if such device was not broken in presence of a fiscal official of the Department.

## Section 6042.11.-- Crime for Connivance Between Shipper and Consignee.--

Any person, shipper, or sender who sends to Puerto Rico any taxable merchandise and who connives with a consignee or another person in Puerto Rico to conceal taxable items, or to reduce, alter, or mutilate them, or to distort the nature of the items thus introduced, or who connives to exaggerate the true extent of the discounts, or to interpret their extent to his/her benefit, shall be guilty of a third-degree felony.

## Section 6042.12.-- Crime Related to Items Introduced in Vans.--

Any person who introduces to Puerto Rico any items by using vans to transport them from the port to his/her warehouses and does not submit to the Secretary the packing list corresponding to items subject to taxation under Subtitle C, which have been introduced before removing the van from the custody of the carrier company, as required in Section 3020.09 of this Code, shall be guilty of a third-degree felony.

## Section 6042.13.-- Crimes Related to Any Person.--

Any person who has custody over items subject to taxation under Subtitle C and who delivers them to the consignee or to the person who rightfully claims such items without the authorization of the Secretary to deliver them as required in Section 3020.10 of this Code, shall be guilty of a third-degree felony.

## Section 6042.14.-- Violations.--

**(a) Jurisdiction to Try Violations Cases and to Impose Penalties.--** Exclusive original jurisdiction is hereby conferred to the Court of First Instance of Puerto Rico to try all cases of misdemeanors for violating the provisions of Subtitle C, related to license fees, as well as the regulations promulgated or to be promulgated for its enforcement. If, in any case of misdemeanor for violating the provisions of Subtitle C, related to license fees, or the regulations promulgated or to be promulgated for its enforcement, the accused presents for the consideration of the Judge not later than on the date of trial, a certification issued by the Secretary attesting to the fact that an administrative fine has been imposed and collected on account of the same violation that caused the complaint or accusation, the Court is empowered to order that said case be shelved and overridden, after paying to the Court Clerk the court fees incurred for processing the case up to that time.

**(b) Crimes Related to Holding, or Absence of, a License.--**

**(1)** Any person shall be guilty of a misdemeanor when:

**(A)** He/she engages or continues to engage in a trade, business, or occupation that requires a license or permit under the provisions of Subtitle C without obtaining or renewing the appropriate license in the time and manner established in Subtitle E, or whose license has been revoked;

**(B)** He/she is engaged in the manufacture, import, or sale of alcohol or beverages subject to taxation under the provisions of Subtitle E and which require licenses as established under Subtitle C, and he/she fails to comply with or violates such provisions;

**(C)** He/she engages or continues to engage in the business of distilling, rectifying, or manufacturing products subject to taxation under Subtitle E, in a building that houses a similar trade belonging to another person who holds a license under Subtitle C;

**(D)** He/she holds a license as an alcoholic beverage wholesaler and sells alcoholic beverages to persons who do not hold a license as alcoholic beverage dealers;

**(E)** He/she sells, gives away, or supplies alcoholic beverages to a person under the age of eighteen (18), whether for the latter's personal use or for the use of another person, or who employs persons under the age of eighteen (18) to sell alcoholic beverages;

**(F)** He/she, after having been issued a license as a dealer of alcoholic beverages at wholesale or at retail, opens a door, window, or any other opening that communicates the business directly with a residence;

**(G)** He/she holds a Category "B" dealer license of alcoholic beverages at retail, and he/she allows the consumption of alcoholic beverages in his/her establishment or premises.

**(H)** He/she holds a Category "C" dealer license of alcoholic beverages at retail, and he/she allows the consumption of alcoholic beverages in his/her establishment or premises.

**(I)** He/she transfers his/her license and distilled spirits or alcoholic beverages in stock to another establishment or building without the previous authorization of the Secretary.

**(2)** In addition to being subject to the aforementioned penalties, any person convicted for the first time of violating subparagraph (D) of this subsection shall have his/her dealer license of alcoholic beverages at wholesale or at retail suspended for a period of twelve (12) months. If, after having his/her license reinstated, such person is found guilty of the same violation for a second time, his/her license shall be permanently revoked, in addition to the penalties established in the first subparagraph of paragraph (1). For purposes of the foregoing provisions, any violation that occurs five (5) years after the date the first conviction became final and binding, shall not be treated as a second conviction under subparagraph (D) of this subsection.

**(c) Counterfeit Licenses.--** Any person shall be guilty of a third-degree felony:

**(1)** Whenever, with the intent to defraud:

**(A)** He/she forges, falsifies, or alters any one of the licenses provided in Subtitle C; or

**(B)** He/she uses, sells, or is in possession of any such forged, falsified, or altered license, or any plate or stamp that has been used or which could be used to prepare such license; or

**(C)** He/she again uses any license which, under Subtitle C, should be cancelled.

**(d)  Crimes Related to Omitting Information or Furnishing False or Fraudulent Information, Denying Reports or Documents.--** Any person who fails to notify the Secretary of any change in the status or condition of, or in persons interested in firms or companies engaged in any business that requires a license pursuant to the provisions of Subtitle C, except for corporations, shall be guilty of a fourth-degree felony.

**(e)  Obstruction of Inspection.--** Any person who prevents or obstructs the inspection by the Secretary of business establishments, industrial plants, or products subject to the payment of license fees established in Subtitle C shall be guilty of a third-degree felony.

**(f)  Attempt to Obstruct or Delay the Secretary's Action.--**

**(1)** Any person who attempts, by means of threats or violence, to prevent the Secretary from discharging any obligation imposed under Subtitle C, or who knowingly shows resistance to such official in the discharge of his/her duty by employing open force or violence shall be guilty of a third-degree felony.

(2)   Any person who resists, delays, or hinders the Secretary in the application of the provisions of Subtitle C, related to license fees, provided there is no other penalty imposed, shall be guilty of a fourth-degree felony.

(g)  **Administrative Fine; License Cancellation.--**

(1)   When the Secretary determines that an Adult Entertainment Machine is operating without internal revenue licenses, or has been altered in violation of the Games of Chance Act, as amended:

(A)  The owner of such machine, and

(B)  The owner, lessee, or titleholder of the business establishment where the machine is operated shall be subject, in addition to any other criminal or civil sanctions applicable under this Code, to the sanctions described in paragraphs (2), (3), and (4) of this subsection (g).

(2)   An administrative fine of five thousand dollars ($ 5,000) for each violation.

(3)   The cancellation of all licenses granted by the Department of the Treasury to the owner of the Adult Entertainment Machine described in paragraph (1), or to the owner, lessee, or titleholder of the business where such Adult Entertainment Machine is being operated, such as the license to sell alcoholic beverages, to sell cigarettes, and any other license.

(4)   As for repeat offenders, the Secretary shall have the power to cancel or permanently revoke all internal revenue licenses, permits, and/or labels issued by him/her in favor of such owner of Adult Entertainment Machines described in paragraph (1) or such owner, lessee, or titleholder of the business where such Adult Entertainment Machine is being operated.


**Section 6042.15.-- Penalty for Failure to File Excise Tax Statement and Monthly Excise Tax Return.--**

(a)  Any person required to file the Excise Tax Statement, the Monthly Excise Tax Return, or the Bill of Sale who fails to file such return as required in Sections 3020.08(c)(8), 3020.09(c), and 3020.10, in such way and manner and on such date as established therein, shall be imposed a penalty of one hundred dollars ($ 100).

(b)  Any person who is required to submit and file the Excise Tax Statement, the Monthly Excise Tax Return, or the Bill of Sale by electronic means, and who fails to do so, shall be deemed to have failed to file such returns or statements, for which reason, he/she shall be subject to the penalties provided in this Section.

(c)  For purposes of this Section, the term "tax liability" means the amount of taxes to be paid together with the tax return, without subtracting any payment made or remitted to the Secretary.

(d)  The Secretary may exempt from the penalty established herein when it is shown that such omission is due to a reasonable cause.


**Section 6042.16.-- Information on Suggested Retail Price and Penalty for Absence of Placard in Vehicles.--**

The salesperson shall keep in the vehicle the suggested retail price for consumer information purposes. Absence of placards that contain the information indicating the retail price to consumers shall entail the imposition of an administrative fine of five thousand dollars ($ 5,000) for each violation. Such omission shall constitute a misdemeanor.


**Section 6042.17.-- Penalty for Detaching, Altering, or Mutilating Sticker.--**

(a)  Any person who willingly detaches, removes, mutilates, transforms, or otherwise alters the placard or sticker issued or authorized for issue by the Department, to be adhered to every vehicle, shall be guilty of a misdemeanor.

(b)   Any person who willingly aids or assists or seeks, advises, or instigates the alteration, mutilation, or transformation of such placard or sticker, shall be guilty of a misdemeanor and be subject to payment of an administrative fine for each violation.

### Section 6042.18.-- For Delay in Payment of License Fees.--

**(a) General Rule.--**

(1)   When a taxpayer fails to pay fees to obtain or renew a license within the period established in Subtitle C, an administrative fine equal to one hundred percent (100%) shall be imposed on him/her, and shall be payable as part of the amount owed for the year or semester, plus a progressive surcharge equal to:

(A)   Five percent (5%) of the amount of the license fees when payment is made after thirty (30) days from the date such fees should have been paid, but not to exceed sixty (60) days; or

(B)   Ten percent (10%) of such amount when payment is made after sixty (60) days from the date such fees should have been paid.

(2)   Furthermore, he/she shall be required to pay interest on the amount of license fees at an annual rate of ten percent (10%) from the date fixed for payment.

**(b) Repeat Offenses.--**

(1)   As for repeat offenses, regarding failure to pay license fees, or when any person has not obtained a license not later than the date the business or trade for which the license is needed began to operate, the administrative fine shall be two hundred percent (200%) of the amount owed, plus surcharges and interest computed or determined in the manner established above.

(2)   This provision shall not be construed as a limitation to the power of the Secretary to revoke the license of any person who does not pay license fees, in which case, in addition to the administrative fine for operating without a license, as required under Chapter 5 of Subtitle C, the surcharges and interest established herein shall be imposed on him/her for the period during which he/she was operating without a license.

(c)   The provisions of subsections (a) and (b) of this Section shall by no means prevent judicial prosecution and punishment of such action or omission as a crime.

(d)   Notwithstanding the provisions of subsections (a) and (b) of this Section, the Secretary shall be empowered to reduce, condone, or exempt any taxpayer from payment of any fine or surcharge imposed under subsections (a) and (b) of this Section, when in the judgment of such official, such cases warrant such action or such action would best serve the public interest, or when such official deems that such reduction, condoning, or exemption is necessary or convenient to fulfill the ends or purposes of this Code or any regulations approved thereunder. This power shall be effective until June 30, 2012, although it may be extended for one (1) additional year by the Legislative Assembly at the request of the Secretary of the Treasury.

### Section 6042.19.-- License to Operate as Motor Vehicle Dealer or Salesperson and Penalty for Operating Without Such License.--

Any dealer or salesperson of motor vehicles, whether new or used, who operates as such without having obtained a license pursuant to the provisions of Section 3040.02 of Subtitle C and Act No. 22 of January 7, 2000, as amended [9 L.P.R.A. §§ 5001 et seq.], known as the "Puerto Rico Vehicle and Traffic Act," shall be subject to an administrative fine of ten thousand dollars ($ 10,000), regardless of any criminal sanctions provided in this Code and in the Puerto Rico Vehicle and Traffic Act.

### Section 6042.20.-- Confidentiality of Excise Tax Statements and Other Documents.--

**(a)**  Excise tax statements filed under the provisions of Subtitle C, with respect to which the Secretary has determined the imposition of taxes, shall constitute public documents and, except as provided in this Section, may only be inspected pursuant to such rules and regulations as the Secretary may adopt. When an excise tax statement can be freely inspected by any person, a certified copy of the same shall be issued, upon previous request, and the Secretary may charge for such copy any such fees as may be established by regulation.

**(b)**  No official or employee of the Department of the Treasury shall disclose or make known under any circumstance, except as provided in the Code, any information contained in the statements, books, records, or other documents examined by or furnished to the Secretary, nor shall he/she allow any persons who are not legally authorized to examine or inspect any such documents.

**(c)**  Notwithstanding the foregoing provisions, the Secretary and any official or employee of the Department of the Treasury, at the request of the Committee on Ways and Means of the House of Representatives, or the Committee on Ways and Means of the Senate of Puerto Rico, or a Special Committee of the House or the Senate authorized to investigate excise tax statements through a Senate or House Resolution, or a Joint Committee so authorized through a Joint Resolution, shall furnish to such Committee, convened in executive session, any information of any nature included or stated in any statement. The aforementioned Committees, whether acting directly as a Committee or through the examiners or agents it may designate or appoint, shall be empowered to inspect any and all statements within such term and in such manner as said Committee may determine. All the information thus obtained by the Committee in question may be submitted to the Senate or the House, or both Legislative Chambers jointly.

## Section 6042.21.-- Requirement to Keep and Furnish Documents.--

**(a)**  Any person shall be required to obtain such invoices or documents, to keep such records, or to transmit such documents and reports as may be provided by regulation, if:

**(1)**  He/she is subject to payment of taxes imposed by Subtitle C or is required to withhold such taxes.

**(2)**  He/she introduces, buys, sells, transfers, uses, or manufactures any item in Puerto Rico.

**(3)**  He/she operates a banking, financial, insurance, or creditrelated business that involves money orders, policies, invoices, or other documents related to any item.

**(4)**  He/she acts as a shipping agent, commission agent, broker, representative, commission merchant, or intermediary, or in any other capacity related to any item.

**(5)**  He/she brings to Puerto Rico any items as maritime, air, ground, or other kind of carrier, on account of shippers or on account of any consignee who is a resident of Puerto Rico.

**(b) Keeping Documents.--**

**(1)**  Any document, report, register, invoice, record, statement, or any other related to items on which a lien has been imposed under Subtitle C or with any business, trade, transaction, or activity for which fees are payable pursuant to said Subtitle, shall be kept for a period of not less than five (5) years counted from the date such documents are prepared or obtained.

**(2)**  When the documents described in paragraph (1) are being audited or examined by the Secretary at the time that such five (5)-year term has expired, the taxpayer shall ensure their safekeeping for any additional time as necessary to complete the examination or audit by the Secretary.

**(3)**  The regulations to establish the norms regarding the keeping of registers, invoices, statements, records, and any other documents shall state the types of documents, records, and reports to be kept.

## Section 6042.22.-- Felonies and Misdemeanors by Officials and Employees, Disciplinary Sanctions.--

Officials and employees of the Department of the Treasury who, in the discharge of their duties under the authority of Subtitle C of this Code, commit acts that constitute a crime, as classified in the Penal Code of Puerto Rico of

2004, as amended, shall also be subject to such disciplinary sanctions as the Secretary may provide through regulations.

**SUBTITLE C --**  SALES AND USE TAX

**Section 6043.01.-- Administrative Fines.--**

**(a)  Failure to Display Merchant's Registration Certificate.--**  Any merchant who violates the provisions of Section 4060.02 shall be subject to an administrative fine of up to one thousand dollars ($ 1,000).

**(b)  Inappropriate Advertising.--**  Any merchant who fails to comply with the provisions of Section 4020.05(e), shall be subject to an administrative fine of not less than one thousand dollars ($ 1,000) nor greater than twenty thousand dollars ($ 20,000), to be determined by the Secretary based on the frequency, duration, or medium used for the advertisement or announcement, and the number of establishments to which this measure applies.

**(c)  Failure to Display Sales and Use Tax Separately or Failure to Display Announcement.--**  Any merchant who fails to comply with the provisions of Section 4020.05(b) shall be subject to an administrative fine of one hundred dollars ($ 100) for each violation.

**(d)  Displaying a Forged Merchant's Registration Certificate.--**  Any merchant who displays a forged merchant's registration certificate shall be subject to an administrative fine of five thousand dollars ($ 5,000) for each violation.

**Section 6043.02.-- Penalties for Violations of Chapter 3 of Subtitle D.--**

**(a)  Fraudulent Exemption Claim.--**  Any taxpayer who fraudulently and with the intent to evade his/her tax liability furnishes to a merchant, or to any agent of the Government of Puerto Rico, an exemption certificate or any other documents that attest to his/her right to exemption, shall be liable for the payment of taxes and a penalty of two hundred percent (200%) of the sales and use tax.

**(b)  Fraudulent Credit Claim.--**  Any merchant who fraudulently and with the intent to evade his/her tax liability fraudulently claims a credit under the provisions of Subtitle D shall be liable, in addition to paying taxes, for paying a penalty equal to double the credit unlawfully claimed, plus the corresponding interest and surcharges.

**(c)  Forgery of Exemption Certificate or Possession of Fraudulent Exemption Certificate.--**  Any person who in any way forges an exemption certificate or who knowingly owns a fraudulent exemption certificate, shall be subject to a penalty of ten thousand dollars ($ 10,000) for each forged exemption certificate or for any such certificates in his/her possession.

**(d)  For Failure to Require and Keep a Copy of the Exemption Certificate or Other Document Attesting to the Right to Exemption.--**  Any merchant who fails to require or keep a copy of the exemption certificate or any other document that attests to the right to exemption, as provided in Sections 4020.07, 4030.05, 4030.06, 4030.07, and 4030.08, shall be liable for payment of taxes and a penalty of fifty percent (50%) of the sales and use tax.

**(e)  Failure to Notify Sale of a Taxable Item by a Tax-Exempt Person or Failure to Require Proof of Payment of Sales and Use Tax or the Right to Exemption.--**  Any person who has availed him/herself of the exemptions provided in Sections 4030.05, 4030.08, and 4030.09, and sells, transfers, or otherwise alienates the taxable item that enjoyed the exemption granted and fails to comply with the provisions of Sections 4030.05, 4030.08(b), and 4030.09, shall be subject to a penalty of five hundred dollars ($ 500) for each taxable item sold, transferred, or otherwise alienated.

**(f)  Failure to Pay Sales and Use Tax when Buying Taxable Items from Tax-Exempt Persons.--**  Any person who acquires a taxable item that enjoyed the exemption granted in Sections 4030.08 and 4030.09,

and fails to pay taxes under the provisions of Sections 4030.05, 4030.08(b), and 4030.09, shall be liable for payment of taxes and a penalty of fifty percent (50%) of sales and use tax.

**Section 6043.03.-- Penalties for Violations of Chapter 6 of Subtitle D.--**

**(a)  For Failure to Register.--**  Any merchant who does not register as required in Section 4060.01(a) shall be subject to a penalty of up to ten thousand dollars ($ 10,000).

**(b)  For Selling, Assigning, Transferring, Otherwise Conveying the Merchant's Registration Certificate.--**  Any merchant who violates the provisions of Section 4060.01(c) shall be subject to a penalty of five thousand dollars ($ 5,000).

**(c)  For Providing False Information.--**  Any merchant who knowingly furnishes false information on the application required in Section 4060.01(a) shall be subject to a penalty of five thousand dollars ($ 5,000).

**(d)  For Failure to Notify Changes or Amendments to the Information Required and Others.--**  Any merchant who violates the provisions of Section 4060.01(e) shall be subject to a penalty of five hundred dollars ($ 500).

**(e)  Forgery of Merchant's Registration Certificate.--**  Any person who in any way forges a merchant's registration certificate or who knowingly holds a fraudulent merchant's registration certificate shall be subject to a penalty of ten thousand dollars ($ 10,000) for each merchant's registration certificate forged or in his/her possession.

**Section 6043.04.-- For Failure to Remit Sales and Use Tax.--**

**(a)**  Any person who, in violation of the provisions of Section 4042.03, fails to remit the sales and use tax in the time and manner established therein, shall be subject to a penalty of not less than twenty-five percent (25%) nor greater than fifty percent (50%) of the insufficiency, as determined.

**(b)**  As for repeat offenses, the penalty provided herein shall be one hundred percent (100%) of the amount of the insufficiency, as determined.

**(c)**  For purposes of this Section, the term "insufficiency" means the excess of the amount of taxes that should have been deposited over the amount, if any, of such taxes which were deposited not later than the date established therefor.

**(d)**  The Secretary may exempt from the penalty established herein, any person who shows that failure to comply with the provisions of Section 4042.03 was due to circumstances beyond his/her control.

**Section 6043.05.-- Penalty for Failure to File Monthly Sales and Use Tax Return.--**

**(a)**  Any person required to file the Monthly Sales and Use Tax Return and who fails to file the same, as required in Section 4041.02 in such way and manner and on such date as established therein, shall be imposed a penalty of one hundred dollars ($ 100) or ten percent (10%) of the tax liability established in such tax return, whichever amount is greater.

**(b)**  Any person required to file the Monthly Sales and Use Tax Return by electronic means who fails to file such return by such means shall be deemed to have failed to file such return, for which reason, he/she shall be subject to the penalties provided in this Section.

**(c)**  For purposes of this Section, the term "tax liability" means the amount of taxes to be paid together with such tax return, without reduction by virtue of any payment or deposit made or remitted to the Secretary.

**(d)**  The Secretary may exempt from the penalty established herein when it is shown that such omission or error is due to a reasonable cause.

**Section 6043.06.-- Penalties for Violating Other Provisions.--**

**(a) Undue Collection of Sales and Use Tax.--** Any merchant who withholds the sales and use tax in excess of what is required in Section 4020.05, shall be subject to a penalty of one hundred dollars ($ 100) for each receipt, invoice, voucher, or other proof of sale.

**(b) Failure to Keep Documents.--**

**(1)** Any merchant who fails to meet the requirements imposed on Section 4020.05 shall be subject to a penalty of up to twenty thousand dollars ($ 20,000) for each violation.

**(2)** Any merchant or buyer who fails to meet the requirements of Section 4060.07(a) or (b)(2) shall be subject to a penalty not greater than five hundred dollars ($ 500) for each violation.

**(c)** Any merchant or person who in any way refuses to have installed, either by the Secretary or his/her authorized representative, or to allow the use of a fiscal terminal, application, or other electronic medium, or who disconnects, removes, alters, destroys, modifies, manipulates, or intervenes with a fiscal terminal, application, or other electronic medium, or who in any way obstructs the inspections or oversight operations conducted by the Secretary or his/her authorized representative under the authority provided by Section 6054.01(a)(4)(C) and Section 6054.01(a)(7) of the Code, shall, in addition to any other penalty provided in this Code and any offense classified under this Code or the Penal Code, be imposed a penalty of up to twenty thousand dollars ($ 20,000) for each violation, unless it is due to a reasonable cause.

## Section 6043.07.-- Prescriptive Term for Credits or Refunds.--

Unless a credit or refund claim is filed by the taxpayer within a term of four (4) years following the date the sales and use tax is paid, no credit or refund shall be granted or made after the expiration of the aforementioned term.

## SUBCHAPTER D -- DECEDENT'S ESTATES AND GIFTS

## Section 6044.01.-- For Failure to Furnish Information or Pay Taxes.--

Any person who, pursuant to Subtitle B, is required to pay any taxes or required by said Subtitle or regulations established thereunder, to keep any records, or to furnish any information for purposes of computation, assessment, or collection of any taxes imposed by Subtitle B, who willingly fails to pay such taxes or to keep such records, or to furnish such information within the term or terms fixed by this Code or by regulations, shall, in addition to other penalties established by this Subtitle, be guilty of a third-degree felony.

## Section 6044.02.-- For Disposing of or Allowing the Disposal of Property Included or Includable in the Gross Decedent's Estate.--

Any person who, in violation of any provision of Subtitle B, willingly disposes or allows the disposal of any property included or includable in the gross estate of a decedent, shall, in addition to other penalties provided in this Subtitle, be guilty of a felony.

## Section 6044.03.-- For Violating Section 2054.05.--

**(a)** Any person who willingly violates the provisions of Section 2054.05 of this Code, related to Prohibited Actions, unless a document is presented which credits lien cancellation, shall, in addition to any other penalty provided in this Subtitle, be liable for all taxes, plus any additions thereto, unpaid because of such violation, except in cases covered in paragraph (3) of subsection (a) of said Section 2054.05, in which case, the violation shall constitute a misdemeanor.

**(b)** For purposes of subsection (a) of Section 2054.05, it shall be presumed that the persons referred to in such Section were fully aware of the death of the decedent when they engaged or allowed others to engage in any of the actions prohibited under such subsection (a). Satisfactory proof of unawareness of the death

of the decedent when engaging or allowing others to engage in such actions shall relieve such persons from liabilities as prescribed in this Section.

## SUBCHAPTER E -- TAXES ON ALCOHOLIC BEVERAGES

### Section 6045.01.-- Fines and Penalties.--

**(a) Delinquent Payments.--** The Secretary may impose, in addition to surcharges and interest as otherwise provided in this Code, administrative fines not to exceed ten thousand dollars ($ 10,000) in each case for delinquent payments. The provisions of this subsection shall by no means prevent prosecution and punishment by the Court of such action or omission that constitutes a crime.

