# Debtors' Ex. 110

# EXHIBIT A



ACT 7-2021

I, ATTY. JAVIER GOMEZ CRUZ, Secretary of the House of Representatives of the Commonwealth of Puerto Rico,

HEREBY CERTIFY

House Bill 120, entitled

*"An ACT*

*To create the "Dignified Retirement Act" in order to establish and standardize an energetic and vigorous public policy of zero cuts to the pensions of the participants of the retirement systems and retired persons of Puerto Rico's public service; to create the necessary legal framework for the eventual establishment of a Trust for the Joint Administration of the Retirement Systems to ensure the payment of pensions of public servants; to set out the public policy that will guide the conversations and representations of the Government of the Commonwealth of Puerto Rico, its municipalities, administrative units and agents in any process of restructuring, adjustment, mediation or negotiation of claims against the retirement systems, their participants and pensioners; to propose a model for the establishment and treatment of different classes of creditors in a Debt Adjustment Plan that conforms to this public policy; to amend sections 2, 3, 5 and 9 of Act 2-2017, as amended, known as the "Puerto Rico Financial Advisory Authority and Fiscal Agency Act", to amend Section 1-104 and to add a new Section 1-111 to Act No. 447 of May 15, 1951, as amended, known as the "Retirement System for Employees of the Government of the Commonwealth of Puerto Rico", to amend Section 1.1 and add a new Section 2.6 to Act 160-2013, as amended, known as the "Commonwealth of Puerto Rico Teachers' Retirement System Act" and to add a new Section 1-A and amend Section 2 of Act No. 12 of October 19, 1954, as amended, known as the "Judiciary Retirement Act", in order to adjust them to the public policy established in this Act; to amend Sections 1.4 and 1.7 of Act 106-2017, as amended, known as the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants"; to amend Section 2 of Act No. 104 of June 29, 1955, as amended, known as the*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

[Blank page]

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

*"House Bill 120*
*Act of May 25, 2021"*
Page 2

> **"Claims and Suits against the State Act", to create a judicial tool for the**
> **enforcement of this public policy; and for other related purposes."**

has been passed by the House of Representatives and the Senate of the Commonwealth of Puerto Rico in the form set forth in the accompanying document.

IN WITNESS WHEREOF and to notify the Governor of the Commonwealth of Puerto Rico, I have hereunto set my hand in my office in the Capitol, San Juan, Puerto Rico, this twenty-fifth (25th) day of May of the year two thousand and twenty-one, and have affixed the seal of the House of Representatives of the Commonwealth of Puerto Rico,

[Signature]
Atty. Javier Gomez Cruz,
Secretary

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

[Blank page]

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

**(House Bill 120)**

## An ACT

To create the "Dignified Retirement Act", in order to establish and standardize an energetic and vigorous public policy of zero cuts to the pensions of the participants of the retirement systems and retired persons of the public service of Puerto Rico; to create the necessary legal framework for the eventual establishment of a Trust Fund for the Joint Administration of the Retirement Systems to ensure the payment of pensions of public servants; to provide the public policy that will guide the conversations and representations of the Government of the Commonwealth of Puerto Rico, its municipalities, administrative units and agents in any process of restructuring, adjustment, mediation or negotiation of claims against the retirement systems, their participants and pensioners; to propose a model for the establishment and treatment of different classes of creditors in a Debt Adjustment Plan that conforms to this public policy; to amend Sections 2, 3, 5 and 9 of Act 2-2017, as amended, known as the "Puerto Rico Fiscal Agency and Financial Advisory Authority Act", to amend Section 1-104 and to add a new Section 1-111 to Act No. 447 of May 15, 1951, as amended, known as the "Retirement System for Employees of the Government of the Commonwealth of Puerto Rico", to amend Section 1.1 and add a new Section 2.6 to Act 160-2013, as amended, known as the "Commonwealth of Puerto Rico Teachers' Retirement System Act" and to add a new Section 1-A and amend Section 2 of Act No. 12 of October 19, 1954, as amended, known as the "Judiciary Retirement Act", in order to adjust them to the public policy established in this Act; to amend Sections 1.4 and 1.7 of Act 106-2017, as amended, known as the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants"; to amend Section 2 of Act No. 104 of June 29, 1955, as amended, known as the "Claims and Suits against the State Act", to create a judicial tool for the enforcement of this public policy; and for other related purposes.

## STATEMENT OF MOTIVES

*"The dignity of the human being is inviolable."* So reads Section One of our Bill of Rights. From the moment a government is constituted by the consent of the governed, the universal presumption is that such government is constituted for the service and benefit of the people who ordain it. A constitutional government must therefore have the highest and purest confidence of the public

*Certified to be a correct and true translation from the source text in Spanish to the target language English.
1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118
By Targem Translations Inc.*

that it represents and must understand its responsibility to work for the aspirations that the people have declared in their constitution.

The Puerto Rico Oversight, Management and Economic Stability Act (PROMESA), enacted by the U.S. Federal Government in the summer of 2016, created a parallel government to Puerto Rico's constitutional government designed to subvert Puerto Ricans' democratic criteria regarding our budgetary priorities, basic needs and essential public services. This parallel government was officially named the Financial Oversight and Management Board for Puerto Rico (hereinafter referred to as FOMB).

FOMB does not have the capacity to govern with empathy or love for the people it is governing, especially when its governors are living in a reality so distant from that of the people. It ignores, for example, the history that preceded it and the long series of losses and sacrifices to which the people were subjected in the course of seeking to avoid the crash that led to the creation of a law like PROMESA.

This is the only way to explain FOMB's initial proposal, on September 27, 2019, with the issuance of an Adjustment Plan, revised on February 28, 2020 and March 9, 2021, to forcibly restructure the debts of the Government of Puerto Rico under Title III of PROMESA, which envisages greater sacrifices for hundreds of thousands of public servants, almost all of them already retired after a life of dedication in public service to the Government of Puerto Rico, and condemns Puerto Rico to additional decades of unsustainable debts that, by their own admission, they know will produce another insolvency event in the near future.

THE ADJUSTMENT PLAN IN CONTEXT

Title III of PROMESA provides the first mechanism available to the Government of Puerto Rico for the judicial restructuring of the debts of its administrative units due to insolvency since such power was taken away in 1984, following Puerto Rico's exclusion from Chapter 9 of the U.S. Bankruptcy Code. This same chapter of PROMESA creates for Puerto Rico experimental procedures, unlike Chapter 9 of the Bankruptcy Code, in which only cities and administrative units of a state could file for bankruptcy, and Puerto Rico would become the first state government to restructure its public debt.

However, PROMESA strips Puerto Rico's constitutional government of the power to represent the interests of the people of Puerto Rico in the Federal Court supervising the debt restructuring process under Title III. Conversely, PROMESA delegates this power exclusively to FOMB, an entity expressly exempted from accountability mechanisms throughout its organic law. It is

also vested with veto and supervisory powers in the renegotiation of debt under Title VI of PROMESA, for the voluntary restructuring of bonds.

The result of this strategy has been the approval of two debt restructurings in the three and a half years of FOMB's existence, without first exploring arguments that promote the discharge, annulment, nullification or cancellation of at least parts of those debts, as they are currently doing with some general obligation and Retirement Systems Administration bond issues. Even worse, the restructurings have been authorized under terms that appear to impose unsustainable debt service, risk the ability of Puerto Rico's constitutional government to guarantee payment of government pensions and essential services to the people of Puerto Rico, increase the cost of electricity rates and services, and delay Puerto Rico's return to the bond market.

The first of these agreements, approved on November 8, 2018, consisted of the restructuring of nearly $4 billion in claims of Government Development Bank (GDB) bondholders, representing a repayment obligation of $2.4878 billion in cash and $2.5309 billion in in-kind payments through 2040. The settlement, negotiated pursuant to the voluntary bond modification provisions under Title VI of PROMESA, guarantees bondholders an average recovery of 55 cents for each dollar of original value of their bonds, which represents a significant cut for those creditors that acquired that debt at the time of issuance, such as credit unions. However, for the hedge fund companies that purchased their claims during the last several years prior to the settlement, some of them even at 12 cents on the dollar, the GDB settlement represents a significant gain to be borne by the people of Puerto Rico. Moreover, with the approval of the settlement, the negotiating parties, which included current and former GDB officials, agreed to release each other from any past, present or future claims related to the restructuring, including any challenges to the legality of those transactions.

Meanwhile, on February 4, 2019, approval was given to the Debt Adjustment Plan of the Sales Tax Financing Corporation (COFINA), which proposed the restructuring of $17.58 billion in claims of the entity's bondholders through terms that obligate the people of Puerto Rico to pay over $32.3 billion for the next 40 years. The COFINA bond issues are tainted with the same irregularities as several of the general obligation bond issues that FOMB itself challenged by motion filed in the judicial process under Title III of PROMESA on January 14, 2019; the issues were reported as proceeds for purposes of approving a balanced budget and the COFINA issues, like those of the Public Buildings Authority, were conducted by an entity created by and dependent on the central government and for its benefit. However, FOMB opted not to seek the cancellation of these transactions and instead negotiated an agreement that

guarantees a repayment of 93 cents on the dollar to COFINA's senior bondholders, holders of 44% of the entity's debt, and 54 cents on the dollar to COFINA's junior, or subordinated, bondholders, owners of the remaining 56% of the public corporation's debt. As with the GDB agreement, these figures represent substantial gains for the majority of COFINA bondholders, senior or subordinated, since these, predominantly hedge funds, acquired these bonds at a much lower cost than what they will now be paid from the proceeds of the 5.5% Sales and Use Tax (SUT) earmarked for COFINA.

FOMB is currently seeking the approval of a Joint Debt Adjustment Plan for the obligations of the Government of Puerto Rico, the Puerto Rico Government Employees' Retirement System Administration and the Puerto Rico Judiciary and the Puerto Rico Public Buildings Authority (DAP). FOMB presented the first version of this plan on September 27, 2019. However, given that it only had the support of approximately 18% of the bondholders to be restructured, the Court ordered the parties to continue negotiating. As a result, on February 9, 2020, FOMB presented a Plan Support Agreement (PSA) and a subsequent amendment to the DAP on February 28, 2020, which was endorsed by about 58% of the bondholders to be restructured and voided the DAP presented in September 2019. In addition, on March 9, 2021, another amendment to the DAP was presented, which also increased the number of bondholders supporting it.

The DAP was submitted pursuant to Section 312 of PROMESA. In turn, Section 314 of said Act details the procedure for the evaluation and confirmation of the DAP. Section 314(a)(a) allows any creditor or special taxpayer to object to the Plan. In turn, paragraph (b) details the criteria that the DAP must meet before it is confirmed by the Judge in charge of the judicial proceeding under Title III of PROMESA. Of particular importance, paragraph (5) of subsection (b) requires that, prior to the confirmation of the DAP, any legislative or regulatory authorization necessary to execute any of its provisions must have been obtained, and that the DAP must have been approved by the creditors of the debts to be adjusted. Thus, contrary to some statements to the contrary by FOMB itself, PROMESA expressly requires the passage of enabling legislation prior to the execution of the DAP to the extent that the document requires, as it currently does, the amendment of laws or other regulatory provisions of Puerto Rico's constitutional government, as well as to authorize an exchange of restructured bonds, which also requires legislative endorsement, pursuant to Act No. 33 of December 7, 1942, as amended, known as the "Act to Authorize the Treasurer of Puerto Rico to Redeem or Purchase in the Open Market or Where Offered for Sale, Bonds or other Certificates of Indebtedness of the People of Puerto Rico". In other words, the proposed DAP cannot be approved without the endorsement of the Legislative and Executive Branches of Puerto Rico's constitutional government.

5

In turn, paragraph (6) of subsection (b) of Section 314 of PROMESA requires the DAP to be viable and in the creditors' best interest and that there are no other remedies under the Puerto Rico Constitution and other laws that would allow the creditors to receive a better recovery than that provided in the DAP. As we will see, one of those remedies is to promote the cancellation of illegal debts issued in violation of the Constitution and the laws of Puerto Rico.

While the DAP proposes to restructure close to $19 billion in general obligation and PPA bond issues, including those being challenged in court, the PSA also amends approximately another $16 billion in bonds of the Puerto Rico Government Employees' Retirement System Administration (hereinafter referred to as RSA), the Puerto Rico Highway and Transportation Authority (PRHTA) and other entities, including debts of workers due to lack of government contributions to medical plans and noncompliance with economic clauses of collective agreements, debts of contractors and government suppliers, mostly Puerto Rico companies, resulting from unpaid invoices, and debts from court judgments in cases against the government for civil rights violations, among other debts.

The March 9, 2021 DAP proposes to significantly increase the recovery for those bondholders who negotiated their terms with FOMB, who are, coincidentally, the bondholders who are being challenged in Court, including by FOMB itself. Under the DAP submitted in September 2019, those bondholders of challenged debt would receive an average of 30 cents for each dollar of their bonds' original value. However, in the February 28, 2020 DAP, FOMB increased the offer to those bondholders to 71.4 cents per dollar, and increased it again, this time to 75.6 cents per dollar, in the March 9, 2021 DAP. The remaining central government and AEP bondholders also experienced an improvement in their recovery, from an average of 67 cents per dollar in the September 2019 DAP, to an average of 76 cents per dollar in the February 2020 DAP, to an average of 98 cents per dollar in the March 2021 DAP. The September 2019 and February 2020 DAPs offered a recovery of 12.7 cents per dollar to the bondholders of the Employees Retirement System Administration of the Commonwealth of Puerto Rico (hereinafter referred to as "RSA"), whose bond issues are also being challenged, while the March 2021 DAP increased the offer to 17 cents per dollar. In aggregate, the average cut to bondholders through the DAP is only 30 cents per dollar. This represents a significant increase in the recovery to these bondholders despite the fact that the vast majority of them are hedge funds that purchased their bonds well below what they would receive through the DAP.

Instead, workers, pensioners, contractors, suppliers, and prevailing parties in legal claims against the government, most of

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

them residents of Puerto Rico, are the ones most harmed by the DAP. In order to claim substantial savings on the debt to be restructured, FOMB has imposed the most severe cutbacks of this agreement on Puerto Rico residents whose debts against the Government of Puerto Rico have never been called into question, while increasing the recovery granted to hedge funds that not only own bonds of questionable legality, but also acquired their claims at a lower cost than what the PSA proposes the people of Puerto Rico pay them.

The DAP's impact on the Treasury is substantial, as it would increase debt service to $1.15 billion over the next 25 years, a figure that the vast majority of economists who have evaluated the agreement, both inside and outside Puerto Rico, have characterized as unsustainable. In this sense, it is difficult to celebrate a DAP that returns Puerto Rico to debt repayment levels at a time when it was already experiencing great economic hardship and difficulty.

Repayment of the debt proposed for restructuring by the DAP over the next 25 years, in turn, would amount to more than $21 billion. FOMB is also offering a small group of hedge funds, their attorneys and consultants an upfront cash payment upon consummation of the DAP of amounts exceeding $7.4 billion. These payments would come out of the General Fund, which is the proceeds of the Puerto Rico Government's collections.

Moreover, the March 2021 DAP essentially maintains unchanged one of the proposals with the greatest impact for the people of Puerto Rico, the elimination of the accumulation of pensions for participants and the cut to the pensions of beneficiaries of the retirement systems of the Central Government, teachers and the judiciary. The cut would be 8.5%, and would be imposed on all pensions that exceed $1,500 per month when added to drug, Christmas and summer bonuses. Over 47,000 government retirees, or two out of every five, would see their pensions significantly reduced as a result of this proposal. This pension reduction was the result of an agreement reached on June 7, 2019, and amended in November 2020, between FOMB and the Official Committee of Retirees (hereinafter COR), a body appointed by the Office of the Attorney General of the U.S. Department of Justice to represent the pensioners of the Retirement Systems of the Employees of the Government of Puerto Rico, the Judiciary and the Teaching Profession.

This new proposal for pension cuts must be taken in context. Pensioners of the three retirement systems affected by the DAP had already seen how, prior to the filing of the bankruptcy petition under Title III of PROMESA, their contributions to those systems were increasing, while their pensions were being cut. According to a report on the retirement systems by Ernst & Young and published by FOMB on September 27, 2019, pensioners have not received cost-of-living adjustments (COLA) to their pensions since the

passage of Act 35-2007, as amended, known as the "Pension Increase Act". This means that the value of pensions was reduced by 19% on average between 2007 and 2019. By 2037, ten years before the expiration of the DAP, the lack of cost-of-living adjustments will have reduced the purchasing power of these pensions by more than 39%.

Similarly, according to the same Ernst & Young report, pensioners have experienced substantial cuts as a result of the passage of Act 3-2013. In the case of pensioners of the defined benefit program under Act No. 447 of May 15, 1951, as amended, known as the "Retirement System for Employees of the Commonwealth of Puerto Rico" (hereinafter referred to as Act No. 447), they have experienced reductions of up to 42% of the aggregate value of their pensions, benefits and other retirement entitlements following the passage of Act No. 3- 2013. For their part, pensioners of the defined benefit program under Act No. 447 who became participants after April 1, 1990 suffered cuts of up to 31% of the aggregate value of their pensions, benefits and other retirement rights. Finally, pensioners of the Retirement Savings Account Program (hereinafter referred to as System 2000) under Act No. 447, who became participants on or after January 1, 2000, received a reduction of up to 15% of the aggregate value of their pensions, benefits and other retirement rights.

Finally, through the passage of Act 106-2017, as amended, known as the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants", the Government of Puerto Rico ordered the liquidation and transfer of assets in all Retirement System accounts to a segregated account in the General Fund for the payment of accrued pensions. Although it had the effect of impacting retirees, the legislation sought an alternative to guarantee payment of their pensions at a time when the systems were about to collapse. Pensioners under Act No. 447 experienced cumulative reductions of up to 44% of the aggregate value of their pensions, benefits and other retirement rights if they had enrolled before April 1, 1990 and up to 53% if they had enrolled after that date. Finally, System 2000 pensioners received a cumulative reduction of up to 82% of the aggregate value of their pensions, benefits and other retirement rights.

The history is there and it has been proven that any Debt Adjustment Plan cannot continue to penalize the same population that has already suffered so many cuts.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

8

## CRITICISMS OF THE ADJUSTMENT PLAN

FOMB's actions also reflect a substantial failure to fulfill its obligations under PROMESA, particularly the guidelines set out therein regarding the management of Puerto Rico's public finances.

First off, Section 201(b)(l) of PROMESA requires that the FOMB's issuance of fiscal plans must provide mechanisms to achieve fiscal responsibility and the Government of Puerto Rico's access to capital markets, in addition to guaranteeing the necessary funding for essential public services, as well as sufficient funding for the public pension systems. However, when it comes to certifying the fiscal plans of the Government of Puerto Rico and its public corporations, as well as promoting the endorsement of restructuring agreements and debt adjustment plans that amend the fiscal plans, FOMB has flatly refused to provide a definition for the public services that are essential and has therefore left them devoid of the protection required by law.

In the case of pensions, far from identifying mechanisms to ensure their financing, the Government of Puerto Rico fiscal plans certified by FOMB have contemplated different variations of cuts to this group's acquired rights, the most recent articulation being the aforementioned 8.5% cut included in the September 2019 DAP and reiterated in the DAP of February 28, 2020 DAP and that of March 9, 2021. By so acting, FOMB is not only neglecting to fulfil its obligations under Section 201(b)(l)(C) of PROMESA, but is also not considering reasonable alternatives, such as the ones we adopt here, that would allow us to guarantee the payment of present pensions to our retirees, as well as the future pensions of our active workers.

On the other hand, Section 413 of PROMESA obligated FOMB to refrain from restricting the ability of the Commission for the Comprehensive Audit of the Public Credit of Puerto Rico, an entity created by Act 97-2015, to publish its reports, as well as to review and consider its findings. This commission was eliminated by virtue of Act 22-2017, but not before publishing two pre-audit reports, the first of which, published in June 2016, noted possible constitutional violations with several of the general obligation bond issues being restructured in the PSA. Some of these approaches were adopted by FOMB in seeking the cancellation of the debt issued through the Series 2012A, 2012B issues of March 2012, and the Series 2014A issue of March 2014, for exceeding the constitutional debt limit set forth in Article VI, Section 2 of the Puerto Rico Constitution. However, the approaches contained in that report and adopted by FOMB are equally applicable to other general obligation bond issues, as well as AEP issues and COFINA issues, to name a few, so the amount of debt that FOMB should be challenging is much larger than what it has challenged in the Federal Court.

Unfortunately, instead of expanding the items of illegal debt to be cancelled, in light of the findings contained in the reports of the Commission for the Comprehensive Audit of the Public Credit of Puerto Rico, FOMB is now actively promoting a PSA that proposes to pay these illegal debt holders, to the detriment of our pensioners and active workers.

Despite these and other violations, both Congress and the U.S. Presidency have been unable to bring FOMB into compliance with the PROMESA mandate, and the courts have been reluctant to review its actions or omissions. By way of example, Section 206(a)(2) of PROMESA requires that, prior to any restructuring, FOMB publish the audited financial statements of the covered entity, as well as any other information sufficient for interested persons to make informed decisions with respect to such transactions. Similarly, Section 211 of PROMESA directs FOMB to conduct an actuarial analysis of any retirement system that, in its judgment, is materially underfunded. However, despite multiple requests and hearings held by the U.S. Congress to review FOMB's compliance with its obligations under PROMESA, FOMB actively promotes a DAP that restructures debts of the Government of Puerto Rico, the AEP and the Government, Teachers and the Judiciary Retirement Systems, without having produced audited financial statements for the Government of Puerto Rico, the AEP or the retirement systems, and continues to refuse to produce actuarial valuation studies for the fiscal years prior to the filing of the bankruptcy petition under Title 3 of PROMESA.

On the other hand, FOMB has sought to benefit from the ambiguity surrounding its status as an entity appointed by the United States Government, but attached to the Government of Puerto Rico. Thus, on the one hand, FOMB claims its identity as an entity that is part of the Government of Puerto Rico for purposes of evading questions of applicability of constitutional provisions that apply to federal officials or entities, such as its defense of the constitutionality of its appointments, and the alleged inapplicability of the Appointments Clause contained in Article II, Section 2 of the U.S. Constitution. However, in assuming duties as an entity attached to the Government of Puerto Rico, FOMB purports to identify itself as a federally created entity whose actions are not controlled by Puerto Rico constitutional law or public policy. An example of this is FOMB's repeated refusal to comply with its obligation to submit reports to the Office of the Comptroller of Puerto Rico, to comply with the requirements of the "Puerto Rico Governmental Ethics Act", as well as its promotion of governmental opacity by unsuccessfully claiming that the constitutional right of access to information recognized in our jurisdiction since *Soto v. Secretary of Justice*, 112 DPR 477 (1982), does not apply to it, as it has done in two complaints filed by the Center for Investigative Journalism: *Centro de Periodismo Investigativo v. Financial*

*Oversight and Management Board,* Civ. No. 17-1743; *Centro de Periodismo Investigativo v. Financial Oversight and Management Board,* Civ. No. 19-1936.

To this must be added what has been perhaps FOMB's most flagrant violation of PROMESA, its failure to develop any restructuring model that incorporates an aggregate debt service sustainability analysis, i.e., a determination, based on macroeconomic science, rather than on politically charged and optimistic projections, of what levels of debt service are sustainable for Puerto Rico, so that future defaults and bankruptcies can be avoided.

The conduct of these analyses is not optional for FOMB. Section 201(b)(l)(I) of PROMESA requires that fiscal plans certified by FOMB include a debt sustainability analysis. This analysis, in turn, is intrinsically linked to the requirement that any DAP negotiated by FOMB be viable, a criterion imposed by Section 314(b)(6) of the Act as a requirement for plan confirmation.

A study by economists Martin Guzman and Pablo Gluzmann published in May 2019 questions, precisely, FOMB's lack of analysis on the aggregate sustainability of Puerto Rico's debt service. The report reviews the contents of the fiscal plans certified by FOMB for the Government of Puerto Rico in March 2017 and October 2018, as well as the COFINA Debt Adjustment Plan approved in February 2019, and concludes that, among other things, FOMB continues to fail to determine a sustainable debt service level for Puerto Rico that is based on reasonable assumptions and is the product of best practices in macroeconomic analysis. In addition, the study severely criticizes the compartmentalization of the debt analysis employed by FOMB, concluding that a sustainability analysis of Puerto Rico's debt level would require, at a minimum, a 70% write-off of the total debt. However, the authors point out that, as a result of the approval of the COFINA Debt Adjustment Plan, were FOMB to prevent Puerto Rico from incurring a second default and exposing itself to a new bankruptcy process, the average cutback to bondholders pending restructuring would have to be between 85-95% of their claims. However, as noted above, through the new DAP of March 9, 2021, FOMB is proposing a cutback of less than 30% to Puerto Rico Government and PPA bondholders, including bondholders challenged in proceedings under Title III of PROMESA.

Even using the fragmented analysis used by FOMB to measure central government debt sustainability, as presented in the most recent certified Fiscal Plan of May 9, 2019, the agreement reached with the hedge funds in the DAP far exceeds the general fund's maximum capacity to service debt. In its debt sustainability analysis, FOMB concludes that the maximum debt service that the Government of Puerto Rico could tolerate, over a

30-year period and at a fixed interest rate of 4%, does not exceed $13.385 billion, or an average annual debt service of $446 million. In order to comply with PROMESA's requirement to return Puerto Rico to the capital markets, this debt service must envisage not only the payment of existing debt at the time of PROMESA's approval, but also the issuance of new debt. It should be recalled that the DAP will commit us to interest rates as high as 5.375% (while jurisdictions with junk bonds achieve rates of less than 4%), a total debt service of $21 billion over 25 years, some of which would have to be paid $1.15 billion, exclusively for the payment of debt already existing prior to PROMESA's passage. FOMB's intention to push Puerto Rico toward a second bankruptcy in less than 20 years and to prevent Puerto Rico from freeing itself from the restrictions imposed under PROMESA is unmistakable.

This is in addition to more than $32.3 billion to service COFINA's restructured debt over the next 40 years, for an average annual debt service of over $807.5 million, and another $5,018,700 to service the Government Development Bank's restructured debt, or an additional $167.3 million annually through August 2040.

A second bankruptcy would be devastating for Puerto Rico's most vulnerable populations, including our public servants and pensioners. It would mean putting these bondholders in competition once more, in less than 20 years, now with greater protection of their collection rights, against pensioners and public servants, who would be considered unsecured creditors and would be in a worse relative position than they are in currently. In these circumstances, market access would be conditioned upon the imposition of further pension cuts to assuage any market concerns about further default and underfunding. The Government of Puerto Rico cannot allow this to happen.

The bondholders and pensioners, moreover, are starting from very divergent positions. On the one hand, the bondholder payment agreements contained in the DAP are made with individuals and entities, such as hedge fund companies, that recently acquired their claims at prices well below the recovery margin that they are now negotiating with FOMB, so these agreements represent substantial profits, rather than losses, for them. Some of these companies have even dramatically increased their purchases of Puerto Rico bonds after Hurricanes Irma and Maria, and bondholders in Puerto Rico have decreased while this has been going on. Thus, for example, reports from the Office of the Commissioner of Financial Institutions reveal that between September 2018 and June 2019 licensed investment brokers in Puerto Rico reported that their clients' Puerto Rico bond portfolios had been reduced by more than $1.381 billion, while

local investment companies reported that their clients had reduced their Puerto Rico bond holdings by more than $660 million.

On the other hand, given bondholders who, for the most part, will not experience losses under the DAP, the social cost of these multiple violations on the lives of Puerto Rico residents, particularly our pensioners, is immeasurable. As stated above, our pensioners in the retirement systems of the Government of Puerto Rico, the teaching profession and the judiciary have already suffered substantial cuts to their pensions, benefits and other retirement rights, both before and after the commencement of the bankruptcy proceedings under Title III of PROMESA, and now they stand to suffer even more. This is untenable.

In addition, according to the analysis outlined by Ernst & Young in its report on Puerto Rico's retirement systems, the FOMB measures only provide 20 years of funding for pensions. This is because, as recognized in the fiscal plan of the Government of Puerto Rico certified by FOMB on May 9, 2019, Puerto Rico will have budget deficits beginning in 2038. Viewed in this way, through the DAP, FOMB is proposing to issue new bonds payable for the next 20 years with annual payments exceeding $1.425 billion, despite the fact that the Government of Puerto Rico will experience budget deficits by the end of that period.

In fact, this reality undermines another aspect of the agreement negotiated between FOMB and the Official Retirees Committee (COR). One of the distinctive elements of said agreement is the potential for the restoration of Christmas, Summer and Medical Bonuses to pensioners who experience cuts in those benefits, in cases where the Government of Puerto Rico experiences surpluses in excess of $100 million above the projections contained in the fiscal plan certified by FOMB. It would also create a reserve for the payment of pensions in deficit years, funded exclusively with a portion of the surpluses that the Government of Puerto Rico may experience in excess of $1.75 billion annually. However, the commitments set out in the DAP to bondholders represent a significant impediment to the ability to achieve a budget surplus that would provide sufficient resources to provide such relief. Several economists have characterized FOMB's projections as overly optimistic, particularly because they do not sufficiently take into account the projected population loss as a result of the combined impact of the economic and fiscal crisis, the impact of hurricanes Irma and Maria, and most recently, the January 7, 2020 earthquake and its multiple aftershocks. Add to this the fact that FOMB itself projects that Puerto Rico will face budget deficits beginning in 2038, and there is nothing to celebrate about a benefit restoration measure or a pension payment reserve that has no chance of being activated.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

The reaction to this pattern of PROMESA violations, of abdication of the responsibility to ensure the pensions of our retirees of the Government of Puerto Rico, the Teachers and the Judiciary, of putting our essential services at risk, of promoting payments to illegal debt holders and of committing Puerto Rico to an unsustainable debt service, has been felt.

In particular, on November 7, 2019, this Legislature approved House Concurrent Resolution No. 114. By means of this resolution, we declare: *"The most absolute a vigorous rejection of the Fiscal Oversight Board's Adjustment Plan, in recommending to the Federal Court a cut of eight and a half percent (8.5%) to the amount that our pensioned public servants of the Government of Puerto Rico receive.* We further make the following declaration: *"We clearly and unequivocally state that we will not approve legislation that would render viable the [DAP] or the reduction of the current retirement benefits of active and retired public employees (central government, municipalities and public corporations) such that at the time of their retirement, no group will suffer a reduction in their pension.* Finally, Section 3 of the Concurrent Resolution states that: *"we support and authorize the Presidents of the House of Representatives and the Senate of Puerto Rico to carry out the actions they deem pertinent, and to apply the Legislative Assembly's resources to defend ourselves from those actions of the Fiscal Oversight Board that are detrimental to Puerto Ricans' best interests"* In this connection, this bill is the logical continuation of the work begun by means of the aforementioned Concurrent Resolution.

The aggregate cut to pension payments being pushed by FOMB through Title III of PROMESA, which includes those stipulated in its agreement with the COR but also the freezes and cuts contained in agreements with labor organizations such as *Servidores Publicos Unidos* and the Puerto Rico Teachers Association Union Local, would exceed $12.5 billion over the same period of time that the Government of Puerto Rico would be paying for the restructuring agreement contained in the COFINA Debt Adjustment Plan. The impact on Puerto Rico's economy of extracting $12.5 billion from its most vulnerable residents, who are also major consumers in the local economy, will have a devastating effect that FOMB is underestimating by several magnitudes.

In its economic analyses of the multiplier effect on the economy of austerity policies, the International Monetary Fund (hereinafter referred to as the "IMF") usually estimates that for every dollar ($1.00) in tax cuts implemented as an austerity measure, the local economy would lose approximately one dollar and fifty cents ($1.50). However, the experience in countries such as Greece, where the IMF opted to implement multiple rounds of fiscal cuts, including to pensions and essential public services, caused the IMF to acknowledge that they considerably underestimated the multiplier effect of their austerity measures on the national economy. According to the analysis made by sovereign debt experts, such as Martin Guzman, economist and Argentina's current Finance Minister, the experience in these processes indicates that

the losses for the economy are closer to $3.54 for every $1.00 in fiscal adjustments. Meanwhile, FOMB is attempting to challenge both experiences, assuming in its projections that the negative impact to Puerto Rico's economy will never exceed $1.34 for every $1.00 in cuts.

Put differently, international experience would indicate that a $12.5 billion pension cut in Puerto Rico could cause a loss of more than $44.25 billion to the Puerto Rican economy over the next 40 years. The IMF's standard indicator for the multiplier effect of pension cuts in Puerto Rico, which by the IMF's own admission is an underestimate of the real impact on the economies in which it has been applied, suggests that losses to the economy would reach $18.75 billion over 40 years. Meanwhile, FOMB assumes that the impact would never be less than $16.75 billion. If we limit our analysis exclusively to the multiplier effect corresponding to the proposed pension cut, the miscalculation that FOMB would be making could be in the magnitude of up to $27.5 billion, gambling with the future and the lives of everyone in Puerto Rico.

The DAP and its proposed gains for hedge funds and cuts to pensioners and active workers also fail to adequately take into account Puerto Rico's demographic trends. According to data reported by the Census, between 2010 and 2019, Puerto Rico's population decreased by more than 14%, or about 525,000 people. In addition, between July 1, 2018 and July 1, 2019, 7,393 more people died in Puerto Rico than were born. Demographic projections guarantee that this trend of population decrease will not only continue, but is in a process of acceleration, given the combined impact of the economic and fiscal crisis, the impact of hurricanes Irma and Maria, and more recently, the earthquake of January 7, 2020 and its multiple aftershocks. Thus, while the Government of Puerto Rico's fiscal plan certified by FOMB and the DAP commit the country to an unsustainable debt service payment, the population responsible for generating those revenues for the Government is leaving Puerto Rico.

According to Census data, Puerto Rico's population is aging. Between 2010 and 2018, the median age of people living in Puerto Rico increased from 36.9 to 42.8 years, an increase of almost 6 years, or 16%. In the same period, the number of people over 65 years of age increased from 604,594 to 747,314. In other words, in a period during which Puerto Rico's total population declined by more than 500,000, the population of people over 65 years of age increased by 142,720, or 24%. However, it is that segment of the population whose pensions FOMB intends to cut, on the one hand, while simultaneously requiring them to continue consuming and contributing to the maintenance of an optimal level of revenues for the country in order to pay hedge fund companies that intend to derive millions of dollars in profits from Puerto Rico's bankruptcy. FOMB's aim is not only irrational; it is repugnant.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

As our population gradually comprises more and more persons over 65 years of age, it is the duty of the Government of Puerto Rico to ensure the quality of life and dignity of this population. Consequently, the right to a dignified retirement cannot be seen as separate from the dignity of the human being that the Constitution of Puerto Rico enshrines as the first fundamental right of those of us who make this space our home.

