**O'Melveny**

O'Melveny & Myers LLP
610 Newport Center Drive
17th Floor
Newport Beach, CA 92660-6429

T: +1 949 823 6900
F: +1 949 823 6994
omm.com

File Number:

September 8, 2021

**Elizabeth L. McKeen**
D: +1 949 823 7150
emckeen@omm.com

**VIA E-MAIL**

Douglas S. Mintz
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005

Douglas Koff
Abbey Walsh
Peter J. Amend
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Arturo J. García-Solá
Alejandro J. Cepeda-Diaz
Nayuan Zouairabani
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918

Carmen D. Conde Torres
Luisa S. Valle Castro
C. CONDE & ASSOC. LAW OFFICES
254 San José Street, Suite 5
San Juan, PR 00901-1523

Re: **DRA Parties' Discovery to AAFAF in Connection with Plan Confirmation**

Counsel:

We write regarding the DRA Parties' document requests ("Requests")[1] and informal supplemental document requests ("Supplemental Requests")[2] in connection with Plan discovery, and to follow up on the parties' related August 31, 2021 meet and confer call, and the DRA Parties' September 3, 2021 email.[3]

While the DRA Parties accuse AAFAF of delay, it is the DRA Parties, not AAFAF, that are the cause of the timing issue raised in your September 3, 2021 email and any resulting problems their expert is having. Notwithstanding that the DRA Parties filed a motion for relief from the automatic stay more than two years ago, on June 25, 2019,[4] and again more than five months ago, on March 31, 2021,[5] the DRA Parties made no attempt to discover the materials they now claim are critical to their arguments in connection with either of those motions or in

---

[1] The DRA Parties' First Request for Production of Documents to the Financial Oversight and Management Board for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority, served August 6, 2021.

[2] Email from T. Mott (Aug. 26, 2021). Supplemental Requests 8-14 are largely duplicative of Requests 6-7, 12, 16, 24, 20, and 26.

[3] Email from T. Mott (Sept. 3, 2021).

[4] Case No. 17-3283, ECF No. 7643.

[5] Case No. 17-3283, ECF No. 16276.

Austin • Century City • Dallas • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

DRA Ex. 421

Rule 2004 discovery.[6] And despite having the extensive Revenue Bonds Productions[7] AAFAF made in response to requests covering substantially the same issues propounded by the monoline insurers for months, it appears that you have begun reviewing them only just now. As you know, the Court ordered back in March 2020 that the DRA Parties receive the Revenue Bonds Productions and be entitled to meet and confer regarding those productions.[8] Between March 2020 and August 2021, the DRA Parties did not send any meet and confer letters, or ask any questions at telephonic meet and confers, regarding the contents of those documents.[9] Then, on August 6, 2020, the DRA Parties served document requests largely seeking documents from the Revenue Bond Productions the DRA Parties already have but apparently did not review.[10]

After AAFAF served its responses on August 13, 2021, the DRA Parties then waited 13 days, until August 26, 2021, to submit supplemental requests, many of which were vague. The DRA Parties unilaterally demanded production within two business days. The supplemental requests largely requested information reflected in the Revenue Bond Productions, and for the first time raised granular questions about those documents that the DRA Parties could easily have raised earlier. AAFAF is working diligently to respond to the DRA Parties request, but DRA's unilateral imposition of arbitrary, unreasonable deadlines and mischaracterization of the parties' discussions is improper.[11]

Furthermore, the DRA Parties' requests disregard the Court's directive that discovery be limited to requests regarding "critical contested issues" intended to ensure that "resources are not wasted." *See* Tr. on Procedures Order at 15, 93 (July 14, 2021). For instance, the DRA Parties are well aware that in the HTA Lift Stay Proceeding and the HTA Adversary Proceeding the Court refused to require custodian-and-search-term review for communications underlying

---

[6] Nor did the DRA Parties, unlike many other creditors, file a joinder to Ambac Assurance Corporation's Assets 2004 Motion, ECF No. 9022, and Cash 2004 Motion, ECF No. 9023.

[7] The Revenue Bonds Productions refer to documents produced in connection with the HTA Lift Stay Proceeding, Case No. 17-03567, ECF No. 673, and the HTA Adversary Proceeding, Case No. 20-00005.

[8] Order at 6, Case No. 17-03283, ECF No. 12005; *see also* Order at 6, Case No. 20-00005, ECF No. 41.

