UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**RESPONSES AND OBJECTIONS OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO THE DRA PARTIES' FIRST SET OF INTERROGATORIES TO THE FINANCIAL OVERSIGHT AND <u>MANAGEMENT BOARD FOR PUERTO RICO</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

DRA Ex. 427

Pursuant to Rule 26 and Rule 33 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure and section 310 of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"), the Local Rules of the United States Bankruptcy Court for the District of Puerto Rico, the Local Rules of the United States District Court for the District of Puerto Rico, and/or this Court's chambers practices and case management orders (collectively, the "Governing Rules"); and the Court's *Amended Order Establishing Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* (the "Amended Confirmation Procedures Order") [ECF No. 18394], the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA," and, together with the Commonwealth and ERS, the "Debtors") pursuant to PROMESA section 315(b), hereby responds and objects to *The DRA Parties' First Interrogatories to the Financial Oversight and Management Board for Puerto Rico* (the "Interrogatories," and each an "Interrogatory"), dated October 1, 2021, and served by the DRA Parties.[2]

## PRELIMINARY STATEMENT

The Oversight Board's responses and objections (the "Responses") to the Interrogatories are made without prejudice to the Oversight Board's right to amend or supplement its responses herein if necessary at a later date. The Oversight Board has made reasonable efforts to respond to the Interrogatories, to the extent it has not objected thereto, as the Oversight Board understands

---

[2] "DRA Parties" refers to AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company.

DRA Ex. 427

and interprets the Interrogatories. If the DRA Parties subsequently assert an interpretation of the Interrogatories that differs from that of the Oversight Board, the Oversight Board reserves the right to supplement its Responses. By making the Responses below, the Oversight Board does not waive and expressly reserves its right to make additional objections.

## **GENERAL OBJECTIONS**

1. The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, as unduly burdensome to the extent they seek information that is neither relevant nor proportional to the DRA Parties' assessment of the confirmability of the Plan,[3] the only issue before the Court in connection with the Confirmation Hearing.[4]

2. The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, as unduly burdensome because: (i) they seek information beyond the scope of appropriate discovery in connection with the Plan; and/or (ii) the burden or expense of the proposed discovery outweighs the likely benefit, considering the needs of the case.

3. The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent they seek information not within the possession, custody, or control of the Oversight Board. The Oversight Board further objects to the Interrogatories to the extent they call for information publicly available, unreasonably cumulative or duplicative, or obtainable from another source more convenient, less burdensome, or less expensive.

---

[3] "Plan" refers to the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 17627], as it may be amended from time to time. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[4] "Confirmation Hearing" refers to the hearing to consider confirmability of the Commonwealth's plan of adjustment scheduled to begin on November 8, 2021. Amended Confirmation Procedures Order, at 4.

2

4. The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent they purport to impose burdens inconsistent with, not otherwise authorized by, or exceeding those required by the Governing Rules. In responding to these Interrogatories, and unless otherwise noted, the Oversight Board will construe all words in accordance with their ordinary English meaning, as informed by the Governing Rules. The Oversight Board will construe and respond to the Interrogatories in a manner consistent with its obligations under the Governing Rules and the Amended Confirmation Procedures Order, and not otherwise.

5. The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent they expressly or impliedly seek information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive privilege, the deliberative process privilege, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Oversight Board intends to and does assert any and all such privileges with respect to all such information. Nothing in these Responses is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities. Information protected by these privileges, doctrines, or immunities is not subject to disclosure, and will not be provided.

6. The Oversight Board objects to each Definition, Instruction and Interrogatory to the extent it seeks information that is confidential or proprietary in nature, or otherwise constitutes protected commercial, strategic, financial or competitively sensitive or trade secret information.

7. The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent they (i) imply the existence of facts or circumstances that do not or did

DRA Ex. 427

not exist, or (ii) state or assume legal or factual conclusions. By providing these Responses, the Oversight Board does not admit any factual or legal premise in the Interrogatories.

8. These Responses should not be construed as: (a) an admission as to the propriety of any Interrogatory; (b) an agreement as to erroneous assumptions or incorrect factual predicates contained in any Interrogatory; (c) an acknowledgement that documents or other items responsive to any Interrogatory exist; (d) a waiver of the General Objections or the objections asserted in response to specific Interrogatories; or (e) an admission as to the relevance or admissibility into evidence of any documents, item or information.

