CERTIFIED TRANSLATION

**(FINAL HOUSE APPROVED TEXT)**
**(SEPTEMBER 30, 2021)**

COMMONWEALTH OF PUERTO RICO

19th Legislative
Assembly

2nd Ordinary
Session

### HOUSE OF REPRESENTATIVES

**HOUSE BILL 1003**

SEPTEMBER 27, 2021

Submitted by representatives *Hernández Montañez, Varela Fernández, Matos García, Santa Rodríguez and Torres Cruz*

Referred to the Treasury and Budget Committee

**ACT**

To create the "Law to Put an End to Puerto Rico's Bankruptcy," establish the provisions and conditions to approve the offer, sale and issuance of the different types of General Obligation Bonds, as well as to create Contingent Value Instruments; establish a public policy of protection and a mechanism to return municipal funds affected by any cuts imposed by the Adjustment Plan proposed as part of the Title III procedure of the PROMESA Act; repeal Law No. 39 enacted on May 13, 1976, as amended, known as the "Law to Provide for Monthly Transfer to Special Fund for the Amortization and Redemption of General Obligations Evidenced by Bonds and Notes;" amend subsection (a) of Article 3 of Law No. 147 enacted on June 18, 1980, as amended, known as the "Enabling Act of the Office of Management and Budget;" amend Article 3 and subsection (m) of Article 7, as well as to eliminate Articles 25 and 34, and renumber Articles 25-A and 35 as Articles 25 and 34, respectively, of Law No. 44 enacted on June 21, 1988, as amended, known as the "Law of the Puerto Rico Infrastructure Financing Authority;" amend Articles 23.01 and 23.02 of Law 22-2000, as amended, known as the "Puerto Rico Vehicle and Traffic Law;" amend Article 1.03 (b) and subsection (h) of Article 2.02 of Law 351-2000, as amended, known as the "Law of the Puerto Rico Convention Center District;" amend Article 8 of Law 179-2002,

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

as amended; amend Article 31 of Law 272-2003, as amended, known as the "Law of the Commonwealth of Puerto Rico regarding Tax on Room Occupancy Price;" add a new Article 7A to Law 103-2006, as amended; amend Section 3060.11 and eliminate Section 3060.11A of Law No. 1-2011, as amended, known as the "2011 Puerto Rico Internal Revenue Code;" and amend subsection (a) of Article 7.018 and subsection (a) of Article 7.027 of Law 107-2020, as amended, known as the "Puerto Rico Municipal Code;" in order to take the necessary affirmative steps leading Puerto Rico toward concluding the bankruptcy procedure under Title III of the PROMESA Act; comply with the provisions of the above-referenced federal law as to the minimum necessary conditions for the dissolution of the Financial Oversight and Management Board; and for other related purposes.

STATEMENT OF PURPOSE

In the beginning of 2006, the political leaders in Puerto Rico were pondering the creation of legal and political mechanisms to remedy the financial condition that Puerto Rico had been suffering for several decades. This was the result of, among other things, the end of the incentive to the manufacturing sector. As a result of the events, in 2013, in a joint effort, the different government and private sectors attempted to include Puerto Rico in Chapter 9 of the Federal Bankruptcy Code, but this was not supported by Congress. In 2015, in a collaboration between the Executive and Legislative Branches, they sought to address the national debt situation by establishing a local mechanism similar to the one created by the above-referenced Code. Said initiative was subsequently invalidated due to being contrary to the Constitution of the United States of America since the bankruptcy field had been preempted by federal law.

Subsequently, in 2016, for the purpose of giving the Government of Puerto Rico some respite from the potential avalanche of claims from its creditors, the United States Congress promulgated the federal law known as the PROMESA Act. Said law established, in Title III, a bankruptcy procedure incorporating a broad portion of the provisions of the Bankruptcy Code, to which Puerto Rico would have access for the purpose of restructuring its monumental debt. It also created an entity that would take control of all of the budget, finance and fiscal administration aspects of Puerto Rico, known as the Financial Oversight and Management Board (FOMB). In fact, the FOMB would basically begin supervising and controlling all of the financial and budgetary aspects of the government of the Commonwealth of Puerto Rico.

Even though the above-referenced legislation had been approved, the government of Puerto Rico made multiple attempts to reach consensus agreements with different groups of creditors. In spite of its efforts, the intention of the Government did not prevail. As a result, on May 3, 2017, the FOMB filed a request for restructuring of debt under



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

Title III of the PROMESA Act. Filing said request with the Title III Court initiated the most extensive bankruptcy proceedings in the history of the municipal markets of the United States, to which the bonds and obligations of the Government of Puerto Rico belong. In order to understand the magnitude of this event, it should be noted that it was estimated that the Commonwealth would have to restructure $35 thousand million as part of the above-referenced restructuring process.

This process would not only entail a highly technical and contentious litigation, but would also compel the leaders of the Puerto Rican government to comply with the fiscal plans designed and certified by the FOMB. Under the PROMESA Act, certified fiscal plans have the force of law and failing to comply with the same gives the Board the right to turn to the Title III Court in order for the latter to enforce the intention of the above-referenced federal law.

In addition to the foregoing, the Puerto Rico government has been facing unforeseen events since 2017. Said events have affected the potential for financial recovery of Puerto Rico and extended the costly Title III process. The consequences of hurricanes Irma and María, the earthquakes in the southwest of Puerto Rico, and the current COVID-19 pandemic, have continued to affect our Island up to this day. These events have deeply and negatively affected daily life in our society, and collaterally extended the presence of the Board in Puerto Rico.

More than four years after filing a bankruptcy petition under Title III of the PROMESA Act, the Board has filed a seventh amended version of the Plan for Debt Adjustment or Restructuring (PDA) for Puerto Rico in the Title III Court. This Plan is the result of several years of negotiations between the FOMB, in its capacity as the exclusive representative of Puerto Rico before the Title III Court, and countless types of obligation creditors of the central Government.

It is estimated that, as part of the above-referenced Title III process, the People of Puerto Rico have incurred litigation expenses which, including the negotiations with the different types of creditors and the attorney's fees related to the restructuring process, amount to between $300 and $500 million. In this context, refusing to act as to the Restructuring Plan proposed by the FOMB, or not considering it in an objective and responsible manner, could result in a risk of going back to the beginning of the negotiation process.

The foregoing would necessarily entail a real risk of (i) incurring expenses amounting to or exceeding the amounts already incurred; (ii) a lifting of the collection prohibition established by way of the stay mechanism available under bankruptcy proceedings, potentially resulting in an avalanche of collection claims from creditors; and (iii) indefinitely extending the presence and mandate of the FOMB in our system of government. Some of the parties involved in the Country's bankruptcy have suggested that the Title III Court also has the power to impose the Adjustment Plan on the Government without the support of the Legislative Assembly.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

The alternative to these scenarios is the approval of the Plan, which if ratified by the Government and the creditors, and subsequently affirmed by the Title III Court, would become the last step of the process for restructuring Puerto Rico's debt. This Plan includes the agreements reached with the different types of obligation creditors of the Central Government. These include general obligation bondholders, public employee unions, the Uninsured Creditor Committee and the Official Retiree Committee, among others.

In total, the agreements included in the PDA reduce the Central Government's public debt by approximately 50%. In other words, the public debt would be reduced from approximately $70 thousand million to $34 thousand million, and the General Obligation (GO) bond and Public Building Authority debt would be reduced from $18.8 thousand million to $7.4 thousand million. At the same time, the annual Puerto Rico public debt payment would be reduced to approximately from $3,300 million to $1.1 thousand million. Furthermore, the borrowing margin of the Commonwealth would be reduced from 25% to 7.5%, a figure representing half of the constitutionally allowed maximum. In practical terms, these reductions result in more money in the treasury, which means that Puerto Rico shall have a new opportunity to invest in its people via improvements to infrastructure, pay the costs of the essential services that it must offer, and prepare for and deal with future emergencies.

In order to achieve this reduction in government debt, the PROMESA Act requires that the Puerto Rico Legislative Assembly approve legislation that would make it viable to issue a series of general obligation (GO) bonds and create contingent value instruments (IVC, acronym in Spanish) guaranteeing payment of certain claims. It should be noted that IVCs also provide for the creation of a trust that would eventually guarantee the payment of pensions, the enjoyment by the government of up to $200 million in funds generated in excess of the projections contained in the 2020 and 2021 Fiscal Plans, and other repayment mechanisms.

In essence, the Central Government must issue around $7.4 thousand million in new general obligation bonds and authorize the creation of IVCs. The IVCs would only be payable upon compliance with determined metrics of collection of the sales and use tax (IVU, acronym in Spanish) and, as to a limited portion of the IVCs, the portion of the federal excise tax on rum that the Federal Treasury Department transfers to the Government of Puerto Rico. In other words, it would only be paid up to a specific maximum of debt if certain conditions are present.

