# LOAN AGREEMENT

This **LOAN AGREEMENT**, dated as of August 6th, 2008 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

## W I T N E S S E T H

**WHEREAS**, the Authority is performing certain improvements to its facilities, which are included in its Construction Improvement Program for fiscal year 2009 (the "Program");

**WHEREAS**, the Authority needs an interim financing to continue the acquisition, construction, equipping, installation and development of certain additional improvements to the Authority's facilities included in the Program;

**WHEREAS**, the Bank is willing to provide such interim financing in an amount not to exceed **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS** ($147,113,000.00) in accordance with the terms and conditions herein below set forth; and

**WHEREAS**, the Authority proposed to repay this interim financing with the proceeds of the Operational Management Agreement for the Private/Public Partnership on Highway PR-22 to be entered by the Authority with a third party yet to be determined;

**WHEREAS**, the Authority also has agreed that in case the PR-22 Operating and Management Agreement Process (PR-22 OMA) and other debt restructuring measures are not successfully implemented, or do not produce the projected benefits, it will implement the necessary increases in tolls to ensure compliance with bond indenture requirements and to allow repayment of the interim financing being authorized under this Resolution to protect the rating of its bonds;

**WHEREAS**, the Lender has determined to finance the loan to the Borrower with the proceeds of the next bond issue to be made by the Authority;

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Document 23951

1. Subject to the terms and conditions contained herein, the Lender hereby agrees to provide the Borrower from time to time a non-revolving line of credit in an aggregate principal amount not to exceed **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)** for the purpose of financing costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of additional improvements to the Authority's facilities included in the Program, chargeable to the capital account of the Authority and included in the Program (the "Line of Credit"). Proceeds of the Loan will be used to pay such costs or to reimburse the Authority's Construction Fund, created and established under Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended, (the "1968 Resolution"), or the Authority's Construction Fund created and established under Resolution 98-06 adopted by the Authority on February 26, 1998, as amended, (the "1998 Resolution") (collectively, "the Resolutions"), for the payment of such costs. The Line of Credit shall be evidenced by a Note for the principal amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)**, subscribed on this same date by the Borrower and payable to the order of the Lender.

2. The Borrower may borrow the Loan in one or more drawings ("Drawings") only for the eligible purposes or concepts approved by Resolution EC-1697 adopted by the Bank's Board of Directors on June 9, 2008. The Borrower shall request each Drawing by written notice to the Lender, with at least three days notice prior to the Drawing, signed by the Borrower's Executive Director or any officer authorized by the Executive Director, including a description of the projects to be financed. The Lender shall fund the requested Drawing on the date requested in such notice (which must be a Banking Day). Notice of Drawing from the Borrower, once received by the Lender, shall be irrevocable. For the purposes of this Agreement, "Banking Day" means a day on which commercial banks are open for business in San Juan, Puerto Rico.

3. The principal amount of the Line of Credit shall mature and be due and payable on June 30, 2009. The Borrower hereby agrees to repay the outstanding aggregate principal amount of the Loan at the principal office of the Lender in San Juan, Puerto Rico, from proceeds of the Operational Management Agreement for the Private/Public Partnership on Highway PR-22 to be entered by the Authority with a third party yet to be determined or with the proceeds of bonds to be issued by the Authority pursuant to the provisions of the respective sections of the Resolutions. If these sources were insufficient, the Borrower shall proceed in accordance with the provisions set forth in Paragraph 6. The maturity of the Loan only shall be extended by written consent of the President of the Bank, but in no event will the maturity of the Loan be extended beyond June 30, 2011. Each Drawing shall bear interest daily from the date such Drawing is made until its

Document 23951

AAFAF_CONF_0004168

repayment at a variable rate of interest, which rate may be revised monthly, *per annum* equal to the Lender's cost of funding for tax-exempt or taxable variable rate loan transactions or the cost of any other obligations or source of funds used to fund the Loan. For purposes of the preceding sentence, the cost of funding shall mean the applicable cost of any source of funds used to fund the Loan, plus in either case, a required margin cost. Initially, this required margin cost will be equal to 150 basis points. The required margin cost may be revised from time to time by the Lender to such an extent that when added to the applicable cost of funds, the interest rate so determined and applicable to the Loan will provide for a total coverage of what the Lender determines to be its "all-inclusive" funding costs.

Interest shall be payable monthly in arrears not later than the tenth (10th) Banking Day (as defined herein) following receipt from the Bank of the statement referred to in the next sentence of this paragraph, from any available moneys of the Authority. Not later than the fifth (5th) Banking Day of each month the Bank shall furnish to the Authority a written statement showing the amount of interest due and payable by the Authority on the Line of Credit for the preceding month. The Authority may prepay the Line of Credit at any time without penalty or premium. The Line of Credit shall be junior and subordinate to outstanding bonds of the Authority and shall be subject to certain other terms and conditions, all as contained in this Loan Agreement.

4. Payment of principal and interest on the Line of Credit shall be made in any coin or currency of the United States of America, which at the time of payment shall be legal tender for the payment of public and private debts.



