## AMENDED AND RESTATED LOAN AGREEMENT

This **AMENDED AND RESTATED LOAN AGREEMENT**, dated October _30_, 2009 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### WITNESSETH

**WHEREAS,** pursuant to a Loan Agreement dated as of August 6, 2008 Lender provided Borrower interim financing in the form of a Line of Credit for the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)** (the "Loan Agreement") to finance costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements included in the Authority's Construction Improvement Program for fiscal year 2009 (the "Program");

**WHEREAS,** on September 30, 2008 a First Amendment to Loan Agreement was executed by Borrower and Lender to authorize the use of up to $25,000,000 of the Line of Credit for operational expenses;

**WHEREAS,** on September 30, 2008 a Second Amendment to Loan Agreement was executed by Borrower and Lender to provide certain additional real property as additional guarantee for repayment of the Line of Credit;

**WHEREAS,** on October 16, 2008 a Third Amendment to Loan Agreement was executed by Borrower and Lender to provide for the use of funds generated by the *Tren Urbano* operation as additional guarantee for repayment of the Line of Credit;

**WHEREAS,** payment by Borrower of the principal amount of $147,113,000 became due on June 30, 2009 and Borrower was not able to make the required payment to Lender;

**WHEREAS,** Resolution EC-1697 adopted by the Board of Directors of the Bank on June 9, 2008, authorized the President of the Bank to extend the maturity of the Loan up to June 30, 2011. In addition, Resolution 9188 issued by the Board of Directors of the Bank on August 19, 2009, granted the President, or his designee, authority to modify the terms and conditions of financing agreements with the various government agencies;

**WHEREAS,** Lender has agreed to extend the term for payment by Borrower to September 30, 2010, as authorized by Resolution EC-1697 issued by Lender's

25462

DS-030684

Board of Directors on June 9, 2008, which on September 14, 2009, the Secretary of Lender's Board of Directors certified is still in full force and effect;

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties execute this Amended and Restated Loan Agreement, to restate in one sole document the terms and conditions of the Loan Agreement, as amended, to extend to September 30, 2010 the maturity date of the Loan, and incorporate certain additional conditions related to the agreed extension of the maturity of the Loan, , as follows:

1. Subject to the terms and conditions contained herein, the Lender provided to Borrower a non-revolving line of credit in an aggregate principal amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)** for the purpose of financing costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of additional improvements to the Authority's facilities included in the Program, chargeable to the capital account of the Authority and included in the Program (the "Line of Credit"). Proceeds of the Loan were to be used to pay such costs or to reimburse the Authority's Construction Fund, created and established under Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended, (the "1968 Resolution"), or the Authority's Construction Fund created and established under Resolution 98-06 adopted by the Authority on February 26, 1998, as amended, (the "1998 Resolution") (collectively, "the Resolutions"), for the payment of such costs. Notwithstanding the above, proceeds of the Loan, in an amount not to exceed **TWENTY FIVE MILLION DOLLARS ($25,000,000)**, were authorized to be used by the Authority for operational expenses, as set forth in Resolution No. 2008-43 adopted by the Authority on September 11, 2008. The Line of Credit is evidenced by a Note for the principal amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)**, subscribed on August 6, 2008 by the Borrower and payable to the order of the Lender.

2. The Borrower was authorized to borrow the Loan in one or more drawings ("Drawings") only for the eligible purposes or concepts approved by Resolution EC-1697 adopted by the Bank's Board of Directors on June 9, 2008 and by Resolution 8933 adopted by the Bank's Board of Directors on August 20, 2008, as follows. The Borrower shall request each Drawing by written notice to the

Document 25462

Lender, with at least three days notice prior to the Drawing, signed by the Borrower's Executive Director or any officer authorized by the Executive Director, including a description of the projects to be financed or whether the funds will be used for operational expenses as set forth in this Agreement. The Lender shall fund the requested Drawing on the date requested in such notice (which must be a Banking Day). Notice of Drawing from the Borrower, once received by the Lender, shall be irrevocable. For the purposes of this Agreement, "Banking Day" means a day on which commercial banks are open for business in San Juan, Puerto Rico.

3.  The principal amount of the Line of Credit shall mature and be due and payable on September 30, 2010. The Borrower hereby agrees to repay the outstanding aggregate principal amount of the Loan at the principal office of the Lender in San Juan, Puerto Rico, from proceeds of the Operational Management Agreement for the Private/Public Partnership on Highway PR-22 to be entered by the Authority with a third party yet to be determined or with the proceeds of bonds to be issued by the Authority pursuant to the provisions of the respective sections of the Resolutions. If these sources were insufficient, the Borrower shall proceed in accordance with the provisions set forth in Paragraph 6 and 7. The maturity of the Loan only shall be extended by written consent of the President of the Bank, but in no event will the maturity of the Loan be extended beyond June 30, 2011. The Loan shall bear interest daily until its repayment at a rate of interest to be determined by the President of Lender or his designee, discretionarily, depending on the interest rate market. The Authority will also pay Lender the amount of $183,891.25 as renewal fee.

Interest shall be payable monthly in arrears not later than the tenth (10th) Banking Day (as defined herein) following receipt from the Bank of the statement referred to in the next sentence of this paragraph, from any available moneys of the Authority. Not later than the fifth (5th) Banking Day of each month the Bank shall furnish to the Authority a written statement showing the amount of interest due and payable by the Authority on the Line of Credit for the preceding month. The Authority may prepay the Line of Credit at any time without penalty or premium. The Line of Credit shall be junior and subordinate to outstanding bonds of the Authority and shall be subject to certain other terms and conditions, all as contained in this Loan Agreement.

Document 25462

4.  Payment of principal and interest on the Line of Credit shall be made in any coin or currency of the United States of America, which at the time of payment shall be legal tender for the payment of public and private debts.

