## LOAN AGREEMENT

This **LOAN AGREEMENT**, dated as of August 27, 2010 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

**WHEREAS,** the Authority is in need of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series N;

**WHEREAS,** on February 15, 2007 the Authority issued Series N consisting of $389,060,000 in FRNs, subject to an interest rate of 67% of three month LIBOR plus 0.53%, and maturing in 2041 and 2045 (the "Authority FRNs"). As of today, the market value of the Authority FRNs is significantly below par due to the historically low levels of LIBOR and lack of liquidity in this particular product;

**WHEREAS,** on August 25, 2010 the Authority received a collateral posting requirement from Citibank, the Counterparty, demanding the amount of $21,495,904 due on August 30, 2010;



**WHEREAS,** as a result of the above mentioned the Authority has requested that the Bank provide such financing on an interim basis to cover any collateral posting requirement on the fixed payer swaps associated to the Authority FRNs and costs related to the financing;

**WHEREAS,** the Authority intends to repay this interim financing with the proceeds of a future bond issuance of the Authority, or any other available resources of the Authority;

**WHEREAS,** the Bank is willing to provide such financing, but in an amount not to exceed $45,000,000 in accordance with the terms and conditions herein below set forth, which the Bank understands will be enough to cover the immediate and urgent need of funds of the Authority;

**WHEREAS,** the Borrower and the Lender intend that this Loan Agreement and the Loan be subject to the terms of the Fiscal Oversight Agreement, dated as of July 6, 2009, as may be amended from time to time, between the Lender and the Borrower (the "Fiscal Oversight Agreement");

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  Subject to the terms and conditions contained herein, the Lender hereby agrees to make non-revolving advances to the Borrower (each, an "Advance") under a non-revolving line of credit in an aggregate principal amount not to exceed **FORTY FIVE MILLION**

AAFAF_CONF_0003155

**DOLLARS ($45,000,000)** (the "Loan") for the sole purpose of paying collateral posting requirements on the fixed payer swaps associated to the Authority FRNs and to cover costs related to this financing.

2. The Loan shall be evidenced by a Promissory Note in an aggregate principal amount of not to exceed **FORTY FIVE MILLION DOLLARS ($45,000,000)**. The Promissory Note shall be substantially in the form attached hereto as Exhibit A, subscribed on this same date by the Borrower and payable to the order of the Lender. Each borrowing made by the Borrower under Section 1 above (a "Borrowing") shall reduce the amount of the Loan by the principal amount of such Borrowing.

3. Unless otherwise agreed to by the Lender, the Borrower may request an Advance in writing by not later than 11:00 a.m. (Puerto Rico time) at least three (3) Banking Days prior to the date of the proposed Advance by an authorized representative of the Borrower. The Lender shall fund the requested Advance on the date requested in such notice (which must be a Banking Day) and indicate under which Note the Advance is been funded. Each request for an Advance given by the Borrower to the Lender shall be in the form attached hereto as Exhibit B. A request for an Advance from the Borrower, once received by the Lender, shall be irrevocable and binding on the Borrower. For the purposes of this Loan Agreement, "Banking Day" means any day on which commercial banks are open for business in San Juan, Puerto Rico.

4. The principal amount of the Loan shall mature and be due and payable on August 27, 2011. or upon the termination of the swap agreement. Said principal amount shall be payable solely from proceeds of bonds to be issued by the Authority pursuant to the provisions of the respective sections of the Resolutions; or from any available resources of the Authority. Each Advance shall bear interest daily from the date of disbursement until paid in full at a fluctuating annual rate of interest equal to one and one half percent (1.5%) over and above the Prime Rate, as determined from time to time in good faith by the Lender, or, upon written notice to the Borrower, at a variable rate of interest, which interest rate may be revised quarterly, per annum equal to the Lender's cost of funding for variable rate loan transactions or the cost of any other obligations or source of funds used to fund the Advance. For purposes of the preceding sentence, the cost of funding shall mean the applicable cost of any source of funds used to fund the Loan, plus in either case, a required margin cost. Initially, this required margin cost will be equal to 150 basis points. The required margin cost may be revised from time to time by the Lender to such an extent that when added to the applicable cost of funds, the interest rate so determined and applicable to an Advance will provide for a total coverage of what the Lender determines to be its "all-inclusive" funding costs. For purposes of this Loan Agreement, the applicable interest rate shall not exceed twelve (12) percent and shall not be less than six (6) percent.

Anything hereunder to the contrary notwithstanding, and without prejudice to any remedies of the Lender provided hereunder or at law or in equity, the interest rate applicable to the outstanding principal amount of each Advance during any period when an Event of Default shall have occurred and be continuing shall be four percent (4.0%) over the otherwise applicable interest rate (the "Default Rate").

26522

AAFAF_CONF_0003156

Interest shall be payable monthly in arrears not later than the tenth Banking Day following receipt from the Bank of the statement referred to in the next sentence of this paragraph, from any available moneys of the Authority. Each month the Bank shall furnish to the Authority a written statement showing the amount of interest due and payable by the Authority on all outstanding Advances for the preceding month. The Loan shall be junior and subordinate to outstanding bonds of the Authority and shall be subject to certain other terms and conditions, as set forth in this Loan Agreement. Payment of principal and interest on the Loan shall be made in any coin or currency of the United States of America, which at the time of payment shall be legal tender for the payment of public and private debts.

5.  The Borrower will pay a fee equal to .25% of the principal amount of the Loan on or prior the closing date.

6.  If there is no disbursement activity on this Loan for a period of six months after its approval by the Board of Director of the Bank, the loan shall be cancelled automatically.

7.  If the Borrower (i) issues and sells bonds, notes or other evidences of indebtedness; or (ii) enters into a concession agreement or other form of public-private partnership with respect to any of its assets pursuant to the provisions of Act 29 of June 8, 2009, the Public Private Partnerships Act; in each case in one or more transactions yielding aggregate net proceeds in an amount equal to or greater than the amount of then outstanding Advances, the Borrower shall on the day of such sale (or if a series of sales, on the day of each such sale), prepay all then outstanding advances; provided, however, that no prepayment shall be required in connection with the refunding of indebtedness existing on the date hereof and set forth in Schedule 9 and extensions, renewals or replacement of such indebtedness that do not increase the outstanding principal amount thereof.

    The Borrower shall use reasonable commercial efforts to issue and sell bonds, notes or other evidences of Indebtedness in one or more transactions yielding aggregate net proceeds sufficient to require the Borrower to prepay the outstanding principal amount of Loan as set forth above, as soon as practical but no later than the Maturity Date without the Lender's consent.

8.  The Borrower shall have the right at any time and from time to time to prepay any Borrowing in whole or in part, without penalty or premium, subject to prior notice in accordance with the next sentence. The Borrower shall notify the Lender by telephone (confirmed by fax) of any prepayment hereunder not later than 11:00 a.m., Puerto Rico time, five (5) Business Days before the date of prepayment. Each such notice shall be irrevocable and shall specify the prepayment date and the principal amount of each Borrowing or portion thereof to be prepaid. Each prepayment of a Borrowing shall be made to the Lender and applied ratably to the Advances included in the prepaid Borrowing. Prepayments shall be applied first to interest due and payable if any, and then to principal of the Loan.

9.  This Loan Agreement and the Loan are subject to the terms of the Fiscal Oversight Agreement. The Lender and the Borrower agree to execute any required amendments to the Fiscal Oversight Agreement to evidence their agreement. The Borrower shall from time to

26522

time, upon request by the Lender, promptly provide the Lender with such information as to its finances and operations as the Lender shall reasonably request pursuant to the terms of the Fiscal Oversight Agreement.

10. No amendment or waiver of any provisions of this Agreement or consent to any departure by the Borrower herefrom shall be effective unless the same shall be in writing and signed by the Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

11. The representations and warranties made by the Borrower to the Lender under that certain Credit Agreement, dated as of July 6, 2009 (the "Credit Agreement"), by and between the Borrower and the Lender, as lender and administrative agent are hereby incorporated into this Loan Agreement as made on the date hereof.

12. If any of the following events ("Events of Default") shall occur:

(a) the Borrower shall fail to pay any principal of any Advance or any interest on any Advance when and as the same shall become due and payable, whether at the due date thereof or otherwise;



(b) the Borrower shall fail to pay any fee or any other amount (other than an amount referred to in clause (a) of this Article) payable under this Loan Agreement when and as the same shall become due and payable, and such failure shall continue unremedied for a period of three (3) Business Days;

(c) the Borrower shall become unable, admit in writing its inability or fail generally to pay its debts as they become due;

(d) the Borrower shall have defaulted in its obligations under the Fiscal Oversight Agreement, but only for so long as the Bank continues to be a lender hereunder; or

(e) the occurrence of an event of default under the Credit Agreement, the Indenture or any Bond Resolution (as defined in the Credit Agreement); or any other financing provided by the Lender

then, and in every such event, and at any time thereafter during the continuance of such event, the Lender shall, by notice to the Borrower, take either or both of the following actions, at the same or different times: (i) terminate the Loan immediately, and (ii) declare the Advances then outstanding to be due and payable in whole (or in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable) and thereupon the principal of the Advances and other amounts so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of the Borrower accrued hereunder, shall become due and payable immediately, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower.

26522

In case of recourse to the courts by the Lender in order to collect the whole or any portion of the principal or interest due, the Borrower agrees to pay a liquidated sum equal to 10% of the amount of the Loan to cover expenses of such proceedings, court costs, disbursements and attorney's fees, which amount will become immediately due and payable upon the filing of such judicial proceedings.

13. The Borrower waives the requirements of demand, presentment, protest, notice of dishonor, and, in general, any other legal formality.

14. Any notices which may be given to either party hereunder shall be in writing, and if addressed to the Lender, sent to the offices of the Lender located at Roberto Sánchez Vilella Government Center, de Diego Avenue, San Juan, Puerto Rico, 00940, Attention: Executive Vice President of Financing and Treasury, or to such other address or person as the Lender may hereafter notify the Borrower in writing, and if addressed to the Borrower, sent to the address of the Borrower: Puerto Rico Highway and Transportation Authority, Roberto Sánchez Vilella Government Center, de Diego Avenue, San Juan, Puerto Rico, 00940, Attention: Executive Director, or such other address or person as the Borrower may hereafter notify the Lender in writing.  Any such notice, if delivered personally or by facsimile transmission, shall be effective on the date when given, and if sent by mail, shall be effective three (3) Banking Days after posting.

