## LOAN AGREEMENT

This LOAN AGREEMENT is dated as of August 28, 2013, by and between the PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY (the "Authority" or the "Borrower") and the GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO (the "Bank" or the "Lender"),

### WITNESSETH

**WHEREAS**, the Authority has requested from the Bank a loan in an amount equal to Sixty One Million Eight Hundred Thirty Thousand Dollars ($61,830,000) (the "Loan") to cover operational costs incurred by the Authority;

**WHEREAS**, the Authority shall repay the Loan with the (a) the revenues allocated to it by Act No. 30 and Act No. 31, both approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013 ("Acts 30-2013 & 31-2013"); (b) proceeds from future bond issuances; (c) proceeds from public-private partnerships; and (d) revenues of the Authority;

**WHEREAS**, the Authority has agreed to pledge and grant a security interest in favor of the Bank over the revenues received pursuant to Acts 30-2013 & 31-2013 to secure all obligations under this Agreement;

**WHEREAS**, the Bank is willing to provide the Loan guaranteed by the aforementioned revenues subject to the terms and conditions set forth herein; and

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### Article 1: Line of Credit

1.1 Subject to the terms and conditions contained herein, and relying on the representations, covenants, and warranties of the Borrower contained herein, the Lender hereby agrees to provide to the Borrower a non revolving line of credit in an amount not to exceed **SIXTY ONE MILLION EIGHT HUNDRED THIRTY THOUSAND DOLLARS ($61,830,000)** (the "Line of Credit"), to be used as follows:

    (a) Sixty Million Dollars ($60,000,000) to cover operational costs incurred by the Authority; and

    (b) One Million Eight Hundred Thirty Thousand Dollars ($1,830,000) to cover (i) the Financial Services Fee due and payable to the Bank, as defined below; and (ii) capitalized

29912 v.2

interest on the Loan due and payable on the Maturity Date, as defined below.

1.2 The Line of Credit will be evidenced by a Promissory Note in the principal amount of SIXTY ONE MILLION EIGHT HUNDRED THIRTY THOUSAND DOLLARS ($61,830,000) (the "Note"), substantially in the form attached hereto as Exhibit I, subscribed on this date by the Borrower and payable to the order of the Lender.

1.3 The Borrower will use the funds exclusively for the aforementioned purposes, as approved by Resolution No. 10132 duly adopted by the Bank's Board of Directors on August 21, 2013, and Resolution 2013-42 duly adopted by the Board of Directors of the Borrower on August 27, 2013.

1.4 The Loan shall mature and become due and payable on **February 28, 2014** (the "Maturity Date"). The President of the Bank is hereby authorized to extend the Maturity Date of the Loan for an additional one hundred twenty (120) days, if necessary. The Borrower hereby agrees to repay the outstanding aggregate principal amount of the Loan at the principal office of the Lender in San Juan, Puerto Rico, as set forth below.

1.5 The Borrower shall request drawings (each a "Drawing" and collectively, the "Drawings") from the Line of Credit by written notice to the Bank, signed by an authorized officer of the Borrower, and delivered to the Bank at least three (3) Banking Days' prior to the proposed date of such Drawing. The Borrower shall use the Notice of Drawing Form attached hereto as Exhibit II to request each Drawing. The Bank shall fund the requested Drawing on the date specified in such Notice of Drawing (which must be a Banking Day). A Notice of Drawing from the Borrower, once received by the Bank, shall be irrevocable. For the purposes of this Loan Agreement, "Banking Day" means any day on which commercial banks are open for business in San Juan, Puerto Rico. The Bank reserves the right to request from the Authority any additional information prior to disbursements from the Line of Credit, including, but not limited to, copies of invoices.

(a) Disbursements from the Line of Credit are subject to compliance by the Authority with the Bank's Fiscal Agency Area regarding the terms and conditions of the Fiscal Oversight Agreement (FOA) in effect between the Bank and the Authority.

