# CONTRATO DE PRÉSTAMO

**DE LA PRIMERA PARTE:** El **BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO**, una corporación pública del Gobierno de Puerto Rico, creada en virtud de la Ley Número 17 de 23 de septiembre de 1948, según enmendada, representado en este acto por su Vicepresidente Ejecutivo y Agente Fiscal, Jorge A. Clivillés Díaz, mayor de edad, casado, ejecutivo y residente de San Juan, Puerto Rico (en adelante, el "BANCO").

**DE LA SEGUNDA PARTE:** La **AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO**, una entidad jurídica creada en virtud de la Ley Núm. 74 de 23 de junio de 1965, según enmendada, (la "AUTORIDAD") representada en este acto por César M. Gandiaga Texidor, Director Ejecutivo Auxiliar para Administración y Finanzas, quien es mayor de edad, casado, contable y vecino de San Juan, Puerto Rico, y quien está debidamente autorizado a comparecer en este acto por virtud de la Resolución 2014-01 suscrita el 16 de enero de 2013 por Miguel A. Torres Díaz, Secretario del Departamento de Transportación y Obras Públicas.

**DE LA TERCERA PARTE:** El **DEPARTAMENTO DE HACIENDA**, un departamento ejecutivo creado por la Sección 6 del Artículo IV de la Constitución del Estado Libre Asociado de Puerto Rico, en adelante denominada "HACIENDA", representada por su Secretaria, Melba Acosta Febo, mayor de edad, soltera, y vecina de San Juan, Puerto Rico, quien comparece a los únicos fines de indicar su conocimiento y cumplimiento con que los fondos para el pago de la LÍNEA DE

1

AAFAF_CONF_0004008

CRÉDITO aquí concedida por el BANCO a la AUTORIDAD se transfieran directamente al BANCO.

EXPONEN

**POR CUANTO**: La AUTORIDAD ha informado al BANCO que, al 31 de diciembre de 2013, adeuda la cantidad de $24,096,000 a la compañía Alternative Concepts, Inc., operador del Tren Urbano. La AUTORIDAD interesa obtener un financiamiento para sufragar los gastos operacionales acrecidos por concepto de la operación del Tren Urbano y rebajar dicha cantidad adeudada de manera tal que los servicios no sean interrumpidos.

**POR CUANTO**: En atención a la solicitud de la AUTORIDAD, el 15 de enero de 2014, la Junta de Directores del BANCO aprobó la Resolución Núm. 10235 (en adelante, la "Resolución 10235") para conceder a la AUTORIDAD una línea de crédito no rotativa hasta un máximo de **QUINCE MILLONES DE DÓLARES ($15,000,000)**.

**POR CUANTO**: De conformidad con la Resolución Núm. 2014-01 emitida el 16 de enero de 2014 por la Junta de Directores de la AUTORIDAD, la AUTORIDAD ha aceptado los términos y condiciones establecidos por el BANCO en la Resolución 10235.

**POR LO QUE**, en consideración a los hechos afirmados anteriormente y a las representaciones, acuerdos y garantías que más adelante se exponen, las partes comparecientes acuerdan y convienen otorgar este CONTRATO DE PRÉSTAMO.

2

AAFAF_CONF_0004009

# ARTÍCULO 1.

## PRÉSTAMO

1.1   **Línea de Crédito:**

Una vez se otorguen y suscriban los DOCUMENTOS LEGALES que se relacionan en el Artículo 4.1 de este CONTRATO DE PRÉSTAMO, el BANCO extenderá a la AUTORIDAD una LÍNEA DE CRÉDITO no rotatoria por la cantidad máxima de principal **QUINCE MILLONES DE DÓLARES ($15,000,000)** para sufragar gastos operacionales por concepto de la operación del Tren Urbano.

La LÍNEA DE CRÉDITO estará evidenciada por un PAGARÉ por la suma principal de **QUINCE MILLONES DE DÓLARES ($15,000,000),** suscrito en la misma fecha que este CONTRATO DE PRÉSTAMO y pagaderos a la orden del BANCO.

El dinero proveniente de la LÍNEA DE CRÉDITO sólo podrá ser utilizado para los propósitos antes expuestos.

1.2   **Tasa de Interés:**

La AUTORIDAD acuerda y conviene pagar los intereses devengados sobre los desembolsos de la LÍNEA DE CRÉDITO computados sobre la tasa *Prime Rate* más 150 puntos base, la cual nunca será menor de seis por ciento (6%), ni mayor de doce por ciento (12%), o cualquier otra tasa de interés que determine el Presidente del BANCO o su designado, de acuerdo con el mercado de tasas de interés. Los intereses serán pagaderos al vencimiento de la LÍNEA DE CRÉDITO.

