(H.B. 1544)
(Conference)

(No. **257-2018**)

(Approved December 10, 2018)

# AN ACT

To    amend Sections 1000.02, 1001.01, 1010.01, 1010.04, 1010.05, 1021.01, 1021.02, 1021.03, 1022.01, 1022.03, 1022.04, 1023.04, 1023.06, 1023.08, 1023.09, 1023.21, 1023.22, 1031.01, 1031.02, 1032.05, 1033.02, 1033.07, 1033.10, 1033.14, 1033.15, 1033.17, 1034.01, 1035.01, 1035.02, 1051.01, 1051.04, 1051.05, 1051.06, 1051.07, 1051.09, 1051.10, 1051.11, 1051.12, 1051.13, 1051.14, 1052.01, 1061.01, 1061.02, 1061.03, 1061.04, 1061.06, 1061.07, 1061.15, 1061.16, 1061.17, 1062.01, 1062.02, 1062.03, 1062.08, 1062.09, 1063.01, 1063.03, 1063.07, 1063.09, 1063.12, 1071.02, 1071.04, 1071.08, 1074.03, 1081.01, 1081.02, 1081.05, 1101.01, 1112.01, 1113.04, 1114.06, 1115.01, 2051.01, 3050.02, 3050.10, 3060.08, 4010.01, 4030.14, 4030.19, 4030.20, 4060.01, 4210.01, 5022.01, 5050.06, 6010.01, 6010.02, 6010.05, 6010.06, 6010.07, 6021.02, 6030.10, 6041.09, 6041.10, 6041.11, 6051.02, 6051.07, 6051.08, 6051.11, 6051.12, 6051.17, 6054.03, 6073.01, 6073.02, 6073.05, 6080.01, 6080.05, and 6080.06; repeal Sections 1032.06, 6073.03, and 6073.04; add new Sections 1021.06, 1022.07, 1033.21, 1035.08, 1051.15, 1063.15, 1101.02, 1116.16, 1116.17, 1116.18, 4030.26, 6010.09, 6030.23, 6030.24, 6030.25, 6051.20, 6051.21, and 6051.22, as amended, known as the "Internal Revenue Code for a New Puerto Rico"; amend subsections (a) and (c) of Section 6.03 of Act No. 83-1991, as amended; amend subsection (B) of Section (24) of Act No. 272-2003, as amended; repeal Act No. 156-2015; amend Section 208 of Act No. 210-2015, as amended, and amend Act No. 11 of August 22, 1933, as amended; in order to establish a simplification plan for the tax system; and for other related purposes.

## STATEMENT OF MOTIVES

For the past twenty (20) years, Puerto Rico's tax system has lost its capacity to generate income mostly due to a gradual reduction of its tax base and the enactment of special laws that rendered such tax system more complex. These challenges are not new, we have faced them before.

The 1994 Tax Reform, Act No. 120-1994, as amended, was created in accordance with various principles, namely establishing a progressive system where taxes would be imposed based on the people's payment capacity, creating a simple tax structure that provides incentives for economic development, and promoting an administration that controls tax evasion effectively without imposing on citizens an onerous tax burden in fulfilling their tax obligations; among others.

The 1994 Tax Reform lightened the tax burden of the middle class by lowering tax rates, to wit: the minimum tax rate was reduced from nine (9) to eight (8) percent, and the maximum tax rate was reduced from thirty-six (36) to thirty-three (33) percent. Likewise, the corporate and partnership tax rates were reduced from forty-two (42) to thirty-nine (39) percent. These tax cuts resulted in tax reliefs totaling around $400 million.[1]

Subsequently, the Government of Puerto Rico's tax policy spearheaded a transformation of the consumption tax regime. Act No. 117-2006 substituted the general excise tax on imports and manufactured products for a Sales and Use Tax (SUT) on goods and services under the presumption that it would broaden the tax base and betting on consumption being the engine that would boost Puerto Rico's economic development.

---

[1] Cruz, A. & Cao, R. (2003). *Control de la Evasion Tributaria y Equidad Fiscal: Un Analisis de la Experiencia de Puerto Rico 1987-97*. Universidad de Puerto Rico, Departamento de Economia, Unidad de Investigaciones Econ6micas.

AAFAF_CONF_0008099

In 2011, the Puerto Rico Internal Revenue Code was amended in order to grant tax reliefs, promote economic development, and create jobs. For such purposes, the Inten1a] Revenue Code for a New Puerto Rico of 2011, approved by virtue of Act No. 1-2011 (the Code), implemented a tax rate reduction for individuals and corporations. In addition, it established a more stringent Alternate Basic Tax (ABT) regime when claiming certain deductions from the gross income. This Code brought about a public policy change based on the principle that a dollar has a higher yield in the hands of the People of Puerto Rico than in the hands of the Government.

However, this public policy of more money in the pockets of Puerto Ricans was cast aside by the previous administration. Little by little, a tax reform that benefitted all Puerto Ricans was destroyed and replaced with numerous taxes that directly affected Puerto Rico's working class.

The inefficient public policy of the Garcia-Padilla Administration attempted to find an easy and politically convenient way out of the chaos it created after improvising and implementing incoherent policies for four (4) years. The Garcia-Padilla Administration governed under the philosophy of "primero impuestos y despues recortes" [first taxes, then cuts]. This philosophy contributed to prolonging the excessive spending and the rejection of public policies that would have allowed for the efficient administration of the fiscal affairs of the Government of Puerto Rico. The past administration also increased the Sales and Use Tax from seven percent (7%) to eleven point five percent (11.5%) and approved increases in the excise tax on crude oil. The Garcia-Padilla Administration failed to take the necessary actions to achieve more efficient Government operations and cutback on excessive government spending. This public policy of imposing over a hundred new taxes has adversely affected the economy as well as the wealth of Puerto

Ricans. As a result, Puerto Rico's economic crisis worsened forcing many local businesses to close down.

Ever since we took the reins of Puerto Rico in January 2017, the public policy of this administration has been to show that Puerto Rico is open to do business. Likewise, we believe that one of the key ways to solve this fiscal crisis is to promote economic development. Up until 2016, Puerto Rico's image had been tarnished worldwide. Our goal is to set Puerto Rico on a path to become an economically solid jurisdiction.

Certainly, Puerto Rico is undergoing an unprecedented fiscal and economic crisis. A comprehensive reform is needed not only to address the flaws of our tax system, but also to boost our economic development, and promote an environment where the voluntary and exemplary compliance of all sectors is the norm, thus achieving a truly fair and equitable system.

For years, the Government of Puerto Rico has operated with a structural deficit that has been financed with bond issues and loans from the Government Development Bank. In addition, the Treasury of the Government of Puerto Rico has been facing a cash flow crisis for years that is partly due to a reduction in the tax base resulting from the mass migration and the closing down of businesses caused by the economic crisis. Previous government administrations have resorted to increase taxes in order to solve the cash flow crisis and tackle the aforementioned reduction. However, those measures fell flat because the effects that the new taxes would have on our fragile economy were not taken into consideration. Heavy taxation and complex tax systems limit the development of businesses and individuals and weaken the economic potential of their achievements. For such reason, anyone who proposes a modification to a tax system should strive for economic development.

HEIN EXHIBIT 83

AAFAF_CONF_0008101

Recently, a group of prominent economists and economic development specialists headed by Anne Krueger, the former director of the International Monetary Fund (IMF) who also holds a PhD in Economics, submitted a report to the Government of Puerto Rico (hereinafter, the "Krueger Report") stressing the need to achieve an accelerated economic growth in order to confront the fiscal crisis. *See,* Puerto Rico - A Way Forward (June 29, 2015), pp. 1, 16. This reform is one of the steps we have taken to achieve that growth. Likewise, the Financial Oversight Board created under PROMESA also suggested that taxation should be rationalized and optimized, and that the tax system should be simplified.

The Organization for Economic Co-operation and Development (OECD) states that segmenting by sector or taxpayer classification may allow for a more precise identification of compliance risks.[2] Therefore, in exercising tax administration, the oversight agency should evaluate the behavior and characteristics of specific sectors of the population in order to develop more effective oversight strategies.

Consistently with the best practices worldwide, the goal of this new tax model is to redefine the philosophy of tax administration and to adopt a proactive approach towards identifying noncompliance with the tax liabilities established by the Code, and the possible causes thereof, instead of continuing to be reactive. This tax reform is based on the fundamental principles and best practices of tax administration: (i) the use of technology as a tool to increase compliance; (ii) restructuring the taxpayers' service line; (iii) refining the strategies for oversight and for reducing the risk of noncompliance; and (iv) transforming processes in order to facilitate the fulfillment of tax obligations.

---

[2] 3. Institutional Arrangements of Tax Administrations, OECD (2017), *Tax Administration 2017: Comparative Information on OECD and Other Advanced and Emerging Economies,* OECD Publishing, Paris.

AAFAF_CONF_0008102

A.    INDIVIDUALS

John F. Kennedy stated that:

The integrity of a system that operates based on self-imposition depends, to a great extent, on the continuous will of each citizen to discharge his responsibility to contribute to the cost of maintaining a civilized society, in a proportion that is fair and equitable, with the highest degree of honesty and accuracy. If a sector of the population does not discharge this responsibility, the remainder of the population has to shoulder a heavier tax burden. [Translation supplied]

Franklin D. Roosevelt stated that: "one sure way to detennine the social conscience of an individual is to get his tax-reaction. Taxes, after all, are the dues that we pay for the privileges of membership in an organized society."

This reform introduces various changes to the income tax regime for both individuals and corporations. In the case of individuals, they shall be provided with a dollar-for-dollar reduction of five percent (5%) in the amount they currently pay so that the scales of justice and equality are tipped towards the taxpayers who have historically shouldered a heavier tax burden compared to other sectors of the population. In summary, this reform redistributes the tax burden and implements mechanisms to combat tax evasion. Therefore, this new tax model is revenue neutral for the Government; that is to say, by redistributing the tax burden and implementing a more aggressive and efficient collection and oversight system we can ensure that a significant majority of our taxpayers shall pay less taxes, thus boosting Puerto Rico's economy.

Moreover, new income thresholds are established for the Alternate Basic Tax, including new tax rates that would range between 1% and 24%, as follows:

**Table 2.1 -   Current Alternate Basic Tax Rates for Individuals**

| Net Income Subject to Alternate Basic Tax | Tax Rates: |
|---|---|
| From $150,000 but not over $200,000 | 10% |
| In excess of $200,000 but not over $300,000 | 15% |
| In excess of $300,000 | 24% |

**Table 2.2 -   Proposed Alternate Basic Tax Rates for Individuals**

| Net Income Subject to Alternate Basic Tax | Tax Rates: |
|---|---|
| In excess of $25,000 but not over $50,000 | 1% |
| In excess of $50,000 but not over $75,000 | 3% |
| In excess of $75,000 but not over $150,000 | 5% |
| In excess of $150,000 but not over $250,000 | 10% |
| In excess of $250,000 | 24% |

One of the fundamental aspects of this tax reform is to impose greater controls in the deductions that taxpayers claim upon computing their tax liability. For the purposes of the Alternate Basic Tax, the expenses shall be deductible provided that they meet certain terms and conditions such as the taxpayer's compliance with his duty to duly report incurred expenses in the appropriate infom1ation statement, or submit proof attesting that he has indeed incurred such expenses. In cases where the nature of the claimed expenses does not allow for their easy and immediate corroboration, the deduction shall be allowed, provided, that the taxpayer submits a certification prepared by a professional validating the correctness and accuracy of the claimed expenses. These oversight and compliance mechanisms are introduced for the purpose of providing a greater degree of certainty to the deductions on incurred expenses in carrying out a trade or business. The deductions shall be available to honest taxpayers, but with better oversight mechanisms to discourage tax evasion.

<u>Optional Tax</u>

One of the main goals of this tax reform is to reduce the cost of compliance for taxpayers, whether in time or money. In order to simplify the process of complying with tax liabilities and taking into consideration the new economic reality of self-employed individuals, a new tax is introduced for such individuals whose source of income is substantially generated from services subject to the withholding at the source.

The optional tax shall allow the individual to pay a fixed tax rate on earned gross income, provided, that the income earned as a self-employed individual is subject to withholding at the source or the payment of the estimated tax and has been duly reported in the appropriate information statement. The tax rates or income thresholds subject to the Optional Tax are the following:

**Table 3.1 -   Optional Tax for Self-employed Individuals**

| Gross Income | Tax Rates: |
|---|---|
| Not over $100,000 | 6% |
| In excess of $100,000 but not over $200,000 | 10% |
| In excess of $200,000 but not over $300,000 | 13% |
| In excess of $300,000 but not over $400,000 | 15% |
| In excess of $400,000 but not over $500,000 | 17% |
| In excess of $500,000 | 20% |

<u>Premium Tax Return System</u>

Technological advances and the availability of highly sophisticated information systems enable us to make fundamental changes to our tax system. The exponential growth of the use of technology and the digitization of infom1ation pave the way for the consideration of platforms and technology tools that: (i) streamline and speed up interactions between taxpayers and the Department of the Treasury; (ii) increase the efficiency of the tax administration

AAFAF_CONF_0008105

decision-making process through an integrated analysis of the gathered information; (iii) improve the operational aspects of the Department of the Treasury including, but not limited to, the filing of tax returns and the payment of taxes by electronic means; and (iv) reduce the complexity of tax administration by consolidating all types of taxes under a unified and integrated system.

According to the data and information available, approximately 890,000 income tax returns are filed by individuals, of which twenty percent (20%) are salaried individuals who only attach their Withholding Statement (Form 499R-2/W-2PR). The electronic filing system has greatly reduced the tax return processing costs. However, savings can be increased even more. Through the use of technology, the Department shall collect the information of these individuals and use it to generate pro fonna tax returns to be reviewed and accepted by the taxpayer in order to be filed. This shall simplify the compliance and filing standards for approximately 300,000 taxpayers who may be subject to the certification of their pro forma tax returns without the need for additional processes.

In view of the foregoing, this bill introduces amendments directed at promoting and enforcing compliance with tax liabilities by electronic means. In addition, the Secretary of the Treasury is empowered to establish more streamlined filing processes for the income tax returns of individuals whose gross income has been reported in an information statement or withholding statement, and whose total tax has been withheld at source, through the payment of the appropriate estimated tax.

B.    CORPORATIONS

The income tax regime for corporations requires more attention due to the recent approval of a federal tax reform by the United States Congress. The promulgation of such tax reform has created an uncertain scenario for Puerto Rico

AAFAF _CONF_0008106

which is why this administration must take the necessary steps to minimize the potential negative effects of the Tax Cuts and Jobs Act of 2017[3], as it is known. It is necessary to lower corporate tax rates in order for Puerto Rico to compete in the global economy, to avoid the exodus of businesses currently operating in Puerto Rico, and to minimize the accelerated shrinking of the tax base. The foregoing notwithstanding, small- and medium-sized corporations shall not be disregarded.

In accordance with the foregoing, the Nom1al and Alternate Basic Tax rates for corporations, as well as the income thresholds subject to such taxes, are modified as follows:

Table 4.1- Normal Tax Applicable to Corporations

| Current Tax Rates | Proposed Tax Rates |
| --- | --- |
| Normal Tax | Normal Tax |
| 20% | 18.5% |
| Surtax | Surtax |
| Up to 19% | Up to 19% |

Similar to the individuals sector, oversight and compliance mechanisms are introduced for the Alternative Minimum Tax, in order to provide more certainty as to deductions on incurred expenses. The expenses shall be deductible provided that they meet certain terms and conditions such as the taxpayer's compliance with his duty to duly report incurred expenses in the appropriate information statements, or submit proof attesting that he has indeed incurred such expenses. In cases where the nature of the claimed expenses does not allow for their easy and immediate corroboration, the deduction shall be allowed, provided, that the taxpayer submits a certification prepared by a professional that validates the correctness and accuracy of the claimed expenses.

---

[3] Pub. Law 115-97, 131 Stat. 2054.

AAFAF_CONF_0008107

### Optional Tax for Corporations Devoted to Service Rendering

Another of the main goals of this tax reform is to reduce the cost of compliance for taxpayers, whether in time or money. In order to simplify the process of complying with tax liabilities, a new Optional Tax is introduced for corporations whose source of income is substantially generated from service rendering subject to the withholding at the source and the payment of the estimated tax. With this method, corporations may choose to pay a fixed tax rate on earned gross income, provided, that the income generated through service rendering is fully subject to withholding at the source or the payment of the estimated tax and has been duly reported in the appropriate information statement. The tax rates or income thresholds subject to the Optional Tax are the following:

**Table 4.2 – Optional Tax for Corporations that Render Services**

| Gross Income | Tax Rate: |
|---|---|
| *Not over $100.000* | *6%* |
| *In excess 0($100,000 but not over $200,000* | *10%* |
| *In excess 0($200,000 but not over $300,000* | *13%* |
| *In excess 0($300,000 but not over $400,000* | *15%* |
| *In excess 0($400,000 but not over $500,000* | *17%* |
| *In excess 0($500,000* | *20%* |

C.    SALES AND USE TAX

4%B2B

The tax on services rendered between businesses and designated professional services, commonly known as "B2B," directly affects the exchange of goods and services in Puerto Rico. It is a tax that inherently increases the cost of doing business and distorts the effectiveness of an economy that is productive or striving to be productive.

AAFAF_CONF_0008108

The public policy of this administration is to show that Puerto Rico is open to do business. Moreover, eliminating the B2B tax for 77% of taxpayers is one of the many commitments outlined in this administration's program and this reform honors such commitment.

The elimination of the B2B tax is established consistently with a public policy of promoting the use of electronic methods to conduct business transactions. Therefore, the Secretary of the Treasury is hereby empowered to establish rules and procedures directed at promoting and enforcing compliance with tax liabilities through electronic means. By eliminating the B2B tax, we also honor one of the commitments made to the People in the Plan for Puerto Rico, the government plan supported by voters in the 2016 elections.

<u>Special Sales and Use Tax Rate on Prepared Foods</u>

How the restaurant industry and businesses engaged in the sale of prepared foods are perceived has evolved over time. The benefits and convenience these businesses offer to the working class and Puerto Rican families every day should not be overlooked since this industry contributes over $500 million to the local agriculture, generates over $3 billion in sales across the Island, and employs over fifty thousand (50,000) people.

On September 18, 2017, the Governor of Puerto Rico, the Hon. Ricardo Rosello-Nevares, issued an Executive Order declaring a state of emergency in Puerto Rico in the face of the imminent impact of Hurricane Maria.[4] Hurricane Maria destroyed Puerto Rico's electric power infrastructure leaving most of the population without power for an extended period of time.

---

[4] Executive Order No. OE-2017-47.

AAFAF_CONF_0008109

Faced with this situation, the Secretary of the Treasury acted in accordance with the powers vested in him by the Code and granted a sales and use tax exemption on taxable items considered as "prepared foods."[5] The aforementioned exemption was granted by the Department under circumstances in which acquiring prepared foods became a fundamental need for the citizens of Puerto Rico due to the collapse of the Island's electric power grid.

In the wake of Hurricane Maria it became evident that the restaurant industry and the establishments devoted to the sale of prepared foods constitute an important component of our socioeconomic environment. The tenacity and perseverance that the members of this industry showed by resuming operations with limited power and telecommunication services exemplified their entrepreneurial spirit during one of the most critical moments in our history.

This reform introduces a special intermediate seven percent (7%)-SUT applicable to the sale of prepared foods, as defined in our Code. However, the imposition and collection of this special tax shall be considered as a type of privilege for those entrepreneurs who meet the requirements established by the Secretary.

Puerto Rico is undergoing the most serious fiscal crisis in recent history. This crisis has led to the creation of an unelected board that makes decisions that, on occasions, contravene the public policy of this administration and the best interests of the People of Puerto Rico. However, we must be proactive in creating a fairer and more effective tax system. The principle that a dollar has a higher yield in the hands of the People of Puerto Rico than in the hands of the

---

[5] See Administrative Determination No. 17-12 of the Department of the Treasury.

AAFAF_CONF_0008110

government is in effect once again. The changes herein established shall allow Puerto Ricans to have more money in their pockets, thus having a positive impact on the economy.

Just shy of (18) months into our administration, we have begun to restore the trust in the Government, even after the onslaught of two (2) powerful hurricanes. Investors, banks, and financial markets are looking at Puerto Rico more optimistically. We are showing the world that this administration is in control of the Government and is not improvising. To this, we must add the billions in emergency recovery funds that shall be injected into our economy.

After having taken the necessary measures to put our island back on track, we can now offer a new tax model that shall be beneficial for taxpayers and revenue neutral for the Government, which shall be funded pursuant to the public policy of this new tax model. Although we must overcome many obstacles on the road to a definitive recovery, our people are full of hope and optimism. This is a new beginning for our Island and that should motivate us to not let Puerto Rico down. The road to economic recovery has been mapped out. This administration shall stay committed to Puerto Rico in order to guide it to a full economic recovery. This is our goal and we are moving forward. We are confident that the actions we have taken shall help Puerto Rico rise up stronger than ever.

***BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:***

Section 1.- Section 1000.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1000.02.- Classification of Provisions.

The provisions of this Code are hereby classified and designated as:

Taxpayer Bill of Rights

Subtitle A.—Income Taxes

AAFAF_CONF_0008111

Subtitle B.–Estate and Gift Taxes

Subtitle C.–Excise Taxes

Subtitle D.-Sales and Use Tax

Subtitle DDD.- Consumption Surtax

Subtitle E.-Beverages

Subtitle F.–Administrative Provisions, Interest, Penalties, and Additions to Taxes"

Section 2.- Subsection (e) is hereby amended and subsections (p) and (q) are hereby added to Section 1001.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1001.01.- Taxpayer Rights.

In interviews, investigations, claims for tax refund and credit, and other matters that are carried out by the Department of the Treasury, hereinafter the 'Department,' every taxpayer shall be entitled to:

(a)     …

        …

(e)     At the beginning of an administrative investigation, receive a clear and simple explanation of the procedure to which he will be submitted and the rights to which he is entitled.

(f)     …

        …

(p)     Whenever a taxpayer ʹls not satisfied with the Secretary's interpretation of this Code, the taxpayer shall have the right to file an administrative complaint with the Department challenging such interpretation. Provided, that such claim shall be based on an actual rather than hypothetical controversy relating to the taxpayer who shall have standing for the filing thereof.

AAFAF_CONF_0008112

In these cases, the Secretary shall be prevented from can-ying out any collection actions until the Office of Administrative Appeals solves the controversy.

(q)     The Secretary shall guarantee the right to due process and all the rights provided in this Section, including the initial interview, when so required by the taxpayer, for any investigation conducted, even when it is conducted electronically or by mail."

Section 3.- Paragraphs (3) and (35) are hereby amended and paragraphs (36), (37), (38), and (39) are hereby added to subsection (a) of Section 1010.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1010.01.- Definitions.-

(a)     As used in this Subtitle, where not otherwise manifestly incompatible with the intent thereof-

(1)     …

(2)     …

(3)     Limited Liability Company.- The tenn 'limited liability company' means those entities organized under Chapter XIX of Act No. 164 of December 16, 2009, as amended, known as the 'General Corporations Act,' including those commonly denominated series limited liability companies. The term 'limited liability company' also refers to those entities organized under similar laws of any state of the United States of America or foreign country. For purposes of this Subtitle, limited liability companies shall be subject to taxation in the same manner and fom1 as corporations; provided, however, that they may elect to be treated as partnerships for tax purposes under the rules applicable to partnerships and partners contained in Chapter 7 of this Subtitle, even when the company has only one single member. The Secretary shall establish through regulations, the fom1 and manner of making such election, as well as the deadline

for the filing thereof. Provided, that such election shall be made at the time of filing the income tax return for the year of the election.

(A)    Exception.- Any foreign limited liability company that, for reasons of an election or provision of law or regulation under the Federal Internal Revenue Code of 1986, Title 26 of the United States Code, as amended, or similar provision of a foreign country, is treated as a partnership or whose revenues and expenses are attributable to its members for federal or foreign country income tax purposes, shall be treated as a partnership for purposes of this Subtitle, subject to the provisions of Chapter 7, and shall not be eligible to pay taxes as a corporation.

(B)    …

(4)    …

…

(35)   Large Taxpayers.- The term 'large taxpayers' shall only include those taxpayers engaged in trade or business in Puerto Rico that meet at least one of the following requirements:

(A)    It is a commercial bank or trust company;

(B)    It is a private bank;

(C)    It is a brokerage house;

(D)    It is an insurance company, including an International Insurer;

(E)    It ls an entity engaged in the telecommunications business;

(F)    It is an entity whose volume of business was fifty million ($50,000,000) or more for the preceding taxable year.

(i)    For purposes of determining the volume of business required in this subparagraph (G), the aggregated volume of business of

all the members of an affiliated group, as such term in defined in Section 1010.05. The Secretary shall prescribe through regulations, administrative determination, circular letter, or general information bulletin the applicability of these provisions to affiliated groups with different annual account period closings.

Provided, that, once the entity meets at least one of the requirements of this paragraph, it shall be included in the Large Taxpayer category for all purposes of this Code. However, a taxpayer may request the Secretary to be excluded from the Large Taxpayer category. Such request shall be made through a petition for administrative determination to such effect.

(36)   PROMESA.- The term 'PROMESA' means P.L. 114-187, known as the 'Puerto Rico Oversight Management and Economic Stability Act.'

(37)   Mathematical Error.- The term 'mathematical error' shall have the meaning established in Section 6010.02(g)(3)(B) of this Code.

(38)   Tax Return with Omitted or 'Incorrect' Information.- The term 'tax return with omitted or incorrect information" is a return that the Department has been unable to process because it is missing information that is required under this Code or regulations, administrative determination, circular letter, or general infom1ation bulletin issued by the Department or that has been processed electronically, but such tax return does not meet the information requirements established in this Code or a regulation, administrative determination, circular letter, or general information bulletin issued by the Department.

(39)   Notice of Return or Declaration with Omitted or Incorrect Information.- The tenn 'Notice of Retun1 or Declaration with Omitted or Incorrect Information' means the notice to be sent by the Department to a taxpayer that has filed a Return or Declaration with omitted or incorrect information.

AAFAF_CONF_0008115

(40)   Trade or Business.- As used in Sections 1062.08, 1062.11, 1091.01, and 1092.01, the term 'engaged in trade or business in Puerto Rico,' but not including:

(A)   Trading in securities.

(i)   Stocks and Securities.

(I)   In general. Trading in stocks or securities in Puerto Rico through a resident broker, registered agent, custodian, or other independent agent.

(II)   Trading for taxpayer's own account. Trading in stocks or securities for the taxpayer's own account, whether by the taxpayer or his employees or through a resident broker, registered agent, custodian, or other agent, and whether or not any such employee or agent has discretionary authority to make decisions in effecting the transactions. This clause shall not apply in the case of a dealer in stocks or securities.

(B)   Limitation.- Subparagraph (A)(i)(I) shall apply only if, at any time during the taxable year, the taxpayer has an office or fixed place of business in Puerto Rico where he effects or causes to effect the transactions involving trading in securities, or goods, as the case may be.

(b)   … "

Section 4.-  Paragraph (2) of subsection (a) of Section 1010.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1010.04.- Controlled Group of Corporations.-

(a)   Controlled Group of Corporations.- For purposes of this Code, the term 'controlled group of corporations' shall mean any:

(1)   …

AAFAF_CONF_0008116

(2)   Brother-sister Controlled Group.- Two (2) or more corporations, if five (5) or fewer of the same persons other than corporations own (within the meaning of subsection (d)(2)(A)) stock possessing more than fifty percent (50%) of the total combined voting power of all classes of stock entitled to vote or more than fifty percent (50%) of the total value of shares of all classes of stock of each corporation.

(3)   …

…"

Section 5.- Subsections (a) and (b) are hereby amended and a subsection (c) is hereby added to Section 1010.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1010.05.- Affiliated Group, Related Party.

(a)   An Affiliated Group.-  For purposes of this Code an 'affiliated group' means:

(1)   A controlled group of corporations, as such term is defined in Section 1010.04; or

(2)   One or more chains of entities connected through stock ownership with or share in the interest of a common parent entity or any other person or persons, if:

(A)   the parent entity directly owns stock with at least fifty percent (50%) of the total voting power of all classes of stock or share in the interest of at least one (1) of the entities within the group of entities;

(B)   For each of the entities within the group, another entity within such group owns fifty percent (50%) or more of the voting stock or the total value of all classes of stock or share in the interest in such entity; and

(C)     A person directly owns over fifty percent (50%) of the voting stock or interest or the total value of all classes of stock or share in the interest in at least one (1) of the entities within the group of entities.

(b)             …

(1)     …

(2)     An entity in which the taxpayer owns, directly or indirectly, fifty percent (50%) or more of the value of the stock of such corporation or the interest in such entity; or

(3)     An entity that owns, directly or indirectly, fifty percent (50%) or more of the value of its stock or the interest in such entity; or

(4)     An entity in which fifty percent (50%) or more of the value of its stocks or the interest in such entity is owned by a person who also owns, directly or indirectly, fifty percent (50%) or more of the value of the stock or the interest of the taxpayer; or

(5)     …

(c)     Entity.- Means the trade or business conducted by:

(1)     a corporation, limited liability company, or partnership subject to taxation under Subchapter B of Chapter 2 of this Subtitle;

(2)     a limited liability company, or partnership subject to taxation as a partnership under the provisions of Chapter 7 of this Subtitle;

(3)     a corporation, limited liability company, or partnership subject to taxation as a special partnership under the provisions of Subchapter D of Chapter 11 of this Subtitle;

(4)     a corporation or limited liability company subject to taxation as a corporation of individuals under the provisions of Subchapter E of Chapter 1 of this Subtitle; and

AAFAF_CONF_0008118

(5)    a corporation, limited liability company, or partnership, or any other type of foreign entity that, if engaged in trade or business in Puerto Rico, shall be subject to the provisions of paragraphs (1), (2), (3), or (4) of subsection (c).

(6)    Provided, that entities described in paragraphs (2), (3), and (4) of this subsection shall not be treated as corporations for purposes of the provisions of Subtitle D of Chapter 3 of this Subtitle."

Section 6.- Paragraphs (4), (5), and (6) of subsection (a) are hereby eliminated, the content of paragraph (7) of subsection (b) is hereby eliminated in its entirety, and a subsection (c) is hereby added to Section 1021.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1021.01.- Normal Tax on Individuals.

There shall be imposed, collected, and paid on the net income of every individual in excess of the exemptions provided in Section 1033.18, and on the net income of an estate or a trust in excess of the credit provided in Section 1083.03, a tax which shall be determined according to the following tables:

(a)    Regular Tax.-

(1)    …

(2)    …

(3)    ...

(b)    Gradual adjustment of tax rates lower than the maximum rate and the personal exemption and exemption for dependents.

(1)    …

(2)    …

(3)    …

(4)     For taxable years beginning after December 31, 2013, the tax imposed under subsection (a) of this Section (determined without taking this subsection into account) shall be increased by five percent (5%) of the excess of the net income subject to taxation over five hundred thousand dollars ($500,000).

(5)     Limitation.-  The increase determined under paragraphs (1 ), (2), (3 ), and (4) of this subsection (b) with regard to any taxpayer:

(A)     …

(B)     …

(C)     …

(D)     …

(E)     For taxable years beginning after December 31, 2014, shall not exceed eight thousand, eight hundred ninety-five dollars ($8,895) plus thirty-three percent (33%) of the personal exemption and the exemption for dependents allowable to the taxpayer under Section 1033.18.

(6)     In the case of married individuals living with their spouses and filing separately, and in the case of married individuals filing jointly who elect the optional tax computation as provided in Section 1021.03, the income levels for purposes of the gradual adjustment provided in this subsection shall be determined separately for each spouse as if he/she were a single taxpayer.

(c)     For taxable years beginning after December 31, 2018, the tax determined under this Section shall be ninety-five percent (95%) of the sum of the amounts determined under subsections (a) and (b) of this Section."

Section 7.- Paragraphs (1), (2), and (6) of subsection (a) of Section 1021.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1021.02.- Alternate Basic Tax on Individuals.

(a)     Imposition of Alternate Basic Tax on Individuals.

(1)     General Rule.- There shall be imposed, collected, and paid by every individual for each taxable year stated hereinbelow, in lieu of any other tax imposed under this part, a tax on the net income subject to alternate basic tax, determined according to the following table and minus the alternate basic credit for taxes paid abroad (when greater than the regular tax):

(A)     …

(B)     …

(C)     For taxable years beginning after December 31, 2013, and before January 1, 2019:

…

(D)     For taxable years beginning after December 31, 2018:

| If the net income subject to the alternate basic tax were: | The tax shall be: |
| --- | --- |
| In excess of $25,000 but not over $50,000 | 1% |
| In excess of $50,000 but not over $75,000 | 3% |
| In excess of $75,000 but not over $150,000 | 5% |
| In excess of $150,000 but not over $250,000 | 10% |
| In excess of $250,000 | 24% |

(2)     Net Income Subject to Alten1ate Basic Tax.- For purposes of this subsection, the term 'net income subject to alternate tax' shall mean:

(A)     For taxable years beginning before January 1, 2018.- The taxpayer's gross income for the taxable year determined according to the provisions of Section 1031.01 of this Subtitle, minus:

(i)     …

AAFAF_CONF_0008121

(ii)    …

(iii)    …

(iv)    …

(B)    For taxable years beginning after December 31, 2018.- The taxpayer's gross income for the taxable year determined according to the provisions of Section 1031.01 of this Subtitle, minus:

(i)    The exemptions established in paragraphs (1), (2), (3)(A), (3)(B), (3)(L), (3)(M), (4)(D), (6), (7), (10), (11), (12), (15), (16), (17), (20), (22), (23), (24), (25), (26), (27), (29), (30), (32), (33), (34), and (35) of subsection (a) of Section 1031.02.

(ii)    The sum of the exempt income, mentioned in clause (i) received from a registered investment company, in accordance with Section 1112.01.

(iii)    The one hundred twenty-five percent (125%) of the deduction for wages paid and reported in the withholding statement, as provided in Section 1062.0l(n)(2), of the taxable year for which the income tax return is filed;

(iv)    The amount of the payments for services directly related to the operation of the trade or business of the individual, including the payment of rent, telecommunications, internet access, and any other payment that has been duly reported in the information statements for income subject and not subject to withholding, as provided in Sections 1062.03(d), 1062.08(j), 1063.01, and 1063.03, of the taxable year for which the income tax return is filed, provided, that the amounts not reported in such statements shall not be deductible. Provided, that, taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

AAFAF_CONF_0008122

(v)     Fifty percent (50%) of the self-employment federal tax paid to the Internal Revenue Service on the income reported for the same taxable year, as provided in Section 1003.01 (b)(3);

(vi)     Health or accident plan contributions made by an employer for his employees, when they comply with the provisions of Sections 1031.02(a)(2)(D) or 1033.0l(b)(4);

(vii)     Amounts paid during the taxable year for water and electricity services, directly related to the operation of the trade or business of the taxpayer;

(viii) Amounts paid during the taxable year for advertisement, promotion, publicity, and marketing directly related to the operation of the trade or business of the taxpayer, provided that the amounts paid have been included in the information returns required in Section 1063.01; provided, that taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

(ix)     Amounts paid during the taxable year for property, contingency, and malpractice insurance directly related to the operation of the trade or business of the taxpayer, provided that the amounts paid had been included in the information statements required in Section 1063.01; provided, that taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same; and

(x)     Deductions admitted by Sections 1033.03, 1033.04, 1033.09, 1033.12, and 1033.15 that are directly related to the operation of the trade or business of the taxpayer.

(xi)    Deductions on account of depreciation using the straight line method, as determined under Section 1033.07.

(C)    For purposes of determining the amount of the net income subject to alternate basic, tax income exclusions or exemptions not arising from this Subtitle shall not apply, notwithstanding the same are granted under special laws, except for those provided in Act No. 225-1995, as amended, known as the 'Agricultural Tax Incentives Act,' Act No. 73-2008, as amended, known as the 'Economic Incentives Act for the Development of Puerto Rico,' or any similar previous or successor law, Act No. 83-2010, known as the 'Puerto Rico Green Energy Incentives Act,' or any similar previous or successor law, or in Act No. 78-1993, as amended, known as the 'Puerto Rico Tourist Development Act of 1993,' or any successor law, including the law known as the 'Puerto Rico Tourist Development Act of 2010,' or in Act No. 20-2012, as amended, better known as the 'Act to Promote the Export of Services,' or any other successor law, or Act No. 22-2012, as amended, better known as the 'Act to Promote the Relocation of Individual Investors to Puerto Rico,' or any other successor law, or Act No. 14-2017, known as the 'Medical Professionals Retention and Return Incentives Act.'

