(H.B. 1635)
(Conference)

## (No. 60-2019)

### (Approved July 1, 2019)

# AN ACT

To    adopt the "Puerto Rico Incentives Code"; consolidate the dozens of existing decrees, incentives, subsidies, reimbursements, or tax or financial benefits; promote the environment, opportunities, and adequate tools to promote the sustainable economic development of Puerto Rico; establish the legal and administrative framework that shall govern the request, evaluation, granting or denial of incentives by the Government of Puerto Rico; promote the efficient and ongoing measuring of the costs and benefits of the incentives granted to maximize the impact of the investment of public funds; provide stability, reliability, and credibility to the Government of Puerto Rico in all that pertains to private investments; improve Puerto Rico's economic competitiveness; add a new Section 5 to Act No. 135 of May 9, 1945, as amended, known as the "Air Carriers Tax Exemption"; amend Section 8 of Act No. 7 of March 4, 1955, as amended, known as the "Historic Zones Tax Exemption"; repeal Section 61.240 of Act No. 77 of June 19, 1957, as amended, known as the "Insurance Code of Puerto Rico"; amend Section 6 of Act No. 72 of June 21, 1962, as amended, known as the Puerto Rico Milk Industry Inc. Tax Exemption Act; amend Section 9 of Act No. 126 of June 28, 1966, as amended, known as the "Ocean Freight Shipping Act"; repeal Act No. 42 of June 19,1971, as amended, known as the "Agricultural Workers Annual Bonus Act"; amend Section 8 of Act No. 54 of June 21, 1971, as amended, known as the "Tax Exemption on Commercial Production of Flowers and Ornamental Plants"; amend Section 12 of Act No. 47 of June 26, 1987, as amended, known as the "Public and Private Sector Co-partnership for the New Housing Operation"; repeal Act No. 46 of August 5, 1989, as amended, known as the "Act to Establish the Wage Subsidy Program for Eligible Farmers"; repeal Act No. 225-1995, as amended, known as the "Puerto Rico Agricultural Tax Incentives Act"; amend Section 8 of Act No. 165-1996, as amended, known as the "Rental Housing Program for Low Income Elderly Persons"; add a new Section 7 to Act No. 213-2000, as amended, known as the "Housing Units for the Elderly and Persons with Disabilities"; amend Section 2.3 of Act No. 140-2001, as amended, known as

AAFAF_CONF_0007654

the "Tax Credits for Investment in New Construction and Rehabilitation of Rental Housing for Low- or Moderate-Income Families Act"; add a new Section 23 to Act No. 244-2003, as amended, known as the "Act for the Creation of Assisted Living Housing Projects for the Elderly in Puerto Rico"; repeal Act No. 325-2004, as amended, known as the "Renewable Energy Development Act"; repeal Act No. 464-2004, as amended, known as the "WVEMPLEO Program Act"; repeal Act No. 26-2008, as amended, known as the "Agriculture and Food Technology Research and Development Financing Program Act"; amend Sections 5 and 20 of Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto Rico"; amend Section 15 of Act No. 74-2010, as amended, known as the "Puerto Rico Tourism Development Act of 2010"; amend Section 3.6 of Act No. 83-2010, as amended, known as the "Green Energy Incentives Act of Puerto Rico"; amend Section 19 of Act No. 118-2010, as amended, known as the "Municipal Economic and Tourist Development Incentives Act"; repeal Act No. 159-2011, as amended, known as the "Act to Provide Tax Incentives for Investments in Solid Waste Reduction, Disposal, and/or Treatment Facilities"; amend Section 20 of Act No. 20-2012, as amended, known as the "Act to Promote the Export of Services"; amend Section 12 of Act No. 22-2012, as amended, known as the "Act to Promote the Relocation of Individual Investors to Puerto Rico"; amend Section 9.7 of Act No. 27-2011, as amended, known as the "Puerto Rico Film Industry Economic Incentives Act"; repeal Act No.1-2013, as amended, known as the "Jobs Now Act"; repeal Act No. 95-2013, as amended, known as the "Business Incubators Intensive Program"; repeal Sections 5, 6, and 7 of Act No.73-2014, as amended; amend Section 17 of Act No. 135-2014, as amended, known as the "Young Entrepreneurs Incentive and Financing Act"; repeal Sections 5, 6, and 7 of Act No.171-2014, as amended; repeal Act No. 185-2014, as amended, known as the "Private Equity Funds Act"; repeal Sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13, renumber accordingly, and amend Section 115 of Act No. 187-2015, as amended, known as the "Interagency Validation Portal for the Granting of Incentives for the Economic Development of Puerto Rico Act"; amend Section 20 of Act No. 14-2017, as amended, known as the "Act to Incentivize the Retention and Return of Medical Professionals"; amend Section 8 of Act No. 74 of June 21, 1956, as amended, known as the "Puerto Rico Employment Security Act"; amend Section 24 of Act No. 272-2003, as amended, known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act"; amend subsection (b) of Section 2 of Act No. 132-2010, as amended, known as the "Real Property Market Stimulus Act"; amend Sections 1023.10, 1031.02, 1031.06, 1033.14, 1033.15, 1034.04, 1040.02, 1040.05, 1061.20,

AAFAF_CONF_0007655

1062.03, 1062.05, 1062.07, 1063.01, 1063.16, 1071.02, 1071.10; add a subchapter G to Chapter 7 of subtitle A, 1081.05, 1082.01, 1082.02, 1114.16, 4010.01, 4050.09, 6030.25, 6041.11, add a new Section 1115.11, and repeal Section 1033.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico"; in order to promote the incentives and a favorable regulatory environment to establish Qualified Opportunity Zones in Puerto Rico; repeal Act No. 21-2019, as amended, known as the "Puerto Rico Economic Development and Opportunity Zones Act of 2019"; and for other related purposes.

## STATEMENT OF MOTIVES

Economic development and private capital investment are the cornerstones of the journey towards our economic recovery. In a little over two (2) years, this administration has made crucial decisions geared towards creating a better and more effective business and investment environment. Some of the most noteworthy are:

a) The Labor Transformation, Act No. 4-2017;

b) The Permit Reform, Act No. 19-2017;

c) The DMO, Act No. 17-2017;

d) The creation of Invest Puerto Rico, Inc., Act No. 13-2017;

e) The MEDICAL CANNABIS Act, Act No. 42-2017;

f) The amendments made to Act No. 20 and Act No. 22, Act No. 43-2017, and Act No. 45-2017, respectively;

g) The transformation of the Puerto Rico Electric Power System;

h) The New Tax Model which reduces tax rates;

i) The agreement with Chinese company Yingke to develop a cultural tourism center on the Island;

j) The expansion of Puerto Rican company LinkActiv;

k) The million-dollar investment made by the Italian company COPAN in Aguadilla;

l) The expansion of Air Master in Barceloneta;

AAFAF_CONF_0007656

HEIN EXHIBIT 84

m)     The filming of the movie Primal whose production shall create 737 direct jobs and over 2,000 indirect jobs;

n)     The renewable energy agreements with Tesla;

o)     The arrival of cruise ships to the Port of Ponce;

p)     The Freedom of the Seas cruise choosing San Juan as its home port;

q)     The agreement with AirBNB to promote the Island;

r)     The Governor's meetings with executives from Google, Linkedin, Gap, Facebook, Uber, and other multinational companies to incentivize investments in Puerto Rico;

s)     The approval of Act No. 120-2018, which promotes the transformation of the Electric Power Authority;

t)     Over 6 Public-Private Partnerships which are well underway and ready to commence operations soon;

u)     The steady drop of Puerto Rico's unemployment rate during the last few months;

v)     The construction of District Live! at the Convention Center District;

w)     The expansion of companies such as Pan Pepin, Rock Solid, Stryker, COPAN, and Sartorius;

x)     The arrival of Uber Eats to Puerto Rico;

y)     The approval of the New Tax Model which incentivizes the local economy and does justice to taxpayers; and

z)     The approval of the "Puerto Rico Economic Development and Opportunity Zones Act of 2019," Act No. 21-2019.

After hurricanes Irma and Maria, Puerto Rico's economic situation, already greatly affected by our colonial status, worsened. After eight (8) difficult months of recovery, investors are once again placing their trust in Puerto Rico. The road to Puerto Rico's reconstruction includes an appropriation of tens of billions in federal

HEIN EXHIBIT 84

AAFAF_CONF_0007657

disaster relief funds, which shall contribute to our economy, but only temporarily. Therefore, we must seize the opportunities and promote our talents to the maximum extent. The aforementioned achievements serve as additional proof that we are headed in the right direction to restore our appeal as a jurisdiction for doing business. Thinking ahead, it is our duty to continue identifying more and better ways of attracting economic activity.

With the arrival of Puerto Rico's reconstruction funds, the Island is open to do business and shall continue to promote economic development measures that allow Puerto Rico to become once again the bridge to the Americas.

Puerto Rico has a long history of granting incentives to stimulate investments and job creation. The use of various economic incentives has been a core aspect of the various economic development strategies that the Island has implemented throughout the last decades. For such purposes, this Legislative Assembly has enacted many laws throughout the years that have defined the Puerto Rico's priorities at the time, however, these are not necessarily the priorities or needs of present-day Puerto Rico. The current economic and fiscal reality of Puerto Rico requires that the Government conduct a holistic review of all of its incentives in order to provide consistency, structure, and relevance to a series of strategies that, for one reason or another, do not have a common thread and in some instances are incompatible or inconsistent with one another.

Puerto Rico's economy has contracted for eleven of the past twelve years and no significant changes are projected for this macroeconomic patte1n, excluding the effects of hmTicane Maria and the relief funds that Puerto Rico shall receive from the United States in connection therewith. Undoubtedly, one of the tools available to the Government of Puerto Rico to counteract this economic contraction is to provide incentives to high-performance industries, whether local or foreign, whose activities primarily focus on the export of goods and services, as an incentive to bring

AAFAF_CONF_0007658

HEIN EXHIBIT 84

new capital to Pue1io Rico through such expmis. Likewise, the subsequent increase in public debt and the precariousness of Puerto Rico's fiscal situation make it imperative to evaluate the incentives that have been granted, historically, in order to determine which yield the most returns and which have a negative return. Such information shall provide Puerto Rico with the tools to redirect our limited resources towards those activities that truly stimulate our economy's growth, raise our level of business competitiveness, promote export and outside investment in Puerto Rico, and create more well-paid jobs for our people.

The Plan for Puerto Rico contemplates a change of vision in the management of the incentives that Puerto Rico uses to promote economic activity, so we can adjust and redirect our efforts to correct the problems that past strategies have created. Creating a dynamic economic stimulus platform that is consistent with the fiscal and economic reality of Puerto Rico is critical for Puerto Rico's economic development. For such reason, and consistent with the Plan for Puerto Rico, we are creating an Incentives Code to promote activities that contribute to the growth of Puerto Rico's economy through investment, export, and job creation; responsibly streamline the application and approval process; and establish uniform processes to continuously regulate, measure, and evaluate the incentives granted thus ensuring compliance, transparency, and the attainment of the fiscal objectives for development. As stated in the Plan for Puerto Rico, the use of incentives must yield a benefit not only for the incentivized activity, but also for Puerto Rico in general. It is important for incentives to produce tangible benefits in order to generate funds for the Treasury as well as to avoid redundant activities, and to promote economic development in the broadest and most balanced and diversified manner as possible. Tax and economic incentives must focus on strategically and wisely balancing outside capital investments with our local business creation ecosystem so as to

AAFAF_CONF_0007659

HEIN EXHIBIT 84

promote the continuous transfer of knowledge, processes, innovation, and technology between them.

In accordance with our programmatic commitment, the Department of Economic Development and Commerce of Puerto Rico (hereinafter, the DEDC) took on the task of analyzing the current laws, economic principles, methodology, and results of all the economic incentives granted in Puerto Rico while taking into account the most recent data available. The analysis revealed that, at present, there are approximately seventy-six (76) laws or programs that promote investment through the granting of incentives. Fifty-eight (58) of those laws or programs stimulate economic activity, and eighteen (18) address social needs. According to the available data, those programs identified as economic programs represent a total fiscal cost of over $7.462 billion, of which eighty-one percent (81 %) are considered opportunity costs.[1]

The fiscal costs attributable to the granting of economic development incentives comprise:

(a)　Opportunity Costs: Revenues the Government stops receiving on account of preferential rates granted on taxable income, therefore, the Government does not include them in the budget.

(b)　Refunds and Subsidies- The money granted for activities that stimulate the economy such as job creation, investments in infrastructure, and utility payments.

(c)　Tax Credit- A contribution in the form of a credit granted to an Exempt Business or an Eligible Person to foster their businesses' growth subject to the limits

---

[1] It is worth noting that the study conducted by the DEDC did not include the Return on Investment analysis for the incentives directed at addressing social causes because their purpose is not economic return. Such incentives include those that promote the construction of affordable housing, the arts, and culture, among others.

HEIN EXHIBIT 84

AAFAF_CONF_0007660

and terms established in this Code and the Incentives Regulations, and granted upon the execution of an incentives agreement.

(d)     Special Deductions- The deductions included in the income tax returns for investments in machinery, Renewable Energy or other related operating costs, as provided by law.

(e)     Municipal Exemptions- The exclusions from the payment of property taxes, municipal license taxes, and the Sales and Use Tax (SUT) granted to municipalities, as provided by law.

Even though the granting of incentives has been a positive experience in general, the Government believes that the incentives program may be maximized by consolidating all of the different incentives offered to the various sectors by our current incentives laws in order to more effectively further its mission of economic development. We have taken on the task of rethinking Puerto Rico's economic incentives system and redesigning it from the ground up so that our incentives align with our needs, take into account our limitations, and maximize our potential. This Incentives Code is the result of such efforts and, for the first time in our history, Puerto Rico has a document that encompasses all of the economic stimulus programs available on the Island. Contrary to the arbitrary efforts made in the past to grant incentives, the Plan for Puerto Rico, taking into account the results of a series of in-depth analyses conducted on the effectiveness of such incentives. [sic] Furthermore, the effectiveness and return of the economic incentives shall be under a continuous and thorough evaluation. To such effect, it is imperative that our new Incentives Code includes a streamlined and pragmatic model to suppmi the continuous improvement of the economic development strategy, and the ability to identify emerging risks and opportunities.

Therefore, we propose an Incentives Code that rationalizes and consolidates the dozens of decrees, incentives, subsidies, refunds, and tax or financial benefits

that Puerto Rico offers, as well as the adjustment and limitation of our offerings to those we are able to factually and economically prove that shall have a favorable macroeconomic impact on the Island. The purpose of the Incentives Code is to foster the appropriate environment and opportunities as well as to provide the tools to promote Puerto Rico's sustainable economic development. This new code shall establish the legal and administrative framework which shall govern the incentives application, evaluation, and granting or denial process by the Government of Puerto Rico; it shall provide stability, certainty, and credibility for all types of private investments in Puerto Rico; and shall serve as a promotional tool for investing in the Island. By virtue thereof, this Code grants incentives that: "should not be interpreted as the former tax exemptions which were privileges, for which reason their restrictive interpretation was beneficial to the public interest. On the contrary, [...] should be [liberallyl interpreted in consonance with their creative purpose." *Textile Dye Works Inc. v. Secretary of Treasury* 95 DPR 708, 713 (1968). See also, *Pfizer Pharm V. Mun. de Vega Baja,* 182 DPR 267,286 (2011). This Code also maintains the gove111ing principle that the incentives herein provided: "[are] not a grace, in the old sense of the phrase, conferred by the Government of Puerto Rico, but it is an instrument utilized in Puerto Rico to promote industrial development and productive investment [...]" *Id.* Likewise, this Legislative Assembly wants to clarify that the tax exemptions granted by this Incentives Code are considered a contract between the Government of Puerto Rico, the Exempt Business, and its shareholders, paiiners, or owners, hence, general contract rules apply thereto. Therefore, "the principle of party autonomy applies thereto, and the parties may establish the covenants, clauses, and conditions deemed convenient, provided that they are not contrary to law, morals, or public order." [Translation supplied] *Pfizer Pharm. V. Mun. de Vega Baja, supra,* page 283. In this sense, the Incentives Code shall be very valuable and useful for entities such as Invest Puerto Rico, Inc. and the Puerto Rico Destination

AAFAF_CONF_0007662

Marketing Organization (DMO) which shall be responsible for, among other things, attracting capital to achieve economic development.

The incentives evaluation conducted when this Incentives Code was being drafted, as well as any evaluations to be conducted in the future, were and shall be conducted according to the governing principle that the most relevant aspects for said evaluation are the economic principles proposed or defined by the Government, and the activities and industries that should be incentivized to ensure Puerto Rico's economic growth. The Incentives Code shall enable the Government to achieve the fundamental goal of implementing development initiatives by creating favorable conditions for competitiveness and innovation, and by supporting emerging industries and technologies that promote sustainability, through incentives that encourage training, operational improvement, sustainable economic development, and job creation, and are attuned to Puerto Rico's fiscal reality and the global competitive environment. The Incentives Code shall also facilitate the process of establishing uniform rules to apply for, process, and grant incentives while eliminating government investments in certain activities that are not competitive or productive.

The Incentives Code shall enable us to standardize the types of incentives granted at present and minimize risky incentives that, have historically resulted in losses or have adversely affected the economy of Puerto Rico. The Incentives Code recognizes that promoting the efficient and continuous assessment of the costs and benefits of incentives is essential to determine the money invested vis-a-vis the money received by the Treasury. For such reason, the new Incentives Code shall also include provisions to measure the Return on Investment (ROI) and to keep data on such returns per economic sector up to date.

The Incentives Code shall facilitate the analysis of our incentives to determine the desirability of maintaining, modifying, or discontinuing any incentive that has

AAFAF_CONF_0007663

proven to be obsolete or that has yielded a negative return. Furthermore, the analysis shall allow us to determine which incentives can yield a positive return based on concrete data, whether gove1nment resources should be redirected towards other industries to maximize returns and stimulate productivity, and shall even allow us to identify the need to create new incentive mechanisms. New incentives shall be evaluated and approved through the mechanisms and processes established in the regulations adopted by the DEDC based on thorough analyses which enable informed decisions. This structure shall allow us to improve processes, analyze incentives based on the ROI and economic priorities, and to determine, within a reasonable term, whether it is desirable to continue granting the incentive.

Consistent with the foregoing, an incentives evaluation model shall also be created, pursuant to the needs of Puerto Rico's economy, in order to measure the efficacy of the program based on the annual reports submitted by beneficiaries. The analysis of the reports shall allow us to improve the stimulus programs and shall guarantee that the incentives are granted and used to maximize the economic impact on the Island. Likewise, the evaluation shall make it easier to oversee compliance with the terms and conditions of the incentives granted, including risk assessment and the return on investment of such economic stimuli, in accordance with the public policy on economic development. Another change introduced in the Incentives Code were the rigorous safeguards established to impose defined penalties for noncompliance with any of the terms and conditions of the incentives agreement, including the duty to submit annual reports.

As an important element to ensure transparency and that the rules are strictly enforced, a single office shall be designated to oversee the aspects pertaining to compliance. To such effect, the Tax Exemption Office, now the Incentives Office, shall become part of the DEDC and shall assume other responsibilities pursuant to the new Incentives Code.

AAFAF_CONF_0007664

The new Incentives Code shall be divided into sections, based on the particular characteristics to address the various sectors of the economy (manufacturing; exports; visitor economy; creative industries; finances; investments and insurance; infrastructure; and agroindustry) and to fmiher strategic activities. For such reasons, it is hereby proposed that those funds granted as incentives in categories or subcategories and that have a negative return be reassigned, when possible, to activities within the same category that yield positive returns.

The New Incentives Code amends the eligibility and benefits granted prospectively to various economic activities. The companies that operate in accordance with the terms of the decree granted shall not be affected. Some incentives shall remain unaltered, such as, the incentives for export companies and companies that are key suppliers for exporters, foreign investors, and the cruise ship industry, while others have been eliminated, standardized, or amended to yield better returns on public investments.

Furthermore, the Incentives Code proposes to include therein all the laws and programs of a social nature in order to ensure that they are part of the oversight process so as to provide transparency to the use of these subsidies and to assess their impact on Puerto Rico.

The Incentives Code defines and imposes oversight responsibilities and accountability in connection with the incentives program by requiring the DEDC to publish annual reports with data on the expenses and benefits of all incentive programs. The report shall make it easier to evaluate the incentives in order to determine which programs should be modified, expanded, or rethought to maximize their impact on the economy, and to align them with the strategic development plan. This annual report shall also improve the Government of Puerto Rico's transparency pertaining to the use of its fiscal resources.

AAFAF_CONF_0007665

Another of the Gove1nment's priorities in adopting a new Incentives Code is to facilitate the transition so that most of the process is automated and centered on a system that enables the various users, such as proponents, service providers, agencies, and other interested parties, to have access to public information and conduct transactions efficiently.

The Incentives Code also formally incorporates the participation of the private sector into the process through the creation of the concepts of Qualified Promoter and Certified Professional who shall assist the Government in attracting companies to the Island and facilitating the application and compliance processes. Lastly, in order to achieve the purposes of the new Incentives Code, it is imperative to provide for a proper transition with precise change management guidelines for each gove1nment body that enforces this particular law as well as for current and future beneficiaries.

Some of the changes made to our economic incentives in the new Incentives Code include organizing exemptions by industry segments and sectors to allow for various incentives laws to be grouped together under a single category in as far as such laws stimulate those sectors, as stated hereinbelow:

1. Individuals
2. Export (Goods and Services)
3. Financial and Insurance Services
4. Visitor Economy
5. Manufacturing, including Research and Development
6. Infrastructure
7. Agriculture
8. Creative Industries
9. Entrepreneurship
10. Others

AAFAF_CONF_0007666

Furthermore, tax rates are conformed across industries to the extent possible in order to provide a series of tax benefits that, as a general rule, shall apply to all sectors thus providing a simple guide on what is offered and to whom. Additional benefits are established for small- and medium-sized businesses (SMBs) and for Exempt Businesses established in Vieques and Culebra.

In the agricultural sector, the Secretary of Agriculture is incorporated into the granting of agricultural incentives. Also, original benefits such as wage incentives and the agricultural worker bonus are kept.

Recognizing a recent and emerging industry worldwide, commodities, coins, and any digital assets based on blockchain technology shall be eligible for the incentive applicable to the capital gains of Resident Individual Investors (former Act No. 22).

The Incentives Code also incorporates the tax credit mechanism, which credits shall be distributed by the Secretary of the DEDC to maximize the returns of the incentives subject to the sound administration parameters prescribed by regulations. This Code in no way limits the power of the State to grant tax credits, to which deference was given in Section 208(b)(1) of PROMESA. Likewise, this Legislative Assembly reserves the power to establish additional controls, besides those provided herein, for the use of tax credits that have an impact on the General Fund.

Moreover, the tax exemption period under the decree is standardized so that all decrees shall be valid for fifteen (15) years, and may be renegotiated for an additional fifteen (15)-year period. The use of decrees for all tax exemption benefits is incorporated as well, including Act No. 185, the "Private Equity Funds Act," among others.

The authority to grant decrees and adopt regulations under the Incentives Code is centralized in the DEDC, providing that fiscal and tax matters shall be addressed in conjunction with the Department of the Treasury. All of the changes established

AAFAF_CONF_0007667

in this Incentives Code are of a prospective nature and shall not affect the businesses or individuals holding decrees, credits, or incentives granted prior to its approval.

In addition, the Incentives Code includes the My Future Account so as to fulfill the commitment made in the Plan for Puerto Rico. Through this new program, the Administration shall open an account with one thousand dollars ($1,000) for each kindergarten student in the public education system. This account shall allow children to build savings which they shall receive upon graduating from high school. The funds may be used to start a college education or a business, among others. The purpose of this mechanisms is to continue the fight against social inequality and school dropout rates as well as to promote academic achievement. My Future Account is consistent with the Fiscal Plan certified by the Financial Oversight Board pursuant to PROMESA, which clearly directs the development of initiatives that promote education, which represents the Island's future, and investments with the highest positive return therefor.

The Code also includes a loan repayment program for medical, veterinary, and dentistry students as well as those engaged in medical science research so that they remain in Puerto Rico after completing their education. This initiative seeks to encourage that these health professionals remain on the Island after completing their education. Thus, the DEDC may subsidize the student loans taken out by said physicians; provided, that they remain in Puerto Rico and establish their practice on the Island. With this measure, we also seek to slow the exodus of physicians and specialists that Puerto Rico has been experiencing for years.

This Code is approved with the conviction that it shall improve Puerto Rico's economic competitiveness. The Code shall create a simple, streamlined, and efficient process that focuses on the client, and shall earn the trust of the people and the private sector by having a transparent process for the granting of incentives. Likewise, the incentives offered shall be continuously reviewed in order to identify

AAFAF_CONF_0007668

those that are not cost-effective and to strengthen those that have proven to have an impact and which generate a return on investment for the Treasury. Thus, with the tools provided by this Code, this Administration shall keep boosting the economy and attracting private capital to the Island. We keep working nonstop to place Puerto Rico as a world-class jurisdiction for doing business.

Our people remain hopeful and optimistic, even though there are many obstacles to overcome on the road to full recovery. The road to economic recovery has been mapped out. This administration shall stay committed to Puerto Rico in order to guide it to a full economic recovery. This is our goal and we are moving forward. We are confident that the actions we have taken shall help Puerto Rico rise up stronger than ever.

### *BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:*

Section 1000.01.- Title

This Code, divided in Subtitles, Chapters, Subchapters, and Sections, shall be known and cited as the "Puerto Rico Incentives Code."

Section 1000.02.- Classification of Provisions

The provisions of this Act are hereby classified and designated as follows:

Subtitle A- General Provisions

Subtitle B- Economic Development Incentives

Subtitle C- Tax Credits

Subtitle D- Subsidies and Other Programs

Subtitle E- Funds for the Granting of Benefits

Subtitle F- Administrative Provisions


Section 1000.03.- Governing Principles of the Incentives Code

(a)     Return on Investment- As used in this Code, the term Return on Investment refers to the ratio between the net benefit and the cost of granting the

AAFAF_CONF_0007669

Incentive. The foregoing includes the result of the total benefits minus the total costs, divided by the total costs. The benefits taken into consideration include: a) direct payroll taxes; b) indirect and induced payroll taxes; c) Sales and Use Taxes on direct and indirect economic activity; and d) taxes on consumption by nonresidents. The costs used in the formula include: a) credits; b) investments; c) subsidies; and d) opportunity costs related to income tax exemptions. These calculations vary per industry, and the multipliers by type of production and type of employment according to the tables of the North American Industry Classification System (NAICS). The DEDC shall consider different types of investments that shall be implemented through the Incentives Regulations by using the Return on Investment (ROI) formula as well as other factors that help assess the effectiveness of such incentives including, but not limited to, the following factors:

(i)      The various Treasury income sources generated by the activity;

(ii)     The total sum of the tax and economic benefits granted;

(iii)    The direct, indirect, and induced effects based on the official multipliers provided or endorsed by the Planning Board;

(iv)     Local purchases, including the purchase of Products Manufactured in Puerto Rico; and

(v)      An analysis of the benefits attributable to incremental economic activity rather than to sustainable economic activity by aggregate demand.

(b)      Annual Report on the Effectiveness of Incentives- The DEDC shall analyze the effectiveness of the incentives and other economic development tools used during the previous Fiscal Year of the Government of Puerto Rico and shall submit a copy of such report to the Governor of Puerto Rico before April 1 of each calendar year. Furthermore, the DEDC shall file a copy of the aforementioned

AAFAF_CONF_0007670

report with the Office of the Clerk of the House of Representatives and the Office of the Secretary of the Senate.

(c)     To Prevent Regulatory Duplication- In such cases where the activities or transactions of an Exempt Business are allowed by this Code, and are subject to federal legislation or regulations, the Secretary of the DEDC shall evaluate the processes and regulations thereof and may eliminate or amend any duplicity or impairment to achieve the objectives of this Code through the Incentives Regulations, administrative order, circular letter, memorandum, or interpretive document.

(d)     To Promote Reciprocity with Other Jurisdictions- In such cases where the activities or transactions of an Exempt Business are allowed under this Code and are covered by reciprocity clauses with other jurisdictions which allow such entities to do business with other jurisdictions, the Secretary of the DEDC through the Incentives Regulations, shall have the authority to waive, through the Incentives Regulations, any limitations to allow reciprocity insofar as the actions or omissions of the Government of Puerto Rico are an impairment to such reciprocity.

(e)     Public Information- The existence of a Decree or other benefit provided by this Code, the name of an Exempt Business, and the Chapter of Subtitle B of this Code under which the Decree was granted are deemed to be public information, provided that any other information related to the Exempt Business shall be disclosed as aggregate information per sector or industry, and not per person.

(f)     Any person interested in the establishment of new incentives shall request the Secretary of the DEDC to conduct an analysis on the impact of such incentives based on the Return on Investment (ROI) formula.

Section 1000.04.- Bill of Rights for Decree Holders and its Shareholders

AAFAF_CONF_0007671

(a)     Every Exempt Business and its shareholders shall be entitled to receive fair, proper, and unbiased treatment from all the officials and employees of the DEDC during any process caiTied out at the Department.

(b) The tax exemption Decrees constitute a contract between the Government of Puerto Rico, the Exempt Business, and its shareholders. The terms and conditions agreed upon in the contract shall be honored during the effectiveness of the tax exemption Decree subject to the Decree Holder's compliance with the terms and conditions thereof.

(c)     The tax exemption Decrees are valid throughout Puerto Rico, including its municipalities. When an Exempt Business commences operations in a new Municipality, it shall not be required to amend its tax exemption Decree to carry out the activities covered by its Decree.

(d)     Every Exempt Business and its shareholders shall be entitled to negotiate matters of economic development and tax Decrees with the Secretary of the DEDC as representative of the Government of Puerto Rico. The endorsement of the Secretary of the Treasury shall be required for tax- and accounting-related matters.

(e)     When a new law is approved or new regulations are adopted which provide terms and conditions that are more favorable, an Exempt Business may request that its Decree be modified to reflect such benefits or terms which are better for the Exempt Business and its shareholders, at the discretion of the Secretary of the DEDC and subject to the endorsement of the Secretary of the Treasury.

(f)     Every Exempt Business and its shareholders shall be entitled to a transparent and expedited process for the granting of a tax exemption Decree.

(g)     Every Exempt Business and its shareholders shall be entitled to have the confidentiality of the information furnished to the DEDC guaranteed. No person outside of the DEDC that is not authorized by the Exempt Business and its

AAFAF_CONF_0007672

shareholders shall have access to such information unless it is explicitly allowed by this Code or any other law. Furthermore, the Exempt Business and its shareholders shall be entitled to know the purpose for which such information is requested, how it shall be used, and the consequences of failing to furnish it.

(h)    Every Exempt Business and its shareholders shall be entitled to receive assistance from any authorized person to represent them; however, Certified Professionals must be either attorneys admitted to the Bar or certified public accountants.

(i)    Every Exempt Business and its shareholders shall be entitled to be notified, in writing, of any modifications the DEDC makes to the Decree as a result of any audit that shows noncompliance. The DEDC shall notify the nature of the modification made to the Decree and the grounds for such changes, as well as afford them the opportunity to be heard as required by the due process.

(j)    Every Exempt Business and its shareholders shall be entitled to not be discriminated against on the basis of race, color, sex, birth, social origin or condition, political affiliation or religious beliefs of the Exempt Business, its shareholders, or any representatives thereof.

The DEDC shall not impose or require arbitrary provisions in the Decrees which could result in the Exempt Business and its shareholders having to incur in unnecessary operating expenses to comply with such provisions.

The Decrees constitute a valuable instrument used by the State to promote capital investment and job and wealth creation in Puerto Rico which is the purpose of these tax exemptions that should govern their interpretation. None of the provisions of this Section shall be construed as limiting the powers of the Secretary of the DEDC or the Secretary of the Treasury to conduct investigations, provided they do not violate the rights of the Exempt Businesses, their shareholders, or their representatives.

AAFAF_CONF_0007673

It shall be a high priority of the Government of Puerto Rico to promote the renewal of existing decrees and the approval of new decrees to maintain or expand manufacturing activities in Puerto Rico as a primary sector that generates revenues for the government as well as economic activity, jobs, and income in the local jurisdiction.

## SUBTITLE A- GENERAL PROVISIONS

## CHAPTER 1- DECLARATION OF PUBLIC POLICY

Section 1010.01.- Declaration of Public Policy

(a)    It shall be the public policy of the Government of Puerto Rico to compile into a single Code the economic principles proposed to incentivize the competitiveness, innovation, export, and activities which help improve the long-term sustainable economic growth of Puerto Rico. The purpose of this new Code is to provide the appropriate environment, opportunities, and tools to foster the economic development of Puerto Rico so as to offer a better quality of life. With this Code, new government models shall be developed that: (1) curb high operating costs and render flexible the regulatory limitations that hinder the competitive position of Puerto Rico; and (ii) streamline government processes through the use of technology.

(b)    This Code seeks to ensure a relationship between the private sector and the Gove111ment of Puerto Rico based on stability, transparency, reliability, and credibility. Likewise, we seek to promote and implement controls to turn Puerto Rico into an attractive destination for direct foreign investment and to promote local capital investment. The foregoing shall attract and promote the establishment of new businesses, create new jobs, and stimulate economic growth as well as retain the activities that have greater impact. Thus, this shall strengthen the supply and value chain, and encourage the creation of conglomerates in strategic sectors.

AAFAF_CONF_0007674

HEIN EXHIBIT 84

(c)      This Code offers an attractive tax proposal for industries with a high growth potential so they can compete with other jurisdictions and, in accordance therewith:

(1)      Transform Puerto Rico into a world-class tourism destination while strengthening the municipalities' fiscal condition through tourism, among others;

(2)      Incentivize the promotion and development of Medical Tourism and medical service facilities in our jurisdiction;

(3)      Take decisive actions to modernize infrastructure and reduce energy costs through investment on infrastructure and various alternative Renewable Sources as well as incentivize the use of technologies that promote sustainability and help build better utilities that are cost effective and cleaner than those of our current infrastructure;

(4)      Promote a service industry focused on exporting all types of services and technology;

(5)      Develop Puerto Rico as an Inte111ational Financial and Insurance Services Center;

(6)      Promote Puerto Rico as a unique location for the film industry and related activities, including post-production;

(7)      Offer manufacturing industries, including their research and development and high technology sectors, as primary sectors of the economy, an attractive tax proposal and incentives structure so they can maintain and expand their current investments, to generate new investment in Puerto Rico, and to export goods and services more competitively than other jurisdictions;

(8)      Strengthen the agricultural sector and promote the export and added value of its products; and

AAFAF_CONF_0007675

(9)     Strengthen the construction sector to make feasible those works which are important for the economic reactivation and reconstruction of Puerto Rico.

(d)     This Code shall be governed by the following guiding principles:

(1)     To maximize transparency through the publication of all the costs and benefits of each incentive available to ensure fiscal responsibility;

(2)     To minimize government risk;

(3)     To make decisions regarding our economic public policy based on facts and informed assumptions;

(4)     To avoid incentivizing redundant economic activities that would be carried out regardless of the incentives;

(5)     To restore sustainable economic growth, thus improving competitiveness;

(6)     To consistently measure the Return on Investment (ROI) of all incentives;

(7)     To oversee strict compliance with the commitments made by companies in exchange for economic benefits.

## CHAPTER 2.- DEFINITIONS

Section 1020.01.- General Definitions

(a)     For the purposes of this Code, the following terms, words, and phrases shall have the meaning and the scope stated below, where not otherwise manifestly incompatible with the intent thereof:

(1)     Stocks- Means Stocks in a corporation, or ownership interest in a partnership, limited liability company, or other type of Entity.

(2)     Affiliate- Means two (2) or more entities where fifty percent (50%) or more of the total combined voting power of all classes of Stock entitled to vote or more than fifty percent (50%) of the total value of all classes of Stock, as the

AAFAF_CONF_0007676

case may be, of said entities is directly or indirectly owned by the same natural or juridical person, estates, or trust.

(3)     Taxable Year- Means the Annual Accounting Period of the Exempt Business, whether a Calendar or an Economic Year.

(4)     Economic Year- Means an accounting period of twelve (12) months ending on the last day of any month other than December.

(5)     Fiscal Year- Means the accounting year of the Government of Puerto Rico consisting of a period of twelve (12) months that begins on July 1 and ends on June 30 of the following year.

(6)     Calendar Year- Means the twelve (12)-month period that begins on January 1 and ends on December 31 of each year.

(7)     Auditor- Means an independent Certified Public Accountant (CPA) holding a license to practice said profession in Puerto Rico, hired by the Decree Holder to perform the functions contemplated in this Code.

(8)     Ports Authority- Means the Puerto Rico Ports Authority.

(9)     Extraordinary Circumstances- Means any event of Force Majeure or exceptional event, or any other cause beyond the control of the Exempt Business.

(10)   Code- Means the "Puerto Rico Incentives Code" adopted herein.

(11)   Puerto Rico Internal Revenue Code or Internal Revenue Code- Means Act No. 1-2011, as amended, known as the "Puerto Rico Internal Revenue Code of 2011," or any future law that substitutes it.

(12)   Insurance Code- Means Act No. 77 of June 19, 1957, as amended, known as the "Insurance Code of Puerto Rico."

(13)   Financial Institutions Commissioner- Means the Financial Institutions Commissioner of Puerto Rico, as defined in Act No. 4 of October 11, 1985, as amended.

AAFAF_CONF_0007677

(14)  Insurance Commissioner- Means the Insurance Commissioner of Puerto Rico, pursuant to Act No. 77 of June 19, 1957, as amended.

(15)  Grant- Means a Decree, as said term is defined in this Code.

(16)  Decree Holder- Means any Exempt Business, as said term is defined in this Code.

(17)  Tax Credit- Contribution to an Exempt Business or an Eligible Person through a credit in order to promote the business development thereof, subject to the limitations and terms established in this Code and the Incentives Regulations, and that is granted through an incentives agreement.

(18)  CRIM- Means the Municipal Revenues Collection Center created by Act No. 80-1991, as amended, known as the "Municipal Revenues Collection Center Act."

(19)  DEDC- Means the Department of Economic Development and Commerce of Puerto Rico.

(20)  Decree- Means the grant issued by the Secretary of the DEDC, through a contract, allowing an Eligible Business to enjoy the tax incentives and/or credits corresponding to such Eligible Business; provided, that they meet the applicable requirements and regulations, whether under this Code or Prior Incentives Laws.

(21)  Special Deductions- Means the deductions included in the return, which are awarded for investments in machinery, Renewable Energy, or other related operating expenses, as provided by law.

(22)  Developer- Means any Person who is affiliated to, owned or controlled, whether directly or indirectly, by an Investor, directly or indirectly responsible for or a participant in the construction, development, or administration of a project or eligible activity of an Exempt Business.

AAFAF_CONF_0007678

(23) Director of the Tourism Company- Means the Director of the Puerto Rico Tourism Company within the DEDC.

(24) Incentives Director- Means the Director of the Incentives Office for Businesses in Puerto Rico within the DEDC.

(25) Entity- Means any corporation, limited liability company, partnership, or any other juridical person. Likewise, it is hereby recognized the tax treatment that these entities receive pursuant to the Puerto Rico Internal Revenue Code, including any election made by such entities under said Code.

(26) Municipal Exemptions- Means the exemption from property taxes, municipal license taxes, and the Sales and Use Tax (SUT) c01Tesponding to municipalities, as provided by law.

(27) Force Majeure- Means an event that is unforeseeable or, if foreseeable, was unavoidable, including exceptional events caused by nature such as floods, earthquakes, and hurricanes (e.g., acts of God).

(28) Governor- Means the Governor of Puerto Rico.

(29) Foreign Government- Means any gove111ment and all its municipalities, instrumentalities, political subdivisions, agencies, public or quasi-public corporations, other than the Government of Puerto Rico.

(30) Government# of Puerto Rico- Means the Government of Puerto Rico and all its municipalities, instrumentalities, political subdivisions, agencies, public or quasi-public corporations.

(3 1) Resident Individual of Puerto Rico- Means a resident individual as defined in Section 1010.0l(a)(30) of the Puerto Rico Internal Revenue Code.

(32) Eligible Income or Exempt Income- Means the income earned by Exempt Businesses from eligible activities under this Code, pursuant to the provisions of Subtitle B of this Code.

AAFAF_CONF_0007679

(33)   Financial Institution- Means any Person or Entity, as described in Section 1033.17(£)(4) of the Puerto Rico Internal Revenue Code.

(34)   Eligible Investment- Means the amount of cash used by an Exempt Business pursuant to this Code, or any Exempt Business Affiliate that is eligible under the following categories:

(i)    Eligible Tourist Investment

(ii)   Special Eligible Investment

(iii)  Creative Eligible Investment

(iv)   Eligible Green Energy Investment

(v)    Eligible Manufacture Investment

(vi)   Eligible Agro-industrial or Agricultural and Livestock Operations Investment

(vii)  Strategic Projects

(35)   Special Eligible Investment- For purposes of this Code, the definition of the term "Special Eligible Investment" means the amount of cash used by the Exempt Business holding a Decree granted under this Code or under any Prior Incentives Laws, or any Exempt Business Affiliate in investigation and development activities conducted in Puerto Rico during a Taxable Year, as defined in the Incentives Regulations. The term Special Eligible Investment shall include an Exempt Business investment made with cash from the programs, a loan secured by the Exempt Business itself or by the Assets thereof, or any Entity Affiliated to the Exempt Business or the Assets thereof. The term Special Eligible Investment shall also include an Exempt Business investment made with cash from a scholarship, agreement, or otherwise financed by a government entity of the United States, but not from Puerto Rico. The Secretary of the DEDC, in consultation with the Secretary of the Treasury and/or the Secretary of Agriculture, as the case may be, shall

AAFAF_CONF_0007680

establish the criteria to identify the costs that shall qualify as Special Eligible Investment in the Incentives Regulations.

(36) Investor- Means any Person that invests in an eligible activity or Exempt Business under this Code.

(37) Invest Puerto Rico, Inc.- Nonprofit entity created by the DEDC, as authorized by Act No. 13-2017, as amended, in order to complement the DEDC's efforts to attract capital investment to Puerto Rico and identify business opportunities that promote economic development and job creation in the island, as well as contribute to the marketing of Puerto Rico as a pro-business jurisdiction in order to attract new investment to the island in conjunction with the DEDC and members of the private sector.

(38) Financial Board- Means the Financial Board within the Financial Institutions Commissioner's Office.

(39) "Puerto Rico Condo Hotel Act"- Means Act No. 249-2008, as amended.

(40) "Municipal License Tax Act"- Means Act No. 113 of July 10, 1974, as amended, known as the "Municipal License Tax Act."

(41) "Games of Chance Act"- Means Act No. 221 of May 15, 1948, as amended, known as the "Games of Chance Act."

(42) "Uniform Administrative Procedure Act"- Means Act No. 38-2017, known as the "Government of Puelio Rico Uniform Administrative Procedure Act."

(43) Prior Incentives Laws- Means Act No. 135 of May 9, 1945, as amended; Act No. 72 of June 21, 1962, as amended; Act No. 126 of June 28, 1966, as amended; Act No. 54 of June 21, 1971, as amended; Act No. 70 of June 23, 1978, as amended; Act No. 47 of June 26, 1987, as amended; Act No. 46 of August 5, 1989, as amended; Act No. 78-1993, as amended; Act No. 225-1995, as amended;

AAFAF_CONF_0007681

Act No. 165-1996, as amended; Act No. 135-1998, as amended; Act No. 213-2000; Act No.244-2003, as amended; Act No. 325-2004, as amended; Act No. 73-2008, as amended; Act No. 26-2008, as amended; Act No. 74-2010, as amended; Act No. 83-2010, as amended; Act No. 118-2010, as amended; Act No. 27-2011, as amended; Act No. 113-2011, as amended; Act No. 20-2012, as amended; Act No. 22-2012, as amended; Act No. 1-2012, as amended; Act No. 95-2013, as amended; Act No. 135-2014, as amended; Section 7 of Act No. 171-2014, as amended; Act No. 185-2014, as amended; Act No. 187-2015, as amended; and Act No. 14-2017, as amended.

(44)   "Banking Center Act"- Means Act No. 52 of August 11, 1989, as amended, better known as the "International Banking Center Regulatory Act."

(45)   Eligible Business- Means those individuals or business activities that qualify for a Decree under this Code, including the following:

(i)   Individual Resident Investors who relocate to Puerto Rico and Hard-to-Recruit Professionals who qualify for tax benefits as provided in Chapter 2 of Subtitle B of this Code.

(ii)   Medical Professionals as provided in Chapter 2 of Subtitle B of this Code.

(iii)   Eligible Scientific Research, as provided in Chapter 2 of Subtitle B of this Code.

(iv)   Export of Services, Export Trade or Promoter Services as provided in Chapter 3 of Subtitle B of this Code.

(v)   International Financial Institutions, International Insurers, Segregated Asset Plans, and International Insurer Holding Companies as provided in Chapter 4 of Subtitle B of this Code.

(vi)   Private Equity Funds, as provided in Chapter 4 of Subtitle B of this Code.

AAFAF_CONF_0007682

(vii)  Visitor Economy Activities, including tourist activities such as Hotels, Condo Hotels, and Medical Tourism and Nautical Tourism activities, as provided in Chapter 5 of Subtitle B of this Code.

(viii)  Manufacturing Activities, as provided in Chapter 6 of Subtitle B of this Code.

(ix)  Other businesses designated as Eligible Businesses, as provided in Chapter 6 of Subtitle B of this Code, namely:

A. Basic Services to Business Clusters;

B. Property Devoted to Industrial Development;

C. Ce1iain recycling activities; and

D. Certain science, technology, and research activities.

(x)  Activities relating to infrastructure and green energy, as provided in Chapter 7 of Subtitle B of this Code.

(xi)  Agricultural and Agro-industrial Activities, as provided in Chapter 8 of Subtitle B of this Code.

(xii)  Creative Industiies Activities, including Film Projects as provided in Chapter 9 of Subtitle B of this Code.

(xviii)  Entrepreneurial Activities, as provided in Chapter 1O of Subtitle B of this Code.

(xiv) Air and maritime transportation service activities, as provided in Chapter 11 of Subtitle B of this Code.

(46)  Exempt Business- Means any Eligible Business that has been granted a Decree.

(47)  Successor Business- Means any business that obtains a Decree under this Code, whose activity is substantially similar to that specified in the Decree of a Predecessor Business.

AAFAF_CONF_0007683

(48)   New SMB- Means an Exempt Business that complies with the definition of the term SMBs of this Code that has not begun operations as of the effective date of this Code. The Incentives Regulations may provide additional factors to be analyzed in order to determine if it is a New SMB.

(49)   OCIF- Means the Office of the Commissioner of Financial Institutions, created by Act No. 4 of October 11, 1985, as amended, known as the "Financial Institutions Commissioner's Office Act."

(50)   Commonwealth Energy Public Policy Office- Means the Commonwealth Energy Public Policy Office established by Act No. 57-2014 or any successor office thereof.

(51)   Incentives Office- Means the Incentives Office for Businesses in Puerto Rico within the DEDC.

(52)   Tourism Office- Means the Tourism Office within the DEDC in accordance with Reorganization Plan No. 4-1994, as amended; provided, that during the transition period established for completing the merger of the Puerto Rico Tourism Company with the DEDC under Act No. 141-2018, known as the "Act for the Implementation of the Department of Economic Development and Commerce Reorganization Plan of 2018," the term Tourism Office shall refer to the Puerto Rico Tourism Company.

(53)   Opportunity Zones- Zones designated by the U.S. Department of the Treasury to participate in a national investment stimulus program.

(54)   Annual Accounting Period- Means the annual period on the basis of which the taxpayer regularly determines his net income in keeping his books.

(55)   Person- Means any natural or juridical person, pass-through entity, estate, or trust.

(56)   Domestic Person- Means a Resident Individual of Puerto Rico, a juridical Entity incorporated or organized under the laws of Puerto Rico, a person

AAFAF_CONF_0007684

whose principal place of business is located in Puerto Rico, or a foreign corporation that has an office or other fixed location that, pursuant to the provisions of the Puerto Rico Internal Revenue Code and the regulations thereunder is considered as doing business in Puerto Rico.

(57)  Foreign Person- Any person other than a Domestic Person.

(58)  Portal- Means the Portal for the Granting of Incentives to Businesses in Puerto Rico.

(59)  Commercial Scale Production- Production for sale in the market in the normal course of business, in amounts and at prices that justify the operation of an Eligible Business as a going concern.

(60)  Intangible Property- Means patents, inventions, formulas, processes, designs, patterns, know-hows, copyrights, trade secrets, literary, musical, or artistic compositions, trademarks, trade brands, trade names, brand names, franchises, licenses, contracts, methods, software, systems, procedures, goodwill, campaigns, surveys, studies, trials, projections, estimates, client lists, technical data, and any other similar property.

(61)  Small- and Medium-sized Businesses (SMBs)- Exempt Businesses, as defined in this Code, that generate an average volume of business of three million dollars ($3,000,000) or less during the three (3) taxable years preceding the current Taxable Year. For such purposes and, in accordance with Section 1061.15 of the Internal Revenue Code, the volume of business shall be the total generated from the sale of goods, products, and services without considering the cost of the goods or products sold by the Eligible Business, and include the volume of business of the controlled group, as such term is defined in Section 1010.04 of the Internal Revenue Code, or group of related entities, as such term is defined in Section 1010.05 of the Internal Revenue Code. For the purposes of this Code, the term SMBs does not include Resident Individual Investors, Hard-to-

AAFAF_CONF_0007685

Recruit Professionals, nor the terms Professional Medical Services and Eligible Scientific Research.

(62)  Strategic Projects- Means those projects provided for in the Incentives Regulations in accordance with Section 2014.01.

(63)  Reimbursements and Subsidies- Cash grants for economic stimulus activities such as job creation, investment in infrastructure, and payment of utilities.

(64)  Return on Investment or ROI- Means the financial metric that measures and compares the benefit or gain from an incentive in relation to the investment made by the Government of Puerto Rico. It also measures the profitability of each government incentive and its capacity to recover and exceed its cost to the treasury.

(65)  Incentives Regulations- Means the document or documents approved by the Secretary of the DEDC for the implementation and administration of this Code. In said Regulation or Regulations, the Secretary of the DEDC shall adopt guidelines, in consultation with the pertinent agencies, when the areas or matters to be regulated require the expertise of any agency or office with specialized knowledge in the economic sector to be affected. With regard to fiscal and tax matters, rules shall be adopted in conjunction with the Secretary of the Treasury. Provided, further, that the Secretary of the DEDC and the Secretary of Agriculture may adopt joint regulations for agricultural and livestock activities contained in this Code, insofar as the processes and systems integrated between the two agencies are maintained and it is ensured that farmers have the suppmi personnel and tools in each region of the Department of Agriculture.

(66)  Secretary of Agriculture- Means the Secretary of the Department of Agriculture pursuant to Reorganization Plan No. 4-2010, as amended.

AAFAF_CONF_0007686

HEIN EXHIBIT 84

(67)    Secretary of the DEDC- Means the Secretary of the Department of Economic Development and Commerce of the Government of Puerto Rico with the powers confe1Ted to him by Reorganization Plan No. 4 of June 22, 1994, as amended.

(68)    Secretary of the Treasury- Means the Secretary of the Department of the Treasury of the Government of Puerto Rico.

(69)    Secretary of Health- Means the Secretary of the Department of Health of the Government of Puerto Rico.

(70)    USA Patriot Act- Means the "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism," as amended, 115 Stat. 272 (2001).

(71)    Securities- Means any note, bond, debenture, evidence of indebtedness, options, futures contracts, forwards, stocks, and any other like instrument or with similar characteristics including derivative instruments as provided through circular letter, administrative determination, regulations, or other joint statement of the Secretary of the Treasury and the Secretary of the DEDC.

Section 1020.02- Definitions Applicable to Activities of Individuals

(a)    For purposes of activities related to Chapter 2 of Subtitle B of this Code pertaining to activities ca1Tied out by individuals, the following terms, phrases, and words shall have the meaning and scope stated below:

(1)    Special Agreement for the Creation of Businesses.- Means the Agreement entered into by and between a Young Entrepreneur (as defined in this subsection) and the Secretary of the DEDC. The Young Entrepreneur shall make a commitment to develop his business and create jobs as well as comply with other conditions, as the case may be, in exchange for the applicable benefits provided for in this Code. The applicable benefits shall be listed specifically in the Agreement. The Agreement shall establish the effective term thereof and shall expire when the

AAFAF_CONF_0007687

benefits granted thereunder expire, in accordance with the provisions of this Code and the obligations stipulated in the Agreement.

(2)   My Future.- Means the students' savings plan program established in Section 2026.01 of this Code.

(3)   Eligible Dividends of Qualified Physicians.- Means the dividends derived from the Eligible Income of Qualified Physicians reported by a Medical Service Business in favor of a Qualified Physician, computed in accordance with the Internal Revenue Code.

(4)   Resident Individual Investor.- Means an individual eligible to receive the benefits provided in Sections 2022.01 and 2022.02 of this Code and who is a Resident Individual of Puerto Rico, but has not been a Resident Individual of Puerto Rico for the last ten (10) taxable years prior to the effective date of this Code, and becomes a Resident Individual of Puerto Rico not later than the Taxable Year ending December 31, 2035. Students studying abroad who resided in Puerto Rico prior to leaving to pursue an education, the personnel working outside of Puerto Rico temporarily for the Government of Puerto Rico, its agencies and instrumentalities, and individuals similarly situated, shall not be considered Resident Individual Investors, given that, in such cases, their domicile continues to be Puerto Rico for the period during which they reside outside of our jurisdiction.

(5)   Eligible Income of Qualified Physicians.- Means the net income derived from the rendering of Professional Medical Services offered in Puerto Rico, computed in accordance with the Internal Revenue Code.

(6)   Higher Education Institution.- Means a public or private educational institution accredited pursuant to Act No. 212-2018, as amended, known as the "Educational Institution Registration and Licensing Act," or by the Middle States Commission on Higher Education of the Middle States Association of Colleges and Schools.

AAFAF_CONF_0007688

(7)     Eligible Scientific Research.- Means any research conducted by the University of Puerto Rico or any Higher Education Institution that receives a grant upon peer-review of a grant application in an open competition to obtain such grant, in order to carry out a research project or other similar project including grants for training, capacity development, and workforce development from any of the organizations that compose the National Institutes of Health, or under similar programs or mechanisms sponsored by any other federal agency that promotes competitive scientific research, including, but not limited to, the National Science Foundation, the Energy Department, the Department of Defense, NASA, NOAA, the Environmental Protection Agency, among others. It shall also include grants from competitive research applications from private foundations, other nonprofit organizations, or private businesses providing competitive research and development grants. The competitive research grants limited to underserved minorities, according to the definition of minorities at the federal level, shall also be deemed eligible. Research subawards where the principal investigator is a Domestic Person shall also be deemed eligible.

(8)     Eligible Investigator or Scientist.- Means a Domestic Person, during the Taxable Year, hired by the University of Puerto Rico or any other Higher Education Institution authorized to operate in Puerto Rico, who is engaged, among other teaching duties, in conducting Eligible Scientific Research, and has submitted a scientific research application to an organization such as those described in the definition of Eligible Scientific Research, and who, upon the approval of said research application, causes the educational institution to be awarded a research grant, pursuant to the definition of Eligible Scientific Research, which amount covers research costs, including, among others, the compensation of the Investigator and key personnel, the purchase of equipment and supplies, publications, and other related expenses, as applicable. Except in the case of Multiple Principal Investigators

AAFAF_CONF_0007689

or Multi PI's, only one individual shall be eligible for this deduction per grant approved, pursuant to the definition of Eligible Scientific Research, including research subawards.

(9)     Youth Entrepreneur.- Means every Resident Individual of Puerto Rico between the ages of sixteen (16) and thirty-five (35), who wishes to create and operate a new long-term business in Pue1io Rico, for an indefinite period, and who has obtained his high school diploma or a certification equivalent to a high school diploma from the Department of Education of Puerto Rico, or who is still enrolled in school and furnishes proof of said enrollment leading to a high school diploma or ce1iificate, in accordance with the criteria adopted by regulations.

(10)     Qualified Physician.- Means an individual admitted to the practice of medicine, whether a general practitioner or other medical specialty, or to podiatric medicine, or who is a dental surgeon or a dental practitioner, and who practices his profession on a Full-Time basis. This definition includes physicians who are in an accredited residency program.

(11)     Medical Service Business.- Means any professional service corporation or limited liability company that renders Professional Medical Services in Puerto Rico, whether a domestic Entity or a foreign Entity, and that is authorized to do business in Puerto Rico.

(12)     Other Assets.- Means commodities, coins, and any digital assets based on blockchain technology.

(13)     Hard-to-Recruit Professional.- Means an individual eligible to obtain the benefits of Section 2022.03 of this Code and who is a Resident Individual of Puerto Rico with a fulltime job, whose talent consists of specialized knowledge which is indispensable for the operations of an Exempt Business under this Code or Prior Incentives Laws. The term "hard-to-recruit" shall be defined in the Incentives Regulations.

AAFAF_CONF_0007690

(14)   Professional Medical Services.- Means the diagnosis and treatment services rendered by Qualified Physicians.

(15)   Full-Time.- Means a Qualified Physician devoting at least one hundred (100) hours a month to rendering Professional Medical Services in a public or private hospital, in a federal or state agency, in a private office devoted to offering Professional Medical Services, or in an accredited medical school.

Section 1020.03.- Definitions Applicable to Goods and Services Export Activities

(a)   For purposes of this Chapter 3 of Subtitle B of this Code related to Goods and Services Export Activities, the following terms, phrases, and words shall have the meaning and scope stated below:

(1)   Export Trade.- Means such activities described in Section 2031.02(a), provided that they meet the requirements of Section 2031.02(b), and excludes any activity that has a Nexus with Puerto Rico, as provided in Section **2031.02**(c).

(2)   Export Service Income.- Means the net income derived from Export Trade by an Exempt Business, computed in accordance with the Puerto Rico Internal Revenue Code.

(3)   Income from Export of Services.- Means the net income derived from Export Services, or from a Promoter Service by an Exempt Business, computed pursuant to the Pue1io Rico Internal Revenue Code. In the case of Promoter Services, it shall be deemed to be Export of Services Income only the net income derived from Promoter Services rendered during the twelve (12)-month period ending the day before any of the following occurs, whichever is earlier, shall be deemed to be Export Services Income:

(i)   The commencement of the construction of facilities in Puerto Rico to be used by a New Business in Puerto Rico;

AAFAF_CONF_0007691

HEIN EXHIBIT 84

(ii)    The commencement of the activities of such New Business in Puerto Rico; or

(iii)    The acquisition or execution of an agreement to acquire or lease facilities in Puerto Rico by such New Business in Puerto Rico.

(4)    New Business in Puerto Rico.- Means an Entity that complies with the following parameters:

(i)    Has never been engaged in trade or business in Puerto Rico;

(ii)    The trade or business to be carried out in Puerto Rico was not acquired from a business that carried out a trade, business, or activity for profit in Puerto Rico;

(iii)    It is not an Affiliate of an Entity that carries out or has carried out a trade, business, or activity for profit in Puerto Rico;

(iv)    For a period of two (2) years, counting from the commencement of operations that render a Promoter eligible for a Decree, not more than five percent (5%) of its Shares have been owned directly or indirectly by one (1) or more Domestic Persons;

(v)    Begins operations in Puerto Rico as a result of Promoter services according to the criteria to be prescribed in the Incentives Regulations, a circular letter, or any other communication;

(vi)    Shall not engage in the retail sale of items or products; and

(vii)    Carries out an activity, trade, or business that is an Exempt Business.

(5)    Nexus with Puerto Rico.- Export Services or Export Trade, as the case may be, shall be deemed to have a Nexus with Puerto Rico when they are related in any way to Puerto Rico, including services described in Section 2031.01 (c), and the activities described in Section 2031.02(c).

AAFAF_CONF_0007692

HEIN EXHIBIT 84

(6) Promoter.- Shall mean a person engaged in rendering Promoter Services.

(7) Promoter Services.- Promoter services are those eligible services related to establishing a New Business in Puerto Rico and which are designated by the Secretary of the DEDC as services that may be treated as services for export regardless of whether these services have a Nexus with Puerto Rico.

(8) Export Services.- Means the services described in Section 2031.0l(a), provided that the requirements of Section 2031.0l(b) are met, and excludes any service that has a Nexus with Puerto Rico, pursuant to the provisions of Section 2031.01 (c).

Section 1020.04.- Definitions Applicable to Finance, Investment, and Insurance Activities.

(a) For purposes of Chapter 4 of Subtitle B of this Code related to Finance, Investment, and Insurance activities, the following terms, words, and phrases shall have the meaning and the scope stated below:

( 1) Assets.- Shall include:

(i) Cash and deposits;

(ii) Investments, such as credit instruments or preferential debts, capital securities and other types, tangible personal property subject to lease, mortgage loans and real property, securities loans, repurchase transactions, reverse repurchase transactions, dollar roll transactions and hedging strategy;

(iii) Declared and unpaid dividends;

(iv) Interest due or accrued; and

(v) Accounts and reinsurance receivables on paid losses and related expenses.

(vi) Any other asset allowed by the Secretary of the DEDC, in consultation with the Secretary of the Treasury, in the Incentives Regulations.

AAFAF_CONF_0007693

HEIN EXHIBIT 84

(2)     International Insurer.- Means an International Insurer as defined in Section 61.020 of the Insurance Code.

(3)     RIA or Registered Investment Advisor.-  Means a business that:

(i)     Under a contract with another business (which could be a Fund) regularly provides consulting services regarding the convenience of investing in, buying or selling securities or other property, or is authorized to determine which securities or other assets shall be purchased or sold by said business, or

(ii)     Any other person that pursuant to a contract with the person described in subparagraph (i) regularly performs practically all the tasks described in such subparagraph.

A.     The person shall be registered (or be exempt from registration) under the U.S. Investment Advisers Act of 1940, as amended (15 U.S.C. § 80b-1 *et seq.),* Act No. 60 of June 18, 1963, as amended, and known as the "Uniform Securities Act of Puerto Rico," or any other similar law that substitutes it.

B.     The person shall be registered with the Securities and Exchange Commission (SEC) or with OCIF, as applicable.

(4)     Bank Secrecy Act or BSA- Means the Currency and Foreign Transactions Reporting Act, codified under 31 USC§§ 5311-5330, and 12 USC§§ 1818(s), 1829(b), and 1951-1959, or any law that substitutes or amends it.

(5)     Control or Controlled.- Means direct or indirect participation, as owner of more than fifty percent (50%) of the voting power with respect to the person controlled.

(6)     International Insurer Holding Company.- Shall have the same meaning provided in Section 61.040 of the Insurance Code.

(7)     PRCUSIC.- Means the Puerto Rico Credit Unions Supervision and Insurance Corporation created under the provisions of Act No. 114-2001, as amended, or any other subsequent similar law that substitutes it.

AAFAF_CONF_0007694

HEIN EXHIBIT 84

(8)     International Banking Entity or IBE.- Means an International Banking Entity pursuant to the provisions of the "International Banking Center Regulatory Act." A person, other than an individual, which has been issued a license to operate as an International Banking Entity under Section 7 of Act No. 52 of August 11, 1989, as amended, known as the "International Banking Center Regulatory Act," and which has not been converted into an International Financial Institution (IFI).

(9)     International Financial Institution or IFI - Means any person, other than an individual, incorporated or organized under the laws of Puerto Rico, the United States, or a foreign country, or a unit thereof, which has been issued a license under the "International Financial Center Regulatory Act."

(10)    Private Equity Firm or PE-firm.- Means a firm which invests in private equity through multiple fund investment strategies such as: Growth Capital, Leveraged Buyout Mezzanine, Distressed, and Venture Capital. This firm usually acts as a General or Limited Partner.

(11)    United States.- Means the United States of America, including any of the states of the nation, the District of Columbia, and any possession, territory, political subdivision and agency thereof, except Puerto Rico.

(12)    FDIC.- Means the Federal Deposit Insurance Corporation.

(13)    Private Equity Fund.- Means partnership or limited liability company organized under the laws of the Government of Puerto Rico, of any state of the United States, or any foreign jurisdiction that is engaged in investments in promissory notes, bonds, notes (including secured and unsecured loans and including the collateral), Shares or any other securities of similar nature issued by entities that, at the time of acquisition, are not listed or publicly traded on the stock exchange in the United States or abroad, shall qualify as a Fund under the provisions

AAFAF_CONF_0007695

HEIN EXHIBIT 84

of Chapter 4 of Subtitle B of this Code, during each year Fiscal Year that it meets the following requirements:

(i)    Office located in Puerto Rico, whether owned, belonging to its general partner or an RIA;

(ii)    a minimum of eighty percent (80%) of the paid-in-capital contributed to the Fund by its Accredited Investors (excluding the capital that the Fund maintains in bank accounts and other cash equivalent investments) shall be invested in promissory notes, bonds, notes (including secured and unsecured loans and including the collateral), Shares or any other securities of similar nature that at the time of acquisition are not listed or publicly traded on the stock exchange in the United States or abroad;

(iii)    the capital surplus that has not been invested in accordance with subparagraph (ii) of this paragraph shall not exceed twenty percent (20%) and shall be maintained in any of the following investments:

(A)    direct obligations of, or obligations guaranteed as to principle and interest by the United States or the Gove111ment of Puerto Rico, which mature within a fifteen (15)-month period from the date of investment;

(B)    reseller agreements with institutions insured by the FDIC, SIPC, PRCUSIC, IBE, or IFI with a maturity of ninety (90) days or less. The securities underlying the reseller agreements must be direct obligations of, or obligations guaranteed as to principal and interest by the Government of the United States or the Government of Puerto Rico and shall be investment grade. These securities must be maintained in a custodial account at an institution insured by the FDIC or SIPC;

(C)    certificates of deposit with a maturity date of one (1) year or less, issued by institutions insured by the FDIC or the PRCUSIC;

AAFAF_CONF_0007696

(D) a deposit account in an institution insured by the FDIC or the PRCUSIC, subject to a withdrawal restriction of one (1) year or less;

(E) a checking account in an institution insured by the FDIC or the PRCUSIC;

(F) a reasonable petty cash fund; or

(G) investment certificates issued by the IBE or IFI;

(14) Puerto Rico Private Equity Fund.- Means a Private Equity Fund that complies with the provisions of subsection (b) of Section 2044.03.

(15) Investment.- In connection with Chapter 4 of Subtitle B, means the property conveyed to the Fund in exchange for a prope1iy interest in said Fund.

(16) Accredited Investors.- Shall mean:

(i) A bank, an insurance company, a registered investment company, a business development entity, a small business investment company, the Economic Development Bank, Inte1national Insurer, Segregated Asset Plan, International Insurer Holding Company, as these terms are defined in the Insurance Code, the IBE, or IFI. An IBE or an IFI shall be deemed to be Accredited Investors, the provisions of this Code applicable to the International Financing Centers notwithstanding;

(ii) a Government of Puerto Rico employee benefits plan or any employee benefits plan as defined in the "Employee Retirement Income Security Act of 1974" (ERISA), only if a bank, an insurance company, or a Registered Investment Advisor makes the investment decisions, or if the plan has total Assets in excess of five million dollars ($5,000,000);

(iii) a charitable organization, corporation, or association with Assets in excess five million dollars ($5,000,000);

(iv) a director, an executive officer, or a general partner of the company selling securities;

AAFAF_CONF_0007697

(v)    a natural person with an individual or joint net worth with his spouse in excess of one million dollars ($1,000,000) at the time of purchase, not including the value of said person's primary residence;

(vi)   a natural person with income exceeding two hundred thousand dollars ($200,000) in each of two (2) most recent years prior to the purchase, or joint income with a spouse exceeding three hundred thousand dollars ($300,000) for those years and a reasonable expectation of the same income level in the current year;

(vii)   a trust with Assets exceeding five miHion dollars ($5,000,000) not formed only to acquire the securities offered, and whose purchases are made by a sophisticated person; or

(viii)  an enterprise in which all the equity owners are Accredited Investors;

(17)   Accredited Resident Investor.- Shall mean: an Accredited Investor that is: (i) a Resident Individual of Puerto Rico; (ii) a citizen of the United States; (iii) an Entity organized outside of Puerto Rico, if all its shareholders (or equivalent thereof), whether direct or indirect, are residents of Puerto Rico; and (iv) an Entity organized under the laws of the Government of Puerto Rico. In the case of a partnership subject to the provisions of Chapter 7 of the Puerto Rico Internal Revenue Code, the partners of the partnership may be deemed to be Accredited Resident Investors.

(18)   "Investment Companies Act of Puerto Rico."-  Means Act No. 6 of October 19, 1954, as amended known as the "Investment Companies Act of Puerto Rico," or any subsequent similar law that substitutes it.

(19)   "Puerto Rico Investment Companies Act of 2013."- Means Act No. 93-2013, as amended, known as the "Puerto Rico Investment Companies Act of 2013," or any subsequent similar law that substitutes it.

AAFAF_CONF_0007698

HEIN EXHIBIT 84

(20) "Financial Institutions Commissioner's Office Act" (FICO).- Means Act No. 4 of October 11, 1985, as amended, known as the "Financial Institutions Commissioner's Office Act."

(21) SBA.- Means the Small Business Administration, the federal agency created by virtue of the Small Business Investment Act of 1958.

(22) SEC.- Means the Securities and Exchange Commission created by virtue of the Securities Exchange Act of 1934.

(24)[sic] SIPC.- Means the Securities Investor Protection Corporation.

(25) General Partners.- Means the group constituting the Fund that is responsible for the daily operations of the Fund and usually conducts the investment activity using a portion of its capital. Managing or general partners have a fiduciary obligation to the Fund's Investors.

(26) Unit.- In connection with Chapter 4 of Subtitle B of this Code, means and includes any subdivision or branch of any person other than an individual, whose businesses and operations are segregated from the other businesses and operations thereof, pursuant to Chapter 4 of Subtitle B of this Code and the "International Financial Center Regulatory Act."

Section 1020.05.- Definitions Applicable to Visitor Economy Activities.

(a) For the purposes of Chapter 5 of Subtitle B and Chapter 1 of Subtitle C of this Code relating to Visitor Economy activities, the following terms, words, and phrases shall have the meaning and the scope stated below:

(1) Nautical Tourism Activities.- Means the group of services to be rendered in contact with water to nautical tourists, which include, but are not limited to:

(i) The lease or charter of Nautical Tourism Vessels to tourists for leisure, recreation, or for educational purposes, including tours;

AAFAF_CONF_0007699

HEIN EXHIBIT 84

(ii) the lease of small vessels, jet skis, kayaks, sailboats, or other similar motor or non-motor vessel to tourists, as prescribed in the Incentives Regulations, administrative order, circular letter, or any other general communication; and

(iii) the Operation of an Integrated Vessel Leasing Program.

(2) Agri-lodgings.- Means any lodging facility established in an active agricultural and livestock business by a Bona fide Farmer with the purpose of providing lodging to transient visitors, in order to enjoy contemplating nature or participating in activities related to the agricultural and livestock activity or Agriturism.

(3) Agritourism.- Means the group of activities organized specifically by a Bona fide Farmer to complement his main activity, to which tourists are invited; and these constitute other services for pay.

(4) Bed and Breakfast (B&B).- Means the program that offers lodging and breakfast created by the Tourism Office for special residential tourist accommodations that meet the requirements prescribed in the Incentives Regulations.

(5) Guest House.- Means any building, a part thereof, or group of buildings approved by the Tourism Office, to be operated for tourism purposes; it shall consist of not less than seven (7) rooms for transient guests, and provide administrative staff twenty-four (24) hours a day, a private bathroom per room, and housekeeping service; and it may provide appropriate living quarters for its owners or administrators. Guest houses shall comply with the provisions of the Incentives Regulations.

(6) Casino or Gambling Room.- Means a gambling room operated under a franchise issued pursuant to the provisions of the "Games of Chance Act."

AAFAF_CONF_0007700

(7)     Condo Hotel.- Means the group of units of a building or group of buildings converted to the horizontal property regime or to the regime pursuant to the Pue1io Rico Condo Hotels Act, and which meet the requirements of a Hotel; in which not less than fifteen (15) rooms or apartments are devoted to lodging transient persons at all times under an integrated leasing program. The term "Condo Hotel" also includes a group of residential units, in fee simple, within a tourist destination or resort, which also meets all the requirements stated in this paragraph.

(8)     Total Project Cost.- Means all those expenses and disbursements incurred by the Exempt Business holding a Decree under Chapter 5 of Subtitle B of this Code, including:

(i)     All expenses and disbursements incurred by the Eligible Business, on account of:

(A)     Salaries paid to its employees, land acquisition, construction, habilitation, and marketing until the opening;

(B)     pre-opening and opening ceremony expenses; and

(C)     payroll and marketing expenses during the first twelve (12) months of operation. In the case of an Exempt Business that consists of a Timeshare or Vacation Club ownership plan, the Secretary of the DEDC may authorize including promotion, marketing, and sales expenses and disbursements related to the sale of Timeshare or Vacation Club ownership up to the first sixty (60) months after opening all the facilities of said Exempt Business;

(ii)    the interest and finance charges (e.g., commitment fees) obtained that have been capitalized during the construction period and during the first twelve (12) months of operation;

(iii)   hard and soft construction costs incurred in the substantial extension or renovation of an Exempt Business;

AAFAF_CONF_0007701

HEIN EXHIBIT 84

(iv)    expenses related to the purchase of furniture, fixtures, and equipment, as well as operating supplies and equipment during the first twelve (12) months of operation;

(v)    expenses associated with debt issuance to obtain capital for the Exempt Business;

(vi)    any reserve or contingency account required by the "Puerto Rico Tourism Development Fund" or any creditor or Financial Institution;

(vii)    expenses related to the construction and development of infrastructure and utilities necessary for the construction and development of the Exempt Businesses;

(viii)    costs of acquisition or the fair market value, as of the date of the contribution, of facilities used to carry out a Tourist Activity during a thirty-six (36)-month period prior to the date of an acquisition or contribution that meets the renovation or extension requirement exceeding one hundred percent (100%) of the purchase price established for New Tourism Businesses; and

(ix)    any other expense, disbursement, or investment that the Secretary of the DEDC, in consultation with the Secretary of the Treasury, prescribes by regulation.

(x)    Provided, however, that the Total Cost of the Tourism Project shall exclude, as a general rule and except when at the discretion of the Secretary of the DEDC, in consultation with the Secretary of the Treasury, the best interests of Puerto Rico require otherwise: (i) the money that has been invested before the effective date of the Act, and (ii) the money that has been invested before holding the Pre-application conference. Under no circumstance shall the estimate cost of the time invested by the Developer or any stockholder of the Exempt Business be considered for the computation of that which constitutes the Total Cost of the Tourism Project.

AAFAF_CONF_0007702

(9)    Tourist Development Income Distribution.- Means any distribution of dividends or profits of an Exempt Business or a distribution in liquidation of an Exempt Business and which consists of Tourist Development Income.

(10)   Eco-techniques.- Means ecologically responsible design and construction techniques in order to significantly minimize direct or indirect environmental impact and reduce costs, such as, but not limited to, the use of clean technology, solar energy, waste treatment and recycling, production of compost from organic waste, management of waste waters, and alternate water supply for domestic and commercial uses.

(11)   Nautical Tourism Vessels.- Means motorboats or sailboats with capacity for six (6) or more passengers, operated by tour companies or available for rental, to be used in Nautical Tourism Activities, including Tourist Mega Yachts, when the Secretary of the DEDC determines that such operation is convenient for the development of tourism in Puerto Rico.

(12)   Primary Issue or Offering.- Means the first issue of a security, stock, or share for public sale. Investors that acquire Stock in a corporation or shares in a partnership or limited liability company from an underwriter or a public or public-private corporation of the Government of Puerto Rico, who acquired such Stock or shares at its primary offering to complete the capital investment balance required to close the financing of a Tourism Project, shall be also deemed as if they had acquired the same in their Primary Issue for purposes of the Tax Credits provided in Section 3010.01 of this Code.

(13)   Hotel.- Means any building, part thereof, or group of buildings endorsed by the Tourism Office, to be appropriately devoted in good faith to providing lodging for pay mainly to transient guests, and shall have not less than

AAFAF_CONF_0007703

fifteen (15) rooms to lodge guests. Its facilities shall be operated under sanitation and efficiency standards and conditions that are acceptable to the Tourism Office.

(14)   Tourist Development Income.- Means the income of an Exempt Business from the operation of a Tourist Activity, and the income from reinvestment in Puerto Rico of the profits of an Exempt Business from a Tourist Activity, provided that such reinvestment is made in a Tourist Activity. If the Exempt Business is a Hotel, Condo Hotel, Parador, or Guest House, the income subject to the flat tax rate established in Section 2052.01 of this Code shall include income from:

(i)   The room rental and other service charges related to the Tourist Activity.

(ii)   The sale of food and beverages.

(iii)   The operation of retail stores within the physical facilities, but only if such retail stores are owned and operated by the Exempt Business.

(iv)   The operation of golf courses and other sports and recreational facilities that are part of the Tourist Activity of the Exempt Business.

(v)   The leasing of commercial space within the Hotel, Condo Hotel, Parador, or Guest House for the operation of businesses which provide useful services to transient guests.

(vi)   If the Exempt Business is a Tourist Marina, only income generated by Nautical Tourism Activities shall be deemed to be Tourist Development Income; therefore, the income generated by the services provided to persons who keep their vessel at the Marina permanently for their private use shall not be deemed to be Tourist Development Income.

(vii)   The net income earned by a Decree Holder on account of the operation of a Casino.

(15)   Eligible Tourist Investment.- Shall mean:

AAFAF_CONF_0007704

HEIN EXHIBIT 84

(i)     The amount in cash that has been contributed to an Exempt Business under Chapter 5 of Subtitle B of this Code or Eligible Business that subsequently receives a Decree under Chapter 5 of Subtitle B of this Code, to be used in a Tourist Activity in exchange for:

(A)     Stock in a corporation, if the Exempt Business is a corporation, or

(B)     the shares or increase in shares in a limited liability company, partnership, or joint venture, or

(C)     a unit in a Condo Hotel, provided such unit is devoted to the integrated leasing program of the Condo Hotel for a period of ten (10) years and for nine (9) months of each calendar year and the Investor owns the unit in fee simple.

(ii)     The value of land and existing structures contributed to an Exempt Business or Eligible Business that subsequently receives a Decree under Chapter 5 of Subtitle B of this Code, to be used in a Tourist Activity in exchange for:

(A)     Stock in the corporation, if the Exempt Business is a corporation, or

(B)     shares or increase in shares in a limited liability company, partnership, or joint venture, if the Exempt Business is a limited liability company, partnership, or joint venture. The contributed value of the land or existing structure shall be the fair market value, minus the balance of the mortgages encumbering the land, or the existing structure, at the time of the contribution. The fair market value shall be determined on the basis of an appraisal of such land or existing structure conducted by one (1) or more professional appraisers duly licensed in Puerto Rico. The Secretary of the DEDC shall approve the determined net value

AAFAF_CONF_0007705

of the land or existing structure before the same 1s contributed to the Exempt Business.

   (iii) Contributions made in cash by a public corporation of the Gove1nment of Pue1io Rico or any of its subsidiaries in exchange for:

    (A) Stock or shares in an Exempt Business, or in an Eligible Business that later receives a Decree under this Chapter, held by such corporations or subsidiaries, or

    (B) the subordinate debt of an Exempt Business or Eligible Business that later receives a Decree under this Chapter, with such corporations or subsidiaries.

   (iv) Loans granted, financing commitments issued, or legally enforceable commitments to make capital investments, insofar as these have been made by the Hotel Development Corporation (HDC).

   (v) Loan secured by the Exempt Business itself, or Eligible Business that subsequently receives a Decree, or by its assets, or by any entity, parent company or affiliate of the Exempt Business, or Eligible Business that subsequently receives a Decree, or by its assets.

   (vi) Eligible tourist investments shall only be deemed to be investments in which all funds are used solely and exclusively for the acquisition of land, structures, construction, and habilitation of the facilities of a New Tourism Business or for the substantial extension or renovation of the facilities of an Existing Tourism Business, as defined in this Chapter. Any other investment whose funds are not directly and entirely used for the acquisition, construction, habilitation, or substantial extension or renovation of the facilities of an Eligible Business, shall be excluded from the definition of Eligible Tourist Investment of this Chapter. However, the use of funds for the acquisition or construction of, or improvements to a vessel devoted to Nautical Tourism or small vessels, jet skis, kayaks, sail boats, or

other similar motor or non-motor vessels, shall not be deemed to be a eligible investment. Furthermore, except when, in the discretion of the Secretary of the DEDC, the best interests of Puerto Rico require otherwise, eligible investments shall only be deemed to be those investments made after holding the pre-application conference with the designated officers of the Tourism Office.

(vii)   In the event that one of the contributions described in subparagraph (i) or (ii) of paragraph (15) is made, such contribution shall be deemed to be an Eligible Tourist Investment only if such investment is made during the Primary Issue of the Stocks or shares. However, as for Exempt Businesses, such contributions shall not require the issue of additional Stock or shares to Investors who at the time of the contribution are stockholders, partners, members, or other owners of the Exempt Business. In the case of Condo Hotels, an Eligible Tourist Investment shall be deemed to be the cash contribution for the acquisition of a Condo Hotel unit acquired from the Entity that developed or built the same.

(viii)   In those cases in which the Developer of a Tourism Project deems that the Eligible Business will need to incur cash expenses before the closing date of the financing for the Tourism Project and that the contributions to defray such expenses shall be recorded into the Exempt Business's books as a debt of the business until the financing for the Tourism Project is closed, such contributions shall be deemed to be Eligible Tourist Investments if at the time of closing the financing the principal of the debt is remitted, except for any interest accrued. Such remission shall be deemed to be a cash contribution in exchange for Stocks or shares in the Exempt Business; provided, that the Secretary of the DEDC agrees to have the aforesaid contributions deemed to be an Eligible Tourist Investment through a Decree for the Exempt Business or an Administrative Determination to such effects;

(ix)   The term Eligible Tourist Investment shall not include investment made with money disbursed on account of insurance policy contracts.

AAFAF_CONF_0007707

HEIN EXHIBIT 84

( 16)   Marina.- Means a facility that offers wet slips, including mooring buoys, for ten (10) or more vessels, restrooms with showers, and garbage containers. It also includes dry slips and dry docks.

(17)   Tourist Marina.- Means a Marina that provides areas, services, and docks for: (i) leasing or chartering Nautical Tourism Vessels; (ii) foreign-flagged vessels or vessels documented by the United States Coast Guard, owned and possessed by a Foreign Person; or (iii) any other Nautical Tourist Activity, as prescribed in the Incentives Regulations, administrative order, circular letter, or any other general communication.

(18)   Tourist Mega Yachts.- Means a vessel with a length overall of eighty (80) feet or more that qualifies as a Nautical Tourism Vessel under this Code, devoted to providing tourists with leisure, recreational or educational services for hire, in the inland and offshore waters of Puerto Rico. In order for a vessel to be deemed as eligible, it must: (1) be available in Puerto Rico for such activities during a period of not less than six (6) months every year; and (2) submit a quarterly report to the Tourism Office which shall contain a register or log of the use of the vessel that is proof of its use in the Tourist Activity. The due date for submitting the quarterly reports shall be the twentieth (20th) day of the month following the last month of each quarter.

(19)   Existing Tourism Business.- Means a business engaged in a Tourist Activity at the time of filing an application for incentives under Chapter 5 of Subtitle B of this Code or which otherwise does not qualify as a New Tourism Business, as defined in this Section, and which unde1iakes a substantial extension or renovation of the existing physical facilities to be used in a Tourist Activity.

(20)   New Tourism Business.- Means a business not operating at the time of filing an application for incentive under Chapter 5 of Subtitle B of this Code and which shall be engaged in a Tourist Activity using physical facilities that have

AAFAF_CONF_0007708

not been used in a Tourist Activity during a thirty-six (36)-month period prior to the date of filing the application. In the case of Eligible Businesses that shall use physical facilities not used in a Tourist Activity during a period of not less than eighteen (18) months prior to filing the application, the Secretary of the DEDC may release them from meeting the aforementioned thirty-six (36)-month period requirement when, in his discretion, the best interests of Puerto Rico so waiTant. Likewise, any existing business or structure, even if devoted to a Tourist Activity during the aforementioned thirty-six (36)-month period to complete the investment, shall be deemed to be a New Tourism Business if it is acquired or contributed to the Exempt Business in order for the structures that house said business undergo a renovation or extension of such a size that its cost shall exceed one hundred percent (100%) of the purchase price, or the fair market value on the date of the contribution, provided, that said amount is entirely invested within the thirty-six (36)-month period from the date of acquisition or contribution. The Secretary of the DEDC may extend the thirty-six (36)-month period when, in his discretion, the best interests of Puerto Rico so warrant, but never for an additional period that exceeds thirty-six (36) months. A Condo Hotel may only qualify as a New Tourism Business if the aforementioned units have not been previously used and are acquired from the Entity that developed or built the same, except that a unit that has been leased by the Entity that developed or built the same prior to its initial sale made by said Entity shall qualify as a New Tourism Business.

(21)   Puerto Rican *Paradores*.- Means any lodging covered under the program sponsored by the Puerto Rico Tourism Office for the establishment of a network of lodging units throughout the entire Government of Puerto Rico that complies with the provisions of the Incentives Regulations.

(22)   Small- and Medium-Sized Guest Houses.- Means such lodgings that are considered as a Tourist Activity and that become an Eligible Business after

AAFAF_CONF_0007709

obtaining a Decree and that belong to the Bed & Breakfast and Posadas Programs of the Tourism Office, those that comply with the definition of Guest Houses, as defined in this Code and those that comply with the definition of Hotel up to a maximum of twenty-five (25) rooms to accommodate guests.

(23) Timeshare and Vacation Club Ownership Plans.- Means any plans with a license issued by the DEDC pursuant to the provisions of Act No. 204-2016, better known as the "Puerto Rico Vacation Ownership Act."

(24) Integrated Vessel Leasing Program.- Means a business engaged in leasing to tourists any sail or motor vessel of a length overall of thirty-two (32) feet or more for leisure or recreation. The terms and conditions applicable to said program, which shall require vessels eligible therefor to be available in Puerto Rico for lease under the program for a period of not less than six (6) months every year, shall be prescribed in the Incentives Regulations, administrative order, circular letter, or any other general communication.

(25) Property devoted to a Tourist Activity.- Means:

(i) Real property, including land and improvements devoted to the conduct of a Tourist Activity; and

(ii) any group of machinery, furniture, fixtures, and equipment necessary or convenient for the conduct of a Tourist Activity by an Exempt Business, including infrastructure, equipment, or furniture used in Ecotechniques.

(26) Tourism Project.- Means the physical facilities that shall be devoted to a Tourist Activity of an Exempt Business.

(27) Pre-application Conference.- Means the meeting to be held between an applicant and the officers designated by the Tourism Office to present a proposed project, in which the applicant shall explain and present the merits of the proposed project, its contribution to the development of the tourism industry in Puerto Rico, a description of the tourist activity or activities he intends to carry out,

AAFAF_CONF_0007710

the estimate of costs expected to be incmTed to develop and build the project, the financing sources, and any other information that the Secretary of the DEDC may require, prior to applying for a Decree.

(28)   Medical Tourism.- Means any activity that promotes patient travel to Puerto Rico with the purpose of seeking medical care and treatment in medical facilities certified and accredited in Puerto Rico, as prescribed in the Incentives Regulations.

(29)   Nautical Tourism.- Means the group of services to be rendered in contact with water to nautical tourists, which include, but are not limited to:

(i)   leasing or chartering nautical tourism vessels to tourists for leisure or for educational or cultural purposes, including tours;

(ii)   leasing small vessels, water scooters, kayaks, sailboats, or other similar vessels, whether motorized or non-motorized, to guests in a Hotel, Condo Hotel, Timeshare or Vacation Club, or which is located in a tourist destination or resort, or in a Tourist Marina, or in areas near the aforesaid places, as prescribed in the Incentives Regulations, circular letter, or administrative determination; and

(iii)   operating an Integrated Vessel Leasing Program.

Section 1020.06.- Definitions Applicable to Manufacturing Activities.

(a)   For purposes of Chapter 6 of Subtitle B of this Code related to manufacturing activities, the following terms, words, and phrases shall have the meaning and the scope stated below:

(1)   Flexible Tax Exemption.- Means the election allowed to an Exempt Business under Section 2011.05 of this Code.

(2)   Industrial Development Income:

(i)   The net income derived from the operation of an eligible activity by an Exempt Business holding a Decree granted under this Chapter 6 of

AAFAF_CONF_0007711

HEIN EXHIBIT 84

Subtitle B of this Code, computed pursuant to the Puerto Rico Internal Revenue Code, adjusted by the special deductions provided by this Chapter 6 of Subtitle B of this Code, including the income from the operation of said Exempt Business when it elects the Flexible Tax Exemption.

(ii)    The Eligible Investment Income, or under similar provisions of similar previous or subsequent laws.

(iii)    The net income derived from the operation of an Exempt Business holding a Decree granted under this Chapter 6 of Subtitle B of this Code as a result of currency exchange that is attributable to the sale of products or the rendering of services to foreign countries, including the net income derived from hedging transactions.

(iv)    The income received as dividend or profit by a corporation or partnership that has Shares in the Exempt Business holding a Decree granted under this Code that conducts the distribution and which income is attributable to the Industrial Development Income derived by said Exempt Business.

(v)    The net income derived by the Exempt Business holding a Decree granted under Chapter 6 of Subtitle B of this Code from business interruption insurance policies, provided that there is no reduction in the employment level in the Exempt Business as a result of the act which caused the collection of said income.

(vi)    The net income derived from the sale of Intangible Property and any other right to receive income related to activities or Intangible Property owned by the Exempt Business holding a Decree under Chapter 6 of Subtitle B of this Code.

(3)    Eligible Investment Income.-

(i)    The interest and dividends on eligible funds invested by the Exempt Business holding a Decree granted under Chapter 6 of Subtitle B of this Code, in:

AAFAF_CONF_0007712

(A)   Loans for the financing of the construction, acquisition, or improvements of Housing Units in Puerto Rico;

(B)   loans for the construction, expansion, or acquisition of buildings or land, and for the acquisition of machinery and equipment, or for operating capital used in Exempt Businesses;

(C)   loans for the acquisition of Intangible Property to be used by Exempt Businesses in the course of their operations in Puerto Rico, as well as for the financing of activities such as research, experimentation, and development of new products or industrial processes or the improvement thereof, cmTied out in Puerto Rico;

(D)   obligations issued by the Conservation Trust of Puerto Rico and the Housing and Human Development Trust of Puerto Rico, provided that, when issuing said obligations, the Secretary of the Treasury has not revoked his determination that these are nonprofit trusts, pursuant to the terms and conditions established by the Financial Institutions Commissioner;

(E)   prefened Stocks or capital obligations as authorized by Act No. 55 of May 12, 1933, as amended, known as the "Puerto Rico Banking Law," as well as capital obligations issued by financial institutions, provided that the amount of the capital raised through the prefened Stocks or capital obligations issued is invested in Puerto Rico, pursuant to the terms and conditions established by the Financial Institutions Commissioner;

(F)   obligations issued by any subsidiary of the Farm Credit Banks of Baltimore, or its successor, AgFirst Farm Credit Bank, directly or indirectly engaged in financing agricultural loans with said funds as well as farmers in Puerto Rico, including loans to rural residents to finance rural housing; loans to credit unions owned and controlled by farmers and engaged in the marketing or distribution of agricultural products, the purchase of materials, the rendering of

AAFAF_CONF_0007713

HEIN EXHIBIT 84

services to agricultural businesses, and the acquisition of loans or discounts on notes already granted;

(G)   loans for financing maritime and air operations directly related to commerce and industry in Puerto Rico, including, without it being construed as a limitation, the money used in the construction, acquisition, and operation of all kinds of vessels, watercraft, or aircraft;

(H)   Stocks from Entities that own or operate tourist businesses exempt under the provisions of this Code, former Act No. 78-1993, as amended, known as the "Puerto Rico Tourism Development Act of 1993," Act No. 74-2010, as amended, known as the "Puerto Rico Tourism Development Act of 201 O," which constitute an Eligible Investment pursuant to Section 2(n) of said Act.

(I)   Stocks from Entities that are established as Investment Capital Funds under Act No. 3 of October 6, 1987, as amended, known as the "Investment Capital Fund Act of Puerto Rico," provided, that the Fund invests at least twenty percent (20%) of the total contributions received in tourist activities;

(J)   any other obligations or loans as the Financial Institutions Commissioner may designate, with the approval of the public sector members of the Financial Board and the Secretary of the DEDC.

(ii)   The interest on eligible funds deposited or invested by the Exempt Business holding a Decree granted under Chapter 6 of Subtitle B of this Code, in institutions engaged in the banking business, including the Puerto Rico Economic Development Bank, savings and loans associations, savings banks, securities brokerage firms and other similar institutions doing business in Puerto Rico, which the Financial Institutions Commissioner, with the approval of the public sector members of the Financial Board and the Secretary of the DEDC, deems to be eligible institutions to receive such eligible funds. The regulations on eligible institutions shall ensure that the funds are allocated to activities that further

AAFAF_CONF_0007714

production, income, and jobs in Puerto Rico, such as commercial, industrial, agricultural, construction, or natural resource conservation loans, among others.

(iii)    The regulations issued under equivalent provisions in Prior Incentives Laws shall continue to be in effect and apply to investments under this Code, until the Financial Institution Commissioner, with the approval of the Financial Board and the Secretary of the DEDC, amends or repeals said regulations or issues new regulations specifically for funds invested under this Code.

(iv)    If the Financial Institutions Commissioner determines that an institution is no longer eligible to receive said funds, such a determination shall not prevent the interest accrued thereon, invested before the institution lost its eligible status, from continuing to be considered as eligible interest under this Code until the matu1ity of said investment.

(v)    For purposes of paragraph (3), the term "eligible funds" shall include funds generated in the industrial or service activity, covered by the exemption Decree under Chapter 6 of Subtitle B of this Code (including taxable years covered by a Flexible Tax Exemption election) or under similar provisions in Prior Incentives Laws.

(4)    Investment in Manufacture.- Means the total investment for which the special deduction provided in Section 2062.06 of this Code is allowed.

(5)    Predecessor Exempt Manufacturing Business.- Means any business that enjoys or has enjoyed an exemption under Chapter 6 of Subtitle B of this Code or Prior Incentives Laws for carrying out an economic activity that is substantially similar to that which is specified in the Decree of a Successor Manufacturing Business, and twenty-five percent (25%) or more of its Stocks issued and outstanding, or other proprietary interest, is or has been owned by the Successor Manufacturing Business or by any of the stockholders or owners of the succeeding business, who own twenty-five percent (25%) or more of the Stocks or other

HEIN EXHIBIT 84

AAFAF_CONF_0007715

proprietary interest of the Successor Business. This last requirement shall not apply when referring to Predecessor Exempt Manufacturing Business in paragraph (4) of subsection (a) of Section 2064.01 of this Code. The holding of Stocks shall be determined pursuant to the rules concerning the holding of Stocks of Entities under Subtitle A of the Puerto Rico Internal Revenue Code.

(i) Said Rule shall not apply if any of the stockholders or owners of a Successor Manufacturing Business is affected by said rules and is able to prove, to the satisfaction of the Secretary of the DEDC and the Secretary of the Treasury, that the capital invested or to be invested in the Successor Manufacturing Business is not directly or indirectly derived from his spouse, straight-line ascendants or descendants, or siblings, but rather, that it is derived from his own financial means.

(ii) Under no circumstances shall an Exempt Business be deemed as a Predecessor Exempt Manufacturing Business of itself.

(6) Successor Manufacturing Business.- Means any business that is granted a Decree under Chapter 6 of Subtitle B of this Code to carry out an economic activity that is substantially similar to that which is specified in the Decree of a Predecessor Exempt Manufacturing Business.

(7) Manufactured Product.- Means and includes products transformed from raw materials, including vegetable or animal matter, into commercial articles, articles designated under the Prior Incentives Laws, and any other product with respect to which substantial industrial operations are conducted in Pue1io Rico that in the judgment of the Secretary of the DEDC warrant that they be considered as Manufactured Products under Chapter 6 of Subtitle B of this Code due to their nature and extension, required technology, the substantial employment provided or any other benefit that the operation represents for the welfare of Puerto Rico. An Exempt Business holding a Decree granted under Chapter 6 of Subtitle B

AAFAF_CONF_0007716

of this Code may subcontract the production in Puerto Rico of one (1) or several components or products, or one (1) or more manufacturing processes, or services related to said processes of products covered under their Decree or key functions needed for their operation and the subcontractor shall also qualify as an Exempt Business, provided that the Secretary of the DEDC determines that said subcontracting shall result in the best interests of Puerto Rico, in consideration of the factors set forth in this subsection.

(8)     Property Devoted to Industrial Development.- Means:

(i)     Real property, including land and improvements or parts thereof, as well as any addition equivalent to not less than twenty-five percent (25%) of the area of the main facility devoted to the active conduct of a trade that is made available to and used or owned by an Exempt Business holding a Decree granted under Chapter 6 of Subtitle B of this Code or under Act No. 135-1997 and Act No. 73-2008, in its development, organization, construction, establishment, or operation.

(ii)    Group of machinery and equipment necessary for an Exempt Business holding a Decree granted under Chapter 6 of Subtitle B of this Code or under Prior Incentives Laws to engage in the activity that prompts the Grant, which machinery or equipment is owned, installed, or in any way used under a contract by said Exempt Business.

(iii)   None of the provisions of this paragraph shall apply to financing leases.

(9)     Fundamental Services for Clusters.- Means the rendering of a service in Puerto Rico, through subcontracting, that is fundamental for the production process of an Exempt Manufacturing Business holding a Decree under Chapter 6 of Subtitle B of this Code or Prior Incentives Laws that belongs to clusters classified as high economic impact clusters by the Secretary of the DEDC; provided

AAFAF_CONF_0007717

that the criteria to classify a Cluster as high economic impact clusters shall be prescribed through regulations by the Secretary of the DEDC.

(10) Key Supplier Services.- Means the continuous rendering of commercial scale services in Puerto Rico to an Exempt Business under Chapter 6 of Subtitle B of this Code or Prior Incentives Laws as a key supplier of said Exempt Business that is a Unit engaged in manufacturing. A supplier shall be deemed as a key supplier if his services enable the Exempt Business which is the usual client thereof, to focus its activities on core competency areas.

(A) In the case of the service units described under this subparagraph, not less than eighty percent (80%) of the employees, technicians, and professionals of the service units shall be Resident Individuals of Puerto Rico.

(B) In the case of the service units desc1ibed under this subparagraph that are operating in Puerto Rico prior to filing their application, said service units shall be subject to the limitations regarding the base period income established in Section 2062.0l(g) of this Code.

(C) Legal, accounting, or tax consulting services shall not constitute key services.

(D) For purposes of this subparagraph, Key Supplier Services shall be those services directly related to manufacturing activities of an Exempt Business holding a Decree under Chapter 6 of Subtitle B of this Code or Prior Incentives Laws, including, among others, the following:

1. Specialized storage.

2. Inventory management of raw material, material in process, finished product, and parts inventory, including receipt, storage and inspection.

3. Logistics regarding the distribution and export of Manufactured Products, except material and document transportation services

provided by businesses mainly engaged in the transportation business to consumers and nonexempt businesses.

4.      Insertion and distribution of printed material required by state or federal laws or regulations prior to the distribution or sale of any Manufactured Product.

5.      Digitization of documents.

6.      Sterilization of instruments, equipment, and clean room garments.

7.      Quality control and process, equipment, and systems validation services.

8.      Rating of equipment, utilities, or facilities and calibration and maintenance of equipment.

9.      Repair and remanufacture of products.

10.     Process engineering, which may include, among others, the design of systems and processes that improve the quality and productivity of operations covered under the Decree.

11.     Programming and data system management services.

12.     Specialized technical training.

13.     Development and reproduction of educational programs.

14.     Logistics related to the sale and purchase of Manufactured Products.

(11)   Industrial Unit.- Means:

(i)     Plant, factory, machinery or group of machinery, and equipment with capacity to conduct the main functions used in the Production of a product manufactured on a Commercial Scale, even when it shares with other

AAFAF_CONF_0007719

HEIN EXHIBIT 84

Industrial Units, the use of certain facilities of lesser importance, or conducts some industrial operations outside of said Industrial Unit.

(ii) An Industrial Unit may share with Industrial Units, the use of facilities of greater importance when the Secretary of the DEDC determines that said shared use is necessary and convenient for the industrial and economic development of Puerto Rico in view of the nature of the operations, the additional investment, and the number of jobs created.

(iii) Any Exempt Business holding a Decree granted under Chapter 6 of Subtitle B of this Code that establishes an Eligible Business to manufacture a separate or different product from that produced by said Exempt Business with the machinery and equipment necessary for an efficient operation, in addition to any other operation that has enjoyed or that is enjoying an exemption, with an accounting system that clearly reflects the operations of said Eligible Business in accordance with the generally accepted accounting principles.

Section 1020.07.- Definitions Applicable to Infrastructure and Green Energy Activities.

(a) For purposes of Chapter 7 of Subtitle B of this Code pertaining to Infrastructure and Green Energy activities, the following terms, phrases, and words will have the meaning and the scope stated below:

(1) Environmental and Social Attributes.- Means all of the qualities and characteristics of the RECs that are inseparable and constitute benefits for nature, the environment, and society which are the result of generating Sustainable Renewable Energy or Alternative Renewable Energy, excluding Energy Attributes, as defined; for the purposes of this Chapter, Environmental and Social Attributes include, without limitation, reducing environmental pollutants such as carbon dioxide and other gas emissions which cause the greenhouse effect.

AAFAF_CONF_0007720

HEIN EXHIBIT 84

(2)    Energy Attributes.- Means electric power generation benefits (measured in megawatts-hour [MWh] units or fractions) derived from a Sustainable Renewable Energy Source or Alternative Renewable Energy Source, including the use or consumption of electric power and the network's stability, its production capacity, and its contributions to Puerto Rico's electric power system.

(3)    Renewable Biomass.- Means any organic or biological material derived from organisms that have the potential to generate electricity, such as wood, waste, and alcohol-derived fuels; and includes natural biomass, which is produced naturally without human intervention; residual biomass, which is a byproduct or residue generated in agricultural, forest, and cattle activities, as well as solid residue from the food and agriculture industry and the wood-processing industry; for the purposes of this Code it also includes any biomass similar in nature to those described, as designated by the Secretary of the DEDC, in accordance with Act No. 17-2019, known as the "Puerto Rico Energy Public Policy Act."

(4)    Urban Center.- Means that geographic portion that comprises the center or core of a town or city which has been defined as such by the municipality in an area plan, or designated as historic zone, or delimited by the Planning Board in close coordination with the Mayor of the Municipality subject to renewal.

(5)    Renewable Energy Certificate or REC.- Means a personal property that constitutes a marketable and negotiable asset or commodity that may be purchased, sold, assigned, and transferred between persons for any lawful purpose, which is equal to one (1) megawatt-hour of electric power generated from a Sustainable Renewable Energy Source or Alternative Renewable Energy Source and, in turn, consists of all Environmental and Social Attributes, as defined.

(6)    Energy from Renewable Sources.- The term "Energy from Renewal Sources" means Alternative Renewable Energy or Sustainable Renewable Energy, among other similar sources.

HEIN EXHIBIT 84

AAFAF_CONF_0007721

(7)     Alternative Renewable Energy.- Means energy derived from the following sources:

      (i)     Landfill gas combustion;

      (ii)    Anaerobic digestion;

      (iii)   Fuel cells;

      (iv)    Waste heat;

(8)     Sustainable Renewable Energy.- Means the energy derived from the following sources:

      (i)     Solar energy;

      (ii)    Wind energy;

      (iii)   Geothermal energy;

      (iv)    Renewable Biomass combustion;

      (v)     Renewable Biomass gas combustion;

      (vi)    Combustion of biofuel derived from Renewable Biomass or from other sources such as microalgae;

      (vii)   Qualified hydropower;

      (viii)  Marine and hydrokinetic renewable energy, as defined in Section 632 of the "Energy Independence and Security Act of 2007" (Pub. Law 110-140, 42 U.S.C. § 17211);

      (ix)    Ocean thermal energy.

(9)     Green Energy.- The term "Green Energy" includes both terms "Sustainable Renewable Energy" and "Alternative Renewable Energy."

(10)    Low- or Moderate-Income Family.- Means any family or person that does not own a dwelling and whose annual income does not exceed that established for low- or moderate-income families by the Affordable Housing Programs of the Government of the United States of America or the Government of

AAFAF_CONF_0007722

Puerto Rico, as established by the Secretary of Housing pursuant to applicable regulations.

(11)   Middle-Class Family or Person.- Means any family or person who does not own a home and whose annual income exceeds the income established for Low- or Moderate-Income Families by the Affordable Housing Programs of the Government of the United States or the Government of Puerto Rico, up to a maximum of sixty-five percent (65%) of the maximum amount insurable by the Federal Housing Administration (FHA) for the area.

(12)   Alternative Renewable Energy Source.- Means any energy source that produces electric power through the use of Alternative Renewable Energy, as such term is defined in this Section.

(13)   Sustainable Renewable Energy Source.- Means any energy source that produces electric or thermal power through the use of Sustainable Renewable Energy, as such term is defined in this Section.

(14)   High Efficiency Generation.- Means that at least sixty percent (60%) of the electric power is produced in a highly efficient manner, as established by the Energy Bureau, pursuant to Act No. 57-2014, as amended.

(15)   Housing Infrastructure.- Means capital works and improvements deemed fundamental, including substantial improvements to public services, constructed in conjunction with the construction of a Housing Project, such as aqueduct and sewer systems, including all the systems to supply, treat, and distribute water, wastewater treatment and disposal systems, sanitary sewers or potable water mains, pumping stations, treatment plants, tanks or other facilities for drinking water service or wastewater treatment, solid or hazardous waste management systems, rainwater control systems, including lakes, canals, and other works to manage rainwater, resource recovery systems, electric power systems, including distribution lines or electric power connections, substations, and any other capital works or

HEIN EXHIBIT 84

AAFAF_CONF_0007723

improvements to provide electric power service, highways, accesses, and intersections, pedestrian walkways, parking facilities, bridges, tunnels, transportation systems including mass transportation, communication systems, including telephone lines, and cable television facilities, among similar others.

(16)   Infrastructure of Regional and Municipal Impact.- Means those capital works and improvements deemed fundamental, which an agency previously requires from various Developers or a Combine as a condition for the endorsement of each of their Housing Projects, provided that: (1) said Infrastructure provides a capacity exceeding the needs of each of the Housing Projects by, at least, fifty percent (50%), as certified by the agency concerned; (2) the Secretary of Housing and the director of the agency concerned, determine that the construction of the Infrastructure entails a substantial investment, which shall take into consideration, among other factors, the number of residents who shall benefit, whether directly or indirectly, and (3) the Secretary of Housing determines that it significantly promotes housing development in a specific geographic area, municipality, or region of the Island.

(17)   Green Energy Income or GEL- Means income earned or derived from the following sources:

(i)   The net income generated from the operation of an eligible activity by an Exempt Business holding a Decree granted under this Code, which income is computed according to the Puerto Rico Internal Revenue Code, adjusted by the special deductions provided by this Code, including the income generated from the sale of RECs, as well as the income generated from the operation of such Exempt Business when electing the Flexible Tax Exemption under this Code.

(ii)   The income earned as a dividend or profit by a corporation or partnership having Stocks in the Exempt Business making the distribution;

AAFAF_CONF_0007724

provided, that such income may be attributable to the GEI derived by such Exempt Business.

(iii)    The net income generated by the Exempt Business holding a Decree granted under this Code on account of the business interruption insurance policies; provided, that the employment level of the Exempt Business is not reduced as a result of the action that originated the collection of such income.

(iv)    The net income derived from the sale of Intangible Property and any other right to receive income related to activities or Intangible Property related to the eligible activity and owned by the Exempt Business holding a Decree under Chapter 7 of Subtitle B of this Code.

(18)    Eligible Green Energy Investment.- Means the amount of the investment which allows the special deduction provided in Section 2072.06 of this Code.

(19)    Exempt Predecessor Green Energy Business.- Means any of the following:

(i)    Any business which has or had any exemption under this Code or pursuant to Industrial or Tax Incentives Laws to engage in an eligible activity substantially similar to the one specified in the Decree of a Successor Green Energy Business; and which twenty-five percent (25%) of its issued and outstanding Stocks or proprietary interest is or was owned by the Successor Green Energy Business or by any stockholder or owner of the Successor Green Energy Business holding twenty-five percent (25%) or more of the Stocks of the Successor Green Energy Business. This last requirement shall not apply in the case of Exempt Predecessor Green Energy Business under Section 2074.02(a)(4) of this Code. For purposes of this definition:

AAFAF_CONF_0007725

(A)     Holding of Stocks shall be determined in accordance with the rules concerning the holding of Entity Stocks under Subtitle A of the Puerto Rico Internal Revenue Code.

(B)     Should any of the stockholders or owners of a Successor Green Energy Business affected by such rules be able to prove, to the satisfaction of the Secretary of the DEDC and the Secretary of the Treasury, that the capital invested or to be invested in the Successor Green Energy Business does not derive directly or indirectly from their spouses, straight-line ascendants or descendants, or siblings, but rather, that it derives from their own estate, such rules shall not apply.

(20)   Operator.- Means any person who controls, operates, or manages a Production Unit, High Efficiency Generation System, Sustainable Renewable Energy Source, or Alternative Renewable Energy Source.

(21)   Person with a Disability.- Any person with a physical or mental disability which is a substantial limitation for him in one or more main activities of daily living; or a person who has a history of such disability; or a person who is considered and tended to as a person with such disability.

(22)   Elderly Persons.- Any natural person age sixty (60) or older.

(23)   High-Efficiency Energy Producer.- Means an operator of a High-Efficiency Generation System that generates and sells electricity at a commercial scale.

(24)   Alternative Renewable Energy Producer.- Means the Operator of an Alternative Renewable Energy Source that generates or sells electricity or thermal energy at commercial scale.

(25)   Sustainable Renewable Energy Producer.- Means any operator of a sustainable renewable energy source that generates or sells electricity or thermal energy at commercial scale.

AAFAF_CONF_0007726

(26)   Property Devoted to the Production of Green Energy.- Means any:

(i)   Real property, including lands and improvements or paiis thereof, as well as any addition equal to not less than twenty-five percent (25%) of the area of the main facility devoted to the operations of an Exempt Business, and that is available, used, or owned by an Exempt Business holding a Decree granted under Chapter 7 of Subtitle B of this Code, in its development, organization, construction, establishment, or operation.

(ii)   Group of machinery and equipment necessary for an Exempt Business holding a Decree granted under Chapter 7 of Subtitle B of this Code to engage in the activity that qualifies it for the Grant, which machinery or equipment is owned, installed, or in any way used under a contract by such Exempt Business.

(iii)   For the purposes of Chapter 7 of Subtitle B of this Code, the term "Property Devoted to Green Energy Production" shall not include the so-called financing leases.

(27)   Multi-family Project.- Means any building or group of buildings with not less than ten (10) Housing units, independent from each other, but owned by the same owner.

(28)   Green Energy Technology.- Means Green Energy Production Technology.

(29)   Production Unit.- Means a plant, machinery, or group of machinery and equipment installed in one or more locations, but which constitutes an integrated Green Energy project with capacity to produce Green Energy, including supplementary equipment and structures, such as those related to the distribution of energy produced or to the administrative operations of an Exempt Business, or Green Energy project, even when it conducts some of its operations

AAFAF_CONF_0007727

outside of the premises of such unit. The group of machinery and equipment, and supplementary facilities established in different locations shall be determined to constitute an integrated Green Energy project taking into account factors such as potential clients for the purchase of energy to be produced, financing agreements, operational efficiencies, managerial control and supervision of capital and human resources, and risk control.

(30) Assisted Living.- Means the concept of assistance created in housing programs in which any Entity shall comply with the following requirements: (1) to provide spacious rooms, as prescribed in the Incentives Regulations; and (2) to provide separate personal care for three (3) or more Elderly Persons that are not related within the fourth degree of consanguinity or second of affinity to the provider of said services, either directly through the employees of said entity or by means of agreements with other personal care organizations; and (3) to be able to accept payment or reimbursements from third parties on behalf of or from the residents, as payment or installments toward the rent rate set forth by means of the residency agreement.

(31) Housing.- Any structure destined for individual or collective housing, of which the development or construction began after the approval of this Code; provided, that in the case of projects developed or constructed in phases or units which, despite the project having begun before the effective date of this Code, still have units or phases to be developed or constructed after the effective date of this Code, the Secretary of the DEDC may deem such phases or units as eligible under the provisions of this Code.

(32) Affordable Housing.- Means those units for sale or rent, whose maximum sales price does not exceed the sum of the Adjusted Maximum Loan Qualification by Household (AMLQH) and the incremental elements or factors as

AAFAF_CONF_0007728

prescribed in the Incentives Regulations or whose rental fee or market value does not exceed what is prescribed in said Regulations.

(33)   Housing for Elderly Persons.- Means simple ground or multi-level row structures, intended as housing for Elderly Persons to Older Adults[ sic], when they are promoted or developed by the Department of Housing or its operating bodies, when promoted or developed by private companies.

(34)   Historic Zones of Puerto Rico.- Means those zones declared as such by the Planning Board of Puerto Rico or by the Institute of Puerto Rican Culture, pursuant to Act No. 374 of May 14, 1949, as amended, known as the "Historic or Ancient Zones and Zones of Tourist Interest Act" and by Act No. 89 of June 21, 1955, as amended, respectively, for having a large number structures of historical, artistic, cultural, or environmental value that constitute our constructed and urban patrimony.

Section 1020.08.- Definitions Applicable to Agro-industry Activities.

(a)   For the purposes of Chapter 8 of Subtitle B of this Code relating to Agricultural activities, the following tenns, words, and phrases shall have the meaning and scope stated below:

(1)   Bona fide Farmer: Means any natural or juridical person that holds a valid certification issued by the Secretary of Agriculture for the Taxable Year for which he claims the deductions, exemptions, or benefits provided in Chapter 8 of Subtitle B of this Code, certifying that during said year, said farmer was engaged in the exploitation of an activity qualified as an agro-industrial business, as such activity is described in paragraph (2) of subsection (a) of Section 2081.01, and derives fifty-one percent (51 %) or more of his gross income from an agro-industrial business as operator, owner, or lessee, according to his income tax return or fifty-one percent (51 %) of the value of the production and/or investment in an agro-industrial business as operator, owner, or lessee.

AAFAF_CONF_0007729

HEIN EXHIBIT 84

(2)    Agricultural Workers: Any person who works for compensation in activities relating to agricultural or livestock production, maintenance of a farm or the direct facilities thereof used for storing, transporting, distributing, and marketing of the farm's products.

Section 1020.09.- Definitions Applicable to Creative Industry Activities.

(a)    For the purposes of Chapter 9 of Subtitle B of this Code relating to Creative Industry activities, the following terms, words, and phrases shall have the meaning and the scope stated below:

(1)    Creative Industries Development Districts.- Means each geographic area as described in Section 2094.01 of this Code.

(2)    Studio.- Means a high-capacity film and television production studio, built for such purposes, developed and operated anywhere in Puerto Rico, suitable for housing soundstages and exterior sets, including facilities for building and designing sets, production offices, and production services departments catering to the production community and such other necessary built-in amenities or facilities, as prescribed in the Incentives Regulations, administrative order, circular letter, or any other general communication, with a budget equal to or greater than five hundred thousand dollars ($500,000), as certified by the Auditor.

(3)    Post-production Studio.- Means a studio where the film material is completed and that contains specialized suites for audio editing, video editing, color correction, equipment for creating visual effects, other equipment and specialized structures whose value at the time of the acquisition and installation or construction is equal to or greater than one million dollars ($1,000,000); provided, that the suites are used exclusively for their designated purpose and are not used as general purpose suites. The value of the building and the land are excluded from this amount.

AAFAF_CONF_0007730

HEIN EXHIBIT 84

(4)     Bond.- Means an irrevocable standby letter of credit issued by a Financial Institution duly authorized to do business in Puerto Rico, the assurance of a surety or insurance company, or a surety from a creditworthy Person, in each case acceptable to the Secretary of the Treasury or the Secretary of the DEDC, as the case may be, to ensure the completion of a Film Project in accordance with the proposed terms and parameters. In the case of Film Projects, the term "Bond" shall include a "Completion Bond."

(5)     Principal Photography.- Means the stage of production during which a Film Project is actually filmed. The term shall not include the preproduction or postproduction of a film project.

(6)     Production     Expenditures.-     Means     the     development, preproduction, production, and postproduction expenditures directly incurred in the production of a Film Project. Expenditures relating to the development of a Film Project shall only be included when no less than fifty percent (50%) of the Principal Photography of the Film Project takes place in Puerto Rico. Preproduction, production, and postproduction expenditures need not meet the aforementioned fifty percent (50%) Principal Photography requirement to be considered Production Expenditures.

(7)     Puerto Rico Production Expenditures.- Means the payments made to Domestic Persons or Foreign Persons for services physically rendered in Puerto Rico that are directly attributable to the development, preproduction, production, and postproduction of a Film Project. Expenditures attributable to the development of a Film Project shall only be included when no less than fifty percent (50%) of the Principal Photography of a Film Project takes place in Puerto Rico. Expenditures attributable to preproduction, production, and postproduction shall not be required to meet the aforementioned fifty percent (50%) Principal Photography requirement to be considered Puerto Rico Production Expenditures. In order to

AAFAF_CONF_0007731

constitute Puerto Rico Production Expenditures, the payments received by Domestic Persons and Foreign Persons shall be subject to income taxes in Puerto Rico, pursuant to Chapter 9 of Subtitle B of this Code, whether directly or through a professional services corporation, or other Entity. The Puerto Rico Production Expenditures include payments related to the development, preproduction, production, and postproduction of a Film Project including, but not limited to, the following:

(i)    Wages, fringe benefits, per diems or fees for talent, management, or labor paid to a person that is a Domestic Person or Foreign Person. However, per diems paid to a person other than Domestic Persons or Foreign Persons, may be included in the definition of Puerto Rico Production Expenditures at the discretion of the Secretary of the DEDC;

(ii)    Interest, charges, and fees paid to Persons listed in paragraph (4) of subsection (f) of Section 103 3.17 of the Puerto Rico Internal Revenue Code; or

(iii)    Any of the following goods or services provided by a supplier that is a Domestic Person or Foreign Person:

(A)    The story and screenplay to be used for a Film Project;

(B)    set construction and operations, wardrobe, accessories, and related services;

(C)    photography, sound synchronization, lighting, and related services;

(D)    postproduction services such as video and audio editing, color correction, visual effects, and other related services, including the rental of specialized suites and postproduction equipment within said facilities;

(E)    rental of facilities and equipment;

AAFAF_CONF_0007732

HEIN EXHIBIT 84

(F)     leasing of vehicles, including aircraft or vessels, provided, that such aircraft or vessel is registered and home ported in Puerto Rico, and such leasing is limited to travel within Puerto Rico, its airspace, and territorial waters;

(G)     food and lodging;

(H)     airfare, if purchased through a Puerto Rico-based travel agency or travel company for travel, to and from Puerto Rico or within Puerto Rico, that is directly attributable to the Film Project;

(I)     insurance coverage or Bond, provided that it is purchased through an insurance producer authorized to do business in Puerto Rico; and

(J)     other costs directly attributable to the Film Project in accordance with the generally accepted entertainment industry practice, as prescribed in the Incentives Regulations, administrative order, circular letter, or any other general communication.

(iv)     The following shall be excluded from the Puerto Rico Production Expenditures definition:

(A)     Items paid to a Domestic Person with the money obtained through any subsidy, gift, or fund appropriation from the Government of Puerto Rico. Items paid to a Domestic Person with money obtained through contributions made to a Film Project that, due to their nature and terms are refundable, such as loans or investments, excluding contributions by the Puerto Rico Motion Picture Fund, as defined in the 'Film Industry Economic Incentives Act,' may be included in the definition of Puerto Rico Production Expenditures at the discretion of the Secretary of the DEDC.

(B)     The cost of goods acquired or leased by Domestic Persons, outside of Puerto Rico for resale or lease to a Grantee that fails to comply

AAFAF_CONF_0007733

with the rules prescribed by the Secretary of Development through regulations and/or circular letter, and when, in the judgment of the Auditor, there is no economic substance in the transaction.

(C)    Items paid to Domestic Persons mainly for the services rendered by Foreign Persons, except for Entities rendering the services of Foreign Persons.

(8)    Creative Industries - For purposes of this Code, business registered in the Creative Industries Register, with the potential to create jobs and further economic development, mainly through the export of creative goods and services in the following sectors: Design (graphic, industrial, fashion, and interior design); Arts (music, visual arts, performing arts, and publishing); Media (application, videogames, online media, digital, and multimedia content development); and Creative Services (architecture and creative education).

(9)    Studio Operator.- A Person engaged in the administration and operation of a Studio or Postproduction Studio.

(10)   Domestic Producer.- Means a Domestic Person entrepreneur that:

(i)    directly or indirectly controls the intellectual property of a Film Project and is responsible for the financing and production of the Film Project; and

(ii)    directly or indirectly, individually or jointly with other Domestic Producers, is entitled to receive no less than thirty percent (30%) of the net profits of the Film Project to be distributed among the producers of the Film Project, after repaying the financing and all other financial obligations.

(11)   Film Project.- Means one or more activities listed in paragraph (1) of subsection (a) of Section 2091.01 of this Code.

HEIN EXHIBIT 84

AAFAF_CONF_0007734

(12)   Transfer.- Means, as appropriate, leasing, selling, exchanging, transferring, assigning, or otherwise conveying real or personal property, as the case maybe.

Section 1020.10.- Definitions Applicable to Activities of Other Industries.

(a)   For the purposes of Chapter 11 of this Code relating to activities covered and related to Other Industries, the following terms, words, and phrases shall have the meaning and the scope stated below:

(1)   Net Income from Shipping Activities - Means the gross income from, or relating to the use, lease or charte1ing for use, of any vessel or part thereof in the transportation of freight between ports in Puerto Rico and ports in foreign countries, or of any property of any other kind, real and personal, used in connection with the operation of said vessel.

(2)   Ocean Freight Shipping - Means:

(i)   ocean freight shipping between ports in Puerto Rico and ports in foreign countries, and

(ii)   the leasing or chartering of vessels used for said transportation method, or property of any other kind, real and personal, used in connection with the operation of said vessels when the transportation meets the requirements set forth in Section 2110.02 of this Code.

Section 1030.01 - Job Creation

(a)   As an essential requirement for the award of incentives provided in this Code, the Secretary shall require Eligible Businesses with an annual, actual or projected volume of business greater than three million dollars ($3,000,000), to maintain at least the number of direct employees provided in subsection (b) during its taxable year. None of these provisions shall prevent the Secretary from imposing greater requirements to an Exempt Business, taking into account the best interests of Puerto Rico.

AAFAF_CONF_0007735

(b)      Any Eligible Businesses with an annual, actual or projected volume of business greater than three million dollars ($3,000,000) shall maintain during the effective term of the grant and subject to the provisions of subsection (d) of this Section, at least:

(1)      One (1) full-time direct employee, if the decree was granted under the provisions of Chapter 3 of Subtitle B.

(2)      Three (3) full-time direct employees if the decree was granted under the provisions of Chapter 6 of Subtitle B.

(3)      Any decree granted under the provĩsĩ0ns of this Section or Chapter 3 of this Code shall not require job creation.

(c)      For the purposes of this Section, a "direct employee" means any resident individual of Puerto Rico that the Exempt Business hired as an employee, whether on a full-time, part-time, or temporary basis to participate directly in the activities covered under a decree. In order to determine the number of full-time direct employees maintained by an Exempt Business during the taxable year, the total number of hours worked by all direct employees thereof during the year shall be added and the resulting amount shall be divided by two thousand eighty (2,080). Without taking into account decimals, the result shall be the number of direct employees during said taxable year. For these purposes, vacation hours and other authorized leaves may be taken into account as worked hours. However, overtime in excess of forty (40) hours a week, shall not be considered.

(1)      In addition, in the event a regular employee resĩgns or ĩs dismissed, the Exempt Business shall have ninety (90) days to hire a new employee. If the Exempt Business hires a new employee during said period, the days during which the position remained vacant, shall be deemed hours worked in the computation of the two thousand eighty (2,080) hours.

(d)     Determination of Jobs - In determining the job requirement, the Secretary shall follow the rules set forth below:

(1)     In those cases in which the job requirement was imposed as a consequence of the Exempt Business having an actual annual volume of business greater than three million dollars ($3,000,000), the Exempt Business shall maintain: twenty-five percent (25%) of the established requirement during the first six (6) months after the granting of the decree; fifty percent (50%) of the established requirement between the sixth (6th) twelfth (12th) months after the granting of the decree; seventy-five percent (75%) of the established requirement between the twelfth (12th) and eighteenth (18th) months after the granting of the decree; and one hundred percent (100%) of the established requirement as of the eighteenth (18th) month of the granting of the decree.

(2)     In those cases in which the job requirement was imposed as a consequence of the Exempt Business having a projected annual volume of business, the provisions of paragraph (1) of this subsection (d) shall apply beginning the taxable year following the taxable year in which the Exempt Business reaches a volume of business greater than three million dollars ($3,000,000).

(3)     The Secretary shall take into consideration the owners of Exempt Businesses who are full-time employees of the Entity and earn a salary for their servIces.

(4)     The Secretary shall take into consideration the employees of another employer who have been hired by the Exempt Business to render services directly related to the activities covered under the Decree, including those working under an employee lease agreement.

(e)     Flexible Compliance - Any Exempt Business that fails to meet the job requirement provided herein for a taxable year:

HEIN EXHIBIT 84

AAFAF_CONF_0007737

(1)    If the Exempt Business met at least eighty percent (80%) of the job requirement, it shall be understood that it met said requirement. This exception shall not be claimed more than three (3) times during the effective term of the Decree.

(2)    If the Exempt Business failed to meet at least eighty percent (80%) of the job requirement, it shall request the Secretary to allow it to meet said requirement with the number of jobs maintained during the year. Said request shall state the reasons for the noncompliance, the c01Tective action to be taken by the Exempt Business to comply with said requirement, and any other information required by the Secretary through regulations or other general communication. Provided, that compliance with the job requirement under this paragraph shall not be claimed more than twice (2) during the effective term of the Decree.

(3)    The Secretary is hereby empowered to grant the exceptions provided in paragraphs (1) and (2) of this subsection in excess of the years provided therein, if it serves the best interests of Puerto Rico.

(4)    Existing Decrees - For taxable years beginning after December 31, 2017, any Exempt Business holding a Decree under Act No. 73-2008, as amended, Act No. 20-2012, as amended, or Act No. 135-2014, as amended, may avail itself of the provisions of this paragraph to meet said requirement. This exception shall not be claimed more than three (3) times over the remainder of the effective term of the Decree.

(d)    Every Exempt Business holding a Decree under Act No. 73-2008, as amended, Act No. 20-2012, as amended, or Act No. 135-2014, as amended, may request that its Decree be amended so as to avail itself of the job requirement set forth in subsection (b) of this Section, and the Secretary may grant such request, insofar as it serves the best interest of Puerto Rico.

HEIN EXHIBIT 84

AAFAF_CONF_0007738

SUBTITLE B -  ECONOMIC DEVELOPMENT INCENTIVES

CHAPTER 1 -  GENERAL APPLICATION INCENTIVES

SUBCHAPTER A -  GENERAL RULE

Section 2011.01.- General Provisions.

The benefits of this Subchapter shall generally apply to Exempt Businesses under this Code, except as otherwise provided in this Chapter 1 and the following Chapters of this Subtitle B.

Section 2011.02.- Income Tax.

(a)      Income Tax.

(1)      In general- The Exempt Income generated in the eligible activities of an Exempt Business under this Code shall be subject to a preferential flat income tax rate of four percent (4%), in lieu of any other income tax, if any, provided in the Puerto Rico Internal Revenue Code or any other law. For purposes of this exemption, any funds from an insurance policy for business interruption that covers the eligible activity of an Exempt Business, shall be deemed to be Exempt Income.

(b)      Distributions.

(1)      The stockholders or partners of a corporation or partnership that is an Exempt Business holding a Decree granted under this Code shall not be subject to the payment of income taxes on distributions of dividends or profits from the Exempt Income of said Exempt Business, or in the case of an Exempt Business other than a domestic corporation, on distributions of dividends or profits from the income from sources outside Puerto Rico generated by the Exempt Business, as provided in the Puerto Rico Internal Revenue Code.

(2)      Attribution of Exempt Distributions.-

(i)      The distribution of dividends or profits made by an Exempt Business holding a Decree granted under this Code, even after its Decree has

expired, shall be deemed to have been made from its Exempt Income if, on the date of the distribution, it does not exceed the undistributed balance of accrued Exempt Income, unless the Exempt Business, when preparing the distribution information statement, chooses to distribute the dividend or profit, totally or partially derived from other earnings or profits. The amount, the year of accrual, and the nature of the distribution from Exempt Income thus made shall be as designated by said Exempt Business through notice delivered together with the payment thereof to its stockholders or partners, and as notified to the Secretary of the Treasury, through an information statement not later than February 28 following the year of the distribution.

(3)     In those cases where an Entity that as of the date of commencement of operations as an Exempt Business has accrued earnings or profits, the distributions of dividends or benefits made as of said date shall be deemed to be made from the undistributed balance of said earning or profits, however, once the balance is exhausted by such distributions, the provisions of paragraph (I) shall apply.

(4)     Subsequent distributions from Exempt Income made by any Entity shall also be exempt from all taxation.

(c)     Deduction and Net Operating Loss Carryover.-

(I)     Deduction for Current Loss Incurred in Activities Not Covered by an Exemption Decree.- If an Exempt Business holding a Decree granted under this Code incurs net operating losses other than operations declared exempt under this Code, computed without the benefit of the deduction provided in Sections 2062.06 and 2072.06, when such deductions are applicable, said losses shall be used solely against income not covered by an exemption Decree and shall be governed by the provisions of the Puerto Rico Internal Revenue Code.

HEIN EXHIBIT 84

AAFAF_CONF_0007740

(2)     Deduction for Ongoing Loss Incurred in the Operation of an Exempt Business.- If an Exempt Business holding a Decree granted under this Code incurs net operating losses declared exempt under this Code, computed without the benefit of the special deduction provided in Sections 2062.06 and 2072.06, when such deductions are applicable, said loss may be deducted from its Industrial Development Income of the operation that incurred the loss.

(3)     Deduction for Loss Carried Over from Previous Years.- A deduction for loss incurred in previous years shall be granted as provided below:

(i)     The excess over losses deductible under paragraph (2) of this subsection may be carried over against the Exempt Income of subsequent taxable years. Losses shall be carried over in the order they were incurred.

(ii)    Any net loss incurred in a year in which an election of the flexible tax exemption provided in Section 2011.05 of this Code is in effect, may be carried over only against the Exempt Income generated by the Exempt Business, under the Decree under which an election under Section 2011.05 of this Code was made. Losses shall be carried over in the order they were incurred.

(iii)   Once the exemption period has expired for income tax purposes, net losses incurred in an exempt operation under this Code, as well as any excess of the deduction allowed under Sections 2062.06 and 2072.07, when the Exempt Business is carrying over such applicable deductions as of the expiration date of said period, may be deducted from any taxable income in Puerto Rico, subject to the limitations provided in Subtitle A of the Puerto Rico Intel11al Revenue Code. Said losses shall be deemed to be incmTed in the last Taxable Year in which the Exempt Business holding a Decree granted under this Code enjoyed the income tax exemption under the Decree.

(iv)    The amount of the net operating loss to be carried over shall be calculated pursuant to the provisions of Section 1033 .14 of the Puerto Rico

HEIN EXHIBIT 84

AAFAF_CONF_0007741

Internal Revenue Code. In the case of Exempt Businesses holding a Decree granted under Chapter 6 of Subtitle B of this Code, in addition to the exceptions, additions, and limitations provided in said Section, the loss shall be adjusted by the Eligible Investment Income of said Exempt Business.

(d)     Tax Payment- In the absence of a provision to the contrary, taxes withheld or payable shall be held or paid in the form and manner provided by the Puerto Rico Internal Revenue Code for the payment of income taxes and withholdings in general.

Section 2011.03.- Property Taxes.

(a)     An Exempt Business under this Code shall have a seventy-five percent (75%) exemption on the real and personal property tax provided in Act No. 83-1991.

(b)     Tax Rate.- During the term of the Decree, the taxable portion shall be subject to the tax rate in effect as of the date the Decree was signed, regardless of any subsequent amendment made to the Decree.

(c)     Real and Personal Property "Construction in Progress" (CIP).- Any Real and Personal Property "Construction in Progress" shall have a total exemption from real and personal property taxes during the construction period in lieu of the terms and requirements provided in the "Municipal Property Tax Act."

Section 2011.04.- Municipal Taxes

(a)     The income generated from the eligible activities of an Exempt Business under this Code shall have a fifty percent (50%) exemption on municipal taxes, that is, on municipal license taxes, municipal excise taxes, and other municipal taxes imposed through a municipal ordinance.

(b)     Tax Rate.- During the term of the Decree, the taxable portion of the volume of business shall be subject to the tax rate in effect as of the date the Decree was signed, regardless of any subsequent amendment made thereto.

AAFAF_CONF_0007742

(c)     Exemption for the First Semester.- The Exempt Business holding a Decree granted under this Code shall have full exemption from the municipal licenses taxes applicable to the volume of business of said Exempt Business during the semester of the Government's Fiscal Year in which the Exempt Business commences operations in any municipality, pursuant to the provisions of the "Municipal License Tax Act."

(d)     Statute of Limitation for Assessment and Collection of License Taxes.- Any Exempt Business under this Code or under Prior Incentives Laws may waive the benefit of a five percent (5%) discount for paying in advance, as provided in Section 11 of the "Municipal License Tax Act," and pay in full the municipal license tax on the date provided by said Act. Provided, that in the case of Exempt Businesses that opt to pay in advance and waive the discount, the statute of limitations to assess and collect the license tax imposed under the "Municipal License Tax Act" shall be three (3) years from the filing date of the Declaration of Volume of Business, in lieu of the terms provided in subsections (a) and (b) of Section 19 of the "Municipal License Tax Act."

(e)     Capital Gains.- The net capital gains as well as any other net gain realized from the sale of any asset or property used in the exempt operations shall be subject to municipal taxes (license taxes), in the taxable portion, only to the extent of the amount of the net gains, if any, in lieu of the terms provided in the "Municipal License Tax Act."

(t)     Construction Excise Taxes.- An Exempt Business holding a Decree under this Code and its contractors and subcontractors shall have a seventy-five percent (75%) exemption from any tax, levy, fee, license, construction excise tax, excise tax, duty, or tariff imposed by any municipal ordinance on construction works to be used by said Exempt Business in its operations, without it being understood that said taxes include the municipal license taxes imposed on the volume of

AAFAF_CONF_0007743

business of the contractor or subcontractor of the Exempt Business. When the exemption provided in this subsection is applicable to those Decrees granted under this Code or Prior Incentives Laws, it shall be understood that: ( l) a construction work shall be used by an Exempt Business insofar as it is conducted within the premises of the operation and to facilitate the operations of the Exempt Business, regardless of whether the Exempt Business possesses said premises or any part thereof as owner, through a lease or by any other means and, (2) for such purposes, neither the Exempt Business for whose benefit the construction is being caiTied out, nor its contractors or subcontractors, shall need to present a certification issued by a municipality as evidence of having paid the construction excise taxes for the issuance of any permit.

Section 2011.05.- Flexible Tax Exemption.-

The Exempt Businesses holding a Decree under this Code shall have the option of choosing the specific taxable years to be covered under their Decrees in terms of their Exempt Income, provided, that they notify to the Secretary of the DEDC and the Secretary of the Treasury not later than on the date established in the Puerto Rico Internal Revenue Code for filing their income tax return for said Taxable Year, including the time extensions granted for this purpose. Once said Exempt Businesses opt for this benefit, their exemption period shall be extended for income tax purposes for the number of taxable years in which they have not enjoyed the Decrees.

SUBCHAPTER B -  SMALL- AND MEDIUM-SIZED BUSINESSES (SMBs)

Section 2012.01.- Tax Exemption.

An Exempt Business that is a New SMBs in accordance with the provisions of this Code shall enjoy all the benefits provided in this Subchapter in addition to being subject to the provisions applicable to said Exempt Business under this Code. A Successor Business of a SMBs shall not qualify for the benefits provided for in

HEIN EXHIBIT 84

AAFAF_CONF_0007744

this Subchapter. The Exempt Income of a New SMB shall be subject to a flat income tax rate of two percent (2%) for a term of five (5) years, and four percent (4%) for the remaining period of the Decree. Moreover, the New SMB shall enjoy a one hundred percent (100%)-exemption from real and personal property taxes, as well as from municipal taxes for the first five (5) years of the Decree. For the remaining exemption period, the New SMB shall enjoy a seventy-five percent (75%)-exemption from real and personal property taxes, and a fifty percent (50%)-exemption from municipal taxes.

Section 2012.02.- Credit for Purchasing Products Manufactured in Puerto Rico.-

An Exempt Business that is a New SMB may apply to the DEDC for a Tax Credit for Purchasing Products Manufactured in Puerto Rico of up to thirty percent (30%) of the purchases of such products, subject to the provisions of Sections 3000.01 and 3000.02 of this Code.

## SUBCHAPTER C - VIEQUES AND CULEBRA

Section 2013.01.- Businesses Operating in Vieques and Culebra.

The Benefits of this Subchapter shall apply solely to the operations conducted by an Exempt Business in the island municipalities of Vieques or Culebra, subject to the criteria and limitations prescribed by the DEDC and the Department of the Treasury in the Incentives Regulations. The Exempt Businesses shall enjoy the benefits provided under this Subchapter in addition to being subject to the provisions applicable to said Exempt Businesses under this Code.

Section 2013.02.- Tax Benefits.

The Exempt Income generated from the activities carried out by an Exempt Business in the island municipalities of Vieques and Culebra shall be subject to a flat income tax rate of two percent (2%) for a period of five (5) years, and four percent (4%) for the remaining period of the Decree. Moreover, the Exempt Business

HEIN EXHIBIT 84

AAFAF_CONF_0007745

shall enJoy a one hundred percent (100%)- exemption from real and personal property taxes, as well as from municipal taxes for the first five (5) years of the Exemption Decree. For the remaining exemption period, the Exempt Business shall enjoy a seventy-five percent (75%)- exemption from real and personal property taxes, and a fifty percent (50%)- exemption from municipal taxes.

Section 2013.03.- Credit for Purchasing Products Manufactured in Puerto Rico.-

(a)     The provIs10ns of Sections 3020.01 and 3000.02 of this Code notwithstanding, an Exempt Business under this Code operating in the island municipalities of Vieques or Culebra, but only during the period it is operating from the island municipalities of Vieques or Culebra may request the DEDC a Tax Credit for Purchasing Products Manufactured in Puerto Rico of up to thirty percent (30%) of the purchases of such products, subject to the provisions of Section 3000.01 and 3000.02 of this Code.

(b)     The credit provided for in this Section shall be non-transferrable, except in the case of an exempt reorganization. The amount of the credit that is unused by the Exempt Business within a taxable year may be carried over to subsequent taxable years until it is exhausted. This credit shall not generate a refund.

SUBCHAPTER D - OTHER INCENTIVES

Section 2014.01.- Strategic Projects.

The Secretary of the DEDC, with the favorable recommendation of the Secretary of the Treasury, shall have the authority to prescribe in the Incentives Regulations those activities and projects that shall be deemed to be strategic for purposes of this Code. Moreover, as part of the Government's human resources reform, the Secretary of the DEDC, with the favorable recommendation of the Secretary of the Treasury, shall be empowered to grant incentives, through the Economic Incentive Fund and other sources that promote job development and

AAFAF_CONF_0007746

HEIN EXHIBIT 84

creation in high-impact industries deemed to be Strategic Projects. The Secretary of the DEDC and the Secretary of the Treasury shall ensure that the incentives are in the best interest and geared to the social and economic wellbeing of Puerto Rico.

Section 2014.02.- Novel Pioneering Activity.

(a)     The Secretary of the DEDC shall prescribe in the Incentives Regulations such economic activity that has not been produced or caiTied out or conducted in Puerto Rico before the twelve (12) months ending on the date on which the exemption on the novel pioneering activity was requested, and that said activity has special characteristics, attributes, or qualities that would have a beneficial impact on the socioeconomic development of Puerto Rico, including a profile of the jobs to be created by the aforementioned novel pioneering activity.

(b)     Determination of Novel Pioneering Activity.- To determine whether an activity constitutes a novel pioneering economic activity, the Secretary of the DEDC shall consider the economic impact that said activity would have on Puerto Rico, based on priority factors, in particular: (i) The degree or level of use and integration of research and/or development activities to be conducted in Puerto Rico; (ii) the tax impact that the novel pioneering activity may have in Puerto Rico; (iii) the nature of the activity with a particular interest in those that increase the competitiveness in global markets, that requires or brings about the development of the innovation capacities as well as the investment of additional capital in Puerto Rico; (iv) the investment of capital in the plant, machinery and equipment; (v) the uniqueness of the novel pioneering activity in Puerto Rico for the international market; (vi) the technological improvements that shall be a part of the operation with a paiiicular interest in the implementation of emerging or cutting-edge technologies; and (vii) any other factor that warrants the recognition of the activity as a novel pioneering activity, seeing as the activity shall serve the best economic and social interests of Puerto Rico.

AAFAF_CONF_0007747

(c)     The income of a Novel Pioneering Activity shall be subject to a flat preferential income tax rate of four percent (4%) which may be reduced up to one percent (l %), when the Secretary of the DEDC, upon previous favorable recommendation from the Secretary of the Treasury, determines that said rate shall serve the best economic and social interests of Puerto Rico. The Secretary of the DEDC shall prescribe in the Incentives Regulations such rules as are necessary to determine what would constitute a Novel Pioneering Activity as well as establish the requirements of the information that must be submitted to the Secretary of the DEDC.

## CHAPTER 2- INDIVIDUALS

### SUBCHAPTER A - ELIGIBILITY

Section 2021.01 .- Individual Investors Relocated to Puerto Rico.

Any Resident Individual Investor may apply to the Secretary of the DEDC for any of the economic benefits provided in Subchapter B of this Chapter, subject to the limitation provided in Section 2022.03(b).

Section 2021.02.- Hard to Recruit Professionals.

Any hard to recruit professionals may apply to the Secretary of the DEDC for the economic benefits provided for in Section 2022.03 of this Code. New Resident hard to recruit professionals who are granted a Decree under the Chapter shall be exempt from the ten thousand dollar ($10,000)-contribution to nonprofit organizations provided in subsection (b) of Section 6020.10.

Section 2021.03.- Qualified Physicians.

(a)     Every individual admitted to the practice of medicine or podiatric medicine, or who is a dental surgeon or a dental specialist, and meets the requirements established in Section 2023.22 of this Code, may request the Secretary of the DEDC to be granted the economic incentives provided in Section 2022.04. Every Qualified Physician who is a resident individual, as defined in Section

AAFAF_CONF_0007748

1010.01 (a)(30) of the Internal Revenue Code, shall have until September 30, 2019, to apply for a Decree under this Chapter. Moreover, every Qualified Physician who is not a resident individual as of the effective date of this Code, as defined in Section 1010.01 (a)(30) of the Internal Revenue Code, shall have until June 30, 2020, to apply for a Decree under this Chapter. No applications shall be received after the aforementioned dates, except for dental surgeons who do not practice a dental specialty, who shall have until June 30, 2020, to apply for a Decree under this Code. Provided, that applications filed after April 21, 2019, shall be considered under the provisions of this Code.

(b)      Qualified Physicians who are granted a Decree under this Chapter shall be exempt from the ten thousand dollar ($10,000)-contribution to nonprofit organizations, provided in subsection (b) of Section 6020.10.

Section 2021.04.- Investigators and Scientists.

(a)      Every Eligible Investigator and Scientist, as defined in this Code, may apply to the Secretary of the DEDC for the economic benefits provided in Section 2022.05 of this Chapter.

SUBCHAPTER B - TAX BENEFITS

Section 2022.01.- Tax Exemption to Income Derived from Interest and Dividends Earned by a Resident Individual Investor.

(a)      The income derived from all sources by a Resident Individual Investor after becoming a resident of Puerto Rico, but before January 1, 2036, consisting of interest and dividends, including but not limited to interest and dividends from a registered investment company described in Section 1112.01 of the Puelio Rico Internal Revenue Code, shall be fully exempt from income taxes in Puerto Rico, including the alte1nate basic tax provided in the Puerto Rico Internal Revenue Code. In addition, the income derived by a Resident Individual Investor after becoming a resident of Puerto Rico, but before January 1, 2036, consisting of interest, financing

AAFAF_CONF_0007749

charges, dividends or partnership interest received from International Banking Entities authorized under the "Banking Center Act," shall be fully exempt from income taxes in Puerto Rico, including the alternate basic tax provided in the Puerto Rico Internal Revenue Code.

Section 2022.02.- Special Tax for Resident Individual Investors on Net Capital Gain.

(a) Appreciation Before Becoming a Resident Individual of Puerto Rico.- The portion of the net long-term capital gain generated by a Resident Individual Investor attributable to any appreciation of the Securities or other Assets owned by such Resident Individual Investor before becoming a Resident Individual of Puerto Rico, which appreciation is recognized ten (10) years after becoming a Resident Individual of Puerto Rico and before January 1, 2036, shall be subject to a five percent (5%) tax, in lieu of any other tax imposed under the Puerto Rico Internal Revenue Code and shall not be subject to the alternate basic tax provided in Subsection A of the Puerto Rico Internal Revenue Code. If such appreciation is recognized at any other time, the net capital gain with respect to said Securities or other Assets shall be subject to income taxes in accordance with the tax treatment provided by the Puerto Rico Internal Revenue Code. The amount of the net long-term capital gain shall be limited to the portion of the gain related to the appreciation of the Securities or other Assets while the Resident Individual Investor resided outside of Puerto Rico. For taxable years after December 31, 2016, said capital gain shall be considered income from sources outside of Puerto Rico for purposes of the income tax provided in the Puerto Rico Internal Revenue Code.

(b) Appreciation after becoming a Resident Individual of Puerto Rico.- The total net capital gain generated by a Resident Individual Investor related to any appreciation of Securities or other Assets after said Resident Individual Investor becomes a Resident Individual of Puerto Rico, that is recognized before January 1,

2036, shall be fully exempt from income taxes in Puerto Rico, including the alternate basic tax provided in the Puerto Rico Internal Revenue Code. If such appreciation is recognized after December 31, 2035, the net capital gain with respect to said Securities or other Assets shall be subject to income taxes in accordance with the tax treatment provided by the Puerto Rico Internal Revenue Code. The amount of said net capital gain means the portion of the gain related to the appreciation of the Securities or other Assets owned by the Resident Individual Investor at the time of becoming a Resident Individual of Puerto Rico and those acquired by him after becoming a Resident Individual of Puerto Rico.

Section 2022.03 .- Special Tax for Hard to Recruit Professionals.

(a)     Wage income, as such term is defined in Section 1062.01 of the Puerto Rico Internal Revenue Code, earned by a Hard to Recruit Professional, up to the amount of one hundred thousand dollars ($100,000) shall be subject to income taxes provided by the Puerto Rico Internal Revenue Code. The salaries and wages and benefits in excess of one hundred thousand dollars ($100,000) shall be fully exempt from income taxes in Puerto Rico, including the alternate basic tax provided in the Puerto Rico Internal Revenue Code.

(b)     To receive this tax benefit on account of earned wage income, the Hard to Recruit Professional shall have to hold a Full-Time position at an Exempt Business with a valid Decree, as established in this Code. Moreover, to avail himself of the benefits provided in this Section, the Hard to Recruit Professional may not benefit from the provisions of Sections 2022.01 and 2022.02, nor hold a decree under Act No. 22-2012, as amended, known as the "Act to Promote the Relocation of Individual Investors to Puerto Rico."

Section 2022.04.- Special Tax for Qualified Physicians.

(a)     Tax Benefits.-

(1)     Income Tax.-

HEIN EXHIBIT 84

AAFAF_CONF_0007751

(i)      The Eligible Income generated by Qualified Physicians holding a Decree granted under this Code earned shall be subject to a preferential flat income tax rate of four percent (4%), in lieu of any other income tax provided in the Puerto Rico Internal Revenue Code or any other law. The Eligible Income shall be that generated from offering Professional Medical Services for the duration of the Decree, beginning on the effective date thereof. The effective date shall be set as follows:

(A)      The effective date of a Decree shall be January 1 of the Taxable Year in which the Qualified Physician files the Decree application.

(B)      When the Decree is granted to a Qualified Physician who as of the date of approval of the Decree is not a Resident Individual, the effective date thereof shall be January 1 of the Taxable Year in which the Qualified Physician transfers to Puerto Rico to practice medicine and becomes a Resident Individual of Puerto Rico.

(C)      When the Decree is granted to a Qualified Physician who is a Resident Individual of Puerto Rico who is in an accredited residency program as of the approval date of the Decree, the effective date shall be January 1 of the Taxable Year in which the Qualified Physician establishes his practice in Puerto Rico and becomes Resident Individual of Puerto Rico.

(D)      When the Decree is granted to a Qualified Physician who is not a Resident Individual of Puerto Rico as of the approval date of the Decree and is in an accredited residency program, the effective date shall be January 1 of the Taxable Year in which the Qualified Physician establishes his practice in Puerto Rico and becomes Resident Individual of Puerto Rico.

(ii)      Exemption Applicable to Income from Earned Dividends.- The Eligible Dividends earned by Qualified Physicians shall be exempt from income tax withholding at the source and from the payment of income taxes in Puerto Rico,

HEIN EXHIBIT 84

AAFAF_CONF_0007752

including the alternate basic tax provided in the Code, up to a maximum of two hundred and fifty thousand dollars ($250,000) per Taxable Year.

(b)    Exemption Period.- Every Qualified Physician holding an exemption Decree granted under this Code shall enjoy the benefits of this Code for a period of fifteen (15) years, provided, that during said period he meets the aforementioned requirements.

(c)    Decree Extension.- Any Qualified Physician who, throughout his exemption period, has met the requirements and complied with the conditions established in the Decree, and shows to the Secretary of the DEDC that the extension of said Decree shall serve the best economic and social interests of the people of Puerto Rico, may request the Secretary an extension of his Decree for fifteen (15) additional years, for a total of thirty (30) years. Provided, that for a period that shall never exceed three (3) years during which a Qualified Physician renders services as an official of the agencies or instrumentalities of the Government of Puerto Rico or public corporations, even when not rendering medical services, the Qualified Physician may use this fact as the basis to request a dispensation from meeting the requirement of working as a full-time Qualified Physician and not have his Decree revoked. The Secretary shall evaluate the request using at least the same requirements provided in this subsection for the evaluation of Decree extensions.

Section 2022.05.- Exemption for Investigators or Scientists

(a)    It is hereby provided an exemption from income tax on compensation earned by an Eligible Investigator or a Scientist for services rendered to the University of Puerto Rico and to all those higher education institutions authorized to operate in Puerto Rico for Eligible Scientific Research up to a sum equal to the maximum established by the NIH for grants for the salaries of investigators who receive grants from the NIH for the applicable period pursuant to the notices published by the Institutes; however, the exempted amount shall not exceed one

HEIN EXHIBIT 84

AAFAF_CONF_0007753

hundred ninety-five thousand dollars ($195,000). Any income that an Eligible Investigator or a Scientist may earn for services rendered to natural or juridical persons other than the University of Pue1io Rico or other Higher Education Institution shall be excluded from this benefit.

(b)     It is hereby provided an exemption from income tax on compensation earned by an Eligible Investigator or a Scientist for services rendered on account of science and technology research and development activities can-ied out in the district established in Section 7 of Act No. 214-2004, as amended, up to the amount of two hundred and fifty thousand dollars ($250,000). For purposes of this subsection, the term "Eligible Investigator or Scientist" means a Resident Individual of Puerto Rico during the Taxable Year, hired by an institution in the district of Act No. 214-2004, who engages mainly in science and technology research and development activities. The Secretary of the DEDC shall make a final determination in accordance with the Incentives Regulations, or any circular letter, administrative determination, or any other information document.

(c)     Any investigator or scientist who avails himself of the benefits under this Section shall complete at least sixty (60) annual hours of community service in areas and tasks designated by the Secretary of the DEDC.

Section 2022.06.- Student Loan Repayment Program for Physicians, Dentists, Veterinarians, and Scientific Investigators with Research-Intensive Doctoral Degrees in Health

(a)     Subject to the availability of funds, the Secretary of the DEDC shall establish and incentives program geared toward defraying the student debt of physicians, dentists, veterinarians, and scientific investigators with research-intensive doctoral degrees in health who graduated after the effective date of this Code and, in the case of physicians, dentists, veterinarians who meet the requirements of the United States Medical Licensing Examination or the National

AAFAF_CONF_0007754

Board Dental Examinations, or the licensure requirements applicable to veterinarians, as the case may be, who agree to establish a private medical, dental, veterinary, or health-related scientific investigation practice and remain in Puerto Rico for a period of seven (7) consecutive years. The Secretary of the DEDC shall give priority to those physicians, dentists, veterinarians, or scientific investigators who studied medicine, dental medicine, veterinary, or health-related scientific investigation in Puerto Rico. The exemption may be of up to a maximum of sixty-five thousand dollars ($65,000) to defray the student debt, subject to the regulations to be approved by the Secretary and taking into consideration the availability of funds. The exemption shall be payable at the beginning of the seven (7)-year period, which shall begin to elapse once the physician, dentist, veterinarian, or health-related scientific investigator and the Secretary of the DEDC execute the pertinent incentive contract. The seven (7)- year period may be interrupted until a physician completes his specialty or subspecialty studies outside of Puerto Rico. If the seven (7)-year commitment requirement is not met during the first two (2) years, the physician, dentist, veterinary, or health-related scientific investigator shall pay back to the Government one hundred percent (100%) of the grant received. If such noncompliance occurs during the third (3 rd) year, the penalty shall be to pay back seventy percent (70%) of the grant received; and if it occurs on the fourth (4 th) year, and thereon, it is hereby provided that the aforementioned pay-back percentage shall be reduced at a rate of five percent (5%) per year until the seven (7)-year period elapses.

(b)    The Secretary of the DEDC shall prescribe through regulations the eligibility criteria, the maximum amounts, and the terms under which this benefit shall be granted, among which the following may be considered without it constituting a limitation: (i) medical, dental, veterinary, or health-related specialties or subspecialties for which physicians are scarce; (ii) geographical areas where

AAFAF_CONF_0007755

primary physicians, dentists, veterinarians, or health-related scientific investigators are scarce; and (iii) geographical areas where the physician, dentist, veterinarian, or health-related scientific investigator shall render services. In the case of pediatric medicine, however, this geographical area criteria shall not apply. Provided, however, that the rest of the criteria shall apply to pediatric medicine.

(c)    The funds for this program shall derive from the Economic Incentives Fund.

(d)    Every scientific investigator who availed himself of the benefits of either Section 2022.05 or 2022.06 of this Code shall complete at least sixty (60) annual hours of community service in areas and tasks designated by the Secretary of the DEDC.

Section 2022.07.- Resident Individual Investor Trust.

(a)    Grantor Trust-Any Resident Individual Investor to whom a Decree has been issued under the provisions of this Code may set up trusts under the laws of Puerto Rico and, in doing so, such investor may elect that such trust be treated as a grantor trust for Puerto Rico income tax purposes. Such election shall be made in accordance with the rules established by the Secretary of the Treasury, regardless of whether such trust is not otherwise deemed to be a grantor trust under the applicable income tax rules of the Puerto Rico Internal Revenue Code. In such case, the nature of any item of income, gain, loss, deduction, or credit included in the income attributable to the grantor under the Puerto Rico Internal Revenue Code shall be determined as if such item were realized directly from the source from which it was realized by the trust or incurred in the same manner as incurred by the trust. An election made under this subsection, once realized, may only be revoked through the procedure established by the Secretary of the Treasury for such purposes.

(b)    Revocable Trust.- Any Resident Individual Investor to whom a Decree has been issued under the provisions of this Code may set up revocable and

AAFAF_CONF_0007756

i1Tevocable trusts under the laws of Puerto Rico, as established by the grantor in the trust instrument; provided, that absent a provision to such purposes, it shall be presumed i1Tevocable. Revocable trusts set up in accordance with this provision may only be revoked by the grantors, or by the grantor who retains such authority under the trust instrument.

(c)     Trusts Created Outside of Puerto Rico.- The provisions of any trust validly created outside of Puerto Rico by a Resident Individual Investor to whom a Decree has been issued under the provisions of this Code shall not be challenged by any person based on any Law or Regulation of Puerto Rico that may be contrary to or inconsistent with the provisions of said Trust. This Section shall continue to apply to such Trusts after the expiration of the exemptions granted under this Code, provided that the Decree has not been revoked in accordance with Section 6020.09(a).

(d)     Any Resident Individual Investor to whom a Decree has been issued under the provisions of this Code may freely transfer or donate during his lifetime, and at his entire discretion, all or part of his assets to the trusts described in this Section, regardless of whether such property is real or personal, tangible, or intangible, of the location thereof, and of any other legal or regulatory provision in Puerto Rico that is contrary or inconsistent with said transfer, donation, the testamentary provisions of the estate and/or the terms and conditions of said Trusts including, but not limited to, the provisions of the Civil Code of Puerto Rico. This Section shall continue to apply to such individuals after the expiration of the exemptions granted under this Code, provided that the Decree has not been revoked in accordance with Section 6020.09(a).

SUBCHAPTER C - REQUIREMENTS FOR GRANTING EXEMPTIONS

Section 2023.01.- Decree Application Requirements.

HEIN EXHIBIT 84

AAFAF_CONF_0007757

(a)     General Rule.- Any individual who qualifies for the benefits established in this Chapter may request the benefits of this Code by filing an application with the Secretary of the DEDC in accordance with the provisions of Subtitle F of this Code.

(b)     Any person may apply for the applicable benefits of this Code, provided that such person meets the eligibility requirements of Subchapter A of this Chapter, and any other criteria as prescribed by the Secretary of the DEDC in the Incentives Regulations, an administrative order, a circular letter, or any other general communication, including as an evaluation criteria the contribution of such Eligible Business to Puerto Rico's economic development.

(c)     Every Resident Individual Investor shall enclose evidence of payment of the annual contribution of at least ten thousand dollars ($10,000) to nonprofit entities that operate in Puerto Rico, are certified under Section 1101.01 of the Puerto Rico Internal Revenue Code, and are not controlled by the same person holding the Decree, nor his ascendants or descendants. The evidence of payment of the annual contribution to nonprofit entities shall be included as part of the annual report required in subsection (a) of Section 6020.10.

Section 2023.02.- Qualified Physicians Decree Application Requirements

(a)     Applicants shall meet the following requirements:

(1)     To maintain their Qualified Physician status, as defined in this Code;

(2)     To practice medicine or podiatric medicine, or be a dental surgeon or a dental specialist on a Full-time Basis;

(3)     To be a Resident Individual of Puerto Rico;

(4)     To comply with their tax liability in accordance with this Code or any other applicable law;

HEIN EXHIBIT 84

AAFAF_CONF_0007758

(5)     To complete community service hours as provided in paragraph (1) of subsection (b) of this Section;

(6)     Medical Practice-

(i)     When the applicant is a Qualified Physician who is in an accredited residency program, regardless of whether or not he is a Resident Individual of Puerto Rico, if the Secretary of the DEDC makes a favorable determination, the Decree may be granted and the Qualified Physician shall have one hundred and twenty (120) days from the date he obtained his specialty or subspecialty degree to establish his medical or dental practice in Puerto Rico. This subparagraph shall also apply to Qualified Physicians who are not Resident Individuals of Puerto Rico, who are not in a residency program and have an established medical or dental practice outside of Puerto Rico.

(ii)     When the applicant is a Qualified Physician who is not Resident Individual of Puerto Rico, if the Secretary of the DEDC makes a favorable determination, the Decree may be granted and the Qualified Physician shall have one hundred and twenty (120) days from the date to become a Resident Individual and establish his medical or dental practice in the geographical area indicated in the application.

(7)     To fulfill any other requirement as established in the Decree.

(b)     Requirements-

(I)     Community Service.-

(A)     Every Qualified Physician holding a Decree granted under this Code shall complete the equivalent of one hundred and eighty (180) annual hours of community service without pay, in accordance with the rules adopted by the Secretary of Health.

(B)     The eligible community service that a Qualified Physician may provide includes, without limitation: (i) assisting, or being part of the faculty at

AAFAF_CONF_0007759

a teaching hospital or schools of medicine, in the education of medical students, residents or other health professionals, and in the Intramural Practice Plans of schools of medicine; (ii) rendering medical services in regions that have been identified by the Puerto Rico Surgeons Association or the College of Dental Surgeons of Puerto Rico, as the case may be, in conjunction with the Department of Health of Puerto Rico as having shortages of certain specialized medical and dental care services; (iii) providing nightshift services at the hospitals selected by the Puerto Rico Surgeons Association and the Department of Health of Puerto Rico; (iv) offering seminars on prevention and other health topics to the community or for the training or continuing education of medical and dental students and professionals in Puerto Rico; (v) rendering Professional Medical Services to underserved populations though nonprofit entities.

Alternatively, a Qualified Physician may meet the requirement provided in this subparagraph of rendering medical or dental services as part of a service contract with the Health Insurance Plan of the Government of Puerto Rico. In this alternative, the Qualified Physician shall fulfill the requirement of one hundred and eighty (180) hours, but the services do not have to be offered free of charge and may be offered as an employee or independent contractor of the person or entity contracting with the Health Insurance Plan of the Government of Puerto Rico.

The Secretary of the DEDC may prescribe in the Incentives Regulations, a circular letter, or administrative determination, the community service requirements provided for in this Code. The Secretary of the DEDC shall request and consider the proposals of the Surgeons Association. The rules to be adopted shall establish the oversight methods necessary to ensure compliance by Qualified Physicians with their obligation to render community service.

AAFAF_CONF_0007760

HEIN EXHIBIT 84

(c)     Evaluation Criteria for Decree Applications Filed by Qualified Physicians.-

(1)     Prior to the granting of a Decree under this Code, the Secretary of the DEDC shall determine whether such Qualified Physician shall serve the best economic and social interests of the people of Puerto Rico.

(2)     The criteria to determine whether the granting of a Decree shall serve the best economic and social interests of the people of Puerto Rico are the following:

(i)     The Decree's economic impact.

(ii)     The specialties and subspecialties that the applicant physician has or shall have upon completing an accredited residency program.

(iii)     Whether there is a shortage in Puerto Rico of this type of specialized physicians, and the number of physicians with this specialty or subspecialty rendering services in Puerto Rico.

(iv)     The geographical areas where the physician renders or shall render services.

(3)     It shall be understood that a Decree serves the best economic and social interests of the people of Puerto Rico when:

(i)     The physician has a specialty or ĺs completing his residency to obtain said specialty and the Secretary of Health has indicated that said specialty waiŤants the incentive by reason of shortage of physicians; or

(ii)     The applicant is a general practitioner who provides pn̄mary healthcare services in a geographical area where, according to the Department of Health, there is a shortage of physicians or a pressing need that warrants the granting of the incentive.

(iii)     Qualified Physicians who are not Resident Individuals of Puerto Rico, as defined in Section 1010.0l(a)(30) of the Internal Revenue Code for

AAFAF_CONF_0007761

a New Pue1io Rico, and who apply for a Decree by June 30, 2020, under Section 2021.03 of this Code, may not be subject to the requirements established in this subsection (c), as prescribed by the Secretary of the DEDC in the Incentives Regulations, an administrative order, a circular letter, or any general communication.

SUBCHAPTER D - SPECIAL PROVISIONS

Section 2024.01.- Qualified Physicians - Decree Revocation

(a)     Grounds for the Decree Revocation:

(1)     A Decree issued in favor of a Qualified Physician shall be revoked immediately and be rendered ineffective when any of the following occurs:

(i)     The residency requirement established in paragraph (3) of subsection (a) of Section 2023.02 of this Code is not met or the Qualified Physician ceases to be a Resident Individual of Puerto Rico;

(ii)     He ceases to be a Qualified Physician, as defined in this Code;

(iii)     He ceases to practice his profession on a Full-Time basis in Puerto Rico;

(iv)     He fails to fulfill the annual community service hours required under Section 2023.02(b) of this Code; or

(v)     He fails to meet any other requirement established in this Code or in the Incentives Regulations, a circular letter, or administrative determination.

(b)     If a Decree is revoked under the aforementioned grounds, the individual shall be required to remit to the Department of the Treasury an amount equivalent to all the unpaid income taxes on account of Eligible Income and Eligible Dividends of Qualified Physicians for the three (3) Taxable Years prior to the revocation of the Decree or for the duration of the Decree, whichever is less. Said payment shall be remitted not later than sixty (60) days after the effective date of the revocation of the

AAFAF_CONF_0007762

Decree. If the physician, however, furnishes satisfactory evidence attesting to the fact that such noncompliance was due to a disability or illness whether his, his spouse's, his children's, or his parents', the Secretary of the DEDC shall proceed with the Decree revocation, but the individual shall only be required to remit to the Department of the Treasury an amount equivalent to all the income taxes unpaid on account of Eligible Income and Eligible Dividends of Qualified Physicians beginning the Taxable Year of the revocation.

SUBCHAPTER E - YOUTH PROGRAMS, STUDENT INTERNSHIPS, ENTREPRENEURSHIP, AND FIRST JOB EXPERIENCE FOR YOUTHS, AND ELDERLY PROGRAMS

Section 2025.01 - Youth Programs, Student Internships, Entrepreneurship, and First Job Experience for Youths

(a)    It shall be the public policy of the Government of Puerto Rico to develop and promote programs, initiatives, internships, and first job experiences for youths as well as initiatives that promote the creation of microbusinesses or the development of self-sufficiency and the entrepreneurial culture within out youths in a manner that is not limited to formal teaching in a classroom. Through these programs, Youths shall have development experiences that foster an enterprising and innovation culture that allows Youths to enter the labor market having acquired the best skills and/or have enough support to become new entrepreneurs.

For purposes of this Section, the term "Youths" means every Resident Individual of Puerto Rico between the ages of thirteen (13) and twenty-nine (29) years.

(b)    Our goal with these programs is for Youths to be able to acqnire experiences, knowledge, and educational skills, and become part of the forward-thinking culture open to entrepreneurship which allows them to have the utmost professional and social development and performance as well as guarantee their

AAFAF_CONF_0007763

HEIN EXHIBIT 84

socioeconomic wellbeing, and promote the development and the attainment of their aspirations as citizens of Puerto Rico.

The Secretary of the DEDC shall prescribe in the Incentives Regulation the criteria and requirements applicable to the internship applications, provided that participants shall be students at the vocational, technical, undergraduate, graduate or postgraduate level who have completed at least one academic semester leading to the appropriate degree and are enrolled in duly accredited institutions. In doing so, the Secretary of the DEDC shall prescribe in the Incentives Regulations the criteria and requirements that promote entrepreneurship, an enterprising culture, innovations, as well as their scope and operations.

(d)[sic]  The funds for the program described in this Section shall derive from the Economic Incentives Fund.

Section 2025.02.- Programs for the Elderly

(a)    It shall be the public policy of the Government of Puerto Rico to promote and achieve the full development of Elderly Persons through education and training so they can enter the workforce and/or become entrepreneurs and thus contribute to Puerto Rico's economic development.

(b)    The intent of the Programs for the Elderly is that they are able to enter the workforce and contribute as part of the productive sector, as well as develop their potential as entrepreneurs so that, in turn, they further economic growth through their entrepreneurial efforts, thus guaranteeing their economic welfare in the long-term.

(c)    The Secretary of the DEDC shall prescribe in the Incentives Regulations the criteria and requirements applicable to the Programs for the Elderly as well as their scope and operations.

(d)    The funds for the program described in this Section shall derive from the Economic Incentives Fund.

SUBCHAPTER F - MY FUTURE ACCOUNT

AAFAF_CONF_0007764

HEIN EXHIBIT 84

Section 2026.01.- My Future Account

(a)     For purposes of this subchapter, the term My Future Account shall mean a trust created or organized by the Government of Puerto Rico under the laws of the Gove1nment of Puerto Rico for the exclusive benefit of students of the public education system of the Government of Puerto Rico who meet the following requirements, which shall be stated in the trust instrument:

(1)     The account shall be for the sole benefit of students who enroll in the public education system of the Government of Puerto Rico, starting in kindergarten. The account may be available for students in the private schools of Puerto Rico, subject to the regulations to be issued by the Secretary of the DEDC, in accordance with subsection (d) of this Section.

(2)     The fund shall be administered by a bank, a savings and loan association, a savings bank, a brokerage firm, a trust company, an insurance company, a federation of savings and credit unions, a savings and credit union, a life insurance cooperative, or any other financial institution designated by the Puerto Rico Fiscal Agency and Financial Advisory Authority (FAFAA) and duly certified by the Financial Institutions Commissioner to act as trustee. The trustee designated in accordance with this subsection shall meet the requirements herein established.

(3)     The funds in the My Future Account shall be invested pursuant to Act No. 113 of 1995 and consistent with the objectives of this program to guarantee their feasibility and maintenance in the long-term.

(4)     The Government shall make an initial contribution of one thousand dollars ($1,000) for each eligible beneficiary. Provided, that any other person may make additional contributions to the My Future Account, including natural persons whether or not related to the beneficiary, private entities, any agency, instrumentality or public corporation of the Government of Puerto Rico, the Legislative Assembly through special appropriations, the municipalities, and any

AAFAF_CONF_0007765

HEIN EXHIBIT 84

other public or private natural or juridical person, whether domestic or foreign, to be defined through regulations.

(5)    The initial contribution of the Gove1nment of Puerto Rico shall derive from the General Fund or any other source as established through special legislation. A private individual or entity may make annual contributions in cash which shall not exceed the maximum amount allowable as contribution to an education savings account, in accordance with Section 1081.05 (a)(5)(A) of the Internal Revenue Code.

(6)    The funds shall be held in a common trust or a common investment fund, however, a separate accounting shall be held for each account.

(7)    The total balance of the My Future Account shall be distributed to each beneficiary after graduating from high school. Said funds may be used only to pay for the college, technical, or vocational studies, or as initial capital for the business of the beneficiary, and shall be distributed pursuant to the regulations approved for such purposes by the Secretary of the DEDC, in consultation with FAFAA, in accordance with the provisions of subsection (d) of this Section.

(8)    If the beneficiary abandons his studies or fails to meet the requirements established in the regulations to receive the distributions from the account, ceases to be a resident of Puerto Rico before graduating from high school, or dies before the entirety of the account funds have been distributed, the My Future Account shall be rendered inactive and the available balance shall be distributed to the persons who contribute, proportionately to their respective contributions; provided, that the money contributed by the Government of Puerto Rico shall revert to the General Fund to be used in the My Future Accounts Program under this Section.

(9)    The ownership of the account shall belong to the eligible beneficiary for whom the account was created. The Government of Puerto Rico,

AAFAF_CONF_0007766

however, and any person who has contributed therein shall retain the rights stipulated for in paragraph (i)[sic] of this subsection (a), regarding the return of the amounts contributed under the circumstances described in said Section.

(10)   Except as provided in this Section and Section 1081.05 of the Internal Revenue Code, the total balance of the my future account created in the name of the eligible beneficiaries: (i) shall be irrevocable and non-transferable by law, (ii) shall not be subject to forfeiture, revocation, or withdrawal by the persons who contributed the funds, (iii) may not be pledged as collateral for a loan, and (iv) shall remain in the trust until distributed for the purposes established in this Section.

(b)      The Puerto Rico Fiscal Agency and Financial Advisory Authority shall be responsible for organizing the trust, executing the appropriate trust instrument, and ensuring that the latter is administered in compliance with the provisions of this Section.

(c)      The My Future Account shall be subject to the provisions of Section 1081.05(c) of the Internal Revenue Code pertaining to the distribution of the account assets, Section 1081.05(d) of the Intel11al Revenue Code pertaining to the tax treatment of the accounts, and Section 1033.15(a)(8) of the Internal Revenue Code pertaining to the tax deduction for account contributions. Likewise, the My Future Accounts trustees shall meet the requirements established by the Financial Institutions Commissioner applicable to the trustees of education savings accounts under Section 1081.05 of the Internal Revenue Code.

(d)      The Secretary of the DEDC, in consultation with the Secretary of the Treasury and the Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority shall establish through regulations the eligibility criteria and any other requirements for the My Future Account.

## CHAPTER 3- EXPORT OF GOODS AND SERVICES
## SUBCHAPTER A - ELIGIBILITY

AAFAF_CONF_0007767

Section 2031.01.- Export of Services.

(a)     Eligible Activities.- Any Person with an office or bona fide establishment located in Puerto Rico which carries out or may carry out the following service activities, inside or outside Puerto Rico, that are, in turn, considered Services for Export or Promoter Services shall be considered an Eligible Business for the benefits of this Section:

(1)     Research and development;

(2)     Advertising and public relations;

(3)     Economic, environmental, technological, scientific, managerial, marketing, human resources, computer, and auditing consulting services;

(4)     Consultancy for issues related to any trade or business;

(5)     Creative Industries as defined in Section 1020.09 of this Code, including the sale of tickets outside of Puerto Rico, or the sale of tickets bought by tomists in Puerto Rico as well as income related to the broadcasting or the sale of copyrights for a recording intended for audiences outside of Puerto Rico, of shows and music productions, and eSports and Fantasy Leagues events to be brought to Puerto Rico;

(6)     Drafting of construction plans and engineering, architectural, and project management services;

(7)     Professional services such as legal, tax, and accounting services;

(8)     Centralized management services including, but not limited to, strategic direction, planning, distribution, logistics, and budgetary services rendered in the headquarters or similar regional offices by an Entity engaged in the rendering of such services. Furthermore, strategic and organizational planning services, distribution services, and logistics services rendered to persons outside of Puerto Rico shall also be eligible;

(9)     Electronic data processing centers;

AAFAF_CONF_0007768

(10)   Computer software development;

(11)   Distribution, whether it is physical, online, through the cloud, or related to blockchain technology, and the income earned from the licensing, program subscriptions, or services fees;

(12)   Voice, video, audio, and data telecommunications between persons located outside Pue1io Rico;

(13)   Call centers;

(14)   Shared service centers including, but not limited to, accounting, finance, tax, auditing, marketing, engineering, quality control, human resources, communications, electronic data processing, and other centralized management services;

(15)   Educational and training services;

(16)   Hospital and laboratory services including Medical Tourism and telemedicine sites;

(17)   Investment banking and other financial services including, but not limited to: (a) Asset management services; (b) alternative investment management; (c) management of activities related to private equity management; (d) management of hedge funds or high risk funds; (e) management of pools of capital; (f) management of trusts that serve to tum different types of assets into stocks, and (g) management services for escrow accounts, insofar as these services are provided by foreign persons;

(18)   Marketing centers engaged primarily in providing, through leasing, service, or other type of fees, space and services such as: secretarial, translation, and data processing services, communications, marketing, telemarketing, and other consulting services to businesses outside of Puerto Rico, including export and marketing companies, commercial attaches, government

AAFAF_CONF_0007769

HEIN EXHIBIT 84

agencies responsible for foreign trade, exchange, and product and service exhibition centers; and/or

(19)   Any other service that the Secretary of the DEDC, in consultation with the Secretary of the Treasury, determines that shall be treated as an eligible service because it is deemed to be in the best interest and for the social and economic wellbeing of Puerto Rico, taking into account the demand that there may be for such services outside Puerto Rico, the total number of jobs to be created, its payroll, the investment that the sponsor would make in Puerto Rico, or any other factor that wanants special consideration.

(b)   A service shall be deemed to be a Service for Export when such service is rendered to benefit the following:

(1)   A Foreign Person, provided that the services do not have a Connection to Puerto Rico.

(2)   A trust whose beneficiaries, trustors, and trustees are not Resident Individuals of Puerto Rico, provided that the services do not have a connection to Puerto Rico.

(3)   An estate whose decedent, heirs, legatees, or executors are not Resident Individuals of Puerto Rico, or in the case of the decedent, had been a Resident Individual of Puerto Rico, provided that the services do not have a Connection to Puerto Rico.

(4)   A Person engaged in business in Puerto Rico, provided that the services do not have a Connection to Puerto Rico, and the services are intended for a client of said Person that complies with any of the provisions listed in this subsection.

(5)   Any other criteria, requirement, or condition for a service to be deemed to be a service for export may be prescribed in the Incentives Regulations, an administrative order, a circular letter, or any other general communication, taking

AAFAF_CONF_0007770

HEIN EXHIBIT 84

into account the nature of the services rendered, the direct or indirect beneficiaries, and any other pertinent factor to achieve the objectives of this chapter.

(c)    Services, including Services for Export, shall be deemed to have a Connection to Puerto Rico when they are somehow related to Puerto Rico, including services associated with the following:

(1)    Business or profitable activities which have been or shall be carried out in Puerto Rico;

(2)    Advice on the laws and regulations of Puerto Rico, procedures and administrative orders of the Govel11ment of Puerto Rico, its agencies, public corporations, instrumentalities, or municipalities, as well as the precedents of the Courts of Puerto Rico;

(3)    Lobbying with respect to the laws of Puerto Rico, regulations, and other administrative orders. For these purposes, lobbying shall mean any direct or indirect contact with elected officials, employees, or agents of the Government of Puerto Rico, its agencies, instrumentalities, public corporations, or municipalities with the intent of influencing any action or determination of the Government of Puerto Rico, its agencies, instrumentalities, public corporations, or municipalities;

(4)    The sale of any property for use, consumption, or disposition in Puerto Rico; or

(5)    Any other activity, situation, or circumstance related to Puerto Rico that is prescribed in the Incentives Regulations or other determination, administrative decision, or circular letter.

(d)    The Secretary of the DEDC may include in the Incentives Regulations any other criterion, requirement, or condition for a service to be considered a Service for Export, taking into consideration the nature of the services rendered, the direct or indirect benefits of such services, and any other pertinent factor to achieve the objectives of this Code.

AAFAF_CONF_0007771

(e)     Promoter services may be treated as Services for Export regardless of whether these services have a Connection to Puerto Rico.

(f)     An Eligible Business that renders Services for Export or Promoter Services may also engage in any other activity, trade, or business insofar as it keeps, at all times, a system of books, records, documentation, accounting, and billing that clearly shows, to the satisfaction of the Secretary of the Treasury, all income, costs, and expenses incurred while rendering Services for Export or Promoter Services. An activity consisting of rendering services as an employee does not qualify as an Eligible Business.

(g)     The provisions of any other law notwithstanding, licensing requirements related to professional services shall not apply to Eligible Businesses, their partners, shareholders, employees, or officials, insofar as the services offered are not rendered to Domestic Persons. Eligible Businesses shall comply with the licensing laws and requirements applicable in the jurisdiction where their services are exported.

(h)     The Secretary of the DEDC shall prescribe in the Incentives Regulations, the circumstances and conditions under which a business may be designated as an Eligible Business. For purposes of this Chapter, any applicant who receives or has received tax benefits or incentives under Act No. 20-2012, as amended, Act No. 73-2008, as amended, Act No. 135-1997, as amended, Act No. 8 of January, 24, 1987, as amended, any previous or subsequent tax incentives law, or any other special law of the Government of Puerto Rico that provides benefits or incentives similar to those provided in this Chapter, as determined by the Secretary of the DEDC in consultation with the Secretary of the Treasury, shall be deemed to be an Eligible Business.

Section 2031.02.- Export Trade.

AAFAF_CONF_0007772

(a)     Eligible Activities.- It shall be deemed to be an Eligible Business for purposes of the benefits provided under this Section, any Person with an office or bona fide establishment located in Puerto Rico who engages or may engage in business as a trading company that derives not less than eighty percent (80%) of its gross income from:

(1)     The sale to Foreign Persons, for use, consumption, or disposition outside of Puerto Rico, of products purchased by the Eligible Business for resale;

(2)     Commissions derived from the sale of products for use, consumption, or disposition outside of Puerto Rico; provided, however, that no part of the income derived from the sale or resale of products for use, consumption, or disposition in Puerto Rico shall be deemed to be Export Trade Income;

(3)     The sale of products manufactured or harvested upon request, to Foreign Persons, for use, consumption, or disposition outside of Puerto Rico;

(4)     The sale or distribution to Persons outside of Puerto Rico of intangible products, such as patents, copyrights, digital content, and trademarks, among others;

(5)     Storage, transportation, and distribution hubs for products and articles belonging to third parties;

(6)     The commercial distribution of products manufactured or harvested in Puerto Rico for jurisdictions outside of Puerto Rico;

(7)     The assembly, bottling, and packaging operations of products for export;

(8)     Any other international trading activity to be included in the Incentives Regulations, taking into consideration the nature of the activities carried out, the direct or indirect benefits of the commercial activity for Puerto Rico, and any other factor pertinent to achieve the objectives of this Code, when such treatment

AAFAF_CONF_0007773

is deemed to be in the best interest and for the social and economic wellbeing of Puerto Rico.

(b)     An eligible activity may be deemed to be an Export Trade activity, provided that it has no Connection to Puerto Rico.

(c)     Export Trade activities shall be deemed as having a Connection to Puerto Rico when they are somehow related to Puerto Rico, including activities associated with the following:

(1)     the sale of any property for use, consumption, or disposition in Puerto Rico; or

(2)     any other activity, situation, or circumstances that the Secretary of the DEDC prescribes in the Incentives Regulations or other determination, administrative decision, or circular letter as having a connection to Puerto Rico.

(d)     The Secretary of the DEDC shall prescribe in the Incentives Regulations, the circumstances and conditions under which a business may be designated as an Eligible Business. For purposes of this Section, any applicant who receives or has received tax benefits or incentives for the export of goods or services similar to those provided in this Section under Incentives Laws Previous or subsequent to Act No. 20-2012, as amended, Act No. 73-2008, as amended, Act No. 135-1997, as amended, Act No. 8 of January, 24, 1987, as amended, or any other special law of the Government of Puerto Rico, as determined by the Secretary of the DEDC, shall be deemed to be an Eligible Business.

SUBCHAPTER B - TAX BENEFITS

Section 2032.01.- Tax on Income from Export of Services and Promoter Services.

(a)     General Rule- The net income derived from Export of Services or Promoter Services, as provided in subsection (a) of Section 2031.01 of this Code, shall be subject to a flat preferential income tax rate of four percent (4%) in lieu of

AAFAF_CONF_0007774

any other income tax, if any, provided by the Puerto Rico Internal Revenue Code or any other law.

(b)    Special Rules for Promoter Services.- The Eligible Business shall report the income, expenses, deductions, and concessions of Promoter Services in the Taxable Year in which said items are recognized in the Internal Revenue Code. However, the Secretary of the DEDC, in consultation with the Secretary of the Treasury, may allow in the Incentives Regulations a method to recognize said items when the conditions that shall apply to an Entity that is Affiliated, as such term is defined in Section 1020.01 of this Code, are met after the Taxable Year in which the income would be otherwise recognized in the Internal Revenue Code.

(c)    Limitation of Benefits.- If on the filing date of the application for a Decree, pursuant to the provisions of this Code, an Exempt Business was engaged in the Export of Services or Promoter Services for which the benefits of this Chapter are granted, or was engaged in such activity at any time during the three (3) Taxable Years prior to the date on which the application was filed, called the "base period," the Exempt Business may enjoy the flat income tax rate provided in subsection (a) of this Section, only with regards to the increase in the net income which said activity generates over the average net income of the "base period" which shall be denominated "base period income," for purposes of this Subchapter.

(1)    The net income of any business that preceded the applicant business shall be taken into account in order to determine base period income. For such purposes, "predecessor business" shall include any operation, activity, trade, or business carried out by another business and which was transferred or otherwise acquired by the applicant business, without taking into account whether it was operating under another legal name or owner.

(2)    The base period income shall be subject to the income tax rates provided in the Puerto Rico Internal Revenue Code. In the case of Entities with tax

AAFAF_CONF_0007775

HEIN EXHIBIT 84

exemption Decrees for Services for Export activities pursuant to Act No.73-2008, Act No. 135-1997, and Act No. 8 of January 24, 1987, the flat rate established in the Decree for the base period income shall apply, and the distribution of the earnings or profits stemming from such income shall not qualify for the treatment provided in Chapter.

(3)   The base period income shall be adjusted reducing such amount by twenty-five percent (25%) annually, until reduced to zero (0) for the fourth Taxable Year to which the terms of the Decree of the Exempt Business apply, as provided in this Chapter.

(d)   Distributions from earnings or profits.

(1)   General Rule.- The shareholders, partners, or members of an Eligible Business holding a Decree granted under this Chapter shall not be subject to income tax on distributions of dividends from earnings or profits arising from Income from Export of Services of the Eligible Business. Subsequent distributions from Income from the Export of Services made by any corporation or Entity filing as a corporation or any partnership shall also be exempt from all taxes.

(2)   Distributions described in paragraph (1) above shall also be excluded from:

(i)   The net income subject to the alternate basic tax of an individual for purposes of the Puerto Rico Internal Revenue Code;

(ii)   The alternative minimum net income of a corporation for purposes of the Puerto Rico Internal Revenue Code;

(iii)   The adjusted net income according to the books of a corporation for purposes of the Puerto Rico Internal Revenue Code.

(e)   Imposition of Exempt Distributions.- Distributions of dividends or benefits made by an Exempt Business pursuant to the provisions of this Chapter, even after said Decree has expired, shall be deemed to be made from Income from

AAFAF_CONF_0007776

the Export of Services if, at the time of the distribution, it does not exceed the undistributed balance of earnings and profits accrued and arising from income derived from the Export of Services, unless said Business, at the time of the statement, chooses to distribute, totally or partially, the dividend or benefit of other earnings or profits. The amount, year of accrual, and nature of the distribution made from the earnings or profits arising from income from the Export of Services shall be that which is designated by said Business, through a notice sent, together with the payment, to its shareholders, members, or partners and to the Secretary of the Treasury, in an information statement, in the form established in the Puerto Rico Internal Revenue Code.

(1)    In the case of Entities that on the date of the commencement of operations as Exempt Businesses have emnings or profits accrued, the distiibution of dividends or benefits made as of that date shall be deemed to have been made from the undistributed balance of such earnings or profits, but once such balance is exhausted by such distributions, the provisions of this subsection shall apply.

(f)    Deduction and net operating loss carryover.-

(1)    Deduction for ongoing loss incurred in activities not covered by a Decree.- If an Eligible Business holding a Decree granted under this Chapter incurs net operating losses not attributable to Export of Services or Promoter Services covered by the Decree, said losses shall not be used against income from operations covered by a Decree under this Section and shall be governed by the provisions of the Puerto Rico Internal Revenue Code.

(2)    Deduction for ongoing loss incmTed in the operation of the Eligible Business.- If an Eligible Business holding a Decree granted under this Chapter incurs net operating losses attributable to Export of Services or Promoter Services, said losses shall only be used against other income from operations attributable to such services covered by the Decree.

AAFAF_CONF_0007777

HEIN EXHIBIT 84

(3)     Deduction for loss caiTied over from prev10us years.- A deduction for loss incurred in previous years shall be granted as provided below:

(i)     The excess over losses deductible under paragraph (2) of this subsection shall be carried over against the Income from Export of Services of subsequent taxable years. The losses shall be carried over in the order in which they were incurred.

(ii)    Once the term of the Decree has expired for purposes of the income tax, net losses incurred in the operation covered by the Decree, as well as any excess of the deduction allowed under paragraph (2) of this subsection that the Eligible Business is carrying over as of the date of expiration of said term, may be deducted against any taxable income in Puerto Rico, subject to the limitations provided in the Puerto Rico Internal Revenue Code. Said losses shall be deemed as incurred in the last Taxable Year in which the Eligible Business holding a Decree pursuant to this Section enjoyed the tax rate described in subsection (a) of this Section, in accordance with the terms of the Decree.

(iii)   The amount of net operating loss incurred in the Taxable Year and carried over in subsequent years shall be computed pursuant to the provisions of the Puerto Rico Internal Revenue Code.

Section 2032.02.- Tax on Income from Export Trade Activities.

(a)     General Rule.- The net income from Export Trade activities, as provided in paragraph (1), subsection (a) of Section 2031.02 of this Code, shall be subject to a flat preferential income tax rate of four percent (4%), in lieu of any other income tax, if any, provided in the Puerto Rico Inte1nal Revenue Code or any other law.

(b)     Limitation of benefits.-

(!)     If on the filing date of the Decree application, pursuant to the provisions of this Code, an Eligible Business was engaged in Export Trade, pursuant

HEIN EXHIBIT 84

AAFAF_CONF_0007778

to paragraph (1), subsection (a) of Section 2031.02 of this Code, or was engaged in such activity at any time during the three (3) Taxable Years preceding the date on which the application was filed, called the "Export Trade Base Period," the Eligible Business may enjoy the flat income tax rate provided in this Section, only with regards to the increase in the net income which said activity generates over the average net income of the Base Period which shall be denominated "Export Trade Base Period Income," for purposes of this subsection.

(2)     The net income of any Predecessor Business shall be taken into account to determine the Export Trade Base Period Income. For such purpose, "Predecessor Business" shall include any operation, activity, trade, or business carried out by another business and which was transferred or otherwise acquired by the applicant business, without taking into consideration if it was operating under another legal name or owner.

(3)     The income attributable to the Export Trade Base Period Income shall be subject to the income tax rates provided in the Puerto Rico Internal Revenue Code, and the distribution of the earnings and profits stemming from such income shall not qualify for the treatment provided in subsection (c) of this Section.

(4)     The Export Trade Base Period Income shall be adjusted reducing such amount by twenty-five percent (25%) annually, until reduced to zero (0) for the fourth taxable year to which the terms of the Decree of the exempt business under this Code apply.

(c)     Distributions of earnings and profits.

(1)     General Rule: The shareholders, partners, or members of an Exempt Business holding a Decree granted under this Chapter shall not be subject to income tax on distributions of dividends from earnings and profits arising from the Export Trade Income of the Exempt Business. Subsequent distributions from

AAFAF_CONF_0007779

Export Trade Income made by any corporation or Entity filing as a corporation or any partnership shall also be exempt from all taxes.

(2)     Distributions described in this subsection shall also be excluded from:

(i)     The net income subject to the alternate basic tax of an individual for purposes of the Puerto Rico Internal Revenue Code;

(ii)     The alternative minimum net income of a corporation for purposes of the Puerto Rico Internal Revenue Code; and

(iii)     The adjusted net income according to the books of a corporation for purposes of the Puerto Rico Internal Revenue Code.

(d)     Imposition of exempt distributions.- Distributions of dividends or benefits made by an Exempt Business holding a Decree granted under this Chapter, even after said Decree has expired, shall be deemed made from Income from Export Trade if, on the date of the distribution, it does not exceed the undistributed balance of earnings and profits accrued and arising from Income from Export Trade, unless said Exempt Business, at the time of the statement, chooses to distribute, totally or partially, the dividend or benefit of other earnings or profits. The amount, year of accrual, and nature of the distribution made from the earnings and profits arising from Income from Export Trade shall be that which is designated by said Exempt Business, through a notice sent, together with the payment, to its shareholders, members, or partners and to the Secretary of the Treasury, in an information statement, in the fonn established in the Puerto Rico Internal Revenue Code.

(e)     In the case of Entities that, on the date of the commencement of operations as Exempt Businesses, have earnings or profits accrued, the distribution of dividends or benefits made as of that date shall be deemed to have been made from the undistributed balance of such earnings or profits, but once such balance is exhausted by such distributions, the provisions of this subsection shall apply.

HEIN EXHIBIT 84

AAFAF_CONF_0007780

(f)     Deduction and net operating loss carryover.-

(1)     Deduction for ongoing loss incurred in activities not covered by a Decree.- If an Exempt Business holding a Decree granted under this chapter incurs net operating losses not attributable to the operation covered by the Decree, such losses shall not be used against income from operations covered by a Decree in accordance with this Chapter, and shall be governed by the provisions of the Puerto Rico Internal Revenue Code.

(2)     Deduction for ongoing loss incurred in the operation of the Eligible Business.- If an Eligible Business holding a Decree granted under this Section incurs net operating losses covered by the Decree, such losses shall only be used against other income from operations covered by the Decree pursuant to this Section.

(3)     Deduction for loss carried over from prev10us years.- A deduction for loss carried over from previous years shall be granted as provided below:

(i)     The excess over losses deductible under paragraph (2) of this subsection shall be carried over against Income from Export Trade of subsequent taxable years. The losses shall be carried over in the order in which they were incurred.

(ii)     Once the term of the Decree has expired for purposes of the income tax, net losses incurred in the operation covered by the Decree, as well as any excess of the deduction allowed under paragraph (2) of this subsection that the Exempt Business is carrying over as of the expiration date of said term, may be deducted against any taxable income in Puerto Rico, subject to the limitations provided in the Puerto Rico Internal Revenue Code. Said losses shall be deemed as incurred in the last Taxable Year in which the Exempt Business holding a Decree

HEIN EXHIBIT 84

AAFAF_CONF_0007781

granted under this Chapter enjoyed the tax rate described in subsection (a) of this Section, in accordance with the terms of the Decree.

(iii)   The amount of net operating loss incurred in the Taxable Year and caiTied over in subsequent years shall be computed pursuant to the provisions of the Puerto Rico Internal Revenue Code.

Section 2032.03.- Property Tax

(a)   General Rule.- The personal and real property of an Exempt Business used in Export of Services, Promoter Services, or Export Trade covered by a Decree granted under this Chapter shall enjoy a seventy-five percent (75%) exemption from municipal and state property taxes during the fifteen (15)-year exemption period.

Section 2032.04.- Municipal Taxes.

(a)   General Rule.- An Exempt Business shall enjoy a fifty percent (50%) exemption from the municipal licenses or taxes applicable to the volume of business thereof during the fifteen (15)-year exemption period related to the Export of Services, Promoter Services, or Export Trade covered by a Decree granted under this Chapter.

SUBCHAPTER C - REQUIREMENTS FOR GRANTING EXEMPTIONS

Section 2033.01.- Requirements for Decree Applications.

(a)   Any Person with a bona fide office or establishment located in Puerto Rico who has established or intends to establish an Eligible Business in Puerto Rico under this Chapter may apply for the benefits of this Chapter by filing the appropriate Decree application with the Secretary of the DEDC as provided in Subtitle F of this Code.

(b)   Such Person may apply for the benefits of this Chapter provided that the eligibility requirements of Subchapter A of this Chapter are met as well as any other criteria prescribed by the Secretary of the DEDC in the Incentives Regulations, an administrative order, circular letter, or any other general communication,

HEIN EXHIBIT 84

AAFAF_CONF_0007782

including, as an evaluation criteria, the Eligible Business' contribution to the economic development of Puerto Rico.

SUBCHAPTER D - SPECIAL PROVISIONS

Section 2034.01.- Qualified Promoter

(a)    A Qualified Promoter is that which provides Promotion Services to a New Business in Puerto Rico that is granted a Decree and meets the following requirements:

(1)    A Qualified Promoter shall be the owner, shareholder, member, or Full Time employee of an Entity holding a Promotion Service Decree and may make efforts to establish New Businesses in Puerto Rico pursuant to the incentive provided for in this Chapter.

(2)    To be designated as Qualified Promoter, the Promoter shall file with the Secretary of the DEDC a sworn application showing that the requirements provided in this Section are met. The Secretary of the DEDC shall evaluate said application within a period of thirty (30) days from the filing thereof, except for just cause. If the Secretary of the DEDC determines that the Promoter meets the criteria established and has paid the appropriate fees, the Secretary of the DEDC shall notify the Promoter. The Secretary of the DEDC shall keep an electronic register of Qualified Promoters, which shall be public and accessible through the Portal.

(3)    The Secretary of the DEDC, in conjunction with Invest Puerto Rico Inc., shall prescribe the requirements to become a Qualified Promoter in the Incentives Regulations. Qualified Promoters shall meet, at least, the following requirements:

(i)    To hold a bachelor's degree from an accredited university;

(ii)    To have at least five (5) years of professional experience in their area of competence (i.e., accounting, finance, marketing, planning,

HEIN EXHIBIT 84

AAFAF_CONF_0007783

international trade, Law, economics, science, engineering, real estate, or other similar fields);

(iii)   To show ability to understand and express themselves properly on matters related to the establishment of businesses in Puerto Rico;

(iv)   To submit a criminal record certificate showing that no felonies or misdemeanors against the moral and public order were committed.

(4)   The Qualified Promoter shall not be granted the benefits of this Chapter for the promotion of a New Business in which the Qualified Promoter has a share as partner or member thereof.

(5)   The Qualified Promoter shall not be granted the benefits of this Chapter for the promotion of a New Business where his spouse, parents, or children hold management positions or positions with decision-making power, including as members of a Board of Directors or shareholders with voting power.

(6)   The Qualified Promoter shall not issue any payment whether directly or indirectly related to the incentives received, to any of the following persons:

(i)   A New Business in Puerto Rico, or its Affiliates, in accordance with the provision of the Puerto Rico Internal Revenue Code.

(ii)   Any officer, director, or employee of such New Business in Puerto Rico, or its Entities that are Affiliates.

(iii)   Any related party to said officer, director, or employee, as defined in Section 1010.05 of the Puerto Rico Internal Revenue Code.

(7)   Qualified Promoters shall not be prohibited from acting as a service provider that has appeared before the DEDC or any of its attached agencies, as representative of a Decree applicant in accordance with this Code, and that generates income from a New Business in Puerto Rico for such or other services, before or after its establishment in Puerto Rico. The Qualified Promoter, however,

may not serve, or have served, as a Certified Professional for the New Business in Puerto Rico, or participate in the process of preparing financial statements or income tax returns, or in the issuance of annual reports of the New Business in Puerto Rico.

(8)    The total incentive available to the Qualified Promoter is of up to fifty percent (50%) of the amount deposited in the Economic Incentives Fund and is transferred to Invest Puerto Rico Inc. on account of income taxes paid to the Secretary of the Treasury by the New Business in Puerto Rico. The incentive shall be paid for a maximum of ten (10) taxable years from the date of establishment of the New Business in Puerto Rico.

(9)    Invest Puerto Rico Inc. shall disburse the incentive through a service agreement by and between the Qualified Promoter and Invest Puerto Rico Inc. within a period that shall not exceed thirty (30) days from the receipt of the funds of the Economic Incentives Fund.

(10)   Invest Puerto Rico Inc. may distribute the incentive in different stages and to various Qualified Promoters that have participated in the promotion process of the New Business in Puerto Rico in accordance with the provisions of the Incentives Regulations.

(11)   The income earned by the Qualified Promoter on account of the incentive established in this Chapter shall be subject to the regular income tax rate, in accordance with the provisions of the Puerto Rico Internal Revenue Code.

CHAPTER 4 -  FINANCE, INVESTMENTS, AND INSURANCE

SUBCHAPTER A -  EXEMPTION ELIGIBILITY

Section 2041.01.- International Financial Entities.

An International Financial Entity shall be deemed to be an Eligible Business to apply for the benefits of this Chapter, insofar as it is any Entity incorporated or organized under the laws of Puerto Rico, the United States, or a foreign country, or a Unit of such Entity, authorized to do business in Puerto Rico, provided that it

AAFAF_CONF_0007785

complies with the provisions of Subchapter D of this Chapter and the "International Financial Center Regulatory Act" applicable to said business.

Section 2041.02.- International Insurers, Segregated Assets Plans, and International Insurer Holding Companies.

Any International Insurer, Segregated Assets Plan, or International Insurer Holding Company shall be deemed to be an Eligible Business to apply for the benefits of this Chapter, insofar as it is any Entity incorporated or organized under the laws of Puerto Rico, the United States, or a foreign country, or a Unit of such Entity, authorized to do business in Puerto Rico, provided that it complies with the provisions of Subchapter D of this Chapter and Chapter 6l of the Insurance Code.

Section 2041.03.- Private Equity Funds and Puerto Rico Private Equity Funds.

A Private Equity Fund or a Puerto Rico Private Equity Fund shall be deemed to be an Eligible Business to apply for the benefits of this Chapter, provided that it complies with the provisions of Subchapter D of this Chapter that apply to said funds.

Section 2041.04.- Reserved.

Reserved.

### SUBCHAPTER B - TAX BENEFITS

Section 2042.01.- International Financial Entities.

(a)    Income tax.-

( 1)    The income derived by International Financial Entities holding a Decree granted under this Chapter, from the conduct of the activities or transactions allowed, pursuant to this Chapter, shall be subject to a four percent (4%) flat preferential income tax rate, in lieu of any other income tax, if any, imposed by the Puerto Rico Internal Revenue Code or any other law, except as provided in paragraph (2) of this Section.

AAFAF_CONF_0007786

(2)     In the case of International Financial Entities operating as a bank Unit, the net income, computed in accordance with the provisions of Section 1031.05 of the Puerto Rico Internal Revenue Code, derived by International Financial Entities from the activities allowed by the "International Financial Center Regulatory Act" in excess of twenty percent (20%) of the total net income derived in the Taxable Year by the bank for which it operates as a Unit (including the income derived by such Unit) shall be subject to the tax rates established in the Puerto Rico Internal Revenue Code for corporations and partnerships.

(3)     The interest, finance charges, dividends, or distributive shares in partnership interests earned by International Financial Entities holding a Decree granted under this Chapter and that comply with the provisions of the "International Financial Center Regulatory Act" shall not be treated as gross income from sources in Puerto Rico for the purposes of paragraphs (1) and (2) of subsection (a) of Section 1035.01 of the Puerto Rico Intel11al Revenue Code.

(4)     The provisions of Section 1062.08 of the Puerto Rico Internal Revenue Code, which require the withholding of income taxes at the source in the case of payments made to Foreign Persons who are individuals, shall not apply to interest, finance charges, dividends, or distributive shares in partnership interests received from International Financial Entities holding a Decree granted under this Chapter and that comply with the provisions of the "International Financial Center Regulatory Act."

(5)     The provisions of Section 1062.11 of the Puerto Rico Internal Revenue Code, which require the withholding of income taxes at the source in the case of payments made to foreign corporations and partnerships not engaged in trade or business in Puerto Rico, shall not apply to interest, finance charges, dividends, or distributive shares in partnership interests received from International Financial

AAFAF_CONF_0007787

Entities holding a Decree granted under this Chapter and that comply with the provisions of the "International Financial Center Regulatory Act."

(6)    The income derived by Foreign Persons who are individuals consisting of interest, finance charges, dividends, or distributive shares in partnership interests received from the "International Financial Center Regulatory Act" shall not be subject to the tax imposed under Section 1091.01 of the Puerto Rico Internal Revenue Code.

(7)    The income derived by a foreign corporation or partnership consisting of interest, finance charges, dividends, or distributive shares in partnership interests received from International Financial Entities holding a Decree granted under this Code and that comply with the provisions of the "International Financial Center Regulatory Act," shall not be subject to the tax imposed under subparagraph (A) of paragraph (1) of subsection (a) of Section 1092.01 of the Puerto Rico Internal Revenue Code.

(8)    The provisions of Section 1092.02 of the Puerto Rico Internal Revenue Code shall not apply to International Financial Entities holding a Decree granted under this Chapter and that comply with the provisions of the "International Financial Center Regulatory Act."

(9)    Any Domestic Person who is a shareholder or partner of an International Financial Entity holding a Decree granted under this Chapter and that complies with the provisions of the "International Financial Center Regulatory Act" shall be subject to a six percent (6%) tax on the distribution of dividends or benefits of the net income of said International Financial Entity, including the alternate basic tax and the alternative minimum tax, insofar as they have been subject to the flat income tax rate provided in paragraph (1) of this subsection.

(b)    Municipal Taxes and other Municipal Taxes.- The International Financial Entities shall have a fifty percent (50%) exemption from the municipal

AAFAF_CONF_0007788

license taxes imposed under the "Municipal License Tax Act," as well as any other tax, levy, fee, license, excise tax, duty, or tariff as provided under the "Autonomous Municipality Act."

(c)      Real and personal property tax exemption.- The International Financial Entities shall have a seventy-five percent (75%) exemption from the municipal property taxes imposed under the "Municipal License Tax Act," which includes the real and personal property, tangible and intangible, belonging to such International Financial Entity.

Section 2042.02.- International Insurers and International Insurer Holding Companies.

(a)      Income Taxes.-

(1)      Every International Insurer holding a Decree granted under this Code shall be subject to a four percent (4%) tax on the amount of its net income in excess of one million two hundred thousand dollars ($1,200,000.00) computed without taking into account the exemption provided in the third paragraph of this subsection and without including for these purposes the income from Segregated Asset Plans that the International Insurer may have established.

(2)      Likewise, every Segregated Asset Plan of an International Insurer other than a Class 5 Authority, as such term is defined in Section 61.020 of the Insurance Code, shall be subject to a four percent (4%) tax on the amount of its net income in excess of one million two hundred thousand dollars ($1,200,000.00), which shall be paid exclusively with the funds of such Segregated Asset Plan. The net income shall be computed as if the Segregated Asset Plan were an International Insurer. The Secretary of the Treasury shall prescribe by regulations, circular letter or other administrative determination or general communication, the forms or returns to be filed with respect to the aforementioned taxes. In the case of International Insurers with Segregated Asset Plans subject to taxation, the

AAFAF_CONF_0007789

International Insurer shall report and pay the tax owed by each one of said Segregated Asset Plans.

(3)     Except as provided in paragraphs (1) and (2) of this subsection, the income derived by the Segregated Asset Plan, the International Insurer, or by an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code shall not be included in the gross income of such Entities or Segregated Asset Plans and shall be exempt from the taxes imposed under Sections 1000.01 *et seq.* of the Puerto Rico Internal Revenue Code. Income derived by the International Insurer or by an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code by reason of the liquidation or dissolution of its operations in Puerto Rico shall be treated as income derived from the operations allowed both under this Chapter and the "International Insurers Act," thus shall receive the same treatment, and shall not be included in the gross income of such Entities.

(4)     The income derived from dividends and profit sharing, or in the case of a partnership, distributions in total or partial liquidation, or other income items similar thereto distributed or paid by an International Insurer, a Segregated Asset Plan, or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code, shall be exempt from taxation pursuant to Sections 1000.01 *et seq.* of the Internal Revenue Code and from the payment of municipal license taxes imposed by the "Municipal License Tax Act."

(5)     Amounts received by a Foreign Person not engaged in trade or business in Puerto Rico as benefits or interest of any kind under a life insurance or annuity contract issued by an International Insurer, shall be exempt from income taxes in accordance with Sections 1000.01 *et seq.* of the Puerto Rico Internal Revenue Code and from the payment of municipal license taxes pursuant to the "Municipal License Tax Act."

HEIN EXHIBIT 84

AAFAF_CONF_0007790

(6)     Except as provided in paragraphs one (1) and two (2) of this subsection, the International Insurer or International Insurer Holding Company that complies with Section 61.040 of the Insurance Code shall not be required to file corporate, partnership, or insurance company tax returns, as provided in Sections 1061.02, 1061.03, and 1061.12 of the Puerto Rico Internal Revenue Code. An International Insurer or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code and is organized as a corporation of individuals, pursuant to the Puerto Rico Internal Revenue Code, shall not be required to file the returns and reports required under Section 1061.07 of said Internal Revenue Code. However, an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code shall submit the certification required under Section 61.040(6) of the Insurance Code to the Secretary of the DEDC, the Insurance Commissioner, and the Secretary of the Treasury.

(7)     The provisions of Section 1062.08 of the Puerto Rico Internal Revenue Code that impose the requirement to deduct and withhold at the source the income tax on payments made to Foreign Persons who are individuals shall not apply to an amount received on account of benefits or interests of any kind under a life insurance or annuity contract, or the interest (including original issue discount, letters of credit, and other financial guarantees), dividends, partnership interest, distributions in total or partial liquidations, or other similar income items received from an International Insurer or an International Insurer Holding Company, as applicable, that complies with Section 61.040 of the Insurance Code, provided that these individuals are not engaged in trade or business in Puerto Rico.

(8)     The provisions of Section 1062.10 of the Puerto Rico Internal Revenue Code that impose the requirement to deduct and withhold at the source the income tax on payments made for an interest attributable to shareholders who are Foreign Persons on the income of a corporation of individuals shall not apply with

AAFAF_CONF_0007791

respect to the attributable interest of the shareholders who are Foreign Persons of an International Insurer, or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code.

(9)    The provisions of Section 1062.11 of the Pue1io Rico Internal Revenue Code that impose the requirement to deduct and withhold at the source income tax on payments made to foreign corporations or partnerships not engaged in trade or business in Pue1io Rico shall not apply to the amount of any benefit or interest of any kind received under a life insurance or annuity contract or the interest (including the original issue discount, letters of credit, and other financial guarantees), dividends, paiinership interest, distributions in total or partial liquidations, or other similar income items, received from an International Insurer or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code.

(10)    The income derived by a Foreign Person who is an individual, not engaged in trade or business in Puerto Rico, on account of benefits or interest received under a life insurance or annuity contract or interest (including the original issue discount, letters of credit, and other financial guarantees), dividends, partnership interests, or other similar income items, received from an International Insurer or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code, shall not be subject to the payment of the taxes imposed under Section 1091.01 of the Puerto Rico Internal Revenue Code.

(11)    The income derived by a foreign corporation not engaged in trade or business in Puerto Rico, on account of benefits or interest received under a life insurance or annuity contract or interest (including the original issue discount, letters of credit, and other financial guarantees), dividends, partnership interest, or other similar income, received from an International Insurer or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code, shall

AAFAF_CONF_0007792

HEIN EXHIBIT 84

not be subject to the taxes imposed under Section 1092.01 of the Pue1io Rico Internal Revenue Code.

(12)   The income derived by an International Insurer shall not be subject to the taxes imposed under Section 1092.02 of the Puerto Rico Internal Revenue Code.

(13)   None of the provisions of this Section shall be construed as to limit the powers of the Secretary of the Treasury to apply the provisions of Section 1040.09 of the Internal Revenue Code to an International Insurer or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code.

(14)   The provisions of Sections 1111.01 through 1111.11 of the Puerto Rico Internal Revenue Code shall not apply to International Insurers.

(b)   Estates and Gifts.-

(1)   For purposes of Section 2010.01 *et seq.* of the Internal Revenue Code, the value of any amount payable by an International Insurer under a life insurance or annuity contract to a Foreign Person who is an individual, shall be exempt from the estate and gift taxes imposed under said Sections. Any Stock or partnership interest certificate of a partner of an International Insurer or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code which are owned by a Foreign Person who is an individual, and any bonds, notes, or other debt obligations of an International Insurer or an International Insurer Holding Company that complies with Section 61.040 of the Insurance Code that are owned by a Foreign Person who is an individual, shall be exempt from the estate and gift taxes imposed under said Sections.

(c)   Municipal Licenses and other Municipal Taxes.-

(1)   International Insurers or International Insurer Holding Companies that comply with Section 61.040 of the Insurance Code shall have a fifty percent (50%) exemption from the municipal license taxes imposed under the

HEIN EXHIBIT 84

AAFAF_CONF_0007793

"Municipal License Tax Act," as well as from any tax, levy, fee, license, excise tax, duty, or tariff as imposed under the "Autonomous Municipality Act."

    (d)    Real and Personal Property Tax.-

    (1)    The real and personal property of an International Insurer or International Insurer Holding Company that complies with Section 61.040 of the Insurance Code shall have a seventy-five percent (75%) exemption from the payment of real and personal property taxes as imposed under the "Municipal Property Tax Act."

    Section 2042.03.- Private Equity Funds and Puerto Rico Private Equity Funds.

    (a)    Income Tax- The provisions applicable to partners of a partnership, as provided by Chapter 7 of Subtitle A of the Puerto Rico Internal Revenue Code, shall apply to Accredited Investors of a Private Equity Fund and a Puerto Rico Private Equity Fund (including taxable investors who have not contributed money or property in exchange for proprietary interests of said funds and who have an interest in fund profit). The Private Equity Fund and the Puerto Rico Private Equity Fund shall comply with all the information and tax withholding requirements provided for in the Puerto Rico Internal Revenue Code.

    (1)    Private Equity Fund and Puerto Rico Private Equity Fund.

    (i)    Income- A Private Equity Fund and Puerto Rico Private Equity Fund, as the case may be, shall be treated for tax purposes as a partnership under the applicable rules of partnerships in Chapter 7 of the Puerto Rico Internal Revenue Code, in which case it shall be understood that all references made to partnerships taxable under Chapter 7 of the Puerto Rico Internal Revenue Code include Private Equity Funds and Puerto Rico Private Equity Funds.

    (2)    Accredited Investors.- Resident Accredited Investors of a Private Equity Fund shall be responsible for the income taxes on their distributive share of the Private Equity Fund or the Puerto Rico Private Equity Fund income, except for

AAFAF_CONF_0007794

the Economic Development Bank which shall be exempt from taxation in accordance with its organic act. In the case of Accredited Investors that are nonresident Accredited Investors, the Private Equity Fund and the Puerto Rico Private Equity Fund shall withhold at the source the applicable tax and shall remit it to the Department of Treasury. In both instances, the tax shall be paid according to the following rules:

(i) Distributive share from interests and dividends.- Accredited Investors' distributive share of interest and dividends from the Private Equity Fund and the Puerto Rico Private Equity Fund shall pay, in lieu of any other tax imposed by the Puerto Rico Internal Revenue Code, including the alternate basic tax and the alternative minimum tax which shall not be applicable to Accredited Investors, an income tax to be computed using a flat rate of ten percent (10%). Exempt interests or dividends generated by the Private Equity Fund or the Puerto Rico Private Equity Fund shall maintain their exemption when held by the Accredited Investors. Likewise, Accredited Investors shall pay taxes in Puerto Rico at the income tax rates provided herein, unless: (i) the income tax rate applicable to such Investor under any other special law is lower than the one provided herein, or (ii) under the principles of the Puerto Rico Internal Revenue Code such investors are not required to pay income taxes in Puerto Rico. The operating expenses of the Private Equity Fund and the Puerto Rico Private Equity Fund (except capital gains) shall be allocated to the gross income amount of each class.

(ii) Distributive Share from Capital Gains.- Accredited Investors' distributive share of capital gains from the Private Equity Fund or the Puerto Rico Private Equity Fund shall be fully exempt from income tax and shall not be subject to any other tax imposed by the Puerto Rico Internal Revenue Code, including the alternate basic tax and the alternative minimum tax which shall not be applicable to Accredited Investors of said funds. Such gains shall be separately

AAFAF_CONF_0007795

HEIN EXHIBIT 84

informed to the Investors in accordance with Section 1071.02 of the Puerto Rico Internal Revenue Code.

(iii)    Sale of Ownership Interest- The capital gains realized by Accredited Investors of the Private Equity Fund or the Pue1io Rico Private Equity Fund in the sale of their ownership interest in said funds shall be subject to income tax at a flat rate of five percent (5%) in the Taxable Year in which the sale occurs or income is earned in lieu of any other tax provided in the Puerto Rico Internal Revenue Code. If, within ninety (90) days as of the sale, the Accredited Investor reinvests the entire gross income in a Puerto Rico Private Equity Fund, the capital gains shall be exempt from income tax. Such gains shall be separately informed to the Accredited Investor in accordance with Section 1071.02 of the Puerto Rico Internal Revenue Code.

(iv)    Distributive Share from Net Capital Losses- The Accredited Investors' distributive share from the net capital losses incuned by the Private Equity Fund or the Puerto Rico Private Equity Fund may be taken as a deduction by Resident Accredited Investors of said funds in proportion to its distributive share in the fund's losses to the extent that such losses are attributable to a corporation, or foreign or domestic limited liability company or partnership, which derives at least eighty percent (80%) of its gross income in the previous three (3) years from sources within Puerto Rico or from income effectively connected or treated as effectively connected to the conduct of a trade or business in Puerto Rico, in accordance with the provisions of the Puerto Rico Internal Revenue Code. The losses can only be used in the following manner:

(A)    Against income from other Private Equity Funds or Puerto Rico Private Equity Funds to the extent that such losses are deemed capital losses at the level of said funds;

HEIN EXHIBIT 84

AAFAF_CONF_0007796

(B)   to reduce any capital gain generated by the Resident Accredited Investor from other sources in accordance with the provisions of the Puerto Rico Internal Revenue Code;

(C)   however, losses that may not be deducted might be carried over indefinitely.

(3)   General or Managing Partners.-

(i)   Distributive share from interests and dividends- The distributive share of the General or Managing Partners of the Fund from interest and dividends derived from the Private Equity Fund or the Puerto Rico Private Equity Fund shall be subject to income tax at a flat rate of five percent (5%) in lieu of any other tax imposed by the Puerto Rico Internal Revenue Code, including the alternate basic tax and the alternative minimum tax. The operating expenses of the Private Equity Fund or the Puerto Rico Private Equity Fund (except capital gains) shall be allocated in proportion to the gross income amount of each class.

(ii)   Distributive share from Capital Gains- The distributive share of the General or Managing Partners of the Private Equity Fund or the Puerto Rico Private Equity Fund from the capital gains of said funds shall pay a flat income tax of two point five percent (2.5%) in lieu of any other tax imposed in the Puerto Rico Internal Revenue Code in the Taxable Year in which that sale occurs, including the alte111ate basic tax and the alternative minimum tax which shall not be applicable to Accredited Investors of the Private Equity Fund or the Puerto Rico Private Equity Fund. Such gains shall be separately informed to the Investor in accordance with Section 1071.02 of the Puerto Rico Internal Revenue Code.

(iii)   The rules for the sale of ownership interest and net capital losses applicable to the Accredited Investors as described in subparagraphs (iii) and (iv) of paragraph (2) of subsection (a) of this Section shall apply to General or Managing Partners.

AAFAF_CONF_0007797

(4)     RIA and PE-Firm.-

(i)     Distributive share from interests and dividends.- The distributive share of an RIA and a PE-Firm of the Fund from interest and dividends derived from the Private Equity Fund or the Puerto Rico Private Equity Fund shall pay a flat income tax rate of five percent (5%) in lieu of any other tax imposed by the Puerto Rico Internal Revenue Code, including the alternate basic tax and the alte111ative minimum tax. The operating expenses of the Private Equity Fund or the Puerto Rico Private Equity Fund (except capital gains) shall be allocated in proportion to the gross income amount of each class.

(ii)     Distributive share from Capital Gains- The distributive share of an RIA and a PE-Firm of the Private Equity Fund or the Puerto Rico Private Equity Fund from the capital gains of the Fund shall pay a flat income tax rate of two point five percent (2.5%) in lieu of any other tax imposed in the Taxable Year in which that sale occurs, including the alternate basic tax and the alternative minimum tax which shall not be applicable to Accredited Investors of the Private Equity Fund or the Puerto Rico Private Equity Fund. Such gains shall be separately informed to the Accredited Investor in accordance with Section 1071.02 of the Puerto Rico Internal Revenue Code.

(iii)     The rules for the sale of ownership and net capital losses applicable to the Accredited Investors as described in the subparagraphs (iii) and (iv) of paragraph (2) of subsection (a) of this Section shall apply to RIAs and PE-Firms.

(b)     Property Taxes.-

(1)     The Private Equity Funds and the Puerto Rico Private Equity Funds shall have a seventy-five percent (75%) exemption from property taxes imposed under the "Municipal Property Tax Act," including the real and personal property, tangible and intangible, belonging thereto.

AAFAF_CONF_0007798

(2)     The Private Equity Funds and the Puerto Rico Private Equity Funds shall be exempt from filing the appropriate personal property tax return as provided in Act No. 83-1991, as amended, known as the "Municipal Property Tax Act of 1991."

(c)     Municipal Taxes.-

(1)     The income earned by the Private Equity Funds and the Puerto Rico Private Equity Funds and the distributions that those Entities make to their Accredited Investors, shall not be deemed to be "gross income" nor shall they be included in the definition of "volume of business" for purposes of the "Municipal License Tax Act."

(2)     The Private Equity Funds and the Puerto Rico Private Equity Funds shall be exempt from filling the appropriate volume of business declaration provided in the "Municipal License Tax Act."

(d)     Special deductions.-

(1)     If a Private Equity Fund or a Puerto Rico Private Equity Fund has met the investment requirements provided for in this Chapter, every Resident Accredited Investor who invests in:

(i)     A Private Equity Fund may deduct up to a maximum of thirty percent (30%) of the adjusted basis of its Private Equity Investment, as such adjusted basis is determined under the Puerto Rico Inte111al Revenue Code. The Resident Accredited Investor may use the deduction in the Taxable Year in which the Fund invested all or part of said investment and for the ten (10) following years. If the Fund invests the Private Equity Investment partially, the ten (10) year period relating to the invested portion shall begin to elapse from the year it was invested. If the investment is made after the close of the Taxable Year, but before the income tax return for said year is filed, as described in the Puerto Rico Internal Revenue Code, including any extensions granted by the Secretary of Treasury for the filing

HEIN EXHIBIT 84

AAFAF_CONF_0007799

thereof, the Resident Accredited Investor may claim the deduction for said Taxable Year. The maximum deduction the Resident Accredited Investor may claim in a Taxable Year shall not exceed fifteen percent (15%) of his net income before such deduction.

(ii)   A Puerto Rico Private Equity Fund may deduct up to a maximum of sixty percent (60%) of the adjusted basis of its Private Equity Investment, as such adjusted basis is determined under the Puerto Rico Internal Revenue Code. The Resident Accredited Investor may use the deduction in the Taxable Year in which the Fund invested all or part of said initial investment and for the fifteen (15) following years. If the Fund invests the Private Equity Investment partially, the fifteen (15) year period relating to the invested portion shall begin to elapse from the year it was invested. If the investment is made after the close of the Taxable Year, but before the income tax return for said year is filed, as described in the Puerto Rico Inte1nal Revenue Code, including any extensions granted by the Secretary of Treasury for the filing thereof, the Resident Accredited Investor may claim the deduction for said Taxable Year. The maximum deduction a Resident Accredited Investor can claim in a Taxable Year shall not exceed thirty percent (30%) of his net income before such deduction.

(2)   Deduction for Private Equity Investment.- The deduction on account of Investment that a Resident Accredited Investor may claim pursuant to paragraph (1) of this subsection may be used, at the discretion of the Resident Accredited Investor, against any type of income for purposes of determining any type of tax under Subtitle A of the Puerto Rico Internal Revenue Code, including the alternate basic tax applicable to individuals and the alternative minimum tax applicable to corporations. In the case of spouses who live together, file a joint return, and choose the optional tax computation provided by Section 1021.03 of the Puerto Rico Internal Revenue Code, they may, at their discretion, allocate between

AAFAF_CONF_0007800

them the total amount of the claimable deduction on account of the investment made by each of them for each taxable period.

SUBCHAPTER C - REQUIREMENTS FOR GRANTING EXEMPTIONS

Section 2043.01.- Requirements for Decree Applications.

(a)    Any Person who has established or intends to establish an Eligible Business in Puerto Rico under this Chapter shall apply for the benefits of this Code by filing the appropriate Decree application with the Secretary of the DEDC as provided in Subtitle F of this Code.

(b)    Any Person may apply for the benefits of this Chapter provided that the eligibility requirements of Subchapter A of this Chapter are met as well as any other criteria prescribed by the Secretary of the DEDC in the Incentives Regulations, an administrative order, a circular letter, or any other general communication, including as an evaluation criteria, the Eligible Business' contribution to the economic development of Puerto Rico.

Section 2043.02.- International Insurers and International Insurer Holding Companies Decrees.

(a)    International Insurers shall apply for a tax exemption Decree that shall state in detail the entire tax treatment, as provided in the Sections applicable to such businesses in this Chapter.

(b)    As a requirement to obtain a Decree and, as provided in the Incentives Regulations, the Secretary of the DEDC, with the approval of the Insurance Commissioner, may impose additional conditions to the International Insurer in connection with jobs or economic activities. The tax exemptions thus stated, including the income tax rates provided in subsection (a) of Section 2042.02 of this Chapter, shall be deemed to be a contract by and between the International Insurer, its shareholders, partners, or owners and the Government of Puerto Rico during the effectiveness of the Decree and said contract shall be the law between the parties.

HEIN EXHIBIT 84

AAFAF_CONF_0007801

Decrees shall be effective for fifteen (15) years, beginning on its date of issue, unless the certificate of authority of the International Insurer is revoked, suspended, or not renewed before the expiration date thereof, in which case the Decree shall be rendered ineffective on the date of revocation or failure to renew, or during the suspension period, as the case may be.

(c)     Likewise, they shall hold a certificate of authority in effect issued by the Insurance Commissioner, in accordance with Section 61.050 of the Insurance Code in order to be granted a Decree under this Section.

(d)     The decree shall be non-transferrable; however, it shall continue in effect upon a change in the control of the Shares of an International Insurer, or the merger or consolidation thereof, or the conversion of an International Insurer to a stock-based or mutual insurer, as the case may be; provided, that the change of control, merger or consolidation, or conversion, as the case may be, is authorized by the Secretary of the DEDC, pursuant to this Chapter.

SUBCHAPTER D - SPECIAL PROVISIONS.

Section 2044.01 .- International Financial Entity.

(a)     An International Financial Entity shall comply with the provisions of the "International Financial Center Regulatory Act," as applicable, to obtain the benefits provided in this Chapter.

(b)     Confidentiality.- The information furnished to the Secretary of the DEDC pursuant to this Chapter and the Incentives Regulations, shall be kept confidential, except:

(1)     When disclosure of such information 'is required by law or judicial order;

(2)     Upon a formal petition of a domestic or foreign government agency in the exercise of its supervisory function, when the Secretary of the DEDC deems it to be in the best public interest. In such case, the information shall be

AAFAF_CONF_0007802

delivered under a binding agreement with the DEDC in order to maintain the confidentiality of said information. This exception shall under no circumstances be extended to include information regarding clients of the International Financial Entity.

(3) In any other case, as required under the "International Financial Center Regulatory Act."

(i) The Secretary of the DEDC may also disclose information when such disclosure has the purpose of assisting the Secretary of the DEDC, the Financial Institutions Commissioner, or other authority in the discharge of their regulatory duties.

(4) Pertaining to this Section, the Incentives Regulations shall be drafted in consultation with the Financial Institutions Commissioner.

(5) The Secretary of the DEDC may delegate to the Financial Institutions Commissioner the drafting of regulations, the review of transactions, and the compliance with the provisions applicable to International Financial Entities in this Code as well as any other responsibility established in this Chapter with respect to such entities, provided that the Secretary of the DEDC believes that the Financial Institutions Commissioner has the necessary expertise to assume said responsibilities.

Section 2044.02.- International Insurers and International Insurer Holding Companies.

(a) An International Insurer shall meet, as applicable, the requirements established in Sections 61.050, 61.060, 61.070, 61.080, 61.090, 61.100, 61.110, 61.120, 61.130, 61.140, 61.160, 61.180, 61.190, 61.200, 61.210, 61.220, and 61.230 of the Insurance Code, including applying for a certificate of authority to operate as an International Insurer, in order to obtain the benefits provided in this Chapter.

AAFAF_CONF_0007803

(b)   An International Insurer Holding Company shall meet the requirements provided in subsections (3) through (8) of Section 61.040 of the Insurance Code to obtain the benefits provided in this Chapter.

(c)   Confidentiality.- The information furnished to the Secretary of the DEDC pursuant to this Chapter and the Incentives Regulations, shall be kept confidential, except:

(1)   When disclosure of such information 'is required by law or judicial order; or

(2)   Upon a formal petition of a domestic or foreign government agency in the exercise of its supervisory function, when the Secretary of the DEDC deems it to be in the best public interest. In such case, the information shall be delivered under a binding agreement with the DEDC in order to maintain the confidentiality of said information. This exception shall under no circumstances be extended to include information regarding clients of the International Insurer.

(3)   The Secretary of the DEDC may also disclose information when such disclosure has the purpose of assisting the Secretary of the DEDC, the Insurance Commissioner, or other authority in the discharge of their regulatory duties.

(d)   The Incentives Regulations, in connection with this Section, shall be drafted with the advice and consent of the Insurance Commissioner.

Section 2044.03.- Private Equity Funds and Puerto Rico Private Equity Funds.

(a)   A Private Equity Fund is a fund that meets the following requirements:

(1)   As a general rule, not later than four (4) years, counting from the date of its organization and at the close of each subsequent Fiscal Year, a minimum of fifteen percent (15%) of the paid-in capital contributed to the Fund by its Accredited Investors, (excluding the capital that the Fund maintains in bank accounts and other cash equivalent investments) invested in one or more of the following:

AAFAF_CONF_0007804

(i)      promissory notes, bonds, Shares, notes (including secured and unsecured loans and including the collateral) or any other securities of similar nature issued by Entities engaged actively in trade or business (Issuing Entity), that, at the time of acquisition are not traded or offered at public stock exchange markets in the United States or in any foreign country, and that have been issued by: (i) a domestic corporation, a domestic limited liability company, or a domestic partnership, or (ii) a foreign entity that derives at least eighty percent (80%) of its gross income for the previous three (3)-year period from sources within Puerto Rico or from income effectively connected or treated as effectively connected to the conduct of a trade or business in Puerto Rico, in accordance with the provisions of the Puerto Rico Internal Revenue Code. For purposes of this subparagraph (i), it shall be understood that an Issuing Entity is engaged actively in trade or business, if such trade or business is conducted by said Issuing Entity or an Entity controlled by the Issuing Entity. An Entity shall be deemed to be a controlled Entity when the Issuing Entity holds fifty percent (50%) or more of the Capital Stock or ownership interest with voting rights of said Entity.

(ii)      promissory notes, bonds, notes, or other debt instruments issued by the Government of Puerto Rico, its instrumentalities, agencies, municipalities, or any other political subdivision.

(2)     Its Investors are Accredited Investors;

(3)     It employs one or more RIA, at least one which shall:

(i)      Be a Domestic Person or a Foreign Person;

(ii)     Establish and maintain a business office in Puerto Rico;

(iii)    Engage in trade or business in Puerto Rico pursuant to the provĪsĪ0ns of the Puerto Rico Internal Revenue Code and registered with the pertinent regulatory entities, including, but not limited to, OCIF, the SEC, and the SBA, as applicable.

HEIN EXHIBIT 84

AAFAF_CONF_0007805

An RIA that meets the requirements of this paragraph (3) may subcontract an investment advisor who fails to meet said requirements. However, an RIA who fails to meet the requirements may not subcontract an investment advisor.

(4) shall operate as a diversified investment entity, therefore, not later than four (4) years from the date of its organization and at the end of each subsequent Fiscal Year, not more than fifty percent (50%) of its paid-in capital shall be invested in a single business; provided, however, that the fluctuations in the value of the fund's investments or the sale, liquidation, or other disposition of any of the Fund's Assets pursuant to its investment strategy or objective shall not be taken into account for determining if the Fund meets this requirement. To determine the fifty percent (50%) investment limit in a single business, a group of Affiliates, as defined in subparagraph (i) of this paragraph, shall be deemed to be a business. Therefore, the amounts invested in one or more entities within a group of Affiliates, as defined in subparagraph (i) of this paragraph, shall be aggregated to determine if the fund has achieved the purpose of investing not more than fifty percent (50%) of its capital in a single business. The foregoing limitation does not prevent a fund from investing more than fifty percent (50%) of its capital in entities operating in the same trade or engaged in the same type of business. Neither does it prevent a fund from acquiring all or a majority of the ownership interests of an Entity in which it has invested or is investing its capital, thus, an Entity shall not be deemed to be converted into an Affiliate, as such term is defined in subparagraph (i) of this paragraph, for purposes of such diversification requirement when all or a majority of its ownership interests are acquired by a fund;

(i) For purposes of this paragraph (4), the term "Affiliate" means, with respect to an Entity, any other person or Entity excluding the fund which directly or indirectly through one or various third parties controls, is controlled by, or is under common control with said Entity. The term "control" means to possess

HEIN EXHIBIT 84

AAFAF_CONF_0007806

or own directly or indirectly fifty percent (50%) or more of the capital Stock or the ownership interests with voting rights of said Entity.

(5) shall have a minimum capital of ten million dollars ($10,000,000), including legal commitments of capital contributions duly documented even if not yet received, within twenty-four (24) months from the fund's first issuance of ownership interests and subsequently;

(6) shall appoint at least one of its Investors or limited partners to one advisory board where matters of interest and concerns regarding the Fund shall be discussed and evaluated by said class;

(7) in case of a foreign partnership or foreign limited liability company, its General or Managing Partner or RIA shall be engaged in a trade or business in Puerto Rico and derive at least eighty percent (80%) of its gross income from sources within Puerto Rico or from income effectively connected or treated as effectively connected with the conduct of a trade or a business in Puerto Rico, in accordance with the provisions of the Puerto Rico Internal Revenue Code.

(b) A Private Equity Fund shall be deemed to be a Puerto Rico Private Equity Fund provided that it complies with paragraphs (2) through (7) of subsection (a) of this Section as well as meets the following eligibility requirements:

(1) Not later than four (4) years, counting from the date of its organization and at the end of each subsequent Fiscal Year, maintains a minimum of sixty percent (60%) of the paid-in capital contributed to the fund by its Accredited Investors (excluding the capital that the fund maintains in bank accounts and other cash equivalent investments) invested in one of the following:

(i) promissory notes, bonds, Shares, notes (including secured and unsecured loans and including the collateral) or any other securities of similar nature issued by Entities engaged actively in trade or business (Issuing Entity), that, at the time of acquisition are not traded or offered at public stock exchange markets

AAFAF_CONF_0007807

in the United States or in any foreign country, and that have been issued by (A) a domestic corporation, a domestic limited liability company, or a domestic paiinership, or (B) a foreign entity that derives at least eighty percent (80%) of its gross income for the previous three (3) year period from sources within Puerto Rico or from income effectively connected or treated as effectively connected to the conduct of a trade or a business in Puerto Rico, in accordance with the provisions of the Puerto Rico Internal Revenue Code. For purposes of this subparagraph (i), it shall be understood that an Issuing Entity is engaged actively in trade or business, if such trade or business is conducted by said Issuing Entity or an Entity controlled by the Issuing Entity. An Entity shall be deemed to be a controlled Entity when the Issuing Entity holds fifty percent (50%) or more of the capital Stock or ownership interest with voting rights of said Entity.

(ii)   promissory notes, bonds, notes, or other debt instruments issued by the Government of Puerto Rico, its instrumentalities, agencies, municipalities, or any other political subdivision;

(iii)   exempt investment trusts under Section 1112.02 of the Puerto Rico Internal Revenue Code;

(iv)   promissory notes, bonds, Shares, notes (including secured and unsecured loans and including the collateral) or any other securities of similar nature issued by entities engaged, directly or indirectly, in an active trade or business outside of Puerto Rico, that at the time of acquisition are not traded or offered at public stock exchange markets in the United States or in any foreign country; provided, that the operations of the Entity are transferred to Puerto Rico within six (6) months from the date of the acquisition of the promissory notes, bonds, Shares, or notes (including secured and unsecured loans and including the collateral) or any other securities of similar nature, plus any additional period authorized by the Secretary of the Treasury if there is reasonable cause for the extension, and during

AAFAF_CONF_0007808

HEIN EXHIBIT 84

the period of twelve (12) calendar months commencing the first day of the calendar month following the calendar month during which the operations are transferred to Puerto Rico and each subsequent twelve (12)-month period, derives at least eighty percent (80%) of its gross income from sources within Puerto Rico or from income effectively connected or treated as effectively connected to the conduct of a trade or a business in Puerto Rico, in  accordance with the provisions of the Puerto Rico Internal Revenue Code.

(c)    In the case of Private Equity Funds and Puerto Rico Private Equity Funds, any Entity that meets the eligibility requirements provided in this Chapter may request to be treated as a Private Equity Fund or a Puerto Rico Private Equity Fund by filing a Decree application in accordance with Section 2043.01; provided that, in the case of a series limited liability company, said limited liability company may elect to be treated as a single fund, regardless of the number of series, if the fund meets said eligibility requirements; alternatively, one or various series of said limited liability company may elect to be treated individually or jointly as a fund, if said eligibility requirements are met, in which case the aforementioned Decree application shall be filed not later than on the last day of the third (3 rd) month as of the date such series was formed.

(d)    None of the provisions of this Chapter applicable to the funds shall be interpreted as a limitation to the tax treatment that the Accredited Investors, General or Managing Partners, an RIA, or a PE-Firm might obtain under any other incentive under this Code, provided that they meet the requirements and follow the processes established in this Code.

(e)    The fulfillment of the requirements of subsections (a) or (b) of this Section, as applicable, shall be determined for each Taxable Year of the fund. For purposes of determining the percentage of investment in an asset, the initial cost thereof shall be taken into consideration. Failure to meet the eligibility requirements

shall prevent the Entity from qualifying as a Private Equity Fund or a Puerto Rico Private Equity Fund during the year in which it failed to meet the requirements and, therefore, the Entity shall be subject to taxation, as applicable, under the provisions of the Puerto Rico Internal Revenue Code, the "Municipal License Tax Act," and the "Municipal Property Tax Act." If the Entity is disqualified for a particular Taxable Year for noncompliance with the provisions of this Code, it shall request the Secretary of the DEDC, subject to the requirements prescribed in the Incentives Regulations, a circular letter, an administrative determination, or any other similar general communication, to be treated again as a Private Equity Fund or a Puerto Rico Private Equity Fund for taxable years following the disqualification year.

(f)      The Funds shall be exempt from compliance with the provisions of the "Investment Companies Act of Puerto Rico" and the "Puerto Rico Investment Companies Act of 2013."

(g)      Disclosure of Information.

( 1)      Any offer to participate or invest in a Fund shall be registered in or notified to OCIF and comply with all of the provisions of the Securities Act of the United States and Puerto Rico, as applicable with respect to disclosure and including registration, if necessary.

(2)      Every Fund shall:

(i)      Inform its investors of its operating results quarterly (unaudited) and annually as audited by a Ce1iified Public Accountants firm duly licensed in Puerto Rico in order for the Investor to verify that the Fund is operating in accordance with the policies, practices, and agreements established during its organization. The audited annual report shall include: the calculated Internal Rate of Return (IRR), an Itemization of Commissions and Expenses of the Partnership, a Summary of Capital Calls, a Debt Summary, and a Letter from the Managing Partner to the Investors.

AAFAF_CONF_0007810

HEIN EXHIBIT 84

(ii)    The disclosure of the fund shall include:

(A)    An explanation of the risks and opportunities in the fund as well as material events including, but not limited to: fraud, material breach of the fiduciary duty, material breach of the agreement, bad faith, and gross negligence.

(B)    The Certification of Compliance of the fund duly sworn by the chief executive officer with the provisions of this Code.

(iii)    Call a General Annual Meeting of Partners where the General Partner shares information regarding the operation of the fund with its Investors or Limited Partners.

(iv)    OCIF shall be empowered examine and inspect Private Equity Funds or Puerto Rico Private Equity Funds to ensure that they informed their operations and financial results accurately, comply with their fiduciary duty to their Investors, and meet the requirements of this Code. The Fund shall pay the cost prescribed by OCIF through regulations to conduct such examinations and inspections. In the event of noncompliance, OCIF may take actions as are necessary including the liquidation of the fund and cessation of additional offerings of its securities.

## CHAPTER 5 - VISITOR ECONOMY
## SUBCHAPTER A - ELIGIBILITY

Section 2051.01.- Business Engaged in Tourist Activities.

(a)    Any new or existing business engaged in a Tourist Activity not covered by a resolution or tax exemption decree conferred under the "Tourist Incentives Act," Act No. 52 of June 2, 1983, as amended, the "Puerto Rico Tourist Development Act," Act No. 78-1993, as amended, or the "Puerto Rico Tourism Development Act of 2010," Act No. 74-2010, as amended, or if being covered,

waives such resolution or exemption Decree in favor of a Decree under this Chapter, shall be deemed an Eligible Business which may enjoy the benefits of this Chapter.

   (b)   Tourist Activity means:

      (1)   the ownership or administration of:

         (i)   Hotels, including the operation of Casinos, Condo Hotels, Puerto Rican Paradores, Agri-Lodgings, Guest Houses, Timeshares and Vacation Clubs, lodgings that participate in the "Posadas de Puerto Rico" program, certified as Bed and Breakfast (B&B), and any other lodgings that, from time to time, participate in the programs promoted by the Tourism Office. Timeshare or vacation club ownership, or both per se, shall not be deemed to be a Tourist Activity, unless the owner is the creating Developer or a successor Developer, as such terms are defined in Act No. 204-2016, known as the "Puerto Rico Vacation Ownership Act"; or

         (ii)   Theme parks, golf courses operated by or associated with a Hotel that is an Exempt Business under this Code or any other similar law, or golf courses located within a tourist destination or resort, Tourist Marinas, docking facilities for tourists, Agritourism, Nautical Tourism (it being provided, however, that any Marinas in the Island Municipalities of Vieques and Culebra shall be deemed to be Tourist Marinas for purposes of this Chapter), Medical Tourism, and other facilities or activities that, due to the special attractive features de1iving from their usefulness as a source of active or passive entertainment or amusement, constitute a stimulus to domestic or foreign tourism, and any other tourism sector, insofar as the Secretary of the DEDC determines that such operation is necessary and convenient for the development of tourism in Puerto Rico; or

         (iii)   The operation of a business engaged in leasing to an Exempt Business under this Chapter, of property devoted to an activity covered under subparagraphs (i) or (ii) of this paragraph, except that none of the provisions

AAFAF_CONF_0007812

herein shall apply to contracts known as financial lease contracts. When leasing one or more vessels to an Exempt Business covered under this Chapter, the sail or motor vessel must be leased to such Exempt Business for a total period of not less than six (6) months during each calendar year.

        (iv)    The development and administration of sustainable tourism and ecotourism businesses, as provided in Act No. 254-2006, as amended, known as the "Puerto Rico Sustainable Tourism Development Public Policy Act," and the development and administration of useful natural resources as a source of active or passive entertainment or amusement including, but not limited to, caves, forests and natural reserves, lakes, and canyons, insofar as the Secretary of the DEDC determines that such development and administration is necessary and convenient for the development of tourism in Puerto Rico.

        (v)    eSports and Fantasy Leagues activities.

## SUBCHAPTER B - TAX BENEFITS

Section 2052.01.-Income Taxes.

(a)    The Tourist Development Income derived from Exempt Businesses that hold a Decree under this Chapter shall be subject to a preferential flat tax rate of four percent (4%) in lieu of any other income tax, if any, provided by the Puerto Rico Internal Revenue Code or any other law.

(b)    Distributions from earnings and profits.

(1)    General Rule.- Shareholders, partners, or members of an Eligible Business holding a Decree granted under this Chapter shall not be subject to income tax on distributions of dividends from earnings or profits arising from Tourist Development Income of the Exempt Business. Subsequent distributions from Tourist Development Income made by any Entity filing as a corporation or any partnership shall also be exempt from all taxes.

HEIN EXHIBIT 84

AAFAF_CONF_0007813

(2)     Distributions described in paragraph (1) above shall also be excluded from:

(i)     The alternate basic tax of an individual for purposes of the Puerto Rico Internal Revenue Code;

(ii)     The alternative minimum income tax of a corporation for the purposes of the Pue1io Rico Internal Revenue Code;

(iii)     The surtax on corporations and partnerships for purposes of the Puerto Rico Internal Revenue Code;

(iv)     The adjusted net income according to the books of a corporation for the purposes of the Pue1io Rico Internal Revenue Code.

(3)     Imposition of exempt distributions.- Distributions of dividends or benefits made by an Exempt Business holding a Decree granted under this Chapter, even after said Decree has expired, shall be deemed to be made from its Tourist Development Income if, at the time of the distribution, it does not exceed the undistributed balance of earnings and profits accrued and arising from its Tourist Development Income, unless said Exempt Business, at the time of the statement, chooses to distribute, totally or partially, the dividend or benefit of other earnings or profits. The amount, year of accrual, and nature of the distribution made from the earnings or profits arising from Tourist Development Income shall be that which is designated by said Exempt Business, through a notice sent, together with the payment, to its shareholders, members, or partners and to the Secretary of the Treasury, in an information statement, in the form established in the Puerto Rico Internal Revenue Code.

(i)     In the case of Entities that, on the date of the commencement of operations as Exempt Businesses, have earnings or profits accrued, the distribution of dividends or profits made as of that date shall be deemed to have been made from the undistributed balance of such earnings or profits, but

AAFAF_CONF_0007814

HEIN EXHIBIT 84

once such balance is exhausted by such distributions, the provĩsi0ns of this subsection shall apply.

(4)    The profits made from the sale, exchange, or other disposal of Entity Stocks or joint venture shares, or substantially all Assets of such corporations, partnerships, or limited liability companies, or joint ventures that are or have been Exempt Businesses, and Entity Stocks or joint venture companies that are in any way the owners of the aforesaid entities, shall be subject to the provisions of subsection (c) of this Section if such sale, exchange, or other disposal is conducted, and any subsequent distribution of such profits, be it as dividends or a distribution in liquidation, shall be exempt from any additional taxes.

(c)    Sale or exchange.- If the sale or exchange of Stocks of Entities or joint ventures shares, or substantially, all Assets devoted to a Tourist Activity of an Exempt Business is carried out, and such property continues to be devoted to a Tourist Activity after such sale for a pe1iod of at least twenty-four (24) months:

(1)    During the exemption period, the profit or loss resulting from such sale or exchange, which shall be recognized in the same proportion as Tourist Development Income of the Exempt Business, shall be subject to the payment of income taxes; the basis of such Stocks or Assets involved in the sale or exchange shall be determined, for purposes of establishing profits or losses, pursuant to the applicable provisions of the Internal Revenue Code in effect on the date of the sale or exchange.

(2)    After the expiration date of the exemption, only the profits or losses resulting from the sale or exchange of Stocks shall be recognized in the manner provided in paragraph (1) of this subsection, but only up to the total value of the Stocks in the books of the corporation, partnership, or limited liability company on the expiration date of the exemption (minus the sum of any exempt distribution received over such Shares after said date), minus the basis of such

Stocks. The remainder, if any, of the profits or losses shall be recognized pursuant to the provisions of Subtitle A of the Puerto Rico Internal Revenue Code. The profits or losses in the sale or exchange of Assets shall be recognized pursuant to the provisions of Subtitle A of the Puerto Rico Internal Revenue Code.

(3)     The requirement of having the property continue to be devoted to a Tourist Activity for a period of at least twenty-four (24) months shall not apply in those cases in which the sale or exchange involves Stocks of an Investor who is not a Developer nor exerts any kind of Control over the Exempt Business.

(d)     Flexible Tax Exemption.- Exempt Businesses shall be entitled to choose that their Tourist Development Income for a specific Taxable Year not be covered by the tax exemption provided in subsection (a) of this Section, by attaching a notice to that effect to their tax income tax retm11 for such Taxable Year filed on or before the date provided by the Puerto Rico Internal Revenue Code to file such return, including any time extension granted by the Secretary of the Treasury for the filing thereof. The exercise of this right by means of such notice shall be irrevocable and binding for the Exempt Business. However, the total number of years that an Exempt Business may enjoy the exemption shall not exceed fifteen (15) years.

(e)     Tourist Development Income shall not be subject to the following income taxes:

(1)     the alternative minimum tax established in Section 1022.03 of the Puerto Rico Internal Revenue Code;

(2)     the surtax on corporations and partnerships established in Section 1022.05 of the Puerto Rico Internal Revenue Code; and

(3)     the alternate basic tax for individuals established in Section 1021.02 of the Puerto Rico Internal Revenue Code.

(t)     Royalties or Proprietary Rights;

HEIN EXHIBIT 84

AAFAF_CONF_0007816

(1)     Taxes on and Withholding of Royalties paid by an Exempt Business to Corporations, Partnerships, or Limited Liability Companies or Other Foreign Persons Not Engaged in Trade or Business in Puerto Rico.

(i)     A twelve percent (12%) tax shall be imposed, charged, and paid for each Taxable Year, in lieu of the tax imposed under the Puerto Rico Internal Revenue Code, on the amount received on account of royalties or proprietary rights for the use in Puerto Rico of any Intangible Property related to the activity exempt under this Chapter, by all foreign corporations, foreign partnerships, or persons not engaged in trade or business in Puerto Rico, originating exclusively from sources within Puerto Rico.

(ii)     All Exempt Businesses required to pay royalties or proprietary rights to foreign corporations, foreign partnerships, or persons not engaged in trade or business in Puerto Rico for the use in Puerto Rico of Intangible Property related to the activity exempt under this Chapter, shall deduct and withhold at the source a tax equal to that which is imposed in subparagraph (i) of paragraph (1) of this subsection.

(2)     The appropriate tax shall be withheld at the source by an Exempt Business that makes royalty or proprietary right payments for the use in Puerto Rico of any Intangible Property related to the activity exempt under this Chapter and which originate from sources within Puerto Rico.

(g)     Exemption for individuals, estates, corporations, partnerships, limited liability companies, and trusts with respect to interest paid or credited on bonds, notes, or other obligations of certain Exempt Businesses.

(1)     Exemption.- Any individual, estate, corporation, partnership, limited liability company, or trust shall be exempt from any tax imposed under the Puerto Rico Internal Revenue Code and any other successor law; and any license fee imposed under the "Municipal License Tax Act," as amended, on income from

interest, charges, and other credits received with respect to bonds, notes, or other obligations of an Exempt Business for the development, construction, or rehabilitation or improvements of an Exempt Business under this Chapter, provided that the funds shall be entirely used in the development, construction, or rehabilitation or improvements of an Exempt Business or the payment of existing debts of said Exempt Business, insofar as the funds from these existing debts have been 01iginally used in the development, construction, or rehabilitation or improvements of the Exempt Business. The expenses incurred by any person making an investment as described above shall not be subject to the provisions of Section 1033.17(a)(5), (10), and (f) of the Pue1io Rico Internal Revenue Code with respect to such investment and the income derived therefrom.

(2)    The proceeds of the bonds, note, or other obligation must be granted directly to an Exempt Business covered under this Chapter.

(h)    Deduction and Net Loss Carryover.

(1)    If an Exempt Business incurs net losses other than from the operation of a Tourist Activity, said loss shall be deductible and may be used solely against income other than Tourist Development Income and shall be governed by the provisions of the Puerto Rico Internal Revenue Code.

(2)    If an Exempt Business incurs net losses while conducting a Tourist Activity, said loss may be deducted up to an amount equal to the percentage of its Tourist Development Income that would have been taxable.

(3)    A deduction for a prior year loss carryover shall be granted as provided below:

(i)    The excess of losses deductible under paragraph (2) of this subsection may be carried over against the taxable portion of the Tourist Development Income pursuant and subject to the limitations provided in said Section. The losses shall be carried over in the order they were incurred.

HEIN EXHIBIT 84

AAFAF_CONF_0007818

(ii)    Any net loss incmTed in a year in which the election under subsection (d) of this Section is in effect may be carried over only against the Tourist Development Income generated by the Exempt Business in a year in which the election under subsection (d) of this Section was made. Losses shall be carried over in the order they were incurred.

(4)    None of these provisions shall limit in any way the right under the Puerto Rico Internal Revenue Code of partners of a special partnership to claim a deduction on their distributable share of the loss incurred by the special paiinership against income from other sources subject to the limitations of the Puerto Rico Internal Revenue Code.

(i)    Basis or adjusted basis.- For purposes of this Code, except for subsection (d) of Section 3010.01, any reference to the term "basis" or the phrase "adjusted basis" shall require the computation of the same as established in Section 1034.02, 1071.05, or 1114.17 of the Puerto Rico Internal Revenue Code, prior to the adjustments included in this Chapter.

Section 2052.02.- Property Taxes.

(a)    Any Property Devoted to a Tourist Activity shall enjoy up to a seventy-five percent (75%) exemption on all municipal and state taxes on real and personal property.

(b)    In cases of personal property consisting of equipment and furniture to be used in a lodging facility, except for any commercial unit, and in cases of special Timeshare rights, vacation club property rights or lodging, as said terms are defined in Act No 204-2016, better known as the "Puerto Rico Vacation Ownership Act," of a Timeshare or Vacation Club Plan duly licensed by the Tourism Office pursuant to the provisions of Act No 204-2016, the personal or real property shall enjoy the exemption provided in this Section, regardless of who is the owner of the equipment, furniture, or real property devoted to a Tourist Activity. Said exemption shall

AAFAF_CONF_0007819

continue to be in effect as long as the exemption granted to the Timeshare or Vacation Club Plan is in effect. The Secretary of the DEDC shall prescribe by regulation the procedure to claim said exemption.

(c)   The Stock of an Entity that enjoys an exemption granted under this Chapter shall not be subject to property taxes.

Section 2052.03.- Municipal Taxes.

(a)   A New Exempt Business and an Existing Tourism Business that is an Exempt Business shall enjoy up to a fifty percent (50%) exemption on license fees, excise taxes, and other municipal taxes on its Tourist Development Income, transactions, events, or on use, imposed by any ordinance of any municipality.

(b)   Except for the provisions of the "Municipal License Tax Act," no municipality may impose taxes, fees, licenses, excise taxes, or any other kind of charge based on or related to the guest's stay in an Exempt Business.

Section 2052.04.- Taxes on Use and Consumption Items.

(a)   Exempt Businesses shall enjoy up to a one hundred percent (100%) exemption from the taxes imposed under Subtitles C, D, and DDD of the Puerto Rico Internal Revenue Code with respect to those items acquired and used by an Exempt Business relating to a Tourist Activity.

(b)   The exemption provided in this Section includes items acquired by a contractor or subcontractor, to be used solely and exclusively by an Exempt Business in construction works related to a Tourist Activity of said Exempt Business.

(c)   The exemption granted under this Section shall not apply to items or other property of such a nature that they are part of the inventory of the Exempt Business under Section 3010.0l(a)(2)(B) of the Puerto Rico Internal Revenue Code, and which represent property mainly held for sale during the regular operations of the trade or business; nor shall such exemption apply to the tax on hotel room

AAFAF_CONF_0007820

occupancy imposed under Act No. 272-2003, as amended, known as the "Room Occupancy Rate Tax Act."

(d)     The Secretary of the Treasury shall grant a credit or refund for any tax paid on the sale or on the introduction of items sold to Exempt Businesses for use relating to a Tourist Activity in the manner and with the limitations prescribed in the Puerto Rico Internal Revenue Code or any other successor law.

Section 2052.05.- Municipal Excise Taxes on Construction.

(a)     All Exempt Businesses and their contractors or subcontractors shall enjoy up to a seventy-five percent (75%) exemption on any tax, levy, fee, license, excise tax, rate, or charge for the construction of works to be devoted to a Tourist Activity within a municipality, imposed by any ordinance of any municipality, as of the date prescribed on the Decree.

(b)     Only for purposes of this exemption, any person in charge of performing administrative duties and the physical and intellectual work inherent to the construction of a work to be devoted to a Tourist Activity by an Exempt Business, and any middleman or chain of middlemen between such person and the Exempt Business shall be deemed to be a contractor or subcontractor of the Exempt Business.

(c)     In case of Condo Hotels, and only for purposes of this exemption, any person in charge of carrying out administrative duties and the physical and intellectual work inherent to the construction of a Condo Hotel, and any middleman between such person and the owner of a Condo Hotel unit, including the Developer of the Condo Hotel himself, when he has contracted another for the construction of the Condo Hotel, shall be deemed to be contractors of an Exempt Business in terms of each Condo Hotel unit that meets all the requirements to enjoy the benefits available in this Chapter, including, but not limited to, the requirement of devoting the same to an integrated leasing program for at least nine (9) months of the year.

HEIN EXHIBIT 84

AAFAF_CONF_0007821

(d)     Amount to be taken as exemption in the case of Condo Hotels.- The amount to be taken as an exemption in the case of a Condo Hotel pursuant to this paragraph shall be divided and assigned in terms of every unit of the Condo Hotel according to the proportion of the interest of each unit regarding the common elements of the regime, when all of the units of the Condo Hotel are devoted to a single horizontal property or another regime under the "Puerto Rico Condo Hotel Act," or by using any prorating method acceptable to the Secretary of the DEDC when the units are devoted to more than one horizontal property regime.

(1)     The exemption shall be taken in whole for the year in which it is required to meet the tax liability for the construction. However, it shall be understood that taxpayers shall be entitled to take as an exemption a one hundred-twentieth part of the amount available as assigned prorated exemption in relation to each unit during each consecutive month in which said units are devoted, from the time of their construction, to an integrated leasing program. The exemption taken at the time of the construction and development of the Condo Hotel shall be equal to the total amount of exemption which would be finally obtained on such account in the event that all units of the Condo Hotel are devoted to an integrated leasing program for at least nine (9) months for each of the first fifteen (15) years, namely, one hundred eighty (180) months as of the construction of each unit.

(2)     Each year, there shall be a reduction of the amount taken by virtue of the exemption applicable to such units:

(i)     Acquired during said year from the Entity that developed or built them and which have never been used for any purpose whatsoever prior to said acquisition and which are not devoted by the acquirer to an integrated leasing program, within the term provided by the Secretary of the DEDC dming which said units must be devoted to such a purpose so that they enjoy the benefits of this Chapter; or

AAFAF_CONF_0007822

HEIN EXHIBIT 84

(ii)   that during said particular year they have not met, for the first time, the requirement of being devoted to an integrated leasing program for at least nine (9) months during said year.

(3)   The equivalent of that reduction in the amount taken on account of the exemption may be recovered annually by the municipality from the taxpayers. The amount to be recovered annually shall be computed as follows:

(i)   First: The total portion of the exemption assigned pursuant to this paragraph shall be taken for each unit that during said year and that, for the first time, did not meet the requirement of being devoted at least nine (9) months to an integrated leasing program, and the same shall be multiplied by a fraction whose numerator shall be equal to the subtraction of one hundred eighty (180) minus the number of consecutive months during which said unit met the requirement of being devoted at least nine (9) months each year to an integrated leasing program, and whose denominator shall be one hundred eighty (180).

(ii)   Second: The results obtained from the corresponding equations for each unit described in the preceding subparagraph shall be added, and the final result thereof shall be the total amount of the exemption taken in excess and subject to recovery that year. Under no circumstance shall any charges, surcharges, penalties, interest, or any other kind of additional fee be imposed or charged with respect to any tax, levy, fee, license, excise tax, rate, or duty, whose amount is required pursuant to the provisions of this paragraph for reasons arising before or at the time it was determined that said exemption does not proceed, whether in whole or in paii.

(iii)   When computing the number of months said unit was devoted to an integrated leasing program each year, the fractions of the months shall be rounded up to the preceding month.

HEIN EXHIBIT 84

AAFAF_CONF_0007823

(4)     As a condition of the aforementioned exemption, any municipality, with the previous consent of the Secretary of the DEDC, may request from any taxpayer with respect to the tax, levy, fee, license, excise tax, rate, or duty on the construction of a Condo Hotel, or from those persons who have a proprietary interest on said taxpayers if they are Entities of any type, a security or Bond to ensure the payment of any amount indebted as a tax pursuant to this paragraph.

(5)     The operator of the integrated leasing program of a Condo Hotel shall submit an annual report to the director of finances of the municipality or municipalities where the Condo Hotel is located, should said municipality or municipalities impose any tax, levy, fee, license, excise tax, rate, or duty on the construction of said Condo Hotel. Said report shall indicate the dates on which participating units began to participate in the program, as well as the date or dates on which one or more units withdrew from the program.

(6)     For purposes of this subsection, should an Investor in a Condo Hotel fail to meet any requirement established in the Decree granted for such a purpose or should the same be revoked for any reason, said Investor shall be deemed to have failed to devote the Condo Hotel unit(s) covered under said Grant to an integrated leasing program. The Secretary of the DEDC shall notify the director of finances of the appropriate municipality, in case an Investor has failed to meet any requirement established in his Decree or if such Decree has been revoked.

(b)     In the case of Condo Hotels, it is hereby established that, in order to enjoy the exemption from municipal excise taxes on construction, each Condo Hotel unit must be devoted to an integrated leasing program for nine (9) months a year for a period of fifteen (15) consecutive years. In those cases in which the use of the Condo Hotel project changes and the Condo Hotel units are removed from the integrated leasing program before the term required under this Code, to such effect, insofar as the unit that is an Exempt Business under this Code is immediately

HEIN EXHIBIT 84

AAFAF_CONF_0007824

devoted to another Tourist Activity that is an Exempt Business under this Code, for not less than the remaining time period under the integrated leasing program. If this condition is not met, the subsequent acquirer of the unit shall be liable for any amount that must be recovered subsequently on account of this tax collected in excess. In such case, no recovery shall be in order for the years in which the unit belonged to an integrated leasing program and was devoted to another Tourist Activity that is an Exempt Business under this Chapter.

Section 2052.06.- Exemption for Fuel Used by the Exempt Business.

(a)      Oil by-products (excluding residual No. 6 fuel oil or bunker C) and any other hydrocarbon blend (including propane and natural gases) used as fuel by an Exempt Business under this Chapter to generate electric power or thermal power used by the Exempt Business in connection to a Tourist Activity, shall be completely exempt from taxes under Sections 3020.07 and 3020.07A of the Puerto Rico Internal Revenue Code.

Section 2052.07 .- Setting the Date for the Commencement of Operations and the Exemption Periods.

(a)      Effective Date of Exemption.-

(1)      Income Tax.- The exemptions in this Chapter relating to  taxes on the Tourist Development Income of an Exempt Business shall begin as of the date of commencement of its Tourist Activity, but never before the first day of the Taxable Year during which an application to avail itself of the benefits of this Code was duly filed and the appropriate application payment was made.

(2)      Real and personal property taxes.- The exemptions in this Chapter relating to the taxes on real and personal property devoted to a Tourist Activity of an existing business that is an Exempt Business shall begin as of January 1st of the Calendar Year during which an application to avail itself of the benefits of this Chapter has been duly filed with the Secretary of the DEDC, together with the

AAFAF_CONF_0007825

appropriate payment, or with regard to a New Tourism Business that is an Exempt Business, as of January 1st of the Calendar Year in which said business commences its Tourist Activity.

(3)    License fees, excise taxes, and other municipal taxes.- The exemptions in this Chapter relating to the license fees, excise taxes, and other municipal taxes, shall begin as of January 1st or July 1st, whichever date first occurs after the date on which the application to avail itself of the benefits of this Chapter was filed, together with the appropriate payment.

(4)    Sales and use taxes and excise taxes.- The exemptions in this Chapter relating to the sales and use taxes and excise taxes shall begin thirty (30) days after having filed an application with the applicable payment to avail itself of the benefits of this Chapter, insofar as a Bond is posted pursuant to the applicable provisions of the Puerto Rico Internal Revenue Code, prior to the commencement date chosen for the exemption and if the aforementioned application has not been denied. If the application for exemption is denied, the taxes mentioned in this paragraph shall be paid within sixty (60) days from the date of notice of the denial.

(5)    Municipal excise taxes on construction.- The exemptions in this Chapter relating to municipal excise taxes on construction, shall begin as of the filing date of an application to avail itself of the benefits of this Chapter. In the case of Condo Hotels, contractors and subcontractors shall begin to enjoy the exemption from the time the Developer files the master Decree application in which he describes the nature of the project, and meets such additional requirements as the Secretary of the DEDC may establish for such purposes.

(b)    An Exempt Business shall have the option to postpone each of the aforementioned commencement dates by notifying the Secretary of the DEDC to that effect. Such notices shall be filed on or before the date prescribed by regulation promulgated to such effect. Commencement dates may not be postponed for a period

AAFAF_CONF_0007826

that exceeds thirty-six (36) months from the date established in this Section. The Secretary of the DEDC shall issue an order prescribing the commencement dates of the exemption periods under this Code, according to the application of the Exempt Business and pursuant to the regulations promulgated for these purposes.

(c)     None of the provisions in this Section shall provide for the refund of taxes assessed, imposed, and collected prior to the dates established as the dates of commencement of operations for purposes of the exemptions provided in this Chapter.

(1)     The Secretary of the DEDC shall follow the procedures described in this Chapter and determine whether such exemption is essential for the development of the tourist industry, taking into account the facts stated, the nature of the physical facilities, the number of jobs, the total payroll, the total investment, the location of the project, its environmental impact, the reinvestment in the Exempt Business, whether in whole or in part, of the depreciation taken as a tax deduction, or other factors that, in his judgment, warrant such determination.

SUBCHAPTER C -  REQUIREMENTS FOR GRANTING EXEMPTIONS

Section 2053.01.- Requirements for Decree Applications.

(a)     Any person who has established or plans to establish an Eligible Business in Puerto Rico may apply for the benefits of this Chapter by filing an application with the Secretary of the DEDC pursuant to the provisions of Subtitle F of this Code.

(b)     Any person may apply for the benefits of this Chapter provided that said person meets the eligibility requirements of Subchapter A of this Chapter as well as any other criteria that the Secretary of the DEDC prescribes through regulations, administrative order, circular letter, or any other general communication, including as an evaluation criteria, the Eligible Business' contribution to the economic

AAFAF_CONF_0007827

development of Pue1io Rico. In addition, the evaluation criteria shall take into account the following:

(1)    Jobs.- The Tourist Activity and the Exempt Business shall promote the creation of new jobs.

(2)    Sound integration.- The conceptual design and planning of the Tourist Activity and the Exempt Business shall be, above all, carried out while taking into account environmental, geographical, and physical aspects, as well as the materials and goods that are abundantly available in the site where it is to be developed.

(3)    Commitment to the economic activity.- The Exempt Business shall acquire, to the extent possible, raw materials and Products Manufactured in Puerto Rico for the construction, maintenance, renovation, or extension of the physical facilities thereof. If the purchase of said products is not financially justified when taking into account criteria such as the quality, quantity, price, and availability of these products in Puerto Rico, the Secretary of the DEDC may waive compliance with this requirement and issue a certificate attesting to such facts.

(4)    Commitment to agriculture.- The Exempt Business shall acquire, to the extent possible, Puerto Rican agricultural products to be used in its operations. If the purchase of said products cannot be financially justified when considering criteria such as the quality, quantity, price, or availability of these products in Puerto Rico, the Secretary of the DEDC may waive compliance with this requirement and issue a certificate attesting to such facts.

(5)    Transfer of knowledge.- The Exempt Business shall, to the extent possible, acquire services from professionals or companies with a presence in Puerto Rico. However, if this is not possible due to criteria such as availability, experience, specificity, skill, or any other valid reason recognized by the Secretary of the DEDC, the Exempt Business may acquire such services through an intermediary with a

AAFAF_CONF_0007828

HEIN EXHIBIT 84

presence in Puerto Rico, which shall contract directly with the service provider chosen by the Exempt Business, in order to receive the requested services.

The term "services" shall mean, without impairing the authority of the Secretary of the DEDC to include other services through regulations, the contracting of jobs relating to:

(A)    Surveying, the production of construction plans, as well as engineering and architectural designs, and related services;

(B)    construction and all that pe1iains to this sector;

(C)    financial, environmental, technological, scientific, management, marketing, human resources, information technology, and auditing consulting services;

(D)    advertising, public relations, commercial art, and graphic design services; and

(E)    security or facility maintenance.

(6)    Financial commitment.- The Exempt Business shall submit proof that they use the services of, and that they deposit a significant amount of the income derived from their economic activity in, banking or cooperative institutions with a presence in Puerto Rico.

(7)    The Secretary of the DEDC shall be the sole official responsible for verifying and ensuring that the Exempt Business meets the eligibility requirements established in this Section and in this Chapter. If the Exempt Business partially meets the requirements established in this Section, the Secretary of the DEDC shall be required to establish a formula that allows for the quantification of the aforementioned factors, and for the subtraction of the requirement that has not been met from the total percentage of the specific credit, in order to obtain the exact percentage of the benefit in question.

SUBCHAPTER D - SPECIAL PROVISIONS

AAFAF_CONF_0007829

HEIN EXHIBIT 84

Section 2054.01.- Exempt Business Transfer.

(a)    General rule.- The transfer of the Grant conferred under this Chapter, or of the Stock or majority proprietary interest of an Exempt Business to another person who, in turn, shall continue to be engaged in the Tourist Activity to which the Exempt Business devoted itself previously in a manner substantially similar, shall require the previous approval of the Secretary of the DEDC. If such transfer is made without prior approval, the Decree shall be null at the time of the transfer. Notwithstanding the foregoing, the Secretary of the DEDC may approve any transfer made without his approval effective retroactively when, in his judgment, the circumstances of the case warrant such approval, taking into account the best interests of Puerto Rico and the tourism development purposes of this Code. All transfer applications under this Section must be approved or denied within sixty (60) days following the date of filing. Any transfer application that is neither approved nor denied within such period shall be deemed to be approved. The denial of a transfer application shall be made in writing and shall also state the reasons for such denial.

(b)    Exceptions.- The following transfers shall be authorized without previous consent:

(1)    The transfer of the assets of a deceased to his estate or the transfer by bequest or inheritance;

(2)    The transfer of stocks of an Exempt Business when such a transfer does not result, directly or indirectly, in a change in the ownership or Control of the Exempt Business;

(3)    The pledge or mortgage executed in the regular course of business with the purpose of providing a surety for a *bona fide* debt. Any transfer of Control, title, or interest by virtue of said contract shall be subject to the provisions of subsection (a) of this Section;

AAFAF_CONF_0007830

HEIN EXHIBIT 84

(4)     The transfer by operation of law, by a comi order or by a bankruptcy judge to a trustee or fiduciary. Any subsequent transfer to a third party other than the aforementioned debtor or bankrupt himself, shall be subject to the provisions of subsection (a) of this Section;

(5)     All transfers included in the exceptions to this Section shall be notified to the Secretary of the DEDC by the Exempt Business within thirty (30) days from the date of the transfer.


Section 2054.02.- Interrelation with other Laws.

(a)     The provisions of this Chapter shall not be used in conjunction with other incentives provided in this Code, except those provided in Sections 3010.01 and 5010.01, or any other economic or tax incentives laws in such a manner that the joint application of such laws results in obtaining tax or other benefits that exceed the benefits to which a party would be entitled under any of the laws applied individually.

(b)     Notwithstanding the foregoing, the following situations shall be excluded from this prohibition:

(1)     A real estate investment trust with a valid election under Subchapter B of Chapter 8 of Subtitle A of the Puerto Rico Internal Revenue Code, or any other prior or subsequent similar law, or any corporation, limited liability company, partnership, special partnership, or legal Entity entirely owned, whether directly or indirectly, by the real estate investment trust, may benefit from the provisions of this Chapter, except for the benefits provided under subsection (a) of Section 2052.01 of this Code.

(2)     An Exempt Business holding a Decree and that benefits from tax incentives under Chapter 6 of Subtitle B of this Code may elect to benefit, alternatively, from the provisions of this Chapter on the part devoted to the

AAFAF_CONF_0007831

generation and sale of power generated from alternative energy sources, such as wind, solar, water, and biomass, among others, for consumption by an Exempt Business.

Section 2054.03.- Releases and Other Exemptions.

(a) Lessees who lease personal property to Exempt Businesses are hereby released from the requirement of holding a personal property leasing license as defined under Act No. 20 of May 8, 1973, as amended, known as the "Personal Property Leasing Institutions Act."

(b) Exemption from the collection of fees and tariffs on public or private instruments.

(1) Any deeds, petitions or documents, judicial, public or private, related to the registration, annotation, cancellation, release, restriction, constitution, modification, extension, rectification, limitation, creation or renewal of any real property or contractual right that has access to the Property Registry in connection with real property covered under this Chapter, shall enjoy a ninety percent (90%) exemption from the payment of: (i) inte1nal revenue, legal assistance, or any other stamps required by law or regulation for the execution, issuance of any partial or complete certified copy, presentation, recordation, or any other operation in the Property Registry; and (ii) tariffs, levies, taxes, and fees for its filing, recordation, and any other transaction in the Property Registry. This exemption shall be subject to the prior approval of the Secretary of the DEDC, to be evidenced by a certification issued by the Secretary of the DEDC to that effect. A certified copy of such ce1iification shall be submitted to any notary public, Registrar, Court, or other Entity before which the benefits of this exemption are to be claimed and the same shall be attached to any document to be submitted at the Property Registry. The persons who are issued said certification may rely on the trustworthiness of such certification, which shall be presumed for all legal purposes to be correct and final.

AAFAF_CONF_0007832

HEIN EXHIBIT 84

(2)     The term "real or contractual right with access to the Property Registry," as used in the foregoing paragraph, includes all real or personal rights that, as an exception, currently have or may in the future have access to the Property Registry, including, but not limited in any way to:

(i)     easements, whether legal, real, or personal, or equitable easements;

(ii)     constitution of horizontal property, Timeshares, or Vacation Clubs, or Condo Hotels regimes;

(iii)     surface and building rights, and any other building record or certification of completion of works through which the registration of a building or improvement is requested;

(iv)     leases;

(v)     mortgages;

(vi)     mortgage cancellations;

(vii)     purchases and sales;

(viii)     exchanges;

(ix)     gifts;

(x)     right of first refusal, right of redemption, and ground rent;

(xi)     private waters;

(xii)     administrative concessions;

(xiii)     option to purchase, and

(xiv)     use restrictions.

Section 2054.04.- Limited Liability.

(a)     Notwithstanding the provisions of the Civil Code pertaining to the obligations of partners to third parties, any partners or stockholders that constitute a partnership or any other juridical person organized under the laws of Puerto Rico or any other jurisdiction that enjoys a Grant under this Chapter, shall not be liable with

AAFAF_CONF_0007833

their personal estate beyond their contribution to the licensee Entity for any debts and obligations of the Entity, in the event that the assets of the Entity are not enough to cover them. The limited liability shall benefit the partners or stockholders in terms of all the activities of the juridical Entity, including, but not limited to: (i) claims from tourist activities that resulted in the aforementioned Grant; (ii) activities related to the liquidation and termination of such activity; (iii) activities related to the disposal and Transfer of the property used in the same; and (iv) activities related to the operation of any Casino operating under a franchise granted pursuant to the "Games of Chance Act." The limited liability benefit provided herein shall take effect on the date of filing an application for exemption under this Code, and the same shall apply to any cause of action that may arise from the facts transpired, before the juridical Entity is dissolved.

CHAPTER 6 - MANUFACTURE

SUBCHAPTER A - ELIGIBILITY

Section 2061.01.- Businesses Engaged in Manufacture.

(a)    It is hereby provided that a business established or to be established in Puerto Rico by a Person may apply to the Secretary of the DEDC for an Incentives Decree when the Person is established in Puerto Rico to engage in the following eligible activities:

(1)    Any Industrial Unit that is established permanently for the Commercial Scale Production of any Manufactured Product.

(2)    The provIsl0ns of paragraph (1) of this subsection notwithstanding, any Industrial Unit that is established permanently for the Commercial Scale Production of a Manufactured Product that is not eligible under paragraph (1) or similar provisions under Prior Incentives Laws, except for the manufacture of boxes and containers made of corrugated cardboard, shall enjoy the benefits provided in this Chapter in connection with Manufactured Products sold

AAFAF_CONF_0007834

abroad, and in turn, shall be subject to the limitations on the determination of Industrial Development Income and to the base period income established in subsections (f) and (g) of Section 2062.01 of this Code.

(3)    Any Industrial Unit that would normally be considered as an Eligible Business under this Chapter, but that because of the competition from other jurisdictions due to low production costs, among other factors, it is not financially feasible to conduct the entire manufacturing operation in Puerto Rico, and thus it is required that a portion of the process or elaboration of the product is conducted outside of Puerto Rico. For purposes of this paragraph, the Secretary of the DEDC, upon endorsement from the Secretary of the Treasury, may determine that such Industrial Unit be considered as an Eligible Business under this Chapter in consideration of the nature of its facilities, the investment in the property, machinery and equipment, the number of jobs to be created in Puerto Rico, the payroll amount, and any other criteria or factors that so warrant it.

(4)    Any bona fide office, business, or establishment with its equipment and machinery, with the capacity and expertise necessary to render a service at commercial scale, provided that it complies with one of the following modalities:

(i)    The rendering in Puerto Rico of Fundamental Services to Business Clusters.

(ii)    The rendering in Pue1io Rico of Key Supplier Services, as such term is defined in this Code.

(5)    Property Devoted to Industrial Development.

(6)    Animal breeding for experimental use in scientific research and medical laboratories, and similar uses.

AAFAF_CONF_0007835

(7)     Any business engaged in scientific or industrial research and development in order to develop new products, or to develop new industrial services or processes through basic or applied experimentation.

(i)     For purposes of this Chapter, the term "research and development" means any activity aimed at advancing knowledge or capability in a field of science or technology, through the resolution of scientific or technological uncertainties. The new knowledge resulting from research and development must be useful for the creation of new products, and their improvement, or the creation of new services or processes of commercial value.

(ii)     For purposes of the Tax Credits provided in Sections 3030.01 and 3000.02, respectively, of this Code, research and development for continuous improvement as well as research and development processes carried out by a contract research organization for the benefit of a third party are excluded.

(8)     Any of the recycling activities defined hereinafter:

(i)     Partial Recycling Activities.- Recycling activities that carry out at least two or more of the following processes: collection, distribution, reconditioning, compaction, shredding, pulverization or other physical or chemical process that transforms articles of recyclable materials or recyclable materials as defined in Section 2(0) of Act No. 70-1992, as amended, known as the "Puerto Rico Solid Waste Reduction and Recycling Act," and recovered in Puerto Rico, as raw material, aggregates for product manufacturing, that prepare the material or product for its local sale or use or export, and that locally sell or use or export the processed material or product for its future use or recycling.

(ii)     Total Recycling Activities.- The transformation of recyclable material that has been primarily recovered in Puerto Rico into commercial articles, provided that said activity contributes to the objective of promoting the recycling industry in Puerto Rico.

HEIN EXHIBIT 84

AAFAF_CONF_0007836

(9)     Vertical fanning that integrates added value processes such as the hydroponics process, as well as the intensive growing of mollusks, crustaceans, fish or other aquatic organisms through the aquaculture process, the milk pasteurization process and the Agricultural Biotechnology processes provided that these operations are conducted pursuant to the norms and practices approved by the Department of Agriculture, as well as any other agro-industrial or livestock operation, including those operations solely engaged in the packaging, packing, preservation, classification, or processing of agricultural products.

(10)   Value added activities pertaining to the operation of the Port of the Americas, the port located in the former Roosevelt Roads Base, and the Mayagliez, Yabucoa, San Juan, and Guayama ports and any other port designated by the Secretary of the DEDC through regulations or other official communication such as: storage, consolidation of merchandise and dispatch thereof, repacking of consolidated parcels for shipment from said ports, the completion of semi-processed products for delivery to regional markets and any other business or service activity related to the administration or management of finished, semi-processed, or manufactured goods or products that are associated with, are part of, or move through said ports.

(11)   Development of licensed or patented software that can be reproduced at a commercial scale, and has the following features: (i) The user interacts with the software to carry out specific valuable tasks; (ii) the business models may include, (A) the distribution, whether physical, online or through the cloud or as part of a blockchain, and (B) the income earned from the licensing, program subscriptions, and/or services fees.

(i)     The following tasks are not deemed eligible:

(A)   Online content publishing companies and their search devices.

AAFAF_CONF_0007837

(B)    Companies that render services using technology, and have no human resources to develop new products.

(C)    Companies whose primary income is generated from advertising and marketing Puerto Rico's market.

(D)    The software has no methodology to carry out a valuable task.

(E)    Software entailing games of chance whose income is generated from bets.

(12)  The research, development, manufacture, transportation, launching, and operation from Pue1io Rico of satellites and service development centers for the processing and storage of data, excluding telephone, and radio and television broadcasting operations.

(13)  The licensing of Intangible Property developed or acquired by the Exempt Business holding a Decree granted under this Code.

(14)  General vessel maintenance, repair, and overhaul, as well as the parts and components thereof.

(15)  The development of videogames that may be reproduced on a commercial scale.

(b)    Except as provided in Subtitle F of this Code on renegotiations and conversions, any applicant receiving tax benefits or incentives under any other special law of the Government of Puerto Rico similar to those provided in this Code, as determined by the Secretary of the DEDC, shall not be deemed to be an Eligible Business under this Chapter with respect to the activity for which he enjoys said tax benefits or incentives.

## SUBCHAPTER B - TAX BENEFITS

Section 2062.01.- Income Tax.

AAFAF_CONF_0007838

(a)     Flat Income Tax Rate.- The Exempt Businesses holding a Decree under this Chapter shall be subject to a flat income tax rate on their Industrial Development Income for the entire exemption period from the date of commencement of operations, in lieu of any other income tax, if any, as provided in the Puerto Rico Internal Revenue Code.

(1)     In General.- The Exempt Businesses holding a Decree granted under this Chapter shall be subject to a preferential flat income tax rate of four percent (4%) on their Industrial Development Income, excluding Eligible Investment Income which shall be subject to the provisions of subsection (c) of this Section.

(2)     Alternate Tax.- The Exempt Businesses whose royalty payments for the use or privilege to use Intangible Property in Puerto Rico, made to Foreign Persons not engaged in trade or business in Puerto Rico, that are subject to the income tax rate provided in paragraph (2) of subsection (b) of this Section, shall be subject to a flat income tax rate of eight percent (8%) on their Industrial Development Income, excluding Eligible Investment Income which shall be subject to the provisions of subsection (c) of this Section.

(b)     Royalties and License Fees.- The provisions of the Puerto Rico Internal Revenue Code notwithstanding, in the case of payments made by Exempt Businesses holding a Decree granted under this Chapter to Foreign Persons not engaged in trade or business in Puerto Rico, for the use or the privilege to use in Puelio Rico Intangible Property relative to the operation declared exempt under this Chapter, and provided that said payments are deemed to be totally derived from sources within Puerto Rico, the following rules shall be observed:

(1)     In General.- A twelve percent (12%) tax shall be imposed, collected, and paid, in lieu of the tax imposed by the Puerto Rico Internal Revenue Code, on the amount of such payments, received or implicitly received by any

AAFAF_CONF_0007839

HEIN EXHIBIT 84

Foreign Person not engaged in trade or business in Puerto Rico, derived exclusively from sources within Puerto Rico, in the case of Exempt Businesses that are subject to the income tax provided in paragraph (1) of subsection (a) of this Section.

(2)    Alternate Tax.- The Secretary of the DEDC may authorize that the payments desc1ibed in subsection (b) of this Section be subject to a two percent (2%) tax rate in lieu of the rate imposed in paragraph (1) above.

i.    The alternate tax imposed in this paragraph (2) shall be established prior to the effective term of the Decree, and shall be irrevocable during the effective term of said Decree, and be documented as part of the terms and conditions agreed on in the Decree.

(3)    Any Exempt Business that is required to make payments to Foreign Persons for the use or privilege to use in Puerto Rico Intangible Property relative to the operation declared exempt under this Chapter, shall deduct and withhold at the source a tax equal to that which is imposed in paragraphs (1) and (2) of this subsection, as the case may be.

(c)    Taxes on Eligible Investment Income.- An Exempt Business holding a Decree granted under this Chapter shall enjoy a full exemption on the Eligible Investment Income. The expiration, renegotiation, or conversion of the Decree or other Grant of the investing or issuing Entity, as the case may be, shall not prevent the income earned from the investment from being treated as Eligible Investment Income under this Code during the remaining period of the investment.

(d)    Sale or Exchange of Stocks or Assets.

(1)    The proceeds from the sale, exchange, or other disposition of Stocks from Entities, which are or have been Exempt Businesses; shares in joint ventures and similar entities constituted by various corporations, partnerships, individuals or a combination thereof, which are or have been Exempt Businesses under this Chapter, and Stocks from Entities that are in any way the owners of the

HEIN EXHIBIT 84

AAFAF_CONF_0007840

entities described above, shall be subject to the provisions of paragraph (2) of this subsection when conducting said sale, exchange, or other disposition, and any subsequent distribution of said proceeds, be it as a dividend or as a distribution in liquidation, shall be exempt from the payment of additional taxes.

(2)  Sale or Exchange of Stocks or Assets.-

(i)  In the case of sales or exchanges of Stocks during the exemption period, the gain on the sale or exchange of Stocks from Entities, or substantially all assets of an Exempt Business holding a Decree granted under this Chapter, made during its exemption period and which would have been subject to income tax under the Puerto Rico Internal Revenue Code, shall be subject to a four percent (4%) tax on the amount of the gain realized, if any, in lieu of any other tax imposed by said Puerto Rico Internal Revenue Code. Any loss in the sale or exchange of said Stocks or assets shall be recognized pursuant to the provisions of the Puerto Rico Internal Revenue Code.

(ii)  After the Date of Expiration of the Exemption Period.- Gains on a sale or exchange conducted after the date of expiration of the exemption, shall be subject to the tax provided for in subparagraph (i) above, but only up to the amount of the value of the Stocks or substantially all the assets in the books of the corporation on the date of expiration of the exemption period, reduced by the amount of the exempt distributions received from said Stocks after said date, minus the base of said Stocks or substantially all assets. Any remainder of the gains or any loss, if any, shall be recognized pursuant to the provisions of the Puerto Rico Internal Revenue Code in effect on the date of the sale or exchange.

(iii)  Exempt Exchanges.- The exchanges of Stocks which do not result in taxable events for being exempted reorganizations shall be treated pursuant to the provisions of the Puerto Rico Internal Revenue Code in effect on the date of the exchange.

AAFAF_CONF_0007841

(iv)    Determination of Bases in the Sale or Exchange of Stocks.- In the sale or exchange, the base of the Stocks or assets of Exempt Businesses under this Chapter shall be determined pursuant to the applicable provisions of the Puerto Rico Internal Revenue Code in effect at the time of the sale or exchange, increased by the amount of the Industrial Development Income accrued under this Chapter.

(v)    For purposes of this paragraph (2), the term "substantially all assets" shall mean those assets of the Exempt Business which represent not less than eighty percent (80%) of the value in the books of the Exempt Business at the time of the sale.

(vi)    The Secretary of the DEDC, in consultation with the Secretary of the Treasury, shall render effective the provisions of this subsection (b) in the Incentives Regulations.

(e)    Liquidation.-

(1)    General Rule.- No income taxes shall be imposed or collected from the assignor or the assignee in relation to the total liquidation of an Exempt Business holding a Decree granted under this Chapter, on or before the expiration of its Decree, provided the following requirements are met:

(i)    Any property distributed in the liquidation was received by the assignee pursuant to a liquidation plan on or before the date of expiration of the Decree; and

(ii)    the distribution in liquidation by the assignor, whether all at once or from time to time, was made by the assignor to cancel or totally redeem its capital stock.

The base of the assignee on the property received in liquidation shall be equal to the adjusted base of said Exempt Business on said property immediately before the liquidation. Furthermore, and for purposes of this

AAFAF_CONF_0007842

Section, a corporation or partnership participating in a paiinership that is an Exempt Business shall be deemed to be, in tum, an Exempt Business.

(2)    Liquidation by Assignors with Revoked Decrees.- If the Decree of the assignor were revoked prior to its expiration date pursuant to the provisions of Section 6020.09 of Subtitle F of this Code in relation to allowable revocations, the surplus accrued over Industrial Development Income on the date the revocation becomes effective, may be transferred to the assignee at any later time, subject to the provisions of paragraph (1) of this subsection. In cases of mandatory revocations, the surplus accrued shall be subject to the taxation in accordance with the Internal Revenue Code.

(3)    Liquidations after the Expiration of the Decree.-After the Decree of the assignor has expired, the assignor may transfer to the assignee the surplus accrued over Industrial Development Income earned during the effective term of the Decree, subject to the provisions of paragraph (1) of this subsection.

(4)    Liquidation of Assignors with Exempt and Nonexempt Activities.- In the event that the assignor carries out exempt and nonexempt activities, the assignor may transfer to the assignee the surplus over the Industrial Development Income accrued under this Chapter and the Property Devoted to Industrial Development under this Chapter as part of its total liquidation, subject to the provisions in paragraph (1) of this subsection. The accrued surplus over sources other than Industrial Development Income and the property that is not devoted to industrial development, shall be distributed pursuant to the provisions of the Puerto Rico Internal Revenue Code.

(f)    Businesses Ineligible under Prior Incentives Laws.-

(1)    During the first four (4) years of effectiveness of this Code, in the case of Exempt Businesses under paragraph (2) of subsection (a) of Section 2061.01 of this Code engaged in the production of Manufactured Products to be sold abroad,

AAFAF_CONF_0007843

which have not been eligible for an Incentives Decree under this Chapter or under Prior Incentives Laws, the flat income tax rates provided in this Section shall be paiiially applicable to the Industrial Development Income, as provided below:

(i)     Twenty-five percent (25%) of the Industrial Development Income generated during the first Taxable Year of the Exempt Business shall be subject to the applicable flat income tax rate as provided in this Section, and the remaining seventy-five percent (75%) of the Industrial Development Income shall be subject to the payment of taxes pursuant to the applicable rules and rates under the Puerto Rico Internal Revenue Code.

(ii)    Fifty percent (50%) of the Industrial Development Income generated during the second Taxable Year of the Exempt Business shall be subject to the applicable flat income tax rate provided for in this Section, and the remaining fifty percent (50%) of the Industrial Development Income shall be subject to the payment of taxes pursuant to the applicable rules and rates under the Pue1io Rico Internal Revenue Code.

(iii)   Seventy-five percent (75%) of the Industrial Development Income generated during the third Taxable Year of the Exempt Business shall be subject to the applicable flat income tax rate provided for in this Section, and the remaining twenty-five percent (25%) of the Industrial Development Income shall be subject to the payment of taxes pursuant to the applicable rules and rates under the Puerto Rico Internal Revenue Code.

(iv)    For the fourth Taxable Year of the Exempt Business, the total amount of the Industrial Development Income shall be subject to the applicable flat income tax rate, as provided for in this Section.

(g)     Limitation on Benefits.-

(!)     In the event that as of the date of the application for incentives, pursuant to the provisions of this Code, an Eligible Business is engaged in the

AAFAF_CONF_0007844

HEIN EXHIBIT 84

activity for which the benefits of this Chapter are granted, the Eligible Business may enjoy a flat tax rate on Industrial Development Income as provided for in this Section, only pertaining to the increase in the net income of said activity that generated over the average net income for the last three (3) Taxable Years prior to the filing date of the application, which is hereby denominated "base period income", for purposes of this paragraph.

(2)   For purposes of detennining the base period, the production and sale of any predecessor business of the applicant business, shall be taken into account. For such purposes, "predecessor business" shall include any business related to the applicant business, even if not previously exempted, and without considering whether it was operating under another legal name or under other owners.

(3)   The income attributable to the base period shall be subject to the income tax rates provided in the Puerto Rico Internal Revenue Code.

(4)   The base period income shall be adjusted, reducing said amount by twenty-five percent (25%) annually, until it is reduced to zero (0) by the fourth Taxable Year in which the terms of the Decree of the Exempt Business under this Code apply. For such purposes, those years for which the Exempt Business has made an election under Section 2011.05 of this Code, shall be taken into consideration.

(h)   Credit for Investments in Technology Transfers.-

(!)   Exempt Businesses holding a Decree under this Chapter and subject to the income tax rate provided in paragraph (1) of subsection (a) of this Section may take a credit against the income tax attributable to the net income of its Industrial Development Income, equal to the rate provided in paragraph (1) of subsection (b) of this Section with regard to the payments made to Foreign Persons not engaged in trade or business in Puerto Rico, for the use or privilege to use in Puerto Rico Intangible Property in its operation declared exempt under this Chapter,

AAFAF_CONF_0007845

provided that the income on account of such payments is fully derived from sources within Puerto Rico.

(2) In the case of Exempt Businesses that are subject to the alternate tax provided in paragraph (2) of subsection (a) of this Section, the percentage applicable for purposes of paragraph (1) above shall be that which is provided in paragraph (2) of subsection (b) of this Section.

(3) The tax credit established in this paragraph shall be nontransferable, but may be carried over until exhausted. However, said carryover shall never exceed a period of eight (8) taxable years, counted from the close of the Taxable Year in which the credit was originated. This carryover shall never result in a lesser tax than that provided in paragraph (3) of subsection (g) of this Section. This credit shall be non-refundable.

(i) Application of Credit and Minimum Tax.- The application of the credit established in subsection (h) of this Section shall be subject to the following rules:

(1) Tentative Tax.- The Exempt Business shall initially compute its tax obligation according to the flat income tax rate provided in paragraphs (1) and (2) of subsection (a) of this Section, as the case may be.

(2) Application of Credits.- The total of the sum of tax credits granted under subsection (h) of this Section, subject to the limitations that apply to such credit and claimed by the Exempt Business, shall be reduced from the tax obligation computed in paragraph (1) of this subsection (i).

(3) Minimum Tax.- The tax assessed over Industrial Development Income computed after having applied the credits pursuant to paragraph (2) of this subsection, shall never be less than that amount which, after having been added to the amounts deposited under subsection (b) of this Section with respect to the taxable year, results in:

AAFAF_CONF_0007846

i.      One percent (1%) of the Industrial Development Income of the Exempt Business, in the case of Exempt Businesses which generate an average gross income, including the gross income of members within their controlled group, or of the group of related entities, as such terms are defined in Sections 1010.04 and 1010.05 of the Internal Revenue Code, of less than ten million dollars ($10,000,000.00) during the three (3) previous taxable years.

ii.      Three percent (3%) of the Industrial Development Income of the Exempt Business in the case of local investment businesses; for purposes of this subsection, a local investment business means any Exempt Business of which at least fifty percent (50%) belongs directly to Resident Individuals of Puerto Rico.

iii.      For all other cases, the flat income tax rates provided in paragraphs (1) and (2) of subsection (a) of this Section, as the case may be, multiplied by the net income attributable to Industrial Development Income, excluding Eligible Investment Income.

(4)      An Exempt Business holding a decree granted under this Chapter shall pay whichever amount is greater between paragraph (2) and paragraph (3) of this subsection.

(5)      In the cases described in subparagraphs (i) and (ii) of paragraph (3) of this subsection, the minimum tax provided therein shall cease to apply, and subparagraph (ii) or (iii), as the case may be, shall be applicable, for Taxable Years in which the Exempt Business fails to comply with the provisions of paragraph (i) or (ii), as the case may be.

Section 2062.02.- Real and Personal Property Taxes.

(a)      In General.-

(1)      The personal property of an Exempt Business holding a Decree granted under this Chapter, which has been used in the development, organization, construction, establishment, or operation of the activity covered under the Decree,

shall enjoy a seventy-five percent (75%) exemption on municipal and state taxes on personal property during the exemption period.

(2)  The real property of the Exempt Business holding a decree granted under this Chapter, which has been used in its development, organization, construction, establishment, or operation, shall enjoy a seventy-five percent (75 %) exemption on municipal and state prope1iy taxes during the exemption period.

(b)  Construction Period.- The real property of an Exempt Business holding a Decree granted under this Chapter shall have a seventy-five percent (75%) exemption during the period authorized under the Decree to carry out the construction or establishment of said Exempt Business, and during the first Fiscal Year of the Government in which the Exempt Business would have been subject to property taxes for having been in operation as of January 1st prior to the beginning of said Fiscal Year, were it not for the exemption provided herein. Likewise, the real property of said Exempt Business which is directly related to any expansion of the Exempt Business shall be fully exempt from property taxes during the period authorized under the Decree for carrying out the expansion. Once the total exemption period established in this subsection expires, the partial exemption provided in this Section shall begin to apply.

(c)  Eligible Investments shall be fully exempt from property taxes.

(d)  Optional Self-Assessment Method.-

(1)  An Exempt Business, under this Chapter, may use the self-assessment method provided for in this paragraph in order to determine the classification and the real prope1iy tax on property which has not been assessed by virtue of the Act No. 83-1991. In such cases, the Exempt Business shall comply with the procedures established in Act No. 83-1991, provided that it has fulfilled the notice requirements established in said Act or in the Decree.

HEIN EXHIBIT 84

AAFAF_CONF_0007848

(2)    The self-assessment method provided for in this paragraph may be used exclusively for property which is effectively deemed to be real property by reason of the use and location to which it is devoted to and for being used in the development, organization, construction, establishment, or operation of the eligible activity. The method established herein may not be used to appraise land or structures, including real property permanently affixed to a structure and which exclusively serves said structure, such as lighting equipment.

(3)    The assessed value of the property classified as real property by the Exempt Business, to be assessed under this paragraph, shall be equal to thirty-five percent (35%) of the depreciated value in the books of the Exempt Business. The assessed value shall not be less than that determined by the percentage of the cost, computed on the basis of the useful life of the property, as provided below:

| Useful life | Cost |
|---|---|
| 2-5 years | 25% |
| 6-10 years | 17% |
| 11-15 years | 15% |
| 16 years or more | 10% |

(4)    The Exempt Business shall also enjoy the exemption established in subsection (a) of this Section on the value assessed pursuant to the provisions of paragraph (3) of this subsection. The provisions of the "Municipal Property Tax Act," shall apply in terms of the rate, date, and method of payment of this tax as if it were a tax assessed under said Act.

(5)    Any Exempt Business that has opted to use the self-assessment method provided in this subsection, shall file a self-assessed real property tax return not later than May 15 of every year, in which it shall identify the property that shall be deemed to be real property, and shall determine its real property tax obligation

AAFAF_CONF_0007849

HEIN EXHIBIT 84

for the Fiscal Year of the Government, pursuant to the provisions of paragraph (3) of this subsection. Once the Exempt Business adopts the assessment method provided in this subsection, it shall file and pay on the date the first return is to be filed, in addition to the tax corresponding to the current Fiscal Year, the tax corresponding to the previous four (4) fiscal years, or to the number of years it has been operating, whichever is less. The Exempt Business may make the payment corresponding to its tax obligation for the previous four (4) fiscal years, or the c01Tesponding number of years, as provided above, in two (2) installments. The first of such payments shall be made when filing the corresponding tax return and the second payment shall be made within six (6) months following the filing date of the first tax return under the option of this method. Within ten (10) business days as of the date on which the Exempt Business files the tax retml1 provided in this paragraph, CRIM shall notify the concerned municipalities of the decision of the Exempt Business to avail itself of the optional self-assessment method.

(6)     Once the property classified and assessed under the optional method provided in this subsection is classified and assessed by CRIM pursuant to the provisions of the "Municipal Property Tax Act," and after having exhausted the review procedures established under said Act, the value of the property of the Exempt Business shall be that which is established by CRIM in lieu of the value determined under the self-assessment method provided for in this subsection. In such cases, the Exempt Business shall comply with the procedures established in the "Municipal Property Tax Act." The classification and assessment made by CRIM pursuant to the aforementioned act shall only have a prospective effect for all legal purposes, for which reason no determination of deficiency shall be made with respect to the method used or the classification of the property as real property for the years in which the optional self-assessment method was used.

Section 2062.03.- Municipal License Fees and Other Municipal Taxes.

AAFAF_CONF_0007850

(a)     The Exempt Businesses holding a Decree granted under this Chapter shall enjoy a fifty-percent (50%) exemption on municipal license fees, municipal excise taxes and other municipal taxes imposed by any municipal ordinance, during the periods provided for in Section 2011.04 of this Code.

(b)     The Exempt Business holding a Decree granted under this Chapter shall enjoy total exemption from municipal taxes or municipal license fees applicable to the volume of business of said Exempt Business during the semester of the Fiscal Year of the Government during which the Exempt Business starts operations in any municipality, pursuant to the provisions of the "Municipal License Tax Act." Furthermore, the Exempt Business holding a Decree granted under this Chapter shall be fully exempt from municipal taxes or license fees on the volume of business attributable to said municipality during the two (2) semesters of the Fiscal Year or the fiscal years of the Government following the semester in which it commenced operations in said municipality.

(c)     Exempt Businesses holding a Decree granted under this Chapter and their contractors and subcontractors shaH be fu]]y exempt from any tax, levy, fee, license, excise tax, rate, or tariff imposed by any municipal ordinance on the construction of works to be used by said Exempt Business within a municipality, without it being understood that said taxes include the municipal license fee imposed on the volume of business of the contractor or subcontractor of the Exempt Business, during the term authorized under the tax exemption Decree.

(d)     The Eligible Investment Income, as said term is defined in subsection (a), paragraph (3) of Section 1020.06 of this Code, shall be fully exempt from municipal license fees, municipal excise taxes, and other municipal taxes.

(e)     Any Exempt Business, under this Chapter or under Prior Incentives Laws, may waive the five-percent (5%) discount benefit for advance payment provided for in Section 1l of the "Municipal License Tax Act," and pay the total

HEIN EXHIBIT 84

AAFAF_CONF_0007851

amount of its municipal license fee on the date provided for in said Act. In the case of Exempt Businesses that opt to make the advance payment and waive the discount, the statute of limitations for the assessment and collection of the license fee imposed under the "Municipal License Tax Act" shall be three (3) years as of the date on which the Volume of Business Declaration is filed, in lieu of the terms provided for in subsections (a) and (b) of Section 19 of the "Municipal License Tax Act."

Section 2062.04.- State Excise Taxes and Sales and Use Tax.

(a)     In addition to any other exemption from excise taxes or from the sales and use tax granted under Subtitles C and D, respectively, of the Puerto Rico Internal Revenue Code, the following aiiicles directly or indirectly introduced or acquired by an Exempt Business holding a Decree granted under this Chapter shall be fully exempt from said taxes for the duration of the exemption.

(1)     Any raw material to be used in Puerto Rico to manufacture finished products, except for hydraulic concrete, crude oil, partially manufactured products, finished oil products, and any other hydrocarbon mixture. Provided, however, that natural or propane gas used in distributed electric power and/or thermal energy generation shall be deemed to be raw material for purposes of this Code. For purposes of this subsection and the applicable provisions of Subtitles C and D of the Puerto Rico Internal Revenue Code, the term "raw material" shall include:

(i)     Any product in its natural form, derived from agriculture or from extractive industries;

(ii)     Any byproduct, residual product, or partially manufactured or finished product; and

(iii)     Sugar in bulk or in units of fifty (50) pounds or more, to be used exclusively in the manufacturing of products.

HEIN EXHIBIT 84

AAFAF_CONF_0007852

(2)     The machinery, equipment, and accessories thereof used exclusively in the manufacturing process or in the construction or repair of vessels, inside or outside the premises of a manufacturing plant, machinery, trucks, or forklifts used exclusively and permanently to transport the raw material within the circuit of the Exempt Business, machinery, equipment, and accessories used to carry out the manufacturing process, or which the Exempt Business is required to acquire under federal or state law or regulations, for the operation of an Industrial Unit. The foregoing notwithstanding, the exemption shall not cover the machinery, devices, equipment, or vehicles used in whole or in part in the administrative or commercial phase of the Exempt Business, except when these are also used in at least ninety percent (90%) of the manufacturing process, or in the construction or repair of vessels, in which case, these shall be deemed to be used exclusively in said manufacturing process.

(3)     Any machinery and equipment that an Exempt Business holding a Decree granted under this Chapter has directly or indirectly acquired and is compelled to use in order to meet environmental, safety, and health requirements, shall be fully exempt from state excise taxes, and the sales and use tax.

(4)     The machinery, materials, equipment, parts, and accessories used (i) in laboratories of an experimental or referential nature including, but not limited to, those used for any science and technology research and development activity, and (ii) in technology and Renewable Energy research projects within the Puerto Rico Science, Technology, and Research District established under Act No. 214-2004, as amended.

(5)     The machinery, equipment, parts, and accessories used in the preliminary regional exploration phase geared toward the mineralogical development of Puerto Rico, and the dry docks or shipyards for the construction or repair of ships.

HEIN EXHIBIT 84

AAFAF_CONF_0007853

(6)     The fuel used by the Exempt Business, under this Chapter, to generate electric power and/or thermal energy for its own use or for use by its Affiliates.

(7)     Chemical materials used by an Exempt Business in the treatment of used waters.

(b)     Exceptions.- The following use and consumption articles used by the Exempt Business holding a Decree granted under this Chapter, regardless of the area or premises where they are located or their use, shall not be deemed to be raw material, machinery, or equipment for purposes of paragraphs (1), (2), (3), and (4) of subsection (a) of this Section;

(1)     Any construction material and prefabricated structures;

(2)     any electrical material and water pipes affixed to the structures;

(3)     the lubricants, fats, waxes, and paints not relative to the manufacturing process;

(4)     the lighting posts and lighting fixtures installed in parking areas; and

(5)     treatment plants and electric substations.

Section 2062.05.- Tax Exemption Periods.

(a)     Exemption.- An Exempt Business holding a Decree issued under this Chapter shall enjoy a tax exemption for a period of fifteen (15) years.

(b)     Provisions Applicable to Business Tax Exemptions on Property Devoted to Industrial Development.-

(1)     The period during which a Property Devoted to Industrial Development belonged to any political subdivision, agency, or instrumentality of the Government shall not be deducted from the period refened to in subsection (a) of this Section. In such cases, the property shall be deemed, for purposes of this Code, as not having been previously devoted to industrial development.

AAFAF_CONF_0007854

(2)    When the Exempt Business holding a Decree granted under this Chapter is Property Devoted to Industrial Development, the period referred to in subsection (a) of this Section shall not cover those periods in which the Property Devoted to Industrial Development is in the market for leasing by an Exempt Business, or is not occupied, or is leased to a non-exempt business, except as provided below. Said periods shall be computed based on the total period during which the property was at the disposal of an Exempt Business, provided that the total number of years does not exceed the number of years provided in the aforementioned subsection (a) of this Section, and the Exempt Business that qualifies as Property Devoted to Industrial Development notifies the Secretary of the DEDC, in writing, of the date on which the property is leased for the first time to an Exempt Business, and the date on which it becomes vacant and is re-occupied by another Exempt Business. If the exemption of an Exempt Business holding a Decree as Property Devoted to Industrial Development expires while said property is being used under a lease by an Exempt Business engaged in manufacturing, said Exempt Business of Property Devoted to Industrial Development may enjoy a fifty-percent (50%) exemption on property taxes while the Exempt Business engaged in manufacturing continues to use said property under lease.

(3)    When the Exempt Business holding a Decree granted under this Chapter is Property Devoted to Industrial Development, the period referred to in subsection (a) of this Section shall continue its normal course, even if the exemption Decree of the Exempt Business using the aforementioned property, as a result of the expiration of its normal period or due to the revocation of its Decree, lapses before the exemption period of the Property Devoted to Industrial Development, unless, in the event of revocation, it is proven that at the time in which said property was made available to the Exempt Business, the property owners were aware of the facts which caused the later revocation of the Decree.

AAFAF_CONF_0007855

HEIN EXHIBIT 84

(c)     Establishment of Operations in other Municipalities.- An Exempt Business holding a Decree granted under this Chapter may establish additional industrial units as part of the operations covered by an exemption Decree in effect, in the same municipality where the principal office is located, or in any other municipality of Puerto Rico, with no need to request a new exemption Decree, provided that it notifies the Incentives Office within thirty (30) days from the commencement of operations of the additional Industrial Unit. The additional Industrial Unit shall enjoy the exemptions and benefits provided for in this Chapter for the remainder of the exemption period under the Decree in effect.

(d)     Interruption of the Exemption Period.- When an Exempt Business holding a Decree granted under this Chapter has ceased operations and subsequently wishes to resume operations, the time during which it was not operating shall not be deducted from its corresponding exemption period and said business shall enjoy the remainder of its exemption period, while its tax exemption Decree is in effect, provided that the Secretary of the DEDC determines that said operations ceased due to justified causes and that the reopening of said Exempt Business would serve the best social and economic interests of Puerto Rico.

(e)     Setting the Date of Commencement of Operations and of the Exemption Periods.-

( 1)     The Exempt Business holding a Decree under this Chapter may choose the date of commencement of operations for purposes of Section 2062.01 of this Chapter by filing a sworn statement with the Incentives Office, stating the unconditional acceptance of the Decree made to the Exempt Business under this Code. For purposes of Section 2062.01 of this Code, the date of commencement of operations may be the date of the first payroll for training or production of the Exempt Business holding a Decree granted under this Chapter, or on the date of

AAFAF_CONF_0007856

commencement of the project's construction or any other date within a period of two (2) years following the date of the first payroll.

      (2)   The Exempt Business holding a Decree granted under this Chapter may defer the application of the flat tax rate provided for in Section 2062.01 of this Code for a period not to exceed two (2) years from the date of commencement of operations as established under paragraph (1) of subsection (e) of this Section. During the deferral period, said Exempt Business shall be subject to the applicable tax rate under Subtitle A of the Puerto Rico Internal Revenue Code.

      (3)   The exemption period provided in subsection (b) of Section 2062.02 of this Chapter for real and personal property tax exemption, shall begin on January 1st of the fiscal year in which the Exempt Business commences the activities covered under the Decree, but never before January 1st of the year in which an application is filed to avail itself of the benefits of this Chapter.

      (4)   In the case of Exempt Businesses holding a Decree granted under this Chapter and which have been operating on a commercial scale before applying for the benefits of this Chapter, the date of commencement of operations, for purposes of the flat income tax rate provided in subsection (a) of Section 2062.01 of this Code shall be the date on which said application is filed with the Incentives Office, but the commencement date may be deferred for a period not to exceed two (2) years as of said date.

      (5)   The Exempt Business holding a Decree granted under this Chapter shall commence commercial-scale operations within a term of one (1) year as of the signature date of the Decree. Such term may be deferred at the request of said business when there is a justified cause therefor, but no time extensions shall be granted to delay the date of commencement of operations for a term exceeding five (5) years from the approval date of the Decree.

AAFAF_CONF_0007857

HEIN EXHIBIT 84

Section 2062.06.- Special Deduction for Investment in Buildings, Structures, Machinery, and Equipment.-

(a)    Any Exempt Business holding a Decree granted under this Chapter shall be provided with the option to deduct in the taxable year during which these were incurred, in lieu of any capitalization of expenses required under the Puerto Rico Internal Revenue Code, the total expenses incurred after the effective date of this Code for the purchase, acquisition, or construction of buildings, structures, machinery, and equipment, provided that said buildings, structures, machinery, and equipment:

1.    have not been previously used or depreciated by any other business or person in Puerto Rico; and

2.    are used to manufacture the products or to render the services for which the benefits provided under this Chapter were granted.

(b)    The deduction provided for in this Section shall not be in addition to any other deduction provided for by law, but rather, merely an acceleration of the deduction of the aforementioned expenses. Provided, that in the case of machinery and equipment previously used outside of Puerto Rico, but not previously used or depreciated in Puerto Rico, the investment in said machinery and equipment shall qualify for the special deduction provided for in this subsection (b) only if said machinery and equipment still has left, as of the date of its acquisition by the Exempt Business, at least fifty percent (50%) of its useful life, determined pursuant to the Puerto Rico Internal Revenue Code.

(c)    The Exempt Business holding a Decree granted under this Chapter may deduct, within the Taxable Year in which these are incurred, the total amount of expenses incurred after the effective date of this Code, in remodeling or repairing buildings, structures, machinery, and equipment, in lieu of any capitalization of expenses required under the Puerto Rico Internal Revenue Code, in the event that

AAFAF_CONF_0007858

HEIN EXHIBIT 84

said buildings, structures, machinery, and equipment have been acquired or built before or after the effective date of this Code, as well as when they have or have not been used or depreciated by another business or person prior to the acquisition thereof by the Exempt Business holding a Decree granted under this Chapter or under Previous Tax Incentives Laws.

(d)     The amount of the Investment in Manufacture for the special deduction provided for in this Section in excess of the Industrial Development Income of the Exempt Business holding a Decree granted under this Chapter during the year the investment was made, may be claimed as a deduction in subsequent Taxable Years until said excess is exhausted. No deduction shall be allowed under this subsection in relation to that portion of the investment pertaining to buildings, structures, machinery, and equipment over which the Exempt Business receives or has received Tax Credit pursuant to Subtitle C of this Code.

(e)     The Exempt Business may also claim the special deduction provided in this Section during any year in which it elects the flexible tax exemption benefit provided for in Section 2011.04 of this Code.

SUBCHAPTER C - REQUIREMENTS FOR GRANTING EXEMPTIONS

Section 2063.01.- Requirements for Decree Applications.

(f)[sic] Any person who has established or plans to establish an Eligible Business in Puerto Rico under this Chapter may apply for the benefits of this Code by filing an application with the Secretary of the DEDC pursuant to the provisions of Subtitle F of this Code.

(g)[sic] Any person may apply for the benefits of this Chapter provided that said person meets the eligibility requirements of Subchapter A of this Chapter as well as any other criteria that the Secretary of the DEDC prescribes through regulations, administrative order, circular letter, or any other general

HEIN EXHIBIT 84

AAFAF_CONF_0007859

communication, including as an evaluation criteria the Eligible Business' contribution to the economic development of Puerto Rico.

SUBCHAPTER D - SPECIAL PROVISIONS

Section 2064.01.- Successor Manufacturing Business.

(a)      A Successor Manufacturing Business may avail itself of the provisions of this Chapter, provided:

(1)      The Predecessor Exempt Manufacturing Business has not ceased operations for over six (6) consecutive months before the Successor Manufacturing Business files the application for exemption, or during the exemption period of the Successor Manufacturing Business, unless such an action is due to Extraordinary Circumstances.

(2)      The Predecessor Exempt Manufacturing Business maintains its annual average employment for the three (3) Taxable Years which end with the close of its Taxable Year prior to the filing of the application for exemption by the Successor Manufacturing Business, or the applicable part of such period while the decree granted to the Successor Manufacturing Business under this Section is in effect, unless said average cannot be maintained due to Extraordinary Circumstances.

(3)      The number of jobs of the Successor Manufacturing Business, after its first year of operations, exceeds twenty-five percent (25%) of the annual average employment of the predecessor business referred to in paragraph (2) above.

(4)      The Successor Manufacturing Business does not use physical facilities, including land, buildings, machinery, equipment, inventory, supplies, trademarks, patents, and marketing outlets with a value of fifty thousand dollars ($50,000) or more, and have been previously used by a Predecessor Exempt Manufacturing Business. The above shall not apply to additions to Property Devoted to Industrial Development, even when such additions constitute physical facilities

AAFAF_CONF_0007860

with a value of fifty thousand dollars ($50,000) or more and are being or have been used by the main unit or the Predecessor Exempt Manufacturing Business. The foregoing notwithstanding, the Secretary of the DEDC may determine, with the previous recommendation of the agencies that render tax exemption reports, that the use of physical facilities or the acquisition of any Industrial Unit of a Predecessor Exempt Manufacturing Business which is or was operating, serves the best economic and social interests of Puerto Rico, in view of the nature of such facilities, the total number of jobs, the payroll total, the investment, the location of the project, or other factors which in his judgment wan-ant such a determination.

(b)     Exceptions.- The provisions of subsection (a) of this Section notwithstanding, the above conditions shall be deemed to have been met, provided that:

(1)     The Successor Manufacturing Business assigns to the Predecessor Exempt Manufacturing Business, such portion of its annual employment as necessary for the Predecessor Exempt Manufacturing Business to maintain, or match the annual employment that said Predecessor Exempt Manufacturing Business should maintain. The assignment provided herein shall not be covered by the Decree of the Successor Business, but the latter shall enjoy, with respect to the portion thus assigned, the benefits provided for in this Chapter, if any, which the Predecessor Exempt Manufacturing Business would enjoy thereon, as if it had been its own annual production. If the exemption period of the Predecessor Exempt Manufacturing Business has expired, the Successor Business shall pay the con-esponding taxes on the portion of its annual production assigned thereto by the Predecessor Exempt Manufacturing Business;

(2)     The Successor Business reports not covered by its Decree, for property tax purposes, such portion of its facilities as necessary for the investment in the physical facilities of the Predecessor Exempt Manufacturing Business to be

HEIN EXHIBIT 84

AAFAF_CONF_0007861

maintained or to be equal to the total investment in physical facilities as of the close of the Fiscal Year of such a Predecessor Exempt Manufacturing Business, prior to the filing date of the tax exemption application of the Successor Manufacturing Business, minus the depreciation thereof and minus any reduction in the investment in physical facilities that has occurred as of the date on which the provisions of this paragraph are applied, upon authorization for the use thereof under the provisions of paragraph (4) of subsection (a) of this Section. In cases in which the exemption period of the Predecessor Exempt Manufacturing Business has not elapsed, the Successor Manufacturing Business shall enjoy the benefits provided in this Chapter which would have been enjoyed by the Predecessor Exempt Manufacturing Business, with respect to the portion of its investment in said physical facilities which, for purposes of this paragraph, has been reported as not covered by its Decree, if the aforementioned facilities had been used in the production of its Industrial Development Income;

(3)    The Secretary of the DEDC determines that the operation of the Successor Manufacturing Business serves the best economic and social interests of Puerto Rico, in view of the nature of the physical facilities, the number of jobs, the total payroll, the investment, the location of the project, or any other factors which in his judgment warrant such a determination, including the financial situation of the Exempt Business in particular, and totally or partially exempts it from compliance with the provisions of subsection (a) of this Section, and may condition the operations thereof, as convenient and necessary in benefit of the best interests of Puerto Rico.

## CHAPTER 7 -  INFRASTRUCTURE AND GREEN ENERGY
## SUBCHAPTER A -  ELIGIBILITY

Section 2071.01.- Businesses Engaged in Infrastructure and Green Energy.

AAFAF_CONF_0007862

HEIN EXHIBIT 84

It is hereby provided that a business established or to be established, in Puerto Rico by a Person, whether organized or not under a common name, may file an application for Incentives with the Secretary of the DEDC when the Entity is established in Pue1io Rico to engage in one of the following eligible activities:

(1)　Carrying out improvement, restoration, or reconstruction works of existing buildings, or restructuring works or new construction on vacant lots in the Historic Zones of Puerto Rico, and the leasing of such buildings located in those zones once they have been improved, restored, reconstructed, restructured, or constructed, as the case may be;

(2)　The construction or rehabilitation of Affordable Housing to be sold or leased to Low- or Moderate-Income Families and Middle Class Housing;

(3)　Persons engaged in the construction, rental, or leasing of properties to Elderly Persons who do not have their own housing and whose income is within the established limits may be equal or more liberal, but never more restrictive than those established by the Federal Government;

(4)　Affordable Housing Developers approved and subsidized completely or partially by the Government of Puerto Rico;

(5)　Developers of Assisted Living Housing for Elderly Persons in Puerto Rico;

(6)　Any business engaged in the production or sale, at a commercial level, of Green Energy for consumption in Puerto Rico, whether as the owner or direct operator of the Generation Unit or as owner of a Generation Unit operated by another person, in which case, both the owner and the operator shall be deemed to be Eligible Businesses under this Chapter.

The term "Green Energy production or sale at a commercial level" includes the production or sale of Green Energy to one or more persons that are engaged in trade or business in Puerto Rico;

AAFAF_CONF_0007863

(7)     Alternate Renewable Energy Producer and Sustainable Renewable Energy Producer, as defined in Section 1020.07 of this Code, for consumption in Puerto Rico; provided that this it is his principal business;

(8)     Assembly of Green Energy generation equipment, including the installation of such equipment at the facilities of the user of Green Energy to be generated by such equipment;

(9)     Property Devoted to the Production of Green Energy;

(10)   During the first five (5) years from the effective date of this Code, a business established or to be established in Puerto Rico by a Person, whether organized or not under a common name, may apply for a Decree to cmTy out the following eligible activities:

(i)     A High-Efficiency Energy Producer engaged in the production, sale, or operation at a commercial scale for consumption in Puerto Rico, whether as owner and direct operator, or as owner of a system operated by a third party, or as operator of a system owned by a third party, in which case, both shall be considered an Eligible Businesses under this Chapter;

(ii)    Equipment assembly, including the installation thereof, for High-Efficiency Energy Generation Systems;

(iii)   Property devoted to the production of High-Efficiency Energy.

(iv)    Every contractor under Act No. 120-2018, as amended, known as the "Puerto Rico Electric Power System Transformation Act," shall be eligible for a Decree under this subsection and/or tax treatment provided under subsection (a) of Section 12 of Act No. 29-2009, as amended, known as the "Public-Private Partnership Act."

SUBCHAPTER B - TAX BENEFITS

Section 2072.01.- Income Taxes.

AAFAF_CONF_0007864

HEIN EXHIBIT 84

(a)      Preferential flat tax rate of four percent (4%).- The income of an Eligible Business derived from eligible activities described hereinbelow shall be subject to a preferential flat income tax rate of four percent (4%) in lieu of any other income tax provided by the Puerto Rico Internal Revenue Code or any other law; provided, that the requirements applicable to its eligible activity are met:

(1)      Rents received for the rental of buildings in the Historic Zones of Puerto Rico; provided, that they meet the requirements of Act No. 7 of March 4, 1955, as amended, known as the "Historic Zones Tax Exemption";

(2)      Income from the sale of affordable housing, as stated in paragraph (2) of Section 2071.01 of this Code, subject to the limits established in Section 2073 .04;

(3)      Rental income received by the owner of a Multi-family Affordable Housing Project, as indicated in paragraph (2) of Section 2071.01 of this Code, subject to the limits established in Section 2073.02 of this Code;

(4)      Income from the sale of homes to Elderly Persons or Persons with Disabilities;

(5)      The income derived from Housing facilities under the Assisted Living Housing Project for Elderly Persons who meet the qualification criteria set forth in this Code that are consistent with the definition of "Assisted Living." When due to medical necessity and in the interest of the person's safety, said person requires personal or medical care different from that set forth in this Act, said person shall not be covered by the provisions of this Code, and therefore, the residence cannot give lodging to said person pursuant to this Act. The residence shall make this determination in those cases in which the safety, welfare, or comfort of the person may be adversely affected because said person's specific needs or limitations cannot be adequately met or dealt with thoroughly, for not being consistent with the definition of the term "Assisted Living." Said determination shall be consistent with

AAFAF_CONF_0007865

the guiding criteria prescribed by the Secretary of the DEDC by regulations for such purposes.

(b)     Preferential flat tax rate of four percent (4%).- The income of an Exempt Business derived from activities described hereinbelow shall be subject to a preferential flat income tax rate of four percent (4%) in lieu of any other tax imposed by the Puerto Rico Internal Revenue Code or any other law; provided, that the requirements applicable to its eligible activity are met:

(1)     Rental income from properties leased to Elderly Persons;

(2)     Income from the construction of Rental Housing for Elderly Persons.

(c)     Income derived from the sale of RECs.- For tax purposes, the purchase, sale, assignment, or transfer of RECs shall have the following effect:

(1)     Tax Base.- The tax base for each REC for a business engaged in green energy production that generates RECs from its operations in Puerto Rico shall be equal to the RECs issue and processing costs, pursuant to Section 2074.01 of this Code. The basis of the RECs shall not include production costs of the green energy generated in the operation related to such RECs.

(2)     Regular Income.- Any income or gain derived by a business engaged in the production of Green Energy from the sale of RECs originating from its operations in Puerto Rico shall be considered as a regular income derived from the operation in Puerto Rico, and treated as Green Energy Income for all purposes of this Code, except that said income or gain shall be exempt from municipal license taxes and other municipal taxes.

(3)     Capital Gain.- RECs shall be excluded from the definition of capital assets, as provided in Section 1034.01 of the Internal Revenue Code. However:

AAFAF_CONF_0007866

(i)      The proceeds derived from the sale of a REC by the person who acquired such REC by means of a purchase, and subsequently disposed of it in exchange for cash or prope1iy shall be treated as capital gain, and the appropriate provisions of the Puerto Rico Internal Revenue Code regarding the disposition of a capital asset shall apply thereto, including the applicable tax rate, basis, and holding period of the RECs, among others,

(ii)      The income derived from the disposal of a REC by a person who acquired such REC by means of purchase and subsequently disposed of the same shall be exempt from municipal licenses and other taxes.

Any person engaged in the trade or business of purchasing and reselling RECs shall be excluded from this treatment.

(4)      Retirement and Cancellation of RECs.- Any person who, in the conduct of a trade or business, to comply with the requirements of the Renewable Portfolio Standard, acquires RECs by means of purchase, assignment or transfer in order to promote Green Energy sources development, may deduct from his regular income the cost of acquisition of the REC or the basis acquired in the assignment or transfer thereof. This deduction shall not be available until the REC is retired or cancelled.

(5)      Income From Sources Within Puerto Rico.- The gain from the sale or disposal of a REC outside of Puerto Rico, generated in the operation of a Green Energy project located in Pue1io Rico realized by Foreign Persons not engaged in a trade or business in Puerto Rico shall not be deemed to be income from sources in Puerto Rico.

(d)      Businesses Engaged in the Green Energy Industry- Exempt Businesses whose activities are described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 shall be subject to the following:

HEIN EXHIBIT 84

AAFAF_CONF_0007867

( 1) Preferential flat tax rate of four percent (4%).- The businesses described above shall be subject to a preferential flat income tax rate of four percent (4%) on their Green Energy Income during the corresponding exemption period, in lieu of any other income tax, if any, provided by the Puerto Rico Internal Revenue Code or any other law.

(2) Royalties and License Fees.- The provisions of the Puerto Rico Internal Revenue Code notwithstanding, in the case of payments made by Exempt Businesses that hold a Decree under this Chapter to Foreign Persons not engaged in trade or business in Puerto Rico, for the use or the privilege to use in Puerto Rico of Intangible Property related to the operation declared as exempted under this Chapter, subject to the consideration of said payments as totally derived from sources within Puerto Rico, the following rules shall be observed:

(i) Tax on Foreign Persons not Engaged in Industry or Business in Puerto Rico.- Tax Imposition.- A twelve percent (12%) tax shall be imposed, collected, and paid for each Tax Year, in lieu of the tax imposed by Sections 1091.01 and 1091.02 of the Puerto Rico Internal Revenue Code, on the amount of such payments, received or implicitly received by any foreign corporation or partnership not engaged in trade or business in Puerto Rico, derived solely from sources within Puerto Rico.

(ii) Withholding at the Source of the Tax in the Case of Foreign Persons that are Entities not Engaged in Trade or Business in Puerto Rico.- Any Exempt Businesses required to make payments to non-residents for the use in Puerto Rico of Intangible Property related to the exempt operation under this Chapter, shall deduct and withhold at the source a tax equal to that imposed in subparagraph (i) above.

(3) Distributions, Sale, or Exchange of Stocks or Assets.-

HEIN EXHIBIT 84

AAFAF_CONF_0007868

(i)     The gains realized in the sale, exchange, or other disposition of Stocks of Entities, which are or have been Exempt Businesses under this Chapter; shares in joint ventures and similar entities constituted by various corporations, partnerships, individuals, or combination thereof, which are or have been Exempt Businesses; and Stocks of Entities that otherwise own the entities described above, shall be subject to the provisions of subparagraph (ii) of this paragraph (3) when conducting said sale, exchange, or other disposition, and any subsequent distribution of said gain, be it as a dividend or as a distribution in liquidation, shall be exempted from the payment of additional taxes.

(ii)     Sale or Exchange of Stocks or Assets.-

A.     During the Exemption Period- The gains from the sale or exchange of Stocks of Entities, or substantially all assets of an Exempt Business, made during its exemption period and which would have been subject to income tax under the Puerto Rico Inte111al Revenue Code, shall be subject to a four-percent (4%) tax on the amount of the gain realized, if any, in lieu of any other tax imposed by the Puerto Rico Inte111al Revenue Code or any other law. Any loss in the sale or exchange of said Stocks or assets shall be recognized pursuant to the provisions of the Puerto Rico Internal Revenue Code.

B.     After the Expiration Date of the Exemption Period.- When the sale or exchange is conducted after the expiration date of the exemption, the gains shall be subject to the tax provided in clause (A) above, but only up to the amount of the value of the Stocks of the Entity or of substantially all the assets in the books of the corporation or partnership on the expiration date of the exemption period, reduced by the amount of the exempted distributions received from said Stocks of the Entity after said date, minus the basis of said Stocks or of substantially all assets. Any remainder of the gain or any loss, if any, shall be recognized pursuant

AAFAF_CONF_0007869

HEIN EXHIBIT 84

to the provisions of the Puerto Rico Internal Revenue Code in effect on the date of the sale or exchange.

C.    Exempted Exchanges.- The exchanges of Stocks from Entities which do not result in taxable events for being exempted reorganizations shall be treated pursuant to the provisions of the Puerto Rico Internal Revenue Code in effect on the date of the exchange.

(iii)    Determination of Basis in the Sale or Exchange.- The basis in the sale or exchange of Stocks or assets of an Exempt Businesses under this Section shall be determined pursuant to the applicable provisions of the Puerto Rico Internal Revenue Code in effect at the time of the sale or exchange, increased by the amount of the Green Energy Income accrued under this Code.

(iv)    For the purposes of this paragraph (3), the term "substantially all assets" shall mean those assets of the Exempt Business which represent not less than eighty percent (80%) of the value in the books of the Exempt Business at the time of the sale.

(v)    The Secretary of the DEDC, in consultation with the Secretary of the Treasury, shall prescribe regulations as are necessary to implement the provisions of this paragraph.

(4)    Liquidation.-

i.    No income taxes shall be imposed or collected from the assignor or the assignee in relation to the total liquidation of an Exempt Business that has obtained a Decree under this Chapter and that is engaged or has been engaged in the activities described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01, on or before the expiration of its Decree; provided, that the following requirements are met:

AAFAF_CONF_0007870

A.    Any property distributed in the liquidation was received by the assignee pursuant to a liquidation plan on or before the expiration date of the Decree; and

B.    the distribution in liquidation by the assignor, whether all at once or from time to time, was made by the assignor to cancel or totally redeem its capital stock.

The basis of the assignee on the property received in liquidation shall be equal to the adjusted basis of said Exempt Business on said property immediately before the liquidation. Furthermore, and for purposes of this paragraph (4), a corporation or partnership participating in a partnership that is an Exempt Business shall be considered, in turn, an Exempt Business.

ii.    Liquidation by Assignors with Revoked Decrees.- If the Decree of the assignor were revoked prior to its expiration date, pursuant to the provisions of this Code, in relation to allowable revocations, the Green Energy Income surplus accrued as of the effective date of the revocation, may be transferred to the assignee at any later time, subject to the provisions of subparagraph (i) of this paragraph (4). In cases of mandatory revocations, the surplus accrued shall be subject to taxation pursuant to the Puerto Rico Inte1nal Revenue Code.

iii.    Liquidations After the Expiration of the Decree.- After the Decree of the assignor has expired, the assignor may transfer to the assignee the Green Energy Income surplus accrued during the effective period of the Decree, subject to the provisions of subparagraph (i) of this paragraph (4).

iv.    Liquidation of Assignors with Exempt and Nonexempt Activities.- In the event that the assignor engages in exempt and nonexempt activities, the assignor may transfer to the assignee the Green Energy Income surplus accrued under this Code and the property devoted to the eligible activity under this Code as part of its total liquidation, subject to the provisions of subparagraph (i) of

AAFAF_CONF_0007871

this paragraph (4). The surplus accrued over sources other than Green Energy Income and the property that is not devoted to the eligible activity, shall be distributed in accordance with the provisions of the Puerto Rico Internal Revenue Code.

(e) The stockholders or partners of an Exempt Business, holding a Decree under the provisions of this Chapter that is engaged in the activities described in paragraphs (1) through (5) of subsection (a) of Section 2071.01 of this Code, shall be subject to the income tax provided in the Puerto Rico Internal Revenue Code on distributions of dividends or benefits from the net income of said Exempt Business.

Section 2072.02.- Real and Personal Property Tax.

(a) Properties in Historic Zones.- The eligible property, as described in paragraph (1) of Section 2071.01 of this Code, which is to be improved, restructured, constructed, restored, or reconstructed, and the lot where such property is located, shall be declared fully exempt by the Director of CRIM for the period stated in subsection (a) of Section 2072.04 of this Code.

(b) Affordable Housing Devoted to Rental Purposes

(1) In General.- The Housing units of Multi-family Housing Projects for rental to Low- or Moderate-Income Families, as such eligible activity is described in paragraph (2) of Section 2071.01, shall be one hundred percent (100%) exempt from property tax payments during the exemption period provided in subsection (b) of Section 2072.04, provided that:

(i) The requirements established in subsection (a) of Section 2073.02 of this Code are met.

(ii) The rental fee of each Housing unit reflects a reduction equal to the total sum of the property tax that the owner would be required to pay if the tax exemption provided herein were not applied.

HEIN EXHIBIT 84

AAFAF_CONF_0007872

(c)     Properties Leased to Low-Income Elderly Persons.- In General- Any owner that constructs or rehabilitates real property to be leased to a low-income Elderly Person shall be one hundred percent (100%) exempt from the payment of real and personal property taxes; provided, that the requirements established in Section 2073.03 of this Code are met.

(d)     Properties from Housing Projects Under the "Assisted Living" Housing Project- Any housing project under the "Assisted Living" Housing Project may benefit from the exemptions provided in subsection (c) of Section 2072.03 of this Code.

(e)     RECs Exemption.- RECs shall have a seventy-five percent (75%) exemption from municipal or state property taxes.

(f)     Real and personal property of Eligible Businesses under paragraphs (6), (7), (8), (9), and (10) of subsection (a) of Section 2071.01-

(1)     In General:- The real and personal property used in the development, organization, construction, establishment, or operation of an eligible activity covered under the Decree, shall enjoy a seventy-five percent (75%) exemption from municipal and state taxes on real and personal property during the exemption period.

Section 2072.03.- Municipal Taxes.

(a)     Construction or Rehabilitation of Affordable Housing- In General.- The housing units under Multi-family Projects leased to Low- or Moderate-Income families shall receive a ninety percent (90%) exemption from the payment of municipal license taxes; provided, that the requirements established in Section 2073.02 of this Code are met. Furthermore, a ninety-percent (90%) exemption shall also apply to the payment of any municipal tax or fee that may apply thereto.

(b)     Construction of Low-Income Elderly Person Housing- The income generated by Housing construction or rehabilitation projects to be leased to low-

AAFAF_CONF_0007873

income Elderly Persons shall receive a ninety percent (90%) exemption from the payment of municipal license taxes; provided, that the requirements set forth in Section 2073.07 of this Code are met. Furthermore, a ninety percent (90%) exemption shall apply to the payment of any municipal tax or fee that may apply to such projects, except for the excise tax to which no exemption shall apply.

(c)      Income from Housing Projects Under the "Assisted Living" Housing Project- Any housing project under the "Assisted Living" Housing Project may benefit from the exemptions provided under subsection (a) of this Sections.

(d)      Exempt Businesses described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 shall receive a fifty percent (50%) exemption on municipal license taxes, municipal excise taxes, and other municipal taxes imposed by any municipal ordinance, during the periods covered by the Decree pursuant to subsection (e) of Section 2072.04, regardless of any subsequent amendment made to the Decree to cover the operations of the Exempt Business in one or several municipalities.

(e)      All Exempt Businesses and their contractors or subcontractors shall receive a seventy-five percent (75%) exemption on any tax, levy, fee, license, excise tax, rate or tariff, imposed by a municipal ordinance on the construction of works to be used by said Exempt Business within a municipality, without it being understood that said taxes include the municipal license tax imposed on the volume of business of the contractor or subcontractor of the Exempt Business, during the period authorized under the Decree.

Section 2072.04.- Exemption Period.

(a)      The exemption period for persons with eligible activities as provided in paragraph (1) of Section 2071.01 of this Code, shall be as described hereinbelow; provided, that the requirements are met:

AAFAF_CONF_0007874

(1)     Five (5) years: when the restoration work is paiiial but includes, among others, the restoration of the facade and the main architectural elements such as the zaguan and the main staircase, if any.

(2)     Five (5) non-renewable years: when the facade of a building of no historic or architectural value has been restored to conform it to the surroundings of the Historic Zone where it is located.

(3)     Ten (10) years: when a building has been fully restored.

(4)     Ten (10) years: in cases of full restoration where more than fifty percent (50%) of new construction elements are incorporated into buildings lacking historic or architectural value in order to conform them to their traditional surroundings, and in cases of new construction on lots that are either vacant or where ruins are located.

(5)     Upon expiration of the ten (10)-year period on a given property, the Secretary of the DEDC may extend the exemption for an additional ten (10) years in any of the aforementioned cases; provided, that the Institute of Puerto Rican Culture certifies that such property (1) has not been substantially altered from its original design, (2) deserves to be preserved as part of our cultural heritage because of its historic or architectural value, and (3) upon conclusion of the work, in accordance with the requirements of the Institute of Puerto Rican Culture, it shall be in the same or in better condition than when its first full restoration was performed.

(b)     The tax benefit provided in paragraphs (2) and (3) of subsection (a) of Section 2072.01 and subsection (a) of Section 2072.03 of this Code shall remain in effect as long as the Housing units on which it is claimed are occupied by Low- or Moderate-Income Families; however, it shall not exceed a period of fifteen (15) years, starting from January 1 of the year following the date of occupancy of the Housing unit by a Low- or Moderate-Income Family.

AAFAF_CONF_0007875

(c)     The tax exemption granted under paragraph (1) of subsection (b) of Section 2072.01 of this Code as well as under subsection (b) of Section 2072.03 of this Code shall remain in effect as long as the Housing units on which it is claimed are occupied by Elderly Persons; however, it shall not exceed a period of fifteen (15) years, starting from January 1 of the year following the date of occupancy of the Housing unit by an Elderly Person.

(d)     The tax exemption granted under paragraph (5) of subsection (a) of Section 2072.01, as well as under subsection (c) of Section 2072.03 of this Code, shall remain in effect as long as the "Assisted Living" Housing Project meets all the requirements established in this Code and in the provisions of the Incentives Regulations for a period not to exceed fifteen (15) years, starting from January 1 of the year following the date of certification as an Eligible Business for "Assisted Living" Housing Project.

(e)     Tax exemption periods for Green Energy Businesses- The tax exemption periods applicable to Entities whose Eligible Businesses are covered under paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 of this Code are described hereinbelow.

(1)     Exemption.- An Exempt Business holding a Decree granted under this Chapter shall enjoy tax exemption for a period of fifteen (15) years.

(2)     Flexible Tax Exemption.- Exempt Businesses shall have the option of choosing the specific taxable years to be covered under their Decrees with regard to their Green Energy Income; provided, that they notify the Secretary of the DEDC and the Secretary of the Treasury not later than the due date provided by the Puerto Rico Internal Revenue Code to file their income tax returns for said Taxable Year, including the extensions granted for said purpose. Once the Exempt Business opts for this benefit, its exemption period shall be extended by the number of taxable years it did not enjoy said benefit under the exemption Decree.

AAFAF_CONF_0007876

HEIN EXHIBIT 84

(3)     Provisions Applicable to the Tax Exemption for Businesses with Property Devoted to the Production of Green Energy.-

(i)     The period during which a Property Devoted to the Production of Renewable Energy was owned by any political subdivision, agency, or instrumentality of the Government of Puerto Rico, shall not be deducted from the period mentioned in paragraph (1) of this subsection. In such cases, the property shall be deemed, for the purposes of this Chapter, as not having been previously devoted to the Production of Green Energy.

(ii)     When the Exempt Business is a Property Devoted to the Production of Green Energy, the period mentioned in paragraph (1) of this subsection shall not cover those periods in which the Property Devoted to the Production of Green Energy is on the market to be leased to an Exempt Business, or is vacant, or is leased to a non-exempt business, except as provided below. Said period shall be computed on the basis of the total period during which the property was at the disposal of an Exempt Business; provided, that the total number of years is not greater than that provided under paragraph (1) of this subsection, and the Exempt Business that qualifies as Property Devoted to the Production of Green Energy, notifies the Secretary of the DEDC, in writing, of the date on which the property is leased to an Exempt Business for the first time, and the date on which the property is vacated and is again occupied by another Exempt Business.

(iii)     In the event that the exemption of an Exempt Business holding a Decree as Property Devoted to the Production of Green Energy expires while it is being used under a lease by an Exempt Business, the Property Devoted to the Production of Green Energy in use by the Exempt Business shall enjoy a fifty percent (50%) exemption on property taxes while the Exempt Business continues to use said property under a lease.

AAFAF_CONF_0007877

(iv)   When the Exempt Business is a business of Property Devoted to the Production of Green Energy, the period mentioned in paragraph (1) of this subsection shall continue its normal course even when the exemption Decree of the other Exempt Business using said property, as a result of the conclusion of its normal period or by revocation of its Decree, expires before the exemption period of the Property Devoted to the Production of Green Energy unless it is proven in the case of revocation, that at the time said property was made available to the Exempt Business, the owners thereof were aware of the facts that led to the revocation.

(4)   Tax Exemption During Construction Period -

The real property of the Exempt Businesses to which the exemption provided in subsection (f) of Section 2062.02 applies shall be fully exempt during the period authorized by the Decree in order for the Exempt Business to be constructed or established and during the first Government Fiscal Year in which the Exempt Business would have been subject to property taxes on account of being operational as of January 1 of the year preceding such Fiscal year, were it not for the exemption herein provided. Likewise, the real property of Exempt Business that is directly related to any expansion of the Exempt Business shall be fully exempt from property taxes during the period authorized by the Decree to perform the expansion. Once the full exemption period established in this paragraph expires, the partial exemption provided under subsection (f) of Section 2072.02 shall become effective.

(5)   Municipal Exemption and Establishment of Operations in Other Municipalities.-

(i)   Tax exemption period granted under this subsection. The Green Energy Exempt Business holding a Decree granted under this Chapter shall be fully exempt from the payment of the municipal taxes or municipal license taxes applicable to the volume of business of the Exempt Business during the semester of

HEIN EXHIBIT 84

AAFAF_CONF_0007878

the Government's Fiscal Year in which the Exempt Business commences operations in any municipality, pursuant to the provisions of the "Municipal License Tax Act." Furthermore, the Exempt Business shall be fully exempt from the payment of municipal taxes or license taxes on the volume of business attributable to such municipality during the two (2) semesters of the Government's Fiscal Year or Fiscal Years following the semester in which it commenced operations in the municipality.

(ii)     An Exempt Business may establish additional operations or facilities as part of the operations covered under an exemption Decree in effect, in the same municipality where the main office is located or in any other municipality of Pue1io Rico, without the need to apply for a new exemption Decree or amend the Decree in effect; provided, that it notifies the Incentives Office within thirty (30) days from the commencement of the additional operations or facility. By virtue of said notice the additional, unit, operation or facility to be included in the exemption Decree and it shall enjoy the exemptions and benefits provided under this Code for the remainder of the exemption period of the Decree in effect.

(6)     Intenuption of the Exemption Period.- In the event that an Exempt Business has ceased operations and later wishes to resume operations, the time during which no operations were conducted shall not be deducted from the conesponding exemption period, and the Exempt Business may enjoy the remaining exemption period while the tax exemption Decree is in effect; provided, that the Secretary of the DEDC determines that the ceasing of operations was for good cause and that reopening said Exempt Business shall serve the best social and economic interests of Puerto Rico.

(7)     Setting the Date for the Commencement of Operations and the Exemption Periods.-

(i)     An Exempt Business holding a Decree granted under paragraphs (6), (7), (8), (9), or (10) of Section 2071.01 of this Code may choose the

AAFAF_CONF_0007879

date of commencement of operations for the purposes of this Code by filing an affidavit with the Incentives Office, with a copy to the Secretary of the Treasury stating the unconditional acceptance of the Grant approved for the Exempt Business under this Chapter. The date of the commencement of operations for purposes of this Chapter may be the date of the first training or production payroll of the Exempt Business or any date within a two (2)-year period after the date of the first payroll.

(ii)     The Exempt Business may postpone the application of the flat rate provided in this Code and established though a Decree for a period not to exceed two (2) years from the date of commencement of operations established under subparagraph (i) of this paragraph. During the postponement period, said Exempt Business shall be subject to the applicable tax rate under Subtitle A of the Puerto Rico Internal Revenue Code.

(iii)    The tax exemption period provided in this subsection for real or personal property shall commence on July 1, following the last Fiscal Year in which the Exempt Business was fully exempt pursuant to the provisions of this Code. The partial exemption for said Fiscal Year shall apply to the tax on the property owned by the Exempt Business on the 1st of January preceding the beginning of said Fiscal Year.

(iv)    The partial exemption period provided in this Code, for the purposes of the municipal tax or license tax exemption shall commence on the first day of the first semester of the Fiscal Year of the Government of Puerto Rico following the expiration of the full-exemption period provided in said subparagraph. In the case of Exempt Businesses that have been operating before applying for the benefits of this Code, the date of commencement of operations for the purposes of municipal license taxes shall be the first day of the semester following the filing date of the application for tax exemption.

AAFAF_CONF_0007880

HEIN EXHIBIT 84

(v)     In the case of Exempt Businesses holding a Decree granted under this Code or any Prior Incentives Laws which have been operating before applying for the benefits of this Code, the date of commencement of operations for the purposes of the flat income tax rate provided in subsection (d) of Section 2072.01 of this Code shall be the filing date of the application with the Incentives Office, but the commencement date may be postponed for a period not to exceed two (2) years from said date.

(vi)     An Exempt Business shall commence operations within one (1) year from the granting of the Decree, which term may be extended at the request of such business for good cause, but no extension shall be granted which extends the date of commencement of operations for a period that exceeds five (5) years from the approval of the Decree.

Section 2072.05.- State Excise Tax and Sales and Use Tax.

(a)     Businesses engaged in Green Energy, as described in in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01.-

(1)     In addition to any other exemption from excise taxes or from the sales and use tax granted under Subtitle D of the Puerto Rico Internal Revenue Code, a full exemption from said taxes shall be granted, during the exemption period provided in this Chapter, ti the following items directly or indirectly introduced or acquired by a business holding a Decree granted under this Chapter:

(i)     Any raw material to be used in Pue1io Rico to produce Green Energy, for the purposes of this subsection and the applicable provisions of Subtitles C or D of the Puerto Rico Internal Revenue Code, the term "raw material" shall include:

(A)     any product in its natural form, derived from agriculture or from extractive industries (including natural gas or propane gas); and

AAFAF_CONF_0007881

HEIN EXHIBIT 84

(B) any byproduct, residual product, or paiiially manufactured or finished product.

(ii) The machinery, equipment, and accessories thereof used exclusively and permanently to transpmi the raw material within the system of the Exempt Business; the machinery, equipment and accessories used for Green Energy production, or which the Exempt Business is required to acquire under federal or state law or regulations for the operation of the eligible activity.

(iii) Any machinery and equipment that an Exempt Business must use to meet the environmental, safety, and health requirements shall be fully exempt from the payment of state excise taxes as well as from the sales and use tax.

(iv) Chemical materials used by an Exempt Business in the treatment of used waters.

(v) Energy-efficient equipment, duly certified by the Secretary of the DEDC pursuant to the provisions of the Incentives Regulations.

(vi) Electrical substations.

(2) Exceptions-

The following items for use and consumption that are used by an Exempt Business holding a Decree granted under this Chapter, regardless of the area or premises where they are located or their use, shall not be deemed to be raw material, machinery, or equipment for purposes of paragraph (1) of this subsection:

(i) Any construction material and pre-fabricated structures;

(ii) any electrical material and water pipes affixed to the structures;

(iii) the lubricants, fats, waxes, and paints not related to the manufacturing process;

(iv) the lighting posts, and lighting fixtures installed in parking areas; and

AAFAF_CONF_0007882

(v)    treatment plants.

Section 2072.06.- Special Deduction for Investment in Buildings, Structures, Machinery, and Equipment for Green Energy.-

(a)    Any Exempt Business holding a Decree granted under this Chapter shall be granted the option of deducting, during the taxable year in which they were incurred, its total expenses incurred after the effective date of this Code, for the purchase, acquisition, or construction of buildings, structures, machinery, and equipment, in lieu of any capitalization of expenses required by the Puerto Rico Internal Revenue Code; provided, that these buildings, structures, machinery, and equipment:

(1)    Have not depreciated or been previously used by any other business or Person in Puerto Rico; and

(2)    are used solely in activities described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 of this Code, for which the benefits provided under this Code were granted.

(b)    The deduction provided under this Section shall not be in addition to any other deduction provided by law, but shall merely be an acceleration of the deduction of the expenses described above. Provided, that in the case of machinery and equipment previously used outside of Puerto Rico, but that has not previously depreciated or been used in Puerto Rico, the investment in said machinery and equipment shall qualify for the special deduction provided in this Section only if on the date of the acquisition thereof by the Exempt Business, said machinery and equipment still have at least fifty percent (50%) of their useful life, as determined pursuant to the Puerto Rico Internal Revenue Code.

(c)    The Exempt Business that complies with the provisions of subsection (a) of this Section, may deduct, during the taxable year in which they were incurred, all expenses incurred after the effective date of this Code in remodeling or repairing

AAFAF_CONF_0007883

buildings, structures, machinery, and equipment, in lieu of any capitalization of expenses required by the Puerto Rico Internal Revenue Code, whether said buildings, structures, machinery, and equipment have been acquired or constructed before or after the effective date of this Code, and whether they have or have not depreciated or been used by another business or person prior to being acquired by the Exempt Business holding a Decree granted under this Code.

(d)    The amount of the Green Energy Investment described in subsections (a) and (c) of this Section for the special deduction provided in this subsection, in excess of the Green Energy Income of the Exempt Business in the year of the investment, may be claimed as a deduction in subsequent taxable years until said excess is depleted.

(e)    The Exempt Business that complies with the provisions of subsection (a) of this Section, may claim the deduction provided in this Section in any year in which said Exempt Business elects the flexible tax exemption benefit, in accordance with this Code.

SUBCHAPTER C - REQUIREMENTS FOR GRANTING EXEMPTIONS

Section 2073.01.- Requirements for Decree Applications.

(a)    Any person who has established or plans to establish an Eligible Business in Puerto Rico under this Chapter may apply for the benefits of this Chapter by filing an application with the Secretary of the DEDC pursuant to the provisions of Subtitle F of this Code.

(b)    Any person may apply for the benefits of this Chapter insofar as said person meets the eligibility requirements of Subchapter A of this Chapter as well as any other criteria prescribed by the Secretary of the DEDC through the Incentives Regulations, administrative order, circular letter, or any other general communication, including as an evaluation criteria, the Eligible Business'

HEIN EXHIBIT 84

AAFAF_CONF_0007884

contribution to the economic development of Puerto Rico. In addition, the evaluation criteria shall take into account the following governing principles:

(1)　Jobs.- The Infrastructure or Green Energy Activity and the Exempt Business shall promote the creation of new jobs. In addition, it shall be taken into account if the Exempt Business pays its employees more than the federal minimum wage established in the Fair Labor Standards Act.

(2)　Sound Integration.- The conceptual design and planning of the Infrastructure or Green Energy Activity and the Exempt Business shall mainly take into account the environmental, geographical, and physical aspects, as well as the materials and goods that are abundantly available at the site where it is to be developed. Safe development shall be ensured to prevent catastrophic damage from potential natural disasters.

(3)　Commitment to Economic Activity.- The Exempt Business shall acquire, to the extent possible, raw materials and Products Manufactured in Puerto Rico for the construction, maintenance, renovation, or extension of the physical facilities thereof. The Secretary of the DEDC may waive compliance with this requirement and issue a certificate attesting to such facts if the purchase of said products is not financially justified when taking into account criteria such as quality, quantity, price, and availability of these products in Puerto Rico.

(4)　Commitment to Agriculture.- The Exempt Business shall acquire, to the extent possible, agricultural products from Puerto Rico to be used in its operations. The Secretary of DEDC may waive compliance with this requirement and issue a certificate attesting to such facts if the purchase of such products cannot be financially justified when taking into account criteria such as the quality, quantity, price, or availability of these products in Puerto Rico.

(5)　Transfer of Knowledge.- The Exempt Business shall acquire, to the extent possible, services from professionals or companies with a presence in

Puerto Rico. However, if this is not possible due to criteria such as availability, experience, specificity, or skill or any other valid reason recognized by the Secretary of the DEDC, the Exempt Business may acquire such services through an intermediary with a presence in Puerto Rico, which shall contract directly with the service provider chosen by the Exempt Business, in order to receive the requested services.

(ii)     The term "services" shall mean, without limiting the authority of the Secretary of the DEDC to include other services by regulations, the contracting of jobs related to:

(A)     Surveying, the production of construction plans, as well as engineering and architectural designs, and related services;

(B)     construction and all that pertains to this sector;

(C)     financial, environmental, technological, scientific, management, marketing, human resources, information technology, and auditing consulting services;

(D)     advertising, public relations, commercial art, and graphic design services; and

(E)     security or facility maintenance.

(6)     Financial Commitment.- The Exempt Business shall demonstrate that they use the services of, and that they deposit a significant amount of the income derived from their economic activity in, banking and/or cooperative institutions with a presence in Puerto Rico.

(7)     Puerto Rico Energy Bureau Certificate of Compliance - Exempt Businesses engaged in the eligible activities described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 of this Code shall meet the essential requirement of filing along with its application, a Certificate of Compliance with Act No. 17-2019,

AAFAF_CONF_0007886

known as the Energy Public Policy[sic] and with the Integrated Resource Plan. The certificate shall be issued by the Puerto Rico Energy Bureau.

(8) The Secretary of the DEDC shall be the official responsible for verifying and ensuring that Exempt Businesses meet the eligibility requirements provided in this Section and in this Chapter in relation to the eligible activities described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 of this Code; provided, that for such cases related to the eligible activities described in paragraphs (1), (2), (3), (4), and (5) of Section 2071.01 of this Code, the Secretary of the DEDC shall proceed in consultation with the Secretary of Housing. If the Exempt Business partially meets the requirements established in this Section, the Secretary of the DEDC shall be required to establish a formula that allows for the quantification of the aforementioned factors, and for the subtraction of the requirement that has not been met from the total percentage of the specific incentive, in order to obtain the exact percentage of the benefit in question. However, the foregoing shall not apply to applications related to the eligible activities described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 of this Code, that fail to meet the essential requirement of the Certificate of Compliance with Act No. 17-2019, known as the Energy Public Policy [sic], and the Integrated Resource Plan issued by the Energy Bureau.

Section 2073.02.- Affordable Housing Tax Exemption on Rental Income.

(a) In General- A person may receive the benefits provided in paragraph (3) of subsection (a) of Section 2072.01, subsection (b) of Section 2072.02, subsection (a) of Section 2072.03, and subsection (b) of Section 2072.04 of this Code; provided, that said person files an application for exemption with the Secretary and meets the following requirements:

(1) He demonstrates, through the presentation of documents and records required by regulations, that the capital invested in the construction or

AAFAF_CONF_0007887

rehabilitation of the Multi-family Project, as the case may be, is the product of a bona fide transaction.

(2)     The rental fee of the rented Housing units does not exceed the amount that the Secretary of the DEDC, in consultation with the Secretary of Housing, determines is adequate for the owner of the housing units to cover the administration and maintenance expenses of the rented property, to have a return on his capital investment, and to cover his other obligations as an owner, pursuant to the parameters prescribed by regulations.

(3)     The income on which a tax exemption is claimed is derived from the rental fee paid by Low- or Moderate-Income Families.

(4)     The unit rented within the Multi-family Housing Project or the family occupying the unit does not receive a direct subsidy for the payment of the rental fee from the Government of Puerto Rico or the Government of the United States of America.

(5)     The construction or rehabilitation of the Housing units to which said income is attributable, on account of rent, began after the approval of this Code.

Section 2073.03.- Requirements - Exemption for Renting Housing to Elderly Persons.

(a)     In General- A person may receive the benefits provided in paragraph (1) of subsection (b) of Section 2072.01, subsection (c) of Section 2072.02, subsection (b) of Section 2072.03, subsection (c) of Section 2072.04 of this Code, provided that:

(1)     The construction or rehabilitation of the Housing units for rent began after the effective date of this Code.

(2)     The rental fee of the rented Housing units does not exceed the amount determined by the Secretary of the DEDC, in consultation with the Secretary of Housing, as adequate for the owners of the Housing units to cover the

AAFAF_CONF_0007888

administration and maintenance expenses of the rented property, receive a return on his capital investment, and cover any other of his obligations as owner, pursuant to the parameters prescribed in the Incentives Regulations.

(3)    The income on which tax exemption is claimed is derived from the rental fees paid by the Elderly Persons.

Section 2073.04.- Requirement- Exemption on Income from the Sale Affordable Housing

(a)    In General- A person may receive the benefits provided in paragraph (2) of subsection (a) of Section 2072.01 of this Code, provided that:

(1)    The construction or rehabilitation of the Housing units for sale began after the effective date of this Act.

(2)    Prior to the beginning of the construction or rehabilitation work, he presents an itemized cost breakdown duly approved by the Secretary of the DEDC.

(3)    The buyer of the Housing unit is a Low- or Moderate-Income Family or a Middle Class Family, as defined in this Code, and certified as eligible by the mortgagee who originates the permanent mortgage financing for the Housing.

(4)    As a general rule, in the case of Affordable and Middle Class Housing, for sale or rent, the income on which the tax exemption is claimed (exempt income) is derived from profits that do not exceed a maximum of fifteen percent (15%) over the sales price of each unit, in the case housing for sale, and over the fair market price in the case of housing for rent, per Housing unit, derived from the sale Affordable and/or Middle Class Housing units, and such profits are exclusively directly related to the Affordable and/or Middle Class Housing Project to which such income is attributed. As a special rule, it is provided that subject to the provisions of this Code, when an Affordable and Middle Class Housing Project is developed for sale or rent in an urban center, or when it can be attested that an Investment on

AAFAF_CONF_0007889

Housing Infrastructure and Infrastructure of Regional or Municipal Impact is being made, the income on which tax exemption is claimed (exempt income) is derived from profits that do not exceed a maximum of twenty percent (20%) over the sales price of each unit, in the case of housing for sale, and over the fair market price in the case of housing for rent, per Housing unit, derived from the sale of Affordable and/or Middle Class Housing Units, and that such profits are exclusively directly related to the Affordable and/or Middle Class Housing Project to which such income is attributed. For the purpose of calculating the exemption provided under this Code, only the special investment on Housing Infrastructure and Infrastructure of Regional or Municipal Impact, as approved by the Secretary of the DEDC in consultation with the Department of the Treasury, shall be taken into account.

(5)     The owner shows, to the satisfaction of the Secretary of the DEDC and the Secretary of the Treasury, that the housing unit to which the income is attributed did not have a lien or tax burden at the time the sale was executed.

Section 2073.05.- Requirement - Income from Housing Projects Under the Assisted Living Housing Project.

(a)     In General- A person may receive the benefits provided in paragraph (5) of subsection (a) of Section 2072.01, subsection (d) of Section 2072.02, subsection (c) of Section 2072.03, and subsection (d) of Section 2072.04 of this Code, provided that:

(1)     An application for certification as an Eligible Business ls submitted based on the criteria prescribed by the Secretary of the DEDC, in conjunction with the Secretary of Housing, through Incentives Regulations to be adopted.

(2)     If any person or Entity wishes to promote any "Assisted Living" Housing project, and a certification to operate as an Eligible Business of said project has not been issued, the sponsor or the applicant shall notify the Secretary of the

AAFAF_CONF_0007890

DEDC in writing, with a copy to the Secretary of Housing, of his intention to request said certification, and indicate in the advertising or promotional materials that the sponsored project has not completed the process to obtain the certification from the Secretary of the DEDC.

(3)     The Secretary of the DEDC, in conjunction with the Secretary of Housing, shall determine through the Incentives Regulations any additional information or procedure as is necessary for the certification of the "Assisted Living" Housing Project.

Section 2073.06.- Additional Requirements to Those in Sections 2073.02 and 2073.04.

(a)     In General- Any owner who builds or rehabilitates Affordable Housing to be sold or rented to Low- or Moderate-Income Families, and middle class Housing to be sold to middle class persons, who wishes to avail himself of the tax exemptions established in this Code, as applicable, shall file with the Secretary of the DEDC an application for exemption including the following information:

(1)     the name of his business or company;

(2)     the cadaster number of the property or properties connected to the business;

(3)     the merchant registration number;

(4)     the Employer Identification Number;

(5)     the information required under Act No. 216-2014, better known as the "Fiscal Information and Permit Control Act"; and

(6)     any other requirement prescribed in the Incentives Regulations.

Section 2073.07.- Exemption Requirements for the Construction of Rental Housing for Elderly Persons.

(a)     In General- A person may receive the benefits provided in paragraph (2) of subsection (b) of Section 2072.01, subsection (b) of Section 2072.03,

AAFAF_CONF_0007891

HEIN EXHIBIT 84

subsection (b) of Section 2072.04 of this Code, as applicable to such businesses, provided that:

(1)     The construction or rehabilitation of the Housing units for rent begins after the effective date of this Code;

(2)     Prior to the beginning of the construction or rehabilitation work, the owner presents an itemized cost breakdown duly approved by the Secretary of the DEDC;

(3)     The tenant of the housing unit is an Elderly Person certified as eligible in accordance with the criteria prescribed by the Secretary of the DEDC in the Incentives Regulations; and

(4)     The owner submits to the Secretary of the DEDC a certification from the CRIM attesting that at the time the project was completed, the housing units did not have a lien or tax burden.

Section 2073.08.- Requirement- Developers of Affordable Housing Subsidized by the Government of Puerto Rico.

a)     In Affordable Housing Projects approved and subsidized in whole or in part by the Government of Puerto Rico, the Developer shall reserve five percent (5%) of the Housing units to be designated as residences for Elderly Persons or for Persons with Disabilities who qualify to acquire them. If said units have not been sold upon the completion of the Housing project, the Developer shall be authorized to sell them in the free market.

SUBCHAPTER D - SPECIAL PROVISIONS

Section 2074.01.- RECs Processing by the DEDC.

The DEDC may establish a reasonable processing fee for each REC to be paid by the owner of the REC. The processing fee may be included in the price of each processed REC. Any income earned by means of the imposed processing fees shall

AAFAF_CONF_0007892

be used to defray the operating expenses incurred to ensure the attainment of the purposes and objectives of this Chapter.

Section 2074.02.- Green Energy Successor Business.

(a)     General Rule.-

A Green Energy Successor Business may avail itself of the provisions of this Chapter, provided that:

(1)     The Exempt Green Energy Predecessor Business has not ceased operations for more than six (6) consecutive months before the filing of the application for exemption by the Green Energy Successor Business, nor during the exemption period of the successor business, unless this is due to a Force Majeure.

(2)     The Exempt Green Energy Predecessor Business maintains its annual average number of jobs for the three (3) taxable years ending at the close of its Taxable Year prior to the filing of the application for exemption by the Green Energy Successor Business, or the applicable part of said period while the Green Energy Successor Business' Decree is in effect, unless said average cannot be maintained due to Force Majeure.

(3)     The number of jobs of the Green Energy Successor Business after its first year of operations is greater than twenty-five percent (25%) of the average annual number of jobs of the Exempt Infrastructure Predecessor Business referred to in paragraph (2) of this subsection.

(4)     The Green Energy Successor Business does not use the physical facilities, including land, buildings, machinery, equipment, inventory, supplies, trademarks, patents, and marketing outlets, that have a value of fifty thousand dollars ($50,000) or more and which have been previously used by the Exempt Green Energy Predecessor Business. The foregoing shall not apply to additions to Property Devoted to the Production of Green Energy, even when said additions constitute physical facilities with a value of fifty thousand dollars ($50,000) or more and which

AAFAF_CONF_0007893

HEIN EXHIBIT 84

are being or have been used by the main unit or Exempt Green Energy Predecessor Business. The foregoing notwithstanding, the Secretary of the DEDC may determine, upon recommendation of the agencies issuing tax exemption reports, that the use of the physical facilities or the acquisition of any facility of an Exempt Green Energy Predecessor Business that is or was in operation shall serve the best economic and social interests of Puerto Rico, in view of the nature of said facilities, the number of jobs, the amount of the payroll, the investment, the location of the project, or other factors that in his judgment merit said determination.

(b)     Exceptions.-

Notwithstanding the provisions of subsection (a) of this Section, the conditions shall be deemed to be complied with, when:

(1)     The Green Energy Successor Business assigns to the Exempt Green Energy Predecessor Business such a portion of its annual number of jobs as may be necessary so that the annual number of jobs of the Exempt Green Energy Predecessor Business is maintained at or is equal to the annual number of jobs that said Exempt Green Energy Predecessor Business must maintain. The assignment provided herein shall not be covered by the Decree of the Green Energy Successor Business, but it shall enjoy the benefits provided under this Chapter, if any, with respect to the portion so assigned which the Exempt Green Energy Predecessor Business would have enjoyed, as if such a portion had been its own annual production. If the exemption period of the Exempt Green Energy Predecessor Business has expired, the Green Energy Successor Business shall pay the appropriate taxes on such a portion of its annual production assigned to the Exempt Green Energy Predecessor Business.

(2)     The Green Energy Successor Business declares as not covered by its Decree, for property tax purposes, such portion of its facilities as may be necessary so that the investment in physical facilities of the Exempt Green Energy

AAFAF_CONF_0007894

Predecessor Business is maintained at or is equal to the total investment in physical facilities at the close of the Taxable Year of such Exempt Green Energy Predecessor Business prior to the filing of the application for exemption of the Green Energy Successor Business, minus depreciation thereon and minus any decrease in the investment in physical facilities that may have occurred as of the date the provisions of this paragraph are applied as a result of an authorization to use them under paragraph (4) of subsection (a) of this Section. In those cases where the tax exemption period of the Exempt Green Energy Predecessor Business has not expired, the Green Energy Successor Business shall enjoy the benefits provided by this Code which the Exempt Green Energy Predecessor Business would have enjoyed with respect to the portion of its investment in said physical facilities that, for purposes of this paragraph it declares as not covered by its Decree, if said facilities had been used in producing its Green Energy Income.

(3)    The Secretary of the DEDC determines that the operation of the Green Energy Successor Business serves the best economic and social interests of Puerto Rico, in view of the nature of the physical facilities, the number of jobs, the payroll amount, the investment, the location of the project or any other factors that in his judgment merit said determination, including the financial state of the particular Exempt Business, and waives its full or partial compliance with the provisions of subsection (a) of this Section, may condition such operations as may be convenient and necessary to serve the best interests of Puerto Rico.

Section 2074.03.- Sale of Electric Power to the Electric Power Authority.

Eligible Businesses that carry out any of the eligible activities provided in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 and that are completely disconnected from the electrical system of the Puerto Rico Electric Power Authority shall not be required to sell electric power they generate to the Authority in order to

AAFAF_CONF_0007895

obtain or maintain a Decree under this Code, regardless of any other legal provision to the contrary.

## CHAPTER 8 - AGRO-INDUSTRIES
## SUBCHAPTER A - ELIGIBILITY

Section 2080.01- Companies Engaged in Agriculture, the Livestock Industries, and Agro-industries

(a)      It is hereby provided that a business established or to be established in Puerto Rico by any Person, or combination of the different types of Persons, whether organized or not under a common name, may file with the Secretary of the DEDC, upon a technical recommendation from the Secretary of Agriculture, an application for Incentives when such Person establishes in Puerto Rico to perform or carry out one of the following eligible activities:

(1)      The activities of the Puerto Rico Milk Industry, Inc.

(2)      Livestock or agro-industria] businesses engaged in the operation or development in Puerto Rico of one or more of the following businesses:

(i)      The farming and/or cultivation of land for the production of fruit and vegetables, spices for condiments, seeds, and all kinds of foodstuffs for human beings or animals, or raw materials for other industries;

(ii)      The raising of animals for the production of meat, milk, or eggs among others, used as foodstuffs for human beings, or raw materials for other industries;

(iii)      The breeding of thoroughbred race horses, breeding of *paso Jina* horses, and breeding of saddle horses;

(iv)      The agro-industrial and livestock operations that acquire raw materials produced in Puerto Rico, provided that they are available.

AAFAF_CONF_0007896

(v)    The milk producers, manufacturers, and milk sterilizers and their agents; provided, that the milk used is extracted from the milking done in Puerto Rico.

(vi)    The Operations engaged in the packing, crating, or labeling of agricultural produce cultivated in Puerto Rico that are part of the same agro-industrial business. The operations that are exclusively related to the packing, crating, or labeling of agricultural produce shall not constitute an agro-industrial business.

(vii)    Mariculture, commercial marine fishing, and aquaculture.

(viii) The commercial production of flowers, plants, and ornamental grasses for the local market and for export, not including the professional services of landscapers.

(ix)    The cultivation of vegetables with hydroponic methods, tents, and other equipment used for such purposes.

(x)    The production of grain for livestock businesses by Bona fide Farmer's associations.

(xi)    The breeding of gamecocks and the production of spurs.

(xii)    Any other business that, upon receiving an eligibility recommendation from the Secretary of Agriculture, the Secretary of DEDC considers a livestock or agro-industrial business pursuant to the Incentives Regulations and in consultation with the Secretary of Agriculture; provided, that the business is not inconsistent with the purpose of this Code.

## SUBCHAPTER B - TAX BENEFITS

Section 2082.01.- Tax Exemptions.- Puerto Rico Milk Industry, Inc.

(a)    In General- The Puerto Rico Milk Industry, Inc. is hereby exempted from the payment of income taxes, municipal license taxes, property taxes, excise taxes, duties, and any other type of import duty or purchase tax on its machinery.

AAFAF_CONF_0007897

(b)     For purposes of the exemption provided in this Section, the requirements provided in Section 2083.02 of this Code must be met.

Section 2082.02.- Bona fide Farmers Income Tax.

(a)     In General.- Bona fide Farmers are hereby exempted from the payment of income taxes on ninety percent (90%) of their income derived directly from the livestock or agro-industrial business. This exemption does not include income from interest, dividends, bonuses, or profits derived from the sale of assets, including those assets used in the agricultural business, or any other income derived from the livestock or agro-industrial businesses of Bona fide Farmers which is not derived directly from livestock or agro-industrial activity, as defined and established in paragraph (2) of subsection (a) of Section 2081.01 of this Code.

(b)     Any interest on bonds, promissory notes, and other debt instruments executed after January 1, 1996, by Bona fide Farmers and any Financial Institution, as said term is defined in Act No. 4 of October 11, 1985, as amended, known as the "Financial Institutions Commissioner's Office Act," or issued in transactions authorized by the Commissioner of Financial Institutions, related to the financing of livestock or agro-industrial businesses, shall be exempt from the payment of income taxes.

(c)     The shareholders or partners of an Exempt Business holding a Decree under the provisions of this Chapter and that are engaged in the activities listed in paragraph (2) of Subsection (a) of Section 2081.01 of this Code, shall be subject to the income taxes provided in the Puerto Rico Income Tax Code on dividend distribution or the net income benefit of such Exempt Business.

Section 2082.03.- Real and Personal Property Tax.

Bona fide Farmers engaged in the activities provided in paragraph (2) of subsection (a) of Section 2080.01 of this Code, and that also hold a Decree granted under this Code, shall be exempt from the payment of property taxes imposed by the

AAFAF_CONF_0007898

HEIN EXHIBIT 84

"Municipal Property Tax Act," including real and personal property, whether tangible or intangible, such as land, buildings, equipment, accessories, and vehicles owned, leased, or held in usufruct, and used in thirty-five percent (35%) or more of such activities covered by the Decree.

Section 2082.04.- Municipal Tax.

Bona fide Farmers engaged in the activities provided in paragraph (2) of subsection (a) of Section 2080.01 of this Code and that hold a Decree granted under this Code shall be exempt from the payment of municipal license taxes imposed under the "Municipal License Tax Act" on activities covered by the Decree.

Section 2082.05.- Exemption from the Payment of Excise Taxes and the Sales and Use Tax.

(a)     All Bona fide Farmers engaged in the activities provided in paragraph (2) of subsection (a) of Section 2080.01 of this Code, and that hold a Decree under this Code are hereby exempted from the payment of excise taxes and the sales and use tax, if applicable, as provided in Subtitles C, D, and DDD of the Puerto Rico Internal Revenue Code, provided that they meet the requirements of Section 2083.05 of this Code, on the following articles when they are introduced or acquired directly or indirectly by them to be used in such activities:

(1)     Incubators and breeding places for poultry and other animals; articles for the breeding and raising of bees and cattle;

(2)     Milkers, including electric milkers, fillers for silos, and tanks used by livestock farmers to preserve milk in farms or livestock farms;

(3)     Electric generators;

(4)     Equipment, devices, and objects that operate solely on solar, wind, hydraulic, or any other type of power, excluding the power generated from crude oil and petroleum products;

AAFAF_CONF_0007899

HEIN EXHIBIT 84

(5)     Equipment used by coffee producers to process the beans from the moment they are harvested until they are suitable for roasting; equipment and devices used in the production, processing, pasteurization or production of milk or its derivatives;

(6)     Equipment used to mix food in the farm and the food distribution systems for animals or bees in the farms; treated posts and wire for fencing the farms;

(7)     Equipment and devices used for raising poultry and in the production of eggs, and semen for the breeding of livestock;

(8)     Equipment, devices or objects used by Bona fide Farmers in the business of producing and cultivating vegetables, seeds, coffee, mango, legumes, sugar cane, ornamental flowers and plants, grass or hay for livestock fodder, farinaceous products, fruit, pigeon peas and pineapples, for livestock, horticulture, cuniculture, pig breeding, aviculture, apiculture, aquaculture, and fishing; for cattle or goat breeding for meat or milk; for the production, processing, pasteurization or sterilization of milk or its derivatives, for the breeding of native saddle horses, native thoroughbred horses, Puerto Rican purebred *paso fino* horses, breeding of fighting cocks and spur production, and any other activity determined by the Secretary of the DEDC upon recommendation of the Secretary of Agriculture;

(9)     Honey or molasses as fodder for cattle; any other food for livestock, rabbits, goats or sheep;

(10)    Spare parts including, but not limited to, tires and tubes for aircraft used in agro-industrial activities;

(11)    Any kind of vehicle other than automobiles used in agricultural activities.

(i)     The exemption established in this paragraph shall also apply to the replacement of said vehicles; provided, that the motor vehicle to be replaced was owned by a Bona fide Farmer for use in the agricultural business for a

period of not less than four (4) years. However, when the vehicle to be replaced has lost its utility due to accidental causes not attributed to the owner's negligence, the exemption shall be applicable to the replacement. When the owner of a vehicle who is enjoying benefit of this exemption, sells, transfers, or otherwise alienates it, for a price that does not exceed five thousand seven hundred sixty-nine dollars ($5,769), the new owner shall be required to pay a minimum excise tax of two hundred fifty dollars ($250.00), before taking ownership thereof. In the event the price exceeds five thousand seven hundred sixty-nine thousand dollars ($5,769), the new owner shall be required to pay the excise tax set forth in the table provided in Section 3020.08 of the Puerto Rico Internal Revenue Code.

(ii)    The amount of the excise tax to be paid shall be calculated based on the taxable price on which the exemption was granted, minus the depreciation. It shall be the responsibility of the exempt person to require the new owner to show evidence of having paid the excise tax before handing over the vehicle. When the new owner is another Bona fide Farmer, he may avail himself of the benefits provided in this paragraph for the remainder of the four (4)-year term exemption period originally granted.

(12)   Gas oil or diesel oil used solely for the operation of machinery and vehicles used for agriculture, husbandry, aviculture or for the breeding of native thoroughbred horses or purebred Puerto Rican *paso fino* horses, or in the operation of machinery or vehicles of producers, processors, pasteurizers, or sterilizers of milk and its derivatives as well as other equipment used in different agro-industrial and livestock operations;

(13)   Tractors, plows, rakes, mowing machines, planters, and any other accessory equipment for tractors, including the parts thereof, to be used in the agro-industrial business by Bona fide Farmers;

HEIN EXHIBIT 84

AAFAF_CONF_0007901

(14)   Herbicides, insecticides, pesticides, and fertilizers, including the equipment for the application thereof;

(15)   Drip irrigation systems, sprinklers, including but not limited to pumps, pipes, valves, timers, filters, injectors, chemigation equipment, shading structures for steel, aluminum or wood bales, materials for shipping, material for propagation beds, planting stock, planters, baskets and trays, plant support materials (wood or bamboo stakes), plastic mulch or ground cover, steel, aluminum or treated wood nurseries, saran shade cloth or fiberglass to roof the nurseries;

(16)   Equipment, machinery, and materials used in the hot water treatment process for the mangos to be exported;

(17)   Systems, equipment, and materials used for environmental control as required by the regulatoty agencies to operate their business;

(18)   Structures, shading structures, and other equipment used for the growing of vegetables with hydroponic methods; and

(19)   Spare parts, accessories, and replacements for any of the items described in paragraphs one (1) through eighteen (18) of this subsection, as provided in Subtitle D of the Internal Revenue Code.

(b)   To acquire the articles exempted from the sales and use tax which are listed in paragraph (a) of this Section, the Bona fide Farmer shall show the Exempt Purchases Certificate to the salesperson during each sales transaction.

SUBCHAPTER C -  REQUIREMENTS FOR GRANTING EXEMPTIONS

Section 2083.01.- Decree Application Requirements.

(a)   Any person that has established or proposes to establish an eligible business in Puerto Rico under the provisions of this Chapter, may file with the Secretary of the DEDC, upon recommendation of the Secretary of Agriculture, an application for the benefits of this Chapter in accordance with the provisions of Subtitle F of this Code.

AAFAF_CONF_0007902

(b)     Any person may apply for the benefits of this Chapter; provided, that they meet the eligibility requirements of Subchapter A and of this Chapter as well as any other criteria that the Secretary of the DEDC prescribes through the Incentives Regulations, administrative order, circular letter, or any general communication. The contribution made by the Exempt Business to the economic development of Puerto Rico shall be included as an evaluation criteria.

Section 2083.02.- Requirements for the Puerto Rico Milk Industry, Inc. Tax Exemption

(a)     In General- The Puerto Rico Milk Industry, Inc. may enjoy the benefits of this Chapter provided that the total capital stock of the corporation remains in the Milk Industry Development Fund created by Act No. 34 of June 11, 1957.

(b)     When all or part of the Stock ownership is transfened to private persons, the tax exemptions granted shall be rendered ineffective and, after such date, the property and income of the corporation shall be taxable in the same manner as any other private corporation pursuant to the Puerto Rico Internal Revenue Code; likewise, any other tax from which the corporation was exempt shall apply thereto.

Section 2083.03.- Bona fide Farmer Tax Exemption Requirements

(a)     A livestock or agro-industrial business shall be deemed to be eligible for the purposes of this Chapter if fifty-one percent (51%) or more of its gross income is derived from one (1) or more of the eligible activities described in paragraph (2) of subsection (a) of Section 2081.01 of this Code.

(b)     New agro-industrial entrepreneur- In the case of new farmers or agro-industrial entrepreneurs who are unable to obtain a Bona fide Farmer certification, the Secretary of the DEDC, in consultation with the Secretary of Agriculture, shall prescribe in the Incentives Regulations or other special regulations the requirements and procedures for them to avail themselves of the benefits of this Chapter.

Section 2083.04.- Debt Instrument Exemption Requirements

AAFAF_CONF_0007903

(a)     In order to enjoy the exemption on interests provided in subsection (b) of Section 2082.02 of this Code, the lender must grant the loan directly to the Bona fide Farmer. If the financing is granted to an intermediary who, in turn, lends or otherwise contributes the product of the financing to an agro-industrial business, the loan to the intermediary shall not constitute an eligible loan for purposes of this exemption. The term "intermediary" includes, but is not limited to, related parties pursuant to the criteria established in Sections 1010.04 and 1010.05 of Puerto Rico Internal Revenue Code.

(b)     In the case of an agro-industrial business disqualified as such, the interest generated by the debt instruments shall not be considered eligible for the exemption provided under Section 2082.02 of this Code.

(c)     The term "financing" does not include the refinancing of the debt insofar as the product is used to pay off existing debts whether from the agro-industrial business or other. Therefore, the income tax exemption on any interest on bonds, promissory notes, and other debt instruments shall not apply to the refinancing.

Section 2083.05.- State Excise Taxes and Sales and Use Tax (SUT) Exemption Requirements

(a)     The Bona fide Farmer who wishes to avail himself of the exemptions provided in Section 2082.05 of this Code shall comply with the Bona fide Farmer provisions established by the Secretary of Agriculture pursuant to the provisions of this Code and shall certify through the mechanisms to be established by the Secretary of the DEDC, in consultation with the Secretary of Agriculture, that he is engaged in the operation or development of an agro-industrial business, and that he shall use the article for which the exemption was claimed for the operation and development of the business.

SUBCHAPTER D -  SPECIAL PROVISIONS

AAFAF_CONF_0007904

Section 2084.01.- Agricultural Research Incentives

(a)    The Department of Agriculture shall be required to promote high technology farming as well as the development of a research plan to promptly address the needs of local businesses, in light of our condition as a tropical Island, and to promote an increase in the production and export of agricultural products.

(b)    The Department of Agriculture shall identify the priorities each year in order to grant funds to the best research proposals in accordance with the government's public policy and shall establish mechanisms and regulations as are necessary to process the research proposals received.

(c)    The Depaiiment of Agriculture shall submit a formal request to the DEDC through the Economic Incentives Fund for agricultural research that has been identified as a priority, subject to the budget limitations that, from time to time, are imposed by the Legislative Assembly of Puerto Rico.

SUBCHAPTER E - GENERAL PROVISIONS

Section 2085.01- Documents and Recordation in the Puerto Rico Property Registry; Exemption.

Bona fide farmers are hereby exempted from the payment of Internal Revenue stamps and recordation fees in the execution of documents and recordation in the Puerto Rico Property Registry, including but not limited to the options, segregation, purchase, assignment, exchange, gift, usufruct or lease of personal or real prope1iy for the use of their agro-industrial business, as well as the assignment, constitution, extension, modification, release or cance]ation of liens on real or personal property, to finance their agro-industrial business and/or jointly and severally secure the financing of the agro-industrial business of another Bona fide Farmer, regardless of the banking or credit institution used for these purposes. The authorizing notary shall comply with establishing the capacity of the appearing party as a Bona fide Farmer, taking as reference the certification issued by the Secretary of Agriculture.

AAFAF_CONF_0007905

HEIN EXHIBIT 84

253

Furthermore, in the execution, the appearing Bona fide Farmer shall state under oath that the binding legal transaction is for the use of his agro-industrial business and/or to jointly and severally secure the financing of another agro-industrial business as defined in this Chapter.

## CHAPTER 9 – CREATIVE INDUSTRIES

## SUBCHAPTER A – ELIGIBILITY

Section 2091.01.- Businesses Engaged in Creative Industries

(a)    It is hereby provided that for a business established, or to be established, in Puerto Rico by a Person, or combination thereof, whether or not organized under a common name, may apply to the Secretary of the DEDC for an Economic Incentive Grant when the Entity establishes in Puerto Rico to engage in any of the following eligible activities:

(1)    Film Projects - A Person may obtain a Grant in connection with a Film Project; provided, that:

(i)    the production or post-production of the Film Project is carried out in whole or in part in Puerto Rico;

(ii)    the Film Project is intended for airing, commercial distribution or exhibition to the general public outside of Puerto Rico by any means and media, except for the Film Projects listed in clauses (A), (B), and (C) of subparagraph (iv) of this paragraph (1) below, which may be intended for airing, commercial distribution or exhibition to the general public in Puerto Rico. The Secretary of the DEDC shall determine that Film Projects, other than those listed in clauses (A), (B), and (C) of subparagraph (iv) of this paragraph (1), whose airing, distribution or exhibition outside of Puerto Rico is considered incidental or minimal or which are intended for use in Puerto Rico, fail to comply with the provisions of this paragraph; and

AAFAF_CONF_0007906

254

(iii)   that Puerto Rico Production Expenditures are at least fifty thousand dollars ($50,000.00); provided, that in the case of Film Projects described in (B) and (C) of subparagraph (iv) of this paragraph (1), Puerto Rico Production Expenditures are at least twenty-five thousand dollars ($25,000.00).

(iv)   For the purposes of this Code, the term "Film Project" means:

(A)   Feature films.

(B)   Short films.

(C)   Documentaries.

(D)   Television series, miniseries, and television programs similar in nature, including pilot episodes and those produced for digital distribution. Provided, further, that in all of these cases, the airing, distribution, or exhibition outside of Puerto Rico shall not be considered incidental or minimal.

(E)   Commercials broadcast outside of our jurisdiction, including campaigns consisting of various advertisements; provided, that all of the campaign advertisements are included under a single contract or purchase order with aggregate Puerto Rico Production Expenditures of at least one hundred thousand dollars ($100,000.00), which individually meet all other requirements established in this subchapter, except for the minimum cost established in subparagraph (iii) of paragraph (1) of this subsection, and any other requirement prescribed by the Secretary of the DEDC in the Incentives Regulations or circular letter.

(F)   Video games.

(G)   Television programs, including but not limited to reality shows, talk shows, news programs, game shows as well as entertainment, comedy, and children's programs and variety shows.

(H)   The post-production of one or several Film Projects listed above; provided, that all Film Projects are included under a single contract or

AAFAF_CONF_0007907

255

purchase order with aggregate Puerto Rico Production Expenditures of at least one hundred thousand dollars ($100,000.00), which individually meet all other requirements established in this Code, except for the minimum cost established in subparagraph (iii) of paragraph one (1) of this subsection, and any other requirement prescribed by the Secretary of the DEDC in the Incentives Regulations or circular letter.

(I)    Film Festivals

(J)    Music videos.

(K)    A Film Project does not include any of the following:

1.    A production that primarily consists of religious or political advertising;

2.    a production that includes pornographic material;

3.    a radio program;

4.    a production intended primarily to promote a product or service other than a commercial pursuant to clause (E) of subparagraph (iv) of this paragraph (1);

5.    a production with the primary purpose of raising funds;

6.    a production intended primarily for employee training or in-house corporate advertising or other similar production, or

7.    any other project as prescribed by the Secretary of the DEDC in the Incentives Regulations or circular letter.

(v)    A Film Project may:

(A)    Use as source real images as well as animation or electronically generated images;

HEIN EXHIBIT 84

AAFAF_CONF_0007908

256

(B)   use for its production any means currently available or that may be developed in the future, including, but not limited to: celluloid, tape, disc or paper. The medium may be magnetic, optic, ink or any other that is developed in the future. The form of recording and reproducing images and sound may be analog, digital or any other developed in the future; or

(C)   be disseminated in any media, including electronic media.

(2)   Studio Operators or Post-Production Studios that directly, or through an authorized grantee, as such term is defined, properly operate a Studio or Post-Production Studio as well as the components required to render the necessary services to satisfy the commercial needs of Film Projects.

(i)   Any bona fide office, business, or establishment and the equipment and machinery thereof,  with the necessary capacity and skills to render commercial-scale services to a Studio Operator, shall be considered a strategic supplier, provided, that such services: (i) are directly related to the development, preproduction, production, postproduction, and distribution of a Film Project; (ii) are indispensable for the Studio Operator to meet its obligations under paragraph (2) of subsection (a) of this Section; and (iii) are repeatedly and exclusively rendered to a Studio Operator. A Person who renders services sporadically to a Studio Operator shall not be considered a strategic supplier.

(3)   Strategic suppliers or Grantees authorized by the Secretary of the DEDC that meet the requirements established in subparagraph (i) of paragraph (2) of this subsection.

(i)   Authorized suppliers or Grantees shall enjoy the same benefits available to the Studio Operator under its Grant as a Grantee directly engaged in such activity.

HEIN EXHIBIT 84                         AAFAF_CONF_0007909

257

(4) Infrastructure Projects that include the development or substantial expansion in Puerto Rico of Studios, laboratories, facilities for the international transmission of television images or other media, or other permanent facilities to carry out Film Projects, whether said projects avail themselves of the provisions of this Code, whose hard costs budget, as certified by the Auditor, exceeds five hundred thousand dollars ($500,000).

## SUBCHAPTER B – TAX BENEFITS

Section 2092.01.- Income Tax.

In General.- The net income of a Grantee directly derived from the exploitation of eligible activities under this Chapter and covered under a Grant shall be subject to a four-percent (4%) preferential flat income tax rate, in lieu of any other tax, if any, provided by the Puerto Rico Internal Revenue Code or any other Puerto Rico law.

(b)[sic] Studio Operators.- A Studio Operator shall be subject to a four-percent (4%) preferential flat tax rate on its net income derived from the exploitation of activities covered under the Grant as provided in subsection (a)[sic] of this Section.

(c) Rental of Personal Property. Notwithstanding the provisions of the Puerto Rico Internal Revenue Code, this Code, or any other law of Puerto Rico, payments made after July 1, 2019, by the holder of a Grant issued under this Code or under Prior Incentives Laws to nonresident individuals, corporations, foreign partnerships or other foreign persons not engaged in trade or business in Puerto Rico on account of rental of personal property located in Puerto Rico or any interest thereon, including rental for using personal property in Puerto Rico, provided, that said property is used directly or indirectly in eligible activities under this Chapter, shall not be subject to income taxes, income tax withholding at the source, or the sales and use tax. Provided, however, that to enjoy the exemption granted in this

HEIN EXHIBIT 84

AAFAF_CONF_0007910

258

subsection, the Grantee shall submit to the Department of the Treasury and the Secretary of the DEDC for approval a certification stating that the real property was not available in Puerto Rico to be used directly or indirectly in eligible activities under this Chapter.

(d)     Special Tax for Foreign Persons.- A special twenty percent (20%) tax shall be imposed, collected, and paid, in lieu of any other tax provided in the Puerto Rico Internal Revenue Code, on the total amount received by any individual Foreign Person, or by an Entity hiring the services of a Foreign Person to render services in Puerto Rico in connection with a Film Project, and which constitutes wages, fringe benefits, per diems, or fees. In the event this twenty percent (20%) tax applies to an Entity hiring the services of a Qualified Nonresident, the portion of the payment received by the Entity that is subject to this special tax shall not be subject to the special twenty percent (20%) tax when paid by the Entity to the Foreign Person.

(1)     Duty to Deduct and Withhold.- Any person who controls, receives, custodies, disposes, or pays the compensation amounts described in subsection (c) of this Section, shall deduct and withhold the twenty percent (20%) tax and shall pay the amount of said tax thus deducted and withheld at the Internal Revenue Collection Office of the Department of the Treasury, or deposit it in any of the banking institutions designated as depositaries of public funds authorized by the Secretary of the Treasury to receive said tax. The tax shall be paid or deposited on or before the fifteenth (15th) day of the month following the date on which the payment subject to the twenty percent (20%) withholding imposed by this subsection was made. The amounts subject to the deduction and withholding imposed by this subsection shall not be subject to the provisions of Section 1062.08 or 1062.11, of the Puerto Rico Internal Revenue Code, or any provision that substitutes it or that is contained in any other similar law.

AAFAF_CONF_0007911

HEIN EXHIBIT 84

259

(2)     Failure to Withhold.- If the withholding agent, in violation of the provisions of paragraph (1) of subsection (c) of this Section, fails to withhold the twenty percent (20%) tax imposed by subsection (c) of this Section, the amount that should have been deducted and withheld —unless the person who received the income has satisfied his tax liability to the Secretary of the Treasury— shall be collected to the withholding agent, following the same procedure that would be used if it were a tax owed by the withholding agent. The Person who receives the payment shall be required to pay the tax not withheld by filing a return within the period provided in Section 1061.16 of the Puerto Rico Internal Revenue Code and the payment of the tax pursuant to the provisions of Section 1061.17 of the Puerto Rico Internal Revenue Code. Even if the person who receives the payment pays the appropriate tax, the withholding agent shall be subject to the penalties provided in paragraph (5) of this subsection.

(3)     Tax Liability.- Any person who has the obligation to deduct and withhold the twenty percent (20%) tax imposed by subsection (c) of this Section, shall be liable to the Secretary of the Treasury for the payment of said tax and shall not be liable to any other person whatsoever for the amount of any payment thereof.

(4)     Withholding Return.- Any person who has the obligation to deduct and withhold the twenty percent (20%) tax imposed by subsection (c) of this Section shall file a withholding return on or before February 28 of the year following the year in which the payment was made. Said return shall be filed with the Secretary of the Treasury and shall contain such information and be prepared in the manner prescribed by the Secretary of the Treasury through regulations. Any person who files the return required by this subsection shall not be required to file the declaration required under subsection (j) of Section 1062.08 of the Puerto Rico Internal Revenue Code.

HEIN EXHIBIT 84

AAFAF_CONF_0007912

260

(5)　　Penalties.- For the provisions regarding penalties and additions to the tax, see Section 6041.01 of Subtitle F of the Puerto Rico Internal Revenue Code.

(e)　　Tax Exemption on Distributions in Liquidation. – Distributions made by an Exempt Business holding a Grant under this Chapter to its shareholders or partners in a total or partial liquidation of the Exempt Business that are attributed to income derived from the exploitation of activities covered under the Grant shall be fully exempt from the payment of income taxes, including the alternative minimum tax and the alternate basic tax provided in the Puerto Rico Internal Revenue Code.

Section 2092.02.- Special Deductions for Businesses Engaged in the Film Industry.

(a)　　Duly authorized gifts from private persons to nonprofit entities for the production of Film Projects such as feature films, short films, documentaries, film festivals or educational activities directed at training and development of the Film Industry.

(1)　　To enjoy this special deduction, gifts shall not exceed one hundred thousand dollars ($100,000.00) per Film Project. Private persons may deduct gifts from the income tax return up to twenty-five percent (25%) of their total tax liability in Puerto Rico. No donor may have a liaison with the Film Project or receive any benefit for the production. The Secretary of Economic Development and Commerce shall prescribe by regulations the additional conditions of the program.

Section 2092.03.- Tax on Real or Personal Property.

Real or personal property devoted to film activities covered by a Grant that would otherwise be subject to taxation, shall be entitled to a seventy-five percent (75%) exemption from all municipal and state taxes on real or personal property. Real or personal property taxes shall be assessed, imposed, notified, and administered pursuant to the provisions of Act No. 83-1991, as amended, known as

261

the "Municipal Property Tax Act of 1991," or any future law in effect on the date in which the tax is assessed and imposed.

Section 2092.04.- Municipal License Taxes and Other Municipal Taxes:

(a)     No Grantee shall be subject to municipal license taxes, excise taxes, and other municipal income taxes imposed by a municipal ordinance, as of the effective date of the Grant.

(b)     Every Grantee as well as its contractors or subcontractors shall enjoy a seventy-five percent (75%) exemption from any tax, liens, license, excise tax, rate, or tariff for the construction of works to be used in activities covered under the Grant within a municipality, imposed by any ordinance of any municipality, as of the effective date of the Grant. The contractors or subcontractors who work for a Grantee shall determine their volume of business for municipal license tax purposes, by deducting the payments they are required to make to subcontractors under the prime contract entered into with the Grantee. Subcontractors, who, in turn, use other subcontractors within the same project, shall also deduct the corresponding payments in the determination of their volume of business. A contractor or subcontractor may deduct the payments described in the preceding paragraph from their respective volumes of business only if the contractor or subcontractor certifies, through an affidavit, that he did not include in the contract entered into for the works or services to be rendered with respect to the Grantee, an item equal to the municipal license tax resulting from the volume of business deducted pursuant to this Section.

Section 2092.05.- State Excise Taxes and Sales and Use Tax

(a)     Products for use and consumption introduced or acquired directly by a Grantee to be used exclusively in film industry activities covered under a Grant are hereby exempt from the payment of the excise taxes imposed by Subtitle D of the Puerto Rico Internal Revenue Code, insofar as they remain in Puerto Rico temporarily.

AAFAF_CONF_0007914

262

Section 2092.06.- Tax Exemption Periods.

(a)     Commencement of the Exemption.- The tax benefits granted under this Subchapter shall be effective on the date established in the Grant.

(b)     Grants issued in connection with Film Projects may be effective prior to the filing of the application for Grant and the effective term thereof shall be equal to the life of the project, including the exploitation thereof, as prescribed by the Secretary of the DEDC through the Incentives Regulations. Grants issued to Studio Operators shall be valid for fifteen (15) years.

(c)     A Studio Operator holding a Grant shall have the option to choose the specific taxable years to be covered as to their income taxes, municipal license taxes, or property taxes when so notified to the Secretary of the Treasury, the Municipality or the CRIM, as applicable, and the Secretary of the DEDC not later than the due date prescribed by law for filing their income tax return for such Taxable Year, declaration of volume of business or personal property tax return, including any extensions granted therefor. In the case of real property taxes, the CRIM shall be notified within sixty (60) days before January first (1st) of the Fiscal Year in which such option is to be exercised. Once a Studio Operator opts for this benefit, the exemption period corresponding to such operator shall be extended for the number of taxable years in which such exemption was not enjoyed under the Grant.

(d)     Grants issued under the provisions of this Chapter shall be transferable, subject to prior authorization of the Secretary of the DEDC.

Section 2092.07.- Tax Basis.

The tax basis of an investment made by a Grantee shall be determined pursuant to the provisions of the Puerto Rico Internal Revenue Code, except that said basis shall be reduced dollar for dollar, but never below zero, by the amount of the Tax Credit received by the Grantee.

Section 2092.08.- Other Tax Benefits.

HEIN EXHIBIT 84

AAFAF_CONF_0007915

263

(a)     Any judicial, public or private deed, petition or document related to the recordation, entry, cancellation, release, restriction, constitution, modification, extension, rectification, limitation, creation or renewal of any real property or contractual right that has access to the Property Registry of Puerto Rico executed in connection with parcels of land located within the Creative Industries Development Districts shall be exempt from the payment of internal revenue, legal aid and notarial assistance stamps, and Property Registry of Puerto Rico presentation and recordation vouchers including, but not limited to, internal revenue, legal assistance or any other stamp taxes required by law or regulation for the execution, issuance of any partial or complete certified copy, presentation, recordation, or any other operation in the Property Registry of Puerto Rico. In each case, the exemption shall be subject to the prior approval of the Secretary of the DEDC. The approval of the Secretary of the DEDC shall be evidenced by a certification issued by him, a copy of which (i) must be delivered to the notary, Property Registrar of Puerto Rico, Court of Law, or any other Entity before which the exemptions provided herein are being claimed, and (ii) shall accompany any deed or document filed with the Property Registry of Puerto Rico. The persons and entities included in this paragraph are hereby authorized to rely on the certification issued by the Secretary of the DEDC, which shall be presumed final and binding for all legal purposes.

(b)     The term "real property or contractual right that has access to the Property Registry of Puerto Rico" used in the subsection (a) of this Section, includes all real property rights or personal rights which currently have or may in the future have access to the Property Registry of Puerto Rico including, without limitation: (A) Easements, whether legal, real or personal or equitable easements; (B) constitution of horizontal property, timeshare, vacation club, or Condo Hotel property regimes; (C) surface or construction rights, and any other acknowledgement of construction or certification of completion of construction or

HEIN EXHIBIT 84

AAFAF_CONF_0007916

264

improvement, the registration of which is requested in the Puerto Rico Registry of Property; (D) leases; (E) mortgages; (F) purchases; (G) exchanges; (H) gifts; (I) rights of first offer, refusal, and repurchase and annuities; (J) private water rights; (K) administrative grants; (L) options to purchase, and (M) use restrictions and conditions.

SUBCHAPTER C – REQUIREMENTS FOR GRANTING EXEMPTIONS

Section 2093.01.- Grant Application Requirements.

(a)    Any person who has established or intends to establish an Eligible Business in Puerto Rico under this Chapter, may apply for the benefits of this Chapter upon filing an application with the Secretary of the DEDC, as provided in Subtitle F of this Code.

(b)    Any person may apply for the benefits of this Code; provided, that he meets the eligibility requirements of Subchapter A of this Chapter, and any other criteria prescribed by the Secretary of the DEDC in the Incentives Regulations, administrative order, circular letter or any other general communication, including as an evaluation criteria, the contribution to be made by the Eligible Business to the economic development of Puerto Rico.

SUBCHAPTER D – SPECIAL PROVISIONS

Section 2094.01.- Establishment of Creative Industries Development Districts.

(a)    The Secretary of the DEDC shall designate parcels of land (whether adjoining or not) as "Creative Industries Development Districts." Such geographic areas shall consist of real property or properties devoted to the development, construction, and operation of Studios and other related developments consistent with the purposes and the provisions of this Code, regardless of the owner thereof. In those cases where the owner of a parcel is a private person or municipality it may

265

only be designated as a Creative Industries Development District with the consent of said owner or municipality.

(b)    Parcels of land designated or to be designated as part of the Creative Industries Development Districts owned by the Government of Puerto Rico may be transferred upon such consideration and in accordance with the terms and/or conditions established by the owner of the parcels and the Secretary of the DEDC. Notwithstanding the foregoing, the Transfer of the property shall not be a prerequisite to its designation as Creative Industries Development District. Any law, rule, regulation, policy, norm or guideline limiting the terms or conditions for the Transfer of such parcels beyond those terms and conditions that would ordinarily apply to transactions between Private persons shall not apply Transfers contemplated in this paragraph. The Secretary of the DEDC may impose on the Transfer of real property that is part of the Creative Industries Development Districts such conditions as he deems consistent with furthering the development, construction, expansion, and/or operation of Creative Industries Development Districts and furthering the purposes of this Code.

(c)    Upon establishment of the Creative Industries Development Districts, the Secretary of the DEDC, together with the President of the Puerto Rico Planning Board, in accordance with the provisions of the "Organic Act of the Puerto Rico Planning Board," Act No. 75 of June 24, 1975, as amended, and Act No 81-1991, as amended, known as the "Autonomous Municipalities Act of 1991," shall promulgate and adopt a joint zoning regulation that shall apply to the development, zoning, and use of the lands designated by the Secretary of the DEDC as Creative Industries Development Districts. Any development, zoning, and use of the lands designated as Creative Industries Development Districts shall be governed solely by such joint zoning regulation and shall not be subject to any other law, rule, regulation, policy, norm, or guideline issued by the Puerto Rico Planning Board or the municipalities

AAFAF_CONF_0007918

266

with jurisdiction over the designated parcel(s) pursuant to Act No 81-1991, as amended, known as the "Autonomous Municipalities Act of 1991."

(d)     The parcels of land comprising all or any part of the Creative Industries Development Districts may be encumbered by such restrictive covenants, governance systems, rules, or regulations, and architectural, design, and construction guidelines as the Secretary of the DEDC from time to time may prescribe, and any such restrictive covenants, systems, rules, regulations, and guidelines may be amended, cancelled or modified at any time and from time to time with the approval of the Secretary of the DEDC.

(e)     The Secretary of the DEDC shall have authority to: (i) impose regular, general or special charges, quotas or fees against any and all parcels in the Creative Industries Development Districts, and (ii) impose and collect fees upon the Transfer of any real property interest in the Creative Industries Development Districts or upon the construction of any improvements in the Creative Industries Development Districts, to pay for the construction of improvements and infrastructure in common areas, maintenance and repairs to common areas, landscaping, security, signage, lighting and the rendering of common services; provided, however, that such charges, quotas or fees shall not constitute the imposition of a tax. This subsection shall not apply to properties owned by a Municipality.

(f)     A legal lien is hereby created to secure the collection of taxes and fees imposed and/or assessed upon parcels of land in the Creative Industries Development Districts. This lien shall have priority over any other lien, except for the lien securing outstanding transferred tax debts as provided by Act No. 21-1997, as amended, known as the "Tax Debt Sale Act"; the lien in favor of the CRIM securing the collection of real property taxes; the lien securing the collection of taxes under Act No. 207-1998, as amended, known as the "Puerto Rico Tourism Development Districts Act of 1998"; the lien securing the collection of the special

HEIN EXHIBIT 84                                    AAFAF_CONF_0007919

267

tax on properties located within a business improvement district or a residential improvement zone authorized by Act No. 81-1991, as amended, known as the "Autonomous Municipalities Act of 1991"; and any other lien securing the payment of taxes used to fund public infrastructure. After the first Transfer of any parcel of land in the Creative Industries Development Districts, a voluntary transferee shall be jointly and severally liable for any unpaid taxes and fees at the time. The voluntary transferee shall have the right to be reimbursed by the seller any amount paid to satisfy any unpaid taxes and fees through and including the day of the closing of the Transfer in question. This subsection shall not apply to properties owned by a Municipality.

(g)     The Secretary of the DEDC may enter into agreements for the development and operation of the Creative Industries Development Districts with any Person and may impose any conditions he deems consistent with furthering the development, construction, expansion, or operation of the Creative Industries Development Districts and furthering the purposes of this Code.

(h)     The Secretary of the DEDC shall have authority to certify any Transfer's compliance with the rules, requirements, and/or obligations set forth in this Section.

CHAPTER 10 – ENTREPRENEURSHIP

Section 2100.01.- Young Entrepreneurs.

(a)     Eligibility.- It is hereby provided that every Young Entrepreneur who enters into a Youth Business Creation Agreement, as defined in this Code, with the Secretary of the DEDC may enjoy the financial benefits described in this Section.

(b)     Tax Benefits.-

(1)     Income Taxes.- New businesses as required in subparagraphs (i) through (iii) of paragraph (1) of subsection (c) of this Section, operating under a Young Entrepreneurs agreement entered into with the Secretary of the DEDC shall

HEIN EXHIBIT 84

AAFAF_CONF_0007920

268

be entitled to an income tax exemption for the first five hundred thousand dollars ($500,000) of their net income subject to taxation. Any net income generated by new businesses in excess of first five hundred thousand dollars ($500,000) shall be subject to the regular tax rates established in the Puerto Rico Internal Revenue Code.

        i.     Shareholders of an Exempt Business holding a Decree under subsection (a) of this Section, shall be subject to the income tax provided in Puerto Rico Internal Revenue Code on distributions of dividends or benefits of said Eligible Business' net income.

        (2)    Personal Property Tax- New businesses operating in accordance with this Section shall enjoy full tax exemption on the real property of the new business during the exemption period described in this Section.

        (3)    Municipal Taxes- New businesses operating in accordance with this Section shall be exempt from municipal taxes during the exemption period described in this Section.

        (4)    Exemption Period- New businesses shall enjoy the tax exemption provided in this Chapter during the first three (3) years from the commencement of operations, as established in the tax exemption Decree.

        (5)    The tax exemptions granted to a Young Entrepreneur under this Chapter shall not be granted, even if the applicant meets the requirements, if said Young Entrepreneur is availing himself of tax or economic incentives granted under any law or Chapter under this Code. If during the effective term of the Agreement, a Young Entrepreneur avails himself of any law granting tax or economic incentives, including the incentives provided in this Code, it shall be understood that said Young Entrepreneur waives the benefits provided in this Chapter.

        (c)    Requirements.-

AAFAF_CONF_0007921

(1)    New businesses of Young Entrepreneurs who wish to avail themselves of the tax benefits provided under this Chapter shall comply with the following:

(i)    The business shall begin its main business operations after entering into a Youth Business Creation Agreement with the Secretary of the DEDC.

(ii)    The business shall be operated solely by Young Entrepreneurs;

(iii)    No business that has been operating through Affiliates or resulting from a reorganization, as defined in Puerto Rico Internal Revenue Code, shall be considered a new business.

(iv)    Benefits shall be limited to only one new business per each Young Entrepreneur.

(v)    Any other requirement prescribed by the Secretary of the DEDC in the Incentives Regulations.

Section 2100.02.- Support to Small- and Medium-sized Businesses through the Preferential Rent Program.

(a)    Eligibility.- Any natural or juridical person, including corporations, partnerships, limited liability companies, or any other Entity or organization that is doing business or that intends to do business in Puerto Rico, regardless of its place of organization, that is a SMB.

(b)    Economic Benefit - Preferential Rent Program – Any SMB, through the process set forth in Incentives Regulations, may lease an eligible DEDC property, among which unused properties may qualify, to establish operations and shall pay an annual rent of one dollar ($1) during the first three (3) years of the lease. The DEDC shall prescribe through the Incentives Regulations, guidelines for leasing their properties. The lease agreement shall include all the usual terms and conditions for this type of agreement and shall comply with all the legal provisions applicable

HEIN EXHIBIT 84

AAFAF_CONF_0007922

270

to the lease of DEDC properties. The applicable rent, once the three (3)-year period ends, shall be the prevailing rent at the time the lease agreement is executed.

Section 2100.03.- Business Incubator Program

(a)    For purposes of this Section, the term "Business Incubator" means an organization or Entity established and certified by the Secretary of the DEDC to promote the startup of new businesses or to accelerate the growth of early stage enterprises by providing entrepreneurs the resources and services needed to produce feasible businesses that help to comply with public policy of the Government of Puerto Rico on job creation, and to revitalize weak areas.  This definition does not include for profit organizations or Entities.

(b)    The DEDC shall explore new ways to stimulate the expansion of business incubators in Puerto Rico through the adoption of the incentives set forth in this Code to strengthen entrepreneurial self-management on the Island, by providing the training needed for the creation of sustainable business that generate new jobs. For such purposes, the Secretary may grant incentives for:

(1)    The development of feasibility studies and plans for the creation or expansion business incubators;

(2)    The implementation of said studies and plans to support the creation or expansion business incubators, together with the adequate technical and programmatic assistance;

(3)    The temporary support of business incubators' operations to the extent it is determined that such support is essential to enable business incubators to become self-sustainable.

(c)    The Secretary of the DEDC shall prescribe through regulations, the criteria and requirements to be considered in any competitive process for the selection of the applicants eligible for the incentives, including requirements related to:

AAFAF_CONF_0007923

271

(1)    The number of jobs to be created during the first five (5) years after the date of receipt of the incentive;

(2)    The funds required to create or expand a business incubator during the first five (5) years after the date of receipt of the incentive;

(3)    The types of businesses and research entities that are expected to participate in the business incubator and the surrounding community;

(4)    Letters of intent from businesses and research entities to establish a space within the business incubator; and

(5)    Any other factor deemed appropriate by the Director to further the public policy and purposes of this Code.

(d)    The funding for the benefits provided in this Section shall originate from the Economic Incentives Fund.

## CHAPTER 11 – OTHER INDUSTRIES

Section 2110.01.- Exemptions for Air Carriers.

(a)    Eligibility.- It is hereby provided that a business established or to be established in Puerto Rico by a Person engaged in air transportation services as a carrier, may apply to the Secretary of the DEDC for the tax benefits provided in subsection (b) of this Section.

(b)    Tax Benefits.-

(1)    Income Taxes.-

(i)    In General- The net income derived from the eligible activities described in subsection (a) of this Section shall be exempt during the effective period of the Decree.

(2)    Real and Personal Property Tax.-

(i)    In General.- Air Carriers shall be exempt from state, local, and municipal taxes, whatever their name or nature, on all real or personal property

HEIN EXHIBIT 84

AAFAF_CONF_0007924

272

now owned or hereafter acquired by it, including all taxes or excises taxes on equipment or supplies.

(A)   Any aircraft and the equipment related thereto, leased and owned by a public carrier engaged in air transportation services shall be exempt from all property taxes; provided, that it is established to the satisfaction of the Secretary of the DEDC and the Secretary of the Treasury that such property is being used for such purpose.

(B)   These exemptions shall not include the excise taxes on fuels nor the fee that Act No. 82 of June 26, 1959, authorized the Ports Authority to levy on all aviation gasoline, all fuel products for use and consumption in propelling air transportation vehicles and any blend of gasoline with other fuel products for use and consumption in the propelling of air transportation vehicles, to be consumed in air travel between Puerto Rico and other places or in air travel within the territorial limits of Puerto Rico.

(3)   Municipal Taxes.-

(i)   In General.- Air Carrier Contractors and subcontractors shall be exempt from any tax, levy, duty, license, excise tax, rate or tariff imposed by any municipal ordinance on the construction of works to be used by such air carriers within a municipality. Said taxes shall not include the municipal license tax imposed on the volume of business of a contractor or subcontractor of an air carrier, during the authorized exemption period.

Section 2110.02.- Exemptions for Ocean Freight Carriers

(a)   Eligibility.- It is hereby provided that a business established or to be established in Puerto Rico by a Person, or combination thereof, whether or not organized under a common name, may apply to the Secretary of the DEDC for a Grant when the Entity establishes in Puerto Rico to engage in any of the following eligible activities:

AAFAF_CONF_0007925

273

(1)    Ocean Freight Shipping between ports in Puerto Rico and ports in foreign countries.

(2)    The lease or chartering of vessels used for said mode of transportation or property of any other kind, real and personal, used in connection with the operation of said vessels when the mode of transportation meets the requirements of subsection (c) of this Section.

(b)    Tax Benefits.-

(1)    Income Taxes.-

(i)    In General.- Net Income derived from Eligible Shipping Activities described in subsection (a) of this Section shall be exempt from income taxes during the entire exemption period.

(2)    Distributions.-

(i)    The distribution of dividends or benefits by a corporation or partnership availing itself of the provisions of this Subchapter, that has not enjoyed or is not enjoying industrial tax exemption and that, on the date of commencement of the exempt shipping operations it has accumulated a taxable surplus, shall be considered as made from the undistributed balance of said surplus, but after said surplus is exhausted by virtue of such distribution, the provisions of subparagraph (iii) of this paragraph (2) shall apply.

(ii)    The distribution of dividends or benefits by a corporation or partnership that has enjoyed or is enjoying industrial tax exemption shall be considered as made from the surplus accumulated during the period in which it has enjoyed or is enjoying industrial tax exemption and shall be governed by the provisions of the laws under which they have been governed. After such surplus is exhausted, the provisions of subparagraph (iii) of this paragraph (2) shall apply.

(iii)    Except as otherwise provided in subparagraphs (i) and (ii) of the preceding paragraphs, the distribution of dividends or benefits by a

AAFAF_CONF_0007926

HEIN EXHIBIT 84

274

corporation or partnership availing itself of the provisions of this Chapter shall be considered as derived from the earnings or profits most recently accumulated and shall be exempt in the same proportion in which the income was exempt, for the following persons:

(A)    Domestic Persons; or

(B)    Nonresident aliens that are not required to pay in any jurisdiction outside of Puerto Rico any tax on the income derived from any source in Puerto Rico;

(C)    Nonresident aliens that, by reason of the laws of their country of residence, cannot take, as a deduction from income or as a credit against the tax payable in said country on the dividends or benefits derived from a corporation or partnership exempt under this Code, the tax which would be imposed on them in Puerto Rico on such dividends or benefits; or

(D)    Nonresident aliens that, by reason of the laws of their country of residence, can only take partially, as a deduction from income or as a credit against the tax payable in said country on the dividends or benefits derived from a corporation or partnership exempt under this Code, the tax which would be imposed on them in Puerto Rico on such dividends or benefits. The exemption provided in this Section shall apply only to such portion of the income tax which may be imposed in Puerto Rico on dividends or benefits as may not be deductible from the income or creditable against the tax to be paid in such country on such dividends or benefits.

(E)    Any person who wishes to avail himself of the provisions of clauses (C) and (D) above, shall submit to the Secretary of the DEDC a translated, certified or authenticated copy, in Spanish or English, of the laws or regulations in effect of his country of residence, specifically stating the provisions

AAFAF_CONF_0007927

275

of such laws or regulations that apply to his case, with any other information or proof showing that said person qualifies under the clauses (C) and (D) above.

(3)    Real or Personal Property Taxes.- Vessels and property of any other kind, real or personal, used in connection with an eligible business, shall not be subject to municipal or state taxes on real and personal property, during the effective period of the Decree.

(4)    Municipal Taxes.- Eligible Businesses shall be exempt from the payment of municipal license taxes, excise taxes, and other taxes imposed pursuant to any municipal ordinance, during the effective period of the Decree.

(c)    Requirements.- In the evaluation, analysis, consideration, granting, renegotiation, and review of any incentive or benefit granted under this Section, the Secretary of the DEDC shall determine that such exemption is necessary and convenient for the promotion of the economy and welfare of the People of Puerto Rico, because:

(1)    it shall provide greater Ocean Freight Shipping facilities between ports in Puerto Rico and ports in foreign countries; and

(2)    it shall provide such specific services as the Government of Puerto Rico may deem necessary for the promotion of the economy and welfare of the People of Puerto Rico.

Section 2110.03.- Incentives for the Puerto Rico Cruise Ship Industry.

(a)    The main objectives of this incentive for the cruise ship industry are the following:

(1)    to reaffirm and strengthen the importance of Puerto Rico as a regional and world cruise ship home port;

(2)    to increase the number of cruise ships arriving in Puerto Rico;

AAFAF_CONF_0007928

276

(3)    to increase the stay of cruise ship passengers in lodgings throughout all the regions and municipalities of Puerto Rico, as well as on the islands that comprise its archipelago (Vieques, Culebra, and others);

(4)    to increase the number of visits and the volume of passengers in the cruise ships that visit Puerto Rico;

(5)    to promote consumption on the Island by passengers and crew members, including expenses related to the acquisition of supplies and other operating expenses of cruise ships arriving in the Island;

(6)    to generate and increase profits for the different economic segments of Puerto Rico connected directly or indirectly with the cruise ship industry; and

(7)    to offer incentives on equal terms to all cruise lines and establish partnerships with every cruise line so as to maximize the promotion of Puerto Rico as a tourist destination and improve the relationship with the cruise ship industry in general.

(b)    Fund Administration.-

(1)    The DEDC shall prescribe in the Incentives Regulations, all that pertains to the form and manner in which the incentives provided in this Section shall be applied for and granted, in order to ensure a sound administration of public funds.

(2)    The DEDC shall be required to ensure that the funds allocated to the Fund are used in accordance with the regulations it establishes. Eligibility - Cruise ship companies or operators that visit any port in the jurisdiction of Puerto Rico may be eligible for these benefits. Only cruise ship owners and operators, Entities engaged in the sale of travel deals established in Puerto Rico or abroad, and organizations authorized by the DEDC to collect passengers at piers, as the case may be, shall be entitled to apply for these incentives; provided, that the agencies or

AAFAF_CONF_0007929

277

agents thereof in Puerto Rico have authority to apply for, process, and receive such benefits as part of the business relationship with those they represent.

    (c)    Benefits.-

        (1)    Incentive for Cruise Ship Companies:

            (i)    For cruise ships that dock in a port in the jurisdiction of Puerto Rico, four dollars and ninety-five cents ($4.95) shall be deducted from the thirteen dollars and twenty-five cents ($13.25)-tax imposed per passenger as fixed by the head or administrative authorities of the ports of Puerto Rico. This incentive shall apply to the first one hundred forty thousand (140,000) passengers arriving in any port of Puerto Rico in the company's cruise ships within the twelve (12)-month period of the fiscal year, beginning Fiscal Year 2019-2020. Likewise, seven dollars and forty-five cents ($7.45) per passenger shall be deducted when the company has exceeded such number of passengers. If the port tax is less than the thirteen dollars and twenty-five cents ($13.25)-tax, four dollars and ninety-five cents ($4.95) shall be deducted from the tax applicable to said port. If there is any reduction in the official flat tax rate, the incentive herein provided shall be reduced in the same proportion.

        (2)    Home Port Frequent Visit Incentive:

            (i)    The following amounts shall be contributed:

            (A)    One dollar ($1.00) per passenger to cruise ship companies or operators that use any port in the jurisdiction of Puerto Rico as home port.

            (B)    Two dollars ($2.00) per passenger after the twenty-first (21st) visit of the cruise ship company within a fiscal year period. As of the fifty-third (53rd) visit of the cruise ship company within a Fiscal Year period, the cruise ship company shall receive a contribution of three dollars ($3.00) per passenger.

AAFAF_CONF_0007930

HEIN EXHIBIT 84

278

(C)     An additional fifty cents ($0.50)-contribution per passenger, to cruise ship companies or operators that use any port in the jurisdiction of Puerto Rico as home port from Monday through Friday, inclusively.

(D)     In addition to the incentives stated above, any cruise ship that uses any port in the jurisdiction of Puerto Rico as home port, and also visits one or more ports in the jurisdiction of Puerto Rico in the same week, shall receive fifty cents ($0.50) in addition to any of the incentives provided in this clause.

(E)     Any cruise ship that uses any port in the jurisdiction of Puerto Rico as home port, and departs twice a week from the same port shall receive fifty cents ($0.50) in addition to any of the incentives provided in this clause.

(F)     Every home port cruise ship that departs from the Port of San Juan before 4:00 P. M. shall receive an incentive of one dollar and fifty cents ($1.50) per passenger.

(G)     The total contributions established in this Code shall never exceed thirteen dollars and twenty-five cents ($13.25). Any balance in excess of said amount shall not be paid. If there is a reduction or increase in this tax, the maximum contribution shall be proportionally adjusted.

(3)     Cruise Ship Home Port Bilateral Marketing Program:

(i)     A Bilateral Marketing Program between the DEDC and the eligible cruise ship company (hereinafter, the Marketing Program) shall be created for the purpose of placing Puerto Rico as the home port of the Caribbean and incentivize its worldwide demand. The sum of one dollar ($1.00) per passenger shall be contributed to each Marketing Program in cruise ships departing from any port of the jurisdiction of Puerto Rico during the fiscal year period beginning in Fiscal Year 2019-2020; provided, that to qualify for such incentive, the cruise ship company shall contribute a apportion of the amount of the incentive claimed to its Marketing

AAFAF_CONF_0007931

279

Program, as prescribed by the DEDC in the Incentives Regulations, pursuant to this Code.

(4)     Port of Call Time Incentive.

(i)     The sum of one dollar and fifty cents ($1.50) per passenger shall be contributed to ships in transit docking at any port of the jurisdiction of Puerto Rico for at least eight (8) hours and pay the applicable tax to said port during a fiscal year period. This incentive shall require the cruise ship to dock before 11:00 A.M. If it docks after 11:00 A.M., one dollar ($1.00) shall be contributed; provided, that the cruise ship is docked for eight (8) hours in the port.

(ii)     The funds required to grant the incentives provided hereunder shall originate from the Incentives Fund, and shall be administered by the DEDC.

(5)     Supplies and Services Incentive.

(i)     Every cruise ship that docks in any port in the jurisdiction of Puerto Rico shall be eligible to receive an incentive equal to ten percent (10%) of the expenses incurred in the purchase of supplies or hiring shall apply maintenance or repair services for the cruise ship in Puerto Rico, excluding materials, goods, or equipment installed as a result of such service, as specified in the regulations adopted by the DEDC. An additional five-percent (5%) shall be offered for the acquisition of goods manufactured in Puerto Rico as certified by the Puerto Rico Industrial Development Company, or agricultural products of Puerto Rico as certified by the Department of Agriculture.

(ii)     The services set forth herein shall exclude docking services required by the cruise ships in each port of call.

(iii)    Cruise ship owners or operators that comply with these provisions shall receive these benefits after presenting evidence, to the satisfaction of the aforementioned agencies that the purchases were made from companies in

AAFAF_CONF_0007932

HEIN EXHIBIT 84

280

which fifty percent (50%) or more of their Shareholders are Puerto Rico residents or that said companies manufacture fifty percent (50%) or more of the sold goods. In the case of companies engaged in the rendering of services, as defined by the DEDC, the employees rendering such services shall be Puerto Rico residents. Transshipment or transfer of goods directly to cruise ships from ports where ships carrying food or beverages dock shall not constitute an activity incentivized or eligible for this incentive. Vendors and service providers shall also be certified by the DEDC and shall comply with all applicable circular letters, administrative orders, and regulations.

(iv)   The funds for the incentives to be awarded hereunder shall originate from the Incentives Fund.

(d)   The incentives herein provided shall be granted by the DEDC, as the case may be, to the appropriate company, operator, or agent within a period not to exceed thirty (30) days after submitting the invoices, in accordance with the appropriate regulations. Should the DEDC and the Puerto Rico Ports Authority be in disagreement with regard to any invoice item, such disagreement shall not prevent the payment of any other item in the invoice that has not been objected. Likewise, the DEDC shall be responsible for notifying the requesting Entity within said thirty (30)-day period about any objection to any invoice item stating the reasons that support the objection.

(e)   Incentives for Organizations Authorized to Offer Tourist Transportation in Piers.

(1)   Any tour operator authorized by the DEDC to offer tours or tourist transportation in the piers of Puerto Rico where it collects and drops off passengers, shall be entitled to provide its services and contract directly with cruise ship companies and may receive a basic contribution of one dollar ($1.00) per cruise ship passenger that purchases a tour in the cruise ship in which he travels. Tour

AAFAF_CONF_0007933

operators may receive a special contribution of four dollars ($4.00) for each cruise ship passenger that purchases a tour in the cruise ship in which he travels; provided, such tour includes a visit to the municipalities of Vieques and Culebra. The special contribution for tours to Vieques and Culebra shall be in addition to the basic contribution. The DEDC may change the contribution per passenger, as resources allow, the need to incentivize the purchase of these tours, and the market competiveness.

(2)    Any tour operator authorized by the DEDC to offer tourist transportation in the pier area shall be eligible to receive the benefits provided in this paragraph; provided, that it complies with the provisions of this Section and the regulations promulgated thereunder.

(3)    The Secretary of DEDC shall be empowered to prescribe by regulations, the form and manner in which these incentives shall be granted as well as the tour operator certification that applicants must obtain from the DEDC.

(f)    Funding.- The funds to grant incentives under this Sections shall originate from the Economic Incentives Fund and shall be administered by the DEDC.

SUBTITLE C – CASH GRANTS OR TAX CREDITS

Section 3000.01.- General Rules for the Granting of Tax Credits

(a)    The Secretary of the DEDC is hereby authorized to prescribe in the Incentives Regulations the process for the granting of Tax Credits to specific programs and projects in order to maximize their economic impact, the Return on Investment, and yield thereof. Said Tax Credits shall be granted by means of an incentives agreement entered into between the DEDC and the Exempt Business.

(b)    The process prescribed in the Incentives Regulations for the selection of projects shall include, but shall not be limited to, the following criteria:

AAFAF_CONF_0007934

282

(1)     The order of receipt of duly-completed applications that meet all the established requirements;

(2)     The availability of funds and financial commitments already made with Investors evidencing the project's financial feasibility;

(3)     Permits already obtained to start the proposed project or activity evidencing the project's regulatory feasibility;

(4)     The level of Tax Credit requested as a percentage of the corresponding investment or cost.

(5)     The return on investment of the Tax Credit as a primary and essential criteria, as well as the business contribution to the revenues of the Government of Puerto Rico and the multiplier effect on jobs and income of the activity to be incentivized.

(6)     The acquisition of Products Manufactured in Puerto Rico, as defined in this Code.

(c)     Tax Exemption.- Any Tax Credit granted under this Chapter to an Exempt Business shall be exempt from income taxes. In addition, it shall be exempt from municipal taxes, including the tax on volume of business.

Section 3000.02.- Additional Rules for the Award, Sale, and Transfer of Tax Credits.-

(a)     Tax credits granted under paragraph (a) of this Section shall be subject to the following:

1.     Tax credits shall be granted to Exempt Businesses holding a Decree under this Code or under Prior Incentives Laws.

2.     Tax credits may be used, with respect to the Taxable Year in question, against one hundred percent (100%) of the tax liability determined for said year in accordance with Subtitle A of the Puerto Rico Internal Revenue Code, including the alternate basic tax applicable to individuals and the alternate minimum

tax applicable to corporations, as well as any other income tax imposed by this Code with respect to activities that led to the tax credit, or any other income tax imposed by a special law or combination thereof. In addition, tax credits may be used against the tax liability of any return other than past-due returns, including valid extensions, even if it is from a year before the granting of the tax credit.

3.  The Exempt Business shall hold title to the tax credit. In the case of a Condo Hotel, and only for the purposes of the tax credits provided in Section 3010.01 of this Code, the Developer of a Condo Hotel may elect to apply for a tax credit for himself or reserve the tax credit to be claimed by the acquirer of a Condo Hotel unit.

4.  Tax credits may be carried over until fully used. However, the Secretary of the DEDC shall be authorized to limit such credits carryover in the Incentives Regulations.

5.  Tax credits are nonrefundable.

6.  Except for the tax credits provided in Section 3020.01, tax credits or any part thereof issued in accordance with this Code, may be assigned, sold or otherwise transferred, without constituting a taxable event, under the Puerto Rico Internal Revenue Code and the "Municipal License Tax Act," for the Exempt Business that assigns, sells, or transfers such credits or for the person acquiring such credits. Likewise, in the case of tax credits granted under Section 3010.01(a)(1) and 3010.01 (a)(2) of this Code, such credits may be assigned, sold or otherwise transferred solely by an Exempt Business upon the completion of the construction and development of the entire Tourist Project, and upon determining the total amount of the tax credit on tourist investment, through a certification to such effect issued by the Secretary of the DEDC. Any deduction admitted by the transferee of tax credits granted under the Puerto Rico Internal Revenue Code and the "Municipal License Tax Act."

HEIN EXHIBIT 84

AAFAF_CONF_0007936

284

7.      The basis of assets comprising the total investment generated by the tax credits shall be reduced by the amount taken as credit for such investment, but shall never be reduced to less than zero.

(b)      The Secretary of the DEDC is hereby authorized to prescribe in the Incentives Regulations the process for the award of Tax Credits authorized in subsection (a) of this Section, which shall be subject to the same principles established in subsections (a) and (b) of Section 3000.01.

(c)      The Secretary of the DEDC is hereby authorized to regulate the provisions of subsection (b) of this Section in the Incentives Regulations, as well as to impose any additional rules or limitations he deems appropriate with respect to the tax credits authorized in subsection (a) of this Section.

CHAPTER 1 – VISITOR ECONOMY TAX CREDITS

Section 3010.01.- Tax Credit for Eligible Tourist Investment

(a)      Tax Credit for Tourist Investment.- Any Exempt Business under this Code or Prior Incentive Law may apply, subject to the Secretary of the DEDC's approval, for a Tax Credit for Tourist Investment, at the election of the Exempt Business, equal to:

(1)      Thirty percent (30%) of the Eligible Tourist Investment, as defined in this Code, made after the effective date of this Code.

(i)      The Exempt Business may use a portion of the Tax Credit of up to ten percent (10%) of its Eligible Tourist Investment in the year in which the Exempt Business secured the necessary financing for the total construction of the Tourism Project, and

(ii)      the balance of the Tax Credit may be taken in three (3) installments: one third (1/3) of the Tax Credit balance for the year in which the Exempt Business receives its first paying guest, and the remaining balance, in equal portions, in the two subsequent (2) years. The Secretary of the DEDC may require a

AAFAF_CONF_0007937

285

bond to guarantee the recovery of a ten percent (10%) advance if the Exempt Business does not carry out the proposed project.

(2)     Forty (40%) percent of its Eligible Tourist Investment, as defined in this Code, made after the effective date of this Code. The Exempt Business may use its Tax Credit in three (3) installments: one third (1/3) of the Tax Credit commencing on the Eligible Business's second year of operations, and the remaining balance in equal portions in the subsequent two (2) years.

(b)     Maximum Amount of Tax Credit for Tourist Investment. The tax credit for tourist investment for each Tourism Project that shall be available to the Exempt Business may be of up to thirty percent (30%) of the Total Cost of the Tourism Project with respect to the Tax credits granted under subsection (a)(1) of this Section, or forty percent (40%) of the Total Cost of the  Tourism Project with respect to the Tax credits granted under subsection (a)(2) of this Section, as determined by the Secretary of the DEDC.

(c)     Any Eligible Tourist Investment made within a Taxable Year shall qualify for the Tax Credit for Eligible Tourist Investment provided in this Section.

(d)     Adjustment to Basis and Recovery

(1)     The basis of the Asset comprising any Eligible Tourist Investment shall be reduced by the amount of the Tax Credit claimed, but shall never be reduced to less than zero.

(2)     The Exempt Business shall submit an annual report to the Secretary of the DEDC itemizing the total Eligible Tourist Investment in the Tourism Project made as of the date of the annual report. The Secretary of the DEDC shall prescribe in the Incentives Regulations the content of said annual report, including a reconciliation between the Tax Credit received and the total investment made during the year.

AAFAF_CONF_0007938

286

(3)     Any Exempt Business claiming a Tax Credit under this Section shall apply for a certificate issued annually by the DEDC certifying the Eligible Tourist Investment. In the case of Condo Hotels, the operator of an integrated leasing program shall submit an annual report to the Secretary of the DEDC identifying the units that participate in the integrated leasing program. Said report shall state the participating units' program starting dates, as well as the date or dates on which one or more units withdrew from the program. If a unit withdraws from the program before the expiration of the fifteen (15)-year period, the Investor shall owe as income taxes an amount equal to the tax credit for Tourist Investment taken by the investor with respect to said unit, multiplied by a fraction whose denominator shall be fifteen (15), and whose numerator shall be the balance of the fifteen (15)-year period as required by this Code. The amount owed as income taxes shall be paid in two (2) installments starting with the first Taxable Year following the date on which the unit is withdrawn from the integrated leasing program. For the purposes of this paragraph, if a Condo Hotel Investor fails to comply with any requirement set forth in the Grant given to him for such purposes, or if such grant is revoked for any reason, it shall be understood that said Investor no longer devotes the Condo Hotel unit(s) covered under said Grant to an integrated leasing program. In those cases in which a unit is withdrawn from the integrated leasing program to be devoted to any other Tourist Activity that is an exempt business under this Code for a period of not less than the time remaining to complete the fifteen (15)-year period under the integrated leasing program, the recovery of income tax shall not apply to the Investor. If this condition is not met, the subsequent acquirer of the unit shall be liable for any amount to be subsequently recovered as income taxes. Recovery shall not apply to the years during which the unit participated in an integrated leasing program and another Tourist Activity that is an Exempt Business under this Code.

AAFAF_CONF_0007939

287

(4)     Notice of Commencement of Construction Works.- The Exempt Business shall notify the commencement date of the construction work object of the Tax Credit for Tourist Investment, through an affidavit within a period of ninety days from the commencement date of said work.

(5)     Notice of Commencement of Operations.- The Exempt Business shall notify the commencement date of operations, through an affidavit within a period of ninety days from the commencement date of operations.

(e)     The proceeds from the sale of a Tax Credit for Tourist Investment shall be applied in the following order: first, to repay any financing provided by any financial institution or government entity including, but not limited to, the Puerto Rico Tourism Company, its subsidiary, the Hotel Development Corporation, and the Economic Development Bank; second, to pay off other loans, if any, granted to the exempt business to defray the total cost of the project or any other expense or disbursement that is part of the total cost of the project; and third, to make distributions to the Exempt Business Investor.

(f)     The credit for tourist investment may be assigned, sold or otherwise transferred solely by an Exempt Business Investor, unless said credit is pledged to the Government Development Bank, to any other agency of the Government of the Commonwealth of Puerto Rico, or any other lending institution, the credit for tourist investment granted to an investor for purposes of financing the eligible cost of the tourism project, the creditor of the pledge may sell, assign, or otherwise transfer such acquired credits through (i) the assignment of the credit by the Exempt Business as a Source of repayment for said financing or (ii)  the enforcement of the pledge to a third party, if the pledge is enforceable.

CHAPTER 2 – MANUFACTURING TAX CREDITS

Section 3020.01.- Tax Credits for Entities Engaged in Manufacture

(a)     Tax Credit for Purchases of Products Manufactured in Puerto Rico.-

AAFAF_CONF_0007940

288

(1)    If an Exempt Business under this Code or under Prior Incentives Laws purchases Products Manufactured in Puerto Rico, including parts and accessories, or purchases or uses products converted into commercial articles made of recycled materials, or raw material made of  recycled or recovered or refit materials by an Exempt Businesses holding a Decree under paragraph (8) of subsection (a) of Section 2061.01 of this Code or similar provisions in Prior Incentives Laws, it may claim a Tax Credit of up to twenty-five percent (25%) of the purchase of such products made during the Taxable Year. This Tax Credit shall be granted solely for purchases of products manufactured by businesses not related to said Exempt Business.

(2)    The Secretary of the DEDC shall prescribe in the Incentives Regulations the rules for the granting of this Tax Credit.

(3)    Any Exempt Business interested in claiming a Tax Credit under the provisions of this Section, shall request a certificate issued annually by the DEDC certifying the purchases eligible for the Tax Credit.

(4)    Notwithstanding the provisions of subsection (b)(6) of Section 3000.02, tax credits granted under this Section shall be nontransferrable, except in the case of an exempt reorganization. The amount of the tax credit not used by an Exempt Business for a taxable year may be carried forward to subsequent tax years, until fully used. This credit shall not generate a refund.

(5)    The credit provided in this subsection shall not be available to an Exempt Business holding decree under Prior Incentives Laws, and no credit shall be granted under this Section for the taxable year, if said exempt business claims any special deduction or similar credit under said prior incentives law for said taxable year.

CHAPTER 3. – TAX CREDIT FOR INVESTMENT IN RESEARCH
AND DEVELOPMENT

AAFAF_CONF_0007941

HEIN EXHIBIT 84

289

Section 3030.01.- Tax Credit for Science and Technology

(a)      Tax Credit for Investment in Research and Development.

(1)      Any Exempt Business holding a Decree under this Code or under Prior Incentives Laws may claim, subject to the Secretary of the DEDC's approval, a Tax Credit for investment of up to fifty percent (50%) of the Special Eligible Investment made in Puerto Rico within the Taxable Year, after the approval of this Code, subject to the limitations, terms, and conditions prescribed by the Secretary of the DEDC.

(2)      Any Exempt Business interested in claiming a Tax Credit under the provisions of this subsection, shall request a certificate issued annually by the DEDC certifying that the research and development activities carried out in Puerto Rico are eligible for applying for the Tax Credit provided in paragraph (1) of this subsection. If the Secretary of the DEDC decides not to extend the term provided herein, evaluating on a case-by-case basis, takin into account the best economic and social interests of Puerto Rico, the request for said certificate shall be submitted on or before the due date for filing the income tax return for the Taxable Year in which the Eligible Investment was made, as provided in the Puerto Rico Internal Revenue Code, including any extension granted by the Secretary of the Treasury for the filing thereof. The certification shall include the amount of the Special Eligible Investment, which shall be duly supported upon the filing of Agreed Upon Procedures prepared by a Certified Public Accountant with a valid license in Puerto Rico, and the amount of the Tax Credit granted for each Taxable Year. Said certification shall be attached to the income tax return as a requirement for the granting of the claimed credit.

(3)      For the purposes of the Tax Credit provided in this Section, the term "Special Eligible Investment" is defined in Section 1020.01 of this Code.

AAFAF_CONF_0007942

290

(4)    Granting of Tax Credit.- The Tax Credit to be granted may be taken in two (2) or more installments: fifty percent (50%) of the Tax Credit may be taken in the Taxable Year in which the Special Eligible Investment is made and the balance in subsequent years until fully used.

(5)    An amount equal to the Tax Credits received by an Exempt Business for a research and development activity shall be reinvested by the Exempt Business in research and development activities in Puerto Rico.

(6)    Adjustment to Basis – The basis of any assets for which the Tax Credit provided in this subsection is claimed, shall be reduced by the amount of the Tax Credit claimed.

(7)    The Exempt Business shall not apply for this Tax Credit in relation to a portion of the Special Eligible Investment on which it takes or has taken the deduction established in subsection (b) of Sections 2062.02 and 2072.02 of this Code or similar special deduction under Prior Incentives Laws. This Tax Credit shall not generate a refund.

(8)    The Tax Credit provided in this subsection shall not be available to an Exempt Business holding decree under Prior Incentives Laws, and no credit shall be granted under this Section for the taxable year, if the exempt business claims any special deduction or credit under any Prior Incentives Law for said Taxable Year.

CHAPTER 4. –

Section 3040.01.-

Reserved.

CHAPTER 5. – TAX CREDIT FOR CREATIVE INDUSTRIES

Section 3050.01.- Tax Credit for Creative Industries

AAFAF_CONF_0007943

291

(a)     Granting of Tax Credit.- Pursuant to this Section, Grantees engaged in Film Projects may apply for a Tax Credit with respect to Puerto Rico Production Expenditures.

(b)     Subject to the limitations, terms, and conditions set forth in this Section, the Tax Credit shall be available to Grantees at the beginning of the activities covered by the Grant in case of Film Projects, as certified by the Secretary of the DEDC. Once the requirements of this Section are met, the Secretary of the DEDC shall authorize the amount of the Tax Credit approved.

(c)     Amount of Tax Credit.-

(1)     In the case of Film Projects, the Tax Credit available in this Section shall be:

(i)     Up to forty percent (40%) of the amounts certified by an Auditor as disbursed in connection with Puerto Rico Production Expenditures, without including payments made to Foreign Persons; and

(ii)     Up to twenty percent (20%) of the amounts certified by an Auditor as disbursed in connection with Puerto Rico Production Expenditures, consisting of payments made to Foreign Persons; and

(iii)     Up to fifteen percent (15%) of the amounts certified by an Auditor as disbursed in connection with Puerto Rico Production Expenditures, without including payments made to Foreign Persons, in feature films, television series, or documentaries in which a Domestic Producer is in charge of the Film Project and the director, cinematographer, editor, production designer, post-production supervisor, or line producer are Domestic Persons, up to a maximum of four million dollars ($4,000,000) of Tax Credit per Film Project under this item.

(2)     In the case of Film Projects, the Tax Credit approved may be used in two (2) or more installments. Fifty percent (50%) of the Tax Credit may be used in the Taxable Year during which the activities covered by the Decree begin, subject

AAFAF_CONF_0007944

292

to the posting of a Bond acceptable to the Secretary of the DEDC or Auditor's Certification as provided in subsection (d) of this Section, and the balance of said Tax Credit in subsequent years.

(3)     Tax Credits granted under this subsection (c) for payments made to Domestic Persons shall never exceed fifty-five percent (55%) of the total Puerto Rico Production Expenditures, without including payments made to a Foreign Person.

(d)     Bond or Auditor's Certification and Tax Credit Available – In case of Film Projects, up to fifty percent (50%) of the Tax Credit as described in subsection (a) of this Section, shall be available in the Taxable Year in which the Grantee posts a Bond acceptable to the Secretary of the DEDC or the Auditor certifies to the Secretary of the DEDC that fifty percent (50%) or more of the Puerto Rico Production Expenditures have been disbursed, the Exempt Business has commenced the operations covered by the Grant, and the Secretary of the DEDC determines that all other applicable provisions of this Code have been complied with.

(e)     The remaining fifty percent (50%) of the Tax Credit approved shall be available in the Taxable Year in which the Auditor certifies to the Secretary of the DEDC that all Puerto Rico Production Expenditures have been paid.

(f)     The Certification of the Tax Credit described in subsection (d) of this Section shall be issued within thirty (30) days after the receipt of the Auditor's Certification. The thirty (30)-day period shall not be tolled if the Secretary of the DEDC requires additional information. However, if the thirty (30)-day period is tolled and the information required has been furnished, the Secretary of the DEDC shall issue the Certification of the Tax Credit within the remainder of the thirty (30)-day period from the receipt of the Auditor's Certification; provided, that the Secretary of the DEDC has been provided with all the necessary documents to evaluate the case.

AAFAF_CONF_0007945

293

(g)    Tax Exemption –Tax Credits granted under this Section to an Exempt Business shall be exempt from income taxes as provided in the Puerto Rico Internal Revenue Code. In addition, Tax Credits shall be exempt from municipal taxes including the volume of business tax (municipal license tax).

(h)    Tax Credits may be granted multi-annually to a Grantee through competitive bidding, as prescribed by the Secretary of the DEDC in the Incentives Regulations.

(i)    Every Grantee shall pay to the Secretary of the DEDC, by means of internal revenue vouchers from the Department of the Treasury, an amount equal to one percent (1%) of the Puerto Rico Production Expenditures that qualify for such Tax Credit as prescribed by the Secretary of the DEDC in the Incentives Regulations, up to a limit of two hundred fifty thousand dollars ($250,000). Said revenues shall be deposited in the Economic Incentives Fund created by virtue of this Code. The Secretary of the DEDC may use such funds to promote the development of the film industry as determined, or to defray any expense incurred in the promotion or administration of the Film Industry Development Program.

(j)    Film Projects shall not apply for additional Tax Credits or tax credits once a Tax Credit or tax credit is granted, subject to the maximum amount established in the Grant.

SUBTITLE D – SUBSIDIES AND OTHER PROGRAMS

CHAPTER 1- AGRICULTURAL WORKER WAGE SUBSIDY PROGRAM

Section 4010.01.- Establishment of the Agricultural Worker Wage Subsidy Program

(a)    Wage Subsidy.-

(1)    Subject to the restrictions imposed under paragraph (2) of subsection (b) of this Section, a guaranteed wage of at least five dollars and twenty-

AAFAF_CONF_0007946

294

five cents ($5.25) is hereby established, through a subsidy, for all eligible agricultural workers from July 1, 2010, Fiscal Year 2010-2011.

(2)    The wage subsidy herein established shall not alter any existing wage, or any wage to be agreed upon in the future for the various work classifications in the agricultural industry. Any wage increase obtained by Agricultural Workers through a collective bargaining agreement or work contract as of July 1, 1989, shall be granted to the worker over the guaranteed wage level, through the subsidy established herein, without affecting the farmer's right to a refund on account of the wage subsidy. The payment of wage subsidies shall not apply for overtime work as defined in Act No. 379 of May 15, 1948, as amended, known as the "Act to Establish the Work Hours in Puerto Rico."

(b)    Payment Method.-

(1)    The employers of Agricultural Workers shall pay, from their own pocket, the guaranteed wages, through a subsidy, under this Section, or those fixed directly by contractual obligations, legislation, or Decrees, whichever is higher. The Government of Puerto Rico, through the Department of Agriculture, shall prescribe by regulations the wage subsidy to be refunded to employers of Agricultural Workers who comply with the provisions of this Section.

(2)    The Secretary of the DEDC, in consultation with the Secretary of Agriculture, shall prescribe in the Incentives Regulations or through special regulations which may be delegated to the Secretary of Agriculture, the criteria to determine the Agricultural Workers' eligibility to receive the benefits of this Section. Among such criteria, the Secretary may consider the number of hours that the workers shall work weekly in relation to crops or seasonal and non-seasonal agricultural and livestock activities, and the wage subsidies to be paid, taking into account the different manpower needs required to produce each kind of crop based on the degree of mechanization achieved by each business and group of

AAFAF_CONF_0007947

295

entrepreneurs, the wages paid in Puerto Rico for each kind of agricultural activity, and any other factor that, in the judgment of the Secretary, should be taken into consideration. The Secretary of Agriculture shall fix the wage subsidy using as criteria the Production Unit or area of land planted, or any other criteria prescribed by regulations, while taking into consideration the nature of the agricultural business concerned, and its marketing systems, but shall it not be less than the sum of two dollars and seventy-two cents ($2.72) from July 1, 2010, Fiscal Year 2010-2011, per every certified hour of work.

(3)     The Employers of Agricultural Workers shall be required to submit to the Secretary of Agriculture or the official on to whom he delegates, within the period prescribed by regulations, those reports required to compute the data which shall serve as the basis for the wage subsidies that the Government of Puerto Rico is committed to pay, in order to refund the employers of Agricultural Workers for the additional expenses incurred to comply with the provisions of this Section.

(4)     The farmer wage subsidy payments shall be made when the Secretary of Agriculture receives the reports referred to in paragraph (3) of this subsection.

(5)     The funds for the wage subsidy shall originate from the budget item allocated annually as part of the budget of the General Fund.

(c)     Violations.- Any natural or juridical person that violates the provisions of this Section or the regulations thereunder, pertaining to the payment of the wage subsidy, shall refund the monies received in excess of the amount it was entitled to receive in accordance with the regulations.

(d)     Rulemaking Authority.- The Secretary of the DEDC, in conjunction with the Secretary of Agriculture, are hereby empowered to adopt rules and regulations as are necessary to implement the provisions of this Section.

AAFAF_CONF_0007948

296

(e)     The funds for the operation of the program established in this Section shall originate from the Economic Incentives Fund.

Section 4010.02.- Annual Bonus for Agricultural Workers

(a)     It is herein provided for an annual bonus to Agricultural Workers to be paid by the Department of Agriculture in accordance with the amount earmarked therefor in the budget of the General Fund; however, it shall be no less one hundred and sixty-five dollars ($165) or four percent (4%) of the annual income of the Agricultural Worker, whichever amount is greater, up to a maximum of two hundred and thirty-five dollars ($235).

(b)     This bonus shall be paid annually to those Agricultural Workers who perform no less than two hundred (200) hours of agricultural labor in Puerto Rico within a period of twelve (12) months beginning on July 1st of each year and ending on June 30th of the following year.

(c)     Each year, no later than August 31st, the employers of Agricultural Workers shall file with the Department of Agriculture those reports required by the Secretary of Agriculture through regulations in order to establish the eligibility of the Agricultural Workers, and to calculate the amount of the bonus provided under this Section.

(d)     In cases in which he deems it necessary, the Secretary shall provide a form on which the employers of Agricultural Workers shall state the name of each worker, their Social Security Number, the total number of hours worked, and the income earned from their work within each specified period as well as any other information that the Secretary of Agriculture deems pertinent for such purposes.

(e)     Neither the Government of Puerto Rico nor the Department of Agriculture shall be held liable for the payment of claims filed by Agricultural Workers due to the employers of Agricultural Workers' failure to comply with the provisions of this Section or to furnish information.

AAFAF_CONF_0007949

HEIN EXHIBIT 84

297

(f)    In the event the claimant is eligible for the payment of the bonus provided by this Section and he does not receive it due to his employer's noncompliance, the Agricultural Worker shall have the right to demand from such employer or employers the payment of double the amount not received. If the employer were to refuse, the Agricultural Worker may seek the appropriate judicial relief.

(g)    The funds for the operation of the program established in this Section shall originate from the Economic Incentives Fund.

SUBTITLE E – FUNDS FOR THE GRANTING OF BENEFITS

CHAPTER 1 – ECONOMIC DEVELOPMENT FUNDS

Section 5010.01.- Economic Incentives Fund.

(a)    The Economic Incentives Fund is hereby created in order to achieve the economic development purposes of this Code. The Secretary of the Treasury shall create an account under his custody and shall segregate therein the funds provided for in this Sections.

(b)    In the account denominated as Economic Incentives Fund, he shall deposit ten percent (10%) of the amounts collected from the income tax paid by all Exempt Businesses holding a Decree under this Code or prior incentives laws as well as the amounts collected from the taxes withheld on account of royalties related to the exempted operations under this Code or Prior Incentives Laws, and any other appropriation for these purposes.

(c)    The Secretary of the DEDC shall administer the monies of the Economic Incentives Fund and shall have sufficient discretion, as necessary, to use the monies; provided, that they are used to further the purposes of this Code.

(d)    The economic benefits provided in this Code through this Section and Sections 2014.01, 2022.06, 2034.01, 2084.01, 2025.01, 2025.02, 2100.02, 2100.03,

AAFAF_CONF_0007950

298

2110.03, 4010.01, 4010.02, 5010.02, and 5010.03 shall be defrayed by the Economic Incentives Fund.

(e)     The amounts deposited into the Economic Incentives Fund derived from New Businesses shall be allocated annually to the entity denominated as Invest Puerto Rico Inc., in accordance with the provisions of Act No. 13-2017, as amended.

(f)     The Secretary of the DEDC shall prescribe through regulations the criteria for the granting and disbursement of the remainder of the monies in the Economic Incentives Fund, a model to calculate the projected Return on Investment of the incentives program, and the conditions and requirements that an applicant must meet in order to benefit from each one of the incentives provided by the DEDC. Any money appropriated or disbursed from the Economic Incentives Fund shall be approved by the Secretary of the DEDC and established by an incentives contract which shall be registered with the Office of the Comptroller of Puerto Rico.

(g)     Each year, the Secretary of the DEDC shall detail the benefits granted from the Economic Incentives Fund in the Incentives Report.

(h)     The Secretary of the Treasury shall establish the processes and reserves necessary to accumulate and disburse the monies of the Economic Incentives Fund herein established.

(i)     The Economic Incentives Fund created in this Section shall be the successor, for all legal purposes, of the following special Funds:

(1)     the Special Economic Development Fund created under Act No. 73-2008, as amended;

(2)     the Special Fund for the Development of Services for Export and Promotion created under Act No. 20-2012, as amended;

(3)     the Special Fund for the Development of the Film Industry created under Act No. 171-2014, as amended;

AAFAF_CONF_0007951

299

(4)     the Special Fund under the "Puerto Rico Film Industry Economic Incentives Act," for the Betterment of the Local Film Industry created under Act No. 27-2011, as amended;

(5)     the Green Energy Fund of Puerto Rico created under Act No. 83-2010;

(6)     the Funds of the Industrial Incentives Program pursuant to the provisions of Section 21 of Act No. 188 of May 11, 1942, as amended, and Act No. 203-1997, as amended;

(7)     the funds transferred to the Puerto Rico Industrial Development Company for the Rums of Puerto Rico Program established under Act No. 108-2014;

(8)     the Employment Promotion and Economic Activity Fund established under Act No. 73-2014, as amended;

(9)     the Entrepreneurship Fund established under Act No. 73-2014, as amended;

(10)    the Tourism Company Cruise Ship Incentive Fund created under Act No. 113-2011, as amended.

(j)     As of the effective date of this Code, the funds available or owed by the Department of the Treasury to any of the funds mentioned in the previous subsection shall be directly deposited in the Economic Incentives Fund.

(k)     The Secretary of the DEDC is hereby authorized to use up to seven percent (7%) of the appropriation provided for each fiscal year to defray the administrative expenses incurred in the implementation of the provisions of this Section and any expense directly related with the implementation of the Code.

Section 5010.02.- Incentive for the Development of the Puerto Rico Film Industry.

(a)     The primary objective of this incentive is to develop the Puerto Rico Film Industry by providing it with tools to finance, promote, develop, and stimulate

AAFAF_CONF_0007952

the production of Puerto Rican films for movie theaters and additional distribution via television, the internet, alternative sales platforms or digital media, in accordance with the conditions prescribed by the Secretary of the DEDC through regulations, in order to increase the production of Puerto Rican Films and their audience at the local, national, and international level.

(b)     The funds required to grant the incentives provided in this Section shall originate from the Economic Incentives Fund and shall be administered by the Secretary of the DEDC.

(c)     Fund Administration.-

(1)     The DEDC shall prescribe by regulations to such effect, all that pertains to the form and manner in which the incentives provided in this Section shall be applied for and granted in order to ensure the sound administration of public funds.

(2)     It shall be the duty of the DEDC to ensure that the funds allocated to the Economic Incentives Fund are used in accordance with the regulations it adopts.

(d)     Eligibility-

(1)     Only Film Projects in which eighty-percent (80%) of the Production Expenses are for Puerto Rico Residents shall be eligible for the benefits of the Economic Incentives Funds.

(2)     Only feature-length film projects that qualify for Tax Credits pursuant to the provisions of Subtitle C of this Code shall be eligible for the benefits of the Economic Incentives Fund.

(e)     Benefits-

(1)     The benefits granted under this Section shall be structured as capital investments on Film Projects and may not exceed twenty-five percent (25%) of the total cost of a Film Project or one hundred and twenty-five thousand dollars

AAFAF_CONF_0007953

301

($125,000.00), whichever is lower. Such an investment is considered refundable; therefore, a percentage, to be prescribed by regulations, of all of the Film Project's revenues shall be deposited in the Incentives Fund.

(2)     The receipt of benefits under this Section shall not prevent the Film Project from receiving the Tax Credit or other benefits provided under this Code for investments defrayed by private capital, or public or government funds from other jurisdictions that invest in the Film Project's production in Puerto Rico.

Section 5010.03- Incentives for Creative Industries

(a)     The purpose of the Incentives for Creative Industries provided in this Section shall be to promote the ideal conditions to transform Puerto Rico into a world-class center where the artists and producers that are part of the Creative Industries, as such term is defined in Section 1020.09 of this Code, or the eSports and Fantasy Leagues industries, including local artists and producers as well as those who wish to establish themselves in Puerto Rico, have the opportunity to develop, present, and expand their work and their talent. Any Person engaged in presenting and/or producing musical events shall be eligible to apply for the incentive provided under this Section; provided with regard to all other Creative Industries, that those Persons that operate within the Creative Industries Development Districts, designated pursuant to Section 2094.01 of this Code, shall be eligible as well. The Persons that are granted the incentives provided under Sections 3050.01 and/or 5010.02 of this Code shall not be eligible for the incentives provided by this Section.

(b)     The funds required to grant the Incentives for Creative Industries provided under this Section shall originate from the Economic Incentives Fund and shall be administered by the Secretary of the DEDC.

(c)     Administration of Funds-

AAFAF_CONF_0007954

HEIN EXHIBIT 84

302

(1)     The DEDC shall prescribe through Regulations, all that pertains to the form and manner in which the incentives provided in this Section shall be applied for and granted, in order to ensure a sound administration of public funds.

(2)     The DEDC shall be required to ensure that the resources allocated to the Economic Incentives Fund are used in accordance with the regulations it establishes.

SUBTITLE F – ADMINISTRATIVE PROVISIONS

CHAPTER 1 – GENERAL ADMINISTRATIVE PROVISIONS

SUBCHAPTER A – INCENTIVES OFFICE FOR BUSINESSES

IN PUERTO RICO

Section 6011.01- Creation

The Incentives Office for Businesses in Puerto Rico (Incentives Office), within the DEDC, is hereby created to be in charge of handling, evaluating, processing, and overseeing the applications for incentives, the Decrees granted, and the applications for amending such Decrees, among other matters pertaining to the granting of incentives under this Code.

Section 6011.02- Director of the Incentives Office

(a)     The Secretary of the DEDC shall appoint the Director of the Incentives Office who shall direct and administer such Office. The Director of the Incentives Office shall exercise the powers inherent to his position and shall discharge the duties and obligations imposed by this Code.

(b)     The Secretary of the DEDC may delegate to the Director of Incentives any of the powers granted to him under this Code, or pertaining to the matters covered by this Code, except for the execution of Decrees and the granting of Tax Credits.

Section 6011.03- Applications for Incentives

AAFAF_CONF_0007955

303

(a)     The Secretary of the DEDC shall be responsible for processing the applications for incentives pursuant to the procedure established by this Code.

(b)     The Incentives Office is hereby directed to create and administer the Portal and to use it to:

(1)     Facilitate the filing and live electronic transmission of applications for incentives and related documents so as streamline the evaluation of applications and all processes in general;

(2)     Maintain a public database. The information provided by the applicant as well as the formal comments provided by government entities shall be made available in the database of the Incentives Office from the filing date thereof so that both applicants and government entities may have access to the information exchanged through the system. The specific content of the database shall be prescribed by the Secretary of the DEDC in the Incentives Regulations;

(3)     Allow each Eligible Business or Decree Holder to create a profile that includes all the information necessary to process the application or renewal, a history of prior applications, the type of incentive requested, and any other information deemed appropriate by the Secretary of the DEDC through regulations;

(4)     Have an automated and interactive tool to educate the general public on the application process, the information necessary to evaluate such application, the types of incentives available, and on any other information deemed appropriate by the Secretary of the DEDC through regulations.

(5)     Facilitate information sharing between the Incentives Office and the other agencies of the Government of Puerto Rico; and

(6)     Provide data for the periodic revision of the performance indicators of each Decree Holder, incentive, and industry.

HEIN EXHIBIT 84

AAFAF_CONF_0007956

304

(c)     The Secretary of the DEDC may require incentive applicants to file any additional documents deemed necessary to evaluate and justify the granting of the requested incentive.

Section 6011.04- Investigation of Decree Holders

(a)     The Secretary of the DEDC may conduct any investigation he deems necessary on the operations of a Decree Holder to evaluate and ensure that his activities comply with the terms of the Decree. Every Decree Holder shall file any report and submit any other information required by the Secretary of the DEDC, from time to time, with regards to any Decree.

(b)     The Secretary of the DEDC may examine any books, papers, records, or memoranda related to the object of the Decree, and he shall have authority to summon witnesses and take declarations with regard to the alleged facts or otherwise related to the requested Decree, administer oaths to any person declaring before him, and to file a report on the evidence presented, together with his recommendations concerning the case.

Section 6011.05 Administrative Review

(a)     The Secretary of the DEDC may hold public or administrative hearings to comply with the duties and obligations imposed by this Code, such as:

(1)     The Decree review, suspension, or revocation process as provided hereinbelow; and

(2)     Reviewing the fines established in accordance with this Code and Prior Incentives Laws.

Section 6011.06- Transfer of Functions and Powers

(a)     Consistent with the purposes of this Code, the Industrial Tax Exemption Office described in Act No. 73-2008, as amended, and prior laws, shall transfer its powers, duties, assets, and resources to the Incentives Office created under this Code. Both the Secretary of the DEDC and the personnel of the former Industrial

AAFAF_CONF_0007957

305

Tax Exemption Office shall exercise the powers, discharge the duties, and fulfill the obligations imposed by this Code on the Incentives Office.

(b)     Except in the case of the Department of the Treasury, which shall continue to endorse Decrees, all government agencies, instrumentalities, or entities that administered the incentives granting process under the different incentives laws, as applicable, shall transfer the matters provided in this Code to the Secretary of the DEDC and the Incentives Office from the effective date thereof, including all that pertains to:

(1)     The application, evaluation, approval, granting, denial, administration, and revocation of incentives for any Eligible Business covered by this Code;

(2)     The final approval and granting of the benefits derived from the Economic Incentives Fund; and

(3)     The Secretary of the DEDC may discharge any function delegated to him by virtue of this Code, or if not delegated to him explicitly, which is deemed convenient and necessary to administer and achieve the purposes of this Code.

(c)     Any regulation that governs the operations of the Industrial Tax Exemption Office or any regulations pertaining to the granting of the incentives established in this Code that are in effect on the effective date of the transfer herein authorized, and that is not contrary to the purposes of this Code, shall remain in effect until the Incentives Regulations are adopted.

Section 6011.07- Procedures

(a)     Applications Before the Incentives Office

(1)     Any person that has established or proposes to establish an Eligible Business in Puerto Rico, as such term is defined in this Code, may apply for

AAFAF_CONF_0007958

306

the benefits granted under this Code by filing an application with the Incentives Office, through the Portal, as provided in Chapter 2 of Subtitle F of this Code.

(2)     Every official communication pertaining to an application before the Incentives Office shall be delivered through the applicant's Portal account.

(3)     Every Decree issued pursuant to the provisions of this Code shall be subject to full compliance with the provisions of this Code, and the applicable regulations, circular letters or determinations. After a Decree has been issued, the Incentives Office reserves the right to evaluate the operations of the Decree Holder to confirm the information furnished by such Decree Holder, impose fines or penalties in the event of noncompliance, as well as to suspend, revoke, or annul the Decree, as deemed appropriate by the Secretary of the DEDC.

(b)     Evaluation of Applications for Incentives and Granting of Incentives-

(1)     The process to evaluate and approve an application before the Incentives Office shall be carried out pursuant to the provisions of Chapter 2 of Subtitle F of this Code.

Section 6011.08 Annual Incentives Report

(a)     The DEDC shall publish, not later than September 30, an annual report, known as the Incentives Report, on all of the incentives requested and granted by virtue of this Code or any Prior Incentives Laws. The report shall contain at least the following information:

(1)     The name of the Exempt Business and its main stockholders.

(2)     The date on which the Decree was requested and granted.

(2)[sic] The preferential rates granted and the Chapter of this Code or Prior Incentives Law under which the Decree was requested and granted.

(4)     The name of the Municipality where the Exempt Business shall operate and the municipal exemptions granted.

AAFAF_CONF_0007959

307

(5)   The total number of jobs that the Exempt Businesses created or retained in Puerto Rico in comparison with the jobs such businesses committed to maintaining.

(6)   The total amount of the investments in property, plants, and equipment made in Puerto Rico by the Exempt Businesses in comparison with the amount they committed to invest.

(7)   The value of the imports, local purchases, and the exports made by the Exempt Business.

(8)   An estimate of the Return on Investment of each incentive program included in this Code based on a formula that incorporates the following factors:

(i)   The various sources of income to the Treasury generated by the activity;

(ii)   The total tax and economic benefits granted;

(iii)   The direct, indirect, and induced effects based on the official multipliers provided or endorsed by the Planning Board; and

(iv)   Local purchases, including the purchase of Products Manufactured in Puerto Rico;

(v)   An analysis of the benefits attributable to incremental economic activity not redundant to sustainable economic activity by local aggregate demand.

(9)   The Secretary of the DEDC shall make available to the public the report, or a substantial summary thereof, and shall explain in detail the conclusions and recommendations included therein.

(b)   The Secretary of the DEDC shall file a report with the Legislative Assembly on January 31st and on July 31st of each year containing the information

308

listed in subsection (a) of this Section and detailing the tax credits granted under each Chapter of this Code.

CHAPTER 2 – ADMINISTRATIVE PROVISIONS

APPLICABLE TO SUBTITLE B

Section 6020.01- Application for Incentives

(a)     The application for incentives shall include, but shall not be limited to, a detailed description of the services or products of the Exempt Business, the incentive granted, the compliance requirements, the expected benefit, and the legal basis for the incentive granted. The language used in the application for incentives shall be simple and uniform.

(b)     Filing

(1)     The application for incentives shall be filed through the Portal to be established for such purposes, by the Incentives Office, pursuant to the provisions of Section 6011.01 of this Code.

(2)     The Secretary of the DEDC shall prescribe by regulations, administrative order, or any other similar communication the information and documentation required by said application.

(3)     At the time of filing, the Secretary of the DEDC shall charge the appropriate processing fees, which shall be paid electronically through the Portal created for such purposes by the Incentives Office. The Secretary of the DEDC shall prescribe the processing fees through regulations. Provided, that such regulations shall be revised every three (3) years after their approval.

(c)     Evaluation of Applications

(1)     Within five (5) days from the filing of the application for incentives the Incentives Director shall conduct a preliminary review of the evaluation in order to determine if it meets the initial requirements, identify which

AAFAF_CONF_0007961

HEIN EXHIBIT 84

type of incentive apply thereto, and determine whether the application shall follow the ordinary or special process.

(2)    If the filed application for incentive is missing any information or element necessary for its consideration, the applicant shall be notified of such omission within ten (10) days of the receipt thereof and he shall be granted a period of ten (10) days to furnish the information.  If the Incentives Office does not receive the information requested in the notice of omission within the period established in this paragraph, the case shall be closed.

(d)    Ordinary Process

(1)    The ordinary process refers to that in which the applications for incentives are filed, evaluated, and granted using standard formats. The applications for incentives under the ordinary process shall not have minimum investment or job levels, or any condition beyond those established in the Code or those prescribed by the Secretary of the DEDC through regulations and which apply equally to all Decree Holders.

(2)    Applications for Incentives that qualify for the ordinary process shall be processed internally by the Incentives Office and shall not require consultation with or endorsement from other agencies of the Government of Puerto Rico. The Incentives Office shall evaluate the application and make a recommendation to the Secretary of the DEDC within a period not to exceed thirty (30) days. However, the Secretary of the DEDC shall request the endorsement of the Secretary of the Treasury before issuing his final determination and, at his sole discretion and when deemed necessary, he may also consult with other agencies of the Government of Puerto Rico and with the municipalities. The process established in subsection (e) of this Section shall be followed in such cases.

AAFAF_CONF_0007962

310

(3)    The Secretary of the DEDC, in consultation with the Secretary of the Treasury, shall set forth the criteria to qualify for the ordinary process in the Incentives Regulations

(e)    Special Process-

(1)    A special process is that which requires special language not used in the predesigned forms, and which entails a negotiation process between the parties as well as consultation with or the evaluation or recommendation of any other agency of the Government of Puerto Rico for its approval.

(2)    The Decrees granted through the special process may include minimum investment or job levels and other conditions that are not of general applicability for all Decree Holders.

(3)    Under the special process, those agencies of the Government of Puerto Rico or the municipalities that have jurisdiction over the filed applications for incentives shall be identified and be required to make a recommendation on the legal and financial feasibility of such incentive. The process established in subsection (g) of this Section shall be followed in such cases.

(f)    Expedited Process-

(1)    An Expedited Process is provided for any Person that files an application for incentives under this Section, qualifies for the ordinary process, and includes, with their application, a pre-eligibility report prepared by a Certified Professional as such term is defined in paragraph (3) of this subsection.

(2)    Any applicant that meets the requirements established for the Expedited Process shall be granted their Decree within thirty (30) days from the date in which the incentive application process was completed and the appropriate processing fees were paid as prescribed by the Secretary of the DEDC in the Incentives Regulations.

HEIN EXHIBIT 84

AAFAF_CONF_0007963

311

(3)    Certified Professional- For the purposes of this subsection, a Certified Professional is an attorney admitted to the Bar by the Supreme Court of Puerto Rico, or a certified public accountant holding a valid license to practice his profession who, whether for pay or remuneration, prepares a pre-eligibility certificate, an application for incentives or the compliance reports pertaining to the granting of Decrees authorized by the Secretary of the DEDC, and who is registered in the Certified Professionals Registry kept by the DEDC.

(i)    Natural or juridical persons shall not be considered Certified Professionals if they:

(A)    are employees of the DEDC;

(B)    were employees of the DEDC, unless two (2) years have elapsed from the date of separation from service, and in cases in which the Government Ethics Office grants a dispensation to such effects;

(C)    are employees of the Applicant or Decree Holder, which includes the officers or directors thereof; or

(D)    are or have been Qualified Promoters of the same Decree holder.

(4)    The Registry inscription shall remain valid unless withdrawn, suspended, or revoked.

(5)    The Secretary of the DEDC shall establish the processes and adopt rules as are necessary to comply with the provisions of this subsection, which shall be included in the Incentives Regulations or any other regulations to be promulgated by the Secretary of the DEDC.

(g)    Interagency Consideration of Applications-

(1)    Under the special process, the Secretary of the DEDC shall notify the Secretary of the Treasury and, if deemed necessary, any other appropriate Agency or government entity, including the CRIM and the municipalities where the

AAFAF_CONF_0007964

312

applicant business shall operate. The aforementioned notice shall be delivered within a period of five (5) business days counted from the date in which the incentive application process was completed.

(2)     Every notified agency as well as the municipalities and the CRIM shall have a period of twenty (20) business days, counted from the date on which the application for incentives is received, to submit their comments. The comments shall be submitted to the Secretary of the DEDC through the Portal.

(3)     After the period of twenty (20) business days established in paragraph (2) of this subsection has elapsed, the Incentives Office shall complete the evaluation of the application for incentives and make its recommendation to the Secretary of the DEDC within a period not to exceed ten (10) business days.

(4)     The notice established in paragraph (1) of this subsection shall be delivered electronically through the Portal created for such purposes. All communications regarding the application for incentives shall be made by accessing the applicant's account in the Portal established by the Incentives Office for such purposes.

(5)     In the case of decree amendments approved pursuant to this Code, the agencies and municipalities concerned shall have a period of ten (10) business days to submit their comments to the Secretary of the DEDC.

(h)     Incentive Application Determination

(1)     The Secretary of the DEDC shall issue his final determination once the Incentives Director informs him of his final recommendation regarding the application for incentives.

(2)     The Secretary of the DEDC may rely on the comments of those agencies or municipalities consulted and may request additional information from them to supplement the information included at the time the recommendation was made. Applications for incentives shall be approved or denied at the discretion of

AAFAF_CONF_0007965

313

the Secretary of the DEDC subject to the endorsement of the Department of the Treasury.

(3)     Once the Secretary of the DEDC issues his determination regarding the granting of the incentive, he shall publish it in the applicant's Portal account.

(4)     For purposes of his final determination, the Secretary of the DEDC may request additional information from the applicant or require that a meeting be held.

(5)     If approved, the Secretary of the DEDC shall electronically deliver a notice to the applicant including the Decree, which shall be accepted by the applicant under oath in order to take effect.

(6)     If denied, the Secretary of the DEDC shall electronically deliver a notice to the applicant briefly stating the grounds for denial and apprising him of his rights and the processes permitted under this Code to request reconsideration.

(7)     Upon receiving notice of the denial, the applicant may request, within twenty (20) business days from the receipt of the notice, the Secretary of the DEDC to reconsider the application by stating any facts and arguments deemed pertinent, including any consideration in benefit of Puerto Rico that may warrant the reconsideration of his application.

(8)     If the request for reconsideration is allowed, the Secretary of the DEDC shall notify the applicant within twenty (20) business days from the receipt of the request for reconsideration; provided, that if the Secretary of the DEDC fails to act on the request, the reconsideration shall be deemed to be denied and a written notice shall be issued to such effect. Once a request for reconsideration is allowed, the Secretary of the DEDC shall evaluate it and may accept any consideration offered in benefit of Puerto Rico and require and provide any other term or condition as necessary to ensure that the incentives granted inure to the best interest of Puerto

AAFAF_CONF_0007966

314

Rico and the economic development goals. Once the evaluation process of an allowed request for reconsideration concludes, the Secretary of the DEDC shall notify the applicant of his final determination.

(9)    In the event that a reconsideration by the Secretary of the DEDC entails changes to the Decree, the government entities consulted shall be notified of such changes.

(i)    Compliance with the Terms of the Decrees-

(1)    The Secretary of the DEDC may include in the Decrees such clauses, terms, and conditions as he deems necessary to address any noncompliance with the terms and conditions of the Decrees, including the revocation thereof, the reduction of exemptions, and the increase of the flat income tax rate. The Incentives Regulations shall provide the mechanisms to ensure compliance with the terms and conditions of the Decrees as well as the penalties to be imposed in the event of noncompliance.

(2)    The Secretary of the DEDC shall take into account a Decree Holder's compliance with the terms and conditions of a Decree when renegotiating or approving an amendment thereto. If the Decree Holder fails to comply with the terms and conditions of the Decree, the applicable clauses of the Decree shall be enforced in order to cure any noncompliance.

The Secretary of the DEDC shall enforce the appropriate provisions of the Incentives Regulations if the Decree does not include provisions to cure noncompliance.

(j)    All of the decisions and determinations made by the Secretary of the DEDC under this Code concerning the approval of an application for incentives and the contents thereof shall be final and not subject to judicial or administrative review or any other writ. Once a Decree has been granted no agency, public instrumentality,

AAFAF_CONF_0007967

315

political subdivision, or municipality of the Government of Puerto Rico may challenge the legality of such Decree or any of the provisions thereof.

Section 6020.02- Effective Date of a Decree-

(a)    For the purposes of this Code, and except as otherwise provided in Subtitle B of this Code:

(1)    The effective date of a Decree shall be the date of commencement of operations after the Decree has been granted;

(2)    In case of an existing or new Exempt Business, the date of commencement of operations may be the date in which the application for incentives was filed or a later date as determined by the Secretary of the DEDC; and

(3)    The date of commencement of operations may be extended for a period not to exceed five (5) years from the date in which the application for incentives was filed.

Section 6020.03- Decree Exemption, Renegotiation, and Extension Period

(a)    Exemption Period- Every Exempt Business holding a Decree under this Code shall enjoy the benefits for a period of fifteen (15) years; provided, that it complies with the requirements and conditions established in the Decree during such term, or except as otherwise provided in this Code.

(b)    Renegotiation- Every Exempt Business under this Code, or under Prior Incentives Laws, may request to renegotiate its Decree in order to enjoy the benefits granted under this Code. The Incentives Regulations shall establish the requirements and procedure to be followed in order to renegotiate a Decree under this Code.

(c)    Extension- Every Exempt Business under this Code or under Prior Incentives Laws that, throughout its exemption period, has complied with the requirements or conditions established in the Decree and proves to the Secretary of the DEDC that extending its Decree shall serve the best economic and social interests

AAFAF_CONF_0007968

316

of the People Puerto Rico, may request the Secretary to extend its Decree for an additional fifteen (15) years, for a total of thirty (30) years.

Section 6020.04 Conversion of Exempt Businesses Under Prior Incentives Laws

(a)     Any of the following Exempt Businesses under Prior Incentives Laws may request to avail themselves of the provisions of this Code, subject to the limitations established hereunder; provided, that they are compliant with all of the applicable legal provisions. The benefits granted under the converted Decrees shall not be greater than those provided under this Code.

(1)     The Exempt Businesses that, as of the effective date of this Code, have not commenced operations may request to convert their Decrees, at the discretion of the Secretary of the DEDC, for the remainder of the period of time originally granted in such Decree, in which case, if the conversion is approved, its exemption shall be adjusted in accordance with the benefits granted under this Code.

(2)     The Exempt Businesses with Decrees granted on or before the effective date of this Code that were not enjoying the exemption before the aforementioned date may request to convert such Decrees in accordance with the benefits granted under this Code.

(3)     Conversions under this Section must be requested within a period of twelve (12) months from the approval of this Code and shall become effective from the first day of the Taxable Year in which they are requested, but never before the effective date of this Code.

(4)     Upon considering any conversion request under this Section, the Secretary of the DEDC, in consultation with the Secretary of the Treasury and any other agency he deems appropriate, shall establish the terms and conditions he deems necessary and convenient to better serve the interests of Puerto Rico, within the

AAFAF_CONF_0007969

317

limits provided in this Code as well as impose additional requirements as prescribed in the Incentives Regulations.

(5)     The revenues accrued by an Exempt Business up to the effective date of the conversion, and which are distributed after the effective date of the conversion, shall be subject to the tax treatment provided by the law under which they were accrued, or the Internal Revenue Code, whichever is applicable.

(6)     The Exempt Businesses that avail themselves of the provisions of this Section shall pay taxes, in total liquidation, with respect to their Exempt Income, in accordance with the tax treatment provided in each of the laws under which such benefits were accrued.

(7)     All other remaining terms, conditions, and benefits contained in this Code that are not inconsistent with the provisions of this Section shall apply to Exempt Businesses covered by this Section.

Section 6020.05- Denial of Applications

(a)     Denials-

(1)     The Secretary of the DEDC may deny any application if he determines that the granting thereof does not inure to the best economic and social interests of Puerto Rico, after considering the nature of the physical facilities, the number of jobs, the total sum of the payroll and the investment, the location of the project, its environmental impact, available resources, or other factors that, in his judgment, warrant such a determination, as well as the recommendations of the agencies that file tax exemption reports.

(2)     The applicant, upon notice of such denial, may file with the Secretary of the DEDC a request for reconsideration pursuant to the provisions of Section 6020.01(h) of this Code.

(b)     Denial for being Inconsistent with the Public Interest

318

(1)     The Secretary of the DEDC may deny any application if, based on the facts presented for his consideration, he determines that the application is inconsistent with the public interest of Puerto Rico, the applicant is not organized as a permanent bona fide business, or in view of the moral or financial reputation of the persons that constitute the same, the plans and methods of obtaining financing, or any other factor that might indicate that there is a reasonable possibility that the granting of the exemption would be detrimental to the economic and social interests of Puerto Rico.

(2)     The applicant, upon notice of such denial, may file with the Secretary of the DEDC a request for reconsideration pursuant to the provisions of Section 6020.01(h) of this Code.

Section 6020.06- Limitation of Benefits- Production for Export by Manufacturing Businesses

(a)     The Secretary of the DEDC may, from time to time, designate from among the eligible Manufactured Products, those to which the benefits of this Code shall be granted solely for the production for export, if he determines that the following factors exist:

(1)     That the production thereof in Puerto Rico for the local market meets the existing demand and that local production capacity can meet the demand projected for a period of five (5) years; or

(2)     That there is active competition in the production and marketing of that particular product in Puerto Rico. Manufactured products that are different and that require a separate determination are deemed to be those which, although similar in name, appearance and use, differ from one another in quality, size, price or other factors affecting the product's market and, consequently, its demand.

(3)     Whenever the aforementioned conditions cease to exist, the Secretary of the DEDC, upon consultation with the agencies reporting on the

AAFAF_CONF_0007971

319

applications for tax exemption, may cease to impose said limitation, and may also resume such designation whenever said conditions reappear.

(4)     This limitation shall apply to applications for tax exemption that have not been granted as of the effective date of this Code.

Section 6020.07- Exempt Business Transfer

(a)     General Rule.- The transfer of a tax exemption grant, or of the Stocks, property, or other ownership interest of an Exempt Business holding a Decree granted under this Code shall be previously approved by the Secretary of the DEDC . If the transfer is carried out without being previously approved, the exemption thus granted shall be rendered null from the date of the transfer, except in the cases listed in paragraph (2) of this subsection. The foregoing notwithstanding, the Secretary of the DEDC may retroactively approve any transfer carried out without his previous approval when, in his judgment, the circumstances of the case so warrant, taking into consideration the best interests of Puerto Rico and the economic development purposes of this Code.

(b)     Exceptions-

(1)     The following transfers shall be authorized with no need for previous consent:

(i)     The transfer of the assets of a deceased to his estate or the transfer by bequest or inheritance.

(ii)     The transfer under the provisions of this Act.

(iii)     The transfer of Stocks when such a transfer does not result, directly or indirectly, in a change in the ownership or control of an Exempt Business holding a Decree under this Code.

(iv)     The transfer of Stocks of an Entity that owns or operates an Exempt Business holding a Decree under this Code when said transfer takes place

HEIN EXHIBIT 84

AAFAF_CONF_0007972

after the Secretary of the DEDC has determined that any transfers of Stocks shall be allowed without his previous approval.

(v)     The pledge, mortgage, or other surety for the purpose of responding for a *bona fide* debt. Any transfer of control, ownership, or interest by virtue of said contract shall be subject to the process established in Section 6020.01 of this Code.

(vi)     The transfer by operation of law, by a court order, or by a bankruptcy judge to a trustee or fiduciary. Any subsequent transfer to a third party other than the aforementioned debtor or the bankrupt himself, shall be subject to the provisions of the process established in this Section.

(c)     Notice-

(1)     All transfers included in the exceptions of subsection (b) shall be notified to the Secretary of the DEDC within thirty (30) days from the transfer by an Exempt Business holding a decree under this Code, except for those included in paragraph (iii) of subsection (b) which do not turn the holder of ten percent (10%) or more of the capital issued by the corporation into a stockholder, which shall be notified by the Exempt Business to the Secretary of the DEDC prior to the date of the transfer.

Section 6020.08- Nature of the Benefits Granted

(a)     In General- The tax benefits granted under this Code shall be deemed to be a contract between the Decree Holder, its Stockholders, and the Government of Puerto Rico, and said contract shall be the law between the parties. Therefore, all government agencies or instrumentalities, public corporations, and municipalities shall honor and adhere to such contractual obligations in every administrative or judicial forum. Said contract shall be interpreted liberally, and in a manner consistent with the purpose of this Code of promoting the socioeconomic development of Puerto Rico. The Secretary of the DEDC shall have discretion to include, on behalf

321

and in representation of the Government of Puerto Rico, those terms and conditions, decrees and exemptions, that are consistent with the purposes of this Code and which promote the creation of jobs through the socioeconomic development of Puerto Rico, taking into consideration the nature of the application or action requested, as well as the facts and circumstances relative to each case in particular as these may apply.

(b)    Obligation to Comply with the Representations in the Application- All Exempt Businesses holding a Decree granted under this Code shall carry out their exempted operations substantially as represented in their applications, except when such operations have been changed through amendments authorized by the Secretary of the DEDC pursuant to the provisions of this Code at the request of the Decree Holder.

Section 6020.09- Allowable and Mandatory Revocation Procedure

(a)    Insofar as the Secretary of the DEDC has delegated this function, the Incentives Director may suspend the effectiveness and benefits of any Decree for a determined period or he may revoke any permanent Decree in any of the following cases:

(1)    Allowable Suspension and Revocation-

(i)    It shall be understood as an allowable revocation when:

(A)    the Decree Holder fails to comply with any of the obligations imposed by this Code or other applicable laws and the regulations thereunder, or by the terms of the Decree.

(B)    the Decree Holder fails to commence operations within the period fixed for such purposes in the Decree, taking into account the type of activity that is promoted by this Code; or

(C)    the Decree Holder fails to comply with its tax liability under the Puerto Rico Internal Revenue Code and this Code.

(2)    Mandatory Revocation-

HEIN EXHIBIT 84                    AAFAF_CONF_0007974

322

(i)      The Secretary of the DEDC shall retroactively revoke any Decree granted when such Decree has been obtained by means of false or fraudulent representations concerning the nature of the Eligible Business, the nature or scope of the eligible activity, or any other facts or circumstances which in whole or in part motivated the granting of the Decree. In the event of revocation, all of the net income previously reported as Exempt Income, whether distributed or not, shall be recalculated and shall be subject to the taxes imposed under the provisions of the Puerto Rico Internal Revenue Code. Furthermore, the Decree Holder shall be deemed to have filed a false or fraudulent tax return with the intent to evade the payment of taxes and, consequently, shall be subject to the criminal provisions of the Puerto Rico Internal Revenue Code. The taxes owed in such case, as well as any other taxes that were until then exempt and not paid, shall become due and payable from the date such taxes would have become due and payable were it not for the Decree, and shall be assessed and collected by the Secretary of the Treasury, the municipalities, or appropriate agencies pursuant to the provisions of the Internal Revenue Code and other applicable laws.

(b)      In the event of revocation of a Decree granted under this Code, the Decree Holder shall have the opportunity to appear and be heard at a hearing before an employee of the DEDC designated for such purpose, who shall report his conclusions and recommendations to the Secretary of the DEDC.

Section 6020.10- Reports

(a)      Reports Required from Exempt Businesses and their Stockholders:

(1)      Every Exempt Business holding a Decree under this Code, shall file an income tax return annually with the Secretary of the Treasury, regardless of the sum of their gross or net income, separate from any other return which they are otherwise required to file in connection with industry operations covered under the benefits provided for in this Code, and pursuant to the Puerto Rico Internal Revenue

AAFAF_CONF_0007975

323

Code. The Secretary of the Treasury may share with the Secretary of the DEDC the information so received, provided that the confidentiality of said information is protected.

(2)　　Any Stockholder of an Exempt Business holding a Decree under this Code shall file an income tax return annually with the Department of the Treasury pursuant to the provisions of the Internal Revenue Code, insofar as such Stockholder is required to do so under said Internal Revenue Code.

(3)　　The Exempt Business holding a Decree under this Code shall be required to keep a separate accounting in Puerto Rico for its exempt operations, as well as records and files as necessary, in addition to making and submitting the sworn statements and complying with the rules and regulations in effect to duly achieve the purposes of this Code and those which the Secretary of the Treasury may prescribe from time to time in connection with the imposition and collection of all types of taxes.

(4)　　Every Exempt Business holding a Decree under this Code shall annually file electronically with the Incentives Office a compliance report not later than thirty (30) days from the due date prescribed by law for the filing of the corresponding income tax return, including any extensions granted for such a purpose.

(i)　　Said report shall contain an account of data ascertaining compliance with the conditions established in the Decree during the Taxable Year immediately preceding the filing date, in accordance with the nature of the Exempt Business and the eligible activities it carries out, as well as any information or documentation that may be required in the form to be adopted for such purposes, or as required by regulations, circular letter, or administrative order.

(ii)　　This report shall enclose the fees prescribed by Regulations which shall be paid by electronic transfer through the online Portal in

AAFAF_CONF_0007976

324

the form and manner stablished by the Incentives Office for such purposes. The information furnished in this annual report shall be used for statistical purposes and economic studies. Likewise, the Incentives Office shall conduct an audit at least every two (2) years to ascertain compliance with the terms and conditions of the Decree granted under this Code.

(iii)    This report shall be filed electronically through the online Portal established by the Incentives Office for such purposes.

(iv)    The Secretary of the DEDC shall prescribe by regulations, administrative order, or any other communication of a similar nature, the information and documentation required to complete this report.

(b)    The annual reports required by this Code to Exempt Businesses under Section 2021.01 shall enclose evidence of an annual contribution of at least ten thousand dollars ($10,000) of which fifty percent (50%) shall be allocated to nonprofit entities operating in Puerto Rico under Section 1101.01 of the Puerto Rico Internal Revenue Code, not controlled by the same person or their descendants or ascendants, spouses, or partners, and which appear on a list to be published by the Special Joint Committee on Legislative Funds for Community Impact on or before December 31st of every year of the organizations whose work plan addresses the eradication of child poverty. The remaining fifty percent (50%) shall be allocated to any other nonprofit entities operating in Puerto Rico under Section 1101.01 of the Puerto Rico Internal Revenue Code that is not controlled by the same person or their descendants or ascendants, spouses, or partners, and which is not included in the list published by the Special Joint Committee on Legislative Funds for Community Impact. The Exempt Business shall certify to the Incentives Office that the selected nonprofit entity is an entity that renders services directly to the community. The contribution shall be made directly to the nonprofit entity selected under Section 2021.01 by the Exempt Business that made the annual contribution. However, the

AAFAF_CONF_0007977

325

Exemption Office shall submit a detailed report on the nonprofit entities that receive a contribution to the Special Joint Committee on Legislative Funds for Community Impact within thirty (30) days.

(c)    Resident Individual Investors shall submit proof of having acquired by purchase, as sole owner or jointly with his spouse, within two (2) years after obtaining the Decree under the provisions of this Code, the ownership of real property in Puerto Rico, from an owner, whether such owner is a person or company that is completely separate and unrelated to the person holding a Decree under this Code, that shall serve as his primary residence in the jurisdiction of Puerto Rico and he shall attest in the annual Report that he maintains sole and exclusive ownership of real property that serves as principal residence, whether by himself or jointly with his spouse, during the effective period of the Decree.

Upon notice from the concerned agency, the Secretary of the DEDC may impose a ten thousand dollar ($10,000)-administrative fine on any Exempt Business holding a Decree under this Code that fails to file any of the reports required by the Secretary of the Treasury, the Secretary of the DEDC or the Insurance Commissioner or that files such reports after the due date. Filing an incomplete report shall be deemed to be a failure to file said report, if the concerned agency notifies the Exempt Business of any omission on the required report and said Exempt Business does not submit the missing information within fifteen (15) days from the date of such notice, or does not reasonably justify the reason for such missing information.

Section 6020.11- Anti-Abuse Rule

The Secretary of the DEDC and the Secretary of the Treasury are hereby empowered to revoke any Decree, transaction or series of transactions the purpose of which is to circumvent or avoid the requirements or limitations established by this Code. Furthermore, the Secretary of the DEDC and the Secretary of the Treasury are

AAFAF_CONF_0007978

326

hereby empowered to prescribe the scope and limitations of this Section through regulations.

Section 6020.12- Other Provisions Regarding the Compensation System for Work-Related Accidents

The exemptions and tax benefits provided in this Code shall in no way be construed as to include or cover the income taxes payable by virtue of Act No. 45 of April 18, 1985[sic], as amended, known as the "Compensation System for Work-Related Accidents Act."

CHAPTER 3 – ADMINISTRATIVE PROVISIONS APPLICABLE TO SUBTITLE C

Section 6030.01- Tax Credit Application

(a)    Any Exempt Business that meets the requirements established for the granting of Tax Credits may apply to any of the Tax Credits provided in Subtitle C of this Code by filing the appropriate application with the Incentives Office; provided, that the Exempt Business files the Tax Credits application together with the tax credit application with the Secretary of the Treasury for his endorsement or the granting thereof.

(1)    The Tax Credit application required under this subsection (a) shall be filed electronically through the Portal created by the Incentives Office for such purposes. The period for the filing thereof shall be prescribed in the Incentives Regulations.

(2)    If it is necessary to certify any item included in an application, the proponent shall support it by filing, with the Incentives Office, an Agreed Upon Procedures document that has been prepared by a Certified Public Accountant with a valid license in Puerto Rico.

AAFAF_CONF_0007979

327

(3)     The Secretary of the DEDC shall prescribe the information and documentation required for such application in the Incentives Regulations, an administrative order, or any other communication of a similar nature.

(4)     At the time of filing, the Secretary of the DEDC shall collect the appropriate processing fees via electronic transfer through the Portal created by the Incentives Office for such purposes.

(5)     The Secretary of the DEDC shall prescribe the processing fees through regulations. The Regulations shall be revised every three (3) years after their approval.

CHAPTER 4 – ADMINISTRATIVE PROVISIONS APPLICABLE

TO SUBTITLE D

Section 6040.01- Application for Benefits

(a)     The applicant shall submit a proposal to the Secretary of the DEDC signed by the person authorized through a corporate resolution or an Affidavit in the case of individuals. The proposal shall state the Section of Subtitle D under which the benefits are requested and shall describe in detail the project for which the funds shall be used and how said project shall further the purposes of this Code. The applicant shall include with the proposal evidence of how he plans to finance the project and of his financial capacity.

(b)     If it is necessary to certify any item included in the proposal, the proponent shall certify it by filing, with the Incentives Office, an Agreed Upon Procedures prepared by a Certified Public Accountant with a valid license in Puerto Rico.

(c)     The Secretary of the DEDC shall prescribe the information and documentation required for such a proposal in the Incentives Regulations, a circular letter or administrative order,

AAFAF_CONF_0007980

328

(1)     At the time of filing, the Secretary of the DEDC shall collect the appropriate processing fees via electronic transfer through the Portal created by the Incentives Office for such purposes.

(2)     The Secretary of the DEDC shall prescribe the processing fees through regulations. The Regulations shall be revised every three (3) years after their approval.

CHAPTER 5 – ADMINISTRATIVE PROVISIONS APPLICABLE
TO SUBTITLE E

Section 6050.01- Application for Funds

(a)     The applicant shall submit a proposal to the Secretary of the DEDC signed by the person authorized through a corporate resolution or an Affidavit in the case of individuals. The proposal shall state the Section of Subtitle E under which the benefits are requested and shall describe in detail the project for which the funds shall be used and how said project shall further the purposes of this Code. The applicant shall include in the proposal evidence of how he plans to finance the project and of his financial capacity.

(b)     If it is necessary to certify any item included in the proposal, the proponent shall certify it by filing, with the Incentives Office, an Agreed Upon Procedures prepared by a Certified Public Accountant with a valid license in Puerto Rico.

(c)     The Secretary of the DEDC shall prescribe the information and documentation required for such a proposal in the Incentives Regulations, circular letter, or administrative order.

(d)     At the time of filing, the Secretary of the DEDC shall collect the appropriate processing fees via electronic transfer through the Portal created by the Incentives Office for such purposes.

AAFAF_CONF_0007981

329

(e)     The Secretary of the DEDC shall prescribe the processing fees through regulations. The Regulations shall be revised every three (3) years after their approval.

CHAPTER 6 – COMPLEMENTARY AND TRANSITORY PROVISIONS

Section 6060.01- Application of the Puerto Rico Internal Revenue Code

The application of the Puerto Rico Internal Revenue Code shall be supplementary insofar as its provisions are not inconsistent with the provisions of this Code.

Section 6060.02- Regulations under this Code

(a)     The Incentives Regulations shall provide for the implementation of the objectives and purposes of this Code and shall be adopted within six (6) months from the date of approval of this Code. The Secretary of the DEDC may request the Governor to extend the aforementioned period for six (6) additional months.

(b)     Until the Incentives Regulations are adopted, the regulations of the Industrial Tax Exemption Office shall remain in effect and the Secretary may use the Regulations in effect under previous similar laws as guidelines for the granting of the incentives provided by this Code insofar as such Regulations are not inconsistent with this Code. Likewise, the regulations or rules of the Department of the Treasury applicable to the evaluation of the applications for incentives shall remain in effect until they are replaced, amended, or repealed.

(c)     The Secretary of the DEDC, in consultation with the agencies or instrumentalities, as the regulated matter requires, shall adopt such regulations and guidelines and issue circular letters, administrative orders, or other general communications as are necessary to enforce the provisions and achieve the purposes of this Code.

AAFAF_CONF_0007982

HEIN EXHIBIT 84

330

(d)     The Secretary of the DEDC is hereby empowered to delegate functions to other officials as deemed necessary. However, the Secretary of the DEDC may not delegate the execution of tax exemption Decrees or the granting of Tax Credits.

(e)     The Secretary of the DEDC shall have authority to create additional incentives or benefits to promote the economic development of Puerto Rico; provided, that necessary funds are available.

(f)     The Secretary of the DEDC may prescribe the service charges deemed necessary and appropriate for any process related to an incentive under this Code through the Incentives Regulations, administrative order, or circular letter.

(g)     Without prejudice to the powers and authorities of the Secretary of the Treasury pursuant to the Internal Revenue Code, the DEDC shall have sole jurisdiction to examine any controversy that may arise from the application of this Code. For such purposes, Act No. 38-2017, as amended, known as the "Government of Puerto Rico Uniform Administrative Procedure Act," shall apply supplementarily. The DEDC shall consult with the Department of the Treasury those controversies which require its expertise. Likewise, the DEDC may consult with the heads of agency with special expertise on the industry to be examined.

Section 6060.03- Existing Rights and Obligations

a)     The repeal of any law, section, or provision by this Code shall not affect the actions taken or any vested rights thereunder, or any proceeding or civil action initiated prior to such repeal.

b)     All of the rights and obligations acquired through a Decree or Bona Fide Farmer Certificate and/or Bona Fide Farmer Compliance Certificate granted prior to the effective date of this Code shall be honored by the Government of Puerto Rico, its agencies, and municipalities. As for the Decrees granted prior to the effective date of this Code, the provisions of the prior law shall remain in effect as if the repeal has not taken place until a new Decree is granted by this Code.

AAFAF_CONF_0007983

331

Section 6060.04.- Decrees Granted Under Previous Laws-

(a)    The Decrees or other benefits granted under the Industrial or Tax Incentive Laws, as such term is defined in paragraph (41) of Section 1020.01 of this Code, or previous similar laws, may be amended, and/or maintained pursuant to their respective provisions. The applications for new Decrees or other benefits that were filed under such laws and that, as of the effective date of this Code, have not been granted or approved, may be processed under the equivalent provisions of this Code at the request of the applicant.

## CHAPTER 7 – FINAL PROVISIONS

Section 6070.01.- Industrial or Tax Incentive Laws Substituted by this Code

As of January 1, 2020, no decree applications under the laws mentioned in Sections 6070.02 through 6070.21 of this Code shall be accepted.

Section 6070.02.- A new Section 5 is hereby added to Act No. 135 of May 9, 1945, as amended, known as the "Air Carriers Tax Exemption Act," to read as follows:

"Section 5.- Time to Apply

The benefits granted under this Act may be claimed during taxable years beginning before January 1, 2020."

Section 6070.03.- Section 8 of Act No. 7 of March 4, 1955, as amended, known as the "Historic Zones Tax Exemption," is hereby amended to read as follows:

"Section 8.- Effectiveness

This Act shall take effect immediately. The benefits granted under this Act may be claimed during taxable years beginning before January 1, 2020."

Section 6070.04.- Section 6 of Act No. 72 of June 21, 1962, as amended, known as the " Puerto Rico Milk Industry Corporation, Inc. Tax Exemption," is hereby amended to read as follows:

AAFAF_CONF_0007984

HEIN EXHIBIT 84

332

"Section 6.- Effectiveness

This Act shall take effect immediately after its approval. The benefits granted under this Act may be claimed during taxable years beginning before January 1, 2020."

Section 6070.05.- Section 9 of Act No. 126 of June 28, 1966, as amended, known as the "Ocean Freight Shipping Act," is hereby amended to read as follows:

"Section 9.- Effectiveness.-

The provisions of this subchapter shall apply to taxable years beginning after December 31, 1966, and before January 1, 2020. This subchapter shall take effect immediately after its approval."

Section 6070.06.- Section 8 of Act No. 54 of June 21, 1971, as amended, known as the "Commercial Production of Flowers and Ornamental Plants Tax Exemption," is hereby amended to read as follows:

"Section 8.-

This Act shall take effect immediately after its approval, but the provisions thereof shall apply to taxable years beginning after December 31, 1970, and before January 1, 2020."

Section 6070.07.- Section 12 of Act No. 47 of June 26, 1987, as amended, known as the "Public and Private Sector Co-partnership for the New Housing Operation," is hereby amended to read as follows:

"Section 12.- Effectiveness

This Act shall take effect immediately after its approval, except for property tax exemptions which shall take effect from the taxable year beginning January 1, 1988.

The benefits granted under this Act may be claimed during taxable years beginning before January 1, 2020."

333

Section 6070.08.- Section 8 of Act No. 165-1996, as amended, known as the "Rental Housing Program for Low-Income Elderly Persons," is hereby amended to read as follows:

"Section 8.- Effectiveness

This Act shall take effect immediately after its approval, except for property tax exemptions, which shall take effect from January 1, 1997. The benefits granted under this Act may be claimed during taxable years beginning before January 1, 2020."

Section 6070.09.- A new Section 7 is hereby added to Act No. 213-2000, as amended, known as the "Affordable Housing for Persons with Disabilities or the Elderly," to read as follows:

"Section 7.-

The benefits granted under this Act may be claimed during taxable years beginning before January 1, 2020."

Section 6070.10.- Section 2.3 of Act No. 140-2001, as amended, known as the "Tax Credits for Investment in New Construction or Rehabilitation of Rental Housing for Low- or Moderate-Income Families and Tax Credits for Investments in the Acquisition, Construction, or Rehabilitation of Affordable Housing for Rental to the Elderly," is hereby amended to read as follows:

"Section 2.3.- Application for Qualification Certificate; Requirements, Fees.

…

(d)     Time to Apply.- The Executive Director shall not accept applications with respect to, nor grant credits or other tax benefits described in Section 2.2 of this Act after December 31, 2019."

Section 6070.11.- A new Section 23 is hereby added to Act No. 244-2003, as amended, known as the "Act for the Creation of Assisted Living Housing Projects for the Elderly in Puerto Rico," to read as follows:

AAFAF_CONF_0007986

334

"Section 23.-

The benefits granted under Section 15 of this Act may be claimed during taxable years beginning before January 1, 2020."

Section 6070.12.- Section 5 of Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto Rico," is hereby amended to read as follows:

"Section 5.- Credits

(a)     …

(b)     …

(c)     Credit for Investment in Research and Development, Clinical Trials, Toxicological Tests, Infrastructure, Renewable Energy, or Intangible Property.-

(1)     Any tax-exempt business holding a decree under this Act or under prior incentives laws may claim a credit for investment equal to fifty percent (50%) of the special eligible investment made in Puerto Rico after the approval of this Act by said tax-exempt business or by any entity affiliated thereto. Any special eligible investment made before the deadline for filing the income tax return, as provided in the Puerto Rico Internal Revenue Code, including any extension granted by the Secretary of the Treasury for the filing thereof, shall qualify for the tax credit under this paragraph in the taxable year for which the aforementioned return is filed. Said credit may be applied, at the option of the tax-exempt business, against the tax on industrial development income as provided in subsection (a) of Section 3 of this Act or against the income tax applicable under the prior incentives law under which the tax-exempt business was granted the decree, and/or against the operating expenses of the tax-exempt business related to electric power, water, and sewer systems.

Every tax-exempt business claiming a credit under the provisions of this subsection shall apply for a certificate issued annually by the Puerto Rico

HEIN EXHIBIT 84                                    AAFAF_CONF_0007987

335

Industrial Development Company, which certifies that the activities of a research and development project carried out in Puerto Rico are eligible for requesting the tax credit provided in Section 5(c) of this Act. If the Secretary of the DEDC decides not to extend the term provided herein, evaluating on a case-by-case basis, taking into account the best economic and social interests of Puerto Rico, said certificate shall be applied for on or before the deadline for filing the income tax return for the corresponding taxable year in which the eligible investment was made, as provided in the Puerto Rico Internal Revenue Code, including any extension granted by the Secretary of the Treasury for the filing thereof. Said certification shall be attached to the return as requirement to be awarded the credit claimed.

        (2)    …

        …

(d)    …

…

…"

Section 6070.13.- Section 20 of Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto Rico," is hereby amended to read as follows:

"Section 20.- Decrees Granted under Prior Laws.-

No new applications for exemption decrees under Act No. 135-1997, as amended, shall be received after the effective date of this Act. However, the decrees granted thereunder or under similar prior laws may be amended pursuant to their respective provisions. The new applications for decrees filed under said Act which have not been granted before the effective date of this Act may be processed under this Act at the option of the applicant.

No new decree applications under this Act shall be accepted after January 1, 2020."

336

Section 6070.14.- Section 15 of Act No. 74-2010, as amended, known as the "Puerto Rico Tourism Development Act of 2010," is hereby amended to read as follows:

"Section 15.- Incentives under the 'Tourist Development Act of 1993,' as amended and under this Act.

No decrees shall be granted under the 'Tourist Development Act of 1993,' as amended, after July 10, 2010. Any application for benefits under the 'Tourist Development Act of 1993,' as amended, already filed as of the date of approval of this Act, shall be deemed to be filed under this Act, and the applicant shall submit any additional information as necessary to complete an application duly filed under this Act. Applications for new decrees under this Act shall be received until December 31, 2019."

Section 6070.15.- Section 3.6 of Act No. 83-2010, as amended, known as the "Green Energy Incentives Act of Puerto Rico," is hereby amended to read as follows:

"Section 3.6.- Effectiveness.-

This Act shall take effect immediately after its approval. Applications for incentives and exemptions under this Act shall be received until December 31, 2019. The tax impositions under this Act shall remain in effect for the term during which tax exemption grants awarded under this Act are in effect."

Section 6070.16.- Section 19 of Act No. 118-2010, as amended, known as the "Municipal Economic and Tourist Development Incentives Act," is hereby amended to read as follows:

"Section 19.- Effectiveness.- This Act shall take effect immediately after its approval. Applications for new decrees under this Act shall be received until December 31, 2019."

Section 6070.17.- Section 9.7 of Act No. 27-2011, known as the "Puerto Rico Film Industry Economic Incentives Act," is hereby amended to read as follows:

AAFAF_CONF_0007989

337

"Section 9.7.- Effectiveness.-

This Act shall take effect immediately after its approval. Applications for benefits under this Act shall be received by the Secretary of the Department of Economic Development and Commerce until December 31, 2019. However, Grants awarded under this Act may be amended in accordance with the provisions thereof. Taxes imposed and exemptions provided under this Act shall remain in effect during the term in which Grants issued under this Act remain in effect."

Section 6070.18.- Section 20 of Act No. 20-2012, as amended, known as the "Act to Promote the Export of Services," is hereby amended to read as follows:

"Section 20.- Effectiveness Clause.

This Act shall take effect immediately after its approval. Applications for new decrees shall be accepted until December 31, 2019.  The taxes provided for in this Act shall remain in effect during the terms in which the decrees granted hereunder remain in effect."

Section 6070.19.- Section 12 of Act No. 22-2012, as amended, known as the "Act to Promote the Relocation of Individual Investors to Puerto Rico," is hereby amended to read as follows:

"Section 12.- Effectiveness.- This Act shall take effect immediately after its approval. Applications for new decrees under this Act shall be received until December 31, 2019."

Section 6070.20.- Section 17 of Act No. 135-2014, as amended, known as the "Young Entrepreneurs Incentive and Financing Act," is hereby amended to read as follows:

"Section 17.-  Effectiveness

This Act shall take effect immediately after its approval, and shall be effective for taxable years beginning after December 31, 2013, and before January 1, 2020."

AAFAF_CONF_0007990

338

Section 6070.21.- Section 20 of Act No. 14-2017, as amended, known as the "Act to Incentivize the Retention and Return of Medical Professionals," is hereby amended to read as follows:

"Section 20.- Effectiveness

This Act shall take effect sixty (60) days after its approval, except for the provisions of Section 16, which shall take effect immediately. Applications for new decrees under this Act shall be received until June 30, 2019. Subsequent applications shall be considered in accordance with the provisions of the Puerto Rico Incentives Code."

Section 6070.22.- Repeals.-

(a)    It is hereby repealed:

(1)    Section 61.240 of Act No. 77 of June 19, 1957, as amended, known as the 'Puerto Rico Insurance Code';

(2)    Act No. 42 of June 19, 1971, as amended, known as the 'Agricultural Workers Annual Bonus Act';

(3)    Act No. 46 of August 5, 1989, as amended, known as the 'Act to Establish the Wage Subsidy Program for Eligible Farmers';

(4)    Act No. 225-1995, as amended, known as the 'Puerto Rico Agricultural Tax Incentives Act';.

(5)    Act No. 325-2004, as amended, known as the 'Renewable Energy Development Act';

(6)    Act No. 464-2004, as amended, known as the 'JUVEMPLEO Program Act';

(7)    Act No. 26-2008, as amended, known as the 'Agriculture and Food Technology Research and Development Financing Program Act';

(8)    Section 1033.12 of Act No. 1-2011, as amended, known as the 'Internal Revenue Code for a New Puerto Rico';

AAFAF_CONF_0007991

339

(9)     Act No. 159-2011, as amended, known as the 'Act to Provide Tax Incentives for Investments in Solid Waste Reduction, Disposal, and/or Treatment Facilities';

(10)   Act No. 1-2013, as amended, known as the 'Jobs Now Act';

(11)   Act No. 95-2013, as amended, known as the 'Business Incubators Incentives Program';

(12)   Sections 5, 6, and 7 of Act No. 73-2014, as amended, and the remaining Sections are hereby renumbered accordingly;

(13)   Sections 5, 6, and 7 of Act No. 171-2014, as amended, and the remaining Sections are hereby renumbered accordingly;

(14)   Act No. 185-2014, as amended, known as the 'Private Equity Funds Act'; and [sic]

(15)   Sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 of Act No. 187-2015, as amended, known as the 'Interagency Validation Portal for the Granting of Incentives for the Economic Development of Puerto Rico Act'; and the remaining Sections are hereby renumbered accordingly.

(16)   Act No. 21-2019, as amended, known as the 'Puerto Rico Economic Development and Opportunity Zones Act of 2019';

Section 6070.23.- Section 8 of Act No. 74 of June 21, 1956, as amended, known as the "Puerto Rico Employment Security Act," is hereby amended to read as follows:

"Section 8

(a)     …

…

(h)     Special tax.- As of January 1, 1992, every employer, subject to taxation pursuant to the provisions of this Chapter, except for the agencies and instrumentalities of the Government and its political subdivisions, shall pay a special

AAFAF_CONF_0007992

340

tax equal to one percent (1%) of the taxable wages paid by him; provided, that those employers to whom a tax rate higher than four point four percent (4.4%) has been fixed, shall pay the difference between five point four percent (5.4%) and said rate. This special tax shall be deposited in the General Fund of the Government of Puerto Rico.

(i)      …

…"

Section 6070.24.- Section 24 of Act No. 272-2003, as amended, known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," is hereby amended to read as follows:

"Section 24.- Tax.

A.      …

…

F.      …

G.      …"

Section 6070.25.- Subsection (b) of Section 2 of Act No.132-2010, as amended, known as the "Real Property Market Stimulus Act," is hereby amended to read as follows:

"Section 2.- Tax Exemption Applicable to Income Earned on Account of Residential Property Rent.-

(a)      …

(b)      Term of the Exemption.- The tax exemption herein provided shall only apply for a term of up to fifteen (15) taxable years, beginning January 1, 2011, and ending December 31, 2025.

…

…"

AAFAF_CONF_0007993

341

Section 6070.26.- Section 1023.10 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1023.10.- Imposition of Surtax on Gross Income

(a)    …

…

(g)    Definitions.- For purposes of the tax imposed under this Section, the following terms shall have the meaning stated below:

(1)    …

(A)    …

…

(F)    All Taxpayers.- Gross income shall exclude the following items, including when these are part of the distributive share in the gross income determined in accordance with Sections 1071.02, 1114.06, and 1115.04, as the case may be:

(i)    …

(ii)    Reserved.

(iii)    …

(2)    …"

Section 6070.27.- Section 1031.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1031.02.- Exemptions from Gross Income

The following income items shall be exempt from taxation under this Subtitle:

(1)    …

…

(6)    Incentives received by farmers.-

AAFAF_CONF_0007994

342

(A)   …

(B)   These incentives are to be considered as a reduction of the costs or expenses incurred by the farmer, as the case may be. The Secretary of Agriculture and/or the Secretary of the Department of Economic Development and Commerce, as applicable, shall submit an annual report to the Secretary, on or before January 31 of the year following the calendar year in which said incentives were granted, including the following information:

(i)   …

(ii)   …

(7)   …

…

(26)   Reserved.

(27)   Reserved.

(28)   Reserved.

(29)   …

…"

Section 6070.28.- Section 1031.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1031.06. Special Rules for Capital Gains Invested in a Qualified Opportunity Fund.-

(a)   In General.-

(1)   Treatment of Capital Gains.- In the case of gain realized from the sale to or exchange with an unrelated person of a capital asset held by the taxpayer, after November 7, 2018, at the election of the taxpayer -

(A)   …

(B)   …

HEIN EXHIBIT 84

AAFAF_CONF_0007995

343

     (C) …

    (2) …

    (3) …

  (b) …

  (c) …

  (d) …

  (e) …

  (f) Effectiveness.- This Section shall apply to taxable years ending after November 7, 2018."

  Section 6070.29.- Paragraph (5) of Subsection (b) of Section 1033.14 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

  "Section 1033.14.- Net Operating Loss Deduction

  (a) …

  (b) Amount of Carryovers.-

    (1) …

    …

    (5) For rules related to net operating losses carryovers after certain changes of control, for taxable years beginning before January 1, 2019, see Section 1034.04(u).

  (c) …

  …"

  Section 6070.30.- Section 1033.15 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

  "Section 1033.15.- Deductions Applicable to Taxpayers who are Individuals

AAFAF_CONF_0007996

344

(a)    For purposes of this Section, the taxpayer may claim the following items as deductions:

(1)    …

…

(8)    Savings for Education.-

(A)    Deductions Allowed.- In the case of an individual, the cash contribution made by said individual to a My Future account, as provided in Section 2026.01 of the Incentives Code, and/or to an education savings account shall be allowed as deductions, provided that the beneficiary of said account is his child or relative up to the third degree of consanguinity or second degree of affinity, as provided in Section 1081.05 of this Subtitle.

…

…"

Section 6070.31.- Paragraph (11) is hereby added to subsection (u) of Section 1034.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1034.04.- Recognition of Gain or Loss.

(a)    …

…

(u)    Limitation on Net Operating Loss Carry Forwards following Ownership Change.-

(1)    …

…

(11)   The provisions of this subsection (u) shall apply to taxable years beginning before January 1, 2019."

HEIN EXHIBIT 84                              AAFAF_CONF_0007997

345

Section 6070.32.- Subsection (d) of  Section 1040.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1040.02.- General Rule for Accounting Methods

(a)     …

…

(d)     Limitation on Use of Cash Method of Accounting.-

(1)     The provisions of subsection (c) notwithstanding, the use of the cash receipts and disbursements method of accounting shall only be allowable if it meets the following two (2) conditions:

(A)     …

(B)     the business has an average annual gross income (determined on the basis of the last three (3) years of business operations) of one million dollars ($1,000,000) or less, for taxable years beginning before January 1, 2019, and three million dollars ($3,000,000) or less for taxable years beginning after December 31, 2018.

(i)     Provided, that taxpayers who, for their last taxable years beginning before January 1, 2019, use the accrual method and wish, for their first taxable year beginning after December 31, 2018, to avail themselves of the cash receipts and disbursements method, since they qualify under the new average annual gross income, may avail themselves of said method without having to request a determination from the Secretary to change their accounting method. To such effects, the Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the tax effect of the change in accounting method established in this subparagraph.

(2)     …

…"

AAFAF_CONF_0007998

346

Section 6070.33.- Subsection (e) of Section 1040.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1040.05.- Installment Sales

(a)     …

…

(e)     Gain or Loss on Disposition of Installment Obligations.-

    (1)     …

    …

    (5)     The provisions of subsection (e) notwithstanding, in the case of installment obligations among members of an affiliated group or a related party, as defined in Section 1010.05, if the installment obligation ceases to exist as a result of a confusion in law as part of a reorganization between said entities, neither the obligor nor the obligee shall recognize gain or loss, except as provided in this paragraph.

        (A)     The obligee shall compute the gain or loss generated in the cancellation of installment obligations pursuant to paragraph (1)(B) of this subsection. However, any gain or loss generated shall not be recognized until the obligor disposes of the property. For these purposes, a change in control in the obligor as a result of which the obligor and the obligee no longer belong to the same affiliated group or related party shall be considered a disposition of property.

        (B)     The obligor shall not recognize cancellation of indebtedness income. However, the basis of the property acquired through an installment sale shall be reduced, but not below zero (0), by an amount equal to the income not recognized under the provisions of this subparagraph."

Section 6070.34.- Reserved.

AAFAF_CONF_0007999

HEIN EXHIBIT 84

347

Section 6070.35.- A new paragraph (4) is hereby added and current paragraph (4) is amended and renumbered as paragraph (5) of subsection (a) of Section 1061.20 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1061.20.- Obligation to Pay Estimated Tax by Individuals.

(a)     …

(1)     …

(2)     …

(3)     any individual whose gross income originates solely and exclusively from compensation received on account of services rendered on agricultural labor not subject to withholding at the source under said Section 1062.01 of the Code;

(4)     any individual who, in addition to the income established in paragraphs (1), (2), and (3) of this subsection, receives an income from Distributions by reason of a Disaster Declared by the Governor of Puerto Rico, pursuant to Section 1081.01(b)(1)(D) and 1081.01(d)(1)(I); or

(5)     …

(b)     …

…"

Section 6070.36.- Subsection (c) of  Section 1062.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1062.03.- Withholding at Source on Payments for Services Rendered.-

(a)     …

(b)     Special Rules.- The requirement to deduct and withhold provided in subsection (a) of this Section shall not apply to:

AAFAF_CONF_0008000

348

(1)   …

…

(8)   Payments for services to individuals, corporations, and partnerships during the first three (3) years from the beginning of a service rendering activity. This exemption may be enjoyed by the taxpayer under the provisions of paragraph (4) of subsection (g) of this Section.

(9)   …

…

(16)   Payments made by a person engaged in trade or business or in the generation of income in Puerto Rico to another person engaged in trade or business or in the generation of income in Puerto Rico and that is part of a controlled group of corporations or an affiliated group, as defined in Sections 1010.04 and 1010.05 of this Code.

(c)   Responsibility of the Payer.- Except as otherwise provided, any person required to deduct and withhold any taxes under the provisions of this Section, shall be responsible to the Secretary for the payment of such taxes and shall not be responsible to any other person for the amount of any of such payments. Any person who, at the time of filing the income tax return, has failed to remit to the Department of the Treasury the total amount withheld on payments described in subsection (a) of this Section, and has failed to file with the Department of the Treasury the information statements required under subsections (h), (i), and (j) of this Section, shall not claim such payments as operating expenses. Provided, that, individuals under the accrual method or with a fiscal year may claim the deductions even though the amount is not reported in an information statement; provided, that such individuals file together with their return a reconciliation between the expenses claimed and the amount reported in the statement. However, persons under the accrual method or with a fiscal year, shall not be required to file together with their

HEIN EXHIBIT 84

AAFAF_CONF_0008001

349

tax return a reconciliation between the expenses claimed and the amount reported in the statement in order to claim the deduction, even if the amount is not reported in an information statement, when said person files together with his income tax return an audited financial statement in accordance with Section 1061.15(a)(3) or (4) and files the Supplementary Information required under Section 1061.15(b).

(d)   …

…

(g)   Waivers.-

(1)   …

(2)   In the case of entities, as such term is defined in Section 1010.05(c), with a volume of business of one million dollars ($1,000,000) or more that are up to date with their tax liabilities and submit financial statements together with an Auditor's Report subject to the provisions of Section 1061.15, in lieu of the withholding provided in subsection (a), no withholding whatsoever shall be made on account of payments for services rendered by these entities.

(3)   In the case of individuals and entities not included in paragraph (2) of this subsection with a volume of business of one million dollars ($1,000,000) or more, and that are up to date in their tax liabilities and submit financial statements together with an Auditor's Report, subject to the provisions of Section 1061.15, the applicable withholding percentage shall be six percent (6%), in lieu of the withholding provided for in subsection (a).

(4)   …

(5)   In the case of individuals or entities that, for a specific taxable year elect to pay taxes under the optional tax established in Section 1021.06 or 1022.07, and the total gross income based on the income tax return of the previous year does not exceed one hundred thousand dollars ($100,000), they may obtain a partial waiver, thus the withholding provided in subsection (a) of this Section shall

AAFAF_CONF_0008002

350

be six percent (6%) in lieu of the amount provided in subsection (a) of this Section. Every individual who obtains this partial withholding waiver is required to pay taxes under the optional tax provided in Section 1021.06 for the taxable year in which the waiver was requested, provided that during such taxable year the requirements of Section 1021.06 or 1022.07 are met.

(h)    Quarterly Reconciliation Return.- Every person required to deduct and withhold any tax under this Section shall, on or before the last day of the month following the close of each one of the quarters ending on March 31, June 30, September 30, and December 31 of each year, file a return stating in detail the payments made and the tax withheld and deposited during the quarter, and pay the portion thereof that has not been paid or deposited in the form and manner provided in Subtitle F. Said return shall contain such information, and shall be made in the manner prescribed by the Secretary through the regulations adopted for such purposes. The Secretary may require that the quarterly reconciliation return as well as any outstanding balance be filed solely by electronic means. Provided, that the Quarterly Return provided herein shall not contain information about payments to telecommunications services providers, internet access services, cable or satellite television services, advertisements or insurance premiums

(i)    …

…"

Section 6070.37.- Subparagraph (A) is hereby added to paragraph (1) and paragraph (3) is hereby added to subsection (a) of Section 1062.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1062.05.-Requirement of Estimated Income Tax Payment on Distributive Share of a Corporation of Individuals' Income.

AAFAF_CONF_0008003

351

(a)   Requirement to Withhold.- The corporation, or any other persons to whom the obligation to furnish the report described in subsection (b) of Section 1061.07 to shareholders has been delegated, shall determine and remit the amount resulting from paragraph (1) or (2), whichever is greater or, in cases in which the corporation shall avail itself of the provisions of Section 1115.11, paragraph (3) of this subsection minus the amount withheld, in accordance with Sections 1062.02 and 1062.03:

(1)   thirty percent (30%) of the estimated amount of a shareholder's distributive share of a corporation of individuals' income described in Section 1115.04(b)(10) plus the tax percentage applicable to the earnings or profits of the corporation of individuals subject to taxation at a preferential rate, in accordance with the provisions of Subchapter C of Chapter 2 of Subtitle A or any applicable special law;

(A)   Provided, that for taxable years beginning after December 31, 2018, the corporation of individuals shall be exempt from withholding the tax provided in this paragraph, in those cases in which:

(i)   the shareholder has losses or tax credits, including his share in the withholdings made to the corporation of individuals, to satisfy any income tax that his distributive share in the corporation of individuals may generate. To such effects, the shareholder shall submit to the entity an affidavit stating that he estimates in good faith that he has sufficient losses or credits to satisfy any tax liability resulting from his distributive share.

(ii)   The corporation of individuals avails itself of the Optional Computation, pursuant to Section 1115.11.

(2)   the amount resulting from the computation provided in Section 1023.10, by the shareholder's distributive share of gross income for the periods specified in subsection (b) of this Section, or

AAFAF_CONF_0008004

352

(3)    For taxable years beginning after December 31, 2018, the amount of the Optional Computation not covered by the withholding provided in Section 1062.03. Only corporations of individuals whose gross income substantially derives from the rendering of services may make the estimated payment under the provisions of this paragraph (3).

(b)    …

…"

Section 6070.38.- Subsection (a) of  Section 1062.07 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1062.07.- Required Estimated Income Tax Payment Attributable to the Distributive Share of a Partner in a Partnership or of a Member of a Limited Liability Company subject to the Provisions of Chapter 7 of Subtitle A of this Code.-

(a)    Requirement to Withhold. – The partner or member to whom has been delegated the administration of a partnership or limited liability company subject to the provisions of Chapter 7 of this Subtitle, or any other persons to whom have been delegated the duty to deliver the report to the partners as described in subsection (b) of Section 1061.03 or to deliver the report to the direct members of a limited liability company subject to the provisions of Chapter 7 of this Subtitle, the report described in  subsection (b) of Section 1061.04, shall determine and remit the amount resulting from paragraph (1) or (2), whichever is greater or, in cases of partnerships that avail themselves of the provisions of Section 1071.10, paragraph (3) of this subsection minus the amount withheld, in accordance with Sections 1062.02 and 1062.03:

(1)    thirty percent (30%) of the estimated amount of a partner or a member's distributive share of the items described in paragraphs (1) through (3), (10), and (11), as applicable, of subsection (a) of Section 1071.02; plus the applicable tax rate on the income or profits of the partnership or limited liability company

AAFAF_CONF_0008005

353

subject to the provisions of Chapter 7 of this Subtitle, that are subject to taxation at a preferential rate, in accordance with the provisions of Subchapter C of Chapter 2 of Subtitle A or any applicable special law; or

(A)   Provided, that in the event the partners or members are foreign corporations, the partnership or limited liability company may, at the election of said partners or members, withhold the maximum tax rate for corporations, plus an additional ten percent (10%) on the amount equivalent to a dividend, in accordance with Section 1092.02, resulting from their distributive share.

(B)   For taxable years beginning after December 31, 2018, the partnership or limited liability company shall be exempt from determining and remitting  the tax provided in this paragraph, in those cases in which:

(i)   the partner who has losses or tax credits, including his share in the withholdings made to the partnership or limited liability company, to satisfy any income tax that his distributive share in the partnership or limited liability company may generate. For such purposes, the partner shall submit to the entity an affidavit stating that he estimates in good faith that he has sufficient losses or credits to satisfy any tax liability resulting from his distributive share.

(ii)   The partnership or limited liability company avails itself of the Optional Computation, pursuant to Section 1071.10.

(2)   …

(3)   For taxable years beginning after December 31, 2018, the amount of the Optional Computation not covered by the withholding provided in Section 1062.03. Only partnerships whose gross income substantially derives from the rendering of services may make the estimated payment under the provisions of this paragraph (3).

(b)   …

...”

AAFAF_CONF_0008006

354

Section 6070.39.- Subsection (a) of Section 1063.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.01.- Information at Source.-

(a)     Payments of Fixed or Determinable Income of Five Hundred Dollars ($500) or More.- All persons engaged in trade or business in Puerto Rico, including lessees or mortgagors of personal or real property, fiduciaries, and employers who made payments to individuals, trusts, or entities as such term is defined in Section 1010.05(c) for rents, salaries, wages, premiums, annuities, services, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income other than the payments described in Sections 1063.05 or 1063.06 of this Subtitle, of five hundred dollars ($500) or more, or who made interest payments of five hundred dollars ($500) or more to individuals in any taxable year, except tax-exempt interest under this Subtitle, not including interests considered in Section 1031.02(a)(3), (or, in the case that such payments are made by the Government of Puerto Rico or any instrumentality or political subdivision thereof, the officials or employees who have information as to such payments and are required to make returns in regard thereto under the regulations provided hereinafter) shall render, on or before February 28 of the following year, a true and accurate statement to the Secretary, under such regulations and in such form and manner and to such extent as may be prescribed by the Secretary, setting forth the amount of such gains, profits, and income, and the name, address, and account number of the recipient of such payments. Any individual who, at the time of filing his income tax return has failed to file with the Department of the Treasury the information statements required in this subsection, may not claim such payments as operating expenses, in cases in which such payments constitute operating expenses of the payer. However, in the case of individuals under the accrual method or with a fiscal year may claim the

AAFAF_CONF_0008007

355

deduction even though the amount is not reported in an information statement; provided, that such individuals file together with their return a reconciliation between the expenses claimed and the amount reported in the statement. However, individuals under the accrual method or with a fiscal year shall not be required to file together with their tax return a reconciliation between the expenses claimed and the amount reported in the statement in order to claim the deduction even if the amount is not reported in an information statement, when said individual files together with his income tax return an audited financial statement in accordance with Section 1061.15(a)(3) or (4) and files the Supplementary Information required under Section 1061.15(b).

Provided, that in order to deduct the payment for purposes of determining the net income subject to alternate basic tax, in the case of individuals, or alternative minimum tax, in the case of corporations, all payments shall be reported in an information statement, even though the amount to be reported is less than five hundred dollars ($500).

(b)　…

…"

Section 6070.40.- Section 1063.16 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1063.16.- Information Statement on Advertisements, Insurance Premiums, Telecommunications Services, Internet Access, and Cable or Satellite Television.

(a)　For payments received after December 31, 2018, every entity engaged in the rendering of telecommunications services, as such term is defined in Section 4010.01(kk), internet access services, or cable or satellite television services in Puerto Rico or that receives payments for advertisements, or insurance premiums

AAFAF_CONF_0008008

shall be required to submit an annual information statement, as provided in subsection (b) of this Section, to every customer, whether commercial or residential. The original of said statement shall be submitted to the payer, on or before February 28, following the calendar year for which the copy of the statement has been filed with the Secretary.

(b)    Information Statement on Telecommunications Services, Internet Access, and Cable or Satellite Television, advertisements, or insurance premiums. For purposes of this Section, the information statement shall be prepared and filed in the manner prescribed by the Secretary and shall include, but not be limited to, the following information:

(1)    name, address, social security or employer identification number of the person who receives the payments described in subsection (a),

(2)    the amount of the payments received from said person during the calendar year, and

(3)    any other information prescribed by the Secretary through regulations.

(c)    The information statement required in this Section shall be filed electronically with both the payer and the Secretary."

Section 6070.41.- Subsection (c) is hereby amended, and a new subsection (e) is hereby added to Section 1071.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1071.02.- Income and Credits of Partners.-

(a)    …

(b)    …

(c)    Gross Income of a Partner.- In any case where it is necessary to determine the gross income of a partner for purposes of this Subtitle, such gross income shall include his distributive share of the gross income of the partnership.

AAFAF_CONF_0008009

357

(d)     …

(e)     Optional Tax.- The provisions of this Section shall not apply to partners of partnerships that have availed themselves of the Optional Tax of Section 1071.10 for said taxable year."

Section 6070.42.- Section 1071.10 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1071.10.- Optional Tax for Service Rendering Partnerships.

(a)     Partnerships whose source of income substantially derives from the rendering of services, may elect an optional tax, as follows:

| If the net income is: | The tax shall be: |
| --- | --- |
| Not over $100,000 | 6 percent |
| In excess of $100,000 but not over $200,000 | 10 percent |
| In excess of $200,000 but not over $300,000 | 13 percent |
| In excess of $300,000 but not over $400,000 | 15 percent |
| In excess of $400,000 but not over $500,000 | 17 percent |
| In excess of $500,000 | 20 percent |

(b)     The partners of a partnership that avails itself of the provisions of this Section shall not be liable for the payment of the income tax of said partnership for the year of the election, including, the taxes imposed by Section 1021.01, 1021.02, 1022.01, 1022.02, or 1022.03. To such effects, the distributive share received by the partner shall be considered excluded from the gross income, but said distributive share shall be considered for determining the tax basis of the distributive share of the partner in the partnership.

AAFAF_CONF_0008010

358

(c)     The election of the partnership under this Section shall not exempt it from reporting to the partners the result of its operations pursuant to Section 1061.03 or 1061.04 for purposes of determining the basis of their share, in accordance with Section 1071.05

(d)     The partnership may avail itself of the tax provided in subsection (a) of this Section; provided, that the following requirements are met:

(1)     At least eighty percent (80%) of the partnership's gross income in the taxable year for which it elected to pay taxes as provided in subsection (a) of this Section, constitutes income derived from services rendered; and

(2)     At least the total of the resulting optional tax was withheld at the source in accordance with Section 1062.03 or was covered by the estimated payment provided in Section 1062.07.

(e)     Any eligible partnership that elects the optional tax shall determine the tax to be paid by applying the tax rate provided in subsection (a) of this Section to the gross income, without considering exempt income, and shall not claim expenses or deductions, and shall not be subject to the reports required in Section 1061.15 of the Code, if it complies with the provisions therein.

(f)     The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin, the conditions under which a partnership may elect the optional tax provided in this Section.

(g)     The provisions of this Section shall be effective for taxable years beginning after December 31, 2018. Provided, that until the Secretary prescribes the conditions under which a service provider may elect this optional tax, said service provider shall furnish the withholding agent a copy of an affidavit stating the name, address, employer account number, a statement indicating that he estimates in good faith that his gross income for the taxable year shall be equal to or less than one hundred thousand dollars ($100,000), and a statement that the payment received is

AAFAF_CONF_0008011

359

subject to withholding at the source in accordance with the provisions of this Section, in lieu of the withholding provided in Section 1062.03 of this Code."

Section 6070.43.-Subchapter G is hereby added to Chapter 7 of Subtitle A of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

SUBCHAPTER G – REORGANIZATIONS BETWEEN<br>PASS-THROUGH ENTITIES

Section 1077.01.- Election or Conversion to Partnership

(a)     Entities with a special partnership or corporation of individual election.- Partnerships or limited liability companies that have a valid election as special partnership under Section 1114.12, or as a corporation of individuals, under Section 1115.02, may apply for conversion to a partnership under the provisions of this Chapter.

(b)     Under the conversion provided in subsection (a), the partnership shall receive the assets and liabilities with the same tax bases, holding period of the assets, and tax attributes of the special partnership or corporation of individuals, in a tax-exempt transaction. However, the partnership shall be subject to Section 1115.08 under the same terms and conditions to which the special partnership or limited liability company was subject immediately before the conversion.

(c)     A partnership or limited liability company with a special partnership or corporation of individual election that wishes to exercise the option of conversion to a partnership for tax purposes shall apply for said conversion in the form prescribed by the Secretary through a general communication. Said application shall be submitted on or before the deadline for filing the return required in Section 1061.03 of the taxable year for which the conversion is requested, including any extension.

Section 1077.02.- Reorganizations

AAFAF_CONF_0008012

360

(a)     The provisions of Section 1077.01 shall apply to transactions between a partnership and a special partnership or a partnership and a corporation of individuals; provided, that it complies with the reorganization definition provided in Section 1034.04(g) if both entities are corporations. In addition, the provisions of Section 1077.01 shall also apply to a liquidation of a special partnership or corporation of individuals with a subsequent contribution to a new or preexisting partnership.

(b)     Any partnership, special partnership or corporation of individuals interested in having a transaction qualify under the provisions of this Section, shall file a request for administrative determination with the Secretary. The Secretary shall prescribe through a general communication the information to be included in the request for administrative determination.

Section 6070.44.- Subsections (a) and (c) of Section 1082.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended, to read as follows:

"Section 1082.01.- Definition of Real Estate Investment.-

(a)     In General.- For purposes of this Subchapter, the term 'real estate investment trust' means a corporation, a partnership, a trust, or an association that meets the following requirements:

(1)     …

…

(5)     its shares or certificates of beneficial interest are held by not less than twenty (20) persons. Provided, that for purposes of this paragraph, there shall be treated as shareholders of the real estate investment trust:

(A)     the shareholders or holders of certificates of beneficial interest in an exempt investment trust under Section 1112.02;

AAFAF_CONF_0008013

361

(B) the shareholders, partners, members or holders of certificates of beneficial interest in any entity created or organized under the laws of the United Statas of America or of any State of the United States of America and that during the taxable year qualifies as a registered investment company or real estate investment trust under the United States Internal Revenue Code of 1986, as amended; and

(C) the shareholders, partners, members or holders of certificates of beneficial interest in any entity that, by reason of an election or legal or regulatory provision under the United States Internal Revenue Code of 1986, as amended, or a similar provision of a foreign country, is treated as a disregarded entity or partnership, whose income and expenditures are attributed to its members for U. S. or foreign country income tax purposes;

(6) at no time during the last half of its taxable year over fifty percent (50%) of the total value of its issued and outstanding shares are owned (based on the tax assessment rules established by Section 1033.17(b)(2)) by or for not more than five (5) individuals; however, for purposes of this paragraph, the individuals described in subparagraphs (A), (B), and (C) of paragraph (5) of this subsection shall be treated as shareholders of the real estate investment trust;

(7) …

…

(c) Limitations.- A corporation, a company, a partnership, a trust, or an association shall not be considered a real estate investment trust for any taxable year unless:

(1) …

…

(7) For purposes of this Subchapter:

(A) …

AAFAF_CONF_0008014

362

…

(D)   The term 'real property' means land located in Puerto Rico or any improvements thereon used as:

(i)   …

…

(x)   commercial   facilities   and   shopping   centers, including warehouses;

(xi)   …

…

…

…"

Section 6070.45.- Subsection (d) of Section 1082.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended, to read as follows:

"Section 1082.02.- Taxation of Real Estate Investment Trusts and their Beneficiaries.-

(a)   …

…

(d)   Taxation of Stockholders or Beneficiaries of a Real Estate Investment Trust.-

(1)   Residents of Puerto Rico or United States citizens.- Every individual resident of Puerto Rico or United States citizens, and every domestic corporation or partnership, or foreign corporation or partnership engaged in trade or business in Puerto Rico, subject to taxation:

(A)   …

(B)   shall include in its gross income and pay taxes at a tax rate of ten percent (10%), in lieu of any other tax imposed by this subtitle:

AAFAF_CONF_0008015

363

(i)     …

(ii)    in lieu of the amount includible under clause (i), the total of said dividends, plus the proportional share corresponding to the beneficiary of any income taxes and excess benefits paid to the United States, to any state, possession, or any other part of the United States or to any foreign country, by the real estate investment trust with respect to the benefits from which said dividends are considered to be paid. If a stockholder or beneficiary elects to include in the gross income such dividends plus such taxes allocable thereto, said beneficiary shall be entitled to credit the tax imposed with the total amount of said allocable taxes, subject to the limitations set forth in Section 1051.01, except that, when applying said section, the foreign residents of Puerto Rico shall be treated in the same manner as the residents of Puerto Rico who are United States citizens..

(C)    …

(2)    …

(3)    Nonresident alien individuals and foreign corporations and partnerships.-

(A)    Every nonresident alien individual and any foreign corporation or partnership not engaged in trade or business in Puerto Rico subject to taxation shall pay taxes at a rate of ten percent (10%), in lieu of any other tax imposed by this subtitle, on the amount of taxable dividends, as defined in subparagraph (C) of paragraph (4) of this subsection.

(B)    Every real estate investment trust that pays dividends to a stockholder or beneficiary subject to the ten-percent (10%) tax rate imposed by subparagraph (A) of this paragraph shall deduct and withhold, subject to the limitations of Section 1051.01, said tax in accordance with the provisions of Sections 1062.08 and 1062.11, and credit said tax with the proportional share pertaining to said stockholder from the income taxes and benefits paid in excess to the United

AAFAF_CONF_0008016

364

States, to any state, possession, or any other part of the United States or any foreign country, by such a real estate investment trust on or with respect to the benefits from which said dividends are considered to be paid. For purposes of determining the gross amount of the tax that must be deducted and withheld prior to said credit, the dividends paid during the taxable year by the real estate investment trust to the beneficiary shall be considered:

        (i)    …

        (ii)    as including the actual and effective total of all other dividends, plus the proportional share pertaining to the beneficiary of any of the income taxes and benefits paid in excess to the United States, to any state, possession, or to any other part of the United States or to any foreign country, by said real estate investment trust on or with respect to the benefits from which said dividends are considered to be paid.

        (4)    …

        (5)    …

        (6)    When it is shown to the satisfaction of the Secretary, or when the Secretary himself determines that the withholding provided in paragraph (2) or subsection (b) of paragraph (3) shall cause undue hardship for no practical purpose, because the amounts thus withheld shall be refunded to the taxpayers, or because said withholding shall be excessive, the Secretary may, under such rules and regulations he may prescribe, relieve the withholding agent from making such withholding in whole or in part.

        (7)    The Secretary is hereby authorized to prescribe by regulations, circular letter, or any other general information method, under such conditions and to the extent he deems it convenient, the requirements and documentation necessary to establish that a stockholder or beneficiary is an entity not subject to taxation. …"

AAFAF_CONF_0008017

365

Section 6070.46.- Section 1114.16 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended, to read as follows:

"Section 1114.16.- Treatment of a Nonresident Partner's Distributive Share.

The share in the income of a special partnership distributable to a partner that is a nonresident alien or a nonresident foreign corporation or partnership, as reduced, to the amount allowed by paragraph (5) or (6) as applicable, of subsection (e) of Section 1033.02, by the distributive share of said partner in the losses of the special partnership not allowed as a deduction to said partner for previous taxable years under Section 1033.02(e), shall be considered as a distribution made at the end of the taxable year of the special partnership, and shall be governed by the provisions of Sections 1062.08, 1062.10, 1062.11, 1091.01, and 1092.01. However, the amount of the tax withheld under said provisions shall be remitted to the Department not later than the fifteenth (15th) day of the third month following the close of the taxable year of the special partnership, or than the fifteenth (15th) day of the fourth month following said closing, when an extension has been granted, in accordance with the provisions of Section 1061.06(c)(3)."

Section 6070.47.- Section 1115.11 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1115.11.- Optional Tax for Service Rendering Corporations of Individuals.

(a)    Corporations of Individuals whose source of income substantially derives from the rendering of services, may elect an optional tax, as follows:

If the net income is:        The tax shall be:

Not over $100,000        6 percent

In excess of $100,000 but

AAFAF_CONF_0008018

366

| | |
|---|---|
| not over $200,000 | 10 percent |
| In excess of $200,000 but not over $300,000 | 13 percent |
| In excess of $300,000 but not over $400,000 | 15 percent |
| In excess of $400,000 but not over $500,000 | 17 percent |
| In excess of $500,000 | 20 percent |

(b)   The shareholders of a corporation of individuals that avails itself of the provisions of this Section shall not be liable for the payment of the income tax of said corporation of individuals for the year of the election, including, the taxes imposed by Section 1021.01, 1021.02. To such effects, the distributive share received by the partner [sic] shall be considered excluded from the gross income, however, it shall be considered when determining the tax basis of the distributive share of the partner [sic] in the partnership[sic].

(c)   The election of the corporation of individuals under this Section shall not exempt it from reporting to the shareholders the result of its operations pursuant to Section 1061.07 for purposes of determining the basis of their share, in accordance with Section 1115.05.

(d)   The corporation of individuals may avail itself of the tax provided in subsection (a) of this Section; provided, that the following requirements are met:

(1)   At least eighty percent (80%) of the corporation of individuals' gross income for the taxable year in which it elected to file as provided in subsection (a) of this Section, constitutes income derived from services rendered; and

(2)   At least the total of the resulting optional tax was withheld at the source in accordance with Section 1062.03, or was covered by the estimated payment provided in Section 1062.05.

AAFAF_CONF_0008019

HEIN EXHIBIT 84

367

(e)     Any eligible corporation of individuals that elects the optional tax shall determine the tax to be paid by applying the tax rate provided in subsection (a) of this Section to the gross income, without considering exempt income, and shall not claim expenses or deduction and shall not be subject to the reports required in Section 1061.15 of the Code, if it complies with the provisions therein.

(f)     The Secretary shall prescribe by regulations, administrative determination, circular letter or general information bulletin, the conditions under which a corporation of individuals may elect the optional tax provided in this Section.

(g)     The provisions of this Section shall be effective for taxable years beginning after December 31, 2018. Provided, that until the Secretary prescribes the conditions under which a service provider may elect this optional tax, such service provider shall furnish the withholding agent a copy of the affidavit stating the name, address, employer account number, a statement indicating that he estimates in good faith that his gross income for the taxable year shall be equal to or less than one hundred thousand dollars ($100,000) and a statement that the payment received is subject to withholding at the source in accordance with the provisions of this Section, in lieu of the withholding provided in Section 1062.03 of this Code."

Section 6070.48.- Section 4010.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended, to read as follows:

"Section 4010.01.-  General Definitions.-

For purposes of this Subtitle, the following terms, words, and phrases shall have the general meaning expressed below, except when the context clearly indicates otherwise:

(a)     ...

...

AAFAF_CONF_0008020

368

(l)    ...

(ee)   …

…

(ll)    Designated Professional Services.- Means legal services and the following professional services, as regulated by their respective Boards of Examiners attached to the Department of State of Puerto Rico:

    (1)    …

    …

    (10)    Designated professional services, as defined in this subsection, if they are rendered by a nonresident person to a person located in Puerto Rico, regardless of the place where the service has been rendered, provided that said service is directly or indirectly related to the operations and activities carried out in Puerto Rico by said person.

    (11)    Continuing Education Services, rendered by for profit entities, that are certified by any agency of the Government of Puerto Rico, the Government of the United States, the Supreme Court of Puerto Rico, or any nonprofit private organization to be offered to professionals who provide designated professionals services, as described in this subsection.

    (12)    The provisions of this subsection notwithstanding, designated professional services shall not be subject to the tax rate provided in Sections 4210.01(c) and 4210.02(c) of this Code when:

        (A)    …”

    Section 6070.49.- Section 4050.09 of Act No. 1-2011, as amended, known as the “Internal Revenue Code for a New Puerto Rico,” is hereby amended, to read as follows:

    “Section 4050.09.- Creation of the Municipal Improvement Fund.

AAFAF_CONF_0008021

369

(a)   Creation of the Fund.- A "Municipal Improvement Fund" is hereby created under the custody of one or more private financial institutions designated by the Municipal Finance Corporation.

(1)   For periods before July 1, 2014, the Municipal Improvement Fund shall be nourished from a special fund to be created by the Government of Puerto Rico; and

(2)   For periods beginning as of July 1, 2014, the Municipal Improvement Fund shall be nourished in accordance with the provisions, terms, and other conditions set forth in the Municipal Administration Fund Act.

The moneys available in the Municipal Improvement Fund shall be allocated to the municipalities through legislation by the Legislative Assembly of Puerto Rico to be appropriated for capital works and improvement projects in the municipalities, such as:

(1)   Improvements to schools of the public education system belonging to the State or the municipalities.

(2)   Capital works and improvements in low-income communities.

(3)   Capital works and improvements in State or municipal public housing projects.

(4)   Capital works and improvements in recreational and sports facilities.

(5)   Capital works and improvements.

(6)   Housing rehabilitation or construction works for low-income persons, among the capital works and improvement projects.

(7)   Acquisition and maintenance of equipment, furniture, and supplies for schools of the public education system and nonprofit organizations.

(8)   Up to fifteen percent (15%) of the resources of the Municipal Improvement Fund may be allocated to address situations in connection with direct

AAFAF_CONF_0008022

HEIN EXHIBIT 84

370

and essential services provided to the people such as: services aimed to satisfy the needs of the children, youth, and elderly populations, as well as the acquisition and maintenance of equipment, furniture, school supplies, and sports equipment, and direct services provided through nonprofit organizations or programs aimed at improving the quality of life of the residents of disadvantaged communities."

Section 6070.50.- Subsection (a) of Section 6030.25 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended, to read as follows:

"Section 6030.25.- Application of Payments

(a) General Rule.- When a taxpayer makes voluntary payments to the Secretary, and such taxpayer owes taxes, deficiencies, interests, surcharges, or penalties for one or various taxable periods, the Secretary shall apply such payments to the oldest tax debt in the order they became due. If the amounts owed for specific taxable period exceed the amount of the partial payment, the Secretary shall apply said partial payment to the principal, interest, penalty, and surcharge (in said order), until the amount owed for said period is paid in full.

(b) …

(c) …"

Section 6070.51.- Section 6041.11 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended, to read as follows:

"Section 6041.11.- Penalty for Failure to File Certain Information Returns, Reconciliation Statements and Returns, Transaction Reports, Securities Broker or Trader Statements.-

(a) The penalties established in subsection (b) shall apply for failure to file on the prescribed date (taking into account any extensions granted or failure to file

AAFAF_CONF_0008023

371

in the form and manner prescribed by the Secretary, including filing through electronic means when so required:

(1)    …

…

(9)    the information return on cancellation of indebtedness required Section 1063.14,

(10)   the information return on payments received for Advertisements, Insurance Premiums, Telecommunications Services, Internet Access, and Cable or Satellite Television required in Section 1063.16; or

(11)   any other information return required by Subtitle A of this Code, that is not included in paragraphs (1) through (10) of this subsection (a).

(b)    …

(1)    for each return required by Sections 1062.01(n)(2), 1062.08, 1062.11, 1063.01(a), 1063.02, 1063.03, 1063.04, 1063.05(a), 1063.06, 1063.12, 1063.13, 1063.14, and 1063.16, five hundred dollars ($500);

(2)    …

…"

Section 6070.52.- Section 1081.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended, to read as follows:

"Section 1081.05.- Education Savings Account.-

(a)    …

…

(c)    Distribution of the Education Savings Account Assets-

(1)    Taxation of payments or distributions of education savings account.-

AAFAF_CONF_0008024

372

(A)    The tax treatment of the total or partial distributions of an education savings account shall be determined pursuant to the provisions of Section 1081.02(d)(1) of this Subtitle; provided, that any 'qualified distribution' in the case of My Future Accounts shall not be included as gross income and shall be exempt from taxation. For purposes of this Section, the term 'qualified distribution' means any payment or distribution to defray university, technical or vocational education costs, or as initial capital for the account beneficiary's own business, as defined in the regulations promulgated in accordance with Section 2026.01 of the Incentives Code.

…

…"

Section 6070.53.- Section 115 of Act No. 187-2015, as amended, known as the "Interagency Validation Portal for the Granting of Incentives for the Economic Development of Puerto Rico Act," is hereby amended and renumbered as Section 102, to read as follows:

"Section 102.- Term for Certifying-Issuing Agencies and Grantor-Recipient Agencies to meet the requirements of the Certificate of Compliance.

The provisions of this Act notwithstanding, every agency, entity, or instrumentality of the Government of Puerto Rico, municipality, or public corporation that is considered a Certifying-Issuing Agency or a Grantor-Recipient Agency shall be exempt from compliance with Sections 1 through 99 of this Act indefinitely, in all that pertains to the Certificate of Compliance."

Section 6070.54.- Declaration of Public Policy Applicable to Opportunity Zones.

(a)    It shall be the Public Policy of the Government of Puerto Rico:

(1)    To transform Puerto Rico into an investment destination for Opportunity Zone Funds that invest in Priority Projects within opportunity zones.

AAFAF_CONF_0008025

HEIN EXHIBIT 84

373

(2)     To create the environment for a continuous generation of local and foreign capital to be invested in Priority Projects within opportunity zones.

(3)     To establish the tax, legal, and regulatory framework that incentivizes, streamlines, and promotes investments in Priority Projects within opportunity zones.

Section 6070.55.- Definitions Applicable to Opportunity Zones.

(a)     For purposes of this Chapter, the following terms and phrases shall have the meaning stated below:

(1)     "Eligible Activity" - means a Priority Project within Opportunity Zones.

(2)     "Chief Financial Officer" - means the chief officer of public finances created by virtue of Executive Order OE-2013-007.

(3)     "Chief Investment Officer" - means the chief officer of investments created by virtue of Executive Order OE-2018-035.

(4)     "Internal Revenue Code" - means Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," or any successor law.

(5)     "U.S. Internal Revenue Code" - means the United States Internal Revenue Code of 1986, Pub. Law 99-514, 68A Stat. 3, as amended, or any future law that substitutes it.

(6)     "Commissioner" - means the Commissioner of Financial Institutions created by virtue of Act No. 4 of October 11, 1985, as amended.

(7)     "Committee" - means the "Priority Projects within Opportunity Zones Committee," attached to the Office of the Governor, vested with the powers provided in this Chapter, and constituted by the Chief Financial Officer, who shall be its chair, the Chief Investment Officer, the Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority, the Executive Director of the Puerto Rico Public-Private Partnership Authority, the Secretary of the Department

HEIN EXHIBIT 84

AAFAF_CONF_0008026

of Economic Development and Commerce, one member appointed by the Senate of Puerto Rico, and one member appointed by the House of Representatives of Puerto Rico, or the representatives thereof designated from time to time, who shall have the same rights and obligations of the officials they represent, including attending meetings by such means and/or technology as authorized and, therefore, used by the Committee to hold said meetings. At the request of the Committee Chair, the Governor may appoint other members to the Committee to address specific applications, according to the nature of the applicant business. The Committee shall adopt rules, procedures, and regulations as are necessary for purposes of the functions assigned in this Chapter, without being subject to the provisions of Act No. 38-2017, known as the "Government of Puerto Rico Uniform Administrative Procedure Act." Provided, that five (5) of the seven (7) members or a majority of Committee members shall constitute a quorum at the meetings of said Committee. However, a quorum shall be constituted only if one representative of the Legislative Bodies participates at the meetings and it is thus certified, unless there are unexcused absences from two (2) or more consecutive meetings, in which case, a quorum shall be certified with the other five (5) members present.

(8)    "Decree" - means the decree issued in accordance with Section 6070.60 of this Code, whereby the approval of a duly filed application and the conditions imposed thereon are notified.

(9)    "Credit for Eligible Investment" - means the credits provided in subsection (i) of 6070.56 of this Code.

(10)    "Director" - means the Director of the Industrial Tax Exemption Office.

(11)    "Distribution of Opportunity Zone Net Income" - means any distribution of dividends or gains of an exempt business or a distribution in

AAFAF_CONF_0008027

375

liquidation of an exempt business of the earnings and profits from the opportunity zone net income.

(12) "Disregarded Entity" - means an entity treated as a disregarded entity for purposes of the U.S. Internal Revenue Code.

(13) "Fund" - means an entity that meets the following requirements:

(A) not later than the date of commencement of operations pursuant to subsection (e) of Section 6070.59 of this Code and during the designation period established in Section 1400Z-1(f) of the U.S. Internal Revenue Code, the entity is an "Opportunity Zone Fund" pursuant to Section 1400Z-2(d)(1) of the U.S. Internal Revenue Code.

(B) during the period beginning the day after the expiration of the designation established in Section 1400Z-1(f) of the U.S. Internal Revenue Code, and ending the day the decree expires, the entity would otherwise qualify as an "Opportunity Zone Fund" pursuant to Section 1400Z-2(d)(1) of the U.S. Internal Revenue Code, if such designation were still in effect.

(14) "Governor" - means the Governor of Puerto Rico.

(15) "Opportunity Zone Net Income" - means the net income of an exempt business generated from an eligible activity, as determined under the Internal Revenue Code.

(16) "Eligible Investment" - means the amount in cash that has been contributed to:

(A) a Fund that is an exempt business in exchange for stocks issued by the Fund (if the Fund is a corporation) or in exchange for interest in the Fund (if the Fund is a partnership, a limited liability company, or a joint partnership or venture);

(B) a Fund in exchange for stocks issued by the Fund (if the Fund is a corporation) or in exchange for interest in the Fund (if the Fund is a

HEIN EXHIBIT 84                                      AAFAF_CONF_0008028

partnership, a limited liability company, or a joint partnership or venture) and the Fund invests said contributions in the capital of a corporation that is an exempt business or a partnership that is an exempt business in exchange for stocks issued by the corporation or in exchange for interest in a partnership (if the partnership is a limited liability company, or a joint partnership or venture) and said investment by the Fund complies with Section 1400Z-2(d)(2) of the U.S. Internal Revenue Code; or

(C)   a corporation that is an exempt business in exchange for stocks issued by the corporation, or a limited liability company, or a joint partnership or venture that is an exempt business in exchange for interest in a limited liability company, or a joint partnership or venture insofar as a Fund invests in such corporation or limited liability company, or joint partnership or venture and said investment by the Fund complies with Section 1400Z-2(d)(2) of the U.S. Internal Revenue Code.

(17)   "Investor" - means any natural or juridical person that makes an eligible investment, as defined in paragraph (16) of this Section.

(18)   "Municipal License Tax Act" - means Act No. 113 of July 10, 1974, as amended.

(19)   "Business" - means a corporation, a partnership, a limited liability company, or a joint partnership or venture.

(20)   "Eligible Business" - means a business that meets the following requirements:

(A)   all the business activities are carried out in a qualified zone;

(B)   the activity carried out by the business is not eligible for a tax exemption decree under Prior Incentives Laws, such as: Act No. 20-2012, as amended, known as the "Act to Promote the Export of Services," Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto

AAFAF_CONF_0008029

377

Rico," Act No. 74-2010, as amended, known as the "Puerto Rico Tourism Development Act of 2010," Act No. 83-2010, as amended, known as the "Green Energy Incentives Act of Puerto Rico," Act No. 27-2011, as amended, known as the "Puerto Rico Film Industry Economic Incentives Act," or any successor or similar law to any of the above described laws;

(C)   the business is conducted by the Fund or any entity in which the Fund invests under Section 1400Z-2(d)(2) of the U.S. Internal Revenue Code;

(D)   the activity carried out by the business is a Priority Project within an opportunity zone.

(21)   "Exempt Business" - means an eligible business holding a tax exemption decree under this Chapter.

(22)   "Tax Exemption Office" - means the Industrial Tax Exemption Office.

(23)   "Priority Project within Opportunity Zones" - means a trade or business or other income-producing activity that shall contribute to the diversification, recovery, or social and economic transformation of the qualified zone's community.

(24)   "Eligible Residential Priority Project" means a Priority Project within opportunity zones that has an important housing component.

(25)   "Secretary" - means the Secretary of the Department of the Treasury of Puerto Rico.

(26)   "Secretary of Economic Development" - means the Secretary of the Department of Economic Development and Commerce.

(27)   "Qualified Zone" - means an area of Puerto Rico that has been designated as an opportunity zone under Section 1400Z-1(b)(3) of the U.S. Internal Revenue Code, as demarcated in the map maintained by the U.S. Department of

378

Treasury, and designated as a qualified zone by the Committee through regulations, circular letter, administrative determination, or general information bulletin.

(b)    Definitions of other terms.- Except as otherwise provided, all other terms applicable to Opportunity Zones used in this Chapter shall have the same meaning stated in the Internal Revenue Code and the regulations thereunder.

Section 6070.56.- Income Tax Applicable to Opportunity Zones.

(a)    Opportunity zone net income.- In lieu of any other tax imposed by the Internal Revenue Code, an exempt business shall be subject to a flat eighteen point five percent (18.5%) income tax rate on its opportunity zone net income.

(b)    Treatment of disregarded entities and partnerships.-

(1)    For purposes of the Internal Revenue Code, if an exempt business is a disregarded entity, it shall be treated in the same manner it is treated under the U.S. Internal Revenue Code, and the provisions of Chapter 7 of Subtitle A of the Internal Revenue Code shall not apply thereto.

(2)    If a Fund or an exempt business is an entity that would otherwise be subject to the provisions of Chapter 7 of Subtitle A of the Internal Revenue Code, the Fund or exempt business shall be treated as a corporation for purposes of Subtitle A of the Internal Revenue Code.

(3)    The Secretary shall publish the returns, forms, and statements that shall be filed by the Fund or exempt business covered by this subsection, and shall issue any necessary regulations, administrative determination, circular letter, or general information bulletin for purposes of this subsection.

(c)    Rentals or Royalties and License Fees.-, The provisions of the Internal Revenue Code notwithstanding, in the case of payments made by an exempt business to corporations, partnerships, or nonresident individuals not engaged in trade or business in Puerto Rico for the use or the privilege of using in Puerto Rico intangible property relating to the operation declared to be exempt under this Chapter, and

AAFAF_CONF_0008031

379

provided, that said payments are considered from sources within Puerto Rico, the following rules shall be observed:

(1)    Tax on Corporations, Foreign Partnerships, or Nonresident Individuals Not Engaged in Trade or Business in Puerto Rico: Imposition of Tax.- An eighteen point five percent (18.5%) tax shall be imposed, collected, and paid for each taxable year, in lieu of the tax imposed by Sections 1091.01 and 1092.02 of the Internal Revenue Code, on the amount of said payments received or deemed received by nonresident alien individuals, or any foreign corporation or partnership not engaged in trade or business in Puerto Rico, derived exclusively from sources within Puerto Rico.

(2)    Withholding at the Source and Deposit of Tax.- Any exempt business required to make payments to nonresident individuals for the use in Puerto Rico of intangible property relating to an exempt operation under this Chapter shall deduct and withhold at the source a tax equal to that imposed under paragraph (1) of this subsection, and deposit such withholding pursuant to the rules set forth in Sections 1062.08 and 1062.11 of the Internal Revenue Code, as applicable.

(d)    Deduction and Net Operating Loss Carryover.-

(1)    Deduction for Current Loss Incurred in Activities Not Covered by an Exemption Decree.- If an exempt business incurs in net operating losses other than operations declared exempt under this Internal Revenue Code, said losses may be used only against income not covered by an exemption decree and shall be governed by the provisions of the Internal Revenue Code.

(2)    Deduction for Ongoing Loss Incurred in the Operation of an Exempt Business.- If an exempt business incurs net losses in operations declared exempt under this Chapter, said loss may be deducted from its opportunity zone net income that incurred the loss or from its opportunity zone net income from operations covered by other exemption decrees under this Chapter.

HEIN EXHIBIT 84

AAFAF_CONF_0008032

380

(3)    Deduction for Loss Carried Over from Previous Years.- A deduction for losses carried over from previous years shall be granted as provided below:

(A)    The excess over losses deductible under paragraph (2) of this subsection may be carried over against the opportunity zone net income of subsequent taxable years. Losses shall be carried over in the order they were incurred.

(B)    Any net loss incurred in a year in which an election under subsection (b) of Section 6070.59 of this Code is in effect may be carried over by the exempt business only against the opportunity zone net income, under the decree under which an election under subsection (b) of Section 6070.59 of this Code was made. Losses shall be carried over in the order they were incurred.

(C)    Once the exemption period for income tax purposes has expired, net losses incurred in an exempt operation under this Chapter, as well as any excess of the deduction allowed under subparagraph (B) of this paragraph that the exempt business is carrying over as of the expiration date of said period, may be deducted from any taxable income in Puerto Rico, subject to the limitations provided in Subtitle A of the Internal Revenue Code. Said losses shall be deemed as incurred in the last taxable year in which the exempt business holding a decree under this Chapter enjoyed the income tax exemption under the decree.

(D)    The amount of the net operating loss to be carried over shall be calculated pursuant to the provisions of Section 1033.14 of the Internal Revenue Code.

(e)    Distributions of dividends or profits.-

(1)    Exemption.- The stockholders or partners of a corporation or partnership that is an exempt business shall not be subject to the payment of income taxes on distributions of dividends or profits from the earnings and profits generated

AAFAF_CONF_0008033

from the opportunity zone net income of said exempt business. Subsequent distributions of earnings and profits from opportunity zone net income made by any corporation or partnership shall also be exempt from all taxation. Provided, that the provisions of Section 1062.13 of the Internal Revenue Code pertaining to the tax on deemed dividends, and Section 1092.02 of the Internal Revenue Code pertaining to the tax on dividend-equivalent amount shall not apply to the exempt business.

(2)     Attribution of Exempt Distributions.- The distribution of dividends or profits made by an exempt business, even after its tax exemption decree has expired, shall be deemed to have been made from the earnings and profits generated from its opportunity zone net income if, on the date of the distribution, it does not exceed the undistributed balance of said earnings and profits, unless said exempt business, when preparing the information statement, chooses to distribute the dividend or profit, totally or partially derived from other earnings or profits. The amount, the year of accrual, and the nature of the distribution of earnings and profits from opportunity zone net income thus made, shall be as designated by said exempt business through notice delivered together with the payment thereof to its stockholders or partners and to the Secretary of the Treasury, through an information statement not later than February 28 following the year of the distribution.

(3)     Other Exemptions.- The distributions of dividends or profits from earnings and profits generated from the opportunity zone net income of an exempt business shall not be subject to the following income taxes:

(A)     The alternative minimum tax of Section 1022.03 of the Internal Revenue Code;

(B)     The surtax on corporations and partnerships of Section 1022.05 of the Internal Revenue Code; and

(C)     The alternate basic tax on individuals of Section 1021.02 of the Internal Revenue Code, or any similar successor law.

HEIN EXHIBIT 84

AAFAF_CONF_0008034

382

(f)    Sale or Exchange of Assets.- No gains or losses shall be recognized by an exempt business in the sale or exchange of assets made during its exemption period if the exempt business invests an amount equal to the amount realized in the sale or exchange pursuant to the requirements of Section 1400Z-2(d)(1) of the U.S. Internal Revenue Code. If the sale or exchange occurs after the expiration of a designation under Section 1400Z-1(f) of the U.S. Internal Revenue Code, the requirements of Section 1400Z-2 (d)(1) of the U.S. Internal Revenue Code shall continue to apply for purposes of this subsection.

(g)    Exempt Exchanges.- The exchanges of assets which do not result in taxable events for being exempt reorganizations shall be treated in accordance with the provisions of the Internal Revenue Code in effect on the date of the exchange.

(h)    Exemption for Individuals, Estates, Corporations, Partnerships, Limited Liability Companies, and Trusts with Respect to Interest Paid or Credited on Bonds, Notes, or Other Obligations of Certain Exempt Businesses.-

(1)    Exemption.- Any individual, estate, corporation, partnership, limited liability company, or trust shall be exempt from any tax imposed under the Internal Revenue Code and any license tax imposed under the Municipal License Tax Act on interest income earned from bonds, notes, or other obligations of an exempt business for the development, construction, or rehabilitation or improvements of an exempt business under this Chapter; provided, that the funds shall be entirely used in the development, construction, or rehabilitation or improvements of an exempt business and/or for the payment of existing debts of said exempt business, insofar as the funds from these existing debts have been originally used in the development, construction, or rehabilitation or improvements of the exempt business. The expenses incurred by any person making an investment as described herein shall not be subject to the provisions of Sections 1033.17(a)(5),

HEIN EXHIBIT 84

AAFAF_CONF_0008035

383

1033.17(a)(11), and 1033.17(f) of the Internal Revenue Code with respect to such investment and the income derived therefrom.

       (2)    Direct Relation.- The proceeds of bonds, notes, or other obligations must be remitted directly to an exempt business.

    (i)    Credits.-

       (1)    Investment Credit.- Subject to the provisions of paragraph (3) of this subsection, every investor shall be entitled to an investment credit equal to the eligible percentage of such investor's eligible investment made after the effective date of this Chapter, taken in four (4) installments: twenty-five percent (25%) of said credit in the year in which the exempt business finished the total construction of the Priority Project or, if the Priority Project does not require construction, upon the eligible business commencement of operations (as determined in Section 6070.59 of this Code), whichever is later, and twenty-five percent (25%) of the credit balance in the next three (3) years. Provided, that if the Eligible Investment is made after finishing the construction of a Priority Project within Opportunity Zones or that the exempt business has commenced operations, the credit shall be taken in the following four (4) installments: twenty-five percent (25%) of said credit in the year in which a significant expansion has been made in the real property constructed or in the exempt business, as the case may be, and as such term is defined by the Secretary of Economic Development through any regulations, administrative determination, circular letter, or general information bulletin as necessary for purposes of this paragraph, and twenty-five percent (25%) of the credit balance in the next three (3) years. If the Fund fails to carry out the Priority Project, the credit herein provided shall not be granted. Every eligible investment made during the investor's taxable year shall qualify for the tax credit under this subsection for said taxable year; provided, that all the requirements of this subsection are met. Said investment credit may be applied against any determined tax liability of the investor,

AAFAF_CONF_0008036

384

in accordance with Subtitle A of the Internal Revenue Code, including the alternative minimum tax under Section 1022.03; or alternate basic tax under Section 1021.02 of the Internal Revenue Code; or against any other tax imposed by Prior Incentives Laws, such as: Act No. 20-2012, as amended, known as the "Act to Promote the Export of Services"; Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto Rico"; Act No. 74-2010, as amended, known as the "Puerto Rico Tourism Development Act of 2010"; Act No. 83-2010, as amended, known as the "Green Energy Incentives Act of Puerto Rico"; and under Act No. 273-2012, as amended, known as the "International Financial Center Regulatory Act"; Act No. 399-2004, as amended, known as the "International Insurers and Reinsurers Act of Puerto Rico"; or any other successor or similar law to the aforementioned.

(2)    Credit Carry Over.- Any unused investment credit in a taxable year may be carried over to subsequent taxable years until depleted.

(3)    Maximum Credit Amount.-

(A)    Investment Credit.- The maximum amount of the investment credit to be available for each Fund and exempt business in which the Fund invests shall not exceed twenty-five percent (25%) of the sum of the following items:

(i)    The money contributed by investors in exchange for stocks or interest in a Fund, which is contributed by the Fund to the exempt business in exchange for stocks or interest in the exempt business, plus

(ii)    The money contributed by investors to the exempt business, when such exempt business is conducted directly by the Fund, in exchange for the stocks or interest in the exempt business.

(B)    Ownership and Distribution of Credits.- The maximum amount of the investment credit available shall be distributed among investors in the

HEIN EXHIBIT 84

AAFAF_CONF_0008037

385

proportion they wish. The Fund shall notify the credit distribution to the Director, the Secretary, the stockholders and partners thereof and the stockholders and partners of the exempt business on or before the deadline provided in the Internal Revenue Code to file the income tax return for the first taxable year of the exempt business, without considering extensions. The elected distribution shall be irrevocable and binding on the Fund, the exempt business, and the investors.

(4) Adjustment of Basis and Recovery of Credit.- The basis of any eligible investment shall be reduced by the amount taken as investment credit under this subsection, but never below zero. The basis of any eligible investment subject to the reduction under this paragraph, shall be the basis, as determined considering any election made under Section 1031.06 of the Internal Revenue Code with respect to said investment. If the investment credit taken by investors exceeds the investment credit computed by the Director, based on the total investment made by the investor in the Fund or the exempt business, said excess shall be considered income tax owed by investors to be paid in two installments beginning in the taxable year in which the aforementioned excess was found and notified, and the balance shall be paid the following year. The Director shall notify the excess credit taken by investors to the Secretary.

(5) Reports and Penalty under Section 1400Z-2(d)(1) of the U.S. Internal Revenue Code.- Exempt businesses shall submit an annual report to the Director and the Secretary itemizing the total investment made in the exempt business as of the date of said annual report, showing fulfillment of the requirements of Section 1400Z-2(d)(1) of the U.S. Internal Revenue Code, and if the Fund is subject to the penalty of Section 1400Z-2(f)(1) of said Code. In the event a Fund is subject to the penalty of Section 1400Z-2(f)(1) of the U.S. Internal Revenue Code, the Fund shall pay to the Secretary, as a penalty, an amount equal to the penalty imposed to the Fund under Section 1400Z-2(f)(1) of the U.S. Internal Revenue Code

AAFAF_CONF_0008038

386

and shall be payable with the income tax return corresponding to the taxable year in which the penalty was imposed. In the case that a Fund is not subject to the penalty of Section 1400Z-2(f)(1) of the U.S. Internal Revenue Code due to the expiration of the designation under Section 1400Z-1(f) of the U.S. Internal Revenue Code, the Fund shall pay to the Secretary, as a penalty, an amount equal to the penalty that would otherwise be imposed on the Fund under Section 1400Z-2(f)(1) of the U.S. Internal Revenue Code, if such designation is still in effect, and shall be payable with the income tax return corresponding to the taxable year in which the penalty would otherwise be imposed.

    (6)    Assignment of Credit.-

    (A)    Investment Credit.-

    (i)    After the date of the notice of the investment credit distribution provided in paragraph (3) of this subsection, the investment credit provided in this Section may be assigned, sold, or otherwise conveyed, in whole or in part, by an investor to any other person.

    (ii)    In the case of the investment credit, the basis of the eligible investment shall be reduced by the value of the assigned investment credit, but never below zero (0). The basis of an eligible investment that shall be subject to the reduction under this clause, shall be the basis, as determined considering any election made under Section 1031.06 of the Internal Revenue Code with respect to said investment.

    (B)    The money or value of the property received in exchange for the investment credit shall be exempt from taxation under the Internal Revenue Code, up to an amount equal to the amount of the assigned investment credit.

    (C)    The investment credit may be assigned, sold, or otherwise conveyed solely by an Investor, except in the following cases:

HEIN EXHIBIT 84

AAFAF_CONF_0008039

387

(i)     An Investor may assign, sell, or otherwise convey an investment credit through a broker-dealer registered as such with the Commissioner under the circumstances to be prescribed by the Secretary of Economic Development through regulations.

(ii)     An underwriter who, acting as such, acquired an investment credit at the closing, to fund a Priority Project within Opportunity Zones, may assign, sell, or otherwise convey any investment credit to a third party. Said assignment, sale, or conveyance shall be treated as made by an Investor if it meets the requirements prescribed by the Secretary of Economic Development through regulations.

(D)     The excess amount of an investment credit under this subsection (i) over the money or value of the property paid by the acquirer of said credit shall not be considered as gross income for purposes of the Internal Revenue Code.

(E)     The following individuals shall notify the Secretary of the assignment, sale, or conveyance through an affidavit to such effect which shall be enclosed with the income tax return for the year in which the assignment of the investment credit of this subsection (i) is made:

(i)     The Investor who has assigned, in whole or in part, the investment credit of this subsection (i);

(ii)     The broker-dealer, underwriter, or pledgee who has assigned, in whole or in part, his investment credit under this subsection (i); and

(iii)     The acquirer of the investment credit under this subsection (i).

The affidavit shall contain such information as deemed pertinent by the Secretary through regulations promulgated to such effects.

(7)     Eligible Percentage.-

HEIN EXHIBIT 84

AAFAF_CONF_0008040

388

(A)    The term "eligible percentage" shall mean the percentage determined by the Committee and shall not exceed twenty-five percent (25%). Except as otherwise provided in subparagraph (B) of this paragraph seven (7), the minimum eligible percentage for all exempt businesses shall be five percent (5%).

(B)    The Committee may establish an eligible percentage, in accordance with Section 8, different from that established in subparagraph (A) of this paragraph (subject to a maximum of twenty-five percent (25%)) to exempt businesses located within the qualified zones for which the Committee has determined to designate a different percentage and that meet the criteria established by said Committee, taking into account the following factors:

(i)    The exempt business' job creation potential;

(ii)    The exempt business' contribution to the fields of education, health, and housing; and

(iii)    The investment that the exempt business may make in lands, buildings, machinery, and equipment.

(iv)    The potential effect on the economy and the needs of the geographic area.

(C)    Eligible percentages and the criteria to be determined by the Committee in accordance with subparagraph (B) of this paragraph seven (7), shall be published in a circular letter, administrative determination, or other general publication, and shall be legally binding as a regulation. Provided, further, that the provisions contained in the official publications established in this subparagraph shall be effective for, at least, one (1) year from the publication thereof.

(j)    Priority of Credits under this Code applicable to Opportunity Zones.-

(1)    In the event that another legislation establishes a cap or certain priority in the granting of investment credits, the approval of investment credits requested under this Chapter shall have priority over the approval of applications for

HEIN EXHIBIT 84

AAFAF_CONF_0008041

credits submitted after the effective date of this Code under any other law providing investment credits, if it is thus determined by the Committee, except for the investment credits established in Prior Incentives Laws, such as: subsections (c) and (f) of Section 5 of  Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto Rico," or under Section 3030.01 of this Code, except also for investment credits with a positive Return on Investment. The Secretary of Economic Development shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the criteria to be used to calculate the estimated Return on Investment. An application for credit shall be deemed to have been filed before the effective date of this Code only if the agency with which it was filed issues a written certification to the Committee stating that the application was filed before the effective date of this Code and that the application contained all the information required to be treated as a duly completed application.

(2)    No agency with which an application for investment credit is filed under this Chapter may approve credits without the Committee's prior authorization.

(3)    Agencies with which applications for credit are filed shall keep an inventory of the applications for credit filed after the approval of this Code, with the following information:

(A)    The Prior Incentives Law or the Chapter of this Code under which the credit is requested;

(B)    The amount of requested credit;

(C)    The location of the project that generates the credit;

(D)    The name of the project sponsor:

(E)    The type of project;

(F)    The total investment in the project;

AAFAF_CONF_0008042

390

(G)     The direct jobs to be created in the project;

(H)     Whether the project applying for credit has capital contributed by a Fund, and the share or interest of the Fund therein; and

(I)     Any other information required by regulations.

(4)     Agencies with which applications for credit are filed, as well as the Secretary of the Treasury, and the Secretary of Economic Development shall submit a quarterly report to the Committee, and every year, on January 1st and July 1st, to the Legislative Assembly, with the information provided for in paragraph (3) of this subsection; however, such reports shall not disclose the name of the project sponsor or confidential information of each project such as, for instance, financial information, balance sheet, and trade secrets.

(5)     The Secretary of the Treasury and the Secretary of Economic Development, in consultation with the Committee, shall issue the regulations on this subsection; however, such regulations shall not require the disclosure of the name of the project sponsor or confidential information of each project such as, for instance, financial information, balance sheet, and trade secrets.

Section 6070.57.- Real and Personal Property Tax Applicable to Opportunity Zones.

(a)     In General.-

(1)     The personal property of an exempt business used in the development, organization, construction, establishment, or operation of the activity covered under the decree shall have a twenty-five percent (25%) exemption from the municipal and state taxes on personal property during the exemption period established in Section 6070.59 of this Chapter. Likewise, in the case of an Eligible Residential Priority Project, the exemption shall be twenty-five percent (25%).

(2)     The real property of an exempt business used in the development, organization, construction, establishment, or operation thereof shall have a twenty-

AAFAF_CONF_0008043

391

five percent (25%) exemption on municipal and state taxes on the property during the exemption period established in Section 6070.59 of this Chapter.

(b) Property under Construction or Expansion.- The real property of an exempt business shall have a twenty-five percent (25%) exemption during the period authorized under the decree to carry out the construction of, or to establish said exempt business, and during the first fiscal year of the Government in which the exempt business would have been subject to property taxes for having been in operation as of the January 1st immediately preceding the beginning of said fiscal year, were it not for the exemption provided herein. Likewise, the real property of said exempt business which is directly related to any expansion of the exempt business, shall have a twenty-five percent (25%) exemption from property taxes during the period authorized under the decree for carrying out the expansion. Once the exemption period established in this subsection expires, the partial exemption provided for in this Section shall begin to apply.

(c) Municipalities, at their discretion, and taking into account their fiscal and financial health, shall prescribe through an ordinance to such effect, not later than ninety (90) days after the effective date of this Code and, subsequently, not later than June 30 of each year, the additional exemptions for each type of municipal tax to be offered uniformly to all exempt businesses over the exemption percentages provided in this Section and up to a maximum of seventy-five percent (75%). Provided, further, that once the Committee has published the list of business activities or specific geographic area in accordance with Section 6070.60 of this Code, the municipalities are hereby empowered, pursuant to the requirements of this subsection and subject to the seventy-five percent (75%) maximum, to vary additional exemptions established for all exempt businesses, by municipal ordinance; provided, that the municipality deems it beneficial to promote any of said business activities or specific geographic area. Municipalities shall be required to

392

publish the municipal ordinances provided in this subsection, which shall be in effect for, at least, one (1) year from the publication thereof.

(d)    Municipalities with which applications for municipal tax exemption are filed, empowered in subsection (c) of this Section, shall keep an inventory of such applications after the approval of this Code with the following information:

(A)    The Prior Incentives Law or Chapter of this Code under which the municipal exemption is requested;

(B)    The exemption requested;

(C)    A copy of the Municipal Ordinance granting the municipal exemption, if applicable;

(D)    The location or geographic area of the project within the municipality that generates the exemptions;

(E)    The name of the project sponsor;

(F)    The type of project or business activity;

(G)    Total project investment in the municipality;

(H)    The direct jobs to be created by the project in the municipality;

(I)    Any other information required by the municipality.

(e)    Every Eligible Business applying for municipal tax exemptions, empowered under subsection (c) of this Section 5, and the municipalities with which applications for municipal tax exemption are filed, shall submit a report with the information provided for in subsection (d) of this Section 5 to the Committee and the Secretary of Economic Development at the end of each quarter on or before the fifteenth (15th) day of the month. The Secretary of Economic Development, in turn, shall submit a report with the information provided for in subsection (d) to the Legislative Assembly not later than January 31st and July 31st of each year; however, such reports shall not disclose the name of the project sponsor, or confidential

AAFAF_CONF_0008045

393

information of each project such as, for instance, financial information, balance sheet, and trade secrets.

Section 6070.58.- Municipal License Tax and Other Municipal Taxes Applicable to Opportunity Zones.

(a)     Exempt businesses shall have a twenty-five percent (25%) exemption on municipal license taxes, municipal excise taxes, and other municipal taxes imposed by any municipal ordinance, during the periods provided for in subsection (e) of Section 6070.59 of this Code. Likewise, in the case of an Eligible Residential Priority Project, the exemption shall be twenty-five percent (25%).

(b)     During the term of the decree, the taxable portion under subsection (a) of this Section shall be subject to the tax rate in effect as of the date the decree was signed, regardless of any subsequent amendment to the decree to cover operations of the exempt business in one or various municipalities.

(c)     The exempt business shall have a twenty-five percent (25%) exemption from municipal taxes or municipal license taxes applicable to the volume of business of said exempt business during the semester of the fiscal year of the Government in which the exempt business commences operations in any municipality, pursuant to the provisions of the Municipal License Tax Act. Furthermore, an exempt business holding a decree under this Chapter shall have a twenty-five percent (25%) exemption from municipal taxes or license taxes on the volume of business attributable to said municipality during the two (2) semesters of the fiscal year or years of the Government following the semester in which the exempt business commenced operations in said municipality.

(d)     Exempt businesses and their contractors and subcontractors shall have a twenty-five percent (25%) exemption from any tax, levy, fee, license, excise tax (including construction excise taxes), duty, or rate imposed by any municipal ordinance on construction works to be used by said exempt business within a

HEIN EXHIBIT 84

AAFAF_CONF_0008046

394

municipality, without it being understood that said taxes include the municipal license tax imposed on the volume of business of the contractor or subcontractor of the exempt business, during the term authorized under the tax exemption decree.

(e)     Municipalities, at their discretion and taking into account their fiscal and financial health, shall prescribe through an ordinance to such effect, not later than June 30 of each year, the additional exemptions for each type of municipal tax to be offered uniformly to all exempt businesses over the exemption percentages provided in this Section and up to a maximum of seventy-five percent (75%). Provided, further, that once the Committee publishes the list of business activities or specific geographic area, in accordance with Section 6070.60, the municipalities are hereby empowered, pursuant to the requirements of this subsection and subject to the seventy-five percent (75%) maximum, to vary additional exemptions established for all exempt businesses by municipal ordinance, provided, that the municipality deems it beneficial to promote any of said business activities or specific geographic area. Municipalities shall be required to publish the municipal ordinances provided in this subsection, which shall be in effect for, at least, one (1) year from the publication thereof.

(f)     The shareholders or partners of a corporation or partnership that is an exempt business shall not be subject to the municipal license tax on distributions of dividends or profits of the earnings and profits generated by the opportunity zone net income of an exempt business.

(g)     Municipalities with which applications for municipal tax exemption are filed, empowered under subsection (e) of this Section 6070.58, shall keep an inventory of such applications after the approval of this Act with the following information:

(A)     The Prior Incentives Law or Chapter of this Code under which the municipal exemption is requested;

HEIN EXHIBIT 84

AAFAF_CONF_0008047

395

(B)   The exemption requested;

(C)   A copy of the Municipal Ordinance granting the municipal exemption, if applicable;

(D)   The location or geographic area of the project within the municipality that generates the exemptions;

(E)   The name of the project sponsor;

(F)   The type of project or business activity;

(G)   The total project investment in the municipality;

(H)   The direct jobs to be created by the project in the municipality;

(I)   Any other information required by the municipality.

(h)   Every Eligible Business applying for municipal tax exemption, empowered under subsection (e) of this Section, and the municipalities with which applications for municipal tax exemption are filed, shall submit a report with the information provided for in subsection (g) of this Section to the Committee and the Secretary of Economic Development at the end of each quarter on or before the fifteenth (15th) day of the month. The Secretary of Economic Development, in turn, shall submit a report with the information provided for in subsection (g) of this Section to the Legislative Assembly not later than January 31st and July 31st of each year; however, such reports shall not disclose the name of the project sponsor, or confidential information of each project such as, for instance, financial information, balance sheet, and trade secrets.

Section 6070.59.- Tax Exemption Periods Applicable to Opportunity Zones.

(a)   Exemption.- An exempt business shall enjoy a tax exemption for a period of fifteen (15) years.

(b)   Flexible Tax Exemption.- Exempt businesses shall have the option of choosing the specific taxable years to be covered under their decrees in terms of their opportunity zone net income; provided, that they so notify to the Secretary and the

HEIN EXHIBIT 84

AAFAF_CONF_0008048

396

Director not later than the deadline established by law for filing their income tax return for said taxable year, including the time extensions granted for this purpose. Once said exempt businesses opt for this benefit, their exemption period in relation to the opportunity zone net income shall be extended for the number of taxable years in which they have not enjoyed the tax exemption under their decrees.

(c)    Establishment of Operations in Other Municipalities.- An exempt business may establish operations covered by an exemption decree in effect, in the same municipality where the principal office is located, or in any other municipality of Puerto Rico; provided, that it notifies the Exemption Office within thirty (30) days before the commencement of operations in the other municipality; and provided, that the Committee has designated the business activity to be established within a geographic area of the same municipality where the principal office is located or in any other municipality, as a Priority Project within Opportunity Zones in accordance with Section 6070.60 of this Code. Additional operations shall enjoy the exemptions and benefits provided in this Chapter for the remainder of the exemption period under the decree in effect; provided, that they are consistent with the operation covered by the exemption decree and the operations in the new municipality are located within a qualified zone.

(d)    Interruption of the Exemption Period.- An exempt business, which has ceased operations and subsequently wishes to resume operations, shall not have the time it was not operating deducted from its corresponding exemption period and may enjoy the remainder of its exemption period, while its tax exemption decree is in effect; provided, that the Director determines that said operations ceased for good cause and that the reopening of said exempt business would serve the best social and economic interests of Puerto Rico.

(e)    Setting the Dates of Commencement of Operations and Exemption Periods.-

HEIN EXHIBIT 84

AAFAF_CONF_0008049

397

(1)     The exempt business may choose the date of commencement of operations for purposes of Section 6070.56 of this Code by filing an affidavit with the Exemption Office, with a copy to the Secretary, stating the unconditional acceptance of the decree granted to the exempt business under this Act. For purposes of Section 6070.56 of this Code, the date of commencement of operations may be the date of the first payroll for training or production of the exempt business holding a decree under this Chapter, or any other date within a period of two (2) years following the date of the first payroll.

(2)     The exempt business may defer the application of the flat tax rate provided in Section 6070.56 of this Code for a period not to exceed two (2) years from the date of commencement of operations as established under paragraph (1) of this subsection. During the deferral period, said exempt business shall be subject to the applicable tax rate under Subtitle A of the Internal Revenue Code.

(3)     The exemption period provided in subsection (a) of Section 6070.57 of this Code for the exemption of real and personal property shall begin on the first day of the fiscal year of the Government of Puerto Rico following the last fiscal year in which the exempt business holding a decree under this Chapter was partially exempt, pursuant to the provisions of subsection (b) of Section 6070.57 of this Code. The partial tax exemption provided in subsection (a) of Section 6070.57 of this Code for said fiscal year shall apply to the tax on property owned by the exempt business on January 1st immediately preceding the beginning of said fiscal year.

(4)     For purposes of the municipal license tax and any other municipal tax exemption, the partial exemption period provided in subsection (a) of Section 6070.58 of this Code shall begin on the first day of the first semester of the fiscal year of the Government of Puerto Rico following the expiration of the partial exemption period provided in subsection (c). Provided, that in the case of exempt

HEIN EXHIBIT 84

AAFAF_CONF_0008050

398

businesses that have been operating on a commercial scale before applying for the benefits of this Code, the date of commencement of operations, for purposes of municipal license taxes, shall be the first day of the semester following the filing date of the application for tax exemption.

(5)     In the case of exempt businesses that have been operating on a commercial scale prior to applying for the benefits of this Chapter, the date of commencement of operations for purposes of the flat income tax rate provided in Section 6070.56 of this Code, shall be the filing date of an application with the Exemption Office, but the date of commencement may be postponed for a period not to exceed two (2) years after said date.

(6)     The exempt business shall commence operations on a commercial scale within one (1) year after the date of signature of the decree, which term may be postponed at the request of the business for good cause; however, no extensions of the date of commencement of operations shall be granted for a period greater than five (5) years from the date of approval of the decree.

Section 6070.60.- Procedures Applicable to Opportunity Zones.-

(a)     Ordinary Procedure for Priority Projects within Opportunity Zones under this Act.

(1)     The Committee shall issue a list of all business activities or eligible businesses per geographic area, which shall be recognized as Priority Projects within Opportunity Zones. The first list shall be issued on or before July 31, 2019. Each list shall be in effect for at least one (1) year from the publication thereof. However, none of the provisions herein shall limit the Committee's authority to amend the list, including the list of activities or geographic areas that may arise by virtue of paragraphs (2) and (3) of this subsection, for the purpose of adding business activities or additional geographic areas, which shall be in effect from the approval thereof until the one (1)-year period of the original list ends.

AAFAF_CONF_0008051

HEIN EXHIBIT 84

399

(A)    When determining which activities shall be considered eligible activities, as well as the geographic areas to which the list shall apply, the Committee shall take into account:

The need for the business activity in Puerto Rico or in a geographic area.

The economic impact that the granting of decrees shall have on the region.

The best interests of the people of Puerto Rico.

(B)    When issuing the list, the Committee shall not impose requirements in addition to those provided in this Chapter.

(2)    Activities not Published by the Committee as Priorities:

(A)    Any person interested in having an activity considered a Priority Project within Opportunity Zones under this Chapter, and which activity is not designated as such by the Committee on the published list mentioned in paragraph (1) of this subsection, shall request such designation through a letter addressed to the Committee, and shall file a copy of the request with the Secretary of Economic Development. In said request, any person interested in having an economic activity established in a geographic zone, including the mayors of the Municipalities, shall explain and describe the activity or activities they intend to carry out, the location of the activity, the merits of the activity proposed as a Priority Project within Opportunity Zones, and any other information that the Committee may require through regulations or administrative order. Within thirty (30) days from the date of the request, the Committee shall approve or deny the designation of the activity as a Priority Project within Opportunity Zones, or request, in writing, any additional information deemed necessary to assist in making a determination, or request a meeting to discuss the proposed project within thirty (30) days from the date of said request. The Committee shall act on the request within thirty (30) days

from the date of receipt of the additional information or the holding of the meeting. In addition, the Committee may delay, at its discretion, for a term not to exceed fifteen (15) days, its decision as to whether the proposed activity constitutes a Priority Project within Opportunity Zones. The Committee shall evaluate the information furnished by the applicant and shall vote, within the terms provided herein, to approve or deny the designation of the proposed activity as a Priority Project within Opportunity Zones and/or extend the geographic area of an activity already approved in another region. If the request is approved, an amended list of Priority Projects shall be published to include said activity. If the Committee fails to act on the request within the terms provided herein, the request shall be deemed to be denied and the interested party may request once again that such activity be considered a Priority Project within Opportunity Zones under this Chapter.

(B)     The Committee may delegate to the Secretary of Economic Development the evaluation of requests to determine whether an activity may be considered a Priority Project within Opportunity Zones under this Chapter and include it on the published list mentioned in paragraph one (1) of this subsection. The Secretary of Economic Development shall complete his analysis within the terms provided in subparagraph (A) of this paragraph and submit a report to the Committee, which shall determine whether the proposed activity constitutes a Priority Project within Opportunity Zones. The Committee, within the terms provided in subparagraph (A) of this paragraph, shall vote to approve or deny the designation of the proposed activity issued by the Secretary of Economic Development.

(3)     Applications for Tax Exemptions.-

(A)     Any person who has established or intends to establish in Puerto Rico an eligible business and that has received a designation as a Priority Project within Opportunity Zones by the Committee, may request the Director the

AAFAF_CONF_0008053

HEIN EXHIBIT 84

401

benefits of this Chapter by filing the corresponding duly sworn application with the Exemption Office.

(B)     At the time of the filing, the Director shall collect the corresponding processing fees, which shall be paid by certified check, postal money order or cashier's check to the order of the Secretary. Such fees shall be provided for by regulations, circular letter, administrative determination, or general information bulletin.

(C)     The Secretary of Economic Development shall prescribe by regulations the processing fees to be collected. Provided, that such regulations shall be revised every three (3) years after the approval thereof.

(4)     Interagency Consideration of Applications.-

(A)     Once any application under this Chapter is received by the Exemption Office, the Director shall send, within five (5) days to be counted as of the filing date of the application, a copy thereof to the Secretary, the concerned municipality, and the Secretary of Economic Development for the latter to file an eligibility report of the activity to be carried out and other facts related to the application. Upon evaluating the application, the Secretary and the concerned municipality shall ascertain the eligible business shareholders or partner's compliance with their tax liabilities under the laws administered by the former. Said verification shall not be necessary in the case of Puerto Rico nonresident shareholders who have not been Puerto Rico residents before or who hold, directly or indirectly, a share of less than ten percent (10%) in the Fund, or corporations with publicly traded stocks. Noncompliance with said tax liability shall be sufficient grounds for the Secretary to deny the application for exemption of the applicant business.

(B)     After the Secretary of Economic Development submits his Eligibility Report and recommendations, if no application in opposition thereto has

402

been filed, the Director shall send a copy of the draft decree within five (5) business days after receiving the documents needed to process the case, to the concerned agencies, including the concerned municipality and the Municipal Revenue Collections Center (CRIM, Spanish acronym), for evaluation and recommendation. Any unfavorable recommendation on the draft decree shall include the reasons therefor.

(i)    The agencies and municipalities consulted by the Director shall have ten (10) days to submit their reports or recommendations on the draft decree referred to them. If the agency or the municipality makes a favorable recommendation, or if said recommendation is not received by the Exemption Office during the aforementioned ten (10)-day period, it shall be understood that said draft decree has received a favorable recommendation and the Secretary of Economic Development may take the appropriate action regarding said application.

(ii)    If the municipality raises any objection with regard to the draft decree referred thereto, the Exemption Office shall consider said objection as deemed necessary, and the Exemption Office shall notify the parties and the corresponding agencies for the review of the administrative action or draft decree review, as appropriate. Once the dispute is resolved, the Director shall make the determination deemed appropriate and forward the case to the Secretary of Economic Development for his final consideration.

(C)    In case of amendments to grants approved under this Chapter, the concerned agencies and municipalities shall have ten (10) days to submit a report or opinion to the Director.

(D)    Upon receipt of the reports, or upon expiration of the terms to make such reports, the Director shall submit the draft decree and his recommendations to the Secretary of Economic Development for his consideration, within the following five (5) days.

HEIN EXHIBIT 84

AAFAF_CONF_0008055

403

(E)    The Director may rely on the recommendations of the agencies or municipalities that submit reports or opinions and may request them to support them.

(F)    The Secretary of Economic Development shall issue a final written determination within a term not to exceed five (5) days from the date the draft decree was submitted for his consideration.

(G)    The Secretary of Economic Development may delegate to the Director those functions as he deems convenient in his discretion, in order to facilitate the administration of this Chapter, except for the function of approving or denying original tax exemption grants.

(H)    Neither the Secretary of Economic Development nor the Director may impose requirements in addition to those provided in this Chapter of this Code on exempt businesses. The geographic area shall neither be limited beyond the limits established by the Committee.

(b)    Renegotiations and Conversions-

(1)    Renegotiation of Decrees in Effect.-

(A)    Any exempt business may request the Secretary of Economic Development to consider renegotiating its decree in effect if said exempt business shows that it shall increase by twenty-five percent (25%) or more the average jobs it has created during the three (3) taxable years preceding the filing of the application; or that it shall make a substantial investment in its existing operations which shall help maintain the economic and labor stability, and that represents a twenty-five percent (25%) increase or more in the investment in property used in the exempt business that is land, buildings or structures, machinery or equipment.

(i)    If said exempt business shows to the satisfaction of the Secretary of Economic Development that it is unable to meet the requirements

AAFAF_CONF_0008056

404

relative to the increase in the average jobs or the increase in investment described above, it shall submit the evidence necessary to the Exemption Office. The Secretary of Economic Development, upon favorable recommendation of the Secretary of the Treasury, and upon recommendation of the agencies that submit tax exemption reports, at his discretion, may consider the renegotiation, taking into account any other factor or circumstance which reasonably shows that the renegotiation of its decree shall inure to the best social and economic interests of Puerto Rico.

(ii) For purposes of this Section, the jobs of the aforementioned exempt business shall consist of the number of Puerto Rico resident individuals who have a permanent, full-time job in the exempt business rendering services as employees, even if they are not directly on the payroll of the exempt business (such as persons under employee leasing contracts, but shall not include persons such as independent contractors or consultants).

(iii) For purposes of this Section, the investment of the exempt business in its existing operations shall be computed according to the book value of the property factoring in the benefit of admissible depreciation under the straight-line method, taking into account the useful life of said property as determined pursuant to Subtitle A of the Internal Revenue Code, in lieu of any other accelerated depreciation allowed by law.

(iv) If the Secretary of Economic Development agrees to conduct the renegotiation thus requested, upon recommendation of the agencies that submit tax exemption reports, he shall take into account the number of jobs of the exempt business, the location thereof, the investment and additional jobs, as well as the remainder of the term of its decree, the tax benefits already enjoyed and its financial capacity, in order for the exempt business to be able to obtain a new decree with tax benefits adjusted under this Chapter.

AAFAF_CONF_0008057

405

(v)    The Secretary of Economic Development shall establish the terms and conditions he deems necessary and convenient to better serve the interests of Puerto Rico, within the limits provided in this Chapter, and may, in his discretion, upon recommendation of the agencies that submit tax exemption reports, impose special job requirements, limit the period and the percentage of the exemption, limit the taxes to be exempt, and require and provide any other term or condition as necessary to achieve the economic development purposes proposed under this Chapter.

(vi)    When the exempt business that wishes to renegotiate its decree fails to meet the increased job or investment requirements provided in this subsection, the Secretary of Economic Development may, upon favorable recommendation of the Secretary and the agencies that submit tax exemption reports, impose a flat income tax rate greater than that imposed under the exempt business decree.

(c)    Denial of Applications.-

(1)    Denial when Not Beneficial for Puerto Rico.- The Secretary of Economic Development shall deny any application when he determines that the grant does not inure to the best economic and social interests of Puerto Rico, upon considering the nature of the physical facilities, the number of jobs, the total sum of the payroll and the investment, the location of the project, its environmental impact, or other factors that, in his judgment, warrant such a determination, as well as the recommendations of the agencies that submit tax exemption reports.

(A)    Upon notice of denial, the applicant may request reconsideration to the Secretary of Economic Development within sixty (60) days from receipt of the notice of denial, setting forth the facts and arguments regarding its application, as deemed appropriate, including the offer of any consideration in benefit of Puerto Rico which he deems warrants the request for reconsideration.

AAFAF_CONF_0008058

HEIN EXHIBIT 84

406

(B)    In the event said application is reconsidered, the Secretary of Economic Development may accept any consideration offered in benefit of Puerto Rico and may require and provide other terms or conditions as necessary to ensure that such a grant shall inure to the best interests of Puerto Rico and achieve the purposes of economic development proposed by this Chapter.

(2)    Denial for being Inconsistent with the Public Interest.- The Secretary of Economic Development shall deny any application if, based on the facts presented for his consideration and after the applicant has had the opportunity to offer a complete presentation concerning the matters at issue, he determines that the application is inconsistent with the public interest of Puerto Rico because the applicant has not been organized as a permanent bona fide business, or in view of the moral or financial reputation of the persons that constitute the business, the funding plans and methods for the applicant business, the nature or intended use for the product or services of the applicant business, or any other factor that might indicate that there is a reasonable possibility that granting the exemption would be detrimental to the economic and social interests of Puerto Rico.

Section 6070.61.- Exempt Business Transfer Applicable to Opportunity Zones.

(a)    Exempt Business Transfer.-

(1)    General Rule.- The transfer of a decree, or of the stocks, property, or other property interest of an exempt business shall be previously approved by the Director. If the transfer is carried out without being previously approved, the decree shall be rendered null from the date of the transfer, except in the cases listed in paragraph (2) of this subsection. The foregoing notwithstanding, the Director may retroactively approve any transfer carried out without his previous approval, when in his judgment, the circumstances of the case so warrant, taking into consideration the best interests of Puerto Rico and the purposes of this Chapter.

AAFAF_CONF_0008059

HEIN EXHIBIT 84

407

(2)     Exceptions.- The following transfers shall be authorized with no need for previous consent:

(A)     The transfer of the assets of a deceased to his estate or the transfer by bequest or inheritance.

(B)     Transfers within the provisions of this Chapter.

(C)     The transfer of stocks or partnership interest when such a transfer does not result, directly or indirectly, in a change in the ownership or control of an exempt business holding a decree under this Chapter.

(D)     The transfer of stocks of a corporation that owns or operates an exempt business when said transfer takes place after the Secretary of Economic Development has determined that any transfers of stocks from said corporation shall be allowed without his previous approval.

(E)     The pledge, mortgage, or other surety with the purpose of securing a *bona fide* debt. Any transfer of control, title, or interest by virtue of said contract shall be subject to the provisions of subsection (a) of this Section.

(F)     The transfer by operation of this Chapter, by a court order, or by a bankruptcy judge to a trustee or fiduciary. Any subsequent transfer to a third party other than the aforementioned debtor or the bankrupt himself, shall be subject to the provisions of subsection (a) of this Section.

(G)     The transfer of all the assets of an exempt business holding a decree under this Chapter to an affiliated business. For purposes of this paragraph, affiliated businesses are those whose stockholders or partners jointly hold eighty percent (80%) or more of the issued and outstanding voting stocks or interest of said exempt business.

(3)     Notice.- All transfers included in the exceptions to this subsection shall be notified to the Director within the following thirty (30) days by the exempt business holding a decree under this Chapter, with a copy to the Secretary

AAFAF_CONF_0008060

HEIN EXHIBIT 84

408

of Economic Development and the Secretary, except for those included in subparagraph (D) of paragraph (2) which do not turn the holder of ten percent (10%) or more of the capital issued by the corporation into a stockholder, as well as those included under subparagraph (G) of paragraph (2), which shall be notified by the exempt business to the Director, with a copy to the Secretary, prior to the date of the transfer.

Section 6070.62- Allowable and Mandatory Revocation Applicable to Opportunity Zones.

(a)    Allowable Revocation.- The Secretary of Economic Development may revoke a decree:

(1)    When the exempt business fails to comply with any of the obligations imposed by this Chapter of this Code, or the regulations thereunder, or by the terms of the exemption decree.

(2)    When the exempt business fails to commence or complete the construction of the facilities necessary for the activities it intends to carry out or for the services it intends to render, or when the exempt business fails to commence the activity within the period established for such purposes in the decree.

(3)    When the exempt business suspends its operations for over thirty (30) days without the express authorization of the Secretary of Economic Development. Provided, that the Secretary of Economic Development may authorize such suspensions for periods longer than thirty (30) days when these are due to extraordinary circumstances.

(b)    Mandatory Revocation.-

(1)    The Secretary of Economic Development shall revoke any decree granted under this Chapter when such decree has been obtained by means of false or fraudulent representations concerning the nature of the eligible business, or

HEIN EXHIBIT 84

AAFAF_CONF_0008061

409

any other facts or circumstances which, in whole or in part, prompted the granting of the decree.

(2)    When any person commits, or attempts to commit, by himself or on behalf of someone else, a violation of the provisions pertaining to successor businesses or preceding exempt businesses, such an action shall also be grounds for revocation under this paragraph.

(3)    When the exempt business fails to comply with its tax liability under the Internal Revenue Code and other tax laws of Puerto Rico, when said noncompliance is duly certified by the Secretary.

(c)    Procedure.- In the event of revocation of a decree granted under this Chapter, the grantee shall have the opportunity to appear before and be heard by the Director or any Special Examiner of the Tax Exemption Office designated for such purpose, who shall report his conclusions and recommendations to the Secretary of Economic Development, with the prior recommendation of the agencies that submit tax exemption reports.

(d)    Effect of Revocation.- In the event of revocation, all of the computed net income, previously reported as opportunity zone net income, whether distributed or not, as well as all distributions thereof, shall be subject to taxation under the provisions of the Internal Revenue Code. Furthermore, the taxpayer shall be deemed to have filed a false or fraudulent tax return with the intent to evade the payment of taxes, and consequently, shall be subject to the criminal provisions of the Internal Revenue Code. The taxes owed in such case, as well as any other taxes that were until then exempt and unpaid, shall become due and payable from the date such taxes would have become due and payable were it not for the decree, and shall be assessed and collected by the Secretary, pursuant to the provisions of the Internal Revenue Code.

Section 6070.63.- Nature of the Decrees Applicable to Opportunity Zones.

AAFAF_CONF_0008062

410

(a)     In general.- The decrees granted under this Chapter shall be deemed to be a contract between the exempt business, its stockholders, partners, or owners, and the Government of Puerto Rico, and said contract shall be binding upon the parties. Said contract shall be construed liberally, consistently with the purpose of this Chapter of promoting the socioeconomic development of Puerto Rico. The Secretary of Economic Development shall have discretion to include, on behalf and in representation of the Government of Puerto Rico, those terms and conditions, grants and exemptions that are consistent with the purpose of this Chapter and promote job creation through the socioeconomic development of Puerto Rico, taking into consideration the nature of the application filed or action requested, as well as the facts and circumstances relative to each particular case as these may apply.

(b)     Obligation to Comply with Representations in Application.- Every exempt business holding a decree under this Chapter shall conduct its exempt operations substantially as they were represented in the application, except when such operations have been changed through amendments authorized by the Secretary of Economic Development pursuant to the provisions of this Chapter.

Section 6070.64.- Administrative Decisions Applicable to Opportunity Zones – Purpose.

(a)     All decisions and determinations of the Committee regarding the designation of an activity as a Priority Project within Opportunity Zones, or of the Secretary of Economic Development regarding the granting of decrees and the contents thereof, shall be final and not subject to judicial or administrative review or any other writ may overturn them, unless otherwise specifically provided. Provided, that once a decree has been granted under this Chapter, no agency, public instrumentality, political subdivision, public corporation, or municipality, whether autonomous or not, of the Government of Puerto Rico, other than the Secretary of

AAFAF_CONF_0008063

411

Economic Development or the Governor, may challenge the legality of such decree or any of the provisions thereof.

(b)     Any grantee adversely affected or aggrieved by any action taken by the Secretary of Economic Development revoking and/or cancelling an exemption decree pursuant to subsection (b) of Section 6070.54 of this Code shall be entitled to a judicial review thereof by filing a petition for review before the Court of Appeals of Puerto Rico within thirty (30) days after the final decision or adjudication of the Secretary of Economic Development. During the processing of such a judicial review, the Secretary of Economic Development is hereby authorized, when in his judgment the service of justice so warrants, to postpone the effective date of any action taken by him under those conditions that so require and to the extent necessary to prevent irreparable damages. When such postponement is requested and subsequently denied, the court before which the review is requested, including the Supreme Court of Puerto Rico, through a writ of certiorari, may decree any necessary and appropriate proceeding to postpone the effective date of any action taken by the Secretary of Economic Development in order to preserve the status or rights of the parties until the review proceedings conclude, upon prior posting of a bond in favor of the Secretary of the Treasury in the amount of the unpaid taxes as of such date, plus interest and penalties, plus interests computed for a period of one (1) year at the prevailing legal rate. Any decision or judgement of the Court of Appeals of Puerto Rico shall be subject to review by the Supreme Court of Puerto Rico through a writ of certiorari requested by any of the parties thereto as provided by law.

(c)     The members of the Committee and employees with Committee-related functions shall not be held civilly liable for any action or omission while discharging their duties under this Chapter of this Code, unless such conduct constitutes an offense or involves gross negligence.

AAFAF_CONF_0008064

412

Section 6070.65.- Periodical Reports to the Committee Applicable to Opportunity Zones.

(a)    In General.- Every year, and regardless of any other report required by law, the Director, in consultation with the Secretary, the Secretary of Economic Development, and the Planning Board shall submit a report to the Committee on the economic and fiscal impact of this Chapter. Said report shall be submitted within one hundred eighty (180) days after the close of each fiscal year. Said report shall include the information that the Committee publishes through circular letter or other publication of general circulation.

Section 6070.66.- Reports Required from Exempt Businesses and Their Stockholders or Partners Applicable to Opportunity Zones.

(a)    Every exempt business shall file annually with the Secretary an income tax return, regardless of the amount of their gross or net income, separate from any other return which they are for other reasons required to file in connection with industry operations covered under the benefits provided for in this Chapter, and pursuant to the Internal Revenue Code for a New Puerto Rico. The Secretary may share with the Tax Exemption Office the information so received, provided that the confidentiality of said information is protected.

(b)    Any stockholder or partner of an exempt business holding a decree under this Chapter shall file annually with the Department of the Treasury an income tax return, pursuant to the provisions of the Internal Revenue Code for a New Puerto Rico, insofar as such stockholder or partner is required to do so under said Code.

(c)    The exempt business shall be required to keep in Puerto Rico a separate accounting for its operations as well as records and files as necessary, in addition to making and submitting the affidavits and complying with the rules and regulations in effect to duly achieve the purposes of this Chapter, and those which the Secretary

AAFAF_CONF_0008065

may prescribe from time to time in connection with the imposition and collection of all types of taxes.

(d)    Every exempt business shall file annually with the Tax Exemption Office, with a copy to the Secretary, not later than thirty (30) days from the deadline prescribed by law for filing the corresponding income tax return, including any extensions granted for such a purpose, a report authenticated with the signature of the President, managing partner, or his authorized representative. Said report shall include an account of data ascertaining compliance with the conditions established in the decree as well as any information that may be required in the form to be adopted for such purpose, or as required by Regulations. This report shall enclose the fees provided through Regulations payable through postal money order or cashier's or certified check, or by electronic means to the order of the Secretary of the Treasury. The information furnished in this annual report shall be used for statistical purposes and economic studies, as provided in this Chapter. Likewise, the Tax Exemption Office shall conduct an audit at least every two (2) years to ascertain compliance with the terms and conditions of the decree granted under this Chapter.

(e)    The Director may impose a ten thousand dollar ($10,000)-civil fine on any exempt business that fails to file any of the reports required by the Secretary or the Director, pursuant to the provisions of subsections (a) through (e) of this Section, or that files such reports after the deadline. The Tax Exemption Office may bring a civil action for the collection of said civil fine before the General Court of First Instance of Puerto Rico, Superior Court, San Juan Part, which shall have exclusive jurisdiction to hear said proceedings. Filing an incomplete report shall be deemed to be a failure to file said report, if the concerned agency notifies the exempt business of any omission on the required report and said exempt business fails to submit the missing information within fifteen (15) days from the date of such notice, or fails to provide reasonable grounds therefor.

AAFAF_CONF_0008066

HEIN EXHIBIT 84

414

Section 6070.67.- Regulations Applicable to Opportunity Zones.

The Secretary of Economic Development, in consultation with the Secretary of the Treasury, shall approve regulations as necessary to govern all that pertains to the form and manner in which the decrees contemplated herein are requested and granted, in order to enforce the provisions and purposes of this Chapter. The Secretary of the Treasury shall approve regulations, in consultation with the Secretary of Economic Development regarding the granting and assignment, or the sale of tax credits under Section 6070.56 of this Code. Furthermore, these regulations shall be subject to the provisions of Act No. 38-2017, known as the "Government of Puerto Rico Uniform Administrative Procedure Act."

The Secretary may issue regulations, administrative determinations, circular letters, or general information bulletins on all that pertains to compliance by the exempt business and the Fund with the provisions of the Internal Revenue Code and this Code.

Section 6070.68.- Application of the Puerto Rico Internal Revenue Code.

The application of the Internal Revenue Code shall be supplementary insofar as its provisions are not inconsistent with the provisions of this Code.

Section 6070.69.- Special Process for the Evaluation and Issuance of Permits.

(a)      Special Process.- Government agencies with jurisdiction over permit processing, consultations, licenses, franchises, or certifications for Priority Projects within Opportunity Zones shall be governed by the provisions of this Chapter and shall be exempt from compliance with the terms and procedures established in Act No. 161-2009, as amended, known as the "Puerto Rico Permit Process Reform Act"; Act No. 75 of June 24, 1975, as amended, known as the "Puerto Rico Planning Board Organic Act"; Act No. 81-1991, known as the "Autonomous Municipalities Act of the Commonwealth of Puerto Rico of 1991"; and Act No. 38-2017, as amended, known as the "Government of Puerto Rico Uniform Administrative Procedure Act,"

HEIN EXHIBIT 84

AAFAF_CONF_0008067

415

as well as the regulations promulgated thereunder. The substantive requirements applicable to permits, consultations, licenses, franchises, consultations, or certification shall be those established by the law or regulations governing the referred processing.

(b)  Jurisdiction.- The provisions of any other law notwithstanding, every permit application for a Priority Project within Opportunity Zones shall be evaluated by the Permit Management Office (OGPe, Spanish acronym), regardless of its location and any hierarchy transfer agreement that exists with the municipality where it is located. Provided, however, that OGPe shall be required to request the municipality where the Priority Project within Opportunity Zones is located to make comments on the proposal.

(c)  Term for Comments.- The agencies or municipalities from which OGPe requests comments shall have a nonextendable term of ten (10) business days after such comment request to submit them. If no response is received after said term of ten (10) business days, the proposal shall be deemed favorable.

(d)  Term for Processing Environmental Documents.- A term of twenty (20) business days from the filling of the environmental document for a Priority Project within Opportunity Zones is hereby established for OGPe to express its consent or objection in accordance with the provisions of Section 4(B)(3) of Act No. 416-2004, as amended, known as the "Environmental Public Policy Act." OGPe may extend said term when the environmental document submitted is incomplete, when additional information is required, or when other reasons so warrant it.

(1)  An Interagency Subcommittee on Environmental Compliance to be created by the Governor through an Executive Order shall be responsible for the evaluation and final determination regarding the environmental document. Said subcommittee shall be composed of representatives empowered to evaluate and adjudicate the potential environmental impacts of the projects to be developed. In

AAFAF_CONF_0008068

416

extraordinary circumstances, a majority vote of the Interagency Subcommittee may extend the term to evaluate and adjudicate potential environmental impacts up to a term not to exceed thirty (30) days. If the Interagency Subcommittee on Environmental Compliance has not been created, the Interagency Subcommittee on Environmental Compliance that has been created by the Governor pursuant to Act No. 76-2000, as amended, is hereby authorized to carry out the tasks authorized under this Section.

(e)     Term for Evaluation of Site Consultation.- Once a Priority Project within Opportunity Zones has obtained the environmental compliance certification pursuant to Section 4(B)(3) of Act No. 416-2004, as amended, OGPe shall have twenty (20) business days to evaluate the site consultation for such project, if any.

(f)     Term for other Development Permits.- Permits for urban development, construction, land subdivision, and others for the development of the Priority Project within Opportunity Zones, other than a site consultation and other individual, general, or consolidated permits under the jurisdiction of OGPe, shall be evaluated by OGPe within ten (10) business days after the appropriate permit application has been satisfactorily filed.

(g)     Notices.- In every procedure where it is required to notify the interested parties, it shall be sufficient to publish only a single notice in two (2) newspapers of general circulation. Furthermore, a sign shall be placed in a conspicuous place indicating, among other things, the purpose of the work or project, the Web address, and the telephone number of the pertinent agency.

(h)     Regulations and Administrative Orders.- The Office of Permit Management (OGPe) is hereby empowered to establish alternate procedures to expedite the granting of permits, licenses, endorsements, consultations, or certifications, relating to Priority Projects within Opportunity Zones, that are consistent with the requirements of this Chapter. Until such procedures are

AAFAF_CONF_0008069

HEIN EXHIBIT 84

417

established, OGPe is empowered to apply the procedures established in the regulations that were adopted in accordance with Act No. 76-2000, as amended, and the timeframes established in this Act shall be applied thereto. The government agencies are also empowered herein to issue administrative orders as necessary to enforce and achieve the purposes of this Act.

(i)      Priority.- The projects that are to be executed under the provisions of this Act shall have priority in the agendas of all the government agencies. However, the projects that qualify as emergencies under Act No. 76-2000, as amended, shall have priority over Priority Projects within Opportunity Zones if submitted simultaneously.

(j)      Request for Review and Orders for Stay.- The only remedy available to the party adversely affected by any resolution or order issued by OGPe or any other agency with jurisdiction shall be to file a request for review before the Court of Appeals. Any request for judicial review by the concerned administrative agency shall be filed before said court, within a jurisdictional term of twenty (20) calendar days from the date on which a copy of the notice of the resolution or final order of the agency is entered in the record. The appellant shall serve notice of the filing of the request for review to the appellee agency, and to all interested parties, within the established term; provided, that compliance with said notice shall be jurisdictional in nature.

(1)      If the Court of Appeals so requests, the administrative agency in question shall refer the case file to the Court of Appeals within ten (10) calendar days following the Court order. The Court of Appeals shall consider the review as provided in Sections 13.1(b) and 13.1(c) of Act No. 161-2009, as amended.

(2)      The issuance of a writ of review shall not stay the authorization or the performance of a work, nor the implementation of a rule, regulation, order, resolution, determination, processing, granting, or effectiveness of any permit,

AAFAF_CONF_0008070

418

license, endorsement, or certification of an agency or official; the adjudication of an auction; or the award of a contract executed or entered into in connection with projects to be carried out, unless expressly ordered by the court to prevent an irreparable damage, upon considering a motion in aid of jurisdiction to such effects. In order for the court to issue such order, the petitioner must prove that it is indispensable for the protection of the court's jurisdiction; that it has a strong probability of prevailing on the merits; that the order for a stay shall not cause substantial damage to the other parties; that it shall not impair the public interest; that there is no reasonable alternative to avoid the alleged damages; and that the damages cannot be compensated by granting a monetary remedy or any other adequate legal remedy, all of which shall be in accordance with the provisions of the Code of Civil Procedure of 1933.

(3)     Any court order shall only affect the component or components of the project that are subject to controversy in the case, and where a substantial damage is entailed.

(k)     For purposes of this Section, the term Priority Projects within Opportunity Zones shall include projects agreed upon under a Partnership Agreement in accordance with Act No. 29-2009, as amended, known as the "Public-Private Partnership Act."

Section 6070.70.- Supremacy of this Code.

The provisions of this Code and the regulations or rules adopted thereunder shall prevail over any other provision of a law, regulation, or rule that is inconsistent with the aforementioned, except for the provisions of Act No. 26-2017, as amended, known as the "Fiscal Plan Compliance Act."

Section 6070.71.- Severability.

If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act

AAFAF_CONF_0008071

419

were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect, impair, or invalidate the remainder of this Act. The effect of said holding shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act thus held to be null or unconstitutional. If the application to a person or a circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect or invalidate the application of the remainder of this Act to such persons or circumstances where it may be validly applied. It is the express and unequivocal will of this Legislative Assembly that the courts enforce the provisions and application thereof to the greatest extent possible, even if it renders ineffective, nullifies, invalidates, impairs, or holds to be unconstitutional any part thereof, or even if it renders ineffective, invalidates, or holds to be unconstitutional the application thereof to any person or circumstance. This Legislative Assembly would have approved this Act regardless of any determination of severability that the Court may make.

Section 6070.72.- Effectiveness.

This Act shall take effect on July 1, 2019. Provided, that the effectiveness of Section 6070.28 of this Code shall be retroactive to November 7, 2018. Provided, further, that the effectiveness of Section 6070.53 of this Code shall be retroactive to November 17, 2015.

The Secretary of the DEDC may take transitional measures between the aforementioned effective date and December 31, 2019, including, but not limited to, implementing the new incentives provided in this Code through regulations, in order to ensure that the objectives of this Act are achieved. Furthermore, it is hereby provided that any duly-filed incentive or tax benefit application, which is pending as

AAFAF_CONF_0008072

HEIN EXHIBIT 84

420

of December 31, 2019 shall be processed in accordance with the prior law under which it was submitted; without precluding the applicant from electing to avail himself of the benefits provided in this Act. Likewise, it is hereby provided that as of January 1, 2020, every incentive or tax benefit application shall be filed in accordance with the provisions of this Act.

AAFAF_CONF_0008073