(H.B. 2419)

(No. **40-2020**)

(Approved April 16, 2020)

# AN ACT

To     amend Sections 1 and 11 of Act No. 168 of June 30, 1968; amend Section 6.03 of Act No. 83-1991, as amended, known as the "Municipal Property Tax Act of 1991"; amend Sections 1010.01 1010.03, 1021.01, 1021.02, 1021.06, 1022.01, 1022.04, 1022.07, 1023.04, 1031.02, 1031.06, 1033.14, 1033.15, 1033.17, 1034.01, 1051.12, 1052.01, 1052.02, 1061.01, 1061.05, 1061.09, 1061.11, 1061.12, 1061.15, 1061.16, 1061.17, 1061.20, 1061.21, 1061.23, 1062.01, 1062.02 1062.03, 1062.08, 1062.09, 1063.01, 1063.03, 1063.07, 1063.12, 1063.16, 1071.02, 1077.02, 1081.01, 1081.02, 1081.05, 1082.01, 1082.02, 1101.01, 1102.01, 1114.06, 1115.04, 4010.01, 4020.05, 4020.08, 4030.12, 4030.19, 4041.01, 4041.02, 5001.01, 6030.25, 6041.11, 6042.08, 6051.11, 6080.12, add new Sections 1116.19 and 116.20 and a Subchapter D to Chapter 7 of Subtitle F of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," in order to incorporate technical amendments to clarify its scope and content, as well as clarify definitions and the legislative intent; amend Section 15.05 of Act No. 164-2009, as amended, known as the "General Corporations Act"; amend Section 8.3 of Act No. 27-2011, as amended, known as the "Puerto Rico Film Industry Economic Incentives Act"; amend Section 1 of Act No.48-2013, as amended, known as the "Act to Establish a Special Contribution for Professional and Consulting Services"; Increase the Proportion of Machines in Casinos and Restructure the Distribution of said Revenues; amend Sections 1020.01, 1020.02, 1020.05, 1020.07, 2071.01, 2072.01, 2072.04, 2072.05, 2072.06, 2073.01, 2074.02, 2091.01, 2092.01, 3000.01, 3000.02, 3050.01, 6020.10, 6060.02, 6070.57 of Act No. 60-2019, known as the "Puerto Rico Incentives Code"; create the Police Retirement Trust Act; amend Section 17 of Act No. 183-2001, as amended, known as the "Puerto Rico Conservation Easement Act"; create the Private Equity Funds Act of2019; repeal Act No. 212-2002, as amended, known as the "Urban Centers' Revitalization Act"; and for other related purposes.

AAFAF_CONF_0007494

# STATEMENT OF MOTIVES

Towards the end of last year, a New Tax Model was approved through Act No. 257-2018 which, among other things, lightened the tax burden of individuals and corporations, eliminated the tax on services rendered between businesses and designated professional services (known as B2B) for 77% of taxpayers, reduced the SUT for prepared foods from 11.5% to 7%, and authorized, in a limited manner, the introduction, manufacture, possession, use, functioning, installation, and operation of gambling devices in businesses operating in our jurisdiction, among other things.

This Legislative Assembly, recognizing the urgency of allocating more funds into the Government of Puerto Rico, Municipalities, or both, deemed it necessary to implement new revenue measures and took into consideration the existence of certain persons, industries, and sectors of the population that fail to properly contribute to the social affairs of our Island as required by law.

Furthermore, the Government of Puerto Rico shall be able to have direct knowledge of the daily operations of gambling devices, which shall allow it to have control over the transactions carried out by each device. Lastly, Act No. 257-2018 provided the Govern1ment of Puerto Rico Gaming Commission with the tools needed to effectively regulate and oversee the gambling device industry. Likewise, Act No. 81-2019, known as the "Government of Puerto Rico Gaming Commission Act" was recently approved to establish a Commission charged with overseeing all that pertains to betting on sport events, eSports, and fantasy contests. In addition, this Commission shall be in charge of overseeing games of chance as well as the Horse Racing Industry.

On the other hand, Puerto Rico needs to incentivize other local industries such as the craft distilling and tropical fruit wine industries. Clearly, the current excise tax structure for these products does not contribute to the development of these

AAFAF_CONF_0007495

industries locally. Therefore, in seeking to promote craft distilling production, this Legislative Assembly deems it necessary to review the production levels used to calculate the appropriate excise taxes and establish reduced rates that benefit said production.

Moreover, the elimination of the tax on business to business services and designated professional services, commonly known as B2B, has been the public policy of this Administration. Hence, Act No. 257-2018 eliminated the B2B tax for 77% of taxpayers. In this Act, we are eliminating the B2B tax for 85% of taxpayers, by extending the exemption to businesses with a volume of business of up to $300,000.

Likewise, through Act No. 257-2018, we achieved a five percent (5%) dollar-for-dollar reduction for individuals. Today, in order to lighten the tax burden of our workforce even further, we are providing an additional reduction of three percent (3%) to taxpayers whose gross income does not exceed $100,000; for a total reduction of 8% for individuals who earn $100,000 or less. Granting these reductions has not been an easy task since factors outside our democracy prevent us from making the necessary changes.

This Act complies with the fiscal neutrality standard; that is to say, tax reductions such as the additional 3% reduction for individuals, the B2B exemption, among others, are financed with tax cuts or through new revenue measures. Thus, Act No. 212-2002, which has a negative return on investment of 78%, according to studies from the Department of Development and Commerce, is hereby repealed. This resulted in the subsidizing of a business operation that fails to contribute to the economic growth of Puerto Rico rather than incentivizing productive business activities. Furthermore, this Act establishes a fee for Exempt Businesses holding decrees in effect under Act No. 22-2012 and any decree that has been granted or is granted to Resident Investor Individuals under the Incentives Code. This fee shall

AAFAF _CONF_0007496

be in addition to the required minimum annual contribution to be paid upon the filing their annual report under Section 6020.10(b) of the Incentives Code. Likewise, a 38 million-dollar cap is established for the granting of tax credits to the film industry under Section 3050.01 of the Incentives Code. This Legislative Assembly understands that, together with the measures incorporated into the Incentives Code, this amount is sufficient to incentivize film projects that support the economic growth of our Island.

This Administration has strengthened tax compliance measures. The New Tax Model under Act No. 257-2018 was comprehensive, granting tax benefits in exchange for greater oversight of the expenses that businesses claim in their income tax returns. Act No. 257-2018 reinforced the taxpayers' duty to report expenses incurred in their trades or businesses through the information statement mechanism in order to ensure that said expenses were available as deductions to compute their tax liability. Certainly, the Legislative Assembly is the body responsible for establishing by means of legislation, which income or expenditures must be reported and who is responsible for filing such information statements. It is for this reason that the Internal Revenue Code provides that failure to timely file information statements shall result in the imposition of penalties on those responsible for the filing thereof. However, there are certain instances where a taxpayer is not required to file information statements on certain items in order to meet his tax liability. Therefore, such a voluntary filing should not be subject to penalties.

The foregoing changes go hand in hand with the Department of the Treasury's introduction of new technology that streamlines the processing of tax data and centralizes it in a single system. In February 2020, the Department of the Treasury launched the third phase of the Unified Internal Revenue System (SURI, Spanish acronym), a technological tool that enables carrying out most transactions with the Department of the Treasury electronically. This Legislative Assembly recognizes

AAFAF_CONF_0007497

that the Department of the Treasury has worked hard to implement the changes introduced by Act No. 257-2018, and the subsequent laws that clarified the legislative intent. Nevertheless, several filing and payments due dates are set to expire within a few weeks and taxpayers still lack critical inforn1ation or the knowledge to fully meet their tax liability.

On the other hand, our people have recently experienced various earthquakes of different magnitudes, including an earthquake with a magnitude of 6.4 on the Richter scale. This undoubtedly wreaked havoc with our daily and business life. Nevertheless, the Department of the Treasury has taken important steps to unify the inten1al revenue system.

In light of the foregoing, this Legislative Assembly deems it necessary to grant an extension of time so that, during this tax year, business persons, whether individuals or corporations, may file their information statements on or before March 31, 2020, in lieu of February 28, 2020.

Lastly, this measure addresses a concern voiced by various citizens regarding the payment of the Credit for Low-income Individuals Older than the age of Sixty-five (65) and the Compensatory Credit for Low Income Pensioners. To such effect, the Secretary of the Treasury is hereby directed to issue the credit payment within a period not to exceed thirty (30) days after the application is filed by the taxpayer; provided that all required documents and information have been submitted. Thusly, we do justice to our senior citizens.

Lastly, this administration is committed to constantly reviewing the tax provisions in effect and ensuring that they are consistent with the legislative intent and not subject to interpretations contrary thereto. For such reason, this Legislative Assembly deems it pertinent to incorporate these technical amendments to the New Tax Model, which in itself amended Act No. 1-2011, better known as the "Internal Revenue Code for a New Puerto Rico," in order to clarify its scope and content. This

AAFAF_CONF_0007498

constitutional right is hereby exercised regardless of the Financial Oversight Board's (FOB) interest in conferring powers upon itself that are contrary to the federal code of laws. Upon the approval of Act No. 257-2018, the FOB determined, that they reserved the right to hinder the implementation and applicability of Sections 132 through 163 of the aforementioned Act regarding the oversight of gambling devices.

The FOB's plan to attempt to hinder the effectiveness of certain sections of an Act approved by this Legislative Assembly and signed by the Goven1or is, for all intents and purposes, unconstitutional under the U.S. Constitution. Both, the Constitution of Puerto Rico and the Constitution of the United States are founded on the principles of the republican form of government and the separation of powers. Based on this principle, the Supreme Court of the United States held in *Clinton v. City of New York,* 524 U.S. 417 (1998), that the Executive Power's use of the line item veto is unconstitutional. Said action constitutes a gross violation of Section 1 of the U.S. Constitution and is contrary to its fundamental principles. The reality is that for a bill to be enacted into law, it requires the approval of a majority of the Senate and the House, and the President's signature. Therefore, the Supreme Court of the United States held that the President cannot pretend to have the authority to veto specific items, since such an act would inherently create a law different from the one approved, or consented to by the legislative branch. Such an action undoubtedly transgresses the principle of separation of powers in a republican form of government.

Consistent with the foregoing, Montesquieu properly expressed, in *The Spirit of the Laws,* (1748) that:

> When the legislative and executive powers are united in the same person or body,' says he, 'there can be no liberty, because apprehensions may arise lest the same monarch or senate should enact tyrannical laws to execute them in a tyrannical manner.' Again: 'Were

AAFAF_CONF_0007499

the power of judging joined with the legislative, the life and liberty of

the subject would be exposed to arbitrary control, for the judge would

then be the legislator. Were it joined to the executive power, the

judge might behave with all the violence of an oppressor.

*Clinton v. City of New York, supra,* page 451, citing *The Federalist Papers:*

*No. 47,* C. Rossiter ed., 1961, p. 303.

### *BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:*

Section 1.- Subsection (e) of Section 1 of Act No. 168 of June 30, 1968, as

amended, known as the "Hospital Facilities Tax Exemption Act," is hereby amended

to read as follows:

"Section I.-

Any natural or juridical person who, upon compliance with the formalities of

this Act, engages in the operation of a hospital unit, as said term is hereinafter

defined, may enjoy, for a period of ten (10) years, the following benefits:

(a)      …

…

(e)      A full exemption from the payment of state taxes and excise taxes on

crude oil derivatives (excluding residual fuel oil No. 6 known as bunker C) and any

other hydrocarbon mixtures, including propane gas and natural gas, used by a

hospital unit as fuel to generate electric or thermal power. The exemption granted

by this subsection includes those taxes or excise taxes established in Sections

3020.07 and 3020.07A of Act No. 1-2011, as amended, known as the 'Internal

Revenue Code for a New Puerto Rico,' or any other provision of law on this matter

that substitutes it.

Any hospital unit that avails itself (or in the future avails itself) of the tax

benefits provided under Section 1101.01 of Act No. 1-2011, as amended, or under

AAFAF_CONF_0007500

any similar provisions of previous laws (or subsequent laws that substitutes it), may enjoy the exemption available under this subsection and subsection (d) of this Section 1; provided, that hospital units which have obtained or shall obtain a tax exemption certification issued by the Department of the Treasury under Section 1101.01 of Act No. 1-2011, as amended, or under any similar provisions of previous laws (or subsequent laws that substitute it), shall keep the full income tax exemption provided by such law. In order to avail itself of the exemption provided in this subsection and in subsection (d) of this Section 1, the hospital unit shall file a formal request with the Department of the Treasury. The formal application for the tax exemptions provided under this Act shall be made through a letter from the hospital unit addressed to the Secretary of the Treasury who shall be empowered to fully approve the application for exemption, or to deny it within a non-extendable period of ten (10) days from the receipt thereof. If the Secretary fails to act on the application within ten (10) days from the receipt thereof, it shall be deemed to be approved. The Secretary of the Treasury, in conjunction with the Secretary of Economic Development and/or the Secretary of the Department of Health, is hereby empowered to prescribe, through regulations, administrative determination, circular letter, or general information bulletin, the eligibility requirements, if any, to be met by a hospital unit in order to avail itself of the exemption provided under this subsection and subsection (d) of this Section 1. However, none of the administrative requirements may exceed the requirements established through this Act nor may be used or construed so as to defeat or contravene the purposes of this Act with regard to the payment of, or credit for the payment of excises taxes on fuel used to generate electric or thermal power.

Any hospital unit that has been granted a tax exemption under Section 1101.01 of Act No. 1-2011, as amended, or under similar provisions of previous laws (or subsequent laws that substitute it), and wishes to avail itself of the tax benefits

AAFAF_CONF_0007501

provided under this subsection and subsection (d) of this Section 1 shall hold a Nonprofit Organization Tax Exemption Effectiveness Certificate (or other equivalent document), issued by the Department of the Treasury, which must be in effect at the time of applying for the aforementioned benefits. It is not necessary for the hospital unit to submit additional documentation to the supplier of the eligible fuel in order to benefit from the exemption provided under this subsection.
    "
…

Section 2.- Section 11 of Act No. 168 of June 30, 1968, as amended, known as the "Hospital Facilities Tax Exemption Act," is hereby amended to read as follows:

"Section 11.- Duties of the Secretary, Certificate of Compliance, and Rulemaking Authority.

In the evaluation, analysis, consideration, award, renegotiation, and revision of any incentive or benefit granted under this Act, the Department of Health and the Secretary thereof shall be required to oversee and ensure compliance with the Requirements and Governing Principles set forth in Section 3-A and all other provisions of this Act without prejudice to the powers conferred under Section 6051.11 of Act No. 1-2011, as amended, known as the 'Internal Revenue Code for a New Puerto Rico.'

    …
    "
…


Section 3.- Subsection (c) of Section 6.03 of Act No. 83-1991, as amended, known as the "Municipal Property Tax Act of 1991," is hereby amended to read as follows:

"Section 6.03.- Tax Return.-

(a)     ...

AAFAF_CONF_0007502

(b)    ...

(c)    Tax returns enclosed with audited financial statements and other documents prepared by certified public accountants. -

Any natural or juridical person engaged in trade or business or engaged in the production of income in Puerto Rico that, pursuant to the provisions of Section 1061.15 of Act No. 1-2011, as amended, known as the 'Internal Revenue Code for a New Puerto Rico,' is required to file audited financial statements along with their tax retun1 shall also be required to file the personal property tax retun1 along with financial statements together with the Auditor's Report issued by a Certified Public Accountant holding a valid license to practice in Puerto Rico. Said Auditor's Report shall state that the financial statements comply with the United States General Accepted Accounting Principles (US GAAS); however, it shall not be necessary for the Certified Public Accountant to issue an opinion without qualifications. Qualified opinions shall be allowed, as defined by US GAAS; provided, that the qualification of the opinion is not due to restrictions in the scope of the audit imposed by the business. No reports with adverse opinion shall be allowed. Provided, that the audit requirement established herein shall not apply to nonprofit corporations nor to entities or persons engaged in trade or business in Puerto Rico whose volume of business is not equal to or greater than three million dollars ($3,000,000) during the taxable year. However, in the case of affiliated groups, as such term is defined in Section 1010.05 of Act No. 1-2011, as amended, known as the 'Internal Revenue Code for a New Puerto Rico,' the determination of volume of business to determine the requirement imposed herein shall be made in accordance with the provisions of paragraph (4) of subsection (a) of Section 1061.15 of Act No. 1-2011, as amended, known as the 'Internal Revenue Code for a New Puerto Rico.' In addition, the personal property tax return shall be accompanied by:

AAFAF _CONF _0007503

(1)      Supplementary information, underlying financial statements and other records used to prepare financial statements and submitted to the audit procedures applied when a financial statement audit is conducted by a certified public accountant holding a valid license to practice in Puerto Rico whereby the following is established:

...
                "
...

Section 4.- Paragraphs (3) and (40) of subsection (a) of Section 1010.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1010.01.- Definitions.-

(a)      As used in this Subtitle, where not otherwise manifestly incompatible with the intent thereof-

(1)      …

…

(3)      …

(A)      …

(B)      …

(C)      If a corporation is converted to a limited liability company under the provisions of Section 19.16 of Act No. 164-2009, as amended, or pursuant to a similar provision of a successor law or to the law of the foreign jurisdiction in which it was organized, the option to pay taxes as a partnership shall be available from the first day of the taxable year in which the conversion became effective. None of the provisions herein shall be construed as if such conversion is a reorganization, as such term is defined in subsection (g) of Section 1034.04.

…

AAFAF_CONF_0007504

(40)   Trade or Business.- As used in Sections 1062.08, 1062.11, 1091.01, and 1092.01, the term 'engaged in trade or business in Puerto Rico,' includes the rendering of services in Puerto Rico at any time during the taxable year, but does not include:

(A)   Trading in Stocks and Securities.

(i)   …

(ii)   …

(B)   Trading in Commodities.

(i)   In general. Trading in commodities in Puerto Rico, including hedging transactions, through a resident broker, registered agent, custodian, or any other independent registered agent.

(ii)   Trading for taxpayer's own account. Trading in commodities for the taxpayer's own account, whether by the taxpayer or his employees or through a resident broker, registered agent, custodian, or other registered agent, and whether or not any such employee or agent has discretionary authority to make decisions in effecting the transactions. This clause shall not apply in the case of a dealer in commodities.

(iii)   Limitation. For the purposes of clauses (i) and (ii), the term 'commodities' shall only mean things of a kind customarily dealt in an organized community exchange and shall not include goods in the ordinary channels of commerce.

(C)   Limitation. Subparagraphs (A)(i) and (B)(i) shall apply only if the taxpayer, at no time during the taxable year, has an office or other fixed place of business in Puerto Rico through which, or by the direction of which the transactions in stocks or securities, or in commodities are effected, as the case may be. Provided, that those persons who are interested in availing themselves of subparagraph (B) of this paragraph shall request an administrative determination

AAFAF_CONF_0007505

from the Secretary pursuant to the rules and regulations promulgated to such effect. The Secretary may consider all relevant factors to determine whether the applicant is engaged in trade or business in Puerto Rico pursuant to this paragraph.

> "

…

Section 5.- Subparagraph (B) of paragraph (1) of subsection (a) of Section 1010.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1010.03.- Classification of Individual Taxpayers-Determination of Filing Status.

(a)      In the case of individual taxpayers, for purposes of the provisions of this Subtitle, the taxpayer shall be subject to taxation under one of the following categories:

(1)      Individual Taxpayer.- For purposes of this Subtitle, an individual shall be considered an "individual taxpayer" if at the close of his taxable year:

(A)      …

(B)      is married, but has entered into a prenuptial agreement that expressly provides for the full division of assets; or

(i)      Provided that, for the purposes of this Code, taxpayers who enter into a prenuptial agreement as described in subparagraph (B) after the celebration of the marriage shall be treated as if the marriage ended on the effective date of the prenuptial agreement. Any transfer of assets as a result of such termination shall be treated as provided in Section 1034.04(b)(7). None of these provisions shall be construed to extend the provisions of Section 1032.02 or 1033.13 to these taxpayers.

(C)      …

…

AAFAF_CONF_0007506

"
…

Section 6.- Subsection (c) of Section 1021.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1021.01.- Normal Tax on Individuals.

There shall be imposed, collected and paid on the net income of any individual in excess of the exemptions provided in Section 1033.18, and on the net income of an estate or a trust in excess of the credit provided in Section 1083.03, a tax which shall be determined according to the following tables:

(a)      …

(b)      …

(c)      For taxable years beginning after December 31, 2018, the tax determined under this Section shall be ninety-five (95) percent of the sum of the amounts detem1ined in subsections (a) and (b) of this Section. Provided, that for taxable years beginning after December 31, 2019, and for individuals whose gross income does not exceed one hundred thousand (100,000) dollars, the tax determined under this Section shall be ninety-two (92) percent of the sum of the amounts determined in subsections (a) and (b) of this Section."

Section 7.- Paragraph (2) of subsection (a) of Section 1021.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1021.02.- Alternate Basic Tax on Individuals.

(a)      Imposition of Alternate Basic Tax on Individuals.

(1)      …

(2)      Net Income Subject to Alternate Basic Tax.- For purposes of this subsection, the term 'net income subject to alternate tax' shall mean:

(A)      …

AAFAF _CONF _0007507

(B)    For taxable years beginning after December 31, 2018.- The taxpayer's gross income for the taxable year determined in accordance with the provisions of Section 1031.01 of this subtitle, minus:

(i)    The exemptions established in paragraphs (1), (2), (3)(A), (3)(B), (3)(L), (3)(M), (4)(D), (5), (6), (7), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), (19), (20), (22), (23), (24), (25), (26), (27), (29), (30), (31), (32), (33), (34), arui [sic] (35) and (36) of subsection (a) of Section 1031.02.

…

(iv)    The amount of the payments for services directly related to the operation of the trade or business of the individual, including the payment of rent, telecommunications, internet access, and any other payment that has been duly reported in the information statements of income subject and not subject to withholding, as provided in Sections 1062.03(d), 1062.08(j), 1063.01, 1063.03, and 1063.16 of the taxable year for which the income tax retun1 is filed; provided, that the amounts not reported in such statements shall not be deducted. Provided, that taxpayers under the accrual method or with an economic year shaH attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

…

(vii)    Amounts paid during the taxable year for water and electricity services, directly related to the operation of the trade or business of the taxpayer; provided, that payments on account of such services shall not have to be reported in an information statement in order to be deducted.

(viii) Amounts paid during the taxable year for advertisement, promotion, publicity, and marketing directly related to the operation of the trade or business of the taxpayer; provided that the amounts paid had been included in the infonnation statements required under Section 1063.01 or Section

AAFAF_CONF_0007508

1063.16 as appropriate; provided, that taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

(ix)    Amounts paid during the taxable year for property, contingency, and malpractice insurance directly related to the operation of the trade or business of the taxpayer; provided that the amounts paid had been included in the information statements required under Section 1063.01 or Section 1063.16, as appropriate; provided, that taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same; and                     …

(xi)    …

(xii)   The allowance of deductions for personal exemptions and for dependents provided in Section 1033.18 of this Code.

(C)     …

(D)     For years beginning after December 31, 2018, the individual may claim all ordinary and necessary expenses of his trade or business claimed to determine the net income subject to the normal tax provided in Section 1021.01; provided that the individual attaches to the income tax return an Agreed Upon Procedures Report or a Compliance Attestation Report prepared by a Certified Public Accountant (CPA) holding a valid license in Puerto Rico certifying that the expenses claimed are ordinary and necessary expenses to generate the income from self-employment. The Secretary, in conjunction with the College of Certified Public Accountants of Puerto Rico, an entity created under Act No. 75 of May 31, 1973, responsible for overseeing the regulation and quality of the CPA profession, pursuant to the compliance attestation and auditing standards applicable to the

AAFAF_CONF_0007509

supplementary information schedules required by this subsection (b) shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the contents and the procedures to which the CPA shall adhere when preparing such reports. Provided, that for taxable years beginning after December 31, 2019, individuals whose volume of business is less than one million dollars ($1,000,000) may, in order meet the requirement set forth in this subparagraph, elect to submit a due diligence checklist provided by the Department of the Treasury with their tax return which shall be sworn in by a Qualified Tax Return Preparer-Specialist who meets the requirements established in Section 6074.01 of this Code, in lieu of filing a Report on Agreed Upon Procedures or a Compliance Attestation Report prepared by the CPA.

(E)     …

(F)     For taxable years beginning after December 31, 2018, the provisions of this Section shall not apply to taxpayers whose only source of income is the wages reported in a Withholding Statement or pensions subject to the exemption provided in subparagraphs (A) and (B) of paragraph (13), and in paragraph (14) of subsection (a) of Section 1031.02.

"
…

Section 8.- Subsection (b) of Section 1021.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1021.06.- Optional Tax for Self-Employed Individuals.-

(a)     …

(b)     The individual may elect to avail himself of the tax provided in subsection (a) of this Section, in lieu of any other tax provided in this Subtitle; provided that the following requirements are met:

AAFAF_CONF_0007510

(1)     At least eighty (80) percent of the gross income of the taxpayer for the taxable year in which he elects to pay taxes under the provisions of subsection (a) of this Section is generated from income on account of services rendered, subject to the withholding at source provided in Section 1062.03; and

(2)     The total gross income earned was subject to the withholding at source provided in Section 1062.03 or the provisions for the payment of the estimated tax under Section 1061.20 have been complied with.

(3)     For taxable year beginning after December 31, 2018 and before January 1, 2020, the individual may elect the optional tax provided in this Section regardless of having a tax balance to be paid along with his income tax return, provided that such balance is paid in full not later than the due date for filing the income tax return, without taking into account an extension request.

(c)

   …"

…

Section 9.- Subsection (b) of Section 1022.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1022.01 .- Normal Tax on Corporations.-

(a)     …

(b)     Imposition of Tax.-  There shall be imposed, collected, and paid for each taxable year on the net income subject to normal tax of every regular corporation, a twenty percent (20%) tax on the net income subject to normal tax. Provided, that for taxable years beginning after December 31, 2018, the tax imposed under this Section shall be reduced to eighteen point five percent (18.5%);

(c)     …"

AAFAF_CONF_0007511

Section 10.- Paragraph (7) of subsection (a) of Section 1022.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1022.04.- Alternative Minimum Net Income Determination.

(a)     Adjustments.-  In determining the amount of the alten1ative minimum net income for any taxable year, the following procedure shall apply, in lieu of the applicable procedure for purposes of detem1ining the regular tax.

(1)     …

…

(7)     Deductions provided under Section 1031.04 of the Code.-

(A)     For taxable years beginning after December 31, 2018.- When determining the alten1ative net income subject to the alten1ative minimum tax, no deduction whatsoever shall be allowed for deductions claimed by the corporation when determining the net income subject to the tax imposed under Section 1022.01. When determining the alternative minimum net income, the corporation shall only claim, against the gross income as determined in Section 1031.01, the following deductions:

(i)     …

(ii)     The amount of the payments for services directly related to the operation of the trade or business of the corporation, including the payment of rent, telecommunications, internet access, and any other payment that has been duly reported in the information statements of income subject and not subject to withholding, as provided in Sections 1062.03(d), 1062.08(j), 1063.01, 1063.02, 1063.03, and 1063.16 of the taxable year for which the income tax return is filed; provided, that the amounts not reported in such statements shall not be deducted, and that taxpayers under the accrual method or with an economic year

AAFAF_CONF_0007512

shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

>                      …

>            (v)      Amounts paid during the taxable year for water and electricity services, directly related to the operation of the trade or business of the taxpayer; provided, that payments on account of such services shall not have to be reported in an information statement in order to be deducted.

