# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------------------X
:
In re:                                                                           :
:
THE FINANCIAL OVERSIGHT AND                                                      :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                                :    Title III
:
      as representative of                                                :    Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*,                                        :    (Jointly Administered)
:
  Debtors.[1]                                                                    :
---------------------------------------------------------------------------------X

**DECLARATION OF TALEAH E. JENNINGS IN SUPPORT OF THE DRA PARTIES' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR URGENT MOTION TO COMPEL COMPLIANCE WITH ORDER GRANTING URGENT JOINT MOTION REGARDING RULE 30(B)(6) DEPOSITION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**

I, Taleah E. Jennings, declare:

    1.    I am a partner at Schulte Roth & Zabel LLP, counsel to Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor") who together with AmeriNational Community Services, LLC (the "Servicer") have been referred to in this proceeding as the "DRA Parties." I submit this declaration in connection with the DRA Parties' *Reply Memorandum of Law in Support of Their Urgent Motion to Compel Compliance with Order*

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

1

*Granting Urgent Joint Motion Regarding Rule 30(B)(6) Deposition of the Financial Oversight and Management Board for Puerto Rico* (the "Reply").

2. On October 6, 2021, I participated in a videoconference meet and confer with counsel for the FOMB[2] to discuss the DRA Parties' demand that the FOMB produce a witness to provide testimony pursuant to Rule 30(b)(6). Also in attendance were my colleagues Douglas Koff and Thomas Mott from Schulte Roth & Zabel LLP, along with Arturo J. Garcia, Alejandro J. Cepeda Diaz, and Nayuan Zouairabani Trinidad from McConnell Valdes LLC representing the Servicer. Several attorneys from Proskauer Rose LLP, representing the FOMB, also appeared to be present, as their names appeared on the zoom screen, including Margaret A. Dale, Julia D. Alonzo, and Michael A. Firestein. Margaret Dale was visible during the videoconference. The meet and confer started at 4:30pm EST and lasted approximately 30 minutes.

3. During the meet and confer, Mr. Garcia stated that the FOMB's designation of Ms. Natalie Jaresko as the FOMB's 30(b)(6) witness just hours before her individual deposition was scheduled to commence was inappropriate and that the FOMB would either need to offer her to sit for the Rule 30(b)(6) deposition on another day, or designate a new witness to serve as the FOMB's Rule 30(b)(6) witness. He stated that, absent that, the DRA Parties would raise the issue with the Court that evening. In response, Ms. Dale stated that Ms. Jaresko was not available to return for a deposition and that she was no longer an option. Ms. Dale further stated that, as she indicated in prior e-mails, the FOMB was willing to have a representative from EY provide testimony, and that designating a 30(b)(6) witness from outside the noticed entity would be no different than having a member of the Oversight Board testify. She asserted that, in her experience, this happened "all the time." Ms. Dale then threw her arms in the air and stated that the only

---

[2] All capitalized terms not otherwise defined have the same definitions as provided for in the Reply.

2

difference between what the FOMB was proposing (*i.e.*, an EY Representative who, according to Ms. Dale, would require a subpoena pursuant to EY's internal processes) and what the DRA Parties were seeking (*i.e.*, the participation of a member of the FOMB) was "a piece of paper."

4. I then asked Ms. Dale to confirm that, if the DRA Parties agreed to issue the requested subpoena to EY, that the EY Representative would be testifying just as if he or she were from the FOMB, and that the FOMB would be responsible for preparing the witness to testify as its 30(b)(6) witness. Ms. Dale confirmed that to be the case, agreed that the FOMB would be responsible for preparing the EY Representative, and stated that the FOMB would be bound by that individual's testimony.

5. Immediately thereafter, Ms. Dale and I had a follow-up conversation over the telephone, during which Ms. Dale confirmed that the FOMB was designating the EY Representative as its 30(b)(6) witness, acknowledged that requiring the DRA Parties to issue a subpoena to the EY Representative for the FOMB's 30(b)(6) deposition was "strange" (Ms. Dale's words), and noted that, to her understanding, EY nonetheless required it "because of something to do with their audit roles." I contemporaneously memorialized our discussion in an internal e-mail, sent at 5:34pm EST, which I can make available to the Court for *in camera* review upon request.

6. Counsel for the DRA Parties and counsel for the FOMB then worked together to draft the Joint Motion. At no point in time did the FOMB's counsel suggest, in form or substance, that the EY Representative's testimony would be limited to EY's knowledge. Nor did counsel for the DRA Parties suggest, in form or substance, that they were withdrawing the Notice issued to the FOMB or excusing the FOMB's obligations to prepare a witness to testify pursuant to the Notice.

7. Attached hereto as <u>Exhibit 1</u> is a true and correct copy of an email chain between

Ms. Dale and myself, dated October 7, 2021 (redacted to protect Ms. Dale's personal information).

8. Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the official transcript of the October 6, 2021 deposition of Adam Chepenik.

I declare under penalty of perjury that the foregoing is true and correct.

Executed On: October 27, 2021

/s/ *Taleah E. Jennings*<br>
Taleah E. Jennings