# U.S. BANK

# EXHIBIT A

Certified Copy of Trust Agreement

between PFC and U.S. Bank as Trustee

5.

**$410,665,000**
**PUERTO RICO PUBLIC FINANCE CORPORATION**
**2012 SERIES A BONDS**
**(COMMONWEALTH APPROPRIATION BONDS)**

**CERTIFICATE AS TO TRUST AGREEMENT**

I, ZULEMA MARTÍNEZ-ÁLVAREZ, Secretary of the Board of Directors of Puerto Rico Public Finance Corporation (the "Corporation"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Trust Agreement dated as of June 1, 2004 (the "Trust Agreement"), by and between the Corporation and U.S. Bank National Association, as Trustee, and said Trust Agreement has not been repealed, revoked, rescinded, annulled or amended in any way, and is in full force and effect as of the date hereof.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of Puerto Rico Public Finance Corporation as of the 28th day of June, 2012.

ZULEMA MARTÍNEZ-ÁLVAREZ
Secretary
Puerto Rico Public Finance Corporation

(SEAL)

MIAMI/4279081.1

**PUERTO RICO PUBLIC FINANCE CORPORATION**

**TO**

**U.S. BANK TRUST NATIONAL ASSOCIATION,
TRUSTEE**

---

**TRUST AGREEMENT**

---

**Dated June 1, 2004**

N206950.6

# TABLE OF CONTENTS

## ARTICLE I.
### DEFINITIONS

SECTION 101. Definitions ................................................................................... 5
SECTION 102. Miscellaneous ............................................................................. 14

## ARTICLE II.
### FORM, EXECUTION, AUTHENTICATION, DELIVERY, EXCHANGE AND REGISTRATION OF BONDS

SECTION 201. Limitation on Issuance of Bonds ................................................. 14
SECTION 202. Form of Bonds ............................................................................ 14
SECTION 203. Details of Bonds ......................................................................... 15
SECTION 204. Authentication of Bonds ............................................................. 16
SECTION 205. Exchange and Registration of Transfer ...................................... 17
SECTION 206. Ownership of Bonds ................................................................... 18
SECTION 207. Authorization of Initial Series of Bonds .................................... 18
SECTION 208. Refunding Bonds ........................................................................ 21
SECTION 209. Additional Bonds ....................................................................... 24
SECTION 210. Temporary Bonds ....................................................................... 28
SECTION 211. Mutilated, Destroyed, Stolen or Lost Bonds.............................. 28
SECTION 212. Book-Entry Bonds ..................................................................... 29
SECTION 213. Capital Appreciation Bonds; Capital Appreciation and Income Bonds ..... 31
SECTION 214. CUSIP Numbers ......................................................................... 31

## ARTICLE III.
### REDEMPTION OF BONDS

SECTION 301. Redemption of Bonds .................................................................. 31
SECTION 302. Redemption Notice ...................................................................... 32
SECTION 303. Effect of Calling for Redemption ............................................... 33
SECTION 304. Cancellation of Bonds ................................................................ 33
SECTION 305. Bonds To Be Paid Not Outstanding........................................... 33
SECTION 306. Partial Redemption ..................................................................... 34

## ARTICLE IV.
### FUNDS AND ACCOUNTS

SECTION 401. Sinking Fund and Accounts.......................................................... 34
SECTION 402. Withdrawals from Bond Service Account ................................... 35
SECTION 403. Withdrawals from Redemption Account ..................................... 36
SECTION 404. Withdrawals from Surplus Account ........................................... 37
SECTION 405. Reserve Account ......................................................................... 37
SECTION 406. Moneys Set Aside Held in Trust................................................. 38
SECTION 407. Establishment of Sub-accounts in the Redemption Account...................... 39

## ARTICLE V.
### DEPOSITORIES OF MONEYS, SECURITY FOR DEPOSITS
### AND INVESTMENTS OF FUNDS

SECTION 501. Security for Deposits ................................................................. 39
SECTION 502. Investment of Moneys ............................................................... 39
SECTION 503. Valuation of Investments ........................................................... 40

## ARTICLE VI.
### PARTICULAR COVENANTS

SECTION 601. Payment of Principal, Interest and Premium; Limited Obligation;
Pledge of Notes and Pledged Revenues ...................................... 41
SECTION 602. No Impairment ......................................................................... 41
SECTION 603. Inclusion of Principal and Interest Requirement in Budget ....... 42
SECTION 604. Covenant to Enforce Payment of Note ..................................... 42
SECTION 605. Faithful Performance; Due Authority ....................................... 42

## ARTICLE VII.
### REMEDIES

SECTION 701. Enforcement of Remedies .......................................................... 42
SECTION 702. Pro Rata Application of Funds ................................................... 43
SECTION 703. Effect of Discontinuance of Proceeding .................................... 44
SECTION 704. Majority of Bondholders May Control Proceeding .................... 44
SECTION 705. Restrictions Upon Actions by Individual Bondholders .............. 45
SECTION 706. No Remedy Exclusive ............................................................... 45
SECTION 707. No Delay or Omission Construed to be a Waiver ....................... 45
SECTION 708. Actions of Trustee .................................................................... 45

## ARTICLE VIII.
### CONCERNING THE TRUSTEE

SECTION 801. Acceptance of Trusts ................................................................. 45
SECTION 802. Trustee Entitled to Indemnity ................................................... 46
SECTION 803. Limitation on Trustee's Liabilities ............................................ 46
SECTION 804. Compensation ........................................................................... 47
SECTION 805. Trustee May Rely on Certificates .............................................. 47
SECTION 806. Notice of Default ...................................................................... 47
SECTION 807. Trustee May Be Bondholder ..................................................... 48
SECTION 808. Trustee Not Responsible for Recitals ........................................ 48
SECTION 809. Trustee Protected in Relying on Papers ..................................... 48
SECTION 810. Resignation of Trustee .............................................................. 48
SECTION 811. Removal of Trustee ................................................................... 49

SECTION 812.  Appointment of Successor Trustee ............................................................. 49
SECTION 813.  Vesting of Trust with Successor Trustee .................................................... 50
SECTION 814.  Reporting Requirements ............................................................................ 50

### ARTICLE IX.
EXECUTION OF INSTRUMENTS BY BONDHOLDERS
AND PROOF OF OWNERSHIP OF BONDS

SECTION 901.  Proof of Execution of Documents and Ownership ...................................... 50

### ARTICLE X.
SUPPLEMENTAL AGREEMENTS

SECTION 1001.  Supplemental Agreements Without Bondholders' Consent ....................... 51
SECTION 1002.  Modification with Consent of Holders of Majority of Bonds ................... 52
SECTION 1003.  Trustee Joining in Supplemental Agreements ........................................... 54
SECTION 1004.  Responsibilities of Trustee under this Article ........................................... 54
SECTION 1005.  Bond Resolution May Be Supplemented or Modified ............................... 54

### ARTICLE XI.
AMENDMENTS TO THE NOTES

SECTION 1101.  Amendments Not Requiring Consent ........................................................ 55
SECTION 1102.  Amendments Requiring Consent of Holders of a Majority in
Principal Amount of Bonds .................................................................... 55

### ARTICLE XII.
DEFEASANCE

SECTION 1201.  Defeasance ................................................................................................ 56

### ARTICLE XIII.
GDB LETTER OF CREDIT; DRAWS

SECTION 1301.  Draws on GDB Letter of Credit ................................................................ 57
SECTION 1302.  Enforcement by Trustee; No Reduction of Obligations ............................ 57
SECTION 1303.  Compliance with Procedures .................................................................... 58
SECTION 1304.  Supplements and Amendments to the GDB Letter of Credit
Not Requiring Consent ........................................................................... 58
SECTION 1305.  Supplements and Amendments to the GDB Letter of Credit
Requiring Consent of Holders of a Majority of Bonds ............................. 58
SECTION 1306.  Successor Letter of Credit ........................................................................ 59

### ARTICLE XIV.
MISCELLANEOUS PROVISIONS

- iii -

SECTION 1401.   Covenants of Corporation and Trustee Bind Their Successors ................. 60
SECTION 1402.   Notices ................................................................................................ 60
SECTION 1403.   Substitute Publication and Mailing.......................................................... 61
SECTION 1404.   No Third Party Rights............................................................................ 61
SECTION 1405.   Effect of Partial Invalidity ..................................................................... 61
SECTION 1406.   Effect of Covenants ............................................................................... 62
SECTION 1407.   Governing Law ...................................................................................... 62
SECTION 1408.   Payments Due on Saturdays, Sundays and Holidays................................. 62
SECTION 1409.   Headings, etc. Not Part of Agreement ...................................................... 62

## TRUST AGREEMENT

**THIS TRUST AGREEMENT**, dated as of June 1, 2004, is by and between the **PUERTO RICO PUBLIC FINANCE CORPORATION** (the "Corporation"), a governmental instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico") and a wholly-owned subsidiary of Government Development Bank for Puerto Rico ("Government Development Bank") and **U.S. BANK TRUST NATIONAL ASSOCIATION**, as trustee, a national banking association organized and existing under the laws of the United States of America (said bank and any bank, trust company or national banking association becoming successor trustee under this Agreement being hereinafter called the "Trustee").

### PREAMBLE

**FIRST**: By Act Number Seventeen (17) of the Legislature of Puerto Rico, approved September twenty-third (23rd), nineteen hundred forty-eight (1948), as amended, Government Development Bank was created as a corporation and a governmental instrumentality of the Commonwealth, with powers, among others, to create subsidiary or affiliate corporations by resolution of its Board of Directors, whenever in the opinion of said Board such creation is advisable or desirable or necessary to carry out the functions or the purposes of Government Development Bank or the exercise of its powers.

**SECOND**: By Resolution Number Five Thousand Forty-Four (5044), adopted December twelfth (12th), nineteen hundred eighty-four (1984), as amended, of the Board of Directors of Government Development Bank, the Corporation was created as a subsidiary corporation of Government Development Bank, constituting an independent governmental instrumentality of Puerto Rico separate and apart from Government Development Bank.

**THIRD**: By virtue of said Resolution Number Five Thousand Forty-Four (5044), as amended, the Corporation is authorized and empowered, among other things, to

(a)     purchase, hold, sell, exchange or otherwise dispose of bonds and other obligations of governmental instrumentalities for such price and on such terms as it shall determine;

(b)     borrow money and contract debts for its corporate purposes upon such terms and conditions as it may from time to time determine, with or without security, dispose of its obligations evidencing such borrowing, make, execute and deliver trust indentures and other agreements with respect to any such borrowing, contracting of debt, issuance of bonds, notes, debentures or other obligations, and by the authority of the Government of Puerto Rico, issue its bonds, notes, debentures or other obligations in such form, secured in such manner, and subject to such terms of redemption with or without premium, and sell the same at public or private sale for such price or prices, all as may be determined by its Board of Directors; and

(c)     make and execute agreements, contracts and other instruments necessary or desirable in the exercise of its powers and functions under said Resolution Number Five Thousand Forty-Four (5044), as amended, with any person, firm, corporation, Federal agency and with the Commonwealth and any of its political subdivisions, public agencies and other public instrumentalities.

N206950.6

**FOURTH**: By the Acts (as hereinafter defined) the Authorized Debtors (as hereinafter defined) were required to execute with Government Development Bank the agreements, promissory notes or financial contracts necessary to recognize, formalize, restructure and/or refinance (more than once if necessary) the advances, repayment commitments, obligations and/or loans of such Authorized Debtors with Government Development Bank.

**FIFTH**: Each of the Acts provides that the Commonwealth's Office of Management and Budget shall include in the annual budget of the Commonwealth, the amount necessary to pay principal, interest and any Additional Payments of the debt obligations of the Authorized Debtors arising from the restructuring and/or refinancing of the loans, subject to limitations contained in the respective Acts.

**SIXTH**: Government Development Bank has previously entered into Debt Restructuring and Assignment Agreements (the "Assignment Agreements") with the Authorized Debtors and the Corporation providing for, among other things, the restructuring and refunding of the loans by the execution of certain promissory notes (the "Existing Notes") and providing in the aggregate for the payment of, among other things, the principal of and interest on the bonds (the "Prior Bonds") issued by the Corporation to finance the purchase of the Existing Notes.

**SEVENTH**: The Corporation has determined initially to issue Bonds hereunder in the aggregate initial principal amount of ONE BILLION THREE HUNDRED FIFTY-THREE MILLION TWENTY-FIVE THOUSAND DOLLARS for the purposes of (a) restructuring and refunding a portion of the Prior Bonds, (b) refunding interest (but not principal) accrued during the Fiscal Year ending June 30, 2005, on certain of the Parity Bonds (as hereinafter defined) and (c) paying certain costs incurred by the Corporation in connection with the issuance of such Bonds.

**EIGHTH**: Upon execution and delivery of the Bonds hereunder, the Corporation, the Government Development Bank and the Authorized Debtors shall enter into Supplemental Debt Restructuring and Assignment Agreements (the "Supplemental Assignment Agreements"), providing for (A) the restructuring and refunding of a portion of the Existing Notes by the execution of certain amendments to the Existing Notes (each such note as amended shall represent the unrefunded portion of the Prior Bonds and, together with all other notes securing bonds of the Corporation payable under the Acts, shall be referred to herein as a "Parity Note" and collectively, as the "Parity Notes") and, in each case, the execution and delivery of a new note representing the portion of the Prior Bonds refunded with a portion of the proceeds of the Bonds (such new note shall be referred to herein as a "Note" and collectively as the "Notes") and (B) in the aggregate the payment of annual installments of principal, interest and Additional Payments sufficient to pay in each Fiscal Year (without duplication): (i) the interest, principal, redemption premium, if any, and Accreted Value or Appreciated Value of the Bonds which is due and payable in the Bond Year commencing within such Fiscal Year (whether at maturity, in connection with an Amortization Requirement, upon redemption or otherwise) (with interest payable on Variable Rate Bonds calculated at the maximum rate specified in such Bonds) less any amounts available in the Sinking Fund for the payment of such amounts in such Bond Year; (ii) any fees, expenses or other amounts becoming due and payable in such Bond Year to the provider, if applicable, of a Credit Facility or a Liquidity Facility (each a "Facility") under the agreement relating to such Facility or any amounts required to reimburse a Facility provider for

payments made under any such Facility in respect of the Bonds and not theretofore reimbursed; (iii) all Corporation Swap Payments (if applicable) expected to be due and payable for such Bond Year (to the extent not already included in the portion corresponding to interest on the Bonds); (iv) the amounts required to be deposited to the credit of the Reserve Account (if applicable) established under the Trust Agreement in such Bond Year, including any amounts required to cure any deficiency therein; (v) any fees or reimbursement for expenses payable to the Trustee under this Trust Agreement; (vi) any amount then due by Corporation to the Hedge Counterparty (if applicable) for breakage cost or other termination payment under the terms of any Swap Agreement (if applicable); and (vii) any other amount becoming due and payable in such Bond Year in respect of the Bonds or becoming due and payable under the provisions of this Trust Agreement.

NINTH: The Corporation has determined to provide for the issuance of additional refunding Bonds on a parity with the Bonds initially issued under the provisions hereof for the purpose of (A) providing funds, together with any other available funds, for refunding any Bonds outstanding hereunder, any Prior Bonds and any other bonds payable from Budgetary Appropriations, either in whole or in part, including the payment of any redemption premium thereon and the interest to accrue to the date fixed for redemption, (B) paying the cost of issuance of such additional refunding Bonds, (C) making a deposit to the Reserve Account (if applicable), and (D) paying capitalized interest on such additional refunding Bonds.

TENTH: The Notes securing the Bonds to be issued hereunder are payable, on a parity with the Parity Notes, from annual appropriations to be made by the Legislature of Puerto Rico pursuant to the Acts.

ELEVENTH: The Corporation has determined that the Bonds to be issued hereunder, the certificate of authentication by the Trustee to be endorsed on all such Bonds and the form of assignment shall be, respectively, in substantially the forms set forth in the resolution of the Board authorizing the issuance of such Bonds.

WHEREAS, the execution and delivery of this Agreement have been duly authorized by resolution of the Corporation; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act, the Constitution and laws of the Commonwealth, and the rules and regulations of the Corporation to happen, exist and be performed precedent to and in the execution and delivery of this Agreement have happened, exist and have been performed as so required in order to make this Agreement a legal, valid and binding trust agreement for the security of the Bonds to be issued hereunder enforceable in accordance with its terms; and

WHEREAS, the Trustee has accepted the trusts created by this Agreement and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the premises, of the acceptance by the Trustee of the trusts hereby created, and of the purchase and acceptance of the Bonds issued hereunder by the holders thereof, and for the purpose of fixing and declaring the terms and conditions upon which the Bonds are to be issued, executed,

authenticated, delivered, secured and accepted by all persons who shall from time to time be or become Holders thereof, and in order to secure: (i) the payment of the Bonds issued and at any time Outstanding hereunder and the interest and premium, if any, thereon according to their tenor, purport and effect; (ii) all Reimbursement Obligations of the Corporation to a provider of a Credit Facility or Liquidity Facility pursuant to its Reimbursement Agreement (if applicable); (iii) all obligations of the Corporation to any Hedge Counterparty under any Swap Agreement (if applicable) (the Holders of the Bonds, any provider of a Credit Facility or Liquidity Facility and the Hedge Counterparty are referred to collectively as the "Secured Parties"); and (iv) the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Corporation has executed and delivered this Agreement and does hereby assign and pledge to the Trustee all of its right, title and interest in and to the Pledged Revenues (as hereinafter defined) for the benefit of the Secured Parties, and does hereby constitute: (1) a first lien on all of the Corporation's right, title and interest in and to (A) such portion of the amounts paid and to be paid in respect of the Notes that are required under the terms of this Agreement to be deposited to the credit of the Bond Service Account and the Redemption Account, (B) the Hedge Counterparty Swap Payments, if any, (C) all moneys and investments on deposit to the credit of the Bond Service Account and the Redemption Account, and (D) all investment earnings on the foregoing, for the equal and ratable benefit of (I) the Holders from time to time of the Bonds, as security for the payment of the Bonds and the interest and premium, if any, thereon and any other amount payable hereunder and in respect of the Bonds and as security for the satisfaction of any other obligation assumed by it in connection with such Bonds (for the equal and proportionate benefit and security of all and singular the present and future Holders of the Bonds, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one Bond over any other Bond by reason of priority in the issue, sale or negotiation thereof or otherwise), (II) the provider of a Credit Facility or Liquidity Facility as security for all obligations of the Corporation under any Reimbursement Agreement (if applicable), including without limitation, for the payment of any Reimbursement Obligations thereunder, and (III) any Hedge Counterparty (if applicable), as security for the obligations of the Corporation under any Swap Agreement; (2) a first lien on all of the Corporation's right, title and interest in and to (A) such portion of the amounts paid and to be paid in respect of the Notes that are required under the terms of this Agreement to be deposited to the credit of the Surplus Account and any sub-account in the Reserve Account (if applicable), (B) all moneys and investments on deposit to the credit of the Surplus Account, and any sub-account in the Reserve Account (if applicable), and (C) all investment earnings on the foregoing, for the equal and ratable benefit of (I) the Holders from time to time of Bonds (or the particular Series of Bonds for which each such sub-account in the Reserve Account is applicable), as security for the payment of such Bonds and the interest and premium, if any, thereon and any other amount payable hereunder and in respect of such Bonds and as security for the satisfaction of any other obligation assumed by it in connection with such Bonds (for the equal and proportionate benefit and security of all and singular the present and future Holders of such Bonds, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one such Bond over any other such Bond by reason of priority in the issue, sale or negotiation thereof or otherwise) and (II) the provider of a Credit Facility or Liquidity Facility, as security for all obligations of the Corporation under any Reimbursement Agreement (if applicable), including without limitation for the payment of any Reimbursement Obligations thereunder (but, with respect to (x) amounts paid and to be paid in respect of the Notes, which amounts are

- 4 -

required to be deposited in any sub-account in the Reserve Account, and (y) all moneys, investments and investment earnings to the credit of such sub-account, such lien shall be only for the benefit of the provider of a Credit Facility or Liquidity Facility which is issued for the benefit of the Holders of Bonds for which such sub-account in the Reserve Account is established); and (3) a second lien (subject and subordinated to the first lien established under clause (2) above) on all of the Corporation's right, title and interest in and to (A) such portion of the amounts paid and to be paid in respect of the Notes that are required under the terms of this Agreement to be deposited to the credit of the Surplus Account and any sub-account in the Reserve Account (if applicable), (B) all moneys and investments on deposit to the credit of the Surplus Account and any sub-account in the Reserve Account (if applicable), and (C) all investment earnings on the foregoing, for the benefit of any Hedge Counterparty as security for the obligations of the Corporation under any Swap Agreement (if applicable) (but, with respect to (x) amounts paid and to be paid in respect of the Notes, which amounts are required to be deposited in any sub-account in the Reserve Account, and (y) all moneys, investments and investment earnings to the credit of such sub-account, such lien shall apply only to the extent that such Swap Agreement is for the benefit of the Holders of Bonds for which such sub-account in the Reserve Account is applicable); all as provided herein, and it is mutually agreed and covenanted by and between the parties hereto, as follows:

## ARTICLE I.

## DEFINITIONS

**SECTION 101.** __Definitions__   As used in this Agreement, except as otherwise defined below, words and terms shall have the meanings ascribed to them in the recitals to this Agreement.   In addition, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

**"Accreted Value"** shall mean with respect to any Capital Appreciation Bond or Capital Appreciation and Income Bond (i) as of any Valuation Date, the amount set forth for such date in the resolution authorizing such Capital Appreciation Bond or Capital Appreciation and Income Bond and (ii) as of any date other than a Valuation Date, the sum of (a) the Accreted Value on the preceding Valuation Date (or, if there is no preceding Valuation Date, the initial principal amount) and (b) the product of (1) a fraction, the numerator of which is the number of days having elapsed from the preceding Valuation Date (or from the original issue date if there is no preceding Valuation Date) and the denominator of which is the number of days from such preceding Valuation Date (or from the original issue date if there is no preceding Valuation Date) to the next succeeding Valuation Date and (2) the difference between the Accreted Values for such Valuation Dates (or between the initial principal amount and the Accreted Value on the first Valuation Date).

