# U.S. BANK

# EXHIBIT F

## Series 2012 A

## PFC Bonds Letter of Credit

**LETTER OF CREDIT**

**AND**

**REIMBURSEMENT AGREEMENT**

dated June 28, 2012

between

PUERTO RICO PUBLIC FINANCE CORPORATION

and

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO

relating to

$410,665,000

Puerto Rico Public Finance Corporation

2012 Series A Bonds (Commonwealth Appropriation Bonds)

issued under the Trust Agreement

dated as of June 1, 2004,

by and between Puerto Rico Public Finance Corporation

and U.S. Bank National Association, as Trustee

MIAMI/4278082.2

# LETTER OF CREDIT

## AND

## REIMBURSEMENT AGREEMENT

**THIS LETTER OF CREDIT AND REIMBURSEMENT AGREEMENT**, dated June 28, 2012, between **PUERTO RICO PUBLIC FINANCE CORPORATION** (the "Corporation"), a governmental instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico") and a wholly owned subsidiary of Government Development Bank for Puerto Rico, and **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), a corporation and governmental instrumentality of the Commonwealth;

**WHEREAS**, pursuant to the Acts (as hereinafter defined), the Commonwealth's Office of Management and Budget is required to include in the annual budget of the Commonwealth, the amount necessary to pay principal, interest and any additional payments of the debt obligations of the Authorized Debtors (as hereinafter defined) arising from the restructuring and/or refinancing of their respective advances, repayment commitments, obligations and/or loans, subject to limitations contained therein;

**WHEREAS**, the Bank has previously entered into certain Debt Restructuring and Assignment Agreements, as supplemented (collectively, the "Debt Restructuring and Assignment Agreements"), with the Authorized Debtors and the Corporation, providing for, among other things, the restructuring and/or refunding of their respective advances, repayment commitments, obligations and/or loans;

**WHEREAS**, the Authorized Debtors have issued promissory notes (collectively, the "Notes"), evidencing their respective obligations under the Debt Restructuring and Assignment Agreements and to secure bonds issued pursuant to that certain Trust Agreement dated as of June 1, 2004 (the "Trust Agreement"), by and between the Corporation and U.S. Bank National Association, as trustee (the "Trustee");

**WHEREAS**, the Corporation intends to issue its $410,665,000 aggregate principal amount of 2012 Series A Bonds (Commonwealth Appropriation Bonds) (the "2012 Series A Bonds") pursuant to the Trust Agreement for the purpose of providing funds to restructure and refund a portion of the Prior Bonds (as such term is defined in the Trust Agreement) and pay the costs of issuance of the 2012 Series A Bonds;

**WHEREAS**, the Corporation has requested that the Bank issue an irrevocable, transferable standby letter of credit (the "Letter of Credit") with respect to the 2012 Series A Bonds to the Trustee in order to cover any insufficiencies of moneys in the Sinking Fund (as defined in the Trust Agreement) to pay the principal of or interest on the 2012 Series A Bonds under certain specified circumstances; and

**WHEREAS**, the Bank is willing to issue the Letter of Credit on the terms and subject to the conditions set forth below;

**NOW, THEREFORE**, the parties hereto hereby agree as follows:

**SECTION 1.** **Definitions**. Unless otherwise defined herein or therein or the context otherwise requires, terms for which meanings are provided in this Agreement shall have such meanings when used in the Letter of Credit and in each notice and other communication delivered from time to time in connection with this Agreement. The following terms, as used herein, have the following meanings:

"**Acts**" means (i) Act No. 164 of the Legislature of Puerto Rico, approved December 17, 2001; (ii) Act No. 85 of the Legislature of Puerto Rico, approved June 13, 1998; (iii) Joint Resolution 523 of the Legislature of Puerto Rico, approved August 27, 2000; (iv) Act No. 113 of the Legislature of Puerto Rico, approved September 27, 1994; and (v) any other Act or Joint Resolution of the Legislature of Puerto Rico which authorizes the issuance of bonds by the Corporation which bonds are refunded in whole or in part with the proceeds of Bonds issued under the Trust Agreement.

"**Additional Payments**" means (A) any payments required to be made under any interest rate swap agreement; (B) termination payments under interest rate swap agreements or investment agreements; (C) required deposits to a debt service reserve fund; (D) redemption premiums; (E) trustee fees; (F) letter of credit fees; and (G) any other payment required to be made under a bond of the Corporation or the Trust Agreement.

"**Agreement**" means this Letter of Credit and Reimbursement Agreement, as amended, supplemented or otherwise modified from time to time.

"**Authorized Debtors**" means (i) the Department of Health of the Commonwealth of Puerto Rico, (ii) the Department of the Treasury of the Commonwealth of Puerto Rico, (iii) the Puerto Rico Infrastructure Financing Authority, (iv) the Puerto Rico Solid Waste Authority, (v) the Puerto Rico Aqueduct and Sewer Authority, (vi) the Puerto Rico Land Authority, (vii) the Puerto Rico Sugar Corporation, (viii) the Office for the Improvement of Public Schools, (ix) the Puerto Rico Maritime Shipping Authority, (x) the Housing Bank and Finance Agency of Puerto Rico and its successor in interest, the Puerto Rico Housing Finance Authority, (xi) the Hotel Development Corporation and (xii) any other debtor of the Corporation or the Bank for which the Corporation has issued Prior Bonds (as such term is defined in the Trust Agreement).

"**Authorized Officer**" means, with respect to the Corporation, those of its officers or representatives whose signatures and incumbency shall have been certified to the Bank pursuant to clause (a)(4) of Section 10 hereof.

"**Bank**" means Government Development Bank for Puerto Rico and its successors or assigns.

"**Board of Directors**" means either the board of directors of the Corporation or a duly authorized committee of that board.

"**Bond Issuance Date**" means June 28, 2012.

"**Business Day**" means any day other than a Saturday, Sunday or a day on which commercial banks located in The City of New York or San Juan, Puerto Rico are closed to the public.

"**Corporation**" means Puerto Rico Public Finance Corporation and its successors or assigns.

"**Credit Documents**" means this Agreement, the Letter of Credit and any other agreement or instrument relating thereto or otherwise executed and delivered by any party hereto in connection with the issuance of the Letter of Credit.

"**Default**" means any event or condition which, with the lapse of time or the giving of notice, or both, would constitute an Event of Default.

