# U.S. BANK EXHIBIT S

Proof of Claim filed by U.S. Bank as

PRIFA Bonds Successor Trustee

dated May 18, 2018

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

Fill in this information to identify the case (Select only one Debtor per claim form). /
Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).

| | | | |
|---|---|---|---|
| ■ | Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ | Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ | Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ | Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ | Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

RECEIVED
MAY 18 2018
PRIME CLERK LLC


170328380004856

Debtor [DebtorName] has listed your claim in their Creditor List in Schedule [CreditorList] as a [CUD] claim in an $[ScheduleAmount] amount. You must timely file a proof of claim or be forever barred from participating or sharing in any distribution or being treated as a claim for purposes of voting or distribution.

El deudor [DebtorName] ha listado su reclamación en la lista de acreedores en el Schedule [CreditorList] como un reclamo [CUD] por un monto de $[ScheduleAmount]. Debe presentar una prueba de reclamación oportunamente o se le prohibira por siempre participar o compartir en cualquier distribución o ser tratado como un reclamo para fines de votación o distribución.

Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

Lea las instrucciones antes de completer este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Titulo III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Titulo 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Titulo 11 § 503 del U.S.C.

Quienes presenten la documentatión deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantias. **No adjunte documentos originales**, ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.
Complete toda la informatión acerca de la reclamación a la fecha en la que se presentó el caso.

☑ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☐ No Copy Provided

| Part 1 / Parte 1 | Identify the Claim / Identificar la relcamación |
|---|---|
| 1. Who is the current creditor?<br><br>¿Quién es el acreedor actual? | **U.S. Bank Trust National Association, as Trustee for the Puerto Rico Infrastructure Financing Authority ("PRIFA") Special Tax Revenue Bonds Series 2005A, 2005B, 2005C and Series 2006**<br>Name of the current creditor (the person or entity to be paid for this claim)<br>Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamción)<br><br>Other names the creditor used with the debtor<br>Otros nombres que el acreedor usó con el deudor _____ |

**Claim Number: 13386**

Proof of Claim                                                                                        page 1

| | | | |
|---|---|---|---|
| 2. | Has this claim been acquired from someone else?<br><br>¿Esta reclamación se ha adquirido de otra persona? | ■ No / No<br>☐ Yes. From whom? _____<br>Sí. ¿De quién? _____ | |

| | | | |
|---|---|---|---|
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>¿A dónde deberían enviarse las notificaciones al acreddor?<br><br>Norma federal del procedimiento de quiebra (FRBP por sus siglas en inglés) 2002(g | **Where should notices to the creditor be sent?**<br>**¿A dónde deberían enviarse las notificaciones al acreedor?**<br><br>Hogan Lovells US LLP, Attn.: Robin E. Keller, Esq.<br>Name / Nombre<br><br>875 Third Avenue<br>Number / Numero    Street / Calle<br><br>New York, NY 10022<br>City / Ciudad    State / Estado    ZIP Code / Código postal<br><br>(212) 918-3000<br>Contact phone / Teléfono de contacto<br><br>robin.keller@hoganlovells.com<br>Contact email / Correo electrónico de contacto | **Where should payments to the creditor be sent?**<br>(if different)<br>**¿A dónde deberían enviarse los pagos al acreedor?** (En caso de que sea diferente)<br><br>U.S. Bank Trust National Association,<br>Attn.: Justin Shearer<br>Name / Nombre<br><br>100 Wall Street, Suite 1600<br>Number / Numero    Street / Calle<br><br>New York, NY 10005<br>City / Ciudad    State / Estado    ZIP Code / Código postal<br><br>(212) 951-8529<br>Contact phone / Teléfono de contacto<br><br>justin.shearer@usbank.com<br>Contact email / Correo electrónico de contacto | |

