# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | |
| Debtors.[1] | |

## MONOLINES' REPLY TO THE OBJECTION OF THE DRA PARTIES TO THE SEVENTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO *ET AL.*

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................... 1

REPLY ........................................................................................................................... 3

I.     THE GDB LOAN PRIORITY DETERMINATION SHOULD BE MADE AT OR
PRIOR TO CONFIRMATION.................................................................................. 3

II.    THE DRA PARTIES' SUB ROSA PLAN ARGUMENTS ARE MERITLESS. .............. 5

III.   THE PLAN'S RELEASE AND EXCULPATION PROVISIONS ARE PROPER. .......... 8

IV.   THE SETTLEMENT WITH THE HTA BONDHOLDERS COMPLIES WITH
BANKRUPTCY RULE 9019 ................................................................................... 10

V.    THE PLAN PROVIDES PROPER TREATMENT TO CLAIMS IN CLASS 59 .......... 11

VI.   THE PLAN AND PLAN SUPPLEMENT APPROPRIATELY PROVIDE FOR THE
COURT TO RECOGNIZE THAT THE DRA HAS NO ALLOWABLE CLAIM
AGAINST THE COMMONWEALTH. ....................................................................... 13

        A.    The DRA Has No Allowable Claim Against The Commonwealth. ..................... 13

        B.    There Is No "Inconsistency" Between Sections 1.258(b) And 2.2(a) Of The
Plan. ...................................................................................................................... 13

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases and Other Authorities</u>**                                                    **Page(s)**

*Basic Controlex v. Klockner Moeller Corp.*,
    202 F.3d 450 (1st Cir. 2000).....................................................................14

*In re Adelphia Commc'ns*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007)........................................................12

*In re Braniff Airways, Inc.*,
    700 F.2d 935 (5th Cir. 1983)......................................................................6

*In re City of Stockton, Cal.*,
    486 B.R. 194 (Bankr. E.D. Cal. 2013).........................................................7

*In re Energy Future Holdings Corp.*,
    648 F. App'x 277 (3d Cir. 2016)................................................................7

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    361 F. Supp. 3d 203 (D.P.R. 2019)..............................................9, 10, 11, 12

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    425 F. Supp. 3d 25  (D.P.R. 2020)...........................................................6, 7

*In re Fin. Oversight & Mgmt. Bd. for. P.R.*,
    989 F.3d 170 (1st Cir. 2021).....................................................................10

*In re Genco Shipping & Trading Ltd.*,
    513 B.R. 233 (Bankr. S.D.N.Y. 2014) .......................................................8

*In re Nortel Networks*,
    522 B.R. 491 (Bankr. D. Del. 2014)...........................................................7

*In re Peabody Energy Corp.*,
    933 F.3d 918 (8th Cir. 2019) ...................................................................12

*In re Sabine Oil & Gas Corp.*,
    555 B.R. 180 (Bankr. S.D.N.Y. 2016)........................................................8

*In re Tower Auto., Inc.*,
    342 B.R. 158 (Bankr. S.D.N.Y. 2006).........................................................7

*Jeffrey v. Desmond*,
    70 F.3d 183 (1st Cir. 1995).....................................................................10

48 U.S.C. § 2161(a) ...................................................................................6

Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company (the "**Monolines**") hereby submit this reply (the "**Reply**") in response to the *Objection of the DRA Parties to the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico* (ECF No. 18590, the "**DRA Objection**" or "**DRA Obj.**") and in further support of the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 17627, as amended, the "**Plan**").[2]

## PRELIMINARY STATEMENT

1.     More than four years after the commencement of this Title III proceeding, the Commonwealth is presented with a clear pathway to exit bankruptcy.  The Plan enjoys broad support from creditor constituencies, including the Monolines, various ad hoc bondholder groups, and the official committees appointed in these Title III cases.  The DRA Parties object to the Plan in their capacities as servicer and collateral monitor, respectively, for the bonds issued by the GDB Debt Recovery Authority (the "**DRA**"), and specifically on behalf of the DRA as the purported assignee of claims arising from certain intergovernmental loans that the Government Development Bank for Puerto Rico ("**GDB**") made to HTA (the "**GDB HTA Loans**").  While none of the DRA Parties' objections have merit, this Reply focuses on certain of the DRA Parties' objections that relate specifically to the Monolines.

