**<u>Exhibit C</u>**

**Omnibus Reply Chart (Plan Objections)**

**PLAN OBJECTION REPLY CHART**

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| Martin Cervera Antonio [ECF No. 16871] (the "Cervera Antonio Objection") | Mr. Martin Cervera Antonio asserts that pensioners and holders of "Puerto Rico Bonds" should be paid in full. Cervera Antonio Obj. at 1. | As set forth in the Confirmation Brief, the Plan's treatment of bond and pension claims complies with PROMESA section 314(b), which authorizes the impairment of prepetition debt in accordance with Title III of PROMESA. Confirmation Br. ¶¶ 49, 70. |
| Maria Teresita Martin [ECF No. 16872] (the "Teresita Martin Objection") | Ms. Maria Teresita Martin asserts that retirement plans for Public Employees and holders of "Puerto Rico Bonds" should be paid in full. Teresita Martin Obj. at 1. | As set forth in the Confirmation Brief, the Plan's treatment of bond and pension claims complies with PROMESA section 314(b), which authorizes the impairment of prepetition debt in accordance with Title III of PROMESA. Confirmation Br. ¶¶ 49, 70. |
| Wanda I. Ortiz Santiago [ECF Nos. 16939; 17175] (the "Ortiz Santiago Objection") | Wanda I. Ortiz Santiago asserts that under previous legal regimes she was entitled to retire earlier and does not wish to renounce her previous contract under Law 447. Ortiz Santiago Obj. at 1. | This objection appears to be a dispute about the amount and/or validity of the objectors' claim, which is not a Plan objection and will be resolved through ACR or the claims resolution process. |
| Nancy I. Negron-Lopez [ECF No. 16955] (the "Negron-Lopez Objection") | Ms. Nancy I. Negron-Lopez proposes an alternative treatment of retirees by which they keep all pay entitled to them. Negron-Lopez Obj. ¶ 5. | As set forth in the Confirmation Brief, the Plan's treatment of pension claims complies with PROMESA section 314(b), which authorizes the impairment of prepetition debt in accordance with Title III of PROMESA. Confirmation Br. ¶¶ 49, 70. |
| Group Wage Creditors [ECF No. 17021] (the "Group Wage Creditors Objection") | All claims of equal legal priority must be placed in the same class. The Group Wage Creditors' claims should be placed in the same class as AFSCME claims. Group Wage Creditors Obj. ¶ 44. | Section 1122(a) does not require that similar claims be placed in the same class. Valid overarching governmental reasons exist for their separate classification and treatment from the AFSCME claims class. See Reply Br. ¶¶ 39–42. |
| Group Wage Creditors [ECF No. 17021] (the "Group Wage | The Plan unfairly discriminates against Class 49. Group Wage Creditors Obj. ¶ 29. | The Plan does not unfairly discriminate against Class 49. Reply Br. ¶¶ 37–46. |

| | | |
|---|---|---|
| Creditors Objection") | | |
| Desco, Inc. & Development Socioeconomic & Conservation Fideicosmisco of Viequest [ECF Nos. 17047; 17116] (the "Desco Objection") | Claimant objects to the Plan, but does not state the legal basis for their objection. | As Desco does not state their legal basis for their objection, the Debtors submit such objection should be overruled. |
| Oscar Adolfo Mandry Apararicio et. al. [ECF Nos. 12701, 16481, 17062; 17998] (the "Mandry Objection"), joined by joined by Vicente Perez Acevedo and Corporatcion Marcarbie Investement [ECF No. 16668]; Demetrio Amador Inc. [ECF No. 18582]; Maruz Real Estate Corp. [ECF No. 18563]; Lortu-TA Ltd [ECF No. 18564]; Sucn. De Frank Torres Ortiz & Aurea Rodriguez [ECF No. 18565]. | The Plan may not classify claimant's Fifth Amendment Takings claim in the same class as general unsecured claims, because the claim cannot be discharged.  Mandry Obj. 6–7. | Class 54 consists of Eminent Domain Claims and is a separate class not included with other general unsecured creditors because they are in different circumstances.  Eminent Domain Claims will receive payment in full  to the extent of the secured portion of their claim and, to the extent that any remaining claim exists, such unsecured portion of such claim will receive its pro rata share of the CW GUC Recovery.  As a practical matter, claimants object to the treatment of their claims. |

| | | |
|---|---|---|
| Oscar Adolfo Mandry Apararicio et. al. [ECF Nos. 12701, 16481, 17062; 17998] (the "Mandry Objection"), joined by joined by Demetrio Amador Inc. [ECF No. 18582]; Maruz Real Estate Corp. [ECF No. 18563]; Lortu-TA Ltd [ECF No. 18564]; Sucn. De Frank Torres Ortiz & Aurea Rodriguez [ECF No. 18565]. | The Plan may not impair claimant's Fifth Amendment claim for the taking of its property.  Mandry Obj., [ECF No. 12701 at 4. | Claimants' eminent domain claim is an unsecured claim that is not protected from impairment and discharge by the U.S. Constitution.  *See* Reply Br. ¶ 82.  "Just compensation" claims for the taking of property may be impaired and discharged.  *See* Reply Brief ¶¶ 84–85. |
| Ana A. Nunez Velazquez [ECF Nos. 17438; 17436; 18529] (the "Nunez-Velazquez Objection") | Ana A. Nunez Velazquez asserts that the treatment of ERS has not been adequately justified and requests a more involved role in the negotiations of the Plan by Commonwealth employees.  Nunez-Velazquez Obj., [ECF No. 17438 at ¶¶ 1–5]. | As set forth in the Confirmation Brief, the Plan's treatment of pension claims complies with PROMESA section 314(b).  PROMESA does not require the negotiation with each claimholder as a threshold of filing a plan.  The Plan, hovever, was extensively mediated and negotiated with multiple parties.  *See* Zelin Decl. ¶¶ 13–46. Furthermore, the Plan was proposed in good faith.  Confirmation Br. ¶¶ 153–59. |
| Vaqueria Tres Monjitas Inc. (VTM) [ECF. 18091] (the "VTM Objection") | "To the extent that the Court intends to consider Suiza's objection based on the amount of its claim in connection with the hearings on confirmation of the Plan, VTM reserves the right (i) to seek discovery to the extent that Suiza's objection could impact VTM's claim, and (ii) to call its own witnesses in connection therewith." VTM Obj. ¶ 5. | This is not a confirmation-based objection, and no response is required. |

| | | |
|---|---|---|
| Edgardo Marquez Lizardi [ECF Nos. 18111; 18249] (the "Marquez-Lizardi Objection") | Edgardo Marquez Lizardi asserts that a full audit must commence before any reduction of pension contributions and does not consent to any reduction. Marquez-Lizardi Obj., [ECF No. 18111 ¶ 2]. | As set forth in the Confirmation Brief, the Plan's treatment of pension claims complies with PROMESA section 314(b), which authorizes the impairment of prepetition debt in accordance with Title III of PROMESA.  Confirmation Br. ¶¶ 49, 70.  Furthermore, the request for an audit is not related to the confirmations requirements for the Plan set forth in PROMESA section 314(b). |
| Office of the Courts Administration [ECF No. 18336] (the "Courts Administration Objection") | Judicial pension are mandated and guaranteed by the Puerto Rico Constitution.  Modification of pensions reduces judicial compensation and  emoluments and therefore violates this mandate.  It would also impair the independence of the judiciary and, as a practical matter, cause qualified judges to leave and create a crisis in the justice system. | As explained in the Reply Brief, the Puerto Rico Constitution does not create any pension rights for judges that is are legally distinct from other public pensions in Puerto Rico.  The Commonwealth's public pensions are all contractual in nature and thus subject to adjustment in bankruptcy.  Additionally, the judges are not being specifically targeted, they are subject to a measure in the Plan that has general application to all participants in defined benefit plans of the Commonwealth. *Brau v. E.L.A.*, 190 D.P.R. 315 (2014) ("the salary of judges may be indirectly reduced through laws generally applicable to all citizens.").  Thus, the independence of the judiciary is not impacted by the Plan's treatment of JRS Participants. |
| Maria M. Ortiz Morales [ECF No. 18396] (the "Ortiz-Morales Objection") | Maria M. Ortiz Morales objects to any reduction in pension benefits.  Ortiz-Morales Obj. at 1. | As set forth in the Confirmation Brief, the Plan's treatment of pension claims complies with PROMESA section 314(b), which authorizes the impairment of prepetition debt in accordance with Title III of PROMESA.  Confirmation Br. ¶¶ 49, 70. |
| PFZ Properties Inc. [ECF Nos. 9223, 18418; 18486] (the "PFZ Objection") | The Plan may not discharge, impair, or otherwise adjust or modify claimant's claim for "just compensation" under the Takings Clause of the Fifth Amendment to the U.S. Constitution and Section 9 of Article II of the Commonwealth Constitution.  PFZ Objection at 4–5. | PFZ's claim for just compensation is an unsecured claim that is not protected from impairment or discharge by the U.S. Constitution.  *See* Reply Br. ¶ 82. "Just compensation" claims for the taking of property may be impaired and discharged by the Plan.  *See* Reply Br. ¶¶ 84–85. |
| Arthur Samodovitz [ECF No. 18433] (the "Samodovitz Objection") | Objector is an individual bond holder who objects to the plan on the grounds that it violates the Takings clause of the U.S. Constitution because of the retroactive effect of PROMESA and lack of just compensation for taking his property.  Samodovitz Obj. at 12. | Mr. Samodovitz has an unsecured claim that is not protected by the Fifth or Fourteenth Amendment, which only protects property interests or secured claims.  *See* Reply Br. ¶ 82. "Just compensation" claims for the taking of property may be impaired and discharged.  *See* Reply Br. ¶¶ 84–85. |
| Arthur Samodovitz [ECF | The Plan is not in the best interests of creditors under PROMESA section | Mr. Samodovitz is confusing the best interest test in chapter 11 cases with the one in chapter 9 and PROMESA. The test under PROMESA looks at the recovery of creditors in the aggregate. |

