**Exhibit D**

**Omnibus Reply Chart (Confirmation Order Objections)**

## CONFIRMATION ORDER OBJECTION REPLY CHART

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| Suiza Diary Corp. [ECF No. 18651] (the "Suiza Confirmation Order Objection") | Objects generally to the entry of the Confirmation Order because the proposed Plan is unconfirmable for the reasons stated in the Suiza Objection, among other things.<br><br>Alternatively, Suiza's claim should be excepted from discharge. Suiza Confirmation Order Obj. at 1-2. | Suiza reiterates its objections to the confirmation of the Plan, including, without limitation, that the discharge of Suiza's claim violates the Takings Clause. Suiza's objections are addressed in the chart above (at 22–23) and the Reply Brief (at ¶. 100. |
| Finca Matilde Inc. [ECF No. 18670] (the "Finca Confirmation Order Objection") | Objects to discharge of its claim for the same reasons stated in the Finca Objection. Finca Confirmation Order Obj. at 2-3. | Finca's objections are addressed in the chart above (at 11–12), and the Reply Brief (at ¶ 41). |
| Peter Hein [ECF No. 18647] (the "Hein Confirmation Order Objection") | Objects to the Confirmation Order for the various reasons stated in the Hein Objection. Hein Confirmation Order Obj. at 2, 5-10. | Mr. Hein's various objections to the confirmation of the Plan are addressed in the chart above (at 12–17) and the Reply Brief (at ¶ 51). |
| Peter Hein [ECF No. 18647] (the "Hein Confirmation Order Objection") | Objects to the preemption of various Commonwealth laws, including "Commonwealth good faith and credit pledge statutes", statutes relating to "Commonwealth Guaranty – Public Building Authority Bonds", statutes appropriating Commonwealth revenues for payment of GO and PBA debt, and statutes pertaining to the 1.03% property tax. DRA Confirmation Order Obj. ¶ 3. | The various Commonwealth laws that are preempted by the Plan and the bases for such preemption are discussed in the Confirmation Br. at ¶¶ 271–301. Exhibit A to the Confirmation Brief provides the extent to which such laws are preempted. |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation | Objects to the preemption of Commonwealth laws for the reasons stated in the DRA Objection. DRA Confirmation Order Obj. ¶¶ 10-13. | The various Commonwealth laws that are preempted by the Plan and the bases for such preemption are discussed in the Confirmation Brief at ¶¶ 271–301. Exhibit A to the Confirmation Brief provides the extent to which such laws are preempted. |

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| Order Objection") | | |
| Peter Hein [ECF No. 18647] (the "Hein Confirmation Order Objection") | "First claim" priority debt should be paid first, and the Avoidance Actions Trust and the Pension Reserve Trust should not be funded before such debt is paid. Hein Confirmation Order Obj. at 9 (Confirmation Order ¶¶ 12, 16-18). | The Plan provides for the settlement of various issues related to the GO Bonds and PBA Bonds, which, as discussed in the Confirmation Brief (at ¶ 311–15) are reasonable and should be approved. The treatment provided to Mr. Hein's bond claims satisfies the requirements for confirmation of the Plan, as discussed in the Confirmation Brief. |
| Peter Hein [ECF No. 18647] (the "Hein Confirmation Order Objection") | The exemption from Puerto Rico withholding tax in paragraph 61 of the proposed Confirmation Order should also apply to the New GO Bonds. Hein Confirmation Order Obj. at 10 (Confirmation Order ¶ 61). | Mr. Hein fails to, and cannot, explain why the Plan cannot be confirmed without such a provision. The objection is an attempt to modify the terms of the Plan, in contravention to PROMESA sections 312 (providing that the Oversight Board is the sole party authorized to propose a plan of adjustment) and 313 (providing that only the Oversight Board may modify the Plan). |
| Peter Hein [ECF No. 18647] (the "Hein Confirmation Order Objection") | Objects to paragraph 71 of the proposed Confirmation Order to the extent it contemplates any release or cancellation and extinguishment of existing claims prior to exhaustion of all appellate rights. Hein Confirmation Order Obj. at 10 (Confirmation Order ¶ 71). | Claims against the Debtors are being released pursuant to the Plan and Confirmation Order, rather than any legislation. Nonetheless, paragraph 71 of the proposed Confirmation Order provides that this Court, or a higher court having jurisdiction over an appeal of the Confirmation Order or over a certiorari proceeding in respect of the Confirmation Order, may override the protections in such paragraph. |
| Peter Hein [ECF No. 18647] (the "Hein Confirmation Order Objection") | The Oversight Board should not be authorized to modify the Plan without notice to all bondholders and Court approval of the amendments. Hein Confirmation Order Obj. at 10 (Confirmation Order ¶ 74). | The proposed Confirmation Order already provides that, to modify the Plan before substantial consummation, "the circumstances [must] warrant such modification and the Court, *after notice and a hearing*, confirms such modified plan under the applicable legal requirements." Confirmation Order ¶ 74 (emphasis added); *see also* 11 U.S.C. § 1127(b) (same). |
| Peter Hein [ECF No. 18647] (the "Hein Confirmation | Objects to the waiver of Bankruptcy Rule 3020(e)'s 14-day stay, and requests a stay of the Effective Date of the Plan pending a determination of any timely-filed appeal, or the First Circuit rules on any request for a stay. Hein Confirmation Order Obj. at 11. | The waiver of Bankruptcy Rule 3020(e)'s stay will be removed from the proposed Confirmation Order. However, there is no cause to reduce the stay of the Confirmation Order. Like any other appellant, Mr. Hein must comply with and satisfy applicable law regarding the |

