# EXHIBIT C

## ASSIGNMENT AND SECURITY AGREEMENT

This ASSIGNMENT AND SECURITY AGREEMENT dated as of August 28, 2013, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**, a public corporation and instrumentality of the government of the Commonwealth of Puerto Rico (the "Authority" or the "Assignor"); and **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**, a public corporation and instrumentality of the government of the Commonwealth of Puerto Rico (the "Bank"), both parties to the Loan Agreement as of the date hereof (as modified, supplemented or amended from time to time, the "Loan Agreement"). All terms not otherwise defined hereof shall have the meanings ascribed to them in the Loan Agreement.

### WITNESSETH

**WHEREAS**, the Authority has requested and obtained from the Bank a non-revolving credit facility in an aggregate principal amount equal to Sixty One Million Eight Hundred Thirty Thousand Dollars ($61,830,000) (the "Loan") pursuant to a Loan Agreement to cover operational costs incurred by the Authority;

**WHEREAS**, pursuant to the Loan Agreement, the principal of and interest on the Loan will be paid from the revenues allocated to the Authority by Act No. 30 and Act No. 31, both approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013 ("Acts 30-2013 & 31-2013"), proceeds from future bond issuances and products of public-private partnerships, as well as revenues of the Authority;

**WHEREAS**, as a condition for the approval of the Loan, the Bank has required the Authority to execute and deliver this Agreement, granting a security interest to the Bank under the laws of Puerto Rico of the revenues generated by Acts 30-2013 & 31-2013 in order to secure the repayment of the Loan and any other amounts owed to the Bank;

**NOW, THEREFORE**, in consideration of the benefits to the Assignor, the receipt and sufficiency of which are hereby acknowledged, the Assignor hereby makes the following representations and warranties to the Bank and hereby covenants and agrees with the Bank as follows:

SECTION 1. **ASSIGNMENT OF REVENUES AND SECURITY INTERESTS**

1.1     Assignment of Revenues. The Assignor hereby absolutely, irrevocably, and unconditionally assigns, conveys and transfers without recourse, to the Bank, and the Bank hereby accepts and assumes without recourse all of the Assignor's rights, title, obligations and interest in the revenues allocated in favor of the Assignor

29914 v.3

by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013.

1.2    Grant of Security Interests. As security for the prompt and complete payment and performance when due of all of its Obligations, the Assignor does hereby assign, pledge and grant to the Bank a continuing security interest, which shall be junior, inferior and subordinate in all respects to the outstanding bonds of the Assignor issued pursuant to the Bond Resolutions, in all of the right, title and interest of the Assignor in the revenues allocated to it by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013, whether presently held or hereafter acquired and wherever located (collectively, the "Collateral"):

1.3    Power of Attorney. The Assignor hereby constitutes and appoints the Bank as its true and lawful attorney, irrevocably, with full power (in the name of Assignor or otherwise) and in its sole discretion, to take any action and to execute any instrument which the Bank may deem necessary or advisable to accomplish the purposes of this Agreement, including to act, require, demand, receive, compound, and give acquaintance for all monies and claims for monies due or to become due to the Assignor under or arising out of the assigned revenues and security hereby granted, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute any proceedings which the Bank may deem to be necessary or advisable in the premises, which appointment as attorney is coupled with an interest.

SECTION 2.  **GENERAL REPRESENTATIONS, WARRANTIES AND COVENANTS**

The Assignor represents, warrants and covenants, which representation warranties and covenants shall survive execution and delivery of this Agreement, as follows:

2.1    Necessary Filings. Upon the filing of a duly completed financing statement in the Puerto Rico Department of State, all filings, registrations and recordings necessary or appropriate to create, protect, and perfect the security interest granted by the Assignor to the Bank hereby in respect of the Collateral have been accomplished and the security interest in the Collateral granted to the Bank pursuant to this Agreement will constitute a valid and enforceable perfected security interest therein, superior and prior to the rights of all other persons therein and subject only to the lien established in Section 1.2 hereof and shall be entitled to all the rights, priorities and benefits afforded to perfected security interests by the Uniform Commercial Code or other relevant law, as enacted in any relevant jurisdiction. The Assignor agrees that from time to time, at its expense, will promptly execute and

29914 v.3

deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that the Bank may reasonably request, in order to perfect and/or protect any lien or security interest granted or purported to be granted hereby or to enable the Bank to exercise and enforce its rights and remedies hereunder or under the Loan Agreement with respect to the Collateral.

2.2   No liens. The Assignor is, and will at all times be, the legal and beneficial owner of the Collateral free and clear from any lien, security interest or other charge or encumbrance, except for the security interest created by this Agreement, and the Assignor shall defend the Collateral against all claims and demands of all persons at any time claiming the Collateral or any interest therein adverse to the Bank. No financing statement, assignment, or other document similar in effect covering all or any part of the Collateral is on file in any recording office.

2.3   Other Financing Statements. There is no financing statement (or similar statement or instrument of registration under the law of any jurisdiction) covering or purporting to cover any interest of any kind in the Collateral except those executed in favor of the Bank and those executed or to be executed as security under the Bond Resolutions.

2.4   Recourse. This Agreement is made pursuant to and upon all the warranties, representations, covenants and agreements on the part of the Assignor contained herein.

2.5   Valid Security Interest. This Agreement creates a valid and perfected security interest in the Collateral, securing the payment of the Obligations, and junior, inferior and subordinate in all respects only to the outstanding bonds of the Assignor issued pursuant to the Bond Resolutions. All filings and other actions necessary or desirable to perfect and protect such security interest have been duly taken, or are being taken contemporaneously with the execution hereof.

2.6.   Consents. No consent of any other person and no authorization, approval or other action by, and no notice to or filing with, any Governmental Authority or regulatory body is required for (i) the grant by the Assignor of the lien and security interest granted hereby or for the execution, delivery and performance of this Agreement and the Loan Agreement by the Assignor, (ii) the perfection or maintenance of the security interest created hereby (including the first priority nature of such security interest), or (iii) the exercise by the Bank of its rights and remedies hereunder.

2.7.   Due Authorization. The execution, delivery, and filing of and performance by the Assignor of this Agreement and the Loan Agreement have been duly authorized by all necessary action of the Assignor's Board of Directors (or equivalent body) and do not and will not (i) contravene any of the Assignor's

organizational or constituting documents, (ii) violate any provision of any applicable law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect, or (iii) result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement, lease, or instrument to which the Assignor is a party or by which it or its properties may be bound or affected, and (iv) the Assignor, to its knowledge, is not in default under any such law, rule, regulation, order, writ, judgment, injunction, decree, determination or award or any such indenture, agreement, lease or instrument.

2.8.    Valid Obligation.    This Agreement is the legal, valid and binding obligation of the Assignor enforceable against the Assignor in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity, regardless of whether enforcement is sought in a proceeding in equity or at law.

SECTION 3.        **REMEDIES AND APPLICATION OF PROCEEDS**

3.1    Remedies.  The Assignor agrees that if any event of default shall have occurred and be continuing regarding the Loan, then and in every such case, subject to any mandatory requirements of applicable law then in effect, the Bank, in addition to any rights now or hereafter existing under applicable law, shall have all rights as secured creditor under the Uniform Commercial Code in all relevant jurisdictions.

3.2    Application of Revenues and Proceeds.  The Revenues assigned and Proceeds acquired under the Collateral shall be applied by the Bank as follows:

(i) to the payment of the outstanding bonds of the Assignor issued pursuant to the Bond Resolutions;

(ii) any and all expenses and fees (including reasonable attorneys' fees) incurred by the Bank in obtaining the Collateral;

(iii) next, any surplus then remaining to the payment of the Obligations in the following order of priority:

(1)    all interest accrued and unpaid owing on the Loan Agreement;
(2)    the principal amount owing on the Loan Agreement;
(3)    the fees then owing to the Bank; and
(4)    all other outstanding Obligations then owing by the Assignor to the Bank;

(iii) if no other Obligation is outstanding, any surplus then remaining shall be paid to the Assignor, subject, however, to the rights of the holder of any then existing lien of which the Bank has actual notice (without investigation);

it being understood that the Assignor shall remain liable to the extent of any deficiency between the amount of the Proceeds and the aggregate amount of the sums referred to in clauses (i) and (ii) of this Section 3.2 with respect to the Bank.

