# EXHIBIT F

CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO**
**LA FORTALEZA**
**SAN JUAN, PUERTO RICO**

**Administrative Bulletin No. OE-2016-018**

**EXECUTIVE ORDER OF THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, HON. ALEJANDRO J. GARCIA PADILLA, UNDER ARTICLES 201 AND 202 OF LAW 21-2016, KNOWN AS THE "PUERTO RICO EMERGENCY MORATORIUM AND FINANCIAL REHABILITATION ACT," TO DECLARE A STATE OF EMERGENCY FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY (THE "HTA") UNTIL JUNE 30, 2016, SUSPENDING THE OBLIGATION OF THE ACT TO TRANSFER OR DEPOSIT IN FINANCIAL INSTITUTIONS OR ANY OTHER ENTITY ACTING AS A FISCAL AGENT ANY REVENUE FROM TOLLS OR ANY OTHER REVENUE RECEIVED, AND AUTHORIZES THE IMPLEMENTATION OF ANY OTHER REASONABLE AND NECESSARY MEASURES FOR THE CONTINUED PROVISION OF ESSENTIAL SERVICES TO PROTECT THE HEALTH, SAFETY, AND WELL-BEING OF THE RESIDENTS OF THE COMMONWEALTH OF PUERTO RICO.**

**WHEREAS:** On April 6, 2016, I signed Law 21-2016, known as the "Puerto Rico Emergency Moratorium and Financial Rehabilitation Act" (the "Law"). The terms that are capitalized in this Executive Order but are not defined herein shall have the meaning assigned to such terms in the Law.

**WHEREAS:** Article 108 of the Law establishes that during the Covered Period the Governor shall prioritize the essential services over the payment of debt not only to provide for the health, security, and well-being of the residents of the Commonwealth of Puerto Rico (the "Commonwealth") but also to avoid further economic contraction and additional fiscal and humanitarian crises which would materially worsen the repayment of Puerto Rico's bondholders.

**WHEREAS:** On April 8, 2016, pursuant to Articles 201 and 203 of the Law, I approved Administrative Bulletin No. OE-2016-10 ("OE-2016-10") to declare a State of Emergency for the Government Development Bank (the "GDB"), stabilize restrictions on withdrawals from the GDB and implement other reasonable and necessary measures to allow GDB to continue carrying on its business operations. On April 30, 2016, under Article 201 and



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

|  |  |
|---|---|
|  | 202 of the Law, I approved Administrative Bulletin No. OE-2016-14 ( "OE-2016-14") to declare a moratorium on the payment of certain obligations of the GDB and to implement other reasonable and necessary measures to continue essential lending services to protect the health, security, and well-being of the residents of the Commonwealth, among other things. |
| **WHEREAS:** | The fiscal crisis of the Commonwealth has substantially affected various public entities and instrumentalities, including, but not limited to the Puerto Rico Highways and Transportation Authority (the "HTA"). |
| **WHEREAS:** | Historically, the HTA has relied on different sources of revenue and liquidity for the provision of essential services to the residents of the Commonwealth, which includes the maintenance and operation of the roads, bridges, and highways of the Commonwealth. The reference revenue and liquidity principally consists of: (1) revenue derived from tolls and other charges imposed by the HTA for the use of its transit facilities (in English *traffic facilities*) (the "Toll Revenues" and in English *Toll Revenues*); (2) revenue received from the gasoline tax earmarked for the HTA under Law Number 75 of June 23, 1965; (3) revenue received from certain gasoline taxes, *gas oil and diesel oil* that is earmarked for the HTA pursuant to Law 223 of November 30, 1995; (4) revenue received from a special annual fee on motor vehicle licenses earmarked for the ACT pursuant to Law 9 of August 12, 1982, as amended; (5) revenue received from taxes imposed on crude oil earmarked for the HTA under Law 34 of July 16, 1997(the revenue referred to in section (1) through (5) under this Clause, collectively referred to as, the "Revenue from Resolutions 68/98"); (6) revenue derived from taxes imposed on cigarettes, fees on vehicle licenses, and surpluses from petroleum taxes earmarked for the HTA pursuant to Laws 30 and 31, both passed on June 25, 2013 (collectively referred to as, the "Revenue from Laws 30-31"); (7) liquidity from an agreement with the GDB according to which the GDB issues loans to the HTA; (8) funds received by the HTA from the federal Government for conducting federal highway assistance programs under Title 23 of the *United States Code* (the "Federal Highway Revenue"); and (9) funds received by the HTA from the federal Government for conducting transit assistance programs |

