# U.S. BANK
# EXHIBIT N

Settlement Agreement and Invoice Instructions,
entered into between AAFAF and U.S. Bank,
dated December 21, 2018

*Executed Version*

## SETTLEMENT AGREEMENT AND INVOICE INSTRUCTIONS

This Settlement Agreement and Invoice Instructions (this "Agreement"), dated as of December 21, 2018, is entered into by and among the Puerto Rico Fiscal Agency and Financial Advisory Authority, as authorized representative of the Governmental Entities listed below ("AAFAF" or sometimes "FAFAA"), U.S. Bank Trust National Association and U.S. Bank National Association (collectively "U.S. Bank"), solely in its capacity as Fiscal Agent or Trustee (as defined below) and Hogan Lovells (US) LLP ("Hogan Lovells"), as legal counsel to U.S. Bank. Collectively herein AAFAF, U.S. Bank and Hogan Lovells are referred to as the "Parties" and, individually, as a "Party".

## RECITALS

**WHEREAS**, U.S. Bank acts as "Fiscal Agent" or "Trustee" under various trust agreements, indentures, resolutions and related documents (collectively, the "Trust Agreements") for outstanding bonds and notes (the "Bonds") issued by various public corporations and instrumentalities of the Government of Puerto Rico (the "Government") identified as follows:

- Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA")
- Children's Trust ("CT")
- Puerto Rico Municipal Finance Agency ("MFA")
- University of Puerto Rico ("UPR")
- Puerto Rico Industrial Development Company ("PRIDCO")
- Puerto Rico Infrastructure Financing Authority ("PRIFA")
- Puerto Rico Public Buildings Authority ("PBA")
- Puerto Rico Public Finance Corporation ("PFC")
- Puerto Rico Housing Financing Authority ("HFA")

(collectively, the "Governmental Entities" and individually, a "Governmental Entity"). Exhibit

1

A attached hereto contains a list of the outstanding series of each of the Bonds.

WHEREAS, pursuant to Article 8(q) of Act 2-2017, AAFAF is the only entity of the Government authorized, on behalf of the Government or any component thereof, to negotiate, restructure, and/or reach an agreement with creditors in connection with any debt issued by any of the Governmental Entities.

WHEREAS, U.S. Bank contends there are outstanding invoices issued through June 30, 2018 all of which are set forth on Exhibit B, no subsequent invoices having been issued as of the date of this Agreement (or if issued to, or by, U.S. Bank not yet submitted to any of the Governmental Entities for payment or reimbursement) (the "Outstanding Invoices"), for fees and costs for legal services provided to U.S. Bank by its outside counsel and for administrative services provided by U.S. Bank (collectively referred to as the "Fees"). As stated by U.S. Bank, such Fees in the amount of $2,442,985.99, excluding all accrued interest charges, were billed for Fees through June 30, 2018 and have remained unpaid as of the date of this Agreement.[1]

WHEREAS, U.S. Bank together with its outside counsel has provided and continues to provide services relating to the Bonds of the Governmental Entities and has asserted a right to payment and reimbursement for the Outstanding Invoices.

WHEREAS, AAFAF and the Governmental Entities have disputed the reasonableness and appropriateness of certain of the fees, costs and necessity for the legal services provided to U.S. Bank by its outside legal counsel payable by the Governmental Entities and, to date, have refused to satisfy in full the Outstanding Invoices contending, among other things, that sufficient

---

[1] Such outside counsel consist of Hogan Lovells (primary corporate trust and restructuring counsel), Rivera, Tulla and Ferrer (Puerto Rican counsel – hereafter "Tulla"), and Shipman & Goodwin (conflicts counsel- hereafter "Shipman").

2

justification has not been provided to AAFAF for adequately assessing the reasonableness of the fees, cost and necessity for legal services charged in the Outstanding Invoices.

WHEREAS, U.S. Bank has asserted that its fees and costs, including those of its outside counsel, are reasonable and necessary expenses incurred in connection with the performance of its duties under the Trust Agreements, and in response to requests for information and services from the Governmental Entities, their auditors and professionals, from bondholders and their counsel, from bond insurers, and in response to the unusual conditions triggered by Puerto Rico's financial crisis, and the outright defaults and risk of default by several of the Governmental Entities and by the Commonwealth of Puerto Rico.

WHEREAS, prior to the execution of this Agreement, AAFAF, U.S. Bank and some of the Governmental Entities entered into certain agreements for the management of invoices, including portions of the Outstanding Invoices, and the payment of amounts allegedly owed or accrued in favor of U.S. Bank as identified in footnote 2 (the "Prior Agreements").[2] However, the Parties hereby agree to resolve all disputes that might be raised relating to the Prior Agreements, and any unpaid portion of the Outstanding Invoices, and to establish procedures for billing and payment of bills for services rendered after July 1, 2018, by entering into this Agreement, which will supersede in their entirety such Prior Agreements.

WHEREAS, in order to resolve the above-referenced issues concerning the Outstanding Invoices for the Governmental Entities, establish clear protocols for billing and invoicing based on established and legally required AAFAF and Governmental Entities standards, and institute a

---

[2]   Instruction and Invoice Settlement Agreement dated June 29, 2017 between PBA, U.S. Bank and AAFAF; Instruction and Invoice Settlement Agreement dated June 29, 2017 between PRIFA, U.S. Bank and AAFAF; Agreement Regarding PRIDCO Payments dated August 8, 2017 between PRIDCO, U.S. Bank, AAFAF and Rosemawr Management LLC.

3

process for an orderly consideration, review and payment of future invoices submitted by U.S. Bank for its administrative services and for legal fees incurred on its behalf, the Parties execute this Agreement and hereby acknowledge and agree to the following. For the sake of clarity, U.S. Bank and Hogan Lovells do not agree that such protocols are legally binding on them, but have consented to follow the protocols described in this Agreement to facilitate the billing and payment process for past and future Fees.

## TERMS AND CONDITIONS

1. Resolution of Outstanding Invoices. AAFAF, on behalf of itself and the Governmental Entities, and U.S. Bank have agreed to resolve and settle any and all disputes relating to the Outstanding Invoices, for all Governmental Entities (the "Settled Outstanding Invoices") upon the terms and conditions set forth herein including the payment, without interest, of seventy-five percent (75%) of the aggregate dollar amount of the Settled Outstanding Invoices.

2. Payment of Settled Outstanding Invoices. Commencing immediately after the execution of this Agreement by all Parties, U.S. Bank is authorized to debit the amount of One Million Eight Hundred Thirty-Two Thousand Two Hundred Thirty-Nine Dollars and Forty-Nine Cents ($1,832,239.49) (the "Outstanding Invoice Payment Amount") in the amounts indicated, from the various accounts, and consistent with the provisions of the Appendix, set forth on Exhibit C hereto (to the extent U.S. Bank is authorized to debit such accounts), and otherwise shall receive payment as indicated on Exhibit C, and such debits or payments shall be considered as a full settlement and satisfaction of the Settled Outstanding Invoices. AAFAF for itself and the Governmental Entities agrees to take such actions and execute such documents or consents as may be necessary to facilitate U.S. Bank's access to the sources available for payment of the

4

Outstanding Invoice Payment Amount with any account for any Governmental Entity to be debited in an amount no greater than the Outstanding Invoice Payment Amount allocable to each such Governmental Entity.

3.   Claims Settled.   Upon U.S. Bank's receipt of the Outstanding Invoice Payment Amount, the Governmental Entities shall have no further liability for the Outstanding Invoices on Exhibit B.   U.S. Bank shall not be subject to any claims, causes of action or clawback assertions by or on behalf of AAFAF or the Governmental Entities with respect to the Outstanding Invoice Payment Amount and all prior paid Invoices.

4. Subsequent Invoices. All invoices for any legal services provided to U.S. Bank by Hogan Lovells (and other legal professionals including those identified on Schedule D, providing legal services to U.S. Bank for which U.S. Bank seeks payment or reimbursement from any of the Governmental Entities) after July 1, 2018, shall be prepared in accordance with the Billing Guidelines included as Exhibit D which are adjusted from the Billing Guidelines for Outside Counsel that apply to counsel retained to provide legal services to AAFAF. Each invoice shall be in the form as set forth on Exhibit E and shall be sent to the contact persons listed on Exhibit F. The hourly rates (or other non-hourly rates) charged by U.S. Bank and its outside counsel, including but not limited to Hogan Lovells, for all subsequent invoices issued after the date of the Agreement shall be those applicable as of the date of the Agreement and shall not be increased except (i) to the extent that any "freeze" or other suspension on rate increases is eliminated for counsel providing legal services generally to the Puerto Rico Government and all subdivisions thereof including any Governmental Entity, (ii) if the continuation of current rates can be demonstrated objectively to be an unreasonable burden on such outside counsel or (iii) PROMESA is no longer applicable.

5

5. Payment of Subsequent Invoices.

a. Until such time as this Agreement is terminated as provided below, on a monthly basis, after U.S. Bank's submission of its invoices to AAFAF and the Governmental Entities in accordance with the procedures set forth in this Agreement, AAFAF and the Governmental Entities shall have fifteen (15) business days to examine and review such invoices from the date of delivery of the invoices to the contact persons listed on Exhibit F (the "Objection Period"). Any objection asserted by AAFAF or the Governmental Entities to payment of any invoice shall be in writing and delivered to the U.S. Bank notice parties set forth in Paragraph 24 hereof, and shall detail the basis for and the amount of any objection with reasonable specificity. In the event that AAFAF or the Governmental Entities object to the reasonableness of a portion of an invoice in accordance herewith within the Objection Period, U.S. Bank, AAFAF and the Governmental Entities shall try to resolve the objection in good faith. If U.S. Bank, AAFAF and the Governmental Entities do not resolve the objection within (10) business days after the written objection is received by a U.S. Bank representative (the "Negotiation Period"), any of the Parties may elect to submit the objection to binding arbitration in accordance with the provisions set forth on Exhibit G; provided however, that the right to seek binding arbitration shall be without prejudice to and shall not preclude any Party hereto from instead seeking a determination from a court of appropriate jurisdiction in lieu of arbitration. Any portion of an invoice not contested by AAFAF or the Governmental Entities within the Objection Period, shall be paid by any Governmental Entity from available payment sources to U.S. Bank or, alternatively, may be paid by U.S. Bank to itself out of the funds set forth in the accounts listed on Exhibit C, in accordance with the Appendix to Exhibit C, within 30 days after the expiration of the Objection Period (the "Payment Period"). U.S. Bank and its outside counsel may seek to impose a reasonable interest

6

charge on any portion of any invoice that is unpaid within thirty (30) days after the expiration of the Negotiation Period. U.S. Bank and its counsel also reserve the right to seek compensation for out-of-pocket expenses and efforts expended in connection with any arbitration or litigation to resolve an invoice dispute. AAFAF and each Governmental Entity reserve all rights to object to any interest charge or compensation with respect to a resolution of any invoice objection.

      b. Notwithstanding any other provision in this Agreement or any right that U.S. Bank now has, claims to have, or may have in the future, to debit any of the accounts identified in Exhibit C or any other account of any Governmental Entity for payment of any invoice issued subsequent to the date of this Agreement, U.S. Bank agrees that it shall not debit any such account for any such invoice until the later of (i) the expiration of the Objection Period to the extent no objection is asserted in accordance with Section 5 of the Agreement, (ii) a resolution between AAFAF and U.S. Bank to the extent of any objection to any such invoice and (iii) an adjudication of such objection by any means permitted pursuant to Section 5 in this Agreement.

      c. The Parties hereto have agreed to the establishment of minimum reserve amounts in the accounts set forth in the Appendix to Exhibit C hereto. U.S. Bank shall be entitled to withdraw fees and costs that are approved for payment under this Agreement from the Exhibit C accounts, and will provide access to those accounts to the Governmental Entities to the extent such access is permitted under the applicable Trust Documents, provided that (i) the Governmental Entities shall not be permitted to access the accounts if the balance is equal to or below the applicable reserve amount, or to the extent intended withdrawals would diminish the account(s) to a balance below the applicable reserve amounts; and (ii) provided further that if a Title III or Title VI proceeding under PROMESA is commenced for any of the Governmental Entities, or another form of restructuring of the Bonds involving the Trustee or Fiscal Agent

7

occurs, or a Governmental Entity that is presently current on payments on the Bonds ceases to make payments that are due, or if U.S. Bank receives appropriate directions under the Trust Documents to take actions, U.S. Bank may freeze access to the affected account(s) at that time, and will engage in good faith negotiations with AAFAF and the Governmental Entities over appropriate reserves and payment arrangements.

d.    Notwithstanding the foregoing, AAFAF and the Governmental Entities agree to pay the current base annual fee for U.S. Bank's Trustee or Fiscal Agent services under the existing contracts between U.S. Bank and the Governmental Entities, and the Governmental Entities agree to act promptly to seek permission from AAFAF to pay U.S. Bank's Extraordinary Administrative Services Fees and Expenses (which include but are not limited to fees and costs for outside counsel) that are approved in accordance with this Agreement out of available funds other than the accounts held by U.S. Bank so as to satisfy their obligations under the Trust Documents, and AAFAF agrees to approve such requests if it is able to do so under the current budgets and Fiscal Plans for the Governmental Entities.

