

Estado Libre Asociado de Puerto Rico
Commonwealth of Puerto Rico
**OFICINA DEL CONTRALOR**
Office of the Comptroller
San Juan, Puerto Rico

Código de entidad: 3125

Registro de Envío de Contratos, Escrituras y Documentos Relacionados

Fecha de envío: 6/12/2015 6:21:11 PM

**Número de envío:** 441301

Envío generado por:
Guillermo A. Mulet R

Fecha de Impresión:

Cantidad de Contratos Enviados: 1
6/12/2015 6:21:17 PM

Regresar

| Contrato | Enmienda | Fecha Otorgado | Cuantía | Vigencia desde | Vigencia hasta | Seguro Social | Nombre Contratista | Exento |
|---|---|---|---|---|---|---|---|---|
| 2015-000163 | | 6/8/2015 | $45,730.00 | 6/8/2015 | 6/30/2015 | 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 | ROY JORGENSEN ASSOCIATES, INC. | 0 |

http://contratosonline.ocpr.gov.pr/wfInfRegistro.aspx

6/12/2015

COMMONWEALTH OF PUERTO RICO DEPARTMENT OF
TRANSPORTATION AND PUBLIC WORKS PUERTO RICO
HIGHWAYS AND TRANSPORTATION AUTHORITY

AGREEMENT FOR PROFESSIONAL SERVICES

CONTRACT NUMBER _____     2015-000163

APPEAR:

**AS FIRST PARTY:** The **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "AUTHORITY"), a public corporation and instrumentality of the Commonwealth of Puerto Rico, created by virtue of Act No. 74 of June 23, 1965, as amended (the "Organic Act"), represented herein by its Executive Director, Carmen A. Villar Prados, of legal age, married, and resident of Guaynabo, Puerto Rico, authorized by the Board of Directors as evidenced by Resolution number 2015-15; hereinafter referred to as the "AUTHORITY".

**AS SECOND PARTY:** Roy Jorgensen Associates, Inc. a corporation duly authorized to do business in Puerto Rico, represented in this act by Mr. Douglas W. Selby, President, of legal age, and resident of Frederick, Maryland; hereinafter referred to as "The Consultant".

**WITNESSETH**

**WHEREAS** it is the desire of the AUTHORITY to make an annual general evaluation of the level of maintenance of Traffic Facilities, especially of the surface and shoulder conditions and condition of structures and signing, as well as an evaluation of the construction program and review of revenue projections; and

**WHEREAS** the CONSULTANT has previously performed this service and agreed to undertake the proposed evaluation herein described, under accepted and approved standards as set forth by the AUTHORITY;

**WHEREAS:** The AUTHORITY's Budgeting Office has issued the required certification of available funds to acquire the services that will be provided by the CONSULTANT.

**NOW, THEREFORE,** the parties hereto do mutually agree to the following.

**TERMS AND CONDITIONS**

**FIRST:** The objective is to make a general evaluation for Fiscal Year 2014-2015 of the level of maintenance of all traffic facilities constructed, financed in whole or in part by the issuance of bonds, such evaluation to be directed toward surface and shoulder conditions, condition of structures and signing on said Traffic Facilities, including the "Tren Urbano" maintenance operations.

After the completion of the general evaluation of the level of condition of the Traffic Facilities, the CONSULTANT shall prepare a formal report indicating their findings resulting from such general evaluation of the level of maintenance of such Traffic Facilities as to whether such Traffic Facilities have been maintened in good repair, working order and sound condition, and their recommendations as to repairs, renewals or replacements which are needed.

In addition, the CONSULTANT shall include in their report comments with respect to any supplements or revisions made by the AUTHORITY in the Master Plan or in the Five-Year

Construction Improvement Program referred to in SECTION 603 of Resolution 98-06 and their recommendations as to any additional supplements or revisions which should be made in such plan or program.

SECOND: The CONSULTANT shall do, perform and carry out in a satisfactory and proper manner as prescribed by the AUTHORITY, all studies, surveys, investigations, analyses and all other activities needed to produce the required information that shall be carefully analyzed in order to arrive at specific recommendations to satisfy the objective to this STUDY as described in the first clause of this agreement.

The CONSULTANT will also provide services relative to Due Diligence of new bond issues that the Authority may be seeking. This will involve responding to questions and inquires from bonding companies as selected by the Authority.

All the services required hereunder will be performed by the CONSULTANT or under its supervision, and all personnel engaged in the work shall be fully qualified and shall be authorized or permitted under the Laws of the Commonwealth of Puerto Rico. Any part of this Agreement that requires professional services of any nature that represents the practice of engineering, architecture and/or land surveying shall be performed by Rene V. Batista Engineers, P.S.C., or other professionals duly licensed to practice those professions in Puerto Rico, and be active members of the College of Engineers of Puerto Rico, as certified by them.

