## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | |
| | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | (Jointly Administered) |
| Debtors.[1] | |
| In re: | |
| | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO | No. 17 BK 3283-LTS |
| -and- | |
| PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, | No. 17 BK 3567-LTS |
| Debtors. | |

## DECLARATION OF DAVID PRAGER
## UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746

I, David W. Prager, of legal age, Managing Director and Head of U.S. Restructuring at

Kroll LLC, and resident of New York, New York, do solemnly state under the penalties of perjury:

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation  (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority  (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

Case:17-03283-LTS   Doc#:19049-3   Filed:11/03/21   Entered:11/03/21 18:41:33   Desc:
Exhibit C - Amended D. Prager Declaration   Page 2 of 48

Page -2-

1. That my personal circumstances are those expressed above.

2. That I am the signatory to the *Report of David W. Prager, CFA Respecting Best Interests of Creditors Test* dated October 8, 2021 filed at Dkt. No. 18445-1 (redacted) of Case No. 17-bk-03283 (LTS) (the "Expert Report").

3. That the analyses, opinions, assessments, statements, and conclusions indicated and reflected in the Expert Report are my own, and that these are true and correct to the best of my knowledge based on my review of the files, documents, and information available to me to date.

I declare under penalty of perjury that the foregoing declaration is correct and true to the best of my knowledge, information, and belief.

In New York, New York on this 3rd day of November, 2021.


\_/s/ *David W. Prager*\_\_

**David W. Prager**



# Report of David W. Prager, CFA Respecting Best Interests of Creditors Test

*In re: The Financial Oversight and Management Board of Puerto Rico as representative of The Commonwealth of Puerto Rico, et al.*

October 8, 2021

# Table of Contents

1. Summary of Conclusions

2. Improper Prioritization

3. Cash Availability

4. Additional Fiscal Plan Capacity for Creditor Payments

5. Non-Priority Expenses Improperly Elevated

6. Capped Return Not Considered

7. Conclusion and Signature

8. Appendices



# Summary of Conclusions

**KROLL** 3

# At least $3.4 billion (and up to $23.5 billion) of additional cash and future value would be available to creditors under non-bankruptcy law than is provided in the Plan

- Pursuant to the priorities set forth in Puerto Rico Constitution, the Commonwealth's debt could be paid many times over from available resources

- The Commonwealth has at least an additional $1.3 billion (and up to $3.1 billion) of current cash that is not distributed under the Plan, is not required for future purposes, and could be immediately distributed to creditors

- Under the FOMB's own projections and assumptions, tens of billions of dollars of future value would be available to creditors under a non-bankruptcy enforcement

**KROLL** 4

# Background

- Fiscal Plan

- On April 23, 2021, the Financial Oversight and Management Board ("FOMB") certified the current Fiscal Plan ("FP") for the Commonwealth of Puerto Rico ("Commonwealth," "CW," or "Puerto Rico") [DRA Ex. 236]
  - The FP contains an economic forecast for the Commonwealth; includes financial projections of its revenues, expenses and surplus; and mandates various measures be taken by the government of Puerto Rico
- The FOMB previously certified 6 fiscal plans for the Commonwealth ("Prior Fiscal Plans") containing different financial and economic projections [DRA Ex. 229, 231, 232, 233, 234, 235]

| $MMs | FY22 | FY23 | FY24 | FY25 | FY26 | FY27 | FY28 | FY29 | FY30 | FY31 | FY32 | FY33 | FY34 | FY35 | FY36 | FY37-41 | FY42-46 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| General Fund Revenues | 11,351 | 11,053 | 10,734 | 10,934 | 11,099 | 11,363 | 11,447 | 11,441 | 11,433 | 11,449 | 11,416 | 11,430 | 11,433 | 11,437 | 11,319 | 57,367 | 60,337 |
| Special Revenue Fund Revenues | 3,983 | 4,013 | 4,055 | 4,122 | 4,199 | 4,296 | 4,384 | 4,457 | 4,524 | 4,590 | 4,645 | 4,700 | 4,755 | 4,809 | 4,852 | 25,290 | 27,434 |
| Federal Fund Revenue | 5,714 | 4,943 | 5,009 | 5,080 | 5,158 | 5,242 | 5,328 | 5,415 | 5,503 | 5,591 | 5,681 | 5,771 | 5,864 | 5,958 | 6,053 | 31,897 | 34,938 |
| Total Commonwealth Revenues before Measures | 21,048 | 20,010 | 19,798 | 20,137 | 20,455 | 20,901 | 21,158 | 21,313 | 21,460 | 21,630 | 21,741 | 21,901 | 22,051 | 22,205 | 22,224 | 114,554 | 122,709 |
| Revenue Measures and gross up | 1,157 | 1,139 | 1,143 | 1,153 | 1,167 | 1,181 | 1,192 | 1,197 | 1,200 | 1,204 | 1,203 | 1,202 | 1,199 | 1,196 | 1,189 | 5,901 | 5,866 |
| **Total Commonwealth Revenues - post measures** | **22,204** | **21,149** | **20,941** | **21,290** | **21,622** | **22,082** | **22,350** | **22,510** | **22,660** | **22,834** | **22,943** | **23,103** | **23,251** | **23,401** | **23,413** | **120,455** | **128,575** |
| General Fund Expenditures | (11,262) | (11,718) | (11,807) | (11,960) | (12,081) | (12,244) | (12,451) | (12,552) | (12,754) | (13,020) | (13,232) | (13,483) | (13,740) | (13,981) | (14,222) | (75,308) | (83,365) |
| Special Revenue Fund Expenditures | (3,854) | (3,918) | (3,968) | (4,035) | (4,108) | (4,195) | (4,277) | (4,351) | (4,382) | (4,454) | (4,518) | (4,584) | (4,650) | (4,718) | (4,779) | (25,137) | (27,598) |
| Federal Fund Expenditure | (5,706) | (4,935) | (5,000) | (5,072) | (5,150) | (5,234) | (5,319) | (5,406) | (5,496) | (5,586) | (5,678) | (5,769) | (5,863) | (5,958) | (6,055) | (31,937) | (35,028) |
| Total Expenditures | (20,822) | (20,570) | (20,775) | (21,066) | (21,339) | (21,673) | (22,048) | (22,309) | (22,632) | (23,060) | (23,428) | (23,837) | (24,254) | (24,657) | (25,056) | (132,383) | (145,991) |
| Expenses Measures and gross up | 334 | 741 | 905 | 1,041 | 1,050 | 1,069 | 1,106 | 1,145 | 1,189 | 1,235 | 1,287 | 1,344 | 1,404 | 1,463 | 1,524 | 8,570 | 10,243 |
| **Total CW Funded Op. Exp. Post Measures** | **(20,488)** | **(19,829)** | **(19,870)** | **(20,025)** | **(20,289)** | **(20,605)** | **(20,942)** | **(21,164)** | **(21,443)** | **(21,825)** | **(22,141)** | **(22,493)** | **(22,850)** | **(23,194)** | **(23,532)** | **(123,813)** | **(135,748)** |
| | | | | | | | | | | | | | | | | | |
| Surplus/(Deficit) Post Measures (excl. Debt Payments) | 1,716 | 1,320 | 1,071 | 1,265 | 1,334 | 1,478 | 1,407 | 1,346 | 1,217 | 1,009 | 802 | 609 | 401 | 207 | (119) | (3,357) | (7,173) |
| SUT CVI | (125) | (128) | (116) | (131) | (134) | (147) | (156) | (167) | (173) | (183) | (181) | (208) | (217) | (222) | (210) | (990) | (980) |
| Pension Reserve Trust | (5) | (221) | (175) | (308) | (396) | (549) | (492) | (294) | (183) | - | - | 27 | 217 | 385 | 667 | 2,874 | - |



Macroeconomic Assumptions

Nominal GNP Growth — Real GNP Growth — Puerto Rico Inflation

# Background

- Plan of Adjustment

- On August 2, 2021, the court overseeing the Commonwealth's proceedings under PROMESA approved the Disclosure Statement [DI 17628] ("Disclosure Statement" or "DS") [Debtors' Ex.. 2] for the *Seventh Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al. [DI 17627]* ("Plan") [Debtors' Ex. 1]
- The Plan generally provides for payment to creditors in the form of (a) cash, (b) new general obligation bonds ("New Bonds") and (c) certain contingent value instruments capturing upside in performance of the CW beyond a certain level and subject to a cap on recovery (See DS 13-14) [Debtors' Ex. 2]
  - $6.6 Bn of cash to holders of general obligations ("GO") and CW-guarantee creditors (collectively, "Public Debt") (See DS 409-448) [Debtors' Ex. 2]
  - $400 MM of fees payable to certain supporting holders of the Public Debt (See DS 405-407) [Debtors' Ex. 2]
  - $3.2 Bn cash to other creditors (See MURRAY_CONF_27453) [Debtors' Ex. 30]
  - $7.4 Bn of New GO Bonds (with a weighted average interest rate of 4.43%) (See Plan: Exhibit I) [DRA Ex. 236]
  - Contingent value instruments issued by the Commonwealth ("CW CVIs")
    - Payments will be made to the extent the 5.5% Sales and Use Tax Collections ("SUT") outperform the May 2020 Commonwealth Certified Fiscal Plan (the current FP projects SUT in excess of this threshold)
- In addition, the Plan incorporates settlements of pension and other employee obligations, including through:
  - Creation and funding of a Pension Reserve Trust (expected to be funded with $2.8 Bn over eight years) (See DS 64) [Debtors' Ex. 2]
  - Sharing of certain surplus with Union members
- In support of confirmation of the Plan, FOMB submitted Best Interests Test Reports ("BIT Report") prepared McKinsey & Company Puerto Rico Consulting, Inc. and counsel to the FOMB analyzing returns to certain creditors in a hypothetical scenario in which the Title III case were dismissed and the FOMB unable to implement certain measures and controls set forth in the FP [Debtors' Ex. 130]



