**Exhibit A**

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**DECLARATION OF DAVID M. BROWNSTEIN IN RESPECT OF CONFIRMATION OF SEVENTH AMENDED TITLE III PLAN OF ADJUSTMENT OF COMMONWEALTH OF PUERTO RICO, ET AL.[2]**

I, David M. Brownstein, hereby declare and state as follows:

1.   I am a Managing Director in the Municipal Finance Department at Citigroup Global Markets Inc. ("Citi"). Citi has consistently been ranked as a top underwriter of municipal bonds and made commitments in excess of $20 billion to provide both bridge and long-term funding as well as credit and liquidity facilities to Citi's municipal clients.

2.   The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]   Pursuant to the Court's *Order Memorializing Certain Rulings Made at the November 1, 2021 Pretrial Conference* [ECF No. 19009], this declaration has been amended solely to include references to the filed exhibits and their respective ECF numbers.

of Puerto Rico ("ERS"), the Puerto Rico Public Buildings Authority ("PBA"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Puerto Rico Electric Power Authority ("PREPA") (the Commonwealth, ERS, PBA, COFINA, HTA and PREPA are collectively referred to as the "Debtors"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), retained Citi to serve as investment banker and financial advisor to the Oversight Board in connection with the Oversight Board's duties under PROMESA and its task of working with the Commonwealth to create the necessary foundation for economic growth and to restore opportunity to the people of the Commonwealth. Through Citi's expertise in municipal finance, capital markets, restructurings, and infrastructure and utility finance, it has assisted the Oversight Board in its efforts to restructure the Debtors' debts, restore their access to capital markets, and put them on the path to economic recovery.

3.  I have been at Citi for more than 25 years and have worked in the "municipal market" for more than 35 years, serving as underwriter or advisor to over 200 municipal issuers on both revenue and general obligation bonds with a par amount in excess of $30 billion. In addition to a bachelor's degree from Beloit College, I hold a number of professional licenses from the Financial Industry Regulatory Authority. These include:

>   (a) General Securities Principal, Series 24;
>   (b) General Securities Representative, Series 7;
>   (c) Municipal Securities Principal, Series 53; and
>   (d) Municipal Securities Representative, Series 52.

4.  In 2008, I also served as Chairman of the Municipal Executive Committee of the Securities Industry and Financial Markets Association ("SIFMA"). During that period, I assisted SIFMA in obtaining federal guidance so that municipal governments could restructure outstanding auction-rate securities that failed as a result of liquidity challenges facing the municipal market.

2

For my work in this role during the financial crisis commencing in 2008, I received the SIFMA 2012 Honor Roll Award.

5. I have been directly involved in assisting distressed governments, serving as a banker to Jefferson County, Alabama in connection with its 2013 sewer refinancing and to Detroit, Michigan in connection with its 2014 water and sewer debt restructuring. These two debt restructurings were each a significant component of the total debt restructured as part of the largest bankruptcies in the history of the municipal market at the time.

6. I also was closely involved in the successful restructuring of COFINA's debt by the Oversight Board pursuant to the confirmed *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3284, ECF No. 561], as the Oversight Board's investment banker. COFINA's restructuring reduced COFINA's debt from approximately $17.6 billion to $12 billion in the largest confirmed municipal restructuring in U.S. history and reduced debt service payments by over $17 billion.

7. With respect to the Commonwealth, I have been in a lead role in all aspects of Citi's engagement, including (i) reviewing the Commonwealth's certified fiscal plans for accuracy, (ii) in conjunction with other Oversight Board advisors, leading negotiations with claimholders regarding the provisions of the Commonwealth plan of adjustment, (iii) attending virtually all the mediation sessions regarding the Commonwealth's proposed plan of adjustment, (iv) speaking with creditors who were restricted and other market participants after the Plan (Debtors' Ex. 1 [ECF No. 18785-1]) was publicly released regarding the terms of the New GO Bonds[3] and the CVIs to be issued by the Commonwealth on the Effective Date pursuant to the Plan, and (v)

---

[3] Capitalized terms not defined herein shall have the same meanings given them in the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Case No. 17-3283, ECF No. 17627] (as amended, modified, or supplemented, the "Plan"), Debtors' Ex. 1 [ECF No. 18785-1].

providing assistance to the Oversight Board in drafting financial aspects of the Planand the *Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Case No. 17 BK 3283, ECF No. 17628] (the "Disclosure Statement"), Debtors' Ex. 2 [ECF No. 18785-2].

