UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF NATALIE JARESKO IN RESPECT OF CONFIRMATION OF EIGHTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT FOR THE COMMONWEALTH OF PUERTO RICO, ET AL.**

I, Natalie A. Jaresko, hereby declare and state as follows:

1. I am the Executive Director of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the sole Title III representative of debtors the Commonwealth of Puerto Rico (the "Commonwealth"), the Employee Retirement System of the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 17-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA") pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA").

2. I submit this supplemental declaration (the "Supplemental Declaration") in respect of confirmation of the *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Case No. 17-BK-3283-LTS, ECF No. 19053] (as may be amended, supplemented, or modified further, the "Plan") and in response to certain objections interposed to confirmation of the Plan, as well as the new legislation, known as Act 53-2021, titled "Law to End the Bankruptcy of Puerto Rico" ("Act 53"), recently enacted by the Commonwealth government, and decisions made by the Oversight Board regarding modifications to the Plan following the enactment of Act 53. Any capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Plan.

3. My statements set forth in this Supplemental Declaration are based on my personal knowledge except where I reference specific documents or communications as the basis of my statements. In those instances where I reference a specific document or communication, the specific document or communication either is not being offered to prove the truth of the matter asserted in the statement or, I am informed, is otherwise admissible because, for instance, it is a self-authenticating public record or can be otherwise authenticated and shown to be admissible.

4. As pertinent to this Supplemental Declaration, I continue to be familiar with, and have reviewed (i) the Plan (including its recent modifications), and (ii) the other documents I referenced in my initial declaration [Case No. 17-BK-3283-LTS, ECF No. 18729] (the "Initial Declaration") filed in respect of the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Case No. 17-BK-3283-LTS, ECF No. 17627] (the "Seventh

2

Amended Plan"). I have also reviewed and am familiar with Act 53, and in particular, as it relates to the modified terms of the Plan.

5. On October 25, 2021, I submitted my Initial Declaration. The Initial Declaration set forth, among other things, a description of the classification and treatment of pension Claims in the Seventh Amended Plan. My Initial Declaration stated there were on-going discussions concerning matters regarding the treatment of pension Claims in the Seventh Amended Plan. Here, I supplement my Initial Declaration to reflect the result of those discussions.

6. As noted above, on October 26, 2021, the Governor of Puerto Rico signed into law Act 53, one of the stated purposes of which is to support the Plan and take the affirmative steps necessary to direct the exit of Puerto Rico from PROMESA Title III cases. Act 53 conditionally authorizes the issuance of New GO Bonds and CVIs, as provided for in the Seventh Amended Plan, on the Oversight Board filing a modified Plan eliminating the Monthly Benefit Modification. This is the Oversight Board's interpretation of Act 53. The Oversight Board is separately giving notice of its interpretation to parties in interest so the Court can resolve contrary interpretations, if any, in the context of the confirmation hearing.

7. As a result of the enactment of Act 53, the Oversight Board reviewed and considered the implications of the legislation upon the Seventh Amended Plan, the Commonwealth, and its residents, and determined to modify the Seventh Amended Plan to eliminate the Monthly Benefit Modification in the Plan. In connection with this modification, the Oversight Board also determined to increase the funding of the Pension Reserve Trust under the Plan. Below I explain why I believe that eliminating the Monthly Benefit Modification in the Plan is appropriate in light of the totality of the current facts and circumstances. I further explain my belief that the Commonwealth can eliminate the Monthly Benefit Modification for ERS, JRS,

3

and TRS Participants and the Plan will be consistent with the Fiscal Plan. However, I also explain there cannot be other modifications or changes to the Plan involving pensions. For example, if the Plan were changed to (i) eliminate the freeze of JRS and TRS pension benefit accruals (the "Pension Freeze") and (ii) include any future pension benefit cost of living adjustments for JRS, TRS, or ERS Participants ("COLAs"), then the Plan would not be (a) consistent with the Fiscal Plan, (b) feasible, or (c) implementable.

