**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF SHEVA R. LEVY IN RESPECT OF CONFIRMATION OF EIGHTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO,** *et al.*

I, Sheva R. Levy, hereby declare and state as follows:

1. I am a Principal of Ernst & Young LLP ("EY") in the People Advisory Services practice. I received my bachelor's degree in mathematics from Cleveland State University in 1998. In January 1999, I joined EY in a staff position and have worked in various roles at EY for almost

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 17-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

23 years. In July 2014 I was promoted to Principal at EY, in which capacity I lead a team of actuarial consultants who focus on issues relating to defined benefit pensions and other post-retirement programs. I am an Enrolled Actuary, an Associate of the Society of Actuaries and a Member of the American Academy of Actuaries, and I meet the American Academy of Actuaries' "General Qualification Standard for Prescribed Statements of Actuarial Opinions" relating to pension plans.

2. I submit this supplemental declaration (the "Supplemental Declaration") in connection with the *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19053] (the "Plan"), and to discuss the impacts of the new legislation, known as Act 53-2021, titled "Law to End the Bankruptcy of Puerto Rico" ("Act 53"), recently enacted by the Commonwealth government, a copy of which is attached as Exhibit B to the *Urgent Motion of the Financial Oversight and Management Board for Puerto Rico for Order (I) Approving Form of Notice of Rulings the Oversight Board Requests at Confirmation Hearing Regarding Act 53-2021 and (II) Scheduling Objection Deadline* [ECF No. 19002]. To the extent any capitalized terms are used but not defined in this Declaration, such terms shall have the meanings assigned to them in the Plan.

3. My statements set forth in this Supplemental Declaration are based on my personal knowledge except where I reference specific documents or communications as the basis of my statements. In those instances where I reference a specific document or communication, I am not offering the documents to prove the truth of the content in those documents, or, I am informed, are otherwise admissible because, for instance, it is a self-authenticating public record or can be otherwise authenticated and shown to be admissible.

4. As pertinent to this Supplemental Declaration, I continue to be familiar with, and have reviewed, (i) the Plan (including as recently modified), (ii) the fiscal plan for the Commonwealth certified by the Oversight Board on April 23, 2021 (the "Fiscal Plan") (Debtors' Exhibit 10) [ECF No. 18785-10], (iii) the Section 211 Report (Debtors' Exhibit 45) [ECF No. 18785-45], and (iv) the other documents I referenced in my initial declaration [Case No. 17-BK-3283, ECF No. 18737] (the "Initial Declaration") filed in respect of the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Case No. 17-BK-3283-LTS, ECF No. 17627] (the "Seventh Amended Plan"). I have also reviewed and am familiar with Act 53 as it relates to the modified terms of the Plan.

5. On October 25, 2021, I submitted my Initial Declaration. The Initial Declaration set forth, among other things, a description of (i) the Commonwealth's three public retirement systems, and (ii) the treatment of pension claims under the Seventh Amended Plan, including the Monthly Benefit Modification and freeze thereunder. My Initial Declaration stated there were on-going discussions concerning matters regarding the treatment of pension Claims in the Seventh Amended Plan. Here, I supplement my Initial Declaration to reflect the result of those discussions.

6. On October 26, 2021, the Governor of Puerto Rico signed into law Act 53, which I understand the Oversight Board has interpreted to, among other things, include an expectation that the Oversight Board would file a modified plan of adjustment eliminating the Monthly Benefit Modification.

7. As a result of the enactment of Act 53, the Oversight Board reviewed and considered the implications of the legislation upon the plan of adjustment, the Commonwealth, and its residents, and determined to modify the Seventh Amended Plan to eliminate the Monthly Benefit Modification.

8. Below I identify the estimated financial impact on the Fiscal Plan of the elimination of the Monthly Benefit Modification. In addition, I identify the estimated financial impact on the Commonwealth if the Plan's freeze of JRS and TRS pension benefit accruals (the "Pension Freeze") and elimination of any future pension benefit cost of living adjustments for JRS, TRS, and ERS participants ("COLAs") are not implemented. These estimates are based on the same sources relied upon in the development of the actuarial analyses reflected in the Fiscal Plan and identified in Exhibit 1 of the Initial Declaration. As noted in the Initial Declaration, the Oversight Board directed that these inputs be used in the development of these actuarial projections based on the understanding that it was the most recently available data at the time that those estimates were prepared.

