UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>**The Financial Oversight and Management Board for Puerto Rico**,<br><br>as representative of<br><br>**The Commonwealth of Puerto Rico, et als.**<br>Debtors | PROMESA Title III<br><br>No. 17 BK 3283 (LTS)<br><br>(Jointly Administered) |

**Sur Reply to Debtor's Omnibus Reply (Docket #18874)**

To the Honorable Court:

PFZ Properties, Inc. (PFZ) hereby responds to Debtor's Omnibus Reply (Docket #18874) to its Objection (Docket #18418) to the confirmation of Debtor's "Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico" (the Plan):

**A.**

Part E of Debtors' Omnibus Reply Brief (ORB), at pages 41-56, is intended as a discussion of objections to the Plan by creditors of the Commonwealth, including PFZ, with claims for just compensation under the Takings Clause of the Fifth Amendment. The Plan treats those claims as unsecured money claims that may be impaired and discharged under the Bankruptcy Code. While PFZ's Objection to the Plan already demonstrates how the Takings Clause limits Congressional powers under the Bankruptcy Clause and forbids any impairment, discharge or other modification of just compensation claims against a debtor, several statements in Debtor's Omnibus Reply need to be rectified and some aspects of Takings jurisprudence made clearer to prevent Debtor's matter-of-fact explaining-away of long-established constitutional principles from obscuring the questions raised by PFZ's objection.

**B.**

At the outset, it must be stated that it is not true, as Debtor repeatedly alleges, (see *e.g*., ORB at 43) that claims for additional compensation in "quick take" situations like PFZ's (*i.e.,* compensation over and above the estimate of just compensation the condemner deposits upon the filing of the "quick take" petition) have no security or guarantee of payment under the Takings Clause and Takings jurisprudence. On the contrary, it has been established that even though the Government may take private property for public use prior to paying full compensation to the owner, as generally happens in a "quick take" situation like PFZ's or in inverse condemnation situations, bedrock constitutional precedents dictate that adequate means must be provided for prompt ascertainment and payment of such compensation. As stated by the Supreme Court, "[i]t has long been settled that the taking of property for public use by a State ... need not be accompanied or preceded by payment, but that the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonably prompt ascertainment and payment and there is adequate provision for enforcing the pledge", ***Joslin Mfg. Co. vs. Providence***, 262 US 668,677(1923)[1].

Such pledge is the reason why Congress, in approving the Declaration of Taking Act of 1931, now 40 USC 3114-3115, provided that any "quick take" acquisition "irrevocably commit[s]" the United States to payment of the amount later determined by the courts as just compensation; and the reason why the Puerto Rico, at the time it adopted its own "quick take" statute, also stated that it was "irrevocably binding" itself to the payment of whatever additional compensation the courts should determine was owed to the

---

[1] See also ***Crozier vs. Fried, Krupp Aktiengesellschaft***, 224 US 290,306 (1912). And see ***Williams vs. Parker***, 188 US 491, 502-503 (1903); ***Backus vs. Fort Street Union Depot Co***., 169 US 557, 568 (1998); ***Sweet vs. Rachel***, 159 US 380 (1995); ***Cherokee Nation vs. Southern Kansas Railway***, 135 US 641,659 (1890).

owner as just compensation, and "irrevocably pledged [its] good faith" for the payment of such compensation[2].

Therefore, the payment of Eminent Domain Claims for just compensation in "quick take" situations like PFZ's, and other situations in which payment is not made prior to the acquisition of the property by the Government, are in effect guaranteed or secured by a commitment and pledge to pay made by the condemning State or other authority, in this case the Commonwealth, which are ultimately required and protected by the just compensation guarantee of the Takings Clause of the Fifth Amendment, as interpreted by the Supreme Court. Such Eminent Domain claims cannot then be treated by the Plan as an unsecured obligation subject to impairment or discharge.

Notwithstanding the above, Debtor repeatedly asserts throughout the ORB, that "claims for just compensation based on the taking of property by the Commonwealth are unsecured claims for the payment of money" that may be impaired and discharged (ORB, at 42-43); and are just, always according to the Debtor, "rights to money payment which constitute 'claims' under Bankruptcy Code section 101 (5)" (Id., at 43), dischargeable under section 944(b), which "does not specify any exception for Eminent Domain Claims..."(Id.). These assertions are of course wrong, in view of the just compensation guarantees discussed in the preceding paragraphs; and it would be precisely Debtor's interpretation of the cited (and other) Bankruptcy Code provisions which would render it unconstitutional if so applied to Eminent Domain claims. Eminent Domain claims and its constitutional guarantees were not meant to fit into the

---

[2] Act #2 of April 1,1941 (an amendment to the Puerto Rico Eminent Domain Act of 1903), now 32 LPRA 2907, originally adopted the "quick take" procedure without including the payment guarantees required by the Supreme Court decisions cited in the text. For that reason, it was declared unconstitutional by the Supreme Court of Puerto Rico in **Puerto Rico Rwy. Light & Power vs. Ortiz**, 59 DPR 921 (1942) PR Supp Lexis 323.
    Thereafter, the Eminent Domain Act was further amended by Act 19 of November 19, 1942, now found in 29 LPRA 2910, to create the constitutionally required guarantee of payment and to pledge the good faith of the People Puerto Rico (now the Commonwealth) for the enforcement of such guarantees. The P.R. Supreme Court then declared the statute, as amended, constitutional. See: **María v. Ríos**, 64 P.R.R. 250, 1944 PR Sup. LEXIS 62 (P.R. 1944).

debt adjustment mechanisms of the Code and should be all together excepted from the Debtor's Plan, as requested by PFZ.

