# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| NORBERTO TOMASSINI ET AL.,<br><br>Movants,<br><br>-against-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*,<br><br>Respondents. | Re: ECF No. 17134, 18282 |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

**DEBTORS' OBJECTION TO URGENT SUPPLEMENTAL
MOTION REQUESTING ORDER ALLOWING
ADMINISTRATIVE EXPENSE PRIORITY CLAIM AND IMMEDIATE PAYMENT
FILED BY CORRECTION OFFICERS OF THE DEPARTMENT OF CORRECTIONS
AND REHABILITATION OF THE COMMONWEALTH OF PUERTO RICO**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtors") by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as its Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Urgent Supplemental Motion Requesting Order for Allowance of Administrative Expense Priority Claim and Request for Immediate Payment Filed by Correction Officers of the Department of Corrections and Rehabilitation of the Commonwealth of Puerto Rico* [ECF No. 18282] (the "Motion"), filed by plaintiffs in the consolidated litigations captioned *Norberto Tomassini, et als. v. Commonwealth of Puerto Rico, et al.*, Case No. A MI2003-0143 and *Ivan Ayala et als. v. Commonwealth of Puerto Rico, et al.*, Case No. A PE2005-0049 (collectively, the "Movants"). In support of the Objection, the Debtors respectfully represent:

**PRELIMINARY STATEMENT**

1. Movants assert they are entitled to administrative expense priority for back pay accrued entirely prior to commencement of the Title III cases. Movants' asserted claims arise from a 2016 Commonwealth court judgment (the "CFI April 2016 Judgment"). Mot. at 5. Specifically, pursuant to the CFI April 2016 Judgment, the Commonwealth is liable for (1) correction of Movants' monthly salary to compensate for the difference between the 40-hour workweek earned

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

1

and the 37.5-hour workweek paid, and (2) overtime for the work performed during the 30 minutes allotted for mealtime periods. *Id.* at 2-3. The amounts requested are composed of calculated shortfalls, plus interest, for the periods (1) determined in the judgment until December 31, 2011 and (2) accrued during the subsequent 64 months and 2 days until May 3, 2017. *See id.*, Exs. 4-5. Based on Movants' assertions, no part of Movants' claim is attributable to the post-petition period.

2. Movants are not entitled to administrative expense priority because their claims arose entirely prepetition. The Court already denied a substantially similar request for priority status by sustaining the Oversight Board's objection contending certain wage creditors' proofs of administrative claims should be reclassified as general unsecured claims. *See* Aug. 4 Hr'g. Tr. at 113:18-24. In particular, the Court noted Bankruptcy Code section 503(b)(1)(A) permits priority only for "claims arising from events that occur after the commencement of a bankruptcy case, and all of these claimants are asserting claims that long predate the debtors' Title III petitions." *Id.*. Following that ruling, those claimants requested the Court's reconsideration [ECF No. 17892] (the "<u>Reconsideration Motion</u>"), which request is pending.

3. Here, Movants duplicate the arguments in the Reconsideration Motion and separately attempt to challenge the Court's ruling on this issue. The reasons for denying the Motion are the same as the Oversight Board articulated in its opposition to the Reconsideration Motion. [ECF No. 18013].[3] In sum, (1) the plain text of Bankruptcy Code section 503(b)(1)(A)(ii) limits administrative priority under the section to claims "attributable to any period of time

---

[3] Movants also suggest the payment can be made now because of sufficient funds in Commonwealth's reported bank deposits. Mot. at 11. Movants have proffered no reason for immediate payment, and, in any event, immediate payment cannot be compelled without the Oversight Board's consent pursuant to PROMESA section 305.

occurring after commencement of the case", and (2) *Reading Co. v. Brown*, 391 U.S. 471 (1968) is inapplicable to Movant's prepetition transactions.

4. The Motion also seeks to "supplement" Movants' separate motion seeking administrative expense treatment for wages allegedly accrued but unpaid after the filing of the Commonwealth's Title III petition [ECF No. 17134] by requesting consolidation of the two motions, but offers no support for this request. Mot. at 3.

5. Accordingly, for the reasons set forth herein, the Motion should be denied.

## ARGUMENT

### I. Movants' Claims are Not Entitled to Administrative Expense Status

6. Movants assert several theories why, notwithstanding the prepetition nature of their asserted claim, it is nonetheless entitled to administrative expense priority. Each of these theories fails.

