UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

              Debtors.

---------------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

**[Related to Docket #18874, #18869, #17627, #19009]**

**SUR-REPLY TO FOMB 10/27/2021 AND 10/28/2021 SUPPORTING AND REPLY BRIEFS (FILED BY INDIVIDUAL BONDHOLDER PETER C. HEIN)**

Dated: November 5, 2021

Peter C. Hein, pro se, submits this sur-reply to the over 300 pages of briefing submitted by FOMB on 10/27 and 10/28 (#18869, #18874). In light of time and space constraints, I respond to only selected points. I do not concede other arguments by FOMB. I do not repeat material covered in other papers (e.g., my response, #18181, to FOMB's in limine motion).

**1. FOMB cannot prove that "the debtor is not prohibited by law from taking any action necessary to carry out the plan" (§314(b)(3)).** New GO Bonds and CVI Legislation is a pre-condition to the confirmation and effectiveness of the Plan (*see* Plan §§1.171, 1.360, 85.1(b)(viii), 86.1(b)(v), #19053-page-47,72,176,177-of-295, and provisions of the GO/PBA PSA that provide for CVI and New Bonds Legislation "to be enacted on or prior to the Effective Date", #17628-2-page-8,10,14-of-135). However, the enacted legislation is contrary to Puerto Rico's Constitution. Art. VI, §8 requires GO and Commonwealth guaranteed debt to be paid "first," and §2 (last sentence) provides for the enforcement of that Constitutional pledge. But the New GO Bonds and CVI Legislation provides for the "cancellation and extinguishment" of existing bonds as among the actions "to carry out the Plan and/or a Restructuring Transaction" (defined to include "cancellation and extinguishment" of existing bonds). #19062-page-733-Art.-102(pp), page-734-Art.-103-¶1,sent.-1-and ¶2. Art. 103, ¶1 also purports to override any other provisions of Puerto Rico law. Id.

FOMB admits "[t]here are very few opinions that analyze the parameters of Bankruptcy Code §943(b)(4)," a Title 11 provision with the same phrasing as §314(b)(3). #18869-117-of-177. The only §943(b)(4) cases FOMB cites are a 30-year old Sanitary & Improvement District case from the Bankruptcy Court in Nebraska, and the City of Detroit opinion that relies on that Nebraska case. #18874-3-page-14-of-29. The Sanitary & Improvement District case denied confirmation and ruled that since "[s]tate law requires that bondholders get paid even if warrantholders do not," "[n]o plan can be confirmed that provides for the holders of bonds issued under the plan to receive less than their full payment while warrantholders receive some payments." 98 B.R. 970, at 975. It is unclear how this case helps FOMB here.

-1-

FOMB argues that §314(b)(3) does not prevent the Court from confirming a Plan that reverses priorities under Puerto Rico's Constitution and statutes, on the theory that PROMESA preempts Commonwealth's Constitutional and statutory requirements to pay its GO and PBA debt, and that §314(b)(3) only applies to Commonwealth law prohibitions relating to post-Effective Date actions. #18869-page-118-to-119-of-177. But PROMESA itself, in §314(b)(3), precludes confirmation if debtor is prohibited "by law" from taking actions necessary to carry it out. So if such a prohibition in "law" exists, under the terms of PROMESA itself, the plan cannot be confirmed. And, as noted, the New Bonds/CVI Legislation expressly speaks in terms of actions "to carry out the Plan and/or a Restructuring Transaction," so here what "law" (Puerto Rico's Constitution) prohibits are actions that – in the words of the legislation itself – are "to carry out" the plan. FOMB would read §314(b)(3) as if was limited to "federal law," rather than simply "law" (which is the term §314(b)(3) uses).

A better reading of §314(b)(3) – in harmony with the requirement in PROMESA §201(b)(1)(N) that FOMB, in crafting a fiscal plan, "respect the relative lawful priorities or lawful liens" in Commonwealth's Constitution and other laws – would be that a plan, to be confirmed, would need to provide for payment of "first claim" priority debt out of Commonwealth's available resources before other creditors are paid. If GO and Commonwealth guaranteed debt is first paid (which it can be), full pension benefits can then also be paid. But a plan, such as proposed here, that is premised on new legislation providing for the "cancellation and extinguishment" of existing bonds, and that reverses payment priorities under Puerto Rico's Constitution and other laws by making no cuts in pension benefits, and even paying tax incentive claimants in full (about $2 billion in claims) – yet not paying in full the debt that has priority under Puerto Rico's Constitution – is not permissible under §314(b)(3).

