UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| The Financial Oversight and Management Board for Puerto Rico, | No. 17 BK 3283 (LTS) |
| As representative of | (Jointly Administered) |
| The Commonwealth of Puerto Rico, the Employee Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority | |
| Debtors | |

**RESPONSE TO OMNIBUS REPLY OF THE COMMONWEALTH OF PUERTO RICO, TO EMPLOYEES' RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUBLIC BUILDING'S AUTHORITY TO OBJECTIONS TO EIGHTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT**

**TO THE HONORABLE COURT:**

Come Now, Oscar Adolfo Mandry Aparicio; María del Carmen Amalia Mandry Llombart; Selma Verónica Mandry Llombart; María del Carmen Llombart Bas; Oscar Adolfo Mandry Bonilla; Gustavo Alejandro Mandry Bonilla; Yvelise Helena Fingerhut Mandry; Margaret Ann Fingerhut Mandry; Victor Robert Fingerhut Mandry; Juan Carlos Esteva Fingerhut; Pedro Miguel Esteva Fingerhut; Mariano Javier McConnie Fingerhut; Janice Marie McConnie Fingerhut, Victor Michael Fingerhut Cochran; Michelle Elaine Fingerhut Cochran; Rosa Estela Mercado Guzmán: Eduardo José Mandry Mercado; Salvador Rafael Mandry Mercado; Margarita Rosa Mandry Mercado; Adrián Roberto Mandry Mercado (hereafter collectively designated as "Sucesión Pastor Mandry Mercado or Suceción"), which doesn't include Javier Mandry Mercado :

1. On October 28, 2021, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") on behalf of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and the Puerto Rico Public Buildings Authority filed an omnibus reply (the "Reply") to objections to the confirmation of the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico [**ECF No. 18874**], amended on November 3, 2021 [**ECF No. 19053**] (the "Plan").

2. The Reply includes Sucesión's objection to the confirmation of the Plan (the "Objection") filed on August 31st, 2021 [**ECF No. 17997**] in reference to Sucesión's proof of claim number 6272, as amended on August 31st, 2021, in the amount of $30,496,000.00 (the "Claim"), plus interest and costs arising from the judgment of the Court of First Instance of Puerto Rico, Ponce Section in Case No. JAC2008-0853 of August 6, 209 relative to the inverse condemnation of Sucesión's real properties, confirmed by Puerto Rico's Court of Appeals on September 14, 2021 in Case No. KLAN 201901253.

3. The Objection is premised on the taking of Sucesión's real properties at Ponce, Puerto Rico and the Takings Clause provisions of the Fifth Amendment to the Constitution of the United States of America (the "Takings Clause").

4. The Reply sustains that claims under the Takings Clause are dischargeable pursuant to the Plan and that the objections to the Plan premised thereon should be overruled, not the issue of the Objection, not centered on the dischargeability of the Claim which must be paid upon confirmation of the Plan.

5. First, the Reply avers that the provisions of the Takings Clause that "private property [shall not] be taken for public use, without just compensation" does not itself apply to the states, municipalities or the territory of Puerto Rico, while admitting that it does apply to Puerto Rico

2

pursuant to the Fourteenth Amendment as submitted by Sucesión in the Objection. Consequently, the Commonwealth's introductory statement is irrelevant.

6. Then, the Commonwealth submits that the Eminent Domain Claims based on the taking of real property by the Commonwealth are unsecured claims for the payment of money, which is also the case of administrative and priority claims and notwithstanding must be paid in full, as provided for in the Bankruptcy Code. All claims are of a monetary nature, but their treatment depends on their origin or nature and Sucesión's is rooted on the Takings Clause, becoming payable as of the date of the taking, upon the confirmation of the Plan. Its nature is completely different from claims based on an alleged "regulatory taking" referred to at footnote 21 of the Reply or any other general unsecured claim, since its origin is based on the Constitution of the United States, the Supreme Law of the land.

7. In attempting to couple the Claim under the general term of "Eminent Domain Claim," as defined in the Plan, the Commonwealth underscores its distinction from those covered by such term as the Claim arises from inverse eminent domain proceedings, different from an "Eminent Domain Claim". As to the Claim, the Commonwealth has not deposited any funds with the Court of First Instance or any Court which could be arguably considered just compensation for the taking of its properties. The Claim is not for additional compensation, but for just compensation under the Takings Clause as determined by the Court of First Instance and confirmed by the Court of Appeals. For this reason alone, the Commonwealth arguments at pages 42-43 in support of its contention as to impairment and dischargeability of Eminent Domain Claims fails, since as to the Claim there has been no transfer of properties to the Commonwealth and the same is not for additional compensation, but for just compensation under the Takings Clause. Therefore, the Commonwealth admission that [i]t is only Claims for additional money payment that are being adjusted in the Plan (i.e. amounts beyond those that were deposited with the Court of First Instance

3

underscores Sucesión's position.

