# Debtors' Ex. 135

**Debtors' Ex. 135**



# Section 204(a)
# CERTIFICATION

Act 53-2021
Enacted on October 26, 2021




# CONTENTS

Introduction …………………………………………..……………………….. 3

Purpose of Legislation ……………………………………….……………………. 3

Analysis and Assumptions …………………………………………………….. 8

Fiscal Impact ……………………………………………………………….……..10

Determination of Compliance or Non-Compliance with Fiscal Plan ….......11

Appendix ….…………………..…………………………………………....….12

Reports ……………………………………………………………………….……12

## I. INTRODUCTION

This document is provided for purposes of Section 204(a) of PROMESA, 48 U.S.C. §2144(2)(B).[1]

## II. PURPOSE OF LEGISLATION

On June 30, 2016, the President of the United States signed into law the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which is codified under 48 U.S.C. §§ 2101-2241. PROMESA's purpose is to establish a framework to allow the Government of Puerto Rico to renegotiate its debt, while at the same time providing a pathway to fiscally responsible governance. PROMESA also created the Financial Oversight and Management Board ("FOMB" or "Oversight Board"), which supervises the fiscal and budgetary aspects of the Government.

On May 3, 2017, the Oversight Board, at the request of the Governor of Puerto Rico, commenced a Title III case for the Commonwealth by filing a petition for relief under Title III of PROMESA in the U.S. District Court for the District of Puerto Rico (the "Title III Court"). Later that month, a Title III petition for relief was also filed for the Employee Retirement System for the Government of the Commonwealth of Puerto Rico ("ERS"), and in September 2019, a Title III petition was filed for the Public Buildings Authority ("PBA").

On July 30, 2021, the Oversight Board—as representative to the Commonwealth, ERS, and PBA, in their respective Title III cases—filed the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 17629] (the "POA"), and on July 30, 2021 filed a corrected disclosure statement related thereto [ECF No. 17628] (the "Disclosure Statement").

The POA reflects agreements reached by the Oversight Board with several creditor groups, including:

- A significant portion of the Commonwealth general obligation ("GO") bondholders and PBA bondholders;
- ERS bondholders;
- Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation, as part of an agreement to resolve their claims against the Puerto Rico Highways and Transportation Authority ("HTA"), and the Puerto Rico Convention Center District Authority ("CCDA"), as well as their claims against the Commonwealth for the clawback of funds conditionally allocated to HTA and CCDA;
- Ambac Assurance Corp. and Financial Guaranty Insurance Company, as part of an agreement to resolve their claims against the Puerto Rico Infrastructure Financing Authority ("PRIFA"), as well as their claims against the Commonwealth for the clawback of funds conditionally allocated to PRIFA;
- The Official Committee of Unsecured Creditors; and
- The Official Committee of Retirees.

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in Act XX.

The POA and the debt modifications contemplated therein would reduce the Government of Puerto Rico's public debt by approximately 78%. This means that total claims at the Commonwealth of Puerto Rico of $34.3 billion would be reduced to $7.4 billion in debt. At the same time, the annual public debt payment from the government would be reduced from approximately $2.9 billion[2] to $437 million,[3] on average, for the 25-year term of the new debt. Overall, these reductions will allow the Government to have more liquidity which, in turn, would allow it to invest in infrastructure, deliver quality services to the people of Puerto Rico, and to make necessary changes that would prepare Puerto Rico for future emergencies.

On August 2, 2021, the Disclosure Statement was approved by the Title III Court, thus allowing the Oversight Board to solicit votes to approve or reject the POA from its creditors. The confirmation hearing on the POA is currently scheduled to commence on November 8, 2021.

Act 53 has been enacted in order to authorize the issuance of securities under the POA, subject to certain conditions therein. Based on public representations from the Oversight Board that it would remove the Monthly Benefit Modification from the POA and certify a new fiscal plan that does not reflect the Monthly Benefit Modification after POA confirmation, the Government certifies that Act 53 would be consistent with (and not substantially inconsistent with) such a revised fiscal plan for purposes of PROMESA.

