IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** as representative of the<br><br>**COMMONWEALTH OF PUERTO RICO,**<br><br>Debtor. | **BANKRUPTCY NO. 17-3283 (LTS)**<br><br>**PROMESA: Title III** |

**OBJECTION OF APJ TO PLAN PURSANT TO COURT ORDER
OF NOVEMBER 2, 2021 AT DOCKET NO. 19017**

**TO THE HONORABLE COURT**:

**APPEARS NOW** the Asociación Puertorriqueña de la Judicatura, Inc. ("APJ"), through the undersigned counsel, and hereby states, alleges, and requests as follows:

I. The Objection

After nearly four (4) years of litigation, mediation and negotiation, this case appears to be funneling down the pending disputes. Yet critical issues remain regarding the Judiciary in Puerto Rico that cannot be ignored and swept aside in the spirit of simply concluding all issues for sake of finality.

The active judges in Puerto Rico, speaking through the only means that they have at their disposal, the APJ, have been consistent before this case commenced in the lawsuit it filed in 2017, throughout the process by way of its Request to Lift Stay (filed on December 4th, 2018) and in its earlier Objection to the Plan (filed on June 16, 2021). Judicial independence is a stake and, apparently, it is still on the menu.

There are three matters that directly and impermissibly affect the active judges: (1) a reduction in pension; (2) an elimination of Cost of Living Adjustments ("COLA") and (3) the so-called "freeze". Each, under the analysis below, runs afoul of U.S. Constitutional, Puerto Rico Constitutional and existing federal and Puerto Rico law.

Before reaching the reasoning that the APJ has set forth earlier in various pleadings, motions and at the Stay hearing, it is fair to point out that one of the three issues may be resolved. Law 53, in Section 104, prohibits the reduction of month benefits. The Court has accepted this Law and it appears the matter is resolved. But this issue has been a moving target for some time and the APJ must be clear that it opposes any such adjustment if some upcoming move by the Oversight Board threatens this arrangement.

That said, this objection focuses on any potential COLA modification or elimination and the freeze. It seems unassailable that changing the COLA must be considered part of judicial compensation and, therefore, falls squarely under the ambit of Section 104 of Law 53. Any attempt to construe COLA in a contrary fashion would violate basic statutory construction of the Law.

The freeze can have even more devastating effect to many of the active judges. In various ways and fora, the APJ has repeatedly shown the Oversight Board how this could deprive certain groups of active judges the lion's share of their respective pensions.[1] Again, this would be

---

[1] The freeze affects different judges in different ways, some extreme. Here is an example of judge who has served 9 years on the bench. If she is reappointed for another 16-year term, she would vest at 75% of her salary for her pension at year 20.

With the freeze, however, with an Effective Date of January 22, 2022, this judge would never pass 25% of her salary for her pension even if she served the entire next 16 years and had 25 years of service. That 50% change represents 2/3 of her current pension under the current system.

diminishing judicial compensation and breaking the inherent promise made by the Government to judges when they don the robes, foregoing more lucrative endeavors to serve the public. This is a clear violation of the independence of the Judiciary in Puerto Rico.

II. The Rationale for the Objection

A. An Overview

The APJ has set forth its rationale for its position that the Board's insistence on diminishing judicial compensation violates the pillar of judicial independence in our republican form of government on multiple occasions. While we will reiterate once more here, the gist is simple: the Oversight Board never had the power to do this. Its limited power derives from an Act of Congress that cannot overturn the fundamental form of government created by Congress when Congress approved Law 600 and established Puerto Rico's tripartite form of government. While the Board's power may seem to many in this setting after four years of management and litigation to be quite broad, it pales when set next to the magnitude of what Congress created in Law 600.

Nothing in the Act of Congress establishing the powers of the Board remotely attempted to repeal or overturn, in any way, what Congress created: a republican form of government in which judicial independence is deeply rooted. No flexing of power by the Board can vitiate this truth.

B. The Path of the Law on Judicial Independence

---

We are aware that there would be some benefits added in for this judge under the proposed Plan, but these benefits will never fill the vacuum created by this 2/3 diminution of benefits removed by this Plan.

