UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**INFORMATIVE MOTION REGARDING MODIFICATIONS TO PENSION RESERVE TRUST FUNDING MECHANISM**

To the Honorable United States District Judge Laura Taylor Swain:

Governor Pedro R. Pierluisi and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and collectively with the Governor, the "Government"), through undersigned counsel, hereby state as follows:[2]

1. On November 3, 2021, the Oversight Board filed the Eighth Amended Plan of Adjustment [ECF No. 19053] (the "Plan"), which substantially altered the mechanism for funding the Pension Reserve Trust. Specifically, the Plan now provides that the "Base Contribution" made

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747), and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

by the Government to the Pension Reserve Trust will be made for ten years (instead of eight years), and will be calculated as 50% (instead of 25%) of the Projected Fiscal Plan Surplus, thus more than doubling the fixed obligation. Importantly, the term "Projected Fiscal Plan Surplus" is the surplus projected in the Fiscal Plan certified as of the Effective Date (the "<u>Effective Date Certified Fiscal Plan</u>"), meaning this provision creates a fixed obligation for ten years based on projections, whether or not such projections ever manifest actual surplus.

2. To understand the significant economic impact and potential risks created by this amendment—which was made without meaningful notice to the Government—it is necessary to recount the background and purpose of this provision. The original construct for funding the Pension Reserve Trust was agreed to with the Retiree Committee in June 2019. At that time, it was not expected that many (if any) years would project surpluses in excess of $1.75 billion, and thus the Base Contribution would be fixed at $175 million. However, the Plan also required a variable contribution to the Pension Reserve Trust if any actual budgetary surplus in a given year was realized. In that scenario, all but $200 million of the actual surplus is required to be contributed to the Pension Reserve Trust. This made sense and was a fiscally responsible way to protect pensions (which is an extremely high priority for the Government); there would always be a substantial fixed contribution to the Pension Reserve Trust (no less than $175 million) regardless of economic performance, and if there was actual surplus outperformance in a given year, the Government would contribute virtually all of the surplus to the Trust for the purpose of making pension payments in future years if actual revenue was insufficient to cover pension payments.

3. Now, two key things have changed. *First*, the Board increased the fixed Base Contribution from 25% to 50% of the Projected Fiscal Plan Surplus if such surplus is in excess of $1.75 billion. *Second*, the Effective Date Certified Fiscal Plan is now unknown, but if projected

2

surpluses are greater than in the current certified fiscal plan, that may create risk for the Government. To illustrate, if the Projected Fiscal Plan Surplus in fiscal year 2022 is $2 billion (after payment of the CVIs), 50% of that forecast will create a fixed obligation to make contributions into the Pension Reserve Trust, whether or not such projections are met.

4. This construct creates risk for the Commonwealth if the projections are not met and there is no actual surplus. Although the Board has agreed to revise the definition of "Projected Fiscal Plan Surplus" to provide certain downside risk if the failure to meet projections is due to (i) a natural disaster, or (ii) a failure to receive projected federal funds,[3] the Board has refused to include other reasonable protections, such as for acts of war, changes in tax policy, or a material economic downturn. Moreover, the Board has failed to justify the need for this change since the prior Plan's construct guaranteed that all of the actually realized surplus (less $200 million) would be contributed to the Pension Reserve Trust.

5. Since the inception of these Title III cases, the Government has consistently stood up to the Oversight Board to protect retirees and the Government continues to support substantial pension funding. But this unilateral change may make it harder for the Government to protect against near term economic disruption and to invest in the Island's future.

6. While the Board may have the power to propose these conditions under the Plan, it does not make its decision wise or sound. Regrettably, this appears to be an attempt by the Board to cast its long shadow over the Government long after the Board is gone. This is not the intention nor design of PROMESA, which is premised on putting the Commonwealth in a financially stable position and allowing the elected Government to regain control of its finances after the Board is terminated pursuant to PROMESA section 209. This is yet another effect of the second class

---

[3] *See* Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al [ECF Mo. 19117] at § 1.413 (definition of Projected Fiscal Plan Surplus).

3

treatment Puerto Rico continues to endure. The Government urges the Oversight Board to reconsider its position on this critical issue.

Dated: November 12, 2021
      San Juan, Puerto Rico

Respectfully submitted,

| **O'MELVENY & MYERS LLP** | **MARINI PIETRANTONI MUÑIZ LLC** |
|---|---|
| */s/ John J. Rapisardi* | */s/ Luis C. Marini-Biaggi* |
| John J. Rapisardi | Luis C. Marini-Biaggi |
| Maria J. DiConza | USDC No. 222301 |
| (Admitted *Pro Hac Vice*) | Carolina Velaz-Rivero |
| 7 Times Square | USDC No. 300913 |
| New York, NY 10036 | 250 Ponce de León Ave., Suite 900 |
| Telephone: (212) 326-2000 | San Juan, Puerto Rico 00918 |
| Facsimile: (212) 326-2061 | Tel: (787) 705-2171 |
| Email: jrapisardi@omm.com | Fax: (787) 936-7494 |
|       mdiconza@omm.com | |
| | *Attorneys for the Hon. Pedro R. Pierluisi and the Puerto Rico Fiscal Agency and Financial Advisory Authority* |
| -and- | |
| Peter Friedman | |
| (Admitted *Pro Hac Vice*) | |
| 1625 Eye Street, NW | |
| Washington, DC 20006 | |
| Telephone: (202) 383-5300 | |
| Facsimile: (202) 383-5414 | |
| Email: pfriedman@omm.com | |

*Attorneys for the Hon. Pedro R. Pierluisi and the Puerto Rico Fiscal Agency and Financial Advisory Authority*