UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF No. 18880** |

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO
TO MOTION TO COMPEL COMPLIANCE WITH PROPOSED STIPULATION**

To the Honorable United States District Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth" or "Debtor")[2] respectfully submits this objection (the "Objection") to the *Motion to Compel Compliance with Proposed Stipulation* [ECF No. 18880] (the "Motion") filed by José Miguel Malvet Santiago ("Movant"). In support of the Objection, the Commonwealth respectfully states as follows:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Building Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS). (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtor's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized Department of Justice to file this Response on behalf of the Debtor.

1

**BACKGROUND**

1. On August 17, 2017, the Court entered an order amending the existing notice, case management, and administrative procedures for these Title III cases to, among other things, implement a protocol (the "Lift Stay Protocol") for filing motions for relief from Title III Stay [ECF No. 1065]. Under the Lift Stay Protocol, a movant is required to (a) send notice to counsel to the Oversight Board and AAFAF to advise them of the movant's intent to seek relief from the Title III Stay at least fifteen (15) business days prior to filing a motion seeking such relief (the "Lift Stay Notice Period") and (b) meet and confer with the Debtors during the Lift Stay Notice Period.

2. On July 25, 2018, Movant sent to counsel for the Oversight Board and AAFAF a notice (the "Lift Stay Notice") pursuant to Lift Stay Protocol seeking relief from the automatic stay[3] to proceed with the case captioned *José Miguel Malvet v. Administración de Corrección,* Case No. 2007-07-0025 (the "Prepetition Action"),[4] pending before the Commission for Appeals of Public Service ("CASP").

3. Pursuant to the Lift Stay Protocol, the Commonwealth and Movant met and conferred and reached an agreement in principle to modify the Title III Stay solely to allow the Prepetition Action to proceed to final judgment and/or resolution before CASP. On or around December 19, 2018, the Commonwealth circulated to Movant a draft of a stipulation (the "Draft Stipulation") memorializing the terms and conditions of such agreement in principle for Movant's review and comment, which was subject to further review and revision, and final signoff, by the

---

[3] The automatic stay provisions of Bankruptcy Code sections 362(a) and 922(a) are made applicable to the Title III Case by PROMESA Section 301(a) (the "Title III Stay").

[4] Although Movant sought reinstatement to his position when he commenced the Prepetition Action on October 10, 2007, the Commonwealth understands that Movant is only seeking monetary relief in the Prepetition Action at this time.

Commonwealth and the Oversight Board, as the Commonwealth's representative in its Title III case.[5]

4. ***After approximately <u>five</u> months***, on May 17, 2019, Movant's counsel sent an undated, unilaterally executed copy of the Draft Stipulation to the Commonwealth, which was never executed by the Commonwealth.

5. ***<u>Two years later</u>***, on May 17, 2021, Movant communicated with the Commonwealth to inquire about the status of the Draft Stipulation.

6. On October 28, 2021, Movant filed the Motion, alleging that "[a]s of the date of this motion, the Commonwealth has failed to act upon the terms of its own proposed agreement and Movant's case before the administrative forum continues to be stayed." *See Motion* at 2.

### OBJECTION

**A. No Binding, Enforceable Stipulation Modifying the Title III Stay Exists Between the Commonwealth and Movant.**

7. Following Movant's delay, the Draft Stipulation was never executed by the Commonwealth. It is basic hornbook contract law that the formation of an agreement requires the consent of the contracting parties. *Citibank Global Mkts., Inc. v. Rodríguez Santana*, 573 F.3d 17, 24 (1st Cir. 2009) (a contract "has three elements: consent, a definite (and legal) object, and consideration."); *see also Muñiz–Olivari v. Stiefel Lab., Inc.,* 496 F.3d 29, 35 (1st Cir.2007); P.R. Laws Ann., tit. 31, § 3391.[6] An unaccepted offer standing by itself does not satisfy the consent

---

[5] The Lift Stay Protocol also requires the Debtor file an omnibus motion every sixty (60) days, seeking approval of any modifications to the Title III Stay.

[6] On June 1, 2020, former Governor Wanda Vázquez-Garced signed into law Act No. 55-2020, enacting the new Civil Code of Puerto Rico and repealing the former Civil Code of 1930, as amended (the "<u>Previous Code</u>"). However, at the time of that the Commonwealth and Movant discussed the terms and provisions of the Draft Stipulation, the Previous Code was the controlling legislation for this matter.

3

requirement. *See González Rodríguez v. Fumero*, 38 P.R.R. 497, 504, 507–08 (1928); P.R. Laws Ann. tit. 31, § 3401.

