## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OBJECTION TO *URGENT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO FOR ORDER (I) APPROVING FORM OF NOTICE OF RULINGS THE OVERSIGHT BOARD REQUESTS AT CONFIRMATION HEARING REGARDING ACT 53-2021* AT DOCKET NO. 19002 AND REQUEST TO BE HEARD.

*[Space left blank intentionally.]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................ 1

**BACKGROUND** .................................................................................................. 8

**ARGUMENT** ..................................................................................................... 15

    I.The Legislative intent of "zero cuts", means no cuts at all to pensions and does not authorize further freezes, the elimination of the cost of living adjustments, or any other cut. ................................................................................................... 15

    II.The FOMB's interpretation of Act 53-2021 clashes with Section 314 of PROMESA and prevents confirmation of the Plan of Adjustment. ........................................ 22

    III.The Plan of Adjustment nor the Confirmation Order are the enabling legislation according to Section 314 of PROMESA. .............................................................. 28

**RELIEF REQUESTED** ........................................................................................ 30

**RESERVATION OF RIGHTS** .............................................................................. 30

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Armstrong v. United States*,
   182 U.S. 243, 244 (1901) ........................................................................... 2

*Asociación de Maestros de PR v. Sistema de Retiro para Maestros de PR*,
   190 DPR 854 (2014)................................................................................... 10

*Centro de Periodismo Investigativo v. Fin. & Mgmt. Bd. for P.R.*,
   2018 U.S. Dist. LEXIS 77262, at 21. ........................................................ 26

*Dada v. Mukasey*,
   128 S. Ct. 2307, 2317, 171 L. Ed. 2d 178 (2008)...................................... 15

*Dooley v. United States*,
   182 U.S. 222, 236 (1901) ............................................................................. 2

*Downes v. Bidwell*,
   182 U.S. 244 (1901) ..................................................................................... 2

*English v. Gen. Elec. Co.*,
   496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990) ...................... 26

*Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*,
   140 S. Ct. 1649 (2020)................................................................................. 3

*Goetze v. United States*,
   182 U.S. 221, 221-22 (1901) ....................................................................... 2

*Gozlon-Peretz v. United States*,
   498 U.S. 395, 407, 111 S. Ct. 840, 112 L. Ed. 2d 919 (1991) .................. 15

*Grant's Dairy—Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.*,
   232 F.3d 8, 14 (1st Cir. 2000)..................................................................... 25

*Huus v. New York & Porto Rico S.S. Co.*,
   182 U.S. 392, 397 (1901) ............................................................................. 2

*In re Weinstein*,
   272 F.3d 39, 48 (1st Cir. 2001)................................................................... 20

*K Mart Corp. v. Cartier, Inc.*,
   486 U.S. 281, 324 (1988) ........................................................................... 22

*King v. St. Vincent's Hosp.*,
    502 U.S. 215, 221, 112 S. Ct. 570, 116 L. Ed. 2d 578 (1991) ................................. 15

*McCuin v. Sec'y of Health & Hum. Servs.*,
    817 F.2d 161, 168 (1st Cir. 1987).......................................................................... 20

*Rice v. Santa Fe, Corp.*,
    331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947) ..................................... 26

*Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt.
    Bd. for P.R.)*,
    330 F. Supp. 3d 685, 701 (D.P.R. 2018) .......................................................... 5, 27

*Tobin v. Fed. Exp. Corp.*,
    775 F.3d 448, 452 (1st Cir. 2014)........................................................................... 25

*United States v. Bauzó Santiago*,
    867 F.3d 13, 18 (1st Cir. 2017)............................................................................... 20

**Constitutional Provisions**

P.R. Const. Art. I, § 1 ................................................................................................. 2
P.R. Const. Art. II, § 6. ............................................................................................... 9
P.R. Const. Art. III, § 1; Art. IV, § 1 ......................................................................... 2
U.S. Const. Art. IV ..................................................................................................... 1
U.S. Const. art. VI, cl. 2 ........................................................................................... 25

**Statutes**

11 U.S.C. § 1109 ...................................................................................................... 10

Act 106-2017 ............................................................................................................ 10

Act 134-1960, *Act to Authorize the Discount of Fees of Associations, Federations, or Puerto
    Rico Government Employees Unions*. 3 LPRA § 702, *et seq.*.................................... 9

Act 160-2013, *Act of the Retirement System for Teachers of the Commonwealth of Puerto Rico*,
    18 LPRA § 393, *et seq.* ......................................................................................... 10

Act 53-2021, *Ending Puerto Rico's Bankruptcy Act* ................................................. 3
    Statement of Motives Statement of Motives, Act 53-2021 ............................. 5, 16, 21
    Art. 104 ............................................................................................... 6, 17, 21
    Art. 603 ............................................................................................... 6, 17, 21
    Art. 605 .............................................................................................. 3, 6, 18, 22

Act 91-2004, *Organic Law for the Retirement System for Teachers of the Commonwealth of
    Puerto Rico*. 18 LPRA § 391, *et seq.*...................................................................... 10

Pub. L. 81-600, 64 Stat. 319, *An Act to provide for the organization of a constitutional government by the people of Puerto Rico* ................................................................... 1

Puerto Rico, Oversight, Management and Economic Stability Act,
48 U.S.C. § 2101, *et seq.* ........................................................................................ 1
§2141(c)(3), (d)(2), (e)(2) ........................................................................................ 3
§2142 ........................................................................................................................ 2
§2144(a)(1), (5) ........................................................................................................ 2
§2144(c)(3)(A) .......................................................................................................... 2
§2144(c)(3)(B) .......................................................................................................... 2
§2147 ........................................................................................................................ 2
§2174(b)(5) ....................................................................................................... passim
§2174(b)(6) ................................................................................................. 7, 23, 30
§2194(m)(4) ............................................................................................................. 1

**Other Authorities**

2021 Fiscal Plan for Puerto Rico, p.63. Available at:
https://drive.google.com/file/d/1reetKnfKsa1uR-A0u9l3FM6PfGamHCrx/view ................... 26

Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 63–65 . 22

Letter from Governor Pierluisi to Mr. David A. Skeel dated October 27, 2021, and Mr. Skeel's
response letter. Available at: https://ntc-prod-public-pdfs.s3.us-east-
2.amazonaws.com/prlO6QfmbjNsIkdaDdj8s-UHCk4.pdf ....................................................... 18

Pierluisi:  *"There is no ambiance to reform the pension systems"* Noticel. November 9, 2021.
Available at: https://www.noticel.com/gobierno/ahora/legislatura/top-
stories/20211109/pierluisi-no-hay-ambiente-para-reformar-sistemas-de-pensiones/. ............. 19

Rivera Clemente, Yaritza. *In Debate the Position of the Fiscal Control Board on Law 53*. El
Vocero. November 3, 2021 ................................................................................................. 19

U.S. Supreme Court's Oral Argument on *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv.,
LLC*, 140 S. Ct. 1649 (2020), Oct. 15th, 2019, at pgs. 22-23. Available at:
https://www.supremecourt.gov/oral_arguments/argument_transcripts/2019/18-1334_ljgm.pdf 3

*Zero.* Oxford Learner's Dictionaries. Available at:
https://www.oxfordlearnersdictionaries.com/definition/english/zero_1?q=zero. .................... 22

COME NOW, Federación de Maestros de Puerto Rico, Inc., Grupo Magisterial Educadores(as) por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc., and Unión Nacional de Educadores y Trabajadores de la Educación, Inc., (collectively as "Teacher's Associations"), as a creditors and parties in interest, by and through the undersigned counsel, hereby submit this objection (the "Objection") to the *Urgent Motion of The Financial Oversight And Management Board for Puerto Rico for Order (I) Approving Form of Notice of Rulings The Oversight Board Requests at Confirmation Hearing Regarding Act 53-2021* (ECF No. 19002) ("Urgent Motion"), and in support thereof, respectfully state as follows:

## PRELIMINARY STATEMENT

1.  The Commonwealth of Puerto Rico was established in 1952 through Pub. L. 81-600, ("Act 600"), based upon the principles of self-government.[2] However, in 2016 Puerto Rico's self-government was destroyed after Congress' enactment of the Puerto Rico, Oversight, Management and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, *et seq.,* with the purpose of restructuring the island's outstanding debt. *See* 48 U.S.C. §2194(m)(4). PROMESA was enacted by Congress pursuant to its plenary powers under Article IV of the U.S. Constitution, which states that "Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." U.S. Const. Art. IV, §2, cl. 1. This constitutional provision was further interpreted by the Supreme Court in the racist and infamous *Insular Cases*, which established a distinction between incorporated and unincorporated territories

