UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

        Debtors.

-------------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

**[Response to Docket # 19188, #19187, #19184, # 18447]**

**OBJECTION TO REVISED PROPOSED ORDER AND JUDGMENT CONFIRMING
MODIFIED EIGHTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE
COMMONWEALTH OF PUERTO RICO (THIS OBJECTION IS FILED BY
INDIVIDUAL GO AND PBA BONDHOLDER PETER C. HEIN)**

Dated:  November 15, 2021

## <u>TABLE OF CONTENTS</u>

I.    FOMB BEARS THE BURDEN OF PROVING EACH REQUIREMENT FOR CONFIRMATION IS MET ................................................................................................1

II.   OVERARCHING ISSUES ................................................................................................1

III.  SPECIFIC OBJECTIONS TO PROVISIONS IN THE REVISED PROPOSED ORDER AND JUDGMENT ................................................................................................3

IV.  OBJECTION TO WAIVER OF RULE 3020(E) AUTOMATIC STAY, WHICH FOMB STILL INCLUDES IN THE MODIFIED EIGHTH AMENDED PLAN ............14

V.   REQUEST FOR STAY OF CONSUMMATION UNTIL THERE IS A DETERMINATION BY THE IRS OF WHETHER THE NEW BONDS ARE TAX-EXEMPT ................................................................................................15

VI.  RESERVATION OF RIGHTS TO RESPOND TO ANY REVISIONS TO THE PLAN, AND CONTINUED ASSERTION OF PRIOR OBJECTIONS ..........................15

## TABLE OF ABBREVIATIONS AND CITATIONS

| | |
|---|---|
| # | Docket entries are referred to in the form of "#__" |
| "COFINA" | Puerto Rico Sales Tax Financing Corporation |
| "Commonwealth" | Commonwealth of Puerto Rico |
| GO bonds | General obligation bonds issued by the Commonwealth of Puerto Rico for which the full faith credit and taxing power of the Commonwealth is pledged |
| PBA bonds | Bonds issued by Puerto Rico Public Building Authority "secured by a pledge" of certain rentals and "further secured by the guaranty of the Commonwealth" |

Peter C. Hein, a GO and PBA bondholder who purchased in the 2009 through March 2012 time period, years before PROMESA was even in prospect, previously filed an objection to Confirmation (#18575) ("Objection"), and now files this Objection to Proposed Order and Judgment Confirming the Seventh Amended Plan (#18447).

The Court is respectfully referred to my Objection to Confirmation of Plan (#18575), as well as my response and objection to Debtor's Motion in Limine (#18181), and my objections to the Disclosure Statement (#16908, #16977 and #17536). I will not repeat here the objections I have previously made, which I continue to maintain.

## I.   FOMB BEARS THE BURDEN OF PROVING EACH REQUIREMENT FOR CONFIRMATION IS MET

As set forth in my Objection (#18575), FOMB admits that it "has the burden of demonstrating each of the provisions of PROMESA Section 314 are satisfied." #18471-page-3-of-4. Thus, no proposed paragraph may be included in the Order and Judgment unless FOMB has satisfied its burden of proof as to the matter in question.

## II.   OVERARCHING ISSUES

A specific paragraph-by-paragraph response to the Revised Proposed Order and Judgment follows in Section III. However, certain points bear emphasis at the outset:

- FOMB represented in its Reply that "The proposed confirmation order will be amended to remove the provision providing for the waiver of the Bankruptcy Rule 3020(e) stay." #18874-3-page-18-of-29. While paragraph 80 ("Waiver of Stay") in the original proposed Order and Judgment (#18447-page-67-of-77) has been omitted, Section 92.20 of the Modified Eighth Amended Plan ("Immediate Binding Effect") remains, providing that "notwithstanding Bankruptcy Rules 3020(e) … upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding…." My Objection had specifically objected to Section 92.20 of the Plan as well as any waiver of the Rule

3020(e) automatic stay in any order related to the Plan.  #18575-page-48-of-303.
Thus, Section 92.20 of the Plan must also be omitted.  *See* Point IV, below.

