# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>           Debtors.* | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### JOINDER OF THE LAWFUL CONSTITUTIONAL DEBT COALITION TO THE MEMORANDUM OF LAW OF THE OVERSIGHT BOARD IN SUPPORT OF ITS REQUEST FOR RULINGS REGARDING ACT 53-2021

---

* The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

04388-00005/13057412.2

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 2

ARGUMENT ............................................................................................................................. 5

I.     The Treatment Of Pensions In Previous Proposed Plans Of Adjustment ........................ 5

II.    The Requested Act 53 Rulings Are Consistent with the Plain Text and Legislative Intent of the Implementing Legislation ........................................................................... 6

III.   The Requested Act 53 Rulings Are Consistent with Settled Precedent of the Puerto Rico Supreme Court ............................................................................................ 10

CONCLUSION ........................................................................................................................ 13

CERTIFICATE OF SERVICE ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   141 S. Ct. 844 (2020) ................................................................................................. 11

*Asoc. Maestros v. Depto. Educacion*,
   171 D.P.R. 640 (2007) ................................................................................................. 11

*Church of Scientology v. IRS*,
   484 U.S. 9 (1987) ................................................................................................. 8, 9, 10

*Hernandez, Romero v. Pol. de P.R.*,
   177 D.P.R. 121 (2009) ............................................................................................ 11, 12

*In re City of Detroit*,
   524 B.R. 147 (Bankr. E.D. Mich. 2014) ...................................................................... 4

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   948 F.3d 457 (1st Cir. 2020) ....................................................................................... 11

*United States v. Ron Pair Enters., Inc.*,
   489 U. S. 235 (1989) ..................................................................................................... 6

### Rules and Regulations

18 L.P.R.A. § 395j(c) ............................................................................................................ 6

4 L.P.R.A. § 236b .................................................................................................................. 6

Act 53-2021 ............................................................................................................... *passim*

Bankruptcy Code § 943 ........................................................................................................ 4

### Additional Authorities

*Confirmation Hearing Regarding Act* (Docket No. 190002) ............................................. *passim*

*Seventh Amended Title III Joint Plan of Adjustment* (Dkt. No. 17627) ........................... 5, 6, 7

*Thirteenth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure* (Dkt. No. 19128) ..................... 1

The Lawful Constitutional Debt Coalition (the "LCDC")[1] files this joinder (the "Joinder") to the Memorandum of Law of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") in Support of its Request for Rulings Regarding Act 53-2021[2] (Dkt No. ____) (the "Memorandum of Law")[3] and in Response to the Act 53 Ruling Objections[4] filed by certain parties in this Title III case, and respectfully states as follows:

---

[1] The members of the LCDC and their respective holdings are set forth in the *Thirteenth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* (Dkt. No. 19128).

[2] As used herein, the defined term "Act 53 Rulings" means the rulings set forth in the *Notice of (I) Rulings the Oversight Board Requests at Confirmation Hearing Regarding Act 53-2021 and (II) Deadline for Objections* (the "Act 53 Notice"), attached as Exhibit 1 to the Court's *Order (I) Approving Form of Notice of Rulings the Oversight Board Requests at Confirmation Hearing Regarding Act 53-2021 and (II) Scheduling Objection Deadline* (Dkt. No. 19017) (the "Act 53 Notice Order"),

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Memorandum of Law. The LCDC joins in the arguments made in the Memorandum of Law. The LCDC submits this separate pleading to provide the Court with creditor perspective on the statutory interpretation issues regarding the Act 53 Rulings and the necessity for the Court to resolve the issue in connection with confirmation of the Plan.

