# EXHIBIT 2

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 2 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

171 D.P.R. 640, 2007 WL 1953609 (P.R.), 2007 TSPR 123

ASOCIACIÓN DE MAESTROS DE PUERTO RICO, por sí y en representación de sus SOCIOS, y EDUCADORES PUERTORRIQUEÑOS EN ACCIÓN, por sí y en representación de sus SOCIOS, apelantes,
v.
DEPARTAMENTO DE EDUCACIÓN, HON. CÉSAR REY, en su carácter oficial como SECRETARIO DEL DEPARTAMENTO DE EDUCACIÓN, ESTADO LIBRE ASOCIADO y FEDERACIÓN DE MAESTROS DE PUERTO RICO, apelados.

En El Tribunal Supremo De Puerto Rico.
*Número:* AC-2004-64

**Synopsis**
PETICIÓN DE *CERTIORARI* para solicitar la revocación de una SENTENCIA de *Rafael Ortiz Carrión, Antonio J. Negroni Cintrón* y *Carlos J. López Feliciano*, Js. del Tribunal de Apelaciones, la cual revocó una sentencia emitida por el Tribunal de Primera Instancia y resolvió que la Ley Núm. 96 de 7 de agosto de 2001 no se aplicó retroactivamente porque el cobro de los cargos por servicio comenzó a efectuarse luego de su entrada en vigor. *Se dicta sentencia en la que se revoca la emitida por el Tribunal de Apelaciones y se declaran ilegales los descuentos de cargos por servicio efectuados a los maestros que notificaron su interés en no afiliarse a la Federación de Maestros y quienes fueron eximidos de pagar cargos por servicio en virtud de la legislación anterior. Se resuelve que la Ley Núm. 96 sólo aplica prospectivamente a los empleados que opten por no afiliarse a la organización obrera después de su vigencia.*

*Rafael A. Nadal Arcelay*, de *Cancio, Nadal, Rivera & Díaz, P.S.C.*, abogado de la Asociación de Maestros de Puerto Rico, apelante; *Luis R. Rosario Badillo*, abogado de Educadores Puertorriqueños en Acción, apelante; *José Velaz* **\*643** *Ortiz*, abogado de la Federación de Maestros de Puerto Rico, apelada.

EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

En esta ocasión nos corresponde determinar si la Ley Núm. 96 del 7 de agosto de 2001, mediante la cual se autorizó el cobro de un cargo por servicio a los empleados que opten por la no afiliación a la organización sindical que los representa, debe aplicarse retroactivamente a los empleados que no se afiliaron mientras estaba vigente la legislación anterior que los eximía de pagar dicho cargo por servicio.

En el caso ante nuestra consideración, la Asociación de Maestros y Educadores Puertorriqueños en Acción (los peticionarios) nos solicitan la revocación de una sentencia emitida por el Tribunal de Apelaciones que resolvió que la Ley Núm. 96 de 7 de agosto de 2001 no se aplicó retroactivamente porque el cobro de los cargos por servicio comenzó a efectuarse luego de su entrada en vigor. Por entender que la legislación en controversia sí fue aplicada retroactivamente en ausencia de una disposición expresa o circunstancias extraordinarias que así lo requirieran, revocamos.

**I**

La Ley Núm. 45 de 25 de febrero de 1998, según enmendada, 3 L.P.R.A. sec. 1451 *et seq.*, conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico (Ley Núm. 45) le confirió a los empleados públicos el derecho a no afiliarse ni ser representados por la organización obrera certificada. Asimismo, se dispuso que los empleados que optaran por la no afiliación estarían exentos del pago de cargos por servicio.

Posteriormente, la Asamblea Legislativa promulgó la Ley Núm. 96 de 7 agosto de 2001 (Ley Núm. 96), que enmendó la Ley Núm. 45, y estableció un cargo por servicio de hasta un máximo de 50% de la cuota regular de los **\*644** afiliados para los empleados que opten por no afiliarse. *En otras palabras, la enmienda mantuvo inalterada la opción de los empleados de no afiliarse, pero dispuso que, en esos casos, estarían obligados a pagar un cargo por servicio.*

Una vez se aprobó la Ley Núm. 96, el Departamento de Educación comenzó a descontarles a todos los maestros no afiliados una cantidad de $8 por cargos por servicio a favor de la Federación de Maestros.[1] Dicho descuento cubrió el periodo desde la aprobación de la Ley Núm. 96 hasta el presente.

Inconformes con dicha decisión, la Asociación de Maestros y Educadores Puertorriqueños en Acción, en representación de sus miembros, presentó una demanda en la que solicitó una sentencia declaratoria e *injuction*

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 3 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

contra el Departamento de Educación y la Federación de Maestros. Alegó, en síntesis, que dicho descuento es ilegal y que sus miembros, al notificar su interés en no afiliarse a la Federación de Maestros al amparo de la Ley Núm. 45, adquirieron el derecho a no pagar cargos por servicio. Asimismo, sostuvo que la Ley Núm. 96 no dispone para que tenga efectos retroactivos, por lo que el Departamento de Educación debe abstenerse de continuar descontándoles el cargo en controversia.

Por su parte, el Departamento de Educación adujo que la Ley Núm. 96 no se está aplicando retroactivamente, ya que los descuentos se comenzaron a cobrar luego de su entrada en vigor. Señaló, además, que para que los peticionarios tengan derecho a beneficiarse de los servicios que brinda la Federación de Maestros deben aportar con algún porciento de lo que pagan los empleados afiliados. Finalmente, sostuvo que los peticionarios no tienen un derecho adquirido a no pagar cargos por servicio en virtud de la legislación anterior.

Luego de sometido el caso para su adjudicación, la Federación **\*645** de Maestros presentó un Memorando de Derecho en el que reiteró varios de los planteamientos esbozados por el Departamento de Educación. En particular, arguyó que no se le estaba dando efecto retroactivo a la Ley Núm. 96, ya que los descuentos comenzaron a efectuarse después de su entrada en vigor y que los peticionarios no adquirieron un derecho, en virtud de la legislación anterior, a no pagar cargos por servicio. Por otro lado, señaló que la Ley Núm. 96 se promulgó con el fin de resolver contradicciones entre las disposiciones de la Ley Núm. 45.

Luego de varios trámites procesales, el Tribunal de Primera Instancia resolvió mediante una sentencia enmendada *nunc pro tunc* que la deducción de cargos por servicio que realizaba el Departamento de Educación a los peticionarios era ilegal, ya que éstos notificaron su interés en no afiliarse antes de la vigencia de la Ley Núm. 96. Determinó que dicha ley sólo podía aplicarse de manera prospectiva en virtud del Art. 3 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3, y su jurisprudencia interpretativa. En vista de lo anterior, ordenó al Departamento a descontinuar la deducción de los cargos y a devolver a los peticionarios el dinero recolectado hasta ese momento.

Insatisfecho con el dictamen, la Federación de Maestros acudió ante el Tribunal de Apelaciones reiterando los argumentos presentados ante el Tribunal Primera Instancia. Adujo que el foro inferior había errado al concluir que los descuentos se hicieron retroactivamente, aun cuando se efectuaron luego de que la Ley Núm. 96 entrara en vigor. Así las cosas, el foro intermedio revocó al Tribunal de Primera Instancia por entender que el Departamento de Educación no cobró retroactivamente los cargos por servicio, puesto que los descuentos comenzaron a efectuarse luego de su entrada en vigor.

