**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL
DISTRITO DE PUERTO RICO**

| | |
|---|---|
| In re:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del ESTADO LIBRE ASOCIADO DE PUERTO RICO et al.,<br><br>                Deudores.<br><br>En el asunto de:<br><br>Maira Ivet Feliciano Rosado<br>N.° DE RECLAMACIÓN 10547<br>503 (9) – INDETERMINADO | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrada Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA, la ACT y el SER.** |

**MOCIÓN DE OBJECIÓN Y EN SOLICITUD DE AUDIENCIA Y VOZ PARA
LA VISTA DEL 14 DE DICIEMBRE DE 2021**

Comparece mediante la presente MOCIÓN DE OBJECIÓN Y EN **¡PETICIÓN DE AUXILIO!**, ante la honorable Laura Taylor Swain, mediante la presente MOCIÓN DE OBJECIÓN Y EN SOLICITUD DE AUDIENCIA Y VOZ PARA LA VISTA DEL 14 DE DICIEMBRE DE 2021, en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, para remitir a la Secretaría (Clerk's Office), los Abogados de la Junta de Supervisión Proskauer Rose LLP (Counsel for the Oversight Board) y los Abogados del Comité de Acreedores, Paul Hastings LLP (Counsel of the Creditor's Committee), y ahora ante la Puerto Rico Ballot Processing en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (en adelante la autoridad federal concernida), *la parte reclamante como acreedor individual y titular de Reclamación, compuesta por la Sra. Maira Ivet Feliciano Rosado (en adelante Sra. Feliciano Rosado), maestra y consejera escolar, con jubilación prematura por incapacidad no relacionada al empleo del Sistema de Retiro Para Maestros (SRM), también abogada (aunque sin revalidar aún el título), y vecina del Pueblo de Mayagüez, para incluir como reclamante

1

y en representación de su hijo unigénito, al menor L.A.R.F., hoy de 16 años (mi única riqueza y esperanza de vida), como parte interesada y la víctima principal que fue convertida en «mercadería humana» para una nueva «**TRATA DE MENORES**» en «**VENTAS DE CONSUMO**», aprovechando que su «**SECUESTRO**», contado desde el 14 de diciembre de 2011, tomó la forma de una «**DESAPARICIÓN FORZADA**» sufragada con la incautación ilegal y violenta del beneficio de la pensión base mensual de su madre, y *so* pretexto del cobro de su pensión alimentaria, cuya obligación de pago de tracto sucesivo se envía a un paradero desconocido por ella. A saber, fuera del Gobierno del Estado Libre Asociado de Puerto Rico (E.L.A.) y sus territorios, ya que dicha pensión por jubilación a favor de un empleado público está siendo usada no sólo para subvertir la autoridad del Estado, sino para encubrir a sus secuestradores dentro de un repudiable esquema de «**CORRUPCIÓN JUDICIAL**». **¡El crimen perfecto!**

Solicitamos la audiencia para la vista del 14 de diciembre de 2021, a fin de presentar el caso de marras que es atípico y un derrotero a la justicia, sobre la base de la confiscación de la jubilación ilegal e injusta de la Sra. Feliciano Rosado para perpetrar y perpetuar la DESAPARICIÓN FORZADA DEL MENOR L.A.R.F., que fue tomado de rehén desde el 14 de diciembre de 2011 en represalias contra su madre tras ésta denunciar actos que configuran corrupción judicial.

Nos dirigimos a usted, directamente, Hon. Laura Taylor Swain, toda vez que los abogados aludidos y el Clark aún no han dado respuesta a nuestras mociones del 4 de octubre de 2021 y Petición de Prórroga del 27 de septiembre de 2021 (Ver Anejos 2021), cuyas copias adjunto en la presente solicitud.

En adición a lo anterior, con la presente Moción de Objeción, **en virtud de la notificación del 2 de noviembre de**

2

2011, **CASO SRF 57751, Título III de PROMESA 48 U.S.C. Sec. 2102-2241, Núm. 17 BK 3283-LTS,** (Ver Anejos 1-4 (con copia del sobre) Notificación del Prime Clerk LLC, Grand Central Station, P.O. Box 4850, New York, NY 10163-4850), adjuntamos evidencia con la logística siguiente: Anejos 2011, 2012, 2013, 2014, 2015, 2016, 2017; 2021 y Sentencia de Divorcio (Ver Tabla de Contenido). Razón por la cual solicitamos que nos conceda la oportunidad de presentar los argumentos elaborados con sendos anejos que los sostienen, a los efectos de sostener nuestra petición de que se incluya nuestro caso en el presente pleito de clase; único en la historia jurídica del Estado Libre Asociado de Puerto Rico (E.L.A.)

Ciertamente, el E.L.A. es un caldo de cultivo para un nuevo tipo de crimen organizado[1] contra los niños, como el que se está cometiendo contra mi hijo, el menor L.A.R.F., por la **TRATA DE MENORES POR PENSIÓN ALIMENTARIA** que se está perpetrando en muchos tribunales de instancia con total impunidad. No cabe duda de que la corrupción e impunidad dentro del E.L.A. y sus territorios afecta tanto el comercio interestatal[2], *United States v. Evans*, 476 F.3d 1176 (11th Circ. 2007), *United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir. 2004), entre los estados de los Estados Unidos y sus territorios, como la imagen de seguridad y estabilidad económica de Puerto Rico ante los bonistas y el mundo. Esta es la principal razón para que el caso de marras se incluya en el presente pleito de clase, máxime cuando "*los menores son los sujetos jurídicos más vulnerables de nuestra sociedad, [y] el Estado tiene autoridad para protegerlos cuando se convierten en víctimas de maltrato*". Rivera Ex

---

[1] Ley Contra el Crimen Organizado y Lavado de Dinero del Estado Libre Asociado de Puerto Rico, 25 L.P.R.A. sec. 971 et seq.
[2] Victims of Trafficking and Violence Protection Act of 2000, que incorporó y reautorizó el Trafficking Victims Protection Act of 2000, 22 U.S.C. §§ 7101-7114 (2017). *United States v. Evans*, 476 F.3d 1176 (11th Circ. 2007).

3

*parte*, 170 DPR 678 (2007). A esos fines, es importante destacar que la Sec. 4 (48 USC sec. 2103) de la Ley de 30 de junio de 2016, conocida como "*Puerto Rico Oversight, Management, and Economic Stability Act*" o (PROMESA), 48 U.S.C. §§ 2101-2241, promulgada por el Congreso de los Estados Unidos al amparo del Artículo IV, Sec. 3, de la Constitución Federal, establece lo siguiente: "*The provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act*".

Razón por la cual la parte reclamante trae ante la atención de la autoridad federal concernida, entre otras reclamaciones y para el propósito que nos ocupa, la fragrante infracción del Gobierno del E.L.A. a la cláusula contra el menoscabo de las obligaciones contractuales del Art. II, Sec. 7 de la Constitución de Puerto Rico, LPRA, Tomo 1, por incumplir su deber ministerial que no admite excusas de proteger y **LIBERAR AL MENOR L.A.R.F.**, lo que desemboca en tortura y opresión perpetua contra la Sra. Feliciano Rosado, consistente en menguar sustancialmente su jubilación privándola arbitrariamente de un retiro digno[3], con tal de sostener crímenes de lesa humanidad con impunidad de sus responsables por acción, omisión o encubrimiento. En consecuencia, el Gobierno del E.L.A. está incumpliendo crasamente con el contrato social entre el Estado y los ciudadanos, cuya senda obligación es bilateral, no unilateral (Thomas Hobbes y John Locke). La principal obligación del Estado es proteger a los ciudadanos dentro de sus territorios.

