# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>**Re: ECF No. 19282, 19283** |

**RESPONSE OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO ACKNOWLEDGMENT OF CONSTITUTIONAL CHALLENGES, NOTICE OF POTENTIAL PARTICIPATION, AND MOTION FOR ENLARGEMENT OF TIME BY THE UNITED STATES OF AMERICA**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), pursuant to section 315(b) of

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[2] respectfully submits this response (the "Response") to the *Acknowledgment of Constitutional Challenges, Notice of Potential Participation, and Motion for Enlargement of Time by the United States of America* [ECF No. 19282] (the "Motion"), filed by the United States (the "Movant"). In support of this Response, the Debtors respectfully represent:

1. A month or more ago, the Court certified challenges made by Peter Hein, PFZ Properties, Inc., and Finca Matilde (collectively, the "Objectors") on the grounds that the provisions of the Bankruptcy Code made applicable to these proceedings by PROMESA, and upon which provisions the Plan[3] purports to treat Objectors' claims, allegedly violate the Constitution of the United States, to the Attorney General of the United States. [ECF Nos. 18489, 18620, 19016]. Movant is requesting an extension until January 31, 2022 of the deadline to determine whether or not to defend the constitutionality of PROMESA, and if Movant determines to defend, it requests until March 2, 2022 to file its brief. Mot. at 3.

2. Fed. R. Civ. P. 5.1 only requires a delay prior to the Court ruling the statute is unconstitutional, but not prior to a ruling the statute is not unconstitutional. No delay is imposed or warranted here because regardless whether Objectors prove takings for which they are entitled to just compensation or other constitutional claims that have a monetary remedy, based on *Blanchette v. Connecticut General Insurance Corps.*, 419 U.S. 102 (1974), the Court would not rule PROMESA Title III is unconstitutional because even if takings have occurred, PROMESA does not bar claimants from proceeding under the Tucker Act to procure just compensation. In

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] The "Plan" refers to the *Modified Eighth Amended Title III Join Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19114], as it may be supplemented or amended.

2

*Blanchette*, the U.S. Supreme Court held that even though the statute at issue effectuated a taking, the availability of the Tucker Act remedy prevented the statute from being unconstitutional on takings grounds. Similarly here, the Tucker Act is an available and adequate remedy for Objectors to pursue any Takings Clause or other monetary-based Constitutional claims.

3. In *Blanchette*, the U.S. Supreme Court addressed a constitutional challenge to the Rail Act, which was a specialized amendment to the Bankruptcy Act that Congress passed pursuant to its bankruptcy power to respond to a transportation crisis facing the nation at that time. *Id.* at 108. The Rail Act consolidated eight insolvent railroads into one privately owned for-profit corporation. *Id.* at 109. To accomplish that goal, the Rail Act established the "Final System Plan," which mandated that the reorganized railroads would transfer their assets to a new private corporation (Conrail), and then this entity would issue securities to repay the current creditors of the eight railroads. *Id.* at 111-12.

4. Several creditors challenged the Rail Act on the basis that it imposed a reorganization plan that violated the Fifth Amendment Takings Clause. *Id.* at 137. Specifically, they asserted, among other things, "because compensation is not in cash but largely in stock of an unproved entity, [the Rail Act] will necessarily work an unconstitutional taking." *Id.* (footnote omitted). The Court concluded "any deficiency of constitutional magnitude in the value of the limited compensation provided under the [Rail] Act will indeed be a taking of private property for public use." *Id.* at 155. Critically, however, the Court further reasoned that because the plaintiffs were able to pursue "a Tucker Act suit in the Court of Claims for a cash award to cover any constitutional shortfall, the Rail Act does provide adequate assurance that any taking will be compensated." *Id.* Thus, the Court found that the Rail Act did not violate the Takings Clause. *Id.*

3

5. Here, as in *Blanchette*, the Tucker Act is an available and adequate remedy for Objectors to pursue their constitutional claims. The Tucker Act gives the Court of Federal Claims jurisdiction to render judgment "upon any claim against the United States founded either upon the Constitution, or any Act of Congress . . . ." 28 U.S.C. § 1491(a)(1). Objectors' takings claims rest on the theory that Congress, through PROMESA, violated the U.S. Constitution's Takings Clause, and thus clearly fall within the purview of the Tucker Act—the exact holding in *Blanchette*.

