UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Re: ECF No. 19173 |

**RESPONSE OF OVERSIGHT BOARD TO INFORMATIVE MOTION OF GOVERNOR AND AAFAF REGARDING MODIFICATIONS TO PENSION RESERVE TRUST FUNDING MECHANISM**

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Public Buildings Authority ("PBA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth and PBA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management,*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*and Economic Stability Act* ("PROMESA"),[2] respectfully submits this response to the *Informative Motion Regarding Modifications to Pension Reserve Trust Funding Mechanism* [ECF No. 19173] (the "Motion" or "Mot.") filed by Governor Pedro R. Pierluisi and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with the Governor, the "Government") in connection with the hearing to consider confirmation of the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Case No. 17-BK-3283-LTS, ECF No. 19184] (as it may be amended, modified or supplemented, the "Plan").

**Introduction**

1. In the Informative Motion, the Government complains about the Plan's increased funding for the Pension Reserve Trust.[3] After conceding the Oversight Board has the power to increase funding for the reserve in the Fiscal Plan, the Government asks the Oversight Board to reconsider its position regarding the increased funding formula. Mot. ¶ 6.

2. When it eliminated the Monthly Benefit Modification, the Oversight Board acknowledged this change increased the cost of pensions by almost $1.9 billion. To help pay the increased cost, the Oversight Board increased the funding for the Pension Reserve Trust during years of projected surplus. Indeed, the entire point of the Pension Reserve Trust is to help ensure that pension obligations will be satisfied and that the Plan will remain feasible even in the event of future deficits. A promise made in the Plan should be a promise kept.

3. Ensuring adequate funding of pensions is a mandate of the Oversight Board, and increasing the funding to the Pension Reserve Trust during surplus years, as a funding mechanism

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

to contribute to payment of retiree benefits during deficit years, is essential to fulfilling it. It is also a necessary tool to reduce deficits as projected in the later years of the current Fiscal Plan by providing a robust source of funding for future pensions, the Commonwealth's largest expense (which has now increased by an estimated $1.9 billion by the elimination of the Monthly Benefit Modification). It will therefore enhance the feasibility of the Plan. The United States Congress created the Oversight Board by enacting PROMESA to guide the Commonwealth toward fiscal responsibility and renewed access to capital markets. Critical to the success of the Oversight Board's mission and the sustainability of the Commonwealth's economic future is providing a sustainable source of funding for its public pension systems. This is a particular focus because the Commonwealth's historical inability to maintain solvent public pension systems, including its historical misuse of pension funds, was a significant contributor to the financial crisis that led to the enactment of PROMESA.

4. The Pension Reserve Trust helps to ensure the Commonwealth's public pension systems will be adequately funded. The Plan provides several components of funding for the Pension Reserve Trust, one of which is tied to the net primary surpluses projected under the Commonwealth Fiscal Plan in effect as of the Effective Date (the "Surplus Projection Funding").

5. In the Motion, AAFAF acknowledges the Oversight Board's authority to establish the Pension Reserve Trust and the mechanisms for funding it, but asserts the Surplus Projection Funding "may make it harder for the Government to protect against near term economic disruption and to invest in the Island's future." *Id.* ¶ 5. It also contends the Surplus Projection Funding provision is "an attempt by the Board to cast its long shadow over the Government long after the Board is gone." *Id.* ¶ 6.

6. AAFAF erroneously links the Oversight Board's tenure to a plan proponent's power and duty to assure its plan of adjustment will be carried out. The Plan must and does provide for pension payments for many decades. There is absolutely no basis in law or logic to assert the Plan cannot include covenants to assure its satisfaction of pension payment requirements lasting decades because the Oversight Board, the Plan's proponent, terminates earlier.[4] First, the Surplus Projection Funding provision, like all of the funding components for the Pension Reserve Trust, is designed to protect future pension benefits and provide for their payment regardless of future economic or political circumstances. In formulating the funding mechanisms for the Pension Reserve Trust, the Oversight Board established a fixed contribution based on fiscal plan projections in the fiscal plan as of the Effective Date, with exceptions for failure to achieve projected surpluses as a result of lower federal funding or loss of revenues and/or emergency spending that could arise as a result of a future federally-declared natural disaster or pandemic. Second, the Motion ignores the Commonwealth's prior, and recent, history of making promises to increase pension benefits with no source of funding. *See, e.g.,* Act 7-2021. Third, the Surplus Projection Funding provision is in furtherance of the Plan and the Oversight Board's statutory mandate in PROMESA to establish permanent pro-growth reforms. *See* PROMESA § 701. The funding provisions for the Pension Reserve Trust are not an attempt to cast a long shadow of the Oversight Board. Rather, in the Oversight Board's view, they constitute a necessary and appropriate covenant that supports a Plan that imposes long term obligations, including new debt

---

[4] Indeed, Section 1123(b)(6) of the Bankruptcy Code (incorporated into PROMESA by PROMESA § 301) provides for the means of implementation of a plan and provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title." Similarly, pursuant to Section 1142(b) of the Bankruptcy Code (incorporated into PROMESA by PROMESA § 301), the confirmation order may direct any party to perform any act "that is necessary for the consummation of the plan."

and full payment of accrued pensions, that will last well beyond the ten years of pension Reserve Trust funding.

