# EXHIBIT 2

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123
171 D.P.R. 640, 2007 WL 1953609 (P.R.), 2007 TSPR 123

ASOCIACIÓN DE MAESTROS DE PUERTO RICO, personally and on behalf of its MEMBERS, and EDUCADORES PUERTORRIQUEÑOS EN ACCIÓN, personally and on behalf of their MEMBERS, appellants,

v.

DEPARTMENT OF EDUCATION, HON. CÉSAR REY, in his official capacity as SECRETARY OF THE DEPARTMENT OF EDUCATION, COMMONWEALTH and FEDERACIÓN DE MAESTROS DE PUERTO RICO, appellees.

In the Supreme Court of Puerto Rico.

*Number*: AC-2004-64

**Synopsis**

*CERTIORARI* PETITION to request the reversal of a JUDGMENT of *Rafael Ortiz-Carrión, Antonio J. Negroni-Cintrón and Carlos J. López-Feliciano*, Judges of the Court of Appeals, which reversed a judgment issued by the Court of First Instance and decided that Act No. 96 of August 7, 2001 was not retroactively applied because the collection of the service charges began to take place after it came into effect. *Judgment is entered reversing the one entered by the Court of Appeals and the deductions of service charges to the teachers that notified their interest to not affiliate with the Federación de Maestros and who were exempted from paying service charges by virtue of the former legislation are declared illegal. It is decided that Act No. 96 only applies prospectively to employees that opt not to be affiliated with the workers organization after its effectiveness.*

*Rafael A. Nadal-Arcelay, of Cancio, Nadal, Rivera & Diaz, P.S.C.,* attorney for the Asociación de Maestros de Puerto Rico, appellant; *Luis R. Rosario-Badillo*, attorney for Educadores Puertorriqueños en Acción, appellant; *José Velaz ***643**-*Ortiz*, attorney for the Federación de Maestros de Puerto Rico, appellee.

CHIEF JUSTICE HERNÁNDEZ DENTON delivers the opinion of the Court.

In this occasion we must determine if Act No. 96 of August 7, 2001, which authorized the collection of a service charge to the employees that opt not to be affiliated with the union that represents them, must be applied retroactively to the employees that were not affiliated while the former legislation that exempted them from paying such service charge was in effect.

In the case before us, the Asociación de Maestros y Educadores Puertorriqueños en Acción (the petitioners) ask us to reverse a judgment entered by the Court of Appels deciding that Act No. 96 of August 7, 2001 was not applied retroactively because the collection of the service charges began to take place after it came into effect. As we understand that the law in controversy was indeed retroactively applied in the absence of a express provision or extraordinary circumstances that warrant it, we reverse it.

I

Act No. 45 of February 25, 1998, as amended, 3 L.P.R.A. sec. 1451 *et seq*., known as the Labor Relations for Public Service of Puerto Rico Act (Act No. 45) confers the public employees the right not to be affiliated or be represented by the certified workers organization. Also, it provided that the employees that opted to not be affiliated would be exempt from the payment of service charges.

Afterwards, the Legislative Assembly promulgated Act No. 96 of August 7, 2001 (Act No. 96) that amended Act No. 45, and established a service charge up to a maximum of 50% of the regular fee for the ***644** affiliates for the employees that opt to not be affiliates. *In other words, the amendment left unaltered the option*

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

*for the employees not to affiliate, but provided that, in those cases, they would be obligated to pay a service charge.*

Once Act No. 96 was approved, the Department of Education began to deduct an amount of $8 to all the unaffiliated teachers for service charges in favor of the Federación de Maestros.[1] Such deduction covered the period from the approval of Act No. 96 until the present time.

Not satisfied with that decision, the Asociación de Maestros y Educadores Puertorriqueños en Acción, on behalf of its members, filed a complaint requesting a declaratory judgment and injunction against the Department of Education and the Federación de Maestros. It alleged, in sum, that such deduction is illegal and that its members, when notifying their interest to not affiliate with the Federación de Maestros under the protection of Act 45, they acquired the right to not pay service charges. Also, it held that Act No. 96 does not provide for it to be retroactive, therefore the Department of Education must abstain from continuing to deduct the charge in controversy.

On its part, the Department of Education alleged that Act. No. 96 is not being retroactively applied, as the deductions began to be collected after it came into effect. It also stated that for the petitioners to be entitled to benefit from the services provided by the Federación de Maestros they must contribute some percent of what the affiliated employees pay. Finally, it held that the petitioners are not entitled to an acquired right when not paying services charges by virtue of the previous law.

After the case was submitted for its adjudication, the Federación **\*644** de Maestros filed a Memorandum of Law in which it reiterated several of the arguments made by the Department of Education. It argued that Act. No. 96 was not being applied retroactively, as the deductions began to take place after it came into effect and that the petitioners did not acquire a right to not pay service fees, by virtue of the former law. On the other hand, it stated that Act. No. 96 was promulgated to resolve contradictions between the provisions of Act No. 45.

After several procedural actions, the Court of First Instance decided by way of a *nunc pro tunc* amended judgment that the deduction of service charges that the Department of Education was making to the petitioners was illegal, as they notified their interest not to be affiliated before the effectiveness of Act No. 96. It decided that such law could only be applied prospectively by virtue of Art. 3 of the Puerto Rico Civil Code, 31 L.P.R.A. sec., 3 and its interpretative case law. In view of the foregoing, it ordered the Department to discontinue deducting the charges and to return the money recollected up to that moment to the petitioners.

Not satisfied with the decision, the Federación de Maestros appealed to the Court of Appeals reiterating the arguments presented before the Court of First Instance. It stated that the lower court had erred by concluding that the deductions were retroactive, even when they were made after Act No. 96 came into effect. At this point, the intermediate court reversed the decision of the Court of First Instance for believing that the Department of Education did not retroactively collect the service charges, because the deductions were made after it came into effect.

