**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　　　　　　　　Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY'S OBJECTION TO THE INCLUSION OF ACTS 80, 81 AND 82 ON EXHIBIT C TO THE REVISED PROPOSED ORDER AND JUDGMENT CONFIRMING MODIFIED EIGHTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE <u>COMMONWEALTH OF PUERTO RICO, ET AL.</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 847), (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747), and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

# TABLE OF CONTENTS

                                                                                             **Page**

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND .............................................................................................................................. 5

       A.      Overview of the August 2020 Acts............................................................................ 5

              1.      Act 80: The Act to Establish an Incentivized Retirement Program............................................................................................ 5

              2.      Act 81: The Act to Provide for a Dignified Retirement................ 6

              3.      Act 82: The Act to Credit Teachers' Unused Leave ..................... 6

       B.      The PROMESA Section 204(a) Certification Process and the August 2020 Acts' Path to Implementation. .............................................. 7

       C.      Board Adds New Laws to Preempted Statutes List in the Final Days of the Confirmation Hearing. ........................................................... 10

OBJECTION..................................................................................................................................... 11

     I.      THE BOARD MUST COMPLY WITH THE PROMESA SECTION 204(A) PROCESS BEFORE IT CAN INVALIDATE NEWLY ENACTED PUERTO RICO LAWS. ................................................................. 11

     II.     THE FINAL CONFIRMATION ORDER MUST CLARIFY THAT ANY ALLEGEDLY PREEMPTED STATUTES CAN ONLY BE INVALIDATED AFTER NOTICE AND AN OPPORTUNITY TO BE HEARD. ......................................................................................................... 14

CONCLUSION................................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gallardo Olivares, et al. v. Machargo Maldonado, et al.*,
   Case No. SJ2021CV01719 (San Juan Sup. Ct., Mar. 17, 2021) .............................................. 9

*In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   583 B.R. 626 (D.P.R. 2017) .................................................................................................. 2, 3

*Olivencia Santana, et al. v. Estado Libre Asociado de Puerto Rico, et al.*,
   Case No. SJ2021CV00365 (San Juan Sup. Ct., Apr. 27, 2021) ............................................. 9

*Pabon Bosques, et al. v. Pierluisi, et al.*,
   Case No. SJ2021CV01112 (San Juan Sup. Ct., Feb. 22, 2021) .............................................. 9

*The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Pierluisi Urrutia (In re the
   Fin. Oversight & Mgmt. Bd. for Puerto Rico)*,
   Adv. Proc. No. 21-00072-LTS, 2021 WL 4768715 (D.P.R. Oct. 13, 2021) ......................... 15

*The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re the
   Fin. Oversight & Mgmt. Bd. for Puerto Rico)*,
   403 F.Supp.3d 1 (D.P.R. 2019) ....................................................................................... 13, 14

*The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re the
   Fin. Oversight & Mgmt. Bd. for Puerto Rico)*,
   616 B.R. 238 6 (D.P.R. 2020) .......................................................................................... 12, 14

*Vázquez Garced v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the
   Fin. Oversight & Mgmt. Bd. for Puerto Rico)*,
   511 F.Supp.3d 90 (D.P.R. 2020) ........................................................................................... 14

**Statutes**

48 U.S.C. § 2144(a)(1) .................................................................................................................. 12

48 U.S.C. § 2144(a)(2)(A) ............................................................................................................ 12

48 U.S.C. § 2144(a)(2)(B) ............................................................................................................ 12

48 U.S.C. § 2144(a)(2)(C) ............................................................................................................ 12

48 U.S.C. § 2144(a)(4)(A) ............................................................................................................ 13

48 U.S.C. § 2144(a)(5) .................................................................................................................. 14

48 U.S.C. § 2163 ............................................................................................................................. 4

P.R. 80-2020 § 3 ............................................................................................................................. 5

P.R. 80-2020 § 7 ............................................................................................................................. 6

P.R. 81-2020 ................................................................................................................................... 6

P.R. 81-2020 § 2 ............................................................................................................................. 6

P.R. 81-2020 § 2(v) ........................................................................................................................ 6

