# EXHIBIT E

**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO**



*José B. Carrión III*
Chair

Members
*Andrew G. Biggs*
*Carlos M. García*
*Arthur J. González*
*José R. González*
*Ana J. Matosantos*
*David A. Skeel, Jr.*

*Natalie A. Jaresko*
Executive Director

**BY ELECTRONIC MAIL**

August 28, 2020

Omar J. Marrero Díaz
Executive Director
Puerto Rico Fiscal Agency and
Financial Advisory Authority

Dear Mr. Marrero Díaz:

I am writing to you regarding Acts 80-2020, 81-2020, and 82-2020 (the "Acts"). As I have indicated in prior letters, the Oversight Board has grave concerns about the impact of these Acts on the Fiscal Plan and on the finances of the Commonwealth of Puerto Rico. These Acts create new retirement benefits for thousands of public employees at a cost to the Commonwealth that runs into the billions of dollars over the next thirty years. Given the financial impact of these Acts, the Government should have engaged earlier and more meaningfully with the Oversight Board to review the proposed laws and their impact on the Fiscal Plan and the longer-term fiscal health of the Commonwealth. In summary, the Oversight Board has determined these Acts, and the process by which they were enacted, impair or defeat PROMESA's purposes. In addition, the documentation that the Governor has provided, as required by PROMESA, is wholly inadequate. Accordingly, the Acts must not be implemented at this time.

On August 19, 2020, the Governor provided submissions containing what she contends constitute the formal estimates and certifications required by PROMESA section 204(a). These submissions were late, in violation of PROMESA section 204(a)(1). In addition, the submissions do not satisfy the requirements of PROMESA section 204(a). For Acts 80-2020 and 81-2020, the Governor submitted actuarial reports from a third party, Integrum LLC, presumably to comply with PROMESA's formal estimate requirement. However, none of these reports assess the laws themselves. Rather, the Integrum reports assess Senate Bills which, as the Governor's certifications and the Integrum reports acknowledge, were amended during the legislative process prior to the enactment of the Acts. With respect to Act 81-2020, the Governor's 204(a) certification acknowledges that the Integrum report is incomplete because it addressed only the impact on the police, and not the other safety officers covered by Act 81-2020. Both certifications

Mr. Omar Marrero Díaz
August 28, 2020
Page 2 of 4

implicitly concede the deficiency of these estimates, as they expressly "reserve[] the right" of the Government "to, if needed, update or modify the actuarial report, attached to this certification…."

As for Act 82-2020, the "formal estimate" is limited to a conclusory statement regarding the law's impact on the Retirement System Administration's "certified budget" and the observation that, because the law seeks to credit sick time balances in calculating employees' "time worked" for retirement benefit calculations (as opposed to allowing employees to cash out such time upon retirement), the law has no impact on expenditures. But that is not the formal estimate required under PROMESA. Rather, Section 204(a) demands a formal estimate "of the impact, if any, that the law will have on expenditures or revenues" without limitation to a particular agency's budget. Clearly, Act 82-2020, by adjusting the method of calculating employees' time worked in a manner that can only increase that metric and thereby expand the employee's pension benefits, impacts expenditures. The impact of such increased expenditures must be estimated – and such an estimate (formal or otherwise) is missing from the Governor's submission.

Accordingly, pursuant to Section 204(a)(3)(A), the Oversight Board notifies the Government that the Governor's submissions failed to provide the required formal estimate for any of the Acts. Further, pursuant to Section 204(a)(4)(A), the Oversight Board directs the Governor to provide the missing formal estimates for each Act no later than September 1, 2020.

The Oversight Board has initiated its own analysis of the Acts. Based on the information currently available to it, the Oversight Board estimates these Acts will increase costs in an amount that could exceed $3 billion over the next thirty years. Based on these estimates, and the defects in the Government's estimates, the Oversight Board believes that the Acts are significantly inconsistent with the Fiscal Plan, contrary to the Governor's certifications.

