# EXHIBIT J



# FINANCIAL OVERSIGHT & MANAGEMENT BOARD
## FOR PUERTO RICO

David A. Skeel, Jr.
Chair

Members
Ana J. Matosantos
Andrew G. Biggs
Justin Peterson

Natalie A. Jaresko
Executive Director

**BY ELECTRONIC MAIL**

November 9, 2020

Omar J. Marrero Díaz
Executive Director
Puerto Rico Fiscal Agency and
Financial Advisory Authority

Dear Mr. Marrero Díaz:

I am writing in response to your letter dated October 28, 2020 (attached as Attachment 1) regarding the implementation of Acts 80-2020, 81-2020, and 82-2020 (the "Acts"). The Government was not responsive to the Oversight Board's (i) direction to cease implementation of the Acts and (ii) request for specific information and a program for achieving the savings necessary to make the Acts revenue neutral.

Each of the Acts offers enhanced retirement benefits to government employees and will generate costs incremental to the Fiscal Plan,[1] as well as the applicable fiscal plans of PRASA, HTA, municipalities, and other public employers whose employees would be eligible for these enhanced benefits. No matter how many employees retire under each Act, these enhanced benefits are still incremental to the applicable fiscal plans. The Oversight Board has concluded that, together, these Acts could cost the Commonwealth and other public employers as much as $8.3 billion over the next thirty years.

Despite repeated requests, the Government has failed to show how it will pay for these costs. Your newly proposed phased approach does not answer this question and is not responsive to the Oversight Board's October 21, 2020 letter.

---

[1] References to the Fiscal Plan mean the Certified Fiscal Plan for the Commonwealth of Puerto Rico dated May 27, 2020.

Mr. Omar Marrero Díaz
November 9, 2020
Page 2 of 6

**Act 80**

The Oversight Board has determined that each retirement under Act 80 will create an incremental cost not covered by any of the applicable fiscal plans. If 100% of the eligible participants elect to retire and receive the benefits provided by Act 80, as the Government's own analysis assumes, Act 80 will cost as much as $4.2 billion over the next 30 years, with $2.2 billion of that related to Commonwealth employees and $1.4 billion for municipalities alone. The Government has stated that it will pay for these costs by eliminating the positions of those who retire under Act 80. However, the Oversight Board has serious concerns about the Government's ability to achieve these necessary offsetting savings through payroll reductions, especially given provisions under Act 80 which allow certain positions to be deemed essential and replaced, at an agency's discretion.

For example, the Commonwealth Fiscal Plan already *requires* the Government to eliminate 3,200 positions[2], so the Government cannot rely on the payroll savings generated from the first 3,200 retirements under Act 80 to generate the savings it is claiming. If all 7,400 eligible Commonwealth employees retire[3], the Government must identify $2.2 billion in additional savings, which, if achieved through payroll reductions, equates to $65 million in annual payroll reduction, indexed with inflation, over the 30-year Fiscal Plan. We estimate achieving this level of savings exclusively through payroll reductions would require the permanent elimination of an additional 1,500 positions upon retirement at the Commonwealth alone, for a total of 4700 retirees not replaced. Otherwise, the Government must identify the equivalent savings elsewhere in the budget and Fiscal Plan to generate the savings necessary to make Act 80 revenue neutral under the Commonwealth's Fiscal Plan.

Other public corporation employers with eligible employees (such as those at PRASA, HTA, CRIM, COSSEC, Ponce Muelle, AEELA, Metropistas, and the municipalities) would need to generate approximately $2.0 billion in additional savings, which equates to $60M in annual payroll reduction, indexed with inflation over the 30-year period, to pay for Act 80 benefits for their own retirees, either by permanently reducing headcount in excess of the reductions already required in their respective fiscal plans, or identifying other specific savings to ensure revenue neutrality and compliance with their fiscal plans. Under no circumstance can or should the central government pay the incremental cost on any of those entities' behalf. Please advise us if your computation of savings took into account the elimination of 3,200 positions at the Commonwealth under the Fiscal Plan and other positions required to be eliminated under the other public employers' fiscal plans regardless of Act 80, and that the elimination of these positions as a result of retirements under Act 80 would provide no savings incremental to the Commonwealth Fiscal Plan.

