# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.* | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## NOTICE OF SUBMISSION OF DEMONSTRATIVE PRESENTATION IN CONNECTION WITH CLOSING ARGUMENT

**PLEASE TAKE NOTICE** that closing arguments in the hearing to consider confirmation of the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated November 21, 2021 (Dkt. No. 19323), will take place on November 22, 2021 at 9:30 a.m. (Atlantic Standard Time).

---

\* The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a presentation the Lawful Constitutional Debt Coalition[1] intends to use in their closing argument.

**PLEASE TAKE FURTHER NOTICE** that all documents filed in these Title III Cases are available (a) free of charge by visiting https://cases.primeclerk.com/puertorico or by calling +1 (844) 822-9231, and (b) on the Court's website at http://www.prd.uscourts.gov, subject to the procedures and fees set forth therein.

.

---

[1]   The members of the LCDC and their respective holdings are set forth in the Thirteenth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019 (Dkt. No. 19128).

DATED:  November 22, 2021

REICHARD & ESCALERA

By :

*/s/ Rafael Escalera*
**Rafael Escalera**
USDC No. 122609
escalera@reichardescalera.com

*/s/ Sylvia M. Arizmendi*
**Sylvia M. Arizmendi**
USDC-PR 210714
arizmendis@reichardescalera.com

*/s/ Carlos R. Rivera-Ortiz*
**Carlos R. Rivera-Ortiz**
USDC-PR 303409
riverac@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, Puerto Rico 00917-1913

QUINN    EMANUEL    URQUHART    &
SULLIVAN, LLP

**Susheel Kirpalani** (*pro hac vice*)
susheelkirpalani@quinnemanuel.com

**Daniel Salinas**
USDC-PR 224006
danielsalinas@quinnemanuel.com

**Eric Kay** (*pro hac vice*)
erickay@quinnemanuel.com

**Zachary Russell** (*pro hac vice*)
zacharyrussell@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1603

*Co-Counsel for the Lawful Constitutional Debt Coalition*

3

## **CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.


_____
/s/ *Carlos R. Rivera-Ortiz*
USDC-PR 303409

**<u>Exhibit A</u>**

**quinn emanuel urquhart & sullivan, llp**

# *In re Commonwealth of Puerto Rico, et al.*

**Lawful Constitutional Debt Coalition**

**Closing Presentation Slides**

Case. No. 17-03283 (LTS)

United States District Court for the District of Puerto Rico

Nov. 22, 2021

# Table of Contents

**Part I:**          **Good Faith Negotiations**

**Part II:**         **Reasonableness of PSA Fees**

**Part III:**        **Best Interests of Creditors**

2

# Good Faith Negotiations

# Jaresko Testimony

UNITED STATES DISTRICT C
FOR THE DISTRICT OF PUERT

IN RE:                                              PRO
                                                    Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,                   No. 17 BK 3283-LTS

        as representative of                        (Jointly Administered)

THE COMMONWEALTH OF PUERTO RICO,
THE EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO, AND
THE PUERTO RICO PUBLIC BUILDINGS
AUTHORITY,

        Debtors.[1]

DECLARATION OF NATALIE JARESKO IN RESPECT OF
CONFIRMATION OF SEVENTH AMENDED TITLE III JOINT P
ADJUSTMENT FOR THE COMMONWEALTH OF PUERTO RICO

I, Natalie A. Jaresko, hereby declare and state as follows:

    1.    I am the Executive Director of the Financial Oversight and Manag

Puerto Rico (the "Oversight Board"), the sole Title III representative

Commonwealth of Puerto Rico (the "Commonwealth"), the Employee Retireme

Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4)
digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico
(the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii)
Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four
Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case
No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the
Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four
Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-
4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA")
(Bankruptcy Case No. 17-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed
as Bankruptcy Case numbers due to software limitations).

Jaresko Decl. Dkt. No. 18729

29.    As described herein, following the filing of the Debtors' Title III Cases, the Oversight Board, either directly or through its advisors, engaged in extensive mediation sessions under the guidance and direction of the Mediation Team, and continued to negotiate directly with various constituencies, all in an effort to build support for the restructuring of Commonwealth

201.    As described above, I participated in and am familiar with the Oversight Board's discussions and negotiations and agreements reached with respect to the GO/PBA PSA, the PRIFA BANs Stipulation, the ERS Stipulation, the HTA/CCDA PSA, PRIFA PSA, and AFSCME PSA. In executing each of these Plan Settlement Agreements, and agreeing to their terms and conditions, the Oversight Board considered, among other things, (i) the extensive, good faith and arm's-length negotiations (led by the Mediation Team) among representatives of the Oversight Board, its consultants, and representatives of certain claim holders, (ii) the risks and expenses (and time

202.    Each of the Plan Settlement Agreements was reached following months of negotiations directed by the Mediation Team and/or other informal discussions that included party representatives, legal and financial advisors, and involved vigorous debate and discussion on both sides. I believe the negotiations leading to the Plan Settlement Agreements were conducted at arms'-length and in good faith.

