## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Re: ECF No. 19319 |

**RESPONSE OF OVERSIGHT BOARD TO AAFAF'S OBJECTION TO INCLUSION OF ACTS 80, 81, AND 82 ON EXHIBIT C TO THE REVISED PROPOSED ORDER AND JUDGMENT CONFIRMING MODIFIED EIGHTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL.**

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

The 2020 Pension Laws And The Government's Agreement Not To Implement Them ............... 8

SJR 171 Compels The Government To Partially Implement Act 80 ............................................ 12

The Oversight Board's November 19, 2021 Resolution .................................................... 13

The 2020 Pension Laws Are Preempted By PROMESA ............................................................ 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Vázquez Garced v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight and Mgmt.
Bd. for Puerto Rico)*,
511 F. Supp. 3d 90 (D.P.R. 2020) ................................................................................13, 17

STATUTES

"2020 Pension Laws" ................................................................................ passim

PROMESA, 48 U.S.C. §§ 2101–2241 ................................................................ passim

Puerto Rico Act 447-1951 ................................................................................8

Puerto Rico Act 1-1990 ................................................................................8

Puerto Rico Act 7-2021 ................................................................................4

OTHER AUTHORITIES

Puerto Rico Senate Joint Resolution 171 ................................................................2, 12

iii

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Public Buildings Authority ("PBA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth and PBA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this response to *The Puerto Rico Fiscal Agency and Financial Advisory Authority's Objection to the Inclusion of Acts 80, 81, and 82 on Exhibit C to the Revised Proposed Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19319] (the "Objection") filed by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") regarding the inclusion of Act 80-2020 ("Act 80"), Act 81-2020 ("Act 81"), and Act 82-2020 ("Act 82," collectively the "2020 Pension Laws") on Exhibit C to the *Revised Proposed Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, [ECF No. 19188] (the "Proposed Confirmation Order"), and respectfully states:

## Introduction

1.      In August 2020, the Government enacted the 2020 Pension Laws (a) creating new defined benefit pension obligations for work performed prior to commencement of the Commonwealth's Title III case and contrary to the certified fiscal plan's elimination of defined

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

benefits, and (b) increasing pension obligations by monetizing unused prepetition vacation and sick days after previously reforming the system to halt monetization of unused vacation and sick days.   After the Oversight Board advised the Governor the 2020 Pension Laws could not be implemented, the then-Governor agreed not to implement them until the Oversight Board agreed. Then, on November 11, 2021, the Legislature passed Senate Joint Resolution 171 ("SJR 171") compelling immediate implementation of Act 80.   Because, by any yardstick, those laws are inconsistent with PROMESA's grant to the Oversight Board of the exclusive right to determine how prepetition claims should be treated, the Oversight Board immediately announced it would place the 2020 Pension Laws on its list of laws to be ruled preempted as part of confirmation of its proposed plan of adjustment.   AAFAF then filed its Objection on Saturday November 20, while mischaracterizing the facts and circumstances.

2.   AAFAF's Objection not only hides key facts, it relies on the wrong law.   The Objection contends the 2020 Pension Laws can only be challenged pursuant to the process in PROMESA section 204(a).   AAFAF ignores that section 204(a), as well as section 108(a)(2), can lead to the nullification of laws inconsistent with the fiscal plan or which impair or defeat PROMESA's purposes, regardless of whether the laws are preempted.   To date, the Oversight Board has not yet challenged the 2020 Pension Laws in Court under sections 204(a) and 108(a)(2) because AAFAF previously agreed that it would not implement the 2020 Pension Laws without the Oversight Board's consent.   Now, AAFAF appears poised to go back on its agreement and implement at least Act 80 in the midst of the confirmation hearing.   Accordingly, the Oversight Board is contending as part of the confirmation hearing that the 2020 Pension Laws are preempted pursuant to section 4 of PROMESA because they are blatantly inconsistent with PROMESA –

they require a treatment of prepetition pension claims the Government has no right to require. Only the Oversight Board can propose a treatment of such claims pursuant to PROMESA § 312(a).

