## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re:** | PROMESA |
| **THE FINANCIAL OVERSIGHT MANAGEMENT BOARD FOR PUERTO RICO** | TITLE III |
| **as representative of** | NO. 17 BKT 3283-LTS (Jointly Administered) |
| **THE COMMONWEALTH OF PUERTO RICO,** *ET ALS.* | |
| DEBTORS | |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

**TO THE HONORABLE DISTRICT COURT JUDGE LAURA TAYLOR SWAIN:**

**COMES NOW,** Luis F. Pabón Bosques, Raul Martinez Perez, Elvin A. Rosado Morales, Carlos A. Rojas Rosario y Rafael Torres Ramos, (jointly referred as "Creditors"), through the undersigned attorney and very respectfully states, alleges and prays as follows:

### INTRODUCTION

This Honorable Court should lift the PROMESA automatic stay with regards to Creditors' post-petition case that was filed before the First Instant Court of Puerto Rico ("State Court") under Case Number SJ2021cv01112 (See Exhibit A) because continuation of the constitutional violations and irreparable harm against the Creditor's vested property rights outweighs the detriment that the Commonwealth of Puerto Rico ("Commonwealth") and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") would suffer if the stay were vacated to address them.

### FACTUAL & PROCEDURAL BACKGROUND

1.    The Commonwealth and ERS (jointly "Debtors"), by its representative and

pursuant to section 315 of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"), the Financial oversight and Management Board ("Board") for Puerto Rico filed a voluntary petition in the United States District Court for the District of Puerto Rico under Title III of PROMESA seeking relief from creditors.

2.      Act No. 81 of August 3rd, 2020, known as the "Ley Para Proveer un Retiro Digno para los Miembros del Sistema de Rango de la Policias, Los Miembros del Negociado del Cuerpo de Bomberos, lo Miembros del Cuerpo de Oficiales de Custodia de Puerto Rico, y otros" ("Act 81"), was passed by the Commonwealth, with the purpose of giving the police, firefighters, custody officers and their families the hope of receiving a dignified retirement, granting a life pension to those members of these security forces who have 30 years or more of service.

3.      Act 81 was passed by the Legislative Branch of the Commonwealth ("PR Legislature") and signed by the Executive Branch of the Commonwealth ("PR Executive"), to modify and change the pension previously established by Act No. 3 of April 4th, 2013 ("Act 3").

4.      Act 3 originally established the following: the members of the Police who retire after the approval date of Act 3, would have the right of a retirement pension that is equivalent between forty percent (40%) to forty four percent (44%) of their salary at the time of retirement.

5.      In contrast, the language of Act 81 revoked Act 3 by establishing the following: the members of the Police who retire after the approval date of Act 81, who have rendered at least thirty (30) years of service, would have the right for pension that is equivalent between fifty percent (50%) to fifty five percent (55%) of their salary at the time of retirement.

6.      Additionally, Act 81 clearly expressed that the retirement pensions will become effective immediately after its approval by the PR Legislature and PR Executive.

7.      As such, because the PR Legislature passed Act 81 and the PR Executive signed

Act 81 on August 3rd, 2020, the retirement pension that applied to any member of the Police who retired after August 3rd, 2020 would be the retirement pension established in Act 81.

8.      After August 3rd, 2020, all the Creditors retired.

9.      After retiring, the Creditors requested the payment of the retirement pension established in Act 81.

10.      As such, the Creditors had a vested property interest in the retirement pension of Act 81.

11.      However, the Debtors have not paid the Creditors the retirement pension established in Act 81.

12.      Instead, the Debtor are paying instead to the Creditors the retirement pension established in the previous Act 3.

13.      On February 22nd, 2021, after failing to exhaust administrative remedies with the ERS, the Creditors filed a Complaint before the State Court seeking declaratory judgment, injunctive relief and a mandamus against the Debtors and the Debtors' respective officials. (See Exhibit A).

14.      On April 26th, 2021, the State Court issued a judgment staying the case due to the notice of stay of the proceedings pursuant to sections 362 (a) and 922 (a) of the Bankruptcy Code, as incorporated by reference under section 301 (a) of PROMESA.

15.      On September 21st, 2021, the Creditors sent their lift stay notice letter ("Lift Stay Notice Letter") pursuant to sub-section R of section 3 of the Fifteenth Amended Case Management Procedures in the PROMESA Title III case of *In re: The Financial Oversight and Management Board for Puerto Rico as representative of The Commonwealth of Puerto Rico, et al.,* No. 17 BK 3283-LTS ("Bankruptcy case"). The letter was sent in order to give notice to the Debtors in the

Bankruptcy Case that a Motion seeking relief of stay will be filed after fifteen (15) business days from the date of the Lift Stay Notice Letter if the meet and confer established in the case management procedures does not resolve the request herein.

