# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| As representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEE'S RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY, | |
| Debtors. | |

**MOTION IN COMPLIANCE WITH ORDER**

Dated: November 24, 2021

**TO THE HONORABLE COURT:**

**COMES NOW** creditor Suiza Dairy Corp. ("Suiza"), through the undersigned counsel, files this Motion in Compliance with the Court's Order in in which it requested that Suiza provide additional information regarding its takings claim in relation with the Modified Eighth Amended Plan of Adjustment (the "Plan").

The Court requested that Suiza provide additional support for the basis of its constitutional takings claim based on the record of the underlying case. Suiza will first provide the basis of its claim in the Commonwealth's Title III reorganization case and then provide the basis of the claims in the judgments.

### *Suiza's Proof of Claim ("POC") has not been Objected*

Suiza timely filed a POC on May 22, 2018 in the amount of $48,485,151.22 which clearly stated that the basis for the claim was a "*Non-Dischargeable Regulatory Accrual Claim for U.S. Constitution Violations Involving Takings Clause*". See POC 1201-1, p. 3, ¶9. *No party has objected to the POC in any manner*.

It is black letter law that a claim is deemed allowed unless it is objected pursuant to §502(a)[1], made applicable to these proceedings by §301[2] of PROMESA.[3] A Debtor may not change the *nature* of a claim that was not objected to in the confirmation process.[4] It

---

[1] 11 U.S.C. §501 (a) provides in its pertinent part:
   "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."
[2] 48 U.S.C. §2161.
[3] *Varela v. Dynamic Brokers, Inc. (In re: Dynamics Brokers, Inc.)*, 293 B.R. 489 (9th Cir. B.A.P., 2003); *In re Farmers' Co-op of Arkansas & Oklahoma, Inc.*, 43 BR 619 (Bankr. WD Ark, 1984).
[4] *Varela*, supra at 492. ("*We conclude that the comprehensive chapter 11 statutory scheme defines the minimum due process for dealing with creditors, requires compliance with the claim objection procedures, and precludes using a chapter 11 plan provision as the means to reduce a claim that is "deemed allowed" without the creditor's consent.*")

1

would be inconsistent with the requirements of due process to allow the Debtor to impair the claim without the protections and safeguards of the objection process.[5] This is especially pertinent in the case of Suiza, who has a claim for a regulatory taking. Because the POC has not been objected to, Suiza was not required to bring forth additional evidence as to the constitutional nature of the claim as a regulatory taking. If the Court intends to enter into the nature of the Claim, Suiza must be allowed an evidentiary hearing to confront the FOMB's allegations and to provide evidence of the nature of the regulatory taking.

Thus, Suiza's claim has been deemed allowed as a *Non-Dischargeable Constitutional* claim based on a *Violation of the Takings Clause*. See POC, 1201-1. As such, the Plan of Adjustment may not change the nature of the claim simply because the Board does not agree with the basis of the claim. If the Court rules that takings claims are not dischargeable, Suiza's claim must be allowed in full and be declared non-dischargeable. The FOMB's statement that it is based on a settlement or is contractual in nature is incorrect. As we shall see herein-under, the Settlement Agreement was made part of a Judgment. But more importantly, it is moot considering that Suiza's claim was not objected and is deemed allowed as a claim based on a "*Violation of the Takings Clause*". Id.

---

[5] Id. ("Significantly, there is no rule that authorizes an objection to claim to be litigated in chapter 11 plan confirmation proceedings without complying with Rule 3007. Nor would it make sense to do so in light of the fact that a plan confirmation is a collective proceeding while a claim objection is typically a two-party dispute. Not only is it more difficult for a creditor to litigate against the entire collective body of other creditors and owners in a plan confirmation proceeding, but the evidence relevant to a plan confirmation is so different from the evidence relevant to a claim objection that the two proceedings simply do not form a convenient trial unit.").

This is critical, because as the Supreme Court stated in <u>Knick v. Township of Scott</u>, the taking occurred at the moment the Commonwealth effectuated the regulatory taking.[6] ***It is not a judgment which gives Suiza the right to just compensation, but the regulatory <u>taking</u> itself***. <u>Id</u>. The judgments in District Court simply proclaim that the taking occurred and require that the just compensation be granted. In other words, the Judgments do not give rise to the takings claim, they simply validate it. At worst, due process requires that Suiza be allowed to present the evidence of the regulatory taking in a claim objection procedure, not in the confirmation of the Plan of Adjustment. <u>Varela</u>, *supra*.

