UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

                        Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

Case No. 17 BK 3283-LTS

(Jointly Administered)

# OBJECTION OF INTERNATIONAL UNION, UAW AND SERVICE EMPLOYEES INTERNATIONAL UNION TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) ("UAW") and Service Employees International Union ("SEIU") object as follows to the November 28, 2021 *[Proposed] Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico* ("Proposed Findings") [Docket Entry #19,366,

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

9765826.5

at Exhibit A] filed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board").[2]

1. UAW and SEIU are labor unions whose memberships include thousands of employees of the Commonwealth of Puerto Rico ("Commonwealth") or its instrumentalities. The memberships of UAW and SEIU include participants in the Commonwealth's Employees Retirement System ("ERS").[3]

2. UAW and SEIU object first to the statements in the Proposed Findings that service of the disclosure statement and publication of the confirmation hearing notice provided due process to all parties in interest and that no other or further notice is required. *See* Proposed Findings ¶¶115-16; *see also id.* ¶104. As UAW and SEIU explained both in their written objections and during confirmation hearing oral argument, the Oversight Board never served ERS participants with *any* notice of the ten-year restriction on increases to their DB pension payments (hereafter, "the DB Increase Restriction") now contained in paragraph 62 of the November 28, 2021 proposed *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et. al.* ("Confirmation Order") [Docket Entry #19,368, at Exhibit A] and in Section 83.4 of the November 28, 2021

---

[2] SEIU is a member of the Official Committee of Unsecured Creditors ("Committee"). SEIU submits this objection in its individual capacity and not in its capacity as a Committee member, nor in any way on behalf of the Committee.

[3] UAW has over 400,000 active members in North America. The approximately 5,000 UAW members employed by the Commonwealth or its instrumentalities belong to eight local UAW chapters. The two largest are UAW Local 2396, which represents school cafeteria workers, and UAW Local 2373, which represents employees of the Commonwealth's Treasury Department. A significant portion of UAW's members have earned and accrued defined benefit ("DB") pension benefits through and under ERS.

SEIU represents approximately two million service workers throughout North America. SEIU members employed by the Commonwealth belong to one of two SEIU local chapters: SEIU Local 1996/Sindicato Puertoriqueno de Trabajadores y Trabajadoras and SEIU Local 1199/Union General de Trabajadores. Approximately 18,000 SEIU members are employed by the Commonwealth or its instrumentalities. A significant portion of SEIU's members have earned and accrued DB pension benefits through and under ERS.

*Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* ("Plan") [Docket Entry #19,365].  The DB Increase Restriction materially and adversely affects those ERS participants who have been participants since before 2000 and who thus have, and will continue to have, accrued DB pension benefits.  The DB Increase Restriction affects them by restricting the Commonwealth's ability over the next decade to increase their pension payments, whether through a change to the DB payment formula or other means.  By failing to serve these ERS participants with notice of the DB Increase Restriction, the Oversight Board has violated their due process rights.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (due process requires notice "reasonably calculated" to apprise interested parties); *In re Puchi Properties, Inc.*, 601 B.R. 677, 684 (Bankr. D. Ariz. 2019) ("The relevant inquiry … is what notice the plan proponent provided the affected party, not what the affected party actually knew.")

    3.  The Oversight Board took the position that the findings it sought at the confirmation hearing regarding Act 53-2021 should be served directly on TRS and JRS participants, giving them notice and an opportunity to be heard, because those proposed findings would have an adverse impact on them.  *See* Nov. 1, 2021 *Urgent Motion of the Financial Oversight and Management Board for Puerto Rico for Order (I) Approving Form of Notice of Rulings the Oversight Board Requests at Confirmation Hearing Regarding Act 53-2021 and (II) Scheduling Objection Deadline* [Docket Entry #19,002] at ¶¶8-9 & n.5.  Because the proposed DB Increase Restriction would adversely impact ERS participants, they were no less entitled to notice and an opportunity to be heard regarding that matter.

    4.  UAW and SEIU also object to the statement in the Proposed Findings that Plan modifications made since the July 30, 2021 seventh amended version of the Plan do not

3

materially and adversely change the treatment of creditors. *See* Proposed Findings ¶195. The DB Increase Restriction, which materially and adversely affects ERS participants, was inserted in the Plan on November 21, 2021, *see* Docket Entry #9,763,353, at §83.4, well after the seventh amended version of the Plan.

5. We also object to the Proposed Findings' statement that none of the Plan modifications made after the October 18, 2021 voting deadline adversely changed the treatment of the claims of any creditors who had accepted the Plan. *See* Proposed Findings ¶192. The "below-threshold" ERS retirees in Class 51A were deemed unimpaired and thus deemed to accept the Plan. *See* July 30, 2021 *Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, Docket Entry #17,628, at 62-64. The DB Increase Restriction, inserted into the Plan on November 21, came well after the voting deadline and adversely affected those in Class 51A.

