# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUBLIC BUILDINGS AUTHORITY<br><br>*Debtors*[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283 – LTS<br>(Jointly Administered) |

**CREDIT UNION'S JOINT OBJECTION TO THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN CONNECTION WITH CONFIRMATION OF THE MODIFIED EIGHTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL.**

**TO THE HONORABLE COURT**:

COME NOW, Cooperativa de Ahorro y Crédito Abraham Rosa, Cooperativa de Ahorro y Crédito de Ciales, Cooperativa de Ahorro y Crédito de Rincón, Cooperativa de Ahorro y Crédito Vega Alta, Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandía, and Cooperativa de Ahorro y Crédito de Juana Díaz, through the undersigned attorneys, (hereinafter, "the Objectors", "the Credit Unions" or "the Cooperatives") and hereby file this joint objection (the "Objection") to the

---

[1] The Debtors in these Title III Cases, along with each debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of federal Tax ID: 3481); (ii) Puerto Rico Sales tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

Proposed Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Docket No. 19366] as submitted by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or the "FOMB") as representative of the Commonwealth of Puerto Rico.

**I.  PRELIMINARY STATEMENT**

1. The Objectors herein are several state-chartered Credit Unions who are part of a financial cooperative system in Puerto Rico comprised of 116 Cooperatives and encompassing around 1.3 million members and depositors, the majority of whom are vulnerable populations, mainly middle and low- income savers and elderly persons. As State Chartered cooperatives, the Credit Unions herein have a special nature, tinged with a high public interest. On one hand, they are regulated, supervised and insured by COSSEC a Public Corporation created by Commonwealth's Law. On the other hand, they are depository institutions, primary lenders and providers of cost-effective financial services to a multitude of people in the Island, including, but not limited to, medium and small-sized businesses, many of whom are mom-and-pop shops.

2. The Credit Unions play a vital role in the Puerto Rico economy, particularly now that the Puerto Rico financial sector has been reduced to three (3) local commercial banks.

3. The Credit Unions' claims against the Commonwealth are based on the U.S. Constitution, particularly on the Takings Clause of the Fifth Amendment. The Commonwealth and several of its instrumentalities incurred in a direct and regulatory taking of the Credit Unions' assets without just compensation.

4. The constitutional nature of the claims filed by the Credit Unions in adversary proceedings 18-00028 and 19-00389 makes them not subject to discharge, reduction or

2

compromise under a Plan of Adjustment, especially because the legal and factual issues presented in the cases have not been adjudicated yet by the Honorable Court. See Docket No. 18594.

5. After the hearings on Confirmation of the Plan of Adjustment concluded, on November 28, 2021 the Oversight Board filed its proposed findings of fact and conclusions of law in connection with confirmation of the modified eight amended title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico ("the proposed Findings of Facts and Conclusions of Law"). Docket No. 19366.

6. The Credit Unions herein present their objections to the proposed Findings of Facts and Conclusions of Law as follows.

## II. OBJECTIONS TO THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. General Objection and Objection Concerning the Need for a Reasoned Judicial Decision

First, in order to avoid being repetitive, the Credit Unions respectfully adopt by reference as fully set forth herein the arguments submitted in their Objection to the Seventh Plan of Adjustment of the Commonwealth of Puerto Rico [Docket No. 18594] and those posited in their Objection to the Revised Eight Amended Plan of Adjustment and Revised Proposed Order and Judgment Confirming the Modified Eight Amended Title III Joint Plan of Adjustment [Docket No. 19221] as a general objection, and to submit in particular that the Proposed Findings of Fact and Conclusions of Law contained in paragraphs 140 to 144 of Docket No. 19366 are legally erroneous and should be stricken.

Moreover, the Credit Unions generally object the proposed Findings of Fact and Conclusions of Law submitted by the Oversight Board because they are completely self-serving and one-sided and do not address the serious constitutional claims that the Credit Unions raised

3

in their objection to the confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico.

In view of the lobsided nature of the Oversight Board's proposal, the Credit Unions are compelled to remind the Court that "[j]udicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust." Rita v. United States, 551 U.S. 338, 356 (2007). Accord Gutierrez v. Johnson & Johnson, 743 F. Supp. 2d 418, 423 (D.N.J. 2010) ("A judicial decision should be a reasoned decision; it should provide a public statement of the underlying reasons in order to ensure that the public retains confidence in the judicial system.").

