**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>      Debtors.[1] | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**THE PUERTO RICO FISCAL AGENCY
AND FINANCIAL ADVISORY AUTHORITY'S OBJECTIONS
TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN CONNECTION
WITH CONFIRMATION OF THE MODIFIED EIGHTH AMENDED TITLE III JOINT
PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL.**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 847), (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747), and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

1

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), through undersigned counsel, hereby objects (this "Objection") to paragraphs 81, 136, 145, 146, 162, 165, and 171 of the Oversight Board's *[Proposed] Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, as filed on November 28, 2021 [ECF No. 19366] (the "Proposed Findings and Conclusions"),[2] and respectfully states as follows:

I. **OBJECTIONS RELATED TO PROPOSED FINDINGS AND CONCLUSIONS REGARDING POST-CONFIRMATION CHANGES TO DEFINED BENEFIT PLANS**

    A. *Proposed Finding and Conclusion Paragraph 81*

81. The Confirmation Order further provides adequate means for the Plan's implementation including, but not limited to, paragraph 62 thereof which provides: "Before the tenth (10th) anniversary of the Effective Date, the Government of the Commonwealth of Puerto Rico, including, without limitation, by any Entity or Person acting for or on behalf thereof, shall not (a) implement existing legislation or enact new legislation to create or increase any defined benefit pension payment or obligation to current or future retirees from or related to any defined benefit plans over the benefits provided by the Plan, regardless of funding source, or (b) undo (in whole or part) the Plan's eliminations of defined benefit plan accruals and cost of living adjustments for government employees; provided, however, that the Governor and Legislature, subsequent to termination of the Oversight Board, may apply to the Title III Court for relief from this provision upon showing (i) the need therefor, (ii) the affordability of the requested changes, (iii) the reasons why the requested changes will not create a risk of the financial distress caused by the Commonwealth's prior defined benefit plans that ended up creating

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Proposed Findings and Conclusions, except: (i) "Government" means the duly elected government of the Commonwealth of Puerto Rico. The numbered paragraphs used in this Objection correspond to the numbered paragraphs in the Proposed Findings and Conclusions and include a reprint of the current language sought in the Proposed Findings and Conclusions. If AAFAF is only objecting to part of a paragraph, the objectionable portion will appear in italics. AAFAF's objections to the identified paragraphs are submitted below the numbered paragraphs so the Court need not refer separately to both the Proposed Findings and Conclusions and this Objection. Where applicable, the language provided after "AAFAF's Proposed Modification" contains the proposed correction AAFAF requests that would resolve AAFAF's objection.

> nearly $55 billion of unfunded pension obligations, (iv) the means of funding the requested changes and reasons why there is little risk of such funding not being carried out, (v) the reasons why the requested changes will not create a material risk of defaults on any of the then outstanding obligations pursuant to the Plan, and (vi) the reasons why the defined contribution plans are insufficient and defined benefit plans are both prudent and required; and, provided, however, that, prior to the termination of the Oversight Board, the Oversight Board shall not reduce any defined benefit pension payment or obligation to current or future retirees from the benefits provided by the Plan." Confirmation Order ¶ 62. This provision is appropriate and necessary for the implementation and feasibility of the Plan. See Nov. 15, 2021 Hrg. Tr. 181:16–182:14.

**AAFAF's Objection:** AAFAF objects to paragraph 81 because it is neither a finding of fact nor a conclusion of law. It merely provides a direct quote from the Confirmation Order. The only unquoted language states that: "This provision is appropriate and necessary for the implementation and feasibility of the Plan." But the Board does not provide any legal or factual support for that legal conclusion. The only citation for the proposed finding of fact or conclusion of law in paragraph 81 is argument from the Board's counsel. Arguments of counsel without evidentiary support cannot justify a finding of fact or conclusion of law.

**AAFAF's Proposed Modification:** Paragraph 81 should be deleted in its entirety from the Proposed Findings and Conclusions.

