IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | Case No. 17-bk-3283 (LTS) |
| as representative of: | (Jointly Administered)[1] |
| THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEE'S RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY | |
| Debtors | |

**OBJECTION TO PLAN PROPONENT'S
PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

TO THE HONORABLE COURT:

COMES NOW **Finca Matilde, Inc.** ("Finca Matilde"), a creditor in the captioned case, whom, through the undersigned legal counsel, very respectfully state, pray, and Object to the *[Proposed] Findings of Facts and Conclusions of Law in Connection with Confirmation of the Modified Eight Amended Title III Joint Plan of Adjustment of the*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 35(787)66-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

1

*Common the Commonwealth of Puerto Rico, et al.* (the "Proposed Order") filed and proposed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") at Docket No. 19366, for the reasons stated herein below:

1. Finca Matilde hereby objects to the Proposed Order filed by the Oversight Board insofar it does not address the specific issue raised by Finca Matilde (as well and other creditors) during the confirmation proceeding and contain erroneous conclusion of law not supported by the evidence admitted into evidence. As the record shows, Finca Matilde is among several creditors whose property was condemned by the Commonwealth of Puerto Rico's ("Debtor") eminent domain power through inverse condemnation. The crux of the controversy between the Oversight Board's whether inverse condemnation claims are Eminent Domain Claims, and whether these Eminent Domain Claims (which include inverse condemnation) can be impaired and discharged through any plan of adjustment.[2] The objection of the Eminent Domain Creditors is "addressed" in paragraphs 58 and 59 of the Proposed Order (Docket No. 19366, pp. 37-42);[3] yet such is silent as to the issue of inverse condemnation.

2. In this regard, the Proposed Order concludes as follows:

> "In accordance with applicable Puerto Rico law, upon commencement of the condemnation proceeding, title to a subject property was transferred to the Commonwealth and **funds on deposit became property of the former title holder**. 32 L.P.R.A. § 2907. The Plan treats the Claims as secured Claims to the extent the Claims are allowable and there is cash on deposit for them. The Plan treats the Claims as Class 58 CW General Unsecured Claims entitled to the same treatment as other holders of CW General Unsecured Claims to the extent each allowable Claim exceeds the cash on deposit for it." (Docket No. 19366, p. 38, ¶ 59) (Emphasis was added).

---

[2] This issue was also brough to the Court's attention by Finca Matilde in the hearing on approval of the disclosure statement and in Adversary Case No. 20-00124 (LST).

[3] All page number referenced in this objection corresponds to the Court's electronic filing system pagination.

3. Yet, this conclusion validates Finca Matilde's contention that a separate classification for direct condemnation claims is arbitrary and artificial. In fact, this conclusion further corroborates that – for all practical purposes – Class 54 is a ghost class that will not receive any distribution under the Plan of Adjustment. As per the conclusion quoted above, the Oversight Board (as the drafter of the Proposed Order) admits that the cash deposit in state court belongs to the holder of a direct condemnation claim. Thus, the Plan of Adjustment provides nothing for such creditors because such money already belongs to such creditors.

4. The Takings Clause sets two conditions on the government's constitutional authority to take private property, that is, the government may take private property for "public use," but it must provide just compensation when it does so. Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuño, 604 F.3d 7, 12 (1st Cir. 2010).

5. Case law has also pointed out that the Takings Clause's "prohibition extends not only to the paradigmatic physical taking—i.e., where the government condemns or physically appropriates a person's property—but also to regulatory interferences, which transpire 'when some significant restriction is placed upon an owner's use of his property for which 'justice and fairness' require that compensation be given." Maine Educ. Ass'n Benefits Tr. v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012) (citing Philip Morris, Inc. v. Reilly, 312 F.3d 24, 33 (1st Cir. 2002)). "The regulatory takings follow the proposition that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Puma Energy Caribe LLC v. Puerto Rico, 2021 U.S. Dist. Lexis 181555 *35-36, (DPR 2013) quoting Cedar Point Nursery v. Hassid, 141 S. Ct. at 2072 (internal citations omitted).

6. Regardless of whether the taking was made via direct or inverse condemnation, "just compensation, it will be noticed, is for the property, and not to the

3

owner." Monongahela Navigation Co. v. United States, 148 U.S. 312, 325 (1893). Therefore, there is no reasonable explanation as to why inverse condemnation claimants are classified differently.

7. Now, with respect to the dischargeability issue, the Proposed Order concludes that the obligation to pay just compensation that can be discharged in bankruptcy pursuant to Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935) (Docket No. 19366, p. 40). This conclusion, however, is not only untenable but also unsupported by the Radford case. In no part of the Radford case the Supreme Court ruled that all obligation can be discharged in bankruptcy nor that the constitutional obligation to pay just compensation under the Takings Clause can be discharged. Therefore, the Oversight Board's conclusion set forth in the Proposed Order cannot be reasonably drawn from Radford.

8. Additionally, the Proposed Order characterizes the Takings Clause's of the Fifth Amendment as a "passive statement" (Docket No. 19366, p. 41). Yet, the Proposed Order provides no legal authority for such characterization. On the contrary, case law unequivocally establishes that the obligation to pay just compensation is an irrevocable obligation of the sovereign. See Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171 (holding that "where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation."; Koontz v. St. John River Water Mgmt. Dist., 570 U.S. 595, 608 (2013) ("the Fifth Amendment mandates a particular remedy – just compensation – only for takings."); United States v. Sec. Indus. Bank, 459 U.S. 70, 77 (1982) ("The Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation."); United States v. Sec. Indus. Bank, 459 U.S. 70, 74-75 (1982) ("The bankruptcy power is

4

subject to the Fifth Amendment's prohibition against taking private property without compensation."). In fact, in Monongahela Navigation Co. v. United States, 148 U.S. 312, 325 (1893), the Supreme Court ruled as follows:

> "The language used in the Fifth Amendment in respect to this **matter is happily chosen**. The entire amendment is a series of negations, denials of right or power in the government, the last, the one in point here, being, nor shall private property be taken for public use without just compensation." (Emphasis was added).

