## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

**THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
as representative of
THE COMMONWEALTH OF PUERTO RICO, et al.,
Debtors[1]**

**PROMESA
TITLE III
Case No. 17-BK-3283
(LTS)**

---

(Re: ECF 17134 ; 18282; 18314; 18422; 19091 and 19092)

### MOVANTS REPLY IN OPOSITION TO DEPTORS' OBJECTION TO URGENT SUPPLEMENTAL MOTION REQUESTING ORDER ALLOWING ADMINISTRATIVE EXPENSE PRIOPITY CLAIM AND IMMEDIATE PAYMENT

To the Honorable United States District Judge Laura Taylor Swain:

NOW COMES the group creditors included in the consolidated judgment dated

April 22, 2016 in the litigation captioned Norberto Tomassini et als case no. A MI2003-

0143 and Ivan Ayala et als. Case no. A PE2005-0049, against the Department of

Correction and Rehabilitation of the Commonwealth of Puerto Rico (the "DCR"), by and

through the undersigned attorney, and submits its Reply to the Debtors objection and in

support of the Motion for allowance of payment of its administrative expenses claims, very

respectfully avers and prays as follows:

### I.     PRELIMINARY STATEMENT

1.     Pending before the Court are two motions requesting Orders for Allowance

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four ,Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

of Administrative Expense Priority Claim pursuant to section 503 (b) of the Bankruptcy Code, filed by Correction Officers of the Department of Corrections and Rehabilitation of the Commonwealth of Puerto Rico ("DCR"), the "Movants".

    **2.**    The first motion relates to post-petition back pay wages, filed by 44 CO's that are still working with the DCR. Due to the fact that the parties are in conversations and making reasonable efforts to facilitate discussions to address the resolution of the reference Motion, filed consented Motions for extension of time, (see ECF Motion No. 17134, 18314; 18422; and 19092).

    3.    The second Motion before the Court, relates a claim were the Movants are requesting immediate payment of the pre-petition judgment for unpaid wages, as Administrative Expense Priority Claim, pursuant to section 503 (b) (1) (A) (ii) of the Bankruptcy Code [ECF No. 18282] (the "Motion"). [2] This Court on October 7, 2021, entered the Scheduling Order, but the terms were extended, by granting the joint Motion for extensions of the deadlines until December 6, 2021 to file Oppositions. The Court will thereafter take the Motion on submission, unless the Court determines that a hearing is necessary.

    4.    In regards the second Motion (ECF No. 18282), on November 5, 2021 the Commonwealth or the Debtor") filed their objection, disputing their obligation by arguing that § (A) (ii) is inapplicable to prepetition claims. (ECF No. 19091).

    5.    Due to the fact Movants claim is predicated from a 2016 judgment ( the CFI April 22, 2016 Judgment), covering conduct that spans a period occurring both pre-

---

[2] As to the prepetition claim, on October 1, 2021 Movants filed an amended Proof of Claim to actualize the accrued unpaid wages for services rendered, collectively, totaling $5,832,721.95 (Claim No. 179637).

petition and post-petition, assert that the entire back pay accrued during both periods qualify as administrative expense priority, as a cost of doing business.

6. Movants assets that they are entitled to administrative expense priority and full payment of back pay accrued, based on the plain language of subsection (A)(ii), since their claim is carved out on an exception to the pre-existing priority classification scheme, and the prepetition nature of the unpaid portion of regular wages owed to the CO's, for work performed, pursuant to the judgment entered by the state court, does not preclude payment as Administrative expense of the prepetition period. Particularly, because Congress, by creating a new subsection (A) (ii), as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), expanded the expenses of administration of a bankruptcy estate, to include an additional category of administrative claims, separate from existing subsection (A) (i) and within the realm pf bankruptcy law created a special class that have been designated for spcial treatment. For the reasons set forth herein in this Reply Motion Debtor's Motion should be denied, for the following reasons:

## II. DISCUSSION

### A. BASIS FOR THE RELIEF REQUESTED

The universe of claims allowed by § 503 of the Bankruptcy Code includes pre-petition claims and certain specifically described post-petition claims.[3]

---

[3] Here is clarified that courts have determined that the categories of administrative expenses listed in section 503(b) are intended to be illustrative, not exhaustive, In re Fin. Oversight & Mgmt. Bd. for P.R. 621 B.R. 289 (D.P.R. 2020), In re Supermarket Investors, Inc., 441 B.R. 333, 343 (Bankr.E.D.Ark.2010).

