exHibiT B

exHibiT NumbeRed (1 To 44)



**GOBIERNO DE PUERTO RICO**
**JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO**
PO BOX 14427, SAN JUAN, PUERTO RICO 00916-4427

TEL. 787 620-9540
FAX. 787 620-9541

| | |
|---|---|
| AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO<br><br>Querellada<br><br>-Y-<br><br>JAIME DÍAZ O'NEILL<br><br>Querellante | CASO NÚM.: CA-2005-21<br>D-2010-1439 |

**ANTE:** Lcda. Camille Medina González
Oficial Examinadora

**COMPARECENCIAS:**
Lcda. Yolanda Toyos Olascoaga
Lcdo. Carlos X. Irizarry Rivera
Lcda. Maité Medero Benítez
Por la Autoridad de Acueductos y Alcantarillados

Lcdo. Juan A. Navarro Salgado
Lcdo. Jaime Santos Santiago
Lcda. Grace Marrero Clemente
Por el Interés Público

**DECISIÓN Y ORDEN**

## A.   TRASFONDO PROCESAL

El 28 de septiembre de 2005, el querellante, Jaime Díaz O'neill, radicó ante este Organismo el Cargo Núm. CA-2005-21, en contra de la querellada, Autoridad de Acueductos y Alcantarillados (AAA), por violación al Artículo 8, Sección (1), inciso (f) de la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como la Ley de Relaciones del Trabajo de Puerto Rico. El querellante basó su imputación en la alegación de que la querellada se rehusó a dilucidar una queja sobre su destitución sumaria, en violación al procedimiento establecido en el convenio colectivo vigente entre las partes.



En base al cargo radicado por la parte querellante, el 12 de diciembre de 2007, la División Legal, en representación del Interés Público, expidió una querella en contra de la Autoridad de Acueductos y Alcantarillados, en adelante denominada como la Autoridad o como AAA. En la referida querella, se le imputó a la Autoridad, haber incurrido en violación al Art. 8, Sección (1), inciso (f) de la Ley Núm. 130, *supra*. El Interés Público alegó además que de determinarse que el convenio no estaba vigente, en la alternativa imputaba violación a los incisos (a) y (b) de la Ley Núm. 130, *supra*, al realizar descuentos ilegales de cuota.

Luego de varios trámites procesales, el caso quedó sometido por el expediente, para adjudicación final. Tomando en consideración las alegaciones de las partes y después de hacer un análisis tanto de éstas como de la evidencia documental que obra

Decisión y Orden D-2010-1439
Caso Núm.: CA-2005-21

en el expediente, el 3 de marzo de 2010, la Lcda. Camille Medina González, emitió el escrito titulado: "Informe y Recomendación de la Oficial Examinadora". En el mismo, la Oficial Examinadora plasmó una relación de los incidentes procesales del presente caso; realizó determinaciones de hechos; expuso el derecho aplicable; esbozó un análisis de los hechos y del derecho; y recomendó que se desestimara la querella.

Después de analizar tanto el expediente en su totalidad como el Informe y Recomendaciones de la Oficial Examinadora, determinamos adoptar algunas de las determinaciones de hechos y conclusiones de derecho allí expuestas y el derecho aplicable esbozado en dicho informe. Las determinaciones de hechos y conclusiones de derecho del referido Informe que no son adoptadas en su totalidad, son modificadas en la presente Decisión y Orden. De igual forma, queda por la presente modificado el análisis realizado por la Oficial Examinadora, de conformidad con lo aquí establecido. Dicha modificación incide en la recomendación de la Oficial Examinadora en cuanto a la disposición del caso. Ante esto, se hace formar parte de esta Decisión y Orden, el Informe y Recomendaciones de la Oficial Examinadora y procederemos, basándonos en el expediente del caso, a emitir las siguientes:

B.    **DETERMINACIONES DE HECHOS**

Según indicáramos anteriormente, este Organismo, de conformidad con la evidencia que obra en el expediente, ha determinado modificar algunas de las determinaciones de hechos realizadas por la Oficial Examinadora en su Informe. A continuación indicaremos expresamente las determinaciones de hechos a las cuales hacemos referencia.

En la determinación de hecho número IV del Informe, la Oficial Examinadora hace referencia a la cláusula de prórroga automática que contiene el convenio colectivo suscrito por la UIA y la AAA el 28 de septiembre de 2000. A esta determinación de hecho, debemos añadir que no existe en el expediente evidencia de notificación de modificación de convenio que haya sido realizada con por lo menos seis (6) meses antes de su vencimiento. Ante esto, el convenio colectivo quedó prorrogado automáticamente por un año adicional y así sucesivamente.

Toda vez que la determinación de hecho número IV fue modificada, la número VI debe ser eliminada. En cuanto a la determinación de hecho número XXIX, debemos aclarar que el convenio no expiró en junio de 2003, por virtud de la prórroga automática.

C.    **DERECHO APLICABLE**

1.    **Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como la Ley de Relaciones del Trabajo de Puerto Rico:**

a.    **Artículo 8, Sección 1, inciso (f), el cual dispone:**

Viole los términos de un convenio colectivo, incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje, esté o no dicho acuerdo incluido en los términos de un convenio colectivo; Disponiéndose, sin embargo, que la Junta podrá declarar sin lugar cualquier cargo en el cual se alegue una violación de este inciso, si la unión que es parte en el contrato es culpable de una violación en curso del convenio o no ha cumplido con una orden de la Junta relativa a alguna práctica ilícita de trabajo, según lo dispone este subcapítulo.

2

Decisión y Orden D-2010-1439
Caso Núm.: CA-2005-21

2. **Código Civil de Puerto Rico:**

    a. **Artículo 1206, el cual dispone:**

El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.

    b. **Artículo 1207, el cual dispone:**

La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes.

    c. **Artículo 1209, el cual dispone:**

Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.

3. **Jurisprudencia del Tribunal Supremo:**

    a. <u>Luce y Co.</u> v. <u>JRT</u>, 86 DPR 425 (1962)
    b. <u>FSE</u> v. <u>JRT</u>, 111 DPR 520 (1981)
    c. <u>Unión de la Industria Licorera v. Destilería Serrallés, Inc.</u>, 116 DPR 348 (1985)

4. **Convenio Colectivo suscrito por la AAA y la UIA el 28 de septiembre de 2000:**

    a. **Artículo XXXI, Inciso 2, el cual sobre la vigencia del convenio colectivo dispone:**

En caso de que una de las partes desee modificar el convenio colectivo deberá someter las enmiendas por escrito a la otra parte a más tardar seis (6) meses antes de su vencimiento. De no mediar dicha notificación, se entenderá prorrogado por un año adicional y así sucesivamente. En caso de que haya intención de enmendar, la negociación comenzará a más tardar 60 días laborables después de sometidas por escrito las enmiendas.



D. **ANÁLISIS**

    El Honorable Tribunal Supremo de Puerto Rico, reiteradamente ha sostenido que el convenio colectivo es un contrato que como tal tiene fuerza de ley entre las partes suscribientes siempre que no contravenga las leyes, la moral, y el orden público[1]. Ha resuelto además que el mismo promueve la paz y la estabilidad en el campo obrero patronal[2]. Ante esto, reitera que su validez y eficacia debe ser siempre objeto del más entusiasta endoso por parte de los tribunales[3]. Es principio general del derecho contractual que la validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes[4].

---

[1] <u>Unión de la Industria Licorera</u> v.<u>Destilería Serrallés</u>, Inc., 116 DPR 348 (1985).
[2] *Id.*
[3] *Id.*
[4] Código Civil de Puerto Rico, Artículo 1208, 31 LPRA 3373

Decisión y Orden D-2010-1439
Caso Núm.: CA-2005-21

Toda vez que nuestro más Alto Foro ha establecido que los convenios colectivos son contratos, éstos se rigen por lo dispuesto en el Código Civil de Puerto Rico en dicha materia, a no ser que la ley haya dispuesto algo distinto. En cuanto a dicha materia, es norma reiterada, que los términos de un convenio de trabajo deben leerse en conjunto y armonizarse en el fin de determinar la intención de las partes[5]. El Código Civil de Puerto Rico, en su Artículo 1206[6], establece que un contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Ahora bien, éstos se perfeccionan por el mero consentimiento, y desde entonces obligan a las partes, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley[7].

Por considerarse un contrato, el Convenio colectivo constituye la ley entre las partes que otorgaron el mismo[8]. Cuando los términos de una cláusula en un contrato- en este caso la cláusula de un convenio colectivo- son claros y no dejan lugar a dudas sobre la intención de los contratantes, hay que atenerse al sentido literal de dicha cláusula[9]. En ausencia de disposiciones especiales en un convenio colectivo, o de mediar circunstancias que en derecho lo justifiquen, ninguna de las partes contratantes está obligada a negociar con respecto a disposiciones indubitablemente claras de un convenio; ni puede éste modificarse ni alterarse unilateralmente, ni parte alguna en un convenio está obligada a negociar cambios en su contenido a petición de la otra[10].

En el presente caso, la parte querellante le imputó a la parte querellada haber incurrido en práctica ilícita por violación de convenio colectivo. Toda vez que el convenio colectivo suscrito entre la UIA y la AAA disponía una vigencia hasta el 30 de junio de 2003, surgió la controversia de si al momento de los hechos alegados por la parte querellante, el convenio se encontraba o no vigente. Dicha controversia es medular, ya que de determinarse que el convenio estaba expirado, no puede existir práctica ilícita por violación de convenio. Para poder resolver esta controversia, es necesario examinar las cláusulas del convenio, el derecho aplicable y la evidencia documental presentada en este caso.

Según establecido en las determinaciones de hechos antes indicadas, el convenio colectivo suscrito por la UIA y la AAA, en su artículo XXXI sobre vigencia, contiene una cláusula de prórroga automática, la cual opera y se activa a falta de notificación de modificación de convenio, con por lo menos seis (6) meses de anticipación a la fecha de vencimiento. En el presente caso, no surge evidencia de que dicha notificación haya sido efectuada, por lo que, de conformidad con las disposiciones legales antes citadas, con relación a la interpretación de contratos, entendemos que el convenio colectivo fue prorrogado por un año adicional, y así sucesivamente. Es decir, el convenio quedó prorrogado a partir del 1 de julio de 2003 hasta el 30 de junio de 2004. Por lo que a la fecha de la imposición de la medida disciplinaria al querellante, el convenio colectivo se encontraba vigente.

Habiendo determinado la existencia de un convenio colectivo vigente al momento de los hechos imputados por la parte querellante, resta determinar si el patrono violó o no sus disposiciones. De la evidencia que obra en el expediente, surge que sí. La AAA le impuso una medida disciplinaria al querellante, tomando como base el artículo IX del convenio colectivo suscrito por la UIA y la AAA el 28 de septiembre de 2000. Lo anterior demuestra que la AAA estaba consciente de que el mismo se encontraba vigente y que tenía la obligación de cumplir con sus disposiciones. No obstante, la AAA se rehusó a dilucidar la queja presentada por el querellante, lo cual

---

[5] FSE v. IRT, 111 DPR 520 (1981)
[6] 31 LPRA 3371
[7] Código Civil de Puerto Rico, Artículo 1210, 31 LPRA 3375
[8] Luce y Co. v. IRT, 86 DPR 425 (1962).
[9] Id.
[10] Id.

