```
 1                    UNITED STATES DISTRICT COURT

 2                    DISTRICT OF PUERTO RICO

 3
      In Re:                      )      Docket No. 3:17-BK-3283(LTS)
 4                                )
                                  )      PROMESA Title III
 5    The Financial Oversight and )
      Management Board for        )
 6    Puerto Rico,                )      (Jointly Administered)
                                  )
 7    as representative of        )
                                  )
 8    The Commonwealth of         )
      Puerto Rico, et al.         )      December 15, 2021
 9                                )
                      Debtors,    )
10

11    _____

12

13                         OMNIBUS HEARING

14     BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

15               UNITED STATES DISTRICT COURT JUDGE

16     AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

17               UNITED STATES DISTRICT COURT JUDGE

18    _____

19
      APPEARANCES:
20
      ALL PARTIES APPEARING VIA VIDEOCONFERENCE OR TELEPHONICALLY
21
      For The Commonwealth
22    of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                                Mr. Brian S. Rosen, PHV
23                              Ms. Laura Stafford, PHV

24

25
```

```
 1   APPEARANCES, Continued:

 2   For Puerto Rico Fiscal
     Agency and Financial
 3   Advisory Authority:       Mr. Luis C. Marini-Biaggi, Esq.
                               Mr. Peter Friedman, PHV
 4
     For Asociacion de
 5   Empleados del ELA:        Mr. Charles Cuprill-Hernandez, Esq.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by stenography.  Transcript produced by
     CAT.
25
```

```
 1  ||                        I N D E X
 2  || WITNESSES:                                          PAGE
 3  ||        None.
 4  ||
 5  || EXHIBITS:
 6  ||        None.
 7  ||
 8  ||
 9  ||
10  ||
11  ||
12  ||
13  ||
14  ||
15  ||
16  ||
17  ||
18  ||
19  ||
20  ||
21  ||
22  ||
23  ||
24  ||
25  ||
```

1                                    San Juan, Puerto Rico

2                                    December 15, 2021

3                                    At or about 9:57 AM

4                      *      *      *

5          THE COURT:  Buenos dias.  Would the courtroom deputy

6   please announce the case?

7          COURTROOM DEPUTY:  Good morning.  The United States

8   District Court for the District of Puerto Rico is now in

9   session.  The Honorable Judge Laura Taylor Swain presiding.

10  Also sitting, the Honorable Magistrate Judge Judith Gail Dein.

11  God save the United States of America and this Honorable

12  Court.

13          *In re:  The Financial Oversight and Management Board*

14  *for Puerto Rico, as representative of the Commonwealth of*

15  *Puerto Rico, et al.*, case no. 2017-BK-3283, PROMESA Title III,

16  for Omnibus Hearing.

17          THE COURT:  Thank you, Ms. Tacoronte.

18          Good morning to everyone.  Please turn your cameras

19  on for the introductory remarks, and keep your microphones

20  muted.

21          Welcome, counsel, parties in interest, and members of

22  the public, and press.  Despite the great difficulties of this

23  past year and a half, the Court is hopeful for what the new

24  year will bring, and is encouraged by the recovery efforts and

25  the continued attention to public health measures, both in

1   Puerto Rico and on the mainland.

2           To ensure the orderly operation of today's virtual

3   hearing, once we turn to our Agenda items, all parties

4   appearing by Zoom must mute their microphones when they're not

5   speaking, and turn off their video cameras if they're not

6   directly involved in the presentation or argument.  When you

7   need to speak, turn your camera on, and unmute your microphone

8   on the Zoom screen.

9           I remind everyone that consistent with court and

10  judicial conference policies, and the orders that have been

11  issued, no recording or retransmission of the hearing is

12  permitted by anyone, including but not limited to the parties,

13  members of the public, and the press.  Violations of this rule

14  may be punished with sanctions.

15          I'll be calling on each speaker during the hearing.

16  When I do, please turn your camera on, unmute yourself, and

17  identify yourself by name for clarity of the record.  After

18  the speakers listed on the Agenda for each of today's matters

19  have spoken, I may permit other parties in interest to address

20  briefly any issues raised that require further remarks.  If

21  you wish to be heard under these circumstances, please use the

22  "raise hand" feature at the appropriate time.  That feature

23  may be accessed by selecting the reactions icon in the tool

24  bar located at the bottom of your Zoom screen.  I'll call on

25  the speakers one by one.  After you have finished speaking,

1    you should select the "lower hand" feature.

