# EXHIBIT 3

<u>CERTIFIED TRANSLATION</u> BY OLGA M. ALICEA, FCCI, NJITCE-S

**(S. B. 1616)**
**(Conference)**

> 18th LEGISLATIVE   14TH ORDINARY
>    ASSEMBLY          SESSION
> Law No. _____80_____
> (Approved on <u>August 3, 2020</u>)

# LAW

To create the "Incentivized Retirement and Justice Program for Our Public Servants Act," in order to establish a program whereby eligible employees of the Government of Puerto Rico can, voluntarily, separate from their employment on an incentivized basis before their retirement age; to provide the required years of quoted service necessary to qualify for this Program; to regulate the time that the employee has to exercise his decision to avail himself of the Program; to provide the special incentives that will be granted to employees who avail themselves of this Program; to provide the necessary requirements for the implementation of the Program; and for other related purposes.

# PREAMBLE

The Retirement System for Employees of the Government of Puerto Rico (hereinafter "*the* Retirement System" or "the System") has faced fiscal problems for decades. This situation has worsened over the years and under the last Administration the Retirement System faced an unprecedented crisis. Historically, since the enactment of Law No. 447 of May 15, 1951, as amended (hereinafter "Law 447-1951"), greater benefits were granted to retirees of the Government of Puerto Rico (hereinafter "the Government") than those that were fiscally sustainable. Even though the System had a structural deficit since its creation, these increases resulted in the unavoidable restructuring thereof due to its unstable economic situation.

Thus, Law No. 1 was enacted on February 16, 1990 (hereinafter "Law 1-1990"), which increased the monthly remuneration corresponding to employers and employees by 9.275% and 8.725% respectively and modified the benefit structure. Employees who entered the Retirement System after April 1, 1990 had the option of an optional retirement, after the age of 65 and a minimum of 10 years of accredited service. The annuity would be 1.5% of the average remuneration, multiplied by the number of years of accredited service. It should be noted that employees who entered the System prior to the 1990 amendment were entitled to a "pension due to merit" of 75% of their average salary if they had a minimum of 30 years of service and were at least 55 years old, or, in the alternative, an annuity of 65% of the salary with 30 years of service without a minimum age requirement. In addition, they retired with all of the benefits, meaning: Christmas bonus, summer bonus, medicine bonus, and employer contribution for their health plan.

Later, in the year 2000, under the Administration of Dr. Pedro Rosselló, the Retirement System was reformed and instead of the original accrued benefits model, a defined contribution plan was established, better known as "Reforma 2000," for the public employees who began to contribute as of January 1, 2000. Under Reforma 2000, a "Retirement Savings Account Program" was created, which consisted in the establishment of a savings account for each participant of the System. The savings accounts would be credited with the contributions of each participant and their employer, in addition to the investment profitability. The benefit to be provided to each

participant upon separation from service, whether due to retirement or otherwise, would depend on the total amount accrued in their savings account. In addition to that reform, which was positive for our public servants, Dr. Pedro Rosselló's Administration injected hundreds of millions of dollars into the System to help alleviate the actuarial deficit.

After the fiscal health of the Retirement System continued to deteriorate under the administrations of Governor Sila M. Calderón and Governor Aníbal Acevedo Vilá, and despite the efforts of Governor Luis G. Fortuño Burset to help solve the System, the past administration of Governor Alejandro García Padilla tried unsuccessfully to reform the System through countless amendments aimed at prospectively increasing the contributions already established, increasing the retirement age, and reducing benefits, among others. To those ends, Law 447-1951 was amended through Law No. 3 of April 4, 2013 (hereinafter "Law 3-2013") which establishes, among other measures, an employer contribution system of a minimum of 12.75% of the remuneration of each participant, increasing annually from 1% to 1.25% until 2021. In addition, it raised the minimum retirement age to 61 years in stages for participants under Law 447-1951 and to 65 years to participants under Law 1-1990. On the other hand, it eliminated benefits such as: summer bonus and employer contribution to the health plan for those retired after June 30, 2013. As a corollary of this Law 3-2013, the defined benefit pensions were reduced from 75% to an average of 40% for employees under Law 447-1951 and 29% for employees under Law 1-1990. However, this reform was inadequate and insufficient, it resulted in the collapse of the Retirement System established since 1951, and, incidentally, it negatively impacted our public employees and future retirees who suffered from disproportionate cuts to their pensions and benefits without such measure addressing the problems of the System.

