# EXHIBIT 30



# Section 204(c)

## Budgetary Adjustments

**November 20, 2020**

# Reapportionments Requests – From October 30, 2020 to November 19, 2020

| Gov Request Number (PP) | Entity | Resolution | Approved Amount | Request Description |
|---|---|---|---|---|
| 17774 | Institute of Puerto Rican Culture | Approve | $ 13,000 | Approve a SRF budget increase of $13K from donations received in FY21 to create a mobil app for Puerto Rican crafts and workshops and to perform inventory of the General Correspondence of the Fortaleza Archive. |
| 07326 | Institute of Puerto Rican Culture | Approve | $ 59,000 | Approve a fund release and budget increase of $59K related to prior year insurance claim funds to cover professional services for restoration and conservation of art pieces that were affected by hurricane Maria. |
| 16378 | Office of the Election Comptroller | Approve | $ 61,000 | Approve a prior year fund release and SRF budget increase in order to meet operating needs. Funds come from anonymous donations to political campaigns in excess of allowed contributions and will be use for Purchase Services, Professional Services and Materials and Suppplies. Payroll expenses request was denied. |
| 18197 | Appropriations under the custody of the Treasury | Approve | $ 36,000,000 | Approve request to create APPROP account and SRF increase to make payments to the vehicle insurance providers in connection with the compulsory state-wide coverage as mandated by Act 253-1995. |
| 18277 | Puerto Rico Traffic Safety Commission | Partially Approve | $ 3,000 | Partially approve reapportionment from PayGo to Equipment to cover FY20 debts for hardware purchase. |
| 14897 | Puerto Rico Department of Justice | Approve | $ 13,000 | Approve interagency transfer from Assignments Under the Custody of OMB to cover payments for judgements against the State. |
| 14438 | Puerto Rico Police Department | Approve | $ 77,000 | Approve inter-agency transfer to comply with an agreement between PRPB and the Department of Justice for service payment to Datamaxx Applied Technologies Inc. |
| 18358 | Puerto Rico Police Department | Approve | $ 83,000 | Approve reapportionment from Payroll to Donations, Subsidies and Other Distributions to cover the additional balance needed for the payment of the fifth installment as required by the Thomas E. Pérez federal case. |
| 18103 | Puerto Rico Infrastructure Financing Authority | Approve | $ 108,000 | Approve intergovernmental transfer from assignments under OMB Custody for payment of two judgments awarded by the Court. |
| 10517 | Puerto Rico Public Broadcasting Corporation | Approve | $ 251,000 | Approve an interagency transfer to be able to make the payment of payroll of the former employees admitted to the early retirement program established by Law 70-2010 |
| 16877 | Department of Correction and Rehabilitation | Approve | $ 34,000 | Approve a fund release of funds to reimburse not guilty defendants for the use of electric shackles. |
| 18367 | Department of Education | Approve | $ 20,000,000 | Requests a reapportionment to reallocate funds amongst its FY21 General Fund Budget. The purpose of the reallocation is to cover the cost of repairs for 428 facilities, including 422 schools, 1 Special Education Center, 2 closed schools currently used for the adult program, and 3 closed schools currently used for administrative purposes. |
| 17946 | Department of Health | Approve | $ 106,379,000 | Approve reapportionment among its programs in order to classify CAPEX funds to the corresponding programs such as the Pediatric University Hospital, Adult University Hospital, Intellectual Disability Program, among others. |
| 18863 | Department of Health | Approve | $ 910,000 | Approve full amount in order for the Department to fulllfill its Certified Fiscal Plan requirement of combating the Opiod Crisis in Puerto Rico |
| 01752 | Department of Natural and Environmental Resources | Approve | $ 300,000 | Approve fund release of account 793-0500133-081-2020 to remit payments related to FY20 debts. |
| UPR-003 | Department of Natural and Environmental Resources | Partially Approve | $ 127,000 | Approve a fund release to remit payments related to prior years debts (security, office supplies, ect). Only encumbered debts approved. Deny $37k as it pertains to Invoices from FY15 & FY16 that are covered by the stipulations of Title III of PROMESA. |

