**<u>Exhibit 2</u>**

**Proof of Claim**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación). | | |
|---|---|---|
| ☒ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

RECEIVED

MAY 25 2018

PRIME CLERK LLC

## Modified Official Form 410 / Formulario Oficial 410 Modificado
# Proof of Claim / Evidencia de reclamación                           04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. No adjunte documentos originales, ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

**1. Who is the current creditor?**

**¿Quién es el acreedor actual?**

Assured Guaranty Corp.

Name of the current creditor (the person or entity to be paid for this claim)
Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)

Other names the creditor used with the debtor      See attached annex to proof of claim.
Otros nombres que el acreedor usó con el deudor  _____

| | | | |
|---|---|---|---|
| 2. | **Has this claim been acquired from someone else?**<br><br>¿Esta reclamación se ha adquirido de otra persona? | ☒ No / No<br>☐ Yes. From whom?<br>Sí. ¿De quién? _____ | |

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   ¿A dónde deberían enviarse las notificaciones al acreedor?

   Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g

| **Where should notices to the creditor be sent?**<br>¿A dónde deberían enviarse las notificaciones al acreedor? | **Where should payments to the creditor be sent?** (if different)<br>¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente) |
|---|---|
| <u>See</u> Annex to Proof of Claim<br>Assured Guaranty Corp.<br>Attn: Terence Workman<br>Name / Nombre | <u>See</u> Annex to Proof of Claim<br>Assured Guaranty Corp.<br>Attn: Terence Workman<br>Name / Nombre |
| 1633 Broadway<br>Number / Número      Street / Calle | 1633 Broadway<br>Number / Número      Street / Calle |
| New York     NY     10019<br>City / Ciudad   State / Estado   ZIP Code / Código postal | New York     NY     10019<br>City / Ciudad   State / Estado   ZIP Code / Código postal |
| (212) 408-6053<br>Contact phone / Teléfono de contacto | (212) 408-6053<br>Contact phone / Teléfono de contacto |
| tworkman@agltd.com<br>Contact email / Correo electrónico de contacto | tworkman@agltd.com<br>Contact email / Correo electrónico de contacto |

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?**<br><br>¿Esta reclamación es una enmienda de otra presentada anteriormente? | ☐ No / No<br>☐ Yes.  Claim number on court claims registry (if known)<br>Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>Filed on / Presentada el _____ (MM/DD/YYYY) / (DD/MM/AAAA) |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?**<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ☒ No / No<br>☐ Yes. Who made the earlier filing?<br>Sí. ¿Quién hizo la reclamación anterior?_____ |

---

**Part 2 / Parte 2:**   **Give Information About the Claim as of the Petition Date**

**Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.**

| | | |
|---|---|---|
| 6. | **Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?**<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ☐ No / No<br>☒ Yes. Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí. Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).<br><br>Puerto Rico Energy Commission and Transportation and Public Works (DTOP) |
| 7. | **Do you supply goods and / or services to the government?**<br><br>¿Proporciona bienes y / o servicios al gobierno? | ☒ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |

| 8. How much is the claim?<br><br>¿Cuál es el importe de la reclamación? | $ See Annex | , Does this amount include interest or other charges?<br>¿Este importe incluye intereses u otros cargos?<br><br>☐ No / No<br><br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |
|---|---|---|

| 9. What is the basis of the claim?<br><br>¿Cuál es el fundamento de la reclamación? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>See attached Annex to Proof of Claim. |
|---|---|

| 10. Is all or part of the claim secured?<br><br>¿La reclamación está garantizada de manera total o parcial? | ☐ No / No<br>☒ Yes. The claim is secured by a lien on property.<br>Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>**Nature of property / Naturaleza del bien:**<br>☐ Motor vehicle / Vehículos<br><br>☒ Other. Describe:<br>Otro. Describir:   See Annex to Proof of Claim.<br><br>**Basis for perfection / Fundamento de la realización de pasos adicionales:** _____<br><br>See Annex to Proof of Claim.<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.<br><br>**Value of property / Valor del bien:**   $ See Annex to Proof of Claim.<br><br>**Amount of the claim that is secured /**<br>**Importe de la reclamación que está garantizado:** $ See Annex to Proof of Claim.<br><br>**Amount of the claim that is unsecured /**<br>**Importe de la reclamación que no está garantizado:** $ See Annex to Proof of Claim.<br>(The sum of the secured and unsecured amounts should match the amount in line 7.)<br>(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>**Amount necessary to cure any default as of the Petition Date /**<br>**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :** $_____<br>See Annex to Proof of Claim.<br><br>**Annual Interest Rate** (on the Petition Date) (See Annex to Proof of Claim)<br>Tasa de interés anual (cuando se presentó el caso) _____ %<br>☐ Fixed / Fija<br>☐ Variable / Variable |
|---|---|

| 11. Is this claim based on a lease?<br><br>¿Esta reclamación está basada en un arrendamiento? | ☒ No / No<br><br>☐ Yes. Amount necessary to cure any default as of the Petition Date.<br>Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso $ _____ |
|---|---|

| 12. **Is this claim subject to a right of setoff?**<br><br>¿La reclamación está sujeta a un derecho de compensación? | ☐ No / No<br>☒ Yes. Identify the property /<br>Sí. Identifique el bien: _____ See Annex _____ |
|---|---|
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.? | ☒ No / No<br>☐ Yes. Indicate the amount of your claim arising from the value of any goods received  $_____<br>by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.<br><br>Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. |

| **Part 3 / Parte 3:** | **Sign Below / Firmar a continuación** |
|---|---|

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

*Check the appropriate box / Marque la casilla correspondiente:*

☐ I am the creditor. / Soy el acreedor.

☒ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el ___05/29/2018___ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma ___Holly Horn_____

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

| Name | **Holly Horn** | | |
|---|---|---|---|
| | First name / Primer nombre | Middle name / Segundo nombre | Last name / Apellido |

| Title / Cargo | **Chief Surveillance Officer – Public Finance** |
|---|---|

| Company / Compañía | **Assured Guaranty Corp./Assured Guaranty Municipal Corp.** |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer.<br>Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador. |

| Address / Dirección | **1633 Broadway** | | |
|---|---|---|---|
| | Number / Número | Street / Calle | |
| | **New York** | **NY** | **10019** |
| | City / Ciudad | State / Estado | ZIP Code / Código postal |

Contact phone / Teléfono de contacto  **212.339-3526**     Email / Correo electrónico  hhorn@agltd.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | |
| COMMONWEALTH OF PUERTO RICO, | No. 17 BK 3283-LTS |
| Debtor. | |

**ANNEX TO PROOF OF CLAIM OF ASSURED GUARANTY CORP.**

This is an Annex to the proof of claim (the "Proof of Claim") filed by Claimant Assured Guaranty Corp. (including as assignee of or successor to CIFG Assurance North America, Inc. or Radian Asset Assurance Inc., as applicable, "AGC" or "Claimant"). Claimant is the holder of certain claims (collectively, and including any portion thereof, the "Claims") against the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), as described on the prefixed Proof of Claim to which this Annex relates and as set forth in further detail herein.

Nothing herein shall constitute a waiver of any of Claimant's rights or defenses against the Debtor, the Financial Oversight and Management Board for Puerto Rico ("FOMB"), or any other party in any litigation arising from or relating to Claimant's Claims.

THIS ANNEX CONSTITUTES A PART OF THE PROOF OF CLAIM AND IS INCORPORATED THEREIN BY REFERENCE. Copies of certain supporting documents relating to the Claims are attached hereto and are incorporated by reference into this Proof of Claim. Because the relevant documents are voluminous, the Claimant has not attached documents that are in the possession of the Debtor or that are otherwise publicly available. Claimant will furnish the Debtor with copies of any additional pertinent documentation upon request or as otherwise required by order of the United States District Court for the District of Puerto Rico (the "Title III Court"), and all pertinent documentation is hereby incorporated into this Proof of Claim by reference. The descriptions provided herein are summaries of the underlying Claims and documentation supporting such Claims, and the failure to reference any specific provision within such documentation shall not constitute a waiver by Claimant as to the contents therein.

## I. BACKGROUND AND BASIS FOR CLAIMS

On or around May 3, 2017 (the "Petition Date"), FOMB, as representative of the Debtor, filed a voluntary petition for relief under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), in the Title III Court. The Debtor's Title III case number is 17 BK 3283-LTS. The Debtor is obligated to Claimant for the Claims described herein, which arise, without limitation, under the transaction documents described herein, under other applicable law, or in equity.

Claimant is a leading provider of financial guaranty insurance, which is a type of insurance whereby an insurer guarantees scheduled payments of interest and principal as and when due on a bond or other obligation.[1]  Claimant issued insurance policies (the "GO Policies") that guarantee payments on general obligation bonds ("GO Bonds", and to the extent insured by Claimant, the "Insured GO Bonds") issued by the Debtor.   Claimant also issued insurance policies (the "PBA Policies") that guarantee payments on bonds (the "PBA Bonds", and to the extent insured by Claimant, the "Insured PBA Bonds") issued by the Puerto Rico Public Buildings Authority ("PBA") and guaranteed by the Debtor.  As "public debt," the GO Bonds and PBA Bonds (as guaranteed by the Commonwealth, and together with the GO Bonds, the "Commonwealth Bonds") are entitled to a first-priority payment status under the constitution of the Commonwealth (the "Commonwealth Constitution")[2] and related statutes and are entitled to payment before all other obligations payable from the Commonwealth's revenues and other resources.  Claimant has Claims against the Debtor related to the GO Bonds and PBA Bonds, as set forth in greater detail below.

Claimant also insures revenue bonds (the "Authority Bonds") issued by the Puerto Rico Highways and Transportation Authority ("PRHTA"), the Puerto Rico Convention Center District Authority ("PRCCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA", and together with PRHTA and PRCCDA, the "Authorities").  The Authority Bonds are secured by enforceable, perfected liens on pledged special revenues (the "Authority Pledged Special Revenues"), which constitute "special revenues" as defined in section 902 of Title 11 (the "Bankruptcy Code") of the United States Code.  See 11 U.S.C. § 902.

Beginning in or around November 2015, until the time of the filing of this Proof of Claim, the Debtor has unlawfully and unconstitutionally impaired Claimant's contractual rights with respect to, and invaded Claimant's property interests in, the Authority Pledged Special Revenues.

This long-standing pattern of unlawful and unconstitutional conduct began no later than November 2015, when then-Governor García Padilla issued Administrative Bulletin No. EO-2015-46 (the "Clawback Order"), which unconstitutionally modified the priorities of the

---

[1] As described in greater detail below, under its insurance agreements and/or insurance policies, Claimant is deemed to be the sole owner of the bonds its insures for purposes of, or otherwise has control rights over, consents and other bondholder actions, including exercising rights and remedies.  Claimant is also generally an express third party beneficiary of the resolutions, indentures, trust agreements, or other transaction documents under which the bonds are issued.  As such, and as Section 301(c)(3)(B) of PROMESA expressly recognizes, financial guaranty insurers such as Claimant are authorized to act on behalf of the holders of the bonds they insure, including in litigation, in these Title III cases, and with respect to this Proof of Claim, and Claimant's right to act on behalf of insured bondholders is not dependent upon a default or subrogation.  In addition, however, Claimant has been subrogated to the rights of bondholders upon paying the claims of such bondholders following a default, as set forth below. Payment by Claimant neither satisfies nor discharges an issuer's obligation to pay and, to the extent Claimant makes payments to bondholders, Claimant steps into the shoes of such bondholders and effectively becomes the owner of their bonds.

[2] See P.R. Const. art. VI, § 8 (the "Constitutional Debt Priority Provision").

Commonwealth Bonds and the Authority Bonds and confiscated the Authority Pledged Special Revenues.

The Debtor's unlawful and unconstitutional conduct continued in 2016, 2017, and 2018, when the Debtor enacted a series of moratorium laws (collectively, and including any similar or superseding moratorium law, the "Moratorium Laws")[3] and issued related moratorium orders (collectively, and including any similar or superseding executive orders, the "Moratorium Orders")[4] that purported to authorize the Governor of the Commonwealth (the "Governor") to override the priority of the Commonwealth Bonds and the Authorities' special revenue pledges, and to confiscate the Authority Pledged Special Revenues for the Commonwealth's general purposes.

Following the appointment of FOMB in August 2016, the Debtor continued its illegal and unconstitutional modifications of debt priorities and diversions of Authority Pledged Special Revenues, including through the enactment of a "Fiscal Plan Compliance Law" (Act No. 26-2017, the "Compliance Law").

The Debtor's unlawful modifications of debt priorities and diversions of secured bondholder collateral (including pursuant to the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) give rise to Claims against the Debtor, including (i) under Article I, section 10, clause 1 (the "U.S. Contracts Clause")[5] of the United States Constitution (the "U.S. Constitution") and the "contracts" clause of Article II, Section 7 of the Commonwealth Constitution (the "Commonwealth Contracts Clause",[6] and together with the U.S. Contracts Clause, the "Contracts Clauses"); (ii) the takings clause (the "U.S. Takings Clause")[7] of the Fifth Amendment of the U.S. Constitution and Article II, Section 9 of the Commonwealth Constitution (the "Commonwealth Takings Clause",[8] and together with the U.S. Takings Clause, the "Takings Clauses"); (iii) section 1 of the Fourteenth Amendment to the U.S.

---

[3] The relevant Moratorium Laws include Act No. 21-2016 (the "Puerto Rico Emergency Moratorium and Financial Rehabilitation Act"); Act No. 5-2017 (the "Puerto Rico Financial Emergency and Fiscal Responsibility Act"); and Act No. 46-2017. Each of the Moratorium Laws is preempted by Section 303(1) of PROMESA.

[4] The relevant Moratorium Orders include Administrative Bulletin OE-2016-14; Administrative Bulletin No. OE-2016-18; Administrative Bulletin No. OE-2016-27; Administrative Bulletin No. EO-2016-30; Administrative Bulletin No. EO-2016-31; Administrative Bulletin No. EO-2017-031; and Administrative Bulletin No. EO-2017-76. Each of the Moratorium Orders is preempted by Section 303(3) of PROMESA.

[5] The U.S. Contracts Clause provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]" U.S. Const. art. I, § 10, cl. 1.

[6] The Commonwealth Contracts Clause provides, "No laws impairing the obligation of contracts shall be enacted." P.R. Const. art. II, § 7.

[7] The U.S. Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

[8] The Commonwealth Takings Clause provides that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law." P.R. Const. art. II, § 9.

Constitution (the "U.S. Due Process Clause")[9] and the "due process" clause of Article II, Section 7 of the Commonwealth Constitution (the "Commonwealth Due Process Clause", and together with the U.S. Due Process Clause, the "Due Process Clauses");[10] and (iv) Section 407 of PROMESA.

In addition to the Commonwealth Bonds and Authority Bonds, Claimant also insures revenue bonds issued by the Puerto Rico Electric Power Authority ("PREPA") and the Puerto Rico Aqueduct and Sewer Authority ("PRASA" and together with PREPA, the "Public Utilities"). Bonds issued by the Public Utilities (the "Public Utility Bonds") are secured by contractual and statutory liens on revenues (the "Public Utility Pledged Special Revenues") generated by the ownership, operation, and disposition of the Public Utilities' respective utility systems. Like the Authority Pledged Special Revenues, the Public Utility Pledged Special Revenues constitute "special revenues" as defined in section 902 of the Bankruptcy Code.

As a result, Claimant has Claims against the Debtor related to the following types of Puerto Rico government bonds (collectively, the "Bonds", and to the extent insured by Claimant, the "Insured Bonds") that Claimant insures:

### A.    Commonwealth Bonds

### 1.    GO Bonds

Pursuant to the GO Policies, including the GO Policies listed on Exhibit A hereto, Claimant insures no less than $393,595,000 of Insured GO Bonds issued by the Commonwealth under bond resolutions (the "GO Resolutions") and outstanding as of the Petition Date. Because of defaults by Debtor (including defaults resulting from the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) with respect to principal and interest payments due on the GO Bonds on July 1, 2016; January 1, 2017; July 1, 2017; and January 1, 2018, Claimant has paid no less than $145,826,941.12 in aggregate primary and secondary market claims by GO Bondholders. Claimant is now fully subrogated to the rights of the GO Bondholders, and has Claims against the Debtor, for the claims it paid and will pay in the future. Payment by Claimant of claims under the GO Policies does not discharge the Debtor of its liability and obligations with respect to the Insured GO Bonds. Rather, upon payment, Claimant effectively became the owner of the Insured GO Bonds. In addition, Claimant directly owns no less than $70,000 in outstanding principal amount of GO Bonds outstanding as of March 2018.

Under its insurance agreements with respect to the Insured GO Bonds (including any provisions concerning insurance contained in a GO Resolution, the "GO Insurance Agreements") and/or GO Policies, Claimant is deemed to be the sole Holder of the Insured GO Bonds for the purpose of giving any consent or direction or taking any other action that the Holders of the Insured GO Bonds are entitled to take pursuant to the applicable GO Resolution.

---

[9] The U.S. Due Process Clause provides, "No State . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

[10] The Commonwealth Due Process Clause provides, "No person shall be deprived of his liberty or property without due process of law." P.R. Const. art. II, § 7.

On or around June 30, 2016; December 30, 2016; June 29, 2017; and December 29, 2017, the paying agent (the "GO Paying Agent") for the GO Bonds delivered notices of claims and notices of deficiency (the "GO Notices"), pursuant to which the GO Paying Agent made claims under the GO Policies for principal and interest then due on the Insured GO Bonds. GO Notices were delivered to Claimant for scheduled payments on the Insured GO Bonds due on or around July 1, 2016; January 1, 2017; July 1, 2017; and January 1, 2018.[11]  Specifically, Claimant has made the following payments under its GO Policies in response to the GO Notices, as set forth in greater detail in the schedule attached hereto as Exhibit B:

i.     On or around June 30, 2016, the GO Paying Agent delivered notices of claims under GO Policies for Insured GO Bonds due and payable on or around July 1, 2016.  Claimant paid approximately $73,414,580.05 on account of such Insured GO Bonds.

ii.    On or about December 30, 2016, the GO Paying Agent delivered notices of claims under GO Policies for Insured GO Bonds due and payable on or around January 1, 2017. Claimant paid approximately $1,621,555.75 on account of such Insured GO Bonds.

iii.   On or about June 29, 2017, the GO Paying Agent delivered notices of claims under GO Policies for Insured GO Bonds due and payable on or around July 1, 2017.  Claimant paid approximately $26,801,495.80 on account of such Insured GO Bonds.

iv.    On or about December 29, 2017, the GO Paying Agent delivered notices of claims under GO Policies for Insured GO Bonds due and payable on or around January 1, 2018. Claimant paid approximately $1,502,822.00 on account of such Insured GO Bonds.

In addition, Claimant insured Insured GO Bonds through certain secondary market insurance policies.  As of the date hereof, Claimant has paid no less than $42,486,487.52 on account of the Insured GO Bonds subject to such secondary market insurance policies, as set forth in greater detail in Exhibit B, and is subrogated to the rights of the GO Bondholders, and has Claims against the Debtor, for the claims it paid under these secondary market policies or will pay under such secondary market policies in the future.

All failures by the Debtor to comply with its obligations under the GO Resolutions, the GO Insurance Agreements, the GO Policies, or related agreements, including, without limitation, the Debtor's failure to comply with the notification, reporting, and information sharing requirements set forth in the applicable GO Insurance Agreement, give rise to additional Claims of Claimant against the Debtor.  Furthermore, Claimant has Claims on account of the Debtor's agreement in the GO Insurance Agreements to pay or reimburse Claimant any and all charges, fees, costs and expenses that Claimant may reasonably pay or incur in connection with (i) the administration, enforcement, defense or preservation of any rights under a GO Resolution; (ii) the pursuit of any remedies afforded by law or equity; (iii) any amendment, waiver, or other action with respect to, or related to, a GO Resolution or any other related document whether or not executed or completed; or (iv) any litigation or other dispute in connection with a GO Resolution or any other related document or the transactions contemplated thereby.

