**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*,<br>    Debtors.¹ | PROMESA<br>Title III<br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |

-------------------------------------------------------------x

**REPLY OF INTERNATIONAL UNION, UAW**
**AND SERVICE EMPLOYEES INTERNATIONAL UNION**
**TO RESPONSE OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD**
**TO THE COURT'S DECEMBER 14, 2021 ORDER**

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) ("UAW") and Service Employees International Union ("SEIU") submit this reply to the December 21, 2021 *Response of the Financial Oversight and Management Board in Accordance with Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Commonwealth of Puerto Rico, et al.* ("Response") [Docket Entry #19,567] filed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"). [2]

<u>No Evidence in the Confirmation Hearing Record Supports Preemption of Acts 80 and 81</u>

1. The Oversight Board includes Act 80-2020 ("Act 80") and Act 81-2020 ("Act 81") among the Commonwealth statutes that it asks the Court to deem preempted. *See* Docket Entry #19,570, at ECF pages 180-85. The Court should strike those two statutes from the preemption list because no evidence in the confirmation hearing record supports the Oversight Board's claim that they should be preempted.

2. The Oversight Board argues that PROMESA preempts Acts 80 and 81 because, it asserts, those statutes (along with Act 82-2020) will "result in significant additional costs to the Commonwealth." Response ¶3. The Oversight Board repeats this assertion in Appendix A of its Response. There, under the column entitled "Basis for Preemption," the Oversight Board writes, in regard to Acts 80 and 81, that each statute, among other things, "increases pension costs" in violation of the fiscal plan; implements "pension cost increases without ensuring corresponding savings"; increases pension costs "beyond what is provided for in the FY22 budget"; would "increase pension costs without Oversight Board approval"; and

---

[2] UAW has over 400,000 active members in North America. The approximately 5,000 UAW members employed by the Commonwealth or its instrumentalities belong to eight local UAW chapters. The two largest are UAW Local 2396, which represents school cafeteria workers, and UAW Local 2373, which represents employees of the Commonwealth's Treasury Department.

SEIU represents approximately two million service workers throughout North America. SEIU members employed by the Commonwealth belong to one of two SEIU local chapters: SEIU Local 1996/Sindicato Puertoriqueno de Trabajadores y Trabajadoras and SEIU Local 1199/Union General de Trabajadores. Approximately 18,000 SEIU members are employed by the Commonwealth or its instrumentalities.

A significant portion of UAW's and SEIU's members have accrued defined-benefit pension benefits as participants in the Commonwealth's Employees Retirement System.

SEIU is a member of the Official Committee of Unsecured Creditors ("Committee"). SEIU submits this objection in its individual capacity and not in its capacity as a Committee member, nor in any way on behalf of the Committee.

2

would "require additional pension spending." *Id*. at 94-99. But the Oversight Board's sheer repetition of the claim that the two statutes would increase costs does not make it so. Whether the laws would in fact increase the Commonwealth's net costs, and thus require additional spending, is an empirical question, one which needs evidentiary support.

3. This is particularly so since the Commonwealth disputed the Oversight Board's claim that Acts 80 and 81 would raise its overall costs. AAFAF's analysis showed that, rather than increasing costs, Act 80 would generate savings for the Commonwealth, by incentivizing employees to retire early and thereby reducing headcount. *See, e.g,* Docket Entry #19,566-4 (asserting that Act 80 "should produce aggregate savings on payroll expenditures" of $2.6 billion). AAFAF also asserted that Act 81, rather than increasing costs, would achieve "budget neutrality." Docket Entry #19,566-7.

4. Even though the Oversight Board rests its Act 80 and 81 preemption argument on a disputed factual assertion, it points to no evidence in the confirmation hearing record supporting that assertion. Indeed, in its December 14, 2021 *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* ("Dec. 14 Order") [Docket Entry #19,517], the Court wrote that it found "little factual basis in the record" for inclusion of Acts 80 and 81 on the preemption list, given that the Oversight Board only added them to the list after the close of evidence at the confirmation hearing. *See id.* at 5. The Dec. 14 Order made clear that the Court was looking for "*record supported* findings" as to, among other things, the projected costs of the statutes. *Id.* at 4 (emphasis added).

