**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF Nos. 19480, 19493** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |

**RESPONSE OF THE COMMONWEALTH OF PUERTO RICO TO
MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY
IMO INVESTMENT S.E., ISRAEL SANTIAGO-LUGO,
CELENIA REYES-PADILLA, JASON SANTIAGO-ROSADO,
ISRAEL SANTIAGO-ROSADO, AND DENIEL SANTIAGO-ROSADO**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Last Four Digits of Federal Tax ID: 3801) (Last Four Digits of Federal Tax ID: 3801) (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this response (the "Response") to the *Motion for Relief from Automatic Stay* [ECF No. 19480] (the "Motion) filed by IMO Investment S.E., Israel Santiago-Lugo, Celenia Reyes-Padilla, Jason Santiago-Rosado, Israel Santiago-Rosado, and Deniel Santiago-Rosado (collectively, "Movants"), plaintiffs in the case captioned *IMO Investment v. United States*, Civil Case No. 16-03150-DRD (the "Dismissed Action"), which was dismissed by United States District Court for the District of Puerto Rico (the "District Court"), and appellants in the appeal of the Dismissed Action, captioned *Santiago-Lugo v. United States*, Case No. 18-1850 (the "Appeal"), pending before the Court of Appeals for the First Circuit (the "Appeals Court").[1]

## BACKGROUND

1. In 1996, Mr. Israel Santiago-Lugo was convicted of (i) engaging in a continuing criminal enterprise—the distribution of narcotics throughout Northern Puerto Rico over a seven-year period—in violation of 18 U.S.C. § 2 and 21 U.S.C. § 848, for which he received a life sentence, (ii) additional forty-one counts, for which he received concurrent ten-year sentences as to each count, and (iii) two counts of forfeiture under 18 U.S.C. § 982 and 21 U.S.C. § 853. Mr. Santiago-Lugo's three sons (Jason Santiago-Rosado, Israel Santiago-Rosado, and Deniel Santiago-Rosado), Celenia Reyes-Padilla, and IMO Investment, S.E., Mr. Santiago-Lugo's inactive corporation, were convicted of similar charges by the same jury that convicted Mr. Santiago-Lugo. IMO Investment, S.E. was also a claimant in civil forfeiture proceedings that were ultimately dismissed after the properties subject to the proceedings were criminally forfeited.

---

[1] The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Response on behalf of the Commonwealth.

**The Dismissed Action**

2.  Mr. Santiago-Lugo has challenged his convictions a number of times, through civil suits in various courts, to no avail. In dismissing such challenges, the District Court determined they were frivolous "direct and collateral attacks and challenges to the dispotion of [Mr. Santiago-Lugo's] criminal conviction." *See*, *e.g. Santiago-Lugo v. United States*, 94 F. Supp. 3d 156, 158 (D.P.R. 2015) (collecting cases filed by Mr. Santiago-Lugo and stating that "[t]here comes a point in time where frivolous collateral litigation must stop"); *Santiago-Lugo v. United States*, 559 U.S. 1002 (2010) (denying leave to proceed *in forma pauperis*, dismissing petition for writ of certiorari, and directing Clerk not to accept any further petitions in non-criminal matters from petitioner unless docketing fee paid, due to repeated abuse of the Supreme Court's process); *Santiago–Lugo v. Warden, FCC Coleman–USP–1*, 392 Fed. App'x 675 (11th Cir. Aug. 4, 2010) (affirming denial of Rule 60(b) motion for relief from summary denial of § 2241); *Santiago–Lugo v. Tapia*, 188 Fed. App'x 296 (5th Cir. July 12, 2006) (dismissing § 2241 petition purportedly filed pursuant to "savings clause" of 28 U.S.C. § 2255); *United States v. Santiago–Lugo*, 167 F.3d 81 (1st Cir. 1999) (affirming convictions on direct appeal); *Santiago–Lugo v. United States*, 2011 WL 1979858 (D.P.R. May 20, 2011) (denying petition for "writ of error *coram nobis* or, in the alternative, a writ of *audita querela*" as a successive § 2255 motion for which petitioner had not obtained permission from the First Circuit Court of Appeals); *Santiago–Lugo v. United States*, 2009 WL 2513605 (D.P.R. Aug. 13, 2009) (denying certificate of appealability from a denial of a successive § 2255 motion because petitioner had not obtained permission from First Circuit Court of Appeals); *Santiago–Lugo v. United States*, 135 F. Supp. 2d 142 (D.P.R. 2001) (denying motion to reconsider denial of § 2255 motion).

