UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

         Debtors.

------------------------------------------------------------------x

PROMESA
Title III


No. 17 BK 3283-LTS
(Jointly Administered)


**[Response to Docket #19574, #19567, #19572, #19571, #19570, #19568, #19517]**

**RESPONSE TO THE COURT'S ORDER #19517, AND RESPONSE AND OBJECTION
TO DEBTORS' POSITION ON ISSUES PRESENTED IN THE COURT'S ORDER
#19517 (#19574) AND TO DEBTORS' FURTHER REVISED MODIFIED EIGHTH
AMENDED PLAN (#19572 AND #19568), PROPOSED ORDER AND JUDGMENT
CONFIRMING PLAN (#19571) AND PROPOSED FINDINGS OF FACT
AND CONCLUSION OF LAW (#19570)
(FILED BY INDIVIDUAL GO /PBA BONDHOLDER, PETER C. HEIN)**


Dated:  December 23, 2021

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

    A.    Continued assertion of objections. ...............................................................1

    B.    Assertion of objections to FOMB's Further Revised FF/CL (#19570). .................1

    C.    Responses to new matter in FOMB's proposed order and judgment (#
           19571, superseding #19368 and #19325). .............................................2

    D.    Continued assertion of objections to FOMB's revised modified Eighth
           Amended Plan (#19572 and #19568). ....................................................2

I.      THE PUERTO RICO LEGISLATURE'S ENACTMENT OF JOINT
       RESOLUTION 33-2021, AND PREVIOUS ENACTMENT OF ACTS 80-2020,
       81-2020 AND 82-2020, UNDERSCORE THAT THE PLAN IS NOT FEASIBLE
       OR IN THE BEST INTERESTS OF CREDITORS .........................................3

II.     FOMB DOES NOT JUSTIFY PREEMPTION OF THE PUERTO RICO
       CONSTITUTION AND STATUTORY PROVISIONS PROVIDING FOR
       PRIORITY OF PAYMENT OF, AND SECURITY FOR, ITS FULL FAITH
       AND CREDIT DEBT ..................................................................6

III.   THE TAKINGS CLAIMS OF NONCONSENTING BONDHOLDERS
       LIKEWISE CANNOT BE DISCHARGED UNDER THE PLAN ...................7

IV.   THE RECENT DECISION IN *PERDUE PHARMA* UNDERSCORES THAT NO
       RELEASE OF CLAIMS OF NONCONSENTING CREDITORS, HOWEVER
       DENOMINATED, MAY BE INCLUDED IN THE PLAN OR THE ORDER
       AND JUDGMENT CONFIRMING THE PLAN ...........................................8

V.    FOMB'S DELAY OF THE EFFECTIVE DATE TO MARCH 15, 2022
       UNDERSCORES THAT THE IRS DETERMINATION OF TAX EXEMPT
       STATUS SHOULD BE OBTAINED BEFORE THE COURT CONFIRMS THE
       PLAN ........................................................................................9

CONCLUSION.................................................................................10

### <u>TABLE OF ABBREVIATIONS AND CITATIONS</u>

| | |
|---|---|
| # | Docket entries are referred to in the form of "#___" |
| "COFINA" | Puerto Rico Sales Tax Financing Corporation |
| "Commonwealth" | Commonwealth of Puerto Rico |
| FF/CL | Debtors' proposed Findings of Fact and Conclusions of Law dated November 28, 2021 (#19366) |
| Further Revised FF/CL | Debtors' revised proposed Findings of Fact and Conclusions of Law dated December 21, 2021 (#19570) |
| GO bonds | General obligation bonds issued by the Commonwealth of Puerto Rico for which the full faith credit and taxing power of the Commonwealth is pledged |
| PBA bonds | Bonds issued by Puerto Rico Public Building Authority "secured by a pledge" of certain rentals and "further secured by the guaranty of the Commonwealth" |
| Revised FF/CL | Debtors' proposed Revised Findings of Fact and Conclusions of Law dated December 6, 2021 (#19427) |

Peter C. Hein, a GO and PBA bondholder who purchased in the 2009 through March 2012 time period, at times that Puerto Rico GO and PBA bonds were rated investment grade and years before PROMESA was even in prospect, files this Response to the Court's Order #19517, and Response and Objection to Debtors' position on issues presented in the Court's Order #19517 (#19574 and #19567) and to Debtors' Further Revised Modified Eighth Amended Plan (#19572 and #19568), Proposed Order and Judgment Confirming Plan (#19571) and Proposed Finding of Fact and Conclusion of Law (#19570), all filed by Debtors on December 21, 2021.

