# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| As representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEE'S RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY, | |
| Debtors. | |

## OBJECTION TO CONFIRMATION OF MOFIED EGHTH PLAN OF ADJUSTMENT DATED DECEMBER 20, 2121 Dkt. 19,568

Dated:        December 23, 2021

**TO THE HONORABLE COURT:**

**COMES NOW** creditor Suiza Dairy Corp. ("Suiza"), through the undersigned counsel, files this Objection to the Modified Eighth Amended Plan of Adjustment dated December 21, 2021 at *Dkt. 19,568* (the "Plan").

On December 14, 2021, the Court ordered the Financial Oversight Management Board ("FOMB") to file an amendment to the Plan in order to pay in full the Eminent Domain Claim, or Takings Claims, as constitutionally protected claims. *Dkt. 19,517.* The FOMB filed several documents in response to said order. Specifically, the FOMB filed a new Plan, an Amended Proposed Order of Confirmation and a Response to the Order. *Dkt. 19,568, 19,571 & 19,574.* The FOMB disagrees with the Court that Eminent Domain Claims are non-dischargeable, and submitted another brief basically repeating the same arguments presented before. *Dkt. 19,574.* Notwithstanding, the FOMB has agreed to pay Takings Claims in full if the Court understands that they may not be discharged. *Dkt. 19,568, 19,571 & 19,574.* As such, the FOMB modified the Plan to pay Takings Claims in full, but does not provide for full payment of Suiza's Takings Claim. See. Dkt. *19,568, pp. 103-104*.

Suiza hereby objects to the Confirmation of the Plan of Adjustment under the following reasons:

(1) Suiza's claim is on account of a regulatory taking pursuant to the Takings Clause of the U.S. Constitution. Therefore, the claim is non-dischargeable and may not be impaired by the Plan.

(2) Suiza has a valid proof of claim for a "*Non-Dischargeable Regulatory Accrual
Claim for U.S. Constitution Violations Involving Takings Clause*" that has not
been objected to, and has been deemed allowed.  The Plan may not change the
nature of the Claim.

(3) The Plan unfairly discriminates against Suiza Dairy, who has not consented or
voted in favor of the Plan, in as much as it is paying 100% to other takings claims
and proposes to pay only 50% to Suiza Dairy.

(4) The Plan provides a discharge to non-debtor parties.

With the exception of objection (3) listed above, Suiza will not restate all of our
arguments which have already been abundantly argued.  Suiza will simply provide a brief
summary of each argument and will adopt by reference our prior filings.

To that effect, Suiza hereby incorporates by reference all of our prior filings, and
specifically the following documents in full as if transcribed herein: *Dkts.* 17,013, 18,593,
19,651, 19,087, 19,279, 19,361, 19,397, 19,431 and 19,398 and the oral arguments raised
in the hearings of July 13, 2021, November 8, 2021, November 15, 2021 and November
22, 2021.

### *Suiza has a constitutionally protected takings claim that has to be paid in full under the Plan of Adjustment*

The Plan, as filed, is in contravention of the Takings Clause of the Constitution of
the United States in regards to Suiza's claim against the Commonwealth, inasmuch as it
impermissibly and unlawfully classifies and treats Suiza's claim  on account of a federal
takings determination as subject to discharge under the Plan provisions. On those grounds,

the Plan is unconfirmable under 11 U.S.C. §944 as incorporated by Title III of PROMESA 48 U.S.C. §§ 2161-2177and §314(3) of Title III of PROMESA, 48 U.S.C. §2174, which requires that any plan of adjustment not be proposed in contravention of any law. In the alternative, Suiza's claim should be allowed in its entirety as a non-dischargeable claim against the Commonwealth and Office of the Milk Industry Regulatory Administration ("ORIL" by its Spanish acronym), one of its instrumentalities.

