## *2013 PR S.B. 1589*

Enacted, December 24, 2013

**Reporter**

2013 PR ALS 160; 2013 PR LAWS 160; 2013 PR ACT 160; 2013 PR S.B. 1589

PUERTO RICO ENGLISH ADVANCE LEGISLATIVE SERVICE > SEVENTEENTH LEGISLATIVE ASSEMBLY, FIRST REGULAR SESSION > NO. 160 > S.B. 1589

## Digest

**Statement of Motives**

Education is the foundation of the future of every society. Education instills knowledge, experiences, and values in the persons who shall become the leaders of the Island. Section 5 of Article II of the Constitution of the Commonwealth of Puerto Rico establishes that every person has the right to an education which shall be directed to the full development of the human personality and to the strengthening of respect for human rights and fundamental freedoms. Therefore, the government has the responsibility of providing the adequate tools to guarantee top-quality public education.

Teachers, an essential component of education, are the professionals entrusted with the most significant task in the lives of their students and their influence is everlasting. Teachers hold the key to the success of the whole country. Therefore, the Government of the Commonwealth of Puerto Rico is committed to do everything that is necessary to protect and provide them with a worthy retirement, which they deserve for all the years devoted to teaching the People of Puerto Rico.

At present, the Teacher's Retirement System (the "Teacher's System" or the "System") is undergoing a fiscal crisis that threatens to leave it without sufficient funds to meet its present and future obligations to the teachers of our public education system and System employees and participants (hereinafter "teachers"). Said System has an actuarial deficit[11] that jeopardizes the payment of teacher's pensions and the fiscal stability of our Island. As of June 30, 2012, said deficit amounted to approximately $10.251 billion, according to the most recent actuarial report. It is estimated that, in order to meet its obligation to pay retired teacher pensions for the following years, the Government would have to make an annual contribution of over $736 million[22] to the System for life —an amount that would continue to increase in the next years— since the accrued actuarial debt is expected to increase indefinitely if no changes are made.

If prompt action is not taken, the Teacher's System would be left without money, as soon as in fiscal year 2020, to meet its obligations, including the payment of pensions to retired teachers. This is due to the fact that, as of June

2013 PR S.B. 1589

30, 2013, the Puerto Rico Teacher's Annuities and Pensions Fund (the "Fund") is in a state of advanced maturity, since it has a considerable population of pensioners (37,996) compared to its active participants (41,973), according to data gathered by the System itself. Likewise, the payment of pensions and the Fund's administrative expenses are significantly higher than the income from employer and individual contributions, which make it necessary to use the return on investments and the assets of the Fund to pay pension benefits. In fact, as of June 30, 2012, the funded ratio (ratio of net assets to obligations) of the Teacher's System was scarcely 17%, which means that, as of said date, the Teacher's System had only 17 cents of every dollar needed to pay retired teacher pensions. This contrasts with the information provided by independent United States firms, which show that as of June 30, 2012, the average funded ratio of state retirement systems was 72.5%, much higher than the funded ratio of the System. Although the funded ratio of the Teacher's Retirement System is higher than the one the Public Employees System had prior to the approval of Act No. 3-2013, the risk posed by the Teacher's Retirement System to the General Fund is similar or greater than that of the Public Employees System, since the Teacher's System continues to be a defined benefits system (contrary to the Public Employees System, which was closed by System 2000, through Act No. 305-1999), which means that the projected deficit is long-term, and thus, greater than that calculated for the Public Employees System prior to the approval of Act No. 3-2013. Undoubtedly, because of the extent of the existing problem, it is necessary to take decisive measures that are also fair and sensible, to guarantee the payment of benefits to both our retired teachers and to those that continue educating our children and youth.

In the case of our teaching professionals, the need to prevent the draining of the System's funds is extremely compelling, since, as it is known, teachers do not contribute to the Social Security System.33 In most cases, this means that the only income that our retired teachers shall receive in their old age will come from the System. In view of this, this Legislative Assembly has the obligation to protect the retirement benefits of thousands of active and retired participants through the approval of reasonable and necessary solutions that shall prevent the insolvency of the System, in order for them to enjoy a fair retirement worthy of their commitment to the future of our Island.

At this juncture, we cannot afford to sit back and do nothing. We cannot repeat the mistakes of past Administrations that were aware of the magnitude of the crisis of the Teacher's System, but failed to take the necessary measures to address it, subsequently worsening the situation. It is our responsibility, not only towards teachers but also the Island, to face the problem once and for all. It is necessary and urgent to conduct an encompassing and fair System reform so that all Teacher's Retirement System participants can be guaranteed a decent retirement.

FISCAL CRISIS OF PUERTO RICO

The System's crisis arises at the same time as the precarious fiscal situation of the Central Government; the most critical fiscal situation ever in the history of the Island. It is well known that in January 2013, and in spite of the approval by the past administration of Act No. 7-2009, known as the "Special Act to Declare a State of Fiscal Emergency and to Establish a Comprehensive Fiscal Stabilization Plan to Salvage the Credit of Puerto Rico" ("Act No. 7"), it was projected that the General Fund's deficit for fiscal year 2012-2013 would exceed $2.2 billion. Several

Case:17-03283-LTS   Doc#:19606-2   Filed:12/23/21   Entered:12/23/21 20:28:30   Desc: Exhibit B
Exhibit B - Act 160-2013   Page 3 of 51

Page 3 of 51

2013 PR S.B. 1589

measures carried out by this Administration were able to reduce said deficit to approximately $1.290 billion by June 30, 2013. For fiscal year 2013-2014, several significant tax measures have been approved, to wit: the amendment to Act No. 154-2010, which extends until 2017 the excise tax on certain products and services provided in Puerto Rico to foreign corporations, and Act No. 40-2013, as amended, known as the "Tax Burden Redistribution and Adjustment Act." Through the implementation of said measures, it has been projected that the deficit shall be reduced to $820 million. However, in spite of all the efforts made until now, the General Fund still has a deficit, which warrants ongoing evaluation and further reduction of expenditures of the General Fund in order to achieve a balanced budget for fiscal year 2016, without the need to refinance the debt to make up the budgetary deficits.

On the other hand, the situation of public corporations is not different, since it is estimated that the combined deficit of the three main public corporations was of approximately $800 million by fiscal year 2012-3013. The public debt of the government of the Commonwealth of Puerto Rico as of June 30, 2013, including the debt pertaining to the General Fund, the municipalities, public corporations, and agencies, amounted to $70.043 billion, having increased by $13.588 billion in the last 5 years.

The Island's credit is also at an extremely fragile situation due to the downgrading of the public debt of the Central Government during the past fiscal year to one grade above "junk" by the three main credit rating agencies. Likewise, the bonds of several instrumentalities of the Commonwealth and public corporations, including the bonds of the Public Employees System, the University of Puerto Rico, the Convention District Authority, the Government Development Bank for Puerto Rico, the Municipal Financing Authority, and the Electric Power Authority, were also downgraded. The bonds of the Aqueducts and Sewer Authority, the appropriation bonds of the Public Finance Corporation, and the subordinated bonds of the Highways Authority have already been downgraded to "junk" status. In fact, one credit rating agency recently reported the downgrading of a portion of the bonds issued by the Puerto Rico Dedicated Sales Tax Fund Corporation (COFINA) and changed the outlook to negative. Furthermore, on November 14, 2013, one of the credit rating agencies placed the Commonwealth of Puerto Rico general obligation bonds on credit watch, and another credit rating agency did the same on December 11, 2013. It must be pointed out that a credit watch is an action taken by credit rating agencies when they are considering a credit downgrading, in this case, to junk status.

There is no doubt that, in view of the serious fiscal strait situation of the government apparatus, and in spite of all the measures recently taken to address this situation, the government does not have sufficient funds to inject the money needed to cover the actuarial deficit of the Systems.

DESCRIPTION OF THE TEACHER'S SYSTEM

The Teacher's System is a defined benefits plan governed by Act No. 91-2004, as amended, known as the "Commonwealth of Puerto Rico Teacher's Retirement System Organic Act" ("Act No. 91"). In general terms, by virtue of Act No. 91, the minimum retirement age for System participants is 47 years-old, with at least 25 years of service. Participants who meet said requirements are entitled to receive an annuity equal to 95% of the amount resulting from multiplying 1.8% of their average salary by the number of years of service.

2013 PR S.B. 1589

The System is designed to provide greater benefits to older participants who have more years of service. The merit pension is the maximum benefit for those participants that have reached the age of 55 and completed a minimum of 30 years of service, who are entitled to an annuity equal to 75% of their average salary. As an alternative, participants may retire when they reach the age of 60, and complete at least 10 years of service, being entitled to receive an annuity equal to 1.8% of the average salary, multiplied by the number of years of service. In any case, the average salary is calculated on the basis of the highest salaries earned during any 36 months, and the minimum pension to be received by every participant shall amount to $400 per month.

THE CAUSES OF THE CRISIS

The actuarial deficit of the Teacher's System is due to several causes, including the original design of the System —which did not foresee the demographic changes of the participants— and the alterations that have been made thereto through amendments and special laws that have increased the benefits of retired participants. All this without contributing the resources to defray the cost of said increases, thus bleeding dry the System's assets.

The main causes of the crisis are the following:

1) Inadequate contributions:

Since its beginning, by virtue of Act No. 218 of May 6, 1951, which created the Teacher's Retirement Board (which was later substituted for the present System), it did not receive adequate contributions to maintain a healthy solvency level. The System was designed as a defined benefit system whose pensions were fixed by law and did not depend on the amount of contributions made by the Commonwealth, as the employer, or by the employees. The law that created the System established a contribution level that was not proportional to the benefits to be paid by the System nor did it adjust to the economic or actuarial changes that affected the level of benefits.

To worsen the deficiency, a series of laws passed during the past decades weakened the System's finances by increasing the benefits without receiving additional contributions. The government never paid the employer contribution recommended by actuaries to cover retirement benefits.[4] To begin addressing the asset insufficiency, approximately $551 million[5] would have had to be contributed to the System during the last seven years. The General Fund did not have —nor does it currently have— the resources needed to cover said amount.

2) Early retirement programs:

Although on a lesser degree than the Public Employees System, the Teacher's System also suffered the brunt of the early retirement programs. As in the Public Employees System, teachers who choose to retire availing themselves of these windows receive a benefit which is usually equal to or greater than what they would have received had they stayed until the original retirement date, and, in turn, the corresponding and necessary employer contributions to compensate the payment of pensions are not available. Even though in the case of the Teacher's System early retirement programs provide that the employees shall continue to make their monthly contribution to the System from the time of their retirement to the time in which they would have reached the retirement age established in Act No. 91, in accordance with the benefit received, said contribution is not actuarially sufficient, due

2013 PR S.B. 1589

to the difference between the teacher's contribution and the amount enjoyed by the latter since his/her retirement. Since the government does not supplement the corresponding contributions to the System to make up the contribution deficit caused by early retirement, a debt equal to or greater than that originally foreseen is accrued with respect to the person who retired early, with less income to cover the same.

3) Changes in the life expectancy of participants:

The average life expectancy in Puerto Rico and the United States has increased to 78 years, for both sexes, in the last 60 years. As a result, pensioners will receive benefits for a number of years that exceed what was originally foreseen. According to a study of the Department of Health, in 1950, a year before the creation of the Teacher's Retirement Board, which precedes the System, the life expectancy of Puerto Ricans was 59.5 years for men, 62.4 years for women, and 60.9 years for both sexes. The most recent data of the Department of Health published in February 2013, shows that by 2010, the life expectancy for men was 74.85 years, 82.56 years for women, and 78.7 years for both sexes, an increase of approximately 18 years in average life expectancy. The increase in life expectancy forces the System to defray pensions for longer periods than what was foreseen at the time of fixing retirement ages in the law, especially if it is taken into consideration that the System has a demographic dominated by women, which is the group with the highest life expectancy. There is no doubt that the changes in the life expectancy of participants have had a negative impact on the coffers of the System.

4) Impact of special laws:

The so-called "Special Laws" consist of a series of laws that grant additional benefits to those originally provided to the participants. These Special Laws include:

• Summer bonus;

• Medications bonus;

• Christmas bonus;

• Contributions to health insurance plans;

• Other minimum pension benefits;

• Other minimum death benefits; and

• Cost of Living Allowances (COLAs)

The annual cost of the benefits granted by the Special Laws to the System is of approximately $64 million. The benefits granted by the special laws are supposed to be defrayed by the General Fund, but this has not been the case. Therefore, the System has had to incur these expenses, thus worsening the deficit. The benefits established by Special Laws play an important role in the delicate fiscal situation faced by the General Fund and the System.

FAILURE TO ACT IS NOT AN OPTION

2013 PR S.B. 1589

The System is undergoing the greatest and most severe crisis in its history. We have the historic responsibility of reforming it in order to strengthen its fiscal situation and to assure that our teaching professionals shall have the resources needed to enjoy a decent retirement, after having devoted their efforts to public education.

It is imperative to take immediate action to improve and assure the fiscal solvency of the System, in order to close the gap between the net assets and those required to continue paying the pensions of our retired teachers and future retirees. Failure to act now would entail more drastic measures in the future, if we consider that the projections of the Teacher's System show that there will be a cash flow deficit of approximately $322 million for the current fiscal year 2013-2014. In considering the aforementioned situation, we should bear in mind that teachers are public servants who do not contribute to the Social Security System, for which reason many of them depend solely on the retirement annuity provided by the System. Being this the case, it is the obligation of not only the government, but also of all of us to assure a minimum income to the teaching professionals of the Island in their old age.

The magnitude of the actuarial deficit of the Teacher's System exceeded $10.251 billion as of June 30, 2012. To correct this deficit, the government's contribution to the Teacher's System for fiscal year 2012-2013 should have been of approximately $736 million. However, the government only contributed $186 million (including employer contributions and payments under the Special Laws), or approximately 25% of such amount in accordance with the laws in effect. For the government to make a $736-million contribution to the Teacher's System, it would have to make drastic cuts in government safety, health, and education services, including additional reductions of personnel, and any necessary adjustments to reduce the $820 million deficit that still burdens the General Fund. Thus, the easy solution of the past, that is, of patching the System with an injection of non-recurrent cash sources or the appropriation of additional resources originating from the General Fund is no longer available to close this wide gap due to the crisis the General Fund is undergoing and the weaknesses of the general finances of the Commonwealth of Puerto Rico.

