IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of:<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEE'S RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY<br><br>Debtors | PROMESA<br>Title III<br><br>Case No. 17-bk-3283 (LTS)<br><br>(Jointly Administered)[1] |

**OMNIBUS OBJECTION TO
CORRECTED RESPONSE TO ORDER TO SHOW CAUSE;
MODIFIED EIGHT AMENDED TITLE III PLAN OF ADJUSTMENT;
AND PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN
CONNECTION WITH CONFIRMATION OF PLAN OF ADJUSTMENT**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 35(787)66-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

# TABLE OF CONTENTS

I.   Preliminary Statement ............................................................................................... 4

II.   The Newly Proposed Plan Materials fail to comply with the Court's Memorandum Order as the Oversight Board still seeks to impair and discharge Eminent Domain and Inverse Condemnation claims ....................................................................................... 6

III.   The Newly Proposed Plan Materials violates the Rooker-Feldman and res judicata doctrines ................................................................................................................... 12

   A.   Rooker-Feldman doctrine ................................................................................. 13

   B.   Res judicata doctrine ........................................................................................ 14

IV.   The Oversight Board's Response fails to comply with the Court's Memorandum and only rehashes previously raised arguments that were considered and rejected ....... 15

## TABLE OF AUTHORITIES

### Cases

ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) ............................ 14

Bay State HMO Mgmt., Inc. v. Trigley Sys., Inc., 181 F.3d 174, 181 (1st Cir. 1999) ...... 13

BBVA v. Vazquez (In re Vasquez), 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012) .................. 15

Equity Sec. Holders Comm. v. Wedgestone Fin., 152 B.R. 786, 788 (Bankr. D. Mass. 1993) ............................................................................................................................ 14

Exxon Mobil Corp. v. Saudi Basic Inds. Corp. ................................................................ 12

Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 189 (1902) ............................................... 16

In re: Figueroa-Alonso, 2015 Bankr. Lexix 2380 (Bankr. D. PR. 2015) .................... 14, 15

In re: Medomak Canning, 922 F.2d 895, 899 (1st Cir. 1990) ........................................... 13

Monongahgela Navigation Co. v. United States, 148 U.S. 312, 325 (1893) .................... 17

Rivera v. P.R. Elec. Power Auth., 4 F. Supp. 3d 342, 351 (D.P.R. 2014) ........................ 13

Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 250 (B.A.P. 1st Cir. 2008) .... 14, 15

Soto-Padró v. Public Buildings Authority, 675 F.3d 1, 9 (1st Cir. 2012) ......................... 15

Standard Química de Venezuela v. Central Hispano International, Inc., 189 F.R.D. 202, 205 fn.4 (D.PR. 1999) ................................................................................................. 15

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462,482 (1983) ......................................... 12

*Phila. Entertainment Entertainment v. Dept. of Revenue (In re: Phila. Entertainment Entertainment)*, 879 F.3d 492 (3rd Cir. 2017)   12

### Statutes

28 U.S.C. § 1257 ............................................................................................................... 12

Negron-Fuentes v. UPS Supply Chain Sols., 532 F.3d 1, fn. 2 (1st Cir. 2008) ................ 13

TO THE HONORABLE COURT:

COMES NOW **Finca Matilde, Inc.** ("Finca Matilde"), a creditor in the captioned case, whom, through the undersigned legal counsel, very respectfully state, pray, and objects to (i) the *Corrected Response of the Financial Oversight and Management Board in accordance with Order Regarding Certain Aspects of Motion for Confirmation of Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Response") filed and proposed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") at Docket No. 19574; (ii) to the *[Proposed] Findings of Facts and Conclusions of Law in Connection with Confirmation of the Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al*, (the "Revised Proposed FFCL") at Docket No. 19570; (iii) *Notice of Filing of Revised Proposed Order and Judgment Confirming Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Revised Proposed Order") at Docket No. 19571; (iv) and the *Notice of Filing of Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Revised Plan") at Docket No. 19572 (the "Newly Proposed Plan Materials" when referring to the latter three documents together), for the reasons stated herein below:

**I.     Preliminary Statement**

On December 14, 2021, this Court entered the *Order Regarding Certain Aspects for Confirmation of Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Memorandum Order") which, among other things, determined that "any treatment in the Proposed Plan that provides less than just compensation for allowed eminent domain and inverse condemnation claims by way of impairment and discharge in bankruptcy does not comply with the Fifth Amendment."

