# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　　　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, HTA, ERS, and PBA.** |

**REPLY OF THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY TO RESPONSE FILED BY SAM ALLISON [ECF NO. 19356] TO THE THREE HUNDRED NINETY-SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO LATE-FILED CLAIMS**

**To the Honorable United States District Judge Laura Taylor Swain:**

　　The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

("PBA," and together with the Commonwealth, HTA, and ERS, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Debtors pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this reply (the "Reply") to the untitled response [ECF No. 19356] (the "Response") filed by Sam Allison ("Allison"), and in support of the *Three Hundred Ninety-Seventh Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority to Late-Filed Claims* [ECF No. 18961] (the "Three Hundred Ninety-Seventh Omnibus Objection"). In support of this Reply, the Debtors respectfully represent as follows:

1. On October 29, 2021, the Debtors filed the Three Hundred Ninety-Seventh Omnibus Objection seeking to disallow certain late-filed claims (the "Claims to Be Disallowed"). As set forth in the Three Hundred Seventy-Fourth Omnibus Objection and supporting exhibits thereto, the Claims to Be Disallowed were filed after the applicable Bar Date: (*i*) June 29, 2018 at 4:00 p.m. (Atlantic Time), for creditors of the Commonwealth, COFINA, HTA, and ERS, or (*ii*) July 29, 2020 at 4:00 p.m. (Atlantic Time), for creditors of PBA. Accordingly, pursuant to the terms of the Bar Date Orders, each of the holders of the Claims to Be Disallowed are barred from asserting a claim against the Debtors, and the Debtors are discharged from any and all liabilities to such claimants.[3]

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Three Hundred Ninety-Seventh Omnibus Objection.

2

2. Any party who disputed the Three Hundred Ninety-Seventh Omnibus Objection was required to file a response by 4:00 p.m. (Atlantic Standard Time) on November 29, 2021, in accordance with the Court-approved notice attached to the Three Hundred Ninety-Seventh Omnibus Objection as Exhibit C, which was served in English and Spanish on the individual creditors subject to the Three Hundred Ninety-Seventh Omnibus Objection, the U.S. Trustee, and the Master Service List (as defined in the *Fifteenth Amended Case Management Order* [ECF No. 17127-1]).

3. Between September 19, 2021 and September 23, 2021, Sam Allison ("Allison") filed eleven proofs of claim (collectively, the "Allison Claims"), which were logged by Prime Clerk as follows:

- Proof of Claim No. 179591, filed against HTA on September 19, 2021, and asserting $6,375 in bonds issued by HTA bearing CUSIP number 745190CQ9 ("First HTA Bond Claim");

- Proof of Claim No. 179592, filed against HTA on September 19, 2021, and asserting $12,475 in bonds issued by HTA bearing CUSIP number 745190ZD3 (the "Second HTA Bond Claim");

- Proof of Claim No. 179600, filed against the Commonwealth on September 21, 2021, and asserting $10,700 in general obligation ("GO") bonds issued by the Commonwealth bearing CUSIP number 74514TU1 (the "First GO Bond Claim");

- Proof of Claim No. 179602, filed against the Commonwealth on September 23, 2021, and asserting $5,550 in bonds issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA") bearing CUSIP number 745220FL2 (the "First PRIFA Bond Claim");

- Proof of Claim No. 179605, filed against the Commonwealth on September 23, 2021, and asserting $26,666.67 in GO bonds issued by the Commonwealth bearing CUSIP number 74514LB89 (the "Second GO Bond Claim");

- Proof of Claim No. 179606, filed against PBA on September 23, 2021, and asserting an unspecified amount of GO bonds issued by the Commonwealth bearing CUSIP number 74514LTR8 (the "Third GO Bond Claim");

3

- Proof of Claim No. 179607, filed against the Commonwealth on September 23, 2021, and asserting $43,200 in GO bonds issued by the Commonwealth bearing CUSIP number 74514LWA1 (the "Fourth GO Bond Claim");

