**Estimated Hearing Date**: February 2, 2022 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: January 25, 2022 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17–BK–3283–LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 19–BK–5523-LTS<br><br>**This Application relates only to PBA, and shall be filed in the lead case No. 17-BK-3283-LTS and PBA's Title III Case (Case No. 19-BK-5523-LTS)** |

# SUMMARY SHEET TO
# FIFTH INTERIM FEE APPLICATION
# OF PROSKAUER ROSE LLP FOR COMPENSATION FOR
# SERVICES RENDERED AS ATTORNEYS FOR THE FINANCIAL
# OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
# REPRESENTATIVE OF THE DEBTOR, THE PUERTO RICO PUBLIC BUILDINGS
# AUTHORITY, FOR THE PERIOD FEBRUARY 1, 2021 THROUGH MAY 31, 2021

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Schedule 1**

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("Proskauer") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | February 1, 2021 through May 31, 2021 (the "Compensation Period") |
| Amount of Fees Sought: | $29,993.10 |
| Gross-Up Amount:[2] | -- |
| Amount of Expense Reimbursement Sought: | $0.00 |
| Total Fees and Expenses Sought for Compensation Period: | $29,993.10 |

This is a(n)  ____ Monthly  _X_ Interim  __ Final Fee Application

This is the fifth interim fee application filed by Proskauer in the Debtor's Title III Case.  The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

---

[2]  Previously, Proskauer has requested approval, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257–2018) starting December 10, 2018 (the "Withholding").  Proskauer would only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  Based on the registration of Proskauer's Engagement Letter together with discussions with the Puerto Rico government, Proskauer believes it will not need a Gross-Up Amount for its fiscal year that commenced November 1, 2020, and is not currently requesting its approval.

**Fifth Interim Compensation Period**
**February 1, 2021 – May 31, 2021**

| Statement and Date Served[3] | Period Covered | Total Fees Incurred | Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Seventeenth** 3/31/2021 | 2/1/21 to 2/28/21 | $12,010.20 | $10,809.18 | $0.00 | $10,809.18 | $0.00 |
| **Eighteenth** 5/17/2021 | 3/1/21 to 3/31/21 | $8,062.20 | $7,255.98 | $0.00 | $7,255.98 | $0.00 |
| **Nineteenth** 5/28/2021 | 4/1/21 to 4/30/21 | $7,920.70 | $7,128.63 | $0.00 | $7,128.63 | $0.00 |
| | **Totals:** | **$27,993.10** | **$25,193.79** | **$0.00** | **$27,993.10** | **$25,193.79** |

---

[3]  Proskauer did not serve a monthly fee statement for PBA for the month of May 2021 because no fees or expenses were incurred during that period.

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys: | $853.00[4] |
| Blended Rate in This Application for All Timekeepers: | $655.58 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed: | $25,193.79 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed: | $0.00 |
| Number of Professionals Included in this Application:[5] | 8 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client:[6] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period: | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period: | 8 |
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No.   Proskauer's Engagement Letter with the Oversight Board provides that Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1–2). Pursuant to the Engagement Letter, Proskauer's rates increased 4% effective January 1, 2021, yielding a new flat rate for attorneys (partners, |

---

[4]  This rate excludes non-attorneys (*e.g.*, paralegals) and includes e-discovery attorneys.

[5]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non-attorneys.

[6]  As noted in the Staffing Plan for the Compensation Period at Exhibit D-2 of the Application, the number of timekeepers expected to work on this matter during the Compensation Period was 31, and thus the actual number of timekeepers was 23 fewer than anticipated.

|  | senior counsel, and associates) of $853 per hour, for e-discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour.   Proskauer gave notice of this rate increase by filing its Engagement Letter on the ECF system and providing a sworn certification, attached to Proskauer's Third Interim Application as Exhibit A [Case No. 19-3283, ECF No. 16150].   Rates have not increased during this Compensation Period. |
|---|---|

**Schedule 2**

**Summary of Professional Services Rendered by
Timekeeper for the Period February 1, 2021 through May 31, 2021**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| *PARTNERS* | | | | |
| Possinger, Paul V. | BSGR&B[8] – 1993 | $853 | 3.60 | $3,070.80 |
| Rosen, Brian S. | BSGR&B – 1983 | $853 | 4.90 | $4,179.70 |
| Rosenthal, Marc E. | Litigation – 1990 | $853 | 11.20 | $9,553.60 |
| **Total for Partners:** | | | **19.70** | **$16,804.10** |
| *ASSOCIATES* | | | | |
| Esses, Joshua A. | BSGR&B – 2017 | $853 | 7.40 | $6,312.20 |
| Volin, Megan R. | BSGR&B – 2020 | $853 | 0.60 | $511.80 |
| **Total for Associates:** | | | **8.00** | **$6,824.00** |
| *PARAPROFESSIONALS* | | | | |
| Oloumi, Nicole | BSGR&B Paralegal – N/A | $291 | 2.50 | $727.50 |
| Petrov, Natasha B. | BSGR&B Paralegal – N/A | $291 | 10.40 | $3,026.40 |
| Singer, Tal J. | BSGR&B Paralegal – N/A | $291 | 2.10 | $611.10 |

---

[7] In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases. Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2. Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1. Proskauer's November 25, 2016 engagement letter with the Oversight Board (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent. As of January 1, 2021, the rate increase is 4%, yielding a new flat rate for attorneys (partners, senior counsel, associates, and lawyers) of $853 per hour, for e-discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour. Rates have not increased during this Compensation Period.

[8] Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Total for Paraprofessionals: | | | 15.00 | $4,365.00 |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys and Paraprofessionals Total:** | **42.70** | **$29,993.10** |

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period February 1, 2021 through May 31, 2021**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 204 | Communications with Claimholders | 0.80 | $682.40 |
| 206 | Documents Filed on Behalf of the Board | 16.70 | $14,245.10 |
| 210 | Analysis and Strategy | 9.60 | $8,188.80 |
| 212 | General Administration | 4.60 | $1,338.60 |
| 218 | Employment and Fee Applications | 11.00 | $3,538.20 |
| | **Total for All Project Categories:** | **42.70** | **$29,993.10** |

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period February 1, 2021 through May 31, 2021**

| EXPENSE CATEGORY | AMOUNTS |
|---|---|
| N/A | 0.00 |
| **Total:** | **$0.00** |

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
| --- | --- | --- |
| | **BILLED**<br><br>**Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy*** | **BILLED**<br><br>**In this fee application**[9] |
| Partners | $1,293 | $853 |
| Senior Counsel | $1,097 | N/A |
| Associates (7 or more years since first admission) | $1,022 | $853 |
| Associates (4–6 years since first admission) | $940 | $853 |
| Associates (1–3 years since first admission) | $759 | $853 |
| e-Discovery Attorneys | $738 | N/A |
| Paraprofessionals | $340 | $291 |
| **All Timekeepers Aggregated:** | **$986** | **$655.58** |

---

[9] *See supra* note 7.

**Estimated Hearing Date**: February 2, 2022 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: January 25, 2022 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17–BK–3283–LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br>Case No. 19–BK–5523-LTS<br><br>**This Application relates only to PBA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and PBA's Title III Case (Case No. 19-BK-5523-LTS)** |

## FIFTH INTERIM FEE APPLICATION
## OF PROSKAUER ROSE LLP FOR COMPENSATION FOR
## SERVICES RENDERED AS ATTORNEYS FOR THE FINANCIAL
## OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
## REPRESENTATIVE OF THE DEBTOR, THE PUERTO RICO PUBLIC BUILDINGS
## AUTHORITY, FOR THE PERIOD FEBRUARY 1, 2021 THROUGH MAY 31, 2021

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and

Management Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case

Puerto Rico Public Buildings Authority (the "Debtor" or "PBA") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this fifth interim application (the "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016–1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this Court's *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 3269][5] (the "Interim Compensation Order"), for allowance of interim compensation for professional services performed by Proskauer for the period commencing February 1, 2021 through and including May 31, 2021 (the "Compensation Period") in the amount of **$29,993.10**. No expenses were incurred by Proskauer during the Compensation Period in connection with these services.  In support of the Application, Proskauer respectfully avers as follows:

### Jurisdiction

1.     The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

---

No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]  PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]  The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does not address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of other Title III debtors, or (b) outside the Title III process.

