# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## NOTICE OF ANNUAL HOURLY RATE ADJUSTMENT PURSUANT TO ENGAGEMENT LETTER, DATED AUGUST 2, 2018, OF ALVAREZ & MARSAL NORTH AMERICA, LLC, AS CONSULTANTS FOR THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO

**PLEASE TAKE NOTICE** that, pursuant to this Court's *Order Imposing Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or other Sub-Retained Professionals* [ECF No. 7678] (the "Additional Presumptive Standards Order"),[2] Alvarez & Marsal North America, LLC ("Alvarez & Marsal"), as consultants for the Financial Oversight and Management Board for Puerto Rico, as Title III representative of the Debtors in the above-captioned Title III cases (the "Title III Cases"), hereby informs the Court and public of the annual rate adjustments on a timekeeper-by-timekeeper basis (the "Rate Adjustment"), set forth on **Exhibit A** attached hereto and effective on February 1, 2022 (the "Effective Date").

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Additional Presumptive Standards Order.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Additional

Presumptive Standards Order, attached hereto as **<u>Exhibit B</u>** is Alvarez & Marsal's certification in

support of the Rate Adjustment.

[*Remainder of Page Intentionally Left Blank*]

Dated:  January 10, 2022

Respectfully submitted,

*/s/ Julie M. Hertzberg*

Julie M.  Hertzberg

**Alvarez & Marsal North America, LLC**

755 W. Big Beaver Road

Suite 650

Troy, MI 48084

Telephone:  248.936.0850

Facsimile: 248.936.0801

jhertzberg@alvarezandmarsal.com

3

## EXHIBIT A

### Rate Adjustment Schedule for Timekeepers

| Timekeeper | Position | Hourly Billing Rates effective as of February 1, 2022 |
|---|---|---|
| Collier, Laura | Associate | $575.00 |
| DiNatale, Trevor | Senior Associate | $650.00 |
| Erlach, Nicole | Associate | $525.00 |
| Potesta, Tyler | Associate | $575.00 |
| Shah, Rushabh | Associate | $575.00 |

**<u>EXHIBIT B</u>**

**Certification of Julie M. Hertzberg**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| |
|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>Debtors.[1] |

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**CERTIFICATION OF JULIE M. HERTZBERG IN RESPECT OF HOURLY RATE
ADJUSTMENT PURSUANT TO ENGAGEMENT LETTER, DATED AUGUST 19,
2018, OF ALVAREZ AND MARSAL NORTH AMERICA, LLC, AS CONSULTANTS
FOR
THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**

I, Julie M. Hertzberg, hereby certify that:

1.     I am a managing director at Alvarez and Marsal North America, LLC

("Alvarez & Marsal"), with offices located at 755 W. Big Beaver Rd., Suite 650, Troy, MI 48084.

Alvarez and Marsal serves as consultants for the Financial Oversight and Management Board for

Puerto Rico (the "Oversight Board"), as Title III representative of the Debtors in the above-

captioned Title III cases (the "Title III Cases") pursuant to section 315(b) of the *Puerto Rico*

*Oversight, Management, andEconomic Stability Act* ("PROMESA").[2]  I have personal knowledge

of all of the facts set forth in this certification except as expressly stated herein.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of theGovernment of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241

2.      In accordance with the Order Imposing Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or Other Sub-retained Professionals entered on June 26, 2019 [ECF No. 7678] (the "Additional Presumptive Standards Order"), this certification is made in respect of Alvarez & Marsal's hourly rate adjustment provided for in its engagement letter dated August 9, 2018, on a timekeeper-by-timekeeper basis, (the "Rate Adjustment"), as set forth in **Exhibit C** attached hereto, effective as of February 1, 2022 (the "Effective Date").

3.      In accordance with paragraph 2 of the Additional Presumptive Standards Order, I hereby certify that:

a)      Alvarez & Marsal's engagement letter with the Oversight Board dated August 9, 2018 (the "Engagement Letter")[3] provides Alvarez & Marsal's rates increase annually at such time as A&M adjusts its rates generally, subject to a cap of five percent (5%) for each fiscal year.  Due to the fact that the engagement commenced near the end of the year, Alvarez & Marsal determined annual rate increases would correspond with the effective date of the engagement letter.

b)      Upon discussion between the fee examiner and Alvarez & Marsal, it was determined that promotion-level rate adjustments for individuals receiving a promotion would occur at the beginning of the calendar year when Alvarez & Marsal sets its promotion rates.

c)      Alvarez & Marsal negotiated the Rate Adjustment with the Oversight Board in good faith and at arms' length in August 2018.

[*Remainder of Page Intentionally Left Blank*]

---

[3]    A copy of the engagement letter is available on the Oversight Board's website at http://oversightboard.pr.gov/documents/ and appended in **Exhibit D**.

Dated:  January 10, 2022                     Respectfully submitted,

                                             */s/ Julie M. Hertzberg*                     
                                             Julie M.  Hertzberg

                                             **Alvarez & Marsal North America, LLC**
                                             755 W. Big Beaver Road
                                             Suite 650
                                             Troy, MI 48084
                                             Telephone:  248.936.0850
                                             Facsimile: 248.936.0801
                                             jhertzberg@alvarezandmarsal.com

**Exhibit C**

**Rate Adjustment Schedule for Timekeepers**

| Timekeeper | Position | Hourly Billing Rates effective as of February 1, 2022 |
|---|---|---|
| Collier, Laura | Associate | $575.00 |
| DiNatale, Trevor | Senior Associate | $650.00 |
| Erlach, Nicole | Associate | $525.00 |
| Potesta, Tyler | Associate | $575.00 |
| Shah, Rushabh | Associate | $575.00 |

## Exhibit D

**Alvarez and Marsal North America, LLC Engagement Letter**

**Alvarez & Marsal North America, LLC**
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

August 2, 2018

Jose B. Carrion, Chairman
Financial Oversight and Management Board of Puerto Rico
P.O. Box 192018
San Juan, PR 00919

Dear Mr. Carrion:

This letter confirms and sets forth the terms and conditions, including the basis of compensation, of the engagement between Alvarez & Marsal North America, LLC ("A&M") and the Financial Oversight and Management Board of Puerto Rico (the "Oversight Board") in its role as representative for the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), Puerto Rico Highways and Transportation Authority ("HTA"), and Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS", and together with the Commonwealth, COFINA and HTA, the "Title III Entities," and each a "Title III Entity"), as debtors under Title III of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA") solely with respect to the services set forth herein.  Upon execution of this letter by each of the parties below, this letter will constitute an agreement between the Oversight Board and A&M (the "Agreement").

