# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　　　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**NOTICE OF CORRESPONDENCE REGARDING THE THREE HUNDRED FORTY-SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, AND THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO MISCLASSIFIED AND OVERSTATED CLAIMS[2]**

To the Honorable United States District Judge Laura Taylor Swain:

　　1.　　On June 18, 2021, the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement

---

[1]　　The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]　　Pursuant to the Court's *Order Directing Redacted Filings* [ECF No. 19781], the Debtors hereby re-file the above-captioned notice of correspondence, originally filed on January 5, 2022 [ECF No. 19681], with exhibits redacted for personally identifiable information, where necessary.

System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Debtors pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] filed the *Three Hundred Forty-Seventh Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority, and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Misclassified and Overstated Claims* [ECF No. 17109] (the "Three Hundred Forty-Seventh Omnibus Objection") to various proofs of claim.

        2.      On June 18, 2021, the Debtors filed the Three Hundred Forty-Seventh Omnibus Objection seeking to reclassify and reduce certain claims that assert an incorrect or improper classification and that, as a result of the manner in which Prime Clerk, LLC, records and logs proofs of claim, are overstated on the claims registry in the Title III Cases (the "Claims to Be Reclassified and Reduced"). As explained in the Three Hundred Forty-Seventh Omnibus Objection, the Claims to Be Reclassified and Reduced incorrectly or improperly assert that they are secured and/or that they are entitled to administrative expense priority pursuant to 11 U.S.C. § 503(b)(9). However, upon a reasonable review of the Claims to Be Reclassified and Reduced and the Debtors' books and records, the Debtors have concluded that the Claims to Be Reclassified and Reduced are not entitled to either administrative expense priority or secured status, and should appropriately be classified as general unsecured claims. In addition, each of the Claims to Be Reclassified and Reduced are recorded on the Title III claims registry as asserting double or triple the actual liabilities asserted in the proof of claim, as demonstrated by the total amount identified

---

[3]     PROMESA is codified at 48 U.S.C. §§ 2101-2241.

by the applicable claimant in Box 8 of the proof of claim form.

3. The Debtors have received correspondence from:

i. Ivelisse Navarro Cancel ("Navarro Cancel"), a copy of which is attached hereto as Exhibit "A" (the "Navarro Cancel Response"), regarding Proof of Claim No. 28171 (the "Navarro Cancel Claim");

ii. Eduardo Vélez Crespo ("Vélez Crespo"), a copy of which is attached hereto as Exhibit "B" (the "Vélez Crespo Response," and together with the Navarro Cancel Response, the "Responses"), regarding Proof of Claim No. 27235 (the "Vélez Crespo Claim," and together with the Navarro Cancel Claim, the "Claims").

Certified English translations of the Navarro Cancel Response and Vélez Crespo Response are attached hereto as Exhibits "A-1" and "B-1," respectively.

**I.  The Navarro Cancel Response**

4. The Navarro Cancel Claim asserts liabilities in the amount of $204,600, purportedly arising out of a litigation captioned *Madeline Acevedo Camacho, et al. v. Department of the Family*, Case No. 2016-05-1340 (the "Acevedo Camacho Litigation"). The Navarro Cancel Claim also asserts that it is secured and entitled to administrative expense priority pursuant to 11 U.S.C. § 503(b)(9). As set forth in the Three Hundred Forty-Seventh Omnibus Objection, only creditors who sold goods to the Debtors within twenty (20) days of commencement of the Debtors' Title III Cases[4] are entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9).

5. In addition, the Navarro Cancel Claim asserts in Box 8 of the proof of claim form that the total amount of the claim is $204,600. However, because this value was also entered in Box 10 (which allows claimants to specify the amount of their claim asserted to be secured) and in Box 13 (which allows claimants to specify the amount of their claim asserted to be entitled to administrative expense priority), the Navarro Cancel Claim is recorded on the Title III claims

---

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Three Hundred Forty-Seventh Omnibus Objection.

3

registry as asserting a total amount of $613,800.

