**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>Debtors. | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**RAMHIL DEVELOPERS INC.'s OBJECTION TO DOCKET NO. 19353 AND INFORMING CURE AMOUNTS FOR EXECUTORY CONTRACTS OR UNEXPIRED LEASES TO BE ASSUMED PURSUANT TO TITLE III PLAN OF ADJUSTMENT**

To the Honorable United States District Court Judge Laura Taylor Swain:

COMES NOW Ramhil Developers, Inc., represented by the undersigned attorneys, and very respectfully avers and prays as follows:

### I.     Procedural Background

1.     On November 23, 2021, the Financial Oversight and Management Board (the "FOMB"), as sole Title III representative of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority (collectively, the "Debtors") filed a motion titled "Notice of Executory Contracts and Unexpired Leases to be Assume Pursuant to Title III Plan of Adjustment" (Dkt. #19353) (the "Motion to Assume"). According to the Motion to Assume, objections were set for December 13, 2021, at 5:00 p.m.

2.     In the Motion to Assume, Debtors listed in page 25 of Exhibit A (the "Schedule"), Contract No. 2011-00244 with lessor Ramhil Developers, Inc., as one of the contracts to be assumed. (Dkt. #19353).

3. Lease Agreement No. 2011-00244 ("Lease Agreement") is a **Commercial Lease and a Conditional Sale Agreement effective on May 27, 2011,** to be executed for a period of **thirty (30) years**, for a commercial property with an approximate surface area of 29,301.2377 square meters, encompassing two buildings which house the Caguas Judicial Center (the "Leased Property"). (**Exhibit 1**). The Lease Agreement was entered between the Office of Court's Administration of Puerto Rico (the "OCA") and Ramhil Developers, Inc., ("Ramhil"), a corporation organized and existing under the laws of Puerto Rico. The Leased Property is located at State Road PR#1, Corner with State Road PR #189, Bairoa Borough in the Municipality of Caguas, Puerto Rico. (*Id.*, p. 3).

4. The Leased Property is used by the OCA to house the Caguas Judicial Center and was developed and build pursuant to a *Development Contract and Lease Agreement of the New Caguas Judicial Center*, dated December 6, 2010, entered by and between the OCA and Ramhil (the "Development Agreement"). (**Exhibit 2**). The Development Agreement is considered an integral part of Lease Agreement. (**Exhibit 1**, p. 2, ¶1). Accordingly, Ramhil and the OCA agreed that Ramhil would develop, construct, lease, and sell the Leased Property to the OCA. (**Exhibit 1**).

5. Debtors through the Motion to Assume asserted that after a review of their books and records, the "Cure Costs" under the Lease Agreement is $0.00. (Dkt. #19353).

6. The Motion to Assume was sent to a wrong address that does not belong to Ramhil. (**Exhibit 3**). Through the undersigned attorney, Ramhil informed the Debtors that the Motion to Assume was sent to a wrong address and that at the time of its receipt the period to file objections had expired. Debtors evaluated the documents and explanation proffered by Ramhil's representatives and agreed to Ramhil filing a response to the Motion to Assume on or before **January 18, 2022**. (*Id.*).

2

6. In compliance with the Motion to Assume, as well as with the abovementioned agreement between Ramhil and the Debtors, Ramhil hereby objects the proposed cure costs in the amount of $0.00 included in the Schedule as it regards to the Lease Agreement.

## II. Lease Agreement's Cure Costs

7. Ramhil asserts that the cure costs relating to the Lease Agreement to be assumed by the Debtors amounts to a total sum of **$3,400,587.76** as of January 1, 2022 (the "Cure Costs"). This amount is the sum of three Proof of Claims timely filed on June 29, 2018, POF# 79908, POF #70616, and POF #149878, as amended.

8. The Cure Costs arise from the OCA's default regarding its obligations pursuant to the Lease Agreement. Such cure costs include three (3) separate debts regarding the Lease Agreement, which arise from the following: (a) deficiency in the payment of rent area adjustment regarding the Judicial Center Building (POC#79908); (b) non-payment of a change order for the installation of LED lamps at the Judicial Center Building (POC #70616); and (c) non-payment of certain change orders related to the construction of the Caguas Judicial Center (POC #149878).