**(b) Failure to Meet Container, Label, Sticker, or Bottle Cap Requirements.--** Any manufacturer, importer, introducer, wholesale or retail dealer who has in his/her possession distilled spirits, alcoholic beverages, any malt product, whether fermented or nonfermented, or beer, whose containers, labels, stickers, and bottle caps do not meet the requirements established in Subtitle E, shall be guilty of a misdemeanor.

**(c) Violation of Section 5032.02.--**

**(1)** Any carrier who violates the provisions of subsection (a) of Section 5032.02, shall be guilty of a misdemeanor, and shall also be required to pay the corresponding taxes on such merchandise, including surcharges, interest, administrative fines, and all other penalties established in the Code, if the taxpayer does not make such payment.

**(2)** Any importer or dealer who, in violation of the provisions of subsection (b) of Section 5032.02, removes alcoholic beverages from the custody of Customs without the previous written consent of the Secretary shall be guilty of a misdemeanor.

**(d) Violation of Section 5050.07.--** Any person who holds a license as a Category "B" or Category "C" retail alcoholic beverage dealer, who allows consumption of alcoholic beverages in his/her establishment or within his/her premises, shall be guilty of a misdemeanor.

### Section 6045.02.-- Seizure.--

**(a) Seizure.--**

**(1)** The Secretary shall seize any vehicle, beast, watercraft, or aircraft:

**(A)** Loaded with or which transports, carries, or moves;

**(B)** Which is used or has been used to load, unload, transport, carry, or move, or which is caught loaded or in the act of being loaded or unloaded or transporting, carrying, or moving; or

**(C)** Which has been used for any unlawful operation related to the possession, control, sale, transportation, use, or transfer of distilled spirits, or alcoholic beverages on which the taxes imposed under Subtitle E have not been paid.

**(2)** Any motor vehicles seized shall be placed under the custody of the Board of Seizures.

**(3)** For the seizure and disposal of vehicles, beasts, watercraft, and aircraft, the procedures established under Act No. 93 of July 13, 1988, as amended [34 L.P.R.A. §§ 1723 et seq.], known as the "Uniform Seizures Act of 1988," shall be followed.

**(b)** When a person is required to pay the taxes imposed in Subtitle E, or the fines imposed on him/her, and he/she fails to do so within the established term, the Secretary is hereby empowered to seize and sell, in public auction, the debtor's property pursuant to the procedures established in Chapter 6 of this Subtitle.

**(c)** The Secretary may seize and sell, in public auction, the plant, machinery, equipment, taxable products, and any other property used in the trade, business, or occupation of a person required to hold a license or

permit under the provisions of Subtitle E, who has not obtained or renewed such license in the manner and within the term provided in Subtitle E, or whose license has been revoked.

**(d)**   When the Secretary attaches and seizes products, be it because the corresponding taxes have not been paid or because the owner of such products has engaged in dealing such products without having obtained the necessary permit or license, or due to any other cause, as provided in Subtitle E, such products shall be transferred to the custody of the Secretary or the person whom he/she designates as depository. Any person charged with the custody of these products, who disposes of all or part thereof without the written authorization of the Secretary, shall be guilty of a misdemeanor.

**Section 6045.03.-- Violations.--**

**(a)   Jurisdiction to Try Cases Related to Violations and to Impose Penalties.--**   The Court of First Instance of Puerto Rico is hereby conferred the exclusive original jurisdiction to try all cases related to misdemeanors for violation of the provisions of Subtitle E and any regulations promulgated or to be promulgated for their enforcement. If, in any case of misdemeanor for violation of the provisions of Subtitle E or the regulations promulgated or to be promulgated for their enforcement, the accused presents to the consideration of the Judge, not later than the date of trial, a certification issued by the Secretary attesting to having been imposed and having paid an administrative fine for the same violation for which a complaint or accusation has been filed, the Court is hereby empowered to order that such case be shelved and overridden after paying to the Court Clerk any court fees incurred in processing the case up to that time.

**(b)   Tax Evasion.--**

   **(1)**   Any person shall be guilty of a fourth-degree felony if:

      **(A)**   He/she uses tax-exempt alcohol under the provisions of Subtitle E for purposes other than those specifically provided in Subtitle E. Such persons shall be required to immediately pay the taxes imposed by Subtitle E;

      **(B)**   He/she removes from an industrial plant any taxable product on which taxes have not been paid, without first having complied with the provisions of the law and the regulations in effect;

      **(C)**   He/she fraudulently removes or attempts to remove from a bonded warehouse any taxable item;

      **(D)**   He/she adds or mixes, or allows others to add or mix, any ingredient or substances to wine or beer after having paid in full the taxes imposed by Subtitle E, when such action is intended to increase the amount of such products with the purpose of defrauding the Government of Puerto Rico;

      **(E)**   He/she sells or disposes of taxable products, pursuant to the provisions of Subtitle E, or removes them from an industrial plant or maritime, ground, or air carrier company, or from the mail, without having paid the taxes imposed thereon in the manner specified in Subtitle E, or as prescribed by the Secretary; or

      **(F)**   He/she declares his/her products for purposes of Subtitle E in amounts under the true amount of distilled, introduced, imported, transferred, manufactured, or packaged, or who declares an alcohol content or amount or an alcoholic volume that does not conform to Subtitle E.

   **(2)**   If convicted of a felony, he/she shall be punished by a fine of not less than two thousand dollars ($ 2,000) nor greater than twenty thousand dollars ($ 20,000) and imprisonment for a minimum term of one (1) year and a maximum term of three (3) years.

   **(3)**   In all cases, the Secretary may also attach the spirits or alcoholic beverages, machinery, tools, instruments, containers, and any property found in the establishment of the violator and seize and sell the same in public auction for the benefit of the Government of Puerto Rico.

**(c)   Possession of Products on which No Taxes have been Paid.--**

2011 PR H.B. 3070

(1)  Any person who is in possession, or has at his/her disposal, in any location, except for persons duly authorized under Subtitle E, any products subject to taxation under Subtitle E, on which no taxes have been paid, shall be guilty of a misdemeanor and, upon conviction, shall be punished as follows:

(A)  If possession is incidental to manufacturing such products, or if intended for business or distribution purposes, punishment by a fine of not less than two thousand dollars ($ 2,000) nor greater than four thousand dollars ($ 4,000), or by imprisonment for a minimum term of one (1) month and a maximum term of three (3) months for the first violation, and for the second and subsequent violations, by a fine of not less than five thousand dollars ($ 5,000) nor greater than eight thousand dollars ($ 8,000), or by imprisonment for a minimum term of three (3) months and a maximum term of six (6) months.

(B)  In all other cases, punishment by a minimum fine of two thousand dollars ($ 2,000) and a maximum fine of four thousand dollars ($ 4,000), or imprisonment for a minimum term of one (1) month and a maximum term of three (3) months for the first violation, and for the second and subsequent violations, by a fine of not less than four thousand dollars ($ 4,000) nor greater than seven thousand dollars ($ 7,000), or by imprisonment for a minimum term of four (4) months and a maximum term of six (6) months.

(2)  The Secretary shall seize such products and destroy or sell them at public auction for the benefit of the Government of Puerto Rico.

(d)  Any person who has in his/her possession, as the owner or under his/her custody, any substance that has been treated to produce alcoholic fermentation and which, as a result of such treatment, is generating or has generated ethyl alcohol in a sufficient amount so as to convert it into a proper substance for distilling spirits, except for those persons who are duly authorized under Subtitle E, shall be guilty of a misdemeanor and, upon conviction, shall be punished as follows:

(1)  For the first violation, punishment by a fine of not less than one thousand dollars ($ 1,000) nor greater than four thousand dollars ($ 4,000), or by imprisonment for a minimum term of one (1) month and a maximum term of three (3) months.

(2)  For the second and subsequent violations, punishment by a fine of not less than three thousand dollars ($ 3,000) nor greater than eight thousand dollars ($ 8,000), or by imprisonment for a minimum term of four (4) months and a maximum term of six (6) months.

(3)  The Secretary shall seize these substances and destroy them.

(e)  **Omitting or Furnishing False or Fraudulent Information, Denying Reports or Documents.--**

(1)  Any person shall be guilty of a fourth-degree felony if:

(A)  He/she fails to comply with any provision of Subtitle E concerning the books required under such provisions. The Secretary may seize and sell for the benefit of the Government of Puerto Rico, any product which has not been registered;

(B)  He/she fails to furnish to the Secretary any required certification or fails to notify the Secretary of any changes in the status or condition of, or in persons interested in firms or companies engaged in any taxable business under the provisions of Subtitle E, except for corporations;

(C)  He/she submits or causes the false and fraudulent submittal of any of the certifications required under Subtitle E;

(D)  He/she distills, rectifies, manufactures, treats, deals, has in a depository, or having had products subject to taxation under Subtitle E, refuses to furnish, or prevents documents or reports related to such products from being furnished to the Secretary at his/her request; or

(E)  He/she refuses to render such reports as provided in Sections 5021.04(d), 5031.09, 5031.10, 5040.03, 5040.12, and 6053.01(i), upon requirement from the Secretary, or includes in such reports false or fraudulent information as inferred from such reports or other documents in a periodic inspection conducted by the Secretary.

**(2)**  Any person who submits to the Secretary any information or documents which are not authentic or in which amounts for items or valuables which are not accurate or true or which state a number of items or valuables that is not accurate or true related to items received or transferred in any way, shall be subject, in addition to paying the corresponding taxes plus interest, surcharges, or fines as established, to the imposition of an administrative fine equal to two hundred percent (200%) of the value of the alcoholic beverages or distilled spirits moved from one location to another or otherwise transferred.

**(3)**  When the applicable interest, surcharges, or fines arise from information obtained from the periodic inspections conducted by the Secretary, these shall be imposed the next day following the date of the last inspection conducted on the taxpayer, except when the taxpayer is able to furnish reliable attesting written evidence as to the fact that the difference found arose on a later date, in which case, these shall be imposed on such later date.

**(f)  Unauthorized Stills and Distillery Buildings.--**  Any person shall be guilty of a felony-misdemeanor [sic] if:

**(1)**  He/she refuses to disassemble and render unusable, to the satisfaction of the Secretary at his/her request, and within twenty-four (24) hours following such request, any still that he/she has in his/her possession as owner, lessee, or otherwise. The Secretary may recall such still and other devices and destroy them or sell them at public auction for the benefit of the Government of Puerto Rico; or

**(2)**  He/she engages, without being authorized by the Secretary, in the manufacture of distilled spirits or alcoholic beverages in a building located at a distance of one hundred (100) meters or less from another building that houses a rectifying industry or any industry that manufactures products in which alcohol is used.

**(g)  Possession of Unregistered Stills.--**  Any person who has in his/her possession or under his/her custody or at his/her disposal, be it as the owner, lessee, depository, guardian, or in any other capacity, an assembled or disassembled still that is not registered with the Alcoholic Beverage and License Bureau; or who fails to register a still in his/her possession, as a deposit or under his/her custody or at his/her disposal in any way; or who prevents or hinders the Secretary from freely inspecting such still, shall be guilty of a misdemeanor for the first violation; and for the second and subsequent violations, he/she shall be guilty of a felony. The Secretary shall attach any unregistered still, and seize the same and sell it for the benefit of the Government of Puerto Rico, or if he/she deems it convenient, he/she shall destroy such still.

**(h)  Obstruction of Inspection.--**  Any person who prevents or obstructs the inspection to be conducted by the Secretary on business establishments, industrial plants, or products subject to taxation under Subtitle E, shall be guilty of a misdemeanor.

**(i)  Bonds.--**  Any person who engages or continues to engage in the industry of distilling, rectifying, manufacturing, or storing products subject to taxation under the provisions of Subtitle E without having posted a bond in such manner and pursuant to such conditions as Subtitle E requires, shall be guilty of a misdemeanor. The Secretary may also suspend his/her permit for a term of not less than one (1) year or cancel his/her permit definitely.

**(j)  Labeling.--**

**(1)**  Any person shall be guilty of a misdemeanor if:

**(A)**  He/she has in his/her possession within a business establishment or at his/her disposal, beverages which, although duly bottled or canned and labeled pursuant to the provisions of Subtitle E, have been subsequently mixed, altered, or diluted and are not consistent with the description made on the label.

**(B)**  He/she produces, imports, introduces, or has in his/her possession for sale fermented or non-fermented malt beverages and the bottle cap or cylindrical body of the can do not bear the phrases "Puerto Rico," "*Impuesto Pagado*," or "Tax Paid" as required under Subtitle E.

**(2)**  Any person shall be guilty of a third-degree felony if:

Case:17-03283-LTS   Doc#:18803-15   Filed:10/27/21   Entered:10/27/21 03:33:51   Desc:
Debtors Ex. 105   Page 571 of 623
2011 PR H.B. 3070

Page 570 of 622

(A)  He/she produces, imports, or introduces into Puerto Rico alcoholic beverages that are taxable and which are not labeled pursuant to the provisions of Subtitle E; or

(B)  He/she produces, imports, or introduces alcoholic beverages whose alcoholic content is falsely or incorrectly stated on the label.

**(k)  Forgery of Licenses; Destruction of Lock; Installations with the Purpose to Defraud.--**

**(1)**  Any person shall be guilty of a third-degree felony if, with the intent to defraud:

(A)  He/she forges, falsifies, or alters a license or statement or a payment receipt of taxes used under the provisions of Subtitle E; or

(B)  He/she uses, sells, or has in his/her possession any of such licenses or statements or payment receipts of taxes that have been forged, falsified, or altered; or any sheet or stamp that was used or which could be used in preparing them; or

(C)  He/she resumes the use of any license or statement on the payment of taxes which under Subtitle E should be cancelled; or

(D)  He/she provides false information on a license application or on an import or introduction statement pursuant to Subtitle E; and

**(2)**  Any person who:

(A)  Destroys, breaks, or deteriorates or who attempts to destroy, break, or deteriorate any lock, padlock, security seal placed at any distillery, brewery, warehouse, depository, freight car, motor vehicle, container, device, room, or building duly authorized by the Secretary; or who, without breaking or deteriorating them, opens such lock, padlock, depository, freight car, container, or device, or the door or other part of such warehouse, room, or building which has been under lock and key or duly sealed off by the Secretary; or

(B)  Installs in an industrial plant, or in a warehouse devoted to the manufacture or storage of distilled spirits or alcoholic beverages, a tap, a tube, a valve, or any other device or mechanism with the intent to defraud the Government of Puerto Rico.

**(l)  Attempt to Obstruct or Delay Action by the Secretary.--**

**(1)**  Any person who attempts by threat or violence to prevent the Secretary from complying with any requirement imposed on him/her under Subtitle E, or who willingly shows resistance to such official in the discharge of his/her duty by employing open force or violence, shall be guilty of a third-degree felony.

**(2)**  Any person who resists, delays, or disturbs the Secretary in the application of the provisions of Subtitle E, insofar as there is no other penalty established, shall be guilty of a fourth-degree felony.

**(m)  Penalty.--**

**(1)**  Any person who violates or fails to observe the provisions of Subtitle E which are not classified with a particular penalty, shall be guilty of a misdemeanor, and upon conviction, he/she shall be punished by a fine of not less than one thousand dollars ($ 1,000) nor greater than two thousand dollars ($ 2,000), or by imprisonment for a term of not less than thirty (30) days and not greater than six (6) months.

**(2)**  Any person who knowingly assists, or allows, or otherwise helps another person to violate or to fail to observe any provision under Subtitle E, shall be guilty of the same crime committed by the other person as classified under the applicable provision of law. In such cases, the accessory of the crime in question may present as mitigating circumstances related to the applicable penalty, the fact that he/she derived no economic benefit from the transactions or that his/her actions or omissions arose from the regular course of his/her work.

**CHAPTER 5 --**  POWERS OF THE SECRETARY

2011 PR H.B. 3070

**SUBCHAPTER A --** GENERAL PROVISIONS

**Section 6051.01.-- Taxpayer Surveys.--**

The Secretary shall, from time to time, conduct surveys to poll all persons required to pay any taxes or levies, and make listings related to such persons.

**Section 6051.02.-- Examination of Books and Witnesses.--**

    **(a) To Determine Taxpayer's Liability.--**   In order to determine the correction of any tax return or statement, or with the purpose of preparing a tax return when none had been filed, the Secretary may, through any official or employee of the Department of the Treasury, examine any books, papers, records, or memoranda pertinent to the matters that should be included in the tax return or statement, and he/she may require the appearance of the person filing the tax return or statement, or the appearance of any official or employee of said person, or the appearance of any other person who is knowledgeable about the issue in question, and take their declarations with respect to those matters required by law to be included in said tax return or statement, with the authority to administer oaths from such person or persons.

    **(b) To Determine Transferee's Liability.--**   In order to determine the liability in law or in equity of a transferee of a property of any person in connection with any taxes imposed on such person, the Secretary may, through any official or employee of the Department of the Treasury, examine any books, papers, records, or memoranda pertinent to such liability, and he/she may require the appearance of the transferor or the transferee, or of any official or employee of such persons, or the appearance of any other person who is knowledgeable about the issue in question, and take their declarations with respect to such matters, with the authority to administer oaths from said person or persons.

**Section 6051.03.-- Access to Public Shows.--**

Any official or employee of the Department of the Treasury designated by the Secretary shall have free access to locations where public shows, performances, or exhibitions are held to ascertain the number of tickets and to examine and investigate any books and records, as necessary. It shall be the duty of the persons exploiting such public shows, performances, or exhibitions to allow such officials and employees free access to examine any books and records related to such public shows, performances, and exhibitions.

**Section 6051.04.-- Restrictions on Investigations Conducted on Taxpayers.--**

No taxpayer shall be submitted to unnecessary investigations or examinations and only one inspection shall be conducted per taxable year concerning the accounting books of the taxpayer, unless he/she requests otherwise or unless the Secretary, after having investigated, notifies the taxpayer in writing that an additional inspection is necessary.

**Section 6051.05.-- Tax Returns or Statements or Trade Statement.--**

    **(a) Power of the Secretary.--**  If any person fails to file a tax return or statement on the date established by law, the Secretary may prepare the tax return or statement with the information he/she may have and with such other information as he/she may obtain through testimony or otherwise. If any person under bankruptcy or receivership proceedings fails to file a tax return or statement on the date established by law, the Secretary shall file a claim after having evaluated the information he/she may have and any such other information as he/she may obtain through testimony or otherwise.

**(b) Validity of Tax Return.--** Any tax return or statement thus prepared and signed by the Secretary, or by any official or employee of the Department of the Treasury, shall constitute prima facie evidence which shall stand as correct and sufficient for all legal purposes.

**(c) Filing Tax Return after Trade Statement or Return.--** Any tax return or statement filed by the taxpayer after the date the Secretary prepares the trade statement or return, shall be treated as an amended tax return.

**Section 6051.06.-- Power to Administer Oaths and Take Statements.--**

**(a) Officials and Employees of the Department of the Treasury.--** Any official or employee of the Department of the Treasury is hereby empowered to administer oaths and take statements concerning any phase of the application of this Code under his/her charge, or in any other case in which by law or regulations approved thereunder, administering such oaths and taking such statements is authorized.

**(b) Other Persons.--** Any oath or statement required or authorized by this Code or any regulations thereunder, may be administered or taken by any person authorized to administer oaths of a general nature under the laws of the Government of Puerto Rico, the United States, or any state, territory, or possession of the United States, or the District of Columbia, where such oath is administered or such statement is taken, or by any United States consulate official. This subsection shall not be construed to be an exclusive listing of the persons who may administer such oaths or take such statements.

**Section 6051.07.-- Final Agreements.--**

**(a) Power.--** The Secretary or his/her authorized representative is hereby empowered to enter into written agreements with any person concerning the liability of such person, or of the person or estate on behalf of which he/she is acting, related to any taxes imposed by this Code for any taxable period.

**(b) Purpose.--** Such agreement, once executed, shall be final and conclusive, and except when proven that there was fraud or deceit, or misrepresentation of a pertinent fact:

**(1)** The case shall not be reopened concerning the terms agreed upon, nor shall the agreement be modified by any official, employee, or agent of the Government of Puerto Rico, and

**(2)** Such agreement, or any determination, assessment, charge, payment, reduction, refund, or credit made thereunder shall not be nullified, modified, rendered ineffective, or overlooked in any lawsuit, action, or proceeding.

**(c) Penalties.--** The penalties for violations regarding final agreements are set forth in Section 6030 of this Subtitle.

**Section 6051.08.-- Commitments to Pay.--**

**(a)** The Secretary is hereby empowered to enter into written payment agreements whereby he/she pledges to render ineffective any taxes assessed plus additions, including civil or criminal penalties, as may apply in cases related to any taxes imposed by the Puerto Rico Internal Revenue Code of 1994, as amended, the Income Tax Act of 1954, as amended, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, as amended, the Puerto Rico Estate and Gift Act, as amended, or this Code, before such cases are referred to the Department of Justice for prosecution.

**(b) General Requirements.--** Any payment agreement made pursuant to the provisions of this subsection must be authorized by the Secretary of the Treasury or his/her authorized representative, who shall justify the grounds on which the payment agreement was granted and provide the following information in the case record.

**(1)** Amount of assessed taxes;

**(2)** Amount of interest on and additions to taxes;

**(3)** Current amount to be paid under the terms of the payment agreement;

**(4)** Analysis of the financial situation of the taxpayer which shows his/her ability to pay the amount established in the payment agreement;

**(5)** Any other document or proof required by the Secretary under such rules and regulations, as the Secretary may establish.

**(c) In Absence of Resources.--** If the taxpayer fails to show that he/she has sufficient resources to pay the assessed taxes, the Secretary, through his/her authorized representative, shall evaluate and determine whether the payment agreement is the proper method to collect such taxes, absent the resources to ensure collection of the assessed taxes.

**(d) Effects of Offer Application; Prescription.--**

**(1)** Filing an offer application by a taxpayer shall have the effect of interrupting the prescriptive term applicable to all debts included in such offer, and the same shall begin to run as follows:

**(A) Denial.--** Sixty (60) days after the date the Department notifies the denial of such offer.

**(B) Acceptance.--** Sixty (60) days after the date the Department notifies the taxpayer about the revocation of the previously accepted Offer Agreement.

**(2)** Notwithstanding the provisions of Section 6010.06, the Department may collect those debts included in the offer application through demand for payment proceedings or court proceedings within five (5) years following the date the denial of the offer was notified, or within the remainder of the prescriptive term provided in Section 6010.06, whichever is greater.

**(e)** The Secretary is hereby empowered to charge, through regulation, such service fees as he/she deems necessary to evaluate the applications submitted for his/her consideration, pursuant to the provisions of this Section.

## Section 6051.09.-- Compliance with Summons and Demand for Payment.--

Summons and demands for payment issued by the Secretary or by any official or employee of the Department of the Treasury under the provisions of this Code to appear, testify, or produce books, papers, or records shall be enforced pursuant to the provisions of Act No. 27 of March 20, 1951 [32 L.P.R.A. §§ 3171-3173].

## Section 6051.10.-- Administrative Review of Decisions by the Secretary Prohibited.--

**(a)** Absent fraud or a mathematical error, the findings of fact and the decision of the Secretary regarding the merits of any claim made under or authorized by this Code shall not be subject to review by any other administrative or accounting official, employee, or agent of the Government of Puerto Rico, except by such officials as the Secretary may designate for such purposes.

**(b)** Absent fraud or a mathematical error, the granting by the Secretary of any interest on any credit or refund under this Subtitle shall not be subject to review by any administrative or accounting official, employee, or agent of the Government of Puerto Rico, except by such officials as the Secretary may designate for such purposes.

## Section 6051.11.-- Rules and Regulations.--

**(a) Authorization.--**

**(1) In General.--** The Secretary shall promulgate such rules and regulations as necessary for compliance with this Code.

**(2) Amendments to Law.--** The Secretary shall promulgate any such other regulations as necessary by reason of amendment to the law related to taxes imposed by this Code.

**(b)  Retroactive Nature of Regulations and Decisions by the Secretary.--**  The Secretary may prescribe the limit, if any, up to which any regulations or decisions by the Secretary under this Code shall apply without retroactive effect.

**(c)  Circular Letters or Administrative Determinations.--**  The directives, information bulletins, circular letters, administrative determinations, or other less formal regulations (interpretative rules) of a general application issued by the Secretary of the Treasury in reference to the application of this Code or any rules or regulations promulgated thereunder, constitute the official interpretation of the Law, which the Secretary of the Treasury is in charge of interpreting, merit the corresponding deference, and shall be presumed to be correct before the Courts.