Finally, we cannot overlook the fact that, on February 22, 2020, close to 1,000 pensioners from all retirement systems held a National Pensioners' Assembly in which the pensioner community repudiated the FOMB's work and agreements and demonstrated forcefully and decisively against further pension cuts. The Assembly was convened by the Pension Defense Front, which brings together pensioners from the Pensioners Chapter of the Federation of Teachers, the Pensioners Chapter of UNETE, the Federation of Pensioners and Retirees of Puerto Rico, the Special Committee of Pensioners of the Association of Social Work Professionals of Puerto Rico, and the *Construyamos Otro Acuerdo* campaign. Given its relevance to this project, we hereby transcribe the Resolution approved at that Assembly in its entirety:

*"Resolution of the National Assembly of Pensioners to establish their intention to fight for a dignified retirement*

*WHEREAS: The U.S. Government's PROMESA Act places debt above the essential services required by the people and seeks to cut and destabilize the payment of present and future pensions.*

*WHEREAS: Puerto Rico's government laws have imposed cuts to Puerto Rico's government pensions and have changed the defined benefit system to a defined contribution system that drives pensioners, pre-retirees and retirement system participants into destitution.*

*WHEREAS: The Financial Oversight and Management Board created by PROMESA has imposed cuts to essential services, including the University of Puerto Rico, and intends to eliminate the UPR Retirement System Trust Fund, reduce pensions and switch to savings or defined contribution plans.*

*WHEREAS: The Trustee of the Federal Bankruptcy Court created and imposed on us, in a highly undemocratic process, the Official Committee of Retirees (COR), as an entity to represent the pensioners of the central government, teachers and the judiciary in the event of bankruptcy, which has resulted in an entity with serious conflicts of interest which has betrayed the pensioner class by negotiating pension cuts.*

*THEREFORE: Today, we pensioners are raising our voices in unison demanding a dignified retirement. These demands are the starting point for the Puerto Rico we demand now. They are essential at this historic juncture, as bankruptcy proceedings and the Financial Oversight*

*and Management Board threaten the quality and dignity of life in our country. To this end, the first National Assembly for a Dignified Retirement expresses its intention to fight for the following:*

*1. A comprehensive audit of the debt with broad citizen participation, the cancellation of all illegal debts that have not generated any benefit for the people and the prosecution of those responsible for leading us to this bankruptcy.*

*2. Rejection of the Debt Adjustment Plan filed by the Financial Oversight and Management Board in the Federal Court, which includes cutting 8.5% of the pensions of Central Government, Teachers and Judiciary pensioners.*

*3. Disavowal of the Official Committee of Retirees (COR) as legal representatives of the pensioners of the central government, teachers and judiciary with respect to any determination, procedure or action related to the pensioners because they are not our elected representatives, but appointed and imposed by the Federal Court.*

*4. Defense of the University of Puerto Rico and opposition to any measure aimed at reducing the pensions of UPR employees or destroying the defined benefit system and the UPR Retirement System Trust.*

*5. Rejection of the proposed agreement with PREPA's bondholders, which aims to privatize the authority and includes an electricity bill increase of up to 50% that has a disproportionate impact on the pensioner class because it means an additional cut to their pensions.*

*6. To require the Governor and the Legislative Assembly to establish the following as the government of Puerto Rico's public policy: Zero cuts to present and future pensions and the cancellation of all government debt necessary to guarantee the payment of pensions and essential services.*

*7. To demand that the Governor and the Legislative Assembly define the essential services: public education (basic and university), health, housing, security, communications, water, electricity and pensions; and allocate the necessary funds to guarantee pensions and public services to the country.*

*8. To orient the pensioner class, workers and the people not to vote for candidates for elective positions in the general elections of 2020 who do not act in favor of the pensioners' claims or keep silent about them. Their commitment and actions must be aimed at rejecting the Debt Adjustment Plan and any measures that threaten essential services and cuts to current and future pensions of retirees and public employees.*

*9. To call on the U.S. Congress to immediately repeal the PROMESA Act, eliminate any financial oversight and management board and, in its place, pass the Territorial Relief Act that cancels unsecured bonds (HR 2526- S1312) in order to allocate our public funds to guarantee the payment of pensions, fair recovery, strengthening of essential services and economic development.*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

10. *To demand a guaranteed dignified retirement, which consists of enjoying a defined benefit pension for life that protects each person against poverty in their old age, with access to adequate medical services and inflation adjustments. We reject as incompatible with a dignified retirement the unjustified increases in the cost of living in Puerto Rico resulting from privatization of public services, unsustainable debt, tax increases to pay debt, low wages, less secure jobs without benefits, violence against women, increases in tolls, water and electricity bills without receiving more and better quality services, more expensive education, more expensive and less available health care, waste of recovery funds, roads and houses in disrepair, school and hospital closures, abandonment of island municipalities. All of the above worsens our quality of life and that of our sons, daughters and grandchildren. We want to live in peace and leave a better Puerto Rico for future generations.*

*Issued on February 22, 2020, in San Juan, Puerto Rico."*

As elected representatives of the Government of Puerto Rico, we cannot ignore these voices. It is imperative that we act.

OUR ALTERNATIVE

When we evaluate the fiscal projections made by the AAFAF for the Government of Puerto Rico's revenues over the next forty years, they all indicate that there would be enough money to meet 100% of the pensions and other obligations of the Retirement Systems to their pensioners and participants, providing adequate funding to ensure their payment in the short and long term, and leaving money over. The problem with FOMB is that there are no projections to back up the availability of enough money to meet the commitments it is offering to the handful of hedge funds with which it has chosen to negotiate the new PSA, as long as it has to pay for pensions and other essential public services.

FOMB's priorities are out of step with and totally divorced from the economic reality of Puerto Rico's taxpayers, residents and public servants. Given the choice between paying 100% of the pensions of those who have worked and paid a lifetime of contributions to the country and the Retirement Systems, or paying a group of opportunists who bought at rock-bottom prices the debt of a government in bankruptcy after multiple historic natural disasters, or paying a penny of debt that was issued and paid in flagrant violation of the laws and the Constitution, the Government of Puerto Rico has the duty to protect its constituents and always opt for the former.

The mechanisms available to the Government of Puerto Rico to achieve them under PROMESA were delegated, almost entirely, to FOMB through its budgetary powers under Title II and its exclusive representation of the Government of Puerto

Rico as debtor under Title III. Section 315 of PROMESA prevents the Government of Puerto Rico from assuming its own representation as debtor in the bankruptcy process, thus preventing it from submitting its own proposal for an Adjustment Plan to the Court. However, it is clear that FOMB could not complete a restructuring process with the confirmation of a Title III Adjustment Plan without the endorsement of the Government of Puerto Rico.

Having clarified the refusal of the Legislature, in House Concurrent Resolution No. 114, to collaborate with or advance the DAP proposed by FOMB as long as it involves cuts to present or future pensions, through this Act we also wish to clarify the circumstances under which the Government of Puerto Rico would be in a position to collaborate with FOMB for the prompt resolution of the governmental bankruptcy. To this end, the "Dignified Retirement Act" is hereby presented, detailing a clear public policy outlining the elements of a model Adjustment Plan that takes into consideration the sacrifices to which pensioners and participants in the Retirement Systems have been subjected for decades, and puts in their proper perspective the treatment they deserve in the face of financial speculators who seek to profit from the collective misery of those who helped build contemporary Puerto Rico.

To achieve a commitment to a public policy of zero pension cuts, it is necessary: (1) to create a trust for the joint administration of the Retirement Systems (hereinafter referred to as "FACSiR"), which shall prudently invest its resources and assume its obligations to its participants and pensioners; (2) to be funded with the individual and employer contributions applicable to its participants, in addition to the savings produced through a Debt Adjustment Plan that protects 100% of the benefits existing for pensioners and participants at the time the bankruptcy petition was filed on May 3, 2017, while fully eliminating debt service on any government bonds issued in violation of Puerto Rico's laws and the Constitution, and reducing the remaining debt to such amounts as may be necessary to produce the savings to adequately fund the new trust; (3) to return to the trust the income corresponding to the individual contributions and interest that ceased to accrue through the defined contribution programs during the past two decades; (4) to pursue the right to recover from the financial institutions responsible for the unlawful advice and issuance of public debt, those amounts that have accrued in profits, commissions, or sales related to that challenged debt; and (5) to grant pensioners and participants of the Retirement Systems a proprietary right to the trust's assets and income to secure the payment of their pensions, in a manner similar to that in which the obligations of COFINA and the GDB have been secured in their restructurings.

Such a restructuring is unlikely to be supported by the hedge funds with which FOMB has negotiated so far. However,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

Section 1129(a)(10) of the Federal Bankruptcy Code, incorporated into the bankruptcy proceedings under Title III by virtue of Section 301 of PROMESA, permits confirmation of a Debt Adjustment Plan provided that at least one or other of the affected classes vote in favor of it. In turn, Section 1129(b) of the Bankruptcy Code allows the Court to give its approval to the Adjustment Plan, even over the opposition of the remaining classes of creditors. This mechanism makes it possible to promote the approval of a Debt Adjustment Plan that does not impose additional cuts to pensions and that, if approved by the pensioners of the different Retirement Systems, can be imposed on the other creditors, particularly the hedge fund companies that intend to generate millions of dollars in profits with the DAP presented by FOMB on March 9, 2021.

The fact that in a process of government bankruptcy it is possible to restructure debts on bonds and other claims without imposing additional cuts to pensions is not a myth, but a reality. This is precisely what happened with the bankruptcies of the cities of Vallejo, Stockton and San Bernardino, all in the State of California, under Chapter 9 of the Bankruptcy Code. In these, the adjustment plans approved by the Bankruptcy Court authorized the restructuring of the city's debts without imposing cuts to pensions, in recognition that the pensioner classes had already experienced cuts to pensions, benefits and other retirement rights prior to the bankruptcy filing.

In the case of Puerto Rico, our Puerto Rico government pensioners have experienced substantial cuts to their pensions, benefits and other retirement rights both before and after the bankruptcy filing. On all these occasions, the cuts were not negotiated with pensioners, but were imposed on them by the Government of Puerto Rico. As previously indicated, a report commissioned by FOMB from Ernst & Young, documents that the passage of Act 3-2013 resulted in pensioners of the defined benefit program under Act No. 447 experiencing reductions of up to 42% of the aggregate value of their pensions, benefits and other retirement rights. For their part, pensioners of the defined benefit program under Act No. 447 enrolled after April 1, 1990 suffered cuts of up to 31% of the aggregate value of their pensions, benefits and other retirement rights. Finally, System 2000 pensioners enrolled on or after January 1, 2000 received a reduction of up to 15% of the aggregate value of their pensions, benefits and other retirement rights.

The situation of the pensioners of the Teachers' and Judiciary Retirement Systems is no different from that of the pensioners of the Government of Puerto Rico. Prior to the bankruptcy filing in May 2017, active workers had already suffered cuts to their vested pension rights, benefits and other retirement rights under Acts 160-2013 and 162-2013 and, subsequent

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

to the bankruptcy filing, both pensioners and active workers experienced cuts to their pensions, benefits and other retirement rights under Act 106-2017.

Finally, pensioners of the three retirement systems have not received cost-of-living adjustments (COLA) to their pensions since the passage of Act 35-2007. This means that, on average, the value of pensions was reduced by 19% between 2007 and 2019, and a reduction of up to 39% is projected by 2037.

The bondholders whose claims are now favored by FOMB have benefited financially from all of these pre-filing and post-filing cutbacks. All these measures imposing cuts on our active workers and pensioners imparted a false liquidity to the Retirement Systems, one that did not adequately address the problems that afflict them, but allowed the Government to continue paying its debts to bondholders and other creditors. Put differently, through the payments received by bondholders and other creditors from the imposition of these pension cuts, the Government of Puerto Rico has consistently favored these bondholders over our active workers and pensioners. Deeming insufficient the cuts already imposed, both before and after the bankruptcy filing, on active workers and pensioners, in order for those classes of creditors to be considered as affected by a Debt Adjustment Plan, is to disregard the fact that such cuts were precisely those that allowed the Government of Puerto Rico to continue making payments to bondholders and creditors prior to the bankruptcy filing, without any alteration to their rights as creditors. It is time for the sacrifices of these sectors to have tangible consequences in their favor.

This Act reiterates the public policy adopted by House Concurrent Resolution No. 114 that it is not acceptable to impose additional cuts on pensioners when approving any Debt Adjustment Plan or debt restructuring agreement as part of the proceedings under Titles III and VI of PROMESA. Thus, the Administrators of the Retirement Systems of the Government of Puerto Rico, the Teachers' Retirement System and the Judiciary are required to certify the impact of all laws and regulatory provisions in our legal corpus that have imposed cuts to pensions, benefits and other retirement rights, both prior and subsequent to the commencement of the bankruptcy proceeding under Title III of PROMESA.

Even after the passage of this Act, there is still a long way to go to achieve the result that pensioners and participants of the Retirement Systems deserve, but the path is laid out in the body of this legislation. It shall require the mandatory concentration of all the resources that the Government of Puerto Rico, the AAFAF, the Office of Management and Budget, the Department of the Treasury, and the Retirement Board, created by Act 106-2017, are currently allocating to support, directly or indirectly, the efforts

of FOMB in the Title III process, on efforts that advance the design, planning, discussions, and eventual transition toward the implementation of the Public Policy provided in this Act. This includes the AAFAF using its powers to ensure unity of purpose and investment among the efforts made by the different government entities, as well as the most effective collaboration and openness of information and analysis between the Legislative Branch and the Executive Branch.

The path taken to challenge bonds issued in violation of Puerto Rico's laws has borne fruit that should be taken full advantage of as part of a government strategy to achieve some degree of justice for pensioners and participants of the Retirement Systems in the bankruptcy process. As recently as January 30, 2020, the U.S. Court of Appeals for the First Circuit ruled favorably on a challenge to over $3 billion in bonds issued through the Puerto Rico Government Employees' Retirement System Administration (hereinafter referred to as the "RSA"), in which employer contributions had been offered as the sole source of payment. The owners of these bonds purported to exercise a proprietary right, which was never conferred on them, over the employer contributions of the Government of Puerto Rico to the Retirement Systems. This fact was demonstrated with the passage and implementation of Act 106-2017, with the elimination of employer contributions to the RSA. In doing so, it not only demonstrated that there was no such proprietary right of the RSA bondholders to the employer contributions, effectively converting their bonds into unsecured debt, but also opened the door for the reestablishment and direction of employer contributions to a new trust, free of financial encumbrances other than the payment of pensions.

The challenge to the ownership rights claimed by the RSA bondholders is the second in a series of challenges to these bonds. A challenge to the legal validity of the issue as such is still pending, as the RSA never had the required legislative authorization to issue the bonds in the first place, much less use employer contributions to the RSA to pay for them. Just as the challenges to the RSA bonds are pending, more than a dozen issues of general obligation and public corporation bonds payable from the general fund or other general revenues created by the Legislature have also been challenged. The full discharge of debts challenged in Federal Court, both by FOMB and the Government as well as by multiple creditors, would provide significant relief to governmental coffers and earmarked for a pension trust fund with sound investment policies and greater protections against misappropriation of those funds, could help meet FOMB's full projected pension obligations, with no cutbacks, through 2058.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

Case:23-08017-LTS Doc#:8301-20 Filed:07/10/27/2 Entered:07/10/27/26:04:33:51 Desc:
Debtor's Exhibit A11 Page 27 of 162163

22

Among other things, this Act requires a redesign of the investment policy to be adopted by the trust to reflect the best practices adopted by the 10 largest defined benefit governmental retirement systems in the United States, namely: the California Public Employees Retirement System (CalPERS), the California State Teachers' Retirement System (CalSTERS), the New York State Common Retirement Fund, the New York City Retirement Systems, the Florida Retirement System Pension Plan administered by the State Board of Administration (SBA), the Texas Teachers Retirement System, the New York State Teachers Retirement System, the Wisconsin Retirement System administered by the State of Wisconsin Investment Board, the Ohio Public Employees Retirement System and the New Jersey Division of Investment. It will also require the immediate adoption of expanded fiduciary duty standards in retirement systems to require equal accountability for financial advisors and other outside advisors who may assume a decisive role in the FACSiR's ability to meet its duty to pay pensions stipulated in parts 2509, 2510 and 2550 of Title 29 of the Code of Federal Regulations, Regulatory Identifier Number (RIN) 1210-AB32. These standards were sponsored and approved by the Federal Department of Labor and will be applicable to FACSiR, even though they have been waived for federal regulation of private sector retirement systems by order of the President of the United States.

The aggregate effect of the financial and administrative reform we propose for pensions, channeled through the FACSiR, would not only ensure the ability to meet up to 120% of existing pensions through 2058, but would represent savings of between 33% to 37% in annual cash flow for the Government of Puerto Rico relative to the current pay-as-you-go scheme created through Act 106-2017, guarantee sufficient accumulated resources to restore benefits eliminated in the past to pensioners and participants, and open the way for a future expansion of benefits and beneficiaries. With this Act, we are amending the public policy legislated in Act 106-2017 and are provide the Retirement Systems, for the first time in their history, with a public policy in their respective organizational Acts that reflects these aspirations and the Government of Puerto Rico's commitment to its retired public servants.

The DAP proposal included in this Act does not exhaust for FACSiR the total savings produced by the sustainable debt reduction it promotes. It is also wagering that there will be additional savings that should be prioritized to invest in improvements to essential public services and, therefore, to the public servants who provide them. Only by investing in the recovery and rebuilding of Puerto Rico's depressed economy can we truly regain the ability to balance budgets and the confidence of the capital markets. If we have the resources to make these investments in the short term, we have the duty to fight for them with all the powers vested in the Government of Puerto Rico.

*THE LEGISLATIVE ASSEMBLY OF PUERTO RICO HEREBY ENACTS:*

## CHAPTER 1- GENERAL PROVISIONS

Section 1.01.- Title

This Act will be known as the "Dignified Retirement Act".

Section 1.02.- Primacy of this Act

This Act is passed in the exercise of the power of the national interest, as well as the Legislative Assembly's constitutional power, recognized in Article II, Section 19 of the Constitution of Puerto Rico, to pass laws for the protection of the people's life, health and welfare. For this reason, this Act shall take precedence over any other state law.

Immediately as of the date of this Act's passage, any organic law, general or special law, section or subsection of law, regulations, clauses and/or provisions of collective bargaining agreements, agreements, supplementary agreements, administrative orders, policies, employment manuals, circular letters, certifications, regulations, rules and terms of employment, regulatory letters, classification or remuneration plans, contractual letters, professional service contracts, consulting contracts and/or provisions applicable exclusively to fringe benefits that may be enjoyed by unionized or non-unionized public officials or employees of the Government of the Commonwealth of Puerto Rico, including all unionized or non-unionized employees of the Public Corporations of the Government of the Commonwealth of Puerto Rico and the Municipalities, that run counter to the provisions of this Act shall be null and void. This does not remove the unions' right to negotiate economic and non-economic working conditions that are not contained in this legislation in accordance with the legal order in force.

Section 1.03.- Applicability of this Act

This Act shall be immediately applicable to the Government of the Commonwealth of Puerto Rico, the Public Corporations of the Government of the Commonwealth of Puerto Rico, the Municipalities, and any other public entity or administrative unit created under the laws or the Constitution of Puerto Rico, including, without this being deemed a limitation, the Puerto Rico Fiscal Agency and Financial Advisory Authority, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, the Teachers Retirement System of the Government of the Commonwealth of Puerto Rico, and the Retirement System for the Judiciary of the Government of the Commonwealth of Puerto Rico.

Section 1.04.- Declaration of state of emergency

It is hereby determined and declared that the Government of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, the Retirement System for the Judiciary of the Government of the Commonwealth of Puerto Rico and the Teachers Retirement System of the Government of the Commonwealth of Puerto Rico are in a state of financial emergency. It is estimated that in calendar year 2021 there will be an adjustment plan of the obligations of the Government of the Commonwealth of Puerto Rico and the Retirement Systems that would cause additional and permanent cuts to the beneficiaries and active participants of the Retirement Systems, would commit the Government of the Commonwealth of Puerto Rico to the payment of unsustainable thirty (30) year obligations to the capital markets, would condemn the people of Puerto Rico to a second insolvency and bankruptcy in the near term, and would expose the pensions of public servants to a likely additional round of default in less than twenty (20) years.

On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (FOMB) assumed representation of the Government of the Commonwealth of Puerto Rico pursuant to Section 315 of the Puerto Rico Oversight Management and Economic Stability Act, (PROMESA) and filed a petition under Section 304 of PROMESA for the Government of the Commonwealth of Puerto Rico to avail itself of Title III of PROMESA. On May 21, 2017, FOMB did the same for the Commonwealth Government Employees and Judiciary Retirement System to also avail itself of Title III of PROMESA. With the filing of the petition under Title III of PROMESA, a process of restructuring the obligations of the Government of the Commonwealth of Puerto Rico and those of the Retirement Systems began under the supervision of the United States District Court for the District of Puerto Rico. Section 315 of PROMESA delegates exclusively to FOMB the power to represent the interests of the Government of the Commonwealth of Puerto Rico, and those of its other administrative units also covered by Title III of PROMESA, in the United States District Court for the District of Puerto Rico, such that the Government of the Commonwealth of Puerto Rico has been prevented from adequately representing the best interests of the people in the conduct of this proceeding.

FOMB has been unable to produce a plan for the adjustment of the obligations of the Government of the Commonwealth of Puerto Rico, the Retirement Systems and other administrative units, that complies with the feasibility requirements set out in Section 314(b)(6) of PROMESA and has been unable to secure the funds necessary to provide essential public services and adequate funding for the pension systems of the Government of the Commonwealth of Puerto Rico, as required by Section 201(b)(1)(B) and Section 201(b)(1)(C) of PROMESA, respectively.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

In view of this situation, reasonable and necessary measures must be taken immediately to ensure that pensioners continue to receive their pensions and that our public servants' individual contributions and future are protected.

The three Retirement Systems must continue to meet their obligations to their beneficiaries in a sustained manner. In order to prevent irreparable damage following the approval of an unworkable debt adjustment plan under Title III of PROMESA, we declare that the Government of the Commonwealth of Puerto Rico and the Retirement Systems are in a state of grave emergency that clearly harms the health and public safety of more than one tenth of Puerto Rico's population and essential public services for all the People.

Section 1.05.- Definitions

The following words and terms, when used or referred to in this Act, shall have the meaning indicated below unless another meaning clearly appears from the context. The tenses used in the present also include the future. Where a word in the masculine is used anywhere only as a generic rule, it shall be understood as amended to a word or words that show the inclusion of masculine and feminine, as well as non-binary in the language, except in those cases where such an interpretation would be absurd. The singular includes the plural and the plural the singular.

(a)     AAFAF: the Puerto Rico Fiscal Agency and Financial Advisory Authority, created by Act 2-2017.

(b)     ACT: The Highways and Transportation Authority, created by Act No. 74 of June 23, 1965, as amended.

(c)     Restructuring Agreement: means any agreement between: (1) the Government of the Commonwealth of Puerto Rico, as defined in this Act; (2) FOMB; (3) bondholders of the Government of the Commonwealth of Puerto Rico; (4) bond insurers of the Government of the Commonwealth of Puerto Rico, whether or not subrogated to the bondholders' credit rights; in connection with or in support of any transaction involving a Qualifying Modification, as such term is defined in Title VI of PROMESA, or an Adjustment, as such term is used in Title III of PROMESA, of the bonds of the Government of the Commonwealth of Puerto Rico.

(d)     ADCC: The Puerto Rico Convention Center District Authority, created by Act 142-2001, as amended.

(e)     Retirement System Administrators: the Administrator of the Retirement System for Employees of the Government of Puerto Rico, as established by Act No. 447 of May 15, 1951, as amended, and the Executive Director of the Retirement System for Teachers of Puerto Rico, as established by Act 160-2013, as amended.

(f)     AEP: The Puerto Rico Public Buildings Authority, created by Act No. 56 of June 19, 1958, as amended.

(g)     AFI: the Infrastructure Financing Authority, created by Act No. 44 of June 21, 1988, as amended.

(h)     Challenged Bonds: collectively, all bond issues carried out by the Government of the Commonwealth of Puerto Rico whose legal guarantees, guaranteed amounts, pledged sources of payment or statutory authorizations have been challenged in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of the Commonwealth of Puerto Rico, FOMB, the official committees of creditors and retirees, any other Interested Parties, as such term is defined in the U.S. Bankruptcy Code, and any other Interested Parties, or persons with standing to intervene by filing a bankruptcy petition, memorandum of law, motion, lawsuit, or adversary proceeding under any case filed and pending final resolution under Title III of PROMESA. These include, but are not limited to, the following:

(i)      Series A Senior Pension Funding Bonds issued by the Administration of the Government Employees' Retirement System and the Judiciary (RSA) on January 31, 2008, in the aggregate principal amount of one billion, five hundred and eighty-eight million, eight hundred ten thousand, seven hundred and ninety-nine dollars and sixty cents (1,588,810,799.60), which includes one billion, five hundred and forty-three million, seven hundred and seventy thousand (1,543,770,000) dollars in term bonds and forty-five million, forty thousand, seven hundred and ninety-nine dollars and sixty cents (45,040,799.60) in capital appreciation bonds and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co, Oriental Financial Services Corporation, Samuel A. Ramirez & Co, Inc, Scotia Capital, TCM Capital and Wachovia Capital Markets, LLC originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

(ii)    Series B Senior Pension Funding Bonds issued by the RSA on June 2, 2008, in the aggregate principal amount of one billion, fifty-eight million, six hundred and thirty-four thousand, six hundred and thirteen dollars and five cents (1,058,634,613.05), which includes eight hundred and sixteen million, one hundred thousand (816,100,000) dollars in term bonds and two hundred and forty-two million, five hundred and thirty-four thousand, six hundred and thirteen dollars and five cents (242,534,613.05) in capital appreciation bonds, and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

(iii)    Series C Senior Pension Funding Bonds issued by the RSA on June 30, 2008, in the aggregate principal amount of three hundred million, two hundred and two thousand, nine hundred and thirty (300,202,930) dollars, which includes two hundred and ninety-eight million (298,000,000) in term bonds and two million, two hundred and two thousand, nine hundred and thirty (2,202,930) dollars in capital appreciation bonds and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramirez & Co, Inc, Scotia Capital and Wachovia Capital Markets, LLC and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

(iv)    Series K Government Facilities Revenue Refunding Bonds issued by the Public Buildings Authority (AEP) on July 1, 2009, in the principal amount of fifty million ($50,000,000) dollars of term bonds identified by CUSIP number 745235182 at the time of issuance and underwritten by Merrill Lynch & Co. and Ramirez & Co, Inc;

(v)    Series P Government Facilities Revenue Refunding Bonds issued by the AEP on July 1, 2009, in the aggregate principal amount of three hundred and thirty million, nine hundred and thirty-five thousand (330,935,000) dollars, which includes two hundred fifteen million, one hundred and sixty thousand (215,160,000) dollars in term bonds identified by CUSIP numbers 745235K75, 745235K83, 745235K91, 745235125 and 745235133 at the time of issuance and one hundred and fifteen million, seven hundred and seventy-five thousand (115,775,000) dollars in serial bonds identified by CUSIP numbers 745235141,

745235L58, 745235L66 and 745235L74 at the time of issuance and which was underwritten by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(vi)   Series Q Government Facilities Revenue Refunding Bonds issued by the AEP on October 28, 2009, in the aggregate principal amount of one hundred and fifty-two million, five hundred and forty thousand (152,540,000) dollars, which includes one hundred and forty-four million, three hundred and forty thousand (144, 340,000) dollars in term bonds identified by CUSIP numbers 745235M24, 745235M32 and 745235M40 at the time of issuance, and eight million, two hundred thousand (8,200,000) dollars in serial bonds identified by CUSIP number 745235L90 at the time of issuance and which was underwritten by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(vii)   Series R Government Facilities Revenue Bonds issued by the AEP on August 24, 2011, in the aggregate principal amount of seven hundred and fifty-six million, four hundred and forty-nine thousand (756,449,000) dollars identified by CUSIP numbers 745235 M57, 745235 M73, 745235 M65 and 745235 M81 at the time of issuance and underwritten by Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramirez & Co., Inc., Raymond James and Scotia MSD and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

(viii)   Series S Government Facilities Revenue Bonds issued by the AEP on August 24, 2011, in the aggregate principal amount of three hundred and three million, nine hundred and forty-five thousand (303,945,000) dollars, which includes two hundred and eight million, nine hundred and forty-five thousand (208,945,000) dollars in term bonds identified by CUSIP numbers 745235P 62 and 745235P 70 at the time of issuance and ninety-five million (95,000,000) dollars in serial bonds identified by CUSIP numbers 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N 64, 745235N 72, 745235N 80, 745235N 98, 745235P21, 745235P 39, 745235P 47, 745235P 54 and 745235P 88 at the time of

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

issuance and which were underwritten by Ramirez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(ix)  Series T Government Facilities Revenue Bonds - Qualified Zone Academy Bonds issued by the AEP on December 22, 2011, in the aggregate principal amount of one hundred and twenty-one million, five hundred and twenty-eight thousand (121,528,000) dollars, identified by CUSIP number 745235Q20 at the time of issuance and underwritten by Santander Securities and UBS Financial Services Puerto Rico;

(x)  Series U Government Facilities Revenue Refunding Bonds issued by the AEP on June 21, 2012, in the aggregate principal amount of five hundred and eighty-two million, three hundred and forty-five thousand ($582,345,000) dollars, which includes five hundred and thirty-eight million, six hundred and seventy-five thousand (538,675,000) dollars in term bonds identified by CUSIP number 745235R37 at the time of issuance, and forty-three million, six hundred and seventy thousand (43,670,000) dollars in serial bonds identified by CUSIP numbers 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235536, 745235544 and 745235S69 at the time of issuance and which was underwritten by Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramirez & Co., Inc., Raymond James Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico and VAB Financial;

(xi)  Series A General Obligation Bonds issued by the Government of Puerto Rico on March 17, 2014, in the principal amount of three billion, five hundred million ($3,500,000,000,000) dollars of term bonds identified by CUSIP number 74514LE86 at the time of issuance and which was underwritten by Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramirez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities and UBS Financial Services Puerto Rico;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(xii)   Series A Public Improvement Refunding Bonds - General Obligation Bonds issued by the Government of Puerto Rico on April 3, 2012, in the aggregate principal amount of two billion, three hundred and eighteen million, one hundred and ninety thousand (2,318,190,000) dollars, which includes one billion, six hundred and seventy-eight million, seven hundred and forty-five thousand (1,678,745,000) dollars in term bonds identified by the CUSIP numbers 74514LD20, 74514LB63, 74514LB71 and 74514LB89 at the time of issuance, and six hundred and thirty-nine million, four hundred and forty-five thousand (639,445,000) dollars in serial bonds identified by CUSIP numbers 74514LA31, 74514LC47, 74514LA49, 74514LC54, 74514LA56, 74514LC62, 74514LD46, 74514LC70, 74514LA64, 74514LD53, 74514LC88, 74514LA72, 74514LD61, 74514LA80, 74514LD79, 74514LD38, 74514LC96, 74514LA98, 74514LB22, 74514LD87, 74514LB30, 74514LB48, 74514LB97, 74514LB55, 74514LC21 and 74514LC39 at the time of issuance and which was underwritten by Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(xiii)  Series B Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 29, 2012, in the aggregate principal amount of four hundred and fifteen million, two hundred and seventy thousand (415,270,000) dollars, which includes forty-nine million, six hundred and ten thousand (49,610,000) dollars in term bonds identified by CUSIP number 74514LA23 and three hundred and sixty-five million, six hundred and sixty thousand (365,660,000) dollars in serial bonds identified by CUSIP number 74514LZS9, 74514LZT7, 74514LZU4, 74514LZV2, 74514LZWO, 74514LZX8, 74514L2Y6, 74514LZZ3 and which was underwritten by UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramirez & Co., Inc., Raymond James y Scotia MSD;

(xiv)   Series C Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 17, 2011, in the aggregate principal amount of four hundred and forty-two million, fifteen thousand (442,015,000) dollars, which includes one hundred and twenty-seven million, fifteen thousand (127,015,000) dollars in term bonds

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

identified by CUSIP number 74514LXH5, and three hundred fifteen million (315,000,000) dollars in serial bonds identified by CUSIP number 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 and 74514LWX1 and which was underwritten by Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities and VAB Financial;

(xv)     Series D Public Improvement Refunding Bonds issued by the Government of Puerto Rico on July 12, 2011, in the principal amount of fifty-two million, one hundred and ninety thousand (52,190,000) dollars in serial bonds identified by CUSIP numbers 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9, 74514LZG5 and 74514LZE0 and which was underwritten by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(xvi)    Series E Public Improvement Bonds issued by the Government of Puerto Rico on July 12, 2011, in the principal amount of two hundred and forty-five million, nine hundred and fifteen thousand (245,915,000) dollars in serial bonds identified by CUSIP numbers 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 and 74514LZQ3 and which were underwritten by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(xvii)   Series A Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009, in the principal amount of three million, four hundred and twenty-five thousand (3,425,000) dollars of term bonds identified by CUSIP

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

number 74514LVV6 and which was underwritten by Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramirez & Co., Inc., Popular Securities, Santander Securities and UBS Financial Services of Puerto Rico;

(xviii)    Series 2007 A-4 Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009, in the principal amount of ninety-three million, eight hundred and thirty-five thousand (93,835,000) dollars of serial bonds identified by CUSIP numbers 74514LVT1 and 74514LVU8, and which was underwritten by Morgan Stanley and JP Morgan;

(xix)    Series B Public Improvement Refunding Bonds issued by the Government of Puerto Rico on November 17, 2009, in the principal amount of three hundred and seventy-two million, six hundred and eighty-five thousand (372,685,000) dollars of term bonds identified by the CUSIP numbers 74514LVX2, 74514LVY0, 74514LVZ7 and 74514LVW4, and which was underwritten by Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramirez & Co., Inc., Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(xx)    Series C Public Improvement Refunding Bonds issued by the Government of Puerto Rico on December 16, 2009, in the principal amount of two hundred and ten million, two hundred and fifty thousand (210,250,000) dollars of term bonds identified by CUSIP number 74514LWA1, and which was underwritten by Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co, Merrill Lynch & Co, Ramirez & Co, Inc, UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities and Santander Securities; and,

(xxi)    Series A Public Improvement Refunding Bonds issued by the Government of Puerto Rico on February 17, 2011, in the principal amount of three hundred and fifty-six million, five hundred and twenty thousand (356,520,000) dollars of serial bonds identified by CUSIP numbers 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 y 74514LWS2 and which was underwritten by Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities y Santander Securities;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(i)    Uncontested Bonds: collectively, all bond issues (i) made by the Government of the Commonwealth of Puerto Rico whose legal guarantees, guaranteed amounts, pledged sources of payment or legal authorizations have not been challenged in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of the Commonwealth of Puerto Rico, FOMB, the official committees of creditors and retirees, any other Interested Parties, as such term is defined in the United States Bankruptcy Code, or persons with standing to intervene by filing a bankruptcy petition, memorandum of law, motion, complaint or adversary proceeding under any case filed and pending final resolution under Title III of PROMESA; and (ii) that are still pending payment.