[9] It appears the DRA Parties did not even open many of the Revenue Bonds Productions for months after receiving them. On May 20, 2021, the data vendor for counsel for the DRA Parties requested that counsel for AAFAF provide the passwords for the prior 10 productions going back to March 29, 2021, suggesting that these productions had not previously been opened. While we do not disagree that you have "have spent a great many hours and days combing through the previously-produced materials," Email from T. Mott (Sept. 3, 2021), it appears you began doing so only after AAFAF responded to the DRA Parties' confirmation discovery requests.

[10] The DRA Parties also sought other categories of documents that they already have or could have obtained. For example, Request 2 seeks the amount of money that HTA has paid on the GDB loans, but the DRA Parties could not answer AAFAF's question at the August 31 meet and confer as to why the DRA Parties, as the successor to those loans, would not already have that information.

[11] Your September 3, 2021 email contends that AAFAF, in responding to your August 26, 2021 email—a mere hour after you sent the email—represented "that AAFAF would be working expeditiously to complete document collections with respect to those specific categories of information." Email from T. Mott (Sept. 3, 2021). This grossly misstates the email, which provided: "We are reviewing the follow up requests you just sent and will be in touch early next week. While AAFAF will work expeditiously to address the issues you raise, it will not be in a position to respond to all fifteen of these requests and complete any associated document collection by Monday as your email demands." Email from A. Pavel (Sept. 3, 2021). Your contention that AAFAF agreed wholesale to all 15 Supplemental Requests a mere hour after you sent the requests is not in good faith.

the HTA Bonds[12] or the production of draft, non-governing documents.[13] Nevertheless, the DRA Parties at the August 31, 2021 meet and confer demanded for all its requests that AAFAF locate the appropriate custodians and determine if their text messages for the past decade have been preserved. The DRA Parties also demanded drafts of HTA's financial statements, not because the financial information was unavailable (AAFAF provides voluminous reporting on its website), but because the DRA Parties said they preferred to see the information in the format of a financial statement.

AAFAF therefore objects to any argument that AAFAF is responsible for delay. AAFAF will nevertheless strive to substantially complete its production by next week, but reserves the right to amend this timeline, particularly if government employees inform AAFAF in good faith that adherence to it would be unduly burdensome of government operations.

AAFAF further reserves the right to amend the timeline if AAFAF, in the process of meet and confer, agrees to conduct additional searches for the DRA Parties. AAFAF is currently conducting searches, subject to its objections, and to the extent provided in its responses, in response to Requests 2, 20,[14] 26,[15] and 27, and Supplemental Requests 6-7, and 14-15. On September 7, 2021, AAFAF produced and updated Fund 278 Accreditation report with figures through June 2021[16] and the account statements it has collected thus far in response to DRA request 20.

AAFAF further writes with regard to the issues below.

I. **Categorical Privilege Log**

The DRA Parties on the August 31 meet and confer requested that the Government Parties propose rules to govern the creation of categorical privilege logs. AAFAF agrees to create a categorical privilege log as follows:

AAFAF will create a categorical privilege log, to the extent there are privileged documents to log, solely for the Requests and Supplemental Requests for which AAFAF has agreed to conduct a search for documents. Furthermore, AAFAF will only log privileged,

---

[12] Case No. 17-3283, ECF No. 16236 (stating the extent to which the monolines' motion to compel would be granted).

[13] Case No. 20-00003, ECF No. 191.

[14] AAFAF further directs the DRA Parties to the following bank account statements that the DRA Parties requested in Request 20: (a) Oriental -2489: HTA_STAY0046999, HTA_STAY0049933, HTA_STAY0049944 HTA_STAY0049940, HTA_STAY0049948, HTA_STAY0049956, HTA_STAY0049959, HTA_STAY0049962, HTA_STAY0049971, HTA_STAY0 052841, HTA_STAY0052859, HTA_STAY0052874, HTA_STAY0052880, HTA_STAY0052925, HTA_STAY0052932, HTA_STAY0052935, HTA_STAY0052938, HTA_STAY0052941, HTA_STAY0054290; (b) Oriental -9874: HTA_STAY0025874; HTA_STAY0050012; (c) GDB -0208: HTA_STAY0050614, HTA_STAY0050753; (d) GDB -4276: HTA_STAY0012476, HTA_STAY0012478, HTA_STAY0012480, HTA_STAY0012482, HTA_STAY0012484, HTA_STAY0012486, HTA_STAY0050779, HTA_STAY0052618; (e) GDB -3466: HTA_STAY0011743, HTA_STAY0050755; (f) BNYM -6814: HTA_STAY0029608; (g) BPPR -5116: HTA_STAY0047133, HTA_STAY0047185. Furthermore, the DRA Parties requested Banco Popular bank statements preceding February 2014. AAFAF directs the DRA Parties to their meet and confer letter in the HTA Adversary Proceeding attaching a letter from Banco Popular stating that in accordance with retention law it destroyed pre-February 2014 statements. See Case No. 17-3283, ECF No. 16631-10.