9. To the extent any term defined or used in the Interrogatories is used in responding to the Interrogatories, it is not accepted or conceded that any such term or definition is appropriate, descriptive, or accurate.

10. The Oversight Board objects to the definition of the term "Commonwealth" because it includes individuals and entities without regard to their connection or relevance to confirmation of the Plan or the subject matter of the Interrogatories. In responding to these Interrogatories, the Oversight Board will construe "Commonwealth" to mean the Commonwealth of Puerto Rico and its instrumentalities, its present and former officials, directors, employees, and known agents reasonably likely to possess information relevant to said subjects.

11. The Oversight Board objects to the definition of the term "ERS" because it includes individuals and entities without regard to their connection or relevance to confirmation of the Plan or the subject matter of the Interrogatories. In responding to these Interrogatories, the Oversight Board will construe "ERS" to mean the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, its present and former officials, directors, employees, and known

4

agents reasonably likely to possess information relevant to said subjects. The Oversight Board further objects that the DRA Parties have defined, but not used, this term.

12. The Oversight Board objects to the definition of the term "FOMB" because it includes individuals and entities without regard to their connection or relevance to confirmation of the Plan or the subject matter of the Interrogatories. In responding to these Interrogatories, the Oversight Board will construe "FOMB" to mean the Financial Oversight and Management Board for Puerto Rico, its present and former officials, employees, and known agents reasonably likely to possess information relevant to said subjects.

13. The Oversight Board objects to the definition of the term "GDB" as overbroad because it encompasses additional individuals and entities without regard to their connection or relevance to either the confirmation of the plan of adjustment or the subject matter of the Interrogatories. In responding to these Interrogatories, the Oversight Board will construe "GDB" to mean the Government Development Bank of Puerto Rico and its agencies, and their present and former officials, directors, employees, and known agents reasonably likely to possess information relevant to said subject.

14. The Oversight Board objects to the definition of the term "HTA" because it includes individuals and entities without regard to their connection or relevance to confirmation of the Plan or the subject matter of the Interrogatories. In responding to these Interrogatories, the Oversight Board will construe "HTA" to mean the Puerto Rico Highways and Transportation Authority and its present and former officials, directors, employees, and known agents reasonably likely to possess information relevant to said subjects.

15. The Oversight Board objects to the definition of the term "PBA" because it includes individuals and entities without regard to their connection or relevance to confirmation of the Plan

DRA Ex. 427

or the subject matter of the Interrogatories. In responding to these Interrogatories, the Oversight Board will construe "PBA" to mean the Puerto Rico Public Buildings Authority and its present and former officials, directors, employees, and known agents reasonably likely to possess information relevant to said subjects. The Oversight Board further objects that the DRA Parties have defined, but not used, this term.

16. The Oversight Board objects to the definition of the terms "You," "Your," "you," and "your" as overbroad because they encompass individuals and entities without regard to their connection or relevance to confirmation of the Plan. In responding to these Interrogatories, the Oversight Board will construe "You," "Your," "you" and "your" to mean the Oversight Board and its present and former officials, employees, and known agents reasonably likely to possess information relevant to said subjects.

17. The Oversight Board objects to the definition of the term "Person" because it includes individuals and entities without regard to their connection or relevance to confirmation of the Plan. In responding to these Interrogatories, the Oversight Board will construe "Person" to mean employees, officers, directors, and known agents reasonably likely to possess information relevant to said subjects.

18. The Oversight Board objects to the definition of the terms "Document," "Documents," "document" and "documents" to the extent they impose duties on the Oversight Board that differ from or exceed those imposed by the Governing Rules. The Oversight Board further objects to searching or producing "any and all writings and recorded materials, of any kind, that are or have been in Your possession, custody or control," "emails, electronically stored information, and drafts of documents," or "any and all originals (and copies of originals that are not identical to the originals by reason of any notation made on such copies or otherwise), copies

DRA Ex. 427

of originals where originals are not available for production, and drafts of any or all of the following: correspondence, memoranda, notes, electronic mail, text messages, instant messages, computer records, diaries, calendars, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice communications, telephone calls, meetings, communications, printed matter, invoices, worksheets, transcripts, and written materials of every kind and nature whatsoever, and all tapes, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures, and graphical or aural records or representations of any kind and nature whatsoever, along with any electronic, mechanical or electric recordings or representations of every kind and nature whatsoever," which would be unduly burdensome and not proportional to the needs of the case. To the extent the Oversight Board agrees to produce any documents in response to the Interrogatories, the Oversight Board will use reasonable diligence to conduct a search proportional to the needs of the case to locate readily accessible documents in those files in which it reasonably expects to find responsive documents.