In accordance with Section 314 of the PROMESA Act, and with recently signed Law 42-2021, the Government of Puerto Rico has the obligation to approve the present legislation to make viable the approval of the Plan and the subsequent dissolution of the Financial Oversight and Management Board. It should be noted that Law 42, *supra*, specifically revoked the power that up to that moment the Governor had to issue debt without legislative intervention under


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

DRA Ex. 431

multiple statutes. As a result, it is necessary for the Legislative Assembly and the Executive Power to continue collaborating, as they have historically done, for the purpose of approving legislation that would allow the required issuance of bonds and would also authorize creating the above-described IVCs.

Although the PDA proposes multiple positive aspects for Puerto Rico, and even though its approval would pave a path toward concluding the Island's Title III process, it also imposes a financial burden on public pensioners by proposing a general cut of 8.5% to the pensions of our retirees.

It should be very clear that the public policy of the present Legislative Assembly is a policy of zero cuts to pensioners.

This Legislative Assembly has not lost sight of the fact that our pensioners, as opposed to other groups of creditors, have already suffered cuts to their pensions as a result of the approval of statutes which, for the purpose of preventing the government retirement systems from becoming insolvent, reduced the pension benefits, increased the amount of employee contributions, and increased the retirement age as to the pension plans of each of the three main retirement systems of the Government. Therefore, the Legislative and Executive Branches have been emphatic as to the fact that Puerto Rico's public policy is a policy of zero cuts to pensions.

Municipalities are the government entities closest to the population. The crisis and fiscal plans have had an impact on the income of local governments. To the extent that the PDA achieves cutting the state debt, said economies must be specifically used to pay for collecting and disposing of waste and for implementing recycling programs in municipalities, in order for municipalities to be able to guarantee these fundamental and indispensable services to guarantee and improve the quality of life of the population.

The Legislative Assembly shall continue to promote proposals that defend the best interests of the People. As to this task, we trust that the Legislative Branch shall have the support of the Executive Branch to guide Puerto Rico through the path to be followed. The approval of Puerto Rico's General Budget for fiscal year 2021-2022, Joint Res. 8-2021, was the right step in that direction. Approving this measure is also a good step, which shall allow the current General Budget to become the first of 4 budgets to be a balanced budget. At the end of this process, Puerto Rico shall have complied with half of the requirements provided by the PROMESA Act. The present Law consolidates the historical, multisector and consensus efforts to put an end to the Financial Oversight and Management Board.

*THE PUERTO RICO LEGISLATIVE ASSEMBLY HEREBY DECREES AS FOLLOWS*:

1  **CHAPTER 1.- GENERAL PROVISIONS.**

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                    6

1   **ARTICLE 101.- TITLE**

2   This Law shall be known and cited as the "Law to Put an End to Puerto Rico's

3   Bankruptcy."

4   **ARTICLE 102.- DECLARATION OF PURPOSE AND PUBLIC POLICY**

5   The present legislation is in accordance with the objectives of the

6   Puerto Rico Oversight, Management and Economic Stability Act, or

7   PROMESA, and is adopted under the current rule of law, for the specific

8   purpose of making viable the following objectives which, in turn, are the

9   statutory requirements for ending the mandate of the Financial Oversight and

10  Management Board (FOMB) created by virtue of the above-referenced federal

11  statute:

12  1. Take the affirmative actions that are necessary to comply with the unequivocal

13  mandate of the People of Puerto Rico to end the erosion of our republican and

14  democratic system of Puerto Rican government.

15  2. Achieve the successful conclusion of the bankruptcy proceedings of the

16  Commonwealth of Puerto Rico under Title III of the PROMESA Act;

17  3. Make it viable for the Commonwealth of Puerto Rico to access credit markets on the

18  short and long term, at reasonable rates of interest, to comply with the borrowing

19  needs of our local government;

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1      4. Execute the approval of the first of four balanced budgets, legislated and signed by
2          the Legislative and Executive Branches, respectively, on June 30, 2021, as Joint
3          Resolution 8-2021;
4      5. Carry out all necessary actions for the dissolution of the FOMB to take place as soon
5          as possible.
6      6. The debt Restructuring Transactions authorized under the present
7          Law are completely subject to the Financial Oversight and
8          Management Board (FOMB) not approving any cut to the pensions
9          of retired government employees in the Restructuring or Adjustment
10          Plan.

11      The present legislation is not seeking to legitimize the mandate or work of the FOMB.
12 On the contrary, its only purpose is to further any actions that are strictly necessary and
13 required by the above-cited federal law to facilitate the dissolution of the above-referenced
14 entity as soon as possible. In this context, it is emphasized that the unequivocal intention of
15 the Legislative Assembly and the FOMB by promoting the promulgation of the present statute
16 is precisely to guarantee said dissolution. By way of the present declaration, it is
17 acknowledged that the FOMB does not have the authority to extend its existence beyond the
18 conditions established in the PROMESA Act, whether under the Adjustment or Restructuring
19 Plan whose implementation is made viable under this Law, or under its interpretation of the
20 cited federal statute.

21      In consideration of the foregoing, it is established that the policy of the Commonwealth
22 of Puerto Rico as to the PROMESA Act, and the existence of the FOMB, is to take

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1  the required steps to end the mandate of said entity, as long as the promulgated and

2  implemented measures do not go against the will of the People, perpetuate the erosion of

3  our system of government, or pose a risk to the most vulnerable sectors of Puerto Rican

4  society.

5        To the extent that submitted proposals or actions required by the FOMB go

6  against the present public policy, the government of the Commonwealth of Puerto Rico

7  shall take all actions that it may deem necessary and relevant to defend the best interests

8  of citizens.

9  **ARTICLE 103.- DEFINITIONS**

10      (a)  5.5% of the IVU: means the present and future income and collected amounts

11  generated by the portion of the sales and use tax established under Sections 4020.01 and

12  4020.02 of Subchapter D of the Internal Revenue Code of Puerto Rico corresponding to the

13  five point five percent (5.5%) tax rate.

14      (b)  Supplementary Agreements: means the Plan, the Confirmation Order, the

15  General Obligation Bond Contract, the General Obligation Bond form, the IVC Contract, the

16  IVC form, and any other agreement or instrument related or executed in relation to, or in

17  support of, a Restructuring Transaction, and in accordance with, or in support of, the Plan

18  or an Eligible Modification.

19      (c)  ACT, Spanish acronym: means the Puerto Rico Highway and Transportation Authority.

20      (d)  ADCC, Spanish acronym: means the Puerto Rico Convention Center District

21  Authority.

22      (e)  AEP, Spanish acronym: means the Puerto Rico Public Building Authority.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                    9

1    (f)  AFI, Spanish acronym, means the Puerto Rico Infrastructure Financing
2    Authority.

3    (g)  AMA, Spanish acronym: means the Puerto Rico Metropolitan Bus Authority.

4    (h)  Fiscal Year: means the fiscal year of the Commonwealth of Puerto Rico,
5    beginning on July 1st and ending on June 30th.

6    (i)  General Obligation Bonds: means the general obligation bonds issued by the
7    Commonwealth under the General Obligation Bond Contract in accordance with this Law,
8    the Plan and the Confirmation Order, and any general obligation bonds issued
9    subsequently by the Commonwealth under the General Obligation Bond Contract in
10   accordance with and pursuant to the terms of the Plan to withdraw, refinance or cancel
11   general obligation bonds originally issued in accordance with the Plan and the
12   Confirmation Order.

13   (j)  Puerto Rico Code: means Law 1-2011, as amended, known as the "Internal
14   Revenue Code for a New Puerto Rico."

15   (k)  Condition of Higher Yield of Rum Excise Tax: means that the Rum Excise Tax
16   Income of the Commonwealth in a Fiscal Year, calculated in accordance with, and net as
17   to, any deductions allowed under the Plan and established in the IVC Contract, exceeds
18   the limits contemplated in the Plan and established in the IVC Contract for said Fiscal
19   Year.

20   (l)  Condition of Higher Yield of the IVU: means that the collected amounts from
21   the Measured IVU or from the Substitute Measured Tax, as applicable, in any Fiscal Year

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION 10

1 exceeds the limits contemplated in the Plan and established in the IVC Contract for said

2 Fiscal Year.

3     (m)     General Obligation Bond Contract: means one or more trust contracts,

4 deeds, resolutions, and any related amendments or supplements, or similar contracts or

5 agreements, related to the General Obligation Bonds, to be executed and signed by the

6 Representative of the Governor, authorizing: (1) issuance of General Obligation Bonds

7 and describing their terms; and (2) payment of Financing Costs, each one in accordance

8 with the terms of the Plan.

9     (n)     IVC Contract: means one or more trust contracts, deeds, resolutions,

10 and any other related amendments or supplements, or similar contracts or

11 agreements, related to the IVCs, to be executed and signed by the Commonwealth,

12 authorizing: (1) issuance of the IVCs by the Commonwealth and describing their terms;

13 and (2) payment of Financing Costs of the IVCs, each one in accordance with the

14 terms of the Plan

15     (o)     Financing Costs: means the costs related to Restructuring

16 Transactions, including, but not limited to, costs, fees and expenses to (i) issue, pay

17 or repay the General Obligation Bonds and the IVCs, as applicable, whether the costs

18 are incurred after issuance of said General Obligation Bonds or IVCs or during the

19 term of said instruments, (ii) make payments as required by the Supplementary

20 Agreements, (iii) pay any stamp, issuance or similar tax and other fees related to the

21 Restructuring Transaction (if any), (iv) prepare for and carry out the Restructuring

22 Transactions, and (v) carry

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1    out all activities in progress related to Restructuring Transactions. To avoid any
2    doubts, the Financing Costs also include the administrative fees and expenses
3    before and after the closing incurred in relation to the Supplementary
4    Agreements.