5. The Borrower covenants that it will acquire, construct, equip, install and develop the additional improvements to the Authority's facilities, the cost of which is being financed or refinanced from the Line of Credit in accordance with law and all requirements of all governmental authorities having jurisdiction in respect thereof, and that it will complete such construction with all expedition practicable, and that such buildings, structures, other facilities and improvements to be constructed will be built in accordance with plans and specifications which shall have been prepared by an architectural or engineering firm or corporation having a favorable repute for skill and experience in such work; provided, however, that the Borrower may use its own staff of engineers and architects for the preparation of any such plan or specifications.

6. The Authority hereby represents to the Bank that if the PR-22 Operating and Management Agreement process (the "PR-22 OMA") and other debt restructuring measures are not implemented successfully, or do not produce the projected benefits, it will implement the necessary increases in tolls to ensure compliance with

Document 23951

AAFAF_CONF_0004169

bond indenture requirements and to allow repayment of the Line of Credit authorized under Resolution No. 2008-31, adopted by the Secretary of Transportation and Public Works on June 27, 2008 to avoid affecting negatively the rating of its bonds issued by Standard and Poors' and Moody's Investors Services.

The Authority agrees to provide to the Bank monthly updates on the development of the Public and Private Partnership transaction on the PR-22 OMA. The Authority understands and accepts that monthly disbursements by the Bank will be contingent upon GDB's Board of Directors' satisfaction with the progress of the transaction and its probability of completion.

7.  The Authority pledges certain of its unencumbered assets, identified in *Exhibit A*, to guarantee repayment of the Line of Credit if the PR-22 OMA process is not successfully implemented, or if it does not produce the projected benefits, and/or if toll increases referred to above are not implemented as required. Furthermore, the Authority hereby pledges not to sell, transfer, encumber or in any way dispose of the properties specified in *Exhibit A* that guarantee repayment of this financing without obtaining prior written consent from the Bank. The Authority acknowledges and accepts that this is an essential condition for of the Line of Credit, and that it shall compensate the Bank for any damages or expenses incurred as a result of its failure to comply with this obligation. The Authority agrees to submit to the Bank current title search reports for each of the properties listed in *Exhibit A* within thirty (30) days after execution of the Loan Agreement.

8.  The Authority represents that, as of the date of execution of the Loan Agreement, the current total estimated value of the properties identified in *Exhibit A* is **Fifty Eight Million Seven Hundred Seventy Seven Thousand Six Hundred Eighty Seven Dollars ($58,777,687).** Disbursements to the Authority from the Line of Credit will be limited to eighty percent (80%) of this amount to allow for overvaluation in the estimated costs of the properties. Additional disbursements will be authorized by the Bank upon presentation by the Authority of other properties, with the corresponding representations, and will be subject to GDB's management acceptance.

9.  The Authority represents that, as of the date of this Loan Agreement, there is no pending or threatened litigation, claim or proceeding which would affect the title to the properties in *Exhibit A*, or the Authority's right to convey them to GDB, if necessary. The Authority certifies that it has not done, suffered or permitted, or agreed to sell, lease, encumber or grant any interest in the properties listed in *Exhibit A* in any form or manner whatsoever; has not performed or permitted any act or entered into any transaction which will diminish or otherwise affect GDB's guarantee in such properties or which will prevent the Authority's obligations under this Loan Agreement. The Authority also represents that the properties are

Document 23951

not encumbered by any lien related to a bond issue or lines of credit. Therefore, there are no restrictions whatsoever in this regard as to the future transfer of the properties to or for the use of the Bank, if necessary.

The Authority also has no knowledge or notice of: (i) any action or intended action of any agency of eminent domain, condemnation or affectation proceedings (including but not limited to any right of way reservations) by the Government of the United States, the Government of Puerto Rico or its municipalities which could limit in any way the use of the properties by the Bank, if necessary; any denial of permits which would prevent the construction in the properties; any widening, change of grade or limitation on the course of or access to or from such properties to other streets, roads or highways abutting the properties; or of any special levy, tax or assessment to be levied against such properties.

10. To the best of the Authority's knowledge, the properties included in *Exhibit A* are free of environmental problems or conditions, there are no Hazardous Substances in the properties, and it has not violated any Environmental Law in connection with its ownership and/or operation of the properties. For purposes of this paragraph, "Hazardous Substances" shall mean any hazardous or toxic chemical, waste, byproduct, pollutant, contaminant, compound, product or substance, including, without limitation, asbestos, polychlorinated biphenyls, petroleum (including crude oil or any fraction or by-product thereof), and any material the exposure to, or manufacture, possession, presence, use, generation, storage, transportation, treatment, release, disposal, abatement, cleanup, removal, remediation or handing of which is prohibited, controlled or regulated by any Environmental Law. "Environmental Law" shall mean any federal, state, regional, county or local government statute, law, regulation, ordinance, order or code or any consent decree, judgment, permit, license, code, covenant, deed restriction, common law, or other requirement now or hereinafter enacted, pertaining to protection of the environment, health or safety of persons, natural resources, conservation, wildlife, waste management, and pollution (including, without limitation, regulation of releases and disposals to air, land, water and ground water), including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. 9601 *et seq.*, Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 and Solid and Hazardous Waste Amendments of 1984, 42 U.S.C. 6901 *et seq.*, Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977, 33 U.S.C. 1251 *et seq.*, Clean Air Act of 1966, as amended, 42 U.S.C. 7401 *et seq.*, Toxic Substances Control Act of 1976, 15 U.S.C. 2601 *et seq.*, Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. 651 *et seq.*, Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. 11001 *et seq.*, National



Document 23951

AAFAF_CONF_0004171

Environmental Policy Act of 1975, 42 U.S.C. 300(f) *et seq.*, and all amendments, as well as any similar state or local statute or code and replacements of any of the same and rules, regulations, guidance documents and publications promulgated thereunder.