5.  The Borrower covenants that it will acquire, construct, equip, install and develop the additional improvements to the Authority's facilities, the cost of which is being financed or refinanced from the Line of Credit in accordance with law and all requirements of all governmental authorities having jurisdiction in respect thereof, and that it will complete such construction with all expedition practicable, and that such buildings, structures, other facilities and improvements to be constructed will be built in accordance with plans and specifications which shall have been prepared by an architectural or engineering firm or corporation having a favorable repute for skill and experience in such work; provided, however, that the Borrower may use its own staff of engineers and architects for the preparation of any such plan or specifications.

6.  The Authority hereby represents to the Bank that if the PR-22 Operating and Management Agreement process (the "PR-22 OMA") and other debt restructuring measures are not implemented successfully, or do not produce the projected benefits, it will implement the necessary increases in tolls to ensure compliance with bond indenture requirements and to allow repayment of the Line of Credit authorized under Resolution No. 2008-31, adopted by the Secretary of Transportation and Public Works on June 27, 2008 to avoid affecting negatively the rating of its bonds issued by Standard and Poors' and Moody's Investors Services.

The Authority agrees to provide to the Bank monthly updates on the development of the Public and Private Partnership transaction on the PR-22 OMA. The Authority understands and accepts that monthly disbursements by the Bank will be contingent upon GDB's Board of Directors' satisfaction with the progress of the transaction and its probability of completion.

The Authority at its discretion, may repay the portion of the Line of Credit that will be used for operational expenses, as authorized by GDB's Board of Directors, from non-exempt bond issues if the sources mentioned in Paragraph 3 or those included herein are insufficient to pay the outstanding amounts.

Document 25462

DS-030687

7. The Authority pledges certain of its unencumbered assets, identified in *Exhibits A* and *B*, and the funds generated by the *Tren Urbano* operations to guarantee repayment of the Line of Credit, if the PR-22 OMA process is not successfully implemented, or if it does not produce the projected benefits, and/or if toll increases referred to above are not implemented as required. Furthermore, the Authority hereby pledges not to sell, transfer, encumber or in any way dispose of the properties specified in *Exhibits A* and *B* that guarantee repayment of this financing without obtaining prior written consent from the Bank. The Authority acknowledges and accepts that this is an essential condition of the Line of Credit, and that it shall compensate the Bank for any damages or expenses incurred as a result of its failure to comply with this obligation. The Authority agreed to submit to the Bank current title search reports for each of the properties listed in *Exhibit A* within thirty (30) days after execution of the Loan Agreement. Furthermore, the Authority agreed to submit to the Bank current title search reports for each of the properties listed in *Exhibit B* within thirty (30) days after execution of the Second Amendment to Loan Agreement.

8. The Authority represents that, as of the date of execution of the Loan Agreement, the current total estimated value of the properties identified in *Exhibit A* is **Fifty Eight Million Seven Hundred Seventy Seven Thousand Six Hundred Eighty Seven Dollars ($58,777,687)**. The Authority also represents that, as of the date of execution of the Second Amendment to Loan Agreement, the current total estimated value of the properties identified in *Exhibit B* is **Twenty Seven Million Nine Hundred Seventy One Thousand Nine Hundred Dollars ($27,971,900)**. Disbursements to the Authority from the Line of Credit will be limited to eighty percent (80%) of the total amount of **Eighty Six Million Seven Hundred Forty Nine Thousand Five Hundred Eighty Seven Dollars ($86,749,587)** to allow for overvaluation in the estimated costs of the properties. Because the Authority has pledged the funds generated by the *Tren Urbano* operations as an additional guarantee for repayment of the Line of Credit, disbursements will be authorized by the Bank upon presentation by the Authority of other properties, with the corresponding representations, and will be subject to GDB's management acceptance, or by the Authority's request for the purposes established in the Loan Agreement.

9. The Authority represents that, as of the date of the Loan Agreement and of the Second Amendment to Loan Agreement, there was no pending or threatened litigation, claim or

Document 25462

proceeding, which representation is accurate to date, which would affect the title to the properties in *Exhibits A* and *B*, or the Authority's right to convey them to GDB, if necessary. The Authority certifies that it has not done, suffered or permitted, or agreed to sell, lease, encumber or grant any interest in the properties listed in *Exhibits A* and *B* in any form or manner whatsoever; has not performed or permitted any act or entered into any transaction which will diminish or otherwise affect GDB's guarantee in such properties or which will prevent the Authority's obligations under this Amended and Restated Loan Agreement. The Authority also represents that the properties are not encumbered by any lien related to a bond issue or lines of credit. Therefore, there are no restrictions whatsoever in this regard as to the future transfer of the properties to or for the use of the Bank, if necessary.

The Authority also has no knowledge or notice of: (i) any action or intended action of any agency of eminent domain, condemnation or affectation proceedings (including but not limited to any right of way reservations) by the Government of the United States, the Government of Puerto Rico or its municipalities which could limit in any way the use of the above mentioned properties by the Bank, if necessary; any denial of permits which would prevent the construction in the properties; any widening, change of grade or limitation on the course of or access to or from such properties to other streets, roads or highways abutting the properties; or of any special levy, tax or assessment to be levied against such properties.