15. This Loan Agreement, together with the Note, the authorizing resolutions and the other documents delivered by the parties in connection with the closing of the Loan, expresses the entire agreement of the parties with respect to the transactions contemplated hereby.

16. This Loan Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns. The Lender may assign to any other financial institution all or any part of, or any interest in, the Lender's right hereunder and in the Advances, and to the extent of such assignment, such assignee shall have the same rights against the Borrower hereunder as does the Lender. The Borrower may not assign any of its rights nor delegate any of its obligations hereunder without the Lender's prior written consent. This Loan Agreement shall be governed by, and the rights and obligations of the parties hereunder shall be construed in accordance with, the laws of the Commonwealth of Puerto Rico.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

26522

**IN WITNESS THEREOF**, the Borrower and the Lender have caused this Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first above written.

**GOVERNMENT DEVELOPMENT BANK
FOR PUERTO RICO**

By: _____
  Fernando L. Batlle
  Executive Vice President of Financing
  and Treasury

**PUERTO RICO HIGHWAY AND
TRANSPORTATION AUTHORITY**

By: _____
  Rubén A. Hernández Gregorat
  Secretary of Transportation and Public
  Works and Executive Director

Affidavit No. 177

Acknowledged and subscribed before me by Rubén A. Hernández Gregorat as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on August 27, 2010.

_____
Notary Public

Affidavit No. 173

Acknowledged and subscribed before me by Fernando L. Batlle Hernaiz, as Executive Vice President of Financing and Treasury of Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on August 27, 2010.

_____
Notary Public

26522

## FIRST AMENDMENT TO LOAN AGREEMENT

This **FIRST AMENDMENT TO LOAN AGREEMENT**, dated November 8, 2010 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### WITNESSETH

WHEREAS, on August 27, 2010 the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal non revolving amount of **ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND DOLLARS ($118,300,000)** (the "Loan"), to provide interim financing to (i) pay certain costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of certain capital improvements to the Authority's facilities including those in its Construction Improvement Program for fiscal year 2010 and 2011, and paying certain costs associated with the automatization of the Authority's toll collection systems (collectively, the "Project"), and (ii) pay certain other suppliers of the Authority;

WHEREAS, the Loan was evidenced by two Promissory Notes payable to the Bank, issued on the same date as the Loan Agreement, one for the amount of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"), and the other for the amount of $47,362,350.75 associated with the Operating Expenses (the "HTA Operating Note");

WHEREAS, the Authority and the Bank have agreed to increase the total principal amount of the Loan by $83,862,215 for a total maximum amount of **TWO HUNDRED TWO MILLION ONE HUNDRED SYXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215),** to provide additional funds for the Capital Improvement Program for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the June 12, 2010 Memorandum of Understanding with the Bank, the Puerto Rico Electric Power Authority, and the Municipality of Bayamón;

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions contained herein, the parties hereto agree as follows:

AAFAF_CONF_0003289

1. The parties agree to increase the maximum amount of the Loan from ONE HUNDRED EIGHTEEN MILLION THREE HUNDERED THOUSAND DOLLARS ($118,300,000) to TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215).

2. The Authority agrees that the $83,862,215 Loan increase, will be used to provide the additional sums of $8,231,424 for the Capital Improvement Program for fiscal year 2010; $10,583,896 for the Capital Improvement Program for fiscal year 2011; $57,696,895 for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the June 12, 2010 Memorandum of Understanding with the Bank, the Puerto Rico Electric Power Authority, and the Municipality of Bayamón, all of which will be considered Permitted Expenses under the Loan Agreement.



3. The Loan increase shall be evidenced by a First Amendment (Allonge) to the HTA BAB Note to increase the amount to $89,752,969.25; a First Amendment (Allonge) to the HTA Operating Note to increase the amount to $105,059,245.75, and an additional Promissory Note for the amount of  $7,350,000.

4. The Borrower will pay the Bank a fee equal to 1/20 of 1% of the Loan increase.

5. The second paragraph of numbered Paragraph 5 of the Loan Agreement is hereby amended to read as follows:

"Anything hereunder to the contrary notwithstanding, and without prejudice to any remedies of the Lender provided hereunder or at law or in equity, if Borrower fails to pay the principal amount of the Loan, or any part thereof, on the date of maturity of the Loan, the interest rate applicable to any such outstanding principal amount shall be four percent (4.0%) over the Prime Rate ".

6. The parties agree that this First Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, and that all provisions of the Loan Agreement, not inconsistent with this First Amendment to Loan Agreement, shall remain in full force and effect.

[SIGNATURE PAGE FOLLOWS]



**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this First Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO | PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY |
|---|---|
| By: _____ | By: _____ |
| Juan Carlos Pavia | Javier Hernández Scimeca, CPA |
| Executive Vice President | Acting Executive Subdirector |
| Fiscal Agent | |

Affidavit No. 526 —

Recognized and subscribed before me by Javier Hernández Scimeca as Acting Executive Subdirector of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of ~~Bayamón~~ San Juan, Puerto Rico, personally known to me. mda —as

In San Juan, Puerto Rico, on November 8, 2010.

_____
Notary Public

Affidavit No. 527

Recognized and subscribed before me by Juan Carlos Pavia, as Executive Vice President, Fiscal Agent at the Government Development Bank for Puerto Rico, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on November 8, 2010.

_____
Notary Public

## SECOND AMENDMENT TO LOAN AGREEMENT

This **SECOND AMENDMENT TO LOAN AGREEMENT**, dated February 14, 2011 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

**WHEREAS,** on August 27, 2010 the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal non revolving amount of **ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND DOLLARS ($118,300,000)** (the "Loan"), to provide interim financing to (i) pay certain costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of certain capital improvements to the Authority's facilities including those in its Construction Improvement Program for fiscal year 2010 and 2011, and paying certain costs associated with the automatization of the Authority's toll collection systems (collectively, the "Project"), and (ii) pay certain other suppliers of the Authority;

**WHEREAS,** the Loan was evidenced by two Promissory Notes payable to the Bank, issued on the same date as the Loan Agreement, one for the amount of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"), and the other for the amount of $47,362,350.75 associated with the Operating Expenses (the "HTA Operating Note");

**WHEREAS,** on November 8, 2010 the Authority and the Bank executed a First Amendment to Loan Agreement (the "First Amendment") to increase the total principal amount of the Loan by $83,862,215 for a total maximum amount of **TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215),** to provide additional funds for the Capital Improvement Program for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the Memorandum of Understanding dated on June 12, 2010 between the Bank, the Authority, Puerto Rico Electric Power Authority and the Municipality of Bayamón;

**WHEREAS,** the First Amendment was evidenced by a First Amendment (Allonge) to the HTA BAB Note to increase the amount to $89,752,969.25; a First Amendment (Allonge) to the HTA Operating Note to increase the amount to $105,059,245.75, and an additional Promissory Note for the amount of $7,350,000;



27049

AAFAF_CONF_0003305

WHEREAS, the Authority and the Bank have agreed to increase the total principal amount of the Loan by $69,750,126 for a total maximum amount of TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FOURTY ONE DOLLARS ($271,912,341), to provide additional funds for the Capital Improvement Program and operational expenses for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; and for operational expenses attributable to fiscal year 2011;

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions contained herein, the parties hereto agree as follows:

1. The parties agree to increase the maximum amount of the Loan from TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215) to TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FOURTY ONE DOLLARS ($271,912,341).

2. The Authority agrees that the $69,750,126 Loan increase will be used to provide the additional sums of $5,720,168 and $29,119,273 for the Capital Improvement Program for fiscal year 2010 and 2011, respectively; and $7,310,091 and $27,600,594 for operational expenses attributable to fiscal year 2010 and 2011, correspondingly, all of which will be considered Permitted Expenses under the Loan Agreement.



3. The Loan increase shall be evidenced by a Second Amendment (Allonge) to the HTA BAB Note to increase the amount to $124,592,410.25; and a Second Amendment (Allonge) to the HTA Operating Note to increase the amount to $139,969,930.75.

4. On or before the date of execution and delivery of this Second Amendment to Loan Agreement, the Borrower covenants and agrees to pay to the Lender a financial services fee of $34,875.06.

5. The second paragraph of clause number 5 of the Loan Agreement, as amended, is hereby reinstated as stipulated originally in the Loan Agreement dated as of August 27, 2010.

6. The clause number 14 of the Loan Agreement is hereby amended to add the following paragraph:

"Upon the occurrence and during the continuance of an Event of Default (as defined in the Loan Agreement), the Lender at its sole option may, without notice to Borrower and to the fullest extent

27049

AAFAF_CONF_0003306

allowed by law, set off and apply any other available moneys (including deposits of any kind) of the Borrower against the Loan (including interests accrued). The Lender agrees to promptly notify Borrower after any such set-off and application; provided that the failure to give such notice shall not affect the validity of such set-off and application."

6. The parties agree that this Second Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement and its related Notes, both as amended, and that all provisions not inconsistent with this Second Amendment to Loan Agreement, shall remain unchanged, binding and in full force and effect.

7. The rights and obligations of the Parties to this Second Amendment to Loan Agreement are not intended for the benefit of and shall not be construed to create rights in parties other than the Borrower and the Lender.

8. In the event that any provision of this Second Amendment to Loan Agreement shall be held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

9. This Second Amendment to Loan Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.

[SIGNATURE PAGE FOLLOWS]





27049

AAFAF_CONF_0003307

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Second Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

GOVERNMENT DEVELOPMENT BANK    PUERTO RICO HIGHWAY AND
FOR PUERTO RICO    TRANSPORTATION AUTHORITY

By: _____    By: _____
Fernando L. Batlle Hernáiz         Javier Hernández Scimeca, CPA
Executive Vice President           Acting Executive Subdirector

Affidavit No. 315-

Recognized and subscribed before me by Javier Hernández Scimeca as Acting Executive Subdirector of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of San Juan, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on February 14th, 2011.



_____
Notary Public

Affidavit No. -317-

Recognized and subscribed before me by Fernando L. Batlle, of legal age, married, and resident of San Juan, Puerto Rico, as Executive Vice President of Financing and Treasury, personally known to me.

In San Juan, Puerto Rico, on February 14th, 2011.