1.6 Each Drawing shall bear interest at a variable interest rate per annum, computed on a daily basis from the date such Drawing is funded until its repayment, equal to the Prime Rate plus one hundred and fifty (150) basis points, as determined from time to time in good faith by the Lender, or, upon written notice to the Borrower, at a variable interest rate per annum,

29912 v.2

- 2 -

which interest rate may be revised periodically, equal to the Lender's cost of funding for variable rate loan transactions or the cost of any other obligations or source of funds used to fund the Loan. For purposes of this Loan Agreement, such interest rate shall not exceed twelve (12) percent and shall not be less than six (6) percent. Interest shall be calculated on the basis of a three hundred and sixty (360) days year of twelve (12) actual day months. Interest for any period of less than one (1) calendar month shall be calculated on the basis of the actual number of days elapsed during that month. Interest shall be capitalized and payable on the Maturity Date

(a) The President of the Bank or the duly authorized Executive Vice President of the Bank may modify the interest rate at any time at their full discretion, depending on the interest rate market.

(b) If on the Maturity Date the Loan is not repaid in full, the Borrower hereby agrees to pay a default interest rate equal to two hundred (200) basis points over the otherwise applicable interest rate calculated on the outstanding principal amount (the "Default Rate").

1.7 If the Borrower does not pay the principal amount of the Loan when it becomes due and payable, or does not pay interest when due, the Lender may, at its sole option, without notice to Borrower and to the fullest extent allowed by law, set off and apply any other available moneys (including deposits of any kind) of the Borrower against any such unpaid principal amount or unpaid accrued interest.

## Article 2: Covenants

2.1 Simultaneously with the execution of this Agreement, the Borrower will execute and deliver to the Bank the (i) Promissory Note in the amount of $61,830,000; (ii) the Assignment and Security Agreement; and (ii) the UCC-1 Financing Statement (collectively, the "Loan Documents").

2.2 The principal amount of the Loan shall be payable from (a) the revenues funds assigned to the Borrower by Acts 30-2013 & 31-2013 (b) the proceeds from future bond issuances; (c) proceeds from public-private partnerships; and (d) as the future revenues of the Authority.

2.3 Prior to any Drawings, Borrower will provide the Bank a duly executed Notice of Drawing, as established in Section 4 of this Loan Agreement, substantially in the form attached as Exhibit II hereto.

AAFAF_CONF_0003976

2.4 The Borrower agrees to pay the Lender an amount equal to Thirty Thousand Dollars ($30,000) as financial services fee in connection with this Loan Agreement (the "Financial Services Fee").

2.5 The Authority hereby irrevocably pledges and grants a security interest in favor of the Bank over the revenues funds received pursuant to Acts 30-2013 & 31-2013 (the "Collateral") to secure the payment of all obligations due to the Bank under this Agreement. The Authority and the Bank shall enter into an Assignment and Security Agreement on the date hereof, which is a condition precedent o any Drawings under the Line of Credit. Upon full and complete payment of all amounts due hereunder, the Collateral shall be returned to the Authority free and clear of any and all claims by the Bank.

2.6 The Lender understands and agrees that the obligations of the Borrower hereunder with respect to the payment of principal and interest on the Loan from the revenues approved by Acts 30-2013 & 31-2013 is junior and subordinated in all respects to the payment of the outstanding bonds of the Borrower issued pursuant to (i) Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended, and (ii) Resolution No. 13-41, adopted by the Authority on August 28, 2013 (as modified, supplemented or amended from time to time and collectively, the "Bond Resolutions").

2.7 Notwithstanding the above, without the Bank's prior written consent, the Borrower will not incur, create, assume, permit or suffer to exist any additional lien over the funds received pursuant to Acts 30-2013 & 31-2013.

2.8 The Borrower shall from time to time, upon request by the Lender, promptly provide the Lender with such information as to its finances and operations as the Lender shall reasonably request.

2.9 As frequently as the Bank may require, the Borrower will execute or cause to be executed and delivered to the Bank such additional documents and will take such reasonable action as the Bank may request to perfect and keep in full force and effect the liens intended to be created by the Assignment and Security Agreement.

2.10 The Borrower has the power and authority to enter into and perform its obligations under this Agreement and the Loan Documents.

2.11 The execution, delivery, and performance of this Agreement and the other Loan Documents, and the performance of the transaction contemplated hereby and thereby (i) is within the authority of the Borrower; (ii) has been duly authorized; (iii) does not conflict or result in a

AAFAF_CONF_0003977

material breach of contravention of any provision of any law, statute, rule, or regulation to which the Borrower is subject or any judgment, order, writ, injunction, license or permit applicable thereto; and (iv) does not conflict with any agreement or other instrument binding upon the Borrower.