Si en la fecha de vencimiento de la obligación de repago la AUTORIDAD no ha pagado el balance insoluto del principal, la AUTORIDAD pagará intereses sobre dicha

3

AAFAF_CONF_0004010

suma computados a base de 200 puntos base sobre la tasa que le aplicaría bajo este CONTRATO DE PRÉSTAMO.

1.3    **Término y Fuente de Pago:**

El pago de principal e intereses de la LÍNEA DE CRÉDITO vencerá al 30 de junio 2015.  El Presidente del BANCO podrá, a su entera discreción, extender el vencimiento de la LÍNEA DE CRÉDITO por 120 días adicionales.

La fuente de pago serán (a) a partir del 1 de julio de 2014, los primeros $15,000,000 provenientes de los ingresos generados por concepto de las multas de tránsito recaudados por el Departamento de Hacienda, más la porción correspondiente para el pago de los intereses acumulados, y (b) ingresos propios de la AUTORIDAD.

La AUTORIDAD podrá pagar la totalidad del préstamo en cualquier momento antes de su vencimiento sin penalidad o prima.

1.4    **Desembolsos:**

Previo al primer desembolso y para cada desembolso, la AUTORIDAD entregará al BANCO una certificación original sustancialmente en la forma que se presenta en el **Anejo A** de este Contrato, firmada por el Director Ejecutivo de la AUTORIDAD, o la persona que éste designe, la cual evidenciará que la petición de desembolso cumple con los propósitos para los cuales fue aprobada la LÍNEA DE CRÉDITO.  La AUTORIDAD deberá incluir, además, cualquier otra documentación que el BANCO a su entera discreción le solicite previo al desembolso, incluyendo, pero sin limitarse, a copias de facturas.

4

AAFAF_CONF_0004011

Los desembolsos bajo este financiamiento están sujetos al cumplimiento de la AUTORIDAD con el Área de Agencia Fiscal del BANCO para las condiciones estipuladas en el *Fiscal Oversight Agreement* (FOA) que la AUTORIDAD tenga vigente con el BANCO.

## 1.5 **Cesión**:

Para honrar el pago del principal e intereses de la LÍNEA DE CRÉDITO, se dispone que el BANCO será cesionario de los derechos sobre los ingresos generados por concepto de las multas de tránsito recaudados por el Departamento de Hacienda hasta la suma de principal de $15,000,000, más la suma correspondiente a los intereses acumulados. A esos efectos, HACIENDA acuerda y conviene transferir las sumas antes indicadas directamente al BANCO para el repago del financiamiento.

## ARTÍCULO 2.

## ACUERDOS AFIRMATIVOS

La AUTORIDAD conviene y acuerda realizar los actos que se exponen a continuación a partir de esta fecha y hasta el pago total y liquidación final del principal y los intereses de la LÍNEA DE CRÉDITO y cualquier otra obligación con relación a la misma, salvo que el BANCO consienta a lo contrario por escrito.

## 2.1 **Solicitud de Información Adicional para Efectuar Desembolsos**:

El BANCO se reserva el derecho de solicitar a la AUTORIDAD cualquier información adicional que sea necesaria para emitir los desembolsos o para cualquier propósito relacionado con este CONTRATO DE PRÉSTAMO o PAGARÉ.

5

AAFAF_CONF_0004012

## 2.2 **Honorarios por Asesoría Financiera:**

La AUTORIDAD conviene y acuerda pagarle al BANCO la suma de Siete Mil Quinientos Dólares ($7,500), equivalentes a una veinteava parte (1/20) del uno por ciento (1%), por concepto de honorarios correspondientes a esta transacción, según la política vigente del BANCO, los cuales podrán ser incluidos como parte de este financiamiento, de ser necesario.

## 2.3 **Causa de Incumplimiento:**

La AUTORIDAD notificará al BANCO de cualquier condición, hecho o suceso que pueda constituir causa de incumplimiento o en virtud de cuya notificación o el mero transcurso del tiempo, o ambos, pueda constituir causa de incumplimiento, entregándole al BANCO una certificación suscrita por uno de sus oficiales, especificando la naturaleza de dicha causa, tiempo durante el cual ha existido, y qué curso de acción la AUTORIDAD se propone iniciar con relación a los mismos. Tal notificación deberá ser cursada al BANCO dentro de los diez (10) días siguientes a la ocurrencia del incumplimiento.