(D)    For years beginning after December 31, 2018, the individual may claim all ordinary and necessary expenses of his trade or business claimed to determine the net income subject to the nom1a] tax provided in Section 1021.01, provided that the individual attaches to the income tax return a Report on Agreed Upon Procedures or a Compliance Attestation Report prepared by a Certified Public Accountant (CPA) with a valid license in Puerto Rico certifying that the expenses claimed are ordinary and necessary expenses to generate the income from self-employment. The Secretary, in conjunction with the College of Certified Public Accountants of Puerto Rico, entity created under Act No. 75 of May 31, 1973, responsible for overseeing the regulation and quality of the CPA

profession, pursuant to the compliance attestation and auditing standards applicable to the supplementary information schedules required by this subsection, (b) shall establish through regulations, administrative detem1ination, circular letter, or general information bulletin the contents and the procedures to which the CPA shall adhere when preparing such reports.

(F)     For taxable years beginning after December 31, 2018, the provisions of this Section shall not apply to taxpayers whose only source of income is the wages reported in a Withholding Statement.

(3)     …

(4)     …

(5)     …

(6)     Credit for Alternate Basic Tax of Previous Taxable Years.-

(A)     Granting of Credit.- An amount equal to the alternate basic tax credit for previous years shall be allowed as a credit against the tax imposed by Section 1021.01, until the credit is exhausted. The taxpayer shall not sell or transfer any portion of the credit generated nor request the Secretary a refund thereof.

(B)     …

(i)     The sum of the net alternate basic tax determined for all previous taxable years beginning after December 31, 2008, and ending before January 1, 2014 and taxable years beginning after December 31, 2018, over

(ii)     The sum of the net regular tax determined for all such previous taxable years beginning after December 31, 2008, and ending before January 1, 2014 and taxable years beginning after December 31, 2018; and,

(iii)     For taxable years beginning after December 31, 2018, the sum of the alternate basic tax credit for previous years shall be reduced by such portion of the alten1ate basic tax credit paid that is attributable to

AAFAF_CONF_0008125

nondeductible expenses when determining the net income subject to the alten1ate basic tax.

        (C)   …

            (i)   …

            (ii)  …

        (D)  …

            (i)   …

            (ii)  …"

Section 8.- Subsection (a) is hereby amended and subsection (b) is hereby added to Section 1021.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1021.03 .- Optional Tax Computation in the Case of Married Individuals Living Together and Filing a Joint Return.-

(a)     In the case of spouses living together and filing a joint return, the tax under Sections 1021.01 and 1021.02, shall be, at their choice, the sum of the taxes detem1ined individually, in the fom1 provided for such purposes by the Secretary, as follows:

       (1)   The personal exemption shall be that provided in subparagraph (A) of paragraph (1) of subsection (a) of Section 1033.18;

       (2)   …

       …

       (6)   …

       (7)   Each spouse may elect, separately, the optional tax provided in Section 1021.06, provided all of the conditions and requirements imposed in such Section are met."

Section 9.- Section 1021.06 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

AAFAF_CONF_0008126

"Section 1021.06.- Optional Tax for Self-Employed Individuals.-

(a)     In the case of self-employed Individuals whose source of income is substantially generated by such trade or business, they may opt to pay an optional tax in lieu of the tax provided in Sections 1021.01 and 1021.02, as follows:

| If the gross income were: | The tax shall be: |
|---|---|
| Not over $100,000 | 6% |
| In excess of $100,000 but not over $200,000 | 10% |
| In excess of $200,000 but not over $300,000 | 13% |
| In excess of $300,000 but not over $400,000 | 15% |
| In excess of $400,000 but not over $500,000 | 17% |
| In excess of $500,000 | 20% |

(b)     The individual may opt for the tax provided in subsection (a) of this Section, in lieu of any other tax provided in this Subtitle, insofar as the following requirements are met:

(1)     The total gross income of the tax payer for the taxable year in which he elects to pay taxes under the provisions of subsection (a) of this section is substantially generated from income on account of services rendered, subject to the withholding at the source provided in Section 1062.03;

(2)     Any gross income earned during the taxable year was duly reported in an information statement, as provided in Section 1062.03(i); and

(3)     The total gross income earned was subject to the withholding at the source provided in Section 1062.03 or the estimated payment provided in Section 1061.20.

HEIN EXHIBIT 83

AAFAF_CONF_0008127

(c)     Any taxpayer who opts for the optional tax shall determine the tax to be paid by applying the rate provided in subsection (a) of this Section to the gross income, without considering the exempt income, and may not claim expenses, deductions nor be subject to the reports required in Section 1061.15 of this Code, if the provisions thereof are complied with.

(d)     The Secretary shall establish through regulations, administrative detem1ination, circular letter, or general information bulletin the conditions under which an individual may opt for this optional tax, established in this Section. Provided, that the Secretary may exempt from the requirement to file tax returns those taxpayers that meet the requirements listed in subsection (b) of this Section.

(e)     The provisions of this section shall be in effect for taxable years beginning after December 31, 2018. Provided, that the Secretary is hereby empowered to postpone the effective date of this Section for taxable years beginning after December 31, 2019."

Section 10.- Subsection (b) of Section 1022.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1022.01 .- Normal Tax on Corporations.-

(a)     …

(b)     Imposition of Tax.-  There shall be imposed, collected, and paid for each taxable year on the net income subject to normal tax of every regular corporation, a tax of twenty percent (20%) of the net income subject to normal tax. Provided, that for taxable years beginning after December 31, 2018, the tax imposed in this section shall be reduced to eighteen point five percent (18.5%); and

(c)     …
    "
…

Section 11.- Subsection (b) is hereby amended and subsection (g) is hereby added to Section 1022.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1022.03.-  Alternative Minimum Tax Applicable to Corporations.-

(a)      …

(b)      Tentative Minimum Tax.-  For purposes of this Section, and except as provided in subsection (g), the term "tentative minimum tax" for the taxable year shall be the greater of:

      (1)      …

      (2)      …

(c)      …

…

(g)      Tentative Minimum Tax.- For taxable years beginning after December 31, 2018, the term 'tentative minimum tax' for the taxable year shall be the greater of five hundred dollars ($500) or eighteen point five percent (18.5%) of the excess of the alternative minimum net income for the taxable year over the exempt amount, minus the alternative minimum credit for taxes paid abroad for the taxable year. Provided, that corporations subsect to the provisions of Section 1061.15(a)(3) shall be subject to a rate of twenty-three percent (23%) in lieu of the rate established in the previous sentence."

Section 12.- Paragraph (7) is hereby added to subsection (a) of Section 1022.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1022.04.- Alternative Minimum Net Income Determination.-

(a)      In determining the amount of the alten1ative minimum net income for any taxable year, the following treatment shall apply, in lieu of the treatment applicable for purposes of determining the regular tax.

HEIN EXHIBIT 83

AAFAF_CONF_0008129

(1)     …

(2)     …

(3)     …

(4)     …

(5)     …

(6)     …

(7)     Deductions provided in Section 1031.04 of the Code.-

(A)     For taxable years beginning after December 31, 2018.- When determining the alternative net income subject to the alternative minimum tax, no deduction whatsoever shall be allowed for deductions claimed by the corporation when determining the net income subject to the tax imposed in Section 1022.01. When detem1ining the alternative minimum net income, the corporation shall only claim, against the gross income as determined in Section 1031.01, the following deductions:

(i)     The one hundred twenty-five percent (125%) of the deduction for wages paid and reported in the withholding statement, as provided in Section 1062.0l(n)(2), of the taxable year for which the income tax return is filed;

(ii)     The amount of the payments for services directly related to the operation of the trade or business of the corporation, including the payment of rent, telecommunications, internet access, and any other payment that has been duly reported in the information statement for income tax subject and not subject to withholding, as provided in Sections 1062.03(d), 1062.08(j), 1063.01, 1063.02, and 1063.03, of the taxable year for which the income tax return is filed; provided that the amounts not reported in such statements shall not be deductible, and that taxpayers under the accrual method or with an economic year shall attach

to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

(iii)   The amount of rent payments that have been duly reported in the information statement for income not subject to withholding, as provided in Section 1063.01 (a) for the taxable year for which the income tax return is filed; provided, that taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

(iv)   Health or accident plan contributions made for employees, when these comply with the provisions of Sections 1031.02(a)(2)(D) or 1033.0l(b)(4);

(v)   Amounts paid during the taxable year for water and electricity services, directly related to the operation of the trade or business of the taxpayer;

(vi)   Amounts paid during the taxable year for advertisement, promotion, publicity and marketing directly related to the operation of the trade or business of the corporation, provided that the amounts paid had been included in the information statement required in Section 1063.01; provided, that taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

(vii)   Amounts paid during the taxable year for property, contingency, and malpractice insurance directly related to the operation of the trade or business of the corporation, provided that the amounts paid had been included in the information statement required in Section 1063.01; provided, that taxpayers under the accrual method or with an economic year shall attach to their

AAFAF_CONF_0008131

tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same; and

(viii)  Deductions on account of depreciation using the straight line method, as detern1ined under Section 1033.07, and

(ix)  Deductions admitted by Sections 1033.03, 1033.04, 1033.06, 1033.09, 1033.10, and 1033.12, provided, that such expenses are directly related to the operation of the trade or business of the corporation.

(B)  The provisions of subparagraph (A) of paragraph (7) notwithstanding, the corporation may, for determining the net income subject to the alternative minimum tax, claim the same deductions claimed to determine the net income subject to the normal tax imposed in Section 1022.01, subject to the adjustments of paragraphs (1) through (5) of this subsection (a), provided, that the corporation files enclosed with its income tax return an audited financial statement, in accordance with the provisions of Section 1061.15(a)(3) together with the Supplementary Information required in Section 1061.15 (b) or files the Report on Agreed Upon Procedures or a Compliance Attestation Report, as provided in paragraphs (1) and (2) of subsection (a) of Section 1061.15.

(C)  The Secretary shall establish through regulations, administrative determination, circular letter, or general information bulletin the fom1 and manner in which the provisions of this paragraph shall apply, including the transitory provisions.

(b)  …

..."

Section 13.- A new Section 1022.07 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

AAFAF_CONF_0008132

"Section 1022.07.- Optional Tax for Corporation Rendering Services.-

(a)     In the case of corporations whose source of income is generated substantially from the rendering of services, they may elect an optional tax, in lieu of the taxes provided in Sections 1022.01, 1022.02, and 1022.03, as follows:

| If the gross income were: | The tax shall be: |
|---|---|
| Not over $100,000 | 6% |
| In excess of $100,000 but not over $200,000 | 10% |
| In excess of $200,000 but not over $300,000 | 13% |
| In excess of $300,000 but not over $400,000 | 15% |
| In excess of $400,000 but not over $500,000 | 17% |
| In excess of $500,000 | 20% |

(b)     The corporation may opt for the tax provided in subsection (a) of this Section, in lieu of any other tax provided in this Subtitle, provided, that the following requirements are met:

(1)     The total gross income of the corporation for the taxable year in which it elects to pay taxes under the provisions of subsection (a) of this Section is substantially generated from income on account of services rendered, subject to the withholding at source provided in Section 1062.03;

(2)     Any gross income earned during the taxable year was duly reported in the information statement, as provided in Section 1062.03(i); and

(3)     The total gross income earned was subject to the withholding at source provided in Section 1062.03 or the estimated payment provided in Section 1061.23.

(c)      Any eligible corporation that chooses this optional tax shall detennine the tax to be paid by applying the rate provided in subsection (a) of this Section to the gross income, without considering the exempt income, and may not claim expenses or deductions nor be subject to the reports required in Section 1061.15 of the Code, if the provisions thereof are complied with.

(d)      The Secretary shall establish through regulations, administrative detem1ination, circular letter, or general information bulletin the conditions under which a corporation may choose this optional tax, established in this Section.

(e)      The provisions of this Section shall be in effect for taxable years beginning after December 31, 2018. Provided, that the Secretary is hereby empowered to postpone the effective date of this Section for taxable years beginning after December 3 l, 2019."

Section 14.- Subsection (b) of Section 1023.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1023.04.- Tax on Individuals, Estates, and Trusts with Regard to the Interest Paid or Credited on Deposits in Interest Bearing Accounts.-

(a)      …

(b)      Requirements to Avail Oneself of the Provisions of this Section. -

(1)      Option.-

(A)      …

(B)      …

(C)      …

(D)      When an individual, estate, or trust has one or more interest-bearing accounts in one or more financial institutions, it shall be required to select the financial institution or account where the exemption on paid or credited interest shall be applied as established in Section 103 l.02(a)(3)(K) and to

notify the latter, and each of the other institutions in which said accounts are held, of the selection. In these cases, the institution thus selected shall be required to deduct and withhold the ten percent (10%) tax or the seventeen percent (17%) tax, as applicable, on the amount paid or credited for interest in excess of the first five hundred dollars ($500) accrued in each quarter. Provided, that, for taxable years beginning after December 31, 2018, the selected institution shall be required to deduct and withhold the ten percent (10%) tax or the seventeen percent (17%) tax, as applicable, on the amount paid or credited for interest in excess of the first twenty-five dollars ($25) accrued in each quarter. The other financial institutions shall withhold said ten percent (10%) or seventeen percent (17%), as applicable, taking as the base the total amount of interest paid or credited. The Secretary is hereby empowered to establish a transition rule to meet the requirements of this subsection.

        (E)   …

        (F)   …

        (G)   …

    (2)   …

    (3)   Special Procedure in the Case of Accounts in Brokerage Houses.-

        (A)   …

        (B)   With regard to the portion of an account that belongs to one (1) or more individuals, estates, or trusts, said brokerage house can act as the withholding agent and may receive the authorization of each individual, estate or trust to withhold the ten percent (10%) or the seventeen percent (17%), as applicable, on interest paid or credited by the financial institution to the brokerage house, and in turn, paid or credited to the taxpayer by the brokerage house, and may be the institution selected to deduct and withhold the ten percent (10%) tax or

the seventeen percent (17%) tax, as applicable, on the amount paid or credited on account of interest in excess of the first five hundred dollars ($500) accrued in each quarter. Provided, that for amounts paid after December 31, 2018, the withholding shall apply to the excess of the first twenty-five dollars ($25) accrued in each quarter. The Secretary is hereby empowered to establish a transition rule to meet the requirements of this subsection."

Section 15.- Subsection (e) of Section 1023.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1023.06.- Special Tax on Dividend Distribution from Certain Corporations.-

(a)    …

…

(e)    Requirement to Deduct and Withhold at the Source and Pay or Deposit the Tax Imposed by this Section.-

( ! )  …

(2)    Requirement to Pay or Deposit Deducted or Withheld Taxes.- Every person required to deduct and withhold any tax under the provisions of this Section, under regulations prescribed by the Secretary in accordance with this Subtitle, and to remit the payment of said tax to the Goven1ment of Puerto Rico, shall pay the amount of tax so deducted and withheld in the Internal Revenue Tax Collection Offices of Puerto Rico, the Treasury Department, or shall deposit the same in any of the banking institutions designated as depositories of public funds that have been authorized by the Secretary to receive said tax. Provided, that the Secretary may require through regulations, administrative determination, circular letter, or general information bulletin that the tax withheld referred to in this Section be deposited electronically. The tax shall be paid or deposited on or before

the fifteenth (15th) day of the month following the date on which the eligible distribution was made.

(3)   …

(4)   …

(5)   …

(6)   …

(f)   …

"

…

Section 16.- Subsection (a) of Section 1023.08 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1023.08.- Special Tax on Variable Annuities in Separate Accounts.-

(a)   Imposition of Tax.- When filing his income tax return, the taxpayer may elect to treat the amount of the 'lump sum' includible in the gross income as a long-term capital gain. Provided, that, for taxable years beginning after December 31, 2018, the taxpayer may opt to pay, in lieu of any taxes imposed under this Subtitle, a tax equal to fifteen percent (15%) on the 'lump sum' that is includible as gross income, provided that the following requirements are met.

(1)   Requirements to Opt for the Provisions of this Section.-

(A)   The option to pay only the fifteen percent (15%) of the tax, referred to in subsection (a) shall be available to taxpayers who at the time of requesting the payment of the variable annuity in a 'lump sum,' authorize the payer thereof to withhold the tax imposed in this Section.

(B)   Any taxpayer who does not exercise the option provided herein shall be required to pay income tax on the basis of the rates provided in Section 1021.01.

AAFAF_CONF_0008137

(C)     The withholding agent shall make the withholding with respect to the 'lump sum' paid through the procedure established in Section 1062.09, and shall be subject to the provisions thereof.

(D)     Manner of exercising the option.- In order to exercise the option provided in subparagraph (A), the recipient of the payment of the variable annuity in a 'lump sum' shall deliver to the payer a written authorization signed by the recipient stating that he opts for the withholding of the tax imposed in subsection (a).

(b)     …

" …

Section 17.- Subsection (a) of Section 1023.09 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1023.09.- Special Tax on Total Distributions of Certain Employees' Trusts.-

(a)     Imposition of Tax.- When filing his income tax return, the taxpayer may elect to treat the amount of the total distribution that would be considered a long-term capital gain under Section 1081.01(b)(1), subject to the special tax imposed in such Section, or to pay taxes for such income as an ordinary income, whichever is more beneficial for the taxpayer. In accordance with Section 1081.0l(b), for taxable years beginning after December 31, 2018, the total distributions of retirement plans qualified under Section 1081.0l(a) are deemed to be ordinary income subject to the tax rates of Section 1021.01; if the provisions of Section 1081.0l(b)(l) are complied with, however, the taxpayer shall only pay a tax equal to twenty percent (20%) of the taxable portion of the total distribution or ten percent (10%), if subparagraphs (A) and (B) of paragraph (1) of subsection (b)

AAFAF_CONF_0008138

of Section 1081.01 are complied with, or shall treat such distribution as ordinary income, whichever is more beneficial for the taxpayer."

Section 18.- Subsection (c) of Section 1023.21 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended and the numbering is hereby corrected to read as follows:

"Section 1023.21.- Special Tax for Individuals, Estates, and Trusts upon the Sale or Tax Prepayment on the Appreciation of Certain Assets.-

(a)    …

(b)    …

(c)    Included Assets.- The election provided in this Section regarding the following assets may be made:

(1)    Stocks or ownership interest in limited liability companies or partnership interests, domestic and foreign, including the option to acquire stocks or interests;

(2)    Real property located within or outside Puerto Rico, including property that is owned by any individual, estate, or trust that is subject to the allowance for depreciation whose gains in the sale would be subject to taxation as a capital gain pursuant to the provisions of Section 1034.0l(h), or in the case of prepayment for appreciation, which if sold, would have qualified as a capital gain pursuant to the provisions of Section 1034.01 (h). Notwithstanding the foregoing, the appreciation or base of this recognized modality shall only be used by said taxpayer for purposes of the future sale of said property, and not to calculate the depreciation of the property prior to the future sale thereof;

(3)    A fixed annuity contract;

(4)    Shares in an employer plan, whether or not qualified pursuant to Section 1081.01. Provided, that, in the case of a plan not qualified under Section 1081.01 of this Code, the plan must have been established through an agreement

AAFAF_CONF_0008139

executed before November 1, 2014, and the balance of the deferred amounts may only be included together with the income derived from such amounts, payable to the employee at the time he availed himself of the benefits of this Section, if the deferral was not made;

(5)    Bonds, obligations, notes, or certificates or other evidence of indebtedness, issued by any corporation, partnership, or limited liability company, including those issued by a goven1ment or political subdivision thereof, with interest coupons or in registered form, provided that these shall constitute capital stock held by the taxpayer.

(d)    Base increase in the case of prepayment.- ...

(e)    …
      "
…

Section 19.- The paragraphs of subsection (c) of Section 1023.22 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended and their numbering is hereby corrected to read as follows:

"Section 1023.22.- Special Tax for Corporations upon the Sale or Tax Prepayment on the Appreciation of Capital Assets.-

(a)    …

(b)    …

(c)    Capital Assets Included.- The election provided in this Section regarding the following assets may be made insofar as they constitute capital assets:

(1)    Stocks in corporations or the domestic and foreign partnerships interest; or

(2)    Real property located within or outside Puerto Rico, including property that is owned by any corporation that is subject to the allowance for

AAFAF_CONF_0008140

depreciation whose gains on the sale would be subject to taxation as a capital gain pursuant to the provisions of Section 1034.0l(h), or in the case of prepayment for appreciation, which if sold, would have qualified as a capital gain pursuant to the provisions of Section 1034.01 (h). Notwithstanding the foregoing, the appreciation or base of this recognized modality shall only be used by said taxpayer for purposes of the future sale of said property, and not to calculate the depreciation of the property prior to the future sale thereof.

(3)    Intangible property including, but not limited to, patents and capital gain.

(4)    Bonds, obligations, notes or certificates, or other evidence of indebtedness, issued by any corporation, partnership, or limited liability company, including those issued by a goven1ment or political subdivision thereof, with interest coupons or in registered form, provided that these shall constitute capital stock held by the taxpayer.

(5)    In the case of an entity that has made an election to pay taxes as a partnership under Section 1076.01 of the Code, or as a special partnership under Section 1114.12 of the Code, or as a corporation of individuals under Section l 115.02 of the Code, such capital stock as defined in this subsection, whose gains on the sale shall be subject to the tax on certain built-in gains provided in Section 1115.08.

(d)    …
  "
…

Section 20.- Paragraphs (3), (11), and (14) are hereby amended and paragraphs (14), (15), (16), (17), and (18) are hereby added to subsection (b) of Section 1031.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

AAFAF_CONF_0008141

"Section 1031.01.- Gross Income.-

(a)    …

(b)    Exclusions from Gross Income.- The following items shall be excluded from the definition of gross income:

(1)    …

…

(3)    Compensation for injuries or sickness.- Except in the case of amounts attributable to, and not in excess of, deductions allowed under Section 1033.15(a)(2)(F), for any prior taxable year, amounts received through accident or health insurance, or under workmen's compensation acts as compensation for personal physical injuries or sickness (other than amounts received by an employee, to the extent such amounts are attributable to direct contributions by the employer), the amount of any damages received whether by suit or on account of said personal physical injuries or sickness, or damages for emotional distress, and amounts received as a pension, annuity, or similar allowance for personal physical injuries or sickness, and amounts received as disability whether work-related or not, including those resulting from active service in the armed forces of any country.

…

(11)    Annuities: Except as otherwise provided in paragraph (1) of subsection (a) of Section 1031.02, the following amounts with respect to annuities shall be excluded from gross income:

(A)    In General.-

(i)     …

(ii)    …

(iii)   …

(iv)    …

(v)  …

(vi)  …

(12)  …

(13)  …

(14)  …

(15)   Compensations or severance pay received by an employee by reason of dismissal, without the need to determine just cause thereof: up to a maximum amount equal to the severance pay that the employee may receive pursuant to Act No. 80 of May 30, 1976, as amended.

(16)   Qualified Disaster Relief Payment Defined.- For taxable years beginning after December 31, 2016, gross income shall not include any amount received by an individual as a Qualified Disaster Relief Payment, whether or not such individual is a Resident of Puerto Rico and with whom there is an employer-employee relationship or who has rendered services as independent contractor, for the purpose of providing assistance and support in the repair, mitigation, or compensating any damages or losses sustained by such individual as a result of a Disaster Declared by the Governor of Puerto Rico.

(A)   For purposes of this paragraph, the term 'Qualified Disaster Relief Payment' means any amount paid to or for the benefit of an individual:

(i)   To provide, reimburse, or pay reasonable and necessary personal or family expenses such as food, medications, fuel, lodging, medical, childcare, care for dependents, electric power generation, drinking water utility service, and funeral expenses incurred as a result of a Disaster Declared by the Governor of Puerto Rico;

(ii)  To reimburse or pay reasonable and necessary expenses incurred in the repair or rehabilitation of a principal residence

AAFAF_CONF_0008143

or repair or replacement of any tangible personal property therein to the extent that the need for such repair, rehabilitation, or replacement is attributable to a Disaster Declared by the Governor of Puerto Rico, whether such payment was made directly to the provider of the good or service or to the individual;

(iii)    Payments made directly to the individual as financial aid to cover expenses for any damages or losses sustained by such individual as a result of a Disaster Declared by the Governor of Puerto Rico; or

(iv)    Payments made by the federal government, the Government of Puerto Rico or any municipality, or agency or instrumentality thereof, in connection with a Disaster Declared by the Goven1or of Puerto Rico to promote the general welfare, but only to the extent any expense compensated by such payment is not otherwise compensated for by insurance or otherwise.

(B)    Payments mentioned in subparagraph (A) of this paragraph shall be excluded from the definition of gross income; provided, that, such payments:

(i)    Are made within the term established by the Secretary through regulations, administrative determination, circular letter, or general information bulletin following a Disaster Declared by the Governor of Puerto Rico;

(ii)    Are in addition to the compensation that the employee receives or to which an independent contractor is entitled;

(iii)    Are not to replace the wages earned by the employee or the compensation of the independent contractor;

(iv)    The employer does not discriminate in favor of highly compensated individuals as such term is defined in Section 1032.06(d)(2); and

AAFAF_CONF_0008144

(v)    The amount paid in cash does not exceed the monthly or annual amount that the Secretary establishes through administrative detem1ination, circular letter, or general information bulletin following a Disaster Declared by the Governor of Puerto Rico.

(C)    Disaster Declared by the Governor of Puerto Rico.- For purposes of this Section the term 'Disaster Declared by the Governor of Puerto Rico' means any disaster that, with respect to the area where the taxpayer lives, results in a subsequent designation by the Governor of Puerto Rico as an area whose residents are eligible to receive assistance under the disaster relief assistance programs of the Government of Puerto Rico.

(D)    Any Qualified Disaster Relief Payment made in accordance with the provisions of this paragraph shall be deemed to be ordinary and necessary expenses of a trade or business, pursuant to Sections 1033.0l(a) and 1033.02(a).

(E)    The Secretary shall establish through regulations, administrative determination, circular letter, or general information bulletin the notification and information requirements in connection with the exclusion of Qualified Disaster Relief Payments from gross income.

(17)    Disaster Relief Loans to Employees or Independent Contractors as Declared by the Governor of Puerto Rico.- Any employer that offers interest-free loans to its employees or independent contractors that render services to such employer, during the period described in Section 1033.0l(b)(16)(C), to provide assistance to the employee or independent contractor to cover the expenses described in clauses (i) and (ii) of subparagraph (A) of paragraph (16) of this subsection shall not have to recognize such loan amount as income nor shall it be deemed taxable income for the employee or independent contractor, provided, that the total amount of the loan or loans granted during such period does not exceed

AAFAF _CONF _0008145

twenty thousand dollars ($20,000), per employee or independent contractor. The employer may grant more than one of this type of loan, to the extent that the total amount of all loans granted does not exceed twenty thousand dollars ($20,000), per employee or independent contractor. The employer may offer these loans to the employee as assistance in addition to the amounts paid under paragraph (16) of this subsection. Provided, further, that:

(A)   Any loan under this paragraph shall not be deemed a Qualified Disaster Relief Payment as defined in subparagraph (A) of paragraph (16) of this subsection.

(B)   To claim this exclusion, the employer shall establish a loan repayment term, which shall never exceed twenty-four (24) months.

(18)   Distributions from an Employee Trust or an Individual Retirement Account following a Disaster.- In the case of distributions made in accordance with Section 1081.01 (b)(1)(D) and Section 1081.02(d)(1)(I) following a disaster as declared by the Governor of Puerto Rico, the Secretary is hereby empowered to establish, through regulations, administrative determination, circular letter, or general information bulletin, the amount subject to exclusion and the period during which such distributions shall be allowed.

(19)   Amounts received by an individual as ean1ed income credit as provided in Section 1052.01 of this Code."

Section 21.- Subsection (a) of Section 1031.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1031.02.- Exemptions from Gross Income.-

(a)   The following income items shall be exempt from taxation under this Subtitle:

(1)   …

AAFAF_CONF_0008146

…

(3)    Tax exempt interest. -   Interest on:

(A)   …

(B)   …

(C)   …

(D)   …

(E)   …

(F)   …

(G)   …

(H)   …

(I)   …

(J)   …

(K)   Deposits in interest-bearing accounts, in cooperatives, savings associations authorized by the Federal Government, or by the Goven1ment of Puerto Rico, commercial and mutual banks, or in any other organization of a banking nature located in Puerto Rico, up to the total amount of two thousand dollars ($2,000) for each individual taxpayer. In the case of a taxpayer that files a joint return, the exclusion shall not exceed four thousand dollars ($4,000). If spouses who live together choose to file separate returns, the exclusion for each shall not exceed two thousand dollars ($2,000). This provision shall apply to the portion of the interest paid or credited on deposits in interest-bearing accounts that belong to one (1) or more individuals, estates, or trusts and are registered on behalf of a brokerage fim1 as nominee. It shall also apply to that part of any paid or distributed amount of an individual retirement account that consists of interest as described in Section 1023.04. Provided, that, for taxable years beginning after December 31, 2018, the amount of the exemption provided in this subparagraph shall be one hundred dollars ($100) for each individual taxpayer. In the case of

taxpayers filing a joint return, such exclusion shall not exceed two hundred dollars ($200). If married individuals living together file separate returns, the exemption for each spouse shall be one hundred dollars ($100).

       (L)   …

       (M)   …

       (N)   …

       (O)   …

       (P)   …

       (Q)   …

       …

    (4)  ...

    (5)  ...

    (6)  ...

    (7)  ...

    (8)  ...

    (9)  ...

    (10)  ...

    (11)  ...

    (12)  ...

    (13)  The amounts received from pensions granted, or to be granted, by the retirement systems or funds subsidized by the Government of Puerto Rico, from annuities or pensions granted by the Government of the United States of America, and by the instrumentalities or political subdivisions of both governments, and from pension, retirement or annuity plans qualified under the provisions of Section 1081.01, granted by private employers up to the limit provided below:

AAFAF_CONF_0008148

(A)　...

(B)　...

(C)　The exemption allowed under this paragraph shall apply only to amounts received on account of separation from employment in the form of annuity or periodic payments. Provided, that for years beginning after December 31, 2018, the exemption granted under this paragraph shall only apply to amounts paid to the participant or, upon his death, to his beneficiary, through a lifetime pension or annuity, or periodical payments completed after the date on which the participant has separated from service, whether from a Government or private employer that maintains or participates in the system, fund, or plan making the payment.

(D)　For purposes of this Section 1031.02(a)(13) and Section 1081.01, 'periodic payment' means:

(i)　Payments made during a fixed period of time of at least five (5) years in substantially similar amounts; or

(ii)　Minimum required distributions under the United States Inten1al Revenue Code of 1986, as amended, or any successor legal provĩsı0n.

(14)　…

(15)　…

(16)　…

(17)　…

(18)　…

(19)　…

(20)　…

(21)　…

(22)　…

AAFAF_CONF_0008149

(23)   …

(24)   …

(25)   …

(26)   …

(27)   …

(28)   …

(29)   …

(30)   …

(31)   …

(32)   …

(33)   …

(34)   …

(35)   …

(36)   Income derived by youths on account of wages, rendered services, and/or self-employment.- For taxable years beginning after December 31, 2013, the first forty thousand dollars ($40,000) of gross income earned by a youth on account of wages, rendered services, and/or self-employment shall be exempt from taxation under this Subtitle. The excess of such forty thousand dollars ($40,000) shall be taxable at normal rates. In this case, the taxpayer shall not be entitled to claim the Special Deduction for Certain Individuals provided in Section 1033.16. For purposes of this paragraph, the term 'youth' shall mean any individual resident of Puerto Rico who is between the ages of sixteen (16) and twenty-six (26) at the close of the taxable year."

Section 22.-  Subsection (a) is amended, subsections (b) and (e) are added to, and subsections (c) and (d) are renumbered in Section 1032.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1032.05.-  Income Earned by a Child.-

(a)     Services rendered by a child. Amounts received in respect of the services of a child shall be included in the child's gross income and not in the gross income of the parent, even though such amounts are not received by the child.

(b)     Other income received on behalf of a child.- For taxable years beginning after December 31, 2018, gross income items earned by or paid to a child, other than for services rendered by said child, as provided in subsection (a) shall not be treated as part of the of the child's gross income including, but not limited to, interest, dividends, gifts, pensions, awards, raffles, among others. Said income shall be included as part of the gross income of the child's parents or guardian.

(1)     The income described in subsection (b) shall be included in the tax return of the parent or guardian who has legal custody of the child. In the case both parents have joint legal custody of the child, fifty (50) percent of the income described in subsection (b) shall be distributed between each of the parents or tutors.

(c)     All expenditures paid or incurred by the parent or the child attributable to amounts which are includible in the gross income of the child and not of the parent solely by reason of subsection (a) shall be treated as paid or incun-ed by the child.

(d)     Any tax assessed against a child, to the extent attributable to amounts includible in the gross income of the child and not of the parent, solely by reason of subsection (a), shall, if not paid by the child, for all purposes be considered as having also been properly assessed against the parent.

(e)     Definitions.-

(!)     Child.- For purposes of this Section, the term 'child' means any individual who, on the last day of the taxable year during which he received the

AAFAF_CONF_0008151

income described in subsections (a) and (b) of this Section, has not reached the age of eighteen (18), unless said child becomes fully emancipated before reaching such age, through the means and criteria established in the Civil Code."

Section 23.- Section 1032.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby repealed and declared to be Reserved.

Section 24.- Subsections (c), (d), and (e) of Section 1033.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1033.02.- Expenses Not Related to the Principal Trade or Business.-

(a)    …

(b)    …

(c)    Expenses Related to the Rendering of Services as an Employee.-

(1)    …

(2)    …

(3)    Exception for taxable years beginning before January 1, 2019.- The limitation contained in paragraph (1) of this subsection shall not apply to the taxable year in which the taxpayer begins an activity which constitutes his principal trade or business, other than the rendering of services as an employee, or to the two (2) succeeding taxable years. This exception shall apply to the taxpayer only once. Provided, that this exception shall not apply for years beginning after December 31, 2018.

(4)    …

(d)    Loss of a Corporation of Individuals.-

(1)    …

(2)    …

AAFAF_CONF_0008152

(3)     For taxable years beginning after December 31, 2014 and before January 1, 2019, the amount of a pro-rata share of a shareholder in the loss of a corporation of individuals incurred during a taxable year ending within the taxable year of a shareholder, allowed as a deduction under paragraph (1) of this subsection shall not exceed eighty percent (80%) of the distributive share in the aggregate net income of the corporation of individuals, partnerships or special partnerships described in said paragraph.

(4)     For taxable years beginning after December 31, 2018, the amount of a pro-rata share of a shareholder in the loss of a corporation of individuals incurred during a taxable year ending within the taxable year of a shareholder, allowed as a deduction under paragraph (1) of this subsection shall not exceed ninety percent (90%) of the distributive share in the aggregate net income of the corporation of individuals, partnerships or special partnerships described in said paragraph.

(e)     Losses of a Partnership or Special Partnership.- …

(!)   …

(2)     …

(3)     …

(4)     …

(5)     For taxable years beginning after December 31, 2014 and before January 1, 2019, the amount of a distributive share of partner in the loss of a partnership or special partnership incurred during a taxable year ending within the taxable year of a partner, allowed as a deduction under this subsection shall not exceed eighty percent (80%) of the distributive share in the aggregate net income of the corporations of individuals, partnerships or special partnerships described in this subsection.

AAFAF _CONF _0008153

(6)     For taxable years beginning after December 31, 2018, the amount of a distributive share of partner in the loss of a partnership or special partnership incmTed during a taxable year ending within the taxable year of a partner, allowed as a deduction under this subsection shall not exceed ninety percent (90%) of the distributive share in the aggregate net income of the corporations of individuals, partnerships or special partnerships described in this subsection."