>            (vi)     Amounts paid during the taxable year for advertisement, promotion, publicity, and marketing directly related to the operation of the trade or business of the corporation, provided that the amounts paid had been included in the information statements required under Section 1063.01 or Section 1063.16, as appropriate; provided, that taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

>            (vii)    Amounts paid during the taxable year for property, contingency, and malpractice insurance directly related to the operation of the trade or business of the corporation; provided that the amounts paid had been included in the information statements required under Section 1063.01 or Section 1063.16, as appropriate; provided, that taxpayers under the accrual method or with an economic year shall attach to their tax return a reconciliation between the expenses recorded in their accounting books and the information statements, in order to claim the same;

>            (viii)   …

>            (ix)     …

>      (B)      The provisi0ns of subparagraph (A) of paragraph (7) notwithstanding, the corporation may, in determining the net income subject to the alternative minimum tax, claim the same deductions claimed to determine the net

AAFAF_CONF_0007513

income subject to the normal tax imposed in Section 1022.01, subject to the adjustments of paragraphs (1) through (5) of this subsection (a), provided, that the corporation files along with its income tax return an audited financial statement, in accordance with the provisions of Section 1061.15(a)(3) together with the Supplementary Information required under Section 1061.15(b) or files an Agreed Upon Procedures Report or a Compliance Attestation Report, regardless of the volume of business of the corporation.

> …
> "
> …

Section 11.- Subsection (b) of Section 1022.07 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1022.07.- Optional Tax for Corporation Rendering Services.-

(a)      …

(b)      The corporation may elect to avail itself of the tax provided in subsection (a) of this Section, in lieu of the taxes provided in Sections 1022.01, 1022.02, and 1022.03, provided, that the following requirements are met:

(1)      At least eighty percent (80%) of the gross income of the corporation for the taxable year in which it elects to pay taxes under the provisions of subsection (a) of this Section is generated from income on account of services rendered, subject to withholding at source provided in Section 1062.03; and

(2)      The total gross income earned was subject to withholding at source pursuant to Section 1062.03 or the provisions for the payment of the estimated tax under Section 1061.23 have been complied with.

(3)      For the taxable year beginning after December 31, 2018 and before January 1, 2020, the corporation may elect the optional tax provided in this Section regardless of having a tax balance to be paid along with its income tax return;

AAFAF_CONF_0007514

provided that such balance is paid in full not later than the due date for filing the income tax return, without taking into account an extension request.

(c)    …

"

…

Section 12.- Subsection (b) of Section 1023.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1023.04.- Tax on Individuals, Estates, and Trusts with Regard to the Interest Paid or Credited on Deposits in Interest Bearing Accounts.-

(a)    …

(b)    Requirements to Avail Oneself of the Provisions of this Section.-

(1)    Option.-

(A)    …

(B)    …

(C)    …

(D)    When an individual, estate, or trust has one or more interest-bearing accounts in one or more financial institutions, it shall be required to select the financial institution or account where the exemption on paid or credited interest shall be applied as established in Section 1031.02(a)(3)(K) and to notify the latter, and each of the other institutions in which said accounts are held, of the selection. In these cases, the institution thus selected shall be required to deduct and withhold the ten (10) percent or seventeen (17) percent tax, as applicable, on the amount paid or credited for interest in excess of the first five hundred (500) dollars accrued in each quarter. Provided, that, for taxable years beginning after December 31, 2018, the selected institution shall be required to deduct and withhold the ten (10) percent tax on the amount paid or credited for interest in excess of the first twenty-five (25) dollars accrued in each quarter. The other financial institutions shall

AAFAF_CONF_0007515

withhold said ten (10) percent taking as a base the total amount of interest paid or credited. The Secretary is hereby empowered to establish a transition rule to meet the requirements of this subparagraph.

> ...
>
> "

…

Section 13.- Paragraphs (26), (27), and (28) of subsection (a) of Section 1031.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1031.02.- Exemptions from Gross Income.-

(a)     The following income items shall be exempt from taxation under this Subtitle:

(1)     …

…

(26)   For taxable years beginning before January 1, 2020, the compensation received by an eligible investigator or scientist for services rendered to the University of Puerto Rico and to all those higher education institutions accredited in Puerto Rico for scientific research up to a sum equal to the maximum established by the National Institutes of Health for grants as salaries for investigators who receive grants from any of the organizations that constitute the National Institutes of Health for the applicable period in accordance to the notices published by the Institutes; provided, that for the calendar year beginning on January 1st, 2008, the amount to be excluded shall be one hundred ninety-five thousand (195,000) dollars. Any income received by the investigator or scientist for services rendered to natural or juridical persons other than the University of Puerto Rico or any other higher education institution is excluded from this benefit.

(A)     Higher Education Institution.- Means a public or private educational institution duly accredited by the Puerto Rico Education Council in

AAFAF_CONF_0007516

accordance with Act No. 17 of June 16, 1993, as amended, [Note: CmTent Plan 1-2010, as amended, "Reorganization Plan of the Puerto Rico Education Council], or by the Middle States Commission on Higher Education of the Middle States Association of Colleges and Schools.

(B)    Eligible Investigator or Scientist.- Means an individual who is a Puerto Rico resident during the taxable year, hired by the University of Puerto Rico or any other higher education institution in Puerto Rico, engaged mainly in conducting eligible scientific research and who has submitted a scientific research proposal to the National Institutes of Health or to other organizations of the Federal Government of the United States or Government of Puerto Rico, and that due to the approval of said proposal, the academic institution receives a grant for research under the ROI Research Project or its equivalent, whose amount covers the costs of the research, including the compensation of said investigator and of key personnel, purchase of equipment and supplies, publications and other related expenses; provided, that except in the case of Multiple Principal Investigators (PI's) there shall not be more than one individual eligible for this deduction per grant approved.

(C)    Eligible Scientific Research.- Means any research that is conducted by the University of Puerto Rico or any other higher education institution that receives a grant under the ROI Research Project or other similar project of any of the organizations that constitute the National Institutes of Health or under similar programs or mechanisms sponsored by any other organization that promotes competitive scientific research, including but not limited to the National Science Foundation.

(27)    For taxable years beginning before January 1, 2020, the compensation received by an eligible investigator or scientist for rendering services related to science and technology research and development activities carried out in the District established in Section 7 of Act No. 214 of August 18, 2004, as amended,

AAFAF _CONF_0007517

up to the amount of two hundred fifty thousand dollars ($250,000). For the purposes of this paragraph, the term 'eligible investigator or scientist' shall mean an individual residing in Puerto Rico during the taxable year, hired by an institution within the District established in Section 7 of Act No. 214-2004, as amended, engaged mainly in conducting eligible scientific and technology research and development. The initial recommendation of whether the individual is an "eligible investigator or scientist" for purposes of this paragraph and the number of eligible investigators or scientists that may avail themselves of the exemption granted under this paragraph shall be made with the advice of the council of trustees, as such term is defined in Act No. 214-2004. The initial recommendation shall be submitted to the Secretary and the Secretary of Economic Development and Commerce for final approval. The Secretary may delegate to the Secretary of Economic Development and Commerce the final determination if the Secretary so provides through Circular Letter, administrative determination, or any other informational document. If the Secretary fails to act within twenty (20) days after the recommendation of the Council of Trustees was submitted for his approval, the Secretary of the Department of Economic Development and Commerce shall make the final decision regarding whether or not to accept the recommendations of the Council of Trustees.

(28)  Rents in Historic Zone.- For taxable years beginning before January 1, 2020, subject to the requirements of Act No. 7 of March 4, 1955, as amended, and of any other law that substitutes or complements it, up to the limit provided in said laws, the rents received on account of the lease of buildings located within the Historic Zone of the City of San Juan Bautista of Puerto Rico or in any historic zone established in Puerto Rico by the Institute of Puerto Rican Culture or the Planning Board, which have been substantially improved, restored, restructured or rebuilt or newly built in accordance with the rules established by the Institute of Puerto Rican Culture to confom1 to the characteristics of the historic zone where

AAFAF _CONF_0007518

they are located, having obtained the appropriate permits from the pertinent agencies and a certificate from the Institute of Puerto Rican Culture attesting to its conformity with the work as completed.

        (29)   …

           …

    "

…

    Section 14.-Section 1031.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

    "Section 1031.06.- Special Rules for Capital Gains Invested in a Qualified Opportunity Fund.-

    (a)    In General.-

        (1)    Treatment of Capital Gains.- In the case of gain from the sale to, or exchange with, an unrelated person of a capital asset held by the taxpayer, after November 7, 2018, at the election of the taxpayer-

            (A)    its gross income for the taxable year, for purposes of Section 1031.01, shall not include so much of such gain as does not exceed the aggregate amount invested by the taxpayer in a qualified opportunity fund during the one hundred and eighty (180)-day period beginning on the date of such sale or exchange;

            (B)    The amount of gain excluded from the gross income under subparagraph (A) shall be included in the gross income as provided by subsection (b); and

            (C)    subsection (c) of this Section shall apply.

        (2)    Treatment of Capital Gains for purposes of subsection (b) of Section 1022.04.- For the purposes of subsection (b) of Section 1022.04, the amount

AAFAF_CONF_0007519

of capital gain excluded under subsection (a)(1)(A) shall not be part of the 'adjusted net income according to the books' of the taxpayer.

(3)    Election.- No election may be made under paragraph (1).-

(A)    with respect to a sale or exchange if an election previously made with respect to such sale or exchange is in effect; or

(B)    with respect to any sale or exchange after December 31, 2026.

(b)    Deferral of Capital Gain Invested in a Qualified Opportunity Fund.

(1)    Year of Inclusion.- Gain to which subsection (a)(1)(B) applies shall be included in the gross income of the taxable year which includes the earlier of:

(A)    the date on which such investment in the qualified opportunity fund is sold or exchanged; or

(B)    December 31, 2026.

(2)    Amount Includible in the Gross Income.

(A)    In General. The amount of gain included in the taxpayer's gross income under paragraph (1) of this subsection shall be the excess of:

(i)    the lesser amount of capital gain excluded under subsection (a)(1)(A) or the fair market value of the investment detem1ined as of the date described in paragraph (1) of this subsection, over

(ii)    the taxpayer's basis in the investment in a qualified opportunity fund.

(B)    Determination of the Taxpayer's Basis in the Investment in a Qualified Opportunity Fund.

(i)    In General. Except as otherwise provided in this clause or in subsection (c), the taxpayer's basis in the investment in a qualified opportunity fund shall be zero.

AAFAF _CONF _0007520

(ii)     Increase for Capital Gain Recognized Under Subsection (b)(1). The taxpayer's basis in the investment in a qualified opportunity fund shall be increased by the amount of gain included in the gross income by reason of subsection (b)(1) with respect to such property.

(iii)     Investment in a Qualified Opportunity Fund Held for Five (5) Years. In the case of any investment in a qualified opportunity fund held for at least five (5) years, the basis of such investment shall be increased by an amount equal to ten percent (10%) of the amount of gain deferred by reason of subsection (a)(1)(A).

(iv)     Investment in a Qualified Opportunity Fund Held for Seven (7) Years. In the case of any investment in a qualified opportunity fund held by the taxpayer for at least seven (7) years, in addition to any adjustment made under clause (iii), the basis of such property shall be increased by an amount equal to five percent (5%) of the amount of gain deferred by reason of subsection (a)(1)(A).

(3)     Treatment of Capital Gains for Purposes of Subsection (b) of Section 1022.04.- For the purpose of subsection (b) of Section 1022.04, the amount of the gain recognized as gross income under subsection (b)(1) shall be included in the 'gross income adjusted according to the books' of the taxpayer.

(c)     Special Rule for Investments in a Qualified Opportunity Fund Held for at Least Ten (10) Years.- In the case of any investment in a qualified opportunity fund held by the taxpayer for at least ten (10) years and with respect to which the taxpayer makes an election under this Section, the taxpayer's basis in an investment in a qualified opportunity fund shall be equal to the fair market value of such investment on the date that the investment is sold or exchanged.

(d)     Definitions.-

(!)     Qualified Opportunity Fund.- The term 'qualified opportunity fund' means an entity that meets the following requirements:

AAFAF_CONF_0007521

(A)    the entity is a qualified opportunity fund under Section 14002-2 of the United States Internal Revenue Code of 1986, as amended, and

(B)    the property of the entity, or a corporation or partnership in which the entity acquires stocks or partnership interests is located in a qualified opportunity zone (as such term is defined in paragraph (2) of subsection (d) of Section 14002-2 of the United States Internal Revenue Code of 1986, as amended) and is a property located in Puerto Rico.

(2)    Taxpayer.-

(A)    In General.- The term 'taxpayer' means an individual, trust, estate, corporation, partnership, or corporation of individuals.

(B)    Special Rules for Partnerships and Corporations of Individuals.- In the case of a portion of a capital gain derived by a partnership or corporation of individuals and with respect to which the partnership or corporation of individuals does not make an election under paragraph (1) of subsection (a), the partners or shareholders of a partnership or corporation of individuals may be treated as a taxpayer with respect to their distributive share in said gain and make an election under paragraph (1) of subsection (a). In these cases, the one hundred and eighty (180)-day period provided in subsection (a)(l)(A) shall begin the next day of the last day of the taxable year of the partnership or corporation of individuals.

(e)    Applicable Rules.

(1)    Treatment of Investments with Mixed Funds.- In the case of any investment in a qualified opportunity fund only a portion of which consists of investments of gain to which an election under subsection (a) is in effect-

(A)    such investment in a qualified opportunity fund shall be treated as two (2) separate investments, consisting of:

(i)    one (1)  investment that only includes amounts to which the election under subsection (a) applies, and

AAFAF_CONF_0007522

(ii)   one (1) separate investment consisting of other amounts, and

(B)   subsections (a), (b), and (c) shall only apply to the investment described in subparagraph (A)(i).

(2)   Related Persons.- For purposes of this Section, persons are related to each other if such persons are described in subsections 1010.05(b) or 1033.17(b), determined by replacing 'twenty percent (20%)' for 'fifty percent (50%)' each place it is used in such Sections.

(3)   Decedents.- In the case of a decedent, amounts recognized under this Section shall, if not properly includible in the gross income of the decedent, be includible in gross income as provided by Section 1032.03.

(4)   Regulations.- The Secretary, together with the Secretary of Economic Development, shall prescribe such regulations as may be necessary or appropriate to can-y out the purposes of this Section, including-

(A)   rules for the certification of qualified opportunity funds for the purposes of this Section, and

(B)   rules to prevent abuse.

(f)   Effectiveness.- This Section shall be applicable to the taxable years ending after November 7, 2018."

Section 15.- Subsection (c) of Section 1033.14 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1033.14.- Net Operating Loss Deduction.

(a)   …

(b)   …

(c)   Amount of Net Operating Loss Deduction.- The amount of the net operating loss deduction shall be the sum of the net operating loss can-ied over to the

AAFAF_CONF_0007523

taxable year reduced by the amount, if any, by which the net income computed with the exceptions and limitations provided in subsections (d)(1), (2), (3), and (5) exceeds, in the case of a taxpayer other than a corporation, the net income computed without such deduction or, in the case of a corporation, the net income subject to normal tax computed without said deduction and without taking into account the deduction for dividends established in Section 1033.19 of this Code.

    …

  "

…"

Section 16.- Paragraph (1) of subsection (a) of Section 1033.15 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1033.15.- Deductions Applicable to Taxpayers Who Are Individuals.-

(a)    For the purposes of this section, the taxpayer may claim the following items as deductions:

    (1)    Deduction for Interest Paid or Accrued on Residential Property.

    (A)   …

    …

    (C)   Limitation:

        (i)   …

        (ii)   For the purposes of this clause, 'adjusted gross income' of the taxpayer, as defined in Section 1031.03, shall be increased by the gross income exclusions described in Section 1031.01(b), the child support payments described in Section 1032.02(a)(3), and the exempt income items described in Section 1031.02. However, the distributive share of income of a partnership or corporation of individuals that avails itself of the Optional Tax

AAFAF_CONF_0007524

pursuant to Section 1077.10 or Section 1115.11, respectively, shall not be considered as part of the 'adjusted gross income.'

(iii)   …

…

"

…

Section 17.- Paragraph (17) of subsection (a) of Section 1033.17 of Act No. 1-2011, as amended, known as the "Internal Revenue for a Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1033.17.- Non-deductible Items.

(a)   General Rule.- ...

(1)   …

…

(16)   In the case of entities filing under Chapter 7 or Subchapters D or E of Chapter 11 of Subtitle A, for the purposes of determining the item specified in:

(A)   …

(B)   …

(C)   …

(D)   …

(E)   The Secretary may evaluate, under the rules and regulations he promulgates, at the request of the entity, which shall be submitted within the first taxable year included in the request, the nature of the expenses or costs paid to a partnership, stockholder, or member described in subparagraph (C) of this paragraph, in order to determine if any of such expenses or costs shall be excluded from the provisions of this paragraph; provided, that such exclusion shall apply only for a maximum of three (3) taxable years; however, the taxpayer shall be entitled to submit a request for subsequent periods after such period has expired and that, for taxable years beginning after December 31, 2014, and before January 1,

AAFAF_CONF_0007525

2019, the total expenses that may be excluded from the provĭs10ns of such subparagraph shall not exceed sixty percent (60%) of the total expenses described in said subparagraph for taxable years beginning after December 31, 2014, and before January 1, 2019, except in the case of entities subject to the provisions of Act No. 55 of May 12, 1933, known as the 'Banking Law' or entities organized or authorized under the National Bank Act doing business in Puerto Rico, which may exclude up to one hundred percent (100%) of the expenses described in subparagraph (C) of this paragraph as determined by the Secretary.

(i)     The Secretary shall not evaluate or approve new requests for exclusions from the provisions of this paragraph during taxable years beginning after December 31, 2018.

(F)     Provided, that, for taxable years beginning after December 31, 2018, the limitation provided in this paragraph shall not apply if the entity submits to the Secretary, together with the income tax return, a transfer pricing study that includes an analysis of the operations conducted in Puerto Rico, prepared in accordance and in compliance with the requirements of Section 482 of the United States Internal Revenue Code of 1986, Title 26 of the United States Code, as amended. The Secretary may deny such studies he deems do not meet the requirements of this paragraph; provided, that the Secretary determines by preponderance of evidence that such transfer pricing studies fail to meet the requirements of this paragraph. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the validity of the transfer pricing study under this paragraph; provided, that the Secretary determines, by preponderance of evidence, that such transfer pricing studies fail to comply with the rules, regulations, and interpretations issued under Section 482 of the United States Internal Revenue Code of 1986.

AAFAF_CONF_0007526

i)      Exception- Any exclusion approved pursuant to the provisions of subparagraph (F), which is in effect for the taxable years beginning after December 31, 2018, shall be deemed as accepted in lieu of the transfer pricing study required under this paragraph.

(17)   Fifty-one percent (51%) of the expenses incurred by a taxpayer and paid or to be paid to:

(A)    …

(B)    …

(C)    …

(D)    The Secretary may evaluate, under the rules and regulations he promulgates, at the request of the taxpayer, which shall be submitted within the first taxable year included in the request, the nature of the expenses or costs paid to a related party or home office in order to determine if any of such expenses or costs shall be excluded from the provisions of this paragraph; provided, that such exclusion shall apply only for a maximum of three (3) taxable years; however, the taxpayer shall be entitled to submit a request for subsequent periods upon expiration of such period, and that, for taxable years beginning after December 31, 2014 and before January 1, 2019, the total expenses that may be excluded from the provisions of this subparagraph shall not exceed sixty percent (60%) of the total expenses described in this subparagraph for taxable years beginning after December 31, 2014 and before January 1, 2019, except in the case of entities subject to the provisions of Act No. 55 of May 12, 1933, known as the 'Banking Law' or entities organized or authorized under the National Bank Act doing business in Puerto Rico, which may exclude up to one hundred percent (100%) of the expenses described in this subparagraph as determined by the Secretary.

AAFAF _CONF _0007527

i)      The Secretary shall not evaluate or approve new requests for exclusion from the provisions of this paragraph during taxable years beginning after December 31, 2018.

(E)      Provided, that, for taxable years beginning after December 31, 2018, the limitation provided in this paragraph shall not apply if the entity submits to the Secretary, together with its income tax return, a transfer pricing study that includes an analysis of the operations conducted in Puerto Rico, prepared in accordance and in compliance with the requirements of Section 482 of the United States Internal Revenue Code of 1986, Title 26 of the United States Code, as amended. The Secretary may deny such studies he deems do not meet the requirements of this paragraph. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin the validity of the transfer pricing study under this paragraph; provided, that the Secretary determines, by preponderance of evidence, that such transfer pricing studies fail to comply with the rules, regulations, and interpretations issued under Section 482 of the United States Internal Revenue Code of 1986.

i)      Exception- Any exclusion approved pursuant to the provisions of subparagraph (D), which is in effect for the taxable years beginning after December 31, 2018, shall be deemed as accepted in lieu of the transfer pricing study required under this paragraph.

(18)   …

…"

Section 18.- Subsections (d) and (g) of Section 1034.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1034.01.- Capital Gains and Losses

(a)      …

…

(d)      Capital Loss Carryover.-

      (1)      …

      …

      (5)      For taxable years beginning after December 31, 2018, the capital losses described in this subsection may only be carried over to subsequent taxable years as a capital loss up to ninety (90) percent of the net capital gain generated during the taxable year to which such losses were carried over. The amount so allowed of the capital loss determined in this paragraph shall be treated a short-term capital loss during such taxable year.

      (6)      For the purposes of this subsection, a net capital gain shall be computed without regard to such net capital loss or any other net capital losses during any intermediate taxable years.

(e)      …

(f)      …

(g)      Detennination of Holding Period of Property.- For the purposes of this Section-

      (1)      In determining the period for which the taxpayer has held property received in an exchange, there shall be included the period for which he held the property exchanged if, under the provisions of Sections 1034.02, 1072.01, 1114.26, or 1114.27, the received property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part as the property exchanged. For purposes of this paragraph, an involuntary conversion described in Section 1034.04(f) shall be considered an exchange of the property converted for the property acquired.

AAFAF_CONF_0007529

        (2)    …

…

(h)    …

    "

…

Section 19.- Paragraphs (4) and (5) of subsection (a) of Section 1051.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1051.12.- Reissue of Moratorium to Tax Credits Granted under Certain Special Laws.-

(a)    Notwithstanding the provisions of this Subtitle and any other special laws, for taxable years beginning after December 31, 2012, no tax credits shall be granted; thus, no agency, public corporation, instrumentality, municipality, or entity of the Government of Puerto Rico may evaluate, process, grant, or extend any tax credit or authorize any project or transaction that results or may result in the generation of tax credits under the provisions stated below:

        (1)    …

    …

        (4)    Subsection (a) of Section 17 of Act No. 183-2001, as amended, known as the 'Puerto Rico Conservation Easement Act'; except that during fiscal years 2013-2014 through 2018-2019, the tax credits covered under the provisions of this paragraph may be granted up to the amount of ten million dollars ($10,000,000) per year, in those cases in which the request for administrative determination was filed with the Department of the Treasury on or before June 30, 2019. For fiscal year 2019-2020 and subsequent years, the tax credits covered under the provisions of this paragraph may be granted up to the amount of three million (3,000,000) dollars per year in cases in which the request for administrative determination was filed with the Department of the Treasury as of July 1, 2019;

AAFAF_CONF_0007530

(5)     Subsections (E) and (F) of Section 4.03 and Section 4.04 of Act No. 212-2002, as amended, known as the 'Urban Centers Revitalization Act'; except for any construction project started as of July 1, 2013, or any project under this Act subject to the provisions of subparagraph (A) below, or tourist activity projects, as such term is defined in Act No. 78-1993, as amended, known as the 'Tourist Development Act of 1993' and Act No. 74-2010, as amended, known as the 'Puerto Rico Tourist Development Act of 2010'; or affordable housing development projects for sale or rent, or elderly facilities.

(A)     Notwithstanding the moratorium established in this paragraph, during fiscal years 2013-2014 through 2018-2019, the tax credits covered under the provisions of this paragraph may be granted to those projects with a certificate of eligibility filed with the Department of the Treasury by June 30, 2013, up to forty million dollars ($40,000,000) for fiscal years 2013-2014 and 2014-2015, and twenty million dollars ($20,000,000) for fiscal years 2015-2016 through 2018-2019. Provided, that for fiscal year 2013-2014, no tax credit granted to a project shall exceed fifteen million dollars ($15,000,000), and for fiscal years 2014-2015 through 2018-2019, up to December 31, 2019, five million dollars ($5,000,000).

(B)     The Office of Territorial Ordinance of the municipality or, in default thereof, the Office of the Director may evaluate and only grant compliance certificates to those projects with certificates of eligibility filed with the Department of the Treasury by June 30, 2016. This shall apply to all projects regardless of the date the construction began, and includes projects for tourist activities as such term is defined in Act No. 78-1993, as amended, known as the 'Puerto Rico Tourist Development Act of 1993,' and in Act No. 74-2010, as amended, known as the 'Puerto Rico Tourism Development Act of 2010'; to affordable housing development projects for sale or rent; and elderly facilities projects. The foregoing notwithstanding, projects that request credit under the provisions of subparagraph

AAFAF_CONF_0007531

(A) are required to file the compliance certificate with the Department of the Treasury by June 30, 2013.

(C)    Subject to the provisions of subparagraph (B), the Office of Territorial Ordinance of the municipality or, in default thereof, the Office of the Director, shall only issue compliance certificates to projects whose proponents have filed all the documentation required under Act No. 212-2002, as amended, and its regulations, by December 31, 2019. Compliance certificates must be filed with the Department of the Treasury on or before December 31, 2019. No tax credit shall be granted to projects that file their compliance certificates with the Department of the Treasury after the aforementioned date.

(6)    …

…"

Section 20.- Subsection (h) of Section 1052.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1052.01 .- Earned Income Credit

(a)    …

…

(h)    Additional requirements to be eligible for the credit provided in paragraph (4) of subsection (a) of this Section.- In addition to the requirements provided for in subsections (a) through (g) of this Section, every taxpayer shall comply with the following:

(1)    …

(2)    the taxpayer and his spouse, in the case of married taxpayers, shall be twenty-seven (27) years of age or older on the last day of the taxable year;

(3)    …

"
…

AAFAF_CONF_0007532

Section 21.- A subsection (d) is hereby added to Section 1052.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1052.02- Credit for Low-income Individuals Older than Sixty-five (65) Years of Age

(a)     ...

…

(d)     The Secretary shall have up to thirty (30) days after the taxpayer has claimed the tax credit provided for in subsections (a) or (c) to issue the payment through a check or electronically. This time period shall not begin to elapse until the taxpayer has furnished all of the documents or information required by the Secretary, through a general publication, to be granted any of said credits."

Section 22.- Paragraph (2) of subsection (b) of Section 1061.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1061.01- Individual Tax Returns.