**"Acts"** shall mean (i) Act Number One Hundred Sixty-Four (164) of the Legislature of Puerto Rico, approved December seventeenth (17th), two thousand one (2001) ("Act 164"); (ii) Act Number Eighty-Five (85) of the Legislature of Puerto Rico, approved June thirteenth (13th), nineteen hundred ninety-eight (1998) ("Act 85"); (iii) Joint Resolution Five Hundred Twenty-Three (523) of the Legislature of Puerto Rico, approved August twenty-fourth (24th), two thousand (2000) ("Joint Resolution 523"); (iv) Act Number One Hundred Thirteen (113) of the

Legislature of Puerto Rico, approved September twenty-seventh (27th), nineteen hundred ninety-four (1994) ("Act 113"); and (v) any other Act or Joint Resolution of the Legislature of Puerto Rico which authorizes the issuance of bonds which are refunded in whole or in part with the proceeds of Bonds issued hereunder.

"**Additional Payments**" shall mean (A) any payments required to be made under any interest rate swap agreement; (B) termination payments under interest rate swap agreements or investment agreements; (C) required deposits to a debt service reserve fund; (D) redemption premiums; (E) trustee fees; (F) letter of credit fees; and (G) any other payment required to be made under a bond of the Corporation or this Agreement.

"**Agreement**" shall mean this Trust Agreement, together with all agreements supplemental hereto as herein permitted.

"**Allocable Share**" shall mean that percentage (determined from time to time by the Corporation in its absolute discretion and certified to the Trustee by the President or any Vice President of the Corporation at the time Bonds are issued hereunder) which represents the proportion that the principal amount of Bonds issued hereunder to refund a particular series of Prior Bonds bears to the aggregate principal amount of Bonds Outstanding hereunder.

"**Amortization Requirement**" shall mean, for the Term Bonds of any Series for any Bond Year, the principal amount fixed or computed for the retirement by purchase or redemption of Term Bonds in such Bond Year.

The Amortization Requirement for the Term Bonds of each Series shall be initially in the respective principal amounts for each Bond Year as fixed in a resolution of the Corporation adopted prior to the issuance of the Bonds of such Series, and the aggregate amount of such Amortization Requirements for the Term Bonds of such Series shall be equal to the aggregate principal amount of the Term Bonds of such Series.

If at the close of any Bond Year the total principal amount of Term Bonds of any Series retired by purchase or redemption, or called for redemption under the provisions of Section 403 of this Agreement during such Bond Year, shall be in excess of the amount of the Amortization Requirement for the Term Bonds of such Series for such Bond Year, then the amount of the Amortization Requirement for the Term Bonds of such Series shall be reduced for such subsequent Bond Years in such amounts aggregating the amount of such excess as shall be determined by the President in an order filed with the Trustee on or before the fifteenth (15th) day of the August following the close of such Bond Year.

It shall be the duty of the Trustee, on or before the 15th day of each Bond Year, to compute the Amortization Requirement for the then current Bond Year for the Term Bonds of each Series then Outstanding. The Amortization Requirement for the then current Bond Year shall continue to be applicable during the balance of such current Bond Year and no adjustment shall be made therein by reason of Term Bonds purchased or redeemed or called for redemption during such current Bond Year.

"**Appreciated Value**" shall mean, with respect to any Capital Appreciation and Income Bond (i) up to the Interest Commencement Date set forth in the resolution of the Board providing

for the issuance of such Bond, an amount equal to the Accreted Value of such Bond and (ii) as of any date of computation on and after the Interest Commencement Date, an amount equal to the Accreted Value of such Bond on the Interest Commencement Date.

"**Assignment Agreements**" shall have the meaning provided in the recitals hereof.

"**Authorized Debtors**" shall mean (i) the Department of Health of the Commonwealth of Puerto Rico, (ii) the Department of the Treasury of the Commonwealth of Puerto Rico, (iii) the Puerto Rico Infrastructure Finance Authority, (iv) the Puerto Rico Solid Waste Authority, (v) the Puerto Rico Aqueduct and Sewer Authority, (vi) the Puerto Rico Land Authority, (vii) the Puerto Rico Sugar Corporation, (viii) the Office for the Improvement of Public Schools, (ix) the Puerto Rico Maritime Shipping Authority, (x) the Housing Bank and Finance Agency of Puerto Rico and its successor in interest, the Puerto Rico Housing Finance Authority, (xi) the Hotel Development Corporation and (xii) any other debtor of the Corporation or the Government Development Bank for which the Corporation has issued Prior Bonds.

"**Beneficial Owner**" shall mean, whenever used with respect to a Bond, the person in whose name such Bond is recorded as the beneficial owner of such Bond by a Participant on the records of such Participant or such person's subrogee.

"**Board**" shall mean the Board of Directors of the Corporation as constituted from time to time and which shall be the Board of Directors of Government Development Bank as provided by Resolution Number Five Thousand Forty-Four (5044), adopted December twelfth (12th), nineteen hundred eighty-four (1984) by the Board of Directors of Government Development Bank, as amended, or, if said Board shall be abolished, the board or body succeeding to the principal functions thereof or to whom the powers of the Corporation shall be given by law.

"**Bond Service Account**" shall mean the account of that name established in the Sinking Fund under Section 401 hereof.

"**Bond Year**" shall mean the period commencing on the first day of August of any year and ending on the last day of July of the following year.

"**Bondholder**," "**Holder**," "**holder**," "**Holder of Bonds**," or "**Owner**" or any similar term, shall mean any person who shall be the registered owner of any Outstanding Bond or Bonds.

"**Bonds**" or "**bonds**" shall mean the bonds of the Corporation issued under the provisions of Sections 207 and 208 hereof.

"**Budgetary Appropriation**" shall mean the funds appropriated by the Legislature of Puerto Rico in the annual budget of capital improvements and operating expenses of the Commonwealth for any Fiscal Year for the payment of the Notes and the Parity Notes pursuant to the provisions of the Acts or, in the case such budget of the Commonwealth for any Fiscal Year has not been approved by the commencement of such Fiscal Year, until such budget is approved, the funds representing the amounts which had been appropriated in the budget of the Commonwealth for the previous Fiscal Year for the payment of the Notes and the Parity Notes

pursuant to the provisions of the Acts in accordance with Article VI, Section 6 of the Constitution of the Commonwealth.

**"Business Day"** shall mean a day other than a Saturday, Sunday or a day on which commercial banks in the City of New York, New York, or San Juan, Puerto Rico, are closed to the public.

**"Capital Appreciation Bonds"** shall mean any Bonds the accruing interest on which is compounded periodically on each of the dates designated for compounding in the resolution authorizing said Bonds and payable in an amount equal to the then current Accreted Value only at the maturity, earlier redemption or other payment date therefor, all as so provided by such resolution, and which may be either Serial Bonds or Term Bonds.

**"Capital Appreciation and Income Bonds"** shall mean any Bonds the accruing interest on which is not paid prior to the Interest Commencement Date specified in the resolution authorizing such Bonds and the Appreciated Value for such Bonds is compounded periodically on the dates designated in such resolution prior to the Interest Commencement Date for such Capital Appreciation and Income Bonds, and which may be either Serial Bonds or Term Bonds.

**"Capitalized Interest Sub-account"** shall mean the sub-account of that name established in the Bond Service Account under Section 401 hereof.

**"Corporation Swap Payments"** shall mean the net payments required to be made by the Corporation to the Hedge Counterparty under a Rate Swap (if applicable).

**"Credit Facility"** shall mean an irrevocable letter of credit, policy of municipal bond insurance, guaranty, purchase agreement, credit agreement or similar facility in which the person providing such facility irrevocably agrees to provide funds to make payment of the principal of, premium, if any, and interest on Bonds to which such Credit Facility relates.

**"DTC"** shall mean The Depository Trust Company, a limited purpose trust company organized under the laws of the State of New York, and its successors and assigns.

**"Existing Notes"** shall have the meaning provided in the recitals hereof.

**"Facility"** shall have the meaning provided in the recitals hereof.

**"Fiscal Year"** shall mean the period commencing on the first day of July of any year and ending on the last day of June of the following year.

**"GDB Letter of Credit"** shall mean each of the irrevocable, transferable standby letters of credit issued by Government Development Bank in favor of the Trustee solely for the benefit of the holders of the Bonds of one or more Series.

**"GDB Reimbursement Agreement"** shall mean each of the Letter of Credit and Reimbursement Agreements between the Corporation and Government Development Bank dated June Twenty-Eighth (28th), two thousand four (2004) relating to a GDB Letter of Credit and any

additional Letter of Credit Agreement between the Corporation and Government Development
Bank relating to a GDB Letter of Credit.

"**Government Obligations**" shall mean (i) direct obligations of, or obligations the timely
payment of principal of and the interest on which are unconditionally guaranteed by, the United
States Government, (ii) direct obligations of, or obligations the principal of and interest on which
are unconditionally guaranteed by, any of the following: Banks for Cooperatives, Federal Farm
Credit Banks, Federal Home Loan Banks, Export-Import Bank of the United States, Federal
Financing Bank, Government National Mortgage Association, Farmer's Home Administration,
Federal Home Loan Mortgage Corporation, Federal National Mortgage Association or Federal
Housing Administration, and which obligations are rated at the time of purchase in the highest
rating category by both Moody's and S&P, (iii) all other obligations issued or unconditionally
guaranteed as to principal and interest by an agency or instrumentality controlled or supervised
by and acting as an instrumentality of the United States Government pursuant to authority
granted by the Congress, which obligations are rated at the time of purchase in the highest rating
category by both Moody's and S&P and (iv) receipts evidencing the ownership of payments of
principal of or interest on any of such obligations, which receipts are rated in the highest rating
category by both Moody's and S&P.

"**Hedge Counterparty**" shall mean the provider of any Rate Swap with respect to the
Bonds as counterparty under a Swap Agreement which provider must have a rating with respect
to its long-term unsecured debt which is rated in one of the three highest rating categories
(without regard to any gradation within such category) by S&P or Moody's.

"**Hedge Counterparty Swap Payments**" shall mean the net payments required to be
made by a Hedge Counterparty to the Corporation under a Rate Swap.

"**Interest Commencement Date**" shall mean, with respect to any Capital Appreciation
and Income Bond, the date specified in the resolution providing for the issuance of such Bond
after which interest accruing on such Bond shall be payable on a periodic basis, with the first
such payment date being the applicable Interest Payment Date immediately succeeding such
Interest Commencement Date.

"**Interest Payment Dates**" shall mean the dates on which interest on a Series of Bonds
or portion thereof is scheduled to be due and payable, as is provided by a resolution of the Board
adopted prior to the issuance of such Series of Bonds.

"**Interim Bonds**" shall mean any Bonds issued on an interim basis that are expected to
be repaid from the proceeds of Bonds or other indebtedness.

"**Investment Agreement**" shall mean any agreement for the investment of moneys
entered into by the Trustee with a Qualified Financial Institution or collateralized at all times by
Government Obligations having a market value at least equal to the principal amount of such
agreement, as to which collateral the Trustee has a perfected first priority security interest, which
collateral is held by the Trustee or its agent free and clear of claims by third parties and which
collateral will result in the agreement being rated in the highest rating category by both Moody's
and S&P.

**"Investment Obligations"** shall mean (i) Government Obligations, (ii) time deposits, certificates of deposit or similar arrangements with, or banker's acceptances issued by, any bank, banking association or trust company, including the Trustee, the deposits of which are insured by the Federal Deposit Insurance Corporation having a combined capital and surplus aggregating not less than ONE HUNDRED FIFTY MILLION DOLLARS ($150,000,000) and reported deposits of not less than TWO HUNDRED FIFTY MILLION DOLLARS ($250,000,000), (iii) repurchase agreements with banks mentioned in (ii) above, including the Trustee, or with primary government dealers having a capital and surplus in excess of ONE HUNDRED FIFTY MILLION DOLLARS ($150,000,000), with respect to any of the securities mentioned in (i) above, provided such securities are on deposit with the Trustee (or any duly appointed agent of the Trustee) and such agreements are structured as sale purchase agreements rather than secured loans, (iv) obligations issued by the Commonwealth or any state or territory of the United States, which are rated in one of the three highest rating categories (without regard to any gradations within such category) by both Moody's and S&P, (v) municipal obligations, the payment of the principal of and the interest on which is insured, which are rated in one of the three highest rating categories (without regard to any gradations within such category) by both Moody's and S&P, (vi) commercial paper rated, or backed by a letter of credit or line of credit the provider of which is rated, in the highest rating category (without regard to any gradations within such category) by both Moody's and S&P, (vii) an Investment Agreement, (viii) money market accounts of any state, Commonwealth or federally chartered bank, banking association, trust company or subsidiary trust company, including the Trustee, that is rated or whose parent bank is rated in the highest short-term rating category or in the highest long-term rating category by Moody's or S&P (without regard to any gradations within such category) or money market funds registered under the Investment Company Act of 1940, as amended, whose shares are registered under the Securities Act of 1933, as amended, and having a rating by S&P of "AAAmG" or "AAAm", (ix) units of beneficial interest in any non-arbitrage investment program pools created by Government Development Bank or any of its subsidiaries or affiliates, (x) any obligation permitted under the laws of the Commonwealth which are rated in one of the three highest rating categories (without regard to any gradations within such category) by both Moody's and S&P, and (xi) any securities otherwise permitted as eligible collateral under Act Number Sixty-Nine (69) of the Legislature of Puerto Rico, approved August fourteen (14), nineteen hundred ninety-one (1991), as amended.

**"Legislative Appropriation"** shall mean the Budgetary Appropriations appropriated by the Legislature of Puerto Rico for the payment of the Notes pursuant to the provisions of the Acts or, in the case such budget of the Commonwealth for any Fiscal Year has not been approved by the commencement of such Fiscal Year, until such budget is approved, the funds representing the Budgetary Appropriations appropriated in the budget of the Commonwealth for the previous Fiscal Year for the payment of the Notes pursuant to the provisions of the Acts in accordance with Article VI, Section 6 of the Constitution of the Commonwealth.

**"Liquidity Facility"** shall mean a letter of credit, policy of municipal bond insurance, guaranty, purchase agreement or similar facility in which the person providing such facility agrees to provide funds to pay the purchase price of Put Bonds upon their tender by the Holders of Put Bonds.

**"Maximum Difference"** shall mean, with respect to any Series of Bonds, the maximum increase from one Fiscal Year to the next (through the date specified in the resolution authorizing such Series of Bonds) in the aggregate debt service on such Bonds.

**"Moody's"** shall mean Moody's Investors Service, Inc., a corporation organized and existing under the laws of the State of Delaware, its successors and their assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "Moody's" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Corporation.

**"Notes"** shall mean the promissory notes of the Authorized Debtors executed in connection with the refunding of all or a portion of the outstanding Prior Bonds pursuant to the Supplemental Assignment Agreements, and pledged to the Trustee pursuant to this Agreement.

**"Outstanding"** when used with reference to the Bonds shall mean, as of any date of determination, all Bonds theretofore authenticated and delivered except:

(i) Bonds theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;

(ii) Bonds paid or Bonds that are deemed paid and no longer outstanding, as provided herein;

(iii) Bonds in lieu of which other Bonds have been issued pursuant to the provisions hereof relating to Bonds destroyed, mutilated, stolen or lost, unless evidence satisfactory to the Trustee has been received that any such Bond is held by a bona fide purchaser;

(iv) Bonds tendered or deemed tendered, as provided in the resolution of the Board for any Series of Bonds; and

(v) for purposes of any consent or other action to be taken hereunder by the Holders of a specified percentage principal amount of Bonds, Bonds actually known by the Trustee to be held by or for the account of the Corporation.

**"Parity Bonds"** shall mean bonds of the Corporation issued pursuant to the Acts and secured by one or more Parity Notes.

**"Parity Notes"** shall have the meaning provided in the recitals hereof.

**"Participant"** shall mean each broker-dealer, bank or other financial institution for which DTC or any other Securities Depository holds securities as a Securities Depository.

**"Pledged Revenues"** shall mean all of the Corporation's right, title and interest in and to (i) all amounts paid and to be paid in respect of the Notes, (ii) all moneys and Investment Obligations on deposit to the credit of the Sinking Fund, (iii) the Hedge Counterparty Swap Payments, if any, and (iv) all investment earnings on the foregoing.

**"Prior Bonds"** shall have the meaning provided in the recitals hereof.

**"Predecessor Bonds"** of any particular bond means every previous bond evidencing all or a portion of the same debt as that evidenced by such particular bond; and, for purposes of this definition, any bond authenticated and delivered under Section 211 of this Agreement in lieu of a mutilated, destroyed or lost bond shall be deemed to evidence the same debt as the mutilated, destroyed or lost bond.

**"President"** shall mean the President of the Corporation, or if there is no President, then the person designated by the Board or by the bylaws of the Corporation to perform the functions of the President.

**"Principal Corporate Trust Office"** or "principal corporate trust office" of the Trustee shall mean the principal corporate trust office of the Trustee, at which, at any particular time, its corporate trust business shall be administered, except that with respect to presentation of Bonds for payment or for registration of transfer or exchange and the location of the bond registration books, such term shall mean the office or agency of the Trustee, if different, at which, at any particular time, its corporate agency business shall be conducted.

**"Put Bonds"** shall mean Bonds that by their terms may be tendered by and at the option of the Holder thereof for payment prior to the stated maturity thereof.

**"Qualified Financial Institution"** shall mean the Federal National Mortgage Association, or any bank, trust company or national banking association, or a corporation subject to registration with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956, as amended, or any government securities dealer, insurance company or other financial institution, in each case whose unsecured obligations or uncollateralized long term debt obligations (or obligations guaranteed by its parent entity) shall at all times during the term of the Investment Agreement issued by such Qualified Financial Institution have been assigned a rating by S&P and Moody's in one of the three highest rating categories (without regard to any gradations within any such category), or which has issued a letter of credit, contract or agreement in support of debt obligations which at all times shall have been so rated.

**"Rate Swap"** shall mean any interest rate swap arrangement between the Corporation and a Hedge Counterparty pursuant to any Swap Agreement and related documentation.

**"Rating Agencies"** shall mean S&P and Moody's.

**"Redemption Account"** shall mean the account of that name established in the Sinking Fund under Section 401 hereof.

**"Reimbursement Agreement"** shall mean any letter of credit and reimbursement agreement or other similar agreement to pay the amounts due to the provider of a Credit Facility or a Liquidity Facility between the Corporation and any provider of a Credit Facility or a Liquidity Facility.

**"Reimbursement Obligation"** shall mean all amounts payable by the Corporation to a provider of a Credit Facility or Liquidity Facility pursuant to its agreement with such provider, including any fees payable and expenses reimbursable to such provider.

"**Reserve Account**" shall mean the account of that name which may be established in the Sinking Fund under Section 405 hereof.

"**Reserve Account Insurance Policy**" shall mean the insurance policy, surety bond or other evidence of insurance deposited to the credit of the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, which policy, bond or other evidence of insurance constitutes an unconditional senior obligation of the issuer thereof. The issuer thereof shall be a municipal bond insurer whose senior debt obligations, ranking pari passu with its obligations under such policy, bond or other evidence of insurance, are rated, at the time of deposit for the credit of the Reserve Account, in any of the three highest rating categories (without regard to any gradations within any such category) by Moody's and S&P.

"**Reserve Account Letter of Credit**" shall mean the irrevocable, transferable letter of credit deposited to the credit of the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, which letter of credit constitutes an unconditional senior obligation of the issuer thereof. The issuer of such letter of credit shall be Government Development Bank or a banking association, bank or trust company or branch thereof whose senior debt obligations, ranking pari passu with its obligations under such letters of credit are rated at the time of deposit to the credit of the Reserve Account, in any of the three highest rating categories (without regard to any gradations within any such category) by Moody's and S&P.

"**S&P**" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., a corporation organized and existing under the laws of the State of New York, its successors, its assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "S&P" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Corporation.

"**Secretary**" shall mean the Secretary or Assistant Secretary of the Corporation from time to time, or if there is no secretary or assistant secretary, then any person designated by the Board or by the bylaws of the Corporation to perform the functions of the Secretary.

"**Securities Depository**" means DTC, or any other depository trust company (or any of its designees) appointed for the Bonds.

"**Serial Bonds**" shall mean the Bonds designated as serial bonds in the resolutions authorizing such Bonds.

"**Series**" shall mean all of the Bonds authenticated and delivered at one time on original issuance and pursuant to any resolution authorizing such Bonds as a separate Series of Bonds, or any Bonds thereafter authenticated and delivered in lieu of or in substitution for such Bonds pursuant to Article II hereof, regardless of variations in maturity, interest rate or other provisions.