"**Dollars**" or "**$**" means the lawful currency of the United States of America.

"**Drawing**" means the disbursement of funds under the Letter of Credit.

"**Event of Default**" has the meaning ascribed thereto in Section 13 hereof.

"**Indemnified Liabilities**" has the meaning ascribed thereto in Section 18 hereof.

"**Indemnified Parties**" has the meaning ascribed thereto in Section 18 hereof.

"**Issuance Date**" means June 28, 2012.

"**Legislative Appropriation**" shall have the meaning ascribed thereto in the Trust Agreement.

"**Letter of Credit**" means the irrevocable, transferable standby letter of credit substantially in the form of Exhibit A hereto, issued by the Bank pursuant to Section 2 hereof, or any letter of credit issued by the Bank in replacement thereof, in each case as amended, supplemented, replaced or otherwise modified from time to time.

"**Material Adverse Effect**" means, relative to any event, occurrence or circumstance of any nature whatsoever (including any adverse determination in any litigation, arbitration, investigation, proceeding or labor controversy), a material adverse effect on:

      (a)    the financial condition, operations, assets, business or properties of the Corporation; or

      (b)    the validity or enforceability of this Agreement, the Letter of Credit or any other Related Document.

"**Maximum Difference**" means the maximum increase from one Fiscal Year to the next Fiscal Year in the aggregate debt service on the 2012 Series A Bonds.

"**Notes**" means, collectively, the notes issued by each of the Authorized Debtors, evidencing its obligations under its respective Debt Restructuring and Assignment Agreement and to secure bonds issued pursuant to the Trust Agreement.

"**Official Statement**" means the Official Statement relating to the 2012 Series A Bonds dated June 13, 2012 (including any documents incorporated therein by reference and any amendments, modifications or supplements thereto).

"**Participant**" means any entity to which the Bank or any Participant has granted a participation in the Letter of Credit.

"**Payment Date**" means each February 1 and August 1.

"**Person**" means any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated organization or government authority.

"**Related Document**" means the Credit Documents and the Trust Agreement, the 2012 Series A Bonds and any other agreement or instrument relating thereto or otherwise executed and delivered in connection with the issuance of the 2012 Series A Bonds.

"**Scheduled Termination Date**" means August 2, 2031.

"**Stated Amount**" means in any Fiscal Year, the Stated Amount for such Fiscal Year as set forth in Schedule A to the Letter of Credit.

"**Termination Date**" means 3:00 p.m. (Puerto Rico time) on the earliest of

      (a)    the Scheduled Termination Date,

      (b)    the date on which the Bank shall have received written notice from the Trustee that the principal amount of and interest on all 2012 Series A Bonds shall have been paid in full and there are no 2012 Series A Bonds outstanding,

      (c)    the date on which the Bank shall have received written notice from the Trustee that a successor letter of credit or alternate security has been substituted for the Letter of Credit in accordance with the Trust Agreement, and

      (d)    the date on which the Letter of Credit is surrendered to the Bank for cancellation.

"**Trust Agreement**" means that certain Trust Agreement dated as of June 1, 2004, by and between the Corporation and the Trustee, as the same may be amended from time to time.

"**Trustee**" means U.S. Bank National Association and any successor entity.

"**2012 Series A Bonds**" means the $410,665,000 aggregate principal amount of Puerto Rico Public Finance Corporation 2012 Series A Bonds (Commonwealth Appropriation Bonds).

"**Underwriter**" means UBS Financial Services Incorporated of Puerto Rico.

"**Unpaid Amount**" has the meaning ascribed thereto in Section 4 hereof.

**SECTION 2.**    **Issuance of the Letter of Credit**.  On the Bond Issuance Date, and subject to the terms and conditions of this Agreement, the Bank agrees to issue the Letter of Credit in a stated amount equal to the Stated Amount.  The Letter of Credit shall be effective upon issuance and shall expire on the Termination Date.

**SECTION 3.**    **Reimbursement on Demand**.

(a)    The Corporation shall pay to the Bank, subject to the provisions of Section 3(c) hereof,

(i)    immediately after a Drawing is made under the Letter of Credit, an amount equal to the amount of such Drawing;

(ii)    immediately upon notice from the Bank of the amount thereof, any and all charges and expenses, including reasonable transaction fees, incurred by the Bank in connection with the Drawing made under the Letter of Credit, and

(iii)    immediately upon notice from the Bank of the amount thereof, upon any transfer of the Letter of Credit in accordance with its terms, a sum in such amount as shall be necessary to cover the reasonable costs and expenses of the Bank incurred in connection with such transfer, and, where applicable, on demand, all interest accrued thereon pursuant to, and at the rates specified in, Section 4 hereof.

(b)    Whenever a payment is due to the Bank under this Agreement, the Corporation shall be deemed to have made such payment at the time such payment is received by or on behalf of the Bank, to the extent that the Trustee has made such payment to the Bank for the account of the Corporation.

(c)    Notwithstanding anything to the contrary provided in this Agreement, the Corporation's obligation to make any payments hereunder shall be limited to those funds received by the Corporation with respect to the Notes allocable to the 2012 Series A Bonds and remaining after making all deposits required to be made to the Trustee under the Trust Agreement.

**SECTION 4.**    **Interest**.  Any amount drawn under the Letter of Credit and any other amount due by the Corporation hereunder which is not repaid immediately to the Bank (collectively, any "Unpaid Amount") shall bear interest at an interest rate equal to eight percent (8%) per annum.  Such interest shall be payable on the date such Unpaid Amount shall be paid by the Corporation, or if earlier, upon demand by the Bank.

**SECTION 5.**    **Fees**.  The Corporation shall pay the Bank a non-refundable letter of credit fee with respect to the Letter of Credit equal to $ 94,874.41.  The fee shall be paid on the Bond Issuance Date.

**SECTION 6.     Evidence of Drawings**.  The Bank shall maintain, in accordance with its usual practices, an account or accounts evidencing each Drawing under the Letter of Credit. In any legal action or proceeding, such accounts shall, in the absence of manifest error, be conclusive evidence of the existence and amounts of the obligations of the Corporation therein recorded.  Notwithstanding the foregoing, the failure of the Bank to maintain such account or accounts or any error in maintaining such accounts shall not affect the obligations of the Corporation hereunder.