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed?<br><br>¿Esta reclamación es una enmienda de otra presentada anteriomente? | ■ No / No<br>☐ Yes. Claim number on court claims registry (if known) _____<br>Sí. Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo) _____<br>Filed on / Presentada el _____ (MM /DD/YYYY) / (DD/MM/AAAA) |
| 5. | Do you know if anyone else has filed a proof of claim for this claim?<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ■ No / No<br>☐ Yes. Who made the earlier filing? _____<br>Sí. ¿Quién hizo la reclamación anterior? _____ |

| | | |
|---|---|---|
| **Part 2 / Parte 2:** | **Give Information About the Claim as of the Petition Date**<br>**Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.** | |
| 6. | Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ■ No / No<br>☐ Yes. Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí. Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/). |
| 7. | Do you supply goods and / or services to the government?<br><br>¿Proporciona bienes y / o servicios al gobierno? | ■ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017 $ _____ |

| | | | |
|---|---|---|---|
| 8. | How much is the claim?<br><br>¿Cuál es el importe de la reclamación? | See Attached Rider to Proof of Claim | **Does this amount include interest or other charges?**<br>¿Este importe incluye intereses u otros cargos?<br>❏ No / No<br>■ Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>    Sí.  Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |
| 9. | What is the basis of the claim?<br><br>¿Cuál es el fundamento de la reclamación? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>See attached Rider to Proof of Claim. | |
| 10. | Is all or part of the claim secured?<br><br>¿La reclamación está garantizada de manera total o parcial? | ❏ No / No<br>■ Yes.  The claim is secured by a lien on property.  **See attached Rider to Proof of Claim**.<br>    Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>**Nature of property / Naturaleza del bien:**<br>❏ Motor vehicle / Vehículos<br><br>❏ Other. Describe:<br>    Otro. Describir: _____<br><br>**Basis for perfection / Fundamento de la realización de pasos adicionales:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.<br><br>**Value of property / Valor del bien:** $_____<br><br>**Amount of the claim that is secured /**<br>Importe de la reclamación que está garantizado: $_____<br><br>**Amount of the claim that is unsecured /**<br>Importe de la reclamación que no está garantizado: $_____<br>(The sum of the secured and unsecured amounts should match the amount in line 7.)<br>(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>**Amount necessary to cure any default as of the Petition Date /**<br>Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso: $_____<br><br>**Annual Interest Rate** (on the Petition Date)<br>_Tasa de interés anual (cuando se presentó el caso) _____%<br>❏ Fixed / Fija<br>❏ Variable / Variable | |
| 11. | Is this claim based on a lease?<br><br>¿Esta reclamación está basada en un arrendamiento? | ■ No / No<br>❏ Yes.  Amount necessary to cure any default as of the Petition Date.<br>    Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso$ _____ | |

Modified Official Form 410        Proof of Claim        page 3

| | | | |
|---|---|---|---|
| 12. | Is this claim subject to a right of setoff?<br><br>¿La reclamación está sujeta a un derecho de compensación? | ■ No / No<br>☐ Yes. Identify the property /<br>   Sí. Identifique el bien:_____ | |
| 13. | Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?<br><br>¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.? | ■ No / No<br>☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.<br><br>Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. | $_____ |

### Part 3 / Parte 3:   Sign Below / Firmar a continuación

**The person completing this proof of claim must sign and date it.**
FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha.**
FRBP 9011(b).

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

Check the appropriate box / Marque la casilla correspondiente:

☐ I am the creditor. / Soy el acreedor.
■ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el   __05/07/2018__ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma _____

Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:

Name   __Justin Shearer__
       First name / Primer nombre      Middle name / Segundo nombre      Last name / Apellido

Title / Cargo   __Vice President__

Company / Compañía   __U.S. Bank Trust National Association, as Trustee__
Identify the corporate servicer as the company if the authorized agent is a servicer.
Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección   __100 Wall Street, Suite 1600__
Number / Número      Street / Calle

__New York__                                     __New York  10005__
City / Ciudad                                    State / Estado      ZIP Code / Código postal

Contact phone / Teléfono de contacto __(212) 951-8529__      Email / Correo electrónico __justin.shearer@usbank.com__

*In re* **The Financial Oversight and Management Board for Puerto Rico, as Representative of The Commonwealth of Puerto Rico,** *et al.*
**17 BK 3283-LTS**

\* \* \* \* \*

RIDER TO PROOF OF CLAIM FILED BY U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR THE PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY SPECIAL TAX REVENUE BONDS, SERIES 2005A, 2005B, 2005C AND SERIES 2006, AGAINST THE COMMONWEALTH OF PUERTO RICO

### I. INTRODUCTION

1. This rider to the Proof of Claim of U.S. Bank Trust National Association ("U.S. Bank" or the "Trustee"), which it files solely in its capacity as successor trustee and not individually, is incorporated into the Proof of Claim in its entirety as if fully set forth therein.