2.     The DRA Parties assert that the Plan should clarify that claims they brought in their adversary proceeding against the Monolines and other HTA bondholders (the "**DRA Adversary**") are not being settled and discharged by the Plan.  *See* DRA Obj. ¶¶ 174-76. The DRA Adversary

---

[2] Unless otherwise indicated, ECF numbers referenced in this Reply refer to the docket in Case Number 17-3283-LTS.  Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan and in the Motion to Dismiss.  *See* Adv. Proc. No. 21-00068-LTS, ECF No. 44.

is a separate proceeding, but the issues therein (relating to the "GDB Loan Priority Determination" set forth in the Plan) are inextricably intertwined with the Plan, and should be decided before, or in conjunction with, plan confirmation.  This, of course, is precisely what the Court recognized when it entered a schedule for briefing and consideration of issues in the DRA Adversary, and ordered that any unresolved issues must be presented in the context of Plan confirmation. Confirmation of the Plan should appropriately reflect the resolution of the core issues raised in the DRA Adversary.

3.      The issue to be decided by the Court is straightforward.  As set forth in the Monolines' briefing on the motion to dismiss the claims brought by the DRA Parties in the DRA Adversary, the governing documents unambiguously establish that, as a matter of law, the DRA Parties' claims and liens (if any) are subordinated to the HTA bonds.[3]  Despite the Court's direction that any unresolved issues from the DRA Adversary be presented for resolution in connection with plan confirmation proceedings, and despite taking extensive discovery in connection therewith, the DRA Parties are presenting no witnesses or documents to support an alternative interpretation of the governing documents.  It is thus undisputed that the issue can be decided on the papers, and will require no further evidence at the confirmation hearing.

4.      The DRA Parties object to confirmation on the additional ground that the Plan and the settlement with certain HTA bondholders embedded therein constitute an impermissible *sub rosa* plan of adjustment for HTA.  This objection has no merit.  Neither the Plan nor the settlement is a *sub rosa* plan for HTA.  The settlement is part of the Commonwealth Plan, settles claims

---

[3] The Financial Oversight and Management Board ("**FOMB**") also moved to dismiss the DRA Parties' complaint in the DRA Adversary primarily on the grounds that the DRA Parties are unsecured creditors. *See* Adv. Proc. No. 21-00068-LTS, ECF No. 40.  If this Court grants FOMB's motion to dismiss, then the DRA Parties' claims to priority will be eliminated, because the DRA Parties' claims rest entirely on their assertion that they hold an exclusive lien on certain excise taxes.

against the Commonwealth, does not curtail the DRA Parties' rights to vote on any plan of adjustment for HTA, does not dispose of substantially all HTA assets, and does not prescribe the treatment of any other HTA creditors, including the DRA Parties, under any future HTA plan of adjustment.

5.      The DRA Parties' other objections fare no better.  First, the DRA Parties contend that their claims are being treated differently than other claims in Class 59.  This is wrong.  All holders of allowed claims in Class 59 are receiving the same treatment:  an allocable share of a contingent value instrument.  Any difference in the distribution provided for the DRA Parties stems from the subordination of their claims and liens (if any) to the HTA bonds.  Second, the DRA Parties assert that the release provisions are improper.  The narrow releases of parties to the plan support agreements are justified, among other reasons because they serve as essential consideration for the substantial contributions provided by those parties.  Finally, the DRA Parties' contention that the Plan contains inconsistent provisions relating to claim allowance misconstrues the Plan.

## **REPLY**

## I.      **THE GDB LOAN PRIORITY DETERMINATION SHOULD BE MADE AT OR PRIOR TO CONFIRMATION.**

6.      The DRA Objection sets forth no additional substantive arguments related to priority, including the size or structure of the Clawback CVI.[4]  The arguments were fully fleshed out in the DRA Adversary, and to the extent the DRA Parties had additional arguments or relevant evidence, they were plainly directed to "make the necessary submissions and take all necessary actions. . . , including the filing of objections to the Plan relating" to "all unresolved issues raised in the DRA Parties Adversary Proceeding" and the dispositive motions filed therein.  ECF No.

---

[4] The DRA Parties only state that DRA "reserve[s] its rights" with respect to its asserted priority rights against the HTA bondholders.  *See* DRA Obj. n. 18.

17529.  An expeditious resolution of the "GDB Loan Priority Determination" presented in the DRA Adversary is needed, and incorporation of that determination in the Plan is, as the DRA Parties admit, a necessary prerequisite for approval of the HTA CVI provisions in the Plan and the release of certain payments from a Clawback CVI reserve.  *See* ECF No. 21-00068-LTS, ECF No. 1 ¶¶ 97, 101.