| | | |
|---|---|---|
| No. 18433] (the "Samodovitz Objection") | 314(b)(6) because the 2014 GO Bonds would have a greater recovery under non-bankruptcy laws and the constitution of Puerto Rico. Samodovitz Obj. at 4 | As set forth in the Confirmation Brief (at ¶¶ 233–44) and the Reply Brief (at ¶ 35), outside of Title III, all creditors of the Commonwealth recover less on their claims in the aggregate than they would pursuant to the Plan. |
| Arthur Samodovitz [ECF No. 18433] (the "Samodovitz Objection") | Objector objects to the scope of releases in the Plan to the extent, if any, the Plan releases COFINA or PR from liability for restructuring COFINA bonds. Samodovitz Obj. at 12. | Except as explicitly agreed-to by creditors in their respective plan support agreements, as reflected in Plan section 92.2(c), the Plan is not intended to release any claims of a creditor of the Debtors, in its capacity as such, against a party that is not a Debtor.  To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and confirmation order to reflect that intention.  Accordingly, Samodovitz's objection will be resolved. |
| Arthur Samodovitz [ECF No. 18433] (the "Samodovitz Objection") | Under Bankruptcy Rule 7001(2) an adversary proceeding was required against each bondholder of the 2014 GO Bonds to determine their validity, priority, or extent of a lien or other interest in property. Samodovitz Obj. at 11. | The Plan does not seek to invalidate any liens belonging to Samodovitz.  Rather the Plan impairs his claim and treats it in accordance with applicable bankruptcy law.  Moreover, Samodovitz's bond claims are classified in Classes which have voted to approve the Plan based on preliminary voting results.  Accordingly this objection is moot, and Samodovitz is bound to receive the treatment approved by his fellow claimants.  *See, e.g.*, *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 187 B.R. 683, 690 (Bankr. D. Col. 1995) ("In Chapter 9, dissenting creditors in an accepting class are bound by the accepting vote of the other members."); *see also In re City of Stockton*, 542 B.R. 261 (B.A.P. 9th Cir. 2015) (same). |
| Arthur Samodovitz [ECF No. 18433] (the "Samodovitz Objection") | PROMESA violates the Uniformity Clause of the U.S. Constitution. Samodovitz Obj. at 11–12. | PROMESA does not violate the Uniformity Clause of the U.S. Constitution.  Reply Br. ¶¶ 75–79. |
| Miguel Luna De Jesus [ECF No. 18485] (the "Luna De Jesus Objection") | Miguel Luna De Jesus asserts that the plan is discriminatory against pensioners and unconstitutional. Luna De Jesus Obj. at 1. | The Plan does not unfairly discriminate with respect to pension claims; in fact, pension claims are receiving a greater treatment than all other unsecured claims. Confirmation Br. ¶ 175. |
| Ismael L. Purcell Soler, Alys Collazo Bougeois, *et al.* [ECF No. 18504] (the "Inverse | Objectors object to the Plan's treatment of their inverse condemnation claims against PREPA and claim it is non-dischargeable as it is a takings claim protected by the U.S. constitution and the Puerto Rico Constitution.  Inverse Condemnation Obj. at 11. | Objectors contend they are creditors of PREPA.  They lack standing to object to confirmation because the Plan does not adjust PREPA's debts, and it thus does not affect objectors.  *Bank of N.Y. Mellon v. P.R. Sales Tax Fin. Corp. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 301 F. Supp. 3d 306, 312 (D.P.R. 2017).

Even if they have standing, objectors do not have (i) a secured claim and thus are not protected by the Fifth or Fourteenth Amendment or (ii) "just compensation" claims for the taking of property, including for inverse condemnation claims, may be impaired and discharged.  *See* |

| | | |
|---|---|---|
| Condemnation Objection") | | Reply Br. ¶¶ 84–85. |
| Mildred Batista De Leon [ECF No. 18505] (the "Batista De Leon Objection") | Mrs. Mildred Batista De Leon asserts that the plan is discriminatory against pensioners and would lead to misery and poverty. Batista De Leon Obj. at 1. | The Plan does not unfairly discriminate with respect to pension claims; in fact, pension claims are receiving a greater treatment than all other unsecured claims. Confirmation Br. ¶ 175. Specifically, the Plan is in the best interest of creditors. *See* Confirmation Br. ¶¶ 233–44. |
| Javier Alejandrino Osorio [ECF No. 18506] (the "Osorio Objection") | Mr. Javier Alejandrino Osorio asserts that the plan is discriminatory against pensioners and would lead to misery and poverty. Osorio Obj. at 1. | The Plan does not unfairly discriminate with respect to pension claims; in fact, pension claims are receiving a greater treatment than all other unsecured claims. Confirmation Br. ¶ 175. Specifically, the Plan is in the best interest of creditors. *See* Confirmation Br. ¶¶ 233–44. |
| Service Employees International Union [ECF No. 18511] (the "SEIU Objection"); joined in parts by the International Union, UAW [ECF No. 18558] | The Plan purports to require the Commonwealth to enact legislation called for in the Plan. Such a requirement would constitute a clear infringement on the powers of the Government of Puerto Rico and the rights of its people. SEIU Obj. ¶ 2. | While the Oversight Board does not believe that issuance of securities under a plan of adjustment requires legislation, pursuant to certain plan support agreements, confirmation of the Plan may require legislation. If such legislation is enacted, the SEIU Objection would be moot. |
| Service Employees International Union [ECF No. 18511] (the "SEIU Objection"); joined in parts by the International Union, UAW [ECF No. 18558] | The Confirmation Order should expressly provide that the SEIU's grievance claims should be paid in the ordinary course. SEIU Obj. ¶¶ 21–22. | The Proposed Confirmation Order states that it grants releases "[e]xcept as expressly provided in the Plan . . . ." Proposed Confirmation Order ¶ 49(a). And the Plan expressly provides that "shall transfer Claims in accordance with the terms and conditions of the ACR Order, and, upon transfer, all such Claims shall . . . (b) be paid in full in the ordinary course of business." Plan § 82.7. The Plan further expressly provides that "claims that are eligible to be transferred to or administered through the ACR process and for which no claim was required to be filed (whether or not a proof of claim was filed) . . . shall be administered through the ACR process." *Id.* Accordingly, the Plan already expressly provides that claims subject to the ACR Order will be paid in the ordinary course pursuant to the ACR process, and no amendment to the ACR Order is needed. |
| Service Employees | The Plan will leave the Commonwealth with an unsustainable debt burden and is | SEIU relies on a single debt metric from the Debt Sustainability Analysis ("DSA") contained in the Fiscal Plan—net tax-supported debt per capita—and contends that in order for the Plan |

| | | |
|---|---|---|
| International Union [ECF No. 18511] (the "SEIU Objection"); joined in parts by the International Union, UAW [ECF No. 18558] | thus not feasible under PROMESA section 314(b)(6).  SEIU Obj. ¶ 23.<br><br>According to Oversight Board expert witness Marti Murray, under the Plan, Puerto Rico would rank ninth from the top in rankings of the most indebted U.S. states, with a net tax-supported debt per capita of $2,532, which is an unsustainable level of debt.  SEIU Obj. ¶ 25. | to be feasible, Puerto Rico should emerge from Title III with "no heavier a debt load than the average U.S. state." SEIU Obj. ¶ 23.  Critically, SEIU's proffered standard for feasibility goes far beyond what is required by law, which requires a court to determine whether it is probable that a debtor can pay postpetition debt and provide future public services. *In re City of Detroit*, 524 B.R. 147, 222 (Bankr. E.D. Mich. Dec. 31, 2014).  The debt levels and debt services imposed under the Plan are consistent with the sustainable levels determined by the DSA and the Commonwealth's revenue projections for FY 2021 through FY 2051.  *See* Malhotra Decl. ¶ 59; Murray Expert Report ¶ 78.  Moreover, SEIU ignores that Puerto Rico's post-confirmation debt level metrics are consistent with or favorable to U.S states with similar investment grades from major ratings agencies.  Murray Expert Report ¶ 81. Indeed, the Oversight Board determined that debt service to own-source revenues was the most relevant metric to restructured debt levels under the Plan, and this metric places the Commonwealth close to the average of the top 25 most indebted U.S. states.  Malhotra Decl. ¶ 60. SEIU's selected metrics cannot demonstrate that the Commonwealth's post-confirmation debt burden is unaffordable or that the Plan is not feasible.<br><br>In addition, the Oversight Board is the only party that is tasked, in its sole discretion, with the preparation of the DSA.  To the extent that SEIU is trying to provide a different DSA standard, they are precluded from attacking the certified Fiscal Plan pursuant to PROMESA section 106(e).  Further, to the extent SEIU is attacking the consistency of the debt issued under the Plan and the DSA, the Oversight Board has presented persuasive evidence to the contrary.  *See* Malhotra Decl. ¶¶ 55–61; Murray Expert Report ¶¶ 71–89. |
| Mapfre PRAICO Insurance Company [ECF No. 18512; 18513] (the "PRAICO Objection") | Objector's claim cannot be classified in Class 13 PBA General Unsecured Claims as an Impaired Claim because it is not subject to reduction and must be paid in its entirety as a secured claim.  PRAICO Obj., [ECF No. 18512 at 7–8]. | The characterization of the objectors claim will be determined as part of the claims reconciliation process and claimant will receive appropriate treatment based on the Court's determination. |
| *Creditors Who are Plaintiffs in Certain Cases under 42 U.S.C. §1983* [ECF No. 18535] ( the "Section 1983 Plaintiffs Objection") | Objectors are former employees of the Commonwealth and plaintiffs proceeding with constitutional claims pursuant 42 U.S.C. section 1983 (the "Section 1983 Claims") against employees of the Commonwealth, in their personal capacity, for the alleged deprivation of plaintiffs' property rights without due process of law, the retaliatory termination of their employment, and damages in | Pursuant to Act 9-1975, the Commonwealth government acceded to provide legal representation to these individuals and if a favorable judgment is entered against any of them, they may then request that the judgment be satisfied by the Commonwealth.  The initial determination to provide legal representation, and the one to pay for any judgment, however, are two different processes.  The Secretary of Justice has discretion to decide whether the Commonwealth will satisfy any judgment. *See In re Secretario de Justicia*, 118 D.P.R. 827, 832–33 (1987).<br><br>Pursuant to Regulation 8405 of the Secretary of Justice, adopted on November 20, 2013, plaintiffs in the Section 1983 Actions do not have standing to request that the Commonwealth |