2

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| Order Objection") | | imposition of a stay, including the requisite posting of an appropriate bond. |
| | | The Oversight Board will demonstrate the overwhelming support for the Plan in the vote tabulation report to be filed. Furthermore, the various plan support agreements with bondholders and monoline insurers, the Creditors Committee, the Retiree Committee, and AFSCME demonstrate the tremendous steps made by various significant stakeholders to coalesce around a plan of adjustment that will allow the Debtors to exit Title III and move toward a path to achieve fiscal responsibility and access to the capital markets. |
| | | The Debtors cannot begin preparations for the occurrence of the Effective Date of the Plan without the protections of the Confirmation Order (e.g., paragraph 71 of the Confirmation Order). Such delay may jeopardize the ability of the Debtors to consummate the Plan, especially given the evolving uncertainties of the COVID-19 pandemic that delayed the Debtors' original confirmation schedule and required the Debtors to negotiate new plan terms. Further, the plan support agreements may require the payment of a $100 million fee to creditors if the outside date of January 31, 2022 is reached. |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | Paragraphs 3(E)-(K), 9, and 11 are premature because no legislation has been enacted. DRA Confirmation Order Obj. ¶¶ 14-17. | Given the evolving nature of the passage of the bond legislation, the Court can address the issue at confirmation, and appropriate revisions can be made following the conclusion of the Confirmation Hearing. |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | The discharge, release, exculpation, and injunction provisions are overbroad and impermissible for the reasons stated in the DRA Objection. DRA Confirmation Order Obj. ¶¶ 18-28. | The DRA's objections to the discharge, release, exculpation, and injunctions under the Plan are addressed in the Confirmation Brief (at ¶ 285) and chart above (at 20). |

3

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | The proposed Confirmation Order should be revised to provide that the DRA Administrative Expense Claim, DRA Adversary Proceeding, and DRA Amended Lift Stay Motion are not being compromised, resolved, or discharged. DRA Confirmation Order Obj. ¶¶ 29-33. | As the Court previously indicated, the various issues related to the DRA will be decided in connection with confirmation of the Plan. *Order on Joint Status Report Pursuant to Court Order Dated July 16, 2021*, [ECF No. 17387] with Respect to *(I) DRA Parties Administrative Expense Claim Motion and (II) DRA Adversary Proceeding* [Adv. Proc. No. 21-00068, ECF No. 25], at 4 (As the Court ordered in the DRA Adversary Proceeding, the parties "shall, with respect to all unresolved issues raised in the DRA Adversary Proceeding, the Dispositive Motions, and/or the Administrative Expense Claim Motion, make the necessary submissions and take all necessary actions in compliance with the Court's scheduling and procedure orders concerning the confirmation proceedings relating to the [Plan] . . . ."). Accordingly, such revision is unnecessary. |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | The Disputed Claims Holdback should be revised to provide for payment of any DRA administrative expense claim. DRA Confirmation Order Obj. ¶ 34. | As mentioned in the *Objection of Financial Oversight and Management Board for Puerto Rico to DRA Parties' motion for Allowance of Administrative Expense Claim* [ECF No. 18065], the DRA does not have an administrative expense claim. But, even if it had an administrative expense claim, it would be decided in connection with confirmation of the Plan (as described in the row immediately above), and would be treated prior to the Effective Date of the Plan. |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | Treatment of the PBA/DRA Secured Claims should be clarified so that treatment will be based on the outcome of the PBA Adversary Proceeding. DRA Confirmation Order Obj. ¶¶ 35-37. | If the Court does not determine the secured status of the PBA/DRA Secured Claims at or before confirmation, the Confirmation Order can be modified to provide that the Oversight Board, Commonwealth, PBA, and the Oversight Board will covenant not sell the buildings in which the DRA Parties claim a security interest in the sale proceeds thereof, or if such buildings are sold prior to the Court's determination, the monies will be put in escrow. |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation | The proposed Confirmation Order should make clear that the filing of a motion for allowance of an administrative expense claim on or before the administrative claim bar date shall be deemed to have timely filed a proof of administrative expense claim. DRA Confirmation Order Obj. ¶¶ 38. | The Confirmation Order will be modified to provide that any motion for payment of an administrative expense pending as of the entry of the Confirmation Order is deemed to be a timely filed administrative proof of claims; provided, however, that any subsequent requests for payment of |