3.3    Remedies Cumulative. No failure or delay on the part of the Bank in exercising any right, power or privilege hereunder or under any other Loan Document and no course of dealing between the Assignor and the Bank shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or under the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder or thereunder. The rights, powers and remedies herein or in the Loan Documents expressly provided are cumulative and not exclusive of any rights, powers or remedies which the Bank would otherwise have. No notice to or demand on the Assignor in any case shall entitle the Assignor to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of the Bank to any other or further action in any circumstances without notice or demand.

3.4    Discontinuance of Proceedings. In case the Bank shall have instituted any proceeding to enforce any right, power or remedy under this Agreement, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Bank, then and in every such case the Assignor and the Bank shall be restored to their former positions and rights hereunder with respect to the Collateral, subject to the security interest created under this Agreement, and all rights, remedies and powers of the Bank shall continue as if no such proceeding had been instituted.

SECTION 4. **INDEMNITY**

4.1    The Assignor agrees to indemnify, reimburse and hold the Bank and its officers, directors, employees and representatives (hereinafter in this Section 4.1 referred to individually as "Indemnitee" and collectively as "Indemnitees") harmless from any and all liabilities, obligations, losses, damages, penalties, claims, actions, judgments, suits, costs, expenses or disbursements, including reasonable attorneys' fees and expenses (for the purposes of this Section 4.1 the foregoing are collectively called "expenses") of whatsoever kind or nature which may be imposed on, asserted against or incurred by any of the Indemnitees in any way relating to or arising out of (i) this Agreement, the Loan Agreement, the Loan Documents or any other document executed in connection herewith, or (ii) any investigation, litigation or other

proceeding (including any threatened investigation or proceeding) relating to the foregoing, and the Assignor shall reimburse each Indemnitee, upon demand for any expenses (including legal fees) reasonably incurred in connection with any such investigation or proceeding, but excluding any such losses, liabilities, claims, damages or expenses incurred by reason of (i) the gross negligence or willful misconduct of the person to be indemnified, or (ii) a breach of a material provision or this Agreement by the person to be indemnified. It is the express intention of the Assignor that each person to be indemnified hereunder shall be indemnified and held harmless against any and all losses, liabilities, claims or damages as limited in the preceding sentence arising out of or resulting from the ordinary, sole or contributory negligence of such person. Without prejudice to the survival of any other obligations of the Assignor hereunder, the obligations of the Assignor under this Section shall survive the termination of this Agreement.

(b)     The Assignor agrees to pay to the Bank, within fifteen (15) Business Days after demand, the amount of any and all reasonable costs and expenses, including the fees and disbursements of its counsel and of any experts and agents, that the Bank may incur in connection with (i) the administration of this Agreement; (ii) the evaluation, appraisal, custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, any of the Collateral, (iii) the exercise or enforcement of any of the rights of the Bank hereunder or (iv) the failure by the Assignor to perform or observe any of the provisions hereof. The Assignor agrees to pay interest on any expenses or other sums payable to the Bank hereunder that are not paid when due at a rate per annum equal to the Default Rate (as defined in the Loan Agreement).

(c)     Without limiting the application of Section 4.1(a) or (b), the Assignor agrees to pay, indemnify and hold each Indemnitee harmless from and against any expenses which such Indemnitee may suffer, expend or incur in consequence of or growing out of any misrepresentation by the Assignor in this Agreement or the Loan Documents or in any statement or writing contemplated by or made or delivered pursuant to or in connection with this Agreement or the documents executed in connection herewith.

4.2     Indemnity Obligations Secured by Equipment Survival. Any amounts paid by any Indemnitee as to which such Indemnitee has the right to reimbursement shall constitute Obligations secured by the Collateral. The indemnity obligations of the Assignor contained in this Section 4 shall continue in full force and effect notwithstanding the full payment of the Note issued under the Loan Agreement and all of the other Obligations, and notwithstanding the discharge thereof.

## SECTION 5. **DEFINITIONS**

5.1    The following terms shall have the meaning herein specified unless the context otherwise requires.  Such definitions shall be equally applicable to the singular and plural forms of the terms defined.

"Agreement" shall mean this Security Agreement, as modified, supplemented or amended from time to time.

"Obligations" shall mean all indebtedness, obligations and liabilities (including, without limitation, guarantees and other contingent liabilities) of the Assignor to the Bank, including any amounts owned on account of outstanding obligations of the Assignor with the Bank and those arising under or in connection with the Loan Agreement, the Note or the Loan Documents.

"Proceeds" shall have the meaning assigned to that term under the Uniform Commercial Code as in effect in the Commonwealth of Puerto Rico on the date hereof or under other relevant law and, in any event, shall include, but not limited to (i) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Bank or the Assignor from time to time with respect to any of the Collateral, (ii) any and all payments (in any form whatsoever) made or due and payable to the Assignor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral by any governmental authority (or any person acting under color of governmental authority) and (iii) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

"Revenues" shall mean all revenues allocated in favor of the Assignor by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013 assigned to the Bank pursuant to this Agreement for the payment of outstanding bonds of the Assignor issued pursuant to the Bond Resolutions and other outstanding Obligations.

"Uniform Commercial Code" shall mean with respect to the Commonwealth of Puerto Rico, the Commercial Transactions Act of Puerto Rico, and with respect to any other jurisdiction, the version of the Puerto Rico Uniform Commercial Code in effect in such jurisdiction.

## SECTION 6. **SECURITY INTEREST ABSOLUTE**.

Except as otherwise expressly provided herein, all rights of the Bank hereunder and the security interest created hereunder, and all Obligations of the

29914 v.3

Assignor hereunder, shall be absolute and unconditional, and shall not be affected or released in any way, irrespective of:

(a)   any lack of validity or enforceability of any Loan Document or any other agreement or instrument relating thereto but only to the extent permitted by applicable law;

(b)   any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations;

(c)   any taking and holding of collateral (which term for purposes of this Agreement includes, but is not limited to, the Collateral) or additional guaranties for all or any of the Obligations; or any amendment, alteration, exchange, substitution, transfer, enforcement, waiver or subordination of any collateral or such guaranties; or the termination, release or non-perfection of any collateral (other than with respect to the Collateral) given by the Assignor to the Bank, or such guaranties or any consent to departure from any security agreement or guaranty with respect thereto;

(d)   any manner of application of any of the Collateral, or proceeds thereof, to all or any of the Obligations, or the manner of disposition of any of the Collateral;



(e)   any consent by the Bank to (A) the change, restructuring or termination of the corporate structure or existence of any Assignor, and (B) any corresponding restructuring of, or any other restructuring or refinancing of, the Obligations or any portion thereof;

(f)   any modification, compromise, settlement or release by the Bank or, by operation of law or otherwise, collection or other liquidation of the Obligations or the liability of the Assignor, or of any Collateral, in whole or in part; or

(g)   to the extent permitted by law, any other circumstance (including, but not limited to, any statute of limitations) that might otherwise constitute a defense available to, or a discharge of, the Assignor, other than indefeasible payment in full in cash of the Obligations.

## SECTION 7.   **MISCELLANEOUS**

7.1   <u>Notices</u>.   All notices and other communications hereunder shall be made at the addresses, in the manner and with the effect provided in Section 20 of the Loan Agreement.

29914 v.3

7.2     Waiver; Amendment.    None of the terms or provisions of this Agreement may be altered, modified, waived or amended except by an instrument in writing, duly executed by the Bank and the Assignor.

7.3     Obligations Absolute.    The obligations of the Assignor under this Agreement shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including, without limitation:    (i) any renewal, extension, amendment or modification of, or addition or supplement to or deletion from, any of the Loan Documents or any other instrument or agreement referred to therein, or any assignment or transfer of any thereof, (ii) any waiver, consent, extension, indulgence or other action or inaction under or in respect of this Agreement or any of the Loan Documents, or any exercise or non-exercise of any right, remedy, power or privilege under or in respect of this Agreement or any of the Loan Documents; (iii) any furnishing of any additional security to the Bank or any acceptance thereof or any sale, exchange, release, surrender or realization of or upon any security by the Bank; or (iv) any invalidity, irregularity or unenforceability of all or part of the Obligations or of any security therefor, to the extent permitted by law.