2

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

|  |  |
|---|---|
| | under Title 23 of the *United State Code* (the "Federal Transit Funds"). As a result of the Commonwealth's fiscal crisis, the availability of this revenue, funds and liquidity has significantly diminished in the past six (6) months. |
| **WHEREAS:** | The HTA previously issued bonds under Puerto Rico Highway and Transportation Authority Resolution No. 68-18, passed on June 13, 1968 (which authorizes and guarantees the *HTA's Highways Revenue Bonds*) and Resolution of the HTA Number 98-06, approved February 26, 1998 (which authorizes and guarantees the *HTA's Transportation Revenue Bonds*) (collectively, "Resolutions 68/98"). On November 30, 2015, under Section 8 of Article VI of the Constitution of the Commonwealth, I approved Administrative Bulletin No. OE-2015-046 ( "OE-2015-046"), through which, among other things, the Secretary of the Treasury of Puerto Rico was ordered to retain the revenues assigned to the HTA and reallocate them to the payment of the Commonwealth's public debt and to guaranteeing essential services for the residents of the Commonwealth (the "HTA's Retained Funds.") The principal and interest of the bonds issued under the 68/98 Resolutions are guaranteed in part and are paid in part from the HTA's Retained Funds. The Toll Revenues, which are not retained funds subject to OE-2015-046, also guarantee part of the payment of the debt issued under Resolutions 68/98. In accordance with the 68/98 Resolutions, whatever excess related to the HTA's Retained Funds and the Toll Revenues after the required deposits and the repayment of services of the debt shall be returned to the HTA for the payment of its expenses and operations. After the approval of OE-2015-046, which orders the retention of the HTA's Retained Funds, the HTA experimented with a significant decrease in its liquidity, which was exacerbated by the fact that the HTA, in complying with Resolutions 68/98, continued to remit the entirety of the Toll Revenues to the bond trustee for the servicing of the debt issued under Resolutions 68/98. |
| **WHEREAS:** | The HTA and the GDB are parties to that certain *Loan Agreement*, dated August 28, 2013, through which the HTA obtained a revolving line of credit from the GDB (the "GDB Loan"). As a condition of the GDB Loan, the HTA and the GDB granted certain *Assignment and Security Agreement*, agree the same day, through which the HTA transferred to the GDB its |

3

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

|  |  |
|---|---|
|  | rights to receive the Revenue from Laws 30-31 as a way to guarantee the repayment of the GDB Loan and other amounts owed to the GDB. In its attempts to deal with the liquidity crisis of the HTA and to guarantee the continued provision of the essential services of the HTA to protect the health, security and the wellbeing of the residents of the Commonwealth, the GDB and the HTA entered into an agreement through which the GDB has promised to transfer to the HTA certain funds to cover the operational costs and expenses of the HTA. On April 1, 2016, the GDB informed the HTA that it did not have the financial capacity to continue to transfer said funds, thus creating a major liquidity problem for the HTA, threatening the continued provision of the essential services to protect the health, security and the wellbeing of the residents of the State and placing under risk the HTA's ability to receive the Federal Highway Revenue and the Federal Transit Funds. |
| **WHEREAS:** | On April 19, 2016, the HTA amended its Highway Alliance Contracts PR-22 and PR-5 with Autopistas Metropolitanas de Puerto Rico, LLC (the "Concessionaire") to assign certain rights to the Concessionaire. In exchange for those rights, the Concessionaire made an initial $100 million (the "Initial Payment") and will make a $15 million deferred payment upon the implementation of certain multidirectional lanes or on June 30, 2017, whichever occurs first. In accordance with Article 17 of Law 29-2009, as amended ("APP Law), the Financial Advisory Authority and Tax Agency of Puerto Rico (the "AAFAF"), after consulting with the Office of Management and Budget (the "OGP"), submitted for consideration by the Governor a missive list of recommendations for the use of the Initial Payment. The GDB also made a recommendation regarding the potential uses of these funds. On May 9, 2016, after thoroughly evaluating the recommendations of the OGP, the GDB and the AAFAF, considering the complicated situation regarding liquidity facing the Commonwealth, the GDB and other government entities, by virtue of the power granted under Articles 9(g)(iv) and 17 of the APP Laws, the Governor authorized that the funds be used for the payment of essential services, as proposed by the AAFAF and the OGP. |

4

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:18989-7 Filed:10/28/21 Entered:10/28/21 16:33:39 Desc:
Case 3:16-cv-02384-FAB Document 1-10 Filed 07/21/16 Page 6 of 7
Exhibit F Page 6 of 8