6. Replacement of Prior Agreements. All Prior Agreements for the Governmental Entities to the extent superseded and replaced by this Agreement shall no longer be binding on the Parties hereto.

7. No Waiver. Nothing herein is intended to amend applicable Trust Agreements or Bond Resolutions or any document related thereto. Except as to the Outstanding Invoices and Prior Invoices settled in this Agreement, U.S. Bank expressly reserves the right to collect any unpaid fees or expenses submitted to Governmental Entities that are not paid in accordance with the procedures set forth herein, subsequent to the execution of this Agreement, as part of a

8

PROMESA Title VI Qualifying Modification or Title III Plan of Adjustment for any Governmental Entities, or as part of an amended agreement with the Governmental Entities and AAFAF, or pursuant to a court ruling on U.S. Bank's request for payment of the unpaid amounts; provided however, that U.S. Bank may not seek to charge or accrue interest on any unpaid portions of subsequent invoices that were unpaid for less than 90 days.   The Governmental Entities expressly reserve their right to dispute the applicability of interest, the reasonableness of the unpaid fees and costs for services for which reimbursement is requested in any future unpaid amounts billed by U.S. Bank, or the appropriateness of deducting disputed amounts from any construction funds or any other appropriate flow of funds account.

8.  Limitations on Legal Services Related to AFICA, CT, MFA and HFA.  So long as there is no indication that the liabilities under the Trust Agreements for AFICA, CT, MFA and HFA Bonds are likely to be subject to proceedings under Title III or Title VI of PROMESA, and there is no threatened or actual default on payments on the Bonds issued by those entities and outstanding, no reimbursement or other payment will be sought by U.S. Bank after July 1, 2018 relating to the application of Title III or Title VI to these foregoing Governmental Entities; provided however that this provision shall not supersede or impair the rights of U.S. Bank to perform, or to seek assistance from its counsel with respect to, any and all duties arising under the Trust Agreements, or required by contract, statute or other law applicable to those Bonds or to U.S. Bank, or which it may be directed to perform by requisite holders of Bonds under the relevant Trust Agreements.   The Governmental Entities and AAFAF hereby represent that they have no intention, and are not aware of the PROMESA Board or other parties having the intention, of modifying the Bonds issued under the Trust Agreements for AFICA, CT, MFA, or HFA through a Title III, Title VI or other restructuring or court process.

9. <u>Ana G. Mendez Bonds</u>. The parties hereto acknowledge that separate and apart from the agreements herein, an adjustment is to be made to the prior billings paid by Ana G. Mendez in connection with bonds issued by AFICA. Hogan Lovells now believes a portion of the payments made by Ana G. Mendez were attributable to the Desarollos Universitarios bonds that are payable by UPR. Pursuant to a separate agreement, the parties will make the agreed adjustments without otherwise impacting this Agreement. However, any invoices issued to UPR with respect to any adjustment shall be subject to this Agreement except any such invoice need not comply with Exhibit E to this Agreement as long as sufficient detail is set forth in any such invoice to adequately describe all services and charges as appropriate and reasonable under the circumstances.

10. <u>Termination</u>. This Agreement shall automatically terminate as to a Governmental Entity upon the occurrence of the following:

(i) Execution of a modified agreement regarding the payment of U.S. Bank's invoices between U.S. Bank, AAFAF and each Governmental Entity;

(ii) Court approval and implementation of a Title VI Modification or Title III plan of adjustment which governs the payment of outstanding Fees incurred for legal services provided to U.S. Bank with respect to Bonds issued by each Governmental Entity; or

(iii) Entry of a Court Order (after notice and a reasonable opportunity to be heard by U.S. Bank and the applicable Governmental

Entity) which allows U.S. Bank to set-off additional fees and costs against funds in its possession or control under a Trust Agreement, or which enjoins or precludes U.S. Bank from doing so;

Provided that no such termination shall modify, unwind or terminate the release of liability for the Settled Outstanding Invoices and Prior Invoices set forth in Paragraph 2.

11. No Undisclosed Inducements. Each of the Parties represents that it enters into this Agreement in reliance solely upon its own independent investigation and analysis of facts, except for the amount of the Outstanding Invoices, and that no promises, warranties or representations, other than as set forth in this Agreement have been made to induce the other party to enter into this Agreement.

12. Advice of Counsel. Each of the Parties represents that it has acted pursuant to the advice of its own independent legal counsel in connection with the negotiation, preparation and execution of this Agreement, or was advised to obtain such advice, had reasonable time and opportunity to obtain such advice, and knowingly declined to obtain such advice.

13. Authority. Each party represents that it is duly authorized to execute and implement this Agreement. The Parties represent that no court authorization is required for, and no order, injunction or stay prevents their approval for the implementation of this Agreement. AAFAF and the Governmental Entities represent that the approval of the PROMESA Board, and of the District Court of Puerto Rico designated under PROMESA is not required for this Agreement to become effective and to be implemented, and that they are not prohibited by the Moratorium Acts of the Commonwealth of Puerto Rico from doing so.

11

14. Confidential Information. U.S. Bank and Hogan Lovells acknowledge internal, non-public, information systems, financial, and business information now or hereafter provided to U.S. Bank and Hogan Lovells relating to AAFAF, the Government, its agencies, corporations and municipalities, including the Governmental Entities, whether or not related to this Agreement may be designated by AAFAF in writing to U.S. Bank as including proprietary and confidential information (collectively, "Confidential Information"). Such Confidential Information may be shared by U.S. Bank with Tulla and Shipman who shall be subject to the same terms set forth in this paragraph. The term "Confidential Information," however, shall not include information within the public domain or that is furnished to U.S. Bank and Hogan Lovells by a third party who is under no obligation to keep the information confidential. U.S. Bank and Hogan Lovells, and their respective employees and affiliates agree to keep in strict confidence all Confidential Information provided in connection with U.S. Bank's role as Fiscal Agent or Trustee. U.S. Bank and Hogan Lovells further agree, in connection with all Confidential Information, that, they (i) shall not make public, disclose and/or share with any person any Confidential Information without the previous written consent of AAFAF, (ii) shall use and/or reproduce such Confidential Information only to perform their obligations under or related to the Indentures. In addition, the provisions of this section shall not prohibit U.S. Bank and Hogan Lovells from making any disclosure pursuant to any subpoena or order of a court, an administrative tribunal or governmental instrumentality including without limitation auditors and regulators which may assert jurisdiction over U.S. Bank and Hogan Lovells; provided that U.S. Bank and Hogan Lovells shall promptly notify AAFAF before complying with any such disclosure obligations and reasonably cooperate with AAFAF in dealing with such disclosure. U.S. Bank and Hogan Lovells may divulge Confidential Information to the persons who need to

12

know such Confidential Information to fulfill obligations under or related to the Trust Agreements, provided that such persons (i) shall have been advised of the confidential nature of the information and that U.S. Bank and Hogan Lovells shall direct them, and they shall agree in writing, to treat such information as Confidential Information and to return all divulged materials to them upon request; and (ii) in each case, such persons shall be bound by obligations of confidentiality and non-use consistent with and at least as stringent as those set forth in this Agreement. AAFAF, however, acknowledges that U.S. Bank and Hogan Lovells may develop for themselves, or for others, problem solving approaches, frameworks or other tools and processes developed in performing services, and nothing contained herein precludes U.S. Bank and Hogan Lovells from developing or disclosing such materials and information provided that the same do not contain or reflect Confidential Information. The provision of this section shall survive the expiration or earlier termination of this Agreement.

15. Rules of Construction. The provisions of this Agreement shall be liberally construed to effectuate the intent expressed in the preamble and other provisions of this Agreement. Headings are for convenience only and will not be considered when resolving questions of construction or interpretation. Each of the Parties is deemed to have had equal bargaining strength in the negotiation of this Agreement and equal responsibility for the preparation of this document such that neither this document, nor any uncertainty or ambiguity herein, will be arbitrarily construed or resolved against any party pursuant to any rule of construction or law to the effect that ambiguities in documents are to construed against the drafter of the document.

16. Execution of Additional Documents. The Parties agree that they will execute any and all additional documents and take all additional steps which may be necessary or convenient to consummate this Agreement and accomplish the purpose hereof. Such documentation may

13

include certain certification or required statements from U.S. Bank and/or its various counsel that have unpaid Outstanding Invoices and issue Invoices in the future, which certifications or required statements will be provided by AAFAF to U.S. Bank and shall be required as a matter of applicable law.

17. <u>Integration of Entire Agreement.</u> This Agreement contains the entire agreement of the Parties, and no representations, warranties, inducements or promises not included herein by express provision or contained in a document or instrument identified herein and executed contemporaneously herewith shall be binding on any of the Parties hereto, except as expressly contemplated herein.

18. <u>Counterparts.</u> This Agreement may be executed in any number of original, facsimile, copied or electronic counterparts, and all counterparts shall be considered together as one Agreement. A faxed, copied or electronic counterpart shall have the same force and effect as an original signed counterpart. Each of the Parties hereby expressly forever waives any and all rights to raise the use of a facsimile machine or email to deliver a signature, or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or email as a defense to the formation of a contract.

19. <u>Successors and Assigns.</u> To the maximum extent permitted by law, the provisions of this Agreement shall be binding and inure to the benefit of the respective Parties and their heirs, executors, administrators, agents, representatives, successors and assigns. Such assignment shall be considered effective with prior written notice to the other party.

14

20. Effective Term. This Agreement shall become effective upon execution by each of the Parties and shall be in effect as long as U.S. Bank remains Fiscal Agent or Trustee under the Trust Agreements unless terminated earlier as expressly provided herein.

21. Representation as to Other Fee Negotiations. As of the date of this Agreement, AAFAF represents that it is not engaged in any negotiation with any other Fiscal Agent or Trustee for any bonds issued by any of the Governmental Entities with respect to amounts due for outstanding legal fees or prior payment of legal fees.

22. Amendment. No modification of, deletion from, or addition to this Agreement will be effective unless made in writing and executed by every Party affected by such modification, deletion or addition.

23. Governing Law. This Agreement is made under and will be construed in accordance with and governed by the substantive laws of the Commonwealth of Puerto Rico, including The Puerto Rico Oversight Management and Economic Stability Act enacted by the United States as Pub. Law 114-187 ("PROMESA"). Nothing in this Agreement is intended to bind future actions of the Puerto Rico Financial Management and Oversight Board or contravene the relevant requirements of PROMESA.

24. Notices. Any notices required under this Agreement shall be given by First Class Mail at the addresses listed below unless a written notice of change of address has been given by the party. Notices given by First Class Mail, postage prepaid, addressed as required by this section shall be deemed received three (3) business days following the deposit in the United States mail. Rejection of a notice, refusal to accept a notice, or inability to deliver a notice because of a failure to give notice of a change of address will constitute delivery of the notice.