The STUDY shall include, but not be limited to, the following services that will be performed by the CONSULTANT, according to methods, procedures, and programs to be prepared by the CONSULTANT and submitted for review and approval to the AUTHORITY:

1. General evaluation of the level of maintenance of all TRAFFIC FACILITIES constructed, financed in whole or in part by the issuance of bonds (approximately 2,000 kms of highways), directed toward surface and shoulder conditions, condition of all structures and signing, and condition of Tren Urbano facilities currently in operation.

2. Findings resulting from such general evaluation as to whether such facilities have been maintained in good repair, working order and sound condition.

3. Recommendations as to needed repairs, renewals or replacements.

4. Review of projections of revenue as prepared by the AUTHORITY of funds available for the constructions program and recommendations as to any revisions that might be appropriate.

5. Comment on supplements or revisions made by the AUTHORITY in the Master Plan or in the Five-Year Construction Improvement Program.

6. Recommendations as to any additional supplements or revisions which should be made in such plan or in such priorities program.

7. A document printed report consisting of two sections:
    a. the studies, findings, and recommendations regarding the maintenance evaluation, and
    b. comments with respect to any supplements or revisions in the Master Plan or in the Five-Year Constructions Improvement Program and recommendations as to any additional supplements or revisions which should be made.

8. Provide written response to due diligence questions from bonding companies and other financial organizations as specified by the AUTHORITY. Participate in telephone interviews or meetings at times and locations as specified by the bonding organizations or the AUTHORITY.

**THIRD:** Upon conclusion of the necessary studies and investigations, the CONSULTANT shall prepare and submit ten (10) copies of a printed documented report in draft form for review by the AUTHORITY prior to reproducing the report in final form. The draft report shall incorporate all pertinent analyses, tabulations, data and findings and the description of any methods utilized, conclusions and recommendations. The Authority will provide written comments, if any, to the CONSULTANT regarding format and content of the draft report. Upon receipt of any comments, the CONSULTANT will make any required revisions and provide twenty (20) copies of the final report.

If new bonding issues are implemented during the fiscal year, the CONSULTANT shall prepare written responses to due diligence questions and be prepared to participate in telephone interviews and/or meetings regarding the proposed bond issue(s).

**FOURTH:** The CONSULTANT shall initiate the work included in the Agreement no later than three weeks after the order to proceed.

All required services for the Fiscal Year 2014-2015 shall be completed and the draft report submitted within six month of the field assessment. The final report shall be submitted one month after receipt of comments from the AUTHORITY. If no comments are received by 90 days after submittal of the draft report, the report will be finalized and submitted as complete.

An inspection visit shall be made annually. Scheduling of the inspection visit shall be coordinated with the AUTHORITY and will be during the November-February time frame.

## PERFORMANCE STANDARDS

**FIFTH:** In the organization and execution of the evaluation, including the field inspection, analyses and reviews, the CONSULTANT shall perform the technical and professional services called for in this Agreement in a manner satisfactory to the AUTHORITY, and consistent with accepted procedures and the highest professional and technical standards.

**SIXTH:** The AUTHORITY will provide to the CONSULTANT the following items as soon as they are available:

1. Copy of the current Five-Year Construction Improvement Program with project description, estimated construction cost, and investment by cost item for each year.

2. Supplements or revisions to the Master Plan or to the Five-Year Construction Improvement Program, if any.

3. Listing of traffic facilities constructed in the most recently completed fiscal year, financed in whole or in part by the issuance of bonds including project description, location, and section length.

4. Copies of the Puerto Rico State Highway Map, supplemented by Metropolitan Area Transportation Maps for all urbanized areas, as amended, where the Master Plan is depicted.

5. Copies of the Maps mentioned in Item 4 showing the current Five-Year Construction Improvement Program.

3

6. Copies of the Maps mentioned in Item 4 showing traffic facilities constructed in the most recently completed fiscal year.

SEVENTH: The AUTHORITY agrees to pay de CONSULTANT the maximum amount of forty-five thousand seven hundred thirty dollars ($45,730.00) which shall constitute full and complete compensation for the CONSULTANT's services for the Fiscal Year 2014-2015 maintenance evaluation.