# Scope of Assignment

- I am a managing director and head of the US Restructuring practice at Kroll, LLC ("Kroll"). I have more than two decades of experience as a financial advisor, interim manager, restructuring professional and expert witness in the restructuring industry. I have represented creditors in major municipal bankruptcies, including Puerto Rico, Detroit and Jefferson County. I also have advised several guarantors of municipal securities (monolines) and their creditors on the restructurings of those guarantors; in particular, I served as interim principal financial officer of Syncora Guarantee, where I had oversight for ensuring the proper restructuring of its insured portfolio.  My *curriculum vitae* is attached as Exhibit A
  - I have been assisted in the preparation of this report by a team at Kroll
  - Kroll is compensated for my time preparing this report at my standard hourly rate of $1,250 per hour
- Kroll has been retained by McConnell Valdés LLC ("Counsel"[1]), as counsel to AmeriNational Community Services, LLC,  to provide an analysis of whether the proposed Plan is "in the best interest of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan." ( § 314(b)(6) of PROMESA)
  - Counsel has instructed me to assume that such comparison of recoveries should be undertaken for all Plan creditors as a whole
- Counsel has asked me to respond to the BIT Report and address whether and to what extent, in the event creditors enforce available remedies under the non-bankruptcy laws and constitution of the Commonwealth ("Alternative Enforcement"):
  - Sufficient value is available to pay financial creditors in full pursuant to the projections in the Fiscal Plan;
  - Additional cash would be available for distribution to creditors in an Alternative Enforcement; and
  - Subject to proper adjustments for an Alternative Enforcement, future value would be available to creditors in an Alternative Enforcement beyond the value distributed in the Plan

[1] As used herein, "Counsel" includes Schulte Roth & Zabel LLP as counsel to Cantor-Katz Collateral Monitor LLC, which is acting in common interest with McConnell Valdés LLC , as counsel to AmeriNational Community Services, LLC



# Summary of Conclusions

**Ability to Pay Under Proper Prioritization**

1. The BIT Report ignores the proper priority of payments under non-bankruptcy law

   - Under the priorities set forth in Puerto Rico Constitution, the CW is capable of paying the public debt with coverage of 8 to 25 times in each year and total debt service could be covered 6 to 18 times

   - Even were Core Services prioritized pursuant to police powers (and contrary to the clear language of the Puerto Rico Constitution and the OMB Act) in an Alternative Enforcement, the public debt could be covered 3 to 6 times in each year and total debt service could be covered 2 to 4 times

**Alternative Enforcement Recoveries Compared to Plan Recoveries**

2. Rather than following the priorities set forth in non-bankruptcy law, the BIT Report is founded on analyzing capacity based on the FP's forecast of operating surplus and value that would be available for creditors after payment of operating expenses and after the CW's retention of significant unrestricted cash

3. Under the BIT Report's construct of analyzing recoveries payable from operating surpluses, as detailed in the following conclusions, an Alternative Enforcement would provide at *least* $3.4 Bn (and up to $23.5 Bn) of cash and future value to creditors in excess of the distributions provided in the Plan

4. This additional value far exceeds the value depicted in the BIT Report and represents materially greater recoveries to creditors in an Alternative Enforcement than the value provided in the Plan

| $MMs | Conservative | Potential |
|---|---|---|
| **Provided in Plan** | **19,280** | **19,280** |
| | | |
| **Cash Availability** | +1,272 | +3,097 |
| **Additional Capacity Under Fiscal Plan** | -572 | +1,320 |
| **Non-Priority Expenses** | +1,531 | +17,103 |
| **Value Beyond FP** | +1,175 | +5,719 |
| **Adjustment** | - | -3,741 |
| | | |
| **Total Additional Value Available** | **+3,407** | **+23,498** |
| *Additional Value as % of Value Provided in Plan* | +18% | +122% |
| | | |
| **Total Available Value** | **22,687** | **42,778** |

**KROLL**

# Summary of Conclusions (cont'd)

**Cash Availability**

5.   The BIT Report fails to consider all current cash resources available to creditors in an Alternative Enforcement

- Even were a court in an Alternative Enforcement to accept the high end of the FOMB's asserted liquidity needs, the CW would have $1.3 Bn of additional cash available for distribution to creditors

- Using a more reasoned minimum liquidity level, the CW would have $3.1 Bn of cash available to creditors in an Alternative Enforcement

**Additional Future Value**

Additional Capacity Under Fiscal Plan

6.   Net of proper adjustments to the Fiscal Plan to reflect the Alternative Enforcement and accepting the BIT Report's premise that funds need not be set aside for future deficits, $1.3 Bn of future value would be available for creditors in an Alternative Enforcement beyond the value provided in the Plan

- Throughout this Report, "future value" represents the present value of future cash flows discounted at 5%, consistent with the BIT Report's discount rate (See BIT Report 5) [Debtors' Ex. 130]

Improper Prioritization

7.   The BIT Report fails to consider that value paid under the Plan and FP to non-creditors and for non-Core Services (defined herein) would be available to creditors in an Alternative Enforcement

- Certain operating expenses would likely not be elevated above debt service in an Alternative Enforcement even under the BIT Report's theories of police powers, providing $1.5 Bn to $17.1 Bn of future value available to creditors

Additional Value Not Captured

8.   The BIT Report fails to recognize that an Alternative Enforcement would enable creditors to recover from actual financial performance, whereas the Plan limits creditor recoveries based on the forecast in the FP

- Additional Federal funding recently authorized, but not incorporated in the Fiscal Plan or the BIT Report, would reduce the CW's burden for Core Services, freeing funds for other purposes in an Alternative Enforcement; $1.2 Bn of value is released in FY22 alone and, if sustained for the duration of the Biden Administration, this funding adds $5.7 Bn of future value

- The Wolfe Report sets forth various reforms that are not included in the FP and, if adopted, would eliminate operational deficits and could provide an additional $11.9 Bn of future value available to creditors in an Alternative Enforcement; this amount is in addition to the total additional value set forth above



9

# Summary of Additional Value Available

| $MMs | Conservative | Potential |
|---|---|---|
| **Provided in Plan** | **19,280** | **19,280** |
| | | |
| **Cash Availability** | | |
| Additional Unrestricted Funds | - | +345 |
| Right-size Liquidity Needs | +972 | +2,352 |
| Consent Fees Avoided | +300 | +400 |
| **Total Cash Availability** | **+1,272** | **+3,097** |
| | | |
| **Additional Future Value** | | |
| **Additional Capacity Under Fiscal Plan** | | |
| Additional Capacity from No Deficit Funding | - | +1,892 |
| Additional Professional Fees | -1,324 | -1,324 |
| Release of Emergency Reserve | +752 | +752 |
| **Total Additional Capacity Under Fiscal Plan** | **-572** | **+1,320** |
| | | |
| **Non-Priority Expenses** | | |
| Prioritize Core Expenses Only (General Fund) | +1,531 | +17,103 |
| **Total Non-Priority Expenses** | **+1,531** | **+17,103** |
| | | |
| **Value Beyond FP** | | |
| Federal Funds per HHS | +1,175 | +5,719 |
| **Total Value Beyond FP** | **+1,175** | **+5,719** |
| | | |
| **Adjustment** | | |
| Reversal of Deficit Elimination | - | -3,741 |
| | | |
| **Total Additional Value Available** | **+3,407** | **+23,498** |
| *Additional Value as % of Value Provided in Plan* | *+18%* | *+122%* |
| | | |
| **Total Available Value** | **22,687** | **42,778** |
| | | |
| Additional Measures per Wolfe | - | +11,919 |

| | |
|---|---|
| Cash Consideration--Financial Creditors | 6,624 |
| Bond Consideration--Financial Creditors | 7,106 |
| Other Creditor Consideration | 3,162 |
| CVIs (value per current FP) | 2,388 |
| **Provided in Plan** | **19,280** |

Note: In the Potential scenario, the CW will not incur deficits if all potential value in considered; accordingly, the value attributable to deficit elimination is duplicative when considering the sum of all identified areas of additional future value



# Improper Prioritization

KROLL 11

# Best Interests Test Construct

- Section 314(b)(6) of PROMESA provides that any plan of adjustment must be "in the best interest of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan."
  - Based on assumptions provided by Counsel, I understand that this test measures whether creditors, taken as a whole, would attain no higher recovery by exercising their remedies under non-bankruptcy laws than they will recover under the plan
- The BIT Report adopts an alternative metric of analyzing payments to specific groups of creditors
  - **Such a construct conflates an analysis of various intercreditor disputes with the fundamental question of whether more value is available under the Alternative Enforcement than under the Plan**

KROLL  12

# Statutory Priority

- The Puerto Rico Constitution provides that "interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made" (Art. VI, Sec. 8)
- This priority is reinforced in the Management and Budget Office Organic Act ("OMB Act"), which provides:
  - First budgetary priority—public debt
  - Second priority—other contracts, such as debts not included in "public debt"
  - Third priority—public health, safety, education, welfare, and pension contributions ("Core Services")

**Puerto Rico Constitution**
Article VI - General Provisions
Section 8.
In case the available resources including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law.