8. I submit this declaration (the "Declaration") in respect of confirmation of the Plan. I am authorized to submit this Declaration on behalf of the Commonwealth, PBA, and ERS. My statements set forth in this Declaration are based on my personal knowledge except where I reference specific documents or communications as the basis of my statements. In those instances where I reference a specific document or communication, the specific document or communication either is not being offered to prove the truth of the matter asserted in the statement or, I am informed, is otherwise admissible because, for instance, it is a self-authenticating public record or can be otherwise authenticated and shown to be admissible. Where my Declaration provides opinion testimony, in addition to the above, the opinions set forth herein are based on (i) information shared with me by other members of the Citi team working directly with me or under my supervision and direction; (ii) additional information of the types generally relied on by others who have similar experience and expertise in my field, such as information provided by the Oversight Board and its advisors, and other interested parties and their respective advisors, concerning the restructuring, and/or (iii) my experience in the industry as described above. If I were called upon to testify, I could and would testify competently as to the facts set forth herein.

### Efforts to Obtain Tax Exempt Status for the New GO Bonds and CVIs

9. I personally participated in the negotiation of and have reviewed the Amended and Restated Plan Support Agreement, dated as of July 12, 2021 (the "GO/PBA PSA") (Debtors' Ex. 16 [ECF No. 18791-6]), executed by the Oversight Board and certain holders and monoline

4

insurers of Commonwealth general obligation ("GO") and PBA bonds. As a general matter, the GO/PBA PSA requires the Commonwealth to provide a recovery to holders of GO and PBA bonds in part by the issuance of New GO Bonds and CVIs. Similarly, I personally participated in the negotiation of and have reviewed the HTA/CCDA Related Plan Support Agreement, dated as of May 5, 2021 (the "HTA/CCDA PSA") (Debtors' Ex. 17 [ECF No. 18791-7]), and the PRIFA Related Plan Support Agreement, dated as of July 27, 2021 (the "PRIFA Related PSA") (Debtors' Ex. 18 [ECF No. 18791-8]), and these two additional plan support agreements provide a recovery to certain holders of bonds issued by HTA, CCDA, and PRIFA in the form of CVIs issued by the Commonwealth.

10. In general, the CVIs will be structured so that payments will be made only if the Commonwealth's sales and use tax ("SUT") collections outperform certain projections contained in the fiscal plan for the Commonwealth certified in May 2020 (the "May 2020 Certified CW Fiscal Plan") (Debtors' Ex. 9 [ECF No. 18785-9]). The CVIs will be subject to certain annual caps on potential recovery, as well as a lifetime cap on total recovery. The GO/PBA PSA (Debtors' Ex. 16 [ECF No. 18791-6]), the HTA/CCDA PSA (Debtors' Ex. 17 [ECF No. 18791-7]), and the PRIFA Related PSA (Debtors' Ex. 18 [ECF No. 18791-8]) each require the Oversight Board to use its reasonable best efforts to achieve tax exempt status for the New GO Bonds and all or a portions of the CVIs to be issued under the Plan.

11. As part of my job responsibilities, I keep apprised of the efforts that are being made to obtain tax-exempt status for the New GO Bonds. I am aware that Commonwealth advisors and employees are engaging in the significant due diligence that is necessary to obtain tax-exempt status for the New GO Bonds. Additionally, a request for the U.S. Internal Revenue Service to issue a private letter ruling or closing agreement relating to the tax-exempt status of the New GO

Bonds has been prepared by advisors to the Commonwealth and reviewed and commented on by advisors to the Oversight Board.