8. The modifications to the Seventh Amended Plan to eliminate the Monthly Benefit Modification will add an average of approximately $87 million annually to the cost of the Commonwealth's PayGo obligations for the first ten years after the July 1, 2022 Monthly Benefit Modification effective date ("Modification Effective Date") assumed in the Fiscal Plan, which represents less than 5% of the Commonwealth's estimated PayGo expenses for this period, *see* Supplemental Levy Declaration, ¶ 10, and less than 1% of the Commonwealth's overall budget for this period. *See* Fiscal Plan (Debtors' Exhibit 10 [ECF No. 18785-10]) at 303. This additional cost will be payable from the surpluses projected in the Commonwealth's April 23, 2021 Fiscal Plan during this period. *See* Fiscal Plan (Debtors' Exhibit 10) at 59; *see also id.* at 43 (projecting over $1 billion in surplus each fiscal year through fiscal year 2026). The Oversight Board further estimates the incremental annual cost of eliminating the Monthly Benefit Modification will thereafter decline to an estimated average cost of approximately $69 million annually for the following decade, before falling further to an estimated $40 million annual average for fiscal years 2043 through 2051. *See* Supplemental Levy Declaration, ¶ 10. The aggregate incremental cost of eliminating the Monthly Benefit Modification is approximately $1.9 billion, with an overall average annual cost increase of approximately $66 million over the 29 years in which the Monthly Benefit Modification is reflected in the Fiscal Plan. *See* Levy Declaration [ECF No. 18737], ¶ 54.

4

Therefore, the cost of eliminating the Monthly Benefit Modification is known and a significant portion of the cost will be incurred during a period of primary surpluses. The elimination of the Monthly Benefit Modification could have the effect of accelerating projected deficits in the later years. That effect can be mitigated if the incremental structural reforms are implemented by the Commonwealth government. Moreover, as set forth in more detail below, the Pension Reserve Trust will be available (until exhausted, if that ever occurs) to fund the Commonwealth's PayGo obligations if the currently-projected deficits materialize and even if the Commonwealth government fails to implement certain reforms identified by the Oversight Board. Thus, I believe the elimination of the Monthly Benefit Modification will not increase or otherwise impact the projected deficits under the Fiscal Plan until the Pension Reserve Trust has been exhausted, if that ever occurs.

9. The Oversight Board has consistently worked to protect and fund current pension payments, as well as future pension payments. The Pension Reserve Trust is an important tool in the Plan to reduce the risk that the Commonwealth will be unable to satisfy pension payment obligations in future years, whether due to unexpected crises, or a failure to exercise fiscal responsibility, or both. Such circumstances include the deficits currently projected under the Fiscal Plan. The Pension Reserve Trust ensures that some portion of the projected surplus in the early years of the Fiscal Plan are saved to protect pensions in later years when the risk of deficits is increased. Given that the Pension Reserve Trust was not fully funded under the Seventh Amended Plan and the Commonwealth's pension costs will increase by $1.9 billion over the thirty-year period of the Fiscal Plan as a result of eliminating the Monthly Benefit Modification in the Plan, the Oversight Board believes that it is necessary and fiscally responsible to set aside additional funds in the Pension Reserve Trust, if surplus projections enable them, to ensure there is adequate

funding to cover these increased costs. In addition, setting aside additional funds upfront will help protect pension benefits in later fiscal years in which a deficit is currently projected. Further, setting aside additional funds is consistent with the Oversight Board's mandate under PROMESA to provide adequate funding for pensions.

10. Accordingly, the Oversight Board has modified the formula and increased the time period for the funding of the annual contributions to the Pension Reserve Trust from the Commonwealth General Fund. Under the Plan, the Commonwealth will contribute annually for ten (10) Fiscal Years, beginning for the Fiscal Year in which the Effective Date occurs, an amount no less than $175 million per year to the Pension Reserve Trust (the "Base Contribution"), provided that, for any Fiscal Year ending after the Effective Date in which the projected unrestricted primary fiscal plan surplus minus the sum of (i) projected CVI payments for such Fiscal Year, plus (ii) the positive difference, if any, of projected Non-Own Source Revenue minus actual Non-Own Source Revenue for such Fiscal Year (the "Projected Fiscal Plan Surplus"), is at least $1.750 billion, the Base Contribution shall increase to an amount equal to 50% of the Projected Fiscal Plan Surplus for that Fiscal Year. "Non-Own Source Revenue" means revenues of the Commonwealth received from the United States government or any of its agencies.