9. Figure 1, below, demonstrates the estimated annual incremental impact in millions of dollars to the Fiscal Plan as a result of eliminating the Monthly Benefit Modification from the Plan:

Figure 1

| Year | Estimated PayGo impact of Monthly Benefit Modification[2] | Year | Estimated PayGo impact of Monthly Benefit Modification[2] |
|---|---|---|---|
| FY2023 | $90 | FY2038 | $68 |
| FY2024 | $90 | FY2039 | $65 |
| FY2025 | $89 | FY2040 | $63 |
| FY2026 | $89 | FY2041 | $60 |
| FY2027 | $88 | FY2042 | $56 |
| FY2028 | $87 | FY2043 | $53 |
| FY2029 | $86 | FY2044 | $50 |
| FY2030 | $84 | FY2045 | $47 |
| FY2031 | $83 | FY2046 | $43 |
| FY2032 | $81 | FY2047 | $40 |
| FY2033 | $80 | FY2048 | $37 |
| FY2034 | $78 | FY2049 | $33 |

---

[2] Represents costs for those employers covered by the Fiscal Plan, assuming full collection of PayGo Fees from employers not covered by the Fiscal Plan.

4

| Year | Estimated PayGo impact of Monthly Benefit Modification[2] | Year | Estimated PayGo impact of Monthly Benefit Modification[2] |
|---|---|---|---|
| FY2035 | $76 | FY2050 | $30 |
| FY2036 | $73 | FY2051 | $27 |
| FY2037 | $71 | | |

10. Based on the inputs to the Fiscal Plan, and as demonstrated in Figure 1, the elimination of the Monthly Benefit Modification adds an average of approximately $87 million annually to the cost of the Commonwealth's PayGo obligations for the first ten years after the assumed July 1, 2022 Monthly Benefit Modification effective date (the "Modification Effective Date") assumed in the Fiscal Plan, which represents less than 5% of the Commonwealth's estimated PayGo expenses for this period. Moreover, the estimated incremental annual cost decreases throughout the 30 year projection period, and is estimated to cost an average of approximately $69 million annually for the following decade, before falling further to an estimated $40 million average annual impact during the remainder of the Fiscal Plan projection period from fiscal years 2043 through 2051. Based on the estimated savings identified in my Initial Declaration, the aggregate incremental cost to the Fiscal Plan of eliminating the Monthly Benefit Modification is approximately $1.9 billion, with an overall average annual cost increase of approximately $66 million over the 29 years in which the Monthly Benefit Modification was reflected in the Fiscal Plan. Initial Declaration, ¶ 54.

11. Figure 2, below, identifies the estimated annual financial impact on the Fiscal Plan, in millions of dollars, if the Pension Freeze and elimination of COLAs under the Plan are not implemented, based on the Effective Date of January 1, 2022 assumed in the Fiscal Plan. These figures show the net cost/(savings) once adjusting for the employer share of Social Security for the affected employees that could only be enrolled in Social Security once the plans are frozen, as explained in more detail below.

5

Figure 2

| Year | Estimated PayGo impact of Pension Freeze and COLA elimination (A) | Estimated impact of removing Social Security for TRS pre-8/1/14 hires and JRS (B) | Estimated net cost/(savings) due to eliminating freeze (A+B) |
|---|---|---|---|
| FY2022 | $1 | ($18) | ($17) |
| FY2023 | $2 | ($35) | ($33) |
| FY2024 | $6 | ($34) | ($28) |
| FY2025 | $12 | ($34) | ($22) |
| FY2026 | $19 | ($34) | ($15) |
| FY2027 | $29 | ($34) | ($5) |
| FY2028 | $40 | ($34) | $6 |
| FY2029 | $53 | ($34) | $19 |
| FY2030 | $69 | ($34) | $35 |
| FY2031 | $88 | ($35) | $53 |
| FY2032 | $110 | ($35) | $75 |
| FY2033 | $136 | ($35) | $101 |
| FY2034 | $161 | ($35) | $126 |
| FY2035 | $183 | ($34) | $149 |
| FY2036 | $205 | ($34) | $171 |
| FY2037 | $222 | ($33) | $189 |
| FY2038 | $237 | ($33) | $204 |
| FY2039 | $251 | ($32) | $219 |
| FY2040 | $264 | ($31) | $233 |
| FY2041 | $275 | ($31) | $244 |
| FY2042 | $288 | ($30) | $258 |
| FY2043 | $298 | ($28) | $270 |
| FY2044 | $307 | ($27) | $280 |
| FY2045 | $319 | ($25) | $294 |
| FY2046 | $326 | ($22) | $304 |
| FY2047 | $331 | ($20) | $311 |
| FY2048 | $334 | ($18) | $316 |
| FY2049 | $333 | ($15) | $318 |
| FY2050 | $331 | ($13) | $318 |
| FY2051 | $328 | ($11) | $317 |