### C.

PFZ's objection to the Plan is firmly founded on decisions by the Supreme Court (**Radford, Blanchette and Security Industrial Bank,**) that in effect support the conclusion that just compensation claims under the Takings Clause cannot be impaired, discharged or otherwise affected or modified under Bankruptcy legislation. PFZ also relies con **In re City of Detroit** which applies the rule of those decisions to a situation identical to PFZ's in the present case. The Debtor now either attacks the precedential value or questions the applicability of those decisions to PFZ's claim.

i) Its most audacious attack involves **Radford**, which the Debtor, citing **Wright vs. Vinton Branch of Mountain Trust Bank**, 300 US 440 (1937), wrongly claims (ORB, at 51) was overruled by the Supreme Court. **Wright,** however, does not reconsider or in any way modify the constitutional rule enshrined by the Court in **Radford**; it merely revisits the application of that rule to the Frazier-Lemke Act, in view of substantial legislative modifications to those provisions of the Act that had previously moved the Court to declare it unconstitutional; and declares that, as amended, Frazier-Lemke did not violate the Takings Clause[3], leaving intact the rule itself that Bankruptcy legislation is subject to its provisions. But not content with having wrongly asserted that **Radford** had been overruled in **Wright**, the debtor also wrongly asserts that the Court itself had acknowledged that supposed overruling in **Helvering vs. Griffiths**, 318 US 371 (1943), at note 52. But no such statement of the Court is to be found in **Helvering**. There, at

---

[3] The Court found in **Wright** that of the five provisions of the Act it had found constitutionally unsound in **Radford**, three had been completely eliminated and the two that remained were sufficiently tailored and made subject to the discretion of the courts as to pass constitutional muster. These were not "relatively minor amendments", as the Ninth Circuit, criticizing **Radford**, characterized them in **Cobb,** but a full repeal of the offensive provisions of the Act.

4

pages 400-401, the Court had explained how changes in legislation may require the Court to reexamine its jurisprudence, and at note 52 provided a list of decisions in which such reexamination had actually ocurred. It begins with those several cases in which a previous decision was overruled, which are expressly identified as "overrulings", and continues with other decisions that were reexamined but not overruled. *Radford* is among the latter. It is incorrect, therefore, to say the least, that *Radford* had in those instances been overruled or disavowed by the Court. The best evidence is that it was cited by the Court as authority in much later cases like *Blanchette* and *Security Industrial Bank*.

      ii)      Debtor's ORB also attacks the soundness of *In re Detroit*, a case which is not binding upon this Court, but contains the most persuasive analysis of the Supreme Court decisions cited above, as applied to uncompensated takings like PFZ's. At page 48 of the ORB, however, the Debtor submits that *In re Detroit* "is wrongly decided", mainly because (Debtor alleges) it was based on "two precedents (*Radford* and *Williamson County Pl. Comm'n. vs. Hamilton Bank*, 473 US 172 (1985)) that have been overruled by the Supreme Court" and because the City had taken the property before the petition in bankruptcy was filed, thus reducing its owners, according to Debtor, to "unsecured claims for additional compensation", dischargeable under bankruptcy legislation. As to the allegedly overruled precedents, we have already seen that *Radford* has never been overruled. And although *Williamson County* was indeed overruled by *Knick vs. Township of Scott*, 139 S Ct 2162 (2019), that fact has no effect on the court's decision. The *Detroit* court had relied on *Williamson County* to establish that the City's Plan violated the Fifth Amendment because there had been a taking and a subsequent denial (by the Plan) of just compensation. *Williamson County* stood for the proposition, cited by the *Detroit* court, at 524 B.R. 147, 268 (2014), that "[T]he property owner cannot claim a violation of the Just Compensation clause until it has used the procedure [for seeking just compensation] and been denied...". *Knick* overturned that ruling and made clear, at page 2170, that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." Under either case then,

5

*Williamson County* or *Knick*, the Plan would have operated as a denial of a ripe claim for just compensation and given rise to a constitutional bar under the Takings Clause. As to Debtor's second argument, that the owners-claimants only had "unsecured claims for additional compensation", dischargeable under bankruptcy legislation, because the City had taken the property before the petition in bankruptcy was filed, PFZ calls the Court's attention to pages 10-11 of its Objection (Docket #18418), where the question of all just compensation claims being money claims is discussed. Besides, no rule has ever been established that the Takings Clause, with its "self-executing character", see *Knick*, at 2171, protects Eminent Domain Claims only when the Plan itself effectuates the taking.

iii) With respect to *Blanchette* and *Security Industrial Bank* the Debtor simply misstates the holdings of the Court, as can be ascertained by a cursory reading of these precedents. In both cases, the Court reaffirms the teachings of *Radford*.