#### A. Neither the Statutory Text nor Case Law Supports Movants' Request for Administrative Expense Priority

7. Movants first assert Bankruptcy Code section 503(b)(1)(A)(ii) provides the legal basis for an administrative expense priority for Movants' claims as wage claims, and that the "plain language of the statute" is "clear" that prepetition claims may be treated as administrative expense claims. Mot. at 8, 10-11. Section 503(b)(1)(A)(ii) plainly states the opposite: only "wages and benefits awarded . . . as back pay *attributable to any period of time occurring after commencement of the case* . . . without regard to the time of the occurrence of unlawful conduct . . . ." are eligible for treatment as an administrative expense. 11 U.S.C. § 503(b)(1)(A)(ii) (emphasis added). Movants admit the back pay asserted was attributable entirely to the prepetition period. Mot. at 7 ("By the present Motion, the CO's pursue the allowance and payment of the full back pay of amounts accumulated until the Title III petition date . . . ."). The remaining context

3

of section 503(b) is of no avail; Movants identify no portion of section 503(b) that permits administrative expense status for prepetition periods.

8. The additional authority Movants cite—*In re Truland Group., Inc.*, 520 B.R. 197 (Bankr. E.D. Va. 2014) and *In re Philadelphia Newspapers, LLC,* 433 B.R. 164 (Bankr. E.D. Pa. 2010)—is inapplicable. In each instance, the claims arose from either the WARN Act or a severance allegation, and the liabilities asserted were determined to be "attributable to" the postpetition period, even if the violation occurred prepetition. In *Philadelphia Newspapers*, for example, the court interpreted the phrase "attributable to any period of time occurring after commencement of the case under this title" to require the claim accrue post-petition to be compensable as an administrative expense. 433 B.R. at 174-77. The claimant in *Philadelphia Newspapers* was a discharged employee whose claim was partially based on his post-petition payments of healthcare premiums. The court held that, "if back pay is awarded for any period of time 'attributable to any time occurring after commencement of a case' *and* the back pay meets the other requirements listed in subsection (ii), then this Court holds that back pay constitutes an allowed, administrative expense[.]" *Id.* at 175.

9. Other courts have likewise interpreted the phrase "attributable to" to refer to wages and benefits that accrue post-petition. *See, e.g.*, *In re Calumet Photographic, Inc.*, No. 14-08893, 2016 WL 3035468, at *3 (Bankr. N.D. Ill. May 19, 2016) ("Basically, the plain meaning of [section 503(b)(1)(A)(ii)] requires a court to determine if a claim relates to a post-petition time period despite the fact that the violation timing is of no regard."); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 505 B.R. 163, 167 (Bankr. D.N.J. 2014) (granting administrative expense priority to portion of claims regarding lost wages for several post-petition days and were thus "attributable

4

to" post-petition period).[4] Nor does the phrase "without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered" alter the result: rather, that phrase brings within the statute wages owed for services rendered *post*-petition, when the illegal conduct giving rise to such wages owed occurred *pre*-petition. *In re Trump Ent. Resorts, Inc.*, No. 14-12103, 2015 WL 1084294, at *4 (Bankr. D. Del. Mar. 9, 2015) ("Regardless of when the illegal conduct occurred, in order to qualify for administrative expense priority under section 503(b)(1)(A)(ii) the damages flowing therefrom must be attributable to sometime after the Petition Date[.]").

10. As the Court recently recognized,[5] the critical fact is the timing of the consideration supplied by the creditor. Here, Movants assert liabilities associated with unpaid wages for work actually performed prior to the filing of the Commonwealth's Title III case—even years prior.