Such a better reading of 314(b)(3) is also in harmony with PROMESA §303(1) which provides "a territory law prescribing a method of composition of indebtedness or a moratorium law … may not bind any creditor … that does not consent." FOMB argues that "[t]he contemplated legislation" "does not cancel and extinguish GO and PBA debt." #18874-3-page-

17-of-29. Perhaps FOMB prepared this discussion in its brief before Act 53-2021 was enacted. Whatever FOMB may have previously contemplated, the legislation actually enacted, as noted, provides for the "cancellation and extinguishment" of existing bonds.

Furthermore, even if one hypothesizes that FOMB is right – and §314(b)(3) does not preclude "cancellation and extinguishment" of existing bonds and reversing payment priorities under Puerto Rico's Constitution and other laws – a Plan that violates the U.S. Constitution manifestly does not comply with §314(b)(3). The Supreme Court has been clear that bankruptcy legislation cannot affect rights protected by the Takings Clause. *United States* v. *Security Industrial Bank*, 459 U.S. 70, 75 (1982).

**2. The Takings clause prohibits Commonwealth and FOMB from taking bondholders' property without just compensation.** FOMB argues there is no property interest here, so there can be no taking. Oddly, FOMB ignores that *United States Trust*, which involved a municipal bond covenant that protected bondholders, stated "contract rights" "are a form of property" for purposes of the Takings Clause, and cited *Lynch* with approval. #18575-page-28-to-29-of-303. Instead FOMB cites *Connelly* v. *PBGC*, a case dealing with federal legislation concerning Multi-Employer Pension Plan Act requirements on withdrawing employers, which (based on a word search of the opinion) does not discuss *Lynch*. #18874-page-46-of-94.

Buttressing *United States Trust* are a host of recent Supreme Court opinions, including *Horne* v. *Department of Agriculture*, 135 S.Ct. 2419, 2425-31 (2015) (an "appropriation" of personal property or intangibles, or a partial interest therein, gives "rise to a per se taking"); *Koontz* v. *St. Johns River Water Mgt. Dist.*, 570 U.S. 595, 614-616 (2013)("bank account" or "money"); *Phillips* v. *Washington Legal*, 524 U.S. 156, 169-72 (1998)("interest income"); *Tulsa Professional* v. *Pope*, 485 U.S. 478, 485 (1988)(unsecured claim arising from unpaid bill).

FOMB also argues this case should be analyzed as a regulatory taking under *Penn Central*, citing this Court's 2019 ruling in the COFINA case. #18874-page-47-of-94. FOMB asserts the Supreme Court's recent rulings – including earlier this year in *Cedar Point* (#18575-page-29-to-30-of-303) – are inapplicable because they do not fall within two categories of cases

described in the 2005 decision in *Lingle*. #18874-page-47n.15-of-94. A clue to how very wrong FOMB's analysis is comes when one does a word search for "*Lingle*" in the *Cedar Point* opinion. Yes, up pops a cite to *Lingle*. But that reference to *Lingle* is in Judge Breyer's dissent. The 6 to 3 majority opinion held that a government requirement that union organizers be permitted to enter an employer's property for up to one hour before work, one hour during lunch and one hour after work to talk with employees, "constitutes a per se physical taking." 141 S.Ct. at 2069, 2073. If a right of access to property to talk to employees is a per se physical taking, *a fortiorari* "cancellation and extinguishment" of GO and Commonwealth guaranteed bonds (#19062-page-733-to-734-of-756) – while keeping the money Commonwealth received from sale of the bonds – is a per se taking. And *Security Industrial Bank* makes clear that bankruptcy legislation does not immunize that unconstitutional taking.

FOMB says I will receive new securities and cash in amounts "commensurate to the current value" of my bonds. #18874-page-48-of-94. Of course, the "current" value of my bonds is impacted by the legislation that provides for the "cancellation and extinguishment" of my bonds, the pendency of FOMB's plan to take my property, and FOMB's refusal to pay any interest (or principal) for over 5 years on the priority "first claim" debt under Puerto Rico's Constitution. A "current" value that reflects the impact of past or planned takings is not the "full" compensation to which I am entitled under Supreme Court decisions. FOMB cites no law to support the extraordinary proposition that one looks to the value as impacted by the taking to decide whether there is "full compensation." And "full" is the term the Supreme Court used in *Knick* and *Monongahela*. #18575-page-30-of-303. FOMB argues these Supreme Court decisions arose in a different context (#18874-page-49n.16-of-94). But *Norwood*, the case FOMB relies upon, involved a convicted drug offender's application for restitution for value of personal property taken upon arrest – hardly closer on its facts. Norwood also did not suggest that "just compensation" should be measured by the value as impact by the taking, and is not a Supreme Court opinion.