8. Equally, the Commonwealth reference to Section 944(b) of the Bankruptcy Code providing for the discharge of all debts must be tailored to mean all dischargeable debts and doesn't have to include any exception for non-dischargeable Eminent Domain Claims due to the mandate of the Takings Clause which preempts any provision of law in conflict therewith.

9. The cases cited by the Commonwealth at page 45 of the Reply are inapposite to the Claim since none of them involved the condemnation of real property under the Takings Clause as follow: *In re Treko,* correct site is *In re Hamilton,* 240 F. 2d 148, 161 (2d. Cir. 2001) (involving turn over of funds as to which there was a dispute is the claim thereto was secured, the court not reaching any constitutional issue under the Takings Clause); *In re Ashe*, 12 F, Cir. 864, 869 (3d Cir. 1983) (regarding the if the debtors could avoid liens arising by virtue of confession of judgment notes by a bank, holding that non specific judicial liens have not been regarded as property interests subject to a takings analysis, distinguishing *Radford* where the interests held to be protected from an unconstitutional taking were mortgages on specific properties); *In re Nichols,* 440 F. 3d. 850, 854 (6th Cir. 2006) (distinguishing contractual rights and secured creditor's property rights); *V.W. ex rel Barber v. City of Vallejo,* 2013 WL 3992403 (whether a claim against a police officer in his individual capacity was dischargeable); *Deocampo v. Potts,* 836 F. 3d. 1134 (9th Cir. 2016) (dischargeability of willful civil rights violations)

10. As to In re *City of Stockton,* 909 F. 3d. 1256, 1266 (9th Cir. 2018) standing for the proportion that the Takings Clause permits discharge of claims arising thereunder as proposed by Commonwealth, while contradictory citing therefrom"[t]he Takings Clause is only implicated in bankruptcy if the creditor has actual property rights" with is precisely on which the Claim is based and not "on a contractual or statutory right for monetary relief", the issue as to the Claim is not if it is secured or unsecured but that it arises under the Takings Clause.

4

11. *In re. City of Stockton* must be read on its particular facts and circumstances. Therein, the Court of Appeals for the Ninth Circuit, over a strong dissent by Judge Friedland, let stand a plan of adjustment that had been challenged because it impaired a claim for just compensation under the Fifth Amendment. The Bankruptcy Court had rejected the challenge and the creditor succeeded in having his appeal heard directly by the Court of Appeals. However, he did not seek a stay of the plan confirmation before the Bankruptcy Court or the Court of Appeals and the plan was confirmed, became effective and was implemented while the appeal was pending. Since the plan had long been consummated, the Court of Appeals dismissed the appeal, invoking the doctrine of equitable mootness, not applicable to the Claim. *City of Stockton* at 1266. Nevertheless, the Court of Appeals went on to discuss the merits of the appeal and ultimately concluded, in what is quite clearly an advisory opinion founded on obiter dicta, that the creditor's claim could be adjusted as a monetary claim, disregarding its constitutional in rem origin premised on the Takings Clause different from monetary claims arising from contracts, statutory law or tortious conduct, in a setting where according to the Court of Appeals the claimant had relinquished his property interest in the land, certainly not the situation of Sucesión. Judge Friedland, in his well-reasoned dissent, rejected the majority's views basing his opinion on the Takings Clause, the Supreme Court's decisions in *Radford*, *Blanchette* and *Security Industrial Bank*, and the Bankruptcy Court's decision in *City of Detroit*. *City of Stockton* at 1271-1273 at n.7. Judge Friedland correctly expressed that the Bill of Rights constrains the powers given to Congress by Article I of the Constitution particularly the Fifth Amendment's requirement that the government provides just compensation for any taking of private property constrains the powers granted to Congress by the Bankruptcy Clause of Article I.

12. The principles of law referred to by Judge Friedland can't be overridden by the Commonwealth's pretension, based on a decision tailored by its particular facts and of questionable precedent therefor.

13. Equally the decision of *Pointsett Lumber Manufacturing v. Dramage* District No. 7,119 f. 2d. 270 (8th Cir. 1941) can't override the principles of law referred to above in our discussions of *In re. City of Stockton.*

14. The Commonwealth avers that In re. *City of Detroit, 524 B.R. 147 (Bankr. E.D.) Mich. 2014,* while not contending that it has not been revoked as to its holding that just compensations claims are not dischargeable, was wrongfully decided because of the Court's misapprehension of constitutional law and its reliance on *Williamson City Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172 (1985) and *Louisville Joint Stock Lonel Bank,* at 259, neither of which contradicts the decision of the Detroit Court as to the non dischargeability of claims arising under the Takings Clause, not the issue as to the Claim.