**Chapter 1**

Chapter 1 of Act 53, which shall be known as the "Law to End the Bankruptcy of Puerto Rico," provides (i) a list of definitions for terms used throughout the law, (ii) authorizes certain actions that shall be taken by the Government Entities and the Governor of Puerto Rico, the Secretary of Treasury or the Governor's designated officer (as defined in Act 53, the "Governor's Designee") in connection with the implementation of the POA or to carry out a Restructuring Transaction, (iii) declares the Government's public policy regarding the protection of accrued pensions of public employees, (iv) appropriates funding for the University of Puerto Rico ("UPR") totaling $500 million for fiscal years 2023 through 2027, and (v) orders the Puerto Rico Department of Health to conduct a feasibility study to provide access to medical coverage for 225,000 citizens, and appropriates $1 million to fund said study.

In particular, Section 103 authorizes each Government Entity, which by definition of Section 102(p) also includes municipalities, to take any actions necessary or convenient to carry out the POA or a Restructuring Transaction, which is defined to include each of the transactions contemplated by, or in furtherance of, the POA or a Qualifying Modification for CCDA and

---

[2] Includes pre-petition debt service for General Obligation, PBA, HTA 1998s, HTA 1968s, COFINA Senior, COFINA Subordinate, CCDA, PRIFA Rum, PFC and ERS for FY2022 through FY2046, the same term as the new GO debt post-effective date. Debt service amounts taken from 2021 Certified Fiscal Plan "Aggregate – DS" tab (noted as "Pre-petition contractual debt service (ILLUSTRATIVE ONLY) - Shows values up to FY51 only."

[3] Includes Current Interest and Capital Appreciation Bond debt service for FY2022 through FY2046, excludes Puerto Rico Sales Tax Financing Corporation ("COFINA," by its Spanish acronym) debt service. Debt service including COFINA is on average $1.193 billion. Debt service excluding CABs and COFINA on average is $394 million.

PRIFA approved pursuant to Title VI of PROMESA, including, without limitation, the issuance of the general obligation bonds ("GO Bonds"), the contingent value instruments ("CVIs"), and any trust related thereto, and the cancellation and extinguishment of the Existing Claims pursuant to the POA or a Qualifying Modification, as applicable. Existing Claims refer to claims against Commonwealth, PBA, ERS , HTA, PRIFA, CCDA, and the Puerto Rico Metropolitan Bus Authority ("MBA").

Section 103 also authorizes the Governor's Designee to carry out certain actions and approvals pursuant to the POA, if so required, following the issuance of an order of the Title III Court approving the POA (the "Confirmation Order"). Among such authorized actions, Section 103 provides that the Governor's Designee shall (i) approve the offering, sale, and issuance of the GO Bonds and the CVIs; (ii) provide for the cancellation and extinguishment of Existing Claims; (iii) authorize the payment of Financing Costs in accordance with the terms of the POA; (iv) approve the form of and entry into the GO Bond Indenture, CVI Indenture, and other Ancillary Agreements[4] on behalf of the Commonwealth (to the extent not approved by the Title III Court's Confirmation Order); and (v) include in the Ancillary Agreements any covenant, term, or other condition as may be required by the POA.

Section 103 further notes that, notwithstanding the application of the laws of the State of New York to govern and interpret the GO Bonds, the CVIs, the GO Bond Indenture, the CVI Indenture, and any other Ancillary Agreement, the holders of the GO Bonds and CVIs shall be entitled to such rights and remedies of holders of public debt of the Commonwealth established in Sections 2 and 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico (the "Constitution").

Article 104 of Act 53 establishes the Commonwealth's public policy of protecting the current level of "accrued pensions of its public servants" and solely conditions the authorization for the issuance of the new GO Bonds and the CVIs on the Oversight Board's filing with the Title III Court an amended POA that eliminates the "Monthly Benefit Modification," as defined in the POA.

**Chapter 2**

Chapter 2 of Act 53 provides for the issuance of the GO Bonds pursuant to Article VI, Section 2 of the Constitution, under which the good faith, credit, and taxing power of the Commonwealth are pledged for the prompt payment of principal and interest on the GO Bonds when due in accordance with the terms of the GO Bond Indenture. The GO Bonds shall be tax exempt and shall include current interest bonds and capital appreciation bonds.

Section 201 authorizes the Governor's Designee to approve the offering, sale, and issuance of the GO Bonds, from time to time, up to an aggregate initial principal amount of $7,414,063,543.25, as well as the issuance, from time to time, of additional GO Bonds to retire, refinance, or defease the GO Bonds originally issued (subject to the limitations contemplated in the POA and in the GO Bond Indenture).

---

[4] Ancillary Agreements includes the POA, the Confirmation Order, the GO Bond Indenture, the form of the GO Bonds, the CVI Indenture, the form of the CVIs, and any other agreement or instrument in connection with, or in furtherance of, a Restructuring Transaction and in accordance with, or in furtherance of, the POA or a Qualifying Modification.

In addition to the foregoing, Section 205 provides various contractual covenants the Commonwealth is contractually bound to comply with for the benefit of the holders of the new GO Bonds until such bonds have been paid in full. Such covenants include agreements to: (i) deposit funds in a Debt Service Fund, (ii) do all things permitted by law and reasonably necessary to maintain the tax exempt nature of the GO bonds for federal income tax purposes; (iii) include in future Fiscal Plans the provisions for the payment of the principal of and interest on the GO Bonds for each upcoming fiscal year in accordance with the terms of the GO Bond Indenture, and (iv) apply proceeds from the 1.03% property tax levied pursuant to Act 107-2020, as amended, and collected by the Municipal Revenues Collection Center, any monies arising from the operation of Article VI, Section 8 of the Constitution, and any other available resources of the Commonwealth to the payment of the principal of and interest on such GO Bonds, to the extent necessary to satisfy the Commonwealth's obligations thereunder.[5]

**Chapter 3**

Chapter 3 of the Act authorizes the Governor's Designee to approve the offering, sale and issuance of CVIs, in two subseries—the GO CVIs and Clawback CVIs—up to the aggregate amount of $3,500,000,000 and $5,239,002,764, respectively. Pursuant to Act 53, the CVIs: (i) shall be dated and mature at such time or times as may be determined by the Governor's Designee, as defined therein, provided that the GO CVIs shall mature no later than Fiscal Year 2044 and the Clawback CVIs shall mature no later than Fiscal Year 2052; (ii) shall not bear interest and shall be subject to redemption as may be determined by the Governor's Designee and authorized in the CVI Indenture; (iii) shall be legal, valid and binding obligations of the Commonwealth, issued pursuant to Article VI, Section 2 of the Commonwealth Constitution, and payable in accordance with the terms of the CVI Indenture and the Ancillary Agreements, as defined therein; (iv) no payments shall be made on account of the CVIs unless an SUT Outperformance Condition or a Rum Tax Outperformance Condition, as defined therein, occurred during the applicable Fiscal Year and (v)shall be exempt from all kinds of taxes, among other requirements and conditions provided therein. *See* Sections 301 and 303 of Act 53.

The good faith, credit, and taxing power of the Commonwealth are pledged for the prompt payment of the CVIs as and when due in accordance with the CVI Indenture. The Secretary of the Treasury is authorized and ordered by Act 53 to pay the CVIs as they become due or upon their earlier redemption in accordance with the CVI Indenture, and such payment shall be made from available resources of the Commonwealth in the Fiscal Year in which the payment is required. *See* Section 302 of Act 53. Additionally, pursuant to Act 53, the payment of the CVIs shall be deemed a continuing appropriation for the Secretary of the Treasury in the Fiscal Year in which such payment is required, even if no specific appropriations are made for such purpose. *See* Section 302 of Act 53.

---

[5] Pursuant to Section 205(d), this covenant is not intended to grant to the holders of the GO Bonds any lien on such proceeds, monies, and resources. To the extent that such proceeds, monies, and resources are transferred to the General Fund, payments therefrom shall be deemed to have been made in the order set forth in Section 205(d).

Pursuant to Section 304, the Commonwealth shall take no action that would (i) limit or alter the rights vested in the Commonwealth in accordance with the POA and the Confirmation Order to fulfill the terms of any agreements with the holders of the CVIs; (ii) impair the rights and remedies of the holders of the CVIs; or (iii) impair the ability of the holders of the CVIs to track performance of the Measured SUT and the Commonwealth Rum Tax Revenues available for the payment of such CVIs. *See* Section 304 of Act 53.

Furthermore, the Commonwealth shall ensure that any post-Effective Date Fiscal Plan of the Commonwealth submitted to the FOMB pursuant to PROMESA includes provisions for the payment in each Fiscal Year of the amounts due on the CVIs consistent with the terms of the CVI Indenture to the extent that an "SUT Outperformance Condition" or a "Rum Tax Outperformance Condition," each as defined therein, occurs during the prior Fiscal Year. *See* Section 304 of Act 53.

**Chapter 4**

Chapter 4 of Act 53 creates the "Extraordinary Fund to Address the Collection and Disposal of Residuals, Wastes, and to Implement Recycling Programs in the Municipalities" (the "Extraordinary Fund") within the "Municipalities' Equalization Fund" established under Section 7.015 of Act 107-2020, as amended. The Extraordinary Fund shall have a separate account and shall be funded from an annual allocation from the General Fund. This annual allocation shall be equivalent in each fiscal year to 42% of the amount collected during the prior fiscal year on account of the 1.03% property tax. However, this annual appropriation will be contingent upon Medicaid funds actually received in the previous fiscal year exceeding the projections made for such fiscal year according to the 2021 Certified Fiscal Plan, as certified by the Oversight Board on April 23, 2021 (the "Certified Fiscal Plan").

The municipalities are only authorized to access the Extraordinary Funds for the purposes of (i) garbage collection and disposal; (ii) collection and disposal of solid wastes; (iii) collection and disposal of debris; and (iv) implementation, collection, and disposal of recycling.

In regards to the distribution of resources from the Extraordinary Fund, Section 405 sets forth the criteria that shall be used to determine the corresponding amount available to each municipality. These provisions seek to benefit those municipalities that receive the least income from property taxes or other sources, as well as those with the largest number of dependents in the Nutritional Assistance Program ("NAP") and with the highest population density. The abovementioned criteria includes, the total number of NAP beneficiaries (per capita), the functional budget of each municipality, the appraised value of taxable property located within the territorial limits of each municipality, and the population of the municipality per square mile, according to the last ten-year census. It is also provided that existing parameters for the distribution of resources of the Municipalities Equalization Fund may be incorporated, as long as such parameters are not contrary to the purposes and objectives set forth in Chapter 4 of Act 53.

**Chapter 5**

Chapter 5 amends or repeals certain laws related to the deposit of funds in the General Fund to guarantee that all legislation of the Commonwealth complies with the availability of funds established in the Fiscal Plan.

For example, Chapter 5 amends: (i) Section (a) of Article 3 of Act No. 147, of June 18, 1980, as amended ("Act 147") regarding the authorities and duties of the Office of Management and Budget ("OMB") and requiring said Office to issue an official certification of the availability of funds for the implementation of certain legislation within a period of five (5) business days from the day that such certification is requested; (ii) Subsection (M) of Article 7 of Act No. 44 of June 21, 1988, as amended ("Act 44"), in order to modify certain terms and conditions of the general powers of PRIFA; (iii) Article 23.01 of Act 22-2000, as amended, ("Act 22"), to provide that the total amount of the proceeds of the fees collected pursuant to Articles 23.01 and 23.02 of said law shall be deposited in the General Fund; (iv) Subsection (H) of Article 2.02 of Act 351-2000, as amended ("Act 351") to modify certain powers of CCDA; (v) Article 31 of Act 272-2003, as amended ("Act 272"), to provide that the Tourism Office shall distribute certain amounts collected on account of the tax established in Article 24 of said law, after transferring to the General Fund of the Commonwealth the amounts that were previously transferred to CCDA; (vi) Section 3060.11 of Act 1-2011, as amended, regarding the deposit of certain funds from the product of the taxes and license fees collected that shall enter the General Fund; (vii) Article 7.027 of Act 107-2020, as amended ("Act 107") about the collection and entry of taxes to provide that the product of the taxes imposed by Articles 7.025 and 7.026 of Act 107, shall enter the general trust established by the Municipal Revenue Collection Center ("CRIM" by its acronym in Spanish) and AAFAF, and that the product of the special property taxes of Section 7.026 shall enter the General Fund; among other amendments. *See* Chapter 5 of Act 53.

**Chapter 6**

Pursuant to Chapter 6 of Act 53, the debt services payable under the CVIs in any Fiscal Year shall not, under any circumstances, reduce COFINA's obligations. *See* Section 601 of Act 53.

In addition, Chapter 6 of Act 53, clarifies that the responsibilities, powers, and duties granted by said law to the Governor's Designee shall be limited exclusively to the transactions and provisions included in Act 53 and that such responsibilities, powers, and duties shall not be exercised to issue any other debt in the future.

Article 603 of Act 53 is a general severability clause providing that in the event any clause, paragraph, subparagraph, heading, or part of Act 53 were annulled or declared unconstitutional, the remainder of Act 53 will not be affected or invalidated. Article 603 further provides that the effectiveness of Act 53, as established in Article 605, shall not be subject to said severability. Furthermore, Article 603 establishes that the authorizations granted in Articles 103, 201, and 301 are not enforceable if Article 104 is declared invalid or unconstitutional or if the Plan does not avoid pension cuts through the elimination of the Monthly Benefit Modification.

In addition, Chapter 6 incorporates a supremacy clause providing that Act 53 shall prevail over any other general or specific provision of any non-federal law or regulation. *See* Section 604 of

Act 53. Pursuant to Chapter 6 of Act 53, all laws of the Commonwealth that are inconsistent with the terms and provisions of PROMESA, the POA, and budgets certified by the FOMB are preempted and amended to provide that all funds previously transferred or appropriated pursuant to such inconsistent laws to any agency or instrumentality of the Commonwealth shall be transferred to the Commonwealth's General Fund for disbursement only in accordance with an approved annual budget. *See* Section 604 of Act 53.

Article 605 of Act 53 makes it effective upon its enactment, with the exception of repeal and amendments of existing laws, which are effective upon the effectiveness of the Plan. Article 605 further conditions the effectiveness of the law on the Oversight Board filing an amended POA that eliminates the Monthly Benefit Modification, as defined in Section 1.337 of the POA. Article 605 reiterates that Act 53's operation is contingent upon no reduction to pensions and that the act will cease to be in effect if pension cuts are ordered or implemented pursuant to the Plan or the Restructuring Transactions.

## III. ANALYSIS AND ASSUMPTIONS

**Financial Impact**

Act 53 does not impose additional ongoing operational responsibilities on the Puerto Rico Fiscal Agency and Financial Advisory Authority (hereinafter "AAFAF", by its Spanish acronym) or to any other entity of the Executive Branch that may be considered outside the ordinary course of their operations or that may require additional funds in addition to the supplemental Title III-enabling budgetary appropriation.

After enactment of Act 53, AAFAF will continue to exercise its statutory duties and functions as fiscal agent for the Government of Puerto Rico. In other words, Act 53 does not create incremental responsibilities that can be considered outside of AAFAF's ordinary course of operations or those of any other governmental entity. Consequently, it is reasonable to expect that AAFAF and the other governmental entities will implement Act 53 with their existing budgeted resources.

**Authorization for the Issuance of the New GO Bonds and CVIs**

PROMESA vests in the Oversight Board the authority to file a plan of adjustment of a Title III debtor's debts and to modify the plan at any time before confirmation. In addition, Section 314 of PROMESA, in its pertinent part, states that the Title III court shall confirm a plan filed by the Oversight Board, if – among other things – "any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval." *See* PROMESA Section 314(b)(5).

Act 53 conforms with Sections 312, 313, and 314 of PROMESA paving the way for the confirmation of a POA by the Title III Court and the issuance of the New GO Bonds and CVIs under the POA. Act 53's *Statement of Motives* expressly affirms that "[p]ursuant to Section 314 of PROMESA, the Government of Puerto Rico must enact this legislation to facilitate confirmation of the Plan, which must occur before the departure of the Board."

Upon its enactment and the filing of an amended POA removing the Monthly Benefit Modification, Act 53 will constitute an unequivocal authorization for the issuance of the New GO Bonds and the CVIs, as required by Section 314(b)(5) of PROMESA. The continued effectiveness of Act 53, with respect to the issuance of New GO Bonds and CVIs, is specifically conditioned only on neither the Plan nor the Restructuring Transactions providing for cuts to the accumulated pension benefits of public employees.

### Act 53 does not address Pension Freezes

With Article 104, Act 53 gives effect to the stated public policy by protecting *accrued* pensions for retirees and active employees. This can unequivocally be established by the clear language of Article 104 which references only the elimination of the Monthly Benefit Modification, as defined in Section 1.337 of the Plan. Act 53 does not address the concept of a pension freeze in any of its provisions. With respect to the proposed freeze of the defined benefit plans for Puerto Rico's teachers and judges, this is an issue separate from Act 53-2021. To be clear, Act 53-2201 does not implement the freeze nor prevents a freeze from occurring; the issue of any freeze will be addressed in connection with already filed objections to the Plan.

### Reprogrammings and Budgetary Appropriations

FOMB to provide for the implementation of budgetary reprogrammings or amendments to the certified Budget for the Commonwealth consistent with Section 202 of PROMESA.

It should be noted that the authority to reprogram funds was suspended by Section 9 of the certified Budget approved by the Oversight Board on June 30, 2021. Thus, any budget reprogramming—even when funds are available—requires the authorization of the Oversight Board prior to implementation. PROMESA's provisions prohibit taking any action until the Oversight Board's analysis is received and said entity certifies that the proposed Budget reprogramming is not inconsistent with the applicable Fiscal Plan or Certified Budget.

Since no appropriation for payment of GO Bonds is made in the certified Budget, the Oversight Board will need to provide budgetary reprogrammings or budget amendments consistent with Section 202 of PROMESA. It should be noted that the Government shall request authorization to the Oversight Board, pursuant to the applicable provisions of PROMESA and Section 21.4 of the current Certified Fiscal Plan, as well as Sections 9 and 10 of the current certified Budget.

## IV. FISCAL IMPACT

Implementation of Act 53 and of the POA results in annual debt service of $437 million[6], on average, over the life of the new bonds from fiscal year 2022 through fiscal year 2046. Thus, the

---

[6] Includes Current Interest and Capital Appreciation Bond debt service for FY2022 through FY2046, excludes COFINA debt service. Debt service including COFINA is on average $1.193 billion.

Government estimates that satisfaction of the GO Bonds should require $10.92 billion[7] in debt service payments over the 25-year period. Furthermore, if the conditions set forth in the CVIs are met, the Government could spend up to an additional $405 million[8] on an annual basis. On the other hand, the Government does not expect any impact on revenues of the Government of Puerto Rico for the pertinent fiscal years covered by Certified Fiscal Plan. It should be noted that debt service after confirmation of the POA represents less than 8% of total Government revenue.

## V. DETERMINATION OF COMPLIANCE OR NON-COMPLIANCE WITH THE CERTIFIED FISCAL PLAN

After the pertinent analysis, and based on the assumptions discussed above, in accordance with Section 204(a) of PROMESA, the Government has determined that Act 53 is not significantly inconsistent with the Certified Fiscal Plan, once amended based on the Oversight Board's agreement to eliminate the Monthly Benefit Modification, and providing $500 million for the UPR budget for each fiscal years 2023 through 2027, and authorizing additional resources for the municipalities.

---

[7] Total debt service for FY2022 through FY2046 for Current Interest and Capital Appreciation Bonds of $10.915 billion.

[8] Does not account for rollover amounts if the full amounts are not met in prior years, which could result in full max annual payment for GO and Clawback CVI. Current amount of $405 million reflects $200 million for GO CVI, $175 million for Clawback CVI and $30 million for the rum tax outperformance. The GO and Clawback CVI represent half of the maximum annual payment, $400 million and $350 million respectfully.

## VI. APPENDIX

**Figure 1. Projected Annual Debt Service**



## VII. REPORTS

- Attachment A (Office of Management and Budget)

**GOBIERNO DE PUERTO RICO**
OFICINA DE GERENCIA Y PRESUPUESTO
Director I Juan Carlos Blanco I juan.blanco@ogp.pr.gov

## CERTIFICACIÓN DE IMPACTO FISCAL
Ley Núm. 53-2021

Conforme es requerido por la Ley federal denominada *Puerto Rico Oversight, Management, and Economic Stability Act*, conocida como PROMESA (por sus siglas en inglés), Pub. L. 114-187, hemos evaluado la Ley de reciente aprobación para determinar si la misma puede tener un potencial impacto fiscal sobre el Presupuesto de Gastos del Gobierno de Puerto Rico. La Ley que incluye la presente certificación es la siguiente:

*Ley Núm. 53 – 2021 (P. de la C. 1003)(Segunda Conferencia)* - Para crear la "Ley para Ponerle Fin a la Quiebra de Puerto Rico", establecer las disposiciones y condiciones para aprobar la oferta, venta y emisión de los diferentes tipos de Bonos de Obligación General, así como para disponer la creación de los Instrumentos de Valor Contingente; establecer la política pública de apoyo a los municipios afectados; establecer la política pública de apoyo a las pensiones de nuestros retirados; establecer la política pública de apoyo a la Universidad de Puerto Rico; declarar los propósitos del Gobierno sobre temas de educación superior, cubiertas médicas de empleados públicos y los ciudadanos, así como para el desarrollo económico y de establecer un grupo de trabajo conjunto entre la Rama Legislativa y la Rama Ejecutiva; establecer un mecanismo que le permita al Gobierno del Estado Libre Asociado de Puerto Rico adelantar los términos de pagos y cancelación de la deuda de conformidad con la ley aplicable; derogar la Ley Núm. 39 del 13 de mayo de 1976, según enmendada; enmendar el inciso (a) del Artículo 3 de la Ley Núm. 147 de 18 de junio de 1980, según enmendada; enmendar el Artículo 3 y el inciso (m) del Artículo 7, así como derogar los Artículos 25 y 34 y renumerar los Artículos 25-A y 35 como los Artículos 25 y 34, respectivamente, de la Ley Núm. 44 de 21 de junio de 1988, según enmendada; enmendar el Artículo 23.01, derogar el inciso (e) y renumerar los actuales incisos (f) y (g) como los nuevos incisos (e) y (f) del Artículo 23.02 de la Ley 22-2000, según enmendada; derogar el inciso (l) y renumerar los actuales incisos (m), (n), (ñ), (o), y (p) como los nuevos incisos (l), (m), (n), (ñ), y (o), respectivamente, del Artículo 1.03(B), enmendar el inciso (h) del Artículo 2.02 de la Ley 351-2000, según enmendada; enmendar el Artículo 8 de la Ley 179-2002, según enmendada; enmendar el Artículo 31 de la Ley 272-2003, según enmendada; añadir un nuevo Artículo 7A a la Ley 103-2006, según enmendada; enmendar la Sección 3060.11 y eliminar la Sección 3060.11A de la Ley 1-2011, según enmendada; enmendar el Artículo 7.018 y el Artículo 7.027 de la Ley 107-2020, según enmendada; y para derogar el Artículo 3 de la Ley Núm. 9 de 12 de agosto de 1982; a los fines de tomar los pasos afirmativos necesarios para encaminar la salida de Puerto Rico del procedimiento de quiebras creado al amparo del Título III de la Ley PROMESA; cumplir con las disposiciones de la referida ley federal respecto a las condiciones mínimas necesarias para la culminación de la Junta de Supervisión y Administración Financiera; y para otros fines relacionados.

Comenzamos nuestros comentarios indicando que la aprobación de esta Ley viabiliza la implantación del Plan de Ajuste de la Deuda para sacar al Gobierno de Puerto Rico de la quiebra.

Página 2

Además, debemos señalar que el impacto fiscal que tendría el Plan de Ajuste de la Deuda formará parte del próximo Plan Fiscal.

Se expide la presente Certificación, en San Juan, Puerto Rico a 28 de octubre de 2021.

Cordialmente,

*[firma]*

Juan Carlos Blanco Urrutia

[logo:] GOVERNMENT OF PUERTO RICO

# GOVERNMENT OF PUERTO RICO
OFFICE OF MANAGEMENT AND BUDGET
Director | Juan Carlos Blanco | juan.blanco@ogp.pr.gov

## FISCAL IMPACT CERTIFICATION
Law No. 53-2021

As required by the federal *Puerto Rico Oversight, Management, and Economic Stability Act,* known as PROMESA, Pub. L. 114-187, we have evaluated the recently enacted Act to determine whether it may have a potential fiscal impact on the Expenditure Budget of the Government of Puerto Rico. The Act included in this certification is as follows:

*Act No. 53 - 2021 (House Bill 1003)(Second Conference)* - To create the "Law to End the Bankruptcy of Puerto Rico," to establish the provisions and conditions to approve the offer, sale, and issuance of the different types of General Obligation Bonds, as well as to provide for the creation of Contingent Value Instruments; to establish the public policy to support the municipalities that have been affected; to establish a public policy to support the pensions of our retirees; to establish a public policy to support the University of Puerto Rico; to establish a public policy to support the University of Puerto Rico; to state the Government's intentions on issues of higher education, medical coverage for public employees and citizens, as well as for economic development and to establish a joint working group between the Legislative Branch and the Executive Branch; to establish a mechanism that will allow the Government of the Commonwealth of Puerto Rico to advance the terms of payments and cancellation of the debt in accordance with applicable law; to repeal Act No. 39 of May 13, 1976, as amended; to amend paragraph (a) of Article 3 of Act No. 147 of June 18, 1980, as amended; to amend Article 3 and paragraph (m) of Article 7, as well as to repeal Articles 25 and 34 and renumber Articles 25-A and 35 as well as Articles 25 and 34, respectively, of Act No. 44 of June 21, 1988, as amended; to amend Article 23.01, repeal paragraph (e) and renumber the current paragraphs (f) and (g) as new paragraphs (e) and (f) of Article 23.02 of Act 22-2000, as amended; to repeal paragraph (1) and renumber the current paragraphs (m), (n), (ñ), (o), and (p) as well as new paragraphs (1), (m), (n), (ñ), and (o), respectively, of Article 1.03(B), amend paragraph (h) of Article 2.02 of Act 351- 2000, as amended; amend Article 8 of Act 179-2002, as amended; amend Article 31 of Act 272-2003, as amended; add a new Article 7A to Act 103- 2006, as amended; amend Section 3060.11 and delete Section 3060.11A of Act 1- 2011, as amended; amend Article 7.018 and Article 7.027 of Act 107-2020, as amended; and to repeal Article 3 of Act No. 9 of August 12, 1982; for the purposes of taking the necessary affirmative steps to direct Puerto Rico's exit from the bankruptcy proceeding created under Title III of the PROMESA Act; to comply with the provisions of the aforementioned federal law regarding the minimum conditions necessary for the culmination of the Financial Oversight and Management Board; and for other related purposes.

We begin our comments by stating that the passage of this Act makes it feasible to implement the Debt Adjustment Plan to bring the Government of Puerto Rico out of bankruptcy.

Calle Cruz #254 Esq. Tetuán, San Juan, PR / PO Box 9023228, San Juan, PR 00902-3228

787-725-9420    www.ogp.pr.gov



*Certified to be a true and correct translation from the source language Spanish to the target language English.*
*5/NOVEMBER/2021* ◆ *Pura Reyes Gilestra-ATA # 244688/NAJIT # 3449* ◆ *Translations & More: 787-637-4906*

In addition, we should point out that the fiscal impact that the Debt Adjustment Plan will be part of the next Fiscal Plan.

This Certification is issued in San Juan, Puerto Rico on October 28, 2021.

Cordially yours,
[illegible signature]
Juan Carlos Blanco Urrutia





## TRANSLATIONS & MORE
*Language & Office Services*

*Pura Reyes Gilestra*
Translator & Interpreter/Editor

*Dr. Carlo T. Ravelo*
Court Interpreter & Translator

November 5th, 2021

### TRANSLATOR'S CERTIFICATE OF TRANSLATION

**I HEREIN CERTIFY** that the document indicated below is a true and correct translation of the original document from the original text in Spanish to the target language English; moreover, that I, Pura M. Reyes-Gilestra, am a professional translator and interpreter and member in good standing of the American Translators Association (#244688) and the National Association of Judiciary Interpreters and Translators (#3449) and also on the Qualified Contract Interpreters & Translators list at the U.S. District Court, for the District of Puerto Rico & the Administrative Office of the United States Courts.

Document translated:

      Attachment A

Pura M. Reyes Gilestra, PhD
Editor/Interpreter/Translator

416 Ponce de León Ave. ♦Union Plaza Suite 1202 ♦San Juan, Puerto Rico
00918 787-637-4906 ♦purareyes220@gmail.com ♦
translationsmorepr@gmail.com www.translationsmore.com