3

Judicial independence is critical to democracy and justice. The concept of an independent judiciary was embedded into the United States Constitution by our Founding Fathers. Any attempt to impinge judicial independence does violence to this core value that is fundamental to our form of government.

Each co-equal branch in the American system of government has its own unique role within the overall structure. As Alexander Hamilton so aptly put it: the Judiciary is the branch least able to defend itself and advocate for its rights and proper place in the constitutional structure. Specifically, he wrote about the importance of preserving judicial independence in Federalist Paper Number 78:

> Whoever attentively considers the different departments of power must perceive, that, in a government in which they are separated from each other, the judiciary, from the nature of its functions, will always be the least dangerous to the political rights of the Constitution; because it will be least in a capacity to annoy or injure them. [. . .]
>
> This simple view of the matter suggests several important consequences. It proves incontestably, that the judiciary is beyond comparison the weakest of the three departments of power; that it can never attack with success either of the other two; and that all possible care is requisite to enable it to defend itself against their attacks. [. . .] And it proves, in the last place [. . .] that as, from the natural feebleness of the judiciary, it is in continual jeopardy of being overpowered, awed, or influenced by its co-ordinate branches; and that as nothing can contribute so much to its firmness and independence as permanency in office, this quality may therefore be justly regarded as an indispensable ingredient in its constitution, and, in a great measure, as the citadel of the public justice and the public security.

THE FEDERALIST NO. 78 at 457-466 (ALEXANDER HAMILTON) (Mentor, 1961).

Hamilton also wrote in Federalist Paper Number 79 that: "Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support [. . .] In the general course of human nature, a power over a man's subsistence amounts to a power over his will." *Id*. No. 79, at 400.

It was the view of Alexander Hamilton, shared by others such as James Madison, that the judiciary should be separate and co-equal to the other branches of government, which led to the incorporation of the "No-Diminution Clause" in Article III, Section 1 of the the United States

4

Constitution. Essentially, it places the judiciary members' remuneration, once established, out of reach from the other two branches of government for purposes of reduction. This provides a guarantee that judicial power will be exercised objectively, without seeking favor or for fear of retribution from the executive or legislative branch. (*See DePascale v. State of New Jersey*, 211 N.J. 40, 49-50 (2012)).

This approach to judicial independence and a *bona fide* separation of powers between the three branches of government was made a part of Puerto Rico's trajectory when Congress allowed the Puerto Rican people to draft their own Constitution and "organize a government pursuant to a Constitution of their own adoption." 48 USC §731b (2018). Congress enacted Public Law 600 in 1950 to allow for this, and the constitution that would arise under it had to "provide a republican form of government" and "include a bill of rights", with all other matters to be agreed upon in a constitutional convention. *See* 48 USC §731b-e (2018). The document that eventually was born from this, the Puerto Rico Constitution, created the Commonwealth of Puerto Rico, whose three-branched government resounded of American founding principles. *See Puerto Rico v. Sánchez Valle,* 136 S.Ct. 1863, at 1869 (2016).

In *Booth v. United States,* 291 U.S. 339 (1934), the United States Supreme Court was faced with the question of whether a judge who was retiring under section 260 of the Judicial Code continued to have a vested interest in his compensation sufficient to merit protection under the Compensation Clause. The Court found that in situations such as that, the judge "does not relinquish his office" and as such, his salary must remain intact. It is clear that "compensation" was construed in this case to include pensions, and that upon retirement, a judge is entitled to receive a pension commensurate with what had been fixed by law prior to his retirement.

On May 3 , 2017 the *Asociación Puertorriqueña de la Judicatura, Inc*. filed a Complaint for Declaratory Judgment closely followed by an Amended Complaint for Declaratory Judgment against the Financial Oversight and Management Board for Puerto Rico, et als, Civil No. 17-

5

1580. In that filing, the APJ, from the outset of the Oversight Board's actions with respect to judicial pensions, insisted that this was an outright violation of *Brau Linares v. E.L.A.,* 190 D.P.R. 315 (2014) as well as the United States and Puerto Rico Constitutions because it purports to reduce judicial pensions. *Brau Linares, Id.* held that the judicial independence concept in the "non-reduction clauses" applies to judicial pensions. APJ has consistently claimed that the Oversight Board has acted *ultra vires* with respect to its efforts to diminish the pensions of the Puerto Rico Judiciary.

Puerto Rico's public pension systems are composed of the Employees' Retirement System (ERS), Teachers Retirement System (TRS), and Judiciary Retirement System (JRS). The JRS is completely different from the TRS and the ERS because of its origin in the principle of separation of powers, emanating from the United States and Puerto Rico Constitutions, Public Laws 600 and 447. By seeking the reduction of judicial pensions, the Oversight Board is directly violating Federal and State law. These actions by the Board constitute a direct violation of the Congressional requirement of a republican form of government in Puerto Rico because they violate the principle of judicial independence and separation of powers.

After all, in *Sánchez Valle*, the United States Supreme Court stated that all sovereignty of Puerto Rico derives from the Federal Constitution. When determining whether Puerto Rico and the United States could prosecute one defendant for the same conduct, the United States Supreme Court held that they could not, "because the oldest roots of Puerto Rico's power to prosecute lie in federal soil." *Sánchez Valle,* 136 S.Ct at 1868 (2016). The Court explained that "Puerto Rico today has a distinctive, indeed exceptional, status as a self-governing Commonwealth. But our approach is historical. And if we go back as far as our doctrine demands – to the 'ultimate source' of Puerto Rico's prosecutorial power [. . .] we once again discover the U.S. Congress." *Id.* at 1874.

6

> "Put simply, Congress conferred the authority to create the Puerto Rico Constitution, which in turn confers the authority to bring criminal charges. That makes Congress the original source of power for Puerto Rico's prosecutors- as it is for the Federal Government's. ***The island's Constitution, significant though it is, does not break the chain***." *Id*. at 1875-1876. (Emphasis added.)

Logically, the Puerto Rico Constitution, a creature of Congress, emanates from the mandates of the United States Constitution, and embodies the mandates and rights established by the U.S. Constitution. The Oversight Board's effort to dimmish judicial compensation dramatically oversteps federal law as well; specifically, Public Laws 600 and 447, and thus contravenes Congressional authority that provided for separation of powers and judicial independence in Puerto Rico.

Additionally, the Puerto Rico Constitution recognizes administrative autonomy and independence of the Judicial Branch, as does the United States' Constitution. *Brau Linares v. E.L.A.,* 109 D.P.R. 315, 345 (2014).) Like the United States Constitution from which its power derives, under the Territorial Clause, the Puerto Rico Constitution also recognizes that the salaries of appointed judges are to be set by special law and not reduced during the length of the term of their appointment (*See* P.R. CONST. Art. VI, § 11), that no law shall reduce the salaries of a public officer after their election or appointment (*See* P.R. CONST. Art. VI, § 11), and that the Legislature will establish a mandatory retirement plan for judiciary members upon reaching the age of seventy (70) (*See* P.R. CONST. Art. VI, § 10).

The Puerto Rico Supreme Court in *Brau, Linares v. ELA,* 190 D.P.R. 315 (2014) held that judicial compensation includes pensions, and that neither salaries nor pensions may be reduced retroactively.

The path of the law, starting from the adoption of the United States Constitution, leads us directly to the requirement of judicial independence for the Judiciary in Puerto Rico through this

7

chain of events. To paraphrase the U.S. Supreme Court in *Sánchez Valle*, **the power of the Oversight Board, significant though it is, does not break the chain**.

**WHEREFORE**, for all these reasons, the APJ objects to any diminution in judicial compensation be it by monthly reductions in pensions, COLA reductions or the freeze.

**CERTIFICATE OF SERVICE: I HEREBY CERTIFY** that on this day, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF Filing System which will send notification to the parties and subscribed users.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of November 2021.

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street; 3rd Floor
San Juan, P.R. 00912
Tel: (787) 641-4545; Fax: (787) 641-4544
david.indiano@indianowilliams.com
jeffrey.williams@indianowilliams.com

by: *s/ David C. Indiano*
DAVID C. INDIANO
USDC-PR NO. 200601