8. Here, the Draft Stipulation was circulated to Movant on or around December 19, 2018 for Movant's review, which was subject to review and revision, and final signoff, by the Commonwealth and the Oversight Board. The Commonwealth did not receive a response from Movant regarding the Draft Stipulation until ***approximately <u>five</u> (5) months*** later, when Movant sent an undated, unilaterally executed copy of the Draft Stipulation to the Commonwealth. The Draft Stipulation was never executed by the Commonwealth, nor did the Oversight Board provide final authorization to enter into the Draft Stipulation and seek approval of the modification to the Title III Stay in the Draft Stipulation pursuant to the Lift Stay Protocol.[7] Accordingly, no binding, enforceable stipulation exists for Movant to compel compliance.

9. Even if the delivery of the Draft Stipulation to Movant on or around December 19, 2018 could be construed as an unconditional offer to enter into the Draft Stipulation, which it cannot, such offer expired before Movant returned a signed copy of the Draft Stipulation after an unreasonable five (5) month delay.[8] Where an offer does not provide a deadline for acceptance, such offer expires after a reasonable time. *See Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 853 (1st Cir. 1987); *see also* Restatement (Second) of Contracts § 41 cmt. b (1981) ("In the absence of a contrary indication, just as acceptance may be made in any manner and by any medium which is reasonable in the circumstances (§ 30), so it may be made at any time which is reasonable in the circumstances. The circumstances to be considered have a wide range: they

---

[7] Lift Stay Protocol ¶ III.R.

[8] Furthermore, the Draft Stipulation provides at Paragraph 11 that it "would be effective and enforceable immediately *upon execution*." (emphasis added). As previously noted, the Commonwealth never executed the Draft Stipulation.

include the nature of the proposed contract, the purposes of the parties, the course of dealing between them, and any relevant usages of trade. In general, the question is what time would be thought satisfactory to the offeror by a reasonable man in the position of the offeree…"). A five (5) month delay in responding to the delivery of the Draft Stipulation is unreasonable under the circumstances of these Title III cases, since, for example, the Lift Stay Protocol allows creditors to move for stay relief before the Court if its lift stay notice is unresolved within the 15-day Lift Stay Notice Period.

### B. Movants' Unreasonable Delay Warrants Denial of the Motion.

10. Even if the Draft Stipulation were binding and enforceable—which it is not, Movant's unreasonable *two year* delay in seeking to prosecute the Prepetition Action after the Title III Stay was allegedly modified warrants denial of the Motion.[9] The premise for modifying the Title III Stay with respect to ordinary course civil actions pursuant to the Lift Stay Protocol is to alleviate the strain on the Title III cases, and avoid costly claim litigation in the Title III court on matters already underway in other fora.[10] Here, no such efficiencies would be realized in recommencing the Prepetition Action after it was initially stayed over four years ago when these Title III cases were commenced. Given the Oversight Board is currently seeking confirmation of the Title III plan of adjustment for the Commonwealth, and, if confirmed, will move expeditiously to consummate the plan of adjustment, Movant's claims can be resolved pursuant to the claims

---

[9] *See, e.g.*, *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 960, (2017) ("Laches is 'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'") (quoting *Petrella v. Metro-GoldwynMayer, Inc.*, 134 S. Ct. 1962, 1968 (2014)); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F. 2d. 907, 911 (1st Cir. 1989); *Laboy v. Firstbank P.R. (In re Laboy)*, 2010 Bankr. LEXIS 345, *24 (citing *Iglesias v. Mut. Life Ins. Co. N.Y.*, 156 F. 3d 237, 243 (1st Cir. 1998)).

[10] *See, e.g.*, *Debtors' Twenty-Third Omnibus Motion for Approval of Modifications to the Automatic Stay* [ECF No. 18148, at ¶ 17].

resolution process in these Title III cases and contemplated procedures pursuant to the Commonwealth's plan of adjustment.

11. Thus, the Motion should be denied based on the Movant's unreasonable delay and consequential prejudice to the Commonwealth.

**WHEREFORE**, the Commonwealth respectfully requests that the Court enter an order denying the Motion.

[*Remainder of page intentionally left blank*]

**CERTIFICATE OF SERVICE**

    We hereby certify that, on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case

    **RESPECTFULLY SUBMITTED,** on this 12th day of November 2021.

**DOMINGO EMANUELLI HERNÁNDEZ**
Secretary of Justice

*/s/ Susana I. Peñagarícano-Brown*
**SUSANA I. PEÑAGARÍCANO-BROWN**
USDC No. 219907
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2900 Ext. 1404
spenagaricano@justicia.pr.gov
*Attorney for the Commonwealth of Puerto Rico*