---

[2] Pub. L. 81-600, 64 Stat. 319, *An Act to provide for the organization of a constitutional government by the people of Puerto Rico*. Act 600 established that "[w]hereas Congress of the United States by a series of enactments has progressively recognized the right of self-government of the people of Puerto Rico; and [w]hereas under the terms of these congressional enactments an increasingly large measure of self-government has been achieved." Federal Relations Act, Pub. L. 81-600.

based on race. *See Downes v. Bidwell*, 182 U.S. 244, 287 (1901).[3] Through PROMESA, Congress imposed upon Puerto Rico and its residents a Financial Oversight and Management Board ("FOMB" or "Oversight Board"), composed of seven non voted members, and it is in charge of handling all matters relating to Puerto Rico's fiscal policy and the debt restructuring process. However, the FOMB is not accountable to the People of Puerto Rico; Puerto Ricans did not have a say on who were going to compose the members of the FOMB and neither the policies nor determinations taken by such entity.

2.   The Constitution of the Commonwealth of Puerto Rico establishes that the political power emanates from the People, P.R. Const. Art. I, § 1, and that the Governor and the members of the legislative assembly –which are the two branches in charge of managing Puerto Rico's financial affairs– shall be selected by direct vote at each election. P.R. Const. Art. III, § 1; Art. IV, § 1. However, the powers vested upon the FOMB by Congress' enactment of PROMESA, override these constitutional powers of the Governor and the members of the legislature of Puerto Rico.

3.   For instance, the FOMB has veto power over the Governor's and Legislature's adoption of budgets, 48 U.S.C. § 2142, authorization of bonds, *Id*. §2147, and legislation. *Id*. §2144(a)(1), (5). Moreover, it has the power to rescind legislative and executive actions, *Id*. §2144(c)(3)(A), and may review, and in its sole discretion, rescind laws that alters priorities of creditors. *Id*. §2144(c)(3)(B). Furthermore, the FOMB has the power to approve fiscal plans proposed by the Commonwealth, and disapprove them, in its sole discretion, if it determines that such Fiscal Plan does not comply with the requirements provided by Section 201(b) of PROMESA, and thus, issue its own fiscal plan –to which the Governor and legislature may not object. *Id*. §2141(c)(3), (d)(2),

---

[3] *See also, De Lima v. Bidwell*, 182 U.S. 1, 200 (1901); *Goetze v. United States*, 182 U.S. 221, 221-22 (1901); *Dooley v. United States*, 182 U.S. 222, 236 (1901); *Armstrong v. United States*, 182 U.S. 243, 244 (1901); *Downes v. Bidwell*, 182 U.S. 244, 287 (1901); *Huus v. New York & Porto Rico S.S. Co.,* 182 U.S. 392, 397 (1901).

(e)(2). Moreover, the FOMB, through its legal counsel, expressed in the Supreme Court's oral arguments in *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649 (2020), that "what the Board is actually charged with doing is acting in the shoes of the government of Puerto Rico [...]."[4]

4.   However, the only power that is reserved for the People of Puerto Rico through the Legislative Assembly is found in Section 314(b)(5) of PROMESA. Section 314(b)(5) establishes that the Court shall confirm the plan of adjustment if "any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval." 48 U.S.C. § 2174(b)(5). In other words, a plan of adjustment is not confirmable without the enabling legislation as enacted by the Government of Puerto Rico.

5.   On October 26, 2021, the Governor of the Commonwealth of Puerto Rico signed into law Act 53-2021, known as the *Ending Puerto Rico's Bankruptcy Act,* ("Act 53-2021"), and it is the only enabling law that the Legislative Assembly has enacted in regard to the Commonwealth's Plan of Adjustment. Act 53-2021 established the public policy of the Government of Puerto Rico of "zero cuts" to pensions. More importantly, the Act conditions its effectiveness cognizant of that public policy of "zero cuts" as it states that "it shall cease to be in effect and any transactions undertaken pursuant to it if reductions to the pensions of government employees are decreed or implemented under the Debt Adjustment Plan or the restructuring of the debt." *See* Act 53-2021, Art. 605. As such, Act 53-2021 authorizes the issuance of the New GO Bonds and CVIs conditioned to compliance with the "zero cuts" to pensions public policy. Now, the FOMB aims

---

[4] Expressions of Donald B. Verilli (Counsel for the Oversight Board), U.S. Supreme Court's Oral Argument on *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649 (2020), Oct. 15th, 2019, at pgs. 22-23. Available at:   https://www.supremecourt.gov/oral_arguments/argument_transcripts/2019/18-1334_ljgm.pdf   (Last   visit: November 9, 2021).

to persuade this Court into entering a ruling based on the most convenient interpretation of Act 53-2021 in the Oversight Board's view, but actually disregarding the Legislative Assembly's intent. This Court should deny the Oversight Board's request as this will lead to the obliteration of the only power reserved to the Government of Puerto Rico pursuant to PROMESA's Section 314(b)(5).

6. The Oversight Board requests this Court to interpret the text of Act 53-2021 in a way that would still allow cuts and freezes to pension benefits, despite the Government of Puerto Rico's strict public policy on "zero cuts" to pensions. As stated in the Urgent Motion, "[t]he Oversight Board believes the plain meaning of Act 53-2021 is the new debt's authorization is conditioned **only** on the Plan's elimination of the Monthly Benefit Modification, and not on anything else including modifying the Plan to delete (i) the elimination of cost of living adjustments… and (ii) freezes of pension benefits accruing after the Plan's Effective Date…". Urgent Motion ¶6. (Emphasis added).

7. The FOMB's interpretation purportedly allows it to impose through the Plan of Adjustment, cuts and modifications to the Teachers Retirement System ("<u>TRS</u>") and the Judiciary Retirement System ("<u>JRS</u>"), that the Legislature has not expressly (nor implicitly) authorized through Act 53-2021, or any other legislation for that matter.

8. The Oversight Board's proposed interpretation of Act 53-2021 is far from the clear text of the Act and leads to an evident absurdity that even contradicts PROMESA, particularly Section 314 (b)(5). The implications of the FOMB's interpretation of Act 53-2021 renders the legislative power to enact the enabling legislation for the Plan of Adjustment useless. This contravenes what this Court has already called the "awkward power-sharing agreement" that PROMESA created, "in which the Oversight Board has significant tools to shape Puerto Rico's financial operations,

4

but it has "not been given power to affirmatively legislate." *Rosselló Nevares v. Fin. Oversight &
Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 685, 701 (D.P.R.
2018). Therefore, not only the FOMB's interpretation is inapposite, but it also aggravates the
precarious political and democratic condition of the People of Puerto Rico under PROMESA. As
it will be further explained, the FOMB's interpretation of Act 53-2021 does not allow for the Plan
of Adjustment to be confirmed.

9.    Moreover, even when there can be no contention that Act 53-2021 conditions the new
debt's authorization to the elimination of the Monthly Benefit Modification, that does not mean
that the Oversight Board is authorized to implement, through the Plan of Adjustment, further cuts
and freezes to the pensions without explicit legislative authorization to do so. With its request for
a ruling on the interpretation of Act 53-2021, the Oversight Board goes too far. From the text of
Act 53-2021, it cannot even be assumed that the statute contains some kind of explicit -or implicit-
authorization from the Legislative Assembly to allow the elimination of the COLAs, other Freezes
or modify the TRS or the JRS in any other way. It would be illogical to interpret the Act as if the
Legislative Assembly only intended to condition the issuance of new debt to the elimination of the
Monthly Benefit Modification and still allow the FOMB to implement a Plan of Adjustment that
imposes other cuts and freezes to pensions. Therefore, the FOMB's requested ruling on the
interpretation of Act 53-2021 is totally inapt and should be denied. The legislative history speaks
to the contrary and the text of Act 53-2021 itself shows a clear public policy "of the highest
priority" to "avoid cuts to the pensions of 100% of the retirees"; those that have already suffered
cuts in their pensions due to previous enactment of statutes. Statement of Motives Statement of
Motives, Act 53-2021. *See* Urgent Motion Exhibit, at 61. Moreover, different articles in Act 53-
2021 constantly reference all retirees and all pensions, and in no way allow any other cuts or

freezes. Thus, the logical interpretation of the statute is that the Legislative Assembly expressly intended for **no cuts whatsoever** to the pensions, including the Monthly Benefit Modification, as it is stated specifically in Article 104 of the Act, but **also, any cuts of pensions** to government employees, as stated in Articles 603 and 605. With such unequivocal wording, this Court cannot grant the Oversight Board's request for an interpretation of the statute that falls far from the text of the law.

10. The FOMB alleges that "[i]f Act 53-2021's authorization of new debt requires the Plan to be modified to eliminate the [freezes of pension benefits accruing after the Plan's Effective Date] and/or the elimination of [cost of living adjustments] as a condition to issue the New Bonds and CVIs, the Plan, if revised, would no longer be consistent with the Fiscal Plan and would not be confirmable." Urgent Motion, ¶ 8. However, this interpretation is inapposite and also leads to the same result since the enabling legislation that could enforce the provisions of the Plan of Adjustment upon the TRS and the JRS is inexistent. Simply put, the Legislative Assembly has not legislated towards any cuts or modifications to the mentioned retirement systems. Act 53-2021 does not authorize any cuts to these retirement systems, nor does any other legislation.

11. Interpreting Act 53-2021 as proposed by the Oversight Board in its Urgent Motion produces a contradiction that leads to conclude that the Plan of Adjustment could not be confirmed due to lack of the enabling legislation required by Section 314(b)(5), 48 U.S.C. § 2174(b)(5). Section 314(b)(5) of PROMESA requires the Legislature to pass the enabling legislation of the plan of adjustment and, more importantly, the FOMB cannot legislate through the Plan nor the confirmation order. Enabling legislation means "any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan". *See* 48 U.S.C. § 2174(b)(5). The concept of "enabling legislation" necessarily includes all new legislation and/or

6

amendments to the statutes that are required to implement the provisions of the Plan of Adjustment. Even if this Court interprets that the authorization to issue the bonds pursuant to Act 53-2021 is only conditioned to the elimination of the Monthly Benefit Modification as requested by the FOMB, said interpretation cannot be extended to mean a legislative authorization in Act 53-2021 to allow "(i) the elimination of cost of living adjustments… and (ii) freezes of pension benefits accruing after the Plan's Effective Date…" for the TRS and the JRS. Urgent Motion ¶6. Accordingly, if the Plan of Adjustment requires modifying the retirement systems of government employees, the legislature must affirmatively legislate to impose those reforms. Therefore, the interpretation that the FOMB is seeking in the Urgent Motion is futile.

12. Furthermore, the FOMB already admitted that if the Court does not rule on the Oversight Board's purported interpretation of Act 53-2021, then the plan is not feasible. Urgent Motion, ¶ 8. As such, the Plan cannot be confirmed as it contravenes Section 314(b)(6) that requires the Plan to be feasible for confirmation. 48 U.S.C. § 2174(b)(6).

13. Moreover, the Plan of Adjustment states several Commonwealth statutes that are supposedly preempted by PROMESA. However, the preemption argument cannot be invoked to override a prerogative that PROMESA grants exclusively to the Legislature. Preemption only displaces local legislation, but there is still a need to enact new legislation that establishes the provisions necessary to implement the Plan of Adjustment, including those that attempt to modify in any way the TRS and the JRS. The Plan of Adjustment and/or the Fiscal Plan in and of themselves cannot serve as the *legislation* required to confirm the Plan and Section 314(b)(5) only grants the power to enact the enabling legislation to the Government of Puerto Rico.

14. The FOMB cannot seek the legislative approval stipulated in Section 314 of PROMESA through a confirmation order or the preemption doctrine. When a state law is

7

preempted, it is no longer valid or enforceable. But this only means that the federal statute rules upon the regulated circumstances. PROMESA does not provide for how any modification to the pension systems will be executed. The Plan of Adjustment only contains sparce general points on this issue that in no way serve as the *legislation* necessary to implement the Plan. Therefore, and for the sake of the argument, even if it is conceded that the provisions of the Plan of Adjustment cause several laws to be preempted by PROMESA, the Plan itself is not the enabling legislation necessary for the Plan to be confirmed. Even if the Plan of Adjustment is amended to include a more detailed text for the amendments, cuts, and reforms to the TRS and the JRS it would still be insufficient and would clearly violate the "awkward power sharing agreement" created by Section 314 of PROMESA. Therefore, the plan is not confirmable, and the interpretation of Act 53-2021 that the Oversight Board seeks is unavailing.

15. For the reasons stated herein, the Oversight Board's Urgent Motion requesting rulings at the Confirmation Hearing regarding Act 53-2021 should be denied and the confirmation of the Plan of Adjustment should also be denied. The Teacher's Associations also request to present oral argument on these matters.

## **BACKGROUND**

16. Federación de Maestros de Puerto Rico, Inc. ("FMPR") is a teachers organization comprised by over 2,200 active and retired teachers of the Department of Education of the Commonwealth of Puerto Rico. It is recognized by the Department of Labor as a *bona fide* organization under Act 134 of 1960, as amended,[5] and the constitutional right to free association

---

[5] Act 134-1960, *Act to Authorize the Discount of Fees of Associations, Federations, or Puerto Rico Government Employees Unions.* 3 LPRA § 702, *et seq.*

and organization.[6] It was registered before the Department of State of Puerto Rico as a not-for-profit organization on November 9, 1966, with registration number 4280.

17. Grupo Magisterial Educadores(as) por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc. ("EDUCAMOS"), is a *bona fide* organization, created under Act 134 of 1960 and the constitutional right to free association and organization, with the purpose of promoting the social, economic, and union welfare within its members and all the workers of education system as well. As educators, they promote the pedagogical and union training of teachers, as well as the strengthening of the Puerto Rican public education system as an essential foundation towards the achievement of a more just, equitable and truly democratic society. The organization was registered with the Department of State of the Government of Puerto Rico on September 30, 2010, with registration number 61472. EDUCAMOS represents approximately 600 teachers, and it also has a Retirees Chapter with 125 members.

18. Unión Nacional de Educadores y Trabajadores de la Educación, Inc. ("UNETE"), is a *bona fide* union organization that represents teachers and other active teaching workers (counselors, social workers, librarians, etc.) that are permanent or temporary workers of the Commonwealth of Puerto Rico. The organization was founded on March 9, 2008, with registration number 54628. It represents approximately 1,000 members within its General Chapter and the Retirees Chapter.

19. The members of the Teacher's Associations are employees of the Commonwealth of Puerto Rico or its instrumentalities. The Teacher's Associations also represent retirees. Their members will be directly affected by the Commonwealth's determinations in these Title III proceedings. Moreover, the members of the Teacher's Associations are participants of the

---

[6] P.R. Const. Art. II, § 6.

Teacher's Retirement System ("TRS") of the Commonwealth, thus the appearing labor associations and retirees are parties in interest and creditors of the Commonwealth that by the confirmation of the Plan of Adjustment, and any other related ruling, will be severely affected for decades to come.[7]

20. The protection of pensions of more than 20,000 teachers was addressed seven (7) years ago by the Supreme Court of Puerto Rico that held that teachers had a constitutional right to their retirement benefits and that the Government had "severely impaired the contractual rights of thousands of teachers without even making certain that this would advance the interest of ensuring the solvency of the TRS." *See Asociación de Maestros de PR v. Sistema de Retiro para Maestros de PR*, 190 DPR 854 (2014).[8] Later, with the enactment of Act 106-2017, the Puerto Rico Supreme Court's decision was reiterated and reforms where established to the TRS, among the other government retirement systems.[9]

21. Freezing teachers' pensions, establishing the concept of defined contributions and increasing the retirement age to 63 years, as proposed in the Plan of Adjustment, has the effect of applying a cut between 35% to 40% to future teachers' pensions. That is, if a teacher retires today, her pension can reach $1,875 per month (without social security, without health insurance, without Christmas bonus, without medication bonus). If the Plan of Adjustments is confirmed and implemented, that same teacher tomorrow would have a pension of $1,000 per month (a monthly

---

[7] *See,* 11 U.S.C. § 1109 – Right to be heard.

(a) […]

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

[8] The *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 19053) filed by the Oversight Board states that "[n]othing in this term sheet or the Plan of Adjustment shall impact the precedential effect of this decision." *See* Eighth Amended Plan of Adjustment, Exhibit II, at p. F-17. (ECF No. 19053).

[9] Act 91-2004, *Organic Law for the Retirement System for Teachers of the Commonwealth of Puerto Rico*. 18 LPRA § 391, *et seq*. Act 91-2004 was repealed by Act 160-2013, *Act of the Retirement System for Teachers of the Commonwealth of Puerto Rico,* 18 LPRA § 393, *et seq.*

cut of $875), with the aggravation that upon retiring at age 63 the cost of living will be much higher than it is now. Simply put, the Plan of Adjustment and the cuts and freezes that the Oversight Board tries to impose upon teachers in Puerto Rico will only bring them to poverty.

22. Moreover, the pension reforms established in the Plan of Adjustment will destabilize Puerto Rico's education system because it will cause a stampede of thousands of teachers who are already considering retiring, to resign immediately and emigrate. This leaves a Department of Education without experienced teachers and unprepared to offer classes. The Plan of Adjustment is simply not in the best interest of teachers -creditors in these proceedings- and the People of Puerto Rico.

23. On July 30th, 2021, the FOMB filed the *Seventh Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico, et al.,* (ECF No. 17627 ("Seventh Amended Plan") and the *Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 17628), which include reform measures that will impact the TRS.

24. On September 27, 2021, Teacher's Associations members, among other teachers in Puerto Rico, voted against ratifying and did not authorize to enter into a Plan Support Agreement between the *Asociación de Maestros de Puerto Rico*, along with the American Federation of Teachers and the Oversight Board.[10] The teachers so voted in the face of multiple public statements by Puerto Rico's political leaders that pension rights were sacred and that the Government of Puerto Rico would not enforce freezes or other reductions in government employees' pension rights. This is not the first time that teachers in Puerto Rico vote against an agreement that threatens their pensions and other benefits. In 2019, the Teacher's Associations members voted against the

---

[10] A total of 17,336 voted in the proceedings; 11,277 teachers voted against the agreement and 6,059 voted in favor. In other words, 35% voted in favor and 65% voted against the agreement.

Plan Support Agreement.[11] Moreover, the Teacher's Associations members also voted in the solicitation procedures *against* the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al*, dated July 30, 2021 (ECF No. 17627). According to the Declaration submitted by the Oversight Board on November 3, 2021, 74.29% of the Retired TRS Participants and 79.44% of the Active TRS Participants voted rejecting the Plan. *See Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on Seventh Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico, et, al.* (ECF No. 19056, at 15-16).

25. On October 26, 2021, the Governor of the Commonwealth of Puerto Rico signed into law Act 53-2021, known as the *Ending Puerto Rico's Bankruptcy Act,* after it had been adopted by both houses of the Puerto Rico legislature. Act 53-2021 provides conditional authorization for the issuance of the New GO Bonds and CVIs pursuant to the Plan of Adjustment. Act 53-2021 authorizes the issuance of the New GO Bonds and CVIs "subject to the FOMB filing an amended Plan for confirmation by the Title III Court that eliminates the Monthly Benefit Modification." Act 53-2021, Art. 104. Furthermore, the "act shall immediately cease to be in effect and any transactions undertaken pursuant to it if reductions to the pensions of government employees are decreed or implemented under the Debt Adjustment Plan or the restructuring of the debt. The continued effect of this act is contingent upon cero (sic) cuts to pensions." Act 53-2021, Art. 605.

26. On November 1st, 2021, the FOMB filed the *Urgent Motion of The Financial Oversight and Management Board for Puerto Rico for Order (I) Approving Form of Notice of Rulings the Oversight Board Requests at Confirmation Hearing Regarding Act 53-2021 and (II) Scheduling Objection Deadline* (ECF No. 19002) ("Urgent Motion").

---

[11] A total of 7,375 voted in the proceedings. Voting ended on June 14, 2019, with 4,108 teachers voting against the agreement and 3,267 in favor. In other words, 44% voted in favor and 56% voted against the agreement.

27. In the Urgent Motion, the FOMB stated that it "believes the plain meaning of Act 53-2021 is [that] the new debt's authorization is conditioned only on the Plan's elimination of the Monthly Benefit Modification, and not on anything else including modifying the Plan to delete (i) the elimination of cost of living adjustments ("COLAs") (see Plan §§ 55.1–55.9) and (ii) freezes of pension benefits accruing after the Plan's Effective Date (the "Freeze") (see Plan §§ 55.8, 55.9, Exs. E and F-1)." Urgent Motion ¶ 6.

28. The FOMB further stated that "[w]hile the Oversight Board believes Article 104 and other provisions of Act 53-2021 make clear that 'cero cuts to pensions' means no Monthly Benefit Modification, but does not require removal of either the Freeze or the elimination of COLAs from the Plan, if the meaning is not definitively resolved for the present and future, the Commonwealth will be subjected to untenable risks involving billions of dollars." Urgent Motion ¶ 7.

29. Also, in the Urgent Motion, the Oversight Board sets out three main reasons that give weight to its request for this Court to issue a ruling regarding the interpretation of Act 53-2021. First, the Urgent Motion states that "[i]f Act 53-2021's authorization of new debt requires the Plan to be modified to eliminate the Freeze and/or the elimination of COLAs as a condition to issuing the New Bonds and CVIs, the Plan, **if revised, would no longer be consistent with the Fiscal Plan and would not be confirmable**." Urgent Motion ¶ 8. (Emphasis added). Second, that "**the Plan could not be implemented** if Act 53-2021 requires elimination of the Freeze and allowance of COLAs because the Oversight Board is not making those changes and Act 53-2021 would not authorize the new debt under those conditions." *Id*. Third, that "if the Freeze and elimination of COLAs were removed from the Plan, **it would no longer be feasible** because of the additional risk and obligations piled onto the Commonwealth." *Id*.

13

30. On November 2nd, 2021, the Court entered the *Order (I) Approving Form of Notice of Rulings The Oversight Board Requests at Confirmation Hearing Regarding Act 53-2021 And (II) Scheduling Objection Deadline*. (ECF No. 19017). The Court stated that "[a]ny objections or responses to the Oversight Board's requested rulings shall … be filed with the Court, together with proof of service, and served on the [] parties so as to be actually received no later than 5:00 p.m. AST on November 12, 2021."

31. On November 3rd, 2021, the Oversight Board filed the *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 19053) ("Eighth Plan of Adjustment"), which reflects the enactment of Act 53-2021 and further comments and/or objections from and negotiations with various parties. The Eighth Plan of Adjustment also incorporates proposed reform measures that will impact the TRS, such as freezes in pension benefits and the elimination of the cost of living adjustments and other benefits.[12]

32. Pursuant to this Court's *Order* and the Scheduling Objection deadline, the Teacher's Associations submit the following Objection.[13] Moreover, on November 12, 2021, the Court issued an *Order Directing Supplemental Briefing and Oral Argument on Issues Pertaining to the Confirmation Hearing,* ECF No. 19171, establishing the schedule for oral arguments on various matters, including the requested rulings regarding Act 53-2021 and preemption. Pursuant to such *Order,* the appearing Teacher's Association inform their intent to participate in oral argument.

---

[12] On November 7th, 2021 the Oversight Board filed the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 19114).

[13] To the extent that the FOMB filed an Eighth Amended Plan of Adjustment based on Act 53-2021 after the Court had set the briefing schedule for objections to the confirmation of the Plan, this motion should be considered as an objection to the confirmation of the latest version of the Plan of Adjustment on the basis of lack of enabling legislation to enforce the provisions of the Plan upon the TRS and its members' benefits pursuant to Section 314(b)(5) of PROMESA and also on the basis of feasibility pursuant to Section 314(b)(6).

## ARGUMENT

**I.    The Legislative intent of "zero cuts", means no cuts at all to pensions and does not authorize further freezes, the elimination of the cost of living adjustments, or any other cut.**

33. The Oversight Board seeks rulings at the Confirmation Hearing that the authorization to issue new debt in Act 53-2021 is conditioned **only** on the elimination of the Monthly Benefit Modification and does not impact the freezes of pension benefits accruing after the Plan's Effective Date ("Freezes") and the elimination of cost of living adjustments ("COLAs"), (Freezes and COLAs collectively may be referred as "TRS Benefit Modification").

34. The issue before the Court then, is a matter of statutory interpretation where "the cardinal rule [is] that a statute is to be read as a whole," *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S. Ct. 570, 116 L. Ed. 2d 578 (1991). As "the meaning of statutory language, plain or not, depends on context," *id.*, courts "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Dada v. Mukasey*, 128 S. Ct. 2307, 2317, 171 L. Ed. 2d 178 (2008) (quoting *Gozlon-Peretz v. United States*, 498 U.S. 395, 407, 111 S. Ct. 840, 112 L. Ed. 2d 919 (1991)) (internal quotation marks omitted).

35. There is no doubt that when enacting Act 53-2021 the legislative intent has always been to protect the pensions of teachers and judges. For instance, the first version of the bill, H.B. 1003, that was submitted for the vote of the House of Representatives on September 27, 2021, actually considered cuts of 8.5% to those pensioners that receive more than $2,000.00 per month. [14]

---

[14] The Statement of Motives of the first version of H.B. 1003 explained that the Plan of Adjustment stated that the cuts to pensions applied to those pensioners that received more than $1,500.00 per month but that the Legislative Assembly was proposing the Oversight Board to restore 100% of the pensions with resources from the General Fund and for the cuts to apply to pensions of more than $2,000.00 instead of the $1,500.00 established in the Plan.

However, the bill was rejected by the Legislative Assembly and it suffered substantial amendments that ending with a clear public policy of "zero cuts".[15]

36. The text of Act 53-2021 as enacted, undoubtedly establishes a public policy of "zero cuts" which cannot be interpreted as some cuts are allowed and some not. The Statement of Motives, for example, clearly shows an intention to protect 100% of the retirees:

> Pursuant to this law, the Commonwealth supports the Plan, along with the public policies set forth in this Law which, subject to PROMESA's mandate to restore fiscal responsibility in Puerto Rico and the Oversight Board's fiscal plan and budget powers under PROMESA, includes **zero cuts to pensions of current retirees and current accrued benefits of active public employees and a desire to promote the welfare of the people of Puerto Rico:**
>
> 1. **Protect the pensions of our retirees. This objective is intended to <u>avoid cuts to the pensions of 100% of the retirees.</u>** To achieve this objective, a specific clause on this issue is provided in this Law. (Emphasis added). Statement of Motives, Act 53-2021. *See* Urgent Motion Exhibit, at 58-59.

37. When enacting Act 53-2021, the Legislature was conscious that the retirees have already suffered cuts in their pensions and that such vulnerable sector of the population needed to be protected.

> However, **this Legislature has not lost sight of the fact that our retirees, unlike other groups of creditors, have already suffered cuts in their pensions** as a result of the enactment of statutes that, to prevent the insolvency of the government retirement systems, reduced pension benefits, increased the amount of employee contributions, and raised the retirement age for the pension plans of each of the three major government retirement systems. **To this end, this legislation is conditioned on the FOMB filing an amended Plan for confirmation by the Title III Court that eliminates the contemplated cuts to the monthly pension payments to currently retired employees of the government of the Commonwealth and current public employees who have accrued pension benefits.** In addition, this legislation provides additional funding for the municipalities, and separately for the University of Puerto Rico. (Emphasis added). Statement of Motives, Act 53-2021. *See* Urgent Motion Exhibit, at 61.

---

[15] *See* Legislative History of H.B. 1003, available at the Office of Legislative Services website, https://sutra.oslpr.org/osl/esutra/MedidaReg.aspx?rid=139840. (Last visited November 9, 2021)

38. Specifically, the Legislature recognized the nature of the Government's commitment with *all* retirees and the protection of their pension systems as an "unwavering commitment":

> ARTICLE 104 - PUBLIC POLICY; PROTECTION OF THE PENSIONS OF THE RETIREES OF THE GOVERNMENT OF THE COMMONWEALTH.
>
> The Government of the Commonwealth of Puerto Rico hereby declares that it is **public policy of the highest priority to protect the accrued pensions of its public servants, who are one of the most important groups in our society. As an essential part of this public policy, the protection of the pensions <u>of all our retirees</u> is an important and unwavering commitment.** Therefore, with regard to the accrued pensions of government employees, it is hereby provided as follows: The Legislative Assembly authorizes the issuance of the General Obligation Bonds and CVIs subject to the FOMB filing an amended Plan for confirmation by the Title III Court that eliminates the Monthly Benefit Modification. (Emphasis added) Act 53-2021, Art. 104. *See* Urgent Motion Exhibit, at 68.

39. More enlightening is Article 603 that states in its relevant part the following:

> […] It is the **express and unequivocal will of this Legislative Assembly** that the Restructuring Transactions and their respective authorizations in Articles 103, 201 and 301 **<u>are not enforced</u>, if the suspensive condition to avoid <u>any cut of pensions</u> to government employees <u>in the Adjustment Plan</u> or the provisions of Article 104 of this Law are left without effect, invalidated or decreed unconstitutional.** (Emphasis added) Act 53-2021, Art. 603. *See* Urgent Motion Exhibit, at 88.

40. Article 603 leads to the inevitable conclusion that the Legislative Assembly aimed to protect the pensions of government employees from *any cut,* not just the Monthly Benefit Modification. This is so because Article 603 mandates that the restructuring transactions authorized in the Act cannot be enforced if the suspensive condition to avoid "*any cut of pensions*" in the Plan of Adjustment *or* Article 104 (which refers to the Monthly Benefit Modification) are left without effect, invalidated or decreed unconstitutional.

41. Moreover, Article 605 also states the legislative intent to not allow any cuts to pensions of government employees and reiterates such public policy "for the sake of clarity":

> ARTICLE 605.- EFFECTIVENESS.

This Law will take effect immediately after its enactment, except for Chapter 5 of this Law, which will take effect on the Date of Effectiveness. **The effectiveness of this Law is conditioned to the FOMB filing an amended Plan for confirmation by the Title III Court that eliminates the Monthly Benefit Modification as defined in the Plan. For the sake of clarity, this act shall immediately cease to be in effect and any transactions undertaken pursuant to it if reductions to the pensions of government employees are decreed or implemented under the Debt Adjustment Plan or the restructuring of the debt. The continued effect of this act is contingent upon cero cuts to pensions.** (Emphasis added) Act 53-2021, Art. 605. *See* Urgent Motion Exhibit, at 89.

42. The day after the enactment of Act 53-2017, Governor Pierluisi issued a letter to Mr. David A. Skeel, Jr., Chairman of the Oversight Board, in which Governor Pierluisi squarely states the following:

> **With respect to the proposed freeze** of the defined benefit plans for Puerto Rico's teachers and judges, **this is an issue separate from Act 53-2021. To be clear, Act 53-2021 does not implement the freeze nor prevents a freeze from occurring;** the issue of any freeze will be addressed in connection with already filed objections to the Plan. (Emphasis added).[16]

43. As for this, the Oversight Board in fact agreed with Governor Pierluisi's position on Act 53-2021 by stating in Mr. Skeel's letter in response dated October 29, 2021 that:

> **The Oversight Board Agrees with your assessment of the Act.** As you note, the freeze 'is an issue separate from Act 53-2021' as **the Act 'does not implement the freeze** nor prevents the freeze from occurring'. It is based on that assessment that on November 8, 2021 the Oversight Board is willing to proceed with the confirmation hearing to request confirmation of the 7th Amended Plan of Adjustment (the "Plan").[17] (Emphasis added).

44. As such, the Oversight Board has already admitted that the issue of the proposed freeze is *separate* from Act 53-2021 and that "the Act does not implement the freeze". Thus, it only follows that Act 53-2021 conditioned the issuance of the bonds to "zero cuts" on the teachers' and judges' pensions and the law does not authorize freezes or further cuts, such as the elimination of

---

[16] *See* Letter from Governor Pierluisi to Mr. David A. Skeel dated October 27, 2021, and Mr. Skeel's response letter. Available at: https://ntc-prod-public-pdfs.s3.us-east-2.amazonaws.com/prlO6QfmbjNsIkdaDdj8s-UHCk4.pdf. (Last visited November 9, 2021).
[17] *Id.*

the COLAs. In other words, that issue has not been legislated. Consequently, the Plan of Adjustment lacks the enabling legislation that Section 314(b)(5) of PROMESA requires and the Plan is not confirmable, nor can any pension system reform can without legislation to that effect.

45. Moreover, to the Legislative Assembly it is clear that Act 53-2021 does not allow any cuts to the TRS as part of the public policy of "zero cuts" and that the reforms to the retirement system have to be addressed with separate legislation. As to this, the President of the House of Representatives, Hon. Rafael Hernández, has stated to the press that:

> With great respect and deference, I support the determination of both the judiciary and the teachers to continue their lawsuit in court. We reaffirm our commitment to resolve the situation of teachers and judges **through legislation when they are willing to sit with us in a responsible manner**. They requested, first - by direct voting in a consultation - not to modify their retirement system and then in the public hearings they requested that the (language included in the) project that included the solution to the teachers' retirement system be withdrawn for them to continue their litigation.[18]

46. Likewise, Governor Pierluisi's position on what Act 53-2021 really intended with "zero cuts" has been consistent after the Act's enactment. Recently the Governor stated that there is no ambiance in the legislature to reform the pension systems in Puerto Rico. Particularly, with respect to the TRS, Governor Pierluisi stated the following to the press:

> First of all, the so-called freeze, which [has been] a requirement of the [Oversight] Board for more than five years to reform the retirement systems for **teachers and judges**, the [Oversight] Board has included it in all fiscal plans certified to this day. So, it should come as no surprise that it is included in the Plan of Adjustment. **That has not been legislated**. **Despite the [Oversight] Board's request, the legislature has not given way. And it has never given way**, if something like this were to be done and it reaches the hands of the Legislative Assembly, I am sure that we will enter into a negotiation process, of conversations to be fair with the teachers and the judges. [Emphasis added, our translation].[19]

---

[18] Rivera Clemente, Yaritza. *In Debate the Position of the Fiscal Control Board on Law 53*. El Vocero. November 3, 2021. Available at: https://www.elvocero.com/gobierno/legislatura/en-debate-la-postura-de-la-junta-de-control-fiscal-sobre-la-ley-53/article_78119e14-3c53-11ec-bf0b-a3835ec86b0d.html. (Last visited November 9, 2021) (Our translation).

[19] Pierluisi: *"There is no ambiance to reform the pension systems"* Noticel. November 9, 2021. Available at: https://www.noticel.com/gobierno/ahora/legislatura/top-stories/20211109/pierluisi-no-hay-ambiente-para-reformar-sistemas-de-pensiones/. (Last visited November 9, 2021) (Our translation).

47. In matters considering statutory interpretation, the Court interprets the statute by "consider[ing] inferences to be drawn from the text of the statute, its historical context, its legislative history, and the underlying policies that animate its provisions." *In re Weinstein*, 272 F.3d 39, 48 (1st Cir. 2001).

48. The public policy of "zero cuts" that is established in Act 53-2021 was a matter of great public discussion. That is shown in the legislative history when the initial text of the bill considered cuts to pensions and then it suffered substantial amendments that resulted in an express rejection of *any cuts* to pensions. In that sense, this Court cannot just consider the text of one section of the Act, it has to take into account the entire text of the law, as well as the legislative history that gives context to the end result. *See United States v. Bauzó Santiago*, 867 F.3d 13, 18 (1st Cir. 2017) ("In considering the meaning of the text, we read a legislative enactment as a whole, 'since the meaning of statutory language, plain or not, depends on context.'"); *McCuin v. Sec'y of Health & Hum. Servs.,* 817 F.2d 161, 168 (1st Cir. 1987) ("In interpreting statutes and regulations, courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions.").

49. There is no contention that Act 53-2021 conditions the new debt's authorization to the elimination of the Monthly Benefit Modification. But the Oversight Board wants to go further. It cannot even be assumed that Act 53-2021 contains some kind of explicit -or implicit- authorization from the Legislative Assembly to allow the elimination of the COLAs, other Freezes or modify

---

Governor Pierluisi added that "[w]hat Law 53 demanded is that there be zero cuts to pensions and that has materialized. The Board has already eliminated the pension cuts. There is not a pensioner in Puerto Rico who is receiving a cut. So, the Board insists that these systems must be reformed. The Teachers Association objected. The Court Administration Office objected. Now the matter is in the hands of the court, in the hands of Judge Taylor Swain. **She is the one who is going to decide whether to proceed with this reform of the retirement systems without legislation.**" (Emphasis added). *Id.*

the TRS or the JRS in any other way. It would be illogical to interpret the Act as if the Legislative

Assembly only intended to condition the issuance of new debt to the elimination of the Monthly

Benefit Modification and still allow the FOMB to implement a Plan of Adjustment that imposes

other cuts and freezes to pensions. Therefore, the FOMB's requested ruling on the interpretation

of Act 53-2021 is totally inapt. The legislative history speaks to the contrary and the text of Act

53-2021 itself shows a clear public policy "of the highest priority" to "avoid cuts to the pensions

of 100% of the retirees"; those that have already suffered cuts in their pensions due to previous

enactment of statutes. Statement of Motives Statement of Motives, Act 53-2021. *See* Urgent

Motion Exhibit, at 61.

50. Different articles in Act 53-2021 reference all retirees and all pensions, and in no way

allow any other cuts or freezes. Article 104 of Act 53-2021 speaks in terms of the pensions of "all

our retires as an important and unwavering commitment." Act 53-2021, Art. 104. On the other

hand, Article 603 even establishes the "express and unequivocal will of [the] Legislative

Assembly" that the transactions set forth in the Act cannot be enforced if the suspensive condition

to "avoid **any cut of pensions to government employees in the Adjustment Plan <u>or</u>** [if] the

provisions of Article 104 of [the law] are left without effect, invalidated or decreed." (Emphasis

added) Act 53-2021, Art. 603. Thus, the logical interpretation of the statute is that the Legislative

Assembly expressly intended for **no cuts whatsoever** to the pensions, including the Monthly

Benefit Modification, as it is stated specifically in Article 104 of the Act, but **also, any cuts of**

**pensions** to government employees, as stated in Articles 603. With such unequivocal wording,

this Court cannot grant the Oversight Board's request for an interpretation of the statute that falls

far from the text of the law. Finally, in Article 605 the Legislative Assembly, again, "for the sake

of clarity", reiterated the public policy of "zero cuts" by stating that the act shall *immediately* cease

21

to be in effect (and any transaction undertaken pursuant to it) **if reductions to the pensions of government employees are decreed or implemented under the Debt Adjustment Plan.** Act 53-2021, Art. 605. Such text does not allow for an interpretation that through the Plan of Adjustment the FOMB can implement Freezes, the elimination of the COLAs, or any other modification to the TRS. Simply put, there is no legislation that allows for cuts or freezes to the TRS or the JRS, thus, the Oversight Board's request for a ruling on the interpretation of Act 53-2021 is without merit. The public expressions of the Governor of Puerto Rico and members of the Legislative Assembly as previously cited, add up to the intent of the Government of Puerto Rico to protect pensions from any cuts, zero cuts, through Act 53-2021.

51. Therefore, there is no controversy that Act 53-2021 rejects cuts to the Monthly Benefit Modification specifically; and there should be no controversy that Act 53-2021 does not authorize any other cut or freeze to pensions in general. The FOMB intends for this Court to enter a ruling that is beyond this Courts powers when interpreting a statute. Indeed, the FOMB's position ignores the "presumption against ineffectiveness." Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 63–65 ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored."); *see also*, *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 324 (1988) (Scalia, J., concurring in part and dissenting in part) ("[I]t is a venerable principle that a law will not be interpreted to produce absurd results.").

52. As shown here, the Legislative Assembly never intended to authorize any cuts to pensions. Zero means zero; nothing at all.[20]

## II. The FOMB's interpretation of Act 53-2021 clashes with Section 314 of PROMESA and prevents confirmation of the Plan of Adjustment.

---

[20] *Zero.* Oxford Learner's Dictionaries. Available at:
https://www.oxfordlearnersdictionaries.com/definition/english/zero_1?q=zero. (Last visited November 9, 2021).

53. In the Urgent Motion, the Oversight Board sets out three main reasons that give weight to its request for this Court to issue a ruling regarding the interpretation of Act 53-2021. These reasons relate to aspects of the confirmation of the Plan, its implementation, and its feasibility.

54. First, the Urgent Motion states that "[i]f Act 53-2021's authorization of new debt requires the Plan to be modified to eliminate the Freeze and/or the elimination of COLAs as a condition to issuing the New Bonds and CVIs, the Plan**, if revised, would no longer be consistent with the Fiscal Plan and would not be confirmable**." Urgent Motion ¶ 8. (Emphasis added). Second, "**the Plan could not be implemented** if Act 53-2021 requires elimination of the Freeze and allowance of COLAs because the Oversight Board is not making those changes and Act 53-2021 would not authorize the new debt under those conditions." *Id.* (Emphasis added). Third, "if the Freeze and elimination of COLAs were removed from the Plan**, it would no longer be feasible** because of the additional risk and obligations piled onto the Commonwealth." *Id.* (Emphasis added).

55. Section 314(b)(5) if PROMESA states that "[t]he Court shall confirm the plan if – (5) any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval." 48 USC § 2174(b)(5). Also, Section 314(b)(6) requires that "the plan be feasible and in the best interest of creditors…". 48 USC § 2174(b)(6). Thus, enabling legislation and feasibility are necessary requirements for the Plan to be confirmed and further implemented.

56. The FOMB's purported interpretation that Act 53-2021 only conditions the issuance of new debt to the elimination of the Monthly Benefit Modification (and not to further Freezes or the elimination of the COLAs) leads to the necessary conclusion that there is no legislation -enabling legislation- for the FOMB to implement such cuts through the Plan of Adjustment. Consequently,

the FOMB is not authorized to implement such freezes and cuts; then the Plan is not feasible either. Therefore, the Plan cannot be confirmed as the requirements of Sections 304(b)(5), (6) are not met.

57. The FOMB alleges that if the Plan has to be modified to eliminate the Freeze and/or the elimination of COLAs as a condition to issuing the new debt, then the Plan would not be confirmable, as it would not be consistent with the Fiscal Plan. However, even if this Court were to agree with the FOMB and rules that the issuance of new debt is *only* contingent on the elimination of the Monthly Benefit Modification, we arrive at the same result: there is still no enabling legislation that authorizes the FOMB to enforce and implement the provisions of the Plan that require further modifications, reforms and cuts to the TRS and the JRS. If the FOMB is not authorized through enabling legislation to implement those modifications, reforms and cuts, the Plan is not feasible. Thus, the Plan is still unconfirmable for lack of enabling legislation and feasibility.

58. The Oversight Board's interpretation of Act 53-2021 produces a contradiction that leads to conclude that the Plan of Adjustment could not be confirmed due to lack of enabling legislation pursuant to Section 314(b)(5), 48 U.S.C. § 2174(b)(5). Section 314 of PROMESA recognizes to the Government of Puerto Rico the exclusive power to enact the enabling legislation in order for the Plan of Adjustment to be confirmed. The Oversight Board does not have the power to legislate, nor trough the Plan of Adjustment or the Fiscal Plans. Neither can the confirmation order be a substitute to the enabling legislation.[21]

---

[21] Indeed, the Oversight Board is conscious that nor the Fiscal Plans or the Plan of Adjustment are legislative acts. *See* Oversight Board's arguments in the *Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)* at Docket No. 31 in Adv. Proc. 17-00229-LTS, p. 33, in the context of a Contract Clause claim. *See also,* the *Opinion and Order Granting in Part and Denying in Part the Motions to Dismiss Plaintiff's Amended Adversary Complaint Pursuant to Fed. R. Civ. P. 12 (b)(1) and (b)(6).* Docket No. 62. Adv. Proc. 17-00229-LTS. (Stating that Plaintiffs assertions are "insufficient to state plausibly a claim that the fiscal plans are state legislation and therefore subject to the Contracts Clause.").

Case:17-03283-LTS   Doc#:19180   Filed:11/12/21   Entered:11/12/21 16:07:40   Desc: Main
Document   Page 30 of 36

59. Enabling legislation means "any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan". *See* 48 U.S.C. § 2174(b)(5). The concept of "enabling legislation" necessarily includes all new legislation and/or amendments to the statutes that are required to implement the provisions of the Plan of Adjustment. Even if the this Court interprets that the authorization to issue the bonds pursuant to Act 53-2021 is only conditioned to the elimination of the Monthly Benefit Modification as requested by the FOMB, said interpretation cannot be extended to mean a legislative authorization in Act 53-2021 to allow "(i) the elimination of cost of living adjustments… and (ii) freezes of pension benefits accruing after the Plan's Effective Date…" for the TRS and the JRS. Urgent Motion ¶6. Accordingly, if the Plan of Adjustment requires modifying the retirement systems of government employees, the legislature must affirmatively legislate to impose those reforms. Therefore, the interpretation that the FOMB is seeking in the Urgent Motion is futile and does not resolve the issue that the Plan lacks enabling legislation and that it is unfeasible.

60. Furthermore, the Plan establishes a list of Commonwealth legislation that, according to the FOMB, is preempted by PROMESA. However, the preemption argument cannot be invoked to override the exclusive prerogative that PROMESA grants to the Legislature. Preemption only displaces local legislation, but there is still a need to enact new legislation that establishes the provisions necessary to implement the Plan of Adjustment, including those that attempt to modify in any way the TRS and the JRS.[22] The Plan of Adjustment and/or the Fiscal Plan in and of

---

[22] Federal preemption is rooted in the Supremacy Clause, which states that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2; *see* also *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008). Pursuant to the Supremacy Clause, Congress has the power to preempt state law. *See Tobin v. Fed. Exp. Corp*., 775 F.3d 448, 452 (1st Cir. 2014). When determining if federal law preempts state law, courts look to the intent of Congress. *Grant's Dairy—Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res*., 232 F.3d 8, 14 (1st Cir. 2000) ("Congressional intent is the touchstone of preemption analysis."). Federal law can preempt a state law in one of two ways: express preemption or implied preemption. *Grant's Dairy*, 232 F.3d at 15. "Express preemption occurs only when a federal statute explicitly confirms Congress's intention to preempt state law and defines the extent of that preclusion." *Id*.

themselves cannot serve as the *legislation* required to confirm the Plan and Section 314(b)(5) only grants the power to enact the enabling legislation to the Government of Puerto Rico.

61. Despite the vast powers that PROMESA vested on the FOMB to act upon Puerto Rico´s affairs, Congress did not grant the Oversight Board the power to legislate. Thus, although the FOMB determines in the Fiscal Plan distinctive measures that it considers necessary, legislative action is required to implement such measures. This is true for new legislation that is necessary under these proceedings, but also when repealing existing laws. For instance, Act 80-1976, which despite that the Commonwealth of Puerto Rico Fiscal Plan[23] established that it should be repealed, Puerto Rico's Legislature has not acted upon it, nor has the FOMB taken action to preempt or terminate it. This Court has already stated clearly the boundaries of this "awkward power-sharing agreement" that prevents the FOMB from usurping the powers delegated exclusively to the Legislature:

> While PROMESA grants the Oversight Board significant powers to achieve its purpose, the statute does not, subject to the provisions of Titles I and II, "impair the power" of Puerto Rico "to control, by legislation or otherwise . . .the exercise of the political or governmental powers." PROMESA § 303, 48 U.S.C. § 2163. Thus, PROMESA has created "an awkward power-sharing arrangement," in which the **Oversight Board has significant tools to shape Puerto Rico's financial operations, but it has "not been given power to affirmatively legislate."** *Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)* ("Rosselló Nevares"), 330 F. Supp. 3d 685, 701 (D.P.R. 2018). The provisions

---

Implied preemption can occur through field preemption or conflict preemption. Field preemption occurs when Congress creates "a federal regulatory scheme [] so pervasive as to warrant an inference that Congress did not intend the states to supplement it." *Id*. Conflict preemption has been found where "it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990) (internal quotation marks and citations omitted). Courts "start with the assumption that the historic police powers of the States [are] not to be superseded by a federal statute 'unless that [is] the clear and manifest purpose of Congress." *Grant's Dairy*, 232 F.3d at 14-15 (quoting *Rice v. Santa Fe, Corp*., 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947) (alterations in original). Courts have cautioned that "[p]reemption is strong medicine, not casually to be dispensed." *Id*. at 18 (citation omitted). *See Centro de Periodismo Investigativo v. Fin. & Mgmt. Bd. for P.R.*, 2018 U.S. Dist. LEXIS 77262, at 21.

[23] 2021 Fiscal Plan for Puerto Rico, p.63. Available at: https://drive.google.com/file/d/1reetKnfKsa1uR-A0u9l3FM6PfGamHCrx/view (Last visited November 9, 2021).

governing the formulation and confirmation of plans of adjustment under PROMESA further reflect this **division of responsibilities between the Oversight Board and the Commonwealth government**. "Only the Oversight Board" may file a plan of adjustment. PROMESA § 312(a), 48 U.S.C. § 2172(a). **Yet, the statute also provides that a plan of adjustment cannot be confirmed unless the Oversight Board obtains "legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan" or confirmation is "expressly conditioned on such approval." PROMESA § 314(b)(5), 48 U.S.C. § 2174(b)(5). This provision gives the Commonwealth government the ability to "obstruct implementation" or "complicate" the Oversight Board's efforts to produce a confirmable plan of adjustment.** *Rosselló Nevares*, 330 F. Supp. 3d at 701. The Oversight Board, on the other hand, has at its disposal its "budgetary tools," other statutory powers, and negotiations in seeking "to elicit any necessary buy-in from the elected officials and legislators." *Id.* Opinion and Order, at 6. Adv. Proc. 21-00072-LTS. Docket No. 78. (Emphasis added). *Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 685, 701 (D.P.R. 2018).

62. In this case, Act 53-2021 did not address the Freeze and the elimination of the COLAs -or any other cut or benefit modification for that matter-. However, previous versions of the bill H.B. 1003 established measures on these matters.[24] Therefore, there was a conscious legislative determination not to authorize legislation on these issues that were considered throughout the legislative process but excluded from the final wording of the statute. In other words, the Legislature determined not to legislate on the subject. Act 53-2021 did not -and never intended to- repeal the existing legislation that creates and implements the TRS and the JRS. Thus, that legislation is still valid and enforceable. This a clear indication that the enabling legislation for the Plan of Adjustment in regard to any modification or reform to the TRS or the JRS has not been enacted, pursuant to Section 314(b)(5) of PROMESA.

---

[24] *See* Legislative History of H.B. 1003, available at the Office of Legislative Services website, https://sutra.oslpr.org/osl/esutra/MedidaReg.aspx?rid=139840. (Last visited November 9, 2021).

63. The only clear and precise policy determination in Act 53-2021 is "zero cuts" to pensions, as stated in the Statement of Motives and throughout the Act. Any action of the FOMB to pursue the Freezes, elimination of the COLAs or any other cut or modification to the TRS, attempts against the public policy of zero cuts. This would also render inoperative the Legislative Assembly's power to legislate as recognized by Section 314(b)(5) of PROMESA. Therefore, the Oversight Board's purported interpretation of Act 53-2021 and its intention to implement cuts and freezes to pensions without legislation authorizing it, contradicts PROMESA and should be rejected by this Court.

## III. The Plan of Adjustment nor the Confirmation Order are the enabling legislation according to Section 314 of PROMESA.

64. EXHIBIT F-1 of the Eighth Plan of Adjustment regarding "Modifications to TRS Pension Benefits (Without AMPR PSA)" is comprised of a simple table with general statements about a future teacher's retirement plan that in no way should be considered as the enabling legislation required for the TRS Benefit Modification that the FOMB seeks. The table states:

### MODIFICATIONS FOR FREEZE OF TRS BENEFIT OBLIGATIONS

The following is a summary of modifications with respect to a freeze of pension benefits accrued under the TRS. The modifications listed herein modify the benefits provided by TRS as established in Act 218-1951 and all subsequent amendments through the Plan Effective Date (including but not limited to Act 91-2004, Act 160-2013, and Act 106-2017) and are to be adhered to in the administration of TRS benefits by the Retirement Board. Administrative procedures not addressed below (such as rounding procedures in determining ages and service of participants) should be consistent with past practices.

TRS members hired prior to August 1, 2014, are currently accruing benefits under a defined benefit ("DB") formula. To avoid creating future pension liabilities and to stabilize the system for the benefit of both taxpayers and future retirees, the TRS plan benefit accrual shall be frozen as of the Effective Date of the Plan (the "Freeze Date") Such freeze shall apply to all members of TRS, regardless of title or job classification. TRS members will retain the benefits they have accrued to date, provided that any future cost

28

of living adjustments, which are not accrued benefits and will not be accrued benefits as of the Effective Date. Future benefits shall be based on contributions and earnings in new segregated defined contribution ("DC") retirement accounts funded by employee contributions. As a result, employees will have the certainty that their contributions and investment returns will be safeguarded for the future, ensuring retirement security.[25]

65. A summary of modifications contained in the Plan of Adjustments cannot be considered as the enabling legislation required to confirm and further implement the Plan. This would violate the basics of "an awkward power-sharing agreement" between the FOMB and Puerto Rico's government. How is the Oversight Board going to implement those provisions of the Plan without the participation of the legislature? If Section 314(b)(5) recognizes the legislative power to enact the enabling legislation, how can the FOMB be able to circumvent it through the Plan of Adjustment or even with the Confirmation Order?

66. Furthermore, EXHIBIT F-1 of the Modified Eighth Plan of Adjustment regarding Modifications to TRS Pension Benefits (Without AMPR PSA) establishes a wish list of purported amendments to the current legislation that can only be properly addressed by the Legislature in order to be fully enforceable. As already admitted by the FOMB, "[i]f Act 53-2021's authorization of new debt requires the Plan to be modified to eliminate the Freeze and/or the elimination of COLAs as a condition to issuing the New Bonds and CVIs, the Plan, if revised, would no longer be consistent with the Fiscal Plan and would not be confirmable." Urgent Motion, ¶ 8.  A simple table with a wish list of changes to legislation is not the enabling legislation *per se* that Section 314(b)(5) of PROMESA requires for the Plan of Adjustment to be confirmed.

---

[25] Modified Eighth Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico, Et Al Doc#:19114 p.221-225. [Citations omitted].

**RELIEF REQUESTED**

WHEREFORE, pursuant to the arguments previously stated, it is respectfully requested from this Honorable Court to deny the Oversight Board's Urgent Motion requesting rulings at the Confirmation Hearing regarding Act 53-2021. The appearing Teacher's Associations also request this Honorable Court to deny the confirmation of the Eight Amended Plan of Adjustment pursuant to Sections 314(b)(5), (6) of PROMESA and request to be heard on these matters pursuant to this Court's *Order* (ECF No. 19171).

**RESERVATION OF RIGHTS**

To the extent that this Court confirms the Plan of Adjustment over this Objection, the appearing Teacher's Associations reserve the right to file proofs of claim on behalf of its members for any damages arising from the rejection of their contractual right to pension benefits and to fully litigate such claims to their conclusion. Moreover, on November 11, 2011, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) ("UAW") and Service Employees International Union ("SEIU") filed an *Objection of International Union, UAW and Service Employees International Union to Second Revised Confirmation Order*. (ECF No. 19162) ("UAW and SEIU Objection"). The appearing Teacher's Associations join the UAW and SEIU Objection and reserves all rights to object to the current Plan of Adjustment and proposed Confirmation Order, and future versions of both documents, for the arguments presented in the UAW and SEIU Objection and for the protection of the appearing parties due process of law rights.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this 12th day of November 2021.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and attorneys of record.

*/s/Rolando Emmanuelli-Jiménez*
Rolando Emmanuelli-Jiménez, Esq.
USDC: 214105

*/s/Jessica E. Méndez-Colberg*
Jessica E. Méndez-Colberg, Esq.
USDC: 302108

BUFETE EMMANUELLI, C.S.P.
P.O. Box 10779
Ponce, Puerto Rico 00732
Tel.: 787-848-0666
Fax: 1-787-841-1435
E-mail: rolando@emmanuelli.law
        jessica@emmanuelli.law

*Counsel to Federación de Maestros de Puerto Rico, Inc.;
Grupo Magisterial Educadores(as) por la Democracia,
Unidad, Cambio, Militancia y Organización Sindical,
Inc.; Unión Nacional de Educadores y Trabajadores de
la Educación, Inc.*