- Ms. Jaresko's testimony further highlights the overly-broad and improper reach of preemption being sought here, including FOMB's proposal to preempt provisions that provide part of the security for the New GO Bonds and that underlie the "first" and "second" source for payment of the New GO Bonds.  *See* Section III, below, response to ¶3.  The overly-broad and improper nature of the preemption sought is of particular concern since there was no clear and candid statement in the Disclosure Statement that FOMB would seek to preempt provisions of Puerto Rico law that underlie the "first" and "second" sources to pay the New GO Bonds.

- FOMB seeks to press ahead to consummate the Plan notwithstanding:

  o FOMB's application to the IRS for a private letter ruling or closing agreement as to the tax-exempt status of the New GO Bonds remains pending.

  o As Mr. Chepenik's testimony and Debtor Ex. 31 (#18797-1-PDF p.19, numbered p.18) highlights, FOMB seeks to have Debtors retain over $19.6 billion in cash (presumably an even greater amount now, in light of the cash reported in the most recent TSA report, #19164-1 p.5), including over $3 billion in reserves, yet confirm a Plan that relieves Debtors from payment of much of the debt that is its first priority to pay under its Constitution and laws.

  o Current audited financial statements have still not been produced (#18575-page-25-to-26-of-303), and the current cash position (*e.g.*, #19164-1 and #18758-6 p.11) would allow greater recoveries to the debt that has priority of payment under Puerto Rico's Constitution, even if one assumed Commonwealth should retain two-thirds of its current cash on hand (as per #18797-1-PDF p.19, numbered p.18).

  o Not only has financial reporting not been brought current, as Mr. Wolfe's testimony showed, basic structural reforms that would provide for prosperity,

2

growth and tens of billions of dollars in additional tax revenue have not been
implemented — despite being urged by FOMB, and others, for years.

  o  Mr. Santambrogia's testimony highlights that FOMB seeks to pay cash bonuses to
     public employees (with the prospect of more to come once Puerto Rico procures
     the sought-after releases).

  o  On the eve of confirmation, FOMB has now agreed to drop the modest reductions
     in monthly pension benefits for higher-benefit public employee retirees that had
     been part of earlier prior iterations of the Plan, including the version the Retail
     Classes were asked to vote on.  This change was coupled with FOMB also
     committing to accept new or greater spending.  These post-vote changes
     materially increase spending, over that in the current certified Fiscal Plan,
     impairing the Commonwealth's ability to ensure full payment of the New GO
     Bonds, given that deficits are projected in the fiscal plan even before these latest
     increases in spending.

• The bottom line:   The debt that is to be the first priority for payment under Puerto
  Rico's Constitution is being effectively repudiated (and significantly "haircut"), yet
  fundamental issues that Puerto Rico should address remain largely unaddressed (or
  are actually made worse).  The proposed revised order and judgment, that would
  allow this to happen, should be rejected.

## III.  SPECIFIC OBJECTIONS TO PROVISIONS IN THE REVISED PROPOSED ORDER AND JUDGMENT

I object generally to the entire revised proposed order and judgment.  Without limiting
my objections to the plan and any proposed order and judgment seeking to confirm the plan, I
note the following specific objections to specific aspects of the revised proposed order and
judgment.  The paragraphs that follow use the same paragraph numbers as are used in the revised
proposed order and judgment.  Although I do not comment on each and every paragraph in the
proposed order and judgment, in light of my overall position objecting to the proposed plan and

3

to the revised proposed order and judgment as a whole, my failure to specifically comment on any particular provision is not an acceptance of it, but rather reflects my desire to focus my comments on specific issues that go beyond my overarching objection to the proposed plan and, thus, my overarching objection to any proposed order and judgment confirming the plan.

Prior objections made in #18647 are included so the Court has all my objections to the proposed order and judgment in one place.

Note that I have attempted to update references to, and the discussions of, specific paragraphs in the proposed order and judgment and Plan to which #18647 referred.  In light of time constraints, however, (#19188 was filed at about 9 p.m. on Friday, November 12, 2021), it is possible that the paragraph or section references in #18647 may inadvertently not all be updated.

**Paragraph 1:**  Object for the reasons noted in #18575 and at the hearing.

**Paragraph 2:**  Object for the reasons noted in #18575 and at the hearing.

**Paragraph 3:**  I object generally to ¶¶3(A), 3(B), and 3(O), and to the following specifics as well:

   **a.**   I object to any provision preempting "Commonwealth good faith and credit pledge statutes" and statutes relating to "Commonwealth Guaranty – Public Building Authority Bonds" (listed in exhibit C, #19188-page-99-to-102-of-207). I also object to the preemption of any other statutes appropriating Commonwealth revenues for payment of Commonwealth General Obligation or Public Building Authority debt.  And I object to the overly-broad and inappropriate preemption language in paragraph 3(B) and elsewhere in the revised proposed order and judgment.

   **b.**   I object to the proposed language in "II.I." in Exhibit C that would preempt 21 L.P.R.A. §§5002 and 5004 (and any related provisions).  21 L.P.R.A. §5002 provides for a special tax of 1.03% on the appraised value of all personal and real property in Puerto Rico not exempted from taxes "for the amortization and

4

redemption of the general obligations of the Commonwealth." 21 L.P.R.A.

§5004(a) provides that the proceeds of the 1.03% of property tax imposed by

§5002 shall be deposited into a trust known as the "Commonwealth Debt

Redemption Fund" to be applied "solely for the payment of principal and interest

on the existing and future general obligation of the Commonwealth of Puerto

Rico." As discussed in #18575-page-23-of-303, these provisions provide part of

the security for the New GO Bonds.

c.   FOMB's proposal to include in the proposed order and judgment a provision to

preempt the statutes pertaining to the 1.03% of property tax is particularly

troubling because it is inconsistent with both the Plan (§74.1(e)) and the

disclosure statement (#17628-page-56-of-654), both of which specifically provide

that payment of the New GO Bonds will come "first," from "the 1.03% property

tax levied pursuant to Act 83-1991."

d.   I note that Article VI, Section 8 of the Puerto Rico Constitution is not listed on

Exhibit C. However, ¶3(B) speaks broadly about preempting Commonwealth

laws, using phrases like "without in any way limiting the foregoing" and "include,

without limitation." And language in ¶3(B) – "all laws, rules, and regulations

giving rise to obligations of the Debtors discharged by this Plan and this Order

pursuant to PROMESA are preempted by PROMESA" – would arguably extend

to Article VI §8 and §2, last paragraph. As the disclosure statement

acknowledges, some holders of GO and PBA bonds have taken the position that

Article VI, Section 8, provides for a Constitutional lien for the benefit of GO and

Commonwealth guaranteed bonds. *See* #18575-page-23-of-303, referencing

Article VI, §8 and §2, last paragraph, as well as 13 L.P.R.A. §41. The Plan and

disclosure statement further provide that "monies arising from the operation of

Article VI, Section 8 of the [Puerto Rico] Constitution" shall be the "second"

source of payment for the New GO Bonds. Plan §74.1(e); #17628-page-56-of-

654.  It would thus appear that, by tacitly proposing to preempt Article VI, Section 8 and Section 2, last paragraph, of the Puerto Rico Constitution, debtors are proposing an order and judgment inconsistent with both the plan and representations in the disclosure statement concerning the plan in this second respect as well.

e.      The foregoing underscores that extreme caution is required before the Court preempts a long list of statutes.  Each statute listed on Exhibit C must be read and the effect of each must be evaluated.  Tacit preemption of a Constitutional provision should not be adopted by the Court.  Preemption by sweeping "include, without limitation" and "without in any way limiting the foregoing" should not be adopted by the Court.  Just as the release and related injunction and bar order provisions in the plan are overly broad and improper in scope (#18575-page-14-16-of-303), as Debtor now tacitly admits (#18874-3-page-13-of-29), so too are the preemption provisions of the proposed order and judgment.

f.      Another statute initially proposed to be specifically preempted was Act 33-1942. As noted in my Objection, one part of Act 33-1942, 13 L.P.R.A. §41, reinforcing Article VI, §8 and §2, last paragraph, of the Puerto Rico Constitution, provides statutorily for an irrevocable "pledge[ ] for the payment of the principal of, and the interest on" GO bonds "which …shall be paid with ….any available funds in the Commonwealth Treasury, which funds are appropriated as continuous appropriations without its being necessary to make new appropriations for said purpose."  #18575-page-23-of-303.  Act 33-1942 now appears to be dropped from Ex. C.  *See* #19188-page-202-of-207, but the general overly-broad language of preemption discussed above remains.  (If, as suggested in the November 15, hearing by FOMB's counsel, Act 33 was recently repealed, that raises another set of troubling issues.)

**f-1.** Furthermore, as previously noted, in #18647, it appears there will be express provision for a statutory lien only "over the funds deposited in the Debt Service Fund."  There had been a requirement for a Debt Service Reserve Fund aggregating $211,940,194, on which there would have been a statutory lien, in the plan filed as recently as June 29, 2021 (#17194-page-48-of-244, citing the then current plan §§1.186 and 1.187; #17191-page-163-of-245).  But the Debt Service Reserve Fund requirement was omitted from the Plan on the eve of the disclosure statement hearing (#17310-page-6-of-8; *see also* #17518-1-page-147,187,188-of-298). Having such a Debt Service Reserve Fund would seem pretty important when (i) the obligor/issuer (here Commonwealth) unilaterally decided in 2015 to stop paying the debt that, under its Constitution, is its first priority to fund, and (ii) FOMB, which is supposed to supply "oversight", has refused to have Commonwealth pay any interest since January 1, 2016, although it continued to permit Commonwealth to pay over $2 billion in pensions each year out of operating revenue and Commonwealth could also have paid interest on an ongoing basis.  *cf.* 48 U.S.C. §§2141(b)(1)(N), 2142, 2194(l).  I object to dropping the Debt Service Reserve Fund Requirement.

**g.** I object to the revised proposed order and judgment to the extent it would limit or restrict any of the existing Constitutional and statutory priorities and liens on all Commonwealth revenues.  It is of little comfort to say there is an express statutory lien as defined in 11 U.S.C. §101(53) on the Debt Service Fund (#18447-page-15-of-77) when that Debt Service Fund is simply the fund in which Commonwealth deposits monthly amounts equal to 1/6th of the semi-annual obligation with respect to payment of interest and 1/12th of the annual obligation

with respect to principal and accreted value on the New GO Bonds.  Plan §1.198
(#17627-page-52-of-291).

h.     **FOMB has not met its burden to prove that subdivision (O) of paragraph 3 is
true, and subdivision (O) is demonstratively not true.**  As discussed in my
Objection (#18575-page-19-to-20,25,-to-28,42,-to-46,56,-to-69-of-303), and at the
hearing, Commonwealth has the current capacity to pay all principal and interest
due on GO and PBA debt, literally, today, and has ample capacity to pay all
principal and interest due on its GO and GO guaranteed debt going forward.  It is
not remotely necessary to discharge the debt that under Puerto Rico's Constitution
has a "first claim" priority on its available revenues.  There are any number of
steps that can be taken to address Puerto Rico's financial issues without
disavowing its own Constitution.  Without limiting the points I previously made
and cited to, just by way of example:

(i)     On the revenue side:

[A]     One could factor in the real population rather than an artificially
low estimate (#18575-page-58-to-59-of-303).  The fact
Mr. Bienenstock used FOMB's (wrong) estimate of population in
his opening, rather than use the Census Bureau's significantly
higher population count, and that Mr. Shah admitted McKinsey
would just repeat FOMB's Plan data, without verifying its
accuracy, highlights the problem with relying on FOMB and
Commonwealth data without independent verification.

[B]     One could use a more realistic estimation of revenues (rather than
significantly underestimate)(#18575-page-59-of-303).

[C]     In particular, one could make a realistic assumption concerning
future Medicaid funding, since there is every reason to believe
additional federal funding will cover a substantial portion of the

projected huge increase in the Medicaid expense (as it
should)(#18575-page-59-to-60-of-303).

[D]   One could curtail the literally off-the-chart tax incentives
(including curtail the many preferential tax rates, credits and
grants) that FOMB admits are "far more generous" than other
jurisdictions in the U.S. and – if one is not willing to cut back the
rate of expenditures that have resulted in a 29% increase in total
outlays since FY2018 – at least roll back at least some of the
multiple reductions in tax rates and new preferences enacted in just
the past three years (#18575-page-43-to-44-of-303).

[E]   The TSA cash flow report posted on EMMA on 11-10-2021 (data
as of 10-29-2021) (Dkt #19164-1) notes that – in addition to the
$12.164 billion of unrestricted cash in the TSA account, Puerto
Rico has received $4.7 billion in coronavirus aid, monies that are
"held in separate accounts *outside* the TSA."  Dkt #19164-1 p. 5 &
note 3 (emphasis added)  However, payments are initially made
out of the TSA and only later reimbursed.  Since "[t]hese
reimbursements can lag disbursements" (Ex. Dkt p. 5 note 3) there
is apparently another significant amount of money that Puerto Rico
has available but that is not currently publicly quantified and
publicly disclosed.

(ii)   On the expense side, there are also a host of steps that could be taken
including

[A]   At least keep in place the modest reductions in pensions for higher-
earning former public employees who are now pension recipients,
who are currently being paid pensions in full on a PayGo basis,
even as FOMB and Commonwealth have refused to pay anything

9

over the past five years in interest on Commonwealth's GO Bonds
that, under its Constitution, are required to be paid first. The
Oversight Board itself had originally proposed modest reductions
for higher-earning pension recipients before first scaling back the
reductions, and then dropping the proposed reductions altogether,
in order to purchase the support of Commonwealth officials for the
plan. *E.g.*, #18575-page-200-to-202-of-303.

[B]   Cut out, or at least cut back, the host of nonessential expenditures
that are reasons why "total outflows" have increased over 29%
since FY 2018. Does one really need to be spending hundreds of
millions of dollars on "advertising, representation, and artistic
services", "consulting services," Christmas bonuses, and the like,
even while the Constitutionally mandated first priority of paying
interest on GO debt is ignored? Dkt #19047-page-17-to-18-of-27;
#18760-4-to-#18760-8. Should Commonwealth stop even
reporting attendance (or, in many cases, nonattendance) of public
employees who do not report to work yet continue to be paid? Dkt
#19047-page-18-to-19-of-27; Dkt #18760-3.

(iii)   Commonwealth could implement the structural reforms recommended by
FOMB. *E.g.*, Wolfe testimony; #18575-page-47-of-303; #18151-1-page-
5-of-30. There is no justification for releasing Commonwealth from its
Constitutional "first claim" priority debt when there is no willingness of
its political leaders to make necessary decisions to honor obligations and
make reforms. Releasing Commonwealth from its Constitutional "first
claim" priority debt despite the unwillingness of its political leaders to
honor obligations and to adopt necessary reforms just rewards and enables
such refusals. FOMB's October 21, 2021 statement (Dkt #18763-14)

underscores why it is essential that Puerto Rico's Constitutional

requirement to pay its "first claim" priority debt must be enforced.

(iv)   Paragraph 3(O) references PROMESA 209, 48 U.S.C. §2149, which

requires that – for the Oversight Board to terminate – Puerto Rico must

have "adequate access to short-term and long-term credit markets at

reasonable interest rates."  But who would ever loan money to Puerto Rico

again, when Commonwealth government officials have shown no

willingness to honor Puerto Rico's "first claim" priority obligations under

its Constitution, and even the FOMB has advocated release of debt that is

the "first claim" priority for payment under Puerto Rico's Constitution

(and preemption of laws requiring payment of such debt), and the reversal

of the priorities set under the Constitution, rather than insist on necessary

reforms and economies, and on payment of Commonwealth's "first claim"

priority obligations.

(v)   Proposed paragraph 3(O) is simply indefensible in light of the facts.  And

neither FOMB nor Commonwealth officials have the authority to disavow

Puerto Rico's own Constitution.  Under PROMESA, 48 U.S.C.,

2174(b)(3), this Court is precluded from approving the plan because

debtor is prohibited by law, beginning with its own Constitution, as well

as the U.S. Constitution and 48 U.S.C. §2141(b)(1)(N) and §2174(b)(7),

from disavowing and refusing to pay its Constitutional "first claim"

priority obligations.

**Paragraph 4:**  Object.  As stated in my objection (#18575), no compromise and settlement can

bind nonconsenting bondholders who did not negotiate or agree to it.  It is one thing to present a

settlement that parties to the settlement who are to be bound all agree to, and argue the settlement

all parties to be affected have agreed to is "reasonable."  It is a completely different matter to

impose a settlement negotiated by some parties – who allocated to themselves significant added

consideration not received by other parties (here Retail Investors like me) – and bind to such settlement those who did not agree or negotiate that unequal deal.  In addition, unclean hands precludes FOMB from exploiting its deals with major hedge funds to impose the resulting settlements on non-consenting bondholders.  #18575-page-34-of-303.

**Paragraph 5:**  Disputed and objected to.

**Paragraph 11:**  Object.

**Paragraph 16:**  Disputed and objected to, to the extent a "cap" is used to justify failing to honor in full debt issued in the past that, under Puerto Rico's Constitution, has a "first claim" priority.

**Paragraphs 20, 22 and 23:**  Object.  These trusts should not be funded until the Constitutional "first claim" priority debt is first paid.

**Paragraph 25 and 26:  Object.**

**Paragraph 27:**  Disputed and objected to.

**Paragraph 28:**  Disputed and objected to.

**Paragraph 34(a):**  As noted in my objection (#18575-page-16-to-19-of-303), the same 1.5% of par, and 1.321% of par, and any other amounts to be paid to bondholders under this paragraph, should also be paid pro rata to all Retail Investors, as well as any other GO and PBA bondholders, irrespective of whether a particular individual successfully navigated the cumbersome and confusing DTC ATOP delivery and voting process employed in this case and irrespective of how they or their class voted.

**Paragraph 46:**  As noted in my objection (#18575-page-16-to-19-of-303), the same 1.5% of par, and any other amounts to be paid to bondholders under this paragraph, should also be paid pro rata to all Retail Investors, as well as any other GO and PBA bondholders, irrespective of whether a particular individual successfully navigated the cumbersome and confusing DTC ATOP delivery and voting process employed in this case and irrespective of how they or their class voted.

**Paragraph 48:**  As noted in my objection (#18575-page-16-to-19-of-303), the same 1.321% of par, and any other amounts to be paid to bondholders under this paragraph, should also be paid

pro rata to all Retail Investors, as well as any other GO and PBA bondholders, irrespective of whether a particular individual successfully navigated the cumbersome and confusing DTC ATOP delivery and voting process employed in this case, and irrespective of how they or their class voted.

**Paragraph 56:** Disputed and objected to for the reasons set forth in my Objection, including my specific objections with respect to the improperly broad releases (#18575-page-14-to-16-of-303).

**Paragraph 58:** Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 59:** Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 60:** Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 61:** Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 63:** Disputed and objected to.

**Paragraph 64:** Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 65:** Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 66:** Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 69:** Object and assert that the provision with respect to CVIs – that payments or redemptions with respect to CVIs shall not be subject to any Commonwealth tax withholding obligation – should also extend to the New GO Bonds. The existing GO bonds and GO guaranteed bonds were sold to investors in the 50 states free of any Puerto Rico tax and one should not leave any possible backdoor mechanism for a government that has disavowed its

Constitutional obligations to attempt to undermine receipt by investors in the 50 states of the full amounts due to them.

**Paragraph 81:** I object to this provision to the extent it contemplates that any release or "cancellation and extinguishment of …. existing claims" (#18470-11-page-46-of-54-Art.-104) may be effective prior to the exhaustion of all appellate rights.

**Paragraph 85:** I object to providing the Oversight Board with authority to modify the plan without notice to all bondholders and court approval of the amendments. I also dispute and object to the first sentence. Eliminating the reduction in pensions, and increasing cash bonuses to public employees, does adversely impact bondholders who are impaired in their old bonds recoveries and whose New Bonds will be less likely to be paid on their terms if Puerto Rico incurs added expenses.

**Paragraph 87:** I object to this provision.

## IV.   OBJECTION TO WAIVER OF RULE 3020(E) AUTOMATIC STAY, WHICH FOMB INCLUDES IN THE MODIFIED EIGHTH AMENDED PLAN

In my objection to the Plan (#18575-page-48-of-303), and again in my objection to the proposed order and judgment (#18647-page-14-of-33), I objected to including any waiver of the Rule 3020(e) automatic stay in the Plan (*see* Plan §92.20) or in any order related to the Plan, noting that no particularized justification for this provision of the Plan has been provided. In response FOMB represented in its reply that "the proposed confirmation order will be amended to remove the provision providing for the waiver of the Bankruptcy Rule 3020(e) stay." #18874-3-page-18-of-29. Yet, despite this representation, FOMB in the papers filed Friday evening November 12, 2021 still includes Section 92.20 – to which I had objected – in the Modified Eighth Amended Plan. *See* #19184-page-199-to-200-of-301 § 92.20.

Thus, while paragraph 80 ("Waiver of Stay") in the original proposed Order and Judgment (#18447-page-67-of-77) has been omitted, Section 92.20 of the Modified Eighth Amended Plan ("Immediate Binding Effect") remains, providing that "***notwithstanding*** Bankruptcy Rules ***3020(e)*** … upon the occurrence of the Effective Date, the terms of the Plan

and the Plan Supplement shall be immediately effective and enforceable and deemed binding…."
(#19184-page-199-to-200-of-301), and the revised proposed order and judgment confirms the
Plan (*e.g.*, paragraph 1).  My Objection had specifically objected to Section 92.20 of the Plan as
well as any waiver of the Rule 3020(e) automatic stay in any order related to the Plan.  #18575-
page-48-of-303.  Perhaps some parsing of definitions or other provisions creates some ambiguity
over the effect of §92.20, but to avoid any potential dispute over what is intended, Section
§92.20 should be struck or at least modified and made more clear.

## V.   REQUEST FOR STAY OF CONSUMMATION UNTIL THERE IS A DETERMINATION BY THE IRS OF WHETHER THE NEW BONDS ARE TAX-EXEMPT

I also request a stay of the effective date of confirmation until there is a determination by
the IRS of whether the new bonds are tax-exempt.

Any deadline in the PSA is a self-created deadline that can and should be waived (or
overridden by the Court) so that there is an opportunity to obtain an answer from the IRS before
the Effective Date.  We should not have a repeat of the COFINA situation where (i) the Plan
became effective before the IRS provided an answer as to whether all bonds could be tax-
exempt, (ii) taxable securities were issued to investors (including those in the continental U.S.),
and (iii) then, two or three months thereafter, it turned out all bonds could be tax-exempt and
recipients of taxable bonds were forced (by FOMB and Commonwealth) to give up 25 basis
points of yield and many were charged a fee (by their broker) to convert just-issued taxable
bonds into tax-exempt bonds.  This Title III case has been pending since May 2017.  Any
asserted urgency at this point does not justify repeating the problem for individual investors that
occurred in the COFINA situation.

## VI.   RESERVATION OF RIGHTS TO RESPOND TO ANY REVISIONS TO THE PLAN, AND CONTINUED ASSERTION OF PRIOR OBJECTIONS

If FOMB submits revisions to the Plan of Adjustment or the Fiscal Plan, I hereby request
the opportunity to respond in writing.  I also reserve and preserve all objections to the Plan,
including my objections in #18575; my responses and objections in #18181; objections to the

proposed classification of claims; my objections to the Disclosure Statement #16908, #16977, #17536 (to the extent not addressed thereafter by FOMB in response to the Court's directions); and all my objections to procedures followed, including those set forth in prior filings referenced at #16387-page-20-to-21-of-22 and in my filings thereafter.

November 15, 2021

Respectfully Submitted,

/s/ Peter C. Hein
Peter C. Hein, pro se
101 Central Park West, Apt. 14E
New York, NY  10023
917-539-8487
petercheinsr@gmail.com

Claim 10696 and 174229
GO Bonds:  500,000 par amount, plus
unpaid interest to date
[5 separate CUSIPS:   74514LVX2
                                     74514LWA1
                                     74514LWM5
                                     74514LWZ6
                                     74514LB63]
PBA Bonds:  200,000 par amount, plus
unpaid interest to date
[CUSIP:  745235M24]


### Declaration pursuant to 28 U.S.C. §1746


I declare under penalty of perjury that the factual statements in the foregoing objection are true
and correct to the best of my knowledge and belief.


Executed on this 15th day of November 2021.


/s/ Peter C. Hein
Peter C. Hein

**<u>Certificate of Service</u>**

I, Peter C. Hein, certify that I have caused the foregoing "Objection to Revised Proposed Order
and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the
Commonwealth of Puerto Rico" to be served via the Court's CM/ECF system.


November 15, 2021




          Peter C. Hein