[4] The Act 53 Ruling Objections include the following: (i) *Objection of Asociación Puertorriqueña de la Judicatura, Inc. ("APJ") to Plan Pursuant to Court Order of November 2, 2021 at Docket No 19017* ((Dkt. No. 19161) ("APJ Objection"); (ii) *Objection of the "Asociación de law Judicatura de Puerto Rico" ("AJJPR") and Hon. Hector Urgell Cuebas Former Judge of the Puerto Rico Court of Appeals and Participant of the Judicial Retirement System in Relation to Notice of (I) Rulings the Oversight Board Requests at Confirmation Hearing Regarding Act 53-2021 and (II) Deadline for Objections* (Dkt. No. 19175) ("AJJPR Objection"); (iii) *Objection to Urgent Motion of the Financial Oversight & Management Board for Puerto Rico for Order (I) Approving Form of Notice of Rulings the Oversight Board requests at Confirmation Hearing regarding Act 53-2021 at Docket No. 19002 and Request to be Heard* (Dkt. No. 19180), filed by Federación de Maestros de Puerto Rico, Inc., Grupo Magisterial Educadores(as) por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc., and Unión Nacional de Educadores y Trabajadores de la Educación, Inc., (collectively, "Teacher's Associations," and the objection thereto, the "Teacher's Associations' Objection"); and (iv) *Objection to the Oversight Board's Proposed Rulings at Confirmation Hearing Regarding Act 53-2021 (Docket No. 190002)* (Dkt. No. 19181), filed by Asociación de Maestros Puerto Rico and the Asociación de Maestros de Puerto Rico-Local Sindical (together, "AMPR and, collectively with APJ, AJJPR, and the Teacher's Association, the "Act 53 Objectors") ("AMPR Objection" and, collectively with the APJ Objection, the AJJPR Objection, the Teacher's Association's Objection, the "Act 53 Ruling Objections").

.

**PRELIMINARY STATEMENT**

1. Puerto Rico stands on the verge of a monumental achievement—emerging from bankruptcy and the financial crisis that has engulfed the Island for more than a decade, unlocking its potential for economic growth for the benefit of its citizens, and leaving behind opaqueness and mismanagement in favor of fiscal transparency, growth and prosperity. This momentous accomplishment did not come easy and required every stakeholder (the Oversight Board, the Commonwealth Government, retirees, employees, and creditors) to work tirelessly and cooperatively through a morass of litigation and competing interests to achieve the goals of PROMESA through the Plan (as defined below).

2. The Commonwealth Government's enactment of enabling legislation for the New GO Bonds and CVIs that was acceptable to, among others, the Oversight Board and the GO/PBA PSA Creditors was a central tenet of the Plan. *See* Plan § 86.1(d), (e) (providing that passage of acceptable new bond legislation was condition precedent to consummation of the Plan). On October 26, 2021, the Commonwealth Government put Puerto Rico and its citizens above politics by enacting in a multipartisan effort Act 53-2021 ("Act 53"), which, *inter alia*, authorizes the issuance of the New GO Bonds and CVIs "subject to the FOMB filing an amended Plan for confirmation by the Title III Court that eliminates the Monthly Benefit Modification." Act 53, art. 104; *accord id.* art. 605. Two days later, the FOMB announced that Act 53 was acceptable as enabling legislation for the POA's new securities, subject to receiving from this Court certain findings of fact and conclusions of law (the "Act 53 Rulings").[5] Thereafter, on November 3, 2021,

---

[5] *See* Financial Oversight and Management Board for Puerto Rico, *Oversight Board Moving Forward With Plan Of Adjustment Requires No More Mediation; Enables Bond Issuance Necessary for the Plan*, (October 28, 2021) https://drive.google.com/file/d/1ZkTg05HzUVmMsvdt7yuTSDgHs__2Y7tq/view ("The Oversight Board carefully reviewed Act 53-2021 (former House Bill 1003) adopted by the Puerto Rico Legislature and signed by Governor Pedro R. Pierluisi on October 26, 2021 and concluded that the changes

the Oversight Board filed the *Modified Eighth Amended Plan of Adjustment* (as may be further modified, amended, and/or supplemented, the "POA" or the "Plan") eliminating the Monthly Benefit Modification consistent with Act 53 and, thus, satisfying the only condition precedent set forth in Act 53 for its authorization of issuance of the New GO Bonds and CVIs. For its part, the Commonwealth Government certified that the Plan indeed satisfied the condition contemplated in Act 53, noting:

> Act 53 has been enacted in order to authorize the issuance of securities under the POA, subject to certain conditions therein. Based on public representations from the Oversight Board that it would remove the Monthly Benefit Modification from the POA and certify a new fiscal plan that does not reflect the Monthly Benefit Modification after POA confirmation, the Government certifies that Act 53 would be consistent with (and not substantially inconsistent with) such a revised fiscal plan for purposes of PROMESA."

Puerto Rico Fiscal Agency & *Financial Advisory Authority*, *Section 204-A Certification, Act 53-2021, Enacted on October 26, 2021*, (Oct. 29, 2021), at 4, https://drive.google.com/file/d/1dJJi5P2IVP9hIlZ_khFP6gKH0dStjTou/view.

3. By its plain terms and consistent with the Oversight Board's and the Commonwealth Government's public statements and representations to the Court, Act 53 constitutes the enabling legislation and authorizes the issuance of the New GO Bonds and CVIs because its lone condition—elimination of the Monthly Benefit Modification—has been achieved.

4. Nevertheless, the Act 53 Objectors argue that the POA should not be confirmed because Act 53's condition precedent has in actuality not been satisfied. According to the Objectors, Act 53 requires "no pension cuts" and (i) the suspension of cost of living adjustments ("COLAs") (*see* POA §§ 55.1–55.9) and (ii) freezes of pension benefits accruing after the POA's Effective Date (the "Freeze") (*see id.* §§ 55.8, 55.9, Exs. E and F-1) run afoul of this prohibition.

---

the Legislature made to the amended legislation following the October 25, 2021 hearing by the U.S. District Court for the District of Puerto Rico form the basis for the issuance of new general obligation bonds that is part of the 7th Amended Plan of Adjustment.").

3

*See, e.g.*, APJ Obj. at 2; AJJPR Obj. ¶ 13; AMPR Obj. ¶¶ 11–12; Teacher's Assocs. Obj. ¶¶ 36–41. Respectfully, the Act 53 Objectors' proposed interpretation of the condition precedent to Act 53 is strained and inconsistent with the statute's plain text. As explained below, Act 53 and all transactions authorized thereunder, including issuance of the New GO Bonds and CVIs, are and will remain effective and valid because (a) the POA eliminates the Monthly Benefit Modification and (b) the Freeze and suspension of COLAs are not "cuts" to pensions as the term is used in Act 53.[6] The Court, therefore, should overrule the Act 53 Ruling Objections.

---

[6] As occurred in the COFINA Title III case, this Court has the authority and, indeed, the responsibility, to determine the validity and constitutionality of the Act 53 as properly enacted under Puerto Rico law. Pursuant to PROMESA, including portions of the Bankruptcy Code incorporated therein, the Court is being asked to declare and determine that Act 53 is a valid and constitutional means for implementing the Plan. In order to confirm a Title III plan, Section 314 of PROMESA requires that the Court find, *inter alia*, that "(3) the debtor is not prohibited by law from taking any action necessary to carry out the plan," and "(5) any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval." These particular sections of PROMESA are modeled off of the confirmation requirements of Chapter 9, and, in particular, section 943 of the Bankruptcy Code. *See, e.g.*, *In re City of Detroit*, 524 B.R. 147, 212 (Bankr. E.D. Mich. 2014) (finding "that the implementation of the City's plan is in conformance with all applicable law, as § 943(b)(4) requires"); *see also id.* at 265 (finding that the plan did not violate the Fourteenth Amendment); *id.* at 276 (finding that City is not prohibited by law from entering into exit financing). As set forth in the proposed findings of fact and conclusions of law and other documents filed by the Oversight Board in support of confirmation of the Plan, these requirements (and the other requirements for confirmation of the Plan) have been or will be satisfied prior to or upon consummation of the Plan. First, applicable law does not prohibit the Commonwealth from taking the actions necessary to implement the Plan and, second, Act 53 has been validly approved in accordance with applicable Commonwealth law. The Statement of Motives of Act 53 expressly states that "[p]ursuant to this Law, the Commonwealth supports the Plan, along with the public policies set forth in this Law which, subject to PROMESA's mandate to restore fiscal responsibility in Puerto Rico and the Oversight Board's fiscal plan and budget powers under PROMESA, includes zero cuts to pensions of current retirees and current accrued benefits of active public employees and a desire to promote welfare of the people of Puerto Rico." Act 53, Statement of Motives at 37. This Court's confirmation of the validity and constitutionality of Act 53 removes any cloud that otherwise exist over the New GO Bonds and CVIs and eliminates the possibility of future collateral attacks concerning due authorization for the issuance of the New GO Bonds and CVIs. *See, e.g.*, *Amended Order and Judgment Confirming Third Amended Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation*, Case No. 17-03284 (Dkt. No. 561), and *Amended Memorandum of Findings of Face and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation*, Case No. 17-03284 (Dkt. No. 560), ¶ 174 ("COFINA Findings and Conclusions") ("Confirmation of the Plan constitutes a judicial determination and, pursuant to section 4 of PROMESA and sections 944, 1123, and 1125 of the Bankruptcy Code as incorporated by section 301 of PROMESA, the terms of these Findings of Fact and Conclusions

**ARGUMENT**

**I.  THE TREATMENT OF PENSIONS IN PREVIOUS PROPOSED PLANS OF ADJUSTMENT**

5.  It is important when construing Act 53 that the Court understand the backdrop and public record against which the law was passed. Each proposed plan of adjustment filed by the Oversight Board prior to the POA contained the Monthly Benefit Modification (which applies to accrued benefits), the Freeze (which refers to a future period), and the COLA suspension (which also refers to a future period). *See, e.g.*, *Seventh Amended Title III Joint Plan of Adjustment* (Dkt. No. 17627) §§ 55.1–55.9. Thus, at the time Act 53 was enacted, the Legislative Assembly and the Governor were charged with knowing the three components contained in the prior plans of adjustments conceivably impacting both accrued benefits and potential future benefits of retirees. Act 53's express conditionality, however, speaks only about the elimination of accrued benefits.

6.  Consistent with Act 53, the Plan eliminates the Monthly Benefit Modification but maintained the Freeze on future pension benefits and eliminates COLAs after the effective date of the Plan. The Freeze and COLA suspension are reflected in and consistent with the latest Certified Fiscal Plan, like every previous certified fiscal plan, which allocates no moneys for payment of pension benefit escalations or COLAs.

7.  While the Monthly Benefit Modification affects all government pensioners, the Freeze and COLA suspension apply only to a subset—teachers and judges, whose pension systems—the Teachers' Retirement System ("TRS") and the Judicial Retirement System ("JRS"), respectively—contemplate the possibility of increased future benefits if certain conditions are hypothetically met. Specifically, the teachers' pension system conditions the potential escalation

---

of Law shall prevail over any general or specific provision of territory law, State law or regulation that is inconsistent therewith and be full, final, complete, conclusive, and binding and shall not be subject to collateral attack or other challenge in any court or other forum, except as permitted under applicable law.").

5

of monthly benefits on its Board of Trustees obtaining an actuarial report that favors an increase after evaluating the impact of the increase on the teachers' retirement system. 18 L.P.R.A. § 395j(c). Similarly, the JRS conditions the potential increase in monthly pension payments on there being a prior favorable recommendation from the actuarial report for that retirement system. 4 L.P.R.A. § 236b. The JRS statute goes further, specifying that if in any given year the pension system only has reserves for 24 months, no increase in the monthly benefit may be authorized. *Id*.

## II. THE REQUESTED ACT 53 RULINGS ARE CONSISTENT WITH THE PLAIN TEXT AND LEGISLATIVE INTENT OF THE IMPLEMENTING LEGISLATION

8. It is a canon of statutory interpretation that when the meaning of a statute is clear, statutory interpretation begins and ends with the plain text of the statute. *United States v. Ron Pair Enters., Inc.*, 489 U. S. 235, 241 (1989). That is the case with Act 53. By its own terms, article 104 of Act 53 clearly states that the sole condition for the authorization of the New GO Bonds and CVIs operates only with respect to "the *accrued* pensions of government employees." (Emphasis added). That same Article clarifies the precise scope of the public policy underlying the condition, reiterating that it seeks "to protect the *accrued* pensions of its public servants." (Emphasis added). This explicit repeated reference to "accrued pensions" evinces an unequivocal intent not to condition the validity of Act 53 or any of the transactions authorized thereunder on the un-impairment of un-accrued, potential, future pension benefits—which was equally part of the public record at the time of drafting.

9. Only the monthly pension payments existing as of the Effective Date of the POA are "accrued" in the sense that they are currently owed and being paid to individual pensioners. Pensioners, on the other hand, will not have received or accumulated any increases to the monthly pension benefits or COLAs when the POA becomes effective. In fact, as noted, the future increase in benefits contemplated by the TRS and JRS depends on certain conditions being met.

6

Significantly, these increases may take place at some point in the future only if actuarial reports recommend such increases depending on the respective retirement plan's solvency. By definition, then, the escalator and COLA benefits that the POA freezes and/or eliminates are contingent and, therefore, the opposite of "accrued" as that term is used in Act 53 (and as plainly understood by the average reader). It follows, then, that if neither the escalators nor COLAs are "accrued pensions," they cannot be "cut," and the Freeze and COLA suspension do not constitute "cuts" as that word is plainly understood and used in the statute. Therefore, these features of the POA do not implicate or trigger the conditional language of Act 53.

10. It is worth reiterating that Act 53 does not address or even mention the Freeze and COLA suspension, which featured prominently in all prior versions of the POA, and were the subject of objections to a prior version of the POA.[7] Had the Legislative Assembly intended to expressly condition the effectiveness of Act 53 and/or the validity of the New GO Bonds and CVIs on the un-impairment of all pension benefits, regardless of whether they were accrued or contingent and un-accrued, it easily could have done so.

11. The Teachers' Associations' myopic focus on, and expansive interpretation of, the phrase "zero cuts" ignores the statute's clear operative language and would render important sections of it nugatory. Teacher's Assocs. Obj. ¶¶ 36–41. Specifically, reading Act 53 to condition its effectiveness and the validity of the transactions authorized thereunder on not altering un-accrued, future, contingent pension benefits, like the Freeze and the COLAs, would render the Legislature's use of the word "accrued" surplusage and read into the statute conditions that simply

---

[7] *See Legal Brief of the AJJPR and Hon. Hector Urgell Cuebas, Former Judge of thee Puerto Rico Court of Appeals and Participant of the Judicial Retirement System in Support of Motion to Submit Objections to the Modification to the Judicial Retirement System Proposed By FOMB's Plan of Adjustment and Disclosure Statement* (Dkt. No. 18549); *Objection of Asociación De Maestros De Puerto Rico and Asociación De Maestros De Puerto Rico-Local Sindical to Confirmation of the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et. al*. (Dkt. No. 18585).

are not there. Much as there is meaning in the Sherlock Holmes' story of the dog that did not bark, there is also meaning in a legislative body omitting mention of the provisions that would supposedly violate the mandate to protect pensions beyond what was expressly referenced (*i.e.*, elimination of the Monthly Benefit Modification). *See Church of Scientology v. IRS*, 484 U.S. 9, 17–18 (1987) ("All in all, we think this is a case where common sense suggests, by analogy to Sir Arthur Conan Doyle's 'dog that didn't bark,' that an amendment having the effect petitioner ascribes to it would have been differently described by its sponsor, and not nearly as readily accepted by the floor manager of the bill.").

12. The Teachers' Associations' citation of public statements of certain politicians to suggest that the legislative intent behind Act 53 is inconsistent with the requested Article 53 Rulings betrays the lack of support for its position. *See* Teacher's Assocs. Obj. ¶¶ 45–46. Indeed, the analysis set forth above and the requested Article 53 Rulings sought by the Oversight Board are entirely consistent with the Legislative Assembly's explicit expression of its intent, articulated in the Statement of Motives of Act 53. Of note, the Legislative Assembly explained:

> Pursuant to [Act 53], the Commonwealth supports the Plan, along with the public policies set forth in this Law which, subject to PROMESA's mandate to restore fiscal responsibility in Puerto Rico and the Oversight Board's fiscal plan and budget powers under PROMESA, *includes zero cuts to pensions of current retirees and current accrued benefits of active public employees* and a desire to promote the welfare of the people of Puerto Rico.

Act 53 (Statement of Motives) at 37 (emphasis added). As with article 104, this section of the Statement of Motives clarifies that the provisions of Act 53 that seek to protect pensions are aimed at "current accrued benefits" of pensioners. Future, contingent benefits like the escalators and COLAs are neither "current" nor "accrued" and, therefore, are not included in Act 53's reference to "zero cuts."

13. In the same vein, the Legislative Assembly added in the Statement of Motives that it enacted Act 53 "to facilitate confirmation of the Plan, which must occur before the departure of

8

the Oversight Board," but specified that it "has not lost sight of the fact that our retirees, unlike other groups of creditors, *have already suffered cuts in their pensions* as a result of the enactment of statutes that, to prevent the insolvency of the government retirement systems, reduced pension benefits, increased the amount of employee contributions, and raise the retirement age for the pension plans of each of the three major government retirement systems." Act 53 (Statement of Motives) at 40 (emphasis added). By omitting the freeze imposed in 2013 on future pension benefits of retirees under the ERS system (*see* Act 3-2013) from its description of "cuts" that retirees suffered in the past, the Legislature again confirmed that its conception of "pension cuts" is limited to reductions or suspensions of actual, accrued monthly benefits.

14. In that same paragraph, the Legislative Assembly also clarified that, given those prior "pension cuts," Act 53 "is conditioned on the FOMB filing an amended Plan for confirmation by the Title III Court that *eliminates the contemplated cuts to the monthly pension payments to current retired employees of the government of the Commonwealth and current public employees who have accrued pension benefits*." *Id.* (emphasis added). Once again, with this language, the Legislature expressly referred only to "cuts to monthly pension payments" already being paid or already accumulated/accrued, thereby excluding any freeze of future, un-accrued benefit escalators or COLAs.

15. Prior to reaching agreement with the Oversight Board on the terms of the POA, through the enactment of Act 53, AAFAF filed a limited objection to the then filed version of the plan of adjustment (Dkt. No. 18742 (the "<u>Limited Objection</u>")), in which it crystallized the distinction between accrued and un-accrued benefits, as well as the Commonwealth Government's express understanding that the reference in Act 53 to "cuts" refers only to reductions in current monthly pension payments and not to future potential escalators or COLAs. *Id*. Specifically,

9

AAFAF objected to the Plan's inclusion of the Monthly Benefit Modification—the reductions in monthly benefits that pensioners receive today—noting that they were "distinct" from "the freeze of defined benefits for Puerto Rico's teachers and judges." *Id.* ¶ 3, n.9. With respect to that freeze, the Commonwealth Government acknowledged that "[w]hether a plan of adjustment approved under PROMESA can impose a freeze and override Puerto Rico law on this issue . . . is a matter that will be decided as part of the confirmation proceedings." *Id.* ¶ 8. Like the prior versions of the POA and the teachers' and judges' objections filed against it, AAFAF filed its objection before the Legislative Assembly enacted Act 53. Had the Legislative Assembly disagreed with or wished to reject the distinction AAFAF made in its Limited Objection between cuts to current monthly pension payments and the Freeze and COLA elimination, it could have easily done so in Act 53. It did not.

16. The Requested Act 53 Rulings are on even firmer ground now that AAFAF has issued a certification under PROMESA Section 204 confirming that the statute is consistent with the current Fiscal Plan and the POA, both of which expressly contemplate the Freeze and suspension of COLAs.

### III. THE REQUESTED ACT 53 RULINGS ARE CONSISTENT WITH SETTLED PRECEDENT OF THE PUERTO RICO SUPREME COURT

17. Some of the Act 53 Objectors contend that Act 53's reference to "cuts" to "accrued pensions" must be read to include freezes of future benefits like escalators and COLAs insofar those future benefits are acquired rights under Puerto Rico law. *See, e.g.*, Teacher's Assocs. Obj. at 15–22; APJ Obj. at 2–3. The concept of acquired rights as developed in Puerto Rico Supreme Court jurisprudence, however, does not support that reading. To the contrary, the most recent acquired rights jurisprudence buttresses the interpretation of Act 53 for which the FOMB, the Commonwealth Government and creditors have advocated.

10

18. The Puerto Rico Supreme Court has defined "acquired rights" as those that are "definitively incorporated into the patrimony of a person," (*Hernandez, Romero v. Pol. de P.R.*, 177 D.P.R. 121, 145 (2009) (internal quotations omitted) (unofficial translation)), and which are "born of the conjunction between an existing legal norm (abstract legal situation) and the execution of a fact contemplated in the law (concrete situation)." *Asoc. Maestros v. Depto. Educacion*, 171 D.P.R. 640, 664 (2007) (internal citations and quotations omitted) (unofficial translation). According to the Puerto Rico Supreme Court, the opposite of an acquired right is a mere expectation. *Hernandez, Romero*, 177 D.P.R. at 145 (unofficial translation). Acquired rights are legal faculties that are regularly exercised, while expectations are legal faculties that have not been exercised before a change in law; probabilities or hopes that can be reasonably modified by a change in law. *Id.* at 146; *cf. In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 948 F.3d 457, 468 (1st Cir. 2020), *cert. denied sub nom. Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 141 S. Ct. 844 (2020) (holding that retirement system's "statutory authority to receive postpetition Employers' Contributions constituted merely an expectancy and not a property 'right'" where "the payment and the amounts of the Contributions depended on work occurring on and after the petition date and the "bonds explicitly contemplated that the payment of future Contributions was contingent on Puerto Rico's future fiscal status and the decisions of future Puerto Rico legislatures").

19. The Puerto Rico Supreme Court's distinction between acquired rights and mere expectations is illuminating in the context of the Act 53. Current monthly pension payments to retirees (the ones that the prior version of the Plan purported to impair through the Monthly Benefit Modification) constitute acquired rights insofar as they are: (a) born of the conjunction between an existing legal norm—here, the statutes regulating the TRS and JRS—and a concrete situation—

11

the accrual and payment of the monthly benefits due to the retiree; (b) "regularly exercised" through the monthly payments to the retirees; and (c) "incorporated into the patrimony" of retirees who receive the payments. The Freeze and suspension of future increases and COLAs, on the other hand, fit squarely within the Puerto Rico Supreme Court's definition of a mere expectation, as they are not yet born, have not been exercised prior to the change in law (effectuated here through the Plan), and have not been and cannot be incorporated into the patrimony of the retirees because they do not yet exist. They are, therefore, no more than probabilities or hopes that can reasonably be modified by a change in law.

20. The legislators who drafted Act 53 must be presumed to have known the relevant jurisprudence of the Puerto Rico Supreme Court when they enacted Act 53. *Hernandez, Romero*, 177 D.P.R. at 144 (unofficial translation). That presumed knowledge, in turn, offers additional clarity with respect to the Legislative Assembly's decision to condition the effectiveness of Act 53 and the validity of the transactions authorized thereunder exclusively on the POA not imposing any "cuts" to "accrued pensions," but not on removal of the Freeze and COLA suspensions from the POA.

## CONCLUSION

For the reasons set forth in the Memorandum of Law and herein, the LCDC respectfully requests that the Court grant the requested Act 53 Rulings and grant such other and further relief that the Court deems appropriate.

DATED: November 15, 2021

| | |
|---|---|
| REICHARD & ESCALERA | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| By : _____ | |
| */s/ Rafael Escalera* | **Susheel Kirpalani** (*pro hac vice*) |
| **Rafael Escalera** | susheelkirpalani@quinnemanuel.com |
| USDC No. 122609 | |
| escalera@reichardescalera.com | **Daniel Salinas** |
| | USDC-PR 224006 |
| */s/ Sylvia M. Arizmendi* | danielsalinas@quinnemanuel.com |
| **Sylvia M. Arizmendi** | |
| USDC-PR 210714 | **Eric Kay** (*pro hac vice*) |
| arizmendis@reichardescalera.com | erickay@quinnemanuel.com |
| | |
| */s/ Carlos R. Rivera-Ortiz* | **Zachary Russell** (*pro hac vice*) |
| **Carlos R. Rivera-Ortiz** | zacharyrussell@quinnemanuel.com |
| USDC-PR 303409 | |
| riverac@reichardescalera.com | 51 Madison Avenue, 22nd Floor |
| | New York, New York 10010-1603 |
| 255 Ponce de León Avenue | |
| MCS Plaza, 10th Floor | |
| San Juan, Puerto Rico 00917-1913 | |

*Co-Counsel for the Lawful Constitutional Debt Coalition*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

                            /s/ *Carlos R. Rivera-Ortiz*
                              USDC-PR 303409

04388-00005/13057412.2