De esa decisión apelan ante nos los peticionarios. Aducen que el Tribunal de Apelaciones erró al resolver que la Ley Núm. 96 fue puesta en vigor prospectivamente y que, por lo tanto, la disposición legal en controversia no se está aplicando retroactivamente. Sostienen que la actuación del **\*646** Departamento de Educación atenta contra su derecho adquirido a no pagar cargos por servicio a la Federación de Maestros.

Acogido el recurso como *certiorari*, y con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

[1] La Ley Núm. 45 se promulgó para conferir a los empleados públicos el derecho a la organización sindical y a la negociación colectiva dentro de los parámetros establecidos en la propia ley. Exposición de Motivos Ley Núm. 45 (1998 (Parte 1) Leyes de Puerto Rico 146); *Depto. Educ. v. Sindicato Puertorriqueño*, 168 D.P.R. 527 (2006). Conforme a esto, se les confirió el derecho a afiliarse a una organización sindical que haya sido certificada por la Comisión de Relaciones del Trabajo del Servicio Público como la representante exclusiva de los empleados. Art. 4 de la Ley Núm. 45 (3 L.P.R.A. sec. 1451(b)). Dicha organización representará a los empleados ante la agencia gubernamental correspondiente para propósitos de salarios, beneficios marginales, términos y condiciones de empleo. Art. 3 de la Ley Núm. 45 (3 L.P.R.A. sec. 1451(j)).

En lo pertinente a la controversia ante nuestra consideración, la Ley Núm. 45 reconoció el derecho de los empleados a no afiliarse ni ser representados por la organización obrera certificada. Asimismo, la Sec. 4.2 de Ley Núm. 45 (3 L.P.R.A. sec. 1451c (ed. 2000)), ya derogada, eximió del pago de cargos por servicio a los empleados que hubiesen optado por ejercer tal derecho.[2] Es decir, mediante dicha **\*647** legislación los empleados que optasen por la no afiliación estarían exentos de pagar cargos por servicio a su representante, aun cuando le aplicaran las disposiciones del convenio colectivo en lo que respecta a salarios, beneficios marginales y condiciones generales de empleo.

[2] En el 2001 la Asamblea Legislativa enmendó la Ley Núm. 45 para, entre otras cosas, sustituir la Sec. 4.2 por un nuevo articulado denominado "Opción de no afiliarse

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 4 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

y cargos por servicio". La Ley Núm. 96, *supra*, incorporó la opción de no afiliarse y estableció un nuevo cargo por servicio para los que opten por ejercerla. Por su importancia, trascribimos el mencionado Art. 17:

*Opción de no afiliarse*

Aquellos empleados que formen parte de una unidad apropiada para fines de negociación colectiva debidamente certificada por la Comisión, que opten por no afiliarse ni ser representados por la organización obrera debidamente certificada, podrán solicitar ser excluidos de la misma mediante presentación de una notificación al efecto al jefe de la agencia, con copia al representante exclusivo, dentro de los treinta (30) días siguientes a la notificación de la certificación del representante exclusivo. 3 L.P.R.A. sec. 1454.

*Cargo por servicio*

Los miembros de la unidad apropiada que *opten* por no afiliarse pagarán al representante exclusivo un cargo por servicio hasta un máximo de cincuenta (50) por ciento de la cuota regular establecida para los afiliados al representante exclusivo. También tendrán que observar las disposiciones del convenio colectivo en cuanto a los procedimientos para ventilar quejas, agravios y arbitraje, siéndole aplicables, en igual medida, las disposiciones del Convenio Colectivo referentes a salarios, beneficios marginales y condiciones de empleo. (Énfasis suplido.) 3 L.P.R.A. sec. 1454a.

De las disposiciones antes transcritas se desprende la intención del legislador de modificar la situación jurídica vigente hasta ese momento, para obligar a los empleados que en adelante opten por no afiliarse a contribuir a la **\*648** organización sindical que los representa. Claramente la Ley Núm. 96 cambió la situación jurídica para los que, al momento en que entró en vigor, no hubiesen ejercido la opción de no afiliarse.

Aclarado lo anterior, nos resta examinar si la intención del legislador fue para que dicha obligación se aplicase retroactivamente a los empleados que hubiesen optado por la no afiliación bajo el estado de derecho hasta entonces vigente.

### III

**[3]** La irretroactividad de las leyes se concibe como un principio fundamental de interpretación estatutaria. Dicho principio se incorpora a nuestro ordenamiento jurídico a través del Art. 3 del Código Civil, *supra*, que establece que las leyes no tendrán efecto retroactivo si no dispusieren expresamente lo contrario. Por lo tanto, la *excepción es la retroactividad.* *Consejo Titulares v. Williams Hospitality*, 168 D.P.R. 101 (2006); *Nieves Cruz v. U.P.R.*, 151 D.P.R. 150 (2000); *Ocasio v. Díaz*, 88 D.P.R. 676 (1963). Aclaramos que la retroactividad no sólo es la excepción, sino que tiene lugar en circunstancias extraordinarias como veremos más adelante. A raíz de ello, son pocas las ocasiones en que nos hemos apartado de la norma general de irretroactividad, ya que la absoluta retroactividad de las leyes conlleva la muerte de la seguridad y de la confianza jurídica. *Ocasio v. Díaz*, supra, págs. 728–729.

**[4]** Aunque de la referida disposición del Código Civil surge el deber de establecer expresamente la retroactividad, hemos resuelto que ésta puede surgir de la voluntad implícita del legislador. *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378 (1973). Es decir, la intención del legislador de darle efecto retroactivo a una ley puede ser expresa o tácita. *Consejo Titulares v. Williams Hospitality*, supra; *Rodríguez v. Retiro*, 159 D.P.R. 467 (2003). **\*649**

Ahora bien, ello no significa que podamos impartirle retroactividad a una ley a la ligera. La intención del legislador de darle efecto retroactivo a una ley debe desprenderse del estatuto. En síntesis, la retroactividad, *por ser un acto excepcional*, debe aparecer expresamente o surgir claramente del estatuto. *Nieves Cruz v. U.P.R.*, supra; *Vázquez v. Morales,* 114 D.P.R. 822 (1983). Así es como único mantenemos el principio de irretroactividad de las leyes.

A esos fines, en ausencia de un mandato expreso del legislador, sólo le hemos impartido efecto retroactivo a una ley en circunstancias supremas y extraordinarias. Se trata de circunstancias en las que el interés público, la justicia o los propósitos de la propia ley así lo ameritan. *Nieves Cruz v. U.P.R.*, supra. Por ejemplo, en *Warner Lambert Co. v. Tribunal Superior*, supra, le impartimos efecto retroactivo a la Ley Núm. 75 de 24 de junio de 1964 para no derrotar el *propósito cardinal* del estatuto convirtiéndolo en una medida inocua. De igual forma, en *Vélez v. Srio. de Justicia*, supra, resolvimos que la legislación para prohibir la operación de máquinas electrónicas de "Pin Ball" a una distancia de 200 metros de las escuelas tenía efectos retroactivos. Notamos como, mientras más grave sea el mal social que el estatuto intenta remediar, mayor justificación para su aplicación

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 5 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

retroactiva. *Warner Lambert Co. v. Tribunal Superior*, supra.

**[5]** Conforme a lo anterior, no podemos endosar cualquier determinación de retroactividad que se haga ignorando los principios antes esbozados. Partimos de la premisa que existe una presunción de irretroactividad en los casos en los que el legislador guarda silencio al respecto. Por consiguiente, si del texto o de los propósitos legislativos no surge de forma clara, cierta y definitiva la intención de que la ley tenga efecto retroactivo, no podemos nosotros impartirle dicho efecto. *Vargas v. Retiro*, 159 D.P.R. 248 (2003). De hecho, en *Nieves Cruz v. U.P.R.*, supra, pág. 160, resolvimos que de existir una intención legislativa de retroactividad *definitiva* "lo lógico hubiese sido que se incluyera **\*650** en la citada Ley Núm. 98 en una sencilla oración que expresara tal intención".

**[6]** Por último, cabe recordar que, en materia de interpretación estatutaria, las reglas de hermenéutica establecen que cuando el texto de la ley es claro y libre de ambigüedad hay que ceñirse a éste. Es decir, cuando el texto de la ley es claro y libre de ambigüedad no debe ser sustituido bajo el pretexto de cumplir con los propósitos legislativos. *Nieves Cruz v. U.P.R., supra, Irrizary v. J & J Cons. Prods. Co., Inc.*, 150 D.P.R. 155 (2000). Por ende, si del texto de la ley no surge su aplicación retroactiva no podemos, en ausencia de circunstancias extraordinarios, ignorar la letra de la ley.

### IV

En el caso ante nuestra consideración, los peticionarios sostienen que la Ley Núm. 96 les fue aplicada retroactivamente, ya que fueron eximidos del pago de cargos por servicio en virtud de la legislación anterior. Alegan que la Ley Núm. 96 no dispone para su aplicación retroactiva por lo que el Departamento de Educación está impedido de descontarles de su salario un cargo por servicio. Les asiste la razón.

**[7]** Del texto de la Ley Núm. 96 no surge de modo alguno que el cobro de un cargo por servicio a los empleados no afiliados ha de tener efecto retroactivo. Por el contrario, hay disposiciones que sostienen que su aplicación debe ser prospectiva. Así, por ejemplo, el Art. 10 de la Ley Núm. 96 dispone que su entrada en vigor será "inmediatamente después de su aprobación", sin especificar si tendrá efecto retroactivo. Es decir, se limita a establecer que tendrá vigencia inmediata. Cabe mencionar que en otros casos en los que el legislador ha querido conferir efecto retroactivo a una ley, lo ha dispuesto expresamente en ese mismo articulado.[3] **\*651**

Del mismo modo, la citada Sec. 17.2 de la Ley Núm. 96 en controversia establece que "[l]os miembros de la unidad apropiada *que opten* por no afiliarse pagarán al representante exclusivo un cargo por servicio ...". Del lenguaje de la disposición antes transcrita se desprende la intención del legislador de que se cobre el cargo por servicio a los empleados que, a partir de su vigencia, opten por no afiliarse. Entendemos que si otro hubiese sido el ánimo del legislador, así lo hubiese aclarado en el texto de la ley. Este Tribunal no puede sustituir la palabra *opten* por *optaron*.

**[8]** Por otro lado, para auscultar la intención del legislador, en ausencia de una disposición expresa en la ley, es preciso que nos encontremos en circunstancias extraordinarias. Nos referimos a los casos en que se intenta corregir un mal social o evitar una injusticia. Claramente el cobro retroactivo de un cargo por servicio a favor de una organización sindical no constituye uno de estos supuestos.

Según surge de la Exposición de Motivos de la Ley Núm. 96, su propósito fue el de "atemperar la legislación existente a las necesidades y aspiraciones de nuestros servidores públicos y para proveer un marco legal adecuado que garantice y amplíe el ámbito de negociación lo que redundará en un mejor servicio a la ciudadanía". Exposición de Motivos de la Ley Núm. 96 (2001 (Parte 1) Leyes de Puerto Rico 404). Tal expresión legislativa, por sí sola, no nos mueve a concluir que debemos aplicar la ley retro activamente. Por otro lado, la única mención que se hace con relación a la Ley Núm. 45 es que ésta no llenó totalmente las expectativas de los grupos impactados. No hace referencia a incompatibilidades o contradicciones que se quieran remediar con la aprobación de la Ley Núm. 96. **\*652**

### V

**[9]** En virtud de lo antes expuesto, *declaramos ilegales los descuentos de cargos por servicio efectuados a los maestros que notificaron su interés en no afiliarse a la Federación de Maestros y fueron eximidos de pagar cargos por servicio en virtud de la legislación anterior. Resolvemos que la Ley Núm. 96 sólo aplica prospectivamente a los empleados que opten por no afiliarse a la organización obrera después de su vigencia.*

*Se dictará sentencia de conformidad.*

La Jueza Asociada Señora Fiol Matta disintió con una

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

opinión escrita, a la cual se unió el Juez Asociado Señor Rebollo López.

--O--

Opinión disidente emitida por la Jueza Asociada Señora Fiol Matta, a la cual se une el Juez Asociado Señor Rebollo López.

Disiento de la decisión mayoritaria que resuelve eximir a un grupo selecto de empleados públicos de pagar los cargos por servicio a favor de la organización sindical certificada y les permite disfrutar, a título gratuito, de los beneficios y mecanismos que provee el convenio colectivo. La opinión mayoritaria concluye en el caso de autos que quienes únicamente tendrían que pagar por los servicios del sindicato sin ser miembros de éstos son los empleados que opten por no afiliarse a la organización obrera después del 7 de agosto de 2001, fecha de vigencia de la Ley Núm. 96, que enmendó la Ley de Relaciones del Trabajo para el Servicio Público. De esta forma, aquellos empleados que notificaron su decisión de no afiliarse al sindicato antes del 7 de agosto de 2001, están exentos de no pagar cargos por servicios a la organización sindical que, en última instancia, *653 representa sus intereses y negocia en su nombre las condiciones y los términos de su empleo. Ello permite a un grupo de empleados beneficiarse gratuitamente de los servicios que provee el representante exclusivo en la negociación colectiva y en la administración de un convenio colectivo. A pesar de que la intención legislativa tras la Ley Núm. 96 era precisamente la de clarificar las disposiciones sobre los cargos por servicio para quienes optasen por no afiliarse, la Mayoría de este Tribunal decide perpetuar la situación que dicha legislación buscó corregir al imponer el pago de un cargo razonable por los servicios que provee una organización sindical a los trabajadores. Por las razones que expreso a continuación, disiento de esa decisión.

**I**

En el caso de autos, la opinión mayoritaria resuelve que el Departamento de Educación no puede hacer descuentos por concepto de cargos por servicio a los maestros que habían notificado su interés en no afiliarse a la Federación de Maestros antes de la vigencia de la Ley Núm. 96. Resuelve que la Ley Núm. 96, que enmienda la Ley Núm. 45 de 25 de febrero de 1998, conocida como la Ley de Relaciones del Trabajo para el Servicio Público, no provee para que el cobro de un cargo por servicio a los empleados no afiliados se extienda a aquellos empleados que fueron originalmente eximidos del pago de tal cargo en virtud de la Ley Núm. 45. En otras palabras, concluye que la Ley Núm. 96 sólo puede tener efecto prospectivo y que por esa razón las disposiciones que imponen el cargo por servicio no aplican a los empleados que ya habían optado por no afiliarse a la fecha de vigencia de estas enmiendas.

Para llegar a este resultado, la opinión mayoritaria hace uso de una exégesis a mi juicio incompleta, que no ausculta cumplidamente la verdadera intención legislativa tras las enmiendas que la Ley Núm. 96 introdujo a la Ley *654 de Relaciones del Trabajo para el Servicio Público de Puerto Rico.

La opinión se apoya en que la Ley Núm. 96 sólo expresa que será vigente "inmediatamente después de su aprobación", sin disponer su aplicación retroactiva. Con igual lógica concluimos que el que no se mencione el supuesto de aplicación retroactiva, de por sí, no nos permite llegar a ninguna conclusión sobre la retroactividad de la ley.

Al hablar de la vigencia de una ley nos referimos al momento a partir del cual ésta tendrá efectos jurídicos, es decir, el momento en que ésta "existe" jurídicamente, de manera que pueda ser aplicada. Así, no hay duda que la Ley Núm. 96 de 7 de agosto de 2001 "existe" para ser aplicada desde su aprobación. Pero esa vigencia inmediata no puede llevarnos a concluir ineluctablemente que sus disposiciones no pueden aplicarse a un grupo de personas que ya habían actuado de determinada forma o habían realizado ciertos actos antes de que ésta entrara en vigor. Por eso, para determinar el alcance retroactivo o prospectivo de la Ley Núm. 96 hay que acudir a su contenido sustantivo y a la intención legislativa.

La opinión mayoritaria también encuentra apoyo en el tiempo verbal utilizado por la Ley Núm. 96 para establecer el cargo por servicio. Esta disposición, incluida como la nueva Sección 17.2 en la Ley de de Relaciones del Trabajo para el Servicio Público de Puerto Rico, establece que "[l]os miembros de la unidad apropiada que opten por no afiliarse pagarán al representante exclusivo un cargo por servicio hasta un máximo de cincuenta (50) por ciento". 3 L.P.R.A. sec. 1454a. La opinión mayoritaria destaca la utilización del verbo "optar" en el modo subjuntivo presente ("opten") para concluir que, al no usarse el tiempo pasado "optaron", se revela que la intención del legislador era la de cobrar el cargo por servicio sólo a los empleados que optaran por no afiliarse a partir de la vigencia de la Ley Núm. 96.

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 7 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**

2007 TSPR 123

No estoy de acuerdo con esta interpretación, pues no *655 pone la fijación del cargo por servicio en el contexto de las demás disposiciones sobre la no afiliación. La opinión del Tribunal no considera que la Ley Núm. 96 adopta no una, sino dos disposiciones para sustituir la Sección 4.2 de la Ley Núm. 45 (3 L.P.R.A. sec. 1451c (ed. 2000)). La nueva Sección 17.1 (3 L.P.R.A. sec. 1454) atiende al concepto de la no afiliación y establece que el empleado podrá solicitar ser excluido de la organización obrera que sea certificada por la Comisión de Relaciones del Trabajo como representante exclusivo de determinada unidad apropiada. Según esta disposición el empleado deberá notificar su solicitud de exclusión dentro de los treinta días siguientes a la notificación de la certificación del representante exclusivo. En otras palabras, la Sección 17.1 establece un término dentro del cual un empleado puede notificar su interés en no afiliarse. Esta notificación sólo puede darse dentro del término establecido y una sola vez, siendo pues un acto único de consumación instantánea que no se repite.

Por otro lado, la nueva Sección 17.2 de la ley dispone que los empleados que opten por no afiliarse tendrán que pagar un cargo por servicio al representante exclusivo, equivalente a no más de la mitad de la cuota regular establecida para los empleados afiliados. Además, esta sección indica cuáles disposiciones del convenio colectivo le aplicarían a estos empleados no afiliados. De esa forma, la Sección 17.1 regula el evento de la notificación de la solicitud de no afiliación, mientras la Sección 17.2 establece el cargo por servicio que pagarán los empleados que ejerzan la opción de no afiliarse.

La acción de notificar la no afiliación que establece la Sección 17.1 puede darse en una sola ocasión, dentro del término allí establecido. Sin embargo, como cuestión de realidad, la acción de optar por no afiliarse no está circunscrita a un momento particular, sino que es reiterativa y continua, pues después de notificar su decisión de no afiliarse oportunamente, estos empleados pueden siempre optar por afiliarse a la representante exclusiva. Indudablemente *656 la ley no prohíbe su afiliación eventual. De esa forma, la notificación sólo se puede dar en un momento determinado, pero la opción de no afiliarse es una acción que se ejerce continuamente por los empleados que hayan notificado su no afiliación. Por lo tanto, mientras no se afilien a la organización obrera certificada, los empleados a los que alude la Sección 17.2 están ejerciendo constante y continuamente su opción de no afiliarse.

Por todo lo anterior, entiendo que en el caso particular de la Ley Núm. 96, el uso del subjuntivo del verbo "optar" en tiempo presente no es determinativo de su aplicación temporal, ya que el ejercicio de esta opción es continua.[1]

Un empleado que en 1998 notificó oportunamente su interés de no afiliarse, aún hoy está ejerciendo su opción de no afiliarse. Por eso el análisis gramatical de la Sección 17.2 no resulta suficiente para determinar si la intención legislativa fue la de otorgarle efecto retroactivo a esta disposición. Para ello este Tribunal debió auscultar la intención legislativa a la que responde la Ley Núm. 96, que, según explico a continuación, era que esta legislación aplicara a todos los empleados públicos que no se afiliaran a la organización obrera de su agencia, indistintamente del momento en el que notificaron su decisión.

## II

La Ley Núm. 45 de 25 de febrero de 1998, conocida como Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, 3 L.P.R.A. secs. 1451–1453j, confiere a los empleados públicos de las agencias del gobierno central y los *657 municipios el derecho a la organización sindical y a la negociación colectiva, dentro de ciertos parámetros que la misma ley establece. De acuerdo con la Ley Núm. 45, los empleados públicos que no estén cubiertos por la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945 (29 L.P.R.A. secs. 61–76), podrán organizarse y afiliarse en organizaciones sindicales de su selección para negociar sus condiciones de trabajo.

La Ley Núm. 45 dispone que los empleados de las diferentes unidades apropiadas escogerán, mediante voto mayoritario, la organización sindical que los representará ante la agencia correspondiente. 3 L.P.R.A. sec. 1451g. La organización que obtenga la mayoría absoluta de los votos en las elecciones será certificada como el representante exclusivo de los empleados comprendidos en la unidad apropiada y tendrá autoridad para negociar con la agencia un convenio colectivo en la que se acuerden, entre otras cosas, los salarios, los beneficios marginales, los términos y las condiciones de empleo. 3 L.P.R.A. sec. 1451j. Véanse: *Depto. Educ. v. Sindicato Puertorriqueño*, 168 D.P.R. 527 (2006); *A.R.PE. v. Coordinadora*, 165 D.P.R. 850 (2005); *Federación v. Molina*, 160 D.P.R. 571 (2003); *Pérez v. Com. Rel. Trab. Serv. Púb.*, 158 D.P.R. 180 (2002). Una vez se certifique a una organización sindical como representante de una unidad apropiada, ninguna otra entidad podrá representar a los empleados de dicha unidad. 3 L.P.R.A. sec. 1451f.

A pesar de esto, los empleados públicos que no interesen afiliarse ni ser representados por el representante exclusivo, tienen derecho a ser excluidos de la organización sindical, prohibiéndose expresamente el

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 8 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

taller cerrado. Estos empleados, al igual que aquellos que opten por ser miembros de la organización sindical, se beneficiarían del procedimiento de quejas y agravios del convenio colectivo, incluyendo arbitraje, y de la misma forma disfrutarían de los salarios, los beneficios marginales, los términos y las condiciones de empleo contenidas en el convenio colectivo que suscriban la agencia y el representante exclusivo. **\*658** 3 L.P.R.A. sec. 1451c (ed. 2000). Véanse: *Asociación Maestros v. Comisión,* 159 D.P.R. 81 (2003); *Pérez v. Com. Rel. Trab. Serv. Púb.*, supra.

La Ley Núm. 45 disponía originalmente en su Sección 4.2 que "[e]stos empleados [no afiliados] no pagarán cargos por servicios a la organización obrera".[2] Sin embargo, la Ley Núm. 96 de 7 de agosto de 2001, como mencionamos anteriormente, derogó esta sección y la sustituyó por dos nuevas. La Sección 17.1 reafirma la opción de los empleados a solicitar la exclusión de la organización sindical certificada. 3 L.P.R.A. sec. 1454. En cambio, la Sección 17.2 dispone que "[l]os miembros de la unidad apropiada que opten por no afiliarse *pagarán al representante exclusivo un cargo por servicio* hasta un máximo de cincuenta por ciento (50%) de la cuota regular establecida para los afiliados al representante exclusivo". (Énfasis suplido.) 3 L.P.R.A. sec. 1454a.

En la Exposición de Motivos de la Ley Núm. 96, la Asamblea Legislativa reconoció "la necesidad de enmendar la Ley [Núm. 45] para atemperar la legislación existente a las necesidades y aspiraciones de nuestros servidores públicos". 2001 (Parte 1) Leyes de Puerto Rico 404. La intención legislativa que se desprende de su historial es de clarificar ciertos aspectos de la Ley Núm. 45 relacionados a la no afiliación. Prioritario entre éstos es lo concerniente al cargo por los servicios prestados a los empleados no afiliados, pues la Ley Núm. 96 está expresamente dirigida a **\*659** resolver la confusión causada por las contradicciones internas de la Ley Núm. 45 en cuanto a esta opción.

Al examinar el historial de ambas leyes advertimos que la intención original de la Ley Núm. 45 era la de requerir un cargo por estos servicios. Así, la versión original del Proyecto del Senado 813, que eventualmente fue aprobado como la Ley Núm. 45 en 1998, establecía en su Sección 4.2 un cargo por servicio para los empleados que optaran por no afiliarse a la organización sindical certificada como representante exclusivo. Dicho cargo no excedería el 66% del pago de la cuota establecida para los empleados afiliados, y la organización debía justificarlo como costo de la negociación y la administración del convenio y de la representación sindical en general.

En su Sección 3, el proyecto definía el cargo por servicio como el "[p]ago hecho al representante exclusivo por empleados de la unidad contratante que han ejercido el derecho a no afiliarse al sindicato de su agencia". P. del S. 813 de 26 de enero de 1998, pág. 6. A su vez, la Sección 15.1 del proyecto imponía a los representantes exclusivos la obligación de someter un informe a la Comisión de Relaciones del Trabajo que indicara, entre otras cosas, "la suma exigida a sus miembros en concepto de cuotas de iniciación, cuotas periódicas, o *cargos por servicios a empleados no afiliados*". (Énfasis suplido.) Íd., pág. 49. La intención de imponer un cargo por servicio a los empleados que optasen por no afiliarse quedó más clara aún al discutirse el proyecto de ley en el hemiciclo del Senado. Allí el senador Charlie Rodríguez Colón afirmó:

> No debemos obligar a ningún trabajador a tener que afiliarse si no quiere. Pero sí tenemos que obligar a ese trabajador que decida no afiliarse a que tenga que pagar una cuota, una cuota razonable a la unión que estará representando los intereses de los trabajadores. Porque ese trabajador que no se afilia va a disfrutar de los beneficios que pueden obtenerse en la Negociación Colectiva y debe pagar como se establece aquí [en el proyecto de ley]. Senado de Puerto Rico, *Discusión del Proyecto del Senado 813 durante la sesión del día lunes, 26 de enero de 1998*, pág. 54. **\*660**

Sin embargo, según vimos, en la versión final aprobada como la Ley Núm. 45 de 25 de febrero de 1998 se dispuso que los empleados no afiliados no habrían de pagar cargos por servicios a la organización sindical certificada, mientras se mantuvieron, en evidente contradicción, ciertas disposiciones relacionadas a dicho cargo por servicio. Incluso quedó, en la ley finalmente adoptada, la disposición del proyecto de ley que obligaba al representante exclusivo a informar a la Comisión la suma que exigiría como "cargos por servicio a empleados no afiliados". Véase 3 L.P.R.A. sec. 1453d. De esta forma, la Ley Núm. 45 fue aprobada con serias incongruencias sustantivas.

Es en este contexto que debemos precisar la intención de la Asamblea Legislativa al aprobar la Ley Núm. 96 y establecer expresamente la obligación de los empleados no afiliados de pagar cargos por servicios a las organizaciones obreras certificadas como representantes exclusivos. El Informe sobre el proyecto que se convertiría en la Ley Núm. 96 revela que el propósito legislativo era aclarar las incongruencias de la Ley Núm.

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 9 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**

2007 TSPR 123

45. Resulta esclarecedor también que, según el informe, "la no afiliación en el contexto de la Ley [Núm.] 45 es una opción y no un derecho, puesto que lo que es un derecho conforme a la Ley, es la afiliación al sindicato". Comisión de Trabajo y Asuntos de Veteranos de la Cámara de Representantes de Puerto Rico, *Informe sobre el P. de la C. 1219*, 21 de junio de 2001, pág. 4. Tras esta explicación, el Informe indica que se hizo necesario enmendar la Ley Núm. 45 porque "el cargo por servicio estaba definido pero no establecido en el cuerpo de la medida". Íd., pág. 10. Por eso, al incluir la nueva Sección 17 "se armonizan las disposiciones sobre no afiliación y cargos por servicios contenidos en la ley". Íd.

Conforme a lo discutido, queda claro que la intención legislativa al aprobar la Ley Núm. 96 era la de corregir la contradicción entre el lenguaje de la Sección 4.2 de la Ley Núm. 45 y las demás disposiciones de la ley. La Ley Núm. 96 busca clarificar efectivamente la intención legislativa en torno a la no afiliación y a los cargos por servicios. Ello **\*661** nos lleva a concluir, forzosamente, que tras la aprobación de esa ley los cargos por servicios deben ser cobrados a *todos los empleados que opten por no afiliarse* a la organización obrera que la Comisión de Relaciones del Trabajo haya certificado como representante exclusiva. Sólo de esta forma se cumpliría con la intención legislativa de evitar que estos empleados se beneficien de forma gratuita de los servicios de los sindicatos en la administración de convenios colectivos y en la negociación colectiva de términos y condiciones de trabajo. No aplicar la Ley Núm. 96 a los empleados que notificaron su decisión de no afiliarse antes de que ésta entrara en vigor conllevaría perpetuar, respecto a un grupo específico de empleados, la situación que el legislador buscó corregir y sería contrario a la intención legislativa. Además representaría una grave injusticia el permitir que un grupo selecto de empleados disfruten libre de costo de los beneficios del convenio colectivo mientras los demás pagan una cuota sindical o un cargo por servicio.

No cabe duda, pues, que el propósito de la Ley Núm. 96 es que *todos* los empleados no afiliados paguen el cargo por servicio. Debemos determinar entonces si esto puede hacerse extensivo a los empleados que optaron por no afiliarse antes de 7 de agosto de 2001, y si la alegada facultad de "no afiliación, no representación, no cargo por servicio" concedida por la Ley Núm. 45 es un derecho adquirido por ellos que podría verse afectado por la aplicación retroactiva de la ley. A su vez, esto nos requiere examinar nuevamente el principio de la irretroactividad de las leyes y la doctrina de los derechos adquiridos, concretados ambos en nuestro Código Civil.

### III

Las normas jurídicas pueden aplicarse a hechos y situaciones que ocurran a partir de su vigencia o pueden regular hechos y situaciones ocurridos antes de ese momento, siendo entonces retroactivas. F. Bonet Ramón, *Compendio de Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1959, T. I, **\*662** págs. 199–200. Estas modalidades representan el conflicto clásico de leyes en el tiempo, en el que se contraponen dos principios opuestos. De un lado, el principio de la irretroactividad de las leyes, que impide que un estatuto posterior influya en situaciones jurídicas constituidas al amparo de la anterior, garantizando de esa manera la seguridad y estabilidad de las relaciones jurídicas. Del otro lado, el principio de retroactividad, que extiende la eficacia de una norma jurídica a hechos y situaciones anteriores a su entrada en vigor, o a la regulación de actos y negocios jurídicos creados o permitidos al amparo de un estatuto anterior, en aras de promover la evolución del Derecho. D. Espín Cánovas, *Manual de Derecho Civil Español*, 8va ed., Madrid, Ed. Rev. Der. Privado, 1982, Vol. I, pág. 192.

En varias oportunidades nos hemos expresado sobre la centralidad del principio de la irretroactividad de las leyes en nuestro ordenamiento. Véanse: *Vargas v. Retiro*, 159 D.P.R. 248 (2003); *Almodóvar v. Méndez Román*, 125 D.P.R. 218 (1990); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Claudio v. Cruz Águila*, 84 D.P.R. 435 (1962). Se trata de una norma de marcado abolengo civilista, plasmada en el Artículo 3 del Código Civil de Puerto Rico, que dispone lo siguiente:

> Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario.
>
> En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior. 31 L.P.R.A. sec. 3.

La doctrina española ha identificado tres fundamentos para este principio de irretroactividad. El primero es una política legislativa dirigida a garantizar a la ciudadanía en general confianza y seguridad jurídica. Tiene también una justificación de moral humana basada en los principios de libertad individual que garantizan a los ciudadanos el poder actuar sin obstáculos dentro del margen de la ley. El tercer fundamento, según la doctrina, responde a la psicología colectiva que proclama que *las leyes deben mirar al porvenir y no al pasado*. F. Puig Peña, *Tratado de Derecho* **\*663** *Civil Español*, Madrid, Ed. Rev. Der. Privado, 1957, T. I, Vol. I, págs. 438–439. Véase, además, *Vázquez v. Morales*, 114 D.P.R. 822, 826 (1983).

No obstante lo anterior, la regla de irretroactividad no es una norma rígida de aplicación absoluta. Véanse:

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 10 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

*Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 384–385 (1973); *Rodríguez v. Miller*, 23 D.P.R. 594, 601–602 (1916). El propio lenguaje del Artículo 3 del Código Civil nos lo confirma, pues no prohíbe absolutamente la aplicación retroactiva de las leyes; más bien la permite en "determinadas y supremas circunstancias" y en "supuestos de carácter excepcional". *Nieves Cruz v. U.P.R.*, 151 D.P.R. 150, 158 (2000); F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Eds. Pirámide, 1976, T. I, pág. 131. Desde hace muchos años reconocimos que "la absoluta retroactividad del derecho positivo sería la muerte de la seguridad y de la confianza jurídica; pero también sabemos que la absoluta irretroactividad sería la muerte del desenvolvimiento del derecho". *Ocasio v. Díaz*, 88 D.P.R. 676, 728 (1963). De igual forma, citando a Suárez Collía, señalamos recientemente que nuestro ordenamiento jurídico "se resiste a ser inmovilizado en un momento histórico preciso [ya que] por su propia naturaleza ... debe responder a la realidad de cada momento como instrumento de progreso y perfeccionamiento". J.M. Suárez Collía, *El principio de irretroactividad de las normas jurídicas*, 2da ed. rev., Madrid, Actas, 1994, pág. 56, citado en *Consejo Titulares v. Williams Hospitality*, 168 D.P.R. 101, 108 (2006).

Por esta razón hemos resuelto que, aun cuando sea un acto excepcional, una ley puede tener efecto retroactivo si esa es la *intención legislativa*, sea ésta *expresa o tácita*, y también hemos recalcado que debe darse efecto retroactivo a una ley cuando dicha interpretación resulte *ser la más razonable de acuerdo al propósito legislativo*. *Consejo Titulares v. Williams Hospitality*, supra. Véase, también, *Nieves Cruz v. U.P.R.*, supra, págs. 158–159. La retroactividad de una norma jurídica puede afectar sus elementos estructurales, esto es, el supuesto fáctico que determina las condiciones **\*664** o presupuestos de su aplicación y el mandato que determina los efectos jurídicos que de ésta se deriva. J. Santos Briz y otros, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. I, pág. 295. Ahora bien, el Artículo 3 del Código Civil impone una limitación significativa a dicho efecto retroactivo, ya surja éste expresamente del texto de la ley o se derive de la intención legislativa, y es que *la retroactividad de una ley no puede perjudicar los derechos adquiridos en virtud de una legislación anterior.* Véase 31 L.P.R.A. sec. 3. Examinemos más de cerca ese concepto.

Históricamente se ha expresado que un derecho es "adquirido" (*ius quaesitum firmum*) si es "consecuencia de un hecho idóneo para producirlo en virtud de la ley vigente en el tiempo en que se haya cumplido o realizado ... y que entró a formar parte de[l] ... patrimonio [de la persona]". L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 9na ed., Madrid, Ed. Tecnos, 1997, Vol. I, pág. 108. Véase, también, J. Castán Tobeñas, *Derecho civil español, común y foral*, 12ma ed., Madrid, Ed. Reus, 1982, T. I, Vol. I, pág. 616. Los derechos adquiridos son, pues, aquellos cuya consecuencia jurídica es la de entrar directamente al patrimonio del individuo,[3] cuyo ejercicio y disfrute, por razón de su importancia social, no puede ser alterado retroactivamente por una ley aprobada después de su adquisición.[4] Estos derechos **\*665** tienen "tal fuerza y autonomía" derivada de la norma jurídica que los instituyó, que pueden oponerse con "toda la magnitud de su fuerza" a cualquier intento de destruirlos o ignorarlos que provenga de una ley posterior. Puig Peña, *Tratado de Derecho Civil Español, op. cit.*, pág. 445; E. Vázquez Bote, *Derecho Privado Puertorriqueño*, Orford-San Juan, Equity Publishing Co., 1992, T. II, pág. 442. De esta forma la aplicación inmediata de una ley posterior a las situaciones o relaciones jurídicas subsistentes al momento de su vigencia se encuentra limitada ante la necesidad de respetar aquellos derechos legítimamente adquiridos. F. Puig Brutau, *Introducción al Derecho Civil*, Barcelona, Ed. Bosch, 1981, pág. 184.

Sin embargo, no toda situación jurídica que surge al amparo de una ley anterior es un derecho adquirido cobijado por el principio de irretroactividad frente a otra ley posterior. Explica Santos Briz que para que un supuesto sea un derecho adquirido

> ... es necesario que se trate de situaciones subjetivas, cuya extensión y alcance son determinados por un acto o negocio jurídico, no directamente por la ley, que se limita a hacer posible la conclusión de ese acto o negocio .... En cambio, las situaciones jurídicas objetivas ... pueden ser modificadas por leyes posteriores. J. Santos Briz y otros, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. I, pág. 294.

Basándonos en la cita anterior, en *Consejo Titulares v. Williams Hospitality*, supra, pág. 109, indicamos que el derecho adquirido no abarca el conjunto de facultades que una ley anterior permita ejercer a los ciudadanos, "ya que esto sería el estado de derecho objetivo que la nueva ley intenta cambiar".

Así, lo que se adquiere con inmunidad contra la retroactividad, propiamente hablando, es el *derecho como unidad conceptual*, y no las facultades y cualidades *accesorias* que **\*666** determinan su ejercicio, contenido y adquisición. Véanse: Santos Briz y otros, *op. cit.*, pág. 294; C. Valverde y Valverde, *Tratado de Derecho Civil Español*, 4ta ed., Valladolid, Ed. Talleres Tipográficos Cuesta, 1935, T. I, págs. 137–138. Este contenido accesorio se compone sólo de manifestaciones

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 11 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

secundarias del derecho, que aun cuando falten, no por ello desaparece o *se socava* el derecho principal.

Un derecho adquirido sólo puede ser aquel que se deriva de un título individual y privado, producto de una situación subjetiva consumada que es, a su vez, resultado de un acto o negocio jurídico amparado en un estado de derecho creado por una ley anterior. En cambio, las facultades y los atributos accesorios de un derecho se derivan directamente de un título común a todos los ciudadanos, determinado por una situación jurídica objetiva que promueve un interés público, y no son atribuibles a ningún ciudadano en particular debido a que se conceden con abstracción a un acto de voluntad individual. Santos Briz, *op. cit.*, pág. 294; Valverde y Valverde, *op. cit.*, pág. 137.

Estos aditamentos legales no entran directamente al patrimonio del titular, ya que al ser meramente circunstanciales al derecho principal y dependientes de éste, no pueden ser apropiados ni se puede producir un interés propietario en su tenencia. Por consiguiente, una nueva ley podría delimitar no sólo los atributos accesorios de un derecho que se adquieren prospectivamente a partir de la efectividad de dicha ley, sino los conseguidos al amparo de una ley anterior. Véase M. Albaladejo, *Derecho Civil*, 9na ed., Barcelona, Ed. Bosch, 1983, T. I, Vol. I, pág. 200.

## IV

En el caso de autos, no hay duda en cuanto a que la Ley Núm. 96 fue aplicada de forma retroactiva a los maestros que expresaron su no afiliación a la organización obrera al amparo de la Ley Núm. 45. La eficacia de la Ley Núm. 96 se extendió a la regulación de hechos y situaciones anteriores **\*667** a su entrada en vigor y permitidos plenamente al amparo de un estatuto anterior. Como indicamos previamente, esta era precisamente la intención legislativa, para así corregir las incongruencias que presentaba la ley anterior y fortalecer el derecho de negociación colectiva en el gobierno central.

Sin embargo, aún debemos evaluar si dicha aplicación retroactiva perjudica algún derecho adquirido de los maestros que notificaron su determinación de no afiliarse antes de la vigencia de la Ley Núm. 96. Los peticionarios entienden que estos maestros adquirieron dos derechos: el de no estar representados por la organización obrera certificada y el de no pagar cargos por servicio. Sin embargo, la naturaleza de estos derechos no nos permite concluir que ambos estuvieran inmunes al efecto de la nueva ley.

Hemos visto que la característica principal de los derechos adquiridos es que provengan de situaciones subjetivas, que su alcance se determine por un acto o negocio jurídico y que, en virtud de ese negocio jurídico, entren a formar parte del patrimonio de la persona. Igualmente, hemos explicado que el derecho que se adquiere de esa forma tiene que ser de por sí una unidad conceptual y no una facultad o cualidad accesoria de éste. Contrario a lo que pretenden los peticionarios, el no tener que pagar cargos por servicio no es una unidad conceptual independiente de por sí que se determine por un acto o negocio jurídico basado en la voluntad individual. La prerrogativa de no pagar estos cargos es una facultad accesoria que el ordenamiento previo otorgaba a los empleados que en aquel entonces optaron por no afiliarse. La unidad conceptual independiente es la facultad de no afiliarse; el no pagar cargos por servicio es uno de los aspectos supletorios que determinan el ejercicio de dicha facultad. La no afiliación es la situación subjetiva nacida de la voluntad de los empleados, mientras que el pago de cargos por servicio es una situación objetiva que tiene su causa inmediata en la ley, con abstracción de actos voluntarios e individuales, puesto **\*668** que no requiere para su efectividad ejercicio de voluntad adicional alguno.

El no pagar cargos por servicios prestados no se deriva de un título propio y privado de cada una de las personas que optaron por no afiliarse antes de la aprobación de la Ley Núm. 96, ni fue determinado por un negocio jurídico que descansó en el estado de derecho que regía al amparo de la Ley Núm. 45. Por el contrario, este concepto se deriva de un título común a todos los empleados que optaron por no afiliarse en ese momento. Debido a su contenido de interés público, no pertenece a ningún empleado en particular. De esta manera, la facultad de no pagar cargos por servicio dimana de la no afiliación, pero no es un derecho de por sí, y por ser sólo accesorio y circunstancial a la no afiliación, puede ser alterado retroactivamente por una nueva ley. Por tal razón entiendo que la aplicación retroactiva de la Ley Núm. 96 no afecta ningún derecho adquirido de los empleados que optaron por no afiliarse antes de su vigencia bajo la ley anterior.

En el caso de autos, también tenemos que tomar en consideración la sustancialidad del interés público que promueve la enmienda a la Ley Núm. 45, lo que la opinión mayoritaria descarta en su interpretación de la ley. La Ley Núm. 96 buscó rectificar las incongruencias de la Ley Núm. 45 que permitían a los empleados no afiliados disfrutar a título gratuito de los beneficios y mecanismos que provee el convenio colectivo negociado por la organización obrera con el patrono. Acceder a la solicitud de las agrupaciones peticionarias, que es precisamente lo que hace una mayoría del Tribunal, conlleva reconocer a cierto grupo de empleados un

Case:17-03283-LTS Doc#:19252-2 Filed:11/16/21 Entered:11/16/21 00:10:14 Desc: Exhibit Page 12 of 14

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**
2007 TSPR 123

derecho a beneficiarse gratuitamente de los servicios que provee la organización sindical certificada en la negociación colectiva y en la administración del convenio colectivo.

Lo anterior me lleva a concluir que el Tribunal de Apelaciones no erró al resolver que los descuentos de cargos por servicios prestados realizados por el Departamento de Educación a los empleados no afiliados desde la vigencia **\*669** de la Ley Núm. 96 son válidos y al disponer que dicha agencia puede continuar efectuándolos. Todos los empleados no afiliados a la organización obrera certificada como representante exclusivo, sin distinción de cuándo notificaron su interés de ser excluidos de la representación, deben pagar cargos por servicios, según dispuesto por la Ley Núm. 96. Además, el no pagar cargos por servicio no es un derecho adquirido que deba ser preservado ante la vigencia de dicha ley.

**V**

Por todo lo anterior, disiento de la decisión a la que llega este Tribunal en el caso de autos. Hubiese confirmado la sentencia recurrida, para así permitir el cobro uniforme y razonable de un cargo por los servicios que provee una organización sindical en la negociación colectiva. Al suscribir la opinión emitida hoy, este Tribunal ha afectado negativamente a las organizaciones sindicales que sirven los intereses de los empleados públicos del gobierno central de Puerto Rico. En vez de fortalecer la organización sindical de estos empleados, lo que hace la opinión mayoritaria es fraccionar el apoyo que pueden recibir los esfuerzos de negociación colectiva para el mejoramiento de las condiciones de trabajo de los servidores públicos.

En este sentido, el resultado que produce la opinión mayoritaria es la división de una unidad apropiada en tres clases de miembros. En primer lugar, tenemos a los empleados afiliados al representante exclusivo certificado por la Comisión que pagan cuotas y participan de las actividades sindicales y en el proceso de negociación colectiva. De otro lado, se encuentran los empleados públicos que no interesan afiliarse a la organización sindical ni participar de sus actividades, pero como se benefician de los resultados de la negociación colectiva pagan un cargo, menor al de la cuota sindical, por los servicios ofrecidos por el sindicato en la preparación y administración del convenio colectivo. Y por último, tenemos a una tercera categoría de empleados **\*670** públicos, miembros de la unidad apropiada, quienes disfrutan de todos los beneficios obtenidos en la negociación colectiva y por las acciones sindicales sin tener que pagar ningún tipo de cargo por este servicio. Estos empleados, con la venia de una mayoría de este Tribunal, están autorizados a servirse gratuitamente a posteriori del esfuerzo de la organización sindical, mientras que los otros dos grupos de empleados pagan razonablemente por los servicios que les son ofrecidos en el mejoramiento de sus condiciones y términos de empleo.

Hoy este Tribunal ha perpetuado el cuadro confuso y desarticulado de la actividad sindical de los empleados públicos de Puerto Rico que la Ley Núm. 45 intentó remediar en 1998. Por todas estas razones, y a gran pesar mío, me veo en la obligación de emitir estas expresiones en disidencia.

**Footnotes**

1   Desde 1999 la Federación de Maestros es la organización obrera certificada por la Comisión de Relaciones del Trabajo del Servicio Público como la representante exclusiva de la unidad apropiada del personal docente del Departamento de Educación.

2   "*Sección 4.2—Derecho a no afiliarse*
    "Aquellos empleados que formen parte de una unidad apropiada para fines de negociación colectiva debidamente certificada por la Comisión, que no interesen afiliarse ni ser representados por la organización obrera debidamente certificada, podrán solicitar ser excluidos de la misma. Este derecho no aplicará una vez sean miembros de la organización obrera. *Estos empleados no pagarán cargos por servicio a la organización obrera.* Los empleados no afiliados a la organización obrera observarán las disposiciones del convenio colectivo en cuanto a los procedimientos para ventilar quejas, agravios, arbitraje; y les serán aplicables para su beneficio las disposiciones del convenio colectivo en lo que respecta a salarios, beneficios marginales y términos y condiciones de empleo. El taller cerrado y el taller unionado estarán prohibidos." Sec. 4.2 de la Ley Núm. 45 (3 L.P.R.A. sec. 1451c (ed. 2000)).

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**

2007 TSPR 123

[3] En el caso *Consejo Titulares v. Williams Hospitality*, 168 D.P.R. 101 (2006), resolvimos que la nueva Ley de Condominios, Ley Núm. 103 de 5 de abril de 2003, debía aplicarse retroactivamente. Cabe señalar que en aquel caso, del propio texto de la ley surgía una disposición en cuanto a que la ley "entrará en vigor a los (90) días después de su aprobación *y sus disposiciones regirán a todo inmueble sometido al régimen de Propiedad Horizontal, cualquiera que sea el momento en que fuera sometido a dicho régimen*". (Énfasis suplido.) Art. 44 de la Ley Núm. 103 (2003 (Parte 1) Leyes de Puerto Rico 410).

[1] Cabe destacar también que la Ley Núm. 96 de 7 de agosto de 2001 enmendó la definición de *cargo por servicio* contenida en la Ley Núm. 45 de 25 de febrero de 1998, para que leyera, en lo pertinente, de la siguiente forma:
"(g) *Cargo por servicio*— Pago hecho al representante exclusivo por empleados de la unidad contratante que *han optado* por la no afiliación al sindicato de su agencia." (Énfasis suplido.) 3 L.P.R.A. sec. 1451a(g).
En esta disposición el legislador se inclinó por el uso del participio pasivo del verbo "optar", el cual dota de cierta ambigüedad temporal a lo allí establecido, además de otorgarle una dimensión más genérica y de carácter continuo.

[2] Esta sección leía en su totalidad:
"Aquellos empleados que formen parte de una unidad apropiada para fines de negociación colectiva debidamente certificada por la Comisión, que no interesen afiliarse ni ser representados por la organización obrera debidamente certificada, podrán solicitar ser excluidos de la misma. Este derecho no aplicará una vez sean miembros de la organización obrera. *Estos empleados no pagarán cargos por servicios a la organización obrera.* Los empleados no afiliados a la organización obrera observarán las disposiciones del convenio colectivo en cuanto a los procedimientos para ventilar quejas, agravios y arbitraje; y les serán aplicables para su beneficio las disposiciones del convenio colectivo en lo que respecta a salarios, beneficios marginales y términos y condiciones de empleo. El taller cerrado y el taller unionado estarán prohibidos." (Énfasis suplido.) 3 L.P.R.A. sec. 1451c (ed. 2000).

[3] Puede llamarse *patrimonio* al conjunto de derechos y relaciones jurídicas que se deriva necesariamente de la persona del titular y conforma su esfera de acción jurídica, cuyo contenido el ordenamiento dota de unidad por estar sujeto a un régimen unitario de poder y responsabilidad. L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, 5ta ed., Madrid, Ed. Civitas, 1996, Vol. I, pág. 39; R. Badenes Gasset, *Conceptos fundamentales del Derecho: las relaciones jurídicas patrimoniales*, 7ma ed., Barcelona-México, Marcombo Boixareu eds., 1987, págs. 55–56. Este conjunto también incluye derechos y obligaciones pertenecientes al individuo y que son susceptibles de valor pecuniario. *Vda. de Delgado v. Boston Ins. Co.*, 101 D.P.R. 598, 606 (1973). También algunos tratadistas señalan que, para efectos de derechos adquiridos, el patrimonio es el conjunto de preceptos cimentados en lo más profundo de la formación popular que provoca el rechazo de aquellas leyes que perjudiquen sin causa justificada situaciones reconocidas previamente por el ordenamiento. E. Vázquez Bote, *Derecho Privado Puertorriqueño*, Orford-San Juan, Equity Publishing Co., 1992, T. II, pág. 438.

[4] Se ha entendido que los derechos adquiridos nacen de "la conjunción de una norma jurídica existente (situación abstracta de derecho) y la ejecución de un hecho por ella misma previsto (situación concreta); pero que, por razón de la importancia del derecho desde el punto de vista del interés social, ha recibido vida perdurable de la ley que lo generó". R. Noguera Barreneche, *De la no retroactividad de las leyes civiles*, 3ra ed., Santa Fe de Bogotá, Fondo de Publicaciones Institución Universitaria Sergio Arboleda, 1995, págs. 73–74.

**Asoc. Maestros v. Depto. Educacion, 171 D.P.R. 640 (2007)**

2007 TSPR 123