Por tanto, la presente comparecencia tiene dos (2) objetivos principales. <u>Primeramente</u>, informar que la Sra.

---

[3]Retiro Digno, Ley para un. Retiro Digno, Ley para un Ley Núm. 7-2021 9 de junio de 2021 (P. de la C. 120) Para crear la "Ley para un Retiro Digno".

Feliciano Rosado está impedida de ACEPTAR el Séptimo (7mo) Plan de Ajuste Conjunto Enmendado Bajo el Título III del Gobierno de Puerto Rico, et al., fechado el 30 de junio de 2021, ya que su pensión mensual no llega a $1,500. Máxime cuando dicha pensión es de $467.14 mensuales, equivalente a $5,605.68 anuales, y su ingreso único no alcanza ni para las obligaciones básicas económicas actuales. Ciertamente, la han asolado y hambreado por la «**CORRUPCIÓN**» rampante y el flagelo de la impunidad que existe en Puerto Rico. De modo que su rechazo al Plan de Ajuste aludido se debe a que está convencida de que la grave crisis fiscal, que ahora le hacen pagar al Pueblo puertorriqueño, fue creada por las malas decisiones de las pasadas y presentes administraciones corruptas. No es justo que los empleados retirados sacrifiquen su pensión de retiro, tan dignamente lograda, para pagar la factura de tan infame tiranía.

Segundamente, la parte reclamante informa a la autoridad federal concernida que presentó una «Réplica», aunque fuera del término prescrito por la Corte Federal. Es decir, el lunes, 25 de septiembre de 2021, por correo certificado mediante el servicio postal de los Estados Unidos. Ello por mediar justa causa para tal demora por quebrantamiento de salud de la Sra. Feliciano Rosado (Ver Anejos 1 (a-m). A la luz de la totalidad de las circunstancias del caso de marras, la parte reclamante no ha incurrido en incuria ni temeridad, por lo que «**ROGÓ**» a la Corte Federal que se le concediese legitimación activa para comparecer a la vista del próximo miércoles, 6 de octubre de 2021, a las 9:30 a.m.

Por cuanto, la parte reclamante interpuso la Réplica aludida, sujeta a la total discreción del tribunal, aspirando a que se le conceda el derecho a audiencia a la Sra. Feliciano Rosado en la vista referida y subsiguientes vistas, a los

5

efectos de traer ante la consideración de la Corte Federal y la autoridad federal concernida los asuntos siguientes:

1) Que, tal réplica es respecto a la clasificación como importe **«INDETERMINADO»** de su reclamo N.° 10547, con fecha de presentación de 3 de mayo de 2018, tras haberse determinado que el mismo no corresponde a **«VENTAS DE CONSUMO»** (Ver Anejos 2(a). Esto se constata en la tabla del Anejo A de la página 27, el inciso 97, en virtud del número del caso 17 BK 3283-LTS, que fue intitulado *"Tricentésima Sexagésima Segunda Objeción Global (Sustantiva) del Estado Libre Asociado de Puerto Rico, de la Autoridad de Carreteras y Transportación de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamaciones Erróneamente Clasificadas"*.

2) Que, luego de examinar el reclamo original, la autoridad federal concernida emitió la determinación que *ad verbatim* citamos: *"el Departamento invocó una prioridad administrativa en virtud del Título 11 del Código de Estados Unidos, U.S.C. sección 503(b)(9), pero la evidencia de reclamo no corresponde a venta de bienes y, por ende, el demandante no tiene derecho a una prioridad administrativa. Además, el demandante omitió proporcionar evidencia prima facie como fundamento de un reclamo asegurado. En consecuencia, el reclamo se reclasificó en su totalidad como un reclamo no asegurado general"*.

3) Como consecuencia de la clasificación anterior, la parte reclamante **«no tiene prioridad administrativa»**. En efecto, tal determinación establece que la parte peticionaria no demostró que su reclamación justifique la concesión de un remedio. *Nada más lejos de la verdad, pues esto no es criterio por sí solo. ¡Qué mayor prioridad administrativa que la **LIBERACIÓN DEL MENOR L.A.R.F.** de una actividad criminal

6

que corresponde a ventas de consumo, por la explotación infantil para la servidumbre involuntaria por deuda ajena de pensión alimentaria contra su madre!

4) Añádase a lo anterior que también se determinó que la documentación adjuntada a la reclamación original no constituye evidencia *prima facie*, según el parecer de la autoridad federal concernida (Ver Anejos 1 (a-m). En efecto, tales alegaciones le abrieron las puertas a la parte reclamante para que, de forma complementaria, pueda presentar prueba adicional en virtud de su reclamo N.º 10547.

5) En estricta justicia, este caso es atípico, habida cuenta que presenta nuevas modalidades de ventas de consumo por actos constitutivos de una actividad de crimen organizado, y que violan crasamente la "Racketeer Influenced and Corrupt Organization Act", 28 U.S.C. 1962 et seq. (RICO Act o Ley contra el crimen organizado), entre otras leyes estatales y federales y el derecho internacional.

6) Precisa destacar que la reclamación de este Acreedor individual consistió originalmente en la petición legítima a la Asociación de Maestros de Puerto Rico (en adelante Asociación) del descuento de las cuotas pagadas ilegalmente, más intereses al tipo legal, a la Federación de Maestros de Puerto Rico (en adelante Federación), contando desde el 1ʳᵒ de agosto de 1999 hasta el 3 de diciembre de 2014, en virtud del caso. *Asoc. De Maestros v. Comisión de Relaciones del Trabajo*, 159 DPR 47 (2003). A ese momento, el Comisionado había determinado que la Federación le debía a los maestros $3,612,270 millones, más otros $1,209,312 millones que se encontraban depositados en el Tribunal de San Juan, en virtud del caso Civil Núm. KAC1999-1679. A renglón seguido, el Tribunal Supremo de Puerto Rico, en Asoc*. De Maestros v. Depto. Educ.*, 171 DPR 640 (2007), resolvió lo siguiente:

7

"*[…] Declaramos ilegales los descuentos por concepto de cargos por servicio efectuados a los maestros que notificaron su interés en no afiliarse a la Federación de Maestros y fueron eximidos de pagar cargos por servicio en virtud de la legislación anterior. Resolvemos que la Ley Núm. 96[4] sólo aplica prospectivamente a los empleados que opten por no afiliarse a la organización obrera después de su vigencia. Se dictará Sentencia de conformidad*". [Id].

7) Así las cosas, desde el 29 de julio de 2014, la Sra. Feliciano Rosado interpeló a la Asociación, por conducto de la Sra. Aracelis Rivera, y otros, luego de haber sido eliminada arbitrariamente de la lista de los 17,866 maestros del D.E. que recibirían las cuotas adeudadas, por un total de $6,699.622.63 millones. En esencia, el criterio que determinó tal negación fue la enmienda a la Ley 45 de 25 de febrero de 1998, que entró en vigor el 7 de agosto de 2001, aduciéndose que la Sra. Feliciano Rosado había recibido su permanencia en fecha posterior. No obstante, en este caso en particular, la reclamante obtuvo su permanencia desde el 14 de abril de 2000. Esto significa que de la "Forma 409 Informe de Cambio-Personal Docente" ya surgía que, para el 1 de agosto de 2001, el "Status Empleado Contrato" de la Sra. Feliciano Rosado era **«PERMANENTE»** (Ver Anejos 2 (d-f). Es forzoso concluir que, a la luz de la evidencia presentada, esta educadora ya ostentaba la permanencia antes del 7 de agosto de 2001, por tanto, <u>es acreedora de la devolución de las cuotas pagadas ilegalmente a la Federación, y que nunca le rembolsaron.</u>

8) Así y todo, la Asociación, pese a sus cobros de cuota mensual descontados del sueldo regular de la Sra. Feliciano Rosado, a partir de agosto de 2011 (Ver Anejos 2, talonarios), y mientras se dirimía el pleito en cuestión, y el Departamento de Educación de Puerto Rico (D.E.), pese a la orden expresa de la Corte, han cumplido su obligación legal de devolverle

---

[4]Ley Núm. 45 de 25 de febrero de 1998 para integrar, mediante la Ley Núm. 96 de 7 de agosto de 2001, un nuevo articulado denominado "Opción de no afiliarse y cargo por servicio"

a ésta el dinero que le corresponde. Habiéndose entregado en tiempo hábil los documentos requeridos, los representantes de la Asociación no ayudaron a la reclamante en el proceso de reclamación del rembolso que le pertenece, según su promesa en ese sentido, tal y como se constata en su carta del 6 de septiembre de 2011 (Ver Anejos 2(p).

9) Como cuestión de hecho, una vez el empleado era admitido a la Asociación se activaba su derecho a que ésta procediera a sufragar los gastos legales incurridos en este pleito de clase, conducente a la desafiliación y devolución de las cuotas aludidas. En el caso de marras, la Asociación ha insistido obstinadamente en menospreciar el derecho «comprado»[5] de la Sra. Feliciano Rosado mediante <u>aportaciones provenientes de su salario</u>, como condición *sine qua non* para lograr la desafiliación compulsoria de la Federación, y que, por tanto, la hacen acreedora a que, por conducto de la primera, se le otorgue la devolución del dinero robado por la segunda a la clase magisterial de Puerto Rico.

10) Andando el tiempo, la Sra. Feliciano Rosado también solicitó la desafiliación de la Asociación durante su primera (1era) licencia sin sueldo por enfermedad, debido a que la violencia doméstica que sufría fue redoblada con persecución maliciosa de los funcionarios del Tribunal de Mayagüez, entre otras razones, con emplazamientos dramáticos frente a terceros (3ros) en el plantel escolar de la Escuela superior Vocacional Dr. Pedro Perea Fajardo de Mayagüez, contaminado así su ambiente laboral irreparablemente. En verdad, la Sra. Feliciano Rosado <u>ya no era afiliada de la Asociación en el momento justo cuando se devolvió el dinero robado a sus sendos acreedores. Entretanto se dirimía dicho pleito de clase, ella</u>

---

[5] *Calderón v. Adm. Sistemas de Retiro*, 129 DPR 1020 (1992).

sí era afiliada de la Asociación. No obstante haberse obtenido
un fallo a favor de la clase magisterial, y mientras aún la
Asociación descontaba sus cuotas del cheque de la reclamante,
se concluyó que ésta no era acreedora de tal reembolso dizque
por haber solicitado su desafiliación. Esa lógica aplastante
equivale a una represalia.

11) Es más, la certificación de la baja de la Sra.
Feliciano Rosado de la Asociación y del Programa de Servicios
de Salud Médica (PROSSAM), con número de Socio 52472, se hizo
efectiva el 31 de agosto de 2012. Su correspondiente
notificación fue remitida a ésta el 5 de septiembre de 2012,
a través de la Sra. Ivonne Díaz Rodríguez, Dir. De Admisiones
y Archivo Central. Pero, la misma no fue efectiva hasta
octubre de 2012. Así y todo, el 7 de febrero de 2013 todavía
se reflejaba el descuento indebido de las cuotas mensuales
por afiliación en el talonario de cheque de esta reclamante.
Mientras que el 20 de febrero de 2013 le fue notificada la
liquidación de su baja total de la EDUCOOP (Ver Anejos 2r).

12) Por tanto, la parte reclamante presentó su Réplica
adjuntada a otra voluminosa evidencia de los hechos
esenciales para los que tiene la carga de alegar, y que no
habían sido presentados anteriormente, como ya se dijo.
Ciertamente, la solicitud de la autoridad federal concernida
consistente en requerir evidencia *prima facie* respecto a una
causa de acción en ventas de consumo, insoslayablemente,
obliga a la Sra. Feliciano Rosado a remontar su caso atípico
del efecto a la causa de su jubilación prematura y forzada,
cuya pensión y beneficios no llegan ni a $1,500 al mes. De
ahí que sigue estando en estado de indefensión en el caso
Número BK-3283-LTS presentado ante el Tribunal de Distrito de
los Estado Unidos para el Distrito de Puerto Rico.

13) Esto es debido a que el Estado, en el ejercicio de su función judicial y ejecutiva ha sitiado, despojado y hambreado violenta e injustamente a la Sra. Feliciano Rosado en represalias por sus denuncias fundadas y continuas contra la CORRUPCIÓN JUDICIAL, un «MONSTRUOS ALIEN». Existe también la tendencia de ARREBATARLE LOS NIÑOS a sus «madres justas»[6], a quienes se "*les quitan los hijos con la facilidad que se le quitan los huevos a la gallina*"[7]. Ello ha desembocado en la actuarial e insostenible «**INCAUTACIÓN ILEGAL DE SU JUBILACIÓN DEL SRM**»[8], como la punta del "iceberg", que señala a «**GRITOS**» otros delitos de extrema gravedad que configuran crímenes de lesa humanidad. Por lo que mi hijo y yo, **¡PEDIMOS AUXILIO!**

14) Más que una mera reclamación por menoscabo severo a la susodicha jubilación, la parte reclamante comparece ante la Corte Federal y la autoridad concernida federal para llamar su atención al delito que se está cometiendo contra el menor L.A.R.F. usando de mamparra, de cortina de humo, de "*tapadera*" la «**SENTENCIA DE ALIMENTOS**» que data del 21 de diciembre de 2011 hasta hoy día, con la cual subvierten la autoridad, como un castigo *ad infinitum* contra las víctimas genuinas de violencia doméstica concomitante con maltrato infantil y sus tipos, que "*salta a la vista y hiere la retina*". *Habida cuenta que se le está dando un giro delictivo, a nivel de crimen organizado, al cobro de dinero por concepto de la pensión alimentaria del menor L.A.R.F. contra la Sra.

---

[6]https://www.periodicolaperla.com/declaraciones-del-colegio-de-abogados-y-abogadas-sobre-reciente-sucesos-de-violencia-de-genero-y-el-suicidio-de-una-mujer-sorda/
[7]Orwell, George, Novela 1984, Lectorum, Agosto 2002, Miami, Florida, p. 260.
[8]"*Una vez un empleado del Gobierno se ha retirado, su pensión no está sujeta a cambios o menoscabos ya que los participantes del Sistema de Retiro del Gobierno tienen un derecho adquirido de naturaleza contractual que surge con el ingreso del empleado al Sistema, independientemente de que su participación sea voluntaria o compulsoria. Bayron Toro v. Serra, 119 DPR 605 (1987). Entre el Estado y el empleado hay un acuerdo de ambas partes. [Id.] Ello, lógicamente, hace que el plan de retiro...sea parte de ese contrato. La Asamblea Legislativa no tiene facultad para menoscabar ese derecho adquirido de naturaleza contractual, o que ha sido "comprado", por ese participante mediante aportaciones compulsorias provenientes de su salario*".

Feliciano Rosado, la supuesta madre-alimentante, a raíz de la orden de retención de ingresos de dudosa procedencia (Ver Anejos 2017, 30 y 31 de enero de 2017), destinándose tal pago a un paradero totalmente desconocido por ésta. Lo cierto es que esta madre-denunciante todavía desconoce el lugar donde tienen a hijo, a quien logró ver por última vez, por breves instantes, el 13 de mayo de 2013. Ciertamente, la jubilación de un empleado público no pude usarse para la realización de actos de una actividad de crimen organizado.

15) Dicha sentencia nos retrotrae, insoslayablemente, al procedimiento judicial nulo de los días 7, 14, 20 y 21 de diciembre de 2011. (Ver Anejos 2011 del 14 al 30 de diciembre de 2011). (Ver Anejos 2013, Acta del 2 de enero, Resolución del 17 de enero de 2013, Moción de Privación de Patria Potestad del 1 de marzo de 2013, Querella a puño y letra de petición de auxilio en el Depto. de Justicia, del 16 de mayo de 2013, Moción en Solicitud de Remedio Urgente del 10 de junio de 2013, Orden de Alejamiento del Menor del 12 de junio del 2013, Resolución de **PRIVACIÓN DE PATRIA POTESTAD**, 12 de julio de 2013, y copia de la Declaración Jurada ante la O.A.T. del 31 de diciembre de 2013 **¡PIDIENDO AUXILIO!**).

17) Bajo órdenes *ultra vires* de la **Jueza Lynette Ortiz Martínez**, la **Jueza Angie Acosta Irizarry** y el **Juez Edwin Nieves Troche** del Tribunal de Mayagüez y adláteres del Tribunal, la Fiscalía y la Comandancia de la Policía de Mayagüez (el Fiscal Esteban Miranda Valentín y el Agente William Lugo Sepúlveda) y, recientemente, de la **Jueza Mariluz Cruz Morales** del Tribunal de Humacao (2017), entre otros corruptos influenciados respectivamente por el cruel poderío de la **Lcda. Olga Longoria Vélez**, quien logra jinetear a la canalla al poder opresor dominante de los Tribunal de Mayagüez

y Humacao, como la mujer ramera[9] a la **Bestia de Apocalipsis
17**[10], *han torturado, perseguido, ridiculizado y extorsionado
a la Sra. Feliciano Rosado con el secuestro de su hijo, y dos
(2) encarcelaciones arbitrarias que destrozan nervios y
estigmatizan (del 14 al 23 de diciembre de 2011 y del 15 al
21 de febrero de 2017), mediante cargos falsos y fabricados,
y sobre la base de una «SENTENCIA INVENTADA». Una
«MONSTRUOSIDAD» jurídica que todos acogieron acanalladamente
hasta hoy día, con tal de reducir a las víctimas a la
impotencia.

17) La práctica mafíode de la Lcda. Longoria Vélez fue
contratada con planes maduros por el agresor y evasor
alimentario, el **Sr. Aníbal Rodríguez García**, el padre del
menor y el ex esposo de la Sra. Feliciano Rosado, que también
tiene un perfil de psicópata. El imperio de terror y tráfico
de influencias de la Lcda. Longoria Vélez burlan el tiempo y
la distancia de 100 x 35 de la Isla de Puerto Rico, y es
increíble lo lejos que puede llegar su práctica mafíode, tal
y como el asqueroso ácido verde que escupe por la boca el
MONSTRUO ALIEN. Es una asesina.

18) Y, esto es a lo que llamamos «LA MAFIA» (la mafia-
longoriana) que se erigió ya en un MONSTRUO ALIEN depredador y
despiadado, operando total y absolutamente al margen de la
ley o convención internacional, y con cuyos actos de
CORRUPCIÓN, arbitrariedad, despotismo y "amiguismo" se titula
infalible y «HONORABLE»[11]. Pero esta factura profana se la

---

[9]*In re Franco Soto*, 115 DPR 740 (1984)- "*Incendiar, falsificar, robar y asesinar serían pecadillos
veniales si se les comparaba con aquel encanallamiento; la prostitución pública resultaría
sublimada en el parangón, pues al cabo, la mujer que vende su cuerpo puede ampararse en la
protesta de su alma, mientras que el abogado vendería el alma para nutrir el cuerpo*".

[10]Apocalipsis 17:4,5- "*4Y la mujer estaba vestida de púrpura y escarlata, y adornada de oro de
piedras preciosas y de perlas, y tenía en la mano un cáliz de oro lleno de abominaciones y de la
inmundicia de su fornicación; 5y en su frente un nombre escrito, un misterio: BABILONIA LA
GRANDE, LA MADRE DE LAS RAMERAS Y DE LAS ABOMINACIONES DE LA TIERRA*".

[11]Nogueras, Nicolás (1995), Lcdo., alias "El Fiscal del Pueblo", escritor del libro "Los Honorables
I" (1995), Ramallo Bros. Printing, Inc., P.R. Su "*libro adquiere visos de texto canónico sobre la*

13

están pasando a los niños, quienes pagan con su propia viva el mantenimiento de la honorabilidad de estos corruptos e intocables. ¿Cuánto cuesta mantener a un **«HONORABLE»**, preguntó Nicolás Nogueras[12], quien en vida fuera el Fiscal del Pueblo (1995). —**"LA VIDA DE MI HIJO L.A.R.F."**, le responde esta madre-denunciante, ya convertida en mártir, y en lo pertinente citamos:

> *"¿Qué residuo de honor queda en tanto* **«HONORABLE»** *que* **TRAFICA** *con la felicidad y bienestar de nuestro* **PUEBLO**? *¿Cuánto honor puede haber en los honorables que con su mezquindad, su servilismo, sus ambiciones y sus debilidades se creen dueños de la vida y hacienda de los demás?"* (Los Honorables I, Id., p. 55).

19) La cuestión medular de la presente controversia que es de complicada sencillez y tan provocadora de una tempestad de indignación que causa un *"shock"* a la **CONCIENCIA** del Pueblo Puertorriqueño, puesto que ya no es un *"caso"* sino una *"causa"* de **«LIBERACIÓN Y DERECHOS HUMANOS».** En particular, por *"reflejar una gravedad que trastoca violentamente los pilares de integridad y justicia propios de nuestro* **MAGISTERIO**", *Pueblo v. Álvarez,* 108 DPR 112 (1978), el cual goza de **«HONORABILIDAD»**[13] e impunidad para mantener aún como **REHÉN** y bajo **DESAPARICIÓN FORZADA**[14] **AL MENOR L.A.R.F.,** sin que a nadie se le importe algo, **POR EXPLOTACIÓN CON FINES DE SERVIDUMBRE INVOLUNTARIA POR DEUDA AJENA DE PENSIÓN ALIMENTARIA CONTRA SU MADRE POR RAZÓN DE REPRESALIAS, PARA UNA NUEVA MODALIDAD RENTABLE DE LA TRATA DE MENORES EN EL TERRITORIO DEL GOBIERNO**

---

*corrupción en Puerto Rico",* dijo Oscar J. Serrano (2019), https://www.noticel.com/english/noticel-desde-adentro/opiniones/top-stories/20191007/el-li nce-y-los-honorabl es-rajieros/
[12]Op. cit. Nogueras, Nicolás (1995).
[13]Nogueras, Nicolás (1995), Lcdo., alias "El Fiscal del Pueblo", escritor del libro "Los Honorables I" (1995), Ramallo Bros. Printing, Inc., P.R. "El libro que adquiere hoy visos de texto canónico sobre la corrupción en Puerto Rico", dijo Oscar J. Serrano (2019), Editor Jefe de NotiCel. https://www.noticel.com/english/noticel-desde-adentro/opiniones/top-stories/20191007/el-lince-y-los-honorabl es-rajieros/
[14]30 de agosto de 2021, Día Internacional de las Víctimas de Desapariciones Forzadas: la CIDH el Comité de Naciones Unidas contra las Desapariciones Forzadas y el Grupo de Trabajo sobre las desapariciones forzadas o involuntarias llaman a los Estados a adoptar e implementar estrategias de búsqueda e investigación en el marco de una política integral en materia de desapariciones https://www.oas.org/es/CIDH/jsForm/?File=/es/cidh/prensa/comunicados/2021/224.asp

**DEL E.L.A**, judicializada como Derecho bajo una sentencia de alimentos que es consecuencia ulterior de la «sentencia inventada» de 90 días de servicios comunitarios del 7 de septiembre de 2011, y a raíz de un escandaloso «esquema de corrupción judicial». ¡El crimen perfecto!  Tan siniestro que supera la capacidad de derramar lágrimas o hallar palabras para describirlo. Las víctimas no tenemos adónde ir.  Es una pesadilla interminable. *Town of Castle Rock v. Jessica Gonzales*, 545 US 748 (2005).  *Gutiérrez-Rodríguez v. Cartagena*, 882 F.2d 553 (1989).

20) Un crimen horroroso por donde se mire que, por su extrema gravedad, subraya la urgencia de elevarse a un crimen de lesa humanidad en el derecho internacional bajo la norma *ius cogens*. Por cuanto al cautiverio silencioso del menor L.A.R.F. se lo invisibiliza y, en efecto, se le priva arbitrariamente del derecho de libertad y propiedad no sólo dentro del espíritu de las leyes locales aplicables a los delitos de **SECUESTRO CON CIRCUNSTANCIAS AGRAVANTES**, por cometerse contra un menor con «**IMPEDIMENTO POR DÉFICIT DE ATENCIÓN E HIPERACTIVIDAD**», **QUE ES USADO COMO MERCANCÍA PARA LA SERVIDUMBRE INVOLUNTARIA O ESCLAVITUD PERMANENTE POR SU PENSIÓN ALIMENTARIA**, sino también de los convenios internacionales.

21) Tan es así que para el 2017, aparentemente, terminaría la pesadilla de la **DESAPARICIÓN FORZADA DEL MENOR L.A.R.F.**, en virtud de la interpelación por cobro de dinero de la Administración para el Sustento de los Menores (ASUME) por concepto de su pensión alimentaria acumulada. Para entonces, la Sra. Feliciano Rosado ya no ostentaba ni la custodia ni la patria potestad de su hijo, toda vez que le fueron arrebatadas por acorralamiento en un procedimiento

prejuzgado. En consecuencia, ella no tenía conocimiento del paradero de su hijo, como cuestión de hecho y de derecho.

22) Lo más macabro del caso de autos es que nadie hizo nada para ayudar a la Sra. Feliciano Rosado a recuperar a su hijo. Su caso *"era"* y *"es"* la papa caliente de los abogados. Toda vez que dichos crímenes de lesa humanidad están siendo perpetrados y perpetuados por unos jueces corruptos del Tribunal de Mayagüez (2011-2021) y el Tribunal de Humacao (2017-2021), valiéndose de *"una **CORRUPCIÓN INSTITUCIONALIZADA** [que] usa como uno de sus mecanismos, la discreción judicial"*, *In re López*, 184 DPR 334 (2012).

23) Es más, la mafia del Tribunal del Mayagüez, actuando en contubernio con la mafia del Tribunal de Humacao, <u>ordenó el traslado del expediente del caso de marras a partir del 30 de agosto de 2015, pero sin notificárselo a la Sra. Feliciano Rosado</u>. Ello con la intención criminal de ocultar el paradero del hijo a su madre perpetuamente. Esto dio lugar a la segunda (2da) etapa de la **DESAPARICIÓN FORZADA DEL MENOR L.A.R.F.**, contada desde el 2017 y hasta que no se conozca su paradero actual[15], ya que fue intensificada por un complot judicial de los tribunales a quo para sacarlo fuera del E.L.A. y sus territorios por represalias contra esta madre-denunciante. Tras ridiculizarla y hacer inefectivas todas sus mociones y recursos extraordinarios presentados, aún en los tribunales apelativos, ayudaron al agresor-psicópata a esconder al menor L.A.R.F. (Ver Anejos del 26 y 30 de enero de 2017). **¡YO NO SÉ DÓNDE ESTÁ MI HIJO! ¡POR FAVOR, DEVUÉLVANME A MI HIJO!**

24) Así visto, y como cuestión de hecho, mi hijo sigue estando bajo cruel **DESAPARICIÓN FORZADA** *"cometida por agentes*

---

[15]El Artículo III de la Convención Interamericana sobre Desaparición Forzada de Personas, adoptada el 9 de junio de 1994, reza así: *"Dicho delito será considerado como continuado o permanente mientras no se establezca el destino o paradero de la víctima"*.

*del Estado o por personas o grupos de personas que actú[a]n con el apoyo, la autorización o la aquiescencia del Estado, seguida de la falta de información o de la negativa a reconocer dicha privación de libertad o de informar sobre el paradero de la persona, con lo cual se impide el ejercicio de los recursos legales y las garantías procesales pertinentes"*[16].

25) Más aquí se deja ver una nueva manifestación de la **TRATA DE MENORES POR PENSIÓN ALIMENTARIA** sobre la base de una **«Sentencia de Alimentos»**, que no mueve a sentimiento o pensamiento de compasión alguna hacia las víctimas genuinas y se la sigue usando como instrumento de persecución y encarcelación arbitraria contra la Sra. Feliciano Rosado. El entronque común de tan espantosas crueldades contra esta madre y su hijo es la **«SENTENCIA INVENTADA»** de 90 días de servicios comunitarios del 7 de septiembre de 2011 (Ver Anejos 2011) y que, por tanto, es **NULA** por ser contraria a derecho y provocar un claro descalabro de la justicia para la parte peticionaria. Razón por cual <u>la Sra. Feliciano Rosado ha solicitado su revocación en los foros judiciales y la</u> <u>**DEVOLUCIÓN DE SU HIJO**</u>, pero todos cierran filas contra la madre-denunciante y este menor negándoles la justicia.

26) Por más explicación que adelante la peticionaria, siempre señalan las incomparecencias como resultado de todas las calamidades que les han hecho sufrir. Es más, a esta madre que lucha por su hijo la demonizan principalmente porque, buscando que alguien fuera movido a ayudarla tras la traición de 8 abogados, colocó los **10 CRUZACALLES Y 5 PANCARTAS** en el pueblo de Mayagüez, allá para principios de marzo de 2012,

---

[16]Id. El Art. II reza así: *"Para los efectos de la presente Convención, se considera desaparición forzada la privación de la libertad a una o más personas, cualquiera que fuere su forma, cometida por agentes del Estado, o persona o grupos de personas, [...] autorización del Estado".*

para denunciar **la toma del menor como rehén**. Ningún argumento puede desdecir tal evidencia de que esta madre **SÍ** tenía interés de recuperar a su hijo que los cruzacalles, que finalmente marcaron la lucha por su **LIBERACIÓN**. Esta madre **NO** abandonó a su hijo, sino que para evitar que la volvieran a arrestar con cargos falsos se vio en la necesidad de huir cuando la persecución ardía. Hacían como si procurasen darle la oportunidad de recuperar a su hijo, según obra del récord del cado de auto, mientras por lo debajo hacían cuanto podían para evitar **DEVOLVÉRSELO**. (Ver Anejos 2011 y 2012, el tracto de órdenes para exámenes mentales y visitas materno-filiales para un uso prosecutorial, como ya se dijo).

27) En su defecto, la peticionaria dejó de comparecer al tribunal para pedir auxilia y regresar con refuerzos que nunca encontró por el Imperio de Terror que desencadenan las mafias. En su defecto, no hay tales incomparecencias por la nulidad de los procedimientos judiciale, *Ríos v. Municipio de Isabela*, 159 DPR 839 (2003). Toda vez que *"una actuación nula es inexistente, [...] no genera consecuencias jurídicas"*. *Brown III v. J.D. Cond. Playa Grande*, <u>154 DPR 225</u> (2001). *"(...). Lo nulo nunca tuvo eficacia alguna, nunca nació en derecho, nunca existió"*. Id. Suárez et al. v. C.E.E., 163 DPR 347 (2004); *Brown III v. J.D. Cond. Playa Grande,* 154 DPR 225 (2001); *Acevedo v. Municipio de Aguadilla,* 153 DPR 788, 811 (2001); *Montañéz v. Policía de P.R.,* 150 DPR 917, 921 (2000). (Casos citados en *Velázquez v. Municipio de San Juan*, 24 de noviembre de 2008, Apelativo). Es mandatorio concluir que <u>"lo nulo nunca tuvo eficacia alguna, nunca 'nació' en Derecho, nunca existió"</u>. En su defecto, *"...es necesario que el funcionario o empleado público que está cumpliendo con su deber lo haga dentro del ámbito del mismo de manera lícita, de no ser así la **RESISTENCIA** estaría justificada"*. *Pueblo v.*

*Ortiz*, 123 DPR 865, 873 (1989). (Ver Anejos 2011), según obra
del expediente voluminoso del caso de autos que data del 2006
hasta el 2017, y que ya fue alterado por destrucción de
prueba. (Dicha prueba fabricada consistió en un contrato
falso para inducir a error a la peticionaria, que creado por
el entonces Decano Académico de la FDEMH, el Lcdo. Carlos
Rodríguez Sierra, actuando en contubernio con la Lcda.
Stephanie Cabrera Hernández, la abogada *ad hoc* del Programa
Clara Lair, ubicado en el foro aquo, donde enviaron a la
bulleada a ejecutar la pena de servicios comunitarios bajo un
patrón de humillaciones).

28) En las secuelas de tal dictamen nulo, el tracto de
las órdenes, resoluciones y minutas de los foros aquo, siguen
siendo terroríficas, incluso más aún, ya que evidencian que
cualquier crítica expresada contra los entes del Gobierno de
Puerto Rico, se paga con represión, violencia, la cárcel y la
**«MUERTE»**[17]. Los autos de este caso están saturados de
represalias, **TORTURAS**, tratos crueles y múltiples violaciones
de derechos humanos, fabricación de cargos, *"bullying"* de los
tribunales, encarcelaciones arbitrarias para silenciar las
denuncias, investigaciones incompletas, ineficaces y
exonerantes, remoción de prueba del expediente de autos,
juicios fraudulentos y carpeteo por la peticionaria denunciar
actos de **CORRUPCIÓN JUDICIAL** a raíz de una **SENTENCIA INVENTADA**
de 90 días de servicios comunitarios por "añangotamiento".

29) Al actuar así, la Jueza Ortiz Martínez abrió la
puerta a toda pretensión de autoridad desmedida y
extravagancia opresiva para que los más fanáticos y
desequilibrados del Tribunal de Mayagüez, de por sí ya dados
al obedecimiento dogmático y la crueldad insultante, pudieran

[17]Viudo vincula a Sagardía en crimen de fiscal Francelis Ortiz: Metro, https://www
.metro.pr/pr/noticias/2016/10/12/viudo-vincula-a-sagardia-en-crimen-de-fiscal-francelis-
ortiz.html

19

a su antojo ridiculizar y perseguir a la Sra. Feliciano Rosado durante la ejecución de su pena de servicios comunitarios. Acto seguido, fue a pedir auxilio a la autoridad concernida (la Oficina de la Procuradora de la Mujer (el 23 de septiembre de 2011), la Oficina de Administración de Tribunales (el 7 de octubre de 2011) y la Oficina del Juez Presidente (el 5 de diciembre de 2011), pero todos la dejaron, a ella y a su hijo, en manos de la venganza de sus verdugos del tribunal.

30) Para completar el dolor y humillación, y aumentarle innecesariamente el escarnio del escándalo público a la Sra. Feliciano Rosado, la mafia-asesina contaminó su ambiente laboral al llamar por la vía telefónica a la Administración de su trabajo de entonces, la Escuela Superior Vocacional Dr. Pedro Perea Fajardo de Mayagüez, con la intención criminal de dañar su reputación informando que su Consejera Escolar estaba siendo trasladada a la cárcel de mujeres de Vega Alta. Así fue comenzó el carpeteo.

31) Puesta aparte, la Sra. Feliciano fue sacada de carrera como consecuencia del desprestigio provocado. Una mujer productiva, con ganas de vivir y de ver crecer a su hijo, ha sido objeto de injustas sospechas tras el despojo de la custodia y patria potestad sobre su hijo, a pesar de que ésta sea una abogada íntegra. "*Lo verdaderamente triste de esta situación -por aquello de que "cuando el río suena es porque algo trae"- es que siempre habrá quien entienda que esta íntegra y respetada profesional del derecho "algo malo tiene que haber hecho" [para que le quitaran su hijo]. Nada más injusto y lejos de la realidad*". (Citando a *In re Vicenty Nazario I*, 169 DPR 194 (2006).

32) Incluso convirtieron en un calvario su lucha para hacerse recomendable en el campo laboral, al dañar su récord maliciosamente con datos de todo punto impertinentes, y la

huella digital de ex-presidiaria que estigmatiza. En la esfera de intimidad, aplastaron sus esperanzas de casarse bien. Mirada con espanto tras haber pisado la cárcel, los mejores partidos no querían tener nada que ver con esta desventurada mujer, pese a ser una abogada y educadora con dos maestrías en Educación y un *Juris Doctor*, quedando sola con el corazón de una madre angustiada para batallar contra el MONSTRUO SOCIAL[18]. Nadie quiso creer su historia. *Permanentemente dependía de la fe en las verdades penetrantes de las Sagradas Escrituras, y los libros de Elena White que impidieron su suicidio. Entendiendo duramente que *"muchas veces nuestros planes fracasan para que los de «DIOS» respecto a nosotros tengan éxito"*[19].

33) Esto es debido a que la Sr. Feliciano Rosado, durante los pasados diez (10) años (2011-2021), ha estado haciendo las mismas denuncias fundadas contra la **«CORRUPCIÓN JUDICIAL»** que medió para arrebatarle a su hijo por represalias, ante todos los foros fiscalizadores del E.L.A. y los foros federales del Distrito de Puerto Rico (Ver Anejos 2011-2021).

34) Ciertamente, **NO** se puede aducir una sola prueba de la ley que justifique que, a esta madre, por demás excelente, la privaran de la custodia y patria potestad de su hijo, que no sea el *"yo mando aquí"* de la **«LA MAFIA TRAFICANTE DE NIÑOS POR SU PENSIÓN ALIMENTARIA»**. En verdad, me robaron a mi hijo en un procedimiento revanchista y prejuzgado de terminación de los derechos maternales sin mediar *"causas de inhabilidad materna (unfit)"*, *Santosky v. Kramer*, 455 U.S. 745, 753 (1981), págs. 748-749, 762, 759-760, *Depto. Familia v. Cacho González*, 188 DPR 773 (2013), sin existir *"prueba clara,*

---

[18]Término utilizado en la Exposición de Motivos de la Ley Número 77 de 9 de julio de 1986, según enmendada conocida como la "**Ley para la Protección de Testigos y Víctimas**".
[19]E.W., El Ministerio de Curación, p. 376.

*robusta o convincente"*, *Santosky v. Kramer*, 455 U.S. 745, 753 (1981), para su remoción del hogar materno, a modo de una **INCAUTACIÓN ILEGAL**, *Calabretta v. Floyd*, 189 F 3rd 808 (9th Cir. 1999). Estos hechos que coinciden con un esquema de corrupción judicial en el que el victimario, el **Sr. Aníbal Rodríguez García**, participó para quedar liberado de su obligación alimentaria.

35) Las instrumentalidades del Gobierno del E.L.A. tienen una lógica aplastante contra las víctimas de delito. A título de ejemplo, la **Administración para el Sustento de Menores (ASUME)**, adscrita al **Departamento de la Familia de Puerto Rico** y que es parte del **Departamento de Justicia**, los únicos con poder para poner fin al grave crimen de **SECUESTRO Y DESAPARICIÓN FORZADA DEL MENOR** revelando su paradero actual a su madre zozobrante y desolada, insisten en soslayar su deber ministerial, que no admite excusas ni discreción, de proteger a los menores y jóvenes de esta país y, por ende, al menor **L.A.R.F.**, liberándolo de sus secuestradores. Por el contrario, dichos organismos, dándole pleno vigor y efecto al MONSTRUO PROCESAL de la Sentencia de Alimentos con efecto de *"cosa juzgada"*, *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 30 (1971), *González v. Rodríguez*, 124 DPR 593 (1989), normalizan la violencia del Estado mediante un tracto de interpelaciones de cobro *so* pena de prisión, resoluciones que hambrean a la alegada madre-alimentante y actos de impugnación, intimidación, indolencia y trato preferencial hacia el victimario, que reducen a la impotencia a las víctimas. (Ver Anejos 2015, Moción Informativa del 27 de julio), (Anejos 2016, Moción a puño y letra de **PETICIÓN DE AUXILIO** a la Procuradora de la ASUME del 11 de mayo de 2016, Moción en Auxilio de Jurisdicción de la ASUME de Mayagüez del 21 de diciembre), (Ver Anejos 2017 y Anejos 2021).

36) Por su parte, la **ASUME** de Humacao se ha erigido como un ente agresor contra las víctimas por prestarse al juego de la aplicación automatizada y encanallada al caso de autos de leyes que no fueron pensadas, creadas, ni legisladas para judicializar crímenes de lesa humanidad y que, en efecto, burlan *el "mens" legislativa al aprobar el estatuto"*, *Milán v. Muñoz*, 110 DPR 610 (1981).   No obstante haber confiscado arbitrariamente la aportación de pensión por jubilación de la Sra. Feliciano Rosado, para el pago directo de la pensión alimentaria del menor L.A.R.F., el ente Administrativo de ASUME no tiene intención alguna de revelarle a esta madre el PARADERO ACTUAL de su hijo, a los efectos de ponerla en posición de recuperarlo. La agencia protege a los corruptos e intocables no al menor, razón por la cual no da crédito alguno al testimonio y a la prueba documental de la madre-denunciante.

37) Así las cosas, la extremada maldad de los «secuestradores honorables» del menor L.A.R.F. abre la puerta a sus víctimas acorraladas y reducidas a la impotencia, a las garantías de la Ley PROMESA, supra. Esperanzadamente, la parte reclamante se ampara en tal PROMESA, toda vez que dicha legislación prevalece ante un conflicto con alguna ley del estado o territorio, o cualquier otra regulación.   Maxime cuando las siglas de la Ley «**PROMESA**» encarnan las esperanzas y aspiraciones de un Pueblo oprimido, esclavizado y sitiado por los más déspotas y despiadados del Gobierno del E.L.A., y que se aferra a las promesas bíblicas, como la que en 2$^{da}$ Pedro 3:13 dice así: "*Pero según su* «***PROMESA***»*, nosotros esperamos nuevos cielos y nueva tierra, en los cuales mora LA JUSTICIA*" [que, en sí misma, **\*LA JUSTICIA ES «CRISTO». ¡Gloria a Dios! ¡Aleluya!**]. [Corchetes nuestros].

23

38) Con ansiosa expectación de hallar justicia, la parte reclamante comparece hoy para invocar las garantías y poderes inherentes de la «**Junta de Control Fiscal**» (JCF) creada, entre otras razones, para remediar un grave mal social con motivo de la emergencia provocada por la depresión económica por robo y malversación de caudales de fondos federales y el erario público. A esos fines, es importante destacar que la Sec. 4 de la Ley PROMESA (48 USC sec. 2103), en lo pertinente reza así: "*The provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act*". Esto confirma que "*Puerto Rico no es un soberano, sino que bajo el esquema constitucional de Estados Unidos es un territorio sujeto al poder de legislación del Congreso, según establecido por la cláusula territorial del Art. IV, Sec. 3 de la Constitución federal*". *Pueblo v. Sánchez*, 192 DPR 594 (2020). *Pueblo v. Castro García*, 120 DPR 740 (1988).

39) El consiguiente daño psicológico a las víctimas es devastador. Trágicamente, el menor L.A.R.F. ha sido partícipe de los sufrimientos de su madre, a quien no ha visto desde el 13 de mayo de 2013. También a él le han causado un sufrimiento inenarrable por los traumas de separación de la figura materna y el «ı N f ı E R N 0» que le han hecho vivir haciéndole creer que su madre dizque lo abandonó. Razón por la cual le pedimos **¡AUXILIO A LA JUNTA!** para que **RESCATE AL MENOR L.A.R.F. Y LO REGRESE A LOS BRAZOS DE SU MADRE EXCELENTE,** además de proveerles el remedio que proceda en Derecho. Toda vez que en esta marco jurídico y político novel que tiene efectos insospechados, la Ley Promesa es tan abarcadora que, además de la paralización automática de los procesos judiciales o administrativos, también "*opera para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra*"

24

(PROMESA, supra, sec. 2161;11 U.S.C. secs. 362(a) y 922(a)),
*Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490-491 (2010).
En su defecto, "*quien puede lo más, puede lo menos*", *Posadas de Puerto Rico Assoc. v. Tourism Co. Of Puerto Rico*, 478 US 328; 106 S. Ct. 2968; 92 L. Ed 2d 266 (1986).

40) No cabe duda de que el caso de marras sienta un mal precedente para la Rama Judicial de Puerto Rico. Señala que hay graves injusticias que no salen a la luz por la represión, el "*bullying*", las torturas, el carpetero, la persecución y la encarcelación que sufrimos los denunciantes. Está de moda la prevaricación, el inventar sentencias y, recientemente, **«LA QUITA DE NIÑOS A SUS MADRES JUSTAS Y PIADOSAS»** por los funcionarios del tribunal y agentes del Estado, de por sí dados al obedecimiento dogmático y la crueldad insultante, en su afán de imponer a la fuerza un dictamen preferido. A título de ejemplo, la utopía totalitaria, sitiadora y MONSTRUOSA del **«RÉGIMEN DE LA CUSTODIA COMPARTIDA»**, sumada a la violencia y represalias que se ejerce contra los denunciantes de la CORRUPCIÓN del Gobierno del E.L.A., sus agencias e instrumentalidades, que impactan negativamente la economía, y que precisan una solución, aunque la Junta de Control Fiscal y su PROMESA, en su defecto, no sean el foro adecuado.

41) Con una avaricia glorificada, muchos padres explotan a sus propios hijos convirtiéndolos en mercadería humana con palabras fingidas emanantes de la lógica macabra de la **«IDEOLOGÍA DE GÉNERO»**, dando a luz abominaciones e impiedades en forma de ley, como la **CUSTODIA COMPARTIDA**. Para colmo de males tales legislaciones, odiosas a los ojos del país, ya fueron incorporadas en el Nuevo Código Civil 2020, que es un **«GRITO DE GUERRA CONTRA LOS CRISTIANOS»**. Habiendo irrumpido a la fuerza en las Salas de Familia de los tribunales de

justicia se crea un caos y zozobra suicida[20], no pocas veces, en las **«MADRES PUERTORRIQUEÑAS»** *vis* a *vis* el sufrimiento inenarrable y el sentido de gran impotencia y desasosiego que le causan a los niños arrebatados de su hogar materno. Todo ello en violación del espíritu de los convenios internacionales aplicables y leyes estatales de reciente cuña[21] para la erradicación de la **«TRATA HUMANA»**.

42) Como un **«GRITO DE AUXILIO»** desgarrador, la parte reclamante lanza este ruego de LIBERACIÓN Y JUSTICIA, a los efectos de que se considere la presente **Moción de Objeción y en Petición de Auxilio**, que equivale a la nota de auxilio que Otto Kimons (1942) arrojó por la ventana de uno de los trenes de muerte, que iban hacia los campos de exterminio nazi en el Holocausto Judío. La carta llegó a manos de su esposa cuando ya era muy tarde. Decía así: -"*Queridos míos, nos dirigimos a Polonia. NADA HA SERVIDO. ME LO HAN QUITADO TODO. Sed fuertes y valientes, yo también lo seré*".

Esperando que la presente petición de AUXILIO no llegue cuando ya sea muy tarde ante la Corte Federal y la autoridad concernida, ni mucho menos se considere innecesaria su reclamación, yo digo ahora mediante moción: "*Me lo han quitado todo*". Después de **«CRISTO»**, MI HIJO ES MI TODO. NADA HA SERVIDO en Puerto Rico para rescatarlo, porque el problema grave de la **CORRUPCIÓN que impera se lo hacen pagar a los niños y jóvenes** en aquellos tribunales de justicia que lo son

---

[20]A título de ejemplo, Janet Viera Grau, la madre vegabajeña que ultimó su vida el 16 de enero de 2021, luego de que le removieron a sus dos (2) hijos *so* pretexto de su impedimento por sordera. Una desgracia por demás digna de lamentarse y de mover a la acción libertadora de otros niños y madres que fueron a los tribunales a pedir auxilio, pero los dejaron con vidas rotas. https://www.periodicolaperla.com/declaraciones-del-colegio-de-abogados-y-abogadas-sobre-r eciente-sucesos-de-violencia-de-genero-y-el-suicidio-de-una-mujer-sorda/

[21]Noticia Microjuris del 21 de septiembre de 2021: Legislan Exclusión Penal para Víctimas de Trata Humana. El Senado de Puerto Rico aprobó el Proyecto del Senado 79 que busca crear una causa de exclusión de responsabilidad penal para las sobrevivientes de trata humana que hayan participado en actividades ilegales, mientras esa participación haya sido causada por su situación de víctima. https://aldia.microjuris.com/2021/09/21/legislan-exclusion-penal-para-victimas-de-trata-humana/

sólo de nombre. Por favor, **¡DEVUÉLVANME A MI HIJO!** y, con ello, devuélvanme la alegría de vivir.

POR LO QUE la parte reclamante solicita respetuosamente que se tome conocimiento de los hechos precedentemente expresados, y además suplica que 1) pueda ésta comparecer a defender sus argumentos en las vistas que se llevarán a cabo en octubre de 2021, y 2) que se conceda a estos Acreedores individuales, que ya han sufrido bastante su separación involuntaria y empobrecimiento infligido por funcionarios del tribunal y agentes del Estado corrompidos, cualesquiera otros remedios que se consideren justos. En especial, que se conceda ya la **LIBERACIÓN DEL MENOR L.A.R.F.** y se ordene su traslado inmediato al territorio del E.L.A., con el propósito de devolverlo a su hogar materno de donde fue incautado ilegalmente por el Estado. Toda vez que lo tomado por la fuerza y el robo se devuelve, ¡y punto!

                              Respetuosamente sometida,

                              Maira Ivet Feliciano Rosado
                              Calle Elena Segarra #154
                              Sector El Maní
                              Mayagüez, P.R. 00682
                              mfeducderec@yahoo.com
                              (787) 242-1302
                              (786) 371-6770
                              (787) 242-1063

Fecha: 12 de noviembre de 2021
       Mayagüez (Puerto Rico)

Con copia a la autoridad concernida:

                              Secretaría (Clerk's Office)
                              Tribunal de Distrito de los
                              Estados Unidos (*United States
                              District Court*)
                              Sala 150 Edificio Federal
                              (Federal Building),
                              San Juan (Puerto Rico)
                              00918-1767

Abogados   de   la   Junta   de
Supervisión (Counsel for the
Oversight Board)
Proskauer Rose LLP,
Eleven Time Square Nueva York,
Nueva York 10036-8299
Attn.  Martin  J.  Bienenstock
Brian S. Rosen

Abogados   del   Comité   de
Acreedores  (*Counsel  for  the
Creditors' Committee*)
Paul Hastings LLP
200 Park Avenue
Nueva York, Nueva York 10166
Attn: Lue A. Despins
James Bliss
James Worthington
G. Alexander Bongartz

Notas: Los Anejos correspondiente a esta moción ya se enviaron
al Secretario de la Corte Federal, y se enviarán próximamente
a la Autoridad Federal Concernida.