6. Recourse to the Tucker Act is not barred by PROMESA. Congress manifested no intent to prevent recourse to the Tucker Act and nowhere in PROMESA is the Tucker Act mentioned nor does any provision infer an intent to eliminate recourse to it. Section 4 of PROMESA, which specifically deals with the supremacy of PROMESA over inconsistent law, clearly excludes federal law, and therefore does not implicate the Tucker Act. *See* PROMESA § 4; *Blanchette*, 419 U.S. at 129 ("the manner in which Congress . . . expressly addressed the Rail Act's 'Relationship to other laws' plainly implies that Congress gave no thought to consideration of withdrawal of the Tucker Act remedy"). Since the Tucker Act and PROMESA are "capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to reward each as effective." *Blanchette*, 419 U.S. at 133-34 (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974) (quotations omitted). In sum, the Tucker Act is available and provides an adequate remedy at law for Objectors that prevents PROMESA from being unconstitutional.

7. Mr. Peter Hein asserts non-takings arguments of unconstitutionality the Court has certified (*see* ECF No. 18620 at 2). *See* ECF No. 18575 at 25-26 (Hein confirmation objection discussing Bankruptcy Uniformity Clause); *id.* at 17 (discussing prohibition of ex post facto laws); *id.* at 28-33 (discussing Contracts Clause violation); *id.* at 26-27 (discussing Privileges and Immunities, Due Process, and Equal Protection Clauses). At bottom, Mr. Hein's rights arise from

4

being a bondholder and the appropriate remedy for any breach of those rights is a monetary one. Moreover, Mr. Hein's contentions about uniformity, lack of due process, and the like are not even developed to the point of establishing PROMESA is unconstitutional. Even if any of these arguments are unavailable to prosecute under the Tucker Act, no delay is warranted for Movant to determine whether to respond to such limited briefing.

8. The public policy of PROMESA—to preserve the going concern of the Debtors for the benefit of the citizens through a successful reorganization—is in tune with underlying public policy of *Blanchette*. The Commonwealth's operations, like a railway during its heyday, "can not be halted because its continuous, uninterrupted operation is necessary in the public interest . . . ." *Cont'l Ill. Nat'l Bank & Tr. Co. v. Chicago, R. I. & P. Ry. Co.*, 294 U.S. 648, 671 (1935). Likewise, the successful reorganization of the Debtors with reasonable promptness is paramount to the public interest. *See* PROMESA § 101(a) (a purpose of PROMESA being "to achieve fiscal responsibility and access to the capital markets" for the Debtors). Movant's request, if granted, could unduly delay the reorganization by casting uncertainty over effectiveness of the Plan for months, since Movant's brief in support of its defense would not be due until March 2, 2022. The Congressional policy underlying PROMESA weighs against delay.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Oversight Board respectfully requests the Court decline to delay Movant's deadlines, in view of the unlikeliness of the Court concluding PROMESA is unconstitutional.

Dated: November 18, 2021  
San Juan, Puerto Rico

Respectfully submitted,

/s/ Martin J. Bienenstock

Martin J. Bienenstock (*pro hac vice*)  
Brian S. Rosen (*pro hac vice*)  
Ehud Barak (*pro hac vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, NY 10036  
Tel: (212) 969-3000  
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

/s/ Hermann D. Bauer

Hermann D. Bauer  
USDC No. 215205  
**O'NEILL & BORGES LLC**  
205 Muñoz Rivera Ave., Suite 800  
San Juan, PR 00918-1813  
Tel: (787) 764-1813  
Fax: (787) 753-8944

*Co-Attorney for the Financial Oversight and Management Board as representative for the Debtors*