### The Plan's Funding Provisions for the Pension Reserve Trust Account for Circumstances Outside the Government's Control

7. Under the Plan, the Commonwealth is required to make annual contributions to the Pension Reserve Trust from the Commonwealth General Fund for ten (10) fiscal years beginning in the Fiscal Year in which the Effective Date occurs, in an amount no less than $175 million per year (the "Base Contribution"). For any Fiscal Year ending after the Effective Date in which the Projected Fiscal Plan Surplus[5] is at least $1.750 billion, the Base Contribution increases from $175 million to an amount equal to 50% of the Projected Fiscal Plan Surplus for that Fiscal Year.[6] The Government's concern is that the increased Base Contribution in years with a high Projected Fiscal Plan Surplus might require it to contribute the increased portion of projected surpluses to the Pension Reserve Trust even if the full projected surplus is not achieved.

8. The Plan's Pension Reserve Trust funding provisions account for AAFAF's concern that projected revenues might exceed actual revenues in a given fiscal year. The formula for calculating contributions in such years excludes the amount of reductions in the projected surplus amounts as a result of either (i) a decrease in federal funding from projected levels, or (ii) a natural disaster or pandemic. *See* Plan § 1.413. By making a reasonable allowance for a

---

[5] The "Projected Fiscal Plan Surplus" is equivalent to projected unrestricted primary fiscal plan surplus minus the sum of (i) the projected CVI payments for such Fiscal Year, plus (ii) the positive difference, if any, of projected Non-Own Source Revenue (or revenues of the Commonwealth received from the United States government or any of its agencies) minus actual Non-Own Source Revenue for such Fiscal Year.

[6] The Plan further requires the Commonwealth to make an initial contribution of $5 million to fund the Pension Reserve Trust's administrative fees, costs, and expenses.

5

downward fluctuation in surpluses based on events that are truly beyond the control of the Commonwealth government, the Plan reduces the likelihood the Commonwealth would be required to fund amounts it cannot afford in future years.

9. The Plan also requires the Commonwealth to make additional contributions to the Pension Reserve Trust in an annual amount equal to the lower of (a) the actual unrestricted primary surplus, minus actual CVI payments made for that Fiscal Year, and (b) the Projected Fiscal Plan Surplus for such Fiscal Year, minus the sum of (i) the Base Contribution for such Fiscal Year, (ii) the Commonwealth debt service obligation pursuant to the Plan for such Fiscal Year, and (iii) two hundred million dollars ($200,000,000.00).[7] Because this "residual" amount decreases, and could be eliminated entirely, if actual surplus is lower than the projected surplus in any given year, this component of the Pension Reserve Funding is vulnerable to future under-collection and/or overspending by the Government. The Oversight Board has therefore concluded that fixing a funding amount through the Base Contribution in years of projected surplus is essential to ensuring the expected amount of deposits will be made.

10. AAFAF acknowledges these provisions, but asserts there are "other reasonable protections, such as for acts of war, changes in tax policy, or a material economic downturn" for which the Plan does not provide. Mot. ¶ 4. The Oversight Board carefully considered these arguments and determined, given the Pension Reserve Trust's critical role the Commonwealth's future financial stability, the additional provisions requested by the Government were unwarranted. The Oversight Board intended to make adjustments for circumstances out of the

---

[7] The Plan also provides the Commonwealth may, subject to applicable laws (including, without limitation, Titles I and II of PROMESA), contribute such additional amounts as the Commonwealth, in its discretion, elects to add to the Pension Reserve Trust.

control of the Government, but did not want to create any disincentive for the Government to take all possible actions to (a) reasonably maximize tax collections; (b) manage efficient expenditures; and (c) enhance economic development through structural reforms. The Oversight Board determined the Government has options and measures at its disposal to counter the effects of these other hypothetical challenges. The first step in that direction is for the Government to implement the structural reforms set forth in the Commonwealth's Certified Fiscal Plan. Implementing those structural reforms will expand and strengthen the economy and better prepare it for extrinsic events in the future. The Government has other tools to mitigate potential revenue shortfalls, including tax reform (e.g., reducing tax credits and/or incentives), the use of projected cash reserves, and expenditure reductions.

### The Surplus Projection Funding Is Prudent Given the Commonwealth's History of Underfunding Pensions

11. Without establishing a fixed and substantial Base Contribution obligation for the ten (10) year funding period (subject to the potential adjustments discussed above), funding of the Pension Reserve Trust would be dependent upon the Government's discretionary contributions. As is well documented, and as the Commonwealth Government's history has taught us, the Government has often opted not to exercise its discretion in a manner sufficiently protective of its pension obligations.

12. Importantly, the funding provisions for the Pension Reserve Trust in the Plan take into account the elimination of the Monthly Benefit Modification,[8] as required for the Government's authorization of new bonds and CVIs under the Plan pursuant to Act 53-2021

---

[8] *See* Plan § 1.337.

7

("Act 53"). The Oversight Board estimates that, over the thirty-year period covered by the Fiscal Plan's projections, the aggregate cost of eliminating the Monthly Benefit Modification—which was explicitly required by the Commonwealth in exchange for authorizing the issuance of Plan securities to exit bankruptcy—is approximately $1.9 billion. *See* Amended Declaration of Sheva R. Levy [ECF No. 19054-5]), ¶ 54. To mitigate the risks of not meeting this additional cost, and to ensure adequate funding for the Commonwealth's public pension systems, the Oversight Board increased the Commonwealth's funding obligations for the Pension Reserve Trust. The Government's position—to promise more pension payments while not assuring their payment—invites recurrence of the sins of the past.

13. The increase in the funding levels provided for in the Plan are warranted by the Commonwealth's history of disregarding the magnitude of its pension obligations. Indeed, the Oversight Board, and this Court, have witnessed numerous attempts by the Government—including the current administration—to add billions of dollars of future spending without regard to how it would be funded. For example:

- Act 7-2021, which the Court enjoined and nullified, would have reverted pension benefits to unsustainable pre-petition levels, and even higher, by reinstating the same defined-benefit structure and Commonwealth obligations that led to the ERS's previous catastrophic overextension. *See Vázquez Garced v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight and Mgmt. Bd. for Puerto Rico)*, 511 F. Supp. 3d 90 (D.P.R. 2020).

- Act 29-2019, which the Court also enjoined and nullified, would have released municipalities from their direct payment and reimbursement obligations to the Commonwealth and forced the Commonwealth to fund, and to be the sole and primary obligor for, the municipalities' retirees' pensions. *See Fin. Oversight & Mgmt. Bd. for P.R. v. Vázquez Garced* (*In re Fin. Oversight & Mgmt. Bd. for P.R.*), 616 B.R. 238 (D.P.R. 2020).

- HB 886, which, among other things, would provide that active public employees hired before January 1, 2000 who have defined benefit retirement plans shall receive a pension equal to 50 percent of the participant's highest salary from the

8

last 3 years of service – in effect unfreezing ERS for most participants, whose average accrued benefit as of the 2013 ERS freeze was well below this amount.

- Act 80-2020, Act 81-2020, and Act 82-2020, which would create billions of dollars in new pension obligations for the Commonwealth with (1) no viable plan or method to cover the increased costs and (2) no Oversight Board approval for this additional spending. Then-Governor Vázquez Garced agreed with the Oversight Board the Government would not implement these pension laws unless and until it could demonstrate to the Oversight Board an economically responsible path toward implementation of the law and payment of the new pension obligations it creates.[9]

14. It is against the backdrop of this recent history that the Oversight Board established the funding requirements for the Pension Reserve Trust in the Plan. Given the circumstances, they are undeniably prudent and appropriate.

### The Surplus Projection Funding Furthers PROMESA's—and the Oversight Board's—Mission

15. Finally, AAFAF's contention that the Surplus Projection Funding constitutes an improper extension of the Oversight Board's powers into the future is misplaced. As explained above, any plan proponent must include in its plan provisions that last for the duration of the plan. The Plan must be feasible (PROMESA §314(b)(6)) and the Pension Trust helps to ensure that. Additionally, as Congress made clear in codifying PROMESA § 701, "any durable solution for Puerto Rico's fiscal and economic crisis should include permanent, pro-growth fiscal reforms." Coupled with the Oversight Board's need to adopt measures to provide adequate funding for public

---

[9] The Oversight Board recently learned of Senate Joint Resolution 171, which requires implementation of the first stage of the Incentivized Retirement Program created under Act 80-2020. As noted above, the Government had previously agreed not to implement Act 80-2020 (which would substantially expand ERS pension benefits, negating the savings created by the ERS Pension benefit freeze), unless and until it could demonstrate to the Oversight Board an economically responsible path toward implementation of the law and payment of the new pension obligations it creates. Senate Joint Resolution 171 seeks to force implementation of Act 80 without regard to whether the Government can show it is affordable and consistent with the Fiscal Plan.

pension systems, the funding the Pension Reserve Trust called for in the Plan is necessary to ensure payment of future pension obligations and to help stave off the deficits projected in the Fiscal Plan. A well-funded Pension Reserve Trust is pro-growth in that it sets a significant amount of achievable surpluses aside for future pensions, giving people confidence in their retirement benefits and thus making them more likely to stay on the Island than seek other employment/retirement alternatives elsewhere. Enhancing this confidence reduces incentives for outmigration and therefore is positive for the Island economy. Moreover, these are funds that when paid as pensions stay for the most part in the local economy. The Plan's proposed funding formula for the Pension Reserve Trust is therefore reasonable, economically feasible, positive for the Island economy, entirely consistent with the Oversight Board's statutory mission, and in the best long-term interests of the Commonwealth and its residents.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 18, 2021
      San Juan, Puerto Rico

                        Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Michael T. Mervis
Julia D. Alonzo
(Admission *pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/ Timothy W. Mungovan*
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110
Tel: (617) 526-9600
Fax: (617) 526-9899
Email: tmungovan@proskauer.com

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ *Hermann D. Bauer*
Hermann D. Bauer