The petitioners appeal that decision. They allege that the Court of Appeals erred by deciding that Act No. 96 was put into effect prospectively and that, therefore, the legal provision in controversy is not being applied retroactively. They allege that the actions of **\*646** the Department of Education threaten their acquired right to not pay service charges to the Federación de Maestros.

Having taken the petition as a *certiorari*, and with the benefit of the appearance of the parties, we proceed to decide.

II



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

[1] Act No. 45 was promulgated to confer to the public employees the right to unionize and to collective bargaining within the parameters of the law itself. Statement of Motives Act No. 45 (1998 (Part 1) Laws of Puerto Rico 146); *Depto Educ. V. Sindicato Puertorriqueño*, 168 D.P.R. 527 (2006). Pursuant to this, they were conferred the right to affiliate to a union that has been certified by the Labor Relations of Public Service Commission as the exclusive representative of the employees. Art. 4 of Act No. 45 (3 L.P.R.A. sec. 1451(b)). Such organization will represent the employees before the corresponding governmental agency for purposes of salaries, marginal benefits, employment terms and conditions. Art. 3 of Act No. 45 (3 L.P.R.A. sec. 1451(j)).

Relevant to the controversy before us, Act No. 45 recognized the right of the employees not to affiliate or be represented by the certified workers organization. Also, Sec. 4.2 of Act No. 45 (3 L.P.R.A. sec. 1451c (ed. 2000)), already reversed, exempted the employees that had opted for exercising that right from the payment of service charges.[2] In other words, through that *647 law the employees that opted to not be affiliated would be exempt from paying service charges to their representative, even if the provisions of the collective bargaining agreement as to salaries, marginal benefits and general employment conditions applied to them.

[2] In 2001, the Legislative Assembly amended Act No 45 to, among other things, substitute Sec. 4.2 for a new article called "Option to not affiliate and service charges". Act No. 96, *supra*, incorporated the option not to be affiliate and established a new service charge for those that opt to exercise it. Due to its importance, we transcribe referenced Art. 17:

*Option of not affiliating:*

Those employees that form part of a unit appropriate for purposes of collective bargaining duly certified by the Commission, that opt not to affiliate or be represented by the duly certified workers organization, may ask to be excluded from it by filing a notification to that effect to the agency head with copy to the exclusive representative, within the thirty (30) days following the notification of the certification of the exclusive representative. 3 L.P.R.A. sec. 1454.

*Service Charge*

The members of the appropriate unit that opt not to affiliate will pay to the exclusive representative a service charge up to a maximum of fifty (50) percent of the regular fee established for the affiliates of the exclusive representative. Also they will have to follow the provisions of the collective bargaining agreement as to the procedures to resolve complaints, grievances and arbitration, with the provisions of the Collective Bargaining Agreement regarding salaries, marginal benefits and employment conditions being just as applicable. (Emphasis provided.) 3 L.P.R.A. sec. 1454a.

The provisions transcribed above show the intention of the legislator to modify the legal situation in effect until that moment, to compel the employees that thereinafter opt to not be affiliated to contribute to the *648 union that represents them. Clearly Act No. 96 changed the legal situation for those, that at the time it came into effect, had not exercised the option to not affiliate.

Having clarified the foregoing, we must examine if the intention of the legislator was for that obligation to apply retroactively to the employees that opted not to affiliate under the law in effect then.

### III

[3] The non-retroactivity of the laws is conceived as a fundamental principle of statutory interpretation. Such principle is incorporated to our legal system through Art. 3 of the Civil Code,

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

*supra*, that establishes that the laws will not have retroactive effect if they expressly do not state otherwise. *Therefore, the exception is the retroactivity*. *Consejo de Titulares v. Williams Hospitality*, 168 D.P.R. 101 (2006); *Nieves Cruz v. U.P.R.*, 151 D.P.R. 150 (2000); *Ocasio v. Diaz*, 88 D.P.R. 676 (1963). We clarify that retroactivity is not only the exception, but it has a place in extraordinary circumstances as we will see later. As a result of this, few are the times that we have moved away from the general norm of non-retroactivity, as absolute retroactivity of the laws entails the end of legal security and trust. *Ocasio v. Diaz*, supra, pgs. 728-729.

**[4]** Although the duty of expressly establishing the retroactivity is in the referenced provision of the Civil Code, we have decided that it can arise from the implicit will of the legislator. *Vélez v. Srio. De Justicia*, 115 D.P.R. 533 (1984; *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378 (1973). In other words, the intention of the legislator of giving retroactive effect to a law can be express or tacit. *Consejo Titulares v. Williams Hospitality*, supra; *Rodríguez v. Retiro,* 159 D.P.R. 467 (2003) ***649.***

Now, that does not mean we can impart retroactivity to a law lightly. The intention of the legislator of applying a law retroactively must be deduced from the statute. In sum, retroactivity, *being an exceptional act,* must be expressly or clearly in the statute. *Nieves Cruz v. U.P.R.,* supra; *Vázquez v. Morales*, 114 D.P.R. 822 (1983). It is only that way that we maintain the non-retroactivity principle of the laws.

To that effect, in absence of an express mandate of the legislator, we have only given retroactive effect to a law in supreme and extraordinary circumstances. They are circumstances in that public interest, justice, or the purposes of the law itself so warrant. *Nieves Cruz v. U.P.R.,* supra. For example, in W*arner Lambert Co. v. Tribunal Superior*, supra, we gave retroactive effect to Act No. 75 of June 24, 1964 so as to not destroy the *cardinal purpose* of the statute turning it in an innocuous measure. Also, in *Velez v. Srio de Justicia,* supra, we decided that the legislation to prohibit the operation of "Pin Ball" machines 200 meters from schools had retroactive effects. We noticed how, the greater the social malady the statute attempted to cure the greater the justification for its retroactive application. *Warner Lambert Co. v. Tribunal Superior*, supra.

**[5]** In accordance with the foregoing, we cannot endorse any decision of retroactivity that is done ignoring the aforementioned principles. We are based on the premise that there is a presumption of non-retroactivity in the cases that the legislator keeps silence in that regard. Therefore, if the text or the legislative purposes do not clearly, certainly and definitively state the intention of the law having retroactive effect, we cannot impart it that effect. *Vargas v. Retiro*, 159 D.P.R. 248 (2003). In fact, in *Nieves Cruz v. U.P.R.*, supra, pg. 160 we decided there was a legislative intention of *definitive* retroactivity, "it would have been logical to have included ***650** a simple sentence stating that intention in the cited Act No. 98".

**[6]** Lastly, we must remember that, in matters of statutory interpretation the rules of interpretation establish that when the text of the law is clear and free from vagueness it must be followed. In other words, when the text of the law is clear and not ambiguous it must not be substituted under the pretext of following its legislative purposes. *Nieves Cruz v. U.P.R., supra, Irrizarry v. J&J Cons. Prods, Co., Inc*., 150 D.P.R. 155 (2000). Therefore, if the retroactive application is not in the text of the law we cannot ignore the text of the law, in the absence of extraordinary circumstances.

### IV

In the case before us, the petitioners allege that Act No. 96 was retroactively applied, as they were exempted from the payment of service charges by virtue of the former legislation. They allege that Act No. 96 does not provide for its

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

retroactive application therefore the Department of Education is prevented from deducting from their salary a service charge. They are right.

[7] The text of Act No. 96 does not in any way state that the collection of a service charge to the non-affiliated employees must have retroactive effect. On the contrary, there are provisions that hold that its application must be prospective. Like for example, Art. 10 of Act No. 96 provides that its effectiveness shall be "immediately after its approval", without specifying if it will have retroactive effect. That is, it is limited to establishing that it will be effective immediately. It must be mentioned that in other cases in which the legislator has wanted to confer retroactive effect to a law, they have expressly provided it in that same article.[3] *651

In the same way, the cited Sec. 17.2 of Act No. 96 in controversy establishes that "[t]he members of the appropriate unit that opt not to affiliate will pay a service charge to the exclusive representative …". The language of the afore transcribed provision shows the intention of the legislator to charge the service fee to the employees that, from its effectiveness, opt to not affiliate. We understand that if the intention of the legislator had been otherwise, they would have clarified that in the text of the law. This Court cannot substitute the word *opt for opted*.

[8] On the other hand, to evaluate the intention of the legislator, in the absence of an express provision in the law, it is necessary for there to be extraordinary circumstances. We are referring to the cases that attempt to correct a social malady or avoid a social injustice. Clearly the retroactive collection of a service charge in favor of a union is not one of these cases.

As stated in the Statement of Motives of Act No .96, its purpose was to "adjust the existing law to the needs and aspirations of our public employees and to provide an adequate legal framework to guarantee and broaden the negotiation field which will result in a greater service to the citizens". Statement of Motives of Act No. 96 (2001 (Part 1) Laws of Puerto Rico 404). That legislative statement by itself, leads us to conclude that we must apply the law retroactively. On the other hand, the only mention of Act No. 45 made is that it did not fully meet the expectations of the impacted groups. It does not reference incompatibilities or contradictions that want to be remedied with the approval of Act No. 96. *652

V

[9] In view of the foregoing, we *declare that the deductions of service charges made to the teachers that notified their interest in not being affiliated to the Federación de Maestros and were exempted from paying the services charges by virtue of the former law are illegal. We decide that Act No. 96 only applies prospectively to the employees that opt not to be affiliated to the workers organization after its effectiveness.*

*Judgment shall be entered accordingly.*

Associate Justice Fiol-Matta dissented with a written opinion, joined by Associate Justice Rebollo-López.

-O-

Dissident opinion by Associate Justice Fiol-Matta joined by Associate Justice Rebollo-López.

I dissent from the decision of the majority that decides to exempt a select group of public employees from paying the service charges in favor of the certified union and allows them to enjoy, for free, the benefits and mechanism provided in the collective bargaining agreement. The majority opinion concludes that in the case of record the only ones that would have to pay for the services of the union without being members of it are the employees that opt not to be affiliated to the workers organization after August 7, 2001, date of effectiveness of Act No. 96 that amended the Labor Relations for Public Service Law. This way, those employees that notified their decision not to be affiliated to the union before August 7,



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

2001, are exempt from not paying services charges to the union that, in the end, ***653** represents their interests and negotiates on their behalf their employment conditions and terms. This allows a group of employees to benefit for free from the services provided by the exclusive representative in the collective bargaining and in the administration of a collective bargaining agreement. Despite that the legislative intention of Act No. 96 was to precisely clarify the provisions of services charges for those who opted not to be affiliated, the Majority of this Court decides to perpetuate the situation that such law sought to correct by imposing the payment of a reasonable charges for the services that the union provides to the workers. For the reasons stated below, I dissent from that decision.

**I**

In the case of record, the majority opinion decides that the Department of Education cannot make deductions for service charges to the teachers that had notified their interest in not affiliating to the Federación de Maestros before the effectiveness of Act No. 96. It decides that Act No. 96 that amends Act No. 45 of February 25, 1998, known as the Labor Relations for Public Service Act, does not provide for the collection of a service charge to the non-affiliated employees to extend to those employees that were originally exempted from the payment of that charge by virtue of Act No. 45. In other words, they conclude that Act No. 96 can only have a prospective effect and that for this reason the provisions that impose the service charge do not apply to the employees that had already opted for not affiliating on the effective date of these amendments.

To reach this result, the majority opinion makes use of an exegesis that in my opinion is incomplete, that does not accurately examine the true legislative intention of the amendments that Act No. 96 introduced to the ***654** Labor Relations for Public Service of Puerto Rico Act.

The opinion is based in that Act No. 96 only states that it will be in effect "immediately after its approval", without providing for its retroactive application. With the same logic we conclude that the fact that the retroactive application is not mentioned, by itself, does not allow us to reach any conclusion regarding the retroactivity of the law.

When talking about the effectiveness of a law we refer to the moment from which it will have legal effects, that is, the moment in which it legally "exists", so that it can be applied. So, there is no doubt that Act. No. 96 of August 7, 2001 "exists" to be applied from its approval. But that immediate effectiveness cannot lead us to inevitably conclude that its provisions cannot be applied to a group of people that had acted in a certain way or had carried out certain acts before its effectiveness. Because of this, to determine the retroactive or prospective reach of Act No. 96 we must go to its substantive content and to the legislative intention.

The majority opinion also is based in the verbal time used by Act No. 96 to establish the service charge. This provision, included as the new Section 17.2 of the Labor Relations for Public Service of Puerto Rico Act, establishes that "[t]he members of the appropriate unit that opt not to be affiliated will pay to the exclusive representative a service charge up to a maximum of fifty (50) percent". 3 L.P.R.A. sec. 1454a. The majority opinion emphasizes the use of the verb "opt" in the subjunctive present ("opt") to conclude that, by not using the past "opted", it is revealed that the intention of the legislator is to collect the service charge only from the employees that opted not to affiliate from the effectiveness of Act No. 96.

I do not agree with this interpretation, because it ***655** does not place the setting of the service charge in the context of the other provisions of non-affiliation. The opinion of the Court does not consider that Act No. 96 adopts not one, but two provisions to substitute Section 4.2 of Act No. 45



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

(3 L.P.R.A. sec. 1451c (ed. 2000)). The new Section 17.1 (3 L.P.R.A. sec. 1454) addresses the concept of the non-affiliation and establishes that the employee may request to be excluded from the workers organization that is certified by the Labor Relations Commission as exclusive representative of certain appropriate unit. According to this provision, the employee must notify their exclusion request within the thirty days following the notification of the certification of the exclusive representative. In other words, Section 17.1 establishes a term in which an employee may notify their interest in not affiliating. This notification can only be done within the term established and only once, being a sole act of instant consummation that does not repeat itself.

On the other hand, the new Section 17.2 of the law provides that the employees that opt to not be affiliated will have to pay a service charge to the exclusive representative, equal to no more than half of the regular fee established for the affiliated employees. Also, this section indicates which provisions of the collective bargaining agreement would apply to these non-affiliated employees. This way, Section 17.1 regulates the event of the notification of the non-affiliation request, while Section 17.2 establishes the service charge that the employees that exercise the option to not affiliate will pay.

The action of notifying the non-affiliation that Section 17.1 establishes may be done only one time, within the term established therein. However, as a matter of reality, the action of opting not to be affiliated is not limited to a particular moment, but it is reiterative and continuous because after timely notifying their decision not to affiliate, these employees can always opt to affiliate to the exclusive representative. Undoubtedly, **\*656** the law does not forbid their eventual affiliation. This way, the notification can only be made at a certain time, but the option to not affiliate is an action that is continuously exercised by the employees that had notified their non-affiliation. Therefore, if they do not affiliate to the certified union, the employees that Section 17.2 alludes to are constantly and continuously exercising their option to not affiliate.

Due to all the foregoing, I believe that in the particular case of Act No. 96, the use of the subjunctive of the verb "opt" in present time is not determinative of its temporal application, as the exercise of that option is continuous.[1]

An employee that in 1998 timely notified their interest in not affiliating, even today is exercising their option not to affiliate. Because of this the grammatical analysis of Section 17.2 is not enough to determine if the legislative intention was to give retroactive effect to this provision. For this this Court should have evaluated the legislative intention of Act No. 96 that, as I explain below, was for this law to apply to all public employees that did not affiliate to the union of their agency, regardless of the time in which they notified their decision.

## II

Act No. 45 of February 25, 1998, known as the Labor Relations for Public Service of Puerto Rico Act, 3 L.P.R.A. secs. 1451-1453j, gives the public employees of the central government agencies and the **\*657** municipalities the right to unionize and of collective bargaining within certain parameters established by the law itself. In accordance to Act No. 45, the public employees not covered by the Labor Relations Act of Puerto Rico, Act No. 130 of May 8, 1945 (29 L.P.R.A secs. 61-76) may organize and affiliate in unions of their choice to negotiate their work conditions.

Act No. 45 provides that the employees of the different appropriate units will chose, by majority vote, the union that will represent them before the corresponding agency. 3 L.P.R.A. sec. 1451g. The organization that obtains the absolute majority of the votes in the elections will be certified as the exclusive representative of the employees comprised in the appropriate unit and

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

will have the authority to negotiate with the agency a collective bargaining agreement in which they agree, among other things, the salaries, the marginal benefits, the employment terms and conditions. 3 L.P.R.A. sec. 1451j. See: *Depto. Educ. v. Sindicato Puertorriqueño*, 168 D.P.R. 527 (2006); *A.R.P.E. v. Coordinadora*, 165 D.P.R. 850 (2005); *Federación v. Molina*, 160 D.P.R. 571 (2003); *Pérez v. Com. Rel. Trab. Serv. Pub.*, 158 D.P.R. 180 (2002). Once a union is certified as a representative of an appropriate unit, no other entity may represent the employees of that unit. 3 L.P.R.A. sec. 145lf.

Despite this, the public employees that are not interested in being affiliated or represented by the exclusive representative are entitled to be excluded from the union, with the close shop being expressly forbidden. These employees, like those that opt to be members of the union, would benefit from the complaint and grievance procedure of the collective bargaining agreement, including arbitration and would also enjoy the salaries, marginal benefits, the employment terms and conditions in the collective bargaining agreement that the agency and the exclusive representative executed. **\*658** 3 L.P.R.A. sec. 1451c (ed. 2000). See: *Asociación Maestros v. Comisión,* 159 D.P.R. 81 (2003); Pérez v. Com. Rel. Trab. Serv. Pub., supra.

Act No. 45 originally provided in its Section 4.2 that "[t]hese [not affiliated] employees will not pay services charges to the workers union". ² However, Act No. 96 of August 7, 2001, as we previously mentioned, repealed this section and substituted it with two new ones. Section 17.1 reaffirms the option of the employees to request the exclusion from the certified union. 3 L.P.R.A. sec. 1454. On the other hand, Section 17.2 provides that "[t]he members of the appropriate unit that opt to not affiliate *will pay the exclusive representative a service charge* of up to a maximum of fifty percent (50%) of the regular fee established for those affiliated to the exclusive representative". (Emphasis provided) 3 L.P.R.A. sec. 1454a.

In the Statement of Motives of Act No. 96, the Legislative Assembly recognized "the need to amend Act [No. 45] to adjust the existing legislation to the needs and aspirations of our public employees". 2001 (Part 1) Laws of Puerto Rico 404. The legislative intention that its background shows is to clarify certain aspects of Act No. 45 related to the non-affiliation. That concerning the charge for services provided to the non-affiliated employees is priority because Act No. 96 is expressly directed towards **\*659** resolving the confusion caused by the internal contradictions of Act No. 45 as to this option.

By examining the background of both laws we note that the original intention of Act No. 45 was to require a charge for these services. So, the original version of the Proposed Law of the Senate 813, that eventually was approved as Act No. 45 in 1998, established in its Section 4.2 a service charge for the employees that opt to not affiliate to the union certified as exclusive representative. Such charge would not exceed 66% of the payment of the fee established for the affiliated employees, and the organization had to justify it as a cost of the bargaining and the administration of the collective bargaining agreement and of the union representation in general.

In its Section 3, the project defined service charge as the "[p]ayment made to the exclusive representative by employees of the contracting unit that have exercised the right to not affiliate to the union of their agency". P. of the S. 813 of January 26, 1998, pg. 6. Also, Section 15.1 of the proposed law imposed on the exclusive representatives the obligation to submit a report to the Labor Relations Commission stating, among other things, "the sum required from its members in initiation fees, periodic fees, or *service charges to non-affiliated employees".* (Emphasis provided). Id., pg. 49. The intention of imposing a service charge to the employees that opted to not affiliate was even clearer when discussing the proposed law in the hemicycle of

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

the Senate. There the senator Charlie Rodriguez-Colon affirmed:

> We must not compel any worker to have to affiliate if they do not want to. But we do have to compel that worker that decides not to affiliate to have to pay a fee, a reasonable fee to the union that will be representing the interests of the workers. Because that worker that is not affiliated will enjoy the benefits that may be obtained in the Collective Bargaining and must pay as is established here [in the proposed law]. Senate of Puerto Rico, *Discussion of the Proposed Law 813 of the Senate during the session of the day Monday January 26, 1998*, pg. 54. **\*660.**

However, as we saw, in the final version approved as Act No. 45 of February 25, 1998, it was provided that the non-affiliated employees would not pay services charges to the certified union while certain provisions related to that service charge, in evident contradiction, were left. Even the provision of the proposed law that compelled the exclusive representative to inform to the Commission the sum that it required as "services charges to non-affiliated employees" was left in the law that was ultimately adopted. See 3 L.P.R.A. sec. 1453d. This way, Act No. 45 was approved with serious substantive incongruencies.

It is in this context that we must precise the intention of the Legislative Assembly when approving Act No. 96 and expressly establishing the obligation of the non-affiliated employees to pay services charges to the certified workers organization as exclusive representatives. The report of the proposed law that would become Law No. 96 reveals that the legislative purpose was to clarify the incongruencies of Act No. 45. It is also illuminating that, according to the report,

"the non-affiliation in the context of Law [No.] 45 is an option and not a right because what is a right in accordance with the Law, is the affiliation to the union". Labor and Veterans Matters Commission of the House of Representatives of Puerto Rico, *Report on the P. of the H. 1219*, June 21, 2001, pg. 4. After this explanation the Report indicates that it was necessary to amend Act No. 45 because "the service charge was defined but not established in the body of the law". Id, pg. 10. Because of that, when including the new Section 17, "the provisions on non-affiliation and services charges in the law are harmonized". Id.

In accordance with the foregoing, it is clear that the legislative intention when approving Act No. 96 was to correct the contradiction between the language of Section 4.2 of Act No. 45 and the other provisions of the law. Act No. 96 seeks to effectively clarify the legislative intention regarding non-affiliation and the services charges. This **\*661** leads us to, forcefully, conclude that after the approval of that law the services charges must be collected *to all employees that opt to not affiliate* to the workers organization that the Labor Relations Commission has certified as exclusive representative. This would be the only way to meet the legislative intention of preventing these employees to benefit for free from the services of the unions in the administration of collective bargaining agreements and in the collective bargaining of work terms and conditions. Not applying Act No. 96 to the employees that notified their decision to not affiliate before it came into effect would entail the perpetuity of the situation that the legislator sought to correct regarding a specific group of employees and would be contrary to the legislative intention. Also allowing a select group of employees to enjoy free of cost of the benefits of the collective bargaining agreement while the others pay a union fee or a service charge would also represent a great injustice.

There is no doubt, then, that the purpose of Act No. 96 is for *all* the non-affiliated employees to



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

pay the service charge. We must then determine if this can be made extensive to the employees that opted not to affiliate before August 7, 2001, and if the alleged faculty of "non-affiliation, non-representation, no service charge" granted by Act No. 45 is a right acquired by them that could be affected by the retroactive application of the law. Also, this requires us to examine again the principle of the non-retroactivity of the laws and the doctrine of the acquired rights, both of them established in our Civil Code.

### III

The legal norms can be applied to facts and situations that occur from their effectiveness or can regulate facts and situations occurred prior to that time, being then retroactive. F. Bonet Ramon, *Compendio de Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1959, T. I, **\*662** pgs. 199-200. These modalities represent the classic conflict of laws in time, in which two opposing principles counter. On the one hand, the principle of the non-retroactivity of the laws, that prevents a subsequent statute to influence in legal situations constituted under the former, guaranteeing this way the security and stability of legal relations. On the other hand, the principle of retroactivity, that extends the efficacy of a legal norm to facts and situations prior to its effective date, or to the regulation of legal actions and transactions created or allowed pursuant to a previous statute, to promote the evaluation of the Law. D. Espin, Canovas, *Manual de Derecho Civil Español*, 8th ed., Madrid, Ed. Rev. Der. Privado, 1982, Vol. I, pg. 192.

In several opportunities we have talked about the centrality of the principle of the non-retroactivity of the laws in our legal system. See: *Vargas v. Retiro,* 159 D.P.R. 248 (2003); *Almodóvar v. Méndez Román*, 125 D.P.R. 218 (1990); *Vélez v. Srio de Justicia,* 115 D.P.R. 533 (1984); *Claudio v. Cruz Águila*, 84 D.P.R. 435 (1962). It is a norm of noticeable civil lineage, established in Article 3 of the Puerto Rico Civil Code, that provides the following:

The laws shall not be applied retroactively unless they expressly provide otherwise.

In no case can the retroactive application of a law affect the rights acquired pursuant to a previous law. 31 L.P.R.A. sec. 3.

The Spanish doctrine has identified three foundations for this non-retroactivity principle. The first is a legislative policy directed towards guaranteeing legal trust and safety to the citizens in general. It also has a justification of human moral based in the principles of individual freedom that guarantee to the citizens the power of acting without obstacles within the margin of the law. The third foundation, according to the doctrine, responds to the collective psychology that proclaims that *the laws must look to the future and not the past*. F. Puig Pena, *Tratado de Derecho* **\*663** *Civil Español*, Madrid, Ed. Rev. Der. Privado, 1957, T. I, Vol. I, pgs. 438-439. Also, see, *Vázquez v. Morales*, 114 D.P.R. 822, 826 (1983).

Notwithstanding the foregoing, the non-retroactivity rule is not a rigid norm of absolute application. See: *Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378, 384-385 (1973); *Rodríguez Miller*, 23 D.P.R. 594, 601-602 (1916). The own language of Article 3 of the Civil Code confirms it, because it does not absolutely forbid the retroactive application of the laws, instead allows it in "certain and supreme circumstances" and in "exceptional situations".

*Nieves Cruz v. U.P.R.,* 151 D.P.R. 150, 158 (2000); F. Puig Pena, *Compendio de Derecho Civil Español*, 3rd ed., Madrid, Eds. Piramide, 1976, T. I. pg. 131. Since many years ago we recognized that "the absolute retroactivity of the positive law would be the end of the legal security and trust; but we also know that the absolute non-retroactivity would be the death of the development of the law". *Ocasio v. Díaz*, 88 D.P.R. 676, 728 (1963). Also, citing Suárez Collía, we recently stated that our legal system "resists being immobilized in a precise historic


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

time [as] by its own nature…it must respond to the reality of each moment as an instrument of progress and perfection". J.M. Suarez Collia, *El principio de irretroactividad de las normas jurídicas*, 2nd ed. Rev. Madrid, Actas, 1994, pg. 56, cited in *Consejo Titulares v. Williams Hospitality*, 168 D.P.R. 101, 108 (2006).

For this reason we have decided that, even when it is an exceptional act, a law can have retroactive effect if that is the *legislative intention*, either *express or tacit*, and we have also emphasized that a law must be applied retroactively when that interpretation results in *the most reasonable in accordance with the legislative purpose*. *Consejo Titulares v. Williams Hospitality*, supra. Also, see, *Nieves Cruz v. U.P.R.,* supra, pgs. 158-159. The retroactivity of a legal norm can affect its structural elements, that is, the fact that determines the conditions *664 or assumptions of its application and the mandate that determines the legal effects derived from it. J. Santos Briz and others, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. I, pg. 295. Now, Article 3 of the Civil Code imposes a significant limitation to that retroactive effect, whether it arises expressly from the text of the law or is derived from the legislative intention, and it is that *the retroactivity of a law cannot affect the acquired rights by virtue of a previous law*. See 31 L.P.R.A. sec. 3. Let's examine this concept more closely.

Historically it has been stated that a right is acquired (*ius quaesitum firmum*) if it is the consequence of an ideal fact to produce it by virtue of the law in effect in the time it has been done or carried out…and it came to form part of the…patrimony [of the person]". L. Diez-Picazo and A Gullon*, Sistema de Derecho Civil*, 9th ed., Madrid, Ed. Tecnos, 1997, Vol. I, pg. 108. Also, see, J. Castán Tobeñas, *Derecho civil español*, *común y foral*, 12th ed. Madrid, Ed. Reus, 1982, T. I, Vol. I, pg. 616. The acquired rights are those which legal consequence is to enter directly to the patrimony of the individual,[3] which exercise and enjoyment, for reason of its social importance, cannot be retroactively altered by a law approved after its acquisition.[4] These rights *665 have "such force and autonomy" derived from the legal norm that instituted them, that they can be opposed "with all the magnitude of their force" to any attempt to destroy or ignore them provided by a subsequent law. Puig Peña, *Tratado de Derecho Civil Español*, op cit., pg. 445; E. Vázquez Bote, *Derecho Privado Puertorriqueño*, Orford-San Juan, Equity Publishing Co., 1992, T. II, pg. 442. In this way, the immediate application of a subsequent law to the legal situations or relations subsisting at the time of their effectiveness is limited upon the need to respect those rights legitimately acquired. F. Puig Brutau, *Introducción al Derecho Civil,* Barcelona, Ed. Bosch, 1981, pg. 184.

However, not every legal situation that arises from a previous law is an acquired right protected by the principle of non-retroactivity opposite a subsequent law. Santos Briz explains that for it to be an acquired right

…it is necessary for it to be subjective situations which extension and scope are determined by a legal act or transaction, not directly by the law, that is limited to making the conclusion of this act or transaction possible…On the other hand, objective legal situations…can be modified by subsequent laws. J. Santos Briz and others, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T.I., pg. 294.

Based on the preceding citation, in *Consejo Titulares v. Williams Hospitality,* supra, pg. 109 we indicated that the acquired right does not encompass the group of faculties that a previous law allows the citizens to exercise, "as this would be the objective rule of law that the new law attempts to change".

So, the *right as a conceptual unit* is acquired with immunity against retroactivity, properly speaking, and not the accessory faculties and qualities that *666 determine their exercise, content, and acquisition. See: Santos Briz and others, *op cit.,* pg. 294; C. Valverde and

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

Valverde, *Tratado de Derecho Civil Español*, 4th ed., Valladolid, Ed. Talleres Tipográficos Cuesta, 1935, T. I., pgs. 137-138. This accessory content is composed only of secondary manifestations of the right, that even when they are missing, the main right does not disappear or is *undermined.*

An acquired right can only be that that is derived from an individual and private title, product of a subjected consummated situation that is, at the same time, the result of a legal act or transaction based on a rule of law created by a previous law. On the other hand, the accessory faculties and attributes of a law are directly derived from a title common to all the citizens, determined by an objective legal situation that promotes a public interest and are not attributable to any citizen in particular because they are granted with abstraction to an act of individual will. Santos Briz, op. cit, pg. 294; Valverde y Valverde, op cit., pg. 137.

These legal additaments do not directly enter the patrimony of the owner, because as they are merely circumstantial to the main right and dependent on it, they cannot be appropriated, and a proprietary interest cannot be produced in their possession. Therefore, a new law could delimit not only the accessory attributes of a right that are prospectively acquired from the effectiveness of that law, but those acquired based on a previous law. See M. Albaladejo, Derecho Civil, 9th ed., Barcelona, Ed. Bosch, 1983, T.I., Vol. I, pg. 200.

### IV

In this case there is no doubt that Act No. 96 was applied retroactively to the teachers that stated their non-affiliation to the workers organization pursuant to Act No. 45. The effectiveness of Act No. 96 was extended to the regulation of facts and situations prior **\*667** to its effectiveness and fully allowed pursuant to a previous statute. As we previously indicated, this was precisely the legislative intention, to correct the incongruencies presented by the previous law and strengthen the law of collective bargaining in the central government.

However, we must still evaluate if that retroactive application affects any acquired right of the teachers that notified their decision to not affiliate before the effectiveness of Act No. 96. The petitioners understand that these teachers acquired two rights: that of not being represented by the certified workers organization, and the one of not paying service charges. However, the nature of these rights does not allow us to conclude that both were immune to the effect of the new law.

We have seen that the main characteristic of the acquired rights is that they come from subjective situations and that their scope is determined by a legal act or transaction, and that, pursuant to that legal transaction, come in to form part of the person's patrimony. Also, we have explained that the right that is acquired like this must be in itself a conceptual unit and not an accessory faculty or quality of it. Contrary to what the petitioners expect, not having to pay service charges is not an independent conceptual unit that by itself is determined by a legal act or transaction based in the individual will. The prerogative of not paying these charges is an accessory faculty that the previous legal system granted to the employees that at that time opted not to be affiliated. The independent conceptual unit is the faculty of not affiliating; not paying the service charges is one of the suppletory aspects that determine the right of that faculty. The non-affiliation is the subjective situation born from the will of the employees while the payment of service charges is an objective situation that has its immediate cause in the law, with abstraction of voluntary and individual acts, because **\*668** it does not require the exercise of any additional will for its effectiveness.

Not paying charges for services rendered is not derived from an own and private title of each of the persons that opted not to be affiliated before the approval of Act No. 96, nor was determined



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

by a legal transaction that was based in the rule of law that was in effect pursuant to Law No. 45. On the contrary, this concept is derived from a title common to all the employees that opted not to affiliate at that time. Because of its public interest content, it does not belong to any employee in particular. This way, the faculty of not paying service charges emanates from the non-affiliation, but it is not a right by itself, and as it is only accessory and circumstantial to the non-affiliation, it can be retroactively altered by a new law. For that reason, I believe that the retroactive application of Act No. 96 does not affect any acquired right of the employees that opted not to affiliate prior to its effectiveness under the previous law.

In the case of record, we also must take into consideration the substance of the public interest that promotes the amendment of Act No. 45, which the majority opinion rules out in its interpretation of the law. Act No. 96 sought to rectify the incongruencies of Act No. 45 that allowed non-affiliated employees to enjoy for free the benefits and mechanisms provided in the collective agreement bargained by the workers organization with the employer. Agreeing to the request of the petitioner organizations, which is precisely what the majority of the Court does, entails recognizing certain group of employees a right to benefit for free from the services that the certified union provides in the collective bargaining and in the administration of the collective bargaining agreement.

The foregoing leads me to conclude that the Court of Appeals did not err when deciding that the deductions of the charges for services provided made by the Department of Education to the non-affiliated employees from the effectiveness of **\*669** Act No. 96 are valid and provide that such agency can continue making them. All the employees that are not affiliated to the workers organization certified as exclusive representative, without distinction of when they notified their interest of being excluded from the representation, must pay service charges, as provided in Act No. 96. Also, not paying service charges is not an acquired right that must be preserved upon the effectiveness of that law.

V

Due to the foregoing, I dissent from the decision made by this Court in the case of record. I would have confirmed the appealed judgment, to allow the uniform and reasonable collection of a services charge that a union provides in collective bargaining. By issuing the opinion today, this Court has negatively affected the unions that serve the interest of public employees of the central government of Puerto Rico. Instead of strengthening the unions of these employees, what the majority opinion does is to divide the support that the collective bargaining efforts can receive for the improvement of the working conditions of the public employees.

In that sense, the result that the majority opinion produces is the division of an appropriate unit in three kinds of members. First, we have the employees affiliated to the exclusive representative certified by the Commission that pay fees and participate in union activities and in the process of collective bargaining. On the other hand, there are the public employees that do not want to be affiliated to the union or participate in its activities, but as they benefit from the results of the collective bargaining they pay a charge, less than that of the union fee, for the services offered by the union in the preparation and administration of the collective bargaining agreement. And lastly, we have a third category of public employees **\*670** members of the appropriate unit, who enjoy all the benefits obtained in the collective bargaining and for the union actions without having to pay any type of charge for this service. These employees, with the authorization of the majority of this Court, are authorized to benefit for free for posterity from the effort of the union while the other two groups of employees reasonably pay for the services that are offered in the improvement of their work conditions and terms.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

Today this Court has perpetuated the confusing and disarticulate scenario of the union activity of public employees in Puerto Rico that Act No. 45 attempted to correct in 1998. For all these reasons, and much to my dismay, I am forced to issue these statements in dissent.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

**Footnotes**

[1] Since 1999 the Federación de Maestros is the workers organization certified by the Labor Relations of Public Service Commission as exclusive representative of the appropriate unit of the teachers of the Department of Education.

[2] "*Section 4.2 Right to not affiliate*
"Those employees that form part of an appropriate unit for collective bargaining purposes duly certified by the Commission that do not want to affiliate or be represented by the duly certified worker organization may ask to be excluded from it. This right shall not apply once they are members of the union. *Those employees shall not pay service charges to the unio*n. The employees not affiliated to the workers organization will follow the provisions of the collective bargaining agreement as to the procedures to see complaints, grievances, arbitration, and the provisions of the collective bargaining agreement regarding the salaries, marginal benefits and work terms and conditions shall be applicable for their benefit. The closed shop and union shop shall be forbidden." Sec. 4.2 of Act No. 45 (3 L.P.R.A. sec. 1451c (ed. 2000)).

[3] In the case *Consejo Titulares v. Williams Hospitality*, 168 D.P.R. 101 (2006) we decided that the new Buildings Law, Act No. 103 of April 5, 2003, must be applied retroactively. It must be noted that in that case, the text of the law itself had a provision that the law would "come into effect (90) days after its approval *and its provisions will regulate every property submitted to the Horizontal Property regime, at any time that it was submitted to that regime"*. (Emphasis provided) Art. 44 of Act No. 103 (2003 (Part 1) Laws of Puerto Rico 410).

[1] It must also be emphasized that Act No. 96 of August 7, 2001 amended the definition of *service charge* contained in Act No. 45 of February 25, 1998 to read, in pertinent part, as follows:
"(g) *Service Charge*-payment made to the exclusive representative by employees of the contracting unit that *have opted* for the non-affiliation to the union of their agency". (Emphasis provided) 3 L.P.R.A. sec. 1451a(g).
In this provision the legislator was inclined for the use of the passive participle of the verb "opt", which gives certain temporal ambiguity to what is established there, in addition to giving it a more generic and continuous dimension.

[2] This section read in its totality:
"Those employees that form part of an appropriate unit for purposes of collective bargaining duly certified by the Commission, that do not want to affiliate or be represented by the union duly certified, may request to be excluded from it. This right will not apply once they are members of the workers organization. *These employees will not pay service charges to the workers organization.* The employees not affiliated to the workers organization will follow the provisions of the collective bargaining agreement as to the procedures to see complaints, grievances and arbitration, and the provisions of the collective bargaining agreement regarding salaries, marginal benefits and work terms and conditions shall be applicable to them for their benefit. Closed shop and union shop shall be forbidden." (emphasis provided.) 3 L.P.R.A. sec. 1451c (ed. 2000).

[3] The group of rights and legal relations that is necessarily derived from the owner and conforms its sphere of legal action, which content the legal system provides unity for being subject to a unitary regime of power and responsibility can be called patrimony. L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, 5ta ed., Madrid, Ed. Civitas, 1996, Vol. I, pg. 39; R. Badenes Gasset, *Conceptos fundamentales del Derecho: las relaciones jurídicas patrimoniales*, 7th ed., Barcelona-México, Marcombo Boixareu eds., 1987, pgs. 55–56. This group also includes rights and obligations belonging to the individual and that are susceptible of pecuniary value. *Vda. de Delgado v. Boston Ins. Co.*, 101 D.P.R. 598, 606 (1973). Also, some treatise writers state that, for purposes of acquired rights, the patrimony is the group of precepts based in the deepest of the popular formation that provokes the rejection of those laws that affect without justified cause situations previously recognized by the legal system. E. Vázquez Bote, *Derecho Privado Puertorriqueño*, Orford-San Juan, Equity Publishing Co., 1992, T. II, pg. 438.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640 (2007)
2007 TSPR 123

---

[4] It has been understood that the acquired rights originate "from the conjunction of an existing legal norm (abstract situation of law) and the execution of a fact foreseen by it (concrete situation); but that, because of the importance of the right from the social interest point of view, it has received a lasting life from the law that generated it". R. Noguera Barreneche, *De la no retroactividad de las leyes civiles*, 3er ed., Santa Fe de Bogota, Fondo de Publicaciones Institución Universitaria Sergio Arboleda, 1995, pgs. 73-74.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.