P.R. 82-2020 ................................................................................................................................... 7

# TABLE OF AUTHORITIES
(continued)

**Page**

P.R. 82-2020 § 2.11 .................................................................................................................. 7

PROMESA § 204(a)(1) ............................................................................................................ 12

PROMESA § 204(a)(2)(A) ....................................................................................................... 12

PROMESA § 204(a)(2)(B) ....................................................................................................... 12

PROMESA § 204(a)(2)(C) ....................................................................................................... 12

PROMESA § 204(a)(4)(A) ....................................................................................................... 13

PROMESA § 204(a)(5) ............................................................................................................. 14

PROMESA § 303 ....................................................................................................................... 4

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), through undersigned counsel, hereby submits this objection to the Board's proposal to amend the *Revised Proposed Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, as filed on November 12, 2021 [ECF No. 19188] (the "Proposed Confirmation Order") to add Act 80-2020 of August 3, 2020 ("Act 80"), Act 81-2020 of August 3, 2020 ("Act 81"), and Act 82-2020 of August 3, 2020 ("Act 82" and, collectively with Act 80 and Act 81, the "August 2020 Acts") to the list of Puerto Rico laws the Oversight Board[2] seeks to preempt (the "Preempted Statutes List"),[3] and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Over the last several days, the Oversight Board has once again demonstrated its belief that PROMESA empowers it to run roughshod over the powers of the duly elected Government of Puerto Rico and the rights of its people. On the cusp of concluding the Commonwealth's plan confirmation hearing, the Oversight Board announced that it planned to amend the Proposed Confirmation Order to add the August 2020 Acts to the Preempted Statutes List.[4] The Board announced this without providing the Government or any other party in interest notice (including the public sector employees that may have rights under such Acts), and without establishing a legal or evidentiary basis for such preemption. They also did so without complying

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, filed on November 7, 2021 [ECF No. 19117] (the "Plan"), except: (i) "Government" means the duly elected government of the Commonwealth of Puerto Rico.

[3] The Preempted Statutes List appears at Exhibit C of the Proposed Confirmation Order.

[4] *See* Nov. 17, 2021 Hearing Tr. at 93:23–94:3.

1

with Section 204 of PROMESA, Section 108 of PROMESA, or this Court's precedent, all of which specifically dictate the process the Board must follow when seeking to invalidate newly enacted Commonwealth laws.

2. This is not new behavior from the Board. But it is particularly disturbing now when, after a grueling and expensive four-and-a-half year Title III process, nearly all key parties have coalesced around a Plan on the precipice of confirmation that allows for Puerto Rico's bankruptcy exit and future prosperity. Presumably emboldened by the successful momentum behind the Plan, the Board seems to think it can introduce its wish list of aggressive provisions in the Proposed Confirmation Order without consequence. By adding the August 2020 Acts to the Preempted Statutes List at the eleventh hour, the Board is short-circuiting PROMESA's carefully designed process for invalidating newly enacted laws—a process that has been employed multiple times before this Court—under the guise of preemption so that it can strike down any law it chooses without evidentiary support or an opportunity for other parties to object. If the Board's theory of preemption prevails in this manner, then the Board would have the unilateral power of a "control" board rather than the more limited powers PROMESA actually grants it as an "oversight" board. As this Court clearly established at the beginning of these Title III cases, the difference between a "control" board and "oversight" board is significant, especially with respect to newly enacted laws that an "oversight" board cannot make "null and void unilaterally." *In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 583 B.R. 626, 633 (D.P.R. 2017). The inclusion of the August 2020 Acts on the Preempted Statutes List does exactly that: it operates to "control" Puerto Rico law by unilaterally invalidating the August 2020 Acts without satisfying the procedural and evidentiary requirements of Section 204. Where the Board has overreached beyond the scope of its "oversight" powers into improper "control" powers, this Court has snuffed out the Board's

2

inappropriate actions. It should do the same here.

3. The proper process for invalidating new Puerto Rico laws is set forth under Section 204 of PROMESA. Under that section, if the Governor has certified a law as "not significantly inconsistent" with the fiscal plan and the Board is not satisfied with that conclusion, the Board can seek a court order to nullify such law. But here, the Board did not commence an adversary proceeding to invalidate the August 2020 Acts, nor did it include the August 2020 Acts on the Preempted Statutes List in any of the first nine iterations of the Plan. Instead, the Board has engaged in a year-long dialogue with the Government to implement the August 2020 Acts in a fiscally responsible manner. Now, at the last minute, the Board seeks to bypass the Section 204 process entirely, and apparently invalidate the August 2020 Acts wholesale and cut-off the right of the Government to access the judicial system to defend the Acts under the standards that this Court has articulated in past proceedings. This is wholly inappropriate—especially given that the August 2020 Acts include provisions that are essential to retaining police officers critical to maintaining public safety.

4. Moreover, the Board should not be able to use Title III to take away rights reserved to the Government under PROMESA Title I and Title II, especially where there are specific guardrails under such Titles that preserve PROMESA's unique balance of power between the Board and the Government. *See In re The Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 583 B.R. 626, 634 (D.P.R. 2017) ("Congress created a PROMESA Oversight Board with significant leverage in the form of guidance, gatekeeping, and enabling powers that would in essence provide guardrails for the territorial government on its journey to fiscal credibility and responsibility," but "Congress did not grant the FOMB the power to supplant, bypass, or replace the Commonwealth's elected leaders and their appointees . . . ."). Particularly at this late stage, where the Board has not

3

laid any predicate to use the Title III process to invalidate the August 2020 Acts, the Proposed Confirmation Order should not be used to do the work of Title II. And the fact that a plan of adjustment must be consistent with a certified fiscal plan certainly does not give the Board license to disregard the Government's sovereign powers, which were duly preserved by Congress. *See* PROMESA § 303; 48 U.S.C. § 2163.

5. In addition, the last-minute additions to the Preempted Statues List is improper and not reflective of the cooperation demonstrated by the Government in enacting Act 53-2021, which provides that the statutes listed on the exhibit to the Plan (defined in Act 53 as the Plan that is confirmed) are preempted. *See* Art. 604. This exhibit was prepared and presented to the Legislature well before the August 2020 Acts were added. The Government approved the exhibit to head off any arguments that the Government acquiesced to open-ended preemption and avoid this precise scenario.

6. Moreover, the inclusion of these post-PROMESA statutes to the Preempted Statutes List makes tangible a danger that has always been inherent in the Board's broad and unspecified theory of preemption. The Board requests that "all laws (*or such portions thereof*) of the Commonwealth of Puerto Rico" that are discharged under the Plan or listed on the Preempted Statues List be deemed preempted. *See* Proposed Confirmation Order ¶ 3(B). This vague theory of preemption is unworkable with respect to the August 2020 Acts. To demonstrate, assume the August 2020 Acts were properly preempted by the Plan—which they should not be—what exactly is preempted? The entire statutes? Portions of them? How does the Government know what is valid law and what is not? The Board's theory of preemption as applied here leads to more questions than answers, and it should not be countenanced with respect to these last minute additions.

4

7. Given the Board's assertions that the Plan may implicitly preempt other laws not already listed on the Preemption Statutes List (including the August 2020 Acts) or portions of such laws, the final Confirmation Order must provide clarity by providing that any preemption claim must be on notice with an opportunity to be heard; not immediately effective simply because the Board says a law is preempted at some future date.

## BACKGROUND

**A.  Overview of the August 2020 Acts.**

8. On August 3, 2020, the Government enacted the August 2020 Acts, which modify certain essential works' public sector pension benefits. The August 2020 Acts protect government retirees (among the most vulnerable in Puerto Rico's society), while providing significant benefits to the Government of Puerto Rico.

### *1.  Act 80: The Act to Establish an Incentivized Retirement Program*

9. Long-term government employees provided necessary and essential government services with the sole expectation of receiving a dignified pension upon retiring. These employees worked for the government for fifteen or more years, contributed to the retirement system, and expected to receive greater benefits than those offered under the current "PayGo" system implemented through Act 106-2017. *See* Act 80 § 3; Statement of Motives at 3–4. Act 80 rectifies eligible employees' pension expectations, and assists the Government in managing its workforce by incentivizing early retirement.

10. Specifically, Act 80 allows Government employees that began their public service when Act 447-1951 or Act 1-1990 were in place to retire early with greater benefits than those currently in place. Among other things, Act 80 provides eligible employees with (i) a pension equal to 50% of their highest salary during their last three prior to retirement; (ii) a monthly employer contribution of $100 to the health insurance plan of their choosing until they reach age

5

62, and (iii) payment for unused sick leave and vacation time, subject to statutory caps. *See id.* § 7. Act 80 not only does right by faithful government employees, but also significantly reduces government payroll expenses, as detailed below.

### 2. Act 81: The Act to Provide for a Dignified Retirement

11. Act 81 ensures a dignified retirement for Puerto Rico's police officers, firefighters, and correctional officers. When these individuals began serving the public, they were promised a pension equal to 75% of their salaries upon turning 55 years old, provided they served for 30 years. *See* Act 81, Statement of Motives at 1–3. Over the years, police officers, firefighters, and correctional officers saw their pension benefits decrease to 30% of their salary upon reaching retirement age. *See id.*, Statement of Motives at 3.

12. To address these inequities, Act 81-2020 allows police officers, firefighters, and correctional officers that have worked for at 30 years the option to retire: (i) at 55 with a pension equal to 50% of their salary at retirement; or (ii) at 58 with a pension equal to 55% of their salary at retirement. *See id.* § 2.[5] Moreover, Act 81-2020 provides retirees with a lifetime monthly employer contribution of $100 to the health insurance plan of their choosing. *See id.* § 2(v); Statement of Motives at 4.

### 3. Act 82: The Act to Credit Teachers' Unused Leave

13. Pension benefits reductions disproportionally affects Puerto Rico's teachers. Given their low salaries, any additional reduction in pension benefits could render teacher-retirees unable to pay for basic life necessities, thereby increasing the future cost of Puerto Rico's welfare programs. Act 26-2017, as amended, implemented several measures that affected teachers who were close to retiring, such as eliminating payment on account of unused accrued sick leave in

---

[5] The percentages are reduced if the individual began their service after 1990.

6

excess of statutory limits. *See* Act 82, Statement of Motives at 1. In order to remedy this benefit reduction and avoid incremental welfare program costs, Act 82 allows teachers to have their unused sick leave and vacation time credited as time worked for retirement age purposes. *See id.* § 2.11. Such benefit is fair, and specifically does right by teachers who are close to retirement age and forfeited years of unused accrued benefits.

### B. The PROMESA Section 204(a) Certification Process and the August 2020 Acts' Path to Implementation.

14. Consistent with its duties under PROMESA, the Government submitted to the Oversight Board formal section 204(a) certifications (collectively, the "204(a) Certifications") regarding the August 2020 Acts' consistency with the Commonwealth Fiscal Plan.[6] Each 204(a) Certification concluded that the August 2020 Acts: (i) would have no effect on revenues; (ii) decrease, or have no effect on, expenditures; and (iii) are not significantly inconsistent with the Fiscal Plan. *See* 204(a) Certifications. The Act 80 and Act 81 Certifications also provided actuarial reports supporting the Government's aggregate savings to Government expenditures.[7] These concluded that the August 2020 Acts would result in billions of dollars of savings in Commonwealth payroll expenditures over a 30–40 year period.[8]

15. Upon receiving the 204(a) Certifications, the Oversight Board notified the

---

[6] The 204(a) Certifications include: (i) the *Act 80-2020 Certificate of New Law Pursuant to 48 U.S.C. § 2144(2)(B)*, with the original August 19, 2020 submission attached hereto as **Exhibit A** and its subsequent supplement as **Exhibit B** (the "Act 80 Certification"); (ii) the *Act 81-2020 Certificate of New Law Pursuant to 48 U.S.C. § 2144(2)(B)*, attached hereto as **Exhibit C** (the "Act 81 Certification"); and (iii) the *Act 82-2020 Certificate of New Law Pursuant to 48 U.S.C. § 2144(2)(B)*, attached hereto as **Exhibit D** (the "Act 82 Certification").

[7] *See* Aug. 28, 2020 Letter from N. Jaresko to O. Marrero (the "August 2021 Letter"), at 1. A copy of the Board's August 2021 Letter is attached hereto as **Exhibit E**.

[8] *See* Oct. 28, 2020 Letter from O. Marrero to N. Jaresko (the "October 28, 2020 Letter"), at 1. A copy of AAFAF's October 28, 2020 Letter is attached hereto as **Exhibit I**.

7

Government of certain alleged deficiencies, and indicated it would conduct its own analysis as to the August 2020 Acts' consistency with the Fiscal Plan. *See* August 2020 Letter, at 2–3. Nevertheless, the Oversight Board indicated it was "prepared to cooperate with the Government to examine more closely and understand more fully the impact of [the Retirement] Acts on the Fiscal Plan and the Commonwealth's finances," and requested additional information. *Id.* After numerous additional letters were exchanged between AAFAF and the Board over the next three months[9]—through which AAFAF espoused the August 2020 Acts merits and complied with the Oversight Board's information requests, and the Oversight Board repeatedly opposed the August 2020 Acts' implementation—on November 20, 2020, the Government agreed not to implement the August 2020 Acts until it reached an agreement with the Oversight Board on their consistency with the Fiscal Plan.[10]

16. On December 15, 2020, AAFAF sent a letter notifying the Board that ERS and OMB issued a second amendment to Circular Letter 2020-01, which authorized the phased implementation of Act 80 to achieve that law's projected savings. *See* December 15, 2020 Letter, at 1. The Board responded on December 22, 2020, acknowledging that "the Government is proceeding with the first two phases of Act 80's conditional implementation to evaluate whether the Act will generate savings over and above the savings required under the Commonwealth's certified Fiscal Plan, or at least be cost neutral to the certified Fiscal Plan." December 22, 2020 Letter, at 1. Although the Board reiterated its own conclusion that "each of the August 2020 Acts

---

[9] *See* Sept. 21, 2020 Letter from N. Jaresko to O. Marrero, attached hereto as **Exhibit F**; Oct. 15, 2020 Letter from O. Marrero to N. Jaresko, attached hereto as **Exhibit G**; Oct. 21, 2020 Letter from N. Jaresko to O. Marrero, attached hereto as **Exhibit H**; October 28, 2020 Letter; and Nov. 9, 2020 Letter from N. Jaresko to O. Marrero, attached hereto as **Exhibit J**.

[10] *See* Dec. 15, 2020 Letter from O. Marrero to N. Jaresko (the "December 15, 2020 Letter"), at 1, attached hereto as **Exhibit K**; Dec. 22, 2020 Letter from N. Jaresko to O. Marrero (the "December 22, 2020 Letter"), at 1, attached hereto as **Exhibit L**.

8

is significantly inconsistent with the certified Fiscal Plan," the Board expressed no issue with the phased implementation of Act 80 to the extent it would reduce pension costs. *Id.*

17. Public sentiment in favor of the August 2020 Acts' implementation is evident. Over the last year, several potential Act 80 and Act 81 beneficiaries filed three separate lawsuits requesting declaratory judgments and writs of mandamus for the Government to enforce those laws. *See Pabon Bosques, et al. v. Pierluisi, et al.*, Case No. SJ2021CV01112 (San Juan Sup. Ct., Feb. 22, 2021); *Gallardo Olivares, et al. v. Machargo Maldonado, et al.*, Case No. SJ2021CV01719 (San Juan Sup. Ct., Mar. 17, 2021); *Olivencia Santana, et al. v. Estado Libre Asociado de Puerto Rico, et al.*, Case No. SJ2021CV00365 (San Juan Sup. Ct., Apr. 27, 2021). These lawsuits involve a multitude of plaintiffs, all of whom express the urgent need for the August 2020 Acts' implementation. However, each of these actions have been stayed by operation of the automatic stay effective as of the Commonwealth Petition Date pursuant to Bankruptcy Code section 362, which is applicable to these Title III Cases under PROMESA section 301(a).

18. Cognizant of the August 2020 Acts' benefits, on August 30, 2021, the Puerto Rico Senate approved Senate Joint Resolution 171, which contemplates the implementation of the first stage of the incentivized retirement program created under Act 80.[11] The House approved it on November 11, 2021. The Oversight Board took no action and made no statements regarding Senate Joint Resolution 171 for nearly three months since it was first introduced and approved by the Senate, and never mentioned that it would seek to invalidate or preempt the August 2020 Acts' implementation until the final days of the Plan's confirmation hearing.

19. On November 16, 2021, the Oversight Board reasserted its position as to Act 80's

---

[11] *See* November 16, 2021 Letter from N. Jaresko to Hon. P. Pierluisi (the "November 2021 Letter"), at 1–3. A copy of the November 2021 Letter is attached hereto as **Exhibit M**.

9

inconsistency with the Fiscal Plan. *See* November 2021 Letter, at 1–3. Importantly, the Oversight Board recognized that if Governor Pierluisi signs Senate Joint Resolution 171 into law, the Oversight Board has the right to oppose implementation under PROMESA sections 104(k), 108(a), and 204, yet omitted any express right to oppose implementation through preemption under the Plan. *See id.*

### C. Board Adds New Laws to Preempted Statutes List in the Final Days of the Confirmation Hearing.

20. The Proposed Confirmation Order provides for the broad preemption of Puerto Rico laws that are discharged by the Plan. Specifically, the Confirmation Order provides the following:

> Confirmation of the Plan constitutes a judicial determination, pursuant to Section 4 of PROMESA, that all laws, rules, and regulations giving rise to obligations of the Debtors discharged by the Plan and this Order pursuant to PROMESA are preempted by PROMESA and such discharge shall prevail over any general or specific provisions of territory laws, rules, and regulations. Pursuant to PROMESA Section 4, to the extent not previously ruled preempted pursuant to an order of the Title III Court, all laws (or such portions thereof) of the Commonwealth of Puerto Rico, other than budgets certified by the Oversight Board, inconsistent with PROMESA, have been preempted. Such preempted laws include, without limitation, laws enacted prior to June 30, 2016, that provide for transfers or other appropriations after the enactment of PROMESA, including transfers from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose, and such laws shall not be enforceable for any purpose, *as well as all laws enacted from and after the commencement of the Title III Cases to the extent inconsistent with the transactions contemplated by the Plan*.

Proposed Confirmation Order ¶ 3(B) (emphasis added).

21. The Proposed Confirmation Order further provides that the statutes identified on the Preempted Statutes List, are among the Puerto Rico laws to be preempted under the Plan:

> Without in any way limiting the foregoing, (a) the Commonwealth

10

>   laws preempted by PROMESA include, without limitation, those listed on Exhibit C hereto and (b) all litigation in which any Government Party is a defendant, over whether Commonwealth law listed on Exhibit C hereto is preempted by PROMESA shall be dismissed, with prejudice, as of the Effective Date and the parties thereto shall provide the Oversight Board prompt notice of such dismissal.

Proposed Confirmation Order ¶ 3(B).

22. On November 17, 2021, counsel to the Oversight Board announced that it intended to file a revised Proposed Confirmation Order to add each of the August 2020 Acts to the Preempted Statutes List. There is no evidentiary basis in the record regarding the preemption of the August 2020 Acts.

**OBJECTION**

**I. THE BOARD MUST COMPLY WITH THE PROMESA SECTION 204(A) PROCESS BEFORE IT CAN INVALIDATE NEWLY ENACTED PUERTO RICO LAWS.**

23. PROMESA section 204(a) "establishes a sequential process for the submission of legislative acts to the Oversight Board" for review. *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)* ("Act 29 II"), 616 B.R. 238, 246 (D.P.R. 2020). That process applies to all laws enacted "during any fiscal year in which the Oversight Board is in operation." PROMESA § 204(a)(1); 48 U.S.C. § 2144(a)(1). It requires at the outset that the Governor provide, within seven business days of a new law's enactment, (i) a formal estimate of the law's impact on expenditures and revenues, *see* PROMESA § 204(a)(2)(A); 48 U.S.C. § 2144(a)(2)(A); and (ii) a certification that the law either "is not significantly inconsistent" or "is significantly inconsistent" with the applicable Board-certified fiscal plan. PROMESA § 204(a)(2)(B)–(C); 48 U.S.C. § 2144(a)(2)(B)–(C). AAFAF did this for the each of the August 2020 Acts by submitting all three 204(a) Certifications on August 19, 2020. *See* August 2020 Letter, at 1. The 204(a) Certifications included both a cost estimate and a

11

certification of "not significantly inconsistent" with the 2021 Fiscal Plan. *See* 204(a) Certifications.

24. Under these circumstances (where the Government certifies that a law is "not significantly inconsistent" with the fiscal plan), the next step in the Section 204(a) process allows the Board to make a "challenge to the completeness or accuracy of a certification." *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)* ("Act 29 I"), 403 F.Supp.3d 1, 13 (D.P.R. 2019). If the Board determines that either the Government's cost estimate or "not significantly inconsistent" determination are insufficient, then the Board is required to send a notification to the Government directing it to "provide the missing estimate or certification (as the case may be), in accordance with such procedures as the Oversight Board may establish." PROMESA § 204(a)(4)(A); 48 U.S.C. § 2144(a)(4)(A); *see also Act 29 I*, 403 F.Supp.3d at 14 (finding that "[i]n the absence of information concerning the fiscal effect of that aspect of [a challenged law]," the Oversight Board may "properly invoke[] Section 204(a)(3)(A) and (B) and Section 204(a)(4)(A) of PROMESA to direct the Governor to supplement the formal estimate and submit an amended certificate consistent with that estimate"). The Board did that here. The Board sent its August 2021 Letter notifying the Government that it (i) "initiated its own analysis of the Acts," August 2021 Letter, at 2; (ii) requested additional information to better determine the impact on revenues and expenditures, *see id.* at 2–3; and (iii) "advised that the Governor should not enforce these Acts unless and until such time as the Governor has provided appropriate formal estimates and the Oversight Board determines the Acts do not violate PROMESA." *Id.* at 4. Over the course of the following four months, AAFAF and the Board exchanged at least seven formal letters (*see supra* at n. 7–8) that included additional information and analysis on the August 2020 Acts' financial

12

impact and involved discussing the parameters for their partial implementation.

25. But the Section 204(a) process does not end with the Board's notification regarding the sufficiency of the Section 204(a) certification. It also provides a process for a situation in which the Governor has certified that a law is "not significantly inconsistent" with the fiscal plan and the Board is not satisfied with the Government's efforts to explain its conclusions. In that case, the Board may take additional actions to ensure that the new law will not adversely affect compliance with the fiscal plan, "including preventing the enforcement or application of the law." PROMESA § 204(a)(5); 48 U.S.C. § 2144(a)(5). And since only a court of competent jurisdiction can nullify a law, the Board must seek a court order doing so. *See Act 29 I*, 403 F.Supp.3d at 13 ("Congress did not deprive the Court of jurisdiction to consider challenges to a certification by the Governor or a territorial agency."). The Board is well aware of its power to seek such an order, as it has used it to file multiple lawsuits seeking to nullify legislation with which it disagreed. *See e.g., Act 29 II*, 616 B.R. 238, 245 (D.P.R. 2020) (initiating a lawsuit to invalidate Act 29-2019); *Vázquez Garced v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 511 F.Supp.3d 90, 128 (D.P.R. 2020) (asserting counterclaims to invalidate Act 82-2019, Act 138-2019, Act 176-2019, Act 181-2019, and Act 47-2020); *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Pierluisi Urrutia (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, Adv. Proc. No. 21-00072-LTS, 2021 WL 4768715, at *1 (D.P.R. Oct. 13, 2021) (initiating a lawsuit to invalidate Act 7-2021).

26. The Board has never exercised its power to invalidate the August 2020 Acts. Instead, it has engaged with the Government (both formally and informally) to determine if the August 2020 Acts can be implemented in a manner that results in fiscal savings, as is its prerogative. Although these laws are not being fully implemented, at least some of their cost-

saving provisions are and the Board has not objected to that limited implementation. The Board has had over a year to decide whether to commence an adversary proceeding to invalidate the August 2020 Acts (as it has done for other statutes), but it did nothing. And the Board was well-aware of the status of the August 2020 Acts when it filed many versions of the Plan before the commencement of the confirmation hearing, but it did not include the August 2020 Acts on the Preempted Statutes List, nor did it include any evidence for why the August 2020 Acts must be preempted by the Plan—evidence that would otherwise be required in an adversary proceeding pursuant to PROMESA section 204(a).

27. Notably, the August 2020 Acts are the only new Puerto Rico laws that will be on the Preempted Statutes List that were enacted after the Oversight Board was established on June 30, 2016 (other than Act 106-2017, for which the Board is arguing over the objection of the teachers' union and has put on a specific evidentiary and legal case in the context of these plan confirmation proceedings). As such, the August 2020 Acts are the only Puerto Rico laws on the Preempted Statutes List for which the Section 204(a) process applies. For the Board to now seek invalidation of the August 2020 Acts by introducing them into the Preempted Statutes List on the eve of closing arguments without explanation or evidence flouts that process. It is inappropriate and the Court should not allow it.

## II. THE FINAL CONFIRMATION ORDER MUST CLARIFY THAT ANY ALLEGEDLY PREEMPTED STATUTES CAN ONLY BE INVALIDATED AFTER NOTICE AND AN OPPORTUNITY TO BE HEARD.

28. In light of the Board's recent attempts to undermine the Section 204(a) process by adding new statutes to the Preempted Statutes list at the last moment, the final Confirmation Order should include a provision that requires any additional changes or implicit assertions of preemption to be made on notice with an opportunity to be heard. The Board should not be permitted to add any Puerto Rico laws to the Preempted Statutes List at will without expressly stating so prior to

14

entry of the final Confirmation Order. That list should be final as of the confirmation date and, if certain laws are only partially affected, it should specify which sections are preempted. Otherwise, the Plan will cause substantial confusion regarding the post-Effective Date implementation of existing law, and could be used as a "Trojan Horse" by the Board to make post-hoc preemption determinations that are outside of its statutory powers and improperly undermine the Government's non-economic statutory mandates establishing public policy that the Board disagrees with.

29. With respect to all laws enacted post-PROMESA for which PROMESA section 204(a) indisputably applies, the Government reserves all rights to argue that the Board is prohibited from adding such statutes to the Preempted Statues List or to take the position that such statutes were implicitly included. Rather, to invalidate such statutes, the Government reserves all rights to argue that such laws should be required to comply with PROMESA section 204 in all respects.

## CONCLUSION

30. For these reasons, the Court (i) should not allow the Board to include the August 2020 Acts on the Preempted Statutes List and (ii) should require clarifying language in the final Confirmation Order that any preemption assertions seeking to invalidate Puerto Rico laws that are not already specifically set forth on the Preempted Statutes List must be on notice with an opportunity to be heard.

*[Remainder of page intentionally left blank]*

15

Dated: November 20, 2021
San Juan, Puerto Rico

Respectfully submitted,

| **O'MELVENY & MYERS LLP** | **MARINI PIETRANTONI MUÑIZ LLC** |
|---|---|
| */s/ John J. Rapisardi* | */s/ Luis C. Marini-Biaggi* |
| John J. Rapisardi | Luis C. Marini-Biaggi |
| Peter Friedman | USDC No. 222301 |
| Maria J. DiConza | Carolina Velaz-Rivero |
| Matthew P. Kremer | USDC No. 300913 |
| (Admitted *Pro Hac Vice*) | 250 Ponce de León Ave., Suite 900 |
| 7 Times Square | San Juan, PR 00918 |
| New York, NY 10036 | Tel: (787) 705-2171 |
| Telephone: (212) 326-2000 | Fax: (787) 936-7494 |
| Facsimile: (212) 326-2061 | |
| Email: jrapisardi@omm.com | *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |
| pfriedman@omm.com | |
| mdiconza@omm.com | |
| mkremer@omm.com | |

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

16