Nevertheless, the Oversight Board is prepared to cooperate with the Government to examine more closely and understand more fully the impact of these Acts on the Fiscal Plan and the Commonwealth's finances. Accordingly, pursuant to PROMESA section 104(c), the Oversight Board requests the following information:

Act 80-2020

a) Headcount of eligible participants for each applicable agency, organized by whether Act 1 or Act 447 governs;
b) Headcount of expected number of participants to take the retirement window for each applicable agency, including the number of employees expected to be deemed "essential" such that they receive the enhanced benefits but do not accelerate their retirement date;
c) Text of the Act provided to Integrum on which they performed the estimates included in the Governor's certification;
d) For each applicable agency, a listing of eligible participants, including gender, date of birth, current service, current salary, frozen benefits from Act 1 or Act 447, and balance of Act 3 contributions in their Act 3 hybrid account (for both the data provided to Integrum for their analysis as well as any update as of July 1, 2020); and

Mr. Omar Marrero Díaz
August 28, 2020
Page 3 of 4

    e) Social Security numbers or any alternative mapping to item (d) above that allows data to be mapped to the latest Milliman data (from July 1, 2016) provided to the Oversight Board.

Act 81-2020

    a) For each applicable agency, the headcount of eligible participants, including job classifications eligible for participation;
    b) Pay scale for eligible employees (such as police officers, firefighters, correctional officers, EMS, etc.);
    c) Text of the Act provided to Integrum on which they performed the estimates included in the Governor's certification;
    d) Because the Act 81-2020 Certification indicates that costs will be offset by reductions in rookie salaries and headcount reduction, please indicate the amount by which rookie salaries will be reduced to demonstrate offsetting costs on an individual level as well as the amount by which police headcount will be reduced to offset costs;
    e) Listing of individuals currently active and eligible to potentially receive Act 81-2020 benefits in the future, including each potential participant's gender, date of birth, current service, current salary, frozen benefits from Act 1 or Act 447, and balance of Act 3 contributions in their Act 3 hybrid account (for both the data provided to Integrum for their analysis as well as any update as of July 1, 2020);
    f) Analysis performed to confirm that the additional benefits would not put police participation in Social Security at risk; and
    g) Social Security numbers or any alternative unique identifier to item (f) above that allows data to be mapped to the latest Milliman data (from July 1, 2016) provided to the Oversight Board.

Act 82-2020

    a) Current sick leave balances for all teachers who would be potentially eligible for benefits contemplated by the Act;
    b) Formula by which new leave will be credited from sick balances (e.g., one month credit for every fifteen days of sick leave);
    c) Assumed rates of retirement under new Act, and description of how these assumptions differ from previous assumptions; and
    d) Social Security numbers or any alternative unique identifier that allows sick leave balance to be mapped to the latest Milliman data (from July 1, 2016) provided to the Oversight Board.

Please provide this information by September 1, 2020. Because this information is essential to fully understanding the impact of the Acts on revenues and expenditures, the Oversight Board expects no delay in providing this information and expects the Government to factor this information into the corrected formal estimates the Governor has been directed to provide.

Under the current circumstances, considering the deficiencies in the formal estimates provided regarding the Acts, as well as the numerous and critical outstanding questions, the Oversight Board

Mr. Omar Marrero Díaz
August 28, 2020
Page 4 of 4

has determined that implementation of these Acts would impair or defeat the purposes of PROMESA, as determined by the Oversight Board. Among other things, the implementation of laws with wide-ranging effects on the Commonwealth's pension system without a full understanding of the financial implications of such measures is the antithesis of financial responsibility.

You have already advised, by letter dated August 19, 2020, that the Acts are not being implemented. By separate correspondence, we have asked to be provided fourteen (14) days' advance notice should that decision change. However, be advised that the Governor should not enforce these Acts unless and until such time as the Governor has provided appropriate formal estimates and the Oversight Board determines the Acts do not violate PROMESA. The Oversight Board further reserves the right to take such actions as it deems necessary, consistent with PROMESA sections 108(a), 204, and 207, including seeking remedies to prevent the implementation and enforcement of the Acts and for any wrongful implementation of them.

We look forward to continuing to work together for the benefit of the people of Puerto Rico.

Sincerely,

*[signature]*

Natalie A. Jaresko

CC:    Hon. Wanda Vázquez Garced
       Hon. Thomas Rivera Schatz
       Hon. Carlos J. Méndez Núñez