---

[2] These figures are based on average payroll for the covered group. Total number of positions that need to be eliminated will depend on the actual payroll of each impacted position.
[3] Commonwealth employees covered by the Fiscal Plan exclusive of those in the PRDE and Police Bureau.

Mr. Omar Marrero Díaz
November 9, 2020
Page 3 of 6

**Act 81**

The Oversight Board has determined that each retirement under Act 81 will create an incremental cost not covered by the Commonwealth's Fiscal Plan. If every eligible participant receives the benefits provided by Act 81, Act 81 will cost as much as $2.4 billion over the next 30 years. To cover these incremental costs, and to make Act 81 revenue neutral under the Fiscal Plan, the Government would need to generate the same amount in savings over the next 30 years. To achieve this level of savings would require permanently eliminating $70 million in costs through annual payroll reduction, indexed for inflation over the 30-year Fiscal Plan, or the equivalent of approximately 1,360 positions. The Fiscal Plan for the Commonwealth already *requires* the Government to eliminate 475 of these positions based on budgeted payroll. To find the savings solely in payroll, the Government would need to eliminate at least 1,835 total positions of those who retire under Act 81 to generate the savings necessary to make Act 81 revenue neutral under the certified Fiscal Plan. Otherwise, the Government will need to identify equivalent savings under the Fiscal Plan to ensure consistency and revenue neutrality.

The Oversight Board also fails to see how a phased approach to implementing Act 81 will assist in ensuring the Act is not significantly inconsistent with the Certified Fiscal Plan. Under Act 81, an applicant can retire with a higher benefit whenever they reach retirement age. Therefore, a phased implementation does not provide any enhanced clarity or ability to tailor headcount levels or find other savings based on participation in Act 81 retirement (as in Act 80), because participation will be ongoing and thus the Government will not know the total cost of the increased benefits under Act 81 on any particular timeframe. As with Act 80, every employee who retires with Act 81's benefits will create costs incremental to the Fiscal Plan. Moreover, the enhanced benefit will apply to all 8,640 participants expected to meet Act 81's eligibility requirements. As such, the Government must create a plan to cover those additional costs to achieve consistency with the Certified Fiscal Plan.

**Act 82**

Your explanation of how Act 82 will work is not clear from the law itself and it is inconsistent with ERS's internal analysis (which the Government provided). The Oversight Board's understanding is that ERS's internal service purchase mechanism would permit a TRS participant with 108 unused sick days to "purchase" 60 months of service credit and retire up to five years earlier.

Even under your new interpretation, Act 82 seems likely to create additional costs in all events. Even simply allowing teachers to retire earlier without any increase in pension benefits (which we believe is not the case given the guidance from ERS and the language of the Act), is likely to result in additional incremental costs because teachers will then receive retirement benefits for a longer period of time. At a minimum, an actuarial analysis is required to assess whether the benefits under the Act, such as a longer service period, will increase costs. To date, the Government has not provided any such analysis or estimate and has not offered any plan to offset such costs.

Mr. Omar Marrero Díaz
November 9, 2020
Page 4 of 6

Finally, as with Act 81, the Oversight Board fails to see how a phased approach to implementing Act 82 will assist in ensuring that the Act is not significantly inconsistent with the certified Fiscal Plan. A phased implementation does not provide any enhanced clarity or ability to tailor headcounts to cover the cost because Act 82's benefits will become fixed and permanent, and the effects will continue to play out over the next 20 to 30 years under current Puerto Rico law.

\* \* \*

We reiterate that the Acts must not be implemented until their true costs and means of paying for them are known and approved by the Oversight Board.

Based on your letter and the concerns set forth above, the Oversight Board specifically requires the following for each Act:

**Act 80**
1. Confirmation from the Government that it understands the payroll and headcount reductions expected to be achieved under the Fiscal Plan, or identification of additional information that would be required to attain such understanding, to be able to factor these into any future savings calculations.
2. A commitment from the Government to provide the Oversight Board with election data once Phase 1 is complete and also not to implement Phase 3, as described in your letter, unless and until the Government and the Oversight Board agree on (i) the costs of implementing Act 80 and (2) the plan necessary to make Act 80 cost neutral under the applicable fiscal plans, including for the Commonwealth, HTA, PRASA, and other subject employers.
3. An agreement from the Government that budgets for the agencies in future fiscal plans/budgets will be reduced in addition to the reductions already contemplated by the relevant fiscal plans by the payroll reductions or other identified budget reductions identified in Phase 2 of your letter to pay for the costs of the law. In light of the seeming intent to pay the enhanced benefits as part of payroll, rather than PayGo, this acknowledgement must include demonstration of a plan for tracking benefits paid and retiree status, even in the case of agency closures or mergers, to ensure that no fraudulent benefits are paid and that the costs of paying these benefits are not shifted to the General Fund.
4. A clear statement that the central government cannot and will not be able to cover the cost for the enhanced retirement benefits of municipal employees or public corporation employers as applicable (such as PRASA, HTA, CRIM, COSSEC, Ponce Muelle, AEELA, and Metropistas) that also participate in ERS.

**Act 81**
1. An implementation plan to offset Act 81's costs to which the Government can be held accountable, including a detailed analysis demonstrating that such savings are achievable over the extended timeframe, and whether any emergency services positions could be eliminated without jeopardizing essential police, firefighter, and other emergency services.

Mr. Omar Marrero Díaz
November 9, 2020
Page 5 of 6

**<u>Act 82</u>**
1. Clarification of the information in Exhibit A hereto to be able to properly calculate the potential impact of Act 82 and a corresponding amendment to the Act.
2. An updated certification under section 204(a) of PROMESA, including an actuarial analysis of the impact of the law based on the responses to Exhibit A.
3. A detailed plan to offset any costs identified in the actuarial analysis to which the Government can be held accountable.

The Oversight Board remains deeply concerned that the Government is creating uncertainty and anxiety among the public employees, particularly in light of the November 5, 2020 Human Resources Circular 20 – 48 sent to public employees. The Government must not allow retirees to leave their jobs and sign up for retirement programs that violate PROMESA, only to later lose those benefits if the Acts are invalidated, after having left their jobs. To mitigate that risk, the Government must notify all employees through a public statement that:

1. The benefits provided under the Acts are conditional and may never accrue in fact;
2. Anyone who applies for benefits may never receive the benefits promised by the Acts because each Act is at risk of non-implementation or nullification; and
3. No one should make retirement plans or career decisions based on the Acts until the Government and the Oversight Board agree on an implementation plan for each Act.

The Oversight Board remains willing to work cooperatively with the Government to analyze the Acts and explore possible implementation approaches that would make them revenue neutral under the applicable fiscal plans. Notwithstanding the foregoing, the Oversight Board believes the Acts are significantly inconsistent with the Fiscal Plan and impair and defeat the purposes of PROMESA by adding expense and jeopardizing services inconsistently with fiscal responsibility and the Fiscal Plan.

The Acts individually and together appear to be an attempt to circumvent or undermine the prior and pending freezes of pension benefits, including those required by the Fiscal Plan and the proposed plan of adjustment for the Commonwealth, by enhancing accrued benefits under plans that have been or will be frozen in various ways and by purporting to pay benefits through payroll (instead of PayGo). Please be advised that any benefits under these Acts are subject to the terms of the plan of adjustment, whether the benefits are paid through payroll or PayGo. The Oversight Board does not waive any of its rights, under PROMESA or otherwise, to bring appropriate legal action to enforce PROMESA's mandates and protect the people and the finances of the Commonwealth of Puerto Rico.

Finally, these Acts risk creating a precedent for all public employees who are not otherwise eligible for these enhanced benefits. The Oversight Board is concerned that the Acts will cause all other governmental employees not covered by these Acts to demand the same treatment, including early retirement, increased benefit payments, and sick day credit. If you believe other employees will not demand the same treatment, please explain why.

Mr. Omar Marrero Díaz
November 9, 2020
Page 6 of 6

We look forward to continuing to work together for the benefit of people of Puerto Rico.

Sincerely,

*Natalie A. Jaresko*
Natalie A. Jaresko


CC: Hon. Wanda Vázquez Garced
Hon. Thomas Rivera Schatz
Hon. Carlos "Johnny" Mendez

## Exhibit A – Additional explanations for Act 82

The following additional information is requested to clarify the Government's expectations as to how Act 82 would be implemented:

On September 25, 2020 the Government provided, in 'ERS Response to FOMB Sept. 21 Add. Retirement Acts Requests.pdf' (Section: Act 82, item: b), an explanation of a formula that would be used to credit sick balances as time worked in determining the participant's pension benefit. The methodology stated is a purchase of service. This methodology, and the specific example chosen (a participant earning sufficient service to qualify for the higher age/service benefit pension), implies that benefits will in fact potentially increase and be accelerated by the law. On October 28, 2020, however, the Government's letter to the FOMB stated "Finally, as to Act 82-2020, it is worthy to reiterate that such statute does not increase pension benefits".

As the law itself only specifies that "excess sick leave be taken into account as time worked," please clarify the Government's view of how the time worked that is credited is utilized in the determination of each of the following:
  a. eligibility for a particular benefit formula (1.8% of lifetime monthly income per year of service vs 75%/65% of pay benefit); and
  b. number of years used in 1.8% of lifetime monthly income per year of service benefit.

Furthermore, in order to provide clarity on how the law will be implemented, please fill in the following chart demonstrating how the calculation will be performed on the following sample participants. (For simplicity, assume that these participants have the same salary for all years)

|   |   | Participant A | Participant B | Participant C | Participant D |
|---|---|---|---|---|---|
| a. | Age at January 1, 2021 | 50 | 55 | 60 | 48 |
| b. | Monthly salary (for all time worked) | $2,796.67 | $2,796.67 | $2,796.67 | $2,796.67 |
| c. | Credited Service at January 1, 2021 (without regard to Act 82) | 29 years, 1 month | 24 years, 1 month | 10 years | 29 years, 1 month |
| d. | Days of sick leave | 25 | 25 | 80 | 80 |

**ASSUME NO ACT 82**

|   |   | | | | |
|---|---|---|---|---|---|
| e. | Retirement eligible at January 1, 2021? | | | | |
| f. | If eligible at January 1, 2021, what benefit is payable if participant retires at January 1, 2021? | | | | |

|   |   |   |   |   |   |
|---|---|---|---|---|---|
| g. | If not eligible at January 1, 2021, what date is the participant first eligible to retire? |   |   |   |   |
| h. | If not eligible at January 1, 2021, what benefit is payable if the participant retires at first eligibility? |   |   |   |   |

**BENEFIT WITH ACT 82**

|   |   |   |   |   |   |
|---|---|---|---|---|---|
| i. | Number of months of additional time work credited |   |   |   |   |
| j. | Credited service at January 1, 2021 |   |   |   |   |
| k. | Retirement eligible at January 1, 2021? |   |   |   |   |
| l. | If eligible at January 1, 2021, what benefit is payable if participant retires at January 1, 2021? |   |   |   |   |
| m. | If not eligible at January 1, 2021, what date is the participant first eligible to retire? |   |   |   |   |
| n. | If not eligible at January 1, 2021, what benefit is payable if the participant retires at first eligibility? |   |   |   |   |

**GOVERNMENT OF PUERTO RICO**

Puerto Rico Fiscal Agency and Financial Advisory Authority

**BY ELECTRONIC MAIL**

October 28, 2020

**Natalie Jaresko**
Executive Director
Financial Oversight and Management Board for Puerto Rico

*Re:   Acts 80-2020, 81-2020, and 82-2020 (collectively the "Retirement Acts")*

Dear Ms. Jaresko:

This responds to your October 21, 2020 letter regarding the Retirement Acts ("Letter") which includes a new request for "substantive cost-savings plans for [each of] the [Retirement] Acts" "implemented in a manner that ensures adequate essential services" for the Oversight Board to consent to implementation of the Retirement Acts.

First and foremost, your Letter includes certain erroneous statements that must be corrected. As you are aware, contrary to your assertions in the Letter and previous correspondence, the Government provided the corresponding Section 204(a) certifications, which determined, in good faith, the Retirement Acts are not significantly inconsistent with the 2020 Fiscal Plan for Puerto Rico ("Certifications"). Along with the Certifications, the Government submitted to the Oversight Board the actuarial reports commissioned by the Retirement Systems Administration to Integrum LLC, which concluded the implementation of the Retirement Acts would result in aggregate savings of billions of dollars in payroll expenditures during a period of over 30 to 40 years. Moreover, in an attempt to work collaboratively with the Oversight Board, the Government has complied with Oversight Board's subsequent requests for information regarding the Retirement Acts by providing extensive data (for 17 specific items initially and further updated requests for information and clarification regarding the same) that had to be collected across multiple Government agencies. Upon preparation of updated actuarial reports, the Government submitted supplemental certifications for each of the Retirement Acts, which still forecasted aggregate savings of billions of dollars in payroll expenditures ("Updated Actuarial Reports").

Second, as to your new request, it appears that the Oversight Board made up its mind regarding the Retirement Acts even before the Government submitted the Certifications and never intended to collaborate in good-faith with the Government in order to implement them; particularly, upon careful review of the Oversight Board's correspondence and ever-changing goalpost requests.

PO Box 42001 • San Juan, PR 00940-2001 • Telephone (787) 722-2525



2

Now, the Oversight Board contends that after its own analysis —which has not been shared with the Government— it has determined that the Retirement Acts "in the aggregate will increase the Government's costs by as much as $8.3 billion over the next 30 years". Accordingly, the Oversight Board has informed it will not consent to the implementation of the Retirement Acts until and unless the Government provides a "substantive program" by which each of the acts would not impose net costs incremental to the Fiscal Plan and that would be implemented in a manner that ensures adequate essential services. As per the Oversight Board's analysis, this could only be achieved by reductions to headcount and compensation of the Government's workforce.

In such regard, let it be absolutely clear: The Government does not concur with your statements that could be interpreted as requiring the dismissal of public employees, and hereby confirms it will **NOT** dismiss public employees in order to implement the Retirement Acts. The Updated Actuarial Reports show this is wholly unwarranted in light of the expected aggregate savings in payroll expenditures stemming from the implementation of the acts.

Notwithstanding the foregoing and in order to fully comply with your request, the Government hereby informs that it will only move forward with the implementation of Act 80-2020 in a phased approach as follows:

- FIRST PHASE: The **first phase** entails commencing and completing the process for applications of the public employee participants that qualify under Act 80-2020. Article 2(q) of Act 80-2020 establishes an election period of 45 business days, which currently expires on December 22, 2020.
- SECOND PHASE: The implementation of the first phase will enable the Government to, in a **second phase** of implementation, evaluate the applications, quantify the number of participants that took advantage of the retirement benefits as established by Act 80-2020, and confirm the expected amount of aggregate savings, taking into account the actual employees that elected the window. During the second phase, the relevant Government entities will determine if any particular agency requires an action plan to substitute any essential employees that take advantage of Act 80 and establish mobility plans, as necessary, under the Government of Puerto Rico Human Resources Administration and Transformation Act, Act No.8–2017 ("Act 8").
- THIRD PHASE: Finally, upon completion of the first and second phase, the Government will implement the **third phase**, in which the Government will establish the date of separation from service of each eligible participant in order to start receiving the program's benefits and implement the mobility plans and/or other measures required under Act 8.

With respect to Act 81-2020, it should be noted that the statutory text does not create an early retirement program. Eligible participants under Act 81-2020 will retire when they reach the retirement age established by law. In such regard, the Government is currently working on the circular letters to be issued to implement Act 81-2020 in a phased approach similar to the one described above.

3

Finally, as to Act 82-2020, it is worthy to reiterate that such statute does not increase pension benefits, as you incorrectly stated in your Letter; it merely allows some teachers to retire earlier. We also expect to implement Act 82-2020 in a phased approach as described above. Once the Government is able to move forward with the implementation of Act 82-2020, we will promptly notify you.

Should the Oversight Board have any questions regarding the foregoing, please feel free to contact me at your convenience. As always, the Government of Puerto Rico looks forward to working tirelessly *in good faith* with the Oversight Board to reach consensus on this matter for the benefit of the people of Puerto Rico.

Respectfully,

Omar J. Marrero Díaz
Executive Director