# Skeel Testimony

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RIC

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO,
THE EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO, AND
THE PUERTO RICO PUBLIC BUILDINGS
AUTHORITY,

Debtors.[1]

PROMESA
Title III

No. 17 BK 3

(Jointly Adm

DECLARATION OF DAVID SKEEL
IN RESPECT OF CONFIRMATION OF PL
ADJUSTMENT FOR THE COMMONWEALTH OF PUE

I, David A. Skeel, Jr., hereby declare and state as follows:

1.    I am the Chairman of the Financial Oversight and M

Rico (the "Oversight Board" or "Board"), the sole Title III represent

of Puerto Rico (the "Commonwealth"), the Employees Retirement Sy

the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four
digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto R
(the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481);
Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last F
Digits of Federal TaxID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy C
No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of
Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last F
Digits of Federal TaxID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-
4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PB
(Bankruptcy Case No. 17-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are li
as Bankruptcy Case numbers due to software limitations).

Skeel Decl. Dkt. No. 18731

17.    As referenced above, and described generally below, following the filing of the Commonwealth, ERS, and PBA Title III Cases, the Oversight Board, either directly or through its advisors, engaged in extensive mediation sessions under the guidance and direction of the Mediation Team, led by Chief Judge Barbara J. Houser of the United States Bankruptcy Court for the Northern District of Texas, and continued to negotiate directly with various constituencies, all in an effort to build support for the restructuring of Commonwealth debt. I participated in many of the negotiation and mediation sessions on behalf of the Oversight Board. And, for those I did not attend personally, I received real-time detailed reporting of what transpired from either the Executive Director, Natalie Jaresko, the Oversight Board's advisors, or both. Those negotiations resulted in certain agreements with various stakeholders in furtherance of continued development of and additional support for the Plan. The key disputes and litigation resolved by each agreement

33.    Each of the PSAs was reached following months of negotiations directed by the Mediation Team and/or other informal discussions that included party representatives, legal and financial advisors, and involved vigorous debate and discussion on both sides. Based on my participation in the negotiations leading to the PSAs, I believe the negotiations were conducted at arms' length and in good faith.

# Zelin Testimony

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

　　as representative of

THE COMMONWEALTH OF PUERTO RICO,
THE EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO, AND
THE PUERTO RICO PUBLIC BUILDINGS
AUTHORITY,

　　　　Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

DECLARATION OF STEVEN ZELIN OF PJT PARTNERS LP ON BEH
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUER
RESPECT OF CONFIRMATION OF SEVENTH AMENDED TITLE III
OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RIC

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number
and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are
the (i) the Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK
3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing
Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal
Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy
Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees
Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy
Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric
Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of
Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy
Case No. 17-BK-5523-LTS) (Last Four Digits of Federal Tax ID 3801) (Title III case numbers
are listed as Bankruptcy Case numbers due to software limitations).

Zelin Decl. Dkt. No. 18734

13.    In my role as a senior financial advisor to the Oversight Board, I was intimately involved in the negotiations with various constituents concerning a number of the PSAs and agreements, including the GO/PBA Plan Support Agreement, ERS Stipulation, HTA/CCDA Plan Support Agreement, PRIFA Plan Support Agreement, and agreement with the UCC.  I personally participated in the vast majority of the negotiations and discussions concerning those settlements and I have read and am familiar with the terms of the settlements, each as set forth in the Plan.  In my opinion, and as described in more detail below, given my participation in the negotiations concerning each of those settlements and my professional experience negotiating many other complex restructuring transactions (many of which are noted above), the settlements reached, both individually and taken as a whole, are reasonable under the facts and circumstances of these cases.

23.    The constituencies who participated in the above-described negotiations were instrumental in the development of the GO/PBA PSA and the Second Amended Plan.  The negotiations leading to the execution of the GO/PBA PSA were at arm's length and in good faith and led to a compromise of contested positions between the parties to the GO/PBA PSA.  The GO/PBA PSA avoids the time, expense and uncertainty of continued litigation, as well as the risk of an all-or-nothing outcome for both sides, which would have the potential of thwarting the restructuring efforts.

# Reasonableness of PSA Fees

**Jaresko Testimony**

UNIT
FOR TI

IN RE:

THE FINANCIAL OVERSIGHT
MANAGEMENT BOARD FOR

as representative of

THE COMMONWEALTH OF F
THE EMPLOYEES RETIREME
THE GOVERNMENT OF THE
COMMONWEALTH OF PUER
THE PUERTO RICO PUBLIC E
AUTHORITY,

De

DECLARATION
CONFIRMATION OF S
ADJUSTMENT FOR TH

I, Natalie A. Jaresko, hereby decla

1. I am the Executive

Puerto Rico (the "Oversight I

Commonwealth of Puerto Rico (t

Government of the Commonweal

¹ The Debtors in these Title III Cases, al
digits of each Debtor's federal tax identi
(the "Commonwealth") (Bankruptcy Ca
Puerto Rico Sales Tax Financing Corp
Digits of Federal Tax ID: 8474); (iii) Pue
No. 17-BK-3567-LTS) (Last Four Dig
Government of the Commonwealth of 1
Digits of Federal Tax ID: 9686); (v) Puer
4780-LTS) (Last Four Digits of Federal
(Bankruptcy Case No. 17-BK-5523-LTS)
as Bankruptcy Case numbers due to software limitations).

216. Moreover, the payment of the Consummation Costs, Restriction Fees, and Retail Support Fees were critical components of the Plan Settlement Agreements that made development of the Plan possible. Specifically, in consideration for their efforts in assisting in the formulation of the Plan, and to compensate the PSA Creditors for fees and expenses incurred in connection with the negotiation and execution of the GO/PBA PSA and HTA/CCDA PSA, the Oversight Board determined that it is fair and reasonable for the PSA Creditors to be paid the Consummation Costs. Additionally, in exchange for agreeing to support the Plan and to "lock up" the parties' bonds in accordance with each of the GO/PBA PSA and HTA/CCDA PSA, the Oversight Board determined it is fair and reasonable to make PSA Restriction Fees available to such Consummation Cost Parties. Similarly, in exchange for executing the ERS Stipulation and agreeing to all of its

Jaresko Decl. Dkt. No. 18729

8

# Zelin Testimony

88. The PSA Fees were bargained-for during the course of Plan negotiations and are not on account of PSA Fees recipients' claims. The consummation costs are provided in consideration of the fees and expenses incurred by holders or insurers of settled claims in connection with the negotiation and execution of their applicable PSA and, among other things, the prosecution of the approval of the Disclosure Statement and confirmation of the Plan, which has taken a significant amount of time and effort to negotiate and file due to the complexity of these cases and intervening external events that complicated the situation such as natural disasters and the COVID-19 pandemic. As consideration for their efforts in assisting in the formulation of the Plan (which has garnered significant creditor support), continuing to assist in the finalization of definitive agreements and ancillary documents, and the costs incurred in those and other efforts, the Oversight Board determined that it was fair and reasonable for the recipients to be paid the consummation costs.

89. The restriction fees are to compensate signatories to the PSAs for, among other things, executing the applicable PSA and agreeing to all its terms and conditions, including the agreement to support the Plan and "lock-up" their respective bonds in accordance with the terms of the PSA. Such a restriction on the transfer of their bonds greatly increases the chances the signatories to the PSA will participate in and support the Plan, thereby increasing the chances that Plan confirmation can be achieved.

Zelin Decl. Dkt. No. 18734

# Zelin Testimony Under Cross Examination



Nov. 10 Conf. Hr'g Tr.

14   A.   I think I answered that.  There was no requirement, but
15   the willingness to provide it was based upon personal
16   understanding that the creditors that we were negotiating with
17   for years were incurring significant expense.  And the Board's
18   willingness to provide that reimbursement, that fee, was with
19   that knowledge.

76:14-19

3   A.   It related to reimbursing those stakeholders who were
4   active participants in the negotiation for the costs that they
5   incurred for hiring financial advisors, investment banks, and
6   lawyers to assist them in those negotiations, perform all the
7   diligence, so that coming to negotiation, they could have the
8   facts and information they require for that negotiation to be
9   arms length and fair.

91:3-9

20   A.   I had that belief before I actually saw the estimates,
21   because we agreed to that before seeing the estimates; but
22   based upon the dollars that the 1.5 percent represents, and
23   the estimates for two of what is at least five or six or seven
24   groups that I saw, I believe our decision -- or our assumption
25   that the 1.5 percent was reasonable was more than validated.

91:20-25

10

# Best Interests of Creditors

# Contracts Clause is Incorporated in "Best Interests" Test

## Text and Meaning of PROMESA

"The court shall confirm the plan if—

(6) the plan is feasible and in the best interest of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan."

## Text and Meaning of Contracts Clause

"No State shall … pass any Law impairing the Obligation of Contracts …."  U.S. Const., Art 1., Section 10.

"Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption."  *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 22 (1977).

"Impairment of an obligation means refusal to pay an honest debt; it does not mean contriving ways and means for paying it.  The necessity compelled by unexpected financial conditions to modify an original arrangement for discharging a city's debt is implied in every obligation for the very reason that thereby the obligation is discharged, not impaired."  *Faitoute Iron & Steel Co. v. City of Asbury Park*, 316 U.S. 501, 511 (1942).

12

# Evidence Supports Necessity of Impairment



Shah Decl. Dkt. No. 18730

12. In general, the Plan for each of the Debtors will result in recoveries for creditors in the aggregate that are within the range or greater than the recoveries that they would receive outside Title III based on data available as of the filing date of the Reports. Absent a mechanism to restructure the Debtors' outstanding debt and pension liabilities, the Commonwealth would face great uncertainty, financial and political instability, and be subject to significant litigation. The

13. The Oversight Board is continuing to work on achieving its mandates and to help Puerto Rico attain fiscal responsibility, gain access to capital markets, and achieve renewed economic prosperity and growth. I believe the Plan marks a significant step towards achieving the Oversight Board's objectives. The Plan embodies agreements with numerous claimholder constituencies resulting from the Oversight Board's extensive negotiations with those constituencies, and reflects the Oversight Board's ability to garner substantial support for the Plan.

Skeel Decl. Dkt. No. 18731

57. I have reviewed the Commonwealth's Fiscal Plans, including the most recent Fiscal Plan certified by the Oversight Board on April 23, 2021 (the "2021 Fiscal Plan"). It is my understanding based on this review that the 2021 Fiscal Plan provides a blue print for the Commonwealth to achieve, among other things, fiscal responsibility and access to capital markets. The 2021 Fiscal Plan contains a debt sustainability analysis ("DSA"), which creates a range established by the Oversight Board as the amount of debt and long-term capacity of the Government to pay debt service on its debt. Per my understanding of the 2021 Fiscal Plan, which

Zelin Decl. Dkt. No. 18734

# Evidence Supports Reasonableness of Impairment

| Bonds | Classes | Number Accept % | Dollar Accept % |
|---|---|---|---|
| Vintage PBA Bonds | 1-7 | 92-63% - 100% | 90.58% - 100% |
| 2011 PBA Bonds | 8-9 | 96.61% - 97.01% | 98.82% - 99.77% |
| 2012 PBA Bonds | 10-11 | 89.76% - 98.44% | 94.84% - 99.93% |
| Vintage CW Bonds | 15-22 | 80-54% - 100% | 91.55% - 100% |
| Vintage CW Guaranteed Bonds | 23-29 | 95.24% - 100% | 98.81% - 100% |
| 2011 CW Bonds | 30-33 | 96.43% - 100% | 94.71% - 100% |
| 2011 CW Guaranteed Bonds | 34-35 | 96.17% - 100% | 98.79% - 100% |
| 2011 CW Series D/E/PIB Bonds | 36-39 | 91.92% - 100% | 89.81% - 100% |
| 2012 CW Bonds | 40-43 | 93.50% - 100% | 93.64% - 100% |
| 2012 CW Guaranteed Bonds | 44-45 | 96.16% - 100% | 99.89% - 100% |
| 2014 CW Bonds | 46-48 | 100% | 100% |
| 2014 CW Guaranteed Bonds | 49 | 100% | 100% |

Source: Pullo Supp. Decl. at Ex. A, Dkt. No. 19115

# Is Proposed Adjustment Fair, Right, Reasonable and Appropriate?



# Teachings of *Faitoute* Apply to PROMESA

"Experience shows that three conditions are essential if the municipality is to be kept going as a political community and, at the same time, the utmost for the benefit of creditors is to be realized:

impartial, outside control over the finances of the city;

concerted action by all the creditors to avoid destructive action by individuals;

and rateable distribution."

*Faitoute*, 316 U.S. at 510.