3.       The Oversight Board submits this response to correct the record and to show the 2020 Pension Laws are preempted by PROMESA and must be included on Exhibit C to the Proposed Confirmation Order.  It is nothing short of amazing that during the confirmation hearing on a plan of adjustment that dictates treatments of billions of dollars of unfunded pension claims, AAFAF can contend the Government can override the plan of adjustment with new defined benefits on account of prepetition claims, which substantially unfreeze pension accruals under ERS and would partially undo the freeze of TRS under the Plan, and the Oversight Board cannot take immediate action to stop it.   Feasibility of the proposed plan of adjustment cannot be determined if the 2020 Pension Laws may be implemented.

4.       The Puerto Rico Legislature (the "Legislature"), AAFAF, and Governor Pierluisi Urrutia (the "Governor," and together with the AAFAF, the "Government") are currently attempting to establish new defined benefits for certain public employees of the Government of Puerto Rico over and above those that would be payable pursuant to the Plan, which will undermine the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Case No. 17-BK-3283-LTS, ECF No. 19184] (the "Plan") and the heavily negotiated balances and complex compromises reflected therein, especially with respect to the treatment of pensions.  By its own admission, the Government, not satisfied with the elimination of the pension cuts from the Plan, seeks to "provide greater benefits than those currently in place,"

Objection ¶ 10, repeating its long history of taking on pension liabilities it cannot afford (including its recent effort to reestablish prepetition pension plans under Act 7-2021).

5.     Since its inception, the Oversight Board has discussed with the Government reforming the Commonwealth's three primary retirement plans for public employees—the Employees' Retirement System ("ERS"), the Teachers' Retirement System ("TRS"), and the Judiciary Retirement System ("JRS")—which were liable for more than $50 billion in unfunded pension liabilities as of the Commonwealth's Title III petition date.

6.     In 2020, the Government enacted the Pension Laws, which the Oversight Board concluded would add billions of dollars of pension liabilities to the Commonwealth's books not anticipated by the Fiscal Plan or the certified budget.

7.     The Oversight Board has repeatedly warned members of the Legislature and the Government for the past seventeen months that implementing Act 80 will substantially expand ERS pension benefits, which were frozen by the Government in 2013 in recognition of ERS's dire financial condition, by providing early retirement with increased benefits without funding for such liabilities.  The Oversight Board has made similar warnings with respect to Act 81 and Act 82 dating back to the summer of 2020.  As with Act 7, however, the Oversight Board's oft-repeated concerns regarding the Government's relentless efforts to expand public pension benefits continue to be disregarded by the Legislature and Government.  The Legislature and Government continue to make pension promises without adequate funding.

8.     In late 2020, then-Governor Vázquez Garced agreed the Government would not implement the 2020 Pension Laws without the Oversight Board's consent.

9.     The Government never followed up with the Oversight Board concerning Acts 81 and 82.

4

10.     With respect to Act 80, despite extensive engagement with the Government, the Government has never demonstrated that any of the 2020 Pensions Laws will generate savings and, critically, the Oversight Board has never agreed that the Government may implement any of these three laws.  Instead, all that the Oversight Board agreed to allow was for the Government to survey employees to determine how many employees might elect early retirement under Act 80, if it were implemented, to determine with greater clarity the cost of Act 80.  The Government's own data from that survey showed that Act 80, if implemented as enacted, would increase costs. Notwithstanding that fact, the Oversight Board offered in June 2021 to explore potential paths for a partial implementation of Act 80, subject to certain conditions such as revenue neutrality.  The Government never responded to the Oversight Board.

11.     Instead, during the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), the Legislature passed SJR 171 on November 11, 2021, which purports to force the Government to begin implementing Act 80 for non-essential employees.  SJR 171 is currently on the Governor's desk awaiting signature.

12.     It is now abundantly clear the Legislature and the Government intend to expand pension benefits through Act 80, and almost certainly expand them further through subsequent legislation after the Plan is confirmed.  As a result, the Oversight Board has determined enjoining these efforts for a period of ten years under the terms of paragraph 62 of the Proposed Confirmation Order is essential to the success of the Plan and the Oversight Board's mission of returning the Commonwealth to fiscal responsibility and ensuring adequate funding of its pensions.  Otherwise, the Legislature and the Government can, and likely will, undo all the Oversight Board's work with fiscally disastrous expansions of pension benefits.  For these reasons, during the November 17, 2021 session of the Confirmation Hearing, counsel for the Oversight Board informed the Court

that the Oversight Board intended to include the 2020 Pension Laws on Exhibit C to the Proposed

Confirmation Order as preempted statutes.  *See* Nov. 17, 2021 Hr'g. TR 93:24-94:3.

13.     The 2020 Pension Acts are preempted because they are both individually and

collectively inconsistent with multiple sections of PROMESA.  For present purposes, they

interfere with the Oversight Board's exclusive right to determine treatment of pension claims under

a plan of adjustment.  Specifically:

- Act 80 increases ERS pension benefits above the amounts set forth in the Plan, which already provides for no cuts to accrued benefits and a distribution of $2,600 per active ERS participant as a result of negotiations with affected stakeholders, and also increases the Commonwealth's expenditures by incentivizing early retirement among a large number of employees.

- Act 81 is inconsistent with PROMESA section 202 by increasing the retirement benefits paid to eligible retirees as a percentage of their final salaries, but fails to identify any way to fund this increase outside of payroll reductions already accounted for in the Fiscal Plan or that are entirely unfeasible.

- Act 82 increases the Commonwealth's pension liabilities arising from prepetition services by allowing accelerated accrual of pension benefits for teachers.  Act 82 also interferes with the Oversight Board's exclusive right to determine treatment of pension claims under the Plan by requiring the treatment the Government wants, but the Oversight Board has not proposed.

14.     AAFAF concedes the 2020 Pension Laws "modify certain essential workers' public

sector pension benefits" and increase pensions above their current levels to be paid pursuant to the

Plan.  Objection ¶¶ 8, 9-13 (outlining increases to pensions mandated by the 2020 Pension Laws).

Nevertheless, AAFAF objects to the inclusion of the 2020 Pension Laws on Exhibit C to the

Proposed Confirmation Order and contends the proper process for invalidating Commonwealth

laws is through the PROMESA § 204 process.  Objection at 3.  AAFAF is wrong.  Fundamentally,

AAFAF confuses preemption with a cause of action under PROMESA.  Put simply, a statute is

preempted if it is inconsistent with PROMESA.  Such preemption is automatic; nothing more need

be proven.  This is precisely the case with the statutes on Exhibit C to the Proposed Confirmation

Order – each is preempted because they are inconsistent with PROMESA on their face. Conversely, PROMESA §§ 108 and 204 operate on statutes that may not be preempted on their face, but are otherwise inconsistent with the fiscal plan or impair or defeat PROMESA's purposes, in which case they are subject to invalidation and other relief under PROMESA.

15.     As discussed in more detail below, the 2020 Pension Laws are preempted by PROMESA for at least two reasons.  First, they are preempted by PROMESA § 312(a) and PROMESA § 313, which grant the Oversight Board the sole right to propose and to modify a plan of adjustment, because they increase pension benefits for prepetition services for Active ERS and TRS Participants beyond the amounts provided for in the Plan.  Second, they are preempted by PROMESA §§ 201, 202, and 207 because the Legislature and the Government cannot modify the Fiscal Plan, Certified Budget, or debt without Oversight Board approval, even if they somehow demonstrate the laws save money (which is in dispute, and not relevant for the purposes of preemption).[3]  Separately, the 2020 Pension Laws are enjoined by PROMESA § 108(a)(2) because they impair or defeat the purposes of PROMESA, as determined by the Oversight Board. Manifestly, laws defying PROMESA's rules for who can propose and impose treatment of prepetition claims undermine PROMESA Title III.

_____

[3] Through the Oversight Board's discussions with the Government and its independent assessment of information provided by AAFAF on April 1, 2021, the Oversight Board has concluded that even with the limited savings identified by AAFAF, Act 80 will impose additional costs on the Commonwealth not contemplated in the Fiscal Plan.  Based on the employee elections and data provided by AAFAF, the Oversight Board estimates that after meeting Fiscal Plan payroll reduction obligations, entities covered by the Fiscal Plan will still incur at least an additional $80.4 million in costs in the first year under Act 80 and those additional costs in the first year alone could end up closer to $110 million.  AAFAF's data also reveals that even under the partial implementation plan contemplated by SJR 171, the Commonwealth will not achieve savings.  The Oversight Board estimates that such a plan will result in additional costs of at least $5.6 million in the first year and those costs could end up closer to $61 million in the first year.

16.    Accordingly, the 2020 Pension Laws are preempted by PROMESA and it is appropriate (and necessary) to include them on Exhibit C to the Proposed Confirmation Order to effectuate the Plan.

### The 2020 Pension Laws And The Government's Agreement Not To Implement Them

17.    In 2020, the Government enacted the 2020 Pension Laws, which impose billions of dollars in new liabilities outside the Oversight Board's certified fiscal plans and budgets for the Commonwealth without identifying an adequate method of paying for them.

18.    Act 80[4] creates the Incentivized Retirement Program, which offers early retirement to specific classes of public employees covered under the ERS defined-benefit pension plan created by Act 447-1951 ("Act 447") and Act 1-1990 ("Act 1").  Act 80 Art. 3.  Act 447 initially afforded eligible employees 75% of their final salaries in pension compensation, while Act 1 initially afforded eligible employees up to 40% of their final salaries in pension compensation. The ERS pension plan was frozen in 2013 and additional benefits under this plan have not accrued since then.  Before enactment of Act 80 and under the ERS pension freeze, eligible employees under Act 447, on average, will receive up to 40% of their final salaries in pension compensation, and Act 1 eligible employees will receive up to 29% of final compensation.

19.    Act 80, however, provides eligible Act 447 and Act 1 employees retiring under the program greater benefits than those provided for by Act 447 and Act 1.  Specifically, participants would receive pension benefits equal to 50% of the highest annual compensation received over their final three years of employment.  Act 80 Art. 7(a)(1), (b)(1).  Article 9 of Act 80 states that positions vacated by retirees will remain unfilled unless the agency, at its own discretion,

---

[4] A certified English-language translation of Act 80 is attached hereto as **Exhibit 1**.

determines the position in question provides "essential services for the operation of the agency." The Judiciary and the Office of Management and Budget ("OGP," for its Spanish acronym) may also authorize an agency to fill frozen positions regardless of whether they are essential. The Government also failed to take into account that the Commonwealth Fiscal Plan already calls for significant headcount reductions, and any further reductions to pay for the additional expense of early retirements under Act 80 will likely cause material disruption in services to the public. The Oversight Board has raised this concern with AAFAF, and it has yet to provide or even propose a solution.

20.     Act 81[5] amends Act 447 and Act 1 to allow certain categories of public employees that are part of the ERS retirement system hired before January 1, 2000 to retire at 55, provided they served for at least 30 years:  (*i*) members of the Puerto Rico Police Bureau; (*ii*) members of the Firefighters Corps Bureau; (*iii*) members of the Custodial Officers Corps; and (*iv*) Emergency Medical Technicians ("EMTs") that are members of either the Medical Emergency Corps Bureau or the Municipal Medical Emergencies System (collectively, "Public Emergency Employees").

21.     Prior to Act 81, Public Emergency Employees covered by Act 447 were entitled to receive an estimated 40% of their final salaries in pension compensation, while employees covered by Act 1 were eligible to receive 29% of final salaries.  Under Act 81, however, Public Emergency Employees are entitled to receive 45%-55% of their final salaries, depending on when they entered ERS and their age at retirement.  Act 81 § 2.  They also receive a lifetime employer contribution of $100 per month to their chosen health-insurance plan.  Thus, Act 81, in addition to Act 80, would effectuate a substantial reversal of the 2013 ERS freeze.  Additionally, as with Act 80, any

---

[5] A certified English-language translation of Act 81 is attached hereto as **Exhibit 2**.

permanent elimination of positions of Pubic Emergency Employees beyond the headcount reduction provided in the Commonwealth Fiscal Plan to pay for early retirement benefits under Act 81 will likely materially impair public services as well as public safety.

22.     Act 82[6] modifies Law 26-2017 to allow TRS participants to apply up to 108 days of pre-existing or excess unused sick leave toward their retirement eligibility and pension-benefit levels.  Act 82 § 1.  As such, it allows certain teachers to retire sooner than permitted by Law 26-2017.  According to the Oversight Board's calculations, Act 82 will add hundreds of millions of dollars (perhaps as much as $1.6 billion) in pension liability.   That additional liability will substantially negate savings the Oversight Board expects to achieve by both the freeze of the TRS pension plan and pension-benefit reductions contemplated in the Fiscal Plans.  Moreover, allowing teachers to acquire retirement eligibility and enhanced benefits is inconsistent with the Plan's prohibition on purchases of credits toward retirement as part of the TRS freeze.  Plan, Ex. F at F-2.

23.     The Oversight Board determined implementation of the 2020 Pension Laws would cost more than they would save, and they are therefore inconsistent with the certified Fiscal Plan.

24.     Following extensive correspondence between the Government and the Oversight Board, the Government agreed on November 20, 2020 not to implement the 2020 Pension Laws until "an agreement is reached with the Oversight Board concerning these important public policy acts."  The Government reconfirmed this commitment to the Oversight Board on January 15, 2021.  True and correct copies of these letters are attached hereto as **Exhibits 4** and **5**.

---

[6] A certified English-language translation of Act 82 is attached hereto as **Exhibit 3**.

25.     On April 1, 2021, AAFAF sent a letter to the Oversight Board detailing the specific agencies and municipalities AAFAF had concluded would generate savings by implementing Act 80.  AAFAF's new data set also identified which retiring employees held "non-essential" positions and posited that savings resulting from not refilling all non-essential positions would offset the increased pension costs the Commonwealth would incur.  AAFAF concluded a limited number of agencies would achieve savings if Act 80 were implemented for only those agencies.

26.     Following meetings on June 7 and 8, 2021, the Oversight Board sent a letter to the Government dated June 22, 2021 (the "Oversight Board's June 22 Letter") and reiterated that "it does not consent to the implementation of Act 80 at this time."  A true and correct copy of the Oversight Board's June 22 Letter is attached hereto as **Exhibit 6**.  In that letter, the Oversight Board noted that AAFAF's new data again demonstrated Act 80 will impose costs for the Commonwealth as a whole and for the vast majority of agencies and municipalities.  However, the Oversight Board identified certain textual amendments and administrative guarantees necessary to ensure partial implementation of Act 80 would be consistent with the Fiscal Plan for certain agencies and corporations that might generate savings.  Oversight Board's June 22 Letter at 3–4.  The Oversight Board also expressed willingness "to explore . . . the possibility of pursuing limited implementation of Act 80 subject to certain conditions and restrictions," and it requested to schedule a meeting to discuss.  *Id.*

27.     The Government never responded to the Oversight Board's June 22 Letter.

11

### SJR 171 Compels The Government To Partially Implement Act 80

28.      On November 11, 2021, the Legislature passed SJR 171[7], which purports to mandate immediate partial implementation of Act 80 despite AAFAF's analysis revealing that Act 80 would impose significant additional costs on the Commonwealth, the Oversight Board's determining the law would impair and defeat PROMESA's purposes, and the Government's agreement not to implement Act 80 (and the other 2020 Pension Laws) without the Oversight Board's consent.

29.      Specifically, SJR 171 orders the Executive Director of OGP and the Executive Director of the Retirement Systems Administration to take all necessary measures to implement Act 80 for non-essential government employees already identified by the Government and to require agencies, public corporations, and eligible municipalities to implement Act 80 for non-essential government employees already identified by the Government, to be followed by potential implementation for other employees.  SJR 171 requires that such actions be taken within 30 business days of its enactment.  SJR 171 thereby obstructs the Government's cooperation with the Oversight Board with respect to Act 80 and imposes its implementation immediately.

30.      As such, while the Government attempts to portray its partial implementation as a reflection of fiscal discipline, even if that were not the case which the Oversight Board disputes, absent further action by this Court, nothing stops the Government from expanding its approach the day after the Plan is confirmed.

---

[7] An unofficial translation of SJR 171 is attached hereto as **Exhibit 7**.

31.      In any event, the Oversight Board has concluded any such partial or complete implementation of Act 80 would impose significant pension liabilities and payments the Oversight Board is not proposing in the Plan, the certified Fiscal Plan, or the certified budget.

32.      Accordingly, on November 16, 2021, the Oversight Board sent a letter to the Governor, the President of the Puerto Rico Senate, and the Speaker of the Puerto Rico House of Representatives, notifying them that, in light of the Oversight Board's prior determination regarding Act 80, the Oversight Board had similarly concluded that SJR 171 would impair and defeat PROMESA's purposes.  A true and correct copy of the Oversight Board's November 16 letter is attached hereto as **Exhibit 8**.  In the November 16 letter, the Oversight Board informed the Governor and the Legislature that the Governor is barred from signing the law and if the Governor signs SJR 171 into law, PROMESA § 108(a)(2) bars implementation and enforcement of SJR 171 and Act 80.

## The Oversight Board's November 19, 2021 Resolution

33.      In light of SJR 171, which the Oversight Board understands was passed by both houses of the Legislature with veto-proof majorities and is now on the Governor's desk, the Oversight Board has no reason to believe the 2020 Pension Laws will not be implemented.  This belief is well-founded given that the Government previously attempted to add billions of dollars of future pension liabilities by reverting pension benefits to unsustainable pre-petition levels through Act 7-2021, which this Court recently enjoined and nullified.  *See Vázquez Garced v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight and Mgmt. Bd. for Puerto Rico)*, 511 F. Supp. 3d 90 (D.P.R. 2020).

34.      Accordingly, on November 19, 2021, the Oversight Board adopted a resolution (the "November 19 Resolution") concerning the 2020 Pension Laws and SJR 171, (1) reaffirming its

determination that the 2020 Pension Laws impair and defeat PROMESA's purposes; (2) announcing its determination that SJR 171 similarly impairs and defeats PROMESA's purposes by mandating the partial implementation of Act 80; (3) directing the Government not to enact, implement, or enforce the 2020 Pension Laws or SJR 171; and (4) approving legal action against the Government and other appropriate parties, if necessary, to enforce the bar against enacting, implementing, and enforcing the 2020 Pension Laws or SJR 171 and having  them declared nullities.[8]

### The 2020 Pension Laws Are Preempted By PROMESA

35.    During the November 17, 2021 hearing on the confirmation of the Plan, counsel for the Oversight Board informed the Court that the Oversight Board intended to include the 2020 Pension Laws on Exhibit C to the Proposed Confirmation Order.  *See* Nov. 17, 2021 Hr'g. TR 93:24-94:3.  This is because the 2020 Pension Acts undermine the Plan and violate PROMESA.

36.    As explained above, Act 80 increases ERS pension benefits above the amounts set forth in the Plan, even after the Oversight Board's agreement to remove all cuts to accrued benefits, and also increases the Commonwealth's expenditures by incentivizing early retirement among a large number of employees.  Act 80 Art. 3, 7(a)(1), (b)(1).  Likewise, Act 81 increases pension costs by increasing the retirement benefit paid to eligible retirees as a percentage of their final salaries.  Act 81 § 2.  And, Act 82 accelerates the eligibility for retirement benefits for teachers and will necessarily increase costs and interfere with the TRS freeze imposed by the Plan.  Act 82 § 1.

---

[8] A true and correct copy of the Oversight Board's November 19, 2021 Resolution is attached hereto as **Exhibit 9**.

37.     AAFAF objects to the inclusion of the 2020 Pension Acts on Exhibit C to the
Proposed Confirmation Order for two reasons:  (1) AAFAF argues the 2020 Pension Acts will
save money; and (2) AAFAF contends, incorrectly, the only "proper process" for invalidating
Commonwealth laws is through the PROMESA § 204 process.  Objection ¶¶ 3, 14, 23-27.

38.     The Oversight Board fundamentally disagrees with AAFAF's assertion the 2020
Pension Acts will save money and engaged with the Government on this point for a year – until
the Government went silent in June 2021.  Nevertheless, that disagreement is of no moment to the
current preemption analysis on the 2020 Pension Laws, on which AAFAF is plainly wrong.
Indeed, AAFAF's second argument reflects a fundamental misunderstanding of PROMESA.  By
fixating on the PROMESA § 204 process and contending it is the only mechanism available to the
Oversight Board, AAFAF fails to recognize the fundamental precept that a statute is automatically
preempted if it is inconsistent with PROMESA; nothing more need be proven.  Conversely,
PROMESA §§ 108 and 204 operate on statutes that might not be preempted on their face, but are
otherwise inconsistent with certified fiscal plans or impair or defeat PROMESA's
purposes.  Schedule K to the Plan and Exhibit C to the Proposed Confirmation Order are based
solely on preemption.  In addition to other bases on which the 2020 Pension Laws violate
PROMESA (including 204(a) and 207), the 2020 Pension Laws are preempted or otherwise may
not be enforced for at least three reasons.

39.     First, the 2020 Pension Laws are preempted by PROMESA § 312(a)[9] and
PROMESA § 313[10], which grant the Oversight Board the sole right to propose and to modify a

---

[9] PROMESA § 312(a) provides "[o]nly the Oversight Board, after the issuance of a certificate
pursuant to section 104(j) of this Act, may file a plan of adjustment of the debts of the debtor."

[10] PROMESA § 313 provides "[t]he Oversight Board, after the issuance of a certification pursuant
to section 104(j) of this Act, may modify the plan at any time before confirmation, but may not

plan of adjustment.  Put simply, the Plan provides for the treatment of accrued pension obligations to retirees and active employees with accrued benefits, and dictates the amount each retiree receives.  As AAFAF concedes, all three of the 2020 Pension Laws change those amounts and provide greater benefits to Active ERS and TRS Participants in contravention of the Plan and in violation of PROMESA.  *See* Objection ¶¶ 10-13.  The Oversight Board need not prove anything else to establish these laws are preempted.

40.     Second, the 2020 Pension Laws are preempted by PROMESA §§ 201 and 202 because they impose billions of dollars in new pension liabilities as if PROMESA does not grant the Oversight Board power over the fiscal plan and budget.  PROMESA grants the Oversight Board the sole authority to certify (1) fiscal plans for the Commonwealth and its eligible instrumentalities, PROMESA § 201, and (2) budgets for the Commonwealth and its covered instrumentalities as "compliant with the applicable Fiscal Plan" *id.* § 202(c)(1).  In other words, the 2020 Pension Laws are preempted for the same reason that many of the other statutes on Schedule K to the Plan and Exhibit C to the Proposed Confirmation Order are preempted – they appropriate funds and make disbursements when only the Oversight Board can do so under PROMESA.  In addition, the 2020 Pension Laws are preempted by PROMESA § 207 because they purport to modify debt in the form of increased pension liabilities without the Oversight Board's prior approval.

41.     Third, the 2020 Pension Laws are barred because they impair or defeat PROMESA's purposes, as determined by the Oversight Board, for the reasons set forth above. The Oversight Board has determined that the each of the 2020 Pension Laws impair or defeat the purposes of PROMESA by adding expenses not contemplated by the Plan or the Fiscal Plan,

---

modify the plan so that the plan as modified fails to meet the requirements of this title.  After the Oversight Board files a modification, the plan as modified becomes the plan."

jeopardizing services on the Island, and undermining fiscal responsibility. Under PROMESA § 108(a), the Legislature and the Government were statutorily barred from enacting or implementing the Acts once the Oversight Board determined the Acts impaired or defeated the purposes of PROMESA. As this Court has recognized, a § 108(a)(2) "determination by the Board triggers a statutory prohibition on action by the Government to go forward with the targeted statute." *Vázquez Garced v. Fin. Oversight & Mgmt. Bd.* (*In re Fin. Oversight and Mgmt. Bd. for Puerto Rico*), 511 F. Supp. 3d 90, 134 (D.P.R. 2020).

42. For all of these reasons, the 2020 Pension Laws are appropriately included on the list of preempted statutes on Exhibit C to the Proposed Confirmation Order.

*[Remainder of Page Intentionally Left Blank]*

Dated: November 22, 2021
    San Juan, Puerto Rico

                    Respectfully submitted,


*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Paul V. Possinger
(Admission *pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*


*/s/ Timothy W. Mungovan*
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110
Tel:  (617) 526-9600
Fax:  (617) 526-9899
Email:  tmungovan@proskauer.com


*/s/ Hermann D. Bauer-Álvarez*
Hermann D. Bauer-Álvarez
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

<u>/s/ *Hermann D. Bauer*</u>
Hermann D. Bauer