16.     On October 14th, 2021, the Debtors declined to meet and confer as established in the case management procedures does not resolve the request herein.

17.     Therefore, the Creditors certify that they met and conferred with the Debtors regarding the requested relief.

## APPLICABLE LAW & LEGAL ARGUMENT

18.     The Takings Clause of the Fifth Amendment mandates that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This amendment is made applicable to the states, and thus to municipalities, through the Fourteenth Amendment. U.S. Const. amend. XIV; *Dolan DA v. City of Tigard*, 512 U.S. 374, 383 (1994); *Penn Cent. Transp. Co. v. City of N.Y.,* 438 U.S. 104, 122 (1978).

19.     The Supreme Court has explained that "because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 n.13 (1985). The Supreme Court further stated, "Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." *Id*. at 194 (citation omitted). "[T]he property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure [for seeking just compensation] and been denied . . . ." *Id*. at 195.

20.     Thus, a Takings Clause violation is defined by two elements: (1) the public taking

of private property, and (2) the subsequent denial of just compensation for that taking. See *Williamson*, 473 U.S. at 195 n.13.

21.     The Supreme Court has consistently held that bankruptcy laws are subject to the prohibition against governmental taking of private property without just compensation. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S. Ct. 854, 79 L. Ed. 1593 (1935), *Blanchette v. Connecticut General Insurance Corps*., 419 U.S. 102, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974).

22.     The Sixth Circuit Court of Appeals in the case of *Duncan v. Muzyn*, 833 F.3d 567 (6th Cir. 2016), states that a retirement benefit is constitutionally protected under the Takings Clause if said benefit has vested. In *Duncan*, the Sixth Circuit Court of Appeals addressed whether the Tennessee Valley Authority Retirement System ("TVARS") board violated the Takings Clause when it eliminated benefits from the pension plans. *833 F.3d at 570*. The Sixth Circuit Court of Appeals concluded that while "plaintiffs' claim [was] framed as a Takings claim, the analysis borrow[ed] principles from the Contract Clause context." *Id. at 583*. Additionally, we recognized that "[w]here a public contract is alleged to have been created by statute, however, a plaintiff may prove a contractual relationship only by showing that the legislature has unmistakably intended to create a binding contract right." *Id. at 583-84*. As a result, the Sixth Circuit Court of Appeals held that the plaintiffs were not deprived of a property right because certain benefits were not vested, and the plaintiffs had failed to show that TVARS unmistakably intended to create a binding contract right. *Id. at 584*.

23.     In this case, the Commonwealth unmistakably intended to create a binding contract right that vested immediately to any member of the Police who retired after August 3rd, 2020, when both the PR Legislature and the PR Executive approved and signed Act 81 on August 3rd, 2020, which took effect immediately.

5

24.     Once the Creditors retired after August 3ʳᵈ, 2020, the Creditors' property rights, that is the retirement pension, vested. As such, ERS had the obligation to pay the retirement pension under Act 80.

25.     However, ERS has not complied with its obligation to pay the retirement pension under Act 80.

26.     This action by the ERS is a violation of the Takings Clause because the Creditors retirement pension under Act 81 has been vested from the date of their retirement until present day.

27.     Instead, the Creditors have been deprived by the Debtors, whom have subsequently denied just compensation for the vested retirement pension under Act 81 from the date of their retirement until present day.

28.     On the other hand, the PR Executive's actions of not executing or implement the clear language and intent of Act 81, as expressed by the PR Legislature is also unconstitutional because it is violation of the separation of powers.

29.     In *Bond v. United States*, 564 U.S. 211 (2011), the Supreme Court explained that if the constitutional structure of our Government that protects individual liberty and property is compromised, individuals who suffer otherwise justiciable injury may object. *Id*. at 223. The Court explained that both federalism and separation-of-powers constraints in the Constitution serve to protect individual liberty and property, and a litigant in a proper case can invoke such constraints "[w]hen government acts in excess of its lawful powers." *Id*. at 220-24.

30.     In this case, the separation of powers under the Constitution is being violated by the PR Executive pursuant to the Appropriations Clause and the Execution of Laws Clause.

31.     The Appropriations Clause of the Constitution, states that "No Money shall be

drawn from the Treasury, but in Consequence of Appropriations made by Law. see U.S. Const. art. I, § 9, cl. 7.

32.     This "straightforward and explicit command . . . means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424, 110 S. Ct. 2465, 110 L. Ed. 2d 387 (1990) (citation omitted). "Money may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute." *Id*.

33.     The Appropriations Clause plays a critical role in the Constitution's separation of powers among the three branches of government and the checks and balances between them. "Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury." *Id*. at 425. The Clause has a "fundamental and comprehensive purpose . . . to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *Id*. at 427-28. Without it, "the executive would possess an unbounded power over the public purse of the nation; and might apply all its moneyed resources at his pleasure." *Id*. at 427 (quoting 2 Joseph Story, *Commentaries on the Constitution of the United States* § 1348 (3d ed. 1858)).

34.     The Execution of Laws Clause of the Clause of the Constitution, states that the Executive Branch "shall take Care that the Laws be faithfully executed", see U.S. Const. art. II, § 3.

35.     This Execution of Laws Clause states that the obligation of the PR Executive to see laws faithfully executed does not imply power to forbid their execution. *Kendall v. United States*, 37 U.S. 524 (1838), *Secretary v. McGarrahan,* 76 U.S. 298 (1869).

7

36.     In this case, the PR Legislature clearly intended to separate money for the payment of the retirement pensions under Act 81, pursuant to the Appropriations Clause of the Constitution. As such, any money that must be paid to the Creditors regarding their vested retirement pensions under Act 81 has been specifically appropriated by the PR Legislature.

37.     This is a critical role in the Constitution's separation of powers among the three branches of government and the checks and balances between them, because in turn, the PR Executive is now obligated to execute Act 81 pursuant to the Execution of Laws Clause of the Constitution. The PR Executive now must take Care that Act 81 is faithfully executed and must pay the Creditors their vested retirement pensions under Act 81, which has been specifically appropriated by the PR Legislature. The PR Executive cannot forbid said execution.

38.     In recent case of *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.,* 217 F. Supp. 3d 508, 517 (1st Cir. 2016), and in view of the fact that PROMESA does not define what constitutes cause for purposes of prevailing in a request for relief from the automatic stay, the First Circuit Court of Appeals established the governing standard for vacating the automatic stay "for cause" in the context of PROMESA. Specifically, the First Circuit held that, notwithstanding the actual necessity of the stay to address an imminent fiscal crisis, Congress anticipated that "certain circumstances might justify relief from the stay's significant and rigid effects. It therefore included a form of safety valve in section 405(e) of PROMESA to allow certain holders of liability claims against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" for doing so". (Emphasis Added).

39.     Section 362 (d)(1) of the Bankruptcy Code, 11 USC § 362(d)(1), states as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection

(a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

40.     In defining what constitutes "cause" for relief from the automatic stay in the context PROMESA, the First Circuit took into account the (i) judicial interpretations of the term within the context of section 362 of the United States Bankruptcy Code ("Code"), 11 USC § 3621, and also, (ii) additional considerations related to the particular circumstances of the PROMESA legal framework. The Court began by noting that section of the Code provides that courts may grant relief from the automatic stay to a party in interest for "cause", but the statute also fails to expressly define how the term must be construed and applied. 11 USC § 362(d) (1); *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.,* 217 F. Supp. 3d 508, 517 (1st Cir. 2016).

41.     In *Brigade Leveraged*, the First Circuit reiterated the discretionary nature of the decision to grant relief on a case-by-case basis. See *Claughton v. Mixton*, 33 F. 4, 5 (4th Cir. 1994) (noting that Congress "has granted broad discretion to bankruptcy courts to lift the automatic stay and the courts must determine when discretionary relief is appropriate on a case-by-case basis".) The Court established that "the process of evaluating whether there is sufficient "cause" to vacate the automatic stay requires the court to engage in an equitable, case-by-case balancing of the various harms at stake. *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.,* 217 F. Supp. 3d 508, 518 (1st Cir. 2016); See, e.g., *Peerless Ins. Co v. Rivera,* 208 B.R. 313, 315 (D.R.I. 1997) (suggesting that cause generally exists "when the harm that would result from the continuation of the stay would outweigh any harm that might be suffered be the debtor…if the stay is lifted."); *In re Turner*, 161 B.R. 1, 3 (Bankr. D. Me. 1993) ("Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm

the debtor."); *In re Harris*, 85 BR 858, 860 (Bankr. D. Colo. 1998) (holding that vacating the automatic stay is appropriate where "no great prejudice will result to the debtor" and the "hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay."). (Emphasis Added).

42.     In view of the foregoing, the First Circuit held that the Court's "ultimate task is to perform a careful balancing of the equities involved. It must assess the hardships realistically borne by plaintiffs if their requested relief is denied and determine whether those outweigh the harm likely to be visited upon the Commonwealth defendants if that relief is granted". *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.,* 217 F. Supp. 3d 508, 518-519 (1st Cir. 2016).

43.     Even though the First Circuit held that the PROMESA stay is interpreted according the case law arising under section 362 of the Code, it stated that "the concept of "cause" embraced by the Court for purposes of the PROMESA stay need not precisely mirror that adopted in the bankruptcy context". *Id* at 520.

44.     In the case of *In re City of Detroit*, 524 BR 147, the Bankruptcy Court agreed with the Attorney General of the United States in determining that in interest of avoiding a finding of unconstitutionality, the Bankruptcy Court should use its discretion under Section 944 (c) (1) of the Bankruptcy Code to order the non-dischargeability of Fifth Amendment Takings Clause claims. *Id*. at 306-307.

45.     Specifically, Section 944 (c) (1) of the Bankruptcy Code states that "the debtor is not discharged under subsection (b) of this section for any debt – (1) excepted from discharge by the plan or order confirming the plan" 11 USC sec. 944.

46.     The Bankruptcy Court should avoid interpreting a statute in a manner that would

render it clearly unconstitutional … if there is another reasonable interpretation available. *Edmond v. United States*, 520 US 651, 658 (1997).

47.    Therefore, if the Constitution requires a money damage award, pursuant to the Fifth Amended Takings Clause, the Bankruptcy Court should except the takings claims from Bankruptcy Proceedings. *In re City of Detroit*, *supra*. at 306-307.

48.    In this case, the Commonwealth unmistakably intended to create a binding contract right that vested immediately to any member of the Police who retired after August 3rd, 2020, when both the PR Legislature and the PR Executive approved and signed Act 81 on August 3rd, 2020, which took effect immediately.

49.    Once the Creditors retired after August 3rd, 2020, the Creditors' property rights, that is the retirement pension, vested. As such, ERS had the obligation to pay the retirement pension under Act 80.

50.    However, ERS has not complied with its obligation to pay the retirement pension under Act 80.

51.    This action by the ERS is a violation of the Takings Clause because the Creditors retirement pension under Act 81 has been vested from the date of their retirement until present day.

52.    Instead, the Creditors have been deprived by the Debtors, whom have subsequently denied just compensation for the vested retirement pension under Act 81 from the date of their retirement until present day.

53.    On the other hand, the PR Executive's actions of not executing or implement the clear language and intent of Act 81, as expressed by the PR Legislature is also unconstitutional because it is violation of the separation of powers under the Appropriations Clause and the

Execution of Laws Clause of the Constitution.

54.    This constitutional debt obligation originated from a clear intentional law that was passed by the PR Legislature, which should be implemented by the PR Executive.

55.    This constitutional debt cannot be discharged in the case at bar because the property rights vested after August 3rd, 2021 until present day.

56.    At this moment, the Creditors are suffering irreparable harm from the automatic stay.

57.    The Debtors' failure to execute Act 81 is a violation of the Takins Clause, causing irreparable damage to the Creditors.

58.    The Debtors will not be damaged by the lift of stay against the constitutionally protected right of the Creditors to receive just compensation for taking their vested property rights of the retirement pension of Act 81, from August 3rd, 2020 until present time.

59.    In fact, the lift of stay will allow the State Court to evaluate the evidence and decree and order to the PR Executive to execute the laws pursuant to the US Constitution and pay the just compensation for the private property that has been seized from August 3rd, 2020 until present time.

60.    In this case, the balance of harm clearly favors lifting the stay and allowing the Creditors to continue with their constitutional claim for their vested property rights under Act 81, so that the Debtors honor their constitutional obligations and not render the filing of the Title III petition invalid.

**WHEREFORE**, the Creditors respectfully requests that this Honorable Court (1) take notice of the foregoing, (2) after notice and hearing, enter Order vacating the automatic stay arising under PROMESA, (3) Order the Debtors to continue with its constitutional obligation to make

Creditors whole, and (4) grant any other further relief that may be deemed just and proper.

**NOTICE OF COMPLIANCE WITH CASE MANAGEMENT PROCEDURES**

**I HEREBY CERTIFY** that on this same date, I sent a copy through e-mail of the present Motion for Relief from Stay with the Attachments to the Counsel of the Oversight Board Hermann.Bauer@oneillborgers and Ubaldo.fernandez@oneillborges.com, and counsel for AAFAF dperez@omm.com, lmarini@mpmlawpr.com and cvelaz@mpmlawpr.com.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico, on this 23rd day of November, 2021.

> ***/S/VICTOR M. RIVERA-RIOS***
> VICTOR M. RIVERA-RIOS
> USDC BAR NUMBER 301202
> 1420 FERNANDEZ JUNCOS AVE
> SAN JUAN, PR 00909
> Telephone: (787) 727-5710
> Facsimile: (787) 268-1835
> E-Mail: victorriverarios@rcrtrblaw.com