As such, the Court should deem that Suiza's claim is allowed based on a regulatory taking that already occurred, for which Suiza is entitled to just compensation as of the date of the taking. The Court should also rule that the claim is non-dischargeable.

That should end the analysis, but we will expand, as requested by the Court, into what orders and/or judgments evidence Suiza's takings claims.

### *<u>The Takings Record</u>*

Notwithstanding the above, the District Court held on multiple occasions that a regulatory taking had occurred. Furthermore, the Court of Appeals for the First Circuit then confirmed the holdings of the District Court. Lets examine.

---

[6] <u>Knick v. Township of Scott</u>, 139 S.Ct. 2162, 2167 (2019) ("*Because of the self-executing character of the Takings Clause with respect to compensation, a property owner has a constitutional claim for just compensation at the time of the taking. The government's post taking actions […] cannot nullify the property owner's existing Fifth Amendment right: "Where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation."*" (quoting, <u>First English Evangelical Lutheran Church of Glendale v. County of Los Angeles</u>, 482 U. S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987)).

3

In 2003, Suiza filed a complaint in the Federal District Court alleging violation of the Fifth Amendment on account of a Regulatory Taking by the Commonwealth through one of its instrumentalities the Office of the Milk Industry Regulatory Administration ("ORIL" by its Spanish acronym). As part of the proceedings, the District Court held fifty-one (51) evidentiary hearings to establish whether "*ORIL's regulatory structure, which precluded [Suiza] from making a reasonable profit in their milk business, constituted a confiscation of property in violation of the Takings Clause.*"[7]

As a result of the evidentiary hearings, the District Court held that "*the current milk price scheme **clearly represents a taking of property** for the milk processors by not allowing them to recover their true costs and the allowance of a fair profit.*"[8] *[Emphasis added].* The District Court was emphatic in finding that the regulation was a taking of Suiza's property.[9]

---

[7] *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir., 2009), attached for the Court's convenience as **Exhibit 1**.

[8] See **Exhibit 2** - Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007, at p. 77.

[9] See **Exhibit 2** - Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007,

at p. 74-75 ("*The Court finds that ORIL has failed to follow these principles and has intentionally squeezed plaintiffs between the cap of a fixed regulated price and an irrational high price for raw milk. ORIL has intentionally issued this administrative measure in order to protect Indulac in the competition with the local fresh milk industry and the continental importers. The evidence shows, from admissions of the farmers, that ORIL's price fixing scheme is designed to fulfill these goals. Based upon the expense statistics for the year 2003, and even before adjusting the same downwards, ORIL was acting in a regulatory defective way.*");

at p. 75 ("*The taking of property may also be triggered by ORIL's lack of announced known regulatory standards, which allows ORIL to switch back and forth freely on the methodology used to make different adjustments at will so as to bring the cost of the milk processors down.*");

at p. 90 ("*[T]he Court has already found unconstitutional the regulation granting Indulac the privilege of purchasing raw milk at below cost process of the dairy farmers based on the fact that Indulac is using said benefit to give a competitive edge over the fresh milk processors, and the farmers are also using said regulatory scheme to attempt to purchase the two processing plants at a bargain price.*").

4

This ruling was appealed to the First Circuit, who in turn confirmed the ruling that a regulatory taking had been effectuated.[10] A subsequent order denying a rehearing once again confirmed that a taking had occurred.[11] *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 600 F.3d 1, 2 (1st Cir., 2010) ("In its opinion and order, the district court found that Plaintiffs had shown a likelihood of success on the merits of their claim that ORIL put into place an arbitrary and discriminatory regulatory scheme that violated the Due Process, Equal Protection and Takings clauses of the United States Constitution."). Id.

After the appeals confirming the Opinion and Order ran their course, the District Court held additional hearings on the case. On January 3, 2011, the District Court issued an Opinion and Order in which it stressed that it had "*found due process and equal protection violations as to the establishment by the Administrator of a reasonable rate of return charged by the milk processors to the public through an infirm process, reaching a level of a "taking." "We think, therefore, that the issue of inadequacy of the rates here is best addressed under the Takings Clause.""* (quoting *Tenoco Oil Co., Inc. v. Department of Consumer Affairs*, 876 F.2d 1013, 1022 (1st Cir. 1989)).[12]

---

[10] *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 484 (1st Cir., 2009), attached for the Court's convenience as **Exhibit 1**. ("*Given the ample evidence of arbitrary and discriminatory regulation, we see no abuse of discretion in the court's determination that plaintiffs have demonstrated a likelihood of success on the claim **that defendants' actions constituted a regulatory taking of their property** without due process*.") [Emphasis added].

[11] *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 600 F.3d 1, 6 (1st Cir., 2010), attached for the Court's convenience as **Exhibit 3** ("*On July 13, 2007, the federal district court of Puerto Rico held that since 2003, ORIL's price scheme had been violating the Due Process Clause, the Equal Protection Clause, the dormant Commerce Clause, and the Takings Clause of the United States Constitution.*")

[12] See **Exhibit 4** – Opinion and Order at Dkt. 1804 of case Num. 04-1840, January 3, 2011 at p.2. The Court goes on to list a few of the parameters it used to find the regulatory taking: "The court shall not once again enumerate all the factors which lead to its conclusion. Amongst others, however, the court found lack of parameters being used, changes in parameters without any reasoning, elimination of parameters without notice, lack of equal treatment in the application of parameters, the application of new parameters at a whim, the sudden elimination of traditional parameters and the reiterated use of stale outdated parameters." Id.

5

On September 23, 2013, the District Court once again addressed the issue and entered an Amended Opinion and Order Nun Pro Tunc in which it once more held that "*[t]he price of raw milk reached in fact the threshold of a 'taking'*".[13] The Court then held that it "*vehemently disagreed with [the Government]'s position, and held that the raw milk price constituted a 'taking' banned by the United States Constitution.*"[14]

All this eventually led to a Settlement Agreement that was signed on October 29, 2013.[15] Among other remedies, the Settlement Agreement provided for a regulatory accrual in an amount of $123,389,024 for Suiza Dairy and $47,250,614 for Vaquerias Tres Monjitas, totaling $170,639,638.[16] Of said amount, the Commonwealth, through its instrumentalities, would pay the Suiza and Vaquerias Tres Monjitas $95,000,000.00 as part of "*the **regulatory accrual** payout*".[17]

By agreement of the parties, this regulatory accrual included a payment to be made to Suiza by the Commonwealth.[18] The Settlement Agreement, by its own terms[19], was then incorporated into a Judgment on November 6, 2013.[20] Part of the regulatory accrual assumed by the Commonwealth is still outstanding and is the basis for Suiza's POC.

---

[13] See **Exhibit 5** – Amended Opinion and Order at Dkt. 2289 of case Num. 04-1840, September 23, 2013 at p.22.
[14] See **Exhibit 5** – Amended Opinion and Order at Dkt. 2289 of case Num. 04-1840, September 23, 2013 at p.24.
[15] See **Exhibit 6** – Settlement Agreement at Dkt. 2322 of case Num. 04-1840, October 29, 2013.
[16] See **Exhibit 6** – Settlement Agreement at Dkt. 2322 of case Num. 04-1840, October 29, 2013, at p. 3, ¶8.
[17] See **Exhibit 6** – Settlement Agreement at Dkt. 2322 of case Num. 04-1840, October 29, 2013, at p. 4, ¶14.
[18] See **Exhibit 6** – Settlement Agreement at Dkt. 2322 of case Num. 04-1840, October 29, 2013, at p. 4, ¶14.
[19] See **Exhibit 6** – Settlement Agreement at Dkt. 2322 of case Num. 04-1840, October 29, 2013, at p. 5, ¶18 ("*The terms and conditions of this settlement will be incorporated into the firm, final and unappealable judgment to be issued by the District Court. That Judgment will be equally binding to and enforceable against all signatories of this Agreement and the Government of Puerto Rico. All such parties hereby waive any defense they may have to the enforcement of this Agreement.*").
[20] See **Exhibit 7** – Opinion and Judgment at Dkt. 2347 of case Num. 04-1840, November 6, 2013 at p.1, ¶1 ("*All the covenants of the Settlement Agreement executed on October 29, 2013 are incorporated herein*").

Following the approval of the Settlement, an additional appeal ensued. The Court of Appeals for the First Circuit specifically held that, as part of the Settlement Agreement, the "*the government agreed to contribute funds over four years to Suiza and VTM <u>as part of a regulatory accrual mechanism designed to allow the processors to recoup a fair rate of return on their products</u>.*"[21] [Emphasis added] "*[T]he Agreement provided for public funds to be paid to the milk processors as part of the Settlement's regulatory solution.*"[22]

### <u>*The Nature of the Regulatory Accrual*</u>

A regulatory accrual is one of the accepted remedies for a regulatory taking and the one mandated by the District Court in the present case.[23] A regulatory accrual rebuilds a regulated company's capital by amortizing the losses incurred, including allowed profit, over time.[24] An allowed return for regulated companies could not only be calculated on assets or investments but also on equity.[25] In the specific case of the milk industry in Puerto Rico, a mathematical proof showing that using equity is equivalent to use assets or investments was included in an expert report in a price review.[26] In simple terms, the regulatory accrual is necessary to restore the equity lost by the regulated entity, restore its capital and calculate a proper rate of return.

---

[21] <u>Vaqueria Tres Monjitas, Inc. v. Irizarry</u>, 748 F.3d 21, 23 (1st Cir., 2014), attached for the Court's convenience as **Exhibit 8.**
[22] <u>Id</u>, at 25.
[23] See **Exhibit 2** - Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007, at p. 94 ("*The Administrator is to <u>establish a system or incorporate a system or provide for mitigation for **regulator accrual**</u> for losses properly supported that occur between periods of yearly reviews*.") *[Emphasis added]*
[24] Leonardo Giacchino, Ph.D., and Jonathan Lesser, Ph.D., *Fundamentals of Energy Regulation*, Third Edition, Public Utilities Reports, Inc., 2019, pp. 163-165.
[25] Giacchino, Leonardo; and Lesser, Jonathan (2011): "Principles of Utility Corporate Finance," PUR, pp. 102- 103.
[26] For the mathematical explanation, see: Freyre, Jorge; and Giacchino, Leonardo (2005): "Calculation of the Regulated Margin for Fresh Milk Processing Plants in Puerto Rico" – **Exhibit 9**.

7

The regulatory accrual is an integral part of the Settlement Agreement and Judgment that compensates Suiza for the losses it suffered. Therefore, it follows from the specific inclusion of the regulatory accrual in the Settlement Agreement that the regulatory taking occurred. The regulatory taking would then be compensated through the agreed upon regulatory accrual scheme as was mandated in District Court.[27]

### *Conclusion*

In sum, it should be clear that a regulatory taking occurred and an agreement for repayment of the taking was reached. In accordance with *Knick*, the taking occurred at the time that the taking was effectuated.[28] In the case of Suiza, the regulatory taking occurred between the years of 2003 and 2013. No court needs to actually proclaim that the taking occurred. "*[T]he self-executing character of the Takings Clause*" gives rise to Suiza's constitutional claim.[29] The Settlement Agreement became a Judgment, entered as a remedy for the, unconstitutional, regulatory taking. Suiza's Proof of Claim is *prima facie* evidence of the debt. If the FOMB understood that Suiza's claim was not based on a regulatory taking, it could have objected to the claim to dispute the basis of the same. Notwithstanding, and as discussed above, the District Court and the First Circuit Court of Appeals specifically and emphatically held that a regulatory taking had occurred.

**WHEREFORE**, Suiza Dairy, Inc. most respectfully prays that the court DENY approval of the Modified Eighth Amended Plan of Adjustment as filed, absent an amendment to the same by the Commonwealth classifying Suiza's claim as a non-

---

[27] See **Exhibit 2** - Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007, at p. 94.
[28] *Knick v. Township of Scott*, *supra*.
[29] Id.

8

dischargeable claim subject to a 100% distribution under the Plan, and surviving these proceedings.

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that this motion was electronically filed with the Court using the CM/ECF system which will notify the filing by electronic means to all parties of record.

By: */s/* *Rafael A. Gonzalez Valiente*
USDC NO. 225209
Counsel for Suiza Dairy
Godreau & Gonzalez Law, LLC
PO Box 9024176
San Juan, PR 00902-4176
Telephone: 787-726-0077
*rgv@g-glawpr.com*

9