6. UAW and SEIU also object to the assertion in the Proposed Findings that the DB Increase Restriction is necessary for the implementation and feasibility of the Plan. *See* Proposed Findings ¶¶81, 165. Far from necessary, the DB Increase Restriction is an after-thought, a last-minute overreach added to the Plan following at least eight prior Plan revisions over a period of more than two years. *See* Proposed Findings ¶19.

7. During the unknown period over the next ten years that the Oversight Board remains in existence, the DB Increase Restriction would prohibit *any* increase in the DB pension payments to ERS participants, even modest increases that would have no material impact on the Commonwealth's finances. *See* Plan §83.4; Confirmation Order ¶62.

8. The feasibility of the Plan does not depend on banning any such increases. For example, the Oversight Board contends that elimination of the Monthly Benefit Modification

4

will not "materially impact the feasibility" of the Plan, even though it estimates the price tag for that item to be about $1.9 billion. Nov. 3, 2021 *Supplemental Declaration of Gaurav Malhotra* [Docket Entry #19,057] at ¶10. The Oversight Board would have no basis to contend -- and the Court would have no basis to find -- that a cost increase of a lesser amount, from a future adjustment in DB pensions payments, would undermine the Plan.

9. Even after the Oversight Board terminates, the DB Increase Restriction would continue to ban increases to DB pension payments that have no material impact on the Commonwealth's finances, unless the Governor and Legislature could persuade the Court that the proposed increase satisfied each of the six ill-defined criteria set out in Plan §83.4 and Confirmation Order ¶62, including that there was a "need" for the increase. A modest increase in DB pension payments would improve the life circumstances of ERS participants and also, through the multiplier effect, generate economic activity on the Island. *See* Proposed Findings ¶122. But there would be no apparent way to prove the "need" for such an increase. Thus the "need" criterion would effectively ban even modest DB payment increases.

10. The Oversight Board cannot prove that the DB Increase Restriction is necessary to the Plan for the additional reason that it cannot prove that the Commonwealth will in the future seek to implement *any* increases in the DB pension payments of ERS participants. Moreover, if the Commonwealth sought to implement such an increase, and the Oversight Board deemed the increase to be excessive, the Oversight Board would have ready means to block the increase, by bringing an expedited action under PROMESA Section 108 or 204. *See, e.g., In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 511 F.Supp.3d 90, 127-28 (D.P.R. 2020) (Swain, J.) (barring implementation of Commonwealth law deemed by the Oversight Board to involve significant expenditures not provided for in the fiscal plan).

11. It is possible the Oversight Board might terminate during the ten-year term of the DB Increase Restriction. But that could only occur if the Oversight Board certified that the Commonwealth satisfied the termination criteria set forth in PROMESA Section 209, namely, that the Commonwealth's fiscal health was such that it enjoyed adequate access to credit markets and had an established four-year track record of staying within its budgets. *See* 48 U.S.C. §2149. After the Commonwealth had attained that level of financial health, it is unlikely that an increase in DB pension payments would throw it off course. In any event, the Oversight Board cannot prove that it would, and thus cannot meet its burden of showing the necessity of the DB Increase Restriction.

12. UAW and SEIU also object to the statement in the Proposed Findings that PROMESA preempts Act 80-2020. *See* Proposed Findings ¶145. The Oversight Board never served ERS participants with notice that the Plan's list of preempted statutes would include Act 80, thus denying them due process. Moreover, the Oversight Board fails to demonstrate how PROMESA preempts Act 80 in its entirety. For example, Act 80 would apply to ERS participants employed by non-debtor entities like the private-sector credit union AEELA.

13. Finally, SEIU objects to the assertions in the Proposed Findings that the Plan is feasible with respect to the Commonwealth. *See* Proposed Findings ¶169. As SEIU explained in its October 15, 2021 objection, *see* Docket Entry #18,511, the Plan's excessive generosity toward financial creditors would leave the Commonwealth with an unaffordable debt burden. *See* Docket Entry #18,511 at ¶¶23-26.

December 1, 2021

      **COHEN, WEISS AND SIMON LLP**

By: /s/ *Peter D. DeChiara*
Richard M. Seltzer *(pro hac vice)*
Peter D. DeChiara (*pro hac vice*)
Marie B. Hahn *(pro hac vice)*
rseltzer@cwsny.com
pdechiara@cwsny.com
mhahn@cwsny.com
900 Third Avenue, Suite 2100
New York, NY 10022-4869
(212) 563-4100

**MONSERRATE SIMONET & GIERBOLINI**
/s/ *Miguel Simonet Sierra*
Miguel Simonet Sierra
USDC # 210101
101 San Patricio Ave., Suite 1120
Guaynabo, PR 00968
Tel.: (787) 620-5300

*Counsel to International Union, UAW and Service Employees International Union*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of December 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will notify all counsel of record.

/s/ *Peter D. DeChiara*
Peter D. DeChiara