As the Third Circuit Court of Appeals aptly explained in *United States v. Azcona-Polanco*, 865 F.3d 148, 153 (3d Cir. 2017):

> A district court's explanation serves, *inter alia*, three substantive ends. First, an adequate explanation promotes the perception of fair sentencing. As the Supreme Court has observed, judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust. Second, an adequate explanation is necessary for our Court to conduct meaningful appellate review for substantive reasonableness. Third, procedural requirements, including an adequate explanation, exist to guide the district court's exercise of discretion. (Cleaned-up.)

The Credit Unions respectfully posit that the public trust in the judicial system would be betrayed if the Court were to adopt the findings proposed by the Oversight Board since they are devoid of any indication that the Court gave reasoned consideration to the Credit Union's constitutional objections to the confirmation of the plan of adjustment.

Just as a district court may not "rubber stamp" a magistrate's findings and recommendations, English v. Local Union No. 46, 654 F.2d 473, 478 (7th Cir. 1981), it cannot

4

blindly adopt the findings proposed by the Oversight Board since they clearly lack a scrutinized analysis of the Credit Union's constitutional challenges. See In re Bonham, 226 B.R. 56, 60 n. 1 (Bankr. D. Alaska 1998), subsequently aff'd, 229 F.3d 750 (9th Cir. 2000) (cautioning that "a trial court should not blindly rubber stamp the findings proposed by the prevailing party."); and Photo Elecs. Corp. v. England, 581 F.2d 772, 777 (9th Cir. 1978) (noting that "[w]holesale adoption of the prevailing party's proposed findings … does raise the possibility that there was insufficient independent evaluation of the evidence and may cause the losing party to believe that his position has not been given the consideration it deserves.").

In sum, the decision that the Court has been called to make is far too important for the Credit Unions, in particular, and the People of Puerto Rico, in general, to be taken premised on the deficient findings proposed by the Oversight Board. The public's trust in the judiciary demands much more.

### B. Essentiality of COSSEC's Role as Deposit and Share Insurer and the Overbroadness of the FOMB's Interpretation of Section 4 of PROMESA

The Credit Unions further object the proposed Findings of Facts and Conclusions of Law submitted by the Oversight Board because they are improper, insufficient, and inadequate. The Oversight Board again intends to obtain a summary adjudication of the issues raised in the Credit Unions' Objection to Confirmation of the Plan filed at Docket No. 18594, in their Objection to the Revised Eighth Amended Tittle III Plan of Adjustment and to the Revised Proposed Order and Judgment Confirming the Plan filed at Docket No. 19221, in the Adversary Proceeding 18-00028 and in Adversary Proceeding 19-00389, more particularly the constitutional violations and claims of the Credit Unions. The specific issues and arguments made under such filings and under AP18-00028 and AP19-00389 are all hereby incorporated by reference into this objection.

5

By such proposed Findings of Facts and Conclusions of Law, the Oversight Board is disregarding the government's responsibilities to ensure that the deposits and savings of more than 1.3 million of residents of Puerto Rico are insured by the public insurance of cooperative shares and deposits provided by COSSEC. Such intentions are inconsistent with the Oversight Board's own statements, specifically recognizing and acknowledging COSSEC's responsibilities, as an instrumentality of the Commonwealth, including "*providing shares and deposit insurance for savings and loans cooperatives*" and "*ensuring economic solvency of cooperatives, particularly credit and savings cooperatives.*"[2] Moreover, the Oversight Board has stated that *"[u]nder these guiding principles,* **it is part of COSSEC's mandate to guarantee the economic stability** *and soundness of the Puerto Rico cooperatives and, consequently, to protect members and their deposits.*"[3] To ensure such stability, the Oversight Board demanded from the Commonwealth that *"[a]s part of its routine contingency planning"*, the government had to submit, "*within 60 days of certification of this [COSSEC's] 2021 Fiscal Plan*", "*a plan showing how it would ensure adequate funding for COSSEC*" with "**actual sources of adequate funding**".[4]

The Oversight Board's statements acknowledge that similar essential and public services should be protected. In paragraph 58 of the proposed Findings of Facts and Conclusions of Law, the Oversight Board provides the grounds for a separate classification and treatment of the claims held by large dairy producers. As stated therein, *"[t]he dairy industry also is one of the Commonwealth's largest agricultural industries and employs a significant number of Puerto Rico's residents. It is reasonable and justified to separately classify such Claims and provide such*

---

[2] *See* page 12 of the fiscal plan adopted and certified by the FOMB for COSSEC on June 29, 2020 and page 14 of the of the fiscal plan adopted and certified by the FOMB for COSSEC on May 27, 2021.

[3] *See* page 12 of the fiscal plan adopted and certified by the FOMB for COSSEC on June 29, 2020 and page 15 of the of the fiscal plan adopted and certified by the FOMB for COSSEC on May 27, 2021.

[4] *See* page 33 of the of the fiscal plan adopted and certified by the FOMB for COSSEC on May 27, 2021.

6

*Class with a fifty percent (50%) recovery, ensuring that such <u>integral</u> Claimants **<u>do not suffer further financial hardship and impair an industry vital</u>** to the health of the Commonwealth's citizens.*" The Oversight Board also grants a separate treatment and classification in the Plan of Adjustment to retiree claims as it considers them, as stated in paragraph 56 of the proposed Findings of Facts and Conclusions of Law, "*essential public services under Article II, section 18 of the Puerto Rico Constitution.*" These premises, as per the Oversight Board's statements in COSSEC's certified fiscal plan, apply in the same manner and in the same extent to the Credit Unions' claims.

Although such acknowledgments and demands have been made by the Oversight Board, in paragraph 145 of the proposed Findings of Facts and Conclusions of Law, the Oversight Board reiterates its self-serving interpretation of Section 4 of PROMESA that, if validated or adopted by this Honorable Court, would set the path to void the government's obligation to safeguard the public insurance provided by COSSEC, as required by law. Moreover, with such findings the Oversight Board continues to seek to collaterally and surreptitiously obtain a summary adjudication of all claims and objections made by the Credit Unions by asking this Court to validate an overbroad and premature finding of preemption. <u>See</u> paragraph 145 of the proposed Findings of Facts and Conclusions of Law. The all-encompassing and anticipatory preemption finding sought by the Oversight Board is improper. We hereby restate the Credit Union's arguments against preemption of valid Commonwealth laws raised in Adversary Proceeding 19-00389, and in the Objection to the Revised Eighth Amended Title III Joint Plan of Adjustment and to the Revised Proposed Order and Judgment filed at Docket No. 19221

### C. The Proposed Findings and Conclusions of Law Submitted by the Oversight Board Lack Factual/Law Determinations as to the Feasibility of the Commonwealth's Plan of Adjustment, Even Considering the Allowance of the Takings Claims in Full

As previously stated, and argued before this Honorable Court, the Credit Unions' claims against the Commonwealth are based on the U.S. Constitution, particularly on the Takings Clause of the Fifth Amendment. Like several other claimants in this case, the Credit Unions´ claims are based on the enforcement of their Constitutional rights for the government's taking of their property without just compensation.

The particular facts and situation giving rise to the credit union takings clause claims were included in detail in the causes of action of adversary proceedings 18-00028 and 19-00389 pending to be adjudicated, and also in each of the credit unions proof of claims that were filed in the Commonwealth's case, which total approximately $95 million, were not objected by the Title III debtors, and thus are considered allowed in the instant proceedings.

Their claims are also a constitutional challenge to PROMESA and /or to the Bankruptcy Code, as certified by this Honorable Court and recognized by the United States. See Dockets No. 18620, 19282, and 19314. Due to the constitutional nature of the Credit Unions claims and the pending constitutional challenge to be determined by this Honorable Court and/or finally by a higher Court in appellate proceedings, the Confirmation of the Plan of Adjustment might be at stake. In other words, it is of the outmost importance, as this Honorable Court has recognized through the hearings on confirmation, that the plan of adjustment is still feasible in case that the takings claims were to be determined non dischargeable.

The proposed Findings of Fact and Conclusions of Law submitted by the Oversight Board, particularly those related to the feasibility of the plan under PROMESA section 314 (b) (6), do not make any reference as to the feasibility of the Commonwealth's Plan of Adjustment in case

8

that this Honorable Court or any appellate Court would determine that the Credit Unions' claims or any other takings claimants' claims would be rendered non-dischargeable either under section 944 (c) (1) or in the case that the effects of PROMESA provisions over the takings claims are determined to be unconstitutional.

None of the 17 paragraphs containing the proposed findings and conclusions pertaining to the feasibility of the Commonwealth's plan of Adjustment (¶¶158-174 of Docket No. 19366) refer to the feasibility of the plan in case the takings claims were excepted form discharge. This most important matter was part of the evidence that was submitted to this Honorable Court, and part of the arguments and representations made by counsel of the Oversight Board.

In order to address this Honorable Court's inquiry and concerns as to the takings claims and the feasibility of the plan, on November 22, 2021 the Oversight Board submitted into evidence the Supplemental Declaration of Jay Herriman [Docket No. 19329]. Herriman's declaration concludes as follows:

> "Accordingly, the total asserted amount of claims asserted to arise out of the Takings Clause, except for claims arising out of the purchase, sale, or holding of bonds, is currently estimated at approximately $390 million plus any unliquidated claim amounts, based on review and reconciliation of claims to date. Because the review and reconciliation of claims asserted against the Debtors remains ongoing, this number may be subject to further revision."

Jay Herriman's Supplemental Declaration, ¶ 11, Docket No. 19329

Furthermore, in its demonstrative presentation filed on November 22, 2021 at Docket No.19328, the Oversight Board submitted that on the effective date of the plan of adjustment there would be $532 million in remaining cash after making the plan's disbursements. See page 2 of Exhibit A, *Response to Court's Inquiries*, page 2 of the Debtors' Demonstrative Presentations in Connection with Closing Arguments. Docket No. 19328. This was also backed and supported by the representations of the Oversight Board's counsel in open court at closing argument stating that,

9

from a feasibility point of view, the debtors would be able to handle the takings claims if these were to be determined non-dischargeable. These representations and presentations made by the Oversight Board bind the debtor before this Honorable Court and should be part of the Facts and/or Conclusions entered in Connection with the Confirmation of the Commonwealth's Plan of Adjustment.

The Credit Unions respectfully submit that the proposed Findings of Fact and Conclusions of Law submitted by the Oversight Board lack factual and/or legal determinations concerning the feasibility of the Commonwealth's Plan of Adjustment if the takings claims were to be declared non-dischargeable or if PROMESA were to be declared unconstitutional by any Court on grounds of violation to the Takings Clause of the Fifth Amendment of the Constitution. These proposed findings and conclusions are warranted in the context of an order of confirmation of the plan, particularly in light of the fact that the plan would still be feasible and because of the rights and public interests involved.

The Oversight Board has acknowledged that, excepting from discharge takings claims (including eminent domain claims, claims arising out of regulatory taking, and bondholder takings claims), which total around $500 million, would not render the plan unfeasible. The evidence submitted and argued by the Oversight Board shows that there is a remaining cash of $532 million on the effective date of the plan, which would enable the Commonwealth to sustain feasibility in the event of a non-dischargeability determination by this Court or by any appellate court of the taking claimants' claims.

Therefore, the Credit Unions respectfully request under Rule 52 (b) of the Federal Rules of Civil Procedure, made applicable by the Federal Rules of Bankruptcy Procedure 7052 and 9014 and pursuant to PROMESA § 310, that this Honorable Court make an additional finding and/or

10

conclusion stating that, on the effective date of the plan, after making the disbursements, there would be a remaining cash available to the Commonwealth in the amount of $532 million, which would not make the plan unfeasible if the takings claims were to be declared non-dischargeable or if PROMESA is declared unconstitutional on grounds of violation of the Fifth Amendment's Takings Clause.

Finally, in order to avoid compromising the implementation of the plan of adjustment, the credit unions respectfully request from this Honorable Court to provide in its conclusions to be entered in connection to the Order of Confirmation for a reserve in the amount of $500 million in the event that a determination of non-dischargeablity of the takings claims is entered, or in the event that PROMESA is declared unconstitutional for violation of the Fifth Amendment Takings clause.

### III. RESERVATION OF RIGHTS

The Credit Unions objecting herein expressly reserve their rights to supplement, amend or modify this objection, without in any way limiting any other rights that they may have. The Credit Unions further reserve their rights to object to the confirmation of the Plan of Adjustment or to any other subsequent or modified plan of adjustment, or to any other proposed Findings of Fact and Conclusions of Law in connection to the confirmation of the plan of adjustment on these same grounds or any additional grounds, as may be appropriate.

**WHEREFORE,** the appearing Credit Unions respectfully request from this Honorable Court to consider, modify, add, and/or strike the Proposed Findings of Fact and Conclusions of Law submitted by the Oversight Board as objected and proposed herein. Further, the appearing Credit Unions respectfully request from this Honorable Court that the Eight Title III Modified Plan

of Adjustment as it currently stands in its latest version at Docket No. 19365 be denied, or in the alternative that this Honorable Court except from discharge their claims in the Order Confirming the Plan of Adjustment.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico this 1st of December 2021.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, in accordance with Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004(b), and the Court's Fifteenth Amended Notice, Case Management and Administrative Procedures Order [ECF#17127 ] (the "CMP Order"), that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the parties appearing in said system including the US Trustee and to all those parties registered to receive notice within the electronic notification service.



*Attorneys for Credit Unions*
*PO Box 191757*
*San Juan, PR 00919-1757*

*/s/ Enrique M. Almeida, Esq.*
***Enrique M. Almeida, Esq.***
*USDC-PR 217701*
*enrique.almeida@almeidadavila.com*