### B. *Proposed Finding and Conclusion 165*

165. Section 83.4 of the Plan ensures pension-related provisions contained in the Plan will not be undone such that pension payments become unaffordable, and provides: "Before the tenth (10th) anniversary of the Effective Date, the Government of the Commonwealth of Puerto Rico, including, without limitation, by any Entity or Person acting for or on behalf thereof, shall not (a) implement existing legislation or enact new legislation to create or increase any defined benefit pension payment or obligation to current or future retirees from or related to any defined benefit plans over the benefits provided by the Plan, regardless of funding source, or (b) undo (in whole or part) the Plan's eliminations of defined benefit plan accruals and cost of living adjustments for government employees; provided, however, that the Governor and Legislature of

3

the Commonwealth of Puerto Rico, subsequent to termination of the Oversight Board, may apply to the Title III Court for relief from this provision upon showing (i) the need therefor, (ii) the affordability of the requested changes, (iii) the reasons why the requested changes will not create a risk of the financial distress caused by the Commonwealth's prior defined benefit plans that ended up creating nearly $55 billion of unfunded pension obligations, (iv) the means of funding the requested changes and reasons why there is little risk of such funding not being carried out, (v) the reasons why the requested changes will not create a material risk of defaults on any of the then outstanding obligations pursuant to the Plan, and (vi) the reasons why the defined contribution plans are insufficient and defined benefit plans are both prudent and required; and, provided, however, that, prior to the termination of the Oversight Board, the Oversight Board shall not reduce any defined benefit pension payment or obligation to current or future retirees from the benefits provided by the Plan." Plan § 83.4. This prohibition on new defined benefits for a ten (10) year period is enforceable and essential to the Plan's continued feasibility. See Nov. 15, 2021 Hrg. Tr. 181:16–182:14.

**AAFAF's Objection:** AAFAF objects to paragraph 165 because it merely quotes language from the Plan, is neither a finding of fact nor a conclusion of law, and lacks any factual or legal support on which the Court can rely to make a finding or legal conclusion.

**AAFAF's Proposed Modification:** For the same reasons as paragraph 81, paragraph 165 should be deleted in its entirety from the Proposed Findings and Conclusions.

## II. OBJECTIONS RELATED TO PREEMPTION

### A. *Proposed Finding and Conclusion 136*

136. Act 53, enacted on October 26, 2021, authorizes the issuance of the CVIs and the New GO Bonds, consistent with the terms set forth in the Plan and the plan support agreements. (Jaresko Decl. ¶ 92; Debtors Exhibit 134). Act 53's effectiveness is conditioned only on the elimination of the Monthly Benefit Modification (as defined in the Seventh Amended Plan) from the Plan. The Monthly Benefit Modification is not contained in the Plan, and accordingly Act 53 is effective and the Commonwealth's issuance of the CVIs and New GO Bonds is consistent with applicable Commonwealth law. *Further, PROMESA preempts any Commonwealth law providing for the future accrual of defined benefits and future cost of living adjustments, including, without limitation, Acts 91-2004*

4

> *(establishing TRS) and 12-1954 (establishing JRS).* Absent preemption, the amount of Commonwealth revenues that would need to be spent on TRS and JRS pension benefits in fiscal year 2022 is $984 million. (Malhotra Decl. ¶ 65). Absent preemption, these inconsistent statutes would undermine the restructuring contemplated by the Plan. (Jaresko Decl. ¶ 235).

**AAFAF's Objection:** Nothing in PROMESA automatically preempts Puerto Rico law, which is evident from the fact that Acts 91-2004 and 12-1954 have remained in effect since the date of PROMESA's enactment. Although PROMESA section 4 provides that PROMESA "shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]," such inconsistency can only be established after the Board's exercise of its fiscal plan and budgetary powers under PROMESA sections 201 and 202 (and only after the Board seeks to enforce those powers under PROMESA sections 203 and 204), or through the implementation of a plan of adjustment confirmed under Title III of PROMESA. Accordingly the italicized language of paragraph 136 identified above constitutes an overly broad conclusion of law that must be revised to reflect PROMESA's legal framework.

**AAFAF's Proposed Modification:** To the extent the Court adopts the Board's arguments with respect to Acts 91-2004 and 12-1954, the italicized sentence in paragraph 136 should be modified as follows: Further, the 2021 Fiscal Plan, Plan, and Confirmation Order preempt any currently existing Commonwealth law providing for the future accrual of defined benefits and future cost of living adjustments, including, without limitation, Acts 91-2004 (establishing TRS) and 12-1954 (establishing JRS).

### B. *Proposed Finding and Conclusion 145*

145. Section 89.3 of the Plan provides: "As of the Effective Date, and to the extent not previously preempted pursuant to an order of the Title III Court, all laws (or such portions thereof) of the Commonwealth of Puerto Rico, other than budgets certified by the Oversight Board, inconsistent with PROMESA, are held preempted. Such preempted laws include, without limitation, laws enacted prior to June 30,

5

2016, that transfer, appropriate or require appropriations from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose, and such laws shall not be enforceable to facilitate payment of such indebtedness, directly or indirectly, and shall not be enforceable if enforcement thereof would be inconsistent with any provision of PROMESA having continuing applicability and effectiveness. Without in any way limiting the foregoing, (a) the Commonwealth laws preempted by PROMESA include, without limitation, those listed on Exhibit "K" hereto and (b) all litigation in which any Government Party is a defendant, over whether Commonwealth law listed on Exhibit "K" hereto is preempted by PROMESA shall be dismissed, with prejudice, as of the Effective Date and the parties thereto shall provide the Oversight Board prompt notice of such dismissal." Plan § 89.3. Accordingly, pursuant to Section 4 of PROMESA, all laws, rules, and regulations giving rise to obligations of the Debtors discharged by the Plan and the Confirmation Order pursuant to PROMESA are preempted by PROMESA, and such discharge shall prevail over any general or specific provisions of territory laws, rules, and regulations. *Pursuant to Section 4 of PROMESA, to the extent not previously ruled preempted pursuant to an order of the Title III Court, all laws (or such portions thereof) of the Commonwealth, other than budgets certified by the Oversight Board, inconsistent with PROMESA, are preempted. Such preempted laws include, without limitation, laws enacted prior to June 30, 2016, that provide for transfers or other appropriations after the enactment of PROMESA, including transfers from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose, and such laws shall not be enforceable for any purpose. Without in any way limiting the foregoing, (a) the Commonwealth laws preempted by PROMESA include, without limitation, (i) those listed on Exhibit K to the Plan and Exhibit C to the Confirmation Order, and (ii) Sections 6 and 8 of Article VI of the Puerto Rico Constitution insofar as they could be applied to General Obligation bonds and Commonwealth-guaranteed bonds or indebtedness restructured pursuant to the Plan, but not for any future purpose, and (b) all litigation in which any Government Party is a defendant over whether Commonwealth law listed on Exhibit K to the Plan or Exhibit C to the Confirmation Order is preempted by PROMESA shall be dismissed, with prejudice, as of the Effective Date and the parties thereto shall provide the Oversight Board prompt notice of such dismissal. For the avoidance of doubt, Act 80-2020, Act 81-2020, and Act 82-2020, each of which are listed on Exhibit K to the*

6

> *Plan and Exhibit C to the Confirmation Order, are preempted by PROMESA. To avoid the future re-creation of the debts and claims discharged herein, and except as otherwise provided herein (including, but not limited to, this paragraph 145), each of the preempted laws is preempted permanently.*

**AAFAF's Objection:** AAFAF objects to the italicized language of paragraph 145 regarding Acts 80-2020, 81-2020, and 82-2020. Each of these laws was enacted more than a year prior to commencement of the hearing on confirmation of the Plan, and approximately 14 months prior to the date on which the Board was required to submit declarations in support of the Plan. *See* Amended Order Establishing Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith, *In re The Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-3283-LTS (D.P.R. Oct. 5, 2021) [ECF No. 18394] (establishing October 25, 2021 as the deadline for filing witness declarations). But the Board opted to provide no evidence in support of its claims of preemption, and none is contained in the record. In fact, the Board did not include Acts 80-2020, 81-2020 and 82-2020 on Exhibit K until after the close of evidence during the confirmation hearing. As AAFAF has already argued in its Objection to the Inclusion of Acts 80, 81 and 82 on Exhibit C to the Revised Proposed Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., filed on November 20, 2021 [ECF No. 19319], the Board's last-minute inclusion of Acts 80, 81 and 82 on Exhibit K of the Plan and Exhibit C of the Confirmation Order bypasses the well-established process for attempting to invalidate Puerto Rico laws under PROMESA, which guarantees the Government the right to access the judicial system to defend its laws under the standards this Court has articulated in past proceedings. *See e.g., The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 616 B.R. 238, 245 (D.P.R. 2020) (invalidating Act 29-2019 only after a hearing on the sufficiency of the Government's "significantly inconsistent" certification under PROMESA section 204);

7

*Vázquez Garced v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 511 F.Supp.3d 90, 128 (D.P.R. 2020) (same process utilized for potential invalidation of Acts 82-2019, 138-2019, 176-2019, 181-2019, and 47-2020); *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Pierluisi Urrutia (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, Adv. Proc. No. 21-00072-LTS, 2021 WL 4768715, at *1 (D.P.R. Oct. 13, 2021) (same process for seeking invalidation of Act 7-2021). Accordingly, Acts 80, 81, and 82 should be removed from the preempted statutes listed on Exhibit K of the Plan and Exhibit C of the Confirmation Order, and all references to those statutes should be removed from paragraph 145 of the Proposed Findings and Conclusions.

In addition, paragraph 145 should state that the only Puerto Rico laws preempted by the Plan are those expressly listed on Exhibit K of the Plan and Exhibit C of the Confirmation Order (excluding Acts 80, 81, and 82), and if the Board seeks to prevent the implementation or enforcement of any other Puerto Rico laws as preempted by the Plan then the Board must make the requisite evidentiary and legal showing upon notice and a hearing.

**AAFAF's Proposed Modification:** The italicized language of paragraph 145 should be deleted and replaced with the following: Such preempted laws only include (i) those listed on Exhibit K to the Plan and Exhibit C to the Confirmation Order, and (ii) Sections 6 and 8 of Article VI of the Puerto Rico Constitution insofar as they could be applied to General Obligation bonds and Commonwealth-guaranteed bonds or indebtedness restructured pursuant to the Plan, but not for any future purpose. All litigation in which any Government Party is a defendant over whether a Commonwealth law listed on Exhibit K to the Plan or Exhibit C to the Confirmation Order is preempted by PROMESA shall be dismissed, with prejudice, as of the Effective Date and the parties thereto shall provide the Oversight Board prompt notice of such dismissal. If the Board

8

seeks to preempt any other Puerto Rico laws after the Confirmation Date, it must file a motion seeking to enforce preemption under the Plan with notice and a hearing in which all impacted parties may be heard. To avoid the future re-creation of the debts and claims discharged herein, and except as otherwise provided herein (including, but not limited to, this paragraph 145), each of the preempted laws is preempted permanently.

    **C.**    *Proposed Finding and Conclusion 146*

146. Many of the preempted statutes generally would require the Commonwealth to use its revenues to repay its general obligation and guaranteed debt in full, and the amount of debt service necessary for fiscal year 2022 would be $1.7 billion. (Malhotra Decl. ¶ 63). These statutes are inconsistent with PROMESA, and would undermine the restructuring contemplated by the Plan and Puerto Rico's return to fiscal responsibility and access to capital markets. (Jaresko Decl. ¶¶ 230–233). Further, certain preempted statutes require the appropriation of Commonwealth revenues and would require more than $3 billion in Commonwealth revenues to be transferred in fiscal year 2022. (Malhotra Decl. ¶ 64). In addition, certain preempted statutes require the Commonwealth to provide pension and other benefits or payments to retirees who participated in the ERS, TRS, or JRS retirement systems at statutorily specified rates; the amount of Commonwealth revenues that would need to be spent on TRS and JRS benefits or payments in fiscal year 2022 pursuant to these statutes would be $984 million. (Malhotra Decl. ¶ 65). Such statutes are inconsistent with PROMESA and would undermine the restructuring contemplated by the Plan and the Plan's contemplated repayment of claims from such revenues. (Jaresko Decl. ¶ 234). *PROMESA's preemption of inconsistent Commonwealth Laws is settled. See, e.g.,* <u>Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)</u>*, 916 F.3d 98, 116 (1st Cir. 2019) ("Under PROMESA's preemption provision, the grants of authority to the Board at §§ 201 and 202 to approve Fiscal Plans and Budgets 'prevail over any general or specific provisions of territory law' . . . .") (emphasis added) (citation omitted);* <u>Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)</u>*, 330 F. Supp. 3d 685, 701 (D.P.R. 2018) ("[A] budget approved and adopted by the Oversight Board as compliant with a certified fiscal plan becomes law . . . and inconsistent Commonwealth laws are preempted."),* <u>aff'd</u>*, 945 F.3d 3 (1st Cir. 2019).*

**AAFAF's Objection:** AAFAF objects to the italicized portion of paragraph 146 because the Board fails to cite recent decisions in which this Court required the Board to show that its determinations related to enjoining the application of Puerto Rico laws for being inconsistent with PROMESA must not be "arbitrary, capricious, or manifestly contrary to the statute." These decisions require the Board to provide evidence supporting its inconsistency determinations with notice and hearing to the Government. Because the Board has not provided factual support for the preemption of Puerto Rico laws not listed on Exhibit K of the Plan and Exhibit C of the Confirmation Order (including Acts 80, 81, and 82 that should be stricken from those exhibits), the current catch-all provision in paragraph 146 is inappropriate and should be removed.

**AAFAF's Proposed Modification:** The italicized language of paragraph 146 should be revised as follows: PROMESA's preemption of currently existing Commonwealth Laws that are inconsistent with a Board-certified fiscal plan or budget is settled. See, e.g., Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 916 F.3d 98, 116 (1st Cir. 2019) ("Under PROMESA's preemption provision, the grants of authority to the Board at §§ 201 and 202 to approve Fiscal Plans and Budgets 'prevail over any general or specific provisions of territory law' . . . .") (emphasis added) (citation omitted); Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 330 F. Supp. 3d 685, 701 (D.P.R. 2018) ("[A] budget approved and adopted by the Oversight Board as compliant with a certified fiscal plan becomes law . . . and inconsistent Commonwealth laws are preempted."), aff'd, 945 F.3d 3 (1st Cir. 2019). Accordingly, any Puerto Rico law not listed on Exhibit K of the Plan or Exhibit C of the Confirmation Order that the Board claims is preempted by a Board-certified fiscal plan, budget, or the Plan requires the Board to make the requisite evidentiary showing upon notice and hearing in which all impacted parties may be heard. See The Fin.

10

Oversight & Mgmt. Bd. for P.R. v. Vázquez Garced (In re The Fin. Oversight & Mgmt. Bd. for P.R.), 616 B.R. 238, 253 (D.P.R. 2020) (as a prerequisite to nullifying newly enacted Puerto Rico laws, the Board must show that its determination of a law's inconsistency with PROMESA is not "arbitrary, capricious, or manifestly contrary to the statute").

### III. OBJECTIONS RELATED TO THE PENSION RESERVE TRUST

#### A. *Proposed Finding and Conclusion 162*

162. In addition, the Plan provides for (i) payments of pension and other post-employment benefits to retired Commonwealth employees, without adjustment for any Monthly Benefit Modification, (ii) the restoration of contributions made by Commonwealth employees to the System 2000 program, and (iii) payments to the Pension Reserve Trust. (Malhotra Decl. ¶ 21; Plan Art. LV). Participants in System 2000 will not be subject to benefit reductions, but instead will receive the amount of their contributions to System 2000 from its enactment until June 30, 2017. (Plan § 55.1). The aggregate sum of such contributions plus interest accrued thereon is approximately $1.2 billion. (Malhotra Decl. ¶ 23). *The Pension Reserve Trust will receive an initial contribution of $5 million on the Effective Date and, for the next ten (10) fiscal years, the Commonwealth will make a contribution in an amount equal to (1) the Base Contribution, $175 million or, for any fiscal year in which the projected Fiscal Plan Surplus set forth in the Fiscal Plan is equal to or greater than $1.75 billion, an amount equal to twenty-five percent (50%) [sic]³ of that amount, plus (2) an additional amount calculated as (i) the lower of the actual primary surplus for such fiscal year and the projected Fiscal Plan surplus for such fiscal year, minus (ii) the sum of the Base Contribution, plus the Commonwealth's debt service obligations pursuant to the Plan for such fiscal year, plus $200 million. (Plan Art. LXXXIII; Malhotra Decl. ¶ 24; Malhotra Sup. Decl. ¶¶ 12–13; Jaresko Sup. Decl. ¶¶ 10–11; Santambrogio Sup. Decl. ¶¶ 8–9). The Commonwealth's contributions to the Pension Reserve Trust are estimated to total approximately $2.4 billion during the ten years of funding, all of which will be paid during the time period in which the Fiscal Plan projects surpluses. The Pension Reserve Trust is projected to have a balance of $3.1 billion through the end of fiscal year 2031. (Malhotra Sup. Decl. ¶ 14; Santambrogio Sup. Decl. ¶ 10). Further, the Pension Reserve Trust will be professionally and independently managed to insulate the*

---

³ The Board should correct this provision to eliminate any confusion.

11

>*funding available to pay pensions from political or economic influences. (Malhotra Decl. ¶ 34).*

**AAFAF's Objection:** AAFAF objects to paragraph 162 because the factual evidence supporting the Pension Reserve Trust provisions are based on declarations submitted prior to the Board's last-minute amendments to the terms of the Pension Reserve Trust. Accordingly, the cited evidence only supports approval of the Pension Reserve Trust as initially formulated prior to the commencement of the confirmation hearing, not as modified after the confirmation hearing concluded. Thus, the Board has not provided adequate evidence for the italicized provisions to be included in the final Findings of Fact and Conclusions of Law.

**AAFAF's Proposed Modification:** The italicized language in paragraph 162 should be deleted in its entirety from the Proposed Findings and Conclusions.

    **B.**    *Proposed Finding and Conclusion 171*

171.    In addition, several Plan provisions—*the Pension Reserve Trust*, the CVI structures, the Debt Management Policy, and the Comprehensive Cap—mitigate the impact of potential financial underperformance and the effects of projected deficits. (See Malhotra Decl. ¶ 33–40). The Commonwealth will also establish an emergency reserve and a certain level of unrestricted cash, and the Oversight Board has agreed to fund a temporary disaster aid revolving line of credit, which mitigate against potential downside risks. (Malhotra Decl. ¶¶ 49–51; Chepenik Decl. ¶¶ 9, 28, 30, 36, 38). The Commonwealth will retain an unrestricted cash balance of $1 billion to help maintain uninterrupted government operations when unforeseen fiscal challenges emerge. (Malhotra Decl. ¶ 49; Chepenik Decl. ¶ 28; Nov. 12, 2021 Hrg. Tr. 50:21–51:5). The emergency fund will be funded with $130 million annually for a period of ten years, until the reserve balance reaches $1.3 billion, or 2% of Gross National Product, in line with International Monetary Fund guidance. (Malhotra Decl. ¶ 51; Chepenik Decl. ¶ 38).

**AAFAF's Objection:** Similar to paragraph 162, AAFAF objects to the inclusion of the Pension Reserve Trust in paragraph 171's list of Plan provisions designed to mitigate underperformance and projected deficits because the Board relies on declarations submitted prior

12

to the last-minute changes made to the terms of the Pension Reserve Trust. The Board's evidence only applies to the initial formulation of the Pension Reserve Trust as of the commencement of the confirmation hearing, not as newly formulated during the confirmation hearing, because no supplemental declarations were submitted to support the new changes.

**AAFAF's Proposed Modification:** The italicized language in paragraph 171 should be deleted in its entirety from the Proposed Findings and Conclusions.

## CONCLUSION

For these reasons discussed above, the Court should either strike or require clarifying language in the Proposed Findings and Conclusions at paragraphs 81, 136, 145, 146, 162, 165, and 171 for which the Board has not provided the required factual or legal evidentiary support sufficient to justify their inclusion in the final Findings of Fact and Conclusions of Law.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Dated: December 1, 2021
San Juan, Puerto Rico

Respectfully submitted,

| **O'MELVENY & MYERS LLP** | **MARINI PIETRANTONI MUÑIZ LLC** |
|---|---|
| */s/ John J. Rapisardi* | */s/ Luis C. Marini-Biaggi* |
| John J. Rapisardi | Luis C. Marini-Biaggi |
| Peter Friedman | USDC No. 222301 |
| Maria J. DiConza | Carolina Velaz-Rivero |
| Matthew P. Kremer | USDC No. 300913 |
| (Admitted *Pro Hac Vice*) | 250 Ponce de León Ave., Suite 900 |
| 7 Times Square | San Juan, PR 00918 |
| New York, NY 10036 | Tel: (787) 705-2171 |
| Telephone: (212) 326-2000 | Fax: (787) 936-7494 |
| Facsimile: (212) 326-2061 | |
| Email: jrapisardi@omm.com | *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |
| pfriedman@omm.com | |
| mdiconza@omm.com | |
| mkremer@omm.com | |

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*