9. Moreover, the Proposed Order seeks to establish that the Debtor's obligation to pay just compensation is dischargeable with a series of case law that establish that Congress is empowered to create statute of limitations on claims against the government (Docket No. 19366, p. 40, fn. 12). Yet, such cases do not support the conclusion the Proposed Order draws. In the first place, none of the cases cited by the Proposed Order behooved eminent domain actions.[4] Secondly, it is immaterial because neither Congress nor state law impose a statute of limitations for Finca Matilde's claim which was already litigated to a final judgment in state court.

10. Furthermore, according to the Proposed Order, claims for just compensation are routinely discharged in bankruptcy and points out to several voidance provisions of Chapter 5 of the Bankruptcy Code (Docket No. 19366, p. 41). Yet, the

---

[4] The Oversight Board quotes a fragment of the case of Stone Container Corp. v. United States, 229 F. 3d 1345 (2000), which seems to suggest that such case involved an eminent domain claim. Nevertheless, the fragment quoted by the Proposed Order is out of context. A full reading of the case shows that the case did not behoove an eminent domain action. The entire fragment quoted by the Proposed Order states as follows:

> "Moreover, the right to a refund of unconstitutional taxes collected under compulsion is, in effect, a claim for deprivation of property without due process. See McKesson, 496 U.S. at 36. Both the Supreme Court and this court have repeatedly held that HN7 the federal government may apply statutes of limitations to just compensation claims. See, e.g., Block v. North Dakota, 461 U.S. 273, 292, 75 L. Ed. 2d 840, 103 S. Ct. 1811 (1983); Boling v. United States, 220 F.3d 1365, 1375 (Fed. Cir. 2000). As the Supreme Court ruled in Block, a "constitutional claim can become time barred just as any other claim can." Block, 461 U.S. at 292; see also United States v. Dalm, 494 U.S. 596, 602, 108 L. Ed. 2d 548, 110 S. Ct. 1361 (1990) (holding that a statute of limitations barred an untimely claim for a federal income tax refund, "regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected'" (citations omitted))."

Proposed Order's legal conclusion suffers from several gaps in in its legal reasoning. First, it presumes that Eminent Domain Claims (direct or inverse) are contractual claims that may be voided for the benefit of the bankruptcy estate or creditors. Second, it erroneously presumes that an act of Congress can override a constitutional provision. It is black letter law that the Constitution is the supreme law and Congress may not legislate against it.

11. The Bankruptcy Clause of the Constitution only provides that Congress may enact "uniform Laws on the subject of Bankruptcies throughout the United States". Such language, however, does not create an exception to the enforcement for the Bill of Rights; it does not provide for Congress (or a plan proponent) to discharge the government's obligation to pay just compensation, no matter how many support the plan of adjustment. On the contrary, in <u>Hanover Nat'l Bank v. Moyses</u>, 186 U.S. 181, 191 (1902), the Supreme Court held that "Congress may prescribe any regulations concerning discharge in bankruptcy **that are not so grossly unreasonable as to be incompatible with fundamental law**." (Emphasis was added). The Bill of Rights of the Constitution is a not only fundamental law, but it is also the Supreme Law of the Land.

12. Lastly, the Proposed Order concludes that "[r]endering nondischargeable the eminent domain Claims here would create a new interpretation and application of the Fifth Amendment having consequences throughout bankruptcies as multiple constitutionally rooted claims are rendered nondischargeable., thereby creating a judicial priority for Constitutional claims." (Docket No. 19366, pp. 41-42). This legal conclusion is also erroneous as it is groundless.

13. The requirement to pay just compensation does not apply to the entire Constitution, nor the whole Fifth Amendment. The Supreme Court has held that "the Fifth Amendment mandates a particular remedy – just compensation – only for takings."

6

Koontz v. St. John River Water Mgmt. Dist., 570 U.S. 595, 608 (2013). The Debtor took a right from Finca Matilde which mandates payment of just compensation.

**WHEREFORE** Finca Matilde requests that this Honorable Court entertains the instant motion and moves Honorable Court deny the confirmation and approval of the Proposed Order.

**I HEREBY CERTIFY**, that on this same date I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which will send electronic notification to all participants. Pursuant to the Fourteenth Amended Notice, Case Management and Administrative Procedures, the instant motion was served via First Class Mail upon the (i) Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901; (ii) Chambers of the Hon. Laura T. Swain; (iii) AAFAF and its counsel; (iv) the Oversight Board and its legal counsel, (v) Counsel for the Creditors Committee, (vi) Counsel for the Retiree Committee, the 20 largest creditors.

**RESPECTFULLY SUBMITED,**

In San Juan, Puerto Rico, this 1st day of December of 2021.

**ISABEL FULLANA-FRATICELLI & ASSOCS., P.S.C.**
The Hato Rey Center Bldg.
268 Ave. Ponce de León Ste. 1002
San Juan, Puerto Rico 00918
Telephone: (787) 250-7242
Facsimile: (787) 756-7800

/s/Isabel M. Fullana
USDCPR No. 126802
ifullana@gaflegal.com

/s/Eduardo J. Capdevila
USDCPR No. 302713
ecapdevila@gaflegal.com