3

The provisions governing filing, payment and allowance of administrative
expenses are self-contained within § 503 and do not depend upon, nor are they limited
by the filing of those pre-petition claims and post-petition claims that are governed by §
501 and § 502. See In re Plastech Engineered Products, Inc. 394 B.R. 147 (Bankr. E.D.
Mich. 2008).

The requests for payment of administrative expenses as expressly filed by Movants
under § 503(b), clearly provides that, after notice and a hearing, Bankruptcy Courts shall
allow the "actual and necessary costs and expenses of preserving the estate
"*as administrative expenses."*

**The pertinent text** reads as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses,
other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate
including—

(i) wages, salaries, and commissions for services rendered after the
commencement of the case; and

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding
of the National Labor Relations Board as back pay attributable to any period of
time occurring after commencement of the case under this title, as a result of a
violation of Federal or State law by the debtor, without regard to the time of the
occurrence of unlawful conduct on which such award is based or to whether any
services were rendered, if the court determines that payment of wages and
benefits by reason of the operation of this clause will not substantially increase the
probability of layoff or termination of current employees, or of nonpayment of
domestic support obligations, during the case under this title (to be referred to in
the rest of present Motion as " subsection (A)(ii)"

Despite that in the present case the Debtor do not dispute that Movants as regular

employees of DCR, have a back pay award in their favor for unpaid wages and benefits

for work performed, determined by judgment, as a result of a violation of Federal or State

4

law by the debtor, arbitrarily argue:"that Movants claim do not qualify for payment as administrative expenses because services were rendered pre-petition".

Although the Debtor's in its Motion, advance several arguments for why the pre-petition back pay judgment at issue is not entitled to administrative expense priority, none provides sufficient reason to overcome the statute's plain language, context, and structure of subsection"(A)(ii)".

To said effect, is important to bring to the Court's consideration that Debtor's primarily arguments are predicated on an erroneous interpretation of the law, in multiple tergiversations and incomplete information regarding the statute plain text, jurisprudence and facts, as the discussion below explains.

**First:** Debtor's argues, that the court should dismiss Movants prepetition priority claim based on the premise that the wage claim concerns prepetition services, by inappropriately editing subsection (A)(ii) plain text, and express, that "Movants don't have an allowable administrative claim, since they have identify no portion of section 503 (b) that permits administrative expense status for prepetition periods". (see Mot. at 7).

Movant's object said argument, since ("[T]he starting point for interpreting a statute is the language of the statute itself" and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.") Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); In re Meyer, 355 B.R. 837 (Bankr. D.N.M. 2006) (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citations omitted) and citing Lamie v. United States Trustee, 540 U.S. 526, 542 (2004)) (observing that the Supreme Court has instructed courts that they must "`presume that a legislature says in a statute what it means and means in a statute what

5

it says"'). Also because, under the general rules of statute interpretation the words of the statute, must be read "'in their context and with a view to their place in the overall statutory scheme . . . [and] must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole."' Greenbaum v. E.P.A., 370 F.3d 527, 535-36 (6th Cir. 2004) (quoting F.D.A. v. Brown Williamson Tobacco Corp., 529 U.S. 120, 132-33 (2000)).

Since in their Motion the Debtor only considered a fragmented or partial text of subsection (A) (ii), is this Court duty to follow the complete text, because the text is the law.

Also because Debtor's position completely ignores the plain text included in subsection (A) (ii), in interpreting Bankruptcy law, the court must be scrupulous in avoiding the use of its procedures for fraudulent purposes and otherwise to prevent bankruptcy relief from sheltering abusive misconduct.

**Second:** In the present case, is important this Court consider that, there are a number of remarkable features about this new provision included in subsection (A)(ii), since prior to BAPCPA, the Bankruptcy Code only allowed a very limited number of pre-petition obligation of a debtor under § 503 as an administrative expense.

For example, § 503(b) (3) (A) granted administrative expense priority to the actual and necessary expenses incurred by a petitioning creditor filing an involuntary bankruptcy petition against a debtor. Similarly, "reasonable compensation for professional services rendered by an attorney or an accountant" to a petitioning creditor was also treated as an expense of administration of a bankruptcy case under § 503(b) (4), even though such compensation was incurred pre-petition. These types of administrative expenses, as

6

indicated, only occur in a very small percentage of cases and typically represent a relatively small portion of a debtor's pre-petition obligations.

Consequently, by adopting subsection (A)(ii) in the BAPCPA, the expenses of administration of a bankruptcy estate was expanded, since Congress elevated certain wage claims ( as expressly identified in subsection (A)(ii)), to an "special class", if the wages and benefits were awarded "pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay, as a result of a violation of Federal or State law by the debtor. Therefore, created a new and independent category of Administrative expenses, that was not explicitly listed in the statute.[4]

In view of the above, Movants submits that the presence of this type of pre-petition debt is far more pervasive than the relatively rare types of pre-petition debts that were previously elevated to expenses of administration under § 503(b) (3) and (4). See In re Plastech Engineered Products, Inc. 394 B.R. 147 (Bankr. E.D. Mich. 2008)

**Third:** To adopt the Debtor's position results in the collision of two mandatory provisions: subsection (A) (i) and (A)(ii).

---

[4] To the extent the Debtor is arguing the radical exclusion in section 503 of prepetition claims, for being said argument highly contradictory, is important to consider that the 2005 BAPCPA also created, and elevated to an expense of administration, as a new category of prepetition claim, section 503 (b) (9) , to allow as as a prepetition administrative expense: "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." For an excellent opinion and because the decision is instructive in trying to gain an understanding of exactly what a § 503(b) administrative expense is, see In re Plastech Engineered Products, Inc. 394 B.R. 147 (Bankr. E.D. Mich. 2008).

Paradoxically, and maybe most important, – and indeed , dispositive, is also pertinent to consider that under the data provided on the record, the Debtors have admitted making payments of prepetition claims under section 503 (b) (9).(see Debtors Motion in response to discovery Motion , Docket 16883 at pag 31, parr 59). Therefore, Movants submits that based on Debtors conduct, said Party is judicially estopped from acting contrary to the position it has assumed in the same case. Perry v Blum, 629 F. 3d 1 (U.S.C.A. 1" 2010).

Here, and direct contrast, by applying well-established principles of statutory construction, Movants submits that if Congress had "desired to grant administrative expense priority only to post-petition back pay judgments ,,,, It could never approved or added set forth provisions in subsection (A)(ii).

Furthermore, because is settle law, that it is not necessary to satisfy each of the two subsections of section 503(b) (1) (A) to be entitled to an administrative claim. See In re Truland Grp., Inc. , 520 B.R. 197, 203 (Bankr. E.D. Va. 2014) (concluding that the use of the word "and" "does not require [claimants] to satisfy both subsections"); Follow by In re Word Marketing Chicago LLR. 564 B.R. 587 (2017). See also, In re Philadelphia Newspapers, LLC. , 433 B.R. 164, 174 (Bankr. E.D. Pa. 2010) (same); Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp. ), 394 B.R. 765, 774 (Bankr. D. Del. 2008) (same).

In addition because, "When faced with statutory sections that are inherently inconsistent, [the Court's] first duty is to reconcile the competing provisions so that they can both remain in effect."Schmitt v. City of Detroit, 395 F.3d 327, 330 (6th Cir. 2005).

Therefore, and applying another canon of statutory construction to above subsections, is that the meaning — or ambiguity — of certain words or phrases may only become evident when placed in context. Food and Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000) (citation omitted).

As the Court Appeals determined in U.S. v. Hall. 617 F.3d 1161 (9th Cir. 2010, "Congress is entirely free to change the law by amending the text." See Hall v. United States 132 S. Ct. 1882 (2012)

**Fourth**: For the same reasons, mentioned above, Movants object the arguments included at paragraph 8 and 9 of debtors Opposition, because the cases cited or selected internal citations, are also out of context and comments are highly misleading.

For example, and to illustrate the lack of merit and high rhetorical nature of Debtors objections to Movants pre-petition administrative expense claim, is brought to the Courts consideration, that when Debtors, at paragraph 8 of their objection, cite the cases of In re Truland Group., Inc., 520 B.R. 197 (Bankr. E.D. Va. 2014) and In re Philadelphia Newspapers, LLC, 433 B.R. 164 (Bankr. E.D. Pa. 2010), to argue that "in each instance, the claims arose from either the WARN Act or a severance allegation, and the liabilities asserted were determined to be "attributable to" the post-petition period, even if the violation occurred prepetition", and try to justify that the claims prepetition nature precludes administrative expense priority, is highly arbitrary and erroneous.

The issue concerning Debtors liability for the payment of Movants prepetition claims for the payment of wages for work performed, is significatively different when concerns the claim hold by a WARN Act employee in the cases cited.

Particularly, because is easy to understand that a WARN Act back-pay award arise out of pre-petition layoffs , based on debtor's prepetition conduct and the resulting award for wages are "constructively" earned post petition, and does not qualify as "actual and necessary" expense in the ordinary course of business. Palau Corp., 18 F.3d at 751

The problem and bottom line remains, since a layoff or dismiss employee does not perform work in benefit of the state.

For the same reason, Movants also object the analysis made by the Debtors of the decision in In re Calumet Photographic, Inc. No. 14-08893, 2016 WL 3035468 at

paragraph 9 , since the Government's chain of logic in its interpretation of the statute, is, once again, put in the wrong place.

To said effect is important to consider that in Calumet, the facts are distinct from Movants case, since in Calumet the employee's termination occurred prior to the commencement of a bankruptcy case. Therefore, based on the prepetition termination, the affected employees, as WARN Act claimants, are not necessary to maintain the debtor as a going concern or making any substantial contribution for "preserving the state." Consequently, in Calumet the court determined that there was no evidence to support the view that Congress intended to use subsection (A) (ii) to expand administrative expenses to pre-petition WARN Act claims.

The same situation is confronted In re 710 Long Ridge Rd. Operating Co, 505 B.R. 163, **173** (Bankr. D.N.J. 2014), because the controversy and the critical facts related to a prepetition Back Pay accrued during the statutory period, because the Debtors' failure to reinstate striking employees., and the employers' actions constitutes a continuing actionable violation of the NLRA, which allows the Union employees to earn the remedy of back pay for each day the Debtors failed to reinstate them. Therefore, the issue in mention case does not relate to a debt for services rendered.

In contrast, in Movants case, is clear that during the pre-petition period, the availability and service rendered by the CO's during the unpaid ½ hour of their regular 8 daily shift and the extra ½ hour work during meal breaks, was essential to the success of the services rendered and attempted reorganization. In fact, the mass exodus of the CO's would have hastened the Guerrero prison's collapse.

10

Nothing could save current DCR operations if the unique services rendered by
Correctional Officers in the present case were not rendered. The loss of their services
would be insurmountable, if of the CO's ceased to remain available to work"

Accordingly, because the COs' availability was not only beneficial but also
necessary to the preservation and operation of the Guerrero Correctional facility, the
elements required to achieve administrative expense priority are met.

Nothing prohibits immediate payment of an allowed administrative expense, either,
as the timing of payment is within this court's discretion. See In re HQ Global Holdings,
Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002); In re Rare Coin Galleries, Inc., 72 B.R. 415,
417 (Bankr. D. Mass. 1987) ("In general, the timing of the payment of ordinary
administrative claims is in the discretion of the Court.").

In addition, is worth noting that the section that the BAPCPA created and from
the plain text of sub section (A) (ii) provides certain relief to employers who failed to pay
employees their lawfull wages. Therefore, Congress intended only that under unusual,
unexpected and significant events, beyond the control of the employer, would excuse [the
employer] from its obligations, or liability, for the payment of back pay awarded to a
claimant.

11

In the present case, this Court should take notice that the Debtor, has not established grounds for disallowing CO's claim pursuant to subsection (A) (ii), since in its Motion, does not object the evidence submitted regarding cash funds available in bank accounts, that allows the immediate payment of the back pay judgment in full as administrative expense, although recognize their existence.[5]

**B. Application of Reading Co. v. Brown, 391 U.S. 471 (1968)**,

In Reading, the Supreme Court held that that "fairness to all persons having claims against an insolvent" permitted administrative expense priority for tort claims arising post petition. 391 U.S. at 477.

The Debtor has objected the applicability of the exception carved out by the Supreme Court in Reading to the present case arguing, that is inapplicable to prepetition transactions. In support of his view Debtor, point out In re Bos. Reg 'l Med. Ctr., Inc., 291 F. 3d at 126

The CO's disagree, since the mere fact that the claim or obligation in the present case arise from prepetition services, limits a claimant or this Court, to invoke the "**fundamental fairness exception**," and the reasoning of the Supreme Court's decision in Reading, or any other equitable principle to achieve fairness and justice in the present Title III process.

Makes no difference, as noted earlier, the starting point to resolve the issue of liability, for the unpaid portion of an employee regular wages, for work performed , is "benefits" the estate obtains on account of services rendered. Therefore, the doctrine is

---

[5] See Exhibit 5 included in Supplemental Motion Docket No. 18282 and compare with footnote No. 3 Debtor's Motion Docket No. 19091.

applicable to the CO's, based on the tort exception created under the Supreme Court's Reading decision, since the claim is based from the application of an unjust enrichment action. In this context, the timing is not of essence, in the overall statutory scheme

Because the "Reading exception provides that a tort committed by the debtor-in-possession within the course and scope of its continued operation of the estate's business may, itself, be considered a cost of doing business and is, the CO's contention, that under the specific facts of the present case, they are entitled to a common law remedy, in reliance on *Reading*,

"The Reading exception has been adopted by the Fifth Circuit. See, e.g., In re Al Copeland Enters., Inc., 991 F.2d 233, 239 (5th Cir. 1993) (Reading survived amendments to the Code); In re Broughton Ltd. P'ship, 474 B.R. 206, 217 (Bankr. N.D. Tex. 2012) ("It has been black letter law since the Supreme Court rendered its decision in Reading Co. v. Brown, 391 U.S. 471, 478, 88 S.Ct. 1759, *12 20 L.Ed.2d 751 (1968), that torts committed by an estate representative in the course of performing his, her or its duties give rise to claims entitled to administrative priority.").; *In re Sunarhauserman, Inc.,* 126 F.3d 811, 816 (6th Cir.1997).

Here, is important this Court consider that the requirement that an expense arise post-petition is not an inflexible rule. Each case is different and actions taken by the debtor-in possession, is tied to the purpose of § 503(b)(1)(A), which "is designed to address a specific business problem." In re Whistler Energy II, L.L.C., 931 F.3d 432, 441 (5th Cir. 2019).

For example, the problem is that third parties may refuse to extend credit or engage in business with the debtor out of fear of not getting paid. Section 503 (b) (9) alleviates

13

this problem by encouraging "third parties to provide necessary goods and services to the debtor-in-possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid." In re TransAmerican Nat. Gas Corp., 978 F.2d at 1420. This problem is not at issue in the present case.

Therefore, in the instant case, Movants relies upon Reading, and its progeny to establish that "fundamental fairness" requires that the back pay awarded by the April 22, 2016 judgment be afforded an administrative expense priority, since here, debtor has engaged in improper or negligent conduct that would give rise to a tort claim.

Movant's claims are based on a back pay judgment award, because of a violation of Federal or State law by the debtor. Since the CO's has provided security services to Correctional facilities, permitting the continuation of the prison operation, the remedy is "to recover the salaries illegally retained by the debtor who was unjustly enriched by services provided by Movants.

Contrary to Debtors allegations, Movants submits that, as a court in equity, this Court has the ability to issue orders necessary or appropriate to carry out provisions of the Bankruptcy Code, under 11 U.S.C. §105(a). Immediate payment is not contrary to the demands of the Bankruptcy Code but consistent with it. Moreover, when the evidence submitted, shows that the Debtor is financially able to pay the full administrative expenses owed now.[6] Administrative expense claims are afforded high priority pursuant to Bankruptcy Code section 507(a)(2), 11 U.S.C. § 507, for many, if not all, of the reasons stated above.

---

[6] See Exhibit -----

This favorable treatment induces CO's parties to continue working for the debtor, and thus, in turn, facilitate a debtor's reorganization efforts.

In addition, because principles of fairness and justice solidify CO's entitlement to immediate payment. See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process"). If a debtor utilizes services of a third-party post-petition and leaves this party uncompensated, immediate payment is the only just solution, since the wages here at issue are  a cost of doing business, and entitled to administrative priority, Anything short of immediate payment would be unjust and contravene clear mandates of Bankruptcy Code sections 503 and 507, 11 U.S.C. §503, § 507.

Also because unlike liquidated damages, debtor's default in payment of regular wages, on a timely basis as such, is usually considered to be a fair quid pro quo , is financially beneficial to the estate  and detrimental to the creditor.  In view that the employer use employees wage money, in the benefit of the ongoing business operations.

Because claimants here suffered, the financial injury from the negligence of the DCR based upon "**fundamental fairness exception**," and the reasoning of the Supreme Court's decision in Reading, when the employer's actions deliberately violate applicable wage law and damage others, those injured, have the "right to recover the actual and necessary costs ordinarily incident to operation of a business",' . That rule must be applied in the present case, since liability was established.

In addition, because is also important to consider that courts have found some resilience in Reading, even beyond the torts area. Reading's rationale has been extended beyond the tort area. In In re Charlesbank Laundry, Inc., 755 F.2d 200 (1st Cir. 1985), the court found that a fine for civil contempt arising from the debtor-in possession's willful violation of a state court injunction gave rise to an administrative expense. See also, Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 443 F.2d 867, 874 (2d Cir. 1971) (damages resulting from the infringement of the plaintiff's patent occurring while the trustee was operating the debtor's business, treated as administrative expense); In re Packer Ave. Associates, 1 B.R. 286 (E.D.Pa. 1979) (claim arising from trustee's breach of contract treated as administrative expense). Moreover, an administrative claim has been allowed where the court found that the debtor-in-possession engaged in frivolous litigation. See, In re E.A. Nord Co., Inc., 78 B.R. 289 (W.D.Wash. 1987). As the Seventh Circuit observed, (citing Reading) "those injured during administration of [the] estate by the Trustee [are] entitled to priority as an administrative expense." Yorke v. NLRB, 709 F.2d 1138, 1143 (7th Cir. 1983)

Based upon review of the decisions above cited, Movants must insist that the facts of the present case fall squarely within the rationale of Reading, since have convincingly established, by virtue of the judgment entered in their favor, that there was a breach of the employment contract and violation of state and federal wage laws while operating the Government Agency (DCR).

Consequently, here is no reason why the pre-petition claim of the CO's in this case does fall within both the letter and the spirit of Reading, since as indicated, this case involves a classic remedy "to recover the money from the debtor who obtained an unjust

enrichment from the work performed by the CO's, by violating state and federal wage laws. . See Cumberland Farms, Inc. v. Fla. Dep't of .............; In re G.I.C. Gov't Secs., Inc., 121 B.R. 647 (Bankr. M.D. Fla. 1990), and Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200 (1st Cir. 1985)

Also because in Reading ---the Supreme Court has held that fairness may call for the allowance of post-petition tort claims as administrative expenses, if those claims arise from actions related to the preservation of a debtor's estate despite having no discernable benefit to the estate. reading at 477, (deeming costs from fire damage resulting from the negligent actions of the bankruptcy receiver acting in the scope of his authority an "actual and necessary" expense of reorganization).

For more reason here, when there is no contest that the CO's prepetition services were beneficial to the debtor (DCR) in some demonstrable way. The mere fact that the services rendered were performed prepetition is not reason enough to conclude the services rendered does not qualify for payment as administrative expenses under the fundamental fairness doctrine established in Reading. Particularly because the critical consideration supporting the right to payment, is that the "underpayment" of regular wages was beneficial to the estate of the debtor ans an unjust enrichment.

Therefore, Movants contends that **restitution** is a remedy for an unjust enrichment claim where "[a] person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution and Unjust Enrichment § 1 (Am. L. Inst. 2011); *see also Developments in the Law—Unjust Enrichment: Introduction*, 133 Harv. L. Rev. 2062, 2062 (2020).

17

In view of the above, the CO's submits that the pre-petition back pay wage payments resulting from petitioners' pre-petition services incurred by the estate" under § 503(b), is collectible in the Title III or Chapter 11 plan, since arises out of the regular employment relationship between the debtor and its employee, and the back pay claims fits squarely within the definition of "liabilities" incurred by the Debtor in connection with the normal, usual, and customary conduct of business..."

A different interpretation would prevent the 2005 Amendment from accomplishing its basic purpose. Not only because the present case involves, a breach of a state or federal statutory duty regarding payment of employees' wages, but because, without the parties relationship, the debtor could not continue to function and meet its obligations (in this case, to provide prisons security services at the Guerrero Penitentiary, in Aguadilla).

Furthermore, because is important that courts interpreting statutes make significant efforts to allow the provisions of congressional statutes to function in the ways that the elected, since the amendment included in section 503 (b), is premised on pre-petition contractual obligation - by itself - is dispositive.

For this reason, and contrary to Debtors arguments, courts have found some resilience in Reading even beyond the field of torts is well illustrated by Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 443 F.2d 867, 874 (2nd Cir. 1971), in which , for example, the Second circuit, in setting aside a temporary injunction in favor of a patentee against a debtor in a Chapter 11 proceeding, noted that the patentee, if the patent's validity was subsequently sustained, would have a first priority claim.

18

Summarizing the facts in Reading, Judge Friendly wrote for the court, "Damages for infringing a patent in the course of sales made for profit would seem an a fortiori case for priority." Id.

So, too, is in the present case, an even stronger one for priority than was Reading, since the debtor has deliberately continued violating the law, month after month, presumably because it was more lucrative to operate the prison system by underpaying CO's for work performed and outside the wage laws, than within them.

If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, a fortiori, an intentional act, which violates the state wage laws and damages others, should be so treated. See also In re Mammoth Mart, Inc., 536 F.2d 950, 955 (1st Cir. 1976), where be court acknowledged that the Reading principle would accord first priority to a claim for compensation where a debtor-in-possession "accepts services form a third party without paying for them"; and Yorke v. NLRB, 709 F2d 1138, 1143 (7th Cir. 1983), in which the court refers to Reading's holding simply as "those injured during administration of estate by Trustee entitled to priority claim as administrative expense".

Because the CO's claim for administrative expense payment is based on an equitable claim for unjust enrichment and the alleged wrong here was committed in the ordinary course of DCR operations, Debtor's illegal retention of a portion of the CO's regular salaries, is a tort, and the remedy is "to recover from the debtor the full amount of unpaid services, since was unjustly enriched by it,."

## CONCLUSION

Debtor presented no substantive objection. In the present case there is no controversy that CO's, as regular DCR employees, were awarded back pay by the state court as the result of a violation of federal or state wage law by the Debtor (DCR) ............

Therefore, by reason of the underlying conduct, this court is empowered, pursuant to subsection (A)(ii) and section 105 of the Bankruptcy Code to order the full payment of wages owed, if determines that payment of wages and benefits, by reason of the operation of subsection (A)(ii) will not substantially increase the probability of layoff or termination of current DCR employees during the case under this title, and payment of the claim must be granted[7] The Debtor has not provided evidence to be relieved of its liability.

Also, because the payment of the administrative expense claim seek is authorized based upon "fundamental fairness exception," of the Supreme Court's decision in Reading and progeny, to prevent unjust enrichment of the debtor's by actions that deliberately violate applicable state and federal wage laws.

### REQUEST FOR EVIDENTIARY HEARING

. CO's respectfully requests that an evidentiary hearing be scheduled, if deemed appropriate by this Honorable Court.

. No prior request for the relief sought herein has been made to this Court or to any other court.

---

[7] See In re Just For Feet, Inc., 242 B.R. 821, 826, 43 Collier Bankr. Cas. 2d (MB) 476 (D. Del. 1999) (Section 105 provides "a statutory basis for the payment of pre-petition claims"); In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[U]nder 11 U.S.C. § 105 the court can per mit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor."); In re UNR Industries, Inc., 143 B.R. 506, 519-520 (Bankr. N.D. Ill. 1992), order rev'd, 173 B.R. 149 (N.D. Ill. 1994) (Necessity Doctrine permits payment of prepetition claims of suppliers and employees "whose continued cooperation is essential to the debtor's successful reorganization.");

**WHEREFORE,** the herein appearing parties respectfully requests that this Court allow CO's pre-petition claim be paid in full as an administrative expense claim, and order the immediate payment of the same, with any other appropriate relief as may be under constitution law and equity.

**CERTIFICATE OF SERVICE:** the undersigned hereby certifies that on this same date has electronically filed the foregoing with the Clerk of the Court using the CMV, ECF System, which will send notification of such filling to the parties of record.

**RESPECTFULLY SUBMITTED.**

Dated: December 6, 2021

*Attorney for the Correction Officers*

By      /s/ Ivonne González Morales
          Ivonne González - Morales
          RUA 3725 USDC-PR 202701
          P.O. BOX 9021828
          San Juan, P.R. 00902-1828
          Telephone: 787-410-0119
          Email- ivonnegm@prw.net

21