4

Decisión y Orden D-2010-1439
Caso Núm.: CA-2005-21

resulta en contravención a las disposiciones del referido convenio colectivo. Más aun, surge que la AAA y la UIA suscribieron un acuerdo en el cual establecieron un método de resolución de querellas distinto al establecido en el convenio colectivo y el caso del querellante no fue incluido en dicho acuerdo. Lo anterior ha ocasionado que el querellante haya sido privado de un mecanismo para impugnar la medida disciplinaria que le fue impuesta.

E.    **CONCLUSIONES DE DERECHO**

Según expresáramos anteriormente, este Organismo, de conformidad con la evidencia que obra en el expediente y con el derecho aplicable en el presente caso, ha determinado modificar algunas de las conclusiones de derecho realizadas por la Oficial Examinadora en su Informe. A continuación indicaremos expresamente y discutiremos las conclusiones de derecho a las cuales nos referimos.

En la conclusión de derecho número III, la Oficial Examinadora expresa que el Convenio Colectivo AAA-UIA 1998-2003, suscrito el 28 de septiembre de 2000, era efectivo desde el 1 de julio de 1998 hasta el 30 de junio de 2003, inclusive. Si bien es correcto lo anterior, debemos añadir que el mismo, en su artículo XXXI, estableció un mecanismo de extensión automática. El referido artículo dispuso que el convenio colectivo, sería prorrogado por año adicional y así sucesivamente, en ausencia de solicitud de modificación de convenio, notificada con por lo menos seis (6) meses de anticipación. No surge del expediente que dentro del referido periodo se haya realizado notificación alguna de negociación, por lo que el convenio colectivo fue prorrogado automáticamente por año adicional, por virtud de la disposición contractual antes mencionada.

Más adelante, en la conclusión de derecho número V, la Oficial Examinadora expresa que la Estipulación firmada por Ondeo y UIA, en la cual se extendía el convenio 1998-2003, no fue ratificada por la Junta de Directores de la AAA, mediante Resolución 2033. Añade que de igual forma, lo negociado en relación al Artículo IX sobre Procedimiento para Atender y Resolver Querellas tampoco fue ratificado. En cuanto a esta determinación, debemos aclarar que el efecto de la no ratificación por parte de la Junta de Directores de la AAA de la Estipulación firmada por la UIA y Ondeo, no tiene efecto alguno, toda vez que el convenio colectivo ya había sido prorrogado por un año adicional. Además, entendemos que de haber tenido algún efecto, este no podía ser retroactivo. En todo caso, la estipulación firmada entre la UIA y Ondeo, en aquel momento tuvo el efecto de reiterar la continuación del convenio, ya que de *facto*, el convenio había sido prorrogado.

Ante la modificación de las conclusiones de derecho mencionadas anteriormente, resulta forzoso concluir que para la fecha en que el querellante en el presente caso es destituido sumariamente de la AAA, el convenio colectivo suscrito por la UIA y la AAA el 28 de septiembre de 2000, se encontraba vigente, contrario a lo establecido por la Oficial Examinadora en la conclusión de derecho número VI. Ante esto, el patrono, es decir la AAA, venía obligada a cumplir con las disposiciones del Artículo IX del referido convenio y al así no hacerlo, cometió la práctica ilícita imputada, según definida en el Artículo 8, Sección (1), Inciso (f) de la Ley Núm. 130, *supra*.

Por todo lo anterior, determinamos que, la AAA al rehusarse a dilucidar la queja número CQ-04-1671, sobre destitución sumaria del querellante, violó el convenio colectivo firmado por ésta y la UIA el 28 de septiembre de 2000, en sus disposiciones sobre Procedimiento para Atender y Resolver Querellas. Al así actuar, incurrió en práctica ilícita del trabajo en el significado del Artículo 8 (1)(f) de la Ley Núm. 130, *supra*.

Decisión y Orden D-2010-1439
Caso Núm.: CA-2005-21

A tenor con las anteriores Determinaciones de Hechos y Conclusiones de Derecho, al amparo de la facultad conferida en el Artículo 9 (1)(b) de la Ley de Relaciones del Trabajo de Puerto Rico, se emite la orden que se esboza a continuación.

## F.   DETERMINACIÓN DE LA JUNTA

En vista de lo antes expuesto, de conformidad con la evidencia que obra en el expediente y con el derecho aplicable, virtud de las facultades conferidas a este Organismo por la Ley Núm. 130, *supra*, y por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme, la Junta, con el voto de sus miembros, determinó declarar Ha Lugar la querella de epígrafe y en su consecuencia emite la siguiente:

### ORDEN

La Autoridad de Acueductos y Alcantarillados, sus agentes, oficiales, sucesores y cesionarios deberán:

1. Cesar y desistir de violar el convenio colectivo firmado por la UIA y la AAA el 28 de septiembre de 2000, particularmente en sus disposiciones sobre Procedimiento para Atender y Resolver Querellas.
2. Fijar en sitios visibles a sus empleados afiliados a la UIA, copias del Aviso de que se aneja a la presente Decisión y Orden, por un término de treinta (30) días consecutivos.
3. Informar a la Junta, dentro de un término de treinta (30) días, contados a partir de la notificación de la presente Decisión y Orden, las medidas tomadas para cumplir con lo aquí ordenado.

De conformidad con las disposiciones de la Sección 3.15 de la Ley Núm. 170 de 142 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme, la parte adversamente afectada por la presente Decisión y Orden, podrá dentro del término de veinte (20) días, contados a partir de la fecha de archivo en autos de copia de su notificación, presentar una moción de reconsideración. En la alternativa, conforme lo dispuesto en la Sección 4.2 de la Ley Núm. 170, *supra*, dentro del término de treinta (30) días, contados a partir de la fecha de archivo en autos de copia de su notificación, podrá presentar una Solicitud de Revisión Judicial ante el Tribunal de Apelaciones.

En San Juan, Puerto Rico, hoy __16__ de junio de 2010.

Lcdo. Jeffry J. Pérez Cabán
Presidente

Sr. Harry O. Vega Díaz
Miembro Asociado

6

Decisión y Orden D-2010-1439
Caso Núm.: CA-2005-21

## NOTIFICACIÓN

Certifico que en el día de hoy se ha notificado, mediante correo certificado con acuse de recibo, copia de la presente Decisión y Orden, a las siguientes personas:

1. Lcdo. Víctor Rodríguez Fuentes
   Cancio, Nadal, Rivera & Díaz, P.S.C.
   PO Box 364966
   San Juan, PR 00936-4966

2. Lcda. Tania M. Vázquez Maldonado
   Cancio, Nadal, Rivera & Díaz, P.S.C.
   PO Box 364966
   San Juan, PR 00936-4966

3. Ing. José F. Ortiz
   Director Ejecutivo de la AAA
   PO Box 7066
   San Juan, PR 00916-7066

4. Sr. Jaime Díaz O'neill
   Suite 428
   PO Box 20000
   Canóvanas, PR 00729

5. División Legal
   Junta de Relaciones del Trabajo
   (A la Mano)

En San Juan, Puerto Rico, a _16_ de junio de 2010.



Lcda. Michelle Brull Díaz
Secretaria Interina de la Junta

**SELLO OFICIAL**

**AVISO**
**A TODOS NUESTROS EMPLEADOS**

CASO: CA-2005-21
DECISIÓN Y ORDEN D-2010-1439 DE LA
JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO

NOSOTROS, LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO, nuestros agentes, oficiales, sucesores y cesionarios, en cumplimiento de una Decisión y Orden emitida por la Junta de Relaciones del Trabajo de Puerto Rico y con el propósito de efectuar la política pública expresada en la Ley de Relaciones del Trabajo de Puerto Rico, notificamos a todos nuestros empleados que:

1. Cesaremos y desistiremos de violar el convenio colectivo suscrito entre la UIA y la AAA el 28 de septiembre de 2000, particularmente en sus disposiciones sobre Procedimiento para Atender y Resolver Querellas.

AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS

Por: _____
Título

Fecha de Publicación:_____

Este Aviso deberá permanecer fijado en sitios visibles a los empleados por un periodo no menor de treinta (30) días consecutivos y no deberá ser alterado, modificado o cubierto en forma alguna.



GOBIERNO DE PUERTO RICO
JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO
P. O. BOX 14427
BO. OBRERO STA. SANTURCE, PUERTO RICO  00916-4427

TEL. 787-620-9545
FAX 787-620-9543

EN EL CASO DE:

AUTORIDAD DE ACUEDUCTOS Y
ALCANTARILLADOS  (AAA)

QUERELLADA

-Y-

JAIME DÍAZ O'NEILL

QUERELLANTE

CASO NUM. CA-2005-21

ANTE: <u>Lcda. Camille Medina González</u>
Oficial Examinadora

COMPARECENCIAS:

Lcda. Yolanda Toyos Olascoaga
Lcdo. Carlos X. Irizarry Rivera
<u>Lcda. Maité Medero Benítez</u>
En representación de la AAA

Lcda. Grace Marrero Clemente
Lcdo. Jaime Santos Santiago
<u>Lcdo. Juan A. Navarro Salgado</u>
En representación del Interés Público

## INFORME Y RECOMENDACIONES DE LA OFICIAL EXAMINADORA

El 28 de septiembre de 2005, el Sr. Jaime Díaz O'neill[1]/ presentó ante la
Junta de Relaciones del Trabajo de Puerto Rico,[2]/ cargo contra la Autoridad de
Acueductos y Alcantarillados de Puerto Rico[3]/.  Basándose en dicho cargo, la
Junta expidió querella el 12 de diciembre de 2007.  En la misma, se alegó que el
Patrono incurrió en una práctica ilícita de trabajo según definida en el Artículo 8,
Sección (1), Inciso (f) de la Ley de Relaciones del Trabajo de Puerto Rico, o en
la alternativa según los incisos (a) y (b)[4]/, consistente en lo siguiente:

> "El Querellante alega que el Patrono ha violado el
> Convenio Colectivo entre la AAA y la UIAAAA (sic) en su
> Artículo IX, donde se establece un procedimiento para
> atender y resolver querellas. El mismo dispone un término
> de 45 días para resolver las querellas presentes o de lo
> contrario las mismas se adjudican a favor del querellante
> cuando la dilación es atribuible al Patrono.  En el caso de

---

[1]/En adelante el Querellante
[2]/ En adelante la Junta
[3] En adelante la Querellada, el Patrono o la AAA
[4]/ 29 LPRA § 69 (1) (a) (b) (f).

Informe y Recomendación de la O/E                              2
Caso Núm. CA-2005-21
3 de marzo de 2010

autos el Patrono ha violado este procedimiento al impedir que se atienda y resuelva su caso CQ-04-1671 ("destitución sumaria") y CQ-04-1037 (sobre "daños y perjuicio (sic) basados en persecución directa, carpeteo y fabricación de casos") que surgieron bajo el convenio colectivo anteriormente vigente. Al día de hoy estos casos están paralizados sin que se provea un mecanismo para dilucidar y resolver los mismos.

El Querellante ha realizó (sic) varias gestiones infructuosas con el Patrono para que se atiendan y resuelvan sus casos.

Estas actuaciones constituyen una práctica ilícita por violación de los términos del convenio colectivo."

## INCIDENTES PROCESALES

I. El 12 de diciembre de 2007, la Honorable Junta expidió Querella contra la AAA en el caso de epígrafe. La misma, fue notificada el 2 de enero de 2008, junto con el Cargo y el correspondiente Aviso de Audiencia.

II. El 18 de enero de 2008, la Lcda. Maité Medero Benítez, en representación de la AAA, presentó solicitud de prórroga para presentar contestación a la querella. Dicha solicitud fue concedida por el entonces Presidente, Lcdo. Carlos A. Marín Vargas, mediante Resolución de 18 de enero de 2008. El 31 de enero, la AAA a través de su representación legal presentó "Contestación a la Querella".

III. El 1 de febrero de 2008, el Interés Público, representado por el Lcdo. Juan A. Navarro, presentó "Moción Solicitando se Nos Autorice a Presentar Querella Enmendada". El 4 de febrero, el Presidente de la Junta mediante Resolución concedió un término vencedero el 11 de febrero para presentar y notificar Querella Enmendada. Asimismo, concedió a la Querellada hasta el 19 de febrero para presentar la correspondiente contestación.

IV. El 4 de febrero de 2008, la Querellada presentó Moción Urgente Solicitando Orden" en la que solicitó se ordenara al Interés Público notificar la Moción presentada el 1 de febrero. El 5 de febrero, el Presidente de la Junta mediante Resolución reiteró la fecha para presentar contestación a querella.

V. El 12 de febrero de 2008, la representación legal de la AAA presentó "Moción Solicitando Desestimación y/o Sentencia Sumaria". El 14 de

Informe y Recomendación de la O/E                                                   3
Caso Núm. CA-2005-21
3 de marzo de 2010

febrero, el Presidente emitió Resolución en la que concedió término al Interés Público para presentar su posición en torno al escrito presentado por la AAA y reiteró el término concedido a la Querellada para presentar contestación a Querella Enmendada.

VI.  El 19 de febrero de 2008, la Querellada presentó Contestación a Querella Enmendada.

VII.  El 25 de febrero de 2008, el Interés Público presentó "Réplica del Interés Público a la Moción Solicitando Desestimación y/o Sentencia Sumaria de la Querellada".

VIII.  El 27 de febrero de 2008, el Presidente emitió Resolución en la que declaró No Ha Lugar la Moción presentada por el Patrono en la que solicitó la desestimación del cargo y/o se dictara resolución sumaria en el caso de epígrafe.

IX.  El 27 de febrero de 2008, el Interés Público presentó ante la consideración del Presidente de la Junta "Moción de Citación de Personas y Documentos". La misma fue declarada No Ha Lugar el 28 de febrero.

X.  El 12 de marzo de 2008, se celebró Audiencia Pública.  A la misma compareció el licenciado Navarro en representación del Interés Público y acompañado del Querellante. La licenciada Medero compareció en representación de la Querellada.  Durante el transcurso de la Audiencia se suscitó un incidente con el Querellante, el cual a solicitud del Interés Público, fue elevado ante la consideración de la Junta para el correspondiente pronunciamiento.

XI.  El 14 de marzo de 2008, mediante Resolución, el Presidente de la Junta ordenó a la que suscribe rendir un Informe completo sobre lo suscitado durante la Audiencia de 12 de marzo.  El 24 de marzo, la que suscribe presentó ante la Junta "Informe Sobre Incidente Acaecido".  En el mismo, se relató el incidente en el que el Querellante, de forma irrespetuosa e inapropiada, se comportó durante la Audiencia, no acatando las órdenes de la que suscribe y proyectado una actitud inaceptable para con este foro.

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010

4

Se solicitó de la Honorable Junta, procediera conforme a lo dispuesto en el Artículo II, Sección 7 del Reglamento Número 2 de la Junta, y/o en la alternativa, emitiera una censura enérgica sobre el comportamiento del Querellante.

XII. El 25 de marzo de 2008, la Querellada presentó "Moción Urgente Solicitando Término para Presentar Oposición", con relación al escrito presentado por el Interés Público en el que solicitaba citación de personas y documentos.

XIII. El 28 de marzo de 2008, el Presidente emitió Resolución en la que apercibió al Querellante sobre su conducta y le exhortó a ejercer una conducta ordenada y respetuosa hacia el foro, siguiendo las instrucciones del representante del Interés Público y acatando las directrices de orden que establezca la Oficial Examinadora.

XIV. El 7 de abril de 2008, la que suscribe emitió Resolución en la que apercibía al Querellante de que todo trámite relacionado al caso debía ser canalizado a través de las respectivas representaciones legales. Lo anterior, toda vez que el 31 de marzo de 2008, la representación de la AAA presentara *Moción Urgente y en Solicitud de Orden*, en la que informaba de un incidente ocurrido en el que el Querellante se personó a la AAA para entregarle a la Directora de Relaciones Laborales, Lcda. Belkin Nieves, unos documentos relacionados al caso.

XV. El 17 de abril de 2008, la que suscribe emitió Resolución, en la que, además de apercibirle nuevamente al Querellante de que todo trámite debía canalizarse a través del Interés Público, se elevó el expediente del caso ante la consideración de la Junta. Lo anterior, toda vez que se recibiera en la División de Secretaría una carta firmada por el Querellante y dirigida a la Junta solicitando la Reconsideración de la Resolución de 14 de marzo.

XVI. El 29 de abril de 2008, el Querellante solicitó directamente a la Junta mediante comunicación, que se relevara a la División Legal de la Junta de

Informe y Recomendación de la O/E                                                5
Caso Núm.  CA-2005-21
3 de marzo de 2010

la representación legal del Interés Público y a su vez de su representación como querellante.  Solicitó se le ordenara a la División Legal entregar el expediente completo del caso.

XVII. El 29 de abril de 2008, el Interés Público presentó 'Moción Solicitando Se Nos Autorice a Presentar Segunda Querella Enmendada".  Se concedió término de diez (10) días para presentar querella enmendada, mediante Resolución de 30 de abril.

XVIII. El 7 de mayo de 2008, la Junta emitió Resolución en la que, censuró la conducta del Querellante para con este foro, resolvió que toda intervención de éste debía ser canalizada a través del representante legal del Interés Público.  Se le apercibió que de continuar con dicha conducta podría estar sujeto a la imposición de multa o incluso la desestimación del caso.  Igualmente, fue advertido  que el Interés Público tiene la facultad para someter el caso como una controversia de derecho sin necesidad de recibir evidencia testifical.

XIX. El 15 de mayo de 2008, el Interés Público presentó "Segunda Querella Enmendada".

XX. El 13 de junio de 2008, la Querellada presentó "Contestación a Segunda Querella Enmendada".

XXI. El 23 de junio de 2008, el Interés Público presentó "Moción Solicitando se Ordene a la Querellada a Someter una Contestación a Segunda Querella Enmendada Mediando Juramento".  Asimismo, el 24 de junio, presentó "Moción Reiterando Solicitud de Personas y Documentos".  El 25 de junio, la que suscribe emitió Resolución en la que se declaró Con Lugar la solicitud del Interés Público con relación al requisito de juramentación de la contestación a la querella.  Por otro lado, se elevó ante la Junta la solicitud de citación de personas y documentos.

XXII. El 11 de diciembre de 2008, la Junta emitió Resolución en la que declaró Ha Lugar la solicitud del Interés Público sobre citación de personas y documentos para propósitos de la Audiencia de 21 y 22 de enero de 2009.

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010
6

XXIII. El 21 de enero de 2009, se celebró Audiencia Pública en el caso de epígrafe. A la misma, compareció la Lcda Maité Medero Benítez y la Lcda. Yolanda Toyos Olascoaga en representación de la AAA. El Interés Público estuvo representado por el Lcdo. Juan A. Navarro. El día anterior a la Audiencia, la representación legal de la AAA presentó a nuestra consideración una "*Solicitud de Sentencia Sumaria y/o Desestimación por Falta de Parte Indispensable*". Comenzada la Audiencia, se le concedió al representante del Interés Público término para presentar oposición a dicho escrito. Durante la vista, las representantes de la AAA expresaron cierta preocupación por las citaciones de personas emitidas por la Junta[5]/ y la alegada existencia de un *Injunction* emitido por el Tribunal de Primera Instancia en contra del Querellante. No trajeron consigo el documento, número del caso, ni precisaron el alcance del mismo. Argumentaron que su preocupación iba dirigida a cuestiones de seguridad para con las personas citadas. Atendidos los argumentos, se le ordenó a la representación de la AAA someter vía fax copia del *Injunction* emitido por el Tribunal.

La que suscribe ordenó a los representantes legales de las partes reunirse en la mañana del 22 de enero, para que pudieran estipular documentos y hechos, y aclarar cualquier otro extremo relacionado al caso.

XXIV. El 22 de enero de 2009, la Lcda. Maité Medero Benítez, en representación de la AAA, compareció a la Junta y presentó en Secretaría copia del referido *Injunction* y una Moción en Cumplimiento de Orden. Dicha Moción incluyó estipulaciones propuestas y documentos cuyo contenido es estipulable. El 2 de febrero de 2009, el Interés Público replicó el mencionado escrito.

XXV. El 27 de enero de 2009, el Interés Público presentó escrito de oposición a la solicitud de sentencia sumaria y/o desestimación presentada por la representación de la AAA. Igualmente, presentó Moción Informativa en la que entre otras cosas expresó que la Orden de *Injunction* presentada por la

---

[5]/ Véase Resolución de 11 de diciembre de 2008 emitida por la Honorable Junta.

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010

7

representación de la AAA no tenía el alcance que ésta pretendía. No obstante, expresó que cualesquiera medidas que se entendieran necesarias resultaban prerrogativa de la que suscribe.

XXVI. El 27 de enero de 2009, la Lcda. Maité Medero Benítez presentó Moción Informativa en la que entre otras cosas informó que restaba la culminación de la reunión ordenada por la que suscribe en la que se estipularían aquellos hechos y documentos que no se encontraban en controversia. Además, solicitó se le relevara de la representación legal en el presente caso, informando que la representación legal continuaría a cargo de la Lcda. Yolanda Toyos Olascoaga.

XXVII. El 28 de enero de 2009, el Querellante se personó a la División de Secretaría de la Junta y suscribió por cuenta propia un documento dirigido al Pleno de la Junta en la que solicitó se relevara a la División Legal como representante del Interés Público.

XXVIII. El 2 de febrero de 2009, el Lcdo. Juan A. Navarro Salgado presentó Moción de Renuncia de Representación Forense, toda vez que el 31 de enero de 2009, se hizo efectiva su renuncia como empleado de la Junta de Relaciones del Trabajo.

XXIX. El 4 de febrero de 2009, la que suscribe emitió Resolución en la que se elevó ante el Pleno de la Junta la preocupación levantada por la representación legal de la AAA, con relación a la seguridad de las personas citadas para comparecer a Audiencia. Lo anterior, a la luz de la existencia de la Orden de *Injunction* emitida por el Tribunal de Instancia en el caso civil número K PE2008-1139, *AAA vs. Jaime A. Díaz O'neill*. Igualmente, se aceptó la renuncia de representación legal de la Lcda. Maité Medero Benítez y el Lcdo. Juan A. Navarro Salgado.

XXX. El 11 de febrero de 2009, la Junta emitió Resolución en la que expresó que la solicitud hecha por el Querellante el 28 de enero, ejemplificaba una conducta desafiante, irrespetuosa, y por ende, violatoria de las órdenes y directrices impartidas por la Junta. Reiteró que, la División Legal es la

Informe y Recomendación de la O/E                                        8
Caso Núm. CA-2005-21
2 de marzo de 2010

única representante del Interés Público.   Censuró enérgicamente tal conducta y procedió a imponer una multa de $1000, con una orden de mostrar causa por la cual no se debería desestimar su caso.   Asimismo, señaló que dicha determinación tenía su génesis en el historial de conducta desafiante, irrespetuosa y violatoria de órdenes previas.

XXXI.   El 5 de marzo de 2009, la Junta mediante Resolución modificó la cuantía de la multa y le concedió término al Querellante para que mostrara causa por la cual la Junta no debía desestimar la querella de epígrafe. El 13 de marzo, el querellante presentó ante la Secretaría de la Junta un escrito asumiendo su posición sobre la orden, y acompañó el mismo con un giro por la cantidad correspondiente a la multa.

XXXII.   El 2 de abril de 2009, la Junta emitió Resolución en la que ordenó la continuación de los procedimientos de Audiencia.   No obstante, le aclaró al Querellante que su historial de conducta no quedaba en el vacío.   Mantuvo vigente la censura enérgica previamente indicada, así como los apercibimientos sobre su conducta para con la Junta y componentes administrativos.   Indicó que la Junta no toleraría otra conducta indebida.

XXXIII.   El 7 de mayo de 2009, la Lcda. Grace Marrero Clemente asumió la representación del Interés Público mediante moción a esos efectos.

XXXIV.   El 8 de mayo de 2009, la que suscribe emitió Resolución en la que resolvió elevar ante la consideración de la Junta en Pleno dos asuntos: el que se declarase Sin Lugar la Solicitud de Sentencia Sumaria, presentada por la AAA, toda vez que existen controversias sustanciales en cuanto a hechos materiales y como cuestión de derecho no procede el que se dicte sentencia sumaria a favor de la AAA. El segundo asunto, que se declarase Sin Lugar la Solicitud de Desestimación por Falta de Parte Indispensable por no resultar necesario, a fines de dar un remedio completo, si se encontrase al patrono incurso en las prácticas imputadas, el traer a la Unión Independiente Autentica[6]/ como parte indispensable.

---

[6]/ En adelante la UIA o Unión.

*17*

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010

9

**XXXV.** El 12 de mayo de 2009, la AAA presentó un 'Escrito de Excepciones" ante la Junta.

**XXXVI.** El 13 de mayo de 2009, la Junta emitió Resolución en la que declaró No Ha Lugar la solicitud de sentencia sumaria y/o desestimación por falta de parte indispensable y ordenó la continuación de los procedimientos de audiencia y asuntos pendientes ante la consideración de la que suscribe.

**XXXVII.** El 12 de junio de 2009, la que suscribe emitió Resolución en la que ordenó a los abogados de las partes reunirse e informar conjuntamente sobre estipulaciones logradas, si alguna.  El 8 de julio de 2009, las partes presentaron Moción Informativa en cumplimiento con dicha orden.

**XXXVIII.** El 17 de julio de 2009, el representante legal de la AAA, Lcdo. Carlos Irizarry Rivera, presentó "Moción Informativa y Solicitud de Remedio Dirigida a Detener Comportamiento Reiterado del Sr. Jaime Díaz O'neill".  El 21 de julio el Interés Público presentó "Moción Informativa" en donde recogía varios incidentes ocurridos con el Querellante, en las facilidades de la Junta.

**XXXIX.** El 24 de julio de 2009, la que suscribe emitió Resolución en la que se resolvió elevar las incidencias informadas por los representantes legales de las partes con relación al comportamiento del Querellante.  Se recomendó a la Junta proceder de conformidad a lo dispuesto en el Artículo II, Sección 7 del Reglamento Número 2 de la Junta.

**XL.** El 11 de agosto de 2009, la Junta emitió Resolución en la que ordenó la exclusión del Querellante de todo procedimiento de Audiencia, conforme al Reglamento de la Junta, y determinó que la representante del Interés Público podría continuar sin la comparecencia del Querellante.

**XLI.** El 17 de agosto de 2009, se celebró Audiencia.  Se emitió Resolución concediendo término a las respectivas representaciones legales de las partes, para informar si someterían el caso por el expediente formal y la prueba presentada, o si en la alternativa presentarían prueba adicional.

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010

10

**XLII.** El 31 de agosto de 2009, el Querellante solicitó directamente a la Junta que se le proveyera información relativa a comunicaciones internas de la Junta con la Policía de Puerto Rico.

**XLIII.** El 11 de septiembre de 2009, el Querellante solicitó *motu propio* a la Junta, el relevo de la División Legal como representante del Interés Público y la entrega del expediente de la etapa investigativa.

**XLIV.** El 14 de septiembre de 2009, la que suscribe emitió Resolución en la que informó sobre la disponibilidad de la Transcripción Oficial de la Audiencia y concediendo término a las representaciones legales de las partes para presentar Memoriales de Derecho.

**XLV.** El 22 de septiembre de 2009, la que suscribe emitió Resolución en la que elevó ante la consideración de la Junta una solicitud hecha por el Querellante, *motu propio*, a los efectos de que se le relevara como Oficial Examinadora del caso de epígrafe.

**XLVI.** El 14 de octubre de 2009, el Interés Público presentó Memorial de Derecho. El 21 de octubre, la AAA presentó su escrito.

**XLVII.** El 15 de octubre de 2009, la Presidenta Interina emitió Resolución en la que declaró No Ha Lugar a las solicitudes del Querellante.

### DETERMINACIONES DE HECHO:

#### I. La Querellada:

La Autoridad de Acueductos y Alcantarillados es una Corporación Pública del Estado Libre Asociado de Puerto Rico que se dedica a suministrar agua potable y disponer de aguas usadas. Para desarrollar dichas actividades utiliza empleados en estas labores. Por tanto, es un patrono dentro del significado del Artículo 2, incisos (2) y (11) del la Ley de Relaciones del Trabajo de Puerto Rico.[7]

---

[7] 29 LPRA § 63 (2) y (11).  En adelante la Ley.

Informe y Recomendación de la O/E                                11
Caso Núm. CA-2005-21
3 de marzo de 2010

II.  El 3 de mayo de 2002, la AAA otorgó un contrato con Ondeo de Puerto
Rico, Inc. Para la administración, operación, mantenimiento y reparación
de los sistemas de agua.[8]

III. La Unión Independiente Auténtica, es una organización dedicada a
representar y negociar en nombre de los empleados para fines de la
negociación colectiva.  La UIA, fue certificada por la Junta, como
representante para fines de negociación colectiva, de un grupo de
empleados de la AAA.

IV. El 28 de septiembre de 2000, la AAA y la UIA suscribieron un Convenio
Colectivo.  El mismo era efectivo desde el 1 de julio de 1998 hasta el 30
de junio de 2003, inclusive.  En el caso que una de las partes deseara
modificar el mismo debía someter las enmiendas por escrito a la otra
parte a mas tardar seis (6) meses antes de su vencimiento.  De no mediar
dicha notificación, se entendía prorrogado por un año adicional y así
sucesivamente. [9]

V. El 4 de agosto de 2003, como parte del proceso de negociación colectiva,
representantes de Ondeo de Puerto Rico y de la UIA, suscribieron una
Estipulación que disponía que se ponía en vigor el Convenio Colectivo de
Trabajo que había expirado el 30 de junio de 2003, además de cada una
de las estipulaciones firmadas entre las partes desde el 1 de julio de 2002,
que habían sido basadas en el acuerdo de relaciones obrero –patronales
del 28 de junio de 2002.  Se estipuló además que las mismas se
mantendrían vigentes hasta tanto se iniciaran las negociaciones de un
convenio colectivo de trabajo, durante las negociaciones y hasta tanto se
firmara el mencionado convenio.[10]

VI. Toda vez que Ondeo puso en vigor el convenio expirado a junio de 2003, la
relación entre las partes continuó, manteniendo el "status quo".[11]

---

[8] Véase Exhibit 1 Conjunto
[9] Véase Exhibit 2 Conjunto
[10] Véase Exhibit 3 Conjunto
[11] Hecho estipulado por las partes mediante Moción conjunta de 9 de Julio de 2009.

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010

12

VII. En diciembre de 2003, la AAA, terminó el contrato de operación que mantenía con Ondeo. Conforme a los antes expuesto, al momento de la AAA retomar la operación, Ondeo había comenzado a negociar el nuevo Convenio, tras la expiración del anterior, a junio de 2003.[12]

VIII. Durante todo proceso de la retoma de la Corporación, el Sr. Juan Agosto Alicea, entonces Presidente Ejecutivo de la AAA y el Sr. Héctor René Lugo, entonces Presidente de la UIA, decidieron paralizar la ventilación de las querellas al amparo del Convenio por lo que solicitaron una moratoria de sesenta (60) días en el proceso de ventilación de querellas.[13]

IX. El 1 de marzo de 2004, la Junta de Directores de la AAA aprobó la Resolución Número 2033.[14]  En la misma, la Junta de Directores de la AAA ratificó once (11) de los dieciocho (18) artículos negociados entre Ondeo y la UIA, y ordenó volver a discutir los restantes siete (7).

X. El 23 de marzo de 2004, el Sr. Juan Agosto Alicea cursó comunicación escrita al Sr. Héctor René Lugo en la que solicitó una moratoria adicional de sesenta (60) días en la ventilación de querellas y propuso se le diera prioridad a la discusión de dicho artículo en las negociaciones del que sería el nuevo convenio. [15]

XI. Mediante comunicación escrita fechada del 26 de marzo de 2004, el Sr. Héctor René Lugo solicitó una reunión con el Sr. Juan Agosto Alicea para seleccionar los nuevos Árbitros del Comité de Querellas según lo establecido en el Artículo IX, Sección 5, Inciso A (3) del Convenio Colectivo otorgado el 28 de septiembre de 2000, toda vez que su nombramiento había vencido según el referido artículo. En dicha misiva le informó la suspensión de los procedimientos de vistas mientras no se diera cumplimiento a dicho artículo del convenio. [16]

XII. El Sr. Héctor René Lugo notificó a los árbitros del Comité de Querellas de la UIA-AAA, la suspensión de sus itinerarios correspondientes al período

[12] Hecho estipulado por las partes.
[13] Véase Exhibit 1
[14] Véase Exhibit 4 Conjunto
[15] Véase Exhibit 5 Conjunto
[16] Véase Exhibit 6 Conjunto

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010

13

comprendido entre el 29 de marzo de 2004 y el 30 de abril de 2004, en vista de una solicitud de selección de nuevos árbitros que hiciera la UIA à la AAA. [17]

XIII. El 1 de abril de 2004, la AAA retomó las operaciones de los servicios previamente administrados por Ondeo. A esa fecha, la AAA continuó la negociación que Ondeo había comenzado, algunas de las medidas negociadas por Ondeo fueron ratificadas, otras no. La AAA, a ese momento mantuvo el "status quo".[18]

XIV. El 21 de abril de 2004, el Sr. Juan Agosto Alícea suscribió comunicación dirigida el Sr. Héctor René Lugo. En la misma, le exhortó a que las diferencias existentes en la mesa de negociación se dilucidaran a través de los procesos establecidos en la ley y en el convenio colectivo. Le solicitó además, que impartiera instrucciones a los presidentes de capítulos y delegados para que descontinuasen el entorpecimiento a las labores en la AAA. [19]

XV. El 18 de mayo de 2004, el Sr. Juan Agosto Alicea suscribió carta dirigida al Sr. Héctor René Lugo, en la que informó que, con efectividad inmediata, se dejaban sin efecto varios artículos del convenio, entre ellos, el Articulo VII-Deducción de cuotas de la Unión.[20]

XVI. Desde el 26 de enero de 2004, no se volvieron a celebrar vistas de arbitraje, entre la AAA y la UIA.[21]

XVII. El Sr. Jaime Díaz O'neill fue empleado regular de la AAA y miembro de la UIA. Durante el primer cuatrimestre del año 2004, el Querellante ocupaba un puesto de Oficinista en el Centro Telefónico de la AAA.[22]

XVIII. El 7 de abril de 2004, el Querellante fue citado a comparecer el 15 de abril de 2004, ante el Sr. Edwin Rivera Cardona, Especialista de Recursos Humanos, para una entrevista sobre hechos ocurridos el 19 de febrero de

---

[17] / Véase Exhibit 7 y 8 Conjunto
[18] / Hecho estipulado por las partes en Moción de 9 de Julio de 2009.
[19] / Véase Exhibit 9 Conjunto
[20] / Véase Exhibit 10 Conjunto
[21] / Hecho estipulado por las partes.
[22] / Hecho estipulado por las partes.

Informe y Recomendación de la O/E                                    **14**
Caso Núm. CA-2005-21
3 de marzo de 2010

2004 en el Centro Telefónico.[23]/ El 15 de abril de 2004, el Querellante compareció ante el señor Rivera y suscribió una "Certificación" sobre lo ocurrido.[24]/

XIX. El 10 de mayo de 2004, la Directora Interina de Recursos Humanos y Relaciones Industriales, Lcda. Belkin Nieves González, le informó al Querellante la intención de destituirlo sumariamente según dispuesto en el Artículo IX, Sección 3, Inciso B (1), además se le apercibió de su derecho a una vista informal, no evidenciaria, a celebrarse el 1 de junio de 2004. El Querellante no compareció a la misma. [25]/

XX. A la vista informal compareció el Sr. Juan Ramos Hernández, Presidente del Capítulo de San Juan e informó haberse comunicado con el Querellante para recordarle la vista; a lo que el Querellante respondió no haber recibido comunicación alguna. Ante dicha situación, la vista pautada para el 1 de junio de 2004, fue reseñalada para el 7 de junio, en la oficina de la Lcda. Belkin Nieves González.[26]/

XXI. El 3 de junio de 2004, mediante comunicación escrita, el Querellante solicitó a la Lcda. Belkin Nieves que le entregara personalmente copia de la comunicación en la que se le notificaban los cargos, además solicitó la cancelación de la vista pautada para el 7 de junio de 2004, por entender que necesitaba comparecer acompañado de su representante legal. [27]/

XXII. El 3 de junio de 2004, la licenciada Nieves le informó al Querellante que según solicitado la vista pautada para el 7 de junio de 2004, había sido reseñalada para el 10 de junio. Conjuntamente, se le hizo llegar copia de la comunicación de 10 de mayo de 2004, donde se le notificaban los hechos que dieron base para los cargos imputados. [28]/

---

[23]/ Véase Exhibit 11 Conjunto
[24]/ Véase Exhibit 12 Conjunto
[25]/ Véase Exhibit 13 y 14 Conjunto
[26]/ Véase Exhibit 14 Conjunto
[27]/ Véase Exhibit 15 Conjunto
[28]/ Véase Exhibit 16 Conjunto

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010

15

XXIII. El 10 de junio de 2004, el Querellante compareció a la vista informal acompañado del Sr. Andrés Carrasquillo, Vicepresidente de la UIA y del Sr. Juan Ramos, Presidente de la UIA Capítulo de San Juan.[29]/

XXIV. El 22 de junio de 2004, el Querellante fue destituido sumariamente del puesto que ocupaba en la AAA, por haber sido encontrado incurso en violación del Artículo IX, Sección 3, Procedimiento Disciplinario B (1) del Convenio Colectivo entre la AAA y la UIA.[30]/

XXV. Como consecuencia de su destitución sumaria, el 1 de julio de 2004 el Querellante solicitó al Sr. Héctor René Lugo la radicación de una querella ante el Comité de Querellas. [31]/

XXVI. El 2 de julio de 2004, el Querellante solicitó se dejara sin efecto su petición de radicación de querella ante el Comité y peticionó a la UIA que solicitara una reconsideración de la medida disciplinaria al Presidente Ejecutivo. [32]/

XXVII. El 8 de julio de 2004, el Sr. Héctor René Lugo solicitó al Ing. Jorge Rodríguez Ruiz, Presidente Ejecutivo de la AAA, que reconsiderara la determinación de destitución del Querellante.[33]/

XXVIII. El 28 de septiembre de 2004, la UIA radicó una querella ante el Comité de Querellas, Región Metropolitana, en contra de la AAA, por la destitución del Sr. Jaime Díaz O'neill. [34]/ La querella del señor Díaz O'neill, es una de cientos que quedaron pendientes ante el Comité de Querellas AAA-UIA.[35]/

XXIX. Como parte de la negociación colectiva, la AAA y la UIA acordaron parcialmente el nuevo procedimiento de Quejas y Agravios que formaría parte del Convenio Colectivo. El nuevo procedimiento disponía que los casos se presentaran en el Negociado de Conciliación y Arbitraje, a diferencia del procedimiento del convenio que expiró en junio de 2003.

---

[29]/ Véase Exhibit 17 Conjunto
[30]/ Véase Exhibit 17 Conjunto
[31]/ Véase Exhibit 18 Conjunto
[32]/ Véase Exhibit 19 Conjunto
[33]/ Véase Exhibit 20 Conjunto
[34]/ Véase Exhibit 21 Conjunto
[35]/ Hecho estipulado por las partes mediante Moción de 9 de Julio de 2009.

Informe y Recomendación de la O/E                                        **16**
Caso Núm. CA-2005-21
3 de marzo de 2010

Conforme al procedimiento del convenio expirado, los árbitros eran
privados pagados por las partes.[36]/

XXX. La UIA y la AAA acordaron mediante Estipulación de 7 de diciembre de
2006, dilucidar en sus méritos algunos casos en arbitraje, sin embargo, no
incluyó el del Querellante. [37]/

## DISCUSIÓN:

Según se desprende de la Segunda Querella Enmendada, el Interés Público
alega que la AAA se rehusó a dilucidar la queja sobre Destitución Sumaria del
Querellante (Caso Núm. 04-1671) y por lo tanto ha incurrido en una práctica
ilícita de trabajo por violación de Convenio Colectivo, según definida en la Ley de
Relaciones del Trabajo de Puerto Rico[38]/ en su Artículo 8, Sección 1, inciso (f).
La misma dispone lo siguiente:

> (1) Será práctica ilícita de trabajo el que un patrono,
> actuando individualmente o concertadamente con
> otros:
>
> (f) Viole los términos de un convenio colectivo,
> incluyendo un acuerdo en el que se comprometa a
> aceptar un laudo de arbitraje, esté o no dicho acuerdo
> incluido en los términos de un convenio colectivo;
> Disponiéndose, sin embargo, que la Junta podrá
> declarar sin lugar cualquier cargo en el cual se alegue
> una violación de este inciso, si la unión que es parte
> en el contrato es culpable de una violación en curso
> del convenio o no ha cumplido con una orden de la
> Junta relativa a alguna práctica ilícita de trabajo,
> según lo dispone este subcapítulo.

Alega en la alternativa, que si el Convenio Colectivo entre la Unión
Independiente Auténtica de Empleados de la AAA y la AAA, o alguna
Estipulación, no estuvieron vigentes durante todo o parte de la anualidad
comprendida desde el 1 de julio de 2003 hasta el 30 de junio de 2004, entonces
Ondeo y la AAA realizaron ilegalmente descuentos de los sueldos de los
integrantes de la unidad apropiada de negociación colectiva. Por lo que,
incurrieron en una práctica ilícita de trabajo comprendida en la Ley, en su
Artículo 8, sección 1, incisos (a) y (b). Los mismos, establecen lo siguiente:

---

[36]/ Véase Exhibit 26 Conjunto
[37]/ Véase Exhibit 22 Conjunto
[38]/ 29 LPRA § 61 y s.s.

Informe y Recomendación de la O/E
Caso Núm. CA-2005-21
3 de marzo de 2010

17

(1)  Será práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otros:

(a) Intervenga, restrinja, ejerza coerción o intente intervenir, restringir o ejercer coerción con sus empleados en el ejercicio de los derechos garantizados por la [29 LPA sec. 65] de esta ley.

(b) Inicie, constituya, establezca, domine, intervenga o intente iniciar, constituir, establecer, dominar o intervenir con la formación o administración de cualquier organización obrera, o contribuya a la misma con ayuda económica o de otra clase; Disponiéndose, que no se prohibirá a un patrono deducir suma alguna de dinero del salario, ganancias o ingresos de un empleado para el pago de cuotas a una organización obrera cuando tal deducción sea requerida en virtud de los términos de un convenio colectivo celebrado entre el patrono y una organización obrera no establecida, mantenida o ayudada por acción alguna definida en este subcapítulo como práctica ilícita de trabajo, si dicha organización obrera es el representante de una mayoría de sus empleados según lo provisto por la [29 LPRA sec. 66(1)] de esta ley en una unidad apropiada cubierta por tal convenio.

Arguye la representación de la AAA, que el reclamo del Interés Público es improcedente, por entender que el Convenio Colectivo que regía las relaciones obrero patronales AAA-UIA entre el 1 de julio de 1998 y el 30 de junio de 2003, estaba vencido al momento de la destitución del Querellante y el nuevo convenio estaba en etapa de negociación.  La Querellada insiste en que la Junta determinó en el caso de práctica ilícita de trabajo CA-2005-16, *Autoridad de Acueductos y Alcantarillados (Querellada) y Unión Independiente Autentica de Empleados de la AAA (Querellante)* que no existía un Convenio Colectivo entre la AAA y UIA para el período del 1 de julio de 2003 hasta el 30 de junio de 2004, y que por lo tanto no se puede violar un convenio inexistente.[39]

Como expresáramos en nuestra Resolución de 8 de mayo de 2009, nos reiteramos en que lo determinado o resuelto en la Resolución de 16 de junio de 2008, en el CA-2005-16, no incide en la controversia que tenemos ante nos.  Lo anterior, por entender que la controversia de hechos en el caso CA-2005-16 no

---

[39] La representación legal de la AAA cita, tanto el Informe del Oficial Examinador que presidió la Audiencia, como la Resolución de 16 de junio de 2008, emitida por la Junta. Véase Exhibits 23 y 24 Conjuntos.

Informe y Recomendación de la O/E                                          **18**
Caso Núm. CA-2005-21
3 de marzo de 2010

se refiere al período de tiempo entre el 1 de julio de 2003 hasta junio de 2004,

período de tiempo concerniente y medular a la controversia en el caso de

epígrafe.

El Convenio Colectivo de la unidad apropiada representada por la UIA, entró en

vigor el 1ro de julio de 1998 y expiró el 30 de junio de 2003. **(Exhibit 2)** El 3 de

mayo de 2002, la AAA suscribió un contrato con Ondeo de Puerto Rico para la

administración, operación, mantenimiento y reparación de todos sus sistemas de

acueductos y alcantarillados. Mediante la Sección 5.2 de dicho contrato, la AAA

delegó en Ondeo la autoridad de negociar con las uniones cambios a los

acuerdos laborales existentes al 1 de julio de 2002, como cualquier nuevo

convenio colectivo, <u>sujeto a la ratificación de la Junta de Directores</u>. **(Exhibit 4)**.

La Ley Orgánica de la AAA, Ley Núm. 40 de 1 de mayo de 1945, según

enmendada por la Ley Núm. 95 de 1 de julio de 2002 en su Artículo 2, Sección

3, inciso (m) establece lo siguiente:

     **(m)  Respecto a los contratos de administración.**

        1.    ...

        2.    El o los operadores privados, a través de sus respectivos directores de operaciones, tendrá todos los deberes, funciones, obligaciones y facultades que, <u>sujeto a las limitaciones descritas en esta Sección de la Ley, se establezcan en el Contrato de administración con la Autoridad</u>, incluyendo las siguientes: (énfasis nuestro)

           (a)   ...

           (b)  <u>negociar el convenio colectivo con las uniones que representen a los empleados de la Autoridad</u> y el deber y la facultad de nombrar, destituir y determinar la compensación de todos los empleados y agentes de la Autoridad; (énfasis nuestro)

El 4 de agosto de 2003, Ondeo y el Presidente de la UIA, firmaron una

Estipulación **(Exhibit 3)**, en la que acordaron poner en vigencia el Convenio

Colectivo que había expirado el 30 de junio de 2003. Establecieron que dicha

puesta en vigencia, se mantendría hasta tanto se diera el inicio de las

negociaciones de un nuevo convenio colectivo, y durante las mismas, hasta que

se firmase el mismo.

Informe y Recomendación de la O/E                                    19
Caso Núm.  CA-2005-21
3 de marzo de 2010

El 13 de enero de 2004, la Junta de Directores de AAA autorizó la cancelación del contrato suscrito con Ondeo.  Sin embargo, durante el año y medio de administración de Ondeo, este negoció dieciocho (18) artículos del nuevo convenio con la UIA.  Mediante la Resolución 2033 **(Exhibit 4),** suscrita por la Junta de Directores de la AAA, ratificaron once (11) de los artículos negociados, quedando siete (7) sin ratificar.  Entre los no ratificados se encontraron el **Artículo IX- Procedimiento para Atender y Resolver Querellas** y el **Artículo XXXI- Vigencia.** De esta forma, el acuerdo firmado por Ondeo y UIA, contenido en la Estipulación de agosto de 2003, para extender el convenio expirado, no fue ratificado. La Junta de Directores, como parte de su Resolución nombró el Comité Negociador de la AAA, que habría de negociar el nuevo convenio colectivo entre AAA y UIA, incluyendo los referidos siete (7) artículos.

Con el propósito de enfocarse en el proceso de transición de las operaciones de Ondeo a la AAA, tanto el Presidente de la AAA como el Presidente de la UIA, solicitaron una moratoria de sesenta (60) días en el proceso de ventilación de querellas ante el Comité de Querellas UIA-AAA, mecanismo provisto por el Convenio expirado.  El 26 de marzo de 2004, vencía la moratoria solicitada al Comité de Querellas para canalizar la ventilación de las querellas ante el Negociado de Conciliación y Arbitraje.  A esa fecha, no se había logrado finalizar el proceso de ventilación de querellas. **(Exhibit 1 y 5)** El Presidente de la UIA informó sobre la suspensión de los procedimientos de vistas mientras no se diera cumplimiento al nombramiento de nuevos árbitros según el Artículo IX, Sección 5 (Árbitros), Inciso A (3) del convenio.  De esa forma, notificó a los árbitros designados sobre la suspensión de los procedimientos de vistas señalados para el período de 29 de marzo de 2004 a 30 de abril de 2004, **(Exhibits 6, 7 y 8),** en lo que se atendía la solicitud de nombramiento de nuevos árbitros. Según estipulado por las partes, desde el 26 de enero de 2004, no se volvieron a celebrar vistas de arbitraje, entre la AAA y la UIA.

El 22 de junio de 2004, el Querellante fue destituido sumariamente del puesto de Oficinista de Centro Telefónico que ocupaba en la AAA, por haber sido

Informe y Recomendación de la O/E                                    **20**
Caso Núm. CA-2005-21
3 de marzo de 2010

encontrado incurso en violación del Artículo IX, Sección 3, Procedimiento

Disciplinario B (1) del Convenio Colectivo entre la AAA y la UIA. **(Exhibit 17)**

Como consecuencia de su destitución sumaria, el 1 de julio de 2004 el

Querellante solicitó al Sr. Héctor René Lugo la radicación de una querella ante el

Comité de Querellas. Al día siguiente, solicitó se dejara sin efecto su petición de

radicación de querella ante el Comité y peticionó a la UIA que solicitara una

reconsideración de la medida disciplinaria al Presidente Ejecutivo. A tenor con

la Sección 6, A-10 (b) del Convenio Colectivo, el Presidente de la UIA solicitó al

Ing. Jorge Rodríguez la reconsideración a la determinación de destitución y

audiencia al respecto. **(Exhibit 18,19 y 20)** El 28 de septiembre de 2004, la UIA

radicó Querella ante el Comité de Querellas, en contra de la AAA, por la

destitución sumaria del Sr. Jaime Diaz O'neill. **(Exhibit 21)** Sin embargo, la

misma, quedó pendiente ante el Comité de Querellas AAA-UIA, al igual que

cientos de querellas.

Como parte del proceso de negociación, la AAA y la UIA acordaron parcialmente

el nuevo procedimiento de Quejas y Agravios que formaría parte del Convenio

Colectivo. El mismo, disponía que los casos se presentarían ante el Negociado

de Conciliación y Arbitraje, a diferencia del procedimiento del convenio que

expiró en junio de 2003. Mediante Estipulación de 7 de diciembre de 2006, entre

la UIA y la AAA (teniendo como intermediario al Secretario del Trabajo y

Recursos Humanos, Román Velasco González), y en ánimo de auscultar una

alternativa distinta al Comité de Apelaciones, acordaron dilucidar algunos casos

en arbitraje. No obstante, dicha Estipulación no incluyó la querella del Sr. Jaime

Diaz O'neill. **(Exhibit 22 y 26)**

La práctica ilícita alegada en la Segunda Querella Enmendada, por violación de

Convenio Colectivo en contra de la AAA, consiste en la negativa de la

Querellada en ventilar el caso CQ-04-1671 del Sr. Jaime Díaz O'neill en un

proceso de arbitraje, según las disposiciones del propio Convenio. Surge de la

prueba presentada que el Convenio Colectivo que regía las relaciones obrero-

patronales entre la UIA y la AAA expiraba el 30 de junio de 2003. De igual forma

Informe y Recomendación de la O/E                                    21
Caso Núm. CA-2005-21
3 de marzo de 2010

surge, que a pesar de que Ondeo y UIA, firmaron una Estipulación cuyo propósito era prorrogar la vigencia del Convenio expirado en junio de 2003, la misma no fue ratificada por la Junta de Directores, requisito obligatorio para su validez. Entre los artículos no ratificados, nos concierne, para la resolución de la controversia ante nos, el Artículo IX- Procedimiento para Atender y Resolver Querellas y el Artículo XXXI- Vigencia. El requisito de ratificación emana, de la Ley Orgánica de la AAA, supra, y del propio contrato suscrito entre Ondeo y AAA el 3 de mayo de 2002.

Por su parte, el Interés Público establece en su Memorial de Derecho, que el Patrono luego de decidir no ratificar el Artículo IX sobre "Procedimiento para Atender y Resolver Querellas" mediante Resolución 2033, notifica al Querellante de un cargo por haber incurrido en una falta al Artículo IX, Sección 3, Procedimiento Disciplinario B (1), del convenio que alega estaba expirado. La notificación de la comisión de falta por el Querellante ocurre setenta (70) días después de la firma de la Resolución 2033, y el 22 de junio de 2004, el Querellante es destituido de la AAA.

Si bien es cierto que el cargo que motiva la destitución del Querellante está basada en una violación a un Artículo del Convenio, cuya vigencia esta vencida, por no haber sido ratificada su validez, ese hecho, por sí solo, no es suficiente para que se pueda determinar la existencia de un Convenio Colectivo en toda su extensión, entre el período de 1 de julio de 2003 hasta junio de 2004. Y particularmente, en el caso que nos ocupa, lo que está en controversia es la práctica ilícita por la alegada violación de Convenio Colectivo. Consideramos que, como parte de la política pública de la Junta, de implantar en forma adecuada, eficaz e imparcial lo referente a las relaciones obrero-patronales, no podemos otorgarle validez o vigencia a un convenio colectivo por el sólo hecho de que una de las partes haya basado una medida disciplinaria en un artículo de un convenio vencido.

En materia de convenios colectivos, el Tribunal Supremo ha establecido que los mismos son contratos y que estos se rigen por lo dispuesto en el Código Civil en

Informe y Recomendación de la O/E                                    **22**
Caso Núm. CA-2005-21
3 de marzo de 2010

dicha materia, a no ser que la ley haya dispuesto otra cosa.[40]/ El Código Civil

en su Artículo 1206, establece que un contrato existe desde que una o varias

personas consienten en obligarse respecto de otra y otras, a dar alguna cosa, o

prestar algún servicio. Los términos de un convenio de trabajo deben leerse en

conjunto y armonizarse con el fin de determinar la intención de las partes. FSE

v. JRT, 111 DPR 520 (1981). El Tribunal Supremo ha expresado que la

expiración de un convenio no tiene el efecto de terminar los procedimientos de

arbitraje iniciados durante la vigencia de dicho convenio.[41]/ Nada establece

sobre los surgidos con posterioridad al vencimiento del mismo.

Entendemos, que para la fecha en que el Querellante es destituido

sumariamente de la AAA, como para el 28 de septiembre de 2004, fecha en que

es presentada la Querella ante el Comité de Querellas, no estaba vigente el

Convenio Colectivo.

Somos de la opinión que la dilucidación de algunos de los casos (querellas) en

arbitraje, no surge porque existiera un Convenio sino por acuerdo entre las

partes mediante Estipulación de diciembre de 2006, dirigida particularmente a

esos efectos.

En cuanto a la alegada violación por descuento ilegal de cuotas, debemos

recapitular que Ondeo de Puerto Rico suscribió un contrato de administración

con la AAA el 2 de mayo de 2002. Durante la vigencia del contrato de

administración de Ondeo, el Convenio Colectivo negociado entre la AAA y UIA

expiró. El 13 de enero de 2004, la Junta de Directores de AAA autorizó la

cancelación del contrato suscrito con Ondeo, no obstante, durante el período de

administración de éste, se negociaron dieciocho (18) artículos del nuevo

convenio con la UIA. Entre estos artículos negociados, se encontraba el

**Artículo VII- Deducción de Cuotas de la Unión.** Dicha negociación se dió en

virtud del contrato de administración suscrito con la AAA y conforme a lo

establecido en la Ley Orgánica de la AAA. La Sección 5.2 de dicho contrato de

administración, delegaba en Ondeo la autoridad de negociar con las uniones

---

[40]/ Luce y Co. v. JRT, 86 DPR 425 (1962)
[41]/ JRT v PR Telephone Co., 91 DPR 909 (1965)

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
REGION JUDICIAL DE SAN JUAN

```
                          *    CASO NUM. KLRA201000857
                          *
                          *    SOBRE: REVISION ADMINISTRATIVA CIVIL
                          *
A DE ACUEDUCTOS Y ALCANTARILLADOS  *
                          *
         V.               *
                          *
                          *
DIAZ ONEILL, JAIME        *
* * * * * * * * * * * * * * * *
```

N O T I F I C A C I O N   D E   S E N T E N C I A

EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL
HA DICTADO SENTENCIA EN EL CASO DE EPIGRAFE CON FECHA DE
21 DE MARZO DE 2012 , QUE HA SIDO DEBIDAMENTE REGISTRADA Y
ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE PODRA USTED ENTERARSE
DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

Y SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA
SENTENCIA, DE LA CUAL PUEDE ESTABLECERSE RECURSO DE APELACION,
DIRIJO A USTED ESTA NOTIFICACION, HABIENDO ARCHIVADO EN LOS AUTOS
DE ESTE CASO COPIA DE ELLA CON FECHA 29 DE MARZO DE 2012 .

A DE ACUEDUCTOS Y ALCANTARILLADOS - DIVISION LEGAL
BOX 7066 BO OBRERO STATION SAN JUAN PR 00916
LIC. VICTOR R RODRIGUEZ FUENTES - PO BOX 364966
SAN JUAN PR 00936-4966
JAIME DIAZ ONEILL - SUITE 428
PO BOX 20000 CANOVANAS PR 00729
JUNTA DE RELACIONES DEL TRABAJO DE PR - BO OBRERO STATION
PO BOX 14427 SAN JUAN PR 00916-4427
LIC. JUAN ANTONIO NAVARRO SALGADO - PO BOX 9642
SAN JUAN PR 00908-0642
LIC. JAIME A SANTOS SANTIAGO - PMB 182
PO BOX 7891 GUAYNABO PR 00970-7891
LIC. GRACE M MARRERO CLEMENTE - PO BOX 14427
SAN JUAN PR 00916-4427
OFICINA DE APELACIONES DE LA AAA -
PO BOX 7066 SAN JUAN PR 00916-7066

SAN JUAN, PUERTO RICO, A 29 DE MARZO DE 2012 .

DIMARIE ALICEA LOZADA
_____
SECRETARIO
CONT. CASO NUM. KLRA201000857

POR:    ANN AYALA RIVERA

SECRETARIA SERV SALA

OAT 704-1 - NOTIFICACION DE SENTENCIA-TA

33

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL ESPECIAL

| | | |
|---|---|---|
| AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO<br><br>Recurrente<br><br>v.<br><br>JAIME DÍAZ O'NEILL<br><br>Recurrido | KLRA201000857 | REVISIÓN ADMINISTRATIVA procedente de la Junta de Relaciones del Trabajo de Puerto Rico<br><br>CASO NÚM.:<br>D-2010-1439 |

Panel integrado por su presidente, el Juez Rivera Román, el Juez Hernández Sánchez y el Juez Ramos Torres

**Ramos Torres, Juez Ponente**



## S E N T E N C I A

En San Juan, Puerto Rico a 21 de marzo de 2012.

Comparece ante este Tribunal de Apelaciones la Autoridad de Acueductos y Alcantarillados (AAA) y nos solicita que revisemos una resolución emitida el 16 de junio de 2010 por la Junta de Relaciones del Trabajo de Puerto Rico (la Junta). Mediante dicho dictamen la Junta determinó que la AAA había incurrido en una práctica ilícita del trabajo al no seguir el procedimiento establecido en el Convenio Colectivo para atender las quejas y agravios.

Por los fundamentos expuestos a continuación, confirmamos la resolución recurrida.

34

KLRA201000857                                                                2

**I.**

El 10 de mayo de 2004 la AAA le notificó al señor Jaime Díaz O'neill (señor Díaz) sobre la intención de destituirlo sumariamente de su puesto como Oficinista en el Centro Telefónico, ya que había incurrido en violación al Artículo IX, Sección 3, Procedimiento Disciplinario B (1) del Convenio Colectivo.[1] Se le apercibió sobre su derecho a solicitar una vista informal. Luego de celebrada dicha vista, el 22 de junio de 2004 la AAA le informó al señor Díaz que había sido destituido de su empleo sumariamente.

El 28 de septiembre de 2004 la Unión Independiente Auténtica (UIA), en representación del señor Díaz, presentó una querella ante el Comité de Querellas de la Región Metropolitana de la AAA. En la misma arguyó que las alegaciones de la AAA eran falsas y solicitó la restitución del recurrido en su puesto más los salarios retroactivos dejados de devengar. También señaló que el 8 de julio de 2004 había presentado una solicitud de reconsideración ante la AAA, la cual nunca fue resuelta.

El 28 de septiembre de 2005 el señor Díaz presentó una querella en contra de la AAA ante la Junta de Relaciones del Trabajo (JRT). En la misma planteó que la mencionada agencia había incurrido en práctica ilícita del trabajo al no disponer de su querella de conformidad con lo establecido en el Convenio Colectivo para el procedimiento de quejas y agravios. El 12 de

---

[1] Alegadamente el 19 de febrero de 2004 el señor Díaz "había aceptado trabajar un turno en horas extra el cual comenzaba a las 10:00 p.m., llegando usted a la 1:45 de la madrugada del [sic] 20 de febrero de 2004. Al verificar su tarjeta de ponchar, la misma marcaba la hora de entrada manualmente a las 10:00 p.m. Posteriormente, salió del edificio a eso de las 2:25 a.m. dejando el área de trabajo sola y el sistema de atención al consumidor desatendido hasta las 4:50 a.m., hora en que regresó al Edificio Central." Véase misiva suscrita por la AAA con fecha de 10 de mayo de 2004.

KLRA201000857                                                          3

diciembre de 2007 se expidió la querella contra la AAA. El 31 de enero de

2008 la AAA presentó su contestación a la querella.[2]

Luego de varios trámites procesales y celebrada una audiencia pública,

el 16 de junio de 2010 la JRT emitió una resolución y declaró ha lugar la

querella presentada por el señor Díaz. Determinó que el Convenio Colectivo

fue prorrogado automáticamente de conformidad con el Artículo XXXI de

dicho acuerdo.[3] Ello así, debido a que de la prueba presentada no se

desprendió que hubiese habido notificación alguna de negociación. Además,

concluyó que la AAA incurrió en práctica ilícita del trabajo al no cumplir con el

Procedimiento para Atender y Resolver Querellas dispuesto en el convenio

aludido. Oportunamente, la AAA presentó una moción de reconsideración, en

la que sostuvo que de la prueba presentada durante la audiencia pública

surge que para la fecha en que se suscitó la controversia en el caso de

epígrafe no existía un Convenio Colectivo vigente entre la UIA y dicha agencia.

Dicha solicitud de reconsideración fue rechazada de plano por el organismo

administrativo.



---

[2] En su escrito la AAA planteó que para fecha en que se suscitaron los hechos del presente
caso el Convenio Colectivo no estaba vigente, ya que el mismo había vencido el 30 de junio
de 2003. Incluso expresó que Ondeo de Puerto Rico y la UIA llegaron a una "Estipulación".

No obstante, cabe señalar que el referido acuerdo nunca fue ratificado por la Junta de
Directores de la AAA. Además, previo a los seis (6) meses antes del vencimiento del Convenio
Colectivo ninguna de las partes realizaron notificación alguna sobre negociación o
modificaciones a dicho acuerdo. Véase Artículo XXXI del Convenio Colectivo.
[3] El Artículo XXXI, Inciso 2 del Convenio Colectivo establece que:
   **En caso de que una de las partes desee modificar el convenio colectivo
   deberá someter las enmiendas por escrito a la otra parte a más tardar
   seis (6) meses antes de su vencimiento. De no mediar dicha
   notificación, se entenderá prorrogado por un año adicional y así
   sucesivamente. En caso de que haya intención de enmendar, la
   negociación comenzará a más tardar 60 días laborables después de
   sometidas por escrito las enmiendas.**

KLRA201000857                                                                4

## II.

Inconforme con dicho dictamen la AAA recurre ante nos y alega que la

JRT cometió los siguientes errores:

> **Erró la Junta de Relaciones del Trabajo de Puerto Rico al declarar con lugar la Querella presentada ante su consideración, determinando que la AAAA violó el Convenio Colectivo suscrito por ésta [sic] y la UIA el 28 de septiembre de 2000, en sus disposiciones sobre Procedimiento para Atender y Resolver Querellas, incurriendo alegadamente en practica [sic] ilícita del trabajo en el significado del Artículo 8 (1) (f) de la Ley Núm. 130, supra.**

> **Erró la Junta de Relaciones del Trabajo de Puerto Rico al emitir una Decisión contraria e inconsistente a lo ya resuelto por la propia Junta en el Caso Núm. CA-2005-16 y avalado por los foros apelativos correspondientes en cuanto a la inexistencia de Convenio Colectivo durante el periodo relacionado a los hechos en controversia.**

En síntesis, la AAA plantea que la JRT incidió al determinar que el

Convenio Colectivo aún estaba vigente y, consecuentemente, concluir que

dicho organismo administrativo había incurrido en práctica ilícita de trabajo al

no cumplir con el procedimiento de quejas y agravios.

## III.

## -A-

Un convenio colectivo es "el acuerdo por escrito entre una organización

obrera y un patrono en que se especifican los términos y condiciones de

empleo para los trabajadores cubiertos por el contrato, el *status* de la

organización obrera y el procedimiento para resolver las disputas que surjan

durante la vigencia del contrato". Ballester, M.M., <u>Vocabulario Obrero-</u>

<u>Patronal</u>, San Juan, Departamento del Trabajo y Recursos Humanos del



KLRA201000857 5

E.L.A., 1962, pág. 25. Al ser un contrato, tiene fuerza de ley entre las partes

otorgantes, siempre que no sea contrario a la ley, la moral o el orden público.

C.O.P.R. v. S.P.U., 181 D.P.R. 299, 320 (2011); J.R.T. v. Junta Adm. Muelle

Mun. de Ponce, 122 D.P.R. 318, 333 (1988). Además, se rige por las

disposiciones del Código Civil relacionadas a los contratos, a no ser que la ley

haya dispuesto otra cosa. C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 450

(2007); Luce & Co. v. Junta de Rel. Trabajo, 86 D.P.R. 425, 440 (1962).

Así pues, las partes en un convenio colectivo no pueden demandar el

cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento

de la propia obligación. Díez Picazo, Sistema de Derecho Civil, Vol. 2, Ed.

Tecnos, Madrid, 1981, págs. 226-227. Dicho principio descansa en la idea de

ejecución simultánea y en la premisa de que cada parte puede rechazar el

cumplimiento de su obligación mientras la otra parte no cumpla con la suya.

Espín Cánovas, La Excepción en el Incumplimiento Contractual, 17 Anuario de

Derecho Civil pág. 543 (1984); Master Concrete Corp. v. Fraya, S.E., 152

D.P.R. 616 (2000).

Por otro lado, a un convenio colectivo le es de aplicación las normas de

interpretación contractual. C.F.S.E. v. Unión de Médicos, supra. Cuando los

términos de un contrato son claros y no crean ambigüedades, los mismos se

aplicarán en atención al sentido literal que tengan. Artículo 1233 del Código

Civil, 31 L.P.R.A. 3471. Por tanto, si los términos de un contrato o de una

disposición contractual, como en el caso de una cláusula de un convenio

colectivo, son suficientemente claros como para entender lo que se pacta, hay

que atenerse al sentido literal de las palabras y los tribunales no podrán entrar



KLRA201000857                                                    6

a dirimir sobre lo que alegadamente las partes pactaron al momento del contrato. C.F.S.E. v. Unión de Médicos, supra.

-B-

La Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como la Ley de Relaciones del Trabajo de Puerto Rico (Ley Núm. 130), 29 L.P.R.A. sec. 61 et seq., le confiere la jurisdicción exclusiva a la JRT en casos de disputas obrero-patronales. Dicho organismo es el encargado de la implementación de la política pública establecida por el estatuto antes mencionado y goza de facultades cuasi-judiciales para adjudicar de forma final y exclusiva los hechos en controversias relacionadas a la composición de una unidad apropiada para fines de negociación colectiva. U.P.R. v. Asoc. Pur.Profs. Universitarios, 136 D.P.R. 335 (1994); J.R.T. v. A.M.A., 119 D.P.R. 94, 99 (1987); F.S.E. v. J.R.T., 111 D.P.R. 505, 514 (1981); Rivera v. J.R.T., 70 D.P.R. 5, 12-13 (1949). La JRT es el foro adecuado para velar por el cumplimiento de las obligaciones contraídas en virtud de un convenio colectivo y evitar que cualquier persona incurra en prácticas ilícitas del trabajo. F.S.E v. J.R.T., supra, a la pág. 512.

Por otra parte, la Ley Núm. 130, supra, establece que un patrono incurrirá en una práctica ilícita del trabajo cuando "[v]iole los términos de un convenio colectivo, incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje, esté o no dicho acuerdo incluido en los términos de un convenio colectivo; Disponiéndose, sin embargo, que la Junta podrá declarar sin lugar cualquier cargo en el cual se alegue una violación de este inciso, si la unión que es parte en el contrato es culpable de una violación en curso del



KLRA201000857                                                                           7

convenio     o     no     ha     cumplido     con     una     orden     de     la

Junta relativa alguna práctica ilícita de trabajo, según dispone este

subcapítulo." 29 L.P.R.A. sec. 69.

### IV.

Por los errores señalados estar íntimamente relacionados, procedemos

a resolverlos en conjunto.

En el caso de autos la AAA plantea que la JRT incidió al determinar que

el Convenio Colectivo entre esta y la UIA aún estaba vigente y, por

consiguiente, concluir que había incurrido en práctica ilícita del trabajo tras no

cumplir con el Procedimiento para Atender y Resolver Querellas.

Como es sabido, un convenio colectivo es un acuerdo entre un patrono

y una organización obrera en donde se establece como se regirá la relación

obrero-patronal. Véase C.O.P.R. v. S.PU., supra, a la pág. 319.

Por su parte, el Artículo XXXI, Inciso 2 del Convenio Colectivo dispone

que cuando una de las partes quisiese enmendar el convenio colectivo debía

someter una notificación por escrito a la otra parte seis (6) meses antes del

vencimiento del mismo. La negoción comenzará sesenta (60) días laborables

después de sometidas por escrito las enmiendas. De no mediar notificación

alguna, dicho convenio se entendería prorrogado por un año adicional.

Del expediente ante nuestra consideración no surge que ninguna de las

partes cumplió con el requisito de notificación dentro de los seis (6) meses

antes de vencer el Convenio Colectivo. Tampoco empezaron el proceso de

negociación dentro de los sesenta (60) días siguientes. Así pues, podemos

KLRA201000857                                                                                          8

colegir que dicho acuerdo quedó renovado automáticamente por espacio de un (1) año.

Consecuentemente, habiendo resuelto la controversia sobre la vigencia del Convenio Colectivo, solo podemos ultimar que en efecto la AAA violó el acuerdo al no negarse a resolver la querella presentada por el señor Díaz. Por ende, el aludido organismo administrativo incurrió en práctica ilícita del trabajo. Los errores alegados no se cometieron.

**V.**

Por los fundamentos antes expuestos, confirmamos el dictamen recurrido.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

DIMARIE ALICEA LOZADA
Secretaria del Tribunal de Apelaciones



41

KLRA201000857                                                                    8

colegir que dicho acuerdo quedó renovado automáticamente por espacio de

un (1) año.

Consecuentemente, habiendo resuelto la controversia sobre la vigencia

del Convenio Colectivo, solo podemos ultimar que en efecto la AAA violó el

acuerdo al no negarse a resolver la querella presentada por el señor Díaz. Por

ende, el aludido organismo administrativo incurrió en práctica ilícita del

trabajo. Los errores alegados no se cometieron.

**V.**

Por los fundamentos antes expuestos, confirmamos el dictamen

recurrido.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal

de Apelaciones.



DIMARIE ALICEA LOZADA
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
REGION JUDICIAL DE SAN JUAN

23 DE MAYO DE 2012

A

RE:   KLRA201000857

LE REMITO EL MANDATO DE ESTE TRIBUNAL EN EL CASO NUMERO
D-2010-1439  DE A DE ACUEDUCTOS Y ALCANTARILLADOS  V.
DIAZ ONEILL, JAIME , RESUELTO EL DIA
21 DE MARZO DE 2012 .

***** NOTA PARA ABOGADOS Y PARTES *****

MANDATO ENVIADO AL FORO CORRESPONDIENTE. ESTA CARTA ES
SOLAMENTE PARA SU CONOCIMIENTO.

CORDIALMENTE,

DIMARIE ALICEA LOZADA
------------------------------------
SECRETARIO GENERAL

POR:   DEBORAH CRUZ ALONSO
-------------------------------------
SECR. AUX. TRIB. I.

A DE ACUEDUCTOS Y ALCANTARILLADOS - DIVISION LEGAL
BOX 7066 BO OBRERO STATION SAN JUAN PR 00916
LIC. VICTOR R RODRIGUEZ FUENTES - PO BOX 364966
SAN JUAN PR 00936-4966
JAIME DIAZ ONEILL - SUITE 428
PO BOX 20000 CANOVANAS PR 00729
JUNTA DE RELACIONES DEL TRABAJO DE PR - BO OBRERO STATION
PO BOX 14427 SAN JUAN PR 00916-4427
OFICINA DE APELACIONES DE LA AAA -
PO BOX 7066 SAN JUAN PR 00916-7066
LIC. JUAN ANTONIO NAVARRO SALGADO - PO BOX 9642
SAN JUAN PR 00908-0642
LIC. JAIME A SANTOS SANTIAGO - SUMMIT HILLS
569 HILL SIDE ST. SAN JUAN PR 00970-7891

OAT-1102
CARTA TRAMITE DE NOTIFICACION

CONT. CASO NUM. KLRA201000857

44

**ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL ESPECIAL
ORDEN ADMINISTRATIVA TA-2017-052**

| AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO<br><br>Recurrente<br><br>v.<br><br>JAIME DÍAZ O'NEILL<br><br>Recurrido | KLRA201000857 | *Revisión Administrativa* procedente de la Junta de Relaciones del Trabajo de Puerto Rico<br><br>Caso Núm.: D-2010-1439 |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Ramos Torres y el Juez Rivera Torres[1].

## RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de octubre de 2021.

Comparece el Sr. Jaime Díaz O'Neill por derecho propio mediante "Moción: Certificación de Expediente por el Tribunal", y solicita del Tribunal de Apelaciones que se le certifique el expediente KLRA201000857, Autoridad de Acueductos y Alcantarillados de Puerto Rico v. Jaime Díaz O'Neill.

Nos parece oportuno señalar, que el referido caso se dictó Sentencia el 21 de marzo de 2012, notificada el 29 de marzo de 2012. Por lo que la sentencia advino final y firme. Así, pues, el panel de entonces finalizó su encomienda.

No obstante, la moción presentada por el Sr. Jaime Díaz O'Neill, se remite a la Secretaría del Tribunal de Apelaciones para las acciones que estime pertinente.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[1] Mediante Orden Administrativa TA-2017-052 se designó al Hon. Waldemar Rivera Torres para participar en el caso de epígrafe en los trámites post sentencia.

RES 2021001031257.