2            Please don't interrupt each other or me during the

3    hearing.  If we interrupt each other, it's difficult to create

4    an accurate transcript, but, as usual, and having said that, I

5    apologize in advance for breaking the rule, because I may

6    interrupt if I have questions.

7            Now, there is a hand raised.  Mr. Bienenstock?

8            MR. BIENENSTOCK:  Thank you, Your Honor.  Can you

9    hear me?

10           THE COURT:  I can hear you.

11           MR. BIENENSTOCK:  Okay.  Sorry to interrupt, but I

12   tried to turn on my video per your instruction, but I'm

13   getting a message that the host -- oh, now I got a new message

14   that the host -- okay.  No problem.

15           THE COURT:  Hi there.

16           MR. BIENENSTOCK:  Sorry to interrupt, Judge.

17           THE COURT:  Good to see you.  Thank you.

18           So, as I was saying, I may interrupt if I have

19   questions, or if you go beyond your allotted time.  If anyone

20   has any difficulty hearing me or another participant, please

21   use the "raise hand" feature immediately.

22           Before turning to the Agenda, I note that the Court

23   entered an Order last night, which is at docket no. 19517 in

24   17-3283.  It relates to some problematic issues in connection

25   with the proposed Plan as it's currently worded, and as the

1    issues arose during the Confirmation Hearing.  The Court looks

2    forward to further input.

3           There is another hand raised.  No.  There is no

4    longer another hand raised.  All right.

5           So the Court is looking forward to further input from

6    the Oversight Board, and any responses to that; in the

7    meantime, the Court is working toward the prompt and

8    expeditious resolution of the motion to confirm the debtors'

9    Plan of Adjustment.

10          The Agenda for today, which was filed as docket entry

11   no. 19516 in case no. 17-3283, is available to the public at

12   no cost on Prime Clerk for those who are interested.  I

13   encourage each speaker to keep track of his or her own time

14   for the timed portions of the Agenda.  The Court will also be

15   keeping track of the time, and will alert the speaker when

16   there are two minutes remaining with one buzz, and when time

17   is up, with two buzzes.  Here is an example of the buzz sound

18   we're using today.

19          (Sound played.)

20          THE COURT:  If your allocation is two minutes or

21   less, you will just hear the final two buzzes.

22          If we need to take a break, the telephone listen-only

23   participants should remain on the AT&T line during the break.

24   This morning we will go until 11:50 AM -- well, quite frankly,

25   we have a short Agenda, and I'm getting my time zones mixed

1   up, so I'm not even going to try on that one.  I'll let you

2   know when it's lunch if we're going that far, or if we need to

3   take a break, and forgive me for my lack of time zone skills.

4          Please turn your cameras off now, and turn your

5   cameras back on when we reach your Agenda item, or if I call

6   on you.  Thank you.

7          The first Agenda item is, as usual, status reports

8   from the Oversight Board and AAFAF.  As I requested in the

9   Procedures Order, these reports have been made in writing in

10  advance of this virtual hearing, and are available on the

11  public docket at docket entry nos. 19514 and 19515 in case no.

12  17-3283 respectively.

13         I thank the Oversight Board and AAFAF for the care

14  and detail reflected in their reports.  As always, the reports

15  cover very important matters.

16         To start out, I have two questions for the Oversight

17  Board having to do with claims processing and, in particular,

18  matters going into the ACR and ADR processes.  So would the

19  representative of the Oversight Board who can speak to these

20  matters please turn on their camera?

21         I see Mr. Rosen there.  Good morning, Mr. Rosen.

22         MR. ROSEN:  Good morning, Your Honor.  And, also,

23  Ms. Stafford is on the line in case she can supplement what I

24  have to say.

25         THE COURT:  Thank you.  Good morning, Ms. Stafford,

1   as well.

2        So, first, would you please estimate, if you can, the

3   number of unresolved claims that the Oversight Board expects

4   will ultimately be the subject of objections, and give me a

5   sense of the timeframe in which you plan to be filing

6   substantive objections.

7        MR. ROSEN:  Well, Your Honor, pursuant to the

8   proposed Plan of Adjustment, we have 180 days following the

9   effective date to file objections to those, so we do not

10  expect to exceed that time period.  At this point, we are

11  still dealing with many, many unliquidated -- totally

12  unliquidated claims that were filed, and so it is still

13  extremely unclear as to the number of claims that we will have

14  to object to.  We're endeavoring to try and generate

15  information regarding these unliquidated claims.

16       I'll give you a "for instance", Your Honor.  Many of

17  these relate to some sort of litigation, but they don't even

18  reference a case number.  So we're trying to locate those.

19  Many do reference a case number, and we're trying to locate

20  those as well.

21       Some of the problems, however, are that the

22  government does not even have any case files associated with

23  those litigations that are referenced, and to the extent that

24  we have to, we are then going to the courts to pull those

25  there in Spanish.  We are working with Puerto Rico counsel to

10

1    obtain all the information necessary associated with those,

2    but until we have a better handle on those, Your Honor, we

3    don't know how many of those unliquidated -- totally

4    unliquidated ones will need to be objected to, either directly

5    with the Court, or to be placed into the ADR process.

6            Laura, I don't know if you want to supplement that.

7            MS. STAFFORD:  No.  I think that was comprehensive.

8            THE COURT:  So are we talking in the four digits, in

9    the low five digits, mid five digits, or high five digits as

10   to what we can expect to be coming through in one form or

11   another in the six months after the effective date if the Plan

12   is confirmed?

13           MR. ROSEN:  I appreciated that you stopped with all

14   the digits, Your Honor.  I was getting concerned.

15           THE COURT:  Well, so was I, so that's why I felt I

16   needed to stop.

17           MR. ROSEN:  Your Honor, I think we're in the four

18   digits or less with respect to that.

19           THE COURT:  Thank you.  That is helpful.

20           Do you expect that the December 28th tranche of ACR

21   transfers will be the last tranche of ACR-related claims that

22   are transferred in?

23           MR. ROSEN:  Go ahead, Laura.

24           MS. STAFFORD:  For the record, this is Laura Stafford

25   of Proskauer Rose for the Oversight Board.

```
1            I wouldn't say for sure that it would be the last,
2   but it may be one of the last larger sets of ACR transfers.
3   As we continue to review claims, we sometimes identify claims
4   that are appropriate for ACR transfer, and we may be in a
5   position to transfer some following the December 28th date.
6            In addition, there are claims related to HTA that we
7   have not reviewed yet and begun to -- you know, review it with
8   as much closeness, and determine whether or not they are
9   appropriate for transfer to the ACR process.  So we may still
10  see some more, but I don't anticipate large volumes going in
11  much later than after this year.
12           MR. ROSEN:  Your Honor, just to be clear as to why we
13  did that, because HTA was not included in the Plan of
14  Adjustment that was before the Court, we sort of pushed that
15  to the side while we wanted to focus on the Commonwealth, ERS,
16  and the PBA claims.
17           THE COURT:  Thank you.
18           Then turning to the ADR eligible claims, I realize
19  that you've already identified issues that will affect the
20  traffic flow and the identification of traffic, but I'm just
21  going to push you a little bit more on that, because we have
22  an evaluative mediation team that would love to be more
23  employed than it is, and, also, to the extent there will be
24  litigation in the Title III court of objected-to claims, I may
25  need to call on the help of some of the magistrate judge
```

1 | members of the evaluation team.  Judge Dein and I are trying

2 | as best we can to have and to be able to share with them a

3 | sense of when the traffic may pick up.

4 | So, with that background, can you provide some kind

5 | of sense or estimate of when additional ADR-eligible matters

6 | will be transferred, and in what size groups, and a timeframe

7 | in which claims will be moved into the evaluative mediation

8 | stage?

9 | MR. ROSEN:  Laura.

10 | MS. STAFFORD:  Sure.  So again, for the record, this

11 | is Ms. Stafford of Proskauer Rose for the Oversight Board.

12 | As Mr. Rosen has mentioned, we are in the process of

13 | providing -- of working to identify and understand as many of

14 | the fully unliquidated claims as we can.  The expectation is

15 | that many of those, to the extent they are not claims that we

16 | are able to object to, will ultimately be circled into the ADR

17 | process, and so we would expect that we may be putting in a

18 | larger number of claims into ADR in the near term.  I don't

19 | want to put a specific timeframe on it, but in the near term.

20 | When those claims actually percolate through the

21 | offer-exchange process to the evaluative mediation process

22 | depends some on the responsiveness of the claimants.  We've

23 | seen some claimants that are very responsive, and others that,

24 | unfortunately, have not been as responsive, which makes it

25 | difficult for us to be able to determine how quickly an

1   impasse might be reached and the need for evaluative mediation

2   might occur.

3          MR. ROSEN:  Your Honor, just to supplement that a

4   little bit, as Ms. Stafford noted, the nonresponsiveness has

5   been extremely problematic.  We have tried to reach out to

6   them directly.  We're actually contemplating a form of

7   publication to people to try and generate some more interest

8   and information from these people.  And, if not, if we're

9   totally unable to get any information, we may just try to do

10  objections to them on the basis of deficient claims, rather

11  than putting them into the ADR process.  But our goal is to

12  try to get them to be responsive, so that we can deal with

13  these people on a more direct basis.

14         THE COURT:  Thank you.

15         One other question that just occurred to me at this

16  point, based on the response, the people who have been

17  responsive, and I think that these are questions that you

18  asked in the beginning of the process, can you give me a sense

19  of how many of the people have indicated that if the

20  evaluative mediation and offer and acceptance processes aren't

21  successful, they would want to litigate in the Commonwealth

22  court, or go to arbitration rather than litigating in the

23  Title III court?

24         MS. STAFFORD:  I don't have an exact number on that.

25  I don't believe that there have been any interested in going

1    to the Title III court at this stage, but I don't know that we

2    have exact numbers at this time.

3             THE COURT:  Thank you.  So that takes care of the

4    questions that I had, and so I will now give the

5    representatives of the Oversight Board an opportunity to make

6    any further remarks that they might like to offer.

7             MR. BIENENSTOCK:  Thank you, Your Honor.  In

8    connection with Your Honor's opening -- this is Martin

9    Bienenstock, Proskauer Rose, LLP, for the Oversight Board.

10            In connection with the remarks Your Honor started

11   with about last night's Order, I was going to take advantage

12   of this opportunity to tell the Court and the parties at least

13   the preliminary steps the Board will be taking to address Your

14   Honor's Order.  Business decisions haven't been made yet, but

15   there's a lot that might be beneficial for the Court to know

16   and others to know.  That said, it will just take me a few

17   minutes.

18            First, the Board wants to thank the Court, and is

19   grateful for the opportunity to address the issues that the

20   Court identified, and to be sure, the Board is going to

21   address all of them.  In connection with the preemption

22   issues, we will be submitting an analysis for each of the

23   statutes.  And I'm not going to go into what that will say

24   now, but we're going to try to be responsive to the Court's

25   concerns clearly.

 1           The one that I will mention now are the Court's

 2   concerns about Acts 80, 81, and 82.  First, the Court had a

 3   timing concern, and I wanted to explain that the reason for

 4   the timing, which is -- as the Court pointed out, we added

 5   those acts to the list of proposed preempted statutes at the

 6   very end -- is this:  When those acts were enacted, the

 7   government, both the former Governor and AAFAF, had an

 8   agreement with the Oversight Board that those acts would not

 9   be implemented unless and until the Oversight Board was

10   satisfied that, basically, they were being amended to make

11   them palatable on a number of different levels.

12           What happened in terms of the timing was during the

13   Confirmation Hearing, the legislature passed S.J.R. 171, which

14   is currently on the Governor's desk, and that Act compels the

15   Governor to implement Acts 80 through 82, which the government

16   had previously agreed not to implement.  So we thought it was

17   under control.  It's not under control, and that's why we had

18   to put the acts back on the list at the very end.  They're of

19   extreme importance, because they basically recreate defined

20   benefit plans, and, in most cases, end up paying pension

21   claims more than in full, so they create all kinds of

22   different issues.

23           We will, in our submission on December 20, explain to

24   the Court why we think the Court can properly rule they are

25   preempted, but we will also be prepared, if we haven't done it

1    before December 20, to file a complaint to nullify those acts,

2    because of their magnitudeness impact on finances and other

3    things in connection with the Plan and the Fiscal -- the Title

4    III Plan of Adjustment, the Fiscal Plan, the budget, et

5    cetera.  So we will explain it as best we can, and be prepared

6    to go in different directions if the Court determines that it

7    was too late to put them on the list.

8          In connection with the Fifth Amendment issues, as I

9    explained during the confirmation hearing in response to a

10   question that Your Honor posed to the Board, the money

11   involved to compensate those claims in full for the amount of

12   just compensation, however that comes out, the Board believes

13   is doable.  And so we will make a revision to the Plan to

14   provide for that payment if that's this Court's ultimate

15   ruling.

16         We might also take the Court up on its invitation to

17   show cause why the Plan should be confirmed as is, but we have

18   no illusions.  We read the Court's reasoning carefully.  We

19   might explain why we had disagreed, but, in any event, we'll

20   be prepared to go forward as the Court is currently indicating

21   its ruling would be.

22         And in connection with the third portion of the

23   Court's Order, going to various glitches, of course we will

24   correct each and every one of them, and, hopefully, to the

25   Court's satisfaction.  And that's all I wanted to say, unless

1   the Court has questions, Your Honor.

2           THE COURT:  Thank you, Mr. Bienenstock.  I appreciate

3   the preview, and the speed at which you've paid attention to

4   the Order, digested the issues, and are undertaking a plan to

5   respond.  That is very much appreciated.

6           Mr. Friedman had raised his hand during your

7   presentation, and so I'll call on Mr. Friedman now.

8           Good morning, Mr. Friedman.  I need you to unmute.

9           MR. FRIEDMAN:  Yes.

10          THE COURT:  Okay.  I think you're unmuted now.

11          MR. FRIEDMAN:  Thank you, Your Honor.  The host just

12  unmuted me.

13          Thank you, Your Honor.  Good morning.  It's Peter

14  Friedman from O'Melveny & Myers on behalf of AAFAF.

15          We thank the Court for acknowledging and restating

16  its prior conclusion in the Order with respect to AAFAF's

17  status as a party in interest.  We were very surprised by the

18  Board's argument at this very late stage in the case.

19          With respect to the arguments Mr. Bienenstock just

20  made, I think they really reiterate what the Board argued in

21  its closing statement.  I think it continues to misunderstand

22  or misrepresent -- misrepresent is the wrong word.  I think it

23  misportrays acts -- some provisions of both the new Senate

24  Resolution and the overall effect of Acts 80 through 82.  And

25  I think those statutes obviously have been out there for more

1   than a year, and they should have been addressed much earlier

2   in the process.

3           And that leads me to a small concern that if what

4   we're going to get is not a meaningful meet and confer

5   process, but just an extensive brief on December 20th, with

6   detailed analysis, and other arguments with respect to all of

7   the statutes that are preempted, as well as I think the

8   question the Court posed with respect to really what can the

9   Board do with respect to future legislation, and how does

10  preemption mean -- we will obviously endeavor to do our very

11  best to respond meaningfully by December 23rd, but we may find

12  ourselves in a position, based on the size and scope of the

13  Board's pleading on the 20th, to be required to come to the

14  Court and ask for more time for us to be able to give a more

15  meaningful response.

16          You know, we obviously, as we said before, do support

17  confirmation of a plan, and don't want to be an obstacle, but

18  depending on what the Court -- what the Court receives from

19  the Board, we may be in a position where we need to come back

20  to the Court and ask for more time to meaningfully address

21  what's received.  And we do hope and, you know, sort of

22  publicly suggest to the Board that we do try to have as

23  meaningful a meet-and-confer process, as directed by the

24  Court, as we possibly can between now and then.

25          THE COURT:  Thank you, Mr. Friedman.  It's obvious

 1   I'm sure to everyone that I put the meet-and-confer

 2   requirement in there for a reason, in the hopes that there can

 3   be something that is appropriately mutually satisfactory, and

 4   that will of course help the Court in expeditiously resolving

 5   the Confirmation Order -- the Confirmation Motion, I mean, and

 6   issuing an order as to a final decision, as further

 7   enlightened by the further submissions.  Expeditious

 8   resolution of the pending motion is in the interest of all

 9   parties in interest, and in particular of the people of Puerto

10   Rico, and so I do urge you to speak candidly, meaningfully,

11   and with an eye to reaching some consensual language and

12   concepts on at least some of these issues.

13          So thank you, Mr. Friedman, for your remarks, for

14   your preview of your concerns, and I thank the Oversight Board

15   and AAFAF in particular for the undertakings to address these

16   issues promptly.  I urge you to address them together.

17          Mr. Friedman --

18          MR. FRIEDMAN:  Thank you, Your Honor.

19          THE COURT:  -- was there anything further you wanted?

20          MR. FRIEDMAN:  Just to thank you.

21          THE COURT:  Thank you.

22          So are there any further remarks from AAFAF in

23   connection with the status report?

24          MR. MARINI-BIAGGI:  Good morning, Your Honor.  Luis

25   Marini of Marini, Pietrantoni, Muniz for AAFAF.  Your Honor,

1  we don't have anything else to add to the status report.

2            THE COURT:  Thank you, Mr. Marini, and good morning.

3            MR. MARINI-BIAGGI:  Good morning.  Thank you.

4            THE COURT:  So we next turn to Section II of the

5  Agenda, which is the Contested Matters section.  The first

6  matter is the Debtors' 374th Omnibus Objection to claim nos.

7  174661, 174604, and 174660, and that is docket entry no. 17923

8  in case no. 17-3283.  I believe that Ms. Stafford will first

9  speak for the movants, and we've allocated two and a half

10 minutes for that.

11           Good morning again, Ms. Stafford.

12           MS. STAFFORD:  Good morning again, Your Honor.  For

13 the record, this is Laura Stafford of Proskauer Rose on behalf

14 of the Oversight Board.

15           The 374th Omnibus Objection seeks to disallow in

16 their entirety proofs of claim which were filed after the bar

17 dates established by this Court's Bar Date Orders.  For the

18 Commonwealth, COFINA, HTA, ERS, and PREPA, that bar date is

19 June 29th, 2018, and for PBA, that bar date is July 29th,

20 2020.

21           One response to this objection is scheduled for

22 hearing this morning.  There will be additional responses to

23 this objection scheduled for the Claim Objection Hearing set

24 by Your Honor's Order for January and February.

25           (Sound played.)

1           MS. STAFFORD:  The response was filed by Union de
2   Empleados de Oficina de la Autoridad de Edificios Publicos, or
3   UEOPAEP, and Union de Empleados de Autoridad de Edificios
4   Publicos, or UEAEP, at ECF no. 18167, with respect to Proof of
5   Claim Nos. 174661, 174604, and 174660.  Proof of Claim No.
6   174604 was filed on July 28th, 2020, and Proof of Claim Nos.
7   174660 and 174661 were filed on July 29th, 2020.

8           Each of these claims state that they are being
9   asserted against the Puerto Rico Buildings Authority, jointly
10  with the Commonwealth of Puerto Rico.  The response asserts
11  that the applicable bar date for the claims was July 29th,
12  2020, and, accordingly, the claims were timely filed.  Because
13  each of the claims state that they are being asserted against
14  PBA jointly with the Commonwealth, it is not clear against
15  which debtor the claimants intended to assert the claims.

16          To the extent UEOPAEP and UEAEP intended to assert
17  claims against the Commonwealth, the claims are late filed,
18  and the response does not contend otherwise.  However, to the
19  extent the UEOPAEP and UEAEP intended to assert claims against
20  PBA, the claims are timely, and the objection will not seek to
21  disallow the claims with respect to PBA.

22          Accordingly, we'd request the Court grant the 374th
23  Omnibus Objection, and disallow the claims solely to the
24  extent they are asserted against the Commonwealth,
25  notwithstanding the response.

1            Thank you, Your Honor.

2            THE COURT:  Thank you, Ms. Stafford.

3            We have Mr. Maldonado-Nieves up to speak for five

4    minutes on behalf of the claimants, at least of UEOPAEP.  Is

5    Mr. Maldonado-Nieves here?

6            (No response.)

7            THE COURT:  Apparently he is not signed in for the

8    Zoom.  Ms. Stafford, have you heard anything from him?

9            MS. STAFFORD:  We have not.  We actually reached out

10   to Mr. Maldonado-Nieves several times in advance of this

11   hearing, and had not received a response.  So we're not sure

12   whether he intended to appear this morning.

13           THE COURT:  I'm going to ask our court staff here,

14   can we tell whether he registered for the hearing at all?

15           Give us a moment.  We're just going to check that.

16           MS. STAFFORD:  (Nodding head up and down.)

17           THE COURT:  It appears he didn't register for the

18   hearing at all; and an invitation was sent to him, but he did

19   not respond by registering.  So I will take that nonresponse

20   and Ms. Stafford's representations as to him not responding as

21   an indication that he did not intend to come and make remarks

22   in opposition to the motion today.

23           I have reviewed thoroughly the motion and the

24   opposition, and I find that the objection should be and hereby

25   is sustained as to claim nos. 174661, 174604, and 174660 filed

1    by UEOPAEP and UEAEP, solely to the extent that the claims are

2    asserted as against the Commonwealth, because the Commonwealth

3    bar date was June 29th, 2018.  This does not expunge the

4    claims as to the PBA.

5              MS. STAFFORD:  Thank you, Your Honor.

6              THE COURT:  Thank you.

7              So now we can move on to the 388th Omnibus Objection,

8    which is docket entry no. 17931.  Ms. Stafford.

9              MS. STAFFORD:  Thank you, Your Honor.  The 388th

10   Omnibus Objection seeks to disallow in their entirety Proofs

11   of Claim filed by the Asociacion de Empleados del ELA, or

12   AEELA, that assert amounts for which neither the Commonwealth

13   nor ERS are liable.

14             AEELA filed a response at ECF no. 18613.  The

15   response withdraws all claims filed by AEELA with the

16   exception of Proof of Claim Nos. 51746 and 51426.  Proof of

17   Claim Nos. 51746 and 51426 purport to assert --

18             (Sound played.)

19             MS. STAFFORD:  -- interest in AEELA's participation

20   in the sale of ERS's assets.  Specifically, AEELA contends

21   that it has an interest in what it calls the deposit of ERS's

22   account assets in the amount of approximately 190 million

23   dollars, plus $390,480,000 from the sale of ERS assets and

24   available funds.

25             AEELA, accordingly, claims to have retained a

1    property interest in ERS's assets as a result of its prior

2    payment of employer and employee contributions into ERS.

3    However, neither the claims themselves, nor the response

4    explains the alleged legal basis for AEELA's claims.  AEELA

5    nowhere provides any statutory or legal basis for the alleged

6    retained interest in ERS's assets, and the only statutory

7    authority provided by AEELA, a provision of Act 447 of 1951

8    that provides that AEELA shall be deemed to be a public

9    enterprise, does not purport to provide AEELA any property

10   interest.

11        AEELA's response also states that its retired

12   employees' pensions must come from the General Fund, and, for

13   that reason, AEELA must have participation in the sale of

14   ERS's assets, and should be excluded from PayGo in order for

15   AEELA to be treated in equal condition as the other

16   participating agencies in ERS.  But AEELA is already treated

17   the same as other entities that previously participated in

18   ERS.  Like all other participating employers, its employees'

19   pensions are paid from the General Fund, as required by Act

20   106, and AEELA, like all other employers, must reimburse the

21   Commonwealth for amounts paid to its retirees pursuant to

22   PayGo.  There's no indication in the response or in the claims

23   that AEELA is treated any differently, and, therefore, is

24   entitled to any additional relief as a result of its

25   participation in PayGo.  And for those reasons, we would ask

1   the Court to grant the objection, and disallow the claims,

2   notwithstanding the response.

3          Thank you, Your Honor.

4          THE COURT:  Thank you, Ms. Stafford.

5          Is Mr. Cuprill-Hernandez here to speak for AEELA?

6          MR. CUPRILL-HERNANDEZ:  Yes, Your Honor.  Good

7   morning.

8          THE COURT:  Good morning, sir.

9          MR. CUPRILL-HERNANDEZ:  My name is Charles Cuprill,

10  and we represent AEELA.  AEELA is an association of

11  governmental employees created by law no. 133 of June 28,

12  1966.  It's a separate and distinct legal entity with a

13  capacity to sue and be sued.

14         AEELA was a participating employer in the employers'

15  retirement system of the Commonwealth of Puerto Rico on behalf

16  of employees covered thereby as part of ERS' administration of

17  the payment of pensions and other benefits of officers and

18  employees of participants in ERS.  The Commonwealth, by Act

19  106, determined that the General Fund would assume

20  responsibility to cover the payments that ERS could not make

21  to pensioners, creating the pay as you go system, whereby

22  disbursements were to be continued for all current pensions in

23  ERS from the General Fund, with non-Commonwealth employers

24  reimbursing the Commonwealth for payments made thereby to

25  these employers' current pensioners, and eliminating

1    employers' obligations to contribute to ERS.  As part of Act

2    106, ERS was required to sell the assets and transfer the

3    proceeds to the Department of the Treasury of Puerto Rico's

4    General Fund.

5           The claim by AEELA, which is filed in both cases, in

6    the case of the *Commonwealth of Puerto Rico*, as well as in the

7    *ERS* case, in the amount of $2,000,670, is premised on the

8    formula based on the amount paid by AEELA to ERS during fiscal

9    year 2013-2014, divided by the total paid by all employers to

10   ERS, including the Commonwealth, the municipalities, and

11   public corporations, as well as AEELA, to calculate the

12   percent of uniform additional contributions established by

13   ERS, and as set forth in our answer to the objection.  Based

14   on that formula, the Proof of Claim in the amount that I

15   indicated previously was calculated.

16          Section 76 --

17          THE COURT:  Mr. Cuprill.

18          MR. CUPRILL-HERNANDEZ:  Yes, ma'am.

19          THE COURT:  So I understand that you've referenced a

20   formula that's in the Act, but what aspect of the Act gives

21   AEELA a right to claim that money from ERS, as opposed to

22   governing an amount for which AEELA would be responsible to

23   pay further to the General Fund under PayGo to support the

24   ongoing benefits for its employees?

25          MR. CUPRILL-HERNANDEZ:  Your Honor, the formula and

1  the claim is premised on the contributions made by AEELA to

2  ERS indicating, with that contribution, based on that formula,

3  that AEELA was a participant in the assets that were directed

4  to be sold.  And the same amount of its contribution, the

5  percentage that is set forth in the answer to the objection,

6  are the grounds for claiming a participation in the

7  disposition of the assets as directed by Act 106.  And that is

8  the basis of the Proof of Claim.

9          Continuing, AEELA, as a public enterprise -- under

10  Act 106, and Law No. 447, and as a public enterprise is not

11  excluded from ERS membership, and, therefore, maintains the

12  same rights and privileges as participants in ERS.  And the

13  position of AEELA is that it is entitled, on the basis of that

14  participation, to share in the proceeds arising from the sale

15  of the assets, as we indicate in the objection, and that's the

16  basis on which the claim is founded.  And that would be all on

17  our part, Your Honor.

18          THE COURT:  Thank you, Mr. Cuprill.

19          Ms. Stafford, would you like to respond?

20          MS. STAFFORD:  Yes, Your Honor.  Just briefly.

21          Mr. Cuprill's argument still, respectfully, did not

22  provide any legal or statutory basis for the alleged right to

23  participate in any sale or transfer of ERS's assets.  Like all

24  employers who participated in ERS, there -- following the

25  payment of employer contributions into ERS, the employers did

1   not retain any rights in those assets that would then entitle

2   them to demand some sort of participation or claim against

3   either ERS or the Commonwealth after the fact.

4           (Sound played.)

5           MS. STAFFORD:  And I didn't hear any articulation of

6   the basis for the alleged right to participate or retain some

7   kind of interest in ERS's assets.

8           I'd also point out, just for the record, that the 190

9   million dollar transfer that Mr. Cuprill referenced in 2017

10  was not truly a sale.  It was actually a transfer of assets

11  from ERS to the Commonwealth as a partial funding of PayGo.

12  So it's not really accurate to characterize that as a sale of

13  assets.

14          Unless the Court has any further questions, Your

15  Honor --

16          THE COURT:  No, I do not.  Thank you very much,

17  Ms. Stafford.

18          Again, I've reviewed carefully the objection, the

19  response thereto, and listened carefully to the arguments this

20  morning.  I will now rule.

21          My ruling is that the 388th Omnibus Objection is

22  sustained as to all of the proofs of claim of AEELA.  Certain

23  ones have already been withdrawn, and the two remaining ones

24  are nos. 51476 and 51426.  Those are disallowed in their

25  entirety, because the claimant, AEELA, has failed to identify

1    a legal basis, either in Act 106 or in other Puerto Rico law,

2    for its assertion that it is entitled to a share of the ERS

3    assets that were transferred to the Commonwealth, whether on

4    account of prior contributions to ERS, or some notion that the

5    ERS assets were sold.  AEELA has not shown any reason that it

6    should be treated differently from other employers that

7    contributed to ERS.  None of those employers is entitled to a

8    share of the assets that were transferred.  The objection is

9    sustained, and the claims are disallowed.

10         I will expect, Ms. Stafford, that, at the appropriate

11   time, you will submit a comprehensive proposed order covering

12   the claims resolved by the Omnibus Objection in this ruling.

13         MS. STAFFORD:  We will do so, Your Honor.  Thank you.

14         THE COURT:  Thank you.

15         Now, are there any other matters that any counsel

16   believe need to be addressed today?  I will wait a few seconds

17   to see if any hands are raised.

18         I don't see any hands raised.  This concludes the

19   Agenda for this Omnibus Hearing.  The next scheduled hearing

20   is the January 19th to 20th, 2022, hearings concerning certain

21   other Omnibus Claims Objections.  As with today's hearing,

22   that will occur over a combination of Zoom and a listen-only

23   telephone line, and an appropriate procedural order for the

24   hearing will be issued in due course.

25         As always, I thank the court staff here in New York,

1  in Puerto Rico, and Boston for all of their continuing work in

2  connection with these hearings, and all of our other work on

3  the Title III cases, which, as we all know, are very complex

4  indeed.  We are all working under very challenging

5  circumstances.

6       Stay safe, keep well, and have a lovely holiday

7  season everyone.  We are adjourned.

8       (At 10:45 AM, proceedings concluded.)

9                    *     *     *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1   U.S. DISTRICT COURT    )

2   DISTRICT OF PUERTO RICO)

3

4        I certify that this transcript consisting of 31 pages is

5   a true and accurate transcription to the best of my ability of

6   the proceedings in this case before the Honorable United

7   States District Court Judge Laura Taylor Swain, and the

8   Honorable United States Magistrate Judge Judith Gail Dein on

9   December 15, 2021.

10

11

12

13  S/ Amy Walker

14  Amy Walker, CSR 3799

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```