In light of this reality, and to protect our public servants and retirees from the imminent insolvency of the System and the ineffectiveness of the reforms of the past Administration, this Legislature enacted Law 106-2017, known as the "Law to Guarantee Payment to Our Retirees and to Establish a New Defined Contribution Plan for Public Servants" (hereinafter "Law 106-2017").

After the enactment of Law 106-2017, the Retirement System is no longer the payer of employee pensions, rather the responsibility falls on each government entity, through the "pay as you go system." In that sense, we consider it necessary to safeguard the pensions of our retirees eliminating the employer contributions that the Government was obligated to make in favor of the Retirement Systems. To that end, the "pay as you go" system was established whereby the Government assumed the responsibility of paying the amounts corresponding to accrued pensions that the System could no longer cover for the benefit of our retirees. On the other hand, to ensure an honorable retirement for the current public servants, without undermining the Government's ability to provide essential services to the citizens, a new defined contribution plan was prospectively established with a minimum of 8.5% monthly compensation, which is funded by the contributions made by the public employees plus the investment profitability subject to the participant's choice among various diversified investment alternatives. This new plan is also supported by statutory causes of action for the participants to defend their contributions, and the imposition of vast experience and competency requirements on our public servants' investment managers. It is important to point out that for the first time in the history of Puerto Rico, a new and true defined contributions plan has been established, where now it is the employees and not the government who decide how and where they invest their money.

<u>CERTIFIED TRANSLATION</u>                                              BY OLGA M. ALICEA, FCCI, NJITCE-S

## PROMESA and Adjustment Plan

In the year 2016, and as a result of the excessive debt that Puerto Rico faces, the United States Congress enacted the "Puerto Rico Oversight, Management, and Economic Stability Act" (hereinafter "PROMESA"). Said statute established a colonial court organism, that is, the Fiscal Oversight Board (hereinafter called the "Oversight Board"), with ample powers over our fiscal planning, budgetary measures, and government actions. In particular, it provides that its provisions prevail over any provision of territorial laws or regulations that are in contravention of PROMESA, highlighting our colonial status.

PROMESA also created the legal framework so that the Central Government and its public corporations could file for bankruptcy. When the Oversight Board began its work in Puerto Rico, the accrued debt of the Government amounted to 70,000 million dollars and more than 50,000 million were owed to retirees for unpaid benefits. In 2017, the Oversight Board filed a petition for bankruptcy for the Retirement System under Title III of PROMESA. Subsequently, in 2019, the Oversight Board submitted an Adjustment Plan, on behalf of the Government of Puerto Rico, the Public Buildings Authority, and the Retirement System to restructure 35,000 million in debt and other obligations, in addition to the 50,000 million in pension obligations. Said Adjustment Plan proposed a cut to the retirees' pensions of up to a maximum of 25%. At present, after some negotiations between the Government's Official Retirees Committee and the Oversight Board, an approximation of up to 8.5% in cuts to pensions is contemplated, according to the last amended Adjustment Plan that was submitted. This means that over 65,000 people would see their pensions significantly cut. It should be pointed out that the Adjustment Plan stipulates in its definition of "percentage of reduction that, the class that votes against it will have a cut of 10% in addition to the 8.5% proposed base cut. According to that, this constitutes a threat of greater cuts to the pensions. Finally, for the Adjustment Plan proposed by the Oversight Board to enter into effect it is necessary: (1) to create a bill approved by the legislature that can make viable the restructuring of the bonds; (2) to obtain the favorable vote of the affected creditors; and (3) the approval of Judge Laura Taylor Swain, who hears the cases under Title III of PROMESA in the Federal District Court.

## Proposal given the Tax Reality

It is our duty as the Legislature to propose viable alternatives in order to do justice to the public employees who were marginalized with the failed reform of the Retirement System of Law 3-2013 and to prevent them from being subjected to more and greater cuts to their retirement pensions. Furthermore, it is imperative that alternatives be sought that can achieve a balance between: (1) restoring benefits that were cut to the public employees and doing them justice; (2) achieving significant and necessary savings for the treasury; and (3) avoiding cuts to the pensions of government retirees who are a vulnerable class. Certainly it is urgent for us to establish measures aimed at protecting the rights of this population, even more so where 43% of the population lives under federal poverty levels. According to a recent report, commissioned by the Oversight Board, since the year 2007 most pensions do not have cost-of-living adjustments. The public employees have had to suffer the drop in their benefits for decades through the different amendments that the Retirement System has undergone. We understand that the proposed cuts are unnecessary and they would continue to undermine the rights of the retired community. The past has shown that neither cutting benefits nor the imposition of new taxes have been effective options

<u>CERTIFIED TRANSLATION</u>                                    BY OLGA M. ALICEA, FCCI, NJITCE-S

to get Puerto Rico out of the fiscal crisis. For these reasons we are preparing to promote an "Incentivized Retirement Program" in order to do justice to our government employees and future retirees while generating monumental savings both for the general fund and for the budgets of municipalities and public corporations.

It is important to point out that under the "pay as you go" system, it is now the employer who pays both the payroll of its employees and the pensions of its retirees. The future employee pensions will be 50% or less than 100% of the salary plus the fringe benefits that the employer pays to the current employee. Therefore, this measure is viable and laudable for the following reasons: 1) it does justice to employees of Law 447-1951 and to eligible employees of Law 1-1990 who, under Law 3-2013, saw their pensions reduced by more than 35 %, the monthly contribution to the health plan of Law 95-1963 was eliminated, and their retirement ages were raised to 61 years for Law 447-1951 and to 65 years for Law 1-1990; 2) it generates multimillion-dollar savings in payroll both to the general fund and to the budgets of corporations and municipalities; 3) it is in line with the government's public policy of having a smaller, more agile and efficient government; 4) it makes viable the use of the single employer tool to replace personnel who retire under this Law, and finally; 5) it allows employees to retire who, although they have already reached and exceeded retirement age, continue to work, many of them still ill, since the percentage of pension with which they would leave today is not enough to live on, with the further difficulty that they would not have either the monthly contribution of $100 for their health plan after having given the best years their life to build today's Puerto Rico.

Undoubtedly, this initiative will improve the socioeconomic conditions, both of the employees covered by Law 447-1951 and that of the eligible employees covered by Law 1-1990. It should be noted that this proposal represents significant savings for the Government of Puerto Rico, municipalities, and public corporations. This is because it assesses in its purposes producing savings to the Government's General Fund, as well as to the budgets of municipalities and public corporations. For illustrative purposes there are currently around 9,452 active participants of Law 447-1951 representing an annual payroll of $342,277,165 plus about $60 million in fringe benefits. If all of those employees retired under this law with 50% of their current salary this would represent an annual saving of over $171,138,582. On the other hand, the active participants of Law 1-1990, eligible under this bill are about 1,900 who represent an annual payroll of approximately $77, 000,000 plus fringe expenses. This substantial savings initiative comes from a reduction in expenses associated with the payroll. We support our position based on certified actuarial studies (hereinafter "the actuarial studies"), stating that, after its implementation, the Government would obtain savings of over $1,400 million over a period of 30 years. In the first 5 years it is expected that the savings will be a little more than $1,000 million. Then the savings generated would be distributed over the remaining term.

The bill proposed by this Legislature does justice to our public servants, who have given the best years of their lives to build today's Puerto Rico. We cannot allow putting at risk the future of thousands of public employees covered by the Retirement System. On the other hand, we cannot lose sight of the dire economic impact that would be caused by allowing more cuts to our public servants and retirees. It is already a System that has been eaten away in the past decades and each cut pension is less money that moves in the local economy. The Incentivized Retirement Program, to the extent that it does justice to the public servants, will generate millions of dollars in unprecedented savings for the Government of Puerto Rico. In addition, it will not be necessary to

<u>CERTIFIED TRANSLATION</u>                                    BY OLGA M. ALICEA, FCCI, NJITCE-S

lay off thousands of employees to comply with the public policy of consolidation of agencies and downsizing the Government. The success of this proposed bill is found backed by certified actuarial studies and, in short, it will propel a positive impact to the economy of our Island.

Wherefore, we are aware of the need to restructure the Retirement System of the Government of Puerto Rico and we assume the challenges that this entails. We have no doubt that the Incentivized Retirement Program meets the needs faced by the System and proposes a fair and reasonable solution for all of the public servants who would be seriously affected by the cuts. It is our responsibility to promote a public policy that guarantees and safeguards the right to pensions of our public servants.

**BE IT DECREED BY THE PUERTO RICO LEGISLATURE:**

Article 1.- Title

This Law will be known as the "Incentivized Retirement and Justice Program for Our Public Servants Act."

Article 2.- Definitions

(a) Administration: will mean the Administration of the Retirement System of the Employees of the Government of Puerto Rico as established by Law No. 447 of May 15, 1951, as amended.

(b) Administrator: will mean the Administrator of the Retirement System of the Employees of the Government of Puerto Rico as established by Law 447 of May 15, 1951, as amended.

(c) Agency: will include any agency, department, administration, board, commission, office, division, dependency, or instrumentality of the Executive Branch, Judiciary, Legislative Branch, Municipality, Office of the Comptroller of Puerto Rico, State Elections Commission, Public Corporation or Enterprise under the Sistema, including the Association of Employees of the Commonwealth of Puerto Rico for purposes of this Law. It will not include those entities and/or employees who participate in other independent retirement systems, such as teachers, judges, and employees of the University of Puerto Rico and the Electric Power Authority.

(d) Years of Service: will mean the total years during which the participant made contributions to the Retirement System as of June 30, 2017, and those contributions have not been requested, reimbursed, or seized for application to debts with the System, the Puerto Rico Cooperative Bank *[Banco Cooperativo de Puerto Rico]*, Savings and Credit Unions, and the Employees Association of the Commonwealth of Puerto Rico.

(e) Appointing Authority: will mean any agency head with the legal authority to make appointments for positions in the Government of Puerto Rico.

<u>CERTIFIED TRANSLATION</u>                                     BY OLGA M. ALICEA, FCCI, NJITCE-S

(f)  Contribution to the System: will mean the amount that will be deducted from the participant's monthly remuneration to be sent to the System.

(g)  Benefit: will mean the pension to be received monthly by the participant.

(h)  Pay into: for the purposes of this Law, the term "pay into" means to have made or continue to make contributions to the retirement systems, regardless of the type of account to which it is contributed or has been contributed.

(i)  Days: will mean calendar days.

(j)  Retirement Choice: will mean the voluntary and irrevocable choice to take advantage of the Incentivized Retirement Program made by any participant who meets the requirements established for participation in the Program.

(k)  Single Employer: will mean the Government of Puerto Rico as employer of all of the employees of the public agencies and instrumentalities in accordance with the provisions of Law 8-2017, as amended, known as the "Law for the Administration and Transformation of Human Resources in the Government of Puerto Rico."

(l)  Effective Date: will mean the day following the date on which the Program participant ceases his functions as an employee.

(m) Election Form: will mean the document provided by which a Participant of the System joins the Program.

(n) Retirement Board: will mean the Retirement Board of the Government of Puerto Rico created under the provisions of Law 106-2017, as amended, to act as the highest governing body of the Retirement Systems.

(o)  OGP: will mean the Office of Management and Budget ascribed to the Office of the Governor of the Government of Puerto Rico.

(p)  Participant: will mean every employee who is a member of the enrollment in the System, who is on active duty, or enjoying a leave authorized by the agency, holds a regular position as a career, trust, or term employee by law.

(q)  Election Period: will mean the period of forty-five (45) business days that the participants of the System will have to avail themselves of the benefits of the Program, as of the issuance of the circular letter of the Retirement Board, as provided in Article 12 of this Law.

(r)  Implementation Period: it will mean the period that the agency will have to separate from service the employees covered by the Program, which will be determined by the Retirement Board through a circular letter.

(s)  Program: will mean the Incentivized Retirement Program created by this Law.

<u>CERTIFIED TRANSLATION</u>  BY OLGA M. ALICEA, FCCI, NJITCE-S

(t) Remuneration: will mean the highest annual gross compensation accrued by a participant of the System in any of the last three (3) years prior to the moment they avail themselves of the benefits of the Program. When computing said Remuneration it will exclude any bonus granted in addition to salary, as well as any payment for overtime work.

(u) Essential Services: it will mean those services that each agency requests from the Retirement Board that there is a need for replacement under the sole employer mechanism or any other type of recruitment under Law 8-2017, as amended.

(v) System: will mean the Retirement System of the Employees of the Government of Puerto Rico created pursuant to Law No. 447 of May 15, 1951, as amended.

Article 3. Creation of the Incentivized Retirement Program

Through this Law, the Incentivized Retirement Program is created to offer an opportunity for early retirement and do justice to the employees of the Government of Puerto Rico who entered the System under Law No. 447 of May 15, 1951, as amended, prior to April 1, 1990, or that having started to work for the Government of Puerto Rico as a temporary or irregular employee prior to said, they were unable to contribute to the System due to their employment status and after April 1, 1990, they were appointed to career service, plus they asked to pay for those prior services on or before June 30, 2013, to pay into years of service retroactively to a date prior to April 1, 1990; they have not chosen to participate in the Retirement Savings Account Program; and they have a minimum of twenty (20) years of service paid into the System as of June 30, 2017.

Likewise, the Program created by this Law offers an opportunity for early retirement to the employees of the eligible agencies pursuant to Article 4b thereof, who entered the System under Law No. 1 of February 16, 1990, as amended, between April 1, 1990, and December 31, 1999; they had not chosen to participate in the Retirement Savings Account Program; and they have a minimum of fifteen (15) years of service paid into the System as of June 30, 2017.

The implementation of the Program will be done in strict compliance with all labor laws, current collective bargaining agreements, and with due respect for the principle of merit, the legal provisions that prohibit political discrimination, and the vested rights of the public servants. The fact that an employee joins the Program does not disqualify him from receiving all of those marginal benefits to which he would have been entitles on the occasion of his retirement pursuant to a collective bargaining agreement or other agreement negotiated with his employer, in force at the time he entered the Program. All of the above, subject to the provisions of Law 66-2014, as amended, and Law 3-2017, as amended.

Article 4.- Eligibility of Agencies to participate in the Program

a. Participants of Law 447 of May 15, 1951, as amended, and of Law No. 1 of April 16, 1990, as amended, of all of the agencies that form part of the System will be eligible for the Incentivized Retirement Program.

<u>CERTIFIED TRANSLATION</u>     BY OLGA M. ALICEA, FCCI, NJITCE-S

b. For the Incentivized Retirement Program for participants of Law No. 1 of April 16, 1990, as amended, the following will be considered eligible: (1) those agencies that participate in an alliance contract, as defined in Law 29-2009, as amended, known as the "Public-Private Alliances Act," an operation and maintenance contract with a private operator that does not constitute a public-private alliance contract, or any legal business analogous to those established in Law 29-2009, as amended; (2) those agencies, including all of their components, subdivisions, dependencies, ascribed or affiliated entities, that have been the subject of a reorganization plan in accordance with the provisions of Law 122-2017, known as the "New Government of Puerto Rico Act": and (3) public corporations and municipalities. Other agencies that comply with these parameters in the future must submit an application to the Administrator who must approve or reject the same taking into consideration the fiscal reality and need for services of the entity.

c. The positions of the participants who avail themselves of the Program will be frozen as of the date of separation from the participant's service. No employer will have discretion to restrict the right of an eligible employee to participate in the Program. However, the agencies may establish a plan for the phased retirement of the participants of this Law, so that the services they provide to citizens are not affected. To those ends, the phased plan must not require the participating employee to retire after December 31, 2022. The Retirement Board and its components may postpone the participation of their employees pursuant to Law No. 1 of April 16, 1990, as amended, in the Program until both the outsourcing and restructuring established in Law 106-2017, as amended, is completed in its entirety, this in order to ensure the continuity of services to the participants and retirees of the retirement systems and to ensure the successful implementation of current laws such as this Law.

Article 5.-Eligible Program Participants

a. To be eligible for the Incentivized Retirement Program for participants of Law No. 447 of May 15, 1951, as amended, the participant must meet the following requirements:

   1. Be a career employee in public service; employed in trust service with the right to reinstatement in a career position; a trust employee, who, although not entitled to reinstatement, meets the other requirements of this Article and is contributing to the System at the time of enactment of this Law; or an employee with a term appointment in accordance with a law.

   2. Be on active duty or enjoying some type of leave authorized by the agency.

   3. Have entered the System prior to April 1, 1990, or that having started working for the Government of Puerto Rico as a temporary or irregular employee prior to that date, was unable to contribute to the System due to his employment status and was subsequently appointed to career service under Law No. 1 of April 16, 1990, as amended, plus paid those years of prior service on or before June 30, 2013, to accrue years of service paid into retroactively on a date prior to April 1, 1990.

   4. Not have requested or received reimbursement of his contributions.

     5. Not have chosen to participate in the Retirement Savings Account Program, created by Law 305-1999.

     6. Have made contributions to the System for a period of not less than twenty (20) years of service as at June 30, 2017.

  b. To be eligible for the Incentivized Retirement Program for participants of Law No. 1 of April 16, 1990, as amended, the participant must meet the following requirements:

     1. Be a career employee in public service; an employee in trust service entitled to reinstatement in a career position; a trust employee, who, although not entitled to reinstatement, meets the other requirements of this Article and is contributing to the System at the time of enactment of this Law; or an employee with a term appointment in accordance with a law.

     2. Be on active duty or enjoying some type of leave authorized by the agency.

     3. Have entered the System under Law No. 1 of April 16, 1990, as amended, between April 1, 1990, and 31 December 1999.

     4. Not have requested or received reimbursement of his contributions.

     5. Not have chosen to participate in the Retirement Savings Account Program, created by Law 305-1999.

     6. Have made contributions to the System for a period of not less than fifteen (15) years of service as at June 30, 2017.

  c. Those participants who hold elective offices will not have be entitled to participate in the Program, unless they are entitled to reinstatement to a career position, or the agents of the Puerto Rico Police Bureau belonging to the rank system. Likewise, participating employees of other independent retirement systems, such as teachers, judges, and employees of the Electric Power Authority, will not be eligible for the Program.

Article 6.- Retirement Choice

The employee's choice to participate in the Incentivized Retirement Program will be final and irrevocable and constitutes a total and absolute release, and waiver of rights to any current or potential claim, based on: (i) the employment relationship or the termination thereof, under any applicable law; or (ii) the actions, if any, that could be taken as a consequence of the implementation of the Program. This waiver of rights will have the effect of a total settlement, of any action or right, current or potential, known or unknown, which the employee has, may have, or has had, in connection with their employment and/or separation therefrom. The effect of this release and the corresponding waiver of rights will be *res judicata*.

The Election Form used to implement the Program must contain a warning to the participant, legibly and in bold, that their choice to participate in the Program will be final and irrevocable and constitutes a total and absolute release and waiver of rights of any claim that they

may have for past, present or future actions, based on the employer-employee relationship, in accordance with the labor laws of Puerto Rico.

Article 7.- Benefits of the Incentivized Retirement Program

a. The participant of the Incentivized Retirement Program for participants of Law No. 447 of May 15, 1951, as amended, will receive the following benefits:

1. A lifetime retirement pension equivalent to fifty percent (50%) of the compensation equivalent to the highest annual gross compensation accrued in any of the last three (3) years prior to the moment they availed themselves of this Program. The hybrid annuity under Law No. 3 of April 4, 2013, is replaced by the pension provided hereby. The payment of that fifty percent (50%) will be made by the employer with the same frequency in which it would have been done had the participant remained as an employee.

2. An employer contribution of one hundred dollars ($100) per month to the health insurance plan chosen by the participant under Law No. 95 of June 29, 1963, as amended, known as the "Health Benefits for Public Employees Act." This benefit will cease when the participant reaches sixty-two (62) years of age.

3. Any other benefit that corresponds to him as a retiree of the Government of Puerto Rico under the provisions of Chapter 5 of Law No. 447 of May 15, 1951, as amended.

b. The participant of the Incentivized Retirement Program for participants of Law 1-1990 will receive the following benefits:

1. A lifetime retirement pension equivalent to fifty percent (50%) of the compensation equivalent to the highest gross annual compensation accrued in any of the last three (3) years prior to the moment of availing himself of the benefits of this Program. To determine the years of service and the amount of the benefit of the lifetime pension, the years of accredited services and contributions accrued as of June 30, 2013, under the defined benefit structure, plus the years of service and contributions made to the Hybrid Defined Contribution Program as at 30 June 2017, will be used. The resulting pension payment will be made by the employer with the same frequency as would have been made if the participant remained as an employee.

2. An employer contribution of one hundred dollars ($100) per month to the health insurance plan chosen by the participant under Law No. 95 of June 29, 1953, as amended, known as the "Health Benefits for Public Employees Act." This benefit will cease when the participant reaches sixty-two (62) years of age.

3. Any other benefit that corresponds to him as a retiree of the Government of Puerto Rico under the provisions of Chapter 5 of Law No. 447 of May 15, 1951, as amended.

<u>CERTIFIED TRANSLATION</u>                                BY OLGA M. ALICEA, FCCI, NJITCE-S

    c.    All participants in the Program, regardless of the contribution plan in which they are participating, are guaranteed as minimum benefit the one granted under this Program.

    d.    The income that the participant receives from the Program for the concept of pensions will be considered for tax purposes as if they were received for the concept of pension granted by the Retirement System in accordance with the applicable provisions of Law 1-2011, as amended, known as the "Puerto Rico Internal Revenue Code of 2011."

    e.    All participants will have be entitled to the payment of the liquidation of regular vacation and sick leave accrued as at the date of separation from service to avail themselves of the Program, in accordance with the limits established in the applicable laws or regulations. This benefit will be exempt from the payment of income tax.

    f.    From the income received from the Program, the participants will be deducted the amounts necessary to amortize loan balances with the System, the Employees Association of the Commonwealth of Puerto Rico, Savings and Credit Unions, and the Puerto Rico Cooperative Bank *[Banco Cooperativo de Puerto Rico]*.

    g.    The participants may request that the contributions for the concept of savings, insurance premiums, or any other concept permitted to public employees by law be deducted and withheld from the income they will receive from the Program.

    h.    The participants may request the transfer or disbursement of the benefits of the contributions they have made to the New Defined Contributions Plan, pursuant to the provisions of Article 3.8 of Law lü6-2017, as amended.

Article 8.- Obligations and Duties of the Agencies

The agencies will have the following obligations to their participants in the Program:

a.    Guarantee that the participants who availed themselves of the Program meet the requirements established in Article 5 of this Law.

b.    During participation in the Program, the agencies are bound by this Law as follows:

    1.    Pay each participant the amount of the lifetime pension benefit granted under the Program as of the effective date. The payment of the benefits granted and the discounts made to the program participant will be made by the agency in the same form and manner that it would have been done had the participant remained as an employee, and it must be accounted for as part of the payroll.

    2.    Pay the employer contribution corresponding to the participant's health insurance plan, in accordance with Articles 7a and 7b of this Law, as the case may be.

    3.    Discontinue the contributions to the Unemployment Insurance of the Department of Labor and Human Resources and to the State Insurance Fund corresponding to the employee as of the effective date of entry into the Program.

<u>CERTIFIED TRANSLATION</u>                                              BY OLGA M. ALICEA, FCCI, NJITCE-S

Article 9.- Vacancies, Recruitment and Savings Determined

a. The positions that remain vacant in the agencies as a result of the implementation of the Program will be frozen, unless the OGP or the Judiciary, as the case may be, authorizes otherwise by express order to that effect. Positions appointed by the Governor will not be eliminated. The agencies will take administrative and operational reorganization measures to eliminate the positions that remain vacant, in strict compliance with all labor laws, current collective bargaining agreements, and other applicable laws.

b. Notwithstanding the foregoing, those vacant positions that are determined to provide essential services for the operation of the agency may be filled. Employees of the same agency will be considered as the first option. Second, the use of the single employer transfer mechanism will be allowed in public service. If an essential position cannot be filled through these mechanisms, and as a last option, new recruitment will be permitted through internal invitation among public employees or outside of public service.

c. Each agency will establish through an internal procedure in their Retirement Plan the criteria for defining what are considered essential public services for the purposes of this Law.

Article 10.- Retention of Employees Eligible for the Program

The agencies reserve the right to retain in his position an employee who qualifies and asks to avail himself of the Program during the term that the OGP and/or the Administration establish through circular letter, in order to ensure the continuity of operations and/or to conclude some work, assignment, function, or training. In such cases, the employee will not receive the benefits of the Program for the time that the agency is using his services and he will continue to receive the compensation corresponding to his position.

Article 11.- Limitation to the Rendering of Services by the Beneficiary of the Program.

Any participant of the System who avails himself of the benefits of the Program may not render his services under any classification as an employee for any agency for a term of seven (7) years. Once this term has elapsed, the beneficiary may render his services to the agencies in accordance with the employment provisions for retirees under Law No. 447 of May 15, 1951, as amended.

The agencies must send to the Office of Administration and Transformation of Human Resources of the Government of Puerto Rico and to the OGP the list of participants who have availed themselves of the Program and who, consequently, are disqualified from entering an agency as an employee.

The Election Form to participate in the Program must contain a warning, in bold, about the participant's ineligibility to re-enter public service for a term of seven (7) years.

Article 12.- General provisions

a. All of the provisions of Law No. 447 of May 15, 1951, as amended, that are not in conflict with this Law will be applicable to the Program established hereby.

b. The Director of the OGP together with the Administrator will have all of the necessary and convenient powers to implement this Law. They may require the agencies to take all the acts deemed necessary and convenient to implement the Program. They may require the Nominating Authorities to submit all of the information they deem necessary so that both the OGP and the Administration can evaluate any application. Within a term of fifteen (15) days from the enactment of this Law, the Executive Director of the OGP together with the Administrator will prepare the Election Form and will establish through a joint circular letter the procedure, the terms, and the forms for the implementation of the Program and the provisions of this Law.

c. However, no employer may retain an eligible employee who avails himself of the benefits of this program beyond December 31, 2020. Therefore, the terms provided to process the applications must take into account the deadline of December 31, 2020, for the applicant to start enjoying the benefits of this Program.

d. The agency, through its retirement affairs coordinator and with the assistance of the Administration, will provide all participants who qualify with orientation regarding the benefits of the program.

Article 13.- Severability Clause

If any clause, paragraph, article or part of this Law is declared unconstitutional or defective by a competent Court, the judgment entered to that effect will not affect, harm, or invalidate the rest of this Law. The effect of such judgment sentence will be limited exclusively to the clause, paragraph, article, or part thereof that has been so declared unconstitutional or defective.

Article 14.- Effectiveness

This Law will enter into effect immediately after its enactment.

**DEPARTMENT OF STATE**
**Certifications, Regulations, Registry**
**of Notaries, and Sale of Laws**
**I hereby certify that this is a true and exact copy of the original**
**Date: AUGUST 5, 2020**

**(Signed)**
**Signature:**
**Maria A. Marcano De León, Esq.**
**Undersecretary**
**Department of State**
**Government of Puerto Rico**

*CERTIFIED TRANSLATION* BY OLGA M. ALICEA, FCCI, NJITCE-S

**CERTIFICATION**

I, Olga M. Alicea, an English-Spanish Interpreter and Translator certified to that effect by the Administrative Office of the U.S. Courts and by the National Association of Judiciary Interpreters & Translators (NAJIT), do hereby certify that I have personally translated the foregoing document from Spanish to English and that the translation is true and accurate to the best of my knowledge and abilities.

S/ Olga M. Alicea      August 14, 2020
**Olga M. Alicea, FCCI, NJITCE-S**      Date
**Fed. Cert. No. 98-005**      Ref.: P1701.001 (CGB)

*Translation page 14 of 14*