1

# Reapportionments Requests – From October 30, 2020 to November 19, 2020

| Gov Request Number (PP) | Entity | Resolution | Approved Amount | Request Description |
|---|---|---|---|---|
| 18214 | Economic Development Bank of PR | Approve | $ 210,000 | Approve reapportionment from Purchased Services to Professional Services to cover the costs of FY18, FY19 and FY20 external audits as well as additional legal services needed. |
| 18575 | Fine Arts Center Corporation | Partially Approve | $ 840,000 | Approve the use of $840,000 from previous year revenue to cover immediate payroll need, utiliy costs, professional services for external audit and legal services, materials and equipment. Additional funds would allow the agency to cover expenses through March 2021 and potential revenue could help alleviate more of the deficit before reevaluating budget needs in early 2021. |
| 17657 | Office of Management and Budget | Approve | $ 284,000 | Approve an intragovernmental transfer ($284k) from Assignments Under the Custody of OMB to cover the costs of licenses needed to continue the implementation of the Government-Wide Public Finance Management Project Plan (PFM). |
| 17488 | Office of Socioeconomic Development | Deny | $ - | Deny request as funds were transferred to Land Administration and ADEA for a restricted use under JR 66-2018. |
| 17497 | Public Service Regulatory Board | Partially Approve | $ 1,122,000 | Approve Puerto Rico Energy Bureau (PREB) request for a budget reapportionment in order to create 22 career positions and fund 7 trust positions that are currently vacant and not included in JRSP budget, given that Puerto Rico Energy Bureau is currently mandated to transition from its current position structure to one with no less than 75% civil servant employees and no more than 25% trust employees of the total employee roster according to the Fiscal Plan.⊠ |
| PRASA-FY21-003 | Puerto Rico Aqueduct and Sewer Authority | Deny | $ - | Deny request to reprogram $3M from "Pension Pay-Go" line item to the "Christmas Bonus" line items to "prefund" Christmas Bonus expenditures accrued during FY21 and destined to be disbursed during FY22. Prefunding of the Christmas Bonus accrual was rejected. Nonetheless, PRASA may submit future request to recognize Christmaas Bonus expenditures in FY21 if it identifies savings within "Payroll & Related". |
| 17879 | Puerto Rico Department of Labor and Human Resources | Approve | $ 149,000 | Approve request to pay for Main Building -Lead and Asbestos removal. |
| UPR-002 | Puerto Rico Federal Affairs Administration | Partially Approve | $ 327,000 | Partially approve reprograming of funds within its current FY21 GF budget for payroll, purchase services, transportation and other operating expenses in order to meet agency needs and operations. |
| 10485 | Puerto Rico Police Bureau | Partially Approve | $ 876,000 | Partially approve reapportionment request from Payroll/Salaries to cover Prior Year Debts fromFY20 related to fuel expenses owed to GSA and for the payment of overtime expenses related to the Task Force. |
| 14876 | Puerto Rico Police Department | Deny | $ - | Amount was rejected since GF is closed and agency must use FY21 budget to backpay obligations. This is for the payment to the Department of Labor corresponding to unclaimed and expired checks. |
| 17743 | Retirement Board of the Government of Puerto Rico | Deny | $ - | Deny the request to use profits from private equity investments to fund their operational costs as these might be subject to bondholders claims. |
| 17829 | University of Puerto Rico | Approve | $ 29,273 | Approve request to transfer $29.23M from Joint Resolution (Pass Through) Funds to Payroll and Related Costs, Materials and Supplies, Scholarships and Donations, and Other Operating Payments. |
| 18394 | University of Puerto Rico | Deny | $ - | Deny request due to UPR reporting expenses in the B2A line items (Salaries – Transitory / Part-Time Employees and Overtime) such that decreasing budget to zero in these line items could trigger noncompliance with Certified Budget for FY21 and is not representative of the actual expense UPR is reporting. |
| PREPA-FY21-002 | Puerto Rico Electric Power Authority | Approve | $ 3,300,000 | Approve reprogramming of $3.3M from "Pension & Benefits" line item to fund a Christmas Bonus payment in FY21. |
| HTA-FY21-02 | Puerto Rico Highways and Transportation Authority ("HTA") | Approve | $ 550,000 | Approve reprogram request of $550,000 from "Pension Contributions" ($219,000) and "Administrative Costs (Pension)" ($331,000) line items to fund a Christmas Bonus payment in FY21. |
| 0004M | Office of Management and Budget | Approve | $ 66,000,000 | Approve OMB request from November 14, 2020 in the amount of $66M to pay Christmas Bonus to Government employees. |
| UPR-004 | University of Puerto Rico | Approve | $ 6,719,000 | Approve request to transfer funds of Realized Savings from Purchased Services, Transportation Services, and Facilities and Public Services to Christmas Bonus Expense. |

| | | Count | 33 | $ 244,824,273 |

2



# Section 204(b)

## Contract Review

### November 20, 2020

# Puma Diesel Supply Contract Extension

November 19, 2020



Pre-Decisional | Privileged & Confidential Draft | Analysis Subject to Material Change

November 2020 Public Meeting - Section 204(b) Contract Review

## Context: Diesel supply contract extension

**Vendor:** Puma Energy Caribe, LLC

**Context**

- Fuel purchases make up a significant part (~40%) of PREPA's expenses as detailed in the certified budget for FY21. Diesel purchases specifically, projected at ~570 thousand bbl for FY21, account for ~17% of the fuel budget (~$188M out of the projected ~$1.1B total cost of fuel)

- To secure its fuel supply, PREPA entered a one-year supply agreement for diesel fuel (distillate No.2) with Puma Energy Caribe, LLC (Puma) on November 21, 2019, for the following units: San Juan, Palo Seco, Aguirre, Mayagüez, Cambalache, and Gas Turbine Generation Stations
  - The contract expires on November 20, 2020
  - It is subject to an automatic renewal of one year unless one party notifies the other of their intent to not renew the contract 120 days prior to the contract expiration date. The contract extension is scheduled to begin on November 21, 2020 and expires on November 20, 2021

- In August 2020 PREPA conducted a RFI for diesel fuel but by the closing date had only received responses from 6 companies (incl. Puma). PREPA concluded that "there is limited interest from market participants to supply diesel fuel to PREPA"

- In November 2020, PREPA proposed to the Oversight Board to extend the existing contract by one year through a contract amendment. Beyond the 1-year extension, the proposed amendment includes a 1-year automatic renewal clause, subject to the same automatic renewal conditions as the current contract

- The Fiscal Plan requires PREPA to continue to proactively and periodically explore opportunities to improve fuel procurement and delivery terms

2

Pre-Decisional | Privileged & Confidential Draft | Analysis Subject to Material Change



# Section 204

## PRASA - GDB Debt Recovery Authority

**November 20, 2020**

# PRASA - GDB Debt Recovery Authority

**Overview:**

On November 29, 2018, the obligations of the Government Development Bank for Puerto Rico were restructured as a Qualifying Modification under Title VI of PROMESA (the "GDB Qualifying Modification"). As part of the GDB Qualifying Modification, PRASA's obligations to GDB under the  Loan Agreement were transferred to the GDB Debt Recovery Authority (the "DRA").

Proposed Contract is a Settlement Agreement for an outstanding loan between PRASA and the Government Development Bank for Puerto Rico. PRASA's obligations under the Loan Agreement are currently estimated at approximately $78 million (the sum of $57.7 million in principal plus accrued interest as of October 31, 2020).

On November 10, 2020, AAFAF, PRASA and the DRA agreed in principle to fully and finally settle PRASA's current contractual obligations under the Loan Agreement for a settlement payment of $20.5 million (representing a reduction of $57.5 million, or 74%, to the outstanding obligation inclusive of accrued interest), through the execution of a Settlement Agreement.

**Value: $20,500,000**



# PRASA - GDB Debt Recovery Authority

**Budget Compliance:**

Payment will be made from PRASA cash on hand, reflecting an extraordinary payment to fully resolve the balance.
Current Expense Fund balance as of November 10, 2020: $186,249,908.34

**Fiscal Plan Compliance:**

- Full Resolution at a Substantial Discount: Proposed settlement represents a 74% discount to outstanding claim and contractual obligation.
- Removes associated litigation risk
- Facilitates PRASA's ability to access the capital markets.
- Clears path for Proposed Refunding by removing any unnecessary noise resulting from efforts by the DRA to disrupt the process.
- Cleans PRASA's balance sheet.

**Recommendation**

- Approval with Observations

The obligations of PRASA under the PRASA DRA Loan represent less than 2% of PRASA's overall debt obligations. Without a settlement, the PRASA-DRA Loan will remain outstanding, is post maturity, and will continue to accrue interest (including potentially at the default rate of Prime + 150 bps, subject to a 6.00% floor) until fully resolved, unless discharged



November 2020 Public Meeting - Section 207 - Debt Issuance



# Section 207

## Debt Issuance

**November 20, 2020**

## Summary of Potential PRASA Refinancing for Savings and Resolution of DRA Loan

- **PRASA has hired Barclays to lead a syndicate to execute a potential refunding of certain outstanding PRASA Bonds subject to market conditions at the time of issuance**

  - Given the lack of updated disclosure, among other items, the Underwriter's will pursue a limited public offering to no more than 35 accredited investors with Refunding Bonds on parity with other indebtedness

  - Subject to market conditions, the refunding bonds are expected to amortize in a similar manner of Refunded Bonds with no maturity extension

    o No Front loading of savings and savings will be generally level throughout the existing maturity profile

      ✓ PRASA will use the annual savings to supplement their Capital Improvement Program or close the financial gap included in PRASA's fiscal plan

  - Refunding PV savings threshold for Senior / Subordinate Lien of 5% and 10%, respectively

  - Subject to market conditions, the Refunding Bonds will be fixed rate debt with a 10-year par call and that the issue will be sold without ratings

  - Subject to market conditions, the Refunding Bonds will be sold without a debt service reserve fund

  - Anticipated timing will be to bring the transaction to the market as soon as possible

- **The issue will be solely for the refunding with no New Money proceeds**

- **Resolution with GDB DRA**

  - PRASA / AFFAF and the GDB DRA have reached agreement to settle an outstanding loan for a $20.5 million payment

    o This represents reduction of $57.5 million or 74% of the outstanding obligation inclusive of accrued interest



*Preliminary and subject to change; additional information regarding the potential refinancing was disclosed on EMMA: https://emma.msrb.org/P11424408-P11105243-P11515291.pdf

November 2020 Public Meeting – Section 207 – Debt Issuance

# Gurabo 207 Request Overview



DRAFT – SENSITIVE – PRE-DECISIONAL – SUBJECT TO FRE 408

2

Case:17-03283-LTS   Doc#:19566-30   Filed:12/20/21   Entered:12/20/21 23:57:59   Desc:
November 2020 Public Meeting - Section 207 - Debt Issuance
Exhibit Exhibit 30   Page 14 of 32

# Gurabo maintains surplus CAE funds after modification of existing debt

The Municipality of Gurabo (the "Municipality") is requesting authorization to **modify the use of the remaining proceeds** of the 2013 Series A, B and C General Obligation Refinancing Bonds with FirstBank, which total $541,773.75

| Description | Series | Original Amount | Remaining Amount |
|---|---|---|---|
| General Obligation Refinancing Bond 2013 | A | 7,308,975 | 479,713.81 |
| General Obligation Refinancing Bond 2013 | B | 3,379,175 | 57,736.00 |
| General Obligation Refinancing Bond 2013 | C | 1,835,325 | 4,323.94 |
| **Total** | | **$12,523,475** | **$541,773.75** |

The $541,773.75 will be **used for road resurfacing**, which is needed to restore damage caused to public roads by Hurricanes Irma and Maria

- The original amount, including the $541,773.75, was received in 2013 and it is **recognized as current debt** by the Municipality. The Municipality has been servicing the debt since 2013 using CAE funds
- The request to modify the use of remaining funds will **not increase the Municipality's debt levels** as this is not a new debt issuance
- Based on our analysis, the Municipality has **sufficient capacity to repay its current debt** with its CAE tax collection[1,2]

### *Projected Repayment Capacity FY21-FY28 ($ in 000's)*



|  | FY21 | FY22 | FY23 | FY24 | FY25 | FY26 | FY27 | FY28 |
|---|---|---|---|---|---|---|---|---|
| Total | 5,794 | 6,440 | 6,000 | 5,565 | 5,132 | 4,739 | 4,868 | 5,051 |
| Surplus CAE | 2,804 | 3,143 | 2,705 | 2,272 | 1,881 | 2,012 | 2,192 | 2,453 |
| Existing Debt Repayment | 2,990 | 3,297 | 3,295 | 3,293 | 3,251 | 2,727 | 2,676 | 2,598 |

■ Existing Debt Repayment   □ Surplus CAE

The modification of debt will not impact the Municipality's current debt levels, which are projected to be paid with CAE tax collections. Therefore, the Oversight Board should approve this request

1. AAFAF's analysis on the capacity of repayment is based on FY20 cash flow revenues
2. AAFAF uses a CAE revenue of $4,717,744 for Gurabo; the CRIM FP shows a FY20 CAE cash flow of $4,764,000



# Section 204(a)

## Submission of Legislative Acts to Oversight Board

**November 20, 2020**

November 2020 Public Meeting - Discussion on Laws 80-81-82

# Act 80, 81, 82 Analysis

November 20, 2020



# Executive Summary of Acts 80, 81, and 82

**Acts 80, 81, and 82 will all likely have an incremental cost to the government**

①      ②      ③

| **Act 80-2020** | **Act 81-2020** | **Act 82-2020** |
|---|---|---|

**Act 80-2020**

- **Provides early retirement window for employees across the government**, including public corporations (PRASA, HTA, COSSEC, AEELA) and municipalities

- The fiscal plan **already assumes savings via 3,200 headcount reduction** by FY 2023

  - The government <u>must not double count this value</u>

- The incremental cost is primarily driven **by enhanced retirement benefits paid out**

- **Analysis has not been performed by the Government** to support feasibility of high level of headcount reduction required

**Act 81-2020**

- **Provides enhanced retirement benefits** to police, firefighters, paramedics and correctional officers

- The incremental cost is primarily **driven by enhanced retirement benefits paid out**

**Act 82-2020**

- **Amends Law 26-2017 to authorize use of sick leave** towards teacher retirement eligibility and pension benefits

- The incremental cost is primarily **driven by the ability to buy up additional years of service** and the associated pension benefits derived from those additional service credits

2

# The Oversight Board has several key concerns with Acts 80, 81, 82

| The Government has not provided sufficient support for the Oversight Board to conclude that the laws are consistent with the certified fiscal plan |
|---|

**1 — Very expensive / Paid for with jobs**
- The enhanced benefits are very costly, potentially costing as much as $8.3 billion that must be offset by payroll savings or other savings. Pay for work and services is being converted into pay for retirement
- Government 204 certification relies on the elimination of positions under Act 80 or decreased hiring under Act 81 to pay for the cost of enhanced benefits

**2 — Cannot double fiscal plan savings**
- Reducing headcount / payroll up to Fiscal Plan forecasts produces no savings i.e. reduction from "100%" of pay is already assumed for these positions
- Any costs incurred to achieve these savings are not in the fiscal plan i.e. "50%" cost alone, but not payroll savings, is incremental to the Fiscal Plan

**3 — Laws don't ensure savings**
- Acts 81/82 do not require positions of retiring employees to be eliminated
- Even Act 80 allows Gov't to preserve positions if needed to provide essential services
- Some agencies and municipalities have already indicated that they will not be able to eliminate most positions. If so, "100%" savings will not be achieved but "50%" cost will still exist

**4 — Unfreezes ERS System**
- Effectively unfreezes the government's ERS pension system freeze (upheld by the PR Supreme Court in 2013), undermining the Plan of Adjustment claims process and underlying Plan of Adjustment assumptions by increasing previously frozen PayGo obligation
- If Legislature can undo this reform, it sets a precedent on the ability to achieve other forecasted reforms

**5 — Imposes cost burden on others**
- Imposes considerable additional cost burden on non-central government ERS employers, including municipalities, HTA, PRASA, AEELA, and Ponce Muelle
- Some of those employers have already said the cannot achieve required savings

**6 — Federal funds**
- Could potentially jeopardize ability to access Federal Funds, particularly at agencies with payroll funded in part by Federal monies, such as the Department of Families

**7 — Repeating past mistakes**
- The Government has a history of promising benefits to employees that it cannot afford, which is what led to the bankruptcy of the pension systems in general and required the freezing of ERS in particular
- The Government must not mislead its workers again and promise them benefits they cannot afford to pay

November 2020 Public Meeting – Discussion on Laws 80-81-82

# The Oversight Board engaged in a comprehensive and robust process under Section 204 of PROMESA to understand the fiscal impact and rectify the deficiencies

| ① | ② | ③ | ④ |
|---|---|---|---|
| **FOMB expressed significant concern pre-enactment** | **Government submits incomplete data** | **Government again submits incomplete data** | **Government implements the laws in violation of PROMESA** | |

| **June 2020** | **August 2020** | **September 2020** | **October 2020** | **November 2020** |
|---|---|---|---|---|
| • **FOMB sent letter on S.B. 1616** (Precursor to Act 80). Stated cost inconsistent with Fiscal Plan | • **Gov't submitted incomplete certification** on cost for Act 80, 81 & 82 | • **Gov't submitted additional information** at Oversight Board's request | • **Gov't issued letter** notifying Board it will implement Acts 80/82 | • **FOMB sent** letter responding to the phased approach and reiterated requirement for Gov't. to **explicitly explain how acts would be paid for** |
| • **FOMB sent letter on S.B 1623** (Precursor to Act 81). Stated police retirement benefit increase lacked cost analysis | • **FOMB sent letter** noting incomplete certification by AAFAF. Requested 14-day notification | • **FOMB sent letter** noting Act certification still does not comply with PROMESA | • **FOMB sent** letter to Gov't requiring data **showing laws have no costs** | • **Gov't issued revisions to circular letter** clarifying no retirements in phase 1 for Act 80 |
| | • **FOMB requested additional data** to support cost analysis of Act 80, 81 & 82 | • **FOMB issued statement** gov't should stop fiscally irresponsible retirement promises | • **Gov't issued revised Act 81 cert. –** still no specific savings analysis | |
| | | • **FOMB received additional information** at month end; calculations revealed substantial potential cost | • **Gov't issued circular letter n**otifying ERS employers of the Act 80 implementation / benefit | |
| | | • Gov't issued revised Act 80 certification – still omits key items in analysis | • **Gov't issued letter** with phased approach for Act 80 implementation | |

# Each law has a significant potential costs the Government has not offset

| | Act 80-2020 | Act 81-2020 | Act 82-2020 |
|---|---|---|---|
| **Sources of cost** | **Enhanced Benefits**<br>• Benefits increased to 50% of current pay<br><br>• Retirement occurs immediately, accelerating pension costs<br><br>• Current benefit structure (frozen) is a percent of 2-5 year pay average from 2013, which is typically lower than current pay level used to calculate benefit under Act 80<br><br>• Extra $100/month medical benefit to age 62 | **Enhanced Benefits**<br>• Benefits generally increased to 45% to 55% of pay retirement (tiered)<br><br>• Benefits will increase further with future pay increases since benefit is based on pay at retirement<br><br>• Extra $100/month medical benefit for the life of the beneficiary<br><br>• Benefits available to all future retirees that qualify, not just for a limited window | **Years of Service Credit**<br>• Use sick leave to buy up to 5 additional years of service credit<br><br>• Additional service may accelerate timing of benefit and may cause earlier eligibility for improved pension formula<br><br>• Government has not provided clarity as to how service credit will be applied |
| **Cost of benefits** | • Up to $4.2B for Gov't, agencies, and municipalities<br><br>• $2.2B for PR Gov't alone | • Up to $2.5B | • Up to $1.6B |
| **Potential offsetting savings** | • Elimination of positions in excess of the 3,200 people already contemplated in the fiscal plan<br><br>• Reduction of 1,500 heads beyond fiscal plan is cost neutral<br><br>• All municipalities and public corporations must pay higher costs in full; the central gov't. cannot subsidize this cost for them | • Reduction of 1,300 emergency personnel in FY22 beyond fiscal plan is cost neutral<br><br>• Eliminating positions after FY22 results in fewer savings, requiring greater reductions. For example, if delayed to FY27, headcount reduction increases to 1,600<br><br>• No specific plan proposed | • None proposed |

# The certified fiscal plan assumes personnel savings

## Key Considerations

- The fiscal plan already includes personnel cost reductions that must be achieved

- Using average salaries, this translates to a headcount reduction of ~3,200 people between FY21 and FY23, down from current levels of about 52,000 people. Down from 58,500 people in FY17

- For the Government to achieve "savings" from these new laws, it must achieve sufficient savings beyond the fiscal plan reductions already contemplated

- The fiscal plan assumes a careful balance between personnel reductions and the continued need for investment and provision of Government services

## Fiscal Plan Personnel Payroll



*$ in millions*

| FY17 | FY21 | FY22 | FY23 | FY24 | FY25 | FY26 |
|------|------|------|------|------|------|------|
| 2,638 | 2,148 | 2,033 | 2,022 | 2,041 | 2,062 | 2,084 |

*FY24-FY26 grows by inflation*

## Fiscal Plan Headcount (implied)



*Count*

| FY17 | FY21 | FY22 | FY23 | FY24 | FY25 | FY26 |
|------|------|------|------|------|------|------|
| 58,504 | 51,949 | 49,256 | 48,734 | 48,772 | 48,804 | 48,845 |

6

# Considerable costs are projected for Commonwealth agencies by Acts 80, 81, and 82[1]



**Incremental annual budgetary cost of enhanced benefits relative to the fiscal plan**

*$ in millions*

Legend:
- Act 81
- Act 82[2]
- Act 80 – CW agencies[1]
- Act 80 – Other

- • Act 80 incremental costs cause a large impact immediately as benefits are accelerated by the retirement window. Costs decline as employees reach the age that they otherwise would have been assumed to retire.

- • Act 81 and 82 apply to all future retirees and therefore costs increase gradually as employees retire with increased benefits.

- • Payment of costs over lifetime of laws not likely to directly match cost patterns. Payroll reductions to cover Act 80, for example, will be larger in later years. Therefore, headcount reductions sufficient to offset Act 80 cost over 30 years still will not be enough to offset incremental costs under Act 80 in earlier years.

[1] Act 80 costs for Commonwealth Agencies excluding PRDE and Police Bureau
[2] Act 82 costs assuming increased service considered both for benefit eligibility and benefit amount

November 2020 Public Meeting - Discussion on Laws 80-81-82

# Acts 80, 81, and 82 repeat past mistakes

| **The Government repeatedly increased benefits without adequate funding.** <br> **It bankrupted the pension systems** | |
|---|---|
| **Past Ad Hoc Increases** | The Legislature, from time to time, increased pensions for certain retirees |
| **Additional Minimum Pension Benefits** | Benefits paid to retirement plan participants that supplement the core pension benefit the participant receives, who retired prior to July/Aug 2013 (ERS, TRS resp.) and Dec 2013 for JRS |
| **Christmas Bonuses** | Annual $200 bonus for each retiree, beneficiary, and disabled member for ERS members that retired prior to certain days, instituted with Act 98-1980 |
| **Medication Bonuses** | Annual $100 bonus for each retiree, beneficiary, and disabled member to cover health costs paid in July provided the member retired prior to certain retirement dates |
| **Summer Bonuses** | JRS retirees, hired before Dec 24, 2014 receive an annual $100 bonus paid in July |
| **Cost–of–Living Adjustments (COLAs)** | Legislature increased pensions by 3% for retired and disabled members, starting with the signing of Act 10-1992, with 3% increases occurring every 3rd year since. Since 2007 ERS and TRS retirees have not received this increase |
| **Disability Benefits for High–Risk Positions** | Police, firefighters, and other employees in specified high–risk positions who are disabled in the line of work receive 80% (100% for Act 447 members) of compensation as of the date of the disability, payable as an annuity |
| **Additional Minimum Death Benefits** | Certain beneficiaries of deceased participants were entitled to certain benefit payments that shall be no less than $1,000 |

8

# Act 80-2020 Incremental Cost Analysis

# Illustrative Act 80 cost estimate using average participant statistics[1]

*Demonstrates how employee listings provided by AAFAF generate costs cited by FOMB*

| Components of cost | Exhibit A – Act 447 eligible | Exhibit B – Act 1 eligible (non-municipality) | Exhibit C – Act 1 eligible (municipality) | Total |
|---|---|---|---|---|
| **A.  Cost due to retirement benefits being received earlier** | | | | |
| 1. Number of employees | 7,180 | 4,120 | 5,650 | |
| 2. Expected retirement age | 65 | 65 | 65 | |
| 3. Average age of eligible population | 59 | 54 | 56 | |
| 4. Average number of years participant receives their benefit early (2 - 3) | 6 | 11 | 9 | |
| 5. Average benefit being received under Act 80 | | | | |
| a. Average salary | $34,450 | $44,350 | $22,750 | |
| b. 50% of average salary (50% x a) | $17,225 | $22,175 | $11,375 | |
| **6. Total early payments (1 x 4 x 5b)** | **$740M** | **$1,005M** | **$580M** | **$2,325M** |
| **B. Cost of higher Act 80 benefits after age 65** | | | | |
| 7. Act 80 benefit (5b) | $17,225 | $22,175 | $11,275 | |
| 8. Average current benefit prior to Act 80 | $12,500 | $10,700 | $5,600 | |
| 9. Incremental benefit (7 - 8) | $4,725 | $11,475 | $5,675 | |
| 10. Average life expectancy | 24 | 24 | 24 | |
| 11. Expected lifetime beyond expected retirement age (10 - 4) | 18 | 13 | 15 | |
| **12. Total higher benefits (1 x 9 x 11)** | **$610M** | **$615M** | **$480M** | **$1,705M** |
| **C. Cost of medical benefit payable to age 62** | | | | |
| 13. Years of benefit  (age 62 - 3) | 3 | 8 | 6 | |
| **14. Total benefit ($1,200 x 1 x 12)** | **$25M** | **$40M** | **$40M** | **$105M** |
| **D. Total value of benefit enhancement under Act 80 (6 + 12 + 14)** | **$1,375M** | **$1,660M** | **$1,100M** | **$4,135M** |

[1] Basic demographic data for all Act 80 ERS eligible employees as provided in the noted Exhibits provided to FOMB by AFAAF on 9/25/2020.  Substituting average participant statistics quoted by Integrum will produce approximately the same costs as the Integrum report, or approximately $5,300M

10

November 2020 Public Meeting - Discussion on Laws 80-81-82

# Act 81-2020 Incremental Cost Analysis

# Illustrative Act 81 cost estimate using average participant statistics[1]

*Demonstrates how employee listings provided by AAFAF generate costs cited by FOMB*

| Components of cost | Exhibits D-G:  All Act 81 employees |
|---|---|
| **A. Cost of higher Act 81 benefits at same average retirement age as assumed in fiscal plan** | |
| 1. Number of employees | 8,640 |
| 2. Average age | 50 |
| 3. Average number of years participant receives benefits by FY 2049[2] | 20 |
| 4. Average benefit being received under Act 81 | |
|   a. Average salary | $44,500 |
|   b. 50% of average salary[3] (50% x 4a) | $22,250 |
| 5. Average current benefit | $9,500 |
| 6. Incremental benefit from Act 81 (5 - 4b) | $12,750 |
| **7. Estimated value of enhancement  (1 x 3 x 6)** | **$2,200M** |
| **B. Cost of medical benefit payable for life** | |
| 8.  Medical annual benefit | $1,200 |
| 9. Average number of years participant receives benefits by FY 2049 | 20 |
| **10. Value of medical benefit (1 x 8 x 9)** | **$200M** |
| **C. Total value of benefit enhancement under Act 81 (7 + 10)** | **$2,400M** |

[1] Basic demographic data for all Act 81 ERS eligible employees as provided in the noted Exhibits provided to FOMB by AFAAF on 9/25/2020.  Substituting average participant statistics quoted by Integrum will produce approximately the same costs as the Integrum report, or approximately $1,400M
[2] Expected lifetime, limited by fiscal plan measurement period (primarily impacting those who retire in future years)
[3] Actual % depends on law governing individual retirement and age at retirement.  Act 81 benefit ranges from 45% to 55% of salary.

November 2020 Public Meeting - Discussion on Laws 20-81-82

# Act 82-2020 Incremental Cost Analysis

# Government has communicated inconsistent interpretations of Act 82-2020

| Government's communication | Description of Government claim |
|---|---|
| 8/19/2020: 204 certification | • Claims no cost of law<br>• Cites fact no cash payment made for sick leave upon termination<br>• Ignores / provides no commentary on pension impact |

**Correspondence with FOMB**

| | |
|---|---|
| 8/21/2020 | • Confirms no actuarial analysis performed |
| 9/11/2020 | • Claims 20 sick days equal 11 months credit |
| 9/25/2020 | • Details calculation of time worked credited as service purchase<br>• Explicitly uses example how service purchase could be used to hit 30 year mark which provides enhanced benefit formula |
| 10/28/2020 | • Indicates no benefit amounts will be increased, only payments accelerated through using increased service to reach retirement eligibility sooner<br>• Law does not make this distinction |

**Oversight Board position on Act 82**

• Act 82 credit of sick leave as time worked, as credited through service purchase, suggests both benefit improvement and acceleration of benefits

• Overall cost of law as much as $1.6 billion if teachers get full credit for service using maximum service purchase outlined by the Government

• Any improvement in benefit levels or timing is an increase in pension payments relative to the fiscal plan, even if future clarification lowers cost estimate

• The Government has not proposed any mechanism by which costs of Act 82 will be paid

14



# Public Board Meeting:
# Counterproposal Summary Materials

November 20, 2020



# October 30, 2020 Revised Proposed Plan of Adjustment

**Subsequent to reaching an agreement with holders of over $10.6 billion of General Obligation bonds in February, COVID has caused the FOMB to revisit the Fiscal Plan, upon which the Plan of Adjustment was premised**

- Based upon that review, the Board engaged in mediation in August to revise the previously-agreed terms to reflect the increased uncertainty with respect to the Puerto Rican economy
- Mediation ended on September 30 with public disclosure of the August 18 FOMB Proposal and the August 24 Creditor Counter

**In light of the FOMB's judgment that the long-term viability of Puerto Rico would require a reduction in previously-agreed consideration and further de-risking, the FOMB's October 30, 2020 Proposal included a contingent instrument in order to compensate creditors in the case of potential outperformance**

| ($ in millions) | February 9, 2020 Plan of Adjustment[1] (Pre-COVID) | October 30, 2020 Public Meeting Proposal (Post-COVID) |
|---|---|---|
| **Cash** | ▪ $5,861 | ▪ $5,984 |
| **Debt** | ▪ $9,353<br>  — $1,472 maximum annual debt service[2]<br>  — 50% General Obligation / 50% secured[3] | ▪ $4,980<br>  — $1,050 maximum annual debt service[2]<br>  — 100% General Obligation |
| **CVI** | ▪ None | ▪ Based on outperformance of Sales and Use Tax collections<br>▪ $1,000 maximum<br>  — $50 annual cap; unused amounts do not carry forward into future years |
| **Blended Aggregate Recovery** | ▪ 41.3% | ▪ 34.1% including max. value of CVI |
| **Pension** | ▪ Benefits less than $1,200 per month not affected[4]<br>▪ Benefits greater than $1,200 per month reduced by 8.5% | ▪ Benefits less than $1,500 per month not affected<br>▪ Benefits greater than $1,500 per month reduced by 8.5% |

(1)   February 9, 2020 Plan of Adjustment shown assuming effective date of July 1, 2021.
(2)   Inclusive of COFINA debt service.
(3)   COFINA Jr.
(4)   No pension will fall under $1,200.



2

## Proposed Plan of Adjustment: Board-Proposed CVI

**The Board's proposed Contingent Value Instrument is subject to both annual and lifetime payment caps and will only pay out in the event that the SUT outperforms the May 2020 Certified Fiscal Plan.**

**Assumptions**

- Contingent instrument limited to sharing of outperformance of the 5.5% SUT relative to the May 2020 Fiscal Plan projections

- Sharing of outperformance subject to both annual and lifetime caps

- Creditors to receive 40% of outperformance above Fiscal Plan projections of projected 5.5% pledged SUT collections

  - Remaining 60% of outperformance to accrue to the Commonwealth

  - Attachment point (i.e., strike price) at 100% of May 2020 Fiscal Plan projections (i.e., status quo)

| | Description |
|---|---|
| **Source of Repayment** | ▪ 5.5% Pledged Sales and Use Taxes (SUT) |
| **Structure of Instrument** | ▪ $1,000mm face GO Issuance<br>▪ Face value reduced by $50mm annually, regardless of actual contingent cash payment |
| **Sharing of Outperformance** | ▪ 60% Commonwealth / 40% CVI |
| **Annual Cap** | ▪ $50mm<br>▪ Unused amounts do not carry forward into future years |
| **Lifetime Cap** | ▪ $1,000mm |
| **Term** | ▪ 20 years |