## 2.     PBA Bonds

---

[11] The GO Notices include those attached hereto as Exhibit M.

PBA is an instrumentality of the Commonwealth created by Act No. 56-1958 (the "PBA Enabling Act") for the primary purpose of designing and constructing office buildings, quarters, courts, warehouses, shops, schools, health facilities, social welfare facilities, and related facilities for lease to the Commonwealth and its departments, agencies, instrumentalities, and municipalities.  Pursuant to the PBA Enabling Act, PBA has issued the PBA Bonds under general bond resolutions (including any related or supplemental resolution, the "PBA Resolutions") adopted in 1970 and 1995.

Pursuant to the PBA Enabling Act and the PBA Resolutions, PBA Bonds are secured by a pledge of the rentals (the "PBA Pledged Special Revenues")[12] of government facilities financed or refinanced by PBA Bonds and leased by PBA to departments, agencies, instrumentalities, and municipalities of the Commonwealth.  Each PBA Resolution constitutes a contract between PBA and the holders (including Claimant, the "PBA Bondholders") of the PBA Bonds.  Each PBA Resolution also constitutes a "security agreement," including as defined in section 101(50) of the Bankruptcy Code.  11 U.S.C. § 101(50).  The liens on the PBA Pledged Special Revenues granted to the PBA Bondholders under the PBA Resolutions constitute "security interests," including as defined in section 101(51) of the Bankruptcy Code.  11 U.S.C. § 101(51).

The PBA Bondholders' liens on the PBA Pledged Special Revenues are perfected, including by the filing of UCC financing statements.[13]

The PBA Bonds are guaranteed by the Commonwealth, and the Debtor's obligations under this guarantee constitute "public debt" entitled to the same priority of payment as the GO Bonds under the Commonwealth Constitution.  In the PBA Enabling Act, the Commonwealth covenanted that it would "not limit or alter the rights or powers . . . granted [PBA] until the [PBA Bonds] . . . , together with interest thereon, have been fully liquidated and retired."  22 L.P.R.A. § 910 (the "PBA Covenant").

Pursuant to certain secondary market insurance policies (the "PBA Policies"), including the PBA Policies listed on Exhibit C hereto, Claimant insures no less than $118,600,000 of PBA Bonds outstanding as of the Petition Date.  As a result of defaults (including defaults resulting from the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) with respect to debt service payments due on PBA Bonds on July 1, 2016; January 1, 2017; July 1, 2017; and January 1, 2018, and as a result of the Debtor's failure to honor its guarantee of the PBA Bonds and failure to comply with the PBA Covenant, Claimant has paid no less than $37,750,396.19 in aggregate secondary market claims by PBA Bondholders, including as set forth in greater detail in the schedule attached as Exhibit D hereto, and is now fully subrogated to the rights of PBA Bondholders, and has Claims against the Debtor, for the claims it paid and will pay in the future with respect to the PBA Bonds.

---

[12] The PBA Pledged Special Revenues constitute "special revenues" as defined in section 902 of the Bankruptcy Code.

[13] Copies of such UCC financing statements are publicly available from the Puerto Rico Department of State, and are incorporated into this Proof of Claim by reference.

Moreover, pursuant to a Moratorium Order (Administrative Bulletin No. EO-2016-30) issued on or around June 30, 2016, and continued in force by subsequent Moratorium Orders, the Debtor diverted the PBA Pledged Special Revenues from the payment of the PBA Bonds. Claimant has Claims against the Debtor for the full value of the PBA Pledged Special Revenues diverted by Debtor from the payment of the PBA Bonds, including (i) on account of Claimant's lien on the PBA Pledged Special Revenues, (ii) pursuant to Section 407 of PROMESA, (iii) under the Contracts Clauses, (iv) under the Due Process Clauses, and (v) for just compensation under the Takings Clauses. Claimant also has Claims against the Debtor (i) for the full value of the PBA Pledged Special Revenues diverted by Debtor from the payment of the PBA Bonds and (ii) for the full value of all claims paid by Claimant on account of its insurance of the Insured PBA Bonds, as damages for the Debtor's breaches of the PBA Covenant.

### 3.      Statutory Lien on Special Property Tax Revenues

Claimant's claims on account of the Commonwealth Bonds are secured, among other things, by a statutory lien on a "special tax" of 1.03% (the "Special Property Tax Revenues") that was imposed by the Commonwealth's Legislative Assembly on the appraised value of all personal and real property in Puerto Rico pursuant to Act 83 of 1991 ("Act 83"). The Municipal Revenues Collection Center is required to collect the Special Property Tax Revenues and deposit them into the "Commonwealth Debt Redemption Fund," which is "a trust" held by the Government Development Bank (the "GDB") and that was specifically established to hold the Special Property Tax Revenues. 21 L.P.R.A. §§ 5002, 5004.

Act 83 expressly provides that the Commonwealth's obligation to apply the Special Property Tax Revenues to payment of the Commonwealth Bonds "*will be considered to be a prior lien bond* and the same will constitute sufficient authorization for the [GDB] to carry out the corresponding [distributions]." Id. § 5005 (emphasis added). Further, Act 83 requires that Special Property Tax Revenues "shall remain" in the Commonwealth Debt Redemption Fund and "**shall be applied . . . *solely*** for the payment of the principal and interest on the existing and future general obligations of the Commonwealth of Puerto Rico evidenced by bonds or notes [i.e. the Commonwealth Bonds], or to the early redemption of said obligation, including the payment of any premium that is required for said early redemption." Id. at § 5004(a) (emphasis added).

Beginning no later than June 30, 2016, the Debtor has failed to comply with its obligations to apply the Special Property Tax Revenues to the payment of the Commonwealth Bonds and has instead diverted the Special Property Tax Revenues to other purposes. Claimant has Claims against the Debtor for the full value of the Special Property Tax Revenues diverted by Debtor from the payment of the Commonwealth Bonds, including (i) on account of Claimant's lien on the Special Property Tax Revenues; (ii) pursuant to Section 407 of PROMESA; (iii) under the Contracts Clauses; (iv) under the Due Process Clauses; and (v) for just compensation under the Takings Clauses. Claimant also has Claims against the Debtor for the full value of the Special Property Tax Revenues diverted by the Debtor from the payment of the PBA Bonds as damages for the Debtor's breaches of the PBA Covenant.

### B.      Authority Bonds

In addition to Commonwealth Bonds, Claimant insures Authority Bonds issued by the Authorities. The Authority Bonds are secured by statutory and perfected contractual liens on the Authority Pledged Special Revenues. Beginning in or around November 2015, pursuant to the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law, the

Debtor has failed to apply the Authority Pledged Special Revenues to payment of the Authority Bonds as required by contract and statute and instead has used the Authority Pledged Special Revenues for other purposes. Claimant has Claims against the Debtor for (i) the full value of all Authority Pledged Special Revenues taken or otherwise used by the Debtor in contravention of Claimant's liens and applicable contracts and statutes, or otherwise not applied to the payment of the Authority Bonds for any reason, and (ii) for the full value of all claims paid by Claimant on account of Claimant's insurance of Authority Bonds, including, without limitation, (a) on account of Claimant's liens on the Authority Pledged Special Revenues, (b) pursuant to Section 407 of PROMESA, (c) under the Contracts Clauses, (d) under the Due Process Clauses, (e) for just compensation under the Takings Clauses, and (f) as damages for Debtor's breaches of its non-impairment covenants contained in the statutes and/or contracts governing the Authority Bonds.

Specifically, Claimant insures the following categories of Authority Bonds:

## 1.   PRHTA Bonds[14]

PRHTA is a public corporation created by Act No. 74-1965 (the "PRHTA Enabling Act") to assume responsibility for the construction of highways and other transportation systems in Puerto Rico.  Pursuant to the PRHTA Enabling Act, PRHTA has issued certain bonds (the "PRHTA Bonds", and to the extent insured by Claimant, the "Insured PRHTA Bonds") under general bond resolutions (the "PRHTA Resolutions") adopted in 1968 and 1998.

Under the PRHTA Resolutions, the PRHTA Bonds are secured by a gross lien[15] on special revenues consisting, among other things, of (i) revenues derived from PRHTA's toll facilities (the "Pledged Toll Revenues"); (ii) special excise taxes consisting of taxes on gasoline, diesel, crude oil, and other special excise taxes collected by the Commonwealth (the "PRHTA Pledged Tax Revenues"); and (iii) special excise taxes consisting of motor vehicle license fees collected by the Commonwealth (the "Vehicle Fees"; together with the PRHTA Pledged Tax Revenues, the "PRHTA Pledged Special Excise Taxes"; and together with the Pledged Toll Revenues and the PRHTA Pledged Tax Revenues, the "PRHTA Pledged Special Revenues"). Each PRHTA Resolution constitutes a contract between PRHTA and the holders (including Claimant, the "PRHTA Bondholders") of the PRHTA Bonds.  Each PRHTA Resolution also constitutes a "security agreement," including as defined in section 101(50) of the Bankruptcy Code.  The liens on the PRHTA Pledged Special Revenues granted to the PRHTA Bondholders under the PRHTA Resolutions constitute "security interests," including as defined in section 101(51) of the Bankruptcy Code.  11 U.S.C. § 101(51).

The Commonwealth's Secretary of Treasury acts as a collection agent on behalf of the PRHTA Bondholders with respect to the PRHTA Pledged Special Excise Taxes.  Upon collection, the Secretary of Treasury is required by statute to hold the PRHTA Pledged Special

---

[14] Claimant incorporates herein by reference its proof of claim filed in PRHTA's Title III case (Case No. 17-bk-03567).

[15] Because PRHTA Bonds are secured by a "gross lien" on all of the PRHTA Pledged Special Revenues, operating expenses of PRHTA may only be paid *after* PRHTA satisfies its debt service and reserve fund requirements with respect to PRHTA Bonds.

Excise Taxes in a segregated account for the benefit of PRHTA and its bondholders and to transfer the PRHTA Pledged Special Excise Taxes to the fiscal agent for the PRHTA Bonds (the "PRHTA Fiscal Agent") each month for the benefit of PRHTA Bondholders. From the time of their collection, the PRHTA Pledged Special Excise Taxes constitute trust funds that are property of the PRHTA Bondholders and not of the Commonwealth. See, e.g., 13 L.P.R.A. § 31751(a)(1); 9 L.P.R.A. §§ 2013(a)(2), 2021, 5681 (collectively, and together with any related statutes, the "PRHTA Excise Tax Statutes"). Pursuant to the PRHTA Excise Tax Statutes, the PRHTA Pledged Special Excise Taxes may not be used for any purpose other than payment of the PRHTA Bonds, and the PRHTA Excise Tax Statutes give rise to statutory liens in favor of Claimant and other PRHTA Bondholders on the PRHTA Pledged Special Excise Taxes. See 11 U.S.C. § 101(53). The Commonwealth has explicitly acknowledged in legislation that the PRHTA Pledged Special Excise Taxes are imposed to finance highway, traffic, and transportation facilities and systems.[16] At any time that the Commonwealth or PRHTA is in possession of PRHTA Pledged Special Revenues, the Commonwealth or PRHTA holds possession of such PRHTA Pledged Special Revenues for the PRHTA Bondholders' benefit, subject only to a valid "clawback."[17]

The PRHTA Bondholders' liens on the PRHTA Pledged Special Revenues are perfected, including by the filing of UCC financing statements.[18]

The Commonwealth covenanted with the PRHTA Bondholders in the PRHTA Enabling Act that it would "not limit or restrict the rights or powers . . . vested in [PRHTA by the PRHTA Enabling Act] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged." 9 L.P.R.A. § 2019 (the "PRHTA Covenant").

Claimant insures no less than $646,495,000 of Insured PRHTA Bonds outstanding as of the Petition Date, including as set forth in greater detail in the schedule attached hereto as Exhibit E. Under its insurance agreements and/or insurance policies with respect to the Insured PRHTA Bonds, Claimant is deemed to be the sole owner of the Insured PRHTA Bonds for purposes of, or otherwise has control rights over, consents and other bondholder actions, including exercising rights and remedies of PRHTA Bondholders. Claimant is also recognized as a third-party beneficiary under the PRHTA Resolutions. In addition, Claimant directly owns

---

[16] The Pledged Toll Revenues likewise constitute trust funds collected and held by PRHTA on behalf of PRHTA Bondholders and are property of the PRHTA Bondholders and not of the Commonwealth. See 9 L.P.R.A. § 2013(a)(2).

[17] The Excise Tax Statutes grant Authority Bondholders first-priority liens on the Pledged Special Excise Taxes, subject only to the conditions that, in a fiscal year in which the Constitutional Debt Priority Provision is in effect, the Pledged Special Excise Taxes may be "clawed back" (i) to be used *solely* to pay the public debt, but (ii) *only if the public debt remains unpaid after a first application of all other available resources to the payment of public debt*. These preconditions to a "clawback" of the Pledged Special Excise Taxes have never been satisfied, because the Commonwealth has at all relevant times had sufficient available resources to pay the public debt in accordance with the Constitutional Debt Priority Provision.

[18] Copies of such UCC financing statements are publicly available from the Puerto Rico Department of State, and are incorporated into this Proof of Claim by reference.

no less than $1,795,000 in outstanding principal amount of PRHTA Bonds outstanding as of March 2018.

But for the Debtor's diversion (including pursuant to the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) of the PRHTA Pledged Special Revenues securing the PRHTA Bonds, PRHTA would be solvent and could pay its debts in full. Instead, the Debtor's diversion (including pursuant to the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) of the PRHTA Pledged Special Revenues has caused defaults with respect to debt service payments due on Insured PRHTA Bonds on July 3, 2017 and January 1, 2018. Claimant has paid no less than $34,525,918.50 in aggregate primary and secondary market claims by PRHTA Bondholders, including as set forth in greater detail in the schedule attached hereto as Exhibit F. Claimant is fully subrogated to the rights of PRHTA Bondholders, and has Claims against the Debtor, for the claims it paid or will pay in the future with respect to the Insured PRHTA Bonds. In particular, Claimant has Claims against the Debtor for the full value of the PRHTA Pledged Special Revenues diverted by Debtor from the payment of the PRHTA Bonds, including (i) on account of Claimant's statutory and contractual liens on the PRHTA Pledged Special Revenues, (ii) pursuant to Section 407 of PROMESA, (iii) under the Contracts Clauses, (iv) under the Due Process Clauses, and (v) for just compensation under the Takings Clauses. Claimant also has Claims against the Debtor (i) for the full value of the PRHTA Pledged Special Revenues diverted by Debtor from the payment of the PRHTA Bonds and (ii) for the full value of all claims paid by Claimant on account of its insurance of the Insured PRHTA Bonds, as damages for the Debtor's breaches of the PRHTA Covenant.

## 2. **PRCCDA Bonds**

PRCCDA is a public corporation created by Act No. 351-2000 (September 2, 2000) (the "PRCCDA Enabling Act") for the purpose of developing and operating a convention center located in San Juan, Puerto Rico, and related improvements and facilities. See 23 L.P.R.A. §§ 6402, 6404. Pursuant to the PRCCDA Enabling Act, PRCCDA has issued revenue bonds (the "PRCCDA Bonds", and to the extent insured by Claimant, the "Insured PRCCDA Bonds") under a Trust Agreement dated as of March 24, 2006 (the "PRCCDA Trust Agreement").

Pursuant to the PRCCDA Enabling Act, Act 272-2003 (the "Hotel Tax Act"), and the PRCCDA Trust Agreement, the PRCCDA Bonds are secured by a lien on certain special excise taxes consisting of hotel occupancy taxes (the "PRCCDA Pledged Tax Revenues") imposed by the Commonwealth and collected by the Puerto Rico Tourism Company pursuant to the Hotel Tax Act. The PRCCDA Trust Agreement constitutes a contract between PRCCDA and the holders (including Claimant, the "PRCCDA Bondholders") of the PRCCDA Bonds. The PRCCDA Trust Agreement constitutes a "security agreement," including as defined in section 101(50) of the Bankruptcy Code. The lien on the PRCCDA Pledged Tax Revenues granted to the PRCCDA Bondholders under the PRCCDA Trust Agreement constitutes a "security interest," including as defined in section 101(51) of the Bankruptcy Code.

Whereas, in the case of the other Authority Bonds, the Commonwealth's Secretary of Treasury acts as the collection agent on behalf of the bondholders, in the case of the PRCCDA Bonds, it is the Puerto Rico Tourism Company that acts as the collection agent on behalf of the PRCCDA Bondholders with respect to the PRCCDA Pledged Tax Revenues. Upon collection, the Puerto Rico Tourism Company is required by statute to transfer the PRCCDA Pledged Tax

Revenues to a special account maintained by the GDB in the name of PRCCDA, but for the benefit of the PRCCDA Bondholders, and the PRCCDA Pledged Tax Revenues constitute trust funds that are property of the PRCCDA Bondholders and not of the Commonwealth. See 13 L.P.R.A. § 2271v. Pursuant to 13 L.P.R.A. § 2271v and related statutes (the "PRCCDA Excise Tax Statutes"), the PRCCDA Pledged Tax Revenues may not be used for any purpose other than payment of the PRCCDA Bonds, and the PRCCDA Excise Tax Statutes give rise to a statutory lien in favor of the PRCCDA Bondholders on the PRCCDA Pledged Tax Revenues.

At any time that the Commonwealth, the Puerto Rico Tourism Company, the GDB, or PRCCDA is in possession of PRCCDA Pledged Tax Revenues, such entity holds possession of such PRCCDA Pledged Tax Revenues for the PRCCDA Bondholders' benefit, subject only to a valid "clawback," as defined above.

The PRCCDA Bondholders' lien on the PRCCDA Pledged Tax Revenues is perfected, including by statute. See 23 L.P.R.A. § 6441(d).

The Commonwealth covenanted with the PRCCDA Bondholders in the PRCCDA Enabling Act that it would "not limit nor alter the rights [conferred on PRCCDA by the PRCCDA Enabling Act] until [the PRCCDA Bonds] and the interest thereon are paid in full." 23 L.P.R.A. § 6450. Moreover, under the PRCCDA Trust Agreement, PRCCDA, as an agent of the Commonwealth, covenanted with the PRCCDA Bondholders that the Commonwealth (i) will "make sure that the amounts [of the PRCCDA Pledged Tax Revenues] must be deposited in the accounts as provided in the [PRCCDA] Trust Agreement" and (ii) will not limit or impair the rights of PRCCDA to comply with its obligations to repay the PRCCDA Bonds in full. See PRCCDA Trust Agreement § 6.01(n), (o) (collectively, and together with 23 L.P.R.A. § 6450, the "PRCCDA Covenants").

Claimant insures no less than $152,250,000 of Insured PRCCDA Bonds outstanding as of the Petition Date, including as set forth in greater detail in the schedule attached hereto as Exhibit G. Under a First Supplemental Trust Agreement to the PRCCDA Trust Agreement, dated as of March 24, 2006, Claimant is deemed to be a third-party beneficiary and to have standing to enforce any right, remedy, or claim arising thereunder.

But for the Debtor's diversion (including pursuant to the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) of PRCCDA Pledged Tax Revenues securing the PRCCDA Bonds, PRCCDA would be solvent and could pay its debts in full. Instead, the Debtor's diversion (including pursuant to the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) of PRCCDA Pledged Tax Revenues has caused defaults with respect to debt service payments due on PRCCDA Bonds on July 1, 2017, and January 1, 2018. Claimant has paid no less than $3,672,730.20 in aggregate primary market claims by PRCCDA Bondholders, including as set forth in greater detail in the schedule attached hereto as Exhibit H. Claimant is fully subrogated to the rights of PRCCDA Bondholders, and has Claims against the Debtor, for the claims it paid or will pay in the future with respect to the Insured PRCCDA Bonds. In particular, Claimant has Claims against the Debtor for the full value of the PRCCDA Pledged Tax Revenues diverted by Debtor from the payment of the PRCCDA Bonds, including (i) on account of Claimant's statutory and contractual liens on the PRCCDA Pledged Tax Revenues, (ii) pursuant to Section 407 of PROMESA, (iii) under the Contracts Clauses, (iv) under the Due Process Clauses, and (v) for just compensation

-11-

under the Takings Clauses. Claimant also has Claims against the Debtor (i) for the full value of the PRCCDA Pledged Tax Revenues diverted by Debtor from the payment of the PRCCDA Bonds and (ii) for the full value of all claims paid by Claimant on account of its insurance of the Insured PRCCDA Bonds, as damages for the Debtor's breaches of the PRCCDA Covenants.

### 3.    PRIFA Bonds

PRIFA is a public corporation created by Act 44-1988 (the "PRIFA Enabling Act") for the purpose of providing financial and other types of assistance to political subdivisions, public agencies, and instrumentalities of the Commonwealth. Pursuant to the PRIFA Enabling Act, PRIFA has issued certain special excise tax revenue bonds (the "PRIFA Bonds", and to the extent insured by Claimant, the "Insured PRIFA Bonds") under a Trust Agreement (including any supplemental or related trust agreement, the "PRIFA Trust Agreement") dated as of October 1, 1988.

Under the PRIFA Trust Agreement, the PRIFA Bonds are secured by a lien on a portion of a federal special excise tax imposed on rum and other items produced in the Commonwealth and sold in the United States (the "PRIFA Pledged Tax Revenues", and together with the PRHTA Pledged Special Excise Taxes and the PRCCDA Pledged Tax Revenues, the "Pledged Special Excise Taxes"). The PRIFA Trust Agreement constitutes a contract between PRIFA and the holders (including Claimant, the "PRIFA Bondholders") of the PRIFA Bonds. The PRIFA Trust Agreement also constitutes a "security agreement," including as defined in section 101(50) of the Bankruptcy Code. The lien on the PRIFA Pledged Tax Revenues granted to the PRIFA Bondholders under the PRIFA Trust Agreement constitutes a "security interest," including as defined in section 101(51) of the Bankruptcy Code.

The Commonwealth's Secretary of Treasury collects the PRIFA Pledged Tax Revenues from the Federal government and is required by statute to hold the PRIFA Pledged Tax Revenues in a special fund for the benefit of the PRIFA Bondholders. The PRIFA Pledged Tax Revenues constitute trust funds that are property of the PRIFA Bondholders and not of the Commonwealth. 3 L.P.R.A. § 1914. Pursuant to 3 L.P.R.A. § 1914 and related statutes (collectively, the "PRIFA Excise Tax Statutes," and together with the PRHTA Excise Tax Statutes and the PRCCDA Excise Tax Statutes, the "Excise Tax Statutes"), the PRIFA Pledged Tax Revenues may not be used for any purpose other than payment of the PRIFA Bonds, and the PRIFA Excise Tax Statutes give rise to a statutory lien in favor of Claimant and other PRIFA Bondholders on the PRIFA Pledged Tax Revenues.

At any time that the Commonwealth or PRIFA holds PRIFA Pledged Tax Revenues, the Commonwealth or PRIFA holds possession of such PRIFA Pledged Tax Revenues for the PRIFA Bondholders' benefit, subject only to a valid "clawback", as defined above.

The PRIFA Bondholders' lien on the PRIFA Pledged Tax Revenues is perfected, including by statute. See 3 L.P.R.A. § 1907(a).

In the PRIFA Enabling Act, the Commonwealth covenanted with the PRIFA Bondholders that it would "not limit or alter the rights [conferred on PRIFA by the PRIFA Enabling Act] until such bonds and the interest thereon are paid in full." Id. § 1913 (the "PRIFA Covenant").

Claimant insures no less than $18,025,000 of Insured PRIFA Bonds outstanding as of the Petittion Date through secondary market insurance policies, including as set forth in greater detail in the schedule attached hereto as Exhibit I.  But for the Debtor's diversion (including pursuant to the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) of PRIFA Pledged Tax Revenues, PRIFA would be solvent and could pay its debts in full.  Instead, the Debtor's diversion (including pursuant to the Clawback Order, the Moratorium Laws, the Moratorium Orders, and the Compliance Law) of PRIFA Pledged Tax Revenues has caused defaults with respect to debt service payments due on PRIFA Bonds on January 1, 2016; July 1, 2016; January 1, 2017; July 1, 2017; and January 1, 2018.  Claimant has paid no less than $2,253,125 in aggregate secondary market claims by PRIFA Bondholders, including as set forth in greater detail in the schedule attached hereto as Exhibit J.  Claimant is fully subrogated to the rights of PRIFA Bondholders, and has Claims against the Debtor, for the claims it paid or will pay in the future with respect to the Insured PRIFA Bonds.  In particular, Claimant has Claims against the Debtor for the full value of the PRIFA Pledged Tax Revenues diverted by Debtor from the payment of the PRIFA Bonds, including (i) on account of Claimant's statutory and contractual liens on the PRIFA Pledged Tax Revenues, (ii) pursuant to Section 407 of PROMESA, (iii) under the Contracts Clauses, (iv) under the Due Process Clauses, and (v) for just compensation under the Takings Clauses.  Claimant also has Claims against the Debtor (i) for the full value of the PRIFA Pledged Tax Revenues diverted by Debtor from the payment of the PRIFA Bonds and (ii) for the full value of all claims paid by Claimant on account of its insurance of the Insured PRIFA Bonds, as damages for the Debtor's breaches of the PRIFA Covenant.

C.    **Public Utility Bonds**

1.    **PREPA Bonds**[19]

PREPA is a public agency created by Act No. 83 of May 12, 1941 (as amended, the "PREPA Enabling Act").  Pursuant to its powers under the PREPA Enabling Act, PREPA issued revenue bonds (the "PREPA Bonds", and to the extent insured by Claimant, the "Insured PREPA Bonds") under a Trust Agreement dated as of January 1, 1974 (as amended, the "PREPA Trust Agreement").

Pursuant to the PREPA Trust Agreement, holders of PREPA Bonds (including Claimant, "PREPA Bondholders") are secured by and have a lien on all present and future money received by PREPA in connection with the ownership or operation of PREPA's system, including proceeds generated by the sale of electricity, proceeds of use and occupancy insurance, and certain investment income (collectively, "PREPA Pledged Special Revenues").  See PREPA Trust Agreement § 101 (definition of "Revenues"); id. § 701.  The pledge of and lien on the PREPA Pledged Special Revenues and other collateral is perfected, including by the filing of UCC financing statements.[20]  The financing statements provide that the collateral securing the

---

[19] Claimant incorporates herein by reference its proofs of claim filed in PREPA's Title III case (Case No. 17-bk-04780).

[20] Copies of such UCC financing statements are publicly available from the Puerto Rico Department of State, and are incorporated into this Proof of Claim by reference.

PREPA Bonds consists of, among other things, the "Revenues of the System," as well as certain accounts pledged under the PREPA Trust Agreement. Certain of these financing statements were signed by officers of PREPA. In addition, PREPA has repeatedly listed its binding contractual and statutory obligations (collectively, the "PREPA Rate Covenants") to maintain rates at a level sufficient to service the PREPA Bonds as "Security" in official statements filed by PREPA with the Municipal Securities Rulemaking Board, which official statements are incorporated herein by reference. The Debtor's failure to comply with the PREPA Rate Covenants and interference with PREPA's ability to comply with the PREPA Rate Covenants constitutes a taking of property for which Claimant is entitled to just compensation under the Takings Clauses.

Claimant insures no less than $110,180,000 of Insured PREPA Bonds outstanding as of the Petition Date, including as set forth in greater detail in the schedule attached hereto as Exhibit K. In connection with its insurance of the Insured PREPA Bonds, Claimant issued policies, and in exchange for those bond insurance policies, PREPA and the trustee for the PREPA Bonds entered into bond insurance agreements (the "PREPA Insurance Agreements"). Under the PREPA Insurance Agreements, Claimant is "deemed to be the sole owner" of the Insured PREPA Bonds for purposes of granting consents and exercising rights and remedies with respect to such Insured PREPA Bonds. Further, upon payment by Claimant to any holders of the PREPA Bonds, Claimant is fully subrogated to the rights of such bondholders. Finally, the PREPA Insurance Agreements explicitly provide that Claimant is recognized as and has all rights available to it as a third party beneficiary under the PREPA Trust Agreement and authorizing resolution in connection with the Insured PREPA Bonds. In addition, Claimant directly owns no less than $2,920,144 in outstanding principal amount of PREPA Bonds outstanding as of March 2018.

The Debtor covenanted in the PREPA Enabling Act not to alter the rights of the holders (including Claimant, the "PREPA Bondholders") of the PREPA Bonds. Specifically, the PREPA Enabling Act provides:

"The Commonwealth Government does hereby pledge to, and agree with, any person, firm or corporation, or any federal, Commonwealth or state agency, subscribing to or acquiring bonds of the Authority to finance in whole or in part any undertaking or any part thereof, that it will not limit or alter the rights or powers hereby vested in the Authority until all such bonds at any time issued, together with the interest thereon, are fully met and discharged."

22 L.P.R.A. § 215 (the "PREPA Covenant").

Through its control over PREPA, the Debtor has caused PREPA to fail to comply with the PREPA Rate Covenants and to default with respect to debt service payments due on PREPA Bonds on July 3, 2017 and January 2, 2018. Claimant has paid no less than $5,100,287.50 in aggregate primary and secondary market claims by PREPA Bondholders, including as set forth in greater detail in the schedule attached hereto as Exhibit L. Claimant is fully subrogated to the rights of PREPA Bondholders, and has Claims against the Debtor, for the claims it paid or will pay in the future with respect to the Insured PREPA Bonds. Specifically, Claimant has Claims against the Debtor for the full value of PREPA Pledged Special Revenues diverted by the Debtor from the payment of the PREPA Bonds, or that would have been collected by PREPA but for the

Debtor's failure to comply with and interference with the PREPA Rate Covenants, including (i) on account of Claimant's lien on the PREPA Pledged Special Revenues and on the PREPA Rate Covenants; (ii) pursuant to Section 407 of PROMESA; (iii) under the Contracts Clauses; (iv) under the Due Process Clauses; and (v) for just compensation under the Takings Clauses, including for the Debtor's taking of the PREPA Rate Covenants and of Claimant's rights thereunder.  Claimant also has Claims against the Debtor (i) for the full value of the PREPA Pledged Special Revenues diverted by Debtor from the payment of the PREPA Bonds, or that would have been collected by PREPA but for the Debtor's failure to comply with and interference with the PREPA Rate Covenants, and (ii) for the full value of all claims paid by Claimant on account of its insurance of the Insured PREPA Bonds, as damages for the Debtor's breaches of the PREPA Covenant.

## 2.    PRASA Bonds

PRASA is a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth created by Act No. 40, approved May 1, 1945 (as amended, the "PRASA Enabling Act").  PRASA owns and operates the Commonwealth's public water supply and wastewater systems.  Pursuant to the PRASA Enabling Act, PRASA has issued bonds (the "PRASA Bonds", and to the extent insured by Claimant, the "Insured PRASA Bonds") under a trust agreement (as amended and supplemented, the "PRASA Trust Agreement") secured by a gross lien on PRASA's revenues (the "PRASA Pledged Special Revenues").  The PRASA Trust Agreement provides that it "constitutes a continuing, irrevocable pledge of [PRASA Pledged Special Revenues] to secure payment all amounts due with respect to all Senior Indebtedness . . . ."  Id. at 29 (emphasis added).

Under the PRASA Trust Agreement, PRASA covenanted that "Operating Revenues" would be equal to at least 250% of annual debt service of PRASA's senior bonds for the current fiscal year.  See PRASA Trust Agreement, section 7.01(a)(i).  Thus, as with PREPA, PRASA is obligated—and the collateral package incorporates—a covenant (the "PRASA Rate Covenant") to ensure that rates are maintained at a sufficient level to cover debt service.

In the PRASA Enabling Act, the Commonwealth covenanted with the holders (including Claimant, the "PRASA Bondholders") of the PRASA Bonds that it would "not limit or alter the rights or powers . . . vested [by the PRASA Enabling Act] in [PRASA] so as to impair the rights of the [PRASA Bondholders] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged."  22 L.P.R.A. § 157 (the "PRASA Covenant", and together with the PBA Covenant, the PRHTA Covenant, the PRCCDA Covenant, the PRIFA Covenant, and the PREPA Covenant, the "Covenants").

Claimant insures no less than $373,190,000 of Insured PRASA Bonds outstanding as of the Petition Date.  Claimant is deemed to be the sole owner of the Insured PRASA Bonds for the purposes of exercising rights and remedies.  Further, the insurance agreements related to the Insured PRASA Bonds expressly provide that Claimant is a third party beneficiary to the PRASA Trust Agreement and authorizing resolution in connection with the Insured PRASA Bonds.  Claimant has contingent and/or unliquidated Claims against the Debtor for the full value of any and all PRASA Pledged Special Revenues diverted by Debtor from the payment of the PRASA Bonds or that may be diverted from the payment of the PRASA Bonds in the future, and for any taking of, failure to comply with, or interference with the PRASA Rate Covenant that has occurred or that may occur in the future, including (i) on account of Claimant's lien on the

-15-

PRASA Pledged Special Revenues and on the PRASA Rate Covenant, (ii) pursuant to Section 407 of PROMESA, (iii) under the Contracts Clauses, (iv) under the Due Process Clauses, and (v) for just compensation under the Takings Clauses, including for any taking of the PRASA Rate Covenant or of Claimant's rights thereunder.  Claimant also has contingent and/or unliquidated Claims against the Debtor (i) for the full value of any and all PRASA Pledged Special Revenues diverted by Debtor from the payment of the PRASA Bonds or that may diverted from the payment of the PRASA Bonds in the future, and for any taking of, failure to comply with, or interference with the PRASA Rate Covenant that has occurred or that may occur in the future, and (ii) for the full value of any and all claims paid by Claimant on account of its insurance of the PRASA Bonds or that may be paid by Claimant on account of its insurance of the PRASA Bonds in the future, as damages for the Debtor's breaches of the PRASA Covenant.

## II.    TOTAL AMOUNT OF CLAIMS

Claimant's secured Claims total no less than $2,046,249,544, including (i) Claims of no less than $1,812,335,000 on account of amounts outstanding on Insured Bonds as of the Petition Date, (ii) Claims of no less than $4,785,144 on account of Bonds directly owned by Claimant, and (iii) Claims of no less than $229,129,399.51 on account of primary and secondary market claims paid by Claimant under its insurance policies insuring the Insured Bonds.  Claimant's Claims include all principal and interest on all Insured Bonds and all claims paid to date under all policies insuring the Insured Bonds.  Claimant's Claims also include interest accruing after the Petition Date and any contingent or unliquidated claims not presently ascertainable.  In addition, Claimant's Claims include all costs of enforcement, including professionals' fees.

The Insured Bonds accrued and continue to accrue interest at the rates specified within the Insured Bonds, and the Claims include all interest, fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement, or contribution, and other amounts, including, without limitation, legal fees, and expenses (including, without limitation, those incurred in connection with the preparation, filing, and prosecution of this Proof of Claim), that exist or arise before, as of, or after the date of the filing of this Proof of Claim with respect to the Insured Bonds, whether prior to, on, or subsequent to the Petition Date, in each case to the extent or as may be permitted, provided, or contemplated in the supporting documentation and under applicable law or in equity.

In addition, Claimant has unsecured Claims totaling no less than $2,046,249,544, including Claims (i) arising under the Contracts Clauses; (ii) arising under the Takings Clauses; (iii) arising under the Due Process Clauses; (iv) arising under Section 407 of PROMESA; and (v) for breaches of the Covenants.

## III.    SECURITY FOR SECURED CLAIMS

Claimant's Claims are secured as set forth above.  The Claims of Claimant for amounts due and owing as of the Petition Date are unsecured Claims only to the extent of any deficiency, if any, following any exercise by Claimant of any rights of setoff Claimant may have against the Debtor.  Claimant hereby asserts any and all rights of setoff it may have in respect of the Claims, including, without limitation, the right to setoff its Claims against any claims that the Debtor (or any successor, assignee, purchaser, or person claiming through the Debtor) may assert against Claimant.

## IV.    CREDITS

The amount of all payments on the Claims, if any, has been credited and deducted for purposes of making this Proof of Claim. Moreover, (i) aggregate figures for claims paid by Claimant on account of its insurance policies and (ii) figures for claims paid by Claimant as reflected in the schedules attached as exhibits to this Proof of Claim have been adjusted to reflect any reimbursements received by Claimant as of the date of the filing of this Proof of Claim.

## V.    RESERVATION OF RIGHTS

In filing this Proof of Claim, Claimant expressly reserves all rights and causes of action, including, without limitation, contingent or unliquidated rights that it may have against the Debtor. The description and classification of Claims in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such Claims or a waiver of any rights of Claimant. Claimant expressly reserves its right to bring claims derivatively on behalf of PBA, PRHTA, PRCCDA, PRIFA, PREPA, PRASA, or any other entity, and all such derivative claims constitute Claims encompassed and preserved by this Proof of Claim on behalf of Claimant and the applicable entity.

In addition to any and all other rights expressly reserved herein, Claimant also expressly reserves all rights to amend, modify, or supplement this Proof of Claim in any respect, including, without limitation, with respect to the filing of an amended proof of claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein, or to file additional proofs of claim for additional claims, including, without limitation, claims for interest, fees, and related expenses (including, without limitation, attorneys' fees) that it has not ascertained at this time.

This Proof of Claim is filed without prejudice to any and all of the rights of Claimant to assert that any and all Claims asserted in this Proof of Claim, including any portions thereof, are (i) entitled to administrative priority or (ii) not subject to treatment or discharge under a plan of adjustment, including (a) on the grounds that such Claims constitute postpetition claims; (b) on the grounds that such Claims do not constitute "claims" as defined in section 101 of the Bankruptcy Code (as incorporated by Section 301(a) of PROMESA); or (c) on the grounds that treatment or discharge of such Claims under a plan of adjustment would be contrary to PROMESA and/or unconstitutional. Further, this Proof of Claim is filed by Claimant without prejudice to its right to request payment of any additional administrative expense claims that it may have against the Debtor, including, without limitation, administrative expenses not described in this Proof of Claim, and Claimant reserves the right to request payment of such administrative expenses at a later date or when required by the Title III Court.

This Proof of Claim is filed without prejudice to the filing by Claimant or its affiliates of additional proofs of claim or requests for payment with respect to any other indebtedness, liability, or obligation of the Debtor. Claimant does not, by this Proof of Claim or any amendment or other action, waive any rights with respect to any scheduled claim.

By filing this Proof of Claim, Claimant does not waive any rights under Title III of PROMESA, or chapter 5 or any other provision of the Bankruptcy Code made applicable by

virtue of Section 301(a) of PROMESA, or under any other law or constitution of the United States or the Commonwealth of Puerto Rico.

In executing and filing this Proof of Claim, Claimant does not submit to the jurisdiction of the Title III Court for any purpose other than with respect to this Proof of Claim against the Debtor and does not waive or release: (i) any rights or remedies against any other person or entity that may be liable for all or part of the Claims set forth herein, whether an affiliate or subsidiary of the Debtor, an assignee, successor, purchaser, guarantor or otherwise; (ii) any obligation owed to Claimant, or any right to any security that may be determined to be held by Claimant or for Claimant's benefit; (c) any past, present or future defaults (or events of default) by the Debtor or others; or (d) any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor. The filing of this Proof of Claim is not, and shall not be construed as, an election of remedies or limitation of rights or remedies.

Nothing contained in this Proof of Claim, nor any subsequent appearance, pleading, claim, or suit is intended to be a waiver or release of: (i) the right of Claimant to have final orders in non-core matters entered only after de novo review by a court of competent jurisdiction (other than the Title III Court); (ii) the right of Claimant to a jury trial in any proceeding so triable herein, or in any case, any controversy, or any proceeding related hereto; (iii) the right of Claimant to have any unliquidated portions of its Claim determined by applicable state or Commonwealth courts; or (iv) any other rights, claims, actions, defenses, setoffs or recoupments to which Claimant is or may be entitled under agreements, documents or instruments, in law or equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved.

## VI. NOTICES

All notices with respect to the Claims should be sent to:

Assured Guaranty Corp.
1633 Broadway
New York, NY 10019
Attn: Kevin Lyons, Esq.
      Terence Workman, Esq.
      Daniel Weinberg
Email: klyons@agltd.com
      tworkman@agltd.com
      dweinberg@agltd.com
Phone: 212.339.3546 (Kevin Lyons)
      212.408.6053 (Terence Workman)
      212.893.2763 (Daniel Weinberg)

with copies to:

Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Attn: Ivan Loncar, Esq.
      Thomas J. Curtin, Esq.

Casey Servais, Esq.
Phone: 212-504-6000
Fax:   212-504-6666
Email: ivan.loncar@cwt.com
       thomas.curtin@cwt.com
       casey.servais@cwt.com

## EXHIBIT A

## GO BOND POLICIES

| Original Policy Number | Primary/Secondary Market | Gross Par (000s) |
|---|---|---|
| D2006192 | PRIMARY | 93,910 |
| D2007248 | PRIMARY | 24,940 |
| 30022BQ1 | SECONDARY | 75 |
| 30022BQ2 | SECONDARY | 525 |
| 30022BR1 | SECONDARY | 135 |
| 30022BR2 | SECONDARY | 200 |
| 30022BS1 | SECONDARY | 120 |
| SM20043 | SECONDARY | 1,000 |
| SM20067 | SECONDARY | 2,295 |
| SM200611 | SECONDARY | 4,250 |
| SM200612 | SECONDARY | 585 |
| SM200613 | SECONDARY | 54,350 |
| SM20076 | SECONDARY | 3,250 |
| SM2007110 | SECONDARY | 2,500 |
| SM2007155 | SECONDARY | 13,650 |
| SM2007156 | SECONDARY | 4,400 |
| SM2007157 | SECONDARY | 1,750 |
| SM2007217 | SECONDARY | 7,220 |
| SM2007221 | SECONDARY | 5,000 |
| SM2007222 | SECONDARY | 2,000 |
| SM2008332 | SECONDARY | 1,875 |
| SM2008335 | SECONDARY | 995 |
| SM2008337 | SECONDARY | 2,500 |
| SM2008343 | SECONDARY | 1,410 |
| SM2008344 | SECONDARY | 3,710 |
| SM2008346 | SECONDARY | 1,000 |
| SM2008353 | SECONDARY | 1,410 |
| SM2008363 | SECONDARY | 1,610 |
| SM2009248 | SECONDARY | 2,650 |
| SM2009251 | SECONDARY | 10,000 |
| SM2009250 | SECONDARY | 1,825 |
| SM2009252 | SECONDARY | 600 |
| SM2009253 | SECONDARY | 15,000 |
| SM2009255 | SECONDARY | 1,000 |
| SM2009256 | SECONDARY | 6,000 |
| SM2009257 | SECONDARY | 2,000 |
| SM2009265 | SECONDARY | 4,000 |
| SM201014 | SECONDARY | 250 |

| Original Policy Number | Primary/Secondary Market | Gross Par (000s) |
|---|---|---|
| SM201017 | SECONDARY | 7,000 |
| FMLI-0301-04113A-PA | SECONDARY | 195 |
| FMLI-0301-08098-NJ | SECONDARY | 500 |
| FMNI-0301-04148A-NY | SECONDARY | 1,500 |
| FMNI-0301-04148B-NY | SECONDARY | 4,485 |
| FMNI-0301-04149-NY | SECONDARY | 700 |
| FMNI-0301-04153B-NY | SECONDARY | 1,000 |
| FMNI-0301-04169-NY | SECONDARY | 3,000 |
| FMNI-0301-04296-NY | SECONDARY | 140 |
| FMNI-0301-08077A-NY | SECONDARY | 1,890 |
| FMNI-0301-08079B-NY | SECONDARY | 3,865 |
| FMNI-0301-08091-NY | SECONDARY | 765 |
| FMNI-0301-08098A-NY | SECONDARY | 1,000 |
| FMNI-0301-08099B-NY | SECONDARY | 5,000 |
| FMNI-0301-08099C-NY | SECONDARY | 2,000 |
| FMNI-0301-08128E-NY | SECONDARY | 1,200 |
| FMSI-0301-08128-FL | SECONDARY | 10,000 |
| CIFGNA-150 | SECONDARY | 1,371 |
| CIFGNA-156 | SECONDARY | 1,000 |
| CIFGNA-157 | SECONDARY | 1,279 |
| CIFGNA-233 | SECONDARY | 1,475 |
| CIFGNA-346 | SECONDARY | 1,855 |
| CIFGNA-360 | SECONDARY | 400 |
| CIFGNA-370 | SECONDARY | 1,000 |
| CIFGNA-382 | SECONDARY | 665 |
| CIFGNA-394 | SECONDARY | 725 |
| CIFGNA-397 | SECONDARY | 200 |
| CIFGNA-405 | SECONDARY | 1,250 |
| CIFGNA-406 | SECONDARY | 640 |
| CIFGNA-435 | SECONDARY | 600 |
| CIFGNA-489 | SECONDARY | 2,000 |
| CIFGNA-497 | SECONDARY | 6,170 |
| CIFGNA-509 | SECONDARY | 11,000 |
| CIFGNA-547 | SECONDARY | 2,500 |
| CIFGNA-578 | SECONDARY | 1,500 |
| CIFGNA-580 | SECONDARY | 3,075 |
| CIFGNA-603 | SECONDARY | 325 |
| CIFGNA-608 | SECONDARY | 4,505 |
| CIFGNA-609 | SECONDARY | 1,500 |
| CIFGNA-610 | SECONDARY | 17,805 |
| CIFGNA-626 | SECONDARY | 880 |

| Original Policy Number | Primary/Secondary Market | Gross Par (000s) |
|---|---|---|
| CIFGNA-630 | SECONDARY | 4,645 |
| CIFGNA-634 | SECONDARY | 1,000 |

## EXHIBIT B

## GO BOND CLAIMS PAID

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-497 | SECONDARY | 1/2017 | I - Interest | 161,962.50 |
| CIFGNA-497 | SECONDARY | 7/2017 | I - Interest | 161,962.50 |
| CIFGNA-497 | SECONDARY | 1/2018 | I - Interest | 161,962.50 |
| CIFGNA-233 | SECONDARY | 1/2017 | I - Interest | 38,718.75 |
| CIFGNA-233 | SECONDARY | 7/2017 | B - P&I | 1,513,718.75 |
| CIFGNA-382 | SECONDARY | 1/2017 | I - Interest | 16,625.00 |
| CIFGNA-382 | SECONDARY | 7/2017 | I - Interest | 16,625.00 |
| CIFGNA-382 | SECONDARY | 1/2018 | I - Interest | 16,625.00 |
| CIFGNA-360 | SECONDARY | 1/2017 | I - Interest | 10,500.00 |
| CIFGNA-360 | SECONDARY | 7/2017 | I - Interest | 10,500.00 |
| CIFGNA-360 | SECONDARY | 1/2018 | I - Interest | 10,500.00 |
| CIFGNA-370 | SECONDARY | 1/2017 | I - Interest | 26,250.00 |
| CIFGNA-370 | SECONDARY | 7/2017 | I - Interest | 26,250.00 |
| CIFGNA-370 | SECONDARY | 1/2018 | I - Interest | 26,250.00 |
| CIFGNA-489 | SECONDARY | 1/2017 | I - Interest | 52,500.00 |
| CIFGNA-489 | SECONDARY | 7/2017 | B - P&I | 2,052,500.00 |
| CIFGNA-547 | SECONDARY | 1/2017 | I - Interest | 62,500.00 |
| CIFGNA-547 | SECONDARY | 7/2017 | I - Interest | 62,500.00 |
| CIFGNA-547 | SECONDARY | 1/2018 | I - Interest | 62,500.00 |
| CIFGNA-397 | SECONDARY | 1/2017 | I - Interest | 5,250.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-397 | SECONDARY | 7/2017 | I - Interest | 5,250.00 |
| CIFGNA-397 | SECONDARY | 1/2018 | I - Interest | 5,250.00 |
| CIFGNA-435 | SECONDARY | 1/2017 | I - Interest | 15,375.00 |
| CIFGNA-435 | SECONDARY | 7/2017 | I - Interest | 15,375.00 |
| CIFGNA-435 | SECONDARY | 1/2018 | I - Interest | 15,375.00 |
| CIFGNA-609 | SECONDARY | 1/2017 | I - Interest | 39,375.00 |
| CIFGNA-609 | SECONDARY | 7/2017 | I - Interest | 39,375.00 |
| CIFGNA-346 | SECONDARY | 1/2017 | I - Interest | 46,375.00 |
| CIFGNA-346 | SECONDARY | 7/2017 | I - Interest | 46,375.00 |
| CIFGNA-609 | SECONDARY | 1/2018 | I - Interest | 39,375.00 |
| CIFGNA-346 | SECONDARY | 1/2018 | I - Interest | 46,375.00 |
| CIFGNA-394 | SECONDARY | 1/2017 | I - Interest | 19,937.50 |
| CIFGNA-394 | SECONDARY | 7/2017 | I - Interest | 19,937.50 |
| CIFGNA-394 | SECONDARY | 1/2018 | I - Interest | 19,937.50 |
| CIFGNA-509 | SECONDARY | 1/2017 | I - Interest | 288,750.00 |
| CIFGNA-509 | SECONDARY | 7/2017 | I - Interest | 288,750.00 |
| CIFGNA-509 | SECONDARY | 1/2018 | I - Interest | 288,750.00 |
| SM2007221 | SECONDARY | 7/2016 | I - Interest | 125,000.00 |
| SM2007221 | SECONDARY | 1/2017 | I - Interest | 125,000.00 |
| SM2007221 | SECONDARY | 7/2017 | I - Interest | 125,000.00 |
| SM2007221 | SECONDARY | 1/2018 | I - Interest | 125,000.00 |
| SM2008353 | SECONDARY | 7/2016 | I - Interest | 37,012.50 |
| SM2008353 | SECONDARY | 1/2017 | I - Interest | 37,012.50 |
| SM200612 | SECONDARY | 1/2017 | I - Interest | 15,356.25 |
| SM200612 | SECONDARY | 7/2017 | I - Interest | 15,356.25 |
| SM200612 | SECONDARY | 1/2018 | I - Interest | 15,356.25 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| SM2008353 | SECONDARY | 7/2017 | I - Interest | 37,012.50 |
| SM2008353 | SECONDARY | 1/2018 | I - Interest | 37,012.50 |
| SM200613 | SECONDARY | 7/2016 | I - Interest | 1,494,625.00 |
| SM200613 | SECONDARY | 1/2017 | I - Interest | 1,494,625.00 |
| SM200613 | SECONDARY | 7/2017 | I - Interest | 1,494,625.00 |
| SM200613 | SECONDARY | 1/2018 | I - Interest | 1,494,625.00 |
| SM2007155 | SECONDARY | 7/2016 | I - Interest | 341,250.00 |
| SM2007155 | SECONDARY | 1/2017 | I - Interest | 341,250.00 |
| SM2007155 | SECONDARY | 7/2017 | I - Interest | 341,250.00 |
| SM2007155 | SECONDARY | 1/2018 | I - Interest | 341,250.00 |
| SM2007217 | SECONDARY | 7/2016 | I - Interest | 180,500.00 |
| SM2007217 | SECONDARY | 1/2017 | I - Interest | 180,500.00 |
| SM2007217 | SECONDARY | 7/2017 | I - Interest | 180,500.00 |
| SM2007217 | SECONDARY | 1/2018 | I - Interest | 180,500.00 |
| SM20076 | SECONDARY | 7/2016 | I - Interest | 85,312.50 |
| SM20076 | SECONDARY | 1/2017 | I - Interest | 85,312.50 |
| SM20076 | SECONDARY | 7/2017 | B - P&I | 3,335,312.50 |
| CIFGNA-634 | SECONDARY | 7/2016 | I - Interest | 25,000.00 |
| D2008352 | PRIMARY | 7/2016 | B - P&I | 72,240,975.00 |
| SM2008343 | SECONDARY | 7/2016 | I - Interest | 35,250.00 |
| SM2008343 | SECONDARY | 1/2017 | I - Interest | 35,250.00 |
| SM2008343 | SECONDARY | 7/2017 | I - Interest | 35,250.00 |
| SM2008343 | SECONDARY | 1/2018 | I - Interest | 35,250.00 |
| SM2008344 | SECONDARY | 7/2016 | I - Interest | 92,750.00 |
| SM2008344 | SECONDARY | 1/2017 | I - Interest | 92,750.00 |
| SM2008344 | SECONDARY | 7/2017 | I - Interest | 92,750.00 |
| SM2008344 | SECONDARY | 1/2018 | I - Interest | 92,750.00 |
| SM2008332 | SECONDARY | 7/2016 | I - Interest | 46,875.00 |
| SM2008332 | SECONDARY | 1/2017 | I - Interest | 46,875.00 |
| SM2008332 | SECONDARY | 7/2017 | I - Interest | 46,875.00 |
| SM2008332 | SECONDARY | 1/2018 | I - Interest | 46,875.00 |
| SM2007222 | SECONDARY | 7/2016 | I - Interest | 50,000.00 |
| SM2007222 | SECONDARY | 1/2017 | I - Interest | 50,000.00 |
| SM2007222 | SECONDARY | 7/2017 | I - Interest | 50,000.00 |
| SM2007222 | SECONDARY | 1/2018 | I - Interest | 50,000.00 |
| D2007248 | PRIMARY | 7/2016 | I - Interest | 623,500.00 |
| D2007248 | PRIMARY | 1/2017 | I - Interest | 623,500.00 |
| D2007248 | PRIMARY | 7/2017 | B - P&I | 25,563,500.00 |
| SM20043 | SECONDARY | 1/2017 | I - Interest | 25,000.00 |
| SM20043 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| SM20043 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| SM20067 | SECONDARY | 7/2016 | I - Interest | 60,243.75 |
| SM20067 | SECONDARY | 1/2017 | I - Interest | 60,243.75 |
| SM20067 | SECONDARY | 7/2017 | I - Interest | 60,243.75 |
| SM20067 | SECONDARY | 1/2018 | I - Interest | 60,243.75 |
| SM2007156 | SECONDARY | 7/2016 | I - Interest | 110,000.00 |
| SM2007156 | SECONDARY | 1/2017 | I - Interest | 110,000.00 |
| SM2007156 | SECONDARY | 7/2017 | I - Interest | 110,000.00 |
| SM2007156 | SECONDARY | 1/2018 | I - Interest | 110,000.00 |
| CIFGNA-360 | SECONDARY | 7/2016 | I - Interest | 10,500.00 |
| CIFGNA-382 | SECONDARY | 7/2016 | I - Interest | 16,625.00 |
| CIFGNA-397 | SECONDARY | 7/2016 | I - Interest | 5,250.00 |
| CIFGNA-489 | SECONDARY | 7/2016 | I - Interest | 52,500.00 |
| CIFGNA-578 | SECONDARY | 7/2016 | I - Interest | 37,500.00 |
| CIFGNA-603 | SECONDARY | 7/2016 | I - Interest | 8,125.00 |
| SM2007157 | SECONDARY | 7/2016 | I - Interest | 43,750.00 |
| SM2007157 | SECONDARY | 1/2017 | I - Interest | 43,750.00 |
| SM2007157 | SECONDARY | 7/2017 | I - Interest | 43,750.00 |
| SM2007157 | SECONDARY | 1/2018 | I - Interest | 43,750.00 |
| SM2008335 | SECONDARY | 7/2016 | I - Interest | 24,875.00 |
| SM2008335 | SECONDARY | 1/2017 | I - Interest | 24,875.00 |
| SM2008335 | SECONDARY | 7/2017 | I - Interest | 24,875.00 |
| SM2008335 | SECONDARY | 1/2018 | I - Interest | 24,875.00 |
| SM2008346 | SECONDARY | 7/2016 | I - Interest | 26,250.00 |
| SM2008346 | SECONDARY | 1/2017 | I - Interest | 26,250.00 |
| SM2008346 | SECONDARY | 7/2017 | I - Interest | 26,250.00 |
| SM2008346 | SECONDARY | 1/2018 | I - Interest | 26,250.00 |
| CIFGNA-435 | SECONDARY | 7/2016 | I - Interest | 15,375.00 |
| CIFGNA-156 | SECONDARY | 7/2016 | I - Interest | 27,500.00 |
| CIFGNA-233 | SECONDARY | 7/2016 | I - Interest | 38,718.75 |
| CIFGNA-630 | SECONDARY | 7/2016 | I - Interest | 116,125.00 |

B-4

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-156 | SECONDARY | 1/2017 | I - Interest | 27,500.00 |
| CIFGNA-156 | SECONDARY | 7/2017 | I - Interest | 27,500.00 |
| CIFGNA-156 | SECONDARY | 1/2018 | I - Interest | 27,500.00 |
| CIFGNA-405 | SECONDARY | 7/2016 | I - Interest | 31,250.00 |
| CIFGNA-630 | SECONDARY | 1/2017 | I - Interest | 116,125.00 |
| CIFGNA-630 | SECONDARY | 7/2017 | I - Interest | 116,125.00 |
| CIFGNA-630 | SECONDARY | 1/2018 | I - Interest | 116,125.00 |
| CIFGNA-497 | SECONDARY | 7/2016 | I - Interest | 161,962.50 |
| CIFGNA-509 | SECONDARY | 7/2016 | I - Interest | 288,750.00 |
| CIFGNA-609 | SECONDARY | 7/2016 | I - Interest | 39,375.00 |
| CIFGNA-394 | SECONDARY | 7/2016 | I - Interest | 19,937.50 |
| CIFGNA-400 | SECONDARY | 7/2016 | B - P&I | 256,875.00 |
| CIFGNA-406 | SECONDARY | 7/2016 | I - Interest | 16,000.00 |
| CIFGNA-603 | SECONDARY | 1/2017 | I - Interest | 8,125.00 |
| CIFGNA-603 | SECONDARY | 7/2017 | I - Interest | 8,125.00 |
| CIFGNA-603 | SECONDARY | 1/2018 | I - Interest | 8,125.00 |
| CIFGNA-608 | SECONDARY | 1/2017 | I - Interest | 112,625.00 |
| CIFGNA-608 | SECONDARY | 7/2017 | I - Interest | 112,625.00 |
| CIFGNA-608 | SECONDARY | 1/2018 | I - Interest | 112,625.00 |
| CIFGNA-626 | SECONDARY | 1/2017 | I - Interest | 22,000.00 |
| CIFGNA-626 | SECONDARY | 7/2017 | I - Interest | 22,000.00 |
| CIFGNA-626 | SECONDARY | 1/2018 | I - Interest | 22,000.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-157 | SECONDARY | 7/2017 | P - Principal | 1,400,000.00 |
| CIFGNA-578 | SECONDARY | 1/2017 | I - Interest | 37,500.00 |
| CIFGNA-578 | SECONDARY | 7/2017 | I - Interest | 37,500.00 |
| CIFGNA-578 | SECONDARY | 1/2018 | I - Interest | 37,500.00 |
| CIFGNA-580 | SECONDARY | 7/2016 | I - Interest | 76,875.00 |
| CIFGNA-610 | SECONDARY | 7/2016 | I - Interest | 445,125.00 |
| CIFGNA-626 | SECONDARY | 7/2016 | I - Interest | 22,000.00 |
| CIFGNA-150 | SECONDARY | 7/2017 | P - Principal | 1,500,000.00 |
| CIFGNA-610 | SECONDARY | 1/2017 | I - Interest | 445,125.00 |
| CIFGNA-610 | SECONDARY | 7/2017 | I - Interest | 445,125.00 |
| CIFGNA-610 | SECONDARY | 1/2018 | I - Interest | 445,125.00 |
| CIFGNA-405 | SECONDARY | 1/2017 | I - Interest | 31,250.00 |
| CIFGNA-405 | SECONDARY | 7/2017 | I - Interest | 31,250.00 |
| CIFGNA-405 | SECONDARY | 1/2018 | I - Interest | 31,250.00 |
| CIFGNA-580 | SECONDARY | 1/2017 | I - Interest | 76,875.00 |
| CIFGNA-580 | SECONDARY | 7/2017 | I - Interest | 76,875.00 |
| CIFGNA-580 | SECONDARY | 1/2018 | I - Interest | 76,875.00 |
| CIFGNA-634 | SECONDARY | 1/2017 | I - Interest | 25,000.00 |
| CIFGNA-634 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| SM200611 | SECONDARY | 7/2016 | I - Interest | 116,875.00 |
| SM200611 | SECONDARY | 1/2017 | I - Interest | 116,875.00 |
| SM200611 | SECONDARY | 7/2017 | I - Interest | 116,875.00 |
| SM200611 | SECONDARY | 1/2018 | I - Interest | 116,875.00 |
| D2006192 | PRIMARY | 7/2016 | I - Interest | 550,105.05 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| D2006192 | PRIMARY | 1/2017 | I - Interest | 998,055.75 |
| D2006192 | PRIMARY | 7/2017 | I - Interest | 1,237,995.80 |
| D2006192 | PRIMARY | 1/2018 | I - Interest | 1,502,822.00 |
| CIFGNA-634 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| SM2007110 | SECONDARY | 7/2016 | I - Interest | 65,625.00 |
| SM2007110 | SECONDARY | 1/2017 | I - Interest | 65,625.00 |
| SM2007110 | SECONDARY | 7/2017 | B - P&I | 2,565,625.00 |
| SM2008363 | SECONDARY | 7/2016 | I - Interest | 42,262.50 |
| SM2008363 | SECONDARY | 1/2017 | I - Interest | 42,262.50 |
| SM2008363 | SECONDARY | 7/2017 | I - Interest | 42,262.50 |
| SM2008363 | SECONDARY | 1/2018 | I - Interest | 42,262.50 |
| CIFGNA-346 | SECONDARY | 7/2016 | I - Interest | 46,375.00 |
| CIFGNA-370 | SECONDARY | 7/2016 | I - Interest | 26,250.00 |
| CIFGNA-547 | SECONDARY | 7/2016 | I - Interest | 62,500.00 |
| CIFGNA-608 | SECONDARY | 7/2016 | I - Interest | 112,625.00 |
| CIFGNA-406 | SECONDARY | 1/2017 | I - Interest | 16,000.00 |
| CIFGNA-406 | SECONDARY | 7/2017 | I - Interest | 16,000.00 |
| CIFGNA-406 | SECONDARY | 1/2018 | I - Interest | 16,000.00 |
| SM201017 | SECONDARY | 7/2016 | I - Interest | 144,375.01 |
| SM201017 | SECONDARY | 1/2017 | I - Interest | 144,375.01 |
| SM201017 | SECONDARY | 7/2017 | I - Interest | 144,375.00 |
| SM201017 | SECONDARY | 1/2018 | I - Interest | 128,975.00 |
| SM2009252 | SECONDARY | 7/2016 | I - Interest | 15,000.00 |
| SM2009252 | SECONDARY | 1/2017 | I - Interest | 15,000.00 |
| SM2009252 | SECONDARY | 7/2017 | I - Interest | 15,000.00 |
| SM2009252 | SECONDARY | 1/2018 | I - Interest | 15,000.00 |
| SM2009255 | SECONDARY | 7/2016 | I - Interest | 26,250.00 |
| SM2009255 | SECONDARY | 1/2017 | I - Interest | 26,250.00 |
| SM2009255 | SECONDARY | 7/2017 | I - Interest | 26,250.00 |
| SM2009255 | SECONDARY | 1/2018 | I - Interest | 26,250.00 |
| SM2009250 | SECONDARY | 7/2016 | I - Interest | 45,625.00 |
| SM2009250 | SECONDARY | 1/2017 | I - Interest | 45,625.00 |
| SM2009250 | SECONDARY | 7/2017 | I - Interest | 45,625.00 |
| SM2009250 | SECONDARY | 1/2018 | I - Interest | 45,625.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| SM2009253 | SECONDARY | 7/2016 | I - Interest | 375,000.00 |
| SM2009253 | SECONDARY | 1/2017 | I - Interest | 375,000.00 |
| SM2009253 | SECONDARY | 7/2017 | I - Interest | 375,000.00 |
| SM2009253 | SECONDARY | 1/2018 | I - Interest | 375,000.00 |
| SM201014 | SECONDARY | 7/2016 | I - Interest | 6,250.00 |
| SM201014 | SECONDARY | 1/2017 | I - Interest | 6,250.00 |
| SM201014 | SECONDARY | 7/2017 | I - Interest | 6,250.00 |
| SM201014 | SECONDARY | 1/2018 | I - Interest | 6,250.00 |
| SM2009251 | SECONDARY | 7/2016 | I - Interest | 250,000.00 |
| SM2009251 | SECONDARY | 1/2017 | I - Interest | 250,000.00 |
| SM2009251 | SECONDARY | 7/2017 | I - Interest | 250,000.00 |
| SM2009251 | SECONDARY | 1/2018 | I - Interest | 250,000.00 |
| 30022BR1 | SECONDARY | 7/2016 | I - Interest | 3,375.00 |
| 30022BR1 | SECONDARY | 1/2017 | I - Interest | 3,375.00 |
| 30022BR1 | SECONDARY | 7/2017 | I - Interest | 3,375.00 |
| 30022BR1 | SECONDARY | 1/2018 | I - Interest | 3,375.00 |
| 30022BS1 | SECONDARY | 7/2016 | I - Interest | 3,000.00 |
| 30022BS1 | SECONDARY | 1/2017 | I - Interest | 3,000.00 |
| 30022BQ1 | SECONDARY | 7/2016 | I - Interest | 1,875.00 |
| 30022BQ1 | SECONDARY | 1/2017 | I - Interest | 1,875.00 |
| 30022BQ1 | SECONDARY | 7/2017 | I - Interest | 1,875.00 |
| 30022BQ1 | SECONDARY | 1/2018 | I - Interest | 1,875.00 |
| 30022BQ2 | SECONDARY | 7/2016 | I - Interest | 13,125.00 |
| 30022BQ2 | SECONDARY | 1/2017 | I - Interest | 13,125.00 |
| 30022BQ2 | SECONDARY | 7/2017 | I - Interest | 13,125.00 |
| 30022BQ2 | SECONDARY | 1/2018 | I - Interest | 13,125.00 |
| 30022BR2 | SECONDARY | 7/2016 | I - Interest | 5,000.00 |
| 30022BR2 | SECONDARY | 1/2017 | I - Interest | 5,000.00 |
| 30022BR2 | SECONDARY | 7/2017 | I - Interest | 5,000.00 |
| 30022BR2 | SECONDARY | 1/2018 | I - Interest | 5,000.00 |
| 30022BS1 | SECONDARY | 7/2017 | I - Interest | 3,000.00 |
| 30022BS1 | SECONDARY | 1/2018 | I - Interest | 3,000.00 |
| FMNI-0301-04296-NY | SECONDARY | 7/2016 | I - Interest | 3,500.00 |
| FMNI-0301-04296-NY | SECONDARY | 1/2017 | I - Interest | 3,500.00 |
| FMNI-0301-04296-NY | SECONDARY | 7/2017 | I - Interest | 3,500.00 |
| FMNI-0301-04296-NY | SECONDARY | 1/2018 | I - Interest | 3,500.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| FMNI-0301-08077A-NY | SECONDARY | 7/2016 | I - Interest | 49,612.50 |
| FMNI-0301-08077A-NY | SECONDARY | 1/2017 | I - Interest | 49,612.50 |
| FMNI-0301-08077A-NY | SECONDARY | 7/2017 | I - Interest | 49,612.50 |
| FMNI-0301-08077A-NY | SECONDARY | 1/2018 | I - Interest | 49,612.50 |
| FMNI-0301-08128E-NY | SECONDARY | 7/2016 | I - Interest | 33,000.00 |
| FMNI-0301-08128E-NY | SECONDARY | 1/2017 | I - Interest | 33,000.00 |
| FMNI-0301-08128E-NY | SECONDARY | 7/2017 | I - Interest | 33,000.00 |
| FMNI-0301-08128E-NY | SECONDARY | 1/2018 | I - Interest | 33,000.00 |
| FMNI-0301-04149-NY | SECONDARY | 7/2016 | I - Interest | 17,500.00 |
| FMNI-0301-04149-NY | SECONDARY | 1/2017 | I - Interest | 17,500.00 |
| FMNI-0301-04149-NY | SECONDARY | 7/2017 | I - Interest | 17,500.00 |
| FMNI-0301-04149-NY | SECONDARY | 1/2018 | I - Interest | 17,500.00 |
| FMNI-0301-08098A-NY | SECONDARY | 7/2016 | I - Interest | 25,000.00 |
| FMNI-0301-08098A-NY | SECONDARY | 1/2017 | I - Interest | 25,000.00 |
| FMNI-0301-08098A-NY | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| FMNI-0301-08098A-NY | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| FMNI-0301-08099C-NY | SECONDARY | 7/2016 | I - Interest | 50,000.00 |
| FMNI-0301-08099C-NY | SECONDARY | 1/2017 | I - Interest | 50,000.00 |
| FMNI-0301-08099C-NY | SECONDARY | 7/2017 | I - Interest | 50,000.00 |
| FMNI-0301-08099C-NY | SECONDARY | 1/2018 | I - Interest | 50,000.00 |
| FMLI-0301-08098-NJ | SECONDARY | 7/2016 | I - Interest | 12,500.00 |
| FMLI-0301-08098-NJ | SECONDARY | 1/2017 | I - Interest | 12,500.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| FMLI-0301-08098-NJ | SECONDARY | 7/2017 | I - Interest | 12,500.00 |
| FMLI-0301-08098-NJ | SECONDARY | 1/2018 | I - Interest | 12,500.00 |
| FMNI-0301-04153B-NY | SECONDARY | 7/2016 | I - Interest | 25,000.00 |
| FMNI-0301-04153B-NY | SECONDARY | 1/2017 | I - Interest | 25,000.00 |
| FMNI-0301-04153B-NY | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| FMNI-0301-04153B-NY | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| FMNI-0301-08099B-NY | SECONDARY | 7/2016 | I - Interest | 125,000.00 |
| FMLI-0301-04113A-PA | SECONDARY | 7/2016 | I - Interest | 4,387.50 |
| FMLI-0301-04113A-PA | SECONDARY | 1/2017 | I - Interest | 4,387.50 |
| FMLI-0301-04113A-PA | SECONDARY | 7/2017 | I - Interest | 4,387.50 |
| FMLI-0301-04113A-PA | SECONDARY | 1/2018 | I - Interest | 4,387.50 |
| FMNI-0301-08079B-NY | SECONDARY | 7/2016 | I - Interest | 101,456.25 |
| FMNI-0301-08079B-NY | SECONDARY | 1/2017 | I - Interest | 101,456.25 |
| FMNI-0301-08079B-NY | SECONDARY | 7/2017 | I - Interest | 101,456.25 |
| FMNI-0301-08079B-NY | SECONDARY | 1/2018 | I - Interest | 101,456.25 |
| FMSI-0301-08128-FL | SECONDARY | 7/2016 | I - Interest | 237,500.00 |
| FMSI-0301-08128-FL | SECONDARY | 1/2017 | I - Interest | 237,500.00 |
| FMSI-0301-08128-FL | SECONDARY | 7/2017 | I - Interest | 237,500.00 |
| FMSI-0301-08128-FL | SECONDARY | 1/2018 | I - Interest | 237,500.00 |
| FMNI-0301-08099B-NY | SECONDARY | 1/2017 | I - Interest | 125,000.00 |
| FMNI-0301-08099B-NY | SECONDARY | 7/2017 | I - Interest | 125,000.00 |
| FMNI-0301-08099B-NY | SECONDARY | 1/2018 | I - Interest | 125,000.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| FMNI-0301-04169-NY | SECONDARY | 7/2016 | I - Interest | 75,000.00 |
| FMNI-0301-04169-NY | SECONDARY | 1/2017 | I - Interest | 75,000.00 |
| FMNI-0301-04169-NY | SECONDARY | 7/2017 | I - Interest | 75,000.00 |
| FMNI-0301-04169-NY | SECONDARY | 1/2018 | I - Interest | 75,000.00 |
| FMNI-0301-08128D-NY | SECONDARY | 7/2016 | B - P&I | 3,162,125.00 |
| FMNI-0301-04148A-NY | SECONDARY | 7/2016 | I - Interest | 37,500.00 |
| FMNI-0301-04148A-NY | SECONDARY | 1/2017 | I - Interest | 37,500.00 |
| FMNI-0301-04148A-NY | SECONDARY | 7/2017 | I - Interest | 37,500.00 |
| FMNI-0301-04148A-NY | SECONDARY | 1/2018 | I - Interest | 37,500.00 |
| FMNI-0301-04148B-NY | SECONDARY | 7/2016 | I - Interest | 112,125.00 |
| FMNI-0301-04148B-NY | SECONDARY | 1/2017 | I - Interest | 112,125.00 |
| FMNI-0301-04148B-NY | SECONDARY | 7/2017 | I - Interest | 112,125.00 |
| FMNI-0301-04148B-NY | SECONDARY | 1/2018 | I - Interest | 112,125.00 |
| SM2008337 | SECONDARY | 7/2016 | I - Interest | 51,562.50 |
| SM2008337 | SECONDARY | 1/2017 | I - Interest | 51,562.50 |
| SM2008337 | SECONDARY | 7/2017 | I - Interest | 51,562.50 |
| SM2008337 | SECONDARY | 1/2018 | I - Interest | 46,062.50 |
| SM2009257 | SECONDARY | 7/2016 | I - Interest | 41,250.00 |
| SM2009257 | SECONDARY | 1/2017 | I - Interest | 41,250.00 |
| SM2009257 | SECONDARY | 7/2017 | I - Interest | 41,250.00 |
| SM2009257 | SECONDARY | 1/2018 | I - Interest | 36,850.00 |
| SM2009265 | SECONDARY | 7/2016 | I - Interest | 82,500.00 |
| SM2009265 | SECONDARY | 1/2017 | I - Interest | 82,500.00 |
| SM2009265 | SECONDARY | 7/2017 | I - Interest | 82,500.00 |
| SM2009265 | SECONDARY | 1/2018 | I - Interest | 73,700.00 |
| SM2009256 | SECONDARY | 7/2016 | I - Interest | 123,750.00 |
| SM2009256 | SECONDARY | 1/2017 | I - Interest | 123,750.00 |
| SM2009256 | SECONDARY | 7/2017 | I - Interest | 123,750.00 |
| SM2009256 | SECONDARY | 1/2018 | I - Interest | 110,550.00 |

## EXHIBIT C

## PBA POLICIES

| Original Policy Number | Primary/ Secondary Market | Gross Par (000s) |
|---|---|---|
| 303353I1 | SECONDARY | 310 |
| 303353I2 | SECONDARY | 10 |
| FMLI-0301-04162-PA | SECONDARY | 1,940 |
| FMLI-0301-04166-PA | SECONDARY | 2,000 |
| FMNI-0301-04162-NY | SECONDARY | 10,000 |
| FMNI-0301-08073-NY | SECONDARY | 7,710 |
| FMNI-0301-08085-NY | SECONDARY | 1,000 |
| FMSI-0301-08071-FL | SECONDARY | 5,000 |
| FMSI-0301-08073-FL | SECONDARY | 920 |
| FMSI-0301-08091-FL | SECONDARY | 14,000 |
| FMSI-0301-08092-FL | SECONDARY | 5,705 |
| CIFGNA-1 | SECONDARY | 4,980 |
| CIFGNA-34 | SECONDARY | 7,225 |
| CIFGNA-35 | SECONDARY | 5,000 |
| CIFGNA-36 | SECONDARY | 25,800 |
| CIFGNA-122 | SECONDARY | 1,180 |
| CIFGNA-127 | SECONDARY | 1,270 |
| CIFGNA-141 | SECONDARY | 1,000 |
| CIFGNA-146 | SECONDARY | 1,000 |
| CIFGNA-148 | SECONDARY | 6,535 |
| CIFGNA-149 | SECONDARY | 5,425 |
| CIFGNA-323 | SECONDARY | 5,235 |
| CIFGNA-348 | SECONDARY | 2,000 |
| CIFGNA-351 | SECONDARY | 1,000 |
| CIFGNA-523 | SECONDARY | 355 |
| CIFGNA-532 | SECONDARY | 2,000 |

## EXHIBIT D

### PBA CLAIMS PAID

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| 303353I2 | SECONDARY | 1/2017 | I - Interest | 262.5 |
| 303353I2 | SECONDARY | 7/2017 | I - Interest | 262.5 |
| 303353I2 | SECONDARY | 1/2018 | I - Interest | 262.5 |
| 303353I1 | SECONDARY | 1/2017 | I - Interest | 8,137.50 |
| 303353I1 | SECONDARY | 7/2017 | I - Interest | 8,137.50 |
| 303353I1 | SECONDARY | 1/2018 | I - Interest | 8,137.50 |
| FMLI-0301-04166-PA | SECONDARY | 1/2017 | I - Interest | 50,000.00 |
| FMLI-0301-04166-PA | SECONDARY | 7/2017 | I - Interest | 50,000.00 |
| FMLI-0301-04166-PA | SECONDARY | 1/2018 | I - Interest | 50,000.00 |
| FMSI-0301-08092-FL | SECONDARY | 1/2017 | I - Interest | 149,756.25 |
| FMSI-0301-08092-FL | SECONDARY | 7/2017 | I - Interest | 149,756.25 |
| FMSI-0301-08092-FL | SECONDARY | 1/2018 | I - Interest | 149,756.25 |
| FMNI-0301-08085-NY | SECONDARY | 1/2017 | I - Interest | 26,250.00 |
| FMNI-0301-08085-NY | SECONDARY | 7/2017 | I - Interest | 26,250.00 |
| FMNI-0301-08085-NY | SECONDARY | 1/2018 | I - Interest | 26,250.00 |
| FMSI-0301-08073-FL | SECONDARY | 1/2017 | I - Interest | 23,000.00 |
| FMSI-0301-08073-FL | SECONDARY | 7/2017 | I - Interest | 23,000.00 |
| FMSI-0301-08073-FL | SECONDARY | 1/2018 | I - Interest | 23,000.00 |
| FMSI-0301-08071-FL | SECONDARY | 1/2017 | I - Interest | 125,000.00 |
| FMSI-0301-08071-FL | SECONDARY | 7/2017 | I - Interest | 125,000.00 |
| FMSI-0301-08071-FL | SECONDARY | 1/2018 | I - Interest | 125,000.00 |
| FMNI-0301-04162-NY | SECONDARY | 1/2017 | I - Interest | 250,000.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| FMNI-0301-04162-NY | SECONDARY | 7/2017 | I - Interest | 250,000.00 |
| FMNI-0301-04162-NY | SECONDARY | 1/2018 | I - Interest | 250,000.00 |
| FMNI-0301-08073-NY | SECONDARY | 1/2017 | I - Interest | 192,750.00 |
| FMNI-0301-08073-NY | SECONDARY | 7/2017 | I - Interest | 192,750.00 |
| FMNI-0301-08073-NY | SECONDARY | 1/2018 | I - Interest | 192,750.00 |
| FMSI-0301-08091-FL | SECONDARY | 1/2017 | I - Interest | 367,500.00 |
| FMSI-0301-08091-FL | SECONDARY | 7/2017 | I - Interest | 367,500.00 |
| FMSI-0301-08091-FL | SECONDARY | 1/2018 | I - Interest | 367,500.00 |
| FMNI-0301-08091-NY | SECONDARY | 7/2016 | I - Interest | 20,081.25 |
| FMNI-0301-08091-NY | SECONDARY | 1/2017 | I - Interest | 20,081.25 |
| FMNI-0301-08091-NY | SECONDARY | 7/2017 | I - Interest | 20,081.25 |
| FMNI-0301-08091-NY | SECONDARY | 1/2018 | I - Interest | 20,081.25 |
| FMLI-0301-04162-PA | SECONDARY | 1/2017 | I - Interest | 48,500.00 |
| FMLI-0301-04162-PA | SECONDARY | 7/2017 | I - Interest | 48,500.00 |
| FMLI-0301-04162-PA | SECONDARY | 1/2018 | I - Interest | 48,500.00 |
| CIFGNA-36 | SECONDARY | 1/2017 | I - Interest | 677,250.00 |
| CIFGNA-36 | SECONDARY | 7/2017 | B - P&I | 26,477,250.00 |
| CIFGNA-34 | SECONDARY | 1/2017 | I - Interest | 189,656.25 |
| CIFGNA-34 | SECONDARY | 7/2017 | I - Interest | 189,656.25 |
| CIFGNA-34 | SECONDARY | 1/2018 | I - Interest | 189,656.25 |
| CIFGNA-532 | SECONDARY | 1/2017 | I - Interest | 57,500.00 |
| CIFGNA-532 | SECONDARY | 7/2017 | B - P&I | 2,057,500.00 |
| CIFGNA-348 | SECONDARY | 1/2017 | I - Interest | 52,500.00 |
| CIFGNA-348 | SECONDARY | 7/2017 | I - Interest | 52,500.00 |
| CIFGNA-348 | SECONDARY | 1/2018 | I - Interest | 52,500.00 |
| CIFGNA-523 | SECONDARY | 1/2017 | I - Interest | 8,875.00 |
| CIFGNA-523 | SECONDARY | 7/2017 | I - Interest | 8,875.00 |
| CIFGNA-523 | SECONDARY | 1/2018 | I - Interest | 8,875.00 |

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-323 | SECONDARY | 1/2017 | I - Interest | 137,418.75 |
| CIFGNA-323 | SECONDARY | 7/2017 | I - Interest | 137,418.75 |
| CIFGNA-323 | SECONDARY | 1/2018 | I - Interest | 137,418.75 |
| CIFGNA-1 | SECONDARY | 1/2017 | I - Interest | 130,725.00 |
| CIFGNA-1 | SECONDARY | 7/2017 | I - Interest | 130,725.00 |
| CIFGNA-1 | SECONDARY | 1/2018 | I - Interest | 130,725.00 |
| CIFGNA-35 | SECONDARY | 1/2017 | I - Interest | 131,250.00 |
| CIFGNA-35 | SECONDARY | 7/2017 | I - Interest | 131,250.00 |
| CIFGNA-35 | SECONDARY | 1/2018 | I - Interest | 131,250.00 |
| CIFGNA-351 | SECONDARY | 1/2017 | I - Interest | 26,250.00 |
| CIFGNA-351 | SECONDARY | 7/2017 | I - Interest | 26,250.00 |
| CIFGNA-351 | SECONDARY | 1/2018 | I - Interest | 26,250.00 |
| CIFGNA-127 | SECONDARY | 1/2017 | I - Interest | 30,162.50 |
| CIFGNA-127 | SECONDARY | 7/2017 | I - Interest | 30,162.50 |
| CIFGNA-127 | SECONDARY | 1/2018 | I - Interest | 30,162.50 |
| CIFGNA-141 | SECONDARY | 1/2017 | I - Interest | 26,250.00 |
| CIFGNA-141 | SECONDARY | 7/2017 | I - Interest | 26,250.00 |
| CIFGNA-141 | SECONDARY | 1/2018 | I - Interest | 26,250.00 |
| CIFGNA-530 | SECONDARY | 7/2016 | B - P&I | 1,380,664.94 |
| CIFGNA-148 | SECONDARY | 1/2017 | I - Interest | 171,543.75 |
| CIFGNA-148 | SECONDARY | 7/2017 | I - Interest | 171,543.75 |
| CIFGNA-122 | SECONDARY | 1/2017 | I - Interest | 28,025.00 |
| CIFGNA-122 | SECONDARY | 7/2017 | I - Interest | 28,025.00 |
| CIFGNA-122 | SECONDARY | 1/2018 | I - Interest | 28,025.00 |
| CIFGNA-148 | SECONDARY | 1/2018 | I - Interest | 171,543.75 |
| CIFGNA-149 | SECONDARY | 1/2017 | I - Interest | 142,406.25 |
| CIFGNA-149 | SECONDARY | 7/2017 | I - Interest | 142,406.25 |
| CIFGNA-149 | SECONDARY | 1/2018 | I - Interest | 142,406.25 |
| CIFGNA-146 | SECONDARY | 1/2017 | I - Interest | 23,750.00 |
| CIFGNA-146 | SECONDARY | 7/2017 | I - Interest | 23,750.00 |
| CIFGNA-146 | SECONDARY | 1/2018 | I - Interest | 23,750.00 |

## EXHIBIT E

## PRHTA POLICIES

| Policy Number | Primary/Secondary Market | Gross Par (000s) |
|---|---|---|
| 31145AG1 | SECONDARY | 190 |
| SM2007106 | SECONDARY | 23,565 |
| CIFGNA-255 | SECONDARY | 4,010 |
| CIFGNA-129 | SECONDARY | 1,000 |
| CIFGNA-131 | SECONDARY | 1,000 |
| CIFGNA-147 | SECONDARY | 9,000 |
| CIFGNA-158 | SECONDARY | 12,735 |
| CIFGNA-160 | SECONDARY | 1,000 |
| CIFGNA-161 | SECONDARY | 1,535 |
| CIFGNA-167 | SECONDARY | 3,000 |
| CIFGNA-168 | SECONDARY | 2,500 |
| CIFGNA-169 | SECONDARY | 2,000 |
| CIFGNA-170 | SECONDARY | 2,000 |
| CIFGNA-252 | SECONDARY | 1,750 |
| CIFGNA-254 | SECONDARY | 2,000 |
| CIFGNA-349 | SECONDARY | 1,180 |
| CIFGNA-388 | SECONDARY | 2,000 |
| CIFGNA-391 | SECONDARY | 2,855 |
| CIFGNA-392 | SECONDARY | 400 |
| CIFGNA-426 | SECONDARY | 950 |
| CIFGNA-461 | SECONDARY | 740 |
| D200727 | PRIMARY | 254,165 |
| CIFGNA-562 | PRIMARY | 181,375 |
| 39919G1 | SECONDARY | 5 |
| 39919H1 | SECONDARY | 255 |
| SM200710 | SECONDARY | 10,000 |
| SM200711 | SECONDARY | 2,550 |
| SM200712 | SECONDARY | 10,000 |
| SM200753 | SECONDARY | 8,740 |
| SM200754 | SECONDARY | 12,000 |
| SM2007101 | SECONDARY | 8,740 |
| SM2007112 | SECONDARY | 4,000 |
| SM2008333 | SECONDARY | 1,015 |
| SM2008334 | SECONDARY | 1,000 |
| SM2008338 | SECONDARY | 6,795 |
| SM2008347 | SECONDARY | 745 |
| SM2008348 | SECONDARY | 2,205 |
| SM2008349 | SECONDARY | 1,000 |

| Policy Number | Primary/Secondary Market | Gross Par (000s) |
|---|---|---|
| SM2008358 | SECONDARY | 1,285 |
| SM2008366 | SECONDARY | 555 |
| FMLI-0301-04177-PA | SECONDARY | 1,000 |
| FMLI-0301-04198-PA | SECONDARY | 530 |
| FMLI-0301-04218-PA | SECONDARY | 1,000 |
| FMLI-0301-04299-PA | SECONDARY | 1,000 |
| FMLI-0301-04321-PA | SECONDARY | 3,300 |
| FMNI-0301-04183-NY | SECONDARY | 3,000 |
| FMNI-0301-04196-NY | SECONDARY | 315 |
| FMNI-0301-04205-NY | SECONDARY | 1,000 |
| FMNI-0301-04210-NY | SECONDARY | 1,000 |
| FMNI-0301-04222-NY | SECONDARY | 1,900 |
| FMNI-0301-08098B-NY | SECONDARY | 1,800 |
| FMNI-0301-08098C-NY | SECONDARY | 1,690 |
| FMNI-0301-08098D-NY | SECONDARY | 2,440 |
| FMNI-0301-08102C-NY | SECONDARY | 50 |
| FMNI-0301-08112-NY | SECONDARY | 440 |
| FMNI-0301-08129B-NY | SECONDARY | 9,845 |
| FMNI-0301-08130-NY | SECONDARY | 11,700 |
| FMNI-0301-08148-NY | SECONDARY | 2,990 |
| FMSI-0301-08084-FL | SECONDARY | 500 |
| FMSI-0301-04134-FL | SECONDARY | 2,945 |
| CIFGNA-133 | SECONDARY | 400 |
| CIFGNA-398 | SECONDARY | 4,055 |
| CIFGNA-559 | SECONDARY | 1,000 |
| CIFGNA-560 | SECONDARY | 2,000 |
| CIFGNA-565 | SECONDARY | 850 |
| CIFGNA-567 | SECONDARY | 1,000 |
| CIFGNA-569 | SECONDARY | 1,000 |
| CIFGNA-604 | SECONDARY | 1,000 |
| CIFGNA-612 | SECONDARY | 3,850 |
| CIFGNA-615 | SECONDARY | 1,055 |

## EXHIBIT F

## PRHTA CLAIMS PAID

| Official Policy | Prim / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-255 | SECONDARY | 7/2017 | I - Interest | 100,250.00 |
| CIFGNA-255 | SECONDARY | 1/2018 | I - Interest | 100,250.00 |
| SM2007106 | SECONDARY | 7/2017 | I - Interest | 648,037.50 |
| SM2007106 | SECONDARY | 1/2018 | I - Interest | 648,037.50 |
| 31145AG1 | SECONDARY | 7/2017 | I - Interest | 4,750.00 |
| 31145AG1 | SECONDARY | 1/2018 | I - Interest | 4,750.00 |
| CIFGNA-129 | SECONDARY | 7/2017 | I - Interest | 23,750.00 |
| CIFGNA-129 | SECONDARY | 1/2018 | I - Interest | 23,750.00 |
| CIFGNA-131 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| CIFGNA-131 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| CIFGNA-147 | SECONDARY | 7/2017 | I - Interest | 258,750.00 |
| CIFGNA-147 | SECONDARY | 1/2018 | I - Interest | 258,750.00 |
| CIFGNA-158 | SECONDARY | 7/2017 | I - Interest | 318,375.00 |
| CIFGNA-158 | SECONDARY | 1/2018 | I - Interest | 318,375.00 |
| CIFGNA-160 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| CIFGNA-160 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| CIFGNA-161 | SECONDARY | 7/2017 | I - Interest | 38,375.00 |
| CIFGNA-161 | SECONDARY | 1/2018 | I - Interest | 38,375.00 |
| CIFGNA-167 | SECONDARY | 7/2017 | I - Interest | 75,000.00 |
| CIFGNA-167 | SECONDARY | 1/2018 | I - Interest | 75,000.00 |
| CIFGNA-168 | SECONDARY | 7/2017 | I - Interest | 62,500.00 |
| CIFGNA-168 | SECONDARY | 1/2018 | I - Interest | 62,500.00 |
| CIFGNA-169 | SECONDARY | 7/2017 | I - Interest | 57,500.00 |
| CIFGNA-169 | SECONDARY | 1/2018 | I - Interest | 57,500.00 |
| CIFGNA-170 | SECONDARY | 7/2017 | I - Interest | 57,500.00 |
| CIFGNA-170 | SECONDARY | 1/2018 | I - Interest | 57,500.00 |
| CIFGNA-252 | SECONDARY | 7/2017 | I - Interest | 43,750.00 |
| CIFGNA-252 | SECONDARY | 1/2018 | I - Interest | 43,750.00 |
| CIFGNA-254 | SECONDARY | 7/2017 | I - Interest | 50,000.00 |
| CIFGNA-254 | SECONDARY | 1/2018 | I - Interest | 50,000.00 |
| CIFGNA-349 | SECONDARY | 7/2017 | I - Interest | 29,500.00 |
| CIFGNA-349 | SECONDARY | 1/2018 | I - Interest | 29,500.00 |
| CIFGNA-388 | SECONDARY | 7/2017 | I - Interest | 57,500.00 |
| CIFGNA-388 | SECONDARY | 1/2018 | I - Interest | 57,500.00 |
| CIFGNA-391 | SECONDARY | 7/2017 | I - Interest | 71,375.00 |
| CIFGNA-391 | SECONDARY | 1/2018 | I - Interest | 71,375.00 |
| CIFGNA-392 | SECONDARY | 7/2017 | I - Interest | 10,000.00 |

| Official Policy | Prim / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-392 | SECONDARY | 1/2018 | I - Interest | 10,000.00 |
| CIFGNA-426 | SECONDARY | 7/2017 | I - Interest | 23,750.00 |
| CIFGNA-426 | SECONDARY | 1/2018 | I - Interest | 23,750.00 |
| CIFGNA-461 | SECONDARY | 7/2017 | I - Interest | 18,500.00 |
| CIFGNA-461 | SECONDARY | 1/2018 | I - Interest | 18,500.00 |
| CIFGNA-398 | SECONDARY | 7/2017 | I - Interest | 96,306.25 |
| CIFGNA-398 | SECONDARY | 1/2018 | I - Interest | 96,306.25 |
| CIFGNA-615 | SECONDARY | 7/2017 | I - Interest | 26,375.00 |
| CIFGNA-615 | SECONDARY | 1/2018 | I - Interest | 26,375.00 |
| CIFGNA-612 | SECONDARY | 7/2017 | I - Interest | 96,250.00 |
| CIFGNA-612 | SECONDARY | 1/2018 | I - Interest | 96,250.00 |
| SM2007112 | SECONDARY | 7/2017 | I - Interest | 110,000.00 |
| SM2007112 | SECONDARY | 1/2018 | I - Interest | 110,000.00 |
| SM2007101 | SECONDARY | 7/2017 | I - Interest | 240,350.00 |
| SM2007101 | SECONDARY | 1/2018 | I - Interest | 240,350.00 |
| SM2008366 | SECONDARY | 7/2017 | I - Interest | 13,875.00 |
| SM2008366 | SECONDARY | 1/2018 | I - Interest | 13,875.00 |
| SM2008334 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| SM2008334 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| SM2008338 | SECONDARY | 7/2017 | I - Interest | 169,875.00 |
| SM2008338 | SECONDARY | 1/2018 | I - Interest | 169,875.00 |
| SM2008333 | SECONDARY | 7/2017 | I - Interest | 25,375.00 |
| SM2008333 | SECONDARY | 1/2018 | I - Interest | 25,375.00 |
| SM2008348 | SECONDARY | 7/2017 | I - Interest | 55,125.00 |
| SM2008348 | SECONDARY | 1/2018 | I - Interest | 55,125.00 |
| CIFGNA-133 | SECONDARY | 7/2017 | I - Interest | 10,000.00 |
| CIFGNA-133 | SECONDARY | 1/2018 | I - Interest | 10,000.00 |
| CIFGNA-559 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| CIFGNA-559 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| CIFGNA-604 | SECONDARY | 7/2017 | I - Interest | 24,000.00 |
| CIFGNA-604 | SECONDARY | 1/2018 | I - Interest | 24,000.00 |
| CIFGNA-565 | SECONDARY | 7/2017 | I - Interest | 21,250.00 |
| CIFGNA-565 | SECONDARY | 1/2018 | I - Interest | 21,250.00 |
| CIFGNA-569 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| CIFGNA-569 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| CIFGNA-567 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| CIFGNA-567 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| CIFGNA-560 | SECONDARY | 7/2017 | I - Interest | 50,000.00 |
| CIFGNA-560 | SECONDARY | 1/2018 | I - Interest | 50,000.00 |
| CIFGNA-562 | PRIMARY | 7/2017 | B - P&I | 5,706,500.00 |
| CIFGNA-562 | PRIMARY | 1/2018 | I - Interest | 4,680,250.00 |

| Official Policy | Prim / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| SM2008349 | SECONDARY | 7/2017 | I - Interest | 17,587.50 |
| SM2008349 | SECONDARY | 1/2018 | I - Interest | 17,587.50 |
| SM2008347 | SECONDARY | 7/2017 | I - Interest | 13,102.69 |
| SM2008347 | SECONDARY | 1/2018 | I - Interest | 13,102.69 |
| SM2008358 | SECONDARY | 7/2017 | I - Interest | 22,599.94 |
| SM2008358 | SECONDARY | 1/2018 | I - Interest | 22,599.94 |
| SM200710 | SECONDARY | 7/2017 | I - Interest | 275,000.00 |
| SM200710 | SECONDARY | 1/2018 | I - Interest | 275,000.00 |
| SM200753 | SECONDARY | 7/2017 | I - Interest | 240,350.00 |
| SM200753 | SECONDARY | 1/2018 | I - Interest | 240,350.00 |
| SM200754 | SECONDARY | 7/2017 | I - Interest | 330,000.00 |
| SM200754 | SECONDARY | 1/2018 | I - Interest | 330,000.00 |
| SM200711 | SECONDARY | 7/2017 | I - Interest | 52,593.75 |
| SM200711 | SECONDARY | 1/2018 | I - Interest | 52,593.75 |
| SM200712 | SECONDARY | 7/2017 | I - Interest | 275,000.00 |
| SM200712 | SECONDARY | 1/2018 | I - Interest | 275,000.00 |
| D200727 | PRIMARY | 7/2017 | I - Interest | 6,671,831.25 |
| D200727 | PRIMARY | 1/2018 | I - Interest | 6,671,831.25 |
| 39919G1 | SECONDARY | 7/2017 | I - Interest | 125 |
| 39919G1 | SECONDARY | 1/2018 | I - Interest | 125 |
| 39919H1 | SECONDARY | 7/2017 | I - Interest | 6,056.25 |
| 39919H1 | SECONDARY | 1/2018 | I - Interest | 6,056.25 |
| FMNI-0301-04196-NY | SECONDARY | 7/2017 | I - Interest | 7,875.00 |
| FMNI-0301-04196-NY | SECONDARY | 1/2018 | I - Interest | 7,875.00 |
| FMNI-0301-04205-NY | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| FMNI-0301-04205-NY | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| FMNI-0301-04210-NY | SECONDARY | 7/2017 | I - Interest | 23,750.00 |
| FMNI-0301-04210-NY | SECONDARY | 1/2018 | I - Interest | 23,750.00 |
| FMNI-0301-08148-NY | SECONDARY | 7/2017 | I - Interest | 52,586.62 |
| FMNI-0301-08148-NY | SECONDARY | 1/2018 | I - Interest | 52,586.62 |
| FMLI-0301-04299-PA | SECONDARY | 7/2017 | I - Interest | 23,750.00 |
| FMLI-0301-04299-PA | SECONDARY | 1/2018 | I - Interest | 23,750.00 |
| FMNI-0301-08098C-NY | SECONDARY | 7/2017 | I - Interest | 28,307.50 |
| FMNI-0301-08098C-NY | SECONDARY | 1/2018 | I - Interest | 28,307.50 |
| FMNI-0301-08098D-NY | SECONDARY | 7/2017 | I - Interest | 40,870.00 |
| FMNI-0301-08098D-NY | SECONDARY | 1/2018 | I - Interest | 40,870.00 |
| FMNI-0301-08112-NY | SECONDARY | 7/2017 | I - Interest | 9,680.00 |
| FMNI-0301-08112-NY | SECONDARY | 1/2018 | I - Interest | 9,680.00 |
| FMLI-0301-04177-PA | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| FMLI-0301-04177-PA | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| FMNI-0301-04222-NY | SECONDARY | 7/2017 | I - Interest | 45,125.00 |

F-3

| Official Policy | Prim / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| FMNI-0301-04222-NY | SECONDARY | 1/2018 | I - Interest | 45,125.00 |
| FMNI-0301-08130-NY | SECONDARY | 7/2017 | I - Interest | 292,500.00 |
| FMNI-0301-08130-NY | SECONDARY | 1/2018 | I - Interest | 292,500.00 |
| FMLI-0301-04218-PA | SECONDARY | 7/2017 | I - Interest | 23,750.00 |
| FMLI-0301-04218-PA | SECONDARY | 1/2018 | I - Interest | 23,750.00 |
| FMNI-0301-04183-NY | SECONDARY | 7/2017 | I - Interest | 75,000.00 |
| FMNI-0301-04183-NY | SECONDARY | 1/2018 | I - Interest | 75,000.00 |
| FMNI-0301-08098B-NY | SECONDARY | 7/2017 | I - Interest | 30,150.00 |
| FMNI-0301-08098B-NY | SECONDARY | 1/2018 | I - Interest | 30,150.00 |
| FMNI-0301-08102C-NY | SECONDARY | 7/2017 | I - Interest | 837.50 |
| FMNI-0301-08102C-NY | SECONDARY | 1/2018 | I - Interest | 837.50 |
| FMLI-0301-04198-PA | SECONDARY | 7/2017 | I - Interest | 12,587.50 |
| FMLI-0301-04198-PA | SECONDARY | 1/2018 | I - Interest | 12,587.50 |
| FMNI-0301-08129B-NY | SECONDARY | 7/2017 | I - Interest | 246,125.00 |
| FMNI-0301-08129B-NY | SECONDARY | 1/2018 | I - Interest | 246,125.00 |
| FMSI-0301-08084-FL | SECONDARY | 7/2017 | I - Interest | 12,500.00 |
| FMSI-0301-08084-FL | SECONDARY | 1/2018 | I - Interest | 12,500.00 |
| FMLI-0301-04321-PA | SECONDARY | 7/2017 | I - Interest | 78,375.00 |
| FMLI-0301-04321-PA | SECONDARY | 1/2018 | I - Interest | 78,375.00 |
| FMSI-0301-04134-FL | SECONDARY | 7/2017 | I - Interest | 73,625.00 |
| FMSI-0301-04134-FL | SECONDARY | 1/2018 | I - Interest | 73,625.00 |

## EXHIBIT G

## PRCCDA POLICIES

| Original Policy Number | Primary/Secondary Market | Gross Par (000s) |
|---|---|---|
| CIFGNA-853 | PRIMARY | 152,250 |

## EXHIBIT H

### PRCCDA CLAIMS PAID

| Official Policy | Prim/Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-853 | PRIMARY | 7/2017 | I - Interest | 199,417.70 |
| CIFGNA-853 | PRIMARY | 1/2018 | I - Interest | 3,473,312.50 |

## EXHIBIT I

### PRIFA POLICIES

| Original Policy Number | Primary/Secondary Market | Gross Par (000s) |
|---|---|---|
| 39450A1 | SECONDARY | 215 |
| 39450A2 | SECONDARY | 515 |
| SM2007111 | SECONDARY | 1,025 |
| SM2007113 | SECONDARY | 1,000 |
| SM2007135 | SECONDARY | 1,000 |
| SM2007154 | SECONDARY | 1,000 |
| CIFGNA-420 | SECONDARY | 4,020 |
| CIFGNA-421 | SECONDARY | 4,750 |
| CIFGNA-422 | SECONDARY | 500 |
| CIFGNA-640 | SECONDARY | 1,000 |
| CIFGNA-641 | SECONDARY | 3,000 |

## EXHIBIT J

## PRIFA CLAIMS PAID

| Official Policy | Prim/Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| 39450A1 | SECONDARY | 1/2016 | I - Interest | 5,375.00 |
| 39450A1 | SECONDARY | 7/2016 | I - Interest | 5,375.00 |
| 39450A1 | SECONDARY | 1/2017 | I - Interest | 5,375.00 |
| 39450A1 | SECONDARY | 7/2017 | I - Interest | 5,375.00 |
| 39450A1 | SECONDARY | 1/2018 | I - Interest | 5,375.00 |
| 39450A2 | SECONDARY | 1/2016 | I - Interest | 12,875.00 |
| 39450A2 | SECONDARY | 7/2016 | I - Interest | 12,875.00 |
| 39450A2 | SECONDARY | 1/2017 | I - Interest | 12,875.00 |
| 39450A2 | SECONDARY | 7/2017 | I - Interest | 12,875.00 |
| SM2007111 | SECONDARY | 1/2016 | I - Interest | 25,625.00 |
| SM2007111 | SECONDARY | 7/2016 | I - Interest | 25,625.00 |
| SM2007111 | SECONDARY | 1/2017 | I - Interest | 25,625.00 |
| SM2007111 | SECONDARY | 7/2017 | I - Interest | 25,625.00 |
| SM2007111 | SECONDARY | 1/2018 | I - Interest | 25,625.00 |
| SM2007113 | SECONDARY | 1/2016 | I - Interest | 25,000.00 |
| SM2007113 | SECONDARY | 7/2016 | I - Interest | 25,000.00 |
| SM2007113 | SECONDARY | 1/2017 | I - Interest | 25,000.00 |
| SM2007113 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| SM2007113 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| 39450A2 | SECONDARY | 1/2018 | I - Interest | 12,875.00 |
| SM2007135 | SECONDARY | 1/2016 | I - Interest | 25,000.00 |
| SM2007135 | SECONDARY | 7/2016 | I - Interest | 25,000.00 |
| SM2007135 | SECONDARY | 1/2017 | I - Interest | 25,000.00 |
| CIFGNA-421 | SECONDARY | 1/2016 | I - Interest | 118,750.00 |
| CIFGNA-421 | SECONDARY | 7/2016 | I - Interest | 118,750.00 |
| CIFGNA-422 | SECONDARY | 1/2016 | I - Interest | 12,500.00 |
| CIFGNA-422 | SECONDARY | 7/2016 | I - Interest | 12,500.00 |
| SM2007135 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| SM2007135 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| SM2007154 | SECONDARY | 1/2016 | I - Interest | 25,000.00 |
| SM2007154 | SECONDARY | 7/2016 | I - Interest | 25,000.00 |
| SM2007154 | SECONDARY | 1/2017 | I - Interest | 25,000.00 |
| SM2007154 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| SM2007154 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| CIFGNA-641 | SECONDARY | 1/2016 | I - Interest | 75,000.00 |
| CIFGNA-641 | SECONDARY | 7/2016 | I - Interest | 75,000.00 |
| CIFGNA-420 | SECONDARY | 1/2016 | I - Interest | 100,500.00 |
| CIFGNA-420 | SECONDARY | 1/2017 | I - Interest | 100,500.00 |

J-1

| Official Policy | Prim/Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-420 | SECONDARY | 7/2017 | I - Interest | 100,500.00 |
| CIFGNA-420 | SECONDARY | 1/2018 | I - Interest | 100,500.00 |
| CIFGNA-422 | SECONDARY | 1/2017 | I - Interest | 12,500.00 |
| CIFGNA-422 | SECONDARY | 7/2017 | I - Interest | 12,500.00 |
| CIFGNA-422 | SECONDARY | 1/2018 | I - Interest | 12,500.00 |
| CIFGNA-420 | SECONDARY | 7/2016 | I - Interest | 100,500.00 |
| CIFGNA-421 | SECONDARY | 1/2017 | I - Interest | 118,750.00 |
| CIFGNA-421 | SECONDARY | 7/2017 | I - Interest | 118,750.00 |
| CIFGNA-421 | SECONDARY | 1/2018 | I - Interest | 118,750.00 |
| CIFGNA-641 | SECONDARY | 1/2017 | I - Interest | 75,000.00 |
| CIFGNA-641 | SECONDARY | 7/2017 | I - Interest | 75,000.00 |
| CIFGNA-641 | SECONDARY | 1/2018 | I - Interest | 75,000.00 |
| CIFGNA-640 | SECONDARY | 1/2017 | I - Interest | 25,000.00 |
| CIFGNA-640 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| CIFGNA-640 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |
| CIFGNA-640 | SECONDARY | 1/2016 | I - Interest | 25,000.00 |
| CIFGNA-640 | SECONDARY | 7/2016 | I - Interest | 25,000.00 |

## EXHIBIT K

## PREPA POLICIES

| Original Policy Number | Primary/Secondary Market | Gross Par (000s) |
|---|---|---|
| CIFGNA-1671 | PRIMARY | 60,515 |
| CIFGNA-341 | PRIMARY | 36,800 |
| SM2007108 | SECONDARY | 1,000 |
| SM2007109 | SECONDARY | 1,250 |
| SM2008384 | SECONDARY | 2,000 |
| FMNI-0301-08099A-NY | SECONDARY | 3,000 |
| FMNI-0301-08102A-NY | SECONDARY | 2,865 |
| FMNI-0301-08140-NY | SECONDARY | 2,500 |
| FMNI-0301-08178-NY | SECONDARY | 250 |

## EXHIBIT L

## PREPA CLAIMS PAID

| Official Policy | Prim/Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| CIFGNA-1671 | PRIMARY | 7/2017 | I - Interest | 1,396,643.75 |
| CIFGNA-1671 | PRIMARY | 1/2018 | I - Interest | 1,396,643.75 |
| SM2008384 | SECONDARY | 7/2017 | I - Interest | 52,500.00 |
| SM2008384 | SECONDARY | 1/2018 | I - Interest | 52,500.00 |
| FMNI-0301-08102A-NY | SECONDARY | 7/2017 | I - Interest | 71,625.00 |
| FMNI-0301-08102A-NY | SECONDARY | 1/2018 | I - Interest | 71,625.00 |
| FMNI-0301-08140-NY | SECONDARY | 7/2017 | I - Interest | 62,500.00 |
| FMNI-0301-08140-NY | SECONDARY | 1/2018 | I - Interest | 62,500.00 |
| SM2007109 | SECONDARY | 7/2017 | I - Interest | 31,250.00 |
| SM2007109 | SECONDARY | 1/2018 | I - Interest | 31,250.00 |
| CIFGNA-341 | PRIMARY | 7/2017 | I - Interest | 904,375.00 |
| CIFGNA-341 | PRIMARY | 1/2018 | I - Interest | 904,375.00 |
| FMNI-0301-08178-NY | SECONDARY | 7/2017 | I - Interest | 6,250.00 |
| FMNI-0301-08178-NY | SECONDARY | 1/2018 | I - Interest | 6,250.00 |
| SM2007108 | SECONDARY | 7/2017 | I - Interest | 25,000.00 |
| SM2007108 | SECONDARY | 1/2018 | I - Interest | 25,000.00 |

## EXHIBIT M

 **POPULAR.**

PO Box 362708
San Juan, Puerto Rico 00936-2708
Telephone 787-765-9800

## NOTICE OF CLAIM AND CERTIFICATE

Assured Guaranty Corp.
31 West 52nd Street
New York, NY 10019
Attention: Barbara Boulle
E-Mail: bboulle@assuredguaranty.com

The undersigned, a duly authorized officer of Banco Popular de Puerto Rico, in its capacity as paying agent and registrar (in such capacity, the "**Paying Agent**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Corp. ("**AGC**"), with reference to Financial Guaranty Insurance Policy No. **D-2006-192 dated August 10, 2006** (the "**Policy**"), issued in respect of the Bonds, that:

(i)     The Paying Agent is the duly appointed Paying Agent for the Bonds under a bond resolution duly adopted by the Secretary of the Treasury and approved by the Governor (the "**Bond Resolution**"), pursuant to which the above-referenced Bonds were issued by the Commonwealth of Puerto Rico (the "**Issuer**").

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) with the Paying Agent and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Bond Resolution will be **$0.00** (such amount, the "**Shortfall**") less than the **interest of $550,105.05** (the "**Scheduled Payments**") Due for Payment on the Bonds on July 1, 2016 (the "**Payment Date**").

(iii)   The Paying Agent is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)    The Paying Agent agrees that, following its receipt of funds from AGC, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Paying Agent, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     The Paying Agent, on behalf of the Holders, hereby assigns to AGC the rights of the Holders with respect to Bonds to the extent of any payments made by AGC under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGC in respect of such payments. Payments to AGC in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Paying Agent shall take such action and

Exhibit 2 - Proof of Claim Nos. 57622 and 33081    Page 58 of 88

deliver such instruments as may be reasonably requested or required by AGC to effectuate the purpose or provisions of this clause (v).

(vi)    The Paying Agent, on behalf of the Holders, hereby acknowledges and agrees that, so long as AGC shall not be in default in its payment obligations under the Policy, AGC may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an **"Insolvency Proceeding"**), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a **"Preference Claim"**), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGC, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Paying Agent hereby agrees that AGC shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)    AGC shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy.

(viii) Payment should be made by wire transfer directed to

**Banco Popular de Puerto Rico**
**209 Munoz Rivera Ave.**
**San Juan, PR 00918**

**Ref: Commonwealth of PR PIB 2006 A**
**Attn: Jorge Velez (787) 765-9800 ext. 505902**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Paying Agent to AGC.

IN WITNESS WHEREOF, the Paying Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of June, 2016.

Banco Popular de Puerto Rico, as Paying Agent

By:

Name: Jorge A. Velez

Title: Assistant Vice President

---

For AGC or
Fiscal Agent Use Only
Wire transfer sent on _____   By _____
Confirmation Number _____

Appendix I

| Description of Bond Issue | Cusip | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Debt Service Payment for 7/1/2016 | | | Insurer | Policy No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Principal | Interest | Total | | |
| PIB 2006 A | 74514LJR9 | 30,005,000.00 | 7/1/2018 | 1.151% | 30,005,000.00 | - | 172,678.78 | 172,678.78 | AGC | D-2006-192 |
| PIB 2006 A | 74514LJS7 | 31,280,000.00 | 7/1/2019 | 1.171% | 31,280,000.00 | - | 183,144.40 | 183,144.40 | AGC | D-2006-192 |
| PIB 2006 A | 74514LJT5 | 32,625,000.00 | 7/1/2020 | 1.191% | 32,625,000.00 | - | 194,281.88 | 194,281.88 | AGC | D-2006-192 |
| | $ | 93,910,000.00 | | | $ 93,910,000.00 | $ - | $ 550,105.05 | $ 550,105.05 | | |

 **POPULAR.**

PO Box 362708
San Juan, Puerto Rico 00936-2708
Telephone 787-765-9800

### NOTICE OF CLAIM AND CERTIFICATE

Assured Guaranty Corp.
31 West 52nd Street
New York, NY 10019
Attention: Barbara Boulle
E-Mail: bboulle@assuredguaranty.com

The undersigned, a duly authorized officer of Banco Popular de Puerto Rico, in its capacity as paying agent and registrar (in such capacity, the "**Paying Agent**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Corp. ("**AGC**"), with reference to Financial Guaranty Insurance Policy No. **D-2007-248 dated October 16, 2007** (the "**Policy**"), issued in respect of the Bonds, that:

(i)     The Paying Agent is the duly appointed Paying Agent for the Bonds under a bond resolution duly adopted by the Secretary of the Treasury and approved by the Governor (the "**Bond Resolution**"), pursuant to which the above-referenced Bonds were issued by the Commonwealth of Puerto Rico (the "**Issuer**").

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) with the Paying Agent and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Bond Resolution will be **$0.00** (such amount, the "**Shortfall**") less than the **interest of $623,500.00** (the "**Scheduled Payments**") Due for Payment on the Bonds on July 1, 2016 (the "**Payment Date**").

(iii)     The Paying Agent is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Paying Agent agrees that, following its receipt of funds from AGC, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Paying Agent, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     The Paying Agent, on behalf of the Holders, hereby assigns to AGC the rights of the Holders with respect to Bonds to the extent of any payments made by AGC under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGC in respect of such payments. Payments to AGC in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds.  The Paying Agent shall take such action and

deliver such instruments as may be reasonably requested or required by AGC to effectuate the purpose or provisions of this clause (v).

(vi)    The Paying Agent, on behalf of the Holders, hereby acknowledges and agrees that, so long as AGC shall not be in default in its payment obligations under the Policy, AGC may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an **"Insolvency Proceeding"**), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a **"Preference Claim"**), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGC, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, and without limiting the foregoing, the Paying Agent hereby agrees that AGC shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   AGC shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy.

(viii) Payment should be made by wire transfer directed to

**Banco Popular de Puerto Rico**
**209 Munoz Rivera Ave.**
**San Juan, PR 00918**

██████████████████

**Ref: Commonwealth of PR PIRB 2007 A**
**Attn: Jorge Velez (787) 765-9800 ext. 505902**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Paying Agent to AGC.

IN WITNESS WHEREOF, the Paying Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of June, 2016.

Banco Popular de Puerto Rico, as Paying Agent

By _____

Name: Jorge A. Vélez

Title: Assistant Vice President

---

For AGC or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

Appendix I

| | | | | | | Debt Service Payment for 7/1/2016 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description of Bond Issue | Cusip | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Principal | Interest | Total | Insurer | Policy No. |
| PIRB 2007-A | 74514LNB9 | 24,940,000.00 | 7/1/2017 | 5.000% | 24,940,000.00 | - | 623,500.00 | 623,500.00 | AGC | D-2007-248 |
| | | $ 24,940,000.00 | | | $ 24,940,000.00 | $ - | $ 623,500.00 | $ 623,500.00 | | |

 **POPULAR.**

PO Box 362708
San Juan, Puerto Rico 00936-2708
Telephone 787-765-9800

## NOTICE OF CLAIM AND CERTIFICATE

Assured Guaranty Corp.
31 West 52nd Street
New York, NY 10019
Attention: Barbara Boulle
E-Mail: bboulle@assuredguaranty.com

The undersigned, a duly authorized officer of Banco Popular de Puerto Rico, in its capacity as paying agent and registrar (in such capacity, the **"Paying Agent"**) for the bonds listed on Appendix I hereto (collectively, the **"Bonds"**), hereby certifies to Assured Guaranty Corp. (**"AGC"**), with reference to Financial Guaranty Insurance Policy No. **D-2008-352 dated May 7, 2008** (the **"Policy"**), issued in respect of the Bonds, that:

(i)     The Paying Agent is the duly appointed Paying Agent for the Bonds under a bond resolution duly adopted by the Secretary of the Treasury and approved by the Governor (the **"Bond Resolution"**), pursuant to which the above-referenced Bonds were issued by the Commonwealth of Puerto Rico (the **"Issuer"**).

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) with the Paying Agent and available for distribution to the registered holders of the Bonds (the "Holders") pursuant to the Bond Resolution will be **$0.00** (such amount, the "Shortfall") less than the **interest and principal of $72,240,975.00** (the **"Scheduled Payments"**) Due for Payment on the Bonds on July 1, 2016 (the **"Payment Date"**).

(iii)     The Paying Agent is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Paying Agent agrees that, following its receipt of funds from AGC, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Paying Agent, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     The Paying Agent, on behalf of the Holders, hereby assigns to AGC the rights of the Holders with respect to Bonds to the extent of any payments made by AGC under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGC in respect of such payments. Payments to AGC in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled

Payments in respect of the Bonds. The Paying Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGC to effectuate the purpose or provisions of this clause (v).

(vi)     The Paying Agent, on behalf of the Holders, hereby acknowledges and agrees that, so long as AGC shall not be in default in its payment obligations under the Policy, AGC may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGC, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Paying Agent hereby agrees that AGC shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)    AGC shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy.

(viii) Payment should be made by wire transfer directed to

**Banco Popular de Puerto Rico**
**209 Munoz Rivera Ave.**
**San Juan, PR 00918**

**Ref: Commonwealth of PR PIRB 2008 A**
**Attn: Jorge Velez (787) 765-9800 ext. 505902**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Paying Agent to AGC.

IN WITNESS WHEREOF, the Paying Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of June, 2016.

Banco Popular de Puerto Rico, as Paying Agent

By _____

Name: Jorge A. Vélez

Title: Assistant Vice President

---

For AGC or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

Appendix I

| Description of Bond Issue | Cusip | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Debt Service Payment for 7/1/2016 | | Total | Insurer | Policy No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Principal | Interest | | | |
| PIRB 2008-A | 74514LTJ6 | 53,955,000.00 | 7/1/2016 | 5.000% | 53,955,000.00 | 53,955,000.00 | 1,348,875.00 | 55,303,875.00 | AGC | D-2008-352 |
| PIRB 2008-A | 74514LTL1 | 16,605,000.00 | 7/1/2016 | 4.000% | 16,605,000.00 | 16,605,000.00 | 332,100.00 | 16,937,100.00 | AGC | D-2008-352 |
| | | $ 70,560,000.00 | | | $ 70,560,000.00 | $ 70,560,000.00 | $ 1,680,975.00 | $ 72,240,975.00 | | |

## NOTICE OF CLAIM AND CERTIFICATE

Assured Guaranty Corp.
1633 Broadway
New York, NY 10019
Attention: Dan Weinberg
E-Mail: dweinberg@agltd.com

    The undersigned, a duly authorized officer of Banco Popular de Puerto Rico, in its capacity as paying agent and registrar (in such capacity, the "**Paying Agent**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Corp. ("**AGC**"), with reference to Financial Guaranty Insurance Policy No. **D-2006-192 dated August 10, 2006** (the "**Policy**"), issued in respect of the Bonds, that:

    (i)    The Paying Agent is the duly appointed Paying Agent for the Bonds under a bond resolution duly adopted by the Secretary of the Treasury and approved by the Governor (the "**Bond Resolution**"), pursuant to which the above-referenced Bonds were issued by the Commonwealth of Puerto Rico (the "**Issuer**").

    (ii)    The sum of all amounts on deposit (or scheduled to be on deposit) with the Paying Agent and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Bond Resolution will be **$0.00** (such amount, the "**Shortfall**") less than the interest of **$998,055.75** (the "**Scheduled Payments**") Due for Payment on the Bonds on January 1, 2017 (the "**Payment Date**").

    (iii)    The Paying Agent is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

    (iv)    The Paying Agent agrees that, following its receipt of funds from AGC, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Paying Agent, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

    (v)    The Paying Agent, on behalf of the Holders, hereby assigns to AGC the rights of the Holders with respect to Bonds to the extent of any payments made by AGC under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGC in respect of such payments. Payments to AGC in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Paying Agent shall take such action and

deliver such instruments as may be reasonably requested or required by AGC to effectuate the purpose or provisions of this cluate (v).

(vi)     The Paying Agent, on behalf of the Holders, hereby acknowledges and agrees that, so long as AGC shall not be in default in its payment obligations under the Policy, AGC may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGC, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, and without limiting the foregoing, the Paying Agent hereby agrees that AGC shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)    AGC shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy.

(viii) Payment should be made by wire transfer directed to

**Banco Popular de Puerto Rico**
**209 Munoz Rivera Ave.**
**San Juan, PR 00918**

**Ref: Commonwealth of PR PIB 2006 A**
**Attn: Jorge Velez (787) 765-9800 ext. 505902**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Paying Agent to AGC.

IN WITNESS WHEREOF, the Paying Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of December, 2016.

Banco Popular de Puerto Rico, as
Paying Agent
By
Name: Jorge A. Vélez
Title: Assistant Vice President

For AGC or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

Appendix I

| Description of Bond Issue | Cusip | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Debt Service Payment for 1/1/2017 | | | Insurer | Policy No. |
| | | | | | | Principal | Interest | Total | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PIB 2006 A | 74514LJR9 | 30,005,000.00 | 7/1/2018 | 2.105% | 30,005,000.00 | - | 315,802.63 | 315,802.63 | ASSURED GUARANTY CORP | D-2006-192 |
| PIB 2006 A | 74514LJS7 | 31,280,000.00 | 7/1/2019 | 2.125% | 31,280,000.00 | - | 332,350.00 | 332,350.00 | ASSURED GUARANTY CORP | D-2006-192 |
| PIB 2006 A | 74514LJT5 | 32,625,000.00 | 7/1/2020 | 2.145% | 32,625,000.00 | - | 349,903.13 | 349,903.13 | ASSURED GUARANTY CORP | D-2006-192 |
| | | $ 93,910,000.00 | | | $ 93,910,000.00 | $ - | $ 998,055.75 | $ 998,055.75 | | |

## NOTICE OF CLAIM AND CERTIFICATE

Assured Guaranty Corp.
1633 Broadway
New York, NY 10019
Attention: Dan Weinberg
E-Mail: dweinberg@agltd.com

The undersigned, a duly authorized officer of Banco Popular de Puerto Rico, in its capacity as paying agent and registrar (in such capacity, the "**Paying Agent**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Corp. ("**AGC**"), with reference to Financial Guaranty Insurance Policy No. **D-2007-248 dated October 16, 2007** (the "**Policy**"), issued in respect of the Bonds, that:

(i)    The Paying Agent is the duly appointed Paying Agent for the Bonds under a bond resolution duly adopted by the Secretary of the Treasury and approved by the Governor (the "**Bond Resolution**"), pursuant to which the above-referenced Bonds were issued by the Commonwealth of Puerto Rico (the "**Issuer**").

(ii)   The sum of all amounts on deposit (or scheduled to be on deposit) with the Paying Agent and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Bond Resolution will be **$0.00** (such amount, the "**Shortfall**") less than the interest of **$623,500.00** (the "**Scheduled Payments**") Due for Payment on the Bonds on January 1, 2017 (the "**Payment Date**").

(iii)  The Paying Agent is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)   The Paying Agent agrees that, following its receipt of funds from AGC, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Paying Agent, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)    The Paying Agent, on behalf of the Holders, hereby assigns to AGC the rights of the Holders with respect to Bonds to the extent of any payments made by AGC under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGC in respect of such payments. Payments to AGC in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Paying Agent shall take such action and

deliver such instruments as may be reasonably requested or required by AGC to effectuate the purpose or provisions of this clause (v).

(vi)     The Paying Agent, on behalf of the Holders, hereby acknowledges and agrees that, so long as AGC shall not be in default in its payment obligations under the Policy, AGC may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an **"Insolvency Proceeding"**), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a **"Preference Claim"**), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGC, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, and without limiting the foregoing, the Paying Agent hereby agrees that AGC shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent   it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)     AGC shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy.

(viii) Payment should be made by wire transfer directed to

**Banco Popular de Puerto Rico**
**209 Munoz Rivera Ave.**
**San Juan, PR 00918**

███████████████████████

**Ref: Commonwealth of PR PIRB 2007 A**
**Attn: Jorge Velez (787) 765-9800 ext. 505902**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Paying Agent to AGC.

IN WITNESS WHEREOF, the Paying Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of December, 2016.

> Banco Popular de Puerto Rico, as
> Paying Agent
> By_____
> Name: Jorge A. Vélez
> Title: Assistant Vice President

---

For AGC or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

Appendix I

| | | | | | | | Debt Service Payment for 1/1/2017 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description of Bond Issue | Cusip | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Principal ' | Interest | Total | Insurer | Policy No. |
| PIRB 2007-A | 74514LNB9 | 24,940,000.00 | 7/1/2017 | 5.000% | 24,940,000.00 | | 623,500.00 | 623,500.00 | ASSURED GUARANTY MUNICIPAL CORP | D-2007-248 |
| Total | | $ 24,940,000.00 | | | $ 24,940,000.00 | $ - | $ 623,500.00 | $ 623,500.00 | | |

**※ BANCO POPULAR.**

PO Box 362708
San Juan, Puerto Rico 00936-2708
Teléfonos (787) 765-9800, 787-751-9800

## NOTICE OF CLAIM AND CERTIFICATE

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attention: Dan Weinberg
E-Mail: dweinberg@agltd.com

  The undersigned, a duly authorized officer of Banco Popular de Puerto Rico, in its capacity as paying agent and registrar (in such capacity, the "**Paying Agent**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Corp. ("**AGC**"), with reference to Financial Guaranty Insurance Policy No. **D-2006-192 dated August 10, 2006** (the "**Policy**"), issued in respect of the Bonds, that:

  (i)  The Paying Agent is the duly appointed Paying Agent for the Bonds under a bond resolution duly adopted by the Secretary of the Treasury and approved by the Governor (the "**Bond Resolution**"), pursuant to which the above-referenced Bonds were issued by the Commonwealth of Puerto Rico (the "**Issuer**").

  (ii)  The sum of all amounts on deposit (or scheduled to be on deposit) with the Paying Agent and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Bond Resolution will be **$0.00** (such amount, the "**Shortfall**") less than the **interest of $1,237,995.80** (the "**Scheduled Payments**") Due for Payment on the Bonds on July 1, 2017 (the "**Payment Date**") but due to holidays will be payable on **July 3, 2017**.

  (iii)  The Paying Agent is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

  (iv)  The Paying Agent agrees that, following its receipt of funds from AGC, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Paying Agent, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

  (v)  The Paying Agent, on behalf of the Holders, hereby assigns to AGC the rights of the Holders with respect to Bonds to the extent of any payments made by AGC under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGC in respect of such payments. Payments to AGC in respect of the foregoing assignment shall in all cases be

subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Paying Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGC to effectuate the purpose or provisions of this clause (v).

(vi)    The Paying Agent, on behalf of the Holders, hereby acknowledges and agrees that, so long as AGC shall not be in default in its payment obligations under the Policy, AGC may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an **"Insolvency Proceeding"**), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a **"Preference Claim"**), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGC, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Paying Agent hereby agrees that AGC shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   AGC shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy.

(viii) Payment should be made by wire transfer directed to

**Banco Popular de Puerto Rico**
**209 Munoz Rivera Ave.**

**Ref: Commonwealth of PR PIB 2006 A**
**Attn: Jorge Velez (787) 765-9800 ext. 505902**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Paying Agent to AGC.

2

IN WITNESS WHEREOF, the Paying Agent has executed and delivered this Notice of Claim and Certificate as of the 29th day of June, 2017.

Banco Popular de Puerto Rico, as
Paying Agent
By
Name: Jorge A. Vélez Castillo
Title: Assistant Vice President

For AGC or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

Appendix I

| Description of Bond Issue | Cusip | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Principal | Interest | Total | Insurer | Policy No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Debt Service Payment for 7/1/2017 | | | |
| PIB 2006 A | 74514LJR9 | 30,005,000.00 | 7/1/2018 | 2.616% | 30,005,000.00 | | 392,465.40 | 392,465.40 | ASSURED GUARANTY CORP | D-2006-192 |
| PIB 2006 A | 74514LJS7 | 31,280,000.00 | 7/1/2019 | 2.636% | 31,280,000.00 | | 412,270.40 | 412,270.40 | ASSURED GUARANTY CORP | D-2006-192 |
| PIB 2006 A | 74514LJT5 | 32,625,000.00 | 7/1/2020 | 2.656% | 32,625,000.00 | | 433,260.00 | 433,260.00 | ASSURED GUARANTY CORP | D-2006-192 |
| | | $ 93,910,000.00 | | | $ 93,910,000.00 | $ - | $ 1,237,995.80 | $ 1,237,995.80 | | |

**BANCO POPULAR.**

PO Box 362708
San Juan, Puerto Rico  00936-2708
Teléfonos (787) 765-9800, 787-751-9800

## NOTICE OF CLAIM AND CERTIFICATE

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY  10019
Attention: Dan Weinberg
E-Mail: dweinberg@agltd.com

The undersigned, a duly authorized officer of Banco Popular de Puerto Rico, in its capacity as paying agent and registrar (in such capacity, the "**Paying Agent**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Corp. ("**AGC**"), with reference to Financial Guaranty Insurance Policy No. **D-2007-248 dated October 16, 2007** (the "**Policy**"), issued in respect of the Bonds, that:

(i)     The Paying Agent is the duly appointed Paying Agent for the Bonds under a bond resolution duly adopted by the Secretary of the Treasury and approved by the Governor (the "**Bond Resolution**"), pursuant to which the above-referenced Bonds were issued by the Commonwealth of Puerto Rico (the "**Issuer**").

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) with the Paying Agent and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Bond Resolution will be $0.00 (such amount, the "**Shortfall**") less than the **principal and interest of $25,563,500.00** (the "**Scheduled Payments**") Due for Payment on the Bonds on July 1, 2017 (the "**Payment Date**") but due to holidays will be payable on July 3, 2017.

(iii)   The Paying Agent is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)    The Paying Agent agrees that, following its receipt of funds from AGC, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Paying Agent, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     The Paying Agent, on behalf of the Holders, hereby assigns to AGC the rights of the Holders with respect to Bonds to the extent of any payments made by AGC under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGC in respect of such payments. Payments to AGC in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds.  The Paying Agent shall take such action and

deliver such instruments as may be reasonably requested or required by AGC to effectuate the purpose or provisions of this clause (v).

(vi)    The Paying Agent, on behalf of the Holders, hereby acknowledges and agrees that, so long as AGC shall not be in default in its payment obligations under the Policy, AGC may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an **"Insolvency Proceeding"**), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a **"Preference Claim"**), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGC, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, and without limiting the foregoing, the Paying Agent hereby agrees that AGC shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent   it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)    AGC shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy.

(viii) Payment should be made by wire transfer directed to

**Banco Popular de Puerto Rico**
**209 Munoz Rivera Áve.**
**San Juan, PR 00918**

**Ref: Commonwealth of PR PIRB 2007 A**
**Attn: Jorge Velez (787) 765-9800 ext. 505902**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Paying Agent to AGC.

IN WITNESS WHEREOF, the Paying Agent has executed and delivered this Notice of Claim and Certificate as of the 29th day of June, 2017.

Banco Popular de Puerto Rico, as Paying Agent

By

Name: Jorge A. Vélez Castillo

Title: Assistant Vice President

---

For AGC or
Fiscal Agent Use Only

Wire transfer sent on _____ By _____

Confirmation Number _____

3

**Appendix I**

| Description of Bond Issue | Cusip | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Debt Service Payment for 7/1/2017 Principal | Interest | Total | Insurer | Policy No. |
|---|---|---|---|---|---|---|---|---|---|---|
| PIRB 2007-A | 74514LNB9 | 24,940,000.00 | 7/1/2017 | 5.000% | 24,940,000.00 | 24,940,000.00 | 623,500.00 | 25,563,500.00 | ASSURED GUARANTY MUNICIPAL CORP | D-2007-248 |
| | | $ 24,940,000.00 | | | $ 24,940,000.00 | $ 24,940,000.00 | $ 623,500.00 | $ 25,563,500.00 | | |

**BANCO POPULAR.**

PO Box 362708
San Juan, Puerto Rico 00936-2708
Teléfonos (787) 765-9800, 787-751-9800

## NOTICE OF CLAIM AND CERTIFICATE

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attention: Dan Weinberg
E-Mail: dweinberg@agltd.com

The undersigned, a duly authorized officer of Banco Popular de Puerto Rico, in its capacity as paying agent and registrar (in such capacity, the **"Paying Agent"**) for the bonds listed on Appendix I hereto (collectively, the **"Bonds"**), hereby certifies to Assured Guaranty Corp. (**"AGC"**), with reference to Financial Guaranty Insurance Policy No. **D-2006-192 dated August 10, 2006** (the **"Policy"**), issued in respect of the Bonds, that:

(i)     The Paying Agent is the duly appointed Paying Agent for the Bonds under a bond resolution duly adopted by the Secretary of the Treasury and approved by the Governor (the **"Bond Resolution"**), pursuant to which the above-referenced Bonds were issued by the Commonwealth of Puerto Rico (the **"Issuer"**).

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) with the Paying Agent and available for distribution to the registered holders of the Bonds (the **"Holders"**) pursuant to the Bond Resolution will be **$0.00** (such amount, the **"Shortfall"**) less than the **interest of $1,502,822.00** (the **"Scheduled Payments"**) Due for Payment on the Bonds on January 1, 2018 (the **"Payment Date"**).

(iii)     The Paying Agent is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Paying Agent agrees that, following its receipt of funds from AGC, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Paying Agent, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     The Paying Agent, on behalf of the Holders, hereby assigns to AGC the rights of the Holders with respect to Bonds to the extent of any payments made by AGC under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGC in respect of such payments. Payments to AGC in respect of the foregoing assignment shall in all cases be

subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Paying Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGC to effectuate the purpose or provisions of this clause (v).

(vi)   The Paying Agent, on behalf of the Holders, hereby acknowledges and agrees that, so long as AGC shall not be in default in its payment obligations under the Policy, AGC may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an **"Insolvency Proceeding"**), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance of a preferential transfer of any payment made with respect to the Bonds (a **"Preference Claim"**), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGC, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Paying Agent hereby agrees that AGC shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent   it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   AGC shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy.

(viii) Payment should be made by wire transfer directed to

**Banco Popular de Puerto Rico**
**209 Munoz Rivera Ave.**
**San Juan, PR 00918**

**Ref: Commonwealth of PR PIB 2006 A**
**Attn: Jorge Velez (787) 765-9800 ext. 505902**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Paying Agent to AGC.

IN WITNESS WHEREOF, the Paying Agent has executed and delivered this Notice of Claim and Certificate as of the 29th day of December, 2017.

Banco Popular de Puerto Rico, as
Paying Agent

By _____

Name _Jose A. Velez Castillo_

Title _Assistant Vice President_

------------------------------------------------------------------------

For AGC or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

Appendix I

| Description of Bond Issue | Cusip | Outstanding Amount | Maturity | Rate | Principal Insured Amount | Debt Service Payment for 1/1/2018 Principal | Interest | Total | Insurer | Policy No. |
|---|---|---|---|---|---|---|---|---|---|---|
| PIB 2006 A | 74514LJR9 | 30,005,000.00 | 7/1/2018 | 3.180% | 30,005,000.00 | | 477,079.50 | 477,079.50 | ASSURED GUARANTY CORP | D-2006-192 |
| PIB 2006 A | 74514LJS7 | 31,280,000.00 | 7/1/2019 | 3.200% | 31,280,000.00 | | 500,480.00 | 500,480.00 | ASSURED GUARANTY CORP | D-2006-192 |
| PIB 2006 A | 74514LJT5 | 32,625,000.00 | 7/1/2020 | 3.220% | 32,625,000.00 | | 525,262.50 | 525,262.50 | ASSURED GUARANTY CORP | D-2006-192 |
| | | $ 93,910,000.00 | | | $ 93,910,000.00 | $ - | $ 1,502,822.00 | $ 1,502,822.00 | | |