5. The Oversight Board's Response, however, is devoid of any such "record supported" material in regard to Acts 80 and 81. Appendix A of the Response contains a column

3

entitled "Record Evidence Supporting Preemption." Yet, for the Act 80 and 81 entries, that column cites nothing that could be considered evidence. It cites the 2021 Commonwealth fiscal plan, *see* Response at 94, 97, but the fiscal plan is not evidence of the cost of Acts 80 and 81. In fact, the sections of the fiscal plan cited make no mention of the two statutes. *See* Docket Entry #19,566-2, at 55, 301-03. The column also quotes, *see* Response at 94-95, 97-98, from a response brief filed by the Oversight Board [Docket Entry #19,306] and from the Oversight Board's confirmation hearing closing argument "deck" (*i.e.*, a demonstrative powerpoint) [Docket Entry #19328-2]. Obviously, neither the brief nor the deck constitute evidence. Because the Oversight Board has failed to point to any evidence from the confirmation hearing record supporting its contention that Acts 80 and 81 would impose significant costs on the Commonwealth, the Court should strike those statutes from the preemption list.

Acts 80 and 81 Would Not Modify the Plan's Treatment of Pension Claims

6. Given the lack of evidence to support its claim that Acts 80 and 81 are preempted, the Oversight Board tries other arguments to justify including them on the preemption list. None of these arguments work either.

7. The Oversight Board argues that Acts 80 and 81 modify the treatment of pension claims in the proposed plan of adjustment ("Plan"), thereby violating the Plan and also making the Plan unconfirmable under Sections 1123(a)(4) and 1129(b) of the Bankruptcy Code. *See* Response at 94-95, 97-98. This argument fails first because a law violating a plan of adjustment, or making it unconfirmable, does not make that law preempted. Preemption only occurs when the law is "inconsistent" with the PROMESA statute itself. *See* PROMESA §4, 48 U.S.C. §2103.

4

8. In any event, the premise of the Oversight Board's argument is flawed: the two statutes would not modify the Plan's treatment of pension claims. The Plan establishes the treatment of *pre-petition* claims. Acts 80 and 81 would have no effect on the treatment of pre-petition claims. The two statutes were enacted post-petition, would be implemented post-petition, and would only affect changes to post-petition pensions payments. Thus, they would not modify the Plan's treatment of pension claims.

9. Indeed, the Plan's treatment of the pension claims of active ERS participants (Class 51G) provides, in relevant part, that each shall receive "his or her benefits without adjustment for any Monthly Benefit Modification, but shall be subject to the elimination of any cost of living adjustments from and after the Effective Date." Docket Entry #19,568, at §55.7(a). In effect, the Plan treatment does two things: it protects those in the class from the "Monthly Benefit Modification" cut and bans future COLA increases. Acts 80 and 81 would change neither of those things.

10. Act 80, in particular, cannot be deemed to modify the treatment of pre-petition pension claims because it would provide for post-petition transactions with the exchange of valid consideration. The Court noted in the Dec. 14 Order that the Oversight Board has failed to show "any clear basis in law or fact" for the proposition that purported preemption "invalidates the obligation to pay where a creditor provides *postpetition consideration* to a debtor pursuant to a *postpetition transaction* with a debtor." Dec. 14 Order at 4 (emphasis added). A retirement under Act 80 would constitute just such a post-petition transaction. In exchange for the increased retirement benefit, the employee would provide valuable consideration. Act 80 would require the employee to provide an "irrevocable" forfeiture of the employee's employment, along with "a total and absolute release" of any claim to continued or future

5

employment. Docket Entry #19,566-3 at 9. That consideration from the employee would free the government of any obligation in the years that followed to pay the employee's salary and any number of other employment-related costs. Because a retirement under Act 80 would constitute a post-petition transaction that would provide the Commonwealth post-petition consideration, it would not modify the Plan's pre-petition treatment of pension claims.

11. The Oversight Board asserts that Act 80 would simply give additional pension benefits for services already provided. *See* Response ¶13. That assertion ignores the new consideration furnished by the employee: a promise to walk away forever from a secure government paycheck. The Oversight Board also asserts that the debtor that would receive the benefit has not consented to such a post-petition transaction. *See id*. ¶11. That is wrong, too. The debtor that would receive the consideration -- the Commonwealth -- has consented to Act 80.

12. In sum, no basis exists to hold Acts 80 and 81 preempted based on a mistaken theory that they alter the Plan's treatment of pension claims.

Plan Section 83.4 Cannot Provide Grounds for Preemption of Acts 80 and 81

13. Finally, the Oversight Board argues that Acts 80 and 81 are preempted because they conflict with Plan §83.4. *See* Response at 94, 97. Plan §83.4 (along with parallel language in paragraph 62 of the proposed confirmation order) would restrict the Commonwealth for the next decade from implementing or enacting legislation to increase defined benefit pension payments.

14. The Oversight Board's argument fails first because Plan §83.4 provides no basis for preemption of a statute. Preemption requires a determination that the statute is inconsistent with PROMESA. *See* PROMESA §4, 48 U.S.C. §2103. A finding that

6

implementation of Acts 80 and 81 violated Plan §83.4 would not be the equivalent of finding those statutes inconsistent with PROMESA. Indeed, the Section 83.4 language rests on no PROMESA provision. It was just a free-floating addition to the Plan, inserted by the Oversight Board as an after-thought during the eighth round of Plan amendments. *See* Docket Entry #19,386, at ¶4. At most, even if deemed valid, Section 83.4 (and confirmation order paragraph 62) would provide a basis for a court-issued injunction against the Commonwealth, not a preemption determination.

    15.  In any event, the Section 83.4 language was not a valid addition to the Plan. As UAW and SEIU explained in earlier filings, the Oversight Board slipped the language into the Plan and confirmation order with no notice to the affected ERS participants, in violation of their due process rights. *See* Docket Entry #19,386, at ¶¶2-4; Docket Entry #19,162, at ¶¶24-30. The Oversight Board also added this materially adverse language after some ERS participants -- the "below-threshold" ERS retirees in Class 51A -- had already been deemed to have accepted the Plan. *See* Docket Entry #19,386, at ¶5. We also explained that the Section 83.4 language is unnecessary because, among other things, PROMESA allows the Oversight Board to bring adversary proceedings challenging legislation that it sees as creating unauthorized expenditures. *See* Docket Entry #19,386, at ¶¶6-10. Indeed, that is exactly what the Oversight Board has done with its newly filed adversary proceeding seeking to nullify Acts 80 and 81. *See* Docket Entry #19,566.

    16.  The Court's Dec. 14 Order provides yet another basis to deem invalid Plan §83.4 (and the corresponding language in paragraph 62 of the proposed confirmation order). Plan §83.4 would provide a sweeping decade-long restriction on the enactment of new laws that increase defined benefit pension payments, a restriction that would go well beyond simply

7

prohibiting legislation that resurrects preempted laws. In its Dec. 14 Order, the Court made clear that enactment of a truly new law (as opposed to one that re-creates a preempted law) is permissible, noting that such a new law would be subject to Oversight Board challenge under PROMESA Titles I and II. *See* Dec. 14 Order at 5-6. Because Plan §83.4 (and the parallel language in the proposed confirmation order) would prohibit the enactment of entirely new laws, it must be stricken for that reason as well.

17. In sum, Plan §83.4 cannot serve as a basis for preemption of Acts 80 and 81.

The Oversight Board Fails to Clarify the Limited Scope of Preemption

18. Finally, the Court's Dec. 14 Order said that the Oversight Board "should clarify that the Proposed Plan only contemplates preemption as to the obligations of the Debtors, and only to the extent that such obligations existed on or after June 30, 2016," the date of PROMESA's enactment. Dec. 14 Order at 5. The Oversight Board's Response, however, fails to provide the clarification that the Court said it should. Rather, the Response doubles-down on the Oversight Board's contrary position that preemption applies to laws that impose obligations on non-debtors. *See* Response ¶14 (insisting that laws that require certain payments by a covered territorial instrumentality, "including a non-Debtor," are "inconsistent with PROMESA"). The Oversight Board provides no new legal authority to support its dug-in position. It simply directs the Court, again, to its October 27, 2021 confirmation brief. *See* Response ¶14 & n.8. Nor does the Response contain any discussion of the application of preemption to pre-PROMESA laws, neither attempting to clarify or justify the Oversight Board's position on that point.[3]

---

[3] Even if there were grounds to find Acts 80 and 81 otherwise preempted, the Oversight Board has not met its burden of demonstrating that such preemption should extend to obligations the two statutes would impose on non-debtor entities, such as Puerto Rico municipalities or the credit union AEELA.

Reservation of Rights

19. UAW and SEIU reserve all rights in connection with this filing, including the right to supplement or modify it in light of any subsequent modifications to the Plan, confirmation order, or proposed findings of fact and conclusions of law. UAW and SEIU also reserve all rights with respect to the newly filed adversary proceeding referenced in paragraph 15 above.

December 22, 2021

**COHEN, WEISS AND SIMON LLP**

By: /s/ Peter D. DeChiara
Richard M. Seltzer *(pro hac vice)*
Peter D. DeChiara (*pro hac vice*)
Marie B. Hahn *(pro hac vice)*
rseltzer@cwsny.com
pdechiara@cwsny.com
mhahn@cwsny.com
900 Third Avenue, Suite 2100
New York, NY 10022-4869
(212) 563-4100

**MONSERRATE SIMONET & GIERBOLINI**
/s/ *Miguel Simonet Sierra*
Miguel Simonet Sierra
USDC # 210101
101 San Patricio Ave., Suite 1120
Guaynabo, PR 00968
Tel.: (787) 620-5300

*Counsel to International Union, UAW and Service Employees International Union*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of December 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will notify all counsel of record.

/s/ *Peter D. DeChiara*
Peter D. DeChiara