3. On December 15, 2016, Movants filed the Dismissed Action, mounting yet another collateral attack on his criminal convictions through a civil suit. In the Dismissed Action, Movants filed a complaint against every person and entity remotely involved in Mr. Santiago-Lugo's and Ms. Reyes-Padilla's arrest, prosecution, sentencing, appeal, and post-conviction petitions—which include state and federal employees, such as state prosecutors and police officers, sued in their official capacity—and those involved in the forfeiture proceedings.

4. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof.

5. On March 13, 2018, the District Court entered the *Opinion and Order* (the "Dismissal Order") dismissing, *sua sponte*, the Dismissed Action as frivolous pursuant to 28 U.S.C. §§ 1915A & 1915(e)(2)(B), determining that the claims therein were wholly foreclosed by the Supreme Court decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), and further directing the Clerk of the Court to "not docket any further action brought by Santiago-Lugo or any suit in which Santiago-Lugo appears as a plaintiff unless the filing fee is prepaid in its entirety, or the complaint contains an affidavit attached that states specific facts showing that he is under imminent danger of serious physical injury." On that same date, the District Court entered a judgment dismissing (the "Dismissal Judgment") the Dismissed Action in accordance with the Dismissal Order.

6. Thereafter, Movants filed: (i) on May 21, 2018, a motion pursuant to Federal Rules of Civil Procedure 60(b) to set aside the Dismissal Order and Dismissal Judgment; (ii) on June 8, 2018, a second Fed. R. Civ. P. 60(b) motion to set aside the same rulings; and (iii) on June 11, 2018, a Fed. R. Civ. P. 59(e) motion for reconsideration of such order and judgment, all of which

4

were denied by the District Court on June 11, 2018 and August 3, 2018. Specifically, on August 13, 2018, the District Court entered the *Opinion and Order* denying the first Fed. R. Civ. P. 60(b) motion (the "Order Denying 60(b) Motion"), a separate order denying the second Fed. R. Civ. P. 60(b) motion as moot, and an order denying the Fed. R. Civ. P. 59(e) as untimely (the "Order Denying 59(e) Motion").

7. On August 13, 2018, Movants filed another Fed. R. Civ. P. 60(b) motion for the Order Denying 60(b) Motion, which the District Court denied as moot on August 14, 2018.

**The Appeal**

8. On August 27, 2018, Movants commenced the Appeal of the Order Denying 60(b) Motion and the Order Denying 59(e) Motion by filing a *Notice of Appeal* (the "Notice of Appeal").[2]

9. On July 31, 2019, the Appeals Court entered an order staying the Appeal as to the Commonwealth's appellees.

**The Lift Stay Motion**

10. On December 10, 2021, Movants filed the Motion seeking relief from the automatic stay under section 362(a) of Title 11 of the United States Code (the "Bankruptcy Code"), made applicable to the Commonwealth's Title III case by PROMESA section 301(a) (the "Title III Stay"), to allow the Appeal to continue. Prior to the filing of the Motion, the parties attempted to resolve Movants' request for stay relief consensually, but have been unable to do so.

---

[2] The Notice of Appeal was amended on October 2, 2018. While Movants note in the Motion that they intend to challenge the District Court's dismissal of the Dismissed Action, Motion at 2, the Notice of Appeal did not make reference to the Dismissal Order or the Dismissal Judgment.

5

## THE COMMONWEALTH'S RESPONSE

### Consent to Limited Stay Relief With Respect to the Appeal

11. With respect to the Appeal, the Commonwealth agrees to a limited modification of the Title III Stay to allow the Appeal to proceed to final judgment before the Appeals Court, and the Supreme Court of the United States; provided, however, that the Title III Stay shall continue to apply in all other respects to the Appeal and the Dismissed Action, including, but not limited to, the execution and enforcement of any judgment for money damages or any other relief that entails the disbursement of funds by the Commonwealth or any other Title III Debtor, and provisional remedies against the Commonwealth or any other Title III Debtor.

12. Nothing contained in this Response should be construed as a waiver or modification of the Title III Stay so as to permit the prosecution against the Commonwealth or any of the other Title III debtors of any claim or claims by anyone other than Movants as provided for herein and the Commonwealth reserves all rights, defenses, and protections with respect to any and all matters pending or that may arise in the Title III Case, including the treatment of any claim arising from the Appeal under a plan of adjustment or otherwise in the Title III Case.

### Objection to Stay Relief With Respect to the Dismissed Action

13. The scope of Movants' requested stay relief is unclear, and it appears Movants seek stay relief to allow the continuation of the Dismissed Action and commencement of further litigation against the Commonwealth. *See* Motion at 5 ("... allow ***any*** further litigation commenced to proceed to final judgment before the United States Court of Appeals for the First Circuit (Case No. 18-1850) . . ."); 6-7 ("The Court's disposition regarding the automatic stay must ensure that Movants are afforded judicial redress for purported [violations] of his civil rights . . .

6

."). To the extent Movants seek stay relief to proceed with the Dismissed Action or commence further litigation against the Commonwealth, the Motion should be denied.

14. Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543].

15. "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986)). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir.

1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'"); *Delpit v. Commissioner*, 18 F.3d 768 (9th Cir. 1994) ("Congress intended to give debtors a breathing spell from their creditors and *to stop all collection efforts*, all harassment, and all foreclosure actions.") (internal quotes and citations omitted) (emphasis added).

16. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

8

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

17. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in Sonnax and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

18. No one factor is dispositive. Instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp.

9

3d at 529 n.12. Movants bear the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

19.  Here, the *Sonnax* factors point squarely toward maintaining the Title III Stay and against any relief Movants seek in connection with the Dismissed Action and the commencement of further litigation against the Commonwealth:

20.  **<u>Sonnax Factor 1</u>:** The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against modifying the automatic stay. Here, Movants do not identify any bankruptcy issue related to the Title III case that would be resolved by allowing Movants to continue the prosecution of the Dismissed Action or enforcement of any judgment. Movants's conclusory statement that proceeding before the Appeals Courts "would result in a complete resolution of the issues," Motion at 7, fails to satisfy Movant's heavy burden. Indeed, various courts have recognized that Movants' various civil actions were mere frivolous attempts to collaterally attack their criminal convictions. *See supra* paragraph 2. Therefore, the first *Sonnax* factor supports denying the Motion.

21.  **<u>Sonnax Factor 2</u>**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay. In the unlikely event that the Movants prevail in the Appeal and the case is remanded to the District Court, in the Dismissed Action, the Commonwealth would be required to devote resources to respond to Movants' claims in an action which several courts have already determined and declared to be frivolous, which would interfere with the Title III case and overall restructuring by diverting

10

critical funds from its recovery efforts and payment of all similarly situated creditors pursuant to a plan of adjustment.

22. Additionally, even assuming that Movants could reinstate the Dismissed Action, termination of the Title III stay to allow Movants to execute and enforce any judgment against the Commonwealth that entails the disbursement of funds by the Commonwealth or any other Title III Debtor, and provisional remedies against the Commonwealth or any other Title III Debtor would be unwarranted. Should every plaintiff with an asserted prepetition claim be given *carte blanche* to litigate and/or execute their claims in multiple fora, the combined result would have a substantial and negative impact on the Commonwealth's fiscal plan and budget. This would impede the restructuring process, and thus, should be avoided. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."). Thus, *Sonnax* factor 2 weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause).

23. ***Sonnax* Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal was established to hear the Dismissed Action, which was originally filed in the District Court. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

24. ***Sonnax* Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility in

11

connection with the Dismissed Action. Thus, *Sonnax* factor 5 does not support granting the Motion.

25. ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

26. Here, Movants fail to show how any non-debtor parties in the Dismissed Action are the *primary parties* to the action. In fact, in the unlikely event that Movants prevail in the Appeal and the case is remanded to the District Court, the Commonwealth would be required to expend its own funds to defend Commonwealth officials sued in their official capacity against claims that have been determined to be foreclosed by the United States Supreme Court's decision in *Heck v. Humphrey* and dismissed as frivolous. Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.

27. ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R.

12

551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"). *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury").

28. Here, assuming Movants were to prevail in the Appeal, the Commonwealth would have to expend time and expense to respond to any further papers Movants may file in connection with claims that have already been addressed and dismissed as frivolous by several courts. In that unlikely scenario, the depletion of the Commonwealth's resources to attend to such duplicative responses, and the diversion of the Commonwealth's attention to proceed expeditiously through its Title III case would inure to the detriment of the Commonwealth's other creditors. Accordingly, *Sonnax* factor 7 does not support granting the Motion.

29. ***Sonnax* Factors 10 and 11:** The interest of judicial economy and the status of the Dismissed Action also weigh against stay relief. As discussed above, the Dismissed Action has been dismissed, and the several rulings denied motions to set aside and/or for reconsideration of the Dismissal Order and the Dismissal Judgment are the subject of the Appeal. Movants do not (and cannot) explain why cause would exist for relief from the Title III Stay to continue to prosecute the Dismissed Action, and to seek the execution and enforcement of any judgment for money damages or any other relief that entails the disbursement of funds by the Commonwealth or any other Title III Debtor, and provisional remedies against the Commonwealth or any other

13

Title III Debtor if they prevailed in the Appeal and later prevailed in their full prosecution of the Dismissed Action, which was in its initial stage. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion with respect to the Dismissed Action.

30. ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted with respect to the Dismissed Action would outweigh any harm that Movants would suffer if the Title III Stay remains in place. The diversion of the Commonwealth's resources to respond to Movants' potential duplicative filings in connection with the re-filing of the Dismissed Action, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay.

31. On the other hand, Movants will not suffer hardship from the Title III Stay in connection with the Dismissed Action because Movants would have to prevail in the Appeal, and then on their Rules 60(b) or 59(e) motions,[3] before the Dismissed Action could be reinitiated. Furthermore, various courts have recognized that Movants' various civil actions were mere frivolous attempts to collaterally attack their criminal convictions, which counsels against any harm to Movants caused by the Title III Stay. *See supra* paragraph 2. Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[4]

[*Remainder of Page Left Intentionally Blank*]

---

[3] The Notice of Appeal did not include an appeal of the Dismissal Order or the Dismissal Judgment.

[4] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

**WHEREFORE**, the Commonwealth respectfully requests that the Court grant a partial modification of the Title III Stay, as detailed herein, deny the Motion in all other respects, and enter the Proposed Order attached hereto as **Exhibit A**.

Dated: December 22, 2021
San Juan, Puerto Rico

Respectfully submitted,

**DOMINGO EMANUELLI HERNÁNDEZ**
Secretary of Justice

*/s/ Susana I. Peñagarícano Brown*
**SUSANA I. PEÑAGARICANO BROWN**
USDC No. 219907
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2900 Ext. 1404
spenagaricano@justicia.pr.gov
*Attorney for the Commonwealth of Puerto Rico*

15