## PRELIMINARY STATEMENT

### A.  Continued assertion of objections.

I have previously filed objections, including objections to FOMB's proposed findings of fact and conclusions of law in connection with confirmation of Modified Eighth Amended Plan (#19491, objecting to #19427, and #19422 and #19400, objecting to #19366), an objection to confirmation (#18575), declarations in support of such objection (including #19047), a court-authorized sur-reply to FOMB's 10/27/2021 and 10/28/2021 supporting and reply briefs (#19093), objections to the proposed order and judgment confirming the plan (#19218 and #18647), and a supplement to my objection to the proposed order and judgment confirming the Plan (#19446).  I have also submitted exhibits into evidence (*see* #19172 and #19352), presented argument on certain issues on which the Court entertained argument, presented an opening statement and a closing argument, and filed papers in connection with prior proceedings in this Title III case.  I continue to assert these previously made objections.

### B.  Assertion of objections to FOMB's Further Revised FF/CL (#19570).

I object to #19570, including for reasons previously asserted in my objections to FOMB's Revised FF/CL and FF/CL (filed as #19491, to FOMB's Revised FF/CL #19427, and #19422 and #19400 to FOMB's FF/CL, #19366) and in my other objections, papers and arguments, including those listed above.  Because the numbering of paragraphs in #19570 differs somewhat

1

from that in #19427 and #19366, I will revise and refile #19422 to be responsive to #19570 and its revised paragraph numbering as soon as practical.

**C.     Responses to new matter in FOMB's proposed order and judgment (#19571, superseding #19368 and #19325).**

As noted in #19446, my Supplement to Objection to Revised Proposed Order and Judgment confirming the Plan (#19368 and #19325), new material in FOMB's #19325 and #19368 revised versions of the proposed order and judgment had been addressed in my Objection to FOMB's Proposed Findings of Fact and Conclusions of Law (#19422, *correcting* #19400). That new matter in #19368 and #19325, now carried forward into #19571, continues to be addressed in Sections XXIV and VIII.A.2 of #19422 and #19400, as follows:

**1.     Response to new matter in FOMB Order and Judgment ¶¶ 56-61 and 64-65 (Release provisions, however denominated, including releases denominated "exculpation")(#19571-page-65-to-79 and 81-to-83-of-231, previously #19368-page-65-to-79 and 80-to-83-of-231):**  My response appears in Section XXIV, #19422-page-60-to-70-of-103; #19400-page-60-to-70-of-73.

**2.     Response to new FOMB Order and Judgment ¶¶ 87 (Identification of Additional Retail Investors/Retail Support Fee) and Exhibit E (Notice of Retail Investor Certification)(#19571-page-92-to-93 and 110-to-115-of-231, previously #19368-page-91-to-93 and 110-to-115-of-231):**  My response appears in Section VIII.A.2, #19422-page-24-to-29-of-103 and #19400-page-24-to-29-of-73.

**D.     Continued assertion of objections to FOMB's revised modified Eighth Amended Plan (#19572 and #19568).**

I object to #19572 and #19568, including for reasons previously asserted in my objections, papers and arguments referenced above in Sections "A," "B" and "C."

2

I.    **THE PUERTO RICO LEGISLATURE'S ENACTMENT OF JOINT
RESOLUTION 33-2021, AND PREVIOUS ENACTMENT OF ACTS 80-2020, 81-
2020 AND 82-2020, UNDERSCORE THAT THE PLAN IS NOT FEASIBLE OR IN
THE BEST INTERESTS OF CREDITORS**

FOMB concedes that the multibillion-dollar cost of the 2020 Pension Acts would render

the Plan "not feasible."  #19574-page-12-to-13-of-112; #19566.  FOMB also recognizes that the

2020 Pension Acts will result in some public employees and retirees receiving "more than full

payment".  #19574-page-14-of-112.

This is not a minor matter:  Absent a Court order determining the 2020 Pension Acts are

either preempted by PROMESA or nullified or unenforceable, the Plan will not become

effective.  #19574-page-13-of-112; #19572-page-191-of-306 Plan 86.1(i); #19568-page-185-of-

302 Plan 86.1(i).  Despite this Court previously being told that PSA termination dates required

an intense confirmation schedule, now FOMB expects that PSA parties will consent to an

extension of the Effective Date to March, 15, 2022.  #19574-page-13-of-112.

In addition, the very fact that Commonwealth's legislature has "doubled down" on

legislation to distribute yet additional funds to public employees and retirees, and commit

Commonwealth to increased obligations to public employees and retirees in the future – even

while GO and PBA bondholders with a priority right of payment under Puerto Rico's

Constitution are refused full payment – underscores the fundamental flaws with a Plan that **(i)**

effectively reverses priorities under Puerto Rico's Constitution, putting cash bonuses and

increased benefits to public employees and retirees ahead of long-standing existing obligations to

GO and PBA bondholders that under Article IV, Section 8 of Puerto Rico's Constitution are

entitled to "first be paid", and **(ii)** fails to address Commonwealth's unwillingness to honor

Puerto Rico's obligations to bondholders (as discussed, *inter alia*, in #19422-page-50-to-52-of-

103, Section XX.B).  This is a great injustice not only to GO and PBA bondholders whose

priority of payment under Puerto Rico's Constitution and property rights are being disregarded,

but it is also an injustice to the residents of Puerto Rico *not* employed by the Commonwealth

Government who will suffer from, *inter alia*,  the adverse impact on Puerto Rico's credibility

3

and future ability to access the credit markets  because Puerto Rico's Constitution has been disregarded, and Puerto Rico has reneged on its GO and PBA bonds.

In #19574, FOMB does not dispute that Puerto Rico's Constitution provides GO and PBA bondholders priority for payment.  *Compare* #19574-page-112-of-112 (asserting Art. VI, Section 8 "may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan").  Instead, FOMB argues that Article VI, Section 8 of the Puerto Rico Constitution is supposedly preempted by PROMESA.  #19574-page-111-to-112-of-112. FOMB's argument for preemption of Article VI, Section 8 is based on incorrect factual and legal premises, as discussed in my previously filed papers and as further discussed in Section II below.

FOMB asserts in FF/CL  ¶ 57 (#19570-page-36-of-303 ¶ 57) – in an effort to justify separate classification of retiree Claims – that retiree Claims are claims for "essential public services" under Article II, Section 18 of the Puerto Rico Constitution.  FOMB's assertion is disputed by me.  In any event, it is notable that FOMB does not contend that Article II, Section 18 overrides the priority of payment of GO and Commonwealth guaranteed debt under Article VI, Section 8, nor could it.  Article II, Section 18 of the Puerto Rico Constitution, ¶ 2, simply provides:  "Nothing herein contained shall impair the authority of the Legislative Assembly to enact laws to deal with grave emergencies that clearly imperil the public health or safety or essential public services."  By its terms, this does not even purport to provide a payment priority.

Furthermore, the "Nothing herein contained" phrase refers back to Article II, Section 18, ¶ 1, which provides certain employees a right to strike and picket.  Even if Article II, Section 18, ¶ 1 covers some public employees in the Commonwealth's retirement systems (which is not clear, since the provision appears directed at persons employed by private businesses and agencies or by instrumentalities of the government operating as private businesses or enterprises), it is apparent that ¶ 2 simply provides that the Legislative Assembly can override the right to strike and picket in ¶ 1 if necessary "to deal with grave emergencies that clearly imperil the public health or safety or essential public services."

4

By contrast, Article VI, Section 8 is clear that "interest on the public debt and amortization thereof shall first be paid" and that "other disbursements shall thereafter be made in accordance with the order of priorities established by law."  Nothing in either Article VI, Section 8, nor Article II, Section 18 ¶ 2, can be read to justify a reversal of the priority of payment of the GO and Commonwealth guaranteed debt established by Article VI, Section 8. Indeed, the fact that the priority of payment of the GO and Commonwealth guaranteed debt is stated clearly in Article VI, Section 8 – notwithstanding Article II, Section 18, even to the extent it applies to public employees – underscores that the Puerto Rico Constitution expressly does ***not*** elevate payments to public employees or retirees above the first priority for payment of the public debt.

Finally, any notion that cash bonuses to public employees or full recovery of pension benefits (much less a greater than full recovery of pension benefits) for retired public employees is justified as a response to a "grave emergency" that "clearly imperil[s] the public health or safety or essential public services" has no basis in law, fact or logic.  Reducing pension benefits in excess of $1,500/month, or $1,200/month, by 8.5% would *not* "clearly imperil the public health or safety or essential public services."  FOMB has effectively admitted this.  *E.g*., #15988-5-page-236-of-272; #17628-8-page-276-of-309.  *A fortiori*, a failure to provide  cash bonuses to public employees or provide a full recovery of pension benefits cannot be said to "clearly imperil the public health or safety or essential public services".  Rather the opposite is the case:  It is the excessive pension benefits – the cost burden of which is multiples of the GO and PBA debt that is entitled to priority of payment under Article VI, Section 8 – that potentially imperils the provision of essential public services.  And, as noted, Article II, Section 18, ¶ 2 simply puts a constraint on the right to strike or picket provided for in ¶ 1.  FOMB's FF/CL  ¶ 57 distorts the actual import of Article II, Section 18.

5

II.  **FOMB DOES NOT JUSTIFY PREEMPTION OF THE PUERTO RICO CONSTITUTION AND STATUTORY PROVISIONS PROVIDING FOR PRIORITY OF PAYMENT OF, AND SECURITY FOR, ITS FULL FAITH AND CREDIT DEBT**

FOMB's attempt to justify preemption of Puerto Rico Constitution Article VI, Section 8 (#19574-page-111-to-112-of-112) is both factually and legally unfounded.

As to facts:  FOMB misleadingly asserts that debt service on existing GO and PBA bonds would be "over $1.7 billion for fiscal year 2022".  #19574-page-111-to-112-of-112.  In fact, FOMB's own document (submitted as an exhibit by FOMB itself) shows that GO/PBA debt service for FY 2022-2031 averages only $1.332 billion per year (and it declines thereafter). #18797-1-page-10-of-46-p.9.

Furthermore, FOMB's "record evidence supporting preemption" does not even attempt to respond to my documented showing that Commonwealth has ample financial capability to pay all GO and PBA bonds, in full, including all accrued interest to date.  *See, e.g.*, #19422-page-42-to-43-of-103 ¶ 139.l; #18575-page-26,42-of-303; #19047-page-6,9-¶¶10-to-12,19-to-20-of-27; #18758-6, p.4,7,11; #18759-4-page-8-of-16-p.9; #18760-31-page-9-of-9; #18797-1-page-10-of-46-p.9.   Even FOMB, which underestimated Commonwealth's FY2021 net operating cash flow by $3.530 billion (#19047-page-9-of-27), projected in the current (April 23, 2021) fiscal plan a FY2022 surplus before debt service of $1.716 billion (#17628-8-page-302-of-309), which surplus exceeds the approximately $1.332 billion required to pay GO and PBA debt service. #18797-1-page-10-of-46-p.9.

As to the law:  FOMB simply ignores the legal analysis presented in #19422-page-47-to-49-of-103 ¶ 145, a through h, and my other filings.  Among other things, FOMB has no answer to my point that there is, and can be, no inconsistency between PROMESA and the Puerto Rico Constitutional and statutory provisions that provide priorities and liens that PROMESA itself repeatedly references and that Congress made clear should be respected.

## III.   THE TAKINGS CLAIMS OF NONCONSENTING BONDHOLDERS LIKEWISE CANNOT BE DISCHARGED UNDER THE PLAN

This Court's order (#19517-page-6-to-14-of-18) recognizes the nondischargeability of certain Takings claims, in particular claims for just compensation for the "physical taking" of property.  But the legal premises underlying the Court's reasoning extend to preclude the discharge of Takings claims by nonconsenting bondholders as well.

There can be no distinction based on the theory that eminent domain claims or inverse condemnation claims are for "physical taking" of property, but the taking of the property of GO and PBA bondholders is not such a "physical taking."  As I have pointed out, the Supreme Court in *Horne* ruled that the Takings Clause "protects 'private property' without any distinction between different types" (576 U.S. at 358); "a physical appropriation of property" – including personal property – "[gives] rise to a per se taking, without regard to other factors."  (*Id.* at 360).  This is discussed in #19422-page-44-to-47-of-103 ¶140, a through h and ¶144; #18575-page-28-to-30-of-303; #19093-page-4-to-6-of-11; and in argument during the hearing.

FOMB argues that *Security Industrial Bank* and a Sixth Circuit opinion (*In re Nichols*) provide that there is no unconstitutional taking when the Bankruptcy Code impairs and discharges contractual and other unsecured rights, even if characterized as "property" protected by the Takings Clause.  #19574-page-29n.16-of-112.  However, neither *Security Industrial Bank* nor *In re Nichols* dealt with the situation, present here, where the taking is a taking by a government for itself (as distinct from an adjudication of a creditor's rights vis-a-vis a private party in bankruptcy).  In *Security Industrial Bank*, the debtors were individuals to whom creditors had lent money.  459 U.S. at 71.  Likewise, in *In re Nichols*, the debtors were individuals.  440 F.3d at 852, 855.

Furthermore, *Security Industrial Bank*, while observing that the contractual right of a secured creditor to obtain repayment of his debt may be quite different in legal contemplation from the property right of the same creditor in the collateral (459 U.S. at 75), in no way suggested that a property right of whatever nature could be taken by a government, for itself, without just compensation.  There, the government had sought to distinguish cases such as

*Armstrong*, "on the ground that it was a classical 'taking' in the sense that the government

acquired for itself the property in question" (*id.* at 77-78). However, in the context of the case

before it involving a private creditor and a private debtor, *Security Industrial Bank* went on to

comment that "[w]hile the classical taking is of the sort that the government describes, our cases

show that takings analysis is not necessarily limited to outright acquisitions by the government

for itself" (*id.* at 78). Similarly, in *In re Nichols*, the court noted that "[a] takings analysis is not

limited to outright acquisitions of property by the government, but may include transfers of

property from one nongovernmental entity to another due to government laws or regulations"

(440 F.3d at 454 n.2). Neither case remotely suggested that property rights – which the Supreme

Court in recent cases has made clear encompass personal property and intangible property

(#19422-page-44-to-46-of-103) – were not protected by the Takings clause from a taking,

without just compensation, by a government for itself.

## IV.  THE RECENT DECISION IN *PERDUE PHARMA* UNDERSCORES THAT NO RELEASE OF CLAIMS OF NONCONSENTING CREDITORS, HOWEVER DENOMINATED, MAY BE INCLUDED IN THE PLAN OR THE ORDER AND JUDGMENT CONFIRMING THE PLAN

FOMB does not dispute that non-consensual releases of non-debtor third parties are not

appropriate. #19422-page-62-of-103, Section XXIV.A.2 ¶ 197-0.e. Nor does FOMB answer the

analysis I presented in #19422-page-61-to-69-of-103, Section XXIV.A.2. ¶ 197-0.b through 197-

0.r, demonstrating that any "exculpation (or release)" of claims with respect to actions taken

during a bankruptcy case "must be limited to the fiduciaries who have served during the …

proceeding". Thus, the changes to the Plan I identified in #19422-page-61-to-62-of-103 ¶ 197-

0.c should be made.

The inappropriateness of extending releases, however denominated, to non-debtors is

underscored by Judge McMahon's recent December 16, 2021 opinion *In re Purdue Pharma,

L.P.*, 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021). Judge McMahon ruled that releases of non-

debtors were not permissible even where, as in the case before her, the non-debtors had

contributed $4.325 + billion and the Bankruptcy Court had expressly concluded that it was

8

"necessary and appropriate" to approve a non-consensual release of claims against non-debtors. *Id*. at \*27, \*32.  There, too, a settlement was said to be the product of arm's-length bargaining, creditors overwhelmingly supported the settlement (indeed, the proposed Plan, including the releases of non-debtors, was approved by a supermajority of votes cast by the members of each class of creditors), and the failure to approve the settlement was likely to result in complex and protracted litigation.  *Id*. at \*2, \*32.

But what was decisive was that there was no statutory authority for the court to approve non-debtor releases.  *Id*. at \*47-\*48.  As Judge McMahon emphasized, "there is no such thing as 'equitable authority' or 'residual authority' in a bankruptcy court untethered to some specific, substantive grant of authority in the Bankruptcy Code," *id*. at \*38.

V.    **FOMB'S DELAY OF THE EFFECTIVE DATE TO MARCH 15, 2022
      UNDERSCORES THAT THE IRS DETERMINATION OF TAX EXEMPT
      STATUS SHOULD BE OBTAINED BEFORE THE COURT CONFIRMS THE
      PLAN**

I pointed out that, to avoid what happened in the COFINA situation, the Court should wait until the IRS makes a determination as to the tax exempt status of the New GO Bonds before confirming the plan.  *See, e.g.*, #19422-page-18-of-103 response to ¶ 53, at ¶ 53.c and page-71-of-103 Section XXIX.C.  The fact that confirmation of the Plan now must await a court order determining the 2020 Pension Acts are either preempted by PROMESA or are nullified or unenforceable (as discussed in Section I, above) underscores that no purported urgency in issuing a confirmation order justifies doing so before the IRS determination issues.  Because there is no committee with a fiduciary duty to all bondholders in place that could ensure that FOMB acts diligently to timely secure an IRS determination, respectfully, it is the Court's responsibility to independently press FOMB to ensure diligent efforts are made to obtain and publicly announce that IRS determination – before, rather than right after (as occurred in the COFINA case) – the Court enters a confirmation order.  *See* #16908-page-21-to-22,28-to-29-&n.14-of-178, #6283, #7211, #8427, #8487.

### Conclusion

For the reasons set forth above, and in my prior filings, **(A)** confirmation of the Plan should be denied or, alternatively, **(B)** at the very least, **(i)** takings claims of nonconsenting bondholders should not be discharged by the plan, **(ii)** the Puerto Rico constitutional provisions, as well as statutory provisions, providing for payment of full faith and credit debt should not be preempted, and **(iii)** all provisions of the Plan or the proposed order and judgment that provide for release of claims of nonconsenting bondholders against non-debtors, including those denominated as "exculpation," should be deleted from the Plan.

December 23, 2021

Respectfully Submitted,


/s/ Peter C. Hein
Peter C. Hein, pro se
101 Central Park West, Apt. 14E
New York, NY  10023
917-539-8487
petercheinsr@gmail.com

Claim 10696 and 174229
GO Bonds:  500,000 par amount, plus
unpaid interest to date
[5 separate CUSIPS:   74514LVX2
                                  74514LWA1
                                  74514LWM5
                                  74514LWZ6
                                  74514LB63]
PBA Bonds:  200,000 par amount, plus
unpaid interest to date
[CUSIP:  745235M24]


### Declaration pursuant to 28 U.S.C. §1746


I declare under penalty of perjury that the factual statements in the foregoing objection are true and correct to the best of my knowledge and belief.


Executed on this 23rd day of December 2021.


/s/ Peter C. Hein
Peter C. Hein

**<u>Certificate of Service</u>**

I, Peter C. Hein, certify that I have caused the foregoing "Response to the Court's Order #19517, and Response and Objection to Debtors' position on issues presented in the Court's Order #19517 (#19574) and to Debtors' Further Revised Modified Eighth Amended Plan (#19572 and #19568), Proposed Order and Judgment Confirming Plan (#19571) and Proposed Finding of Fact and Conclusion of Law (#19570)" to be served via the Court's CM/ECF system.

December 23, 2021

＿＿＿＿＿ /s/ Peter C. Hein ＿＿＿＿＿
Peter C. Hein