Specifically, ¶1.276, ¶57.1, ¶86.1(b)(xii), ¶89.1, ¶89.2, 92.2(a), ¶92.2(b), ¶92.3, ¶92.5, ¶92.6, ¶92.9 & ¶92.11 of the Plan propose to discharge all claims against the Commonwealth and/or its instrumentalities and enjoin creditors from pursuing those claims, including Suiza's constitutionally protected and non-dischargeable claim. *See Dkt. 19,568 - p. 36-37 - ¶1.276; p. 103 - ¶57.1, p. 157 - ¶86.1(b)(xii); p.162 - ¶89.1; p.162 - ¶89.1; p. 165-166 - ¶92.2(a); p. 166 - ¶92.2(b); p. 168-169 - ¶92.3; p. 169 - ¶92.5; p. 169 - ¶92.6; p. 172-173 - ¶92.9; p. 173-174 - ¶92.11.* The Plan above-listed sections also seek to bar Suiza from pursuing its constitutionally protected claim from the Commonwealth and non-debtor third parties.

As abundantly briefed in the past, the Plan may not affect Takings claims protected by the Fifth Amendment. The FOMB's contention that Suiza's Claim does not stem from a regulatory taking, but from a settlement is frivolous. Whether the regulatory taking was recognized by a judgment or whether the controversy was settled does not change the fact that a taking occurred. In fact, the same could be said for any taking where the claimant accepted a specific amount instead of deciding to litigate the controversy until the final consequences.

3

Lets review a hypothetical example. The Commonwealth performs a classic taking of a real property and deposits a specified amount of money in Court, lets say $100,000. The Proposed Plan protects the injured citizen for that $100,000 which will be paid in full. But, the injured party was not in agreement with the deposited amount claiming the property is worth $500,000, and files a suit against the Commonwealth for the remaining value.  Before the PROMESA case is filed, the Commonwealth and the citizen agree to settle the difference for $350,000.  Under the original Plan, the citizen would only receive $100,000.  There is no question his claim is for a taking, so under the recently amended Plan, the citizen would receive the $350,000 even though he does not have judgment to those effects.

That is exactly the position Suiza is in.  There are several Opinions and Orders memorializing this fact that Suiza had proven that a regulatory taking had occurred. *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 484 (1st Cir., 2009)  ("*Given the ample evidence of arbitrary and discriminatory regulation, we see no abuse of discretion in the court's determination that [Suiza has] demonstrated a likelihood of success on the claim **that defendants' actions constituted a regulatory taking of their property** without due proces*s.")[1]  The parties decided that continued litigation was not productive and decided to settle the matter.  This does not mean that a Taking did not occur, just that the

---

[1] *See also,  Vaqueria Tres Monjitas, Inc. v. Irizarry*, 600 F.3d 1, 6 (1st Cir., 2010) ("*On July 13, 2007, the federal district court of Puerto Rico held that since 2003, ORIL's price scheme had been violating the Due Process Clause, the Equal Protection Clause, the dormant Commerce Clause, and the Takings Clause of the United States Constitution.*"); *See also, Exhibits 1-5 & 7-8 of Dkt. 19,361.*

4

parties decided it was not worth the additional cost, effort and time to continue litigating until final judgment a case that already had been litigated for almost a decade.

We do not want to belabor the Court with additional repetitive arguments, so Suiza hereby incorporates by reference all of our prior filings as listed here-in-above as to why a Taking may not be discharged and as to why Suiza's claim is a Taking protected by the Constitution of the United States. We also hereby incorporate by reference the Court's Order at *Dkt. 19,517, Section II, pp. 6-15*.

### *Suiza's Proof of Claim ("POC") has not been Objected*

Suiza timely filed a POC on May 22, 2018 in the amount of $48,485,151.22 which clearly stated that the basis for the claim was a "*Non-Dischargeable Regulatory Accrual Claim for U.S. Constitution Violations Involving Takings Clause*". See POC 1201-1, p. 3, ¶9. **No party has objected to the POC in any manner**.

It is black letter law that a claim is deemed allowed unless it is objected pursuant to §502(a)[2], made applicable to these proceedings by §301[3] of PROMESA.[4] A Debtor may not change the *nature* of a claim that was not objected to in the confirmation process.[5] It would be inconsistent with the requirements of due process to allow the Debtor to impair

---

[2] 11 U.S.C. §501 (a) provides in its pertinent part:
   "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."
[3] 48 U.S.C. §2161.
[4] *Varela v. Dynamic Brokers, Inc. (In re: Dynamics Brokers, Inc.)*, 293 B.R. 489 (9th Cir. B.A.P., 2003); *In re Farmers' Co-op of Arkansas & Oklahoma, Inc.*, 43 BR 619 (Bankr. WD Ark, 1984).
[5] *Varela*, *supra* at 492. ("*We conclude that the comprehensive chapter 11 statutory scheme defines the minimum due process for dealing with creditors, requires compliance with the claim objection procedures, and precludes using a chapter 11 plan provision as the means to reduce a claim that is "deemed allowed" without the creditor's consent*.")

the claim without the protections and safeguards of the objection process.[6]  This is especially pertinent in the case of Suiza, who has a claim for a regulatory taking.  Because the POC has not been objected to, Suiza was not required to bring forth additional evidence as to the constitutional nature of the claim as a regulatory taking.

**_If the Court intends to enter into the nature of the Claim, Suiza must be allowed an evidentiary hearing to confront the FOMB's allegations and to provide evidence of the nature of the regulatory taking._**

Thus, Suiza's claim has been deemed allowed as a _Non-Dischargeable Constitutional_ claim based on a _Violation of the Takings Clause_. See POC, 1201-1.  As such, the Plan of Adjustment may not change the nature of the claim simply because the Board does not agree with the basis of the claim.  If the Court rules that takings claims are not dischargeable, Suiza's claim must be allowed in full and be declared non-dischargeable the same as all other Eminent Domain Claims in Class 54.

As discussed above and in more detail in Dkt. 19,361 which is hereby incorporated by reference, the FOMB's statement that it is based on a settlement or is contractual in nature is incorrect.  The Settlement Agreement was made part of a Judgment. But more importantly, it is moot considering that Suiza's claim was not objected and is deemed allowed as a claim based on a "_Violation of the Takings Clause_". Id.

---

[6] Id. ("Significantly, there is no rule that authorizes an objection to claim to be litigated in chapter 11 plan confirmation proceedings without complying with Rule 3007. Nor would it make sense to do so in light of the fact that a plan confirmation is a collective proceeding while a claim objection is typically a two-party dispute. Not only is it more difficult for a creditor to litigate against the entire collective body of other creditors and owners in a plan confirmation proceeding, but the evidence relevant to a plan confirmation is so different from the evidence relevant to a claim objection that the two proceedings simply do not form a convenient trial unit.").

This is critical, because as the Supreme Court stated in <u>*Knick v. Township of Scott*</u>, the taking occurred at the moment the Commonwealth effectuated the regulatory taking.[7] ***It is not a judgment which gives Suiza the right to just compensation, but the regulatory <u>taking</u> itself***. <u>*Id*</u>.  The judgments in District Court simply proclaim that the taking occurred and require that the just compensation be granted.  In other words, the Judgments do not give rise to the takings claim, they simply validate it.  At worst, due process requires that Suiza be allowed to present the evidence of the regulatory taking in a claim objection procedure, not in the confirmation of the Plan of Adjustment.  <u>*Varela*</u>, *supra*.

As such, the Court should deem that Suiza's claim is allowed based on a regulatory taking that already occurred, for which Suiza is entitled to just compensation as of the date of the taking.  The Court should also rule that the claim is non-dischargeable.

That should end the analysis, but we will expand, as requested by the Court, into what orders and/or judgments evidence Suiza's takings claims.

### <u>*The Plan unfairly discriminates against Suiza Dairy*</u>

The Plan as now proposed by the FOMB discriminates unfairly and without any justification against Suiza, inasmuch as it proposes to pay other Takings Claimants 100% of their claims while paying only 50% to Suiza on the same type of claim.

---

[7] <u>*Knick v. Township of Scott*</u>, 139 S.Ct. 2162, 2167 (2019) ("*Because of the self-executing character of the Takings Clause with respect to compensation, a property owner has a constitutional claim for just compensation at the time of the taking. The government's post taking actions […] cannot nullify the property owner's existing Fifth Amendment right: "Where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation."*" (quoting, <u>*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*</u>, 482 U. S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987)).

While it is clear that a taking has occurred when the government takes private land for its own use, the Supreme Court has recognized that other government actions which affect the use of private property constitute a taking.[8] These limitations imposed upon private property are known as "regulatory takings".[9]

For purposes of the Fifth Amendment, there is absolutely no distinction between different types of government takings, *to wit* between: (i) classic taking claim (takes the property and deposits funds), (ii) deficiency takings claim (deposits insufficient funds), (iii) inverse condemnation claim (taking property without any payment or impairs the use of a property) or (iv) a regulatory taking claim (a regulation that impairs the property rights of a citizen).[10]  In fact, the Detroit Court ruled "*[a]lthough [the taking] claims differ in their procedural postures, the distinction is irrelevant here as both suits seek just compensation*."[11]  So there can be no question that regulatory takings are viewed the same as other takings for purposes of the Fifth Amendment and the right to just compensation.

Bankruptcy Code section 1122, made applicable by PROMESA section 301(a), provides claims substantially similar to other claims "may" be classified together.[12] Bankruptcy Code section 1129(b)(1), made applicable by PROMESA section 301(a), provides a plan can be confirmed over the rejection of a class only ***if the plan does not discriminate unfairly with respect to each class that has not accepted***, the plan.[13]

---

[8] Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001).
[9] Id.
[10] *Knick*, supra; *Penn Central v. NY*, 438 US 104, 142-144 (1978)
[11] In re City of Detroit, 524 B.R. 147, 267 (E.D. MI. 2014)
[12] 11 U.S.C. §1122(a).
[13] 11 U.S.C. §1129(b)(1)

In the instant case, the FOMB is discriminating against Class 53 - the Dairy Producers - and Suiza in particular, as a non-consenting creditor, in favor of a similarly situated class. Specifically, Class 54 – Eminent Domain Claimants – has an identical type of claim, a constitutionally protected claim for takings under the Fifth Amendment, but Class 54 would receive 100% payment on their claims while Class 53 would only receive 50% on a three (3) year payment plan.

The First Circuit has established that the general rule for classification of claims is that "all creditors of equal rank with claims against the same property should be placed in the same class." *Granada Wines, Inc. v. New England Teamsters & Trucking Industry Pension Fund*, 748 F.2d at 42 (1st Cir. 1984), *citing*, *In re Los Angeles Land and Investments, Ltd.*, 282 F. Supp. 448, 453 (1968). Furthermore, separate classifications for the same type of creditor is "*only justified where the legal character of their claim is such as to accord them **a status different from the other**"* similar creditors. *Granada Wines*, *supra*; See also, Clarke v. Rogers, 228 U.S. 534 (1913) ("Equality between creditors is necessarily the ultimate aim of the Bankruptcy act; and even if the dividend be very small, the court will not construe the act so as to allow one creditor to be preferred above the others.") There is no distinction between the claims in Classes 53 and 54, they are both constitutionally protected claims under the Fifth Amendment.[14]

---

[14] "Whether a plan unfairly discriminates is tested by an objective standard: [in]if the plan protects the legal rights of a dissenting class in a manner consistent with the treatment of other classes whose legal rights are intertwined with those of the dissenting class, then the plan does not discriminate unfairly". *In re Salem Suede*, 219 B.R. 922 (Bankr. D. Mass. 1998).

The FOMB has not provided ANY rationale as to why it can discriminate against Class 53, other than saying that Class 53's claim is based on a settlement and not a taking. As we have abundantly explained, the fact that a settlement was reached does not change the character or nature of Suiza's claim as a regulatory taking of the same type and rank as other takings included in Class 54. *In re Salem Suede*, *supra* ("It is unfair discrimination for a plan proponent to pay claims of equal, nonbankruptcy priority a different distribution by providing one class of creditors with a more favorable distribution than a class of the same legal rank without a legitimate and rational basis for the disparate treatment.") *In re Salem Suede*, *supra, citing*, *In re Barney & Carey Co.*, 170 B.R. 17, 26 (Bankr. D. Mass. 1994). At worst, the FOMB needs to object to the Claim that is deemed allowed has been deemed allowed as a regulatory taking by operation of law.

Other Courts have used a four-part test to evaluate whether a plan is unfairly discriminating: "(1) does the discriminatory treatment have a reasonable basis; (2) could the debtor carry out a plan without the discrimination; (3) is the plan and, in turn, the discriminatory treatment proposed in good faith; and (4) the treatment of the discriminated class." *In re Rochem, Ltd.*, 58 B.R. 641 (Bankr. N.J. 1985) *citing*, *In re Ratledge*, 31 B.R. 897 (E.D.Tenn.1983).

The Plan does not meet any of the above listed factors. There is no reasonable basis for the discrimination. By the FOMB's own admission, the Debtor can carry out the plan provisions without the discrimination. The discrimination is not proposed in good faith - how could it, when the FOMB first argues about the importance of the Dairy Producers but then unfairly discriminates against them. Finally, the treatment is considerably worse for

Class 53 than the similarly situated Class 54. *See also*, *In re Salem Suede*, *supra* ("A plan can discriminate, but not unfairly; any discrimination must be supported **by a legally acceptable rationale, and the extent of the discrimination must be necessary in light of the rationale**.") [Emphasis added]

Finally, "[i]n addition to the prohibition against unfair discrimination, the plan proponent must show that the treatment of a dissenting class is "fair and equitable."" *In re Salem Suede*, *supra*.  To establish whether the plan is "fair and equitable", the Court must examine the Plan and the treatment of the dissenting creditors under the applicable law. *Federal Sav. & Loan Ins. Corp. v. D & F Constr., Inc. (In re D & F Constr., Inc.)*, 865 F.2d 673, 675 (5th Cir. 1989).  In the present case, the Plan is not "fair and equitable" *vis a vis* Suiza, since its constitutionally protected claim is being paid half of what identically placed creditors will be paid under the plan without any justification.

As such, the Plan may not be confirmed because it **unfairly** discriminates against Suiza.

### The Plan Seeks to provide releases to non-debtor third parties

The Plan, seeks to provide releases to third parties in contravention with the law, the case law and the FOMB's own repeated assertions that the Plan would not provide releases to third parties.[15]  *Dkt. 19,568, p. 103 ¶57.1(b).*

In the first instance, the FOMB has repeatedly and consistently stated and represented to the Court that the Plan provides no discharge to third parties.

---

[15] "*(b) the Commonwealth's obligation for the regulatory approval accrual set forth decretal paragraph 14 of the Dairy Producer Settlement shall be treated and discharged in accordance with the Plan **and shall not be recouped by a holder of a Dairy Produce Claim from any other source**...*"  Dkt. 19,568, p. 103 - ¶57.1(b).

Notwithstanding, the Plan provides that the Suiza may not recoup the regulatory accrual it is entitled to from either the Commonwealth, nor from the public.

As several creditors have already stated, the courts within the First Circuit do not favor non-consensual third-party releases within a plan of reorganization.  This type of release has been given sparingly and only in limited circumstances.  *See In re Quincy Med. Ctr., Inc.*, No. 11-16394-MSH, 2011 WL 5592907, at *4 (Bankr. D. Mass. Nov. 16, 2011) ("[O]nly consensual releases are permissible."); *In re Charles St. Afr. Methodist Episcopal Church of Bos.*, 499 B.R. 66, 102 (Bankr. D. Mass. 2013) ("I do not hold that no nonconsensual release, however narrowly tailored and otherwise justified, can ever be approved. Certainly, however, no nonconsensual release can be approved where the plan does not replace what it releases with something of indubitably equivalent value to the affected creditor.").   Third-party releases should be allowed only in "extraordinary circumstances." *In re Grove Instruments, Inc.*, 573 B.R. 307, 314 (Bankr. D. Mass. 2017) (collecting cases).

The leading test for evaluating a non-consensual third-party release was crafted by the Court in *In re Master Mortg. Inv Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994).  It provides a five-factor test to see if the third-party release may be approved.  *Id*.

i. Whether there is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor that would result in the depletion of the assets of the estate.

ii. Whether the non-debtor has contributed substantial assets to the reorganization.

iii. Whether the third-party release is essential to the reorganization.

iv. Whether a substantial majority of the creditors agree to such third-party release, specifically, whether the impacted class has "overwhelmingly" voted to accept the proposed plan treatment.

v. Whether the plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the third-party release.

*See, In re Master Mortg. Inv Fund, Inc.*, *supra*; *See also*, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 361 F. Supp. 3d 203, 254 (D.P.R. 2019); accord *Charles St.*, *supra* at 100.

The proposed third-party release does not meet any of the five factors enumerated by *Master Mortgage* and the other cases cited above. *Supra*. We will now examine how the five the factors fail to apply to the Plan of Adjustment:

i.     There is no identity of interests like an indemnity relationship between the non-Debtor public and the Commonwealth. Recovery of the regulatory accrual from the public at large would not result in any affirmative recovery against the Commonwealth or deplete the Commonwealth's estates. Thus, the first *Master Mortgage* factor is not satisfied.

ii.    The Commonwealth has not demonstrated that the public at large has directly provided any consideration to the Commonwealth's estate or to the Plan of Adjustment in exchange for the releases. Therefore, the second *Master Mortgage* factor is not satisfied.

iii.   The third-party releases do not serve any function other than to impair the recovery rights of the Dairy Producers against the public at large. The non-consensual

13

release of the public at large from having to satisfy the regulatory accrual is not essential to the Plan.  Therefore, the third _Master Mortgage_ factor test is not satisfied.

iv.     The Dairy Producer Class did not vote in favor of the Plan of Adjustment. Thus, there is no "overwhelming" support for the non-consensual third-party releases. Once again, the fourth _Master Mortgage_ factor is not satisfied.

v.      Finally, the Plan does not provide for any consideration in exchange for the non-consensual third-party releases of the regulatory accrual. The fifth _Master Mortgage_ factor is not satisfied either.

Since none of the _Master Mortgage_ factors are satisfied, and the FOMB has consistently stated that the Plan is not intended to provide a third-party release, the Court should not grant any such releases to the public at large as to the Dairy Producers regulatory accrual if it is not paid by the Commonwealth in full.

Since the Plan, as proposed is unconfirmable, the Proposed Order may not be adopted by the Court.  In the alternative, pursuant to §944(c)(1) of the Bankruptcy Code, 11 U.S.C. §944(c)(1), made applicable to this proceeding pursuant to §301(a) of PROMESA[16], this Honorable Court should except the regulatory accrual payments constituting Suiza's claim from discharge.

If the Court were to find that Suiza's claim is dischargeable, the Court should not approve the third-party release included in the Plan in contravention of the _Master Mortgage_ factors.

---

[16] 48 U.S.C.A. §2161

14

## *Conclusion*

In sum, it should be clear that a regulatory taking occurred and an agreement for repayment of the taking was reached.  In accordance with *Knick*, the taking occurred at the time that the taking was effectuated.[17]  In the case of Suiza, the regulatory taking occurred between the years of 2003 and 2013.  No court needs to actually proclaim that the taking occurred.  "*[T]he self-executing character of the Takings Clause*" gives rise to Suiza's constitutional claim.[18]  The Settlement Agreement became a Judgment, entered as a remedy for the, unconstitutional, regulatory taking.  Suiza's Proof of Claim is *prima facie* evidence of the debt.  If the FOMB understood that Suiza's claim was not based on a regulatory taking, it could have objected to the claim to dispute the basis of the same. Notwithstanding, and as discussed above, the District Court and the First Circuit Court of Appeals specifically and emphatically held that a regulatory taking had occurred.

Furthermore, the newly proposed Plan now discriminates against Suiza, inasmuch as the Plan proposes to pay 100% on all other Takings Claims, but only provides payment of 50% to Suiza Dairy.  All takings are the same for the purposes of the Fifth Amendment and just compensation.  The FOMB has not provided, nor can it provide, a reasonable basis for the discrimination of Suiza's Claim versus other eminent domain claims. Therefore, said discrimination is unfair and improper and the Plan may not be confirmed in violation of §1129(b)(1) of the Bankruptcy Code, made applicable by PROMESA section 301(a).

---

[17] *Knick v. Township of Scott*, *supra*.
[18] Id.

Finally, the Plan provides improper third-party releases which may not be approved.

**WHEREFORE**, Suiza Dairy, Inc. most respectfully prays that the court DENY approval of the Modified Eighth Amended Plan of Adjustment as filed, absent an amendment to the same by the Commonwealth classifying Suiza's claim as a non-dischargeable claim subject to a 100% distribution under the Plan, and surviving these proceedings, and deny the approval of any non-debtor third-party releases in connection with Suiza's Claim.

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that this motion was electronically filed with the Court using the CM/ECF system which will notify the filing by electronic means to all parties of record.

By: /s/ *Rafael A. Gonzalez Valiente*
USDC NO. 225209
Counsel for Suiza Dairy
Godreau & Gonzalez Law, LLC
PO Box 9024176
San Juan, PR  00902-4176
Telephone:  787-726-0077
*rgv@g-glawpr.com*

16