On the other hand, it has been estimated that as soon as in fiscal year 2019-2020, the System shall not have sufficient funds to cover the payment of its obligations; to wit, the payment to pensioners, since its assets would have been depleted. This means that if prompt action is not taken, by fiscal year 2019-2020, the System would rely, almost exclusively, on employer and individual contributions for the payment of its obligations, which represents only about 59% of what is required to pay its obligations for said year. This is the current situation even considering the approval of Act No.114-2011, which increased employer contributions to the System in a staggered manner from 9.75% in 2011 to 19.75% in 2020. In spite of this, the government would still have to appropriate more money from the General Fund, in addition to those approved under Act No. 114, to inject them into the Teacher's System, funds that as we have indicated, are not available to the government.

There is no doubt that the problem has reached a critical level. The System's crisis is no longer the exclusive problem of the teachers of the public education system who hope to be able to enjoy their retirement; it is a systemic risk that threatens the Puerto Rican society and the daily lives of the people of the Island.

Jessica Mendez-Colberg

2013 PR S.B. 1589

The System's deficit has the following implications for all the citizenry:

1) The annual cost of the System is unsustainable for Puerto Ricans:

According to projections provided by the actuaries of the System, if drastic changes are not made, the present contributions of the General Fund to the System would have to be increased significantly to average approximately $562 million annually from fiscal year 2019-2020 to fiscal year 2049-50, in addition to the sums already paid by employer contributions as amended by Act No. 114, all this in order to defray the cost of the pensions of our participants. Note that said amount ($562 million) is comparable to the amount that was required from the General Fund to annually pay the pensions of the Public Employees System beginning on the current fiscal year —in the event that Act No. 3-2013 had not been approved— which amounted to approximately $579 million. The reason for this is that the impact of the Teacher's System on the General Fund is similar to the impact that the Public Employees System had prior to the approval of Act No. 3-2013, since in the case of the Teacher's System, 100% of the employer contributions originated from the General Fund. In the case of the Public Employees System, only 64% of the employer contributions originated from the General Fund, and the remainder is payable from the budgets of public corporations and instrumentalities of the Commonwealth of Puerto Rico.

The crisis of the Teacher's System is of such magnitude that if no action is taken, within just 10 years, that is by 2023, the contributions needed from the General Fund to meet the obligations of the Teacher's System would exceed the contributions needed to meet the obligations of the Public Employees System, and for each dollar of income that the government earns, 20 cents would have to be allocated to pay the pensions of both Retirement Systems (even when the changes to the Public Employees System approved through Act No. 3-2013 are being considered), which would make it impossible to perform government work in countless aspects. The government simply does not have the resources to continue making more contributions to the System.

2) Essential public services shall be at risk:

The burden posed by the contributions made by the Commonwealth to the Fund is extremely onerous and shall continue to grow. This jeopardizes the viability of basic services that the government should provide to the people, such as public safety, health services, and education. For example, by fiscal year 2023, the government shall have to set aside more than $1.700 billion to contribute to both Retirement Systems,6 6sum that has been estimated will continue to grow throughout the years.

3) The Teacher's System will not have sufficient money to pay the pensions:

With $1.875 billion net assets as of June 30, 2013, it is estimated that the Teacher's System shall be left without funds as soon as in 2020. As stated above, this means that when there are no net assets left, the Teacher's System shall have a funded ratio of 0%, which means that there shall not be enough money to pay the pensions of retired persons.

4) If the Teacher's Retirement System is not reformed, the credit of Puerto Rico shall be downgraded

2013 PR S.B. 1589

As it has been reported by credit rating agencies, the credit of Puerto Rico shall be downgraded to "junk" if the Teacher's System is not reformed. The consequences of this action would be devastating for the Island. The fragility and actuarial deficit of the Teacher's System (together with the fragility and actuarial deficit of the Public Employees System) has been a recurrent finding of all credit rating agencies regarding the condition of the public finances and the rating of the obligations of the Commonwealth of Puerto Rico. This Administration must take decisive, yet fair and sensible decisions in order to maintain and improve the credit rating of the general obligation bonds.

On May 15, 2013, a credit rating agency indicated, in reference to the Government of the Commonwealth of Puerto Rico, that "[t]he authorities still needed to make compulsory changes to the Teacher's Retirement System." On August 14, 2013, another credit rating agency indicated that "[i]n the coming months, the Government has plans to significantly reform the Teacher's Retirement System, which has an actuarial deficit of $9.100 billion and a funded ratio of 20.8%." Lastly, on December 11, 2013, when placing the general obligation bonds of the Commonwealth of Puerto Rico on a "watch" to be downgraded to junk status, another credit rating agency indicated that a downgrade to junk status would be more likely "if the Government is unable to carry out the needed reform in the Teacher's Retirement System."

As this Administration responsibly addressed the financial crisis of the Public Employees System, which has been recognized by the top three credit rating agencies as a necessary step to improve the fiscal health of the government, it is now a priority to address the fiscal health of the Teacher's System. If this crisis is not addressed now, there is a real and imminent risk that the credit of the Commonwealth of Puerto Rico will be downgraded to "junk" status.

Even though in the last few months the prices of the Commonwealth of Puerto Rico bonds have fallen to historical levels, a downgrade by the credit rating agencies would have an immediate and disastrous effect in the people's wallets, since it would unleash an unprecedented financial crisis in the Island. This would cause, among other things, the closing of financial markets to the government of Puerto Rico; an additional significant devaluation of all government and public corporations obligations; a reduction in the short-term lines of credit granted by banks that the government uses to finance its operations; a significant increase in interest rates; and the loss of millions of dollars invested in Individual Retirement Accounts (IRA), and in public and private retirement plans that have investments in government bonds. Specifically, the impact of such downgrading on government finances would be monumental. There would be an abrupt reduction in revenues and the impossibility of resorting to effective financing to cover budgetary insufficiencies and to manage government operations. This would have devastating consequences because basic government services would be seriously affected. Given the government's need to be able to finance its operations and capital works through the financing obtained in financial markets and the fragility of our credit and its present rating, it is indispensable to promptly resolve this crisis. The longer we wait to solve this issue, the more the insolvency of the System will worsen, thus increasing the adverse social impact of any solution implemented. There is no doubt that the interest of this Legislative Assembly is to promptly resolve the crisis we face through the implementation of well-pondered, reasonable, fair, and permanent solutions.

Jessica Mendez-Colberg

2013 PR S.B. 1589

ALTERNATIVES ANALYZED TO ADDRESS THE CRISIS

As part of the analysis conducted by this Legislative Assembly to address the fiscal crisis of the Teacher's System, several measures introduced by the main representatives of the teachers, which they considered would be able to address the fiscal deficit of the system were evaluated.

The proposals presented by the representatives of teachers included the following: 1) a 10%-reduction in the administrative expenses of the System; 2) a 10%-reduction in the administrative expenses of the Department of Education and the transfer of such savings to the System; 3) the payment of $24 million that the Department of Education failed to contribute to the System on account of employer contributions pursuant to Act No. 45-2000, and that the Department continues to make the corresponding contribution in accordance with Act No. 114-2001; 4) the elimination of privileged pensions in the Teacher's System and the imposition of a monthly $3,500.00-cap on pensions paid by the System;

5) the appointment to required positions available in schools to increase contributions to the Teacher's System; 6) a 1%-increase in the taxes of foreign corporations and that said increase be allocated to the Teacher's System; 7) the appropriation of unclaimed funds of the Electronic Lottery to the Teacher's System; 8) the imposition of an additional tax on the consumption of cigarettes, alcoholic beverages, and fast foods; and 9) the imposition of a fee of up to 10% on prices over $1,000 won in games of chance.

Several of the proposals presented by the teachers were accepted, including: 1) the 10%-reduction in the administrative expenses of the Department of Education (approximately $52 million annually), sum that shall be covered into the System by a portion of the Teacher's Justice Uniform Contribution; 2) the 10.—reduction in the administrative expenses of the Teacher's System (approximately $2.5 million annually), which shall be covered into the System by a portion of the Teacher's Justice Uniform Contribution; 3) the payment of $24 million allegedly owed by the Department of Education which, although the government does not acknowledge said debt, it shall be paid through a portion of the Teacher's Justice Uniform Contribution; 4) the elimination of privileged pensions since, as of the effectiveness of this Act, and on a prospective basis, the benefits received by System participants shall be proportional to their contributions; 5) the appointment to positions required in schools, which shall be done responsibly taking into consideration the fiscal situation of the Department of Education.

Even though several important proposals made by the teachers were accepted, the truth is that they are not enough to reduce the current actuarial and cash flow deficit of the System. For example, even if the government commits to not only reduce by 10% the administrative expenses, but to also pay all the administrative expenses of the Teacher's System, it would have to do so for more than a decade in order to defray the System's cash flow deficiency of one year. On the other hand, proposals to appropriate unclaimed prizes from the Electronic Lottery to the Teacher's System and to impose a fee of up to 10% on prizes over $1,000 won in games of chance, even though they would not have a significant impact on the current situation of the System, are still under analysis since they could affect the cash flow of the General Fund and, thus, worsen the fiscal deficit of said Fund.

Jessica Mendez-Colberg

2013 PR S.B. 1589

Furthermore, some proposals introduced by the teachers could not be accepted because they are not feasible. For example, the 1%-increase to foreign corporations, although it could generate a considerable cash flow, is not feasible because said tax was increased and temporarily extended in order to reduce the projected deficit in the Island's budget for fiscal year 2013, and an additional increase could cause these corporations to lose the Federal tax credit they receive. Likewise, fees and excise taxes on the consumption of cigarettes, alcoholic beverages, or others do not generate large income; they are rather used to deter the consumption of said substances. Thus, even if this measure were to be accepted, it would not have a real impact on the System's current situation.

As stated above, the crisis of the System is such, that it is necessary to implement comprehensive solutions immediately. Although the intent of this Legislative Assembly is to modify the Teacher's System, so that the retirement benefits currently received by thousands of teachers and the retirement expectations of other thousands who are still working at the Department of Education are not severely affected, we believe that the Teacher's System requires a comprehensive solution where all the sectors involved, that is, retired and active teachers, the government, and the rest of the Island, contribute to guarantee the subsistence of the System and the future payment of the pensions to our teachers.

IN VIEW OF THE PRESENT CRISIS, IT IS NECESSARY TO IMPLEMENT A COMPREHENSIVE SOLUTION IMMEDIATELY

It is of utmost importance to implement a comprehensive reform plan to address the actuarial crisis of the System. If the present structure does not undergo significant changes, all Puerto Ricans, including retired teachers, active teachers and all other productive sectors of our society will have to make great sacrifices in order to pay the obligations accumulated by the System and to guarantee an adequate retirement income for the teaching professionals.

As it has been said, the measures submitted by the teachers are not enough to salvage the System, since they do not significantly reduce the cash flow deficit thereof. To achieve this, in addition to implement the increase in employer contributions already legislated (that is backed by the contributions paid by taxpayers), it is required to reduce the actuarial deficit and the insufficiency of funds for the payment of benefits by striking a balance between measures that contemplate, among others: (1) freezing benefits accrued by active participants under Act No. 91, by eliminating the accumulation of new benefits under the present defined benefit plan, yet honoring any benefit accrued by said participants to the present; (2) transferring active members under Act No. 91 to a defined contribution plan with a minimum benefit guaranteed for active participants as of July 31, 2014; (3) prospectively eliminating the merit pensions; (4) raising the retirement age for future teachers; (5) increasing the contribution of System participants; (6) increasing employer contributions, in addition to the increase previously legislated through Act No. 114-2011; (7) modifying the benefits granted by Special Laws to retired participants and eliminating said benefits prospectively; and (8) modifying the benefits for disability and for participant beneficiaries.

Even after taking all these measures, the actuaries of the System estimate that the General Fund would also have to make an additional contribution equal to tens of millions of dollars annually to cover the deficit of the Teacher's

Jessica Mendez-Colberg

2013 PR S.B. 1589

System. This will be addressed through the implementation of a Teacher's Justice Uniform Contribution and an Annual Additional Contribution. It is necessary to stress that this annual contribution to the System shall be in addition to the increase in employer contributions provided in Act No. 114-2011, and the one approved herein; therefore, additional funds must still need to be allocated to the General Fund to close this gap.

EXPLANATION OF THE AMENDMENTS

Each of the amendments included in this legislative piece is reasonable and necessary so that, all together, the actuarial deficit of the System, as well as the cash flow deficit that the same suffers and threatens to deplete the System's assets in the near future, are significantly reduced.

1) New Defined Contribution Program and a New Minimum Pension Guaranteed for Active Teachers

In accordance with recent legislation, the contributions that active teachers and the Commonwealth, as employer, would have to make to maintain the current benefit structure are completely incompatible with the financial capacity of the teachers of our public education system and with the fiscal reality of the General Fund, which has the burden of making additional contributions legislated under Act No. 114-2011 to the Teacher's System and, even with the changes contemplated herein, additional appropriations of tens of millions of dollars annually would be needed to reduce the System's cash deficit. However, it is necessary to point out that the benefits accrued by teachers until the effective date of this Act, shall remain and be paid in accordance with the provisions of Act No. 91, as it reads at present. Therefore, upon retirement, teachers shall receive a pension that shall be a combination of (i) the annuity resulting from the benefits accumulated until July 31, 2014, plus (ii) the annuity to be calculated on the basis of what they have accrued under the new Defined Contribution Plan as of August 1, 2014, until their separation from service.

Notwithstanding the above, those active teachers as of July 31, 2014, who are not eligible for retirement on such date with a pension whose benefit is equal to or greater than 65% of the Average Salary, as defined in this Act, and who subsequently apply for retirement upon completing 30 years of service and reaching the age of 55, shall be entitled to a minimum pension of one thousand five hundred sixty-two dollars ($1,562) monthly. Taking into consideration that, according to the System's most recent actuarial report of June 30, 2012, and the statistics of the System's Administration, the average pension of teachers amounts to approximately $1,371 monthly, and that teachers do not contribute to the federal Social Security System, this legislative piece is a measure of justice for active teachers at the time of their retirement, within the adjustments that must be made to safeguard the economic solvency of the System. For such reason, this Legislative Assembly deems that this measure is reasonable, since it honors the accumulated benefits of active teachers, and guarantees a minimum of subsistence for these public servants, while significantly alleviating the future annual deficit of the System.

2) Raise in Retirement Age for Future Teachers

This Act establishes two possible retirement ages for all active teachers as of July 31, 2014, both depending on their years of service: 1) at the age of 55 years, in the case that the teacher has completed thirty (30) years of

2013 PR S.B. 1589

service or more (which would make the person eligible for the minimum guaranteed pension); or 2) at the age of 60 years for those teachers who have completed at least five (5) years of teaching service. In the case of teachers who enter the System after July 31, 2014, this Act increases the retirement age to 62 years.

3) Increase in Employee Contribution

It is hereby provided that the employee contribution shall increase from the current 9% to a 10% of the employee's monthly salary from August 1, 2014, with an actuarial review thereof in fiscal years 2017-2018 and -2021. The reason for such increase is that teachers do not contribute to Social Security. Still, this increase in their contribution to a minimum of 10% will be less than the contribution made by other government employees with respect to their retirement. The actuarial review in fiscal years 2017-2018 and 2020-2021 shall be proportional to the employer contribution for each of these fiscal years, and may be rendered ineffective if the Actuary certifies that said review is not necessary to alleviate the actuarial deficit of the System.

4) Increase in Employer Contribution

Through Act No. 114-2011, it was provided that as of July 1, 2011, the employer contribution would increase to nine point five percent (9.5%) of the monthly salary of the System participant; from July 1, 2012 to June 30, 2016, the employer contribution would increase annually by one percent (1%) of the monthly salary of the System participant; and from July 1, 2016 to June 30, 2021, the employer contribution would increase annually by one point twenty-five percent (1.25%) of the monthly salary of the System participant, for a total employer contribution of 19.75% of the monthly salary of the participant beginning on fiscal year 2021. This Act maintains the same structure set forth in Act No. 114-2011, and further provides that beginning on fiscal year 2022, said employer contribution shall increase to 20.525% of the monthly salary of the participant. In this manner, the Commonwealth shall increase its contribution for the economic solvency of the System, so that together with other measures implemented, the continuous payment of the pensions to our teachers is thus guaranteed.

5) Special Laws

Various special laws are hereby repealed to eliminate the benefits thereunder for future pensioners. However, every dollar saved through the modifications to the special laws shall be paid to the System in order for these funds to be available to improve the benefits of those who receive less, to make up the actuarial deficit of the System, and thus contribute to the payment of the pensions to which retired participants are entitled.

With respect to teachers currently retired, said laws are hereby amended to reduce some of the benefits provided by the same. A one hundred dollar-Medication Bonus, a two hundred dollar-Christmas Bonus, and a one hundred dollar-health insurance contribution are among the benefits included herein for all participants who retire by July 31, 2014.

6) Teacher's Justice Uniform Contribution and an Annual Additional Contribution

Jessica Mendez-Colberg

2013 PR S.B. 1589

To address the cash flow deficit of the System each fiscal year, the Teacher's Justice Uniform Contribution is hereby established, which shall be equal to $30 million in fiscal year 2016-2017, $30 million in fiscal year 2017-2018, and $60 million for subsequent years as of fiscal year 2018-2019 until fiscal year 2041-2042. The Teacher's Justice Uniform Contribution shall cover into the System the funds obtained from the implementation of the measures introduced by the teachers, particularly the reduction of administrative expenses in the System and in the Department of Education. Furthermore, a portion of said Teacher's Justice Uniform Contribution shall serve as repayment of the $24 million that teachers claim the Central Government owes to the Teacher's System. In this manner, the several measures championed by the teachers to salvage their Retirement System are addressed and implemented.

In addition to the foregoing, and to assure that the System has sufficient funds to continue to pay the pensions, the Additional Annual Contribution is hereby established from fiscal year 2018-2019 to fiscal year 2041-2042, which shall be equal to the amount certified every two (2) years by the external actuary of the System as may be necessary to prevent that the value of the projected gross assets of the System is less than $300 million in any subsequent fiscal year.

This group of major measures goes hand-in-hand with other changes implemented herein, such as: the modification of the rules for the purchase of uncredited services; the modification of death benefits; the modification of the requirements to obtain benefits by the surviving spouse; and the modification of disability benefits. This group of measures shall have the net effect of allowing the System to significantly reduce both its annual cash flow deficit and its actuarial deficit, thus guaranteeing the extension of the life of the System in order to pay pensions to our teachers, and eliminating the shor.—and long-term pressure on the General Fund, so that the ability of the government to provide basic services to the citizenry is not affected and our already delicate credit rating does not worsen.

This Reform is designed to impact on a fair and equal manner all the components of the System: the Commonwealth (through the increase in employer contributions, additional annual contribution, and the reduction of the expenses in the Department of Education and in the administration of the Teacher's System), retired teachers (through the reduction or elimination of some of the benefits granted by the Special Laws), System's active teachers (through the modification of the benefit structure, the raise in the retirement age for teachers who enter the System as of August 1, 2014, and the increase in employee contribution), and taxpayers in general (through the injection of additional moneys from the General Fund to the System on account of taxes paid by the people). Each one of these measures is an essential element to prevent the System's insolvency and thus guarantee a decent retirement to the teachers of the Island.

Even more importantly, this Reform honors and validates the accumulated benefits of retired teachers, whose pensions shall not be affected by the implemented modifications. Likewise, these measures keep the accumulated benefits up to the present by active participants that continue contributing to the System. In both cases, it involves people who have devoted the best years of their productive lives to provide education through the public education system. Although the easiest solution to this crisis would be to reduce said accumulated benefits to temper them

2013 PR S.B. 1589

with our current economic and fiscal reality, this Reform seeks to find a way to honor such commitment in view of the imminent insolvency of the System and the economic crisis prevailing in the Island.

Even though this legislative piece reforms the benefit structure and modifies the present retirement requirements, it also seeks to provide some sort of relief to those more disadvantaged retired teachers. The changes herein established, in addition to guaranteeing a fair minimum pension to active teachers, increase the minimum pension benefit from $400 to $500 for retired teachers. In this manner, the Legislative Assembly seeks to strike a reasonable balance between the fiscal crisis of the System and the economic and social reality of our teaching professionals.

This Legislative Assembly believes that these measures are necessary and reasonable to solve the Teacher's System deficit, within our legal and constitutional framework. They are the least onerous alternatives available to achieve the compelling public purpose of: (1) preventing the Teacher's System from being left without any money to pay the pensions of our retired teachers; (2) honoring the benefits accumulated by retired teachers and by those that continue to work everyday educating our children and youth; (3) significantly reducing the projected impact of the annual deficit of the System on the General Fund, which would otherwise affect the rendering of essential public services to the citizenry; and (4) preventing the socioeconomic and fiscal catastrophe that would ensue upon the downgrading of Puerto Rico's credit to "junk" status.

These measures are reasonable and necessary to attain the aforementioned purposes. By adopting these measures, this Legislative Assembly is especially aware of the fact that the teachers of the public education system do not contribute to the Social Security System; therefore, the income that they shall receive as pension is, in most cases, the only income that they shall have to support themselves in their old age. It is for this reason that, among the measures adopted, a minimum pension is guaranteed to all teachers active as of July 31, 2014, which is higher than the income per capita of the Island and even higher than the average retirement pension that our retired teachers currently receive. Within the modifications needed to safeguard the solvency of the System, the foregoing shows the reasonability behind the adopted reform, which is consistent with our constitutional code of laws. As it was indeed recognized by our Supreme Court in Trinidad Hernández v. Commonwealth of Puerto Rico, 2013 T.S.P.R. 73, quoting Bayron Toro v. Serra, 119 D.P.R. 605, 607-08 and 619 (1987):

[A] participant of a retirement plan has a proprietary interest of a contractual nature protected by the constitutional guarantee against impairment of contractual obligations. However ...[it is necessary] to balance, on the one hand, the interest to protect the rights of employees and, on the other hand, the interest to allow the State to adopt changes that guarantee the stability and solvency of the retirement system. For the foregoing reasons, prior to the employee's retirement, the Government may amend the terms and conditions, of the retirement, if such amendments are reasonable and seek to further the actuarial solvency of the system.

This is precisely the intent of this measure, to carry out, in a reasonable manner, the necessary modifications according to the conditions and requirements of the Teacher's System, so as to ensure its subsistence and, therefore, the fiscal, economic, and social wellbeing of the Island.

Jessica Mendez-Colberg

Case:17-03283-LTS   Doc#:19606-2   Filed:12/23/21   Entered:12/23/21 20:28:30   Desc: Exhibit B
Exhibit B - Act 160-2013   Page 15 of 51

Page 15 of 51

2013 PR S.B. 1589

## Synopsis

AN ACT

To establish the "Commonwealth of Puerto Rico Teacher's Retirement System Act"; repeal Act No. 91-2004, as amended, known as the "Commonwealth of Puerto Rico Teacher's Retirement System Act"; repeal Act No. 38-2001, as amended; repeal Act No. 162-2003, as amended; repeal Act No. 49 of May 23, 1980, as amended; and for other related purposes.

## Text

*Be it enacted by the Legislative Assembly of Puerto Rico:*

**Section 1.—** This Act shall be known and cited as the "Commonwealth of Puerto Rico Teacher's Retirement System Act."

### Commonwealth of Puerto Rico Teacher's Retirement System Act

### Definitions

#### Article 1.1. — Definitions.—

The following words and terms, when used or referred to in this chapter, shall have the meaning indicated hereinbelow unless another meaning clearly arises from the context. The tenses used in the present shall also include the future and the male gender includes the female, except in those cases in which said interpretation would be absurd. The singular number includes the plural and the plural includes the singular.

**(a)** Annual additional contribution.—the annual contribution certified by the external actuary of the System, prepared within at least one hundred twenty (120) days before the beginning of Fiscal Year 2018-2019 and every two (2) years thereafter until fiscal year 2041-2042, as necessary to prevent the value of the projected gross assets of the System from falling below three hundred million dollars ($300,000,000) during any subsequent fiscal year, subject to the provisions of § 399 of this title. If for any reason, the certification of such annual additional contribution for the corresponding fiscal year is not available within the established one hundred twenty (120)-day term, or before, with the consent of the Office of Management and Budget, the annual additional contribution for said fiscal year shall be equal to that of the immediately preceding fiscal year, subject to the provisions of § 399 of this title.

2013 PR S.B. 1589

**(b)** Individual contributions.—the amounts deducted or to be deducted from the participant's salary, to be credited to the fund contribution account or defined contribution account, as applicable.

**(c)** Teacher's Justice Uniform Contribution.—the annual contribution to be made to the System equal to $30 million in fiscal year 2016-2017, to $30 million in fiscal year 2017-2018, and to $60 million in fiscal year 2018-2019, and subsequent years until fiscal year 2041-2042.

**(d)** Defined contribution account.—the account created as of August 1, 2014 in the name of each participant, in accordance with § 397c of this title.

**(e)** Fund contribution account.—the account which registers the balance of the individual contributions credited to the Fund on behalf of the participant as of July 31, 2014.

**(f)** Executive Director.—the Executive Director of the System.

**(g)** System employee.—any employee of the System who agreed to transfer his/her contributions and years of creditable service to the System from the Retirement System of the Employees of the Government of the Commonwealth of Puerto Rico or any other retirement system of the Commonwealth of Puerto Rico. It shall also mean any other employee who entered the System on or after March 29, 2004.

**(h)** Fund.—the System Contribution Fund, as designated in § 396 of this title.

**(i)** Government.—the Government of the Commonwealth of Puerto Rico and any of its political subdivisions, all the municipalities of Puerto Rico, and other government organizations that opted to avail themselves of the provisions of this chapter.

**(j)** Compound interest.—nine point five percent (9.5%) annually for purposes of the payment of uncredited services rendered on or before July 31, 2014, and two percent (2%) annually for purposes of reimbursement of individual contributions.

**(k)** Board of Trustees.—the Board of Trustees of the Commonwealth of Puerto Rico Teacher's Retirement System.

**(l)** Teacher.—the professionals who teach in the classrooms, the School Principals and Vice Principals, and other teacher classifications and categories that exist or may exist within the nomenclature of the Department of Education of the Commonwealth of Puerto Rico, the Secretary of the Department of Education and assistant officers and other employees or officials who avail themselves of the benefits of this chapter, pursuant to the provisions thereof, provided they hold a valid certificate to work as a teacher.

**(m)** Participant in active service.—any participant who makes an individual monthly contribution to the System. The period during which a participant has availed himself/herself of a leave without pay officially authorized by the employer shall also be considered as active service.

2013 PR S.B. 1589

**(n)** Inactive participant.—any participant who at some point made a contribution to the System and separated from service without subsequently requesting a reimbursement of contributions.

**(o)** Participants.—the System's teachers and employees, as provided in § 395 of this title.

**(p)** Pension.—the amount to which a participant is entitled upon retirement, in accordance with the provisions of this chapter.

**(q)** Pensioner.—any participant who receives a pension from the System, in accordance with the provisions of this chapter.

**(r)** Defined Contribution Program.—the program established in Chapter 5 of this Act.

**(s)** Defined Benefit Program.—the program established in §§ 396–396i of this title.

**(t)** Salary.—the total compensation earned by a participant. When calculating the compensation, all bonuses granted in addition to the salary as well as all payment for overtime work shall be excluded.

**(u)** Average salary.—an average of the thirty-six (36) highest monthly salaries that the participant has earned. This does not apply to the calculation of pensions for disability.

**(v)** System.—the Commonwealth of Puerto Rico Teacher's Retirement System.

## System, Board of Trustees, and Executive Director

### Article 2. —Teacher's Retirement System.—

**(a)** A retirement system to be denominated as the Commonwealth of Puerto Rico Teacher's Retirement System is hereby created. Said Retirement System shall be composed of a Defined Benefit Program and a Defined Contribution Program.

**(b)** The System shall be an independent Government entity separate from others.

**(c)** The funds of the System shall be used and applied for the payment of pensions and other benefits, as provided in this chapter, for the benefit of System participants, their dependents and beneficiaries.

**(d)** Any change in the System's benefit structure shall be supported by previous actuarial studies, in which the cost and financing source thereof shall be determined. The Board of Trustees and the System's Administration shall not be subject to the provisions of Act No. 164 of July 23, 1974 [*3 L.P.R.A. §§ 729a* et seq.], better known as the "General Services Administration Act," and §§ 729a et seq. of Title 13, better known as the "Public Employees Health Benefits Act."

**(e)** The System, including all its operations, real or personal property, capital, income, and surplus, shall be exempt from all kinds of taxes, levies, duties, or fees, including licenses imposed by the Government. In addition, the System shall be exempt from the payment of charges or fees

Jessica Mendez-Colberg

2013 PR S.B. 1589

required by law to bring actions and judicial proceedings, to obtain certifications from offices, instrumentalities, and agencies of the Commonwealth of Puerto Rico and its political subdivisions, and to execute public documents and record the same in the Property Registry of Puerto Rico.

(f) The System is an agency of the Central Government exempt from the provisions of §§ 1461 et seq. of Title 3, known as the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico," and all the regulations promulgated thereunder, except in the areas regarding the merit principle as defined in said Act, which shall be incorporated to the regulations adopted in its bylaws to be thoroughly implemented. In addition, the provisions of §§ 1451 et seq. of Title 3, better known as the "Puerto Rico Public Service Labor Relation Act," shall apply to the System.

(g) Upon the approval of this act, all the provisions of the Personnel Regulations and the collective bargaining agreement in effect in the System shall continue in effect until a new collective bargaining agreement is executed.

(h) The System shall maintain regulations to govern its human resources system, which shall be based on the merit principle.

### Article 2.2. —Powers and authorities of the System.—

(a) In order to carry out the duties provided in this chapter, the System shall have the following powers and authorities:

(1) To sue and be sued.

(2) To draft, approve, adopt, amend, and repeal rules and regulations for the due enforcement of the provisions of this chapter, which once approved and promulgated by the Board of Trustees shall have the force of law.

(3) To prepare and approve an expense budget for its operations and administration.

(4) To conduct investigations concerning all matters within its jurisdiction; compel the appearance of witnesses by a summons to such purposes which may be served through the Office of the Superintendent of the Puerto Rico Police, and to administer oaths to said witnesses.

(5) To adopt an official seal.

(6) To create a Board of Trustees with authority to establish the administrative organization of the System.

(7) To request and obtain from government offices those reports deemed convenient in relation to the sound administration of the System and keep the appropriate accounting books to determine the condition thereof.

Jessica Mendez-Colberg

2013 PR S.B. 1589

(8) To pay pensions to System pensioners, reimburse individual contributions in the cases provided under this chapter, pay the salaries of its employees and all expenses lawfully incurred.

(9) To contract services as necessary for the administration of the System, including consultants, investment managers, actuaries, and any professional service deemed necessary.

(10) To invest funds in accordance with the provisions of this chapter.

(11) To sell, assign or transfer the amount of the mortgage credits held by the System as well as personal loans portfolios managed by the same. The interest accrued by said mortgages shall be exempt from the payment of income tax to the Commonwealth of Puerto Rico, held by any subsequent holder thereof.

(12) To delegate to the Executive Director or his/her authorized representative the approval of loans authorized under the provisions of this chapter, pursuant to the regulations approved by the Board of Trustees by virtue of its inherent powers vested in it this Act.

(13) To prescribe by regulations one or more insurance plans in connection with loans of any nature that the System may grant to its participants. The System may act as insurer, reinsurer, or enter into contracts with third parties to assume the risk of any such plans. To this end, the System is hereby empowered to authorize that the sums needed to establish the special reserve funds for each of said insurance plans be taken from the general fund of the System with the approval of the Board of Trustees. The sums thus taken shall be returned to the general fund of the System as the special funds thus created accrue the needed reserves from the income generated from the premiums and surcharges collected. The Board of Trustees shall order actuarial studies and risk assessments that would provide the basis for determining the total amount of the premium the insurers are to be charged in relation to each of said plans. Should any insurance plan be discontinued after having been in operation, the sums remaining in the special fund corresponding to the discontinued plan shall be covered into the general fund of the System after the obligations corresponding to said plan have been paid.

(14) To own, acquire, alienate, and transfer any kind of property and mortgage or lease any of such property along with their rights and privileges to the extent allowed by the law.

(15) To take money on loan from any financing source including private institutions, as well as from the Government of Puerto Rico and the Government of the United States or by directly issuing debt and bonds which shall be secured by the System's assets. Interests accrued on such obligations shall be exempt from the payment of income taxes to the Commonwealth of Puerto Rico.

(16) To solicit, receive, and accept federal, state funds or any other type of donation.

Jessica Mendez-Colberg

2013 PR S.B. 1589

### Article 2.3. —System's Board of Trustees.—

**(a)** The powers and authorities of the System and the responsibility to establish the general administration and adequate operation thereof shall be assumed by the Board of Trustees hereby created, known as the "Board of Trustees of the Puerto Rico Teacher's Retirement System," which shall be constituted by nine (9) members, of which the following three (3) shall be ex-officio members:

    **(1)** The Secretary of the Treasury of Puerto Rico or his/her representative, who shall be the Chair.

    **(2)** The Secretary of Education of Puerto Rico or his/her representative.

    **(3)** The President of the Government Development Bank or his/her representative.

**(b)** Of the six (6) remaining members:

    **(1)** One (1) shall be the Chair of a teacher's organization, or his/her representative, designated by the Governor of the Commonwealth of Puerto Rico, for a term of four (4) years.

    **(2)** Three (3) System participants, one (1) of which shall represent currently certified teachers in active service, and two (2) that shall represent retired teachers whose teacher certification are in effect at the time of his/her retirement. These members shall be appointed by the Governor of the Commonwealth of Puerto Rico, for a term of four (4) years and shall hold office until the successors are appointed and take office.

    **(3)** One (1) of the members, or his/her representative, shall be Chair of the entity that represents the proper unit under §§ 1451 et seq. of Title 3. If the teachers of the Department of Education do not have a representative of the proper unit under §§ 1451 et seq. of Title 3, the Governor of the Commonwealth of Puerto Rico may appoint a teacher in active service as member of the Board. Said appointment shall be effective for four (4) years or until teachers designate a representative of the proper unit, whichever occurs first.

    **(4)** One (1) additional member shall be a representative of the public interest, knowledgeable and experienced in the administration and operation of financial systems, appointed by the Governor of Puerto Rico, for an original term of four (4) years.

**(c)** The Chair of the teacher's organization and the representatives of active and retired teachers who, at the time of the approval of this act, hold said positions in the Board of the Teacher's Retirement System, shall continue to hold said positions until their terms expire.

**(d)** As said initial terms expire, the Governor of the Commonwealth of Puerto Rico shall appoint their successors for a term of four (4) years. Should a vacancy arise, due to resignation, death, or dismissal, the person selected to substitute the resigning, deceased, or dismissed member shall hold office for the remainder of the unexpired term of the original member.

Jessica Mendez-Colberg

Case:17-03283-LTS   Doc#:19606-2   Filed:12/23/21   Entered:12/23/21 20:28:30   Desc: Exhibit B
Exhibit B - Act 160-2013   Page 21 of 51

Page 21 of 51

2013 PR S.B. 1589

(e) Once sworn in, the Trustees (or their representatives), who shall assume the responsibility of being Chair of any teacher's organization, shall not have the authority to represent their respective organizations, but shall act with full powers and responsibilities as Trustees of the System.

(f) No member of the Board may do business with the System or have relatives within the fourth degree of consanguinity or second degree of affinity working in the System.

**Article 2.4. —Organization; meetings; office.—**

(a) The Secretary of the Treasury shall act as the Chair of the Board of Trustees.

(b) The Vice-Chair and Treasurer of the Board of Trustees shall be elected by a majority vote of its members.

(c) The Board of Trustees may appoint one Secretary in charge of the minutes as administrative officer under the supervision of the Executive Director, with the duties and obligations adopted in the regulations of the Board of Trustees that are consistent with this chapter, for the proper operation of the Board and support to the Executive Director.

(d) Any matters deemed pertinent by the Board of Trustees for its best administration and operation shall be considered at every meeting.

(e) The Board of Trustees shall hold quarterly meetings, which shall be called by the Chair of the Board of Trustees or at the request of a majority of the members of said Board, within two (2) days in advance, and shall include the agenda to be discussed.

**Article 2.5. —Quorum; resolutions by majority vote.—**

Five (5) members of the Board of Trustees shall constitute a quorum to resolve any matter under their consideration and any resolution adopted by the same shall be approved by a majority vote of the members present.

**Article 2.6. —Regulations.—**

The Board of Trustees shall establish through regulations the necessary provisions for its operation, including the powers and duties of its members.

**Article 2.7. —Appointment of Executive Director.—**

The Board of Trustees shall appoint and determine the salary of an Executive Director of the System who shall implement the provisions of this chapter.

**Article 2.8. —Powers and duties of the Executive Director.—**

The Executive Director shall be the chief executive officer of the System who shall have, without it being construed as a limitation, the following powers and duties:

Case:17-03283-LTS  Doc#:19606-2  Filed:12/23/21  Entered:12/23/21 20:28:30  Desc:
Exhibit B - Act 160-2013  Page 22 of 51                    Page 22 of 51

Exhibit B

2013 PR S.B. 1589

(a) To direct and supervise all technical and administrative activities of the System, consistently with the regulatory provisions in effect or those subsequently adopted by the Board.

(b) To be responsible for the proper operation of the System.

(c) To adopt the necessary regulations to establish a human resources system for the Administration and the Board of Trustees, in accordance with the provisions of this chapter, as approved by the Board of Trustees.

(d) To be able to recruit, dismiss or remove employees, and contract professional and consulting services.

(e) To oversee the enforcement of the provisions of this chapter.

(f) To certify the necessary payments that are to be made, in accordance with the provisions of this chapter.

(g) To carry out any other duties entrusted or delegated to him/her by the Board of Trustees.

**Provisions applicable to all system participants**

**Article 3.1. —System participants.—**

(a) The following persons shall be participants of the System and be subject to all the provisions of this chapter:

(1) Teachers in active service.

(2) Retired teachers and employees.

(3) Teachers who have availed themselves of the benefits of the provisions of this chapter who hold administrative positions in the Department of Education or in any Office of the School Principal attached to a municipality, or in a charitable learning institution for children and have all the rights and duties of teachers under this chapter, being this an essential condition to hold such rights, or in any public education institution of the Commonwealth of Puerto Rico, with the exception of the University of Puerto Rico, insofar as they provide evidence of their intent to continue availing themselves of the provisions of this chapter by means of a letter addressed to the Retirement System.

(4) Teachers who work for teacher or service organizations duly recognized by law, all teachers who practice in private institutions recognized by the Department of Education, and the members of the Legislative Assembly of the Commonwealth of Puerto Rico, provided they hold a valid certification to practice as teachers.

(5) System employees.

(b) The enrollment in the System of the participants indicated in clauses (1), (2), and (5) of subsection (a) of this section shall be automatic upon their appointment as teachers,

2013 PR S.B. 1589

employees, or pensioners of the System. After every appointment, the Department of Education shall send to the System a certified copy of the Appointment, Birth Certificate, and personnel record. In addition, every time a personnel transaction affects the participant's contribution, the Department of Education shall be required to send the System a certified copy of the change report.

(c) In the cases referred to in clauses (3) and (4) of subsection (a) of this section, the participation shall be requested by any person who is interested in enrolling in the System or by a participant who wishes to continue making contributions. The request shall be evaluated by the System; if it complies with applicable laws and regulations, then enrollment or continued participation shall be granted.

(d) In the case referred to in subsection (a)(4) of this section, the teacher shall request his/her enrollment in the System in writing and make the corresponding contribution to the System, and the institution to which he/she belongs shall make the employer contribution established in this chapter. The System shall establish the rules it deems appropriate for the collection of such contributions. The teacher employers shall agree in writing to accept and comply with all the provisions of this chapter in all that pertains to teachers. If an employer does not agree to make employer contributions, the teacher must make them, agreeing to having all the corresponding contributions withheld, as provided by the System for such cases.

## Article 3.2. —Contribution accounts; property of participants.—

The System shall keep individual balances of every System participant which shows all individual contributions said participant has made to his/her fund contribution account and defined contribution account. Said individual contributions shall be the exclusive property of the System participant and shall not be subject to any type of tax or garnishment or transfer, but in accordance with the provisions of this chapter, except as provided in § 399c of this title. The System may collect from the individual contributions any debt incurred by the participant with the Fund.

## Article 3.3. —Salary deductions.—

The Secretary of Education or the pertinent appointing authority or any other person in charge of preparing the payroll of System participants shall deduct the corresponding individual contributions to be made by System participants and order that such contributions be covered into the System. The Secretary of the Treasury of the Commonwealth of Puerto Rico is hereby authorized to transfer the total amount of said contributions into the System.

## Article 3.4. — Reimbursement of contributions.—

(a) As of August 1, 2014, any System participant who is no longer eligible as a participant and (1) has less than five (5) years of credited service, or (2) has contributed less than ten thousand dollars ($10,000) shall be entitled to have the total amount of the contributions made

Case:17-03283-LTS   Doc#:19606-2   Filed:12/23/21   Entered:12/23/21 20:28:30   Desc: Exhibit B
Exhibit B - Act 160-2013   Page 24 of 51

Page 24 of 51

2013 PR S.B. 1589

reimbursed, plus compound interests until he/she receives the reimbursement of contributions or up to six (6) months after the date of separation from service, whichever occurs first. Any debt that the participant may have with the System shall be deducted from such contributions.

**(b)** As of August 1, 2014, participants who have five (5) years or more of credited service and have contributed ten thousand dollars ($10,000) or more to the System, may not withdraw their individual contributions upon separation from service, but shall be entitled to the corresponding pension when they reach the retirement age established in this chapter.

## Article 3.5. —Reciprocity between retirement systems.—

As of August 1, 2014, there shall be no reciprocity between systems, as provided in §§ 797–806 of Title 3, with respect to services rendered after July 31, 2014, between the System and other Retirement Systems of the Commonwealth of Puerto Rico, with regard to employees who have made contributions to another system and enroll in the Teacher's Retirement System.

However, contributions made by the participants of the Teacher's Retirement System may be transferred to other retirement systems of the Commonwealth of Puerto Rico that have defined benefit systems and accept the enrollment transfer of said participants.

## Article 3.6. —Credit for uncredited services.—

**(a)** Subject to the provisions of subsection (b) of this section, the following services may be credited for purposes of computing the years of service; provided, that such services have been rendered on or before July 31, 2014 and credit is requested on or before July 31, 2014.

**(1)** Any participant who had his/her individual contributions plus the corresponding interests reimbursed and has reentered service, or any participant whose contributions have been used to cover any debt he/she may have had with the System, may request credit for such years before July 31, 2014. In order to request credit for uncredited services, the participant must have worked at least one (1) year, prior to the request and pay the contributions withdrawn or the debt applied, plus the interests thereon.

**(2)** The time served by any teacher in any teacher or service organization duly recognized by law; or in the private schools of the Commonwealth of Puerto Rico whose study plan has been approved by the Department of Education and/or the Puerto Rico Council on General Education and that are subject to supervision and inspection by said Department or Council, shall be computed for the purposes of the provisions of this chapter, as if said services had been rendered in public schools, provided that said teachers request it in writing to the System; provided further that they make the corresponding individual and employer contributions. The System shall establish the rules it deems necessary to collect such amounts. Such time shall be computed provided that the teacher makes the contributions based on the salary earned during such period, plus the interests determined by the System in order to receive credit for such years of service.

Jessica Mendez-Colberg

2013 PR S.B. 1589

**(3)** The time served by a System participant in any agency, instrumentality, or public corporation of the Government, municipality, municipal consortium, the Commonwealth Vocational, Technical and High Skills Education Board, or the office of the Veterans Health Administration, or in any agency of the Government of the United States located in Puerto Rico, for a period during which no deduction whatsoever was made for the System, nor for any other retirement system, shall be computed for the purposes of the provisions of this chapter, as if said services had been rendered in public schools, provided that said System participants request it in writing to the System; provided, further, that they meet the requirements established in this chapter for payment thereof.

**(4)** The time that any teacher serves or had served in the public schools of another state or territory of the United States in any position including assistant counselor or assistant teacher shall be computed for the purposes of the provisions of this chapter. Said time may be computed provided that the teacher makes the employer and the individual contributions based on the salary earned, plus the interest the System may determine to credit said years of service.

**(5)** The time served by any teacher as school principal in any municipality of Puerto Rico shall be computed, for purposes of the provisions of this chapter, as if the services had been rendered in the public schools, provided that said teacher requests it in writing to the System; provided, further, that said teacher makes the individual contribution he/she would have made during such period based on the salary earned during his/her tenure as school principal.

**(6)** The time served by any teacher of the Department of Education performing teaching or administrative work related to the teaching profession outside of Puerto Rico through a leave granted for such purposes by the Puerto Rico Department of Education, shall be computed for purposes of the provisions of this chapter, as if the services had been rendered in the public schools of Puerto Rico, provided that said teacher requests it in writing to the System if he/she returns to render services at the Department of Education; provided, further, that said teacher makes the individual contribution based on the salary earned, plus the employer contribution based on the same salary, plus the compound interest from the date on which said teacher returned to service to the date on which he/she requests credit therefor.

**(7)** The time served by any teacher after 1960, at a day care center for children under the Head Start program where no fees are paid for the care and services rendered, nor operated by any church or nonprofit entity or private corporation, shall be computed, for purposes of the provisions of this chapter, as if the services had been rendered in the public schools, provided said teacher makes the individual contribution on the basis of the salaries earned, plus the corresponding employer's contribution and interests.

Jessica Mendez-Colberg

2013 PR S.B. 1589

**(8)** Any System participant who had previously rendered services in the Government, its instrumentalities, departments, agencies, or any other government entity, whose services were not credited in any of the Retirement Systems in effect in Puerto Rico for public service employees, for being unable to contribute to said systems because of the job classification, may obtain credit for said services by contributing to the System the individual and employer contributions, plus the corresponding interests. Such services could have been rendered in regular, transitory, emergency, irregular, substitute positions or in any other classification to the Government of Puerto Rico, its agencies, instrumentalities, or other government entity.

**(9)** System participants who, in order to develop professionally, were granted a leave of absence with or without pay, or scholarship, shall be entitled to have the leave of absence period credited, provided that they contribute a sum equal to the individual and employer contribution plus interests; provided, further, that they have approved, during each year of leave, at least twelve (12) credit hours in a recognized university. In the case of participants whose records in the Department of Education do not show that they were granted such leave of absence, it shall suffice that the teacher furnishes official evidence from the University where the participant attended to improve professionally, stating that such participant improved professionally in the field of education, insofar as the System has evidence that such participant was in active service before and after enjoying such leave.

**(10)** All System participants shall obtain credit for purposes of this chapter for the period of military service rendered in the United States Armed Forces during any armed conflict, if the participant was honorably discharged from such military service. If the military service was rendered during peacetime, the participant shall obtain credit for a maximum of five (5) years. Credit shall also be obtained, regardless of any other military creditable service under this clause, for time served on active duty by a member of the reserve corps or the Puerto Rico National Guard, who had been called to active duty or transferred from the reserve to active duty in the United States Armed Forces during any wartime or peacetime, from the time he/she was called or transferred to the date on which the call, order, or transfer was rendered ineffective. In order to have this time credited, the participant shall make the corresponding contributions to the System based on the salary earned while rendering services in the Armed Forces or the salary earned upon his/her return to government service, if services were rendered during peacetime. The participant shall also make the corresponding employer contribution determined by the System.

**(11)** If the participant served in any branch of the Armed Forces of the United States of America, and was honorably discharged, the time allotted to pursue a program of study for veterans under a state or federal plan for veterans shall be creditable insofar as it does not

Jessica Mendez-Colberg

2013 PR S.B. 1589

constitute a double accreditation. If the participant was a member of the System and availed him/herself of a leave without pay to pursue such program of study, the participant shall only pay the corresponding individual contribution based on the salary that such participant was earning at the time of the leave without pay, or the salary earned upon his/her return to public service, whichever is lower. The government employer that granted such leave without pay to pursue a program of study shall pay the contribution determined by the System, plus the interests thereon. If the participant was not a member of the System, he/she shall pay the corresponding individual and employer contributions based on the salary earned when he/she enrolled in the System or the salary earned at the time he/she requested the accreditation, whichever is lower.

**(b)** Requirements.—

**(1)** To obtain credit for the services mentioned in subsection (a) of this section, participants must be in active service and request it in writing to the System on or before July 31, 2014, except as otherwise provided in clause (6) of this subsection.

**(2)** Participants shall furnish a certification issued by the entity where the services were rendered, attesting to the time served in said entity, the position held, and the monthly salary earned, if applicable.

**(3)** The participant shall pay the corresponding contributions, which shall be determined based on the salary established in this section and the individual and employer contribution rate in effect as of the date on which the services were rendered, plus the compound interest which shall be nine point five percent (9.5%) annually.

**(4)** The payment for these uncredited services may be made in a one-time payment, by deductions or partial monthly payments which shall not exceed eighty-four (84) installments, while the participant is in active service. Credit for years of service shall be granted when the owed amount is paid in full. If the participant separates from service without having paid the owed amount in full, said participant may withdraw all the contributions made therefor or request a credit for the years of services corresponding to the payments made as of the effective date of the separation from service.

**(5)** In the case of military service in the Armed Forces or the pursue of a program of study totally or partially paid by the Department of Veteran's Affairs, formerly known as the Veteran's Administration, the participant shall submit to the System the Certificate of Release of Discharge from Active Duty or its equivalent in order to obtain credit for the services rendered on or before July 31, 2014. The interest rate to be paid shall be based on a simple six percent (6%)-annual interest based on the lower of the salary earned upon entering public service or the salary earned upon enlisting in active service in the Armed Forces, or the date of separation from service or of discharge.

Jessica Mendez-Colberg

Case:17-03283-LTS Doc#:19606-2 Filed:12/23/21 Entered:12/23/21 20:28:30 Desc: Exhibit B
Exhibit B - Act 160-2013 Page 28 of 51

Page 28 of 51

2013 PR S.B. 1589

(6) The provisions of § 737(e) of Title 29, known as the "Bill of Rights of the Puerto Rican Veteran for the 21st Century," shall continue to apply to System participants who are veterans, solely with regard to services rendered until July 31, 2014. However, there shall be no deadline for veterans to apply for service credit, for services rendered on or before July 31, 2014.

(7) Any Defined Contribution Program participant who, on or after August 1, 2014 is on a military leave for being in active duty in the Armed Forces of the United States of America and is not required to make mandatory contributions under this chapter, may make voluntary contributions to his/her account in the Defined Contribution Program for the period during which he/she was on military leave. There shall be no deadline for service members to make such voluntary contributions. These contributions shall be credited to the Defined Contribution Account of such Defined Contribution Program participant. The Executive Director shall establish the manner in which these participants may make voluntary contributions to their Defined Contribution Program accounts.

(8) The System may grant a special personal loan to any participant who applies for retirement in order to pay uncredited services. This special personal loan may not be renewed and shall include the corresponding interests. The granting of these special personal loans shall be subject to the rules and conditions established by the System through regulations; provided, that the interest to be charged shall not exceed nine point five percent (9.5%). Uncredited services paid with a special personal loan shall be recognized and credited as soon as the System grants the loan.

(9) Notwithstanding the foregoing, both the applicant's individual contribution and interests, as well as the employer contribution and interests shall be paid, in whole or in part, additionally and voluntarily, by the applicant, the labor union or organization of which he/she is a member, or by third-parties, but it shall not waive the tax liability of the person who made the payment gratuitously, or of the beneficiary, when payment has been made for value.

**Article 3.7. — Contribution of the pensioner upon return to active service.—**

(a) The pensioner who returns to active service in the System on or before July 31, 2014, may choose to:

(1) While in active service as a System participant, return all payments received from the System on account of the pension, in which case, upon his/her definitive separation from service, his/her pension shall be computed again on the basis of all services rendered before and after his/her return in the manner provided in this chapter; or

(2) not to return the payments already received, in which case, upon his/her definitive separation from service, payment of the suspended pension shall be resumed, in addition,

Jessica Mendez-Colberg

2013 PR S.B. 1589

a supplementary pension shall be paid on the basis of services rendered and the average annual salary earned after his/her return to service. The supplementary pension shall be computed according to the formula provided in this chapter; in case the period of the services rendered after reinstatement is less than five (5) years, the average salary resulting from the entire aforementioned period of subsequent services rendered until July 31, 2014, shall be used.

**(b)** As of August 1, 2014, the payment of the pension received by any pensioner shall be immediately suspended as soon as he/she holds a paid job in the Government. After his/her separation from service, the payment of the suspended pension shall be resumed, and the pensioner may choose to withdraw the contributions made from the date of reinstatement until the date of separation, if after reentering, he/she worked five (5) years or less or accrued ten thousand dollars ($10,000) or less. If the pensioner worked five (5) years or more or accrued ten thousand dollars ($10,000) or more, after reentering service, he/she shall be entitled to an additional pension computed in accordance with this chapter.

### Article 3.8. — Computation of years of service.—

**(a)** The basis for computing the years of service to which a participant is entitled shall be the date of the first original appointment for rendering services.

**(b)** Services rendered by System participants shall be computed as follows:

**(1)** Teachers.—Fifteen (15) calendar days of a school year month shall be equal to one (1) calendar month worked during the school year.

**(2)** Other participants.—Twenty-one (21) calendar days of a month shall be equal to one (1) calendar month worked.

**(c)** Subject to the provisions of § 395e of this title, all periods involving separation from service and leaves of absence without pay shall be excluded from such computation and shall not be considered for purposes of retirement, except for leaves of absence with or without pay and scholarships, provided that such leaves or scholarships are granted for professional improvement.

### Article 3.9. — Retirement Age.—

**(a)** Any participant who, as of the effective date of this act, is entitled to retire and receive any kind of pension under Act No. 91-2004, as amended, for having met the corresponding years of service and age requirements, may retire at any time after the effective date of this act.

**(b)** Any participant who, as of July 31, 2014, is entitled to retire and receive any kind of pension under Act No. 91-2004, as amended, or under the provisions of this chapter for having met the corresponding years of service and age requirements, may retire at any time after August 1, 2014.

2013 PR S.B. 1589

**(c)** As of August 1, 2014, any participant who is active as of July 31, 2014, may retire when said participant:

    **(1)** Reaches fifty-five (55) years of age and completes at least thirty (30) years of service, or

    **(2)** reaches sixty (60) years of age and completes at least five (5) years of service.

**(d)** Any participant in active service that has enrolled in the System after August 1, 2014, may retire when said participant:

    **(1)** Reaches sixty-two (62) years of age and completes at least five (5) years of service, and

    **(2)** has accumulated individual contributions amounting to ten thousand dollars ($10,000) or more.

### Article 3.10. —Retirement pension.—

**(a)** Applicability and Requirements.—Every active System participant shall be entitled to receive a pension if he/she meets the following requirements:

    **(1)** Has attained the retirement age established in the act, according to the date of enrollment in the System;

    **(2)** has completed the service periods established in the act;

    **(3)** has paid for any uncredited services indicated, which is necessary to be entitled to receive a pension, if applicable; and

    **(4)** has not withdrawn the individual contributions made to the System.

### Section 3.11.— Minimum pension.—

**(a)** Any participant who is active as of July 31, 2014, and was not eligible for retirement on such date with a pension benefit equal to or over sixty-five percent (65%) of the average salary and who, subsequently, applies for retirement when completing thirty (30) years of service and reaching the age of fifty-five (55) shall be entitled to a minimum pension of one thousand six hundred twenty-five dollars ($1,625) per month. The minimum pension of one thousand six hundred twenty-five dollars ($1,625) shall be guaranteed to teachers who enroll in the system as of August 1, 2014, and meet the years of service and age requirements provided in subsection (d) of § 395h of this title.

**(b)** A minimum pension of five hundred dollars ($500) per month is hereby fixed for those participants who retired on or before July 31, 2014. Every pensioner receiving a pension of less than five hundred dollars ($500) per month shall receive, as of August 1, 2014, the corresponding raise so that his/her pension amounts to five hundred dollars ($500) per month.

**(c)** Every four (4) years, the System shall request an actuarial study to evaluate the impact of increasing the minimum pension herein established. In the event that the actuarial study

Case:17-03283-LTS   Doc#:19606-2   Filed:12/23/21   Entered:12/23/21 20:28:30   Desc: Exhibit B
Exhibit B - Act 160-2013   Page 31 of 51

Page 31 of 51

2013 PR S.B. 1589

recommends an increase to the minimum pension, the System's Board of Trustees shall be required to adopt such increase at the beginning of the following fiscal year.

### Article 3.12. —Effectiveness of the pension.—

The effective date of the retirement pension for participants who are entitled to receive the same shall be the day following the date of their separation from service or a subsequent date as specified by them in the application for retirement, but in no case before separation from service, except when the provisions of this chapterct provide otherwise.

### Article 3.13. —Proof of date of birth.—

No pension shall be granted for age and years of services rendered until the participant who has applied therefor has provided evidence with the appropriate documents of his/her date of birth to the satisfaction of the System.

### Article 3.14. —Pension shall be personal; assignment or garnishment; prohibited.—

Entitlement to a pension is personal and its assignment or transfer shall be null and void. The pension shall not respond for debts incurred by the pensioner, except those incurred with the System, and may not be garnished or affected by any judicial proceeding, except for acts of corruption as provided in § 399c of this title.

### Article 3.15. —Exemptions of the Puerto Rico Commonwealth Employees Association.—

(a) System participants shall be exempt from complying with the provisions of §§ 9001 et seq. of Title 3, provided that they state so in writing to the Puerto Rico Commonwealth Employees Association (AEELA) within sixty (60) days after they begin making contributions to the System.

(b) Participants who choose not to avail themselves of the provisions of Act No. 9-2013, may only withdraw their funds in AEELA in the manner prescribed in said sections.

(c) Participants who continue their membership in AEELA shall comply with all the provisions of the act.

### Article 3.16. —Deductions to the pension for the payment of membership fees and insurance.—

(a) Participants who were receiving or will receive a pension in the future may authorize the System to deduct from their pension a specific amount to pay the monthly membership fees of the Teacher's Association of Puerto Rico, insurance premiums of the Commonwealth Employees Association, stocks and other obligation of the Puerto Rico Teacher's Credit Union, or any other deduction requested by the retired teacher.

(b) The System shall remit a check payable to the Puerto Rico Teacher's Association, the Puerto Rico Commonwealth Employees Association, the Puerto Rico Teacher's Credit Union, or the U. S. Internal Revenue Office in the amounts thus deducted.

Jessica Mendez-Colberg

2013 PR S.B. 1589

**Article 3.17. —Distribution of contributions upon death of inactive system participants.—**

**(a)** When an inactive System participant dies, accrued contributions plus the compound interest thereon shall be refunded, after deducting any debts outstanding in the System.

**(b)** Such refund shall be payable to the beneficiaries designated by the deceased participant in the System, through the designation of beneficiaries, or in its default, to his/her legal heirs.

**Article 3.18. —Distribution of individual contributions upon death.—**

If a participant dies while in active service on or before July 31, 2014, his/her beneficiaries shall receive, in addition to the individual contribution and interest, a sum equal to one (1)-year salary of the position said participant held at the time of death.

**Defined Benefit Program for System Participants as of July 31, 2014**

**Article 4.1. —System Contribution Fund.—**

**(a)** The "Puerto Rico Teacher's Annuity and Pension Fund" shall be known from the effective date of this act as the "System Contribution Fund," which shall be maintained and funded as follows:

**(1)** With the existing monies and assets of the "Puerto Rico Teacher's Annuity and Pension Fund" as of the effective date of this act;

**(2)** with the fixed individual contributions made before August 1, 2014, as provided in subsection (a) of § 396b of this title;

**(3)** with the fixed employer contributions as provided in subsection (b) of § 396b of this title;

**(4)** with the contributions made by private institutions in accordance with the terms established in this chapter;

**(5)** with the gifts and bequests made to the Fund;

**(6)** with the appropriations made from the Expense Budget of the Commonwealth of Puerto Rico to finance additional benefits for pensioners, and

**(7)** with the interests, dividends, rents, and net earnings as part of the return on investment of the assets of the Fund.

**Article 4.2. —Fund contribution account.—**

The System shall establish an individual account for each System participant to be credited with the total amount of individual contributions that such participant has made to the Fund as of July 31, 2014. The individual contributions made by System participants who as of July 31, 2014, have not completed ten (10) years of service, shall be transferred to the Defined Contribution Account of such participants as created under §§ 397—397k of this title

Jessica Mendez-Colberg

Case:17-03283-LTS Doc#:19606-2 Filed:12/23/21 Entered:12/23/21 20:28:30 Desc: Exhibit B
Exhibit B - Act 160-2013 Page 33 of 51

Page 33 of 51

Exhibit B

2013 PR S.B. 1589

### Article 4.3. —Fund contributions.—

**(a)** Individual contribution.—Active System participants shall contribute nine percent (9%) of their total monthly salary to the Fund until July 1, 2014.

**(b)** Employer contributions.—Employers shall make a monthly contribution to the Fund equal to eleven point five percent (11.5%) of the monthly salary earned by every System participant. After July 1, 2014, the employer contribution shall be increased annually by one percent (1%) of the monthly salary earned by the System participant until June 30, 2016. From July 1, 2016 to June 30, 2021, the employer contribution shall increase annually by one point twenty-five percent (1.25%) of the monthly salary earned by every System participant. Beginning on July 1, 2021, and thereafter, the employer contribution shall increase to twenty point five hundred twenty-five percent (20.525%) of the monthly salary of every System participant. The employer contribution with respect to participants of the Defined Contribution Program shall continue to be deposited in the Fund.

### Article 4.4. — Pension for age and years of service.—

**(a)** The rights of participants in active service who, as of July 31, 2014, meet the requirements of this section shall be deemed to be vested. It is hereby provided that until July 31, 2014, participants shall accumulate the years of service and the average salary applicable as of that date. Beginning on August 1, 2014, the System shall not credit services or accept the return of contributions for any period worked prior to July 31, 2014. Participants in active service as of July 31, 2014 shall be entitled to avail themselves of the following pensions:

**(1)** Any participant who on or before July 31, 2014, have completed more than thirty (30) years of service and have reached at least the age of fifty (50): shall be entitled to a pension equal to seventy-five percent (75%) of the Average Salary, calculated as of July 31, 2014. Participants who meet these eligibility criteria on or before July 31, 2014, may retire at any time. These participants may avail themselves of the pension accumulated as of July 31, 2014, plus the pension accumulated for the period worked after August 1, 2014, which shall be calculated as provided in Chapter 5 of this Act. If such participant retires before reaching the age of fifty-five (55), he/she shall make the applicable individual contribution to the Fund for each remaining year until he/she reaches the age of fifty-five (55). Likewise, the employer shall make the corresponding contribution to the Fund for that same period.

**(2)** Any participant who, as of July 31, 2014, has completed more than thirty (30) years of service but has not yet reached the age of fifty (50): shall be entitled to a pension equal to sixty-five percent (65%) of the Average Salary, calculated until July 31, 2014. Participants who meet these eligibility criteria on or before July 31, 2014, may retire at any time. These participants may avail themselves of the pension accumulated as of July 31, 2014, plus the

Jessica Mendez-Colberg

2013 PR S.B. 1589

pension accumulated for the period worked after August 1, 2014, which shall be calculated as provided in §§ 397-397k of this title.

**(3)** Any participant who, as of July 31, 2014, has completed more than twenty-five (25) but less than thirty (30) years of service, and has not reached the age of fifty (50): shall be entitled to a pension equal to one point eight percent (1.8%) of the average salary, multiplied by the number of years of service rendered calculated as of July 31, 2014. Participants who meet these eligibility criteria on or before July 31, 2014, may retire at any time. These participants may avail themselves of the pension accumulated as of July 31, 2014, plus the pension accumulated for the period worked after August 1, 2014, which shall be calculated as provided in §§ 397-397k of this title.

**(4)** Any participant who, as of July 31, 2014, has completed more than twenty-five (25) but less than thirty (30) years of service, and has reached the age of forty-seven (47) or more, but not more than fifty (50): shall be entitled to ninety-five percent (95%) of a pension equal to one point eight percent (1.8%) of the average salary, multiplied by the number of years of service rendered calculated until July 31, 2014. Participants who meet these eligibility criteria on or before July 31, 2014, may retire at any time. These participants may avail themselves of the pension accumulated as of July 31, 2014, plus an annuity for the period worked after August 1, 2014, which shall be calculated as provided in §§ 397-397k of this title. If such participants continue working until they complete thirty (30) years of service and reach the age of fifty-five (55), the ninety-five percent (95%) of the pension calculated as of July 31, 2014, shall not apply and the annuity for the period worked after August 1, 2014, calculated as provided in §§ 397-397k of this title, shall be added to the pension to which such participants are entitled.

**(5)** Any participant who, as of July 31, 2014, has completed more than ten (10) but less than twenty-five (25) years of service, but has reached the age of sixty (60): shall be entitled to a pension equal to one point eight percent (1.8%) of the average salary, multiplied by the number of years of service rendered calculated as of July 31, 2014. Participants who meet these eligibility criteria on or before July 31, 2014, may retire at any time. These participants may avail themselves of the pension accumulated as of July 31, 2014, plus the pension accumulated for the period worked after August 1, 2014, which shall be calculated as provided in §§ 397-397k of this title.

**(b)** System participants who are active as of July 31, 2014, and are not receiving a pension under subsection (a) of this section may apply for a pension as provided in this chapter. Such participants may avail themselves of the pension to which they are entitled under Act No. 91-2004, as amended, according to their accumulated contributions as of July 31, 2014, plus the pension for the period worked after August 1, 2014, which shall be calculated as provided in §§ 397-397k of this title.

Jessica Mendez-Colberg

Case:17-03283-LTS Doc#:19606-2 Filed:12/23/21 Entered:12/23/21 20:28:30 Desc: Exhibit B
Exhibit B - Act 160-2013 Page 35 of 51

Page 35 of 51

2013 PR S.B. 1589

**(c)** Deferred Pension.—

**(1)** Any participant who is inactive as of July 31, 2014, has completed at least ten (10) years of creditable service, and has not requested or received a reimbursement of his/her accumulated contributions shall be entitled to a deferred pension, which said participant shall receive upon reaching the age of sixty (60) or, at his/her option, on a later date. Such deferred pension shall be equal to one point eight percent (1.8%) of the average salary multiplied by the number of years of service rendered, calculated until July 31, 2014. This deferred pension shall never be less than four hundred dollars ($400).

**(d)** Payment of individual and employer contributions for pensions granted.—

**(1)** Participants receiving a pension on or before July 31, 2014, and participants who, as of August 1, 2014, are receiving a pension under subsection (a) of this section, may continue making individual contributions to the Fund, as established in this chapter, until they reach the age of fifty-five (55). At the time of retirement, the employer of each one of these participants shall continue making the corresponding employer contributions until the fifty-five (55)-year age requirement is met. Employer contributions on account of this provision shall be retroactive to the date of approval of Act No. 45-2000 and shall apply to every pensioner who began to receive their pension on such date without having completed thirty (30) years of service and reached the age of fifty-five (55). The System shall prepare a certification of employer contributions in order for employers to include the corresponding payment in the Expense Budget of the agency for each fiscal year. If the pensioner dies before meeting the payment obligation, the remaining balance shall be paid by the beneficiaries entitled to such pension. Likewise, the employer shall continue making the corresponding payments until the payment obligation is met.

### Article 4.4 (a).—Grandfather provision.—

Should this act had not been passed, any participant who would have been entitled to retire with a pension under Articles 40(b)(1) and (b)(2) of Act No. 91-2004, as amended, for having completed thirty (30) years of credited service between August 1, 2014 and June 30, 2016, may do so under the following conditions:

**(a)** Any participant who would have completed thirty (30) years of credited service or more during such period, but has not reached the age of fifty-five (55) or more on or before the effective date of this Act, shall be granted seventy percent (70%) of the average salary of such participant as of the effective date of this act. To benefit from this provision, participants shall be required to retire effective on July 31, 2014, and continue making individual contributions to the System as provided in subsection (d) of § 396c of this title, until they reach the age of fifty-five (55). Likewise, employers shall continue to make

Jessica Mendez-Colberg

2013 PR S.B. 1589

contributions to the System as established in subsection (d) of § 396c of this title, until the participant reaches the age of fifty-five (55).

**(b)** Any participant who has completed thirty (30) years of credited service or more during such period and reached the age of fifty-five (55) or more on or before the effective date of this act, shall be granted seventy percent (70%) of the average salary of such participant on the effective date of this act. To benefit from this provision, the participant shall be required to retire effective on July 31, 2014.

Participants in active service who meet the requirements to receive a pension under this section and wish to avail themselves of the provisions of this section, shall be required to notify their resignation, final and binding, to the Department of Education and send a copy thereof to the Teacher's Retirement System on or before March 31, 2014.

### Article 4.5. — Disability retirement.—

**(a)** Until July 31, 2014, any participant in active service who applies for a disability pension shall be entitled to a lifetime annual income in the amount established in § 396f of this title.

**(b)** Beginning on August 1, 2014, the System shall grant a disability pension in accordance with § 396f of this title to any active participant who after serving for five (5) years suffers a disability whether or not it is work-related.

**(c)** Retirement for disability may be granted at the request of the participant or the appointing authority and with the approval of the System.

**(d)** The participant shall be examined by an authorized physician designated by the System, who shall render a report of the matter to the Executive Director.

**(e)** Participants who enroll in the System after August 1, 2014, shall be entitled to the disability benefits established in § 397–397k of this title.

### Article 4.6. —Computation of disability pension.—

**(a)** Until July 31, 2014, any participant in active service that applies for a disability pension shall be entitled to a lifetime annual income in an amount equal to one point eight percent (1.8%) of the highest average salary earned during five (5) consecutive years, or the number of years of service if it were less than five (5) years, multiplied by the number of years of rendered services. This lifetime annual income shall never be less than the amount established in this chapter.

**(b)** Beginning on August 1, 2014, any participant who is active as of July 31, 2014 and retires from service due to disability shall be entitled to a pension after such date in an amount equal to one point eight percent (1.8%) of the average salary earned during five (5) consecutive years, multiplied by the number of years of service rendered until August 1, 2014, up to a maximum of thirty-three percent (33%) of such participant's average salary, plus the amount provided in

Jessica Mendez-Colberg

Case:17-03283-LTS Doc#:19606-2 Filed:12/23/21 Entered:12/23/21 20:28:30 Desc: Exhibit B
Exhibit B - Act 160-2013 Page 37 of 51

Page 37 of 51

2013 PR S.B. 1589

the corresponding pension under §§ 397-397k of this title. This disability pension shall never be less than five hundred dollars ($500).

**(c)** Participants who as of July 1, 2014 are receiving a disability benefit under the System shall continue to receive it without any alteration, except when such benefits are suspended in accordance with this chapter.

**(d)** Disability benefits of participants who enroll in the System after August 1, 2014, shall be determined in accordance with §§ 397-397k of this title.

### Article 4.7. —Suspension of disability pensions; examinations.—

**(a)** System pensioners who have retired due to disability shall stop receiving the pension as soon as the disability ceases or upon resuming their Government service.

**(b)** Any person receiving a disability pension who works on a non—governmental job and receives a monthly compensation of more than one thousand dollars ($1,000) shall also cease to receive said pension.

**(c)** System pensioners who have retired due to disability under the provisions of this or any prior retirement act shall be periodically examined by a physician appointed by the System. If such disability ceased to exist, the pension shall continue to be paid for six (6) months from the date of the medical examination declaring the pensioner able to return to work.

**(d)** When a pensioner who has retired due to disability refuses to be medically examined as ordered by the System, after having been summoned therefor on three (3) different occasions at intervals of not more than one month, it shall be deemed that such pensioner is relinquishing his/her pension and the payment thereof shall cease at the end of the month of the last requirement.

### Article 4.8. —Payments after the death of a pensioner.—

**(a)** When a pensioner dies, his/her beneficiaries shall receive the full pension for the month in which such pensioner died. Moreover, an additional payment equal to a fifteen-day pay period shall be made on the month following the death of the pensioner. However, if no beneficiaries where designated, his/her legal or forced heirs or beneficiaries shall receive the remaining balance of the contributions made by the deceased pensioner; provided, that there are no designated beneficiaries entitled to receive a pension, after deducting paid contributions, but in no case shall they receive less than a one thousand dollars ($1,000) lump sum payment. This benefit shall not apply to the beneficiaries or legal or forced heirs of the deceased pensioner who enrolled in the System after August 1, 2014.

**(b)** If, upon the death of such pensioner, his/her children are enrolled in a regular program at a public or private school or post-secondary institution, regardless of the application of the provisions related to children with disabilities or children younger than six (6) years, they shall

Jessica Mendez-Colberg

2013 PR S.B. 1589

continue receiving half of the pension distributed equally among such children. Said children shall cease to receive the pension when they reach the age of twenty-two (22) or when they cease to be enrolled full-time in an educational institution, the earlier of the two. The amount payable to any child who ceased to receive the pension for the above reasons shall be evenly distributed among the other children. In the event that there are children with disabilities, they shall continue receiving the portion corresponding to the first distribution for the duration of the disability. Upon reaching the age of six (6), the provisions related to education shall apply to every child who does not have a disability. The application for an annuity for those children shall be filed by the surviving parent attesting to the fact that he/she holds legal custody, or by a legal guardian appointed by a court of justice, or an administrative guardian appointed by the agency, and the annuity payment for such minors shall be made in the name of the surviving parent or guardian.

**(c)** In the case of widows or widowers, they shall receive half of the pension.

**(d)** The disability of children to which this section refers must have existed before they are of legal age. The nature of the disability would have never allowed the child to lead an independent life outside of the deceased pensioner's family unit or would have prevented the child from leading a life totally independent from his/her parents, continuously depending on the deceased pensioner to satisfy at least fifty percent (50%) of his/her needs. If the child with disabilities is receiving his/her own disability pension or income, such child shall only be entitled to receive the portion provided in subsection (a) of this section, but the provisions on education shall not apply.

**(e)** The System shall have the authority to request, investigate, examine, and evaluate the evidence presented regarding the disability, age, and education requirements of the applicants for the benefit herein established. It shall also have legal authority to verify periodically that the requirements established herein are met. Unjustified refusal or failure by the applicants or beneficiaries to furnish the information requested by the System, or the lack of cooperation with the investigations conducted to such effects shall entail the loss of such benefit.

**(f)** A beneficiary's pension shall automatically cease on the payroll payment date following his/her death. Any payment made after such date shall be returned to the Fund.

**(g)** When a participant dies, death benefits shall be paid to any person who was designated in writing through the form adopted by the System therefor. In order for the designation of beneficiaries to be valid, it shall be filed with the System while the participant is alive.

**(h)** Beneficiaries who, as of July 31, 2014, are receiving a death benefit of a pensioner shall continue to receive such benefit without any alteration.

**(i)** Death benefits for participants who retire as of August 1, 2014 shall be determined as established in §§ 397-397k of this title.

Jessica Mendez-Colberg

2013 PR S.B. 1589

**Article 4.9. — Additional benefits.—**

**(a)** Any person who retires as of July 31, 2014, shall be entitled to receive the following additional benefits:

**(1)** A Medications Bonus equal to one hundred dollars ($100), which shall be paid not later than July 15 of each year;

**(2)** a Christmas Bonus equal to two hundred dollars ($200), which shall be paid not later than December 20 of each year, and

**(3)** a Government's contribution for health benefits for pensioners covered by the health benefit plans under §§ 729a et seq. of Title 3, of one hundred dollars ($100) a month for the pensioners of the System, but shall not exceed the total rate corresponding to any pensioner.

**(b)** As of fiscal year 2014-2015 and on each subsequent fiscal year, the System shall receive from the general Fund a contribution equal to one thousand six hundred seventy-five dollars ($1,675) per pensioner, notwithstanding the pensioner retired on or after August 1, 2014, in order to pay these additional benefits and nourish the System.

**Defined Contribution Program**

**Article 5.1. — Creation of the Defined Contribution Program.—**

**(a)** Creation of the Program.—The Defined Contribution Program is hereby created. This Program shall consist of the establishment of an individual account for each person who enrolls in the System under the provisions of this subchapter. The contributions made by each participant to the Defined Contribution Program, as well as the return on investment thereon, shall be credited to such individual accounts, in accordance with § 397g of this title. The benefit to be paid to each participant upon separation from service, due to retirement or otherwise, shall depend on the total amount of contributions made to the Defined Contribution Program accumulated in the participant's account after August 1, 2014, or the date of enrollment of the participant in the Defined Contribution Program, the return on investment of these contributions, and the pension granted on the basis thereof, in accordance with § 397i of this title.

**(b)** Program participants.—The following persons shall participate in the Defined Contribution Program:

**(1)** Any participant enrolled in the System as of July 31, 2014.

**(2)** Any new participant who enrolls for the first time in the System on or after August 1, 2014.

**Article 5.2. — Transfer to the Program.—**

Jessica Mendez-Colberg

2013 PR S.B. 1589

Beginning on August 1, 2014, every active participant who is enrolled in the System, regardless of the date on which they were first originally appointed shall become participants of the Defined Contribution Program.

### Article 5.3. — Accumulated benefits.—

**(a)** On the effective date of this act, the retirement benefits accumulated by System participants who entered public service before August 1, 2014, based on the years of service accumulated and the average salary as of that date, shall be kept by them. Such accumulated benefits shall be computed in accordance with §§ 396-396i of this title.

**(b)** Participants who, as of July 31, 2014, were entitled to retire and receive some sort of pension under this chapter for having met the years of service and age requirements provided herein, shall retire on a subsequent date and be entitled to receive the corresponding pension computed under § 396c of this title based on the salaries earned and years of service accrued as of July 31, 2014, plus the amount to which they are entitled under the Defined Contribution Program.

**(c)** As of August 1, 2014, participants shall not accumulate additional years of service for purposes of determining the average salary and computing the pension under the Defined Contribution Program. Participants shall not obtain contributions for periods worked before July 31, 2014, except for those exceptions expressly established in this chapter.

### Article 5.4. — Establishment of contributions accounts for the Defined Contribution Program.—

**(a)** The System shall establish and maintain an individual account for each participant with the contributions he/she has made to the Defined Contribution Program, said account shall be credited and debited in accordance with this subchapter.

**(b)** In the case of System participants who entered public service before August 1, 2014, the amounts contributed by them after August 1, 2014, shall be allocated to such account. Individual contributions made before August 1, 2014, shall be used for the payment of the pension provided in § 396c of this title.

**(c)** As of the date on which the Defined Contribution Account is established for each participant, said participants shall always be entitled to one hundred percent (100%) of the initial balance transferred, if any, and any contributions made after the approval of this act.

### Article 5.5. — Contributions of Defined Contribution Program participants.—

**(a)** Beginning on August 1, 2014, every active System participant shall mandatorily contribute ten percent (10%) of his/her monthly salary to his/her Defined Contribution Account. The percentage of the mandatory contribution to be made by each participant according to his/her monthly salary shall be reviewed as follows: (1) for Fiscal Year 2017-2018, to eighty-two percent (82%) of the maximum employer contribution established in subsection (b) of § 396b

2013 PR S.B. 1589

of this title for said fiscal year; and (2) for Fiscal Year 2020-2021, to seventy-one percent (71%) of the maximum employer contribution established in § 396b of this title for said fiscal year.

**(b)** The review established in subsection (a) of this section for Fiscal Years 2017-2018 and/or 2020-2021 may be rendered ineffective if the actuary certifies at the beginning of the corresponding fiscal year that such review is not necessary to reduce the actuarial deficit of the Retirement System.

**(c)** Any participant who wishes to contribute to his/her Defined Contribution Account a higher percentage than that established in subsection (a) of this section may do so by requesting the Executive Director in writing to withhold a higher amount from his/her salary.

### Article 5.6. — Employer contributions.—

Beginning on August 1, 2014, every employer shall contribute to the Fund the amount established in § 396b of this title with respect to every existing participant or participants who enroll for the first time in the System after such date.

### Article 5.7. —Obligation of the employer, penalties.—

**(a)** Any employer of a Defined Contribution Program participant shall have the following obligations:

**(1)** Obligation to deduct and withhold the contributions of program participants and to remit the contributions of the program participants and employers to the system.— Every employer of a Defined Contribution Program participant shall deduct and withhold the contributions provided in § 397d of this title from the participant's salary. The Secretary of the Treasury or any paymaster of the employer is hereby authorized to make such withholding, even if the salary to be paid to the participant as a result of such withholding is reduced to less than any minimum amount prescribed by law. Contributions of Defined Contribution Program participants shall be remitted by the employer along with the contributions such employer is required to make under § 397e of this title to the System on or before the fifteenth (15th) day of the month following the date on which the withholding was made. The Executive Director shall establish the form and manner in which contributions shall be remitted.

**(2)** Responsibility for contributions.— Every employer shall be required to remit to the System its contributions and those deducted and withheld from participants, as provided in this subchapter. Employers shall also be responsible to the System for the total payment of such contributions. If the employer fails to withhold, deduct, or remit such contributions, the sums that such employer failed to withhold or deduct and pay, shall be collected from the employer by the Executive Director.

2013 PR S.B. 1589

(3) Interests on contributions owed.—Any employer that fails to remit its contributions and those of the Defined Contribution Program participants within the term provided therefor shall be responsible to the System for the payment of interests at a rate to be determined by the Board on the contribution owed, from the day the contribution should have been remitted to the System to the day on which the contribution is remitted. Interests owed by an employer shall be collected by the Executive Director.

(b) Return on investment–credit.— If an employer fails to remit the contributions of Defined Contribution Program participants within the term provided therefor, the Executive Director shall credit the return on investment to the account of the affected Defined Contribution Program participants, as provided in § 397g of this title, as of the deadline for the employer to remit such contributions.

### Article 5.8. —Credits to the Defined Contribution Account, Return on Investment, and Rights on the Defined Contribution Account.—

(a) Credit.—The Executive Director shall credit to the Defined Contribution Account of every Defined Contribution Program participant the following items:

(1) Individual Contributions of Participants.— The individual contributions made by the Defined Contribution Program participant, as required under this chapter, shall be credited once the employer remits them to the System.

(2) Return on investment.— The return on investment shall be credited at the close of each semester of each fiscal year. The return on investment shall be computed on the last business day of each semester of the fiscal year on the average monthly balance of the defined contribution account of the Defined Contribution Program participant, during the semester in question. The return on investment shall be determined by the Board and shall never be less than eighty percent (80%) of the System's portfolio net rate of return during each semester of each fiscal year, of management fees such as, but not limited to, fees payable to portfolio managers, custody, and investment advice.

(b) Rights on the Defined Contribution Account.— Defined Contribution Program participants shall always be entitled to one hundred percent (100%) of the balance of the contributions made to their defined contribution accounts.

### Article 5.9. —Defined contribution account debits.—

The Executive Director shall debit from the Defined Contribution Account established for each Defined Contribution Program participant those amounts used for the payment of benefits or a lump sum distribution in accordance with §§ 397i and 397j of this title. Once the total balance of the defined contributions account is paid, the account shall cease to exist.

### Article 5.10. — Benefits upon separation from service.—

Jessica Mendez-Colberg

2013 PR S.B. 1589

**(a)** Retirement benefit.— Upon permanent separation from service, when the separation is not due to death or total and permanent disability, the balance of the participant's Defined Contribution Account shall be distributed to the participant, if such participant meets any of the following requirements: (1) has less than five (5) years of credited service or, (2) has less than ten thousand dollars ($10,000) accumulated in the System.

**(b)** Date of issue of pension contract and commencement of distributions.— In the case that the participant (1) permanently separates from service after completing five (5) years or more of credited service, and (2) has accumulated in the System an amount equal to or higher than ten thousand dollars ($10,000), said participant shall be entitled to a pension that shall be computed on the basis of the balance of his/her Defined Contribution Account, in accordance with subsection (c) of this section. The age in which the participant may begin to receive such annuity, provided that he/she has permanently separated from service, shall be that established in § 395h of this title. If separation from service occurs prior to the retirement age established in § 395h of this title, the participant shall receive a deferred pension until he/she reaches the required retirement age.

**(c)** The pension of each participant shall be computed upon retirement as follows: (1) the accumulated balance of his/her contributions to the Defined Contribution Account on the date of retirement, divided by (2) a factor, established by the Board in consultation with its actuaries and to be determined on the basis of the actuarial life expectancy of the participant and a specific interest rate.

### Article 5.11. — Death, disability, or terminal illness benefits.—

**(a)** Death of participant in active service.—In the event that a person who was rendering services and had accumulated contributions in the Defined Contribution Program dies, his/her contributions shall be reimbursed to the person or persons designated by the participant by a written order duly recognized and filed with the Executive Director, or to his/her heirs, if such designation had not been made. The reimbursement shall be equal to the amount of the contributions made and the rate of return until the date of the participant's death. The Executive Director shall collect from such contributions any outstanding debt that the participant had with the System.

**(b)** Separation from service due to disability or terminal illness.— Any participant who enrolled in the System after August 1, 2014, and after five (5) years in the public service suffers a disability, whether work-related or not, he/she shall be granted a disability pension by the System computed on the basis of his/her individual contributions, as determined by the System through regulations.

**(c)** Death of a pensioner.—

Jessica Mendez-Colberg

2013 PR S.B. 1589

**(1)** Reimbursement of individual contributions.— If a pensioner dies without depleting the balance of all the individual contributions made to the Defined Contribution Program before he/she began to receive pension payments, his/her beneficiaries designated in the System or, in default thereof, his/her heirs, shall have the following options: (1) to continue receiving the monthly pension payments until the contributions made by the participant while he/she was in active service are depleted; or (2) to request the Executive Director in writing to pay such balance in a lump sum, subject to any corresponding deduction required by law. If, at the time of the pensioner's death, the contributions made by him/her to the Defined Contribution Program, before he/she began receiving pension payments, were depleted by said pensioner through monthly pension payments already received, such monthly payments shall be discontinued and the pensioner's beneficiaries and/or heirs shall not be entitled to receive any additional payments.

**(2)** Pension by transfer.—

**(A)** . Defined Contribution Program participants, at the time of retirement, may elect to receive a retirement pension lower than that to which he/she is entitled and provide with the difference as determined by actuaries, one or more pensions for his/her dependents, whose names shall be included in a written order filed with the Executive Director. This privilege shall be granted insofar as the participant undergoes a medical examination and meets the health requirements to be established by the Board in its regulations; provided, that it is proven to the satisfaction of the Executive Director that the designated beneficiaries of the pension by transfer are the participant's dependents; provided, further, that no pension by transfer resulting from the exercise of this option shall be lower than two hundred forty dollars ($240) per year; and that the amount of such pension by transfer does not exceed the reduced retirement pension to which the participant is entitled, in accordance with his/her option.

**(B)** . The Executive Director shall determine the amount of the pensions by transfer in accordance with the written order of the participant. Every pension by transfer shall begin to be paid upon the death of the participant. If one (1) or more of the designated beneficiaries dies before the participant, the corresponding pension by transfer shall not be paid. Once the retirement pension has been granted, and it is effect and payable, the Executive Director shall not allow any changes to the written order filed with the System; except if the participant dies within thirty (30) days following his/her retirement, in which case it shall be considered that said participant died while in active service.

**(C)** . Pensions granted under this subsection shall be paid for life on a monthly basis, and shall not be increased, reduced, revoked, or repealed, except when they are issued by error or as otherwise expressly provided. The first payment of a pension shall cover

2013 PR S.B. 1589

the fraction of the current month until the end of the first month; the last payment shall cover the end of the month in which the beneficiary dies.

### Article 5.12. — Applicability of Uniform Securities Act.—

The interests accrued by any Defined Contribution Program participant shall not constitute a security for purposes of §§ 881 et seq. of Title 10, known as the "Uniform Securities Act."

## Investments and Loans

### Article 6.1. — Investment of funds; rules and procedures.—

**(a)** The System shall invest its funds in accordance with the provisions of this chapter and the rules, procedures, and regulations prescribed by Board of Trustees through regulations.

**(b)** The regulations, rules, and procedures approved shall be consistent with all the restrictions established in the Investment Guidelines for government retirement plans promulgated by the Government Development Bank for Puerto Rico.

**(c)** The Board of Trustees shall adopt the policies for the administration of the investments authorized under this chapter. The investment policy shall include, but not be limited to, the following:

**(1)** . The criteria, requirements, and conditions for the selection, contracting and evaluation of the performance of investment managers and depository banks to be contracted to make the investments authorized under this chapter.

**(2)** . The policy for investing the System's resources in the capital market.

**(3)** . The rules for the administration, lease, sale, encumbrance or attachment of real property acquired to generate income.

**(4)** . Provisions to direct actuarial investigations to determine the System's financial solvency, adopt rules as are necessary to guarantee the payment of pensions, and approve the mortality tables necessary to make an actuarial valuation of all pensions and other benefits granted under this chapter.

### Article 6.2. — Types of authorized investments.—

**(a)** The System shall be authorized to invest all available resources that are not required for its regular operations in the securities authorized under the Investment Guidelines promulgated by the Government Development Bank for Puerto Rico and the Investment Guidelines established and approved by the System.

**(b)** Investments made in accordance with the provisions of this chapter shall be executed with the foresight and care and under the criteria that prudent, reasonable and expert individuals exercise in conducting their own affairs for investment and not speculative purposes, also taking into consideration the balance that must exist between yield and risk expectations.

Jessica Mendez-Colberg

2013 PR S.B. 1589

**Article 6.3. — Nature of loans to system participants; documents; exemptions.—**

**(a)** The funds of the System may also be invested, in accordance with the regulations in effect, by granting participants:

**(1)** Loans secured by contributions.

**(2)** Special loans.

**(3)** Mortgage loans. Any document regarding contracts or securing mortgage loans, mortgage renewals and cancellations, as well as the recording, annotation or any transaction related to said document which is part of the System and is executed before a notary, shall be exempt from the payment of any type of fees, levies, and taxes.

**(4)** Loans to temporary transitory and eligible transitory participants at an interest rate to be determined by the Board of Trustees in its general by-laws.

**(5)** Any other type of loan or credit which the Board of Trustees of the System deems to be beneficial or necessary for its participants.

**(6)** Cultural travel loans.—The Board of Trustees is hereby authorized to invest a portion of the reserves available to facilitate the granting of loans to System participants for cultural travel, subject to the regulations adopted by the System. The System shall determine, from time to time, the amount of funds to be allocated to this type of investment. It shall also determine through regulations the conditions and lending procedure authorized under this chapter. Loan payments shall be deducted on a monthly basis from the salary of the System participant. The Government shall pay the System fifty percent (50%) of the interests corresponding to the loan made by the participant to participate in these trips. If the participant resigns from the position he/she holds within eighteen (18) months after receiving the loan, such participant shall reimburse the Government the interests it paid on said loan. The resources deemed necessary for attaining these purposes shall be earmarked every year in the Budget of the Commonwealth of Puerto Rico.

**Article 6.4. — Loan deductions and interests.—**

The deductions from the participant's salary to pay loans granted and the interest deducted in advance shall be covered into the Fund by the Secretary of the Treasury simultaneously with the payroll payment.

**Article 6.5. — Power to regulate lending procedures.—**

The System shall approve the regulations it deems convenient and necessary to regulate the granting of loans.

**Administrative Provisions**

**Article 7.1. — Regular and special appropriations.—**

Jessica Mendez-Colberg

2013 PR S.B. 1589

**(a)** In order to make up the System's cash flow deficit, every fiscal year, beginning on fiscal year 2016-2017 and ending on fiscal year 2041-2042, the System shall receive the Teacher's Justice Uniform Contribution. Furthermore, from fiscal year 2018-2019 to fiscal year 2041-2042, the System shall receive the annual additional contribution, as defined in § 393 of this title.

**(b)** For every applicable fiscal year, the System shall determine the portion of the annual additional contribution corresponding to each participating employer on the basis of the total percentage of employer contributions corresponding to such employer for the current fiscal year and remit to the Office of Management and Budget a certification of the amount corresponding to such employer.

**(c)** The resources to cover both the Teacher's Justice Uniform Contribution and the annual additional contribution shall be earmarked by the Office of Management and Budget in the Recommended General Budget of the Government.

**(d)** The System shall be responsible for the regular payment of employer contribution provided in this chapter for System employees who benefit from this chapter.

**Article 7.2. — Obligations of the System, teachers, and employers to expedite the process.—**

**(a)** The System shall process the application for retirement within thirty (30) days after receipt of the resignation acceptance certification and all the required documentation.

**(b)** The employer shall be required to submit all required documents to the System within thirty (30) days following the date of the application for retirement benefits or liquidation of funds.

**(c)** In the event that classroom teachers and school principals retire during the school year, they shall notify their resignation to the Department of Education within one hundred twenty (120) days before the beginning of the school semester during which they plan to avail themselves of the retirement benefits. If the classroom teacher or school principal fails to comply with such notice, he/she shall not be able to retire during such school semester, but may do so at the end of such semester, subject to compliance with the following provisions:

**(1)** During the school semester beginning on January of such year, the classroom teacher or school principal must submit, on or before January 31 of the school year, to the System an application to obtain a Certification of Years of Credited Service in the public service to avail him/herself of the pension benefits at the end of the January-May semester.

**(2)** The System shall act on such application on or before March 31 of said year, so that the teacher or principal may submit their letter of resignation to the Department of Education before May 31, which shall take effect on June 30 of that same year.

**(3)** Every classroom teacher and school principal of the Department of Education, who wishes to retire during the school semester beginning on August of such year, shall submit to the

Case:17-03283-LTS Doc#:19606-2 Filed:12/23/21 Entered:12/23/21 20:28:30 Desc: Exhibit B
Exhibit B - Act 160-2013 Page 48 of 51

Page 48 of 51

2013 PR S.B. 1589

System an Application to obtain a Certification of Years of Credited Service in the public service to avail him/herself of the pension benefits at the end of the August-December semester of the school year.

(4) The System shall act on such application on or before August 30 of the current year, so that the teacher or school principal may submit the letter of resignation to the Department of Education. Such letter shall be submitted before October 31, in order to take effect on December 31 of said year.

(d) The System shall notify the Department of Education of any application for retirement received. Likewise, notwithstanding the Retirement System's notification to the Department, the participant interested in availing him/herself of the retirement benefits shall notify the Department of his/her application for retirement upon filing the same.

(e) These provisions shall not apply to teachers or school principals of the Department of Education who are ill or experiencing unforeseeable or special circumstances that prevent them from working in the classroom or school.

(f) If the System fails to meet the obligation established in subsection (a) of this section it shall be responsible to the participant for the payment of an amount equal to a month's salary at the time the application for retirement benefit is filed, except in cases of force majeure, foreign to the administrative process. Such penalty shall be applied at the teacher's request. If the employer fails to meet the obligation established in subsection (b) of this section, said employer shall be responsible to the participant for the payment of an amount equal to a month of the participant's salary at the time the application for retirement benefit or liquidation is filed.

## Article 7.3. — Loss of benefits for acts of corruption.—

(a) Any System participant who commits and is convicted in a court of justice of Puerto Rico or any other state or federal jurisdiction, of acts constituting fraud, extortion, acceptance of a bribe, illegal taking, or any other offense involving the use of public funds for his/her own benefit or for the benefit of another person or entity, shall lose all benefits under the System.

(b) In such case, the System shall refund to the participant the balance of all accrued individual contributions made to the Fund but not enjoyed, deducting any debt, if applicable, incurred therewith.

## Article 7.4. — Penalties.—

(a) Any person who unduly collects a check issued to an active participant or pensioner, or who knowingly makes any false statement or falsifies or allows the falsification of any registry or document of this System, with the intent to defraud it, shall be guilty of a misdemeanor, and subject to a five hundred dollar ($500)-fine, or in default thereof, to imprisonment for a term that shall not exceed two (2) years, or both penalties at the discretion of the court.

Jessica Mendez-Colberg

Case:17-03283-LTS   Doc#:19606-2   Filed:12/23/21   Entered:12/23/21 20:28:30   Desc: Exhibit B
Exhibit B - Act 160-2013   Page 49 of 51

Page 49 of 51

2013 PR S.B. 1589

(b) The System shall be entitled to recover any payments erroneously or unduly made before or after the effective date of this act. The System shall determine the manner and conditions under which the amounts thus paid shall be recovered.

### Article 7.5. — Pre-retirement orientation program.—

(a) Consistently with the public policy of the Government of providing orientation to all public employees prior to their retirement, the System shall establish a "Pre-retirement Orientation Program for Education Professionals."

(b) The Executive Director shall be responsible for the operation and appropriate contents of the Program, and shall coordinate orientations, as he/she may deem convenient or appropriate, with the Department of Education and the entities employing personnel participating in the System.

(c) As part of the Pre-retirement Orientation Program of its participants, the System shall promote their participation in community service activities, provide orientation regarding the kind of volunteer work in which participants may engage, health benefits of participants, and social contribution, as well as a list of community organizations in which they may provide community service, as established in the Registry of Community Service Organizations attached to the Special Joint Committee on Legislative Donations of the Legislative Assembly of Puerto Rico.

(d) Each employer shall set aside in its annual budget the necessary resources to cover the costs of resources, physical facilities, food, and other related expenses incurred by the System in providing orientations to its participants. The employer shall make such payment not later than the fifteenth (15th) day of the month following the date of the invoice.

### Section 2.— Repeal of Laws in Effect.—

(a) Act No. 91-2004, as amended [18 L.P.R.A. §§ 391-392w], known as the "Commonwealth of Puerto Rico Teacher's Retirement System Act," is hereby repealed.

(b) Act No. 38-2011, as amended [*3 L.P.R.A. § 757h*], known as the "Summer Bonus Act," is hereby repealed.

(c) Act No. 162-2003, as amended [*18 L.P.R.A. § 383a*], known as the "Medications Bonus Act," is hereby repealed.

(d) Act No. 49 of May 23, 1980, as amended [*18 L.P.R.A. § 383*], known as the "Christmas Bonus for Retired Teacher's Act," is hereby repealed.

### Section 3.— Separability Clause.—

If any clause, paragraph, subparagraph, article, provision, section, subsection or part of this Act were held to be unconstitutional by a competent court, such holding shall not affect, impair, or invalidate the remaining

2013 PR S.B. 1589

provisions of this Act. The effect of such holding shall be limited to the clause, paragraph, subparagraph, article, provision, section, subsection, or part thereof thus held to be unconstitutional.

### Section 4.— Transitory Provisions.—

**(a)** The provisions of Article 7.3 of this Act shall be stayed and the obligations of the System, Participants, and Employers provided therein shall be established by the Executive Director through an administrative determination within fifteen (15) days after the approval of this Act. In such administrative determination, the Executive Director shall establish the date on which the effectiveness of the provisions of Article 7.3 shall be resumed. Provided, that participants in active service who, on or before July 31, 2014 meet all the requirements to receive a pension under Article 4.4 of this Act and wish to retire on such date in order to enjoy the benefits provided in Article 4.9 of this Act, shall be required to submit their resignation to the Department of Education and a copy thereof to the Teacher's Retirement System on or before February 15, 2014, or if this Act is approved on a date later than February 1, 2014, within fifteen (15) business days after the date of approval of this Act. The Secretary of Education, and at the participant's request, shall render the participant's resignation ineffective, if on or before June 30, 2014, such participant submits proof of a determination of non-eligibility for the pension requested, issued by the Teacher's System. The Office of Management and Budget, in consultation with the Department of Education, may extend the deadline to render resignations to a date it deems pertinent, but not later than June 30, 2014.

**(b)** The System, the Government Development Bank, the Department of Education, and the Office of Management and Budget are hereby directed to enter into conversations and agreements as are necessary with the Social Security Office, so that teachers who enroll in the System on or after August 1, 2014 may contribute to Social Security. Such agreements may be extended to participants who were active as of July 31, 2014. The Retirement System and the Department of Education shall prescribe by regulations the parameters for the implementation of these provisions.

### Section 5.— Effectiveness.—

This Act shall take effect immediately after its approval.

# History

Enacted December 24, 2013

Approved December 24, 2013

Effective date: December 24, 2013

PUERTO RICO ENGLISH ADVANCE LEGISLATIVE SERVICE

Jessica Mendez-Colberg

2013 PR S.B. 1589

Copyright © 2021 LexisNexis. All rights reserved.

End of Document

Jessica Mendez-Colberg