4

[Docket No. 19517, p. 14, fn. 6].[2] Upon this and other determinations, the Court ordered the Debtor, through its Title III representative, to either submit a proposal of modifications "consistent with its Memorandum Order" or a "showing of cause as to why the motion for confirmation should be denied in absence of such modifications." *See* Memorandum Order [Docket No. 19517, p. 17, Part. VI]. The Oversight Board did both but complied with none.

In response to the Court's Memorandum Order, the Oversight Board alleges that the Newly Proposed Plan Materials were modified "to provide full payment to allowed claims for eminent domain takings and inverse condemnation takings if the Court adheres to the view in its Memorandum Order and the confirmation order issued by the Court becomes final and no longer subject to review or certiorari proceedings." *See* Response [Docket No. 19574, p. 22, ¶ 17]. Yet, the Oversight Board's assertion is mistaken. The Proposed Plan Materials do not comply with this Court's Memorandum Order. On the contrary, the Newly Proposed Plan Materials constitute a blatant attempt to end run around (i) the Court's Memorandum Order conclusions on eminent domain claims and inverse condemnation claims (the "Per Se Creditors" collectively); [3] (ii) as well as the the jurisdictional constrains of the Rooker Feldman doctrine; and (iii) to unlawfully shift to the creditors the burden of proof in the claim objection process established in Section 502(a) of the Bankruptcy Code and Bankr. Rule 3007 and its binding case law, [4] as made applicable to the instant Title III case by Sections 301 and 310 of the *Puerto Rico*

---

[2] Unless otherwise specified, all references to a "page" or "pages" in a docket entry refers to the pagination of the C/M ECM e-filing system at the top heather of each page.

[3] This Court used the terms "Pe Se Creditors" to refer collectively to holders of allowed eminent domain claims and inverse condemnation claims. *See* Memorandum Order [Docket No. 19517, p. 6, Part II]. For consistency purposes, the same term will be used herein to refer to those creditors.

[4] Any reference to the Bankruptcy Code refers to the United States Bankruptcy Code as codified in Title 11 of the Unites States Code.

5

*Oversight, Management, and Economic Stability Act* ("PROMESA"), 48 USC §§ 2161 and 2170, respectively.

In the newly filed Plan Per the Se Creditors are grouped in Class 54 which provides that any "unsecured" portion of the claim will be paid as a general unsecured claim "unless" the otherwise ordered in the Confirmation Order or the Court's conclusions of law in respect to the Plan [Docket No. 19572, p. 135, § 58.1]. However, none of the Newly Proposed Plan Material orders payment of in full to Per Se Creditors. Moreover, the Revised Plan further impairs and discharges Per Se Creditors by voiding pre-confirmation judgment and, at the same time, prohibiting distribution until the entry of a Final Order, as defined by the Revised Plan, and by further prohibiting amendments of proof of claims. If all pre-confirmation judgments are voided, as the Revised Plan proposes, and no distribution will be made without a Final Order, then for all practical purposes, Per Se Creditors are being impaired and discharged.

Moreover, procedurally speaking the Oversight Board's Response fails to show cause as to why confirmation should not be denied. Such response is merely a motion for reconsideration that does not comply with the applicable standard of Rule 9023. There is no newly discovered evidence, there is no manifest error of law or fact, no manifest injustice, and no intervening change in controlling law. As it will discussed in this objection, there are no grounds to support relief under which this Honorable Court should revisit its decision with respect to objections of Per Se Creditors' objections.

**II. The Newly Proposed Plan Materials fail to comply with the Court's Memorandum Order as the Oversight Board still seeks to impair and discharge Eminent Domain and Inverse Condemnation claims**

In its Memorandum Order this Honorable Title III Court unambiguously determined that "any treatment in the Proposed Plan that provides less than just compensation for allowed eminent domain and inverse condemnation claims by way of

6

impairment and discharge in bankruptcy does not comply with the Fifth Amendment." [Docket No. 19517, p. 14, fn. 6]. In view of this determination, the Court ruled that it "**will not** confirm the Proposed Plan as written because Class 54 relegates to partial payment the portion of Allowed Eminent Domain Claims that is not on deposit with the Court of First Instance and makes no provision for full payment of allowed inverse condemnation claims." [Docket No. 19517, pp. 14-15] (Emphasis was added). The Newly Proposed Plan Materials, however, contain several dispositions that contradict this Court's Memorandum Order. Some dispositions are in direct contravention, others are in contraventions when read all together.

The Board revised and amended the previously filed Title III plan of adjustment and, with respect to Per Se Creditors, the Revised Plan states that such creditors will receive the following Treatment:

> "Treatment of Eminent/Inverse Condemnation Domain Claims: From and after the Effective Date, (a) to the extent not modified prior thereto, the automatic stay extant pursuant to section 362 of the Bankruptcy Code shall be deemed modified in order to permit the holder of an Eminent Domain/Inverse Condemnation Claim to (i) liquidate such Eminent Domain/Inverse Condemnation Claim in such holder's Eminent Domain Proceeding and (ii) cause the Clerk of the Court of First Instance to distribute to such holder the amount of monies on deposit with the Court of First Instance with respect to the condemned property, and (b) the balance of the claimholder's Eminent Domain/Inverse Condemnation Claim shall be paid as a general unsecured claim in Class 58 **unless** *the Confirmation Order or the conclusions of law in respect of the Plan provides such Claims must be paid in full* **to the extent** *they are Allowed Claims for just compensation*, **in which case**, *upon both such orders becoming a Final Order and upon the occurrence of a* **Final Order** *determining the validity and amount of just compensation attributable to an Eminent Domain/Inverse Condemnation Claim*, the holder of an Allowed Eminent Domain/Inverse Condemnation Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's unpaid balance of its Allowed

7

> Eminent Domain/Inverse Condemnation Claim, in Cash, one hundred percent (100%) of such Allowed Eminent Domain/Inverse Condemnation Claim." *See* Revised Plan (Emphasis and italics was added; the stricken parts were omitted) [Docket No. 19572, pp. 135-136, § 58.1].

This language not only continues to misclassify Per Se Creditors as general unsecured claims but further impairs and discharges such claims when read altogether with other parts of the Revised Proposed Plan. As The Court can see from the fragment quoted above, the proposed treatment and distribution to Per Se Creditors is contingent to the occurrence of the following three events: (1) there must be a Final Confirmation Order, (2) either the Confirmation Order or the Court's findings and conclusions in connection with the confirmation hearing must order payment in full of such claims; (3) there must be a Final Order determining the validity and amount of just compensation of such Per Se Creditors. The imposition of these conditions is particularly problematic and renders the Revised Proposed Plan unconfirmable as inconsistent with the Fifth Amendment and this Court's Memorandum Order.

Firstly, the Court should note that the Revised Proposed Plan is very specific that payment in full must be ordered in either the confirmation order or the proposed findings and conclusion regarding confirmation; yet, neither the Revised Proposed FFCL nor the Revised Order contains such order. It is the exact opposite; such document provide that the Per Se creditor's objections are overruled, and that Eminent Domain Claims and Inverse Condemnation Claims can be impaired and discharged. See Revised Proposed FFCL [Docket No. 19570, p. 227] ("Accordingly, the Class 54 claimants' and inverse condemnation claimants' assertions that their Claims should be paid in full or deemed nondischargeable are overruled, unless the Confirmation Order, to the extent a Final Order, provides that such Claims must be paid in full to the extent they are Allowed Claims for just compensation."). In fact, the entire paragraph 60 (consisting of five pages) is a

8

legal discussion as to why the claims of Per Se Creditor are dischargeable. It is untenable for an any court (Title III or bankruptcy) to dedicate five full pages on a legal discussion as to why Per Se Creditors' can be impaired and discharged and then arbitrarily order the plan proponent to pay in full such claims. If paragraph 60 of the Revised Proposed FFCL is not eliminated, and Per Se Creditors are paid in full, it would create an unequitable, unstained, and arbitrary scenario that may be easily overturned on appeal. Besides, this Honorable Title III already made its determination and legal conclusion as to that specific legal issue in its Memorandum Order.

Secondly, even if we to presume that paragraph 60 of the Revised Proposed FFCL is eliminated and that this Title III Court orders payments in full to Per Se Creditors in a separate order, the Revised Proposed Plan still impairs and discharge Finca Matilde's claims because it restricts the amount and imposes conditions to distribution not otherwise imposed by PROMESA, the Bankruptcy Code, or applicable non-bankruptcy law.

In its Memorandum Order this Court concluded that "just compensation must generally consist of the total value of the property when taken, plus interests from that time." *See* Memorandum Order quoting Knick v. Township of Scott, 139 S. Ct. 2162 (2019) [Docket No. 19517, p. 11]. Yet, as per Section 82.5 of the Revised Plan, and given the language and definitions incorporated to the Revised Proposed Plan, the Revised Proposed Plan fails to comply with the Fifth Amendment and this Court's Memorandum Order to the extent that it does not provide for the payment of the accrued pre- and post-petition interest on Eminent Domain and Inverse Condemnation Claims. Therefore, this Tile III case cannot procced to confirmation.

9

Section 82.5 of the Revised Plan specifically provides that no claim will accrue interests. [Docket No. 19572, p. 183, § 85.2].[5] With respect to distribution to the Per Se Creditors, the Revised Proposed Plan states the following:

> "Distributions with respect to Eminent Domain/Inverse Condemnation Claims: Except as otherwise provided herein, within ten (10) Business Days following the occurrence of a ***Final Order*** determining the validity and amount of just compensation attributable to an Eminent Domain/Inverse Condemnation Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Eminent Domain/Inverse Condemnation Claim, **Cash in the amount of such *Allowed Claim*.**" *See* Revised Plan (Emphasis and italics was added) [Docket No. 19572, p. 168, § (e)].

"Allowed Claim" is defined in the Revised Plan as "[a] claim, to the extent it is or has become Allowed"; and "Allowed" is defined to "**not include interest** … arising from or relating to the period from and after the Petition Date". See Revised Plan (Emphasis was added) [Docket No. 19572, p. 40, § 1.63]. If the Oversight Board or its Disbursement Agent will only distribute Per Se Creditors an amount equal to the creditor's "Allowed Claim", it follows that the Oversight Board does not contemplate payment io interests as required by the Takings Clause of the Fifth Amendment. This constitutes an unconstitutional impairment and discharge of Finca Matilde's just compensation that does not comply with the Court's Memorandum Order.

---

[5] Such section of the Revised Plan states:

> "**Non-Accrual of Interest**: Unless otherwise specifically provided for herein or by order of the Title III Court, post-petition interest shall not accrue or be paid on Claims, Allowed or otherwise, and no holder of a Claim, Allowed or otherwise, shall be entitled to interest accruing on or after the Commonwealth Petition Date, the ERS Petition Date, or the PBA Petition Date, as the case may be, on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim."

10

Additionally, the Revised Plan defines "Final Order" in an overly broad form that would result in the impairment and partial discharge of Per Se Creditor's claims. The Revised Plan defines "Final Order" to include judgments entered by any court of competent jurisdiction which, by necessary implication, includes the Court of First Instance of Puerto Rico. The Revised Plan expands this definition as follows:

> <u>Final Order</u>: An order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court **and has not** been reversed, vacated, **or stayed** and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, remand proceeding, or other proceedings for a new trial, re-argument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed, reversed or remanded in part or in full, with no further proceedings on remand, by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; **provided, however**, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or *any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules*, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules. See Revised Plan (Emphasis and italics were added) [Docket No. 19572, p. 65, § 1.253].

Pursuant to the automatic stay injunction of Section 362(a) of the Bankruptcy Code, the prosecution and enforcement of all judgments is stayed. By excluding stayed orders and judgments for the definition of "Final Order" no pre-petition final order is a "Final Order" for distributions purposes. This would necessarily mean that Per Se Creditors with a final pre-petition judgment, such as Finca Matilde, will be forced to

11

relitigate its inverse condemnation case in the claim estimation process instituted Sections 82.1 and 82.2 of the Revised Plan if it wishes to receive distribution. This definition along with other parts of the Newly Proposed Plan Materials grants the Debtor impermissible rights it does not have under PROMESA, the Bankruptcy Code, and non-bankruptcy law, including the creation of federal jurisdiction where there is none.

A plan that limits and conditions distribution of Eminent Domain and Inverse Condemnation Claims does not comply with this Court's Memorandum Order and violates the Takings Clause of the Fifth Amendment. Moreover, to force Per Se Creditors to relitigate their claims is unlawful.

### III. The Newly Proposed Plan Materials violates the Rooker-Feldman and *res judicata* doctrines

Not only is the Oversight Board proposing to limit and impair Per Se Creditors' claims in the Revised Plan, but also seeks to avoid pre-petition state court judgments to force Per Se Creditors to relitigate their respective cases. The Revised Proposed Order before this Honorable Court still proposes to void and discharge all pre-petition judgments against the Debtor. The Revised Proposed Order orders the following:

> "In accordance with the foregoing, except as expressly provided in the Plan or herein, this Order shall constitute a judicial determination, as of the Effective Date, of the **discharge** and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and **such discharge shall void and extinguish any judgment obtained against the Debtors** or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability." See Proposed Order (Emphasis was added) [Docket No. 19571, p. 66, § (b)].

12

Since the Revised Plan requires a Final Order to pay Per Se Creditors, and all pre-petition judgments that were stayed upon the filing of the instant Title III case, and the Revised Order proposed by the Oversight Board voids all pre-confirmation judgments, Finca Matilde and other Per Se Creditors would unlawfully be forced to relitigate their claims to receive distribution.

### A. Rooker-Feldman doctrine

The Rooker-Feldman is a jurisdictional doctrine that deprives federal court of jurisdiction to entertain complaints that essentially invite federal courts of first instance to review and reverse unfavorable state-court judgments. *See* Exxon Mobil Corp. v. Saudi Basic Inds. Corp., 554 U.S. 280, 283 (2005). In other words, the Rooker-Feldman doctrine deprives federal and bankruptcy courts of jurisdiction over suits that are essentially appeals from state-court judgments. *See* Phila. Entertainment Entertainment v. Dept. of Revenue (In re: Phila. Entertainment Entertainment), 879 F.3d 492, 498 (3rd Cir. 2017). The policy and reasoning behind the Rooker-Feldman doctrine is that pursuant to 28 U.S.C. § 1257, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this [*Supreme*] Court." D.C. Court of Appeals v. Feldman, 460 U.S. 462,482 (1983).

This doctrine impedes the losing party of a state court action (the Debtor in this case) to seek review and rejection of the state-court judgment in federal court. *See* McKenna v. Curtin, 869 F.3d 44, 47-48 (1st Cir. 2017). This is exactly what the Oversight Proposes with its Revised Plan and Revised Proposed Order: to void final prepetition Eminent Domain and Inverse Condemnation judgments so that they may be relitigated in this federal forum as per Section 82.1(a) of the Revised Plan or be forced to estimate its unliquidated Allowed Claim pursuant to Section 82.1(b) of the Revised Plan.

13

## B. Res judicata doctrine

Res judicata is an umbrella term encompassing both issue preclusion (traditionally known as collateral estoppel) and claim preclusion (the traditional phrase is merger and bar)." Negron-Fuentes v. UPS Supply Chain Sols., 532 F.3d 1, fn. 2 (1st Cir. 2008). "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were of could have been raised in that action." In re: Medomak Canning, 922 F.2d 895, 899 (1st Cir. 1990). "Even though claim and issue preclusion address different legal issues, both "operate as a bar to the litigation or re-litigation of claims or issues that were or could have been adjudicated in a prior judicial action for which a final judgment on the merits has been rendered." Rivera v. P.R. Elec. Power Auth., 4 F. Supp. 3d 342, 351 (D.P.R. 2014) (Internal citations were omitted). "The policy behind *res judicata* is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Bay State HMO Mgmt., Inc. v. Trigley Sys., Inc., 181 F.3d 174, 181 (1st Cir. 1999). Even though this doctrine is an affirmative defense that may be waived by the party (and Finca Matilde does not), it can also be raised by courts *sua sponte* because the underlying policy behind such defense "is not based solely on the defendant's interests in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." Arizona v. California, 530 U.S. 392, 412 (2000).

Finca Matilde already has a 10-year-old final judgment against the Debtor for inverse condemnation. To void such judgment to then litigate the merits of such in an objection to claim proceeding is contrary to the policy behind res judicata. Neither Finca Matilde, the Court, nor any other Per Se Creditor should bear cost of relitigating issues already decided by another court.

14

### IV. The Oversight Board's Response fails to comply with the Court's Memorandum and only rehashes previously raised arguments that were considered and rejected

With respect to the impairment and dischargeability objections raised by Finca Matilde and other Per Se Creditors the Court's Memorandum Order clearly concluded that "[t]he Proposed Plan's treatment of eminent domain and inverse condemnations claims is therefore in violation of the Takings Clause of the Constitutions of the United States." [Docket No. 19517, p. 14]. While the Court invited the Oversight Board to file a motion to show cause, Finca Matilde submits that such invitation cannot be construed as an invitation to rehash its prior arguments or to move the Court to reconsider its ruling, specially without complying with Rule 9023, as applicable to this Title III case.

The Federal Rules do not recognize motions for reconsideration in *haec verba*. However, a bankruptcy court does have post-adjudication reconsideration powers under Rule 9023 and 9024 which extends Fed. R. Civ. P. 59 to bankruptcy cases and proceedings. When a motion challenges a prior judgment on the merits, it will be treated as either a motion to alter or amend under Fed. R. Civ. P. 59(e) or a motion for relief from judgment under Fed. R. Civ. P. 60(b). *See* Equity Sec. Holders Comm. v. Wedgestone Fin., 152 B.R. 786, 788 (Bankr. D. Mass. 1993).

Rule 9023, which incorporates Fed. R. Civ. P. 59(e), itself does not provide the grounds on which relief under the rule may be granted; thus, courts have considerable discretion in deciding whether to grant or deny a motion to alter or amend under Fed. R. Civ. P. 59(e). In re: Figueroa-Alonso, 2015 Bankr. Lexix 2380 (Bankr. D. PR. 2015), quoting ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008).

In order for a motion for to proceed under this rule, the movant must clearly establish a manifest error of law or present newly discovered evidence that could not have been diligently found during the case. *Id.* quoting Schwartz v. Schwartz (In re Schwartz),

15

409 B.R. 240, 250 (B.A.P. 1st Cir. 2008). Within the First Circuit, the Court of Appeals has established that a motion for reconsideration brought under Fed. R. Civ. P. 59(e) must be based upon newly discovered evidence or a manifest error of law or fact, BBVA v. Vazquez (In re Vasquez), 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012). A manifest error of law is "'[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law,'" and case facts. Venegas–Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004) (quoting Black's Law Dictionary p. 593 (7th ed. 1999)).

Additionally, to meet the minimum requirements of a successful motion under Rule 9023, the motion must demonstrate the reason why the court should reconsider its prior decision and must set forth facts or law of a strongly convincing nature to induce the court to reverse its earlier decision. Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 250 (B.A.P. 1st Cir. 2008). Nevertheless, a motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated before the Court and ruled upon. See Standard Química de Venezuela v. Central Hispano International, Inc., 189 F.R.D. 202, 205 fn.4 (D.PR. 1999). In other words, motions for reconsideration should not give parties a "second bite at the apple" or "another roll of the dice'" In re: Figueroa-Alonso, 2015 Bankr. Lexix 2380 (Bankr. D. PR. 2015). "A party cannot use a Rule 59(e) motion to rehash arguments previously rejected or to raise ones that 'could, and should, have been made before judgment issued." Soto-Padró v. Public Buildings Authority, 675 F.3d 1, 9 (1st Cir. 2012). This is precisely what the Oversight Board attempts in its Response, rehash and reargue legal theories that were already considered and rejected by this Honorable Court.

This Court already considered and rejected all the legal theories and arguments raised by Oversights Board's legal theories. The Oversight Board's Response does not point out a single instance where this Court patently misunderstood or overlooked a

16

material issue of fact or law. On the contrary, the Memorandum Order shows that the Court considered and understood the Oversight Board's argument but was not persuaded by them.

Furthermore, even in the merits the Response fails to provide grounds to support is legal theories. The Oversight Board's legal theory is generally premised on the assertions (1) that neither Congress nor the Supreme Court made the Fifth Amendment applicable to pre-confirmation takings, and that (2) to rule that Takings Claims are nondischargeable creates a judicial exception that goes against the policy of equality among creditors. This legal theory fails over overcome its first hurdle: the supremacy of the United Stated Constitution.

It is black letter law that the Constitution of the United States and its Amendments is the supreme law of the land. This Supreme Law operates *ex proprio vigore*, that is, Congress does not need to legislate its applicability nor Congress needs to say what the Constitution already establishes. The Supreme Court has ruled that "[t]he subject of "bankruptcies" includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property. The grant to Congress involves the power to impair the obligation of contracts, and this the States were forbidden to do." Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 189 (1902). However, "Congress may prescribe any regulations concerning discharge in bankruptcy **that are not so grossly unreasonable as to be incompatible with fundamental law**," Id. at 191 (Emphasis was added). The Takings Clause of the Fifth Amendment is not only fundamental, but also supreme. To this end the Memorandum Order correctly holds that:

> "The Court declines any invitation to overlook the unique nature of the Takings Clause here by conditioning the Fifth Amendment requirement of just compensation on the existence of security for the obligation. To hold otherwise would be to make the Takings Clause subject to federal

17

> bankruptcy law, which is precisely the opposite of what the Supreme Court has required." [Docket No. 19517, p. 13].

A glance of the Takings Clause of the Fifth Amendment, and its case law, leads to no other conclusion that no matter how great the governments need, it cannot take property without paying just compensation. The Fifth Amendment states the exact limitation on the power of the government, that is, to pay just compensation regardless of whether the taking was pre-petition.

Additionally, the Oversight Board's analogical arguments regarding Congress ability to legislate statute of limitations is irrelevant. Because while Congress may legislate procedural and litigations aspects of a claim for just compensation, Congress cannot legislate against any provision of the Constitution. As the Supreme Court held over a century ago, the right to just compensation is "inseparably connected" to the government's power to take property. Monongahela Navigation Co. v. United States, 148 U.S. 312, 325 (1893). The noun 'just compensation,' standing by itself carries the idea of an equivalent. Id. at 326. Nevertheless, this compensation is not the equivalent of damages to the owner. The Supreme Court reasoned that by adding the adjective "just" to compensation, makes it evident that the compensation must be a full and perfect equivalent *for* the property taken. Id. If the Court were to confirm a Plan of Adjustment that provides less than this "a full and exact equivalent", the Plan would be in direct violation of the Takings Clause as this Court already concluded in its Memorandum Order.

Lastly, the Oversight Board's analogical arguments regarding the existence of voidance actions of the Bankruptcy Code is equally irrelevant and unavailing because such arguments also fail to overcome the same obstacle, the supremacy of the Constitutions. All voidance actions of the Bankruptcy Code as applicable to Title III of PROMESA and Chapter 9 bankruptcies involve the government as a party to a transaction, in which all

18

parties entered into a voluntary obligation. Nevertheless, as this Honorable Court correctly ruled, the obligation to pay just compensation is a constitutional remedy for the taking of private property for public use.

**WHEREFORE**, Finca Matilde requests that this Honorable Court denies approval o the Revised Proposed FFCL and Revised Proposed Order, that it denies confirmation of the Revised Plan, and that the Oversight Board's Response be denied for the reasons stated herein.

**I HEREBY CERTIFY**, that on this I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which will send electronic notification to all participants. Pursuant to the Fourteenth Amended Notice, Case Management and Administrative Procedures, the instant motion will be served tomorrow via First Class Mail upon the (i) Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901; (ii) Chambers of the Hon. Laura T. Swain; (iii) AAFAF and its counsel; (iv) the Oversight Board and its legal counsel, (v) Counsel for the Creditors Committee, (vi) Counsel for the Retiree Committee, the 20 largest creditors.

**RESPECTFULLY SUBMITED,**

In San Juan, Puerto Rico, this 23rd day of December of 2021.

**ISABEL FULLANA-FRATICELLI & ASSOCS., P.S.C.**
The Hato Rey Center Bldg.
268 Ave. Ponce de León Ste. 1002
San Juan, Puerto Rico 00918
Telephone: (787) 250-7242
Facsimile: (787) 756-7800

/s/Isabel M. Fullana
USDCPR No. 126802
ifullana@gaflegal.com

/s/Eduardo J. Capdevila
USDCPR No. 302713
ecapdevila@gaflegal.com