- Proof of Claim No. 179608, filed against the Commonwealth on September 23, 2021, and asserting $10,800 in GO bonds issued by the Commonwealth bearing CUSIP number 74514LWQ6 (the "Fifth GO Bond Claim");

- Proof of Claim No. 179609, filed against PBA on September 23, 2021, and asserting $10,233.33 in bonds issued by PBA bearing CUSIP number 745235L25 (the "PBA Bond Claim");

- Proof of Claim No. 179610, filed against PBA on September 23, 2021, and asserting $11,100 in GO bonds issued by the Commonwealth bearing CUSIP number 745145T77 (the "Sixth GO Bond Claim," and together with the First GO Bond Claim, the Second GO Bond Claim, the Third GO Bond Claim, the Fourth GO Bond Claim, and the Fifth GO Bond Claim, the "GO Bond Claims"); and

- Proof of Claim No. 179613, filed against the Commonwealth on September 24, 2021, and asserting $5,000 in bonds issued by PRIFA bearing CUSIP number 745220FQ1 (the "Second PRIFA Bond Claim").

4. On November 23, 2021, Allison filed the Response. Therein, Allison states that "[a]ll referenced bonds are municipal bonds owned by the claimant and held on claimant's behalf by TD Ameritrade." Response at 1. Further, Allison claims to have received a notice from Prime Clerk on September 16 and 17, 2021, after which Allison submitted the Allison Claims. *Id.* at 1-2. Allison contends that "[a]s a municipal bonds holder it was my understanding prior to the above mentioned notices that submitting claims was not necessary." *Id.* at 2.

5. Pursuant to the Bar Date Order, certain persons and entities were not required to file a proof of claim prior to the Bar Date. For example, paragraph 6(i) of the Bar Date Order provides "[a]ny person or entity that holds a claim that is limited to the repayment of principal, interest and such other amounts that may arise under the respective trust agreement or bond document that does not provide for an indenture trustee, fiscal agent, or similar agent or nominee that could file a Master Proof of Claim (which includes, for the avoidance of doubt, holders of GO Bonds)" is **not** required to file a proof of claim, "provided, however, that any such holder must

4

assert a claim not otherwise excepted from filing a proof of claim . . . to avoid disallowance of such other claim." Bar Date Order at 5-6. Further, paragraph 6(j) of the Bar Date Order provides that "[a]ny person or entity that holds a claim that is limited to the repayment of principal, interest and other fees and expenses, to the extent the relevant Bond Representative files a Bond Debt Master Proof of Claim against the relevant Debtor on or before the General Bar Date on account of all bond claims against the relevant Debtor under the respective trust agreement or bond document" is **not** required to file a proof of claim, "provided, however, that any such holder must assert a claim not otherwise excepted from filing a proof of claim . . . to avoid disallowance of such other claim." *Id*. at 5-6.

6. Accordingly, Allison was not required to file the First HTA Bond Claim, the Second HTA Bond Claim, the First PRIFA Bond Claim, the PBA Bond Claim, or the Second PRIFA Bond Claim (collectively, the "Instrumentality Bond Claims") to avoid disallowance of such claims, provided that the Instrumentality Bond Claims assert only a claim for repayment of principal, interest, and other fees and expenses. Allison was also not required to file the GO Bond Claims to avoid disallowance of such claim, provided that the GO Bond Claims assert only a claim for repayment of principal, interest, and other fees and expenses. To the extent the Instrumentality Bond Claims or the GO Bond Claims assert any amounts beyond principal, interest, or fees and expenses, such portions of the Instrumentality Bond Claims and GO Bond Claims should be disallowed as late-filed.[4]

---

[4] Although the Bar Date Order did not require Allison to file the GO Bond Claims, the Debtors do not seek to disallow the GO Bond Claims in their entirety; rather, the Debtors seek to disallow the GO Bond Claims solely to the extent they assert amounts beyond principal, interest, or fees and expenses. Notably, the GO Bond Claims will be treated by that certain *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, ECF No. 19568, dated December 21, 2021 (the "Plan") if it is approved by the Court, and will be paid pursuant to the Plan's terms.

5

7. Further, each of the Instrumentality Bond Claims is duplicative of one or more master proofs of claim filed in these Title III Cases.

8. **_HTA Bond Claims_**—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act"). HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth. *See* 9 L.P.R.A § 2002. The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l). Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution"). As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding. BNYM serves as fiscal agent with respect to the HTA Bonds.

9. On behalf of the holders of the HTA Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "HTA Master Claims"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

10. The First HTA Bond Claim and the Second HTA Bond Claim (together, the "HTA Bond Claims") assert, in part, liability against HTA associated with one or more bonds that is duplicative of the HTA Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of bonds issued by HTA. Any failure to disallow the HTA Bond Claims will result in Allison potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Debtors' Title III Cases. Allison will not be prejudiced by the disallowance of the HTA Bond Claims because the liabilities associated with the HTA Bond Claims are subsumed within the HTA Master Claims.

11. **_PBA Bond Claim_**—PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth. US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 174834 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 174834. The PBA Master Claim asserts liquidated claims for approximately $4.7 billion in allegedly unpaid principal, $664 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ." Rider to PBA Master Claim, ¶¶ 19-21.

12. The PBA Bond Claim asserts, in part, liability against PBA associated with one or more bonds that is duplicative of the PBA Master Claim, which as described above were filed in

7

the Title III Cases on behalf of the holders of bonds issued by PBA. Any failure to disallow the PBA Bond Claim will result in Allison potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Debtors' Title III Cases. Allison will not be prejudiced by the disallowance of the PBA Bond Claim because the liabilities associated with the PBA Bond Claim are subsumed within the PBA Master Claim.

13. **_PRIFA Bond Claims_**—PRIFA is a government instrumentality of the Commonwealth. PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act"). PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities. On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A. First, BNYM asserted three master proofs of claim: Proof of Claim No. 16759, asserting, on behalf of holders of Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15 (the "PRIFA Notes"), a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the Noteholder Agreement, the Notes, or the Pledged Revenues . . . "; Proof of Claim No. 19814 asserting, on behalf of holders of PRIFA Notes, claims for principal and unpaid interest, in addition to fees and expenses of the trustee; and Proof of Claim No. 103718, asserting, on behalf of holders of revenue bonds issued by PRIFA, including Revenue Bonds (Port Authority Project), Series 2011A, "a secured, contingent and unliquidated claim against the Commonwealth on

account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ."

14. Additionally, US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17, which course of conduct continues . . . ." Rider to Proof of Claim No. 13386, ¶ 26.

15. The First PRIFA Bond Claim and the Second PRIFA Bond Claim (together, the "PRIFA Bond Claims") assert liabilities against the Commonwealth associated with one or more bonds that are duplicative of the PRIFA Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of bonds issued by PRIFA. Any failure to disallow the PRIFA Bond Claims will result in Allison potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Debtors' Title III Cases. Allison will not be prejudiced by the disallowance of the PRIFA Bond Claims because the liabilities associated with the PRIFA Bond Claims are subsumed within the PRIFA Master Claims.[5]

---

[5] Further, with the approval of the Oversight Board, PRIFA filed an application for approval of a qualifying modification pursuant to section 601(m)(1)(D) of PROMESA in the United States District Court for the District of Puerto Rico on October 8, 2021. *See* Case No. 3:21-cv-01492-LTS. The PRIFA Bonds asserted by the PRIFA Bond Claims will be subject to that qualifying modification, if it is approved by this Court. In addition, to the extent Allison seeks to assert claims against the Commonwealth in respect of the PRIFA Bonds, those claims will be treated pursuant to the Plan.

16. Because the Response does not provide a valid reason for the late filing of the Allison Claims, the Debtors respectfully request that the Court grant the Three Hundred Ninety-Seventh Omnibus Objection and disallow the Allison Claims, to the extent set forth herein.

Dated: January 5, 2022
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth, HTA, ERS, and PBA*

/s/ *Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Co-Attorneys for the Financial Oversight and Management Board for the Puerto Rico, as representative for the Commonwealth, HTA, ERS, and PBA*