[4]  The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief requested herein are PROMESA sections 316 and 317.

## Background

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's first seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court." PROMESA § 315(a), (b).

6.      On November 25, 2016, the Oversight Board retained Proskauer at substantial discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

7.      On September 30, 2016, the Oversight Board designated the Debtor as a "covered entity" under PROMESA section 101(d).

8.      By the letter dated September 25, 2019, and in light of the ongoing efforts in connection with the Joint Plan, as defined below, the Governor of Puerto Rico requested that the Oversight Board file a petition for PBA under Title III of PROMESA.

9.      On September 27, 2019, the Oversight Board issued the Debtor's restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for

---

[5] Unless otherwise expressly indicated, ECF Numbers refer to the docket of the Commonwealth's Title III Case, Case No. 17-BK-3283-LTS.

relief for PBA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Debtor's Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

10.     On April 15, 2020, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Public Buildings Authority, for the Period September 1, 2019 through January 31, 2020 and Notice of Deferral of Request for Payment of Rate Increase* [ECF No. 12835] (the "First Interim Application").

11.     On September 18, 2020, Proskauer filed the *Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Public Buildings Authority, for the Period February 1, 2020 through May 31, 2020* [ECF No. 14356] (the "Second Interim Application").

12.     On March 19, 2021, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Public Buildings Authority, for the Period June 1, 2020 through September 30, 2020 and Notice of Annual Rate Adjustment Provided in Original Engagement Letter* [ECF No. 16150] (the "Third Interim Application").

13.     On July 29, 2021, Proskauer filed the *Fourth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico as Representative*

*of the Debtor, the Puerto Rico Public Buildings Authority, for the Period October 1, 2020
through January 31, 2021* [ECF No. 17596] (the "Fourth Interim Application").

14.     On March 31, 2021 Proskauer served on the Notice Parties (as defined in the
Interim Compensation Order) its seventeenth monthly fee statement for the period February 1,
2021 through February 28, 2021.  On May 17, 2021, Proskauer served on the Notice Parties its
eighteenth monthly fee statement for the period March 1, 2021 through March 31, 2021.  On May
28, 2021, Proskauer served on the Notice Parties its nineteenth monthly fee statement for the
period April 1, 2021 through April 30, 2021.  Proskauer did not serve a monthly fee statement for
PBA for the month of May 2021 because no fees or expenses were incurred during that period.

15.     In accordance with the Interim Compensation Order and as reflected in the
foregoing summary, Proskauer has requested an aggregate payment of **$25,193.79** (payment of
ninety percent (90%) of the compensation sought and has received **$25,193.79** with respect to fee
statements filed during the Compensation Period.

**Summary of Services Rendered by Proskauer During the Compensation Period**

16.     The instant Application is Proskauer's fifth application for interim compensation
in the Debtor's Title III Case.  To make the review of Proskauer's fee applications in all the
pending Title III cases more efficient for the Court and other readers, paragraphs 17 through 20 of
the instant Application and the corresponding paragraphs 23 through 26 in each of Proskauer's
tenth interim fee applications in the pending Commonwealth, ERS, HTA, and PREPA Title III
cases are identical and cover the principal activities in all the Title III cases.

17.     The services rendered during the Compensation Period were integral and critical to
the proposal of a largely consensual Title III plan of adjustment for the Commonwealth, ERS, and
PBA and for two totally consensual Title VI qualified debt modifications for PRIFA and CCDA,

whose respective confirmation and approval hearings concluded November 23, 2021. The overwhelming consensual nature of the proposed restructurings was the product of extraordinary efforts and results achieved by Proskauer and all the Oversight Board's advisors given the severe debt discounts embedded in the proposed plans. If the plan is confirmed and approved, the Commonwealth will have approximately $7.4 billion of remaining bond debt compared to $30.5 billion when the Commonwealth Title III case commenced. Annual debt service will be reduced from approximately $2.1 billion per year to $666 million per year for the Commonwealth. The services rendered were also essential to significant progress in PREPA and HTA's Title III cases. The continuing global coronavirus pandemic affecting Puerto Rico and significant rise in COVID-19 cases during this Compensation Period imposed acute economic and administrative challenges to the Commonwealth and its covered instrumentalities. Proskauer was integrally involved in most all the Oversight Board's undertakings. The Oversight Board remained focused on protecting the health and welfare of the people of Puerto Rico while ensuring that critical businesses remained open to provide for the needs of the citizens of the Island. The Oversight Board continued developing strategies for reducing the negative impact of the pandemic on the Island's economy and worked collaboratively with the Puerto Rico Government and its agencies to effectively utilize the federal funding intended to provide relief and cover the expenses related to the pandemic. The Oversight Board concentrated on achieving its mandates under PROMESA, advancing structural reforms that would promote economic growth and improve the quality of life for the people of Puerto Rico so that fiscal responsibility, access to capital markets, and economic prosperity could return to the Island. Proskauer continued to provide legal and strategic advice to the Oversight Board, to help carry out its priority of protecting the health, safety, and economic

welfare of the people of Puerto Rico.  Among others, Proskauer's notable undertakings during

this Compensation Period included:

- <u>Further Development of the Amended Joint Plan and Disclosure Statement</u>.  On November 20, 2020, the Oversight Board approved the resumption of negotiations concerning the plan of adjustment with creditors and other parties pursuant to the mediation agreement, with mediation sessions resuming during the first week of December 2020. During the Compensation Period, Proskauer, on behalf of the Oversight Board and under the guidance of the Mediation Team led by the Honorable Judge Barbara J. Houser, participated in multiple mediation sessions and informal meetings with the Commonwealth, AAFAF, the bondholders party to a February 2020 Plan Support Agreement, certain insurers and holders of bonds issued by various Puerto Rico entities, Assured Guaranty Corporation, Assured Guaranty Municipal Corporation (both together, "<u>Assured</u>"), Ambac Assurance Corporation ("<u>Ambac</u>"), and Financial Guaranty Insurance Company ("<u>FGIC</u>", and together with Assured and Ambac, the "<u>Monolines</u>"), the Unsecured Creditors' Committee (the "<u>UCC</u>"), the Retiree Committee, and various unions with the goal of developing and establishing a framework and timeline for a consensual debt restructuring.

  On February 10, 2021, the Oversight Board announced in a press release that after a successful mediation process it had reached an agreement in principle with several creditor groups to lower Puerto Rico's debt to sustainable levels and achieve a realistic proposal that would open a path to recovery.  On February 23, 2021, the Oversight Board announced that following months of court-supervised mediation, the Board achieved a new plan support agreement ("<u>PSA</u>") with general obligation ("<u>GO</u>") and PBA bondholders. Following the announcement of the terms of the new PSA, on March 8, 2021, Proskauer, on behalf of the Oversight Board, filed the *Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 15976] and the *Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 15988].

  On April 2, 2021, the Oversight Board entered into a stipulation with holders of ERS bonds which provides a global resolution of disputes regarding the validity of the ERS bonds and related rights of bondholders.

  On April 6, 2021, Proskauer, on behalf of the Oversight Board, filed a scheduling motion requesting, among other things, that the Court schedule a hearing to consider the adequacy of the information contained in the proposed Disclosure Statement.[6]

---

[6]  *See Debtors' Joint Motion for an Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief* [ECF No. 16332].

As a result of multiple mediation sessions and informal communications, on May 5, 2021, the Oversight Board announced the terms of a new plan support agreement with holders and insurers of HTA and Puerto Rico Convention Center District Authority ("CCDA") bonds (the "HTA/CCDA PSA") that settled their asserted "clawback" claims against the Commonwealth and provided a framework to restructure the bond debt of HTA and CCDA.  On May 11, 2021, Proskauer, on behalf of the Oversight Board, filed its proposed *Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 16740], and related proposed Disclosure Statement [ECF No. 16741], which incorporated the terms of the HTA/CCDA PSA and the settlement with the ERS bondholders achieved earlier. On May 25, 2021, the parties entered into an amendment to the HTA/CCDA PSA.

On May 4, 2021, the Court entered an *Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief* [ECF No. 16681], scheduling, among other things, the hearing to consider the adequacy of the information contained in the Disclosure Statement on July 13, 2021 (the "Disclosure Statement Hearing").

In addition, during the Compensation Period, Proskauer attorneys and paraprofessionals analyzed a variety of legal and procedural issues related to the Plan related discovery and worked diligently with Prime Clerk LLC and Liquid Litigation Management to establish a confirmation data hosting repository, discussing and implementing the logistics of providing safe and secure access to documents related to confirmation of the Plan, and preparing plan confirmation related documents for uploading to the repository.

Subsequent to the Compensation Period, the Oversight Board continued to negotiate with the Debtors' key stakeholders, reached additional agreements with the GO and PBA bondholders, the UCC, holders of Puerto Rico Infrastructure Financing Authority ("PRIFA") bonds, and the DRA Parties, negotiated and filed further amended versions of the Plan, addressed numerous objections to the Disclosure Statement and Plan, obtained approval of the Disclosure Statement, and conducted a hearing to consider confirmation of the Plan.  The Court's decision on confirmation of the Plan remains pending.

- Certified Fiscal Plans and Compliance with PROMESA.    During the Compensation Period, Proskauer advised the Oversight Board in its efforts on developing and certifying budgets for fiscal year 2022.  In consultation with the Governor and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Oversight Board certified fiscal plans for the Commonwealth (which fiscal plan includes ERS and PBA), PREPA, HTA, the University of Puerto Rico ("UPR"), the Puerto Rico Industrial Company ("PRIDCO"), and the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), the Puerto Rico Sales Tax

8

Financing Corporation ("COFINA"), and the Public Corporation for Supervision and Insurance of Cooperatives of Puerto Rico ("COSSEC"), completing the 2021 fiscal plan process and representing further progress towards Puerto Rico's recovery, stability, and growth.  The Board, collaborating with the Governor and AAFAF, also developed and drafted the General Fund Budget for the Commonwealth of Puerto Rico's fiscal year 2022, approved it on May 11, 2021, and submitted it to the Legislature for its consideration. The fiscal year 2022 budget prioritizes education, public safety, health, economic development, and pension payments, allocating seventy-two percent (72%) of funding to these priority areas.

Proskauer attorneys also supported the Oversight Board in its commitment to ensuring the Government's compliance with PROMESA in proposing and enacting legislation. Specifically, during the Compensation Period, Proskauer continued to work diligently with the Oversight Board in relation to the Board's efforts to prevent the enactment of proposed House Bill 120 as significantly inconsistent with the certified fiscal plans and PROMESA.   Proskauer attorneys participated in discussions with counsel to AAFAF and representatives of the Governor concerning HB 120, analyzed various data and reports from the Oversight Board's economic advisors, and reviewed and evaluated the data provided by the Government.   On behalf of the  Oversight Board, they drafted numerous PROMESA section 204(a) letters to the Government advising that enactment of HB 120, which established a no-cuts policy to certain pensions, mandated a transfer of $4.5 billion to a newly created pension trust, and directed the Government to repudiate any plan of adjustment that required pension or budget cuts, would have a negative effect on the restructuring of the Commonwealth and would derail the Oversight Board's efforts to confirm the proposed Plan. Subsequent to the Compensation Period, after the Governor signed HB 120 into law as Act 7-2021 on June 9, 2021, Proskauer advised the Oversight Board in drafting demand letters to the Governor insisting on nullifying the Act in its entirety, and subsequently, on July 2, 2021, filed an adversary proceeding on behalf of the Oversight Board against the Governor, AAFAF, Senate President the Honorable José Luis Dalmau Santiago and House Speaker the Honorable Rafael Hernández Montañez (the "House Speaker") to enjoin enforcement and to nullify the Act, *FOMB v. Pierluisi*, Adv. Proc. No. 21-0072.  On August 13, 2021, Proskauer, on behalf of the Oversight Board, filed a motion for summary judgment.  On October 13, 2021, the Title III Court granted the Oversight Board's motion in substantial part and declared Act 7 in its entirety and all actions taken pursuant to the Act nullified, unenforceable and of no effect.

During the Compensation Period, Proskauer continued to advise the Oversight Board in communications with the Puerto Rico Transportation and Other Services Bureau ("NTSP") regarding new regulations that increased certain tariffs without the Oversight Board's approval as required by PROMESA, and that were inconsistent with the certified fiscal plan.  Proskauer also advised the Oversight Board in its communications and negotiations with the Puerto Rico Trucking Association regarding its threat of a strike by transportation companies in support

of temporary shipping rate increases implemented by NTSP against the direction of the Oversight Board. The Oversight Board met with several representatives of the trucking industry and unions and their counsel.  This dialogue led to an agreement with NTSP and the truckers that prevented the strike.

- LUMA Energy Contract.  Proskauer professionals, along with other Oversight Board advisors, devoted significant time and effort to further negotiate and work towards implementation of the operating management agreement (and supplemental agreement) with LUMA Energy, LLC and LUMA Energy ServCo, LLC (collectively, "LUMA Energy" and such contract, the "T&D Contract") for transitioning the maintenance and operation of the Puerto Rico Transmission and Distribution System (the "T&D System") to LUMA Energy, with the goal of providing safe, reliable, and affordable energy service to the Island.  The Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement (the "O&M Agreement") was approved by the Oversight Board and Governor Vazquez, and entered into by PREPA, the Puerto Rico Public-Private Partnerships Authority, and LUMA Energy on June, 22, 2020.

On October 26, 2020, UTIER and Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE") appealed the Title III Court decision granting the Government Parties' motion to allow LUMA Energy's administrative expense claim for any accrued and unpaid front-end transition obligations incurred by PREPA under the T&D Contract. The appeal was fully briefed and was argued on June 8, 2021.  On August 12, 2021, the First Circuit affirmed the judgment of the Title III Court.[7]

On March 26, 2021, the Oversight Board joined other Government Parties in a motion requesting that the Title III Court allow an administrative expense claim for amounts to be paid to LUMA Energy by PREPA during the interim period under a supplemental agreement and the T&D Contract.[8]  Several parties objected to the motion and the Government Parties filed their omnibus reply on April 21, 2021.  On April 28, 2021, Proskauer defended the Oversight Board's position at oral argument and on May 3, 2021, the motion was granted by the Title III Court.[9]

On April 20, 2021, UTIER commenced an adversary proceeding seeking to void the O&M Agreement and on April 26, 2021, filed a motion seeking a preliminary injunction to enjoin enforcement of the O&M Agreement.[10]  Proskauer joined

---

[7] See Opinion, UTIER v. FOMB, Case No. 20-1709 (1st Cir. Aug. 12, 2021).

[8] See Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract [ECF No. 16241]

[9] See Memorandum Order Granting Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract [ECF No. 16665].

[10] See Motion  for Preliminary Injunction to Enjoin the Execution of the O&M Agreement [Adv. Proc. No. 21-0041; ECF No. 8]

other government parties in the opposition brief and defended the Oversight Board's position at oral argument on May 18, 2021. The Court denied UTIER's preliminary injunction request on May 21, 2021, and UTIER's motion for reconsideration on June 1, 2021.[11] Litigation regarding the validity of the O&M Agreement remains ongoing in the adversary proceedings filed by UTIER, SRAEE, and the President of Puerto Rico Senate.[12]

The LUMA transaction also faced opposition from the Puerto Rico Legislature. Proskauer advised the Oversight Board in its communications and negotiations with the Government and Legislature regarding House Joint Resolution 88 and Senate Bill 213 seeking to impose a legislative approval requirement for various PREPA actions and to postpone implementation of the O&M Agreement, in violation of PROMESA and inconsistent with the certified fiscal plans. Both bills were vetoed by the Governor.

On June 2, 2021 Proskauer, on behalf of the Oversight Board, reported to the Title III Court that LUMA Energy commenced operating and maintaining PREPA's T&D System on June 1, 2021.[13]

18.    Throughout the Compensation Period, Proskauer continued its defense of the Title III Debtors' interests by analyzing and objecting to duplicative, incorrectly filed, and otherwise deficient or invalid claims against the Debtors, negotiating and participating in meet-and-confer communications with claimants to achieve the best possible outcome for the Debtors. Among the major claims-related matters in which Proskauer represented the Title III Debtors during the Compensation Period are the following:

- <u>Claim Objections</u>.  In connection with proofs of claim filed against the Debtors,[14] Proskauer filed a total of 36 omnibus objections between February 1, 2020 and May 31, 2021. Proskauer professionals dedicated a significant amount of time and effort to the careful review and analysis of the filed claims and preparing omnibus objections to those claims, as well as reviewing multiple responses and preparing replies in support of the objections. Due to the COVID-19 pandemic-related

---

[11] *See Memorandum Opinion and Order Denying Motion for Preliminary Injunction to Enjoin the Execution of the O&M Agreement* [Adv. Proc. No. 21-0041; ECF No. 56]; *Memorandum Opinion and Order Denying Motion for Reconsideration* Adv. Proc. No. 21-0041; ECF No. 61].

[12] Adv. Pro. Nos. 21-00041-LTS, 21-00049-LTS and 21-00059-LTS.

[13] *See Informative Motion Regarding LUMA's Commencement of Operation and Maintenance of PREPA's T&D System* [Case No. 17-4780, ECF No. 2503].

[14] Pursuant to the Bar Date Orders [Case No. 17-BK-3283-LTS, ECF Nos. 2521, 3160, 12260, and 13403], approximately 179,703 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.

restrictions, including the inability of the Court to hold in-person hearings, the Debtors were unable to prosecute certain pending omnibus objections to claims and Proskauer worked with the Title III Court to adjourn hearings on omnibus claim objections. During the Compensation Period, Proskauer organized an additional hearing on February 1, 2021 at the satellite location at the Prime Clerk collection center in San Juan, where claimants were able to appear and speak at a hearing following strict public health and safety measures, with remote access for attorneys and the satellite site available to those claimants who chose to appear in person.

- Alternative Dispute Resolution ("ADR"). To promote the timely and cost-effective resolution of claims, Proskauer, on behalf of the Debtors, requested that the Title III Court approve amended procedures for alternative dispute resolution (the "ADR Procedures"). On April 1, 2020, the ADR Procedures were approved by the Court.[15] During the Compensation Period, Proskauer filed its *Tenth* through *Thirteenth Notices of Transfer of Claims to Alternative Dispute Resolution* [ECF Nos. 15861, 16517, 16540, and 16767], transferring 93 additional claims to the ADR process. On behalf of the Debtors, Proskauer professionals prepared offer letters to the claimants listed in the ADR Notices. Proskauer also filed the *Fourth Alternative Dispute Resolution Status Notice* [ECF No. 15958] providing an update to the Court regarding the status of the claims transferred into the ADR process.

- Administrative Reconciliation of Claims ("ACR"). To further facilitate the efficient and cost-effective resolution of the claims, Proskauer, on behalf of the Debtors, submitted to the Court that certain types of claims, such as claims for pension or retiree benefits, tax refunds, salaries and benefits owed to public employees, and union grievances, should remain within the auspices of the Debtors' administrative processes. The Court approved proposed ACR Procedures on March 12, 2020.[16] During the Compensation Period, Proskauer filed its *Ninth* through *Thirteenth Notices of Transfer of Claims to Administrative Claim Reconciliation* [ECF Nos. 15948, 16259, 16514, 16677, and 16926], transferring over 14,100 additional claims into Administrative Claims Reconciliation. On February 5, 2021, Proskauer filed the *Notice of Filing of Third Administrative Claim Resolution Status Notice* [ECF No. 15812], on April 6, 2021, the *Fourth Administrative Claim Resolution Status Notice* [ECF No. 16322], and on June 4, 2021, *the Fifth Administrative Claim Resolution Status Notice* [ECF No. 16888], providing an update to the Court regarding the status of the claims transferred into the ACR Procedures pursuant to the ACR transfer notices and reporting that in total, over 23,000 of ACR transferred claims had been successfully resolved by the end of the Compensation Period.

---

[15] See *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576].

[16] See *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274].

19.   <u>First Circuit and Supreme Court Appeals</u>. During this Compensation Period, Proskauer defended a number of significant matters before the appellate courts, obtaining several critical judgments on behalf of the Oversight Board as Title III representative of the Debtors. Some of the appellate matters where Proskauer attorneys represented the Oversight Board included:

- U.S. Supreme Court *Certiorari* Petition:

  (1) <u>UECFSE v. Commonwealth, Case No. 20-1466 (U.S.)</u>.   On April 16, 2021, two unions representing public employees, Hermandad de Empleados del Fondo del Seguro del Estado, Inc. ("<u>UECFSE</u>") and Unión de Medicós de la Corporacion del Fondo del Seguro del Estado Corp. ("<u>UMCFSE</u>"), filed a petition for a writ of certiorari appealing the First Circuit judgment affirming the Title III Court's dismissal of their complaint against the Oversight Board alleging that certain laws impermissibly interfered with their collective bargaining rights.[17]   Proskauer, on behalf of the Oversight Board, opposed the petition on August 2, 2021, and on October 4, 2021, the petition for writ of certiorari was denied.

- First Circuit Appeals:

  (1) <u>Diaz Mayoral v. Commonwealth, Case No. 20-1279 (consolidated with Case No. 19-2231)</u>.   On December 18, 2019, Jorge A. Diaz Mayoral and Juan A. Frau Escudero appealed the Title III Court orders sustaining the Debtors' sixty-fourth omnibus objection to claims and denying their motion for reconsideration.[18]   After multiple extensions of time, the appellants filed their opening brief on December 16, 2020.  Proskauer, on behalf of the Oversight Board, responded on February 24, 2021. The case was fully briefed and was argued on May 4, 2021.  On May 28, 2021, the First Circuit affirmed the decisions of the Title III Court.

  (2) <u>Ambac Assurance Corp. v. Commonwealth, Case No. 20-1657</u>.  On June 16, 2020, the Title III Court granted the Oversight Board's motion for entry of an order requiring Ambac to withdraw as violating the automatic stay its complaint in the District Court of Puerto Rico seeking to rescind a concession extension agreement with HTA.[19]   Ambac appealed the order on June 30, 2020.  On October 19, 2020, Ambac filed its opening appellate brief.  Proskauer filed a response on behalf of

---

[17] *See* October 28, 2020, *Judgment* and *Opinion,* Case Nos. 19-2028 (1st Cir.).

[18] *See Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121].

[19] *See Memorandum Order Granting Motion of Financial Oversight and Management Board Pursuant to Bankruptcy Code Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* [ECF No. 13447].

the Oversight Board on December 18, 2020.  After several extensions, Ambac filed its reply brief on February 12, 2021, and the matter was argued on March 8, 2021. Subsequently, the parties entered into a settlement agreement resolving the disputed issues and on August 2, 2021 filed a joint motion to stay the appeal and to hold it in abeyance until January of 2022.  The joint motion was granted on August 4, 2021.

(3) Campamento Contra las Cenizas en Peñuelas, Inc. v. FOMB, Case No. 20-1685; UTIER v. FOMB, Case No. 20-1709; and Windmar Renewable Energy, Inc. v. FOMB, Case No. 20-1710.  On July 3, 2020, UTIER and Widmar Renewable Energy, Inc. ("Windmar") appealed the Title III Court order authorizing PREPA to assume its power purchase and fuel supply agreements on renewed terms with two energy providers, which were approved by PREPA's Governing Board, the Puerto Rico Energy Bureau, and the Oversight Board,[20] and on July 10, 2020, certain environmental groups[21] filed their own appeal.  The appeals were consolidated for the purposes of briefing on November 2, 2020.  On December 14, 2020, UTIER filed its appellant's brief, which was joined by the Environmental Groups on the same date.  Windmar filed its opening brief on December 15, 2020.  Proskauer filed the responsive brief on behalf of the Oversight Board on February 16, 2021, and on March 8, 2021, UTIER filed its reply brief.  The matter was argued on May 4, 2021. On August 12, 2021, the First Circuit affirmed the judgement of the Title III Court.

(4) Rivera-Rivera v. FOMB, Case No. 20-1797.  On August 11, 2020, SREAEE and the Board of Trustees of the PREPA Employees' Retirement System appealed the Title III Court order granting the defendants'[22] motion to dismiss the second amended complaint which sought to declare null and void the Governor's Executive Order OE-2018-012 and certain actions by the PREPA Board of Directors based on the Executive Order.[23]  The appellants filed their opening brief on November 25, 2020. Proskauer attorneys worked with counsel for AAFAF and individual appellees on drafting relevant portions of the joint responsive brief, which was submitted on January 14, 2021.   The case was fully briefed and

---

[20] *See Order Authorizing PREPA to Assume Certain Contracts with Ecoeléctrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A.* [ECF No. 13470; Case No. 17-4780, ECF No. 2038] and *Memorandum Opinion Regarding PREPA's Urgent Motion For Entry On An Order Authorizing PREPA to Assume Certain Contracts With Ecoléctrica, L.P. And Gas Natural Aprovisionamientos SDG, S.A.* [ECF No. 13471; Case No. 17-4780, ECF No. 2039].

[21] Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc. - Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club and its Puerto Rico chapter, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti-Incineración, Inc., Amigos del Río Guaynabo, Inc., Campamento Contra las Cenizas en Peñuelas, Inc., CAMBIO P.R., (collectively, the "Environmental Groups").

[22] Puerto Rico Governor Wanda Vázquez Garced, the Commonwealth of Puerto Rico, and PREPA (through their representatives the FOMB and the AAFAF), Eli Diaz Atienza, Ralph A. Kreil, David K. Owens, Charles Bayless, Robert Poe, Maria Palou Abasolo, and José Ortiz.

[23] *See Memorandum Opinion and Order Granting Motion to Dismiss the Second Amended Adversary Complaint* [Adv. Proc. No. 18-AP-047, ECF No. 80]; *Judgment* [Adv. Proc. No. 18-AP-047, ECF No. 81].

Proskauer argued the matter on behalf of the Oversight Board on May 3, 2021.  On October 27, 2021, the First Circuit affirmed the judgement of the Title III Court.

(5) <u>Assured v. FOMB, Case No. 20-1847</u>.  On August 25, 2020, the Monolines appealed the Title III Court orders denying their motion for appointment of a trustee under section 926 of the Bankruptcy Code to pursue their claims on behalf of HTA against the Commonwealth and their request for a related bridge order.[24] On February 17, 2021, the Monolines filed their appellants' brief.  On the same day, the DRA Parties joined in the Monolines' brief.  The DRA Parties intervened in support of the Monolines on April 12, 2021.  On behalf of the Oversight Board, Proskauer submitted a responsive brief on April 19, 2021.  AAFAF submitted its response on the same date.  The appellants requested that they be allowed to file their final form briefs on May 26, 2021, and that request was granted. After the appellants' final form opening and reply briefs were tendered, Proskauer filed the Oversight Board's final form reply on June 6, 2021 and AAFAF submitted its reply on June 8, 2021.  The matter was fully briefed. Two of the Monolines, Assured and National, reached an agreement with the Oversight Board in spring of 2021 with respect to their clams. In July of 2021, the remaining Monolines, Ambac and FGIC, reached an agreement with the Board, and on July 29, 2021, the Monolines filed their motion to voluntarily dismiss the appeal. The motion was granted on July 30, 2021.

(6) <u>PRIFA and HTA Revenue Bonds Lift Stay Appeals: Assured Guaranty Corp. v. Commonwealth, Case No. 20-1930 (HTA Lift Stay Appeal); Ambac Assurance Corp. v. Commonwealth, Case No. 20-1931 (PRIFA Lift Stay Appeal)</u>.  Following the Title III Court's denial on September 9, 2020 of the Monolines' motions seeking relief from the automatic stay to allow them to seize certain Commonwealth revenues allegedly conditionally allocated under Puerto Rico law to HTA, PRIFA, and CCDA in order to pay their prepetition bond claims, the Monolines filed two appeals on September 23, 2020.[25] Appellants' briefs in both matters were submitted on October 28, 2020.  Proskauer filed responsive briefs on

---

[24] *See Order Denying Urgent Motion for Bridge Order, and Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* [ECF No. 13825; Case No. 17-3567, ECF No. 889] and *Memorandum Opinion and Order Denying Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* [ECF No. 14012; Case No. 17-3567, ECF No. 912].

[25] *See Opinion and Order in Connection with Preliminary Hearing Regarding Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection (Docket Entry No. 10102)* [ECF No. 13541; Case No. 17-3567, ECF No. 853] (the "Preliminary HTA Order"), *Opinion and Order in Connection with Preliminary Hearing Regarding Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank National Trust Association, Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 13542] (the "Preliminary PRIFA Order"), and *Memorandum Opinion and Order Denying HTA and PRIFA Revenue Bond Stay Relief Motions* [ECF No. 14186, Case No. 17-3567, ECF No. 921] (the "Final HTA & PRIFA Order").

behalf of the Oversight Board in both matters on December 7, 2020.   On December 21, 2020, the Monolines filed their reply briefs.  The oral argument was held on February 4, 2021. On March 3, 2021, the First Circuit affirmed the Title III court's denial motions.

(7) <u>UTIER v. PREPA, Case No. 20-2041</u>.   On October 26, 2020, UTIER and SREAEE appealed the Title III Court decision granting the Government Parties' motion to allow an administrative expense claim for any accrued and unpaid front-end transition obligations incurred by PREPA under the T&D Contract.  UTIER and SREAEE filed their opening appellate brief on February 15, 2021, and Proskauer, on behalf of the Oversight Board, filed the opposition on April 20, 2021.  Proskauer attorneys defended the Board's position at the oral argument on June 8, 2021.  On August 12, 2021, the First Circuit affirmed judgment of the Title III Court.

(8) <u>UCC v. FOMB, Case No. 20-2162</u>.  On August 18, 2020, the UCC filed a motion to terminate the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement* [Case No. 17-4780, ECF No. 1235] (the "<u>9019 Motion</u>") and on August 28, 2020, the related urgent motion to compel discovery to determine whether the restructuring agreement with PREPA bondholders (the "<u>RSA</u>") remained viable and could be renegotiated by the parties.[26]  The Title III Court denied the UCC's motion to compel on September 5, 2020, and denied the UCC's motion to terminate the 9019 Motion on November 4, 2020.  On December 4, 2020, the UCC appealed the Court's decisions related to the 9019 Motion.[27]  On February 2, 2021, the First Circuit issued an order to show cause why the case should not be dismissed for lack of jurisdiction.  The UCC filed its response on February 16, 2012, and Proskauer, on behalf of the Oversight Board, responded on February 25, 2021.  On May 21, 2021, the appeal was dismissed for lack of jurisdiction.

(9) <u>Pierluisi v. FOMB, Case No. 21-1071</u>.  On January 21, 2021, the Government appealed the Title III Court's orders denying its motion for summary judgment, granting in part the Oversight Board's summary judgment motion, and enjoining the Government from implementing and enforcing Acts 82, 138, 176, 181, and 47, which were challenged by the Oversight Board.[28]  On April 19, 2021, the

---

[26] *See Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [Case No. 17-4780, ECF No. 2144] and *Official Committee of Unsecured Creditors' Urgent Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* [Case No. 17-4780, ECF No. 2155].

[27] *See Order Denying the Official Committee of Unsecured Creditors' Motion to Terminate Rule 9019 Motion* [ECF No. 15020; Case No. 17-4780, ECF No. 2287], *Memorandum Order Regarding Official Committee of Unsecured Creditors' Urgent Objection to Magistrate Judge's September 5, 2020 Order on Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* [ECF No. 14586; Case No. 17-4780, ECF No. 2252], and *Order on Motion to Compel* [ECF No. 14181; Case No. 17-4780, ECF No. 2177].

[28] *See Opinion and Order Denying the Government's Motions for Summary Judgment and Granting in Part the Oversight Board's Motions for Summary Judgment; Order to Show Cause Regarding Dismissal of Remaining*

appellants Governor Pierluisi and AAFAF filed their opening brief, which was re-filed on May 7, 2021 to conform with the rules of the Court. On June 16, 2021, the House Speaker submitted his amicus curiae brief in support of the reversal of the challenged judgment. On July 7, 2021, Proskauer, on behalf of the Oversight Board, filed its responsive brief. The appellants replied on July 28, 2021 and on August 11, 2021, Proskauer submitted the Oversight Board's sur-reply. On September 15, 2021, Proskauer attorneys defended the Board's position at oral argument. The case remains pending.

20.     In addition to the above, Proskauer has represented the Oversight Board and Title

III Debtors in numerous adversary proceedings and other contested matters brought by the

Debtors' bondholders and monoline insurers, the Puerto Rico Government and its agencies,

creditors, and other parties. The following is a summary of major litigation matters in which

Proskauer served as lead counsel for the Title III Debtors during this Compensation Period:

- ERS Bondholders' Claims and Administrative Expense Motions.[29] On September 11, 2020, Proskauer, together with counsel for the UCC, filed two motions for summary judgment against certain ERS bondholders with respect to certain counts included in ERS's adversary complaints related to the scope of the bondholders' security interests in ERS's assets.[30] On the same day, the bondholders filed their own motions for partial summary judgment on the lien scope issues.[31] The motions were fully briefed. On January 22, 2021, the Title III Court scheduled oral arguments on the *ultra vires* and lien scope related summary judgment

---

*Claims and Counterclaims; Order Dismissing Remaining Counts and Counterclaims and Directing Entry of Judgment in the Above-Captioned Adversary Proceedings,* and *Judgment* [Adv. Proc. Nos. 20-080, 20-082 – 085].

[29] The Claims include those asserted by (a) certain ERS Bondholders in the (i) *ERS Bondholders' Motion and Request for Allowance and Payment of Post-Petition and Administrative Expense Claims* [ECF No. 9285 in Case No. 17-bk-3283 and ECF No. 707 in Case No. 17-bk-3566] and (ii) *ERS Bondholders' Motion and Request for Allowance and Payment of Post- Petition and Administrative Expense Claims* [ECF No. 9294 in Case No. 17-bk-3283 and ECF No. 710 in Case No. 17-bk-3566] (collectively, the "Bondholder Administrative Expense Motions"), (b) the Fiscal Agent in the *Joinder in ERS Bondholders' Motion for Allowance of Administrative Expense Claim* [ECF No. 9298 in Case No. 17-bk-3283 and ECF No. 712 in Case No. 17-bk-3566] (the "Fiscal Agent Joinder" and, together with the Bondholder Administrative Expense Motions, the "Administrative Expense Motions"), (c) the Claimants in the *ERS Bondholders' Supplement to Proofs of Claim and Motions for Allowance of Administrative Expense Claims* [ECF No. 12536 in Case No. 17-bk-3283 and ECF No. 848 in Case No. 17-bk-3566] (the "Supplement"), (d) the Fiscal Agent in proofs of claim numbers 16775, 16777, and 32004 (the "Fiscal Agent Proofs of Claim"), and (e) the ERS Bondholder Groups in the proofs of claim listed in Appendix 2 to the *Order Granting Urgent Joint Motion for Entry of a Schedule for Resolution of the ERS Bondholder Claims and Administrative Expense Motions* [ECF No. 12446 in Case No. 17-bk-3283 and ECF No. 838 in Case No. 17-bk-3566] (the "ERS Bondholder Groups Proofs of Claim" and, together with the Fiscal Agent Proofs of Claim, the "Proofs of Claim").

[30] *See* Case No. 19-366, ECF No. 91, and Case No. 19-367, ECF No. 107.

[31] *See* Case No. 19-366, ECF No. 95, and Case No. 19-367, ECF No. 111.

motions, as well as the pending Rule 12 motions to dismiss, at the March and April omnibus hearings, respectively.[32]  As a result of ongoing mediation, on April 2, 2021, the Oversight Board, on behalf of the Commonwealth and ERS, and certain ERS bondholders entered into the *Amended and Restated Stipulation (A) Allowing Claims of ERS Bondholders, (B) Staying Pending Litigation, and (C) Providing for Treatment of Claims of ERS Bondholders and Dismissal of Pending Litigation Pursuant to a Plan of Adjustment* regarding the treatment of the ERS bonds in the Plan.  The Oversight Board and the ERS bondholders further agreed that, upon the effective date of the Debtors' plan of adjustment, the pending ERS bond-related actions shall be dismissed and/or denied, with prejudice, and on April 5, 2021, filed the *Urgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings Related to the Bonds Issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [ECF No. 16321; Case No. 17-bk-3566, ECF No. 1122].  On April 12, 2021, the Title III Court granted the urgent motion and stayed the ERS bond-related matters indefinitely.[33]

- PREPA PPOA Rejection and Assumption Motions.  In line with PREPA's goal of supplying reliable electric power to ratepayers in Puerto Rico at the lowest cost possible, and to better align this objective with the PREPA certified fiscal plan, in 2017 the Oversight Board implemented a contract review policy for certain power purchase and operating agreements ("PPOAs") with renewable energy project developers.  On November 17, 2020, Proskauer, on behalf of PREPA, filed the *Omnibus Motion of Puerto Rico Electric Power Authority for Order (A) Approving PREPA's Rejection of Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* [ECF No. 15178; Case No. 17-4780, ECF No. 2296], requesting that the Title III Court authorize rejection of seven PPOAs with Windmar, M Solar Generating, LLC, and YFN Yabucoa Solar, LLC, where PREPA's price renegotiation efforts failed.  On December 2, 2020, the Court granted the rejection motion in part, approving the unopposed rejection of certain Windmar PPOAs.[34]  On January 8, 2021, M Solar Generating, LLC and YFN Yabucoa Solar, LLC filed  their oppositions to the rejection motion, and Proskauer filed the omnibus reply on behalf of PREPA on April 14, 2021.  Proskauer attorneys defended PREPA's position at the omnibus hearing on April 28, 2021.

---

[32] See *Order Granting Urgent Motion to Set Oral Argument Concerning Pending Motions in Certain Contested Matters and Adversary Proceedings Related to the Bonds Issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [ ECF No. 15697; Case No. 17-bk-3566, ECF No. 1065].

[33] See *Order (I) Granting* U*rgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings Related to the Bonds Issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and (II) Adjourning April 29, 2021, Oral Argument* [ECF No. 16285; Case No. 17-bk-3566, ECF No. 1123].

[34] *See Order Granting in Part Omnibus Motion  of Puerto Rico Electric Power Authority for (A) Approval of Its Rejection of Certain Power Purchase and Operating Agreements, and (B) Related Relief* [ECF No. 15313; Case No. 17-4780, ECF No. 2318].

On September 16, 2021, the Title III Court entered the second order granting in part the rejection motion.[35]  PREPA's negotiations with Windmar are ongoing.

- <u>Catesby Jones v. PREPA, Adv. Proc. No. 20-00115</u>.  On September 19, 2020, a declaratory judgment action was brought against the Special Claims Committee and UCC as PREPA co-trustees by certain electricity ratepayers in Puerto Rico seeking an order finding that the claims asserted by PREPA in *SCC v. Inspectorate America Corp.*, Adv. Proc. No. 19-00388, are not assets of PREPA's estate, that the certified class of ratepayers in *Ismael Marrero Rolon v. Autoridad de Energia Electrica*, No. 3:15-cv-01167-JAG (D.P.R.) are the appropriate holders of those claims, and granting relief from the automatic stay to permit the ratepayers to pursue their direct claim against PREPA in the *Ismael Marrero Rolon* case.  On February 2, 2021 plaintiffs filed their second amended complaint.  On behalf of PREPA, on March 30, 2021 Proskauer moved to dismiss counts I and II of the second amended complaint and defended the Debtor's position at the omnibus hearing on June 16, 2021.  On June 24, 2021 the motion to dismiss counts I and II was granted by the Title III Court.

- <u>Hernández Montañez v. Pierluisi-Urrutia, Adv. Proc. No. 21-00042</u>.  During the Compensation Period, Proskauer advised the Oversight Board in its communications with the Puerto Rico Governor and Legislature concerning Act 167 and the Governor's related requests for reprogramming of funds and for amending the certified budget to cover the cost of the special election to create a delegation to the United State Congress to advocate for statehood for Puerto Rico pursuant to Act 167.  On April 21, 2021, the House Speaker filed a declaratory judgment action against the Governor and the Oversight Board, among others, requesting that the Title III Court enforce section 204(c) of PROMESA and enjoin the Governor and the Board from revising the certified budget.  On April 27, 2021, Proskauer, on behalf of the Oversight Board, opposed the House Speaker's request to the Title III Court for a temporary restraining order or a preliminary injunction, and defended the Oversight Board's position at the oral argument on April 29, 2021, where the House Speaker's motion was denied.  On June 4, 2021, Proskauer filed a motion to dismiss the House Speaker's complaint, which was granted by the Title III Court on August 27, 2021.

- <u>UTIER v. PREPA, Adv. Proc. No. 17-00229</u>.  On March 12, 2021, UTIER filed its third amended complaint in an adversary action against PREPA, the Oversight Board, and individual executive defendants, alleging in its surviving claims that certain Puerto Rico laws negatively affected the UTIER collective bargaining agreement in violation of the Contract Clauses of the United States and Puerto Rico Constitutions.  On April 26, 2021, Proskauer answered the complaint on behalf of the Oversight Board, and on the same date, jointly with counsel for

---

[35] *See Memorandum Opinion Regarding Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Approving PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* [ECF No. 18135; Case No. 17-4780, ECF No. 2622].*; Second Order Granting in Part PREPA's Motion  for an Order (A) Approving PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* [ECF No. 18134; Case No. 17-4780, ECF No. 2621].

individual defendants, filed the amended motion to dismiss UTIER's third amended complaint. On April 26, 2021, UTIER filed four motions in limine to exclude the expert testimony offered by the defendants. On June 1, 2021, Proskauer, jointly with counsel for individual defendants, filed the joint motion for summary judgment. On July 2, 2021, UTIER filed its amended motion for summary judgment. On September 10, 2021, Proskauer filed an opposition to UTIER's four motions in limine and UTIER and Proskauer each filed responses to the summary judgment motions. Replies in support of the motions were filed by the parties on December 8, 2021.

- <u>La Liga de Ciudades de Puerto Rico v. FOMB., Adv. Proc. No. 21-00026</u>. On March 14, 2021, a not-for-profit organization of Puerto Rico Mayors from various municipalities (La Liga de Ciudades de Puerto Rico or "<u>La Liga</u>") commenced an adversary action against the Oversight Board, among others, seeking a Title III Court order prohibiting the collection of funds from the Municipalities for the time period allegedly exempted by Law 29, enjoining the Board from interfering with fiduciary duties owed by AAFAF and Centro de Recaudación de Ingresos Municipales ("<u>CRIM</u>") to the Municipalities, and decreeing inexistent the Municipalities' debts to CRIM, Administración de Seguros de Salud de Puerto Rico ("<u>ASES</u>"), and the Puerto Rico Retirement System. On May 14, 2021, Proskauer, on behalf of the Oversight Board, filed a motion to dismiss the La Liga complaint. The motion was fully briefed. On January 4, 2022, the Title III Court granted the motion and dismissed the case.

- During the Compensation Period, Proskauer attorneys and paraprofessionals devoted significant amount of time and effort to ongoing discovery related to the proposed plan of adjustment and in the revenue bonds related adversary proceedings. They reviewed numerous documents for responsiveness and privilege in preparation for production, drafted responses and objections to interrogatories and production requests, and prepared for and participated in numerous meet-and-confer communications and depositions of fact and expert witnesses. They also filed numerous status reports with the Title III Court on the progress of discovery and defended the Oversight Board's position in discovery disputes in the Title III Court. On March 5, 2021, Proskauer, on behalf of the Oversight Board, objected to Ambac's motion for entry of an order authorizing discovery under Rule 2004 concerning the Commonwealth's assets [ECF No. 15967], and on May 17, 2021, after considering the Board's objection together with opposition from other parties, the Title III Court denied the Ambac's request. The same day the Title III Court partially denied Ambac's motion for an order directing cash discovery under Rule 2004 from the Oversight Board [ECF No. 16760].

21. As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy

and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

22. By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of **$29,993.10**, as compensation for professional services rendered during the Compensation Period. No expenses were incurred by Proskauer during the Compensation Period in connection with these services. The Application reflects the sizeable discount embedded in Proskauer's Engagement Letter with the Oversight Board, in which it fixed hourly rates at levels currently providing up to 53% discounts on the hourly rates of its most senior partners.

23. Proskauer maintains computerized records of the time spent by all Proskauer attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board as representative of the Debtor. Subject to redaction where necessary to preserve mediation confidentiality, copies of the computerized records for the Compensation Period are attached hereto as **Exhibit B**.

24. Proskauer's budget and staffing plan for the Compensation Period are attached hereto as **Exhibit D**.

25. Proskauer's summary of itemized time records for professionals and paraprofessionals performing services for the Oversight Board with respect to the Debtor during the Compensation Period is set forth on **Schedule 2**. The professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period required an aggregate expenditure of 19.70 recorded hours by Proskauer's partners; 8.00 recorded hours by associates; and 15.00 recorded hours by paraprofessionals. As required by the Guidelines, **Exhibit C** to this Application shows, for each Project Category (as defined below), a list of professionals who performed services in each Project Category and the

aggregate recorded hours each professional incurred.  In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and **5**.  The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect Proskauer's arrangement with the Oversight Board.  The standard rates Proskauer charges for the services rendered by its professionals and paraprofessionals in these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.  **Schedules 2** and **5** show the rates Proskauer charges on an hourly basis are below the competitive market rates for bankruptcy and non-bankruptcy matters charged by the other professionals representing the Commonwealth and statutory committees.  No Proskauer rates are increased as a result of the geographic location of a bankruptcy case (or a Title III case).

26.     All entries itemized in Proskauer's time records comply with the requirements set forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each a "Project Category"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.  Each Project Category is organized in accordance with Guidelines paragraph C.8.b.  If a Project Category does not appear in a particular application, Proskauer did not bill time or expenses for that Project Category during the Compensation Period, but may bill time for that Project Category in the future.  In addition, only Project Categories for which Proskauer billed more than 5 hours during the Compensation Period are summarized in the Application.  Project Categories for which Proskauer billed less than 5 hours are included in **Exhibit B**.  While Proskauer billed only 42.70 hours to PBA during the Compensation Period,

Proskauer has billed substantially more time to PBA during prior Compensation Periods. In addition, during the Compensation Period, substantial work was done to advance PBA's restructuring in connection with the proposed Commonwealth, ERS, and PBA plan of adjustment and related disclosure statement, which provide for a comprehensive restructuring of PBA's debt, but which work was billed to other Project Categories related to the Commonwealth or ERS as it involved multiple Debtors.

**Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5**

27.    The following answers are provided in response to the questions set forth in Guidelines paragraph C.5:

| | |
|---|---|
| **Question**: | Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain. |
| Response: | No. |
| **Question**: | If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? |
| Response: | The total fees sought in this Application did not exceed the total budgeted fees for the Compensation Period (the fees sought in this Application are 37.8% below the budgeted fees). |
| **Question**: | Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? |
| Response: | No. |
| **Question**: | Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees. |
| Response: | No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the preparation of monthly fee statements. |

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:    No time was spent redacting time records on account of privilege concerns.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Response:    Yes.  Proskauer's Engagement Letter with the Oversight Board provides that Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1–2).  Pursuant to the Engagement Letter, Proskauer's rates increased 4% effective January 1, 2021, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $853 per hour, for e-discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour.  Rates have not increased during this Compensation Period.

### Gross-Up Amount

28.    Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently depending on whether Proskauer's timekeepers performed work while physically present in Puerto Rico or off-island.  Specifically, a 7% withholding tax was assessed (at time of payment) on fees derived from work performed while the timekeeper was physically present in Puerto Rico, but not on fees derived from work performed outside of Puerto Rico.

29.    On December 10, 2018, Puerto Rico enacted Act 257–2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed.  Under Act 257–2018, all Proskauer fees incurred on or after December 10, 2018—regardless of the timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment.

30.     For certain periods prior to Proskauer's fiscal year beginning November 1, 2020,
Proskauer requested approval of Gross-Up Amounts which it would request payment of if it did
not receive federal tax credits offsetting the withholding tax.  Proskauer is not requesting such
approval for periods subsequent to October 31, 2020 based on the registration of its Engagement
Letter and understandings with the Commonwealth government. In prior Fee Applications,
Proskauer requested approval for periods prior to October 2020. If it becomes necessary to
request approval of a Gross-Up Amount for October 2020 or subsequent Compensation Periods,
Proskauer will make that application at a subsequent time.

**<u>Professionals Billing Fewer Than Five Hours per Month</u>**

31.     The following chart indicates, solely with respect to the Debtor's Title III Case,
(a) professionals who billed fewer than five hours per month, (b) the months for which fewer than
five hours were billed by the professional, and (c) an explanation of why the use of such
professional was reasonable and necessary.  As a general matter, because of the size and
complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with
professionals with specific practice area expertise to assist Proskauer's core restructuring
professionals in providing the Debtor with necessary and beneficial professional services.
Moreover, it was often necessary to consult with professionals more familiar with other aspects of
the restructuring of Puerto Rico and with specific adversary proceedings to deal with global
strategic issues and ensure that positions taken by the Oversight Board are consistent across all
the Title III cases.  Furthermore, occasionally the urgency of certain briefing schedules required
pulling in professionals from different work streams to assist on time-sensitive matters.  In
addition, given the limited number of total hours spent on PBA's Title III case during this

Compensation Period, it is not unusual that professionals billed fewer than five hours in certain months.[36]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Esses, Joshua A. | March, April | Mr. Esses is an associate in Proskauer's BSGR&B group who assisted with drafting of the Debtor's motion for approval of the settlement agreement with Triple-S Propiedad, Inc. insurance company. |
| Oloumi, Nicole | April | Ms. Oloumi is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Petrov, Natasha | February, April | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer's Third and Fourth Interim Fee Applications. |
| Possinger, Paul V. | February, April | Mr. Possinger is a partner in Proskauer's BSGR&B group who advised on the Debtor's motion for approval of the settlement agreement with Triple-S Propiedad, Inc. insurance company and related revised proposed order. |
| Rosen, Brian S. | February – April | Mr. Rosen is a partner in Proskauer's BSGR&B group who advised on the Debtor's motion for approval of the settlement agreement with Triple-S Propiedad, Inc. insurance company and related revised proposed order. |
| Rosenthal, Marc E. | February – April | Mr. Rosenthal is a partner in Proskauer's litigation department who advised on the insurance related issues in connection with the Debtor's motion for approval of the settlement agreement with Triple-S Propiedad, Inc. insurance company and related revised proposed order. |
| Singer, Tal J. | February, April | Mr. Singer is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Volin, Megan R. | February | Ms. Volin is an associate in Proskauer's BSGR&B group who assisted with drafting Proskauer's Third Interim Fee Application. |

---

[36] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III. Many of these professionals have also billed substantially more time on matters related to Proskauer's representation of the Oversight Board during prior Compensation Periods.

**Summary Description of Professional Services**

32.    The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period.  Only Project Categories for which Proskauer billed more than 5 hours during the Compensation Period are summarized below.  Project Categories for which Proskauer billed less than 5 hours during the Compensation Period are listed in **Exhibit B**.

**I.    Matter No. 33260.0083 (PROMESA Title III: PBA)**

33.    This matter number covers time spent relating to the core PBA Title III case, including, for example, time spent regarding mediation, fiscal plan issues, and work on disclosure statements or plans of adjustment.

(a)    Documents Filed on Behalf of the Board (Project Category 206)
         (Fees:  $14,245.10; Hours:  16.70)

34.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys spent time conducting research and analysis, conferring with the Oversight Board, and drafting the Debtor's motion for approval of the settlement agreement with Triple-S Propiedad, Inc. insurance company, a revised proposed order regarding same addressing creditors' comments, and the Debtor's fourth motion for an order further enlarging the time to file notices of removal of civil actions under Bankruptcy Rule 9027(a).

(b)    Analysis and Strategy (Project Category 210)
         (Fees: $8,188.80; Hours: 9.60)

35.    This Project Category includes time spent related to legal analysis on, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in meetings to discuss strategic case considerations, the status of

various work streams and next steps, and all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

(c)   Employment and Fee Applications (Project Category 218)
     (Fees: $3,538.20; Hours: 11.00)

36.     This Project Category includes time spent on issues related to the compensation of Proskauer, and the retention and compensation of other Oversight Board professionals, including the preparation of interim fee applications. Specifically, Proskauer attorneys and paraprofessionals spent time drafting Proskauer's Third and Fourth interim fee applications.

*     *     *     *

37.     The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, residents, and other stakeholders. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved. The professional services were performed with expedition and in an efficient manner.

38.     In accordance with the factors enumerated in the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of comparable services other than in a case under the Bankruptcy Code.

**Actual and Necessary Expenses of Proskauer**

39.     Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor during the Compensation Period. No expenses were incurred by Proskauer during the Compensation Period in connection with these services.

**Compensation Paid and Its Source**

40.     All services for which Proskauer seeks compensation, and expenses for which it seeks reimbursement, were performed on behalf of the Oversight Board as representative of the Debtor.  In connection with the matters covered by this Application, Proskauer received no payment and no promises of payment for services rendered, or to be rendered, from any source other than the Debtor.  There is no agreement or understanding between Proskauer and any other person, other than members of the firm, for the sharing of compensation received for services rendered in this Title III case.

41.     PROMESA sections 316 and 317 provide for interim compensation of professionals and govern the Court's award of such compensation.  PROMESA section 316 provides that a court may award a professional person employed by the Debtor or the Oversight Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person; and (2) reimbursement for actual, necessary expenses."  PROMESA § 316(a).  Section 316 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;

(3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

(4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

42.    As noted above, the professional services and expenditures for which Proskauer seeks compensation and reimbursement in this Application were necessary and beneficial to the Oversight Board, as representative of the Debtor, and included, among other things, anticipating or responding to the Oversight Board's needs and assisting in the Oversight Board's navigation of the Debtor's very complex Title III case.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Oversight Board.  The Oversight Board has reviewed and approved this Application.

## **Reservations**

43.    To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Proskauer reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

## **Notice**

44.     Pursuant to the Interim Compensation Order and the *Fifteenth Amended Notice,*

*Case Management and Administrative Procedures* [ECF No. 17127-1], notice of this Application

has been filed in the Debtor's Title III Case and the lead Commonwealth of Puerto Rico's Title III

Case and served upon:

(a) the Financial Oversight and Management Board, 40 Washington Square South, Office 314A, New York, NY 10012, Attn: Professor Arthur J. Gonzalez, Oversight Board Member;

(b) attorneys for the Financial Oversight and Management Board as representative of The Commonwealth of Puerto Rico, O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges.com);

(c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Peter Friedman, Esq. (pfriedman@omm.com), and Maria J. DiConza, Esq. (mdiconza@omm.com);

(d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muñiz LLC, 250 Ponce de León Ave., Suite 900, San Juan, PR 00918, Attn.: Luis C. Marini-Biaggi, Esq. (lmarini@mpmlawpr.com), Carolina Velaz-Rivero, Esq. (cvelaz@mpmlawpr.com), and Iván Garau-González, Esq. (igarau@mpmlawpr.com);

(e) the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (*In re: Commonwealth of Puerto Rico*);

(f) attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq. (lucdespins@paulhastings.com), James Bliss, Esq. (jamesbliss@paulhastings.com), James Worthington, Esq. (jamesworthington@paulhastings.com), and G. Alexander Bongartz, Esq. (alexbongartz@paulhastings.com);

(g) attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Suite 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com), Diana M. Batlle-Barasorda, Esq. (dbatlle@cstlawpr.com), Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com), and Ericka C. Montull-Novoa, Esq. (emontull@cstlawpr.com);

(h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin @jenner.com); and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine L. Steege, Esq. (csteege@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A piso 18, Ave. Ponce de León #416, Hato Rey, San Juan, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares@hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda.pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn: Eyck O. Lugo, Esq. (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler, Esq. (KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the amount of **$29,993.10** (no expenses were incurred during the Compensation Period in connection with these services); (b) authorizing and directing the Debtor to pay promptly to Proskauer the difference between (i) the amount of interim compensation for professional services rendered during the Compensation Period allowed hereunder, and (ii) the amounts for such compensation previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered without prejudice to

Proskauer's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application or which arise from the accrued incremental fees from increased rates in the Engagement Letter; and (d) granting Proskauer such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  January 5, 2022
        San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       ppossinger@proskauer.com
       ebarak@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M.  Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and
Management Board as Representative of the
Debtor*