1.    Description of Services

A&M shall provide consulting services to the Oversight Board relating solely to claims management and reconciliation, at the direction of the Oversight Board's responsible member(s) and its representatives and/or professionals identified to A&M, including employees of the Title III entities approved by the Oversight Board to work with and assist A&M in connection with this Agreement (collectively, the "Responsible Parties"), in connection with its efforts to reconcile and resolve claims against the Title III Entities.  It is anticipated that A&M's activities shall include the following (collectively, the "Services"):

> (i)    *an evaluation of the originally filed schedules against the current books and records;*
>
> (ii)    *an initial review of filed claims and preparation of non-substantive objections;*
>
> (iii)    *a categorization of claims by "type" or "class;"*
>
> (iv)    *in conjunction with counsel, develop reconciliation guidelines and substantive objection categories that comply with the law;*
>
> (v)    *confer with employees of the Title III entities approved by the Oversight Board to work with and assist A&M in connection with this Agreement;*

www.alvarezandmarsal.com

FOMB
August 2, 2018

<ol type="i" start="6">
<li>assist with bilingual claims reconciliation training materials at the agency level;</li>
</ol>

(vii)    *provide ongoing claim estimates;*

(viii)    *create management level reporting;*

(ix)    *track and audit all claims to ensure final resolution for each;*

(x)    *facilitate claims distribution process for allowed claims;*

(xi)    *report to the Oversight Board as desired or directed by the Responsible Parties; and*

(xii)    *other activities as are approved by the Oversight Board and agreed to by A&M.*

In connection with the Services to be provided hereunder, from time to time, A&M may utilize the services of employees of its affiliates, and subsidiaries. Such affiliates are wholly owned by A&M's parent company and employees.

A&M personnel providing the Services to the Oversight Board may also work with other A&M clients in conjunction with unrelated matters.

In rendering the Services to the Oversight Board, A&M will report directly to the Responsible Parties and will make recommendations to and consult with the Responsible Parties and other parties as the Oversight Board or the Responsible Parties direct.

2.    <u>Information Provided by the Oversight Board and Forward Looking Statements</u>

The Oversight Board shall use all reasonable efforts to: (i) provide A&M with access to management and other key representatives of the Title III Entities; and (ii) to cause such Title III Entities to furnish such data, material, and other information as is necessary or required to facilitate A&M providing the Services. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Oversight Board and otherwise reviewed by A&M in connection with the services performed for the Oversight Board. The Oversight Board acknowledges and agrees that A&M shall not be responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein.

3.    <u>Limitation of Duties</u>

A&M does not verify and will be entitled to rely upon the accuracy and completeness of the information provided by or on behalf of the Oversight Board without any independent investigation or verification thereof by A&M. A&M shall be entitled to rely on all Oversight Board decisions and approvals made independently of this Agreement. Nothing in this Agreement

2

FOMB
August 2, 2018

shall require A&M to evaluate, advise on, modify, or reject such decisions and approvals, except as expressly agreed to herein.

The Oversight Board acknowledges that it and/or the Title III Entities, as the case may be, are the controller(s) of any data or databases accessed and/or processed by A&M in the course of performing the Services.

4.    <u>Compensation</u>

A&M will receive fees based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $800 – 925 |
| Senior Directors | $700 – 800 |
| Sr. Associate/Director | $550 – 700 |
| Sr. Consultant/Consultant/Associate | $475 – 550 |
| Jr. Consultant/Analyst | $375 – 450 |
| Local Resource | $200 – 225 |

A&M will provide a discount equal to 10% of total fees incurred in each billing period.  Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally, subject to a cap of five percent (5%) for each fiscal year.

(a) In addition, and subject to the Oversight Board's Expense Reimbursement Policy, dated June 30, 2017, a copy of which is annexed hereto as Exhibit "A", A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as IT system and data storage, travel, lodging, duplicating, messenger and telephone charges.  All fees and expenses will be billed on a monthly basis or, at A&M's discretion, more frequently.

(b) In order to comply with Puerto Rico law and be eligible to receive payment from the Title III Entities, the following conditions much be satisfied:

> *(i)    A&M shall bill each Title III Entity separately, with fees and expenses being allocated on each invoice based upon the Services performed for each Title III Entity;*

> *(ii)   The Services shall be subject to (1) the provisions of the Interim Compensation Order, as entered and amended in the cases of the Title III Entities, (2) the AAFAF Billing Guidelines, and (3) the review of the Fee Examiner appointed by the court having jurisdiction over the cases of the Title III Entities (the "<u>Title III Court</u>") pursuant to the Fee Examiner Guidelines;*

98719815v5

FOMB
August 2, 2018

> *(iii)*    *To the extent applicable, A&M shall comply with Puerto Rico tax withholding law; and*
>
> *(iv)*    *The Agreement shall be registered in the Office of the Comptroller of Puerto Rico.*

(c) Notwithstanding anything contained herein to the contrary, all A&M invoices shall be due and payable by the applicable Title III Entity pursuant to the terms hereof and the Oversight Board shall have no payment obligation in connection herewith.

5.    <u>Term</u>

(a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated, without cause, upon thirty (30) days prior written notice to the other party.

(b) On termination of the Agreement, any fees and expenses due to A&M shall be paid in accordance with the Interim Compensation Order, as amended (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

(c) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.    <u>Representations and Warranties of Compliance with Puerto Rico Law</u>

A&M represents and warrants that:

(a)    it will abide by its ethical and professional standards under Puerto Rico law, including, without limitation, *Act 1-2012*, as amended, known as the Enabling Act of the Office of Government Ethics of Puerto Rico, *ACT 146-2012*, as amended, known as the Puerto Rico Penal Code, *Act 2-2018*, as amended, known as the Anti-Corruption Code for a New Puerto Rico or any other law that involves the use of public funds or property, including, but not limited to, *Act 8-2017*, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico.

(b)    it will comply with all applicable laws, regulations and executive orders that regulate the contracting process and requirements of the Government of Puerto Rico. Particularly, *Act No. 237-2004*, as amended, which established uniform contracting requirements for professional and consultant services for the agencies and governmental entities of the Commonwealth of Puerto Rico (3 L.P.R.A § 8611 et seq.), and the Puerto Rico Department of Treasury Circular Letter Number 1300-16-16 issued on January 22, 2016, which is available at: http://www.hacienda.pr.gov/publicaciones/carta-circular-num-1300-16-16;

(c)    upon execution of this Agreement, it has fulfilled its tax obligations in Puerto Rico for the last (5) years, and that it is not aware of any outstanding debts with the Government of Puerto Rico for income taxes, real or chattel property taxes;

98719815v5

FOMB
August 2, 2018

(d)     it is not aware of any outstanding debts regarding its payment of unemployment insurance premiums, workers' compensation payments, Social Security for chauffeurs in Puerto Rico or the Child Support Administration (known by its Spanish acronym and hereinafter referred to as, "<u>ASUME</u>");

(e)     it is in compliance with *Act No. 1-2012*, as amended, known as the Enabling Act of the Office of Government Ethics of Puerto Rico;

(f)     it shall be bound by and comply with all applicable provisions of (i) the Oversight Board's Vendor/Consultant/Representative Code of Conduct, a copy of which is annexed hereto as Exhibit "B" and which shall be executed and delivered by A&M prior to this Agreement becoming effective, and (ii) the Code of Ethics for Contractors, Suppliers, and Applicants for Economic Incentives of the Government of Puerto Rico (known in Spanish as "Código de Ética para Contratistas, Suplidores y Solicitantes de Incentivos Económicos del Gobierno de Puerto Rico"), Chapter III of *Act No. 2-2018* other than with respect to issues disclosed in Section 9 below;

(g)     it will comply with the dispositions of *Act No. 14-2004*, known as the Investment Act for the Puerto Rican Industry, and shall use articles extracted, produced, assembled, packaged or distributed by companies with operations in Puerto Rico or distributed by agents established in Puerto Rico while rendering the Services, provided such articles are available;

(h)     it, nor any of its owners, directors, officials or employees, has agreed to share or provide a percentage of A&M's compensation under this Agreement to, or otherwise compensate, any third party, whether directly or indirectly, in connection with the procurement, negotiation, execution or performance of the Services pursuant to this Agreement;

(i)     no person has unduly intervened in the procurement, negotiation or execution of this Agreement, for its own benefit or that of a third person, in contravention of applicable law;

(j)     no person has (i) offered, paid, or promised to pay money to; (ii) offered, given or promised to give anything of value to; or (iii) otherwise influenced any public official or employee with the purpose of securing any advantages, privileges or favors for the benefit of such person in connection with this Agreement (such as the execution of a subcontract with contractor, beneficial treatment under this Agreement, or the written or unwritten promise of a gift, favor or other monetary or non-monetary benefit); and

(k)     none of A&M, its owners, directors, officials or employees or, to the best of A&M's knowledge, its representatives or sub-contractors, has required directly or indirectly, from third persons to take any action with the purpose of influencing any public official or employee in connection with the procurement, negotiation or execution of this Agreement.

7.     <u>Relationship of the Parties</u>

The parties intend that an independent contractor relationship will be created by this engagement letter.  Neither A&M nor any of its personnel or agents is to be considered an employee or agent

98719815v5

FOMB
August 2, 2018

of the Oversight Board or the Title III Entities and the personnel and agents of A&M are not entitled to any of the benefits that the Oversight Board or the Title III Entities may provide for their respective employees.   The Oversight Board acknowledges and agrees that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

8.      No Third Party Beneficiary

All advice (written or oral) provided by A&M to the Oversight Board in connection with this engagement is intended solely for the benefit and use of the Oversight Board in considering the matters to which this engagement relates.  The Oversight Board agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

9.      Conflicts

Except as included on the Vendor Conflict of Interest Disclosure Certification, a copy of which is annexed hereto as Exhibit "C" and which shall be executed and delivered by A&M prior to this Agreement becoming effective, A&M is not currently aware of any relationship that would create a conflict of interest with the Oversight Board, the Title III Entities or those parties-in-interest of which you have made us aware, but, we note the following: (i) an A&M affiliate currently provides consulting services to a rum producer with business in the Commonwealth, and, therefore, in an abundance of caution, the services provided by A&M in this engagement will not include any services relating to claims, if any, involving such rum producer or its affiliates; (ii) an A&M affiliate is currently engaged to provide services to AAFAF in cooperation with the Puerto Rico Highway and Transportation Authority to assist with the development and implementation of a fiscal plan for those agencies; (iii) A&M is currently acting as the financial advisor to counsel to the agent for a syndicate of banks with loans to PREPA and, therefore, the services provided by A&M in this engagement will not include services related to claims associated with PREPA; and (iv) A&M and its affiliates have previously provided services for various Commonwealth related entities, including, but not limited to, the Government Development Bank of Puerto Rico, PREPA and other instrumentalities of the Commonwealth.  Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "Firm") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to, or have business associations with, other entities or people which had or have or may have relationships with the Title III Entities, including creditors of the Title III Entities.  The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Title III Entities, provided that A&M makes appropriate arrangements to ensure that the confidentiality of information related to the Title III Entities is maintained, including, without limitation, through the implementation of information walls where appropriate.

98719815v5

FOMB
August 2, 2018

10.     Confidentiality / Non-Solicitation

A&M shall keep as confidential all non-public information received from the Oversight Board and the Title III Entities in conjunction with this engagement, except: (i) as requested by the Oversight Board, the Title III Entities or their legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Oversight Board and the Title III Entities agree that, until two (2) years subsequent to the termination of this engagement, it will not directly or indirectly solicit, recruit, hire or otherwise engage any employee of A&M or its affiliates who worked on this engagement while employed by A&M or its affiliates.

11.     Indemnification and Limitations on Liability

The Indemnification and Limitation on Liability Agreement, a copy of which is annexed hereto as Exhibit "D", is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

12.     Miscellaneous

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the Commonwealth of Puerto Rico, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Oversight Board and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Oversight Board and A&M agree, to the extent permitted by applicable law, that the Title III Court shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Title III Court; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the Commonwealth of Puerto Rico for any litigation arising in connection with this Agreement.

This Agreement and the terms herein, upon approval of the Title III Court, constitute a valid and binding contract under Puerto Rico law and shall be binding upon A&M and the Oversight Board, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's businesses and/or assets. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Oversight Board and A&M. Notwithstanding anything herein to the contrary, A&M may reference or list the Oversight Board's and name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

98719815v5

FOMB
August 2, 2018

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement
with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By:   *Julie M. Hertzberg*
          Name:  Julie M. Hertzberg
          Title:   Managing Director

Accepted and agreed:

*Financial Oversight and Management Board of Puerto Rico*

By:   _____
          Name:  Jose B. Carrion
          Title:   Chairman

8

98719815v5



**Alvarez & Marsal North America, LLC**
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

<u>EXHIBIT A</u>

<u>EXPENSE REIMBURSEMENT POLICY</u>

98719815v5

FOMB
August 2, 2018

**Financial Oversight and Management Board for Puerto Rico**
*June 30, 2017*

**Expense Reimbursement Policy**

**1. Introduction**

The Board of Members of the Financial Oversight and Management Board for Puerto Rico ("the Board") recognizes that board members, officers, staff, and contractors* of the Board may be required to travel or incur in other expenses from time to time to conduct Board business.
The Reimbursed Expenses Policy (the "Policy") is designed to govern the reimbursement of reasonable, defined expenses incurred on authorized Board activities. Consequently all reimbursed expenses must be consistent with a business objective and carried out in a timely and cost-effective manner.
This Policy applies to board members, officers, staff, and contractors* who incur authorized and approved travel and other expense items in the context of the Board's business. While exceptions are not normally permitted, there is clear recognition of certain special business needs. In any such exceptional situations, all board members, officers, staff, and contractors* are expected to apply a high degree of common sense and good judgment.

**2. Purpose of the Policy**

The purpose of this policy is to ensure that (a) adequate cost controls are in place, (b) travel and other expenditures are appropriate, and (c) to provide a uniform and consistent approach for the timely reimbursement of authorized expenses incurred by the Board. It is the policy of the Board to reimburse only reasonable and necessary expenses incurred by board members, officers, staff, and contractors.

**3. Principles of the Policy**

The Policy aims to provide a flexible framework for travel and other expenses based on the following principles:

**3.1**     This Policy applies to board members, officers, staff, and contractors* undertaking travel other expenses on Board business and for the purposes of this Policy, the term "staff" shall mean employees of the Board.

**3.2**     It is the responsibility of board members, officers, staff, and contractors* to ensure the selection of the most direct and economical travel options and that all expenses are attributable to a valid Board business purpose.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

A-1

98719815v5

FOMB
August 2, 2018

**3.3**    Board members, officers, staff, and contractors* shall be entitled to reimbursement of
expenses on production of supporting vouchers and invoices meeting the requirements of an
"Accountable Plan" provided under Regulation No. 8297 dated December 18, 2012 issued by
the Puerto Rico Department of Treasury. No expense reimbursement will be allowed for
amounts in excess of actual expenditures incurred. No expense reimbursement will be
allowed for estimates of expenditures incurred. This includes coach-class airfare or train fare
(or business class train fare if rates are comparable); and hotels and transportation (e.g. taxis).

**3.4**    It is the responsibility of the Board members, officers, staff, and contractors* to obtain travel
authorization from the Chairman of the Board, the Executive Director or Authorized
Representative prior to organizing or incurring any travel costs [See Appendix A for
Authorization Authority]. Expense reimbursement is subject to having received prior
authorization. Exceptions shall be made under the consideration of the Chairman, Executive
Director or Authorized Representative.

**3.5**    The use of video and telephone conferencing instead of travel should always be considered to
reduce travel expenses.

## 4. Travel Expenses

### 4.1 Air Travel

**4.1.1**    Costs for air travel will be reimbursed on an actual cost incurred basis.

**4.1.2**    For all flights, board members, officers, staff, and contractors* are required to travel in a
cabin class no higher than premium economy class and, when possible, the cheapest fare in
this class.

**4.1.3**    Flights should be booked to provide the best value/lowest cost and fit between cost and
convenience. Board staff shall book flights through the Board's Executive Assistant. Board
members may book flights through the Board's Executive Assistant or independently. Board
contractors must book flights independently, though they are allowed to consult the Board's
Executive Assistant on fares the board members, officers, and staff are using.

**4.1.4**    The Board will not reimburse costs incurred due to deviations from the most direct routes
taken for personal travel reasons. In such cases, if the Board purchased the ticket, the traveler
must reimburse the Board for any additional costs over and above the authorized travel.

**4.1.5**    Any alteration to original travel plans must be justified and approved in accordance with the
Policy.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

98719815v5

FOMB
August 2, 2018

## 4.2 Train Travel

**4.2.1**   The Board may reimburse travelers for their economy train fares or business class train fares when those fares are comparable to the equivalent, economy class airfare on the same route.

**4.2.2**   Board staff shall book trains through the Board's Executive Assistant. Board Members may book trains through the Board's Executive Assistant or independently. Board contractors must book trains independently, though they are allowed to consult the Board's Executive Assistant on fares the board members, officers, and staff are using.

## 4.3 Hotels and Lodging

**4.3.1**   Accommodation costs may be reimbursed by the Board. Board members, officers, staff, and contractors should not exceed cost of accommodation per night published in the U.S. Government GSA Per Diem Rates (https://www.gsa.gov/perdiem), unless approved by the Chairman or his authorized representative.

**4.3.2**   Board staff shall book hotels through the Board's Executive Assistant. Board members may book hotels through the Board's Executive Assistant or independently. Board contractors must book hotels independently, though they are allowed to consult the Board's Executive Assistant on fares the Board members, officers, and staff are using.

## 4.4 Transportation

**4.4.1**   Transportation costs during trips associated to Board business will be reimbursed. Board members, officers, and staff* can expense the following transportation costs: 1) transportation to and from the airport / train station and 2) transportation to and from the meeting location. Transportation costs cover taxi services or equivalent (e.g. Uber, Lyft or any other transportation means).

## 4.5 Business Meals

**4.5.1**   When travelling to a location other than the Board members, officers, staff, and contractors'* local city, business meals are reimbursable based on the following limits:

- Breakfast: $15; Lunch: $25; Dinner: $40
- Snack expenses are reimbursable when they replace a meal.

**4.5.2**   If meals are provided during the meeting, only meals not provided can be expensed.

## 5. Other Expenses

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

A-3

98719815v5

FOMB
August 2, 2018

**5.1**    Other expenses are reimbursable provided they are legitimate, necessary and reasonable expenses directly connected with or pertaining to the Board, such as office supplies, printing and reproduction, telephone calls, and messengers, among other.

## 6. Reimbursement of Expense

**6.1**    Travel arrangements are authorized in advance through the completion and approval of a travel authorization email and the validation of a travel plan between the traveler and the designated approver [See Appendix A].

**6.2**    Expenses are reimbursed through the completion, approval, and validation of expense report [See Appendix B] that the members, officers, and staff must submit to the designated approver [See Appendix C].

**6.3**    Expense claims should be submitted immediately following and, where possible, no more than 10 days after the completion of each trip, but at least a monthly.

**6.4**    In rare circumstances, and on an exceptional basis, reimbursement in excess of stated limits may be provided when lodging options are not available below. In such rare circumstances, the need for higher reimbursement shall be indicated on the attached reimbursement form and justified in writing by the members, officers, and staff. Reimbursement will be limited to the following:

- Lodging: average rate for available 3-star hotels listed for the applicable metropolitan area on Expedia;

The Chairman of the Board or his authorized representative will have sole discretion to approve or deny such expenditures.

**6.5**    Receipts are required for all expenditures billed, such as airfare and hotel charges. No expense in excess of $25.00 will be reimbursed to Board members, officers, staff and contractors unless the individual requesting reimbursement submits with the Expense Report written itemized receipts from each vendor (not a credit card receipt or statement) showing the vendor's name, a description of the services provided (if not otherwise obvious), the date, and the total expenses. If a receipt is not available, a full explanation of the expense and the reason for the missing receipt is required.

**6.6**    Alcoholic beverages will not be reimbursed under any circumstance.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

A-4

98719815v5

FOMB
August 2, 2018

APPENDIX A: Authorization Authority

| Expense to be Incurred By: | Authorization From: |
| --- | --- |
| Board Member | Chairman or Authorized Representative |
| Board Staff | Executive Director or Authorized Representative |
| Board Contractors | Executive Director or Authorized Representative |
| Executive Director | Chairman or Authorized Representative |
| Chairman | N/A |

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

A-5

98719815v5

FOMB
August 2, 2018

**APPENDIX B: Expense Report**

**Financial Management and Oversight Board for Puerto Rico**

*To be completed by* members, officers, and staff *and submitted to designated approver*

| DATE | DESCRIPTION | AIR FARE | GROUND FARE | HOTEL | MEALS | OTHER | TOTAL (1) |
|------|-------------|----------|-------------|-------|-------|-------|-----------|
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
|      |             |          |             |       |       |       | $    -    |
| Total |            | $    -   | $    -      | $    -| $    -| $    -| $    -    |

Signature: _____     Date: _____
Approved by: _____     Date: _____
(1) SUBMIT RECEIPTS FOR THE AMOUNTS TO BE REIMBURSED

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

A-6

98719815v5

FOMB
August 2, 2018

**APPENDIX C: Expense Report Approval Authority**

| Expense Incurred By: | Expense Approved By: |
|---|---|
| Board Member | Chairman or Authorized Representative |
| Board Personnel | Executive Director or Authorized Representative |
| Board Advisors | Executive Director or Authorized Representative |
| Executive Director | Chairman or Authorized Representative |
| Chairman | Executive Director or Authorized Representative |

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

A-7

**Alvarez & Marsal North America, LLC**
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

A
&
M

EXHIBIT B

VENDOR/CONSULTANT/REPRESENTATIVE CODE OF CONDUCT

98719815v5

FOMB
August 2, 2018

<u>EXHIBIT B</u>

**<u>VENDOR/CONSULTANT/REPRESENTATIVE CODE OF CONDUCT</u>**

The Financial Oversight and Management Board for Puerto Rico (the "Board") is committed to ethical and lawful behavior, and to acting professionally and fairly in all of its business dealings and relationships.  The Board seeks to maintain high ethical standards and to comply with all applicable laws and regulations.  The Board expects its vendors, consultants, and representatives to embrace this commitment to ethical and lawful behavior by complying with and training its employees on the Board's Vendor Code of Conduct.  The Board also expects its vendors to have their own codes of conduct that ensure ethical business conduct and practices.

**I.     <u>Compliance with the Vendor Code of Conduct</u>**

All vendors, consultants, and representatives and their employees, agents, and subcontractors (collectively referred to as "Vendors") must adhere to this Code of Conduct while conducting business with or on behalf of the Board.  Vendors must promptly inform the Executive Director, the General Counsel, or a member of the Board when any situation develops that causes, or may cause, the Vendor to violate any provision of this Code of Conduct.  Although Vendors are expected to self-monitor and demonstrate their compliance with this Code of Conduct, the Board may audit Vendors and/or inspect Vendors' facilities and records to confirm compliance.

The Board may require the immediate removal from any project or engagement of any Vendor representative(s) or personnel who behave in a manner that is unlawful or inconsistent with this Code of Conduct or any Board policy.  Compliance with this Code of Conduct, as well as attendance at any training on this Code of Conduct as may be offered by the Board, is required in addition to any other contractual obligations a Vendor may have to the Board.

**II.     <u>Legal and Regulatory Compliance Practices</u>**

Vendors must conduct their business activities on behalf of the Board in full compliance with the letter and spirit of all applicable laws and regulations.

- **Anti-Corruption**.  The Board takes a zero-tolerance approach to bribery and corruption, and it requires its Vendors to do the same.  Vendors must not participate in bribes or kickbacks of any kind, whether in dealings with the Board, government and public officials, or individuals in the private sector.  Vendors must also comply with all applicable anti-corruption and anti-money laundering laws, as well as laws governing gifts and payments to public officials, political campaign contribution and lobbying laws, and other related regulations.  In particular, Vendors must not:

  - Offer, promise, or allow anything of value (including travel, gifts, hospitality expenses, and charitable donations) to be given on behalf of the Board to influence a business or government decision, gain an improper advantage, or otherwise improperly promote the interests of the Board in any respect;

B-1

98719815v5

FOMB
August 2, 2018

> o  Offer, promise, or allow anything of value to be given to a Board member or
>    employee to influence a Board decision or otherwise gain an improper advantage;
>    or
>
> o  Ask for or accept anything of value which the Vendor knows or suspects is being
>    offered to influence a Board decision or otherwise obtain an improper advantage
>    in connection with the Vendor's work with or on behalf of the Board.

- **Antitrust/Fair Business Practices**.  Vendors must conduct their business in full
  compliance with antitrust and fair competition laws that govern the jurisdictions in which
  they conduct business.  Vendors must also uphold all standards of fair dealing and abide
  by all fair business practices, including truthful and accurate advertising.

- **Trade**.  Vendors shall comply with all applicable trade controls, as well as any applicable
  export, re-export, and import laws and regulations.  Vendors must not knowingly employ
  or do business with anyone reasonably suspected of being connected with criminal or
  terrorist activities or who is otherwise subject to applicable trade sanctions.

- **Freedom from Unlawful Harassment and Discrimination.**  Vendors shall provide a
  workplace free from harassment and/or discrimination in hiring, compensation, access to
  training, promotion, termination, and/or retirement on the basis of race, color, creed,
  religion, sex, gender identity or expression, sexual orientation, pregnancy, status as a
  parent, age, marital status, national origin, ancestry, citizenship status, physical or mental
  disability or serious medical condition, protected genetic information, political beliefs,
  status as a veteran, or any other characteristic protected by law.  Vendors shall further
  prohibit any form of reprisal or retaliation against any employee for reporting harassment
  or discrimination in good faith or for participating in good faith in a harassment or
  discrimination investigation.

- **Wages, Benefits and Working Hours**.  Vendors must comply with local applicable laws
  regarding wages, overtime hours and mandated benefits.  Vendors must also
  communicate with workers about compensation, including any overtime pay, in a timely
  and honest manner.

- **Freely Chosen Employment**.  No Vendor shall use any form of indentured, slave, or
  forced labor, including involuntary prison labor.  Vendors are also prohibited from
  supporting or engaging in any form of human trafficking of involuntary labor through
  threat, force, fraudulent claims, or other coercion.

- **Child Labor**.  Vendors shall comply with all local and national minimum working age
  laws or regulations and not use child labor.  All employees shall be age 18 and over
  unless:  (i) a country's legal age for employment or age for completing compulsory
  education is under 18; and (ii) the work is non-hazardous.

## III.   <u>Business Practices and Ethics</u>

Vendors must conduct their business interactions and activities with integrity.

B-2

FOMB
August 2, 2018

- **Honesty and Integrity**.  Vendors must at all times be honest, direct, and truthful in discussions with the Board, its staff and agents, regulatory agency representatives, and government officials.

- **Business and Financial Records**.  The Board expects Vendors to timely, honestly, and accurately record and report all business information, including without limitation any invoices for payment, and comply with all applicable laws regarding their creation, completion, accuracy, retention, and disposal.  All invoices must be (i) timely submitted, (ii) itemized, (iii) supported by appropriate documentation, and (iv) must comply with all other requirements as set out in the relevant contract(s).

**Conflicts of Interest**.  Vendors shall scrupulously avoid any conflict, real or perceived, direct or indirect, between their own individual, professional, or business interests and the interests of the Board.  Among other things, Vendors must not deal directly with any Board member or *ex officio* member or employee whose spouse, domestic partner, or other family member or relative is

- associated with and/or holds any ownership or other financial interest in the Vendor.  In the course of negotiating the Vendor agreement or performing the Vendor's obligations, dealing directly with a Vendor personnel's spouse, domestic partner, or other family member or relative employed by the Board is also prohibited.  Complying with this requirement includes, but is not limited to, each Vendor's completion of the Vendor Conflict of Interest Disclosure Certification attached as **Appendix A** hereto.

- **Gifts and Entertainment**.  Vendors should avoid any actions with Board members or *ex officio* members or employees during any vendor selection or re-selection process that could give others the impression of favoritism or other improper advantage.  Furthermore, Vendors should not offer, and Board members, *ex officio* members, and employees must not accept, gifts or entertainment that might compromise, or appear to compromise, the Board member or employee's judgment or independence.  Even a well-intentioned gift might constitute or be perceived to be a bribe under certain circumstances, or create a conflict of interest or the appearance of a conflict of interest. Board employees are required to conduct all business and interactions with Vendors in strict compliance with the applicable provisions of the Board's business ethics and conflict of interest policies.

- **Confidentiality, Privacy and Data Security**.  Vendors shall, at all times while they are engaged by the Board and thereafter, (i) hold all proprietary and confidential information of the Board in strictest confidence, (ii) not use or disclose for any purpose any proprietary and confidential information of the Board to any person, business or entity, except as specifically authorized in writing by the Board, and (iii) not disclose for any purpose any non-public information concerning their retention by the Board or their services for the Board, except as specifically authorized in writing by the Board. Vendors shall abide by all Board requirements and procedures for protecting the proprietary and confidential information of the Board, including signing and abiding by the Board's confidentiality agreements.  Vendors who handle proprietary and confidential information on behalf of the Board or belonging to the Board must apply and maintain

B-3

FOMB
August 2, 2018

sufficient privacy and information security safeguards.  Vendors shall also be subject to an information and data security assessment.

- **Media**.  Vendors are prohibited from speaking to the press or making any public statements, oral or written, concerning their work for or on behalf of the Board without the express written authorization of the Board.

- **Reporting Concerns**.  Vendors shall maintain a hotline or other reporting system for their workers to confidentially and anonymously report any information or concerns about suspected non-compliance or violations of law or improper conduct by any Vendor employee or agent without threat of reprisal, intimidation or harassment.  If concerns are reported, Vendors shall promptly and thoroughly investigate any such report and take corrective action as necessary and appropriate.

I certify by my signature below that I have received and reviewed, and am authorized on Vendor's behalf to agree that Vendor shall abide by this Code of Conduct:

Vendor Name:  Alvarez & Marsal North America, LLC

*Julie M. Hertzberg*
Signature of Vendor Authorized Representative

8-3-18
Date

Julie M. Hertzberg, Managing Director
Printed Name and Title of Vendor Authorized Representative

B-4

**Alvarez & Marsal North America, LLC**
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

## EXHIBIT C

## VENDOR CONFLICT OF INTEREST DISCLOSURE CERTIFICATION

98719815v5

FOMB
August 2, 2018

## <u>VENDOR CONFLICT OF INTEREST DISCLOSURE CERTIFICATION</u>

All vendors, consultants, and or experts ("Vendors") interested in conducting business with the Financial Oversight and Management Board for Puerto Rico (the "Board") must complete and return this Vendor Conflict of Interest Disclosure Form to be eligible for a contract award. Disclosing a potential conflict of interest will not automatically disqualify the Vendor.  The potential conflict of interest will be investigated to determine whether it precludes the contract award.  In the event, however, that the Vendor does not disclose potential conflicts of interest and they are discovered by the Board, the Vendor will be barred from doing business with the Board.

Please note that all Vendors must comply with the Board's Vendor Code of Conduct as stated within the certification section below.

<u>**No Conflict of Interest**</u>:  Except as otherwise fully disclosed below (attach additional pages as needed), the Vendor affirms, to the best of its knowledge, information and belief, that no Interested Party (as defined in <u>Schedule A</u> hereto), nor any person associated with any Interested Party, is an employee, Director or Trustee, Officer or consultant to/of, or has any financial interest, direct or indirect, in the Vendor, or has received or will receive any financial benefit, directly or indirectly, from the Vendor or from the contract associated with this certification.

For the purposes of this certification, "associated" persons include:  a spouse, domestic partner, child, parent or sibling of an Interested Party; a person with whom an Interested Party has a business or other financial relationship, including but not limited to employees of an Interested Party and/or a spouse, domestic partner, child, parent or sibling of such employees; and each firm in which an Interested Party has a present or potential interest

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 1 | Is any Interested Party, or any person associated with any Interested Party, associated with any employee, Director or Trustee, Officer or consultant to/of the Vendor? | | x |
| If you answered "yes" to Question 1, please identify the names of the persons who are associated and describe the nature of their association below: | | | |
| No. | To the best of your knowledge: | YES | NO |

C-1

98719815v5

FOMB
August 2, 2018

| 2 | Does any Interested Party, or any person associated with an Interested Party, have an ownership interest in the Vendor's company? | | x |
|---|---|---|---|

| If you answered "yes" to Question 2, please identify the name(s) of the person(s) who has/have such an ownership interest and describe the nature of the interest: |
|---|
| |

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 3 | Has any Interested Party, or any person associated with an Interested Party, received, or will any Interested Party, or any person associated with an Interested Party receive, a financial benefit from the Vendor or from this contract? | | x |

| If you answered "yes" to Question 3, please identify the name(s) of the person(s) who have received or will receive such a financial benefit and describe the nature of the benefit below: |
|---|
| |

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 4 | Is any Interested Party, or any person associated with an Interested Party, contemporaneously employed or prospectively to be employed with the Vendor? | | x |

| If you answered "yes" to Question 4, please identify the name(s) and title(s) of the person(s) who are or will be so employed below: |
|---|
| |

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|

C-2

FOMB
August 2, 2018

| 5 | Is any Interested Party, or any person associated with an Interested Party, acting as a consultant for the Vendor? | | x |
|---|---|---|---|
| If you answered "yes" to Question 5, please identify the name(s) of the person(s) acting as a consultant and describe the nature of his/her/their consulting services below: | | | |

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 6 | Has the Vendor provided, or will the Vendor provide, any gifts or hospitality of any dollar value or any other gratuities to any Interested Party or elected official to obtain or maintain a contract? | | x |
| If you answered "yes" to Question 6, please describe the nature of such gifts, hospitality, or other gratuities below, including (1) the recipient(s) of such gifts, hospitality, or other gratuities; (2) the date(s) on which such gifts, hospitality or other gratuities were provided; and (3) the exact (if possible) or approximate dollar value of such gifts, hospitality, or other gratuities: | | | |

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 7 | Has any Interested Party, or any person associated with an Interested Party, provided any gifts of any dollar value or any other gratuities to Vendor? | | x |
| If you answered "yes" to Question 7, please describe the nature of such gifts, hospitality, or other gratuities below, including (1) the recipient(s) of such gifts, hospitality, or other gratuities; (2) the date(s) on which such gifts, hospitality or other gratuities were provided; and (3) the exact (if possible) or approximate dollar value of such gifts, hospitality, or other gratuities: | | | |

C-3

98719815v5

FOMB
August 2, 2018

I certify that the information provided is true and correct by my signature below:


*Julie M. Hertzberg*
Signature of Vendor Authorized Representative

8-3-18
Date


Julie M. Hertzberg, Managing Director
Printed Name of Vendor Authorized Representative

C-4

98719815v5

FOMB
August 2, 2018

## <u>SCHEDULE A</u>

For purposes of the Financial Oversight and Management Board for Puerto Rico (the ("<u>Board</u>")'s
Vendor Conflict of Interest Disclosure Certification, the following entities and individuals are
Interested Parties:

Natalie Jaresko, Executive Director of the Board

Noel Zamot, Revitalization Coordinator

Jaime A. El Koury, General Counsel of the Board

Andrew G. Biggs, Member of the Board

Jose B. Carrión III, Member of the Board

Carlos M. Garcia, Member of the Board

Arthur J. Gonzalez, Member of the Board

José R. González, Member of the Board

Gov. Ricardo Rosselló Nevares, Ex-Officio Member of the Board

Ana J. Matosantos, Member of the Board

David A. Skeel Jr., Member of the Board

Elías Sánchez Sifonte, Former Ex-Officio Member of the Board as representative of the
Governor

Christian Sobrino Vega, Ex-Officio Member of the Board as representative of the Governor

Commonwealth of Puerto Rico (Primary Government)

 9-1-1 Service Governing Board

Additional (Electronic) Lottery

Agricultural Enterprises Development Administration

Automobile Accidents Compensation Administration

Cardiovascular Center Corporation of Puerto Rico and the Caribbean

Commonwealth of Puerto Rico Regional Center Corporation

Company for the Integral Development of the "Península de Cantera"

C-5

98719815v5

FOMB
August 2, 2018

Corporation for the "Caño Martin Peña" Project (ENLACE)

Corporation of Industries for the Blind and Mentally Retarded and Incapacitated Persons of
Puerto Rico

Culebra Conservation and Development Authority

Economic Development Bank for Puerto Rico

Employees' Retirement System (ERS)

Employment and Training Enterprises Corporation

Farm Insurance Corporation of Puerto Rico

Fine Arts Center Corporation

Fiscal Agency and Financial Advisory Authority (AAFAF)

Governmental Development Bank for PR (GDB)

Institute of Puerto Rican Culture

Institutional Trust of the National Guard of Puerto Rico

 Judiciary Retirement System (JRS)

Land Authority of Puerto Rico

Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads

Model Forest

Municipal Revenue Collection Center (CRIM)

Musical Arts Corporation

Port of the Americas Authority

PR Aqueduct and Sewer Authority (PRASA)

PR Electric Power Authority (PREPA)

PR Highways and Transportation Authority (HTA)

PR Infrastructure Finance Authority (PRIFA)

PR Maritime Shipping Authority

98719815v5

FOMB
August 2, 2018

PR Medical Services Administration (ASEM)

PR Sales Tax Financing Corporation (COFINA)

Public Building Authority (PBA)

Public Corporation for the Supervision and Deposit Insurance of Puerto Rico Cooperatives
(COSSEC)

Puerto Rico and Municipal Islands Transport Authority

Puerto Rico Conservatory of Music Corporation

Puerto Rico Convention Center District Authority (PRCCDA)

Puerto Rico Council on Education

Puerto Rico Health Insurance Administration (HIA / ASES)

Puerto Rico Industrial Development Company (PRIDCO)

Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities
Financing Authority (AFICA)

Puerto Rico Integrated Transit Authority (PRITA)

Puerto Rico Land Administration

Puerto Rico Metropolitan Bus Authority (AMA)

Puerto Rico Municipal Finance Agency (MFA)

Puerto Rico Ports Authority

Puerto Rico Public Broadcasting Corporation

Puerto Rico Public Private Partnerships Authority (PPP)

Puerto Rico School of Plastic Arts

Puerto Rico Telephone Authority

Puerto Rico Tourism Company

Puerto Rico Trade and Export Company

Solid Waste Authority

98719815v5

FOMB
August 2, 2018

Special Communities Perpetual Trust

State Insurance Fund Corporation (SIF)

Teachers' Retirement System (TRS)

The Children's Trust Fund (CTF)

Traditional Lottery

Unemployment Insurance Fund

University of Puerto Rico (UPR)

University of Puerto Rico Comprehensive Cancer Center

C-8

98719815v5

**Alvarez & Marsal North America, LLC**
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

## EXHIBIT D

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

98719815v5

FOMB
August 2, 2018

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of the engagement letter, dated  August 2, 2018 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement"), by and between Alvarez & Marsal North America, LLC ("A&M") and the Financial Oversight and Management Board of Puerto Rico (the "Oversight Board") in its role as representative for the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of the Commonwealth of Puerto Rico, as debtors under Title III of the Puerto Rico Oversight, Management and Economic Stability Act of 2016, for services to be rendered to the Oversight Board by A&M.

The Oversight Board agrees to indemnify and hold harmless each of A&M, its affiliates and their respective managers, employees, agents, and representatives (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, obligations and expenses, which any Indemnified Party may cause to become subject to: (i) related to or arising out of (A) the contents of oral or written information provided by the Oversight Board or its employees or its other agents or (B) any other action or failure to act by the Oversight Board, its employees or its other agents, or by A&M or any Indemnified Party in accordance with and at the Oversight Board's or its agents' request or with the Oversight Board's express written consent (ii) otherwise related to or arising out of the engagement, except that clauses (i) and (ii) shall not apply with respect to any losses to the extent such losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such Indemnified Party or result from a claim brought by the Oversight Board against an Indemnified Party for breach of such Indemnified Party's obligations hereunder, if the Oversight Board has obtained a final and non-appealable judgment in its favor on such claim as determined by a court of competent jurisdiction.  The Oversight Board further agrees that no Indemnified Party shall have any liability (whether direct or indirect in contract or tort or otherwise to the Oversight Board, the Commonwealth, the Title III Entities or any of the Commonwealth's creditors for or in connection with the engagement or other conduct in connection therewith except for losses incurred by the Oversight Board to the extent such losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such Indemnified Party; provided, however, that the foregoing shall in no manner relieve or excuse A&M from any liability arising from any breach by A&M of the Agreement. In no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement or for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).

The Oversight Board will also promptly reimburse each Indemnified Party for all reasonable and documented expenses (including reasonable fees and expenses of outside counsel, which shall be limited to the fees and expenses of one counsel in each relevant jurisdiction) as they are incurred by such Indemnified Party in connection with investigating, preparing for, defending, or providing evidence in any pending or threatened claim or proceeding in respect of which indemnification or contribution may be sought hereunder.

D-1

98719815v5

FOMB
August 2, 2018

The foregoing provisions are in addition to any rights any Indemnified Party may have at common law or otherwise and shall be binding on and inure to the benefit of any successors, assigns, and personal representatives of the Oversight Board and each Indemnified Party. **ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY/CLAIM OR PROCEEDING ARISING HEREUNDER IS WAIVED**. The provisions of this Indemnification and Limitation on Liability Agreement shall remain in full force and effect notwithstanding (i) any investigation made by or on behalf of A&M or (ii) the completion or termination of the engagement.

Notwithstanding any provision in this Indemnification and Limitation on Liability Agreement or the Agreement to the contrary, A&M agrees that all amounts which may become due and owing to any Indemnified Party pursuant to the terms of this Indemnification and Limitation on Liability Agreement shall be the sole responsibility of the Title III Entities and that the Oversight Board shall have no payment obligation in connection therewith.

ALVAREZ & MARSAL NORTH AMERICA, LLC

By: _Julie M. Hertzberg_
    Name: Julie M. Hertzberg
    Title: Managing Director

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO

By: _____
    Name: Jose B. Carrion
    Title: Chairman

D-2

98719815v5