6. The Navarro Cancel Response consists of a letter which contends that ERS used employees' retirement contributions to pay creditors, "without any prior notice and without authorization or consent, in gross violation and to the detriment of public employees, rendering said System inoperative." Navarro Cancel Response at 1. The Navarro Cancel Response attaches, among other things, the Navarro Cancel Claim and certain pages from the Three Hundred Forty-Seventh Omnibus Objection.

7. The Navarro Cancel Response does not address the Debtors' contentions that the Navarro Cancel Claim is (*i*) misclassified as a secured claim that is entitled to administrative expense priority, and (*ii*) overstated on the Title III claims registry. The Navarro Cancel Response does not allege that Navarro Cancel sold goods to the Commonwealth within the statutorily prescribed time frame. Nor does the Navarro Cancel Response assert any other basis entitling the Navarro Cancel Claim to either secured status or administrative expense priority. Further, the Navarro Cancel Response does not contend that the Navarro Cancel Claim intended to assert $613,800, rather than the $204,600 asserted in Box 8 of the proof of claim form. Because the Navarro Cancel Response does not provide a basis entitling the Navarro Cancel Claim to administrative expense priority or secured status, the Navarro Cancel Claim should be reclassified as a general unsecured claim. In addition, the Navarro Cancel Claim should be reduced so that it asserts only $204,600 on the Title III claims registry. The Debtors reserve their right to object to the Navarro Cancel Claim on any other basis whatsoever.

## II. The Vélez Crespo Response

8. The Vélez Crespo Claim asserts liabilities in the amount of $180,000, purportedly arising out of the Acevedo Camacho Litigation. The Vélez Crespo Claim also asserts that it is secured and entitled to administrative expense priority pursuant to 11 U.S.C. § 503(b)(9), which,

4

as set forth above and in the Three Hundred Forty-Seventh Omnibus Objection, is only available to creditors who sold goods to the Debtors within twenty (20) days of commencement of the Debtors' Title III Cases.

9. In addition, the Vélez Crespo Claim asserts in Box 8 of the proof of claim form that the total amount of the claim is $180,000. However, because this value was also entered in Box 10 (which allows claimants to specify the amount of their claim asserted to be secured) and in Box 13 (which allows claimants to specify the amount of their claim asserted to be entitled to administrative expense priority), the Vélez Crespo Claim is recorded on the Title III claims registry as asserting a total amount of $360,000.

10. The Vélez Crespo Response consists of a letter which contends that ERS used employees' retirement contributions to pay creditors, "without any prior notice and without authorization or consent, in gross violation and to the detriment of public employees, rendering said System inoperative." Vélez Crespo Response at 1. The Vélez Crespo Response attaches, among other things, two copies of the Vélez Crespo Claim as well as certain pages from the Three Hundred Forty-Seventh Omnibus Objection.

11. The Vélez Crespo Response does not address the Debtors' contentions that the Vélez Crespo Claim is (*i*) misclassified as a secured claim that is entitled to administrative expense priority, and (*ii*) overstated on the Title III claims registry. The Vélez Crespo Response does not allege that Vélez Crespo sold goods to the Commonwealth within the statutorily prescribed time frame. Nor does the Vélez Crespo Response assert any other basis entitling the Vélez Crespo Claim to either secured status or administrative expense priority. Further, the Vélez Crespo Response does not contend that the Vélez Crespo Claim intended to assert $360,000, rather than the $180,000 asserted in Box 8 of the proof of claim form. Because the Vélez Crespo Response

5

does not provide a basis entitling the Vélez Crespo Claim to administrative expense priority or secured status, the Vélez Crespo Claim should be reclassified as a general unsecured claim. In addition, the Vélez Crespo Claim should be reduced so that it asserts only $180,000 on the Title III claims registry. The Debtors reserve their right to object to the Vélez Crespo Claim on any other basis whatsoever.

12. Accordingly, the Debtors respectfully request that the Court grant the Three Hundred Forty-Seventh Omnibus Objection and reclassify the Claims as general unsecured claims in a reduced amount, notwithstanding the Responses.

Dated: January 5, 2022
San Juan, Puerto Rico

Respectfully submitted,

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth, HTA, and ERS*

/s/ Brian S. Rosen
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Co-Attorneys for the Financial Oversight and Management Board for the Puerto Rico, as representative for the Commonwealth, HTA, and ERS*