      **A. Deficiency in the Payment of Rent for the Judicial Center Building** (POC #79908)

9. Pursuant to the Lease Agreement, the Caguas Judicial Center consists of two (2) separate buildings, identified as the Judicial Center Building and the Parking Building. (**Exhibit 1**, pp. 2-3). Ramhil and the OCA agreed a lease fee structure based on the construction area each building. (**Exhibit 1**, pp. 13-14 and **Exhibit 2**, p. 22). The lease fee for the Judicial Center Building is $32.85 per square feet ($ft^2$), while the lease fee for the Parking Building is $19.30 per square feet ($ft^2$). (*Id.*).

10. The Lease Agreement further provides that on the date of signing of the Lease Agreement and, in accordance with the Final Schematic Plans that are made part of it as its Annex

3

B, the Judicial Center Building would consist of 353,165.21 square feet ($ft^2$). (**Exhibit 1, pp. 13-14**). However, if necessary, on the Lease Commencement Date, the Lease Fee would be adjusted at a rate of $32.85 per square feet of the Judicial Center Building, depending on its final area. (*Id.*). That is, if the area of the Judicial Center Building turned out to be greater than 353,165.21 square feet ($ft^2$), an additional monthly sum equivalent to one twelfth ($^1/_{12}$) of the product of the increased area in square feet and $32.85 would be added to the agreed Lease Fee. (*Id.*) Likewise, if the final area of the Judicial Center Building turned out to be smaller, the Lease Fee would be reduced using the same formula. (*Id.*)

11. According to Ramhil's proposal to the OCA[1] and the plans duly approved by OCA[2] for the construction of the Caguas Judicial Center, as required by the Lease Agreement, the area designated for judge's parking is considered part of the Judicial Center Building. That is, the lease fee corresponding to the Judicial Building includes the judges' parking area.

12. There is no dispute between Ramhil and the OCA regarding the fact that the final area of the Judicial Center Building is 345,437.5 square feet ($ft^2$), excluding the judges' parking area.[3] (**Exhibit 6**, p. 2). Furthermore, there is no dispute between Ramhil and the OCA regarding the fact that the area of the judges' final parking area is 14,146.9 square feet ($ft^2$).[4] The sum of both areas is 359,584.4 square feet ($ft^2$).

---

[1] Ramhil's accepted proposal expressly states that the judges' parking will be part of the Judicial Center Building and not part of the Parking Building (**Exhibit 4**, p. 20, ¶3.).

[2] All the plans duly approved by the OCA for the development and construction of the Caguas Judicial Center, as required by the Lease Agreement, consider the judges' parking area part of the Judicial Center Building. (**Exhibit 5**, Conceptual Design (AS-01); Final Schematic Design (AS-02); Final Construction Drawings (A-101); and As Built Drawings (A-101g).

[3] There was a slight difference between the areas calculated by the OCA and Ramhil, however, Ramhil agreed to the area calculated by the OCA, that is, 345,437.5 square feet ($ft^2$), excluding the judges' parking area. (**Exhibit 6**, Table A (*Edificio de Oficinas y Salas de Seciones*).

[4] **Exhibit 7**, p.2, Table under the title *Estacionamiento de Jueces*.

13. Notwithstanding the fact that the judges' parking area is part of the Judicial Center Building for which the OCA pays $32.85 per square feet, Ramhil agreed to lease such space for the lease fee applicable to the Parking Building, which is $19.30 per square feet ($ft^2$). As a result, the lease fee relating to the of the judges' parking area amounts to $22,752.93 per month. (**Exhibit 7**). The lease fee relating to the of the judges' parking area was recognized by the OCA[5].

14. Although the parties agreed as to the amount of square feet and the lease fee for the judges' parking area, the OCA has failed to pay. Ramhil has uninterruptedly required the payment of the fee corresponding to the judges' parking area.

15. As of January 1, 2022, the OCA owes Ramhil **$2,214,618.52**[6], the amount of **$940,454.44**[7] as pre-petition rent and the amount of **$1,274,164.08** relating to pos-petition rent for deficiency in the payment of rent for the judges' parking area.

      **B.**    **Non-Payment for the Installation of LED Lamps** (POC #70616)

16. During the construction of the Caguas Judicial Center, the OCA requested a change order for the installation of LED lamps at the Judicial Center Building. (**Exhibit 10**). In accordance with the procedure established in the Lease Agreement, a proposal for the installation of LED Lamps at a cost of $1,058,000.00 was submitted to the OCA which in turn approved the change order through the person authorized in the Lease Agreement to do so, its former Executive Director, Sonia I. Vélez-Colón. (**Exhibit 11 and Exhibit 1, pp. 11-12**). As a result of the OCA's approval, Ramhil installed the requested LED lamps on the Judicial Center Building at a cost of $1,058,000.00.

---

[5] **Exhibit 7**, p.2, Table under the title *Estacionamiento de Jueces*.

[6] **Exhibit 8.**

[7] **Exhibit 9.**

5

17. Pursuant to the provisions of Article 4.3 (a) of the Lease Agreement, the OCA chose to pay the change order regarding the installation of the LED lamps directly, instead of availing itself of the payment through a rent adjustment. (**Exhibit 11**). The OCA determined that it would issue its payment once the project reached Substantial Completion, as provided in Article 2.3 of the Lease Agreement.[8] (*Id.*).

18. Substantial Completion was reached on December 18, 2013, and the Use Permit for the Judicial Center Building was issued on December 20, 2013. (**Exhibit 12**).

19. Nevertheless, the OCA did not issue any payment for the installation of the LED lamps, which were installed at its request and from which it has received great benefits.

20. As of the date of filing of the Petition and as of January 1, 2022, the OCA owes Ramhil $1,058,000.00 for non-payment for the installation of LED lamps in the Judicial Center Building. (**Exhibit 13**).

**C.    Non-Payment of Change Orders** (POC #149878)

21. As part of the construction of the Caguas Judicial Center, nine (9) miscellaneous change orders were approved (the "Change Orders") by the OCA, through the person authorized to do so under the Lease Agreement, its former Executive Director, Sonia I. Vélez-Colón. (**Exhibit 14** and **Exhibit 1**, pp. 11-12). The Change Orders were the result of certain modifications requested by the OCA with regards to the approved plans.

22. On December 4, 2014, the OCA requested additional evidence on only one (1) of the Change Orders, which was promptly provided. The OCA did not object to any of the Change Orders. However, to this date the payment of these has not been made to Ramhil.

---

[8] According to Article 2.3 of the Lease Agreement "Substantial Completion" is reached when: (i) it is evidenced that the facilities are ready for occupation; and (ii) the permit for use is issued by the concerning authorities. (**Exhibit 1**, pp. 5-6).

6

23. As of January 1, 2022, the OCA owes Ramhil $127,969.24 for non-payment of the Change Orders.

### III. LEGAL ARGUMENT

24. Section 541(a) of the Bankruptcy Code, 11 U.S. C. §541(a), provides that a debtor's estate comprises all legal or equitable interests of the debtor in property as of the commencement of the case. Under Chapter 11 and other chapters of the Bankruptcy Code, executory contracts and leases are treated as separate and distinct from other contracts. Section 365 of the Bankruptcy Code, 11 USC § 365, does not define executory contract. However, they have listed as examples of executory contracts for leases, collective agreements, employment contracts and contracts for suppliers. In that sense, the legislative history of Congress provides that the term of executory contract "generally includes contracts on which performance due to some extent remains on both sides." In re Sun Ray Bakery, Inc., 5 B.R. 670, 671 (Bankr. Mass., 1980); Federal's Inc. v. Edmonton Investment Company, 404 F. Supp. 68 (W.D. Mich., 1975); Farrington v. Tennessee, 95 U.S. 679, 683, 24 L.Ed. 558 (1877); Black's Law Dictionary 395 (Rev. 4th ed. 1968).

25. The Bankruptcy Code, 11 U.S.C. § 365, provides that, subject to court approval and certain limitations, debtors can assume or reject any executory contract or unexpired lease. However, Bankruptcy Code § 365(b)(1)(A) provides that, if an executory contract or lease is in default, assumption is impermissible unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure, such default." Expressly, in order to assume an unexpired lease, a debtor must cure all defaults or provide adequate assurance that the defaults will be "promptly cured." In order to cure the default, all unpaid amounts due under the lease must be paid, which may include obligations for taxes, insurance, CAM, utilities, repairs, clean-up costs, late charges, interest and other monetary obligations due under the lease. The cure amount may also include the landlord's attorneys' fees, if such fees are provided for under the lease. Once assumed, the lease

7

returns to its prepetition form with full legal force and effect. In re Liggins, 145 B.R. 227, 231 (Bankr. E.D. Va. 1992) ("deferred plan payments over a period of years do not constitute prompt cure").

26. In addition, the trustee must compensate the non-debtor "for any actual pecuniary loss resulting from such default" and provide "adequate assurance of future performance." Id. §365(b)(1)(B), (C). Under § 365(g)(2), post-assumption breaches of the contract by the estate will give rise to administrative priority claims.

27. Hence, regarding contracts in default, as per §365(b), a contract in default may only be assumed if the debtor meets certain Code requirements:

> (a) Cure pre- and postpetition defaults or provide adequate assurance of prompt cure. Courts define "cure" as "taking care of the triggering event and returning to pre-default conditions." In re Johnson, 184 B.R. 570, 574 (Bankr. D. Minn. 1995).
>
> (b) Compensate for pecuniary loss caused by defaults (or provide adequate assurance of compensation), which may include interest on the amount of the default and attorney's fees and expenses if provided for in the contract or by law. See 11 U.S.C. § 365(b)(1)(B); In re Ryan's Subs, Inc., 165 B.R. 465, 467-69 (Bankr. W.D. Mo. 1994); In re Eagle Bus Mfg., Inc., 148 B.R. 481 (Bankr. S.D. Tex. 1992);
>
> (c) Provide adequate assurance of future performance, i.e., provide adequate assurance of ability to satisfy outstanding and upcoming financial obligations. See § 365(b)(1)(c); In re Washington Capital Aviation & Leasing, 156 B.R. 167, 173 (Bankr. E.D. Va. 1993) (while an absolute guarantee is not required, more than speculative plans are needed); See generally Epling, Contractual Cure In Bankruptcy, 61 Am. Bank. L.J. 71 (1987).
>
> (d) Defaults constituting breach of contract provisions which do not require cure include: (1) insolvency or financial condition; (2) commencement of a case; or (3) appointment of a trustee. § 365(e)(1).

8

28. A cure returns the parties to the status quo ante by paying all arrearages on the debt and reinstating the debt's original payment terms; see In re Embers 86th Street, Inc., 184 B.R. 892 (Bankr. S.D.N.Y. 1995) ("adequate assurance of a prompt cure requires that there be a firm commitment to make all payments and at least a reasonably demonstrable capability to do so").

29. Moreover, non-residential real property leases are treated uniquely. During the period that the Debtor is making the decision to assume or reject a lease, it must "timely perform all obligations" of a lease of nonresidential real property. 11 U.S.C. § 365(d)(3). It is obligated to timely pay rent under a non-residential real property lease until the lease is assumed or rejected. (Code §365(d)(3)).

30. In the case at bar, the Lease Agreement as executed by the parties is unique because after the term of thirty years, the property must be transferred to the debtor, therefore, performance due to some extent remains on both sides. The Debtor is in breach of the Lease Agreement because it owes Ramhil, as of January 1, 2022, a total sum of **$3,400,587.76** of cure costs. If this amount is not paid the Debtors cannot assume the Lease Agreement under§ 365(b)(1)(A). Moreover, Debtors are obligated to timely pay rent under a non-residential real property lease until the lease is assumed or rejected under §365(d)(3)).

31. At present date Debtors are in default for monies owed regarding basic pre and post-petition monthly rent and for monies owed regarding change orders under the development phase of the Lease Agreement. Ramhil does not object to debtor assuming the Lease Agreement, but Debtor must "promptly" cure the pre-petition amount of **$2,126,423.68** and post-petition amount of **$1,274,164.08** owed to return to the pre-default conditions. Moreover, Debtors must provide adequate assurance of future performance.

32. Therefore, Ramhil request this Honorable Court to allow the Debtors to assume the Lease Agreement once it has promptly cured the default of the pre-petition and post-petition amounts herein asserted and as evidenced in the Proof of Claims filed.

**WHEREFORE,** Ramhil respectfully requests that this Court ALLOW the Cure Costs itemized herein in their entirety and order the payment of the same as provided for in any confirmed Plan of Adjustment, in order for the proper assumption by the Debtors of the executory contracts or unexpired leases involved, with any other appropriate relief in favor of movant herein.

Certificate of Service: I hereby certify that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM-ECF system which will send notification of such filing to the CM/ECF participants and parties in interest as per master address list.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 18th day of January 2022.

*/s/Edgardo L. Rodríguez-Cardé*

Edgardo L. Rodríguez-Cardé
USDC-PR No. 218110
P.O. Box 365061
San Juan, P.R. 00936-5061
Tel.: 787-772-9911
Fax: 787-281-7816
e-mail: elrc@rclopr.com

*/s/María S. Lozada-Figueroa*

María S. Lozada-Figueroa
USDC-PR No. 222811
P.O. Box 9023888
San Juan, P.R. 00902-3888
Tel.: 787-533-1400
e-mail: msl@lozadalaw.com

*Attorneys for Ramhil Developers, Inc.*

10