## Section 6051.12.-- Filing and Payment by Electronic Means.--

The Secretary may allow or require through such rules as he/she may establish by circular letter or regulations, that any tax returns, statements, or forms required by any Subtitle of this Code, as well as the payment of any taxes imposed by such Subtitles, are to be filed or completed electronically. In such cases, the taxpayer's digital signature or electronic authentication mechanism shall be accepted as valid for all purposes provided in this Code.

## Section 6051.13.-- Public Nature of Taxpayers' Tax Returns and Documents.--

**(a)  Public Document and Inspection.--**

**(1)**  Tax returns filed under this Code with respect to which taxes have been determined by the Secretary or any other document concerning a taxpayer, shall constitute public documents; however, except as provided further, these shall be subject to inspection only by order of the Governor of Puerto Rico, after just cause therefor has been shown, and under the rules and regulations promulgated by the Secretary.

**(2)**  Furthermore, all tax returns filed under this Code shall constitute public documents and shall be subject to public inspection and examination to the extent authorized in the rules and regulations promulgated by the Secretary.

**(3)**  Insofar as the tax returns, statements, and other documents related to a taxpayer are subject to inspection by any person, a regular or a certified copy of any such documents shall be issued by request of said person under the rules and regulations promulgated by the Secretary. The Secretary may issue a certification of the tax information included in the tax return in lieu of the copy of the tax return. The Secretary shall establish reasonable fees for providing such copy.

**(b)  Inspection by Stockholders and Partners.--**  All bonafide holders of registered stock or shares in partnerships who hold one percent (1%) or more of the stock issued by any corporation or the total interest in a partnership, shall be allowed, by request to the Secretary, to examine the annual income tax return of said corporation or partnership and its subsidiaries. For purposes of this subsection, the terms "corporation" and "partnership" shall include a corporation of individuals and a special partnership, respectively.

**(c)  Inspection by Legislative Assembly Committees.--**

**(1)  Committees on Ways and Means and Special Committees.--**

**(A)**  By request of the Committee on Ways and Means of the House of Representatives, the Committee on Ways and Means of the Senate, a Committee selected by the Senate or by the House to investigate tax returns by virtue of a Senate or House Resolution, or by a Joint Committee so authorized by means of a Concurrent Resolution, the Secretary shall furnish such Committee convened in executive session any information of any nature contained or stated in any tax return.

**(B)**  Any of such Committees acting directly as a Committee, or through such examiners or agents as it may designate or appoint, shall have the right to inspect any and all tax returns at such time and in such way as it may so determine.

2011 PR H.B. 3070

**(C)** Any information thus obtained by the Committee may be submitted to the Senate or the House, as the case may be.

**(d) Inspection by Municipal Treasurers or Finance Directors.--** By request of Municipal Treasurers or Finance Directors, the Secretary shall furnish them any such information in tax returns filed under this Code as necessary to determine the municipal license tax that applies to a merchant, as authorized to be imposed and collected under the Municipal License Tax Act, Act No. 113 of July 10, 1974, as amended.

**(e) Penalties for Disclosing Information.--** For the penalties that apply to unlawful disclosure of information, see Section 6030.14.

## Section 6051.14.-- Powers of Officials in Charge of Enforcing Subtitles of this Code.--

**(a) General Rule.--** The Secretary or any of the agents, officers, officials, or employees designated by him/her to enforce the provisions of Subtitles A, C, D, E, and F of this Code, shall have all the powers conferred by the laws of Puerto Rico to Law Enforcement Officers, including, but not limited to the power of the officers of the Puerto Rico Police to possess, carry, bear, transport, and operate arms under the provisions of Act No. 404 of September 11, 2000, as amended [25 L.P.R.A. §§ 455 et seq.], known as the "Puerto Rico Weapons Act," as well as the power to make arrests pursuant to the provisions of Rule No. 11 of the Rules of Criminal Procedure of 1963, for the General Court of Justice, as amended.

**(b) Bonded Officials and Employees.--** The Secretary shall designate the officers, officials, and employees entrusted with the administration of the Subtitles in this Code who, in his/her judgment, should be bonded.

## Section 6051.15.-- Expenses Related to Detection of Fraud and Undervaluation of Taxes.--

**(a) In General.--**

**(1)** The Secretary is hereby authorized to pay such amounts as he/she may deem necessary, under the criteria he/she establishes through regulation, circular letter, or other administrative determination of a general nature, in order to:

**(A)** Detect tax undervaluation and insufficiency; or

**(B)** Detect and prosecute any persons guilty of violating the Code or in complicity or connivance for such purpose, in those cases in which such expenses are not otherwise covered by law.

**(2)** Any amount payable under this subsection, shall be payable from the revenues generated by amounts collected by virtue of the information furnished, and any amounts thus collected shall be available for the payments provided in this subsection.

**(b) Compensation for Informants.--**

**(1) General Rule.--** If the Secretary institutes an administrative or a judicial action as described in subsection (a) of this Section, based on information brought to the attention of the Secretary by an individual, such individual shall receive, subject to the provisions of paragraph (2) of this subsection, a compensation of at least fifteen percent (15%), but not more than thirty percent (30%) of the amount collected (including penalties, interest, additions to taxes, and other additional amounts) by such action (including any action related thereto) or by any transaction as a consequence of such action. The determination of the compensation granted by the Secretary shall depend on the extent to which such individual made a substantial contribution to such action.

**(2) Compensation for Non-Substantial Contributions.--**

**(A) In General.--** In the event that the action described in paragraph (1) is an action whereby the Secretary determines that such action was mostly based on information from specific allegations (other than the information furnished by the individual described in paragraph (1) of this subsection) as a result of an administrative or court hearing, a government report, a hearing, audit or

investigation, or the press, the Secretary may grant such amount as he/she may deem appropriate, but in no case shall the amount be greater than ten percent (10%) of the amount collected (including penalties, interest, additions to taxes, and other additional amounts) or by any transaction as a consequence of such action, taking into account the importance of the information furnished and the importance of the role of such individual and his/her legal counsel in such action.

**(B) Exception When the Individual is the Original Source of Information.--** Subparagraph (A) shall not apply when the information that causes the action described in paragraph (1) to be filed was originally furnished by the individual described in paragraph (1).

**(3) Reduction or Denial of Compensation.--** If the Secretary determines that a compensation claim under paragraph (1) or (2) of this subsection (b) is claimed by an individual who planned and filed the actions that led to tax undervaluation and insufficiency as described in paragraph (2) of subsection (a) of this Section, the Secretary may reduce or eliminate such compensation. If such individual is convicted of criminal conduct arising from his/her role, as described in the preceding sentence, the Secretary may eliminate such compensation.

**(4) Right to Contest a Determination.--** Any determination with respect to compensation under paragraphs (1), (2), and (3) may be contested by filing a complaint with the Office of the Secretary of Adjudicative Procedures of the Department, made under Act No. 170 of August 12, 1988, as amended [3 L.P.R.A. §§ 2101 et seq.], known as the "Uniform Administrative Procedures Act of the Commonwealth of Puerto Rico." Such complaint shall be filed within thirty (30) days following the date the Secretary notifies such determination.

**(5) Application under this Subsection.--** This subsection shall apply to:

**(A)** Any action of a taxpayer, but in the case of an individual, only if the individual's gross income exceeds two hundred thousand dollars ($ 200,000) for any taxable year subject to such action; and

**(B)** If the taxes, penalties, interest, additions to taxes, and other additional amounts in dispute exceed two million dollars ($ 2,000,000).

**(6) Additional Rules.--**

**(A) Unnecessary Contracting.--** Entering into a contract with the Department of the Treasury is unnecessary to receive compensation under this subsection.

**(B) Representation.--** Any individual described in paragraph (1) or (2) may be represented by an attorney or a specialist.

**(C) Information.--** No compensation may be granted under this subsection unless such information is provided under penalty of perjury.

## Section 6051.16.-- Limitations to the Powers of the Secretary.--

None of the provisions of this Code authorizes or empowers the Secretary to establish any type of game of chance, game, or lottery that has not been expressly authorized.

## SUBCHAPTER B -- EXCISE TAXES

## Section 6052.01.-- Powers of the Secretary.--

**(a)** For purposes of the application and administration of this Subtitle, and in addition to any other duties and powers established therein, the Secretary is hereby empowered to:

**(1)** Examine records, documents, properties, work or business sites, premises, inventories, or any other material related to items, transactions, businesses, trades, or activities subject to taxes and fees, as established by Subtitle C. Any person in charge of any establishment, work or business sites,

premises, or objects subject to examination and inspection shall facilitate any examination as required by the Secretary. The absence of the owner or head of an establishment shall not constitute cause or justification to prevent such examination from being conducted.

**(2)** Inspect luggage and items introduced into Puerto Rico by travelers from abroad when there is reason to believe that the items being introduced are subject to taxation under Subtitle C. This inspection or examination may be double-checked at any time with no need for consent of the traveler, consignee of the person claiming ownership of such items, or the carrier of such items.

**(3)** Require any person to take and submit an inventory of all or certain items in stock that are subject to taxation under Subtitle C that are in his/her possession or which are related to businesses or trades subject to payment of license fees.

**(4)** Review, from time to time, the bonds posted by taxpayers pursuant to the provisions of Subtitle C and require a raise in their amount or the posting of a new bond when, in his/her judgment, the bond posted does not suffice to guarantee payment of taxes plus interest, surcharges, and administrative fines that could be imposed on the bonded taxpayer.

**(5)** Attach and sell at public auction in order to collect taxes, surcharges, or interest and administrative fines owed, any items introduced into Puerto Rico that are not claimed thirty (30) days after their date of introduction. Any amount collected in excess of the amount owed shall be refunded to the taxpayer.

**(6)** Revoke the license of any person who fails to comply with the provisions of Subtitle C or the regulations thereunder. The Secretary may, after such revocation, deny the issue of a new license during such period as he/she, in his/her judgment, may deem necessary. This action shall not constitute an impediment for any other Court or administrative proceeding authorized by law.

**(7)** Seize and sell at public auction or destroy:

**(A)** Any carton or pack of cigarettes that lacks its identification label.

**(B)** Any item that has not been canned or bottled pursuant to Subtitle C.

**(C)** Any vehicle, watercraft, or aircraft devoted to the transportation of items on which the corresponding taxes have not been paid.

**(D)** Any item for use or consumption which has had the manufacturer's serial number or any other identification number removed, altered, mutilated, or otherwise destroyed.

**(E)** Any item displayed for sale in a fixed location or by an itinerant merchant, when the merchant does not hold the corresponding internal revenue license or when payment of the taxes imposed by Subtitle C cannot be verified.

**(F)** Any item introduced into Puerto Rico by any means that is not duly described in the shipping documents or not declared, in violation of the Secretary's requirement, prior to its release from the point of arrival or from the custody of the carrier, as the case may be.

**(G)** Any coin or token-operated entertainment machine or device, as described in Section 3050.02(a), when such machines or devices are being operated without a license or with an expired license, in cases of recurrent default in the payment of the license fees or in cases in which said machines or devices are being operated with the wrong type of license. He/she may also seize and destroy any coin or token-operated entertainment machine or device whose operation is illegal pursuant to the provisions of Act No. 221 of May 15, 1948, as amended [15 L.P.R.A. §§ 71 et seq.], known as the "Games of Chance Act" or when inspection on the lawfulness of such machines or devices is somehow obstructed.

**(8)** Inspect, at any time he/she deems it necessary and convenient, the contents of any trailer that arrives in Puerto Rico and he/she may, at any time, close, seal off, or place a security seal on any trailer to examine any use and consumption items introduced.

**(9)** Arrest any person caught violating any provision of Subtitle C or the regulations approved thereunder and to interrogate such person and take him/her before the competent judge for the pertinent court action.

**(10)** Retain, for the length of time necessary, any document obtained or furnished pursuant to Subtitle C, in order to use such documents in the investigations or proceedings established under Subtitle C or to be filed with the Department of the Treasury.

**(11)** Administer oaths and certify statements, tax returns, or other documents.

**(12)** Approve and adopt rules and regulations as necessary for the enforcement of Subtitle C.

**(13)** Delegate to any officer, official, or employee of the Department of the Treasury such powers and duties as he/she may deem necessary and convenient to discharge any function or authority conferred under Subtitle C, except rulemaking authority.

**(14)** Limit the effects of his/her administrative decisions to taxable transactions after such action has been taken in eminently contentious cases in terms of the extent and the nature of a tax or the rate applicable to a certain item or other factors that may affect the amount of tax. This provision shall not apply in cases in which the taxpayer has passed on the tax to the sales price.

**(15)** Reasonably extend the term fixed in Subtitle C to discharge any duty or obligation or to take action under a conditional exemption or otherwise if, in his/her judgment, the imposition of a restricted term would entail a penalty or undue hardship under the circumstances pertaining to each case, and when granting such extension does not compromise the best interest of the Government of Puerto Rico, and when there is no indication of negligence on the taxpayer's part. Except as otherwise provided in Sections 3040.03 of Subtitle C and 6030.07 of this Subtitle, the Secretary may not exercise this discretionary power as to the terms of payment. The Secretary may impose any conditions he/she deems appropriate to grant a time extension on such term.

**(16)** Enable and authorize, in such cases as he/she may deem necessary, bonded warehouses that shall be governed by the regulations to be adopted jointly by the Public Service Commission of Puerto Rico and the Department of the Treasury, and require that any person who operates a bonded warehouse posts a bond for the amount deemed appropriate so that such person may keep custody over taxable items on which no taxes have been paid. Such bond shall be posted in the time and manner as shall be established through regulations.

**(17)** Enter into contract with any taxpayer, in order for the fiscal officers and officials of the Department of the Treasury to conduct, outside regular business hours, inspections and oversight procedures on taxable transactions, and the amount charged on account of such services shall be covered into the funds of the Department of the Treasury for its operations.

**(18)** Appoint examining officials to manage administrative hearings, who shall render their reports and recommendations to the Secretary. The functions and procedures of these examining officials shall be established through regulation.

**(19)** Deny authorization to take possession of items introduced from abroad.

**(20)** Allow, by means of rules he/she shall establish by circular letter or regulation, the filing of any tax returns, statements, or forms required under Subtitle C, as well as the payment of excise taxes and license fees established in said Subtitle, by electronic means. In such case, the taxpayer's digital signature or electronic authentication mechanism shall be accepted as valid for all the purposes provided by this Code.

**SUBCHAPTER C --** TAXES ON ALCOHOLIC BEVERAGES

**Section 6053.01.-- Powers of the Secretary.--**

**(a)** Subtitle E shall be administered and enforced by the Secretary:

**(1)**  The Secretary shall be in charge of inspecting distilleries, breweries, rectifying plants, factories, business establishments, and bonded warehouses subject to taxation and license fees, as provided under Subtitle E, as well as assessing, collecting, liquidating, and reporting such taxes and fees; and apprehending, arresting, and prosecuting persons who are unlawfully distilling, manufacturing, importing, introducing, shipping, exporting, selling, holding in possession, or transporting products subject to the provisions of Subtitle E.

**(2)**  The Secretary shall delegate the enforcement of Subtitle E to the Alcoholic Beverage and Licensing Bureau of the Department of the Treasury.

**(3)**  The Secretary is hereby empowered to appoint agents, officers, officials, and employees as he/she deems necessary for the enforcement thereof.

**(b)  Rules and Regulations.--**  The Secretary is hereby authorized to approve such rules and regulations as necessary to render Subtitle E effective, and such regulations, once they have been promulgated, shall have force of law.

**(c)  Authorization of Public and Private Bonded Warehouses.--**  The Secretary shall allow, at his/her discretion, the establishment of public or private bonded warehouses.

**(d)  Administration of Federal Regulations.--**  The Secretary shall administer Federal regulations concerning distillation, rectification, bottling or canning, and shipping of distilled spirits and alcoholic beverages bound for the United States. For such purpose, he/she shall enter into agreements with the United States Commissioner of Internal Revenue or with any other competent Federal official.

**(e)  Regulations on Alcoholic Beverage Bottling.--**  The Secretary shall regulate the bottling of alcoholic beverages and their traffic. He/she shall also determine the size and kind of receptacles and containers for taxable products under Subtitle E that are stored in rectifying plants, warehouses, and factories, to be subsequently removed, transported, transferred, or shipped. The Secretary shall also require such markings, labels, and numbers as he/she may provide to be affixed to such receptacles or containers, as well as the way in which such markings, labels, and numbers are to be effaced and destroyed.

**(f)  Alterations to Industrial Plant Buildings and Equipment.--**  The Secretary may require that any person engaged in the business of distilling, rectifying, bottling or canning, manufacturing, transporting, or selling any taxable product under the provisions of Subtitle E make any such alterations in the buildings, stills, utensils, cauldrons, piping, containers, and devices in general as may be necessary to properly protect the Government of Puerto Rico against fraud. He/she may also require that such persons install devices to measure and weigh, tanks, and containers for the finished product subject to taxation, and any other devices and equipment as necessary.

**(g)  Regulation of Production, Import, and Distribution of Distilled Spirits and Alcoholic Beverages.--**  The Secretary shall be empowered to regulate the production, manufacture, export, and shipping outside Puerto Rico, as well as the import, introduction, sale, transportation, and use of distilled spirits and alcoholic beverages intended for human consumption. He/she shall also regulate distilled spirits for industrial, scientific, medicinal, and chemical purposes, as well as the denaturation of spirits and the use thereof. He/she shall furthermore be empowered to require that any person who disposes of molasses or cane sugar or any other substance with the characteristics of those substances commonly used in manufacturing distilled spirits, render a report on the disposal of such substances, in such way and manner as said official shall establish.

**(h)  Power to Enter Distilleries, Plants, Factories, and Business Establishments.--**  The Secretary is hereby empowered to enter any distillery, factory, plant, business establishment, or warehouse to conduct any pertinent investigations, subject to the provisions of Subtitle E.

**(i)  Gauging of Distilled Spirits.--**  The Secretary may gauge distilled spirits and alcoholic beverages in order to assess taxes as established under Subtitle E, and to determine the productive capacity of any

mixture, must, filtering, or ferment that has been used or is to be used to produce distilled spirits. He/she shall also establish the procedure to inspect, weigh, mark, and gauge such spirits and alcoholic beverages.

**(j)  Oversight by the Secretary.--**  The Secretary may oversee the distillation and rectification of distilled spirits and the manufacture, bottling or canning, import, introduction, export, and shipping of distilled spirits and alcoholic beverages.

**(k)  Methods for Chemical Analyses.--**  In order to determine whether a spirit or an alcoholic beverage meets the requirements established under Subtitle E or such regulations as the Secretary shall promulgate, the official analysis methods of the Association of Official Agricultural Chemists, or any other method that is appropriate for such purposes and acceptable to the Secretary, shall be used.

**(l)  Provision on Federal Taxes Collected on Puerto Rican Rum Shipped to the United States.--**

**(1)**  The Secretary is hereby directed to set aside, in a Special Account, up to twenty-five percent (25%) of the amounts that the Government of the United States returns to the Treasury of the Government of Puerto Rico on account of the tax on rum bottled in Puerto Rico or transported in bulk from Puerto Rico to the United States and sold to consumers in the United States. The Governor of Puerto Rico, upon recommendation from the Secretary and the Government Development Bank for Puerto Rico, may increase such cap up to forty-six percent (46%) through an Executive Order to such effect, after December 31, 2011, when such increase is necessary or convenient to enable rum producers in Puerto Rico to compete in the market abroad on equal terms with their competitors in other United States jurisdictions. Notwithstanding the foregoing, the Treasury of the Commonwealth of Puerto Rico may never withhold an amount that is less than fifty-four percent (54%) of the amounts covered over by the United States Government on account of the tax on rum bottled in Puerto Rico and sold in the United States or transported in bulk from Puerto Rico to the United States and sold to United States consumers.

**(2)**  The amounts set aside from such rebates, as provided herein, shall be made available in the Commonwealth Treasury to incentivize the production and promotion of Puerto Rican rum, including, but not limited to the promotion and marketing of Puerto Rican rum in the market abroad, to invest in agricultural, industrial, or business infrastructure projects necessary for the development of the Puerto Rican rum industry, to support local rum industry participants by granting production incentives, marketing and promotion incentives, and incentives to build and improve their infrastructure, including incentives for the subsidiaries and/or affiliates of such participants to be used for the benefit of the local industry, in order to increase the amount of funds that the Commonwealth of Puerto Rico shall appropriate annually for such purposes. Provided, that the authorization to disburse such funds shall be approved by the Governor or the official onto whom he/she delegates by means of the corresponding order of payment and an executive budget. Provided, further, that quarterly advances may be made of the amounts that are to be set aside from estimate revenues on account of such rebates. At the close of the fiscal year, the Secretary shall make a final liquidation of the amount corresponding to such executive budget, taking as basis the actual revenues and the advances made during the fiscal year, and shall deposit the remainder, if any, into the Special Account, and any unencumbered surplus into the General Fund. When advances exceed actual revenues, the remainder shall be withheld from the amounts to be set aside in the following fiscal year.

**(3)**  No levy, municipal license tax, excise tax, or any other charge established under the laws of the Commonwealth of Puerto Rico shall be applied to the incentives granted under subsection (l)(2) of this Section.

**(4)**  The Government Development Bank for Puerto Rico, the Department of the Treasury of Puerto Rico, the Department of Economic Development and Commerce, the Puerto Rico Industrial Development Company, and the Department of Agriculture are hereby empowered to conduct any such actions, appearances, transactions, and/or to execute any such instruments and documents, whether public or private, as convenient and necessary to implement the purposes described in subsection (l) of this Section.

**(5)**   The Governor of Puerto Rico, through an Executive Order to such effect, may designate the agencies and instrumentalities of the Government of Puerto Rico, in addition to those already designated in subsection (l)(4) of this Section, as he/she may deem necessary to implement the purposes, programs, and activities contemplated under this subsection (l).

**(6)**   The Government Development Bank for Puerto Rico, and any of its subsidiaries and affiliates, are hereby empowered to incur obligations and/or issue bonds, in order to finance the implementation of the purposes, programs, and activities contemplated in this subsection (l) and to pledge the funds set apart under this subsection (l) to secure payment of the principal and interest concerning such obligations and/or bonds. Such funds set aside may be used to pay interest and to amortize the obligations and/or bonds authorized hereunder.

**(m)   Filing and Paying Taxes Electronically.--**   The Secretary is hereby authorized to allow or require, through such rules as he/she shall establish by a circular letter or regulations, that any statements or forms required under Subtitle E, as well as the payment of taxes on alcoholic beverages and the license fees established under said Subtitle, be filed or made electronically. In such cases, the taxpayer's digital signature or electronic authentication mechanism shall be accepted as valid for all purposes as provided in this Code.

## Section 6053.02.-- Fixing the Amount of Bonds.--

**(a)**   The Secretary shall fix:

**(1)**   The amount of the bond to be posted for any private or public bonded warehouse and for any industrial plant;

**(A)**   The amount of the bond shall be based on a specific percentage of the value of taxes collected on stored, rectified, bottled or canned, manufactured, or distilled products;

**(B)**   In the case of warehouses, the amount of the bond shall be determined based on the capacity and effective use thereof;

**(C)**   In the case of rectifiers, bottlers or canners, manufacturers, and distillers, the amount of their bonds shall be determined based on the average of gallons of bottled or canned alcoholic beverages or distilled spirits, respectively, during the last fiscal year; and

**(2)**   The amount of the bond to be posted by distillers, rectifiers, and manufacturers, in addition to the bond required in Section 5031.07 of Subtitle E, to secure the taxes determined or computed on distilled spirits or alcoholic beverages to be removed from industrial plants for the purposes established under Subtitle E.

**(b)   Approval of Bond.--**   Bonds shall be approved by the Secretary and these shall constitute sureties from duly accredited insurance companies or other securities, as the Secretary may determine. These bonds shall respond for taxes, interest, and surcharges, as well as administrative fines imposed for violating the provisions of Subtitle E and its regulations.

**(c)   Exemption from Posting Bond.--**   The agencies of the Government of the United States, the agencies of the Government of Puerto Rico, the United States Armed Forces, and international organizations are hereby exempt from the requirement of posting bond.

**(d)   Waiver of Bond.--**   The Secretary may waive any person authorized to acquire duty-free alcohol to be used or dispatched by medical prescription or for official use in hospitals, clinics, and laboratories pursuant to Section 5023.02 of Subtitle E.

**(e)   Power to Refuse to Approve Bond.--**   The Secretary may refuse to approve a bond when the chief officer or his/her business representatives have been convicted of a felony against internal revenue laws or regulations, or when the guarantor insurance company has not been recognized by the Insurance Commissioner of Puerto Rico.

**(f)  Bond Register; Certification of Statements and Inspection of Establishments.--**  The Secretary shall register the bonds posted by taxpayers, as required under Subtitle E, certify statements, inspect establishments, and examine products subject to taxation and license pursuant to Subtitle E, or which could be subject to taxation in the future under other laws.

## Section 6053.03.-- Judicial Provisions.--

**(a)  Search Warrant.--**  Any judge, pursuant to the provisions of the Rules of Criminal Procedure of 1963, may issue a search warrant if he/she finds probable cause as to the existence of spirits or alcoholic beverages manufactured or imported in violation of the provisions of Subtitle E, as well as any other property that could be use in connection with the unlawful manufacture, sale, or transport thereof, and such products may be removed, by means of the aforementioned warrant, from any building or establishment where they are concealed and be seized and made available to the judge to whom the search warrant is to be returned after having been duly served. The procedure to be followed for any searches conducted under this Subtitle shall be that established in the Rules of Criminal Procedure of 1963.

**(b)  Judicial Protection for Permit Holders.--**  The holders of permits obtained under the provisions of Subtitle E are hereby empowered to resort to the Court of First Instance, by means of any regular or special proceedings, as necessary, to claim protection from violations of Subtitle E by other persons and after having posted a bond of not less than five thousand dollars ($ 5,000) nor greater than thirty thousand dollars ($ 30,000).

**(c)  Clerks of the Parts of the Court of First Instance Shall Send Copies of Judgments to the Secretary.--**  The Clerks of the Parts of the Court of First Instance of Puerto Rico shall send to the Secretary copies of the judgments pronounced by judges in cases of violations of Subtitle E within a term of ten (10) days from the date the judgment was pronounced.

## Section 6053.04.-- Final Provisions.--

**(a)  Taxes Imposed by Subtitle E Shall Prevail Over Municipal License Taxes and Taxes.--**

**(1)**  No municipal government of Puerto Rico may impose and collect any local taxes on products subject to taxation pursuant to the provisions of Subtitle E. None of the provisions herein may be construed to repeal, in whole or in part, Act No. 113 of July 10, 1974, as amended [21 L.P.R.A. §§ 651 et seq.], known as the "Municipal License Tax Act."

**(2)**  When the imposition of a tax on account of municipal licenses is in conflict with the taxes imposed by Subtitle E and it is not possible to impose both, it shall be understood that the taxes imposed by Subtitle E shall prevail.

**(b)**  No law that authorizes exemption from taxes, or by virtue of which a tax exemption is granted, shall be applied in whole or in part to taxes and license fees established in Subtitle E.

## SUBCHAPTER D -- SALES AND USE TAX

## Section 6054.01.-- Powers of the Secretary under Subtitle D.--

**(a)**  For purposes of the application and administration of Subtitle D, and in addition to any other duties and powers established therein, the Secretary is hereby empowered to:

**(1)**  Examine records, banking statements, documents, properties, business sites, premises, inventories, or any other material related to items, transactions, business, or activities subject to the taxes and fees established under Subtitle D. Any person in charge of any establishment, business sites, premises, or objects subject to examination or investigation shall facilitate any examination as required by the Secretary. Non-presence of the owner or head of an establishment shall not constitute a cause or a justification to prevent such examination from being conducted.

**(2)** Establish, through regulations, circular letter, information bulletin, or any other determination of a public nature that he/she issues to such effect, any conditions concerning the granting of merchant registration certificates, certificates of exemption from payment or withholding of taxes imposed by Subtitle D. In order to ensure due compliance with the terms, provisions, and purposes of Subtitle D, the Secretary may impose, among any others which he/she may deem necessary, the following requirements and conditions:

**(A)** To require the taxpayer to file tax returns and reports and to keep accounting books and files, as well as any other document or evidence he/she may deem pertinent;

**(B)** To require, under the parameters provided by the Secretary, the posting of a bond in the amount of any tax, administrative fine, surcharge, or interest that could apply under Subtitle D;

**(C)** To require periodic inspections or oversight operations, or of any other nature (including by fiscal terminals, applications, or other electronic media), on, among others, points of sale, business sites, trailers, containers, storage areas, and exhibition areas related to taxable items.

**(3)** Review, from time to time, the bonds posted by taxpayers pursuant to the provisions of Subtitle D, and require the increase in their amount or the posting of a new bond when, in his/her judgment, the bond posted does not suffice to secure payment of taxes plus interest, surcharges, and administrative fines that could be imposed on the bonded taxpayer.

**(4)** Inspect and oversee merchants by means of fiscal terminals, applications, mechanisms, devices, the IVU-Lotto program, or other electronic means, as well as require the installation, connection, and use of such equipment, applications, programs, mechanisms, or devices in business as required by the Secretary through regulations, circular letter, information bulletin, or administrative determination of a general nature. No person or merchant may alter, interfere, disconnect, or destroy the applications, equipment, programs, applications [sic], mechanisms, or devices required under this paragraph, or prevent, interfere, object to, or obstruct the access of the Secretary or any of his/her authorized agents to the installation, connection, inspection, or any other procedure conducted by the Secretary or his/her authorized agent in connection with the inspections and oversight operations authorized under this paragraph.

**(5)** Revoke the internal revenue license of any person who fails to comply with the provisions of Subtitle D or its regulations after having conducted administrative procedures pursuant to Act No. 170 of August 12, 1988, as amended [3 L.P.R.A. §§ 2101 et seq.], known as the "Uniform Administrative Procedures Act of Puerto Rico," the Secretary may, after having revoked such license, deny the issue of a new license for such period as he/she may deem necessary in his/her judgment. This action shall not constitute an impediment for any other court proceedings or administrative procedures authorized by law.

**(6)** Retain, for as long as necessary, any document obtained or furnished pursuant to Subtitle D, in order to use such documents in the investigations and procedures established under Subtitle D, or to be filed at the Department of the Treasury.

**(7)** Administer oaths and certify statements, tax returns, or other documents.

**(8)** Approve and adopt any such rules and regulations as necessary for the administration and application of Subtitle D.

**(9)** Delegate to any officer, official, or employee of the Department of the Treasury any such powers and duties as he/she may deem necessary and convenient to discharge any function or authority conferred under Subtitle D, except rulemaking authority.

**(10)** Limit the effects of his/her administrative decisions to taxable transactions after having taken such action in eminently contentious cases regarding the extent and nature of the sales and use tax or other factors that affect the amount imposed as tax.

**(11)**   Reasonably extend the term fixed by Subtitle D to discharge any duty or obligation or to take action under a conditional exemption or otherwise if, in his/her judgment, imposing the restrictive term would entail a penalty or undue hardship under the circumstances pertaining to each case, and when granting such extension does not compromise the best interest of the Government of Puerto Rico, and when there is no indication as to negligence on the taxpayer's part. Except as otherwise provided by this Subtitle of the Code, the Secretary may not exercise this discretionary power with regards to terms of payment. The Secretary may impose any such conditions as he/she may deem appropriate for granting the time extension.

**(12)**   Enter into contract with any taxpayer in order for fiscal officers and officials to conduct, outside regular business hours, inspections and oversight operations on taxable transactions, and the amount charged for such services shall be covered into the funds of the Department of the Treasury for its operations.

**(13)**   Appoint examining officials to conduct administrative hearings and render their reports and recommendations to the Secretary. The functions and procedures for these examining officials shall be established by regulations.

**(14)**   Allow or require, through any such rules as he/she shall establish by circular letter or regulations, the filing of any tax returns, statements, or forms required under Subtitle D, as well as the payment of the sales and use tax established in such Subtitle, electronically. In such cases, the taxpayer's digital signature or electronic authentication mechanism shall be accepted as valid for all the purposes provided by the Code.


**CHAPTER 6 --**   PROCEDURES FOR DEMAND FOR PAYMENT, ATTACHMENT, AND SALE OF TAXPAYER'S PROPERTY


**Section 6060.01.-- Tax Lien Certification; Attachment and Sale of Debtor's Property.--**

**(a) In General.--**

**(1)**   If any person fails or refuses to pay any taxes, levies, fines, interest, surcharges, and penalties within the term established in this Code, the Secretary shall proceed to collect any such taxes, fines, interest, surcharges, and penalties owed to the Department by attaching and selling the property of such debtor that is not exempt from attachment in the manner provided further.

**(2)**   The debt for unpaid taxes, plus fines, interest, penalties, and costs, shall constitute a lien in favor of the Government of Puerto Rico on all real and personal properties of the debtor. Before proceeding to attach and sell the property of such debtor as set forth in this Code, or simultaneously with such attachment, the Collector may file with the Property Registry of the place of residence of the debtor, or with those where the real property of the debtor is located, a Tax Lien Certification.

**(3)**   The Tax Lien Certification mentioned in paragraph (2) shall contain the following detailed information: the name and place of residence of the delinquent taxpayer, if known; the amount of taxes, fines, interest, surcharges, and penalties owed by such taxpayer, serial number of the notice, and the fact that the lien shall be valid in favor of the Government of Puerto Rico.

**(4)**   The certification shall constitute a notice of lien on all real properties of such debtor located within the territorial delimitation of the Section of the Property Registry in which the same are located, for the amount of unpaid taxes, plus fines, interest, surcharges, penalties, and costs.

**(5)**   A copy of the certification shall be sent to the debtor via certified mail with acknowledgment of receipt to his/her last known address.

**(6)**   The Secretary is also empowered to require that any person in possession of any property, proprietary rights, credits, or money payable to the taxpayer on any grounds, including salaries, accounts receivable, or bank deposits belonging or payable to the taxpayer, which are not exempt from

attachment, retain from such property or rights such amounts as the Secretary shall notify him/her in order to cover the outstanding tax debt.

**(b)** Any debtor whose personal property has been attached in order to collect taxes may resort, within the term established in the attachment notice, to the Court of First Instance to contest the same.

**(c) Lien on Property or Rights.--**

**(1)** The notice and demand made by the Secretary to the person in possession of the property or any requirement to pay to the taxpayer any amount of money on any grounds shall constitute a lien on such property or rights that the depositary shall be required to withhold until the amount owed is paid in full to the Secretary.

**(2)** The attachment of wages, salaries, accounts receivable, bank deposits, or income on any grounds which belong or are payable to the taxpayer, and which are not exempt from attachment, shall constitute an ongoing preferred lien on such wages, salaries, accounts receivable, bank deposits, or income on any grounds to be earned until the amount owed is paid in full to the Secretary.

**(3)** Any depositary or person in possession of money or any other personal property owed or belonging to the taxpayer, who disposes or allows the disposal of such property or rights, shall be required to pay the amount of the property's value. He/she shall also be required to pay a special penalty equal to fifty percent (50%) of the assessed debts, fines, interest, surcharges, and penalties owed. However, the amount of this special penalty shall not be creditable against such debt. Any person who retains such property, rights, or belongings shall not incur any obligation with the taxpayer, insofar as he/she so proceeds in compliance with an order from the Secretary to such effects.

**(d)** Notwithstanding the foregoing provisions, the Secretary may postpone the sale of a real property subject to such proceedings on account of an assessed debt for elderly taxpayers or taxpayers suffering from a terminal illness or permanently disabled, and who present the medical certificate attesting to such circumstances, and when the following circumstances concur:

**(1)** The property in question is the only real property and permanent residence of the taxpayer; and

**(2)** The taxpayer does not have sufficient property or income to pay the assessed debt in full and is not able to avail him/herself of a payment plan.

**(e)** The term established to cancel writs of attachment on account of taxes in Section 145 of the Mortgage and Property Registry Law, shall be stayed until the death of the taxpayer or until the condition which warranted the postponement of the sale of the real property no longer persists.

**(f)** The Secretary shall adopt such rules and regulations as necessary to postpone the collection of the sale of the real property of the debtor in the cases provided in subsection (d) of this Section, including the definition of the term "elderly" and the criteria on how to determine that a taxpayer does not have sufficient property or income to pay in full or for a payment plan, per the experience of the Department, and the procedures and terms to request and decree the sale of a property on account of the conditions established above.


## Section 6060.02.-- Procedures for Attachment of Personal and Real Property.--

**(a)** Immediately after the terms granted in this Code have expired, the Secretary shall dictate a written notice of attachment, which shall state the amount owed by the taxpayer, and he/she shall proceed to attach the delinquent debtor's property. Such notice shall state the amount of taxes, levies, fines, interest, surcharges, and penalties due and unpaid, and the amount of the fees for the dunning agent, as provided further.

**(b)** The Secretary shall notify the debtor by giving him/her a copy of the notice and apprising him/her that if he/she does not pay the taxes in full within a term of thirty (30) days from the date of notice, the property thus attached or the part thereof which is strictly sufficient to pay off the debt, shall be sold at public auction as soon as possible after such term without further notice.

**(c)**  If any debtor or any of his/her relatives or dependents refuses to surrender to the Secretary the attached property upon demand once the thirty (30)-day term set forth above has expired, or if after having executed the attachment, he/she sells, conceals, destroys, cedes, assigns, or otherwise transfers said property with the purpose of rendering the attachment void or evading the payment of taxes, he/she shall be guilty of a third-degree felony.

**(d)**  The attachment shall be executable as soon as notice has been given by giving a copy of the notice to the debtor or any family member in charge of such property.

**(e)**  If the Secretary is unable to find the debtor or any family member in charge of such property, he/she shall give notice of the attachment to the debtor by certified mail with acknowledgment of receipt to the debtor's address appearing in or surmised from the documents, records, or database of the Department in the Collections District where the attachment is to be executed and attachment notice is served in the manner stated above, shall constitute prima facie evidence that said delinquent taxpayer was notified about the attachment, and notice in any of such manners shall be as valid and effective as if received personally by the debtor.

**(f)**  As soon as the attachment notice is served in the manner set forth above, the Secretary shall be empowered to seize the attached property or close down the business or premises if he/she deems it necessary. Upon serving the attachment notice, the Secretary shall be empowered to enter the home or residence of the debtor if necessary and if such debtor agrees, and in the event that he/she does not give his/her consent, a court of justice shall be requested to issue an order authorizing the entry into the home or residence of the debtor with the sole purpose of serving the notice mentioned above.

**(g)**  If any debtor or his/her family members or dependents under the circumstances described in subsection (f) offers any resistance to any official of the Department after the court order has been shown, he/she shall be guilty of a misdemeanor.

**(h)**  It shall be the duty of police authorities or its officers to assist the Secretary to the extent necessary in order for the Secretary to properly discharge his/her duties as required under this Code.

**(i)**  The attached property may be deposited, as soon as the notice of attachment has been served, in the possession of any person who assumes the obligation of keeping such property at the disposal of the Secretary until the debtor pays the taxes in full or the sale at public auction is conducted; and if any depositary of attached property disposes of such property, he/she shall be guilty of a third-degree felony.

**(j)**  When the personal property is attached or when notice is served on the debtor or his/her family members or dependents as provided in this Code, the Secretary may collect, in addition to assessed debts, interest, surcharges, and penalties, an amount sufficient to defray the costs for custody and deposit of the property thus attached, together with fees for an amount equal to ten percent (10%) of the amount of the principal of the taxes owed, without including surcharges, which shall be paid to the dunning agent who served the notice or covered into the General Fund if notice was served by the Secretary or another employee of the Government of Puerto Rico.

**Section 6060.03.-- Sale of Personal Property to Pay Taxes; Exemptions.--**

**(a)**  The sale of personal property for the payment of any assessed debt, fines, interest, surcharges, and penalties shall be conducted at public auction, and if such property can be portioned or segmented, only the amount or part of such attachable personal properties that is strictly necessary for the payment of all assessed debts, fines, interest, surcharges, penalties, and costs shall be sold. An amount of property whose appraised value is sufficient to cover, with the adjudication price at a third auction, the probable amount of assessed debts and their interest, surcharges, fines, penalties, and costs at such third auction, shall be deemed to meet the preceding condition.

**(b)**  The Secretary, before starting the sale at public auction of the personal property, shall proceed to appraise the same.

**(c)**  The sale of personal property shall be conducted at public auction, to be carried out not before thirty (30) days nor after sixty (60) days from having attached the property, fixing as a minimum adjudication rate for the first auction, one hundred percent (100%) of the amount of the appraisal thus conducted by the Secretary.

**(d)**  If the first auction does not produce any bids or adjudications, the second auction to be held shall be at a minimum rate of seventy-five percent (75%) of the appraisal value fixed by the Secretary on such personal property.

**(e)**  If such second auction does not produce any bids or adjudications and the holding of a third or subsequent auction is necessary, for such third or subsequent auction, the minimum rate shall be fifty percent (50%) of the ad hoc appraisal value fixed by the Secretary on such personal property.

**(f)**  If any of these auctions does not produce any bids or adjudications, the Government of Puerto Rico, through the Secretary's representative present at the auction, may adjudicate such attached personal property to itself at the minimum assessment rate corresponding to the auction in which the property is to be adjudicated.

**(g)**  When the personal property at auction is adjudicated to a third party, and when such property is adjudicated to the Government of Puerto Rico, the proceeds of the sale of such property shall be destined to the payment of the tax debt. In the event of an adjudication of property to the Government of Puerto Rico, the Secretary shall issue and give the taxpayer a credit note for a sum equal to the difference between the adjudication price and the tax debt to be collected, which credit note shall be sufficient to cancel in the future an equal amount of tax debt from the same taxpayer. In the event that the property is adjudicated to a third party, the surplus, if any, shall be given by the Secretary to the taxpayer.

**(h)**  If the amount obtained from the auction is not sufficient to pay the tax debt in full, the Secretary may collect from such delinquent taxpayer the amount of taxes and levies, together with any unpaid fines, interest, surcharges, and penalties, as soon as he/she acquires knowledge that such delinquent taxpayer is in possession or is the owner of attachable personal and real property, in which case, the proceedings for demand for payment and collection of the difference, as established in this Code, shall be pursued against him/her.

**(i)**  The following personal property shall be exempt from sale to pay taxes in full: mechanic and artisan instruments and utensils operated only by hand; cattle; and domestic furniture. Personal property related to Section 249 of the Code of Civil Procedure shall also be exempt from attachment. The unsold portion of said property shall be left at the site of the auction at the owner's risk.

### Section 6060.04.-- Title Transferred to Buyer; Distribution of Sale Proceeds.--

When the bid price on the sold personal property is paid, the surrendering of such property and of the sales account shall constitute title in favor and right of the buyer over such property. Any surplus made in the proceeds of the sale in excess of the taxes, levies, fines, interest, surcharges, penalties, and costs shall be returned by the Secretary to the owner of the property thus sold or to his/her heirs or assignees in the manner prescribed in Section 6021.02 of this Code. The agent shall be accountable before the Secretary or his/her delegate, for the amount obtained from each sale of attached property and the investment of such sale's proceeds.

### Section 6060.05.-- Attachment and Sale of Real Property.--

**(a)**  If it is decided that, in the first instance, the personal property of a delinquent taxpayer are to be attached, and such property is not sufficient to pay the assessed debts, fines, interest, surcharges, penalties, and costs he/she owes to the Government of Puerto Rico; or if the taxpayer has no attachable personal property to be sold, the agent of the collection district in which said taxpayer resides shall attach the real property of such debtor which is not exempt from attachment pursuant to the provisions of Section 6060.01 of this Code and give notice thereof to the Secretary; and at any time after having received such

notice, the Secretary shall order the agent to sell the attached real property of said delinquent taxpayer to pay such assessed debts, fines, interest, surcharges, penalties, and costs.

**(b)** The real property thus attached shall be sold at public auction, at a minimum rate that shall be the value of the delinquent taxpayer's equity in the attached property or the value of the credit that represents the tax debt, whichever amount is the less. Equity shall be understood to be the difference between the real value of the property and the amount for which it is mortgaged. The credit that represents the tax debt includes assessed debts, fines, interest, surcharges, penalties, and costs.

**(c)** The minimum adjudication rate shall be fixed by appraisal of such real property, to be conducted by the Secretary before giving public notice of the auction. The minimum rate shall be confidential between the Secretary and the taxpayer. However, the agent may announce such rate while holding the auction, after receiving the best offer, only if such offer does not exceed the minimum rate.

**(d)** The number of auctions to be held in each sale, as well as the minimum rate to be applied in each, shall be determined by the Secretary by regulations.

**(e)** If there are no bids or adjudications in any of such auctions in favor of a private person, the Government of Puerto Rico may, through the Internal Revenue Agent holding the auction, adjudicate to itself such attached real property for the amount of the corresponding minimum adjudication rate.

**(f)** If in any auction held, the real property subject to the demand for payment procedure is adjudicated to a third party and the amount obtained at auction is not sufficient to cover the amount owed on account of assessed debts, fines, interest, surcharges, penalties, and costs, the Government of Puerto Rico may collect from such delinquent taxpayer the amount of taxes, levies, and fines, together with their surcharges, interest, and penalties not covered as a result of the auction held, as soon as the Secretary acquires knowledge that such delinquent taxpayer is in possession or is the owner of attachable personal or real property, in which case, the demand for payment and collection procedures established in this Code shall be pursued against him/her.

**(g)** The person to whom the real property is adjudicated at public auction is acquiring such property as is and shall not be entitled to request any warranty against defects from the Secretary.

**(h)** If it is decided that taxes shall be collected by the attachment and sale of the real property of the delinquent taxpayer, without first having attached and sold such taxpayer's personal property, the provisions of this Section shall be followed in all matters applicable.


## Section 6060.06.-- Attachment Certification; Registration.--

**(a)** Immediately after the terms granted to pay assessed debts, fines, interest, surcharges, and penalties have expired, in cases in which the property to be attached is real property, the agent shall prepare an attachment certification describing the attached real property, and shall cause such certification to be filed for registration with the corresponding Property Registry.

**(b)** The certification mentioned in subsection (a) shall contain the following detailed information: the name of the delinquent taxpayer; the amount of the assessed debts, fines, interest, surcharges, penalties, and costs owed by him/her; a description of the attached real property, which shall be equal to that recorded at the Property Registry; and that the attachment shall be valid in favor of the Government of Puerto Rico.

**(c)** Filing the attachment certification with the registry shall constitute sufficient notice to the taxpayer and to begin demand for payment procedures.


## Section 6060.07.-- Registration of Attachment or Lien Certification; Personnel to Cooperate with Registrars.--

It shall be the duty of all property registrars, immediately after having received the aforementioned attachment certification or the lien certification provided in Section 6060.01 of this Act, to register such certification properly and return it to the corresponding agent within a term of ten (10) days, with an annotation by the property registrar

attesting to the fact that it has been properly registered. The Property Registrar shall not earn any fees for such services. The Secretary is hereby authorized to appoint personnel as necessary to cooperate with property registrars in the task of searching the files of the attached real properties at the property registries, in recording the certifications of the lien or attachment thus ordered, and in any other tasks related to real property attachments to collect on assessed debts.

**Section 6060.08.-- Notice of Attachment; Auction Announcement.--**

**(a)**   Upon submittal for registration of the real property attachment certification at the corresponding Property Registry, or after having attached any other personal property, the agent shall give notice of such attachment in the manner provided in this Code, so that if all assessed debts, fines, interest, surcharges, penalties, and costs owed by the owner of the attached property are not paid in full within thirty (30) days following the date of notice of the attachment, the attached property shall be sold at public auction for a minimum rate fixed on the basis of the value of the taxpayer's equity in the property subject to attachment or of the value of the tax debt, whichever amount is less. If the person who is given notice of the attachment of the real property on account of his/her being recorded as the owner of such property at the Property Registry, is not the owner by the date of notice, he/she shall be required to give written notice of such fact to the agent who gave him/her notice of the attachment within ten (10) days following the date such notice was received. If he/she does not follow this procedure, he/she shall be guilty of a misdemeanor.

**(b)   Auction Announcement.--**   Once the term granted to the taxpayer in the Notice of Attachment has elapsed and the taxpayer has failed to pay in full all assessed debts, fines, interest, surcharges, penalties, and costs, the agent shall issue an Auction Announcement, which shall be published at least three (3) times for a term of one week in two (2) newspapers of general circulation in Puerto Rico and public announcements shall be posted for that same purpose; and the cost of such announcements, together with fees due for serving notice on the taxpayer or his/her representative, shall be charged as part of the costs for sale and be paid to the Secretary. A copy of such notice and a copy of the announcement published in the newspapers, together with a sworn statement from each of the Executors of the newspapers on which the announcement was published, shall be kept by the Secretary. These documents shall constitute prima facie evidence of having announced such auction properly.

**Section 6060.09.-- Auction; Notice and Surrender of Surplus to Taxpayer; Effect on Redemption Right.--**

**(a)**   The time, place, and conditions under which such auction is to take place shall be clearly stated in the Auction Announcement, as established in Section 6060.08. Upon expiration of the aforesaid publication term, or as soon as practicable after its expiration, the aforementioned property shall be sold by the agent at public auction to the bidder who makes the best offer. No bid shall be accepted if made for a sum less than the amount fixed under this Code for the auction. No bid shall be accepted, either, unless a money deposit is made for ten percent (10%) of the amount offered, which deposit shall be forfeited if the buyer fails to pay the remaining amount for which the property was sold within ten (10) days following the date of sale.

**(b)**   Within thirty (30) days after having held the auction, the Secretary or the authorized agent, after applying the corresponding amount to the payment of the debt, shall notify the taxpayer of the outcome of the auction and inform him/her of the amount of the surplus amount, if the adjudication price is greater than the debt pending collection, and also whether the prevailing bidder was a third party or the Government of Puerto Rico.

**(c)**   At any time within the term of one year from the date of auction, the Secretary shall be required, by request of the taxpayer, to surrender such surplus over to him/her, if the prevailing bidder was a third party and the latter certifies that the taxpayer has transferred possession of the property to him/her, or that such transfer has been agreed upon to the satisfaction of both parties. In such case, the redemption right granted under this Code shall be deemed to be extinguished as soon as such amount is surrendered over to the taxpayer or his/her legal heirs.

(d)  If after one year the taxpayer has not exercised his/her redemption right, or if such right has been extinguished pursuant to the aforementioned provisions, the Secretary shall be required to notify to the taxpayer or his/her heirs that the surplus is available for surrender and to surrender the same after the interested persons requesting such surplus prove to him/her that they are entitled to such surplus.

(e)  When adjudication has been made to the Government of Puerto Rico, the taxpayer, at any time after he/she has been notified of the outcome of the auction, may request that the surplus be surrendered to him/her, and such request shall be construed as an offer to waive his/her redemption right, which shall be consummated upon surrendering such surplus to the taxpayer or his/her heirs. The surplus shall be surrendered by the Secretary by using regular funds of the Government of Puerto Rico for that purpose.

(f)  Before paying the surplus to the taxpayer, the Secretary may allow any instrumentality or agency of the Government of Puerto Rico to acquire the property auctioned, if the nature of its business is compatible with such acquisition. In such case, the agency or instrumentality, through the Secretary, shall pay to the taxpayer or his/her heirs such surplus and pay to the Secretary the amount of the debt whose collection prompted the auction of the property.

(g)  A certificate from the Secretary attesting that both payments have been made shall constitute sufficient title deed over the property in favor of the instrumentality or agency, which title deed shall be recordable at the Property Registry.

(h)  The Secretary shall not pay any surplus to the taxpayer before he/she has surrendered possession of the real property.


## Section 6060.10.-- Deferment or Postponement of Sale.--

The agent may continue with the sale from day to day, if he/she deems it necessary to delay such sale; and, for sufficient cause, he/she may defer such sale for a term not to exceed sixty (60) days, which shall be properly notified by means of an announcement made in the manner provided in this Code.


## Section 6060.11.-- Unauthorized Sale; Penalty.--

(a)  If any agent should sell or assist in the sale of any personal or real property, fully aware that such property is exempt from attachment; or if he/she knowingly and intentionally sells or assists in the sale of any personal or real property for the payment of taxes, with the purpose of defrauding the owner; or if he/she in any way inhibits the participation of bidders; or if he/she knowingly or intentionally issues a purchase certificate on real property thus sold, he/she shall be guilty of a fourth-degree felony and be subject to pay to the injured party any and all damages the latter has sustained on account of such sale, and any such sales thus conducted shall be null.

(b)  If any agent should offer bidders, either expressly or implicitly, any guarantees as to the validity of the title deed, the quality, the size, or the condition of the property, he/she shall be subject to the penalties provided in the preceding paragraph, but the sale shall remain valid.

(c)  In any case in which an agent is guilty of violating the provisions of this Section, the Secretary shall initiate administrative proceedings whereby he/she shall request that such agent be removed from office pursuant to the regulations established in the Department for the application of disciplinary sanctions.


## Section 6060.12.-- Purchase by Collector or Agent Prohibited.--

No agent of the Department, or employees involved in collection efforts by the Department, may acquire property attached and auctioned by the Department. If any agent or employee involved in collection efforts by the Department buys, either directly or indirectly, any part of any personal or real property sold for the payment of unpaid taxes, both him/her and his/her guarantors shall be liable with their official bond for all damages sustained by the owner of such property and any such sales shall be null. Furthermore, any employee who perpetrates such offense shall be guilty of a fourth-degree felony.

**Section 6060.13.-- Purchase Certificate; Registration; Title Deed.--**

**(a)**  Within sixty (60) days following the date of auction, the agent shall prepare, sign, and hand in to the buyer of any personal or real property sold due to failure to pay taxes, a purchase certificate, which shall contain the name and home address of such buyer, the date of sale of such property, the amount for which it was sold, a document attesting to the fact that said amount has been paid by the buyer, the amount of assessed debts, fines, interest, surcharges, penalties, and costs, and a description of the property as required under this Code and, in the case of real property, the page and volume of the Property Registry of Puerto Rico, and the corresponding section, where the real property sold is registered, in the event that it has been registered.

**(b)**  If the redemption right provided in Section 6060.14 of this Subtitle is not exercised within the term established therefor, such certificate, once recorded at the Property Registry of Puerto Rico, in the corresponding section, shall constitute freehold over said property in favor of such buyer, subject to liens preferred over the attachment of the Government of Puerto Rico. Such certificate shall be prima facie evidence of the facts stated therein in any controversy, proceeding, or lawsuit that involves or concerns the rights of the buyer, or his/her heirs or assignees, over the property transferred by virtue thereof. The buyer, his/her heirs or assignees may, upon receiving such certificate, cause its proper registration by the Property Registrar of Puerto Rico, in the corresponding section, by paying the corresponding registration fees.

**Section 6060.14.-- Redemption of Property Sold to Pay Taxes.--**

**(a)**  Except for the provisions of Section 6060.09 of this Subtitle, whoever is the owner on the date of sale of any real property, which is subsequently sold to another natural or juridical person or to the Government of Puerto Rico to pay taxes, his/her heirs or assignees or any person who, on the date of sale, has any right over or interest on such property, or his/her heirs or assignees, may redeem it within a term of one (1) year from the date of issue of the purchase certificate, by paying the authorized agent in whose Collection District the sale of the property has been conducted, or to the buyer, or his/her heirs or assignees, the total amount of the purchase value, plus improvements and expenditures incurred by the buyer, together with costs accrued and assessed debts, fines, interest, surcharges, and penalties due and payable until the redemption date, to which twenty percent (20%) of all the above amounts shall be added as compensation for the buyer.

**(b)**  Upon completing payment of such amounts, whoever redeems the property shall be entitled to receive from the buyer, or his/her heirs or assignees, said purchase certificate, on the back of which he/she shall properly attest before a notary public that he/she has received the money paid to redeem the property, and the person who redeems the property shall pay the notary public's fees.

**(c)**  Receipt that has been duly attested to on the back of the purchase certificate, or in default thereof, the certificate from the Secretary that is established further, shall operate as a letter of payment for all claims by the Secretary over the title deed of the real property, sold by reason or by virtue of said auction to pay unpaid taxes and to cancel the purchase certificate.

**(d)**  If the property has been adjudicated to the Government of Puerto Rico, the Secretary, upon payment of the amounts stated above to the authorized agent, shall issue a certificate for the property registrar attesting to the redemption and ordering that the same be recorded in the Property Registry of Puerto Rico, thus cancelling the purchase in favor of the Government of Puerto Rico.

**(e)**  Whoever redeems the property may cause said letter of payment, or in default thereof, the certificate from the Secretary, to be properly recorded in the Property Registry against the purchase certificate by paying the corresponding registration fees to the registrar.

**(f)**  The property thus redeemed shall be subject to all legal liens and claims against it, except for taxes, to the same extent and in the same manner as if such property had not been sold for paying taxes.

**(g)**  When the property is redeemed by a mortgage creditor, the money paid by him/her to redeem the property shall be accrued into a mortgage credit, and may be recovered at the same interest rate accrued by the mortgage credit.

**(h)**  When the tenant or lessee redeems the property, he/she may deduct the amount of such redemption from the rent he/she pays.

**(i)**  Except for the provisions in this Section, when the property has been adjudicated to the Government of Puerto Rico, the Secretary may, at his/her discretion, or after one year has elapsed from the date the purchase certificate was issued, consent to the redemption thereof by any person entitled to redeem the same within the one-year term, as long as the property is not being used by the Government of Puerto Rico and has not been sold, transferred, or assigned by the Government through a lease at the time the redemption is requested, or the surplus from the auction has not been surrendered, and as long as the person who requests the redemption previously deposits in the corresponding Collection District the amount of taxes into auction proceeds, plus improvements and expenditures incurred by the State, together with all costs accrued and all assessed debts that would have been imposed on said property had the same continued to be in the possession of any taxpayer, with surcharges and interest thereon plus twenty percent (2%0) of the preceding amount, as a penalty for the State. In such cases, once the Secretary has consented to the redemption, the redemption certificate shall be issued and the sale shall be cancelled at the Property Registry in the same manner as that established in this Section for redemptions made within the one (1)-year term.

### Section 6060.15.-- Notice to Buyer Whose Home Address is Unknown.--

**(a)**  When the taxpayer whose land has been sold at auction to pay his/her debt with the Department wishes to redeem such property but does not know the home address of the person who bought it at auction or does not find him/her at the home address recorded in the certificate of sale, shall so inform by means of a public announcement that shall be published in a newspaper of general circulation for thirty (30) days, once a week, and it shall also be posted for one (1) month at the Collection District where the land was sold, whereby the sum paid by the prevailing bidder and interest thereon shall be offered until the date the deposit is to be made, and upon expiration of such term, he/she shall make such deposit at the corresponding property registry in the manner and for the purposes set forth in Section 6060.16 of this Subtitle.

**(b)**  The person who ends up having an interest in the auctioned real property shall have the same right as the delinquent taxpayer.

### Section 6060.16.-- Procedure When Buyer Refuses Money for Redemption or When His/Her Home Address is Unknown; Redemption Certificate.--

If the aforementioned buyer, or his/her heirs or assignees, refuse to accept the money offer made, as established for redeeming the property, or if they cannot be located, the person entitled to redeem the property shall pay the redemption amount to the authorized agent in whose Collection District the sale of the property was conducted. In such case, the agent shall compute the legal amount of money to be paid in order to redeem the property pursuant to the prescriptions of this Code and, upon receiving the same, the agent shall issue to the person redeeming the property a certificate for having effectively redeemed the property. The payment of such redemption money to the aforementioned agent shall reinstate said former owner or his/her heirs or assignees all rights and ownership over said real and personal property, and participation therein and possession thereof, as said former owner had before said property was sold to pay taxes.

### Section 6060.17.-- Notice to Buyer of Deposit of Redemption Money.--

Upon receiving such money to redeem the property in the manner described above, the agent shall notify the buyer, or his/her heirs or assignees, of the payment of said money, and he/she shall keep the same at the disposal of such

buyer, heirs, or assignees. The aforementioned notice may be sent by certified mail to the last known home address of the buyer, or his/her heirs or assignees, in the manner set forth in the purchase certificate. The agent shall not charge any fees for his/her services in the course of the procedures set forth above.

### Section 6060.18.-- Purchase of Real or Personal Property by the Government.--

**(a)** Any real or personal property offered at a public auction to pay assessed debts, fines, interest, surcharges, penalties, and costs owed and not paid, which is not sold for lack of a bid that suffices to cover all such debts that encumber such property, may be bought by the agent on behalf of the Government of Puerto Rico at any public auction.

**(b)** The agent shall make a public bid for the property referred to above for the amount of such taxes, levies, fines, interest, surcharges, penalties, and costs, and if no better bid is made, he/she shall draw and cause the recording at the Property Registry of the corresponding district, a purchase certificate in favor of the Government of Puerto Rico, which shall contain an account and a description of the property as established in Section 6060.13 of this Subtitle.

**(c)** If the redemption right granted in Section 6060.14 of this Subtitle is not exercised within the term established therefor, such certificate, after being recorded at the property registry of the district in which such property is located, shall constitute freehold over said property in favor of the Government of Puerto Rico, free from any mortgage, lien, or any other encumbrance.

**(d)** The certificate shall be prima facie evidence of the facts recorded therein in any controversy, proceeding, or lawsuit pertaining to or involving the rights that the buyer, or his/her heirs or assignees, have over the property transferred by virtue thereof.

**(e)** Property registrars shall not charge any fees for recording such certificate or for any copy thereof that they may issue.

**(f)** The Secretary may adopt and promulgate any such rules as necessary to regulate collectors' use of the power hereby conferred onto them to buy on behalf of and for the Government of Puerto Rico, any real or personal property, or both, at auctions for the collection of taxes, and he/she may, in specific cases, instruct the agent to buy or to abstain from buying the attached property.

**(g)** When the property is adjudicated to the Government of Puerto Rico, the Secretary is hereby empowered to pay, from any funds not destined to address other issues, the sum established in the statutes to defend homestead rights to the person with such rights.

**(h)** The Secretary shall have the authority to transfer, free of charge, to the Department of Agriculture, the title deed of land plots that became or are to become the property of the Government by means of debt enforcement procedures to collect taxes owed, as provided in this Section, which qualify for use as a family farm under the program of Title VI of the Puerto Rico Land Act and by express request of the Department of Agriculture. Notwithstanding the foregoing, when the property transferred to the Department of Agriculture is subsequently sold, said Department shall deposit in the Secretary's General Fund the proceeds from such sale or the amount for which the property was sold, whichever amount is the less.

### Section 6060.19.-- Cancellation by Government of Irregular Sale.--

When any real property has been sold on account of delinquent assessed debts, fines, interest, surcharges, and penalties, and the same has been sold at auction to the Government of Puerto Rico, and it is discovered later that, for whichever reason, said sale was conducted irregularly and that the owner has been unduly deprived from his/her property, the Secretary shall be empowered to cancel such sale, and whenever necessary, he/she shall draw the redemption certificate, which shall operate as a new transfer of property to its owner, or his/her heirs or assignees, as the case may be, and such property shall be subject to all legal liens and claims against it to the same extent and in the same manner as if such property had not been sold to pay taxes, and the property registrar shall record the redemption certificate, for which services he/she shall not charge any fees. The Secretary, whenever a redemption certificate is issued pursuant to the provisions of this Section, shall issue to the Secretary of

Transportation and Public Works, a certified copy of the aforementioned certificate, together with an account attesting to the facts of the case and the reasons for issuing such certificate.

**CHAPTER 7 --**  PROVISIONS CONCERNING TAX RETURN, STATEMENT, OR REFUND CLAIM SPECIALISTS AND TAX REPRESENTATIVES

**SUBCHAPTER A**

REGULATION OF PROVISIONS CONCERNING TAX RETURN, STATEMENT, OR REFUND CLAIM SPECIALISTS

**Section 6071.01.-- Creation of the Specialist Register and Requirements to Practice as a Tax Return or Statement Specialist.--**

(a)  **Registration as Specialist Required.--**  No person may practice or continue practicing in Puerto Rico as a tax return or statement specialist unless he/she applies to and obtains from the Department of the Treasury a registration into the Register established by this Chapter.

(b)  **Registration as Tax Return, Statement, or Refund Claim Specialist.--**  An official register for tax return, statement, and refund claim specialists is hereby created and established. This register shall be kept and managed at the Office of the Deputy Internal Revenues Secretary of the Department. The same shall include an account of the registrations of tax return, statements, or refund claim specialists. The register shall be available to the public with the business name, address, and telephone number of the specialist.

(c)  **Specialist Defined.--**  The provisions of this Chapter shall apply and a "tax return, statement, or refund claim specialist," hereinafter the "specialist," shall be deemed to be any natural or juridical person who, for pay or compensation, prepares any tax return or statement of the taxes imposed by this Code or any form to claim a refund for such taxes, and who is registered in the Tax Return, Statement, or Refund Claim Specialist Register of the Department. For purposes of the preceding sentence, the preparation of a substantial part of a tax return, statement, or refund claim shall be deemed to be the preparation of such documents. The Secretary shall determine through Regulations the requirements necessary to be included in the Specialist Register established under subsection (a). An attorney or a certified public accountant who holds a license in effect to practice his/her profession shall be deemed to meet the education and training requirements as the Secretary may impose to be included into the Specialist Register referred to in subsection (a).

(d)  No natural or juridical person shall be deemed to be a specialist if:

(1)  He/she is an employee of the Department;

(2)  He/she prepares a tax return, statement, or refund claim form for his/her employer, including the employer's officials or employees;

(3)  He/she prepares in good faith and free of charge, a tax return, statement, or refund claim form for any other person;

(4)  He/she transcribes or only includes in the tax return, statement, or refund claim form any information not related to the determination of tax liability;

(5)  He/she was an employee of the Department, until after one (1) year has elapsed from his/her separation from service, except in cases in which the Government Ethics Office grants a dispensation to that effect; or

(6)  He/she was a freelance advisor or contractor for the Department, until after one (1) year has elapsed from the date of termination of the contract, except in cases in which the Secretary grants a dispensation to that effect.

**(e) Requirements for Registration in the Tax Return, Statement, or Refund Claim Specialist Register.--**

**(1)**   Any person who wishes to be considered to be a tax return, statement, or refund claim specialist shall comply with the requirements, procedures, and rules established by the Secretary of the Treasury through regulations or circular letter.

**(2)**   An attorney or a certified public accountant who holds a license in effect to practice his/her profession shall not be required to submit any evidence in terms of experience or education that qualifies him/her to prepare tax returns, statements, or refund claims or to attend any skill-building course about the duties and responsibilities of tax return specialists offered by the Department of the Treasury or any other entity authorized to that effect by the Department.

**(3)**   Registration in the Register shall be valid as long as the same is not withdrawn, suspended, or revoked.

**(f)** The Secretary shall promulgate the corresponding regulations and prepare such forms and documents as necessary to comply with the provisions in this Chapter.

**(g) Renewal of Specialist's Registration Number.--**

**(1)**   The specialist's registration number shall be renewed every three (3) years, between August 1 and October 31, which period shall be deemed to be the renewal period.

**(2)**   To renew the specialist's registration number, the requirements established by the Secretary of the Treasury by regulation or any determination of a public nature that he/she issues to that effect, must be met.

**(3)**   Any specialist who fails to observe the renewal period shall be subject to an additional service charge of two hundred dollars ($ 200).


**Section 6071.02.-- Duties of Specialists.--**

**(a) Duties.--**   Not to be construed as a limitation, all specialists shall have the following duties:

**(1)** To act competently as experts on taxation matters.

**(2)** To observe the laws, morals, and public order.

**(3)** To comply with the rules or regulations issued under the provisions of this Code.

**(4)** To hand to taxpayers a copy of the final tax return, statement, or refund claim form, signed by said specialists.

**(5)** To retain and keep a copy of such tax return, statement, or refund claim form, or keep a roster with the name and account number of each taxpayer for whom they have prepared a tax return, statement, or refund claim form. Such copies and rosters shall be available for inspection, at the request of the Secretary for a term of four (4) years counted from the closing date for filing tax returns, statements, or refund claims.

**(6)**   To submit a statement of the specialists they have hired or contracted during the tax return or statement season.

**(A)**   A partnership or corporation shall file a statement with regards to its partners, stockholders, and any other persons who sign tax returns on behalf of the entity.

**(B)**   This statement shall be submitted to the Secretary not later than July 31 following the closing date of the immediately preceding tax return or statement season.

**(C)**   The term tax return or statement season means a term of twelve (12) months, beginning on July 1 of each taxable year.

**(7)**  To include in the tax return, statement, or refund claim form, the name of the specialist, his/her signature, his/her registration number, name of the firm, and employer identification number, in order to facilitate the identification of such specialist, his/her employer or both, as the case may be.

**(8)**  To keep the confidentiality of any information furnished for or with regards to the preparation of a tax return, statement, or refund claim form, and use the information provided to them for those purposes only.

> **(A)**  Specialists shall be exempt from the duty stated above when information is disclosed under the following circumstances:

> > **(i)**  When so authorized or required under this Code or any other law or its regulations,

> > **(ii)**  When so required by an order issued by a competent court,

> > **(iii)**  When so required to prepare other tax returns, statements, or refund claim forms of the taxpayer providing the information.

> **(B)**  In the case of specialists who practice a profession that is regulated under a law whose provisions are in conflict with any of the exceptions covered under subparagraph (A), such specialists shall not be required to disclose any information they obtained in preparing a tax return, statement, or refund claim.

**(9)**  To request that the Department of the Treasury exclude him/her from the Register established in this Chapter when the specialist decides to stop discharging such functions.

**(b)**  When two or more specialists have prepared the same tax return, statement, or refund claim form, the Secretary shall determine by Regulation, who among them shall comply with the requirements provided in paragraphs (4) and (5).


**Section 6071.03.-- Administrative Sanctions for Violations of or Noncompliance with the Provisions of this Chapter.--**

**(a) Insufficiency as to Taxpayer Liability.--**

**(1)**  Any specialist shall be subject to the imposition of administrative sanctions in the manner established further, in any case in which it is determined that there is an insufficiency as to the liability of the taxpayer whose tax return, statement, or refund claim form he/she prepared, when such insufficiency is attributable to negligence, willful noncompliance with the provisions of this Code and its regulations, or the deliberate acts of the specialist.

**(2)**  The insufficiency shall not be construed as attributable to willful noncompliance with the provisions of the Code and its regulations, or to deliberate acts of the specialist, when such insufficiency is the result of a position assumed in the tax return that is supported by a reasonable interpretation of the applicable laws.

**(3)**  For purposes of this Section, the term "insufficiency as to taxpayer's liability" means any undervaluation of the net amount that the taxpayer should pay with regards to any taxes imposed by any Subtitle of this Code or any claim in excess of the net amount that should be credited or refunded in connection with such tax return or statement.

**(4)**  When the insufficiency in the taxpayer's liability can be attributed to negligence or to willful noncompliance by the specialist with the provisions of this Code or its regulations, the specialist shall be sanctioned with an administrative fine of two hundred fifty dollars ($ 250) for each tax return, statement, or refund claim. This amount shall not exceed twenty-five thousand dollars ($ 25,000) within a single calendar year.

**(5)**  When the insufficiency in the taxpayer's liability can be attributed to a deliberate act of the specialist, he/she shall be sanctioned with an administrative fine of one thousand dollars ($ 1,000) for

each tax return or refund claim. This amount shall not exceed twenty-five thousand dollars ($ 25,000) within a single calendar year.

**(b) Other Violations.--**  All specialists shall be subject to the imposition of the administrative sanctions set forth below when guilty of the following omissions or acts:

**(1)** For failure to furnish a copy to the taxpayer of the tax return, statement, or refund claim form in the manner established under any Subtitle of this Code: fifty dollars ($ 50) for each omission, unless just cause is proven. The maximum penalty imposed on each person regarding documents completed during any calendar year shall not exceed twenty-five thousand dollars ($ 25,000);

**(2)** For failure to sign the tax return, statement, or refund claim form in the manner provided under this Code or its regulations: one hundred dollars ($ 100) for each omission, up to a maximum of twenty-five thousand dollars ($ 25,000) within a single calendar year, unless just cause is proven;

**(3)** For failure to keep a copy of the tax return, statement, or refund claim form or the taxpayer roster required under this Code: fifty dollars ($ 50) for each omission up to a maximum of twenty-five thousand dollars ($ 25,000) within a single calendar year, unless just cause is proven;

**(4)** For failure to render the statement on the specialists he/she hired or contracted during tax return season in the manner established under this Chapter: fifty dollars ($ 50) for each statement not rendered for each tax return or statement season, and fifty dollars ($ 50) for each information item not included in the statement, up to a maximum of twenty-five thousand dollars ($ 25,000) in both cases, unless just cause is proven.

**(5)** Any person who is practicing as a specialist without having registered in the Register established under this Chapter shall be punished with a fine of two hundred fifty dollars ($ 250) up to a maximum of ten thousand dollars ($ 10,000).

**(c)** The Secretary may decree the suspension of the validity of the registration in the Register established under this Chapter when the specialist engages in an act that is prohibited under this Section. He/she may likewise decree the revocation of such registration when the specialist is guilty of a subsequent violation of the provisions of subsections (a) and (b) of this Section. The regulations to be adopted by the Secretary shall establish the minimum guarantees of due process of law when suspending or revoking the validity of such registration.

**Section 6071.04.-- General Provisions on the Imposition of Administrative Sanctions.--**

**(a)** Administrative sanctions for violating the provisions of this Chapter may be imposed regardless of other sanctions or penalties imposed pursuant to other provisions of this Code.

**(b)** The provisions on deficiency assessment and collection shall not apply to the assessment and collection of administrative sanctions imposed for violating the provisions of Section 6071.03 on Administrative Sanctions for Violations of or Noncompliance with the Provisions of this Chapter.

**(c)** The Secretary shall establish, through regulation, the administrative procedure to be followed to assess or collect administrative sanctions, as well as for the claims for credit or refund of amounts paid on account of the imposition of sanctions for violations of the provisions of this Chapter. Such procedures shall contain the minimum requirements of due process of law.

**(d)** The Secretary may decree the suspension of the validity of the registration in the Register established under this Chapter for a term not greater than three (3) months when the specialist engages in acts prohibited in Section 6071.03. He/she may likewise decree the revocation of the registration when the specialist is guilty of a subsequent violation of the provisions of Section 6071.03 of this Chapter. The regulations to be adopted by the Secretary shall establish the minimum guarantees for due process of law when suspending or revoking the validity of such registration.

**(e)** The specialist may institute a judicial action to review any administrative sanction imposed on him/her for violating the provisions of Section 6071.03 within a term of thirty (30) days following the date his/her

refund claim was denied or when six months have elapsed from the date he/she filed his/her claim and no final determination has been issued, whichever is the earliest.

**(f)** If the specialist pays fifteen percent (15%) of the sanction imposed on him/her for violating Section 6071.03(a) and files a refund claim in connection with the amount paid, no attachment procedures or court proceedings may be filed or continued to collect the remainder of the sanction until the conclusion of the judicial review proceedings filed by the specialist. If the specialist does not initiate the judicial action within the prescriptive terms provided by law, the guarantee conferred against attachments and collection actions regarding the remainder of the sanction imposed on him/her shall be rendered ineffective.

**(g)** The amount of any sanction imposed for violating Section 6071.03 shall be assessed within a term of four (4) years following the date the tax return, statement, or refund claim form was filed. No judicial action may be filed to collect an administrative sanction not assessed within said term. The assessment, imposition, and collection of the appropriate penalty for violations to the provisions of Section 6071.03(a) when the specialist had acted intentionally shall not be subject to any prescriptive term.

**(h)** Refund claims related to amounts paid for having been imposed any sanctions shall be filed within a term of three (3) years following the date on which the payment was made. This prescriptive term shall not apply when a final administrative determination or a final and binding court ruling concludes that there was no insufficiency regarding the taxpayer's liability.

**(i)** The seven (7)-year prescriptive term for the administrative or judicial collection of amounts owed on account of the imposition of penalties shall be interrupted during the period in which the Secretary is unable to impose a penalty or make collection efforts through court.

### Section 6071.05.-- Sanctions of a Criminal Nature.--

**(a)** Any specialist shall be guilty of a misdemeanor if he/she discloses or uses, in violation of the provisions of this Code, any information he/she may receive while discharging his/her functions, and any person engaged in the business of preparing or providing services related to the preparation of tax returns or statements who:

**(1)** Discloses or makes known any information he/she has been furnished for, or with regards to the preparation of any tax return, statement, or refund claim form; or

**(2)** Uses such information for any purpose other than to prepare or to assist in the preparation of any tax return, statement, or refund claim form.

**(3) Exceptions.--**

**(A)** This paragraph shall not apply if the information is disclosed:

**(i)** Pursuant to the provisions of this Code; or

**(ii)** Pursuant to a court order.

**(B)** This paragraph shall not apply to disclosure with the purpose of preparing or assisting in the preparation of a tax return, statement, refund claim form, or estimated tax statement of the person to whom the information belongs.

**(b)** Any person practicing as a specialist without having registered in the Register established under this Chapter shall be guilty of a misdemeanor.

### Section 6071.06.-- Requesting Injunction to Prohibit Certain Acts.--

Upon request by the Secretary, an injunction proceeding may be filed on behalf of the Government of Puerto Rico, pursuant to the laws that govern such proceedings, against any person who practices as an income tax return specialist in violations of the provisions of this Chapter. The injunction action provided herein does not relieve the

offender from being subject to administrative proceedings or from being criminally sanctioned for violating this Code.

**SUBCHAPTER B --**  REGULATION OF PROVISIONS ON TAX REPRESENTATIVES BEFORE THE DEPARTMENT

**Section 6072.01.-- Provisions on Tax Representatives.--**

**(a)**  No natural or juridical person may practice or continue practicing in Puerto Rico as a tax representative unless he/she complies with the provisions set forth in this Subchapter.

**(b)**  A "tax representative" shall be deemed to be a natural or juridical person with capability or experience concerning taxation matters, who, either free of charge or in exchange for compensation, represents a taxpayer before the Department. The term "tax representative" shall include:

**(1)**  An individual duly authorized to practice as an attorney;

**(2)**  An individual duly authorized to practice as a certified public accountant; and

**(3)**  Any person who is competent in taxation matters and complies with the provisions of this Section.

**(c)**  No individual may act as a tax representative if he/she was an employee, advisor, or contractor of the Department of the Treasury until after one (1) year has elapsed from the date he/she separated from service, except in cases in which the Government Ethics Office grants a dispensation for such purposes.

**(d)**  Any natural or juridical person who appears before the Department regarding the following issues shall meet the requirements to practice as a tax representative, subject to that which is established in this Subchapter:

**(1)**  Administrative determinations;

**(2)**  Final transaction agreements;

**(3)**  Tax exemption decrees;

**(4)**  Applications for tax credits; and

**(5)**  Deficiencies.

**(e)**  Mathematical errors and corrections are matters that may be handled before the Department by practitioners not deemed to be tax representatives.

**Section 6072.02.-- Requirements and Duties to Practice as Tax Representative.--**

**(a)  Requirements.--**  Any person who practices as a tax representative before the Department shall meet the following requirements:

**(1)**  To observe an appropriate conduct at all times; and

**(2)**  To have the capability, experience, or qualifications necessary to provide quality tax services.

**(b)  Duties.--**  In order to appear and continue to appear before the Department, tax representatives shall discharge the following duties:

**(1)**  To act competently as an expert on taxation matters;

**(2)**  To observe the laws, morals, and public order;

**(3)**  To comply with the rules or regulations issued under the provisions of this Code; and

**(4)**  To submit a power of attorney to represent the taxpayer and reach an agreement regarding a controversy.

**Section 6072.03.-- Revocation of Representation Privilege and Notices or Written Messages to Tax Representative.--**

**(a) Revocation of Privilege.--**   The Secretary may revoke the privilege of appearing in representation of taxpayers before the Department to any tax representative who:

**(1)**   Does not comply with the requirements and duties to practice as a tax representative as established in this Subchapter;

**(2)**   Willingly and knowingly, and with the intent to defraud, deceives or threatens the person whom he/she represents.

**(b) Notices or Messages.--**   When a taxpayer is being represented by a tax representative, any written notice or message shall be issued to such representative, unless the taxpayer specifies otherwise. When the taxpayer is being represented by more than one tax representative, giving one of such representatives said message shall constitute sufficient notice.

**Section 6072.04.-- Request for Injunction to Prohibit Certain Acts and Criminal Sanctions.--**

**(a)**   Upon request by the Secretary, an injunction proceeding may be filed to prohibit certain acts to tax representatives in the same manner as tax return, statement, or refund claim specialists, as provided in Section 6071.06.

**(b)**   Any tax representative who intentionally gives the Secretary any roster, statement, account, statement, or other documents or information which he/she knows to be false or fraudulent shall be guilty of a felony and be sanctioned with a fine of not less than one thousand dollars ($ 1,000) nor more than twenty-five thousand dollars ($ 25,000), or with imprisonment for a fixed term of three (3) years. Should there be any extenuating circumstances, such term may be reduced to one (1) year. Should there be aggravating circumstances, such term may be increased to five (5) years.

**CHAPTER 8 --**   MISCELLANEOUS PROVISIONS

**Section 6080.01.-- Liability for Taxes Collected.--**

**(a) In General; Assessment and Collection.--**

**(1)**   Anytime any person is required to collect or withhold from any other person any taxes imposed by this Code and to surrender to the Government of Puerto Rico payment of such taxes, the amount of the taxes thus collected or withheld shall be deemed to be a special trust fund for the Government of Puerto Rico.

**(2)**   The amount of such fund shall be assessed, collected, and paid in the same manner and be subject to the same provisions and limitations, including penalties that are applicable with regards to the taxes that gave origin to such fund, except that the provisions of Section 6010.05 on the prescriptive term for assessment shall not apply and the Secretary may assess such amount at any time, but not later than ten (10) years from the date prescribed for depositing such collected or withheld taxes.

**(3)**   When before the expiration of the term established in paragraph (2), both the Secretary and the person described in paragraph (1) have agreed in writing to assess the amount of the fund described herein after such term, such amount may be assessed at any time before the expiration of the term established by agreement. The term thus agreed may be extended by subsequent written agreements made before the expiration of the previously established term.

**(b) Penalties.--**   For provisions on penalties that apply for violations of this Section, see Sections 6030.12 and 6080.02.

**Section 6080.02.-- Personal Penalty for Failure to Collect and Remit Payment of Taxes, or for Attempting to Defeat or Evade Taxes.--**

**(a) Penalty.--** Any person liable, as described in subsection (b) of this Section, shall be personally subject, in addition to any other penalty established under this Code, to a penalty equal to the full amount of the taxes evaded, not collected, not withheld, not deposited, not reported, or not remitted by the entity or person (as such term is defined in Section 6030.19 of this Code) so required under such obligation under any Subtitle of this Code.

**(b) Persons Liable.--**

**(1)** Any chief operating officer, president, chief financial officer, chief accounting officer, comptroller, and any official serving in a similar capacity with an entity or person (as such term is defined in Section 6030.19 of this Code) required to collect, withhold, account for, and remit payment of any taxes or levies established under any Subtitle of this Code;

**(2)** Any person whose responsibility, duty, function, or obligation at an entity or person (as such term is defined in Section 6030.19 of this Code) is to collect, withhold, deposit, account for, or remit payment of any taxes or levies established under any Subtitle of this Code, who knowingly does not collect or account for and faithfully remits payment of such taxes in the manner and under the terms established in any Subtitle of this Code; and

**(3)** Any person who knowingly attempts in any way to evade or defeat any taxes imposed by any Subtitle of this Code or the payment of such taxes.

**(c)** This Section shall be subject to the general application provisions of this Subtitle, including Sections 6030.19 and 6010.01, among others.

**Section 6080.03.-- Separate Accounting for Certain Taxes Collected.--**

**(a) General Rule.--** Anytime a person required, pursuant to any Subtitle of this Code, to collect, withhold, deposit, account for, and remit payment of any taxes or levies established by any Subtitle of this Code:

**(1)** Does not collect, pay, withhold, deposit, account for, and remit payment of such taxes or levies within the timeframe, in the manner, and under the terms established by any Subtitle of this Code; and

**(2)** Is hand delivered a notice concerning such violation, such person shall be under the obligation of meeting the requirements of subsection (b) of this Section. In the case of corporations, partnerships, or trusts, a notice delivered personally to an official, partner, or trustee shall be, for purposes of this Section, deemed to have been hand delivered to such corporation, partnership, or trust and to all officials, partners, trustees, and employees thereof.

**(b) Requirement to Keep Separate Accounts.--** Any person required to collect, account for, and remit payment of any taxes or levies established by any Subtitle of this Code, who has been given notice pursuant to subsection (a) of this Section, shall collect such taxes or levies established by any Subtitle of this Code as they become payable after delivery of such notice, deposit (not later than the second banking day following the collection of any amount related to such taxes or levies) such amounts in a separate bank account, and keep the amounts related to such taxes in said account until payment is made to the Secretary. Any amount in said account shall be deemed to be appropriated to a special trust fund in favor of the Government of Puerto Rico, payable to the Secretary by such person as trustee.

**(c) Cancellation of Requirement to Keep Separate Accounts.--** The Secretary may cancel the requirement to keep separate accounts, as provided by this Section, upon meeting, to the satisfaction of the Secretary, all requirements of the law and the regulations of the Code regarding taxes or levies established by any Subtitle of this Code. Such cancellation shall take effect on the date specified in the notice.

**Section 6080.04.-- Penalty for Failure to Keep Separate Accounting for Certain Taxes Collected.--**

**(a)  Penalty.--**  Any person who fails to meet any requirement imposed by Section 6080.03(b), in addition to other penalties established by the Code, shall be guilty of a third-degree felony.

**(b)  Exceptions.--**  The provisions of subsection (a) of this Section shall not apply:

**(1)**  To any person who proves reasonable doubt in terms of:

**(A)**  Whether the law requires such taxes to be collected; or

**(B)**  Who is required by law to collect such taxes; and

**(2)**  To any person who proves that he/she failed to comply with the provisions of Section 6080.03(b) due to circumstances beyond his/her control.

**(3)**  For purposes of paragraph (2) of this Section, insufficient funds shall not be deemed to be circumstances beyond the control of a person.

### Section 6080.05.-- Requirement to Deposit Taxes Deducted and Withheld from Salaries.--

**(a)  Deposit of Taxes Withheld from Salaries.--**

**(1)**  Any person who pays salaries and is required to deduct and withhold from any employee any income taxes in Section 1062.01 or the regulations promulgated by the Secretary pursuant to the Code, and to remit payment of such taxes to the Government of Puerto Rico, shall deposit the amount of taxes thus deducted and withheld at any of the banking institutions designated as public fund depositories and which have been authorized by the Secretary to receive such taxes.

**(2)**  Federal Savings and Loan Associations and Federal Thrift Banks that conduct business in Puerto Rico shall be deemed to be financial institutions for purposes of being designated as public fund depositories under this Code.

**(3)**  Taxes shall be paid or deposited as established in the regulations promulgated by the Secretary regarding the manner, time, and conditions that shall govern the payment or deposit of such withheld taxes. When promulgating such regulations, the Secretary shall follow, as pertinent, the criteria established in regulatory provisions on the collection and deposit of income taxes withheld from salaries paid by the Federal Government and the corresponding deduction for Social Security.

### Section 6080.06.-- Payment of Taxes Withheld from Interest.--

Any person who pays interest and is required to deduct and withhold from any person receiving payments from interest such income taxes as provided in Section 1062.09 of the Code or the regulations promulgated by the Secretary pursuant to the Code, shall remit to the Secretary the taxes thus deducted and withheld for one calendar month, not later than the tenth (10th) day following the close of the calendar month in which such taxes were deducted and withheld.

### Section 6080.07.-- Deposit of Certain Taxes in Public Fund Depository Banks.--

The Secretary may authorize banking institutions that have been designated as public fund depositories to receive any taxes deducted and withheld under Subtitle A under such conditions as he/she prescribes. The Secretary shall periodically prepare and publish listings with the names and addresses of banking institutions designated as public fund depositories pursuant to this Section.

### Section 6080.08.-- Requirement to Deposit Deducted and Withheld Taxes for Nonresident Individuals or Foreign Corporations Not Engaged in Trade or Business in Puerto Rico.--

**(a)  General Rule.--**

**(1)** Any person required to deduct and withhold any income taxes in Sections 1062.08, 1062.10, and 1062.11 or the regulations established by the Secretary pursuant to this Subtitle, and to remit payment of such taxes to the Government of Puerto Rico, shall deposit the amount of the taxes thus deducted and withheld within a calendar month (but only if it exceeds two hundred dollars ($ 200)) at the Internal Revenue Collections Offices, the Collections Bureau, or any office of the Department of the Treasury designated for such purposes, or at any of the banking institutions designated as a public fund depository and authorized by the Secretary to receive such taxes, as provided in Section 6080.07.

**(2)** Taxes shall be deposited not later than the fifteenth (15th) day following the close of the calendar month in which such taxes were deducted and withheld.

**(3)** In the case of taxes withheld from income attributable to distributive shares of a nonresident stockholder in the earnings of a partnership or special partnership, such taxes shall be deposited on or before the fifteenth (15th) day of the third month following the close of the taxable year for the special partnership.

**(4)** In the case of taxes withheld from income attributable to distributive shares of a nonresident stockholder in the earnings of a corporation of individuals, such taxes shall be deposited not later than the fifteenth (15th) day of the third month following the close of the taxable year for the special partnership.

**(5)** In the case of taxes withheld from income attributable to distributive shares of a nonresident member in the earnings of a liability company, such taxes shall be deposited not later than the fifteenth (15th) day of the third month following the close of the taxable year for the special partnership.

**(b) Exceptions.--**

**(1)** The provisions of subsection (a) shall not apply to the withholding and payment of income taxes provided in Section 1062.08(b)(2).

**(2)** When the person required to deduct and withhold any taxes pursuant to this Section requests the Secretary to relieve him/her from the withholding requirement, in whole or in part, due to the fact that withholding shall cause undue hardship without serving any practical purpose, because the amounts thus withheld would have to be refunded to the recipient of the income, or because such withholding would be excessive, the deposit requirement shall not take effect until the determination by the Secretary is received.

**(c) Penalty.--** If any person fails to deposit the taxes deducted and withheld in Sections 1062.08, 1062.10, and 1062.11 within the term established by law, he/she shall be subject to the penalties provided in Section 6041.12 of this Subtitle.


**Section 6080.09.-- Form of Payment.--**

**(a) General Rule.--** All taxes, levies, licenses, or any other payment established in this Code may be paid by postal money order or bank draft, legal tender, bonds, internal revenue stamps, checks-- personal, manager's or certified--credit cards, debit cards, electronic transfers, and other negotiable instruments.

**(b) Payment by Check or Money Order.--**

**(1) Relief from Responsibility.--**

**(A) Duly Paid Check or Money Order.--** No person who is indebted to the Government of Puerto Rico because of taxes imposed by this Code who has tendered a certified check, a manager's check, a teller's check, or a money order as provisional payment of such taxes pursuant to the terms of this subsection, shall be relieved from the requirement of making the definitive payment of such taxes until such certified check, manager's check, teller's check, or money order thus received has been duly paid.

**(B) Unpaid Check or Money Order.--** If any check or money order thus received is not duly paid, the Government of Puerto Rico shall hold, in addition to its right to obtain payment of taxes by

2011 PR H.B. 3070

debtors, a lien for the amount of such check on the bank asset against which such check was drafted or for the amount of such money order against all assets of the drawer of such money order; and said amount shall be paid from its assets with preference over any or all claims of any kind against such bank or drawer, except for disbursements and administrative expenditures as necessary.

**(2) Personal Checks.--**  If a personal check is not paid by the bank against which it was drafted, the person who tendered said check in payment of his/her taxes shall continue to be liable for the payment of taxes and all penalties and additions under the law, the same as if such check had not been tendered.

**(c)**  The Secretary may require from any taxpayer who has a track record of drafting checks that had to be returned, and when there are signed final agreements pursuant to Section 6051.07 of this Code, that he/she make any subsequent payments by certified, official, or manager's check.

### Section 6080.10.-- Recourse to Prevent Assessment or Collection Prohibited.--

**(a) Taxes.--**  Except as provided in Section 6010.02(a) of this Subtitle, no recourse shall be filed with any court to prevent the assessment or collection of any taxes imposed by this Code.

**(b) Requirement of Transferee or Trustee.--**  No recourse shall be filed with any court to prevent the assessment or collection of:

**(1)**  The amount of the obligation, in law or in equity, of a transferee of a property of a taxpayer concerning any taxes imposed by this Code; or

**(2)**  The amount of the obligation of a trustee concerning such taxes.

### Section 6080.11.-- Publication of Statistics.--

Each year, the Secretary shall prepare and publish those statistics that are reasonably available concerning the application of this Code, including classifications for taxpayers and income, items allowed as deductions, exemptions, and credits, items regarding excise taxes, sales and use tax, estate taxes, and gift taxes, as well as any other data deemed to be pertinent and useful.

### Section 6080.12.-- Authority to Exempt from Paying Excise Taxes, from Paying Sales Tax, and to Extend Deadlines for Actions Concerning Taxes by Reason of Disaster as Declared by the Governor of Puerto Rico.--

**(a) Exemption from Excise Taxes.--**  In the event of a disaster as declared by the Governor of Puerto Rico, the Secretary is empowered to issue an Administrative Order to exempt persons responsible for the payment of excise taxes imposed by Subtitle C on the following items:

**(1)**  Basic commodities introduced into the Island, to be donated to persons affected by the disaster; and

**(2)**  Items to be used in cleanup and reconstruction works on areas affected by the disaster, provided, that such items are used and returned to their source abroad within one (1) year from their date of introduction.

**(b) Exemption from Payment of Sales and Use Tax.--**  In the event of a disaster as declared by the Governor of Puerto Rico, the Secretary is empowered to issue an Administrative Order to exempt from payment of the sales and use tax established in Subtitle D, any taxable items acquired by taxpayers who are natural persons affected by the disaster, which items constitute basic commodities required to restore, repair, and supply the needs and damages caused by such disaster.

**(c) Extension of Deadlines for Certain Actions Regarding Taxes.--**  In the event that the Secretary determines that taxpayers have been affected by a disaster as declared by the Governor of Puerto Rico,

the Secretary shall establish by Administrative Order a reasonable term that shall not exceed thirty (30) days, during which term he/she shall consider, in determining the tax liability of affected taxpayers (including any penalty, additional amount, or additions to taxes), whether such taxpayers conducted any of the following actions within the deadlines established in the Code:

(1) Filing any income tax return or statement (except for income taxes withheld at the source), excise taxes, sales and use tax, estate taxes, or gift taxes;

(2) Paying income taxes (except for income taxes withheld at the source), excise taxes, sales and use tax, estate taxes, or gift taxes or any installment to pay such taxes;

(3) Applying for a credit or refund regarding any tax imposed by the Code; or

(4) Acquiring or renewing any internal revenue license required by the Code.

(d) **Disaster as Declared by the Governor of Puerto Rico.--** For purposes of this Section, the term "disaster as declared by the Governor of Puerto Rico" means any disaster that, with regards to the area where the taxpayer resides, results in a subsequent designation by the Governor of Puerto Rico as an area whose residents are eligible for assistance under disaster assistance programs of the Government of Puerto Rico. In the case of taxpayers who are not natural persons, residence shall be determined in reference to the location of the main trade or business.


## Section 6080.13.-- Limitation to Impose Taxes.--

Except as provided further, or in Section 6080.14, no municipality, whether autonomous or not, may impose or collect any taxes or levies established under this Code. Building excise taxes and volume of business taxes authorized under Act No. 81 of August 30, 1991, as amended [21 L.P.R.A. §§ 4001 et seq.], known as the "Autonomous Municipalities Act," and Act No. 113 of July 10, 1974, as amended [21 L.P.R.A. §§ 651 et seq.], known as the "Municipal License Tax Act," respectively, whose imposition by municipalities is expressly authorized, are hereby exempt from this provision. However, when the application of the Autonomous Municipalities Act and the Municipal License Tax Act, together with the application of this Code, produces a taxation situation that is unsustainable for being an infringement to a constitutional prohibition, if such situation would be rendered tenable by imposing and collecting only one of the taxes or levies, the taxes or levies imposed under this Code shall prevail.


## Section 6080.14.-- Municipal Imposition of Sales and Use Tax.--

(a) **Authorization and Mandatory Requirement.--** All municipalities shall uniformly and mandatorily impose a sales and use tax pursuant to the authorization established in Section 4020.10. Such tax shall be at a fixed tax rate of one point five percent (1.5%), from which municipalities shall collect one percent (1%) and the Secretary shall exclusively and mandatorily collect zero point five percent (0.5%), to be used in such funds provided under subsections (e)(1), (e)(2), and (e)(3) of Section 4050.06, for the purposes established in Sections 4050.07, 4050.08, and 4050.09, as applicable. The one percent (1%) tax rate to be collected by municipalities from the one point five percent (1.5%) municipal tax shall be imposed pursuant to the same base, exemptions, and limitations provided in Subtitle D of the Code, except for the exemptions provided in this Section.

(1) Municipalities, upon approval by the Municipal Assembly, may discretionarily impose the one percent (1%) tax on food products and food product ingredients as defined in Section 4010.01(a) of this Act. In the case of zero point five percent (0.5%) to be collected by the Secretary from the municipal tax, the Secretary shall not collect the zero point five percent (0.5%) tax on food products or food product ingredients as defined in Section 4010.01(a) of this Act, and neither shall he/she collect taxes on any of the exempt food products in Section 4030.11.

(2) Any duly registered merchant not entitled to the exemption provided under Section 4030.02 of the Code, who acquires taxable items for resale, except for those entitled to any exemption under this Subtitle, may, subject to his/her compliance with such requirements as the Secretary may establish, apply for a sales and use tax exemption certificate related to the one percent (1%) tax collected by

municipalities by virtue of this Section. Each certificate issued shall be numbered and valid for such term as the Secretary shall establish. The Secretary, in exercising his/her discretion, may limit or extend the validity of such certificates by means of a determination to that effect.

**(3)** The portion of the credit provided by Section 4050.04 of the Code may not be claimed against the one percent (1%) tax collected by municipalities by virtue of this Section; however, the credit provided in Section 4050.04 of the Code may be claimed against the zero point five percent (0.5%) municipal tax collected by the Secretary by virtue of this Section.

**(4)** Municipalities may adopt regulations consistent with the provisions set forth herein by a municipal ordinance issued to that effect. For such purposes, preemption by Federal laws, regulations, and court decisions shall be taken into account, as well as any other authorized exception to such imposition.

**(5)** The fact that a municipality does not adopt any municipal ordinance does not exempt such municipality from compliance with the obligations and the imposition of the sales and use tax as established in this Act.

**(b)  Use of Taxes.--**

**(1)** The moneys originating from the sales and use tax imposed, corresponding to the one percent (1%) to be collected by municipalities shall be used in solid waste collection and recycling programs, the construction of capital works and improvements, healthcare and security. Notwithstanding the foregoing, no municipality may use such funds for payroll or for expenditures of any kind related thereto, such as employer contributions or payroll taxes, except for payroll expenditures related to programs or projects previously mentioned in this subsection.

**(2)** The moneys originating from the municipal sales and use tax, corresponding to the zero point five percent (0.5%) to be collected by the Secretary, shall be used in such proportions as provided in subsections (e)(1), (e)(2), and (e)(3) of Section 4050.06, for purposes established in Sections 4050.07, 4050.08, and 4050.09, as applicable.

**(c)  Tax Collection and Payment.--**  All municipalities are hereby compelled to collect one percent (1%) of the tax directly or by agreements with the Secretary or with a private business. The Secretary, on the other hand, shall collect zero point five percent (0.5%) of the sales and use tax established in subsection (a) of this Section. Concerning the foregoing, the tax collected by municipalities shall be subject to the following:

**(1)** Municipalities that choose to make collection efforts by themselves or by agreements with a private business shall withhold in their entirety, and for their own benefit, the revenues generated by the sales and use tax. Specifically, the collection of one percent (1%) of the sales and use tax imposed by municipalities, as established under subsection (a) of this Section.

**(2)** In the case of municipalities that authorize the Secretary to collect such tax as previously agreed on, he/she shall remit daily to the bank accounts designated by municipalities, the total of all amounts collected. Amounts collected by the Secretary on account of the municipal sales and use tax may not be used by the Executive Branch, including agencies, departments, instrumentalities, or public corporations, neither may these amounts be withheld for any other purpose.

**(3)** In the event that there is an agreement between a municipality and the Department of the Treasury for the collection of the one percent (1%) sales and use tax, as provided in this Section, any delays in remitting the amounts collected by the Secretary on behalf of municipalities to the bank accounts designated by them shall entail payment of interest. Such interest shall be computed starting on the tenth (10th) day after such amounts were incorrectly collected until the date of their payment or refund at an annual rate of ten percent (10%) on the amount not remitted on time. The imposition and payment of such interest shall be equally applicable to any portion of the sales and use tax belonging to municipalities that the Department of the Treasury has collected and withheld in excess. The amounts thus collected shall be determined by the appropriate audits or certifications required for their implementation, or by sharing information as established in subsection (f) of Section 4050.06.

**(4)** The Secretary shall be required to certify to municipalities for which he/she discharges collection functions, the correction and propriety of the amounts deposited in the bank accounts designated by participating municipalities, as well as the funds deposited in the Municipal Development Fund, pursuant to Section 4050.06(e)(1). A copy of the special certifications issued for such purposes shall be sent to the Legislative Assembly, as well as to the Office of the Commissioner of Municipal Affairs (hereinafter, "OCAM," Spanish acronym), within a term of thirty (30) days after their issue. Concerning the foregoing, OCAM shall provide such information to municipalities that so request within a term of five (5) business days.

**(5)** Municipalities shall report quarterly to the Secretary of the Treasury, the amount of the revenues generated by the sales and use tax provided in this Section corresponding to one percent (1%) of the municipal tax. The Secretary of the Treasury may request any information related to the collection, imposition, and administration of the municipal sales and use tax authorized by this Section.

**(d) Responsibility of Banking Institutions and/or Private Businesses.--**

**(1)** In the case of taxpayers who pay by electronic means, the banking institution or private business managing the corresponding points of sale or deposit shall remit said amount directly to the municipality's account. Specifically, the portion corresponding to one percent (1%) of the sales and use tax imposed by municipalities as established by subsection (a) of this Section.

**Section 6080.15.-- Fines Applicable to Public Show Promoters and Establishment Owners.--**

**(a) Failure to Apply for Endorsement Within the Term Required.--** Any public show promoter who fails to apply to the Secretary, by means of a written statement, for the endorsement to sell tickets not later than ten days preceding the first day of ticket sales, shall be subject to a fine of twenty-five percent (25%) of the amount of the sales tax corresponding to the endorsement issued by the Secretary. This fine shall apply to any promoter even if he/she contracts a company to sell tickets and such company tardily applies for such endorsement.

**(b) Failure to Amend Endorsement or to Apply Therefor.--**

**(1)** When, prior to presenting a show, the promoter fails to amend the endorsement when there is a change as to the performer, the location where the show shall be presented, or the price of tickets issued therefor, he/she shall be subject to a fine of one thousand dollars ($ 1,000), or five thousand dollars ($ 5,000) if admission fees exceed one hundred thousand dollars ($ 100,000), for the first violation.

**(2)** As for repeat offenders, the applicable fine shall be five thousand dollars ($ 5,000), or ten thousand dollars ($ 10,000) if admission fees exceed one hundred thousand dollars ($ 100,000).

**(3)** The fine provided in paragraphs (1) and (2) shall apply to the promoter even if he/she contracts a company to sell tickets and such company fails to apply for or to amend the endorsement.

**(4)** When a promoter presents a public show without having applied for the corresponding endorsement, he/she shall be subject to a fine similar to that which is provided in paragraphs (1) and (2), regardless of whether he/she has contracted a company to sell tickets and such company fails to apply for the endorsement.

**(c) Allowing the Presentation of Events without Applying for Endorsement.--** When the owner or Executor of an establishment allows a public show to be presented in such establishment when the promoter has failed to apply for the endorsement, he/she shall be subject to an administrative fine of one thousand dollars ($ 1,000) for the first violation, or a fine of five thousand dollars ($ 5,000) for repeat offenders. When the promoter is also the owner of the establishment, fines shall be applied to him/her on both capacities.

**(d)** The owner or Executor who lends, cedes, rents, exchanges, or leases an establishment or an area for the presentation of a show to any person other than a registered promoter, or who fails to comply with any

provision of this Code or the regulations that the Secretary shall adopt on the matter of public shows, shall be subject to an administrative fine of ten thousand dollars ($ 10,000).

**(e)** Any ticket-selling company or any representative of a promoter who sells tickets or administers any public show for any other person, he/she shall be subject to an administrative fine of ten thousand dollars ($ 10,000) if such other person is not a registered promoter or does not have an endorsement to sell and collect admission charges.

## CHAPTER 9 -- TRANSITORY PROVISIONS

## SUBCHAPTER A -- GENERAL PROVISIONS

### Section 6091.01.-- Rules in Effect on the Date of Approval of the Code.--

**(a) Regulations in Effect Pursuant to the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act or the Alcoholic Beverages Act of Puerto Rico.--**

**(1)** All regulations adopted by virtue of the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act, or the Alcoholic Beverages Act of Puerto Rico, shall remain in full force and effect until regulations are issued pursuant to the provisions of this Code, provided, that such regulations correspond to provisions of this Code that are identical to the corresponding provisions in such laws.

**(b) Code Provisions Corresponding to Preceding Tax Laws.--**

**(1) Reference to Law Applicable at a Preceding Time.--** Any Code provision that makes reference to the application of any Code provision at a preceding time (or which depends on the application at a preceding time of any Code provision) shall be understood, whenever appropriate and consistent with the purposes of such provision, to refer to (or that it depends on the application in) the corresponding provision of the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act, or the Alcoholic Beverages Act of Puerto Rico, or any other tax law in effect at a preceding time.

**(2) Selections.--** Selections made in taxable years starting before January 1, 2011, pursuant to the provisions of the Puerto Rico Internal Revenue Code of 1994, which correspond to Sections in this Code, shall remain in effect during taxable years beginning after December 31, 2010, provided, that the taxpayer meets the eligibility requirements of this Code.

### Section 6091.02.-- Reference to Preceding Taxable Years.--

When a Code provision makes reference to a preceding taxable year, such taxable year shall include any taxable year before January 1, 2011, provided, that such inclusion is not incompatible with the provisions of this Code.

### Section 6091.03.-- Administrative Determinations and Final Agreements in Effect under the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act or the Alcoholic Beverages Act of Puerto Rico.--

No provision in this Code shall be understood to modify, alter, or invalidate any administrative determination, final agreement, claim, or contract executed under the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act, as applicable, regarding any taxation matters pertaining to taxable years starting before January 1, 2011.

2011 PR H.B. 3070

**Section 6091.04.-- Administrative Determinations Issued under the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act or the Alcoholic Beverages Act of Puerto Rico.--**

**(a)  General Rule.--**  Except as provided in subsection (b), administrative determinations issued by the Secretary pursuant to the provisions of the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, the Puerto Rico Estate and Gift Tax Act, or the Alcoholic Beverages Act of Puerto Rico shall not apply in the following cases:

**(1)  The Puerto Rico Internal Revenue Code of 1994.--**  For taxable years starting after December 31, 2010;

**(2)  The Income Tax Act of 1954.--**  For taxable years starting after June 30, 1995;

**(3)  The Excise Tax Act of the Commonwealth of Puerto Rico of 1987.--**  For taxable events taking place after June 30, 1995;

**(4)  The Puerto Rico Estate and Gift Tax Act.--**  For estates of individuals who die after June 30, 1995, and for gifts made after such date; and

**(5)  The Alcoholic Beverages Act of Puerto Rico.--**  For taxable events taking place on or after the date of effectiveness of Subtitle D of the Puerto Rico Internal Revenue Code of 1994.

**(b)  Special Rules.--**

**(1)  Administrative Determinations under the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, or the Puerto Rico Estate and Gift Tax Act.--**  Except when expressly provided otherwise in this Code, an administrative determination issued to a taxpayer based on any provisions of the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, or the Puerto Rico Estate and Gift Tax Act, which are identical to the corresponding provisions of this Code and which affect the determination of tax liability for a taxable year starting after December 31, 2010, or June 30, 1995, or a taxable event taking place or property transfer made after December 31, 2010, or June 30, 1995, or to a taxable event or property transfer carried out after December 31, 2010, or June 30, 1995, as applicable, shall be deemed to have been issued under the corresponding provisions of this Code.

**(2)  Administrative Determinations in Section 1034.04(b)(6).--**  Administrative determinations issued by the Secretary in connection with a liquidation as described in paragraph (6) of Section 1112(b) of the Puerto Rico Internal Revenue Code of 1994, which is to be completed within three (3) years from the date of the close of the taxable year during which the first of a series of distributions is made, and said first year, or first two years of such liquidation started before January 1, 2011, shall remain in effect as to taxable years starting after December 31, 2010, which are a part of such three (3)-year term.

**Section 6091.05.--** Final Agreements Executed under the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Commonwealth Act of the Government of Puerto Rico of 1987 [sic] or the Puerto Rico Estate and Gift Tax Act.--

**(a)  General Rule.--**  Except as provided in subsection (b), any final agreements executed between a taxpayer and the Secretary pursuant to the provisions of the Puerto Rico Internal Revenue Code of 1994, the Income Tax Act of 1954, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, or the Puerto Rico Estate and Gift Tax Act, which are identical to the corresponding provisions of this Code, shall be understood to have been executed under the provisions of this Code when:

**(1)  The Puerto Rico Internal Revenue Code of 1994.--**  Affecting tax liability for a year starting after December 31, 2010;

**(2) The Income Tax Act of 1954.--** Affecting the determination of tax liability for a year starting after June 30, 1995;

**(3) The Excise Tax Act of the Commonwealth of Puerto Rico of 1987.--** Affecting the determination of tax liability concerning taxable events after June 30, 1995; and

**(4) The Puerto Rico Estate and Gift Tax Act.--** Affecting gifts made after June 30, 1995.

**(b) Final Agreements Related to Taxes on Industrial Development Income.--** Final agreements between a taxpayer and the Secretary pursuant to the provisions of the Puerto Rico Internal Revenue Code of 1994 or the Income Tax Act of 1954, which contain prospective agreements regarding taxes on industrial development income generated by activities covered by an exemption decree pursuant to the provisions of the Economic Incentives Act for the Development of Puerto Rico or any preceding similar law, shall remain in effect in connection with taxable years starting after December 31, 2010, for the balance of the exemption term.

**Section 6091.06.-- Final Agreements to be Executed After the Effective Date of the Code.--**

**(a) General Rule.--**

**(1) Taxable Years Starting Before January 1, 2011, Taxable Events Taking Place or Property Transfers Made Before January 1, 2011.--** Final agreements to be executed by the Secretary after December 31, 2010, in connection with matters related to taxable years starting before January 1, 2011, or taxable events taking place, or property transfers made before January 1, 2011, shall be governed by the corresponding provisions of the Puerto Rico Internal Revenue Code of 1994.

**(2) Taxable Years Starting After December 31, 2010, Taxable Events Taking Place or Property Transfers Made After December 31, 2010.--** Final agreements to be executed by the Secretary in connection with matters related to taxable years starting after December 31, 2010, or taxable events taking place, or property transfers made after December 31, 2010, shall be governed by the provisions of this Code.

**SUBCHAPTER B --** INCOME TAXES

Section 6091.01.[6092.01]--Tax Attributes.--

**(a) In General.--** Except when otherwise provided, and insofar as the provisions of Subtitle A of this Code are similar to the corresponding provisions of the Puerto Rico Internal Revenue Code of 1994, a person shall take into account, for purposes of Subtitle A of this Code, any tax attributes of such person generated in taxable years starting before the date of effectiveness of this Code, subject to any conditions and limitations set forth by the provisions of this Code.

**(b) Attribute Items.--** For purposes of this Subchapter, the term tax attributes includes, but is not limited to:

**(1) Carryover of Net Operating Losses.--** The carryover of net operating losses in Section 1124 of the Puerto Rico Internal Revenue Code of 1994.

**(2) Earnings and Profits.--** Earnings and profits for purposes of Sections 1119 and 1232 of the Puerto Rico Internal Revenue Code of 1994, accrued in taxable years starting before December 31, 2010, including the nature of such earnings and profits.

**(3) Carryover of Capital Loss.--** The amount of the carryover of capital loss as determined in Section 1121(e) of the Puerto Rico Internal Revenue Code of 1994, subject to the limitations set forth in Section 1121(d).

**(4) Accounting Period.--** The accounting period of the person for income tax purposes.

**(5) Accounting Method.--** Except when otherwise provided in this Code, a person shall use the accounting method used for purposes of the Puerto Rico Internal Revenue Code of [sic].

**(6) Inventory.--** A person who keeps an inventory in his/her trade or business shall continue to keep his/her inventory by using the same method he/she used for purposes of the Puerto Rico Internal Revenue Code of 1994.

**(7) Depreciation.--** The depreciation granted in connection with any property acquired before the start of the first taxable year starting after December 31, 2010, shall be determined by using the depreciation method used for purposes of the Puerto Rico Internal Revenue Code of [sic].

**(8)** Sales on Installments.

**(9)** Carryover of Excess of Gifts for Charitable Purposes.

**(10)** Recovery of Items with Tax Benefits.

**(11)** Retroactivity and Carryover of Credits for Purposes of Section 17 of the Income Tax Act of 1954, as amended, and Section 1017 of the Puerto Rico Internal Revenue Code of 1994, as amended.

**(12)** Carryover of Credits for Purposes of Section 1018 of the Puerto Rico Internal Revenue Code of 1994, as amended.

**(13)** Carryover of Credits for Purposes of Section 36 of the Income Tax Act of 1954, as amended, and Section 1036 of the Puerto Rico Internal Revenue Code of 1994, as amended, and 1231(a)(2)(c).

**(c) Special Rules.--**

**(1) Retroactivity and Carryovers.--** For purposes of retroactivity or carryovers pursuant to the provisions of this Code, a taxable year shall include a taxable year starting before January 1, 2011.

### Section 6092.02.-- Application to Qualified Plans and Individual Retirement Accounts.--

The provisions of this Code shall apply to stock bonus, pension, or profit sharing plans, individual retirement accounts, nondeductible individual retirement accounts, health savings accounts, and education savings accounts established before the effective date of this Code pursuant to Sections 1165, 1169, 1169B, 1169C, and 1172, respectively, of the Puerto Rico Internal Revenue Code of 1994, as amended, which comply with the provisions of Sections 1081.01, 1081.02, 1081.03, 1081.04, and 1081.05, as applicable.

### Section 6092.03.-- Application of Subchapter.--

The provisions of Sections 6092.03 through 6092.12 apply to partnerships, and partners in such partnerships, subject to taxation under the provisions of Chapter 7 of Subtitle A.

### Section 6092.04.-- Tax Return of a Partner Must Be Consistent with Tax Return of Partnership.--

**(a)** In his/her tax return, a partner shall treat each partnership item attributable to such partnership in a manner consistent with the treatment of such item in the tax return of the partnership.

**(b) Insufficiency Due to Inconsistent Treatment, Assessed as Mathematical Error.--** Any taxes paid by a partner in an amount less than the appropriate amount due to failure to comply with subsection (a) shall be assessed and collected as if such insufficiency had been the result of a mathematical or clerical error in the tax return of the partnership. Paragraph (2) of Section 6010.02(g) shall not apply to any assessment of a payment under the appropriate amount as referred to in this subsection.

**(c) Adjustments Shall Not Affect Preceding Years for Partners.--**

**(1) In General.--** Except as provided in paragraph (2), subsections (a) and (b) shall apply without taking into account any adjustment to the partnership item in Sections 6092.06, 6092.07, 6092.08, 6092.09, 6092.10, and 6092.11.

**(A) Certain Changes in Distributive Shares Taken into Account by Partner.--**

**(B) In General.--**  To the extent that any adjustment in Sections 6092.06, 6092.07, 6092.08, 6092.09, 6092.10, and 6092.11 involves a change in Section 6092.07 in the distributive shares of a partner from the amount of any partnership item reflected in the tax return of the partnership, such adjustment shall be taken into account when applying the Code to such partner for the partner's taxable year for which it was required to take such item into account.

**(C) Coordination with Deficiency Procedures.--**

**(i) In General.--**  No penalty provided in this Code shall apply when the same arises from the payment of an amount less than the amount owed as a result of an adjustment as established in subparagraph (A).

**(ii) Adjustment Not Prohibited.--**  Notwithstanding the foregoing, the provisions of clause (i) shall impede assessment or collection of any payment of taxes for an amount less than the amount owed, or the granting of any credit or refund for any overpayment of taxes attributable to an adjustment as established in subparagraph (A), and the assessment, collection, or granting made to that effect (or any notice) shall not impede any notice, procedure, or determination of any penalty.

**(D) Prescriptive Terms.--**  The term for:

**(i)**  Assessing a payment of taxes in an amount less than the amount owed; or

**(ii)**  Filing a credit or refund claim for any overpayment of taxes attributable to an adjustment as established in subparagraph (A) shall not expire before the close of the term prescribed in Section 6092.09 to make adjustments in connection with the partnership's taxable year in question.

**(E) Chain Structures.--**  If the partner referred to in subparagraph (A) is another partnership or a corporation of individuals, the rules of this paragraph shall also apply to persons holding an interest in such partnership or corporation of individuals (as the case may be).

**(d) Addition to Taxes for Noncompliance with this Section.--**  For additions to taxes for noncompliance by a partner with the requirements of this Section, see Sections 6030.02, 6030.04, and 6030.08.

**Section 6092.05.-- Procedures for Taking Partnership Adjustments into Account.--**

**(a) Adjustments Passed to Partners for the Year the Adjustments are to take Effect.--**

**(1) In General.--**  If any partnership adjustment in connection with a partnership item takes effect (within the meaning of subsection (d)(2)) during any taxable year of the partnership, such adjustment shall be taken into account when determining the amount for such item for the taxable year of the partnership in which such adjustment takes effect. When applying this Code to any person who is (whether directly or indirectly) a partner in such partnership during such taxable year of the partnership, such adjustment shall be treated as an item that has in fact arisen during said taxable year.

**(2) Partnership is Responsible in Certain Cases,.--**  If:

**(A)**  A partnership chooses, under this paragraph, not to take into account an adjustment under paragraph (1);

**(B)**  A partnership does not choose such option, but when filing its tax return for any taxable year of the partnership, such partnership does not take into account any partnership adjustment in its entirety as required under paragraph (1); or

**(C)**  Any partnership adjustment involves a reduction in a credit that exceeds the amount of such credit as determined for the taxable year of the partnership in which the adjustment takes effect, the partnership shall pay to the Secretary an amount to be determined by applying the rules under

subsection (b)(4) to adjustments not taken into account and any excess referred to in subparagraph (C).

**(3) Compensative Adjustments Taken into Account.--**  If a partnership requires another adjustment in a taxable year after the adjusted year and before the taxable year in which said partnership adjustment takes effect, such additional adjustment shall be taken into account under this subsection for the taxable year of the partnership in which such adjustment takes effect.

**(4) Coordination.--**  The amounts taken into account under this subsection for any taxable year of the partnership shall continue to be treated as adjustments for the adjusted year for purposes of determining whether such amounts may be readjusted in Sections 6092.06, 6092.07, 6092.08, 6092.09, 6092.10, and 6092.11.

**(b) Partnership Liable for Interest and Penalties.--**

**(1) In General.--**  If a partnership adjustment takes effect during any taxable year of the partnership and such adjustment results in a payment that is less than the amount owed and determined for the adjusted year, the partnership:

**(A)**  Shall pay to the Secretary any interest computed under paragraph (2); and

**(B)**  Shall be liable for any penalty, addition to taxes, or additional amounts, as provided in paragraph (3).

**(2) Determination of Amount of Interest.--**  Interest computed under this paragraph regarding any partnership adjustment is the interest that would be determined in Section 6030.01 on any payment that is less than the amount owed and determined under paragraph (4) in connection to such adjustment for the term starting on the day following the date of expiration of the tax return for the adjusted year and ending on the date of expiration of the tax return for the taxable year in which such adjustment takes effect (or, if earlier, in the case of any adjustment to which subsection (a)(2) applies, the date on which the payment under subsection (a)(2) is made).

**(C)**  Appropriate adjustments in the amount determined in subparagraph (B) shall be made in connection with adjustments required for taxable years of the partnership following the adjusted year and preceding the year in which the partnership adjustment takes effect on account of such partnership adjustment.

**(3) Penalties.--**  A partnership shall be liable for any penalty, addition to taxes, or additional amount for which it would have been liable if such partnership had been an individual subject to taxation under Subtitle A for the adjusted year and the payment that is less than the amount owed as determined under paragraph (4) was a payment in an amount less than the amount truly owed (or undervaluation) for such year.

**(4) Payment in Amount Less than Amount Owed as Determined.--**  For purposes of this subsection, a payment in an amount less than the amount owed as determined under this paragraph in connection with any partnership adjustment is the payment in an amount less than the amount owed (if any) that would result from:

**(A)**  Netting all adjustments to income, profit, loss, or deduction items and treating any net income increase as a payment in an amount less than the amount owed, equal to the amount of such net income increase, multiplied by the highest tax rate in effect in Section 1021.01 or 1022.01 for the adjusted year; and

**(B)**  Taking into account adjustments to credits, such as increases or reductions (as appropriate) in the amount of taxes.

**(C)**  For purposes of subparagraph (B), any net loss reduction shall be treated as an income increase, and a similar rule shall apply to any net loss increase.

**(c) Administrative Provisions.--**

**(1) In General.--**  Any payment required by subsection (a)(2) or (b)(1)(A):

**(A)**  Shall be assessed and collected as a tax;

**(B)**  Shall be paid on or before the date of expiration of the tax return for the taxable year of the partnership in which the partnership adjustment takes effect.

**(2) Interest.--**  For purposes of determining interest, any payment required by subsections (a)(2) or (b)(1)(A) shall be treated as a payment of tax that is less than the amount owed.

**(3) Penalties.--**

**(A) In General.--**  If a partnership fails to pay on the date prescribed therefor any amount required under subsection (a)(2) or (b)(1)(A), such partnership is hereby imposed a penalty of ten percent (10%) of the amount by which the payment is in an amount less than the amount owed. For purposes of the preceding sentence, the term "payment in an amount less than the amount owed" means the excess of any payment required by this Section over the amount (if any) paid on or before the date prescribed for such purposes.

**(B) Applicable Additions to Taxes and Penalties.--**  For purposes of Subchapter C, any payment required by subsection (a)(2) shall be treated as a payment of taxes in an amount less than the amount owed.

**(d) Definitions and Special Rules.--**  For purposes of this Section:

**(1) Partnership Adjustment.--**  The term "partnership adjustment" means any adjustment in the amount of any partnership item.

**(2) When the Adjustment Takes Effect.--**  The partnership adjustment takes effect:

**(A)**  In the case of adjustments made pursuant to a court decision on proceedings filed under Part II, when such decision becomes final and binding;

**(B)**  In the case of adjustments made under an administrative request for adjustment in Section 6092.10, when such adjustment is allowed by the Secretary; or

**(C)**  In other cases, when such adjustment is made.

**(3) Adjusted Year.--**  The term "adjusted year" means the taxable year of the partnership related to the item being adjusted.

**(4) Tax Return Due Date.--**  The term "tax return due date" means, in connection with any taxable year, the date prescribed to file the partnership's tax return for such taxable year (as determined without taking into account any time extensions).

**(5) Adjustments Involving a Change in Nature.--**  As per such regulations as the Secretary shall promulgate, appropriate adjustments shall be made in the application of this Section for purposes of taking into account any partnership adjustments involving a change in the nature of any income, profit, loss, or deduction item.

**(e) Nondeductible Payments.--**  No deduction shall be allowed under Subtitle A for any payment that a partnership is required to make under this Section.


**Section 6092.06.-- Authority of the Secretary.--**

**(a) General Rule.--**  The Secretary is hereby authorized and directed to make partnership adjustments in any partnership item as necessary in order for such item to be treated properly.

**(b) Notice of Partnership Adjustment.--**

**(1) In General.--**  If the Secretary determines that a partnership adjustment is required, the Secretary is hereby authorized to send notice of such adjustment to the partnership via certified mail. Such notice

shall suffice if sent to the partnership to its last known address, even if such partnership has ceased to exist.

**(2) Further Notices, Restricted.--**  If the Secretary sends a notice of partnership adjustment to any partnership for any taxable year and the partnership files a petition in Section 6092.08 in connection with such notice, absent fraud, malfeasance, or misrepresentation of a material fact, the Secretary shall not send any further notice to the partnership regarding such taxable year.

**(3) Authority to Rescind Notice with Consent of Partnership.--**  The Secretary may, with the consent of the partnership, rescind any notice of partnership adjustment sent to such partnership. Any notice thus rescinded shall not be treated as a notice of partnership adjustment for purposes of this Section, Section 6092.07, and Section 6092.08 in connection with such notice. Nothing provided in this subsection shall affect any suspension in the course of any prescriptive term for any period during which such rescinded notice was in effect.

## Section 6092.07.-- Restrictions on Partnership Adjustments.--

**(a) General Rule.--**  Except as otherwise provided under this Subtitle, no adjustment shall be made to any partnership item (and no attachments or court proceedings to collect any amount resulting from such adjustment may be conducted or filed) before:

**(1)** The close of day number ninety (90) after the date on which a notice of partnership adjustment was sent to a partnership; and

**(2)** If a petition is filed in Section 6092.08 in connection with such notice, the date the court decision became final and binding.

**(b) Premature Action May be Enjoined.--**  Any action that violates the provisions of subsection (a) may be enjoined by the Court of First Instance. The Court of First Instance shall have no jurisdiction to enjoin any action under this subsection, unless a petition has been timely filed in Section 6092.08 only in connection with the adjustments that prompted such petition.

**(c) Exceptions to Restrictions on Adjustments.--**

**(1) Adjustments Arising from Mathematical or Clerical Errors.--**

**(A) In General.--**  If the partnership is notified that, due to a mathematical or clerical error in the partnership's tax return, an adjustment to a partnership item is required, rules similar to the rules under paragraphs (1) and (2) of Section 6010.02(g) shall apply to such adjustment.

**(B) Special Rule.--**  If a partnership is a partner in another partnership, any adjustment caused by noncompliance by the partnership with the requirements set forth in Section 6092.04(a) in connection with its interest in such other partnership shall be treated as an adjustment of the kind established in subparagraph (A), except that paragraph (2) of Section 6010.02(g) shall not apply to such adjustment.

**(2) Partnership May Waive Restrictions.--**  At any time, the partnership shall have (whether or not a notice of partnership adjustment has been issued) the right to waive the restrictions provided in subsection (a) in connection with any partnership adjustment, by means of a signed written notice filed with the Secretary.

**(d) Cap When Proceedings Have Not Started.--**  If proceedings instituted in Section 6092.08 have not yet started in connection with any notice of partnership adjustment during the ninety (90)-day term prescribed in subsection (a), the amount for which the partnership is responsible in Section 6092.05 (and any other increase in the tax liability of a partner under Subtitle A by reason of any adjustment in Section 6092.05(a)) shall not exceed the amount determined according to such notice.

## Section 6092.08.-- Review of Administrative Determinations on Partnership Adjustments.--

2011 PR H.B. 3070

**(a) General Rule.--** Within ninety (90) days following the date a notice of partnership adjusted has been sent to a partnership in connection with any taxable year of such partnership, the partnership may resort to the Court of First Instance against such determination and request a readjustment in partnership items for such taxable year, by filing a lawsuit as provided by law within a term of thirty (30) days from the date the final determination notice was mailed, after a bond has been posted in favor of the Secretary before him/her, and subject to his/her approval, for the amount stated in such final determination notice; provided, however, that the taxpayer may pay such portion of taxes with which he/she agrees and file a lawsuit for the remainder, in which case, the bond shall not exceed the amount of taxes for which the lawsuit is being filed, plus interest, surcharges, and any other additions to taxes over the deficiency, computed as provided in paragraph (1). Except as otherwise provided in this subsection, the posting of the bond for the amount stated by the Secretary in the final determination notice and the filing of the lawsuit at the Court of First Instance, both done within the term provided above, shall be requirements without which the Court of First Instance may not hear the matter. Such bond shall not exceed the amount of the taxes notified, plus interest on the deficiency, computed for a term of one (1) year in addition to the annual ten percent (10%) rate.

**(b)** The provisions of Section 6010.02 shall apply to supplement the provisions of this Section, except for paragraphs (1) and (2) of subsection (a).

**Section 6092.09.-- Prescriptive Term for Adjustments.--**

**(a) General Rule.--** Except as otherwise provided in this Section, no adjustment may be made to any partnership item after four (4) years have elapsed after the latest between:

**(1)** The date the partnership's tax return for such taxable year was filed; or

**(2)** The last day for filing such tax return for said year (as determined without taking into account any time extensions).

**(b) Time Extension by Agreement.--** The term described in subsection (a) (including a time extension under this subsection) may be extended by agreement between the Secretary and the partnership before such term expires.

**(c) Special Rule in Case of Fraud, etc.--**

**(1) False Tax Return.--** In the case of partnership tax returns that are false or fraudulent, so filed with the intent to evade taxes, the adjustment may be made at any time.

**(2) Substantial Income Omission.--** If any partnership omits from its gross income an amount that should be properly included as such in excess of twenty-five percent (25%) of the amount of gross income stated in its tax return, subsection (a) shall be applied by substituting "three (3) years" with "six (6) years."

**(3) Tax Return Not Filed.--** In the event of failure by the partnership to file a tax return for any taxable year, the adjustment may be made at any time.

**(4) Tax Returns Prepared by the Secretary.--** For purposes of this Section, a tax return prepared by the Secretary in Section 6051.05 on behalf of the partnership shall not be treated as a partnership's tax return.

**(d) Suspension When the Secretary Mails a Notice of Adjustment.--** If a notice of partnership adjustment in connection with any taxable year is mailed to the partnership, the term specified in subsection (a) (as modified by other provisions of this Section) shall be suspended:

**(1)** For the term during which an action may be filed under Section 6092.08 (and, if a petition is filed in Section 6092.08 in connection with such notice, until the court decision becomes final and binding); and

**(2)** For a year later.

2011 PR H.B. 3070

**Section 6092.10.-- Requests for Administrative Adjustments.--**

**(a) General Rule.--**  A partnership may file a request for administrative adjustment concerning partnership items for any taxable year of such partnership at any time:

**(1)** Within four (4) years after the latest between:

**(A)** The date the partnership's tax return for said year is filed; or

**(B)** The last day for filing the partnership's tax return for said year (as determined without taking into account any time extensions); and

**(2)** Before mailing to the partnership a notice of partnership adjustment in connection with said taxable year.

**(b) Action by the Secretary.--**  If a partnership files a request for administrative adjustment under subsection (a), the Secretary may allow any part of the adjustments so requested.

**(c) Special Rule for Time Extensions in Section 6092.09.--**  If the term described in Section 6092.09(a) is extended pursuant to an agreement under Section 6092.09(b), the term prescribed under subsection (a)(1) shall not expire before six (6) months following the expiration of the time extension granted in Section 6092.09(b).

**Section 6092.11.-- Review of Request for Administrative Adjustment Not Granted in its Entirety.--**

**(a) In General.--**  If any part of a request for administrative adjustment filed in Section 6092.10 is not granted by the Secretary, the partnership may file a petition before the Court of First Instance for an adjustment on partnership items related to such part of the request.

**(b) Term to File Petition.--**  A petition may be filed under subsection (a) in connection with partnership items for a taxable year of such partnership only:

**(1)** After six (6) months have elapsed from the date the request was filed in Section 6092.10; and

**(2)** Before two (2) years following the date of such request.

The two (2)-year term set forth in paragraph (2) shall be extended by any term agreed in writing by the partnership and the Secretary.

**(c) Coordination.--**

**(1) Notice of Partnership Adjustment Before Filing Petition.--**  No petition may be filed under this Section after the Secretary mails to the partnership a notice of partnership adjustment for the taxable year related to a request made under Section 6092.10.

**(2) Notice of Partnership Adjustment After Filing, but Before Petition Hearing.--**  If the Secretary mails to the partnership a notice of partnership adjustment for the partnership's taxable year related to a request made under Section 6092.10 after having filed a petition under this subsection, but before the hearing for such petition is held, such petition shall be treated as an action filed under Section 6092.08 in connection with such notice, except that posting a bond under paragraph (2) of subsection (a) of Section 6092.08 shall not be required.

**(3) Notice Shall be Given Before Expiration of Prescriptive Term.--**  A notice of partnership adjustment for the partnership's taxable year shall be taken into account under paragraphs (1) and (2) only if such notice is mailed before the expiration of the term prescribed in Section 6092.09 to make adjustments to partnership items for said taxable year.

**(d) Scope of Court Review.--**  Except for the case described in paragraph (2) of subsection (c), the Court of First Instance shall only have jurisdiction to determine any such partnership items related to the part of the request made in Section 6092.10 not granted by the Secretary and such items for which the Secretary declares adjustments as compensation for the adjustments requested by the partnership.

**Section 6092.12.-- Definitions and Special Rules.--**

(a)   For purposes of this Subchapter, the term "partnership item" means, in connection with a partnership, any item required to be taken into account for the partnership's taxable year under any provision of Subtitle A, insofar as the regulations promulgated by the Secretary provide that, for purposes of this Subtitle, it is more appropriate to determine such item at partnership rather than at partner level.

(b) **Partners Bound by Partnership Actions, Etc.--**

(1) **Designation of Partner.--**   Each partnership shall designate (as prescribed by the Secretary) a partner (or another person), to have exclusive authority to act on behalf of the partnership. In any case in which no such designation exists, the Secretary may choose any partner to be the partner with such authority.

(2) **Binding Effect.--**   Partnerships and all partners within such partnerships shall be bound:

(A) By actions taken by the partnership under this Chapter; and

(B) By any decision in proceedings filed under this Subchapter.

(c) **Partnerships with Main Business Location Outside Puerto Rico.--**   For purposes of Sections 6092.08 and 6092.11, when the main business location is outside Puerto Rico, such partnership shall be treated as if located in San Juan, Puerto Rico.

(d) **Treatment When Partnership Ceases to Exist.--**   If a partnership ceases to exist before a partnership adjustment takes effect, such adjustment shall be taken into account by former partners of the partnership under regulations promulgated by the Secretary.

(e) **Partnerships Under Title 11 of United States Code.--**

(1) **Suspension of Prescriptive Term to Make Adjustment, Assessment, or Collection.--**   The prescriptive term provided in this Subchapter to make a partnership adjustment (or provided in this Subtitle in connection with the assessment or collection of any amount that must be paid in Section 6092.05) shall be suspended, in cases under Title 11 of the United States Code, for such term during which the Secretary is barred from making such adjustment (or assessment or collection) on account of such case, and:

(A) For adjustment or assessment, sixty (60) days after such term; and

(B) For collection, six (6) months after such term.

For purposes of this subsection, filing a proof of claim, an action to demand payment, or any other action in a case under Title 11 of the United States Code shall not be treated as a prohibited action under this subsection.

(2) **Suspension of Prescriptive Term to Request Court Review.--**   The term specified in Section 6092.08(a) or 6092.11(b) shall be suspended in a case under Title 11 of the United States Code for the term during which the partnership is barred from filing a petition in Section 6092.08 or 6092.11 on account of such case, and for sixty (60) days after such term.

(f) **Regulations.--**   The Secretary shall promulgate regulations as necessary to enforce the provisions of this Subchapter, including regulations to prevent abuse by manipulation of the provisions of this Subchapter.


**SUBCHAPTER C --**  CONSEQUENCES OF CODE EFFECTIVENESS


**Section 6093.01.-- Existing Rights and Requirements.--**

The repeal of any provision of the Puerto Rico Internal Revenue Code of 1994 shall not affect any acts conducted or any vested rights or any proceedings or lawsuits started in civil cases, before any such repeal, but all rights and requirements under said law shall continue and may be applied as if such provision had not been repealed.

## Section 6093.02.-- Crimes and Fines.--

Any crime and penalties or fines imposed for violations of any provision of a repealed law shall be processed and punishment shall be imposed in the same manner and with the same effect as if this Code had not been promulgated.

## Section 6093.03.-- Reference to Other Provisions.--

For purposes of applying the provisions of the Internal Revenue Code of 1994 and this Code to any term, any reference shall be deemed a reference to the corresponding provision of the preceding or subsequent law, as the case may be.

## Section 6093.04.-- Other Applicable Rules.--

**(a)  Reference in Other Laws to the Puerto Rico Internal Revenue Code of 1994.--**  Any reference to any other law of Puerto Rico, or to any executive order, or to any provision of Act No, 120 of October 31, 1994, as amended [13 L.P.R.A. §§ 8006 et seq.], known as the "Puerto Rico Internal Revenue Code of 1994," shall be understood, unless otherwise expressly incompatible with the intent of this Code, to refer also to the corresponding Section of this Code.

**(b)  Income and Expenditure Items Not to be Duplicated.--**  Unless expressly provided otherwise, the same item, whether an income, a deduction, or a credit item, shall not be taken into account when computing the taxes imposed by this Code or taxes imposed by the Puerto Rico Internal Revenue Code of 1994.

## CHAPTER 10 -- SUPPLEMENTAL PROVISIONS

## Section 6100.01.-- Repeal.--

Except for subsections (f) and (h) of Section 1123 of Subtitle A, and Chapter 7 of Subtitle B of the Puerto Rico Internal Revenue Code of 1994, Act No. 120 of October 31, 1994, as amended [13 L.P.R.A. §§ 8006 et seq.], known as the "Puerto Rico Internal Revenue Code of 1994," is hereby repealed as of the date of effectiveness of this Code, as well as any law or part of a law that does not conform to the provisions of this Code, with the following provisions:

**(a)  Applicability of the Puerto Rico Internal Revenue Code of 1994.--**

**(1)  Subtitle A.--**  Except as otherwise provided, the provisions of Subtitle A of the Puerto Rico Internal Revenue Code of 1994 shall apply to taxable years starting before January 1, 2011,

**(2)  Subtitle B.--**  Except as otherwise provided, the provisions of Subtitle B of the Puerto Rico Internal Revenue Code of 1994 shall apply to taxable events taking place before the first day of the third month following the date of approval of this Code.

**(3)  Subtitle BB.--**  Except as otherwise provided, the provisions of Subtitle BB of the Puerto Rico Internal Revenue Code of 1994 shall apply to taxable events taking place before the first day of the third month following the date of approval of this Code.

**(4)  Subtitle C.--**  Except as otherwise provided, the provisions of Subtitle C of the Puerto Rico Internal Revenue Code of 1994 shall apply to estates of individuals who die before January 1, 2011, and to gifts made before the first day of the third month following the date of approval of this Code.

(5) **Subtitle CC.--** Except as otherwise provided, the provisions of Subtitle CC of the Puerto Rico Internal Revenue Code of 1994 shall apply to any collection, lien, proceeding, action, or claim corresponding to fiscal years 2009-2010 and 2010-2011.

(6) **Subtitle D.--** Except as otherwise provided, the provisions of Subtitle D of the Puerto Rico Internal Revenue Code of 1994 shall apply to taxable events taking place before April 1, 2011.

(7) **Subtitle E.--** Except as otherwise provided, the provisions of Subtitle E of the Puerto Rico Internal Revenue Code of 1994 shall remain in effect until January 1, 2011.

(8) **Subtitle F.--** Except as otherwise provided, the provisions of Subtitle F of the Puerto Rico Internal Revenue Code of 1994 shall remain in effect until January 1, 2011.

(b) Any offense and all penalties and fines imposed for violating any provision of the Puerto Rico Internal Revenue Code of 1994 shall be processed, and punishment shall be imposed in the same manner and with the same effect as if this Code had not been promulgated.

(c) For purposes of the application of the provisions of the Puerto Rico Internal Revenue Code of 1994 and this Code to any period, any reference shall be understood to be a reference to the corresponding provision of the preceding or the subsequent law, as the case may be.

## Section 6100.02.-- Severability of Provisions.--

If any clause, paragraph, section, title, or part of this Code is found to be unconstitutional by a competent Court, the judgment pronounced to that effect shall not affect, impair, or invalidate the remaining provisions of this Code. The effect of such judgment shall be limited to the clause, paragraph, section, title, or part of the Code thus found to be unconstitutional.

## Section 6100.03.-- Fiscal Responsibility Tests.--

(a) In order to oversee and protect the financial and fiscal health of the Government of Puerto Rico, as set forth in Section 1021.01(a) of Subtitle A of this Code, before any additional tax reliefs take effect for taxable years starting on or after January 1, 2014, January 1, 2015, and January 1, 2016, which represent regular tax rates set forth in paragraphs (4), (5), and (6), respectively, of such subsection (a) for taxable years starting after December 31, 2013, the three fiscal responsibility tests set forth in subsection (b) shall be conducted. Tax reliefs for years closing on December 31, 2010, 2011, 2012, and 2013 shall not be subject to such fiscal responsibility tests.

(b) Fiscal responsibility tests shall be conducted by the government officials designated further, and the results of such tests shall be certified by said officials to the Governor of Puerto Rico and the Legislative Assembly in a joint report submitted before the approval of the budget for the Government of Puerto Rico for fiscal years starting on July 1, 2013, July 1, 2014, and July 1, 2015, respectively; such tests shall be re-certified on or before October 1, 2013, October 1, 2014, and October 1, 2015. Once the three fiscal responsibility test requirement has been met for any year as may apply, the additional tax reliefs set forth for said year shall take effect. Otherwise, failure to meet this requirement shall bar additional tax reliefs for the applicable years from taking full force, and their effectiveness shall be postponed until any such year in which the fiscal responsibility test requirement is met.

(1) **General Fund Net Income Test.--** The net income projection for the General Fund, as certified by the Secretary of the Treasury, shall be equal to or greater than:

(A) Nine billion two hundred fifty million dollars ($ 9,250,000,000) for the fiscal year starting on July 1, 2013;

(B) Nine billion three hundred fifty million dollars ($ 9,350,000,000) for the fiscal year starting on July 1, 2014; and

2011 PR H.B. 3070

(C)  Nine billion four hundred fifty million dollars ($ 9,450,000,000) for the fiscal year starting on July 1, 2015.

(2)  **General Fund Expenditure Test.--**  The expenditure projection for the General Fund, as certified by the Director of the Office of Management and Budget, shall be equal to or less than:

(A)  Ninety-nine percent (99%) of the net income projection for the General Fund, as certified by the Secretary of the Treasury for the fiscal year starting on July 1, 2013; and

(B)  Ninety-eight point five percent (98.5%) of the net income projection for the General Fund, as certified by the Secretary of the Treasury for the fiscal year starting on July 1, 2014, and for the fiscal year starting on July 1, 2015.

(C)  In the year in which the fiscal responsibility test requirement is met, a one percent (1%) differential between net income and expenditures of the General Fund for the fiscal year starting on July 1, 2013, and a one point five percent (1.5%) differential for fiscal years starting on July 1, 2014, and July 1, 2015, shall be deposited in the reserve funds of the Government of Puerto Rico and included in said items in the General Fund budget.

(3)  **Economic Growth Test.--**  The growth in the real gross product of Puerto Rico, as certified by the Chair of the Planning Board, shall be equal to or greater than:

(A)  One point five percent (1.5%) for the fiscal year starting on July 1, 2013;

(B)  Two percent (2%) for the fiscal year starting on July 1, 2014; and

(C)  Two point seventy-five percent (2.75%) for the fiscal year starting on July 1, 2015.


## Section 6100.04.-- Effectiveness.--

(a)  This Act, known as the "Internal Revenue Code for a New Puerto Rico," shall take effect on January 1, 2011, with the following provisions:

(1)  **Subtitle A.--**

(A)  **General Rule.--**  Except for the provisions in subparagraph (B), the provisions of Subtitle A shall apply to taxable years starting after December 31, 2010.

(B)  **Exceptions.--**

(i)  The provisions of Section 1062.03 shall apply to payments made after March 31, 2011; and

(ii)  The special provisions of Subtitle A related to the promulgation of regulations shall take effect on the date of approval of this Code.

(2)  **Subtitle B.--**  The provisions of Subtitle B shall apply to estates of individuals who die after December 31, 2010, and to gifts made as of the first day of the third month following the date of approval of this Code.

(3)  **Subtitle C.--**  The provisions of Subtitle C shall apply to taxable events taking place as of the first day of the third month following the date of approval of this Code.

(4)  **Subtitle D.--**  The provisions of Subtitle D shall apply to taxable events taking place as of the first day of the third month following the date of approval of this Code.

(5)  **Subtitle E.--**  The provisions of Subtitle E shall apply as of April 1, 2011.

(6)  **Subtitle F.--**

(A)  **General Rule.--**  Except for the provisions set forth in subparagraph (B), the provisions of Subtitle F shall apply as of January 1, 2011.

(B)  **Exception.--**  The provisions of Section 6051.11 related to the promulgation of regulations and administrative determinations shall take effect on the date of approval of this Code.

2011 PR H.B. 3070

**(b)  Taxes Imposed by the Puerto Rico Internal Revenue Code of 1994.--**  After the date of effectiveness of the provisions of this Code, the provisions of Subtitles A through G regarding any proceedings, action, or claim begun after December 31, 2010, or which by December 31, 2010, is not formally pending before the Department or any Court under the provisions of the Puerto Rico Internal Revenue Code of 1994, shall apply, regardless of whether it has been otherwise provided in the corresponding preceding law, as follows:

**(1)**  The provisions of Subtitle A of the Puerto Rico Internal Revenue Code of 1994, to taxable years starting before January 1, 2011.

**(2)**  The provisions of Subtitle B of the Puerto Rico Internal Revenue Code of 1994, to taxable events taking place before the first day of the third month following the date of approval of this Code.

**(3)**  The provisions of Subtitle BB of the Puerto Rico Internal Revenue Code of 1994, to taxable events taking place before the first day of the third month following the date of approval of this Code.

**(4)**  The provisions of Subtitle C of the Puerto Rico Internal Revenue Code of 1994, to estates of individuals who die before January 1, 2011, and to gifts made before the first day of the third month following the date of approval of this Code.

**(5)**  The provisions of Subtitle CC of the Puerto Rico Internal Revenue Code of 1994, regarding any collection, lien, proceedings, action, or claim corresponding to fiscal years 2009-2010 and 2010- 2011 shall remain in effect, and

**(6)**  The provisions of Subtitle D of the Puerto Rico Internal Revenue Code of 1994, to taxable events taking place before the first day of April, 2011.

# History

Approved January 31, 2011

Copyright © 2011
by THE SECRETARY OF STATE OF PUERTO RICO for THE COMMONWEALTH OF PUERTO RICO All rights reserved PUERTO RICO ADVANCE LEGISLATIVE SERVICE Official English Translation: Materials added to this file as received from Translation Bureau

**End of Document**