(j)    Bankruptcy Code: refers to Title 11 of the United States Code, which provides for composition or debt adjustment mechanisms for individuals, corporations and governmental entities.

(k)    Adequate Funding Ratio: is the ratio, equal to 1.2, of the total equity of the Trust for the Joint Administration of the Retirement Systems to its total liabilities, as determined annually by an independent actuarial study based on the aggregate actuarial cost and funding method and valuation used by the Office of the New York State Comptroller for the administration of the State of New York governmental retirement systems, in order to achieve an adequate level of pension funding.

(l)    Substitute Collateral: means all or a portion of a contribution of general application throughout Puerto Rico that is legislated in full substitution for the Revenues of FACSiR or that otherwise constitutes similar or comparable collateral for the payment of pensions, annuities, benefits and other claims of public servant Participants and Pensioners of the Retirement Systems or FACSiR, to the extent such pensions, annuities, benefit structures or claims were in effect prior to the filing of the bankruptcy petition on May 3, 2017.

(m)    CUSIP: refers to the Committee on Uniform Securities Identification Procedures, whose numbering system enables the unique identification of all stocks and bonds registered in the U.S. and Canadian capital markets and is used to create a concrete distinction between securities traded in the public markets. The Committee on

Uniform Securities Identification Procedures (CUSIP) oversees the entire CUSIP numbering system.

(n)    ERISA: means the Employee Retirement Income Security Act of 1974, incorporated into Title 29 of the United States Code.

(o)    Children's Trust: the Children's Trust created by Act 173-1999, as amended.

(p)    Trust for the Joint Administration of the Retirement Systems: hereinafter referred to as FACSiR, is the new Retirement System established and promoted in this Act, which would administer a new trust in which the resources and obligations of the Retirement System of the Employees of the Government of Puerto Rico are consolidated, as established by Act No. 447 of May 15, 1951, as amended, hereinafter referred to as SRE; the Retirement System for the Judiciary, created by Act No. 12 of October 19, 1954, as amended, hereinafter referred to as SRJ; and the Puerto Rico Teachers' Retirement System, as established by Act 160-2013, hereinafter referred to as SRM, and centralize their management and administration expenses, following the confirmation of a viable, fair and equitable Adjustment Plan for the people and for the Pensioners and Participants of the Retirement Systems.

(q)    Government of the Commonwealth of Puerto Rico or Government: means all the entities comprising the Government of the Commonwealth of Puerto Rico created by the Constitution of Puerto Rico, including, without limitation, its departments, public corporations, administrative units, commissions, boards, divisions, bureaus, offices, trusts, municipalities, agencies and dependencies. This concept shall be broadly interpreted to include, without limitation, any entity that receives General Fund resources and issues public debt. For purposes of this Act, this term includes any entities, governmental or non-governmental, whose employees are currently making contributions in the Retirement Systems or in the New Defined Contribution Plan created through Act 106-2017, as amended, known as the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants".

(r)    Trust Income or FACSiR Income: shall include, without being construed as an exhaustive list or limitation:

Certified to be a correct and true translation from the source text in Spanish to the target language English.
1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118
By Targem Translations Inc.

(i)     the transfer of one hundred (100) percent of the balance deposited in the Account for the Payment of Accrued Pensions, created by virtue of Act 106-2017, as amended;

(ii)    one hundred (100) percent of the Participants' individual contributions;

(iii)   one hundred (100) percent of the employer contributions of the Government of the Commonwealth of Puerto Rico;

(iv)    one hundred (100) percent of the annual savings produced by the discharge, cancellation or reduction in the Outstanding Debt Service on the Contested Bonds;

(v)     the restitution of one hundred (100) percent of the individual contributions withheld from the Participants of the Retirement Savings Account Program, created by virtue of Chapter 3 of Act No. 447 of May 15, 1951 and the compensation corresponding to the investment income lost as a result of the SRE Administrator's failure to comply with Section 3-103 and Section 3-105 of the Retirement Savings Account Program and Act No. 447 of May 15, 1951, as amended, equivalent to an amount that shall never be less than that stipulated in Section 3.13 of this Act;

(vi)    one hundred (100) percent of any court judgments, and the inherent rights and those of the Government of the Commonwealth of Puerto Rico to seek and receive restitution for losses sustained by the public treasury as a result of the incompetence, negligence, recklessness or malice of the underwriting banks and their representatives or professional consultants in the issue, purchase and sale of the Challenged Bonds;

(vii)   one hundred (100) percent of the proceeds from the FACSiR's investments and assets, including the assets of the Retirement Systems that have not been liquidated or transferred to the Account for the Payment of Accumulated Pensions after the passage of Act 106-2017, as amended, whose ownership shall also be transferred, without liquidating the assets, to the FACSiR;

(viii)  one hundred (100) percent of the net savings generated in the management of the FACSiR and its assets;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(ix)     one hundred (100) percent of any other proprietary income that may be generated by the FACSiR without jeopardizing the Adequate Funding Ratio, in compliance with the fiduciary duties stipulated in Section 3.08 of this Act and which are consistent with the powers conferred upon the Trust by law; and,

(x)     the greater of: (i) fifty (50) percent of the annual savings produced by the discharge or reduction in the debt service of Uncontested Bonds, or (ii) the total annual savings necessary that should be generated in the debt service of Uncontested Bonds to attain the Adequate Funding Ratio in a period not exceeding fifteen (15) years, through a Debt Adjustment Plan under Title III of PROMESA.

(s)     FOMB: the Financial Oversight and Management Board for Puerto Rico, created under Titles I and II of PROMESA.

(t)     Retirement Board: board created under the provisions of Chapter 4 of Act 106-2017, as amended, known as the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants".

(u)     "Sarbanes-Oxley Act": means the "Sarbanes-Oxley Act of 2002", Public Act 107-204, passed by the United States Government on July 30, 2002.

(v)     Best Accounting Practices: means the establishment of a system of accounting controls that are consistent with generally accepted accounting principles (GAAP), ERISA and the Sarbanes-Oxley Act. It also means, without this being understood to be an exhaustive list or a limitation: (1) the creation of a team of internal auditors; (2) the quarterly and permanent publication of a detailed breakdown of income, expenses, investments and their performance, the individuals or legal entities managing the assets or advising on the investment of the assets, and the fees and other charges earned by the individuals or legal entities managing the assets or advising on the investment of the assets; (3) the annual and permanent publication of audited financial statements and actuarial valuation studies; (4) the quarterly and permanent publication of a statistical summary of the Participants and Pensioners, broken down by age groups, salary or benefit scales, and corresponding retirement programs; (5) the conduct and publication of regular and permanent compliance audits and performance

audits; in accordance with the United States Government Accountability Office (US GAO) standards, also known as the Yellow Book; (6) the translation into English and Spanish of all periodic reports required to be produced under this Act; (7) the submission of true and accurate copies, on a regular and permanent basis, of any periodic reports required to be transmitted by law, regulation, administrative bulletin, circular letter, generally accepted accounting principles, or internal policies for the retirement systems in Puerto Rico or pursuant to regulations of the Government of the United States of America, to the Legislative Assembly and to the legislative committees having jurisdiction over the Retirement Systems and the Budget of the Government of the Commonwealth of Puerto Rico; and (8) the adoption and publication of investment policies.

(w)     Participants: active employees of the Government of the Commonwealth of Puerto Rico, teachers and members of the Teachers' Retirement System of Puerto Rico, employees of the Municipalities, judges and members of the Retirement System of the Judiciary of Puerto Rico and employees of the Public Corporations, except for employees of the University of Puerto Rico and the Puerto Rico Electric Power Authority. In addition, it includes employees covered by the provisions of Act 211-2015, as amended, known as the "Voluntary Pre-retirement Program Act", and those who are or have become employees of a Public-Private Partnership and all members of the Retirement System of the Employees of the Government of the Commonwealth of Puerto Rico who have made contributions to said System and have not been reimbursed. This term includes former employees of the Government of the Commonwealth of Puerto Rico who left public service and who were not reimbursed for their contributions and/or any benefits accrued up to the date of separation.

(x)     Pensioner: any person who receives a pension, annuity or benefit in accordance with the provisions of this Act or those which create different Retirement Systems, except for the Retirement System of the University of Puerto Rico and the Retirement System of the Employees of the Puerto Rico Electric Power Authority.

(y)     Adjustment Plan: plan proposed by FOMB for the reduction of the debts of the Government of the Commonwealth of Puerto Rico through Title III of PROMESA, pursuant to Section 312 of PROMESA.

(z)    Pre-retiree: any person under the Voluntary Retirement Program created by Act 211-2015, as amended, known as the "Voluntary Retirement Program Law".

(aa)   PROMESA: Public Act 114-187, also known as the "Puerto Rico Oversight, Management and Economic Stability Act", passed by the Government of the United States of America.

(bb)   Bankruptcy: The debt restructuring process in which FOMB placed the Government of the Commonwealth of Puerto Rico on May 3, 2017 in the United States District Court for the District of Puerto Rico, under Title III of PROMESA.

(cc)   Substitution Requirements: (1) the passage of legislation providing for Substitute Collateral, which in turn provides: (A) that the Substitute Collateral in an amount equal to the FACSiR Revenues has been irrevocably transferred and is the sole and exclusive property of FACSiR to the extent provided under Section 3.5 of this Act; (B) that, following such transfer, the Substitute Collateral in an amount equal to the FACSiR Revenues is not and shall not constitute "available resources" or "available revenues" of the Government of the Commonwealth of Puerto Rico, as this term is used in Section 8 of Article VI of the Constitution of Puerto Rico or otherwise in the Constitution of Puerto Rico (regardless of whether the English or Spanish version of the Constitution of Puerto Rico is interpreted), (C) for the creation of a lien over the Substitute Collateral in favor of the trust fund held and administered by FACSiR for the benefit of the Participants and Pensioners of the Retirement Systems and FACSiR to the extent provided in Section 3. 6 of this Act; and (D) that the Government of the Commonwealth of Puerto Rico and the governmental entities shall continue to provide the guarantees set out in Section 3.4 of this Act with respect to such FACSiR Revenues and the Substitute Collateral; and (2) that, prior to the substitution of the Substitute Collateral, the qualification requirements established under any agreement incorporated into the Adjustment Plan with respect to the Substitute Collateral have been satisfied.

(dd)   Outstanding Debt Service on the Contested Bonds: the cost of redemption, including the payment of interest and the corresponding portion of principal or annual transfers of public funds to be made by the Government of the Commonwealth of Puerto Rico in connection with the issuance of bonds that have not yet matured, become due, been cancelled, exchanged, refinanced or

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

restructured from the effective date of Section 405 of PROMESA, or on the effective date of Section 362 of the U.S. Bankruptcy Code as applicable to Puerto Rico under Section 301(a) of PROMESA and up till the respective maturity dates of each bond issue.

(ee)    Retirement Systems: the Retirement System of the Employees of the Government of the Commonwealth of Puerto Rico, as established by Act No. 447 of May 15, 1951, as amended, hereinafter referred to as SRE; the Retirement System for the Judiciary, created by Act No. 12 of October 19, 1954, as amended, hereinafter referred to as SRJ; and the Retirement System for Teachers of Puerto Rico, as established by Act 160-2013, hereinafter referred to as SRM. For purposes of this Act, it does not include the Retirement System of the University of Puerto Rico or the Retirement System of the Employees of the Puerto Rico Electric Power Authority.

## CHAPTER 2 - PUBLIC POLICY

Section 2.01.- Declaration of Public Policy

The public policy of the Government of the Commonwealth of Puerto Rico, its Public Corporations, Municipalities and Retirement Systems shall be to:

(a)    protect the present and future of our public servants to prevent them from falling into poverty after a lifetime of service to their country and to recruit and retain the best possible talent now and forever in Puerto Rico's public service;

(b)    declare the most absolute and energetic rejection of any Adjustment Plan or Restructuring Agreement that reduces, harms, threatens, subordinates or worsens the current pensions, annuities, benefits and other accruals of public servant Pensioners and Participants of the Retirement Systems, more than they had already been reduced, impaired, threatened or worsened prior to the filing of the bankruptcy petition on May 3, 2017;

(c)    define as unviable and absolutely reject any Adjustment Plan that produces an unsustainable restructuring of the bonds of the Government of the Commonwealth of Puerto Rico, its Public Corporations and the Retirement Systems and that does not avoid a second event of insolvency or bankruptcy for public finances;

(d)    recognize that an unsustainable restructuring of the bonds of the Government of the Commonwealth of Puerto Rico, its Public Corporations and the Retirement Systems, or any successive event of insolvency or bankruptcy of the public finances, represents a direct and intolerable threat to the essential public services on which the people of Puerto Rico depend and to the pensions and other claims of the public servants who provide them, whether Pensioners or Participants in the Retirement Systems;

(e)    measure and promote the sustainability of Puerto Rico's debt payable from public funds on an aggregate basis and as determined by analyzing the ability to service such aggregate debt according to the purchasing power in Puerto Rico and net of the expenditure necessary to meet the payment of pensions and essential public services;

(f)    recognize that FOMB needs the Government of the Commonwealth of Puerto Rico to take affirmative action to enable it to comply with all requirements under Section 314 of PROMESA for the confirmation of an Adjustment Plan, including, but not limited to, authorizing bond issues to be exchanged as a result of an Adjustment Plan and amending any bonds that are inconsistent with the agreements reached between FOMB and creditor groups;

(g)    condemn the Joint Adjustment Plan for the Government of the Commonwealth of Puerto Rico, the Government Employees Retirement Systems Administration and the Judiciary of Puerto Rico, and the Puerto Rico Public Buildings Authority, filed by FOMB on September 27, 2019, as amended on February 28, 2020, and March 9, 2021, in the United States District Court for the District of Puerto Rico, as being irremediably incompatible with the Public Policy described in this Act;

(h)    reject any Adjustment Plan that purports to use Section 1129(b) of the U.S. Bankruptcy Code to impose additional cuts on public servant Pensioners and Participants in the Retirement Systems;

(i)    reject any Adjustment Plan or Restructuring Agreement whose feasibility or payment guarantee for debt service requires increasing or imposing regressive taxes, fees or other mechanisms that raise the cost of water, electricity, transportation, education and

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

other essential public services in order to collect public revenues from the pockets of working families and pensioners in Puerto Rico;

(j)    reject any Adjustment Plan or Restructuring Agreement whose feasibility or payment guarantee for debt service requires cuts to essential public services provided by the Government of the Commonwealth of Puerto Rico, its Public Corporations and Municipalities, including, but not limited to, education, health, environmental protection, housing, sanitation and solid waste management, security and emergency management, sewerage and water processing, electric power, road infrastructure and mass transportation;

(k)    recognize that any attempt to cut the budget available for essential public services provided by the Government of the Commonwealth of Puerto Rico, its Public Corporations and Municipalities, or to reduce payroll expenses or the number of public servants entitled to be Participants in the Retirement Systems, is also an attempt to cut the resources available to meet pension obligations, annuities, benefits and other credits that the Pensioners and Participants of the Retirement Systems may have, and the losses that this would represent in individual or employer contributions must be compensated to ensure the actuarial solvency of the Retirement Systems and the Trust for the Joint Administration of the Retirement Systems (FACSiR) modeled in Chapter 3 of this Act;

(l)    clearly and unequivocally state that no action will be taken to permit confirmation of any Adjustment Plan that is inconsistent with the provisions of this Public Policy, including, but not limited to, the removal of statutory or regulatory barriers, the creation of legislation or regulations, or any authorizations necessary to permit the FOMB Adjustment Plan to comply with the requirements of Section 314(b)(3) and Section 314(b)(5) of PROMESA;

(m)    recognize that the Pensioners and Participants of the Retirement Systems have already suffered harm in their claims against the Government of the Commonwealth of Puerto Rico, its Public Corporations, the Municipalities and the Retirement Systems during the years prior to the filing of the bankruptcy petition, for amounts that exceed:

(1)    forty-two (42) percent of the aggregate value of the pensions, benefits and other retirement rights for the average Pensioner or beneficiary of the Defined Benefit Program under

Act No. 447 of May 15, 1951, as amended, who were Participants as of a date prior to April 1, 1990;

(2)    thirty-one (31) percent of the aggregate value of pensions, benefits and other retirement entitlements for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who were Participants as of a date after April 1, 1990, but prior to January 1, 2000; and,

(3)    fifteen (15) percent of the aggregate value of the benefits and other retirement rights for the average beneficiary of the Retirement Savings Account Program under Act No. 447 of May 15, 1951, as amended, who were Participants as of January 1, 2000;

(n)    guarantee that no part of the funds and resources of the state government earmarked for activities related to the participation of the Government of the Commonwealth of Puerto Rico, its Public Corporations, the Municipalities, and the Retirement Systems in the processes under Title III of PROMESA, shall be directed towards the achievement of any Adjustment Plan inconsistent with the provisions of this Act;

(o)    seek the creation of a Trust Fund for the Joint Administration of the Retirement Systems (FACSiR) to be the custodian, collect, administer and adequately guarantee the resources intended for the payment of all pensions and benefits to which our public servants are currently entitled, as detailed in Chapter 3 of this Act, so as to protect, capitalize and guarantee in perpetuity the retirement rights and benefits for the Pensioners and Participants covered by this Act;

(p)    guarantee the right to a dignified retirement as a fundamental part of a dignified life and as a corollary of the right to the inviolability of the dignity of the human being enshrined in the Section One of the Bill of Rights of the Constitution of Puerto Rico;

(q)    recognize that a dignified retirement consists of enjoying a lifetime pension that protects each person against poverty in their old age, restoring to Pensioners and Participants of the Retirement Systems the rights and benefits they have lost through legislation in times of fiscal crises or severe emergencies in public finances, and expanding the

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

rights and benefits of Pensioners and FACSiR Participants once the Adequate Funding Ratio has been attained;

(r)    ensure the integrity, sound administration and Best Accounting Practices of all public funds available to the Government of the Commonwealth of Puerto Rico, its Public Corporations, Municipalities and Retirement Systems in order to avoid losses of public funds that may jeopardize the ability of the Government of the Commonwealth of Puerto Rico, its Public Corporations, Municipalities, Retirement Systems and the FACSiR to comply with the objectives outlined in this Public Policy;

(s)    define any acknowledgment or repayment of any part of any Contested Bonds, without due adjudication by a court of competent jurisdiction that such bonds were issued in accordance with applicable laws and regulations, including the Constitution of Puerto Rico, as an attack on the integrity, sound administration and Best Accounting Practices of the public funds available to the Government of the Commonwealth of Puerto Rico, its Public Corporations, the Municipalities and the Retirement Systems;

(t)    protect FACSiR's Revenues against diversions, defaults or other breaches that undermine the eventual contractual relationship between the Government of the Commonwealth of Puerto Rico and the FACSiR modeled in Chapter 3 of this Act.

(u)    guarantee to the University of Puerto Rico the allocation of sufficient recurrent annual funds to pay in a timely manner the employer and actuarial contributions required to protect the solvency of the University of Puerto Rico Retirement System Trust and preserve the full benefits of its participants and beneficiaries.

Section 2.02.- Section 2 of Act 2-2017, known as the "Puerto Rico Fiscal Agency and Financial Advisory Authority Act", is hereby amended to read as follows:

"Section 2 - Public Policy

It is hereby declared public policy of the Government of Puerto Rico that the Puerto Rico Fiscal Agency and Financial Advisory Authority shall be the leading public corporation and administrative unit responsible for coordinating the sustainable use of resources and for presenting a coordinated and global vision of the capital needs of the administrative units of the Government of Puerto Rico. It is the public

policy of the Government to take measures to enable Puerto Rico to overcome the current crisis and to provide essential services to the residents of the Island, and achieving this requires, in part, taking the following actions:

(a)    with regard to the public debt:

    (1)    regaining access to capital markets at affordable prices and reasonably sustainable repayment conditions;

    (2)    planning and stabilizing long-term public finances to avoid future insolvency events or default risks, and thus regain the confidence of traditional investors;

    (3)    addressing the budget imbalance between revenues and expenditures;

    (4)    publishing in a timely manner, and never at intervals exceeding thirty (30) days, information on revenues and expenditures, their relation to the projections of revenues and expenditures at the time of approving the budget, liquidity breakdowns and cash flow in the accounts of the Government of the Commonwealth of Puerto Rico;

    (5)    producing and publishing, in a timely manner and never in a period exceeding one hundred and twenty (120) days after the close of a fiscal year, the audited reports of the financial statements of the Government of the Commonwealth of Puerto Rico;

    (6)    negotiating debt repayment terms to reduce the cost of debt amortization and to eliminate or minimize as much as possible any financial speculation mechanisms detrimental to the stability of Puerto Rico's public finances, including, but not limited to, interest rate swaps, floating or variable interest rate bonds, capital appreciation or compound interest bonds, among other financial products or their derivative contracts that represent a high risk to Puerto Rico's financial stability; and,

    (7)    reducing the outstanding aggregate debt principal and debt service to a sustainable level that conforms to the purchasing power of the people of Puerto Rico, in order to restore stability to our public finances and the confidence of the traditional capital market.

(b)     regarding the pensions and benefits of participants, pensioners and pre-retirees who are beneficiaries of the Retirement Systems:

(1)     protecting the full pensions, annuities, benefits and other claims of public servants, whether participants, pensioners or pre-retirees, against any Adjustment Plan or Creditors' Composition that reduces, harms, threatens, subordinates or worsens the pensions, annuities, benefits and other current claims of public servants, Pensioners and Participants of the Retirement Systems, more than they have already been reduced, impaired, threatened, subordinated or worsened prior to the filing of the bankruptcy petition under Title III of PROMESA on May 3, 2017;

(2)     planning the creation of a Trust for the Joint Administration of the Retirement Systems (FACSiR) to be the custodian and to collect, administer and adequately guarantee the resources destined for the payment of all pensions and benefits in accordance with the same rights that our public servants had at the time the bankruptcy petition was filed under Title III of PROMESA on May 3, 2017, in order to protect, capitalize and guarantee in perpetuity the retirement rights and benefits for the Pensioners and Participants of the Retirement Systems;

(3)     achieving and preserving an adequate funding ratio for the FACSiR that is never less than 1.2, through the establishment of an independent trust with which the Government of Puerto Rico is contractually obligated to:

(A)     transfer all FACSiR Revenues in a timely manner and as agreed;

(B)     to refrain from taking any action that impairs the trust's right to receive and manage all of the FACSiR's Revenue; and,

(C)     to refrain from taking any action that would limit or alter the trust's rights and autonomy to meet the payment of pensions, annuities, benefits and other claims in effect for Pensioners and Participants of the Retirement Systems at the time the the of the filing of the bankruptcy petition

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

under Title III of PROMESA on May 3, 2017, and for FACSiR Participants and Pensioners".

Section 2.03.- Section 3 of Act 2-2017 is hereby amended to read as follows:

"Section 3.- Definitions

a)

b).

c).

d)     "Contested Bonds": collectively, all bond issues carried out by the Government of the Commonwealth of Puerto Rico whose legal guarantees, guaranteed amounts, pledged sources of payment or statutory authorizations have been contested in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of the Commonwealth of Puerto Rico, FOMB, the official committees of creditors and retirees, any other Interested Parties, as such term is defined in the U.S. Bankruptcy Code, or persons with standing to intervene by filing a bankruptcy petition, memorandum of law, motion, lawsuit, or adversary proceeding under any case filed under Title III of PROMESA. These include, without being limited to:

   l)     Series A Senior Pension Funding Bonds issued by the Administration of the Government Employees' Retirement System and the Judiciary (RSA) on January 31, 2008, in the aggregate principal amount of one billion, five hundred and eighty-eight million, eight hundred ten thousand, seven hundred and ninety-nine dollars and sixty cents (1,588,810,799.60), which includes one billion, five hundred and forty-three million, seven hundred and seventy thousand (1,543,770,000) dollars in term bonds and forty-five million, forty thousand, seven hundred and ninety-nine dollars and sixty cents (45,040,799.60) in capital appreciation bonds and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co, Oriental Financial Services Corporation, Samuel A. Ramirez & Co, Inc, Scotia Capital, TCM Capital and Wachovia Capital Markets, LLC originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

2) Series B Senior Pension Funding Bonds issued by the RSA on June 2, 2008, in the aggregate principal amount of one billion, fifty-eight million, six hundred and thirty-four thousand, six hundred and thirteen dollars and five cents (1,058,634,613. 05), which includes eight hundred and sixteen million, one hundred thousand (816,100,000) dollars in term bonds and two hundred and forty-two million, five hundred and thirty-four thousand, six hundred and thirteen dollars and five cents (242,534,613.05) in capital appreciation bonds, and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

3) Series C Senior Pension Funding Bonds issued by the RSA on June 30, 2008, in the aggregate principal amount of three hundred million, two hundred and two thousand, nine hundred and thirty (300,202,930) dollars, which includes two hundred and ninety-eight million (298,000,000) in term bonds and two million, two hundred and two thousand, nine hundred and thirty (2,202,930) dollars in capital appreciation bonds and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramirez & Co, Inc, Scotia Capital and Wachovia Capital Markets, LLC and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

4) Series K Government Facilities Revenue Refunding Bonds issued by the Public Buildings Authority (AEP) on July 1, 2009, in the principal amount of fifty million ($50,000,000) dollars in of term bonds identified by CUSIP number 745235L82 at the time of issuance and underwritten by Merrill Lynch & Co. and Ramirez & Co, Inc;

5) Series P Government Facilities Revenue Refunding Bonds issued by the AEP on July 1, 2009, in the aggregate principal amount of three hundred and thirty million, nine hundred and thirty-five thousand (330,935,000) dollars, which includes two hundred fifteen million, one hundred and sixty thousand (215,160,000) dollars in term bonds identified by CUSIP numbers 745235K75, 745235K83, 745235K91, 745235L25 and 745235L33 at the time of issuance and one hundred and fifteen million, seven hundred and seventy-five thousand (115,775,000) dollars in serial bonds identified by CUSIP numbers

745235L41, 745235L58, 745235L66 and 745235L74 at the time of issuance and which was underwritten by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

6) Series Q Government Facilities Revenue Refunding Bonds issued by the AEP on October 28, 2009, in the aggregate principal amount of one hundred and fifty-two million, five hundred and forty thousand (152,540,000) dollars, which includes one hundred and forty-four million, three hundred and forty thousand (144,340,000) dollars in term bonds identified by CUSIP numbers 745235M24, 745235M32 and 745235M40 at the time of issuance, and eight million, two hundred thousand (8,200,000) dollars in serial bonds identified by CUSIP number 745235L90 at the time of issuance and which was underwritten by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

7) Series R Government Facilities Revenue Bonds issued by the AEP on August 24, 2011, in the aggregate principal amount of seven hundred and fifty-six million, four hundred and forty-nine thousand (756,449,000) dollars identified by CUSIP numbers 745235 M57, 745235 M73, 745235 M65 and 745235 M81 at the time of issuance and which were underwritten by Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramirez & Co., Inc., Raymond James and Scotia MSD and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

8) Series S Government Facilities Revenue Bonds issued by the AEP on August 24, 2011, in the aggregate principal amount of three hundred and three million, nine hundred and forty-five thousand (303,945,000) dollars, which includes two hundred and eight million, nine hundred and forty-five thousand (208,945,000) dollars in term bonds identified by CUSIP numbers 745235P62 and 745235P70 at the time of issuance and ninety-five million (95,000,000) dollars in serial bonds identified by CUSIP numbers 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 y 745235P88 at the time of

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

issuance and which were underwritten by Ramirez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

9) Series T Government Facilities Revenue Bonds - Qualified Zone Academy Bonds issued by the AEP on December 22, 2011, in the aggregate principal amount of one hundred and twenty-one million, five hundred and twenty-eight thousand (121,528,000) dollars, identified by CUSIP number 745235Q20 at the time of issuance and underwritten by Santander Securities and UBS Financial Services Puerto Rico;

10) Series U Government Facilities Revenue Refunding Bonds issued by the AEP on June 21, 2012, in the aggregate principal amount of five hundred and eighty-two million, three hundred and forty-five thousand ($582,345,000) dollars, which includes five hundred and thirty-eight million, six hundred and seventy-five thousand (538,675,000) dollars in term bonds identified by CUSIP number 745235R37 at the time of issuance, and forty-three million, six hundred and seventy thousand (43,670,000) dollars in serial bonds identified by CUSIP numbers 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 and 745235S69 at the time of issuance and which was underwritten by Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramirez & Co., Inc., Raymond James Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico and VAB Financial;

11) Series A General Obligation Bonds issued by the Government of Puerto Rico on March 17, 2014, in the principal amount of three billion, five hundred million ($3,500,000,000,000) dollars of term bonds identified by CUSIP number 74514LE86 at the time of issuance and which was underwritten by Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramirez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities and UBS Financial Services Puerto Rico;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

12) Series A Public Improvement Refunding Bonds - General Obligation Bonds issued by the Government of Puerto Rico on April 3, 2012, in the aggregate principal amount of two billion, three hundred and eighteen million, one hundred and ninety thousand (2,318,190,000) dollars, which includes one billion, six hundred and seventy-eight million, seven hundred forty-five thousand (1,678,745,000) dollars in term bonds identified by the numbers CUSIP 74514LD20, 74514LB63, 74514LB71 and 74514LB89 at the time of issuance, and six hundred and thirty-nine million, four hundred and forty-five thousand (639,445,000) dollars in serial bonds identified by CUSIP numbers74514LA31, 74514LC47, 74514LA49, 74514LC54, 74514LA56, 74514LC62, 74514LD46, 74514LC70, 74514LA64, 74514LD53, 74514LC88, 74514LA72, 74514LD61, 74514LA80, 74514LD79, 74514LD38, 74514LC96, 74514LA98, 74514LB22, 74514LD87, 74514LB30, 74514LB48, 74514LB97, 74514LB55, 74514LC21 and 74514LC39 at the time of issuance, and which was underwritten by Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

13) Series B Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 29, 2012 in the aggregate principal amount of four hundred and fifteen million, two hundred and seventy thousand (415,270,000) dollars, which includes forty-nine million, six hundred and ten thousand (49,610,000) dollars in term bonds identified by CUSIP number 74514LA23, and three hundred and sixty-five million, six hundred and sixty thousand (365, 660,000) dollars in serial bonds identified by CUSIP numbers 74514LZS9, 74514LZT7, 74514LZU4, 74514LZV2, 74514LZW0, 74514LZX8, 74514LZY6, 74514LZZ3, and was underwritten by UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramirez & Co., Inc., Raymond James and Scotia MSD;

14) Series C Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 17, 2011 in the aggregate principal amount of four hundred and forty-two million, fifteen thousand (442,015,000) dollars, which includes one hundred and twenty-seven million, fifteen thousand (127,015,000) dollars in term bonds

identified by CUSIP number 74514LXH5, and three hundred and fifteen million (315,000,000) dollars in serial bonds identified by CUSIP number 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 and 74514LWX1, and which was underwritten by Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities and VAB Financial;

15) Series D Public Improvement Refunding Bonds issued by the Government of Puerto Rico on July 12, 2011 in the principal amount of fifty-two million, one hundred and ninety thousand ($52,190,000) dollars in serial bonds identified by CUSIP numbers 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9, 74514LZG5 and 74514LZE0, and which was underwritten by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

16) Series E Public Improvement Bonds issued by the Government of Puerto Rico on July 12, 2011 in the principal amount of two hundred and forty-five million, nine hundred and fifteen thousand (245,915,000) dollars in serial bonds identified by CUSIP numbers 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 and 74514LZQ3, and which was underwritten by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

17) Series A Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009 in the principal amount of three million, four hundred and twenty-five thousand (3,425,000) dollars of term bonds identified by CUSIP number 74514LVV6, and which was underwritten by Morgan Stanley, JP Morgan,

Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramirez & Co., Inc., Popular Securities, Santander Securities and UBS Financial Services of Puerto Rico;

18) The Series 2007 A-4 Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009 in the principal amount of ninety-three million, eight hundred and thirty-five thousand (93,835,000) dollars of serial bonds identified by the CUSIP numbers 74514LVT1 and 74514LVU8, and which was underwritten by Morgan Stanley and JP Morgan;

19) Series B Public Improvement Refunding Bonds issued by the Government of Puerto Rico on November 17, 2009 in the principal amount of three hundred and seventy-two million, six hundred and eighty-five thousand (372,685,000) dollars of bonds identified by the CUSIP numbers 74514LVX2, 74514LVY0, 74514LVZ7 and 74514LVW4, and which was underwritten by Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramirez & Co., Inc., Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

20) Series C Public Improvement Refunding Bonds issued by the Government of Puerto Rico on December 16, 2009 in the principal amount of two hundred and ten million, two hundred and fifty thousand (210,250,000) dollars of term bonds identified by the CUSIP number 74514LWA1, and which was underwritten by Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch & Co., Ramirez & Co., Inc., UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities y Santander Securities; and,

21) Series A Public Improvement Refunding Bonds issued by the Government of Puerto Rico on February 17, 2011 in the principal amount of three hundred and fifty-six million, five hundred and twenty thousand (356,520,000) dollars of serial bonds identified by CUSIP numbers 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 and 74514LWS2, and which was underwritten by Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities and Santander Securities.

e)     Uncontested Bonds: collectively, all bond issues carried out by the Government of the Commonwealth of Puerto Rico whose legal guarantees, guaranteed amounts, pledged sources of payment or statutory authorizations have not been contested in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of the Commonwealth of Puerto Rico, FOMB, the official committees of creditors and retirees, any other Interested Parties, as such term is defined in the U.S. Bankruptcy Code, or persons with standing to intervene by filing a bankruptcy petition, memorandum of law, motion, lawsuit, or adversary proceeding under any case filed and pending final resolution under Title III of PROMESA. and, (ii) are still outstanding.

f)     "Government of Puerto Rico"- means all the entities that compose the Government of Puerto Rico, including, without limitation, its public corporations, instrumentalities, commissions, boards, and political subdivisions. This concept shall be interpreted in the broadest manner to include, but without being limited to, any entity that receives resources from the general fund and issues public debt.

g)     "Trust Income or FACSiR Income"-shall include, but without this being construed as an exhaustive list or limitation:

     1)     the transfer of one hundred (100) percent of the balance deposited in the Account for the Payment of Accrued Pensions, created by virtue of Act 106-2017, as amended;

     2)     one hundred (100) percent of the Participants' individual contributions;

     3)     one hundred (100) percent of the Government of Puerto Rico's employer contributions;

     4)     one hundred (100) percent of the annual savings produced by the discharge, cancellation or reduction in the Outstanding Debt Service on the Contested Bonds;

     5)     the restitution of one hundred (100) percent of the individual contributions withheld from the Participants of the Retirement Savings Account Program, created by virtue of Chapter 3 of Act No. 447 of May 15, 1951 and the compensation corresponding to the

investment income not received as a result of the SRE Administrator's failure to comply with Section 3-103 and Section 3-105 of the Retirement Savings Account Program and Act No. 447 of May 15, 1951, as amended;

6)    one hundred (100) percent of any court judgments, and the inherent rights and those of the Government of the Commonwealth of Puerto Rico to seek and receive restitution for losses sustained by the public treasury as a result of the incompetence, negligence, recklessness or malice of the underwriting banks and their representatives or professional consultants in the issue, purchase and sale of the Contested Bonds;

7)    one hundred (100) percent of the proceeds from the FACSiR's investments and assets, including the assets of the Retirement Systems that have not been liquidated or transferred to the Account for the Payment of Accumulated Pensions after the passage of Act 106-2017, as amended, whose ownership shall also be transferred, without liquidating the assets, to the FACSiR;

8)    one hundred (100) percent of the net savings generated in the management of the FACSiR and its assets;

9)    one hundred (100) percent of any other proprietary income that may be generated by the FACSiR without jeopardizing the Adequate Funding Ratio, in compliance with the fiduciary duties provided in Section 3.08 of this Act, and which are consistent with the powers conferred upon the Trust by law; and,

10)    the greater of: (i) fifty (50) percent of the annual savings produced by the discharge or reduction in debt service on Uncontested Bonds, or (ii) the total annual savings necessary to produce in debt service on Uncontested Bonds to reach the Adequate Funding Ratio in a period not to exceed fifteen (15) years, through a Debt Adjustment Plan under Title III of PROMESA.

h)    "Board" or "Board of Directors" - means the Board of the Authority.

i)    "Act"- means this Puerto Rico Fiscal Agency and Financial Advisory Authority Act of the Government of Puerto Rico.

j)    "Act 21" - means Act 21-2016, as amended, known as the "Puerto Rico Emergency Moratorium and Financial Rehabilitation Act".

k) "Person"- means any natural or juridical person, including, but not limited to, any governmental agency, department, administrative unit, public corporation, municipality, board, bureau, office, commission or agency or any public or private person, firm, association, partnership, company, limited liability company, association, or corporation, organized and existing under the laws of Puerto Rico, the United States of America or any of its states, or of any foreign country, or any combination of the foregoing.

l) Adjustment Plan: plan proposed by FOMB for the reduction of the debts of the Government of Puerto Rico, pursuant to Section 312 of PROMESA.

m) "PROMESA" - means Public Act 114-187 of June 30, 2016, entitled the Puerto Rico Oversight, Management, and Economic Stability Act.

n) "Outstanding Debt Service" - means the cost of amortization, including the payment of interest and the corresponding portion of principal, or the annual transfers of public funds to be made by the Government of Puerto Rico in compliance with the issues of Contested Bonds between the effective dates of Section 405 of PROMESA, or Section 362 of the United States Bankruptcy Code as applicable to Puerto Rico by Section 301(a) of PROMESA, and until the respective maturity dates of each issue of Contested Bonds.

o) "Retirement Systems" means the Retirement System of the Employees of the Government of the Commonwealth of Puerto Rico, as established by Act No. 447 of May 15, 1951, as amended, hereinafter referred to as SRE; the Retirement System for the Judiciary, created by Act No. 12 of October 19, 1954, as amended, hereinafter referred to as SRJ; and the Retirement System for Teachers of Puerto Rico, as established by Act 160-2013, hereinafter referred to as SRM. For purposes of this Act, it does not include the Retirement System of the University of Puerto Rico or the Retirement System of the Employees of the Puerto Rico Electric Power Authority."

Section 2.04.- Section 5 of Act 2-2017 is hereby amended to read as follows:

"Section 5.- Objects and Powers of the Authority

(a)      ……

(b)    To these ends, the Authority shall be empowered to collaborate with the Governor of Puerto Rico and their representatives in the creation, execution, supervision, and oversight of any Fiscal Plan and any Budget, as well as any Adjustment Plan or Restructuring Support Agreement, as such terms are defined in PROMESA, which conforms to the Public Policy of this Act. Likewise, the Authority shall be the governmental entity in charge of the supervision, execution and administration of the Fiscal Plan approved and certified in accordance with PROMESA, and shall ensure that all entities of the Government of Puerto Rico comply with the Fiscal Plan, as duly approved. In this regard, the Authority shall develop a comprehensive operational, managerial and/or administrative audit program aimed at supervising the compliance of all entities of the Government of Puerto Rico with the Fiscal Plan approved pursuant to PROMESA. The Authority shall not be empowered to assist in the creation, execution, supervision and oversight of any Fiscal Plan, Budget, Debt Adjustment Plan or Restructuring Support Agreement, as such terms are defined in PROMESA, that are contrary to the Public Policy set forth in Section 2 of this Act. When a Fiscal Plan, Budget, Debt Adjustment Plan or Restructuring Agreement is contrary to the Public Policy provided in Section 2 of this Act, the Authority shall provide such information as may be required by formal request for documents and shall make public the entire contents of any document or information provided to comply with a duly executed request pursuant to PROMESA.

(c)    ……

(d)    In order to achieve these purposes, the Authority is hereby vested with, and shall have and may exercise, all such rights and powers as may be necessary or convenient to carry out such purposes, including, without limitation, the following:

(1)    ……

(2)    ……

(3)    ……

(4)    determine the character and necessity of all expenditures thereof, and the manner in which these shall be incurred, authorized, and paid, so long as

such expenditures conform to the Public Policy set out in Section 2 and to the Objects and Powers of the Authority set out in Section 5 of this Act, under penalty of nullity, without regard to any provision of law regulating the expenditure of public funds, and such determination shall be final and conclusive as regards all officers of the Government of Puerto Rico, but it shall adopt rules for the use and disbursement of its funds and shall be subject to the intervention of the Office of the Comptroller of Puerto Rico, the Committee on Treasury and Budget of the House of Representatives, the Committee on Labor Affairs and Pension System Transformation for a Dignified Retirement of the House of Representatives, the Committee on Treasury, Federal Affairs and Fiscal Oversight Board of the Senate, and the Committee on Government of the Senate;

(5) ……

(e)     While performing its role as fiscal agent, financial advisor, information agent, or representative of the Government of Puerto Rico in the renegotiation or restructuring of the public debt, the Authority shall not be authorized to:

(1)     propose, endorse, create, recommend, or otherwise use its powers or authority to advance any Adjustment Plan or Restructuring Agreement that is contrary to the Public Policy set out in Section 2 of this Act;

(2)     propose, endorse, create, recommend, or otherwise use its authority or powers to advance any Adjustment Plan or Restructuring Agreement whose feasibility or guarantee of payment for debt service requires increasing or imposing taxes, fees or other mechanisms that produce a regressive effect, increase or decrease the resources available for water, electricity, transportation, education and other essential public services to the detriment of the economic well-being of working families and pensioners in Puerto Rico; and,

(3)     propose, endorse, create, recommend, or otherwise use its powers or authority to advance any Adjustment Plan or Restructuring Agreement that includes an acknowledgment or repayment of any portion of the Disputed Bonds,

without a proper adjudication by a court of competent jurisdiction that such bonds were issued in accordance with applicable laws and regulations, including the Constitution of Puerto Rico."

Section 2.05.- Section 9 of Act 2-2017 is hereby amended to read as follows:

"Section 9.- Authority to Review Contracts and Transactions

(a)        ………

(b)        Where a contract is inconsistent with the Fiscal Plan approved pursuant to PROMESA or with the Public Policy provided in this Act, the Authority shall take all actions it deems necessary to ensure that such contract does not adversely affect the compliance of the Government of Puerto Rico with the Fiscal Plan or the Public Policy of this Act, including the prohibition of its execution, its suspension, or its cancellation.

(c)        "

Section 2.06.- New paragraphs 43 to 64 are hereby added to Section 1-104 of Act No. 447 of May 15, 1951, as amended, such that it shall read as follows:

"Section 1-104.- Definitions.

The following terms and phrases, as used in this Act, shall have the following meanings, except where the context clearly indicates another meaning:

(1)        ……

(2)        ……

……

(43)       AAFAF. - The Puerto Rico Fiscal Agency and Financial Advisory Authority, created by Act 2-2017.

(44)       Restructuring Agreement: means any agreement between: (1) the Government of Puerto Rico, its Public Corporations, Municipalities or Retirement Systems;; (2) FOMB; (3) bondholders of the Government of Puerto Rico, its Public Corporations, Municipalities or Retirement Systems; (4) bond insurers of the Government of Puerto Rico, its Public Corporations,

59

Municipalities or Retirement Systems; whether or not subrogated to the bondholders' credit rights; in connection with or in support of any transaction involving a Qualifying Modification, as such term is defined in Title VI of PROMESA, or an Adjustment, as such term is used in Title III of PROMESA, of the bonds of the Government of Puerto Rico, its Public Corporations, Municipalities or Retirement Systems.

(45)     AEP: The Puerto Rico Public Buildings Authority, created by Act No. 56 of June 19, 1958, as amended.

(46)     Contested Bonds - Collectively, all bond issues made by the Government of Puerto Rico, its Public Corporations, Municipalities or Retirement Systems whose legal guarantees, guaranteed amounts, pledged sources of payment or legal authorizations have been challenged in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of Puerto Rico, its Public Corporations, Municipalities, Retirement Systems, FOMB, the official committees of creditors and retirees, any other Interested Parties, as such term is defined in the United States Bankruptcy Code, or persons with standing to intervene by filing a bankruptcy petition, memorandum of law, motion, demand, or adversary proceeding in any case filed and pending final adjudication under Title III of PROMESA, including but not limited to:

(a)     Series A Senior Pension Funding Bonds issued by the Administration of the Government Employees' Retirement System and the Judiciary (RSA) on January 31, 2008, in the aggregate principal amount of one billion, five hundred and eighty-eight million, eight hundred ten thousand, seven hundred and ninety-nine dollars and sixty cents (1,588,810,799.60), which includes one billion, five hundred and forty-three million, seven hundred and seventy thousand (1,543,770,000) dollars in term bonds and forty-five million, forty thousand, seven hundred and ninety-nine dollars and sixty cents (45,040,799.60) in capital appreciation bonds and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co, Oriental Financial Services Corporation, Samuel A. Ramirez & Co, Inc, Scotia Capital, TCM Capital and Wachovia Capital Markets, LLC originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(b) Series B Senior Pension Funding Bonds issued by the RSA on June 2, 2008, in the aggregate principal amount of one billion, fifty-eight million, six hundred and thirty-four thousand, six hundred and thirteen dollars and five cents (1,058,634,613. 05), which includes eight hundred and sixteen million, one hundred thousand (816,100,000) dollars in term bonds and two hundred and forty-two million, five hundred and thirty-four thousand, six hundred and thirteen dollars and five cents (242,534,613.05) in capital appreciation bonds, and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

(c) Series C Senior Pension Funding Bonds issued by the RSA on June 30, 2008, in the aggregate principal amount of three hundred million, two hundred and two thousand, nine hundred and thirty (300,202,930) dollars, which includes two hundred and ninety-eight million (298,000,000) in term bonds and two million, two hundred and two thousand, nine hundred and thirty (2,202,930) dollars in capital appreciation bonds and was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramirez & Co, Inc, Scotia Capital and Wachovia Capital Markets, LLC and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

(d) Series K Government Facilities Revenue Refunding Bonds issued by the Public Buildings Authority (AEP) on July 1, 2009, in the principal amount of fifty million ($50,000,000) dollars of term bonds identified by CUSIP number 745235L82 at the time of issuance and underwritten by Merrill Lynch & Co. and Ramirez & Co, Inc;

(e) Series P Government Facilities Revenue Refunding Bonds issued by the AEP on July 1, 2009, in the aggregate principal amount of three hundred and thirty million, nine hundred and thirty-five thousand (330,935,000) dollars, which includes two hundred fifteen million, one hundred and sixty thousand (215,160,000) dollars in term bonds identified by CUSIP numbers 745235K75, 745235K83, 745235K91, 745235L25 and 745235L33 at the time of issuance and one hundred and fifteen million, seven hundred and seventy-five thousand (115,775,000) dollars in serial bonds identified by CUSIP numbers

745235L41, 745235L58, 745235L66 and 745235L74 at the time of issuance and which was underwritten by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(f)    Series Q Government Facilities Revenue Refunding Bonds issued by the AEP on October 28, 2009, in the aggregate principal amount of one hundred and fifty-two million, five hundred and forty thousand (152,540,000) dollars, which includes one hundred and forty-four million, three hundred and forty thousand (144,340,000) dollars in term bonds identified by CUSIP numbers 745235M24, 745235M32 and 745235M40 at the time of issuance, and eight million, two hundred thousand (8,200,000) dollars in serial bonds identified by CUSIP number 745235L90 at the time of issuance and which was underwritten by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(g)    Series R Government Facilities Revenue Bonds issued by the AEP on August 24, 2011, in the aggregate principal amount of seven hundred and fifty-six million, four hundred and forty-nine thousand (756,449,000) dollars identified by CUSIP numbers 745235 M57, 745235 M73, 745235 M65 and 745235 M81 at the time of issuance and underwritten by Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramirez & Co., Inc., Raymond James and Scotia MSD and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

(h)    Series S Government Facilities Revenue Bonds issued by the AEP on August 24, 2011, in the aggregate principal amount of three hundred and three million, nine hundred and forty-five thousand (303,945,000) dollars, which includes two hundred and eight million, nine hundred and forty-five thousand (208,945,000) dollars in term bonds identified by CUSIP numbers 745235P62 and 745235P70 at the time of issuance and ninety-five million (95,000,000) dollars in serial bonds identified by CUSIP numbers 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 and 745235P88 at the time of

issuance, and which were underwritten by Ramirez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(i)  Series T Government Facilities Revenue Bonds - Qualified Zone Academy Bonds issued by the AEP on December 22, 2011, in the aggregate principal amount of one hundred and twenty-one million, five hundred and twenty-eight thousand (121,528,000) dollars, identified by CUSIP number 745235Q20 at the time of issuance and underwritten by Santander Securities and UBS Financial Services Puerto Rico;

(j)  Series U Government Facilities Revenue Refunding Bonds issued by the AEP on June 21, 2012, in the aggregate principal amount of five hundred and eighty-two million, three hundred and forty-five thousand (582,345,000) dollars, which includes five hundred and thirty-eight million, six hundred and seventy-five thousand (538,675,000) dollars in term bonds identified by CUSIP number 745235R37 at the time of issuance, and forty-three million, six hundred and seventy thousand (43,670,000) dollars in serial bonds identified by CUSIP numbers 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 and 745235S69 at the time of issuance and which was underwritten by Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramirez & Co., Inc., Raymond James I Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico and VAB Financial;

(k)  Series A General Obligation Bonds issued by the Government of Puerto Rico on March 17, 2014, in the principal amount of three billion, five hundred million (3,500,000,000,000) dollars of term bonds identified by CUSIP number 74514LE86 at the time of issuance and which was underwritten by Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramirez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities and UBS Financial Services Puerto Rico;

(l) Series A Public Improvement Refunding Bonds - General Obligation Bonds issued by the Government of Puerto Rico on April 3, 2012, in the aggregate principal amount of two billion, three hundred and eighteen million, one hundred and ninety thousand (2,318,190,000) dollars, which includes one billion, six hundred and seventy-eight million, seven hundred and forty-five thousand (1,678,745,000) dollars in term bonds identified by the CUSIP numbers 74514LD20, 74514LB63, 74514LB71 and 74514LB89 at the time of issuance, and six hundred and thirty-nine million, four hundred and forty-five thousand (639,445,000) dollars in serial bonds identified by CUSIP numbers 74514LA31, 74514LC47, 74514LA49, 74514LC54, 74514LA56, 74514LC62, 74514LD46, 74514LC70, 74515LA64,74514LD53, 74514LC88, 74514LA72, 74514LD61, 74514LA80, 74514LD79, 74514LD38, 74514LC96, 74514LA98, 74514LB22, 74514LD87, 74514LB30, 74514LB48, 74514LB97, 74514LB55, 74514LC21 and 74514LC39 at the time of issuance, and which was underwritten by Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(m) Series B Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 29, 2012, in the aggregate principal amount of four hundred and fifteen million, two hundred and seventy thousand (415,270,000) dollars, which includes forty-nine million, six hundred and ten thousand (49,610,000) dollars in term bonds identified by CUSIP number 74514LA23 and three hundred and sixty-five million, six hundred and sixty thousand (365,660,000) dollars in serial bonds identified by CUSIP number 74514LZS9, 74514LZT7, 74514LZU4, 74514LZV2, 74514LZW0, 74514LZX8, 74514LZY6, 74514LZZ3 and which was underwritten by UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramirez & Co., Inc., Raymond James and Scotia MSD;

(n) Series C Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 17, 2011, in the aggregate principal amount of four hundred and forty-two million, fifteen thousand (442,015,000) dollars, which includes one hundred and twenty-seven million and fifteen thousand (127,015,000) dollars in term bonds

64

identified by CUSIP number 74514LXH5, and three hundred fifteen million (315,000,000) dollars in serial bonds identified by CUSIP number 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 and 74514LWX1 and which was underwritten by Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities and VAB Financial;

(o) Series D Public Improvement Refunding Bonds issued by the Government of Puerto Rico on July 12, 2011, in the principal amount of fifty-two million, one hundred and ninety thousand (52,190,000) dollars in serial bonds identified by CUSIP numbers 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9, 74514LZG5 and 74514LZE0 and which was underwritten by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(p) Series E Public Improvement Bonds issued by the Government of Puerto Rico on July 12, 2011, in the principal amount of two hundred and forty-five million, nine hundred and fifteen thousand (245,915,000) dollars in serial bonds identified by CUSIP numbers 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 and 74514LZQ3 and which were underwritten by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(q) Series A Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009, in the principal amount of three million, four hundred and twenty-five thousand (3,425,000) dollars of term bonds identified by CUSIP number 74514VV6, and which was underwritten by Morgan Stanley, JP Morgan,

Certified to be a correct and true translation from the source text in Spanish to the target language English.
1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118
By Targem Translations Inc.

Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramirez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services of Puerto Rico;

(r) Series 2007 A-4 Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009 in the amount of ninety-three million, eight hundred and thirty-five thousand (93,835,000) dollars in principal amount of serial bonds identified by CUSIP numbers 74514LVT1 and 74514LVU8, and which was underwritten by Morgan Stanley and JP Morgan;

(s) Series B Public Improvement Refunding Bonds issued by the Government of Puerto Rico on November 17, 2009 in the principal amount of three hundred and seventy-two million, six hundred and eighty-five thousand (372,685,000) dollars in term bonds identified by CUSIP numbers 74514LVX2, 74514LVY0, 74514LVZ7 and 74514LVW4, and which was underwritten by Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramirez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;

(t) Series C Public Improvement Refunding Bonds issued by the Government of Puerto Rico on December 16, 2009, in the principal amount of two hundred and ten million, two hundred and fifty thousand (210,250,000) dollars of term bonds identified by CUSIP number 74514LWA1, and which was underwritten by Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co, Merrill Lynch & Co, Ramirez & Co, Inc, UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities and Santander Securities; and,

(u) Series A of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on February 17, 2011 in the principal amount of three hundred and fifty-six million, five hundred and twenty thousand (356,520,000) dollars of serial bonds identified by CUSIP numbers 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 and 74514LWS2, and which was underwritten by Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities and Santander Securities;

(47)    Uncontested Bonds. Collectively, all bonds issued by the Government of Puerto Rico or its Public Companies, Municipalities, or Retirement Systems whose legal guarantees, guaranteed amounts, committed payment sources, or legal authorizations have not been challenged in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of Puerto Rico or its Public Companies, Municipalities, or Retirement Systems, the FOMB, the official committees of creditors and retirees, or any other Party in Interest, pursuant to that term's definition in the United States Bankruptcy Code, or person with standing to intervene by way of filing of bankruptcy petition, statement of grounds, motion, suit, or adversarial proceeding under the purview of any case filed and pending final ruling under Title III of PROMESA; and (ii) that are still pending payment.

(48)    Bankruptcy Code. This refers to Title 11 of the United States Code, which provides on the mechanisms for composition or adjustment of debts for individuals, corporations, and government entities.

(49)    Adequate Funding Ratio. The proportion, equal to 1.2, of total own resources of the Trust for the Joint Administration of Retirement Systems relative to its total obligations, as determined annually by way of independent actuarial study based on the actuarial method and aggregate valuation of cost and funding used by the Office of the Comptroller of the State of New York for the administration of government retirement systems in that state, in order to achieve an adequate level of funding for pensions.

(50)    CUSIP. This refers to the Committee on Uniform Securities Identification Procedures, whose numbering system allows unique identification of all stocks and bonds registered in capital markets of the United States and Canada and is used to create a specific distinction between the securities that are traded in public markets. The Committee on Uniform Securities Identification Procedures (CUSIP) oversees the entire CUSIP numbering system.

(51)    ERISA. The 1974 Employee Retirement Income Security Act, incorporated under Title 29 of the United States Code.

(52)   Trust for the Joint Administration of Retirement Systems, hereinafter referred to by its Spanish abbreviation FACSiR, is the new Retirement System designed and proposed in this Act, and which would administer a new trust which consolidates the resources and obligations of the Retirement System of Government Employees of Puerto Rico, as established by way of Act No. 447 of May 15, 1951, as amended, hereinafter referred to as the SRE; the Retirement System for the Judiciary, created by way of Act No. 12 of October 19, 1954, as amended, hereinafter referred to as the SRJ; and the Retirement System for Teachers of Puerto Rio, as established by way of Act 160-2013, hereinafter referred to as the SRM, and which centralizes the management of administration expenses of said systems, following confirmation of a viable, just, and equitable Adjustment Plan for the people and for the Pensioners and Participants in the Retirement Systems.

(53)   Revenues of the Trust or Revenues of the FACSiR will include, but not be limited to:

(a)   the transfer of one hundred (100) percent of the balance deposited in the Account for Payment of Accumulated Pensions, created under Act 106-2017, as amended;

(b)   one hundred (100) percent of the individual contributions of the Participants;

(c)   one hundred (100) percent of the employer contributions of the Government of Puerto Rico;

(d)   one hundred (100) percent of the annual savings produced by the discharge, cancellation, or reduction in the Servicing of Debt Pending Payment of the Contested Bonds;

(e)   restitution of one hundred (100) percent of the individual contributions withheld from Participants in the Retirement Savings Accounts Program, created under Chapter 3 of Act No. 447 of May 15, 1951, and the damages corresponding to the investment returns lost following the SRE Administrator's violation of Article 3-103 and Article 3-105 of the Retirement Savings Accounts Program and Act No. 447 of May 15, 1951, as amended;

(f)   one hundred (100) percent of any court judgments and the rights inherent to the Government of Puerto Rico to seek and receive restitution for damages and losses suffered by public treasury as

a result of the incompetence, negligence, recklessness, or malice of the underwriting banks and their representatives or professional consultants in the issuance, purchase, and sale of Contested Bonds;

(g) one hundred (100) percent of the credits for the investments and assets of the FACSiR, including the assets of the Retirement System that have not been liquidated or transferred to the Account for Payment of Accumulated Pensions following the passing of Act 106-2017, as amended, ownership of which will also be transferred to the FACSiR, without liquidating the assets;

(h) one hundred (100) percent of the net savings produced in the administration of the FACSiR and its assets;

(i) one hundred (100) percent of any other own revenues that may be generated by the FACSiR without risking the Adequate Funding Ratio, in adherence to the fiduciary duties stipulated in Section 3.08 of this Act and consistent with the powers granted to the Trust in this Act; and

(j) the larger of either: (i) fifty (50) percent of the annual savings produced by the discharge or reduction in debt servicing of Uncontested Bonds, or (ii) total annual savings necessary in the debt servicing of Uncontested Bonds to reach the Adequate Funding Ratio within a period of no more than fifteen (15) years, through a Debt Adjustment Plan under Title III of PROMESA.

(54) FOMB. Financial Administration and Oversight Board, created under Titles I and II of PROMESA.

(55) "Sarbanes-Oxley Act" refers to the 2002 "Sarbanes-Oxley Act", Public Act 107-204, passed by the Government of the United States of July 30, 2002.

(56) Best Accounting Practices refers to the establishing of a system of accounting control that are consistent with the generally accepted accounting principles (GAAP), ERISA, and the "Sarbanes-Oxley Act". It also includes, but is not limited to: (1) the creation of a team of internal auditors; (2) quarterly and permanent publication of a detailed breakdown of revenues, expenses, investments and

69

their yield, the individuals or legal entities that administer the assets or advise on the investment of the assets, and the honoraria and other fees accrued by the individuals or legal entities that administer the assets or advise in the investment of the assets; (3) the annual and permanent publication of audited financial statements and actuarial valuation studies; (4) the quarterly and permanent publication of a statistical summary of the Participants and Pensioners, broken down by age group, salary or benefit scale, and the corresponding retirement programs; (5) the regular and permanent conducting and publication of compliance and performance audits, pursuant to the standards of the United States Government Accountability Office (US GAO), also known as the Yellow Book; (6) Spanish and English translation of all periodic reports that are required under this Act; (7) regular and permanent delivery of true and faithful copies of any periodic reports required under this Act, regulations, administrative bulletin, circular, generally accepted accounting principles, or internal policies for the retirement systems in Puerto Rico, or in accordance with the rules of the Government of the United States of America, to the Legislative Assembly and to the legislative commissions that have jurisdiction over the Retirement Systems and the Budget of the Government of Puerto Rico; and (8) the adoption and publication of investment policies.

(57)    Participants. Active employees of the Government of Puerto Rico, the Teachers and members of the Retirement System for Teachers of Puerto Rico, the employees of the Municipalities, the judges and members of the Retirement System of the Judiciary of Puerto Rico, and the employees of the Public Corporations, except the employees of the University of Puerto Rico who are members or participants of the Retirement System of the University of Puerto Rico and the employees of the Electricity Authority that are members or participants of the Retirement System for Electricity Authority Employees. In addition, it includes employees covered by the provisions from Act 211-2015, as amended, known as the "Voluntary Preretirement Program Act", and those who come or have come to work within a Public Private Partnership and all members of the Retirement System for Employees of the Government of Puerto Rico who have made contributions to said System that have not been reimbursed to them. This term includes the former employees of the Government of Puerto Rico who were separated from public service and who have not been reimbursed for their contributions and/or any accumulated benefit as on the date of separation.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(58) Pensioner. Any person who receives a pension, annuity, or benefit according to the provisions of this Act or of those that create the different Retirement Systems, except the Retirement System of the University of Puerto Rico and the Retirement System of Employees of the Electricity Authority.

(59) Adjustment Plan. Plan proposed by the FOMB for the reduction of the debts of the Government of Puerto Rico and its Public Companies, Municipalities, or Retirement Systems under Title III of PROMESA, pursuant to Section 312 of PROMESA.

(60) Pre-retiree. Any person included in the Voluntary Preretirement Program created by way of Act 211-2015, as amended, known as the "Voluntary Preretirement Program Act".

(61) PROMESA. Public Act 114-187, known as the "Puerto Rico Oversight, Administration, and Economic Stability Act", passed by the Government of the United States of America.

(62) Bankruptcy. The process of debt restructuring to which the FOMB submitted the Government of Puerto Rico and its Public Companies, Municipalities, or Retirement Systems on May 30, 2017, before the United States District Court for the District of Puerto Rico, under Title III of PROMESA.

(63) Servicing of Debt Pending Payment of Contested Bonds. The cost of repayment, including the payment of interest and the portion corresponding to the principal, or the annual transfers of public funds that must be made by the Government of Puerto Rico and its Public Companies, Municipalities, or Retirement Systems in adherence to the bond issues that have not yet matured, expired, or been cancelled, exchanged, refinanced, or restructured since the effective date of Section 405 of PROMESA, or on the effective date of Section 362 of the United States Bankruptcy Code as applicable to Puerto Rico under Section 301(a) of PROMESA, and through the respective maturity date of each bond issue.

(64) Retirement Systems. The Retirement System of the Employees of the Government of Puerto Rico, as established by way of Act No. 447 of May 15, 1951, as amended, hereinafter the SRE; the Retirement System for the Judiciary, created by way of Act No. 12 of October 19, 1954, as amended, hereinafter the SRJ; the Retirement System for Teachers of Puerto

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

Rico, as established by way of Act 160-2013, hereinafter the SRM. For the purposes of this Act, it does not include the Retirement System of the University of Puerto Rico or the Retirement System of Employees of the Electricity Authority."

Article 2.07. A new Article 1-111 is added to Act No. 447 of May 15, 1951, as amended, so that it reads as follows:

"Article 1-111. Public Policy.

The public policy of the System shall be:

(a)    to protect the present and future of our public servants in order to prevent them from falling into poverty after a life of service for their country, and recruit and retain the best possible talent now and always in the public service of Puerto Rico;

(b)    to declare the most absolute and energetic rejection for any Adjustment Plan or Restructuring Agreement that reduces, harms, threatens, subordinates, or worsens the pensions, annuities, benefits, and other current claims of public servant Pensioners and Participants in the Retirement Systems, any more than they were already reduced, harmed, threatened, or worsened prior to the filing of the bankruptcy petition on May 3, 2017;

(c)    to define as unviable and reject absolutely any Adjustment Plan that produces an unsustainable restructuring of the bonds of the Government of Puerto Rico, its Public Corporations, and the Retirement Systems, and that fails to prevent a second insolvency or bankruptcy event for public finances;

(d)    to acknowledge that an unsustainable restructuring of the bonds of the Government of Puerto Rico, its Public Corporations, and the Retirement Systems, or any successive insolvency or bankruptcy event for public finances, represents a direct and unacceptable threat for the essential public services upon which the people of Puerto Rico depend, and for the pensions and other claims of the public servants that provide those services, whether as Pensioners or Participants in the Retirement Systems;

(e)    to measure and promote the sustainability of the debt of Puerto Rico payable with public funds in aggregate form and as determined through analysis of the capacity to continue servicing that aggregate debt

72

pursuant to purchasing power in Puerto Rico, and net of the expense needed to meet payment of pensions and essential public services;

(f)    to condemn the Joint Adjustment Plan for the Government of Puerto Rico, the Administration of Retirement Systems for Employees of the Government and the Judiciary of Puerto Rico, and the Public Buildings Authority of Puerto Rico, submitted by the FOMB on September 27, 2019, amended on February 28, 2020, before the United States District Court for the District of Puerto Rico, because it is irredeemably incompatible with the Public Policy described in this Act;

(g)    to reject any Adjustment Plan that seeks to use Section 1129(b) of the United States Bankruptcy Code to impose additional cuts on public service Pensioners and Participants in the Retirement Systems;

(h)    to reject any Adjustment Plan or Restructuring Agreement whose viability or payment guarantee for debt servicing requires the increase or establishing of regressive taxes, fees, or other mechanisms that make water, electricity, transport, education, and other essential public services more expensive, to collect public revenues from the pockets of working families and pensioners in Puerto Rico;

(i)    to reject any Adjustment Plan or Restructuring Agreement whose viability or payment guarantee for debt servicing requires cuts to essential public services provided by the Government of Puerto Rico, its Public Corporations, and the Municipalities, including, but not limited to, education, health, environmental protection, housing, sanitation and solid waste management, safety and emergency management, sewage and water processing, electricity, road infrastructure, and collective transport;

(j)    to acknowledge that any attempt at cutting the available budget for the essential public services provided by the Government of Puerto Rico, its Public Corporations, and the Municipalities, or to reduce payroll expenses or the number of public servants entitled to participate in the Retirement Systems is also an attempt to cut the resources available for honoring pensions, annuities, benefits, and any other claims of the Pensioners and Participants in the Retirement Systems, and the losses that this would represent in individual or employer contributions must be compensated to ensure the actuarial solvency of the Retirement Systems and the Trust for the Joint Administration of Retirement Systems (FACSiR);

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*I/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(k)     to acknowledge that the FOMB needs the Government of Puerto Rico to take affirmative actions that allow it to meet all of the requirements established in Section 314 of PROMESA for the confirmation of an Adjustment Plan, including, but not limited to, authorizing bond issues that will have to be exchanged as a result of an Adjustment Plan and amending any laws that are incompatible with the agreements reached between the FOMB and creditor groups;

(l)     to clearly and unequivocally declare that no action whatsoever will be taken that allows the confirmation of any Adjustment Plan that is incompatible with the terms of this Public Policy, including, but not limited to, the elimination of regulatory barriers, the creation of regulations, or any authorizations necessary to allow the Adjustment Plan of the FOMB to meet the requirements established in Section 314(b)(3) and Section 314(b)(5) of PROMESA;

(m)     to acknowledge that the Pensioners and Participants in the Retirement Systems have already been harmed in their claims with respect to the Government of Puerto Rico and its Public Corporations, Municipalities, and Retirement Systems during the years prior to the filing of the bankruptcy petition, in amounts which exceed:

(i)     forty-two (42) percent of the aggregate value of the pensions, benefits, and other retirement entitlements for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who began as Participant before April 1, 1990;

(ii)     thirty-one (31) percent of the aggregate value of the pensions, benefits, and other retirement entitlements for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who began as Participant after April 1, 1990 and before January 1, 2000; and

(iii)     fifteen (15) percent of the aggregate value of the benefits and other retirement entitlements for the average Pensioner or beneficiary of the Retirement Savings Account Program under Act No. 447 of May 15, 1951, as amended, who began as Participant after January 1, 2000.

74

(n)   to guarantee that no part of the funds and resources of the System that are committed to activities relating to the System's participation in any court proceedings or in the PROMESA Title III proceedings be directed toward the creation of any Adjustment Plan that is incompatible with the provisions of this Act;

(o)   to promote the creation of a Trust for the Joint Administration of Retirement Systems (FACSiR) that safeguards, collects, administers, and guarantees the resources aimed at payment of all of the pensions and benefits to which our public servants are currently entitled, in order to protect, capitalize, and guarantee in perpetuity the rights and retirement benefits of Pensioners and Participants covered by this Act;

(p)   to guarantee the right to a dignified retirement as a fundamental part of a dignified life and as a corollary to the right to the inviolability of the dignity of the human being enshrined in Section One of the Bill of Rights of the Constitution of Puerto Rico;

(q)   to acknowledge that a dignified retirement consists of enjoying a lifetime pension that protects each person against poverty in their old age, in returning to the Pensioners and Participants in the Retirement Systems the rights and benefits that they have lost through legislation in times of fiscal crises or serious emergencies in the public finances, and in expanding the rights and benefits of Pensioners and Participants in the FACSiR once the Adequate Funding Ratio is achieved;

(r)   to act to ensure the integrity, healthy administration, and Best Accounting Practices of all public funds available to the System in order to prevent losses of public funds that threaten the capacity of the System and the FACSiR to uphold the objectives outlined in this Public Policy;

(s)   to define any recognition or repayment of any part of any Contested Bond without proper adjudication by a competent court as to whether said bonds were issued in accordance with the corresponding laws and regulations, including the Constitution of Puerto Rico, as an attack on the integrity, healthy administration and Best Accounting Practices of the public funds available to the Government of Puerto Rico, its Public Corporations, the Municipalities, and the Retirement Systems;

(t)      to protect the Revenues of the FACSiR against deviations, defaults, and other breaches that undermine the future contractual relationship between the Government of Puerto Rico and the FACSiR; and to work collaboratively with the AAFAF, the Legislative Assembly and its commissions with jurisdiction over the Retirement Systems and the Budget of the Government of Puerto Rico, the other Retirement Systems, and the Board for the planning, necessary legislation, creation, and orderly transition toward a Trust for the Joint Administration of the Retirement Systems (FACSiR) that appropriately safeguards, collects, administers, and guarantees the resources appropriated to payment of all pensions and benefits pursuant to the same rights that our public servants had at the time the bankruptcy petition was filed under Title III of PROMESA on May 3, 2017, in order to protect, capitalize, and guarantee in perpetuity the retirement rights and benefits for the Pensioners and Participants in the Retirement Systems."

Article 2.08. Amendment is made to Article 1.1 of Act 160-2013, as amended, known as the "Retirement System for Teachers of the Commonwealth of Puerto Rico Act", in order that it read as follows:

"Article 1.1. Definitions.

The following words and terms, when used or referenced in this Act, will have the meaning indicated below, unless the context clearly suggests another meaning. The tenses used herein also include the future, if in any place a word is used in masculine only as a general rule, it will be understood as amended to a word or words that demonstrate masculine, feminine, as well as non-binary inclusion in the language, except in those cases where such interpretation is absurd. The singular number includes the plural, and the plural includes the singular.

(a)      AAFAF. The Financial Advisory and Fiscal Agency Authority of Puerto Rico, created by Act 2-2017.

(b)      Restructuring Agreement. This refers to any agreement between (1) the Government of Puerto Rico, its Public Companies, Municipalities, or Retirement Systems; (2) the FOMB; (3) government bondholders; (4) government bond insurers, regardless of whether they have subrogated the bondholder in regard to their credit rights; in relation to, or in support of any transaction that involves a Qualifying Modification, as this concept is defined in Title VI of PROMESA, or an Adjustment, as this concept is used in Title III of PROMESA, of the bonds of the Government.

76

(c)    AEP. The Public Buildings Authority of Puerto Rico, created by Act No. 56 of June 19, 1958, as amended.

(d)    Annual Additional Contribution. The annual contribution certified by the external actuary of the System, prepared at least one hundred and twenty (120) days before the end of the 2018-2019 fiscal year, and then every two (2) years until the 2041-2042 fiscal year, as necessary to prevent the value of projected gross assets of the System from being, during any subsequent fiscal year, less than three hundred ($300) million dollars, subject to the provisions in Article 7.1 of this Act. If for any reason the Certification of said Annual Additional Contribution for the corresponding fiscal year is not available within the established term of one hundred and twenty (120) days, or before, with the consent of the Office of Management and Budget, the Annual Additional Contribution for that fiscal year shall be that of the immediately preceding fiscal year, subject to the terms established in Article 7.1 of this Act.

(e)    Individual Contributions. The amounts that have been discounted or are discounted from the wages of the participant, to be credited to their Fund Contribution Account or to their Defined Contribution Account, as applicable.

(f)    Uniform Contribution for Career Justice. The annual contribution to be made to the equivalent System in the 2016-2017 fiscal year at $30 million, in the 2017-2018 fiscal year at $30 million, and beginning in the 2018-2019 fiscal year and subsequent years through the 2041-2042 fiscal year at $60 million.

(g)    Collectively, all bonds issued by the Government of Puerto Rico or its Public Companies, Municipalities, or Retirement Systems whose legal guarantees, guaranteed amounts, committed payment sources, or legal authorizations have been challenged in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of Puerto Rico or its Public Companies, Municipalities, or Retirement Systems, the FOMB, the official committees of creditors and retirees, or any other Party in Interest, pursuant to that term's definition in the United States Bankruptcy Code, or person with standing to intervene by way of filing of bankruptcy petition, statement of grounds, motion, suit, or adversarial proceeding under the purview of any case filed and pending final ruling under Title III of PROMESA. This includes, but is not limited to:

(1)    Series A of the Senior Pension Funding Bonds issued by the Administration of the Retirement System of the Employees of the

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

77

Government and the Judiciary (ASR) on January 31, 2008 in the aggregate amount of one billion five hundred and eighty-eight million eighty hundred and ten thousand seven hundred and ninety-nine dollars and sixty cents ($1,588,810,799.60) in principal, which includes one billion five hundred and forty-three million seven hundred and seventy thousand dollars ($1,543,770,000) dollars in term bonds and forty-five million forty thousand seven hundred and ninety-nine dollars and sixty cents ($45,040,799.60) in capital appreciation bonds, and which was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital, TCM Capital, and Wachovia Capital Markets, LLC, originally offered for resale solely to residents of Puerto Rico in the Puerto Rican capital market;

(2)    Series B of the Senior Pension Funding Bonds issued by the ASR on June 2, 2008 in the aggregate amount of one billion fifty-eight million six hundred and thirty-four thousand six hundred and thirteen dollars and five cents ($1,058,634,613.05) in principal, which includes eight hundred and sixteen million one hundred thousand dollars ($816,100,000) in term bonds and two hundred and forty-two million five hundred and thirty-four thousand six hundred and thirteen dollars and five cents ($242,534,613.05) in capital appreciation bonds, and which was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, originally offered for resale solely to residents of Puerto Rico in the Puerto Rican capital market;

(3)    Series C of the Senior Pension Funding Bonds issued by the ASR on June 30, 2008 in the aggregate amount of three hundred million two hundred and two thousand nine hundred and thirty dollars ($300,202,930) in principal, which includes two hundred and ninety-eight million dollars ($298,000,000) in term bonds and two million two hundred and two thousand nine hundred and thirty dollars ($2,202,930) in capital appreciation bonds, and which was underwritten by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPRMSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital and Wachovia Capital Markets, LLC, originally offered for resale solely to residents of Puerto Rico in the Puerto Rican capital market;

78

(4)     Series K of the Government Facilities Revenue Refunding Bonds issued by the Public Buildings Authority (AEP) on July 1, 2009, in the amount of fifty million dollars ($50,000,000) in principal of term bonds identified by CUSIP number 745235L82 at the time of issue, and which was underwritten by Merrill Lynch & Co. and Ramírez & Co., Inc.;

(5)     Series P of the Government Facilities Revenue Refunding Bonds issued by the AEP July 1, 2009, in the aggregate amount of three hundred thirty million nine hundred and thirty-five thousand dollars ($330,935,000) in principal, which includes two hundred fifteen million one hundred sixty thousand dollars ($215,160,000) in term bonds identified by the CUSIP numbers 745235K75, 745235K83, 745235K91, 745235125 and 745235133 at the time of issue, and one hundred and fifteen million seven hundred and seventy-five thousand dollars ($115,775,000) in serial bonds identified by the CUSIP numbers 745235L41, 745235L58, 745235L66 and 745235L74 at the time of issue and which was underwritten by Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(6)     Series Q of the Government Facilities Revenue Refunding Bonds issued by the AEP on October 28, 2009, in the aggregate amount of one hundred and fifty-two million five hundred and forty-thousand dollars ($152,540,000) in principal, which includes one hundred forty-four million three hundred forty thousand dollars ($144,340,000) in term bonds identified by the CUSIP numbers 745235M24, 745235M32 and 745235M40 at the time of issue, and eight million two hundred thousand dollars ($8,200,000) in serial bonds identified by the CUSIP number 745235L90 at the time of issue and which was underwritten by Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(7)     Series R of the Government Facilities Revenue Bonds issued by the AEP on August 24, 2011, in the aggregate amount of seven hundred fifty-six million four hundred and forty-nine thousand dollars ($756,449,000) in principal identified by the CUSIP numbers 745235 M57, 745235 M73, 745235 M65 and 745235 M81 at the time of issue and which was underwritten by Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVA PR MSD, Citigroup

FirstBank Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James and Scotia MSD and originally offered for resale solely to residents of Puerto Rico in the Puerto Rican capital market;

(8)    Series S of the Government Facilities Revenue Bonds issued by the AEP on August 24, 2011, in the aggregate amount of three hundred and three million nine hundred and forty-five thousand dollars ($303,945,000) in principal, which includes two hundred and eight million nine hundred and forty-five thousand dollars ($208,945,000) in term bonds identified by the CUSIP numbers 745235P62 and 745235P70 at the time of issue and ninety-five million dollars ($95,000,000) in serial bonds identified by the CUSIP numbers 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 and 745235P88 at the time of issue and which was underwritten by Ramírez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(9)    Series T of the Government Facilities Revenue Bonds - Qualified Zone Academy Bonds issued by the AEP on December 22, 2011, in the aggregate amount of one hundred and twenty-one million five hundred and twenty-eight thousand dollars ($121,528,000) in principal, identified by the CUSIP number 745235Q20 at the time of issue and which was underwritten by Santander Securities and UBS Financial Services Puerto Rico;

(10)   Series U of the Government Facilities Revenue Refunding Bonds issued by the AEP on June 21, 2012, in the aggregate amount of five hundred and eighty-two million three hundred and forty-five thousand dollars ($582,345,000) in principal, which includes five hundred and thirty-eight million six hundred and seventy-five thousand dollars ($538,675,000) in term bonds identified by the CUSIP number 745235R37 at the time of issue, and forty-three million six hundred and seventy thousand dollars ($43,670,000) in serial bonds identified by the CUSIP numbers 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 and 745235S69 at the time of issue and which was underwritten by Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets,

Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico and VAB Financial;

(11)     Series A of the General Obligation Bonds issued by the Government of Puerto Rico on March 17, 2014, in the amount of three billion five hundred million dollars ($3,500,000,000) in principal of term bonds identified by the CUSIP number 74514LE86 at the time of issue and which was underwritten by Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramírez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities and UBS Financial Services Puerto Rico;

(12)     Series A of the Public Improvement Refunding Bonds - General Obligation Bonds issued by the Government of Puerto Rico on April 3, 2012, in the aggregate amount of two billion three hundred eighteen million one hundred ninety thousand dollars ($2,318,190,000) in principal, which includes one billion six hundred seventy-eight million seven hundred forty-five thousand dollars ($1,678,745,000) in term bonds identified by the CUSIP numbers 74514LD20, 74514LB63, 74514LB71 and 74514LB89 at the time of issue, and six hundred and thirty-nine million four hundred and forty-five thousand dollars ($639,445,000) in serial bonds identified by the CUSIP numbers 74514LA31, 74514LC47, 74514LA49, 74514LC54, 74514LA56, 74514LC62, 74514LD46, 74514LC70, 74514LA64, 74514LD53, 74514LC88, 74514LA72, 74514LD61, 74514LA80, 74514LD79, 74514LD38, 74514LC96, 74514LA98, 74514LB22, 74514LD87 74514LB30, 74514LB48, 74514LB97, 74514LB55, 74514LC21 and 74514LC39 at the time of issue, and which was underwritten by Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(13)     Series B of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 29, 2012, in the aggregate amount of four hundred and fifteen million two hundred and seventy thousand dollars ($415,270,000) in principal, which includes forty-nine

million six hundred and ten thousand dollars ($49,610,000) in term bonds identified by the CUSIP number 74514LA23 and three hundred and sixty-five million six hundred and sixty thousand dollars ($365,660,000) in serial bonds identified by the CUSIP numbers 74514LZS9, 74514LZT7, 74514LZU4, 74514LZV2, 74514LZW0, 74514LZX8, 74514LZY6, 74514LZZ3 and which was underwritten by UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James and Scotia MSD;

(14)     Series C of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 17, 2011, in the aggregate amount of four hundred and forty-two million fifteen thousand dollars ($442,015,000) in principal, which includes one hundred and twenty-seven million fifteen thousand dollars ($127,015,000) in term bonds identified by the CUSIP number 74514LXH5, and three hundred and fifteen million dollars ($315,000,000) in serial bonds identified by the CUSIP numbers 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 and 74514LWX1, and which was underwritten by Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities and VAB Financial;

(15)     Series D of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on July 12, 2011, in the amount of fifty-two million one hundred and ninety thousand dollars ($52,190,000) in principal in serial bonds identified by the CUSIP numbers 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9, 74514LZG5 and 74514LZE0, and which was underwritten by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(16)     Series E of the Public Improvement Bonds issued by the Government of Puerto Rico on July 12, 2011, in the amount of two hundred

and forty-five million nine hundred and fifteen thousand dollars ($245,915,000) in principal in serial bonds identified by the CUSIP numbers 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 and 74514LZQ3, and which was underwritten by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(17)  Series A of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009, in the amount of three million four hundred and twenty-five thousand dollars ($3,425,000) in principal of term bonds identified by the CUSIP number 74514LVV6, and which was underwritten by Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities and UBS Financial Services of Puerto Rico;

(18)  Series 2007 A-4 of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009, in the amount of ninety-three million eight hundred thirty-five thousand dollars ($93,835,000) in principal of serial bonds identified by the CUSIP numbers 74514LVT1 and 74514LVU8, and which was underwritten by Morgan Stanley and JP Morgan;

(19)  Series B of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on November 17, 2009, in the amount of three hundred seventy-two million six hundred eighty-five thousand dollars ($372,685,000) in principal of term bonds identified by the CUSIP numbers 74514LVX2, 74514LVY0, 74514LVZ7 and 74514LVW4 and which was underwritten by Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(20)  Series C of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on December 16, 2009, in the amount of two hundred ten million two hundred fifty thousand dollars ($210,250,000) in principal of term bonds identified by the CUSIP number 74514LWA1, and which was underwritten by Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch & Co., Ramírez & Co., Inc., UBS Financial Services Incorporated of Puerto Rico,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

83

FirstBank Puerto Rico Securities, Popular Securities and Santander Securities; and,

(21)     Series A of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on February 17, 2011, in the amount of three hundred fifty-six million five hundred twenty thousand dollars ($356,520,000) in principal of serial bonds identified by the CUSIP numbers 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 and 74514LWS2 and which was underwritten by Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities and Santander Securities.

(h)     Uncontested Bonds. Collectively, all bonds issued by the Government of Puerto Rico or its Public Companies, Municipalities, or Retirement Systems whose legal guarantees, guaranteed amounts, committed payment sources, or legal authorizations have not been challenged in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of Puerto Rico or its Public Companies, Municipalities, or Retirement Systems, the FOMB, the official committees of creditors and retirees, or any other Party in Interest, pursuant to that term's definition in the United States Bankruptcy Code, or person with standing to intervene by way of filing of bankruptcy petition, statement of grounds, motion, suit, or adversarial proceeding under the purview of any case filed and pending final ruling under Title III of PROMESA; and (ii) that are still pending payment.

(i)     Bankruptcy Code. This refers to Title II of the United States Code, which provides on the mechanisms for composition or adjustment of debts for individuals, corporations, and government entities.

(j)     Adequate Funding Ratio. The proportion, equal to 1.2, of total equity of the Trust for the Joint Administration of Retirement Systems relative to its total obligations, as determined annually by way of independent actuarial study based on the actuarial method and aggregate valuation of cost and funding used by the Office of the Comptroller of the State of New York for the administration of government retirement systems in that state, in order to achieve an adequate level of funding for pensions.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(k)     Defined Contributions Account. The account created beginning August 1, 2014 on behalf of each participant pursuant to the terms established in Article 5.4 of this Act.

(l)     Fund Contributions Account. The account recording the balance of the individual contributions credited on behalf of the participant in the Fund as on July 31, 2014.

(m)     CUSIP. This refers to the Committee on Uniform Securities Identification Procedures, whose numbering system allows unique identification of all stocks and bonds registered in capital markets of the United States and Canada and is used to create a specific distinction between the securities that are traded in public markets. The Committee on Uniform Securities Identification Procedures (CUSIP) oversees the entire CUSIP numbering system.

(n)     Executive Director. The person or entity that the Retirement Board, created by way of the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contributions Plan for Public Servants", designates to perform the functions of Administrator of the System.

(o)     Employee of the System. All employees of the System who agreed to transfer to the System their contributions and years of service credited from the Retirement System of Employees of the Government of the Commonwealth of Puerto Rico or from any other retirement system of the Commonwealth of Puerto Rico. In addition, this will mean all employees who began working in the System on or after March 29, 2004.

(p)     ERISA. The 1974 Employee Retirement Income Security Act, incorporated under Title 29 of the United States Code.

(q)     Trust for the Joint Administration of Retirement Systems, hereinafter referred to by its Spanish abbreviation FACSiR, is the new Retirement System designed and proposed in this Act, and which would administer a new trust which consolidates the resources and obligations of the Retirement System of Government Employees of Puerto Rico, as established by way of Act No. 447 of May 15, 1951, as amended, hereinafter referred to as the SRE; the Retirement System for the Judiciary, created by way of Act No. 12 of October 19, 1954, as amended, hereinafter referred to as the SRJ; and the Retirement System for Teachers of Puerto Rico, as established by way of Act 160-2013, hereinafter referred to as the

SRM, and which centralizes the management of administration expenses of said systems, following confirmation of a viable, just, and equitable Adjustment Plan for the people and for the Pensioners and Participants in the Retirement Systems.

(r)    Fund. The System Contributions Fund, as designated in Article 4.1.

(s)    Government. The Government of the Commonwealth of Puerto Rico and any political subdivision thereof, all the municipalities of Puerto Rico, and any other government organizations which must adhere to the provisions of this Act.

(t)    Revenues of the Trust of Revenues of the FACSiR will include, but not be limited to:

    (1)    the transfer of one hundred (100) percent of the balance deposited in the Account for Payment of Accumulated Pensions, created under Act 106-2017, as amended;

    (2)    one hundred (100) percent of the individual contributions of the Participants;

    (3)    one hundred (100) percent of the employer contributions of the Government of Puerto Rico;

    (4)    one hundred (100) percent of the annual savings produced by the discharge, cancellation, or reduction in the Servicing of Debt Pending Payment of the Contested Bonds;

    (5)    restitution of one hundred (100) percent of the individual contributions withheld from Participants in the Retirement Savings Accounts Program, created under Chapter 3 of Act No. 447 of May 15, 1951, and the damages corresponding to the investment returns lost following the SRE Administrator's violation of Article 3-103 and Article 3-105 of the Retirement Savings Accounts Program and Act No. 447 of May 15, 1951, as amended;

    (6)    one hundred (100) percent of any court judgments and the rights inherent to the Government of Puerto Rico to seek and receive restitution for damages and losses suffered by public treasury as a result of the incompetence, negligence, recklessness, or malice of the

underwriting banks and their representatives or professional consultants in the issuance, purchase, and sale of Contested Bonds;

(7)    one hundred (100) percent of the credits for the investments and assets of the FACSiR, including the assets of the Retirement System that have not been liquidated or transferred to the Account for Payment of Accumulated Pensions following the passing of Act 106-2017, as amended, ownership of which will also be transferred to the FACSiR, without liquidated the assets;

(8)    one hundred (100) percent of the net savings produced in the administration of the FACSiR and its assets;

(9)    one hundred (100) percent of any other own revenues that may be generated by the FACSiR without risking the Adequate Funding Ratio, in adherence to the fiduciary duties stipulated in Section 3.08 of this Act and consistent with the powers granted to the Trust in this Act; and

(10)    the larger of either: (i) fifty (50) percent of the annual savings produced by the discharge or reduction in debt servicing of Uncontested Bonds, or (ii) total annual savings necessary in the debt servicing of Uncontested Bonds to reach the Adequate Funding Ratio within a period of no more than fifteen (15) years, through a Debt Adjustment Plan under Title III of PROMESA.

(u)    Compound Interest. Nine and one-half percent (9.5%) annual for the purpose of payment of services not counted made on or before July 31, 2014, and two percent (2%) annual for the purposes of reimbursements of individual contributions.

(v)    FOMB. Financial Administration and Oversight Board, created under Titles I and II of PROMESA.

(w)    Board of Trustees. The Retirement Board, created by way of the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contributions Plan for Public Servants".

(x)    "Sarbanes-Oxley Act" refers to the 2002 "Sarbanes-Oxley Act", Public Act 107-204, passed by the Government of the United States of July 30, 2002.

(y)    Teacher(s). A professional who teaches in classrooms, the School Directors and Subdirectors, and all other denominations and teacher categories that exist and may exist within the nomenclature of the Department of Education of the Commonwealth of Puerto Rico, the Secretary of the Department of Education and subaltern officials, and other employees or officials who are included in the benefits of this Act, according to the provisions herein, provided that they possess a valid certificate to work as a teacher.

(z)    Best Accounting Practices. Refers to the establishing of a system of accounting control that are consistent with the generally accepted accounting principles (GAAP), ERISA, and the "Sarbanes-Oxley Act". It also includes, but is not limited to: (1) the creation of a team of internal auditors; (2) quarterly and permanent publication of a detailed breakdown of revenues, expenses, investments and their yield, the individuals or legal entities that administer the assets or advise on the investment of the assets, and the honoraria and other fees accrued by the individuals or legal entities that administer the assets or advise in the investment of the assets; (3) the annual and permanent publication of audited financial statements and actuarial valuation studies; (4) the quarterly and permanent publication of a statistical summary of the Participants and Pensioners, broken down by age group, salary or benefit scale, and the corresponding retirement programs; (5) the regular and permanent conducting and publication of compliance and performance audits, pursuant to the standards of the United States Government Accountability Office (US GAO), also known as the Yellow Book; (6) Spanish and English translation of all periodic reports that are required under this Act; (7) regular and permanent delivery of true and faithful copies of any periodic reports required under this Act, regulations, administrative bulletin, circular letter, generally accepted accounting principles, or internal policies for the retirement systems in Puerto Rico, or in accordance with the rules of the Government of the United States of America, to the Legislative Assembly and to the legislative commissions that have jurisdiction over the Retirement Systems and the Budget of the Government of Puerto Rico; and (8) the adoption and publication of investment policies.

(aa)   Active Service Participant. A participant who makes a monthly individual contribution to the System. Active service will also include the period

during which the participant is on unpaid leave that was officially authorized by the employer.

(bb)   Inactive Participant. A participant who at some time made an individual contribution to the System and was separated from the service without subsequently requesting return of their contributions.

(cc)   Participants. The teachers and employees of the System, as established in Article 3.1 of this Act.

(dd)   Pension. The amount which the participant is entitled to receive at the time of their retirement from service, according to the provisions from this Act.

(ee)   Pensioner. Any participant who receives a pension from the System, according to the provisions of this Act.

(ff)   Adjustment Plan. Plan proposed by the FSAJ for the reduction of the debts of the Government of Puerto Rico and its Public Companies, Municipalities, or Retirement Systems under Title III of PROMESA, pursuant to Section 312 of PROMESA.

(gg)   Defined Contributions Program. The program established in Chapter 5 of this Act.

(hh)   Defined Benefit Program. Program established in Chapter 4 of this Act.

(ii)   PROMESA. Public Act 114-187, known as the "Puerto Rico Oversight, Administration, and Economic Stability Act", passed by the Government of the United States of America.

(jj)   Bankruptcy. The process of debt restructuring to which the FOMB submitted the Government of Puerto Rico and its Public Companies, Municipalities, or Retirement Systems on May 30, 2017, before the United States District Court for the District of Puerto Rico, under Title III of PROMESA.

(kk)   Salary. Total compensation received by a participant. Any bonuses given additional to the salary, as well as any payment for overtime hours, will be excluded when calculating compensation.

(ll)   Average Salary. The average of the thirty-six (36) highest monthly salaries that the participant has obtained. This does not apply to the calculation of pensions for disability.

(mm)   Servicing of Debt Pending Payment of Contested Bonds. The cost of repayment, including the payment of interest and the portion corresponding to the principal, or the annual transfers of public funds that must be made by the Government of Puerto Rico and its Public Companies, Municipalities, or Retirement Systems in adherence to the bond issues that have not yet matured, expired, or been cancelled, exchanged, refinanced, or restructured since the effective date of Section 405 of PROMESA, or on the effective date of Section 362 of the United States Bankruptcy Code as applicable to Puerto Rico under Section 301(a) of PROMESA, and through the respective maturity date of each bond issue.

(nn)   System. The Retirement System for Teachers of the Commonwealth of Puerto Rico.

(oo)   Retirement Systems. The Retirement System of the Employees of the Government of Puerto Rico, as established by way of Act No. 447 of May 15, 1951, as amended, hereinafter the SRE; the Retirement System for the Judiciary, created by way of Act No. 12 of October 19, 1954, as amended, hereinafter the SRJ; the Retirement System for Teachers of Puerto Rico, as established by way of Act 160-2013, hereinafter the SRM. For the purposes of this Act, it does not include the Retirement System of the University of Puerto Rico or the Retirement System of Employees of the Electricity Authority."

Article 2.09. A new Article 2.6 is added to Act 160-2013, as amended, so that it reads as follows:

"Article 2.6. Public Policy.

The public policy of the System shall be:

(a)   to protect the present and future of our public servants in order to prevent them from falling into poverty after a life of service for their country, and recruit and retain the best possible talent now and always in the public service of Puerto Rico;

(b)   to declare the most absolute and energetic rejection for any Adjustment Plan or Restructuring Agreement that reduces, harms, threatens, subordinates, or worsens the pensions, annuities, benefits, and other current claims of public servant Pensioners and Participants in the Retirement Systems, any more than they were already reduced, harmed,

threatened, or worsened prior to the filing of the bankruptcy petition on May 3, 2017;

(c) to define as unviable and reject absolutely any Adjustment Plan that produces an unsustainable restructuring of the bonds of the Government of Puerto Rico, its Public Corporations, and the Retirement Systems, and that fails to prevent a second insolvency or bankruptcy event for public finances;

(d) to acknowledge that an unsustainable restructuring of the bonds of the Government of Puerto Rico, its Public Corporations, and the Retirement Systems, or any successive insolvency or bankruptcy event for public finances, represents a direct and unacceptable threat for the essential public services upon which the people of Puerto Rico depend, and for the pensions and other claims of the public servants that provide those services, whether as Pensioners or Participants in the Retirement Systems;

(e) to measure and promote the sustainability of the debt of Puerto Rico payable with public funds in aggregate form and as determined through analysis of the capacity to continue servicing that aggregate debt pursuant to purchasing power in Puerto Rico, and net of the expense needed to meet payment of pensions and essential public services;

(f) to condemn the Joint Adjustment Plan for the Government of Puerto Rico, the Administration of Retirement Systems for Employees of the Government and the Judiciary of Puerto Rico, and the Public Buildings Authority of Puerto Rico, submitted by the FOMB on September 27, 2019, amended on February 28, 2020, before the United States District Court for the District of Puerto Rico, because it is irredeemably incompatible with the Public Policy described in this Act;

(g) to reject any Adjustment Plan that seeks to use Section 1129(b) of the United States Bankruptcy Code to impose additional cuts on public service Pensioners and Participants in the Retirement Systems;

(h) to reject any Adjustment Plan or Restructuring Agreement whose viability or payment guarantee for debt servicing requires the increase or establishing of regressive taxes, fees, or other mechanisms that make water, electricity, transport, education, and other essential public services more expensive, to collect public revenues from the pockets of working families and pensioners in Puerto Rico;

91

(i) to reject any Adjustment Plan or Restructuring Agreement whose viability or payment guarantee for debt servicing requires cuts to essential public services provided by the Government of Puerto Rico, its Public Corporations, and the Municipalities, including, but not limited to, education, health, environmental protection, housing, sanitation and solid waste management, safety and emergency management, sewage and water processing, electricity, road infrastructure, and collective transport;

(j) to acknowledge that any attempt at cutting the available budget for the essential public services provided by the Government of Puerto Rico, its Public Corporations, and the Municipalities, or to reduce payroll expenses or the number of public servants entitled to participate in the Retirement Systems is also an attempt to cut the resources available for honoring pensions, annuities, benefits, and any other claims of the Pensioners and Participants in the Retirement Systems, and the losses that this would represent in individual or employer contributions must be compensated to ensure the actuarial solvency of the Retirement Systems and the Trust for the Joint Administration of Retirement Systems (FACSiR);

(k) to acknowledge that the FOMB needs the Government of Puerto Rico to take affirmative actions that allow it to meet all of the requirements established in Section 314 of PROMESA for the confirmation of an Adjustment Plan, including, but not limited to, authorizing bond issues that will have to be exchanged as a result of an Adjustment Plan and amending any laws that are incompatible with the agreements reached between the FOMB and creditor groups;

(l) to clearly and unequivocally declare that no action whatsoever will be taken that allows the confirmation of any Adjustment Plan that is incompatible with the terms of this Public Policy, including, but not limited to, the elimination of regulatory barriers, the creation of regulations, or any authorizations necessary to allow the Adjustment Plan of the FOMB to meet the requirements established in Section 314(b)(3) and Section 314(b)(5) of PROMESA;

(m) to acknowledge that the Pensioners and Participants in the Retirement Systems have already been harmed in their claims with respect to the Government of Puerto Rico and its Public Corporations, Municipalities, and Retirement Systems during the years prior to the filing of the bankruptcy petition, in amounts which exceed:

      i.  forty-two (42) percent of the aggregate value of the pensions, benefits, and other retirement entitlements for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who began as Participant before April 1, 1990;

     ii.  thirty-one (31) percent of the aggregate value of the pensions, benefits, and other retirement entitlements for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who began as Participant after April 1, 1990 and before January 1, 2000; and

   iii.  fifteen (15) percent of the aggregate value of the benefits and other retirement entitlements for the average Pensioner or beneficiary of the Retirement Savings Account Program under Act No. 447 of May 15, 1951, as amended, who began as Participant after January 1, 2000.

(n) to guarantee that no part of the funds and resources of the System that are committed to activities relating to the System's participation in any court proceedings or in the PROMESA Title III proceedings be directed toward the creation of any Adjustment Plan that is incompatible with the provisions of this Act;

(o) to promote the creation of a Trust for the Joint Administration of Retirement Systems (FACSiR) that safeguards, collects, administers, and guarantees the resources aimed at payment of all of the pensions and benefits to which our public servants are currently entitled, in order to protect, capitalize, and guarantee in perpetuity the rights and retirement benefits of Pensioners and Participants covered by this Act;

(p) to guarantee the right to a dignified retirement as a fundamental part of a dignified life and as a corollary to the right to the inviolability of the dignity of the human being enshrined in Section One of the Bill of Rights of the Constitution of Puerto Rico;

(q) to acknowledge that a dignified retirement consists of enjoying a lifetime pension that protects each person against poverty in their old age, in returning to the Pensioners and Participants in the Retirement Systems the rights and benefits that they have lost through legislation in times of

fiscal crises or serious emergencies in the public finances, and in expanding the rights and benefits of Pensioners and Participants in the FACSiR once the Adequate Funding Ratio is achieved;

(r) to act to ensure the integrity, healthy administration, and Best Accounting Practices of all public funds available to the System in order to prevent losses of public funds that threaten the capacity of the System and the FACSiR to uphold the objectives outlined in this Public Policy;

(s) to define any recognition or repayment of any part of any Contested Bond without proper adjudication by a competent court as to whether said bonds were issued in accordance with the corresponding laws and regulations, including the Constitution of Puerto Rico, as an attack on the integrity, healthy administration and Best Accounting Practices of the public funds available to the Government of Puerto Rico, its Public Corporations, the Municipalities, and the Retirement Systems;

(t) to protect the Revenues of the FACSiR against deviations, defaults, and other breaches that undermine the future contractual relationship between the Government of Puerto Rico and the FACSiR; and

(u) to work collaboratively with the AAFAF, the Legislative Assembly and its commissions with jurisdiction over the Retirement Systems and the Budget of the Government of Puerto Rico, the other Retirement Systems, and the Retirement Board, created through Act 106-2017 as amended, known as the "Law to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants", for the planning, necessary legislation, creation, and orderly transition toward a Trust for the Joint Administration of the Retirement Systems (FACSiR) that appropriately safeguards, collects, administers, and guarantees the resources appropriated to payment of all pensions and benefits pursuant to the same rights that our public servants had at the time the bankruptcy petition was filed under Title III of PROMESA on May 3, 2017, in order to protect, capitalize, and guarantee in perpetuity the retirement rights and benefits for the Pensioners and Participants in the Retirement Systems."

Article 2.10. A new Article 1-A is added to Act No. 12 of October 19, 1954, as amended, so that it reads as follows:

"Article 1-A. Public Policy.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

The public policy of the System shall be:

(a) to protect the present and future of our public servants in order to prevent them from falling into poverty after a life of service for their country, and recruit and retain the best possible talent now and always in the public service of Puerto Rico;

(b) to declare the most absolute and energetic rejection for any Adjustment Plan or Restructuring Agreement that reduces, harms, threatens, subordinates, or worsens the pensions, annuities, benefits, and other current claims of public servant Pensioners and Participants in the Retirement Systems, any more than they were already reduced, harmed, threatened, or worsened prior to the filing of the bankruptcy petition on May 3, 2017;

(c) to define as unviable and reject absolutely any Adjustment Plan that produces an unsustainable restructuring of the bonds of the Government of Puerto Rico, its Public Corporations, and the Retirement Systems, and that fails to prevent a second insolvency or bankruptcy event for public finances;

(d) to acknowledge that an unsustainable restructuring of the bonds of the Government of Puerto Rico, its Public Corporations, and the Retirement Systems, or any successive insolvency or bankruptcy event for public finances, represents a direct and unacceptable threat for the essential public services upon which the people of Puerto Rico depend, and for the pensions and other claims of the public servants that provide those services, whether as Pensioners or Participants in the Retirement Systems;

(e) to measure and promote the sustainability of the debt of Puerto Rico payable with public funds in aggregate form and as determined through analysis of the capacity to continue servicing that aggregate debt pursuant to purchasing power in Puerto Rico, and net of the expense needed to meet payment of pensions and essential public services;

(f) to condemn the Joint Adjustment Plan for the Government of Puerto Rico, the Administration of Retirement Systems for Employees of the Government and the Judiciary of Puerto Rico, and the Public Buildings Authority of Puerto Rico, submitted by the FOMB on September 27, 2019, amended on February 28, 2020, before the United States District Court for the District of Puerto Rico, because it is irredeemably incompatible with the Public Policy described in this Act;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*I/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

95

(g) to reject any Adjustment Plan that seeks to use Section 1129(b) of the United States Bankruptcy Code to impose additional cuts on public service Pensioners and Participants in the Retirement Systems;

(h) to reject any Adjustment Plan or Restructuring Agreement whose viability or payment guarantee for debt servicing requires the increase or establishing of regressive taxes, fees, or other mechanisms that make water, electricity, transport, education, and other essential public services more expensive, to collect public revenues from the pockets of working families and pensioners in Puerto Rico;

(i) to reject any Adjustment Plan or Restructuring Agreement whose viability or payment guarantee for debt servicing requires cuts to essential public services provided by the Government of Puerto Rico, its Public Corporations, and the Municipalities, including, but not limited to, education, health, environmental protection, housing, sanitation and solid waste management, safety and emergency management, sewage and water processing, electricity, road infrastructure, and collective transport;

(j) to acknowledge that any attempt at cutting the available budget for the essential public services provided by the Government of Puerto Rico, its Public Corporations, and the Municipalities, or to reduce payroll expenses or the number of public servants entitled to participate in the Retirement Systems is also an attempt to cut the resources available for honoring pensions, annuities, benefits, and any other claims of the Pensioners and Participants in the Retirement Systems, and the losses that this would represent in individual or employer contributions must be compensated to ensure the actuarial solvency of the Retirement Systems and the Trust for the Joint Administration of Retirement Systems (FACSiR);

(k) to acknowledge that the FOMB needs the Government of Puerto Rico to take affirmative actions that allow it to meet all of the requirements established in Section 314 of PROMESA for the confirmation of an Adjustment Plan, including, but not limited to, authorizing bond issues that will have to be exchanged as a result of an Adjustment Plan and amending any laws that are incompatible with the agreements reached between the FOMB and creditor groups;

(l) to clearly and unequivocally declare that no action whatsoever will be taken that allows the confirmation of any Adjustment Plan that is incompatible with the terms of this Public Policy, including, but not limited to, the elimination of regulatory barriers, the creation of regulations, or any authorizations necessary to allow the Adjustment Plan of the FOMB to meet the requirements established in Section 314(b)(3) and Section 314(b)(5) of PROMESA;

(m) to acknowledge that the Pensioners and Participants in the Retirement Systems have already been harmed in their claims with respect to the Government of Puerto Rico and its Public Corporations, Municipalities, and Retirement Systems during the years prior to the filing of the bankruptcy petition, in amounts which exceed:

    i. forty-two (42) percent of the aggregate value of the pensions, benefits, and other retirement entitlements for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who began as Participant before April 1, 1990;

    ii. thirty-one (31) percent of the aggregate value of the pensions, benefits, and other retirement entitlements for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who began as Participant after April 1, 1990, and before January 1, 2000; and

    iii. fifteen (15) percent of the aggregate value of the benefits and other retirement entitlements for the average Pensioner or beneficiary of the Retirement Savings Account Program under Act No. 447 of May 15, 1951, as amended, who began as Participant after January 1, 2000.

(n) to guarantee that no part of the funds and resources of the System that are committed to activities relating to the System's participation in any court proceedings or in the PROMESA Title III proceedings be directed toward the creation of any Adjustment Plan that is incompatible with the provisions of this Act;

(o) to promote the creation of a Trust for the Joint Administration of Retirement Systems (FACSiR) that safeguards, collects, administers, and guarantees the resources aimed at payment of all of the pensions and benefits to which our public servants are

97

currently entitled, in order to protect, capitalize, and guarantee in perpetuity the rights and retirement benefits of Pensioners and Participants covered by this Act;

(p) to guarantee the right to a dignified retirement as a fundamental part of a dignified life and as a corollary to the right to the inviolability of the dignity of the human being enshrined in Section One of the Bill of Rights of the Constitution of Puerto Rico;

(q) to acknowledge that a dignified retirement consists of enjoying a lifetime pension that protects each person against poverty in their old age, in returning to the Pensioners and Participants in the Retirement Systems the rights and benefits that they have lost through legislation in times of fiscal crises or serious emergencies in the public finances, and in expanding the rights and benefits of Pensioners and Participants in the FACSiR once the Adequate Funding Ratio is achieved;

(r) to act to ensure the integrity, healthy administration, and Best Accounting Practices of all public funds available to the System in order to prevent losses of public funds that threaten the capacity of the System and the FACSiR to uphold the objectives outlined in this Public Policy;

(s) to define any recognition or repayment of any part of any Contested Bond without proper adjudication by a competent court as to whether said bonds were issued in accordance with the corresponding laws and regulations, including the Constitution of Puerto Rico, as an attack on the integrity, healthy administration and Best Accounting Practices of the public funds available to the Government of Puerto Rico, its Public Corporations, the Municipalities, and the Retirement Systems;

(t) to protect the Revenues of the FACSiR against deviations, defaults, and other breaches that undermine the future contractual relationship between the Government of Puerto Rico and the FACSiR; and

(u) to work collaboratively with the AAFAF, the Legislative Assembly and its commissions with jurisdiction over the Retirement Systems and the Budget of the Government of Puerto Rico, the other Retirement Systems, and the Board for the planning, necessary legislation, creation, and orderly transition toward a Trust for the Joint Administration of the Retirement Systems

98

(FACSiR) that appropriately safeguards, collects, administers, and guarantees the resources appropriated to payment of all pensions and benefits pursuant to the same rights that our public servants had at the time the bankruptcy petition was filed under Title III of PROMESA on May 3, 2017, in order to protect, capitalize, and guarantee in perpetuity the retirement rights and benefits for the Pensioners and Participants in the Retirement Systems."

Article 2.11. Article 2 of Act No. 12 of October 19, 1954 is amended, so that it reads as follows:

"Article 2. Definitions.

Terms or phrases as used in this Act shall have the following meanings, except where the context clearly indicates another meaning:

(1)     AAFAF - the Puerto Rico Financial Advisory Authority and Fiscal Agency, created by Act 2-2017.

(2)     Restructuring Agreement - means any agreement between: (1) the Government of Puerto Rico, its Public Companies, Municipalities or Retirement Systems; (2) the FOMB; (3) bondholders of the Government of Puerto Rico, its Public Companies, Municipalities or Retirement Systems and; (4) bond insurers, whether or not subrogated to the credit right of the bondholders, of the Government of Puerto Rico, its Public Companies, Municipalities or Retirement Systems; in connection with, or in support of, any transaction involving a Qualifying Modification, as such term is defined in Title VI of PROMESA, or an Adjustment, as such term is used in Title III of PROMESA, of the bonds of the Government of Puerto Rico, its Public Companies, Municipalities or Retirement Systems.

(3)     Administrator - Shall mean the person or entity that the Retirement Board, created by the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants," designates to perform the duties of Administrator of the System.

(4)     AEP - the Puerto Rico Public Buildings Authority, created by Act No. 56 of June 19, 1958, as amended.

99

(5)    Fiscal year - Shall mean the period beginning on July 1 in any year and ending on June 30 of the following year.

(6)    Beneficiary - Shall mean any person or persons designated by a participant or pensioner in the last written order duly acknowledged and filed with the Administrator. If no such designation is made, or if the person so designated does not outlive the participant or pensioner, their legal heirs will be considered beneficiaries.

(7)    Contested Bonds - collectively, all bond issues made by the Government of Puerto Rico, its Public Companies, Municipalities or Retirement Systems whose legal guarantees, guaranteed amounts, pledged sources of payment or legal authorizations have been challenged before the United States District Court for the District of Puerto Rico or before the General Court of Justice by the Government of Puerto Rico, its Public Companies, Municipalities, Retirement Systems, FOMB, the official committees of creditors and retirees, any other Interested Parties, as such term is defined in the U.S. Bankruptcy Code, or persons with standing to intervene by filing a bankruptcy petition, memorandum of law, motion, lawsuit, or adversary proceeding under any case filed and pending final resolution under Title III of PROMESA. This includes, as an example:

(a)    Series A of the Senior Pension Funding Bonds issued by the Government Employees Retirement Systems Administration and the Judiciary (ASR) on January 31, 2008 in the aggregate amount of one billion, five hundred eighty-eight million, eight hundred, ten thousand, seven hundred ninety-nine, and sixty cents ($1,588,810,799.60) dollars as a principal amount, which includes one billion, five hundred forty-three million, seven hundred, and seventy thousand ($1,543,770,000) dollars in term bonds, and forty-five million, forty thousand, seven hundred ninety-nine dollars, and sixty cents ($45,040,799.60) dollars in capital appreciation bonds, and which was subscribed by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramirez & Co., Inc., Scotia Capital, TCM Capital and Wachovia Capital Markets, LLC originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(b) Series B of the Senior Pension Funding Bonds issued by the ASR on June 2, 2008 in the aggregate principal amount of one billion, fifty-eight million, six hundred thirty-four thousand, six hundred thirteen, and five cents ($1,058,634,613.05) dollars, which includes eight hundred sixteen million, one hundred thousand ($816,100,000) dollars in term bonds, and two hundred forty-two million, five hundred thirty-four thousand, six hundred thirteen, and five cents ($242,534,613.05) dollars in capital appreciation bonds, and which was subscribed by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

(c) Series C of the Senior Pension Funding Bonds issued by the ASR on June 30, 2008 in the aggregate principal amount of three hundred million, two hundred two thousand, nine hundred thirty ($300,202,930) dollars, which includes two hundred ninety-eight million ($298,000,000) dollars in term bonds and two million, two hundred two thousand, nine hundred thirty ($2,202,930) dollars in capital appreciation bonds, and which was subscribed by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramirez & Co., Inc., Scotia Capital and Wachovia Capital Markets, LLC and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

(d) Series K of the Government Facilities Revenue Refunding Bonds issued by the Public Buildings Authority (PBA) on July 1, 2009 in the amount of fifty million ($50,000,000) in the principal amount of term bonds identified by CUSIP number 745235L82 at the time of issuance, and which was subscribed by Merrill Lynch & Ca. and Ramirez & Co., Inc;

(e) Series P of the Government Facilities Revenue Refunding Bonds issued by the AEP on July 1, 2009 in the aggregate principal amount of three hundred thirty million, nine hundred thirty five thousand ($330,935,000) dollars, which includes two hundred fifteen million, one hundred sixty thousand ($215,160,000) dollars in term bonds identified by CUSIP numbers 745235K75, 745235K83, 745235K91, 745235L25 and 745235L33 at the time of issuance, and one hundred fifteen million, seven hundred seventy-five thousand (115,775,000) dollars in serial bonds identified by CUSIP numbers

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

101

745235L41, 745235L58, 745235L66 and 745235L74 at the time of issuance, and which was subscribed by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(f)    Series Q of the Government Facilities Revenue Refunding Bonds issued by the AEP on October 28, 2009 in the aggregate principal amount of one hundred fifty million [sic], five hundred forty thousand ($152,540,000) dollars, which includes one hundred forty four million, three hundred forty thousand ($144,340,000) dollars in term bonds identified by CUSIP numbers 745235M24, 745235M32 and 745235M40 at the time of issuance, and eight million, two hundred thousand (8,200,000) dollars in serial bonds identified by CUSIP number 745235L90 at the time of issuance, and which was subscribed by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(g)    Series R of the Government Facilities Revenue Bonds issued by the AEP on August 24, 2011 in the aggregate principal amount of seven hundred fifty-six million, four hundred forty-nine thousand ($756,449,000) dollars identified by CUSIP numbers 745235 M57, 745235 M73, 745235 M65 and 745235 M81 at the time of issuance, and which was subscribed by Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramirez & Co., Inc., Raymond James and Scotia MSD, and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

(h)    Series S of the Government Facilities Revenue Bonds issued by the AEP on August 24, 2011 in the aggregate principal amount of three hundred three million, nine hundred forty-five thousand ($303,945,000) dollars, which includes two hundred eight million, nine hundred forty-five thousand ($208,945,000) dollars in term bonds identified by CUSIP numbers 745235P62 and 745235P70 at the time of issuance, and ninety-five million ($95,000,000) dollars in serial bonds identified by CUSIP numbers 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 and 745235P88 at the time of issuance,

and which was subscribed by Ramirez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, JP Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(i)     Series T of the Government Facilities Revenue Bonds - Qualified Zone Academy Bonds issued by the AEP on December 22, 2011 in the aggregate principal amount of one hundred twenty-one million, five hundred twenty-eight thousand ($121,528,000) dollars identified by CUSIP number 745235Q20 at the time of issuance, and which was subscribed by Santander Securities and UBS Financial Services Puerto Rico;

(j)     Series U of the Government Facilities Revenue Refunding Bonds issued by the AEP on June 21, 2012 in the aggregate principal amount of five hundred eighty-two million, three hundred forty-five thousand ($582,345,000) dollars, which includes five hundred thirty-eight million, six hundred seventy-five thousand (538,675,000) dollars in term bonds identified by CUSIP number 745235R37 at the time of issuance, and forty-three million, six hundred seventy thousand (43,670,000) dollars in serial bonds identified by CUSIP numbers 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 and 745235S69 at the time of issuance, and which was subscribed by Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, JP Morgan, Morgan Stanley, Ramirez & Co., Inc., Raymond James | Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico and VAB Financial;

(k)     Series A of the General Obligation Bonds issued by the Government of Puerto Rico on March 17, 2014 in the amount of three billion, five hundred million ($3,500,000,000) dollars in the principal amount of term bonds identified by CUSIP number 74514LE86 at the time of issuance, and which was subscribed by Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramirez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities and UBS Financial Services Puerto Rico;

103

(l)     Series A of the Public Improvement Refunding Bonds - General Obligation
        Bonds issued by the Government of Puerto Rico on April 3, 2012 in the
        aggregate amount of two billion, three hundred eighteen million, one hundred
        ninety thousand ($2,318,190,000) dollars in the principal amount, which
        includes one billion six, hundred seventy-eight million, seven hundred forty-
        five thousand ($1,678,745,000) dollars in term bonds identified by CUSIP
        numbers 74514LD20, 74514LB63, 74514LB71 and 74514LB89 at the time of
        issuance, and six hundred thirty-nine million, four hundred forty-five thousand
        (639,445,000) dollars in serial bonds identified by CUSIP numbers
        74514LA31, 74514LC47, 74514LA49, 74514LC54, 74514LA56, 74514LC62,
        74514LD46,    74514LC70,    74514LA64,    74514LD53,    74514LC88,
        74514LA72,    74514LD61,    74514LA80,    74514LD79,    74514LD38,
        74514LC96, 74514LA98, 74514LB22, 74514LD87, 74514LB30, 74514LB48,
        74514LB97, 74514LB55, 74514LC21 and 74514LC39 at the time of issuance,
        and which was subscribed by Barclays Capital, J.P. Morgan, Goldman Sachs
        & Co, Jefferies, BMO Capital Markets, Bank of America Merrill Lynch,
        Citigroup, Morgan Stanley, Ramirez & Co, Inc, Raymond James, RBC Capital
        Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities,
        BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular
        Securities, Santander Securities, Scotia MSD and VAB Financial;

(m)     Series B of the Public Improvement Refunding Bonds issued by the
        Government of Puerto Rico on March 29, 2012 in the aggregate principal
        amount of four hundred fifteen million, two hundred seventy thousand
        ($415,270,000) dollars, which includes forty-nine million, six hundred ten
        thousand ($49,610,000) dollars in term bonds identified by CUSIP number
        74514LA23, and three hundred sixty-five million, six hundred sixty thousand
        ($365,660,000) dollars in serial bonds identified by CUSIP numbers
        74514LZS9,    74514LZT7,    74514LZU4,    74514LZV2,    74514LZW0,
        74514LZX8, 74514LZY6, 74514LZZ3, and which was subscribed by UBS
        Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular
        Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup,
        FirstBank PR Securities, Oriental Financial Services, Ramirez & Co., Inc.,
        Raymond James and Scotia MSD;

(n)     Series C of the Public Improvement Refunding Bonds issued by the
        Government of Puerto Rico on March 17, 2011 in the aggregate principal
        amount of four hundred forty-two million, fifteen thousand (442,015,000)
        dollars, which includes one hundred twenty-seven million, fifteen thousand
        (127,015,000) dollars in term bonds

identified by CUSIP number 74514LXH5, and three hundred fifteen million ($315,000,000) dollars in serial bonds identified by CUSIP numbers 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 and 74514LWX1, and which was subscribed by Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramirez & Co, Inc, Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities and VAB Financial;

(o)　　Series D of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on July 12, 2011 in the principal amount of fifty-two million, one hundred ninety thousand ($52,190,000) dollars in serial bonds identified by CUSIP numbers 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9, 74514LZG5 and 74514LZE0, and which was subscribed by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co, Jefferies & Company, Morgan Stanley, Ramirez & Co, Inc, Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(p)　　Series E of the Public Improvement Bonds issued by the Government of Puerto Rico on July 12, 2011 in the principal amount of two hundred forty-five million, nine hundred fifteen thousand ($245,915,000) dollars in serial bonds identified by CUSIP numbers 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 and 74514LZQ3, and which was subscribed by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co, Jefferies & Company, Morgan Stanley, Ramirez & Co, Inc, Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(q)　　Series A of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009 in the principal amount of three million, four hundred twenty-five thousand (3,425,000) dollars in term bonds identified by CUSIP number 74514LVV6, and which was subscribed by Morgan Stanley, JP Morgan,

Barclays Capital, Goldman Sachs & Co, Merrill Lynch, Ramirez & Co, Inc, Popular Securities, Santander Securities and UBS Financial Services of Puerto Rico;

(r) Series 2007 A-4 of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009 in the principal amount of ninety-three million, eight hundred thirty-five thousand (93,835,000) dollars in serial bonds identified by CUSIP numbers 74514LVT1 and 74514LVU8, and which was subscribed by Morgan Stanley and JP Morgan;

(s) Series B of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on November 17, 2009 in the principal amount of three hundred seventy-two million, six hundred eighty-five thousand (372,685,000) dollars in term bonds identified by CUSIP numbers 74514LVX2, 74514LVY0, 74514LVZ7 and 74514LVW4, and which was subscribed by Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramirez & Co., Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(t) Series C of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on December 16, 2009 in the principal amount of two hundred ten million, two hundred fifty thousand ($210,250,000) dollars in term bonds identified by CUSIP number 74514LWA1, and which was subscribed by Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co, Merrill Lynch & Co, Ramirez & Co, Inc, UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities and Santander Securities; and,

(u) Series A of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on February 17, 2011 in the principal amount of three hundred fifty-six million, five hundred twenty thousand (356,520,000) dollars in serial bonds identified by CUSIP numbers 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 and 74514LWS2, and which was subscribed by Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities and Santander Securities;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(8)      Uncontested Bonds - collectively,  all bond issues made by the Government  of Puerto Rico, its Public Companies, Municipalities  or Retirement Systems whose legal guarantees, guaranteed amounts, pledged sources of payment or legal authorizations have not been challenged before the United States District Court for the District of Puerto Rico or before the General Court of Justice by the Government  of Puerto Rico, its Public Companies, Municipalities  or Retirement Systems, the FOMB, the official committees of creditors and retirees, any other Interested Parties, as such term is defined in the U.S. Bankruptcy Code, or persons with standing  to intervene by filing  a bankruptcy petition, memorandum of law, motion,  lawsuit,  or adversary proceeding under any case filed and pending  final resolution  under Title III of PROMESA, and which are still  pending  payment; and that are still  pending.

(9)      Bankruptcy Code-refers to Title  II of the United States Code, which provides for composition  or debt adjustment mechanisms  for individuals,  corporations,  and governmental  entities.

(10)     Adequate Funding  Ratio - the ratio, equal to 1.2, of the Retirement Systems Joint Administration  Trust's total equity,  as determined annually  by independent actuarial study based on the aggregate actuarial cost and funding  method and valuation  used by the New York State Comptroller's  Office for the administration of the New York State Governmental  Retirement Systems, to achieve an adequate level of pension  funding.

(11)     CUSIP - refers to the *Committee on Uniform Securities Identification Procedures*, the numbering  system of which allows for the unique identification  of all stocks and bonds registered in the U.S. and Canadian capital markets, and is used to create a specific distinction  between securities traded in the public  markets. The Committee on Uniform Securities Identification  Procedures (CUSIP) oversees the entire CUSIP numbering  system.

(12)     ERISA - stands for "Employee  Retirement Income Security

107

Act" of 1974, incorporated into Title 29 of the United States Code.

(13)     Date of implementation of the System-July 1, 1954.

(14)     Trust for the Joint Administration of the Retirement Systems, hereinafter, FACSiR, is the new Retirement System designed and promoted in this Act, which would administer a new trust in which the resources and obligations of the Retirement System for Employees of the Government of Puerto Rico, as established by Act No. 447 of May 15, 1951, as amended, hereinafter SRE; the Retirement System for the Judiciary, created by Act No. 12 of October 19, 1954, as amended, hereinafter SRJ; and the Retirement System for Teachers of Puerto Rico, as established by Act 160-2013, hereinafter SRM, and centralize the management and administration expenses thereof, upon confirmation of a viable, fair and equitable Adjustment Plan for the people and for the Pensioners and Participants of the Retirement Systems.

(15)     Government - shall mean the Commonwealth of Puerto Rico.

(16)     Actuarial Guides - Shall mean, during the first five (5) years of operation of the System, the Combined Annuity and Mortality Tables and thereafter, those tables or standards adopted by the Board of Trustees based on the experience of the System and in accordance with the recommendations of the actuary.

(17)     Trust Income or FACSiR income - shall include, but is not intended to be an exhaustive list or limitation:

(a)     the transfer of one hundred (100) percent of the balance deposited in the Account for the Payment of Accrued Pensions, created by virtue of Act 106-2017, as amended;

(b)     one hundred (100) percent of the Participants' individual contributions;

(c)     one hundred (100) percent of the employer contributions of the Government of Puerto Rico;

(d)     one hundred (100) percent of the annual savings produced by the discharge, defeasance or reduction in Outstanding Debt Service on the Contested Bonds;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(e) the restitution of one hundred (100) percent of the individual contributions withheld from the Participants of the Retirement Savings Account Program, created by virtue of Chapter 3 of Act No. 447 of May 15, 1951, and the damages corresponding to the investment return ceased to accrue after the failure of the SRE Administrator to comply with Article 3-103 and Article 3-105 of the Retirement Savings Account Program and Act No. 447 of May 15, 1951, as amended;

(f) one hundred (100) percent of any court judgments, and its own and the Government of Puerto Rico's rights to seek and receive restitution, for damages suffered in the public treasury as a result of the recklessness, negligence, imprudence or malice of the underwriting banks and their professional representatives or consultants in the issuance, purchase and sale of the Contested Bonds;

(g) one hundred (100) percent of the yields on the investments and assets of FACSiR, including the assets of the Retirement Systems that have not been liquidated or transferred to the Account for the Payment of Accrued Pensions after the passage of Act 106-2017, as amended, whose ownership shall also be transferred, without liquidating the asset, to FACSiR;

(h) one hundred (100) percent of the net savings from the administration of FACSiR and its assets;

(i) one hundred (100) percent of any other proprietary income that may be generated by FACSiR without jeopardizing the Adequate Funding Ratio, in compliance with the trustee duties set forth in Section 3.08 of this Act, and which are consistent with the powers conferred upon the Trust by law; and,

(j) the greater of: (i) fifty (50) percent of the annual savings produced by the discharge or reduction in debt service on Uncontested Bonds, or (ii) all of the annual savings necessary to produce in debt service on Uncontested Bonds to achieve the Adequate Funding Ratio within a period not to exceed fifteen (15) years, through a Debt Adjustment Plan under Title III of PROMESA.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN–ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(18)     Interest - shall mean two point five (2.5%) per annum, compounded annually, or such other rate as may be subsequently prescribed by the Board, based on the experience of the System.

(19)     FOMB - the Financial Supervision and Administration Board, created under Titles I and II of PROMESA.

(20)     Judge - shall mean any person who holds a position as a Judge of the Supreme Court, the Court of First Instance or the District Court of the Commonwealth of Puerto Rico.

(21)     Board - shall mean the Retirement Board, created by the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants."

(22)     "Sarbanes-Oxley Act"- means the "Sarbanes-Oxley Act" of 2002, Public Law 107-204, as enacted by the United States Government on July 30, 2002.

(23)     Best Accounting Practices - means the establishment of a system of accounting controls that are consistent with generally accepted accounting principles (GAAP), ERISA and the Sarbanes-Oxley Act. It also means, without being understood as an exhaustive list or a limitation: (1) the establishment of a team of internal auditors; (2) the quarterly and consistent publication of a detailed breakdown of income, expenses, investments and their performance, the natural or legal persons managing the assets or advising on the investment of the assets, and the fees and other charges earned by the natural or legal persons managing the assets or advising on the investment of the assets; (3) the annual and consistent publication of audited financial statements and actuarial valuation studies; (4) the quarterly and consistent publication of a statistical summary of the Participants and Pensioners, broken down by age groups, salary or benefit scales, and investment programs; (5) the conduct and regular and continuing publication of compliance audits and performance audits, in accordance with the standards of the United States Government Accountability Office (US GAO), also known as the *Yellow Book;* (6) the translation into Spanish and English of all periodic reports required to be produced under this Act; (7) the sending of true and accurate copies, on a regular and permanent basis,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN–ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

of any periodic reports required to be produced by law, regulation, administrative bulletin, circular letter, generally accepted accounting principles, or internal policies for the retirement systems in Puerto Rico or pursuant to regulations of the Government of the United States of America, to the Legislative Assembly and to the legislative committees having jurisdiction over the Retirement Systems and the Budget of the Government of Puerto Rico; and, (8) the adoption and publication of investment policies.

(24)     Participant - Shall mean any judge who is a member of this System, as specified in Article 3 of this Act.

(25)     Pension - shall mean a series of monthly payments over the life of the pensioner, payable at the end of each calendar month. The first pension payment will be made for the fraction of a month until the end of the first month and the last payment will be made for the fraction of a month until the death of the pensioner.

(26)     Pensioner - shall mean any person who is receiving a pension from the System.

(27)     Adjustment Plan - a plan proposed by the FOMB for the reduction of the debts of the Government of Puerto Rico, its Public Companies, Municipalities or Retirement Systems through Title III of PROMESA, pursuant to Section 312 of PROMESA.

(28)     Hybrid Program - shall mean the retirement program to which every participant who enters the Retirement System of the Judiciary of the Commonwealth of Puerto Rico for the first time on or after July 1, 2014 shall belong. The Hybrid Program is a combined defined benefit and defined contribution plan. As for the defined benefit, upon retirement, participants in the hybrid program shall be entitled to receive an annuity computed in accordance with the provisions of Articles 4-C and 4-D of this Act. As for the defined contribution, upon retirement, these participants shall be entitled to receive an annuity as provided in Articles 10-A and 10-B of this Act.

(29)     PROMESA: Public Law 114-187, also known as the "Puerto Rico Oversight, Management, and Economic Stability Act," approved by the Government of the United States of America.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

111

(30)     Bankruptcy - the debt restructuring process to which the FOMB admitted the Government of Puerto Rico, its Public Companies, Municipalities or Retirement Systems on May 3, 2017, before the United States District Court for the District of Puerto Rico, under Title III of PROMESA.

(31)     Outstanding Debt Service on the Contested Bonds - the cost of amortization, including the payment of interest and the corresponding portion of principal, or the annual transfers of public funds that must be made by the Government of Puerto Rico, its Public Companies, Municipalities or Retirement Systems in compliance with the bond issues that have not yet matured, been canceled, exchanged, refinanced or restructured since the effective date of Section 405 of PROMESA, or on the effective date of Section 362 of the United States Bankruptcy Code as applicable to Puerto Rico by Section 301(a) of PROMESA, and until the respective maturity dates of each bond issue.

(32)     Services - shall mean services rendered beginning on the first day on which any person is appointed judge or first enters the service of any agency, department, or division of the Government of Puerto Rico, whether that date is before or after the effective date of this Act, and ending on the date of separation from service. All intervening periods following resignation, separation, or expiration of any term of election or appointment during which a Participant was not in the service of the Government shall be excluded and no credit shall be given. No credit shall be given for any service rendered to the Government in any capacity other than as a judge unless:

    a.    They have served eight (8) years as a judge; and

    b.    the participant returns to the System any contributions refunded to them on or after the effective date of this Act by any other Retirement System under which they have served, including any interest at the rate prescribed by the System indicated which such contributions have accrued as of the date the refund was made, except that for purposes of qualifying for a non-occupational disability pension only, credit shall be given at any time for services rendered to the Government in a capacity other than as a judge, subject to the provisions of this section. The contribution provided for in Article 10 of this Act shall be increased by one quarter of one percent

(0.25%) for the participants who have entered the System for the first time on or before June 30, 2014, to cover the cost of said benefit upon the effective date of this Act. Service performed during any fraction of a month shall be considered as one month of service; however, not more than one month of service shall be credited for all service performed during any calendar month.

For any new participant who enters the Retirement System of the Judiciary of the Commonwealth of Puerto Rico on or after July 1, 2014 and who belongs to the Hybrid Program, it shall mean the services rendered as of the first day on which any person is appointed as a judge of the General Court of Justice for the first time. For these new participants in the System, no credit will be given for any service rendered to the Government in any capacity other than as a judge.

(33)     System - shall mean the Retirement System of the Judiciary of the Commonwealth of Puerto Rico.

(34)     Retirement Systems - the Retirement System for Employees of the Government of Puerto Rico, as established by Act No. 447 of May 15, 1951, as amended, hereinafter referred to as SRE; the Retirement System for the Judiciary, created by Act No. 12 of October 19, 1954, as amended, hereinafter referred to as SRJ; and the Retirement System for Teachers of Puerto Rico, as established by Act 160-2013, hereinafter referred to as SRM. For purposes of this Act, it does not include the Retirement System of the University of Puerto Rico or the Retirement System of the Employees of the Puerto Rico Electric Power Authority.

(35)     Salary - shall mean the annual remuneration received by a judge for their services as a judge."

Article 2.12. Section 1.4 of Act 106-2017, as amended, known as the "Act to Guarantee Payment to Our Pensioners and Establish a New Defined Contribution Plan for Public Servants," is hereby amended to read as follows:

"Article 1.4. Public Policy.

It is hereby declared to be the public policy of the Government of Puerto Rico to protect the pensions of all public service retirees who were Participants in the three aforementioned Retirement Systems. For this reason,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

effective July 1, 2017, pursuant to House Joint Resolution No. 188 of 2017, as certified by the Fiscal Oversight Board on July 13, 2017, the Government of Puerto Rico became the direct payer of the pensions of our retirees while the dispute surrounding the legal guarantees and legal authorizations, or lack thereof, of the three bond issues made by the Retirement Systems Administration (ASR) in 2008 is being resolved in the United States District Court for the District of Puerto Rico. Among other considerations, the debt service of these three bond issues represents a risk of insolvency for the Retirement Systems and an illicit diversion of the employer contributions that have been made to them since their issuance. In view of the burden that this would place on the General Fund, which is estimated at billions of dollars per year, the employer contributions made until then to the three Retirement Systems, as well as the Uniform Additional Contribution, were temporarily eliminated, as provided in House Joint Resolutions Nos. 186, 187 and 188 of 2017. The Retirement Systems shall contribute their available funds and the net proceeds from the liquidation of their assets to the General Fund to assist in the payment of Accrued Pensions, except the headquarters building of the Teachers' Retirement System, known as the Capital Center Building, North Tower, located in Hato Rey, Puerto Rico, which shall not be liquidated. After the Retirement Systems exhaust their assets, the Account for the Payment of Accrued Pensions, which shall draw largely from the General Fund as provided in this Act, shall assume and guarantee the payment of Accrued Pensions as provided in this Act. However, the Municipalities, the Legislative Branch, Public Companies, the Government and the Courts Administration shall be obligated to pay the Pay-Go Fee as applicable to each to nourish the Account for the Payment of Accrued Pensions.

Likewise, it is declared as public policy to protect the future of our public servants. Through this Act, we ensure that they can have a dignified retirement, free of uncertainty, guaranteeing pensions and establishing a new trust or similar instrument.

Pursuant to the foregoing, the following shall be the public policy of the Government of Puerto Rico, its Public Companies, Municipalities and Retirement Systems:

(a) to protect the present and future of our public servants to prevent them from falling into poverty after a lifetime of service to their country, and to recruit and retain the best possible talent now and forever in Puerto Rico's public service;

(b) to declare the most absolute and energetic rejection of any Adjustment Plan or Restructuring Agreement that reduces, impaired, threatens, subordinates,

or worsens the current pensions, annuities, benefits, and other accruals of public servant Pensioners and Participants in the Retirement Systems, more than they were already reduced, impaired, threatened, or worsened prior to the filing of the bankruptcy petition on May 3, 2017;

(c) to define as unfeasible and absolutely reject any Adjustment Plan that produces an unsustainable restructuring of the bonds of the Government of Puerto Rico, its Public Companies and the Retirement Systems, and that does not avoid a second event of insolvency or bankruptcy for public finances;

(d) to recognize that an unsustainable restructuring of the bonds of the Government of Puerto Rico, its Public Companies and the Retirement Systems, or any successive event of insolvency or bankruptcy of the public finances, represents a direct and intolerable threat to the essential public services on which the people of Puerto Rico depend, and to the pensions and other claims of the public servants who provide them, whether Pensioners or Participants in the Retirement Systems;

(e) to measure and promote the sustainability of Puerto Rico's debt payable from public funds on an aggregate basis and as determined by analyzing the ability to service such aggregate debt in accordance with purchasing power in Puerto Rico, and net of spending necessary to meet pension payments and essential public services;

(f) to recognize that the FOMB needs the Government of Puerto Rico to take affirmative action to enable it to comply with all requirements under Section 314 of PROMESA for confirmation of an Adjustment Plan, including, but not limited to, authorizing the bond issues to be exchanged as a result of an Adjustment Plan and amending any laws that are inconsistent with the agreements reached between the FOMB and creditor groups;

(g) to condemn the Joint Adjustment Plan for the Government of Puerto Rico, the Government Employees Retirement Systems Administration and the Judiciary of Puerto Rico, and the Puerto Rico Public Buildings Authority, filed by the FOMB on September 27, 2019, as amended on February 28, 2020, and March 9, 2021, in the United States District Court for the District of Puerto Rico, as being hopelessly inconsistent with the Public Policy described in this Act;

(h)    to reject any Adjustment Plan that seeks to use Section 1129(b) of the U.S. Bankruptcy Code to impose additional cuts on public servant Pensioners and Participants in the Retirement Systems;

(i)    to reject any Adjustment Plan or Restructuring Agreement whose feasibility or guarantee of payment for debt service requires increasing or establishing regressive taxes, fees or other mechanisms that raise the cost of water, electricity, transportation, education and other essential public services in order to collect public revenues from the pockets of working families and pensioners in Puerto Rico;

(j)    to reject any Adjustment Plan or Restructuring Agreement whose feasibility or guarantee of payment for debt service requires cuts to essential public services provided by the Government of Puerto Rico, its Public Companies, and the Municipalities, including, without limitation, education, health, environmental protection, housing, sanitation and solid waste management, security and emergency management, sewerage and water processing, electric power, road infrastructure, and mass transportation;

(k)    to recognize that any attempt to cut the budget available for essential public services provided by the Government of Puerto Rico, its Public Companies and Municipalities, or to reduce payroll spending or the number of public servants entitled to be Participants in the Retirement Systems, is also an attempt to cut the resources available to meet pension obligations, annuities, benefits and other credits that Pensioners and Participants of the Retirement Systems may have, and the losses that this would represent in individual or employer contributions must be offset to ensure the actuarial solvency of the Retirement Systems and the Trust for the Joint Administration of the Retirement Systems (FACSiR);

(l)    to clearly and unequivocally declare that no action will be taken to permit confirmation of any Adjustment Plan that is inconsistent with the provisions of this Public Policy, including, but not limited to, the removal of statutory or regulatory barriers, the creation of legislation or regulations, or any authorizations necessary to permit the FOMB Adjustment Plan to comply with the requirements of Section 314(b)(3) and Section 314(b)(5) of PROMESA;

(m)   to recognize that Pensioners and Participants of the Retirement Systems have already been harmed in their claims against the Government of Puerto Rico, its Public Companies, the Municipalities and the Retirement Systems during the years prior to the filing of the bankruptcy petition, in amounts that exceed:

    (i)   forty-two (42) percent of the aggregate value of the pensions, benefits and other retirement rights for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who were Participants as of a date prior to April 1, 1990;

    (ii)   thirty-one (31) percent of the aggregate value of pensions, benefits and other retirement rights for the average Pensioner or beneficiary of the Defined Benefit Program under Act No. 447 of May 15, 1951, as amended, who were Participants as of a date after April 1, 1990, but prior to January 1, 2000; and

    (iii)   fifteen (15) percent of the aggregate value of the benefits and other retirement rights for the average beneficiary of the Retirement Savings Account Program under Act No. 447 of May 15, 1951, as amended, who were Participants as of January 1, 2000.

(n)   to ensure that no part of the funds and resources of the State government, committed for activities related to the participation of the Government of Puerto Rico, its Public Companies, the Municipalities, and the Retirement Systems in the processes under Title III of PROMESA, be directed toward the achievement of any Plan of Adjustment inconsistent with this Act;

(o)   to promote the creation of a Trust for the Joint Administration of the Retirement Systems (FACSiR) that safeguards, collects, administers and adequately guarantees the resources destined to the payment of all pensions and benefits to which our public servants are currently entitled, in order to protect, capitalize and guarantee in perpetuity the retirement rights and benefits for the Pensioners and Participants of the Retirement Systems;

(p)   to guarantee the right to a dignified retirement as a fundamental part of a dignified life and as a corollary of the right to the inviolability of the dignity of the human being

enshrined in Section One of the Bill of Rights of the Constitution of Puerto Rico;

(q)  to recognize that a dignified retirement consists of enjoying a lifetime pension that protects each person from poverty in their old age, restoring to Pensioners and Participants in the Retirement Systems the rights and benefits they have lost through legislation in times of fiscal crisis or severe public finance emergencies, and expanding the rights and benefits of FACSiR Pensioners and Participants once the Adequate Funding Ratio is reached;

(r)  to ensure the integrity, sound administration and Best Accounting Practices of all public funds available to the Government of Puerto Rico, its Public Companies, the Municipalities and the Retirement Systems in order to avoid losses of public funds that threaten the ability of the Government of Puerto Rico, its Public Companies, the Municipalities, the Retirement Systems and the FACSiR to comply with the objectives outlined in this Public Policy;

(s)  to define any recognition or repayment of any part of any Contested Bonds, without a proper adjudication by a court of competent jurisdiction that such bonds were issued in accordance with applicable laws and regulations, including the Constitution of Puerto Rico, as an attack on the integrity, sound administration and Best Accounting Practices of the public funds available to the Government of Puerto Rico, its Public Companies, the Municipalities and the Retirement Systems; and

(t)  to protect FACSiR income against diversions, defaults, or other non-compliances that undermine the eventual contractual relationship between the Government of Puerto Rico and FACSiR."

Article 2.13. Article 1.7 of Act 106-2017 is amended to read as follows:

"Article 1.7. Definitions.

The following words and terms, when used or referred to in this Act, shall have the following meanings unless another meaning clearly appears from the context. Tenses used in the present tense also include the future, if anywhere a word is used in the masculine only as a generic standard, it shall be understood as amended to a word or words showing masculine and feminine inclusiveness, as well as non-

binary in language, except in those cases where such an interpretation would be absurd. The singular number includes the plural and the plural includes the singular.

(a)   …

(b)   Restructuring Agreement: means any agreement between: (1) the Government of Puerto Rico, as defined in this Act; (2) the FOMB; (3) bondholders of the Government of Puerto Rico; and (4) bond insurers, whether or not subrogated to the credit right of the bondholders, of the Government of Puerto Rico; in connection with, or in support of, any transaction involving a Qualifying Modification, as such term is defined in Title VI of PROMESA, or an Adjustment, as such term is used in Title III of PROMESA, of the bonds of the Government of Puerto Rico.

(c)   Administrators of the Retirement Systems: the Administrator of the Retirement System of the Employees of the Government of Puerto Rico as established by Act No. 447 of May 15, 1951, as amended, and the Executive Director of the Teachers' Retirement System of Puerto Rico, as established by Act 160-2013.

(d)   AEP: the Puerto Rico Public Buildings Authority, created by Act No. 56 of June 19, 1958, as amended.

(e)   Contributions Due: amounts owed by the Government, Municipalities, Public Companies and other entities considered employers under any of the Retirement Systems covered by this Act to the Retirement Systems, to the Accrued Pension Payment Account and/or to the New Defined Contribution Plan.

(f)   Individual Contributions: those amounts that have been or will be deducted from the base compensation received by the Participant, to be credited to their Specified Contribution Account, as defined in Article 1.7(kk).

(g)   any person in receipt of any pension, annuity or benefit as provided in this Act.

(h)   Contested Bonds: collectively, all bond issues made by the Government of Puerto Rico whose legal guarantees, guaranteed amounts, pledged sources of payment or legal authorizations have been challenged in the United States District Court for the District of Puerto Rico or in the General Court of Justice by the Government of Puerto Rico, the FOMB, the official committees of

119

creditors and retirees, any other Interested Parties, as such term is defined in the United States Bankruptcy Code, or persons with standing to intervene by filing a bankruptcy petition, memorandum of law, motion, lawsuit, or adversary proceeding in any case filed and pending final resolution under Title III of PROMESA. This includes, as an example:

(1)     Series A of the Senior Pension Funding Bonds issued by the Government Employees Retirement Systems Administration and the Judiciary (ASR) on January 31, 2008 in the aggregate amount of one billion, five hundred eighty-eight million, eight hundred, ten thousand, seven hundred ninety-nine, and sixty cents ($1,588,810,799.60) dollars as a principal amount, which includes one billion, five hundred forty-three million, seven hundred, and seventy thousand ($1,543,770,000) dollars in term bonds, and forty-five million, forty thousand, seven hundred ninety-nine dollars, and sixty cents ($45,040,799.60) dollars in capital appreciation bonds, and which was subscribed by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramirez & Co., Inc., Scotia Capital, TCM Capital and Wachovia Capital Markets, LLC originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

(2)     Series B of the Senior Pension Funding Bonds issued by the ASR on June 2, 2008 in the aggregate principal amount of one billion, fifty-eight million, six hundred thirty-four thousand, six hundred thirteen, and five cents ($1,058,634,613.05) dollars, which includes eight hundred sixteen million, one hundred thousand ($816,100,000) dollars in term bonds, and two hundred forty-two million, five hundred thirty-four thousand, six hundred thirteen, and five cents ($242,534,613.05) dollars in capital appreciation bonds, and which was subscribed by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital market;

(3)     Series C of the Senior Pension Funding Bonds issued by the ASR on June 30, 2008 in the aggregate principal amount of three hundred million, two hundred two thousand, nine hundred thirty ($300,202,930) dollars, which includes two hundred ninety-eight million ($298,000,000) dollars in term bonds and two million, two hundred two thousand, nine hundred thirty

($2,202,930) dollars in capital appreciation bonds, and which was subscribed by UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramirez & Co., Inc., Scotia Capital and Wachovia Capital Markets, LLC and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

(4)  Series K of the Government Facilities Revenue Refunding Bonds issued by the Public Buildings Authority (PBA) on July 1, 2009 in the amount of fifty million ($50,000,000) in the principal amount of term bonds identified by CUSIP number 745235L82 at the time of issuance, and which was subscribed by Merrill Lynch & Co. and Ramirez & Co., Inc;

(5)  Series P of the Government Facilities Revenue Refunding Bonds issued by the AEP on July 1, 2009 in the aggregate principal amount of three hundred thirty million, nine hundred thirty five thousand ($330,935,000) dollars, which includes two hundred fifteen million, one hundred sixty thousand ($215,160,000) dollars in term bonds identified by CUSIP numbers 745235K75, 745235K83, 745235K91, 745235L25 and 745235L33 at the time of issuance, and one hundred fifteen million, seven hundred seventy-five thousand (115,775,000) dollars in serial bonds identified by CUSIP numbers 745235L41, 745235L58, 745235L66 and 745235L74 at the time of issuance, and which was subscribed by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(6)  Series Q of the Government Facilities Revenue Refunding Bonds issued by the AEP on October 28, 2009 in the aggregate principal amount of one hundred fifty-two million, five hundred forty thousand ($152,540,000) dollars, which includes one hundred forty four million, three hundred forty thousand ($144,340,000) dollars in term bonds identified by CUSIP numbers 745235M24, 745235M32 and 745235M40 at the time of issuance, and eight million, two hundred thousand (8,200,000) dollars in serial bonds identified by CUSIP number 745235L90 at the time of issuance, and which was subscribed by Merrill Lynch & Co., Ramirez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

121

(7)     Series R of the Government Facilities Revenue Bonds issued by the AEP on August 24, 2011 in the aggregate principal amount of seven hundred fifty-six million, four hundred forty-nine thousand ($756,449,000) dollars identified by CUSIP numbers 745235 M57, 745235 M73, 745235 M65 and 745235 M81 at the time of issuance, and which was subscribed by Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James and Scotia MSD, and originally offered for resale exclusively to Puerto Rico residents in the Puerto Rico capital markets;

(8)     Series S of the Government Facilities Revenue Bonds issued by the AEP on August 24, 2011 in the aggregate principal amount of three hundred three million, nine hundred forty-five thousand ($303,945,000) dollars, which includes two hundred eight million, nine hundred forty-five thousand ($208,945,000) dollars in term bonds identified by CUSIP numbers 745235P62 and 745235P70 at the time of issuance, and ninety-five million ($95,000,000) dollars in serial bonds identified by CUSIP numbers 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 and 745235P88 at the time of issuance, and which was subscribed by Ramirez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, JP Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(9)     Series T of the Government Facilities Revenue Bonds - Qualified Zone Academy Bonds issued by the AEP on December 22, 2011 in the aggregate principal amount of one hundred twenty-one million, five hundred twenty-eight thousand ($121,528,000) dollars identified by CUSIP number 745235Q20 at the time of issuance, and which was subscribed by Santander Securities and UBS Financial Services Puerto Rico;

(10)    Series U of the Government Facilities Revenue Refunding Bonds issued by the AEP on June 21, 2012 in the aggregate principal amount of five hundred eighty-two million, three hundred forty-five thousand

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

122

($582,345,000) dollars, which includes five hundred thirty-eight million, six hundred seventy-five thousand (538,675,000) dollars in term bonds identified by CUSIP number 745235R37 at the time of issuance, and forty-three million, six hundred seventy thousand (43,670,000) dollars in serial bonds identified by CUSIP numbers 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 and 745235S69 at the time of issuance, and which was subscribed by Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, JP Morgan, Morgan Stanley, Ramirez & Co., Inc., Raymond James | Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico and VAB Financial;

(11)   Series A of the General Obligation Bonds issued by the Government of Puerto Rico on March 17, 2014 in the amount of three billion, five hundred million ($3,500,000,000) dollars in the principal amount of term bonds identified by CUSIP number 74514LE86 at the time of issuance, and which was subscribed by Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramirez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities and UBS Financial Services Puerto Rico;

(12)   Series A of the Public Improvement Refunding Bonds - General Obligation Bonds issued by the Government of Puerto Rico on April 3, 2012 in the aggregate amount of two billion, three hundred eighteen million, one hundred ninety thousand ($2,318,190,000) dollars in the principal amount, which includes one billion six, hundred seventy-eight million, seven hundred forty-five thousand ($1,678,745,000) dollars in term bonds identified by CUSIP numbers 74514LD20, 74514LB63, 74514LB71 and 74514LB89 at the time of issuance, and six hundred thirty-nine million, four hundred forty-five thousand (639,445,000) dollars in serial bonds identified by CUSIP numbers 74514LA31, 74514LC47, 74514LA49, 74514LC54, 74514LA56, 74514LC62, 74514LD46, 74514LC70, 74514LA64, 74514LD53, 74514LC88, 74514LA72, 74514LD61, 74514LA80, 74514LD79, 74514LD38, 74514LC96, 74514LA98, 74514LB22, 74514LD87, 74514LB30, 74514LB48, 74514LB97, 74514LB55, 74514LC21 and 74514LC39 at the time of issuance, and which was subscribed by Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramirez & Co., Inc., Raymond James,

123

RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(13)     Series B of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 29, 2012 in the aggregate principal amount of four hundred fifteen million, two hundred seventy thousand ($415,270,000) dollars, which includes forty-nine million, six hundred ten thousand ($49,610,000) dollars in term bonds identified by CUSIP number 74514LA23, and three hundred sixty-five million, six hundred sixty thousand ($365,660,000) dollars in serial bonds identified by CUSIP numbers 74514LZS9, 74514LZT7, 74514LZU4, 74514LZV2, 74514LZW0, 74514LZX8, 74514L2Y6, 74514LZZ3, and which was subscribed by UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramirez & Co., Inc., Raymond James and Scotia MSD;

(14)     Series C of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on March 17, 2011 in the aggregate principal amount of four hundred forty-two million, fifteen thousand (442,015,000) dollars, which includes one hundred twenty-seven million, fifteen thousand (127,015,000) dollars in term bonds identified by CUSIP number 74514LXH5, and three hundred fifteen million ($315,000,000) dollars in serial bonds identified by CUSIP numbers 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 and 74514LWX1, and which was subscribed by Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramirez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities and V AB Financial;

(15)     Series D of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on July 12, 2011 in the principal amount of fifty-two million, one hundred ninety thousand ($52,190,000) dollars in serial bonds identified by CUSIP numbers 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9,

124

74514LZG5 and 74514LZE0, and which was subscribed by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co, Jefferies & Company, Morgan Stanley, Ramirez & Co, Inc, Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(16)     Series E of the Public Improvement Bonds issued by the Government of Puerto Rico on July 12, 2011 in the principal amount of two hundred forty-five million, nine hundred fifteen thousand ($245,915,000) dollars in serial bonds identified by CUSIP numbers 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 and 74514LZQ3, and which was subscribed by J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co, Jefferies & Company, Morgan Stanley, Ramirez & Co, Inc, Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD and VAB Financial;

(17)     Series A of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009 in the principal amount of three million, four hundred twenty-five thousand (3,425,000) dollars in term bonds identified by CUSIP number 74514LVV6, and which was subscribed by Morgan Stanley, JP Morgan, Stanley, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities and UBS Financial Services of Puerto Rico;

(18)     Series 2007 A-4 of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on September 17, 2009 in the principal amount of ninety-three million, eight hundred thirty-five thousand (93,835,000) dollars in serial bonds identified by CUSIP numbers 74514LVT1 and 74514LVU8, and which was subscribed by Morgan Stanley and JP Morgan;

(19)     Series B of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on November 17, 2009 in the principal amount of three hundred seventy-two million, six hundred eighty-five thousand (372,685,000) dollars in term bonds identified by CUSIP numbers 74514LVX2, 74514LVY0, 74514LVZ7 and 74514LVW4, and which was subscribed by Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramírez & Co., Inc.,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

Popular Securities, Santander Securities and UBS Financial Services Incorporated of Puerto Rico;

(20) Series C of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on December 16, 2009 in the principal amount of two hundred ten million, two hundred fifty thousand ($210,250,000) dollars in term bonds identified by CUSIP number 74514LWA1, and which was subscribed by Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co, Merrill Lynch & Co, Ramirez & Co, Inc, UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities and Santander Securities; and,

(21) Series A of the Public Improvement Refunding Bonds issued by the Government of Puerto Rico on February 17, 2011 in the principal amount of three hundred fifty-six million, five hundred twenty thousand (356,520,000) dollars in serial bonds identified by CUSIP numbers 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 and 74514LWS2, and which was subscribed by Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramirez & Co, Inc, Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities and Santander Securities;

(i) Uncontested Bonds: collectively, all bond issues made by the Government of Puerto Rico whose legal guarantees, guaranteed amounts, pledged sources of payment or statutory authorizations have not been challenged before the United States District Court for the District of Puerto Rico or before the General Court of Justice by the Government of Puerto Rico, the FOMB, official creditors' committees and retirees, any other Interested Parties, as such term is defined in the United States Bankruptcy Code, or persons with standing to intervene by filing a bankruptcy petition, memorandum of law, motion, lawsuit, or adversary proceeding under any case filed and pending final resolution under Title III of PROMESA; and that are still pending.

(j) Administrative Fee: a fee that may be established and collected by the Retirement Board, or its designee, and shall be paid by the Government, the

Judicial Branch, the Legislative Branch, Public Companies, and those other entities considered employers under the Retirement Systems of the Employees of the Government of Puerto Rico and the Teachers' Retirement System pursuant to this Act to fund the operations of the New Defined Contribution Plan and/or the Account for the Payment of Accrued Pensions; except for the Municipalities.

(k) Pay-Go Fee: Fee to be established and imposed by the AAFAF and to be paid by the Government, Municipalities, the Judicial Branch, the Legislative Branch, Public Companies, and those other entities considered employers under the Retirement Systems of the Employees of the Government of Puerto Rico and the Teachers' Retirement System pursuant to Chapter 2 of this Act. This fee shall be collected by the Secretary of the Treasury or their designee, in accordance with the provisions of this Act.

(l) Code: Act 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico."

(m) Bankruptcy Code: refers to Title II of the United States Code, which provides for composition or debt adjustment mechanisms for individuals, corporations, and governmental entities.

(n) Adequate Funding Ratio: the ratio, equal to 1.2, of the Retirement Systems Joint Administration Trust's resources relative to its total liabilities, as determined annually by independent actuarial study based on the aggregate actuarial cost and funding method and valuation used by the New York State Comptroller's Office for the administration of the New York State Governmental Retirement Systems, to achieve an adequate level of pension funding.

(o) Defined Contribution Account: an account in trust, separate from the general assets and accounts of the Government, to be created as of July 1, 2017 in the name of each Participant, in accordance with the provisions of Chapter 3 of this Act.

(p) Account for the Payment of Accrued Pensions: account in trust, separate from the general assets and accounts of the Government, intended to pay the Accrued Pensions for the Retirement System of the Employees of the Government of Puerto Rico, the Teachers' Retirement System, and the Retirement System for the Judiciary under the "pay as you go" scheme, as established in Chapter 2 of this Act. This account, in trust, shall be centralized and segregated from the general assets and accounts of the Government, in

charge of the Department of the Treasury, and shall be dedicated solely and exclusively to the purposes provided in this Act, and subject to the terms and conditions set forth herein.

(q) CUSIP: refers to the Committee on Uniform Securities Identification Procedures, the numbering system of which allows for the unique identification of all stocks and bonds registered in the U.S. and Canadian capital markets, and is used to create a specific distinction between securities traded in the public markets. The Committee on Uniform Securities Identification Procedures (CUSIP) oversees the entire CUSIP numbering system.

(r) Public Company or Corporation: any governmental entity of the Government of Puerto Rico that has been created or that may be created in the future. It shall not include, however, those subsidiaries of governmental entities whose employees, in the judgment of the Retirement Board, do not have a clear employee-employer relationship with the Government of Puerto Rico. Any officer or employee who was a Participant in the Retirement Systems and becomes or has become an officer or employee of a subsidiary of any public company or corporation without a break in service shall continue to enjoy the same rights and privileges as a Participant, even though such subsidiary is not covered by the three Retirement Systems.

(s) Administrative Entity: person or legal entity selected by the Retirement Board to administer the Accrued Pension Payment Account and/or the New Defined Contribution Plan. The Administrative Entity shall be a recognized company, with at least ten (10) years of experience in the administration of retirement plans, with a good reputation in the financial industry and that guarantees the Government contractually that it will be able to generate savings of at least twenty-five percent (25%) of the current operational expenses incurred in operating the Retirement Systems. This does not preclude the Government or any of its entities from assuming and exercising the functions of the Administrative Entity, if deemed necessary and appropriate, always taking into consideration the best interests of the Participants, Retirees and Beneficiaries and the protection and guarantee of the balance of their Individual Contributions.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

128

(t)     ERISA: stands for the Employee Retirement Income Security Act of 1974, incorporated into Title 29 of the United States Code.

(u)     Trust for the Joint Administration of the Retirement Systems, hereinafter, FACSiR, is the new Retirement System designed and promoted in this Act, which would administer a new trust in which the resources and obligations of the Retirement System for Employees of the Government of Puerto Rico, as established by Act No. 447 of May 15, 1951, as amended, hereinafter SRE; the Retirement System for the Judiciary, created by Act No. 12 of October 19, 1954, as amended, hereinafter SRJ; and the Retirement System for Teachers of Puerto Rico, as established by Act 160-2013, hereinafter SRM, and centralize the management and administration expenses thereof, upon confirmation of a viable, fair and equitable Adjustment Plan for the people and for the Pensioners and Participants of the Retirement Systems.

(v)     Government of Puerto Rico or Government: the Government of Puerto Rico and all its departments, divisions, bureaus, offices, agencies and dependencies, for purposes of this definition, includes the Puerto Rico Department of Education. For purposes of this Act, this term includes other governmental or non-governmental entities whose employees are currently contributing to the Retirement Systems.

(w)     Trust Income or FACSiR Income: shall include, but is not intended to be an exhaustive list or limitation:

    (1)     the transfer of one hundred (100) percent of the balance deposited in the Account for the Payment of Accrued Pensions, created by virtue of Act 106-2017, as amended;

    (2)     one hundred (100) percent of the Participants' individual contributions;

    (3)     one hundred (100) percent of the employer contributions of the Government of Puerto Rico;

    (4)     one hundred (100) percent of the annual savings produced by the discharge, defeasance or reduction in Outstanding Debt Service on the Contested Bonds;

(5)     the restitution of one hundred (100) percent of the individual contributions withheld from the Participants of the Retirement Savings Account Program, created by virtue of Chapter 3 of Act No. 447 of May 15, 1951, and the damages corresponding to the investment return ceased to accrue after the failure of the SRE Administrator to comply with Article 3-103 and Article 3-105 of the Retirement Savings Account Program and Act No. 447 of May 15, 1951, as amended;

(6)     one hundred (100) percent of any court judgments, and its own and the Government of Puerto Rico's rights to seek and receive restitution, for damages suffered in the public treasury as a result of the incompetence, negligence, recklessness or malice of the underwriting banks and their professional representatives or consultants in the issuance, purchase and sale of the Contested Bonds;

(7)     one hundred (100) percent of the yields on the investments and assets of FACSiR, including the assets of the Retirement Systems that have not been liquidated or transferred to the Account for the Payment of Accrued Pensions after the passage of Act 106-2017, as amended, whose ownership shall also be transferred, without liquidating the asset, to FACSiR;

(8)     one hundred (100) percent of the net savings from the administration of FACSiR and its assets;

(9)     one hundred (100) percent of any other proprietary income that may be generated by FACSiR without jeopardizing the Adequate Funding Ratio, in compliance with the trustee duties set forth in Section 3.08 of this Act, and which are consistent with the powers conferred upon the Trust by law; and,

(10)    the greater of: (i) fifty (50) percent of the annual savings produced by the discharge or reduction in debt service on Uncontested Bonds, or (ii) all of the annual savings necessary to produce in debt service on Unchallenged Bonds to achieve the Adequate Funding Ratio within a period not to exceed fifteen (15) years, through a Debt Adjustment Plan under Title III of PROMESA.

(x)     FOMB: The Financial Oversight and Management Board, created pursuant to Titles I and II of PROMESA.

(y)     Retirement Board: A board created under the provisions of Chapter 4 of this Act.

(z)     Sarbanes-Oxley Act: Means the "Sarbanes-Oxley Act" of 2002, Public Law 107-204, enacted by the United States government on July 30, 2002.

(aa)    Teacher: A professional who teaches in the classrooms, a school Principal, and any other teacher names or categories that exist or may exist within the nomenclature used by the Department of Education of the Government of Puerto Rico, the Secretary of Education and alternate officials, and any other employees or officials who avail themselves of the benefits of Act 160-2013 in accordance with its provisions, provided they have a valid certificate to work as teachers.

(bb)    Best Accounting Practices: Means the establishment of a system of accounting controls that are consistent with Generally Accepted Accounting Principles (GAAP), ERISA, and the Sarbanes-Oxley Act. It also means, without it being construed as a comprehensive list or limitation, (1) the creation of a team of internal auditors; (2) the quarterly and permanent publication of a detailed breakdown of income, expenses, investments and their return, the natural or legal persons that manage the assets or advise on investment of assets, and the fees and other rates earned by the natural or legal persons who manage the assets or advise on the investment of assets; (3) the annual and permanent publication of audited financial statements and actuarial valuation studies; (4) the quarterly and permanent publication of a statistical summary of Participants and Retirees, broken down by age group, pay or benefit scales, and corresponding retirement programs; (5) the realization and regular and permanent publication of compliance audits and performance audits, according to the standards of the United States Government Accountability Office (US GAO), also known as Yellow Book; (6) the translation into Spanish and English of all periodic reports whose production is required by this Act; (7) the regular and permanent submission of true and accurate copies of any periodic reports whose production may be required by law, regulation, administrative bulletin, circular letter, generally accepted accounting principles, or internal policies for the retirement systems in Puerto Rico or in accordance with regulations of the government of the United States of America, the Legislature, and any legislative commissions with jurisdiction over the Retirement Systems and the Budget of the Government of Puerto Rico; and, (8) the adoption and publication of investment policies.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(cc)    New Defined Contributions Plan: New defined contributions plan in which the Participants will participate, as established in Chapter 3 of this Act.

(dd)    Participants: Active employees of the Government of Puerto Rico, Teachers and members of the Puerto Rico Teachers Retirement System, Municipal employees, judges and members of the Retirement System for the Judiciary of the Commonwealth of Puerto Rico, and Public Corporations employees, except for the employees of the University of Puerto Rico and of the Puerto Rico Electric Power Authority. In addition, it includes employees covered by the provisions of Act 211-2015, as amended, known as the "Voluntary Preretirement Program Act," and those who go or have gone on to work within a Public Private Alliance, and any members of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico who have made contributions into said System that have not been refunded to them. This term includes any former employees of the Government of Puerto Rico who have left the public service and whose contributions and/or any benefits accrued up to the date of separation were not reimbursed to them.

(ee)    Accrued Pension: Annuity, benefit, or defined benefit, to which a Participant would be entitled at the time of retiring from service in accordance with the contributions and rules applicable to their respective Retirement Systems, calculated up to the moment this Act enters into force.

(ff)    Retiree: Any person receiving a pension or annuity in accordance with the provisions of this Act or with those created by the various Retirement Systems.

(gg)    Adjustment Plan: Plan proposed by the FOMB to reduce the debts of the Government of Puerto Rico through Title III of PROMESA, pursuant to Section 312 of PROMESA.

(hh)    Pre-retiree: Any person covered under the Voluntary Pre-Retirement Program created by Act 211-2015, as amended, known as the "Voluntary Pre-Retirement Program Act".

Case:23-00117-LTS Doc#:803-2 Filed:07/10/27 Entered:07/10/26:04:33:51 Desc: Debtor's Exhibit A11 Page Page 71 of 162 163

132

(ii)    PROMESA: Public Law 114-187, also known as the "Puerto Rico Oversight, Management, and Economic Stability Act," enacted by the Government of the United States of America.

(jj)    Bankruptcy: The debt restructuring process to which the FOMB admitted the Government of Puerto Rico, on May 3, 2017, before the United States District Court for the District of Puerto Rico, under Title III of PROMESA.

(kk)    Remuneration: Gross compensation in cash earned by an employee. Any bonuses granted in addition to salary, as well as any payments for overtime work, shall be excluded from the calculation of the remuneration.

(ll)    Debt Service Pending Payment on Contested Bonds: Cost of amortization, including the payment of interest and corresponding portion of the principal, or the annual transfers of public funds that the Government of Puerto Rico must make in compliance with bond issues that have not yet matured, become due, been canceled, exchanged, refinanced, or restructured as of the effective date of Section 405 of PROMESA, or the effective date of Section 362 of the United States Bankruptcy Code as applicable to Puerto Rico through Section 301(a) of PROMESA, and up to the respective expiration dates of each bond issue.

(mm)    Retirement Systems: The Employees Retirement System of the Government of the Commonwealth of Puerto Rico, as established by Act No. 447 of May 15, 1951, as amended, and the Puerto Rico Teachers Retirement System, as established by Act 160-2013.

(nn)    Retirement System for the Judiciary: The Retirement System for the Judiciary, created by Act No. 12 of October 19, 1954, as amended, known as the "Judiciary Retirement Act."

Article 2.14.- Compliance with Public Policy

(a)    The Government of the Commonwealth of Puerto Rico shall act only to enable an Adjustment Plan that complies with the provisions of this Act. Such actions include, but are not limited to:

    (1)    approving, amending, or repealing any laws, regulations, resolutions, executive orders, administrative orders, memoranda of law, circular letters, or others that may need to be approved, amended, or repealed to facilitate the confirmation of an Adjustment Plan;

(2) providing any authorizations that may be necessary for the confirmation of an Adjustment Plan, including, but not limited to, the authorization of any law or resolution for a bond issue that can be used to replace or restructure the obligations of the Government of the Commonwealth of Puerto Rico in accordance with the provisions of an Adjustment Plan; and,

(3) providing advice or any financial, technical, administrative or legal report to the FOMB that will facilitate the preparation, negotiation, or confirmation of an Adjustment Plan, except when there is a court order issued by a competent court requiring compliance with the provisions of PROMESA for the production of documents or information, in which case the AAFAF and the entity of the Government of the Commonwealth of Puerto Rico that received a formal and detailed request from the FOMB or the aforementioned court to this effect, shall make public in its entirety the information thus produced and provided to the FOMB. The formal requestion shall also be made public by the AAFAF and the concerned government entity.

(b) The AAFAF shall direct all of its resources, personnel, and specialized contractors currently committed to matters related to Title II, Title III, or Title VI of PROMESA, to draft a proposal for an Adjustment Plan, and its corresponding disclosure document, that is consistent with the provisions of this Act. Said proposal shall be submitted to the Legislature and its committees with jurisdiction over the Retirement Systems and the Budget of the Government of the Commonwealth of Puerto Rico, within a period not to exceed one hundred twenty (120) days as of the effective date of this Act, and shall make available to the legislative committees any information, communication, and/or documentation necessary for independent validation of the data and analysis included in the proposal, including information or documentation in custody of AAFAF personnel or contractors, who may be interviewed by staff of the legislative committees. The AAFAF shall waive any privileges that may obstruct access to, or the availability of information, communication, documentation, staff, or contractors for the purposes of this Act.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(c)     The Retirement Board shall direct all its resources, personnel, and specialized contractors currently committed to matters related to Title II, Title III, or Title VI of PROMESA, to draft a transition plan for the Retirement Systems, their retirement programs and plans, Participants and Retirees, and their financial assets, including, but not limited to accounts, funds, trusts, investments, and real and personal property, for the eventual joint administration of the Retirement Systems through FACSiR, to replace the current Pay-As-You-Go structure, created by virtue of Act 106-2017, as amended, known as the "Act to Guarantee Pension Payments and Establish a New Defined Contributions Plan for Public Employees." The Retirement Board shall submit a report to the Legislature and its committees with jurisdiction over the Retirement Systems, within a period not to exceed one hundred twenty (120) days as of the effective date of this Act, detailing its proposed transition plan and its recommendations on legislative changes required for the implementation of the transition plan towards FACSiR. Likewise, it shall direct its resources to collaborate with AAFAF and the Legislative committees with jurisdiction over Retirement Systems to draft a proposal for an Adjustment Plan, and its corresponding disclosure document, that is consistent with the provisions of this Act. The Retirement Board, or the officers, agents, or employees to whom the Board may delegate, shall make available to the legislative committees any information, communication, and/or documentation necessary for independent validation of the data and analysis used in the preparation of actuarial valuation studies, audited financial statements, and/or investment performance reports, among other detailed information related to its administrative expenses, internal accounting controls, and investment policies, and for the independent validation of the data and analysis included in the proposals on the Adjustment Plan and the transition plan towards FACSiR, including information or documentation in custody of AAFAF staff or contractors, who may be interviewed by the staff of the legislative committees. The Retirement Board shall waive any privileges that may obstruct access to, or availability of information, communication, documentation, staff, or contractors for the purposes of this Act.

Article 2.15.- Section (b) of Article 2 of Act No. 104 of June 29, 1955, as amended, known as the "Claims and Complaints against the State Act" is amended to read as follows:

"Article 2.- Authorization.

Suing the Commonwealth of Puerto Rico before the Court of First Instance is hereby authorized for the following causes:

(a)    …

(b)    Actions to claim real and personal property, or any rights thereon, with or without compensation for damages caused to said property or to its income and profits, and for the demarcation of rustic properties. These actions, including extraordinary appeals, may be filed by public servants and officials, participants and retirees of the Retirement Systems, and employees of government and non-government entities whose employees contribute to the Retirement Systems, acting on their own behalf or as representatives of a class, to enforce public policy and other responsibilities of the Commonwealth of Puerto Rico provided for in the Dignified Retirement Act, whose ultimate purpose is to claim the proprietary rights of the participants and retirees of the Retirement Systems over their pensions, and over the income and other assets of the Retirement Systems and the Trust for the Joint Administration of the Retirement Systems (*Fideicomiso para la Administración Conjunta de los Sistemas de Retiro* – FACSiR).

            …"

## CHAPTER 3 – TRUST FOR THE JOINT ADMINISTRATION OF THE RETIREMENT SYSTEMS

Article 3.01.- Design and Creation of the Trust for the Joint Administration of the Retirement Systems

The Government of the Commonwealth of Puerto Rico shall make use of all its powers and authorities, within the limits allowed under PROMESA, for the design, planning, and future creation of a retirement system to be called the Trust for the Joint Administration of the Retirement Systems of Puerto Rico (hereinafter, FACSiR), which shall be comprised of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, created by Act No. 447 of May 15, 1951, as amended, the Puerto Rico Teachers Retirement System, created by Act 160-2013, as amended, and the Retirement System for the Judiciary of the Commonwealth of Puerto Rico, created by Act 12 of October 19, 1954, as amended, along with all of their Programs and Plans. The powers and authorities conferred upon the three Retirement Systems in their respective enabling acts, as amended, shall be consolidated in FACSiR, although shared during the transition period.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

136

FACSiR shall be created as a retirement system and instrumentality of the Government of the Commonwealth of Puerto Rico, constituting a corporate and political entity independent and separate from the Government of the Commonwealth of Puerto Rico, similar to the Puerto Rico Sales Tax Financing Corporation created through Act 91-2003, as amended, known as the "Sales Tax Financing Corporation Act." FACSiR shall exist by virtue of its organic law once the authorization of an Adjustment Plan modeled in accordance with the provisions of Chapter 4 of this Act –which shall serve as a cornerstone for the establishment, financing, and sustainability of FACSiR– has been legislated. FACSiR is, and for all intents and purposes shall be recognized as a legal entity independent and separate from the Government of Puerto Rico and any other Government Entity. It shall be independently operated, and its business and affairs shall be managed by, or under the direction of, its Board of Directors and shall be administered by its Administrator.

Article 3.02.- Transfer of Obligations and Preservation of Benefits Structure

FACSIR shall assume all legitimate obligations of the Retirement Systems, including but not limited to paying pensions, annuities, benefits, and other receivables of retired public servants and participants of the Retirement Systems, without any detriment to the pension, annuity, benefit, credit, and liability structures that were in force prior to the filing of the bankruptcy petition under Title III of PROMESA on May 3, 2017. FACSiR shall not assume, nor will it allow any part of the Trust's Income or its assets to be used to pay illegitimate, illicit, or otherwise null or voidable obligations of the Retirement Systems, including but not limited to any of the Contested Bonds.

Article 3.03.- Agreement Related to the Transfer of FACSiR's Income

With the intention of being contractually bound, the Government of the Commonwealth of Puerto Rico agrees and undertakes with FACSiR and with any Participant or Retiree of the Retirement Systems or FACSiR –and authorizes FACSiR to include said commitment in the agreement with the Government of the Commonwealth of Puerto Rico– to not engage in and to not authorize any government entity to engage in any of the following:

(a) Take any action that:

    (1)   impairs FACSiR's right to receive FACSiR's Income;

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(2) limits or alters FACSiR's rights pursuant to the Adjustment Plan of the Government of the Commonwealth of Puerto Rico, as modeled in Chapter 4 of this Act, to comply with the terms of any agreement with public servants that are Participants and Retirees of the Retirement Systems;

(3) materially and adversely impairs the collection of FACSiR's Income in any fiscal year; or,

(4) undermines the rights, remedies, or collaterals of the Participants and Retirees of the Retirement Systems under the Adjustment Plan modeled in Chapter 4 of this Act.

(b) Reduce FACSiR's Income to rates lower than those agreed upon in the Adjustment Plan modeled in Chapter 4 of this Act; stipulating, however, that if FACSiR's Income rates were to be reduced to rates lower than those agreed upon, the Government of the Commonwealth of Puerto Rico shall replace any income losses that this may cause pursuant to the Substitution Requirements;

(c) Undermine, limit, restrict, rescind, delay, or modify the rights or powers of FACSiR or its agents, trustees, representatives, and beneficiaries under this Act or in relation to FACSiR's Income or FACSiR's ability to fulfill its obligations to its beneficiaries, who are its Participants and Retirees;

(d) Amend this Act to undermine, limit, restrict, rescind, delay, or modify any obligations or agreements that FACSiR may have with the Participants and Retirees of the Retirement Systems or of FACSiR; and,

(e) Limit or restrict the rights and powers of the pertinent officials of the Government of the Commonwealth of Puerto Rico to tax, maintain, collect, or receive FACSiR's Income; stipulating, however, that the foregoing shall not prevent the Government of the Commonwealth of Puerto Rico from exercising its power, through a change of law, to replace those portions of FACSiR's Income with a Substitute Collateral in accordance with the Substitution Requirements.

Article 3.04.- Ownership of FACSiR's Income

(a) Any and all ownership and rights to FACSiR's Income were or have been transferred, or are hereby transferred, to FACSiR.

(b) The transfer described in sub-section (a) of this Article is an absolute transfer of all legal and equitable rights, title and interest, and not a pledge or other of financing.

(c) FACSiR is and shall be the sole and exclusive owner of FACSiR's income in perpetuity, and the right of ownership shall pursue the source of repayment regardless of any modifications in its origination, collection, disbursement or remittance form or mechanism.

(d) Any natural or legal persons, including the Government of the Commonwealth of Puerto Rico and any government entities, designated as withholding agents for the purposes of any of the income sources of FACSiR's Income, shall be understood to collect on FACSiR's behalf any portion of FACSiR's Income in which FACSiR has a proprietary interest. Said withholding agents shall continue to be subject to any and all obligations and responsibilities imposed by the laws and the agreements applicable to withholding agents in relation to the taxation and collection of FACSiR's Income.

(e) FACSiR's Income does not constitute "available resources" or "available income" of the Government of the Commonwealth of Puerto Rico as such term is used in Section 8 of Article VI of the Constitution of Puerto Rico, or as otherwise used in the Constitution of Puerto Rico (regardless of whether it is the Spanish or English version of the Constitution of Puerto Rico that is being interpreted).

Article 3.05.- Statutory Lien

The pensions, annuities, and benefits of all Participants and Retirees under any of the Retirement Systems' Programs or Plans will be automatically guaranteed after the approval of the model Adjustment Plan, conceived in Chapter 4 of this Act, by a first statutory lien on all the rights, titles, interests, assets, and Income of FACSiR, including any personal or real property, money, income, revenue, account, and/or contractual or intangible right derived therefrom, for the benefit of present and future Participants and Retirees. Said first statutory lien shall be automatic and shall be constituted, perfected, valid, and automatically enforceable as of the effective date of the Adjustment Plan. There will be no need to grant, record, or register any instrument in any official record, government registry, or office in order to perfect or continue the first statutory lien or to establish or maintain its priority of the same. No contact of FACSiR's Income with any property of the Government of the Commonwealth of Puerto Rico, of any other government entity, or of any other natural or legal person shall limit, frustrate, impair, or interfere with said statutory lien. Said statutory lien shall be valid, binding, perfected, and enforceable against any natural or legal person who has a claim of any kind, extra-contractual, contractual, or otherwise, against FACSiR and its assets, regardless of whether said person was notified of said lien.

Article 3.06.- Board of Directors

FACSiR's powers shall be exercised through the Board of Directors.

(a) Make Up of the Board of Directors

FACSiR's Board of Directors shall consist of seventeen (17) members, to wit: the Executive Director of AAFAF or his/her representative; the Secretary of the Department of the Treasury or his/her representative; the Director of the Office of Management an Budget, or his/her representative; three (3) representatives for the Participants of the former Employees Retirement System of the Government of the Commonwealth of Puerto Rico, chosen by a direct vote of their peers; three (3) representatives for the Retirees of the former Employees Retirement System of the Government of the Commonwealth of Puerto Rico, chosen by a direct vote of their peers; three (3) representatives for the Participants of the former Puerto Rico Teachers Retirement System; three (3) representatives for the Retirees of the former Puerto Rico Teachers Retirement System, chosen by a direct vote of their peers; one (1) representative for the Participants of the former Retirement System for the Judiciary of the Commonwealth of Puerto Rico, chosen by a direct vote of his/her peers; and one (1) representative for the Retirees of the former Retirement System for the Judiciary of the Commonwealth of Puerto Rico, chosen by a direct vote of his/her peers.

(b) General Provisions Related to the Board of Directors

(1) Each director shall be appointed for a three (3) year term and may serve up to three (3) terms in total;

(2) Any representative for the Participants before the Board of Directors that retires during his/her term, will lose eligibility to hold his/her position on the Board of Directors, which shall be declared vacant;

(3) Participants and Retirees may remove any elected director prior to the expiration of his/her term by submitting sworn petitions totaling three percent (3%) of the votes cast to elect them, if said director fails to comply with the responsibilities established for his/her position, with the Public Policy provided for in this Act, or if he/she incurs in gross negligence, criminal intent, fraud, felony, or omission in the performance of his/her duty;

(4)    The following may not be members of the Board of Directors: (1) any person who has been named or appointed to the Official Retiree Committee (ORC) as part of Title III of PROMESA; (2) any person who has been legal representative, consultant, advisor, or contractor of the ORC; (3) any person who has served as trustee, director, or official of the Retirement Systems prior to the filing of the bankruptcy petition on May 3, 2017; (4) any person representing an investment fund that trades or has traded Puerto Rico bonds.

(5)    Each member of the Board of Directors shall be entitled to one (1) vote;

(6)    All Board of Directors decisions and actions shall require the affirmative vote of a majority of the members that make up the Board of Directors, and it is provided that, for certain purposes, FACSiR's corporate bylaws may require the approval of a greater number of directors;

(7)    The Chairperson of the Board of Directors shall be appointed by and from among the elected members of the Board of Directors; and

(8)    FACSiR's Administrator shall be selected by the Board of Directors and shall be an *ex officio* member thereof, although he/she will not have the right to vote, nor will his/her presence be decisive when determining *quorum*.

(c) Vacancies

A vacancy for the position of a member of the Board of Directors shall occur automatically, without any need for declaration or acknowledgement by any person, when said member is unable to exercise his/her position and duties due to death, removal, resignation, legal incapacity, or any reason other than the expiration of his/her term. When a vacancy for the position of a member of the Board of Directors occurs, the successor shall be chosen in the same manner as the previous incumbent, as soon as possible and never more than thirty (30) days after the vacancy occurs.

(d) Compensation

The members of the Board of Directors shall receive no compensation other than that corresponding to the positions or jobs they hold to be members of the Board of Directors. The work performed during business hours by the elected members of the Board of Directors representing the Participants of the Retirement Systems or FACSiR shall be compensated as time in special assignment away from their regular jobs in the Government of the Commonwealth of Puerto Rico, for which they will receive no additional compensation to the one they receive for their regular jobs in the Government of the Commonwealth of Puerto Rico, and FACSiR shall reimburse the corresponding government entity for the cost of the service.

(e) Approval and Amendment of Rules

As soon as it is feasible after the swearing-in of all the directors and the selection of the Chairperson of the Board of Directors, FACSiR will adopt rules and procedures to govern its activities under this Act. The Board of Directors may amend said rules and procedures from time to time.

(f) Quorum

A majority of the regular members of the Board of Directors shall constitute a quorum to make decisions or exercise any of FACSiR's powers or functions. One (1) or more members may participate in a meeting of the Board of Directors via teleconference or similar means of communication. Participation by said means shall constitute face-to-face participation in the meeting. Any actions necessary or permitted at any meeting of the Board of Directors shall be authorized without the need for a meeting provided that all the members of the Board of Directors give their written consent to such actions.

(g) Delegation

The Board of Directors may delegate to one (1) or more of its members, to the Administrator, or to officers, agents, and employees of FACSiR, those powers or responsibilities that the Board of Directors deem appropriate.

Article 3.07.- Investment Policy

(a) FACSiR shall invest its funds according to the provisions established in this Act, and to the rules and procedures that the Board of Directors may establish via regulations.

(b) The approved regulations, rules, and procedures shall adhere to all the restrictions established in investment guides for retirement plans of the public sector, to be adopted and enacted jointly by the Office of the Comptroller of Puerto Rico, created by virtue of Act No. 9 of July 24, 1952, as amended, and the Office of the Commissioner of Financial Institutions (OCFI), created by virtue of Act No. 4 of October 11, 1985, as amended, known as the "Office of the Commissioner of Financial Institutions Act."

(c) The Board of Directors shall adopt policies for the administration of the investments authorized by the provisions of this Act. The investment policy must include, but is not limited to, the following:

   (1) the criteria, requirements, and conditions for tendering, selecting, contracting, and evaluating the performance of the investment managers and advisers and of the custodian banks that must be hired to carry out the investments authorized by the provisions of this Act;

   (2) the policy for investing FACSiR resources in capital markets, modeled on the investment policies adopted by the ten (10) largest public sector funds, trusts, or retirement plans in the United States whose asset management for defined benefit plans represent ninety percent (90%) or more of total assets managed;

   (3) the rules for administering, leasing, selling, levying, or executing real estate acquired to generate income;

   (4) provisions related to ordering actuarial investigations to determine the financial solvency of the trusts under their custody and administration, adopting the regulations that may be necessary to guarantee the payment of pensions, annuities, benefits, and other receivables of Participants and Retirees, and approving the appropriate mortality tables for the actuarial valuation of all pensions and other benefits administered by FACSiR; and,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(5) provisions related to internal controls, audits, and ethics standards, as well as to conflicts of interest, preservation and systematization of printed or digital documents and minutes that highlight the discussions of the Board of Directors and its Committees regarding the management of FACSiR investments, and the public disclosure of financial, statistical, and actuarial information and any other official documents of FACSiR.

(d) Types of Authorized Investments

(1) FACSiR shall be authorized to invest all available resources that are not required for its current operation.

(2) Any investments made under the provisions of this Act shall be made with the foresight, care, and under the criteria that prudent, reasonable, and experienced people exercise in managing their own affairs for investment purposes and not for speculative purposes, while also considering the balance that must exist between return expectations and risk. FACSiR may not invest more than ten percent (10%) of its portfolio in alternative investment vehicles.

(3) FACSiR shall not be authorized to issue bonds, nor may it be compelled or pressured by the Government of the Commonwealth of Puerto Rico, its officials, agents, representatives, investment managers, and/or creditors into investing in their bonds.

(e) Return on Investments

(1) The investment policies and strategies adopted by FACSiR must seek an average annual return not to fall below four point fourteen percent (4.14%).


Article 3.08.- Fiduciary Duties

The Retirement Systems and FACSiR shall adopt as their own the definitions of trustee and their duties contained in parts 2509, 2510, and 2550 of Title 29 of the Code of Federal Regulations, with regulation identifier number (RIN) 1210-AB32, and shall be governed by them notwithstanding their validity or applicability under ERISA. In addition, the fiduciary duties shall

include: (1) ensuring the appropriate funding ratio in the Retirement Systems and FACSiR; (2) protecting the ability to pay existing benefits; (3) notifying the Legislature when the realized or projected funding ratio allows for reinstating or expanding benefits, beneficiaries, or participants; (4) providing financial advice to Participants and Retirees to maximize the return of their rights and benefits in the Retirement Systems and FACSiR; and (5) providing true, accurate, and/or timely information to Participants, Retirees, the Government of the Commonwealth of Puerto Rico and the general public regarding the economic and financial conditions faced by the Retirement Systems and FACSiR.

Article 3.09.- Preservation of Existing Benefits Prior to Bankruptcy

With the intention of being contractually bound, the Government of the Commonwealth of Puerto Rico agrees and undertakes with FACSiR and with any Participant or Retiree of the Retirement Systems or FACSiR –and authorizes FACSiR to include said commitment in the agreement with the Government of the Commonwealth of Puerto Rico– that:

(a) the Retirees of the Retirement Systems shall keep one hundred percent (100%) of the pensions, annuities, benefits, and other receivables that were in force against the Retirement Systems prior to the filing of the bankruptcy petition on May 3, 2017;

(b) the Participants shall preserve their accrual rights and other benefits to which they were entitled with as members of the Retirement Systems, as they may have been in force prior to the filing of the bankruptcy petition on May 3, 2017; and,

(c) any public employees who have been granted the Federal Social Security benefit after May 3, 2017, shall continue to enjoy said benefit.

Article 3.10.- Reinstatement of Forcibly Eliminated Benefits and Expansion of Eliminated Benefits to Participants and Retirees

Once the Appropriate Funding Ratio is reached, and to the extent that the actuarial valuation studies project that this will not represent a solvency risk or limit FACSiR's ability to sustain the Appropriate Funding Ratio, the Government of the Commonwealth of Puerto Rico, with the intention of being contractually bound, agrees and undertakes with FACSiR and with any Participant or Retiree of the Retirement Systems or FACSiR –and authorizes FACSiR to include said commitment in the agreement with the Government of the Commonwealth from Puerto Rico– to:

(a) restore the accrual rights in defined benefit programs for Participants for whom these rights were eliminated or detrimentally modified through the legislation of mandatory and non-voluntary programs, or the detrimental retroactive modification of programs to which they were eligible or in which they participated;

(b) restore the cost-of-living adjustment, health plan, summer bonuses, drug bonuses, and Christmas bonuses rights to Retirees for whom these rights were eliminated or detrimentally modified through the legislation of mandatory and non-voluntary programs, or the detrimental retroactive modification of programs to which they were eligible or of which they were beneficiaries;

(c) expand the rights and responsibilities of Participants in defined contribution programs or hybrid defined benefit and defined contribution programs, who have not elected to transfer to a defined contribution program or to hybrid defined benefit and defined contribution programs, so that: (1) their age of eligibility for retirement is lowered; (2) they are granted an irrevocable right to participate in a defined benefit retirement program with an annuity not to go below one and a half percent (1.5%) of the median compensation, multiplied by the number of years of credited service up to twenty (20) years, plus two percent (2%) of the median compensation, multiplied by the number of years of credited service in excess of twenty (20) years; or, (3) they are granted a combination of benefits (1) and (2);

(d) expand the cost-of-living adjustment, health plan, summer bonuses, drug bonuses, and Christmas bonuses rights to Retirees and Participants whose retirement programs, to which they contributed during their years of credited service, did not include them;

(e) expand the rights and responsibilities of Retirees enrolled in a defined contribution program, a hybrid defined benefit and defined contribution program, or a defined benefit program whose benefits became lower than those that were in effect at the beginning of their years of credited service through the legislation of mandatory and non-voluntary detrimental modifications, so that they may make the necessary contributions, if any, to qualify for a defined benefit program similar or better to the one in force at the beginning of their years of credited service;

(f) expand the eligibility of FACSiR Participants to include temporary public employees, seasonal public employees, employees of private sector companies contracted by the Government of the Commonwealth of Puerto Rico, FACSiR, and any private sector companies hired by FACSiR, and any private sector companies with other investments, grants, exemptions, concessions, or participation from the Government of the Commonwealth of Puerto Rico, and provide the employer responsibilities in each case;

Article 3.11.- Participants' Individual Contributions

Participants shall be responsible for making individual contributions based on the salary earned at the time the individual contribution is withheld. Individual contributions shall be made according to progressive rates, where those who earn higher salaries will contribute a greater portion of their salary and those who earn lower salaries will contribute a smaller portion of their salary. In aggregate, the individual contributions must produce for FACSiR an income equivalent to the average value of ten percent (10%) of ordinary payroll expenses for the Government of the Commonwealth of Puerto Rico.

Article 3.12.- Employer Contributions by the Government of the Commonwealth of Puerto Rico

As an employer, the Government of the Commonwealth of Puerto Rico shall be responsible for making employer contributions towards the pensions of its employees eligible to contribute to the Retirement Systems, and shall make them based on the salary earned by its employees at the time their individual contribution is withheld, and the employer contribution is sent to the Trust. The remittance of employer contributions shall occur simultaneously with the remittance of individual contributions. In addition to being subject to lawsuits and other civil actions by the Trust, the Participants, and the Retirees, those public officials who intentionally fail to comply with the simultaneity of the remittances of individual and employer contributions, as provided herein, shall have committed embezzlement of public funds, as defined in Article 264 of Act 146-2012, as amended, known as the "Criminal Code of Puerto Rico."

The employer contributions shall be made according to progressive rates, where the Government of the Commonwealth of Puerto Rico will contribute a smaller portion toward those who earn higher salaries, and a higher portion toward those who earn lower salaries. In aggregate, the employer contributions must produce for FACSiR an income equivalent to the average value of ten percent (10%) of ordinary payroll expenses for the Government of the Commonwealth of Puerto Rico.

Article 3.13.- Restitution of Individual Contributions and Recognition of Damages for Unearned Interest under the Retirement Savings Account Program

With the intention of being contractually bound, the Government of the Commonwealth of Puerto Rico agrees and undertakes with FACSiR and with any Participant or Retiree of the Retirement Systems or FACSiR –and authorizes FACSiR to include said commitment in the agreement with the Government of the Commonwealth of Puerto Rico– to send to FACSiR immediately upon approval of an Adjustment Plan in accordance with the provisions of this Act, the amount of two billion, sixty-three million, three hundred seventy-six thousand dollars ($2,063,376,000) to restore the individual contributions withheld and not remitted to the individual accounts of Participants of defined contribution programs from January 1, 2000 until the filing of the bankruptcy petition on May 3, 2017. In addition, the Government of the Commonwealth of Puerto Rico will recognize a credit in the aggregate amount of two hundred thirty-two million, one hundred sixty-three thousand dollars ($232,163,000) to compensate for compound interest not received in the individual accounts of the Participants of these programs during the period in question.

For these purposes, the amount of one billion, four hundred million dollars ($1,400,000,000), consigned in Joint Resolution 46-2019, shall be allocated to FACSiR. Likewise, the amount of eight hundred ninety-five million, five hundred thirty-nine thousand dollars ($895,539,000) shall be allocated, charged to the General Fund's income in excess of the amount included in the Certified Budget for fiscal year 2018-2019 and fiscal year 2019-2020, deposited in the uncommitted funds of the State Treasury as certified by AAFAF in the weekly cash flow reports in the Single Treasury Account. The Office of Management and Budget, the Department of the Treasury, and the Puerto Rico Fiscal Agency and Financial Advisory Authority shall be authorized to carry out all necessary and appropriate acts to implement these transfers.

## CHAPTER 4 – ADJUSTMENT PLAN

Article 4.01.- Adjustment Plan's Conformance to Public Policy

Under a Debt Adjustment Plan that conforms the Public Policy provided for in this Act, in accordance with Section 1122 of the Bankruptcy Code, the classes of creditors would be constituted as follows:

(a) Claims on Contested Bonds: All natural or legal persons who have a creditor right to the debt service attributable to any of the Contested Bonds would be consolidated under

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

the same class of creditors. These claims shall have no recovery whatsoever under the provisions of this Debt Adjustment Plan. This class of creditors will be negatively affected and their opposition to the Debt Adjustment Plan shall be presumed, just as the opposition of the Unsecured Creditors class under the Sales Tax Financing Corporation's Debt Adjustment Plan, confirmed by the United States District Court for the District of Puerto Rico on February 4, 2019, was presumed. The total value of these claims, prior to the filing of the bankruptcy petition on May 3, 2017, is for an amount that shall be no less than twenty-eight billion, five hundred thirty-one million, one hundred twenty-one thousand five hundred fifty-eight dollars ($28,531,121,558), distributed in the annual principal and interest payment from fiscal year 2016-2017 (effective date of Section 405 of PROMESA) to fiscal year 2057-2058 (last maturity date of the Contested Bonds identified in subsections (i), (ii) and (iii) of section (e) of Article 1.05 of this Act.

(b) Claims on Uncontested Bonds: The claims of all natural or legal persons who have a creditor right to the debt service attributable to any of the Uncontested Bonds would be divided into two classes. These claims shall have a maximum aggregate recovery in the total cost of amortization of their bonds equivalent to fifty-eight percent (58%), distributed as follows:

   (i)    Claims on Uncontested Bonds payable with the State Treasury's general income for which the full faith and credit of the Government of the Commonwealth of Puerto Rico was pledged: All natural or legal persons who have a creditor right to the debt service attributable to any of the general obligation Uncontested

Bonds, or otherwise payable with general income legislated by the Government of the Commonwealth of Puerto Rico, income deposited in the State Treasury, or for which the full faith and credit of the Government of the Commonwealth of Puerto Rico has been pledged, would be consolidated under the same class of creditors. These claims do not include Uncontested PBA Bonds claims whose repayment is backed by the full faith and credit of the Government of the Commonwealth of Puerto Rico, and will have a seventy-eight percent (78%) recovery rate if the class votes to accept the Debt Adjustment Plan. If the class does not vote to accept, or votes not to accept the Debt Adjustment Plan, their recovery rate will be nineteen percent (19%). The Government of the Commonwealth of Puerto Rico's compliance with the recovery provided in the Adjustment Plan for this class shall be achieved through one (1) new bond issue to replace the Uncontested Bonds, payable with the State Treasury's general income, including the refund ("clawback") of any general income that would have been used for the service of the outstanding debt of the HTA, CCDA, PRIFA and the Children's Trust, applying the recovery rate on the same cash flow that it would have had under the payment terms and due dates originally agreed to for amortization. The total value of these claims, prior to the filing of the bankruptcy petition on May 3, 2017, is for an amount not to exceed six billion, one hundred eighty-one million, four hundred fifty-eight thousand, forty-seven dollars ($6,181,458,047), distributed in the annual principal and interest payment from fiscal year 2016-2017 (effective date of Section 405 of PROMESA) to fiscal year 2042-2043, last maturity date of the Uncontested Bonds payable with the State Treasury's general income.

(ii)   Claims on Uncontested Bonds payable with the Public Company's own income: All natural or legal persons who have a creditor right to the debt service attributable to any of the Uncontested Bonds payable with the corresponding Public Company's own income, generated in the ordinary performance of its legally authorized business activities, would be consolidated under the same class of creditors. These claims will have a twenty-five (25) percent recovery rate if the class votes to accept the Debt Adjustment Plan pursuant to Section 1126 of the Bankruptcy Code. If the class does not vote to accept, or votes not to accept the Debt Adjustment Plan, their recovery rate will be ten percent (10%). The Government of the Commonwealth of Puerto Rico's compliance with the recovery provided in the Adjustment Plan for this class shall be achieved through one (1) new bond issue to replace the Uncontested Bonds, payable with the corresponding Public Company's own income, applying the recovery rate on the same cash flow that it would have had under the payment terms and due dates originally agreed to for amortization. The total value of these claims, prior to the filing of the bankruptcy petition on May 3, 2017, is for an amount not to exceed

three billion, six hundred seventy-eight million, three hundred seventy-four thousand, four hundred sixty-two dollars ($3,678,374,462), distributed in the annual principal and interest payment from fiscal year 2016-2017 (effective date of Section 405 of PROMESA) to fiscal year 2040-2041, last maturity date of the Uncontested Bonds payable with the PBA's own income.

(c) Claims from the Retirement Systems' Retirees and Participants: The claims of all natural or legal persons who have a creditor right to a pension, annuity, benefits or other receivables against the Retirement Systems and, therefore, against the Accrued Pension Payment Account and the Defined Contribution Account, would be divided into two classes. The Retirement Systems' Retirees and Participants contributed substantial reductions toward the adjustment of the debts of the Government of the Commonwealth of Puerto Rico, prior and after the filing of the bankruptcy petition on May 3, 2017, and therefore, their affected and modified claims shall be recognized as follows:

(i) Claims from the Retirement Systems' Retirees and Participants with Retirement Savings Accounts: All natural or legal persons who have a creditor right to a pension, annuity, benefits, or other receivables against the Retirement Systems, including annuities or distributions resulting from their participation in any of the defined contribution programs, hybrid defined contribution programs, or retirement savings account programs under Act No. 447 of May 15, 1951, as amended, or Act 160-2013, as amended, would be consolidated under the same class of creditors. Any forced cuts to the pension rights, annuities, bonuses, benefits, accruals, distributions, and other receivables of every person who is part of this class, made prior to the filing of the bankruptcy petition on May 3, 2017, in addition to the cost-of-living adjustments lost after fiscal year 2006-2007, shall be recognized as damages for the purposes of this Debt Adjustment Plan's compliance with Section 1124 and Section 1129(a)(10) of the Bankruptcy Code. In addition, the following shall be recognized as damages: (1) the liquidation of the Retirement Systems and the resulting downgrading of that portion of their claim, from secured against the assets of the Retirement Systems to unsecured against the State Treasury's general income through a pay as you go scheme,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

which occurred after the bankruptcy petition was filed with the enactment of Act 106-2017 on August 23, 2017; (2) the reduction in yield and accrual of interest on those individual contributions made under their corresponding defined contribution programs, hybrid defined contribution programs, or retirement savings account programs upon the freezing or liquidation of these programs without the resulting recognition of an individual distribution of the yield they would accrue in the General Fund's segregated bank account for the payment of accrued pensions, to which their contributions and unearned interest were transferred with the enactment of Act 106-2017; and (3) if they vote to accept this Debt Adjustment Plan, the conversion of their individual credit rights to their contributions and the yield thereon, secured against a figurative individual account, to a collective credit right that will be prorated and secured against the aggregate assets of FACSiR. No person included in this class shall see any additional reductions to their pensions, annuities, benefits, distributions or other receivables or guarantees other than those recognized in this subsection. The Government of the Commonwealth of Puerto Rico's compliance with the recovery provided in the Adjustment Plan for this class shall be achieved through: (1) the establishment of FACSiR and the contractual relationship between the Government of the Commonwealth of Puerto Rico and FACSiR for the irrevocable transfer of ownership of FACSiR's Income, as modeled in Chapter 3 of this Act; and (2) the authorization granted to AAFAF, OMB and the Department of the Treasury to carry out the cash disbursement, no later than July 1 of each year after the confirmation of the Adjustment Plan, of the amounts corresponding to FACSiR's Income for that year, and the cash disbursement of the amounts necessary to compensate non-recurring claims corresponding to FACSiR's Income, by no later than June 30 of the fiscal year in which the Debt Adjustment Plan is confirmed. The cash disbursements shall be charged to the General Fund's income in excess of the amount included in the Certified Budget for fiscal year 2018-2019 and fiscal year 2019-2020, and any subsequent fiscal year, deposited in the uncommitted funds of the State Treasury as certified by AAFAF in the weekly cash flow reports in the Single Treasury Account. The total value of these claims shall be provided and certified under oath by the Retirement Systems Administrators.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

(ii)    Claims from the Retirement Systems' Retirees and Participants without a Retirement Savings Account: All natural or legal persons who have a credit right to a pension, annuity, benefits, or other receivables against the Retirement Systems, excluding annuities or distributions resulting from their participation in any of the defined contribution programs, hybrid defined contribution programs, or retirement savings account programs under Act No. 447 of May 15, 1951, as amended, or Act 160-2013, as amended, would be consolidated under the same class of creditors. Any forced cuts to the pension rights, annuities, bonuses, benefits, accruals, distributions, and other receivables of every person who is part of this class, made prior to the filing of the bankruptcy petition on May 3, 2017, in addition to the cost-of-living adjustments lost after fiscal year 2006-2007, shall be recognized as damages for the purposes of this Debt Adjustment Plan's compliance with Section 1124 and Section 1129(a)(10) of the Bankruptcy Code. In addition, the liquidation of the Retirement Systems and the resulting downgrading of that portion of their claim, from secured against the assets of the Retirement Systems to unsecured against the State Treasury's general income through a pay as you go scheme, which occurred after the bankruptcy petition was filed with the enactment of Act 106-2017 on August 23, 2017, shall be recognized as damages. No person included in this class shall see any additional reductions to their pensions, annuities, benefits, distributions or other receivables or guarantees other than those recognized in this subsection. The Government of the Commonwealth of Puerto Rico's compliance with the recovery provided in the Adjustment Plan for this class shall be achieved through: (1) the establishment of FACSiR and the contractual relationship between the Government of the Commonwealth of Puerto Rico and FACSiR for the irrevocable transfer of ownership of FACSiR's Income, as modeled in Chapter 3 of this Act; and (2) the authorization granted to AAFAF, OMB and the Department of the Treasury to carry out the cash disbursement, no later than July 1 of each year after the confirmation of the Adjustment Plan, of the amounts corresponding to FACSiR's Income for that year, and the cash disbursement of the amounts necessary to compensate non-recurring claims corresponding to FACSiR's Income, by no later than June 30 of the fiscal year in which the Debt Adjustment Plan is confirmed.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

The cash disbursements shall be charged to the General Fund's income in excess of the amount included in the Certified Budget for fiscal year 2018-2019 and fiscal year 2019-2020, and any subsequent fiscal year, deposited in the uncommitted funds of the State Treasury as certified by AAFAF in the weekly cash flow reports in the Single Treasury Account. The total value of these claims shall be provided and certified under oath by the Retirement Systems Administrators.

(d) General Claims from Unsecured Creditors: All natural or legal persons who have an unsecured credit right against the State Treasury's general income, and who have not been included in the classes of creditors listed in sub-sections (a), (b) and (c) of this Article, would be consolidated under the same class of creditors. The AAFAF shall perform a cash flow and debt sustainability analysis, in accordance with the provisions of this Act's Public Policy, to determine the size of the recovery that could reasonably be provided to compensate general claims from unsecured creditors of the Government of the Commonwealth of Puerto Rico, whose claims are based on payment owed for goods supplied or services rendered to the Government of the Commonwealth of Puerto Rico, worker-employer disputes, and judgments or causes of action against the Government of the Commonwealth of Puerto Rico.

Article 4.02.- Ban on Imposing a Debt Adjustment Plan on Retirees and Participants

If the Adjustment Plan does not comply with the provisions of Section 1129(a)(8) of the Bankruptcy Code due to a failure to obtain an affirmative vote from the classes of creditors that group the Retirement Systems' Retirees and Participants' claims, the Government of the Commonwealth of Puerto Rico will be barred from engaging in conversations on designing, proposing, advancing, or implementing any Adjustment Plan that contemplates the use of the mechanism provided in Section 1129(b) of the Bankruptcy Code to the detriment of any of the classes of creditors that group the claims of Retirees and Participants.

## CHAPTER 5 – MISCELLANEOUS PROVISIONS

Article 5.01.- Severability

This Act shall be interpreted in accordance with the Constitution of Puerto Rico and the Constitution of the United States of America. Should any clause, paragraph, subparagraph,

154

sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, subheading or part of this Act be annulled or declared unconstitutional, the order issued to that effect shall not affect, harm, or invalidate the remainder of this Act. The effect of said order shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, subheading or part thereof that was thus annulled or declared unconstitutional. Should the application to a person or to a circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, subheading or part of this Act be invalidated or declared unconstitutional, the resolution, opinion, or judgment issued to that effect shall not affect or invalidate the application of the remainder of this Act to those people or circumstances in which it can be validly applied. It is the express and unequivocal will of this Legislature that the courts enforce the provisions and application of this Act even if any of its parts are voided, annulled, invalidated, damaged, or declared unconstitutional, or even if its application to any person or circumstance is voided, invalidated, or declared unconstitutional. If the declaration of unconstitutionality of any heading, clause, paragraph, subparagraph, subpart, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, subheading or part of this Act is based on the federal preemption doctrine, the supremacy clause, or the plenary powers of the Constitution of the United States manifested through PROMESA, or otherwise invalidated by its inconsistency with the powers conferred or delegated to the FOMB under Titles I, II, III, and VI of PROMESA, the validity of those parts of this Act thus declared shall be temporarily suspended until the Expiration of the FOMB materializes, in accordance with Section 209 of PROMESA.

Article 5.02.- Supremacy

The provisions of this Act shall prevail over any other general or specific provision of any other law or regulation of the Government of the Commonwealth of Puerto Rico that is incompatible with this Act.

Article 5.03.- Effectiveness

This Act shall enter into effect immediately upon its enactment.


/Illegible signature/
President of the House

/Illegible signature/
President of the Senate


Enacted on June 9, 2021

/Illegible signature/
Governor

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

Case: 23-08971-LT Doc: 803-2 Filed: 07/10/21 Entered: 07/10/21 16:04:33 Desc:
Debtor's Ex11 Page 160 of 162

[Blank page]

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*

This _House_ Bill No. _120_
Was received by the Governor
On this _28th_ day of _May_
of 2021 at _____4:21:04_____
_____/Illegible signature/_____
ADVISOR

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*1/ JULY /2021 – PHILLIP BERRYMAN-ATA-certified Spanish-English #432118*
*By Targem Translations Inc.*



**TRANSLATOR'S CERTIFICATE OF TRANSLATION**

Translation from: Spanish (Puerto Rico) into English (US)
TARGEM Translations Inc.

I, PHILLIP BERRYMAN, ATA-certified Spanish-English #432118, acting as translator at TARGEM Translations Inc., a NEW YORK City corporation, with its principal office at 185 Clymer Street, Brooklyn, NY, 11211, USA, certify that:

the English translated document is a true and accurate translation of the original Spanish and has been translated to the best of my knowledge.

Original Document Name: Act 7-2021

Signed this 2nd day of July 2021



Phillip Berryman