[15] As discussed at the August 31, 2021 meet and confer, AAFAF also agrees to search for offers to purchase the referenced properties.

[16] AAFAF_CONF_0004584.

responsive documents that are actually collected. AAFAF does not agree to search for categorically privileged documents, such as attorney-client communications, attorney work product, or pre-decisional and deliberative government communications solely for the purpose of logging them.

## II. Remaining Issues – DRA Supplemental Requests

### Supplemental Request 3

- *Documents sufficient to identify the category or categories of revenue related to March 2016 withdrawal amounts totaling $53,667,572.93 identified as "Transfers not identified" within the Fund 278 Accreditation Report bearing Bates No. HTA_STAY0008372"*

On the August 31 meet and confer, AAFAF explained that the referenced $53,667,572.93 figure is not a hard-coded number, but rather references the categories of revenue in cells L39, L40, L41, and L42, which correspond to rows for "Petroleum HTA," "Tows," and "Transit Fines." The DRA Parties agreed to re-review the spreadsheet.

The DRA Parties' September 3, 2021 email simply states that "[n]either the cells nor any other information in the document provide any information regarding what category or categories of revenue the 'Transfers not identified' should be classified under," without any mention at all of rows L39, L40, L41, and L42. AAFAF requests the DRA Parties provide a more detailed explanation.

### Supplemental Request 4

- *Documents similar to CW_STAY0049730 (or other similar PRIFAS exports), but showing HTA Fund 278 transfers from the Commonwealth that include payment amounts, payment dates, invoice dates, and accounting dates, for fiscal years 2016 through 2021"*

On the August 31 meet and confer, AAFAF directed the DRA Parties to the PRIFAS Fund 278 and 793 exports produced in the Revenue Bonds Productions.[17] These extracts can be filtered for HTA (Column B, filter DeptID for 0660000, which is the DeptID for HTA)[18] and by type of revenue (Column M), and the extracts show monetary amounts and accounting and invoice dates for each transaction. The DRA parties agreed to re-review the exports.

### Supplemental Request 5

- *Documents similar to CW_STAY0048545 (or other similar PRIFAS exports), but showing Fund 278 revenue applied to HTA with corresponding cash transfer dates from the Commonwealth to HTA, for fiscal years 2016 through 2021*

As mentioned in AAFAF's above response to Supplemental Request 4, the DRA Parties already have PRIFAS exports showing the monetary amounts for particular accounts and funds applied to HTA. The exports, as mentioned, contain the accounting date and the invoice date

---

[17] CW_STAY0048545, CW_STAY0048568

[18] The DRA Parties should already know that 0660000 corresponds to HTA. AAFAF Letter to Monolines (Mar. 13, 2020), ECF No. 13007-23 (providing the information in response to the monolines specific question on this issue). AAFAF has also produced the PRIFAS data dictionary and manuals explaining the use and purpose of various PRIFAS data fields. CW_STAY0010548, CW_STAY0048305 - CW_STAY0048543.

4

(Columns K and T). It is not clear why the DRA Parties require production of "cash transfer dates." Regardless, AAFAF has already produced the bank account statements from the relevant bank accounts, and has agreed to collect and produce additional bank account statements. These bank account statements show the cash transfer dates.

**Supplemental Request 8**

- *Financial statements for HTA for FY2020 and FY2021. To the extent financial statements have not been issued for these years, we will need draft financial statements.*

As we explained on the meet and confer, the HTA financial statements for FY2020 and FY2021 are not yet released, and AAFAF will not produce draft financial statements. AAFAF produces consistent and voluminous cash reporting on its website. At the meet and confer, the DRA Parties' only response was that they would prefer to review the underlying cash information in the form of a financial statement. This is no justification for the burden and disruption to government operations that would be associated with turning the ongoing process to prepare financial statements into litigation fodder.

**Supplemental Request 9**

- *"Documents (analyses, memoranda, policies, procedures, guidelines, etc.) for every fiscal year from FY 2016 to the present concerning: (i) whether or not the Commonwealth had a balanced budget; (ii) whether or not the available revenues of the Commonwealth were insufficient to meet the appropriations; and (iii) the amount necessary and to be retained for there to be sufficient revenues to meet the appropriations.*
    - *The links on publicly available sources identified in the responses to RFP's 7 – 9 do not contain information or documents responsive to these requests. We again stress our request for documentation regarding assessments prepared, on a fiscal-year-by-fiscal-year basis, as to whether the budgets for FY 2016 to present constitute "balanced budgets" and whether the revenues in those budgets are sufficient (or not) to meet the appropriations."*

As we explained on the August 31 meet and confer, the DRA Parties misunderstand how the Commonwealth's budget is put together. The Commonwealth each year receives correspondence from the Oversight Board, specifying the amounts allowed to be spent, and the budget is created based on that revenue letter. In addition to pointing the DRA Parties to the certified Commonwealth Fiscal Plan and Budget, AAFAF also points the DRA Parties to the government-proposed versions of the fiscal plan and budget, available on AAFAF's website.[19]

Your September 3, 2021 email does not mention our August 31, 2021 discussion on this point at all.

---

[19] https://aafaf.pr.gov/financial-documents/fiscal-plans/; https://aafaf.pr.gov/financial-documents/budgets/.

**Supplemental Request 10**

- "Documents sufficient to identify the source, amount and use of Clawback funds disbursed for purposes other than payment of GO debt (for each fiscal year from FY 2016 to present).
    - The response to RFP No. 12 merely points to the Commonwealth's certified Fiscal Plans and Budgets, which are not responsive to this request. Accordingly, we reiterate our request that AAFAF produce documents as to how the Clawback funds were used from FY 2016 to the present, on a fiscal-year-by-fiscal-year basis, including, but not limited to: (i) where did the funds go; (ii) what were they used for; and (iii) in what amount."

AAFAF explained on the August 31, 2021 call that the Clawback funds are commingled in the TSA. AAFAF therefore directed the DRA Parties to the Fiscal Plan and Budget, which shows where the commingled money goes and for what purposes.

**Supplemental Request 11**

- "Documents (analyses, memoranda, policies, procedures, guidelines, etc.) concerning the treatment, use, classification and financial recording of the Clawback funds and implementation/compliance with the Executive Orders 2015-46, 2016-30 and 2016-31.
    - The links to publicly available sources or material identified in response to RFP 16 do not contain information or documents responsive to this request. Also, the search of the BDO production, as identified at FN.94 in your responses, did not produce any documents; and the search of the KPMG production, as identified at FN.95, only returned 5 documents. The search for the PRIFA Manuals, using the bates numbers identified at FN.93, only produced documents from CW_Stay0048342 to CW_Stay0048543. We request that AAFAF produce documents responsive to this request as well as the missing documents."

The parties did not discuss this request at the August 31, 2021 meet and confer. The Revenue Bonds Productions, including the auditor productions cited in your email, provide sufficient information to satisfy this request. In addition to the financial statements, public reporting, PRIFAS materials, and auditor productions cited in AAFAF's response to Request 16, AAFAF directs the DRA Parties to accounting materials underlying HTA's and the Commonwealth's financial statements in the Revenue Bonds Productions, which AAFAF produced in response to the Court granting a motion to compel on this specific issue, of which the DRA Parties should be well aware.[20]

Furthermore, it is unclear what the DRA Parties mean when they say (a) the BDO production "did not produce any documents," (b) the KPMG production "only returned 5 documents," and (c) the cited range of PRIFAS materials "only produced documents from CW_Stay0048342 to CW_Stay0048543." The BDO Production consisted of 126 documents; the KPMG Production consisted of 150 documents; and the PRIFAS manuals cited were from

---

[20] HTA_STAY0053062 - HTA_STAY0053323, HTA_STAY0054046 - HTA_STAY0054048, HTA_STAY0054567; CW_STAY0048569, CW_STAY0049152 - CW_STAY0049255, CW_STAY0049256, CW_STAY0049267 - CW_STAY0049268.

DRA Ex. 421

O'Melveny

CW_STAY0048305 to CW_STAY0048543, which is 5 documents, but you say you only have CW_STAY0048342 to CW_STAY0048543, which is four documents. To the extent the DRA Parties still have not accessed third-party materials produced months ago in Revenue Bond Discovery, AAFAF is willing to coordinate to facilitate their access. To facilitate those efforts, AAFAF requests that the DRA Parties provide a list of the third party Revenue Bond production they have accessed.

**Supplemental Request 12**

- "Documents showing the alleged total value of the Debtor's assets and which identify the value of those valued at $1M or more.
    - The links to general public information identified in the response to RFP No. 24 are not responsive to the request."

The DRA Parties do not provide any reason for why public property registries and inventories are non-responsive, and they did not raise this issue at meet and confer. The DRA Parties also do not make any attempt to justify why "assets" should be defined as anything other than real property assets.

Furthermore, Supplemental Request 12 does not mention that AAFAF's response to Request 24 directed the DRA Parties to AAFAF's production in the Assets Rule 2004 proceeding. This production contained numerous deeds, contracts, and property registries, which AAFAF recently mapped out in a public filing defending against Ambac Assurance Corporation's supplemental Rule 2004 motion in that proceeding.[21] It is unclear whether the DRA Parties have reviewed this production, which is available on the Plan Depository.

**Supplemental Request 13**

- "Documents showing the current value of the Treasury Building and the former PR Department of Justice Building.
    - The documents and links to general public information and/or electronic filing platforms identified in the response to RFP 26 are not responsive to this request. However, we look forward to discussing AAFAF's reasonable search for non-privileged documents responsive to this request."

At the August 31 meet and confer, the DRA Parties requested that AAFAF include within its search any offers to purchase the referenced properties. AAFAF agrees to search for offers to purchase the referenced properties in connection with Requests 26 and 27.

### III. Remaining Issues – Original Requests

**Request 13-14**

- 13- "All documents concerning what qualifies as Essential Services, including but not limited to memoranda, policies, procedures, and guidelines."

---

[21] Case No. 17-3283, ECF No. 15965.

- 14- "Documents sufficient to identify, on a monthly basis from November 2015 to the present, the nature and amounts of expenditures for Essential Services by the Commonwealth and by HTA."

AAFAF's response made clear that "the elected Government prepares draft Fiscal Plans and Budgets with the goal of striving to adequately fund public services to the best of its ability, given the resources available," but that AAFAF "does not concede that the funding levels reflected in the certified Fiscal Plans and Budgets are sufficient to adequately fund the Government consistent with the policy goals of the elected Government that are vital to ensuring a durable, prosperous economy for the benefit of the people of Puerto Rico." AAFAF Resp. to Requests 13-14. Accordingly, AAFAF directs the DRA parties to the Fiscal Plans and Budgets and monthly budget-to actual reporting available on AAFAF's website.[22]

**Request 15**

- "All documents concerning the criteria, requirements, and conditions for identifying or selecting which revenues would be subject to the Clawback, including but not limited to revenues due to HTA and the Act 30-31 Revenues, including but not limited to memoranda, policies, procedures, and guidelines."

The Clawback Orders and Moratoria Legislation specify which revenues would be subject to the Clawback. On the August 31, 2021 call, the DRA Parties acknowledged that what they essentially are asking for are the deliberations underlying the decisions made in those laws. To the extent any such deliberations were reduced to writing, they would be protected from disclosure by the executive and deliberative process privileges and potentially the attorney-client privilege. AAFAF reiterates its position that such information is not relevant to Plan confirmation and would place an unduly burdensome on the government to search for and collect the requested information.

**Request 29**

- All documents concerning the negotiation, drafting, or entering into the HTA Loan Documents, including but not limited to sections 1.2 and 3.2 of the Security Agreement and any language purporting to subordinate the obligations arising under the HTA loan agreements to the HTA Bonds, the priority of GDB's liens on the Act 30-31 Revenues, and the existence, identity, or absence of any third-party beneficiary to the Security Agreement."

Your September 3, 2021 email requests we reconsider our objection not to produce documents concerning the negotiation, drafting, or entering in the HTA Loans. Your email does not explain why this is a critical, contested issue as required by the court, but simply states that it is "an important request item" as "extrinsic evidence could be relevant." Email from T. Mott (Sept. 3, 2021). Moreover, as noted above, Judge Dein has already held that equivalent materials relating to the HTA Bonds are beyond the scope of permissible discovery.[23] AAFAF therefore does not agree to produce these materials.

---

[22] https://aafaf.pr.gov/financial-documents/government-of-puerto-rico-budget-to-actual-report-2a-1-general-fund/.

[23] Case No. 17-3283, ECF No. 16236; Case No. 20-00003, ECF No. 191.

O'Melveny

Sincerely,

/s/ *Elizabeth L. McKeen*

Elizabeth L. McKeen

DRA Ex. 421