19. The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent they are not limited to "critical contested issues" so that "resources are not wasted." *See* Hearing Tr. on Procedures Orders at 15, 93 (July 14, 2021).

20. The Oversight Board objects to the definitions of the terms "Act 30-31 Revenues" and "Clawback" because moneys held by the Commonwealth are fungible.

21. The Oversight Board objects to the definition of the term "Government Entities" because it incorporates the objectionable definitions of the terms "AAFAF" and "FOMB," and because it incorporates the term "Treasury," which is not defined.

DRA Ex. 427

22. The Oversight Board objects to Instruction No. 14 because the time period of January 1, 2015 to the present is overbroad. PROMESA, the statute under which the Oversight Board was created, was not even enacted until June 30, 2016.

23. The Oversight Board objects to Instruction No. 1, Instruction No. 2, Instruction No. 3, Instruction No. 4, Instruction No. 5, Instruction No. 7, Instruction No. 8, Instruction No. 9, Instruction No. 10, and Instruction No. 11, to the extent that they require procedures that are inconsistent with, not authorized by, or otherwise exceed those required by the Governing Rules or the Amended Confirmation Procedures Order.

24. The above General Objections are incorporated into each of the following specific Responses.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

State Your understanding of whether there is additional distributable value available to Commonwealth creditors beyond what is currently provided for under the Plan, including estimated amounts.

   a. State further Your accounting of the additional distributable value available to Commonwealth creditors under the Plan, that are unrestricted assets.

### RESPONSE TO INTERROGATORY NO. 1:

The Oversight Board objects to this Interrogatory on the grounds that it does not seek information proportional or relevant to the analysis of the confirmability of the Plan. The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. In addition, the Oversight Board objects to this Interrogatory because it is vague and ambiguous insofar as it utilizes the term "distributable value"

DRA Ex. 427

without defining such term. The concept of "distributable value" is not applicable to a PROMESA Title III case. The Oversight Board further objects to this Interrogatory because it is vague and ambiguous insofar as it utilizes the terms "Your accounting of the additional distributable value" and "unrestricted assets" without defining such terms.

In light of the General Objections identified in paragraphs 1, 2, 3, 4, 5, 6, 7, 10, 16, 19, 22, and 23, and the specific objections above, the Oversight Board will not respond to this Interrogatory.

### INTERROGATORY NO. 2:

Describe all measures that the Commonwealth could take in order to generate additional distributable value for Commonwealth creditors and what amounts each measure would generate.

### RESPONSE TO INTERROGATORY NO. 2:

The Oversight Board objects to this Interrogatory on the grounds that it does not seek information proportional or relevant to the analysis of the confirmability of the Plan. The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. In addition, the Oversight Board objects to this Interrogatory because it is vague and ambiguous insofar as it utilizes the term "distributable value" without defining such term. The concept of "distributable value" is not applicable to a PROMESA Title III case.

In light of the General Objections identified in paragraphs 1, 2, 3, 4, 5, 6, 7, 10, 16, 19, 22, and 23, and the specific objections above, the Oversight Board will not respond to this Interrogatory.

DRA Ex. 427

**INTERROGATORY NO. 3:**

State Your basis for why the Plan's distribution mechanics set forth in Section 63.2 is structured such that holders of 1968 HTA Bond claims shall receive cash payable with respect to the HTA Clawback CVI without regard to the result of the GDB Loan Priority Determination.

**RESPONSE TO INTERROGATORY NO. 3:**

The Oversight Board objects to this Interrogatory because it is vague and ambiguous insofar as it utilizes the term "distribution mechanics" without defining such term. The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the General Objections identified in paragraphs 3, 4, 5, 6, 9, 16, and 23, and the specific objections above, the Oversight Board states as follows: the distribution of the CW/HTA Clawback Recovery, as set forth in Section 63.2 of the Plan, is provided for by the HTA/CCDA PSA. Further, to the extent the DRA's claims are allowed against the Commonwealth, its GDB HTA Loan Claims are subordinated.

**INTERROGATORY NO. 4:**

State Your basis for why the Plan's CVI Payment Reserve (as described in Section 63.2) is structured such that the amount of CVI that is subject to the reserve is predicated on the GDB HTA Loan claims being, at most, *pari passu* to the 1998 HTA Bond Claims, and does not account for alternative priorities among the GDB HTA Loan Claims, 1968 HTA Bond Claims, and 1998 HTA Bond Claims.

**RESPONSE TO INTERROGATORY NO. 4:**

The Oversight Board objects to this Interrogatory because it is vague and ambiguous insofar as it utilizes the term "distribution mechanics" without defining such term. The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative

10

DRA Ex. 427

process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the General Objections identified in paragraphs 3, 4, 5, 6, 9, 14, 16, and 23, and the specific objections above, the Oversight Board states that to the extent the GDB Debt Recovery Authority's ("DRA") claims are allowed, the GDB HTA Loan Claims are subordinated. In the event the Court determines that the GDB HTA Loan Claims are not subordinated, they will be treated in accordance with the Court's order.

## INTERROGATORY NO. 5:

State Your understanding of whether the Commonwealth has available cash to pay an administrative expense claim of no less than $148.7 million.

## RESPONSE TO INTERROGATORY NO. 5:

The Oversight Board objects to this Interrogatory on the grounds that it does not seek information proportional or relevant to the analysis of the confirmability of the Plan. The Oversight Board further objects to this Interrogatory because it is vague and ambiguous in that it requests information regarding a hypothetical administrative expense claim "of no less than $148.7 million" without providing a basis for the Oversight Board to determine the nature of or basis for the hypothetical administrative expense claim.

Subject to the General Objections identified in paragraphs 1, 2, 3, 4, 5, 7, 10, 16, and 23, and the specific objections above, the Oversight Board states that, if the Effective Date occurs, the Plan provides the Commonwealth will pay allowed administrative expense claims pursuant to the Plan, as required by 11 U.S.C. § 503(b) incorporated into these Title III cases by PROMESA section 301(a) and PROMESA section 314(b)(4)—although the ability to pay will depend on the total amount of administrative expense approved by the Court.

DRA Ex. 427

**INTERROGATORY NO. 6:**

State Your understanding of whether the Plan's terms provide the DRA with an Allowed CW/HTA Claim, and if so, in what amount.

**RESPONSE TO INTERROGATORY NO. 6:**

The Oversight Board objects to this Interrogatory because it calls for a legal conclusion. The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. In addition, the Oversight Board objects to this Interrogatory to the extent it seeks documents outside of the Oversight Board's possession, custody or control or already available to the DRA Parties. Further, the Oversight Board objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 7. The Oversight Board also objects to this Interrogatory as unintelligible because it utilizes the term "Allowed CW/HTA Claim" without defining such term.

Subject to the General Objections identified in paragraphs 3, 4, 5, 6, 7, 9, 16, 22 and 23, and the specific objections above, the Oversight Board states that the Plan presently provides the DRA with a distribution right pursuant to an Allowed CW/HTA Claim in connection with the HTA 98 Bonds held by the DRA. In addition, subject to further order of the Court, to the extent DRA has an allowed claim through HTA or otherwise regarding the GDB HTA Loans, that claim is subordinated and will receive distributions pursuant to the waterfall.

**INTERROGATORY NO. 7:**

State the complete factual basis for the calculation of the $6,257,585,807.42 deemed allowed with respect to CW/HTA Claims, as set forth in Section 2.2(a) of the Plan.

**RESPONSE TO INTERROGATORY NO. 7:**

The Oversight Board objects to this Interrogatory to the extent it seeks documents outside of the Oversight Board's possession, custody or control or already available to the DRA Parties. The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the General Objections identified in paragraphs 3, 4, 5, 6, 22, and 23, and the specific objections above, the Oversight Board refers the DRA Parties to Exhibit A.

**INTERROGATORY NO. 8:**

State Your complete factual basis for the Plan providing a $264 million payment to holders of 1968 HTA Bonds and 1998 HTA Senior Bonds.

**RESPONSE TO INTERROGATORY NO. 8:**

The Oversight Board objects to this Interrogatory because it is unintelligible. The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the General Objections identified in paragraphs 3, 4, 5, 6, 16, 22, and 23, and the specific objections above, the Oversight Board states that the Plan does not provide for a $264 million payment to holders of HTA 68 Bonds and HTA 98 Senior Bonds. The Plan does provide, that as a condition precedent to the Effective Date of the Plan: (i) the Court shall have entered the Confirmation Order providing that "in consideration for the agreements set forth in the HTA/CCDA Plan Support Agreement, and upon satisfaction of the HTA Distribution Conditions,

13

DRA Ex. 427

HTA shall make an interim distribution to holders of HTA 68 Bonds and HTA 98 Senior Bonds in the amounts of One Hundred Eighty-Four Million Eight Hundred Thousand Dollars ($184,800,000.00) and Seventy-Nine Million Two Hundred Thousand Dollars ($79,200,000.00, respectively, in Cash, which distributions shall reduce the principal amount of such HTA 68 Bonds and HTA 98 Senior Bonds, respectively, and the corresponding HTA Bond Claims[;]" Plan § 86.1(b)(xv); unless (ii) the Oversight Board has waived such condition precedent to the Effective Date in accordance with Section 86.2 of the Plan.

### INTERROGATORY NO. 9:

State what amount, if any, corresponds to the DRA Parties under the Plan.

### RESPONSE TO INTERROGATORY NO. 9:

The Oversight Board objects to this Interrogatory because it is unintelligible as written.

DRA Ex. 427

| | |
|---|---|
| Dated: October 11, 2021<br>San Juan, Puerto Rico | Respectfully submitted,<br>*/s/ Brian S. Rosen*<br><br>Martin J. Bienenstock (*pro hac vice*)<br>Brian S. Rosen (*pro hac vice*)<br>Margaret A. Dale (*pro hac vice*)<br>Julia D. Alonzo (*pro hac vice*)<br>Laura Stafford (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board for Puerto Rico*<br><br>*/s/ Hermann D. Bauer*<br><br>Hermann D. Bauer<br>USDC No. 215205<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Co-Attorneys for the Financial Oversight and Management Board for Puerto Rico* |

15

Case:17-03283-LTS Doc#:18809-5 Filed:10/27/21 Entered:10/27/21 03:55:34 Desc:
Exhibit DRA Exhibit 427 Page 17 of 19

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I caused copies of the foregoing document to be served on the following counsel of record.

Arturo J. García Solá
USDC No. 201903
Alejandro J. Cepeda-Díaz
USC No. 222110
Nayuan Zouairabani
USC No. 226411
**MCCONNELL VALDÉS LLC**
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, PR 00936-4225
Tel: 787-250-5632
Fax: 787-759-9225

*Attorneys for AmeriNational Community Services, LLC, as Servicer for the GDB Debt Recovery Authority*

Carmen D. Conde Torres
USDC No. 207312
Luisa S. Valle Castro
USDC No. 215611
**C. CONDE & ASSOC. LAW OFFICES**
254 San José Street, Suite 5
San Juan, PR 00901-1523
Tel: 787-729-2900
Fax: 787-729-2203
E-mail: condecarmen@condelaw.com

Douglas S. Mintz
**SCHULTE ROTH & ZABEL LLP**
901 Fifteenth St., NW, Suite 800
Washington, D.C. 20005
Tel: (202) 729-7470
Fax: (202) 730-4520
Email: douglas.mintz@srz.com

Douglas Koff
Abbey Walsh
Peter J. Amend
**SCHULTE ROTH & ZABEL LLP**

DRA Ex. 427

919 Third Avenue
New York, NY 10022
Tel: (212) 756-2000
Fax: 212-593-5955
Email: douglas.koff@srz.com
Abbey.walsh@srz.com
Peter.amend@srz.com

*Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for the GDB Debt Recovery Authority*

/s/ *Laura E. Stafford*
Laura E. Stafford

## VERIFICATION

I am the Executive Director for the Financial Oversight and Management Board for Puerto Rico. I have read the foregoing *Responses and Objections of the Financial Oversight and Management Board for Puerto Rico to the DRA Parties' First Set of Interrogatories to the Financial Oversight and Management Board* and know the contents thereof, and the same are true to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on October 10, 2021.   _____

Natalie A. Jaresko