5         (p)      Government Entity: means any agency, department, office, public
6    corporation, trust, fund, system, instrumentality, political subdivision, fiscal authority or
7    municipality of the Commonwealth.

8         (q)      Commonwealth: means the Commonwealth of Puerto Rico.

9         (r)      Effective Date: means the date on which the Plan comes into effect in
10   accordance with its terms.

11        (s)      Trustee of General Obligation Bonds: means the
12   trustee(s) or substitute trustee(s), as applicable, appointed in
13   accordance with the terms and conditions of the General Obligation
14   Bond Contract.

15        (t)      Trustee of IVCs: means the trustee(s) or substitute trustee(s), as
16   applicable, appointed in accordance with the terms and conditions of the IVC
17   Contract.

18        (u)      Debt Service Fund: means a debt service fund established in accordance
19   with the General Obligation Bond Contract.

20        (v)      Measured Substitute Tax: means all or a portion of a tax of general
21   applicability in the Commonwealth which, by way of a change in the law, is legislated to
22   completely substitute the Measured IVU or which otherwise

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1   constitutes a similar or comparable measure of economic activity in the Commonwealth,

2   in each case in accordance with the terms of the IVC Contract.

3         (w)    Commonwealth Income from Rum Excise Tax: means the total amount

4   collected from excise tax on distilled alcohol imposed under the United States Internal

5   Revenue Code of 1986 (as amended from time to time) received by the Commonwealth,

6   as documented in the report of the Federal Department of the Treasury of the monthly

7   activity of the net excise tax paid to the Commonwealth and certified by the Puerto Rico

8   Department of the Treasury or in any other similar report as established in the IVC

9   Contract.

10        (x)    IVCs or Contingent Value Instruments: means, collectively, the general

11   obligation notes issued under the IVC Contract in accordance with this Law, the Plan and

12   the Confirmation Order, consisting of the General Obligation IVCs and the Clawback

13   IVCs.

14        (y)    Clawback IVCs: means a series of IVCs issued under the IVC Contract

15   related to claims against the Commonwealth allowed under the Plan, arising from the

16   debt issued by the ACT, the ADCC, the AFI and the AMA. To avoid any doubts, Clawback

17   IVCs may be issued in one or more subseries, including, but not limited to, the Rum

18   Excise Tax Claims Subseries.

19        (z)    General Obligation IVC: means a series of IVCs issued under the IVC

20   Contract related to claims against the Commonwealth allowed under the Plan, arising

21   from or related to general obligation debt of the Commonwealth, including direct or

22   secured debt.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                    13

1      (aa)    Measured IVU: means the 5.5% of the IVU collected by the
2    Commonwealth during a Fiscal Year, minus any income transferred to the Fund for the
3    Development of the Arts, Science and Cinematography Industry in accordance with
4    Section No. 4050.06 of the Puerto Rico Code (or used for any other purpose established
5    by law), up to Three Million Two Hundred and Forty Thousand Dollars ($3,240,000.00)
6    per Fiscal Year.

7      (bb)    Law: means the "Law to Put an End to Puerto Rico's Bankruptcy."

8      (cc)    Maximum Aggregate of Clawback IVCs: means, initially from the
9    Effective Date, $5,239,002,764. The Maximum Aggregate of Clawback IVCs
10   shall be reduced each Fiscal Year by an amount equal to the payments made
11   under the Clawback IVCs in accordance with the IVC Contract subject to, and as
12   a result of, a Higher IVU Yield Condition. Additionally, the portion of the Maximum
13   Aggregate of Clawback IVCs assigned to the Rum Excise Tax Claims Subseries
14   shall be reduced even more each Fiscal Year by an amount equal to the
15   payments made under the Rum Excise Tax Claims Subseries in accordance with
16   the IVC Contract subject to, and as a result of, a Higher Rum Excise Tax Yield
17   Condition.

18     (dd)    Maximum Aggregate of General Obligation IVCs: means, initially from the
19   Effective Date, $3,500,000,000. The Maximum Aggregate of General Obligation IVCs
20   shall be reduced annually by an amount equal to the payments made in the General
21   Obligation IVCs in accordance with the IVC Contract.

22

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1    (ee)    Eligible Modification: means an "Eligible Modification" for the ADCC and/or

2    the AFI approved in accordance with Title VI of the PROMESA Act.

3    (ff)    Confirmation Order: means the order of the Title III Court confirming

4    the Plan.

5    (gg)    Person: means any natural or legal person, including, but not limited

6    to, the Commonwealth, any Government Entity, or any firm, partnership, joint

7    business, trust, estate, limited liability company, individual corporation, association,

8    or public or private corporation, organized or existing under the laws of Puerto Rico,

9    the United States of America, any state or other jurisdiction, or any state,

10    municipality, political subdivision, fiscal authority, agency or instrumentality of the

11    United States of America, any state or any other jurisdiction, or any combination of

12    the above.

13    (hh)    Plan: means the joint Plan for the Commonwealth, the SRE and the AEP

14    (and any other Government Entity included in said plan) confirmed under Title III of the

15    PROMESA Act, including the relevant attachments, as these may be amended,

16    supplemented or modified from time to time.

17    (ii)    PROMESA Act: means the Puerto Rico Oversight, Management and

18    Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. §2101, *et*

19    *seq.*, as amended or modified.

20    (jj)    Existing Claims: means the claims against the Commonwealth, the AEP,

21    the SRE, the ACT, the AFI, the ADCC and the AMA.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1       (kk)    Representative of the Governor: means the Governor, the Secretary of the
2  Treasury or any other official of a Government Entity designated by the Governor by
3  Executive Order to comply with the purposes and mandates of the present Law as the
4  representative of the Commonwealth of Puerto Rico.

5       (ll)    Secretary of the Treasury: means the Secretary of the Treasury
6  Department of the Commonwealth.

7       (mm)   Retirement Systems of the Commonwealth: means the Government
8  Employee Retirement System, as defined in subsection (nn) of the present Article, the
9  Puerto Rico Teacher's Retirement System and the Commonwealth of Puerto Rico
10  Judiciary Retirement System.

11      (nn)   SRE, Spanish acronym: means the Commonwealth of Puerto Rico
12  Employee Retirement System.

13      (oo)   Rum Excise Tax Claims Subseries: means a subseries of the
14  Clawback IVCs issued under the IVC Contract in relation to claims against the
15  Commonwealth allowed under the Plan arising from, or related to, the Rum Excise
16  Tax Income of the Commonwealth withheld by the Commonwealth and not
17  transferred to the AFI.

18      (pp)   Restructuring Transactions: means each of the transactions
19  contemplated by, or in support of, the Plan or an Eligible Modification, including, but not
20  limited to, the issuance of the General Obligation Bonds and the IVCs and the
21  cancellation or expiration of Existing Claims in accordance with the Plan or an Eligible
22  Modification, as applicable.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

**ARTICLE 104. – AUTHORIZATION OF ACTIONS BY GOVERNMENT ENTITIES.**

Each Government Entity required to take or carry out any action that is necessary or advisable to implement the Plan and/or the Restructuring Transactions is hereby authorized to carry out and must carry out all actions that are necessary or advisable to implement the Plan and/or the Restructuring Transactions, including, but not limited to, (a) negotiate, enter into and execute any agreement, deed, certificate or document, and (b) disburse or transfer funds as provided and/or required in the Plan. The authorization provided in this Article shall be enough for the Representative of the Governor, on behalf of the Commonwealth, and any executive director, president or official of similar authority or position, on behalf of the Government Entity represented by the same, to be able to carry out any action contemplated in the Plan and/or in the Restructuring Transactions. To avoid any doubts, the authorization herein established shall be as broad and as extensive as allowed by the current rule of law in order for the Commonwealth to be able to establish, finance, and otherwise implement any and all of the provisions and/or mechanisms included in the Plan to protect the pensions of retired government employees. Furthermore, the Puerto Rico Fiscal Agency and Financial Advisory Authority is hereby authorized to require any Government Entity to comply with the requirements established in this Article.

On or before the Effective Date, the Representative of the Governor is hereby authorized to: (a) approve the offer, sale and issuance of the General Obligation

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION 17

1   Bonds and the IVCs as contemplated in the Plan and provided in Chapters 2 and 3
2   of this Law, respectively; (b) provide for the cancellation and expiration of Existing
3   Claims pursuant to and in accordance with the terms of the Plan or of an Eligible
4   Modification, as applicable; (c) authorize the payment of the Financing Costs in
5   accordance with the terms of the Plan; (d) approve the form of the General Obligation
6   Bond Contract, the IVC Contract, and the other Supplementary Agreements, and
7   execute the General Obligation Bond Contract, the IVC Contract, and the other
8   Supplementary Agreements on behalf of the Commonwealth; (e) include in the
9   Supplementary Agreements any agreement, term or other condition as required by
10  the Plan, including (1) consent on behalf of the Commonwealth to the application of
11  the laws of the State of New York to govern and interpret said Supplementary
12  Agreements, and the jurisdiction of any state or federal court, in relation to any
13  complaint or procedure related to the General Obligation Bonds, the IVCs, the
14  Supplementary Agreements and/or any other matters related to the Restructuring
15  Transactions, and (2) create encumbrances on money, assets and other capital
16  deposited with the Trustee of the General Obligation Bonds or the Trustee of the IVCs
17  for the benefit of the holders of the General Obligation Bonds and the IVCs,
18  respectively; and (f) carry out any and all other actions that are necessary or advisable
19  to perform the Restructuring Transactions. To avoid any doubts, notwithstanding the
20  application of the laws of the State of New York to govern and interpret any
21  Supplementary Agreement, the authorization by the Commonwealth of the General
22  Obligation

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1  Bond Contract and the IVC Contract, and the issuance by the Commonwealth of the
2  General Obligation Bonds and the IVCs, shall be governed by the laws of the
3  Commonwealth, provided that, subject to the terms of the General Obligation Bond
4  Contract and the IVC Contract, the holders of the General Obligation Bonds and of the
5  IVCs, respectively, shall have the rights and remedies of holders of public debt of the
6  Commonwealth established in Sections 2 and 8 of Article VI of the Constitution of the
7  Commonwealth.

8      The authorization to issue bonds given under the present Law shall be
9  solely limited to the bonds contemplated by and required to implement the Plan,
10 and shall be made as established by the Plan, the General Obligation Contracts,
11 the Confirmation Order and the other Supplementary Agreements. The Governor
12 of Puerto Rico, or his representative, must request the authorization of the
13 Legislative Assembly for any subsequent issuance that is different from the one
14 herein allowed.

15 **CHAPTER 2 – GENERAL OBLIGATION BONDS**

16 **ARTICLE 201.- ISSUANCE OF GENERAL OBLIGATION BONDS.**

17     (a)    From and following the Effective Date, the Representative of the
18 Governor shall be authorized to approve the offer, sale and issuance of General
19 Obligation Bonds, from time to time, in accordance with the provisions of the General
20 Obligation Bond Contract, the Confirmation Order, the Plan and the other
21 Supplementary Agreements, up to an initial aggregate principal amount of
22 $7,414,063,543.25, and to approve the offer, sale and issuance, from time to time, of

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1   additional General Obligation Bonds, subject to the limitations contemplated in the Plan
2   and established in the General Obligation Bond Contract to withdraw, refinance or
3   cancel the General Obligation Bonds originally issued in accordance with the Plan and
4   the Confirmation Order.

5       (b)     The General Obligation Bonds shall include current interest bonds and
6   capital revaluation bonds, shall be dated, accrue interest, and become due on the date or
7   dates, not to exceed thirty (30) years from the date or dates of issuance, and shall be
8   redeemable or may be prepaid, in each case, to the extent applicable and as determined
9   by the Representative of the Governor, as the representative of the Commonwealth, and
10  authorized in the General Obligation Bond Contract in accordance with and pursuant to
11  the Plan. The Representative of the Governor, as the representative of the
12  Commonwealth, shall determine the form and manner of issuing General Obligation
13  Bonds, and shall establish their denomination or denominations, the place or places of
14  payment, and their other terms, pursuant to and in accordance with the Plan. At the
15  discretion of the Representative of the Governor, the General Obligation Bonds may be
16  issued in one or more separate series.

17      (c)     General Obligation Bonds shall be legal, valid and binding
18  obligations in the Commonwealth, issued in accordance with Article VI, Section 2,
19  of the Constitution of the Commonwealth, and payable in accordance with the terms
20  of the General Obligation Bond Contract and the other Supplementary Agreements.

21      (d)     In the event that any official, whose signature or facsimile signature appears in
22  any General Obligation Bond authorized under this Law, stops occupying his or her position

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION 20

1 before delivery of said General Obligation Bonds, said signature or facsimile
2 signature shall continue to be valid and sufficient and, for all purposes, it shall be
3 considered that said official remained in his or her position until said delivery.
4 Furthermore, any General Obligation Bond may contain the signature or facsimile
5 signature of persons who, at the time of issuance of said bond, are the officials
6 authorized to sign it, but who, on the date of the General Obligation Bond, were not
7 occupying their positions.
8       (e)    General Obligation Bonds issued in accordance with the provisions
9 of this Law shall be considered negotiable instruments under the laws of Puerto
10 Rico.
11       (f)    The General Obligation Bonds authorized by this Law may be issued as
12 coupon bonds, or in registered form, or both, as established in the General Obligation
13 Bond Contract.
14 **ARTICLE 202.- PLEDGING AS SECURITY THE GOODWILL, CREDIT AND POWER**
15 **TO IMPOSE TAXES.**
16       The goodwill, credit and power to impose taxes of the Commonwealth are hereby
17 pledged to secure the punctual payment of principal and interest of the General
18 Obligation Bonds issued under the provisions of this Law according to and at the time of
19 their due date in accordance with the terms of the General Obligation Bond Contract. The
20 Secretary of the Treasury is hereby authorized and instructed to pay the principal and
21 interest of the General Obligation Bonds on their due date or following their redemption
22 or prepayment in accordance with the General Obligation Bond Contract, from the



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION            21

1   available resources of the Commonwealth during the Fiscal Year on which said payment

2   is required. The provisions of this Law in relation to payment of principal and interest of

3   the General Obligation Bonds shall be considered a continuous obligation for the

4   Secretary of the Treasury to make said payments, regardless of whether or not specific

5   assignments have been made for said purposes. The Representative of the Governor is

6   hereby authorized and instructed to include in the General Obligation Bond Contract the

7   commitment herein established by the Commonwealth in relation to the General

8   Obligation Bonds. The General Obligation Bonds shall establish that the goodwill, credit

9   and power to impose taxes of the Commonwealth are pledged to secure payment of the

10  obligations therein established.

11  **ARTICLE 203.-   DEBT   SERVICE   FUND;   STATUTORY**

12  **LIEN.**

13  (a)     The Representative of the Governor is hereby authorized to establish

14  the Debt Service Fund with the Trustee of the General Obligation Bonds for payment

15  of the General Obligation Bonds. Until the General Obligation Bonds have been fully

16  paid or satisfied in accordance with their terms, on a monthly basis, the

17  Commonwealth shall deposit with the Trustee of the General Obligation Bonds a cash

18  amount in an aggregate sum equal to (i) a sixth (1/6) of the semiannual obligation of

19  the Commonwealth in relation to the payment of accrued interest on the General

20  Obligation Bonds and (ii) a twelfth (1/12) of the annual obligation of the

21  Commonwealth in relation to the payment of principal of the General Obligation

22  Bonds. Said funds must be maintained and invested by the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                22

1    Trustee of the General Obligation Bonds in accordance with the provisions of the

2    General Obligation Bond Contract.

3           (b)        From the time of issuance, the General Obligation Bonds shall

4    be automatically secured by a first statutory lien over the funds deposited in

5    the Debt Service Fund, including any income or collected amounts generated

6    from said funds. Said first statutory lien shall be created, come into effect and

7    executed automatically, and shall be valid and binding from and after the

8    Effective Date, without requiring any action or agreement by any other Person.

9    It shall not be necessary to execute, sign or register any instrument in an any

10   official record or in any government registry or office in order to execute or

11   continue to have said first statutory lien or in order to establish or maintain the

12   priority herein established. The lien established in this Article shall be valid,

13   binding and enforceable, and shall be executed against all Persons having any

14   tort or contractual claims, or any other kind of claim, against the

15   Commonwealth or its assets regardless of whether or not said Persons were

16   notified of said lien.

17   **ARTICLE 204.- TAX PAYMENT EXEMPTION.**

18          The General Obligation Bonds, including, but not limited to, any

19   payments or income in relation to the General Obligation Bonds and the

20   transfer of General Obligation Bonds, shall be, at all times, fully exempt from

21   all types of taxes (including, but not limited to, income taxes), fees, permits,

22   stamps and other charges collected by the Commonwealth or by

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1  any Government Entity, and from any and all related withholdings. The holders

2  and beneficiaries of the General Obligation Bonds shall not have to file returns

3  or any other tax report or similar requirement in relation to the Commonwealth

4  or any Government Entity as a result of having, owning or transferring General

5  Obligation Bonds.

6  **ARTICLE 205.- COMMONWEALTH AGREEMENTS.**

7      The Commonwealth, for the purpose of becoming contractually bound,

8  and for the benefit of all initial and subsequent holders of the General

9  Obligation Bonds, hereby agrees that, until all obligations related to said

10  bonds have been fully satisfied, in accordance with their terms, the

11  Commonwealth:

12      (a)    shall not carry out any action which (1) prevents the monthly deposit of

13  funds in the Debt Service Fund in accordance with Article 203 of this Law, (2) limits or

14  alters the rights of the Commonwealth in accordance with the Plan and the Confirmation

15  Order to comply with the terms of any agreements with the holders of the General

16  Obligation Bonds, or (3) undermines the rights and remedies of the holders of the General

17  Obligation Bonds;

18      (b)    shall do and carry out all actions allowed by law and that are reasonably

19  necessary or advisable to make sure that the payment of interest to the holders of any

20  General Obligation Bonds is exempt from payment of federal taxes, and is and continues

21  to be excluded from the gross income for the purposes of federal income taxes, to the

22  extent applicable; and

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1        (c)     shall take steps for all Fiscal Plans of the Commonwealth to include

2   provisions for payment each Fiscal Year of principal of and interest on the General

3   Obligation Bonds in accordance with the terms of the General Obligation Bond Contract;

4   and

5        (d)     to the extent necessary to comply with its obligations to pay the

6   General Obligation Bonds, shall apply (i) the product of the 1.03% property tax

7   collected in accordance with Law 107-2020, as amended, known as the "Puerto

8   Rico Municipal Code," by the Municipal Income Collection Center of the

9   Commonwealth of Puerto Rico, (ii) any money resulting from the operation of Article

10   VI, Section 8, of the Constitution of the Commonwealth, and (iii) any other available

11   resource of the Commonwealth, to the payment of principal and interest (and

12   accrued value) on said General Obligation Bonds; provided that (A) this agreement

13   does not give the holders of said General Obligation Bonds a lien on said income,

14   money and resources, and (B) for purposes of compliance with this agreement, to

15   the extent that said income, money and resources are transferred to the General

16   Fund of the Commonwealth, it shall be considered that the payments of principal

17   and interest (and of accrued value) made to the holders of the General Obligation

18   Bonds stemming from the General Fund of the Commonwealth have been made

19   from said income, money and resources in the order established above.

20   **CHAPTER 3 – CONTINGENT VALUE INSTRUMENTS**

21   **ARTICLE 301.- ISSUANCE OF IVCs.**



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1      (a)    From and following the Effective Date, the Representative of the Governor

2    shall be authorized to approve the offer, sale and issuance, in accordance with terms of

3    the IVC Contract, the Confirmation Order, the Plan and the Supplementary Agreements,

4    of IVCs in two subseries – General Obligation IVCs and Clawback IVCs – up to an

5    aggregate amount of $3,500,000,000 and $5,239,002,764, respectively. Each IVC series

6    may include one or more subseries.

7      (b)    The IVCs shall be dated and be due at the time or times determined by the

8    Representative of the Governor, as the representative of the Commonwealth, and

9    authorized in the IVC Contract, provided that the General Obligation IVCs shall be due no

10    later than in Fiscal Year 2044, and the Clawback IVCs shall be due no later than in Fiscal

11    Year 2052. IVCs shall not accrue interest and shall be subject to redemption as determined

12    by the Representative of the Governor and authorized in the IVC Contract in accordance

13    with and pursuant to the Plan. The Representative of the Governor shall determine the form

14    of the IVCs and the manner in which to issue the IVCs, and shall establish the denomination

15    or denominations of the IVCs and the place or places where they shall be paid and their

16    other terms, all of which shall be in accordance with and pursuant to the Plan.

17      (c)    IVCs shall be legal, valid and binding obligations in the

18    Commonwealth, issued in accordance with Article VI, Section 2, of the Constitution

19    of the Commonwealth, and payable in accordance with the terms of the IVC Contract

20    and the Supplementary Agreements, provided that, in accordance with the IVC

21    Contract:

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

1       (1) no payment shall be made to the holders of the IVCs (unless
2    they are holders of the Rum Excise Tax Claims Subseries under the
3    circumstances established in subsection (2) below) in a Fiscal Year
4    unless a Higher IVU Yield Condition occurs during the previous Fiscal
5    Year;

6       (2) no payment shall be made in a Fiscal Year to the holders of the
7    Rum Excise Tax Claims Subseries unless a Higher IVU Yield Condition or a
8    Higher Rum Excise Tax Yield Condition occurs during the previous Fiscal
9    Year;

10      (3) no payment shall be made to the holders of the General
11   Obligation IVCs or Clawback IVCs in excess of the Maximum Aggregate of
12   General Obligation IVCs or the Maximum Aggregate of Clawback IVCs,
13   respectively;

14      (4) from the due date of each IVC series, if the Commonwealth has made
15   all payments required under said series in accordance with the IVC Contract, it
16   shall be considered that all of the obligations of the Commonwealth under said
17   series have been complied with and that the series are not in circulation,
18   regardless of whether or not the Maximum Aggregate of General Obligation IVCs
19   or Maximum Aggregate of Clawback IVCs was reached, as applicable, as of said
20   date.

21   (d)    In the event that any official, whose signature or facsimile signature appears
22   in any IVCs authorized under this Law, stops occupying his or her position before delivery

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1  of said IVCs, said signature or facsimile signature shall continue to be valid and sufficient

2  and, for all purposes, it shall be considered that said official remained in his or her position

3  until said delivery. Furthermore, any IVCs may contain the signature or facsimile

4  signature of persons who, at the time of issuance of said bonds, are the officials

5  authorized to sign them, but who, on the date of the IVCs, were not occupying their

6  positions.

7      (e)    IVCs issued in accordance with the IVC Contract are notes of the

8  Commonwealth for all purposes and shall be considered negotiable instruments under

9  the laws of Puerto Rico.

10      (f)    The IVCs authorized by this Law shall be issued in registered form.

11      (g)    Only for the purpose of calculating the maximum annual service of the

12  public debt of the Commonwealth in accordance with Article VI, Section 2, of the

13  Constitution of the Commonwealth, it shall be assumed that the debt service payable

14  under the IVCs in any Fiscal Year shall be equal to the maximum amounts that could be

15  payable during said Fiscal Year under the IVCs in accordance with the IVC Contract.

16      (h)    It is hereby established that the debt services payable under the IVCs in

17  any Fiscal Year shall in no way undermine the obligations and reserves created by the

18  Sales Tax Financing Corporation (COFINA, acronym in Spanish).

19  **ARTICLE 302.- PLEDGING AS SECURITY THE GOODWILL, CREDIT AND POWER TO**

20  **IMPOSE TAXES**.

21      The goodwill, credit and power to impose taxes of the Commonwealth are hereby

22  irrevocably pledged to secure the punctual payment of IVCs issued under the provisions of this

23  Law according to and at the time of their due date in

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1    accordance with the terms of the IVC Contract. The Secretary of the Treasury is
2    hereby authorized and instructed to pay the IVCs on their due date or when redeemed
3    in accordance with the IVC Contract, from the resources of the Commonwealth during
4    the Fiscal Year on which said payment is required, and the provisions of this Law in
5    relation to payment of IVCs shall be considered a continuous obligation of the
6    Secretary of the Treasury to make the payments in the Fiscal Year on which said
7    payment is required, even if no specific assignments have been made for said
8    purpose. The Representative of the Governor is hereby authorized and instructed to
9    include in the IVC Contract the commitment herein established by the Commonwealth
10   in relation to the IVCs, and it shall be established, in said IVCs, that the goodwill,
11   credit and power to impose taxes of the Commonwealth are pledged to secure the
12   payment of the same.

13   **ARTICLE 303.- TAX PAYMENT EXEMPTION.**

14          The IVCs, including, but not limited to, any payments or income in relation to
15   the IVCs and the transfer of IVCs, shall be, at all times, fully exempt from all types of
16   taxes (including, but not limited to, income taxes, fees, permits, stamps and other
17   charges collected by the Commonwealth or by any Government Entity, and from any
18   and all related withholdings). If the IVCs are originally issued to a trust, the distributions
19   made by said trust to its beneficiaries attributable to payments or income received by
20   the trust in relation to the IVCs and the transfer of IVCs by the trust, if allowed, as well
21   as the transfer of interest in said



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1   trust, shall be, at all times, fully exempt from all types of taxes (including, but

2   not limited to, income taxes, fees, permits, stamps and other charges

3   collected by the Commonwealth or by any Government Entity, and from any

4   and all related withholdings). The holders and beneficiaries of the IVCs,

5   and/or of an interest in a trust that owns the IVCs, shall not have to file returns

6   or any other tax report or similar requirement in relation to the

7   Commonwealth or any Government Entity as a result of having, owning or

8   transferring IVCs.

9   **ARTICLE 304.- AGREEMENTS OF THE COMMONWEALTH OF PUERTO**

10  **RICO.**

11          The Commonwealth, for the purpose of becoming contractually

12  bound, and for the benefit of all initial and subsequent holders of the IVCs,

13  hereby agrees that, until all obligations in relation to said bonds have

14  been fully paid or satisfied in accordance with their terms, the

15  Commonwealth:

16          (a)   shall not carry out any action which:

17                  (i)     limits or alters the rights of the Commonwealth in accordance with

18                  the Plan and the Confirmation Order to comply with the terms of any

19                  agreements with the holders of the IVCs;

20                  (ii)    undermines the rights and remedies of the holders of the IVCs; or

21                  (iii)   limits the ability of the holders of the IVCs to monitor the yield of

22                  the Measured IVU and of the Rum Excise Tax Income of the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION          30

1   Commonwealth available for payment of the IVCs (in accordance with
2   the Plan and as established in the IVC Contract); provided, however,
3   that the above shall not prevent the Commonwealth from being able to
4   exercise its power, by way of a change in the law, to eliminate the
5   Measured IVU, or replace the Measured IVU with a Measured Substitute
6   Tax, each one in accordance with the IVC Contract, which shall protect
7   the holders of the IVCs from a reduction as a result of said elimination
8   or replacement of the probability of satisfying the Higher IVU Yield
9   Condition; and it is also provided that the Commonwealth shall disclose
10  on time the information that may be required under the IVC Contract in
11  relation to the Measured IVU, the sales and use tax collected amounts,
12  and any adjustments to the base limits of 5.5% of IVU made in
13  accordance with the IVC Contract;

14  (b)       shall make sure that any Fiscal Plan of the Commonwealth
15  submitted to the Puerto Rico Financial Oversight and Management Board under
16  the PROMESA Act after the Effective Date, while said entity is present and
17  operating in Puerto Rico, includes provisions for payment each Fiscal Year of
18  principal of and interest on the IVCs in accordance with the terms of the IVC
19  Contract to the extent that the Higher IVU Yield Condition or the Higher Rum
20  Excise Tax Yield Condition, as applicable, occur during the previous Fiscal
21  Year.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1  **CHAPTER 4 – MUNICIPALITIES**

2  **ARTICLE 401.- EXTRAORDINARY FUND**

3      The "Extraordinary Fund to Deal With Waste Collection and Disposal and to

4  Implement Recycling Programs in Municipalities," hereinafter the "Extraordinary

5  Fund," is hereby created, which shall be in the "Municipality Matching Fund" provided

6  in Article 7.015 of Law 107-2020, as amended, but in an account separate from other

7  income in said fund, and which shall be used for the specific purposes provided in this

8  Law.

9  **ARTICLE 402.-** Declaration of Public Policy

10     The Government of Puerto Rico hereby declares that the public policy of

11 the Commonwealth is to guarantee to its people the efficient collection and

12 disposal of waste, solid waste, rubble, as well as the implementation of recycling

13 programs to deal with said waste; therefore, to the extent that the Debt Adjustment

14 Plan includes reductions in the amount of the secured debt, said generated

15 savings must be made accessible to the municipalities so that they may provide

16 these services.

17 **ARTICLE 403.- REMITTANCE OF SAVINGS IN THE DEBT PAYMENT TO THE**

18 **EXTRAORDINARY FUND**

19     The Extraordinary Fund established in Article 401 of this Law shall receive

20 an annual assignment from the General Fund, which shall be equivalent to the

21 reduction in state debt in the Debt Adjustment Plan based on the 1.03 tax on movable

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                   32

1   and immovable property, which shall not be lower than sixty two million dollars

2   ($62,000,000).

3   **Article 404.- PURPOSES OF THE EXTRAORDINARY FUND**

4       Municipalities shall only be able to access the financial resources of the

5   Extraordinary Fund herein provided, exclusively and specifically for the purposes

6   described below:

7       (a)   waste collection and disposal;

8       (b)   solid waste collection and disposal;

9       (c)   rubble collection and disposal;

10      (d)   recycling implementation, collection and disposal.

11  **Article 405.- FORMULA OF DISTRIBUTION AMONG MUNICIPALITIES**

12      In order to achieve a fair distribution of the resources of the Extraordinary Fund,

13  the following criteria shall be used to determine the amounts to which the municipalities

14  may have access:

15      (a)   Total persons that are beneficiaries of the Nutritional Assistance Program,

16  per capita, according to a certification in this regard issued by the Department of Child

17  and Family Services, determined in the immediately previous fiscal year or in the closest

18  fiscal year in which the information is obtained.

19      (b)   The functional budget per capita of each municipality, of the immediately

20  previous fiscal year or of the closest fiscal year in which the information is obtained.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1    (c)    The assessed value of the taxable property per capita located within the

2    territorial limits of each municipality, corresponding to the immediately previous fiscal year

3    or to the closest fiscal year in which the information is obtained.

4    (d)    The municipality population per square mile, according to the last ten-year

5    census.

6    The methodology for distribution shall be determined based on the parameters

7    provided in this article, but the parameters existing for distributing Municipality

8    Matching Fund resources may be incorporated, as long as they are not contrary to the

9    purposes and objectives herein described, by the CRIM Government Board. The

10   application of said methodology must benefit the municipalities receiving the lowest

11   income from property taxes or other sources, as well as the municipalities with the

12   highest number of Nutritional Assistance Program dependents and highest population

13   density.

14   **CHAPTER 5 – AMENDING AND REPEALING CERTAIN LAWS  IN ORDER TO**

15   **SECURE FUNDS FOR THE GENERAL FUND AND GUARANTEE THAT ALL**

16   **LEGISLATION COMPLIES WITH THE AVAILABILITY OF FUNDS ESTABLISHED IN**

17   **THE FISCAL PLAN.**

18   **ARTICLE 501.- SUBSECTION (A) OF ARTICLE 3 OF LAW NO. 147,**

19   **ENACTED ON JUNE 18, 1980, AS AMENDED, IS AMENDED TO READ AS**

20   **FOLLOWS:**

21   "Article 3.- Functions and Duties of the Office of Management and Budget.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                34

1      (a)    The Office of Management and Budget under the rules, regulations,
2  instructions and orders issued by the Governor, shall advice the Chief Executive,
3  Legislative Assembly, and government bodies as to budgetary, programmatic and
4  administrative management matters, as well as to matters of a fiscal nature related to
5  their duties; carry out the necessary tasks that would allow the Governor to submit to
6  the Legislative Assembly the Government General Budget proposal, in accordance
7  with Article 4 of this Law, including Public Corporations. Furthermore, it shall make
8  sure that the implementation and administration of the budget by public agencies are
9  carried out in accordance with the assignment resolutions and laws, with the soundest
10  and most adequate fiscal and managerial rules of administration, and in accordance
11  with the provisions of the Fiscal and Economic Growth Plan approved in accordance
12  with the Puerto Rico Fiscal Responsibility and Economic Revitalization Act (the "Fiscal
13  and Economic Growth Plan") and with the programmatic purposes for which public
14  funds are assigned or provided. It shall evaluate the programs and activities of public
15  bodies in terms of economy, efficiency and effectiveness and shall submit to the
16  Governor reports with recommendations for implementing the same. Furthermore, it
17  shall prepare and maintain control over all fiscal and budgetary documents that are
18  necessary to administer the budget and make the proper changes, amendments or
19  adjustments, subject to the legal provisions and rules established by the Legislative
20  Assembly and the Governor. For these purposes, and in order for the Legislative
21  Assembly to be able to analyze that the legislative measures comply with the Certified
22  Fiscal

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                 35

1    Plan, the Office of Management and Budget shall have the ministerial duty to provide

2    and send an official certification validating the availability of funds with respect to

3    legislative measures requested by the legislative committees within a period of five (5)

4    business days from the moment that the same are requested. It shall submit, along

5    with the Secretary of the Treasury, a detailed report regarding income and expense

6    projections for the following fiscal year and corresponding to the General Budget

7    proposed before the Legislative Assembly within a period not to exceed five (5)

8    calendar days following submission of the General Budget proposal for the

9    Government of the Commonwealth of Puerto Rico by the Governor. It shall remain

10   informed as to new trends in the budgetary and managerial field of public

11   administration in order to evaluate and adjust the techniques, methods and

12   approaches applying to the local administrative field, both as to the creation and

13   implementation of the budget and the evaluation of programs, managerial analysis and

14   operational and administrative audit. Furthermore, it must propose the legislation that

15   is considered necessary and advisable to incorporate said approaches and trends to

16   our budgetary and administrative process.

17         (b)     …"

18   **ARTICLE 502.- ARTICLE 3 OF LAW 44 ENACTED ON JUNE 21, 1988,**

19   **AS AMENDED, KNOWN AS THE PUERTO RICO INFRASTRUCTURE**

20   **FINANCING AUTHORITY ACT, IS AMENDED TO READ AS**

21   **FOLLOWS:**

22         **Article 3.- Definitions**

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1 "The following words and terms, when used or made reference to in this
2 Law, shall have the meanings stated below, unless the context clearly indicates
3 otherwise:

4 (a) …

5 …

6 (j) Development Fund — Shall mean the Infrastructure Development Fund
7 created under Article 25 of this Law, in accordance with the provisions of Law No. 54
8 enacted on August 4, 1997 (27 L.P.R.A. § 431 et seq.)

9 (k) …

10 …

11 (r) Corpus Account — Shall mean the corpus account of the Development
12 Fund, as established in subsection (a) of Article 25 of this Law. The capital return
13 generated by this account must be used as established in Article 25 of this Law.

14 (s) Additional accounts — Shall mean accounts created in the Development Fund,
15 besides the Corpus Account, that are necessary to achieve the purposes of this Law, as
16 established in subsection (a) of Article 25 of this Law."

17 **ARTICLE 503.- SUBSECTION (M) OF ARTICLE 7 OF LAW 44 ENACTED ON JUNE**
18 **21, 1988, AS AMENDED, IS AMENDED TO READ AS FOLLOWS:**

19 Article 7. – General Powers.

20 The Authority shall have all of the necessary and advisable powers to carry out
21 and achieve the purposes and provisions of this Law, including, but not limited to, the
22 following:

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1    "(a) …

2       (m) Put a lien on or pledge as security any property for payment

3    of principal and interest on any bonds issued by the Authority or bonds

4    issued by a beneficiary entity, and pledge as security all or part of the

5    income received by the Authority."

6    **ARTICLE 504.- ARTICLES 25 AND 34 OF LAW 44 ENACTED ON JUNE 21, 1988,**

7    **AS AMENDED, ARE REPEALED, AND ARTICLES 25-A AND 35 ARE**

8    **RENUMBERED AS ARTICLES 25 and 34, RESPECTIVELY.**

9    **ARTICLE 505.- ARTICLE 23.01 OF LAW 22-2000, AS AMENDED, IS AMENDED TO**

10   **READ AS FOLLOWS:**

11      "Article 23.01. — Procedure for payment of duties.

12      All owners of a motor vehicle, subject to payment of annual permit duties, shall

13   pay at any internal revenue collections office of any municipality, at the location

14   designated by the Secretary of the Department of the Treasury, at official inspection

15   stations, banks, or at the location designated by the Secretary, the duties applicable to

16   the vehicle each year, as indicated in the notice that must be sent by the Secretary in this

17   regard. Duties in this regard shall be paid in advance for the full year, except that if at the

18   time of payment of the duties there are less than six (6) months before the next renewal,

19   the payment required shall be equal to the months that have yet to elapse on the date of

20   their accrual, provided that a fraction of a month shall be calculated as a full month. This

21   provision shall apply to all motor vehicles, regardless of the amount paid by the same in

22   respect of

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                    38

1   license duty per year. Upon receipt of the corresponding duties, the collector shall issue
2   the motor vehicle permit which shall consist of the notification form issued by the
3   Secretary, including the appropriate notes and signature of the collector, indicating that
4   payment of the rights has been made. Along with the permit, the collector shall deliver
5   the corresponding registration sticker or number plates, as applicable. There shall only
6   be one (1) registration sticker on the motor vehicle during the year of the effective period
7   of the payment of rights. Upon consultation with the Secretary of the Treasury, the
8   Secretary shall be able to adopt Regulations for the purpose of granting a discount of
9   up to ten percent (10%) to drivers who choose to obtain and pay in advance multiannual
10  registration stickers for their vehicles. The owner of the inspection station shall make
11  deposits in a special account for the Department of the Treasury to make daily transfers
12  of issued registration stickers. The Department of the Treasury shall approve
13  regulations for these purposes, requiring a bond and insurance to guarantee receipt of
14  amounts collected from sold registration stickers. The service fee to be charged by the
15  inspection station, bank or any other location designated by the Secretary of the
16  Treasury shall not be higher than five dollars ($5). In cases related to duties for exams,
17  including learner's permits, issuance of license duplicates, driver's license renewal,
18  vehicle transfer, and all other charges in respect of duties, payment receipts or internal
19  revenue stamps shall be used, or any other payment method established by the
20  Secretary of the Treasury."
21  **ARTICLE 506.- ARTICLE 23.02 OF LAW 22-2000, AS AMENDED, IS AMENDED TO**
22  **READ AS FOLLOWS:**

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                    39

1        "Article 23.02. — Duties to be paid. The following rules shall be followed in relation

2    to the duties to be paid under this Law:

3            (a) …

4            …

5            (e)…

6            (f)…"

7    **ARTICLE 507. - ARTICLE 1.03(B) OF LAW 351-2000, AS AMENDED, IS AMENDED**

8    **TO READ AS FOLLOWS:**

9            Article 1.03 (b). — Definitions.

10           The following words and terms, when used or made reference to in this

11   Law, shall have the meanings stated below, unless the context indicates

12   otherwise:

13           (a) …

14           …

15           (l) …

16           (m) …

17           (n) …

18           (ñ) …

19           (o) …"

20   **ARTICLE 508. – SUBSECTION (H) OF ARTICLE 2.02 OF LAW 351-2000, AS**

21   **AMENDED, IS AMENDED TO READ AS FOLLOWS:**

22           **Article 2.02 – Specific Powers of the Authority.**

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1   "The Authority shall have the following powers and rights"

2   (a)…

3   (h) Take out loans in order to fund the Center's costs, improvement

4   projects and projects in private lots or the District and comply with any of the

5   corporate purposes or powers, at the discretion of the Board; draw and issue

6   negotiable bonds of the Authority; guarantee payment of said bonds, or any

7   part thereof, through pledge, mortgage, assignment or deed of trust of the

8   Authority's properties located in or out of the District, benefit charges, other

9   income, rent, fees, receipts and any interest in contracts, leases or

10  subleases; enter into any type of agreement with purchasers or holders of

11  said bonds or with other persons the Authority has an obligation to with

12  regards to any bond, issued or to be issued, as the Authority considers

13  advisable, which shall constitute contracts with said purchasers or holders;

14  obtain any facility that increases its capacity to borrow money or issue debt

15  or which increases its liquidity with regards to any bonds in the form the

16  Authority deems advantageous; and in general, provide guarantees for

17  payments of bonds and the rights of the holders of said bonds."

18  **ARTICLE 509.– ARTICLE 8 OF LAW 179-2002, AS AMENDED, IS**

19  **AMENDED TO READ AS FOLLOWS:**

20  "Article 8- Governmental agencies, municipalities, as well as entities that

21  receive allotments of public funds shall use them for the purposes established

22  in the appropriate joint resolution and in no way shall they dispose of said

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1  funds for other purposes or goals that are not indicated in a categorical and specific

2  manner in the approved joint resolution.

3       Any change to or modification of the purposes or goals established in the

4  original joint resolution shall entail the start or repetition by the Legislative Assembly

5  of all of the procedures.

6       Compliance with these joint resolutions, assigning public funds, shall be

7  carried out following the rules and procedures applicable to municipalities and

8  government instrumentalities. With the exception of natural persons, any executed

9  contract and any other legal document shall be subject to the laws of the

10  Commonwealth of Puerto Rico, and shall be interpreted in accordance thereto.

11       In order for the Legislative Assembly to be able to analyze that the

12  assignments or reassignments of public funds provided for under this Law comply

13  with the Certified Fiscal Plan, the Budget and Management Office shall have the duty

14  to provide and send an official certification that validates the availability of funds with

15  regards to the legislative measures requested by the legislative committees in a

16  period of five (5) business days from the date in which they are requested."

17  **ARTICLE 510.– ARTICLE 31 OF LAW NO. 272 ENACTED ON SEPTEMBER**

18  **9, 2003, AS AMENDED, IS AMENDED TO READ AS FOLLOWS:**

19       "Article 31. – Use of Funds.

20  The Tourism Office shall distribute the amounts obtained from the Tax established in Article

21  24 of this Act, as follows:

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                  42

1    (i) two (2) per cent of the total tax collected shall enter on a monthly basis in

2    the general fund of the Tourism Office to cover expenses for operation, management

3    and distribution of the Tax income or for any other use provided by the Tourism Office.

4    (ii) five (5) percent of the total Tax collected shall be deposited on a monthly basis

5    into the General Fund of the Treasury Department for Fiscal Years 2005-2006 and

6    2006-2007, in the National Park Company's reserves for Fiscal Years 2007-2008 and

7    2008-2009, and from Fiscal Year 2009-2010 in the reserves for the Tourism Office.

8    Starting the year that the Authority certifies to the Treasury Department and the

9    Tourism Office the start of operations of the Convention Center and during the

10   subsequent ten (10) years, this five percent (5%) shall be available to cover any

11   deficit, if any, arising from the operations of the facilities that the Convention Center

12   District Authority, in a reserve to be kept by the Tourism Office. It is further provided,

13   however, that for each fiscal year and/or each time the Authority of the Convention

14   Center District Authority proposes submitting a budget that exceeds the deficit of two

15   million five hundred thousand (2,500,000) dollars, the budget of the Convention

16   Center District Authority shall be submitted to the Board of Directors of the Authority

17   to the Tourism Office and to the Treasury Secretary for Fiscal Years 2005-2006 and

18   2006-2007 and to the Board of Directors of the National Park Company for Fiscal

19   Years 2007 and 2008 and 2008-2009 in a specific meeting to that effect and to the

20   Board of Directors of the Authority and the Tourism Office from Fiscal Year 2010-

21   2011 on. This five percent (5%) shall remain available during each fiscal year in a

22   special reserve account to be

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                    43

1   maintained by the Tourism Office to cover any deficit in excess of two million five

2   hundred thousand (2,500,000) dollars, arising from the operation of the facilities of

3   the Convention Center District Authority. For each fiscal year, any remainder, after

4   covering said operational deficit, if any, shall be released from the special reserve

5   and shall be available for use by the Treasury Department for Fiscal Years 2005-

6   2006 and 2006-2007 of the National Park Company for Fiscal Years 2007-2008 and

7   2008-2009 starting Fiscal Year 2010-2011 for use of the Tourism Office. Starting on

8   Fiscal Year 2015-2016 and during the subsequent five (5) years, this five percent

9   (5%) shall be transferred via quarterly contributions by the Department to the

10  Authority to cover costs associated exclusively with the operation of the Puerto Rico

11  Convention Center. It is further provided, however, that for each fiscal year the

12  Convention Center District Authority shall submit its audited financial statements

13  along with a report showing the use of the transferred funds as established in

14  subsections (ii) and (iv) of this section to the Board of Directors of the Authority and

15  to the Director of the Tourism Office in a specific meeting to that effect. If at the end

16  of any fiscal year said audited financial statements reflect net profits, the Convention

17  Center District Authority shall return to the Tourism Office the amount generated as

18  net profits without exceeding the total amount transferred by the Tourism Office to

19  the Convention Center District Authority in that same fiscal year, in accordance with

20  subsections (ii) and (iv) of this section. (iii) two million five hundred thousand

21  (2,500,000) dollars shall be transferred by the Tourism Office to the Convention

22  Center District

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1  Authority in quarterly contributions of six hundred and twenty-five thousand
2  (625,000.00) dollars to cover costs associated exclusively with the operation of the
3  Convention Center District. However, it is further provided that for each fiscal year
4  and/or each time a modified budget is proposed to be submitted, the budget of the
5  Convention Center Authority shall be submitted to the Board of Directors of the
6  Authority and Executive Director of the Tourism Office in a specific meeting for said
7  purposes. This amount shall be transferred as established in this section starting
8  Fiscal Year 2015-2016 and for a period of five (5) years. (iv) Up to four million
9  (4,000,000) dollars shall be kept available during each fiscal year in a special reserve
10 account that the Tourism Office shall maintain for operational expenses related to
11 specialized matters in the sector, its expenses and/or monitoring and implementation
12 by it of the Destination Marketing Service Contract contemplated in Article 8 of the
13 "Promotion of Puerto Rico as a Destination Act." (v) The remainder resulting after the
14 assignments and reserves provided for in paragraphs (i), (ii), (iii) and (iv), up to a
15 maximum of twenty-five million (25,000,000) dollars, shall be assigned to the
16 Corporation. The funds assigned to the Corporation shall be used by it for the
17 promotion, marketing, development and strengthening of the tourism industry in
18 Puerto Rico. If the remainder exceeds twenty-five million (25,000,000) dollars, said
19 excess shall be used by the Tourism Office to perform its duties dedicated to
20 specialized matters in the sector and its expenses. The Commerce and Economic
21 Development Department of the Tourism Office shall submit an itemized breakdown
22 of the collection from the tax."

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

1  **ARTICLE 511.– A NEW ARTICLE 7A IS HEREBY ADDED TO LAW 103-2006, AS**
2  **AMENDED, SO THAT IT READS AS FOLLOWS:**

3       "Article 7A. Duty of the Budget and Management Office

4       So that the Legislative Assembly may analyze [sic] that the legislative measures
5  comply with the Certified Fiscal Plan, the Budget and Management Office shall have the
6  duty to provide and send an official certification that validates the availability of funds with
7  regards to the legislative measures requested by legislative committees in a period of
8  thirty (30) business days from the day they are requested. Said certification shall include
9  the exact amount available, whether greater than or lesser than provided in the measure
10 being considered.

11      Upon issuing an official certification, the Budget and Management Office
12 guarantees the availability of said funds. An official certification informing that the funds
13 are committed for a specific use or project other than what is provided in the legislative
14 measure that is requested shall be accompanied by evidence of the obligation, copy of
15 the invoices and any other relevant information showing that said funds are not
16 available.

17      The process to request official certifications of availability of funds by the
18 legislative committees shall not require any special form or process, it shall only
19 require a letter from the legislative committee requesting the appropriate
20 certification.

21      When any permanent, special or joint committee of the Legislative Assembly of
22 Puerto  Rico submits any report recommending approval of

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

1   a legislative measure in which an official certification is requested, it shall include

2   in the appropriate report a section titled "Duty of the Budget and Management

3   Office related to the availability of funds." This Section shall describe the fiscal

4   impact, if any, that is estimated that the measure shall have on the budgets of the

5   agencies, departments, organizations, instrumentalities or public corporations. If

6   the Budget and Management Office does not issue the appropriate certification in

7   the period provided under this Article, said section of the report shall include the

8   following statement: "The Budget and Management Office did not provide the

9   official certification as to availability of funds in the period provided by law in

10  breach of its duty provided under Law 103-2006, as amended, better known as

11  the "2006 Fiscal Reform Act of the Government of the Commonwealth of Puerto

12  Rico."

13  **ARTICLE 512 –SECTION 3060.11 OF LAW NO. 1 ENACTED ON JANUARY 31,**

14  **2011, AS AMENDED, IS AMENDED TO READ AS FOLLOWS:**

15       Section 3060.11 – Use of Funds.

16       "The proceeds of the taxes and licensing fees collected in accordance with this

17  Subsection shall be deposited in the Puerto Rico General Treasury Fund.

18  **ARTICLE 513- SECTION 3060.11A OF LAW NO. 1 ENACTED ON JANUARY 31, 2011,**

19  **AS AMENDED, IS HEREBY ELIMINATED.**

20  **ARTICLE 514- LAW NO. 39 ENACTED ON MAY 13, 1976, AS AMENDED, IS HEREBY**

21  **REPEALED.**

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION                    47

1  **ARTICLE 515.- ARTICLE 7.018 OF LAW 107-2020, AS AMENDED, IS AMENDED TO**

2  **READ AS FOLLOWS:**

3  "Article 7.018 – Funds – Trusts; Distribution

4  The funds in the general trust established by the CRIM with the Designated Trustee,

5  pursuant to subsection (c) of Article 7.003 of this Chapter, shall be distributed by the

6  CRIM in the order of priority indicated below:

7      (a) The amount in respect of the 1.03% special tax shall be deposited in the

8          General Fund.

9      (b) …

10      (c) …

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION          48

1          ..."

2    **ARTICLE 516.- ARTICLE 7.027 OF LAW 107-2020, AS AMENDED, IS AMENDED TO**

3    **READ AS FOLLOWS:**

4    Article 7.027 – Tax Collection and Income in Funds and Application of Tax Proceeds

5    (Bond Redemption Fund)

6    Proceeds from taxes imposed under Articles 7.025 and 7.026 shall go into the general

7    trust established by the CRIM with the Puerto Rico Fiscal Agency and Financial Advisory

8    Authority (AAFAF, acronym in Spanish), in accordance with Chapter I of this book.

9          (a)  Proceeds from special taxes on property imposed under Article 7.026 shall go

10               into the General Fund.

11         (b) …

12         (c) …

13         (d) …"

14   **CHAPTER 6 – MISCELLANEOUS PROVISIONS**

15   **Article 601.-Prohibition to Undermine the Obligations of the Sales Tax Financing**

16   **Corporation (COFINA)**

17         It is hereby established that the debt services payable under the IVCs in any

18   Fiscal Year shall in no way undermine the obligations of the Sales Tax Financing

19   Corporation (COFINA), including created reserves and obligations.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

**Article 602.-Authorization to the Representative of the Governor**

The responsibilities, powers, duties and authorizations given under the present Law to the Representative of the Governor shall be exclusively limited to what is provided in this Law, not to future issuance of debt.

**Article 603.– Severability**

If any clause, paragraph, subparagraph, section, or part of this Law is nullified or declared unconstitutional, the order issued to that effect shall not affect, prejudice, or invalidate the remainder of this Law. The effect of said order shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, subsection, or part thereof so nullified or declared unconstitutional. If the application to a Person or circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter or subsection or part of this Law is invalidated or declared unconstitutional, the resolution, decision or judgment to that effect shall not affect or invalidate the application of the remainder of this Law to such persons or circumstances in which it may be validly applied. It is the express and unequivocal will of this Legislative Assembly for courts to enforce the provisions and application of this Law, even if any of its parts is revoked, nullified, invalidated, undermined or declared unconstitutional, or even if its application to any person or circumstance is revoked, nullified or declared unconstitutional.

**Article 604.– Supremacy.**

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**

CERTIFIED TRANSLATION        50

1       The provisions of this Law shall prevail over any other general or specific

2   provision of any other law or regulation of the Government that is inconsistent with

3   this Law.

4   **Article 605.– Duration.**

5       This Law shall enter into effect immediately after its enactment, except for

6   Chapter 5 of this Law, which shall enter into effect on the Effective Date. The debt

7   Restructuring Transactions authorized under the present Law are completely

8   subject to the Financial Oversight and Management Board (FOMB) not approving

9   any cut to the pensions of retired government employees in the Restructuring or

10   Adjustment Plan."

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**DRA Ex. 431**