The Authority agrees to indemnify GDB and hold GDB harmless for any and all damages caused to third parties as a result of Hazardous Substances existing in the properties listed in *Exhibit A* if any such claims were to be brought against the Bank while the Loan Agreement is in effect or until the date the properties are transferred to the Bank, if necessary.

11. The Authority will review its Construction Improvement Program (CIP) to limit the number of projects in the Program to those funded with federal assistance moneys, those already contracted or under construction, and those with legislative appropriations. The Authority, prior to committing any resources for the construction of CIP projects, will certify to GDB that it has identified the source and availability of the funds for those projects, and obtain the prior consent of GDB for the use of said funds.

12. The Authority will perform an analysis of its operational expenses with the objective of progressively reducing their projected level within its forecasted period. The Authority will implement immediately the necessary measures to maintain its annual operational expenses below the present level for the forecasted period (2009-2013).

13. No amendment or waiver of any provisions of this Agreement or consent to any departure by the Borrower herefrom shall be effective unless the same shall be in writing and signed by the Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

14. Any notices which may be given to either party hereunder shall be in writing, and if addressed to the Lender, sent to the offices of the Lender located at Roberto Sánchez Vilella f/k/a Minillas Government Center, de Diego Avenue, San Juan, Puerto Rico, 00940, Attention: Mr. Luis Alfaro, or to such other address or person as the Lender may hereafter notify the Borrower in writing, and if addressed to the Borrower, sent to the address of the Borrower: Puerto Rico Highway and Transportation Authority, Roberto Sánchez Vilella f/k/a Minillas Government Center, de Diego Avenue, San Juan, Puerto Rico, 00940, Attention: Ing. Luis M. Trinidad Garay, or such other address or person as the Borrower may hereafter notify the Lender in writing. Any such notice, if delivered personally or by facsimile transmission, shall be effective on the date when given, and if sent by mail, shall be effective three (3) Banking Days after posting.

Document 23951

AAFAF_CONF_0004172

15. The Borrower shall from time to time, upon request by the Lender, promptly provide the Lender with such information as to its finances and operations as the Lender shall reasonably request.

16. If there is no disbursement activity on the Line of Credit for a period of six months after its approval by the Bank, the Line of Credit will be canceled by the Lender.

17. The Borrower waives the requirements of demand, presentment, protest, notice of dishonor, and, in general, any other legal formality.

18. If the Borrower defaults in making any payment when due under this Agreement, the Lender may declare the Loan to be immediately due and payable. In case of recourse to the courts by the Lender in order to collect the whole or any portion of the principal or interest due, the Borrower agrees to pay a liquidated sum equal to 10% of the amount of the Loan to cover expenses of such proceedings, court costs, disbursements and attorney's fees, which amount will become immediately due and payable upon the filing of such judicial proceedings.

19. This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns. The Lender may assign to any other financial institution all or any part of or any interest in, the Lender's rights hereunder and in the Loan, and to the extent of such assignment such assignee shall have the same rights against the Borrower hereunder as does the Lender. The Borrower may not assign any of its rights nor delegate any of its obligations hereunder without the Lender's prior written consent. This Agreement shall be governed by, and the rights and obligations of the parties hereunder shall be construed in accordance with the laws of the Commonwealth of Puerto Rico.

20. This Agreement shall constitute a declaration of official intent of the Lender and the Borrower pursuant to Treasury Regulation Section 1.150-2.

Document 23951

AAFAF_CONF_0004173

IN WITNESS THEREOF, the Borrower and the Lender have caused this Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first above written.

GOVERNMENT DEVELOPMENT BANK    PUERTO RICO HIGHWAY AND
FOR PUERTO RICO    TRANSPORTATION AUTHORITY

By: _____    By: _____
    Camille Toro Torruella        Luis M. Trinidad Garay
    Acting Executive Vice President    Executive Director

Affidavit No. 507

Recognized and subscribed before me by Luis M. Trinidad Garay, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and a resident of San Juan, Puerto Rico, and Camille Toro Torruella, as Acting Executive Vice President of the Government Development Bank for Puerto Rico, of legal age, single and a resident of San Juan, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on August 6th, 2008.

_____
Notary Public

Comission : Permanent

Document 23951

AAFAF_CONF_0004174

## FIRST AMENDMENT TO LOAN AGREEMENT

This **FIRST AMENDMENT TO LOAN AGREEMENT**, dated as of September 30th, 2008 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

**WHEREAS**, pursuant to the terms and conditions of the Loan Agreement dated as of August 6th, 2008 (the "Loan Agreement") by and between the Borrower and the Lender, the Lender provided the Borrower interim financing in an amount not to exceed **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS** ($147,113,000.00) to finance certain costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements to the Authority's facilities included in its Construction Improvement Program for fiscal year 2009 (the "Program"); and



**WHEREAS**, the Authority has requested that the Bank authorize an amendment to the line of credit of $147,113,000 in order to use up to $25,000,000 for operational expenses;

**WHEREAS**, the Authority has represented to the Bank, as stated in Resolution No. 2008-43 adopted by the Authority on September 11, 2008, that such request is warranted because its actual income is $27,790,000 below projected income due to increases in the costs of petroleum; operational costs of the train and highways exceed projections; and because of an increase of $500,000 in the monthly debt service;

**WHEREAS**, the Authority also has represented in its Resolution No. 2008-43, and in accordance with Resolution No. 8933 adopted by the Board of Directors of the Bank on August 20, 2008, that it will implement immediately the necessary measures to maintain its operational expenses below the present level for the forecasted period (2009-2013).

**WHEREAS**, the Bank authorized the requested amendment to the Authority's $147,113,000 Line of Credit, as approved by Resolution 8933.

**WHEREAS**, the parties agree to amend the Loan Agreement to allow the Authority to use a maximum of $25,000,000 of the $147,113,000 Line of Credit for operational expenses.

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Paragraph one (1) of the Loan Agreement is amended to read as follows:

    "Subject to the terms and conditions contained herein, the Lender hereby agrees to provide the Borrower from time to time a non-revolving line of credit in an aggregate principal amount not to exceed **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND**

AAFAF_CONF_0004129

-2-

**DOLLARS ($147,113,000)** for the purpose of financing costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of additional improvements to the Authority's facilities included in the Program, chargeable to the capital account of the Authority and included in the Program (the "Line of Credit"). Proceeds of the Loan will be used to pay such costs or to reimburse the Authority's Construction Fund, created and established under Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended, (the "1968 Resolution"), or the Authority's Construction Fund created and established under Resolution 98-06 adopted by the Authority on February 26, 1998, as amended, (the "1998 Resolution") (collectively, "the Resolutions"), for the payment of such costs. Notwithstanding the above, proceeds of the Loan, in an amount not to exceed **TWENTY FIVE MILLION DOLLARS ($25,000,000)**, also may be used by the Authority for operational expenses, as set forth in Resolution No. 2008-43 adopted by the Authority on September 11, 2008. The Line of Credit shall be evidenced by a Note for the principal amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)**, subscribed on this same date by the Borrower and payable to the order of the Lender."



2.   Paragraph two (2) of the Loan Agreement is amended as follows:

"The Borrower may borrow the Loan in one or more drawings ("Drawings") only for the eligible purposes or concepts approved by Resolution EC-1697 adopted by the Bank's Board of Directors on June 9, 2008 and by Resolution 8933 adopted by the Bank's Board of Directors on August 20, 2008. The Borrower shall request each Drawing by written notice to the Lender, with at least three days notice prior to the Drawing, signed by the Borrower's Executive Director or any officer authorized by the Executive Director, including a description of the projects to be financed or whether the funds will be used for operational expenses as set forth in this Agreement. The Lender shall fund the requested Drawing on the date requested in such notice (which must be a Banking Day). Notice of Drawing from the Borrower, once received by the Lender, shall be irrevocable. For the purposes of this Agreement, "Banking Day" means a day on which commercial banks are open for business in San Juan, Puerto Rico."



3.   Paragraph six (6) of the Loan Agreement is amended as follows:

"The Authority hereby represents to the Bank that if the PR-22 Operating and Management Agreement process (the "PR-22 OMA") and other debt restructuring measures are not implemented successfully, or do not produce the projected benefits, it will implement the necessary increases in tolls to ensure compliance with bond indenture requirements and to allow repayment of the Line of Credit authorized under Resolution No. 2008-31, adopted by the Secretary of Transportation and Public Works on June 27, 2008 to avoid affecting negatively the rating of its bonds issued by Standard and Poors' and Moody's Investors Services.

Document 24240

AAFAF_CONF_0004130

-3-

The Authority agrees to provide to the Bank monthly updates on the development of the Public and Private Partnership transaction on the PR-22 OMA. The Authority understands and accepts that monthly disbursements by the Bank will be contingent upon GDB's Board of Directors' satisfaction with the progress of the transaction and its probability of completion.

The Authority at its discretion, may repay the portion of the Line of Credit that will be used for operational expenses, as authorized by GDB's Board of Directors, from non-exempt bond issues if the sources mentioned in Paragraph 3 or those included herein were insufficient to pay the outstanding amounts.

4. All other terms and conditions contained in the Loan Agreement shall remain in full force and effect.

5. This Amendment to the Loan Agreement is intended to be a declaration of official pursuant to U.S. Treasury Regulation Section 1.150-2.

**IN WITNESS THEREOF**, the Borrower and the Lender have caused this First Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first written above.

| PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY | GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO |
|---|---|
| By: _____ | By: _____ |
| Luis M. Trinidad Garay | Luis A. Alfaro Martínez |
| Executive Director | Executive Vice President |

Affidavit No. **517**

Recognized and subscribed before me by Luis M. Trinidad Garay, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and a resident of San Juan, Puerto Rico, and Luis A. Alfaro Martínez, as Executive Vice President of the Government Development Bank for Puerto Rico, of legal age, married and a resident of Guaynabo, Puerto Rico, both personally known to me. In San Juan, Puerto Rico, on September 30th, 2008.

Notary Public

Document 24240

AAFAF_CONF_0004131



-4-

5. All other terms and conditions contained in the Loan Agreement, as amended, shall remain in full force and effect.

**IN WITNESS THEREOF,** the Borrower and the Lender have caused this Second Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first written above.

PUERTO RICO HIGHWAY AND                    GOVERNMENT DEVELOPMENT
TRANSPORTATION AUTHORITY                    BANK FOR PUERTO RICO


By: _____              By: _____
    Luis M. Trinidad Garay                     Luis A. Alfaro Martínez
    Executive Director                         Executive Vice President


Affidavit No. **518**

Recognized and subscribed before me by Luis M. Trinidad Garay, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and a resident of San Juan, Puerto Rico, and Luis A. Alfaro Martínez, as Executive Vice President of the Government Development Bank for Puerto Rico, of legal age, married and a resident of Guaynabo, Puerto Rico, both personally known to me. In San Juan, Puerto Rico, on September 30th, 2008.

_____
Notary Public

Document 24308

AAFAF_CONF 0004151

## SECOND AMENDMENT TO LOAN AGREEMENT

This **SECOND AMENDMENT TO LOAN AGREEMENT**, dated as of September 30th, 2008 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### WITNESSETH

WHEREAS, pursuant to the terms and conditions of the Loan Agreement dated as of August 6th, 2008 (the "Loan Agreement") by and between the Borrower and the Lender, as amended, the Lender provided the Borrower interim financing in an amount not to exceed **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000.00)** to finance certain costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements to the Authority's facilities included in its Construction Improvement Program for fiscal year 2009 (the "Program"); and

WHEREAS, the Authority has requested that the Bank authorize an amendment to the Line of Credit of $147,113,000 in order to include other of its unencumbered assets to guarantee repayment of the loan if the Authority cannot meet certain terms and conditions as set forth in the Loan Agreement.

WHEREAS, the Authority has submitted to the Bank a list of properties, as of September 23, 2008, with a current total estimated value of **Twenty Seven Million Nine Hundred Seventy One Thousand Nine Hundred Dollars ($27,971,900)**, in accordance with paragraph eight (8) of the Loan Agreement.

WHEREAS, the parties agree to amend the Loan Agreement to allow the Authority to incorporate as *Exhibit B* the list of properties mentioned in the above paragraph, and to increase disbursements to a maximum eighty percent (80%) of **Eighty Six Million Seven Hundred Forty Nine Thousand Five Hundred Eighty Seven Dollars ($86,749,587)** in accordance with the provisions included in paragraph eight (8) of the Loan Agreement.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Paragraph seven (7) of the Loan Agreement is amended to read as follows:

    "The Authority pledges certain of its unencumbered assets, identified in *Exhibits A and B*, to guarantee repayment of the Line of Credit if the PR-22 OMA process is not successfully implemented, or if it does not produce the projected benefits, and/or if toll increases referred to above are not implemented as required. Furthermore, the Authority hereby pledges not to sell, transfer, encumber or in any way dispose of the properties specified in *Exhibits A and B* that guarantee repayment of this

AAFAF_CONF_0004148

-2-

financing without obtaining prior written consent from the Bank. The Authority acknowledges and accepts that this is an essential condition for of the Line of Credit, and that it shall compensate the Bank for any damages or expenses incurred as a result of its failure to comply with this obligation.  The Authority agrees to submit to the Bank current title search reports for each of the properties listed in *Exhibit A* within thirty (30) days after execution of the Loan Agreement. Furthermore, the Authority agrees to submit to the Bank current title search reports for each of the properties listed in *Exhibit B* within thirty (30) days after execution of this Second Amendment to Loan Agreement."

2.  Paragraph eight (8) of the Loan Agreement is amended as follows:

"The Authority represents that, as of the date of execution of the Loan Agreement, the current total estimated value of the properties identified in *Exhibit A* is **Fifty Eight Million Seven Hundred Seventy Seven Thousand Six Hundred Eighty Seven Dollars ($58,777,687)**.  The Authority also represents that, as of the date of execution of the Second Amendment to Loan Agreement, the current total estimated value of the properties identified in *Exhibit B* is **Twenty Seven Million Nine Hundred Seventy One Thousand Nine Hundred Dollars ($27,971,900)**. Disbursements to the Authority from the Line of Credit will be limited to eighty percent (80%) of the total amount of **Eighty Six Million Seven Hundred Forty Nine Thousand Five Hundred Eighty Seven Dollars ($86,749,587)** to allow for overvaluation in the estimated costs of the properties. Additional disbursements will be authorized by the Bank upon presentation by the Authority of other properties, with the corresponding representations, and will be subject to GDB's management acceptance."

3.  Paragraph nine (9) of the Loan Agreement is amended as follows:

"The Authority represents that, as of the date of the Loan Agreement and of this Second Amendment to Loan Agreement, here is no pending or threatened litigation, claim or proceeding which would affect the title to the properties in *Exhibits A* and *B*, or the Authority's right to convey them to GDB, if necessary. The Authority certifies that it has not done, suffered or permitted, or agreed to sell, lease, encumber or grant any interest in the properties listed in *Exhibits A* and *B* in any form or manner whatsoever; has not performed or permitted any act or entered into any transaction which will diminish or otherwise affect GDB's guarantee in such properties or which will prevent the Authority's obligations under this Loan Agreement.  The Authority also represents that the properties are not encumbered by any lien related to a bond issue or lines of credit.  Therefore, there are no restrictions whatsoever in this regard as to the future transfer of the properties to or for the use of the Bank, if necessary.

The Authority also has no knowledge or notice of: (i) any action or intended action of any agency of eminent domain, condemnation or affectation proceedings (including but not limited to any right of way reservations) by the Government of the United States, the Government of Puerto Rico or its municipalities which could limit in any way the use of the above mentioned

Document 24308

1

AAFAF_CONF_0004149

-3-

properties by the Bank, if necessary; any denial of permits which would prevent the construction in the properties; any widening, change of grade or limitation on the course of or access to or from such properties to other streets, roads or highways abutting the properties; or of any special levy, tax or assessment to be levied against such properties."

4.  Paragraph ten (10) of the Loan Agreement is amended as follows:

"To the best of the Authority's knowledge, the properties included in *Exhibits A and B* are free of environmental problems or conditions, there are no Hazardous Substances in the properties, and it has not violated any Environmental Law in connection with its ownership and/or operation of the properties. For purposes of this paragraph, "Hazardous Substances" shall mean any hazardous or toxic chemical, waste, byproduct, pollutant, contaminant, compound, product or substance, including, without limitation, asbestos, polychlorinated biphenyls, petroleum (including crude oil or any fraction or by-product thereof), and any material the exposure to, or manufacture, possession, presence, use, generation, storage, transportation, treatment, release, disposal, abatement, cleanup, removal, remediation or handing of which is prohibited, controlled or regulated by any Environmental Law. "Environmental Law" shall mean any federal, state, regional, county or local government statute, law, regulation, ordinance, order or code or any consent decree, judgment, permit, license, code, covenant, deed restriction, common law, or other requirement now or hereinafter enacted, pertaining to protection of the environment, health or safety of persons, natural resources, conservation, wildlife, waste management, and pollution (including, without limitation, regulation of releases and disposals to air, land, water and ground water), including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. 9601 *et seq.*, Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 976 and Solid and Hazardous Waste Amendments of 1984, 42 U.S.C. 6901 *et seq.*, Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977, 33 U.S.C. 1251 *et seq.*, Clean Air Act of 1966, as amended, 42 U.S.C. 7401 *et seq.*, Toxic Substances Control Act of 1976, 15 U.S.C. 2601 *et seq.*, Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. 651 *et seq.*, Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. 11001 *et seq.*, National Environmental Policy Act of 1975, 42 U.S.C. 300(f) *et seq.*, and all amendments, as well as any similar state or local statute or code and replacements of any of the same and rules, regulations, guidance documents and publications promulgated thereunder.

The Authority agrees to indemnify the Bank and hold the Bank harmless for any and all damages caused to third parties as a result of Hazardous Substances existing in the properties listed in *Exhibits A and B* if any such claims were to be brought against the Bank while the Loan Agreement is in effect or until the date the properties are transferred to the Bank, if necessary."

Document 24308

AAFAF_CONF_0004150

-4-

5.  All other terms and conditions contained in the Loan Agreement, as amended, shall remain in full force and effect.

**IN WITNESS THEREOF**, the Borrower and the Lender have caused this Second Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first written above.

PUERTO RICO HIGHWAY AND                    GOVERNMENT DEVELOPMENT
TRANSPORTATION AUTHORITY                    BANK FOR PUERTO RICO


By: _____              By: _____
    Luis M. Trinidad Garay                     Luis A. Alfaro Martínez
    Executive Director                         Executive Vice President


Affidavit No. **518**

Recognized and subscribed before me by Luis M. Trinidad Garay, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and a resident of San Juan, Puerto Rico, and Luis A. Alfaro Martínez, as Executive Vice President of the Government Development Bank for Puerto Rico, of legal age, married and a resident of Guaynabo, Puerto Rico, both personally known to me.  In San Juan, Puerto Rico, on September 30th, 2008.



_____
Notary Public

Document 24308

AAFAF_CONF_0004151

## THIRD AMENDMENT TO LOAN AGREEMENT

This **THIRD AMENDMENT TO LOAN AGREEMENT**, dated as of October 16th, 2008 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

**WHEREAS**, pursuant to the terms and conditions of the Loan Agreement dated as of August 6th, 2008 (the "Loan Agreement") by and between the Borrower and the Lender, as amended, the Lender provided the Borrower interim financing in an amount not to exceed **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000.00)** to finance certain costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements to the Authority's facilities included in its Construction Improvement Program for fiscal year 2009 (the "Program"); and

**WHEREAS**, on September 30th, 2008 the Authority requested, and the Bank authorized an amendment to the Line of Credit of $147,113,000 in order to use up to $25,000,000 for operational expenses;

**WHEREAS**, the Authority has requested that the Bank authorize an amendment to the Line of Credit of $147,113,000 to use the funds generated by the *Tren Urbano* operation as an additional guarantee to complement the Authority's properties that guarantee repayment of the Line of Credit if the sources contained in paragraph three (3) of the Loan Agreement were insufficient;

**WHEREAS**, the Authority also has requested that the Bank authorize the Authority to use the available funds not guaranteed by the Authority's properties.

**WHEREAS,** the Authority has represented to the Bank, as stated in Resolution No. 2008-49 adopted by the Authority on October 10, 2008, that it is authorized to subscribe the amendment.

**WHEREAS,** the Bank authorized the requested amendment to the Authority's $147,113,000 Line of Credit, as approved by Resolution 8976, adopted by the Board of Directors of the Bank on October 9, 2008.

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:



AAFAF_CONF_0004155

1. Paragraph seven (7) of the Loan Agreement is amended to read as follows:

   "The Authority pledges certain of its unencumbered assets, identified in *Exhibits A* and *B*, and the funds generated by the *Tren Urbano* operations to guarantee repayment of the Line of Credit if the PR-22 OMA process is not successfully implemented, or if it does not produce the projected benefits, and/or if toll increases referred to above are not implemented as required. Furthermore, the Authority hereby pledges not to sell, transfer, encumber or in any way dispose of the properties specified in *Exhibits A* and *B* that guarantee repayment of this financing without obtaining prior written consent from the Bank. The Authority acknowledges and accepts that this is an essential condition of the Line of Credit, and that it shall compensate the Bank for any damages or expenses incurred as a result of its failure to comply with this obligation.  The Authority agrees to submit to the Bank current title search reports for each of the properties listed in *Exhibit A* within thirty (30) days after execution of the Loan Agreement. Furthermore, the Authority agrees to submit to the Bank current title search reports for each of the properties listed in *Exhibit B* within thirty (30) days after execution of this Second Amendment to Loan Agreement."



2. Paragraph eight (8) of the Loan Agreement is amended to read as follows:

   "The Authority represents that, as of the date of execution of the Loan Agreement, the current total estimated value of the properties identified in *Exhibit A* is **Fifty Eight Million Seven Hundred Seventy Seven Thousand Six Hundred Eighty Seven Dollars ($58,777,687).**  The Authority also represents that, as of the date of execution of the Second Amendment to Loan Agreement, the current total estimated value of the properties identified in *Exhibit B* is **Twenty Seven Million Nine Hundred Seventy One Thousand Nine Hundred Dollars ($27,971,900).**  Disbursements to the Authority from the Line of Credit will be limited to eighty percent (80%) of the total amount of **Eighty Six Million Seven Hundred Forty Nine Thousand Five Hundred Eighty Seven Dollars ($86,749,587)** to allow for overvaluation in the estimated costs of the properties.  Because the Authority has pledged the funds generated by the *Tren Urbano* operations as an additional guarantee for repayment of the Line of Credit, disbursements will be authorized by the Bank upon presentation by the Authority of other properties, with the corresponding representations, and will be subject to GDB's management acceptance, or by the Authority's request for the purposes established in the Loan Agreement."

3. All other terms and conditions contained in the Loan Agreement, as amended, shall remain in full force and effect.

Document 24355

AAFAF_CONF_0004156

-3-

**IN WITNESS THEREOF**, the Borrower and the Lender have caused this Third Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first written above.

**PUERTO RICO HIGHWAY AND**
**TRANSPORTATION AUTHORITY**

**GOVERNMENT DEVELOPMENT**
**BANK FOR PUERTO RICO**

By: _____

By: _____

Luis M. Trinidad Garay
Executive Director

Luis A. Alfaro Martínez
Executive Vice President

Affidavit No. 523

Recognized and subscribed before me by Luis M. Trinidad Garay, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and a resident of San Juan, Puerto Rico, and Luis A. Alfaro Martínez, as Executive Vice President of the Government Development Bank for Puerto Rico, of legal age, married and a resident of Guaynabo, Puerto Rico, both personally known to me.  In San Juan, Puerto Rico, on October 16 th, 2008.

Notary Public

Document 24355

AAFAF_CONF_0004157

### FOURTH AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT

This **FOURTH AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT**, dated February 14, 2013, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

WHEREAS, pursuant to a Loan Agreement dated as of August 6, 2008 (the "Loan Agreement"), Lender provided Borrower an interim financing in the form of a Line of Credit for the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)** to finance costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements included in the Authority's Construction Improvement Program for fiscal year 2009 (the "Loan" or the "Line of Credit");

WHEREAS, the Loan was evidenced by a Promissory Note payable to the order of the Bank on June 30, 2009, issued on the same date as the Loan Agreement, for the amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)**;

WHEREAS, on September 30, 2008, a First Amendment to Loan Agreement was executed by Borrower and Lender to authorize the use of up to $25,000,000 of the Line of Credit for operational expenses;

WHEREAS, on September 30, 2008, a Second Amendment to Loan Agreement was executed by Borrower and Lender to provide certain additional real property as additional guarantee for repayment of the Loan;

WHEREAS, on October 16, 2008, a Third Amendment to Loan Agreement was executed by Borrower and Lender to provide for the use of funds generated by the *Tren Urbano* operation as additional guarantee for repayment of the Loan;

WHEREAS, on October 30, 2009, an Amended and Restated Loan Agreement was executed by Borrower and Lender to restate in one sole document the terms and conditions of the Loan Agreement, as amended, to extend the maturity date of the Loan to September 30, 2010, and to incorporate certain additional conditions related to the agreed extension of the maturity of the Loan. A corresponding First Allonge to Promissory Note was subscribed by the Borrower on the same date;

WHEREAS, on October 8, 2010, a First Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender to extend the maturity date of the Loan to June 30, 2011, to modify interest to a daily accrual until repayment of the

29254 v.2

AAFAF_CONF_0004094

Loan at *Prime Rate* plus 150 basis points with a floor rate of 6%, and to establish a default rate of 400 basis points. A corresponding Second Allonge to Promissory Note was subscribed by the Borrower on the same date;

**WHEREAS**, on May 19, 2011, a Second Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender to extend the maturity date of the Loan to August 31, 2012, and to modify the default rate to 200 basis points. A corresponding Third Allonge to Promissory Note was subscribed by the Borrower on the same date;

**WHEREAS**, a Third Amendment to Amended and Restated Loan Agreement was executed by Borrower on July 6, 2012 and by the Lender on July 9, 2012, to extend the maturity of the Loan up to January 31, 2013, to increase of the maximum amount of the Loan by **NINE MILLION SEVEN HUNDRED NINETY FOUR THOUSAND NINE HUNDRED TWENTY THREE DOLLARS AND SEVENTY ONE CENTS ($9,794,923.71)**, and to establish the payment of interest at the maturity of the Loan, among other terms and conditions.  A corresponding Fourth Allonge to Promissory Note was subscribed by the Borrower on July 6, 2012;

**WHEREAS**, pursuant to the terms of Resolution 9946, adopted by the Board of Directors of the Bank on January 17, 2013, the Bank approved the extension of the maturity of the Loan up to January 31, 2014, among other terms and conditions; and

**WHEREAS**, pursuant to Resolution Number 2013-15 issued by Miguel A. Torres Díaz, Secretary of Transportation and Public Works on January 31, 2013, the Borrower accepted the conditions required by the Lender to extend the maturity date of the Loan, subject to certain conditions.

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The first sentence of Paragraph number 3 of the Amended and Restated Loan Agreement, as amended by the First, Second and Third Amendments to Amended and Restated Loan Agreement, is amended to read as follows:

> The principal amount of the Line of Credit shall mature and be due and payable on January 31, 2014.

2. Pursuant to this Fourth Amendment to Amended and Restated Loan Agreement (the "Fourth Amendment"), a Fifth Allonge to Promissory Note shall be executed by the Authority on this date, and it will be attached to the Promissory Note, as amended by the First, Second, Third and Fourth Allonges to Promissory Note, with the purposes of incorporating to said Promissory Note the agreements and amendments herein contained.

29254 v.2

AAFAF_CONF_0004095

3

3.  Borrower acknowledges that no additional funds shall be drawn from the Line of Credit unless the same has been incremented or reactivated in the future through an authorizing resolution approved by the Board of Directors or the Executive Committee of the Board of Directors of the Lender.

4.  The Borrower agrees to pay to the Lender for this transaction a financial advisory fee in the amount of Fifty Thousand Six Hundred Thirty Five Dollars and Ninety Seven Cents ($50,635.97).

5.  This Fourth Amendment does not constitute a novation of the obligations set forth in the Amended and Restated Loan Agreement, as amended, and all provisions of such Amended and Restated Loan Agreement, as amended, not inconsistent with this Fourth Amendment, shall remain in full force and effect.

6.  This Fourth Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.



7.  In the event that any provision of this Fourth Amendment is declared to be void of unenforceable, the remainder of this Fourth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

8.  The President of the Bank, the Executive Vice President of Financing or any duly designated Vice President, are authorized to negotiate any other term or condition necessary in relation to the extension or renewal of this Loan, in order to safeguard the best interests of the Bank.

**[SIGNATURE PAGE FOLLOWS]**

29254 v.2

AAFAF_CONF_0004096

4

IN WITNESS WHEREOF, the Borrower and the Lender have caused this Fourth Amendment to Amended and Restated Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

_____
Ian Figueroa
Executive Vice President and
Director of Financing

_____
Javier E. Ramos Hernández
Executive Director

Testimony No. 453

Recognized and subscribed before me by Javier E. Ramos Hernández, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, executive and resident of Bayamón, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on February 14, 2013.

_____
Notary Public

Testimony No. 454

Recognized and subscribed before me by Ian Figueroa, as Executive Vice President and Director of Financing of the Government Development Bank for Puerto Rico, of legal age, married, executive and resident of San Juan, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on February 14, 2013.

_____
Notary Public

29254 v.2