10. To the best of the Authority's knowledge, the properties included in *Exhibits A* and *B* are free of environmental problems or conditions, there are no Hazardous Substances in the properties, and it has not violated any Environmental Law in connection with its ownership and/or operation of the properties.    For purposes of this paragraph, "Hazardous Substances" shall mean any hazardous or toxic chemical, waste, byproduct, pollutant, contaminant, compound, product or substance, including, without limitation, asbestos, polychlorinated biphenyls, petroleum (including crude oil or any fraction or by-product thereof), and any material the exposure to, or manufacture, possession, presence, use, generation, storage, transportation, treatment, release, disposal, abatement, cleanup, removal, remediation or handing of which is prohibited, controlled or regulated by any Environmental Law. "Environmental Law" shall mean any federal, state, regional, county or local

Document 25462

government statute, law, regulation, ordinance, order or code or any consent decree, judgment, permit, license, code, covenant, deed restriction, common law, or other requirement now or hereinafter enacted, pertaining to protection of the environment, health or safety of persons, natural resources, conservation, wildlife, waste management, and pollution (including, without limitation, regulation of releases and disposals to air, land, water and ground water), including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. 9601 *et seq.*, Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 976 and Solid and Hazardous Waste Amendments of 1984, 42 U.S.C. 6901 *et seq.*, Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977, 33 U.S.C. 1251 *et seq.*, Clean Air Act of 1966, as amended, 42 U.S.C. 7401 *et seq.*, Toxic Substances Control Act of 1976, 15 U.S.C. 2601 *et seq.*, Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. 651 *et seq.*, Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. 11001 *et seq.*, National Environmental Policy Act of 1975, 42 U.S.C. 300(f) *et seq.*, and all amendments, as well as any similar state or local statute or code and replacements of any of the same and rules, regulations, guidance documents and publications promulgated thereunder.

The Authority agrees to indemnify the Bank and hold the Bank harmless for any and all damages caused to third parties as a result of Hazardous Substances existing in the properties listed in *Exhibits A* and *B* if any such claims were to be brought against the Bank while the Loan Agreement is in effect or until the date the properties are transferred to the Bank, if necessary.

11. The Authority will review its Construction Improvement Program (CIP) to limit the number of projects in the Program to those funded with federal assistance moneys, those already contracted or under construction, and those with legislative appropriations. The Authority, prior to committing any resources for the construction of CIP projects, will certify to GDB that it has identified the source and availability of the funds for those projects, and obtain the prior consent of GDB for the use of said funds.

12. The Authority will perform an analysis of its operational expenses with the objective of progressively reducing their projected level within its forecasted period. The Authority will implement

Document 25462

DS-030690

immediately the necessary measures to maintain its annual operational expenses below the present level for the forecasted period (2009-2013).

13. No amendment or waiver of any provisions of this Agreement or consent to any departure by the Borrower herefrom shall be effective unless the same shall be in writing and signed by the Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

14. Any notices which may be given to either party hereunder shall be in writing, and if addressed to the Lender, sent to the offices of the Lender located at Roberto Sánchez Vilella f/k/a Minillas Government Center, de Diego Avenue, San Juan, Puerto Rico, 00940, Attention: Mr. Luis Alfaro, or to such other address or person as the Lender may hereafter notify the Borrower in writing, and if addressed to the Borrower, sent to the address of the Borrower:   Puerto Rico Highway and Transportation Authority, Roberto Sánchez Vilella f/k/a Minillas Government Center, de Diego Avenue, San Juan, Puerto Rico, 00940, Attention: Ing. Luis M. Trinidad Garay, or such other address or person as the Borrower may hereafter notify the Lender in writing.  Any such notice, if delivered personally or by facsimile transmission, shall be effective on the date when given, and if sent by mail, shall be effective three (3) Banking Days after posting.

15. The Borrower shall from time to time, upon request by the Lender, promptly provide the Lender with such information as to its finances and operations as the Lender shall reasonably request.

16. The Borrower waives the requirements of demand, presentment, protest, notice of dishonor, and, in general, any other legal formality.

17. If the Borrower defaults in making any payment when due under this Agreement, the Lender may declare the Loan to be immediately due and payable.  In case of recourse to the courts by the Lender in order to collect the whole or any portion of the principal or interest due, the Borrower agrees to pay a liquidated sum equal to 10% of the amount of the Loan to cover expenses of such proceedings, court costs, disbursements and attorney's fees, which amount will become immediately due and payable upon the filing of such judicial proceedings.

Document 25462

DS-030691

18. This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns. The Lender may assign to any other financial institution all or any part of or any interest in, the Lender's rights hereunder and in the Loan, and to the extent of such assignment such assignee shall have the same rights against the Borrower hereunder as does the Lender. The Borrower may not assign any of its rights nor delegate any of its obligations hereunder without the Lender's prior written consent. This Agreement shall be governed by, and the rights and obligations of the parties hereunder shall be construed in accordance with the laws of the Commonwealth of Puerto Rico.

19. This Agreement shall constitute a declaration of official intent of the Lender and the Borrower pursuant to Treasury Regulation Section 1.150-2.

**IN WITNESS THEREOF,** the Borrower and the Lender have caused this Amended and Restated Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first written above.

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

By: _____
Rubén A. Hernández Gregorat
Executive Director

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

By: _____
Fernando L. Batlle
Executive Vice President

Affidavit No. 339

Recognized and subscribed before me by Ruben Hernández Gregorat, as Executive Director of the Puerto Rico Highway and Transportation Authority, and Fernando L. Batlle, as Executive Vice President for Financing and Treasury of the Government Development Bank for Puerto Rico, both of legal age, married and a residents, respectively, of Guaynabo, and San Juan, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on October 20, 2009.

Notary Public

Document 25462

DS-030692

## FIRST AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT

This **AMENDED AND RESTATED LOAN AGREEMENT**, dated October _____, 2010, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

WHEREAS, pursuant to a Loan Agreement dated as of August 6, 2008 Lender provided Borrower interim financing in the form of a Line of Credit for the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)** (the "Loan Agreement") to finance costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements included in the Authority's Construction Improvement Program for fiscal year 2009 (the "Program");

WHEREAS, on September 30, 2008 a First Amendment to Loan Agreement was executed by Borrower and Lender to authorize the use of up to $25,000,000 of the Line of Credit for operational expenses;

WHEREAS, on September 30, 2008 a Second Amendment to Loan Agreement was executed by Borrower and Lender to provide certain additional real property as additional guarantee for repayment of the Line of Credit;

WHEREAS, on October 16, 2008 a Third Amendment to Loan Agreement was executed by Borrower and Lender to provide for the use of funds generated by the *Tren Urbano* operation as additional guarantee for repayment of the Line of Credit;

WHEREAS, on October 30, 2009 an Amended and Restated Loan Agreement was executed by Borrower and Lender to restate in one sole document the terms and conditions of the Loan Agreement, as amended, to extend the maturity date of the Loan to September 30, 2010, and to incorporate certain additional conditions related to the agreed extension of the maturity of the Loan;

WHEREAS, the Authority has requested that the maturity date of the Loan be extended to June 30, 2011, and the President of the Bank has agreed to such extension, pursuant to the authority granted to the President of the Bank under Resolution EC-1697 adopted by the Board of Directors of the Bank on June 9, 2008, subject to certain conditions;

26571

**WHEREAS,** pursuant to Resolution CE-2010-41 adopted by the Executive Committee of the Board of Directors of the Bank on August 18, 2010, the Bank requires payment of a financial services fee by the Authority;

**WHEREAS,** pursuant to Resolution 2010-30 adopted by the Secretary of the Puerto Rico Department of Transportation and Public Works on September 28, 2010, the Authority has been authorized to consent to the conditions for financial services fee and other conditions required by the Bank;

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties execute this First Amendment to Amended and Restated Loan Agreement, as follows:

1. The first paragraph of numbered  paragraph 3 of the Amended and Restated Loan Agreement executed by the Authority and the Bank on October 30, 2009, is amended to read as follows:

> "3. The principal amount of the Line of Credit shall mature and be due and payable on June 30, 2011.

2. The Loan shall bear interest daily until its repayment at the rate of PRIME plus 150 basis points, or the  which shall never be less than 6%,:

3. To effect the foregoing amendments to the Amended and Restated Loan Agreement, a Second Allonge to Promissory Note is executed by the Authority, on this same date.



4. On or before the date of execution of this document, the Authority will pay the Bank an amount equal to $55,704.33 of the principal amount of the Loan as financial services fee.

5. If on the date the principal amount becomes due the Authority does not make the required payment, the balance of the Loan will accumulate interest at the rate of PRME plus 4%.

6. All other terms and conditions contained in the Amended and Restated Loan Agreement shall remain in full force and effect.  The parties agree that this First Amendment to Amended and Restated Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, as amended.

AAFAF_CONF_0003563

**WITNESS THEREOF,** the Borrower and the Lender have caused this First Amendment to Amended and Restated Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first written above.

In San Juan, Puerto Rico, on October 8th, 2010.

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

By: _____
    Rubén A. Hernández Gregorat
    Secretary of the Department of
    Transportation and Public Works

Affidavit No. 279

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

By: _____
    Fernando L. Batlle Hernaíz
    Executive Vice President

Recognized and subscribed before me by Ruben Hernández Gregorat, as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, and Fernando L. Batlle Hernaíz, as Executive Vice President for Financing and Treasury of the Government Development Bank for Puerto Rico, both of legal age, married and a residents, respectively, of Guaynabo, and San Juan, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on October 8th, 2010.



_____
Notary Public

## SECOND AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT

This **SECOND AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT**, dated May 19, 2011, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

**WHEREAS,** pursuant to the Amended and Restated Loan Agreement between Borrower and Lender executed on October 30, 2009, Borrower and Lender restated in one sole document the terms and conditions of the Loan Agreement dated August 6, 2008, as amended, which provides Borrower interim financing for the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)** to finance costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements included in the Authority's Construction Improvement Program for fiscal year 2009 (the "Program");

**WHEREAS,** on October 8, 2010 a First Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender in connection with the foregoing financing;

**WHEREAS,** the Authority has requested that the maturity date of the referenced financing be extended to June 30, 2012;

**WHEREAS,** the Bank has agreed extend the maturity date of the financing subject to certain conditions, pursuant to Resolution 9420-C adopted by the Board of Directors of the Bank on January 26, 2011;

**WHEREAS,** pursuant to Resolution 2011-20, issued by the Secretary of the Puerto Rico Department of Transportation and Public Works on April 12, 2011, as amended by Resolution 2011-27 issued by the Secretary of the Puerto Rico Department of Transportation and Public Works on May 13, 2011, the Authority has been authorized to agree to the extension of the maturity date of the Loan, and to the conditions required by the Bank;

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties execute this Second Amendment to Amended and Restated Loan Agreement, as follows:

27052



1. The first paragraph of numbered paragraph 3 of the Amended and Restated Loan Agreement, as amended by the First Amendment to Amended and Restated Loan Agreement, is amended to read as follows:

> "3. The principal amount of the Line of Credit shall mature and be due and payable on August 31, 2012. The Borrower hereby agrees to repay the outstanding aggregate principal amount of the Loan at the principal office of the Lender in San Juan, Puerto Rico, from proceeds of the Operational Management Agreement for the Private/Public Partnership on Highway PR-22 to be entered by the Authority with a third party yet to be determined or with the proceeds of bonds to be issued by the Authority pursuant to the provisions of the respective sections of the Resolutions. If these sources were insufficient, the Borrower shall proceed in accordance with the provisions set forth in Paragraph 6 and 7."

2. To effect the foregoing amendment, a Third Allonge to Promissory Note is executed by the Authority, on this same date.

3. On or before the date of execution of this document, the Authority will pay the Bank the amount of $58,845.20 as financial services fee.



4. If on the date the principal amount becomes due Borrower does not make the required payment, the balance of the financing will accumulate interest at a default rate of 200 basis points over the otherwise applicable interest rate.

5. If Borrower fails to pay the principal amount of the financing by the date of maturity, or any interest thereon on a timely fashion, the Lender may, at its sole option without notice to Borrower and to the fullest extent allowed by law, set off and apply any other available moneys (including deposits of any kind) of the Borrower against the financing.

6. All other terms and conditions contained in the Amended and Restated Loan Agreement, as amended in the First Amendment to Amended and Restated Loan Agreement, shall remain in full force and effect. The parties agree that this Second Amendment to Amended and Restated Loan Agreement does not constitute a novation of the obligations set forth in the financing.

[ SIGNATURE PAGE FOLLOWS]



WITNESS THEREOF, the Borrower and the Lender have caused this Second Amendment to Amended and Restated Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first written above.

In San Juan, Puerto Rico, on May ___, 2011.

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO

By: _____
    José R. Otero-Freiría
    Executive Vice President

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY

By: _____
    Rubén A. Hernández Gregorat
    Secretary of Transportation and
    Public Works and Executive
    Director of the Puerto Rico
    Highway and Transportation
    Authority

Testimony No. 579—

Recognized and subscribed before me by Rubén A. Hernández Gregorat, as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on May 19, 2011.

_____
    Notary Public

Testimony No. 284

Recognized and subscribed before me by José R. Otero Freiría, of legal age, married, and resident of Dorado, Puerto Rico, as Executive Vice President of Financing and Treasury, personally known to me.

In San Juan, Puerto Rico, on May 19, 2011.

_____
    Notary Public

AAFAF_CONF_0004064

### THIRD AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT

This **THIRD AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT**, dated July 6, 2012, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

WHEREAS, pursuant to a Loan Agreement dated as of August 6, 2008 (the "Loan Agreement"), Lender provided Borrower an interim financing in the form of a Line of Credit for the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)** to finance costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements included in the Authority's Construction Improvement Program for fiscal year 2009 (the "Loan" or the "Line of Credit");

WHEREAS, the Loan was evidenced by a Promissory Note payable to the order of the Bank on June 30, 2009, issued on the same date as the Loan Agreement, for the amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000);**

WHEREAS, on September 30, 2008, a First Amendment to Loan Agreement was executed by Borrower and Lender to authorize the use of up to $25,000,000 of the Line of Credit for operational expenses;

WHEREAS, on September 30, 2008, a Second Amendment to Loan Agreement was executed by Borrower and Lender to provide certain additional real property as additional guarantee for repayment of the Loan;

WHEREAS, on October 16, 2008, a Third Amendment to Loan Agreement was executed by Borrower and Lender to provide for the use of funds generated by the *Tren Urbano* operation as additional guarantee for repayment of the Loan;



WHEREAS, on October 30, 2009, an Amended and Restated Loan Agreement was executed by Borrower and Lender to restate in one sole document the terms and conditions of the Loan Agreement, as amended, to extend the maturity date of the Loan to September 30, 2010, and to incorporate certain additional conditions related to the agreed extension of the maturity of the Loan. A corresponding First Allonge to Promissory Note was subscribed by the Borrower on the same date.

WHEREAS, on October 8, 2010, a First Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender to extend the maturity date of the Loan to June 30, 2011, to modify interest to a daily accrual until repayment of the

28651

AAFAF_CONF_0004078

Loan at *Prime Rate* plus 150 basis points with a floor rate of 6%, and to establish a default rate of 400 basis points. A corresponding Second Allonge to Promissory Note was subscribed by the Borrower on the same date;

**WHEREAS**, on May 19, 2011, a Second Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender to extend the maturity date of the Loan to August 31, 2012, and to modify the default rate to 200 basis points. A corresponding Third Allonge to Promissory Note was subscribed by the Borrower on the same date;

**WHEREAS**, pursuant to the terms of Resolution Number 9721, adopted by the Board of Directors of the Bank on February 22, 2012, the Bank approved the extension of the maturity of the Loan up to January 31, 2013, the increase of the maximum amount of the Loan by **Nine Million Seven Hundred Ninety Four Thousand Nine Hundred Twenty Three Dollars and Seventy One Cents ($9,794,923.71)**, and established the payment of interest at the maturity of the Loan, among other terms and conditions;

**WHEREAS**, the aforementioned increase in the Loan amount has been approved to cover the capitalization of accrued interest up to January 31, 2013 ($9,749,321.92), and the corresponding financial advisory fees ($45,601.79);

**WHEREAS**, pursuant to Resolution Number 2012-28 issued by the Secretary of Transportation and Public Works on June 26, 2012, the Borrower accepted the conditions required by the Lender to extend the maturity date of the Loan, increase the maximum amount permitted to be outstanding under the Loan Agreement, and establish the payment of interest at the maturity of the Loan, subject to certain conditions;

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Paragraph number 1 of the Amended and Restated Loan Agreement, as amended by the First and Second Amendments to Amended and Restated Loan Agreement, is further amended to read as follows:



> "Subject to the terms and conditions contained herein, the Lender provided to Borrower a non-revolving line of credit in an aggregate principal amount of **ONE HUNDRED FIFTY SIX MILLION NINE HUNDRED SEVEN THOUSAND NINE HUNDRED TWENTY THREE DOLLARS AND SEVENTY ONE CENTS ($156,907,923.71)**, including the capitalization of accrued interest up to January 31, 2013 ($9,749,321.92) plus the corresponding financial advisory fees ($45,601.79), for the purpose of financing costs incurred or to be incurred in the

28651 v2

AAFAF_CONF_0004079

acquisition, construction, equipping, installation and development of additional improvements to the Authority's facilities included in the Program, chargeable to the capital account of the Authority and included in the Program (the "Line of Credit"). Proceeds of the Loan were to be used to pay such costs or to reimburse the Authority's Construction Fund, created and established under Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended, (the "1968 Resolution"), or the Authority's Construction Fund created and established under Resolution 98-06 adopted by the Authority on February 26, 1998, as amended, (the "1998 Resolution") (collectively, "the Resolutions"), for the payment of such costs. Notwithstanding the above, proceeds of the Loan, in an amount not to exceed **TWENTY FIVE MILLION DOLLARS ($25,000,000)**, were authorized to be used by the Authority for operational expenses, as set forth in Resolution No. 2008-43 adopted by the Authority on September 11, 2008. The Line of Credit is evidenced by a Note for the principal amount of **ONE HUNDRED FIFTY SIX MILLION NINE HUNDRED SEVEN THOUSAND NINE HUNDRED TWENTY THREE DOLLARS AND SEVENTY ONE CENTS ($156,907,923.71)**, subscribed on August 6, 2008 by the Borrower and payable to the order of the Lender."

2. Paragraph number 2 of the Amended and Restated Loan Agreement, as amended by the First and Second Amendments to Amended and Restated Loan Agreement, is deleted in its entirety and replaced with the following:

"The Borrower will request the funds in one or more drawings ("Drawings") only for the purposes above mentioned. The Borrower shall request each Drawing by written notice to the Lender and signed by any authorized officer of the Borrower with at least three (3) Banking Days before such Drawing. Borrower shall use the Notice of Drawing Form included as **Exhibit C** to request each Drawing. Notice of Drawing from the Borrower, once received by the Lender, shall be irrevocable. For the purposes of this Loan Agreement, "Banking Day" means a day on which commercial banks are open for business in San Juan, Puerto Rico."

3. Paragraph number 3 of the Amended and Restated Loan Agreement, as amended by the First and Second Amendments to Amended and Restated Loan Agreement, is deleted in its entirety and replaced with the following:

28651 v2

AAFAF_CONF_0004080

"The principal amount of the Line of Credit shall mature and be due and payable on January 31, 2013. The Borrower hereby agrees to repay the outstanding aggregate principal amount of the Loan at the principal office of the Lender in San Juan, Puerto Rico, from proceeds of the Operational Management Agreement for the Private/Public Partnership on Highway PR-22 to be entered by the Authority with a third party yet to be determined or with the proceeds of bonds to be issued by the Authority pursuant to the provisions of the respective sections of the Resolutions. If these sources were insufficient, the Borrower shall proceed in accordance with the provisions set forth in Paragraph 6 and 7.

The Loan shall bear interest daily until its repayment at a variable rate of interest per annum equal to *Prime Rate* plus 150 basis points, as determined from time to time in good faith by the Lender, or, upon written notice to the Borrower, which interest rate may be revised periodically, equal to the Lender's cost of funding for variable rate loan transactions or the cost of any other obligations or source of funds used to fund the Loan. For the purposes of this Loan Agreement, such interest rate shall not exceed twelve (12) percent and shall not be less than six (6) percent. Interest shall be calculated on the basis of a 360-day year of twelve 30-day months. Interest for any period of less than one calendar month shall be calculated on the basis of the actual number of days elapsed during that month. Interest shall be payable at maturity of the Loan.

The Authority may prepay the Line of Credit at any time without penalty or premium. The Line of Credit shall be junior and subordinate to outstanding bonds of the Authority and shall be subject to certain other terms and conditions, all as contained in this Loan Agreement.

The President of the Bank or the duly authorized Executive Vice President of the Bank may modify the interest rate at anytime at their full discretion, depending on the interest rate market."

4. Pursuant to this Third Amendment to Amended and Restated Loan Agreement (the "Third Amendment"), a Fourth Allonge to Promissory Note shall be executed by the Authority on this date, and it will be attached to the Promissory Note, as amended by the First, Second and Third Allonges to Promissory Note, with the purposes of incorporating to said Promissory Note the agreements and amendments herein contained.



28651 v2

AAFAF_CONF_0004081

5. If the Borrower fails to pay the principal amount of the Loan when it becomes due and payable, or does not pay interest when due, the Lender may, at its sole option, without notice to Borrower and to the fullest extent allowed by law, set off and apply against the Loan any other available moneys (including deposits of any kind) of the Borrower held by the Lender against any such unpaid principal amount or unpaid accrued interest.

6. The Line of Credit shall not be used for new or additional disbursements unless it is increased o reactivated in the future by means of an authorization of the Board of Directors of the Bank or of its Executive Committee.

7. If such new or additional disbursements are duly authorized, the parties furthermore agree that the Lender reserves the right to request any additional information needed prior to processing any disbursements from the Line of Credit including, but not limited to, copies of invoices.

8. The Borrower agrees to pay to the Lender for this transaction a financial advisory fee in the amount of **Forty Five Thousand Six Hundred One Dollars and Seventy Nine Cents ($45,601.79)**.

9. This Third Amendment does not constitute a novation of the obligations set forth in the Amended and Restated Loan Agreement, as amended, and all provisions of such Amended and Restated Loan Agreement, not inconsistent with this Third Amendment, shall remain in full force and effect.

10. This Third Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.

11. In the event that any provision of this Third Amendment is declared to be void of unenforceable, the remainder of this Third Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

12. The President of the Bank, the Executive Vice President of Financing or any duly designated Vice President, are authorized to negotiate any other term or condition necessary in relation to the extension or renewal of this Loan, in order to safeguard the best interests of the Bank.

**[SIGNATURE PAGE FOLLOWS]**

28651 v2

AAFAF_CONF_0004082

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this First Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

_____
José R. Otero Freiría
Executive Vice President
of Financing

_____
Rubén A. Hernández Gregorat
Secretary of Transportation and Public Works
Executive Director PRHTA

Affidavit No. 704

Recognized and subscribed before me by Rubén A. Hernández Gregorat as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on July 6, 2012.

_____
Notary Public

**EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982**

Affidavit No. 713

Recognized and subscribed before me by José R. Otero Freiría, as Executive Vice President of Financing of the Government Development Bank for Puerto Rico, of legal age, married and resident of Dorado, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on July 9, 2012.

_____
Notary Public

**EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982**

28651 v2

# FOURTH AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT

This **FOURTH AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT**, dated February 14, 2013, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

## W I T N E S S E T H

**WHEREAS**, pursuant to a Loan Agreement dated as of August 6, 2008 (the "Loan Agreement"), Lender provided Borrower an interim financing in the form of a Line of Credit for the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)** to finance costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of improvements included in the Authority's Construction Improvement Program for fiscal year 2009 (the "Loan" or the "Line of Credit");

**WHEREAS**, the Loan was evidenced by a Promissory Note payable to the order of the Bank on June 30, 2009, issued on the same date as the Loan Agreement, for the amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000)**;

**WHEREAS**, on September 30, 2008, a First Amendment to Loan Agreement was executed by Borrower and Lender to authorize the use of up to $25,000,000 of the Line of Credit for operational expenses;

**WHEREAS**, on September 30, 2008, a Second Amendment to Loan Agreement was executed by Borrower and Lender to provide certain additional real property as additional guarantee for repayment of the Loan;

**WHEREAS**, on October 16, 2008, a Third Amendment to Loan Agreement was executed by Borrower and Lender to provide for the use of funds generated by the *Tren Urbano* operation as additional guarantee for repayment of the Loan;

**WHEREAS**, on October 30, 2009, an Amended and Restated Loan Agreement was executed by Borrower and Lender to restate in one sole document the terms and conditions of the Loan Agreement, as amended, to extend the maturity date of the Loan to September 30, 2010, and to incorporate certain additional conditions related to the agreed extension of the maturity of the Loan. A corresponding First Allonge to Promissory Note was subscribed by the Borrower on the same date;

**WHEREAS**, on October 8, 2010, a First Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender to extend the maturity date of the Loan to June 30, 2011, to modify interest to a daily accrual until repayment of the

29254 v.2

AAFAF_CONF_0004094

2

Loan at *Prime Rate* plus 150 basis points with a floor rate of 6%, and to establish a default rate of 400 basis points. A corresponding Second Allonge to Promissory Note was subscribed by the Borrower on the same date;

WHEREAS, on May 19, 2011, a Second Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender to extend the maturity date of the Loan to August 31, 2012, and to modify the default rate to 200 basis points. A corresponding Third Allonge to Promissory Note was subscribed by the Borrower on the same date;

WHEREAS, a Third Amendment to Amended and Restated Loan Agreement was executed by Borrower on July 6, 2012 and by the Lender on July 9, 2012, to extend the maturity of the Loan up to January 31, 2013, to increase of the maximum amount of the Loan by NINE MILLION SEVEN HUNDRED NINETY FOUR THOUSAND NINE HUNDRED TWENTY THREE DOLLARS AND SEVENTY ONE CENTS ($9,794,923.71), and to establish the payment of interest at the maturity of the Loan, among other terms and conditions. A corresponding Fourth Allonge to Promissory Note was subscribed by the Borrower on July 6, 2012;

WHEREAS, pursuant to the terms of Resolution 9946, adopted by the Board of Directors of the Bank on January 17, 2013, the Bank approved the extension of the maturity of the Loan up to January 31, 2014, among other terms and conditions; and

WHEREAS, pursuant to Resolution Number 2013-15 issued by Miguel A. Torres Díaz, Secretary of Transportation and Public Works on January 31, 2013, the Borrower accepted the conditions required by the Lender to extend the maturity date of the Loan, subject to certain conditions.

NOW, THEREFORE, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The first sentence of Paragraph number 3 of the Amended and Restated Loan Agreement, as amended by the First, Second and Third Amendments to Amended and Restated Loan Agreement, is amended to read as follows:

> The principal amount of the Line of Credit shall mature and be due and payable on January 31, 2014.

2. Pursuant to this Fourth Amendment to Amended and Restated Loan Agreement (the "Fourth Amendment"), a Fifth Allonge to Promissory Note shall be executed by the Authority on this date, and it will be attached to the Promissory Note, as amended by the First, Second, Third and Fourth Allonges to Promissory Note, with the purposes of incorporating to said Promissory Note the agreements and amendments herein contained.

29254 v.2

AAFAF_CONF_0004095

3

3.  Borrower acknowledges that no additional funds shall be drawn from the Line of Credit unless the same has been incremented or reactivated in the future through an authorizing resolution approved by the Board of Directors or the Executive Committee of the Board of Directors of the Lender.

4.  The Borrower agrees to pay to the Lender for this transaction a financial advisory fee in the amount of Fifty Thousand Six Hundred Thirty Five Dollars and Ninety Seven Cents ($50,635.97).

5.  This Fourth Amendment does not constitute a novation of the obligations set forth in the Amended and Restated Loan Agreement, as amended, and all provisions of such Amended and Restated Loan Agreement, as amended, not inconsistent with this Fourth Amendment, shall remain in full force and effect.



6.  This Fourth Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.

7.  In the event that any provision of this Fourth Amendment is declared to be void of unenforceable, the remainder of this Fourth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

8.  The President of the Bank, the Executive Vice President of Financing or any duly designated Vice President, are authorized to negotiate any other term or condition necessary in relation to the extension or renewal of this Loan, in order to safeguard the best interests of the Bank.

**[SIGNATURE PAGE FOLLOWS]**

29254 v.2

AAFAF_CONF_0004096

4

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Fourth Amendment to Amended and Restated Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

_____
Ian Figueroa
Executive Vice President and
Director of Financing

_____
Javier E. Ramos Hernández
Executive Director

Testimony No. 453

Recognized and subscribed before me by Javier E. Ramos Hernández, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, executive and resident of Bayamón, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on February 14, 2013.

EXENTO DE PAGO
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

Testimony No. 454

Recognized and subscribed before me by Ian Figueroa, as Executive Vice President and Director of Financing of the Government Development Bank for Puerto Rico, of legal age, married, executive and resident of San Juan, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on February 14, 2013.

EXENTO DE PAGO
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

29254 v.2

AAFAF_CONF_0004097

## FIFTH AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT

This **FIFTH AMENDMENT TO AMENDED AND RESTATED LOAN AGREEMENT**, is entered into by the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

### WITNESSETH

**WHEREAS,** on October 30, 2009, an Amended and Restated Loan Agreement was executed by Borrower and Lender to restate in one sole document the terms and conditions of a Loan Agreement executed by the parties on August 6, 2008, to provide financing, initially, for the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ONE HUNDRED THIRTEEN THOUSAND DOLLARS ($147,113,000),** as had been amended from time to time.  A corresponding First Allonge to Promissory Note was executed by the Borrower on the same date;

**WHEREAS,** on October 8, 2010, a First Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender to extend the maturity date of the Loan to June 30, 2011, to modify interest to a daily accrual until repayment of the Loan at *Prime Rate* plus 150 basis points with a floor rate of 6%, and to establish a default rate of 400 basis points.  A corresponding Second Allonge to Promissory Note was subscribed by the Borrower on the same date;

**WHEREAS,** on May 19, 2011, a Second Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender to extend the maturity date of the Loan to August 31, 2012, and to modify the default rate to 200 basis points.  A corresponding Third Allonge to Promissory Note was subscribed by the Borrower on the same date;

**WHEREAS,** a Third Amendment to Amended and Restated Loan Agreement was executed by Borrower on July 6, 2012 and by the Lender on July 9, 2012, to extend the maturity of the Loan up to January 31, 2013, to increase of the maximum amount of the Loan by **NINE MILLION SEVEN HUNDRED NINETY FOUR THOUSAND NINE HUNDRED TWENTY THREE DOLLARS AND SEVENTY ONE CENTS ($9,794,923.71),** and to establish the payment of interest at the maturity of the Loan, among other terms and conditions.  A corresponding Fourth Allonge to Promissory Note was subscribed by the Borrower on July 6, 2012;

**WHEREAS,** a Fourth Amendment to Amended and Restated Loan Agreement was executed by Borrower and Lender on February 14, 2013, to extend the maturity date of the Loan to January 31, 2013, and to modify other terms and conditions.  A corresponding Fifth Allonge to Promissory Note was subscribed by the Borrower on the same date.

29254 v.2

AAFAF_CONF_0004107

**WHEREAS**, pursuant to the terms of Resolution Number 10197 adopted by the Board of Directors of the Bank on November 20, 2013, the Bank approved the extension of the maturity of the Loan up to January 31, 2015, among other terms and conditions;

**WHEREAS,** pursuant to Resolution Number 2014-04 issued by Miguel A. Torres Díaz, Secretary of Transportation and Public Works on January 30, 2014, the Borrower accepted the conditions required by the Lender to extend the maturity date of the Loan, subject to certain conditions; and

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The first sentence of Paragraph number 3 of the Amended and Restated Loan Agreement, as amended, is hereby amended to read as follows:

The principal amount of the Line of Credit shall mature and be due and payable on January 31, 2015.

2. In connection with this Fifth Amendment to Amended and Restated Loan Agreement (the "Fifth Amendment"), a Sixth Allonge to Promissory Note is executed by the Authority, and is attached to the Promissory Note, as amended, with the purpose of incorporating to said Promissory Note, as amended, the agreements and amendments herein contained.

3. The Borrower agrees to pay to the Lender for this transaction a financial advisory fee in the amount of Fifty Eight Thousand Nine Hundred Sixty Nine Dollars and Thirty One Cents ($58,969.31).

4. This Fifth Amendment does not constitute a novation of the obligations set forth in the Amended and Restated Loan Agreement, as amended, and all provisions of such Amended and Restated Loan Agreement, as amended, not inconsistent with this Fifth Amendment, shall remain in full force and effect.

5. In the event that any provision of this Fifth Amendment is declared to be void of unenforceable, the remainder of this Fifth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

6. Pursuant to Resolution 10197, adopted by the Board of Directors of the Bank on November 20, 2013, this Fifth Amendment is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

29254

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Fifth Amendment to Amended and Restated Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, on the date or dates set forth below.

**GOVERNMENT DEVELOPMENT
BANK FOR PUERTO RICO**

**PUERTO RICO HIGHWAY AND
TRANSPORTATION AUTHORITY**

_____
Jorge A. Clivillés Díaz
Fiscal Agent

_____
Javier E. Ramos Hernández
Executive Director

Testimony No. 778 -

    Recognized and subscribed before me by Javier E. Ramos Hernández, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, executive and resident of Bayamón, Puerto Rico, personally known to me.

    In San Juan, Puerto Rico, on February, 4, 2014.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

Testimony No. 787 —

    Recognized and subscribed before me by Jorge A. Clivillés Díaz as Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married, executive and resident of San Juan, Puerto Rico, personally known to me.

    In San Juan, Puerto Rico, on February, 4, 2014.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982