_____
Notary Public

27049

## THIRD AMENDMENT TO LOAN AGREEMENT

This **THIRD AMENDMENT TO LOAN AGREEMENT**, dated April 28th, 2011 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### W I T N E S S E T H

**WHEREAS,** on August 27, 2010 the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal non revolving amount of **ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND DOLLARS ($118,300,000)** (the "Loan"), to provide interim financing to (i) pay certain costs incurred or to be incurred in the acquisition, construction, equipping, installation and development of certain capital improvements to the Authority's facilities including those in its Construction Improvement Program for fiscal year 2010 and 2011, and paying certain costs associated with the automatization of the Authority's toll collection systems (collectively, the "Project"), and (ii) pay certain other suppliers of the Authority;

**WHEREAS,** the Loan was evidenced by two Promissory Notes payable to the Bank, issued on the same date as the Loan Agreement, one for the amount of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"), and the other for the amount of $47,362,350.75 associated with the Operating Expenses (the "HTA Operating Note");

**WHEREAS,** on November 8, 2010 the Authority and the Bank executed a First Amendment to Loan Agreement (the "First Amendment") to increase the total principal amount of the Loan by $83,862,215 for a total maximum amount of **TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215),** to provide additional funds for the Capital Improvement Program for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the Memorandum of Understanding dated on June 12, 2010 between the Bank, the Authority, Puerto Rico Electric Power Authority and the Municipality of Bayamón;

**WHEREAS,** the First Amendment was evidenced by a First Amendment (Allonge) to the HTA BAB Note to increase the amount to $89,752,969.25; a First Amendment (Allonge) to the HTA Operating Note to increase the amount to $105,059,245.75, and an additional Promissory Note for the amount of $7,350,000;

27224

AAFAF_CONF_0003319

2

WHEREAS, on February 14, 2011 the Authority and the Bank executed a Second Amendment to Loan Agreement (the "Second Amendment") to increase the total principal amount of the Loan by $69,750,126 for a total maximum amount of **TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($271,912,341)**, to provide additional funds for the Capital Improvement Program and operational expenses for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; and for operational expenses attributable to fiscal year 2011;

WHEREAS, the Second Amendment was evidenced by a Second Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $124,592,410.25; a Second Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $139,969,930.75, and an additional Promissory Note for the amount of $7,350,000;

WHEREAS, the Authority has requested an increase of $28,700,000 in the amount of the Loan, to increase the total amount of the Loan to **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341)**;



WHEREAS, the Authority proposes the use of $4,700,000 from the $28,700,000 increase in the amount of the Loan to provide financial assistance to the Metropolitan Bus Authority for operational expenses; and the use of the remaining $24,000,000 to provide financial assistance to the Maritime Transportation Authority, given Resolution Number 2011-001 that declares the Maritime Transportation Authority in a state of financial and operational emergency, and the expected execution of a contractual agreement with a private entity for the operation of transportation service to the Island Municipalities of Vieques and Culebra;

WHEREAS, the Bank has consented to the Authority's request, subject to certain conditions, set forth in Resolution Numbers CE-2011-24 and CE-2011-25, adopted by the Board of Directors of the Bank on April 5, 2011.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions contained herein, the parties hereto agree to this THIRD AMENDMENT TO LOAN AGREEMENT, as follows:

1. The parties agree to increase the maximum amount of the Loan from **TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($271,912,341)** to **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341)**.

AAFAF_CONF_0003320

3

2. The Authority agrees that the $28,700,000 Loan increase will be used as follows: the amount of $4,700,000 will be used to partially cover projected resources needed by the Metropolitan Bus Authority ("MBA") during the month of April 2011; and the amount of $24,000,000 will be used to assist the Marine Transportation Authority ("MTA") during the time period it needs for reaching a contractual agreement with a private entity for the operation of the Fajardo to Vieques and Culebra system, after declaring the State of Emergency of the transportation service to the Island Municipalities of Vieques and Culebra, and a State of Fiscal Emergency for the Marine Transportation Authority.

3. The Loan increase shall be evidenced by a Promissory Note in the amount of $4,700,000 (the "MBA Note") and a Promissory Note in the amount $24,000,000 (the "MTA Note"), both executed by the Authority on this same date.

4. On or before the date of execution and delivery of this Third Amendment to Loan Agreement, the Borrower covenants and agrees to pay to the Lender a financial services fee of $14,350.00.



5. In connection with the MBA Note, the Bank's Fiscal Agency Department will require the Borrower to execute a Fiscal Oversight Agreement, containing an operational fiscal oversight plan, and a financial plan to implement operational initiatives to increase income and decrease operational expenses, for the Metropolitan Bus Authority.

6. In connection with the MTA Note, the following disbursement procedures will apply:

(a) Prior to the first disbursement of the funds and for each quarterly disbursement thereafter, Borrower will provide Lender an original certification signed by the Secretary of the Department of Transportation and Public Works or any official designated by the Secretary, evidencing that the disbursement petition complies with the purposes for which this increase in the Loan was authorized.

(b) The funds will be disbursed quarterly upon receipt of the corresponding certification by the Lender to the effect that the use of funds is as authorized.

(c) Lender will require whatever administrative mechanisms it deems necessary to ensure that the funds are used exclusively for the authorized purposes, without unreasonable delays in the disbursement of funds.

AAFAF_CONF_0003321

4

7. Additionally, in connection with the MTA Note, the Authority will submit an implementation plan to the Board of Directors of the Bank, for consideration in the next meeting of the Board, that specifies: 1) mechanism for identifying an certifying users as residents or non residents of the Island Municipalities; 2) determination of the rate structure for residents and non residents of the Island Municipalities; 3) determination of the rate structure that will be implemented with the flexibility for rate adjustments and procedures for rate revisions; and 4) establishes the cost for "dockage fee".

8. Additionally, in connection with the MTA Note, the Bank's Fiscal Agency Department will require the Borrower to execute a Fiscal Oversight Agreement containing an operational fiscal oversight plan and a financial plan to implement operational initiatives to increase income and decrease operational expenses, for the Maritime Transportation Authority. The Bank's Fiscal Agency Department will also require Borrower to present the Bank a plan, to be provided by the Maritime Transportation Authority, setting forth the manner in which it will implement the transition to private operation to reduce the financial burden of the Maritime Transportation Authority associated with the operation of the vessels.

9. The parties agree that this Third Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, and its related Notes, all as amended, and that all provisions therein not inconsistent with this Third Amendment to Loan Agreement, shall remain unchanged, binding and in full force and effect.

10. The rights and obligations of the parties to this Third Amendment to Loan Agreement are not intended for the benefit of and shall not be construed to create rights in parties other than the Borrower and the Lender.

11. Pursuant to Resolution Numbers CE-2011-24 and CE-2011-25 adopted by the Board of Directors of the Bank on April 5, 2011 in connection with this Third Amendment to Loan Agreement, this Third Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

12. In the event that any provision of this Third Amendment to Loan Agreement is held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

13. This Third Amendment to Loan Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.



AAFAF_CONF_0003322

5

**IN WITNESS WHEREOF,** the Borrower and the Lender have caused this Third Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

By: _____
José R. Otero-Freiría
Executive Vice President

By: _____
Rubén A. Hernández Gregorat
Secretary of Transportation and
Public Works and Executive
Director of PRHTA

Testimony No. 341

Recognized and subscribed before me by Rubén A. Hernández Gregorat Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on April 28th, 2011.



_____
Notary Public

Testimony No. 342

Recognized and subscribed before me by José R. Otero Freiría, of legal age, married, and resident of Dorado, Puerto Rico, as Executive Vice President of Financing and Treasury, personally known to me.

In San Juan, Puerto Rico, on April 28th, 2011.



_____
Notary Public

AAFAF_CONF_0003323

### FOURTH AMENDMENT TO LOAN AGREEMENT

This FOURTH AMENDMENT TO LOAN AGREEMENT, dated May 17, 2011 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### WITNESSETH

**WHEREAS,** on August 27, 2010 the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal non revolving amount of **ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND DOLLARS ($118,300,000)** (the "Loan"), to provide interim financing to (i) pay certain costs of certain capital improvements to the Authority's facilities including those incurred or to be incurred in the acquisition, construction, equipping, installation and development of the Capital Improvement Program for fiscal year 2010 and 2011, and paying certain costs associated with the automatization of the Authority's toll collection systems (collectively, the "Project"), and (ii) pay certain other suppliers of the Authority;

**WHEREAS,** the Loan was evidenced by two Promissory Notes payable to the Bank, issued on the same date as the Loan Agreement, one for the amount of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"), and the other for the amount of $47,362,350.75 associated with the Operating Expenses (the "HTA Operating Note");

**WHEREAS,** on November 8, 2010 the Authority and the Bank executed a First Amendment to Loan Agreement (the "First Amendment") to increase the total principal amount of the Loan by $83,862,215 for a total maximum amount of **TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215),** to provide additional funds for the Capital Improvement Program for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the Memorandum of Understanding dated on July 12, 2010 between the Bank, the Authority, Puerto Rico Electric Power Authority and the Municipality of Bayamón;

**WHEREAS,** the First Amendment was evidenced by a First Amendment (Allonge) to the HTA BAB Note to increase the amount to $89,752,969.25; a First Amendment (Allonge) to the HTA Operating Note to increase the amount to $105,059,245.75, and an additional Promissory Note for the amount of $7,350,000;

**WHEREAS,** on February 14, 2011 the Authority and the Bank executed a Second Amendment to Loan Agreement (the "Second Amendment") to increase the total principal amount of the Loan by $69,750,126 for a total maximum amount of **TWO**



AAFAF_CONF_0003345

2



HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($271,912,341), to provide additional funds for the Capital Improvement Program and operational expenses for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; and for operational expenses attributable to fiscal year 2011;

WHEREAS, the Second Amendment was evidenced by a Second Amendment Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $124,592,410.25; a Second Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $139,969,930.75, and an additional Promissory Note for the amount of $7,350,000;

WHEREAS, on April 28, 2011 the Authority and the Bank executed a Third Amendment to Loan Agreement (the "Third Amendment") to increase the total principal amount of the Loan by $28,700,000 for a total maximum amount of **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341)**.

WHEREAS, the Third Amendment was evidenced by a Promissory Note in the amount of $4,700,000 (the "MBA Note") and a Promissory Note in the amount of $24,000,000 (the "MTA Note").

WHEREAS, the Authority has requested an increase of $102,709,611 in the amount of the Loan, to increase the total amount of the Loan to **FOUR HUNDRED THREE MILLION THREE HUNDRED TWENTY ONE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($403,321,952)**, to provide additional resources for the Authority's operational and Capital Improvement Program expenses, to pay a judgment due by the Authority to Redondo Construction Company; and to provide additional operational funds to the Metropolitan Bus Authority for Fiscal Year 2011;

WHEREAS, the Authority has also requested authorization to use the maximum amount of $2,700,000, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment to Loan Agreement executed on April 28, 2011 (Lender Resolution No. CE-2011-25 of April 5, 2011) to provide financial assistance to the Maritime Transportation Authority, to pay insurance coverage for the vessels used by the Maritime Transportation Authority to provide transportation to the Island Municipalities of Vieques and Culebra;

WHEREAS, the Bank has consented to the Authority's requests, subject to conditions, set forth in Resolution Numbers 9493, 9494, 9495, and 9496, adopted by the Board of Directors of the Bank on April 20, 2011.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby

27294 v2

AAFAF_CONF_0003346

acknowledged, subject to the terms and conditions contained herein, the parties hereto agree to this FOURTH AMENDMENT TO LOAN AGREEMENT, as follows:

1. The parties agree to increase the maximum amount of the Loan from **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341)** to **FOUR HUNDRED THREE MILLION THREE HUNDRED TWENTY ONE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($403,321,952)**.

2. The Authority agrees that the $102,709,611 Loan increase will be used as follows: $4,188,958 for Borrower's operational expenses corresponding to Fiscal Year 2010; $62,054,868 for Borrower's projected operational expenses for the April to June semester of Fiscal Year 2011; $3,122,051 for Borrower's Capital Improvement Program corresponding to Fiscal Year 2011; $21,791,245 for Borrower's payment of a judgment in favor of Redondo Construction Company; $11,552,489 to provide the Metropolitan Bus Authority funds for payroll and other operational expenditures corresponding to May and June 2011.

3. The Loan increase shall be evidenced by a Third Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount by $3,122,051 to $127,714,461.25; and a Third Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount by $66,243,826 to $206,213,756.75. The Bank's Fiscal Agency Department will require the following from the Authority:



(a) Provide the Bank's Fiscal Agency Department a Plan within the next 30 days detailing the PG Engineering progress reports and the process for speeding up the Authority's capital improvement projects.

(b) Provide a detailed report on how critical areas of the Authority will continue providing services considering the decrease of 343 employees in payroll.

(c) Comply with the conditions set forth in Resolution No. CE-2011-25 of April 5, 2011 by the Executive Committee of the Board of Directors of the Bank.

(d) Review Borrower's accounts payable systems to reconcile the records of the Authority with the Bank's, so that they correctly reflect accumulated interest owed the Authority to the Bank, which amount to $72.8 million, not $30.1 million as reflected in the records of the Authority.

(e) Provide the Bank a report on progress made during Fiscal Year 2011 as part of its stabilization plan, and provide, in addition, its plan for Fiscal Year 2012, including how it will manage the precarious situation of Metropolitan Bus Authority.

4

(f)     Recommend that the Bank's engineering consultant and the Fiscal Agent of the Bank work hand in hand to evaluate opportunities to secure more federal funds to the Authority, to optimize its plan for capital improvements and to review and implement effectively and without delay the Authority's fiscal stabilization plan.

The Loan increase shall be evidenced by a First Amendment to Promissory Note (Allonge) to the MBA Note to increase the amount by $11,552,489 to $16,252,489, executed by the Authority on this same date.    In connection with the foregoing, Lender's Fiscal Agency Department will require Borrower a fiscal stabilization plan of the operations of the Metropolitan Bus Authority and a financial plan to be provided within the next thirty (30) days, with the aim of implementing operational initiatives to increase income and reduce the operational expenses of the Metropolitan Bus Authority, subject to the execution of a Fiscal Oversight Agreement; and a presentation to the Lender, within the stabilization plan corresponding to Fiscal Year 2011-2012, of how the precarious situation of the Metropolitan Bus Authority will be addressed.

5.    The Loan increase shall also be evidenced by a new additional Promissory Note for the amount of $21,791,245 (the "Redondo Note"), executed on this same date, for payment of the judgment to Redondo Construction.    The approval of the disbursement of these funds will be conditioned as follows:  Borrower will provide evidence acceptable to Lender of claims made to insurance companies in connection with the judgment payable to Redondo Construction, and that such claims are not partially or completely covered by the insurance policies of Borrower;  and Borrower will provide the Bank specific details of complaints by Redondo Construction against Borrower, with the purpose of evaluating possible risks, additional to the economic and fiscal situation of such public corporation.

6.    Lender consents to and authorizes the use of the maximum amount of $2,700,000 from the $24,000,000 borrowed by the Authority pursuant to the Third Amendment to Loan Agreement executed on April 28, 2011 to assist the Maritime Transportation Authority, to pay insurance coverage for the existing vessels of the Maritime Transportation Authority. Accordingly, Lender consents to amending Lender Resolution No. CE-2011-25, adopted on April 5, 2011, to permit the use of funds as set forth in this numbered paragraph 4.

In connection with the foregoing, the Authority agrees to provide Lender analyses of the statement of value of the referenced vessel insurance policies and the conditions of the referenced existing vessels, to evaluate the possible reduction of insurance premiums.

. In addition, the Authority agrees to provide a detailed memorandum about the insurance policies budgeted by the Maritime Transportation Authority and how these

27294 v2

AAFAF_CONF_0003348

5

policies have moved within the budget. If the policies were not budgeted, the Authority will explain the reason for such non inclusion in the budget.

7.   On or before the date of execution and delivery of this Fourth Amendment to Loan Agreement, the Borrower covenants and agrees to pay to the Lender a financial services fee of $41,083.84, equivalent to 1/25 of 1% of the $102,709,611 increase in the maximum amount of the Loan.

8.   The parties agree that this Fourth Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, and its related Notes, all as amended, and that all provisions therein not inconsistent with this Fourth Amendment to Loan Agreement, shall remain unchanged, binding and in full force and effect.

9.   The rights and obligations of the parties to this Fourth Amendment to Loan Agreement are not intended for the benefit of and shall not be construed to create rights in parties other than the Borrower and the Lender.

10.   Pursuant to Resolution Numbers 9493, 9494, 9495, and 9496, adopted by the Board of Directors of the Bank on April 20, 2011 in connection with this Fourth Amendment to Loan Agreement, this Fourth Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

11.   In the event that any provision of this Fourth Amendment to Loan Agreement is held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

12.   This Fourth Amendment to Loan Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.

[ SIGNATURE PAGE FOLLOWS]





27294 v2

AAFAF_CONF_0003349

6

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Fourth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

GOVERNMENT DEVELOPMENT BANK                 PUERTO RICO HIGHWAY AND
FOR PUERTO RICO                             TRANSPORTATION AUTHORITY

By: _____              By: _____
José R. Otero-Freiría                           Rubén A. Hernández Gregorat
Executive Vice President                        Secretary of Transportation and
                                                Public Works and Executive
                                                Director of the Puerto Rico
                                                Highway and Transportation
                                                Authority

Testimony No. 574 —

Recognized and subscribed before me by Rubén A. Hernández Gregorat, as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on May 17, 2011.

_____
Notary Public

Testimony No. 281

Recognized and subscribed before me by José R. Otero Freiría, of legal age, married, and resident of Dorado, Puerto Rico, as Executive Vice President of Financing and Treasury, personally known to me.

In San Juan, Puerto Rico, on May 17, 2011.

_____
Notary Public

27294 v2

AAFAF_CONF_0003350

**FIFTH AMENDMENT TO LOAN AGREEMENT** by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender")

## W I T N E S S E T H

**WHEREAS,** on August 27, 2010 the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal non revolving amount of **ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND DOLLARS ($118,300,000)** (the "Loan"), to provide interim financing to (i) pay certain costs of certain capital improvements to the Authority's facilities including those incurred or to be incurred in the acquisition, construction, equipping, installation and development of the Capital Improvement Program for fiscal year 2010 and 2011, and paying certain costs associated with the automatization of the Authority's toll collection systems (collectively, the "Project"), and (ii) pay certain other suppliers of the Authority;

**WHEREAS,** the Loan was evidenced by two Promissory Notes payable to the Bank, issued on the same date as the Loan Agreement, one for the amount of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"), and the other for the amount of $47,362,350.75 associated with the Operating Expenses (the "HTA Operating Note");

**WHEREAS,** on November 8, 2010 the Authority and the Bank executed a First Amendment to Loan Agreement (the "First Amendment") to increase the total principal amount of the Loan by $83,862,215 for a total maximum amount of **TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215),** to provide additional funds for the Capital Improvement Program for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the Memorandum of Understanding dated on July 12, 2010 between the Bank, the Authority, Puerto Rico Electric Power Authority and the Municipality of Bayamón;

**WHEREAS,** the First Amendment was evidenced by a First Amendment (Allonge) to the HTA BAB Note to increase the amount to $89,752,969.25; a First Amendment (Allonge) to the HTA Operating Note to increase the amount to $105,059,245.75, and an additional Promissory Note for the amount of $7,350,000;

**WHEREAS,** on February 14, 2011 the Authority and the Bank executed a Second Amendment to Loan Agreement (the "Second Amendment") to increase the total principal amount of the Loan by $69,750,126 for a total maximum amount of **TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND**

**THREE HUNDRED FORTY ONE DOLLARS ($271,912,341),** to provide additional funds for the Capital Improvement Program and operational expenses for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; and for operational expenses attributable to fiscal year 2011;

**WHEREAS,** the Second Amendment was evidenced by a Second Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $124,592,410.25; a Second Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $139,969,930.75, and an additional Promissory Note for the amount of $7,350,000;

**WHEREAS,** on April 28, 2011 the Authority and the Bank executed a Third Amendment to Loan Agreement (the "Third Amendment") to increase the total principal amount of the Loan by $28,700,000 for a total maximum amount of **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341).**

**WHEREAS,** the Third Amendment was evidenced by a Promissory Note in the amount of $4,700,000 (the "MBA Note") and a Promissory Note in the amount of $24,000,000 (the "MTA Note").

**WHEREAS,** on May 17, 2011 the Authority and the Bank executed a Fourth Amendment to Loan Agreement (the "Fourth Amendment") to increase the total amount of the Loan to **FOUR HUNDRED THREE MILLION THREE HUNDRED TWENTY ONE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($403,321,952),** to provide additional resources for the Authority's operational and Capital Improvement Program expenses, to pay a judgment due by the Authority to Redondo Construction Company; to provide additional operational funds to the Metropolitan Bus Authority for Fiscal Year 2011; and to provide authorization to use the maximum amount of $2,700,000, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment to provide financial assistance to the Maritime Transportation Authority, to pay insurance coverage for the vessels used by the Maritime Transportation Authority to provide transportation to the Island Municipalities of Vieques and Culebra;

**WHEREAS,** the Authority has requested that the Loan Agreement be further amended to include additional uses for the $24,000,000 it borrowed from Lender pursuant to the Third Amendment (for financial assistance to the Maritime Transportation Authority), given that the Board of Directors of the Maritime Transportation Authority decided it was not interested in pursuing the concession process of the maritime transportation service presently offered by the Maritime Transportation Authority, as had been planned.

AAFAF_CONF_0003386

**WHEREAS**, the Bank has consented to the Authority's request, subject to conditions, set forth in Resolution Number 9586, adopted by the Board of Directors of the Bank on August 17, 2011. In Resolution Number 2011-65 issued on October 20, 2011 by the Secretary of Transportation and Public Works, the Authority was authorized to execute the transaction subject to the Bank's conditions.

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions contained herein, the parties hereto agree to this FIFTH AMENDMENT TO LOAN AGREEMENT, as follows:

1. Lender consents to and authorizes the inclusion of the following uses among the uses of the amount of $24,000,000 borrowed by the Authority pursuant to the Third Amendment (for financial assistance to the Maritime Transportation Authority):

(a) Drafting of a document for "Invitation for Bidding "("IFB") of Operational Support;

(b) Support to the Maritime Transportation Authority for analyzing, documenting and solving the issues communicated by the various regulatory agencies that provide federal funds, among others, and which caused the state of emergency in the agency;

(c) Support to the Maritime Transportation Authority in making permanent improvements to the internal processes within the agency that result in effective and efficient service, and include the negotiation of the collective agreements to obtain economic and operational efficiencies necessary for the process; and

(d) Contracting of one or various suppliers to assist the Maritime Transportation Authority to cover the deficiencies in its services to the citizens of Fajardo, Vieques and Culebra.

2. The approval of this Fifth Amendment to the Loan Agreement and the disbursement of the funds shall be subject to the following:



(a) The Authority will provide the Bank a budget detailing by entry the proposed uses for the $24,000,000 assigned to subsidize the Maritime Transportation Authority; and

The President of the Bank, or his designee, will review the budget submitted and the disbursements will be made after approval thereof.

(c)     All other terms and conditions of the financing not inconsistent with the Resolution 9586 issued by the Bank's Board of Directors, will remain unaltered.

3.   The parties agree that this Fifth Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, and its related Notes, all as amended, and that all provisions therein not inconsistent with this Fifth Amendment to Loan Agreement, shall remain unchanged, binding and in full force and effect.

4.   The rights and obligations of the parties to this Fifth Amendment to Loan Agreement are not intended for the benefit of and shall not be construed to create rights in parties other than the Borrower and the Lender.

5.   Pursuant to Resolution Number and 9586, adopted by the Board of Directors of the Bank on August 17, 2011 in connection with this Fifth Amendment to Loan Agreement, this Fifth Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

6.   In the event that any provision of this Fifth Amendment to Loan Agreement is held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

7.   This Fifth Amendment to Loan Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.

## [PAGE LEFT BLANK INTENTIONALLY]





27768

**IN WITNESS WHEREOF,** the Borrower and the Lender have caused this Fifth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

By: _____
José R. Otero-Freiría
Executive Vice President

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

By: _____
Rubén A. Hernández Gregorat
Secretary of Transportation and
Public Works and Executive
     Director of the Puerto Rico
     Highway and Transportation
     Authority

Testimony No. 623

Recognized and subscribed before me by Rubén A. Hernández Gregorat, as Executive Director of the Puerto Rico Highway and Transportation Authority and Secretary of Transportation and Public Works, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on October 27, 2011.

_____
Notary Public

Testimony No. 424

Recognized and subscribed before me by José R. Otero Freiría, of legal age, married, and resident of Dorado, Puerto Rico, as Executive Vice President of Financing of the Government Development Bank for Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on ~~October~~ January 20, 201~~1~~2.

_____
Notary Public

27768

## SIXTH AMENDMENT TO LOAN AGREEMENT

**SIXTH AMENDMENT TO LOAN AGREEMENT** by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### WITNESSETH

**WHEREAS,** on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal non revolving amount of **ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND DOLLARS ($118,300,000)** (the "Loan"), to provide interim financing to (i) pay certain costs of certain capital improvements to the Authority's facilities including those incurred or to be incurred in the acquisition, construction, equipping, installation and development of the Capital Improvement Program for fiscal year 2010 and 2011, and paying certain costs associated with the automatization of the Authority's toll collection systems (collectively, the "Project"), and (ii) pay certain other suppliers of the Authority;

**WHEREAS,** the Loan was evidenced by two Promissory Notes payable to the Bank, issued on the same date as the Loan Agreement, one for the amount of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"), and the other for the amount of $47,362,350.75 associated with the Operating Expenses (the "HTA Operating Note");

**WHEREAS,** on November 8, 2010 the Authority and the Bank executed a First Amendment to Loan Agreement (the "First Amendment") to increase the total principal amount of the Loan by $83,862,215 for a total maximum amount of **TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215)**, to provide additional funds for the Capital Improvement Program for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the Memorandum of Understanding dated on July 12, 2010 between the Bank, the Authority, Puerto Rico Electric Power Authority and the Municipality of Bayamón;

**WHEREAS,** the First Amendment was evidenced by a First Amendment (Allonge) to the HTA BAB Note to increase the amount to $89,752,969.25; a First Amendment (Allonge) to the HTA Operating Note to increase the amount to $105,059,245.75, and an additional Promissory Note for the amount of $7,350,000;

AAFAF_CONF_0003399

WHEREAS, on February 14, 2011 the Authority and the Bank executed a Second Amendment to Loan Agreement (the "Second Amendment") to increase the total principal amount of the Loan by $69,750,126 for a total maximum amount of **TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($271,912,341)**, to provide additional funds for the Capital Improvement Program and operational expenses for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; and for operational expenses attributable to fiscal year 2011;

WHEREAS, the Second Amendment was evidenced by a Second Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $124,592,410.25; a Second Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $139,969,930.75, and an additional Promissory Note for the amount of $7,350,000;

WHEREAS, on April 28, 2011 the Authority and the Bank executed a Third Amendment to Loan Agreement (the "Third Amendment") to increase the total principal amount of the Loan by $28,700,000 for a total maximum amount of **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341)**.

WHEREAS, the Third Amendment was evidenced by a Promissory Note in the amount of $4,700,000 (the "MBA Note") and a Promissory Note in the amount of $24,000,000 (the "MTA Note").

WHEREAS, on May 17, 2011 the Authority and the Bank executed a Fourth Amendment to Loan Agreement (the "Fourth Amendment") to increase the total amount of the Loan to **FOUR HUNDRED THREE MILLION THREE HUNDRED TWENTY ONE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($403,321,952)**, to provide additional resources for the Authority's operational and Capital Improvement Program expenses, to pay a judgment due by the Authority to Redondo Construction Company; to provide additional operational funds to the Metropolitan Bus Authority for Fiscal Year 2011; and to provide authorization to use the maximum amount of $2,700,000, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment to provide financial assistance to the Maritime Transportation Authority, to pay insurance coverage for the vessels used by the Maritime Transportation Authority to provide transportation to the Island Municipalities of Vieques and Culebra;

WHEREAS, on January 20, 2012, the Authority and the Bank executed a Fifth Amendment to Loan Agreement (the "Fifth Amendment") to include the following additional uses for the $24,000,000 it borrowed from Lender pursuant to the Third Amendment: (a) drafting of a document for "Invitation for Bidding "("IFB") of Operational Support; (b) support to the Maritime Transportation Authority for analyzing, documenting and solving the issues communicated by the various



28261

AAFAF_CONF_0003400

regulatory agencies that provide federal funds, among others, and which caused the state of emergency in the agency; (c) support to the Maritime Transportation Authority in making permanent improvements to the internal processes within the agency that result in effective and efficient service, and include the negotiation of the collective agreements to obtain economic and operational efficiencies necessary for the process; and, (d) contracting of one or various suppliers to assist the Maritime Transportation Authority to cover the deficiencies in its services to the citizens of Fajardo, Vieques and Culebra.

WHEREAS, the Authority has furthermore requested to use the maximum amount of $2,680,518.62 from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment, to pay the current insurance coverage for the vessels used by the MTA to provide transportation to the Island Municipalities of Vieques and Culebra, and for the payment of the endorsement of the National Guard vessels for the year 2011.

WHEREAS, the Bank has consented to the Authority's requests, subject to conditions, set forth in Resolution Number CE-2012-25, adopted by the Board of Directors of the Bank on March 16, 2012.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions contained herein, the parties hereto agree to this SIXTH AMENDMENT TO LOAN AGREEMENT, as follows:

1. Lender consents to and authorizes the use of the maximum amount of $2,680,518.62 from the $24,000,000 borrowed by the Authority pursuant to the Third Amendment to Loan Agreement, in order to assist the MTA to pay the current insurance coverage for the vessels used by the MTA to provide transportation to the Island Municipalities of Vieques and Culebra, and for the payment of the endorsement of the National Guard vessels for the year 2011. Accordingly, Lender consents to amending Lender Resolution Number 9586, adopted by the Board of Directors of the Bank on August 17, 2011, to permit the use of funds as set forth in this numbered paragraph 1.

2. The Authority must establish a reserve in the amount of $160,000 within this line of credit for the cancellation of an expired credit line of the MTA with the Bank, which may be released in the event that funds are allocated for cancellation through the General Fund of the Government of Puerto Rico for the Fiscal Year 2012-2013.

3. In the eventuality that MTA regains interest in continuing with the concession of the maritime transportation service that it currently provides, the remaining funds may be reprogrammed for this purpose.

28261

AAFAF_CONF_0003401

4.   The parties agree that this Sixth Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, and its related Notes, all as amended, and that all provisions therein not inconsistent with this Sixth Amendment to Loan Agreement, shall remain unchanged, binding and in full force and effect.

5.   The rights and obligations of the parties to this Sixth Amendment to Loan Agreement are not intended for the benefit of and shall not be construed to create rights in parties other than the Borrower and the Lender.

6.   Pursuant to Resolution Number CE-2012-25, adopted by the Board of Directors of the Bank on March 16, 2012 in connection with this amendment, this Sixth Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

7.   In the event that any provision of this Sixth Amendment to Loan Agreement is held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

8.   This Sixth Amendment to Loan Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.

<p align="center">[ SIGNATURE PAGE FOLLOWS]</p>



28261

AAFAF_CONF_0003402

**IN WITNESS WHEREOF,** the Borrower and the Lender have caused this Sixth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

GOVERNMENT DEVELOPMENT BANK
FOR PUERTO RICO

By: _____
José R. Otero-Freiría
Executive Vice President

PUERTO RICO HIGHWAY AND
TRANSPORTATION AUTHORITY

By: _____
Rubén A. Hernández Gregorat
Secretary of Transportation and
Public Works and Executive
Director of the Puerto Rico
Highway and Transportation
Authority

Testimony No. 656

Recognized and subscribed before me by Rubén A. Hernández Gregorat, as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on March 19, 2012.



_____
Notary Public

Testimony No. 657

Recognized and subscribed before me by José R. Otero Freiría, of legal age, married, and resident of Dorado, Puerto Rico, as Executive Vice President of Financing, personally known to me.

In San Juan, Puerto Rico, on March 19, 2012.

_____
Notary Public

28261

AAFAF_CONF_0003403

SEVENTH AMENDMENT TO LOAN AGREEMENT

SEVENTH AMENDMENT TO LOAN AGREEMENT by and between the
PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY
(the "Authority" or the "Borrower") and the GOVERNMENT DEVELOPMENT
BANK FOR PUERTO RICO (the "Bank" or the "Lender"),

WITNESSETH

WHEREAS, on August 27, 2010, the Authority and the Bank executed a Loan
Agreement (the "Loan Agreement") for the total principal non revolving amount of
ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND
DOLLARS ($118,300,000) (the "Loan"), to provide interim financing to (i) pay certain
costs of certain capital improvements to the Authority's facilities including those
incurred or to be incurred in the acquisition, construction, equipping, installation and
development of the Capital Improvement Program for fiscal year 2010 and 2011, and
paying certain costs associated with the automatization of the Authority's toll collection
systems (collectively, the "Project"), and (ii) pay certain other suppliers of the
Authority;

WHEREAS, the Loan was evidenced by two Promissory Notes payable to the
Bank, issued on the same date as the Loan Agreement, one for the amount
of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"),
and the other for the amount of $47,362,350.75 associated with the Operating
Expenses (the "HTA Operating Note");

WHEREAS, on November 8, 2010 the Authority and the Bank executed a First
Amendment to Loan Agreement (the "First Amendment") to increase the total
principal amount of the Loan by $83,862,215 for a total maximum amount of TWO
HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO
HUNDRED FIFTEEN DOLLARS ($202,162,215), to provide additional funds for the
Capital Improvement Program for fiscal year 2010; for the Capital Improvement
Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011;
and $7,350,000 for the Authority's contribution to improvements to PR Road 177
pursuant to the Memorandum of Understanding dated on July 12, 2010 between the
Bank, the Authority, Puerto Rico Electric Power Authority and the Municipality of
Bayamón;

WHEREAS, the First Amendment was evidenced by a First Amendment to
Promissory Note (Allonge) to the HTA BAB Note to increase the amount to
$89,752,969.25; a First Amendment to Promissory Note (Allonge) to the HTA
Operating Note to increase the amount to $105,059,245.75, and an additional
Promissory Note for the amount of $7,350,000 (the "PR Road 177 Note");

AAFAF_CONF_0003413

WHEREAS, on February 14, 2011 the Authority and the Bank executed a Second Amendment to Loan Agreement (the "Second Amendment") to increase the total principal amount of the Loan by $69,750,126 for a total maximum amount of **TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($271,912,341),** to provide additional funds for the Capital Improvement Program and operational expenses for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; and for operational expenses attributable to fiscal year 2011;

WHEREAS, the Second Amendment was evidenced by a Second Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $124,592,410.25; a Second Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $139,969,930.75;

WHEREAS, on April 28, 2011 the Authority and the Bank executed a Third Amendment to Loan Agreement (the "Third Amendment") to increase the total principal amount of the Loan by $28,700,000 for a total maximum amount of **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341)** to provide operational funds to the Metropolitan Bus Authority ("MBA"); and to provide financial assistance to the Maritime Transportation Authority ("MTA") in the execution of a contractual agreement with a private entity for the operation of the Fajardo to Vieques and Culebra system, after declaring the State of Emergency of the transportation service to the Island Municipalities of Vieques and Culebra and a State of Fiscal Emergency for the MTA;

WHEREAS, the Third Amendment was evidenced by a Promissory Note in the amount of $4,700,000 (the "MBA Note") and a Promissory Note in the amount of $24,000,000 (the "MTA Note");

WHEREAS, on May 17, 2011 the Authority and the Bank executed a Fourth Amendment to Loan Agreement (the "Fourth Amendment") to increase the total amount of the Loan by $102,709,611 for a total maximum amount of **FOUR HUNDRED THREE MILLION THREE HUNDRED TWENTY ONE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($403,321,952),** to provide additional resources for the Authority's operational and Capital Improvement Program expenses, to pay a judgment due by the Authority to Redondo Construction Company; to provide additional operational funds to the MBA for Fiscal Year 2011; and to provide authorization to use the maximum amount of $2,700,000, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment to provide financial assistance to the MTA, to pay insurance coverage for the vessels used by the MTA to provide transportation to the Island Municipalities of Vieques and Culebra;

WHEREAS, the Fourth Amendment was evidenced by a Third Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $127,714,461.25; a Third Amendment to Promissory Note (Allonge) to the HTA

29890

AAFAF_CONF_0003414

Operating Note to increase the amount to $206,213,756.75; a First Amendment to Promissory Note (Allonge) to the MBA Note to increase the amount to $16,252,489; and a Promissory Note in the amount of $21,791,245 (the "Redondo Note");

WHEREAS, on January 20, 2012, the Authority and the Bank executed a Fifth Amendment to Loan Agreement (the "Fifth Amendment") to include the following additional uses for the $24,000,000 it borrowed from Lender pursuant to the Third Amendment: (a) drafting of a document for "Invitation for Bidding "("IFB") of Operational Support; (b) support to the MTA for analyzing, documenting and solving the issues communicated by the various regulatory agencies that provide federal funds, among others, and which caused the state of emergency in the agency; (c) support to the MTA in making permanent improvements to the internal processes within the agency that result in effective and efficient service, and include the negotiation of the collective agreements to obtain economic and operational efficiencies necessary for the process; and, (d) contracting of one or various suppliers to assist the MTA to cover the deficiencies in its services to the citizens of Fajardo, Vieques and Culebra;

WHEREAS, on March 19, 2012, the Authority and the Bank executed a Sixth Amendment to Loan Agreement (the "Sixth Amendment") to use the maximum amount of $2,680,518.62, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment, to pay the current insurance coverage for the vessels used by the MTA to provide transportation to the Island Municipalities of Vieques and Culebra, and for the payment of the endorsement of the National Guard vessels for the year 2011;

WHEREAS, the Loan matures on August 27, 2013 and is payable from the proceeds of bonds to be issued by the Authority, proceeds from the concession of any of the Authority's assets pursuant to the Public Private Partnerships Act, or from any available resources of the Authority;

WHEREAS, pursuant to the terms of Resolution 10101 adopted by the Board of Directors of the Bank on July 17, 2013, the Bank approved an extension to the maturity date of the Loan to August 31, 2014, subject to certain terms and conditions; and

WHEREAS, pursuant to Resolution Number 2013-37 issued by Miguel A. Torres Díaz, Secretary of the Puerto Rico Department of Transportation and Public Works on August 16, 2013, the Borrower accepted the conditions required by the Lender to extend the maturity date of the Loan.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions contained herein, the parties hereto agree to this Seventh Amendment to Loan Agreement, as follows:

29890

AAFAF_CONF_0003415

1.   The first sentence of numbered Paragraph 5 of the Loan Agreement, as amended, is hereby amended to read as follows:

"The principal amount of the Loan shall mature and be due and payable on August 31, 2014."

2.   The extension of the maturity date of the Loan to August 31, 2014 shall be evidenced by a Fourth Amendment to the HTA BAB Note (Allonge); a Fourth Amendment to the HTA Operating Note (Allonge); a First Amendment to the PR Road 177 Note (Allonge); a Second Amendment to the MBA Note (Allonge); a First Amendment to the MTA Note (Allonge); and a First Amendment to the Redondo Note (Allonge).

3.   The Borrower covenants and agrees to pay to the Lender an amount equal to $141,107.32 as financial services fee in connection with this Seventh Amendment to Loan Agreement.

4.   The parties agree that this Seventh Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement and its related Notes, all as amended, and that all provisions therein not inconsistent with this Seventh Amendment to Loan Agreement, shall remain unchanged, binding and in full force and effect.

5.   The rights and obligations of the parties to this Seventh Amendment to Loan Agreement are not intended for the benefit of and shall not be construed to create rights in parties other than the Borrower and the Lender.

6.   In the event that any provision of this Seventh Amendment to Loan Agreement is held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

7.   This Seventh Amendment to Loan Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.

**[SIGNATURE PAGE FOLLOWS]**

29890

AAFAF_CONF_0003416

**IN WITNESS WHEREOF,** the Borrower and the Lender have caused this Seventh Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

| | |
|---|---|
| **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** | **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** |

By: _____
Jorge A. Clivillés Díaz
Executive Vice President and
Fiscal Agent

By: _____
Javier E. Ramos Hernández
Executive Director

Testimony No. _550_

Recognized and subscribed before me by Javier E. Ramos Hernández, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on August _28_, 2013.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

Testimony No. _551_

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married, executive and resident of San Juan, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on August _28_, 2013.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

29890

AAFAF_CONF_0003417

## EIGHTH AMENDMENT TO LOAN AGREEMENT

EIGHTH AMENDMENT TO LOAN AGREEMENT by and between the PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY (the "Authority" or the "Borrower") and the GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO (the "Bank" or the "Lender"),

## WITNESSETH

WHEREAS, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal non revolving amount of ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND DOLLARS ($118,300,000) (the "Loan"), to provide interim financing to (i) pay certain costs of certain capital improvements to the Authority's facilities including those incurred or to be incurred in the acquisition, construction, equipping, installation and development of the Capital Improvement Program for fiscal year 2010 and 2011, and paying certain costs associated with the automatization of the Authority's toll collection systems (collectively, the "Project"), and (ii) pay certain other suppliers of the Authority;

WHEREAS, the Loan was evidenced by two Promissory Notes payable to the Bank, issued on the same date as the Loan Agreement, one for the amount of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"), and the other for the amount of $47,362,350.75 associated with the Operating Expenses (the "HTA Operating Note");



WHEREAS, on November 8, 2010 the Authority and the Bank executed a First Amendment to Loan Agreement (the "First Amendment") to increase the total principal amount of the Loan by $83,862,215 for a total maximum amount of TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215), to provide additional funds for the Capital Improvement Program for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the Memorandum of Understanding dated on July 12, 2010 between the Bank, the Authority, Puerto Rico Electric Power Authority and the Municipality of Bayamón;

WHEREAS, the First Amendment was evidenced by a First Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $89,752,969.25; a First Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $105,059,245.75, and an additional Promissory Note for the amount of $7,350,000 (the "PR Road 177 Note");

29637

AAFAF_CONF_0003434

**WHEREAS**, on February 14, 2011 the Authority and the Bank executed a Second Amendment to Loan Agreement (the "Second Amendment") to increase the total principal amount of the Loan by $69,750,126 for a total maximum amount of **TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($271,912,341),** to provide additional funds for the Capital Improvement Program and operational expenses for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; and for operational expenses attributable to fiscal year 2011;

**WHEREAS**, the Second Amendment was evidenced by a Second Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $124,592,410.25; a Second Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $139,969,930.75;

**WHEREAS**, on April 28, 2011 the Authority and the Bank executed a Third Amendment to Loan Agreement (the "Third Amendment") to increase the total principal amount of the Loan by $28,700,000 for a total maximum amount of **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341)** to provide operational funds to the Metropolitan Bus Authority ("MBA"); and to provide financial assistance to the Maritime Transportation Authority ("MTA") in the execution of a contractual agreement with a private entity for the operation of the Fajardo to Vieques and Culebra system, after declaring the State of Emergency of the transportation service to the Island Municipalities of Vieques and Culebra and a State of Fiscal Emergency for the MTA;

**WHEREAS**, the Third Amendment was evidenced by a Promissory Note in the amount of $4,700,000 (the "MBA Note") and a Promissory Note in the amount of $24,000,000 (the "MTA Note");

**WHEREAS**, on May 17, 2011 the Authority and the Bank executed a Fourth Amendment to Loan Agreement (the "Fourth Amendment") to increase the total amount of the Loan by $102,709,611 for a total maximum amount of **FOUR HUNDRED THREE MILLION THREE HUNDRED TWENTY ONE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($403,321,952),** to provide additional resources for the Authority's operational and Capital Improvement Program expenses, to pay a judgment due by the Authority to Redondo Construction Company; to provide additional operational funds to the MBA for Fiscal Year 2011; and to provide authorization to use the maximum amount of $2,700,000, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment to provide financial assistance to the MTA, to pay insurance coverage for the vessels used by the MTA to provide transportation to the Island Municipalities of Vieques and Culebra; ·

**WHEREAS**, the Fourth Amendment was evidenced by a Third Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $127,714,461.25; a Third Amendment to Promissory Note (Allonge) to the HTA

29637

AAFAF_CONF_0003435

Operating Note to increase the amount to $206,213,756.75; a First Amendment to Promissory Note (Allonge) to the MBA Note to increase the amount to $16,252,489; and a Promissory Note in the amount of $21,791,245 (the "Redondo Note");

WHEREAS, on January 20, 2012, the Authority and the Bank executed a Fifth Amendment to Loan Agreement (the "Fifth Amendment") to include the following additional uses for the $24,000,000 it borrowed from Lender pursuant to the Third Amendment: (a) drafting of a document for "Invitation for Bidding"("IFB") of Operational Support; (b) support to the MTA for analyzing, documenting and solving the issues communicated by the various regulatory agencies that provide federal funds, among others, and which caused the state of emergency in the agency; (c) support to the MTA in making permanent improvements to the internal processes within the agency that result in effective and efficient service, and include the negotiation of the collective agreements to obtain economic and operational efficiencies necessary for the process; and, (d) contracting of one or various suppliers to assist the MTA to cover the deficiencies in its services to the citizens of Fajardo, Vieques and Culebra;

WHEREAS, on March 19, 2012, the Authority and the Bank executed a Sixth Amendment to Loan Agreement (the "Sixth Amendment") to use the maximum amount of $2,680,518.62, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment, to pay the current insurance coverage for the vessels used by the MTA to provide transportation to the Island Municipalities of Vieques and Culebra, and for the payment of the endorsement of the National Guard vessels for the year 2011;

WHEREAS, on August 28, 2013, the Authority and the Bank executed a Seventh Amendment to Loan Agreement (the "Seventh Amendment") in order to extend the maturity date of the Loan to August 31, 2014;

WHEREAS the Seventh Amendment was evidenced by a Fourth Amendment to Promissory Note (Allonge) to the HTA BAB Note; a Fourth Amendment to Promissory Note (Allonge) to the HTA Operating Note; a First Amendment to Promissory Note (Allonge) to the PR Road 177 Note; a Second Amendment to Promissory Note (Allonge) to the MBA Note; a First Amendment to Promissory Note (Allonge) to the MTA Note; and a First Amendment to Promissory Note (Allonge) to the Redondo Note;

WHEREAS, the Authority has requested an increase to the $24,000,000 portion of the Loan that the Authority currently subsidizes to the MTA. The Authority has represented to the Bank that if such increase is not granted, the transportation services between the Island Municipalities of Vieques and Culebra would have to be suspended indefinitely;

WHEREAS, the parties have agreed to increase by $2,852,836 the $24,000,000 that the Authority borrowed from the Bank pursuant to the Third Amendment to

29637

AAFAF_CONF_0003436

provide additional financial assistance to the MTA, thereby increasing the maximum amount of the Loan to FOUR HUNDRED SIX MILLION ONE HUNDRED SEVENTY FOUR THOUSAND SEVEN HUNDRED EIGHTY EIGHT DOLLARS ($406,174,788);

WHEREAS, pursuant to the terms of Resolution 10038 adopted by the Bank's Board of Directors on May 15, 2013, as amended by Resolution 10104 adopted on July 17, 2013, and due to the MTA's precarious financial situation, the Bank approved the increase of the Loan as an emergency financing, subject to certain terms and conditions, in consideration with the residents of Vieques and Culebra, regular users of the maritime transportation services, and in order to avoid an economic and social catastrophe in said Island Municipalities; and

WHEREAS, pursuant to Resolution Number 2013-47 issued by Miguel A. Torres Díaz, Secretary of the Puerto Rico Department of Transportation and Public Works on October 8, 2013, the Authority accepted the conditions required by the Bank to increase the Loan.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions contained herein, the parties hereto agree to this Eighth Amendment to Loan Agreement, as follows:



1.    The parties agree to increase the maximum amount of the Loan from FOUR HUNDRED THREE MILLION THREE HUNDRED TWENTY ONE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($403,321,952) to FOUR HUNDRED SIX MILLION ONE HUNDRED SEVENTY FOUR THOUSAND SEVEN HUNDRED EIGHTY EIGHT DOLLARS ($406,174,788).

2.    The Authority agrees that the $2,852,836 increase to the $24,000,000 portion of the Loan will be used to provide financial assistance to the MTA in order to attend the State of Emergency of the transportation service to the Island Municipalities of Vieques and Culebra.

3.    The Loan increase shall be evidenced by a Second Amendment to Promissory Note (Allonge) to the MTA Note to increase the amount from $24,000,000 to $26,852,836, executed by the Authority on this same date.

4.    In connection with the MTA Note, as increased herein, the following disbursement procedure will apply:

a.   Prior to any disbursement, Borrower will provide Lender a duly executed Notice of Drawing made part of this Eighth Amendment to Loan Agreement as Exhibit I.

29637

AAFAF_CONF_0003437

b.  The parties agree that the Lender reserves the right to request additional information needed prior to processing any disbursements from the Loan, including, but not limited to, copies of invoices.

c.  Lender will require whatever administrative mechanisms it deems necessary to ensure that the funds are used exclusively for the authorized purposes, without unreasonable delays in the disbursement of funds.

5.   Additionally, the Authority shall submit to the Board of Directors of the Bank a fiscal stabilization plan, as required in Section 2.2 of that certain Fiscal Oversight Agreement dated January 10, 2012 ("FOA"), for its consideration in the next Board meeting, setting forth MTA's specific long term measures to reduce its operating deficit.

6.   Prior to any disbursement of the amount increased hereby, the Authority shall execute an amendment to the FOA in order to include those certain terms and conditions negotiated among the Bank, the Authority and the MTA.

7.   The Borrower covenants and agrees to pay to the Lender for this transaction a financial service fee of One Thousand Four Hundred Twenty Six Dollars and Forty Two Cents ($1,426.42) which is equal to 1/20 of 1% of the Loan increase.

8.   The parties agree that this Eighth Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, and its related Notes, all as amended, and that all provisions therein not inconsistent with this Eighth Amendment to Loan Agreement, shall remain unchanged, binding and in full force and effect.

9.   The rights and obligations of the parties to this Eighth Amendment to Loan Agreement are not intended for the benefit of and shall not be construed to create rights in parties other than the Borrower and the Lender.

10.  In the event that any provision of this Eighth Amendment to Loan Agreement is held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

11.  This Eighth Amendment to Loan Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.

**[SIGNATURE PAGE FOLLOWS]**

29637

AAFAF_CONF_0003438

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Eighth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO | PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY |
|---|---|
| By: _____ | By: _____ |
| Jorge A. Clivillés Díaz | Javier E. Ramos Hernández |
| Executive Vice President and Fiscal Agent | Executive Director |

Testimony No. _558_

Recognized and subscribed before me by Javier E. Ramos Hernández, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on October _17_, 2013.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

Testimony No. _559_

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married, executive and resident of San Juan, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on October _17_, 2013.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

. 29637

## NINTH AMENDMENT TO LOAN AGREEMENT

**NINTH AMENDMENT TO LOAN AGREEMENT** by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

### WITNESSETH

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal non revolving amount of **ONE HUNDRED EIGHTEEN MILLION THREE HUNDRED THOUSAND DOLLARS ($118,300,000)** (the "Loan"), to provide interim financing to (i) pay certain costs of certain capital improvements to the Authority's facilities including those incurred or to be incurred in the acquisition, construction, equipping, installation and development of the Capital Improvement Program for fiscal year 2010 and 2011, and paying certain costs associated with the automatization of the Authority's toll collection systems (collectively, the "Project"), and (ii) pay certain other suppliers of the Authority;

**WHEREAS**, the Loan was evidenced by two Promissory Notes payable to the Bank, issued on the same date as the Loan Agreement, one for the amount of $70,937,649.25 associated with the Capital Expenditures (the "HTA BAB Note"), and the other for the amount of $47,362,350.75 associated with the Operating Expenses (the "HTA Operating Note");

**WHEREAS**, on November 8, 2010 the Authority and the Bank executed a First Amendment to Loan Agreement (the "First Amendment") to increase the total principal amount of the Loan by $83,862,215 for a total maximum amount of **TWO HUNDRED TWO MILLION ONE HUNDRED SIXTY TWO THOUSAND TWO HUNDRED FIFTEEN DOLLARS ($202,162,215)**, to provide additional funds for the Capital Improvement Program for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; for operational expenses attributable to fiscal year 2011; and $7,350,000 for the Authority's contribution to improvements to PR Road 177 pursuant to the Memorandum of Understanding dated on July 12, 2010 between the Bank, the Authority, the Puerto Rico Electric Power Authority and the Municipality of Bayamón;

**WHEREAS**, the First Amendment was evidenced by a First Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $89,752,969.25; a First Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $105,059,245.75, and an additional Promissory Note for the amount of $7,350,000 (the "PR Road 177 Note");

30903

AAFAF_CONF_0003458

2

**WHEREAS,** on February 14, 2011 the Authority and the Bank executed a Second Amendment to Loan Agreement (the "Second Amendment") to increase the total principal amount of the Loan by $69,750,126 for a total maximum amount of **TWO HUNDRED SEVENTY ONE MILLION NINE HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($271,912,341),** to provide additional funds for the Capital Improvement Program and operational expenses for fiscal year 2010; for the Capital Improvement Program for fiscal year 2011; and for operational expenses attributable to fiscal year 2011;

**WHEREAS,** the Second Amendment was evidenced by a Second Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $124,592,410.25; a Second Amendment to Promissory Note (Allonge) to the HTA Operating Note to increase the amount to $139,969,930.75;

**WHEREAS,** on April 28, 2011 the Authority and the Bank executed a Third Amendment to Loan Agreement (the "Third Amendment") to increase the total principal amount of the Loan by $28,700,000 for a total maximum amount of **THREE HUNDRED MILLION SIX HUNDRED TWELVE THOUSAND THREE HUNDRED FORTY ONE DOLLARS ($300,612,341)** to provide operational funds to the Metropolitan Bus Authority ("MBA"); and to provide financial assistance to the Maritime Transportation Authority ("MTA") in the execution of a contractual agreement with a private entity for the operation of the Fajardo to Vieques and Culebra system, after declaring the State of Emergency of the transportation service to the Island Municipalities of Vieques and Culebra and a State of Fiscal Emergency for the MTA;

**WHEREAS,** the Third Amendment was evidenced by a Promissory Note in the amount of $4,700,000 (the "MBA Note") and a Promissory Note in the amount of $24,000,000 (the "MTA Note");

**WHEREAS,** on May 17, 2011 the Authority and the Bank executed a Fourth Amendment to Loan Agreement (the "Fourth Amendment") to increase the total amount of the Loan by $102,709,611 for a total maximum amount of **FOUR HUNDRED THREE MILLION THREE HUNDRED TWENTY ONE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($403,321,952),** to provide additional resources for the Authority's operational and Capital Improvement Program expenses, to pay a judgment due by the Authority to Redondo Construction Company; to provide additional operational funds to the MBA for Fiscal Year 2011; and to provide authorization to use the maximum amount of $2,700,000, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment to provide financial assistance to the MTA, to pay insurance coverage for the vessels used by the MTA to provide transportation to the Island Municipalities of Vieques and Culebra;

**WHEREAS,** the Fourth Amendment was evidenced by a Third Amendment to Promissory Note (Allonge) to the HTA BAB Note to increase the amount to $127,714,461.25; a Third Amendment to Promissory Note (Allonge) to the HTA

30903

AAFAF_CONF_0003459

Operating Note to increase the amount to $206,213,756.75; a First Amendment to Promissory Note (Allonge) to the MBA Note to increase the amount to $16,252,489; and a Promissory Note in the amount of $21,791,245 (the "Redondo Note");

**WHEREAS,** on January 20, 2012, the Authority and the Bank executed a Fifth Amendment to Loan Agreement (the "Fifth Amendment") to include  the following additional uses for the $24,000,000 borrowed from the Lender pursuant to the Third Amendment: (a) drafting of a document for "Invitation for Bidding"("IFB") of Operational Support; (b) support to the MTA for analyzing,  documenting and solving the issues communicated by the various regulatory agencies that provide federal funds, among others, and which caused the state of emergency in the agency; (c) support to the MTA in making permanent improvements to the internal processes within the agency  that result in effective and efficient service, and include the negotiation of the collective agreements to obtain economic and operational efficiencies necessary for the process; and, (d)  contracting of one or various suppliers to assist the MTA to cover the deficiencies in its services to the citizens of Fajardo, Vieques  and Culebra;

**WHEREAS,** on March 19, 2012, the Authority and the Bank executed a Sixth Amendment to Loan Agreement (the "Sixth Amendment") to use the maximum amount of $2,680,518.62, from the $24,000,000 it borrowed from Lender pursuant to the Third Amendment, to pay the current insurance coverage for the vessels used by the MTA to provide transportation to the Island Municipalities of Vieques and Culebra, and for the payment of the endorsement of the National Guard vessels for the year 2011;

**WHEREAS**, on August 28, 2013, the Authority and the Bank executed a Seventh Amendment to Loan Agreement (the "Seventh Amendment") in order to extend the maturity date of the Loan to August 31, 2014;

**WHEREAS** the Seventh Amendment was evidenced by a Fourth Amendment to Promissory Note (Allonge) to the HTA BAB Note; a Fourth Amendment to Promissory Note (Allonge) to the HTA Operating Note; a First Amendment to Promissory Note (Allonge) to the PR Road 177 Note; a Second Amendment to Promissory Note (Allonge) to the MBA Note; a First Amendment to Promissory Note (Allonge) to the MTA Note; and a First Amendment to Promissory Note (Allonge) to the Redondo Note;

**WHEREAS**, on October 17, 2013, the Authority and the Bank executed an Eighth Amendment to Loan Agreement (the "Eighth Amendment") in order to increase the $24,000,000 portion of the Loan that the Authority currently subsidizes to the MTA by $2,852,836 to provide additional financial assistance to the MTA, thereby increasing the maximum amount of the Loan to **FOUR HUNDRED SIX MILLION ONE HUNDRED SEVENTY FOUR THOUSAND SEVEN HUNDRED EIGHTY EIGHT DOLLARS ($406,174,788);**

30903

AAFAF_CONF_0003460

4

WHEREAS, the Eighth Amendment was evidenced by a Second Amendment to Promissory Note (Allonge) to the MTA Note to increase the amount to $26,852,836.

WHEREAS, the Loan matures on August 31, 2014, and it is payable from the proceeds of bonds to be issued by the Authority, proceeds from the concession of any of the Authority's assets pursuant to the Public Private Partnerships Act, or from any available resources of the Authority;

WHEREAS, pursuant to the terms of Resolution 10367 adopted by the Board of Directors of the Bank on June 27, 2014, the Bank approved an extension to the maturity date of the Loan to August 31, 2015, subject to certain terms and conditions; and

WHEREAS, pursuant to Resolution Number 2014-74 adopted by the Board of Directors of the Authority on September 22, 2014, the Borrower accepted the conditions required by the Lender to extend the maturity date of the Loan.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the terms and conditions contained herein, the parties hereto agree to this Ninth Amendment to Loan Agreement, as follows:

1.  The first sentence of numbered Paragraph 5 of the Loan Agreement, as amended, is hereby amended to read as follows:

"The principal amount of the Loan shall mature and be due and payable on August 31, 2015."

2.  The extension of the maturity date of the Loan to August 31, 2015 shall be evidenced by a Fifth Amendment to the HTA BAB Note (Allonge); a Fifth Amendment to the HTA Operating Note (Allonge); a Second Amendment to the PR Road 177 Note (Allonge); a Third Amendment to the MBA Note (Allonge); a Third Amendment to the MTA Note (Allonge); and a Second Amendment to the Redondo Note (Allonge).

3.  The Borrower covenants and agrees to pay to the Lender for this transaction a financial service fee of One Hundred Forty Two Thousand Fifty Eight Dollars and Twenty Six Cents ($142,058.26), which is equal to 1/25 of 1% of the Loan up to $100,000,000 and 1/30 of 1% of the Loan over $100,000,00.

4.  The parties agree that this Ninth Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, and its related Notes, all as amended, and that all provisions therein not inconsistent with this Ninth Amendment to Loan Agreement, shall remain unchanged, binding and in full force and effect.

30903

AAFAF_CONF_0003461

5.    The rights and obligations of the parties to this Ninth Amendment to Loan Agreement are not intended for the benefit of and shall not be construed to create rights in parties other than the Borrower and the Lender.

6.    In the event that any provision of this Ninth Amendment to Loan Agreement is held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

7.    This Ninth Amendment to Loan Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.

8.    Pursuant to Resolution 10367, adopted by the Board of Directors of the Bank on June 27, 2014, this Ninth Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

**[SIGNATURE PAGE FOLLOWS]**

AAFAF_CONF_0003462

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Ninth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

**GOVERNMENT DEVELOPMENT BANK**   **PUERTO RICO HIGHWAY AND**
**FOR PUERTO RICO**   **TRANSPORTATION AUTHORITY**

By: _____   By: _____
Jorge A. Clivillés Díaz                    Javier E. Ramos Hernández
Executive Vice President and           Executive Director
Fiscal Agent

Testimony No. 1,003

Recognized and subscribed before me by Javier E. Ramos Hernández, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on December 9, 2014.

ENTO DEL PAGO DE ARANCEL
EY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

Testimony No. 1,004

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married, executive and resident of San Juan, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on December 9, 2014.



_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

AAFAF_CONF_0003463