## Article 3: Default

3.1 If the Authority fails, neglects or refuses to timely or fully satisfy its payment obligations under this Loan Agreement, the Bank may take any and all action at law or in equity necessary or desirable to collect the amounts then due and thereafter to become due hereunder or to enforce the performance and observance of any duty, covenant, obligation or agreement of the Authority hereunder available to it under applicable law, including but not limited to taking possession of the Collateral, in order to satisfy any and all payment obligations of the Authority due to the Bank pursuant to this Loan Agreement; *provided, however,* that the Bank agrees not to take possession of such Collateral unless it shall have received a favorable opinion from the bond counsel regarding the federal tax status of the Collateral.

3.2 If the Borrower defaults in making any payment when due under this Loan Agreement, the Lender may declare the Loan to be immediately due and payable, provided, however, that all repayments shall be on a basis junior, inferior and subordinate in all respects to the bonds issued under the provisions of the Bond Resolutions. In case of recourse to the courts by the Bank in order to collect the whole or any portion of the principal or interest due, the Borrower agrees to pay liquidated damages in a sum equal to ten percent (10%) of the amount of the Loan to cover expenses of such proceedings, court costs, disbursements and attorney's fees, which amount will become immediately due and payable upon the filing of such judicial proceedings.

## Section 4: Miscellaneous Provisions

4.1 The Authority may prepay the Loan at any time without premium or penalty.

4.2 Payment of principal of and interest on the Loan shall be made in any coin or currency of the United States of America, which at the time of payment shall be legal tender for the payment of public and private debts.

4.3 The Borrower waives the requirements of demand, presentment, protest, notice of dishonor, and, in general, any other legal formality

29912 v.2

- 5 -

AAFAF_CONF_0003978

4.4 This Agreement and the other Loan Documents to which the Borrower is a party have been duly executed and delivered by the Borrower and constitute legal, valid and binding obligations of the Borrower, enforceable in accordance with their respective terms and provisions hereof and thereof, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium, or other laws relating to or affecting generally the enforcement of creditors' rights, or by general principles of equity.

4.5 No representation or warranty made by the Borrower to the Bank in this Agreement, or any of the Loan Documents, or any other document furnished to the Bank by the Borrower or on behalf of the Borrower, in connection with the transaction contemplated herein, contains any untrue statement of material fact or omits to state a material fact necessary in order to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

4.6 No amendment or waiver of any provisions of this Loan Agreement, or consent to any departure here from by the Borrower, shall be effective unless the same shall be in writing and signed by the Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

4.7 Any notices which may be given to either party hereunder shall be in writing, and if addressed to the Lender, sent to the offices of the Lender located at Roberto Sánchez Vilella Government Center, De Diego Avenue, San Juan, Puerto Rico 00940, Attn: Executive Vice President of Financing, or to such other address or person as the Lender may hereafter notify the Borrower in writing; and if addressed to the Borrower, sent to the offices of the Borrower, located at Roberto Sánchez Vilella Government Center, South Building, San Juan, Puerto Rico 00940, Attn: Executive Director, or to such other address or person as the Borrower may hereafter notify the Lender in writing. Any such notice, if delivered personally, by facsimile or electronic mail, shall be effective three Banking Days after posting.

4.8 This Loan Agreement is intended to be a declaration of official intent under U.S. Treasury Department Regulation Section 1.150-2.

4.9 This Loan Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns. The Lender may assign to any other financial institution all or any part of or any interest in the Lender's rights hereunder and in the Loan, and to the extent of such assignment such assignee shall have the same rights against the Borrower hereunder as does the Lender. The Borrower may not assign

AAFAF_CONF_0003979

any of its rights nor delegate any of its obligations hereunder without the Lender's prior written consent.

4.10 This Loan Agreement shall be governed by, and the rights and obligations of the parties hereunder shall be construed in accordance with the laws of the Commonwealth of Puerto Rico.

IN WITNESS WHEREOF, the Borrower and the Lender have caused this Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico all as of the day and year first written above.

| **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** | **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** |
|---|---|
| Jorge A. Clivillés Díaz<br>Executive Vice President<br>and Fiscal Agent | Javier E. Ramos Hernández<br>Executive Director of the Puerto Rico Highway and Transportation Authority |

Affidavit No. 866

Recognized and subscribed before me by Javier E. Ramos Hernández as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, who is personally known to me. In San Juan, Puerto Rico, on August 28, 2013.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. 869

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me. In San Juan, Puerto Rico, on August 28, 2013.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

29912 v.2

# FIRST AMENDMENT TO LOAN AGREEMENT

This **FIRST AMENDMENT TO LOAN AGREEMENT** (the "First Amendment"), dated as of January 31, 2014, is entered into by and between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"). All terms not otherwise defined hereof shall have the meanings ascribed to them in the Loan Agreement.

## WITNESSETH

**WHEREAS**, on August 28, 2013, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") for the total principal amount of SIXTY ONE MILLION EIGHT HUNDRED THIRTY THOUSAND DOLLARS ($61,830,000) to cover operational costs incurred by the Authority;

**WHEREAS**, the Loan was evidenced by a Promissory Note due and payable to the Bank on February 28, 2014, issued on the same date as the Loan Agreement and for the amount of SIXTY ONE MILLION EIGHT HUNDRED THIRTY THOUSAND DOLLARS ($61,830,000);

**WHEREAS**, by October 31, 2013, the Loan had an outstanding principal balance of $ 49,628,623.37, and accrued interests for the amount of $ 475,569.98;

**WHEREAS**, the Authority has requested, and the management of the Bank has recommended, to amend de Loan Agreement with the purpose of extending the Maturity Date.

**WHEREAS**, on November 20, 2013, the Board of Directors of the Bank adopted Resolution 10197, authorizing to extend the Maturity Date of the Loan up to January 31, 2015, subject to certain terms and conditions;

**WHEREAS**, pursuant to Resolution Number 2014-04, adopted by the Secretary of Transportation and Public Works on January 30, 2014, the Authority accepted the terms and conditions established by the Bank as set forth in above referenced Resolution 10197.

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Section 1.4, Article 1, of the Loan Agreement is amended to read as follows:



30208

"The Loan shall mature and become due and payable on **January 31, 2015** (the "Maturity Date"). The Borrower hereby agrees to repay the outstanding aggregate principal amount of the Loan at the principal office of the Lender in San Juan, Puerto Rico, as set forth below."

2. Pursuant to this First Amendment to Loan Agreement, a First Amendment to Promissory Note (*Allonge*) shall be executed by the Authority on this date.

3. The Borrower agrees to pay the Lender a financial advisory fee for this transaction in the amount of **Twenty Four Thousand Seven Hundred Thirty Two Dollars ($24,732).**

4. This First Amendment does not constitute a novation of the obligations set forth in the Loan Agreement and the Loan Documents, and all provisions of the Loan Agreement, as amended herein, and the Loan Documents not inconsistent with this First Amendment, shall remain in full force and effect, including but not limited to, the terms and obligations of the Borrower as set forth in the Assignment and Security Agreement.

5. In the event that any provision of this First Amendment is declared to be void of unenforceable, the remainder of this First Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

6. The President, the Executive Vice President of Financing or any Executive Vice President of the Bank, are authorized to negotiate any other term or condition necessary in order to safeguard the best interests of the Bank.

7. Pursuant to Resolution 10197, adopted by the Board of Directors of the Bank on November 20, 2013, this Second Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

[SIGNATURES ON THE NEXT PAGE]

29273

3

IN WITNESS WHEREOF, the Borrower and the Lender have caused this First Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

| **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** | **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** |
|---|---|
| Jorge A. Clivillés Díaz<br>Executive Vice President<br>and Fiscal Agent | Javier E. Ramos Hernández<br>Executive Director of the Puerto Rico<br>Highways and Transportation Authority |

Affidavit No. 913

Recognized and subscribed before me by Javier E. Ramos Hernández as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on January 31, 2014.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LY 47 DE 4 DE JUNIO DE 1982

Affidavit No. 915

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on January 31, 2014.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LY 47 DE 4 DE JUNIO DE 1982

AAFAF_CONF_0003957