## 2.4 **Pago de Gestiones Extrajudiciales de Cobro, Honorarios, Gastos, etc.:**

A requerimiento del BANCO, la AUTORIDAD deberá reembolsar prontamente al BANCO el pago de las costas, gastos y honorarios de abogados incurridos por el BANCO en gestiones extrajudiciales de cobro de cualquier plazo en mora en relación con la LÍNEA DE CRÉDITO adeudada por la AUTORIDAD. La omisión de la AUTORIDAD de reembolsar dichas costas, gastos y honorarios de abogados constituirá causa de incumplimiento en la LÍNEA DE CRÉDITO.

6

AAFAF_CONF_0004013

Dichas costas, gastos y honorarios de abogados incurridos por el BANCO de conformidad con las disposiciones de este CONTRATO DE PRÉSTAMO serán reembolsados por la AUTORIDAD de inmediato al serle requeridos.

2.5   **Incumplimiento bajo los Documentos Legales:**

La AUTORIDAD conviene que cualquier incumplimiento de los términos del PAGARÉ y/o la carta de compromiso, será considerado simultáneamente incumplimiento con este CONTRATO DE PRÉSTAMO y viceversa, y de ocurrir el mismo, el BANCO tendrá inmediatamente el derecho de ejecutar cualesquiera de los derechos y privilegios que puedan conferir cualquiera de los DOCUMENTOS LEGALES.

2.6   **Autorización para Tomar Prestado:**

La AUTORIDAD ha tomado las medidas apropiadas y necesarias, oficiales o de otro tipo, para autorizar el otorgamiento y entrega de los DOCUMENTOS LEGALES sin limitación alguna.

## ARTÍCULO 3.

## INCUMPLIMIENTOS

3.1   **Causas de Incumplimiento:**

Cada una de las siguientes constituirá una causa de incumplimiento bajo los términos de este CONTRATO DE PRÉSTAMO:

3.1.1   si cualquier representación dada o extendida por la AUTORIDAD al BANCO en cualquiera de los trámites y DOCUMENTOS LEGALES, o si cualquier informe, garantía o certificado financiero o de otra índole provisto al BANCO en relación con este CONTRATO DE PRÉSTAMO resultare falso o engañoso;

7

AAFAF_CONF_0004014

3.1.2      la falta de pago de principal e intereses y sus penalidades, si alguna, de la LÍNEA DE CRÉDITO a su fecha de vencimiento de acuerdo con los términos de cualquiera de los DOCUMENTOS LEGALES;

3.1.3      el incumplimiento o violación por la AUTORIDAD de cualquiera de los términos, cláusulas y condiciones pactadas con el BANCO en los DOCUMENTOS LEGALES; o

3.1.4      la omisión por la AUTORIDAD de remediar o subsanar dentro de un plazo de treinta (30) días de su ocurrencia, sin notificación previa escrita por parte del BANCO, cualquier incumplimiento a los términos, cláusulas y condiciones de este CONTRATO DE PRÉSTAMO.   Esto no aplica a los términos y condiciones relacionadas con las obligaciones de pago de la LÍNEA DE CRÉDITO, ya que la AUTORIDAD deberá cumplir estrictamente con dicho pago a su vencimiento.

3.2   **Remedios:**

Ante la ocurrencia de cualquiera de las causas de incumplimiento enumeradas en el Artículo 3.1 de este CONTRATO DE PRÉSTAMO, y si dicho incumplimiento no es subsanado o remediado según dispuesto, sin que sea necesario que medie notificación alguna del incumplimiento, a cuyos derechos la AUTORIDAD mediante el presente otorgamiento renuncia, el BANCO podrá:

3.2.1   proceder a reclamar el pago del balance insoluto de la LÍNEA DE CRÉDITO; o

8

3.2.2 radicar un procedimiento judicial solicitando el cumplimiento específico de cualquier término, cláusula o condición de cualquiera de los DOCUMENTOS LEGALES, o un entredicho ("injunction") provisional o permanente para impedir que la AUTORIDAD viole cualquiera de dichos términos, cláusulas y condiciones; o

3.2.3 ejercitar cualquier otro remedio a que tenga derecho bajo las leyes del Estado Libre Asociado de Puerto Rico.

La AUTORIDAD autoriza al BANCO y le confiere poder, sin que se requiera notificación alguna, para aplicar el derecho a compensación ("*set-off*") a las obligaciones que se originan en este CONTRATO DE PRÉSTAMO, realizando cualquier aplicación de pagos de cualquier suma de dinero perteneciente a la AUTORIDAD en poder del BANCO para el pago de la LÍNEA DE CRÉDITO e intereses acumulados, en caso de incumplimiento por la AUTORIDAD de sus obligaciones de pago bajo el CONTRATO DE PRÉSTAMO.

## ARTÍCULO 4.

### DISPOSICIONES MISCELÁNEAS

4.1 **Documentos Legales:**

Según utilizado en este CONTRATO DE PRÉSTAMO, el término DOCUMENTOS LEGALES significa:

1. PAGARÉ

2. CONTRATO DE PRÉSTAMO

9

4.2     **Renuncias, Alivios, Prórrogas, Tolerancias y Remedios Adicionales:**

Ninguna dilación o demora por parte del BANCO o de cualquier tenedor o dueño del PAGARÉ en el ejercicio de cualquier derecho, facultad o remedio que pueda tener conforme a los términos de cualquiera de los DOCUMENTOS LEGALES se considerará como una renuncia, limitación o disminución de los mismos, como tampoco el ejercicio parcial o exclusivo de cualquiera de los mismos será óbice para que subsiguientemente sean ejercitados en su totalidad, incluyendo, pero sin limitarse a ello, el derecho de compensación.  Los remedios a favor del BANCO dispuestos en los DOCUMENTOS LEGALES se considerarán adicionales a, y no excluyentes de, cualquier otro remedio contemplado en ley.  Para que todo alivio, prórroga o tolerancia extendida por el BANCO a la AUTORIDAD, o cualquier enmienda a este CONTRATO DE PRÉSTAMO, sea efectiva, deberá constar por escrito, suscrito por un oficial autorizado del BANCO, que especificará el alcance del alivio, prórroga, tolerancia o enmienda concedida.  Todo alivio, prórroga, tolerancia o enmienda concedida será válida únicamente para la ocurrencia o eventualidad para la cual se concedió.

4.3     **Direcciones para Notificaciones, etc.:**

Toda notificación, reclamo, directriz o cualquier comunicación dispuesta por los DOCUMENTOS LEGALES  constará por escrito y deberá ser entregada personalmente o enviada por fax o por correo, a las siguientes direcciones:

A LA "AUTORIDAD":

Autoridad de Carreteras y Transportación
Departamento de Transportación y Obras Públicas

10

P.O. Box 42007
San Juan, Puerto Rico 00940-2007
(787) 721-8787

Atención: Director Ejecutivo

AL "BANCO":

Banco Gubernamental de Fomento para Puerto Rico
P.O. Box 42001
San Juan, Puerto Rico 00940-2001
Fax: (787) 721-1443

Atención: Presidente

o a cualquier otra dirección que las partes señalen mediante notificación escrita cursada conforme a lo dispuesto en este Artículo. Éstas se considerarán perfeccionadas una vez las mismas se depositen debidamente franqueadas en el correo y sean cursadas a las direcciones mencionadas.

4.4 **Sucesores y Causahabientes:**

Los pactos y cláusulas aquí contenidas obligarán y beneficiarán a las partes y a sus respectivos causahabientes, albaceas, administradores, sucesores y cesionarios.

4.5 **Renuncias por la AUTORIDAD a Presentación, Protesto, etc.:**

La AUTORIDAD renuncia a toda notificación de aceptación o demanda o requerimiento a la realización de cualquier condición precedente por parte del BANCO, y así mismo renuncia a los derechos de presentación, protesto, notificación de protesto, requerimiento de pago, notificación de incumplimiento o falta de pago, relevo, compromiso, compensación, transacción, prórroga, renovación o extensión de cualquier derecho contractual o instrumento legal y, en general, a toda otra formalidad legal.

11

AAFAF_CONF_0004018

4.6    **Declaración de Intención:**

Este CONTRATO DE PRÉSTAMO se otorga como una declaración oficial de intención bajo la regulación del Departamento del Tesoro de los Estados Unidos, Sección 1.150-2.

**EN TESTIMONIO DE LO CUAL,** las partes comparecientes otorgan este CONTRATO DE PRÉSTAMO en San Juan, Puerto Rico, a *16* de enero de 2014.

**BANCO GUBERNAMENTAL DE**          **AUTORIDAD DE CARRETERAS Y**
**FOMENTO PARA PUERTO RICO**         **TRANSPORTACIÓN DE PUERTO RICO**


_____              _____
Jorge A. Clivillés Díaz              César M. Gandiaga Texidor
Vicepresidente Ejecutivo             Director Ejecutivo Auxiliar para
y Agente Fiscal                      Administración y  Finanzas


**DEPARTAMENTO DE HACIENDA**


_____
Melba Acosta Febo
Secretaria

Testimonio *896-896 (vtth)*

Reconocido y suscrito ante mí por César M. Gandiaga Texidor, Director Ejecutivo Auxiliar para Administración y  Finanzas de la Autoridad de Carreteras y Transportación, quien es mayor de edad, casado, contable y vecino de San Juan, Puerto Rico, a quien conozco personalmente. En San Juan, Puerto Rico, a *16* de enero de 2014.

_____
Notaria Público

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Testimonio $898$

Reconocido y suscrito ante mí por Jorge A. Clivillés Díaz, mayor de edad, casado y vecino de San Juan, Puerto Rico, en su carácter de Vicepresidente Ejecutivo y Agente Fiscal del Banco Gubernamental de Fomento para Puerto Rico, a quien conozco personalmente. En San Juan, Puerto Rico, a $16$ de enero de 2014.

Notaria Público

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Testimonio $899$

Reconocido y suscrito ante mí por Melba Acosta Febo, mayor de edad, soltera, y vecina de San Juan, Puerto Rico, en su carácter como Secretaria del Departamento de Hacienda, a quien conozco personalmente.  En San Juan, Puerto Rico, a $16$ de enero de 2014.

Notaria Público

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

13

AAFAF_CONF_0004020

Certified Translation

# LOAN AGREEMENT

**THE FIRST PARTY**: **THE BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO,** public corporation of the Government of Puerto Rico, established pursuant to Law Number 17 of September 23, 1948, as amended, represented in this act by its Executive Vice President and Fiscal Agent, Jorge A. Clivillés Díaz, adult, married, with capacity and resident of San Juan, Puerto Rico (hereinafter, the "BANK").

**THE SECOND PARTY**: The **HIGHWAYS AND TRANSPORTATION AUTHORITY OF PUERTO RICO,** a legal entity, established pursuant to Law No. 74 of June 23, 1965, as amended, (the "AUTHORITY") represented in this act by César M. Gandiaga Texidor, Assistant Executive Director for Administration and Finances, who is an adult, married, an accountant and a resident of San Juan, Puerto Rico, and who is duly authorized to appear in this act pursuant to Resolution 2014-01 signed on January 16, 2013 by Miguel A. Torres Díaz, Secretary of the Department of Transportation and Public Works.

**THE THIRD PARTY:** The **DEPARTMENT OF THE TREASURY,** an executive department established by Section 6 of Article IV of the Constitution of the Commonwealth of Puerto Rico, hereinafter referred to as "TREASURY", represented by its Secretary, Melba Acosta Febo, adult, single, and a resident of San Juan, Puerto Rico, who appears for the sole purposes of indicating her knowledge of, and compliance with, that the funds for the payment of the CREDIT LINE

[initials]

1

herein granted by the BANK to the AUTHORITY shall be transferred directly to the BANK.

PREAMBLE

**WHEREAS:** The AUTHORITY has informed the BANK that, as of December 31, 2013, it owes the amount of $24,096,000 to the company Alternative Concepts, Inc., operator of the Tren Urbano [Urban Train]. The AUTHORITY is interested in obtaining financing in order to bear the operational expenses incurred for the operation of the Urban Train and to reduce that amount owed so that the services will not be interrupted.

**WHEREAS:** With attention to the request by the AUTHORITY, on January 15, 2014, the Board of Directors of the BANK approved Resolution No. 10235 (hereinafter, "Resolution 10235") in order to grant to the AUTHORITY non-revolving credit line up to a maximum of **FIFTEEN MILLION DOLLARS ($15,000,000).**

**WHEREAS:** In accordance with Resolution No. 2014-01 issued on January 16, 2014 by the Board of Directors of the AUTHORITY, the AUTHORITY accepted the terms and conditions established by the BANK in Resolution 10235.

**THEREFORE,** in consideration of the facts confirmed above and the representations, agreements and guarantees that are set forth below, the parties that appear approve and agree to grant this LOAN AGREEMENT.

[initials]

2

# ARTICLE 1.

## LOAN

**1.1**  **Credit Line**:

      After the LEGAL DOCUMENTS referred to in Article 4.1 of this LOAN AGREEMENT are issued and signed, the BANK shall extend to the AUTHORITY a non-rotating CREDIT LINE for the maximum amount of principal of **FIFTEEN MILLION DOLLARS ($15,000,000)** to bear operational expenses for the operation of the Urban Train.

      The CREDIT LINE shall be evidenced by a PROMISSORY NOTE for the principal sum of **FIFTEEN MILLION DOLLARS ($15,000,000)**, signed on the same date that this LOAN AGREEMENT is signed and payable to the order of the BANK.

      The money from the CREDIT LINE shall only be used for the purposes set forth above.

**1.2**  **Interest Rate:**

      The AUTHORITY approves and agrees to pay interest on the unpaid balance of principal of the CREDIT LINE calculated on the *Prime Rate* plus 150 basis points, which shall never be less than six percent (6%), or higher than twelve percent (12%), or any other interest rate that the President of the BANK or his designee determines, according to the market interest rate. The interest shall be payable upon expiration of the CREDIT LINE.

      If on the expiration date of the repayment obligation the AUTHORITY has not paid the unpaid balance of the principal, the AUTHORITY shall pay interest on such

[initials]

3

sum computed on the basis of 200 basis points over the rate that would apply under this LOAN
AGREEMENT.

**1.3**   <u>**Term and Source of Payment**</u>:

The payment of principal and interest of CREDIT LINE shall expire on June 30, 2015. The BANK
President may, at his full discretion, extend the expiration of the CREDIT LINE for 120 additional days.

The source of payment shall be (a) from July 1, 2014, the first $15,000,000 coming from the income
generated by transit fines collected by the Department of the Treasury, plus the corresponding portion for the
payment of accumulated interest, and (b) the income of the AUTHORITY.

The AUTHORITY may pay the full amount of the loan at any time before it expires with no penalty or
premium.

**1.4**   <u>**Disbursements**</u>

Prior to the first disbursement and for each disbursement, the AUTHORITY shall deliver to the BANK
an original certificate which is the same as **Annex A** of this Agreement, signed by the Executive Director of
the AUTHORITY, or his designee, which shall be evidence that the disbursement request meet the purposes
for with the CREDIT LINE was approved. The AUTHORITY shall include, in addition, any other
documentation that the BANK in its full discretion requests from it prior to the disbursement, including, but not
limited to, copies of invoices.

[initials]

4

The disbursements under this financing are subject to compliance by the AUTHORITY with the Fiscal Agency Area of the BANK for the conditions stipulated in the Fiscal Oversight Agreement (FOA) that the AUTHORITY may have in effect with the BANK.

1.5     **Assignment:**

In order to honor the payment of the principal and interest of the CREDIT LINE, it is provided that the BANK shall be the assignee of the rights to the income generated from traffic fines collected by the Department of the Treasury up to the principal sum of $15,000,000, plus the sum corresponding to the accrued interest. For these purposes, TREASURY approves and agrees to transfer the sums indicated above directly to the BANK for the repayment of the financing.

**ARTICLE 2.**

**AFFIRMATIVE AGREEMENTS**

The AUTHORITY approves and agrees to perform the acts set forth below beginning from this date and until the full payment and final settlement of the principal and interest of the CREDIT LINE and any other obligation with respect to it, unless the BANK otherwise agrees in writing.

2.1     **Request for Additional Information to Make Disbursements:**

The BANK reserves the right to request from the AUTHORITY any additional information that may be necessary to issue disbursements or for any purpose in relation to this CREDIT LINE or PROMISSORY NOTE.

[initials]

5

## 2.2 **Professional Fees for Financial Consulting Services:**

The AUTHORITY approves and agrees to pay to the BANK the sum of Seven Thousand Five Hundred Dollars ($7,500), equivalent to one twentieth (1/20th) of one percent (1%), for professional fees corresponding to this transaction, according to the policy of the BANK in effect, which may be included as part of this financing, if necessary.

## 2.3 **Ground of Breach:**

The AUTHORITY shall notify the BANK of any condition, fact or occurrence that may constitute a ground of breach or pursuant to the notification of which or the mere passage of time, or both, may constitute a ground of breach, by delivering to the BANK a certification signed by one of its officials, specifying the nature of such ground, the time during which it has existed, and what course of action the AUTHORITY proposes to initiate with respect to them. Such notification shall be sent to the BANK within ten (10) days after the occurrence of the breach.

## 2.4 **Payment for Extrajudicial Actions for Collection, Fees, Expenses, etc.:**

At the request of the BANK, the AUTHORITY shall promptly reimburse the BANK for the payment of costs, expenses and attorney's fees incurred by the BANK in extrajudicial collection actions of any late instalment in relation to the CREDIT LINE owed by the AUTHORITY. The failure by the AUTHORITY to reimburse such costs, expenses and attorney's fees shall constitute a ground of breach on the CREDIT LINE.

[initials]

Such costs, expenses and attorney's fees incurred by the BANK in accordance with the provisions of this LOAN AGREEMENT shall be reimbursed by the AUTHORITY immediately upon request.

2.5    **Breach under the Legal Documents:**

The AUTHORITY agrees that any breach of the terms of the PROMISSORY NOTE and/or the obligation letter, shall be deemed to be at the same time a breach of this LOAN AGREEMENT and vice versa, and if such breach occurs, the BANK shall immediately have the right to enforce any of the rights and privileges that may be conferred by any of the LEGAL DOCUMENTS.

2.6    **Authorization to Take Collateral:**

The AUTHORITY has taken the appropriate and necessary measures, official or of another type, to authorize the issuance and delivery of the LEGAL DOCUMENTS without any limitation.


## ARTICLE 3.

## BREACHES

3.1    **Grounds of Breach:**

Each of the following shall constitute a ground of breach under the terms of this LOAN AGREEMENT:

3.1.1   if any representation given or extended by the AUTHORITY to the BANK in any of the procedures and LEGAL DOCUMENTS or if any report, guarantee or financial certificate or any other type of document provided to the BANK in relation to this LOAN AGREEMENT is found to be false or misleading;

[initials]

7

3.1.2   failure to pay principal and interest and their penalties, if any, of the CREDIT LINE on their due date in accordance with the terms of any of the LEGAL DOCUMENTS;

3.1.3   breach or violation by the AUTHORITY of any of the terms, clauses and conditions agreed to with the BANK in the LEGAL DOCUMENTS; or

3.1.4   the failure by the AUTHORITY to remedy or cure within a time period of thirty (30) days from its occurrence, without prior written notice by the BANK, any breach of the terms, clauses and conditions of this LOAN AGREEMENT. This does not apply to the terms and conditions related to the obligations to pay the LOAN AGREEMENT, since the AUTHORITY shall strictly comply with such payment when it is due.

3.2   **Remedies:**

When any of the grounds of breach listed in Article 3.1 of this LOAN AGREEMENT occurs, and if such breach is not cured or remedied as provided, without any need to send any notice of breach, the rights to which the AUTHORITY hereby waives the granting, the BANK may:

3.2.1   proceed to claim the payment of the unpaid balance of the CREDIT LINE; or

[initials]

3.2.2   file a court proceeding requesting the specific performance of any term, clause or condition of any of the LEGAL DOCUMENTS, or a temporary or permanent injunction to prevent the AUTHORITY from violating any such terms, clauses or conditions; or

3.2.3   to enforce any other remedy to which it has a right under the laws of the Commonwealth of Puerto Rico.

The AUTHORITY authorizes the BANK and grants it authorization, without any requirement of notice, to apply the right to set-off against the obligations that arise in this LOAN AGREEMENT, making any application of payments of any sum of money owned by the AUTHORITY in the possession of the AUTHORITY for the payment of the CREDIT LINE and accumulated interest, in the event of any breach by the AUTHORITY of its payment obligations under the LOAN AGREEMENT.

**ARTICLE 4.**

**MISCELLANEOUS PROVISIONS**

4.1   **Legal Documents**:

As used in this LOAN AGREEMENT, the term LEGAL DOCUMENTS means:

1. PROMISSORY NOTE

2. LOAN AGREEMENT

[initials]

9

4.2     **Waivers, Relief, Extensions, Forbearance and Additional Remedies:**

No delay or late performance by the BANK or by any holder or owner of the PROMISSORY NOTE in the enforcement of any right, authority or remedy that it may have in accordance with the terms of any of the LEGAL DOCUMENTS shall be deemed to be a waiver, limitation or reduction of such rights, authorities or remedies, and the partial or exclusive enforcement of any of them shall not be an impediment for them to subsequently be fully enforced, including, but not limited to, the right to offset. Remedies in favor of the BANK provided in the LEGAL DOCUMENTS shall be deemed to be in addition to, any not to exclude, any other remedy set forth in law. For any relief, extension or forbearance extended by the BANK to the AUTHORITY, or any amendment to this LOAN AGREEMENT to be enforceable, it shall appear in writing signed by an authorized official of the BANK, which shall specifically state the scope of the relief, extension, forbearance or amendment granted. Any relief, extension, forbearance or amendment granted shall be valid only for the occurrence or potential occurrence for which it was granted.

4.3     **Addresses for Notices, etc.:**

Any notice, claim, directive or other communication provided by the LEGAL DOCUMENTS shall be recorded in writing and shall be delivered in person or sent by fax or mail to the following addresses:

TO THE "AUTHORITY":

Highways and Transportation Authority
Department of Transportation and Public Works

[initials]

10

P.O. Box 42007
San Juan, Puerto Rico 00940-2007
(787) 721-8787

Attention: Executive Director

TO THE "BANK":

Banco Gubernamental de Fomento para Puerto Rico
P.O. Box 42001
San Juan, Puerto Rico 00940-2001
Fax: (787) 721-1443

Attention: President

or to any other address that the parties indicate by written notice sent in accordance with the provisions in this Article. These shall be deemed to be perfected after they have been duly deposited postmarked in the mail and sent to the addresses stated.

4.4 **Successors and Beneficiaries:**

The agreements and clauses contained herein shall obligate and benefit the parties and their respective beneficiaries, executors, administrators, successors and assignees.

4.5 **Waivers by the AUTHORITY of Presentation, Protest, etc.:**

The AUTHORITY waives any notice of acceptance or demand or requirement to meet any condition precedent by the BANK, as well as waiver of rights of presentation, protest, notice of protest, payment request, notice of breach or failure to pay, release, compromise, set-off, settlement, extension, renewal or extension of any contractual right or legal instrument and, in general, any other legal formality.

[initials]

11

4.6  **Statement of Intent**

This LOAN AGREEMENT is granted as an official statement of intent under the regulation of the

Department of the Treasury of the United States, Section 1.150-2.


[SIGNATURE PAGE BELOW]


**IN WITNESS WHEREOF**, the parties who appear grant this LOAN AGREEMENT, in San Juan,

Puerto Rico, on January [hw:] *16*, 2014.

<table>
<tr><td>

**BANCO GUBERNAMENTAL DE
FOMENTO PARA PUERTO RICO**

</td><td>

**HIGHWAYS AND TRANSPORTATION
AUTHORITY OF PUERTO RICO**

</td></tr>
<tr><td>

_____[signature]_____
Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

</td><td>

_____[signature]_____
César M. Gandiaga Texidor
Assistant Executive Director for
Administration and Finances

</td></tr>
</table>

**DEPARTMENT OF TREASURY**

_____[signature]_____
Melba Acosta Febo
Secretary

[initials]

Statement [hw:] *896* ([initials])

Acknowledged and signed before me by César M. Gandiaga Texidor, Assistant Executive Director for
Administration and Finances of the Highways and Transportation Authority, who is an adult, married, accountant
and resident of San Juan, Puerto Rico, whom I know personally.  In San Juan, Puerto Rico, on January [hw:] *16*,
2014.

[stamp:]
MARGUILEÁN
RIVERA AMILL
ATTORNEY-NOTARY

EXEMPT FOR PAYMENT OF STAMP TAX
LAW 47 OF JUNE 4, 1982

_____[signature]_____
Public Notary

Statement [hw:] *898*

Acknowledged and signed before me by Jorge A. Clivillés Díaz, adult, married and resident of San Juan, Puerto Rico, in his capacity as Executive Vice President and Fiscal Agent of the Banco Gubernamental de Fomento para Puerto Rico, whom I know personally. In San Juan, Puerto Rico, on January [hw:] *16*, 2014.

[stamp:]
MARGUILEÁN
RIVERA AMILL                    EXEMPT FOR PAYMENT OF STAMP TAX
ATTORNEY-NOTARY        LAW 47 OF JUNE 4, 1982                    _____[signature]_____
                                                                                                  Public Notary

Statement [hw:] *899*

Acknowledged and signed before me by Melba Acosta Febo, adult, single, and resident of San Juan, Puerto Rico, in her capacity as Secretary of the Department of Treasury, whom I know personally. In San Juan, Puerto Rico, on January [hw:] *16*, 2014.

[stamp:]
MARGUILEÁN
RIVERA AMILL                    EXEMPT FOR PAYMENT OF STAMP TAX
ATTORNEY-NOTARY        LAW 47 OF JUNE 4, 1982                    _____[signature]_____
                                                                                                  Public Notary

[initials]

13



**DATE OF TRANSLATION:**     23-Aug-21
**ELECTRONIC FILE NAME:**     January 16, 2014 agreement


**SOURCE LANGUAGE:**     Spanish
**TARGET LANGUAGE:**     English
**TRANSPERFECT JOB ID:**     US1061278


TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TCert v. 2.0