Section 25.- Subsection (a) of Section 1033.07 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1033.07.-  Depreciation, Amortization, and Depletion.-

(a)     Current Depreciation.- There shall be allowed as a deduction a reasonable allowance for the exhaustion, wear and tear, including a reasonable allowance for obsolescence of:

(1)     …

(A)     …

…

(K)     For taxable years beginning after December 31, 2018, a business that during the taxable year generates a volume of business of less than or equal to three million dollars ($3,000,000) may determine the deduction established in subparagraph (A) of this paragraph using a useful life of two (2) years for machinery and equipment, furnishings, and any other fixed asset to be used in the trade or business, except for real property, automobiles, and property subject to subparagraphs (G) and (H) of this paragraph. For purposes of this subparagraph the term 'volume of business' shall have the same meaning such term has under Section 1061.15(c) of this Code.

(2)     …

AAFAF_CONF_0008154

(3)    Limitation on Depreciation Deduction for Properties that are Automobiles.-

    (A)    …

        (i)    In the event that the taxpayer is a salesperson, the amount of the deduction to be allowed under this subsection shall not exceed ten thousand dollars ($10,000) annually per automobile up to a maximum of thirty thousand dollars ($30,000) for the useful life of the automobile. The Secretary is hereby empowered to prescribe by regulations, administrative determination, circular letter, or general information bulletin the conditions under which an individual is considered a salesperson for purposes of this clause.

        (ii)    …

    (B)    …

    (C)    …

    (D)    …

    (E)    …

    (F)    …

    (G)    Deductions for Expenses in Connection with Motor Vehicle Use and Maintenance.-  In the case of expenses incurred or paid for the use and maintenance of an automobile including, but not limited to, repairs, insurance, maintenance, gas, and related expenditures, such expenses shall not be allowed as automobile use and maintenance expenses. In lieu of such expense, there shall be allowed a deduction for the use of an automobile to carry out trade or business, computed on a standard mileage rate basis. The Secretary shall determine through regulations the standard mileage rate applicable to each taxable year. Provided, however, that for taxable years beginning after December 31, 2017, the taxpayer may claim the actual expense incurred in the use and maintenance of the automobile. However, the total expense to be claimed for use and maintenance of

AAFAF_CONF_0008155

an automobile shall not exceed the amount detem1ined by the Secretary through regulations, administrative determination, circular letter, or general information bulletin. Provided, that the mileage deduction to be established by the Secretary shall never be less than that established and published from time to time by the U.S. Internal Revenue Service, given that the cost of gasoline, vehicle purchase, and the vehicle-miles of travel, pursuant to the Roughness Index published by the federal government, exceeds the cost in the states which serves as the basis for the periodic calculation made by the U.S. Internal Revenue Service.

      (H)   …

        …

(b)   …

   "

…

Section 26.- Subparagraph (B) of paragraph (1) of subsection (a) of Section 1033.10 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1033 .10.- Charitable   Gifts   and   other   Contributions   by Corporations.-

(a)   In the case of a corporation:

(1)   Contributions or gifts shall be deducted from gross income, whose payment has been made during the taxable year to or for the use of:

(A)   …

(B)   An entity described in Sections 1101.0l(a)(l) and (2) created or organized in Puerto Rico, the United States, or in any possession thereof, or any state or territory organized and operated exclusively for the purposes described therein, and duly certified by the Secretary or the United States Internal Revenue Service, but in the case of a contribution or gift to a trust, chest, fund, or foundation only if said contribution or gift were to be used within Puerto

AAFAF _CONF_0008156

Rico or the United States or any of its possessions exclusively for such purposes, provided that no part of the net earnings of which inures to the benefit of any private shareholder or individual. Provided, that for years beginning after December 31, 2018, only contributions or gifts made to nonprofit entities certified by the Secretary as rendering services to Puerto Rico residents, shall be allowed as deductions under this Section. For denial of certain deductions for charitable contributions or gifts, otherwise admissible under this paragraph, see Sections 1083.02(e) and 1102.06; or

        (C)   …

        (D)   …

    (2)   …

    (3)   …

    (4)   …

(b)   …"

Section 27.- Subsections (b), (c), and (d) of Section 1033.14 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1033.14.- Net Operating Loss Deduction.-

(a)   …

(b)   Amount of Carryovers.-

    (!)   Net Operating Loss Carryovers.-

        (A)   …

        (B)   …

        (C)   …

        (D)   In the case of any business, including corporations and individuals, the amount to be carried over to each one of said following taxable years shall be the excess, if any, of the amount of such net operating loss over the

sum of the net income for each of the taxable years involved, provided, that for taxable years beginning after December 31, 2012, and before January 1, 2015, it shall be ninety percent (90%) of the net income, for taxable years beginning after December 31, 2014 and before January 1, 2019, it shall be eighty percent (80%) of the net income, and for taxable years beginning after December 31, 2018, it shall be ninety percent (90%) of the net income, computing such net income:

        (i)    …

        (ii)    …

        (E)    In the case of taxpayers who are individuals that show a net loss in their trade or business for three (3) consecutive years, the amount of the loss carried to the third taxable year beginning after December 31, 2014, and any taxable year thereafter shall be fifty percent (50%) of the loss incmTed in said year. For purposes of this subsection, every type of trade or business shall be considered separately and a real estate rental business shall not be considered a trade or business. Provided that the limitation imposed in this subparagraph shall not apply to years beginning after December 31, 2018.

        (2)    …

        (3)    …

        (4)    …

        (5)    …

    (c)    Amount of Net Operating Loss Deduction.- The amount of the net operating loss deduction shall be the sum of the net operating loss carried over to the taxable year reduced by the amount, if any, by which the net income computed with the exceptions and limitations provided in subsections (d)(1), (2), (3), and (5) exceeds, in the case of a taxpayer other than a corporation, the net income computed without such deduction or, in the case of a corporation, the net income subject to nom1al tax computed without said deduction.

AAFAF_CONF_0008158

(1)    In the case of a taxpayer filing as a corporation, the net operating loss deduction (computed as provided in the above paragraph) shall not exceed:

(A)    ninety percent (90%) of the net income subject to normal tax for taxable years beginning after December 31, 2012, but before January 1, 2015;

(B)    eighty percent (80%) of the net income, for taxable years beginning after December 31, 2014, but before January 1, 2019; and

(C)    ninety percent (90%) of the net income subject to normal tax for taxable years beginning after December 31, 2018.

(2)    Provided, that, in the event that a corporate partner holds, directly or indirectly, fifty percent (50%) or more of the capital interest, or the profits interest, in the partnership or special partnership, may not claim the deduction provided in this Section against the distributive share of said partnership. Provided, further, that such corporate partner shall not deduct his operating losses from the distributive share of a partnership or special partnership during the current taxable year. Notwithstanding the provisions herein, the corporate partner herein described may claim the deduction described in Section 1033.02(e) against the distributive share of a partnership or special partnership. For purposes of determining the percentage of interest, the rules established in Section 1010.05 shall be used.

(d)    Exceptions, Additions, and Limitations.-  The exceptions, additions, and limitations referred to in subsections (a), (b) and (c) shall be as follows:

(1)    …

(2)    …

(3)    …

(4)    …

AAFAF_CONF_0008159

(5)　…

(e)　…"

Section 28.- Subsections (a) and (b) of Section 1033.15 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1033.15.- Deductions Applicable to Taxpayers who are Individuals.-

(a)　For purposes of this Section, the taxpayer may claim the following items as deductions:

(1)　Deduction for Interest Paid or Accrued on Residential Property.-

(A)　In General.- …

(B)　Special Rule.- …

(C)　Limitation:

(i)　The total amount of the interest paid up to a maximum of $35,000 shall be allowed as a deduction under subparagraphs (A) and (B); provided, that said amount does not exceed the greater of:

(I)　Thirty percent (30%) of the adjusted gross income of the taxpayer, as modified pursuant to clause (ii) of the taxable year for which the deduction is claimed; or

(II)　Thirty percent (30%) of the adjusted gross income of the taxpayer, as modified pursuant to clause (ii) for any of the three (3) taxable years preceding the year in which the deduction is claimed.

(ii)　For purposes of this clause, 'adjusted gross income' of the taxpayer, as defined in Section 1031.03, shall be increased by the gross income exclusions described in Section 1031.01(b), the child support

AAFAF_CONF_0008160

payments described in Section 1032.02(a)(3), and the exempt income items described in Section 1031.02.

        (iii)   The limitation in this subparagraph (C) shall not apply when the taxpayer (or, in the case of a married individual filing a joint return, the taxpayer or his spouse) has reached the age of sixty-five (65) at the close of the taxable year.

        (D)   Definition of Qualified Residence.-  …

        (E)   Married Individuals Filing Separate Returns.-…

        (F)   Interest paid after December 31, 2016.-  …

        (G)   In order to claim a deduction under subparagraph (F) of this paragraph, the taxpayer shall submit, together with his income tax return, a sworn statement indicating:

        (i)   His full name;

        (ii)   Social Security Number;

        (iii)   Name of the natural or juridical person issuing the Infom1ation Statement required under Section 1063.04;

        (iv)   Name of the borrower and co-borrower, if applicable, of the mortgage loan for which the deduction is requested.

        (v)   Account number of the Mortgage Loan for which the deduction is requested.

        (vi)   Explanation of the circumstances that allow the taxpayer to avail himself of the provisions of this paragraph.

        (I)   The Secretary may request that the affidavit required herein be submitted electronically, but shall not require the submission of any other evidence along with the tax return to claim the deduction under subparagraph (F).

(2)     Amounts representing interest paid to cooperative housing association. -

(A)   Allowance of Deduction.- ...

(i)      …

(ii)   Limitation.- The total amount of interest attributable to the tenant-stockholder shall be allowed as a deduction under subparagraph (i); provided, that said amount does not exceed the greater of:

(I)     Thirty percent (30%) of the adjusted gross income of the taxpayer, as modified pursuant to subparagraph (iii), of the taxable year for which the deduction is claimed, or

(II)    thirty percent (30%) of the adjusted gross income of the taxpayer, as modified pursuant to subparagraph (iii), for any of the three (3) preceding taxable years for which the deduction is claimed.

(iii)    For purposes of subparagraph (ii), adjusted gross income of the taxpayer, as defined in Section 1031.03, shall increase by the gross income exclusions described in Section 1031.0l(b), the child support payment described in Section 1032.02(a)(3) and exempt income items described in Section 1031.02.

(iv)   The limitation in subparagraph (ii) shall not apply when the taxpayer (or, in the case of a married individual who is not filing a separate return, the taxpayer or his/her spouse) has reached the age of sixty-five (65) at the close of the taxable year.

(B)   Definitions.- ...

(3)   Charitable contributions and other gifts.-

(A)    …

(B)   Limitation.- The deduction allowed under this clause shall be subject to the following limitations:

AAFAF_CONF_0008162

(i)    In the case of contributions or gifts to:

(I)    …

(II)   …

(III)   Nonprofit entities described in Section 1101.0l(a)(2) duly qualified by the Secretary or the United States Internal Revenue Service (other than gifts described in subparagraph (ii)); provided, that for taxable years beginning after December 31, 2014, only charitable contributions and gifts made to nonprofit entities qualified by the Secretary that provide services to Puerto Rico residents shall be accepted; and

(IV)   …

…

(ii)   …

(iii)   …

(iv)   …

(C)   …

(D)   …

(E)   …

(4)   …

(5)   …

(6)    Contributions to certain pensions or retirement systems.- For taxable years beginning before January 1, 2019, any contribution of money made by an individual to a pension or retirement system of a general character established by the Congress of the United States, the Legislative Assembly of Puerto Rico, the Government of the Capital, the municipalities and the agencies, instrumentalities and public corporations of the Goven1ment of Puerto Rico to the extent such contribution is included in the taxpayer's gross income for the taxable year. Provided, that, for taxable years beginning after December 31, 2018, these

HEIN EXHIBIT 83

contributions shall be treated as a reduction to the salary subject to income taxes as provided in Section 1081.01.

    (7)    Retirement Savings.-

        (A)   …

        (B)   …

        (C)   …

        (D)   …

        (E)   …

        (F)   …

        (G)   …

    (8)    Savings for Education.-

        (A)   …

        (B)   …

        (C)   …

        (D)   ...

        (E)   ...

    (9)    Contributions to Health Savings Accounts.-For taxable years beginning before January 1, 2019, the contributions to Health Savings Accounts during the taxable year shall be subject to the provisions of Section 1081.04.

    (10)   Loss of Property as a Result of Certain Acts of God.-

        (A)   …

        (B)   …

    (b)    An individual who claims one or more deductions allowable under this Section shall attach to his income tax return any cancelled checks, receipts, or certifications as proof for the deductions claimed. The preceding notwithstanding, the Secretary may, when he deems pertinent, or in cases in which the electronic filing of the income tax return is mandatory, exempt the taxpayer from this

requirement for any particular taxable year. The taxpayer shall keep the evidence in connection with the deduction claimed under this paragraph for a period of six (6) years."

Section 29.- Subsections (a), (b), and (e) are hereby amended and subsection (h) is hereby added to Section 1033.17 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1033.17.- Non-deductible Items.-

(a)      General Rule.- In computing the net income, in no case shall deductions be allowed with respect to:

(1)      …

…

(16)   In the case of entities filing under Chapter 7 or Subchapters D or E of Chapter 11 of Subtitle A, for purposes of determining the item specified in:

(A)      …

…

(D)      …

(E)      The Secretary may evaluate, under the rules and regulations he promulgates, at the request of the entity, which shall be submitted within the first taxable year included in the request, the nature of the expenses or costs paid to a partnership, stockholder, or member described in subparagraph (C) of this paragraph, in order to determine if any of such expenses or costs shall be excluded from the provisions of this paragraph; provided, that such exclusion shall apply only for a maximum of three (3) taxable years; however, the taxpayer shall be entitled to submit a request for subsequent terms after such term has expired and that, for taxable years beginning after December 31, 2014, and before January 1, 2019, the total expenses that may be excluded from the provisions of such subparagraph shall not exceed sixty percent (60%) of the total expenses described

AAFAF_CONF_0008165

in said subparagraph for taxable years beginning after December 31, 2014, and before January 1, 2019, except in the case of entities subject to the provisions of Act No. 55 of May 12, 1933, known as the 'Banking Law' or entities organized or authorized under the National Bank Act doing business in Puerto Rico, which may exclude up to one hundred percent (100%) of the expenses described in subparagraph (C) of this paragraph as determined by the Secretary.

(F)   Provided, that, for taxable years beginning after December 31, 2018, the limitation provided in this paragraph shall not apply if the entity submits to the Secretary, together with the income tax return, a transfer pricing study that includes an analysis of the operations conducted in Puerto Rico, prepared in accordance and in compliance with the requirements of Section 482 of the United States Internal Revenue Code of 1986, Title 26 of the United States Code, as amended, and duly revised by the U.S. Internal Revenue Service. Provided, that, in the case of groups of related entities in which none of the entities conduct operations in the United States, the transfer pricing study may be prepared as per the Organization for Economic Co-operation and Development (OECD). The Secretary may deny such studies he deems do not meet the requirements of this paragraph; provided, that the Secretary determines by a preponderance of the evidence that such transfer pricing studies fail to comply with the rules, regulations, and interpretations issued under Section 482 of the United States Internal Revenue Code of 1986 or its equivalent in the OECD. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the validity of the transfer pricing study under this paragraph.

(17)   Fifty-one percent (51%) of the expenses incurred by a taxpayer and paid or to be paid to:

(A)   …

(B)   …

(C)   …

(D)   The Secretary may evaluate, under the rules and regulations he promulgates, at the request of the taxpayer, which shall be submitted within the first taxable year included in the request, the nature of the expenses or costs paid to a related party or home office in order to determine if any of such expenses or costs shall be excluded from the provisions of this paragraph; provided, that such exclusion shall apply only for a maximum of three (3) taxable years; however, the taxpayer shall be entitled to submit a request for subsequent terms upon expiration of such term, and that, for taxable years beginning after December 31, 2014 and before January 1, 2019, the total expenses that may be excluded from the provisions of this subparagraph shall not exceed sixty percent (60%) of the total expenses described in this subparagraph for taxable years beginning after December 31, 2014 and before January 1, 2019, except in the case of entities subject to the provisions of Act No. 55 of May 12, 1933, known as the 'Banking Law' or  entities organized or authorized under the National Bank Act doing business in Puerto Rico, which may exclude up to one hundred percent (100%) of the expenses described in this subparagraph as determined by the Secretary.

(E)   Provided, that, for taxable years beginning after December 31, 2018, the limitation provided in this paragraph shall not apply if the entity submits to the Secretary, together with its income tax retun1, a transfer pricing study that includes an analysis of the operations conducted in Puerto Rico, prepared in accordance and in compliance with the requirements of Section 482 of the United States Internal Revenue Code of 1986, Title 26 of the United States Code, as amended, and duly revised by the U.S. Internal Revenue Service. The Secretary may deny such studies he deems do not meet the requirements of this paragraph. The Secretary shall prescribe by regulations, administrative

AAFAF_CONF_0008167

determination, circular letter, or general infonnation bulletin the validity of the transfer pricing study under this paragraph; provided, that the Secretary detem1ines, by a preponderance of the evidence, that such transfer pricing studies fail to comply with the rules, regulations, and interpretations issued under Section 482 of the United States Internal Revenue Code of 1986.

(18) …

(19) Expenses incurred or paid for servIces rendered by a nonresident individual if the taxpayer has not paid the Sales and Use Tax imposed under Subtitle D and/or Subtitle DDD of this Code, on such services. This paragraph (19) shall not apply if the services are subject to an exclusion or exemption from the payment of the Sales and Use Tax.

(20) …

(b) Losses from the Sale or Exchange of Property.-

(!) Losses disallowed.- In computing net income no deduction shall be allowed in any case with respect to losses from sales or exchanges of property, directly or indirectly:

(A) …

(B) …

(C) Except in the case of distribution in liquidation, between two (2) corporations, or between two (2) partnerships, special partnerships or corporations of individuals or between one (1) corporation and one (1) partnership, special partnership, or corporations of individuals in which more than fifty percent (50%) in value of the issued stock or capital thereof is owned, directly or indirectly, by or for the same individual;

(D) …

(E) …

(F) …

AAFAF _CONF _0008168

(2)     Stock ownership, family and partnership, special partnership or corporation of individuals r u l e . - For purposes of determining, in applying clause (1), the ownership of stock or the interest in partnership, special partnership or corporation of individuals (hereinafter, partnerships) capital:

(A)     …

(B)     …

(C)     …

(D)     …

(3)     Losses disallowed from the sale or other disposition of certain automobiles.- Notwithstanding the provisions in Section 1033.05 (a) and (b), in the case of any automobile, as defined in Section 1033.07(a)(3)(B), no deduction whatsoever shall be allowed with respect to losses from the sale or other disposition thereof.

(c)     …

(d)     …

(e)     Food, Entertainment, Travel, and Lodging expenses, and expenses for Attending Conventions held Outside of Puerto Rico and the United States.-

(!)     Food and Entertainment Expenses.-

(A)     General Rule.- For taxable years beginning before January 1, 2019, there shall be no deduction for food and entertainment expenses in excess of fifty percent (50%) of the amount actually paid or incurred up to a limit of twenty-five percent (25%) of the gross income for the taxable year, without considering as part of said expenses the items that otherwise would not constitute ordinary and necessary expenses of a trade or business or of an activity for the production or collection of income, or for the administration, conservation or maintenance of property held for the production of income. Provided, that, for taxable years beginning after December 31, 2018, the deductible amount for food

AAFAF _CONF _0008169

and entertainment expenses shall be limited to twenty-five percent (25%) of the amount actually paid or incurred up to a maximum of twenty five percent (25%) of the gross income for the taxable year.

(B)     …

(C)     …

(2)     Travel and Lodging Expenses.-

(A)     General Rule.- For taxable years beginning after December 31, 2018, travel and lodging expenses in excess of fifty percent (50%) of the amount actually paid or incurred shall not be deducted.

(B)     Definitions.-

(i)     Travel or Lodging Expenses.- Includes all expenses incmTed while traveling away from home in the pursuit of a trade or business, for transportation, whether by private or public car service, by rail, air, bus, taxi, or any other modes of transportation, except for motorcycles. It also includes incidental travel expenses as are necessary in the conduct of trade or business, such as hauling, storage, parking fees and tolls. Travel and lodging expenses do not include amounts expended for meals and entertainment while away from home. Such expenses shall be subject to the provisions of paragraph (1) of this subsection (e).

(ii)     Activities Related to Trade or Business.- When an employer or immediate supervisor assigns an individual or employee to perform the duties and functions of his position and other compatible duties away from the area of his principal home. In the case of self-employed individuals, when required by the client or the type of service to be provided, must be performed away from the area of his principal home.

(3)     Expenses for Attending Conventions Held Outside of Puerto Rico and the United States.-

AAFAF_CONF_0008170

      (A)   …

      (B)   …

      (C)   …

      (D)   …

      (E)   …

(f)   …

(g)   …

(h)   Settlement payment and expenses related to harassment cases.- For taxable years beginning after December 31, 2018, no deduction shall be allowed for any settlement related to harassment, including attorney's fees related thereto, if such settlement is subject to a nondisclosure agreement."

Section 30.- Section 1033.21 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1033.21.- Deduction for Private Employers that Hire Young University Students.-

(a)   For taxable years beginning after December 31, 2018, a private employer may claim a one hundred and fifty percent (150%) deduction for each young university student hired for at least twenty (20) hours a week during nine (9) months of the taxable year or a minimum of eight hundred (800) hours during the taxable year; provided, that the hourly wage paid to said young university student is greater than ten dollars ($10) per hour and said wage is duly reported in a withholding statement. Provided, that, in the case of students who come from the Department of the Treasury's internship program, the deduction shall be two hundred percent (200%) if the requirement provided in the preceding section is met.

(b)     The term 'young university student' means a student who has completed during said calendar year at least one semester at the post-secondary level, as regular student, in a university or professional technical institution recognized as such by the education authorities in Puerto Rico or in the corresponding country, until said student completes a university or professional technical degree or has completed his education within a term not to exceed twelve (12) months from the commencement date of employment.

(c)     The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the information and evidence to be submitted by every private employer claiming this deduction."

Section 31.- Paragraph (1) of subsection (c) of Section 1034.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1034.01.- Capital Gains and Losses.-

(a)     ...

(b)     ...

(c)     Limitation on Capital Losses.-

(!)     Corporations.- In the case of a corporation, losses from the sale or exchange of capital assets incurred in a taxable year shall be allowed only up to the amount of the gains from such sale or exchange generated during said taxable year. Provided, that in the case of losses carried over from previous taxable years, such losses shall be allowed up to ninety percent (90%) of the net gain from the sale of capital assets occurred during the taxable year in which the loss is claimed, for taxable years beginning after December 31, 2013 and ending before January 1, 2015; and up to eighty percent (80%) of the net gain generated from the sale of capital assets made during the taxable year in which the loss is claimed, for taxable

AAFAF_CONF_0008172

years beginning after December 31, 2014, but not before January 1, 2019, and ninety percent (90%) for taxable years beginning after December 31, 2018.

       (2)   ...

       (3)   ...

   "

...

Section 32.- Paragraph (3) of subsection (a) of Section 1035.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1035.01.- Income from Sources Within Puerto Rico.-

(a)    Gross Income from Sources within Puerto Rico.- The following items of gross income shall be treated as income from sources within the Puerto Rico:

       (1)   ...

       (2)   ...

       (3)   Personal Services.- Compensation for labor or personal services performed in Puerto Rico but in the case of labor or services performed by a nonresident individual temporarily present in Puerto Rico for a period or periods not exceeding a total of ninety (90) days during the taxable year the compensation received by such individual (if such compensation does not exceed three thousand dollars ($3,000) in total) for labor or services performed as an employee of or under a contract with, a nonresident individual, foreign partnership, or foreign corporation, not engaged in trade or business within Puerto Rico shall not be deemed to be income from sources within Puerto Rico.

       (A)    Exception.- In the case of services rendered to any agency, entity, or instrumentality of the Government of Puerto Rico, public corporation, as well as the Legislative Assembly, the Judicial Branch, and the Municipalities, or any other entity created by state or federal law, whose funds originate from the General Fund, whether in whole or in part, such income shall be

AAFAF_CONF_0008173

deemed to be income from sources within Puerto Rico, even when the service is rendered outside of Puerto Rico.

       (4)    ...

  "

...

Section 33.- Paragraph (3) of subsection (a) of Section 1035.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1035.02.- Income from Sources Outside of Puerto Rico.-

(a)    Gross Income from Sources outside Puerto Rico.- The following gross income items shall be treated as income from sources outside Puerto Rico:

       (1)    ...

       (2)    ...

       (3)    Compensation for labor or personal services performed outside Puerto Rico, except for services rendered to any agency, entity, or instrumentality of the Government of Puerto Rico, public corporation, as well as the Legislative Assembly, the Judicial Branch, and the Municipalities, or any other entity created by state or federal law, whose funds originate from the General Fund, whether in whole or in part.

       (4)    ...

  "

...

Section 34.- Section 1035.08 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1035.08.- Sale of Interest in a Partnership.-

In the case of sales of interest in partnerships occurring after December 31, 2018, any earnings, profits, or income derived from the sale of interest in a partnership generating income from sources within Puerto Rico shall constitute

income from sources within Puerto Rico to the extent the partnership would have generated income from sources within Puerto Rico if it had sold all capital assets of the partnership at market value, notwithstanding the residency of the partner selling the interest and notwithstanding the provisions of paragraph (3) of subsection (a) of Section 1035.03. In the event the selling partner is a non-resident individual or an entity not engaged in trade or business in Puerto Rico, the buyer shall be required to withhold at source a fifteen percent (15%) tax on the portion of the earnings considered income from sources within Puerto Rico by virtue of the provisions of this Section. The withholding provided in this subsection shall be made in accordance with Section 1062.08(k) of this Code. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the requirements to determine the amount subject to taxation under this Section."

Section 35.- Subsection (a) of Section 1051.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1051.01.- Taxes of the United States, Possessions of the United States, and Foreign Countries.-

(a)      …

(1)      Citizens and Domestic Corporations.- In the case of an individual who is a United States citizen resident of Puerto Rico and of a domestic corporation or partnership, the amount of any income tax and excess-profits taxes paid or accrued during the taxable year to the United States, any possession of the United States, any foreign country, or any state of the United States; and

(2)      Alien Resident of Puerto Rico.- In the case of an alien resident of Puerto Rico, the amount of any such taxes paid or accrued during the taxable year to the United States, or any possession of the United States or any state of the

AAFAF_CONF_0008175

United States, and to any foreign country, if the foreign country of which such alien resident is a citizen or subject, in imposing such taxes, allows a similar credit to citizens of the United States residing in such country; and

      (3)    …

   "

…

Section 36.- Section 1051.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1051.04.- Credit for Investment in Securities of Qualified Businesses.-

For taxable years beginning before January 1, 2018, the credit against tax for investment and loss of investment in securities of qualified businesses shall be regulated by the corresponding provisions of law which are in force or any others that may be approved to that effect."

Section 37.- Subsection (a) of Section 1051.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1051.05 .- Investment Increase Credit.-

(a)    For taxable years beginning before January 1, 2018, the tax imposed by this Subtitle on the dividends derived from industrial development income received by corporations organized under the laws of any state of the United States engaged in trade or business in Puerto Rico shall be credited by three percent (3%) of the investment made by the subsidiary before January 1, 1993, in the acquisition, construction and enlargement of buildings and other structures used in the manufacture in excess of the investment in such properties possessed by the subsidiary as of March 31, 1977. In the case of corporations which have not enjoyed tax exemption under Act No. 73-2008, known as the 'Economic Incentives

AAFAF _CONF _0008176

Act for the Development of Puerto Rico,' or any other preceding similar law, any other law that substitutes or supplements them, for two (2) taxable years, this credit shall be allowed to the parent corporation for the increase in investments made by the subsidiary after the termination of its second year of tax exemption. This credit may be can-ied forward to subsequent taxable years.

(b)     …"

Section 38.- Subsection (a) of Section 1051.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1051.06.- Credit for Donations to the Santa Catalina Palace Endowment *(Patronato del Palacio de Santa Catalina)*.-

(a)     Amount of the Credit.- For taxable years beginning before January 1, 2018, a tax credit shall be granted against the tax imposed by this Subtitle for donations made or generated as a result of the efforts of the Santa Catalina Palace Endowment. The amount of said credit shall be one hundred percent (100%) of the amount donated during the taxable year.

(b)     …
       "
…

Section 39.- Subsection (a) of Section 1051.07 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1051.07.- Credit for Increase in Procurements of Puerto Rican Agricultural Products.-

(a)     In General.-

(1)     For taxable years beginning before January 1, 2018, every eligible business that increases the purchase, whether directly or through related parties, of Puerto Rican agricultural products in lieu of products imported to be

AAFAF_CONF_0008177

sold locally, may claim a credit against the tax imposed under Subtitle A, as provided in this Section.

   (2) …

 (b) …

 (c) …"

Section 40.- Subsection (a) of Section 1051.09 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1051.09 .-  Credit for Purchasing Products Manufactured in Puerto Rico.-

 (a) For taxable years beginning before January 1, 2013, any eligible business that purchases eligible products manufactured in Puerto Rico, including components and accessories, shall be entitled to claim a credit against the taxes established in Subtitle A, as provided in subsection (c) of this Section.

 (b) …

  "

…

Section 41.- Section 1051.10 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1051.10.- Credit for Donations to Foundations of Former Goven1ors.-

 (a) Amount of the Credit.- A tax credit shall be granted against the tax imposed by this Subtitle for donations made to foundations of former governors for operating expenses and such expenses relating to the purposes for which they were created and/or those donations made to the Depository for Archives and Memorabilia of Former Governors and Former First Ladies of Puerto Rico established in accordance with the provisions of Act No. 290-2000 alone or in

conjunction with public or private higher education institutions in order to defray construction costs, operating expenses, and any other action needed to faithfully comply with the purposes of Act No. 290-2000. The amount of said credit shall be one hundred percent (100%) of the amount donated during the taxable year.

(b)     Requirements.- For taxable years beginning after December 31, 2018, any foundation of former governors shall meet the following requirements:

(1)     To be actively operating at the time of receipt of any donations.

(2)     To hold a tax exemption certificate in effect issued by the Department of the Treasury.

(3)     To send to the Committee on Legislative Funds for Community Impact, an annual certification not later than by February 28 of the following year, stating in detail all the social welfare, educational, and community development activities carried out in Puerto Rico.

(c)     This credit shall be in lieu of the deduction for donations granted under Section 1033.15(a)(3). The amount of the credit that cannot be claimed in the taxable year in which the donation is made may be cmTied forward to subsequent taxable years until used in its entirety.

(d)     The tax credits to be granted shall not exceed five hundred thousand dollars ($500,000) in the aggregate for any taxable year.

(e)     Verification.- All individuals, corporations, or partnerships that claim the tax credit set forth herein must attach a certification issued by the receiving entity to their income tax return as evidence that the donation was made and accepted, and that certifies that such entity is compliant with the provisions of subsection (b) of this Section."

Section 42.- Subsections (a), (b), (c), and (d) of Section 1051.11 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

AAFAF_CONF_0008179

"Section 1051.11.- Reissue of Tax Credit Moratorium.-

(a)     Granted or Purchased Credits.- Notwithstanding the provisions of this Subtitle and of any other special laws, any natural or juridical person that, before June 30, 2013, has purchased or has been granted any credit subject to moratorium listed in subsection (b) of this Section may use the same against the income taxes imposed under this Subtitle only up to the amount provided in Section 1051.13 of this Subtitle. Provided, that any person that has been granted a credit subject to the moratorium provided herein may sell or assign the same and the purchaser or assignee shall be subject to the rules established in Section 1051.13 of this Code. When such credits are purchased, attesting evidence of the date of acquisition of such credit shall be filed along with the income tax return corresponding to the taxable year in which the credit is claimed. Such evidence may consist of a copy of the affidavit filed with the Department of the Treasury at the time of purchase of the c01Tesponding credit.

(b)     Credits Subject to Moratorium.- Credits subject to moratorium shall be those granted under the following provisions:

(1)     …

…

(5)     Subsections (E) and (F) of Section 4.03 and Section 4.04 of Act No. 212-2002, as amended, known as the 'Urban Centers Revitalization Act'; however, in the case of credits granted under subparagraph (A) of paragraph (5) of subsection (a) of Section 1051.12 of this Subtitle, the moratorium shall apply in the following manner:

(A)     Credits granted during Fiscal Year 2013-14: only up to fifty percent (50%) of such credit may be claimed for taxable years beginning after December 31, 2013, and before January 1, 2015; likewise, up to fifty percent (50%) may be claimed in taxable years beginning after December 31, 2014, and

AAFAF_CONF_0008180

before January 1, 2016; and any balance of the credit may be claimed in subsequent taxable years, subject to the provisions of subsection (c) of this Section;

(B)    Credits granted during Fiscal Year 2014-15: only up to fifty percent (50%) of such credit may be claimed for taxable years beginning after December 31, 2014, and before January 1, 2016; likewise, up to fifty percent (50%) may be claimed in taxable years beginning after December 31, 2015, and before January 1, 2017; and any balance of the credit may be claimed in subsequent taxable years subject to the provisions of subsection (c) of this Section;

(C)    Credits granted during Fiscal Year 2015-16: only up to fifty percent (50%) of such credit may be claimed for taxable years beginning after December 31, 2015, and before January 1, 2017; likewise, up to fifty percent (50%) may be claimed in taxable years beginning after December 31, 2016, and before January 1, 2018; and any balance of the credit may be claimed in subsequent taxable years subject to the provisions of subsection (c) of this Section;

(D)    Credits granted during Fiscal Year 2016-17: in accordance with Section 1051.15, only up to fifty percent (50%) of such credit may be claimed for taxable years beginning after December 31, 2016, and before January 1, 2018; likewise, up to fifty percent (50%) may be claimed in taxable years beginning after December 31, 2017, and before January 1, 2019, subject to the provisions of subsection (c) of this Section;

(E)    Credits granted during Fiscal Year 2017-18: in accordance with Section 1051.15, only up to fifty percent (50%) of such credit may be claimed for taxable years beginning after December 31, 2017, and before January 1, 2019; likewise, up to fifty percent (50%) may be claimed in taxable years beginning after December 31, 2018, and before January 1, 2020; and any balance of the credit may be claimed in subsequent taxable years, subject to the provisions of subsection (c) of this Section; and

AAFAF_CONF_0008181

(F)   Credits granted during Fiscal Years 201 8-19 through 2023-24; only up to fifty percent (50%) of the credit granted may be claimed for taxable years beginning after the first semester of the fiscal year in which the tax credit is granted has ended; and any balance of the credit may be claimed in subsequent taxable years, subject to the provisions of subsection (c) of this Section.

(6)   …

…

(c)   Any expiration date or period established to claim any of the credits listed in subsection (b) of this Section shall be deemed to be suspended and any balance of the credit available to be claimed in taxable years beginning after December 31, 2016 shall be subject to the provisions of Section 1051.13.

(d)   Infom1ation Return.- In order to claim, after January 1, 2013, any of the credits listed in subsection (b) of this Section and any other credit granted under Act No. 78-1993, as amended, Act No. 74-2010, as amended, Act No. 362-1999, as amended, Act No. 27-2011, Sections 3(b), 5(b), and 5A of Act No. 135-1997, as amended, Sections 5 and 6 of Act No. 73-2008, as amended, Section 2.1l(c) of Act No. 183-2010, Act No. 77-2015, and Sections 4050.10, 1051.04, 1051.05, 1051.06, 1051.07, 1051.10, 1051.14, and 1113.14 of this Subtitle, it shall be an indispensable requirement to have filed the information returns due on or before July 31, 2013 and on or before April 19, 201 7, reporting the amount of the credits held, in the fom1 and including the details thus required by the Secretary.

(1)   In the taxable years beginning after December 31, 2015, when the Secretary thus requires, the holder of the tax credits shall submit, on the date determined by the Secretary, an information return under penalty of perjury, in the fom1 and including the details prescribed by the Secretary, reporting the amount of the tax credits granted or acquired by purchase including, but not limited to, the amount of the credit to be claimed, and the balance available but not used for the

AAFAF _CONF _0008182

taxable years required by the Secretary. The Secretary may require a copy of the documents that attest to the granting and approval of the tax credits reported in said information return.

(2)    Credits subject to moratorium, as well as those that are not subject thereto and that are not included in such infom1ation return, may not be claimed unless the Secretary of the Treasury determines that there was a reasonable cause to exclude them from the information return."

Section 43.- Subsections (a), (b), (c), and (d) of Section 1051.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1051.12.- Reissue of Moratorium to Tax Credits Granted under Certain Special Laws.-

(a)    Notwithstanding the provisions of this Subtitle and any other special laws, for taxable years beginning after December 31, 2012, no tax credits shall be granted; thus, no agency, public corporation, instrumentality, municipality, or entity of the Government of Puerto Rico may evaluate, process, grant, or extend any tax credit or authorize any project or transaction that results or may result in the generation of tax credits under the provisions stated below:

(1)    …

…

(4)    Subsection (a) of Section 17 of Act No. 183-2001, as amended, known as the 'Puerto Rico Conservation Easement Act'; however, during fiscal years 2013-2014 through 2023-2024, the tax credits covered under the provisions of this paragraph may be granted up to the amount of ten million dollars ($10,000,000) for each year;

(5)    Subsections (E) and (F) of Section 4.03 and Section 4.04 of Act No. 212-2002, as amended, known as the 'Urban Centers Revitalization Act';

AAFAF_CONF_0008183

except for any construction project started as of July 1, 2013, and any project under this Act subject to the provisions of subparagraph (A) below, or tourist activity projects, as such term is defined in Act No. 78-1993, as amended, known as the 'Tourist Development Act of 1993' and Act No. 74-2010, as amended, known as the 'Puerto Rico Tourist Development Act of 2010'; or affordable housing development projects for sale or rental, or elderly facilities, as well as any other project subject to the following:

(A)    Notwithstanding the moratorium established in this paragraph, during fiscal years 2013-2014 through 2023-2024 the tax credits covered under the provisions of this paragraph may be granted to those projects with a certificate of eligibility filed with the Department of the Treasury until June 30, 2013, up to forty million dollars ($40,000,000) for fiscal years 2013-2014 and 2014-2015, and twenty million dollars ($20,000,000) for fiscal years 2015-2016 through 2023-2024. Provided, that for fiscal year 2013-2014, no tax credit granted to a project shall exceed fifteen million dollars ($15,000,000), and for fiscal years 2014-2015 through 2023-2024 five million dollars ($5,000,000).

(B)    Provided, that, in accordance with the amendments to Act No. 212-2002, introduced by Section 8l of Act No. 187-2015, no applications to such effect shall be accepted and no incentives, credits, deductions, and other benefits shall be granted in relation to projects that were not under construction as of June 30, 2015 or that have not filed the certificate of eligibility with the Department of the Treasury as of June 30, 2016.

Municipalities may only evaluate and grant certificates of compliance to projects with a certificate of eligibility filed with the Department of the Treasury through June 30, 2016, subject to the availability established in subparagraph (A). However, municipalities may only issue certificates of compliance through December 31, 2019. The Department of the Treasury shall not

AAFAF_CONF_0008184

grant tax credits to projects whose certificates of compliance were issued after said date.

      (6)    Subsection (a) of Section 3 of Act No. 140-2001, as amended, known as the 'Tax Credits for Investment in New Construction and Rehabilitation of Affordable Housing Act';

      (7)    Subsections (a) and (b) of Section 4 of Act No. 98-2001, as amended, known as the 'Tax Credits for Investments in Housing Infrastructure Act.' However, it is hereby established that tax credits may be granted to projects started before March 9, 2009, during fiscal years 2013-2014 through 2023-2024 up to five million dollars ($5,000,000) for each year; and

      (8)    Section 1051.09 of this Subtitle.

    (b)    Exception.- The provisions of subsection (a) shall not apply to tax credit requests filed before June 30, 2013 with the Department of the Treasury or any other agency, public corporation, instrumentality, or entity of the Government of Puerto Rico granting such tax credits; provided that all the requirements set forth in the 'Internal Revenue Code for a New Puerto Rico,' as amended, as well as in any law applicable to such credits, and in any regulations, circular letter, or other general administrative detem1ination or communication governing such requests are fully met, so that the Secretary, or such agency, public corporation, instrumentality, or entity of the Government of Puerto Rico granting said tax credits may be able to recognize such credits without requiring any additional document. Otherwise, the provisions of subsection (a) shall apply.

    (c)    Credits that have been granted, awarded or otherwise recognized under the exception provided in subsection (b) of this Section, under the provisions of the laws under which such credits were granted, may be sold or assigned and the purchaser or assignee shall be subject to the rules established in Section 1051.13 of this Code.

AAFAF_CONF_0008185

(d)     The Secretary is hereby directed to:

(1)     Establish a Register of Tax Credits, before December 1, 2013, which shall include all the information gathered in accordance with subsection (d) of Section 1051.11 of this Subtitle; and

(2)     Conduct a thorough analysis of any tax credit granting laws so as to evaluate the impact thereof on the revenues of the treasury and their effectiveness in generating economic activity and development, and submit to the Legislative Assembly a report on this matter with his recommendations on or before December 1, 2013. The analysis on the effectiveness of generating economic activity and development shall be made in coordination with the appropriate agencies to ensure a thorough and all-encompassing analysis on the effectiveness of tax credits."

Section 44.- Subsection (a) is hereby amended and subsection (b) is hereby added to Section 1051.13 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1051.13.- Rules for the Use of Tax Credits Subject to Moratorium under Sections 1051.11 and 1051.12.-

(a)     Limitation on use.-

(1)     Any natural or juridical person that has purchased or has been granted any of the credits subject to moratorium before June 30, 2013, under Section 1051.11, or under Section 1051.12 of this Subtitle, may claim the same against the income taxes imposed under this Subtitle or any special law during taxable years beginning after December 31, 2012 and before January 1, 2017, and taxable years beginning after December 31, 2017, only up to the amount set forth in the provisions under which the credit was granted, but shall never reduce the taxes imposed under this Subtitle by more than fifty percent (50%).

AAFAF_CONF_0008186

(2)    However, except as provided in Section 1051.15(c), for taxable years beginning after December 31, 2016, and before January 1, 2018, the amount of the credit to be used against the income taxes imposed under this Subtitle or under any special law may not reduce the tax by more than twenty-five percent (25%)."

Section 45.- Subsection (a) of Section 1051.14 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1051.14.- Credit for the Purchase or Broadcast of a Television Program Made in Puerto Rico.-

(a)    In General.- Any television station that purchases or broadcasts programs made in Puerto Rico by independent producers in which ninety percent (90%) or more of the actors employed are Puerto Rico residents, may claim a credit against the tax imposed under Subtitle A, as provided in this Section. Provided, that such credit may not be claimed in relation to a program that qualifies for the benefits provided under Act No. 27-2011, known as the 'Puerto Rico Film Industry Economic Incentives Act,' or any similar prior or successor law.

(b)    …
      …"
…

Section 46.- A new Section 1051.15 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1051.15.- Credits Approved during the Existence of the Disbursement and Tax Concession Authorization Committee.-

(a)    Definitions - The following terms shall have the meaning stated below:

AAFAF_CONF_0008187

(1)     FAFAA - The Puerto Rico Fiscal Agency and Financial Advisory Authority.

(2)     Committee - The Disbursement and Tax Concession Authorization Committee created by virtue of the provisions of Administrative Order OA-2017-01, issued FAFAA by virtue of the faculties granted under Act No. 2-2017 and Act No. 5-2017, and rendered without effect, prospectively, by virtue of Administrative Order OA-2018-10 issued by FAFAA on July 2, 2018.

(3)     Regulatory Agency - Means any goven1ment agency that, as of the date of Order 2017-01 issued by FAFAA was empowered under a tax incentive law to grant tax incentives, file eligibility reports, and/or administer the review and approval of tax credit requests.

(b)     Actions and Determinations of the Committee - Subject to the provisions of subsection (c) of this Section, the actions taken and determinations made by the Committee during its existence shall continue to be in full force and effect for taxable year 2017. Such determinations include rules for use, limitations, and any condition stated in the notice of determination issued by the Committee. Hence, every holder of a tax credit approved by the Committee during its existence, shall continue to be subject to the conditions and limitations imposed by the Committee on the use of such tax credit for taxable year 2017. The foregoing applies also to Credits Granted as of the date of the Administrative Order 2017-01 and Self-determined Credits in the income tax returns until Taxable Year 2017, as such terms were defined in Resolutions 2017-01, 2017-05, and 2017-09 issued by the Committee. The determinations issued by the Committee shall govern and prevail over the provisions of this Code or any special law in the event of inconsistency between them.

(1)     Provided, that for taxable years beginning after December 31, 2017, said tax credits shall not be subject to the limitations provided in the

AAFAF_CONF_0008188

resolutions issued by the Committee during its existence, thus, such credits shall only be subject to the rules for use established in the special law under which the tax credit is granted and the applicable provisions of the Code. However, credits covered under paragraphs (4), (5), and (7) of subsection (a) of section 1051.12 shall be subject to the limitations on use provided in Section 1051.13.

(c)     Requests for Dispensations or Reconsideration of the Committee's Determinations.- Any request for dispensation or reconsideration of the determinations issued by the Committee during its existence may be evaluated and approved by the Department of the Treasury or the pertinent Regulatory Agency, as the case may be, taking into account how such concession may contribute to reactivate Puerto Rico's economy, in terms of investment and jobs. Provided, that prior to the approval thereof: the Regulatory Agency shall request the endorsement of the Secretary, and the latter shall evaluate, within his oversight duties, the impact that such concession may have, if any, on the Certified Fiscal Plan and the General Fund Liquidity Plan. If the dispensation is granted, the tax credit shall be goven1ed by the rules for use established in the law under which such credit was granted or the applicable provisions of the Code. The holders of tax credits shall have until December 31, 2018 to file their requests for dispensation or reconsideration of the determinations issued by the Committee.

(d)     Tax Credits Approved as of the Date of Dissolution of the Committee.- As of July 2, 2018, any request for tax credit that was not approved by the Committee before its date of dissolution shall be evaluated and approved by the pertinent Regulatory Entity or the Department of the Treasury, as the case may be, following the procedures and criteria established by law or any applicable regulations, circular letter, or administrative determination prior to the creation of the Committee. Provided, that the Regulatory Agency shall send a copy to the Secretary of the document whereby the tax credits were granted, for the sound

AAFAF_CONF_0008189

administration and oversight of the tax credits, pursuant to the Certified Fiscal Plan and the General Fund Liquidity Plan.

(1)     Tax credits approved under this subsection, including Self-determined Credits in the income tax retun1s for taxable year 2018, and thereafter, shall not be subject to the limitations provided in the resolutions issued by the Committee during its existence, thus, these shall be subject only to the rules for use established in the special law under which tax credits are granted and the applicable provisions of the Code."

Section 47.- Subsections (a), (b), (c), (d), and (g) are hereby amended and subsection (h) is hereby added to Section 1052.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1052.01.-  Earned Income Credit.-

(a)     Allowance of Credit.- As provided in this Section, there shall be allowed a credit against the income tax for the entire year to any individual resident of Puerto Rico who earns gross income, as such term is defined in subsection (b) of this Section, and is not claimed as a dependent, as such term is defined in Section 1033.18, of another taxpayer for the taxable year.

(1)     …

(2)     …

(3)     …

(4)     For taxable years beginning after December 31, 2018, the earned income credit shall be:

(A)     Taxpayers with no Dependents.- The earned income credit shall be equal to five percent (5%) of said earned income, up to a maximum credit of three hundred dollars ($300) in a taxable year. In the case of an individual taxpayer whose earned income is in excess of eighteen thousand dollars ($18,000), but not in excess of twenty thousand five hundred dollars ($20,500), the maximum

AAFAF_CONF_0008190

credit described in this paragraph shall be reduced by an amount equal to twelve percent (12%) of the income earned in excess of eighteen thousand dollars ($18,000). In the case of married taxpayers filing a joint retun1, if the sum of the income earned by both spouses exceeds eighteen thousand dollars ($18,000), but does not exceed twenty-one thousand seven hundred fifty dollars ($21,750), the maximum credit described in this paragraph shall be reduced by an amount equal to eight percent (8%) of the income earned in excess of eighteen thousand dollars ($18,000).

(B)    Taxpayers with one (1) Dependent.- The earned income credit shall be equal to seven point five percent (7.5%) of said earned income, up to a maximum credit of nine hundred dollars ($900) in a taxable year. In the case of an individual taxpayer whose earned income is in excess of thirteen thousand dollars ($13,000), but not in excess of twenty thousand five hundred dollars ($20,500), the maximum credit described in this paragraph shall be reduced by an amount equal to twelve percent (12%) of the income earned in excess of thirteen thousand dollars ($13,000). In the case of married taxpayers filing a joint return, if the sum of the income earned by both spouses exceeds thirteen thousand dollars ($13,000), but does not exceed twenty-four thousand two hundred fifty dollars ($24,250), the maximum credit described in this paragraph shall be reduced by an amount equal to eight percent (8%) of the income earned in excess of thirteen thousand dollars ($13,000).

(C)    Taxpayers with two (2) Dependents.- The earned income credit shall be equal to ten percent (10%) of said earned income, up to a maximum credit of one thousand five hundred dollars ($1,500) in a taxable year. In the case of an individual taxpayer whose earned income exceeds sixteen thousand dollars ($16,000), but not in excess of twenty-eight thousand five hundred dollars ($28,500), the maximum credit described in this paragraph shall be reduced by an

AAFAF_CONF_0008191

amount equal to twelve percent (12%) of the income earned in excess of sixteen thousand dollars ($16,000). In the case of married taxpayers filing a joint return, if the sum of the income earned by both spouses exceeds sixteen thousand dollars ($16,000), but does not exceed thirty-four thousand seven hundred fifty dollars ($34,750), the maximum credit described in this paragraph shall be reduced by an amount equal to eight percent (8%) of the income earned in excess of sixteen thousand dollars ($16,000).

(D)     Taxpayers with three (3) or more Dependents.- The earned income credit shall be equal to twelve point five percent (12.5%) of said earned income, up to a maximum credit of two thousand dollars ($2,000) in a taxable year. In the case of an individual taxpayer whose earned income is in excess of seventeen thousand dollars ($17,000), but not in excess of thirty-three thousand five hundred dollars ($33,500), the maximum credit described in this paragraph shall be reduced by an amount equal to twelve percent (12%) of the income earned in excess of seventeen thousand dollars ($17,000). In the case of married taxpayers filing a joint return, if the sum of the income earned by both spouses exceeds seventeen thousand dollars ($17,000), but does not exceed forty-two thousand dollars ($42,000), the maximum credit described in this paragraph shall be reduced by an amount equal to eight percent (8%) of the income earned in excess of seventeen thousand dollars ($17,000).

(b)     Gross Earned Income.- For purposes of this Section, the term 'gross earned income' means wages, salaries, tips, pensions, any payment for services rendered by an employee to his employer, or any other employee compensation for services rendered, but only if such amounts are includible in gross income for the taxable year; provided, that said amounts are duly reported in a withholding statement required under Section 1062.01(11)(2) or information statement issued under Section 1081.01 of this Code. However, the Secretary is hereby empowered

to allow self-employed individuals to be eligible for the credit provided in this Section, provided that they meet the requirements established by the Secretary through regulations, administrative determination, circular letter, or general information bulletin.

(c)  Limitations.- For purposes of subsection (b) of this Section, the gross earned income shall be computed separately for each individual, notwithstanding being able to file a joint return, without regard to any amount received as a pension or annuity, taxable income under Section 1091.01 (relating to income of nonresident alien individuals), or to the amount received for services rendered by an individual while the individual is an inmate at a penal institution. However, for taxable years beginning after December 31, 2018, in the case of married taxpayers filing a joint return, whether they choose the optional computation or not, the credit shall be computed based on the sum of the income earned of both spouses. In addition, married taxpayers who choose to file their income tax returns separately shall not be eligible for the credit provided in paragraph (4) of subsection (a) of this Section.

(d)  Taxable year of less than twelve (12) months.- Except in the case of a taxable year ended by reason of the taxpayer's death, no credit shall be allowed under this section in the case of a taxable year that covers a period of less than twelve (12) months. For taxable years beginning after December 31, 2018, this credit may be claimed only if the taxpayer has not died at the time of filing the income tax return in which the credit provided in paragraph (4) of subsection (a) of this Section is claimed.

(e)  Credit Denial.- No credit whatsoever shall be allowed under subsection (a) if the taxpayer earns net income on account of interests or dividends, rentals or royalties, the sale of capital assets, child support payments in connection with divorce or separation, any other kind of income not treated as earned income,

AAFAF_CONF_0008193

as defined under subsection (b) of this section, in excess of two thousand two hundred dollars ($2,200) for the taxable year.

(f)     Credit Refund.- Any individual eligible for this credit may claim it in the income tax return. Such credit shall be claimed against the tax determined after all other credits provided in this Subtitle. The amount of this credit that exceeds the determined tax shall be refunded to the taxpayer or may be credited against the estimated tax for the following taxable year.

(g)     Restrictions to Individuals Who Unduly Claimed the Credit for the Prior Year.- Any taxpayer who unduly claims the earned income credit shall be responsible for the payment of an amount equal to the credit unduly claimed as income surtax, including interests, surcharges, and penalties, as provided in Subtitle F of this Code, in the year in which the amount of the unduly claimed amount is determined. In case of fraud, the taxpayer, in addition to being responsible of the payment herein provided, shall be prevented from benefitting from the earned income credit for a period of ten (10) years counted as of the year in which the Secretary has detem1ined the total of any amount unduly claimed.

(h)     Additional requirements to be eligible for the credit provided in paragraph (4) of subsection (a) of this Section.-  In addition to the requirements in subsections (a) through (g) of this Section, every taxpayer shall comply with the following:

(1)     the taxpayer, his/her spouse, in the case of married taxpayers, and dependents eligible for the credit provided in paragraph (4) of subsection (a) of this Section shall be Puerto Rico residents during the entire taxable year for which the credit is claimed and at the time of filing the income tax return;

(2)     the taxpayer and his spouse, in the case of married taxpayers, shall be, on the last day of the taxable year, twenty-seven (27) years of age or older, but shall be younger than sixty-five (65) years of age;

(3)     only the children of the taxpayer or his/her spouse who, on the last day of the taxable year, are eighteen (18) years of age or younger, shall be treated as dependents; provided, that children who are full time students shall be treated as dependents under this section if on the last day of the taxable year such children are twenty-five (25) years of age or younger;

(4)     married taxpayers who file separate returns shall not be eligible for the credit provided in paragraph (4) of subsection (a) of this Section; and

(5)     shall not claim the credit granted under Section 1052.02."

Section 48.- Subsections (a) and (b) are hereby amended, paragraphs (3) and (4) are hereby eliminated, and subsections (f) and (g) are hereby added to Section 1061.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1061.01.- Individual Tax Returns.-

(a)     Requirement to File.- Each of the following individuals shall file a return which shall contain or shall be authenticated by means of a written statement or by electronic signature, in those cases in which electronic means are used to file a return, that such return is filed under penalty of perjury, on which it is stated and included those details that the Secretary shall prescribe through regulations, the gross income, deductions, and credit items allowed under this Subtitle and any other information needed in order to comply with the provisions of this Subtitle, as required by said regulations:

(1)     For taxable years beginning before January 1, 2019, any individual resident of Puerto Rico who is a single or married taxpayer, if his/her gross income for the taxable year, reduced by the exemptions provided in Section 1031.02, is over five thousand dollars ($5,000); provided, that for taxable years beginning after December 31, 2018, the requirement to file applies when the gross

income reduced by the exemptions provided in Section 1031.02 is greater than zero, unless the total income tax has been withheld at the source;

(2)   For taxable years beginning before January 1, 2019, any individual nonresident of Puerto Rico during all or part of the taxable year and who is a citizen of the United States, who is a single or married taxpayer whose gross income for the taxable year earned from sources within Puerto Rico, reduced by the exemptions provided in Section 1031.02, is over five thousand dollars ($5,000), unless the tax on said income has been paid in full at the source; provided, that for taxable years beginning after December 31, 2018, the requirement to file applies when the gross income from sources within Puerto Rico reduced by the exemptions provided in Section 1031.02 is greater than zero, unless the total income tax has been paid at the source;

(3)   …

(4)   For taxable years beginning before January 1, 2019, any individual whose net income for the taxable year subject to alternate basic tax, in accordance with Section 1021.02, is one hundred fifty thousand dollars ($150,000) or more; provided, that for taxable years beginning after December 31, 2018, the requirement to file applies when the net income subject to alten1ate basic tax under Section 1021.02 is twenty-five thousand dollars ($25,000) or more for the taxable year.

(b)   Married Taxpayers.-

(!)   In the case of married individuals, as defined in Section 1010.03(a)(2), if a husband and wife live together and for the taxable year, beginning before January 1, 2019, have an aggregate gross income of over five thousand dollars ($5,000) reduced by the exemptions provided in Section 1031.02, the total income of both individuals shall be included in a joint return and the tax imposed under Section 1021.01 shall be computed on the aggregate income.

AAFAF _CONF _0008196

Provided, that for taxable years beginning after December 31, 2018, they shall file a return if the aggregate gross income, reduced by the exemptions provided in Section 1031.02, is greater than zero, unless the tax on the total aggregate gross income of both spouses has been paid in its entirety at the source. The gross income earned by any one of the spouses shall not be divided between them.

(2)    Separate Returns of Spouses.-  Notwithstanding the provisions in subsection (a) and in paragraph (1) of this subsection, spouses who are living together at the close of the taxable year may opt to file separate returns for such taxable year, subject to the following conditions:

(A)    The statement required under subsection (a) shall be filed when the gross income of the spouse, reduced by the exemptions provided in Section 1031.02, is:

(i)    For taxable years beginning before January 1, 2019, two thousand five hundred dollars ($2,500) or more; or

(ii)    For taxable years beginning after December 31, 2018, greater than zero.

(B)    The gross income, the personal exemption, the allowed deductions (except for the provisions of Section 1033.15(a)(l)(E)) and the tax on such income for each spouse shall be determined in accordance with paragraphs (1) through (6) of subsection (a) of Section 1021.03 as if the spouses filed a joint return and elected to determine the tax using the optional computation.

(C)    Spouses may not have paid the estimated tax jointly for such taxable year.

(c)    …

(d)    …

(e)    …

AAFAF_CONF_0008197

(f)     The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the form and manner in which the individual tax return required under this Section shall be filed.

(g)     Electronic Filing of Individual Tax Returns.- The Secretary shall also be empowered to require that individual tax returns be filed electronically only."

Section 49.- Subsection (a) is hereby amended and subsection (d) is hereby added to Section 1061.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1061.02.-  Corporation Returns.-

(a)     Every corporation subject to taxation under this Subtitle shall file a return stating specifically the items of its gross income and the deductions and credits allowed by this Subtitle, and such other information, for the purpose of complying with the provisions of this Subtitle as the Secretary may by regulations prescribe, unless the tax on the total gross income of the corporation has been paid in its entirety at the source. The return shall be signed under penalty of perjury by the person or persons appointed president, vice-president, or other chief officer, by the treasurer or assistant treasurer or other chief accounting officer. Only one signature shall be required. Notwithstanding the above, in those cases in which returns are filed electronically, the electronic signature of one of the aforementioned officers shall be accepted as evidence of authentication that the returns are filed under penalty of perjury. Such returns must enclose financial statements, subject to the provisions of Section 1061.15 and, in those cases in which the taxpayer belongs to the Large Taxpayers category, as defined in Section 1010.01 of this Code, the return shall be certified as prepared or reviewed by a Certified Public Accountant licensed to practice in Puerto Rico. In cases where receivers, bankruptcy trustees, or assignees are managing the property or business of corporations, such receivers, bankruptcy trustees, or assignees shall file returns

AAFAF_CONF_0008198

for such corporations in the same manner and form as the corporations are required to file. Any tax due on the basis of such returns filed by receivers, bankruptcy trustees, or assignees shall be collected in the same manner as if from the corporations over whose business or property they have custody and control.

(b)     …

(c)     …

(d)     The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the form and manner in which the corporation return required under this Section shall be filed."

Section 50.- Subsections (c) and (d) of Section 1061.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1061.03.- Partnership Returns.-

(a)     …

(b)     …

(c)     Automatic Extension.-  An automatic extension shall be granted to file the return required under subsection (a) provided that the rules and regulations that the Secretary prescribes to grant such extension are complied with. This automatic extension shall be granted for a three (3)-month period counted as of the due date set in subsection (a) for filing the return, provided that the partnership requests such extension not later than on the return filing due date. Provided, that for taxable years beginning after December 31, 2016, this automatic extension shall be granted for a period of six (6) months from the date established in subsection (a) of the return.

(d)     Extension.- The Secretary may, under the rules and regulations he prescribes, grant partnerships an automatic extension to file the information required under subsection (b) for a period which shall not exceed one (1) month,

counted as of the date established in such subsection (b) to submit the report to partners. The Secretary shall prescribe by regulation such other information to be included in the return. Provided, that for taxable years beginning after December 31, 2016, this extension shall be automatic if the entity submitted the application for extension provided in subsection (c) of this Section, and the period of time shall be the same period established in said subsection (c).

(e)     …"

Section 51.- Subsections (c) and (d) of Section 1061.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1061.04.-  Limited Liability Company Return.-

(a)     …

(b)     …

(c)     Automatic Extension.-  An automatic extension shall be granted to file the return required under subsection (a) provided that such rules and regulations that the Secretary prescribes to grant such extension are complied with. This automatic extension shall be granted for a three (3) month period counted as of the due date set in subsection (a) for filing the return, provided that the limited liability company requests such extension not later than on the return filing due date. Provided, that for taxable years beginning after December 31, 2016, this automatic extension shall be granted for a period of six (6) months from the date established in subsection (a) of the return.

(d)     Extension.- The Secretary may, under such rules and regulations as he prescribes, grant limited liability companies an automatic extension to file the information required under subsection (b) for a period which shall not exceed one (1) month counted as of the date set in such subsection (b) to submit the report to members. The Secretary shall prescribe by regulation the information to be

AAFAF_CONF_0008200

included in the retun1. Provided, that for taxable years beginning after December 31, 2016, this extension shall be automatic if the entity submitted the application for extension provided in subsection (c) of this Section, and the period of time shall be the same period established in said subsection (c).

(e)     …"

Section 52.- Subsections (c) and (d) of Section 1061.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1061.06.- Special Partnership Returns.-

(a)     General Rule.-  …

(b)     …

(c)     Automatic Extension.-  An automatic extension shall be granted to file a return required under subsection (a) provided that such rules and regulations that the Secretary prescribes to grant such extension are complied with. This automatic extension shall be granted for a three (3)-month period counted as of the due date set in subsection (a) for filing the return, provided that the special partnership makes a request to such effect not later than on such return filing due date. Provided, that for taxable years beginning after December 31, 2016, this automatic extension shall be granted for a period of six (6) months from the date established in subsection (a) of the return.

(d)     Extension.- The Secretary may, under such rules and regulations as he prescribes, grant special partnerships an automatic extension to file the information required under subsection (b) for a period which shall not exceed thirty (30) days, counted as of the date set in such subsection (b) to submit the report to members. The Secretary shall prescribe through regulations any such other information that shall be included in the return. Provided, that for taxable years beginning after December 31, 2016, this extension shall be automatic if the entity submitted the

AAFAF _CONF_0008201

application for extension provided in subsection (c) of this Section, and the period of time shall be the same period established in said subsection (c)."

Section 53.- Subsections (c) and (d) of Section 1061.07 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1061.07.- Corporation of Individuals' Returns.-

(a)     …

(b)     …

(c)     Automatic Extension.- An automatic extension shall be granted to file the retun1 required under subsection (a), provided that such rules and regulations that the Secretary prescribes to grant such extension are complied with. This automatic extension shall be granted for a three (3)-month period counted as of the due date set in subsection (a) for filing the return, provided that the corporation of individuals requests such extension not later than on such return filing due date. Provided, that for taxable years beginning after December 31, 2016, this automatic extension shall be granted for a period of six (6) months from the date established in subsection (a) of the return.

(d)     Extension.- The Secretary may, under such rules and regulations as he prescribes, grant a corporation of individuals an automatic extension to file the information required under subsection (b) for a period which shall not exceed thirty (30) days, counted as of the due date set in such subsection (b) to submit the report to shareholders. The Secretary may prescribe through regulations any such other information that shall be included in such return. Provided, that for taxable years beginning after December 31, 2016, this extension shall be automatic if the entity submitted the application for extension provided in subsection (c) of this Section, and the period of time shall be the same period established in said subsection (c)."

AAFAF_CONF_0008202

Section 54.- Subsections (a), (b), and (c) are amended, subsections (e) and (f) are added to, and subsection (g) is hereby renumbered in Section 1061.15 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1061.15.- Requirement to Submit Financial Statements or Other Documents with the Returns.-

(a)      Financial Statements.- Any business, including an individual business, corporation, partnership, special partnership, limited liability company, corporation of individuals, insurance company, registered investment company, special employee-owned corporation, association, cooperative, real estate investment trust, or any other entity, as defined in Section 1010.05(c), engaged in a trade or business or in the generation of income in Puerto Rico, shall submit financial statements enclosed with its income tax return subject to the following requirements:

(1)      When the business volume during a taxable year is lower than one million dollars ($1,000,000), the business shall not be required to submit the financial statements required by this Section. Provided, that for taxable years beginning after December 31, 2018, the limitations on deductions established in Sections 1021.02(a)(2) and 1022.04 shall not apply to taxpayers who voluntarily file an income tax return, enclosed with an Agreed Upon Procedures or a Compliance Attestation Report prepared by a Certified Public Accountant (CPA) who holds a valid license in Puerto Rico.

(2)      When the business volume during a taxable year is equal to or higher than one million dollars ($1,000,000), but lower than three million dollars ($3,000,000), the business may opt to submit the financial statements required by this Section together with an Auditor's Report issued by a Certified Public Accountant who holds a license to practice in Puerto Rico, which statements shall be in accordance with the Generally Accepted Auditing Standards of the United

States of America (hereinafter, US GAAS). Any business that is up to date with its tax liability and that opts to enclose financial statements with the Auditor's Report under this paragraph shall be entitled to be exempt by the Secretary, in whole or in part, as established in subsection (g) of Section 1062.03 of this Code, from the withholding at the source, as provided in Section 1062.03, on payments received for services rendered. Provided, that for taxable years beginning after December 31, 2018, it may choose to file, in lieu of the audited financial statement, an Agreed Upon Procedures or a Compliance Attestation Report prepared by a Certified Public Accountant (CPA) who holds a valid license in Puerto Rico.

(3)     When the business volume during a taxable year is equal to or higher than three million dollars ($3,000,000), the business shall submit the financial statements required by this Section together with an Auditor's Report issued by a Certified Public Accountant who holds a license to practice in Puerto Rico and the limitations on the deductions established in Sections 1021.02(a)(2) and 1022.04 shall not apply thereto. Said Auditor's Report shall state that the financial statements have been prepared in accordance with the Generally Accepted Auditing Standards of the United States of America (hereinafter, US GAAS), however, it shall not be necessary, for the Certified Public Accountant to issue an unqualified opinion. Qualified opinions shall be allowed as defined by US GAAS, provided, that the qualified opinion is not due to restrictions within the scope of the audit imposed by the business. No disclaimer of opinion report due to restrictions within the scope of the audit imposed by the business shall be allowed. No adverse opinion reports shall be allowed.

(4)     Any group of related entities, as defined by Section 1010.05, constituted by entities or natural persons engaged in trade or business in Puerto Rico shall submit the financial statements required in paragraphs (1), (2), and (3) as consolidated or combined financial statements, in accordance with the Generally

AAFAF_CONF_0008204

Accepted Accounting Principles of the United States (US GAAP). However, such consolidated or combined financial statements shall include an attachment showing in columns the financial situation and the results of the operations of each one of the affiliate entities that constitute the group of related entities. The Secretary may prescribe by regulations, circular letter, administrative determination, or general communication, such conditions as he deems appropriate to waive the requirement to file consolidated or combined financial statements and, in lieu thereof: require separate financial statements by entity; provided, that the information of the related entities engaged in trade or business in Puerto Rico be included in the notes, along with an attachment showing in columns, the financial situation and the results of the operations of each one of the affiliate entities that constitute the group of related entities.

(A)    For taxable years beginning after December 31, 2018, and for purposes of meeting the requirements of this paragraph (4), all entities that have generated a volume of business equal to or higher than one million dollars ($1,000,000), and because the volume of business of said group of related entities is equal to or higher than three million dollars ($3,000,000) in the aggregate, may submit financial statements presenting their financial status and the results of the operations of said entity or person individually without having to submit consolidated or combined audited financial statements, provided, that a list of all entities engaged in trade or business in Puerto Rico is fun1ished in the notes to said financial statements. Said information shall include the name of each of the persons who belong to the group of related entities that are engaged in trade or business in Puerto Rico. In addition, a person that is part of the group of related entities that are subject to the provisions of this Section, but whose volume of business is not equal to or higher than one million dollars ($1,000,000) for a taxable year, shall not be required to submit audited financial statements. However,

said entity shall be subject to the requirement of submitting the Agreed Upon Procedures or Compliance Attestation Report established in paragraph (1) of subsection (a) of this Section.

(5) …

(6) The audit requirement shall not apply to nonprofit corporations, nor entities or persons engaged in trade or business in Puerto Rico, whose volume of business does not exceed three million dollars ($3,000,000) during the taxable year. Provided, that for taxable years beginning after December 31, 2018, nonprofit corporations shall be required to submit financial statements insofar as the nonprofit entity generates income unrelated to the exempt activity, as defined in Section 1101.02 equal to or higher than three million dollars ($3,000,000).

(b) Supplemental information, underlying financial statements and other records used to prepare financial statements and submitted to audit procedures applied when a financial statement audit is conducted by a certified public accountant holding a valid license to practice in Puerto Rico for taxable years beginning after December 31, 2012.-

(1) …

(2) ...

(3) The Secretary shall establish a mechanism whereby the certified public accountant shall submit the supplemental information electronically. In addition, the Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the deadline to file the supplemental information, which shall be a date after the deadline to file the income tax return, including extensions. The Secretary is also empowered to establish through regulations, administrative determination, circular letter, or general information bulletin the procedures to be followed in order to meet the requirement provided in this subsection, in conjunction with the College of Certified Public Accountants of

AAFAF_CONF_0008206

Puerto Rico, an entity created under Act No. 75 of May 31, 1973, responsible for overseeing the regulation and quality of the CPA profession, pursuant to the compliance attestation and auditing standards applicable to the supplementary information schedules required by this subsection.

(c)    For purposes of this Section, the term 'volume of business' means gross income, as defined in Section 1031.01 except that, in the case gains or income described in Section 1031.0l(a)(2)(A), the total amount derived from the sale of goods or products shall be taken into account without reducing the cost of the goods or products sold. In the case of a group of related entities, as defined in Section 1010.05, the volume of business shall be determined by adding up the volume of business of each of the entities included in such group. When the volume of business in the aggregate of the group of related entities for the taxable year is equal to or higher than three million dollars ($3,000,000), the requirement to file audited financial statements along with the return shall apply to each member of the group whose volume of business is equal to or higher than one million dollars ($1,000,000) in said taxable year. The Secretary may authorize that individual audited financial statements be filed per entity, provided, that the infom1ation of all members of the group who are required to file an income tax return under this Subtitle and the volume of business of said members is included in the notes to said financial statements. The members of the group whose volume of business is less than one million dollars ($1,000,000) shall be required to submit an Agreed Upon Procedures Report in accordance with the provisions of paragraph (4) of subsection (a) of this Section.

(d)    …

(e)    Agreed-Upon Procedures Report or Compliance Attestation Report.- For purposes of this section, the term 'Agreed-Upon Procedures Report' refers to a

AAFAF _CONF_0008207

report prepared by an independent Certified Public Accountant, attesting that he performed agreed-upon procedures and the term 'Compliance Attestation Report' refers to a report prepared by Certified Public Accountant issuing an opinion regarding compliance with a requirement established by law, regulations, or any government entity. The Secretary, in conjunction with the College of Certified Public Accountants of Puerto Rico, shall prescribe by regulations, circular letter, any other general administrative determination or communication, the contents of said reports and the required procedures in accordance with paragraphs (1), (2), and (4)(A) of subsection (a) of this Section, pursuant to the compliance attestation and auditing standards applicable to this type of report.

(f)     Information related to Uncertain Tax Positions or 'UTP'.- Every entity required to file Financial Statements under this Section shall file an attachment along with the income tax return of the entity stating in detail any Uncertain Tax Position in accordance with the United States Generally Accepted Accounting Principles (US GAAP), specifically in accordance with the Accounting Standards Codification subtopic 740-10, Income Taxes, FASB ASC 740-10, or any future guidance. Said requirement shall apply to taxable years beginning after December 31, 2018. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the contents of the Uncertain Tax Positions Attachment.

(g)     The Secretary shall prescribe by regulations, circular letter, information bulletin, or general administrative determination the applicability and effectiveness of the provisions of this Section."

Section 55.- Subsections (a), (b), and (c) of Section 1061.16 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1061.16.- Date and Place to File Retun1s.-

AAFAF_CONF_0008208

(a)     Filing Date.-

(1)     …

(2)     Automatic Extension.-

(A)     In General.- Except as otherwise provided in this Subtitle, an automatic extension shall be granted to individuals, corporations and estates for filing returns, provided that they comply with such rules and regulations that the Secretary prescribes to grant such extension. This automatic extension shall be granted for a three (3)-month period, counted as of the date prescribed for filing the returns; provided, that the taxpayer requests such extension not later than on the return filing date prescribed in this Subtitle. However, for taxable years beginning after December 31, 2016, the automatic extension provided in this subparagraph shall be granted for a tenn of six (6) months from the date prescribed for filing the return, provided that the taxpayer submits an application for such purposes not later than on the return filing date prescribed in this Subtitle.

(B)     …

(3)     Additional Extension.- For taxable years beginning before January 1, 2017, in the case of individuals who are outside of Puerto Rico, the Secretary may, under such rules and regulations as he prescribes, grant an extension, in addition to the automatic extension, to file the returns. Such additional extension shall not exceed three (3) months. This additional extension shall not be available to individuals who have requested the automatic extension under subparagraph (B) of paragraph (2) of this subsection.

(4)     …

(b)     With Whom to File the Return.- Any return required under this Subtitle shall be filed with the Secretary.

AAFAF_CONF_0008209

(1)     The authority of the Secretary to require any return required under this Subtitle to be filed exclusively by electronic means is hereby recognized.

(A)     Filing of an Individual Return.- For taxable years beginning after December 31, 2014, the individual income tax return shall be filed by the electronic means or platforms prescribed by the Secretary through regulations or other official publication issued for the taxable year. These taxpayers shall follow the filing rules prescribed by the Secretary through regulations, administrative determination, circular letter, or general information bulletin. The Secretary is hereby empowered to reject returns filed on paper format that fail to meet the requirements and exceptions established by the Secretary as exceptions to electronic filing. Any return filed on paper format that fails to meet the requirements to be exempt from electronic filing and that is rejected by the Secretary under the provisions of this subparagraph shall be deemed to be returns not filed and shall be subject to the penalty provided in Section 6030.11 of Subtitle F or this Code.

(c)     Whenever the return filing due date, including the extension, falls on a Saturday, Sunday, or legal holiday, the due date to file such return shall be the next business day, notwithstanding that the electronic filing of the return is required.

(d)     …"

Section 56.- Subsection (g) of Section 1061.17 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1061.17.- Payment of Tax.-

(a)     …

…

AAFAF_CONF_0008210

(g)    Payment of the tax to which this Section refers may be made electronically. The Secretary may require that the payment referred to in this Section be exclusively made electronically."

Section 57.- Subsections (a), (c), (i), (l), (n), and (r) of Section 1062.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1062.01.-   Income Tax Withholding at Source in the Case of Wages.-

(a)    Definitions.-  As used in this Section:

(1)    Wages.-  ...

(A)    for payments made before January 1, 2019, for such services in agricultural labor, as defined in paragraph (12) of this subsection, excluding services performed by executive, administrative, office or supervisory employees, and by the employees occupying permanent positions, or

(B)    for payments made before January 1, 2019, for domestic services in a private home, local college club, or local chapter of a college fraternity or sorority, or

(C)    …

(D)    …

(E)    …

(F)    for payments made before January 1, 2019, for services performed by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order, or

(G)    for payments made before January 1, 2019, compensations or severance pay received by an employee by reason of dismissal, without the need to determine just cause thereof, up to a maximum amount equal to

AAFAF_CONF_0008211

the severance pay that the employee may receive pursuant to Act No. 80 of May 30, 1976, or under a settlement agreement for dismissal between the employer and the employee, or

        (H)    …

        (I)    …

    (2)    …

    (3)    …

    (4)    …

    (5)    …

    (6)    …

    (7)    …

    (8)    …

  (b)    …

  (c)    Withholding Exemption.-

    (!)    In computing the tax required to be deducted and withheld in accordance with the tables promulgated by the Secretary, as provided in subsection (b), there shall be allowed, as a withholding exemption with respect to the wages paid for each payroll period, an exemption determined according to the withholding exemption tables which, in harmony with the provĩs10ns of this Subtitle, the Secretary shall approve and that shall be part of the regulations of this Subtitle. Said tables shall take into consideration the amount of the personal exemption and credit for dependents allowable to the taxpayer according to Section 1033.18, as well as the withholding allowances based on the deductions provided in paragraph (2) of this subsection.

AAFAF_CONF_0008212

(2)     Withholding Allowances Based on Deductions.-

(A)     In determining the amount of the exemption for withholding under paragraph (1), allowances shall be allowed based on deductions in a number equal to the result of dividing:

(i)     …

(ii)    …

…

(B)     In the case of a husband and wife living together who, on determining the withholding allowance, exercise the option under clause (ii) of subparagraph (A), the number of allowances to which they are entitled under this paragraph shall be determined taking as a basis their combined wages and deductions. They may divide among themselves the total allowances as they wish, but on the basis of the complete allowances. However, any allowance claimed by one of the spouses in a withholding exemption certificate shall not be claimed by the other spouse.

Provided, that for wages paid after December 31, 2018, the Secretary shall prescribe by regulations the manner in which allowances of deductions shall be determined and the manner in which the amount of the wages subject to withholding and the applicable withholding tax rate shall be determined.

(3)     …

(4)     …

(5)     …

(6)     …

(d)     …

(e)     …

(f)     …

(g)     …

AAFAF_CONF_0008213

(h)      …

(i)      Withholding on Basis of Average Wages.-  The Secretary may, under regulations prescribed by him, authorize employers (1) to estimate the wages which shall be paid to any employee in any quarter of the calendar year, (2) to determine the amount to be deducted and withheld upon each payment of wages to such employee during such quarter as if the appropriate average of the wages so estimated constituted the wages actually paid, and (3) to deduct and withhold upon any payment of wages to such employee during such quarter, such amount as may be necessary to adjust the amount actually deducted and withheld upon the wages of such employee during such quarter to the amount required to be deducted and withheld during such quarter without regard to this subsection. Provided, that for payments made after December 31, 2018, the Secretary may require the employer to estimate the wages to be paid during the calendar year, deduct any exemption or make any deduction to which the employee is entitled, and determine the amount of the income tax to be withheld for each payroll pay based on the computation of the tax resulting from the annual wages estimate.

(j)      …

(k)      …

(l)      Liability for Tax.- The employer shall be liable to the Secretary for the payment of the tax required to be deducted and withheld under this Section and shall not be liable to any person for the amount of any such payment. Any employer who, at the time of filing its income tax return, has failed to remit to the Department of the Treasury the total amount deducted and withheld from the wages paid to its employees corresponding to the taxable year it is filing, and has failed to report said paid wages and withheld tax in the withholding statement as provided in subsection (n) of this Section, shall not claim the wages paid as operating expenses.

AAFAF_CONF_0008214

(m)     …

(n)     Statements.-

      (!)     Annual Reconciliation Statement.-  ...

      (2)     Withholding Statement.-   ...

      …

      (3)     Statements to Constitute Information Retun1s.-  ...

      (4)     Extension.- ...

      (5)     The Secretary may demand that the statements required under this subsection be filed electronically with the Department of the Treasury. Likewise, employers are hereby authorized to electronically furnish the withholding statements to their employees. The Secretary may require that the payment or deposit of the tax withheld under this Section be paid solely by electronic means.

(o)     …

(p)     …

(q)     …

(r)     In cases regarding wages for services rendered in occasional, temporary, or seasonal work in which the payroll period with respect to the employee is daily and the amount thereof is based on an hourly wage, if the employer shows to the satisfaction of the Secretary that by detennining the amount of the tax to be deducted and withheld from said wages under the provisions of subsection (b) it would cause him serious hardship, such employer may, upon prior authorization of the Secretary, deduct and withhold the income tax at source on said wages applying two percent (2%) to the total amount thereof, without considering any withholding exemption for payments made before January 1, 2019 and five percent (5%)  for payments made after December 31, 2018. For purposes of determining whether the application of the provisions of subsection (b) would

AAFAF_CONF_0008215

cause serious hardship to the employer, the following factors, among others, shall be taken into consideration:

(1)    …

    …

(6)    …"

Section 58.- Subsections (a), (b), and (e) of Section 1062.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1062.02.-  Withholding of Tax at Source on Indemnity Received on Judicial Proceedings or in Extrajudicial Claims.

(a)    Indemnity Payments Received on Judicial or Extrajudicial Claims that Constitute Taxable Income for the Purpose of this Subtitle.- Every employer, insurance company, or any other person required to make indemnity payments under a court order or extrajudicial claim, shall be required to withhold seven percent (7%) of the amount of those payments made before January 1, 2019, which constitute taxable income for purposes of this Subtitle. Provided, that for payments made after December 31, 2018, the payer shall be required to withhold ten percent (10%) of the amount of such payments. For purposes of this Section, taxable income includes, among others, the following items:

(1)    Any compensation portion representing or substituting loss of income or salaries, including lost profits;

(2)    indemnity for lost salaries in the case of destitution or suspension from employment and salary, or for illegal dismissal; and

(3)    the portion of the payment that, by law, court order or out-of-court settlement, is paid directly to the legal representative of the person who receives the indemnity, provided that this portion of the payment shall be reported

AAFAF_CONF_0008216

directly to the legal representative and not to the indemnified individual, and shall be subject to withholding under Section 1062.03 of this Code.

(b)     Withholding Subject to Provisions on Withholding at Source on Wages. Deductions and withholdings under subsection (a) shall be subject to the provisions of this Subtitle that apply to income tax withheld at source on wages as it relates to the manner and time to make the deposit of the amounts withheld and the payer's responsibilities with respect to the amounts withheld except for the tax withheld under this Section, which shall be deposited not later than the fifteenth (15th) day of the month following the close of the calendar month in which the tax was deducted and withheld. Likewise, the established penalties shall apply to employers who fail to withhold or deposit the withheld amounts established in Subtitle F, including any person who, at the time of filing his income tax return, has failed to remit to the Department of the Treasury the total amount deducted and withheld on payments described in subsection (a) of this Section, or has failed to file the information statements corresponding to the taxable year reported on the return, shall not claim such payments as operating expenses.

(c)     …

(d)     …

(e)     Exception.- The requirement to deduct and withhold set forth in subsection (a) of this Section shall not apply to payments by reason of indemnity under a court order or extrajudicial claim made to nonresident individuals or foreign corporations or partnerships not engaged in trade or business in Puerto Rico who are subject to the withholding set forth in Sections 1062.08 and 1062.11. However, that portion of the payment made after December 31, 2018, directly to the legal representative of the nonresident person or entity not engaged in trade or business receiving the indemnity shall be subject to withholding under Section

AAFAF_CONF_0008217

1062.03, as well as to the corresponding information statement that must be prepared by the payer."

Section 59.- Subsections (a), (b), (c), (d), (f), and (g) are amended and subsection (h) is added to, and subsections (i) and (j) are hereby renumbered in Section 1062.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1062.03.- Withholding at Source on Payments for Services Rendered.-

(a)     General Rule.- The Government of Puerto Rico and every natural or juridical person that, while engaged in a trade or business or in the generation of income in Puerto Rico, makes payments to another person by reason of services rendered, and every payer who makes payments to a health service provider for health services rendered by said provider to any person, shall deduct and withhold, for payments made before January 1, 2019, seven percent (7%), and for payments made after December 31, 2018, ten percent (10%) of said payments. However, at the election of the service provider, the payer may deduct and withhold a higher amount equal to ten percent (10%), fifteen percent (15%), or twenty percent (20%) of said payments. Provided, that for payments made after December 31, 2018, the payer may, at the election of the service provider, withhold from the total amount of the income paid the maximum applicable rate under Section 1021.06. The term 'Government of Puerto Rico' includes the Government of Puerto Rico, its agencies, instrumentalities, public corporations, and political subdivisions. The term 'payer' means insurers, nonprofit associations, health insurance cooperatives, health service organizations, and any other person who makes payments in the name of the persons mentioned herein. The term services and the withholding defined herein does not include the payment of insurance premiums, the lease or sale of tangible real or personal property, printing services, sale of newspapers,

AAFAF_CONF_0008218

magazines, and other publications (including the placement of advertisements), and contracting of radio or television time. However, the insurance premium commission paid to the agent shall be subject to withholding under this Section. The withholding exception provided in the preceding sentence does not exempt the payer from reporting the amounts paid for services received, in an information statement subject to the provisions of Section 1063.01.

(b)     Special Rules.- The requirement to deduct and withhold provided in subsection (a) of this Section shall not apply to:

(1)     For payments made before January 1, 2019, the first one thousand five hundred dollars ($1,500) paid during the calendar year to the person who rendered the service. In the case of corporations or partnerships that operate in Puerto Rico through branches, the limit of one thousand five hundred dollars ($1,500) provided herein shall apply to each branch individually, at the option of the withholding agent. Provided, that for taxable years beginning after December 31, 2018, the exemption from the withholding provided in this section shall be for the first five hundred dollars ($500) paid during the calendar year in which the person rendered the services.

(2)     Payments made to hospitals, clinics, clinical laboratories, hospices for terminally ill patients, homes for the elderly, and institutions for persons with disabilities.

(3)     …

(4)     …

(5)     Payments made to contractors or subcontractors for construction works. The term 'construction works' does not include architectural, engineering, design, consulting services, electricians, plumbers, painters, maintenance staff, handypersons, security, and other services of a similar nature.

(6)     …

AAFAF_CONF_0008219

(7)    …

(8)    Payments for services to individuals, corporations, and partnerships during the first three (3) years as of the beginning of a service rendering activity. This exemption may be enjoyed only once by the taxpayer. In the case of payments made after December 31, 2018, payments for services to an entity as such term is defined in Section 1010.05(c), or to an individual during the first year of operations of said entity or individual.

(9)    …

(10)    …

(11)    Payments made directly, or through agents, representatives, or other intermediaries, to an eligible carrier. The tenn 'eligible carrier' means a person whose principal trade or business is air transportation, maritime cargo or passenger transportation, or telephone communications service between Puerto Rico and any point outside of Puerto Rico. However, the commission paid to the agent shall be subject to withholding under this Section.

(12)    …

(13)    …

(14)    …

(15)    Payments made by a partnership, special partnership, or corporation of individuals engaged in the rendering of services subject to withholding under subsection (a) of this Section, to an individual who is a partner, shareholder, or owner of said entity for services rendered by said individual to the entity. Provided, that this exemption does not exempt from the requirement to withhold on the partner or owner's distributive share under Sections 1062.04, 1062.05, and 1062.07 of this Code.

AAFAF_CONF_0008220

(c)     Responsibility of the payer.- Except as otherwise provided, any person required to deduct and withhold any taxes under the provisions of this Section, shall be responsible to the Secretary for the payment of such taxes and shall not be responsible to any other person for the amount of any of such payments. Any person who, at the time of filing the income tax return has failed to remit to the Department of the Treasury the total amount withheld on payments described in subsection (a) of this Section and has failed to file with the Department of the Treasury the information statements required under subsections (h), (i), and (j) of this Section, shall not claim such payments as operating expenses. Provided, that, individuals under the accrual method or with a fiscal year may claim the deductions even though the amount is not shown in an information statement; provided, that such individuals file together with their retun1 a reconciliation between the expenses claimed and the amount reported in the statement.

(d)     Income Tax Return and Payment of Withheld Income.- Every payer required to deduct and withhold the tax provided in subsection (a) shall file a return and pay or deposit the same not later than the fifteenth (15th) day of the month following the close of the calendar month in which the tax was deducted and withheld. Said return shall be filed with the Secretary and shall contain such information and be made in the manner established through regulations by the Secretary. The Secretary may require that said return and the corresponding payment be filed solely by electronic means.

(e)     …

(f)     Any person who fails to meet his responsibility to deduct and withhold the income tax described in subsection (a) of this Section shall be subject to the penalties set forth in Sections 6030.12 and 6041.01 of Subtitle F unless the taxpayer pays the tax to the Secretary.

AAFAF_CONF_0008221

(g)    Waivers.-

(!)    In the case of entities, as such term is defined in Section 1010.05(c) that are up to date with their tax liabilities, in lieu of the withholding provided in subsection (a), three percent (3%) shall be deducted and withheld, in payments made before January 1, 2019, and six percent (6%) in payments made after December 31, 2018, provided, that the required Agreed-Upon Procedures Report or the required Audited Financial Statements have been filed together with their return in accordance with Section 1061.15.

(2)    In the case of entities, as such term is defined in Section 1010.05(c), with a volume of business of one million dollars ($1,000,000) or more that are up to date with their tax liabilities and submit financial statements together with an Auditor's Report subject to the provisions of Section 1061.15, in lieu of the withholding provided in subsection (a), no withholding whatsoever shall be made on account of payments for services rendered by these corporations.

(3)    …

(4)    In the case of other sectors or categories of businesses or ventures, when it is shown to the satisfaction of the Secretary, or when the Secretary himself determines that the obligation of this Section shall cause undue hardships to such sectors or categories of businesses or ventures without any practical purpose whatsoever, because the amounts thus withheld shall have to be refunded to taxpayers, or that such withholding shall be excessive, the Secretary may exempt the withholding agent, under such rules and regulations he promulgates, from making such retention in whole or in part to every business or venture included in the sector or category. The Secretary may use the aforementioned criteria to exempt the withholding agent, in whole or in part, from making the withholding provided in subsection (a) or this subsection, in the case of

corporations or partnerships carrying over a substantial amount of net operating losses with respect to the annual volume of business of such corporation.

(A)     Provided, that in the following circumstances, it shall be understood that the taxpayer has shown that the withholding causes the taxpayer undue hardship without any practical result:

(i)     A person who is within the first three (3) years of operation of his economic activity. For such purposes, the fact that a taxpayer has carried out the same economic activity in another jurisdiction or that he carried out another economic activity inside or outside of Puerto Rico shall not be taken into account;

(I)     The Secretary may deny an exemption to any person who carries out substantially the same activity for which such person had already received a previous exemption;

(ii)     A Qualified Physician, as defined in Act No. 14-2017, to whom an exemption decree has been granted and holds a valid exemption decree under such Act;

(I)     Provided, that in the event that the total number of shareholders, partners, or owners of a Medical Service Business, as defined in Act No. 14-2017, that is taxable under the provisions of Chapter 7 or Subchapter E of Chapter 11 of this Subtitle, are Qualified Physicians who have been granted and hold a valid exemption decree under such Act, a total exemption from withholding shall be granted.

(iii)     A person whose previous taxable year has ended with net losses from its operations within Puerto Rico, and who has not been subject to the Alternate Basic Tax or Alternative Minimum Tax for any of the last three (3) years.

AAFAF_CONF_0008223

(I)    The Secretary, however, may deny an exemption to any person who has reported operating losses for over three (3) consecutive taxable years.

(5)    In the case of individuals or entities that, for a specific taxable year elect to pay taxes under the optional tax established in Section 1021.06 or 1022.07, and the total gross income based on the income tax return of the previous year does not exceed one hundred thousand dollars ($100,000), may obtain a partial waiver so that the withholding provided in subsection (a) of this section shall be six percent (6%) in lieu of the amount provided in subsection (a) of this section. Every individual who obtains this partial withholding waiver is required to pay taxes under the option tax provided in Section 1021.06 for the taxable year in which the waiver was requested, provided that during such taxable year his main source of income originates substantially from his own trade or business.

(h)    Quarterly Reconciliation Return.- Every person required to deduct and withhold any tax under this Section shall, on or before the last day of the month following the close of each one of the quarters ending on March 31, June 30, September 30, and December 31 of each year, file a return stating in detail the payments made and the tax withheld and deposited during the quarter and pay the portion thereof that has not been paid or deposited in the form and manner provided in Subtitle F. Said return shall contain such information, and shall be made in the manner prescribed by the Secretary through the regulations adopted for such purposes. The Secretary may require that the quarterly reconciliation return as well as any outstanding balance be filed solely by electronic means.

(i)    Annual Reconciliation Statement.-

(j)    Infom1ation Statements.- Every payer required to make the deductions and withholding provided in subsection (a) and to file a return for the amounts deducted and withheld as provided in subsection (d), shall file, not later than

AAFAF_CONF_0008224

February 28 of the following year, an information statement indicating the total amount paid and the tax withheld during the preceding calendar year, and the name, address, and account number of the recipient of such payments. The Secretary shall establish, through regulations, the method of reporting the payments described in this Section and the amounts withheld pursuant to the provisions of subsection (a). The Secretary may demand that statements required under this subsection be filed with the Department of the Treasury by electronic means. Likewise, withholding agents are hereby authorized to file the information statements with their service providers by electronic means."

Section 60.- Subsection (j) is hereby amended and subsection (k) is hereby added to Section 1062.08 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1062.08.- Tax Withholding at Source in the Case of Nonresident Individuals, due to the Revocation of the Authorization to do Business in Puerto Rico, for the Sale of Certain Assets, and in the Case of Certain Exempt Organizations.-

(a)     Requirement to Withhold.-

(!)     …

(2)     …

(3)     …

…

(b)     …

…

(j)     Information Statement.- Every person who is required to deduct and withhold any tax under this Section, in addition to filing the retun1 required by subsection (b), shall file an information statement with the Secretary, as he establishes through regulations. Said statement shall include the total amount paid,

the tax deducted and withheld, and the name, address, and account number of the person to whom the payment was made. A copy thereof shall be handed to the person to whom payment was made not later than the fifteenth (15th) of April of the year following the calendar year for which the statement was filed. Any individual who, at the time of filing his income tax return has failed to remit to the Department of the Treasury the total amount withheld on the payments described in this Section, and has failed to file with the Department of the Treasury the information statements required in this subsection, may not claim such payments as operating expenses, insofar as such payments constitute ordinary and necessary operating expenses. Provided, that individuals under the accrual method or with a fiscal year may claim the deduction even though the amount is not shown in an information statement, insofar as such individuals file together with their return a reconciliation between the expense claimed and the amount reported in the statement.

(k)    Special Rule in the Case of Sales of Interest in a Partnership by a Nonresident Person.- In the case of sales of interest in a partnership by a nonresident person subject to the provisions of Section 1035.08, the buyer shall withhold fifteen percent (15%) on the amount of the gains on the sale that constitutes income from sources within Puerto Rico. In addition, the requirements of subsections (b) and (j) of this Section shall be met."

Section 61.- Subsection (a) is hereby amended and subsection (f) is hereby added to Section 1062.09 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1062.09.- Income Tax Withheld at Source from Individuals, Estates, Corporations, Partnerships, and Trusts on Interest Paid or Credited on Deposits in Interest-earning Accounts, or on Bonds, Notes or Other Obligations of

AAFAF_CONF_0008226

Certain Corporations or Partnerships and on Certain Mortgages and Distributions of Certain Variable Annuities.-

(a)    Withholding Requirements.- Except as otherwise provided in this Subchapter, in those cases in which the recipient of the interest exercises the option provided in subsection (b) of Section 1023.04 or in subsection (c) of Section 1023.05, the payer of interest described in subsection (a) of said Sections shall deduct and withhold a tax equal to ten percent (10%) or to seventeen percent (17%), as applicable, of the amount of non-exempt interest paid or credited. In the cases described in Section 1023.04, the payer of interest shall be required to withhold the aforesaid tax with the total interest paid or credited to the taxpayer as a basis. In cases of savings accounts or certificates registered in the name of a brokerage firm as nominee for one or more individuals, estates, or trusts covered by Section 1023.04(b)(3), the phrase 'payer of interest,' both in this subsection and in the subsequent subsections of this Section, shall refer to said brokerage firm. For taxable years beginning after December 31, 2018, the provisions of this Section shall apply to amounts paid in a lump sum under a variable annuity contract issued by an eligible insurance company as provided in Section 1023.08.

(b)    …

(c)    …

(d)    …

(e)    …

(f)    Information Statement.- Any individual who is required to deduct and withhold any tax under this Section, shall file an information statement with the Secretary in the manner provided by the Secretary through regulations. Said statement shall include the total amount paid, the tax withheld, and the name, address, and account number of the person to whom the payment was made. A copy thereof shall be handed to the person to whom payment was made not later

AAFAF_CONF_0008227

than February 28 of the year following the calendar year for which the statement was filed. Any individual who, at the time of filing his income tax return has failed to remit to the Department of the Treasury the total amount deducted and withheld on the payments described in this Section, or has failed to file with the Department of the Treasury the information statements required in this subsection, may not claim such payments as operating expenses, in cases in which such payments constitute ordinary and necessary operating expenses of the withholding agent."

Section 62.- Subsection (a) of Section 1063.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.01.- Information at Source.-

(a)      Payments of Fixed or Detem1inable Income of Five Hundred Dollars ($500) or More.- All persons engaged in a trade or business in Puerto Rico, including lessees or mortgagors of personal or real property, fiduciaries and employers who made payments to individuals, trusts, or entities as such term is defined in Section 1010.05(c) for rents, salaries, wages, premiums, annuities, services, advertisements, insurance premiums, telecommunications services, as such term is defined in Section 4010.01 (kk) of this Code, internet access services, cable or satellite television services, compensations, remunerations, emoluments, or other fixed or detem1inable gains, profits, and income other than the payments described in Sections 1063.05 or 1063.06 of this Subtitle, of five hundred dollars ($500) or more, or who made interest payments of five hundred dollars ($500) or more to individuals in any taxable year, except tax-exempt interest under this Subtitle, not including interests considered in Section 103 l.02(a)(3), (or, in the case that such payments are made by the Government of Puerto Rico or any instrumentality or political subdivision thereof, the officials or employees who have infonnation as to such payments and are required to make returns in regard

AAFAF_CONF_0008228

thereto under the regulations provided hereinafter) shall render, on or before February 28 of the following year, a true and accurate statement to the Secretary, under such regulations and in such form and manner and to such extent as may be prescribed by the Secretary, setting forth the amount of such gains, profits, and income, and the name, address, and account number of the recipient of such payments. Any individual who, at the time of filing his income tax return has failed to file with the Department of the Treasury the information statements required in this subsection, may not claim such payments as operating expenses, in cases in which such payments constitute operating expenses of the payer. However, in the case of individuals under the accrual method or with a fiscal year may claim the deduction even though the amount is not shown in an information statement, insofar as such individuals file together with their retun1 a reconciliation between the expense claimed and the amount reported in the statement.

Provided, that in order to deduct the payment for purposes of determining the net income subject to alternate basic tax, in the case of individuals, or alternative minimum tax, in the case of corporations, all payments shall be reported in an information statement, even though the amount to be reported is less than five hundred dollars ($500).

(b)     …
                          "
          …

Section 63.- Subsection (a) of Section 1063.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.03.- Reports on Interest Payments.-

(a)     Any person that credits or makes payments of fifty dollars ($50) or more for interest as described in Sections 1023.04 or 1023.05 to any individual and is required under Section 1062.09 to withhold taxes on the payment of such

interest, shall file a retun1 in accordance with the forms and regulations prescribed by the Secretary, specifying the total amount of interest paid or credited, the tax deducted and withheld, and the name, address, social security number or employer identification number issued by the U.S. Inten1al Revenue Service, and account number, if granted, of the person to whom the payment was made, or the tax withheld. Said return shall be filed on or before February 28 of the year following the calendar year in which the interest was paid or credited. Any person that at the time of filing the income tax return has not filed with the Department of the Treasury the information statements required in this subsection shall not claim such payments as interest expenses. However, in the case of persons under the accrual method or with a fiscal year, they may claim the deduction even when the amount was not reported in an information statement, provided that a reconciliation between the claimed expenses and the amount reported in the return is enclosed with the return.

Provided, that the provisions of this Section shall also apply to the payment of interest to any entity, as such term is defined in Section 1010.0S(c), and trust, in effect for taxable years beginning after December 31, 2018.

(b)     …"

Section 64.- Subsection (a) of Section 1063.07 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.07.- Information Returns on Credit Extension Transactions - Approved Amount Transaction Statement.-

(a)     Any financial business, as such term is defined in subsection (d), and any stock broker shall file with the Secretary, pursuant to such regulations and in such form or manner prescribed by the Secretary through regulations or other general written communication, an information return to be known as Approved

Amount Transaction Statement (Statement) of each approved credit application or approved extension of credit in the amount of two hundred fifty thousand dollars ($250,000) or more (five hundred thousand dollars ($500,000) or more in the case of mortgages); provided, that if there is more than one credit application approved in connection with a person within a term of thirty (30) days, the total amount of approved credit applications shall be treated as only one application for the purpose of the applicability of this Section. Provided, that as of January 1, 2019, it shall be required a Statement of each approved credit application or approved extension of credit, including approved auto loans or leases in the amount of one hundred thousand dollars ($100,000) or more (two hundred thousand dollars ($200,000) or more in the case of mortgages).

(b)      …

    "

…

Section 65.- Subsection (d) of Section 1063.09 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.09.- Regulations to Require Information Statements Using Electronic Means.-

(a)      …

…

(d)      Failure to File.- If any person who is required to submit information statements using electronic means fails to file such statements in such manner, it shall be considered as if such statements have not been filed; therefore, said person shall be subject to penalties for failure to file the income tax returns or statements set forth in Subtitle F. Furthermore, such person may not claim such payments as operating expenses in his income tax return."

Section 66.- Subsection (a) of Section 1063.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.12.- Reports on Income Subject to Alternate Basic Tax.-

(a) Any person, in whatever capacity acting, that credits or makes payments of five hundred dollars ($500) or more to any individual for interests, rents, dividends, pensions, annuities, or any other item of income subject to alten1ate basic tax shall be required to report such payments to the Secretary and the individual, in such forms, on the date, and in such manner as prescribed by the Secretary through regulations, circular letter, or any other general administrative determination or communication. Any person that at the time of filing the income tax retun1 has not filed with the Department of the Treasury the information statements required in this Section may not claim such payments as operating expenses. Provided, that in the case of persons under the accrual method or with an economic year, they may claim the deduction even when the amount was not reported in an infonnation statement, provided, that a reconciliation between the claimed expense and the amount reported in the statement is enclosed with the statement."

Section 67.- A new Section 1063.15 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1063 .15 .- Information Statement on Electronic Transactions.-

(a) For transactions conducted as of January 1, 2019, every entity engaged in settlement of electronic payments, including the processing of payment cards or network transactions, shall be required to report every year the total amount of payments settled and credited to the participating payee of the payment settlement services for payment card or network transactions.

HEIN EXHIBIT 83

AAFAF_CONF_0008232

(b)     This infom1ation statement shall be filed with the Secretary and the participating payee by the payment settlement entity not later than February 28 of the year following the calendar year for which the infonnation required in subsection (a) of this Section is reported. Such statement shall be filed with the Secretary pursuant to such regulations and in such fonn or manner and of such extension as prescribed by the Secretary, stating the amount of said transactions, the name, address, and account number of the payee. The Secretary may require that this information statement be filed electronically. The statement shall include the total amount of the transactions without taking into account the payment settlement fee or any other fee or commission that the payment settlement entity deducts from the net amount remitted to the participating payee.

(c)     Definitions.- For purposes of this Section:

(1)     The term 'payment card transactions' means any transaction settled through a bank or payment settlement entity contracted by a participating payee to process a payment order made by a customer of such payee using a payment card.

(2)     The term 'network transaction' means transactions settled by a payment settlement entity that receives payment orders through the internet or a network from the customers of participating payees and is required to remit such amount charged or received to the appropriate participating payee.

(3)     The term 'payment settlement entity' means the entity that receives the payment order, whether through a payment card reader, a communications network, or the internet, processes such payment order, and remits the payment to the participating payee. Payment Settlement Entity also includes those organizations that establish a third party network which centralizes the provision of goods and services of participating payees and through which the

payment for goods and services acquired by purchasers connected to the network are settled.

(4)     The term 'participating payee' means the merchant that accepts payment cards or accepts payment from a third party settlement organization through the internet or communications network."

Section 68.- Subsection (a) of Section 1071.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1071.02.- Income and Credits of Partners.-

(a)     …

(1)     …

…

(11)     other income, gain, loss, deduction, or credit items, as provided by the Secretary through regulations, including:

(A)     in order to determine the alternative minimum tax of each partner pursuant to Section 1022.03 of this Code, each partner's distributive share of:

(i)     the amount of expenses incurred or paid to a related party or a home office located outside of Puerto Rico; the value of personal property purchased from such parties, as provided in Section 1022.03 of this Code; the gross income of the partnership, as defined in paragraph (1) of subsection (g) of Section 1023.10, excluding the gross income of the partnership derived from the operation of a finance business, as defined in paragraph (3) of subsection (g) of Section 1023.10;

(ii)     the amount of the deductions provided in paragraph (7) of subsection (a) of Section 1022.04;

HEIN EXHIBIT 83

AAFAF_CONF_0008234

(iii)   the amount of the adjustments provided in paragraphs (1) through (6) of subsection (a) of Section 1022.04; and

(iv)   the amount of the adjustments provided in subsection (b) of Section 1022.04.

(B)   in order to determine the alternate basic tax in accordance with Section 1021.02 of this Code, each partner's distributive share of:

(i)   the partnership gross income as defined in paragraph (1) of subsection (g) of Section 1023.10, excluding the partnership gross income derived from the operation of a finance business, as defined in paragraph (3) of subsection (g) of Section 1023.10; and

(ii)   the net income of the partnership as determined in accordance with the provisions of Section 1021.02(a)(2).

(C)   the fifty percent (50%) surtax credit on gross income imposed under Section 1023.10(a)(2)(A) in the event that a partnership is a finance business, as determined in accordance with the provisions of said Section 1023.10.

(b)   …
   …"
…

Section 69.- Subsection (d) of Section 1071.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1071.04.-  Partner's Distributive Share.-

(a)   …

…

(d)   Limitation on Allowance of Losses.-

(1)   General Rule.- A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership taxable year

AAFAF_CONF_0008235

in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership.

(2)     Special Rules.

(A)     In general - In determining the amount of any loss in accordance with paragraph (1), the partners' distributive share in the amount described in paragraph (5) of Section 1071.02(a) and the credit provided in Section 1051.01 shall be taken into account.

(B)     Exception - In the case of a charitable donation of a property whose market value exceeds its adjusted basis, subparagraph (A) shall not apply to the amount of the partner's distributive share of such excess.

(e)     …
  "
…

Section 70.- Subsection (b) of Section 1071.08 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1071.08.-  Continuation of Partnership.-

(a)     …

(b)     Termination.-

(1)     General Rule.- For purposes of subsection (a), a partnership shall be considered as terminated only if:

(A)     no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership.

(2)     …"

Section 71.- Subsection (d) of Section 1074.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

AAFAF_CONF_0008236

"Section 1074.03.- Special Rules Where Substantial Built-in Loss and Section 1075.04 Election-

(a)      …

(b)      …

(c)      …

(d)      Substantial Built-in Loss.-

(1)      In General.- For purposes of this Section, a partnership has a substantial built-in loss with respect to the transfer of an interest in a partnership if:

(A)      the partnership's adjusted basis in the partnership property exceeds the fair market value of such property by more than two hundred fifty thousand dollars ($250,000).

(B)      the partnership's assets were sold for cash equal to their fair market value immediately after such transfer, in which case the transferee partner shall be allocated a loss of more than two hundred fifty thousand dollars ($250,000).

(2)      …

(e)      …

(f)      …"

Section 72.- Subsections (b) and (d) of Section 1081.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1081.01.- Employee Trusts.-

(a)      …

…

(b)      Taxability of Beneficiary.-

( ! )   …

(A)      …

…

(D) Distributions by Reason of a Disaster Declared by the Governor of Puerto Rico.- If any portion of the benefits under the trust with respect to a participant are paid to the participant or his beneficiary to cover Eligible Expenses, such distributions shall be treated as special distributions subject to taxation as provided herein.

(i) The first ten thousand dollars ($10,000) that are distributed within the term established by the Secretary through regulations, administrative determination, circular letter, or general information bulletin, after a Declaration of Disaster by the Governor of Puerto Rico, shall be excluded from the definition of gross income, pursuant to Section 1031.0l(b)(l8). To determine the amount excluded, the amounts distributed under this subsection, whether from one or various retirement plans, shall be added to the amounts distributed under Section 1082.0l(d)(l)(I), whether from one or various Individual Retirement Accounts, under the same Disaster Declared by the Governor of Puerto Rico.

(ii) Any distribution in excess of the amount excluded in clause (i) of this subparagraph shall be subject to a special ten percent (10%) tax in lieu of any other tax imposed in this Subtitle, including the alternate basic tax.

(iii) Provided, that the sum of the amounts distributed under this subsection and Section 1081.02(d)(l)(I) may not exceed one hundred thousand dollars ($100,000) per Disaster Declared by the Governor of Puerto Rico. Any amount distributed in excess of one hundred thousand dollars ($100,000) shall not be eligible for the preferential rate provided in clause (ii) of this subparagraph.

(iv) The amounts distributed under this subsection shall be deemed to be distributed first from the contributions and the increase in value for which the participant or beneficiary has not already paid taxes and, if

AAFAF_CONF_0008238

insufficient, then, from the pension base, that is, from the after-tax contributions and the amounts for which the participant has already paid taxes.

(v)      Any person who makes distributions by reason of a Disaster Declared by the Governor of Puerto Rico shall deduct and withhold from such distributions, to the extent that they exceed the amount excluded, but not over the distribution limit provided in clause (iii) of this subparagraph, an amount equal to ten percent (10%). If the required withholding at the source is not made at the time of payment, the amount distributed shall be deemed to be ordinary income and the exemption provided in Section 1031.02(a)(l3) of this Code shall not apply.

(vi)     Definitions.-

(!)      'Disaster Declared by the Governor of Puerto Rico' shall have the meaning provided in Section 1031.0l(b)(l6)(C).

(II)     'Eligible Expense' for purposes of this paragraph, shall mean any expense incurred by an individual to offset losses or damages sustained as a result of a Disaster Declared by the Governor of Puerto Rico, and special or unforeseen expenses to cover basic needs arising from such disaster. The fact that such expenses were paid by the spouse, descendants or ancestors of the participant or beneficiary shall not invalidate the eligibility thereof.

(vi)[ sic]   the Secretary is hereby empowered to establish through regulations, administrative determination, circular letter, or general information bulletin the documents that the participant or beneficiary shall be required to submit to his employer or the plan administrator in order to receive the Distribution by reason of a Disaster Declared by the Governor of Puerto Rico.

(2)      …

(3)      Requirement to Deduct and Withhold.-

AAFAF _CONF _0008239

(A)    Total Distributions.- Any person, acting in any capacity, who makes total distributions payable with respect to any participant or beneficiary shall deduct and withhold from said distributions, an amount equal to twenty percent (20%) of the amount thereof in excess of the amounts contributed by the participant to the plan for which he has already paid taxes. This deduction and withholding shall be of ten percent (10%) if the trust meets the requirements provided in subparagraphs (A) and (B) of paragraph (1) of this subsection. The employer whose employees participate in the plan or the administrator of the plan shall certify to the person making the distributions of the trust that the requirement of investment in 'property located in Puerto Rico' has been met. Once the certification issued by the employer is received, the person making the distributions of the trust shall not be liable for the payment of taxes, interest, or penalties in case this requirement has not been met, but shall be liable for deducting and withholding the ten percent (10%).

(4)    Duty to Pay or Deposit Deducted or Withheld Taxes.- Any person required to deduct and withhold any tax pursuant to the provisions of paragraph (3) or subparagraph (D) of paragraph (1), and to pay over any tax to the Secretary, shall pay the amount of the tax thus deducted and withheld to the Puerto Rico Internal Revenue Collection Offices of the Department of the Treasury, or deposit it in any of the banking institutions designated as the depositary of public funds, which have been authorized by the Secretary to receive said tax, or deposit it electronically as provided by the Secretary through regulations, administrative determination, circular letter, or general information bulletin. The tax shall be paid or deposited not later than the fifteenth (15th) day of the month following the date on which the distribution was made.

(5)    Tax Liability.- Any person required to deduct and withhold any tax pursuant to the provisions of paragraph (3) or subparagraph (D) of paragraph

AAFAF_CONF_0008240

(1), shall be liable to the Secretary for the payment of said tax and shall not be liable to any other person for the amount of any such payment.

(6)   Infom1ation Statement and Tax Return.-  Any person required to deduct and withhold any tax pursuant to the provisions of paragraph (3) who makes distributions pursuant to subparagraph (D) of paragraph (1), shall file an information statement and retun1 relating thereto, pursuant to the provisions of Section 1063.13.

(7)   Failure to Withhold.- If the withholding agent, in violation of the provisions of paragraph (3) or subparagraph (D) of paragraph (1), fails to make the withholding provided therein, the amount that should have been deducted and withheld (unless the recipient of the eligible distribution pays the tax to the Secretary) shall be collected from the withholding agent following the same procedure that would be used if it were a tax owed by the withholding agent.

(8)   …

…

(c)   …

(d)   …

(1)   …

(2)   …

(A)   …

(B)   Provides for the amounts held by the trust, which are attributable to employer contributions made according to the employee's election may not be distributable to participants or other beneficiaries earlier than:

(i)   …

…

(viii)  Distributions by reason of a Disaster Declared by the Goven1or of Puerto Rico.

HEIN EXHIBIT 83

AAFAF_CONF_0008241

(C)   …

(3)   …

(A)   …

…

(E)   …

(i)   …

(ii)   …

(iii)   …

(I)   …

(II)   …

(III)   for the preceding taxable year had a compensation from the employer in excess of the applicable limit for a specific taxable year under Section 414(q)(l)(B) of the United States Internal Revenue Code of 1986, as amended, or any other successor provision of law, as adjusted by the U.S. Internal Revenue Service.

(IV)   ...

…   "

Section 73.- Subsections (d), (f), and (g) of Section 1081.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1081.02.- Individual Retirement Accounts.-

(a)   …

(b)   …

(c)   …

(d)   Distribution of Individual Retirement Account Assets.-

(1)   Taxing of payments or distributions out of an individual retirement account.-

(A)    …

(B)    That portion of any amount paid or distributed during taxable years beginning before July 1, 2014, out of an individual retirement account that consists of interest described in Section 1023.04 shall be subject to the provisions of said Section 1023.04 for the taxable year in which the owner or beneficiary of an individual retirement account actually receives such interest in total or partial distribution of an individual retirement account. Any interest amount paid or credited after June 30, 2014, and before January 1, 2019 on an individual retirement account shall continue to be subject to a seventeen percent (17%)-tax rate, provided that it satisfies the requirements imposed in Section 1023.04(b). Provided, that for any interest amount paid or credited after December 31, 2018, the tax rate on such interest shall be ten percent (10%), provided that it satisfies the requirements imposed in Section 1023.04(b).

(C)    Seventeen-percent (17%) special tax:

(i)    The owner or beneficiary of an individual retirement account who receives a total or partial distribution from an individual retirement account which does not constitute a distribution of interest described in Section 1023.04, nor a distribution of his contribution to the individual retirement account, and which consists of income from sources within Puerto Rico, as defined in clause (ii) of this paragraph, received by said individual retirement account, may opt to pay a tax on said amount, in lieu of any other tax imposed by this Subtitle, equal to seventeen percent (17%) for the taxable year in which the owner or beneficiary of the individual retirement account actually receives said total or partial distribution. If the owner or beneficiary of the individual retirement account opts to pay the seventeen percent (17%) tax provided in this clause (i), the trustee of the individual retirement account shall be required to deduct and withhold the seventeen percent (17%) tax of the distributed amount. The trustee shall not be

required to make the deduction and withholding provided herein if the distribution qualifies as a rollover under Section 1081.02(d)(4), and the distribution is made directly by the trustee to the trustee of another individual retirement account by the instructions of the owner or beneficiary thereof. Provided, that for payments made after December 31, 2018, the owner or beneficiary of the individual retirement account may opt to avail himself of the provisions of this subparagraph, but the applicable tax shall be equal to ten percent (10%) of the amount received as a distribution.

(D)     …

(E)     Requirements to Avail Oneself of the Seventeen Percent (17%) or Ten Percent (10%) Tax.-  The option to pay the seventeen percent (17%) tax provided in Section 1023.04, or the ten percent (10%) tax provided in subparagraph (D), may be made at any time before the trustee of the individual retirement account makes the payment or distribution out of the individual retirement account. Provided, that for payments made after December 31, 2018, the tax applicable to such payments shall be ten percent (10%).

(F)     Requirement to Pay or Deposit Deducted or Withheld Taxes.- Every trustee of an individual retirement account who is required to deduct and withhold the tax provided in subparagraph (C)(i), in subparagraph (D) and subparagraph (J), shall pay the amount of the tax thus deducted and withheld in the form and manner established by the Secretary, including requiring the deposits to be made by electronic means. The tax shall be paid or deposited on or before the fifteenth (15th) day of the month following the date the distribution was made.

(G)     No Withholding.- If the trustee of the individual retirement account, in violation of the provisions of this subsection, fails to make the withholding referred to in subparagraphs (C), (D), or (J), the amount that should have been deducted and withheld (unless the receiver of the distribution

AAFAF_CONF_0008244

pays the tax to the Secretary) shall be collected from the trustee of the individual retirement account following the same procedure and in the same manner as if it were a tax owed by the trustee.

(H)    …

(I)    Distributions by Reason of a Disaster Declared by the Governor of Puerto Rico.- Any amount paid or distributed from an individual retirement account to cover Eligible Expenses shall be treated as a special distribution subject to taxation as provided in subparagraph (J) of this paragraph.

(i)    For purposes of this subparagraph, Eligible Expenses shall have the meaning provided in Section 1081.0l(b)(l)(D)(v)(II).

(ii)    Provided, that the sum of the amounts distributed under this subsection and Section 1081.02(b)(1)(D) may not exceed one hundred thousand dollars ($100,000) per Disaster Declared by the Governor of Puerto Rico. Any amount distributed in excess of one hundred thousand dollars ($100,000) shall not be eligible at the preferential rate provided in clause (ii) of subparagraph (J) of this paragraph.

(J)    Taxation of Distributions by Reason of Disaster Declared by the Governor of Puerto Rico.- The first ten thousand dollars ($10,000) that are paid or distributed within the term established by the Secretary through regulations, administrative determination, circular letter, or general information bulletin, after a Declaration of Disaster by the Governor of Puerto Rico, under subparagraph (I) of this paragraph, shall be excluded from the definition of Gross Income, pursuant to Section 1031.0l(b)(18).

(i)    To determine the amount excluded, the amounts distributed under subparagraph (I) of this paragraph, whether from one or various individual retirement accounts, shall be added to the amounts distributed under

AAFAF_CONF_0008245

Section 1081.0l(b)(l)(D), whether from one or various retirement plans, under the same Disaster Declared by the Governor of Puerto Rico.

(ii)    Any distribution in excess of the amount excluded in clause (i) of this subparagraph shall be subject to a special ten percent (10%) tax in lieu of any other tax imposed in this Subtitle, including the alternate basic tax.

(iii)    Provided, that the sum of the amounts distributed under subparagraph (I) of this paragraph and Section 1081.0l(b)(l)(D) may not exceed one hundred thousand dollars ($100,000) per Disaster Declared by the Governor of Puerto Rico. Any amount distributed in excess of one hundred thousand dollars ($100,000) shall not be eligible at the preferential rate provided in clause (ii) of this subparagraph.

(iv)    Any person who makes distributions by reason of a Disaster Declared by the Governor of Puerto Rico shall deduct and withhold from such distributions, to the extent that they exceed the amount excluded, but not over the distribution limit provided in clause (iii) of this subparagraph, an amount equal to ten percent (10%). If the required withholding at the source is not made at the time of payment, the amount distributed shall be deemed to be ordinary income.

(v)    The Secretary is hereby empowered to establish through regulations, administrative determination, circular letter, or general information bulletin the documents that the participant or beneficiary shall be required to submit to the financial institution or insurer that administers the individual retirement account in order to receive the distribution by reason of a Disaster Declared by the Governor of Puerto Rico.

(2)    …

(3)    …

(4)    …

(5)    …

       (6)    …

(e)    …

(f)    Reports.-

       (!)    Every trustee of an individual retirement account created under the terms of subsection (a) and every life insurance company or cooperative that issues an endowment contract or an individual retirement annuity under the terms of subsection (b) shall make reports to the Secretary and to the individuals for whom the account, endowment contract, or annuity is maintained. Such reports shall be made with respect to the contributions, distributions and such other matters as the Secretary may require through regulations. The reports required in accordance with this subsection shall be filed on such date and manner as required by said regulations. Provided, that for taxable years beginning after December 31, 2018, the reports on the amounts contributed and the amounts distributed during a calendar year shall be reported to the individual and a copy thereof shall be filed electronically with the Department of the Treasury. Such information statements shall be filed with the Department and sent to individuals not later than the last day of the second month following the month in which such contributions to individual retirement accounts have been made or the distributions have been received.

       (2)    …

…

(g)    Penalties for Distributions Prior to Attaining the Age of Sixty (60).-

       (1)    …

       (2)    The provisions of the preceding paragraph (1) shall not apply in the following situations:

           (A)    …

           …

(H)    In such cases in which the funds are withdrawn for the payment of debt on account of child support in arrears for six (6) months or more. The taxpayer shall provide a debt certification issued by the Child Support Administration (ASUME, Spanish acronym) attesting to such debt. The trustee of the account shall remit to ASUME the amount certified as debt or the total amount of funds deposited in the account, if these are insufficient to offset such debt."

Section 74.- Paragraph (4) of subsection (a) and paragraph (1) of subsection (e) of Section 1081.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1081.05.- Education Savings Account.-

(a)    Education Savings Account:

(1)    …

(2)    …

(3)    …

(4)    In the case of an employer, he shall be allowed to make contributions to the education savings accounts of the beneficiaries of his employees, up to the maximum amount allowed by this Section. The contributions of an employer shall be deemed as ordinary and necessary operating expenses of a trade or business and as such, may be deducted in the year they are made, under the provisions of Section 1033.01 of this Subtitle. These contributions shall be included as employee income for the year they are made by the employer, as provided in Section 1031.01 of this Subtitle, and may be claimed as a deduction by the employee in that same year. Provided, that for taxable years beginning after December 31, 2018, the employer may treat such contributions as a deduction to detem1ine the income subject to withholding.

(5)    …

(6)    …

AAFAF_CONF_0008248

(7)　…

(8)　…

(9)　…

(10)　…

(11)　…

(b)　…

(c)　…

(d)　…

(e)　Reports.-

(1)　The trustee of an education savings account created under the terms of subsection (a) and the life insurance company or cooperative that issues an endowment contract or an education savings annuity under the terms of subsection (b) shall make reports to the Secretary and for the individuals for whom the account, endowment, or annuity contract is maintained. Such reports shall be made with respect to the contributions, distributions, and such other matters as the Secretary may require by regulations. The reports required pursuant to this subsection shall be filed at such time and in such manner as required by said regulations. Provided, that for taxable years beginning after December 31, 2018, the reports on the amounts contributed and the amounts distributed during a calendar year shall be reported to the individual and a copy thereof shall be filed electronically with the Department of the Treasury. Such information statements shall be filed with the Department and sent to individuals not later than the last day of the second month following the month in which such contributions to individual retirement accounts have been made or the distributions have been received.

(2)　…
"
…

AAFAF_CONF_0008249

Section 75.- A subsection (g) is hereby added to Section 1101.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1101.01.- Tax Exemption to Corporations and Nonprofit Organizations.-

(a)      …

…

(g)      Application of Exemption and Compliance Attestation.- Every nonprofit entity shall file a request with the Secretary for the approval of the tax exemption under this Section. The Secretary may require a Report on Agreed Upon Procedures or a Compliance Attestation Report issued by the Certified Public Accountant with a valid license in Puerto Rico attesting that the entity meets the requirements to be granted the requested exemption. In these cases, the request shall be deemed to be approved in thirty (30) days unless the Secretary rejects it before such period elapses. The Secretary is hereby empowered to establish through regulations, administrative determination, circular letter, or general information bulletin the conditions under which the Compliance Attestation Report shall apply and the procedures to which the Certified Public Accountant shall adhere in order to issue such report."

Section 76.- A new Section 1101.02 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1101.02.- Special Tax on the Compensation Received by the Officers, Directors, and Highly-compensated Individuals of Nonprofit Organizations.-

(a)      A special tax shall be imposed on any nonprofit entity exempt under Section 1101.01 of this Code for the compensation paid to any employee, director,

or officer who earns a compensation for services rendered to such entity in excess of two hundred fifty thousand dollars ($250,000), when the volume of business of the entity is less than twenty-five million dollars ($25,000,000); in excess of five hundred thousand dollars ($500,000), when the volume of business of the entity is equal to or higher than twenty-five million dollars ($25,000,000), but less than fifty million dollars ($50,000,000); in excess of seven hundred fifty thousand dollars ($750,000) when the volume of business of the entity is equal to or higher than fifty million dollars ($50,000,000), but less than seventy-five million dollars ($75,000,000); in excess of one million dollars ($1,000,000) when the volume of business of the entity is equal to or higher than seventy-five million dollars ($75,000,000). Provided, that this Section shall not apply to the entities described in paragraph (8) of subsection (a) of Section 1101.01 of this Code or those entities that are able to show to the satisfaction of the Secretary, that the compensation paid is appropriate for the services rendered.

(b)     The term compensation shall be deemed to include wages as well as any salary, distribution, or special bonus, fringe benefits received, including the right to deferred compensation plans by such employee, director, or officer within the taxable year, for the services rendered to such entity.

(c)     The special tax shall be determined using the maximum rate provided in Sections 1022.01 and 1022.02 applicable to corporations."

Section 77.- Section 1101.03 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1101.03 .- Special Tax for the Payment of Compensation for Sexual Harassment Claims and Related Expenses.-

A special tax shall be imposed on every nonprofit entity exempt under Section 1101.01 on the payments described in Section 1033.17(h). The special tax

AAFAF_CONF_0008251

shall be determined using the maximum rate provided in sections 1022.01 and 1022.02 applicable to corporations."

Section 78.- Subsection (c) of Section 1112.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1112.01.- Taxation on Registered Investment Companies and Their Stockholders.-

(a)     …

…

(c)     Definitions.- For purposes of this Section:

(1)     …

…

(5)     Registered Investment Company Stockholders.- For purposes of subsection (b)(1), the term 'registered investment companies' also includes, subject to the provisions of the regulations promulgated by the Secretary, any registered investment company or real estate investment trust created or organized under the laws of the United States of America or any state of the United States of America that, during the taxable year, and that in the case of taxable years beginning before January 1, 2019, meets the requirements of the 'Puerto Rico Investment Companies Act of 2013.' Provided, that for taxable years beginning after December 31, 2018, it shall not be required for a registered investment company or real estate investment trust organized under the laws of the United States of America or any state of the United States of America to meet the requirements of the 'Puerto Rico Investment Companies Act of 2013,' if the fund meets the federal requirements applicable to such companies and trusts.

(d)     …
       "
…

Section 79.- Paragraph (7) of subsection (a) of Section 1113.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1113.04.-  Inclusion of Special Corporation Income.-

(a)      …

      (1)     …

      …

      (7)     other items of income, gains, losses, deductions, or credits, as established by the Secretary through regulations, including:

         (A)     in order to determine the alten1ative minimum tax of each partner pursuant to Section 1022.03 of this Code, each partner's distributive share of:

           (i)     the amount of the deductions provided in paragraph (7) of subsection (a) of Section 1022.04;

           (ii)     the amount of the adjustments provided in paragraphs (1) through (6) of subsection (a) of Section 1022.04; and

           (iii)     the amount of the adjustments provided in subsection (b) of Section 1022.04.

         (B)     in order to determine the alternate basic tax in accordance with Section 1021.02 of this Code, each partner's distributive share in the net income of the partnership determined in accordance with the provisions of Section 1021.02(a)(2).

      (b)     …
       "
…

Section 80.- Subsection (a) of Section 1114.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

AAFAF_CONF_0008253

"Section 1114.06.-  Inclusion of Special Partnership Income.-

(a)      …

   (1)     …

   …

   (11)   other items of income, gains, losses, deductions, or credits, as prescribed by the Secretary through regulations, including:

   (A)   in order to determine the alternative minimum tax for each partner in accordance with Section 1022.03 of this Code, each partner's distributive share of:

   (i)     the amount of expenses incurred or paid to a related person or a home office located outside of Puerto Rico; the value of personal property purchased from such persons, as provided in Section 1022.03 of this Code; the partnership's gross income, as defined in paragraph (1) of subsection (g) of Section 1023 .10, of the Special Partnership;

   (ii)    the amount of the deductions provided in paragraph (7) of subsection (a) of Section 1022.04;

   (iii)   the amount of the adjustments provided in paragraphs (1) through (6) of subsection (a) of Section 1022.04; and

   (iv)    the amount of the adjustments provided in subsection (b) of Section 1022.04.

   (B)    in order to determine the alternate basic tax in accordance with Section 1021.02 of this Code, each partner's distributive share of the partnership gross income, as defined in subsection (e) of Section 1023 .10;  and the net income of the partnership determined in accordance with the provisions of Section 1021.02(a)(2).

   The provisions of this subsection shall not apply to a partner who is subject to the tax imposed under Sections 1091.0l(a) or 1092.0l(a). For purposes

AAFAF_CONF_0008254

of Sections 1091.0l(a) and 1092.0l(a), the partner's distributive share of the special partnership's net income shall be the total taxable amount in paragraphs (1) through (5) and (9) through (11) of subsection (a).

(b)    …

"
...

Section 81.- Subparagraph (D) of paragraph (3) of subsection (c) of Section 1115.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1115.01.- General Rule.-

(a)    …

(b)    …

(c)    Eligible Corporations of Individuals.-

(1)    …

(2)    …

(3)    Eligible Corporations.- For purposes of paragraph (1 ), the term 'eligible corporation' means any domestic corporation other than—

(A)    …

(B)    …

(C)    …

(D)    For taxable years beginning before January 1, 2018, a tax-exempt corporation under the provisions of Act No. 57 of June 13, 1963, Act No. 26 of June 2, 1978, Act No. 8 of January 24, 1987, or any other similar law, except for an exempt corporation under the provisions of Act No. 78-1993,

(E)    …

(F)    …

(G)    …
"
…

Section 82.- Section 1116.16 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1116.16.- Export of Services.-

Entities covered under Act No. 20-2012, better known as the 'Act to Promote the Export of Services,' as amended, or any similar previous or successor law."

Section 83.- Section 1116.17 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1116.17.- Relocation of Individual Investors to Puerto Rico.-

Individuals covered under Act No. *22* of January 17, 2012, better known as the 'Act to Promote the Relocation of Individual Investors to Puerto Rico,' as amended, or any similar previous or successor law."

Section 84.- Section 1116.18 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1116.18.- Medical Professionals Retention and Return Incentive.-

Individuals covered under Act No. 14 of February 21, 2017, better known as the 'Medical Professionals Retention and Return Incentives Act,' as amended, or any similar previous or successor law."

Section 85.- Subsection (e) of Section 2051.01 of Act No. 1-2011, as amended, is hereby amended to read as follows:

"Section 2051.01.- Final Decedent's Estate Tax Return.-

(a)      …

         …

AAFAF_CONF_0008256

(e)   Information Return for Decedents Who Died After December 31, 2017.- All executors of an estate, whose decedent has died after December 31, 2017, shall file with the Secretary, within a term of twelve (12) months immediately after the time of death of the decedent, a final information return, under oath, observing such requirements as the Secretary may provide by regulation, circular letter, general information bulletin, or administrative detem1ination. It shall not be required to include in such return the market value of the property as of the date of death of the decedent, however, a detailed description of each property, including any existing unique identifier according to the type of property and the tax basis or liability when held by the decedent.

(1)   ..."

Section 86.- Subsection (a) of Section 3050.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 3050.02.-  License Fees for Coin-Operated Machines.-

(a)   Any person engaged in operating amusement machines or devices operated by coins, cards, tokens, or similar objects, or pool tables, shall pay an annual tax on account of license fees in the amount stated below:

(1)   For purposes of this Section and other provisions applicable to this Subtitle, the following tem1s shall have the meaning stated hereinbelow:

(A)   'Adult Amusement Machines.'- Refers to machines which do not contain the mechanisms or features of Gambling Devices and electronic video and game machines operated by coins, cards, tokens, or similar objects, with violent or sexual content, or content appropriate for individuals older than eighteen (18) years when the abilities and skills of the player significantly affect the end result of the game, and do not have mechanisms or features of

AAFAF_CONF_0008257

gambling devices, as defined in this Act and Act No. 111 of August 22, 1993, as amended.

Amusement machines for the exclusive use of children and youths, vending machines for cigarettes, food, refreshments, or postage stamps, change machines, movie and videogame rental machines, pay phones, and slot machines in the gambling halls of tourist hotels, authorized under Act No. 221 of May 15, 1948, as amended, are hereby excluded from this term. Provided, that the term 'amusement machines for the exclusive use of children and youths' refers to all those machines that do not award prizes to the players or that award toys or tickets to the player who may redeem them for toys or other non-cash prizes, and are handed to players on the premises where the machine is located.

(B)   'Gambling Devices.'- refers to machines that use an element of chance to pay prizes, as provided in this Act and Section 3 of Act No. 11 of August 22, 1933, as amended, known as 'Games of Chance Act.'

(2)   Until June 30, 2017:

(A)  For each jukebox, pool table, amusement machine or device, operated by coins or tokens, of a mechanical, electronic type, or video games intended for children and youths, when the abilities or skills of the player significantly affect the end result of the game.          $100

(B)  For each video and electronic game machine operated by coins or tokens, with violent or sexual content, when the abilities or skills of the player significantly affect the end result of the game.          $400

(C)   For each screen of adult amusement machine, as defined in Act No. 11 of August 22, 1933, as          $2,500

AAFAF _CONF_0008258

amended, known as 'Games of Chance Act.'

(3)   Beginning July 1, 2017, but until June 30, 2019, the Secretary may impose the following annual tax on account of license fees:

(A)   For each jukebox, pool table,   Up to $300
amusement machine or device, operated by coins, cards, tokens, or similar object, of a mechanical or electronic type, or video games that (i) lack violent or sexual content and that may be used by any person, including underage persons, and (ii) when the abilities or skills of the player significantly affect the end result of the game.

(B)   For each video and electronic game   $3,000
machine, operated by coins, cards, tokens, or any similar device, with violent or sexual content, for individuals older than eighteen (18) years when the abilities or skills of the player significantly affect the end result of the game, or for each screen of adult amusement machine as defined in Act No. 11 of August 22, 1933, as amended, known as 'Games of Chance Act.'

(C)   For each screen of electronic game   $3,000
machine, operated by coins or tokens, when the abilities or skills of the player significantly affect the end result of the game, which are not included in the paragraphs above.

(4)   Beginning January 1, 2019, the Secretary may collect the following annual tax on account of license fees:

(A)   For each jukebox and pool table.   $300

(B)   For each amusement machine or device,   $100
operated by coins, cards, tokens, or similar object, of a

mechanical or electronic type, or video games that (i) lack violent or sexual content, and that may be used by any person, including underage persons, and (ii) when the abilities or skills of the player significantly affect the end result of the game.

(C) For each electronic game machine or screen, as defined in in this Section.                    $3,000

(D) For each screen of electronic game machine, operated by coins or tokens, when the abilities or skills of the player significantly affect the end result of the game, which are not included in the paragraphs above, and do not have mechanisms or devices that are characteristic of gambling devices, as defined in this Section.                    $1,500

(5)    With regard to the revenues exclusively obtained from the payment of the annual tax on account of adult amusement machine license fees, as defined in this Section, fifty percent (50%) of said tax shall be deposited in the General Fund and the remaining fifty percent (50%) shall be allocated to the Puerto Rico Tourism Company.

(6)    The Secretary shall prescribe through regulations, administrative determination, circular letter, or general infom1ation bulletin the manner in which the provisions of this Section shall apply. The Secretary shall have discretion to inspect, or may refer to the Games of Chance Division of the Puerto Rico Tourism Company for inspection, every type of machine subject to the provisions of this Act and to determine which of the classifications set forth in paragraph (4) of this subsection (a) shall apply thereto.

(7)    The Secretary is hereby authorized to, not later than March 31, 2019, render invalid any license issued under paragraphs (2) and (3) of subsection (a) of this Section that is valid as of January 1, 2019, and direct the renewal of such

AAFAF_CONF_0008260

license under subsection (a)(4) of this Section. The Secretary shall establish the expiration date under this paragraph by administrative determination, circular letter, or general information bulletin.

(b)　　...

　　　　　"

　　　...

Section 87.- Subsection (f) is hereby added to Section 3050.10 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 3050.10.- License Transfer.-

(a)　　...

　　　...

(f)　　For purposes of this Section, the term 'transfer' shall include a reorganization, as defined in Section 1034.04(g) of this Code. Provided, that in these cases, if both the former and the current license holder are controlled by the same person or group of persons, as defined in Section 1010.05 of this Code, the license may be used for the remaining term that the original holder had before renewal."

Section 88.- Subsection (a) of Section 3060.08 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 3060.08.- Tern1 for License Fee Payment.-

(a)　　The license fees required in Sections 3050.01, 3050.02, 3050.03, and 3050.04 of this Subtitle shall be paid on an annual basis. In the case of new licenses, the required license fees shall be paid proportionately to the number of months during which they shall be valid in accordance with the table in subsection (b). In these cases, the payment shall cover, and be apportioned to, the total number of months from the date on which the new license is issued to the date on

which the payment of the license fee is once again due. Notwithstanding, the taxpayer shall have the option to make the payment corresponding to the number of months from the date on which the new license is issued to the date on which the payment of the license fee is once again due, plus an additional year. Whenever the taxpayer selects this option of payment, the license shall be valid for the number of months that such a payment covers.

(1)     The provisions of subsection (a) notwithstanding, in the case of license renewals or applications to be made beginning January 1, 2019, the taxpayer is hereby granted the option to obtain a license valid for two (2) years. Provided, that in these cases, the taxpayer shall pay a license fee that shall be equal to two point five (2.5) times the license fee established in Sections 3050.01(a), 3050.02(a), 3050.03, and 3050.04(a) of the Code. The Secretary shall establish through regulations, administrative determination, circular letter, or general infom1ation bulletin the form and manner in which the provisions of this paragraph shall apply.

     "
     ...

Section 89.- Subsections (1), (m), (11), (nn), and (bbb) of Section 4010.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 4010.01.-  General Definitions.-

For purposes of this Subtitle, the following terms, words, and phrases shall have the general meaning expressed below, except when the context clearly indicates otherwise:

(a)     ...

...

(l)     ...

     (1)     ...

(A)    ...

...

(E)    the dues and fees paid to private or membership clubs that provide facilities for the purchase of goods or services, whether these are commercial physical facilities or internet memberships, which allow for the acquisition of goods, services and benefits in exchange for the payment of membership fees or dues.

(2)    ...

(m)    Candy or Sweets.- Means any confection of sugar, honey, and any other natural or artificial sweetener which is combined with chocolate, fruit, nuts, or other ingredients or condiments to form bars, drops, creams, or pieces. The term 'candy' does not include confections that contain flour and that do not require refrigeration.

...

(ll)    ...

(ee)   Sales Price.-

(1)    ...

(2)    Sales Price.- The sales price shall not include:

(A)    Discounts allowed by the merchant and used by the purchaser in a sale, including cash or coupons that are not refundable by third parties;

(i)    Provided, that in the event that a product is sold at a discount from the manufacturer or wholesaler who shall subsequently refund the difference to the retailer, the manufacturer or wholesaler shall be required to refund, together with the discount, an amount equal to the sales tax that would be collected if such refund were a sale.

AAFAF_CONF_0008263

(B)     ...

          ...

(11)    ...

(A)     Designated professional services rendered by persons whose annual volume of business does not exceed fifty thousand dollars ($50,000). If a person belongs to a controlled group, as defined in Section 1010.04, the volume of business of said person shall be determined taking into account the volume of business of all the members of the controlled group. For purposes of this subsection, a partnership, special partnership, and corporation of individuals shall be treated as a corporation under Section 1010.04 to determine whether it is a member of a controlled group. In the case of a person who is an individual, the volume of business shall be determined taking into account the volume of business of all his trade, business, or income-producing activities.

(i)     Provided, that from March 1, 2019, the amount of volume of business that is established in this subsection shall be two hundred thousand dollars ($200,000); and

(ii)    To determine if the volume of business of the designated professional services does not exceed the amount established in this clause (i) of this subparagraph (A), the aggregated volume of business generated for the immediately preceding taxable year shall be taken into account;

          …

(mm)

(B)     legal services provided by bar members authorized by the Supreme Court of Puerto Rico to practice the legal profession in Puerto Rico, or the appropriate entity in a foreign jurisdiction, only with respect to the fees on account of services related to the legal representation before the General Court of Justice, the U.S. District Court for the District of Puerto Rico, the U.S. Court of

AAFAF_CONF_0008264

Appeals for the First Circuit, and the Supreme Court of the United States, or administrative agencies of the Government of Puerto Rico, legal advisory services, and notary public services;

        (C)    ...

              ...

**(llll)**  ...

    (1)    ...

        ...

    (3)    …

        (A)    ...

        ...

...

(bbb)  …

    (1)    ...

        ...

    (7)    Services rendered by persons whose annual volume of business does not exceed fifty thousand dollars ($50,000). If a person belongs to a controlled group, as such term is defined in Section 1010.04, the volume of business of said person shall be determined taking into account the volume of business of all members of the controlled group. For purposes of this subsection, a partnership, special partnership, and corporation of individuals shall be treated as a corporation under Section 1010.04 to determine whether it is a member of a controlled group. In the case of a person who is an individual, the volume of business shall be determined taking into account the volume of business of all his trade, business, or income-producing activities.

(A)     Provided that, from March 1, 2019, the amount of volume of business that is established in this subsection shall be two hundred thousand dollars ($200,000); and

(B)     To determine if the volume of business of the merchant does not exceed the amount established in subparagraph (A) of this paragraph, the aggregated volume of business generated for the immediately preceding taxable year shall be taken into account;

(8)     ...

"
...

Section 90.- Subsection (b) of Section 4030.14 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4030.14.-  Exemption on Real Property Leases.-

The following shall be exempt from the sales and use tax:

(a)     ...

(b)     The payment for leasing real property for commercial purposes, made by a merchant, including the payment for office spaces or sales offices, warehouses, and parking facilities. Provided, that to be entitled to this exemption, the lessor shall provide the lessee with proof that he meets the requirement of keeping a fiscal terminal, in accordance with Section 6054.03 of Subtitle F of this Code, in the case he is required to maintain such terminal. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin, the documents to be accepted as proof of compliance with the provisions of Section 6054.03 of this Code."

Section 91.- Subsection (a) of Section 4030.19 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

AAFAF_CONF_0008266

"Section 4030.19 - Exemptions on Machinery, Surgical Material, Supplies, Items, Equipment, and Technology Used in Providing Health Services.-

(a)     Every health service facility covered under the provisions of Act No. 168 of June 30, 1968, as amended, known as the 'Hospital Facilities Tax Exemption Act,' or a subsequent similar law, shall be exempt from the sales and use tax set forth in this Subtitle for the purchase or lease of items acquired to be used exclusively in said facility such as machinery, medical and surgical materials, supplies, items, equipment, and technology used exclusively to provide healthcare services during the process of diagnosis and treatment for human diseases.

(b)     ...
      "
   ...

Section 92.- Subsection (a) of Section 4030.20 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4030.20.-  Uniforms, Supplies, and Print Books Exemption.-

(a)     Print Books and Electronic Books Exemption.- All printed and electronic books are hereby exempt from the sales and use tax. The term 'print books' shall mean every printed, non-periodical, single publication, which is edited at once or at intervals, in one or various scientific, cultural, or artistic installments or fascicles, excluding electronic publications, magazines, and newspapers. The term 'electronic book' also known as digital book or e-book is the digital or electronic form of a printed book. Provided, that the exemption provided herein applies to both the purchase and the lease of printed and electronic books.

(b)     …
      "
   …

Section 93.- A new Section 4030.26 is hereby added to Act No. 1-2011, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

AAFAF_CONF_0008267

"Section 4030.26.- Exemption for Feminine Hygiene Products.-

(a)     Feminine hygiene products shall be exempt from the payment of the sales and use tax established in this Subtitle and provided by this Subtitle."

Section 94.- Subsection (f) of Section 4060.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby added amended to read as follows:

"Section 4060.01.- Merchants' Registry.-

(a)     ...

...

(f)     The Secretary of the Treasury shall be empowered to prescribe by regulations, administrative determination, circular letter, information bulletin or any other general official document any requirement deemed necessary for the Puerto Rico Merchants' Registry administered by the Department of the Treasury, as well as for establishing the necessary coordination to carry out the allowed data transfer to the Puerto Rico Trade and Export Company and for the purposes set forth in subsection (g) of this Section.

(g)     ..."

Section 95.- Subsection (a) of Section 4210.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4210.01.- Consumption Surtax - Sales Tax.-

(a)     There shall be levied, collected, and paid, at the rate established in this Section and in addition to the sales and use tax established in Subtitle D of this Code, a tax on every sales transaction of a taxable item in Puerto Rico made after June 30, 2015, but before the effective date of Subtitle DD of this Code. The application of the tax shall be subject to the exemptions allowed under Chapter 3 of Subtitle D of this Code.

AAFAF_CONF_0008268

(1)    Exemption on Certain Items Sold by Restaurants.- Provided, that transactions carried out after October 1, 2019, related to the sale of taxable items that are considered 'prepared food,' 'soft drinks,' 'baked goods,' and 'candy or sweets,' as defined in Section 4010.01 of this Code, carried out by restaurants duly authorized and certified by the Secretary are hereby exempt from the tax established in this Section. The Secretary is hereby empowered to prescribe by regulations, administrative determination, circular letter, or general information bulletin the requirements to obtain the certification required to be entitled to the exemption established herein; provided, further, that the exemption established herein shall apply to all types of payment transactions, whether cash, credit card, debit card, electronic transfer, check, money order, or cashier's check, among other legal payment methods. For purposes of the exemption established in this paragraph, the tenn 'restaurant' includes every commercial establishment, including food trucks selling food and beverages for consumption on or off premises, insofar as these are served hot and/or with eating utensils including plates, knives, forks, spoons, drinking glasses, cups, napkins, or straws. Provided, however, that the Secretary is hereby empowered to postpone the effective date of the exemption provided herein for thirty (30) days.

(b)    ...

(c)    ...

(d)    ..."

Section 96.- Subsection (b) of Section 5022.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 5022.01.- Occupations Levied with License Fees.-

(a)    ...

AAFAF_CONF_0008269

(b)     Time to Pay License Fees.-  The license fees shall be paid annually at the time each license is obtained or renewed. Any person who engages in any of the businesses or occupations subject to the payment of license fees under the provisions of this Subtitle, shall pay them on or before the date on which such person begins to be engaged in such a business or occupation, at the rate imposed in this Section, for those months for which the license is to be issued, including the month in which such person undertakes such activities.

(1)     Notwithstanding the provisions of subsection (b), in the case of renewals or applications for license fees to be made after July 1, 2019, the taxpayer shall have the option to obtain a license for a two (2)-year period. Provided, that in these cases, the taxpayer shall pay a license fee equal to two point five (2.5) times the license fee established in subsection (a) of this Section. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general infom1ation bulletin the form and manner in which the provisions of this paragraph shall apply.

"
...

Section 97.- Subsection (c) is hereby added to Section 5050.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 5050.06.-  Alcoholic Beverage Retailer.-

(a)     ...

(b)     ...

(c)     Notwithstanding the provĭsi0ns of subsection (b), in the case of renewals or application for license fees to be made after July 1, 2019, the taxpayer shall have the option to obtain a license for a two (2)-year period. Provided, that, in these cases, the taxpayer shall pay a license fee equal to two point five (2.5) times

AAFAF_CONF_0008270

the license fee established in Section 5022.01 (a) of the Code. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the form and manner in which the provisions of this subsection shall apply."

Section 98.- Section 5050.11 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 5050.11.- Licenses for Retailers Located within Less than One Hundred (100) Meters of Schools, Churches, Religious Centers, or Public or Private Drug or Alcohol Rehabilitation Facilities.-

(a)      The Secretary shall not issue new licenses to businesses intending to engage in the retail sale of alcoholic beverages from sites located at a distance of less than one hundred (100) meters of a public or private school, a church or religious center, or a public or private facility for the rehabilitation of persons addicted to controlled substances or alcohol. The distance of one hundred (100) meters shall be considered as radial or linear, as the case may be, and shall be counted from the fence, wall, or any other sign of demarcation of the school, church or religious center, or public or private facility for the rehabilitation of persons addicted to controlled substances or alcohol. However, if the school, church or religious center, or rehabilitation facility that is located within less than one hundred (100) meters of the business consents in writing to the issuance of such license, the Secretary may issue the license under the conditions he deems necessary so that both establishments may carry out their activities.

(b)      Any person that is interested in being issued a new license under the provisions of this Section shall state in the petition required in Section 5050.06 of this Subtitle whether, at the time of filing the application, the site he plans to establish for the retail sale of alcoholic beverages is located or not at a distance of

AAFAF_CONF_0008271

less than one hundred (100) meters of a public or private school, a church or religious center, or a public or private facility for the rehabilitation of persons addicted to controlled substances or alcohol. If the site is located at a distance of less than one hundred (100) meters of a public or private school, a church or religious center, or a public or private facility for the rehabilitation of persons addicted to controlled substances or alcohol, such person shall state in the application that he obtained a written authorization from the school, church, or facility to sell alcoholic beverages at retail in said site, and provide a copy of said authorization to the Secretary. The school, church, religious center, or rehabilitation facility may authorize the issuance of the license, provided, that certain conditions, which are necessary for it to carry out its activities, are established.

(c)     If the applicant for a new license falsely states that the commercial establishment for the retail sale of alcoholic beverages is not located at a distance that is less than that established above with regards to a public or private school, a church or religious center, or a public or private facility for the rehabilitation of persons addicted to controlled substances or alcohol, or falsifies the written authorization of said school, church, religious center, or rehabilitation facility, the Secretary shall not issue the license, or if he has already issued it, he shall proceed to revoke it, pursuant to the powers granted by Subtitle F, following the procedures established therein."

Section 99.- Subsections (e) and (f) are hereby added to Section 6010.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6010.01.- Definitions.-

(a)     ...

...

AAFAF_CONF_0008272

(e)     Successor Taxpayer.- For purposes of this Subtitle and except as otherwise provided in this Code, the term 'successor taxpayer' means any person or entity as defined in Section 6010.09.

(f)     Suspension.- For purposes of Sections 6010.05, 6010.06, and 6010.07 of this Code, the term 'suspension' shall be construed in accordance with and pursuant to the rules, regulations, and interpretations of any similar provision of the United States Internal Revenue Code of 1986, Title 26 of the United States Code, as amended."

Section 100.- Subsections (a), (g), and (i) of Section 6010.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 6010.02.-  Procedure in General.-

(a)     Notice of Deficiency and Taxpayer Resources.-

(1)     Reconsideration and Administrative Hearing.-

(A)     If, in the case of any taxpayer, the Secretary were to detem1ine that there is a deficiency in connection with the taxes imposed by any Subtitle of this Code, the Secretary shall notify the taxpayer about such deficiency by certified mail. However, in the case of returns, statements, or forms filed electronically, the notice of deficiency may be sent electronically without the need to send such notice by certified mail.

...

(g)     ...

(1)     ...

...

(3)     ...

...

AAFAF_CONF_0008273

(C)    As of January 1, 2019, the term 'math error,' shall not include:

(i)    Return Adjustment as defined in subparagraph (D) of this paragraph; or

(ii)    Proof not filed together with the return, when the same is not required by this Code or any regulation promulgated thereunder, administrative determination, circular letter, information bulletin or any other general communication of the Secretary.

(D)    Return Adjustment.- The term 'Return Adjustment' means any adjustment made to the income tax return of a taxpayer as a result of:

(i)    Differences between the information submitted to the Department in the information returns required under Subchapter C of Chapter 6 of Subtitle A or the Withholding Statement required under Section 1062.01(11)(2) and the information contained in the income tax return filed by the taxpayer; and

(I)    Provided, that in these cases, the Secretary shall take into account, in addition to the income not reported, any tax withheld reported in the information statement causing the difference.

(ii)    More than one taxpayer claiming the same individual as dependent.

(4)    Any challenge to a Return Adjustment notified after December 31, 2018 shall follow the same expedited procedure described in Section 6010.08.

(h)    ...

(i)    Address to Notify Deficiency.-

(!)    In the absence of a notice to the Secretary under this Code regarding the existence of a trustee relationship, the notice concerning a deficiency in taxes imposed by any Subtitle of this Code shall suffice for purposes of this

AAFAF_CONF_0008274

Code if the same has been sent via certified mail to the taxpayer to his last known address, even if such taxpayer has died or is legally disabled, or in the case of a corporation or partnership, even if the same no longer exists. In the case of notices of deficiencies arising from returns, statements, or forms filed electronically, the notice of deficiency with respect to a tax imposed under any Subtitle of this Code shall suffice for purposes of this Code if it had been sent by electronic mail to the taxpayer's email address that appears in the taxpayer's profile with the Department.

"

...

Section 101.- Subsections (c), (f), and (g) of Section 6010.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 6010.05.- Limitations on Assessment and Collection.-

(a)     General Rule.-

(1)     Except as provided in Section 6010.06, the amount of taxes or levies set forth under any Subtitle of this Code shall be assessed within four (4) years after the return or statement was filed, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. If a taxpayer amends his tax return within a term of one hundred eighty-three (183) days before the expiration of the period of limitations for assessment, the Secretary shall have two (2) years from the receipt of the amended tax return or statement to assess additional taxes or levies.

(2)     ...

(b)     ...

(c)     ...

(1)     ...

AAFAF_CONF_0008275

(2)    In the case of excise taxes provided in Subtitle C of this Code, if the taxpayer omits in the statement or return required under Section 3020.10 of Subtitle C, an amount of the excise tax includible thereon, which exceeds twenty-five percent (25%) of the full excise tax reported in such monthly statement or return, such taxes may be assessed, or a proceeding in court for the collection of such taxes shall be begun without assessment, at any time within six (6) years after the return is filed

(3)    ...

(d)    ...

...

(f)    Tax Returns or Declarations filed after the Deadline in Cases under Investigation.- A tax return or statement filed after the deadline to file the same established by the applicable Subtitle shall not be accepted if, as of the filing date, the taxpayer is under investigation for tax evasion. Provided, that in these cases evidence of filing shall not mean that the return has been accepted by the Secretary. The taxpayer who files a return or declaration outside of the term provided in this Code for such purposes, and who is under investigation for tax evasion or has been accused of tax evasion, shall request the Secretary a confirmation letter that such return or statement was duly accepted.

(g)    Amended Tax Returns or Declarations Filed after the Expiration of the Period of Limitations.- The Secretary shall not reject an amended tax return filed after the period of limitations provided in this Code. The processing of said amended return, however, shall not entitle a person to claim a refund or credit if the period of limitations expired. In such cases, the Secretary shall have four (4) years from the receipt of the amended retun1 or statement to assess additional taxes or levies."

Section 102.- Paragraph (4) of subsection (d) of Section 6010.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6010.06.- Exceptions to the Statute of Limitations.-

(a)      ...

(b)      ...

(c)      ...

(d)      Collection After Assessment.-

    (1)      ...

    (2)      ...

    (3)      ...

    (4)      In order to detem1ine the period of limitation applicable to the collection and elimination of debt from the records of the Department, the suspensI0n of said period shall be considered in accordance with Sections 6010.04(b) and 6010.07 of this Code, respectively, or the period agreed to in writing by the Secretary and the taxpayer.

    (1)      ...

(e)      ...

(f)      ..."

Section 103.- Section 6010.07 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6010.07.- Suspension of Period of Limitation.-

The period of limitation established in Sections 6010.05 or 6010.06 of this Subtitle on the making of assessments and the collection by levy or a proceeding in court in respect of any deficiency, shall be suspended after the mailing of a notice concerning the final determination established in Section 6010.02(g) of this

AAFAF _CONF _0008277

Subtitle for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, when resorting to the Court of First Instance, until the decision of the court becomes final), and for sixty (60) days thereafter."

Section 104.- Section 6010.09 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6010.09.- Successor Taxpayer.-

(a)     In General.- For purposes of this Subtitle, the principal person liable for the payment of taxes is the taxpayer on which the applicable tax is imposed under any of the Subtitles of this Code. In the case of taxes withheld, the principal person liable for the payment of such taxes shall be the withholding agent. For purposes of this Section, the principal person liable for the payment may be a natural or juridical entity subject to any of the provisions of this Code.

(b)     The provisions of subsection (a) of this Section notwithstanding, a successor taxpayer, as such term is defined in subsection (c) of this Section, shall be treated as a debtor jointly and severally liable with the principal person liable for the payment of the taxes, including taxes withheld.

(c)     Successor Taxpayer.- For purposes of this Section, a person or entity, as defined in Section 1010.05(c), shall be treated as a successor taxpayer when such person or entity substitutes the original taxpayer in the operation of an existing business, whether by transfer of the operations or the assets of the original taxpayer to the successor taxpayer, provided, that there is a substantial similarity in the operation of the business and continuity in the identity of the taxpayer or the owners, stockholders, partners, or members of both entities (original taxpayer and successor taxpayer), before and after transferring the operations of the existing business or the assets of the taxpayer, whether in whole or in part.

AAFAF_CONF_0008278

(d)    Exception.- The provisions of this Section shall apply, unless the successor taxpayer shows to the satisfaction of the Secretary that there was a valid business reason for transferring the operations of an existing business or the assets of the original taxpayer to the successor taxpayer.

(e)    The Department of the Treasury shall establish through regulations, administrative determination, circular letter, or general information bulletin the circumstances under which a taxpayer shall be treated as a principal person liable for the payment of taxes owed by another taxpayer, in accordance with the provisions of this Section."

Section 105.- Subsection (a) and paragraph (1) of subsection (b) of Section 6021.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 6021.02.-  Refunds and Credits.-

(a)    Authorization.-

(1)    ...

(2)    Excessive Withholding.-

(A)    When the amount of taxes withheld at source in Sections 1062.01, 1062.02, 1062.03, 1062.04, 1062.05, 1062.07, 1062.08, and 1062.11 of Subtitle A exceeds the taxes imposed by said Subtitle against which the taxes withheld should be credited under Sections 1053.01, 1053.02, 1053.04, 1053.05, 1053.06, 1053.07, 1053.08, and 1053.09, the amount of such excess shall be deemed to be a payment in excess, and shall be refunded to the taxpayer as soon as he files the corresponding tax return, notwithstanding the provisions of subsection (a)(l), subsection (j) of Section 9 of Act No. 230 of July 23, 1974, as amended, the 'Puerto Rico Government Accounting Act,' or any other law of the Legislative Assembly.

(B)    ...

(C)     When, in the judgment of the Secretary, the budgetary financial condition of the Government and the Puerto Rico Treasury so require, he may postpone the refund of the remainder of the payment in excess until July 31st of the fiscal year following the due date for filing tax returns. In that case, refunds granted administratively under the provisions of this paragraph shall only accrue interest computed from July 31st until the date the refund check is issued or until the date the notice of the electronic deposit is delivered.

(D)     Notwithstanding the foregoing provisions, in the event that the Child Support Administration orders the withholding of the refund pursuant to its Organic Act, the refund shall be credited, firstly, to the child support debt of the taxpayer, and any remainder shall be applied in accordance with the provisions of subparagraph (B) of this paragraph.

(3)     Credits Against Estimated Taxes.- The Secretary is hereby authorized to promulgate regulations providing that the amount determined by the taxpayer, or by the Secretary, as a payment in excess of taxes for a preceding taxable year be credited against estimated taxes for any subsequent taxable year. If the taxpayer requests that the payment in excess of the estimated taxes be credited against the estimated tax for any subsequent taxable year, the Secretary may not use such payment in excess against taxes owed by the taxpayer as of the date of such payment in excess. Once the taxpayer has requested a payment in excess to be credited against a subsequent taxable period, however, such taxpayer may not amend the return or form to request a refund in the amount of the payment in excess applied as a credit to the following taxable period.

(4)     Presumption of Payment Date.- For purposes of this Section, any taxes that have been deducted and withheld at source during any calendar year under Sections 1062.01, 1062.02, 1062.03, 1062.04, 1062.05, 1062.07, 1062.08, and 1062.11 of Subtitle A shall be with regards to the receiver of the income,

AAFAF_CONF_0008280

deemed to be paid by him not before the fifteenth (15th) day of the fourth month following the close of his taxable year with respect to which such taxes are allowed as credit under Sections 1053.01, 1053.02, 1053.04, 1053.05, 1053.06, 1053.07, 1053.08, and 1053.09. For purposes of this Section, any amount paid as estimated taxes and any payment in excess applied to the estimated taxes for any taxable year shall be deemed to be paid not before the fifteenth (15th) day of the fourth month following the close of such taxable year.

(b)    Limitations.-

(1)    Period of Limitation.-

(A)    ...

(B)    If the taxpayer has not filed a tax return or statement, then no credit or refund shall be granted or made after three (3) years from the date on which such taxes were paid, unless the taxpayer files a claim for such credit or refund before the expiration of such term, or the taxpayer has filed his tax return or statement before the expiration of the term provided in subparagraph (A) of this paragraph.

(2)    ...

"

...

Section 106.- Paragraphs[sic.] (a), (b), (c), and (d) are hereby amended and subsection (f) is hereby added to Section 6030.10 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6030.10.-  Penalties.-

(a)    In General.-  Any person who, pursuant to any Subtitle of this Code, is required to pay any taxes or estimated taxes to withhold at the source and to pay any taxes, to file any tax return or statement, to keep any attesting or other documents, or to furnish any information for the purposes of computation, assessment, or collection of any taxes or levies, and willfully fails to meet such

requirement shall be subject to the penalties and additions to taxes described in this Subchapter as established below. Except as otherwise provided, penalties shall be imposed, assessed, and collected in the same manner as taxes. Provided, that the penalties imposed in this Section shall be imposed in addition to any other penalty, interest, or surcharge applicable under this Code.

(b)    Penalties for Misdemeanors.-  Except as otherwise expressly provided in this Code, in cases of conviction for a misdemeanor established by this Code, in addition to the restitution of the funds owed to the Secretary, including but not limited to the taxes, interests, surcharges, and penalties owed or withheld and not deposited, the person thus convicted shall be punished by a fine not greater than five thousand dollars ($5,000), or by imprisonment for a maximum term of ninety (90) days, or both penalties, at the discretion of the Court, plus costs arising from proceedings.

(c)    Penalties for Felonies.-

(!)    Except as otherwise expressly provided in this Code, in all cases of conviction for a third-degree felony established by this Code, in addition to the restitution of the funds owed to the Secretary, including but not limited to the taxes, interests, surcharges, and penalties owed or withheld and not deposited, the person thus convicted shall be punished by imprisonment, for a fixed teml of eight (8) years. The Court, at its discretion, may impose the fixed imprisonment penalty established or a fine not to exceed twenty thousand dollars ($20,000), or both penalties, plus costs arising from proceedings.

(2)    Except as otherwise expressly provided in this Code, in cases of convictions for a felony established by this Code, in addition to the restitution of the funds owed to the Secretary, including but not limited to the taxes, interests, surcharges, and penalties owed or withheld and not deposited, the person thus convicted shall be punished by imprisonment for a fixed term of three (3) years.

The Court, at its discretion, may impose the fixed imprisonment penalty established or a fine not to exceed ten thousand dollars ($10,000), or both penalties, plus costs arising from proceedings.

(d)     Penalty for Failure to Keep Records or Submit Information.- Any person that, pursuant to any Subtitle of this Code or to any regulations promulgated by authority of law, is required to keep any records or fun1ish any information for the purposes of computing, assessing, or collecting any estimated or other taxes imposed by any Subtitle of this Code, who willfully fails to keep such records or furnish such information, within the term or terms fixed under any Subtitle of this Code or under regulations, in addition to other penalties, surcharges, or fines imposed by this Code, shall be guilty of a misdemeanor.

(e)     ...

(f)     Any person required under any Subtitle of this Code to file a return, statement, certification, or report and who claims as a deduction personal, support, or family expenses not related to the practice of a profession or occupation, or the exploitation of a trade or business, except for deductible expenses in accordance with the provisions of Section 1033.15, shall be subject to a discretional penalty not to exceed twenty-five percent (25%) of the deduction claimed, for the first violation, and a one hundred percent (100%)-penalty in the event of recidivism."

Section 107.- Section 6030.23 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6030.23.- Failure to Collect and Pay Over the Sales and Use Tax, Taxes Withheld at the Source, or Attempt to Evade or Defeat Tax

(a)     In addition to any other penalties established by this Code, the following individuals shall be guilty of a felony for a fixed term of three (3) years:

AAFAF_CONF_0008283

(1)    Any chief operations officer, president, chief financial officer, chief accounting officer or comptroller, as well as any officer holding a similar office in an entity or of a person (as such term is defined in Section 6030.19 of this Code), whose responsibility, duty, function, or obligation within such entity or person is to collect, account for, and pay over the sales and use tax established in Subtitles D and DDD of this Code, or the income taxes withheld at source established in Sections 1062.01, 1062.02, 1062.03, 1062.08, 1062.09, 1062.10, and 1062.11 who willfully and knowingly fails to collect or account for and truthfully pay over the tax thus withheld, in the manner and under the terms established Subtitles D and DDD of this Code, thus misappropriating public funds and property of the Government of Puerto Rico.

(2)    Any person who willfully and knowingly attempts in any manner whatsoever to evade or defeat the tax imposed in Subtitles D and DDD of this Code or the payment thereof: thus misappropriating public funds and property of the Government of Puerto Rico."

Section 108.- A new Section 6030.24 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6030.24- Periods of Limitation on Criminal Actions.-

(a)    The period of limitation for any criminal action arising from the provisions of this Code shall expire within five (5) years after the commission of the offense."

Section 109.- Section 6030.25 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6030.25.-Application of Payments

(a)     General Rule.- When a taxpayer makes voluntary partial payments to the Secretary, and such taxpayer owes taxes, deficiencies, interests, surcharges, or penalties for one or various taxable periods, the Secretary shall apply such payments to the oldest tax assessment debt due strictly in order of expiration. If the amounts owed for specific taxable period exceed the amount of the partial payment, the Secretary shall apply said partial payment to the principal, interest, penalty, and surcharge (in said order), until the amount owed for said period is paid in full.

(b)     Designated Voluntary Payment.- When a taxpayer makes voluntary partial payments to the Secretary, and such taxpayer owes taxes, deficiencies, interests, surcharges, or penalties for one or various taxable periods, the Secretary shall apply such payments in accordance with the written instructions provided by the taxpayers along with the partial payment. The Secretary shall prescribe the manner and form in which a taxpayer may request to make a designated voluntary payment by regulations, administrative determination, circular letter, administrative bulleting or any other official pronouncement or document of general character.

(c)     Effectiveness.- The provisions of this section shall apply to payments made after February 28, 2019; provided, that none of the provisions of this section shall be considered an amnesty for the payment of taxes, deficiencies, interests, surcharges, or penalties."

Section 110.- Subsection (a) of Section 6041.09 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6041.09.- Addition to the Tax upon Failure by Individual to Pay Estimated Income Tax.-

(a)     ...

  (1) ...

  (2) ...

    (A) ...

    (B) the lesser of:

      (i) ...

      (ii) ...

 "

...

Section 111.- Subsection (a) of Section 6041.10 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6041.10.- Failure by Corporations and Partnerships to Pay Estimated Income Tax.-

  (a) ...

  (1) ...

  (2) ...

    (A) ...

    (B) the lesser of:

      (i) ...

      (ii) ...

 "

...

Section 112.- Subsections (a) and (b) of Section 6041.11 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 6041.11.- Penalty for Failure to File Certain Information Returns, Reconciliation Statements and Retun1s, Transaction Reports, Securities Broker or Trader Statements.-

  (a) …

AAFAF_CONF_0008286

(1)    ...

(2)    ...

(3)    …

(4)    The annual reconciliation statement and quarterly reconciliation return required under Sections 1062.01 (n)(1), 1062.03(h), 1062.03(i), and 1063.10,

(5)    ...

(6)    ...

(7)    ...

(8)    ...

(9)    ...

(10)   ...

(b)    …

(1)    ...

(2)    ...

(3)    For each annual reconciliation statement and quarterly reconciliation return required under Sections 1062.0l(n)(l), 1062.03(h), 1062.03(i), and 1063.10 of this Code, five hundred dollars ($500);

(4)    ...

(5)    ...

(6)    ..."

Section 113.- Subsection (a) of Section 6051.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6051.02.- Examination of Books and Witnesses.-

(a)    Determining Taxpayer's Liability.-

(1)    For the purpose of ascertaining the correctness of any tax return or statement, or for the purpose of making a tax return when none had been made,

the Secretary may examine, through any official or employee of the Department of the Treasury or through electronic means, any books, papers, records, or memoranda which may be relevant or material to the tax return or statement, and summon the person who filed the tax return or statement, or the any official or employee of said person, or any other person who is knowledgeable about the issue in question, and to take such testimony with respect to those matters required by law to be included in said tax return or statement, with the authority to administer oaths to such person or persons.

(2)     The Secretary or any official or employee of the Department of the Treasury is hereby empowered to use electronic mechanisms to gather information as necessary for the examination of books and witnesses established in subsection (a)(l) of this Section, but not limited to notifications of retun1s with mathematical errors, omitted or incorrect information, mail audits, and notifications issued by any of the electronic systems used by the Department, included, but not limited to the Internal Revenue Unified System (SURI, Spanish acronym). Moreover, the Secretary or any official or employee of the Department of the Treasury is hereby empowered to use the email addresses officially provided by taxpayers through any of the electronic systems of the Department to send notifications of returns with mathematical errors, omitted or incorrect information, mail audits, and any other notification, except in the case of deficiencies, in which case the provisions of Section 6010.02(a)(l)(A) of this Code shall apply.

(3)     The Secretary may hire skilled personnel in tax matters to examine any books, papers, records, or memoranda, which may be relevant or material to the tax return or statement, as well as to provide technical support to the officials or employees of the Department of the Treasury; provided, that the person hired by the Secretary to discharge the functions described in this subsection shall be subject to the provisions of Sections 6030.13, 6030.17, and 6030.18 relating to

AAFAF_CONF_0008288

prohibited or unlawful acts of the officials and employees of the Department of the Treasury, even when the person hired is not an employee of the Department of the Treasury.

(b)    ...

"

...

Section 114.- Subsection (a) of Section 6051.08 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6051.08.-  Commitment to Pay.-

(a)    The Secretary is hereby empowered to enter into a payment agreement in writing whereby he pledges to render ineffective any taxes determined and additions, including civil or criminal penalties, as may apply in cases related to any taxes imposed by the Puerto Rico Internal Revenue Code of 1994, as amended, the Income Tax Act of 1954, as amended, the Excise Tax Act of the Commonwealth of Puerto Rico of 1987, as amended, the Puerto Rico Estate and Gift Act, as amended, or this Code, before such cases are referred to the Department of Justice for prosecution.

(b)    ...

..."

Section 115.- Subsection (c) of Section 6051.11 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6051.11.- Rules and Regulations.-

(a)    ...

(b)    ...

(c)    Circular letters or administrative determinations.- The directives, infom1ation bulletins, circular letters, administrative determinations, or

AAFAF_CONF_0008289

interpretative rules of a general application issued by the Secretary of the Treasury or his authorized representative, regarding the application of this Code or any rules or regulations promulgated thereunder, constitute the official interpretation of the law that the Secretary of the Treasury is in charge of interpreting, shall be given the appropriate deference, and have a presumption of correctness before the courts."

Section 116.- Section 6051.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6051.12.-  Filing and Payment by Electronic Means.-

(a)     The Secretary may allow or require through such rules as he may prescribe by regulations, administrative determination, circular letter, general information bulletin, or communication that any tax returns, statements, or forms required by any Subtitle of this Code, as well as the payment of any taxes imposed by such Subtitles, be filed or completed electronically. In such cases, the taxpayer's digital signature or electronic authentication mechanism shall be accepted as valid for all purposes provided in this Code."

Section 117.- Subsection (c) is hereby added to Section 6051.17 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6051.17.- Alternative Dispute Resolution Process.-

(a)     Mediation.-

...

(c)     Informal Administrative Procedures.- The Secretary may also approve and adopt through regulations, administrative determination, circular letter, or general information bulletin informal procedures as deemed pertinent to achieve the just, speedy, and inexpensive resolution of present and future disputes under

AAFAF_CONF_0008290

consideration by the Department; provided, however, that any procedure established in accordance with the provisions of this subsection shall uphold the minimum guarantees of the due process of law for every taxpayer."

Section 118.- Section 6051.20 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6051.20.- Payment Agreements with Government Suppliers.-

(a)     Authority.- The Secretary or his authorized representative is hereby empowered to enter into agreements with the suppliers of goods and services of the Government of Puerto Rico, who show to the satisfaction of the Secretary that they have invoices processed and pending payment before the Department of the Treasury or any government agency, in order to apply the amount of such invoices to their balance of accumulated tax liability, insofar as such debts are not on account of Sales and Use Tax. Provided, further, that the Secretary may convert the amount of such invoices pending payment into tax credits admissible against any tax imposed by this Code for any taxable period.

(b)     Requirements.- The Secretary shall prescribe through regulations, administrative detennination, circular letter, or general information bulletin the procedures to be followed for the application of invoices pending payment to the tax liabilities of the government supplier."

Section 119.- Section 6051.21 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6051.21.- Additional Authorities of the Secretary for the Administration of this Code.-

(a)     The Secretary is hereby empowered to establish, from time to time, or when the Secretary deems it necessary and in the best interest of the Goven1ment

AAFAF_CONF_0008291

of Puerto Rico, taxpayer rehabilitation and voluntary disclosure programs whereby he establishes the applicable rules in order for a taxpayer who has a tax liability with the Department or has failed to report the total taxable items under any of the Subtitles of this Code, to rehabilitate through the disclosure and establishment of a payment plan for the appropriate taxes. Any taxpayer rehabilitation and voluntary disclosure program shall be established through a general circular letter stating the requirements to participate in the program. Provided, that under a voluntary disclosure program the Secretary may agree that the tax to be paid be based on the lesser of: the tax rate in effect during the taxable year for which the disclosure is made or the tax rate in effect at the time the payment agreement is entered into.

(1)    Limitations.- Any rehabilitation or voluntary disclosure plan shall be subject to the following requirements:

(A)    Payment Through Electronic Means.- In order to approve a payment agreement, the Secretary may require the installments of such agreement to be solely made through direct debit from a bank account.

(B)    Payment Guarantees.- The Secretary may demand payment guarantees in the event that the amount owed pertain to taxes withheld when acting as a withholding agent or when the amount owed exceeds one hundred thousand dollars ($100,000).

(C)    Prospective compliance with the provĭs10ns of this Code.- Any taxpayer rehabilitation or voluntary disclosure plan established by the Secretary shall state as a condition for the forgiveness of the debts, interests, or surcharges in a payment plan agreement, that the taxpayer shall show strict compliance with the provisions of this Code during the five (5) years following the date of execution of the payment agreement. Provided, that in the event of noncompliance with any provision of this Code, the Secretary may collect any interests, surcharges, and penalties cancelled under the payment agreement.

AAFAF_CONF_0008292

(D)     One-time taxpayer option to participate in the program.- Once the taxpayer has executed a payment agreement under a rehabilitation or voluntary disclosure program established under the provisions of this Section, such taxpayer shall not be entitled to have any interests, surcharges, fines, or penalties forgiven if such taxpayer requests a subsequent payment plan or executes a subsequent payment agreement under the same or other rehabilitation or voluntary disclosure program.

(b)     The Secretary may prescribe by regulations, administrative determination, circular letter, or general information bulletin the optional requirements and mechanisms for the issuance of a license required under this Code through an expedited process including, but not limited to, requiring, as a condition for an expedited license, a Compliance Attestation Report prepared by a Certified Public Accountant not related to the taxpayer, holding a valid license to practice in Puerto Rico.

(c)     As of July 1, 2019, the Secretary or his authorized representative is hereby empowered to require, in the case of license renewal or application fees required by special laws and administered by the Secretary to allow the taxpayer to obtain a license for a period of two (2) years. Provided, that in such cases, the taxpayer shall pay license fees in an amount equal to two point five (2.5) times the license fee established in the special law. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the form and manner in which the provisions of this paragraph shall apply.

(d)     Collaborative Agreements.- The Secretary is hereby authorized to enter into collaborative agreements with academia, nonprofit entities, and private businesses for the administration of certain processes related to the administration of the Code."

AAFAF_CONF_0008293

Section 120.- Subparagraph (C) is hereby added to paragraph (4) of subsection (a) of Section 6054.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6054.03.- Sales and Use Tax Oversight Plan.-

(a)      ...

     (1)      ...

...

     (4)      Facilitate the merchant's compliance with their duty to file the SUT return with the Department, by establishing mechanisms that allow:

          (A)      ...

          (B)      ...

          (C)      The data captured through the fiscal tenninals shall be deemed to be part of the Monthly Sales and Use Tax Return required under Section 4041.02(c) of this Code.

     (5)      ...

(b)      ..."

Section 121.- A title is hereby added to Subchapter C and subsection (a) of Section 6073.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"SUBCHAPTER C - PROVISIONS RELATING TO CERTIFIED PUBLIC ACCOUNTANTS

"Section 6073.01.- Provisions Relating to Certified Public Accountants.-

(a)      For purposes of this Subchapter, a Certified Public Accountant shall be understood to be a person who:

     (1)      ...

     (2)      has issued an opinion on audited financial statements and the supplemental information required under Section 1061.15, Agreed-Upon

AAFAF_CONF_0008294

Procedures Report, or any other certification required by any section of this Code or by the Secretary through regulations, administrative determination, circular letter, information bulletin, or any other general communication."

Section 122.- Subsection (a) and (b) of Section 6073.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 6073.02.- Requirements, Duties, and Rights of the Certified Public Accountant.

(a)    Any person who is authorized by the Department of the Treasury to practice as a certified public accountant for purposes of remarking the opinion or certification mentioned in Section 6073.0l(a)(2) of this Code, shall discharge the following duties and meet the following requirements:

(1)    to retain the opinion or certification, issued records and documents that support the preparation and evaluation of such information for a four (4)-year term, following the date of issue thereof; and

(2)    to file electronically with the Department of the Treasury in the form and manner established by the Secretary through Regulations, the supplemental information required under Section 1061.15, the audited financial statements, or any other report or certification required under any section of this Code, to be prepared as requested by any taxpayer.

(b)    Any notice or requirement for information requested by the Secretary relating to the supplemental information required under Section 1061.15, the audited financial statements, or any other report or certification required under any section_of this Code, shall be issued to the name of the taxpayer and the certified public accountant, simultaneously. However, the taxpayer shall meet the requirement for information and also authorize the Certified Public Accountant in writing to furnish the information directly to the Secretary."

AAFAF_CONF_0008295

Section 123.- Section 6073.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby repealed and declared as Reserved.

Section 124.- Section 6073.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby repealed and declared as Reserved.

Section 125.- Subsection (a) of Section 6073.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6073.05.- Civil Fine for Conspiracy between a Certified Public Accountant and a Taxpayer.-

(a)    When the Secretary has clear, robust, and conclusive evidence proving conspiracy with the intent to defraud the Department of the Treasury between a Certified Public Accountant and a taxpayer in the preparation and opinion on the audited financial statements, the supplemental information required under Section 1061.15, or any other report or certification required under any section of this Code, an administrative process shall begin against those two persons as follows:

(1)    A fine equal to the taxpayer's deficiency, as determined from the information submitted that has been proven to be false with clear, robust, and conclusive evidence, shall be imposed on the certified public accountant, plus any interests and penalties, as applicable, which fine shall be assessed, collected, and paid as if it were a deficiency, up to a maximum of twenty-five thousand dollars ($25,000) for each case; and

(2)    A fine equal to fifty percent (50%) of the deficiency imposed, as determined from the misrepresentations made in the supplemental information submitted, shall be imposed on the taxpayer, including any interests, surcharges,

AAFAF_CONF_0008296

and penalties, which fine shall be assessed, collected, and paid as if it were a deficiency."

Section 126.- The content of paragraphs 2 and 3 of subsection (a) and the content of subsection (b) of Section 6080.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby eliminated to read as follows:

"Section 6080.01.- Liability for Taxes Collected.-

(a)     In General; Assessment and Collection.-

(1)     Whenever any person is required to collect or withhold from any other person any taxes imposed by this Code and to pay over such tax to the Government of Puerto Rico, the amount of the taxes thus collected or withheld shall be held to be a special fund in trust for the Government of Puerto Rico."

Section 127.- Paragraph 1 of subsection (a) of Section 6080.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6080.05.- Requirement to Deposit Taxes Deducted and Withheld from Wages.-

(a)     Deposit of Taxes Withheld on Wages.-

(1)     Any person who pays wages and is required to deduct and withhold from any employee any income taxes under Section 1062.01 or the regulations promulgated by the Secretary pursuant to the Code, and to pay over such taxes to the Government of Puerto Rico, shall deposit the amount of taxes thus deducted and withheld in any of the financial institutions designated as a depository of public funds and which have been authorized by the Secretary to receive such taxes or by electronic means.

(2)     ...

(3)     Taxes shall be paid or deposited as provided by the Secretary through regulations, administrative determination, circular letter, or any other official pronouncement or document of general character, regarding the manner, time, and conditions that shall govern the payment or deposit of such withheld taxes. When issuing a pronouncement, the Secretary shall follow, as pertinent, the criteria established in regulatory provisions on the collection and deposit of income taxes withheld on wages paid by the Federal Government and the corresponding Social Security tax. In the case of wages paid after January 1, 2019, the applicable limit of the withholding tax accumulated during a quarter, in order for said tax to be remitted along with the quarterly return for the corresponding period (Minimum Amount Rule), shall be equal to the amount established by the United States Internal Revenue Service."

Section 128.- Subsection (a) of Section 6080.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6080.06.- Payment of Taxes Withheld on Interest.-

Any person who pays interest and is required to deduct and withhold from the person receiving payments on account of interest the income tax provided in Section 1062.09 of the Code or the regulations thereunder promulgated by the Secretary, shall remit to the Secretary the taxes thus deducted and withheld for one (1) calendar month, not later than the fifteenth (15th) day following the close of the calendar month in which such taxes were deducted and withheld."

Section 129.- Subsection (c) of Section 6.03 of Act No. 83-1991, as amended, known as the "Municipal Property Tax Act of 1991," is hereby amended to read as follows:

"Section 6.03.- Tax Return.-

(a)     ...

AAFAF_CONF_0008298

(b)     ...

(c)     Tax returns enclosed with audited financial statements and other documents prepared by certified public accountants.-

Any natural or juridical person engaged in trade or business or engaged in the production of income in Puerto Rico, whose volume of business during a taxable year is equal to or greater than three million dollars ($3,000,000), shall file the personal property tax return along with financial statements together with the Auditor's Report issued by a Certified Public Accountant holding a valid license to practice in Puerto Rico. Said Auditor's Report shall state that the financial statements comply with the United States General Accepted Accounting Principles (US GAAS); however, it shall not be necessary for the Certified Public Accountant to issue an opinion without qualifications. Qualified opinions shall be allowed, as defined by US GAAS, provided, that the qualification of the opinion is not due to restrictions in the scope of the audit imposed by the business. No reports with a disclaimer of opinion due to restrictions in the scope of the audit imposed by the business shall be allowed. No reports with adverse opinion shall be allowed. Provided, that the audit requirement established herein shall not apply to nonprofit corporations nor to entities or persons engaged in trade or business in Puerto Rico whose volume of business is not equal to or greater than three million dollars ($3,000,000) during the taxable year. In addition, the personal property tax return shall be accompanied by:

(1)     Supplemental information, underlying financial statements and other records used to prepare financial statements and submitted to the audit procedures applied when a financial statement audit is conducted by a certified public accountant holding a valid license to practice in Puerto Rico whereby the following is established:

...

"

...

Section 130.- Act No. 156-2015 known as the "Commonwealth of Puerto Rico Internal Revenue Administrator's Office Act," is hereby repealed.

Section 131.- Section 208 of Act No. 210-2015, as amended, known as the "Commonwealth of Puerto Rico Real Property Registry Act," is hereby amended to read as follows:

"Section 208.- Attachment for State Tax.

Property Registrars shall cancel, upon a party's request authenticated before a notary, any lien created for failure to pay any kind of state agency taxes, ten (10) years after the filing date thereof with the Registry or once the Secretary of the Treasury becomes unable to collect said tax by operation of Section 6010.06 (d) of Act No. 1-2011, as amended, known as the 'Internal Revenue Code for a New Puerto Rico' or any successor law, whichever occurs first."

Section 132.- Sections 3 and 3A of Act No. 11 of August 22, 1933, as amended, are hereby repealed and a new Section 3 is hereby added to read as follows:

"Section 3A.- Definitions.

For purposes of this Act, the following terms shall have the meaning stated below:

1. Credits - means the number of credits displayed on the machine screen at the end of a play or the balance available for playing after inserting money, which may be redeemed by the player for cash at any time.

2. Coin in - means the credits waged by a player in a gambling device, which are recorded in a meter. Bills inserted in the bill validator box are not part of the 'Coin In.'

AAFAF_CONF_0008300

3.      Meter - means a mechanical, electrical or electronic device that automatically counts the number of bills deposited by a player in a gambling device.

4.      Company- means the Puerto Rico Tourism Company.

5.      License Fees - means the annual fees to be paid by every Operator or Owner in order to operate Gambling Devices.

6.      Director of the Games of Chance Division - means the Director of the Games of Chance Division or the official duly authorized by the Executive Director.

7.      Executive Director - means the Executive Director of the Puerto Rico Tourism Company or his duly authorized representative.

8.      Distributor and Provider of Goods and Services for Gambling Devices - includes any individual, partnership, corporation, association, or other legal entity engaged in distributing or providing goods and services related to gambling devices and the components required for the operation thereof.

9.      Games of Chance Division or Division - means the Company's unit specifically in charge of monitoring and overseeing gambling devices authorized by the Government of Puerto Rico.

10.      Owner - means a person who owns adult amusement devices.

11.      Wholesale Gambling Device Owner or Operator - means a person who owns not less than one hundred (100) nor more than two hundred fifty (250) gambling devices, with capacity to place, operate, and administer said devices in business establishments. The Operator may be, in turn, a business owner, but shall never place more than ten (10) devices in the same Business establishment.

12.      Business Owner - means a person who is engaged in a business activity as owner, lessee or who has control over the establishment where the Gambling Devices are to be installed.

AAFAF_CONF_0008301

13.    Equipment - means any computer, computer server, or other device whether electronic, electrical, or mechanical, required for or used in machines and Gambling Device systems.

14.    Play - means the participation of a player upon payment of a monetary consideration in any Gambling Device, as such participation is evidenced in a meter within the device.

15.    Player - means a person eighteen (18) years of age or older who actively participates in Gambling Devices.

16.    Games of Chance - means the electronic game within the Gambling Device systems and administered through a central computer system located in the machine.

17.    License - means any authorization issued by the Company to a Wholesale Gambling Device Owner, Business Owner, Gambling Device Manufacturer, Distributor and Provider of Goods and Services for Gambling Devices by virtue of the provisions of this Act.

18.    Manufacturer - includes an individual, partnership, corporation, association or other legal entity engaged in the manufacture and/or assembly of gambling devices and the components required for the operation thereof.

19.    Adult Amusement Machines - means the machines that do not contain the mechanisms or features of a Gambling Device as provided in this Section. Amusement machines for the exclusive use of children and youths, vending machines for cigarettes, food, refreshments, or postage stamps, change machines, public telephones, and slot machines in the gambling halls of tourist hotels, authorized under Act No. 221 of May 15, 1948, as amended, are hereby excluded from this term. Provided, that the term 'amusement machines for the exclusive use of children and youths' refers to all those machines that do not award prizes to the players, or that award toys or tickets to the player who may redeem them for toys

AAFAF_CONF_0008302

or noncash prizes and are handed to players on the premises where the machine is located.

20.     Gambling Devices or Slot Machines - refers to machines the prizes of which are determined by the application of an element of chance that contain some sort of activation to initiate the wagering process, and that employ the adequate methodology for delivering specific results. Provided, however, that such term does not refer to adult amusement machines, as defined in this Act, insofar as such machines do not contain the mechanisms or features of gambling devices defined in this paragraph. The functions of Gambling Devices may be logically separated into multiple parts or distributed through multiple physical components, but shall contain the following mechanisms or devices:

i.      A bill validator box accepting wages recorded in a meter within the device;

ii.     A knock-off switch to erase the credits from the meter once paid to the winning player;

iii.    An auto play feature or mechanism that enables the device to play without player intervention for a specific cycle or time space, and the result of the game or operation of the machine depends on luck or chance;

iv.     That meets all the technology requirements set forth in this Act.

21.     Vending Machine - means any machine that may be used for gambling purposes and those commonly known as slot machines that do not hold a valid gambling device, license, or decal.

22.     Decal - means the sticker attached to the top left corner of the gambling device's cabinet, assigned and affixed by the Company once the device is approved for use as Gambling Device. It shall contain RFID technology.

23.     Business - means fixed and permanent site or establishment authorized by the State or Municipal Permit Management Office to conduct any

commercial operations consisting of the retail sale of products or services where Gambling Devices and Adult Amusement Machines are installed or operated.

An establishment shall not be treated as Business if the only or principal source of income thereof is derived from the operation of Gambling Devices. In order to be treated as a Business it shall be an indispensable requirement for the establishment to engage in other commercial activities so that the income generated from the Gambling Devices constitutes a supplemental rather than the principal source of income of said establishment.

24.     Electronic Gaming Official - means the employee or person designated by the Company's Game of Chance Division whose duties are related to the provisions of this Act.

25.     Person - means natural or juridical person.

26.     Program - means the intellectual property and gathered or compiled instructions including in Gambling Devices and the components thereof: including procedures and documentation associated with the operation of a computer, computer program or computed network.

27.     System - means the connectivity system that works as a centralized connection of all gambling devices in Puerto Rico to the Company as the overseeing entity thereof. It shall provide the Government of Puerto Rico with full transparency regarding Gambling Devices compliance with all the provisions of this Act.

28.     Central Computer System - means the equipment, programs, and all components of the network or networks used in the operation of Gambling Devices that allow for the establishment of controls for accounting and operations security purposes. The Central Computer System shall maintain, among other aspects, an electronic record of the play transaction data, as well as any other audit requirement that the Director may prescribe.

29.     Applicant - means any person interested in obtaining a license as Wholesale Gambling Device Owner, Business Owner, Gambling Device Manufacturer, Distributor and Provider of Goods and Services for Gambling Devices.

30.     Application - means the formal request submitted to the Company by an applicant in order to obtain and/or renew a license in accordance with the provisions of this Act.

31.     Currency Validator - Device that accepts currency or coins attached to a gambling device that converts the value of the money into credits to play in the aforementioned devices."

Section 133.- Subsections (f) and (j) of Section 4 of Act No. 11 of August 22, 1933, as amended, are hereby amended to read as follows:

"Section 4.

...

(a)     ...

...

(f)     Any business operating adult amusement machines on premises shall conspicuously post a sign on said machines stating the following: 'Machines in this establishment are adult amusement machines and are not authorized to pay any prize whatsoever."

...

(j)     It is hereby provided that, notwithstanding the provisions of this Act, the Company shall not issue new adult amusement machines for the jurisdiction of Puerto Rico and shall be limited to renew adult amusement machine licenses that were in effect any time before June 30, 2014, pursuant to the requirements of this Act. As of July 1, 2014, no new licenses shall be issued for the placement or operation of adult amusement machines in business establishments.  No operator

AAFAF_CONF_0008305

shall hold more licenses than those issued July 1, 2014, subject to compliance with this Section. Additional licenses or decals for new adult amusement machines are hereby prohibited.

       "

   ...

Section 134.- Section 5A of Act No. 11 of August 22, 1933, as amended, is hereby amended to read as follows:

"Section 5A.- Violations - Fines and Penalties Related to Adult Amusement Machines.-

     "

  ...

Section 135.- A new Section 6 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 6.- Gambling Devices-Authorization.-

The introduction, manufacture, ownership, use, functioning, installation, and operation of Gambling Devices in business operating in the jurisdiction of the Government of Puerto Rico is hereby authorized in a limited manner, The limit of gambling devices authorized in Puerto Rico may reach up to a maximum of twenty-five thousand (25,000) devices during the first two (2) years after the effective date of this Act. At the end of the first two (2) years, ten thousand (10,000) additional devices may be authorized by the Games of Chance Division per year up to a maximum of forty-five thousand (45,000) devices in total if the Games of Chance Division concludes, upon a study, that the gambling device market is not saturated. Such study shall consider the economic impact on hotel casinos, and shall be submitted to the Legislative Assembly thirty (30) days before increasing the number of machines."

Section 136.- A new Section 7 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 7.- Gambling Devices-Scope and Applicability.-

AAFAF_CONF_0008306

The provĩs10ns of this Act shall apply to every Applicant, Wholesale Gambling Device Owner, Business Owner, or Manufacturer, and any person interested in engaging or engaged in the operation, ownership, distribution, and provision of Gambling Devices services.

The provisions of this Act shall not apply to machines or devices regulated under Act No. 221 of May 15, 1948, as amended, known as the 'Games of Chance Act,' Act No. 83 of July 2, 1987, as amended, known as the 'Puerto Rico Horse Racing Industry and Sport Act,' and Act No. l0 of May 24, 1989, as amended, known as the 'Act to Authorize the Additional Lottery System.' Hence, the provisions of this Act shall apply only to Gambling Devices or slot machines."

Section 137.- A new Section 8 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 8.- Gambling Devices-General Prohibition.-

No Person shall operate Gambling Devices in Puerto Rico without a License and a Decal duly issued by the Company and without being connected to the Central Computer System in accordance with the provisions of this Act."

Section 138.- A new Section 9 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 9.- Gambling Devices- Licenses.-

The Games of Chance Division Director is hereby empowered to issue licenses to operate Gambling Devices, if he determines, based on all the information available, that the applicant meets the licensing criteria established by Regulations. The Business Owner License, the Wholesale Gambling Device Owner License, the Gambling Device Manufacturer License, and the Distributor and Provider of Goods and Services for Gambling Devices License are authorized under this Act. Every issued license shall be personal and nontransferable in favor of the person to whom it is originally issued."

AAFAF_CONF_0008307

Section 139.- A new Section 10 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 10.- Gambling Devices- License Application.-

It is hereby established that, within a non-extendable period of sixty (60) days after the approval of this Act, the Company shall adopt regulations establishing the procedure for the issuance of the licenses provided for in this Act. Said Regulations shall be evaluated by the Legislative Assembly within forty-five (45) days after notice in order to ensure full and faithful compliance with this Act. Such term shall run parallel to the thirty (30)-day period prescribed in Section 2.2 of Act No. 38-2017, as amended. However, if the Legislative Assembly fails to act on the notified Regulations within the term provided herein, it shall be deemed to be tacitly ratified.

During the first three (3) months after the approval of the regulations, the Company shall give priority to business or individuals holding a valid adult amusement machine license issued prior to the approval of Act No. 77-2014. Provided, however, that priority shall be given to the licenses of devices that qualify under the definition of Gambling Device, as defined in this Act. The Department of the Treasury shall certify the adult amusement machine licenses in effect for 2018. Any license that was not in effect in 2018 shall not have the established priority under this Section.

If, after the initial period for issuing licenses, the Company has not issued a number of licenses equivalent to the twenty-five thousand (25,000) gambling devices authorized under this Act, then the Company may accept new license applications until the maximum number authorized in this Act is reached. Provided, that to obtain a wholesale gambling device owner license, it shall be required that total ownership derives from capital of Puerto Rico.

Before issuing a license, the Division shall conduct an investigation of the Wholesale Gambling Device Owner, as well as of the Owner of the Business were the device shall be operated. The Company shall establish regulations to govern the Applicants' investigation process, establishing the investigation parameters, including, but not limited to an evaluation of the Applicant's financial capacity, criminal record, and any outstanding debts with the State. If the Applicant has partners or investors, such partners and investors shall also undergo an investigation process. The Wholesale Gambling Device Owner shall submit an annual financial statement to the Games of Chance Division.

Upon concluding the investigation, if the Division decides to issue the requested license, such license shall be personal and nontransferable in favor of the person to whom it is issued."

Section 140.- A new Section 11 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 11.- Gambling Devices- Wholesale Gambling Device Owner, Business Owner, Manufacturer, and Distributor and Provider of Goods and Services for Gambling Devices License Fees.-

The annual Wholesale Gambling Device Owner license or renewal fee for each Gambling Device shall be one thousand five hundred dollars ($1,500). The license fee shall include the cost of the decal. License holders shall have a license limit of not less than one hundred (100) nor more than two hundred fifty (250) gambling devices payable annually to the Department of the Treasury. The Department of the Treasury shall transfer three hundred (300) dollars per license to the Division for the implementation of this Act. No individual, entity, or corporation may hold more than two hundred fifty (250) gambling devices per group of related entities, as defined in Section 1010.05 of Act No. 1-2011, as

AAFAF_CONF_0008309

amended, known as the 'Internal Revenue Code for a New Puerto Rico,' and in the case of individuals, per all of its trade or business activities.

The processing fee of each Wholesale Gambling Device Owner license application shall be five hundred (500) dollars payable to the Department of the Treasury. The processing fee shall be credited to the applicant if the application is approved by the Division.

Every Business Owner who intends to install or place gambling devices in his facilities shall apply for a Gambling Device Owner license with the Division. The license shall be free of charge for each machine located in the Business. The Division shall provide the Business Owner with a License to display in a conspicuous place at the Business, which shall bear the name of the Business, the street and mailing address, and the number of devices authorized to operate therein, among other information.

The fee for each Manufacturer as well as each Goods and Service Distributor and Provider License or renewal shall be a three thousand dollars ($3,000) payable to the Department of the Treasury every two (2) years. The Department of the Treasury shall transfer the total amount of these fees to the Division for the implementation of this Act.

No charge or fee whatsoever shall be authorized in addition to the charges and fees provided for in this Act."

Section 141.- A new Section 12 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 12.- Gambling Devices- Decal.-

Every Gambling Device authorized by the Company shall be required to bear a radio-frequency identification (RFID) decal. Such Decal shall be affixed on the top left side of the Device's screen. The Decal shall be issued once the

AAFAF_CONF_0008310

Wholesale Gambling Device Owner license holder has received the certification of inspection of the Gambling Device, as provided in this Act.

The cost of the Decal shall be included in the Wholesale Gambling Device Owner license fee."

Section 142.- A new Section 13 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 13.- Gambling Devices- Validity of Licenses and Decals.-

Every Wholesale Gambling Device Owner and Business Owner license, and Decal issued by the Company shall be valid for one (1) year."

Section 143.- A new Section 14 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 14.- Gambling Devices- License Renewal Application.-

Any person who holds a License issued by the Company shall renew such license with the Games of Chance Division in accordance with the provisions of this Act. Every license renewal application shall be filed not later than ninety (90) days before the expiration date of said License."

Section 144.- A new Section 15 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 15.- Gambling Devices- Powers and Duties of the Director of the Company.-

The Director of the Company shall have, without it constituting a limitation, the following powers:

a. To enforce and ensure compliance with all of the provisions of this Act;

b. To establish rules, issue orders and resolutions, and take measures as are necessary for the physical, financial, and social safety of natural and juridical persons relating to Gambling Devices; and

HEIN EXHIBIT 83

c. To adopt regulations as are necessary for the implementation of this Act, in accordance with the provisions of Act No. 38-2017, as amended, known as the 'Government of Puerto Rico Uniform Administrative Procedure Act.'"

Section 145.- A new Section 16 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 16.- Gambling Devices- Powers and Duties of the Games of Chance Division Director.-

The Director of the Games of Chance Division shall have, without it constituting a limitation, the following powers:

a. To supervise the operations relating to the Gambling Devices authorized under this Act

b. To enforce the laws, regulations, and orders relating to Gambling Devices; and

c. To hold hearings, summon witnesses, conduct site inspections, administer oaths and take statements, subpoena books, documents, and any other additional proof of any nature deemed to be fundamental to have full knowledge of a matter under his consideration."

Section 146.- A new Section 17 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 17.- Approval of Gambling Devices.-

The Company shall channel all that pertains to Gambling Devices through the Games of Chance Division in order to effectively oversee all Gambling Devices authorized to operate in establishments and businesses in general in Puerto Rico as provided in this Act.

Every machine authorized to operate as a Gambling Device shall be personally evaluated and certified by the Electronic Gaming officials of the Division. It is hereby prohibited to operate any Gambling Devices other than those

previously inspected and approved by the Division and that have the decal required by this Act affixed thereto.

In addition, the Division shall supervise the operation of Gambling Devices for the purpose of guaranteeing the purity and transparency of the fiscal procedures both electronically and physically, seeking to ascertain compliance with this Act."

Section 147.- A new Section 18 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 18.- Gambling Devices- Device Identification.-

Every authorized Gambling Device shall meet the following identification requirements:

      i. The license certificate issued by the Company; and

      ii. A permanent printed Decal with RFID technology displayed and affixed visibly to the top left corner of the screen of the device's cabinet. It shall be assigned and affixed by the Division to every approved Gambling Device."

Section 148.- A new Section 19 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 19.- Gambling Device Operation.-

Every Gambling Device shall be operated as originally authorized by the Company. Making changes to or altering a Gambling Device is hereby prohibited, unless the approval of the Division is obtained prior to making the change.

Every Gambling Device shall be operated and played, at all times, in accordance with the representations made to the Division and the public."

Section 149.- A new Section 20 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 20.- Gambling Devices- Disclosure Requirements and Promotional Material Prohibition.-

AAFAF_CONF_0008313

It shall be unlawful for every business owner or wholesale gambling device owner to engage in publicity so as to promote, advertise, or otherwise feature that gambling devices are located in his business establishment. The terms 'casino', 'game room,' or any modification thereof shall not be used with the intent to make reference to such activity."

Section 150.- A new Section 21 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 21.- Businesses where Gambling Devices may Operate.-

It shall be an indispensable requirement to be classified as a business that the operation of Gambling Devices does not constitute the only or principal source of income of the establishment's business activity; therefore, to be treated as a Business, it shall engage in other commercial activities so that the income generated from the Gambling Devices constitutes a supplemental rather than the principal source of income of said establishment."

Section 151.- A new Section 22 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 22.- Number, Location, and Prizes of Gambling Devices.-

a. The maximum limit of Gambling Devices that may be installed and operated in a business shall be ten (10) machines. For purposes of this subsection, each screen shall be considered as one Gambling Device even if a single gambling device has multiple screens.

b. Gambling Devices shall be placed in businesses that are located, at least, at a distance of one hundred (100) linear meters from a public or private school and/or daycare center, establishments regulated under Act No. 83 of July 2, 1987, as amended, known as the 'Puerto Rico Horse Racing Industry and Sport Act,' a church or religious assembly.

AAFAF_CONF_0008314

c.  A Gabling Device prohibition zone is hereby established for any business located at a distance of one thousand (1,000) linear meters of the boundaries of any hotel with a casino. The downtowns of municipalities located within said perimeter are hereby excluded from said zone.

d.  No Gambling Devices shall be placed outside of a business.

e.  No Gambling Devices shall be installed in establishments located at a distance of less than one hundred (100) linear meters of another business, which has been previously authorized to place Gambling Devices.

f.  No Gambling Devices shall be installed in Business where adult amusement machines, as such term is defined in this Act, are located.

g.  The maximum limit of a prize per play that a gambling device may award shall be one thousand (1,000) dollars."

Section 152.- A new Section 23 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 23.- Gambling Devices - Tax on Gambling Device Winnings.-

There shall be imposed, collected, and paid, in lieu of any other tax imposed by law, a tax on the gambling device winnings, determined as provided below:

| If the prize is: | The tax shall be: |
|---|---|
| Not over $500 | 0% |
| In excess of $500 | 2% |

The Department of the Treasury shall regulate the mechanism to be used to collect this tax ensuring that the devices have the latest technology to make the collection of this tax feasible."

Section 153 .- A new Section 24 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 24.- Gambling Devices- Technology.

This Section sets forth the fundamental rules that the Government of Puerto Rico shall follow when establishing the technology, controls, and internal procedures in order to guarantee the adequate use of Gambling Devices and the most suitable manner to achieve efficiency, efficacy, and integrity in the operations thereof.

In order to guarantee the use of innovative and state of the art technology to interconnect, administer, and audit Gambling Devices, the Division shall be empowered and responsible for the selection, choice, evaluation, and recommendation of technological platforms to manage and administer the communications and exchange of data between Gambling Devices and the Division. Within a term not to exceed one hundred and twenty (120) days, the Company shall adopt regulations and/or the necessary procedures to regulate the proposal and connection application process. The cost of the necessary equipment or system for each gambling device or business shall be defrayed by the Wholesale Gambling Device Owner or Operator."

Section 154.- A new Section 25 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 25.- Gambling Device Technology Requirements.-

In implementing this Act, the Division shall ensure that Gambling Devices have the following technology:

a. To have installed a connectivity system (system) that uses wired or wireless Broadband technology for the purpose of allowing the centralized connection of the devices throughout the Island, in order to provide the Government of Puerto Rico with full transparency regarding Gambling Devices compliance with the provisions of this Act. The cost of such installation shall be defrayed by the Wholesale Gambling Device Owner or Operator."

AAFAF_CONF_0008316

Section 155.- A new Section 26 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 26.- Technology Requirements for the Gambling Devices Connectivity System.-

The connectivity system installed in Gambling Devices shall meet the following technology requirements:

a. The system shall provide a solution that allows for the connectivity of all Gambling Devices authorized in Puerto Rico.

b. The system connection shall have the capacity to provide financial and specific use data of each Gambling Device individually and collectively, per Operator.

c. The system shall allow the Company direct access to all information.

d. The technology must allow users to generate financial reports on each Gambling Device.

e. The System shall provide the Company with full transparency, as to allow the latter to carry out its oversight duties.

f. The System shall be capable of integrating to other technologies.

g. The System shall provide backup and replication within Puerto Rico, and an additional backup and replication outside of Puerto Rico to guarantee the safety of the information, as well as the communication and certainty of the location of each Gambling Device.

h. The connectivity, devices, communication platform, connectivity and hardware/software of the System shall be provided by the same provider in order to guarantee solution integrity. The provider shall also have the capacity to create devices and necessary components, as well as the distribution, installation, maintenance and operation thereof.

AAFAF_CONF_0008317

i.  The System shall communicate mainly through a wired or wireless broadband internet technology that allows for the connection of its sensors throughout the Island and offers quality network services.

j.  The System shall be created specifically for the needs of local Gambling Devices and customized according to the needs of the Company, which shall oversee the process.

k.  The System shall be capable of storing one hundred percent (100%) of the Gambling Device transactions.

l.  The System shall be capable of sending daily location reports through a satellite tracking system, known as GPS, which alerts of any movement or relocation of the device to a place not authorized under this Act and assists the Electronic Gaming Official authorized by the Company to conduct inspections."

Section 156.- A new Section 27 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 27.- Gambling Devices- Required Technology Cost and Investment.-

Any person who holds a gambling device license shall ensure that the Gambling Devices meets all the technology requirements established in this Act. The Wholesale Gambling Device Owner or Operator shall defray the cost for investment, installation, maintenance, and online monitoring costs of the technology required by this Act. Under no circumstances, shall the Government of Puerto Rico invest money in the implementation or operation of the technology established in this Section."

Section 157.- A new Section 28 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 28.- Gambling Devices- Theoretical and Actual Payout Percentage-

AAFAF_CONF_0008318

Gambling devices shall be electronically programed to yield a maximum of seventeen percent (17%) of the volume of the device's return; provided, that the portion of the return to player shall never be less than eighty-three (83%) percent."

Section 158.- A new Section 29 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 29.- Rules for Distributing Gambling Device Revenues.-

The revenues from the operations of gambling devices shall be distributed as provided below:

a. The revenues generated by each gambling device shall be equal to the total played in the device, minus the total prizes paid for the same device. Said revenues shall be distributed as follows:

i. Thirty-three percent (33%) of the revenues shall be remitted to the Company.

ii. Sixty-seven percent (67%) of the revenues shall be distributed between the Business Owner and the Wholesale Gambling Device Owner according to the agreement reached between them."

Section 159.- A new Section 30 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 30.- Collection and Distribution of Gambling Device Revenues.-

Any person who holds a wholesale gambling device owner license shall be responsible for the process of removing, counting, and accounting all the money deposited in the gambling device. In addition, such person shall be responsible for distributing all the revenues generated by the gambling devices, as provided in this Act.

Revenues shall be remitted bimonthly to the Games of Chance Division, which, upon validating the amount against the information gathered through the systems and/or audits, shall remit such revenues on a monthly basis as follows:

AAFAF_CONF_0008319

a.  Fifty (50) percent of said revenues shall be deposited in a trust created by Law, which shall be set aside as a contribution to improve the Retirement compensation of the Puerto Rico Police. If there is a surplus after covering the contributions to the retirement plans of the Police Department, the same shall cover said contribution[sic] shall be used for purposes related to their retirement.

b.  Forty-five (45) percent of said revenues shall be set aside to cover the contribution of the municipalities to the Puerto Rico Health Insurance Administration, to be deposited in the Trust of the Municipal Revenues Collection Center,' which shall be amended for such purposes, as well as Section 17 of Act No. 80-1991, as amended, known as the 'Municipal Revenues Collection Center Act." Said funds shall be credited at the end of each fiscal year in the same proportion of the payment that the municipalities are required to make to the Health Insurance Administration.

c.  Five (5) percent of said revenues shall be allocated to the Division to defray any and all costs related to the maintenance and operation of the system.

If the revenues collected from the adult amusement machine and gambling device license fees do not reach forty (40) million dollars, the first revenues shall be remitted to the general fund until reaching such amount. Once the aforementioned amount is reached, the distribution provided for in this Section shall begin.

The Company, through the Division, shall verify that the entire gambling device revenue collection and distribution process is carried out in accordance with the provisions of this Act.  Wholesale gambling device owners shall furnish the deposit certifications to the Company as detennined by the Division."

Section 160.- A new Section 3l is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

AAFAF_CONF_0008320

"Section 31.- Gambling Devices- Violations.-

Owners and/or administrators of any business who maintain on their premises or allow the operation of vending machines that may be used for gambling or lottery purposes, and those known as slot machines who do not have a gambling device license or decal in effect shall be guilty of a misdemeanor and punished by the penalties established in this Act."

Section 161.- A new Section 32 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 32.- Gambling Devices- Fines and Penalties.-

1. Civil Fines.

The Executive Director may impose civil fines in an amount of not less than five thousand (5,000) dollars or more than ten thousand (10,000) dollars for each violation of this Act.

2. Penalties.

(a) Any Gambling Device owner or any other person, operator, or assistant to a business or establishment who introduces to said business or uses or attempts to use in such business a gambling device, as described in Section 30, without holding a gambling device license or decal in effect shall be guilty of a misdemeanor and upon conviction shall be punished by imprisonment for a maximum term of six (6) months or be subject to a fine of not less than five thousand (5,000) dollars nor more than ten thousand (10,000) dollars or both penalties at the discretion of the Court. Any subsequent conviction shall entail a fixed penalty of twenty thousand dollars (20,000) and shall constitute a felony punishable by imprisonment for a term of one (1) year.

(b) Any person who violates any of the provisions of this Act or the regulations promulgated by the Executive Director shall be, upon conviction,

AAFAF_CONF_0008321

punished by a fixed fine five thousand (5,000) dollars or imprisonment for a term of six (6) months, or both penalties at the discretion of the Court.

(c)   Any person who prohibits or prevents the Company's inspectors or authorized personnel, inten1al revenue agents, or law enforcement officers from freely inspecting business, establishments, or sites for the purpose of conducting investigations related to this Act or the regulations promulgated by the Executive Director, or who admits, advises, encourages, aids or abets a minor under the age of eighteen (18) to participate in and/or operate gambling devices shall be punished by a fixed penalty of ten thousand (10,000) dollars and by imprisonment for a term of not less than one (1) year.

(d)   Any business that violates any of the provĪs10ns of this Act or the regulations promulgated by the Executive Director may have its license to sell alcoholic beverages revoked by the Government and to have its wholesale gambling device owner license cancelled permanently.

(e)   Furthermore, the Director is hereby empowered to impose civil penalties for violations of his orders and the regulations promulgated thereunder, including the temporary suspension or permanent revocation of the rights and privileges enjoyed by the natural or juridical person guilty of the violation, including, the revocation of all licenses issued and administered by the Company. The revenues generated from the fines thus imposed shall be collected by the Company as provided by Regulations, and shall be set aside for the Division's operations."

Section 162.- A new Section 33 is hereby added to Act No. 11 of August 22, 1933, as amended, to read as follows:

"Section 33.- Seizure of Gambling Devices.-

Notwithstanding the penalties prescribed by this Act, the Company, the Internal Revenue Agents, and the Puerto Rico Police shall be empowered to seize

AAFAF_CONF_0008322

and dispose of any vending machine or gambling device operating without license, with an expired license, with a license issued to another device, or operating in contravention of this Act. The Company shall adopt regulations that shall govern the process to seize and dispose of devices. Act No. 93-1988, as amended, 'Uniform Seizure Act,' shall not apply to the gambling devices seizure process prompted for violations of this Act."

Section 163.- Sections 6, 7, and 8 of Act No. 11 of August 22, 1933, as amended, are hereby renumbered as Sections 34, 35, and 36, respectively.

Section 164.- Severability.-

If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect, impair, or invalidate the remainder of this Act. The effect of said holding shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act thus held to be null or unconstitutional. If the application to a person or a circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect or invalidate the application of the remainder of this Act to such persons or circumstances where it may be validly applied. It is the express and unequivocal will of this Legislative Assembly that the courts enforce the provisions and application thereof to the greatest extent possible, even if it renders ineffective, nullifies, invalidates, impairs, or holds to be unconstitutional any part thereof, or even if it renders ineffective, invalidates, or holds to be unconstitutional the application thereof to any person or circumstance. This Legislative Assembly

HEIN EXHIBIT 83

AAFAF_CONF_0008323

would have approved this Act regardless of any determination of severability that the Court may make.

Section 165.- Effectiveness.-

This Act shall take effect immediately after its approval, except as otherwise provided in this Act.

HEIN EXHIBIT 83

# CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 257-2018 (H.B. 1544)** **(Conference)** of the 4th **Regular Session** of the **18th Legislative Assembly of Puerto Rico:**

**AN ACT** to amend Sections 1000.02, 1001.01, 1010.01, 1010.04, 1010.05, 1021.01, 1021.02, 1021.03, 1022.01, 1022.03, 1022.04, 1023.04, 1023.06, 1023.08, 1023.09, 1023.21, 1023.22, 1031.01, 1031.02, 1032.05, 1033.02, 1033.07, 1033.10, 1033.14, 1033.15, 1033.17, 1034.01, 1035.01, 1035.02, 1051.01, 1051.04, 1051.05, 1051.06, 1051.07, 1051.09, 1051.10, 1051.11, 1051.12, 1051.13, 1051.14, 1052.01, 1061.01, 1061.02, 1061.03, 1061.04, 1061.06, 1061.07, 1061.15, 1061.16, 1061.17, 1062.01, 1062.02, 1062.03, 1062.08, 1062.09, 1063.01, 1063.03, 1063.07, 1063.09, 1063.12, 1071.02, 1071.04, 1071.08, 1074.03, 1081.01, 1081.02, 1081.05, 1101.01, 1112.01, 1113.04, [...]

has been translated from Spanish to English and that the English version is correct.

In San Juan, Puerto Rico, on this 21st day of March, 2019.


Orlando Pagan-Ramirez
Director

AAFAF_CONF_0008325