(a)     …

(b)     Married Taxpayers

        (1)     …

        (2)     Separate Returns of Spouses

                (A)     …

                (B)     The gross income, the personal exemption, the allowable deductions, except for the provisions of Section 1033.15(a)(l)(E)) and the tax on such income of each spouse shall be determined pursuant to paragraphs (1) through (6) of subsection (a) of Section 1021.03 as if the spouses were filing a joint return, and have opted to determine the tax under the optional computation. Provided, further, that for taxable years beginning on December 31, 2018, the optional tax

AAFAF_CONF_0007533

provided in Section 1021.06 shall be available for each of the spouses individually, provided that they meet the conditions and requirements established in said Section.

(c)     …

"

…

Section 23.- Subsection (c) of Section 1061.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1061.05. - Nonprofit Entity Returns.

(a)     …

…

(c)     Time and Place to File Returns of Nonprofit Entities.- For taxable years beginning on January 1, 2019, the returns of nonprofit entities shall be filed in accordance with Section 1061.16. Provided, that for taxable years beginning after December 31, 2018, the retun1s filed under this section on a calendar year basis shall be filed not later than June fifteen (15) following the close of the calendar year; and the returns filed on a fiscal year basis shall be filed not later than the fifteen (15th) day of the sixth (6th) month following the close of the taxable year of the nonprofit entity."

Section 24.- Paragraphs (4) and (5) of subsection (b) of Section 1061.09 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1061.09. -   Estate and Trust Returns.

(a)     …

(b)     Filing Due Date.-

(1)     …

…

AAFAF_CONF_0007534

(4)    Automatic Extension.- An automatic extension shall be granted for a three (3) month period, counted from the due date set for filing the return required under paragraphs (1) and (2) of this subsection, provided that the taxpayer requests such extension not later than on such return filing date as established in this Subtitle. Provided that for taxable years beginning after December 31, 2016, this automatic extension shall be granted for a six (6) month period counted from the date set on paragraph (1) of this subsection.

(5)    Extension.- The Secretary may, under such rules and regulations as he prescribes, grant revocable trusts or grantor trusts an automatic extension to file the information required under paragraph (3) of this subsection for a period which shall not exceed thirty (30) days counted from the due date set in such paragraph (3) to submit the report to the trust grantor. The Secretary may prescribe through regulations any such other information that must be included in such return. Provided that, for taxable years beginning after December 31, 2016, this extension shall be automatic if the estate or trust filed the request for extension provided for in paragraph (4) of this subsection, and the time period shall be equal to that established in said paragraph (4)."

Section 25.- A new subsection (b) is hereby added to, the subsequent subsections are hereby renumbered, and subsection (d) of Section 1061.11 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1061.11. - Returns of Employee-owned Special Corporations

(a)    General Rule.- Every Special Employee-owned Corporation shall file a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by this Subtitle, the names, addresses, and account numbers of regular, special, or corporate members who shall participate in the gain or loss of the special corporation for such taxable year, and the amounts of net gains or losses.

AAFAF_CONF_0007535

Such retun1s must enclose financial statements prepared in accordance with generally accepted accounting principles, which shall be audited by a Certified Public Accountant licensed to practice in Puerto Rico, pursuant to the provisions of Section 1061.15. The Secretary may prescribe through regulations any such other infom1ation that must be included in such retun1.

(b)     Time to File.-

(1)     General Rule.-  The returns required to be filed under subsection (a) of this section filed on a calendar year basis shall be filed not later than March fifteen (15) following the close of the calendar year. The returns filed on a fiscal year basis shall be filed not later than the fifteenth (15th) day of the third (3rd) month following the close of the fiscal year.

(2)     Automatic Extension.-  An automatic extension shall be granted for a three (3) month period, counted from the due date set for filing the return required under paragraph (1) of this subsection, provided that the taxpayer requests such extension not later than on such return filing date as established in this Subtitle. Provided, that for taxable years beginning after December 31, 2016, this automatic extension shall be granted for a six (6) month period counted from the date set on paragraph (1) of this subsection.

(c)     Report to Members.- Each Special Employee-owned Corporation required to file a return under subsection (a) for any taxable year shall, not later than the last day of the third (3rd) month following the close of its taxable year, furnish to each person who is a regular, special, or corporate member of such special corporation a report containing such inforn1ation as required to be included in such member's income tax return, including the amount of the distributive share of the member in each of the items prescribed in Section 1113.04 of this Subtitle, Notices of Credit for Productivity, Patronage, or Capital, as applicable, and any other additional information required by regulations.

AAFAF_CONF_0007536

(d)     Extension.- The Secretary may, under such rules and regulations as he prescribes, grant Special Employee-owned Corporations an extension to file the information required under subsection (b) for a period which shall not exceed thirty (30) days counted from the expiration of the period established in such subsection (b) to submit the report to members. Provided, that for taxable years beginning after December 31, 2016, this extension shall be automatic if the entity filed the request for extension provided in paragraph (2) of subsection (b), and the time period shall be the same as that provided in said paragraph (2)."

Section 26.- Subsection (a) of Section 1061.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1061.12. -   Insurance Company Returns.

(a)     For taxable years beginning before January 1, 2019, any insurance company subject to taxation under this Subtitle shall file a return not later than the fifteenth (15th) day of the fourth (4th) month following the close of its taxable year stating specifically the items of its gross income, the deductions, and the credits allowed under this Subtitle and any other inforn1ation necessary to comply with the provisions of this Subtitle as prescribed through regulations by the Secretary. The return shall be swon1 by the person or persons appointed as president, vice president, or another chief officer, or by the treasurer or assistant treasurer. The foregoing notwithstanding, in such cases in which the returns are filed through electronic means, the digital signature of the aforementioned officers shall be accepted as evidence of authentication. For taxable years beginning after December 31, 2018, every insurance company subject to taxation under this Subtitle shall file the return not later than the fifteenth (15th) day of the sixth (6th) month following the close of the annual accounting period.

AAFAF _CONF _0007537

(1)    Automatic Extension. -  An automatic extension shall be granted to file a return under this subsection (a), provided that the rules and regulations established by the Secretary for the granting of said extension are complied with. This automatic extension shall be granted for a three (3) month period, counted from the date set in this subsection (a) to file the tax return, provided that the insurance company requests such extension not later than on such return filing date as established in this Subtitle. Provided that for taxable years beginning after December 31, 2016, this automatic extension shall be granted for a six (6) month period counted from the date set on this subsection (a) for filing the return.

(b)    ..."

Section 27.- Paragraphs (3) and (5) are hereby amended, a paragraph (4) is hereby added, and paragraphs (4), (5), and (6) are hereby renumbered as (5), (6), and (7) of subsection (a), and subsections (b) and (e) of Section 1061.15 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1061.15.- Requirement to Submit Financial Statements or Other Documents with the Returns

(a)    …

(1)    …

(2)    …

(3)    For taxable years beginning before January 1, 2020, when the volume of business during a taxable year is equal to or higher than three million dollars ($3,000,000), the business shall submit the financial statements required by this Section enclosed with an Auditor's Report issued by a Certified Public Accountant with license to practice in Puerto Rico, and the limitations on deductions provided in Sections 1021.02(a)(2) and 1022.04 shall not apply thereto. Said Auditor's Report shall state that the financial statements have been prepared in

AAFAF_CONF_0007538

accordance with the Generally Accepted Auditing Standards of the United States of America (hereinafter US GAAS), however, it shall not be necessary for the Certified Public Accountant to issue an unqualified opinion. Qualified opinions shall be allowed as defined by US GAAS, provided, that the qualified report is not due to restrictions within the scope of the audit imposed by the business. No disclaimer report due to restrictions within the scope of the audit imposed by the business shall be allowed. No adverse opinion reports shall be allowed. Provided, that for taxable years beginning after December 31, 2019, when the volume of business during a taxable year is equal to or higher than three million dollars ($3,000,000), but less than ten million dollars ($10,000,000), it shall have the option to submit, in lieu of the audited financial statement, a Report on Agreed Upon Procedures or a Compliance Attestation prepared by a Certified Public Accountant (CPA) with a valid license in Puerto Rico.

(4)     For taxable years beginning after December 31, 2019, when the volume of business during a taxable year is equal to or higher than ten million dollars ($10,000,000), the business shall submit the financial statements required by this Section enclosed with an Auditor's Report issued by a Certified Public Accountant with license to practice in Puerto Rico, and the limitations on deductions provided in Sections 1021.02(a)(2) and 1022.04 shall not apply thereto. Said Auditor's Report shall state that the financial statements have been prepared in accordance with the Generally Accepted Auditing Standards of the United States of America (hereinafter US GAAS), however, it shall not be necessary, for the Certified Public Accountant to issue an unqualified opinion. Qualified opinions shall be allowed as defined by US GAAS, provided, that the qualified report is not due to restrictions within the scope of the audit imposed by the business. No disclaimer report due to restrictions within the scope of the audit imposed by the business shall be allowed. No adverse opinion reports shall be allowed.

AAFAF_CONF_0007539

(5)    Any affiliated group, as defined by in Section 1010.05, constituted by entities or natural persons engaged in trade or business in Puerto Rico shall submit the financial statements required in paragraphs (2), (3), and (4) as consolidated or combined financial statements, in accordance with the Generally Accepted Accounting Principles of the United States (US GAAP). However, such consolidated or combined financial statements shall include an attachment showing in columns the financial situation and the results of the operations of each one of the affiliate entities that constitute the affiliated group. The Secretary may prescribe by regulations, circular letter, administrative determination, or general communication, such conditions as deemed appropriate to waive the requirement to file consolidated or combined financial statements and, in lieu thereof, require separate financial statements by entity; provided, that the infonnation of the affiliated group engaged in trade or business in Puerto Rico be included in the notes of such financial statements, along with an attachment showing in columns, the financial situation and the results of the operations of each one of the affiliate entities that constitute the affiliated group.

(A)[sic] For taxable years beginning after December 31, 2018, and in order to meet the requirement imposed in this paragraph (5), all entities that have generated a volume of business equal to or higher than one million dollars ($1,000,000) and that, because the volume of business of said affiliated group is equal to or higher than three million dollars ($3,000,000.00) for taxable years beginning before January 1, 2020, and ten million dollars ($10,000,000.00) for taxable years beginning after December 31, 2019, in the aggregate, may submit financial statements showing the financial situation and the results of the operations of said entity individually without the need to submit consolidated or combined audited financial statements, provided, that a list of all affiliated groups engaged in trade or business in Puerto Rico is included in the notes of said financial statements.

AAFAF_CONF_0007540

Said information shall include the name of each of the persons constituting the affiliated groups engaged in trade or business in Puerto Rico. Furthermore, a person that is part of the affiliated group subject to the provisions of this Section, but has not generated a volume of business equal to or higher than one million dollars ($1,000,000.00) for a taxable year, shall not be required to submit audited financial statements. However, such entity shall be subject to the requirement of submitting a Report on Agreed Upon Procedures or a Compliance Attestation, provided that it opts out of submitting audited financial statements. Provided, that for taxable years beginning after December 31, 2019, all entities that have generated a volume of business equal to or higher than one million dollars ($1,000,000.00) and are part of an affiliated group with an aggregated volume of business equal to or higher than ten miHion dollars ($10,000,000.00), shall be required to submit audited financial statements, in accordance with the provisions of paragraph (5) of subsection (a) of this section.

(6)    …

(7)    …

(b)    Supplementary information that underlies the financial statements, and other records used to prepare financial statements and submitted to audit procedures applied when a financial statement audit is conducted by a certified public accountant holding a valid license to practice in Puerto Rico for taxable years beginning after December 31, 2012.-

(1)    Any business, including an individual business, corporation, partnership, special partnership, limited liability company, corporation of individuals, insurance company, registered investment company, special employee-owned corporation, association, cooperative, real estate investment trust, or any other entity engaged in trade or business or in the generation of income in Puerto Rico, shall submit together with its income tax return, supplemental information that

AAFAF _CONF_0007541

underlies the financial statements and other records used to prepare financial statements and submitted to audit procedures applied when a financial statement audit is conducted by a certified public accountant holding a valid license to practice in Puerto Rico, as established below:

(A)     When the volume of business during a taxable year is less than one million dollars ($1,000,000), the business shall not be required to submit the supplemental information required by this Section.

(B)     When the volume of business during a taxable year is equal to or higher than one million dollars ($1,000,000), but less than three million dollars ($3,000,000), for taxable years beginning before January 1, 2020, or ten million dollars ($10,000,000.00), for taxable years beginning after December 31, 2019, the business may opt to submit the supplemental information required by this section. Any business that is current in its tax liability and that opts to include, under this paragraph, the required supplemental information shall be entitled to a full or partial waiver by the Secretary, as provided in subsection (g) of Section 1062.03 of this Code, from the withholding at source provided in Section 1062.03, on payments received for services rendered.

(C)     When the volume of business during a taxable year is equal to or higher than three million dollars ($3,000,000) for taxable years beginning before January 1, 2020, or ten million dollars ($10,000,000.00) for taxable years beginning after December 31, 2019, the business shall submit the supplemental information required by this Section.

(c)     …

(d)     …

(e)     Report on Agreed Upon Procedures or Compliance Attestation. - For purposes of this Section, the term 'Report on Agreed Upon Procedures' means a report prepared by an independent Certified Public Accountant certifying that agreed

AAFAF_CONF_0007542

upon procedures were followed; and the term 'Compliance Attestation' means a report prepared by a Certified Public Accountant issuing an opinion on the fulfillment of a requirement established by law, regulations, or a government entity. The Secretary, with the advice of the College of Certified Public Accountants of Puerto Rico, on or before September 30, 2020, shall prescribe through regulations, circular letter, or other administrative determination or general communication, the content of said reports and the procedures required under paragraphs (2), (3), (4), and(5)(A) of subsection (a) of this Section, in compliance with the audit and attestation standards applicable to this type of report.

…"

Section 28.- Paragraph (e) is hereby added to Section 1061.16 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1061.16.- Date and Place to File Retun1s.

(a)      …

…

(d)      …

(e)      Returns of Corporations Holding an Exemption Decree under Special Laws.- For taxable years beginning after December 31, 2018, the filing date for tax returns of corporations with an exemption decree under Act No. 60-2019, as amended, known as the 'Puerto Rico Incentives Code,' or any similar preceding or successor law shall be June 15, if the returns are filed on a calendar year basis, or the fifteen (15th) day of the sixth (6th) month following the close of the annual accounting period, if the returns are filed on a fiscal year basis. Provided, that the provisions of this subsection shall not apply to individuals or pass-through entities that have an exemption decree in effect and, thus, shall submit their returns as provided in subsection (a) of this section"

AAFAF_CONF_0007543

Section 29.- Subsections (a) and (c) of Section 1061.17 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1061.17.- Payment of Tax.

(a)     Date of Payment.- Except as otherwise provided in this Subtitle, the total amount of the tax imposed in this Subtitle shall be paid on April fifteen (15) following the close of the calendar year or, if the return should have been filed on a fiscal year basis, then on the fifteenth (15th) day of the fourth (4th) month following the close of the fiscal year. Provided, that for taxable years beginning after December 31, 2018, taxpayers who file their income tax retun1s under Sections 1061.05, 1061.12, and 1061.16(e) of this Code, the total amount of the tax imposed under this Subtitle, shall be on the date set for filing income tax returns as provided in Sections 1061.05, 1061.12, and 1061.16(e) of this Code, as the case may be.

(b)     …

(c)     Payment Extension.-

        (1)     …

        …

        (3)     Taxable Year 2019.- Every taxpayer who requests the Secretary an automatic extension for the filing of the income tax return, in accordance with Section 1061.16(a)(d), for taxable years beginning after December 31, 2018, but before January l, 2020, shall be granted an automatic thirty (30)-day extension to pay the computed tax. The automatic extension provided herein shall apply only to those taxpayers who file their tax returns on a calendar year basis.

        (4)     Estimated Tax Payment Enclosed with Return of Pass-through Entities - Upon request of the taxpayer, the Secretary may extend the period to pay the estimated tax to a partnership, special partnership, or corporation of individuals, in accordance with Sections 1061.03, 1061.06, or 1061.07, which payment shall be

AAFAF_CONF_0007544

enclosed with the entities' information returns, for a period that shall not exceed six (6) months from the filing date of said information return. In such case, the amount with respect to which the extension was granted shall be paid on or before the due date of the extension. Provided, that for taxable years beginning after December 31, 2018, but before January 1, 2020, every partnership, special partnership, or corporation of individuals that requests an automatic extension to file an information return shall be granted an automatic extension for the payment of the estimated tax until May 15, 2020.

> "
…

Section 30.- Paragraph (3) is hereby amended, a new paragraph (4) is hereby added, and paragraph (4) is hereby amended and renumbered as paragraph (5) of subsection (a) of Section 1061.20 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1061.20.- Obligation to Pay Estimated Tax by Individuals.

(a)    Obligation to Pay Estimated Tax.- Any individual other than an estate or trust, or a nonresident individual, whose wages, as defined in Section 1062.01 (a), are not subject to withholding under said section and whose estimated tax for any taxable year, as computed in subsection (b) of this section, exceeds one thousand dollars ($1,000), shall pay an estimated tax for the taxable year on the date set in Section 1061.21 (a). However, the following individuals shall not be subject to pay estimated tax:

(1)    …

(2)    …

(3)  any individual whose gross income originates solely from compensation received on account of services rendered on agricultural labor not subject to withholding at source under said Section 1062.01 of the Code; or

AAFAF_CONF_0007545

(4)     any individual who, in addition to the income established in paragraphs (1), (2), and (3) of this subsection, receives an income from Distributions made by reason of a Disaster Declared by the Governor of Puerto Rico, in accordance with Sections 1081.0l(b)(l)(D) and 1081.02(d)(l)(I); or

(5)     any individual who, in addition to the income established in paragraphs (1), (2), (3), and (4) of this subsection, receives an income of less than five thousand dollars ($5,000) from other sources.

(b)     …

     "

…

Section 31.- Paragraph (1) of subsection (a) of Section 1061.21 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1061.21. - Payment of Estimated Tax by Individuals.

(a)     Due Date for Payment of Estimated Tax.-

The estimated tax shall be paid as follows:

(1)     The due date for the first installment of the estimated tax required under Section 1061.20 of this Subtitle is the fifteenth (15th) day of the fourth (4th) month of the taxable year, except as provided in paragraph (2) of this subsection. In this case, the estimated tax shall be paid in four (4) equal installments. Provided, that for taxable year 2020, the first installment of the estimated tax shall be due on May 15, 2020. The second installment shall be paid the fifteenth day of the sixth month of the taxable year. The third installment shall be paid the fifteenth day of the ninth month of the taxable year. The fourth installment shall be paid the fifteenth day of the first month of the following taxable year. Provided, further, that the first year in which the special tax on gross income takes effect, such payments shall be made for the remaining installments.

(2)     …

AAFAF _CONF _0007546

(b)    …

     "
…

Section 32.- A subparagraph (A) is hereby added to paragraph (1) of subsection (c) of Section 1061.23 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1061.23.- Estimated Tax Payment by Corporations.

(a)    …

…

(c)    Due date for Estimated Tax Payments. -

(1)    General Rule.- The due date for the first installment of the estimated tax required under subsection (a) shall be the fifteenth day of the fourth month of the taxable year, except as provided in paragraph (2) of this subsection. In this case, the estimated tax shall be paid in four equal installments. The second installment shall be paid on the fifteenth day of the sixth month of the taxable year. The third installment shall be paid on the fifteenth day of the ninth month of the taxable year. The fourth installment shall be paid on the fifteenth day of the twelfth month of the taxable year. Provided, that the first year in which the special tax on gross income takes effect, such payments shall be made for the remaining installments.

(A)    Taxable Year 2020. - Corporations that file their returns on a calendar year basis and are required to pay the estimated tax under Section 1061.22 for the taxable year beginning January 1, 2020, may pay the first installment of the estimated tax not later than May 15, 2020.

(2)    …

(d)    …

     "
…

AAFAF_CONF_0007547

Section 33.- Paragraph (1) of subsection (a) and paragraph (2) of subsection (c) of Section 1062.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1062.01.- Income Tax Withholding at Source in the Case of Wages

(a)      Definitions. - As used in this Section:-

(1)      Wages. - The term 'wages' means any remuneration for services rendered by an employee for his employer, and every remuneration as pension for services rendered, including the cash value of all remuneration paid by any medium other than cash; except that said term shall not include remuneration paid:

(A)      for payments made before January 1, 2019, for services rendered in agricultural labor, as defined in paragraph (6) of this subsection, excluding services performed by executive, administrative, office, or supervisory employees and by the employees occupying permanent positions. Every payment made as of January 1, 2019, shall be deemed to be wages not subject to withholding at source, and shall be required to be reported in a withholding statement; or

(B)      for payments made before January 1, 2019, for domestic services in a private home, local college club, or local chapter of a college fraternity or sorority,[sic] Every payment made as of January 1, 2019, shall be deemed to be wages not subject to withholding at source, and shall be required to be reported in a withholding statement; or

(C)      ...

(D)      ...

(E)      ...

(F)      for payments made before January 1, 2019, for services performed by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order. Every payment made as of January 1, 2019, shall be deemed

AAFAF _CONF_0007548

to be wages not subject to withholding at source, and shall be required to be reported in a withholding statement; or

(G)    for payments made before January 1, 2019, compensations or severance pay received by an employee by reason of dismissal, without the need to determine just cause thereof, up to a maximum amount equal to the severance pay that the employee may receive pursuant to Act No. 80 of May 30, 1976, or under a settlement agreement for dismissal between the employer and the employee. Every payment made as of January 1, 2019, shall be deemed to be wages not subject to withholding at source, and shall be required to be reported in a withholding statement; or

(H)    …

(I)    …

(J)    Any payer who only has the responsibility to report wages not subject to withholding included in this subsection shall not be required to file a return under subsection (j) of this Section.

…

(b)    …

(c)    Withholding Exemption.-

(1)    In computing the tax required to be deducted and withheld in accordance with the tables promulgated by the Secretary, as provided in subsection (b), there shall be allowed, as a withholding exemption with respect to the wages paid for each payroll period, an exemption determined according to the withholding exemption tables which, in accordance with the provisions of this Subtitle, the Secretary shall approve and that shall be part of the regulations of this Subtitle. Said tables shall take into consideration the amount of the personal exemption and credit for dependents allowable to the taxpayer according to Section 1033.18, as well as

AAFAF_CONF_0007549

the concession for withholding based on the deductions provided in paragraph (2) of this subsection.

      (2)    Concession for Withholding Based on Deductions.-

      (A)    In determining the amount of the exemption for withholding under paragraph (1 ), concessions shall be allowed based on deductions in a number equal to the result of dividing:

      (i)    At the option of the employee, the amount of the deductions which he deems he is entitled to deduct under Section 1033.15, upon computing his net income for the corresponding taxable year, by five hundred dollars ($500).

      For purposes of this paragraph, the system established under the Social Security Act shall not be considered as a government pension or retirement system and a fraction shall not be considered unless it exceeds fifty percent (50%), in which case this fraction shall be considered as an additional concessI0n.

      (B)    …
      …"
…

      Section 34.-Paragraph (3) of subsection (a) is hereby amended and a subsection (f) if hereby added to Section 1062.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

      "Section 1062.02.- Withholding of Tax at Source on Indemnity Received on Judicial Proceedings or in Extrajudicial Claims.

      (a)    Indemnity Payments Received on Judicial or Extrajudicial Claims that Constitute Taxable Income for the Purpose of this Subtitle.- Every employer, insurance company, or any other person required to make indemnity payments under a Court order or extrajudicial claim, shall be required to withhold seven percent (7%) of the amount of those payments made before January 1, 2019, which constitute

AAFAF _CONF_0007550

taxable income for purposes of this Subtitle. Provided, that for payments made after December 31, 2018, the payer shall be required to withhold ten percent (10%) of the amount of such payments. For purposes of this subsection, taxable income includes, among others, the following items:

(1)     Any compensation portion representing or substituting loss of income or salaries, including lost profits;

(2)     indemnity for lost salaries in the case of destitution or suspension from employment and salary, or for illegal dismissal; and

(3)     the portion of the payment that, by law, court order, or out-of-court settlement, is paid directly to the legal representative of the person who receives the indemnity, provided that this portion of the payment shall be reported directly to the legal representative and not to the indemnified individual, and shall be subject to withholding under Section 1062.03 of this Code. In the case of payments made to nonresident individuals or nonresident aliens, they shall be subject to the withholding provided in Section 1062.08, or if the payment is made to a foreign corporation not engaged in trade or business in Puerto Rico, the provisions of Section 1062.11 shall apply.

…

(e)     …

(f)     When it is shown to the satisfaction of the Secretary, or when the Secretary himself determines that the requirement under this section shall cause undue hardship without having a practical purpose whatsoever, given that the amounts thus withheld shall have to be returned to the taxpayer or that such withholding is excessive, the Secretary may, under those rules and regulations he promulgates, relieve the withholding agent from making such withholding in whole or in part."

AAFAF_CONF_0007551

Section 35.-Paragraph (17) of subsection (b), subsection (c), and paragraph (4) of subsection (g) of Section 1062.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1062.03.- Withholding at Source on Payments for Services Rendered.-

(a)      …

(b)      Special Rules.- The requirement to deduct and withhold provided in subsection (a) of this Section shall not apply to:

(1)      …

…

(17)    The continuing education services described in paragraph (11) of subsection (ll) of Section 4010.01.

(c)      Responsibility of the Payer.- Except as otherwise provided, any person required to deduct and withhold any taxes under the provisions of this Section, shall be responsible to the Secretary for the payment of such taxes and shall not be responsible to any other person for the amount of any such payments. Any person who, at the time of filing the income tax return has failed to remit to the Department of the Treasury the total amount withheld on payments described in subsection (a) of this Section and has failed to file with the Department of the Treasury the information statements required under subsections (h), (i), and (j) of this Section, shall not claim such payments as operating expenses. Provided, that individuals under the accrual method or with a fiscal year may claim the deductions, as shown in their accounting books, provided, that such individuals file together with their return a reconciliation between the expenses claimed and the amount reported in the statement. However, persons under the accrual method or with a fiscal year shall not be required to enclose with their tax returns a reconciliation between the expenses

AAFAF_CONF_0007552

claimed and the amount reported in the statement in order to be able to claim the deduction, when such persons file together with their income tax returns the audited financial statement in accordance with the provisions of Section 1061.15(a) and file the Supplementary Information required in Section 1061.15(b).

(d)    …

(e)    …

(f)    …

(g)    Waivers.-

(1)    In the case of entities, as such term is defined in Section 1010.05(c) that are up to date with their tax liabilities, in lieu of the withholding provided in subsection (a), three percent (3%) shall be deducted and withheld in payments made before January 1, 2019, and six percent (6%) in payments made after December 31, 2018, provided, that the required Report on Agreed-Upon Procedures or the required Audited Financial Statements have been filed together with their return in accordance with Section 1061.15.

(2)    …

(3)    …

(4)    In the case of other sectors or categories of businesses or ventures, when it is shown to the satisfaction of the Secretary, or when the Secretary himself determines that the obligation of this Section shall cause undue hardships to such sectors or categories of businesses or ventures without any practical purpose whatsoever, because the amounts thus withheld shall have to be refunded to taxpayers, or that such withholding shall be excessive, the Secretary may exempt the withholding agent, under such rules and regulations he promulgates, from making such retention in whole or in part to every business or venture included in the sector or category. The Secretary may use the aforementioned criteria to exempt the withholding agent, in whole or in part, from making the withholding provided in

AAFAF_CONF_0007553

subsection (a) or this subsection, in the case of corporations or partnerships carrying over a substantial amount of net operating losses with respect to the annual volume of business of such corporation.

(A)     Provided, that in the following circumstances, it shall be understood that the taxpayer has shown that the withholding causes the taxpayer undue hardship without any practical purpose:

(i)     A person who is within the first three (3) years of operation of his economic activity and has not obtained an exemption for said economic activity under the provisions of paragraph (8) of subsection (b) of this Section. For such purposes, the fact that a taxpayer has carried out the same economic activity in another jurisdiction or that he carried out another economic activity inside or outside of Puerto Rico shall not be taken into account;

(I)     The Secretary may deny an exemption to any person who carries out substantially the same activity for which such person had already received a previous exemption;

(ii)     A Qualified Physician, as defined in Act No. 14-2017, to whom an exemption decree has been granted and holds a valid exemption decree under such Act; and

(I)     Provided, that in the event that the total number of shareholders, partners, or owners of a Medical Service Business, as defined in Act No. 14-2017, that is taxable under the provisions of Chapter 7 or Subchapter E of Chapter 11 of this Subtitle, are Qualified Physicians who have been granted and hold a valid exemption decree under such Act, a total exemption from withholding shall be granted.

(iii)     A person whose previous taxable year has ended with net losses from its operations within Puerto Rico, and who has not been subject

AAFAF_CONF_0007554

to the Alternate Basic Tax or Alternative Minimum Tax for any of the last three (3) years.

(I)    The Secretary, however, may deny an exemption to any person who has reported operating losses for over three (3) consecutive taxable years.

(5)    ...

"

…

Section 36.-Subsections (j) and (k) of Section 1062.08 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1062.08.- Tax Withholding at Source in the Case of Nonresident Individuals, due to the Revocation of the Authorization to do Business in Puerto Rico, for the Sale of Certain Assets, and in the Case of Certain Exempt Organizations.-

(a)    …

...

(j)    Information Statement.- Every person who is required to deduct and withhold any tax under this Section, in addition to filing the return required by subsection (b), shall file an information statement with the Secretary, as prescribed by him through regulations. Said statement shall include the total amount paid, the tax deducted and withheld, and the name, address, and account number of the person to whom the payment was made. A copy thereof shall be delivered to the person to whom payment was made not later than the fifteenth (15th) of April of the year following the calendar year for which the statement was filed. Any person who, at the time of filing his income tax return has failed to remit to the Department of the Treasury the total amount withheld on the payments described in this Section, and has failed to file with the Department of the Treasury the information statements

AAFAF_CONF_0007555

required in this subsection, may not claim such payments as operating expenses, insofar as such payments constitute ordinary and necessary operating expenses. Provided, that individuals under the accrual method or with a fiscal year may claim the deduction, as shown in their accounting books, provided that such individuals file together with their return a reconciliation between the expense claimed and the amount reported in the statement. However, persons under the accrual method or with a fiscal year shall not be required to enclose with their tax returns a reconciliation between the expenses claimed and the amount reported in the statement in order to be able to claim the deduction, when such persons file together with their income tax returns the audited financial statement in accordance with the provisions of Section 1061.15(a) and file the Supplementary Information required in Section 1061.15(b).

(k)    Special Rule in the Case of Sales of Interest in a Partnership by a Nonresident Person.- In the case of sales of interest in a partnership by a nonresident person subject to the provisions of Section 1035.08, the buyer shall withhold fifteen percent (15%) on the amount of the gains on the sale that constitutes income from sources within Puerto Rico. In addition, the buyer shall meet requirements of subsections (b) and (j) of this Section. The buyer, however, shall be exempt from withholding the amount provided in this subsection when the seller obtains a withholding exemption under the requirements of paragraph (4) of subsection (a) of this Section, or may return the amounts thus withheld under this subsection when the seller meets the requirements of paragraph (3) of subsection (g) of this section."

Section 37.- Subsection (a) of Section 1062.09 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1062.09.- Income Tax Withheld at Source from Individuals, Estates, Corporations, Partnerships, and Trusts on Interest Paid or Credited on Deposits in

AAFAF_CONF_0007556

Interest-bearing Accounts, or on Bonds, Notes, or Other Obligations of Certain Corporations or Partnerships, and on Certain Mortgages and Distributions of Certain Variable Annuities.-

(a)     Withholding Requirements.- Except as otherwise provided in this Subchapter, in those cases in which the recipient of the interest exercises the option provided in subsection (b) of Section 1023.04 or in subsection (c) of Section 1023.05, the payer of interest described in subsection (a) of said Sections shall deduct and withhold a tax equal to ten percent (10%), as applicable, of the amount of non-exempt interest paid or credited. In the cases described in Section 1023.04, the payer of interest shall be required to withhold the aforesaid tax with the total interest paid or credited to the taxpayer as a basis. In cases of savings accounts or certificates registered in the name of a brokerage firm as nominee for one or more individuals, estates, or trusts covered by Section 1023.04(b)(3), the phrase 'payer of interest,' both in this subsection and in the subsequent subsections of this Section, shall refer to said brokerage firm. For taxable years beginning after December 31, 2018, the provisions of this Section shall apply to amounts paid in a lump sum under a variable annuity contract issued by an eligible insurance company as provided in Section 1023.08.

        ...

    ."
...

Section 38.- A new paragraph (1) is hereby added to subsection (a) of Section 1063.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1063.01.- Information at Source.-

(a)     Payments of Fixed or Determinable Income of Five Hundred Dollars ($500) or More.- All persons engaged in a trade or business in Puerto Rico, including lessees or mortgagors of personal or real property, fiduciaries, and employers who

AAFAF _CONF _0007557

made payments to individuals, trusts, or entities as such term is defined in Section 1010.05(c) for rents, salaries, wages, premiums, annuities, services, compensations, remunerations, emoluments, or other fixed or detenninab]e gains, profits, or income other than the payments described in Section 1063.05 or 1063.06 of this Subtitle, of five hundred dollars ($500) or more, or who made interest payments of five hundred dollars ($500) or more to individuals in any taxable year, except tax-exempt interest under this Subtitle, not including interests considered in Section 1031.02(a)(3), (or, in the case that such payments are made by the Government of Puerto Rico or any instrumentality or political subdivision thereof, the officials or employees who have information as to such payments and are required to make returns in regard thereto under the regulations provided hereinafter) shall render, on or before February 28 of the following year, a true and accurate return to the Secretary, under such regulations and in such form and manner and to such extent as may be prescribed by the Secretary, setting forth the amount of such gains, profits, and income, and the name, address, and account number of the recipient of such payments. Any person who, at the time of filing his income tax return has failed to file with the Department of the Treasury the information statements required in this subsection, may not claim such payments as operating expenses, in cases in which such payments constitute operating expenses of the payer. However, in the case of individuals under the accrual method or with a fiscal year may claim the deduction even though the amount is not shown in an information statement, insofar as such individuals file together with their return a reconciliation between the expense claimed and the amount reported in the statement. However, persons under the accrual method or with a fiscal year shall not be required to enclose with their tax returns a reconciliation between the expenses claimed and the amount reported in the statement in order to be able to claim the deduction, when such persons file together with their income tax returns the audited financial statement in accordance with the

AAFAF_CONF_0007558

provisions of Section 1061.15(a) and file the Supplementary Information required in Section 1061.15(b).

(b)     Provided, that in order to deduct the payment for purposes of determining the net income subject to alternate basic tax, in the case of individuals, or alternative minimum tax, in the case of corporations, all payments shall be reported in an information statement, even though the amount to be reported is less than five hundred dollars ($500).

(1)     The provisions of this subsection (a) notwithstanding, for taxable year 2019, the information statements required under this subsection may be filed on or before March 31, 2020.

(c)     …
          "
…

Section 39.- Subsection (a) of Section 1063.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.03.-Reports on Interest Payments.-

(a)     Any person that credits or makes payments of fifty dollars ($50) or more for interest as described in Sections 1023.04 or 1023.05 to any individual and is required under Section 1062.09 to withhold taxes on the payment of such interest, shall file a retun1 in accordance with the fom1s and regulations prescribed by the Secretary, specifying the total amount of interest paid or credited, the tax deducted and withheld, and the name, address, social security number or employer identification number issued by the U.S. Internal Revenue Service, and account number, if granted, of the person to whom the payment was made, or the tax withheld. Said return shall be filed on or before February 28 of the year following the calendar year in which the interest was paid or credited. Any person that at the time of filing the income tax return has not filed with the Department of the Treasury

AAFAF_CONF_0007559

the infom1ation statements required in this subsection shall not claim such payments as interest expenses. However, in the case of persons under the accrual method or with a fiscal year, they may claim the deduction, as shown in their accounting books, provided that a reconciliation between the claimed expenses and the amount reported in the retun1 is enclosed with the return. Persons under the accrual method or with a fiscal year, however, shall not be required to enclose with their tax returns a reconciliation between the expenses claimed and the amount reported in the statement in order to be able to claim the deduction, when such persons file together with their income tax returns the audited financial statement in accordance with the provisions of Section 1061.15(a) and file the Supplementary Information required in Section 1061.15(b).

Provided, that the provisions of this Section shall also apply to the payment of interest to any entity, as such term is defined in Section 1010.05(c), and trust, in effect for taxable years beginning after December 31, 2018.

(b)     ..."

Section 40.-Subsection(f)ofSection 1063.07 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.07.- Information Returns on Credit Extension Transactions - Approved Amount Transaction Statement.-

(a)     …

(b)     …

…

(f)     For credit application and extension of credit transactions approved after November 30, 2010, the Statement required under this section shall be filed by the financial business not later than the last day of the calendar month following the date in which the credit application or extension of credit was approved. The

AAFAF_CONF_0007560

Secretary shall review the information requirements provided for in subsection (b) of this section, and the applicable regulations, in order for financial businesses to automate compliance with this Statement.

(g) …
"
…

Section 41.- Subsection (a) of Section 1063.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1063.12.- Reports on Income Subject to Alternate Basic Tax.-

(a) Any person, in whatever capacity acting, that credits or makes payments of five hundred dollars ($500) or more to any individual for interests, rents, dividends, pensions, annuities, or any other item of income subject to alternate basic tax shall be required to report such payments to the Secretary and the individual, in such fom1, on the date, and in such manner as prescribed by the Secretary through regulations, circular letter, or any other general administrative detem1ination or communication. Any person that at the time of filing the income tax return has not filed with the Department of the Treasury the information statements required in this Section may not claim such payments as operating expenses. Provided, that in the case of persons under the accrual method or with a fiscal year, they may claim the deduction, as shown in their accounting books, provided, that a reconciliation between the expense claimed and the amount reported in the statement is enclosed with the tax returns. Persons under the accrual method or with a fiscal year, however, shall not be required to enclose with their tax returns a reconciliation between the expenses claimed and the amount reported in the statement in order to be able to claim the deduction, when such persons file together with their income tax returns the audited financial statement in accordance with the

AAFAF _CONF_0007561

provisions of Section 1061.15(a) and file the Supplementary Information required in Section 1061.15(b)."

Section 42.- Subsections (a) and (c) of Section 1063.16 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1063.16.- Information Statement on Advertisements, Insurance Premiums, Telecommunications Services, Inten1et Access, and Cable or Satellite Television.

(a)    For payments received after December 31, 2019, any entity engaged in providing telecommunication services, as such term is defined in subsection (kk) of Section 4010.01, without taking into account the exclusions described in subparagraphs (A), (B), (C), (E), (F), (H), (I), (J), and (K) of paragraph (2) of said subsection (kk), Internet services or cable or satellite TV services in Puerto Rico, or any combination thereof: or that receives payments for advertisements or insurance premiums, shall be required to file an annual information statement as provided in subsections (b) and (c) of this section to every commercial customer. In the case of bundles or when the systems of the entity are unable to segregate or assign the payments made by customers for the services rendered, the entity shall report in such annual information statement the total payments received from the customer under a category entitled 'Bundles.' The original of said information statement shall be furnished to the payer on or before February 28 of the year following the calendar year for which a copy of the statement shall be filed with the Secretary.

(I)    Every taxpayer that uses in his trade or business the services described in subsection (a) and makes payments under a residential account, and wishes to claim a deduction for purposes of the alternate basic tax under Section 1021.02, and wishes not to submit a Report on Agreed Upon Procedures or audited financial statements to support the expenditures, or any other document allowed by

AAFAF_CONF_0007562

law or regulation, shall request from the entities providing the services described in subsection (a) an annual information statement, as provided in subsections (b) and (c) of this section. Any request submitted by a residential customer after January 31 of the year following the payment shall not be required to be furnished to the payer, on or before February 28 of the following calendar year for which the copy of the statement must be filed with the Secretary. Such information statement, however, shall be furnished within forty-five (45) days after the request date. Provided, that the penalties described in Section 6041.11 of this Code shall not apply to information statements requested under this paragraph.

(2)     The Secretary may, through a general publication, exempt from compliance with the provisions of this section only those payments received for which the provider does not usually retains the information required under subsection (b).

(3)     Every taxpayer may, at his option, file an annual information statement to report the payments made for the services described in this subsection (a), as deemed necessary. Said optional information statement shall be filed not later than on the due date of the income tax return, including the extension. Provided, further, that the penalties imposed under Section 6041.11 of this Code shall not apply to the information statements that have not been filed under this paragraph by the taxpayer who paid for the service included in the statement.

(4)     For taxable years beginning after December 31, 2018, but before January 1, 2020, if a taxpayer wishes to claim a deduction for purposes of determining the net income subject to the alternate basic tax under Section 1021.02 or the alternative minimum tax under Section 1022.04, for the payments made on account of the services described in subsection (a), and wishes not to submit a Report on Agreed Upon Procedures or audited financial statements to support the expenditures, or any other document allowed by law or regulation, said taxpayer

AAFAF_CONF_0007563

may file, at his option, an annual information statement with the Secretary, in accordance with subsection (b) and (c) of this section on or before the due date of the income tax retun1, including the extension. The entities providing the services described in subsection (a) shall be required to provide, whether electronically or by mail, to their residential or commercial customers, their name, address, and employer identification number on or before March 31, 2020. Provided, further, that the penalties imposed under Section 6041.11 of this Codes shall not apply to the information statements that were not filed under this paragraph by the taxpayer.

(b)      …

(c)      The infom1ation statement required in this Section shall be filed with both the payer and the Secretary electronically or by mail, as prescribed by the Secretary through regulations, administrative detem1ination, circular letter, or general information bulletin."

Section 43.- A new subparagraph (D) is hereby added to paragraph (11) of subsection (a) of Section 1071.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1071.02.- Income and Credits of Partners.-

(a)      …

(1)      …

…

(11)    other income, gain, loss, deduction, or credit items, as prescribed by the Secretary through regulations, including:

(A)      …

(B)      …

(C)      …

(D)      The provisions of this paragraph (11) notwithstanding, a partner shall not be required to take into consideration separately the items provided

AAFAF_CONF_0007564

in clause (ii) of subparagraph (A) or clause (ii) of subparagraph (B) of this paragraph (11), provided that the partnership submits together with its income tax return the audited financial statement in accordance with the provisions of Section 1061.15(a) together with the Supplementary Information required under Section 1061.15(b) or submits the Report on Agreed Upon Procedures or the Compliance Attestation as provided in Section 1021.02. Provided, that for taxable years beginning after December 31, 2019, in the case of partnerships whose volume of business is less than one million dollars ($1,000,000), to meet the requirement established in this subsection, they may opt to file the return enclosed with a due diligence checklist, furnished by that the Department of the Treasury, which shall be sworn by the Qualified Tax Return Preparer/Specialist who meets the requirements provided in Section 6074.01 of this Code, in lieu of the Report on Agreed Upon Procedures or the Compliance Attestation prepared by the CPA.

> …
>    "
> …

Section 44.- Subsection (a) is hereby amended, a new subsection (b) is hereby added, and former subsection (b) is hereby renumbered as (c) of Section 1077.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1077.02.- Reorganizations.

(a)    The provisions of Section 1034.04(b)(3) and (4) shall apply to transactions between a partnership and a special partnership or a partnership and a corporation of individuals; provided, that the reorganization definition provided in Section 1034.04(g) is complied with, if both entities are corporations.

(b)    The liquidation of a special partnership or corporation of individuals with a subsequent contribution of all assets and liabilities of a new or existing partnership shall be treated as an exempt exchange of said assets and liabilities of

AAFAF_CONF_0007565

the special partnership or corporation of individuals in exchange for a partnership interest."

(c)      …"

Section 45.- Paragraphs (1) and (3) of subsection (b) of Section 1081.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1081.01.- Employee Trusts

(a)      …

(b)      Taxability of Beneficiary

    (1)      …

        (A)   …

        …

        (D)   …

        (E)   Distributions to Puerto Rico Nonresidents.- For taxable years beginning after December 31, 2018, the provisions of subparagraphs (A), (B), (C) and (D) of paragraph (1) of subsection (b) of this Section shall not apply to any distribution of retirement income, as defined in Section 114 of Title 4 of the United States Code, as amended, under a qualified plan under the U.S. Inten1a] Revenue Code, and whose trust was formed in a state of the United States of America, by a Puerto Rico nonresident, whether a participant or a beneficiary, as the case may be, if at the time of the distribution such individual is not a resident of Puerto Rico. Said distribution to a nonresident individual shall not be subject to taxation under this Code. The Secretary shall prescribe through regulation or determination of general circulation, the documents that the Puerto Rico nonresident participant or beneficiary shall be required to submit for the distributions to be exempt from taxation under this Code. The Secretary shall prescribe through regulations, administrative determination, circular letter, or general information bulletin, the

AAFAF_CONF_0007566

documents that the Puerto Rico nonresident participant or beneficiary shall be required to submit for the distributions to be exempt from taxation under this Code.

    (2)   …

    (3)   Requirement to Deduct and Withhold.-

        (A)   …

        (B)   Other Distributions.- Any person, in whatever capacity acting, who makes distributions or payments other than total distributions or nontaxable loans to participants payable with respect to any participant or beneficiary, such as partial distributions made after the participant's separation from service and withdrawals made before separation from service, shall deduct and withhold from said distributions or payments an amount equal to ten percent (10%) of the amount thereof in excess of the portion of said distributions or payments corresponding to amounts contributed by the participant to the plan that have already been paid by the latter. The foregoing notwithstanding, in the case of distributions made to a participant or beneficiary in the form of an annuity or periodical payments to a beneficiary as a result of separation from employment, there shall be deducted and withheld ten percent (10%) of the amount of the distributions paid during the taxable year in excess of the contributions made by the participant to the plan that have been paid by him, increased by:

| Taxable Year | Amount not subject to withholding | |
|---|---|---|
| | Pensioners younger than the age of 60 | Pensioners age 60 or older |
| 2011 | $19,500 | $23,500 |
| 2012 | $21,000 | $25,000 |
| 2013 | $23,500 | $27,500 |
| 2014 | $26,500 | $30,500 |

AAFAF _CONF _0007567

| | | |
|---|---|---|
| 2015 and thereafter | $31,000 | $35,000 |

(C)    For purposes of this Section, the term 'periodical payments,' shall have the same meaning, as defined in Section 103 l.02(a)(l3)(D).

(D)    Other Amounts Not Subject to Withholding.- The provisions of subparagraphs (A) and (B) of this paragraph (3) shall not apply to total or partial distributions that, at the option of the participant, are contributed to an individual retirement account or annuity under the provisions of Section 1081.02, to a nondeductible individual retirement account under the provisions of Section 1081.03, or to a qualified retirement plan under the provisions of this Section for the benefit of said participant or beneficiary, in accordance with subparagraph (2)(A) of this subsection.

(E)    For purposes of this subsection (b), any loans made by a plan to a participant or beneficiary that fail to meet the following requirements shall be deemed to be a taxable distribution to the participant or beneficiary:

(i)    The loan, according to its terms and in its operation, must be repaid by means of partial payments substantially similar at least quarterly; and

(ii)    the loan, according to its terms and in its operation, must be repaid within a period not to exceed five (5) years or, in the case of loans taken by the participant to finance the purchase of his principal residence, the period provided in the plan.

…
      "
…

Section 46.- Paragraph (1) of subsection (t) of Section 1081.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

AAFAF_CONF_0007568

"Section 1081.02.- Individual Retirement Accounts

(a)      ...

…

(f)      Reports.-

(1)      Every trustee of an individual retirement account created under the terms of subsection (a), and every life insurance company or cooperative that issues an endowment contract or an individual retirement annuity under the terms of subsection (b) shall prepare reports to the Secretary and to the individuals for whom the account, endowment contract, or annuity is maintained. Such reports shall be prepared with respect to the contributions, distributions, and such other matters as the Secretary may require through regulations. The reports required in accordance with this subsection shall be filed on such date and manner as required in said regulations. Provided, that for taxable years beginning after December 31, 2018, the reports on the amounts contributed and the amounts distributed during a calendar year shall be reported to the individual and a copy thereof shall be filed electronically with the Department of the Treasury. Such information statements shall be filed with the Department and sent to individuals not later than February 28 of the year following that in which such distributions were made, and not later than November 30 of the taxable year in which such contribution shall be claimed as a deduction by the taxpayer.

(2)      ...
                "
...

Section 47.-Paragraph (1) of subsection (e) of Section 1081.05 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1081.05.- Education Savings Account.-

(a)      …

AAFAF_CONF_0007569

…

(e)     Reports. -

(1)     Every trustee of an education savings account created under the terms of subsection (a), and every life insurance company or cooperative that issues an endowment contract or an education savings annuity under the term1s of subsection (b) shall prepare reports to the Secretary and to the individuals for whom the account, endowment contract, or annuity is maintained. Such reports shall be prepared with respect to the contributions, distributions, and such other matters as the Secretary may require through regulations. The reports required in accordance with this subsection shall be filed on such date and manner as required in said regulations. Provided, that for taxable years beginning after December 31, 2018, the reports on the amounts contributed and the amounts distributed during a calendar year shall be reported to the individual and a copy thereof shall be filed electronically with the Department of the Treasury. Such information statements shall be filed with the Department and sent to individuals not later than February 28 of the year following that in which such distributions were made, and not later than November 30 of the taxable year in which such contribution shall be claimed as a deduction by the taxpayer.

"

…

Section 48.- Subparagraphs (B) and (C) are hereby amended, a new subparagraph (D) is hereby added to paragraph (5), and paragraph (6) of subsection (a) of Section 1082.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1082.01.- Definition of Real Estate Investment Trust.-

(a)     …

(1)     …

…

AAFAF _CONF _0007570

(5)     …

(A)     …

(B)     the shareholders, partners, members, or holders of certificates of beneficial interest in any entity created or organized under the laws of the United Statas of America or of any State of the United States of America and that during the taxable year qualifies as a registered investment company or real estate investment trust under the United States Internal Revenue Code of 1986, as amended;

(C)     the shareholders, partners, members, or holders of certificates of beneficial interest in any entity that, by reason of an election or legal or regulatory provision under the United States Internal Revenue Code of 1986, as amended, or similar provision of a foreign country, is treated as a disregarded entity or partnership, or whose income and expenditures are attributed to its members for U.S. or foreign country income tax purposes; and

(D)     the shareholders, partners, members or holders of certificates of beneficial interest in any entity created or organized under the laws of a foreign country:

(i)     by reason of an election or legal or regulatory provision under the United States Inten1al Revenue Code of 1986, as amended, or similar provision of a foreign country, that is treated as a corporation for U.S. or foreign country income tax purposes;

(ii)     is not subject to income tax in the country where it was created or organized; and

(iii)     is not engaged in the active conduct of a trade or business beyond the acquisition, holding, or sale of investments, and the collection and distribution of income, gains, and profits therefrom, for the benefit of its

AAFAF _CONF _0007571

shareholders, partners, members, or holders of certificates of beneficial interest in said entity.

(6)   at no time during the last half of its taxable year more than fifty percent (50%) of the total value of its shares issued and outstanding are owned (based on the tax assessment rules established by Section 1033.17(b)(2)) by or for not more than five (5) individuals; however, for purposes of this paragraph, the individuals described in subparagraphs (A), (B), (C), and (D) of paragraph (5) of this subsection shall be treated as shareholders of the real estate investment trust;

…

   "

…

Section 49.- Subparagraph (A) of paragraph (3) of subsection (d) of Section 1082.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1082.02.- Taxation of Real Estate Investment Trusts and Beneficiaries.-

(a)   …

…

(d)   Taxation of Stockholders or Beneficiaries of a Real Estate Investment Trust.-

(1)   …

…

(3)   Foreign individuals and foreign corporations and partnerships.-

(A)   Every nonresident alien individual and any foreign corporation or partnership not engaged in trade or business in Puerto Rico subject to taxation shall pay taxes at a rate of ten percent (10%), in lieu of any other tax imposed by this subtitle, on the amount of taxable dividends, as defined in subparagraph (C) of paragraph (4) of this subsection. Provided, that in the case of the entities described

AAFAF _CONF_0007572

in Section 1082.0l(a)(S)(D), the tax provided in this subparagraph (A) shall be imposed on the shareholders, partners, members, or holders of certificates of beneficial interest in the entity or nonentity.

   (B) ...

…
 "
…

Section 50.- A paragraph (10) is hereby added to subsection (a), and a subsection (h) is hereby added to Section 1101.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1101.01.- Tax Exemption on Corporations and Nonprofit Organizations.-

 (a) ...

   (1) …

   …

   (10) Subsidiary entities that are essential to the operations of other nonprofit entities. - Subsidiary entities:

    (A) that are affiliates, related parties, or are under the control and close supervision of one or more parent entities;

    (B) when said parent entities are among those described in paragraphs (1) and (2) of this subsection and meet the rest of the requirements of this section;

    (C) the subsidiary entities solely carry out activities that are essential to the parent entities (including management, administrative, and fund investment services for the affiliated entity, among others); and

    (D) provided that the activities carried out by the subsidiary entities may have been carried out by the parent entities without failing to meet the requirements of this section.

AAFAF _CONF_0007573

(b)     …

…

(g)     Application for Exemption and Compliance Attestation.- Every nonprofit entity shall file an application with the Secretary for the approval of the tax exemption under this Section. The Secretary may require a Report on Agreed Upon Procedures or a Compliance Attestation issued by the Certified Public Accountant with a valid license in Puerto Rico attesting that the entity meets the requirements to be granted the requested exemption. In these cases, the application shall be deemed to be approved in thirty (30) days unless the Secretary denies it before such period elapses. The Secretary is hereby empowered to establish through regulations, administrative determination, circular letter, or general information bulletin the conditions under which the Compliance Attestation shall apply and the procedures to which the Certified Public Accountant shall adhere in order to issue such report.

(h)     The Secretary is hereby empowered to, upon request of the nonprofit entity, evaluate the application and grant the exemption when the petitioning entity has been recognized as a nonprofit entity under Section 501 (c)(3) of the U.S. Internal Revenue Code, even when it does not meet the definition of subsection (a) of this section; provided, that the Secretary deems it necessary and in the best interest of Puerto Rico."

Section 51.-  Paragraph (1) of subsection (a) of Section 1102.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1102.01.- Imposition of Tax on Unrelated Business Income of Charitable, Etc. Organizations, and with other Purposes.-

(a)     Charitable, Etc., Organizations Taxable at Corporation Rates. -

AAFAF _CONF _0007574

(1)    Imposition of t a x .- There shall be imposed, for each taxable year, on the unrelated business net income (as defined in Section 1102.02) of every organization described in paragraph (2), a normal tax computed in accordance with the provisions of Section 1022.01, and a surtax (computed at the rates and as provided in Section 1022.02), or an alternative minimum tax (computed at the rates and as provided in Section 1022.03) on the unrelated business net income in excess of the deductions provided in Sections 1022.02(d) or 1033.19. In computing the normal tax, the surtax, or the minimum tax for purposes of this paragraph, the term 'net income subject to normal tax,' 'net income subject to surtax,' or 'alternative minimum net income,' as used in Sections 1022.01, 1022.02, or 1022.03, shall be read as 'unrelated business net income'."

…
    "
…

Section 52.- Subparagraph (C) is hereby added to paragraph (11) of subsection (a) of Section 1114.06 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1114.06. - Inclusion of Special Partnership Income

(a)    …

    (1)    …

    …

    (11)    other income, gain, loss, deduction, or credit items, as provided by the Secretary through regulations, including:

        (A)    …

        (B)    …

        (C)    The provisions of this paragraph (11) notwithstanding, a partner shall not have to consider separately the items provided in clause (ii) of subparagraph (A) or the net income of the special partnership determined in

AAFAF _CONF _0007575

accordance with Section 1021.02(a)(2), provided that the special partnership files together with the income tax return the audited financial statements in accordance with Section 1061.15(a) together with the Supplementary Infonnation required in Section 1061.15(b) or submits the Report on Agreed Upon Procedures or Compliance Attestation as provided in Section 1021.02. Provided, that for taxable years beginning after December 31, 2019, in the case of partnerships whose volume of business is less than one million dollars ($1,000,000), in order to meet the requirement established in this subsection, they may opt to enclose with their return a due diligence checklist provided by the Department of the Treasury, which shall be sworn by a Qualified Tax Return Preparer/Specialist who meets the requirements provided in Section 6074.01 of this Code, in lieu of the Report on Agreed Upon Procedures or Compliance Attestation prepared by the CPA.

The provisions of this subsection shall not be applicable to a partner who is subject to the tax imposed under Sections 1091.0l(a) or 1092.0l(a). For purposes of Sections 1091.0l(a) and 1092.0l(a), the distributive share of the partner on the net income of the special partnership shall be the total taxable amount of paragraphs (1) through (5) and (9) through (11) of subsection (a).

(b)     …
   "
…

Section 53.- Paragraph (11) of subsection (b) of Section 1115.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 1115.04.- Pass-through of Items to Shareholders of a Corporation of Individuals

(a)     …

AAFAF _CONF _0007576

(b)    Income, Loss, Deduction, or Credit Items.- Each shareholder shall consider separately (subject to conditions and limitations provided by this subtitle) its distributive share in the corporation of individuals, with respect to:

(1)    …

…

(11)    other income, gain, loss, deduction, or credit items, as prescribed by the Secretary through regulations, including the distributive share of each partner in: the gross income of the corporation of individuals, as defined in subsection (g) of Section 1023 .10. Provided, that a partner shall not have to consider separately the net income of the corporation of individuals determined in accordance with Section 1021.02(a)(2), provided that the corporation of individuals files together with the income tax return the audited financial statements in accordance with Section 1061.15(a) together with the Supplementary Information required in Section 1061.15(b), or files the Report on Agreed Upon Procedures or Compliance Attestation as provided in Section 1021.02 of this Code. Provided, that for taxable years beginning after December 31, 2019, in the case of partnerships whose volume of business is less than one million dollars ($1,000,000), in order to meet the requirement established in this subsection, they may opt to enclose with their return a due diligence checklist provided by the Department of the Treasury, which shall be sworn by a Qualified Tax Return Preparer/Specialist who meets the requirements provided in Section 6074.01 of this Code, in lieu of the Report on Agreed Upon Procedures or Compliance Attestation prepared by the CPA.

The provisions of this subsection shall not be applicable to a shareholder who is subject to the tax imposed under Section 1091.0l(a), in accordance with subsection (i) of this section. For purposes of Section 1091.0l(a), the distributive share of the shareholder on the net income of the corporation of

AAFAF _CONF_0007577

individuals shall be the total amount of paragraphs (1) through (5) and (9) through (11) of subsection (a).

(c)      …

"

…

Section 54.- Section 1116.19 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1116.19.- Public-Private Partnership Act

Public-Private Partnership Act.- The tax benefits received under Act No. 29-2009, as amended, known as the 'Public-Private Partnership Act,' or any similar previous or successor law."

Section 55.- Section 1116.20 is hereby added to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 1116.20.- Puerto Rico Incentives Code

The tax benefits received under Act No. 60-2019, as amended, known as the 'Puerto Rico Incentives Code,' or any similar previous or successor law."

Section 56.- Section 4010.01 Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4010.01.- General Definitions

For purposes of this Subtitle, the following terms, words, and phrases shall have the general meaning expressed below, except when the context clearly indicates otherwise:

(a)      Food and Food Ingredients.- Substances, whether they are liquid, concentrated, solid, frozen, $d_{ry}$, or dehydrated, that are sold for human consumption, because of their flavor or nutritional value. Food and food ingredients exclude the following:

(1)      …

AAFAF_CONF_0007578

…

(6)     carbonated beverages;

(7)     prepared foods; and

(8)     any compound, product, derivative, blend, or preparation of all parts of any substance, whose use is authorized or permitted under Act No. 42-2017, as amended, known as the 'Act to Provide for the Study, Development, and Research of Cannabis for Innovation, and the Applicable Rules and Limitations,' (MEDICAL CANNABIS Act), and the regulation thereof.

…

(h)     Merchant. - Every person engaged in the business of selling taxable items in Puerto Rico, including any wholesaler. For purposes of this Section, a person shall be deemed to be engaged in the business of selling taxable items in Puerto Rico when:

(1)     …

…

(11)   the person is a marketplace facilitator or a marketplace seller who sells or sends, and causes to be sent, tangible personal property from any state or foreign country to any person in Puerto Rico, through a link on a website, for use, consumption, or distribution in Puerto Rico, or for storage to be used and consumed in Puerto Rico.

…

(ll)     Designated Professional Services.- Means legal services and the following professional services, as regulated by their respective Boards of Examiners attached to the Department of State of Puerto Rico, if applicable:

(1)     …

…

(11)   …

AAFAF_CONF_0007579

(12)   The provisions of this subsection notwithstanding, designated professional services shall not be subject to the tax rate provided in Sections 4210.0l(c) and 4210.02(c) of this Code when:

(A)   …

…

(E)   Designated professional services rendered to condominium residents' association or councils of co-owners or homeowners association, as such term is defined in subparagraph (A) of paragraph (5) of subsection (a) of Section 1101.01 of this Code, for mutual benefit of its residents, as well as services rendered to housing cooperatives organized under Act No. 239-2004, as amended, known as the 'General Cooperative Associations Act of 2004,' and as defined in subparagraph (A) of paragraph (7) of subsection (a) of Section 1101.01 of this Code;

…

...

(bbb)   Business to Business Services.- As of October 1, 2015, services rendered to a person engaged in trade or business or income-producing activities, including services rendered by a nonresident person to a person located in Puerto Rico, regardless of the place where the service was rendered, insofar as such service is directly or indirectly related to operations or activities carried out in Puerto Rico by such person; except for the following:

(1)   …

…

(7)   Services rendered by persons whose annual volume of business does not exceed fifty thousand dollars ($50,000). If a person belongs to a controlled group, as such term is defined in Section 1010.04, the volume of business of said person shall be determined taking into account the volume of business of all

AAFAF_CONF_0007580

members of the controlled group. For purposes of this subsection, a partnership, special partnership, and corporation of individuals shall be treated as a corporation under Section 1010.04 to determine if it is a member of a controlled group. In the case of a person who is an individual, the volume of business shall be determined taking into account the volume of business of all his trade or business or income-producing activities;

(A)   Provided, that from March 1, 2019 to June 30, 2020, the volume of business established in this subsection shall be two thousand (200,000); and

(B)   Provided, that from July 1, 2020, the volume of business established in this subsection shall be three hundred thousand dollars ($300,000); and

(C)   To determine whether the volume of business of a merchant does not exceed the amount established in subparagraphs (A) or (B) of this paragraph, the aggregated volume of business generated for the taxable year immediately preceding shall be taken into account;

(8)   Services rendered to condominium residents' associations or councils of co-owners or homeowners' associations, as such term is defined in subparagraph (A) of paragraph (5) of subsection (a) of Section 1101.01 of this Code, for mutual benefit of its residents, as well as services rendered to housing cooperatives organized under Act No. 239-2004, as amended, known as the 'General Cooperative Associations Act of 2004,' and as defined in subparagraph (A) of paragraph (7) of subsection (a) of Section 1101.01 of this Code;

(9)   …

(10)   …

…

(ccc)   …

AAFAF_CONF_0007581

(ddd) Marketplace Facilitator.- Means a person, including an affiliated entity, that facilitates the sale of tangible personal property, specific digital products, or taxable services that meet the requirements of paragraphs (1) and (2) listed below:

(1)    The person engages directly or indirectly in the any of the following activities:

(A)    Advertising, listing, or promoting the sale of tangible personal property, specific digital products, or services on behalf of a 'marketplace seller,' as such term is defined in subsection (eee) of this section, through a marketplace owned, operated, or controlled by the facilitator.

(B)    Facilitating the sale of products from a seller through a marketplace or communicating an offer or acceptance of a retail sale of tangible personal property, specific digital services, or taxable services between a purchaser and a marketplace seller through a marketplace that may include a store, a booth, a catalog, a website, or other similar marketplace.

(C)    Owning, leasing, listing, or operating the infrastructure, whether electronic or physical, or any property, process, method, copyrights, trademarks, or license that brings purchasers and marketplace sellers together in order to carry out retail sales of tangible personal property, specific digital products, or taxable services.

(D)    Furnishing or facilitating a marketplace to cmTy out the retail sale of tangible personal property, specific digital products, or taxable services regardless of who has the control or ownership of said tangible personal property, specific digital products, or taxable services object of the retail sale.

(E)    Providing software development or research activities and development relating to any of the activities described in this paragraph, if said software or research activities and development are directly related to the physical or electronic marketplace fun1ished by a marketplace facilitator.

AAFAF_CONF_0007582

(F)     Providing or offering fulfillment or storage services to a marketplace seller.

(G)     Setting the prices for the sale of the tangible personal property, specific digital products, or taxable services by the marketplace seller.

(H)     Rendering or offering services to a client or clients of marketplace sellers, or accepting or assisting with taking orders, retun1s, or exchanges of tangible personal property, specific digital products, or taxable services of a marketplace seller.

(2)     The person engages directly or indirectly in any of the following activities:

(A)     Collecting sales and use tax on the retail sale of tangible personal property, specific digital products, or taxable services.

(B)     Rendering payment processing services for the retail sale of tangible personal property, specific digital products, or taxable services.

(C)     Billing, collecting, or otherwise receiving sales charges, listing fees, refen-al fees, closing fees, fees for introducing or making available tangible personal property, specific digital products, or taxable services in a marketplace, or other consideration for facilitating the retail sale of tangible personal property, specific digital products, or taxable services, regardless of who controls or owns the tangible personal property, specific digital products, or taxable services object of the sale.

(D)     Under the terms and conditions, agreements, or arrangements with a third party, collecting payment in connection with the retail sale of tangible personal property, specific digital products, or taxable services from a buyer, and transmitting said payment to the marketplace seller, regardless of whether the person collecting and transmitting said payment receives compensation or other consideration in exchange for the service.

AAFAF_CONF_0007583

(E)    Providing a virtual cun-ency that purchasers are allowed to use to purchase tangible personal property, specific digital products, or taxable servIces.

(eee)  Marketplace Seller.- Means a seller that engages in retail sales through a physical or electronic marketplace that is owned, operated, or controlled by a marketplace facilitator, even if such seller was not required to collect and pay the sales and use tax if the sales were not can-ied out through said marketplace."

Section 57.- Paragraph (5) of subsection (a) of Section 4020.05 of Act No.  1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4020.05.- Collection of the Tax

(a)    General Rule.- Any merchant engaged in any business where taxable items subject to taxation under this Subtitle are sold shall be required to collect the sales taxes as withholding agent, unless:

(1)    …

…

(5)    Any merchant engaged in the business of mail order sales, as defined in subsection (d) of Section 4020.08 of this Code, whose only nexus in Puerto Rico is the buyer who is a Puerto Rico resident or a person engaged in trade or business in Puerto Rico, and that, pursuant to subsection (d) of Section 4060.01, is considered a non-withholding agent, shall not be required to collect the taxes imposed under this Subtitle. Provided, that any merchant classified as non-withholding agent may voluntarily request to become a withholding agent, in which case, said merchant shall be required to collect the taxes imposed under this Subtitle and shall be subject to the terms and conditions imposed by the Secretary through an agreement between the parties according to the merchant's situation. The foregoing notwithstanding, any mail-order sale conducted after December 31, 2019,

AAFAF_CONF_0007584

where a marketplace facilitator engages in at least one of the activities listed in paragraphs (1) and (2) of subsection (ddd) of Section 4010.01, shall be considered as a taxable transaction and, therefore, said marketplace facilitator shall be considered as a withholding agent and shall be required to collect the tax imposed under this Subtitle on behalf of the seller. The Secretary shall prescribe through regulations, circular letter, or administrative determination the foml and manner in which fulfillment of this new requirement shall be detennined.

…"

Section 58.- Subsections (a), (d), and (e) of Section 4020.08 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 4020.08.- Collection of Sales Tax on Mail Order Sales.

(a)      Any person engaged in the business of making mail-order sales, as defined in subsection (d) of this Section, whose only nexus in Puerto Rico is the buyer who is a Puerto Rico resident or a person engaged in trade or business in Puerto Rico, shall be subject to the requirements of this Subtitle; provided, that no payment or charge shall be imposed on said merchant for engaging in any of the activities established in subsection (d) of this Section. The foregoing notwithstanding, for transactions conducted as of January 1, 2020, marketplace facilitators engaged in at least one of the activities listed in paragraphs (1) and (2) of subsection (ddd) of Section 4010.01, shall be responsible for collecting and remitting the tax imposed under this Subtitle.

(b)      ...

...

(d)      For purposes of this Subtitle, the term "mail order" means the sale of tangible personal property, ordered by any medium, including but not limited to, mail, catalogue, websites, e-commerce, Internet, or other communications media,

AAFAF _CONF_0007585

whether or not electronic, to a person who receives the order outside of Puerto Rico and ships the tangible personal property or causes the tangible personal property to be shipped, whether or not by mail, from any place outside of Puerto Rico, to a person in Puerto Rico, whether or not such person ordered the tangible personal property. Likewise, this term shall also include any sale of tangible personal property, specific digital products, or taxable services carried out by a marketplace seller through a marketplace facilitator engaged in at least one of the activities listed in paragraphs (1) and (2) of subsection (ddd) of Section 4010.01.

(e)     A merchant described in paragraphs (6) or (9) of subsection (h) of Section 4010.01, engaged in mail-order sales and whose only nexus in Puerto Rico is the buyer who is a Puerto Rico resident or a person engaged in trade or business in Puerto Rico shall be considered as a non-withholding agent. However, any person engaged in the business of mail order sales and deemed to be engaged in the sale of taxable items in Puerto Rico in accordance with paragraphs (1) through (5), (7), (8) or (10) of subsection (h) of Section 4010.01 of this Code, shall be deemed to be a merchant subject to the requirement of this Subtitle. Provided, further, that as of January 1, 2020, mail-order sales shall be deemed to be subject to the collection of the tax imposed under this Subtitle; provided, that if such sales are conducted through a marketplace facilitator, as such term is defined in subsection (ddd) of Section 4010.01 of this Code. In this case, the marketplace facilitator shall be considered as a withholding agent and be required to remit the tax imposed under this Subtitle.

(f)     ..."

Section 59.- Subsection (d) is hereby added to Section 4030.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 4030.12.- Exemption on Prescription Medications

AAFAF_CONF_0007586

(a)      …

(b)      …

(c)      ...

(d)      Any substance, the use of which is authorized or permitted under Act No. 42-2017, as amended, known as the "Act to Provide for the Study, Development, and Research of Cannabis for Innovation and the Applicable Rules and Limitations," (MEDICAL CANNABIS Act), and the regulations thereunder, is excluded from the exemption provided herein.

Section 60.- Subsection (b) of Section 4030.19 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4030.19.- Exemptions on Machinery, Surgical Material, Supplies, Items, Equipment, and Technology Used in the Rendering of Healthcare Services

(a)      …

(b)      Any health service facility that enjoys tax exemption benefits under the provisions of Section 1101.01 (a)(2), granted to nonprofit entities, shall be exempt from the sales and use tax imposed under this Subtitle on the purchase or rental of items acquired to be used exclusively by the facility, such as machinery, surgical material, supplies, items, equipment, and technology used exclusively in rendering healthcare services in the process of diagnosing and treating diseases in human beings.

(c)      …
      "
…

Section 61.-Subsection (c) is hereby added to Section 4041.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 4041.01. - Accounting Method.

AAFAF _CONF_0007587

(a)     …

(b)     …

(c)     Effective for taxable events occun-ing after June 30, 2020, merchants engaged in the construction industry in the construction of commercial, industrial or residential projects may use the cash accounting method for purposes of this Subtitle."

Section 62.- Subsection (a) of Section 4041.02 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4041.02. - I m p o r t Declaration and Monthly Import Duty and Sales and Use Tax Returns.

(a)     Import Declaration.- Any person that imports into Puerto Rico tangible personal property shall file a detailed use tax declaration for any tangible personal property introduced from abroad, within the time, in the fom1 and manner, and with such information as prescribed by the Secretary, as a prerequisite to release the imported tangible personal property, or to report and pay the use tax as provided in Section 4042.03(a)(l)(B)(i)(III). Provided, that this declaration shall include the portion of the municipal use tax to be collected by the Secretary under Section 6080.14 of this Code, in relation to any tangible personal property introduced from abroad; therefore, the filing of an additional declaration for purposes of the Municipal Sales and Use Tax shall not be necessary. Provided, further, that the Secretary shall allow persons to claim in the Import Declaration, the sales tax collected by the seller, including a person considered as a Non-withholding Agent, in accordance with Section 4020.08, that has entered into an agreement with the Secretary to collect said tax.

(b)     …
          "
…

AAFAF_CONF_0007588

Section 63.- Paragraphs (25), (55), and (57) of subsection (a) of Section 5001.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 5001.01.-Definitions

(a)     For purposes of this Subtitle, the following terms shall have the general meaning expressed below, but the same may be amended through regulations, detem1ined by the Secretary from time to time in view of the changes in the liquor industry:

(1)     …

…

(25)   Craft Distilled Spirits.- Any distilled spirit obtained by fermenting and distilling any product derived from sugarcane, excluding wines fortified with sugarcane alcohol, when the total production of the manufacturer or distiller (inside or outside of Puerto Rico) for the previous calendar year is less than three hundred thousand (300,000) wine gallons, considering all sugarcane byproducts, regardless of the percentage of alcohol by volume thereof Spirits shall be deemed to be derived from sugar cane only if:

(A)     …

(B)     …

…

(55)   Tropical Fruit Wine.- The product of the regular alcoholic fermentation of citrus fruit, pineapple, acerola, tomato, gooseberry, and passion fruit, and the maceration of guava, mango, banana, papaya, soursop, and other fruits commonly produced in tropical zones and whose alcoholic content does not exceed twenty-four percent (24%) of alcohol by volume. In addition, to qualify under this category, the manufacturer's total production of wine (inside and outside of Puerto

AAFAF_CONF_0007589

Rico) for the previous calendar year, shall be less than three million (3,000,000) wine gallons. This product may be offered either in its simple or carbonated state.

(56)   …

(57)   Substandard Wine. -   Any wine manufactured in its country of origin using sugar, water, sugarcane alcohol, or any other substance in excess of what is needed to correct the natural deficiencies of the fruit, and whose alcohol content by fermentation has been complemented by fortifying it exclusively with distilled spirits obtained from the fermentation or distillation of products derived from sugar cane or any substitute thereof. The product may have a carbonation level of up to zero point three hundred ninety-two (0.392) grams in one hundred (100) cubic centimeters of wine. To convert wines manufactured under other categories into substandard wines by merely adding sugar, water, or sugarcane alcohol shall not be permitted. In addition, to qualify under this category, the manufacturer's total production of wine (inside and outside of Puerto Rico) for the previous calendar year, shall be less than three million (3,000,000) wine gallons.

…"

Section 64.- Subsection (a) of Section 6030.25 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6030.25.-  Application of Payments

(a)      General Rule.- When a taxpayer makes payments to the Secretary, and such taxpayer owes taxes, deficiencies, interests, surcharges, or penalties for one or various taxable periods, the Secretary shall apply such payments to the oldest tax assessment debt due strictly in order of expiration. If the amounts owed for a specific taxable period exceed the amount of the partial payment, the Secretary shall apply said partial payment to the principal, interest, penalty, and surcharge (in said order), until the amount owed for said period is paid in full.

AAFAF_CONF_0007590

(b)      …
                        "
(c)      …

Section 65.- Subsection (c) is hereby added to Section 6041.11 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"Section 6041.11.- Penalty for Failure to File Certain Information Retun1s, Reconciliation Statements and Retun1s, Transaction Reports, Securities Broker or Trader Statements.-.

(a)      …

(b)      …

(c)      The penalties imposed under this section shall not apply in the cases provided below, even when these documents are filed after the due date therefor:

(1)      Information returns described in Section 1063.01, when the amount reported in less than five hundred dollars ($500), or

(2)      An item for which the filing of an information return is not required under this Code, but that is voluntarily reported by the taxpayer only to claim a deduction to determine the Alternate Basic Tax under Section 1021.02 or the Alternative Minimum Tax under Section 1022.03, without filing a Report on Agreed Upon Procedures or Compliance Attestation prepared by a Certified Public Accountant (CPA) holding a valid license in Puerto Rico, such as:

(A)      Services rendered outside of Puerto Rico by nonresidents,

(B)      Professional Association Membership Dues,

(C)      Water and sewer and electric power services,

(D)      Continuing Education for Professionals and Tradesmen, and

(E)      Homeowners Associations Fees, among others.

AAFAF_CONF_0007591

(F)   Telecommunications, Inten1et Access, or cable or satellite television services in Puerto Rico or any combination thereof, advertisements or insurance premiums."

Section 66.- Paragraphs (1) and (2) of subsection (b) of Section 6042.08 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 6042.08.- Cigarette-related Crimes.-

(a)   …

(b)   Any natural or juridical person, or owner or manager of a business or a business establishment shall have his license to trade cigarettes, whether at wholesale or retail, or any cigarette-related license suspended for a period of twelve (12) months, and an administrative fine in the amount of ten thousand dollars ($10,000) shall be imposed for each violation, without impairment to the provisions of the 'Act to Correct the Exploitation of Minor Children,' of February 25, 1902, as amended, when:

(1)   such person sells, gives away, dispenses, delivers or, distributes cigarettes, or electronic cigarettes or e-cigarettes, and/or vaporizers, whether individually or in packs of any size or any other kind of wrapping, cigars, chewing tobacco, or any tobacco preparation to be inhaled or chewed, and any other kind of material, regardless of what it is made of, that can be used to roll any kind of cut tobacco to prepare cigarettes, cigars, or flavored cigarettes, as defined in Act No. 62 of August 5, 1993, as amended, to minors under the age of eighteen (18), or to any person who does not look older than twenty-seven (27), who does not show a photo identification card that appears to be valid on its face showing that such person is over the age of eighteen (18), whether for such person's consumption or for consumption by a third party. Any transaction in connection with the goods mentioned above shall be conducted in a direct and immediate manner between both

AAFAF_CONF_0007592

parties, in order for the good not to be accessible to the person who intends to acquire it, be it because the good is on a counter or in a self-service machine, except as otherwise provided in subsection (e) of Section 3050.01 of this Code.

(2)     Any owner or manager of a business or a business establishment where cigarettes or electronic cigarettes ore-cigarettes, and/or vaporizers are sold, given away, dispensed, delivered, or distributed at retail, whether individually or in packs of any size or any kind of wrapping, cigars, chewing tobacco, or any tobacco preparation to be inhaled or chewed, that fails to conspicuously display in the business or business establishment, a copy of the provisions of this subsection, in addition to the provisions of Section 4-A of the 'Act to Correct the Exploitation of Minor Children,' approved on February 25, 1902, as amended.

"

…

Section 67.- Paragraph (2) of subsection (a) of Section 6051.11 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 6051.11.-Rules and Regulations

(a)     Authorization.-

(1)     …

(2)     Amendments to law. - The Secretary shall promulgate any such other regulations as necessary by reason of any amendment to the law related to taxes imposed by this Code. Provided, that the Secretary shall be empowered to promulgate regulations under any special law related to fiscal or tax matters or that amends or causes any amendment to be made to the taxes imposed by this Code. Provided, further, that in the case of Act No. 60-2019, known as the "Puerto Rico Incentives Code," or any similar law, any regulation promulgated under this paragraph (2) shall be drafted in conjunction with the Secretary of Economic Development.

AAFAF_CONF_0007593

(b)    ...

(c)    ..."

Section 68. A new Subchapter D is hereby added to Chapter 7 of Subtitle F of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

"SUBCHAPTER D - PROVISIONS RELATED TO QUALIFIED TAX RETURN PREPARERS-SPECIALISTS

Section 6074.01.- Creation of the Qualified Tax Return Preparer-Specialist Registry

(a)    Requirement for Enrolling as Qualified Tax Return Preparer-Specialist.- No person may practice or continue practicing in Puerto Rico as a Tax Return Preparer-Specialist, unless such person applies for and is registered by the Department of the Treasury in the Registry established in this Subchapter.

(b)    Qualified Tax Return Preparer-Specialist Registry.- The official Qualified Tax Return Preparer-Specialist Registry is hereby created and established. This registry shall be kept and maintained by the Office of the Internal Revenue Assistant Secretary of the Department. The registry shall include a record of enrolled qualified tax return preparers-specialists. The Registry shall be available to the public with the name, address, and business telephone of the Tax Preparer-Specialist.

(c)    Definition of Qualified Tax Retun1 Preparer-Specialist.- Any natural person who meets the requirements of paragraph (1) of subsection (d) of this Section shall be subject to the provisions of this Subchapter and shall be considered as a 'qualified tax return preparer-specialist,' hereinafter a 'Qualified Tax Return Preparer-Specialist.'

(d)    Requirement for Enrolling in the Qualified Tax Return Preparer-Specialist Registry. -

AAFAF_CONF_0007594

(1)    For taxable years beginning after December 31, 2019, any natural person interested in being considered as a Qualified Tax Return Preparer-Specialist shall meet the following requirements:

(A)    Hold a Bachelor's degree from any accredited university licensed by the Puerto Rico Education Council and accredited by the Middle States Commission on Higher Education;

(B)    Be enrolled before the U.S. Internal Revenue Service and have a valid preparer tax identification number (PTIN);

(C)    Be dully enrolled as a specialist before the Department of the Treasury and have a valid tax specialist number as provided in Section 6071.01 of this Code; and

(D)    Pass the Enrolled Agent examination required by the U.S. Internal Revenue Service (IRS) and obtain the Enrolled Agent Certificate from the IRS; or be a Certified Public Accountant holding a valid license to practice in Puerto Rico.

(2)    To obtain a Preparer Tax identification number, an individual shall file an application by filling out the form established by the Secretary for such purposes, and shall include such documents as required by the Secretary proving that the applicant meets the requirements of paragraph (1) of this subsection (d). In addition, the applicant must be dully registered in the Merchant Registry of the Department of the Treasury; compliant with the Department of the Treasury with respect to all of his tax responsibilities as imposed by this Code; compliant with the Child Support Administration (ASUME, Spanish acronym); and provide a no criminal record certificate. The Secretary shall prescribe by regulations, administrative determination, circular letter, or general information bulletin, the process to be followed and the administrative requirements to be met in order to apply for registration in the Qualified Tax Return Preparer-Specialist Registry and

AAFAF_CONF_0007595

the Preparer Tax identification number. Provided that, Certified Public Accountants duly registered in the Tax Return Preparer-Specialist Registry with a valid Specialist's registration number under Section 6071.01 of this Code, shall be registered automatically in the Qualified Tax Return Preparer-Specialist Registry and receive their Preparer Tax identification number without having to fill out the application required in this subsection.

(3)     Registry enrollment shall be valid insofar as it is not withdrawn, suspended, or revoked.

(4)     Applications for Preparer Tax identification number may be filed beginning on August 1, 2020.

(e)     Renewal of Preparer Tax Identification Number.-

(!)     The Preparer Tax identification number shall be renewed every three (3) years on the expiration date of the U.S. Internal Revenue Service Enrolled Agent Certificate or the expiration date of the Certified Public Accountant license, as the case may be, which period shall be considered as the renewal period.

(2)     The following requirements shall be met in order to renew the Preparer Tax identification number:

(A)     completing a total of sixteen (16) credit hours of continuing education annually in topics related to the study and analysis of this Code, general accounting, and ethics. Provided, that of the total of credit hours required for renewal, at least four (4) credit hours shall be completed on topics such as ethics applied to the accounting profession, and twelve (12) credit hours on topics related to income tax matters under the provisions of this Code. All courses required under this subsection shall be in-person workshops approved by the Puerto Rico Accounting Board, or courses approved by the Department of the Treasury, whether in person or not, provided, that instructors are:

AAFAF_CONF_0007596

(i)     Certified Public Accountants holding a valid license in Puerto Rico at the time of offering the course,

(ii)    Attorneys admitted to practice law in Puerto Rico by the Supreme Court of Puerto Rico, holding a valid license at the time of offering the course,

(iii)   Qualified Tax Return Preparers-Specialists who have a valid Preparer Tax Registry identification number at the time of offering the course;

(B)     be enrolled before the U. S. Internal Revenue Service and have a valid Preparer Tax Identification number at the time of filing an application for renewal; and

(C)     keep current the Enrolled Agent Certificate issued by the U.S. Internal Revenue Service; and

(D)     be duly enrolled before the Department of the Treasury and have a valid specialist's identification number as provided in Section 6071.01 of this Code at the time of filing an application for renewal.

(3)     In case of certified public accountants, the requirements established in subparagraphs (A), (B) and (C) of paragraph (2) of this subsection (e) shall not apply; provided, that at the time of filing an application for renewal, the certified public accountant furnishes proof of holding a valid license to practice his profession in Puerto Rico.

(4)     Any Qualified Tax Return Preparer-Specialist who fails to comply with the renewal period shall be subject to an additional service fee of five hundred dollars ($500).

(5)     Any Qualified Tax Return Preparer-Specialist who fails to renew his identification number during a renewal period shall be excluded from the Qualified Tax Retun1 Preparer-Specialist Registry. The Tax Retun1 Preparer-

AAFAF _CONF _0007597

Specialist may apply for renewal, provided, that he meets the requirements set forth in this subsection and pays the fee established in paragraph (4).

(6)     The Secretary is empowered to prescribe by regulations any other administrative requirements as are necessary for completing the Preparer Tax identification number renewal.

(f)     The Secretary shall promulgate regulations as appropriate and prepare the forms and documents necessary to comply with the provisions of this Section.

Section 6074.02.- Duties of Qualified Tax Return Preparers-Specialists

(a)     Duties. - The duties of Qualified Tax Return Preparers-Specialists include, but shall not be limited to, the following:

(1)     act in a competent manner and be knowledgeable in tax-related matters.

(2)     comply with the laws, morals, and public order.

(3)     comply with the rules or regulations issued under the provisions of this Code.

(4)     enclose with the return any verification document required, the name of the Qualified Tax Return Preparer-Specialist, his signature and identification number in order to facilitate the identification of said preparer-specialist

(5)     request the Department of the Treasury to be excluded from the Registry established in this Chapter when the Qualified Tax Return Preparer-Specialist ceases his duties as such.

Section 6074.03.- Administrative Fine for Collusion between the Qualified Tax Return Preparer-Specialist and the Taxpayer.

(a)     When the Secretary has clear, robust, and convincing proof of collusion, with the intent to defraud the Department of the Treasury, between the qualified tax return preparer-specialist and the taxpayer, for the expenditure

AAFAF _CONF_0007598

verification required under Section 1021.02(a)(2)(D) of this Code or any other document, return, or declaration signed by the preparer-specialist filed with the Department of the Treasury, the Secretary shall administratively proceed against these two individuals as follows:

    (1)    Qualified Tax Return Preparer-Specialist:

        (A)    Fine.- a fine equal to the total amount of the deficiency imposed on the taxpayer, as it arises from the submitted information proven to be false or not supported by documentary evidence, plus interest and penalties, as applicable, which shall be assessed, collected, and paid as if it were a deficiency;

        (B)    Administrative Sanctions.- In addition to the fine provided in subparagraph (A) of this paragraph (1 ), the Secretary may impose the administrative sanctions applicable to specialists under Section 6071.03 of this Code; and

        (C)    Indefinite suspensl0n of authorization to practice as a qualified tax return preparer-specialist. The Secretary may indefinitely revoke the preparer-specialist's authorization to practice as such and to practice as specialist. Provided, that an individual whose authorization to practice as preparer-specialist has been revoked pursuant to the provisions of this Section, shall wait three (3) years before applying for reenrollment in the Qualified Tax Return Preparer-Specialist Registry.

    (2)    The taxpayer shall be imposed a fine equal to fifty (50%) percent of the deficiency imposed, as it arises from the submitted expenditure information, including interest, surcharges, and penalties, and which shall be assessed, collected, and paid as if it were a deficiency."

    Section 69.- A new subsection (e) is hereby added to Section 6080.12 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," to read as follows:

AAFAF _CONF_0007599

"Section 6080.12.- Authority to Exempt from Payment of Excise Taxes, the Sales Tax, and to Extend Due dates for Taking Certain Tax-related Actions by Reason of a Disaster Declared by the Governor of Puerto Rico.

(a)     …

…

(d)     …

(e)     Additional Tax Measures in the event of imminent threat of a weather event and/or Disaster Declared by the Governor of Puerto Rico. - In the event of imminent threat of a weather event and/or a natural disaster declared by the Governor of Puerto Rico, in addition to the powers set forth in subsections (a), (b) and (c) of this Section, the Secretary shall be empowered to take any tax measures deemed reasonably prudent and necessary to assist taxpayers in the event of imminent threat of a weather event and/or disaster declared by the Governor of Puerto Rico, and ensure taxpayers' faithful compliance with this Code and any other law that is directly or indirectly related to Puerto Rico's tax system. None of these provisions shall be construed to grant the Secretary authority to reduce, exempt or cancel the payment of a tax or levy beyond that provided in subsections (a), (b), and (c) of this Section."

Section 70.- Section 15.05 of Act No. 164-2009, as amended, known as the "General Corporations Act," is hereby amended to read as follows:

"Section 15.05.- Extensions.-

A.     For every annual report required under Sections 15.01 or 15.03 of this Act corresponding to years prior to 2019, the Secretary of State may grant an extension which shall not exceed ninety (90) days from the due date for filing annual reports by domestic and foreign corporations doing business in Puerto Rico; provided, that it is determined upon application timely filed via Internet or by filing a written application with the Department of State when the applying entity does not

AAFAF_CONF_0007600

have access to the Internet, that the corporation shall not be able, for sufficient motives, to file its annual report by the due date prescribed by law. In the event that the annual report of any corporation which has been granted an extension was not filed within the additional period granted, the procedure prescribed by Sections 15.02 or 15.04 of this Act shall apply, as the case may be.

B.     For the filing of annual reports corresponding to the year 2019, and thereafter, there shall be automatically granted a two (2)-month extension from April 15 or a later date determined by the Secretary of State, for filing annual reports required under Sections 15.01 and 15.03 of this Act, provided, that the corporation files a request to such effect not later than the due date for filing said reports and encloses therewith the one hundred and fifty (150) dollar filing fee.

C.     Additional Extension - A additional two (2)-month extension shall be granted to  Corporations that so request before the due date for the first extension, upon payment of thirty dollars ($30) or the amount determined by the Secretary of State through a circular letter or an administrative order, for filing the annual reports required under Sections 15.01 and 15.03 of this Act.

D.     In the event the annual report of any corporation to which an extension has been granted is not filed within the additional extension provided in subsection (b) or (c) of this Section, such report shall be deemed not filed and the penalties established in Sections 15.02 and 15.04 of this Act shall be imposed."

Section 71.- Section 8.3 of Act No. 27-2011, known as the "Puerto Rico Film Industry Economic Incentives Act", is hereby amended to read as follows:

"Section 8.3.- Special Tax Rate for Qualified Nonresidents

(a)     Imposition of Tax.- A special twenty percent (20%) tax shall be imposed, collected, and paid, in lieu of any other taxes provided in the Code, on the total amount received by any Qualified Nonresident, or by a legal entity contracting Qualified Nonresidents to render services in Puerto Rico in connection with a Film

AAFAF _CONF_0007601

Project, and which constitutes wages, fringe benefits, per diems, or fees. Should this special twenty percent (20%) tax apply to a legal entity contracting the services of Qualified Nonresidents, the portion of the payment received by the legal entity that is subject to this special tax shall not be subject to the special twenty percent (20%) tax when paid by the legal entity to the Qualified Nonresident. Provided, that for taxable years beginning after December 31, 2019, any Qualified Nonresident or legal entity contracting Qualified Nonresidents to render services in Puerto Rico may choose to file an income tax return and paid the corresponding tax under the Code, in lieu of the tax imposed under this subsection (a).

(b)     Duty to Deduct and Withhold.- Every person who controls, receives, custodies, disposes, or pays the amounts of compensation described in subsection (a) of this section, shall deduct and withhold said twenty percent (20%) tax and shall pay the amount of said tax thus deducted and withheld at the Internal Revenue Collection Office of Puerto Rico, or deposit it in any of the banking institutions designated as depositaries of public funds that have been authorized by the Secretary of the Treasury to receive said tax. The tax shall be paid or deposited not later than the fifteenth day of the month following the date on which the payment subject to the twenty percent (20%) withholding imposed by this subsection was made. The amounts subject to the deduction and withholding imposed by this subsection shall not be subject to the provisions of Section 1147 or 1150 of the Code, or any substitute provision similar in nature contained in any other law. The twenty-percent (20%) tax withholding provided in this subsection (b) shall apply even in cases where the Qualified Nonresident or legal entity contracting Qualified Nonresidents to render services in Puerto Rico chooses to file an income tax return and be subject to the tax imposed by the Code.

(c)     …

(d)     …

AAFAF_CONF_0007602

(e)    ….
     "
…

Section 72.- Section l of Act No. 48-2013, as amended, known as the "Act to Establish the Special Professional and Consulting Services Contribution; Increase the Machine Ratio at Casinos and Restructure the Distribution of such Proceeds," is hereby amended to read as follows:

"Section 1.- Special Professional and Consulting Services Contribution.-

It is hereby provided that on every professional, consulting, advertising, training, or advisory services contract, except for contracts entered into with nonprofit entities, executed by any agency, instrumentality, or entity of the Commonwealth of Puerto Rico, public corporation, the Legislative Assembly, the Office of the Comptroller, the Office of the Ombudsman, and the Judicial Branch or any other entity created by state or federal law funded in whole or in part by the General Fund, there shall be imposed a special contribution equal to one point five percent (1.5%) of the total amount of said contract to be deposited in the General Fund. Municipalities are expressly excluded from this provision.

Provided that for any contract in effect as of April 1, 2020, and thereafter, professional, consulting, advertising, training, or advisory services rendered by individuals under a contract, the amount of which in the aggregate does not exceed three hundred thousand dollars ($300,000) annually, shall not be subject to the special contribution provided herein.
     "
…

Section 73.-  Paragraphs (34) and (45) of subsection (a) of Section 1020.01 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," are hereby amended to read as follows:

"Section 1020.01.- General Definitions

(a)    …

AAFAF_CONF_0007603

      (1)   …

…

      (34)  …

           (i)    …

              …

           (iv)  Eligible Green or High-Efficiency Energy Investment

           (v)    …

              …

      (35)  …

…

      (45)  …

           (i)    …

              …

    (x)    Activities relating to infrastructure and green or high-efficiency energy, as provided in Chapter 7 of Subtitle B of this Code.

    (xi)   …

       …

      (46)  …

     "

…

Section 74.- Paragraph (4) of subsection (a) of Section 1020.02 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 1020.02.- Definitions Applicable to Activities of Individuals

(a)    For purposes of activities related to Chapter *2* of Subtitle B of this Code pertaining to activities carried out by individuals, the following tenns, phrases, and words shall have the meaning and scope stated below:

      (1)   …

AAFAF_CONF_0007604

…

(4)     Resident Individual Investor.- Means an individual eligible to receive the benefits provided in Sections 2022.01 and 2022.02 of this Code who is a Resident Individual of Puerto Rico, but has not been a Resident Individual of Puerto Rico between January 17, 2006 and January 17, 2012, and becomes a Resident Individual of Puerto Rico not later than the Taxable Year ending December 31, 2035. Students studying abroad who resided in Puerto Rico prior to leaving to pursue an education, the personnel working outside of Puerto Rico temporarily for the Government of Puerto Rico, its agencies and instrumentalities, and individuals similarly situated, shall not be considered Resident Individual Investors, given that, in such cases, their domicile continues to be Puerto Rico for the period during which they reside outside of our jurisdiction.

(5)     …

… "

…

Section 75.-Paragraph (7) of subsection (a) of Section 1020.05 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 1020.05.- Definitions Applicable to Visitor Economy Activities.

(a)     …

(1)     …

…

(7)     Condo Hotel.- Means the group of residential units, a residential building or a group of residential buildings converted to the horizontal property regime or to the regime pursuant to the 'Puerto Rico Condo Hotels Act,' and which meet the requirements of a Hotel; in which not less than fifteen (15) rooms or apartments are devoted to lodging transient persons at all times under an integrated leasing program. For purposes of the Developer credit provided in Section

AAFAF_CONF_0007605

3000.02(a)(3), the term 'Condo Hotel' also includes a group of residential units, a residential building or a group of residential buildings converted to the horizontal property regime or to the regime under the 'Puerto Rico Condo Hotels Act,' within a tourist destination or resort, which also meets one or more of the following requirements:

(i)    a group of residential units, a residential building or a group of residential buildings under an inten1ational hotel chain;

(ii)    Units receiving services related to hotel operations from a Hotel in the resort; or

(iii)    Units devoted to lodging transient persons under an integrated leasing program administered by the operator of a Hotel in the resort.

(8)    …

…

…    "

Section 76.- Section 1020.07 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 1020.07.- Definitions Applicable to Infrastructure and Green Energy or High-Efficiency Activities.

(a)    For purposes of Chapter 7 of Subtitle B of this Code pertaining to Infrastructure and Green or High-Efficiency Energy activities, the following terms, phrases, and words shall have the meaning and the scope stated below:

(1)    …

…

(14)    High-Efficiency Generation: Means the following:

(A)    In the case of power plants owned or operated by the Electric Power Authority (or its successor) or by a third party, that sells power to the Electric Power Authority (or its successor) on a utility scale (which excludes net

AAFAF _CONF _0007606

metering), at least sixty percent (60%) of electric power is produced in a highly efficient manner, as established by the Energy Bureau, pursuant to Section 6.29(a) of Act No. 57-2014, as amended; provided that in the case of power generation as combined heat and power, the standard shall be modified to include the generation of heat; and

(B)     In the case of other power generation facilities in Puerto Rico: except: (i) in the case of cogeneration plants or CHP plants, the efficiency standards (including heat and power) established by the Energy Bureau, pursuant to Section 6.29(a) (b) of Act No. 57-2014, as amended, or any other industry parameter that guarantees energy generation efficiency, or (ii) in the case of cogeneration plants or CHP plants, these shall comply with the same efficiency standards promulgated by the Federal Energy Regulatory Commission in the regulations applicable to qualifying cogeneration facilities under 18 C.F.R. §292.205(a)(2)(i) and (d) (1)-(3) and shall apply to facilities using natural gas and propane gas that meet these requirements, or any future regulations that substitutes or supplements it.

(15)   …

(16)   …

(17)   Green Energy Income or High-Efficiency Energy Income, or GEI or HEEL- Means income earned or derived from the following sources:

(i)     …

(ii)     The income earned as a dividend or profit by a corporation or partnership having Stocks in the Exempt Business making the distribution; provided, that such income may be attributable to the GEI or HEEI derived by such Exempt Business.

(iii)     …

…

AAFAF _CONF _0007607

(18)   Eligible Green Energy Investment or High-Efficiency Energy Investment.- Means the amount of the investment which allows the special deduction provided in Section 2072.06 of this Code.

…

(23)   High-Efficiency Energy Producer.- A person engaged in High-Efficiency Energy Generation, whether as owner and direct operator, or as owner of a system operated by a third party, or as operator of a system owed by a third party, in which case both shall be considered as a Eligible Business under this Act. The term 'High-Efficiency Energy Generation' includes the generation or sale to one or more persons engaged in trade or business in Puerto Rico.

…

(28)   Reserved

(29)   …

"

…

Section 77.- Section 2071.01 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2071.01.- Businesses Engaged in Infrastructure and Green or High-Efficiency Energy.

It is hereby provided that an eligible business established or to be established, in Puerto Rico by a Person, whether organized or not under a common name, may file an application for Incentives with the Secretary of the DEDC when the Entity is established in Puerto Rico to engage in one of the following eligible activities:

(1)    …

…

(10)    …

(i)    A High-Efficiency Energy Producer engaged in the production, sale, or operation on a commercial scale for consumption in Puerto Rico, whether as

AAFAF_CONF_0007608

owner and direct operator, or as owner of a system operated by a third party, or as operator of a system owned by a third party, in which case, both shall be considered as an Eligible Business under this Chapter.

        The term 'production, sale, or operation on a commercial scale' includes the production or sale to one or more persons engaged in trade or business in Puerto Rico;

    (ii)    …

    (iii)    Property devoted to High-Efficiency Generation;

    (iv)    …  "

Section 78.- Section 2072.01 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2072.01.- Income Taxes

(a)    …

(b)    …

(c)    …

    (1)    …

    (2)    Regular Income.- Any income or gain derived by a business engaged in the production of Green Energy from the sale of RECs originating from its operations in Puerto Rico shall be considered as regular income derived from such operation in Puerto Rico, and treated as Green Energy Income or High-Efficiency Energy Income for all purposes of this Code, except that said income or gain shall be exempt from municipal license taxes and other municipal taxes.

    (3)    …

    …

(d)    Businesses Engaged in the Green or High-Efficiency Energy Industry-Exempt Businesses whose activities are described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 shall be subject to the following:

AAFAF_CONF_0007609

(1)    Preferential flat tax rate of four percent (4%).- The businesses described above shall be subject to a preferential flat income tax rate of four percent (4%) on their Green Energy Income or High-Efficiency Energy Income during the corresponding exemption period, in lieu of any other income tax, if any, provided by the Puerto Rico Internal Revenue Code or any other law.

(2)    …

(3)    …

    (i)    …

    (ii)    …

    (iii)    Determination of Basis in the Sale or Exchange.- The basis in the sale or exchange of the Stocks or assets of Exempt Businesses under this Section shall be determined pursuant to the applicable provisions of the Puerto Rico Internal Revenue Code in effect at the time of the sale or exchange, increased by the amount of the Green Energy Income or High-Efficiency Energy Income accrued under this Code.

…

(4)    …

    (i)    …

    (ii)    Liquidation by Assignors with Revoked Decrees.- If the Decree of the assignor were revoked prior to its expiration date, pursuant to the provisions of this Code, in relation to allowable revocations, the Green Energy Income or High-Efficiency Energy Income surplus accrued as of the effective date of the revocation, may be transferred to the assignee at any later time, subject to the provisions of subparagraph (i) of this paragraph (4). In cases of mandatory revocations, the surplus accrued shall be subject to taxation pursuant to the Puerto Rico Internal Revenue Code.

AAFAF_CONF_0007610

(iii)   Liquidations After the Expiration of the Decree.- After the Decree of the assignor has expired, the assignor may transfer to the assignee the Green Energy Income or High-Efficiency Energy Income surplus accrued during the effective period of the Decree, subject to the provisions of subparagraph (i) of this paragraph (4).

(iv)   Liquidation of Assignors with Exempt and Nonexempt Activities.- In the event that the assignor engages in exempt and nonexempt activities, the assignor may transfer to the assignee the Green Energy Income or High-Efficiency Energy Income surplus accrued under this Code and the property devoted to the eligible activity under this Code as part of its total liquidation, subject to the provisions of subparagraph (i) of this paragraph (4). The surplus accrued over sources other than Green Energy Income or High-Efficiency Energy Income and the property that is not devoted to the eligible activity, shall be distributed in accordance with the provisions of the Puerto Rico Inten1al Revenue Code.

(e)   The stockholders or partners of an Exempt Business, holding a Decree under the provisions of this Chapter that is engaged in the activities described in paragraphs (1) through (5) of subsection (a) of Section 2071.01 of this Code, shall be subject to the income tax provided in the Puerto Rico Internal Revenue Code on distributions of dividends or benefits from the net income of said Exempt Business.

(f)   Exemption for individuals, estates, corporations, partnerships, limited liability companies and trusts with respect to interest paid or accredited on bonds, notes, or other obligations from businesses holding a Decree granted under this Chapter.

(g)   Exemption - Any individual, estate, corporation, partnership, limited liability company, or trust shall be exempt from the payment of any other tax imposed under the Puerto Rico Internal Revenue Code or any other successor law; and licenses fees imposed under the 'Municipal Licenses Act,' as amended, on

AAFAF _CONF_0007611

income from interest, charges, and other credits received with respect to bonds, notes, or other obligations from a business  holding a Decree granted under this Chapter, for the development, construction, rehabilitation, or improvements to a business holding a Decree granted under this Chapter; provided, that the total funds are used in the development, construction, rehabilitation, or improvements to a business holding a Decree granted under this Chapter, or the payment of existing debts of a business holding a Decree under this Chapter; provided that the funds from existing debts have been used originally in the development, construction, rehabilitation, or improvements to a business holding a Decree granted under this Chapter. Expenses incurred by a person making an investment described herein shall not be subject to Sections 1033.17(a)(5), (10) and (f) of the Puerto Rico Internal Revenue Code with respect to such investment and the income derived therefrom."

Section 79.-  Section 2072.04 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2072.04.- Exemption Period.

(a)     …

…

(e)     Tax exemption periods for Green or High-Efficiency Energy Businesses- The tax exemption periods applicable to Entities whose Eligible Businesses are covered under paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 of this Code are described hereinbelow.

(1)     …

(2)     Flexible Tax Exemption.- Exempt Businesses shall have the option of choosing the specific taxable years to be covered under their Decrees with regard to their Green Energy Income or High-Efficiency Energy Income; provided, that they notify the Secretary of the DEDC and the Secretary of the Treasury not later than on the due date provided by the Puerto Rico Internal Revenue Code to file

AAFAF_CONF_0007612

their income tax returns for said Taxable Year, including the extensions granted for said purpose. Once the Exempt Business opts for this benefit, its exemption period shall be extended by the number of taxable years it did not enjoy said benefit under the exemption Decree.

(3)    Provisions Applicable to the Tax Exemption for Businesses with Property Devoted to the Production of Green Energy and property devoted to High-Efficiency Generation.-

(i)    The period during which a Property Devoted to the Production of Renewable Energy or High-Efficiency Generation was owned by any political subdivision, agency, or instrumentality of the Government of Puerto Rico, shall not be deducted from the period mentioned in paragraph ( l ) of this subsection. In such cases, the property shall be deemed, for the purposes of this Chapter, as not having been previously devoted to the Production of Green Energy or High-Efficiency Generation.

(ii)    When the Exempt Business is a Property Devoted to the Production of Green Energy or a property devoted to High-Efficiency Generation, the period mentioned in paragraph ( l) of this subsection shall not cover those periods in which the Property Devoted to the Production of Green Energy or property devoted to High-Efficiency Generation is on the market to be leased to an Exempt Business, or is vacant, or is leased to a non-exempt business, except as provided below.  Said period shall be computed on the basis of the total period during which the property was at the disposal of an Exempt Business; provided, that the total number of years is not greater than that provided under paragraph (1) of this subsection, and the Exempt Business that qualifies as Property Devoted to the Production of Green Energy or property devoted to High-Efficiency Generation, notifies the Secretary of the DEDC, in writing, of the date on which the property is

AAFAF_CONF_0007613

leased to an Exempt Business for the first time, and the date on which the property is vacated and is again occupied by another Exempt Business.

(iii)   In the event that the exemption of an Exempt Business holding a Decree as Property Devoted to the Production of Green Energy or property devoted to High-Efficiency Generation expires while it is being used under a lease by an Exempt Business, the Property Devoted to the Production of Green Energy or property devoted to High-Efficiency Generation in use by the Exempt Business shall enjoy a fifty percent (50%) exemption on property taxes while the Exempt Business continues to use said property under a lease.

(iv)   When the Exempt Business is a business of Property Devoted to the Production of Green Energy or property devoted to High-Efficiency Generation, the period mentioned in paragraph (1) of this subsection shall continue its normal course even when the exemption Decree of the other Exempt Business using said property, as a result of the conclusion of its normal period or by revocation of its Decree, expires before the exemption period of the Property Devoted to the Production of Green Energy or property devoted to High-Efficiency Generation, unless it is proven in the case of revocation, that at the time said property was made available to the Exempt Business, the owners thereof were aware of the facts that led to the revocation.

(4)   …

(5)   …

(i)   The tax exemption period granted under this subsection. An Exempt Business holding a Decree under this Chapter shall be fully exempt from the payment of the municipal taxes or municipal license taxes applicable to the volume of business of the Exempt Business during the semester of the Government's Fiscal Year in which the Exempt Business commences operations in any municipality, pursuant to the provisions of the 'Municipal License Tax Act.'

AAFAF_CONF_0007614

Furthennore, the Exempt Business shall be fully exempt from the payment of municipal taxes or municipal license taxes on the volume of business attributable to such municipality during the two (2) semesters of the Government's Fiscal Year or Fiscal Years following the semester in which it commenced operations in the municipality.

>       (ii)    …

>   (6)    …

>   (7)    …"

Section 80.- Section 2072.05 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2072.05.- State Excise Taxes and Sales and Use Tax.

(a)    Businesses engaged in Green or High-Efficiency Energy, as described in in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01.-

>   (1)    …

>       (i)    Any raw material to be used in Puerto Rico to produce Green or High-Efficiency Energy, for the purposes of this subsection and the applicable provisions of Subtitles C or D of the Puerto Rico Internal Revenue Code, the term 'raw material' shall include:

>           (A)    any product in its natural form, derived from agriculture or from extractive industries (including natural gas); and

>           (B)    any byproduct, residual product, or partially manufactured or finished product (including propane gas).

>       (ii)    The machinery, equipment, and accessories thereof used exclusively and permanently to transport the raw material within the system of the Exempt Business; the machinery, equipment, and accessories used for Green or High-Efficiency Energy production, or which the Exempt Business is required to

AAFAF_CONF_0007615

acquire under federal or state law or regulations for the operation of the eligible activity.

          (iii)   …

…

      (2)   …

   "

…

Section 81.- Section 2072.06 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2072.06.- Special Deduction for Investment in Buildings, Structures, Machinery, and Equipment for Green or High-Efficiency Energy.

(a)   …

…

(c)   The amount of the Green Energy Investment described in subsections (a) and (c) of this Section for the special deduction provided in this subsection, in excess of the Green Energy Income or High-Efficiency Energy Income of the Exempt Business in the year of the investment, may be claimed as a deduction in subsequent taxable years until said excess is depleted.

(d)   …

(e)   …"

Section 82.- Section 2073.01 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2073.01.- Requirements for Decree Applications.

(a)   …

(b)   …

      (1)   Jobs.- The Infrastructure Activity or the Green Energy or High-Efficiency Energy Generation Activity and the Exempt Business shall promote the creation of new jobs. In addition, it shall be taken into account if the Exempt

AAFAF_CONF_0007616

Business pays its employees more than the federal minimum wage established in the Fair Labor Standards Act.

(2)    Sound Integration.- The conceptual design and planning of the Infrastructure Activity or the Green Energy or High-Efficiency Energy Generation Activity and the Exempt Business shall mainly take into account the environmental, geographical, and physical aspects, as well as the materials and goods that are abundantly available at the site where it is to be developed. Safe development shall be ensured to prevent catastrophic damage from potential natural disasters.

(3)    …

…

(7)    Certified Electric Power Company - Exempt Businesses engaged in the eligible activities described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 of this Code shall meet the essential requirement of filing with the Secretary of the DEDC, before commencing operations, evidence showing that the exempt business has been recognized as a certified electric power company by the Puerto Rico Energy Bureau, if such certification applies to the Exempt Business.

(8)    The Secretary of the DEDC shall be the official responsible for verifying and ensuring that Exempt Businesses meet the eligibility requirements provided in this Section and in this Chapter in relation to the eligible activities described in paragraphs (6), (7), (8), (9), and (10) of Section 2071.01 of this Code; provided, that for such cases related to the eligible activities described in paragraphs (1), (2), (3), (4), and (5) of Section 2071.01 of this Code, the Secretary of the DEDC shall proceed in consultation with the Secretary of Housing. If the Exempt Business partially meets the requirements established in this Section, the Secretary of the DEDC shall be required to establish a formula that allows for the quantification of the aforementioned factors, and for the subtraction of the requirement that has not

AAFAF _CONF_0007617

been met from the total percentage of the specific incentive, in order to obtain the exact percentage of the benefit in question."

Section 83.- Section 2074.02 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2074.02.- Green Energy Successor Business.

(a)      …

(b)      …

(1)      …

(2)      The Green Energy Successor Business declares as not covered by its Decree, for property tax purposes, such portion of its facilities as may be necessary so that the investment in physical facilities of the Exempt Green Energy Predecessor Business is maintained at or is equal to the total investment in physical facilities at the close of the Taxable Year of such Exempt Green Energy Predecessor Business prior to the filing of the application for exemption of the Green Energy Successor Business, minus depreciation thereon and minus any decrease in the investment in physical facilities that may have occurred as of the date the provisions of this paragraph are applied as a result of an authorization to use them under paragraph (4) of subsection (a) of this Section. In those cases where the tax exemption period of the Exempt Green Energy Predecessor Business has not expired, the Green Energy Successor Business shall enjoy the benefits provided by this Code which the Exempt Green Energy Predecessor Business would have enjoyed with respect to the portion of its investment in said physical facilities that, for purposes of this paragraph, it declares as not covered by its Decree, if said facilities had been used in producing its Green Energy Income or High-Efficiency Energy Income.

(3)      …"

AAFAF_CONF_0007618

Section 84.- Subsection (a) of Section 2091.01 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2091.01- Businesses Engaged in Creative Industries.

(a)     …

      (1)     …

            (i)     …

            …

            (iv)     For the purposes of this Code, the term 'Film Project' means:

            (A)     …

            (B)     …

            (C)     Documentaries or live show productions whose distribution includes markets outside of Puerto Rico during the live broadcast, such as beauty pageants, award, or similar shows.

            (D)     …

            …

      (v)     …

        …

    "

…

Section 85.- Section 2092.01 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 2092.01- Income Tax.

(a)     In General.- The net income of a Grantee directly derived from the exploitation of eligible activities under this Chapter and covered under a Grant shall be subject to a four percent (4%) preferential flat income tax rate, in lieu of any other tax, if any, provided by the Puerto Rico Internal Revenue Code or any other Puerto Rico law.

AAFAF_CONF_0007619

(b)      …

(c)      …

(d)      Special Tax for Foreign Persons.- A special twenty percent (20%) tax shall be imposed, collected, and paid, in lieu of any other tax provided in the Puerto Rico Internal Revenue Code, on the total amount received by any individual Foreign Person, or by an Entity hiring the services of a Foreign Person to render services in Puerto Rico in connection with a Film Project, and which constitutes wages, fringe benefits, per diems, or fees. In the event this twenty percent (20%) tax applies to an Entity hiring the services of a Qualified Nonresident, the portion of the payment received by the Entity that is subject to this special tax shall not be subject to the special twenty percent (20%) tax when paid by the Entity to the Foreign Person. Any individual Foreign Person or Entity that hires the services of a Foreign Person to render services in Puerto Rico, may choose to file an income tax return and pay the con-esponding tax under the Puerto Rico Internal Revenue Code, in lieu of the income tax imposed under this subsection.

(1)      Duty to Deduct and Withhold.- Any person who controls, receives, custodies, disposes, or pays the compensation amounts described in subsection (c) of this Section, shall deduct and withhold the twenty percent (20%) tax and shall pay the amount of said tax thus deducted and withheld at the Internal Revenue Collection Office of the Department of the Treasury, or deposit it in any of the banking institutions designated as depositaries of public funds authorized by the Secretary of the Treasury to receive said tax. The tax shall be paid or deposited on or before the fifteenth (15th) day of the month following the date on which the payment subject to the twenty percent (20%) withholding imposed by this subsection was made. The amounts subject to the deduction and withholding imposed by this paragraph (1) shall not be subject to the provisions of Section 1062.08 or 1062.11, of the Puerto Rico Internal Revenue Code, or any provision that substitutes it or that

AAFAF_CONF_0007620

is contained in any other similar law. This twenty percent (20%) withholding, as provided in paragraph (1), shall apply even when the individual Foreign Person or Entity that hires the services of a Foreign Person to render services in Puerto Rico chooses to file an income tax return and be subject to the tax imposed under the Puerto Rico Internal Revenue Code.

(2)     …

…

"

…

Section 86.- Section 3000.01 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 3000.01- General Rules for the Granting of Tax Credits.

(a)     …

(b)     …

(c)     …

(d)     Option to Assign Tax Credits to the Department of the Treasury:

1.     An Exempt Business holding a tax credit, except for credits for purchases of products manufactured in Puerto Rico or any other nontransferable credit, granted under this Code or a tax credit granted under Previous Tax Incentive laws after June 30, 2021, in lieu of assign, sell, or transfer a tax credit to another Person, may choose, at its option, to assign, in whole or in part, the tax credit to the Goven1ment of Puerto Rico through the Department of the Treasury in exchange for a refund equal to ninety percent (90%) of the tax credit face value. Provided, that for tax credits granted under Previous Tax Incentive Laws before July 1, 2021, except for credits for purchases of products manufactured in Puerto Rico or any other nontransferable credit, the credit holder may choose, at its option, to assign, in whole or in part, the tax credit to the Government of Puerto Rico through the Department of the Treasury in exchange for a refund equal to eighty-five percent (85%) of the

AAFAF _CONF_0007621

tax credit face value. In order to exercise the option provided in this subsection, the Exempt Business shall notify its intention in writing to the Secretary of the Treasury on or before the end of the last day of the taxable year for which the assignment is chosen.

2.       The Secretary of the Treasury, taking into account the nature of the tax credit and the economic conditions of the tax credit market, may establish a different refund percentage than that established in paragraph (1) of this subsection (d), but said percentage shall never be less than eighty-five percent (85%) of the face value of tax credits granted after June 30, 2021, except for credits for purchases of products manufactured in Puerto Rico or any other nontransferable credit, or eighty percent (80%)  for credits granted before July 1, 2021, except for credits for purchases of products manufactured in Puerto Rico or any other nontransferable credit. The refund percentage determined by the Secretary of the Treasury shall be published through administrative determination, circular letter, or general information bulletin, which shall be valid for at least one (1) year from its publication.

3.       The Secretary of the Treasury shall apply the tax credit against any tax liability of the Exempt Business from previous years or the tax determined for the taxable year for which the assignment is requested.

4.       The Secretary of the Treasury, taking into account the refund maximum cap available for each fiscal year, within a period of sixty (60) days, shall be empowered to reject or accept, in whole or in part, the Exempt Business' option to assign the tax credit to the Government of Puerto Rico. If the Secretary of the Treasury accepts the option, the Secretary shall pay the refund in full, after applying the taxes described in paragraph (2) of this subsection, in equal quarterly installments during a period not to exceed three (3) years from the time the option was made. If the Secretary of the Treasury rejects the option, in whole or in part, the

AAFAF _CONF_0007622

Secretary shall notify the exempt business of the rejection by certified mail, and the Exempt Business may use the available tax credit against its tax liability (except for the tax credits provided in Section 3020.01) or assign, sell, or transfer the tax credit to another Person as provided in this Section.

5.   The refund provided in this Section shall not be subject to the provisions of Sections 6021.01, 6021.02, 6025.01, 6025.02 or 6025.03 of the Puerto Rico Internal Revenue Code, or Act No. 230-1974, known as the 'Puerto Rico Government Accounting Act.'

6.   The refund provided in this Section shall apply even when the provisions under which said tax credits are granted provide that such credits are nonrefundable.

7.   Refund Maximum Cap per Fiscal Year. - The refund amount available for each fiscal year of the Government of Puerto Rico to be paid pursuant to this Section shall be forty million dollars ($40,000,000).

8.   The Exempt Business shall not recognize any gain or loss, taxable income, or volume of business under the Puerto Rico Internal Revenue Code or the 'Municipal License Tax Act,' for the tax credit refund authorized in this Section.

9.   For purposes of this subsection (d), the term 'granted' or 'granted tax credit', is defined as tax credits for which the Exempt Business has met all the requirements of this Code or of Previous Tax Incentive Laws, and is entitled to use said credit in accordance with the conditions and limitations provided by this Code or under Previous Tax Incentive Laws."

Section 87.- Section 3000.02 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 3000.02- Additional Rules for the Award, Sale, and Transfer of Tax Credits.-

AAFAF_CONF_0007623

(a)     Tax credits granted under paragraph (a) of this Section shall be subject to the following:

     1.    …

     2.    …

     3.    …

     4.    …

     5.    Tax Credits are nonrefundable, except as provided in subsection (d) of Section 3000.01.

    …

  "

…

Section 88.- Section 3050.01 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 3050.01- Tax Credit for Creative Industries

(a)     …

…

(c)     Amount of Tax Credit.-

(1)     In the case of Film Projects, the Tax Credit available in this Section shall be:

(i)     Up to forty percent (40%) of the amounts certified by an Auditor as disbursed in connection with Puerto Rico Production Expenditures, without including payments made to Foreign Persons; and

(ii)     Up to twenty percent (20%) of the amounts certified by an Auditor as disbursed in connection with Puerto Rico Production Expenditures, consisting of payments made to Foreign Persons;

(iii)     Up to fifteen percent (15%) of the amounts certified by an Auditor as disbursed in connection with Puerto Rico Production Expenditures, without including payments made to Foreign Persons, in feature films, television

AAFAF_CONF_0007624

series or documentaries in which a Domestic Producer is in charge of the Film Project and the director, cinematographer, editor, production designer, post-production supervisor, or line producer are Domestic Persons, up to a maximum of four million dollars ($4,000,000) of Tax Credit per Film Project under this item.

(iv)   The provisions of paragraph (1) notwithstanding, the amount of tax credits shall be subject to an annual limit of thirty-eight million dollars ($38,000,000).

…
     "
…

Section 89.- Subsections (a) and (b) are hereby amended and a subsection (d) is hereby added to Section 6020.10 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," to read as follows:

"Section 6020.10- Reports

(a)   Reports Required from Exempt Businesses and their Stockholders:

(1)   …

…

(3)   Every Exempt Business holding a Decree under this Code or any Prior Incentives Laws shall annually file electronically with the Incentives Office a compliance report not later than the fifteenth (15th) day of November following the close of the calendar year, in the case of Exempt Businesses with a calendar year, or the fifteenth (15th) day of the eleventh (11th) month following the close of the taxable year, in the case of an Exempt Business.

(i)   …

…

(b)   The annual reports required by this Code to Exempt Businesses under Section 2021.01 shall enclose evidence of an annual contribution of at least ten thousand dollars ($10,000), which shall be allocated to nonprofit entities operating

AAFAF_CONF_0007625

in Puerto Rico under Section 1101.01 of the Puerto Rico Internal Revenue Code, not controlled by the same person or their descendants or ascendants, spouses, or partners. Regardless of the amount contributed over the minimum provided in this subsection, five thousand dollars ($5,000) shall be allocated for nonprofit entities providing services directed at eradicating child poverty, operating in Puerto Rico under Section 1101.01 of the Puerto Rico Internal Revenue Code, not controlled by the same person or their descendants or ascendants, spouses, or partners, and which appear on a list to be published by the Special Joint Committee on Legislative Funds for Community Impact on or before December 31 st of every year, in accordance with the provisions of this Code. Nothing shall prevent that one hundred percent (100%) of the annual contribution be allocated to the nonprofit entities appearing on said list. Any contribution in excess of five thousand ($5,000) mentioned in the preceding sentence may be allocated to any other nonprofit entity operating in Puerto Rico under Section 1101.01 of the Puerto Rico Internal Revenue Code that is not controlled by the same person or their descendants or ascendants, spouses, or partners, and which is not included in the list published by the Special Joint Committee on Legislative Funds for Community Impact. The Exempt Business shall certify to the Incentives Office that the selected nonprofit entity is an entity that renders services directly to the community. The contribution shall be made directly to the nonprofit entity selected under Section 2021.01 by the Exempt Business that made the annual contribution. However, the Exemption Office shall submit a detailed report on the nonprofit entities that receive a contribution to the Special Joint Committee on Legislative Funds for Community Impact within thirty (30) days.

     (c)    …

     (d)    The filing of the annual reports required from Exempt Businesses under Section 2021.01 of this Code, or under Act No. 22-2012, as amended, known as the

AAFAF_CONF_0007626

'Act to Promote the Relocation of Individual Investors to Puerto Rico,' shall be subject to an annual fee of five thousand dollars ($5,000), of which three hundred dollars ($300) shall be payable to the order of the Secretary of the Treasury and shall be deposited in a Special Fund administered by the DEDC, and four thousand seven hundred dollars ($4,700) shall be payable to the order of the Secretary of the Treasury to be deposited in the General Fund of the Government of Puerto Rico.

"

…

Section 90.- Subsection (c) of Section 6060.02 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 6060.02- Regulations under this Code

(a)     …

(b)     …

(c)     The Secretary of the DEDC, in consultation with the agencies or instrumentalities, as the regulated matter requires, shall adopt such regulations and guidelines and issue circular letters, administrative orders, or other general communications as are necessary to enforce the provisions and achieve the purposes of this Code. However, any regulation, administrative determination, circular letter, infom1ation bulletin, or general communication on fiscal and tax-related matters, including, but not limited to, recognition of income and expenditures, credit recapture, application of tax credits, assignment of credits, defen-ed purchase of credit, income classification, deductibility of expenditures, accounting methods, determination of annual accounting period, employer contributions, excise taxes, and sales and use tax, and matters related to the employer or withholding agent responsibility shall be the sole authority of the Secretary of Health.

"

…

AAFAF _CONF _0007627

Section 91.- Section 6070.57 of Act No. 60-2019, known as the "Puerto Rico Incentives Code," is hereby amended to read as follows:

"Section 6070.57.- Real and Personal Property Tax Applicable to Opportunity Zones.

(a)      …

(b)      Property under Construction or Expansion.- The real property of an exempt business shall have a twenty-five percent (25%) exemption during the period authorized under the decree to carry out the construction of, or to establish said exempt business, and during the first fiscal year of the Government in which the exempt business would have been subject to property taxes for having been in operation as of the January 1st, immediately preceding the beginning of said fiscal year, were it not for the exemption provided herein. Likewise, the real property of said exempt business which is directly related to any expansion of the exempt business, shall have a twenty-five percent (25%) exemption from property taxes during the period authorized under the decree for carrying out the expansion. Once the exemption period established in this subsection expires, the partial exemption provided for in this Section shall begin to apply. None of the provisions of this subsection shall be deemed to limit the application of any exemption established by the 'Municipal Property Tax Act of 1991.'

(c)      …
      "
…

Section 92.- The Police Retirement Trust Act is hereby created.

"Section 1.- Title

This Act shall be known and may be officially cited as the 'Police Retirement Trust Act.'

Section 2.- Definitions.

AAFAF_CONF_0007628

The following words and terms, whenever used or referred to in this Act, shall have the meanings stated below unless the context clearly indicates otherwise:

(a)    FAFAA - shall mean the Puerto Rico Fiscal Agency and Financial Advisory Authority.

(b)    Code of 2011 - shall mean Act No. 1-2011, as amended, known as the Internal Revenue Code for a New Puerto Rico.

(c)    Deed of Trust - shall mean the public instrument whereby the trust is created executed by FAFAA, acting as trustor.

(d)    Trust - shall mean the Police Retirement Trust authorized under this Act.

(e)    Board - shall mean the Police Retirement Board, as defined in Section 5 of this Act.

(f)    Bureau, shall mean the Puerto Rico Police Bureau.

Section 3.- Creation of the Trust

(a)    FAFAA, acting as trustor, is hereby directed to, within sixty (60) days from the effective date of this Act, to execute the Deed of Trust establishing the Trust, a private nonprofit trust, whose corpus shall consist of the funds transferred thereto from gambling devices in accordance with Act No. 11 of August 22, 1933, known as the 'Games of Chance Act'; as well as any other assets acquired in the future or donated thereto. The Board shall serve as its trustee.

(b)    The assets of the Trust shall be used to improve the compensation received by the members of the Bureau upon retirement. Any balance not used for improving the retirement compensation, may be used for the payment of leaves, overtime, and severance pay upon the retirement of a member of the Puerto Rico Police Bureau.

(c)    The operations of the Trust shall be governed by the provisions of this Act and the Deed of Trust. The Deed of Trust shall specify the form and the manner

AAFAF_CONF_0007629

in which the Board, as trustee of the Trust, shall exercise all the powers, prerogatives, and responsibilities conferred to the Trust under this Act.

(d)      The Trust is created with independent judicial personality. The funds of the Trust shall be kept separate from other funds under the custody of FAFAA and the Government of Puerto Rico and shall be maintained where the Board determines, in accordance with the powers granted thereto under this Act and the regulations adopted thereunder.

Section 4.- Powers of the Trust.

(a)      The Trust, through the Corporation, shall have the following rights, powers, objectives and prerogatives to properly implement the policy set forth herein, including but not limited, to:

(1)      Establish, maintain, operate, and own in fee simple the title to the real and personal property, structures, and other assets that, from time to time, are transferred thereto, to be used for improving the compensation received by the members of the Bureau on account of retirement and payment of leaves, overtime, and severance pay upon their retirement.

(2)      Request, accept, receive, and hold funds, gifts, property, and assets of any kind transferred, assigned, or conveyed directly or by virtue of this Section, by the Goven1ment of Puerto Rico, any federal agency, the Government of the United States of America, public or private institutions, or other natural persons; as well as any technical assistance to achieve the purposes of the Trust and the purposes provided in this Act.

(3)      Provide the members of the Bureau with support after retirement.

(4)      Formulate, adopt, amend, and repeal rules, policies, and procedures that govern its internal operations, as well as those that are necessary to govern its activities and the activities of the Trust, and discharge its powers and duties.

AAFAF _CONF_0007630

(5)     Carry out its businesses so as to achieve its objectives, with trained personnel and a reduced structure.

(6)     Sue and be sued.

(7)     Enter into acts, agreements, and contracts of all kinds, including those related to goods and services.

(8)     Acquire and alienate property for consideration.

(9)     Establish bylaws for its inten1al organization and operations.

(10)    Receive services from employees of the private sector, the state government, or a government agency, instrumentality, public corporation, or municipality with the consent of said government entities.

(11)    Control exclusively its property and activities and decide the nature of and need for its expenditures, and manner in which such expenditures shall be incurred, authorized, and paid.

(12)    Establish the fees and charges to be collected for the use of the property thereof.

(13)    Take on loans for any of its purposes and duties as provided in this Act.

(14)    Provide financial assistance of any kind, including incentives and subsidies or technical assistance to the members of the Bureau after retirement.

(15)    Administer any of its projects as provided by regulations, in order to further its objectives.

(16)    Serve as the entity in charge of implementing the provisions of this Act and any applicable regulations.

(17)    Taking any actions as are necessary or convenient to exercise the powers conferred to the Trust under this Act or any determination made by the Bureau as fiduciary.

AAFAF_CONF_0007631

Section 5.- Board.

(a)     The Board shall be constituted as provided below and shall exercise such powers, responsibilities, and prerogatives granted herein.

(1)     The Board shall consist of seven (7) members, two (2) of whom shall be retired members of the Bureau; two (2) of whom shall be active members of the Bureau; two (2) of whom shall be selected by FAFAA, one of whom shall serve as its chair, and one (1) representative selected by the Commissioner of the Bureau.

(2)     Board members representing the Bureau's retired and active members shall be elected by vote of the represented members.

(3)     The Board members elected by the Bureau's retired and active members shall be appointed for a term of two (2) years from the swearing-in, which shall be held on or before January 30th, of the year after his election.

(4)     Candidates for representatives of the Bureau's active members shall have at least ten (10) years of service in the Bureau.

(5)     Members selected by FAFAA and the Commissioner shall hold a position of trust in the represented entities, thus, these members may be designated or removed at their will.

(6)     Board members shall receive training on sound administration and contracting.

(7)     Five (5) of the seven (7) Board members shall constitute a quorum at meetings. However, a quorum shall only be constituted if at least one (1) of FAFAA's representatives is present at the meeting and it is thus certified.

(8)     The Committee shall adopt rules and procedures as are necessary for the purposes of the duties assigned in this Act.

Section 6. - Exemptions. -

The Trust shall be exempt from any and all taxes, duties, levies, excise taxes or fees, including license taxes, as well as from the sales and use tax or added-value

AAFAF_CONF_0007632

tax, imposed or to be imposed by the Government of Puerto Rico or any political subdivision thereof, including all of its operations, real and personal property, capital, income, and surpluses, provided to an entity described in Section 1101.0l(a)(2) of the Code of 2011 duly qualified as such by the Secretary of the Treasury or to which such entity is entitled. The Trust is also exempt from any kind of fees or taxes required by law in connection with official processes, issuance of certifications by offices of the Government of Puerto Rico and its political subdivisions, and the execution of public instruments and the recordation thereof in any public registry of Puerto Rico.

Section 7.- Accounting System.

FAFAA, as the Trust's fiduciary, shall establish an accounting system that allows for inten1a] and external audits for the proper and adequate control and recording of all of its operations.

Section 8.- Debts and Obligations.

Given that the Trust is private, nonprofit, and perpetual in nature, the debts and obligations of the Trust shall not be debts or obligations of the Government of Puerto Rico or its political subdivisions.

Section 9.- Immunity; Civil Liability Limit.

Neither the Trust, the Board as fiduciary agent, nor its members individually, shall incur economic responsibility for any action taken while discharging their powers, provided, that their acts are not intentional, unlawful, in violation of their fiduciary duty, or for their own benefit, or knowing that such act may cause harm.

Section 10.- Tax Treatment of Gifts.

For purposes of Sections 1033.10 and 1033.15(a)(3) of the Code or similar provisions of any law that substitutes it, gifts made to the Trust shall be treated as made to an entity described in Section l 101.0l(a)(2) of the Code that has been duly qualified as such by the Secretary of the Treasury of Puerto Rico.

AAFAF_CONF_0007633

Section 11.- Injunction.

No injunction shall be issued to prevent the application of this Section or any part thereof.

Section 12.- Reports.

The Trust shall file, through the Board, an annual report in March 31 of every year, with the Governor, the House of Representatives and the Senate of Puerto Rico, on the activities of the Trust during the preceding fiscal year, its balance sheet, and the work plan for the following three (3) fiscal years."

Section 93.- Section 17 of Act No. 183-2001, as amended, known as the "Puerto Rico Conservation Easement Act," is hereby amended, to read as follows:

"Section 17.- Tax Credit.

(a)      …

…

(l)      Maximum Credit Cap per Year. - T h e   maximum amount of tax credits available for a particular fiscal year of the Commonwealth of Puerto Rico to be distributed in accordance with this Chapter, shall be three million dollars ($3,000,000).
   "
…

Section 94.- The Private Equity Funds Act of 2019 is hereby created.

"Section 1.- Title.

This Act shall be known as the 'Private Equity Funds Act.'

Section 2.- Definitions.

(a)      'RIA' or 'Registered Investment Advisor' means:

(1)      a business that, under a contract with another business (which may be a Fund), is engaged in the investment advisory business and regularly provides consulting services regarding the convenience of investing in, buying or

AAFAF_CONF_0007634

selling securities or any other property, or is authorized to determine which securities or other assets shall be purchased by said business,

(2) any other person that, in accordance with a contract entered into with the person described in paragraph (1), regularly performs practically all the tasks of said person described in such paragraph.

(3) The person shall be registered (or be exempt from registration) under the Investment Advisers Act of 1940 (U.S.A.), as amended (15 U.S.C. § 80b-1 et seq.), Act 60 No. of 1963, as amended, known as the 'Uniform Securities Act of Puerto Rico,' or any other similar law that supersedes it.

(4) The person shall be registered with 'SEC' or the 'CFIPR', if applicable.

(b) 'GDB'- means the Govenment Development Bank for Puerto Rico created under Act No. 252 of May 13, 1942, as amended.

(c) 'EDB'- means the Economic Development Bank for Puerto Rico created under Act No. 22 of July 24, 1985, as amended.

(d) 'Carried Interest'- means the share of any profits that the general partners of a Fund receive as compensation for the gains realized from the Fund's operations.

(e) 'Code'- means Act No.1-2011, as amended, known as the 'Puerto Rico Internal Revenue Code of 2011,' or any other similar law that supersedes it.

(f) 'PRCUSIC'- means the Puerto Rico Credit Unions Supervision and Insurance Corporation created under Act No. 114-2011, as amended or any other similar law that supersedes it.

(g) 'IBE'- means an International Banking Entity in accordance with the provisions of the Intenational Banking Center Regulatory Act.

(h) 'IFE'- means an International Financing Entity in accordance with the provisions of the International Financing Center Regulatory Act.

AAFAF_CONF_0007635

(i)     'PE-Firm'- means a Private Equity Firm, which invests in private equity through a variety of investment strategies configured in Funds, such as: growth capital, leveraged buyout, mezzanine, distressed, and venture capital. Typically, this firm acts as a General or Limited Partner.

(j)     'PEF'- means an entity that complies with the requirements established in Section 3 of this Act and which has made an election to be treated as Private Equity Fund in accordance with Section 4 of this Act.

(k)     'PR-PEF- means a Puerto Rico Private Equity Fund which not later than four (4) years, counting from the date of its organization and at the close of each subsequent fiscal year, maintains:

(A)     a minimum of sixty percent (60%) of the paid-in capital contributed to the Fund by its accredited investors, (excluding from said capital the money that the Fund maintains in bank accounts and other cash equivalent investments) invested in one of the following:

(i)     promissory notes, bonds, shares, notes (including secured and unsecured loans and including the collateral) or any other securities of similar nature issued by entities engaged, directly or indirectly, in the active conduct of a trade or business, that, at the time of acquisition are not publicly offered or traded at stock exchange markets in the United States or in any foreign country, and that have been issued by a domestic corporation, domestic limited liability company or domestic partnership, or a foreign entity that derives at least eighty percent (80%) of its gross income for the last three (3) year-period from sources within Puerto Rico or from income effectively connected or treated as effectively connected with the conduct of a trade or business in Puerto Rico in accordance with the provisions of the Code.

(ii)     exempt investment trusts which qualify under Section 1112.02 of the Code.

AAFAF_CONF_0007636

(iii)   promissory notes, bonds, shares, notes (including secured and unsecured loans and including the collateral) or any other securities of similar nature issued by entities engaged, directly or indirectly, in the active conduct of a trade or business outside of Puerto Rico, that at the time of acquisition are not publicly offered or traded at stock exchange markets in the United States or in any foreign country; provided that, the operations of the entity are transferred to Puerto Rico within six (6) months from the date of the acquisition of the promissory notes, bonds, shares, or notes (including secured and unsecured loans and including the collateral) or any other securities of similar nature, plus any additional period authorized by the Secretary of the Treasury, if there is reasonable cause for the extension, and during the period of twelve (12) calendar months commencing the first day of the calendar month following the calendar month during which the operations are transferred to Puerto Rico, and each subsequent twelve (12) calendar month period, derives at least eighty percent (80%) of its gross income from sources within Puerto Rico and/or from income effectively connected or treated as effectively connected with the conduct of a trade or business in Puerto Rico in accordance with the provisions of the Code.

(l)      'FDIC'- means the Federal Deposit Insurance Corporation.

(m)     'Fund'- means a PEF and/or a PR-PEF as defined in this Section.

(n)     'Accredited Investors' means:

(1)      a bank, an insurance company, a registered investment company, a business development entity, a small business investment company, the GDB, the EDB, the IBE or the IFE. The provisions of the Inten1ational Banking Center Regulatory Act and the International Financing Center Regulatory Act notwithstanding, it shall be understood that an IBE or an IFE, respectively, may be considered Accredited Investors for purposes of this Act;

AAFAF_CONF_0007637

(2)     a Commonwealth of Puerto Rico employee benefit plan or any other employee benefit plan or any employee benefit plan, as defined in the Employee Retirement Income Security Act of 1974 ('ERISA'), only if a bank, an insurance company, or a RIA make the investment decisions, or if the plan's total assets exceed five million dollars ($5,000,000);

(3)     a charitable organization, a corporation, an association whose total assets exceed five million dollars ($5,000,000);

(4)     a director, an executive officer, or a general partner of the company offering securities;

(5)     a natural person with a net worth, either individually or jointly with his or her spouse, exceeding one million dollars ($1,000,000) at the time of the purchase, not including the value of the said person's main residence;

(6)     a natural person whose income exceeded two hundred thousand dollars ($200,000) in each of the last two (2) years prior to the purchase, or that earned a joint income of three hundred thousand dollars ($300,000) with his or her spouse and expects to reasonably maintain the same level of income throughout the current year;

(7)     a trust with total assets of over five million dollars ($5,000,000) that was not created to purchase publicly traded securities and where a sophisticated person makes the purchase; or

(8)     any business in which all the owners of the capital are accredited investors;

(o)     'Puerto Rico Investment Companies Act of 2013' means Act No. 93-2013, as amended, known as the 'Puerto Rico Investment Companies Act of 2013,' or any other similar law that supersedes it.

AAFAF_CONF_0007638

(p)     'Investment Companies Act of Puerto Rico'- means Act No. 6 of October 19, 1954, as amended, known as the 'Investment Companies Act of Puerto Rico,' or any other similar law that supersedes it.

(q)     'Municipal Property Tax Act'- means Act No. 83-1991, as amended, known as the 'Municipal Property Tax Act of 1991,' or any other similar law that supersedes it.

(r)     'Municipal License Tax Act'- means Act No. 113 of July 10, 1974, as amended, known as the 'Municipal License Tax Act,' or any other similar law that supersedes it.

(s)     'Act to Promote Export Services'- means Act No. 20-2012, as amended, known as the 'Act to Promote Export Services.'

(t)     'Act to Incentivize the Transfer of Investors Individuals to Puerto Rico'- means Act No. 22-2012, as amended, known as the 'Act to Incentivize the Transfer of Investor Individuals to Puerto Rico.'

(u)     'International Banking Center Regulatory Act' - means Act No. 52 of August 11, 1989, as amended, known as the 'Inten1ational Banking Center Regulatory Act,' or any other similar law that supersedes it.

(v)     'International Financing Center Regulatory Act' - means Act No. 273-2012, as amended, known as the 'International Financing Center Regulatory Act,' or any other similar law that supersedes it.

(w)     'OCFIPR' - means the Office of the Commissioner of Financial Institutions of Puerto Rico created under Act No. 4 of October 11, 1985, as amended, known as the 'Financial Institutions Commissioner's Office Act.'

(x)     'SBA'- means the Small Business Administration.

(y)     'Secretary of Treasury'- means the Secretary of the Department of the Treasury of Puerto Rico.

AAFAF_CONF_0007639

(z)      'SEC' - means the U.S. Securities and Exchange Commission created under the Securities Exchange Act of 1934.

(aa)     'SIPC' - means the Securities Investor Protection Corporation.

(bb)     'General Partners' - means the group that comprises the Fund, in charge of the daily operations of the Fund and which usually conducts the investment activity using a portion of its capital. General Partners have a fiduciary duty to the Fund's investors.

(cc)     'Initial Investment' - means all the capital committed by an Accredited Investor to a Private Equity Fund.

(dd)     'Capital Commitment' - means the amount of capital that an Accredited Investor has: (i) contributed to a Fund; (ii) been committed through a private document accepted by the Fund to contribute during the term of the Fund; and/or (iii) been accepted to assume capital contribution defaults of other accredited investors.

(ee)     'Resident Investor' - means (i) a resident individual, as defined in Section 1010.0l(a)(30) of the Code, (ii) a United States Citizen who is a Puerto Rico nonresident; (iii) an entity organized outside of Puerto Rico, if all of its direct or indirect shareholders (or its equivalent) are residents of Puerto Rico; and (iv) an entity organized under the laws of the Government of Puerto Rico; Provided, further, that in the case of a partnership subject to the provisions of Chapter 7 of the Code, the partners of such partnership may be considered Residents Investors.

Section 3. - Eligibility.

(a)      Any partnership or limited liability company organized under the laws of the Commonwealth of Puerto Rico, the United States of America, or of any foreign jurisdiction, engaged in investments on promissory notes, bonds, notes (including secured and unsecured loans and including the collateral), shares, or any other securities of similar nature issued by entities that, at the time of acquisition,

AAFAF _CONF_0007640

are not publicly offered or traded at stock exchange markets in the United States or in any foreign country, shall qualify to be treated as a Fund under this Act during each fiscal year in which it meets the following requirements:

(1)      has an office located in Puerto Rico;

(2)      a minimum of eighty percent (80%) of the paid-in capital contributed to the Fund by its Accredited Investors (excluding from said capital the money that the Fund maintains in bank accounts and other cash equivalent investments) invested in promissory notes, bonds, notes (including secured and unsecured loans and including the collateral), shares, or any other securities of similar nature issued by entities that at the time of acquisition are not publicly offered or traded at stock exchange markets in the United States or in any foreign country;

(3)      the balance of paid-in capital that has not been invested in accordance with paragraph 2, subsection (a) of this Section shall not exceed twenty percent (20%) and shall be maintained in one of the following investments:

(A)      direct obligations of, or secured by the United States and/or the Government of Puerto Rico, the principal and interest of which are due within a fifteen (15) month period from the investment date;

(B)      reselling agreements with institutions insured by the FDIC, the SIPC, the PRCUSIC, an IBE, an IFE, and/or the GDB, if due within ninety (90) days or less. The securities relating to the reselling agreements shall be secured as to principal and interest by the Federal Government of the United States and/or those of Puerto Rico and shall be investment grade. These securities shall be maintained in a custody account at an institution insured by the FDIC or SIPC;

(C)      certificates of deposit with a maturity date of one year or less, issued by institutions insured by the FDIC, the PRCUSIC, or the GDB;

(D)      a deposit account in an institution insured by the FDIC or the PRCUSIC, subject to a withdrawal restriction of one year or less;

AAFAF_CONF_0007641

(E)     a checking account in an institution insured by the FDIC or the PRCUSIC;

(F)     an account with reasonable cash balance for miscellaneous expenses; and/or

(G)     investment certificates issued by the GDB, an IBE, or an IFEā

(4)     Not later than four (4) years counted from its date of organization and at the close of each subsequent fiscal year, a PEF shall maintain:

(A)     a minimum of fifteen percent (15%) of the paid-in capital contributed to the Fund by Accredited Investors (excluding from said capital the money that the Fund maintains in bank accounts and other cash equivalent investments) invested in promissory notes, bonds, shares, notes (including secured and unsecured loans and including the collateral), or any other securities of similar nature issued by entities engaged, directly or indirectly, in the active conduct of a trade or business that, at the time of acquisition, are not publicly offered or traded, offered at stock exchange markets in the United States or in any foreign country, and have been issued by a domestic corporation, a domestic limited liability company, a domestic partnership, or a foreign entity, which derives at least eighty percent (80%) of its gross income for the preceding three (3)-year period from sources within Puerto Rico or from income effectively connected or treated as effectively connected with the conduct of a trade or business in Puerto Rico in accordance with the provisions of the Code;

(5)     that its investors qualify as 'Accredited Investors';

(6)     shall use a RIA, which shall be a domestic or foreign person with a business office in Puerto Rico engaged in trade or business in Puerto Rico in accordance with the provisions of the Code and duly registered with the pertinent

AAFAF_CONF_0007642

regulators including, but not limited to the OCFIPR, the SEC, the SBA, as applicable;

(7)    shall operate as a diversified investment entity, therefore, not later than four (4) years from its date of organization and at the close of each subsequent fiscal year, not more than twenty percent (20%) of its paid-in capital shall be invested in a single business; provided, however, that the fluctuations in the value of the Fund's investments and/or the sale, liquidation, or other disposition of any of the Fund's assets pursuant to its investment strategy or objective shall not be taken into account for determining whether the Fund meets this requirement. To determine the twenty percent (20%) investment limit in a single business, a controlled group of corporations or an affiliated group, as provided in Sections 1010.04 and 1010.05 of the Code, shall be considered as a business. Therefore, the amounts invested in one or more entities within a controlled group of corporations or an affiliated group shall be aggregated to determine whether the Fund has achieved its objective of investing not more than twenty percent (20%) of its capital in a single business. The foregoing limitation shall not prevent a Fund from investing more than twenty percent (20%) of its capital in entities operating in the same trade or engaged in the same type of business. Neither does it prevent a Fund from acquiring all or a majority of the ownership interest in an entity in which it has invested or is investing its capital;

(8)    shall have a mìn1mum capital of ten million dollars ($10,000,000), including legal capital commitments duly documented even if not yet received on or before twenty-four (24) months from the Fund's first issuance of ownership interest, and thereafter.

(9)    shall appoint at least one of its Investors or Limited Partners to in one Advisory Board where matters of interest and concerns regarding the Fund might be discussed and evaluated.

AAFAF _CONF_0007643

(10)   in the case of a foreign partnership or a foreign limited liability company, eighty percent (80%) or more of its gross income is generated from the activities of said entity's office in Puerto Rico.

Section 4. - Private Equity Fund Election.

(a)   Any entity that meets the eligibility requirements mentioned in Section 3 of this Act may elect to be treated as a Fund only if it is treated as a registered merchant for purposes of subtitle D of the Code and notifies said election to the Secretary of Treasury not later than the last day of the third month after the inception date of creation of the Fund. The Secretary of Treasury shall prescribe by regulations, circular letter, administrative determination, or any other document of general nature the form and manner in which the entity shall make the election to be treated as a Fund, including to require that the election be submitted electronically.

(b)   Compliance with the requirements of Section 3 of this Act shall be determined for each taxable year of the Fund. The initial cost of an investment shall be used to determine the percentage invested in each asset. Failure to meet the eligibility requirements shall prevent the entity from qualifying as a Fund during the year in which it failed to meet said requirements and, therefore, the entity shall be subject to the applicable taxation under the Code, the Municipal License Tax Act, and the Municipal Property Tax Act. If the entity is disqualified for a particular taxable year as a result of a noncompliance with the provisions of this Act, such entity shall request the Secretary of Treasury, subject to the requirements prescribed by the Secretary through regulations, circular letter, administrative determination, or any other general bulletin, to be treated once again as a Fund for taxable years following such disqualification.

Section 5.- Election Effects.

(a)   Income Tax - The provisions applicable to partners of a partnership, as provided in Chapter 7 of the Subtitle A of the Code, shall apply to investors of a

AAFAF _CONF_0007644

Fund (including taxable investors who have not contributed money or property in exchange for ownership interests in the Fund and who have an interest in Fund profit). The provisions of the Code applicable to partnerships relating to information requirements (except for the Fund's tax filing requirement, in accordance with the provisions of this Act) and tax withholding requirements, shall apply to the Fund.

        (1)    Fund.

        (A)    Income - A Fund shall be treated for tax purposes as a partnership under the applicable rules of partnerships in Chapter 7 of the Code, in which case, it shall be understood that any reference made to taxable partnerships under Chapter 7 of the Code shall include Private Equity Funds.

        (2)    Accredited Investors - The Accredited Investors of a Private Equity Fund that are Puerto Rico Residents shall be liable for the income taxes attributable to their distributive share in the Fund's income, except for the EDB and the GDB, which are exempt from taxation, if it is thus provided in their respective organic acts. In the case of Puerto Rico Nonresidents, the Fund shall withhold at source the applicable tax and shall remit it to the Department of the Treasury of Puerto Rico. In both instances, the tax shall be paid according to the following rules:

        (A)    Income - Income received from the Fund by Accredited Investors from interest and dividends shall be subject to an income tax to be computed using a ten percent (10%) flat rate, in lieu of any other tax imposed by the Code, including the alternate basic tax and the alternative minimum tax which shall not be applicable to investors of the Fund. Exempt interests or dividends generated by the Fund shall remain exempt in the possession of the Investors. In the case of investors, they shall pay taxes in Puerto Rico at the income tax rates provided herein, unless (i) the applicable income tax rate under any other special law is lower than the one provided herein, or that (ii) under the Code, such investors are not required to pay income taxes in Puerto Rico. Provided, that the Fund's operating expenses

AAFAF_CONF_0007645

shall be allocated among the different classes of income of the Fund (except capital gains) in proportion to the gross income amount of each class.

(B)     Capital Gains - The capital gains received by accredited investors from the Fund shall be fully exempt from income tax and shall not be subject to any other tax imposed by the Code, including the alternate basic tax and the alternative minimum tax, which shall not apply to the Fund's investors. Such gains shall be separately reported to the investor in accordance with Section 1071.02 of the Code.

(C)     Sale of Ownership Interest - The capital gains realized by Fund investors in the sale of their ownership interest in a Fund shall be subject to income tax at a five percent (5%) flat rate in the taxable year in which the sale occurs or income is realized, in lieu of any other tax provided. If within ninety (90) days from the sale, the accredited investor reinvests the entire gross income generated in a PEF-PR, the capital gains realized by Fund investors shall not be subject to any income tax. Such gains shall be separately reported to the investor in accordance with Section 1071.02 of the Code.

(D)     Net Capital Loss - Net capital losses, including reserves incurred by the Funds, may be taken as a deduction by the accredited investors of a Fund who are Puerto Rico Residents, in proportion to their share in the Fund losses, to the extent that such losses are attributable to a foreign or domestic corporation, limited liability company, partnership, which derives at least eighty percent (80%) of its gross income for the preceding three (3)-year period from sources within Puerto Rico or from income effectively connected or treated as effectively connected to the conduct of trade or business in Puerto Rico in accordance with the provisions of the Code. The losses may only be used in the following manner:

(i)     against income from other Funds to the extent that such losses are considered as capital losses at Fund level;

AAFAF_CONF_0007646

(ii)   to reduce any capital gain generated by the accredited investor from other sources in accordance with the provisions of the Code;

(iii)   however, any loss that cannot be deducted may be carried over indefinitely.

(3)   General Partners

(A)   Income - Income derived by the General Partners of the Fund from interest and dividends shall be subject to income tax at a five percent (5%) flat rate in lieu of any other tax imposed by the Code, including the alternate basic tax and the alten1ative minimum tax. Provided, that the Fund's operating expenses shall be allocated to the different classes of income of the Fund (except for capital gains) in proportion to the gross income amount of each class.

(B)   Capital Gains - Capital gains received by General Partners or Sponsors of the Fund shall be subject to a two point five percent (2.5%) flat income tax rate, in lieu of any other tax provided during the taxable year in which that sale occurs, including the alternate basic tax and the alternative minimum tax which shall not apply to investors of the Fund. Such gains shall be separately reported to the investor in accordance with Section 1071.02 of the Code.

(C)   The rules for the sale of ownership interest and net capital losses applicable to the accredited investors and described in the subparagraphs (C) and (D) of paragraph (2) of subsection (a) of Section 5 shall apply to General Partners.

(4)   RIA and PE-Firm

(A)   Income - Income derived by a RIA and a PE-Firm from interest and dividends shall be subject to income taxes to be computed by using five percent (5%) flat rate, in lieu of any other tax imposed by the Code, including the alternate basic tax and the alternative minimum tax. Provided, that the Fund's

AAFAF_CONF_0007647

operating expenses (except for capital gains) shall be allocated in proportion to the gross income amount of each class.

(B)    Capital Gain - Capital gains received by a RIA and a PE-Firm of the Fund shall be subject to a two point five percent (2.5%) flat income tax, in lieu of any other tax provided in the taxable year in which that sale occurs, including the alternate basic tax and the alternative minimum tax which shall not apply to investors of the Fund. Such gains shall be separately reported to the investor in accordance with Section 1071.02 of the Code.

(C)    The rules for the sale of the ownership interest and net capital losses applicable to accredited investors and described in subparagraphs (C) and (D) of paragraph (2) of subsection (a) of Section 5 shall apply to a RIA and a PE-Firms.

(b)    Incentive Acts Coordination.

None of the provisions of this Act shall be construed as a limitation to the tax treatment that accredited investors, General Partners, or RIAs and PE-Firms may obtain under the provisions of any present or future incentive law, including the Act to Promote Export Services and the Act to Incentivize the Transfer of Investor Individuals to Puerto Rico; provided, that the requirements and the process provided in the applicable law is complied with.

(c)    Upon a Fund's fulfillment of the investment requirements provided in Section 3 of this Act, any Resident Investor who invests in:

1.    a PEF may deduct up to a maximum of thirty percent (30%) of its Initial Investment. The deduction shall be available to be used by the Resident Investor in the taxable year in which the Fund invested all or part of said Initial Investment and for the ten (10) following years. If the Fund invests the Initial Investment partially, the ten (10) year period with respect to the invested portion shall count from the year it was invested. In the case the investment is made after

AAFAF_CONF_0007648

the end of the taxable year, but before filing the income tax return for the year in question, as provided in the Code, including any extensions granted by the Secretary of Treasury for the filing thereof: the Resident Investor may claim the deduction for said taxable year. The maximum deduction a Resident Investor may deduct in a taxable year shall not exceed fifteen percent (15%) of his net income before said deduction.

2.      a PEF-PR may deduct up to a maximum of sixty percent (60%) of its Initial Investment. The deduction shall be available to be used by the Resident Investor in the tax year in which the Fund invested all or part of said Initial Investment and for the fifteen (15) following years. If the Fund invests the Initial Investment partially, the fifteen (15) year period with respect to the invested portion shall count from the year in which it was invested. In the case the investment is made after the end of the taxable year, but before filing the income tax return for the year in question, as provided in the Code, including any extensions granted by the Secretary of Treasury for the filing thereof, the Resident Investor may claim the deduction for said taxable year. The maximum deduction a Resident Investor may deduct in a taxable year shall not exceed thirty percent (30%) of his net income before said deduction.

(d)     Deduction for Initial Investment.

The deduction for the Initial Investment that a Resident Investor of Puerto Rico may claim under Section (5)(b) of this Act may be used, at the discretion of the Puerto Rico Resident Investor, against any type of income for purposes of determining any type of tax under Subtitle A of the Code, including the alternate basic tax applicable to individuals and the alternative minimum tax applicable to corporations. Provided, that in the case of married individuals living together, filing a joint return, and availing themselves of the optional computation of the tax provided in Section 1021.03 of the Code, they may assign, at their discretion,

AAFAF_CONF_0007649

between them the total amount of the claimable deduction for the Initial Investment by each of them for each taxable period.

    (e)    Municipal License Taxes.

    (1)    The income received by the Fund and the distributions made by such entities to their investors, shall not be considered 'gross income' nor shall they be included under the definition of 'volume of business' for purposes of the 'Municipal License Tax Act.'

    (2)    Funds shall be exempt from filling the corresponding volume of business declaration provided in the Municipal License Tax Act.

    (f)    Property Tax.

    (1)    Personal and real property owned by a Private Equity Fund shall be exempt from any property tax imposed by any municipality or by the Commonwealth of Puerto Rico.

    (2)    The Funds shall be exempt from filling the corresponding property tax return provided in the Municipal Property Tax Act.

    (g)    Investment Company Act. The Funds shall be exempt from compliance with the provisions of the 'Investment Company Act of Puerto Rico' and the 'Puerto Rico Investment Companies Act of 2013.'

    Section 6.- Information Disclosure.

    (a)    Any participation or investment offer in a Fund shall be properly registered or notified to OCFIPR and comply with all the provisions of the Securities Act of the United States and Puerto Rico, as applicable with respect to disclosure and registration, if necessary.

    (b)    Every Fund shall:

    (1)    Infom1 its investors of its operating results on a quarterly basis (unaudited) and annually audited by a Puerto Rico Certified Public Accountant firm holding a valid license, in order for the investor to detennine that the Fund is

AAFAF_CONF_0007650

operating in accordance with the policies, practices, and agreements notified during its creation. The annual audited report shall include: the Internal Return of Investment ('IRI'), a breakdown of Commissions and Expenses of the Partnership, a summary of Capital Calls, a Debt Summary, and a Letter from the General Partner to the investors.

(2)     The disclosure of the Fund shall include:

(A)     An explanation of the risks and opportunities in the Fund as well as material events including, but not limited to: fraud, material breach of the fiduciary duty, material breach of an agreement, bad faith, and gross negligence.

(B)     Certification of Fund compliance with provisions of this Act duly sworn by the chief executive officer.

(3)     Call an Annual General Meeting where the General Partners share information regarding the operation, of the Fund with its Investors and/or Limited Partners.

(4)     The OCFIPR shall be empowered to conduct examination and inspections of the Funds to ensure that its operations and financial results have been properly informed, meet the fiduciary duty to its investors, and meets the requirements of this Act. The Fund shall pay the fees prescribed by the OCFIPR through regulations to conduct such examinations and inspections. The OCFIPR shall take the necessary actions including the liquidation of the Fund and halting of additional offerings of its securities in the event of a breach.

Section 7.- Term of the Funds.

Every Fund shall be created with a term of existence to be determined by its General Partners. General Partners are hereby empowered to automatically extend the term of the Fund for a maximum of one (1) year. Additional tem1s shall be approved in accordance with the Fund's charter, but with the consent of a majority vote of the Fund's Limited Partners.

Section 8.- Transition and Coordination Rules.

(a)     No elections may be made under this Act after December 3 l, 2019.

(b)     No Fund making an election under this Act may apply for a decree as a Private Equity Fund under Act No. 60-2019.

(c)     Notwithstanding the provisions of paragraph (14) of subsection (a) of Section 6070.22 of Act No.60-2019, any Private Equity Fund or Private Equity Fund of Puerto Rico whose election under Act No. 185-2014, as amended, known as the 'Private Equity Funds Act' was still in effect as of June 30, 2019, shall continue to be subject to the provisions of Act No. 185-2014, as it was in effect before Act No. 60-2019 became effective, as if the repeal has not taken place. Likewise, the shareholders or members of a Private Equity Fund or a Private Equity Fund of Puerto Rico, who, as of June 30, 2019, had an election in effect under Act No. 185-2014, shall continue to be subject to the provisions of Act No. 185-2014, as it was in effect before Act No. 60-2019 became effective, as if the repeal has not taken place.

Section 95.- Repeals.

(a)     It is hereby repealed:

(1)     Act No. 212-2002, as amended, known as the "Urban Centers' Revitalization Act."

Section 96.- Severability.

If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect, impair, or invalidate the remainder of this Act. The effect of said holding shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act thus held to be null or unconstitutional. If the application to a person or a circumstance of any clause, paragraph, subparagraph, sentence, word, letter,

AAFAF _CONF_0007652

article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect or invalidate the application of the remainder of this Act to such persons or circumstances where it may be validly applied. It is the express and unequivocal will of this Legislative Assembly that the courts enforce the provisions and application thereof to the greatest extent possible, even if it renders ineffective, nullifies, invalidates, impairs, or holds to be unconstitutional any part thereof, or even if it renders ineffective, invalidates, or holds to be unconstitutional the application thereof to any person or circumstance. This Legislative Assembly would have approved this Act regardless of any determination of severability that the Court may make.

Section 97.- This Act shall take effect immediately after its approval.

AAFAF_CONF_0007653