"**Series 2004 Bonds**" shall mean the Puerto Rico Public Finance Corporation 2004 Series A Bonds and 2004 Series B Bonds.

"**Sinking Fund**" shall mean the "Puerto Rico Public Finance Corporation Restructuring Sinking Fund," a special fund created and designated by Section 401 hereof.

**"Successor Letter of Credit"** shall have the meaning provided in Section 1306 hereof.

**"Supplemental Assignment Agreements"** shall have the meaning provided in the recitals hereof.

**"Surplus Account"** shall mean the account of that name established in the Sinking Fund under Section 401 hereof.

**"Swap Agreement"** shall mean any Interest Rate Swap Agreement between the Corporation and a Hedge Counterparty relating to the Bonds.

**"Term Bonds"** shall mean the Bonds designated as term bonds in the resolutions authorizing such Bonds.

**"Trustee"** shall mean the person named as the "Trustee" in the first paragraph of this Agreement until a successor Trustee shall have become such, and thereafter "Trustee" shall mean or include each person who is then a Trustee hereunder.

**"Valuation Date"** shall mean, with respect to any Capital Appreciation Bond or Capital Appreciation and Income Bond, the date or dates set forth in the resolution authorizing such bonds on which Accreted Values are assigned to the Capital Appreciation Bonds or Capital Appreciation and Income Bonds.

**"Variable Rate Bonds"** shall mean Bonds issued with a variable, adjustable, convertible or similar interest rate that is not fixed in percentage at the date of issue for the term thereof.

**SECTION 102.   Miscellaneous.**   Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.   Words defined in Section 101 hereof that appear in this Agreement in lower case shall have the meanings ascribed to them in the definitions in Section 101 unless the context shall otherwise indicate.   The words "Bond," "bond," "Owner," "Holder," "holder" and "person" shall include the plural as well as the singular number unless the context shall otherwise indicate.   The word "person" shall include corporations, firms and associations, including public bodies, as well as natural persons, unless the context shall otherwise indicate.   The word "Bond" or "Bonds" shall mean any Bond or Bonds or all of the Bonds, as the case may be, issued under the provisions of this Agreement.

### ARTICLE II.

### FORM, EXECUTION, AUTHENTICATION, DELIVERY, EXCHANGE AND REGISTRATION OF BONDS

**SECTION 201.   Limitation on Issuance of Bonds.**   No Bonds may be issued under the provisions of this Agreement except in accordance with the provisions of this Article.

**SECTION 202.   Form of Bonds.**   The Bonds issued under the provisions of this Agreement shall be in the forms set forth in the resolution of the Board providing for the issuance of such Bonds, and may reflect, without limitation, provisions for Capital Appreciation Bonds, Capital Appreciation and Income Bonds, Interim Bonds, Variable Rate Bonds, and Put

Bonds. All such Bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or of any securities exchange on which the Bonds may be listed or traded or any usage or requirement of law with respect thereto or as may be authorized by the Corporation and approved by the Trustee.

**SECTION 203. Details of Bonds.** The Bonds shall be issued in fully registered form.

The Bonds of a Series shall be payable, with respect to interest, principal and premium, if any, in any coin or currency of the United States of America which at the time of payment is legal tender for public and private debts (or other coin or currency provided for in the resolution authorizing the issuance of the particular Series). The principal of Bonds shall be payable only to the Holder or his legal representative at the principal corporate trust office of the Trustee and at such other office or agency of any paying agent as the Board may designate from time to time upon the presentation and surrender of the Bonds (except as otherwise contemplated in Section 212 hereof).

The Bonds of each Series shall be dated as provided in the resolution of the Board authorizing such Series; shall bear interest, which may be fixed or variable at the rates provided in the resolution of the Board authorizing such Series, from the Interest Payment Date next preceding the date on which they are authenticated, unless authenticated on an Interest Payment Date, in which event they shall bear interest from such Interest Payment Date, or unless authenticated before the first Interest Payment Date in which event they shall bear interest from their date; provided, however, that if at the time of authentication of any Bond interest is in default, such Bond shall bear interest from the date to which interest has been paid. Unless otherwise provided in the resolution of the Board approving any series of bonds, interest on the bonds shall be computed on the basis of a three hundred sixty (360) day year of twelve (12) thirty (30) day months.

Capital Appreciation Bonds shall bear interest as described under the defined term Accreted Value, payable only upon redemption or maturity thereof, and Capital Appreciation and Income Bonds shall bear interest as described under the defined term Appreciated Value, payable from and after the Interest Commencement Date or upon the prior redemption thereof.

Prior to the issuance of Variable Rate Bonds, the Board shall adopt a resolution specifying, without limitation, the interest rate calculation methods and any conversion features, and any Credit Facility or any Liquidity Facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the Holder of any such Bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Corporation and providing a copy of the notice with the tender of the Variable Rate Bond to such agent. The designated agent for the Corporation, in accordance with the terms of a remarketing agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Corporation at a price provided for in such agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Corporation may be authorized to draw upon a previously executed Credit Facility or Liquidity Facility for payment of interest and principal for a particular series of Variable Rate Bonds to which such Credit Facility or Liquidity Facility shall

pertain.  The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Corporation, the terms and provisions for the remarketing agreement, and the terms and provisions of the Credit Facility or Liquidity Facility shall be as designated by a resolution of the Board pertaining to the Variable Rate Bonds to which such terms and provisions are applicable prior to the issuance thereof.  Prior to the issuance of Put Bonds, the Board shall adopt a resolution which may provide for some of the above terms and provisions.

The interest rate of any Bonds shall not exceed the applicable maximum legal rate per annum.  Subject to the provisions of Section 212 hereof, interest on the Bonds shall be payable by check mailed to the registered Holder thereof by the Trustee or any other paying agents appointed by the Corporation at the address shown on the registration books of the Corporation held by the Trustee at the close of business on the fifteenth (15th) day (whether or not a business day) of the calendar month preceding an Interest Payment Date or such other date as may be established by the resolution authorizing the issuance of such Bonds; provided that to the extent provided in the resolution authorizing the issuance of such Bonds interest shall be payable by wire transfer.

The Bonds shall be lettered and numbered in such manner and shall be in the denominations provided in the resolutions of the Board authorizing their issuance.  In the event that interest is not punctually paid or duly provided for, such interest shall forthwith cease to be payable to the Holder shown on the registration books held by the Trustee at the close of business on the fifteenth (15th) day of the calendar month preceding such Interest Payment Date and may be paid to the person in whose name Bonds are registered at the close of business on a special record date to be fixed by the Trustee, on a special payment date designated by the Trustee, notice having been given by the Trustee to the Holders not less than ten (10) days prior to such special record date or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which Bonds may be listed and upon such notice as may be required by such exchange, or as more fully provided for in the resolution of the Board authorizing the issuance of the Bonds.  The above procedure for the payment of defaulted interest overdue may be varied in resolutions of the Board authorizing the issuance of particular Series of Bonds.

The Bonds shall be signed in the name of the Corporation by the President or with his facsimile signature or by the Executive Vice President or with his facsimile signature and the corporate seal of the Corporation shall be impressed or a facsimile of such seal shall be imprinted on the Bonds and attested by the Secretary or his facsimile signature.  In case any officer whose signature or a facsimile of whose signature shall appear on any Bonds shall cease to be such officer before the delivery of such Bonds, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes as if he had remained in office until such delivery, and also any Bonds may bear the facsimile signature of or may be signed by such persons as at the actual time of the execution of such Bonds shall be the proper officers to sign such Bonds although on the date of such Bonds such persons may not have been such officers.

**SECTION 204.  Authentication of Bonds**.  Only such of the Bonds as shall have endorsed thereon a certificate of authentication substantially in the form set forth in the resolution of the Board authorizing the issuance thereof, duly executed by the Trustee, shall be

entitled to any benefit or security under this Agreement. No Bond shall be valid or become obligatory for any purpose or be entitled to any benefit or security under this Agreement unless and until such certificate of authentication shall have been duly executed by the Trustee, and such certificate of the Trustee upon any such Bond shall be conclusive evidence that such Bond has been duly authenticated and delivered under this Agreement. The Trustee's certificate of authentication on any Bond shall be deemed to have been duly executed if signed by an authorized signatory of the Trustee, but it shall not be necessary that the same signatory sign the certificate of authentication on all of the Bonds that may be issued hereunder at any one time.

**SECTION 205. Exchange and Registration of Transfer.** Bonds, upon surrender thereof at the principal corporate trust office of the Trustee, together with an assignment duly executed by the Holder or his attorney or legal representative in the form set forth on the Bonds or such other form as may be satisfactory to the Trustee, may, at the option of the Holder thereof, be exchanged for an equal aggregate principal amount (maturity amount in the case of Capital Appreciation Bonds or Capital Appreciation and Income Bonds) of Bonds of the same Series and maturity, of any denomination or denominations authorized by this Agreement, and bearing interest at the same rate, in the same form as the Bonds surrendered for exchange.

The Trustee shall keep books at its principal corporate trust office for the registration of and for the registration of transfers of the Bonds as provided in this Agreement. The transfer of any Bond may be registered only upon the books kept for the registration of and registration of transfers of Bonds upon surrender thereof to the Trustee together with an assignment duly executed by the Holder or his attorney or legal representative in the form of the assignment set forth on the Bonds or such other form as may be satisfactory to the Trustee. Upon any such registration of transfer, the Corporation shall execute and the Trustee shall authenticate and deliver in exchange for such Bond a new Bond or Bonds registered in the name of the transferee, of any denomination or denominations authorized by this Agreement, in an aggregate principal amount equal to the principal amount (maturity amount in the case of Capital Appreciation Bonds or Capital Appreciation and Income Bonds) of such Bond, of the same Series and maturity and bearing interest at the same rate.

In all cases in which Bonds shall be exchanged or transferred hereunder, the Corporation shall execute and the Trustee shall authenticate and deliver at the earliest practicable time Bonds in accordance with the provisions of this Agreement. The Corporation or the Trustee may make a charge for every such exchange or registration of transfer of Bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer, but no other charge shall be made to any Holder for exchanging or registering the transfer of Bonds. Any Bond surrendered in any such exchange or transfer shall be cancelled by the Trustee as provided in Section 304 hereof. Neither the Corporation nor the Trustee shall be required to make any such exchange or registration of transfer of any Bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of such Bond, or after a Bond or any portion thereof has been selected for redemption.

If any Bonds are issued for sale in any taxable market outside of the Commonwealth, the Trustee shall register such Bonds or any transfer or exchange thereof only in accordance with

any restrictions on transferability that may be set forth in the resolution of the Board providing for the issuance of such Bonds.

SECTION 206.  **Ownership of Bonds**.  As to any Bond, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of and premium, if any, and interest on any such Bond shall be made only to the Holder thereof or his legal representative.  All such payments shall be valid and effectual to satisfy and discharge the liability upon such Bond, including the premium, if any, and interest thereon, to the extent of the sum or sums so paid.

Any Holder of any Bond is hereby granted power to transfer absolute title thereto by assignment thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his assignor or any person in the chain of title and before the maturity of such Bond.  Every prior Holder of any Bond shall be deemed to have waived and renounced all of his equities or rights therein in favor of every such bona fide purchaser, and every such bona fide purchaser shall acquire absolute title thereto and to all rights represented thereby.

SECTION 207.  **Authorization of Initial Series of Bonds**.  There shall be initially issued under and secured by this Agreement two Series of Bonds of the Corporation.  One Series shall be designated "Puerto Rico Public Finance Corporation 2004 Series A Bonds" (the "2004 Series A Bonds") and shall be issued in the aggregate initial principal amount of ONE BILLION TWO HUNDRED SIX MILLION ONE HUNDRED THIRTY THOUSAND DOLLARS ($1,206,130,000).  The second Series shall be designated "Puerto Rico Public Finance Corporation 2004 Series B Bonds" (the "2004 Series B Bonds") and shall be issued in the aggregate principal amount of ONE HUNDRED FORTY-SIX MILLION EIGHT HUNDRED NINETY-FIVE THOUSAND DOLLARS ($146,895,000).  The Series 2004 Bonds shall be issued for the purposes set forth in the resolutions of the Board authorizing the Series 2004 Bonds.  The terms of such Bonds including, but not limited to, interest rates, Amortization Requirements, redemption provisions and maturity dates and the disposition of the proceeds of the Series 2004 Bonds shall be as provided in the resolutions of the Board authorizing the Series 2004 Bonds.

Each of the Series 2004 Bonds shall be executed in the form and manner set forth in the resolutions of the Board providing for the issuance thereof and shall be deposited with the Trustee for authentication, but before the Series 2004 Bonds shall be authenticated and delivered by the Trustee, there shall be filed with the Trustee the following:

(i)        a copy, certified by the Secretary, of the resolutions mentioned above;

(ii)       a copy, certified by the Secretary, of the resolutions directing the authentication and delivery of the Series 2004 Bonds to or upon the order of the purchasers therein named upon payment of the purchase price for each Series therein set forth;

(iii)      an opinion of counsel, who may be counsel for the Corporation, addressed to the Trustee, to the effect that (A) the Corporation has the legal right and power to enter

into this Agreement, the Supplemental Assignment Agreements, the Swap Agreement (if applicable) and the GDB Reimbursement Agreement and any other Reimbursement Agreement (if applicable) and has duly authorized and validly executed and delivered this Agreement, the Supplemental Assignment Agreements, the Swap Agreement (if applicable) and the GDB Reimbursement Agreement and any other Reimbursement Agreement (if applicable), and this Agreement, the Supplemental Assignment Agreements, the Swap Agreement (if applicable) and the GDB Reimbursement Agreement and any other Reimbursement Agreement (if applicable) are each legally valid and binding upon the Corporation and enforceable in accordance with their terms, (B) this Agreement creates a legally valid and effective pledge of the moneys, securities and funds (including the Notes and the payments thereunder) held or set aside under this Agreement as security for such Bonds, for the obligations of the Corporation under the GDB Reimbursement Agreement and any other Reimbursement Agreement (if applicable), the Swap Agreement (if applicable) and for the payment of any Reimbursement Obligation owed to the provider of any Credit Facility or Liquidity Facility (if applicable), subject to the application thereof as required and on the conditions permitted by this Agreement, and the Notes are not subject to any lien, charge or encumbrance whatsoever except the pledge of this Agreement, and no filing or recording of any document is necessary in order to make such pledge effective or to continue it in effect (or specifying the place or places, if any, where such filing or recording is necessary and furnishing any officially authenticated certificates, or other documents, by which such filing or recording is evidenced), (C) the issuance of such Bonds and the execution and delivery of this Agreement, the Supplemental Assignment Agreements, the Swap Agreement (if applicable) and the GDB Reimbursement Agreement and any other Reimbursement Agreement (if applicable) will not violate any provision of law or of the bylaws of the Corporation or result in the breach of, or constitute a default under, any agreement, indenture or other instrument known to such counsel to which the Corporation is a party or by which it may be bound, (D) no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the legal issuance of such Bond or the execution or delivery of this Agreement, the Supplemental Assignment Agreements, the Swap Agreement (if applicable) and the GDB Reimbursement Agreement and any other Reimbursement Agreement (if applicable) (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the legal issue of such Bonds or the execution or delivery of this Agreement, the Supplemental Assignment Agreements, the Swap Agreement (if applicable) and the GDB Reimbursement Agreement and any other Reimbursement Agreement (if applicable), it shall specify and furnish any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced), (E) the form and terms of such Bonds have been established by or pursuant to one or more Board resolutions, in conformity with the provisions of this Agreement, (F) upon authentication by the Trustee, such Bonds will be legally valid and binding direct obligations of the Corporation enforceable in accordance with their terms and the terms of this Agreement and have been duly and validly authorized and issued in accordance with applicable law and this Agreement, and (G) all conditions precedent to the authentication and delivery of such Bonds have been fulfilled;

(iv)        an opinion of counsel for Government Development Bank, addressed to the Trustee, to the effect that (A) Government Development Bank has the legal right and power to enter into the Supplemental Assignment Agreements and has duly authorized and validly executed and delivered the Supplemental Assignment Agreements, and the Supplemental Assignment Agreements are legally valid and binding upon Government Development Bank and enforceable in accordance with their terms, (B) the execution and delivery of the Supplemental Assignment Agreements will not violate any provision of law or of the bylaws of Government Development Bank or result in the breach of, or constitute a default under, any agreement, indenture or other instrument known to such counsel to which Government Development Bank is a party or by which it may be bound, (C) no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the execution and delivery of the Supplemental Assignment Agreements (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the execution and delivery of the Supplemental Assignment Agreements, it shall specify and furnish any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced), and (D) the Existing Notes were acquired by Government Development Bank in good faith and for value, and immediately prior to the delivery thereof to the trustees under the trust agreements for the Prior Bonds, were not subject to any lien or encumbrances of any nature whatsoever and were not in default as to the payment of principal or interest;

(v)        an opinion of counsel to each of the Authorized Debtors stating that (A) the Note of such Authorized Debtor is its valid obligation, (B) such Authorized Debtor has the legal right and power to enter into the Supplemental Assignment Agreement among such Authorized Debtor, Government Development Bank and the Corporation and has duly authorized and validly executed and delivered such Supplemental Assignment Agreement, and such Note and such Supplemental Assignment Agreement are legally valid and binding upon such Authorized Debtor and the Supplemental Assignment Agreement is enforceable in accordance with its terms, (C) the execution and delivery of such Note and such Supplemental Assignment Agreement will not violate any provision of law or of the bylaws of such Authorized Debtor or result in the breach of, or constitute a default under, any agreement, indenture or other instrument to which such Authorized Debtor is a party or by which it may be bound, (D) no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the execution and delivery of such Note and such Supplemental Assignment Agreement (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the execution and delivery of such Note and such Supplemental Assignment Agreement, it shall specify and furnish any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced);

(vi)        an opinion of counsel to Government Development Bank and the provider of any other Credit Facility or Liquidity Facility (if applicable), addressed to the Trustee, to the effect that each of the GDB Letters of Credit or any other Credit Facility or Liquidity Facility (if applicable), is a legal, valid and binding obligation of Government Development Bank or the provider of any other Credit Facility or Liquidity Facility (if

applicable) enforceable in accordance with its terms except to the extent that the enforceability of each of the GDB Letters of Credit or any other Credit Facility or Liquidity Facility (if applicable) may be limited by bankruptcy, insolvency or other laws affecting creditors' rights generally and subject to general principles of equity (regardless of whether said enforceability is considered in a proceeding in equity or at law).

  (vii)  the Series 2004 Notes;

  (viii)  the GDB Letters of Credit or any other Credit Facility or Liquidity Facility (if applicable), duly executed; and

  (ix)  such additional legal opinions, certificates, proceedings, instruments and other documents as may be necessary to evidence due execution and issuance of the Series 2004 Bonds.

When the documents mentioned above in this Section shall have been filed with the Trustee and when said Series 2004 Bonds shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver said Series 2004 Bonds to or upon the order of the purchasers named in the resolutions mentioned in clause (ii) of this Section, but only upon payment to the Trustee of the purchase price of said Series 2004 Bonds.

The opinions required by items (iii), (iv) and (v) relating to the enforceability of the Bonds, this Trust Agreement, the Supplemental Assignment Agreements, the GDB Reimbursement Agreements or any other Reimbursement Agreement (if applicable) and the Swap Agreement (if applicable) may be qualified by customary exceptions relating to bankruptcy and similar laws affecting creditors' rights generally and, as to enforceability, to general principles of equity (regardless of whether such enforcement is sought in a proceeding in equity or at law).

  **SECTION 208.** **Refunding Bonds**. Bonds may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, at any time or times solely for the purpose of (i) providing funds for refunding all or any part of the Outstanding Bonds of any one or more Series by payment at maturity or redemption at a selected redemption date or dates or combination of such payment at maturity and redemption, including the payment of any redemption premium thereon, (ii) making a deposit to the Reserve Account (if applicable), (iii) paying capitalized interest on such refunding Bonds, and (iv) paying the costs of issuance of such refunding Bonds.  No refunding Bonds may be issued unless the amounts of principal and interest payable under the Notes (assuming timely payments under the Notes) after the issuance of such refunding Bonds are sufficient to pay the principal of and interest on all Bonds Outstanding after the issuance of such refunding Bonds, together with other amounts required to be paid by the Corporation with respect to the Bonds, any Credit Facility or Liquidity Facility relating thereto, any Corporation Swap Payments, and this Agreement.  In addition, no refunding Bonds may be issued unless the aggregate of the stated amounts of each of the GDB Letters of Credit and Successor Letters of Credit is not less than the estimated Maximum Difference after the issuance of such refunding Bonds as certified by the President or any Executive Vice President of the Corporation.

Before any Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution authorizing the issuance of such Bonds, fixing the amount and the details of the Bonds, and describing the Bonds to be refunded. Such Bonds shall be designated separate from the Series 2004 Bonds and shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law, shall be stated to mature at such time or times, shall have such Amortization Requirements and shall be made subject to redemption, in whole or in part, at such times and prices (subject to the provisions of Article III of this Agreement), as may be determined by resolution of the Board adopted prior to the issuance of such Bonds. By said resolution, the Board may appoint one or more paying agents for such Bonds in addition to the Trustee. Except as to any differences in the maturities thereof or in the rate or rates of interest (or yield or yields) or the provisions for redemption, such refunding Bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other Bonds issued under this Agreement.

All refunding Bonds issued under the provisions of this Section shall be executed in the form and manner set forth in the resolution of the Board authorizing the issuance of such Bonds and deposited with the Trustee for authentication, but before such Bonds shall be authenticated and delivered by the Trustee, there shall be filed with the Trustee the following:

(a)     a copy, certified by the Secretary, of the resolution mentioned above;

(b)     a copy, certified by the Secretary, of the resolution directing the authentication of such Bonds, specifying the interest rate of each such Bond and directing the delivery of such Bonds to or upon the order of the purchasers therein named upon payment of the purchase price therein set forth;

(c)     an opinion of counsel for the Corporation dated the date of original issuance of such Bonds to the effect that:

(i)     the issuance of such Bonds has been duly authorized and that all conditions precedent to the authentication and delivery of such Bonds have been fulfilled;

(ii)     the form and terms of such Bonds have been established by or pursuant to one or more Board resolutions, in conformity with the provisions of this Agreement;

(iii)     such Bonds, when issued by the Corporation and authenticated and delivered by the Trustee in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Corporation, enforceable in accordance with their terms, and will be entitled to the benefits of this Agreement;

(iv)     the Corporation has the corporate power to issue such Bonds, and has duly taken all necessary corporate action with respect to such issuance; and

(v)     all requirements of this Agreement applicable to the Corporation in respect of the execution and delivery by the Corporation of such Bonds have been complied with and assuming due authentication and delivery of such Bonds by the Trustee, no

authorization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the creation, issuance, authentication and delivery of such Bonds pursuant to this Agreement;

(d)     such documents as shall be required by counsel of recognized standing in the field of law relating to municipal bonds to show that provision has been made in accordance with the provisions of this Agreement for the payment or redemption or combination of such payment and redemption of all the Bonds to be refunded;

(e)     a certificate dated the date of original issuance of such Bonds, signed by the President, that (i) the sum of the net proceeds (excluding accrued interest but including any premium) of such Bonds, together with investment earnings on said proceeds, other moneys to be deposited and investment earnings on said moneys, shall not be less than an amount sufficient to pay the principal of, the redemption premium, if any, and interest accrued to the payment dates on the Bonds to be refunded, and the expenses incident to such financing, and (ii) the amounts of principal, interest and Additional Payments payable under the Notes (assuming timely payments under the Notes) after the issuance of such refunding Bonds are sufficient to pay the principal of and interest on all Bonds Outstanding after the issuance of such refunding Bonds, together with other amounts required to be paid by the Corporation with respect to the Bonds, any Credit Facility or Liquidity Facility relating thereto, any Corporation Swap Payments, and this Agreement;

(f)     the applicable GDB Letters of Credit or Successor Letters of Credit, if necessary, duly executed, together with the reimbursement agreement relating thereto between the Corporation and Government Development Bank or the issuer of any such Successor Letter of Credit;

(g)     any Swap Agreement (if applicable), duly executed;

(h)     an opinion of counsel to Government Development Bank (if a new GDB Letter of Credit is issued or an existing GDB Letter of Credit is amended) and the provider of any other Credit Facility or Liquidity Facility (if applicable), addressed to the Trustee, to the effect that the applicable GDB Letter(s) of Credit or any other Credit Facility or Liquidity Facility (if applicable), is a legal, valid and binding obligation of Government Development Bank or the provider of any other Credit Facility or Liquidity Facility (if applicable) enforceable in accordance with its terms;

(i)     an opinion of counsel to the Hedge Counterparty (if applicable), addressed to the Trustee, to the effect that the Swap Agreement is a legal, valid and binding agreement of the Hedge Counterparty, enforceable in accordance with its terms; and

(j)     such documents as are required by Section 1306 of this Agreement in connection with the delivery of a Successor Letter of Credit (if a Successor Letter of Credit is delivered).

The opinions required by items (c), (h) and (i) relating to the enforceability of the Bonds, the GDB Letters of Credit, any Credit Facility or Liquidity Facility and the Swap Agreement (if applicable) may be qualified by customary exceptions relating to bankruptcy and similar laws

affecting creditors' rights generally and, as to enforceability, to general principles of equity (regardless of whether such enforcement is sought in a proceeding in equity or at law).

The proceeds of the Bonds issued under the provisions of this Section shall be applied by the Trustee as provided in a resolution of the Board adopted prior to the issuance of the Bonds, which may be supplemented or changed by a certificate of the President executed on the date of issuance of the Bonds and delivered to the Trustee, if provided for in said resolution. Simultaneously with the delivery of the Bonds, the Trustee may withdraw from the Sinking Fund amounts which are allocable to the Bonds to be refunded and shall transfer said amounts in accordance with the resolution of the Board authorizing the issuance of such Bonds.

The issuance of the Bonds to accomplish a crossover refunding, economic defeasance or other similar refunding shall be within the purview of this Section 208.

**SECTION 209.** **Additional Bonds**. Bonds may be issued under and secured by this Agreement, subject to the conditions hereinafter provided in this Section, at any time or times solely for the purpose of (i) refunding Parity Bonds of the Corporation, (ii) making a deposit to the Reserve Account (if applicable), (iii) paying capitalized interest on such additional Bonds, and (iv) paying the costs of issuance of such additional Bonds. No additional Bonds may be issued unless the amounts of principal, interest and Additional Payments payable under the Notes and the Parity Notes (assuming timely payments under the Notes and the Parity Notes) after the issuance of such additional Bonds are sufficient to pay the principal of and interest on all Bonds and Parity Bonds Outstanding after the issuance of such additional Bonds, together with other amounts required to be paid by the Corporation with respect to the Bonds, the Parity Bonds, any Credit Facility or Liquidity Facility relating thereto, any Corporation Swap Payments, and this Agreement. In addition, no additional Bonds may be issued unless the aggregate stated amounts of each of the GDB Letters of Credit and Successors Letter of Credit is not less than the estimated Maximum Difference after the issuance of such additional Bonds as certified by the President or any Executive Vice President of the Corporation.

Before any Bonds shall be issued under the provisions of this Section, the Board shall adopt a resolution authorizing the issuance of such Bonds, and fixing the amount and the details of the Bonds. Such Bonds shall be designated separate from the Series 2004 Bonds and shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law, shall be stated to mature at such time or times, shall have such Amortization Requirements and shall be made subject to redemption, in whole or in part, at such times and prices (subject to the provisions of Article III of this Agreement), as may be determined by resolution of the Board adopted prior to the issuance of such Bonds. By said resolution, the Board may appoint one or more paying agents for such Bonds in addition to the Trustee. Except as to any differences in the maturities thereof or in the rate or rates of interest (or yield or yields) or the provisions for redemption, such additional Bonds shall be on a parity with and shall be entitled to the same benefit and security of this Agreement as all other Bonds issued under this Agreement.

All additional Bonds issued under the provisions of this Section 209 shall be executed in the form and manner set forth in the resolution of the Board authorizing the issuance of such

Bonds and deposited with the Trustee for authentication, but before such Bonds shall be authenticated and delivered by the Trustee, there shall be filed with the Trustee the following:

(a)  a copy, certified by the Secretary, of the resolution mentioned above;

(b)  a copy, certified by the Secretary, of the resolution directing the authentication of such Bonds, specifying the interest rate of each such Bond and directing the delivery of such Bonds to or upon the order of the purchasers therein named upon payment of the purchase price therein set forth;

(c)  an opinion of counsel for the Corporation dated the date of original issuance of such Bonds, addressed to the Trustee, to the effect that:

(i)  the issuance of such Bonds has been duly authorized and that all conditions precedent to the authentication and delivery of such Bonds have been fulfilled

(ii)  the form and terms of such Bonds have been established by or pursuant to one or more Board resolutions, in conformity with the provisions of this Agreement;

(iii)  such Bonds, when issued by the Corporation and authenticated and delivered by the Trustee in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Corporation, enforceable in accordance with their terms, and will be entitled to the benefits of this Agreement;

(iv)  the Corporation has the corporate power to issue such Bonds, and has duly taken all necessary corporate action with respect to such issuance;

(v)  all requirements of this Agreement applicable to the Corporation in respect of the execution and delivery by the Corporation of such Bonds have been complied with and, assuming due authentication and delivery of such Bonds by the Trustee, no authorization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the creation, issuance, authentication and delivery of such Bonds pursuant to this Agreement;

(vi)  the Corporation has the legal right and power to enter into or amend the supplemental assignment agreement(s) to be entered into or amended by the Corporation with respect to any Notes to be amended, and has duly authorized and validly executed and delivered such new or amended supplemental assignment agreement(s), and such new or amended supplemental assignment agreement(s) is(are) legally valid and binding upon the Corporation and enforceable in accordance with its(their) terms;

(vii)  the execution and delivery of such new or amended supplemental assignment agreement(s) will not violate any provision of law or of the bylaws of

the Corporation or result in the breach of, or constitute a default under, any agreement, indenture or other instrument to which the Corporation is a party or by which it may be bound; and

(viii) no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the execution or delivery of any new or amended supplemental assignment agreement(s) (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the execution or delivery of such new or amended supplemental assignment agreement(s), it shall specify and furnish any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced);

(d)    if any supplemental assignment agreement is entered into or amended by Government Development Bank, an opinion of counsel for Government Development Bank dated the date of original issuance of such Bonds, addressed to the Trustee, to the effect that (i) Government Development Bank has the legal right and power to enter into or amend such supplemental assignment agreement(s) and has duly authorized and validly executed and delivered such new or amended supplemental assignment agreement(s), and such new or amended supplemental assignment agreement(s) is(are) legally valid and binding upon Government Development Bank and enforceable in accordance with its(their) terms, (ii) the execution and delivery of such new or amended supplemental assignment agreement(s) will not violate any provision of law or of the bylaws of Government Development Bank or result in the breach of, or constitute a default under, any agreement, indenture or other instrument to which Government Development Bank is a party or by which it may be bound and (iii) no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the execution and delivery of such new or amended supplemental assignment agreement(s) (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the execution and delivery of such new or amended supplemental assignment agreement(s), it shall specify and furnish any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced);

(e)    an opinion of counsel to each of the Authorized Debtors of such additional Notes stating that (i) the Note of such Authorized Debtor is its valid obligation, (ii) such Authorized Debtor has the legal right and power to enter into or amend the supplemental assignment agreement among such Authorized Debtor, Government Development Bank and the Corporation and has duly authorized and validly executed and delivered such new or amended supplemental assignment agreement, and such Note and such new or amended supplemental assignment agreement are legally valid and binding upon such Authorized Debtor and the new or amended supplemental assignment agreement is enforceable in accordance with its terms, (iii) the execution and delivery of such Note and such new or amended supplemental assignment agreement will not violate any provision of law or of the bylaws of such Authorized Debtor or result in the breach of, or constitute a default under, any agreement, indenture or other instrument to which such Authorized Debtor is a party or by which it may be bound, (iv) no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the execution and delivery of such Note and such new or amended

supplemental assignment agreement (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the execution and delivery of such Note and such new or amended supplemental assignment agreement, it shall specify and furnish any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced);

(f) the additional Notes and the new or amended Parity Notes;

(g) a certificate dated the date of original issuance of such Bonds, signed by the President, that the amounts of principal, interest and Additional Payments payable under the Notes and the Parity Notes (assuming timely payments under the Notes and the Parity Notes) after the issuance of such additional Bonds are sufficient to pay the principal of and interest on (i) all Bonds and Parity Bonds Outstanding after the issuance of such additional Bonds, (ii) all other amounts required to be paid by the Corporation with respect to the Bonds, any Credit Facility or Liquidity Facility relating thereto, any Corporation Swap Payments, and this Agreement, (iii) all Parity Bonds of the Corporation Outstanding after the issuance of such additional Bonds which Parity Bonds are secured by the Parity Notes and (iv) all other amounts required to be paid by the Corporation with respect to such Parity Bonds, any credit facility or liquidity facility relating thereto, any Corporation swap payments and the trust agreement pursuant to which such Parity Bonds were issued;

(h) the GDB Letters of Credit or Successor Letters of Credit, if necessary, duly executed, together with the reimbursement agreement relating thereto between the Corporation and Government Development Bank or the issuer of such Successor Letters of Credit;

(i) any Swap Agreement (if applicable), duly executed;

(j) an opinion of counsel to Government Development Bank (if a new GDB Letter of Credit is issued or an existing GDB Letter of Credit is amended) and the provider of any other Credit Facility or Liquidity Facility (if applicable), addressed to the Trustee, to the effect that the applicable GDB Letter of Credit, as amended, or any other Credit Facility or Liquidity Facility (if applicable), is a legal, valid and binding obligation of Government Development Bank or the provider of any other Credit Facility or Liquidity Facility (if applicable) enforceable in accordance with its terms;

(k) an opinion of counsel to the Hedge Counterparty (if applicable), addressed to the Trustee, to the effect that the Swap Agreement is a legal, valid and binding agreement of the Hedge Counterparty, enforceable in accordance with its terms;

(l) such documents as are required by Section 1306 of this Agreement in connection with the delivery of a Successor Letter of Credit (if a Successor Letter of Credit is delivered); and

(m) such additional legal opinions, certificates, proceedings, instruments and other documents as may be necessary to evidence due execution and issuance of such Bonds.

The opinions required by items (c), (d), (e), (j) and (k) relating to the enforceability of the Bonds, the supplemental assignment agreement(s), the Notes, the Parity Notes, the GDB Letters of Credit, any Credit Facility or Liquidity Facility and the Swap Agreement (if applicable) may

be qualified by customary exceptions relating to bankruptcy and similar laws affecting creditors' rights generally and, as to enforceability, to general principles of equity (regardless of whether such enforcement is sought in a proceeding in equity or at law).

The proceeds of the Bonds issued under the provisions of this Section 209 shall be applied by the Trustee as provided in a resolution of the Board adopted prior to the issuance of the Bonds, which may be supplemented or changed by a certificate of the President executed on the date of issuance of the Bonds and delivered to the Trustee, if provided for in said resolution.

**SECTION 210. Temporary Bonds**. Until definitive Bonds are ready for delivery, there may be executed, and upon request of the President of the Corporation the Trustee shall authenticate and deliver, in lieu of definitive Bonds and subject to the same limitations and conditions except as to identifying numbers, temporary printed, engraved, lithographed or typewritten Bonds in authorized denominations substantially of the tenor hereinabove recited, and with appropriate omissions, insertions and variations as may be required.

If temporary Bonds shall be issued, the Corporation shall cause the definitive Bonds to be prepared and to be executed and delivered to the Trustee, and the Trustee, upon presentation to it of any temporary Bond, shall cancel the same in the manner set forth in Section 304 hereof and authenticate and deliver in exchange therefor, at the place designated by the Holder, without expense to the Holder, a definitive Bond or Bonds of the same aggregate principal amount (maturity amount in the case of a Capital Appreciation Bond and a Capital Appreciation and Income Bond) and Series and having the same maturity and interest rate as the temporary Bond surrendered. Until so exchanged, the temporary Bonds shall in all respects be entitled to the same benefit and security of this Agreement as the definitive Bonds to be issued and authenticated hereunder.

**SECTION 211. Mutilated, Destroyed, Stolen or Lost Bonds**. In case any Bond secured hereby shall become mutilated or be destroyed, stolen or lost, the Corporation may execute, and thereupon the Trustee shall authenticate and deliver, a new Bond of like date, maturity and tenor in exchange and substitution for such Bond destroyed, stolen, mutilated or lost, upon the Holder's paying the reasonable expenses and charges of the Corporation and the Trustee in connection therewith. In the case of any mutilated Bond, such mutilated Bond shall first be surrendered to the Trustee and, in the case of a Bond destroyed, stolen or lost, there shall first be furnished to the Trustee evidence satisfactory to the Trustee and to the Corporation that such Bond was destroyed, stolen or lost, and there shall be furnished to the Corporation and the Trustee indemnity satisfactory to them.

In the event any such Bond shall be about to mature or have matured or have been called for redemption, instead of issuing a duplicate Bond, the Corporation may direct the Trustee to pay the same without surrender thereof. Any Bond surrendered for replacement shall be cancelled in the same manner as provided in Section 304 hereof.

Any such new Bonds issued pursuant to this Section shall constitute additional contractual obligations on the part of the Corporation, whether or not the mutilated, lost, stolen or destroyed Bonds be at any time enforceable by anyone, and shall be entitled to equal and

proportionate benefits and rights as to lien on and source and security for payment from the
Pledged Revenues with all other Bonds.

   **SECTION 212.**  **Book-Entry Bonds**. (i) Except as provided in subparagraph (iii) of
this Section 212, the registered owner of all Series 2004 Bonds shall be the Securities Depository
and, as long as the Securities Depository shall be DTC, the Series 2004 Bonds shall be registered
in the name of Cede & Co., as nominee for DTC or any other nominee for DTC. The Trustee is
hereby authorized to enter into agreements with DTC and other depository trust companies,
including but not limited to, agreements necessary for wire transfers of interest and principal
payments with respect to the Bonds, utilization of electronic book entry data received from DTC
and other depository trust companies in place of actual delivery of Bonds and provision of
notices with respect to Bonds registered by DTC and other depository trust companies (or any of
their designees identified to the Trustee) by overnight delivery, courier service, telegram,
telecopy or other similar means of communication. Payment of interest for any Bond registered
in the name of Cede & Co. shall be made to the account of Cede & Co. at the address indicated
for Cede & Co. in the registration books kept by the Trustee. The "Bonds" referred to in this
Section 212 shall refer to all Book-Entry Bonds.

   (ii)    The Bonds shall be initially issued in the form of separate, single,
authenticated fully-registered Bonds in the amount of each separately stated maturity. As
long as certificates for the Bonds are not issued pursuant to this Section 212, the Trustee
and the Corporation may treat the Securities Depository (or its nominee) as the sole and
exclusive owner of the Bonds registered in its name for the purposes of payment of the
principal or redemption premium, if any, or interest on the Bonds, selecting the Bonds or
portions thereof to be redeemed, giving any notice permitted or required to be given to
the owners of such Bonds hereunder, registering the transfer of Bonds, obtaining any
consent or other action to be taken by Bondholders and for all other purposes whatsoever;
and neither the Trustee nor the Corporation shall have any responsibility or obligation to
any Participant, any Beneficial Owner or any other person claiming a beneficial
ownership interest in the Bonds under or through the Securities Depository or any
Participant, or any other person which is not shown on the registration books of the
Trustee as being an owner of Bonds, with respect to the accuracy of any records
maintained by the Securities Depository or any Participant; the payment to the Securities
Depository or any Participant of any amount in respect of the principal or redemption
premium, if any, or interest on the Bonds; any notice which is permitted or required to be
given to Bondholder; the selection by the Securities Depository or any Participant of any
person to receive payment in the event of a partial redemption of the Bonds; or any
consent given or other action taken by the Securities Depository as owner of Bonds. The
Trustee shall pay all principal and redemption premium, if any, and interest on the Bonds
only to or "upon the order of" the Securities Depository (as that term is used in the
Uniform Commercial Code as adopted in the State of New York), and all such payments
shall be valid and effective to fully satisfy and discharge the Corporation's obligations
with respect to the principal or redemption premium, if any, and interest on the Bonds to
the extent of the sum or sums so paid. Except as provided in (iii) below, no person other
than the Securities Depository shall receive an authenticated Bond for each separate
stated maturity evidencing the obligation of the Corporation to make payments of the
applicable redemption price. Upon delivery by the Securities Depository to the Trustee

of written notice to the effect that the Securities Depository has determined to substitute a new nominee in place of Cede & Co., the Bonds will be transferable to such new nominee in accordance with subparagraph (vi) below.

(iii)     In the event the Corporation determines that it is in the best interest of the Corporation not to continue the Book-Entry system of transfer for the Bonds or that the interest of the owners of the Bonds might be adversely affected if the Book-Entry system of transfer is continued, the Corporation may notify the Securities Depository and the Trustee, whereupon the Securities Depository will notify the Participants, of the availability through the Securities Depository of certificates for the Bonds. In such event, the Trustee shall issue, transfer and exchange certificates for the Bonds as requested by the Securities Depository and any Participant or Beneficial Owner in appropriate amounts in accordance with subparagraph (vi) below. The Securities Depository may determine to discontinue providing its services with respect to the Bonds at any time by giving notice to the Corporation and the Trustee and discharging its responsibilities with respect thereto under applicable law, or the Corporation may determine that the Securities Depository is incapable of discharging its responsibilities and may so advise the Securities Depository. In either such event, the Corporation shall either establish its own Book-Entry system or use reasonable efforts to locate another Securities Depository. Under such circumstances (if there is no successor securities depository), the Corporation and the Trustee shall be obligated to deliver certificates for the Bonds as described in subparagraph (vi) below. In the event certificates for the Bonds are issued, the provisions of this Agreement shall apply to, among other things, the printing of certificates, the transfer and exchange of such certificates and the method of payment of principal or redemption premium, if any, and interest on such certificates. Whenever the Securities Depository requests the Corporation and the Trustee to do so, the Trustee and the Corporation will cooperate with the Securities Depository in taking appropriate action after reasonable notice (A) to make available one or more separate certificates evidencing the Bonds to any Participant having Bonds credited to its account with the Securities Depository, or (B) to arrange for another Securities Depository to maintain custody of certificates evidencing the Bonds.

(iv)     Notwithstanding any other provision of this Agreement to the contrary, so long as any Bond is registered in the name of Cede & Co., as nominee of DTC, all payments with respect to the principal or redemption premium, if any, and interest on such Bond and all notices with respect to such Bond shall be made and given, respectively, to DTC as provided in the blanket representation letter of the Corporation with DTC.

(v)     In connection with any notice or other communication to be provided to owners of Bonds pursuant to this Agreement by the Corporation or the Trustee or with respect to any consent or other action to be taken by owners of Bonds, the Corporation or the Trustee, as the case may be, shall establish a record date for such consent or other action and give the Securities Depository notice of such record date not less than is fifteen (15) calendar days in advance of such record date to the extent possible. Such notice to the Securities Depository shall be given only when the Securities Depository is the sole Bondholder.

(vi)      In the event that any transfer or exchange of Bonds is permitted under subparagraph (ii) or (iii) hereof, such transfer or exchange shall be accomplished upon receipt, by the Trustee from the registered owner thereof of the Bonds to be transferred or exchanged, of appropriate instruments of transfer to the permitted transferee, all in accordance with the applicable provisions of this Agreement.  Each Series 2004 Bond shall bear a legend substantially to the following effect: "Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation ("DTC"), to the Corporation or its agent for registration of transfer, exchange, or payment, and any certificate issued is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), any transfer, pledge, or other use hereof for value or otherwise by or to any person is wrongful inasmuch as the registered owner hereof, Cede & Co., has an interest herein."

SECTION 213.  **Capital Appreciation Bonds; Capital Appreciation and Income Bonds**.  For purposes of determining the principal amount of a Capital Appreciation Bond or a Capital Appreciation and Income Bond for redemption, applying an Amortization Requirement or computation of the amount of Bonds held by the Holder thereof in giving to the Corporation any notice, covenant, request or demand pursuant to this Agreement for any purpose whatsoever, the principal amount of a Capital Appreciation Bond shall be deemed to be its Accreted Value and the principal amount of a Capital Appreciation and Income Bond shall be deemed to be its Appreciated Value.  For purposes of determining the amount required to be deposited to the credit of any sub-account within the Reserve Account, reference herein to the principal amount shall mean in the case of Capital Appreciation Bonds, Capital Appreciation and Income Bonds and other Bonds which are sold to the public at a discount, the value of such Bonds at maturity.  For purposes of the order of payments under Section 702 hereof, the principal amount of a Capital Appreciation Bond and a Capital Appreciation and Income Bond shall be the initial public offering price thereof.

SECTION 214.  **CUSIP Numbers**.  The Corporation in issuing the Bonds may use "CUSIP" numbers (if then generally in use), and, if so, the Trustee shall use "CUSIP" numbers in notices of redemption as a convenience to Holders; provided that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Bonds or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Bonds, and any such redemption shall not be affected by any defect in or omission of such numbers.  The Corporation will promptly notify the Trustee of any change in the "CUSIP" numbers.

## ARTICLE III.

## REDEMPTION OF BONDS

SECTION 301.  **Redemption of Bonds**.  The Bonds of each Series issued under the provisions of this Agreement may be made subject to redemption, both in whole and in part and at such times and prices, as may be provided in the resolution authorizing the issuance of such

Bonds. Term Bonds shall be made subject to redemption to the extent of any Amortization Requirements therefor.

If less than all of the Bonds of any one maturity of a Series shall be called for redemption, the particular Bonds or portions of Bonds to be redeemed shall be selected by the Trustee in such manner as it shall deem fair and appropriate; provided, however, that the portion of any Bond of any Series to be redeemed shall be in the principal amount equal to the lowest denomination authorized for such Series or some multiple thereof, and that, in selecting Bonds for redemption, the Trustee shall treat each Bond as representing that number of Bonds which is obtained by dividing the principal amount of such Bond by the amount of such lowest authorized denomination.

Anything in this Agreement to the contrary notwithstanding, if less than all of the Bonds are called for redemption and the Book-Entry system under Section 212 remains in effect, the Securities Depository shall reduce the credit balances of the applicable Participants in respect of the Bonds, and such Participants shall in turn select the Beneficial Owners whose ownership interests are to be extinguished by such partial redemption, each by such method as the Securities Depository or such Participants, as the case may be, in their sole discretion deem fair and appropriate.

**SECTION 302.   Redemption Notice**.  At least thirty (30) days (or such lesser number of days as may be provided in the resolution authorizing the issuance of the particular Bonds) before the redemption date of any Bonds, the Trustee shall cause a notice of any such redemption, either in whole or in part, on behalf of the Corporation to be mailed, by first class mail, postage prepaid, to any other paying agents for the Bonds to be redeemed and to all Holders of Bonds to be redeemed at their addresses as they appear upon the books of registration hereinabove provided for; but failure so to mail any such notice to any Holder or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of other Bonds.  Each such notice shall set forth (1) the date fixed for redemption, (2) the redemption price to be paid, (3) that on the date fixed for redemption the redemption price will become due and payable upon each Bond called for redemption, (4) if moneys for the payment of the redemption price shall be on deposit on such date, that interest thereon shall cease to accrue on and after said redemption date, (5) the place where such Bonds are to be surrendered for payment of such redemption price, (6) if less than all of the Bonds of a Series then Outstanding shall be called for redemption, the numbers of such Bonds and (7) the complete designation of the Series, including the CUSIP numbers.  Each notice of redemption shall also contain (a) the date of issue of the Bond as originally issued; (b) the rate of interest borne by each Bond being redeemed; (c) the maturity date of each Bond being redeemed; and (d) the name, address and telephone number of a contact person, if any, representing the Trustee.  In case any Bond is to be redeemed in part only, the notice of redemption which relates to such Bond shall state also the amount of such Bond to be redeemed and that on or after the redemption date, upon surrender of such Bond, a new Bond or Bonds of the same Series and maturity, bearing interest at the same rate and in principal amount equal to the unredeemed portion of such Bond will be issued.  In the case of any redemption other than a redemption pursuant to any Amortization Requirements for Term Bonds, the Corporation shall, at least forty-five (45) days prior to the redemption date, notify the Trustee of such redemption date and the principal amount of Bonds to be redeemed.

In addition to the foregoing notice, further notice shall be given by the Trustee as set out below, but no defect in said further notice nor any failure to give all or any portion of such further notice shall be the basis for any liability of the Trustee or in any manner defeat the effectiveness of a call for redemption if notice thereof is given as above prescribed:

(a)     Each further notice of redemption shall be sent by first class mail, postage prepaid, at least thirty (30) days (or such lesser number of days as applies to the notice given to the Holders of Bonds being redeemed) before the redemption date to the Rating Agencies and to registered securities depositories and national information services whose names and addresses are included in the most recent list thereof furnished to the Trustee by the Corporation; and

(b)     The Trustee shall cause a second notice of redemption to be mailed in the manner and in the form required above for the initial notice of redemption to Holders of Bonds or portions thereof to be redeemed who have not surrendered their Bonds within sixty (60) days after the redemption date.

SECTION 303.   **Effect of Calling for Redemption.**   On the date so designated for redemption, notice having been given in the manner and under the conditions hereinabove provided, the Bonds or portions of Bonds so called for redemption shall become and be due and payable at the redemption price provided for the redemption of such Bonds or portions of Bonds on such date, and, if sufficient moneys for payment of the redemption price and accrued interest or Sufficient Government Obligations as defined in Section 305 hereof are held by the Trustee in trust for the Holders of Bonds to be redeemed, as provided in this Agreement, interest on the Bonds or portions of Bonds so called for redemption shall cease to accrue, such Bonds or portions of Bonds shall cease to be entitled to any benefit or security hereunder and shall no longer be Outstanding hereunder and the Holders of such Bonds or portions of Bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof and accrued interest, and, to the extent provided in Section 306 hereof, to receive Bonds for any unredeemed portions of Bonds.

SECTION 304.   **Cancellation of Bonds.**   All Bonds paid, redeemed or purchased by the Corporation, either at or before maturity, shall be delivered to the Trustee when such payment, redemption or purchase is made and such Bonds shall thereupon be cancelled. The Trustee shall provide to the Corporation the details of all Bonds so cancelled.   All Bonds cancelled under any of the provisions of this Agreement either shall be delivered to the Corporation or disposed of by the Trustee in accordance with its customary procedures, at the option of the Corporation.

SECTION 305.   **Bonds To Be Paid Not Outstanding.**   If (a) Bonds shall have been duly called for redemption under the provisions of this Article III or irrevocable instructions have been given by the Corporation to the Trustee to (i) call Bonds for redemption under the provisions of this Article III or (ii) pay Bonds at their maturity or maturities (the Bonds described in clause (a) are herein collectively called the "Bonds to be Paid"), and (b) sufficient moneys to provide for the payment of such Bonds or Sufficient Government Obligations (as defined below) are held in separate accounts by the Trustee or other appropriate fiduciary institution acting as escrow agent solely for the Holders of the Bonds to be Paid, then, notwithstanding any other provisions herein to the contrary, the Bonds to be Paid shall not be deemed to be Outstanding

under the provisions of this Agreement and shall cease to be entitled to any benefit or security under this Agreement.

For purposes of this Agreement "Sufficient Government Obligations" shall mean Government Obligations which are in such principal amounts, bear interest at such rate or rates and mature (without option of prior redemption) on such date or dates so that the proceeds to be received upon payment of such Government Obligations at their maturity and the interest to be received thereon, without any reinvestment thereof, will provide sufficient moneys on the dates required to pay the principal of and redemption premium, if any, and the interest on the Bonds to be Paid to the dates of their redemption or maturity.

**SECTION 306.   Partial Redemption.**  In case part but not all of an Outstanding Bond shall be selected for redemption, the Holder thereof or his attorney or legal representative shall present and surrender such Bond to the Trustee for payment of the principal amount thereof so called for redemption, and the Corporation shall execute and the Trustee shall authenticate and deliver to or upon the order of such Holder or his attorney or legal representative, without charge to the Holder therefor, for the unredeemed portion of the principal amount of the Bond so surrendered, a new Bond or Bonds of the same Series and maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Agreement.

## ARTICLE IV.

## FUNDS AND ACCOUNTS

**SECTION 401.   Sinking Fund and Accounts.**  A special fund is hereby created and designated "Puerto Rico Public Finance Corporation Restructuring Sinking Fund" (herein sometimes called the "Sinking Fund") to be held by the Trustee.  There are hereby created three separate accounts in the Sinking Fund which are designated "Bond Service Account," "Redemption Account," and "Surplus Account," and a separate and segregated sub-account within the Bond Service Account designated "Capitalized Interest Sub-account."  Subject to the terms and conditions set forth in this Agreement, moneys held to the credit of the Sinking Fund shall be held in trust and applied by the Trustee solely for the purposes set forth below and pending such application shall be subject to the lien and charge created pursuant to this Agreement until paid out or transferred as provided herein.

The Corporation shall deposit in the Capitalized Interest Sub-account such amounts as may be necessary to pay interest on the Bonds of any Series through such date as may be set forth in a resolution of the Board authorizing such Series of Bonds.

The Corporation shall cause the Secretary of the Treasury of the Commonwealth to transfer to the Trustee, no later than July fifteen (15) of each Fiscal Year while the Bonds are Outstanding, funds representing the entire Legislative Appropriation for such Fiscal Year.

All funds received by the Trustee representing the Legislative Appropriation in respect of the Notes (or funds received in substitution therefor or in respect of the Notes, including any moneys received pursuant to a draw under the GDB Letters of Credit) and other funds received by the Trustee, including any Hedge Counterparty Swap Payments (other than moneys received

- 34 -

from draws made under any Credit Facility or Liquidity Facility, other than the GDB Letters of Credit, which moneys will be deposited in special sub-accounts as provided below), shall be deposited in the Sinking Fund in the following order:

first: to the credit of the Bond Service Account, such amount as may be required to make the total amount then to the credit of the Bond Service Account equal to the sum of (i) the amount of interest then or to become due and payable on the Bonds of each Series then Outstanding during the Bond Year commencing within the Fiscal Year with respect to which such Legislative Appropriation is made or such funds are received and (ii) the amount of principal then or to become due and payable not later than July thirty-first (31) of such Bond Year on the Serial Bonds of each Series then Outstanding;

second: to the credit of the Redemption Account, such amount as may be required to make the total amount then to the credit of the Redemption Account in the Bond Year commencing within the Fiscal Year with respect to which such Legislative Appropriation is made or such funds are received equal to the Amortization Requirement for such Bond Year for the Term Bonds of each Series then Outstanding; and

third: to the credit of the Surplus Account, any remaining amount.

If the Corporation issues Variable Rate Bonds pursuant to the provisions of Section 207, 208 or 209 of this Agreement, the assumptions for calculating interest for the current Bond Year to ensure a sufficient deposit for the payment of said interest shall be made on the basis established in the resolution authorizing the issuance of such Variable Rate Bonds.

If there is a Credit Facility or a Liquidity Facility issued by a provider in connection with the issuance of a Series of Bonds, any moneys received from draws under such Credit Facility or Liquidity Facility shall be deposited in separate sub-accounts in the Bond Service Account or the Redemption Account, as appropriate, and used to pay the principal of and interest on the Bonds secured thereby.

To the extent required by a resolution of the Board in connection with the issuance of any Series of Bonds, the Trustee shall establish one or more sub-accounts within the Bond Service Account and the Redemption Account to segregate amounts paid under any of the Notes and make withdrawals from such sub-accounts to make payments under any Series of Bonds designated in such resolution of the Board. Nothing in the foregoing sentence shall be deemed to affect the parity status of the Bonds.

**SECTION 402. Withdrawals from Bond Service Account.** (a) Subject to the provisions of paragraph (b) of this Section, on each Interest Payment Date or as otherwise provided in the resolution of the Board authorizing the issuance of a Series of Bonds, the Trustee shall withdraw from the Bond Service Account and (1) remit by mail (or by wire transfer, in the case of the Series 2004 Bonds or if so provided by resolution of the Board) to each Bondholder the amounts required for paying interest upon such Bonds as such interest becomes due and (2) set aside sufficient moneys for paying the principal of Serial Bonds as such principal becomes due. If paying agents other than the Trustee have been designated by the Corporation, the Trustee shall deposit in trust with such paying agents the amounts required to pay such principal

and interest. Notwithstanding any provision herein to the contrary, if principal of and premium, if any, and interest on the Bonds that would have been paid from the Bond Service Account or Redemption Account is paid instead by amounts drawn under a Credit Facility or a Liquidity Facility, amounts held to the credit of the Bond Service Account and the Redemption Account for such purposes shall be paid, to the extent required under any agreement with the issuer of such Credit Facility or Liquidity Facility, to such issuer. The Trustee shall establish one or more sub-accounts within the Bond Service Account and the Redemption Account, to the extent required by a resolution of the Board, to segregate amounts to be paid to the issuer of a Credit Facility or a Liquidity Facility or amounts received from a Credit Facility or a Liquidity Facility.

(b)      Moneys in the Capitalized Interest Sub-account shall be applied exclusively by the Trustee to the payment of interest accruing on any Series of Bonds from which proceeds were deposited in the Capitalized Interest Sub-account pursuant to the resolution of the Board authorizing such Series of Bonds.

SECTION 403.  **Withdrawals from Redemption Account**. Moneys held to the credit of the Redemption Account shall be applied to the retirement of Bonds as follows:

(a)      Subject to the provisions of paragraph (c) of this Section, the Trustee shall endeavor to purchase Bonds or portions of Bonds, whether or not such Bonds or portions shall then be subject to redemption, at the most advantageous price obtainable by it with reasonable diligence, such price not to exceed the principal of such Bonds plus the amount of the premium, if any, that would be payable on the next redemption date to the holders of such Bonds under the provisions of Article III of this Agreement if such Bonds or portions of Bonds should be called for redemption on such date from the moneys in the Sinking Fund. The Trustee shall pay the interest accrued on such Bonds or portions of Bonds to the date of delivery thereof from the Bond Service Account and the principal portion of such purchase price from the Redemption Account. No such purchase shall be made by the Trustee within the period of forty-five (45) days immediately preceding the date on which such Bonds are subject to call for redemption under the provisions of this Agreement except from moneys in excess of the amounts set aside or deposited for such redemption of Bonds.

(b)      Subject to the provisions of paragraph (c) of this Section, the Trustee shall call for redemption on each date on which Bonds are subject to redemption from moneys in the Sinking Fund such amount of Bonds or portions of Bonds then subject to redemption as, with the redemption premium, if any, will exhaust the moneys then held for the credit of the Redemption Account as nearly as may be; provided, however, that not less than ONE HUNDRED THOUSAND DOLLARS ($100,000) principal amount of Bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Agreement. Prior to calling Bonds or portions of Bonds for redemption, the Trustee shall withdraw from the Bond Service Account and from the Redemption Account (including moneys transferred from the Reserve Account (if applicable) to the credit of the Redemption Account) and set aside in separate accounts or deposit with the paying agents the respective amounts required for paying the interest on, and the principal and redemption premium, if any, of the Bonds or portions of Bonds so called for redemption.

(c)     Moneys in the Redemption Account shall be applied by the Trustee in each Bond Year to the retirement of Bonds of each Series then Outstanding in the following order:

first, the Term Bonds to the extent of the Amortization Requirement, if any, for such Bond Year for such Term Bonds of each such Series then Outstanding, plus the applicable premium, if any, and, if the amount available in such Bond Year shall not be sufficient therefor, then in proportion to the Amortization Requirement, if any, for such Bond Year for such Term Bonds of each such Series then Outstanding, plus the applicable premium, if any;

second, any balance then remaining shall be applied to the purchase of any Bonds then Outstanding whether or not such Bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section; and

third, any balance then remaining shall be applied to the retirement of Bonds of each Series as directed by the Corporation.

**SECTION 404.  Withdrawals from Surplus Account**. (a) Moneys held to the credit of the Surplus Account shall be applied by the Trustee to make payments in the following order: (i) to make up any deficiency in the Bond Service Account and the Redemption Account; (ii) to pay the compensation of the Trustee and other amounts payable to the Trustee under Section 804 hereof upon the written request of the Corporation; (iii) to make Corporation Swap Payments (if applicable), if any; (iv) to pay any fees and expenses payable to the providers of any Credit Facility, Liquidity Facility, Reserve Account Insurance Policy or Reserve Account Letter of Credit (if applicable) upon the written request of the Corporation; and (v) to reimburse or pay any provider of such facilities (if applicable) for any other amounts due under the agreement with such provider.

(b)     Any moneys held to the credit of the Surplus Account after all amounts described in paragraph (a) above required to be paid in respect of a Bond Year have been paid shall, upon the written request of the Corporation, be transferred to the credit of the Bond Service Account or the Redemption Account.

**SECTION 405.  Reserve Account**.  If the resolution of the Board providing for the issuance of Bonds under this Agreement requires that a Reserve Account be established, a separate account in the Sinking Fund designated "Reserve Account" is hereby authorized to be created in accordance with such resolution, in which Reserve Account there shall be established separate sub-accounts as provided in such resolution.  In such event, the Trustee shall, from the funds received by the Trustee in accordance with Section 401, prior to depositing any amounts to the credit of the Surplus Account, deposit to the credit of each sub-account within the Reserve Account such amount as may be required to make the amount then on deposit to the credit of each such sub-account equal to the amount established in such resolution of the Board.  Any Reserve Account created under the Trust Agreement will be applicable to one or more Series of Bonds issued under the Trust Agreement as provided in the resolution of the Board authorizing any such Series.

In lieu of any required deposit or in substitution of moneys on deposit to the credit of any sub-account within the Reserve Account (if applicable), the Corporation may cause to be

deposited to the credit of such sub-account within the Reserve Account a Reserve Account Insurance Policy or a Reserve Account Letter of Credit in an amount equal to such required deposit, which Reserve Account Insurance Policy or Reserve Account Letter of Credit shall be satisfactory in form and substance to the Trustee and shall (i) be payable or available to be drawn upon, as the case may be (upon the giving of notice as required thereunder), on any payment date for the Bonds on which a withdrawal from such sub-account within the Reserve Account would be required under Section 404 hereof, and (ii) give the Trustee the right to draw on any Reserve Account Insurance Policy or Reserve Account Letter of Credit prior to the expiration thereof unless the Corporation has furnished a replacement Reserve Account Insurance Policy or Reserve Account Letter of Credit or has provided sufficient moneys to make the amounts then on deposit to the credit of such sub-account within the Reserve Account equal to the amount required therefor. If a disbursement is made under a Reserve Account Insurance Policy or a Reserve Account Letter of Credit, the funds thereafter becoming available for deposit to the credit of the related sub-account within the Reserve Account shall be used by the Trustee to reinstate the amounts available to be drawn under such Reserve Account Insurance Policy or Reserve Account Letter of Credit in an amount at least equal to the amount being reimbursed to the provider of such Reserve Account Insurance Policy or Reserve Account Letter of Credit or, if such reinstatement is not available, to deposit to the credit of such sub-account within the Reserve Account moneys in the amount of the disbursement made under such Reserve Account Insurance Policy or Reserve Account Letter of Credit or a combination of such alternatives.

Moneys held to the credit of any sub-account within the Reserve Account (if applicable) shall be used by the Trustee for the purpose of paying interest on the Series of Bonds secured thereby and maturing principal of such Bonds when moneys held to the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Redemption Account pursuant to the requirements of clause second of Section 401 of this Agreement whenever and to the extent that the Legislative Appropriation or the moneys received in respect of the Notes are insufficient therefor.

Any moneys held to the credit of any sub-account within the Reserve Account in excess of the amount required to be on deposit therein pursuant to the resolution of the Board shall, upon the written request of the Corporation, be transferred to the credit of the Bond Service Account or the Redemption Account.

SECTION 406. **Moneys Set Aside Held in Trust**. All moneys which the Trustee shall have withdrawn from the accounts of the Sinking Fund, or shall have received from any other source and set aside or deposited with any paying agent for the purpose of paying the principal of or the interest on any of the Bonds hereby secured, either at the maturity thereof or upon call for redemption, or for the purpose of paying any other obligation of the Corporation secured hereunder, shall be held in trust for the respective Holders of such Bonds, the provider of the Credit Facility or Liquidity Facility (if applicable) or the Hedge Counterparty (if applicable). Any moneys which shall be set aside or deposited by the Trustee or any paying agent and which shall remain unclaimed by the Holders of such Bonds or such other person entitled to receive a payment hereunder for the period of two (2) years after the date on which such Bonds or the interest thereon or such other obligation shall have become payable shall, upon request in writing, be paid to the Corporation or to such officer, board or body as may then be entitled by law to receive the same, and thereafter the Holders of such Bonds or such other person entitled to

receive a payment hereunder, shall look only to the Corporation or to such officer, board or
body, as the case may be, for payment and then only to the extent of the amounts so received
without any interest thereon, and the Trustee and any other paying agents shall have no
responsibility for such moneys.

SECTION 407.   **Establishment of Sub-accounts in the Redemption Account**.   The
Trustee shall establish one or more sub-accounts in the Redemption Account for deposits of
funds to be used for extraordinary mandatory redemptions of one or more Series of Bonds and
shall deposit and withdraw moneys from such sub-accounts, if and as required by resolutions of
the Board adopted prior to the issuance of such Series of Bonds.

## ARTICLE V.

## DEPOSITORIES OF MONEYS, SECURITY FOR DEPOSITS
## AND INVESTMENTS OF FUNDS

SECTION 501.   **Security for Deposits**.   All moneys deposited under the provisions of
this Agreement with the Trustee shall be held in trust under the terms hereof, and shall not be
subject to lien or attachment by any creditor of the Corporation.

All moneys deposited with the Trustee hereunder in excess of the amount insured by the
Federal Deposit Insurance Corporation, or other Federal agency shall be continuously secured
for the benefit of the Trustee, the Holders of the Bonds, the provider of any Credit Facility or
Liquidity Facility and the Hedge Counterparty, if any, either (a) by depositing with a bank or
trust company approved by the Corporation and by the Trustee, as custodian, or, if then
permitted by law, by setting aside under control of the trust department of the bank holding such
deposit, as collateral security, securities described in clause (i) of the definition of Government
Obligations, or, with the approval of the Trustee, other marketable securities eligible as security
for the deposit of trust funds under applicable regulations of the Comptroller of the Currency of
the United States of America and applicable Commonwealth laws or regulations, having a
market value (exclusive of accrued interest) not less than the amount of such deposit, or, (b) if
the furnishing of security as provided in clause (a) of this Section is not permitted by applicable
law, in such other manner as may then be required or permitted by applicable Commonwealth
and Federal laws or regulations regarding the security for, or granting a preference in the case of,
the deposit of trust funds; provided, however, that it shall not be necessary for the Trustee to give
security for the deposits of any moneys set aside for the payment of the principal of or the
redemption premium or the interest on any Bonds issued hereunder, or for the Trustee to give
security for any moneys which shall be represented by obligations purchased under the
provisions of this Article as an investment of such moneys.

All moneys deposited with the Trustee shall be credited to the particular fund or account
to which such moneys belong.

SECTION 502.   **Investment of Moneys**.   Moneys held to the credit of the Bond
Service Account and the Redemption Account (except the Capitalized Interest Sub-account and
any sub-accounts established by one or more resolutions of the Board to segregate amounts
received from a Credit Facility or a Liquidity Facility, which resolution or resolutions may

N206950.6                                    - 39 -

provide for the investment of moneys deposited to the credit of any such sub-account) shall, as nearly as may be practicable, be continuously invested and reinvested, at the written direction of the Corporation specifying the particular investment to be made, in (i) Government Obligations, that shall mature, or that shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said accounts will be required for the purposes intended or (ii) Investment Agreements pursuant to which funds would be available not later than the respective dates when moneys held for the credit of said accounts would be required for the purposes intended. Anything in this Agreement to the contrary notwithstanding, moneys held to the credit of the Capitalized Interest Sub-account may be invested, in addition to any other permitted investments of moneys in the Bond Service Account, in investment agreements with Government Development Bank pursuant to which funds would be available not later than the respective dates when moneys held to the credit of the Capitalized Interest Sub-account would be required for the purposes intended. Moneys held to the credit of the Surplus Account shall be continuously invested and reinvested at the written direction of the Corporation in any Investment Obligations selected by it. Moneys held to the credit of the Reserve Account (if applicable) shall, as nearly as may be practicable, be continuously invested and reinvested at the written direction of the Corporation specifying the particular investment to be made, in Investment Obligations that shall mature no later than the final maturity of the Bonds.

Obligations so purchased as an investment of moneys in any such funds or accounts shall be deemed at all times to be a part of such funds or accounts, and any investment earnings and profit or loss realized on the sale or maturity thereof, shall be credited or debited to such funds or accounts; provided, however, that if the deposits to any account required by Section 401 hereof have been made for the current Bond Year, the investment earnings on moneys held to the credit of such account shall be deposited in the order set forth in said Section 401 to the credit of any other account of the Sinking Fund for which such required deposit has not been made, and if all such required deposits have been made, such earnings shall be deposited to the credit of such account in the Sinking Fund as shall be directed by the Corporation. The Trustee, at the written direction of the Corporation, shall sell any obligations so purchased as an investment whenever it shall be necessary to do so in order to provide moneys to meet any payments or transfers from such funds or accounts. Neither the Trustee nor the Corporation shall be liable or responsible for any loss, fee, tax or other charge resulting from any such investment, reinvestment or liquidation of an investment.

In the case of investments in the obligations described in clauses (iii) of the definition of Investment Obligations in Section 101 hereof, the Corporation shall deliver to the Trustee, if the Trustee so requests, an opinion of counsel acceptable to the Trustee as to the perfection and priority of the security interests in the collateral described therein.

SECTION 503. **Valuation of Investments**. In computing the amount in any fund or account created pursuant to the provisions of this Agreement, obligations purchased as an investment of moneys therein shall be valued at par if purchased at par or at amortized value if purchased at other than par, plus, in each case, accrued interest. Amortized value, when used with respect to an obligation purchased at a premium above or a discount below par, means the value as of any given time obtained by dividing the total premium or discount at which such obligation was purchased by the number of days remaining to maturity on such obligation at the

date of such purchase and by multiplying the amount thus calculated by the number of days having passed since such purchase; and (1) in the case of an obligation purchased at a premium by deducting the product thus obtained from the purchase price, and (2) in the case of an obligation purchased at a discount by adding the product thus obtained to the purchase price. Valuation on any particular date shall include the amount of interest then earned or accrued to such date on any moneys or investments in such fund or account. The computation of the amount on deposit in or credited to any fund and account created under this Agreement and the valuation of the investments of such amount shall be performed by the Trustee for such fund and account held by the Trustee on the last day of each Bond Year, and such computation and valuation shall not be required to be performed at other times, except upon the written request of the Corporation.

**ARTICLE VI.**
**PARTICULAR COVENANTS**

**SECTION 601.** **Payment of Principal, Interest and Premium; Limited Obligation; Pledge of Notes and Pledged Revenues**. The Corporation covenants that it will promptly pay the principal of and the interest on every Bond issued hereunder and secured hereby at the places, on the dates and in the manner specified herein and in said Bonds and any premium required for the retirement of said Bonds by purchase or redemption, according to the true intent and meaning thereof. Such principal, interest and premium, if any, are payable solely from the payments received in respect of the Notes and the Pledged Revenues, which Notes and Pledged Revenues are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified.

Nothing in the Bonds or in this Agreement shall be deemed to constitute the Bonds a debt or obligation of the Commonwealth or any of its instrumentalities (other than the Corporation) or political subdivisions, and neither the Commonwealth nor any of its instrumentalities (other than the Corporation) or political subdivisions shall be liable for the payment of the principal of or the interest on the Bonds.

Nothing in the Bonds or in this Agreement shall be deemed to establish or grant any rights to a holder of any bond, note or other obligation of the Corporation which was not issued under or secured by the lien of this Agreement.

**SECTION 602.** **No Impairment**. The Corporation covenants and agrees that, so long as any of the Bonds shall be Outstanding and so long as any of its other obligations under any Reimbursement Agreement (if applicable) or the Swap Agreement (if applicable) secured hereunder shall remain unpaid, none of the Pledged Revenues will be used for any purpose other than as provided in this Agreement, and that no contract or contracts will be entered into or any action taken by which the rights of the Trustee, the Holders or such other parties secured by this Agreement to such Pledged Revenues might be impaired or diminished. Any resolution adopted by the Board authorizing the issuance of a Series of Bonds shall, for all purposes, be deemed part of this Agreement and shall constitute a contract for the benefit of the Holders of said Series. This Agreement and any such resolution may be supplemented and amended only in accordance with Article X hereof, except for supplements and amendments to any such resolution adopted or

entered into prior to the issuance of the applicable Series of Bonds, which may be adopted or entered into without restriction.

**SECTION 603.   Inclusion of Principal and Interest Requirement in Budget**.  Each year while any Bonds are Outstanding, the Corporation shall file a timely request with the Director of the Office of Management and Budget of Puerto Rico to include in the annual budget of capital improvements and operating expenses of Puerto Rico for the next Fiscal Year the necessary Legislative Appropriation so that payments in respect of the Notes shall be sufficient to cover the principal and interest payable with respect to the Bonds and all other amounts payable in respect of the Bonds or payable under this Agreement during the next Bond Year commencing within such Fiscal Year.

**SECTION 604.   Covenant to Enforce Payment of Note**.  The Corporation agrees to take any and all action available to it under the laws of the Commonwealth to assure that all amounts due and payable under the Notes will be timely paid, and that if any such payment shall not be made when the same shall become due and payable, the Corporation agrees to take any and all action available to it under the laws of the Commonwealth to enforce such payment.

**SECTION 605.   Faithful Performance; Due Authority**.  The Corporation covenants that it will faithfully perform at all times any and all covenants, undertakings, stipulations and provisions contained in this Agreement and in any and every Bond executed and delivered hereunder.  The Corporation represents and warrants that it is duly authorized to issue the Bonds authorized hereby, to execute and deliver this Agreement, and that all action on its part for the issuance of the Bonds issued hereunder and the execution and delivery of this Agreement have been duly and effectively taken.

**SECTION 606.   Tax Covenant**.  The Corporation hereby covenants and agrees that, to the extent permitted by the Constitution and laws of the Commonwealth, it shall comply with the requirements of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder so that interest on the Corporation's 2004 Series A Bonds and any refunding Bonds or additional Bonds the interest on which is intended to be excluded from gross income of the recipients thereof for Federal income tax purposes will remain excluded from gross income for Federal income tax purposes and, in furtherance thereof, the Corporation will comply with the requirements of the Tax Certificate as to Arbitrage and Provisions of Sections one hundred forty-one (141) through one hundred fifty (150) of the Internal Revenue Code of 1986.

## ARTICLE VII.

## REMEDIES

**SECTION 701.   Enforcement of Remedies**.  At the request of the Holders of not less than twenty percent (20%) of the aggregate principal amount of Bonds then Outstanding, the Trustee shall proceed, subject to the provisions of Sections 802 hereof, to protect and enforce its rights and the rights of the Holders under the laws of Puerto Rico or under this Agreement, including all rights with respect to the Notes and the Pledged Revenues, by such suits, actions or special proceedings in equity or at law, or by proceedings in the office of any board or officer

having jurisdiction, either for the specific performance of any covenant or agreement contained herein or in aid or execution of any power herein granted or for the enforcement of any proper legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights.

In the enforcement of any remedy under this Agreement the Trustee shall be entitled to sue for, enforce payment of and recover judgment for, in its own name and as trustee of an express trust, any and all amounts then or after any default becoming, and at any time remaining, due from the Corporation for principal, premium, if any, interest or otherwise under any of the provisions of this Agreement or of the Bonds and unpaid, together with any and all costs and expenses of collection and of all proceedings hereunder and under the Bonds, and to exercise all rights and remedies under the Notes, all without prejudice to any other right or remedy of the Trustee or of the Holders, and to recover and enforce any judgment or decree against the Corporation, but solely as provided herein and in the Bonds for any portion of such amounts remaining unpaid and interest, costs and expenses as above provided, and to collect, in any manner provided by law, the moneys adjudged or decreed to be payable. Anything in this Agreement to the contrary notwithstanding, the Trustee may not sell or otherwise dispose of the Notes.

**SECTION 702.   Pro Rata Application of Funds.**   Anything in this Agreement to the contrary notwithstanding, if at any time the moneys in the Sinking Fund shall not be sufficient to pay the interest on or the principal of the Bonds as the same shall become due and payable, such moneys (except for any moneys obtained from a drawing on a Credit Facility, other than the GDB Letters of Credit, or Liquidity Facility (if applicable) and deposited in a separate sub-account which shall secure only one or more specified Series of Bonds or moneys deposited in any sub-account within the Reserve Account that secures only one or more specified Series of Bonds), together with any moneys then available or thereafter becoming available for such purpose, whether through the exercise of the remedies provided for in this Article or otherwise, shall be applied as follows:

first:  to the payment to the persons entitled thereto of all installments of interest then due and payable in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment, ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in such Bonds;

second:  to the payment to the persons entitled thereto of the unpaid principal of any of the Bonds which shall have become due and payable (other than the Bonds called for redemption for the payment of which moneys are held pursuant to the provisions of this Agreement) in the order of their due dates, with interest on such Bonds at the respective rates specified therein from the respective dates upon which such Bonds became due and payable, and, if the amount available shall not be sufficient to pay in full the principal of such Bonds due and payable on any particular date, together with such interest, then to the payment first of such interest, ratably, according to the amount of such interest due on such date, and then to the payment of such principal, ratably, according to the amount of such principal due on such date, to the persons

N206950.6                                                     - 43 -

entitled thereto without any discrimination or preference except as to any difference in the respective rates of interest specified in the Bonds;

third: to the payment of the interest on and the principal of the Bonds, to the purchase and retirement of Bonds and to the redemption of Bonds, all in accordance with the provisions of Article IV of this Agreement;

fourth: to the payment of any amounts then due and owing to a provider of a Credit Facility or a Liquidity Facility (if applicable); and

fifth: to the payment of any amounts then due and payable owing to a Hedge Counterparty under a Swap Agreement (if applicable).

Whenever moneys are to be applied pursuant to the provisions of this Section, such moneys shall be applied by the Trustee at such times, and from time to time, as the Trustee in its sole discretion shall determine, having due regard to the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future; the setting aside of such moneys in trust for the proper purpose shall constitute proper application by the Trustee; and the Trustee shall incur no liability whatsoever to the Corporation, to any Holder, the provider of a Credit Facility or a Liquidity Facility (if applicable), a Hedge Counterparty (if applicable) or to any other person for any delay in applying any such moneys, so long as the Trustee acts with reasonable diligence, having due regard to the circumstances, and ultimately applies the same in accordance with such provisions of this Agreement as may be applicable at the time of application by the Trustee. Whenever the Trustee shall exercise such discretion in applying such moneys, it shall fix the date (which shall be an Interest Payment Date unless the Trustee shall deem another date more suitable) upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue. The Trustee shall give notice as it may deem appropriate of the fixing of any such date, and shall not be required to make payment to the holder of any Bond until such Bond shall be surrendered to it for appropriate endorsement, or for cancellation if fully paid.

**SECTION 703. Effect of Discontinuance of Proceeding**. In case any proceeding taken by the Trustee shall have been discontinued or abandoned for any reason, then and in every such case the Corporation, the Trustee and the Holders shall be restored to their former positions and rights hereunder, respectively, and all rights, remedies, powers and duties of the Trustee shall continue as though no such proceeding had been taken.

**SECTION 704. Majority of Bondholders May Control Proceeding**. Anything in this Agreement to the contrary notwithstanding, Holders of a majority in principal amount of the Bonds Outstanding shall have the right, subject to the provisions of Section 802 hereof, by an instrument in writing executed and delivered to the Trustee, to direct the time, method and place of conducting all remedial proceedings to be taken by the Trustee hereunder or exercising any trust or power conferred upon the Trustee, provided that (i) such direction shall not be otherwise than in accordance with law and the provisions of this Agreement, and (ii) subject to the provisions of Section 801 hereof, that the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction. In the event that particular Bonds are secured by a Credit Facility or Liquidity Facility and the provider of the Credit Facility or

Liquidity Facility has not defaulted in its obligations under such Credit Facility or Liquidity Facility, the provider of such Credit Facility or Liquidity Facility shall have the right, in lieu of the Holders of the Bonds secured thereby, to direct the method and place of conducting such remedial proceedings and to give any consents or waivers to such remedial proceedings under Article VII.

SECTION 705.   Restrictions Upon Actions by Individual Bondholders.  No Holder of any of the Bonds shall have any right to institute, appear in or defend any suit, action or proceeding in equity or at law on any Bond or for the execution of any trust hereunder or for any other remedy hereunder.  It is understood and intended that no one or more Holders of the Bonds hereby secured shall have any right in any manner whatever by his or their action to affect, disturb, or prejudice the security of this Agreement, or to enforce any right hereunder, that all suits, actions and proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the benefit of all Holders of such outstanding Bonds, and that any individual right of action or other right given to one or more of such Holders by law is restricted by this Agreement to the rights and remedies herein provided.

SECTION 706.   No Remedy Exclusive.  No remedy herein conferred upon or reserved to the Holders of the Bonds is intended to be exclusive of any other remedy or remedies herein provided, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder.

SECTION 707.   No Delay or Omission Construed to be a Waiver.  No delay or omission of the Trustee, or any Holder of the Bonds to exercise any right or power accruing upon any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Agreement to the Trustee and to the Holders may be exercised from time to time and as often as may be deemed expedient.

SECTION 708.   Actions of Trustee.  All rights of action under this Agreement or under any of the Bonds enforceable by the Trustee, may be enforced by it without the possession of any of the Bonds or the production thereof in the trial or other proceeding relative thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all the Holders of such Bonds, subject to the provisions of this Agreement.

## ARTICLE VIII.

### CONCERNING THE TRUSTEE

SECTION 801.   Acceptance of Trusts.  The Trustee accepts and agrees to execute the trusts imposed upon it by this Agreement, but only upon the terms and conditions set forth in this Article and subject to the provisions of this Agreement, to all of which the parties hereto and the respective Holders of the Bonds agree.

The Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

**SECTION 802.  Trustee Entitled to Indemnity.**  The Corporation shall indemnify the Trustee for, and hold it harmless against, any loss, liability or reasonable expense (including, without limitation, fees and expenses of its agents and counsel) incurred without negligence on its part, arising out of or in connection with the acceptance or administration of the trust or trusts hereunder or in connection with the exercise or performance of any of its powers or duties hereunder, all such obligations of the Corporation being payable solely from Pledged Revenues. Any other provisions of this Agreement to the contrary notwithstanding, the Trustee shall be under no obligation to institute any suit, or to take any remedial proceeding under this Agreement, or to enter any appearance or in any way defend in any suit in which it may be made defendant, or to take any steps in the execution of the trusts hereby created or in the enforcement of any rights and powers hereunder, until it shall be indemnified to its satisfaction against any and all costs and expenses, outlays and counsel fees and expenses and other reasonable disbursements, and against all liability; the Trustee may, nevertheless, begin suit, or appear in and defend suit, or do anything else in its judgment proper to be done by it as such Trustee, without prior indemnity and in such case it shall be indemnified and reimbursed by the Corporation for all liabilities, costs and expenses, outlays and counsel fees and expenses and other reasonable disbursements properly incurred in connection therewith. The provisions of this Section shall survive the termination of this Agreement.

**SECTION 803.  Limitation on Trustee's Liabilities.**  The Trustee shall have no responsibility in respect of the validity, sufficiency, due execution or acknowledgment of this Agreement or the validity or sufficiency of the security provided hereunder, or except as to the authentication thereof, in respect of the validity of the Bonds or the due execution or issuance thereof.  The Trustee shall not be liable or responsible because of the loss of any deposit of moneys arising through the insolvency or the act or default or omission of any other bank or trust company in which such deposit shall have been made by the Trustee under the provisions of this Agreement or by the Corporation.  The Trustee shall not be responsible for the application of any of the proceeds of the Bonds, or the application of any other moneys deposited with it and paid out, withdrawn or transferred hereunder, if the application by the Trustee of such proceeds and such other moneys and such payment, withdrawal or transfer shall be made in accordance with the provisions of this Agreement.  The Trustee shall not be liable in connection with the performance of its duties hereunder or for any error of judgment made in good faith by it, except for its own negligence or willful misconduct.  The Trustee may confer with competent legal counsel of its selection and shall not be liable for any action taken or suffered by it in good faith in accordance with an opinion of counsel.  The immunities and exemptions from liability of the Trustee hereunder shall extend to its directors, officers, employees and agents.

The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

No provision of this Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

The Trustee shall not be liable for any action taken, suffered, or omitted to be taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts.

The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian and other person employed to act hereunder.

**SECTION 804.   Compensation**.  Subject to the provisions of any contract between the Corporation and the Trustee and to Sections 401 and 601 hereof, the Corporation shall pay to the Trustee such compensation as shall be agreed in writing between the Corporation and the Trustee for all services rendered by it hereunder and also all of its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in and about the acceptance, administration and execution of the trusts hereby created, and the performance of its powers and duties hereunder.  The provisions of this Section shall survive the termination of this Agreement.

**SECTION 805.   Trustee May Rely on Certificates**.  In case at any time it shall be necessary or desirable for the Trustee to make any investigation respecting any fact preparatory to taking or not taking any action or doing or not doing anything as such Trustee, and in any case in which this Agreement provides for permitting or taking any action, and whenever in the administration of this Agreement the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee may, in the absence of bad faith, rely conclusively upon any certificate, requisition, opinion or other instrument required or permitted to be filed with it under the provisions of this Agreement, and any such instrument shall be conclusive evidence of such fact to protect the Trustee in any action that it may or may not take or in respect of anything it may or may not do, in good faith, by reason of the supposed existence of such fact.  Except as otherwise provided in this Agreement, any request, notice, certificate or other instrument from the Corporation to the Trustee shall be deemed to have been signed by the proper party or parties if signed by the President or by any officer or employee of the Corporation who shall be designated by the Corporation by resolution for the purpose, and the Trustee may accept and rely upon a certificate signed by the President or any other officer or employee of the Corporation as to any action taken by the Corporation.

**SECTION 806.   Notice of Default**.  The Trustee shall mail to the Holders of the Bonds then Outstanding, at their addresses as they appear on the registration books, within thirty (30) days after the Trustee shall have actual knowledge of such default, and to any provider of a Credit Facility or a Liquidity Facility, at its address as known by the Trustee, within fifteen (15) days after the Trustee shall have actual knowledge of such default, written notice of any default in the payment of principal of and interest and premium on any Bond, and any other default actually known to the Trustee unless such default shall have been cured or waived.  Except for such payment defaults, the Trustee shall not be deemed to have knowledge of any default hereunder unless specifically notified in writing by the Holders of not less than ten percent (10%) in principal amount of the Bonds Outstanding.

Notwithstanding the foregoing, except for any default in the payment of principal of and interest and premium on any Bond, the Trustee may withhold and shall be protected in withholding any notice to the Holders if and so long as the Trustee in good faith determines that the withholding of such notice is in the interests of the Holders.

**SECTION 807. Trustee May Be Bondholder**. The bank or trust company acting as Trustee under this Agreement, and its directors, officers, agents or employees in their respective individual or other capacities, may buy, sell, own, hold and deal in any of the Bonds issued under and secured by this Agreement, and may join in any action which any Holder of Bonds may be entitled to take with like effect and may otherwise deal with the Corporation as if such bank or trust company were not the Trustee under this Agreement, may engage or be interested in any financial or other transaction with the Corporation, and may maintain any and all of the general banking and business relations with the Corporation with like effect and in the same manner as if the Trustee were not a party to this Agreement; and no implied covenant shall be read into this Agreement against the Trustee in respect of such matters.

**SECTION 808. Trustee Not Responsible for Recitals**. The recitals, statements and representations contained herein and in the Bonds (excluding the Trustee's certificate of authentication on the Bonds) shall be taken and construed as made by and on the part of the Corporation and not by the Trustee, and the Trustee assumes and shall be under no responsibility for the correctness of the same. The Trustee makes no representation as to the validity or sufficiency of this Agreement or the Bonds.

**SECTION 809. Trustee Protected in Relying on Papers**. The Trustee shall be protected in acting or proceeding, or in not acting or not proceeding, in good faith, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other paper or document which it shall in good faith believe to be genuine and to have been passed or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Agreement, or upon the written opinion or other advice of any attorney believed by the Trustee to be qualified in relation to the subject matter, and the Trustee shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such instrument.

The Trustee may request that the Corporation deliver an officer's certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Agreement, which officer's certificate may be signed by any person authorized to sign an officer's certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

**SECTION 810. Resignation of Trustee**. The Trustee may resign and thereby become discharged from the trusts hereby created, by notice in writing to be given to the Corporation not less than sixty (60) days before such resignation is to take effect, but such resignation shall take effect immediately upon the appointment of a new Trustee hereunder, if such new Trustee shall be appointed before the time limited by such notice and shall then accept the trusts hereof.

No resignation by the Trustee under this Section, no removal of the Trustee under Section 811 hereof and no appointment of a successor Trustee under Section 812 hereof shall become effective until the acceptance of appointment by the successor Trustee under Section 813 hereof.

**SECTION 811.  Removal of Trustee.**  The Trustee may be removed at any time by an instrument or concurrent instruments in writing, signed by the Holders of not less than a majority in principal amount of the Bonds hereby secured and then outstanding and filed with the Corporation. A photo-static copy of each such instrument shall be delivered promptly by the Corporation to the Trustee. The Trustee may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of this Agreement with respect to the duties and obligations of the Trustee by any court of competent jurisdiction upon the application of the Corporation pursuant to resolution of the Holders of not less than ten percent (10%) in aggregate principal amount of the Bonds then Outstanding under this Agreement.

**SECTION 812.  Appointment of Successor Trustee.**  If at any time hereafter the Trustee shall resign, be removed, be dissolved or otherwise become incapable of acting, or the bank or trust company acting as Trustee shall be taken over by any governmental official, agency, department or board, the position of Trustee shall thereupon become vacant. If the position of Trustee shall become vacant for any reason, the Corporation shall appoint a Trustee to fill such vacancy.

At any time within one year after any such vacancy shall have occurred, the Holders of a majority in principal amount of the Bonds hereby secured and then Outstanding, by an instrument or concurrent instruments in writing, signed by such Bondholders or their attorneys in fact thereunto duly authorized and filed with the Corporation, may appoint a successor Trustee, which shall supersede any Trustee theretofore appointed by the Corporation. Photo-static copies of each such instrument shall be delivered promptly by the Corporation to the predecessor Trustee and to the Trustee so appointed by the Bondholders.

If no appointment of a successor Trustee shall be made pursuant to the foregoing provisions of this Section within ten (10) days after the vacancy shall have occurred, the Holder of any Bond Outstanding hereunder or any retiring Trustee may apply, at the expense of the Corporation, to any court of competent jurisdiction to appoint a successor Trustee. Such court may thereupon, after such notice, if any, as such court may deem proper and prescribe, appoint a successor Trustee.

Any Trustee hereafter appointed shall be a corporation duly authorized to exercise corporate trust powers and subject to examination by Federal, state or Commonwealth authority and in good standing and having at the time of its appointment a combined capital and surplus aggregating at least FIFTY MILLION DOLLARS ($50,000,000).

Within thirty (30) days after the appointment of a successor Trustee, the Trustee shall notify the Rating Agencies of such appointment, provided that failure to mail such notice shall not affect the validity of such appointment.

**SECTION 813. Vesting of Trust with Successor Trustee.** Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to its predecessor, and also to the Corporation, an instrument in writing accepting such appointment hereunder, and thereupon such successor Trustee, without any further act, shall become fully vested with all the rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessor; but such predecessor shall, nevertheless, on the written request of its successor or of the Corporation and upon payment of the expenses, charges and other disbursements of such predecessor which are payable pursuant to the provisions of Section 804 hereof, execute and deliver an instrument transferring to such successor Trustee all the rights, immunities, powers and trusts of such predecessor hereunder; and every predecessor Trustee shall deliver all property and moneys held by it hereunder to its successor. Should any instrument in writing from the Corporation be required by any successor Trustee for more fully and certainly vesting in such Trustee the rights, immunities, power and trusts hereby vested or intended to be vested in the predecessor Trustee, any such instrument in writing shall and will, on request, be executed, acknowledged and delivered by the Corporation.

**SECTION 814. Reporting Requirements.** The Trustee shall, on a semiannual basis, file with the Corporation a statement setting forth in respect of the preceding six calendar months:

(a)     the amount withdrawn or transferred by it and the amount deposited with it on account of each Fund and Account held by it under the provisions of this Agreement;

(b)     the amount on deposit with it at the end of such month to the credit of each such Fund and Account;

(c)     a brief description of all obligations held by it as an investment of moneys in each such Fund and Account and of any Reserve Account Letter of Credit or Reserve Account Insurance Policy in the Reserve Account (if applicable);

(d)     the amount applied to the purchase or redemption of Bonds under Section 403 of this Agreement and a description of Bonds or portions of Bonds so purchased or redeemed; and

(e)     any other information which the Corporation may reasonably request.

All records and files pertaining to the trusts hereunder in the custody of the Trustee shall be open at all reasonable times to the Corporation and its agents and representatives.

## ARTICLE IX.

### EXECUTION OF INSTRUMENTS BY BONDHOLDERS
### AND PROOF OF OWNERSHIP OF BONDS

**SECTION 901. Proof of Execution of Documents and Ownership** (a) Any request, direction, consent or other instrument in writing required by this Agreement to be signed or executed by Bondholders may be in any number of concurrent instruments of similar tenor and may be signed or executed by such Bondholders in person or by their attorneys or legal representatives appointed by an instrument in writing. Proof of the execution of any such

instrument and of the ownership of Bonds shall be sufficient for any purpose of this Agreement and shall be conclusive in favor of the Trustee with regard to any action taken by it under such instrument if made in the following manner:

(1) The fact and date of the execution by any person of any such instrument may be proved by the verification of any officer in any jurisdiction who, by the laws thereof, has power to take affidavits within such jurisdiction, to the effect that such instrument was subscribed and sworn to before him, or by an affidavit of a witness to such execution. Where such execution is on behalf of a person other than an individual, such verification shall also constitute sufficient approval of the authority of the signor thereof.

(2) The ownership of Bonds shall be proved by the registration books required to be maintained pursuant to the provisions of Article II of this Agreement.

Nothing contained in this Article shall be construed as limiting the Trustee to such proof, it being intended that the Trustee may accept any other evidence of the matters herein stated which it may deem sufficient.

(b)     If the Corporation shall solicit from the Holders any request, direction, consent or other instrument in writing required or permitted by this Agreement to be signed or executed by the Holders, the Corporation may, at its option, fix in advance a record date for determination of Holders entitled to give each request, direction, consent or other instrument, but the Corporation shall have no obligation to do so. If such a record date is fixed, such request, direction, consent or other instrument may be given before or after such record date, but only the Holders of record at the close of business on such record date shall be deemed to be Holders for the purposes of determining whether Holders of the requisite proportion of Bonds have authorized or agreed or consented to such request, direction, consent or other instrument, and for that purpose the Bonds shall be computed as of such record date.

(c)     Any request or consent of the Holder of any Bond shall bind every future Holder of the same Bond or any Bond issued in place thereof in respect of anything done by the Trustee pursuant to such request or consent.

## ARTICLE X.
## SUPPLEMENTAL AGREEMENTS

**SECTION 1001. Supplemental Agreements Without Bondholders' Consent.** The Corporation and the Trustee may, without the consent or approval of, or notice to, any of the Bondholders, from time to time and at any time, enter into such agreements supplemental hereto as shall not be inconsistent with the terms and provisions hereof (which supplemental agreements shall thereafter form a part hereof):

(a)     to cure any ambiguity or formal defect or omission in this Agreement or in any supplemental agreement or to correct or supplement any provision contained herein that may be defective or inconsistent with any other provisions contained herein; or

(b)     to grant to or confer upon the Trustee for the benefit of the Bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the Bondholders or the Trustee; or

(c)     to add to the conditions, limitations and restrictions on the issuance of Bonds under the provisions of this Agreement, other conditions, limitations and restrictions thereafter to be observed; or

(d)     to add to the covenants and agreements of the Corporation in this Agreement other covenants and agreements thereafter to be observed by the Corporation or to surrender any right or power herein reserved to or conferred upon the Corporation; or

(e)     to permit the issuance of Bonds in coupon form; or

(f)     to qualify the Bonds or any of the Bonds for registration under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended; or

(g)     to qualify this Agreement as an "indenture" under the Trust Indenture Act of nineteen hundred thirty-nine (1939), as amended; or

(h)     to make such changes as may be necessary to adjust the terms hereof so as to facilitate the issuance of Variable Rate Bonds, Capital Appreciation Bonds, Capital Appreciation and Income Bonds, Put Bonds, Interim Bonds and such other Bonds as may be marketable from time to time; or

(i)     to make such changes as may be necessary to comply with the provisions of Puerto Rico law relating to the exclusion of interest on the Bonds from gross income thereunder; or

(j)     to make such changes as may evidence the right and interest of an issuer of a Credit Facility or a Liquidity Facility that secures any Series of Bonds.

(k)     to make such changes as may be necessary to  create a Reserve Account for any Bonds.

**SECTION 1002. Modification with Consent of Holders of Majority of Bonds.** Subject to the terms and provisions contained in this Section, and not otherwise, the Holders of not less than a majority in aggregate principal amount of the Bonds at the time Outstanding (or in case less than all of several Series of Bonds then Outstanding are affected by the supplement hereto, the Holders of not less than a majority in principal amount of the Bonds of each Series so affected and Outstanding at the time the consent is given) shall have the right, from time to time, anything contained in this Agreement to the contrary notwithstanding, to consent to and approve the execution by the Corporation and the Trustee of such agreement or agreements supplemental hereto as shall be deemed necessary or desirable by the Corporation for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this Agreement or in any supplemental agreement; provided, however, that nothing herein contained shall permit, or be construed as permitting, without the consent of the Holders of one hundred percent (100%) of the Bonds Outstanding affected by the proposed

supplemental agreement (a) an extension of the time for the payment of the principal of or the interest on any Bond, or (b) a reduction in the principal amount of any Bond or the redemption premium or the rate of interest thereon, or (c) the creation of any lien or a pledge of funds other than the lien and pledge created by this Agreement, or (d) a preference or priority of any Bond or Bonds over any other Bond or Bonds, or (e) a reduction in the aggregate principal amount of the Bonds required for consent to such supplemental agreement or any waiver hereunder. Nothing herein contained, however, shall be construed as making necessary the approval by Bondholders of the execution of any supplemental agreement authorized by Section 1001 of this Article. The provider of any Credit Facility or Liquidity Facility (if applicable) shall have the right in lieu of the Holders of the Bonds secured thereby, to give consent to any supplemental agreement for which consent of the Holders of such Bonds is required under this Article and all references to Bondholder for purposes of such consent shall mean instead the provider of such Credit Facility or Liquidity Facility; provided, however, that such provider of a Credit Facility or Liquidity Facility shall not be in default on its obligations in connection with such Credit Facility or Liquidity Facility.

If at any time the Corporation shall request the Trustee to enter into any supplemental agreement for any of the purposes of this Section, the Trustee shall cause a notice to be mailed, postage prepaid, to all Bondholders then Outstanding at their addresses as they appear on the registration books, to any provider of a Credit Facility or Liquidity Facility and to the Rating Agencies. Such notice shall briefly set forth the nature of the proposed supplemental agreement and shall state that a copy thereof is on file at the principal corporate trust office of the Trustee for inspection by all Bondholders. The Trustee shall not, however, be subject to any liability to any Bondholder by reason of its failure to mail the notice required by this Section, and any such failure shall not affect the validity of such supplemental agreement when consented to or approved as provided in this Section.

Whenever, at any time within a year after the date of the mailing of such notice, the Corporation shall deliver to the Trustee an instrument or instruments purporting to be executed by the Holders of at least a majority in aggregate principal amount of the Bonds then Outstanding, which instrument or instruments shall refer to the proposed supplemental agreement described in such notice and shall specifically consent to and approve the execution thereof, thereupon, but not otherwise, the Trustee may execute such supplemental agreement without liability or responsibility to any Holder of any Bond, whether or not such Holder shall have consented thereto. It shall not be necessary for the consent of the Holders to approve the particular form of any proposed supplemental agreement, but it shall be sufficient if such consent shall approve the substance thereof.

If the Holders of not less than a majority in aggregate principal amount of the Bonds of each Series affected and Outstanding at the time of the execution of such supplemental agreement or any record date established in connection therewith pursuant to Section 901(b) hereof shall have consented to and approved the execution thereof as herein provided, no Holder shall have any right to object to the execution of such supplemental agreement, or to object to any of the terms and provisions therein contained, or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Corporation from executing the same or from taking any action pursuant to the provisions thereof.

The consent of the Holders of any additional Series of Bonds to be issued hereunder shall be deemed given if the underwriters or initial purchasers for resale consent in writing to such supplemental agreement and the nature of the amendment effected by such supplemental agreement is disclosed in the official statement or other offering document pursuant to which such additional Series of Bonds is offered and sold to the public.

Upon the execution of any supplemental agreement pursuant to the provisions of this Section, this Agreement shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Agreement of the Corporation, the Trustee, and all Holders of Outstanding Bonds shall thereafter be determined, exercised and enforced hereunder, subject in all respects to such modifications and amendments.

**SECTION 1003. Trustee Joining in Supplemental Agreements**. The Trustee is authorized to join with the Corporation in the execution of any such supplemental agreement and to make the further agreements and stipulations which may be contained therein, but the Trustee may, but shall not be obligated (except to the extent required in the case of a supplemental agreement entered into pursuant to Section 1001(g) hereof) to, enter into any such supplemental agreement which affects its rights, duties, or immunities under this Agreement. Any supplemental agreement executed in accordance with the provisions of this Article shall thereafter form a part of this Agreement; and all the terms and conditions contained in any such supplemental agreement as to any provision authorized to be contained therein shall be and be deemed to be part of the terms and conditions of this Agreement for any and all purposes. In case of the execution and delivery of any supplemental agreement, express reference may be made thereto in the text of any Bonds issued thereafter, if deemed necessary or desirable by the Trustee.

**SECTION 1004. Responsibilities of Trustee under this Article**. The Trustee shall not be under any responsibility or liability to the Corporation or to any Bondholder or to anyone whomsoever for its refusal in good faith to enter into any such supplemental agreement if such agreement is deemed by the Trustee to be contrary to the provisions of this Article. The Trustee shall be entitled to receive, and shall be fully protected in relying upon, the opinion of any counsel, including counsel for the Corporation, as conclusive evidence that any such supplemental agreement complies with the provisions of this Agreement, and that it is proper for the Trustee, under the provisions of this Article, to join in the execution of such supplemental agreement.

**SECTION 1005. Bond Resolution May Be Supplemented or Modified**. Resolutions of the Board authorizing the issuance of any Series of Bonds may be supplemented or modified by subsequent resolution of the Board; provided that the provisions of this Article shall apply, except as otherwise provided in Section 602 hereof, to each supplementing or modifying resolution with the same force and effect as if the same were supplemental or amendatory of this Agreement.

## ARTICLE XI.

## AMENDMENTS TO THE NOTES

SECTION 1101. **Amendments Not Requiring Consent**.  The Trustee (as assignee of the Notes) may, without the consent or approval of, or notice to, any of the Bondholders, enter into, from time to time and at any time, such amendments to the Notes in form satisfactory to the Trustee, as shall not be inconsistent with the terms and provisions thereof to:

(a)    cure any ambiguity or formal defect or omission in the Notes, provided such action shall not materially adversely affect the interests of the Bondholders, or

(b)    grant to or confer upon the Corporation or Trustee for the benefit of the Bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the Corporation or Bondholders or the Trustee, or

(c)    provide for the substitution of any Notes for other notes of Authorized Debtors, provided that such substitution does not restrict, limit or reduce the obligation of the Authorized Debtors to make payments sufficient to pay the principal of and interest on the Bonds, or otherwise impair the security of the Bondholders of any Series of Bonds under this Agreement, or

(d)    change the Allocable Share and/or the Applicable Percentage (as defined in the Notes) with respect to any Notes, provided that such change does not restrict, limit or reduce the obligation of the Authorized Debtors to make payments sufficient to pay the principal of and interest on the Bonds, or

(e)    permit the refunding of all or any portion of the Bonds issued hereunder, provided that such refunding does not restrict, limit or reduce the obligation of the Authorized Debtors to make payments sufficient to pay the principal of and interest on the Bonds, or otherwise impair the security of the Bondholders of any Series of Bonds under this Agreement

(f)    make any other change which, in the judgment of the Trustee, based upon an opinion of counsel, will not restrict, limit or reduce the obligation of the Authorized Debtors to make payments under the Notes sufficient to pay the principal of or interest on the Bonds, or otherwise impair the security of the Bondholders under this Agreement.

SECTION 1102. **Amendments Requiring Consent of Holders of a Majority in Principal Amount of Bonds**.  Except for amendments provided for in Section 1101, the Trustee shall not enter into any amendment to the Notes unless notice of the proposed amendment shall have been given and the holders of not less than a majority in aggregate principal amount of the Bonds then Outstanding shall have consented to and approved the execution thereof, all as provided for in Section 1002 hereof in the case of supplements and amendments to this Agreement; and provided further that without the consent of all of the holders of the Bonds Outstanding affected by such change, no such amendment shall be entered into by the Trustee which would restrict, limit or reduce the obligations of the Authorized Debtors with respect to the Bonds.

# ARTICLE XII.

## DEFEASANCE

**SECTION 1201. Defeasance.** If all the Outstanding Bonds shall have been paid or deemed to have been paid as provided below, and the Trustee shall have received written notice from each provider of a Credit Facility or Liquidity Facility or any Hedge Counterparty that all amounts then due and owing to such providers of a Credit Facility, Liquidity Facility or Rate Swap have been paid, then and in that case the right, title and interest of the Trustee hereunder (except under Section 804 of this Agreement) shall cease, terminate and become void, and such Bonds shall cease to be entitled to any benefit or security under this Agreement except for Sections 205, 206 and 211 of this Agreement. In such event, the Trustee shall transfer and assign to the Corporation all property then held by the Trustee, shall execute such documents as may be reasonably required by the Corporation to evidence such transfer and assignment and shall turn over to the Corporation any surplus in any account in the Sinking Fund.

Any Outstanding Bond shall be deemed to have been paid within the meaning and with the effect expressed in this Section 1201 when the whole amount of the principal of and interest on such Bond shall have been paid or when (a) there shall have been deposited with the Trustee or another fiduciary institution acting as escrow agent for the Holder of such Bond either moneys in an amount that shall be sufficient, or Government Obligations, which shall not contain provisions permitting the redemption thereof at the option of the issuer, the principal of and interest on which when due, and without any reinvestment thereof, will provide moneys which, together with the moneys, if any, deposited with or held by the Trustee available therefor, shall be sufficient, to pay when due the principal of and premium, if any, and interest due and to become due on such Bond on or prior to the redemption date or maturity date thereof, as the case may be, and (b) in the event such Bond does not mature and is not to be redeemed within the next succeeding sixty (60) days, the Corporation shall have given the Trustee irrevocable instructions to give, as soon as practicable, a notice to the Holder of such Bond by first-class mail, postage prepaid, stating that the deposit of moneys or Government Obligations has been made with the Trustee or another fiduciary institution acting as escrow agent for the Holder of such Bond, and that such Bond is deemed to have been paid in accordance with this Section and stating such maturity or redemption date upon which moneys are to be available for the payment of the principal of and premium, if any, and interest on such Bond. Neither the moneys nor Government Obligations deposited with the Trustee or other fiduciary institution acting as escrow agent nor principal or interest payments on any such obligations shall be withdrawn or used for any purpose other than, and shall be held in trust for, the payment of the principal of and premium, if any, and interest on such Bonds. The Trustee shall be entitled to request and rely upon a verification report of an independent third party as to the sufficiency of the moneys or Government Obligations to pay such Bonds.

As to Variable Rate Bonds, the amount required for the interest thereon shall be calculated at the maximum rate permitted by the resolution of the Board authorizing the issuance of the Variable Rate Bonds; provided, however, that if on any date the total amount of moneys and Government Obligations on deposit for the payment of interest on such Variable Rate Bonds is in excess of the total amount which would have been required to be deposited on such date in respect of such Variable Rate Bonds in order to fully discharge and satisfy such Bonds pursuant

to the provisions of this Section, the Corporation may use the amount of such excess, free and clear of any trust, lien, security interest, pledge or assignment securing said Variable Rate Bonds or otherwise existing under this Agreement.

Notwithstanding any of the provisions of this Agreement to the contrary, Put Bonds may only be fully discharged and satisfied either by paying the principal of and interest on said Bonds as they become due and payable or by depositing moneys which shall be sufficient at the time of such deposit to pay when due the maximum amount of principal of and redemption premium, if any, and interest on such Put Bonds which could become payable to the Holders of such Bonds upon the exercise of any options provided to the Holders of such Bonds and the Corporation; provided, however, that if, at the time a deposit is made pursuant to this paragraph, the options originally exercisable are no longer exercisable, such Bonds shall not be considered Put Bonds for these purposes.

If any portion of the moneys deposited for the payment of the principal of and redemption premium, if any, and interest on any Bond is not required for such purpose, the Corporation may use the amount of such excess, free and clear of any trust, lien, security interest, pledge or assignment securing such Bond. Within thirty (30) days after the defeasance of Bonds, the Trustee shall notify the Rating Agencies of such defeasance, provided that failure to mail such notice shall not affect the defeasance of such Bonds.

## ARTICLE XIII.

### GDB LETTERS OF CREDIT; DRAWS

**SECTION 1301. Draws on GDB Letters of Credit**. If (i) the Trustee has not received by the close of business on the third Business Day preceding August 1 of any Fiscal Year during the term of the Bonds written notice signed by the President that an operating budget for the Commonwealth for such Fiscal Year has been duly adopted by the Legislature of Puerto Rico and approved by the Governor of Puerto Rico and is then in effect and (ii) the Trustee has not otherwise received funds representing the full amount of the principal and interest due with respect to the Bonds for the Bond Year commencing within such Fiscal Year, the Trustee shall draw, before 5:00 p.m. on the second Business Day preceding August 1, under the GDB Letters of Credit in accordance with the respective terms thereof an amount which, together with all the amounts on deposit in the Sinking Fund on that date, is sufficient to pay the principal of or interest on the Bonds due during such Bond Year and shall deposit the proceeds in the Sinking Fund, in the order established in Section 401 hereof.

**SECTION 1302. Enforcement by Trustee; No Reduction of Obligations.** (a) In the event that Government Development Bank shall fail to make lawful payment under a GDB Letter of Credit of a drawing made and presented in strict compliance with the terms thereof, the Trustee is hereby authorized and required to enforce all of its rights under such GDB Letter of Credit by such actions at law or in equity as it deems necessary in order to protect the interest of the Holders of the Bonds.

(b)     No failure by Government Development Bank to comply with the terms of a GDB Letter of Credit shall relieve or reduce any obligations of the Corporation under this Trust Agreement.

SECTION 1303. **Compliance with Procedures**. The Trustee shall comply with the procedures set forth in the GDB Letters of Credit.

SECTION 1304. **Supplements and Amendments to the GDB Letter of Credit Not Requiring Consent**. Anything in this Trust Agreement to the contrary notwithstanding, the Trustee, the Corporation and Government Development Bank may, without the consent or approval of, or notice to, any of the Bondholders, agree to and execute, from time to time and at any time, such amendments and supplements to any GDB Letter of Credit as shall not be inconsistent with the terms and provisions thereof, which amendments or supplements in the opinion of the Trustee, based upon an opinion of counsel, shall not be detrimental to the interests of the Holders of the Bonds (which supplements and amendments shall thereafter form a part thereof), to

(a)     cure any ambiguity or formal defect or omission in a GDB Letter of Credit or in any supplement thereto,

(b)     grant to or confer upon the Trustee for the benefit of the Holders of the Bonds any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the Holders of the Bonds or the Trustee, or

(c)     reduce the stated amount of a GDB Letter of Credit to the extent that the Maximum Difference relating to the Bonds that have the benefit of such GDB Letter of Credit is reduced, as certified by the President or any Executive Vice President of the Corporation, or increase the stated amount of such GDB Letter of Credit, or

(d)     make any other change which, in the judgment of the Trustee, based upon an opinion of counsel, will not restrict, limit or reduce the obligation of Government Development Bank to make the payments under the GDB Letters of Credit to pay the principal of or interest on the Bonds or otherwise impair the security of the Holders of the Bonds under this Trust Agreement.

SECTION 1305. **Supplements and Amendments to the GDB Letters of Credit Requiring Consent of Holders of a Majority of Bonds**. Anything in this Trust Agreement to the contrary notwithstanding, except for supplements or amendments provided for in Section 1304, the Trustee shall not agree to any supplement or amendment to any of the GDB Letters of Credit unless notice of the proposed execution of such supplement or amendment shall have been given to the Holders of the Bonds that have the benefit of the GDB Letter of Credit to be amended or supplemented and the Holders of not less than a majority in aggregate principal amount of such Bonds at the time Outstanding shall have consented to and approved the execution thereof, all as provided for in Section 1002 in the case of supplements and amendments to this Trust Agreement and with the same effect as provided in Section 1002; provided that the Trustee shall be entitled to exercise its discretion in consenting or not consenting to any such supplement or amendment in the same manner as provided for in Section

1004. Nothing herein contained shall permit or be construed as permitting any amendment or modification of any provision of the GDB Letters of Credit which would reduce the amount of any payment required to be made thereunder to the Trustee, or would postpone the time of any such payment, or would alter the conditions under which any such payment is made, or any other amendment or modification which would adversely affect the security of the Holders of the Bonds that have the benefit of such GDB Letter of Credit, as the case may be.

**SECTION 1306. Successor Letters of Credit.** At any time prior to the expiration of a GDB Letter of Credit or any Successor Letter of Credit (as defined below) then outstanding, the Corporation may at its option provide for the delivery to the Trustee of a successor letter of credit in the same stated amount as the GDB Letter of Credit or the Successor Letter of Credit which is being replaced, issued by a bank, banking association or trust company whose long-term debt obligations are rated at the time of issuance of such successor letter of credit in any of the three highest rating categories (without regard to any gradations within any such category) by Moody's and S&P (the "Successor Letter of Credit"). Any Successor Letter of Credit must be for a term at least as long as the remaining term of the GDB Letter of Credit or the Successor Letter of Credit which is being replaced, and shall contain administrative provisions substantially similar to those of the GDB Letter of Credit and reasonably acceptable to the Trustee.

The Trustee shall not accept delivery of any Successor Letter of Credit unless it shall have received on or prior to the delivery thereof the following documents:

(a)     an executed copy of the Reimbursement Agreement authorizing such Successor Letter of Credit;

(b)     an opinion or opinions of counsel to the effect that (i) either (A) the acceptance by the Trustee of the Successor Letter of Credit will not require that the Bonds or the Successor Letter of Credit be registered under the Securities Act of 1933, as amended, or the qualification of any indenture under the Trust Indenture Act of 1939, as amended, or (B) any registration statement required to be filed under the Securities Act of 1933, as amended, with respect to the Bonds or the Successor Letter of Credit is effective under such Act, and any such indenture has been duly qualified under the Trust Indenture Act of 1939, as amended, and (ii) the Successor Letter of Credit is a legal, valid and binding obligation of the issuer of the Successor Letter of Credit enforceable in accordance with its terms except to the extent that the enforceability of the Successor Letter of Credit may be limited by bankruptcy, insolvency or other laws affecting creditors' rights generally and subject to general principles of equity (regardless of whether said enforceability is considered in a proceeding in equity or at law);

(c)     an opinion of a recognized firm of municipal bond attorneys that the delivery of such Successor Letter of Credit is authorized by and complies with this Agreement;

(d)     a written notice from each rating agency then rating the Bonds confirming that the rating on such Bonds will not be lowered or withdrawn as a result of the delivery of the Successor Letter of Credit; and

(e)     such other documents and opinions as the Trustee may reasonably request.

If at any time prior to the expiration of a GDB Letter of Credit or any Successor Letter of Credit there shall have been delivered to the Trustee a Successor Letter of Credit and the documents mentioned above, then the Trustee shall accept such Successor Letter of Credit and surrender the applicable GDB Letter of Credit or any previously held Successor Letter of Credit to its issuer for cancellation in accordance with its terms. The Trustee shall cause a notice stating that a Successor Letter of Credit has been delivered in accordance with this Agreement and setting forth the name of the issuer of the Successor Letter of Credit to be mailed, postage prepaid, to all Holders of Bonds then Outstanding entitled to the benefit of such Successor Letter of Credit at their addresses as they appear on the registration books. If at any time all the Bonds entitled to the benefit of a particular GDB Letter of Credit or Successor Letter of Credit shall be deemed to have been paid within the meaning and with the effect expressed in this Agreement, the Trustee shall surrender the applicable GDB Letter of Credit or any Successor Letter of Credit to Government Development Bank or the issuer of such Successor Letter of Credit for cancellation in accordance with its terms. The Trustee shall comply with the procedures set forth in the applicable GDB Letter of Credit or Successor Letter of Credit relating to the termination thereof.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

**SECTION 1401. Covenants of Corporation and Trustee Bind Their Successors**. All the covenants, stipulations, obligations and agreements contained in this Agreement by or on behalf of or for the benefit of the Corporation or the Trustee shall bind or inure to the benefit of the successor or successors of the Corporation or the Trustee from time to time and any officer, board, body or commission to whom or to which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law. Any bank or trust company having power to execute the trusts of this Agreement and otherwise qualified to act as Trustee hereunder with or into which the Trustee may be merged, converted or consolidated, or to which all or substantially all the corporate trust assets and business of the Trustee may be sold, shall be deemed to be the successor of the Trustee. Any bank or trust company with or into which any of the paying agents may be merged, converted or consolidated, or to which all or substantially all the corporate trust assets and business of such paying agents may be sold, shall be deemed the successor of such paying agents for the purposes of this Agreement.

**SECTION 1402. Notices**. Any notice, demand, direction, request or other instrument authorized or required by this Agreement to be given to or filed with the Corporation, the Rating Agencies or the Trustee shall be deemed to have been sufficiently given or filed for all purposes of this Agreement if mailed, by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

if to the Corporation: President, Puerto Rico Public Finance Corporation c/o Government Development Bank for Puerto Rico, Minillas Government Center Stop twenty-two (22), Santurce, Puerto Rico zero zero nine zero seven (00907) or at such other address as it may designate in writing;

if to the Rating Agencies: Standard & Poor's Ratings Services, twenty-five (25) Broadway, twenty-first (21st) Floor, New York, NY one zero zero three four (10034) or at such other address as it may designate in writing, and Moody's Investors Service, Inc., ninety-nine (99) Church Street, Ninth (9th) Floor, New York, NY one zero zero zero seven (10007), or at such other address as it may designate in writing; and

if to the Trustee: The Bank of New York, c/o The Bank of New York Trust Company of Florida, N.A., one zero one six one (10161) Centurion Parkway, Jacksonville, Florida three two two five six (32256), Attention: Corporate Trust Department or at such other address as it may designate in writing, or to any successor Trustee, if addressed to its principal corporate trust office.

All documents received by the Trustee under the provisions of this Agreement shall be retained in its possession, subject at all reasonable times to the inspection of the Corporation, any Bondholders, and the agents and representatives thereof.

SECTION 1403. **Substitute Publication and Mailing**. If, because of the temporary or permanent suspension of publication of any newspaper or financial journal or for any other reason, the Trustee or the Corporation shall be unable to publish in a newspaper or financial journal any notice required to be published by the provisions of this Agreement, the Trustee or the Corporation, as the case may be, shall give such notice in such other manner as in its judgment shall most effectively approximate such publication thereof, and the giving of such notice in such manner shall for all purposes of this Agreement be deemed to be compliance with the requirement for the publication thereof.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Bondholders when such notice is required to be given pursuant to any provision of this Agreement, any manner of giving notice as shall be satisfactory to the Trustee and the Corporation shall be deemed to be a sufficient giving of such notice.

SECTION 1404. **No Third Party Rights**. Except as herein otherwise expressly provided, nothing in this Agreement expressed or implied is intended or shall be construed to confer upon any person other than the parties hereto, the Holders of the Bonds issued under and secured by this Agreement, the provider of any Credit Facility or Liquidity Facility securing the Bonds any right, remedy or claim, legal or equitable, under or by reason of this Agreement or any provision hereof, this Agreement and all its provisions intended to be and being for the sole and exclusive benefit of the parties hereto, the Holders from time to time of the Bonds issued hereunder, the provider of any Credit Facility or Liquidity Facility securing the Bonds.

SECTION 1405. **Effect of Partial Invalidity**. In case any one or more of the provisions of this Agreement or of the Bonds issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Agreement or of the Bonds, but this Agreement and said Bonds shall be construed and enforced as if such illegal or invalid provision had not been contained therein. In case any covenant, stipulation, obligation or agreement contained in the Bonds or in this Agreement shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement

shall be deemed to be the covenant, stipulation, obligation or agreement of the Corporation to the full extent permitted by law.

      **SECTION 1406. <u>Effect of Covenants</u>.** All covenants, stipulations, obligations and agreements of the Corporation contained in this Agreement shall be deemed to be covenants, stipulations, obligations and agreements of the Corporation and of the Board to the full extent authorized by the Act.

      Except as otherwise provided in this Agreement, all rights, powers and privileges conferred and duties and obligations imposed upon the Corporation or upon the Board by the provisions of this Agreement shall be exercised or performed by the Corporation, the Board or by such other officers, board, body or commission as may be required by law to exercise such rights, powers and privileges or to perform such duties and obligations.

      No covenant, stipulation, obligation or agreement herein contained shall be deemed to be a covenant, stipulation, obligation or agreement of any member, agent or employee of the Corporation in his individual capacity, and neither the members of the Corporation nor any officer thereof executing the Bonds shall be liable personally on the Bonds or be subject to any personal liability or accountability by reason of the issuance thereof.

      **SECTION 1407. <u>Governing Law</u>.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth, except that the rights, limitations of rights, immunities, duties and obligations of the Trustee shall be governed by the laws of the jurisdiction of its incorporation or in the case of any Trustee which is incorporated under the laws of the United States, the laws of the jurisdiction in which its principal corporate trust office is located.

      **SECTION 1408. <u>Payments Due on Saturdays, Sundays and Holidays</u>.** In any case where the date of payment of interest on or principal of the Bonds or the date fixed for redemption of any Bonds shall be a Saturday, Sunday or other day on which commercial banking institutions in the Commonwealth and in the Borough of Manhattan, City and State of New York are closed, then payment of interest or principal, and premium, if any, need not be made on such date but may be made on the next succeeding Business Day with the same force and effect as if made on said date of payment or the date fixed for redemption, and no interest on such payment shall accrue for the period after such date.

      **SECTION 1409. <u>Headings, etc. Not Part of Agreement</u>.** Any headings preceding the texts of the several articles hereof and any table of contents appended to copies hereof shall be solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

IN WITNESS WHEREOF, the Corporation and the Trustee have caused this Trust Agreement to be executed by their respective duly authorized officers, all as of the date and year first written above.

PUERTO RICO PUBLIC FINANCE
CORPORATION

_____
Executive Vice President


U.S. BANK TRUST NATIONAL
ASSOCIATION

_____

------------------NUMBER THREE (3)-----------------

------DEED OF RATIFICATION OF TRUST AGREEMENT------

---In the Municipality of San Juan, Commonwealth of Puerto Rico, this twenty-fifth (25th) day of June, two thousand four (2004).-------------------------

-------------------BEFORE ME---------------------

---ELIANETH ALICEA VALENTIN, Attorney-at-Law and Notary Public in and for the Commonwealth of Puerto Rico with offices located on the Eighth Floor of the American International Plaza, 250 Muñoz Rivera Avenue, San Juan, Puerto Rico and residence in San Juan, Puerto Rico.---------------------------------

--------------------APPEAR--------------------

---AS PARTY OF THE FIRST PART:  PUERTO RICO PUBLIC FINANCE    CORPORATION    (the    "Corporation"),   a governmental instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth") and a wholly-owned subsidiary of Government Development Bank for Puerto Rico, Employer Identification Number 66-0595753, represented herein by its Executive Vice President, Carlos M. Piñeiro, of legal age, married and resident of Guaynabo, Puerto Rico, who has been duly authorized to appear herein on behalf of the Corporation pursuant to Resolution No. EO-2004-01   , adopted   by   the   Board   of   Directors   of   the Corporation on the tenth (10th) day of June, two thousand four (2004).----------------------------

---AS PARTY OF THE SECOND PART:  U.S. BANK TRUST NATIONAL ASSOCIATION a bank duly organized under the laws of the United States and having its principal corporate trust office in New York, New





York, which is authorized to exercise trust powers (said bank being hereinafter called the "Trustee"), Employer Identification Number 41-1973763, represented herein by its agent, Cheryl Clarke, of legal age, single, banker and resident of New York, New York, who has been duly authorized to appear herein on behalf of the Trustee as evidenced by a Certificate executed by the Executive Vice President of the Trustee on the thirtieth (30th) day of December, two thousand three (2003).------------

---I, the Notary, hereby certify that I personally know the natural persons appearing on behalf of the parties of the First and Second Part, and I further certify through their statements as to their age, civil status, profession and residence. They assure me that they have, and in my judgment they do have, the necessary legal capacity and knowledge of the English language to execute this instrument, and accordingly they do hereby, freely and voluntarily----------------------------------------

----------------------STATE-----------------------

---FIRST: The Corporation and the Trustee have entered into a Trust Agreement, dated as of the first (1st) day of June, two thousand four (2004)(the "Trust Agreement"), in connection with the issuance of certain bonds of the Corporation.--

---SECOND: The Corporation and the Trustee have agreed to ratify and confirm each and every clause of the Trust Agreement, copy of which Trust Agreement, containing sixty-eight (68) letter size pages, is attached hereto and made to form a part hereof.-----------------------------------------

---THIRD: The Corporation and the Trustee now



state that for the purposes of converting the Trust Agreement into a public deed form, they enter into this Deed and deliver a copy of the Trust Agreement to me, the Notary, and I proceed to incorporate the Trust Agreement to form an integral part of this Deed, the Trust Agreement to be effective as if it had been fully transcribed into this Deed.---------

---FOURTH: The appearing parties accept and ratify the aforementioned Trust Agreement in its entirety, said Trust Agreement remaining in full force and effect subject to all and everyone of the terms, covenants and conditions which are set forth therein as if fully transcribed herein.-------

FIFTH: The Parties hereto bind themselves to execute at the request of either any other document, notarial or otherwise, which may be necessary to carry out the intent of the transaction herein executed.----------------------

-------------------ACCEPTANCE---------------------

---The appearing parties accept this Deed as drafted and confirm that the same has been drawn in accordance with their instructions.----------------

---I, the Notary, hereby certify that the appearing parties read this Deed, that I advised the appearing parties of their right to have witnesses present at its execution, which right they waived, and that I advised them of the legal effect of this Deed and made to them the pertinent legal warnings; and they acknowledged that they understood the contents of this Deed and such legal effect, and thereupon they signed this Deed before me affixing their initials to each and every page thereof.------

---I further certify as to everything stated or





contained herein.---------------------------------
---I, the Notary, DO HEREBY ATTEST.----------------