**SECTION 7.     Payment and Computations**.  All payments by the Corporation to the Bank hereunder shall be made in lawful currency of the United States, without set-off, deduction or counterclaim, not later than 3:00 p.m. (Puerto Rico time) on the date due, in same day or immediately available funds, to such account as the Bank shall specify from time to time by notice to the Corporation.  Funds received after that time shall be deemed to have been received by the Bank on the next following Business Day.  All interest and fees shall be computed on the basis of the actual number of days (including the first day but excluding the last day) occurring during the period for which such interest is payable over a year comprised of 360 days. Whenever any payment hereunder shall be due on a day which is not a Business Day, the date for payment thereof shall be extended to the next succeeding Business Day, and any interest payable thereon shall be payable for such extended time at the applicable rate.

**SECTION 8.     Reduction and Reinstatement of Stated Amount**.     The Stated Amount shall be reduced or reinstated, as set forth in the Letter of Credit.

**SECTION 9.     Obligations Absolute**.  The obligations of the Corporation under this Agreement shall be absolute, unconditional and irrevocable, and shall be performed strictly in accordance with the terms hereof and thereof, under all circumstances whatsoever, including the following:

  (a)     any lack of validity or enforceability of the Related Documents;

  (b)     any amendment or waiver of or any consent to departure from the Related Documents;

  (c)     the existence of any claim, set-off, defense or other rights which the Corporation or any other Person may have at any time against the Trustee, the Underwriter, any beneficiary or any transferee of the Letter of Credit (or any Person for whom the Trustee, any such beneficiary or any such transferee may be acting), the Bank (except as set forth in the provisos to clauses (f) and (g) of this Section), any Participant or any other Person, whether in connection with this Agreement, any other Related Document or any unrelated transaction; provided, however, that nothing in this Section shall prevent the assertion of any such claim, set-off, defense or other rights by separate suit or counterclaim;

  (d)     the existence of any claim, set-off, defense or other rights which the Corporation or any other Person may have at any time against the Bank in connection with any unrelated transaction;

(e)     any statement or any other document presented under the Letter of Credit proving to be forged, fraudulent or invalid or insufficient in any respect or any statement therein being untrue or inaccurate in any respect whatsoever;

(f)     payment by the Bank under the Letter of Credit against presentation of a certificate which does not comply with the terms of the Letter of Credit if such payment shall not have constituted gross negligence or willful misconduct of the Bank; and

(g)     any other circumstance or happening whatsoever, whether or not similar to any of the foregoing if such circumstance or happening shall not have constituted gross negligence or willful misconduct of the Bank.

**SECTION 10.     Conditions Precedent to Issuance of Letter of Credit**.     The obligation of the Bank to issue the Letter of Credit shall be subject to the fulfillment of each of the following conditions precedent to the satisfaction of the Bank:

(a)     The Bank shall have received the following, each dated as of the Issuance Date and in form and substance satisfactory to the Bank:

(1)     an opinion of General Counsel to the Corporation, substantially in the form of Exhibit B hereto;

(2)     an opinion of General Counsel to the Bank, substantially in the form of Exhibit C hereto;

(3)     copies of resolutions of the Board of Directors authorizing the execution, delivery and performance by the Corporation of this Agreement and all other agreements, documents, certificates and notices executed by the Corporation in connection with the transactions contemplated herein, certified by the Secretary or an Assistant Secretary of the Corporation (which Certificate shall state that such resolutions are in full force and effect as of a date acceptable to the Bank);

(4)     a certificate of the Secretary or an Assistant Secretary of the Corporation certifying the names and true signatures of the officers or representatives of the Corporation authorized to sign this Agreement and all other agreements, documents, certificates and notices executed by the Corporation in connection with the transactions contemplated herein (upon which certificate the Bank may conclusively rely until it shall have received a further certificate of a Secretary or Assistant Secretary of the Corporation canceling or amending such prior certificate);

(5)     a certificate of the Trustee as to the authority, incumbency and specimen signatures of officers of the Trustee authorized to execute and present certificates under the Letter of Credit and to otherwise communicate with the Bank regarding the Letter of Credit (upon which certificate the Bank may conclusively rely until it shall have received a further certificate of the Trustee canceling or amending such prior certificate);

(6) an original executed counterpart of this Agreement and executed originals or photocopies of each other Related Document, each of which shall be in form and substance satisfactory to the Bank; and

(7) copies of the Official Statement and such other documents, instruments, approvals (and, if requested by the Bank, certified duplicates of executed copies thereof) and all other closing documents and opinions relating to the 2012 Series A Bonds, as the Bank may reasonably request.

(b) On the Issuance Date, the Corporation shall have executed and issued the 2012 Series A Bonds and the Trustee shall have authenticated and delivered such 2012 Series A Bonds to or upon the order of the Underwriter.

(c) The following statements shall be true and correct on the Issuance Date and the Bank shall have received a certificate signed by an Authorized Officer of the Corporation, dated the Issuance Date, stating that:

(1) the representations and warranties contained in Section 11 of this Agreement shall be true and correct in all material respects on and as of the Issuance Date as though made on such date;

(2) no Default or Event of Default shall have occurred and be continuing, or would result from the issuance of the Letter of Credit or the execution and delivery of any other Related Document;

(3) the Corporation shall have duly adopted resolutions authorizing the execution, delivery and performance by the Corporation of the 2012 Series A Bonds and each of the Related Documents to which the Corporation is a party;

(4) the Trust Agreement shall be in full force and effect (assuming the due execution and delivery thereof by the Trustee); and

(5) the Corporation shall have duly authorized, executed and delivered the 2012 Series A Bonds to the Trustee for authentication and delivery pursuant to the Trust Agreement.

(d) The Trust Agreement shall be in full force and effect as of the Issuance Date, and the Bank shall have received a certificate signed by a duly authorized officer of the Trustee, dated the Issuance Date, to that effect; and

(e) The Bank shall have received payment of all fees, costs and expenses due and payable to it pursuant to Sections 5 and 22 hereof, including reasonable fees and disbursements of counsel to the Bank, if then invoiced.

**SECTION 11. Representations and Warranties**. The Corporation represents and warrants to the Bank on the date hereof, on the Issuance Date and on the date that a Drawing is made under the Letter of Credit:

(a)     Corporate Existence.   The Corporation is a public corporation and a governmental instrumentality of the Commonwealth, duly organized and validly existing under the laws of the Commonwealth.

(b)     Corporate Authorization.   The Corporation has all requisite corporate power and authority to execute, deliver and perform this Agreement and each other Related Document to which it is a party.   The Corporation has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement and each other Related Document to which it is a party.

(c)     Binding Effect.   This Agreement has been duly executed and delivered by the Corporation and is a legally valid and binding obligation of the Corporation, enforceable against the Corporation in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws or equitable principles relating to or limiting creditors' rights generally.

**SECTION 12.**   **Corporation Covenants**.  The Corporation agrees that during the term of this Agreement:

(a)     Reports, Notices, etc.   The Corporation will furnish, or will cause to be furnished, to the Bank copies of the following reports, notices and information:

(1)     as soon as possible and in any event within 15 days after the occurrence of each Default or Event of Default, a statement of an Authorized Officer of the Corporation setting forth details of such Default or Event of Default;

(2)     promptly upon receipt thereof, copies of all notices of default received or given by the Corporation which relate to the 2012 Series A Bonds or the Trust Agreement and, from time to time upon request by the Bank, such information and reports regarding the Trust Agreement or the 2012 Series A Bonds as the Bank may reasonably request;

(3)     promptly after the amendment of, waiver to, or any other modification of, any Related Document, a copy of such amendment, waiver or modification; and

(4)     such other information respecting the condition or operations, financial or otherwise, of the Corporation as the Bank may from time to time reasonably request.

(b)     Amendments, etc.   The Corporation will not amend or otherwise permit to occur any amendment, modification or waiver of any of the terms of the 2012 Series A Bonds or any other Related Document which could increase the obligations of the Bank under the Letter of Credit or adversely affect the rights of the Bank without the prior written consent of the Bank.

(c)    <u>Compliance with Laws, etc.</u>  The Corporation will comply with (i) all applicable laws, rules, regulations and orders (including, without limitation, the maintenance and preservation of its corporate existence) except where such non compliance would not have any Material Adverse Effect and (ii) all other laws, rules, regulations and orders, promptly upon discovery of any noncompliance, except where such noncompliance would not have any Material Adverse Effect.

**SECTION 13.**    **<u>Events of Default</u>**.  The following events shall be "Events of Default" hereunder:

(a)    the Corporation

(i)    shall fail to pay any amount payable under clause (a) of Section 3 hereof when and as due and such failure shall continue for five days, or

(ii)    shall fail to pay any other amount due hereunder when and as due and such failure shall continue for ten days following written notice thereof from the Bank;

(b)    except as set forth in clause (a) of this Section, the Corporation shall default in the observance or performance of any other covenant or agreement under this Agreement and such default shall remain unremedied for 15 days (or in the event that such default shall be capable of being remedied and the Corporation shall have commenced within such 15 day period all such action as is required to remedy such default, 30 days) following written notice thereof from the Bank;

(c)    any representation, warranty, certificate or statement made by the Corporation in this Agreement or in any certificate, financial statement or other document delivered pursuant hereto shall prove to have been incorrect in any material respect when made or deemed made;

(d)    (i)    the Corporation shall become insolvent or generally fail to pay, or admit in writing its inability or unwillingness to pay, its debts as they become due,

(ii)    the Corporation shall apply for, consent to, or acquiesce in, the appointment of a trustee, receiver, sequestrator, rehabilitator, liquidator, conservator or other custodian (or similar official) for the Corporation or all or substantially all of its assets, or make a general assignment for the benefit of creditors,

(iii)    in the absence of such application, a trustee, receiver, sequestrator, rehabilitator, liquidator, conservator or other custodian (or similar official) shall have been appointed for the Corporation or all or substantially all of its assets,

(iv)    the Corporation shall permit or suffer to exist the commencement of any bankruptcy, reorganization, debt arrangement or other case or proceeding under any bankruptcy or insolvency law, or any dissolution, winding up or liquidation proceedings in respect of the Corporation, and, if any such case or

proceeding is not commenced by the Corporation, such case or proceeding shall be consented to or acquiesced in by the Corporation or shall result in the entry of an order for relief which shall remain for 60 days undismissed, or

(v)     the Corporation shall take any corporate action authorizing, or in furtherance of, any of the foregoing.

If any Event of Default occurs and is continuing, the Bank may pursue, in its sole discretion, all remedies available to it against the Corporation or the Corporation's property at law, by contract, in equity or otherwise.

**SECTION 14.     Amendments and Waivers**.     No amendment or waiver of any provision of this Agreement or consent to any departure by the Corporation therefrom shall in any event be effective unless the same shall be in writing and signed by the Bank, and in the case of an amendment to Sections 3(c) or 12(b) hereof, signed by the Trustee. Any such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**SECTION 15.     Notices**.     All notices, requests and other communications to any party hereunder shall be in writing (including bank wire, telecopier or similar writing) and shall be given to such party at its address or telecopier number set forth below or such other address or telecopier number as such party may hereafter specify by notice to the other party.  Each such notice, request or other communication shall be effective upon receipt.

To the Corporation:

Puerto Rico Public Finance Corporation
Roberto Sánchez Vilella Government Center
De Diego Avenue, Stop 22
Santurce, Puerto Rico 00907
Attention:  President
Telephone:  (787) 722-8460
Telecopier:  (787) 721-1443

To the Bank:

Government Development Bank for Puerto Rico
Roberto Sánchez Vilella Government Center
De Diego Avenue, Stop 22
Santurce, Puerto Rico 00907
Attention:  President
Telephone:  (787) 722-3760
Telecopier:  (787) 721-1443

**SECTION 16.     No Waiver; Remedies Cumulative**.     No failure on the part of the Bank to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or

further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law or otherwise.

**SECTION 17. Right of Set-Off; Waiver**. Upon the occurrence and during the continuance of any Event of Default, the Bank is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Bank to or for the credit or the account of the Corporation against any and all of the obligations of the Corporation now or hereafter existing under this Agreement.

**SECTION 18. Indemnification**. In consideration of the execution and delivery of this Agreement by the Bank and to the extent permitted by law, the Corporation hereby indemnifies, exonerates and holds the Bank and each of its officers, directors, employees and agents (collectively, the "Indemnified Parties") free and harmless from and against any and all actions, causes of action, suits, losses, costs, liabilities and damages, and expenses incurred in connection therewith (irrespective of whether any such Indemnified Party is a party to the action for which indemnification hereunder is sought), including reasonable attorneys, fees and disbursements (collectively, the "Indemnified Liabilities"), incurred by the Indemnified Parties or any of them as a result of, or arising out of, or relating to:

   (a) this Agreement or the Letter of Credit (including any action brought by or on behalf of the Corporation as the result of any determination by the Bank not to fund a request for a Drawing under the Letter of Credit);

   (b) any untrue statement or alleged untrue statement of any material fact contained or incorporated by reference in the Official Statement, or in any amendment, modification or Supplement thereto, or any omission or any alleged omission to state therein a material fact necessary to make such statements, in the light of the circumstances under which they are or were made, not misleading; or

   (c) any Related Document or any transaction contemplated thereby;

except for any such Indemnified Liabilities arising for the account of a particular Indemnified Party by reason of the relevant Indemnified Parties' gross negligence or willful misconduct, and if and to the extent that the foregoing undertaking may be unenforceable for any reason, the Corporation hereby agrees to make the maximum contribution to the payment satisfaction of each of the Indemnified Liabilities which is permissible under applicable law.

**SECTION 19. Survival**. The obligations of the Corporation under this Agreement shall continue until the latest of (i) the Termination Date, and (ii) the date upon which all amounts due or to become due to the Bank hereunder shall have been paid in full; provided, however, that the obligations of the Corporation pursuant to Sections 18 and 22 hereof shall survive the termination of this Agreement.

**SECTION 20. Transfer of the Letter of Credit**. The Letter of Credit may be transferred from time to time without the consent of the Bank in accordance with the provisions set forth therein.

**SECTION 21.   Limited Liability of the Bank**.  The Corporation assumes all risks of the acts or omissions of the Trustee and any beneficiary or any transferee of the Letter of Credit with respect to its use of the Letter of Credit.  Neither the Bank nor any of its officers or directors shall be liable or responsible for (a) the use which may be made of the Letter of Credit or for any acts or omissions of the Trustee and any beneficiary or transferee in connection therewith; (b) the validity or genuineness of any documents, or of any endorsement(s) thereon, even if such documents should in fact prove to be in any or all respects invalid, fraudulent or forged; or (c) any other circumstances whatsoever in making or failing to make payment under the Letter of Credit, except only that the Corporation shall have a claim against the Bank, and the Bank shall be liable to the Corporation, to the extent, but only to the extent, of any direct, as opposed to consequential, damages suffered by the Corporation which the Corporation proves were caused by (i) the Bank's willful misconduct or gross negligence in determining whether documents presented under the Letter of Credit comply with the terms hereof or (ii) the Bank's grossly negligent or willful failure to pay under the Letter of Credit after the presentation to it by the Trustee (or a successor under the Trust Agreement to whom the Letter of Credit has been transferred in accordance with its terms) of a certificate strictly complying with the terms and conditions of the Letter of Credit.

**SECTION 22.   Costs and Expenses**.  The Corporation agrees to pay on demand all reasonable out-of-pocket expenses of the Bank, including reasonable fees and disbursements of counsel, in connection with (i) the preparation of this Agreement and the Letter of Credit and otherwise in connection with the issuance of the 2012 Series A Bonds and the preparation, review, execution and delivery of any other Related Documents, (ii) any amendments, modifications, extensions, supplements, consents or waivers hereto or thereto, and (iii) the administration (except in the case of such administration constituting gross negligence or willful misconduct on the part of the Bank) or enforcement of this Agreement, the Letter of Credit and any other Related Documents and/or other documents which may be delivered in connection herewith or therewith.

**SECTION 23.   Severability**.  Any provision of this Agreement which is prohibited, unenforceable or not authorized shall be ineffective to the extent of such prohibition, unenforceability or non-authorization without invalidating the remaining provisions hereof.

**SECTION 24.   Assignments and Participation.**

(a)    This Agreement shall be binding upon the Corporation and its successors and assigns and inure to the benefit of and be enforceable by the Bank and its successors, transferees and assigns; provided, however, that (i) the Corporation may not assign all or any part of its rights or obligations under this Agreement without the prior written consent of the Bank, and (ii) the Bank may not assign all or any part of its rights or obligations under this Agreement without the prior written consent of the Corporation (which consent in either case shall not be unreasonably withheld).

(b)    The Bank may at any time sell or grant participations to any Participant in all or any part of, or any interest (undivided or divided) in, the Bank's rights and benefits under this Agreement, in which event the Participant shall not have any rights hereunder (the Participant's rights against the Bank to be as set forth in the agreement executed by

the Bank in favor of the Participant), and all amounts payable by the Corporation hereunder shall be determined as if the Bank had not sold or granted any participation.

**SECTION 25.**   **Governing Law**.  This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth.

**SECTION 26.**   **Headings and Table of Contents**.  Section headings and the Table of Contents in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

**SECTION 27.**   **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which, taken together, shall constitute one and the same agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as the date first written above.

**PUERTO RICO PUBLIC FINANCE CORPORATION**

By: _____
      Ignacio Canto
      Executive Vice President

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO**

By: _____
      Juan Carlos Batlle
      President

**EXHIBIT A**

**LETTER OF CREDIT**

June 28, 2012

U.S. Bank National Association, as Trustee
100 Wall Street, Suite 1600
New York, New York 10005

Attention:  Corporate Trust Department

Ladies and Gentlemen:

     1.    <u>Establishment and Term of Letter of Credit</u>.  Government Development Bank for Puerto Rico (the "Bank") hereby establishes, at the request of and for the account of Puerto Rico Public Finance Corporation (the "Corporation"), this irrevocable, transferable standby letter of credit (this "Letter of Credit") in an amount for each Fiscal Year (as defined in the Trust Agreement) equal to the Stated Amount for such Fiscal Year set forth in Schedule A (as reduced and reinstated from time to time as set forth herein) in favor of U.S. Bank National Association, as trustee (together with its transferees, the "Trustee") under that certain Trust Agreement dated as of June 1, 2004 (the "Trust Agreement"), by and between the Corporation and the Trustee, exclusively for the benefit of the holders of the Corporation's $410,665,000 aggregate principal amount of 2012 Series A Bonds (Commonwealth Appropriation Bonds) (the "2012 Series A Bonds") under and pursuant to the provisions of the Trust Agreement.  This Letter of Credit is effective immediately and shall expire at 3:00 p.m. (Puerto Rico time) on the earliest of

        (a)    August 2, 2031 (the "Scheduled Termination Date"),

        (b)    the date on which the Bank shall have received written notice from the Trustee that the principal amount of and interest on all 2012 Series A Bonds shall have been paid in full and there are no 2012 Series A Bonds outstanding,

        (c)    the date on which the Bank shall have received written notice from the Trustee that a successor letter of credit or alternate security has been substituted for this Letter of Credit in accordance with the Trust Agreement (such earliest date, the "Termination Date"), and

        (d)    the date on which this Letter of Credit is surrendered to the Bank for cancellation.

     By the Trustee's acceptance of this Letter of Credit, the Trustee agrees, promptly upon the occurrence of the Termination Date, to surrender this Letter of Credit to the Bank for cancellation, together with a certificate in the form of Exhibit 1 hereto, appropriately completed.

                       

2.      _Drawing_.  Subject to the terms and conditions set forth herein, the Bank hereby irrevocably authorizes the Trustee to draw on the Bank on or before the Termination Date, by means of a duly signed and completed certificate in the form of Exhibit 2 hereto (the "Drawing Certificate"), an aggregate amount not to exceed in any Fiscal Year the Stated Amount for such Fiscal Year as set forth in Schedule A hereto (the "Stated Amount") if (i) the Trustee has not received by the close of business on the third Business Day preceding August 1 of any Fiscal Year (as defined in the Trust Agreement) during the term of the 2012 Series A Bonds written notice signed by the President or any Executive Vice President of the Corporation that an operating budget for the Commonwealth of Puerto Rico for such Fiscal Year has been duly adopted by the Legislature of Puerto Rico and approved by the Governor of Puerto Rico and is then in effect, and (ii) the Trustee has not otherwise received funds representing the full amount of the principal and interest due with respect to the 2012 Series A Bonds for the Bond Year (as defined in the Trust Agreement) commencing within such Fiscal Year.  The delivery of such Drawing Certificate hereunder which is honored by the Bank is referred to herein as a "Drawing."  Upon the payment to the Trustee or the Trustee's account of the amount specified in a Drawing hereunder, the Bank shall be fully discharged of the Bank's obligation under this Letter of Credit with respect to such Drawing, and the Bank shall not be obligated thereafter to make any further payments under this Letter of Credit in respect of such Drawing to the Trustee or to any other person who may have made to the Trustee or who makes to the Trustee a demand for payment under the 2012 Series A Bonds.

3.      _Reduction of Stated Amount_.  Immediately upon each Drawing, the Stated Amount and the amount available to be drawn hereunder by the Trustee shall be automatically reduced by an amount equal to the amount of such Drawing.  The Stated Amount and the amount available to be drawn hereunder may be reinstated from time to time in accordance with Section 4 hereof.

4.      _Reinstatement of Stated Amount_.  The Stated Amount and the amount available to be drawn hereunder shall be automatically reinstated to the Stated Amount prior to any Drawing immediately upon receipt by the Bank of full reimbursement of all amounts due to it in respect of such prior Drawing under the Letter of Credit and Reimbursement Agreement dated June 28, 2012, between the Bank and the Corporation (the "Agreement").  Promptly upon such reinstatement, the Bank shall provide the Trustee with notice of such reinstatement in the form of Exhibit 3.

5.      _Presentation of Drawing Certificate_.  Funds under the Letter of Credit are available to the Trustee in one or more Drawings.  The Drawing Certificate called for herein shall be dated the date of presentation and presented to the Bank at its office located at Roberto Sánchez Vilella Government Center, De Diego Avenue, Stop 22, Santurce, Puerto Rico 00907, Attention:  Capital Markets Department, or at any other office which may be designated by the Bank by written notice delivered to the Trustee (the Bank's "Office").  Demand for payment hereunder may be made by telecopy, to be promptly followed by delivery of a signed original thereof (and such telecopy shall be effective upon receipt thereof by the Bank at its Office).  If the Bank receives the Trustee's Drawing Certificate at its Office, all in strict conformity with the terms and conditions of this Letter of Credit, at or prior to 11:00 a.m. (Puerto Rico time) on a Business Day on or prior to the Termination Date, the Bank will honor the same not later than 5:00 p.m. (Puerto Rico time) on the same Business Day in accordance with the Trustee's

payment instructions. If the Bank receives the Trustee's Drawing Certificate, all in strict conformity with the terms and conditions of this Letter of Credit, after 11:00 a.m. (Puerto Rico time) but not later than 1:30 p.m. (Puerto Rico time) on a Business Day on or prior to the Termination Date, the Bank shall honor the same not later than 11:00 a.m. (Puerto Rico time) on the next succeeding Business Day or such later time and/or later Business Day as the Trustee may specify in its demand. If the Bank receives the Trustee's Drawing Certificate, all in strict conformity with the terms and conditions of this Letter of Credit, after 1:30 p.m. (Puerto Rico time) on a Business Day on or prior to the Termination Date (but prior to 3:00 p.m. (Puerto Rico time) on the Termination Date), the Bank shall honor the same not later than 5:00 p.m. (Puerto Rico time) on the next succeeding Business Day or such later time and/or later Business Day as the Trustee may specify in its demand.

6.    Telephonic Confirmation.   In addition to the requirements set forth in Section 5 hereof, the Trustee agrees to use its best efforts to give telephonic notice with respect to its demand for the Drawing no later than the time specified for the delivery of the relevant notice, but any failure to give or any delay in giving such telephonic notice shall not affect the validity of the demand for the Drawing. All telephonic notices to the Bank shall be made to the Bank's Capital Markets Department at (787) 722-4170, and all telecopier communications to the Bank shall be made to the Bank's Capital Markets Department at (787) 728-6835 (or any other telephone or telecopy numbers which may be designated by the Bank by written notice delivered to the Trustee).

7.    Payment Instructions. At the request of the Trustee, payment under this Letter of Credit shall be made in immediately available funds by federal funds wire transfer to, or by deposit into, such account and for further credit to such person, as the Trustee may specify to the Bank in writing.

8.    Definitions.   As used herein, "Business Day" means any day other than a Saturday, Sunday, or a day on which commercial banks located in New York City or San Juan, Puerto Rico are closed to the public.

9.    Transfer of Letter of Credit.  This Letter of Credit is transferable in its entirety (but not in part) to any transferee who has succeeded the Trustee as trustee under the Trust Agreement and may be successively so transferred. Transfer of the available balance under this Letter of Credit to such transferee shall be effective by the presentation to the Bank of this Letter of Credit accompanied by a certificate substantially in form of Exhibit 4 hereto. Only the Trustee or a transferee under this Section may make a Drawing under this Letter of Credit.

10.    Payments from Bank Funds. All payments made by the Bank hereunder shall be made from the Bank's own funds.

11.    Extent of Bank's Undertaking. This Letter of Credit sets forth in full the Bank's undertaking, and such undertaking shall not in any way be modified, amended, amplified or limited by reference to any document, instrument or agreement referred to herein (including, without limitation, the 2012 Series A Bonds and the Trust Agreement), except only the certificates referred to herein; and any such reference shall not be deemed to incorporate herein by reference any document, instrument or agreement, except for such certificates.

12.     <u>Governing Law</u>.  This Letter of Credit is issued under and governed by the International Standby Practices (1998) (Publication 590), except to the extent otherwise specifically set forth herein or therein (the "ISP 98").  This Letter of Credit shall be deemed to be a contract made under the laws of the Commonwealth of Puerto Rico and shall, as to matters not governed by the ISP 98, be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico.

Very truly yours,

**GOVERNMENT DEVELOPMENT BANK
FOR PUERTO RICO**

By: _____
         Name:
         Title:

By: _____
         Name:
         Title:

**EXHIBIT 1**
**to the Letter of Credit**

**CERTIFICATE OF CANCELLATION**
**relating to**
**LETTER OF CREDIT**
**EXHIBIT 1 TO THE LETTER OF CREDIT**
**PUERTO RICO PUBLIC FINANCE CORPORATION**
**2012 Series A Bonds (Commonwealth Appropriation Bonds)**
**Issued under the Trust Agreement**
**dated as of June 1, 2004, by and between**
**Puerto Rico Public Finance Corporation**
**and U.S. Bank National Association, as trustee**

The undersigned, a duly authorized signatory of U.S. Bank National Association, as trustee (the "Trustee"), hereby certifies to Government Development Bank for Puerto Rico (the "Bank"), with reference to its irrevocable, transferable standby letter of credit (the "Letter of Credit"; any capitalized term used herein and not defined shall have its respective meaning as set forth in the Letter of Credit) issued by the Bank in favor of the Trustee, that:

      (i)     The Trustee is the Trustee under the Trust Agreement.

      (ii)     The Trustee hereby confirms to the Bank that the Termination Date has occurred, and that the Letter of Credit is no longer to be maintained pursuant to the Trust Agreement or an alternate security or successor letter of credit has been provided in accordance with the Trust Agreement.

      (iii)     The Letter of Credit is attached hereto and is being surrendered to the Bank herewith.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Certificate as of _____, 20__.

               **U.S. BANK NATIONAL ASSOCIATION,**
               As Trustee

By: _____
       Name:
       Title:

**EXHIBIT 2**
**to the Letter of Credit**

**DRAWING CERTIFICATE**
**relating to**
**LETTER OF CREDIT**
**EXHIBIT 2 TO THE LETTER OF CREDIT**
**PUERTO RICO PUBLIC FINANCE CORPORATION**
**2012 Series A Bonds (Commonwealth Appropriation Bonds)**
**Issued under the Trust Agreement**
**dated as of June 1, 2004, by and between**
**Puerto Rico Public Finance Corporation**
**and U.S. Bank National Association, as trustee**

The undersigned, a duly authorized signatory of U.S. Bank National Association, as trustee (the "Trustee"), hereby certifies to Government Development Bank for Puerto Rico (the "Bank"), with reference to its irrevocable, transferable standby letter of credit (the "Letter of Credit"; any capitalized term used herein and not defined shall have its respective meaning as set forth in the Letter of Credit) issued by the Bank in favor of the Trustee, that:

(i)     The Trustee is the Trustee under the Trust Agreement for the holders of the 2012 Series A Bonds.

(ii)    The 2012 Series A Bonds are entitled to the benefit of the Letter of Credit.

(iii)   The Trustee is making a Drawing under the Letter of Credit in the amount of $_____ to enable the Trustee to make the deposits required under Section 1301 of the Trust Agreement.

(iv)    The amount specified in clause (3) of the Certificate does not exceed the amount available to be drawn under the Letter of Credit for purposes of making the deposits required under Section 1301 of the Trust Agreement.

(v)     Payment is to be made in immediately available funds by [federal funds wire transfer to deposit into account number _____ with _____ for credit to] [_____ the Trustee].

IN WITNESS WHEREOF, the Trustee has executed and delivered this Certificate as of _____, 20__.

U.S. BANK NATIONAL ASSOCIATION,
As Trustee


By: _____
        Name:
        Title:


MIAMI/4278082.2                                    A-6

**EXHIBIT 3**
**to the Letter of Credit**

**CERTIFICATE OF REINSTATEMENT**
**relating to**
**LETTER OF CREDIT**
**EXHIBIT 3 TO THE LETTER OF CREDIT**
**PUERTO RICO PUBLIC FINANCE CORPORATION**
**2012 Series A Bonds (Commonwealth Appropriation Bonds)**
**Issued under the Trust Agreement**
**dated as of June 1, 2004, by and between**
**Puerto Rico Public Finance Corporation**
**and U.S. Bank National Association, as trustee**

The undersigned, a duly authorized signatory of Government Development Bank for Puerto Rico (the "Bank"), hereby notifies U.S. Bank National Association, as trustee (the "Trustee"), with reference to its irrevocable, transferable standby letter of credit (the "Letter of Credit"; any capitalized term used herein and not defined shall have its respective meaning as set forth in the Letter of Credit) issued by the Bank in favor of the Trustee, that:

(i) The Bank was fully reimbursed for all amounts due to it with respect to the amounts drawn under the Letter of Credit pursuant to the Drawing Certificate dated _____, 20__.

(ii) The Letter of Credit has been reinstated in the amount of such Drawing and the stated amount of the Letter of Credit is now $_____.

IN WITNESS WHEREOF, the Bank has executed and delivered this Certificate as of _____, 20__.

GOVERNMENT DEVELOPMENT BANK OF
PUERTO RICO

By: _____
     Name:
     Title:

**EXHIBIT 4**
**to the Letter of Credit**

**CERTIFICATE OF TRANSFER**
**relating to**
**LETTER OF CREDIT**
**EXHIBIT 4 TO THE LETTER OF CREDIT**
**PUERTO RICO PUBLIC FINANCE CORPORATION**
**2012 Series A Bonds (Commonwealth Appropriation Bonds)**
**Issued under the Trust Agreement**
**dated as of June 1, 2004, by and between**
**Puerto Rico Public Finance Corporation**
**and U.S. Bank National Association, as trustee**

The undersigned, a duly authorized signatory of U.S. Bank National Association, as trustee (the "Trustee"), hereby irrevocably instructs Government Development Bank for Puerto Rico (the "Bank"), with reference to its irrevocable, transferable standby letter of credit (the "Letter of Credit"; any capitalized term used herein and not defined shall have its respective meaning as set forth in the Letter of Credit) issued by the Bank in favor of the Trustee, to transfer all rights and duties of the Trustee under the Letter of Credit to

_____

(Name of Transferee)

_____

(Address

The transferee has succeeded the undersigned as Trustee under the Trust Agreement dated as of June 1, 2004, by and between Puerto Rico Public Finance Corporation and the Trustee.

The Letter of Credit is attached hereto and is being surrendered to the Bank herewith.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Certificate as of
_____, 20__.

U.S. BANK NATIONAL ASSOCIATION,
As Trustee

By: _____
Name:
Title:

Acknowledged:

(Name of Successor Trustee)

By: _____
Name:
Title:

**SCHEDULE A**
**to the Letter of Credit**

| Fiscal Year Ending June 30 | Stated Amount |
|---|---|
| 2012 | $         - |
| 2013 | - |
| 2014 | 1,668,240 |
| 2015 | 16,530,740 |
| 2016 | - |
| 2017 | 36,285,000 |
| 2018 | - |
| 2019 | - |
| 2020 | - |
| 2021 | 1,400 |
| 2022 | - |
| 2023 | 1,648 |
| 2024 | 422 |
| 2025 | 1,825 |
| 2026 | - |
| 2027 | 1,504,155 |
| 2028 | 1,510,580 |
| 2029 | - |
| 2030 | - |
| 2031 | - |
| 2032 | 48,310,000 |

A-10

**EXHIBIT B**

**FORM OF OPINION OF GENERAL COUNSEL TO THE CORPORATION**

An opinion, dated the Bond Issuance Date, of the General Counsel of the Corporation, substantially to the effect that:

(1)     the Corporation is duly constituted and validly existing, has the legal right and power and is authorized to enter into the Agreement and to consummate all transactions contemplated therein;

(2)     the Agreement has been duly authorized by all requisite corporate action on the part of the Corporation, has been duly executed and delivered by the Corporation and constitutes the legal, valid, and binding obligation of the Corporation, enforceable against the Corporation in accordance with its terms, except to the extent that enforceability thereof may be affected or limited by applicable bankruptcy, insolvency or other laws affecting the enforcement of creditors' rights generally from time to time in effect, and by general equitable principles (regardless of whether such enforceability is considered in a proceeding in equity or at law);

(3)     other than the approval of the Bank, no approval or other action by any governmental authority or agency of the Commonwealth of Puerto Rico is required in connection with the delivery and performance by the Corporation of the Agreement;

(4)     the execution, delivery and performance by the Corporation of the Agreement and compliance with the provisions thereof will not violate any provision of law, the by-laws of the Corporation, any applicable judgment, order or regulation of any court or of any public governmental agency or authority of the Commonwealth and will not in any material respect conflict with, or result in the breach of any of the provisions of, or constitute a default under, any indenture, mortgage, deed of trust or other agreement or instrument known to such counsel and to which the Corporation is a party or by which it or its properties is bound;

(5)     such counsel is not aware of any action, suit, proceeding or investigation at law or in equity or before any Federal, Commonwealth or local government authority or agency, pending or, to the best of [his/her] knowledge, threatened, against or affecting the Corporation (i) to restrain or enjoin the execution, delivery or performance of the Agreement, (ii) in any way contesting or affecting any authority for or the validity or enforceability of the Agreement, or the execution, delivery or performance of the Agreement or (iii) in any way contesting the corporate existence or powers of the Corporation.

**EXHIBIT C**

**FORM OF OPINION OF COUNSEL TO THE BANK**

An opinion, dated the Bond Issuance Date, of the General Counsel of the Bank, substantially to the effect that:

(1)     the Bank has the legal right and power and is authorized to enter into the Agreement, to issue the Letter of Credit and to consummate all transactions contemplated by the resolution adopted by Government Development Bank on June __, 2012 authorizing the issuance of the Letter of Credit and the execution and delivery of the Agreement (the "Resolution");

(2)     the Agreement and the Letter of Credit have each been duly authorized by all requisite corporate action on the part of the Bank, have each been validly executed and delivered by the Bank, and assuming the due authorization, execution and delivery thereof by the other parties thereto, constitute legal, valid and binding obligations of the Bank enforceable against the Bank in accordance with their respective terms, except to the extent that enforceability thereof may be affected or limited by applicable bankruptcy, insolvency or other laws affecting the enforcement of creditors' rights generally from time to time in effect, and by general equitable principles (regardless of whether such enforceability is considered in a proceeding in equity or at law);

(3)     no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is required to be obtained by the Bank as a condition precedent to the issuance of the Letter of Credit or the execution, delivery and performance by the Bank of the Agreement.

(4)     the issuance and delivery of the Letter of Credit and the execution, delivery and performance by the Bank of the Agreement will not violate any provision of law or of the bylaws of the Bank, any applicable judgment, order or regulation of any court or of any public governmental agency or authority of the Commonwealth of Puerto Rico (the "Commonwealth") and will not conflict with, or result in the breach of any of the provisions of, or constitute a default under, any indenture, mortgage, deed of trust or other agreement or instrument known to such counsel and to which the Bank is a party or by which it or its properties is bound; and

(5)     such counsel is not aware of any action at law or in equity or before any Federal, Commonwealth or local government authority or agency, pending or, to the best of her knowledge, threatened, against or affecting the Bank, seeking to restrain or enjoin the issuance or delivery of the Letter of Credit, or questioning the validity or enforceability of the Agreement.