2. On May 3, 2017 (the "Petition Date"), the Commonwealth filed a petition for relief pursuant to Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, H.R. 5278 in the United States District Court for the District of Puerto Rico (the "Court"). The case is pending before the Honorable Laura Taylor Swain and is jointly administered under Case No. 17 BK 03283 (collectively, the "Title III Cases").

3. On February 15, 2018, the Court entered the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [Dkt. No. 2521] (the "Bar Date Order"), setting May 29, 2018 as the deadline to file Proofs of Claim in the Title III Cases.

4. U.S. Bank is the successor to Citibank, N.A. as Trustee for the Puerto Rico Infrastructure Financing Authority ("PRIFA") Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C and Series 2006 (collectively, the "PRIFA Rum Tax Bonds" or the "Bonds") issued under the Trust Agreement between PRIFA and Citibank, N.A., dated as of October 1, 1988, as amended

from time to time (the "Trust Agreement").[1] As of the Petition Date, $1,754,177,404.65 remained outstanding on the Bonds.[2]

## II. BASIS FOR CLAIM

5. Act No. 44-1988 of June 21, 1988, as amended, 3 L.P.R.A. §§ 1901 et seq. (the "PRIFA Enabling Act") authorized PRIFA to issue special tax revenue bonds secured by the first proceeds of taxes collected on Puerto Rican rum sales in the United States. *See* Arts. 7(k), (m), 18(a) and 25 of Act 44-1988, as amended, 3 L.P.R.A. §§ 1906(k), (m), 1907(a), and 1914. On September 18, 2015, the Trustee filed a UCC-1 financing statement against "all of [PRIFA's] present and future right, title and interest in and to the Pledged Revenues."

6. Upon information and belief, the rum tax proceeds collected and remitted to or on behalf of the Commonwealth of Puerto Rico (the "Commonwealth") both prior to and since the commencement of the Commonwealth's Title III case have exceeded the amounts needed to satisfy the annual commitment to pay the PRIFA Rum Tax Bonds. Yet, since late 2015, no rum tax proceeds have been deposited with the Trustee, and there are no funds on hand with the Trustee to pay debt service. PRIFA has failed to pay debt service obligations since that time, and the Trustee does not have funds on hand in reserve to make such payments. Bond insurers Ambac Assurance Corporation and Financial Guaranty Insurance Company have been making payments on certain insured bonds since as early as January 2016. There has been substantial litigation between the Bond Insurers, other creditors, and the Commonwealth over the rights of the Commonwealth to direct the pledged revenues to purposes other than payment of the PRIA

---

[1] Capitalized terms not otherwise defined have the meaning ascribed to them in the Trust Agreement. The Trust Agreement and all additional documents related to the bonds (collectively, the "Bond Documents") are in the possession of the Debtors, but can be provided to the Debtors upon request. The Bond Documents are expressly incorporated into this Proof of Claim by reference. The Bond Documents are voluminous and, pursuant to the terms of the Bar Date Order, the Trustee is not required to file the Bond Documents with this Proof of Claim. A non-exclusive list of material Bond Documents is attached hereto as Schedule 1.

[2] The Series 2005A and 2005C Bonds contain Capital Appreciation Bonds. The figure represented here includes amounts representing accreted value on the CAB portions as of 01/01/2017.

Rum Tax Bonds.[3] The Trustee files this partially unliquidated, protective proof of claim to preserve the rights of the holders of the PRIFA Rum Tax Bonds until a determination of the applicability of the statutes cited below is made.

### a. Pledge of Rum Tax Revenues and Clawback Provisions, Including Priority and Use.

7. PRIFA's rights under the PRIFA Enabling Act include the right to pledge certain revenues to the payment of certain special tax revenue bonds (*i.e.*, the PRIFA Rum Tax Bonds). *See, e.g.*, Arts. 7(k), (m) and Art. 18(a) of Act 44-1988, as amended, 3 L.P.R.A. §§ 1906(k), (m), 1907(a). Pursuant to the PRIFA Enabling Act, PRIFA issued the PRIFA Rum Tax Bonds, proceeds of which were in part used (i) to provide financial assistance to the Puerto Rico Aqueduct and Sewer Authority and other Commonwealth instrumentalities and municipalities in connection with certain capital projects; and (ii) for the acquisition, improvement and construction of sports and other facilities necessary for the 2010 XXI Central American and Caribbean Games. *See* Official Statement for PRIFA Special Tax Revenue Bonds, Series 2005A-C, p. 4; *see also* Official Statement for PRIFA Special Tax Revenue Bonds, Series 2006, p. 4.

8. Pursuant to the PRIFA Enabling Act and the Trust Agreement, a portion of the federal excise tax revenues derived from the sales of rum and other items produced in the Commonwealth and sold in the United States (the "<u>Pledged Rum Revenues</u>") were pledged to secure the PRIFA Rum Tax Bonds. As described more fully in the Trust Agreement, the PRIFA Rum Tax Bonds are payable solely from and are secured by the Pledged Rum Revenues, defined in the Trust Agreement as the "Special Tax Revenues" and any other moneys deposited to the credit of the Trustee's Sinking Fund. The Special Tax Revenues consist of $117 million of the

---

[3] *See, e.g., Ambac Assurance Corp. v. Rosselló Nevares*, No. 17-1568 (D.P.R. May 2, 2017); *Assured Guar. Corp. v. García-Padilla*, No. 16-1037 (D.P.R. Jan. 7, 2016); *Fin. Guar. Ins. Co. v. García-Padilla*, No. 16-1095 (D.P.R. 2016); *Altair Global Credit Opportunities Fund LLC v. Garcia-Padilla*, No. 16-02696 (D.P.R. 2016); *Assured Guar. Corp. v. Commonwealth of Puerto Rico*, No. 16-2384 (D.P.R. 2016).

3

first proceeds received by the Commonwealth of excise taxes imposed on rum and other articles produced in the Commonwealth and sold in the United States, *see* Art. 25 of Act 44-1988, as amended, 3 L.P.R.A. § 1914, which taxes are collected by the United States Treasury and returned to the Commonwealth.

### b. Commonwealth's Diversion of Pledged Revenues

9. The Commonwealth has asserted that it is entitled under the PRIFA Enabling Act and other provisions of Puerto Rican law, to "claw back" the revenues pledged to secure the rum tax bonds.[4] Every year since and including 2015, on information and belief, the Special Tax Revenues have exceeded by millions of dollars the amounts needed to pay the annual debt service on the Bonds. However, the Commonwealth has diverted the Special Tax Revenues beginning in 2015 without accounting for their need or use. The Commonwealth has not clearly established that it is entitled to claw back these pledged revenues under the relevant statutory provisions. Other than the generic assertion that "other resources available are insufficient for the payment of general obligation debt and guaranteed debt of the Commonwealth", a clear accounting of the need for and use of the Special Tax Revenues has not been made.

10. In addition, the Office of Management and Budget Act (the "OMB Act") sets out the appropriate uses of clawed back funds when the Commonwealth has insufficient funds to pay

---

[4] *PRIFA Pledged Rum Revenues Pledged to Payment of PRIFA Rum Bonds:*

> "[PRIFA] is hereby empowered to segregate a portion of said Funds into one (1) or more sub-accounts, **subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico[,]** for the payment of the principal and interest on bonds and other obligations of [PRIFA], or for the payment of bonds and other obligations issued by a benefited entity, or for any other legal purpose of [PRIFA].
>
> **The moneys of the Special Fund may be used for the payment of interest and for the amortization of the public debt of the Commonwealth, as provided in said Section 8, only when the other resources available referred to in said Section are insufficient for such purposes."**

Art. 25 of Act 44-1988, as amended, 3 L.P.R.A. § 1914 (emphasis added).

4

its obligations. *See* Art. 4(c) of Act 147 of June 18, 1980, as amended, 23 L.P.R.A. § 104(c). "[C]ommitments entered into by virtue of legal contracts in force, judgments of the courts in cases of condemnation under eminent domain, and binding obligations to safeguard the credit, reputation and good name of the Government of the Commonwealth of Puerto Rico" are entitled to second priority status behind only the payment of the public debt." *Id.* § 104(c)(1)-(2).

11. Thus, as set forth below, parties have argued that Bond Obligations which are obligations to safeguard the credit, reputation and good name of the Government of the Commonwealth of Puerto Rico appear to have clear priority over expenses related to government operations, pension obligations, construction of capital works or improvements, and contracts and commitments contracted under special appropriations. *See id.* § 104(c)(3)-(5). The Commonwealth has not adequately disclosed the uses of this clawed back revenue. While the revenues may theoretically be available to service general obligation and guaranteed debt, they do not appear to be available for the payment of the Commonwealth's general operating expenses, which are expressly subordinate under the Commonwealth's Constitution and the OMB Act to the payment of public corporations' validly issued bond debt.

12. In the PRIFA Enabling Act, the Commonwealth also covenanted that it would "not limit or alter the rights [conferred to PRIFA by the PRIFA Enabling Act] until such bonds and the interest thereon are paid in full." Art. 24 of Act 44-1988, as amended, 3 L.P.R.A. § 1913.

13. The Commonwealth is required to deposit the Special Tax Revenue remittances made by the United States Government in a specially designated Puerto Rico Infrastructure Fund. *See* Art. 25 of Act 44-1988, as amended, 3 L.P.R.A. § 1914. PRIFA is contractually obligated as promptly as practicable upon receipt of Special Tax Revenues to withdraw the

amounts required to make deposits into the Trustee's Sinking Fund, subject only to the proper exercise of clawback rights. *See* Trust Agreement, § 401.

### c. PRIFA Revenue Clawback Acts and Orders

14. On November 30, 2015, the Governor of the Commonwealth (the "Governor") issued Executive Order 2015-046. This executive order ordered the Secretary of the Treasury to "claw back" revenues pledged to PRIFA pursuant to the provision in the Commonwealth's Constitution permitting the Commonwealth to claw back funds if certain conditions were met (the "Clawback Provision"), but did not establish the pre-requisites for invoking the Clawback Provision. As a result of this diversion of funds, PRIFA defaulted on further payments on the PRIFA Rum Tax Bonds.

15. On April 6, 2016, the Commonwealth passed Act 21 of 2016, also known as the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act (the "Moratorium Act"). Sections 103 and 201 of the Moratorium Act purported to grant the Governor discretion to, among other things, declare an emergency, designate enumerated obligations, and unilaterally enact moratoriums on the payment of debt owed by the Commonwealth and its instrumentalities and to suspend the transfer of monies pledged to the repayment of those debts.

16. Starting on April 30, 2016, pursuant to the Moratorium Act, the Governor signed various executive orders to implement the claw back. On that date, he signed Executive Order 2016-014, by which he declared a state of emergency for PRIFA. On June 24, 2016, he signed Executive Order 2016-027, by which he suspended any obligations to transfer funds to PRIFA or by PRIFA, which included suspension of the obligation to transfer any income coming from the rum tax pursuant to Article 34 of Act 44-1988. On June 30, 2016, he signed Executive Order 2016-30, by which he suspended the payment of PRIFA bonds payable from the revenues of the

6

rum tax. Also on June 30, 2016, he signed Executive Order 2016-031 by which he suspended the Commonwealth's obligation to transfer revenues to PRIFA and further declared that any debt obligations of PRIFA are Covered Obligations under the Moratorium Act. Executive Orders 2015-046, 2016-014, 2016-027, 2016-030 and 2016-031 (collectively the "Executive Orders") implemented the Clawback Provision with respect to the Pledged Rum Revenues securing the PRIFA Rum Tax Bonds. Since that time, no further deposits of Pledged Rum Revenues have been made with the Trustee. The Commonwealth partially replaced the Moratorium Act on January 27, 2017 with Act 5 of 2017, also known as the Puerto Rico Financial Emergency and Fiscal Responsibility Act (together with the Moratorium Act, the "Moratorium Acts"), which extended many of the powers provided in the Moratorium Act. Further, on April 30, 2017, by Executive Order 2017-031, issued pursuant to Act 5-2017, the Governor extended the effectiveness of the Executive Orders until they are amended, rescinded or substituted. Since then and to this date the Executive Orders have not, to the best of the Trustee's knowledge, been amended, rescinded or substituted.

17. Pursuant to Section 401 of the Trust Agreement, "[a]s promptly as practicable upon the receipt of Special Tax Revenues or other moneys deposited to the credit of the Puerto Rico Infrastructure Fund, [PRIFA] shall withdraw an amount of such Special Tax Revenues and other moneys to make" deposits into the Sinking Fund. Prior to and subsequent to the Petition Date, $249,099,446.17 in payments have not been made by PRIFA in respect of principal and interest on the Bonds, as the Commonwealth and PRIFA have failed to deposit these amounts in the Trustee's Sinking Fund.

### d. Violations of Constitutional and Statutory Priority

18. Various beneficial holders of the Bonds have argued that the Executive Orders that implemented the Clawback Provision violate the priority scheme established by the Commonwealth's Constitution and the OMB Act, which, as discussed above, provide that the PRIFA Rum Tax revenues are entitled to be applied to general obligation debt or guaranteed debt, only if all other available resources of the Commonwealth are insufficient to pay those obligations, and that the Bonds are entitled to second priority status behind the Commonwealth's general obligation debt. In addition, it must be established that Commonwealth-guaranteed debt falls within the constitutional limits on such debt—another pre-requisite to the right to claw back the Special Tax Revenues, and various parties in interest in those proceedings have asserted that that is not the case.

19. The Moratorium Acts and the Executive Orders also may violate certain provisions of the United States Constitution. The Contracts Clause provides, in pertinent part, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const., art. I, § 10, cl. 1. The Moratorium Acts and the Executive Orders substantially impair the contractual rights of PRIFA Bondholders by (i) altering the debt priority provisions established by the OMB Act and the Commonwealth's Constitution, (ii) diverting pledged revenues in violation of the Trust Agreement, and (iii) continuing to claw back and retain pledged revenues.

20. In addition, the Moratorium Acts and the Executive Orders (i) may constitute violations of the Fifth and Fourteenth Amendments, to the extent they deprive Bondholders of their property rights in the pledged revenues without due process or just compensation, and (ii) may be invalid exercises of the legislature's police power (as delegated to the Governor), because the police power cannot override constitutional limitations. These issues have been

presented to the Court for determination in a variety of contexts, and these claims turn, in part, on the outcome of final court determinations.[5]

### e. Violations of PROMESA

21. The Moratorium Acts and the Executive Orders also may violate Section 407 of PROMESA, which provides that "[w]hile an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property." The clawback and allegedly improper use of the Pledged Rum Revenues has continued after the appointment of the Oversight Board (as defined in PROMESA) on August 31, 2016 in violation of Section 407 of PROMESA.

22. In addition, Section 303 of PROMESA provides in relevant part that:

> (1) a territory law prescribing a method of composition of indebtedness or a moratorium law, but solely to the extent that it prohibits the payment of principal or interest by an entity not described in section 109(b)(2) of title 11, United States Code, may not bind any creditor of a covered territory or any covered territorial instrumentality thereof that does not consent to the composition or moratorium;
> …
> (3) unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this Act.

---

[5] *See, e.g., Ambac Assurance Corporation v. Commonwealth of Puerto Rico et al.*, no. 17-01568 (D.P.R. May 2, 2017).

23. The Moratorium Acts and the Executive Orders may violate this section because they prohibit the payment of principal or interest by PRIFA, modify the rights of PRIFA Bondholders, and divert funds from PRIFA to other territorial instrumentalities.

24. Similarly, on or about April 28, 2017, the Commonwealth implemented the Fiscal Plan Compliance Act, Chapter 6 of which authorizes diversion of property from public corporations and instrumentalities of the Commonwealth, including PRIFA, to the Commonwealth's General Fund.

25. Thus, for all the reasons stated above, and on behalf of holders of the PRIFA Rum Tax Bonds, the Trustee respectfully submits this claim against the Commonwealth in the amount of all Pledged Rum Revenues that have been diverted and not used to pay the Bonds, in an amount not less than $249,099,446.17, which course of conduct continues.

26. In addition, the Trustee hereby asserts claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf, whether presently asserted or to be asserted, including without limitation claims for or based upon the breach or violation of the Trust Agreement or any covenants or other contractual obligations contained therein, or claims arising from the improper diversion of the Pledged Revenues or any other property securing the payment of the Bonds, as a matter of relevant state law or federal law, including without limitation constructive trust, fraudulent conveyance or

fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claim.

27. Certain Bonds have been insured by monoline insurers, who have paid past due principal and interest on certain Bonds from time to time. Any amounts paid by the insurers to the Trustee have been applied by the Trustee in accordance with applicable insurance policies and the Trust Agreement and do not reduce the amount owing under this claim. This claim includes the principal and interest owing on insured Bonds as of the Petition Date without regard to whether a bond insurer has paid amounts that were owed by PRIFA. The Trustee understands that certain of these insurers intend to file their own proofs of claim against the Commonwealth with respect to their rights under applicable insurance agreements and other documents. Any statements or positions of such insurers in their respective proofs of claim are made independent of the Trustee and shall not be attributable to or binding upon the Trustee.

28. Distributions made by the Commonwealth with respect to the Bonds must, to the extent required by the relevant Bond Documents, be made, in the first instance, to the Trustee for further distribution to Bondholders in accordance with the Trust Agreement. To the extent that the Bar Date Order permits Bondholders to file their own proofs of claim relating to their Bonds, the Trustee reserves all rights under the Trust Agreement and applicable law with respect to all such claims including, without limitation, duplicative claims or claims for damages against the Commonwealth relating to the purchase or sale of any Bonds.

### III. RESERVATION OF RIGHTS

29. The filing of this Proof of Claim is made under compulsion of the Bar Date Order and is expressly made without any election of rights and remedies.

30. By filing this Proof of Claim, the Trustee does not waive, release, or discharge any, and hereby expressly reserves all of its rights, including, without limitation, its remedies, powers, claims, counterclaims, interests, actions, defenses, and rights of subrogation, set-off and recoupment (whether contingent, unliquidated or otherwise) against the Commonwealth, its divisions, and all applicable property, in this or any other forum, which the Trustee had, has, or may have, under, or in connection with, the Trust Agreement, or applicable law.

31. The Trustee expressly makes claim hereby for all amounts due in respect of any pre-petition or post-petition fees and costs of the Trustee, including legal or other professional fees and expenses, and pre-petition and post-petition interest. This Proof of Claim is not intended to be, and shall not be construed as, a waiver of any past, present or future defaults under the Trust Agreement, or otherwise. The Trustee does not waive any rights by not stating specific amounts at this time.

### IV. AMENDMENTS

32. The Trustee hereby reserves the right to amend, clarify, supplement or withdraw this Proof of Claim at any time and in any respect, including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to add or amend categories of payments or liabilities, to change the priority of the claims set forth herein, to provide additional detail regarding the claims set forth herein, or to fix the amount of any contingent or unliquidated claim (including, but not limited to, with respect to (a) pre-petition and post-petition interest, (b) pre-petition and post-petition costs, expenses and other damages, and (c) all other pre-petition and post-petition amounts entitled to indemnification), or to file additional proofs of claim at any time.

## V. NOTICES

33. All notices in connection with the Proof of Claim should be sent to:

U.S. Bank Trust National Association
100 Wall Street, Suite 1600
New York, New York 10005
Attention: Justin Shearer
(212) 951-8529
justin.shearer@usbank.com

Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Attention: Robin E. Keller
(212) 909-0640
robin.keller@hoganlovells.com

## Schedule 1

**Summary of Bond Documents**

**Below is a non-exclusive summary list of the material documents relating to the Bonds. The Trustee reserves the right to amend and supplement this list and include other relevant documents relating to the Bonds. These documents can be provided to the Debtors upon request.**

1. **SERIES 2005 A, B, AND C**
    a. Trust Agreement between Puerto Rico Infrastructure Financing Authority and Citibank, N.A. as Trustee, Dated as of October 1, 1988, as Amended by a First Supplemental Trust Agreement, Dated as of February 1, 198,9 and a Second Supplemental Agreement, Dated as of December 1, 1997.
    b. Resolution 2005-17: Resolution Authorizing the Issuance of $309,102,577.35 Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005 A $324,625,000 Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005 B and $699,235,338.80 Puerto Rico Infrastructure Financing Authority Special Tax Revenue Refunding Bonds Series 2005 C, dated June 2, 2005.
    c. UCC-1, dated September 18, 2015, filed by U.S. Bank Trust National Association, file no. 2015005887

2. **SERIES 2006:**
    a. Trust Agreement between Puerto Rico Infrastructure Financing Authority and Citibank, N.A. as Trustee, Dated as of October 1, 1988, as Amended by a First Supplemental Trust Agreement, Dated as of February 1, 1989 and a Second Supplemental Agreement, Dated as of December 1, 1997.
    b. Resolution 2006-55: Authorizing the Issuance of $469,770,000 Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2006.
    c. UCC-1, dated September 18, 2015, filed by U.S. Bank Trust National Association, file no. 2015005887