7.      As detailed in the Monolines' motion to dismiss the DRA Parties' adversary complaint (the "**Motion to Dismiss**"),[5] the governing agreements, including the Assignment and Security Agreement, the Loan Agreements, the amendments to the Loan Agreements and the Promissory Notes, provide that (i) the DRA Parties' liens, to the extent they exist at all, are subordinated to the HTA Bonds and (ii) the DRA Parties' loan claims are subordinated to the HTA Bonds.  *See* Adv. Proc. No. 21-00068-LTS, ECF. No. 68 § II; Adv. Proc. No. 21-00068-LTS, ECF No. 44 § V.  The governing documents similarly make clear that the DRA Parties' right to repayment from any source is junior and subordinate to the HTA Bonds.  The Court has the necessary pleadings to resolve this subordination issue as a matter of law.

8.      Even were the Court to entertain the argument that the governing documents are somehow ambiguous (they are not), the extra-contractual record presented to the Court in connection with confirmation further proves that the GDB/HTA Loans and any corresponding security interests are subordinate to the HTA Bonds.  For example, resolutions and letters contemporaneously adopted or sent by GDB in connection with the issuance of the GDB HTA Loans confirm that they are subordinate to the HTA Bonds.  *See, e.g.*, Monoline Conf. Ex. 28 (ECF No. 18814-18), Letter from GDB to HTA, dated November 10, 2009 ("The Loan shall be junior

---

[5] The briefs and exhibits supporting the Motion to Dismiss were filed in Adv. Proc. No. 21-00068-LTS at ECF Nos. 44, 46, and 68, and are incorporated herein by reference.  For the Court's convenience, annexed hereto as Exhibit A is a chart cross-referencing exhibits submitted with the Motion to Dismiss to exhibits submitted by the Monolines as part of this confirmation proceeding.

and subordinate to outstanding bonds of the Authority . . . ."); Monoline Conf. Exs. 29-32 (ECF Nos. 18814-19-22) (similar); Monoline Conf. Ex. 16 (ECF No. 18814-6), GDB Resolution EC-1697 (same).  This is consistent with GDB's disclosure to the capital markets that the repayment of the GDB HTA Loans is "**subordinate to the Highway Revenue Bonds and the Transportation Revenue Bonds**."  Monoline Conf. Ex. 13 (Natbony Decl. Ex. 16 and ECF No. 18814-3), 2010 Reoffering Circular at 32 (emphasis added).  Notwithstanding the extensive discovery in connection with plan confirmation, the DRA Parties present no contrary evidence.[6]  Nothing further is needed to resolve this issue.  The Court can — and should — resolve the GDB Loan Priority Determination now.

## II.    THE DRA PARTIES' *SUB ROSA* PLAN ARGUMENTS ARE MERITLESS.

9.    The DRA Parties assert that the Plan and the settlements embodied therein constitute an impermissible *sub rosa* plan for HTA.   DRA Obj. ¶¶ 113-15.  They claim that the Plan "seeks to fix distributions of HTA assets to HTA creditors" by providing for interim distributions to HTA bondholders (the "**Interim Distribution**") and conditioning the distributions of the HTA Clawback CVIs on "consents of a select group of HTA creditors" to a proposed HTA plan of adjustment (in addition to the requisite creditor support.) *Id*. ¶ 113.  This is simply wrong.

---

[6] The DRA Objection also makes no substantive arguments in response to the Monolines' showing that certain of the GDB HTA Loans are void.  *See* Adv. Proc. No. 21-00068-LTS, ECF No. 44 ¶ 99.  Nor have the DRA Parties defended the showing that the GDB HTA Loans arise from inequitable conduct by GDB that harmed the Monolines and other HTA creditors.  *See* Adv. Proc. No. 21-00068-LTS, ECF No. 43.  The DRA Parties' motion to dismiss the Monolines' equitable subordination counterclaims does not dispute that the DRA Parties' claims arise from inequitable conduct that harmed HTA and its creditors.  Instead, the DRA Parties claim that the Monolines' equitable subordination counterclaims should be dismissed because equitable subordination claims cannot be imputed to an assignee of a claim.  Though not necessary to resolve the GDB Loan Priority Determination in their favor (because the DRA Parties' claims and liens, if any, are contractually subordinated to the HTA Bonds), the Monolines will establish in their opposition to the DRA Parties' motion to dismiss the Monolines' counterclaims, due on November 2, that this argument is misguided for numerous reasons.  The Monolines otherwise incorporate and refer this Court to the allegations in their answer and counterclaims.  *See* Adv. Proc. No. 21-00068-LTS, ECF No. 43.

10.   In the first instance, the DRA Parties have no legal basis to object to an interim distribution by a debtor in the context of a Title III restructuring.  Indeed, many of the DRA Parties' *sub rosa* arguments rely on inapposite Chapter 11 cases, and provisions of the Bankruptcy Code not incorporated into PROMESA.  In particular, they rely on *In re Braniff Airways*, where the Fifth Circuit found that a sale transaction approved under section 363 of the Bankruptcy Code constituted a *sub rosa* plan because it dictated key terms of the debtor's future plan of reorganization by (i) disposing of substantially all of the debtor's assets, (ii) specifying which creditors/interest holders were to receive the sale consideration under the plan, (iii) obligating secured creditors to support any plan approved by the unsecured creditors' committee, and (iv) releasing all claims against the debtor, its secured creditors, and its officers and directors. *In re Braniff Airways, Inc.*, 700 F.2d 935, 939-40 (5th Cir. 1983).  The court was concerned that the transaction was not authorized under section 363 of the Bankruptcy Code and would short-circuit confirmation requirements.  *Id.* at 940.

11.   Neither concern is relevant here.  First, Section 363 is not incorporated into PROMESA and has no application to HTA.  *See* 48 U.S.C. § 2161(a); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 425 F. Supp. 3d 25, 30 & n.5 (D.P.R. 2020) ("PROMESA does not incorporate Section 363 of the Bankruptcy Code.").  Second, the settlement payment embodied in the Plan does not authorize the disposition of all or substantially all of HTA's assets.  The DRA Parties do not even claim it does.  On the contrary, the DRA Parties' expert witness claims that HTA received approximately $713.1 million from the Commonwealth, and is therefore in no position to assert that HTA has insubstantial assets.  *See* ECF No. 18723-2, Ex. B at ¶ 16.

12.   Indeed, none of the factors considered by the courts is present here:  the  Plan does not predetermine distributions on account of any other claims against HTA, it does not obligate any HTA creditors to vote for or against any HTA plan, and does not release claims of HTA

creditors against HTA.  *See In re Tower Automotive Inc.*, 342 B.R. 158, 164 (Bankr. S.D.N.Y. 2006) (rejecting *sub rosa* objection where the proposed settlement did not "dispose of *all* of the debtor's assets, restrict creditors' rights to vote as they deemed fit on a plan of reorganization, or dictate the terms of a plan of reorganization.") (emphasis added);  *In re Nortel Networks*,  522 B.R. 491, 508 (Bankr. D. Del. 2014) (cited at DRA Obj. ¶ 112-14) (holding that a settlement was not a *sub rosa* plan because it did not "dispose of all claims against the estate, restrict creditors' right to vote as they see fit on a proposed Chapter 11 plan, or dispose of substantially all of a debtor's assets . . ."). Courts routinely overrule *sub rosa* objections where "[no] requirement of Chapter 11 is subverted." *In re Energy Future Holdings Corp.*, 648 F. App'x 277, 285 (3d Cir. 2016).

13.    The Interim Distribution does not transform the settlement into a *sub rosa* HTA plan for at least two reasons. *First*, HTA is a governmental debtor, and thus is permitted to make these payments under PROMESA. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 425 F. Supp. 3d at 30 (noting that "Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets"); *In re City of Stockton, Cal.*, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013) (noting that a municipal debtor can "expend its property and revenues during the chapter 9 case as it wishes").  Any plan of adjustment for HTA will be subject to all the confirmation requirements under PROMESA and will be subject to this Court's review and approval.[7]  *Second*, the DRA Parties' remaining contention that the Interim Distribution must either be shared with them or cannot be made at all simply ignores the subordination provisions in the governing loan agreements and the Assignment and Security Agreement.  Section 510(a) of the Bankruptcy Code renders those provisions enforceable in these Title III cases.

---

[7] The consent rights afforded to the Monolines with respect to the HTA plan, *see* DRA Obj. ¶ 114, are entirely conventional for settling parties. The only relevant settlement before the Court now is the settlement of the clawback claims against the Commonwealth.

III.   **THE PLAN'S RELEASE AND EXCULPATION PROVISIONS ARE PROPER.**

14.   The DRA Parties contend that the Plan cannot be confirmed because it purportedly inappropriately releases claims against certain non-debtor third parties—specifically HTA and CCDA.  DRA Obj. ¶¶ 127-36.  The Plan does no such thing.  The DRA Parties argue that HTA and CCDA are being released because they are included in the definition of "Released Parties" as "Related Persons" of the Government Parties.  DRA Obj. ¶¶ 132-33.   The DRA Parties do not explain how CCDA or HTA fit within the Plan's defined term "Related Persons."  Neither does. The defined term "Related Persons" includes only "predecessors, successors, and assigns" of the Government Parties, and certain officials, directors, and professionals thereof – which would not include CCDA or HTA.  *See* ECF No. 17627, Plan § 1.423.  Moreover, the Plan does not release all Claims against the Released Parties, it releases only "Released Claims."  The definition of "Released Claims" expressly excludes "claims against CCDA [or] HTA."  Plan § 1.424.

15.   The DRA Parties also contend that the Plan's release of claims against the Monolines renders the Plan unconfirmable.  Non-debtor releases and exculpations are permissible where "the released party provides [a] substantial consideration" to the estate.   *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 269 (Bankr. S.D.N.Y. 2014); *see also In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 291-92 (Bankr. S.D.N.Y. 2016) (approving third party release where creditors agreed to equitize their prepetition claims and where creditors settled claims against the debtors).  The Monolines and other PSA creditors are providing substantial contributions to the Debtors through the global settlement and the releases are intertwined with that settlement. *See* Plan § 92.4 (noting that the releases are "an integral part of the plan and . . . essential to its implementation").  These contributions include: (i) the release of bond, clawback, and constitutional claims against the Commonwealth to facilitate distributions to Commonwealth creditors under the Plan; (ii) the agreement to forbear from exercising remedies; (iii) the conversion

of secured bond and clawback claims into an unsecured contingent value instrument; and (iv) the payment of insured bond claims.   These contributions are vital to the Commonwealth's restructuring and reentry into the capital markets that are facilitated through the Plan: without them, the distributions to Commonwealth creditors—which are funded in part with the clawed-back revenues— and the Commonwealth's fiscal condition would be placed in jeopardy.

16.    The DRA Parties also claim that the Plan's exculpation of, among others, the Monolines is improper (*see* DRA Obj. ¶ 143).   This argument runs contrary to the precedent established in these Title III cases. The Plan exculpation provision is substantially similar to the exculpation provision in the COFINA plan of adjustment.  *See* ECF No. 5055 ¶ 35; ECF No. 5055-1 § 30.7.  This Court found that the exculpation provision in the COFINA plan was proper because the supporting bondholders "greatly contributed to the Debtor's reorganization efforts and enabled the successful prosecution of the Plan."  *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 361 F. Supp. 3d 203, 255 (D.P.R. 2019).  The same is true here.

17.    The DRA Parties make vague and entirely unsubstantiated statements in the DRA Objection that the DRA Parties have claims  "against the Monolines based on their participation in . . . misconduct"—claims that the DRA Parties nowhere identify or attempt to describe, and did not raise in attempting to litigate the GDB Loan Priority Determination through the DRA Adversary Proceeding.  *See* DRA Obj. ¶¶ 127-31. If the DRA Parties believe the Monolines' participation in court-ordered mediation sessions and negotiation of settlement agreements constitutes misconduct, that absurd, bald accusation is precisely the type of claim that bankruptcy plan exculpation provisions protect against because, otherwise, consensual plans, which are favored in bankruptcy, would be strongly discouraged for fear of retribution by non-consenting creditors.

-9-

## IV.   THE SETTLEMENT WITH THE HTA BONDHOLDERS COMPLIES WITH BANKRUPTCY RULE 9019

18.   The DRA Parties also assert that the settlement of the HTA clawback claims in the Plan does not comply with Bankruptcy Rule 9019.  DRA Obj. ¶¶ 116-18.  That assertion cannot be supported.  A court evaluating a settlement under Bankruptcy Rule 9019 must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) (citation omitted); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 361 F. Supp. 3d at 235 (approving settlement that fell "within the range of reasonable results if the issues were litigated . . . and above the lowest point in the range of reasonableness," and was in the best interests of the debtors). Applying this standard, the settlement with the Monolines and other HTA bondholders should be approved.  While the DRA Parties note that this Court issued a preliminary ruling concerning the scope of the Monolines' claims, the First Circuit did not endorse that ruling, making clear that any merits determination on the Monolines' claims required further factual development.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 989 F.3d 170, 182-83 (1st Cir. 2021).  Indeed, the First Circuit held that "the Title III court will not and cannot treat its earlier, summary determination about whether the Monolines had a colorable claim as conclusive."  *Id.* at 182.

19.   The outcome of litigation with the Monolines, settled under the Plan, was far from certain.  What was certain, however, was that if the litigation continued, the Commonwealth and the Monolines would have had to expend additional resources to address highly complex issues, including first impression issues under PROMESA, and each side would be subject to substantial risks.  Any decision that this Court issued would have been appealed by the adversely impacted side, and such appeals could have taken years to resolve.  If the Monolines prevailed in that litigation, the Commonwealth would be obligated to provide substantially more consideration to

the HTA bondholders than the Plan currently provides them.  At the least, that would delay implementation of the Plan, which could have triggered the PSA creditors' entitlement to termination fees.  Settlement of the HTA bondholders' litigation is thus in the best interests of the Commonwealth, and a necessary component of the Plan.  The Commonwealth needs certainty regarding its ability to use the HTA excise taxes, and freeing those taxes from the Monolines' clawback claims provides that certainty and allows the Commonwealth to move towards fiscal sustainability.

## V.      THE PLAN PROVIDES PROPER TREATMENT TO CLAIMS IN CLASS 59

20.    The DRA Parties contend that the Plan cannot be confirmed because it fails to provide all holders of claims in Class 59 with the "same treatment" as required by Bankruptcy Code section 1123(a)(4).  DRA Obj. ¶ 119.  Specifically, the DRA Parties assert that section 1123(a)(4) is violated by the Plan provisions relating to the treatment of the DRA's GDB HTA Loan claims in Class 59 vis-à-vis the HTA Bond claims in Class 59.  Not so.

21.    Sections 63.1 and 63.2 of the Plan, the only Plan provisions that deal with the recovery on account of Allowed Claims in Class 59, clearly state that *all* holders of such Claims are entitled to receive their Pro Rata Shares of the CW/HTA Clawback Recovery, subject solely to the GDB Loan Priority Determination.  The DRA Parties have no quarrel with this provision. Instead, they point to certain additional payments to which certain of the Monolines are entitled, claiming – without any substantiation – that they should be entitled to the same additional payments, as well as to certain consent rights over transactional documents that the Monolines bargained for.  *See* DRA Obj. ¶¶ 121-25.

22.    This argument evinces a misunderstanding of the requirements of section 1123(a)(4).  As this Court previously stated, while "it is true that all *claims* must be treated equally, the same is not true for all *claimants*."  *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 361 F. Supp.

3d at 233  (emphasis in original).   Section 1123(a)(4) "does not require identical treatment for all class members *in all respects* under a plan." *In re Adelphia Commc'ns*, 368 B.R. 140, 249-50 (Bankr. S.D.N.Y. 2007) (emphasis in original).  Rather, the "requirements of section 1123(a)(4) apply only to a plan's treatment *on account of particular claims* or interests in a specific class—not the treatment that members of the class may separately receive under a plan on account of the class members' other rights or contributions." *Id.* (emphasis in original).

23.   The Monolines' entitlement to the payment of certain fees and costs (the "**Additional Consideration**") as well as to certain interim payments does not constitute "treatment" of their claims under the Plan.   And certainly their consent rights over certain transactional documents do not constitute such treatment.   Instead, some of the Additional Consideration is not even being paid to the Monolines under the Plan, and the remaining Additional Consideration is being paid to the Monolines as consideration for their:  (i) expending considerable resources to negotiate the structure of the Plan; (ii) willingness to "lock up" their HTA Bonds; and (iii) agreement to support the Plan.   The DRA Parties did none of these things.   Like the consummation costs that this Court addressed in COFINA, this Additional Consideration "do[es] not violate section 1123(a)(4) of the Bankruptcy Code" because the Monolines' prepetition claims "are treated the same" as all other Allowed Claims in Class 59.   *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 361 F. Supp. 3d at 232-33; *see also In re Peabody Energy Corp.*, 933 F.3d 918, 925-27 (8th Cir. 2019) (finding premiums and fees paid to supporting creditors, and the right to receive preferred stock at a discount were designed to compensate creditors "who promised to support the plan" and thus were not "treatment for" a claim).   Accordingly, Section 1123(a)(4) is satisfied here.

## VI.  THE PLAN AND PLAN SUPPLEMENT APPROPRIATELY PROVIDE FOR THE COURT TO RECOGNIZE THAT THE DRA HAS NO ALLOWABLE CLAIM AGAINST THE COMMONWEALTH.

### A.  The DRA Has No Allowable Claim Against The Commonwealth.

24.    The DRA Objection should be overruled for the additional reason that the DRA Parties have no standing to interpose objections to the Plan in their capacity as assignees of the GDB HTA Loans as any claims they may have had against the Commonwealth on account of the GDB HTA Loans are barred.  As the Monolines set forth in the Motion to Dismiss, neither GDB nor the DRA filed a proof of claim against the Commonwealth on account of any claims purportedly arising from the GDB HTA Loans.  *See*, *e.g.*, Adv. Proc. No. 21-00068-LTS, ECF No. 43 at 28-29, ECF No. 44 § III; ECF No. 68 § IV.B.  The only proof of claim filed by GDB against the Commonwealth was for unrelated indebtedness.  *See* Adv. Proc. No. 21-00068-LTS, ECF No. 46-19. After the completion of GDB's Title VI qualifying modification process, the DRA Parties and GDB jointly filed a Motion to Clarify Transfer of Claim (ECF No. 5628, the "**Motion to Clarify**") that identified all of the potential claims against the Commonwealth that had been transferred from GDB to DRA on "Exhibit A" to the Motion to Clarify.  *No* HTA-related claims against the Commonwealth were identified as being transferred to DRA.  The Monolines hereby incorporate by reference the arguments raised in their Motion to Dismiss.  *See* Adv. Proc. No. 21-00068-LTS, ECF No. 44  § III, ECF No. 68 § IV.B.

### B.  There Is No "Inconsistency" Between Sections 1.258(b) And 2.2(a) Of The Plan.

25.    In Section X.A.1 of the DRA Objection, the DRA Parties argue that Section 1.258(b) of the Plan is "inconsistent" with Section 2.2(a) of the Plan. Section 2.2(a) provides that CW/HTA Claims are "allowed" in the total amount of $6,257,585,807.42 "for purposes of confirmation and consummation of the Plan and the distributions to be made [thereunder]." Plan

-13-

§ 2.2(a).   Nothing in Section 2.2(a) indicates that the "CW/HTA Claims" that are "deemed allowed" necessarily include any claims on account of the GDB HTA Loans.[8]

26.   Instead, the provision that specifically addresses the allowability of claims on account of the GDB HTA Loans is Section 1.258(b), and that provision contemplates that claims on account of the GDB HTA Loans may be found not to be "allowable." Section 1.258(b) expressly contemplates that this Court may determine "that the Government Development Bank Debt Recovery Authority does not possess an allowable claim or entitlement to recover with respect to the HTA Clawback CVI based upon such GDB HTA Loans." *Id.* § 1.258(b). There is no inconsistency between these Plan provisions. Moreover, Section 1.258(b) is the more specific provision and would govern in the face of any inconsistency. *See*, e.g., *Basic Controlex v. Klockner Moeller Corp.*, 202 F.3d 450, 453-54 (1st Cir. 2000).

27.   Furthermore, the CVI Indenture (ECF No. 18470-2), which constitutes part of the Plan Supplement and therefore is "deemed incorporated into and part of the Plan" (Plan § 1.395), confirms that claims on account of the GDB HTA Loans may be found not to be allowable by clarifying how the CW/HTA Clawback Recovery will be distributed on account of CW/HTA Claims in that scenario. Specifically, Section 5.07(c) of the CVI Indenture provides that:

> Pending entry of a Final Order with respect to the GDB Loan Priority Determination . . . the HTA Clawback CVI otherwise allocable to Holders of Allowed CW/HTA Claims relating to the GDB HTA Loans shall not be distributed to the Holders of the GDB HTA Loans . . . Upon an order with respect to the GDB Loan Priority Determination becoming a Final Order . . . **any undistributed HTA Clawback CVI shall be released to Holders of the Sub-Subseries of HTA Clawback CVI related to the HTA 98 Bonds or GDB**

---

[8]   While the DRA Parties note that Section 1.183 of the Plan defines the "CW/HTA Claims" classified in Class 59 to include claims "asserted on account of the GDB HTA Loans" (*see* DRA Obj. ¶ 165), that definition merely indicates that *if* any claims on account of the GDB HTA Loans are ultimately allowed, such claims would have the right to participate in the distribution to Class 59 Claims. In other words, Section 1.183's definition speaks solely to classification, not allowance.

> **HTA Loans . . . based upon . . . the terms of the GDB Loan
> Priority Determination** . . . .

28.     Section 5.07(c) clearly and coherently describes what will occur if, in the course of the GDB Loan Priority Determination, the Court determines that the DRA has no allowable claim against the Commonwealth on account of the GDB HTA Loans.  In that scenario, the HTA Clawback CVI will be distributed only to holders of HTA Bonds, because those bondholders will be the only holders of allowed CW/HTA Claims.  The DRA Parties have no basis to object to the Plan based on any purported inconsistency in the Plan language.

## **CONCLUSION**

29.     For the reasons set forth herein, the DRA Objection should be overruled, the Plan should be confirmed, and the Court should resolve the GDB Loan Priority Determination by ruling that the DRA Parties' claims and liens, if any, are subordinated to the HTA Bonds.

*[Remainder of Page Intentionally Omitted]*

-15-

Dated:  October 27, 2021
        New York, New York

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*

    Heriberto Burgos Pérez
    USDC-PR No. 204,809
    Ricardo F. Casellas-Sánchez
    USDC-PR No. 203,114
    Diana Pérez-Seda
    USDC–PR No. 232,014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Tel.: (787) 756-1400
    Fax: (787) 756-1401
    E-mail:  hburgos@cabprlaw.com
           rcasellas@cabprlaw.com
           dperez@cabprlaw.com

*Counsel for Assured Guaranty Corp. and Assured
Guaranty Municipal Corp.*

**CADWALADER, WICKERSHAM &
TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*

    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    William J. Natbony*
    Thomas J. Curtin*
    Casey J. Servais*
    200 Liberty Street
    New York, New York 10281
    Tel.: (212) 504-6000
    Fax: (212) 406-6666
    Email:  howard.hawkins@cwt.com
          mark.ellenberg@cwt.com
          bill.natbony@cwt.com
          thomas.curtin@cwt.com
          casey.servais@cwt.com

* Admitted pro hac vice

*Counsel for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

**FERRAIUOLI LLC**

By: */s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: */s/ Atara Miller*
Dennis F. Dunne (admitted pro hac vice)
Atara Miller (admitted pro hac vice)
Grant R. Mainland (admitted pro hac vice)
John J. Hughes, III (admitted pro hac vice)
Jonathan Ohring (admitted pro hac vice)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com
johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

**ADSUAR MUNIZ GOYCO SEDA &
PEREZ-OCHOA PSC**

By: */s/ Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    Luis A. Oliver-Fraticelli
    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone:   (787) 756-9000
    Fax:         (787) 756-9010
    Email:      epo@amgprlaw.com
                loliver@amgprlaw.com

*Counsel for National Public Finance
Guarantee Corp.*

**WEIL, GOTSHAL & MANGES LLP**

By: */s/  Jonathan Polkes*
    Jonathan Polkes
    Gregory Silbert
    Robert Berezin
    Kelly DiBlasi
    Gabriel A. Morgan
    767 Fifth Avenue
    New York, NY 10153
    Telephone:   (212) 310-8000
    Fax:         (212) 310-8007
    Email:      jonathan.polkes@weil.com
                gregory.silbert@weil.com
                robert.berezin@weil.com
                kelly.diblasi@weil.com
                gabriel.morgan@weil.com

*Counsel for National Public Finance Guarantee
Corp.*

**REXACH & PICÓ, CSP**

By: */s/ Maria E. Picó*

María E. Picó

USDC-PR 123214
802 Ave. Fernández Juncos
San Juan PR 00907-4315
Telephone:    (787) 723-8520
Facsimile:    (787) 724-7844
E-mail:mpico@rexachpico.com

***Attorneys for Financial Guaranty
Insurance Company***

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*

Martin A. Sosland
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III
Adam M. Langley
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

***Counsel for Financial Guaranty Insurance
Company***

-19-

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, the 27th day of October, 2021.

By: _/s/ Howard R. Hawkins, Jr._
Howard R. Hawkins, Jr.*
* Admitted pro hac vice