| | | |
|---|---|---|
| | connection thereto (the "Section 1983 Actions").<br><br>Objectors object to the Plan on the basis that it lacks transparency regarding the cost of litigation and payment of adverse judgments in connection with the Section 1983 Actions.<br><br>Objectors assert that the Commonwealth government agreed to provide them with legal representation pursuant to Act 9-1975 and contend that the government shall also be responsible for any judgments that may be issued.<br><br>Objectors further contend that given the claims are against the Commonwealth's officers or employees in their individual capacity, these are not claims against the Commonwealth for bankruptcy purposes, and thus, are not subject to discharge or impairment by the Plan. | pay a judgment against any of its employees, and that only the employee can request such payment.  Bankruptcy law, however, recognizes a claim even if the holder's right to payment is contingent.<br><br>The Section 1983 Claims are contingent claims for payment, the contingency being the objectors' request to the Secretary of Justice to satisfy any judgment that may be issued in the Section 1983 Actions, and that the Secretary of Justice (and/or any administrative or judicial review process) determines that the objectors are eligible for this benefit under Act 9-1975 and Regulation 8405.  As such, and subject to these contingencies, these are (or would be) unsecured monetary claims, which are being adjusted and discharged pursuant to the Plan. This is permissible under the Bankruptcy Code:  the holders of Section 1983 Claims' rights against the Commonwealth under Act 9-1975, if any, constitute "claims" under Bankruptcy Code section 101(5)'s broad definition.  Bankruptcy Code section 944(b) provides for the discharge of "all debts," and does not specify any exception for Section 1983 Claims. |
| Med Centro Inc., *et al* [ECF No. 18538] (the "Med Centro Objection"). | Med Centro asserts its claim is separate and distinct from all other Med Centers as the only federally qualified health center to settle with the Commonwealth.  Med Centro Obj. ¶ 1.<br><br>The Plan improperly classifies Med Centro with the remainder of the Med Centers as defined in the Plan, because the Commonwealth only owes postpetition payments to Med Centro.  Such payments are subject to dispute resolution in the District Court (Case No. 06-1260), for which the automatic stay was lifted to permit.  Med Centro Obj. ¶¶ 24–28. | The Plan will be modified to resolve Med Centro's objection. Specifically, Plan section 1.329 will be amended to strike Med Centro from the definition of "Med Centers".  In addition, Plan section 1.331 will be amended to strike Case No. 06-1260 from the definition of "Med Center Litigation".  Accordingly, the Plan will not affect or dismiss Case No. 06-1260, and will not affect Med Centro's adjudication of its postpetition claim against the Commonwealth, if any, pursuant to the dispute resolution process set forth therein, thus resolving Med Centro's objections. |

| | The Plan also improperly classifies Med Centro's claim because it does not provide for a distribution to Med Centro, and provides for Case No. 06-1260 to be dismissed.  Med Centro Obj. ¶ 22. | |
|---|---|---|
| Cooperativa de Ahorro y Crédito Vegabajeña [ECF No. 18551] (the "Cooperativa Objection") | The Plan is not filed in good faith and fails to comply with state law in violation of section 1129(a) because it does not distribute to Cooperativa funds assigned to Cooperativa.  Cooperativa Obj. at 6. | Cooperativa argues it has "an enforceable lien on a portion of [the ERS participant-borrower's] employee contributions pursuant to 2011 LPR 196 in the amount each System 2000 participant and the ERS assigned to Coperativa at the time the individual participant entered into loan agreements with Cooperativa, and that "the amount of Cooperativa's lien interests should be distributed directly to Cooperativa because the funds belong to Cooperativa and not to the ERS."  Cooperativa Obj. at 7–8.

Cooperative further argues that "pursuant to Article 4-110 of 2011 LPR 196, statutory liens in favor of Coopertiva on ERS retirement contributions were created and legally assigned by individual borrowers to Cooperativa."  Cooperativa Obj. at 8.  2011 LPR 196 "permits Cooperativa to enforce the valid liens on employee funds held by ERS, which funds the Oversight Board agreed to distribute to System 2000 participants."  Cooperativa Obj.. at 9.

Cooperativa has raised the same issues in an adversary proceeding [Case No. 19-00028].  The Court stayed the adversary proceeding pending the Court's decision regarding confirmation of the Plan, without prejudice to resolving the issues "through claim objections and other contested matters relating to" the Plan confirmation process.  [Case No. 19-00028, ECF No. 25 at 24].  Accordingly, ERS and the Commonwealth responded to the Cooperativas's alleged secured claims by filing the *Three Hundred Eighty-Ninth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Claims Arising from Personal Loan Agreements* (the "Three Hundred Eighty-Ninth Omnibus Objection"), filed on August 20, 2021 [ECF No. 17930].  The Cooperativa failed to respond to the Three Hundred Eighty-Ninth Omnibus Objection.  In accordance with the Court's Case Management Procedures, ERS and the Commonwealth filed a *Notice of Presentment of Proposed Order Granting the Three Hundred Eighty-Ninth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Claims Arising from Personal Loan Agreements (ECF No. 17930)* [ECF No. 18468] (the "Notice of Presentment").  The Cooperativa did not respond to the Notice of Presentment either, and accordingly, an order granting the Three Hundred Eighty-Ninth Omnibus Objection may be entered without a further hearing.

Even if Cooperativa vacated its default, as described in the Three Hundred Eighty-Ninth Omnibus Objection, Cooperativa's claim is unenforceable against the Commonwealth and |

| | | |
|---|---|---|
| | | ERS and their property, and should be disallowed.  The Commonwealth and ERS incorporate the Three Hundred Eighty-Ninth Omnibus Objection by reference, and summarize it below.<br><br>As the Cooperativa Objection acknowledges, ERS participants—not ERS or the Commonwealth—purportedly granted Cooperativa an assignment and lien.  <u>Cooperativa Obj.</u> at 3–4.  Neither 2011 L.P.R. 196, nor the loan documents, grant Cooperativa an enforceable claim or lien against either the Commonwealth or ERS, and accordingly, neither the Commonwealth nor ERS are liable for the ERS participants' default on their personal loan agreements.<br><br>Nor did Cooperativa receive an assignment of or a lien against the ERS participants' individual retirement contributions to ERS, let alone any assets of ERS or the Commonwealth.  The loan documents make clear ERS participants granted a lien on a percentage of their pension or benefit payments *when paid to them*.  Even if the ERS participants had assigned their rights to payment from ERS, that would not give Cooperativa a right to demand payment of the retirement contributions from ERS or the Commonwealth.  Cooperativa, as assignee, could not obtain a greater right than held by the ERS participants, as assignors. *FDIC v. Arrillaga-Torrens,* 212 F. Supp. 3d 312, 352 (D.P.R. 2016).  At best, Cooperativa has a right to demand attachment or garnishment of future pension benefits if and when paid or payable to individual participant.<br><br>Cooperativa also asserts certifications signed by ERS recognize the ERS participants had assigned their retirement contributions in favor of Cooperativa.  <u>Cooperativa Obj.</u> at 4.  Again, the loan documents grant a lien only on a percentage of pension benefit payments.  But in all events, there is no enforceable lien against individual participants' retirement contributions because there is no separately identifiable property to which the purported lien could attach. *In re Yates,* 47 B.R. 460, 462 (Bankr. D. Colo. 1985) (citing *In re Ashe,* 668 F.2d 105, 108 (3d Cir. 1982) (concluding that a lien as defined in 11 U.S.C. § 101(28) "can only be created if there is a *res* to which the lien can attach.").  ERS maintained individual accounts for accounting purposes that reflected the notional value of each employee's contributions and accredited investment earnings, but no segregated funds corresponding to such retirement accounts existed or were maintained or required to be maintained by ERS. Contributions made by or on behalf of the ERS participants, to the extent any remain at ERS, were held by ERS as general funds, and are not traceable to the specific ERS participants or their contributions. ERS participants are at most "general creditors" of ERS. |
| Cooperativa de Ahorro y Crédito Vegabajeña [ECF No. 18551] (the | The Plan discriminates against Cooperativa and is unfair and inequitable in its treatment of Cooperativa's secured | As explained immediately above, Cooperativa does not have a secured claim against ERS or the Commonwealth.  Accordingly, it has at best a disputed claim against ERS and/or the Commonwealth, and its claims, should they ever be allowed, are properly classified as ERS General Unsecured Claims. |

| | claims in violation of § 1129(b). <u>Cooperativa Obj.</u> at 9. | |
|---|---|---|
| "<u>Cooperativa Objection</u>") | | |
| International Union, UAW [ECF No. 18558] (the "<u>UAW Objection</u>") | UAW joins in paragraphs 16-22 of the SEIU Objection.  Further, the Order cannot establish an administrative expense bar date for any prepetition actions by UAW for UAW-represented employees, because those claims are administrative expense claims pursuant to the ACR Order.  <u>UAW Obj.</u> ¶ 5. | With respect to UAW's joinder in paragraphs 16–22 of the SEIU Objection, the Oversight Board refers to its reply to the SEIU Objection, above.

Further, UAW's prepetition actions are not entitled to treatment as an administrative expense because they do not meet the statutory requirements for such treatment set forth in 11 U.S.C. section 503.  The ACR Order—which allows for the resolution and payment of certain claims using the Commonwealth's administrative processes—does not purport to authorize the allowance and payment of administrative expenses pursuant to 11 U.S.C. section 503, and UAW points to no provision of the ACR that states otherwise. |
| International Union, UAW [ECF No. 18558] (the "<u>UAW Objection</u>") | The Plan should not reduce AEELA pension benefits because they are fully reimbursable.  <u>UAW Obj.</u> ¶ 7. | Act 106-2017 provides the Commonwealth is responsible for payment of all pension obligations of all employers in the ERS plan.  Non-Commonwealth employers must then reimburse the Commonwealth for pensions payments to their respective retirees, but the obligation to all retirees rests with the Commonwealth and that obligation is subject to restructuring regardless of the possibility of reimbursement from third parties.  If AEELA wishes to pay its retirees the amount of any Monthly Benefit Modification incurred by them, it is free to do so. |
| Quest Diagnostics of Puerto Rico [ECF No. 18560] (the "<u>Quest Diagnostics Obj.</u>") | The Plan should not release Quest's counterclaims and defensive rights in connection with the Oversight Board's avoidance action in which Quest is a defendant.  <u>Quest Diagnostics Obj.</u> ¶¶ 17–24. | The Plan is not intended to provide third party releases.  To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and confirmation order to reflect that intention. |
| Finca Matilde, Inc. [ECF No. 18566] (the "<u>Finca Objection</u>") | The Plan was not proposed in good faith because it violates the Takings Clause of the Fifth Amendment of the U.S. Constitution.  <u>Finca Obj.</u> at 4. | The Plan's treatment of eminent domain claims does not violate Finca Matilde's or any other claimant's constitutional rights.  *See* Reply Br. ¶¶ 84–85.  Putting aside the constitutional argument, Finca Matilde misconstrues good faith in connection with Bankruptcy Code section 1129(a)(3).  When examining good faith, courts look to whether terms in a Plan are contested but to the likelihood a plan "will achieve a result consistent with the objectives and purposes of the Bankruptcy Code."  *In re City of Detroit*, 524 B.R. at 247–48; *see also* Confirmation Br. ¶¶ 153–55.  Finca Matilde does not, and cannot, point to specific acts showing the Oversight Board proposed the Plan with any intent other than to achieve results consistent with the objectives and purposes of PROMESA Title III.  To the contrary, as discussed in the Confirmation Brief (at ¶ 158), great pains were taken to reach consensus among all relevant parties in a manner that comports with relevant law, and the Plan enjoys overwhelming support.  The fact that the Oversight Board has proposed a Plan treatment that |

| | | Finca Matilde contests does not mean it was proposed in bad faith. Finca Matilde's good faith argument is an attempt to repackage its constitutional argument, and should be rejected. |
|---|---|---|
| Finca Matilde, Inc. [ECF No. 18566] (the "Finca Objection") | The Plan is not in the best interests of claimant because the Constitution of the Commonwealth of Puerto Rico would result in a greater recovery. Finca Obj. at 4. | Even assuming Finca would do better outside of Title III, the best interests of creditors test is a collective one for all creditors of the Commonwealth, which is satisfied here. Confirmation Br. ¶¶ 233–44. |
| Finca Matilde, Inc. [ECF No. 18566] (the "Finca Objection") | The Plan cannot be confirmed because its impairment and discharge of Finca Matilde's claim for just compensation for taking of its property violates the Takings Clause of the Fifth Amendment. The Plan must provide Finca Matilde with 100% recovery on its just compensation claim. Finca Obj. at 11.<br><br>If PROMESA allows a plan of adjustment to impair claims for just compensation, PROMESA violates the U.S. Constitution. Finca Obj. at 10. | Finca Matilde's eminent domain claim is an unsecured claim that is not protected from impairment or discharge by the U.S. Constitution. See Reply Br. ¶ 82. "Just compensation" claims for the taking of property may be impaired and discharged by the Plan. See Reply Br. ¶¶ 84–85.<br><br>Constitutional rights can be impaired under PROMESA. See Reply Br. at (The Constitutional Challenges To The Plan Are Without Merit) |
| Finca Matilde, Inc. [ECF No. 18566] (the "Finca Objection") | Direct and indirect condemnation claims must be classified together because they stem from the same legal authority. Finca Obj. at 17–18. | The Oversight Board has separately classified such claims because the mechanism for payment of the claims is different. Certain claims are partially or fully secured by amounts on deposit, and will be paid in full to the extent of their secured portion, and paid the same as general unsecured claims to the extent of their remaining claim. Thus, a legitimate reasons exists for their separate classification. See Reply Br. ¶¶ 39–42. |
| Internal Revenue Service [ECF No. 18567] (the "IRS Objection") | The Plan must provide for interest on the IRS's administrative expense claims. IRS Obj. at 1. | The IRS will receive the interest to which it is entitled under applicable law, if any, on its administrative expense claims. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | Plan releases are too broad and inappropriately extend to non-debtors. Plan section 92.2(a) impermissibly releases, by their inclusion in the definitions of "Released Parties" and "Related Parties", certain non-debtors including COFINA. Hein Obj. at 1–2. | Except as explicitly agreed-to by creditors in their respective plan support agreements, as reflected in Plan section 92.2(c), the Plan is not intended to release any claims of a creditor of the Debtors, in its capacity as such, against a party that is not a Debtor. To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and confirmation order to reflect that intention. Accordingly, Hein's objection will be resolved. |

| | The plan impermissibly releases non-debtors non-consensually.  Bankruptcy Code section 524(e) expressly limits non-consensual releases. Hein Obj. at 3. | |
|---|---|---|
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The consummation costs and restriction fees paid to plan support agreement parties violate Bankruptcy Code section 1123(a)(4).  Hein Obj. at 4. | As set forth in the Confirmation Brief, the consummation costs and restrictions fees are not treatment of a claim, but are compensation provided to the plan support agreement parties for their obligations undertaken in connection with the agreement.  Confirmation Br. ¶¶ 64–65. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The Plan cannot be confirmed pursuant to PROMESA section 314(b)(3), which requires that the debtor not be "prohibited by law" from taking the actions required by the Plan.  Here, the Puerto Rico Constitution requires full payment of the GO and PBA bonds.  Hein Obj. at 11. | Mr. Hein's PROMESA section 314(b)(3) objection should be overruled, because PROMESA Title III preempts territorial law requirements that debts be paid in full.  Hein's reliance on PROMESA section 314(b)(3) is misguided.  Section 314(b)(3) only states the debtor is not prohibited by "law" from taking any action necessary to carry out the plan.  "Law" necessarily includes PROMESA.  PROMESA, in turn, does not require the Debtors to comply with all Commonwealth law, otherwise no restructuring could occur under Title III of PROMESA, which by definition provides for the impairment of obligations.  This conclusion is consistent with Chapter 9 case law.  By way of example, in *In re Sanitary & Improvement District #7*, 98 B.R. 970, 972 (Bankr. D. Neb. 1989), the debtor proposed a plan of adjustment that would issue new notes at a discounted rate.  Certain bondholders objected to confirmation, arguing that Bankruptcy Code section 943(b)(4)—the Bankruptcy Code counterpart to PROMESA section 314(b)(3))—was not satisfied because state law required bonds to be paid in full, and the new notes would not pay bondholders in full on their prepetition claims.  *Id*. at 973.  The court held that, notwithstanding the state law requiring payment in full, the debtor could impair the bond claims and alter the principal amount, interest rate, and term of the bonds.  *Id*. at 974-75. *See also In re City of Detroit*, 524 B.R. at 211(constitutional provisions requiring full payment of debt preempted by chapter 9). *See also* Confirmation Br. ¶ 195. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The Plan is not in the best interests of creditors because GO and PBA bonds are entitled to payment priority and/or are secured, and thus Puerto Rico law affords them a greater recovery.  Hein Obj. at 12. | Mr. Hein is confusing the best interest test in chapter 11 cases with the one in chapter 9 and PROMESA. The test under PROMESA looks at the recovery of creditors in the aggregate.  As set forth in the Confirmation Brief (at ¶¶ 233–44) and the Reply Brief (at ¶ 35), outside of Title III, all creditors of the Commonwealth recover less on their claims in the aggregate than they would pursuant to the Plan. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The Plan cannot be confirmed because the fiscal plans do not "respect" lawful liens and priorities under PROMESA section 201(b)(1)(N).  Hein Obj. at 14. | PROMESA § 201(b)(1)(N) does not stand in the way of confirmation.  Notably, PROMESA section 201(b)(1) only applies to fiscal plans, not plans of adjustment, and thus does not govern as to whether the Plan should be confirmed.  In any event, PROMESA section 106(e) precludes Mr. Hein from challenging the fiscal plan or whether it complied with the requirements of PROMESA § 201(b)(1).  Moreover, Mr. Hein erroneously equates section 201(b)(1)(N)'s requirement that the fiscal plan "respect" lawful lien and priorities with a requirement to "comply" with those liens or priorities.  Hein Obj. at 14.  Congress twice |

| | | |
|---|---|---|
| | | rejected amendments to section 201(b)(1)(N) which would have obligated the Oversight Board to "comply with" Commonwealth liens. *See* 162 Cong. Rec. H3600-01 (June 9, 2016) (statement of Rep. Grijalva) ("The verb 'respect' was specifically chosen by the drafters . . . . The Committee recognized that the verb 'comply with' was unduly restrictive and that the Oversight Board needed the flexibility afforded by the verb 'respect,' which is more open-ended."). And, indeed, Rep. Grijalva expressly noted how the legislative history cited by Mr. Hein, <u>Hein Obj.</u> at 14, suggesting that fiscal plans must "ensure" liens and priorities are protected, is "incorrect." 162 Cong. Rec. H3600-01 (June 9, 2016) (statement of Rep. Grijalva) (noting "[t]he Committee Report's summary of section 201 is inaccurate in a number of respects," including that it states "Fiscal plans ensure the protection of lawful priorities and liens . . . ."). |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | GO Bonds and PBA Bonds are secured and must be paid in full. <u>Hein Obj.</u> at 7.<br><br>Secured creditors cannot be bound by the votes of other claimants classified in the same Class. <u>Hein Obj.</u> at 22. | As an initial matter, the bond claims held by Mr. Hein are not secured and may be impaired under a plan of adjustment. Reply Br. 66. Moreover, Mr. Hein's bond claims are classified in Classes 7, 16, 31, and 41, all of which have voted to approve the Plan based on preliminary voting results. Accordingly this objection is moot, and Hein is bound to receive the treatment approved by his fellow claimants. *See, e.g.*, *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 187 B.R. 683, 690 (Bankr. D. Col. 1995) ("In Chapter 9, dissenting creditors in an accepting class are bound by the accepting vote of the other members."); *see also In re City of Stockton*, 542 B.R. 261 (B.A.P. 9th Cir. 2015) (same). |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The Court cannot defer to the Oversight Board's certification of fiscal plans or the plan of adjustment, because to do so would make the Oversight Board "a judge in its own case" in violation of the Due Process Clause of the U.S. Constitution, based on *Chrysafis* v. *Marks*, 594 U.S. __ (2021). <u>Hein Obj.</u> at 18. | Deference to the Oversight Board's certification decisions does not violate due process. In *Chrysafis v. Marks*, the Supreme Court held that a statute which (1) empowered a tenant to self-certify that he or she was suffering financial hardship (giving the tenant a complete defense to any eviction action), and (2) precluded the tenant's landlord from either contesting that certification or even having a hearing before a court, violated the Due Process Clause. *See Chrysafis v. Marks*, 210 L. Ed. 2d 1006 (Aug. 12, 2021). The facts here are totally different: the Oversight Board has not and cannot issue a certification that simply determines the Plan should be confirmed, nor does PROMESA deprive creditors, such as Mr. Hein, from objecting to the Plan and being heard at the confirmation hearing. PROMESA section 106(e) simply precludes challenges to the Oversight Board's certification of fiscal plans and budgets, none of which are determinative of all the issues as to whether the plan should be confirmed. As this Court as held before, the Fiscal Plan is just a blueprint and does not by itself impair creditors rights. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 583 B.R. 626, 632 (D.P.R. 2017) (fiscal plans "provide blueprints for revenues, expenses, debt, and capital resources," but are not self-executing). As a result, the Oversight Board is not a judge in its own case and PROMESA does not violate the Due Process Clause. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The Plan is not proposed in good faith because the settlements in the PSAs are the product of a "confidential mediation- | The mediation team, and not the Oversight Board, determined the mediation process. *See* Zelin Decl. ¶ 33. The members of the mediation team did not render binding decisions, and all stakeholders with standing have the opportunity to challenge the settlements. |

| | | |
|---|---|---|
| | negotiation process[,]" and individual bondholders could not follow what was happening in the mediation sessions and had "no participation whatsoever in the actual negotiation of the deal." Hein Obj. at 18–19. | The Plan represents the culmination of months of intensive negotiations and discussions among all parties in interest in an independently driven process by the court-appointed Mediation Team.  Notably, Retail Investors have the opportunity to share in a Retail Support Fee if their class votes in favor of the Plan (based on preliminary voting results, these classes voted to accept the plan and will receive the fees).  All of the parties involved in the formulation of the Plan have acted in good faith, and the Plan has been proposed in good faith. See Confirmation Br. ¶¶ 153–59. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The July 27, 2021 exchange offer (the "Exchange Offer") was an improper solicitation in violation of Bankruptcy Code section 1125(b).  Hein Obj. at 23–24. | After the Disclosure Statement was approved, the Court should not entertain further objections regarding adequacy of information or solicitation—those issues were litigated in connection with approval of the Disclosure Statement and the solicitation procedures.  See Order Denying Motion of Individual Bondholder for an Order Further Extending the Voting Deadline for Retail Investors Seven Days and for Additional Relief to Remedy Problems in the Solicitation Packages and Processes [ECF. No. 18483] (in declining to postpone the voting deadline the Court held "[all parties in interest had an opportunity to assert objections to the proposed Solicitation Procedures when they were proposed by the Oversight Board.  To the extent that Movant contends that subsequent actions by the Oversight Board are inconsistent with the Solicitation Procedures Order or with a fair and orderly voting process, Movant may raise them in an objection to confirmation of the Plan").

In any event, the Exchange Offer was not a solicitation of votes to accept or reject the Plan.  The Exchange Offer provided a mechanism for the issuance of alternate CUSIPs to track parties to the GO/PBA PSA (and any transferees), allowing the GO/PBA PSA Restriction Fee, if the Plan is confirmed and consummated, to be distributed to the appropriate parties.  Any holder of GO Bonds and PBA Bonds was eligible to participate in the Exchange Offer, including individuals that otherwise would be Retail Investors.  While a party who tendered in the Exchange Offer essentially signed a joinder to the GO/PBA PSA, which provides that such party would support the Plan, such party may nonetheless vote to reject the Plan during the solicitation process approved by the Title III Court and forego the GO/PBA PSA Restriction Fee.

Any Retail Investor who did not participate in the Exchange Offer nonetheless had a second opportunity to receive a restriction fee in the form of the Retail Support Fee, if the relevant Retail Investor class accepts the Plan, by making the appropriate Retain Investor certifications during the Plan solicitation process. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The solicitation of votes to accept or reject the Plan pursuant to the Disclosure Statement was improper because (i) it is coercive, as the Retail Support Fee is only available to each class of Retail Investors | The Court has already approved the solicitation procedures, and cannot be challenged again. See [ECF No. 18483].  In any event, the Retail Support Fee does not violate applicable bankruptcy law, see Confirmation Br. ¶¶ 215–17, and the releases are permissible and should be approved.  See Confirmation Br. ¶¶ 311–15. |

| | who vote, as a class, to accept the Plan, Hein Obj. at 24–25, (ii) bondholders have to accept "the overly broad releases, including overly broad releases of non-debtors[,]" Hein Obj. at 25, and (iii) the Disclosure Statement did not provide adequate information. *Id.*. | The adequacy of the Disclosure Statement has also already been litigated and the Title III Court approved the adequacy of the information contained in the Disclosure Statement [ECF No. 17639].  *See also Order Denying Motion of Individual Bondholder for an Order Further Extending the Voting Deadline for Retail Investors Seven Days and for Additional Relief to Remedy Problems in the Solicitation Packages and Processes* [ECF No. 18483]. |
|---|---|---|
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The Plan Supplement was not timely filed. Hein Obj. at 27. | The Plan provides for the filing of a Plan Supplement seven (7) days prior to the October 18, 2021 voting deadline.  The Plan Supplement was filed on October 11, 2021, seven (7) days prior to such deadline.  [ECF No. 18470].  Accordingly, the Plan Supplement was timely filed. Additionally, the Court previously overruled Mr. Hein's objections relating to the timing of the filing of the Plan Supplement in denying his request to further extend the voting deadline.  *Order Denying Motion of Individual Bondholder for an Order Further Extending the Voting Deadline for Retail Investors Seven Days and for Additional Relief to Remedy Problems in the Solicitation Packages and Process* [ECF No. 18483]. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The proposed legislation prescribes "a method of composition of indebtedness" that, pursuant to PROMESA Section 303(1), cannot bind nonconsenting bondholders.  Hein Obj. at 33. | Section 303(1) of PROMESA is an "is an express preemption provision that renders certain territorial laws non-binding on nonconsenting territorial creditors."  *Ambac Assurance Corp. v. Puerto Rico, (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 297 F. Supp. 3d 269, 290 (D.P.R. 2018), *aff'd*, 927 F.3d 597 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 856 (2020).  Such territorial laws include laws that prescribe "a method of composition of indebtedness".  48 U.S.C. § 2163(1).  A "'composition' is an 'agreement between a debtor and two or more creditors for the adjustment or discharge of an obligation for some lesser amount.'"  *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 297 F. Supp. 3d at 290 (quoting *Franklin California Tax–Free Trust v. Puerto Rico*, 85 F. Supp. 3d 577, 597 (D.P.R. 2015)). The contemplated legislation to authorize the issuance of the New Plan Securities does not provide for the adjustment or discharge an obligation "for some lesser amount," it does not cancel and extinguish GO and PBA debt.  Rather, the contemplated legislation, among other things, provides for the issuance of general obligation bonds and the creation of contingent value instruments contemplated by the Plan.  Accordingly, PROMESA section 303(1) does not apply to the contemplated legislation. |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The Commonwealth's Title III case should be dismissed because the Commonwealth is misusing Title III, the Commonwealth has not taken necessary structural reforms, is not paying its GO debt, has not issued audited financials, nor | Mr. Hein's request for the dismissal of the Commonwealth's Title III case, included perfunctorily as the last page of a 35 page objection to confirmation of the Plan, not a motion requesting specific relief or an objection to the Title III petition, is procedurally improper. Moreover, Mr. Hein does not give a single cognizable ground for dismissal of the Title III case, or cite any authority for his argument.  PROMESA section 304(b) only permits the dismissal of a Title III case "[a]fter an[] objection to the petition" is filed, notice is given, a hearing on dismissal is held, and the party seeking dismissal shows "the petition does not meet |

|  |  |  |
|---|---|---|
|  | shown proof of insolvency.  Hein Obj. at 34. | the requirements of [PROMESA Title III]."  PROMESA § 304(b).  Nothing in PROMESA Title III requires the debtor to make structural changes, issue audited financials, show it is insolvent, or do any of the other things mentioned by Mr. Hein, nor has Mr. Hein complied with the other requirements of PROMESA section 304(b). |
| Peter Hein [ECF No. 18575] (the "Hein Obj.") | The waiver of the Bankruptcy Rule 3020(e) stay should not be granted.  Hein Obj. at 35. | The Proposed Confirmation Order will be amended to remove the provision providing for the waiver of the Bankruptcy Rule 3020(e) stay. |
| Miriam E. Lima Colón, Betzaida Feliciano Concepción and Angel L. Méndez González [ECF No. 18583] (the "Creditors Objection") | All claims of equal legal priority must be placed in the same class.  There is no legal character or justification that warrants classification of Creditors' claims as a general unsecured claim and such claims should be paid in full.  Creditors Obj. ¶ 7 | Section 1122(a) does not require that similar claims be placed in the same class. *See* Reply Br. ¶ 38.  To the extent the claimants are correct that their pensions were underpaid by the Commonwealth prior to the Petition Date, it is merely an unsecured claim that is properly classified with the other CW General Unsecured Claims.  As a practical matter, claimants object to the treatment of their claims, which may be adjusted and discharged. *See* Reply Br. ¶¶ 80–91. |
| AMPR [ECF No. 18585; 18757] (the "AMPR Objection") | The Plan is premised on a Fiscal Plan that fails to "provide adequate funding" for public pension systems as required pursuant to PROMESA § 201(b)(1)(C), or for adequate funding of pensions as "essential public services" (PROMESA § 201(b)(1)(B)).  AMPR Obj. ¶¶ 28–33. | The AMPR Objection is not a challenge to the Plan, but rather, an impermissible challenge to the Fiscal Plan.

Part of the Oversight Board's mandate, and an essential step on the path to fiscal responsibility, is the certification of a fiscal plan that shall, among other things, eliminate structural deficits, provide for a sustainable debt burden, provide adequate funding for pension systems, provide for capital expenditures and investments necessary to promote economic growth, and ensure necessary funding for essential public services, while respecting creditors' relative lawful priorities and other rights.  PROMESA § 201(b)(1).  No requirement in section 201(b)(1) is given priority.  The determination is left to the Oversight Board's sole discretion.

Whether a fiscal plan satisfies section 201(b)(1) is a decision that Congress committed to the Oversight Board 's "sole discretion."  PROMESA § 201(c)(3).  And, Congress expressly deprived federal courts of subject matter jurisdiction to review the Oversight Board's certification determinations. *Id.* § 106(e) ("There shall be no jurisdiction in any United States district court to review challenges to the Oversight board's certification determinations under this Act.").  This Court and the First Circuit have repeatedly concluded there can be no review of claims that aspects of a certified fiscal plan fail to comply with section 201(b)(1). *See, e.g., Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 297 F. Supp. 3d at 283 ("PROMESA not only grants the Oversight Board exclusive authority to certify fiscal plans, but it also insulates the Oversight Board's certification determinations, which necessarily rest on determinations that the Section 201(b) requirements have been met, from challenge by denying all federal district courts jurisdiction to review such challenges. |

| | | |
|---|---|---|
| | | *See* PROMESA § 106(e). To be meaningful, denial of jurisdiction to review the certification of the Fiscal Plan thus must be understood [to] preclude the review of claims that particular aspects of the Fiscal Plan are noncompliant with Section 201(b) requirements."). |
| | | The Fiscal Plan's "immunity" from court review does not change at plan confirmation. Pursuant to PROMESA section 314(b), the Court shall confirm the Plan if, among other things, "the plan is consistent with the applicable Fiscal Plan certified by the Oversight Board under title II." PROMESA § 314(b)(7). PROMESA section 314(b)(7) does not permit testing of the fiscal plan or second-guessing of the Oversight Board's certification thereof—it permits the court to consider only whether the Plan is consistent with the certified Fiscal Plan. |
| AMPR [ECF No. 18585; 18757] (the "AMPR Objection") | The Plan is not in the best interests of teachers. AMPR Obj. ¶¶ 34–37. | Even assuming the teachers would do better outside of Title III, the best interests of creditors under PROMESA looks at the aggregate recovery for all creditors of the Commonwealth, which is satisfied here. Reply Br. ¶ 8. |
| AMPR [ECF No. 18585; 18757] (the "AMPR Objection") | The Confirmation Order should expressly incorporate the ACR Order and reference section 82.7 of the Plan, in order to ensure that nothing in the Confirmation Order is interpreted as contrary to the ACR Order. AMPR Obj. ¶ 38. | The Proposed Confirmation Order states that it grants releases "[e]xcept as expressly provided in the Plan . . . ." Proposed Confirmation Order ¶ 49(a). And the Plan expressly provides that "shall transfer Claims in accordance with the terms and conditions of the ACR Order, and, upon transfer, all such Claims shall . . . (b) be paid in full in the ordinary course of business." Plan § 82.7. The Plan further expressly provides that "claims that are eligible to be transferred to or administered through the ACR process and for which no claim was required to be filed (whether or not a proof of claim was filed) . . . shall be administered through the ACR process." *Id.* Accordingly, the Plan already expressly provides that claims subject to the ACR Order will be paid in the ordinary course pursuant to the ACR process, and incorporation of the ACR Order is not necessary. |
| Underwriter Defendants [ECF No. 18587] (the "Underwriter Defendants Objection") | The third-party release of the Underwriter Defendants' defensive rights does not satisfy any of the *Master Mortgage* test. Underwriter Defendants' Obj. ¶¶ 27–37.<br><br>The Plan and Confirmation Order cannot bar defenses to enforcement and rights of setoff and recoupment. Underwriter Defendants' Obj. ¶¶ 22–26. | The Plan is not intended to provide third party releases. To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and Confirmation Order to reflect that intention. |
| Underwriter Defendants [ECF No. 18587] (the "Underwriter | The Plan fails the best interests test if there are non-consensual releases of defensive rights. Underwriter Defendants Obj. ¶¶ 38–43. | Even assuming the Underwriter Defendants would do better outside of Title III and attributing value to the released claims (if any), the best interests test under PROMESA looks at the aggregate recovery for all creditors of the Commonwealth, which is satisfied here. Confirmation Br. at ¶¶ 233–44. |

| Defendants Objection") | | |
|---|---|---|
| DRA Parties [ECF No. 18590] (the "DRA Parties Objection") | The Plan cannot be confirmed because the Act 30-31 Excise Tax Statutes require the transfer of the Act 30-31 Revenues to HTA, the DRA Parties have a valid security interest in those revenues, and the Act 30-31 Excise Tax Statutes are not preempted by PROMESA. DRA Parties Obj. ¶¶ 70–93. | As discussed in the Reply, the DRA Parties do not have any security interest in Act 30-31 Revenues retained by the Commonwealth, nor an administrative expense claim based on their retention. Reply Br. at n.13. As a result, the DRA Parties have no property right or administrative expense claim in the Act 30-31 Revenues and no basis to complain about their use by the Commonwealth. Moreover, the Act 30-31 Excise Tax Statutes are preempted by PROMESA. *See* Confirmation Br. ¶ 285. |
| DRA Parties [ECF No. 18590] (the "DRA Parties Objection") | The Plan is a *sub rosa* Plan for HTA. DRA Parties ¶¶ 110–15. | This objection should be overruled. *See* Reply Br. ¶¶ 108–17. |
| DRA Parties [ECF No. 18590] (the "DRA Parties Objection") | (1) Under Plan section 92.2(a), the Monolines are included in the definition of "Released Parties" because they are PSA Creditors. Accordingly, the Plan seeks to release the DRA's and other creditors' claims against the Monolines. DRA Parties Obj. ¶¶ 127–31.<br><br>HTA and CCDA, among other instrumentalities, are "Related Persons" to the Commonwealth (a "Government Party") and therefore are "Released Parties". Accordingly, pursuant to 92.2(a), the Plan seeks to release the DRA's claims against HTA and the CCDA. DRA Parties Obj. ¶¶ 132–33.<br><br>Because of their inclusion as Related Parties, the Plan seeks to release HTA's and CCDA's claims against other Commonwealth agencies and instrumentalities as well as the Monolines | (1) Except as explicitly agreed-to by creditors in their respective PSAs, as reflected in Plan section 92.2(c), the Plan is not intended to release any claims of a creditor of the Debtors, in its capacity as such, against a party that is not a Debtor. To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and confirmation order to reflect that intention. Accordingly, DRA Parties' objection will be resolved.<br><br>In addition, the Proposed *Order and Judgment Confirming Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 18447, Ex. A] makes clear that the Plan does not release claims by creditors of PSA Creditors where it states:<br><br>" . . . provided, however, that nothing contained in the Plan or this Order is intended, nor shall it be construed, to be a grant of a third-party release of the PSA Creditors, AFSCME, and each of their respective Related Persons by any Creditors of the Debtors." Proposed Confirmation Order ¶ 49(a).<br><br>Neither HTA nor CCDA, nor other instrumentalities of the Commonwealth are "Related Persons" to the Commonwealth and therefore are not "Released Parties" by virtue of being a Related Person to a Government Party. The definition of "Related Persons" in Plan § 1.423 enumerates the entities covered and instrumentalities are nowhere identified. DRA Parties' interpretation is conclusory and they offer no explanation on how any of the entities listed in the Plan § 1.423 can be reasonably interpreted to extend as they assert. |

| | | |
|---|---|---|
| | pursuant to Plan § 92.5. <u>DRA Parties Obj.</u> ¶¶ 134–36.<br><br>(2) The Plan seeks to enjoin prosecution of the foregoing claims that are released under the Plan. <u>DRA Parties Obj.</u> ¶¶ 137–42.<br><br>(3) The Plan seeks to exculpate HTA, CCDA and the Monolines. <u>DRA Parties Obj.</u> ¶ 143.<br><br>(4) The release, injunction, and exculpation provisions do not satisfy the five-factor test set forth in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 937–38 (Bankr. W.D. Mo. 1994). <u>DRA Parties Obj.</u> ¶¶ 144–50. | Because HTA and CCDA are not "Related Persons" to the Commonwealth, they are neither being released as such (pursuant to § 92.2(a)), nor releasing others (pursuant to § 92.5).<br><br>(2) The injunction is not overbroad because it will not extend to the purported releases DRA Parties enumerate, for the reasons stated in the confirmation brief and above.<br><br>(3) The exculpation provisions do not apply to HTA and CCDA because they are not "Related Persons" of the Debtors as explained above. The exculpations for Monolines in their specific capacities as plan support agreement signatories are amply justified. *See* Confirmation Br. ¶¶ 319–23.<br><br>(4) Except as explicitly agreed-to by creditors in their respective plan support agreements, as reflected in Plan section 92.2(c), the Plan is not intended to release any claims of a creditor of the Debtors, in its capacity as such, against a party that is not a Debtor. To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and confirmation order to reflect that intention. Accordingly, this objection will be resolved. |
| DRA Parties [ECF No. 18590] (the "<u>DRA Parties Objection</u>") | The Plan fails PROMESA sections 314(b)(1) and (5) and Bankruptcy Code section 1123(a)(5) because the legislation authorizing the issuance and creation of the securities contemplated by the Plan has not been passed. <u>DRA Parties Obj.</u> ¶ 144. | New GO Bonds Legislation is not required here by PROMESA section 314(b)(5). It is required by the GO/PBA PSA. The Oversight Board does not believe any PROMESA Title III debtor needs legislation to issue new securities under a Title III plan of adjustment. If such legislation is enacted this objection will be moot. |
| DRA Parties [ECF No. 18590] (the "<u>DRA Parties Objection</u>") | The Plan is not feasible nor in the best interests of creditors for three reasons: (i) "the Plan is wholly dependent on" the Oversight Board being able to demonstrate that it is legally entitled to retain clawed back revenues; (ii) issuance of the New GO Bonds and CVIs is subject to legislative approval, which is a condition precedent to the Plan's effectiveness; and (iii) the Plan's economic projections are inaccurate. <u>DRA Parties Obj.</u> at ¶¶ 161–63. | As the DRA Parties state, the Oversight Board need only find that the Plan "offer[s] a reasonable prospect of success and be workable." <u>DRA Parties Obj.</u> ¶ 160 (quoting *In re City of Detroit*, 524 B.R. at 220). Moreover, a feasible plan need not be in balance on the confirmation date of the plan, but instead, "within a reasonable period of time after confirmation of the plan." *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 34 n.46 (Bankr. D. Colo. 1999). The DRA Parties do not take the position that "the Plan lacks sufficient resources to be implemented." *Id.* at n.38. Their other objections fails as well.<br><br>First, as described in the Reply Brief, the Commonwealth is legally entitled to retain Act 30-31 necessary for implementation of the Plan. Reply Br. ¶ 60. |

| | | |
|---|---|---|
| | | Second, the lack of legislative approval of the New GO Bonds and CVI Legislation at this time does not render the Plan infeasible, as either such legislation will be enacted prior to the Effective Date or other steps will be taken to effectuate the transactions under the Plan.<br><br>Third, the additional pension benefits contemplated as discussed in concessions in the October 14, 2021 Letter (as defined in the DRA Parties Objection) do not render the Plan unfeasible. The debt levels and debt services imposed under the Plan (or in any amended Plan) are and will be consistent with the sustainable levels determined by the DSA and the Commonwealth's revenue projections for FY 2021 through FY 2051.  *See* Malhotra Decl. ¶ 59; Murray Expert Report ¶ 78.  The DSA provides a framework for evaluating the Commonwealth's post-confirmation debt burden, but does not mandate a specific amount of debt that may be incurred.  The Oversight Board proposed certain concessions that could be made under the Plan that maintained compliance with the Fiscal Plan.  The Oversight Board explained, "the economic benefits resulting from confirmation of the Plan would allow for certain additional spending." October 14, 2021 Letter at 2.  The DRA Parties provide no evidence why additional spending necessarily renders the Plan unworkable or unfeasible, and their objection is without merit.<br><br>Moreover, as described in the Reply Brief, the additional pension benefits contemplated pursuant to the October 14, 2021 Letter do not mean that the Plan's projections are inaccurate or that the Plan fails the best interests test.  Reply Br. ¶ 34. |
| DRA Parties [ECF No. 18590] (the "DRA Parties Objection") | Plan sections 2.2(a) and 1.258(b) are inconsistent.  Clause (b) in Section 1.258 should be deleted.  DRA Parties Obj. ¶¶ 165–67. | There is no inconsistency between Plan sections 1.258(b) and 2.2(a).  Section 2.2(a) provides for the deemed allowance of the CW/HTA Claims in a certain amount for purposes of allocating the Clawback CVIs among creditors of HTA, PRIFA, and CCDA.<br><br>Section 1.258 of the Plan addresses distribution of Clawback CVIs to HTA creditors and provides that the DRA Parties loan claims against the Commonwealth may be disallowed. |
| DRA Parties [ECF No. 18590] (the "DRA Parties Objection") | The Plan was not proposed in good faith because the DRA Parties were excluded from discussions of the HTA/CCDA PSA, which is incorporated into the Plan, and affects their recoveries and rights as holders of Class 59 CW/HTA Claims as well as their rights and claims under a future HTA plan of adjustment. DRA Parties Obj. ¶ 173. | The HTA/CCDA PSA is the product of hundreds of hours of mediation by the Oversight Board and various parties in interest, and resolves issues regarding the relative rights and priorities of HTA Bondholders and CCDA Bondholders.  *See* Jaresko Decl. ¶ 154. Mediation and negotiations were led by a court-appointed mediation team and involved various creditor constituencies, including certain holders and insurers of HTA Bonds and certain holders and insurers of CCDA Bonds.  *Id.* at ¶ 40.  This settlement was subsequently incorporated into the Plan.  The good faith of the entire process is illustrated in many instances, perhaps most salient being the multitude of creditors that executed the HTA/CCDA PSA. Cumulatively, such parties, which include traditional municipal investors and monoline bond insurers Assured and National, hold, own, beneficially own, or insure approximately an aggregate in excess of $2 |

21

| | | |
|---|---|---|
| | | billion of claims against HTA, including more than 85% of HTA 1968 Bonds, nearly 50% of HTA 1998 Senior Bonds, and nearly 40% of CCDA Bonds.<br><br>The Plan was proposed with the legitimate and honest purpose of maximizing the value for all creditors of the Debtors.  Mediation was open to all interested participants, the Mediation Team, not the Oversight Board, determined the mediation process.  *See* Zelin Decl. ¶ 33.  All of the parties involved in the formulation of the Plan have acted in good faith, and the Plan has been proposed in good faith.  Accordingly, the Plan satisfies Bankruptcy Code section 1129(a)(3). |
| DRA Parties [ECF No. 18590] (the "DRA Parties Objection") | The Plan cannot discharge the DRA's asserted administrative expense claim without consideration, because PROMESA requires the plan pay all administrative expense claims in full on the effective date.  DRA Obj. ¶¶ 174–76.<br><br>The Plan does not provide for the DRA Parties' administrative expense claim, which must be paid in full.  DRA Obj. ¶¶ 153–54. | As discussed in the *Objection of Financial Oversight and Management Board for Puerto Rico to DRA Parties' motion for Allowance of Administrative Expense Claim* [ECF No. 18065], the DRA does not have an administrative expense claim.  But even if it had an administrative expense claim, it would be decided in connection with confirmation of the Plan and would be treated prior to the Effective Date of the Plan.  *Order on Joint Status Report Pursuant to Court Order Dated July 16, 2021, [ECF No. 17387] with Respect to (I) DRA Parties Administrative Expense Claim Motion and (II) DRA Adversary Proceeding* [Adv. Proc. No. 21-00068, ECF No. 25], at 4 (As the Court ordered in the DRA Adversary Proceeding, the parties "shall, with respect to all unresolved issues raised in the DRA Adversary Proceeding, the Dispositive Motions, and/or the Administrative Expense Claim Motion, make the necessary submissions and take all necessary actions in compliance with the Court's scheduling and procedure orders concerning the confirmation proceedings relating to the [Plan] . . . ."). |
| Suiza Dairy Corp. [ECF Nos. 17013; 17526, 18593] (the "Suiza Objection") | The Plan denies just compensation to the claimant as it impairs their constitutional claim for just compensation, in violation the requirements of the Fifth Amendment.  Suiza Obj., ECF No. 1853 at 21–22. | Suiza Dairy Corp.'s claim is an unsecured claim that is not protected from impairment or discharge by the U.S. Constitution.  *See* Reply Br. ¶ 82.  Indeed, Suiza Dairy's claim arises from the purported breach of a settlement agreement by the Commonwealth, and thus is nothing more than a breach of contract claim, unsecured by any security interest.  Even if properly considered a "constitutional" for just compensation, such claims for the taking of property may be impaired and discharged by the Plan.  *See* Reply Br. ¶¶ 84–85. |
| Suiza Dairy Corp. [ECF No. 18593] (the "Suiza Objection") | The Plan is not fair and equitable with respect to claimant's claim because it does not provide for full payment of claimant's Takings claim, which is a secured claim.  Suiza Obj. at 24. | Claimants' Taking claims is not secured, *see* Reply Br. ¶ 82, and in any event, the treatment of Eminent Domain Claims is justified.  *See* Confirmation Br. ¶ 179. |
| Suiza Dairy Corp. [ECF No. 18593] (the "Suiza Objection") | The Plan does not accurately depict Suiza's claim.  Suiza Obj. at 24. | The Plan will be modified to update the amount of Suiza's claim. |

| | | |
|---|---|---|
| Credit Unions [ECF No. 18594] (the "Credit Unions' Objection") | The Plan cannot be confirmed because it calls for the impairment and discharge of the credit unions' taking claims, in violation of the U.S. Constitution, which claims are based on purported fraudulent actions the Commonwealth took to coerce the credit unions to purchase bonds. Credit Unions' Objection at 8. | Credit Unions claim is an unsecured claim that is not protected from impairment or discharge by the U.S. Constitution. *See* Reply Br. ¶ 53.  The Credit Unions' claim, which purportedly arises from fraudulent actions the Commonwealth took when it encouraged Credit Unions to buy bond claims, at most gives rise to tortious or contractual liability—that is, to unsecured, dischargeable claims.  Even assuming that the credit unions have claims for just compensation for the taking of their property, such claims can be impaired and discharged consistently with the U.S. Constitution.  Reply Br. ¶¶ 84–85. |
| Credit Unions [ECF No. 18594] (the "Credit Unions' Objection") | The Credit Unions have a right to adjudication of their claims in Adversary Proceedings 18-00028 and 19-00389, and their claims asserted in such suits should not be discharged.  Credit Unions' Obj. at 16–17.  The Debtors should not be entitled to a discharge for claims arising under fraud, false pretenses, or dishonesty.  Credit Unions' Obj. at 19–21.  The Court has the authority pursuant to Bankruptcy Code section 105 to except the Credit Unions' claims from discharge. Credit Unions' Obj. at 21–23. | As this Court noted in connection with the confirmation of COFINA's plan of adjustment and denying the Credit Unions' similar request in connection therewith, a discharge "is a fundamental component of the Plan and of restructuring proceedings in general."  *Order Denying Credit Unions' Motion Requesting Reconsideration and/or to Alter Judgment on Confirmation of Puerto Rico Sales Tax Financing Corporation of the Third Amended Plan of Adjustment* [Case No. 17-03284, ECF No. 622].  Excepting the Credit Unions' claims from discharge would be contrary to the purposes of PROMESA and the Bankruptcy Code to provide debtors a fresh start. *Id.* at 6 ("the uncertainty presented by the pending litigation after confirmation of a plan would frustrate the purpose of these Title III proceedings and could adversely impact the marketability of new bonds issued pursuant to the Plan.").  Furthermore, excepting their claims from discharge would contravene subordination of the Credit Unions' claims pursuant to Bankruptcy Code section 510(b) by providing *de facto* priority over claims that are impaired and discharged.  *See Reply Memorandum in Support of Defendants Financial Oversight and Management Board for Puerto Rico and Its Members, Commonwealth of Puerto Rico, Puerto Rico Sales Tax Financing Corporation, Puerto Rico Highways and Transportation Authority, Employees Retirement System of the Government of the Commonwealth of Puerto Rico, Puerto Rico Electric Power Authority, and Public Buildings Authority's Motion to Dismiss Second Amended Complaint* [Adv. Proc. No. 18-00028, ECF No. 178] (the "Reply (Credit Union Adversary Proceeding)"), at 30.  The Credit Unions' remaining arguments for an exception to discharge should be overruled for the reasons stated in the Reply (Credit Union Adversary Proceeding).  Specifically, Bankruptcy Code section 523's exception to discharge for false pretenses, false representation, and actual fraud apply only to individual debtors and was not incorporated into Title III of PROMESA.  Reply (Credit Union Adversary Proceeding) at 23, 25.The only exception to discharge applicable in PROMESA is section 944(c) of the Bankruptcy Code (incorporated by PROMESA section 301), which is inapplicable here.  Finally, creating an exception to discharge pursuant to Bankruptcy Code section 105 would be contrary to Congress' intent, who did not incorporate any of the exceptions to discharge in Bankruptcy Code section 523 into Title III.  *See* PROMESA § 301(a).  Section 105 also does |

| | | not authorize a court to create substantive rights that are otherwise unavailable under applicable law.  Reply (Credit Union Adversary Proceeding) at 26-27. |
|---|---|---|
| Credit Unions [ECF No. 18594] (the "Credit Unions' Objection") | The releases and exculpations are impermissibly broad because they extend to additional parties, such as the Related Persons.  Credit Unions' Obj. at 18–19. | As discussed in the Confirmation Brief (at ¶¶ 319–23), the exculpation of the Debtors, the Oversight Board, and AAFAF, and their Related Persons is a reasonable and necessary component of the Plan and appropriately excludes intentional fraud or willful misconduct.  Without such exculpation, key individuals might abandon efforts to assist the Debtors to adjust their debts and consummate the Plan, further delaying and hindering the Debtors' emergence from Title III. Critically, the exculpation provisions in the Plan is appropriately limited to claims related to the Title III Cases, and the formulation, dissemination, implementation, and confirmation of the Disclosure Statement and the Plan, among other things.  Plan § 92.7. Except as explicitly agreed-to by creditors in their respective PSAs, as reflected in Plan section 92.2(c), the Plan is not intended to release any claims of a creditor of the Debtors, in its capacity as such, against a party that is not a Debtor.  To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and confirmation order to reflect that intention.  Accordingly, this objection will be resolved. |
| Credit Unions [ECF No. 18594] (the "Credit Unions' Objection") | The Plan is not consistent with the applicable Fiscal Plan certified by the Oversight Board pursuant to PROMESA section 314(b)(7), because the Fiscal Plan fails to comply with PROMESA section 201(b)(1)(B) and (C).  The Fiscal Plan does not ensure the funding of essential public services or public pension systems.  Credit Unions' Obj. at 23–27. | The Plan provides for the treatment of claims, and does not set policy or appropriate money for public use.  The Credit Unions' confirmation objection based on PROMESA section 314(b)(7) is an attempt to circumvent PROMESA section 106(e)'s jurisdictional bar.  PROMESA section 106(e) bars the Credit Union objection because it directly challenges and implicates the Oversight Board's certification decision and the legal effects thereof.  As this Court previously held, and the First Circuit affirmed, "relief that directly implicate the Oversight Board's certification decisions . . . are directly precluded by Section 106(e) because they challenge the Oversight Board's certification determinations and seek to undo the statutorily-prescribed effect of those determinations."  *Rivera-Schatz v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd.)*, 327 F. Supp. 3d 365, 371 (D.P.R. 2018), *aff'd sub nom. Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 916 F.3d 98, 109, 112–13 (1st Cir. 2019) ("PROMESA's instructions to the Board about certification are not comparable to the types of congressional commands that can prompt 'judicial review independent of [statutory] review provisions.'" (citation omitted) (alteration in original)). Furthermore, the Credit Unions' argument would have the effect of importing the fiscal plan certification standards in PROMESA section 201(b) into the plan of adjustment confirmation standards of PROMESA section 314(b), contrary to Congress' intent.  PROMESA section 314(b)(7) merely requires the Plan be **consistent with** the applicable certified Fiscal Plan (not |

| | | |
|---|---|---|
| | | identical).  As mentioned above, by definition, the Plan would not include the type of information outlined in section 201(b). |
| Community Health Foundation of P.R. Inc. [ECF No. 18604] (the "CHF Objection") | Community Health Foundation of P.R. Inc. ("CHF") asserts it has an entirely postpetition claim for wraparound payments pursuant to an administrative expense motion it filed contemporaneously with its objection.  CHF Obj. at 2.<br><br>Article LX of the Plan, which provides for the treatment of Med Center Claims, which is defined to include CHF's claim, provides for less than full payment of its asserted administrative expense claim.  CHF Obj. at 3–4.<br><br>Accordingly, the Plan (1) fails to satisfy PROMESA section 314(b)(4), (2) improperly impairs CHF's rights and obligations under the federal Medicaid statute, and (3) is not fair and equitable and unfairly discriminates against CHF.  CHF Obj. at 2–5. | The Plan will be modified to resolve CHF's objection.  Specifically, Plan section 1.329 will be amended to strike CHF from the definition of "Med Center".  To the extent CHF is found to have a valid administrative expense claim, the Plan provide for its payment in full pursuant to Plan section 3.1.  CHF's objections will thus be resolved. |
| U.S. Bank as Trustee of PFC Bonds [ECF No. 18631] (the "U.S. Bank PFC Objection") | The Plan unfairly discriminates against the rights of the Trustee on behalf of PFC creditors against the Commonwealth and the GDB by improperly characterizing and disallowing as "appropriation" debt the Trustee's (1) unsecured damage claims against the Commonwealth and OMB, and (2) non-appropriation based claims by the GDB against the Commonwealth (of which the Trustee and PFC are third party beneficiaries).  U.S. Bank PFC Obj. ¶ 1(b). | As explained in the Reply Brief (at ¶¶ 43–46), the PFC Trustee does not hold any general unsecured claims against the Commonwealth, as the PFC Trustee's purported "non-appropriation based claims by GDB against the Commonwealth" are not claims owned by the PFC Trustee against the Commonwealth, but claims owned by GDB based on the Notes.  The PFC Trustee, as a creditor of a creditor, does not have standing to assert GDB's claims.  As this Court previously held, a party lacks prudential standing to appear and be heard in an action where it seeks to assert the rights of another.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 301 F. Supp. at 312 (D.P.R. 2017).<br><br>The PFC Trustee has no claims against the Commonwealth based on the Contracts Clause because, as explained above, it has no contract with the Commonwealth that was impaired.  *See* Reply Br. ¶¶ 43–46.  The PFC Trustee's contracts with PFC remain in place and unchanged.<br><br>The PFC Trustee lacks a Takings Clause claim against the Commonwealth because it has no property rights that were taken.  *See* Reply Br. ¶¶ 43–46.  Any security interest it holds against monies that are actually appropriated and disbursed to PFC is not affected by the Plan.  Since |

| | | those monies were always contingent on appropriations, there has been no taking because no lien had attached. |
| | | Nevertheless, to the extent the PFC Trustee establishes it has an unsecured claim, it will be treated as a general unsecured claim under the Plan. |
| U.S. Bank as Trustee of PFC Bonds [ECF No. 18631] (the "U.S. Bank PFC Objection") | The Plan must clarify that nothing therein will prejudice the claims of the Trustee or PFC against the GDB, the DRA, and the Public Entity Trust.  U.S. Bank PFC Obj. 36. | The Plan is not intended to provide third party releases nor release claims against the GDB, DRA, or Public Entity Trust.  To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and Confirmation Order to reflect that intention. |
| U.S. Bank as Trustee of PFC Bonds [ECF No. 18631] (the "U.S. Bank PFC Objection") | Commonwealth law is not preempted by PROMESA. U.S. Bank PFC Obj. ¶¶ 48–53. | PROMESA preempts Commonwealth law that is conflict with PROMESA.  PROMESA sections 202 preempts any statute that is inconsistent with the budgets certified by the Oversight Board including those that appropriates funds to other public corporations. Confirmation Br. ¶ 288. |
| U.S. Bank as Trustee of PFC Bonds [ECF No. 18631] (the "U.S. Bank PFC Objection") | The Plan is a "back-door" liquidation for the PFC. U.S. Bank PFC Obj. ¶¶ 56–59. | PFC is not a Title III entity, and the only (potential) asset of PFC that is being discharged pursuant to the Plan is PFC's claims (if any) against the Commonwealth.  The discharge of any PFC claim (if any) against the Commonwealth does not affect the relative rights of PFC's creditors among themselves or vis-à-vis PFC.  If U.S. Bank was correct, any discharge of a creditor's claims against a debtor would be a *sub rosa* plan with respect to such creditor because it deprives such creditor of an asset. |
| | | PFC's argument that its voting rights were prejudiced is wrong as a matter of law, as creditors of a (potential) creditor of a debtor are not entitled to vote on a plan of adjustment. Accordingly, U.S. Bank, as creditor of the PFC, which itself is a purported creditor of the Commonwealth, does not have the ability to vote on the Plan.  Further, even if it did have the right to vote, the Class into which its claims (if any) are classified has been deemed to reject the Plan. |
| U.S. Bank as Trustee of PRIFA Bonds [ECF No. 18632; 18634] (the "U.S. Bank PRIFA Objection") | The Plan should be amended to include explicit recognition the payment of fees, costs and indemnity rights of U.S. Bank as Trustee and Fiscal Agent which are owed by PBA/the Commonwealth, and PRIFA are permitted under a settlement agreement with AAFAF, among others. U.S. Bank PRIFA Obj. ¶ 3. | The Oversight Board will discuss amending the Plan and Confirmation Order to recognize the settlement agreement with AAFAF to address this objection. |

| | | |
|---|---|---|
| U.S. Bank as Trustee of PRIFA Bonds [ECF No. 18632; 18634] (the "U.S. Bank PRIFA Objection") | The releases and exculpations in the Plan do not provide a release for the either the PRIFA Trustee or the PBA Fiscal Agent. U.S. Bank thus seeks an order assuring a reserve for any indemnity claims for which the Commonwealth, PBA, or PRIFA may be liable to it as PBA Fiscal Agent or PRIFA Trustee. U.S. Bank PRIFA Obj. ¶ 23. | The Plan is not intended to provide third party releases. To the extent there is any inconsistency between the Plan and that intention, the Debtors intend to modify the Plan and Confirmation Order to reflect that intention. |
| The University of Puerto Rico Retirement System Trust [ECF No. 18573] (the "Trust Objection"). | The Plan improperly classifies the UPR Trust's clams. Trust Objection at 6–7. | The UPR Trust's claim will be transferred into ACR, and thus is not being treated pursuant to the Plan. The Trust Objection is thus resolved. |
| Nilsa Candelario [ECF No. 18663] (the "Candelario Objection") | Ms. Nilsa Candelario objects to the Plan on the grounds that pensioners should not be subject to any cuts and requests that the Plan be amended to adjust payments made to bond holders. Candelario Obj. at 2. | As set forth in the Confirmation Brief, the Plan's treatment of pension claims complies with PROMESA section 314(b), which authorizes the impairment of prepetition debt in accordance with Title III of PROMESA. Further, pursuant to PROMESA section 312, only the Oversight Board may propose a plan of adjustment. PROMESA § 312. |
| The Governor of Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority [ECF No. 18742] (the "AAFAF Objection") | The Monthly Benefit Reduction of certain pensions in the Plan is not required by PROMESA or Chapter 9 of the Bankruptcy Code and will have only a small benefit to the Commonwealth, so it should be removed from the Plan. AAFAF Obj. ¶¶ 21, 22, 25. | The Governor and AAFAF argue that, because pensions *may* be left unimpaired under PROMESA, the Plan *must* so provide. This is not the case. The issue before the Court is whether any provisions of the Plan, including its treatment of pension claims, is impermissible under PROMESA. It is not, and the Governor and AAFAF do not assert otherwise. As set forth in the Confirmation Brief (at ¶¶ 233–44), the Plan is in the best interests of creditors, for which the test under Chapter 9 is a collective one for all creditors of the Commonwealth. |
| Aida Iris Santiago Torres [Not Filed] (the "Santiago Torres Objection") | Aida Iris Santiago Torres has sent a letter to local counsel asserting she does not consent to the Plan. | As Santiago Torres does not state the legal basis for her objection, the Debtors submit such objection should be overruled. |

| Luis Roldan Ruiz [Not Filed] (the "Roldan Ruiz Objection") | Luis Roldan Ruiz has sent a letter to the Oversight Board's counsel expressing outrage at taxpayer burdens related to Commonwealth debt. | The Oversight Board understands the frustration of the residents of Puerto Rico.  The Plan, if confirmed will set Puerto Rico on a trajectory to improve the financial situation for all stakeholders.  The Plan is in the best interest of all creditors and as set forth in the Confirmation Brief, the Plan is feasible.  Confirmation Br. ¶¶ 245–66. |
|---|---|---|
| Antonia Medina Rodriguez [Not filed] (the "Medina Rodriguez Objection") | Antonia Medina Rodriguez has sent a letter to local counsel expressing concern related to their pension and explaining the necessity of preserving their benefits. | As set forth in the Confirmation Brief, the Plan's treatment of pension claims complies with PROMESA section 314(b).  Confirmation Br. ¶¶ 49, 70. |