4

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| Order Objection") | | administrative expenses must be filed as an administrative expense proof of claim. |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | Interim distribution of HTA assets and paying of structuring fees are not permissible and provide for a *sub rosa* HTA plan, as discussed in the DRA Confirmation Objection. DRA Confirmation Order Obj. ¶¶ 39-40. | The DRA's objections regarding the distribution of HTA assets, structuring fees, and *sub rosa* plan are addressed in the Reply Brief (at ¶ 108), and chart above (pp. 19). |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | Claims against the Commonwealth based on the retention of clawed-back revenues cannot be discharged for the reasons stated in the DRA Confirmation Objection. DRA Confirmation Order Obj. ¶¶ 41-44. | The DRA's objection to discharge is addressed in the Confirmation Brief (at ¶ 114) and chart above (pp. 22). |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | The Confirmation Order should provide for Takings Clause claims to be unimpaired or excepted from discharge. DRA Confirmation Order Obj. ¶¶ 45-46. | The DRA's objection to discharge of Takings Clause claims is addressed in the Reply Brief (at ¶ 59), and chart above (pp. 22). |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | PROMESA section 407(a) claims should not be released for the reasons stated in the DRA Confirmation Objection. DRA Confirmation Order Obj. ¶¶ 47-49. | As a preliminary matter, the DRA Parties' Objection to the Plan fails to, even once, mention the existence of any PROMESA section 407 claim, and the DRA Parties have not asserted the existence of such a claim in hundreds of pages of briefing they have filed relating to their purported claims. The DRA Parties' Confirmation Order Objection should be rejected on this basis alone. <br><br> Moreover, as discussed in the Reply Brief, the DRA Parties do not have any security interest in Act 30-31 Revenues retained by the Commonwealth, nor an administrative expense claim based on their retention. Reply Br. at n. 13. The Act 30-31 Revenues are property of the Commonwealth, as briefly discussed in the Reply Br. (at ¶ 61), and more |

5

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| | | fulsomely in the DRA Adversary Motion to Dismiss, and as a result no PROMESA section 407 claim could have arisen in favor of the DRA Parties. Moreover, the Act 30-31 Excise Tax Statutes are preempted by PROMESA. *See* Confirmation Br. ¶¶ 285–88. Accordingly, no section 407 claims could exist, and thus DRA Parties' Objection to the Confirmation Order should be overruled.<br><br>Furthermore, the Oversight Board has thoroughly briefed elsewhere why the retention of the Act 30-31 Revenues does not give rise to any PROMESA section 407 claim. *See* Case No. 20-ap-0005-LTS, [ECF No. 56 at 62–71], [ECF No. 102 at 56–73]. The Board incorporates these arguments by reference.<br><br>In any event, the DRA Parties give no reason, other than simple assertion, why PROMESA section 407 claims could not be released by the Plan and Confirmation Order. Even if such claims exist, they can be released like any other claim.<br><br>The DRA Parties' objections to the releases under the Plan are address in the Confirmation Brief (at ¶ 302) and chart above (pp. 19–20). |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation Order Objection") | Parties in interest "affected by the Plan" should be able to enforce the Plan without having to show whether a particular Plan provision "directly affect[s]" its interest. DRA Confirmation Order Obj. ¶ 50. | Limiting enforcement of the Plan to parties in interest directly affected by the applicable Plan provision is appropriate to ensure that only parties that have a stake in the dispute bring an action, , subject to any requirements for such party to have standing to bring such an action.<br><br>Furthermore, the DRA's proposal is untenable as it proposes any party in interest that is "affected" by the Plan be provided standing to enforce the Plan, and would invite parties to bring litigation to extract nuisance value, undermining the fresh start provided by the Plan. |
| DRA Parties [ECF No. 18685 (the "DRA Confirmation | Paragraph 73's provision that nothing in the Confirmation Order is intended, nor shall be construed, to modify the economic terms of the Plan creates unnecessary ambiguity regarding whether the Plan or Confirmation Order governs over any conflict. DRA Confirmation Order Obj. ¶ 51. | Paragraph 73's provisio is necessary to ensure that the settlements reached in the various plan support agreements, and incorporated into the Plan, are not unintentionally modified by the Confirmation Order. Certain parties to the |

6

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| Order Objection") | | plan support agreements required such protection to assure they receive the benefit of their bargain.  See Plan § 92.18. |
| The Governor of Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority [ECF No. 18742] (the "AAFAF Objection") | Confirmation Order paragraph 3(N) provides that, for purposes of PROMESA section 209, "the discharge of debt to occur as of the Effective Date pursuant to the Plan and the Confirmation Order is necessary for the Oversight Board to certify that expenditures do not exceed revenues for the Commonwealth, as determined in accordance with modified accrual accounting standards."<br><br>AAFAF argues that such provision dictates the conditions for the Oversight Board's termination under PROMESA section 209.  AAFAF Obj. ¶ 29. | The Oversight Board will establish at the Confirmation Hearing, that, **as a factual matter**, it will not be able to certify that expenditures do not exceed revenues of the Commonwealth without the discharge and release of prepetition Claims against the Debtors under the Plan.  See Jaresko Decl. ¶ 222.  Termination of the Oversight Board pursuant to PROMESA section 209 requires that the Oversight Board make such certification. |
| The Governor of Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority [ECF No. 18742] (the "AAFAF Objection") | Confirmation Order paragraph 20 provides that the Governor and Legislature shall take any and all actions necessary to consummate the transactions contemplated by the Plan, and the no entity shall implement any law, rule, or other measure the impedes the consummation and implementation of the Plan. (Similar language in Confirmation Order ¶¶ 21, 70).<br><br>AAFAF argues (i) the Confirmation Order cannot be used as an end-run around PROMESA section 303 to force the Government to pass legislation against its will, and (ii) Bankruptcy Code section 1142(b)'s only purpose is to force a debtor to take ministerial actions, and does not permit the Court to force a debtor or third party to take an action unless expressly required by the Plan.  The language broadly requires the Governor to direct the executive branch to implement the Plan as the Oversight Board directs.  AAFAF Obj. ¶¶ 27–28. | PROMESA section 303 is subject to Titles I and II of PROMESA, and section 305 expressly provides for the Court to interfere with political and governmental powers if the Plan provides or the Oversight Board consents.  Thus, nothing could be more appropriate than assuring full cooperation in connection with confirmation and carrying out the Plan.  Contrary to AAFAF's assertion, Bankruptcy Code section 1142(b)'s grant of authority to compel parties to take actions to consummate the plan is not limited to ministerial actions. 8 Collier on Bankruptcy ¶ 1142.03 (16th ed.) ("Section 1142(b) grants courts authority to compel parties to take actions considerably broader than merely ministerial acts. Pursuant to section 1142(b), the court may issue any order necessary for the implementation of the plan.").  Courts have directed parties to take affirmative steps to consummate transactions contemplated in a plan.  See, e.g., In re Sugarhouse Realty, Inc., 192 B.R. 355, 368 (E.D. Pa. 1996) (affirming bankruptcy court order granting motion to compel purchaser to close sale where the **confirmation order** contained language directing parties to consummate the transaction); In re Goldblatt Bros., Inc., 25 C.B.C.2d 953, 132 B.R. 736 (Bankr. N.D. Ill. 1991) (directing retention of firm experienced in searching for missing creditors to find creditors entitled to plan payments).  Courts have also directed |

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| | | parties to refrain from taking actions that would subvert the plan. *See, e.g., In re Krypton Broadcasting of Ft. Pierce, Inc.*, 181 B.R. 657, 666 (Bankr. S.D. Fla. 1995) (director of debtors was under court order to support approval of FCC license transfers critical to consummating the sales approved in the confirmation order; court granted sanctions for violation of such order). |
| | | Accordingly, paragraphs 20, 21, and 70 of the Confirmation Order are necessary to ensure the Plan is implemented, and the cumulative work and substantial costs incurred during the over four years of these Title III cases are not undermined. *See In re Sugarhouse Realty*, 192 B.R. 355, 369 (E.D. Pa. 1996) ("The confirmation process is lengthy and expensive. It is unreasonable to believe the parties involved would expend the time, effort, and funds on such an illusory plan."). |
| The Governor of Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority [ECF No. 18742] (the "AAFAF Objection") | AAFAF argues Confirmation Order paragraph 69 transfers the Oversight Board's powers to enforce the Plan to parties in interest (rather than the Government) after the Oversight Board terminates. Such provision is beyond the scope of PROMESA section 209 and premature because the Oversight Board is not terminating as a result of the Plan. AAFAF Obj. ¶ 29. | PROMESA section 209 only provides for the conditions for the termination of the Oversight Board, and does not dictate the parties that can enforce a Title III plan of adjustment. |
| | | Paragraph 69 of the Confirmation Order provides that, upon termination of the Oversight Board, the Governor shall enforce the Plan. However, if the Governor fails to do so, parties in interest may enforce appropriate Plan provisions. As a practical matter, the Plan would be rendered a nullity if no party could enforce the Plan against the Government. |