7.4     Successors and Assigns.    This Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective successors and assigns of the parties hereto; provided, however, that the Assignor may not assign or transfer any of its rights or obligations hereunder without the prior written consent of the Bank.    All agreements, statements, representations and warranties made by the Assignor herein or in any certificate or other instrument delivered by the Assignor or on its behalf under this Agreement shall be considered to have been relied upon by the Bank and shall survive the execution and delivery of this Agreement and the Loan Documents regardless of any investigation made by the Bank or on its behalf.

7.5     Headings Descriptive.    The headings of the several sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

7.6     Governing Law.    This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and be governed by the law of the Commonwealth of Puerto Rico.

7.7     Termination; Release.    After the termination of all obligations under the Loan Agreement, and when all Obligations have been paid in full, this Agreement shall terminate, and the Bank, at the request and expense of the Assignor, will execute and deliver to the Assignor the proper instruments including Uniform

29914 v.3

Commercial Code termination statements acknowledging the termination of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed and delivered by their duly authorized officers on August 28, 2013.

| | |
|---|---|
| **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** | **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** |

Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

Javier E. Ramos Hernández
Executive Director of the Puerto Rico
Highway and Transportation
Authority

Affidavit No. _868_

Recognized and subscribed before me by Javier E. Ramos Hernández as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on August _28_, 2013.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. _870_

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on August _28_, 2013.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

29914

# FIRST AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This FIRST AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of March 31st, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.

## WITNESSETH

**WHEREAS**, on August 28, 2013, the Authority and the Bank executed a Loan Agreement (as amended by means of the First Amendment to Loan Agreement executed on January 31, 2014, and as it may be further modified, supplemented or amended from time to time, the "Loan Agreement") for the total principal amount of SIXTY ONE MILLION EIGHT HUNDRED THIRTY THOUSAND DOLLARS ($61,830,000) (the "Loan") to cover operational costs incurred by the Authority.

**WHEREAS**, pursuant to the Loan Agreement, the sources of payment for the principal and interest on the Loan are the revenues allocated to the Authority by Act No. 30 and Act No. 31, both approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013 ("Acts 30-2013 & 31-2013"), as well as proceeds from future bond issuances, products of public-private partnerships and revenues of the Authority;



**WHEREAS**, as a condition for the approval of the Loan and as required under the Loan Agreement, the parties executed the Assignment and Security Agreement through which the Authority granted a security interest and assigned to the Bank the Revenues to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed to the Bank;

**WHEREAS**, the Authority requested the Bank to provide financial assistance from the Revenues in order to cover its operational costs and expenses during the upcoming months;

**WHEREAS**, in response to the Authority's request, on March 18, 2015 the Board of Directors of the Bank approved Resolution Number 10610 ("Resolution

31483 v.2

10610") authorizing to transfer to the Authority fifty percent (50%) of the Revenues allocated by Acts 30-2013 & 31-2013, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), for a period of three (3) months as of the date of the first transfer of funds to the Authority.

**WHEREAS,** accordingly, the Board of Directors of the Bank also approved under Resolution 10610 to amend the Assignment and Security Agreement in order to authorize the use of a portion of such Revenues to provide the financial assistance requested by the Authority, under the evaluation and authorization of the Bank's Fiscal Agency Area in compliance with the terms and conditions of the Fiscal Oversight Agreement (FOA) in effect between the Bank and the Authority;

**WHEREAS,** pursuant to Resolution Number 2015-18, adopted by the Board of Directors of the Authority on March 30th, 2015, the Authority has authorized to amend the Assignment and Security Agreement;

**NOW, THEREFORE,** in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to execute this First Amendment to Assignment and Security Agreement (the "First Amendment") and therefore agree as follows:

1. Section 3.2 of the Assignment and Security Agreement is hereby amended to read hereinafter as follows:



"3.2    Application of Revenues and Proceeds.   The Revenues assigned and Proceeds acquired under the Collateral shall be applied by the Bank as follows:

(i) to the payment of the outstanding bonds of the Assignor issued pursuant to the Bond Resolutions;

(ii) any and all expenses and fees (including reasonable attorneys' fees) incurred by the Bank in obtaining the Collateral;

(iii) next, any surplus then remaining to the payment of the Obligations in the following order of priority:

(1) all interest accrued and unpaid owing on the Loan Agreement;
(2) the principal amount owing on the Loan Agreement;
(3) the fees then owing to the Bank; and
(4) all other outstanding Obligations then owing by the Assignor to the Bank;

31483 v.2

(a) Notwithstanding the order of priority established in Sub-Section 3.2(iii) above, as of the date of this First Amendment, the Bank shall transfer to the Assignor fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), to cover operational costs and expenses of the Assignor for a period of up to three (3) months as of the date of the first transfer or until June 30, 2015, whichever occurs first.

The first transfer of funds to the Assignor shall be made from any available balance as of the date of the approval of Resolution 10610 existing in the Interest Bearing Account (IBA) maintained at the Bank for the deposit of the Revenues, after any corresponding deductions made for the payment of the outstanding commitments against such Revenues. Such transfer will be subject to the limits established in the previous paragraph of this Sub-Section 3.2(iii)(a).

Each month, the Bank's Fiscal Agency Area will asses and evaluate the Assignor's funding needs to cover its operations and will determine the amount to be transferred for those purposes. The Bank reserves the right to request from the Assignor any additional information prior to any transfer of funds under this Sub-Section 3.2(iii)(a) and all transfers shall be subject to compliance by the Assignor with the Bank's Fiscal Agency Area in compliance with the terms and conditions of the Fiscal Oversight Agreement (FOA) in effect between the Bank and the Authority. The Bank's management may withhold any transfer of funds to the Assignor to be made hereunder if determined necessary to preserve the financial condition and liquidity of the Bank.

(4) any surplus then remaining, if no other Obligation is outstanding, shall be paid to the Assignor, subject, however, to the rights of the holder of any then existing lien of which the Bank has actual notice (without investigation);



it being understood that the Assignor shall remain liable to the extent of any deficiency between the amount of the Proceeds and the aggregate amount of the sums referred to in clauses (i) and (ii) of this Section 3.2 with respect to the Bank."

2. This First Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents not inconsistent with this First Amendment, shall remain in full force and effect.

3

31483 v.2

3. In the event that any provision of this First Amendment is declared to be void or unenforceable, the remainder of this First Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**IN WITNESS WHEREOF,** the Bank and the Authority have caused this First Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

Carmen A. Villar Prados
Executive Director

Affidavit No. 702

Recognized and subscribed before me by Carmen A. Villar Prados as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me. In San Juan, Puerto Rico, on March 31, 2015.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Notary Public

Affidavit No. 703

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me. In San Juan, Puerto Rico, on March 31, 2015.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Notary Public

31483 v.2

4

## SECOND AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This SECOND AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of April 21, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.

## WITNESSETH

**WHEREAS**, the Authority requested the Bank to provide financial assistance from the Revenues allocated by Acts 30-2013 & 31-2013 in order to cover its operational costs and expenses;

**WHEREAS**, on March 18, 2015, the Board of Directors of the Bank approved Resolution Number 10610 ("Resolution 10610") authorizing to transfer to the Authority fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), for a period of three (3) months as of the date of the first transfer of funds to the Authority.

**WHEREAS**, pursuant to Resolution Number 2015-18 adopted by the Board of Directors of the Authority on March 30th, 2015, the Authority authorized its Executive Director to amend the Assignment and Security Agreement in order to proceed with the abovementioned transfer for a period of three (3) months and to execute all documents necessary to carry out the purposes included in Resolution 2015-18;

**WHEREAS**, in accordance with the foregoing, on March 31, 2015, the Bank and the Authority executed a First Amendment to Assignment and Security Agreement.

**WHEREAS**, on April 1, 2015, the Bank made the first transfer of funds to the Authority for the amount of $9,881,088.43. However, as it was originally represented to the management of the Bank, the Authority needed to receive the first transfer of funds to cover certain operational obligations corresponding to the month of March of 2015.

1

31545

**WHEREAS**, the Bank deemed necessary to clarify that the financial assistance approved under Resolution 10610 for a period of three (3) months will be provided for the months of March, April and May of 2015.

**WHEREAS**, on April 15, 2015, the Board of Directors of the Bank approved Resolution Number 10655 ("Resolution 10655") and amended Resolution 10610 to establish that the transfer of funds to the Authority will be provided solely for the months of March, April and May of 2015. Accordingly, Resolution 10655 authorized to further amend the Assignment and Security Agreement to include said terms.

**NOW, THEREFORE,** in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto execute this Second Amendment to Assignment and Security Agreement (the "First Amendment") and agree as follows:

1. The first paragraph of Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement is hereby amended to read hereinafter as follows:

> "(a) Notwithstanding the order of priority established in Sub-Section 3.2(iii) above, as of the date of this First Amendment, the Bank shall transfer to the Assignor fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), to cover operational costs and expenses of the Assignor during the months of March, April and May of 2015."

2. This Second Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Second Amendment, shall remain in full force and effect.

3. In the event that any provision of this Second Amendment is declared to be void or unenforceable, the remainder of this Second Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**[SIGNATURES ON THE NEX PAGE]**

2

31545

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this Second Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO | PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY |
|---|---|
| Jorge A. Clivillés Díaz<br>Executive Vice President<br>and Fiscal Agent | Carmen A. Villar Prados<br>Executive Director |

Affidavit No. 1,028

Recognized and subscribed before me by Carmen A. Villar Prados as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me. In San Juan, Puerto Rico, on April 21, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. 1,029

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me. In San Juan, Puerto Rico, on April 21, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

3

31545

## THIRD AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This THIRD AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of June 16, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.

### WITNESSETH

**WHEREAS**, the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS**, the Authority requested the Bank to provide financial assistance from the Revenues in order to cover its operational costs and expenses. On March 18, 2015, the Board of Directors of the Bank adopted Resolution Number 10610 authorizing to transfer to the Authority fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), for a period of three (3) months as of the date of the first transfer of funds to the Authority.

**WHEREAS**, pursuant to Resolution Number 2015-18 adopted by the Board of Directors of the Authority on March 30th, 2015 ("Resolution 2015-18"), the Authority authorized its Executive Director to amend the Assignment and Security Agreement in order to proceed with the abovementioned transfer for a period of three (3) months and to execute all documents necessary to carry out the purposes of Resolution 2015-18.



**WHEREAS**, in accordance with the foregoing, on March 31, 2015, the Bank and the Authority executed a First Amendment to Assignment and Security Agreement.

1

31699

**WHEREAS**, on April 15, 2015, the Board of Directors of the Bank approved Resolution Number 10655 to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, authorizing to amend the Assignment and Security Agreement to include said terms. Accordingly, on April 21, 2015, the Bank and the Authority executed a Second Amendment to Assignment and Security Agreement.

**WHEREAS**, the management of the Bank recommended to the Board of Directors of the Bank the engagement of FTI Capital Advisors, LLC ("FTI") to perform an assessment of the potential revenue/cost structure of the Authority if a potential concession of the PR-20, PR-52, PR-53 and PR-66 toll roads occurs (the "Services"). FTI's proposed fees and related expenses for the Services are for a total amount of Two Hundred Ninety One Thousand Five Hundred Dollars ($291,500), with a timeline of three weeks or less to complete the Services.

**WHEREAS**, in order for the Authority to reimburse the Bank for FTI's fees and expenses, management also recommended to authorize a withholding of such amounts from the Revenues covered in the Assignment and Security Agreement.

**WHEREAS**, on May 20, 2015, the Board of Directors of the Bank adopted Resolution Number 10686 ("Resolution 10686"), authorizing to amend the existing contract between FTI and the Bank (Contract Number 2015-BGF149) with the purpose of including the Services and increasing the compensation amount by an additional Two Hundred Ninety One Thousand Five Hundred Dollars ($291,500).

**WHEREAS**, in order for the Authority to reimburse the Bank for FTI's fees and expenses, Resolution 10686 authorized the Bank to withhold such amounts from the funds that will be disbursed to the Authority from the Revenues corresponding to the month of May 2015, and to further amend the Assignment and Security Agreement as deemed necessary to proceed with the above.

**NOW, THEREFORE,** in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority hereto execute this Third Amendment to Assignment and Security Agreement (the "Third Amendment") and agree as follows:

1. The Bank will withhold the amount of Two Hundred Ninety One Thousand Five Hundred Dollars ($291,500) from the percentage of Revenues to be transferred to the Authority under Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement corresponding to the month of May 2015. The parties agree that the Bank will conduct such withholding of funds as reimbursement by the Authority for the payment of fees and expenses related to FTI's Services.



2

31699

2. This Third Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Third Amendment, shall remain in full force and effect.

3. In the event that any provision of this Third Amendment is declared to be void or unenforceable, the remainder of this Third Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**[SIGNATURES ON THE NEXT PAGE]**



3

31699

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this Third Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

Carmen A. Villar Prados
Executive Director

Affidavit No. _1,033_

Recognized and subscribed before me by Carmen A. Villar Prados as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on June _16_, 2015.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. _1,034_

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on June _16_, 2015.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

## FOURTH AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This FOURTH AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of July 30, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

**All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.**

## WITNESSETH

**WHEREAS**, the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS**, the Authority requested the Bank to provide financial assistance from the Revenues in order to cover its operational costs and expenses. On March 18, 2015, the Board of Directors of the Bank adopted Resolution Number 10610 authorizing to transfer to the Authority fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), for a period of three (3) months as of the date of the first transfer of funds to the Authority.

**WHEREAS**, pursuant to Resolution Number 2015-18 adopted by the Board of Directors of the Authority on March 30, 2015 ("Resolution 2015-18"), the Authority authorized its Executive Director to amend the Assignment and Security Agreement in order to proceed with the abovementioned transfer for a period of three (3) months and to execute all documents necessary to carry out the purposes of Resolution 2015-18.

**WHEREAS**, in accordance with the foregoing, on March 31, 2015, the Bank and the Authority executed a First Amendment to Assignment and Security Agreement.



31795

1

**WHEREAS**, on April 15, 2015, the Board of Directors of the Bank approved Resolution Number 10655 to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, authorizing to amend the Assignment and Security Agreement to include said terms. Accordingly, on April 21, 2015, the Bank and the Authority executed a Second Amendment to Assignment and Security Agreement.

**WHEREAS**, on May 20, 2015, the Board of Directors of the Bank adopted Resolution Number 10686 ("Resolution 10686"), authorizing to amend the contract between FTI Capital Advisors, LLC ("FTI") and the Bank (Contract Number 2015-BGF149) in order to perform an assessment of the potential revenue/cost structure of the Authority if a potential concession of the PR-20, PR-52, PR-53 and PR-66 toll roads occurs and increase the compensation amount by an additional Two Hundred Ninety One Thousand Five Hundred Dollars ($291,500).

**WHEREAS**, in addition, Resolution 10686 authorized the Bank to withhold from the transfer of funds to the Authority corresponding to the month of May 2015, the amounts necessary to reimburse the Bank for FTI's fees and expenses. Accordingly, on June 16, 2015, the Bank and the Authority executed a Third Amendment to Assignment and Security Agreement.

**WHEREAS**, the Authority has requested the Bank to continue providing such financial assistance to cover its operational costs and expenses until the totality of its outstanding Obligations are transferred to the Puerto Rico Infrastructure Financing Authority ("PRIFA") pursuant to Act 1-2015, as amended.

**WHEREAS**, the Authority currently owes the following amounts to the Bank: (i) $2,940,800 for services provided by FTI under contract number 2014-BGF104; (ii) $352,958.66 for services provided by FTI under contract number 2015-BGF149; and (iii) $3,264,807.55 for services provided by Álvarez & Marsal Business Consulting, LLC ("Álvarez & Marsal") under contracts number 2012-BGF124, 2013-BGF087, 2014-BGF044 and 2014-BGF076. The Bank's management recommended withholding the necessary amounts from the monthly transfers to the Authority in order to repay these amounts due to the Bank in a period of three (3) months.

**WHEREAS**, on June 17, 2015, the Board of Directors of the Bank adopted Resolution Number 10729 ("Resolution 10729") authorizing, among other terms and conditions, to continue transferring to the Authority fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), to cover its operational costs and expenses until the totality of the Authority's Obligations are transferred to PRIFA pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues.



2

31795

**WHEREAS**, for the payment of services rendered by FTI and Álvarez & Marsal in benefit of the Authority, Resolution 10729 also authorized the Bank to withhold the necessary amounts from the monthly transfers to the Authority in order to repay the outstanding debt of approximately $6,558,566.21 due to the Bank in a period of three (3) months.

**WHEREAS**, by means of Resolution Number 2015-29 adopted on July 9, 2015, the Board of Directors of the Authority approved to amend the Assignment and Security Agreement in order to continue receiving the financial assistance as described above and authorized the Executive Director of the Authority to execute all documents necessary to carry out its purposes, including any amendments in accordance with any resolution duly adopted by the Board of Directors of the Bank and subject to the Bank's financial advice.

**WHEREAS**, in accordance with the foregoing, the Bank and the Authority agree to further amend the Assignment and Security Agreement to continue providing the financial assistance requested by the Authority and include the abovementioned terms and conditions regarding the authorized withholdings.

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority execute this Fourth Amendment to Assignment and Security Agreement (the "Fourth Amendment") and agree as follows:

1. The Bank agrees to continue transferring to the Assignor fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), to cover operational costs and expenses of the Assignor. The parties agree that such transfers shall be made until all outstanding Obligations owed by the Assignor to the Bank are transferred to PRIFA pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues.

The parties specifically agree that all other terms and conditions established in Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, not inconsistent with the foregoing, shall remain unaltered and in full force and effect.

2. For the payment of the outstanding debt of approximately $6,558,566.21 owed to the Bank regarding services rendered by FTI and Álvarez & Marsal in benefit of the Assignor, the parties agree that the Bank will withhold the necessary amounts from the percentage of Revenues to be transferred to the Assignor under Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as herein amended, to repay such amounts due in a period of three (3) months.



31795

3. This Fourth Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Fourth Amendment, shall remain in full force and effect.

4. In the event that any provision of this Fourth Amendment is declared to be void or unenforceable, the remainder of this Fourth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this Fourth Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

Carmen A. Villar Prados
Executive Director

Affidavit No. 1,038

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, and Carmen A. Villar Prados, as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on July 30, 2015.

Notary Public

MARGUILEAN RIVERA AMILL
ABOGADA-NOTARIA

31795

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982



# FIFTH AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This FIFTH AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of November 10, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

**All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.**

## WITNESSETH

**WHEREAS**, the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS**, on March 31, 2015, the Bank and the Authority executed a First Amendment to Assignment and Security Agreement (the "First Amendment") authorizing to transfer to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, for a period of 3 months as of the date of the first transfer of funds, with the purpose of providing financial assistance to the Authority to cover its operational costs and expenses. The First Amendment was executed pursuant to Resolution Number 10610 adopted on March 18, 2015 by the Board of Directors of the Bank and Resolution Number 2015-18 adopted on March 30, 2015 by the Board of Directors of the Authority.

**WHEREAS**, on April 15, 2015, the Board of Directors of the Bank approved Resolution Number 10655 to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, authorizing to amend the Assignment and Security Agreement to include said terms. Accordingly, on April 21, 2015, the Bank and the Authority executed a Second Amendment to Assignment and Security Agreement.

**WHEREAS**, on May 20, 2015, the Board of Directors of the Bank adopted Resolution Number 10686 authorizing the Bank to withhold from the transfer of funds to the Authority corresponding to the month of May 2015, the amounts necessary to

1

reimburse the Bank for the payment of FTI Capital Advisors, LLC's ("FTI") fees and expenses, among other terms and conditions. Accordingly, on June 16, 2015, the Bank and the Authority executed a Third Amendment to Assignment and Security Agreement.

**WHEREAS**, on July 30, 2014, the Bank and the Authority executed a Fourth Amendment to Assignment and Security Agreement (the "Fourth Amendment") to: (i) continue transferring to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, to cover its operational costs and expenses until the totality of the Authority's Obligations are transferred to the Puerto Rico Infrastructure Financing Authority pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues; and (ii) to withhold the necessary amounts from the monthly transfers to the Authority in order to repay in a period of 3 months the outstanding debt of approximately $6,558,566.21 due to the Bank for services rendered by FTI and Álvarez & Marsal Business Consulting, LLC in benefit of the Authority.

**WHEREAS**, the Fourth Amendment was executed pursuant to Resolution Number 10729 adopted on June 17, 2015 by the Board of Directors of the Bank and Resolution Number 2015-29 adopted on July 9, 2015 by the Board of Directors of the Authority ("Resolution 2015-29").

**WHEREAS**, on September 23, 2011, the Bank and the Authority executed a Loan Agreement providing the Authority a loan in the amount of $400,000,000 (the "FRN Loan") to finance the purchase of certain of the Authority's Transportation Revenue Refunding Bonds, Series N (the "FRNs"), which were purchased by the Bank from Citibank, who negotiated the repurchase of the FRNs from holders.

**WHEREAS**, to secure repayment of the FRN Loan, the Authority delivered the FRNs to the Bank to be held as collateral for the FRN Loan and certain other loans provided by the Bank to the Authority.

**WHEREAS**, on August 29, 2013, the Authority repaid the FRN Loan with the proceeds of a bond anticipation note sold to RBC Capital Markets Inc. Notwithstanding, rather than cancelling the FRNs at the time of the issuance of said bond anticipation note, the FRNs were in turn pledged by the Authority to the Bank as collateral for the repayment of a portion of other unsecured loans of the Authority pursuant to an Amended and Restated Pledged, Custody and Security Agreement (the "Pledge Agreement") executed among the Authority, the Bank and The Bank of New York Mellon ("BNYM"), as custodian.

**WHEREAS**, MBIA Insurance Corporation and Ambac Assurance Corporation each insure a portion of the FRNs and have requested that the FRNs be cancelled in



2

accordance with the provisions of the Authority's Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "1998 Resolution"), which requires that bonds purchased by the Authority be delivered to the fiscal agent for cancellation.

**WHEREAS**, on November 9, 2015, the Bank, the Authority and BNYM executed a Termination Agreement (the "Termination Agreement"), pursuant to Resolution Number 10837 adopted on October 28, 2015 by the Bank's Board of Directors ("Resolution 10837"), and by which the Bank released its lien on the FRNs and terminated the Pledge Agreement.

**WHEREAS**, Resolution 10837 also authorized to further amend the Assignment and Security Agreement to withhold a quarterly amount of $750,000 from the up to $10,000,000 monthly transfers to the Authority from the Revenues. Each quarter, such withheld amount will be applied by the Bank for the payment of a portion of outstanding loans of the Authority in lieu of the payment that was previously received from the FRNs.

**WHEREAS**, in addition, Resolution Number 2015-29 authorized the Executive Director of the Authority to execute all documents necessary to carry out its purposes, including any amendments in accordance with any resolution duly adopted by the Board of Directors of the Bank and subject to the Bank's financial advice.



**WHEREAS**, in accordance with the foregoing, the Bank and the Authority agree to further amend the Assignment and Security Agreement to include the abovementioned terms and conditions regarding the authorized quarterly withholding in the amount of $750,000 from the funds to be transferred to the Authority, and to apply such funds for the payment of a portion of any other outstanding loans of the Authority with the Bank.

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority execute this Fifth Amendment to Assignment and Security Agreement (the "Fifth Amendment") and agree as follows:

1. In lieu of the payments previously received by the Bank from the now released FRNs, the parties agree that the Bank will withhold a quarterly amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) from the percentage of Revenues to be transferred to the Assignor under Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, for the payment of a portion of any other outstanding loans of the Authority with the Bank.

3

32075

2. The parties specifically agree that all other terms and conditions established in Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, not inconsistent with the foregoing, shall remain unaltered and in full force and effect.

3. This Fifth Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Fifth Amendment, shall remain in full force and effect.

4. In the event that any provision of this Fifth Amendment is declared to be void or unenforceable, the remainder of this Fifth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**IN WITNESS WHEREOF,** the Bank and the Authority have caused this Fifth Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.



**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

_____
Karolee García Figueroa
Executive Vice President
and Chief Operating Officer

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

_____
Carmen A. Villar Prados
Executive Director

Affidavit No. 1,051

Recognized and subscribed before me by Karolee García Figueroa, as Executive Vice President and Chief Operating Officer of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, and Carmen A. Villar Prados, as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on November 10, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

## SIXTH AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This SIXTH AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of January 19, 2016, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

**All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.**

## WITNESSETH

**WHEREAS**, the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS**, on March 31, 2015, the parties executed a First Amendment to Assignment and Security Agreement (the "First Amendment") authorizing to transfer to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, for a period of 3 months as of the date of the first transfer of funds, with the purpose of providing financial assistance to the Authority to cover its operational costs and expenses. The First Amendment was executed pursuant to Resolution Number 10610 adopted on March 18, 2015 by the Board of Directors of the Bank and Resolution Number 2015-18 adopted on March 30, 2015 by the Board of Directors of the Authority.

**WHEREAS**, on April 21, 2015, the parties executed a Second Amendment to Assignment and Security Agreement to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, as authorized pursuant to Resolution Number 10655 adopted on April 15, 2015 by the Board of Directors of the Bank.

**WHEREAS**, on June 16, 2015, the parties executed a Third Amendment to Assignment and Security Agreement to withhold from the transfer of funds to the Authority corresponding to the month of May 2015, the amounts necessary to reimburse the Bank for the payment of FTI Capital Advisors, LLC's ("FTI") fees and



32157

1

expenses, among other terms and conditions established in Resolution Number 10686 adopted on May 20, 2015 by the Board of Directors of the Bank.

**WHEREAS**, pursuant to Resolution Number 10729 adopted on June 17, 2015 by the Board of Directors of the Bank and Resolution Number 2015-29 adopted on July 9, 2015 by the Board of Directors of the Authority ("Resolution 2015-29"), a Fourth Amendment to Assignment and Security Agreement was executed by the parties on July 30, 2015 to: (i) continue transferring to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, to cover its operational costs and expenses until the totality of the Authority's Obligations are transferred to the Puerto Rico Infrastructure Financing Authority pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues; and (ii) to withhold the necessary amounts from the monthly transfers to the Authority in order to repay in a period of 3 months the outstanding debt of approximately $6,558,566.21 due to the Bank for services rendered by FTI and Álvarez & Marsal Business Consulting, LLC in benefit of the Authority.

**WHEREAS**, on November 10, 2015, the parties executed a Fifth Amendment to Assignment and Security Agreement in order for the Bank to withhold a quarterly amount of $750,000 from the up to $10,000,000 monthly transfers to the Authority, to be applied for the payment of a portion of outstanding loans of the Authority in lieu of the payment that was previously received from the Authority's Transportation Revenue Refunding Bonds, Series N, among other terms established in Resolution Number 1083 adopted on October 28, 2015 by the Board of Directors of the Bank.

**WHEREAS**, in accordance to Executive Order 2015-046 approved on November 30, 2015 ("EO 2015-046"), the Secretary of Treasury was ordered to, among other dispositions, withhold funds from the revenues assigned to various public corporations for the payment of certain obligations in order to provide the necessary resources for the payment of the public debt, while continuing to provide essential services to protect the health, security, education and public welfare of the people of Puerto Rico. In addition, EO 2015-46 established that said withholding of revenues shall not affect the funds necessary for the operations of these public corporations.

**WHEREAS**, in accordance with the foregoing, the Secretary of Treasury withheld to the Authority the revenues corresponding to November 2015, which were assigned pursuant Section 3060.11 of Act 1-2001, as amended, and Section 2301 of Act 22-2000, as amended, and will continue with such withholdings while EO 2015-046 remains in effect ("Clawback").

**WHEREAS**, along with a portion of the pledged toll revenues generated and collected by the Authority, certain amounts of the monthly transfers to the Authority now retained under the Clawback disposition are, at the same time, used to contribute

2

monthly to the set asides for the payment of the outstanding bonds of the Authority issued pursuant Resolution No. 68-18, adopted by the Authority on June 13, 1968, and Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "Set Asides").

**WHEREAS**, as a result of the Clawback, the Authority will have to send the trustee the totality of the toll revenues since the pledged portion alone is insufficient to meet the full amount of the Set Asides. Consequently, the Authority does not have its two main revenue sources to finance its operating costs and expenses.

**WHEREAS**, the Revenues allocated by Acts 30-2013 & 31-2013 transferred by the Treasury Department to the Bank, from which the Bank transfers to the Authority 50% of the funds, up to a maximum amount of $10,000,000 per month, constitutes the Authority's third main source of income not pledged for the payment of the Bonds issued on 1968 and 1998.

**WHEREAS**, as informed by the Authority to the Board of Directors of the Bank, its operating costs and expenses to provide essential services are approximately $19,700,000 per month. In accordance with the premises established in EO 2015-046 as not to affect the provision of essential services or the funds necessary for the operations of the Authority, as well as to only withhold the resources needed for payment of the public debt, it has been identified as a possible alternative to cover the Authority's operational costs and expenses with the Revenues allocated by Acts 30-2013 & 31-2013, which are transferred by the Department of Treasury to the Bank in accordance with the Assignment and Security Agreement.

**WHEREAS**, the Authority requested the Bank to amend the Assignment and Security Agreement in order to rescind the monthly amount limit of $10,000,000 for the transfers of funds made from the Revenues.

**WHEREAS**, by means of Resolution Number 10888 adopted on December 16, 2015 ("Resolution 10888"), the Board of Directors of the Bank has authorized to continue transferring to the Authority fifty percent (50%) of the Revenues to cover the operational costs and expenses that ensure the provision of essential services as provided in EO 2015-046. Furthermore, Resolution 10888 also authorized to amend the Assignment and Security Agreement in order to rescind the maximum monthly amount cap of $10,000,000, until the Board of Directors of the Bank determines otherwise.

**WHEREAS**, in addition, Resolution Number 2015-29 authorized the Executive Director of the Authority to execute all documents necessary to carry out its purposes, including any amendments to the Assignment and Security Agreement in accordance



3

32157

with any resolution duly adopted by the Board of Directors of the Bank and subject to the Bank's financial advice.

**WHEREAS**, in accordance with the foregoing, the Bank and the Authority agree to further amend the Assignment and Security Agreement to include the abovementioned terms and conditions.

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority execute this Sixth Amendment to Assignment and Security Agreement (the "Sixth Amendment") and agree as follows:

1. The Bank agrees to continue transferring monthly to the Assignor fifty percent (50%) of the Revenues allocated and sent by the Department of Treasury, in order to cover the Assignor's operational costs and expenses that guarantee the provision of essential services in accordance with Executive Order 2015-046. Until the Board of Directors of the Bank determines otherwise, the parties agree that the previous monthly cap of Ten Million Dollars ($10,000,000) established pursuant the Assignment and Security Agreement, as amended, shall be rescinded. Henceforth, the management of the Bank shall evaluate monthly the funding needs of the Authority to cover its operational costs and expenses, and will determine the amount to be transferred for such purposes.

2. The parties specifically agree that all other terms and conditions established in Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, not inconsistent with the foregoing, shall remain unaltered and in full force and effect.

3. This Sixth Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Sixth Amendment, shall remain in full force and effect.

4. In the event that any provision of this Sixth Amendment is declared to be void or unenforceable, the remainder of this Sixth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.



**[SIGNATURES ON THE NEXT PAGE]**

4

32157

**IN WITNESS WHEREOF,** the Bank and the Authority have caused this Sixth Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

<table>
<tr>
<td>

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

</td>
<td>

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

</td>
</tr>
<tr>
<td>

Jorge A. Clivillés Díaz
Executive Vice President
and Director of Administration,
Operations and Comptrollership

</td>
<td>

Carmen A. Villar Prados
Executive Director

</td>
</tr>
</table>

Affidavit No. 1,058

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Director of Administration, Operations and Comptrollership of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, and Carmen A. Villar Prados, as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on January 19, 2016.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

5

32157

ESTADO LIBRE ASOCIADO DE

# PUERTO RICO

Banco Gubernamental de Fomento
para Puerto Rico

## CERTIFICACIÓN

**YO, OLGA L. ORTIZ GUADALUPE**, Secretaria Auxiliar de la Junta de Directores del Banco Gubernamental de Fomento para Puerto Rico, **CERTIFICO** que la **Resolución 10888** es una copia fiel y exacta de la original que se encuentra bajo mi custodia. La misma fue adoptada por la Junta de Directores del Banco Gubernamental de Fomento para Puerto Rico, en reunión debidamente convocada y celebrada el 16 de diciembre de 2015.

**CERTIFICO, ADEMÁS**, que dicha Resolución no ha sido derogada, revocada o anulada y se encuentra en toda su fuerza y vigor.

## RESOLUCIÓN 10888

**AUTORIZA AL BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO (BGF) A ENMENDAR EL *ASSIGNMENT AND SECURITY AGREEMENT* SUSCRITO ENTRE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN (ACT) Y EL BGF PARA ELIMINAR TEMPORALMENTE LA LIMITACIÓN DE LA CANTIDAD MÁXIMA DE $10,000,000 MENSUALES A SER TRANSFERIDA A LA ACT POR CONCEPTO DE FONDOS RECIBIDOS BAJO LAS LEYES 30-2013 Y 31-2013**

**POR CUANTO**, el 28 de agosto de 2013, la Autoridad de Carreteras y Transportación (ACT) y el Banco Gubernamental de Fomento para Puerto Rico (BGF) suscribieron un *Assignment and Security Agreement*, mediante el cual la ACT cedió los recaudos recibidos bajo las Leyes 30 y 31 de 2013 (las "Leyes 30 y 31") para el pago de las deudas que la ACT mantiene, en primer orden, con *RBC Municipal Products, LLP* bajo la emisión de los *Bond Anticipation Notes Serie 2013A* (*BANs 2013A*) y, luego, con el BGF;

**POR CUANTO**, mediante la Resolución 10610 de 18 de marzo de 2015 (la "Resolución 10610"), la Junta de Directores del BGF autorizó transferirle a la ACT el 50% de los fondos transferidos por el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31, hasta un máximo de $10,000,000 mensuales, para cubrir sus costos y gastos operacionales. Las transferencias del BGF a la ACT serían por un período de tres (3) meses contados a partir de la fecha en que se realizara la primera transferencia. El 31 de marzo de 2015, el BGF y la ACT suscribieron la primera enmienda al *Assignment and Security Agreement*;

PO Box 42001
San Juan, PR 00940-2001
Teléfono (787) 722-2525



Junta de Directores del BGF
Certificación de la Resolución 10888
Página 2 de 4
Aprobada el 16 de diciembre de 2015

**POR CUANTO**, la Junta de Directores del BGF, mediante la Resolución 10655 de 15 de abril de 2015, enmendó la Resolución 10610 para, entre otros fines, disponer que las referidas transferencias del BGF a la ACT serían únicamente durante los meses de marzo, abril y mayo de 2015. De conformidad con lo aprobado, el 21 de abril de 2015, el BGF y la ACT suscribieron la segunda enmienda al *Assignment and Security Agreement* para incorporar las disposiciones adoptadas bajo la Resolución 10655;

**POR CUANTO**, la Junta de Directores del BGF, mediante la Resolución 10686 de 20 de mayo de 2015; Resolución 10729 de 17 de junio de 2015 y la Resolución 10837 de 28 de octubre de 2015, realizó ciertas modificaciones al *Assignment and Security Agreement,* que incluyó: (1) la retención de las transferencias mensuales a la ACT de ciertos fondos por concepto de reembolso de servicios profesionales pagados por el BGF en beneficio de la ACT y (2) la retención de la cantidad mensual que dejó de recibir el BGF como resultado de la cancelación de las Notas Serie N de la ACT. El 16 de junio, 30 de julio y 10 de noviembre de 2015, el BGF y la ACT suscribieron la tercera, cuarta y quinta enmienda al *Assignment and Security Agreement*, respectivamente, para incorporar las disposiciones bajo las mencionadas Resoluciones;

**POR CUANTO**, el 30 de noviembre de 2015, el Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Alejandro García Padilla, firmó la Orden Ejecutiva 2015-046 (la "Orden Ejecutiva"), que ordena al Secretario de Hacienda, entre otras cosas, a retener los ingresos asignados a la ACT para el pago de ciertas obligaciones en virtud de la Sección 3060.11 de la Ley 1-2011, según enmendada, y la Sección 2301 de la Ley 22-2000, según enmendada;

**POR CUANTO**, conforme a la Orden Ejecutiva, el Departamento de Hacienda retendrá solamente aquellos recursos que sean necesarios para el pago correspondiente de la deuda pública, mientras se continúa la prestación de los servicios esenciales para proteger la salud, la seguridad, la educación y el bienestar público de los habitantes de Puerto Rico. Establece, además, que dicha retención no afectará aquellos fondos necesarios para la operación de las corporaciones públicas;

**POR CUANTO**, en cumplimiento con las disposiciones de la Orden Ejecutiva, el Departamento de Hacienda retuvo a la ACT ingresos correspondientes a noviembre de 2015, asignados en virtud de la Sección 3060.11 de la Ley 1-2011, según enmendada, y la Sección 2301 de la Ley 22-2000, según enmendada, y continuará dichas retenciones mientras la Orden Ejecutiva esté en vigor (*Clawback*);

**POR CUANTO**, ciertas cantidades de las transferencias mensuales a la ACT por parte del Departamento de Hacienda, se utilizan para contribuir mensualmente a la reserva de pago (*Set Asides*) de la deuda de la ACT, emitida conforme a las Resoluciones de Emisiones de Bonos de 13 de junio de 1968 y 26 de febrero de 1998 ("Bonos '68/'98").

**POR CUANTO**, además de las transferencias efectuadas por el Departamento de Hacienda a la ACT, ésta recibe directamente ingresos propios por concepto de peajes, los cuales también están pignorados para contribuir mensualmente a los *Set Asides* de los Bonos '68/'98;

**POR CUANTO**, los ingresos propios de la ACT por concepto de peajes son insuficientes para satisfacer el monto total mensual de los *Set Asides* y, al no recibir las transferencias mensuales

Junta de Directores del BGF
Certificación de la Resolución 10888
Página 3 de 4
Aprobada el 16 de diciembre de 2015

del Departamento de Hacienda como resultado del *Clawback*, la ACT tiene que enviar al *Trustee* dichos ingresos de los peajes en su totalidad;

**POR CUANTO**, la ACT no cuenta con sus dos fuentes principales de ingresos para financiar los costos y gastos operacionales, al no tener disponibles los ingresos propios por concepto de los peajes ni las transferencias del Departamento de Hacienda por virtud de la Sección 3060.11 de la Ley 1-2011, según enmendada, y la Sección 2301 de la Ley 22-2000, según enmendada;

**POR CUANTO**, la tercera fuente principal de ingresos para la ACT, la cual no está pignorada a los tenedores de los Bonos '68/'98, son los fondos transferidos por el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31, de los cuales, subsecuentemente, 50% son transferidos a la ACT hasta un máximo de $10,000,000 mensuales, conforme al *Assignment and Security Agreement*, según enmendado;

**POR CUANTO**, la gerencia de la ACT le representó a la Junta de Directores del BGF que los costos y gastos operacionales de la ACT para proveer servicios esenciales son aproximadamente $19,700,000 mensuales. Bajo la premisa de la Orden Ejecutiva de no afectar la prestación de servicios esenciales ni aquellos fondos que sean necesarios para la operación de la ACT, así como retener solamente aquellos recursos que sean necesarios para el pago correspondiente de la deuda pública, se identificó como una alternativa cubrir los gastos operacionales esenciales de la ACT con los fondos que sean transferidos por el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31;

**POR CUANTO**, la gerencia de la ACT solicitó al BGF que se enmiende el *Assignment and Security Agreement* para dejar sin efecto la limitación de la cantidad máxima de $10,000,000 mensuales para las transferencias de los fondos provenientes de las Leyes 30 y 31;

**POR CUANTO**, en consideración al historial de las transferencias mensuales efectuadas por el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31 durante el año calendario 2015, y ante la ausencia de alguna iniciativa que pueda alterar dicho comportamiento en un futuro cercano, no se prevé que dejar sin efecto la limitación de la cantidad máxima de las transferencias mensuales afectará significativamente el flujo de fondos destinados al pago de deudas de la ACT con el BGF; y

**POR TANTO, RESUÉLVASE** por la Junta de Directores del Banco Gubernamental de Fomento para Puerto Rico (BGF), autorizar lo siguiente:

1. Continuar la transferencia a la Autoridad de Carreteras y Transportación de Puerto Rico del cincuenta por ciento (50%) de los fondos que transfiera el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31 de 2013 para que la ACT cubra los costos y gastos operacionales que garanticen la prestación de los servicios esenciales, conforme a lo dispuesto en la Orden Ejecutiva 2015-046;

Junta de Directores del BGF
Certificación de la Resolución 10888
Página 4 de 4
Aprobada el 16 de diciembre de 2015

2.  Dejar sin efecto la limitación de la cantidad máxima de $10,000,000 mensuales a ser transferidos por el BGF a la ACT por concepto de las Leyes 30 y 31 de 2013 hasta que la Junta de Directores del BGF determine lo contrario. A esos efectos, se autoriza suscribir la sexta enmienda al *Assignment and Security Agreement* para incluir los términos aquí establecidos.

3.  Los demás términos y condiciones de la Resolución 10610 de 18 de marzo de 2015, según enmendada por las Resoluciones 10655 de 15 de abril de 2015, 10686 de 20 de mayo de 2015, 10729 del 17 de junio de 2015 y 10837 de 28 de octubre de 2015 que no estén en contravención con las disposiciones aquí autorizadas, permanecerán inalterados y en pleno vigor.

**RESUÉLVASE, ADEMÁS,** autorizar a la Presidenta del BGF o cualquier vicepresidente ejecutivo o un vicepresidente designado por éstos a comparecer y suscribir los documentos legales correspondientes para enmendar el *Assignment and Security Agreement* con el propósito de incluir las disposiciones establecidas en la presente Resolución y negociar e incluir aquellos términos y condiciones adicionales que considere necesarios para proteger los intereses del BGF.

**Y PARA QUE ASÍ CONSTE,** suscribo y estampo el sello corporativo del Banco Gubernamental de Fomento para Puerto Rico. En San Juan, Puerto Rico, hoy, miércoles, 30 de diciembre de 2015.

**OLGA L. ORTIZ GUADALUPE**
**SECRETARIA AUXILIAR**

**(SELLO)**

43628

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS



**AUTORIDAD DE CARRETERAS Y TRANSPORTACION**

**RESOLUCION NUM. 2015-29**

**AUTORIZAR A LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN A ENMENDAR UN *ASSIGNMENT AND SECURITY AGREEMENT* CON EL BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO CON EL FIN DE PODER RECIBIR UNA TRANSFERENCIA DE UN 50% DE LOS INGRESOS QUE SE PERCIBEN AL AMPARO DE LA LEYES 30-2013 Y 31-2013, HASTA UNA MÁXIMO DE $10,000,000 MENSUALES, MIENTRAS LA DEUDA DE LA AUTORIDAD CON EL BANCO GUBERNAMENTAL DE FOMENTO NO SE TRANSFIERA FUERA DEL BANCO**

**POR CUANTO:** Mediante la Ley Núm. 41-2014 se creó una Junta de Directores en la Autoridad de Carreteras y Transportación (en adelante la "Autoridad") y se dispuso que los poderes y deberes de la Autoridad serán ejercidos por dicha Junta.

**POR CUANTO:** La Autoridad le solicitó al Banco Gubernamental de Fomento para Puerto Rico (en adelante el "BGF") asistencia financiera para poder enfrentar su problema de flujo de efectivo y así poder seguir sufragando sus operaciones;

**POR CUANTO:** El 28 de agosto de 2013 la Autoridad y el BGF firmaron un *Assignment and Security Agreement* (Contrato de Cesión y Prenda) en virtud del cual la ACT le cedió al BGF los recaudos que ésta se supone perciba bajo las Leyes 30-2013 y 31-2013 (Leyes 30 y 31) en pago de las deudas que la Autoridad tiene con *RBC Municipal Products, LLP* y el BGF;

**POR CUANTO:** Debido a la precaria situación del flujo de efectivo por la cual atraviesa la agencia, ésta necesita ingresar dinero para cubrir los costos y gastos operacionales de la misma;

**POR CUANTO:** La Junta de directores del BGF autorizó enmendar el Contrato de Cesión y Prenda para transferir a la Autoridad el 50% de los fondos que el Departamento de Hacienda le transfiera al BGF de los ingresos de las Leyes 30 y 31, hasta un máximo de $10,000,000 mensuales mientras la deuda de la Autoridad con BGF no se transfiera fuera del Banco.

**POR CUANTO:** Para llevar a cabo dichas transferencias los asesores legales internos de ambas entidades gubernamentales entienden que es necesario enmendar el Contrato de Cesión y Prenda;

**POR CUANTO:** Habiendo evaluado los documentos sometidos, la Junta de Directores acogió los planteamientos esbozados en los mismos;

**POR TANTO: RESUÉLVASE POR ESTA JUNTA DE DIRECTORES:**



1) Aprobar enmendar el Contrato de Cesión y Prenda, firmado por la Autoridad y el BGF el 28 de agosto de 2013, para transferir a la Autoridad el 50% de los fondos que el Departamento de Hacienda le transfiera al BGF de los ingresos de las Leyes 30 y 31, hasta un máximo de $10,000,000 mensuales mientras la deuda de la Autoridad con el BGF no se transfiera fuera del Banco.

2) Autorizar a la Directora Ejecutiva de la Autoridad, Carmen A. Villar Prados, a firmar todos los documentos que sean necesarios para llevar a cabo los propósitos de la presente Resolución, incluyendo cualquier enmienda a los mismos conforme Resolución de la Junta de Directores del BGF a esos efectos y sujeto a su asesoría financiera.

3) Esta resolución tendrá vigencia inmediata.

NOSOTROS, HON. MIGUEL A. TORRES DÍAZ, Presidente de la Junta de Directores, y **LCDA. YASMÍN M. SANTIAGO ZAYAS**, Secretaria de la Junta de Directores de la Autoridad de Carreteras y Transportación, **CERTIFICAMOS** que la que antecede es una Resolución fiel y exacta aprobada por la Junta de Directores en reunión ordinaria celebrada en San Juan, Puerto Rico, a 9 de julio de 2015.

HON. MIGUEL A. TORRES DIAZ
Presidente de la Junta
Secretario, Departamento de Transportación y Obras Públicas

**LCDA. YASMIN M. SANTIAGO ZAYAS**
Secretaria de la Corporación

## CERTIFICACIÓN

Yo, Yasmín M. Santiago Zayas, Secretaria de la Corporación, CERTIFICO que los datos precedentes son copia fiel y exacta de la **Resolución Núm. 2015-29** aprobada por la Junta de Directores de la Autoridad de Carreteras y Transportación el **9 de julio de 2015**, y que la misma, al día de hoy, está en toda fuerza y vigor y no ha sido derogada ni enmendada, ni en todo ni en parte.

En testimonio de lo cual, firmo y estampo el Sello Oficial de la Autoridad de Carreteras y Transportación, hoy **11 de enero de 2016.**

Yasmín M. Santiago Zayas
Secretaria de la Corporación