CERTIFIED TRANSLATION

| | |
|---|---|
| **WHEREAS:** | This situation has provoked a state of public emergency that warrants the declaration, under Article 201 of the Law, for a state of emergency for the HTA and suspending certain obligations of the HTA to guarantee the benefit of essential services related to the health, safety, and well-being of the residents of the Commonwealth. This state of emergency shall have a brief duration stated herein and shall not affect the collection rights of any creditor of the HTA, as the trustee of the bonds issued under Resolutions 68/98 has received and has at its disposal sufficient funds to pay its debts until next year. |
| **WHEREFORE:** | I, ALEJANDRO J. GARCIA PADILLA, Governor of this Commonwealth, under the powers inherent to my position and the authority vested in me by the Constitution of the Commonwealth, hereby provide for the following: |
| **ONE:** | In accordance with Article 201 of the Law, I hereby declare a state of emergency for the HTA and state an Emergency Period for the HTA until June 30, 2016, so as to protect the health, security, and well-being of the residents of the Commonwealth. |
| **TWO:** | This Executive Order does not declare an Emergency Period for any Government Entity except the HTA and does not impose a moratorium on any obligation of the HTA. This Executive Order does not authorize any Government Entity to utilize funds that have been deposited prior to the date of this Executive Order with a trustee or other custodian for the payment of the Covered Obligation nor does it pretend to prevent the use of said funds already deposited for the payment of said Covered Obligation. |
| **THREE:** | Pursuant to Article 201 (d) of the Law, I hereby order the suspension of all obligations of the HTA to transfer to, or deposit with, any financial institution or authority acting as a fiscal agent under any resolution by way of which any bonds of the HTA in circulation have been issued, the Toll Revenues, and any other revenue assigned or received by the HTA. The foregoing includes Toll Revenues corresponding to the bonds issued under Resolutions 68/98, without regard to when said funds were collected. |

5

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

|  |  |
|---|---|
|  | I hereby authorize the HTA to utilize the Toll Revenues and whatever other revenue assigned or received by the HTA for the continuation of provision of the essential services for the protection of the health, security, and well-being of the residents of the Commonwealth. This Executive Order does not affect the funds necessary for the payment of the stated obligations in this paragraph that have been transferred or deposited by the HTA to the pertinent trustees to account for the outstanding payments until next year. |
| **FOUR:** | Pursuant to Article 201(b) of the Law, no actions shall be commenced and no claims or proceedings shall be initiated or continued in any court of any jurisdiction that is related to or arises under a Covered Obligation of the HTA, including actions or proceedings related to the obligations stated in the paragraph THREE of this Executive Order. |
| **FIVE:** | The Executive Director of the HTA is ordered to submit a weekly report to the Governor itemizing the cash flow of the entity. |
| **SIX:** | <u>SEVERABILITY</u>. This Executive Order shall be interpreted in such a way so as to maintain its validity, to the extent possible, in accordance with the Constitution of the Commonwealth and the Constitution of the United States. If any clause, paragraph, subparagraph, provision, or part of this Executive Order is declared unconstitutional by any court or jurisdiction, the order issued by said court to that effect shall not affect or invalidate the remainder of this Executive Order. The effect of said order shall be limited to the clause, paragraph, subparagraph, disposition, or part of this Executive Order declared unconstitutional and only with respect to the application of the same to the obligation subject to said dispute. |
| **SEVEN:** | <u>RATIFICATION OF OE-2016-10 AND OE-2016-14</u>. OE-2016-10, as amended by the OE-2016-14 and the OE-2016-14 is hereby ratified and confirmed in all aspects, as modified by this Executive Order, and it is hereby provided that both shall expire at end of the Covered Period. |

6

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**EIGHT:** <u>REPEAL</u>. Any other Executive Order that is fully or partially incompatible with this order is hereby repealed to the extent to which such incompatibility exists.

**NINE:** EXPIRATION AND PUBLICATION. This Executive Order shall enter into force immediately and shall remain in force until (i) June 30, 2016 or (ii) the date upon which this order shall be revoked in writing by the Governor, whichever occurs first. It is ordered that this shall be published and disseminated as broadly as possible.

IN WITNESS WHEREOF, I hereby issue this Executive Order under my signature and stamp in this Great Seal of the Commonwealth of Puerto Rico, San Juan, Puerto Rico, today, May 17, 2016.

[affixed seal]
　　　　　　　　　　　　　　　　　　　　[signature]
　　　　　　　　　　　　　　　　ALEJANDRO J. GARCÍA PADILLA
　　　　　　　　　　　　　　　　　　　　GOVERNOR

Promulgated pursuant to the law, today May 17, 2016.

[signature]
VÍCTOR A. SUÁREZ MELÉNDEZ
DESIGNATED SECRETARY OF STATE

7

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.