15

TO THE PARTIES:

Puerto Rico Fiscal Agency and Financial Advisory Authority
Attn: Belén Fornaris, Esq. - General Counsel
Roberto Sanchez Vilella (Minillas)
Government Center de Diego Ave.
Stop 22 San Juan, PR 00907

U.S. Bank National Association
U.S. Bank Trust National Association
Corporate Trust Services
60 Livingston Avenue
St. Paul, MN 55107-1419
Attention: Timothy Sandell, Vice President

A copy of any notice to the Parties must also be given by electronic mail to:

AAFAF
Attn: Sebastián M. Torres, Esq.
Roberto Sanchez Vilella (Minillas)
Government Center de Diego Ave.
Stop 22 San Juan, PR 00907
Sebastian.Torres@aafaf.pr.gov

Diego Figueroa-Rodriguez
DLA Piper LLP (US)
200 South Biscayne Blvd.
Suite 2500
Miami, FL 33131
diego.figueroa@dlapiper.com

Hogan Lovells (US) LLP
Attn: Robin E. Keller
875 Third Avenue
New York, NY 10022
robin.keller@hoganlovells.com

In addition, a copy of any notice pertaining to the following Parties shall also be given by electronic mail to the following U.S. Bank Notice parties:

AFICA, CT, MFA, PFC, HFA:

U.S. Bank National Association
U.S. Bank Trust National Association
Corporate Trust Services
60 Livingston Avenue
St. Paul, MN 55107-1419

16

Attention: Timothy Sandell, Vice President
Timothy.sandell@usbank.com

UPR and PBA:

U.S. Bank National Association
Corporate Trust Services
One Federal Street
Boston, MA 02110
Mail Station: EX-MA-FED
Attention: Laura Moran, Vice President
Laura.moran@usbank.com

PRIFA:

U.S. Bank National Association
Global Corporate Trust Services
100 Wall Street, Suite 1600
New York, N.Y. 10005
Mail Station: EX-NY-WALL
Attention: Justin Shearer, Vice President
Justin.shearer@usbank.com

PRIDCO:

U.S. Bank National Association
Corporate Trust Services
225 E. Robinson Street, Suite 250
Orlando, FL 32801
Attention: Kathy Broecker, Vice President
Kathy.broecker@usbank.com

24. Survival of Representations and Warranties. The Parties agree that all representations

and warranties made by them in this Agreement shall survive the execution of this Agreement.

**[SIGNATURE PAGE FOLLOWS]**

17

Dated: 12/19/18

**U.S. BANK NATIONAL ASSOCIATION**

By: _____

　　Name: Justin L. Shearer
　　Title:　Vice President

**U.S. BANK TRUST NATIONAL
ASSOCIATION**

By: _____

　　Name: Justin L. Shearer
　　Title:　Vice President

Dated:

**PUERTO RICO FISCAL AGENCY AND
FINANCIAL ADVISORY AUTHORITY**

By: _____

　　Name:　Mohammad Yassin Mahmud
　　Title:　Chief Legal and Regulatory
　　Officer

Dated: 12/20/18

**HOGAN LOVELLS (US) LLP**

By: _____

　　Name:　Robin Keller
　　Title:　Partner

**ACKNOWLEDGED AND AGREED:**

**PUERTO RICO INDUSTRIAL, TOURIST, EDUCATIONAL, MEDICAL AND
ENVIRONMENTAL CONTROL FACILITIES FINANCING AUTHORITY**

By: _____

　　Name:
　　Title:

18

Dated:                                U.S. BANK NATIONAL ASSOCIATION


                                      By: _____

                                           Name:
                                           Title:

                                      U.S. BANK TRUST NATIONAL
                                      ASSOCIATION


                                      By: _____
                                           Name:
                                           Title:  Vice President


Dated:                                PUERTO RICO FISCAL AGENCY AND
                                      FINANCIAL ADVISORY AUTHORITY


                                      By: _____
                                           Name:
                                           Title:


Dated:                                HOGAN LOVELLS (US) LLP


                                      By: _____
                                           Name:
                                           Title:


ACKNOWLEGED:

PUERTO RICO INDUSTRIAL, TOURIST, EDUCATIONAL, MEDICAL AND
ENVIRONMENTAL CONTROL FACILITIES FINANCING AUTHORITY

By: _____
     Name:

                                      18

Dated:                                       **U.S. BANK NATIONAL ASSOCIATION**

By: _____

         Name:
         Title:

**U.S. BANK TRUST NATIONAL
ASSOCIATION**

By: _____

         Name:
         Title:  Vice President

Dated:                                         **PUERTO RICO FISCAL AGENCY AND
FINANCIAL ADVISORY AUTHORITY**

By: _____

         Name:
         Title:

Dated:                                         **HOGAN LOVELLS (US) LLP**

By: _____

         Name:
         Title:

ACKNOWLEGED:

PUERTO RICO INDUSTRIAL, TOURIST, EDUCATIONAL, MEDICAL AND
ENVIRONMENTAL CONTROL FACILITIES FINANCING AUTHORITY

By: _____
        Name:

18

Title:

CHILDREN'S TRUST

By: _____
        Name:                    ANGEL PEREZ RIVERA
        Title:

PUERTO RICO MUNICIPAL FINANCE AGENCY

By: _____
        Name:
        Title:

UNIVERSITY OF PUERTO RICO

By: _____
        Name:
        Title:

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By: _____
        Name:
        Title:

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY

By: _____
        Name:
        Title:

PUERTO RICO PUBLIC BUILDINGS AUTHORITY

By: _____
        Name:
        Title:

19

EAST\158787482.13

Title:

CHILDREN'S TRUST

By: _____
     Name:
     Title:

PUERTO RICO MUNICIPAL FINANCE AGENCY

By: _____
     Name:
     Title:  Héctor R. Betancourt

UNIVERSITY OF PUERTO RICO

By: _____
     Name:
     Title:

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By: _____
     Name:
     Title:

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY

By: _____
     Name:
     Title:

PUERTO RICO PUBLIC BUILDINGS AUTHORITY

By: _____
     Name:
     Title:

EAST\158787482.13

Title:

CHILDREN'S TRUST

By: _____
    Name:
    Title:

PUERTO RICO MUNICIPAL FINANCE AGENCY

By: _____
    Name:
    Title:

UNIVERSITY OF PUERTO RICO

By: _____
    Name: Dr. Jorge Haddock Acevedo
    Title:   President

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By: _____
    Name:
    Title:

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY

By: _____
    Name:
    Title:

PUERTO RICO PUBLIC BUILDINGS AUTHORITY

By: _____
    Name:
    Title:

19

EAST\158787482.13

Title: _____

CHILDREN'S TRUST

By: _____
      Name:
      Title:

PUERTO RICO MUNICIPAL FINANCE AGENCY

By: _____
      Name:
      Title:

UNIVERSITY OF PUERTO RICO

By: _____
      Name:
      Title:

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By: _____
      Name:
      Title:

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY

By: _____
      Name:
      Title:

PUERTO RICO PUBLIC BUILDINGS AUTHORITY

By: _____
      Name:
      Title:

19

Title:

CHILDREN'S TRUST

By: _____
      Name:
      Title:


PUERTO RICO MUNICIPAL FINANCE AGENCY

By: _____
      Name:
      Title:


UNIVERSITY OF PUERTO RICO

By: _____
      Name:
      Title:


PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By: _____
      Name:
      Title:


PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY

By: _____
      Name:
      Title:


PUERTO RICO PUBLIC BUILDINGS AUTHORITY

By: _____
      Name:
      Title:


19

Title:

CHILDREN'S TRUST

By: _____
      Name:
      Title:

PUERTO RICO MUNICIPAL FINANCE AGENCY

By: _____
      Name:
      Title:

UNIVERSITY OF PUERTO RICO

By: _____
      Name:
      Title:

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By: _____
      Name:
      Title:

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY

By: _____
      Name:
      Title:

PUERTO RICO PUBLIC BUILDINGS AUTHORITY

By: _____
      Name: Luz P. Laboy Meléndez
      Title:   Directora
            Oficina de Contraloría

19

PUERTO RICO HOUSING FINANCING AUTHORITY

By: _____
      Name: Pablo Muñiz
      Title: Deputy Director

PUERTO RICO PUBLIC FINANCE COMPANY

By: _____
      Name:
      Title:

20

PUERTO RICO HOUSING FINANCING AUTHORITY

By: _____
      Name:
      Title:

PUERTO RICO PUBLIC FINANCE COMPANY

By: _____
      Name:
      Title:

20

EAST\158787482.13

EXHIBIT A

| OUTSTANDING BOND SERIES | Full Description | TRUSTEE ENTITY : |
|---|---|---|
| **PRIIFA** | | |
| Series 2003 | Puerto Rico Housing Finance Authority Capital Fund Program Bonds (Puerto Rico Public Housing Administration Projects), Series 2003 | USB Trust NA |
| Series 2008 | Puerto Rico Housing Finance Authority Capital Fund Modernization Program Subordinated Bonds (Puerto Rico Public Housing Projects Series 2008 (Non-AMT) | USB Trust NA |
| **PR AFICA** | | |
| Series 2000 | Puerto Rico Industrial, Tourist. Educational Medical and Environmental Control Facilities Financing Authority (AFICA) Educational Facilities Revenue Bonds, 2000 Sr.A (University Plaza Project) | USB Trust NA |
| Series 2002 | Puerto Rico Industrial. Tourist, Educational Medical and Environmental Control Facilities Financing Authority (AFICA) Higher Education Refunding Revenue Bonds, Sr 2002 (Ana G. Mendez University System Project) | USB Trust NA |
| Series 2006 | Puerto Rico Industrial. Tourist, Educational. Medical and Environmental Control Facilities Financing Auth. (AFICA) Higher Education Revenue Bonds, Series 2006 (Ana G. Mendez University System Project) | USB Trust NA |
| Series 2012 | Puerto Rico Industrial, Tourist, Educational Medical and Environmental Control Facilities Financing Authority (AFICA) Higher Education Revenue and Revenue Refunding Bonds, *Sr* 2012 (Ana G. Mendez University System Project) | USB NA |
| **PRIFA** | | |
| Series 2005 A | Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005A, Series 20058 and Refunding Series 2005C | USB Trust NA |
| Series 2005 A | *CAB's* | |
| Series 2005 B | Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005A, Series 2005B and Refunding Series 2005C | USB Trust NA |
| Series 2005 C | Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005A, Series 2005B and Refunding Series 2005C | USB Trust NA |
| Series 2005 C | *CAB's* | |
| Series 2006 | Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2006 | USB Trust NA |
| **PRPBA** | | |
| Series 2002 C | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series C, Government Facilities Revenue Bonds, Series D Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 2002 D | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series C, Government Facilities Revenue Bonds, Series D Guaranteed by the Commonwealth Puerto Rico | U5B NA |

| OUTSTANDING BOND SERIES | Full Description | TRUSTEE ENTITY : |
|---|---|---|
| Series 2002 F | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series F, Government Facilities Revenue Bonds, Series G, Government Facilities Revenue Bonds, Series H (Forward Delivery) Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 2002 G | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds. Series F, Government Facilities Revenue Bonds, Series G, Government Facilities Revenue Bonds, Series H (Forward Delivery) Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 2002 H | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series F, Government Facilities Revenue Bonds, Series G, Government Facilities Revenue Bonds, Series H (Forward Delivery) Guaranteed by the Commonwealth Puerto Rico | USB Trust NA |
| Series 2004 I | Puerto Rico Public Building Authority Government Facilities Revenue Bonds, Series I, Government Facilities Revenue Refunding Bonds, Series J Guaranteed by the Commonwealth Puerto Rico | USB Trust NA |
| Series 2004 K | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series K, Government Facilities Revenue Bonds, Series L Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 2007 M-1 | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds. Series M, Government Facilities Revenue Bonds. Series N, Government Facilities Revenue Bonds, Series O Guaranteed by the Commonwealth Puerto Rico | USB Trust NA |
| Series 2007 M-2 | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds. Series M, Government Facilities Revenue Bonds, Series N, Government Facilities Revenue Bonds, Series O Guaranteed by the Commonwealth Puerto Rico | USB Trust NA |
| Series 2007 M-3 | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds. Series M, Government Facilities Revenue Bonds, Series N, Government Facilities Revenue Bonds. Series O Guaranteed by the Commonwealth Puerto Rico | USB Trust NA |
| Series 2007 N | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series M, Government Facilities Revenue Bonds, Series N, Government Facilities Revenue Bonds, Series O Guaranteed by the Commonwealth Puerto Rico | USB Trust NA |
| Series 2009 P | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series P Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 2009 Q | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series Q Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 2011 R | Puerto Rico Public Building Authority Government Facilities Revenue Bonds, Series R (Qualified School Construction Bonds - Issuer Subsidy) Guaranteed by the Commonwealth Puerto Rico | USB NA |

| OUTSTANDING BOND SERIES | Full Description | TRUSTEE ENTITY : |
|---|---|---|
| Series 2011 S | Puerto Rico Public Building Authority Government Facilities Revenue Bonds, Series S Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 2011 T | Puerto Rico Public Building Authority Government Facilities Revenue Bonds, Series T (Qualified Zone Academy Bonds - Direct Payment) Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 2012 U | Puerto Rico Public Building Authority Government Facilities Revenue Refunding Bonds, Series U Guaranteed by the Commonwealth Puerto Rico | USB NA |
| Series 1993. L | PUERTO RICO PUBLIC BUILDINGS AUTHORITY SER L REV REF BDS 4.20% 7/1/1997 BI # 1063 | USB Trust NA |
| **PRPFC** | | |
| Series 2011 A | Puerto Rico Public Finance Corporation 2011 Series A Bonds (Commonwealth Appropriation Bonds) | USB Trust NA |
| Series 2011 B | Puerto Rico Public Finance Corporation 2011 Series B Bonds (Commonwealth Appropriation Bonds) | USB Trust NA |
| Series 2012 | Puerto Rico Public Finance Corporation 2012 Series A Bonds (Commonwealth Appropriation Bonds) | USB NA |
| **PRMFA** | | |
| Series 2005 C | Puerto Rico Municipal Finance Agency 2005 Series A Bonds, Series B Refunding Bonds, Series C Refunding Bonds | USB Trust NA |
| **PRIDCO** | | |
| Series 1997 A | Puerto Rico Industrial Development Company General Purpose Revenue Bonds, Series 1997A and Refunding Revenue Bonds, Series 1997A | USB Trust NA |
| Series 2003 | Puerto Rico Industrial Development Company - General Purpose Revenue Bonds, Series 2003 and Refunding Revenue Bonds, Series 2003 | USB Trust NA |
| Series 2003 | CAB's | |
| **UPR** | | |
| Series P | University of Puerto Rico University System Revenue Refunding Bonds, Series P and University System Revenue Bonds, Series Q | USB Trust NA |
| Series Q | University of Puerto Rico University System Revenue Refunding Bonds, Series P and University System Revenue Bonds, Series Q | USB Trust NA |
| **Children's Trust** | | |
| Series 2002 | Children's Trust Tobacco Settlement Asset-Backed Bonds, Series 2005 consisting of Series 2005A and Series 2005B - And Children's Trust Tobacco Settlement Asset-Backed Bonds, Series 2002 | USB NA |
| Series 2005-A | Children's Trust Tobacco Settlement Asset-Backed Bonds, Series 2005 consisting of Series 2005A and Series 2005B - And Children's Trust Tobacco Settlement Asset-Backed Bonds, Series 2002 | USB NA |
| Series 2005-B | Children's Trust Tobacco Settlement Asset-Backed Bonds, Series 2005 consisting of Series 2005A and Series 2005B - And Children's Trust Tobacco Settlement Asset-Backed Bonds, Series 2002 | USB NA |

3

| OUTSTANDING BOND SERIES | Full Description | TRUSTEE ENTITY : |
|---|---|---|
| Series 2008 A | Children's Trust Tobacco Settlement Asset-Backed Bonds, Series 2008 consisting of Series 2008A and Series 2008B | USB NA |
| Series 2008 B | Children's Trust Tobacco Settlement Asset-Backed Bonds, Series 2006 consisting of Series 2008A and Series 2008B | USB NA |

4

EXHIBIT B

U.S. Bank Unpaid Fees & Costs Through June 30, 2018 (without interest)

| PRHFA | AFICA | PRIFA | PRPBA | PRPFC | PRMFA | PRIDCO | UPR | CTB | Total Unpaid Fees & Costs |
|---|---|---|---|---|---|---|---|---|---|
| $641,104.00 | $29,272.26 | $445,786.13 | $473,292.38 | $740,051.79 | $8,189.83 | $81,295.22 | $16,202.08 | $7,792.29 | $2,442,985.99 |
| | | | | | | | | | |
| | | | | | | | | | |

Total payment Requested for Outstanding Invoices

Payments Allocated Under the Settlement Amount

| PRHFA | AFICA | PRIFA | PRPBA | PRPFC | PRMFA | PRIDCO | UPR | CTB | Total |
|---|---|---|---|---|---|---|---|---|---|
| $480,828.00 | $21,954.19 | $334,339.60 | $354,969.29 | $555,038.84 | $6,142.37 | $60,971.42 | $12,151.56 | $5,844.22 | $1,832,239.49 |
| | | | | | | | | | |
| | | | | | | | | | |

EXHIBIT C

| Issuer | Account Name | Balance |
|--------|--------------|--------:|
| HFA | Puerto Rico Housing Finance Authority Public Housing Admin Series 2008 Housing Revenue Bonds Revenue Fund | 8,075,214.46 |
| MFA | Puerto Rico Municipal Finance Agency Series 1999 Bonds Reserve Account | 11,211,139.84 |
| PFC | PRPFC Temporary Holding Account | 639,231.82 |
| CT | Children's Trust Fund Tobacco Settlement Asset Backed Bonds 2002 Bond Fund Debt Service Account | 24,153,126.00 |
| CT | Children's Trust Fund Tobacco Settlement Asset Backed Bonds Collection Accounts | 110,132.13 |
| CT | Children's Trust Fund Tobacco Settlement Asset Backed Bonds 2002 Bond Fund Liquidity Resr | 86,684,234.38 |
| PBA | Puerto Rico Public Buildings Authority Government Facilities Revenue Bonds Series 2007N Bond Construction Account | 3,498,538.13 |
| PBA | Puerto Rico Public Buildings Authority Construction Fund Subaccount Series R | 4,266,848.96 |
| PRIDCO | Puerto Rico Industrial Development Company FNCB Trustee Under Indenture DTD 7/1/64 Bond Reserve | 2,394,526.34 |
| PRIFA | PRIFA Series 2006 Special Tax Revenue Bonds Construction Fund | 29,288,743.83 |
| UPR | Univerty of Puerto Rico TR AGMT DTD 6/1/71 University System Revenue Bonds Bond Service Account | 53,444,562.17 |
| UPR | Univerty of Puerto Rico TR AGMT DTD 6/1/71 University System Revenue Bonds Bonds | 10,135,971.42 |
| AFICA | Puerto Rico Industrial Tourist Educational Medical and Environment Control Facilities Financing Auth (AFICA) Higher Education Refunding Revenue Bonds Series 2002 | 1,383,298.08 |
| AFICA | Puerto Rico Industrial Tourist Educational Medical and Environment Control FAC Fin Auth Higher Ed Rev Bonds Ser 2006 Ana G Mendez Univ Sys Bond Fund | 51,490.69 |
| AFICA | Puerto Rico Industrial Tourist Educational Medical and Environment Control FAC Fin Auth Higher Ed Rev Bonds Ser 2006 Ana G Mendez Univ Sys Reserve Account | 1,958,051.13 |

APPENDIX TO EXHIBIT C

| 1 | HFA | AAFAF and HFA agree that U.S. Bank is allowed to debit the HFA account listed on Exhibit C in the amount of $480,828.00 representing the discounted amount to be paid under the Settlement Agreement but only to the extent of the amount of Issuer Fees deposited therein.  U.S. Bank is permitted to debit the HFA account on Exhibit C for the amount of future invoices that HFA is obligated to pay under the Settlement Agreement. U.S. Bank shall not impede HFA's access to draw on the HFA account identified on Exhibit C or any other HFA accounts so long as the future invoices are timely paid in accordance with the Settlement Agreement, provided however that the balance in the referenced HFA account shall not fall below $400,000.  The foregoing agreement requires that HFA is otherwise entitled to access the account(s) to withdraw funds in accordance with existing trust and other documents applicable to such account(s).  This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |
|---|-----|---|
| 2 | MFA | AAFAF and MFA agree that U.S. Bank is allowed to debit the MFA account listed on Exhibit C in the amount of $6,142.37 representing the discounted amount to be paid under the Settlement Agreement.  U.S. Bank is permitted to debit the MFA account on Exhibit C for the amount of future invoices that MFA is obligated to pay under the Settlement Agreement.   U.S. Bank shall not impede MFA's access to draw on the MFA account(s) identified on Exhibit C or any other MFA accounts so long as the future invoices are timely paid in accordance with the Settlement Agreement, provided however that the balance in the referenced MFA account shall not fall below $400,000.  The foregoing agreement requires that MFA is otherwise entitled to access the account(s) to withdraw funds in accordance with existing trust and other documents applicable to such account(s).  This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |
| 3 | PFC | AAFAF and PFC agree that U.S. Bank is allowed to debit the PFC account listed on Exhibit C in the amount of $555,038.84 representing the discounted amount to be paid under the Settlement Agreement.  U.S. Bank acknowledges that the Majority Bondholder has no objection to a debit of this account for such purposes.  U.S. Bank also understands that there is no other source of funds to pay the amount allocable to PFC under the Settlement Agreement.  The balance remaining in the above-referenced account may be debited by U.S. Bank to pay future invoices in accordance with the terms of the Settlement Agreement.  This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |

1

| 4 | CT | AAFAF and CT agree that U.S. Bank is allowed to debit the CT accounts listed on Exhibit C in the amount of $5,844.22 representing the discounted amount to be paid under the Settlement Agreement. U.S. Bank is permitted to debit the CT accounts on Exhibit C for the amount of future invoices that CT is obligated to pay under the Settlement Agreement. U.S. Bank shall not impede CT's access to the Children's Trust Fund Tobacco Settlement Asset Backed Bonds Collection account set forth on Exhibit C so long as the future invoices are timely paid in accordance with the Settlement Agreement. The foregoing agreement requires that CT is otherwise entitled to access that account to withdraw funds in accordance with existing trust and other documents applicable to such account(s). No other access by AAFAF or CT shall be permitted to the other accounts listed on Exhibit C. This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |
| --- | --- | --- |
| 5 | PBA | AAFAF and PBA agree that U.S. Bank is allowed to debit the PBA accounts listed on Exhibit C in the amount of $354,969.29 representing the discounted amount to be paid under the Settlement Agreement. U.S. Bank is permitted to debit the PBA accounts on Exhibit C for the amount of future invoices that PBA is obligated to pay under the Settlement Agreement. U.S. Bank shall not impede PBA's access to draw on the PBA accounts identified on Exhibit C or any other PBA accounts so long as the future invoices are timely paid in accordance with the Settlement Agreement, provided however that the balance in the referenced PBA accounts shall not fall below $1,700,000 in the aggregate. The foregoing agreement requires that PBA is otherwise entitled to access the account(s) to withdraw funds in accordance with existing trust and other documents applicable to such account(s). This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |
| 6 | PRIDCO | AAFAF and PRIDCO agree that U.S. Bank is allowed to debit the PRIDCO account listed on Exhibit C in the amount of $60,971.42 representing the discounted amount to be paid under the Settlement Agreement, subject to any required Majority Bondholder Consent. Future invoices that PRIDCO is obligated to pay under the Settlement Agreement shall be paid by PRIDCO from other available sources of funds, or alternatively U.S. Bank is permitted to debit the PRIDCO account listed on Exhibit C for the amount of such invoice(s) subject to any required Majority Bondholder Consent. This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |

2

| 7 | PRIFA | AAFAF and PRIFA agree that U.S. Bank is allowed to debit the PRIFA account listed on Exhibit C in the amount of $334,339.60 representing the discounted amount to be paid under the Settlement Agreement. U.S. Bank is permitted to debit the PRIFA account on Exhibit C for the amount of future invoices that PRIFA is obligated to pay under the Settlement Agreement. U.S. Bank shall not impede PRIFA's access to draw on the PRIFA account identified on Exhibit C or any other PRIFA accounts so long as the future invoices are timely paid in accordance with the Settlement Agreement, provided however that the balance in the referenced PRIFA account shall not fall below $1,500,000. The foregoing agreement requires that PRIFA is otherwise entitled to access the account(s) to withdraw funds in accordance with existing trust and other documents applicable to such account(s). This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |
|---|---|---|
| 8 | UPR | AAFAF and UPR agree that U.S. Bank is allowed to debit the UPR accounts listed on Exhibit C in the amount of $12,151.56 representing the discounted amount to be paid under the Settlement Agreement. U.S. Bank is permitted to debit the UPR account(s) on Exhibit C for the amount of future invoices that UPR is obligated to pay under the Settlement Agreement. Such future invoices will include any invoices submitted by U.S. Bank as a result of any adjustment/reimbursement of payments to Ana G. Mendez pursuant to Section 9 of the Settlement Agreement that UPR is obligated to pay under the Settlement Agreement. This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |
| 9 | AFICA | AAFAF and AFICA agree that U.S. Bank is allowed to debit the AFICA accounts listed on Exhibit C (with respect to Ana G. Mendez bonds) in the amount of $21,954.19 representing the discounted amount to be paid under the Settlement Agreement, and to debit the UPR accounts listed on Exhibit C (with respect to University Plaza/Universitario Desarrollos bonds in an amount to be determined by agreement between U.S. Bank, Ana G. Mendez and AAFAF). U.S. Bank is permitted to debit the accounts on Exhibit C for the amount of future invoices that AFICA is obligated to pay on account of Ana G. Mendez bonds under the Settlement Agreement, and is permitted to debit the UPR account(s) on Exhibit C for the amount of future invoices AFICA is obligated to pay on account of University Plaza bonds. U.S. Bank shall not impede AFICA's access to draw on the AFICA accounts identified on Exhibit C or any other AFICA accounts so long as the future invoices are timely paid in accordance with the Settlement Agreement, provided however that the balance in the referenced AFICA accounts shall not fall below $500,000 in the aggregate. The foregoing agreement requires that AFICA is otherwise entitled to access the account(s) to withdraw funds in accordance with existing trust and other documents applicable to such account(s). This agreement is otherwise governed by the provisions set forth in paragraph 5 of the Settlement Agreement. |

3

EXHIBIT D

## Billing Guidelines for Outside Counsel Related to U.S. Bank

### *Introduction*

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("FAFAA") has agreed to approve reimbursement to U.S. Bank for the services of law firms or sole practitioner attorneys or other legal professionals retained by U.S. Bank to provide certain legal services to U.S. Bank in its service as Fiscal Agent or Trustee under the Trust Agreements issued by the Governmental Entities as identified in the Settlement Agreement and Invoice Instructions dated as of December 21, 2018 (the "Agreement") to which this exhibit is attached (the "Legal Services"), including specifically Hogan Lovells US LLP ("Hogan Lovells"), Rivera, Tulla & Ferrer ("Tulla"), Shipman and Goodwin ("Shipman"), and such other legal professionals as may be engaged by U.S. Bank in the future with respect to the Bonds as described in the Agreement, on notice to FAFAA, to the extent permitted by privilege or client confidentiality or other disclosure restrictions

In order to fund expenses for legal services, FAFAA expects that counsel shall be committed to providing Legal Services with the highest quality standards and in the most reasonable, prompt, efficient and cost-effective manner.   Therefore, FAFAA expects outside counsel ("Outside Counsel") to stress integrity and to uphold the highest standards of professionalism and ethical conduct in ensuring timely, responsive, and cost-effective legal services by complying with these billing guidelines (the "Guidelines").  U.S. Bank has agreed to require its Outside Counsel to be governed by the Guidelines related to billing as set forth herein. Through the Guidelines, FAFAA provides Outside Counsel with an understanding of what legal fees and expenses FAFAA will pay and reimburse.   Furthermore, these Guidelines shall constitute a written agreement by the parties for any matter on which the Outside Counsel is engaged on behalf of U.S. Bank with regard to the Trust Agreements during the pendency of the Agreement.   These Guidelines shall govern the billing terms of present and future Outside Counsel.

FAFAA considers Outside Counsel's invoices for services rendered (the "Invoices") as a certification by Outside Counsel that the billing for services, as reflected on the Invoices, is reasonable for the legal matters involved, and necessary for the proper rendering of the Legal Services relative thereto.

FAFAA expects Outside Counsel to strictly adhere to the Guidelines and to charge for actual legal services rendered, at the rates disclosed to FAFAA applicable as of the date of the Agreement as described in Paragraph 4 of the Agreement and to refrain from billing non-billable work or expenses.  Compliance with the Guidelines will avoid delays in processing Invoices or the possible nonpayment of the services provided.  Please note that the Guidelines may be modified and amended from time to time and in the event of any amendment or modification, Outside Counsel will be notified accordingly.  FAFAA expects Outside Counsel to become familiar with the Guidelines and if there are any questions relative thereto then Outside Counsel should contact:

AAFAF
Attn: Sebastián M. Torres, Esq.
Roberto Sanchez Vilella (Minillas)
Government Center de Diego Ave.
Stop 22 San Juan, PR 00907
Sebastian.Torres@aafaf.pr.gov

The following rules shall govern in providing reimbursement for billings to U.S. Bank for Legal
Services provided to U.S. Bank and the presentation of the related Invoices:

## A.    _Billing Rates and Fee Arrangements_

i.      The applicable Governmental Entities shall reimburse U.S. Bank for reasonable
        fees for legal services, pursuant to the applicable code of professional conduct. A
        reasonable fee is considered to be the product of: a) the amount of time
        reasonably necessary to devote to the matter by appropriately qualified legal
        professionals, and b) the customary or previously agreed to billing rates (the
        "Billing Rates") of those legal professionals involved in the rendering of the legal
        services. Outside Counsel in rendering such legal services, shall refrain from
        providing more legal services than are actually needed to complete the same.

ii.     Payment for Outside Counsel's overhead expenses shall be governed by the
        provisions of Section D hereof.

iii.    Legal services will, if reasonably practicable, be billed in increments of 6 minutes
        or 1/10 of an hour.

iv.     Unless otherwise agreed upon in advance, all hourly billing rates shall be solely
        on the basis of the Billing Rates. Absent a specific agreement for an alternative
        fee arrangement for a specific legal service approved by FAFAA, Outside
        Counsel's fees shall be computed by applying the Billing Rates to the reasonable
        time actually incurred in rendering the Legal Services.

v.      The level of expertise of the lawyer assigned to a matter shall be appropriate to
        the complexity of the legal issue therein. Therefore, partners in the law firm shall
        not bill for tasks that can be performed by an associate at a lower cost.
        Furthermore, FAFAA requires Outside Counsel to assign less demanding legal
        tasks to less senior lawyers in order to minimize legal expenses. Additionally, for
        matters of similar nature occasionally referred to Outside Counsel, FAFAA
        expects Outside Counsel to assign an attorney with prior experience with such
        matter. Outside Counsel shall ensure that the worked performed by the assigned
        lawyer(s) is reasonable, useful, and done efficiently.

vi.     In the event that Outside Counsel anticipates incurring significant billable hours
        or expenses in excess of the normal amount within a particular month, subject to
        attorney-client confidentiality, Outside Counsel shall contact FAFAA to notify
        them of the anticipated excess amount of billable hours or expenses during that

2

month and shall include a reasonably detailed explanation of the reasons for such additional costs.

vii. FAFAA will reimburse Outside Counsel for necessary computerized research at the actual cost of the service after volume discounts. FAFAA encourages Outside Counsel to seek and obtain volume discounts for electronic research. Outside Counsel is expected to be familiar with the basic substantive law at issue in the matter for which Outside Counsel was retained, and FAFAA should not generally be charged for this type of research.

viii. Any legal service provided for the benefit of more than one Governmental Entity shall be divided pro rata among each such Governmental Entity for which such legal service was provided and such proration shall be expressly set forth in each time entry for each such Governmental Entity for each occurrence of a proration.

**B.**   *Staffing Matters*

i. FAFAA will not pay for or authorize:

    a. Administrative charges such as:

        i. Scheduling or review of personnel;

        ii. Preparation, review and explanation of billing statements; or

        iii. Negotiation, review, and/or drafting of retention or engagement agreement between U.S. Bank and the Outside Counsel.

    b. Grazing:  FAFAA will not pay for billed time for getting up to date with any legal matter.  This includes:

        i. Time spent by newly assigned attorneys/paralegals to familiarize themselves with a matter.

        ii. Time spent for file reviews if an event does not precipitate that file review or it does not result in the creation of any tangible work product.

    c. Block billing:  All tasks must be billed separately to the extent reasonably practicable.

    d. Vague, confusing or otherwise undetailed time entries.

    e. Time associated with research on general client or industry trends, and time expended on "canned" research, such as research of a generic nature or for a prior case or issue.

f.  Intra-office conferences that deal with substantive issues are reimbursable when a thorough description of the purpose is provided, subject to attorney client or confidentiality concerns. Overstaffing. Overstaffing includes:

    i.  More than one attorney attending a trial, motion hearing, conference, meeting, conference call or deposition unless presenting testimonial or documentary evidence at an evidentiary proceeding;

    ii.  Inclusion of associates at meetings or hearings for the purpose of associate development.

Outside Counsel should explain why the circumstances warrant an exception from this general rule. Payment of associate/partner fees for clerical or secretarial tasks that are not otherwise considered part of Outside Counsel's overhead. Please have paralegals perform these tasks.

g.  Any time spent at seminars or other training, unless otherwise specifically approved in writing.

h.  Summer associate, temporary or contract attorney, or other intern time unless approved in writing.

ii.  If a previously drafted pleading or standard form is used, FAFAA will pay only for the amount of time necessary to modify the document for use in the specific legal matter and not the time originally incurred to draft the standard document.

iii.  FAFAA will not pay for administrative work performed by attorneys, such as managing or supervising other attorneys, nor will pay for in-firm meetings, conferences, consultations and communications among attorneys that are administrative in nature.

iv.  FAFAA shall not pay for duplication of time caused by:

a.  Transfer of a legal matter to a new attorney for internal reasons;

b.  Double teaming; or

c.  One attorney or paralegal redoing the work of another.

## C.  *Billing and Invoicing*

i.  The Invoices shall be in a format that conforms to Exhibit E or otherwise that complies with the ABA's Uniform Task-Based Management System. Hours shown in the Invoices must accurately reflect the actual time spent on the described activity and must either be the exact amount of time or the exact time rounded to the nearest six (6) minutes or 1/10 of an hour to the extent reasonably practicable.

ii.     To the extent reasonably practicable, each  task or activity shall be separately
        itemized on the Invoices, including a break-down thereof that at a minimum shall
        include:

      a.     A chronological listing of all services;

      b.     A description of the service being billed.  The description shall include
               (i) the type of work being performed and (ii) the subject matter;

      c.     The name of each attorney or legal professional whose work is being
               billed;

      d.     The date of the service;

      e.     The amount of time spent by each person on each item in the interval
               increments defined herein; and

      f.     The Billing Rate at which the service is being billed.

iii.    Entries for telephone conversations, conferences, meetings and court conferences
        must specifically describe all parties involved and the subject matter or purpose of
        the task to the extent such disclosure does not reveal information protected by the
        attorney-client privilege.

iv.     FAFAA will not pay for billed services whose descriptions lack specificity.

v.      The Invoices shall include:

      a.     Name of each time keeper;

      b.     Staff classification including for each category of legal personnel (Partner,
               Junior Partner, Associate, Paralegal, Law Clerk, and Summer Associate);

      c.     Hourly billing rate of each time keeper; and

      d.     Total time and fees billed for each time keeper by subject matter.

vi.     The Invoices shall also include an overall summary by staff classification,
        including for each category of legal personnel (partner, Junior Partner, Associate,
        Paralegal, Law Clerk, and Summer Associate), the number of individuals in each
        category, the total number of hours by each category, and the total fees by
        category.

vii.    The Invoices shall also include a billing history or summary of all fees and
        expenses incurred in a particular matter up to the invoicing date.

5

viii.   Any Invoices without the required information included or attached will not be processed for payment and will be returned to Outside Counsel for the corresponding corrections or modifications.

ix.   The Outside Counsel's partner in charge of the U.S. Bank account (the "Account Partner") shall review the Invoices prior to submitting them to FAFAA and should be able to explain all of its time charges if so requested.

x.   Furthermore, the Account Partner shall certify the accuracy and reasonableness of the Invoices and their compliance to the Guidelines and all applicable ethical rules.

## D.   _Expense Reimbursement_

i. FAFAA will not pay and will not separately reimburse Outside Counsel for overhead costs. Expenses that are considered Outside Counsel's overhead are part of the professional's hourly rate and are not reimbursable. The term overhead includes, but is not limited to all administrative or general costs incidental to the operation of the Outside Counsel including without limitation office rent, conference rooms, equipment, computer software, office supplies, transportation, telephone and mobile charges, books, meals, routine postage, the services of librarians, file clerics, data entry clerks, photocopy operators, secretaries, overtime or utilities, word processors, docket clerks, messengers, other support personnel, or any other overhead expense as recognized by applicable accounting standards.

i.   All expenses will be reimbursed at actual cost and Outside Counsel shall not upcharge any of the expenses incurred in providing services to U.S. Bank. FAFAA will not pay for normal transportation costs incurred in travel to and from the office or for overtime transportation. Car services during travel are limited to taxicab or transportation network companies' fares.

ii.   FAFAA will reimburse Outside Counsel for reasonable and necessary delivery charges. However, charges for time spent preparing mail packages are considered as part of the Outside Counsel's overhead and are not reimbursable. Third party courier and express delivery services should be used cautiously. Photocopying will be reimbursed at the actual cost to Outside Counsel and which under no circumstances shall exceed ten (10) cents per page.

iii.   When using court reporters, FAFAA will reimburse Outside Counsel for actual costs incurred for court reporters and transcripts, but will only pay for one copy of a transcript, both electronic and hard. Outside Counsel shall make reasonable efforts to obtain the lowest possible charge for court reporting fees, including all possible volume discounts, if available. Transcription expenses must identify the court reporter and the services provided such as the number of transcripts or pages, hard copies, files or tapes.

iv.   Disbursements for pre-approved reimbursable expenses will be compensated at actual cost with the appropriate documentation to substantiate such expenses (including, upon request, actual vendor receipts). Actual cost is defined as the amount paid to a third-party service provider, net of any discounts.

FAFAA expects Outside Counsel to provide any back up documentation for a particular disbursement charge if it so requires. FAFAA will not pay for unsupported charges.

E.   *Third-Party Contracting*

Any third-party contractor, other than an Outside Counsel retained by U.S. Bank directly or by any Outside Counsel, is required to provide to FAFAA, a written acknowledgment by such third-party contractor of its adherence to these Billing Guidelines in all applicable respects.

EAST\162628788.2

# SAMPLE ONLY

**US bank**

EXHIBIT E

Corporate Trust Services
60 Livingston Ave., First Floor
St. Paul, MN  55107

Invoice Number:
Invoice Date:

D39-CTB-0818
Aug. 30, 2018

Federal ID Number 31-0041368

GOVT DEVELOPMENT BANK FOR PUERTO RICO
MINILLAS GOVERNMENT CENTER
ATTN: JUAN LARRIUZ
PO BOX 42001
SAN JUAN, PR  00940

| AC Number: | Description: |
|---|---|
| 206182 | Children's Trust Tobacco Settlement Asset-Backed Bds, Sr 2005 and Sr 2002 |
| S21857 | Children's Trust Tobacco Settlement Asset-Backed Bonds, Sr 2008 |

The following is a statement of transactions pertaining to your account.  For further information, please review the attached.

### STATEMENT SUMMARY

### PLEASE REMIT PAYMENT OF INVOICE

| CURRENT AMOUNT DUE | $7,970.84 |
|---|---|

All invoices are due upon receipt
* Failure to pay amounts owed to U.S. Bank for fees and expenses within 30 days of the invoice date
will be charged interest on the unpaid amounts at the prevailing market rate

Payment by check, please detach at line and return bottom portion of the statement with your check, payable to U.S. Bank

| AC Number: | Description: |
|---|---|
| 206182 | Children's Trust Tobacco Settlement Asset-Backed Bds, Sr 2005 and Sr 2002 |
| S21857 | Children's Trust Tobacco Settlement Asset-Backed Bonds, Sr 2008 |

**Payment by Wire:**
BBK: U.S. BANK NATIONAL ASSOCIATION
ABA: 091000022
BNF: U.S. BANK TRUST N.A.
A/C: 1801-2116-7365
OBI: TRUST FINANCE MGMT
ATTN: TFM - 206189

| | |
|---|---|
| Invoice Number: | D39-CTB-0818 |
| Current Due: | $7,970.84 |
| **Total Balance Due:** | **$7,970.84** |
| Direct Inquiries To: | Michelle Mena |
| Phone: | (212) 951-8579 |
| Alternate contact: | Timothy Sandell |
| Phone: | (651) 466-6687 |

**Checks-First Class Mail-Lockbox**
U.S. Bank Operations Center
Attn: Trust Finance Management
Lockbox Services-CM9705
P.O. Box 70870
St. Paul, MN 55170-9705

**Checks-Overnight Mail**
U.S. Bank Operations Center
Lockbox Services-CM9705
ENER0106
1200 Energy Park Drive
St. Paul, MN 55108

# SAMPLE ONLY

## US bank.

Corporate Trust Services
60 Livingston Ave., First Floor
St. Paul, MN 55107

Invoice Number:
Invoice Date:
Direct Inquiries To:
Phone:

D39-CTB-0616
Aug. 30, 2018
Michelle Menn
(212) 951-8579

**AC Number:** **Description:**
206182   Children's Trust Tobacco Settlement Asset-Backed Bds, Sr 2005 and Sr 2002
S21857   Children's Trust Tobacco Settlement Asset-Backed Bonds, Sr 2008

| CURRENT CHARGES SUMMARIZED | | | | | | |
|---|---|---|---|---|---|---|
| **Detail of Charges** | | | | | **Amount** | **Total** |

*Administrative time associated with duties or responsibilities of an extraordinary nature, including but not limited to; review docs/notes, confs/communications with counsel/USB personnel/etc., research, analysis, consultation/assessment, registration/transfer of securities, claims/filings, various other extraordinary/unexpected/unusual matters/items. Billed at our hourly rate then in effect.*

| | | | | Vol. | Amount | |
|---|---|---|---|---|---|---|
| | Administrative time for: | Jun. 2018 | | 3.10 | $1,534.50 | |
| **Sub Administrative Time** | | | | | | $1,534.50 |

| *Other Services* | | | Rate | Volume | Amount | |
|---|---|---|---|---|---|---|
| n/a | | | | | 0.00 | |
| **Sub Other Services** | | | | | | $0.00 |

| | | | Ref # | Amount | |
|---|---|---|---|---|---|
| Hogan Lovells (C#/M#:021919.000021) | CTB | June-18 | 20800009524D | 3,599.01 | |
| Rivera, Tulla & Ferrer (AC#: 26300-001E) | CTB | June-18 | 100512 | 1,664.00 | |
| Shipman & Goodwin (C:65919/P:2300464) | CTB | June-18 | 540096-TRUST | 1,173.33 | |
| **Sub Direct Out of Pocket** | | | | | $6,436.34 |

| **Current Amount Due** | $7,970.84 |
|---|---|

| **TOTAL BALANCE DUE** | $7,970.84 |
|---|---|

The fees shown on this invoice are reflective of the most recent fee schedule or notice of fee adjustment provided by U.S. Bank.

--------------------------------------------------------------------------------

WE CERTIFY UNDER PENALTY OF NULLITY THAT NO PUBLIC SERVANT OF THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, WILL DERIVE OR OBTAIN ANY BENEFIT OR PROFIT OF ANY KIND FROM THE CONTRACTUAL RELATIONSHIP WHICH IS THE BASIS OF THIS INVOICE. IF SUCH BENEFIT OF PROFIT EXISTS, THE REQUIRED WAIVER HAS BEEN OBTAINED PRIOR TO ENTERING INTO THE AGREEMENT. THE ONLY CONSIDERATION TO BE RECEIVED IN EXCHANGE FOR THE DELIVERY OF GOODS OR FOR SERVICES PROVIDED IS THE AGREED-UPON PRICE THAT HAS BEEN NEGOATIATED WITH AN AUTHORIZED REPRESENTATIVE OF THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY. THE TOTAL AMOUNT SHOWN ON THIS INVOICE IS TRUE AND CORRECT. THE SERVICES HAVE BEEN RENDERED, AND NO PAYMENT HAS BEEN RECEIVED.

SIGNATURE / s / *Timothy Sandell*
    **Vice President**

# SAMPLE ONLY



Invoice Number:
Invoice Date:

D39-CTB-0816
Aug. 30, 2016

*AO Number:*   *Description:*
208182      Children's Trust Tobacco Settlement Asset-Backed Bds, Sr 2005 and Sr 2002
821857      Children's Trust Tobacco Settlement Asset-Backed Bonds, Sr 2006

## BILLING SUMMARY ATTACHMENTS

1  Hogan Lovells -  Billing Summary and CTB Fee Earners
2  Rivera Tulla - Billing Summary and CTB Fee Earners
3  Shipman & Goodwin LLP - Billing Summary and CTB Fee Earners

# SAMPLE ONLY



Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

Timothy Sandell
U.S. Bank National Association
60 Livingston Avenue
3rd Floor
St. Paul, MN 55107-2292

| | |
|---|---|
| Date | August 24, 2018 |
| Invoice No | 20600009937 |
| Partner | Robin E. Keller |
| Email | robin.keller@hoganlovells.com |

For Professional Services for the month of July 2018

*Issuer:* General Bond Issues
*Matter:* 021918.000014

| Summary | Amount USD |
|---|---|
| Professional Services | 43,118.00 |
| Total Disbursements and Charges | 250.13 |
| **Subtotal** | 43,368.13 |
| **Total Due** | 43,368.13 |

## Payment Details

Electronic payments should be sent to
Wells Fargo Bank NA, 420 Montgomery Street
San Francisco, CA 94104
Account:  Hogan Lovells  US LLP ~ Operating Account
SWIFT code:  WFBIUS6S    Account No:  2000010688096
ABA #121000248 For Wire Transfers Only
ABA #054001220 (For ACH Transfers Only)

**Check Payment Instructions**

Regular Mail:
Hogan Lovells US LLP
P.O. Box 75890
Baltimore, MD 21275-5890

Overnight Mail Only:
Lockbox Services 75890
Wells Fargo Bank
7175 Columbia Gateway Drive
ATTN: Hogan Lovells US LLP
Columbia, MD 21045

Payment requested
within 30 days from
invoice date

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Birmingham Boston Brussels Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rio de Janeiro Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington, D.C.  Associated Offices: Budapest Jakarta Shanghai FTZ Ulaanbaatar Zagreb.  Business Service Centers: Johannesburg Louisville.

## SAMPLE ONLY

- 2 -

| | |
|---|---|
| Issuer | General Bond Issues |
| Invoice No | 20600009937 |

### Fees

| Date | Task | Name | Rate | Hours | Amount | Narrative |
|---|---|---|---|---|---|---|
| 6/11/2018 | 7 | Robin E. Keller | $ 1,245.00 | 0.50 | $ 622.50 | Email from DLA regarding claim filings, email USB regarding same |
| 6/11/2018 | 9 | Robin E. Keller | $ 1,245.00 | 0.40 | $ 498.00 | Review memorandums, call with Davis Polk regarding GDB Title VI restructuring effect on PROUD issuers |
| 6/20/2018 | 9 | Robin E. Keller | $ 1,245.00 | 0.40 | $ 498.00 | Review emails regarding treatment of PROUD claims against GDB, communications with USB and counsel regarding same |
| 7/2/2018 | 1 | Daniel J. Lanigan | $ 845.00 | 1.00 | $ 845.00 | Review revised fiscal plan; related correspondence on follow up issues |
| 7/2/2018 | 1 | Sean A Feener | $ 495.00 | 0.10 | $ 49.50 | Begin reviewing new fiscal plan |
| 7/2/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.20 | $ 64.00 | Provide articles on Puerto Rico bonds |
| 7/3/2018 | 1 | Sean A Feener | $ 495.00 | 0.30 | $ 148.50 | Review revised fiscal plan for relevant updates |
| 7/3/2018 | 10 | Daniel J. Lanigan | $ 845.00 | 1.50 | $ 1,267.50 | Draft fee summary invoices for April and May |
| 7/3/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | Provide articles on Puerto Rico bonds |
| 7/3/2018 | 9 | Daniel J. Lanigan | $ 845.00 | 1.00 | $ 845.00 | Review commonwealth/cofina proposal and circulate summary to US bank team |
| 7/3/2018 | 9 | Ronald Cappiello | $ 390.00 | 0.30 | $ 117.00 | Monitor Pacer-Pro docket updates for PROMESA Title III case |
| 7/5/2018 | 10 | Daniel J. Lanigan | $ 845.00 | 3.00 | $ 2,535.00 | Draft summary invoices for April and May for HL; discuss with S. Feener |
| 7/5/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | Provide articles on Puerto Rico bonds |
| 7/6/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | Provide articles on Puerto Rico bonds |
| 7/9/2018 | 10 | Daniel J. Lanigan | $ 845.00 | 0.10 | $ 84.50 | Emails on monthly fee statements |
| 7/9/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | Provide articles on Puerto Rico bonds |
| 7/9/2018 | 9 | Ronald Cappiello | $ 390.00 | 0.80 | $ 312.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title III proceeding from 7-3-18 (evening) through 7-9-18; Email to S. Feener regarding any need to set up telephonic appearance at 7-25-18 hearing |
| 7/10/2018 | 9 | Ronald Cappiello | $ 390.00 | 0.40 | $ 156.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, Title III case |
| 7/11/2018 | 10 | Sean A Feener | $ 495.00 | 0.80 | $ 396.00 | Draft and revise fee statements |
| 7/11/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | Provide articles on Puerto Rico bonds |
| 7/11/2018 | 9 | Ronald Cappiello | $ 390.00 | 0.60 | $ 234.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title III case |
| 7/12/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | Provide articles on Puerto Rico bonds |
| 7/12/2018 | 8 | Sean A Feener | $ 495.00 | 0.50 | $ 247.50 | Coordinate update call and related issues with client team and R. Keller |
| 7/13/2018 | 10 | Daniel J. Lanigan | $ 845.00 | 0.10 | $ 84.50 | Emails regarding monthly billing summaries |
| 7/13/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | Provide articles on Puerto Rico bonds |
| 7/13/2018 | 8 | Robin E. Keller | $ 1,245.00 | 1.00 | $ 1,245.00 | Draft Agenda, call with USB reps regarding payments, restructuring status, fee review by DLA and issuers |

# SAMPLE ONLY

- 3 -

| | | Issuer | | | | | General Bond Issues |
|---|---|---|---|---|---|---|---|
| | | Invoice No | | | | | 20600009937 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/13/2018 | 8 | Sean A Feener | $ 495.00 | 1.60 | $ 792.00 | | PROUD update call; compile draft billing summaries and transmit to word processing for editing; related calls and followup; emails with R. Keller regarding PROUD call agenda and July and August bond payments; meeting with word processing regarding bill summary format |
| 7/14/2018 | 6 | Daniel J. Lanigan | $ 845.00 | 0.10 | $ 84.50 | | Emails regarding PROMESA litigation regarding constitutionality |
| 7/16/2018 | 10 | Sean A Feener | $ 495.00 | 1.90 | $ 940.50 | | Meeting with billing team regarding updated billing summaries; revise and compile draft billing summaries for transmittal to client |
| 7/16/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | | Provide articles on Puerto Rico bonds |
| 7/16/2018 | 9 | Ronald Cappiello | $ 390.00 | 0.80 | $ 312.00 | | Monitor Pacer-Pro docket updates from 7-12-18 through 7-16-18 |
| 7/17/2018 | 10 | Daniel J. Lanigan | $ 845.00 | 0.20 | $ 169.00 | | Emails regarding monthly billing summaries; new invoice procedure |
| 7/17/2018 | 10 | Sean A Feener | $ 495.00 | 0.90 | $ 445.50 | | Meeting with billing team regarding format of required monthly fee statements |
| 7/17/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | | Provide articles on Puerto Rico bonds |
| 7/17/2018 | 8 | Sean A Feener | $ 495.00 | 0.80 | $ 396.00 | | Update call with client counsel |
| 7/17/2018 | 9 | Ronald Cappiello | $ 390.00 | 0.40 | $ 156.00 | | Monitor Pacer-Pro docket updates for Commonwealth of PR, PROMESA Title III case |
| 7/18/2018 | 10 | Daniel J. Lanigan | $ 845.00 | 0.20 | $ 169.00 | | Emails regarding new fee process with DLA |
| 7/18/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | | Provide articles on Puerto Rico bonds |
| 7/18/2018 | 5 | Daniel J. Lanigan | $ 845.00 | 0.20 | $ 169.00 | | Review mediation memorandum from clerk; related emails |
| 7/18/2018 | 9 | Ronald Cappiello | $ 390.00 | 0.50 | $ 195.00 | | Monitor Pacer-Pro docket updates for Commonwealth PR PROMESA Title III case |
| 7/19/2018 | 13 | Daniel J. Lanigan | $ 845.00 | 0.30 | $ 253.50 | | Review latest press regarding ongoing Puerto Rico restructuring |
| 7/19/2018 | 13 | Sean A Feener | $ 495.00 | 0.20 | $ 99.00 | | Get bond buyer article |
| 7/19/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | | Provide articles on Puerto Rico bonds |
| 7/19/2018 | 9 | Ronald Cappiello | $ 390.00 | 1.40 | $ 546.00 | | Review Mediation Memorandum scheduling; Calendar all tentative proposed mediation dates for August-October 2018 and send calendar reminders to attorney team; Monitor Pacer-Pro docket updates for PROMESA Title III case; Schedule "Listen-Only" telephonic appearance reservation for the July 25-26 Omnibus Hearings; Receive court approval for same and forward same to S. Feener |
| 7/20/2018 | 13 | Tomasz S. Kolodziej | $ 320.00 | 0.10 | $ 32.00 | | Provide articles on Puerto Rico bonds |
| 7/22/2018 | 9 | Daniel J. Lanigan | $ 845.00 | 0.30 | $ 253.50 | | Emails regarding GDB restructuring status; review procedure |
| 7/22/2018 | 9 | Sean A Feener | $ 495.00 | 0.40 | $ 198.00 | | Review recent news sources for information regarding GDB Title VI filing; draft summary email to R. Keller regarding same |
| 7/23/2018 | 10 | Daniel J. Lanigan | $ 845.00 | 1.50 | $ 1,267.50 | | Review June invoices and attention to new summary fee format |

# SAMPLE ONLY
- 4 -

| | Issuer | | | | | General Bond Issues |
|---|---|---|---|---|---|---|
| | Invoice No | | | | | 20600009937 |

| 7/23/2018 | 13 | Tomasz S. Kolodziej | $ | 320.00 | 0.10 | $ | 32.00 | Provide articles on Puerto Rico bonds |
|---|---|---|---|---|---|---|---|---|
| 7/23/2018 | 6 | Daniel J. Lanigan | $ | 845.00 | 0.70 | $ | 591.50 | Review new complaint filed by Assured in PROMESA title III; related emails |
| 7/23/2018 | 9 | Daniel J. Lanigan | $ | 845.00 | 2.90 | $ | 2,450.50 | Review emails on case status; meet with S. Feener to discuss case status and follow up; attention to follow up items; review GDB summary emails and issues list; emails regarding GDB status; review BNYM pleadings regarding distributions on SUT and follow up; |
| 7/23/2018 | 9 | Ronald Cappiello | $ | 390.00 | 0.60 | $ | 234.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title III case |
| 7/24/2018 | 10 | Daniel J. Lanigan | $ | 845.00 | 0.40 | $ | 338.00 | Review issues with conflicts counsel and local counsel billing summaries; related emails |
| 7/24/2018 | 13 | Tomasz S. Kolodziej | $ | 320.00 | 0.10 | $ | 32.00 | Provide articles on Puerto Rico bonds |
| 7/24/2018 | 9 | Pieter Van Tol | $ | 1,035.00 | 2.40 | $ | 2,484.00 | Review background dockets and docket; call with R. Keller and team on RSA and implications for bondholders; review further documents; research on issuers' obligations; e-mails regarding trust agreement |
| 7/24/2018 | 9 | Daniel J. Lanigan | $ | 845.00 | 0.50 | $ | 422.50 | Review issues in connection with GDB title VI; review docket to check status and follow up emails regarding the same |
| 7/24/2018 | 9 | Daniel J. Lanigan | $ | 845.00 | 3.60 | $ | 3,042.00 | Internal meeting regarding status of PROUD issues and follow up matters going forward; internal call regarding GDB issues; review GDB issues; related emails; review press relating to ongoing matters in Puerto Rico; |
| 7/24/2018 | 9 | Sean A Feener | $ | 495.00 | 2.20 | $ | 1,089.00 | Internal update meeting; call with P. Van Tol regarding GDB RSA and qualifying modification; compile documents for P. Van Tol and related follow-up |
| 7/24/2018 | 9 | Ronald Cappiello | $ | 390.00 | 0.50 | $ | 195.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title III case |
| 7/25/2018 | 13 | Tomasz S. Kolodziej | $ | 320.00 | 0.10 | $ | 32.00 | Provide articles on Puerto Rico bonds |
| 7/25/2018 | 9 | Pieter Van Tol | $ | 1,035.00 | 1.10 | $ | 1,138.50 | Review relevant documents; emails; participate in call with I. Goldman and others; follow-up e-mails |
| 7/25/2018 | 9 | Daniel J. Lanigan | $ | 845.00 | 5.90 | $ | 4,985.50 | Monitor part of omnibus Title III hearing; follow up on summary; emails with local counsel about hearing and status report; follow up issues; review ongoing issues in connection with GDB RSA and how it affects PROUD bonds; call with conflicts counsel on issues; follow up |
| 7/25/2018 | 9 | Sean A Feener | $ | 495.00 | 4.20 | $ | 2,079.00 | Attend telephonically the Title III hearing in San Juan; draft summary report |

## SAMPLE ONLY
- 5 -

| | Issuer | General Bond Issues |
|---|---|---|
| | Invoice No | 20600009937 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/25/2018 | 9 | Ronald Cappiello | $ | 390.00 | 1.00 | $ | 390.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title 111 case; Download/save copy of Amended Agenda for today's hearing; Email copy of same to attorney team; Contact Courtsolutions for problem with audio in Courtroom; Contact Judge's chambers regarding same; Email to D. Lanigan and S. Feener that problem is being handled in the Courtroom |
| 7/26/2018 | 13 | Tomasz S. Kolodziej | $ | 320.00 | 0.20 | $ | 64.00 | Provide articles on Puerto Rico bonds |
| 7/26/2018 | 8 | Daniel J. Lanigan | $ | 845.00 | 2.50 | $ | 2,112.50 | Review latest press on PR restructuring issues in preparation of PROUD call; contribute to agenda; review GDB letter; attend call and attention to follow up issues |
| 7/26/2018 | 8 | Sean A Feener | $ | 495.00 | 0.80 | $ | 396.00 | Draft agenda for PROUD update call; PROUD update call |
| 7/26/2018 | 9 | Ronald Cappiello | $ | 390.00 | 0.20 | $ | 78.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title III case |
| 7/27/2018 | 10 | Daniel J. Lanigan | $ | 845.00 | 0.30 | $ | 253.50 | Review local counsel exhibits for June |
| 7/27/2018 | 13 | Tomasz S. Kolodziej | $ | 320.00 | 0.20 | $ | 64.00 | Provide articles on Puerto Rico bonds |
| 7/27/2018 | 9 | Ronald Cappiello | $ | 390.00 | 0.50 | $ | 195.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title III case |
| 7/30/2018 | 10 | Daniel J. Lanigan | $ | 845.00 | 0.50 | $ | 422.50 | Emails with local counsel on billing exhibits for April and May; review and address exhibit issues and circulate to client |
| 7/30/2018 | 13 | Daniel J. Lanigan | $ | 845.00 | 0.60 | $ | 507.00 | Emails on status of PR restructuring matters; review press articles |
| 7/30/2018 | 13 | Tomasz S. Kolodziej | $ | 320.00 | 0.10 | $ | 32.00 | Provide articles on Puerto Rico bonds |
| 7/30/2018 | 9 | Ronald Cappiello | $ | 390.00 | 0.30 | $ | 117.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title III case |
| 7/31/2018 | 10 | Daniel J. Lanigan | $ | 845.00 | 1.00 | $ | 845.00 | Attention to issues relating to June invoices and monthly statements |
| 7/31/2018 | 13 | Tomasz S. Kolodziej | $ | 320.00 | 0.10 | $ | 32.00 | Provide articles on Puerto Rico bonds |
| 7/31/2018 | 4 | Daniel J. Lanigan | $ | 845.00 | 1.50 | $ | 1,267.50 | Review latest PROMESA board docs, annual report, PREPA settlement, etc.; relates emails |
| 7/31/2018 | 9 | Ronald Cappiello | $ | 390.00 | 0.30 | $ | 117.00 | Monitor Pacer-Pro docket updates for Commonwealth of Puerto Rico, PROMESA Title III case |

Totals:                                         61.30                    USD 43,118.00

# SAMPLE ONLY
### - 6 -

| | |
|---|---|
| Issuer | General Bond Issues |
| Invoice No | 20600009937 |

### Summary

| Task | Task Code Description | Hours | Fees |
|---|---|---|---|
| 1 | Fiscal Plan Overview | 1,40 | 1,043,00 |
| 4 | PROMESA Board Matters | 1,50 | 1,267,50 |
| 5 | Mediation Matters | 0,20 | 169,00 |
| 6 | Litigation: Contested Matters and Adversary Proceedings | 0,80 | 676,00 |
| 7 | Proof of Claim Filing/Objections | 0,50 | 622,50 |
| 8 | Proud Update Calls | 7,20 | 5,189,00 |
| 9 | Title III/VI Proceedings | 33,90 | 23,337,50 |
| 10 | Monthly Fee Statements | 12,40 | 9,218,00 |
| 13 | General Bond Administration | 3,40 | 1,595,50 |
| **Total Professional Services** | | **61,30** | **USD 43,118,00** |

# SAMPLE ONLY

- 7 -

| | |
|---|---|
| Issuer | General Bond Issues |
| Invoice No | 20600009937 |

**Disbursements**

| Description | Amount |
|---|---|
| Hospitality | 104.33 |
| Computer Research - Pacer | 133.30 |
| Word Processing | 12.50 |
| **Total for Disbursements** | **USD 250.13** |

**Total Current Charges: 43,118.00**

# SAMPLE ONLY

- 8 -

U.S. Bank National Association

General Bond Issues

| Date | August 24, 2018 |
|---|---|
| Invoice No | 20600009937 |
| Our Ref | 021918.000014 |

### Outstanding Invoices

Paid-in-full invoices and corresponding payments are not shown below.
This summary reflects payments received through August 24, 2018
This statement includes the current invoice.

| Invoice No. | Date | Fees | Other Charges | Total | Payments | Date Last Payment | Balance USD |
|---|---|---|---|---|---|---|---|
| 2858060 | 11/04/14 | 72,120.67 | 0.00 | 72,120.67 | 57,078.85 | 2017-08-30 | 15,041.82 |
| 2862402 | 11/22/14 | 165,952.65 | 0.00 | 165,952.65 | 133,571.80 | 2017-08-30 | 32,380.85 |
| 2879593 | 02/05/15 | 43,064.00 | 580.00 | 43,644.00 | 40,353.15 | 2017-08-30 | 3,290.85 |
| 2885972 | 03/06/15 | 26,364.50 | 0.00 | 26,364.50 | 24,365.99 | 2017-08-30 | 1,998.51 |
| 2889474 | 03/23/15 | 18,226.00 | 0.00 | 18,226.00 | 16,607.46 | 2017-08-30 | 1,618.54 |
| 2896767 | 04/27/15 | 32,419.50 | 731.25 | 33,150.75 | 29,911.14 | 2017-08-30 | 3,239.61 |
| 2902554 | 05/28/15 | 28,195.50 | 1,175.00 | 29,370.50 | 23,593.66 | 2017-08-30 | 5,776.84 |
| 2912803 | 06/30/15 | 63,344.50 | 0.00 | 63,344.50 | 44,569.38 | 2017-08-30 | 18,775.12 |
| 2917984 | 07/30/15 | 12,254.00 | 0.00 | 12,254.00 | 10,302.53 | 2017-08-30 | 1,951.47 |
| 2934615 | 09/30/15 | 63,946.00 | 659.31 | 64,605.31 | 50,248.29 | 2017-08-30 | 14,357.02 |
| 2941905 | 10/30/15 | 32,950.50 | 63.45 | 33,013.95 | 25,689.36 | 2017-08-30 | 7,324.59 |
| 2946023 | 11/23/15 | 33,926.50 | 37.50 | 33,964.00 | 26,416.46 | 2017-08-30 | 7,547.54 |
| 2953847 | 12/23/15 | 29,433.50 | 25.00 | 29,458.50 | 22,912.19 | 2017-08-30 | 6,546.31 |
| 2960254 | 01/29/16 | 8,717.50 | 50.00 | 8,767.50 | 6,819.19 | 2017-08-30 | 1,948.31 |
| 2965288 | 02/29/16 | 10,345.50 | 125.00 | 10,470.50 | 8,129.84 | 2017-08-30 | 2,340.66 |
| 2972696 | 03/30/16 | 20,728.50 | 0.00 | 20,728.50 | 16,122.19 | 2017-09-01 | 4,606.31 |
| 2981860 | 04/25/16 | 11,932.00 | 187.50 | 12,119.50 | 9,425.77 | 2017-09-01 | 2,693.73 |
| 2989388 | 05/26/16 | 20,629.50 | 37.50 | 20,667.00 | 16,074.32 | 2017-09-01 | 4,592.68 |
| 2997084 | 06/23/16 | 31,871.50 | 0.00 | 31,871.50 | 21,247.68 | 2017-09-01 | 10,623.82 |
| 3003683 | 08/18/16 | 54,851.00 | 0.00 | 54,851.00 | 36,567.36 | 2017-09-01 | 18,283.64 |
| 3014634 | 09/20/16 | 49,455.50 | 87.50 | 49,543.00 | 33,028.68 | 2017-09-01 | 16,514.32 |
| 3023657 | 10/27/16 | 27,070.00 | 12.50 | 27,082.50 | 18,055.02 | 2017-09-01 | 9,027.48 |
| 3034589 | 11/29/16 | 42,846.00 | 0.00 | 42,846.00 | 28,564.02 | 2017-09-01 | 14,281.98 |
| 3039697 | 12/13/16 | 33,059.50 | 12.50 | 33,072.00 | 22,048.02 | 2017-09-01 | 11,023.98 |
| 3049864 | 01/23/17 | 18,601.50 | 62.50 | 18,664.00 | 12,442.67 | 2017-09-01 | 6,221.33 |
| 3054985 | 02/15/17 | 29,381.00 | 50.00 | 29,431.00 | 16,350.55 | 2017-09-01 | 13,080.45 |
| 3065570 | 03/24/17 | 27,914.00 | 0.00 | 27,914.00 | 15,507.80 | 2017-09-01 | 12,406.20 |

# SAMPLE ONLY

- 9 -

| | | | Date | August 24, 2018 |
|---|---|---|---|---|
| U.S. Bank National Association | | | Invoice No | 20600009937 |
| | | | Our Ref | 021918.000014 |

General Bond Issues

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3069402 | 04/13/17 | 45,716.00 | 0.00 | 45,716.00 | 25,397.80 | 2017-10-09 | 20,318.20 |
| 3078793 | 05/23/17 | 122,637.50 | 12.50 | 122,650.00 | 68,138.90 | 2017-10-09 | 54,511.10 |
| 3086178 | 06/15/17 | 87,120.00 | 37.50 | 87,157.50 | 67,789.19 | 2018-01-05 | 19,368.31 |
| 3095989 | 07/26/17 | 75,138.00 | 1,125.00 | 76,263.00 | 42,368.35 | 2017-12-05 | 33,894.65 |
| 3102883 | 08/17/17 | 79,047.00 | 37.50 | 79,084.50 | 43,935.85 | 2017-12-11 | 35,148.65 |
| 3113918 | 09/28/17 | 54,250.00 | 292.50 | 54,542.50 | 30,301.40 | 2018-01-23 | 24,241.10 |
| 3120982 | 10/26/17 | 61,238.00 | 137.50 | 61,375.50 | 34,121.95 | 2018-02-12 | 27,253.55 |
| 3126961 | 11/21/17 | 55,773.00 | 720.40 | 56,493.40 | 31,384.70 | 2018-05-04 | 25,108.70 |
| 3132303 | 12/12/17 | 66,289.00 | 0.00 | 66,289.00 | 36,827.20 | 2018-05-04 | 29,461.80 |
| 206-00000986 | 02/21/18 | 38,705.00 | 0.00 | 38,705.00 | 21,502.80 | 2018-05-14 | 17,202.20 |
| 20600002768 | 03/27/18 | 86,343.00 | 140.00 | 86,483.00 | 38,436.88 | 2018-07-03 | 48,046.12 |
| 20600005499 | 04/30/18 | 38,142.50 | 0.00 | 38,142.50 | 12,714.18 | 2018-08-06 | 25,428.32 |
| 20600008011 | 06/28/18 | 101,343.00 | 3,406.20 | 104,749.20 | 0.00 | | 104,749.20 |
| 20600009524 | 07/31/18 | 32,271.00 | 120.10 | 32,391.10 | 0.00 | | 32,391.10 |
| 20600009937 | 08/24/18 | 43,118.00 | 250.13 | 43,368.13 | 0.00 | | 43,368.13 |
| Outstanding Invoices: | | | | | | | 787,985.09 |

**EXHIBIT F**

All invoices shall be submitted by U.S. Bank to:

AAFAF
Attn: Sebastián M. Torres, Esq.
Roberto Sanchez Vilella (Minillas)
Government Center de Diego Ave.
Stop 22 San Juan, PR 00907
Sebastian.Torres@aafaf.pr.gov

Diego Figueroa-Rodriguez
DLA Piper LLP (US)
200 South Biscayne Blvd.
Suite 2500
Miami, FL 33131
diego.figueroa@dlapiper.com

EXHIBIT G

## DISPUTE RESOLUTION

In the event that U.S. Bank, AAFAF and any of the applicable Governmental Entities are not able to resolve within the Negotiation Period an objection raised during the Objection Period by AAFAF or an applicable Governmental Entity related to the reasonableness of all, or any portion of, an invoice (a "Dispute"), any of such Parties may submit the Dispute to binding arbitration in Puerto Rico pursuant to the Puerto Rico Arbitration Act ("PRAA"), Act No. 376 of May 8, 1951, P.R. Laws, tit. 32, secs. 3201-3229, subject to compliance with the following provisions.

1.     Dispute Notice. Any such Party wishing to submit a Dispute to binding arbitration, within five (5) business days after the expiration of the Negotiation Period, shall first deliver a written notice to the other affected Parties of the existence of such Dispute ("Dispute Notice"). A Dispute Notice shall set forth in reasonable detail the nature of the Dispute and shall be accompanied by a full disclosure of all factual evidence and a statement of the applicable legal basis of the Dispute; *provided*, *however*, that: (i) failure to provide any such disclosure or to state any such legal basis shall not operate as a waiver of such legal basis or operate to preclude the presentation or introduction of such factual evidence in any subsequent arbitration or proceeding or otherwise constitute a waiver of any right which a Party may then or thereafter possess; and (ii) any settlement proposal made or provided shall be deemed to have been made or provided as part of a settlement discussion and may not be introduced in any arbitration or proceeding without the prior written consent of the Party making such disclosure and/or statement.

2.     Negotiating Representative. Within five (5) business days after the delivery of a Dispute Notice, AAFAF and U.S. Bank shall each appoint one (1) Negotiating Representative.

1

AAFAF's Negotiating Representative may be the Executive Director of the Governmental Entity involved in the Dispute.

3.    **Amicable Resolution.** Those two (2) Negotiating Representatives shall within fifteen (15) business days of receipt of the Dispute Notice, meet and negotiate in good faith to attempt to resolve amicably the Dispute. During such fifteen (15) business day period, a Party asserting a claim against any other Party shall disclose to the other Party all previously undisclosed factual evidence and legal basis of such claim or defense; provided, however, that: (i) failure to provide any such disclosure or to state any such legal basis shall not operate as a waiver of such legal basis or operate to preclude the presentation or introduction of such factual evidence in any subsequent arbitration or proceeding or otherwise constitute a waiver of any right which a Party may then or thereafter possess and (ii) any settlement proposal made or provided shall be deemed to have been made or provided as part of a settlement discussion and may not be introduced in any arbitration or legal proceeding without the written consent of the Party making such disclosure and or/statement.

4.    **Demand for Arbitration.** If the Negotiating Representatives fail to resolve a Dispute within fifteen (15) business days from delivery of a Dispute Notice, any such Party (the "Claimant") may demand from the other Party or Parties (the "Respondent(s)") the initiation of a final and binding arbitration proceeding to be conducted pursuant to the provisions of the PRAA ("Demand for Arbitration"). The Demand for Arbitration shall include:

  a.   The name of each party and their representatives;

  b.   The address for each party and their representatives, including the telephone and fax numbers and e-mail addresses;

  c.   the nature and legal basis of the claim,

2

     d, factual evidence supporting the claim,

     e, relief sought and dollar amount involved

5. <u>Appointment of Arbitrator</u>. The arbitration shall be conducted in San Juan, Puerto Rico before an arbitrator to be appointed by mutual agreement of the Negotiating Representatives described in paragraph 2 above. If the Negotiating Representatives fail to appoint an arbitrator within five (5) business days after a Demand for Arbitration was sent, the Claimant may file a motion before the Court of First Instance of San Juan, Puerto Rico and request the appointment of an arbitrator pursuant to Article 5 of the PRAA.

6. <u>Answering Statement</u>. A Respondent shall file an answering statement within fourteen (14) calendar days after an arbitrator has been appointed. The Respondent shall, at the time of any such filing, send a copy of any answering statement to the Claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the Respondent will be deemed to deny the claim.

7. <u>Arbitration Award</u>. The arbitrator shall issue a final and binding arbitration award within thirty (30) calendar days after an answering statement has been filed or after the 14-day period to do so elapses. The arbitration award shall resolve the dispute in accordance with the laws of the Government of Puerto Rico and shall be final and binding on such Parties.

8. <u>Costs</u>. Each Party shall bear its own costs and expenses in preparing for and participating in the arbitration proceedings except that each Party shall pay one-half of the compensation payable to the arbitrator and one-half of any other costs directly related to the arbitration proceedings.

3