7.1 The CONSULTANT shall submit invoices to the AUTHORITY as follows:

- Eighteen thousand nine hundred dollars ($18,900) will be invoiced upon completion of the inspection visit, less a retainer of two thousand eight hundred and thirty five dollars ($2,835.00);

- Nineteen thousand eight hundred ninety dollars ($19,890) will be invoiced upon delivery of the draft report, less a retainer of two thousand nine hundred eighty three dollars and fifty cents ($2,983.50);

- A final invoice in the amount of six thousand nine hundred forty dollars ($6,940.00), plus the previously retained amounts totaling five thousand eight hundred eighteen dollars and fifty cents ($5,818.50), will be presented to the AUTHORITY upon approval of the CONSULTANT's final report and submittal of 20 copies of said report, subject to an inspection of the account by the Office of the Internal Auditor of the AUTHORITY. The final invoice, submitted after approval of the final report, shall not be subject to retainage.

7.2 If new bonding issues are implemented during the fiscal year, the AUTHORITY may request additional services under a separate agreement.

7.3 The invoice shall include the following certification, as a condition for payment.

"Under penalty of absolute nullity, I hereby certify that none of the employees of the Puerto Rico Highway and Transportation Authority is part or has interest in the earnings or benefits product of the contract upon which this invoice is based. If part or any interest in the earnings or benefits product of this contract should come forth, then an official dispensation has been previously approved. The only consideration in the provision of the goods and services object of this contract is the payment agreed with the agency's authorized representative. That the amount of this invoice is true and correct. That all the services have been rendered and have not been paid."

7.4 In the event that the AUTHORITY elects to have the Office of the Internal Auditor inspect the accounts of the CONSULTANT, such inspection shall be initiated and completed in a timely manner so as to not unduly delay payment of retainage to the CONSULTANT.

7.5 An invoice shall be accompanied by an original and five (5) copies. Billing invoices shall be duly certified by an authorized representative of the CONSULTANT as to correctness of the same and to the fact that no previous payment has been effected, credited and billed for the period as of the date of the statement.

7.6 It is expressly understood and agreed that in no event will the total compensation and reimbursement, if any, to be paid for the EVALUATION, exceed the amount specified in Item 1 of this Article for all of the services required under this Agreement.

7.7 The Authority will pay Professional Services from Account Number 511026-7003.

4

## INTEREST OF MEMBERS OF THE AUTHORITY, OF CONSULTANT

The CONSULTANT warrants that he has not employed or retained any company or person, other tan bona fide employees working solely for the CONSULTANT, to solicit or secure the work to be performed under this Agreement, and that he has not paid or agreed to pay any company or person, other than bona fide employees working solely for the CONSULTANT, any fee, commission, percentage, brokerage fee, gifts or any other consideration, contingent upon or resulting from the award or making of this Agreement.

No member of the governing body of the AUTHORITY and no other officer, employee, or agent of the AUTHORITY or their family members shall have any personal interest, direct or indirect, in this Agreement.

No member of the Municipal Governments and no other public official of such localities shall have any personal interest, director or indirect, in this Agreement.

The CONSULTANT covenants that he presently has no interest and shall not acquire any interest, direct or indirect, which would conflict in any manner or degree with the performance of services required to be performed under this Agreement. The CONSULTANT further covenants that in the performance of this Agreement no person having any such interest shall be employed.

No members of or Delegate to the Congress of the United States of America, and no Resident Commissioner, shall be admitted to any share or part thereof or to any benefit to arise here from.

EIGHT: None of the services covered by this agreement shall be subcontracted without the prior written approval of the AUTHORITY. The AUTHORITY reserves the rights to withhold approval of subcontracting such portions of the services which the AUTHORITY may deem are not in the AUTHORITY'S best interest. The CONSULTANT agrees that the AUTHORITY will incur in no duplication of costs as a result of any such subcontract.

Each subcontract entered into shall provide that the provisions of this agreement shall apply to the subcontractor and his officers, agents and employees in all respects as if it and they were employees of "The CONSULTANT". "The CONSULTANT" agrees to bind each subcontractor and each subcontractor shall agree to be bound by the terms of this agreement insofar as applicable to its services.

"The CONSULTANT" agrees that no approval by the AUTHORITY of any proposed subcontractor, nor any subcontract, nor anything in the agreement shall create or be deemed to create any rights in favor of a subcontractor and against the Department of Transportation and Public Works (the "DEPARTMENT") and/or the AUTHORITY, nor shall it be deemed or construed to impose upon the DEPARTMENT and/or the AUTHORITY any obligation, liability or duty to a subcontractor, or to create any contractual relation whatsoever between a subcontractor and the DEPARTMENT and/or the AUTHORITY. The CONSULTANT shall incorporate this clause in any agreement with a subcontractor.

NINTH: The CONSULTANT agrees to indemnify and hold harmless from any claims initiated against the DEPARTMENT and/or the AUTHORITY pursuant to any subcontracts it enters into in performance of this agreement. The AUTHORITY'S approval of any subcontractor shall not relieve "The CONSULTANT" of any of its responsibilities, duties and liabilities hereunder. "The CONSULTANT" shall be solely responsible to the AUTHORITY for the acts or defaults of its subcontractors and of each subcontractor's officers, agents, and employees, each of whom shall,

for this purpose be deemed to be the agent or employee of "The CONSULTANT" by nature of its subcontract.

TENTH: The parties may terminate this agreement, in whole or in part, whenever any one of them shall determine that such termination is in its best interest. Any such termination shall be effected by delivery of a Notice of Termination specifying the extent to which performance under the agreement is terminated, and the date upon which such termination becomes effective, which in any event will be no less than thirty (30) calendar days from the effective cancellation date.

The AUTHORITY reserves the right to cancel immediately the agreement resulting for cause by a written Notice to "The CONSULTANT". If through any cause, as defined in clause eleventh under this agreement, or if "The CONSULTANT" shall violate any of the covenants, components or stipulations of this agreement, the AUTHORITY shall have the right to terminate this agreement immediately by giving to "The CONSULTANT" the corresponding Notice of Termination.

a. In the event of any termination, the AUTHORITY shall compensate "The CONSULTANT" based on the work completed up to the Date of Termination. Work completed or partially completed, including all finished or unfinished documents, data, work plans, studies, models, photographs, and reports prepared by EAPD shall become the property of the AUTHORITY.

b. The AUTHORITY has no obligation to "The CONSULTANT" of any kind, after the Date of Termination. "The CONSULTANT" shall deliver all finished or unfinished documents as described above.

c. Notwithstanding the above, nothing in this agreement shall relieve "The CONSULTANT" from liability to the AUTHORITY for damages sustained by the AUTHORITY by virtue of any breach of this agreement by "The CONSULTANT", and the AUTHORITY may withhold any payments to "The CONSULTANT" until such time as the exact amount of damages due the AUTHORITY from "The CONSULTANT" is determined.

ELEVENTH: The AUTHORITY reserves the right to terminate this agreement for cause. Cause usually results when there is an event of default. An event of default shall be construed as a material breach of this agreement, and occurs when:

a. "The CONSULTANT" fails to provide the contractual services in the quantity and/or the quality as required in this agreement;

b. "The CONSULTANT" fails to begin work in accordance with the terms of this agreement;

c. "The CONSULTANT" in the judgment of the AUTHORITY is unnecessarily, or unreasonably, delaying the performance and completion of the works and services herein contracted;

d. "The CONSULTANT" abandons the work or service to be undertaken;

e. "The CONSULTANT" cannot complete the work to be performed under this agreement within the time herein provided or within such time as the completion has been extended, provided, however, that the impossibility of timely completion is, in the AUTHORITY'S reasonable judgment, solely attributable to conditions within "The CONSULTANT" control;

f. "The CONSULTANT" transfers, conveys or otherwise disposes of this agreement in whole or in part, without prior approval of the AUTHORITY;

g. Any DEPARTMENT or AUTHORITY officer or employee acquires an interest directly or indirectly in this agreement;

h. "The CONSULTANT" violates any of the provisions of this agreement, disregards applicable laws, ordinances, permits, licenses, instructions or orders dictated by the

6

AUTHORITY and applicable to this agreement according to the Laws of the Commonwealth of Puerto Rico;

i. "The CONSULTANT" fails in any of the agreements herein contained;

j. "The CONSULTANT" ceases to conduct business in the normal course by reason of insolvency, bankruptcy, or any similar proceedings whether voluntarily or involuntarily, filed under any present or future bankruptcy or other applicable law; and

k. "The CONSULTANT" admits in writing its inability to pay its debts generally as they become due.

In the event of default, the AUTHORITY shall notify, in writing, its decision to terminate the services immediately subject to clause tenth and all finished or unfinished documents, data, studies, surveys, drawings, maps, models photographs, and material developed through the study, shall become property of the authority.

**TWELTH:** "The CONSULTANT" understands that in the discharge of its professional duties, he has the obligation of complete loyalty towards the AUTHORITY and Puerto Rico. This includes not having, and avoiding, any interests that are adverse to the AUTHORITY or Puerto Rico. These adverse interests include the representation of clients that have or might have a conflict of interest with the AUTHORITY or Puerto Rico. Furthermore, this obligation includes the continuing obligation to divulge to the AUTHORITY all the circumstances of its relationships with clients and third parties, as well as any interest, that may have an effect on the AUTHORITY or Puerto Rico at the time of granting this Agreement or during its effectiveness.

A conflict of interest exists when, for the benefit of a client, it is "The CONSULTANT'S" obligation to promote that which it should oppose in the fulfillment of its obligation towards a former, actual, or potential client. Also, a conflict of interest takes place when conduct is defined as such in the ethical rules and standards recognized in the applicable profession, or in the laws and regulations of Puerto Rico.

It will be a violation of the prohibitions described herein, if any "The CONSULTANT" officer or personnel, or any of its subcontractors or subcontractor's officers, directors, principals, partners, associates or employees, engage in the aforementioned conduct "The CONSULTANT" and its subcontractors will avoid even the appearance of a conflict of interest

"The CONSULTANT" shall, prior to the execution of this Agreement, disclose fully to the AUTHORITY all relationships, affiliations or agreements of any kind between (a) "The CONSULTANT" or any of its subcontractors or any of their partners, principals, officers, directors, shareholders, associated or employees, and (b) any other firm, corporation, partnership or other entity currently doing business in Puerto Rico, or doing business anywhere else if such other firm, corporation, partnership or other entity has any involvement or potential involvement in any governmental agency of Puerto Rico. In addition, "The CONSULTANT" shall promptly disclose to the AUTHORITY any such relationship, affiliation or agreement arising or coming to its attention after the date of this Agreement The AUTHORITY will acknowledge receipt of such disclosure, and will indicate if it believes that there is a conflict of interest or the appearance of a conflict of interest, within 30 days of having received such disclosure. Unless the AUTHORITY indicates otherwise, or after the 30-day period has expired, whichever comes later, it will be understood that "The CONSULTANT" can continue to provide services under this agreement, provided that nothing in this regard will preclude the Authority from indicating to "The CONSULTANT" that it believes that there is a possible conflict of interest if the AUTHORITY so determines at a later date, based on new information or information not previously/disclosed.



Regarding the prohibitions herein mentioned, "The CONSULTANT" acknowledges the authority of the AUTHORITY to assure compliance with these prohibitions. If the AUTHORITY

7

believes that there is or has been a conflict of interest, or the appearance of a conflict of interest, it will notify "The CONSULTANT" of the AUTHORITY'S findings. "The CONSULTANT" shall make full disclosure of all material facts, and shall have a period of thirty (30) days after receipt of such notice to cure the conflict of interest or the appearance of conflict of interest, including the right to request a meeting with the AUTHORITY to set forth or explain its position. This meeting will always be granted when timely requested.

If the conflict of interest or appearance of conflict or interest is not cured to the satisfaction of the AUTHORITY, or the controversy is not otherwise resolved prior to the expiration of such 30-day period, the AUTHORITY may terminate this agreement as provided in clause tenth.

"The CONSULTANT" covenants that it presently has no interest and shall not acquire any interest, direct or indirect, which would conflict in any manner or degree with the performance of the Services under this Agreement. "The CONSULTANT" further covenants that in the performance of this Agreement no person having any such interest shall be employed or granted a subcontract.

"The CONSULTANT" covenants that no member of the governing body of the DEPARTMENT or the AUTHORITY, and no other official, agent, or employee of the AUTHORITY, nor any officer, director, agent, employee or consultant of the Project Manager, nor their family members who exercises any functions or responsibilities in the review or approval of the undertaking or carrying out of this Agreement, has any personal or financial interest, direct or indirect, in this Agreement or in the proceeds thereof.

"The CONSULTANT" warrants that it will not and has not employed or retained any company or person, other than bona fide employees or subcontractors working solely for "The CONSULTANT", to solicit or secure the work to be performed under this Agreement, and that it has not paid or agreed to pay any company or person, other than bona fide employees or subcontractors working solely for "The CONSULTANT", any fee, commission, percentage, brokerage fee, gift, or any other consideration, contingent upon or resulting from the award or execution of this Agreement.

"The CONSULTANT" certifies that none of its officers or employees, nor any principals, associates, officers, directors, shareholders or employees of any of its subcontractors, are public officials or employees within the meaning of article 3.3. of Law No. 12 of July 24, 1985, as amended, 3 L.P.R.A. § 1823. "The CONSULTANT" certifies the receipt of a copy of this law at the moment of signing this agreement.

"The CONSULTANT" also hereby agrees to comply with the provisions of Act Num. 84 of June 18, 2002, establishing the Code of Ethics for Contractors, Suppliers and Petitioners of Economics Incentives, of the executive agencies of the Commonwealth of Puerto Rico and certifies the receipt of a copy of this law at the moment of signing this agreement.

"The CONSULTANT" represents that it has secured or will secure at its own expense, all personnel required in performing the services under this agreement. Such personnel shall not be employees of, or have any contractual relationship with, the DEPARTMENT and/or the AUTHORITY.

No person employed in the work covered by this agreement shall be discharged or in any way discriminated against because he/she has filed any complaint or instituted or caused to be instituted any proceeding or has testified or is about to testify in any proceeding relating to the labor standards applicable hereunder to this employer.

8

"The CONSULTANT" certifies that it does not have, nor shall have during the term of this Agreement, any other contract or agreement with agencies and instrumentalities of the Government of Puerto Rico which is, or could be, in conflict with this Agreement, unless specifically approved by the AUTHORITY.

THIRTEENTH: "The CONSULTANT" certifies that is has filed income tax return due and payable during the past five (5) fiscal years. "The CONSULTANT" herein certifies that it does not owe any taxes to the Commonwealth of Puerto Rico, and that it has complied with the Puerto Rico Department of the Treasury's circular letter 1300-26-08, as amended. It is expressly recognized that this is an essential condition of this agreement and if false, shall be cause for the termination of this agreement and "The CONSULTANT" shall reimburse to the AUTHORITY any amount received under this agreement. The AUTHORITY shall retain from "The CONSULTANT" invoices the corresponding amount provided by Law to comply with the Puerto Rico Income Tax Law.

It is agreed that "corresponding amount" refers to the amount based on the hourly pay rates for services performed in Puerto Rico. No retainage shall be made on amounts for services performed outside of Puerto Rico, nor on direct expenses. To that effect, "The CONSULTANT" shall separate in its invoices the amounts corresponding to services rendered in Puerto Rico from those rendered elsewhere.

FOURTHEENTH: "The CONSULTANT" hereby certifies that it is duly authorized to do business under the laws of the Commonwealth of Puerto Rico and the execution, delivery and performance thereof are within "The CONSULTANT" authorized powers and are not in contravention of law; and that it is in good standing with the Department of the State.

FIFTHEENTH: "The CONSULTANT" certifies that at the time of execution of this Agreement, it has not been convicted, nor has admitted culpability, or has knowledge that it is been investigated as part of a criminal or civil process in either federal or state courts for felonies related to the misuse of national or public funds or property. "The CONSULTANT" expressly acknowledges that this certification is an essential condition of this Agreement, and that if it is proven false, in whole or in part, it shall be grounds to terminate this Agreement immediately without limitation of any other rights herein established and "The CONSULTANT" will have to reimburse all sum of money earned to the date. "The CONSULTANT" accepts the continuing nature of this obligation through the term of this Agreement.

In accordance with the Circular Letter number 2009-01 issued by the Department of Justice of the Commonwealth of Puerto Rico on March 9, 2009, "The CONSULTANT":

a. Certifies that he has not been convicted, nor has probable cause been found for his arrest for any crime against the State, faith or public function; against the governmental exercise; or that involves funds or public property, in the federal or state scope.
b. Certifies that neither he nor any of the company shareholders, partners, officials, managers, employees, subsidiaries or holding companies has been convicted, nor has probable cause been found for their arrest, for no crime against the State, faith or public function; against the governmental exercise; or that involves funds or public property, in the federal or state scope.
c. He is committed to inform continuously, during the term of the contract, any fact related to any investigation for the commission of a crime against the State, faith or public function; against the governmental exercise; that involves funds or public property, in the federal or state scope. This obligation will have to be continuous during all the stages of the hiring and execution of the contract.
d. Certifies that during ten years previous to the formalization of the contract has not committed any crime against the State, faith or public function; against the

9

governmental exercise; or that involves funds or public property, in the federal or state scope.

e. He is committed to inform even about those cases in which probable cause for the arrest has not been found, when no allegation of guilt has been made or an accusation against the contractor has been filed, but statements or admissions of a crime have been made against him/her.

It is understood between the parties that this contract will be terminated if probable cause for the arrest is found against "The CONSULTANT" for the commission of any crime against the State, faith or public function; against the governmental exercise; or that involves funds or public property, in the federal or state scope.

If this certification is not partially or completely correct, it will be reason enough for the AUTHORITY to terminate this contract immediately, without a previous notice and "The CONSULTANT" will have to reimburse the money received until that day. This obligation is continuous during all the stages of the hiring. If "The CONSULTANT" is a corporation, it certifies that its shareholders and officials fulfill with the above mentioned conditions.

SIXTEENTH: "The CONSULTANT" shall at all times observe and comply with the provisions of all U.S. Government and Commonwealth of Puerto Rico Laws and local ordinances and regulations applicable to the prosecution of all work covered by this agreement. Attention is called to Law Number 120, approved on October 31, 1994, as amended, known as Commonwealth Income Tax Act of 1994 and to Federal and Commonwealth Labor Laws. The AUTHORITY shall retain the corresponding amount per taxes, on revenues obtained from this agreement as set forth in the regulations approved by the Secretary of the Department of Treasury. "The CONSULTANT" shall be responsible of furnishing evidence of any partial or total exemptions from such retention as certified by the Department of Treasury.

"The CONSULTANT" herein certifies that it is not on the U.S. Comptroller General's Consolidated List of Persons or Firms Currently Debarred for Violations of Various Public Contracts Incorporating Labor Standards Provisions. In the event that "The CONSULTANT" is in such List, this agreement shall be canceled, terminated or suspended by the AUTHORITY. "The CONSULTANT" shall comply with the non-procurement debarment and suspension certification requirements of 49 CFR Part 29, and shall submit evidence to the AUTHORITY by providing an eligibility affidavit upon the execution of this agreement.

SEVENTEENTH: "The CONSULTANT" shall be solely responsible for and shall save the AUTHORITY and the DEPARTMENT harmless from any claim or action for any injury or damage to any person, employee and/or property to the extent such injury or damage was sustained through negligence or misconduct of any employee or subcontractor of EAPD in connection with the performance of the services hereunder.

The AUTHORITY and the DEPARTMENT shall save "The CONSULTANT" harmless from any claim or action for any injury to any person, employee, and/or damage to property, including property of "The CONSULTANT", to the extent such injury or damage was sustained through negligence or misconduct of any AUTHORITY or DEPARTMENT'S official.

EIGHTEENTH: All notices required or necessary to be given to the parties shall be forwarded in writing, via U.S. Mail, certified and with return receipt requested, to the following addresses:

To the AUTHORITY:

Carmen A. Villar Prados

Case:17-03283-LTS Doc#:19032-3 Filed:11/02/21 Entered:11/03/21 09:18:40 Desc:
Exhibit C Page 12 of 14

Executive Director
Autoridad de Carreteras y Transportación
P.O. Box 42007
San Juan, Puerto Rico 00940-2007

To "The CONSULTANT":

Douglas W. Selby,
President
Roy Jorgensen Associates
PO Box 70
Buckeystown, Maryland 21717-00070

**NINETEENTH:** In connection with the execution of this agreement, "The CONSULTANT" shall not discriminate against any employee or applicant for employment because of race, religion, color, sex, or national origin. "The CONSULTANT" shall take affirmative actions to insure that applicants are employed, and that employees are treated during their employment, without regard to their race, religion, color, sex or national origin. Such actions shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer; recruitment, or recruitment advertising; layoff, or termination; rates of pay, or other forms of compensation; and selection for training, including apprenticeship.

**TWENTIETH:** The AUTHORITY, the DEPARTMENT, and the United States Department of Transportation (U.S. DOT) shall be the sole owners of any patentable results arising out of this agreement, as well as all information, designs, specifications, know-how, data and findings, and/or copyrights. These shall be made available to the Federal Government for public use, unless the U.S. DOT in a specific case, where it is legally permissible to do so, shall determine that it is in the public interest that it not be so made available.

**TWENTIETH-FIRST:** Any dispute, regardless of the amount, may be settled by arbitration if the parties so agree, or be litigated in a Commonwealth of Puerto Rico court of competent jurisdiction, in San Juan.

**TWENTIETH-SECOND:** All schedules are made part of this agreement. In case of any discrepancies between the schedules and this agreement, the latter shall prevail.

**TWENTIETH-THIRD:** The invalidity of any clause or provision of this agreement shall not affect the validity of the remaining clauses or provisions hereof.

**TWENTY-FOURTH:** This contract does not in any way create the relationship of principal and agent between the Authority and "The CONSULTANT" and under no circumstance shall be considered to be an agent of Authority. The execution of this contract shall not generate any right or benefit for Roy Jorgensen & Associates, its employees, officers or employees of Authority or the Commonwealth of Puerto Rico or of any agency, instrumentality, public corporation or municipality may be entitled on account of their status as such, pursuant to law or regulation including, but not limited to vacation and sick leave, worker compensation or any such benefits.

**TWENTY-FIFTH:** Upon completion of the work, all Consultant's work sheets, estimates, documents, tracings, tabulating cards, "The CONSULTANT'S" tapes, computer programs, procedure manuals, coding indexes, and other data acquired in connection with these studies shall be delivered to and become the property of the AUTHORITY without restriction or limitations on their further use.

Reports, maps, data, or any pertinent information or documents prepared or assembled by the CONSULTANT under this Agreement are confidential, and the CONSULTANT agrees that they

will not be made available to any individual or organization without the prior written approval of the AUTHORITY.

No reports, maps, or other documents produced in whole or in part under this Agreement shall be the subject of an application for copyright by or on behalf of the CONSULTANT.

The CONSULTANT shall deliver to the AUTHORITY all the available information furnished in relation to the proposed evaluations and errors made by "The CONSULTANT" during the performance of any of the phases of the studies and activities that form part of this agreement shall be revised by "The CONSULTANT" at no cost to the authority.

TWENTY-SIXTH: All reports, maps and other documents completed as part of this Agreement shall carry the following notation on the front cover or title page (or in the same block): name of the AUTHORITY, name of the COSULTANT, date the document was prepared, and name of the area concerned and it is understood that all publicity releases to news media shall be approved and released through the authority.

TWENTY-SEVEN: Confidentiality

a. Roy Jorgensen Associates, Inc. acknowledges the proprietary, privileged and confidential nature of all internal, non-public, financial, and business information relating to The AUTHORITY, the Commonwealth of Puerto Rico, its agencies, corporations or municipalities, now or hereinafter provided to Roy Jorgensen Associates, Inc., including work performed by Roy Jorgensen Associates, Inc. under this Contract, whether or not it resulted from written form or any other method of conservation.

b. Roy Jorgensen Associates, Inc. shall keep in strict confidentiality all documents, materials, data and information (collectively, "Confidential Information") that The AUTHORITY furnishes to Roy Jorgensen Associates, Inc. or its subcontractors, or not previously known by Roy Jorgensen Associates, Inc. nor in the public domain nor accessible by any legal means, and shall not make public or disclose any Confidential Information without the previous written consent of The AUTHORITY.

c. Roy Jorgensen Associates, Inc. may divulge Confidential Information to the persons who need to know such Confidential Information to fulfill the purposes of this engagement, provided that such persons shall have been advised of the confidential nature of such Confidential Information, and shall direct them and they shall agree to treat as confidential such Confidential Information and to return all Confidential Information to Roy Jorgensen Associates, Inc. upon request. Roy Jorgensen Associates, Inc. shall list and notify The AUTHORITY of all persons it has disclosed such Confidential Information.

d. In the event of a breach of this article, The AUTHORITY may have just cause to terminate this Contract, immediately.

e. Upon the written request of The AUTHORITY, Roy Jorgensen Associates, Inc. will promptly deliver to The AUTHORITY all Confidential Information without retaining any type of copy thereof for itself or any person that it disclosed such Confidential Information.

f. All reports, analyses, and documents related to the work being contracted hereunder whether or not they resulted in written form or any other form of conservation shall be the exclusive property of The AUTHORITY and shall not be

12

available to any third party except by prior written authorization of The AUTHORITY and to the extent allowed by law. The AUTHORITY shall have the right to use, reproduce and make derivative works from said works. Roy Jorgensen Associates, Inc. assumes no liability for the use of its reports, analyses, and all other furnished documents by The AUTHORITY or other persons for any purpose other than the purposes for which it was prepared under this Contract.

**TWENTY-EIGHT:** Pursuant to Law No. 243 of November 10, 2006, known as the Law of Public Policy regarding the Use of the Federal Social Security Number as an Identity Verification, the PARTIES agree to not share or reveal the Federal Social Security Number used to identify the other "PARTY" for other purposes not permitted by law and make it legible in the case that a copy of this contract is furnished to any person or legal entity.

**TWENTY-NINE:** This contract is effective from the date of its execution until June 30th, 2015.

**THIRTY:** The AUTHORITY shall remit a copy of this Agreement to the Office of the Comptroller within fifteen (15) days following the date of the execution of this Agreement or any subsequent amendment of this Agreement.

"No provision or consideration of services object of this contract may be demanded until the same has been filed for registration with the Office of the Comptroller pursuant to the provisions of Act No. 18 of October 30, 1975, as amended".

### ACCEPTANCE AND SIGNATURE

The parties express their agreement to all terms and conditions contained in this Contract, accepting it in its entirety on the day of its execution.

**IN WITNESS WHEREOF** the parties have signed this Agreement in San Juan, Puerto Rico, this 8 of June, 2015.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

ROY JORGENSEN ASSOCIATES, INC.

CARMEN A. VILLAR PRADOS
Executive Director
Id. 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

DOUGLAS W. SELBY
President
Id. 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