**Management and Budget Office Organic Act**
Section 4. — Duties and faculties of the Governor with regard to the Budget. (23 L.P.R.A. § 104)
**(c)** In tune with Section 8, Article VI of the Constitution of the Commonwealth of Puerto Rico, he/she shall act according to **the following priority guidelines for the disbursement of public funds, when the available funds for a specific fiscal year are not sufficient to cover the appropriations approved for that year**. These functions may be delegated on the Management and Budget Director:
**(1)** **Order the payment of interest and amortizations corresponding to the public debt.**
(2) Order that the commitments entered into by virtue of **legal contracts** in force, judgments of the courts in cases of condemnation under eminent domain, and binding obligations to safeguard the credit, reputation and good name of the Government of the Commonwealth of Puerto Rico, be attended to.
(3) Order that preference be given to disbursements charged to appropriations for regular expenses connected with the:
  **(A)** **Conservation of public health.**
  **(B)** **Protection of persons and property.**
  **(C)** **Public education programs.**
  **(D)** **Public welfare programs.**
  **(E)** **Payment of employer contributions to retirement systems and payment of pensions to individuals granted under special statutes**; and then, the remaining public services in the order of priority determined by the Governor; Provided, That the disbursements related to the services listed hereunder shall not have preference among themselves but shall be handled simultaneously; Provided, further, That any adjustments due to reductions may be made in any of the appropriations for regular expenses, including the service areas indicated in this subparagraph.
(4) Order the construction of capital works or improvements with duly executed contracts; Provided, That priority shall be given to emergency works caused by catastrophes or acts of nature, acts of God; and then, to those works that are most responsive to the development of the normal and economic life of Puerto Rico.
(5) Order that the payment of contracts and commitments contracted under special appropriations for operations be honored, and then, that special preference be given to those phases of the programs that are in the process of development or in a stage of planning which, if postponed, would affect the interests of the clients served by the program, directly or indirectly.

**KROLL** 13

# Strict Priority Analysis

- The BIT Report ignores that public and other debts would be paid before any operating expenses of the Commonwealth, including Core Services, pursuant to the clear language of the Puerto Rico Constitution and other Commonwealth law
- Under the FP, the Commonwealth's own source revenues (*i.e.*, those not directly tied to Federal reimbursement, but conservatively excluding COFINA revenues) in each year exceed $15.0 Bn, whereas scheduled annual public debt service never exceeds $2.0 Bn and total CW debt service never exceeds $2.8 Bn
  - **Under the priorities set forth in Puerto Rico Constitution, the public debt could be paid with coverage of 8 to 25 times in each year and total debt service could be covered 6 to 18 times**



# Core Services

- Notwithstanding that non-PROMESA law (the Puerto Rico Constitution and the OMB Act) make clear that debt service would be paid prior to any operating expenses, the BIT Report assumes that "available resources can be applied to operating expenses [rather than debt service] pursuant to the police power" (BIT Report 30) [Debtors' Ex. 130]

- The BIT Report does not consider which expenses of the Commonwealth would be designated as necessary to be prioritized over debt service pursuant to police power, but simply "[a]ssume[s] operating expenses outlined in the certified fiscal plan are paid before debt service" (BIT Report 35) [Debtors' Ex. 130]

- The OMB Act defines certain Core Services that should take priority over other expenses; such list could provide a basis for determining which expenses would be sufficiently crucial that a court might allow the CW to prioritize over debt service using police power

  - By elevating these Core Services over other (non-debt) expenses, non-bankruptcy law appears to designate these services as those vital to provide to the citizens of the Commonwealth; a court applying police powers might reasonably look to these enumerated services as the basket that must be provided

- Based on a preliminary review, the Commonwealth's current budget appropriates $4.4 Bn a year that are not Core Services and would be available to creditors in an Alternative Enforcement

  - While a court might undertake a detailed analysis of expenditures constituting Core Services, the analysis herein is based on an illustrative review of budget categories and descriptions

- Of the non-Core Services, $3.3 Bn a year appears to relate to the regulatory and administrative functions of the government

  - Even were a court in an Alternative Enforcement to also allow for priority for these expenses (even though the OMB Act does not provide any priority to such expenses), at least $1.2 Bn a year of additional value would still be available to creditors

| FY22 Budget | $ MMs | % |
|---|---|---|
| Welfare | $ 4,270 | 20% |
| Education | 3,927 | 18% |
| Public Health | 4,002 | 19% |
| Pension Contributions | 2,726 | 13% |
| Safety | 2,047 | 10% |
| Total Core | 16,970 | 79% |
| Regulatory and Administrative | 3,265 | 15% |
| Total Government Functions | 3,265 | 15% |
| Development | 945 | 4% |
| Reserves | 130 | 1% |
| Culture | 94 | 0% |
| Other Non-Essential | 8 | 0% |
| Total Non-Core (excl. Debt Service) | 1,177 | 5% |
| Total | $ 21,412 | 100% |

**FY22 Budget Components**



KROLL  15

# Current Budget

- Illustrative Classification

**FY22 Budget Detail ($MM)**

| Core | |
|---|---|
| **Welfare** | |
| Administration for Integral Development of Childhood | 100 |
| Administration for Socioeconomic Development of the Fa | 2,197 |
| Assignments under the custody of the OMB | 1 |
| Child Support Administration (ASUME) | 32 |
| Department of Housing | 872 |
| Family and Children Administration | 223 |
| Public Housing Administration | 559 |
| Puerto Rico Housing Finance Corporation | 187 |
| Secretariat of the Department of the Family | 44 |
| Vocational Rehabilitation Administration | 55 |
| **Total Welfare** | **$ 4,270** |
| **Education** | |
| Assignments under the custody of the OMB | 1 |
| Department of Education | 3,297 |
| University of Puerto Rico (UPR) | 629 |
| **Total Education** | **$ 3,927** |
| **Public Health** | |
| Assignments under the custody of the OMB | 102 |
| Cardiovascular Center Corporation of Puerto Rico and the | 77 |
| Center for Diabetes | 1 |
| Department of Health | 968 |
| Medical Services Administration of Puerto Rico | 169 |
| Mental Health and Drug Addiction Services Administrati | 136 |
| Puerto Rico Health Insurance Administration | 2,513 |
| University of Puerto Rico Comprehensive Cancer Center | 35 |
| **Total Public Health** | **$ 4,002** |
| **Pension Contributions** | |
| Assignments under the custody of the OMB | 89 |
| Retirement Board of the Government of Puerto Rico | 55 |
| PayGo | 2,581 |
| **Total Pension Contributions** | **$ 2,726** |
| **Safety** | |
| Assignments under the custody of the OMB | 5 |
| Commission of Investigation, Processing and Appeals | 0 |
| Department of Correction and Rehabilitation | 337 |
| Department of Public Safety | 997 |
| Department of Transportation and Public Works | 153 |
| Forensic Science Bureau | 16 |
| Institutional Trust of the National Guard of Puerto Rico | 7 |
| Parole Board | 2 |
| Public Service Regulatory Board | 34 |
| Puerto Rico Department of Justice | 128 |
| Puerto Rico National Guard | 37 |
| Puerto Rico Traffic Safety Commission | 12 |
| Special Independent Prosecutor's Panel | 3 |
| The General Court of Justice | 276 |
| Correctional Health Services Corporation | 39 |
| **Total Safety** | **$ 2,047** |
| **Total Core** | **$16,970** |

| Government Functions | |
|---|---|
| **Regulatory and Administrative** | |
| Assignments under the custody of the Departme | 599 |
| Assignments under the custody of the OMB | 198 |
| Authority of the Port of Ponce | 1 |
| Automobile Accidents Compensation Administra | 73 |
| Civil Rights Commission | 1 |
| Commissioner of Financial Institutions | 10 |
| Convention Center of District Authority | 26 |
| Department of Natural and Environmental Resou | 160 |
| Financial Oversight and Management Board for P | 60 |
| Fiscal Agency & Financial Advisory Authority | 95 |
| General Services Administration | 21 |
| Legislative Assembly of the Commonwealth | 90 |
| Municipal Finance Corporation | 133 |
| Office for People with Disabilities | 3 |
| Office for the Patient's Advocate | 1 |
| Office of Government Ethics | 9 |
| Office of Human Resources Management & Trans | 4 |
| Office of Management and Budget | 14 |
| Office of the Citizen's Ombudsman | 3 |
| Office of the Commissioner of Insurance | 8 |
| Office of the Comptroller | 38 |
| Office of the Election Comptroller | 2 |
| Office of the Governor | 16 |
| Office of the Inspector General | 14 |
| Office of the Women's Advocate | 5 |
| Public Building Authority | 99 |
| Public Service Appeals Commission | 2 |
| Puerto Rico Department of Agriculture | 26 |
| Puerto Rico Department of Consumer Affairs | 8 |
| Puerto Rico Department of Labor and Human Re | 340 |
| Puerto Rico Department of State | 15 |
| Puerto Rico Department of the Treasury | 162 |
| Puerto Rico Federal Affairs Administration | 2 |
| Puerto Rico Gaming Commission | 305 |
| Puerto Rico Industrial Commission | 15 |
| Puerto Rico Institute of Statistics | 2 |
| Puerto Rico Integrated Transit Authority | 77 |
| Puerto Rico Labor Relations Board | 1 |
| Puerto Rico Ports Authority | 110 |
| Puerto Rico Public Broadcasting Corporation | 3 |
| Puerto Rico Technology and Innovation Services | 39 |
| State Elections Commission | 20 |
| State Insurance Fund Corporation | 426 |
| The Port of the Americas Authority | 0 |
| Veteran's Advocate Office | 4 |
| Elderly and Retired People Advocate Office | 25 |
| **Total Regulatory and Administrative** | **$ 3,265** |
| **Total Government Functions** | **$ 3,265** |

| Non-Core | |
|---|---|
| **Development** | |
| Agricultural Enterprises Development Administration | 113 |
| Agricultural Insurance Corporation | 2 |
| Assignments under the custody of the Department of the | 104 |
| Assignments under the custody of the OMB | 19 |
| Company for the Integral Development of "Peninsula de | 3 |
| Contributions to the Municipalities | 88 |
| Cooperative Development Commission of Puerto Rico | 2 |
| Corporation for the "Cano Martin Pena" Enlace Project | 33 |
| Culebra Conservation and Development Authority | 0 |
| Department of Economic Development and Commerce o | 282 |
| Economic Development Bank of PR | 5 |
| Innovation Fund for Agricultural Development of Puerto I | 13 |
| Land Administration of Puerto Rico | 5 |
| Land Authority of Puerto Rico | 6 |
| Office of Socioeconomic and Community Development | 34 |
| Public Private Partnership Authority | 229 |
| Puerto Rico Infrastructure Financing Authority | 2 |
| **Total Development** | **$ 945** |
| **Reserves** | |
| Assignments under the custody of the OMB | 130 |
| **Total Reserves** | **$ 130** |
| **Culture** | |
| Assignments under the custody of the Department of the | 31 |
| Assignments under the custody of the OMB | 1 |
| Department of Recreation and Sports | 20 |
| Fine Arts Center Corporation | 6 |
| Institute of Puerto Rican Culture | 13 |
| Musical Arts Corporation | 6 |
| Office of Human Resources Management & Transformat | 0 |
| Puerto Rico Conservatory of Music Corporation | 8 |
| Puerto Rico School of Plastic Arts | 4 |
| State Historic Preservation Office of Puerto Rico | 6 |
| **Total Culture** | **$ 94** |
| **Other Non-Essential** | |
| Assignments under the custody of the Department of the | 0 |
| Assignments under the custody of the OMB | 8 |
| **Total Other Non-Essential** | **$ 8** |
| **Total Non-Core** | **$1,177** |

| Examples of Non-Core Spending ($000) | |
|---|---|
| Society for Legal Assistance | 9,800 |
| Conservation Trust | 7,500 |
| Science, Technology & Research Trust | 5,000 |
| Incentives paid to airlines to increase tourism | 5,000 |
| Puerto Rico School of Plastic Arts | 4,470 |
| Legal Services of Puerto Rico, Inc. | 4,460 |
| Boys and Girls Club | 2,500 |
| PGA Tour played in Puerto Rico | 1,800 |
| Florida Carribean Cruise Association Event | 750 |
| Training of Athletes | 521 |
| Caribbean Classic Equestrian Event | 512 |
| Community Legal Office, Inc. | 486 |
| Pro-Bono, Inc. | 405 |

**KROLL**

# Debt Service Coverage After Core Services

- **Even were Core Services prioritized pursuant to police powers (and contrary to the clear language of the Puerto Rico Constitution and the OMB Act) in an Alternative Enforcement, the public debt could be covered 3 to 7 times in each year and total debt service could be covered 2 to 4 times**
  - Even if regulatory and administrative expenses were also elevated over debt service, the Fiscal Plan provides sufficient cash to cover annual debt service



**KROLL** 17

# Cash Availability

KROLL 18

# Commonwealth's Unrestricted Cash

- Rather than following the priorities set forth in non-bankruptcy law, the BIT Report is founded on analyzing capacity based on the FP's forecast of operating surplus and value that would be available for creditors after payment of operating expenses and **after the CW's retention of significant unrestricted cash**
- Consistent with the BIT Report, unrestricted cash of the CW is assumed to constitute available resources for distribution to creditors in an Alternative Enforcement (See BIT Report 5) [Debtors' Ex. 130]
- As of June 30, 2021, the Commonwealth reported $29.8 Bn of cash on hand

  - Of this amount $10.2 Bn appears to be classified by the Commonwealth as restricted and $5.2 Bn is asserted to be non-CW cash, with $14.3 Bn classified as unrestricted cash
  - The CW reports that prior year deferred spending reduces available unrestricted cash to $13.0 Bn

- After Plan distributions, the Commonwealth calculates that it would be left with $2.8 Bn of unrestricted cash, of which $144 MM is reserved for FEMA Cost Share
- The remaining $2.7 Bn would be remain an available resource to creditors in an Alternative Enforcement
- While a court determining remedies in an Alternative Enforcement may not allow any liquidity reserve, the BIT Report assumes that the CW would be allowed to retain a minimum level of liquidity (See BIT Report 6) [Debtors' Ex. 130]



Source: MURRAY_CONF_27453 [Debtors' Ex. 30]



19

# Additional Distributable Cash

- The FOMB calculates the CW will have $2.7 Bn of net unrestricted cash upon emergence
  - The FOMB asserts, and the BIT Report accepts, that the CW would only require $1.2 Bn - $1.7 Bn of liquidity (See BIT Report at 6) [Debtors' Ex. 130]
  - **If a court in an Alternative Enforcement were to accept the level of liquidity as not being available to creditors, a minimum of $972 MM of additional cash would be available for creditor distributions**
  - **The BIT Report correctly acknowledges that $390 MM of this amount, representing the Emergency Reserve, is unrestricted and would constitute additional value available to creditors in an Alternative Enforcement**
- In addition to the $2.7 Bn the FOMB calculates as available, an additional $345 MM of cash may be unrestricted and available to creditors
  - The FOMB acknowledges that these funds, classified as restricted ("mostly comprised of unemployment and lottery funds"), may, in fact, constituted unrestricted cash that would be available in an Alternative Enforcement (See Murray_CONF_27453) [Debtors' Ex. 30]
  - **Compared to the low end of the BIT Report's stated minimum liquidity requirement, up to $1.8 Bn of additional cash could be available for creditor distribution under and Alternative Enforcement**



Source: MURRAY_CONF_27454 [Debtors' Ex. 30]

# Liquidity Needs

- FOMB's Calculations

- The FOMB's calculation of minimum required liquidity is based on the combination of 6 sources surveyed, including the government's desired level of liquidity (See BIT Report Appendix 4) [Debtors' Ex. 130]
- Rather than inform itself by this variety of views, the FOMB has selected the highest level of potential liquidity needs
- A court determining remedies in an alternative scenario may not allow any liquidity reserve
- Alternatively, a court in an Alternative Enforcement might consider all potential metrics and elect a minimum liquidity according to a central tendency of estimates
  - The average of the estimated liquidity needs is $1.2 Bn - $1.4 Bn
  - The FOMB's proposed maximum liquidity is $350 MM higher than the average of the high end of these estimates
- Excluding the Puerto Rican government's contrived request (with no outside support) for $1.8 Bn of liquidity, the estimated liquidity requirement would be $1.1 Bn to $1.3 Bn
- **$130 MM to $435 MM of additional current cash (beyond the amounts set forth above) would be available to creditors were a court to adopt an empirical use of the FOMB's analysis in an Alternative Enforcement**



**Estimated Minimum Cash Requirement**

$ MMs

| | Low | Mid | High |
|---|---|---|---|
| Community Disaster Loans | 800 | 950 | 1,100 |
| Practitioners Approach | 667 | 1,000 | 1,333 |
| Municipality Comparable | 1,000 | 1,000 | 1,000 |
| Pew 50 State Median | 1,240 | 1,240 | 1,240 |
| GFOA Recommendation | 1,650 | 1,650 | 1,650 |
| Government Request | 1,781 | 1,781 | 1,781 |
| | | | |
| Mean | 1,190 | 1,270 | 1,351 |
| Mean Excluding Government Request | 1,071 | 1,168 | 1,265 |
| Lower Quartile | 767 | 987 | 1,075 |
| Upper Quartile | 1,683 | 1,683 | 1,683 |
| FOMB Utilized | 1,200 | 1,450 | 1,700 |

# Liquidity Needs

- Empirical Evidence

- Since the CW began reporting its current cash position, its largest intra-year decline in cash is only $320 MM
  - The CW's actual experience indicates the required liquidity level is significantly lower than asserted by the CW and the FOMB
- In the last four years, through the crises of two major hurricanes and the COVID-19 pandemic, the Commonwealth never required more than $320 MM be drawn from its beginning of year liquidity reserves
  - In an Alternative Enforcement, a court may look to this historical experience to determine the necessary level of liquidity that would be retained by the CW, with the balance available for additional distribution to creditors.
- **The empirical evidence of the CW's liquidity needs indicates $880 MM of additional cash available for distribution beyond the low end of the FOMB's determined liquidity needs**



From the beginning of FY21, balances include sweep account

# Transaction Fees

- The Plan contemplates payments of various consummation, support and restriction fees to select constituents
  - Although these payments are not distributions on claims, but, rather, incentive fees available to the chosen constituents
- These fee payments would be available for creditor distributions in the Alternative Enforcement
- The Plan contemplates payment of $400 MM of consent and restriction fees to certain holders of Public Debt, by far the largest such fees
  - These fees would be available to pay creditors for on account of claims in an Alternative Enforcement
  - However, the plan support agreement with these creditors allows a $100 MM administrative expense claim to these holders should such plan support agreement not be effectuated; it is unclear whether such payment would be made in an Alternative Enforcement.
- **As such, at least $300 MM to $400 MM of additional cash would be available for distributions to creditors (in their capacity as creditors) in an Alternative Enforcement, rather than being paid for transaction fees**

# Excess Cash

- Summary

- **The BIT Report fails to consider all current cash resources available to creditors in an Alternative Enforcement**
  - In addition to the FOMB's calculation of $2.7 Bn of cash available after Plan Distributions, there may be another $345 MM of cash available to the CW and its creditors
- **Even were a court in an Alternative Enforcement to accept the high end of the FOMB's asserted liquidity needs, the CW would have $1.3 Bn of additional cash available for distribution to creditors**
- **Using a more reasoned minimum liquidity level, the CW would have $3.1 Bn of cash available to creditors in an Alternative Enforcement**

| $MMs | Conservative | Potential |
|---|---|---|
| Cash After Distributions Per CW | 2,672 | 2,672 |
| Potentially Unrestricted Cash | - | 345 |
| Consent Fees Avoided | 300 | 400 |
| Minimum Liquidity | (1,700) | (320) |
| **Additional Distributable Cash** | **1,272** | **3,097** |

**KROLL** 24

# Additional Fiscal Plan Capacity for Creditor Payments

# Summary of FP Financial Projections

- Rather than following the priorities set forth in non-bankruptcy law, the BIT Report is founded on analyzing capacity based on the FP's forecast of operating surplus and value that would be available for creditors after payment of operating expenses
- The FP forecasts $13.2 Bn available for payment to creditors in the first 10 years of the projection
  - During that time period, however, only $6.7 Bn (51% of available) is dedicated to debt service in the Plan
  - In addition to scheduled debt service, under the Fiscal Plan's projections, the Plan will pay $1.5 Bn to holders of CVIs
- Over the initial 10-year period, $3.8 Bn of additional future value is available to creditors under the Fiscal Plan beyond the amounts paid out in the Plan
  - As noted *supra*, throughout this Report, "future value" represents the present value of future cash flows discounted at 5%, consistent with the BIT Report's discount rate (BIT Report 5) [Debtors' Ex. 130]
  - While the Plan proposes expending $2.8 Bn to prefund a Pension Reserve during those 10 years, those payments are a pre-funding of future cash flows already contemplated in the FP capacity



**Additional Debt Service Available**

# Summary of FP Financial Projections (cont'd)

| $MMs | FY22 | FY23 | FY24 | FY25 | FY26 | FY27 | FY28 | FY29 | FY30 | FY31 | FY32 | FY33 | FY34 | FY35 | FY36 | FY 37-41 | FY 42-46 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **General Fund Revenues:** | | | | | | | | | | | | | | | | | |
| Sales and Use Tax | 2,127 | 2,109 | 2,103 | 2,140 | 2,176 | 2,239 | 2,281 | 2,298 | 2,309 | 2,322 | 2,307 | 2,297 | 2,284 | 2,269 | 2,227 | 11,021 | 11,707 |
| Individual Income Tax | 2,198 | 2,213 | 2,218 | 2,278 | 2,326 | 2,400 | 2,449 | 2,474 | 2,500 | 2,533 | 2,529 | 2,539 | 2,547 | 2,555 | 2,530 | 12,994 | 13,869 |
| Corporate Income Tax | 1,964 | 1,927 | 1,906 | 1,976 | 2,016 | 2,084 | 2,116 | 2,121 | 2,136 | 2,164 | 2,137 | 2,138 | 2,135 | 2,135 | 2,086 | 10,714 | 11,435 |
| Act 154 | 1,631 | 1,447 | 1,199 | 1,199 | 1,199 | 1,199 | 1,114 | 1,029 | 944 | 859 | 859 | 859 | 859 | 859 | 859 | 4,294 | 4,294 |
| Other General Fund Revenues | 1,940 | 1,840 | 1,787 | 1,811 | 1,839 | 1,880 | 1,914 | 1,939 | 1,959 | 1,979 | 1,991 | 2,003 | 2,014 | 2,025 | 2,027 | 10,355 | 10,902 |
| Total General Fund Revenues | 9,860 | 9,536 | 9,214 | 9,404 | 9,557 | 9,803 | 9,874 | 9,861 | 9,848 | 9,857 | 9,824 | 9,837 | 9,839 | 9,842 | 9,729 | 49,377 | 52,207 |
| Other tax revenues | 1,491 | 1,519 | 1,520 | 1,531 | 1,542 | 1,560 | 1,573 | 1,580 | 1,586 | 1,592 | 1,592 | 1,594 | 1,594 | 1,595 | 1,590 | 7,991 | 8,129 |
| Special Revenue Fund (SRF) Revenues | 3,983 | 4,013 | 4,055 | 4,122 | 4,199 | 4,296 | 4,384 | 4,457 | 4,524 | 4,590 | 4,645 | 4,700 | 4,755 | 4,809 | 4,852 | 25,290 | 27,434 |
| Federal Fund Revenues (excl. Medicaid receipts) | 4,432 | 4,476 | 4,525 | 4,579 | 4,639 | 4,704 | 4,770 | 4,837 | 4,904 | 4,971 | 5,038 | 5,105 | 5,174 | 5,244 | 5,313 | 27,788 | 30,049 |
| Federal Transfers - Medicaid | 1,282 | 468 | 484 | 501 | 519 | 538 | 557 | 578 | 599 | 620 | 642 | 666 | 690 | 714 | 740 | 4,109 | 4,889 |
| Total revenue measures | 439 | 437 | 440 | 449 | 459 | 473 | 485 | 492 | 499 | 506 | 509 | 512 | 516 | 519 | 519 | 2,664 | 2,844 |
| Total gross ups | 718 | 702 | 703 | 704 | 708 | 708 | 707 | 704 | 701 | 698 | 694 | 689 | 684 | 678 | 670 | 3,237 | 3,023 |
| **Total Commonwealth Revenues - post measures** | 22,204 | 21,149 | 20,941 | 21,290 | 21,622 | 22,082 | 22,350 | 22,510 | 22,660 | 22,834 | 22,943 | 23,103 | 23,251 | 23,401 | 23,413 | 120,455 | 128,575 |
| **General Fund Expenditures:** | | | | | | | | | | | | | | | | | |
| CW Agencies Direct Payroll | (2,995) | (3,038) | (3,085) | (3,134) | (3,183) | (3,233) | (3,285) | (3,337) | (3,391) | (3,445) | (3,498) | (3,552) | (3,607) | (3,664) | (3,723) | (19,679) | (21,698) |
| CW agencies Non-Personnel Operating Expenses | (1,552) | (1,479) | (1,509) | (1,532) | (1,547) | (1,496) | (1,527) | (1,557) | (1,573) | (1,599) | (1,632) | (1,663) | (1,680) | (1,708) | (1,745) | (9,256) | (10,236) |
| Pensions | (2,307) | (2,285) | (2,281) | (2,272) | (2,263) | (2,254) | (2,245) | (2,234) | (2,224) | (2,212) | (2,200) | (2,190) | (2,174) | (2,153) | (2,128) | (10,038) | (8,649) |
| Other General Fund Expenditures | (2,553) | (2,401) | (2,322) | (2,316) | (2,270) | (2,316) | (2,320) | (2,215) | (2,225) | (2,288) | (2,284) | (2,314) | (2,364) | (2,389) | (2,409) | (12,653) | (13,743) |
| Total General Fund Expenditures | (9,408) | (9,203) | (9,197) | (9,254) | (9,263) | (9,299) | (9,377) | (9,343) | (9,413) | (9,544) | (9,614) | (9,719) | (9,825) | (9,914) | (10,005) | (51,627) | (54,326) |
| General Fund Social Programs | (1,569) | (2,241) | (2,332) | (2,424) | (2,532) | (2,654) | (2,779) | (2,909) | (3,036) | (3,167) | (3,304) | (3,446) | (3,592) | (3,738) | (3,884) | (21,679) | (25,886) |
| GF & SRF Capex | (291) | (295) | (300) | (304) | (309) | (314) | (319) | (324) | (329) | (334) | (339) | (344) | (350) | (355) | (361) | (2,144) | (3,308) |
| Special Revenue Funds Expenditures | (3,848) | (3,896) | (3,946) | (4,012) | (4,085) | (4,172) | (4,254) | (4,327) | (4,358) | (4,429) | (4,493) | (4,558) | (4,624) | (4,692) | (4,752) | (24,996) | (27,443) |
| Federal Fund Expenditures | (1,677) | (1,692) | (1,710) | (1,729) | (1,752) | (1,777) | (1,801) | (1,826) | (1,852) | (1,878) | (1,905) | (1,931) | (1,958) | (1,985) | (2,014) | (10,560) | (11,451) |
| Social Programs - federally funded | (4,029) | (3,242) | (3,290) | (3,342) | (3,397) | (3,457) | (3,518) | (3,581) | (3,644) | (3,708) | (3,773) | (3,838) | (3,905) | (3,973) | (4,041) | (21,377) | (23,577) |
| Adjustments for expenditure gross up | (718) | (702) | (703) | (704) | (708) | (708) | (707) | (704) | (701) | (698) | (694) | (689) | (684) | (678) | (670) | (3,237) | (3,023) |
| Expense Measures Attributable to CW | 1,051 | 1,443 | 1,608 | 1,745 | 1,758 | 1,777 | 1,813 | 1,850 | 1,890 | 1,933 | 1,981 | 2,033 | 2,087 | 2,140 | 2,194 | 11,807 | 13,266 |
| **Total CW Funded Op. Exp. Post Measures and post expenditure gross up** | (20,488) | (19,829) | (19,870) | (20,025) | (20,289) | (20,605) | (20,942) | (21,164) | (21,443) | (21,825) | (22,141) | (22,493) | (22,850) | (23,194) | (23,532) | (123,813) | (135,748) |
| **Surplus/(Deficit) Post Measures (excl. Debt Payments)** | 1,716 | 1,320 | 1,071 | 1,265 | 1,334 | 1,478 | 1,407 | 1,346 | 1,217 | 1,009 | 802 | 609 | 401 | 207 | (119) | (3,357) | (7,173) |
| Non-Contingent DS under Plan | (790) | (771) | (752) | (625) | (604) | (582) | (559) | (685) | (660) | (634) | (607) | (429) | (400) | (370) | (338) | (1,162) | (796) |
| **Surplus/(Deficit) Post Measures after Debt Service** | 926 | 549 | 319 | 640 | 730 | 896 | 849 | 661 | 557 | 375 | 195 | 180 | 0 | (163) | (457) | (4,519) | (7,969) |
| SUT CVI | (125) | (128) | (116) | (131) | (134) | (147) | (156) | (167) | (173) | (183) | (181) | (208) | (217) | (222) | (210) | (990) | (980) |
| Pension Reserve Trust | (5) | (221) | (175) | (308) | (396) | (549) | (492) | (294) | (183) | - | - | 27 | 217 | 385 | 667 | 2,874 | - |
| **Adjusted Surplus/(Deficit) after Debt Service, CVI and PRT** | 795 | 200 | 28 | 200 | 200 | 200 | 200 | 200 | 200 | 192 | 14 | - | - | - | - | (2,635) | (8,948) |

KROLL
27

# Value Available Under the Fiscal Plan

- The BIT Report "assume[s] the [annual] surplus is available for and used for debt service, and not saved for future deficit years" (BIT Report 31) [Debtors' Ex. 130]
  - Following an initial period of surplus, the FP projects operational deficits beginning in FY36
  - **Accepting the BIT Report's premise that value need not be set aside for future deficits, $1.9 Bn of future value would be available for creditors in an Alternative Enforcement beyond the amounts provided in the Plan**



| $ MMs | Nominal | | | Additional Value to Creditors | | |
|---|---|---|---|---|---|---|
| | 10 YRS | 15 YRS | 25 YRS | 10 YRS | 15 YRS | 25 YRS |
| FP Surplus Before Debt Service exc. Deficits | 13,163 | 15,182 | 15,182 | 10,260 | 11,385 | 11,385 |
| Debt Service and CW CVI | (8,123) | (11,305) | (15,232) | (6,305) | (8,010) | (9,494) |
| **Additional Debt Service Capacity exc Deficits** | **5,040** | **3,877** | **(51)** | **3,955** | **3,375** | **1,892** |

- The later year deficits are largely driven by an assumption that "the Commonwealth will hit a 'Medicaid fiscal cliff,' whereby it will be responsible for multi-billion-dollar annual healthcare expenditures that had previously been covered by federal funding since 2011" (FP 46) [DRA Ex. 236]
  - Maintaining Federal Medicaid funding at its current levels would eliminate the forecast operational deficits
- The expert Report of Andrew Wolfe ("Wolfe Report") sets forth various reforms that, if adopted, would eliminate operational deficits and build surpluses that total $32.4 Bn over the projection period (Wolfe Report 11)
  - As discussed *infra*, these mitigants provide significant potential additional recovery value to creditors in an Alternative Enforcement

# Alternative Enforcement Scenario

- BIT Report Assumptions

- The BIT Report analysis assumes certain adjustments to the FP in order to reach the projections of the value available for distribution in the Alternative Enforcement:

  - **Existence of Title III case:** "PROMESA Title III case of the Commonwealth is dismissed but that PROMESA Titles I and II continue to apply. Therefore, the analysis assumes the automatic stay of debt enforcement is lifted and the FOMB remains in place and will continue to certify Commonwealth Fiscal Plans and enforce implementation of budgets, subject to any debt enforcement in excess of the budget that the Puerto Rico courts would order."(BIT Report 3) [Debtors' Ex. 130]

  - **Basis of Projections**: "The analysis is based on the revenue and expenditure projections contained in the 2021 Certified Fiscal Plan." (BIT Report 3) [Debtors' Ex. 130]

  - **Treatment of Deficits**: "Surplus is available for and used for debt service, and not saved for future deficit years or deposit into the pension system." (BIT Report 31) [Debtors' Ex. 130]

  - **Adjustments to Fiscal Plan**: The BIT Report "adjusts the projections of revenues and expenses outlined in the Fiscal Plan to incorporate the risks related to the implementation of certain structural reforms and fiscal measures...

    - "[T]he higher end...assumes the impact of the structural reforms included in the Fiscal Plan will not materialize but that all fiscal measures will be implemented...the impact of any actions to introduce structural reforms will likely have less impact on growth given the overall climate of instability" (BIT Report 16-17) [Debtors' Ex. 130]

    - "The lower end of the estimated likely range of recoveries...further assumes that the healthcare reform fiscal measure will not be implemented." (BIT Report 16-17) [Debtors' Ex. 130]

    - Pension settlements and other union settlements will not be effectuated (BIT Report 3-4) [Debtors' Ex. 130]

    - PayGo contributions to System 2000 will continue (contrary to FP) (BIT Report 3-4) [Debtors' Ex. 130]

    - Additional legal fees will be incurred (BIT Report 3-4) [Debtors' Ex. 130]

    - Funds in the Reserve for Emergency Fund will not be restricted and will be available to creditors (BIT Report 3-4) [Debtors' Ex. 130]

**KROLL**

# Alternative Enforcement Scenario

- Kroll Assumptions

- The following of the BIT Report's assumptions have been accepted and reflected in this analysis:
  - **Basis of Projections**: 2021 Certified Fiscal Plan should serve as the basis of any analysis
  - **Treatment of Deficits**: Surplus generated in any given year will be used for debt service and not saved for future deficit years
  - **Adjustments to Fiscal Plan**:
    - o Additional legal fees would be required to continue to prosecute certain disputes, illustratively consistent with the fees in the BIT Report
    - o Funds in the Reserve for Emergency Fund will not be restricted
  - **Existence of Title III case:**
    - o Counsel has instructed me to assume that the Title III case of the Commonwealth is dismissed, but the FOMB's powers (other than with respect to debt enforcement) continue unabated even outside the Title III case

- The analysis herein adopts the following alternatives to the BIT Report's unfounded assumptions:
  - **Adjustments to Fiscal Plan**:
    - o As the Board continues to have its full powers, all structural reforms and fiscal measures set forth in the FP would be implemented. While implementation may present certain challenges, the FOMB would face similar difficulty regardless of whether or not the Plan is confirmed
      - – Additionally, as set forth in the Wolfe Report, the FOMB and Puerto Rico Government have multiple alternative paths to attaining the growth contemplated in the Fiscal Plan
    - o Pension and other union settlements contemplated by the FP could be implemented outside of a plan of adjustment and are assumed to continue
      - – Furthermore, any alternative pension reform (or lack thereof), would simply result in a reallocation of value to retiree creditors from other creditors, with net neutral effect on overall value available

**KROLL** 30

# Effects of Adjustments

- The BIT Report assumes that the Alternative Enforcement will result in (i) another decade of litigation, including five years at the same level as experienced during the case to date and (ii) the existence of the FOMB and operation at its current level throughout the projection period
  - These additional professional fees would reduce the future value available to creditors in the Alternative Enforcement by $1.3 Bn
  - While the magnitude and endurance of these fees appears to lack sufficient foundation, for illustrative purposes, this analysis conservatively accepts such forecast
- The BIT Report notes that an Alternative Enforcement scenario would not provide for the Commonwealth to hold back payments to creditors in order to establish an Emergency Reserve Fund
  - The FP contemplates $1.3 Bn of funding for the Emergency Reserve Fund over 10 years, of which $390 MM has already been funded
  - In an Alternative Enforcement, forgoing this funding would release $752 MM of future value to be available to creditors

| $ MMs | FY22 | FY23 | FY24 | FY25 | FY26 | FY27 | FY28 | FY29 | FY30 | FY31 | FY32 | FY33 | FY34 | FY35 | FY36 | FY 37-41 | FY 42-46 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BIT Professional Fees | (228) | (230) | (232) | (235) | (237) | (177) | (180) | (183) | (186) | (188) | (71) | (72) | (73) | (75) | (76) | (400) | (439) |
| Less: FP Professional Fees | 309 | 223 | 188 | 114 | 65 | - | - | - | - | - | - | - | - | - | - | - | - |
| Incremental Professional Fees | 81 | (6) | (45) | (120) | (172) | (177) | (180) | (183) | (186) | (188) | (71) | (72) | (73) | (75) | (76) | (400) | (439) |
| | | | | | | | | | | | | | | | | | |
| Remove Emergency Reserve | 130 | 130 | 130 | 130 | 130 | 130 | 130 | - | - | - | - | - | - | - | - | - | - |

| $ MMs | Nominal | | | Additional Value to Creditors | | |
|---|---|---|---|---|---|---|
| | 10 YRS | 15 YRS | 25 YRS | 10 YRS | 15 YRS | 25 YRS |
| Incremental Professional Fees | (1,176) | (1,543) | (2,382) | (820) | (1,015) | (1,324) |
| Emergency Reserve | 910 | 910 | 910 | 752 | 752 | 752 |
| Net Adjustments | (266) | (633) | (1,472) | (67) | (262) | (572) |

**KROLL** 31

# Net Value Under Fiscal Plan

- **Net of proper adjustments to the Fiscal Plan to reflect the Alternative Enforcement and accepting the BIT Report's premise that value need not be set aside for future deficits, $1.3 Bn of future value would be available for creditors in an Alternative Enforcement beyond the value provided in the Plan**

| $ MMs | Nominal | | | Additional Value to Creditors | | |
|---|---|---|---|---|---|---|
| | 10 YRS | 15 YRS | 25 YRS | 10 YRS | 15 YRS | 25 YRS |
| FP Surplus Before Debt Service exc. Deficits | 13,163 | 15,182 | 15,182 | 10,260 | 11,385 | 11,385 |
| Debt Service and CW CVI | (8,123) | (11,305) | (15,232) | (6,305) | (8,010) | (9,494) |
| Incremental Professional Fees | (1,176) | (1,543) | (2,382) | (820) | (1,015) | (1,324) |
| Emergency Reserve | 910 | 910 | 910 | 752 | 752 | 752 |
| **Additional Capacity Under Fiscal Plan** | **4,774** | **3,244** | **(1,522)** | **3,888** | **3,113** | **1,320** |

**KROLL** 32

# Non-Priority Expenses Improperly Elevated

# Non-Core Services Effect on Distributable Value

- As set forth *supra*, the OMB Act provides third priority (subordinate to debt service) for certain Core Services
- The BIT Report assumes that non-bankruptcy law respecting priority of debt service would be pre-empted by unspecified police powers to allow all operating expenditures to be paid in priority to debt service (See BIT Report 35) [Debtors' Ex. 130]
- As set forth *supra*, a court in an Alternative Enforcement may limit these police powers to prioritize funding only services established as Core Services (or potentially also provide priority to regulatory and administrative expenses) over debt service
  - **If only Core Services (given third priority in the OMB Act) were elevated over debt service, $70.5 Bn of additional future value would be available to creditors**
  - **If a court were to prioritize Core Services and regulatory and administrative expenses over debt service, but other budgeted expenses were not prioritized, $17.1 Bn of future value beyond the Plan would be available to creditors**
  - **If only Cultural expenses in the budget were subordinate to debt service, $1.5 Bn of future value (beyond the amounts provided in the Plan) would be available to creditors**

| $ MMs | Nominal | | | Additional Value to Creditors | | |
|---|---|---|---|---|---|---|
| | 10 YRS | 15 YRS | 25 YRS | 10 YRS | 15 YRS | 25 YRS |
| Culture | 998 | 1,557 | 2,828 | 766 | 1,063 | 1,531 |
| Development | 10,068 | 15,701 | 28,519 | 7,729 | 10,719 | 15,444 |
| Other Non-Core | 83 | 130 | 236 | 64 | 89 | 128 |
| **Total Non-Core** | **11,150** | **17,388** | **31,583** | **8,559** | **11,870** | **17,103** |
| Regulatory & Administrative | 34,777 | 54,237 | 98,511 | 26,696 | 37,026 | 53,348 |
| **Non-Core + Regulatory & Administrative** | **45,927** | **71,625** | **130,093** | **35,255** | **48,896** | **70,452** |

**KROLL**

34

# Pension Reserve Trust

- As noted *supra*, under the Plan $2.8 Bn is deposited into a Pension Reserve Trust through FY 30
- This Pension Reserve Trust will be used for payment of future pension payments (See Plan of Adjustment Benefits 5) [Debtors' Ex. 29]
  - In other words, the Plan is utilizing current surplus to fund future deficits, contrary to the BIT Report's assumption that surplus is not saved for future deficit years
- This payment is not a creditor payment as the BIT Report makes clear "pension recoveries…are assumed to be paid in full as part of the Fiscal Plan"(BIT Report 18) [Debtors' Ex. 130]
  - The FP provides that pension obligations should be paid on a current basis ("paygo") and not through funding of a pension account as contemplated in the Plan (See FP 66, 281-284) [DRA EX. 236]—although the FP directs that the "PayGo system must…reduce the current benefit amounts paid," (FP 169) [DRA EX. 236] the Plan increases the current payments to the pension system
  - This multi-billion dollar inconsistency between the Plan and the FP is noted by Murray, but assumed to not exist (See Murray 28)
- Accordingly, in an Alternative Enforcement, the value contributed to the Pension Reserve Trust would be available for creditor distribution
  - The analysis contained herein has, therefore, ignored any funding of or withdrawals from the Pension Reserve Trust

KROLL

# Capped Return Not Considered

# Limited Scope of BIT Report Analysis

- The BIT Report fails to recognize that an Alternative Enforcement would enable creditors to recover from actual financial performance, whereas the Plan limits creditor recoveries
- In an Alternative Enforcement, creditors would be entitled to collect against actual performance of the Commonwealth, unconstrained by the forecast in the FP
  - As set forth in the Wolfe Report, the CW has tremendous potential to outperform the FP, which outweighs downside risks
  - Creditors would bear any risk of underperformance versus the FP (although for the reasons set forth in the Wolfe Report, this risk is far less than the upside potential) under both the Plan (as a result of receiving new bonds) and an Alternative Enforcement
- The Plan provides very limited creditor participation in this outperformance, whereas an Alternative Enforcement would enable value to flow freely to creditors until they are paid in full

**KROLL**

37

# Additional Surplus

- ## Medicaid Funding

- As noted, a major constraint in the FP is an assumption that the Federal government will cut its Medicaid match funding to the Commonwealth from the levels sustained since 2011 (See FP 46) [DRA EX. 236]

- The Prior Fiscal Plans projected Medicaid "cliffs" (loss of higher level of Federal funding) and have consistently extended the timeline of high matching funds as the Federal government has maintained the status quo

- On September 15, 2021, Resident Commissioner Jenniffer González Colón announced that the US Department of Health and Human Services had determined that existing law maintains Medicaid allocations in line with the current funding, growing at the rate of medical cost inflation (See Gonzalez-Colon press release, Sept. 15, 2021) [DRA EX. 208]

  - On September 30, 2021, Congress passed legislation maintaining the higher level of Medicaid spending for Puerto Rico, subject to review (See H.R. 5305)

  - **This Federal funding is not incorporated in the Fiscal Plan or the BIT Report, but would reduce the CW's burden for Core Services, freeing funds for other purposes in an Alternative Enforcement; $1.2 Bn of value is released in FY22 alone and, if sustained just for the duration of the current Biden Administration, this funding adds $5.7 Bn of future value**



**Projected Medicaid Cliff by Fiscal Plan Date**

| $ MMs | Nominal | | | Additional Value to Creditors | | |
|---|---|---|---|---|---|---|
| | 10 YRS | 15 YRS | 25 YRS | 10 YRS | 15 YRS | 25 YRS |
| **Additional Medicaid Funding** | 18,881 | 31,813 | 65,779 | 14,286 | 21,134 | 33,576 |

| $ MMs | FY22 | FY23 | FY24 | FY25 | FY26 | FY27 | FY28 | FY29 | FY30 | FY31 | FY32 | FY33 | FY34 | FY35 | FY36 | FY 37-41 | FY 42-46 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FP Medicaid Funding | 1,282 | 468 | 484 | 501 | 519 | 538 | 557 | 578 | 599 | 620 | 642 | 666 | 690 | 714 | 740 | 4,109 | 4,889 |
| Medicaid Funding at HHS Levels | 2,458 | 2,244 | 2,258 | 2,270 | 2,363 | 2,468 | 2,575 | 2,686 | 2,796 | 2,908 | 3,027 | 3,150 | 3,275 | 3,402 | 3,529 | 19,630 | 20,065 |
| **Additional Medicaid Funding** | 1,175 | 1,776 | 1,774 | 1,769 | 1,844 | 1,930 | 2,018 | 2,109 | 2,197 | 2,288 | 2,385 | 2,484 | 2,586 | 2,688 | 2,789 | 15,520 | 15,175 |

# Potential Additional Surplus

- Wolfe Reforms

- **The Wolfe Report sets forth various reforms that are not included in the FP and, if adopted, would eliminate operational deficits and build $11.9 Bn of future value that would be available to creditors (or to protect Puerto Rico's budget)**
- The Wolfe Report broadly classifies these reforms as:
  - Labor reforms—such as providing increased flexibility for laying off workers and implementing high-quality worker training
  - Ease of doing business reforms—including deregulating the internal transportation sector
  - Tax reforms—such as broadening tax base, eliminating certain breaks, and lowering marginal rate



**Surplus Effect of Wolfe Reforms**

| $ MMs | Nominal | | | Additional Value to Creditors | | |
|---|---|---|---|---|---|---|
| | 10 YRS | 15 YRS | 25 YRS | 10 YRS | 15 YRS | 25 YRS |
| Impact of Labor Reforms | 1,542 | 4,916 | 18,907 | 1,035 | 2,807 | 7,841 |
| Impact of Ease of Doing Business Reforms | 326 | 1,527 | 7,296 | 211 | 840 | 2,906 |
| Impact of Tax Reforms | 605 | 1,135 | 2,387 | 429 | 710 | 1,171 |
| **Total Impact of Reforms** | **2,473** | **7,578** | **28,590** | **1,675** | **4,357** | **11,919** |

# Conclusion and Signature

KROLL 40

# Conclusion

- **At least $3.4 Bn (and up to $23.5 Bn) of additional value would be available to creditors under non-bankruptcy law than is provided in the Plan**, consisting of:
  - $1.3 Bn to $3.1 Bn of current cash that is not distributed under the Plan, is not required for future purposes, and could be immediately distributed to creditors and
  - $2.1 Bn to $20.4 Bn of future value available to creditors in an Alternative Enforcement under the FOMB's own projections
  - Of course, any Alternative Enforcement would cap creditor distributions at the value of their claims
- **This additional value far exceeds the value depicted in the BIT Report and represents materially greater recoveries to creditors in an Alternative Enforcement than the value provided in the Plan**
  - Further value would be available to creditors (or to protect Puerto Rico's budget) were the Wolfe reforms implemented; such value is not included in the calculation of additional value available

| $MMs | Conservative | Potential |
|---|---|---|
| **Provided in Plan** | 19,280 | 19,280 |
| | | |
| **Cash Availability** | | |
| Additional Unrestricted Funds | - | +345 |
| Right-size Liquidity Needs | +972 | +2,352 |
| Consent Fees Avoided | +300 | +400 |
| **Total Cash Availability** | **+1,272** | **+3,097** |
| | | |
| **Additional Future Value** | | |
| **Additional Capacity Under Fiscal Plan** | | |
| Additional Capacity from No Deficit Funding | - | +1,892 |
| Additional Professional Fees | -1,324 | -1,324 |
| Release of Emergency Reserve | +752 | +752 |
| **Total Additional Capacity Under Fiscal Plan** | **-572** | **+1,320** |
| | | |
| **Non-Priority Expenses** | | |
| Prioritize Core Expenses Only (General Fund) | +1,531 | +17,103 |
| **Total Non-Priority Expenses** | **+1,531** | **+17,103** |
| | | |
| **Value Beyond FP** | | |
| Federal Funds per HHS | +1,175 | +5,719 |
| **Total Value Beyond FP** | **+1,175** | **+5,719** |
| | | |
| **Adjustment** | | |
| Reversal of Deficit Elimination | - | -3,741 |
| | | |
| **Total Additional Value Available** | **+3,407** | **+23,498** |
| Additional Value as % of Value Provided in Plan | +18% | +122% |
| | | |
| **Total Available Value** | 22,687 | 42,778 |
| | | |
| Additional Measures per Wolfe | - | +11,919 |

Note: In the Potential scenario, the CW will not incur deficits if all potential value in considered; accordingly, the value attributable to deficit elimination is duplicative when considering the sum of all identified areas of additional future value

**KROLL** 41

- Signature

- The foregoing sets forth my findings as of the date hereof. I reserve the right to revise my opinions should I become aware of additional information.

/s/ *David W. Prager*

David W. Prager, CFA

October 8, 2021

# Appendices

# Materials Relied Upon

**Court Documents**

- Seventh Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al. (DI 17627) [Debtors' Ex. 1]
- Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., (DI 17628) and exhibits thereto [Debtors' Ex. 2]

**Expert Reports**

- Expert Report of Marti P. Murray, No. 17 BK 3283-LTS, September 13, 2021 (DI 18097-1)
- Expert Report of Andrew Wolfe (Corrected), No. 17 BK 3283-LTS, September 13, 2021 (DI 18151-1)

**Public Sources**

- "Jenniffer González anuncia que Medicaid ya cuenta con los $2.9 billones para el próximo año fiscal," Jenniffer González Colón press release, September 30, 2021 [DRA Ex. 208]
- "Puerto Rico to Get $2.9 Billion Next Fiscal Year for Medicaid," *The Weekly Journal*, September 17, 2021 [DRA Ex. 209]
- "The Curious Case of Puerto Rico's Medicaid Funding," *Washington Post*, September 28, 2021 [DRA Ex. 210]
- Office of Management and Budget, Act No. 147 of June 18, 1980, as amended
- Constitution of the Commonwealth of Puerto Rico, February 6, 1952
- H.R. 5305, 117th Congress of the United States

**Produced Documents**

- Financial Oversight and Management Board for Puerto Rico (2021) "Fiscal Plan – Financial Model, 2021 Certified Commonwealth Fiscal Plan" (FOMB_CONF_88824) [DRA Ex. 412]
- "Best Interests Test (BIT) Model for the CW, ERS, and PBA" (FOMB_CONF_88825) [DRA Ex. 413]
- "SUT CVI Model" (MURRAY_CONF_00089) [DRA Ex. 414]
- "Commonwealth Retains Significant Cash" (MURRAY_CONF_27452) [Debtors' Ex. 30]
- "Puerto Rico's Proposed Plan of Adjustment Benefits," September 17, 2021 [Debtors' Ex. 29]

**KROLL**

# Materials Relied Upon

**Government Publications**

- Financial Oversight and Management Board for Puerto Rico (2018) "New Fiscal Plan for Puerto Rico," April 19, 2018 [DRA Ex. 231]
- Puerto Rico Fiscal Agency and Financial Advisory Authority (2017) "Fiscal Plan for Puerto Rico," March 13, 2017 [DRA Ex. 229]
- Financial Oversight and Management Board for Puerto Rico, "New Fiscal Plan for Puerto Rico," June 29, 2018 [DRA Ex. 232]
- Financial Oversight and Management Board for Puerto Rico (2018) "New Fiscal Plan for Puerto Rico," October 23, 2018 [DRA Ex. 233]
- Financial Oversight and Management Board for Puerto Rico (2019) "2019 Fiscal Plan for Puerto Rico," May 9, 2019 [DRA Ex. 234]
- Financial Oversight and Management Board for Puerto Rico (2020) "2020 Fiscal Plan for Puerto Rico," May 27, 2020 [DRA Ex. 235]
- Financial Oversight and Management Board for Puerto Rico (2021) "2021 Fiscal Plan for Puerto Rico," April 23, 2021 [DRA Ex. 236]
- Financial Oversight and Management Board for Puerto Rico (2020) "2020 COFINA Fiscal Plan," June 19, 2020 [DRA Ex. 250]
- Financial Oversight and Management Board for Puerto Rico (2021) "FY22 Certified Budget for the Commonwealth of Puerto Rico," June 30, 2021 [DRA Ex. 251]
- Financial Oversight and Management Board for Puerto Rico (2021) "Puerto Rico's Proposed Plan of Adjustment Benefits," September 17, 2021 [Debtors' Ex. 29]
- Puerto Rico Department of Treasury, "Treasury Single Account Cash Flow," Weekly Reports Published Between October 20, 2017 – September 24, 2021 [DRA Ex. 1-206]

**KROLL** 45

## David W. Prager, CFA



**Managing Director**
**Head of US Restructuring**

- B.S. in Economics from The Wharton School at the University of Pennsylvania
- Chartered Financial Analyst (CFA) charterholder
- Member of the CFA Institute, the CFA Society of New York and the American Bankruptcy Institute

David W. Prager leads Kroll's US Restructuring practice. He has over two decades of experience as a financial advisor, interim manager, restructuring professional and expert witness.

David has represented both debtors and creditors in high-profile restructurings, including serving in interim executive officer/C-suite positions. He has testified and served as a consulting expert in bankruptcy matters, valuation and solvency disputes and other complex commercial litigation.

David has supported creditors, including official creditors' committees, and advised investment funds in various municipal (including Puerto Rico, Detroit and Jefferson County) and corporate (such as Ditech, SemGroup and MBIA) restructuring matters. In these matters, he provided financial restructuring advice, negotiated reorganization plans and investigated various causes of action. In company-side restructuring matters, David served as interim CFO of Syncora Guarantee (a monoline insurer) and CEO of The PMI Group (a mortgage insurance holding company) and financial advisor to various companies (including multi-national conglomerates) and board committees (such as in Energy Future Holdings and Toys 'R' Us).

David has testified in high-profile, highly contentious bankruptcy disputes, such as Adelphia, Tribune, Patriot Coal and Rye Playland. Topics of his testimony have included the fairness of the plans of reorganization, valuation, reasonableness of projections and evaluation of complex value allocation. David has also served as consulting expert on multiple fraudulent conveyance actions. During the Enron bankruptcy, he investigated and valued highly complex and varied assets and formulated proposals for Enron's reorganization. Many of David's matters have involved the resolution of complex capital structures.

Prior to joining Kroll, David spent over 18 years at Goldin Associates, a leading restructuring advisory boutique, where he most recently served as a managing director.

**KROLL** 46