12. I have also been involved in efforts to obtain tax-exempt status for all or a portion of the CVIs. Based on my general experience with municipal finance and after discussions with the Commonwealth's advisors, I understand that to obtain tax-exempt status for all or a portion of the CVIs, the issuer would need to obtain an expert's opinion stating, with a high degree of certainty, that the amount of SUT collections projected each year will be enough to make payments on all or a portion of the CVIs, together with a report providing the underlying computations, assumptions and reasoning supporting those projections.

13. I reviewed the currently certified fiscal plan for the Commonwealth (the "2021 Certified CW Fiscal Plan") (Debtors' Ex. 10 [ECF No. 18785-10]) and I understand it projects SUT collections will outperform the projections contained in the May 2020 Certified CW Fiscal Plan (Debtors' Ex. 9 [ECF No. 18785-9] at 41–42). In an attempt to obtain the necessary expert opinion and report, I reached out to Oversight Board advisors that were involved in the development of the 2021 Certified CW Fiscal Plan and, specifically, the 2021 Certified CW Fiscal Plan's projection of SUT collection (Debtors' Ex. 10 [ECF No. 18785-10] at 44–45). I was, however, informed by those advisors that the SUT projections contained in the 2021 Certified CW Fiscal Plan are the combined product of multiple different advisors' work, and therefore that no individual Oversight Board advisor could provide the requisite expert opinion and report.

14. The Oversight Board continues to evaluate potential alternatives to obtain tax-exempt status for all or a portion of the CVIs.

### Treatment of Retail GO and PBA Bond Claims
### and Election Option of Puerto Rico Investors

15. The Plan proposes to provide holders of "Retail" GO and PBA Bond claims (which, in general terms, is defined in the Plan to include the claims of bondholders who hold, in the aggregate, less than $1 million in bond claims against the Commonwealth (Debtors' Ex. 1 [ECF No. 18785-1] at 55–56) with differing treatment based upon whether their class votes to accept or reject the Plan. In general terms, if holders of claims in Classes 7, 9, 11, 16, 31, 38, 41, 47 vote to accept the Plan, they will receive (a) their pro rata share of the bond recovery applicable to their vintage of bond, plus (b) a "Retail Support Fee," which, in general terms, is a share in a cash recovery allocable to Retail Investors (those holding less than $1,000,000.00 of bonds) under the GO/PBA PSA, in an amount not to exceed $50 million in the aggregate (Debtors' Ex. 1 [ECF No. 18785-1] at 79–81, 82, 87, 89–90, 93). If such class of holders votes to reject the Plan, however, their class will not receive any portion of the Retail Support Fee. In such case, the portion of the Retail Support Fee that would otherwise have been allocated to the rejecting class would be reallocated to (i) other classes of retail holders' claims which voted to accept the Plan and (ii) the GO/PBA Restriction Fee Creditors (as such term is defined in the Plan) (Debtors' Ex. 1 [ECF No. 18785-1] at 79–81, 82, 87, 89–90, 93).

16. The Plan also contains provisions specifying that all Puerto Rico Investors (which, in general terms, is defined in the Plan to mean on-island bondholders) whose claims have been classified within Classes 15, 16, 23, 30, 31, 34, 36, 38, 40, 41, 44, 46, 47, or 49 can elect to be treated in Classes 22, 29, 33, 35, 39, 43, 45, 48, or 50 and, as a result, receive taxable New GO Bonds with a higher interest rate, in place of tax-exempt New GO Bonds (Debtors' Ex. 1 [ECF No. 18785-1] at 81–94). As mentioned above, while appropriate steps are being taken to obtain tax-exempt status for the New GO Bonds, it remains uncertain whether all the New GO Bonds

issued pursuant to the Plan will be tax-exempt. The taxable election is provided because, unlike mainland U.S. investors, Puerto Rico Investors are generally not subject to U.S. federal income taxation, and when Puerto Rico Investors elect taxable treatment for their New GO Bonds, it increases the likelihood that a greater amount of tax-exempt bonds will be available for mainland U.S. bondholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 25, 2021
      New York City, NY

David M. Brownstein
Managing Director
Citigroup Global Markets Inc.