11. In the Plan, the Commonwealth also must make additional contributions to the Pension Reserve Trust on an annual basis equal to: (a) the lower of the actual unrestricted primary surplus minus the actual CVI payments for such Fiscal Year or the Projected Fiscal Plan Surplus for such Fiscal Year, minus the sum of (i) the Base Contribution for such Fiscal Year, plus (ii) the Commonwealth debt service obligation pursuant to the Plan for such Fiscal Year, plus (iii) two hundred million dollars ($200,000,000.00); provided, however, that, in all instances, such additional amount cannot be negative, and (b) subject to applicable laws, including, without

6

limitation, Titles I and II of PROMESA, such additional amounts as the Commonwealth, in its discretion, elects to deposit into the Pension Reserve Trust.

12. Based on the current Fiscal Plan's projections, the Commonwealth contributions to the Pension Reserve Trust will total approximately $2.4 billion during the ten years of funding, all of which will be contributed to the Pension Reserve Trust during the time period in which the current Fiscal Plan projects the Commonwealth to have primary surpluses. Supplemental Santambrogio Declaration, ¶ 10; Fiscal Plan (Debtors' Exhibit 10) at 59. The Oversight Board further anticipates an annual return on investment for the Pension Reserve Trust of 4.5%, and as a result, estimates that the Pension Reserve Trust would have a balance of approximately $3.1 billion by the end of Fiscal Year 2031. Supplemental Santambrogio Declaration, ¶ 10.

13. Unlike the elimination of the Monthly Benefit Modification, if the Plan were modified to remove the (i) Pension Freeze and (ii) the elimination of COLAs, the Plan would not be consistent with the Fiscal Plan which provides for the Pension Freeze and the elimination of COLAs, and in my view, the Plan would be at risk of not being feasible or capable of being implemented. To avoid creating unsustainable future pension liabilities and to ensure adequate funding of the pensions of future retirees, the current Fiscal Plan provides the Pension Freeze must be implemented by January 1, 2022 and it excludes any future COLAs. Debtors' Exhibit 10 [ECF No. 18785-10] at 274. According to the Plan, the Pension Freeze and elimination of future COLAs (although at present, I understand that JRS is the only pension system currently applying COLAs) will be implemented on the Plan Effective Date, and pursuant to the Fiscal Plan, will produce significant savings over time (growing to over $300 million per year by FY2046), and these savings play a major role in restoring long-term adequate funding of pensions. *See* Debtors' Exhibit 10 [ECF No. 18785-10] at 274-75. Failure to include the Pension Freeze and the

7

elimination of future COLAs in any confirmed plan will result in significant additional, and unpredictable, costs to the Commonwealth. *See* Supplemental Levy Declaration, ¶¶ 11-15. Simply put, the combined costs to the Commonwealth of (i) continued accrued pension benefits under TRS and JRS and (ii) any future COLAs not contemplated by the Fiscal Plan, if included, will require spending inconsistent with the Fiscal Plan, in amounts that will increase during the period that the deficits projected in the Fiscal Plan also increase. For the same reason, eliminating the Pension Freeze and allowing the payment of COLAs would impose significant obligations not provided for in the present Plan, and in my view, would put the Plan at risk of not being feasible.

14. Finally, the Plan modifies the Seventh Amended Plan to provide the Upside Participation Bonus under the AFSCME settlement described in Exhibit G to the Plan will be a minimum of $2,000 for each AFSCME-represented employee during the five-year term of the new AFSCME CBA. The Oversight Board estimates the additional cost of this modification to be approximately $18.3 million per year for five years beginning in FY2022, which cost would only be incremental as compared to the Upside Participation Bonus in the Seventh Amended Plan if the Excess Cash Surplus formula for the payment of the Upside Participation Bonus does not result in a bonus at this amount or higher in any given year. *See* Plan at p. G-16.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 3, 2021
      San Juan, Puerto Rico

Natalie A. Jaresko
Oversight Board, Executive Director