12. Based on the inputs to the Fiscal Plan, and as demonstrated in Figure 2, the failure to implement the Pension Freeze and the reinstatement of COLAs would add an estimated average of approximately $162 million annually to the cost of the Commonwealth's PayGo obligations from fiscal years 2023 through 2051, starting at an average of approximately $9 million annually

6

from fiscal years 2023 through 2032 and growing to over $300 million per year by fiscal year 2046. Accordingly, unlike the elimination of the Monthly Benefit Modification, this cost would largely be borne during the later years of the Fiscal Plan projection period.

13. Based on the estimated savings identified in my Initial Declaration, the aggregate incremental cost to the Fiscal Plan of eliminating the pension freezes, which includes the Pension Freeze and elimination of the COLAs, is approximately $5.6 billion. Initial Declaration, ¶ 54.

14. The Initial Declaration also includes information from the Fiscal Plan related to the estimated cost of employer contributions to Social Security for teachers and judges hired during the Fiscal Plan projection period, current teachers and judges under 45, and current teachers and judges over age 45 opting in. It is my understanding based on the background provided in the Fiscal Plan (*See* Fiscal Plan at 277 [ECF No. 18785-10]) that if the Pension Freeze is not implemented then teachers and judges still accruing pension benefits (i.e. teachers hired prior to August 1, 2014 and all judges) would not be eligible to contribute towards Social Security. In this case, of the estimated $1.7 billion cost of Social Security in the Fiscal Plan identified in the Initial Declaration, ¶ 54, the elimination of the Pension Freeze would preclude $0.9 billion of Commonwealth contributions to Social Security on behalf of existing teachers and judges from being incurred. As a result, the estimated impact on the Fiscal Plan of the elimination of the Pension Freeze would be a net cost increase of approximately $4.7 billion (i.e. an estimated $5.6 billion of lost savings due to elimination of Pension Freeze, less $0.9 billion of estimated Social Security employer contribution costs not incurred due to elimination of Pension Freeze).

15. By 2047, the incremental cost associated with not implementing the Pension Freeze and maintaining COLAs is estimated to increase the annual PayGo costs in the Fiscal Plan

7

projections by 25%.[3] This incremental cost includes assumptions for salary growth for teachers and judges who participate in TRS and JRS based on the estimates utilized by the Retirement Systems' actuaries, as projected in the Fiscal Plan. Note that the pensions under TRS and JRS are calculated as a percentage of annual compensation, implying that higher salaries for teachers and judges will affect the financial impact of the elimination of the Pension Freeze on the Commonwealth's PayGo costs. For example, when a $2,000 salary increase for teachers that was incremental to the rate of assumed salary growth was reflected in a prior year's fiscal plan PayGo estimates, this resulted in an increase to the estimated savings generated by the Pension Freeze in that fiscal plan model by approximately $240 million over 30 years.

16. Finally, not implementing the Pension Freeze and the reinstatement of COLAs would increase the likelihood of needing to rely on the Pension Reserve Trust for payment of the Commonwealth's PayGo obligations, and increase the risk of completely exhausting the Pension Reserve Trust during the Fiscal Plan projection period.

17. As described above, the failure to implement of the Pension Freeze and the reinstatement of COLAs would be more costly to the Commonwealth than the elimination of the Monthly Benefit Modification and is estimated to have more of an impact in the later years of the Fiscal Plan projection period.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 3, 2021  /s/ *Sheva Levy*
University Heights, Ohio  Sheva Levy

---

[3] This represents the ratio of (a) the estimated net impact of eliminating the Pension Freeze to (b) the estimated PayGo from the Fiscal Plan (adjusted for the estimated impact of the elimination of the Monthly Benefit Modification) plus Fiscal Plan estimated employer Social Security contributions on behalf of teachers and judges.