**D.**

At pages 46-48 of the ORB, Debtor invokes *In re City of Stockton* and *Poinsett Lumber Mfg. vs. Drainage Dist. No. 7*, (both cited in the ORB) in support of the assertion that "claims for just compensation arising from the taking of property can be impaired and discharged in bankruptcy the same as any other unsecured claim". The first case was amply discussed in PFZ's Objection to the Plan (pages 9-13 – Docket #18418) as *Cobb vs. City of Stockton*, and PFZ stands by what was said there. *Poinsett,* on the other hand, is completely inapplicable here, because the alleged condemnor, a drainage district in Arizona, was not a governmental entity to which the Takings Clause applies. In *Poinsett*, at pages 272-273 of the 8th Circuit's decision, the appellant's claim for just compensation under the Constitution was decided by the Court by reference to a previous case against the same defendant, *Luehrmann vs. Drainage District No. 7*, 104 F2d 696, 698 (1939), in which the Court had ruled that the defendant in both cases was not a governmental agency. Following decisions of the Supreme Court of Arizona the Court held that "drainage districts are

quasi-public corporations which are not political or civil subdivisions of the state like counties and municipal corporations created to aid in the general administration of the government." The alleged condemnor not being an entity of government, and therefore not subject to the constraints of the Constitution, the **Poinsett** decision may in no manner be made applicable to the issues here, notwithstanding Debtor's insistence to the contrary.

### E.

Finally, Debtor's attempt to equate a "Takings" claim to a typical section 1983 (42 USCS § 1983) cause of action is misguided. The difference between a "Civil Rights" section 1983 cause of action and a "Takings" action is as stark as night and day. In "Takings" actions, both, the right and the remedy, were carved into the Constitution. The obligation to pay "just compensation" is not optional, it is a mandate of the Fifth Amendment and no act of Congress or of any State can curtail that right or modify the remedy. "When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." See: ***Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency***, 535 U. S. 302, 321(2002), cited in ***Cedar Point Nursery v. Hassid***, 141 S. Ct. 2063, 2071 (2021).

In contrast, a section 1983 action is but a child of congressional legislation and as such is open to legislative modifications. For example, see: ***City of Monterey v. Del Monte Dunes at Monterey, Ltd.***, 526 U.S. 687, 709 (1999) (holding that section 1983 creates a species of tort liability). See also, ***Owen v. City of Independence, Missouri,*** 445 U.S. 622, 651 (1980). Also, statute itself does not create any substantive rights. ***City of Monterey***, at 749 n.9 (quoting ***Baker v. McCollan***, 443 U.S. 137, 144 n.3 (1979). See also, ***Monell v. Dep't of Social Servs. of the City of New York.,*** 436 U.S. 658, 701 (1978).

In sum, while the damages remedy in section 1983 exists by legislative grace and not constitutional requirement, the remedy mandated for the taking of private property exist by specific constitutional decree. A Fifth amendment takings claimant has no need to resort to section 1983 to bring a claim. The "Takings"

clause is of "self-executing character" "with respect to compensation" See: ***Knick v. Twp. of Scott,*** 139 S. Ct. 2162, 2171, citing ***First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,*** 482 U. S. 304, 321(1987). More clearly stated, "…The Court's physical takings jurisprudence is "as old as the Republic." ***Cedar Point,*** at 2071 (citing ***Tahoe-Sierra***, at 322).

WHEREFORE, PFZ Properties Inc. requests from the Honorable Court to take notice of the above provided information and to sustain its objection to the confirmation of the Plan.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 5th day of November 2021.

### CERTIFICATE OF SERVICE

I hereby certify that on this same day, I electronically filed the foregoing motion with the Clerk of the Court using the EM/ECF system, which will send a notification to all attorneys of record.

/s/ DAVID CARRION BARALT
USDC PR 207214
Attorney for PFZ Properties
P.O. Box 364463
San Juan, P.R. 00936-4463
Tel. (787) 758-5050
E-mail: davidcarrionb@aol.com

/s/ RUSSELL A. DEL TORO
USDC PR 121302
Attorney for PFZ Properties
Cond. Condado Princess
#2 Calle Washington 304
San Juan, Puerto Rico 00907
Telephone (787) 529-6502
E-mail: rdeltoro@dtslaw.com
russell.deltoro.sosa@gmail.com

/s/ JOSE ÁNGEL REY
USDC PR 118103
Attorneys for PFZ Properties
P.O. Box 10127
San Juan, P.R. 00908-1127
Tel. (787) 396-2600
E-mail: joseangelrey46@gmail.com