---

[4] At least one court has adopted an even stricter approach, concluding that only employee claims that *vest* after the petition date are entitled to administrative expense treatment. Thus, in *Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, a group of discharged employees asserted claims against the debtor in respect of wages and benefits owed pursuant to a federal law and sought administrative expense priority for any damages awarded in the suit. 394 B.R. 765 (Bankr. D. Del. 2008). The court noted that section 503(b)(1)(A)(ii) "describes two different times: the period to which back pay is *attributable* and the time of the *occurrence* of the unlawful conduct and/or when the services were rendered." *Id.* at 774. The court then held that "the only relevant consideration is the former time, the time to which the back pay is attributable which is when the rights of claims *vest or accrue*, and how that time relates to the petition date." *Id.* at 774-75. "If a claim vests pre-petition, then the back pay is attributable to the time occurring prior to the commencement of the case and therefore it is not an administrative expense claim." *Id.* at 775. Applying these principles to the claim, the court concluded that because the employees were terminated pre-petition, and their rights vested under the federal statute pre-petition, any damages from their suit would be "back pay attributable to" the pre-petition period and thus not eligible for administrative expense priority. *Id.* at 776.

[5] *See Opinion and Order Denying the DRA Parties' Motion for Allowance of an Administrative Expense Claim* [ECF No. 18892] (the "DRA Opinion") at 17-18 (discussing the "clear lesson" of seminal cases analyzing administrative expense priority).

5

Unlike severance and WARN Act liability, which is a prospective right to payment for having been laid off or terminated without sufficient notice, the liability asserted here is underpayment for work actually performed prepetition. The claims' prepetition nature precludes administrative expense priority. *Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.)*, 330 F.3d 36, 48 (1st Cir. 2003) ("The consideration supporting the Retention Agreement—to forgo other employment opportunities—was supplied the moment she signed the agreement. Only the right to payment arose after the petition date."); *In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d 111, 126 (1st Cir. 2002) ("We therefore hold that the Division's claims are entitled to administrative expense priority so far as, but no further than, the claims are for reimbursement for unemployment compensation paid on the basis of work done by employees after the filing of the Center's petition."); *In re Old Carco LLC*, 424 B.R. 650, 657 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 09-50002 AJG, 2010 WL 4455648 (S.D.N.Y. Nov. 2, 2010) ("where . . . the consideration supporting the claim is supplied pre-petition, court[s] have determined that those claims are not entitled to administrative priority, even if the right to payment arises post-petition").

11. This Court's interpretation of section 503(b)(1)(A)(ii) as extending only to "events that occur after the commencement of the bankruptcy case," Aug. 4 Hr'g. Tr. at 113:19-24, is therefore entirely consistent with the plain language of the statute and the authority interpreting the phrase "attributable to." Neither the statutory language, the asserted facts, nor the case law Movants cite provides any basis for Movants' contrary reading.

### B. *Reading* is Inapplicable to Movants' Prepetition Transactions

12. Next, Movants contend the Supreme Court's *Reading* decision and the Bankruptcy Code's policies provide a basis, as a matter of fundamental fairness, to establish administrative expense treatment for their claims. Mot. at 14-15.

6

13. *Reading* is entirely inapplicable to Movants' pre-petition claims. In *Reading*, the Supreme Court granted administrative expense priority to a claim for tort damages resulting from the post-petition negligence of a receiver in a Chapter 11 case. 391 U.S. at 483-85. The essence of *Reading* is that when a debtor or its trustee or receiver commits an act that does not preserve or benefit the debtor and its property, the act can nevertheless provide an injured party an administrative claim. Otherwise, it would be unsafe to deal with a debtor or its trustee. Movants contend *Reading* extends to pre-petition activities, citing *In re MEI Diversified Inc.*, 106 F.3d 829, 832 (8th Cir. 1997). Movants' reliance on *MEI*, however, is inexplicable. That case not only nowhere discusses *Reading* or fundamental fairness, but also explicitly affirms the opposite of what Movants suggest. *MEI*, 106 F.3d at 832 ("Of course, administrative priority is limited to transactions with the debtor in possession."). In fact, there is an absence of authority to support Movants' contention, as this Court recently recognized, "presumably because section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a)—one of the fundamental debtor protections provided by the bankruptcy laws—'automatically stays a broad variety of creditor actions against the debtor or the debtor's property upon the debtor's filing of a bankruptcy petition.'" DRA Opinion at 22 (quoting *Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 931 F.3d 111, 112 (1st Cir. 2019)).

14. More importantly—and indeed, dispositively—the First Circuit has already held *Reading* "is not applicable to prepetition claims[.]" *In re Fin. & Oversight Mgmt. Bd. for P.R.*, 481 F. Supp. 3d 60, 65-66 (D.P.R. 2020). In fact, "[t]he First Circuit has restricted the application of the 'fundamental fairness' exception to claims alleging *postpetition* harms that arise from *postpetition* events." *Id.* at 66 (citing *In re Hemingway Transp., Inc.*, 954 F.2d 1, 6-7 (1st Cir. 1992)) (emphasis added). As explained previously, Movants' claims are pre-petition in nature.

7

*Reading* is therefore inapposite as a matter of First Circuit law. To extend *Reading* to prepetition claims would be inconsistent with the structure of the Bankruptcy Code and with First Circuit case law. *See In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d at 126 ("If the [creditor] is arguing that today's result is so unfair or so inexpedient as to require us to develop a new rule that would look past the distinction, basic to bankruptcy, between the debtor's prepetition expenses and the bankruptcy estate's postpetition expenses—a distinction preserved by *Reading Co.* and our subsequent cases—we disagree."); *FBI Distribution*, 330 F.3d at 41-42; *see also Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 817 (6th Cir. 1997) ("[E]ven in *Reading* and cases following it, the debt at issue arose post-petition. . . . *Reading* does not eliminate the requirement that a debt arise post-petition in order to be accorded administrative expense priority.").

15. With respect to the policies underlying Bankruptcy Code section 503, the traditional rule—that post-petition claims should only be entitled to administrative expense priority in exchange for a "benefit" provided to the postpetition debtor—is intended to incentivize parties to deal with bankrupt debtors. *In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d at 124 ("The justification for this rule is that the administrative priority is necessary to induce potential contractors to do business with the debtor-in-possession").[6] *Reading* and its progeny are an exception to the traditional "benefit" requirement. *In re Healthco Int'l, Inc.*, 272 B.R. 510, 513 (B.A.P. 1st Cir.

---

[6] Movants' enumeration of certain policies underlying Bankruptcy Code section 503 affirms that it is the actions of the postpetition, rather than prepetition, entity that are eligible for administrative expense priority. *See* Mot. at 14 (citing Nancy C. Dreher, Joan N. Feeny and Michael J. Stepan, Bankruptcy Law Manual, Volume 1, § 6.32 (5th ed. 2018-2)) (listing policies "to encourage activities that will benefit the ***estate***; to advance reorganization efforts which would be hampered by the necessity of advance payments for supplies of the ***estate***; to compensate those injured by the ***estate***; and to prevent unjust enrichment of the ***estate*** at the expense of its creditors.") (emphasis added).

8

2002), *aff'd and remanded*, 310 F.3d 9 (1st Cir. 2002) ("In a nutshell, the 'fundamental fairness' exception is recognized when the debtor's postpetition operations occasion tortious injuries to third parties (*Reading*), or when the claim arises from postpetition actions that deliberately violate applicable law and damage others (*Charlesbank*)."). They are <u>not</u>, however, an exception to the requirement there be a postpetition claim, which, for the reasons described above, is entirely absent here.

II. **Movants Proffer No Reason to Consolidate their Pre- and Postpetition Motions**

16. Movants also summarily request the Court "consolidate" the Motion with the *Motion Requesting Order for Allowance of Administrative Expense Priority Claim and Request for Immediate Payment Filed by Forty-Four Correction Officers of the Department of Corrections and Rehabilitation of the Commonwealth of Puerto Rico* [ECF No. 17134] (the "<u>Motion for Post-Petition Wages</u>"). Movants provide no basis for this request. And, indeed, consolidating the Motion with the Motion for Post-Petition Wages would serve no purpose, because the two motions are premised on different legal theories. The Motion for Post-Petition Wages seeks payment of allegedly unpaid back pay accrued *post-petition*. However, the Motion seeks payment of back pay that accrued *pre-petition*, on the theory that 11 U.S.C. § 503(b)(1)(A)(ii) somehow renders an award of such back pay an administrative expense. But, as explained above, there is no legal basis for payment of pre-petition back pay as an administrative expense.

*[Remainder of Page Intentionally Left Blank]*

9

WHEREFORE the Commonwealth respectfully requests the Court deny the Motion and grant such other and further relief as is just.

Dated: November 5, 2021
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Laura Stafford (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
205 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-1813
Fax: (787) 753-8944

*Co-Attorney for the Financial Oversight and Management Board as representative for the Debtors*

10