-4-

FOMB asserts that "[t]he allocation of distributions was determined via a long mediation and settlement process among sophisticated parties" and that "creditors have ratified the result." #18874-page-48-to-49-of-94. But FOMB offers no response to my citation of F.R.Evid. 408, *Contra Costa* and *Slattery* for the proposition that what settling bondholders agreed to cannot be considered for any purpose. #18575-page-31-to-32-of-303. The inappropriateness of FOMB's position that other self-interested parties, acting for themselves, or even a "vote" of a retail class, can decide the amount of "just compensation" non-consenting bondholders are entitled to is underscored when one factors in the pay-for-vote coercive solicitation that occurred here and the lack of a committee to represent individual bondholders. #18575-page-33-to-38-of-303.

FOMB argues that Constitutional claims can be discharged pursuant to the Plan, on the theory that an eminent domain claim is just an unsecured claim for the payment of money. #18874-page-54-to-57-of-94. But as to GO and PBA bondholders, the issue is whether FOMB can prove that debtor is not prohibited by law from taking action necessary to carry out the plan (§314(b)(3)), which it cannot because the plan requires actions by Commonwealth to carry out the plan that would result in a taking without just compensation "at the time of the taking." *Knick* v. *Township of Scott*, 139 S.Ct. 2162, 2170 (2019). Thus the Plan may not be confirmed.

**3. Confirmation is not the proper procedure by which to abrogate bondholder rights.** It is no answer that FOMB or others have raised issues about the validity, priority or extent of the secured interest I hold on account of my GO and PBA bonds. Under Due Process and Bankruptcy Rule 7001(2), an adversary proceeding is required against each bondholder to determine the validity, priority, or extent of a lien or other interest in property. #18575-page-32-to-33-of-303. FOMB's passing response (#18874-3-page-6-of-29) does not address *Mansaray-Ruffin* or *Commercial Western*, and simply argues non-consenting bondholders are bound by the vote of their class. True, had a class in which I was a member rejected the plan, that would have triggered the additional requirements of 11 U.S.C. §1129(a)(8),(b)(1). But a class vote does not eliminate the need for FOMB to prove that the requirements of §314(b) are met. There has never

-5-

been an adjudication in an adversary proceeding that my bonds are invalid or that they lack the priority and secured status that I have claimed.

**4. FOMB cannot prove that the plan is "in the best interests of creditors" taking into account "whether available remedies under the non-bankruptcy laws and constitution" of Puerto Rico "would result in a greater recovery for the creditors than is provided" by the plan.** PROMESA §314(b)(6) has language that 11 U.S.C. §943(b)(7) does not. §943(b)(7) requires only that the plan be "in the best interests of creditors" and feasible. PROMESA adds the requirement that the court is "require[d]" "to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan." The language added to §314(b)(6) on its face focuses the inquiry not simply on the remedies available to all creditors, viewing creditors as a whole, but also on the remedies available to particular creditors, since all creditors may not have the same "available remedies under the non-bankruptcy laws and constitution" of a territory. If the recovery to all creditors would be greater considering available remedies under the non-bankruptcy laws and constitution of the territory, debtor here fails the "best interests of creditors" test in §314(b)(6) without further inquiry. But that does not mean that debtor passes the §314(b)(6) test where, as here, a particular group of creditors (GO and Commonwealth guaranteed bondholders) have available remedies under the non-bankruptcy laws and constitution of Puerto Rico that entitle them to a greater recovery than the plan provides.

In assessing whether FOMB has established the §314(b)(6) requirement for confirmation, one must *also* consider the fact that GO and Commonwealth guaranteed bonds have priority of payment under Puerto Rico's Constitution and statutes. FOMB argues that this does not matter, because (supposedly) "outside of Title III, all creditors of the Commonwealth recover less on their claims in the aggregate than they would pursuant to the Plan." #18874-3-page-6-of-29. But FOMB's position makes no sense. As priority "first claim" creditors under Puerto Rico's Constitution and statutes, GO and Commonwealth guaranteed bondholders have remedies that other (non-priority) creditors do not. Their priority "first claim" status under Commonwealth's

laws and Constitution would allow them to recover before other creditors. The fact there are billions of dollars being paid out under the plan to non-priority pension (100% recovery), tax incentive (100% recovery) and general unsecured creditors – plus tens of millions, and potentially billions, of dollars to public employees in signing bonuses and "upside performance bonuses" (even if they do not have monetary claims for such amounts) – demonstrates that under Commonwealth's laws and Constitution according priority to GO and Commonwealth guaranteed bondholders would provide a greater recovery to them.

On FOMB's theory, the plan could provide $0 to GO and Commonwealth guaranteed bondholders, but 100% recoveries to pension, tax incentive and general unsecured creditors – plus tens of millions and potentially billions of dollars to public employees for a variety of "bonuses" – yet the §314(b)(6) best interest test could still be met. That makes no sense whatsoever, and fails to give effect to Congress' addition of the language to §314(b)(6) – referencing "available remedies under the non-bankruptcy laws and constitution of the territory" that "would result in a greater recovery" – that does not appear in §943(b)(7).

FOMB argues it has made a "best interests" showing "in the aggregate" (#18869-page-135-of-177). And FOMB's legal analysis is based on case law under §943(b)(7) which does not address or reflect the different language of §314(b)(6). If Congress meant to have the same §943(b)(7) best interests test apply under PROMESA it would not have added the language it did to §314(b)(6). One must give meaning to the different language of §314(b)(6), which my above analysis does, and which FOMB's argument does not.

FOMB's efforts to avoid the obvious – that the added language of §314(b)(6) has meaning, and that one must look not only to the best interests of creditors as a whole, but also, additionally, to the best interests of creditors with particular available remedies under Puerto Rico's Constitution and statutes – only underscores the weakness of FOMB's position. *See* #18869-page-138-of-177. The fact the added language uses the plural, "creditors," hardly suggests one should give no effect to the added language in §314(b)(6). Considering GO and Commonwealth guaranteed bondholders alone, there are obviously multiple – plural – creditors.

The fact FOMB admits that if one looks to "available remedies under the non-bankruptcy laws and constitution" of Puerto Rico there would be "interest claims cognizable outside Title III, but not inside Title III" (*id.*) only reinforces my point that the added language in §314(b)(6) has meaning here. FOMB's concession that GO and PBA bondholders are entitled to interest under the non-bankruptcy laws and constitution of Puerto Rico underscores that to give meaning to the added language Congress included in §314(b)(6) one must look to the available remedies particular groups of creditors have, even if not all creditors have those remedies.

So weak is FOMB's legal argument that FOMB falls back on a non-legal plea that in the spring of 2016 Congress perceived a "current fiscal emergency" (*id.*). But now, five and one-half years later, we know that Puerto Rico could pay all past due debt service on its GO and PBA debt – today – and still have billions of dollars left over. Now we know that Puerto Rico has over $25 billion in cash, including over $12.5 billion available to pay GO and PBA debt. And now we know it is the huge public employee pension expense – that greatly exceeds prepetition contractual debt service – that poses the greatest financial burden for Puerto Rico and its non-public employee residents. *E.g.* #18575-page-26-to-27-of-303. Yet FOMB has bowed to local political pressure by public employee unions and politicians to do nothing to reduce the current accrued pension costs, and has instead focused its efforts for the past five years trying – but not succeeding through an adjudication – to invalidate debt on the specious theory that, although Puerto Rico officials repeatedly made detailed, documented representations to investors that Puerto Rico complied with its debt limit, unbeknownst to those investors Puerto Rico had not, and thus (so goes the theory) the unsuspecting investors should lose their money. As noted, the Supreme Court has made short-work of such a theory. #18575-page-22-of-303.

November 5, 2021

            Respectfully Submitted,

/s/ Peter C. Hein
Peter C. Hein, pro se
101 Central Park West, Apt. 14E
New York, NY 10023
petercheinsr@gmail.com
(917) 539-8487

Claim 10696 and 174229

GO Bonds: 500,000 par amount, plus unpaid interest to date

[5 separate CUSIPS: 74514LVX2
          74514LWA1
          74514LWM5
          74514LWZ6
          74514LB63]

PBA Bonds: 200,000 par amount, plus unpaid interest to date

[CUSIP: 745235M24]

**Certificate of Service**

I, Peter C. Hein, certify that I have caused "Sur-Reply to FOMB 10/27/2021 and 10/28/2021 Supporting and Reply Briefs (filed by Individual Bondholder Peter C. Hein)" to be served via the Court's CM/ECF system.

November 5, 2021

                                                /s/ Peter C. Hein
                                                Peter C. Hein