15. The erroneous statement in *Williamson* that "no constitutional violation occurs until just compensation has been denied" has nothing to do with the *ratio decidendi* in *In re. City of Detroit,* it only serves to support the same under the correct holding of *Knick v. Twp. of Scott,* 139 s.ct. 2172 (2019) criticizing Williamson by holding that a violation of the Takings Clause arises as soon as a government, as here, condemns the properties for public use without paying therefor.

16. The fact that the properties are taken prepetition, which could not be the case otherwise, due to the provisions of Section 362(a) of the Bankruptcy Code is irrelevant to the right to be compensated under the Takings Clause, the Claim arising as soon as the Commonwealth condemned the properties, as indicated above.

17. In *In re. Knickt*, the Supreme Court recognizing the applicability of the Fifth Amendment to inverse condemnation proceedings, categorically stated that a property owner has an actionable Fifth Amendment taking claim when the government, be it federal or state, takes his property without paying for it, the Fifth Amendment right to full compensation arising at the time of the taking, regardless of post taking remedies that may be available to the property owner.

6

18. *City of Detroit* decided prior to *Knick,* must now be read considering the unequivocal mandate of *Knick*, as discussed above, particularly when its reliance on *Williamson County,* is no longer good law as overruled by *Knick.*

19. Consequently, the alternative of *City of Detroit*, determining the Takings Clause claims as non-dischargeable is not available here, since Knick categorically holds that "[C]ontraty to Williamson County", on which Judge Steven Rhodes relied, "a property owner has a claim for a violation of the Takings Clause as soon as the government takes his property for public use without paying for it. The Takings Clause provides '[N]or shall private property be taken for public use without just compensation'. It does not say 'Nor shall private property be taken for public use, without an available procedure that will result in compensation'. If a local government takes private property without paying for it, that government has violated the Fifth Amendment---just as the Takings Clause says---without regard to subsequent state court proceedings." …. *Knick* at page 3.

20. In consonance with the aforesaid, the Supreme Court in *Knick* also stated "[T]he Fifth Amendment right to **full compensation** arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner. That principle has been recognized for years by the Supreme Court when in *Jacobs v. United States*, 290 U.S. 13 (1933), it held that a property owner found to have a valid takings claim is entitled to compensation as it had 'been paid contemporaneously with the taking'--- that is, the compensation must generally consist of the total value of the property, when taken, plus interest from that time (citation omitted)" Id.

21. The Supreme Court in *Knick*, referring to the decision of *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987), decided two years after *Williamson County*, holding that a property owner acquires an irrevocable right to just compensation immediately upon a taking, assented to a position taken by Justice Brennan earlier while disserting in *San Diego Gas & Elec. Co. v. San Diego*, 450 U.S. 621 (1981), where Justice Brennan explained

7

that "once there is a 'taking' compensation must be awarded" because "[a]s soon as private property has been taken, whether through final condemnation proceedings, occupancy, physical invasion, or regulation, the landowner has already suffered a constitutional violation". *Knick* at page 4.

22. The Claim consists of a constitutional claim identical to the one in *City of Detroit*, following the doctrine established by the Supreme Court in *Radford* and *Blanchette*: As it happened in *City of Detroit*, here there was a taking of Sucesión's properties for public purposes by regulatory action, without compensation. Thereafter, the Commonwealth filed its Title III proceedings under PROMESA, as did the *City of Detroit* under Chapter 9 of the Bankruptcy Code, not applicable to the Commonwealth for not being a municipality. The Commonwealth cannot treat the Claim as a general unsecured claim, to be dramatically impaired under the Plan, as intended in *City of Detroit*.

23. Moreover, the Claim is not subject to be classified under Class 54 of the Plan in view of the mandate of Section 1122(a) of the Bankruptcy Code as to Classification of Claims or Interests, made applicable to the captioned Title III Case by Section 301 of PROMESA, since Section 1122(a) states "[e]xcept as provided in section (b) of this section (inapplicable here), a plan may place a claim… in a particular class **only if such claim… is substantially similar to the other claims… of such class**". The Claim does not fit this mold.

Different from General Unsecured Claims, the Claim is not subject to a discharge since it constitutes a claim for a money award under the Takings Clause.

**Wherefore**, Sucesión requests that its objection to the Plan be granted and that the confirmation of the Plan be denied.

**CERTIFICATE OF SERVICE**: I hereby certify that on this date, I electronically filed the foregoing motion with the Clerk of the Court using the EM/ECF system, which will send a notification to all attorneys of record.

**RESPECTFULLY SUBMITTED**.

San Juan, Puerto Rico, this 5th day of November 2021

                              **s/CHARLES A. CUPRILL-HERNÁNDEZ**
                              **USDC-PR 114312**
                              Charles A. Cuprill, P.S.C. Law Offices Counsel
                              for Sucesión Pastor Mandry Mercado
                              356 Fortaleza Street, Second Floor
                              San Juan, PR 00901
                              Tel.: 787-977-0515
                              Fax: 787-977-0518
                              E-mail: