2011-000244

*Estado Libre Asociado de Puerto Rico*
**Tribunal General de Justicia**
*Oficina de Administración de los Tribunales*
*San Juan, Puerto Rico*

### CONTRATO DE ARRENDAMIENTO
### CENTRO JUDICIAL DE CAGUAS

------------------------------------ **COMPARECEN** ------------------------------------

---**DE LA PRIMERA PARTE**: La Oficina de Administración de los Tribunales, una dependencia del Tribunal General de Justicia del Estado Libre Asociado de Puerto Rico, creada en virtud de la Ley Número 201 del 22 de agosto de 2003, número de identificación patronal **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**, representada en este acto por la Hon. Sonia Ivette Vélez Colón, mayor de edad, casada, Jueza de Apelaciones con funciones administrativas por delegación y vecina de Guaynabo, Puerto Rico, en su carácter de Directora Administrativa de los Tribunales (en adelante denominada como la **"Arrendataria"**). ----------------------------------------------------------------------------

---**DE LA SEGUNDA PARTE**: **Ramhil Developers, Inc.**, una corporación creada bajo las leyes del Estado Libre Asociado de Puerto Rico, con número identificación patronal **35-2239827**, representada en este acto por su Presidenta, Hilda Rodríguez Forteza, mayor de edad, casada, abogada y vecina de San Juan, Puerto Rico, cuya autorización para comparecer en este acto surge de Certificación de Resolución Corporativa que se hace formar parte de este contrato como **Anejo A** (en adelante denominada como la **"Arrendadora"**. --------------------------------------------------------

---**AMBAS PARTES** aseguran tener la capacidad legal y representativa necesaria para otorgar este contrato de arrendamiento (en adelante denominado como el **"Contrato de Arrendamiento"**), así como para ejecutar lo aquí dispuesto, por lo que:--------------------------------------------------------------------------------------

------------------------------------ **EXPONEN** ------------------------------------

---**PRIMERO**: El seis (6) de diciembre del año dos mil diez (2010) las partes aquí

comparecientes firmaron un Contrato de Desarrollo y Acuerdo de Arrendamiento del Nuevo Centro Judicial de Caguas (en adelante "denominado como el "Contrato de Desarrollo"), donde se establecieron los términos y condiciones aplicables al desarrollo, diseño, financiamiento, construcción, arrendamiento con opción a compra, administración y operación del Nuevo Centro Judicial de Caguas (en adelante el "Proyecto"). Salvo que otra cosa se disponga expresa o implícitamente, las partes comparecientes acuerdan incorporar en este Contrato de Arrendamiento los términos y condiciones del Contrato de Desarrollo, disponiéndose que de existir algún conflicto entre las disposiciones de ambos contratos, regirá en la interpretación el Contrato de Arrendamiento. Los términos en letras mayúsculas no definidos expresamente en este Contrato de Arrendamiento tendrán el significado provisto en el Contrato de Desarrollo.-------------------------------------------------

---**SEGUNDO:** El Contrato de Desarrollo dispone que una vez satisfechas las Condiciones Precedentes, la **Arrendadora** se compromete a construir y la **Arrendataria** se compromete a arrendar las facilidades del Proyecto.-----------------

---**TERCERO:** Las partes comparecientes reconocen y acuerdan que las Condiciones Precedentes del Contrato de Desarrollo han sido cumplidas. Además, reconocen y aceptan que, en conformidad con lo dispuesto en el Contrato de Desarrollo, la **Arrendadora** ha decidido ejecutar la fase de desarrollo, diseño y construcción del Proyecto mediante un mecanismo "fast track", para así completar el mismo dentro del Itinerario de Desarrollo pactado. ----------------------------------

---**CUARTO:** En consideración a lo antes expuesto, la **Arrendataria** y la **Arrendadora**, libre y voluntariamente, llevan a efecto este Contrato Arrendamiento bajo los siguientes términos y condiciones. -------------------------------------------------

## SECCIÓN UNO (1)
## (EL PROYECTO)

---**Sección Uno Punto Uno (1.1) - Descripción del Proyecto.** Como parte del Proyecto la **Arrendadora** se compromete, entre otras cosas, a

2

desarrollar, diseñar y construir: (a) un edificio de nueve (9) pisos de aproximadamente trescientos cincuenta y tres mil ciento sesenta y cinco punto veintiún (353,165.21) pies cuadrados, el cual albergara áreas de salas, oficinas, y demás facilidades relacionados con la operación de un Centro Judicial (en adelante denominado como el "Edificio del Centro Judicial") y (b) un edificio de estacionamiento de cinco (5) pisos con una cabida no menor de trescientos veinticuatro mil cuatrocientos cincuenta y dos punto cincuenta y cinco pies cuadrados (324,452.55 p$^2$) y con una capacidad no menor de mil ciento treinta (1,130) estacionamientos (en adelante denominado como el "Edificio de Estacionamiento"). Los planos esquemáticos finales de los referidos edificios se hacen formar parte del presente Contrato de Arrendamiento y se marcan como su **Anejo B** (en adelante denominados como los "Planos Esquemáticos Finales"). -----



---**Sección Uno Punto Dos (1.2) - Acceso al Proyecto.** La **Arrendadora** se compromete a construir el acceso a las facilidades del Proyecto (en adelante el "Acceso al Proyecto"), sustancialmente según ilustrado en el plano que forma parte de este Contrato de Arrendamiento como **Anejo B**, para que el mismo sea dedicado a uso público mediante la correspondiente cesión al Municipio Autónomo de Caguas. ---------------------------------------------------------------------------------

-----**Sección Uno Punto Tres (1.3) - Titularidad.** El Proyecto será desarrollado en una parcela denominada Parcela Centro Judicial, la cual fue segregada de una parcela de mayor cabida, bajo la titularidad de la **Arrendadora** ubicada en la Carretera a Estatal PR # 1, Esquina Carretera Estatal PR #189, en el Barrio Bairoa del Municipio de Caguas, Puerto Rico (en adelante "Parcela Ramhil-A"). La **Arrendadora** adquirió la Parcela Ramhil-A mediante la Escritura Número 27 de Segregación Compraventa y Rectificación de Cabida otorgada el 24 de mayo del 2006 ante la Notario Público Rebeca Caquías Mejías, la cual fue presentada para inscripción al Asiento 261 del Diario 980 del Registro de la Propiedad de Caguas,

3

Sección Primera. ---------------------------------------------------------------------------

---**Sección Uno Punto Cuatro (1.4)** - <u>Segregación de la Parcela Centro Judicial</u>.
La Parcela Centro Judicial se segregó de la Parcela Ramhil-A mediante la Escritura
Número Uno (1) de Rectificación de Cabida, Segregación, Liberación y
Reasignación de Créditos Hipotecarios otorgada el veintiséis (26) de abril del 2011
ante el Notario Público Ernesto González Piñero. La Parcela Centro Judicial tiene
una cabida aproximada de veintinueve mil trescientos uno punto veintitrés siete
siete metros cuadrados (29,301.2377 m$^2$). Se incluye como **Anejo C** un el Plano de
Segregación de la Parcela Centro Judicial. Una vez se complete la construcción del
Proyecto, de ser necesario, el referido Plano de Segregación será rectificado para
que refleje la cabida final exacta de la Parcela Centro Judicial. -------------------------

---**Sección Uno Punto Cinco (1.5)** - <u>**Objeto del Arrendamiento**</u>. El arrendamiento
a que se refiere este Contrato de Arrendamiento, en adelante denominado el "**Área
Arrendada**", incluye, la Parcela Centro Judicial, conjuntamente con:-----------------

-----(a) El Edificio del Centro Judicial y el Edificio del Estacionamiento, a ser
construidos mediante contratación privada por la **Arrendadora** de acuerdo con los
planos aprobados por la **Arrendataria**. Los referidos edificios habrán de ser
utilizados por la **Arrendataria** para alojar las facilidades del Nuevo Centro Judicial
de Caguas y su estacionamiento, respectivamente.----------------------------------------

-----(b) Cualquier servidumbre y/o derecho que beneficie a la **Arrendadora** sobre
fincas adyacentes por razón de la titularidad del **Área Arrendada,** que sean
necesarios y/o incidentales a uso propuesto del Proyecto, en conformidad con los
planos aprobados para el Proyecto.-----------------------------------------------------------

-----(c) Cualquier derecho, título e interés propietario, si alguno, que pueda tener la
**Arrendadora** sobre: equipo, mobiliario o accesiones que se utilicen para el uso u
ocupación del **Área Arrendada**; así como los cambios, adicionales y mejoras que
de aquí en adelante se efectúen en el **Área Arrendada**, excluyendo únicamente el

4

equipo telefónico y cualquier equipo, mobiliario o accesiones que sean propiedad de
o instalados por la **Arrendataria.** ------------------------------------------------------

## SECCIÓN DOS (2)
## (LA CONSTRUCCIÓN)

---**Sección Dos Punto Uno (2.1)** - **Comienzo de la Construcción.** La
**Arrendadora** se compromete a comenzar la construcción del Proyecto dentro de los
cinco (5) días laborales de la fecha de la ejecución del Contrato de Financiamiento
o el 1 de junio de 2011, lo que ocurra primero (en adelante "Fecha de Comienzo de
Construcción"). Para efectos de este Contrato de Arrendamiento, el comienzo de la
construcción del Proyecto se define como el comienzo de las actividades físicas
relacionadas con el movimiento de terrenos. Las partes acuerdan que aunque la
**Arrendadora** comience la construcción del Proyecto sin que se haya ejecutado el
Contrato de Financiamiento, la Fecha de Comienzo de Construcción seguirá siendo
considerada para efectos del término disponible para completar la construcción
como la fecha en que se ejecute el Contrato de Financiamiento o el 1 de junio de
2011, lo que ocurra primero.------------------------------------------------------------

---**Sección Dos Punto Dos (2.2)** - **Construcción del Proyecto.** La **Arrendadora**
construirá y administrará el Proyecto de una forma continua, diligente y razonable
hasta su terminación y entrega, de conformidad con lo establecido y requerido por
las agencias reguladoras en el proceso de obtención de los Permisos Requeridos y
de acuerdo con los términos y condiciones establecidos en el Contrato de Desarrollo
y en este Contrato de Arrendamiento.------------------------------------------------

---**Sección Dos Punto Tres (2.3)** – ***Substantial Completion* de la Construcción del
Proyecto.** El Proyecto se considerará completado sustancialmente (*Substantial
Completion*) cuando se evidencie que las facilidades del Proyecto están listas para
ocupación por parte de la **Arrendataria** mediante la correspondiente Certificación
de *Substantial Completion* por parte de los profesionales encargados de la
construcción e inspección del Proyecto y la expedición del correspondiente

5

permiso de uso por parte de las entidades concernidas con jurisdicción (en adelante el "Permiso de Uso"). -------------------------------------------------------------------

---**Sección Dos Punto Cuatro (2.4)** - **Término para Llegar al *Substantial Completion* del Proyecto.** Salvo por la ocurrencia de eventos de Fuerza Mayor o de eventos imprevistos que razonablemente no pudieron preverse por la **Arrendadora** y que afecten adversamente y retrasen la construcción del Proyecto, la **Arrendadora** se compromete a completar la construcción sustancial (*Substantial Completion*) del Proyecto en la fecha que ocurra primera de las siguientes: (a) en un término de treinta (30) meses, contados a partir de la fecha en que se otorgue el Contrato de Financiamiento o el 1 de junio 2011, lo que ocurra primero; o (b) el 15 de octubre de 2013. -------------------------------------------------------------------

---**Sección Dos Punto Cinco (2.5)** - **Inspección de la Terminación de la Obra.** Luego que la **Arrendadora** solicite la aprobación del certificado de que la construcción del Proyecto se ha completado sustancialmente (*Substantial Completion*), la Oficina de Inspección efectuara la inspección del Proyecto. La solicitud de aprobación del certificado de que la construcción del Proyecto se ha completado sustancialmente (*Substantial Completion*) será notificada a la Oficina de Inspección por escrito y por correo certificado con acuse de recibo. La Oficina de Inspección tendrá quince (15) días laborables a partir del recibo de dicha notificación para rendir un informe escrito y enviarlo por correo certificado con el acuse de recibo a la **Arrendataria** y a la **Arrendadora** recomendando la aceptación o el rechazo de que la construcción del Proyecto se ha completado sustancialmente (*Substantial Completion*).-------------------------------------------------------------------

---Si la Oficina de Inspección recomienda la aceptación del Proyecto, la **Arrendataria** expedirá la Certificación de Aceptación del Proyecto dentro de un periodo que no excederá de diez (10) días. De no recomendarse la aceptación del Proyecto y haberse expirado el plazo para completar o terminar la construcción, la

6

Oficina de Inspección definirá un plazo razonable para la corrección de los defectos señalados por dicha oficina que impiden la aceptación del Proyecto por parte de la **Arrendataria.** Una vez expirado el término establecido para completar la construcción del Proyecto sin que éste haya completado, se aplicará el pago a favor de la **Arrendataria** de los Daños Líquidos establecidos por concepto de retraso. ----

---Se dispone que aquellos defectos identificados en la lista de defectos o correcciones (*Punch List*) que no impidan el uso del Proyecto y que sean debidamente identificados por la Oficina de Inspección en la Certificación de *Substantial Completion*, no se considerarán como defectos que impidan la aceptación del Proyecto. La Oficina de Inspección definirá el término o términos razonables para la corrección de dichos defectos. En caso de que la **Arrendadora** no corrija los referidos defectos, la **Arrendataria** procederá, a su discreción, a corregir las deficiencias y deducir, de forma razonable, del pago del canon de arrendamiento el costo de las correcciones. ------------------------------------------------

---**Sección Dos Punto Seis (2.6) - <u>Daños Líquidos por Retraso en la Entrega</u>**. Si habiendo la **Arrendadora** comenzado la construcción del Proyecto, no pudiese entregar el mismo para ser aceptado por la **Arrendataria** dentro del término dispuesto en este Contrato de Arrendamiento, sin que se justifique su retraso por alguna de las razones establecidas en el presente Contrato de Arrendamiento y se someta evidencia y documentación a tales efectos, la **Arrendadora** pagará a la **Arrendataria** por concepto de daños líquidos debido, única y exclusivamente, a dicho retraso en la entrega la cantidad estipulada de mil dólares ($1,000.00) diarios (en adelante "Daños Líquidos"). Los Daños Líquidos son en adición a cualquier otro remedio no monetario que la **Arrendataria** tenga disponible en virtud del Contrato de Desarrollo y este Contrato de Arrendamiento por concepto del retraso de la **Arrendadora** en la entrega del Proyecto.------------------------------------------

---**Sección Dos Punto Siete (2.7) - <u>Transmisión de la Posesión</u>**. La fecha de la

transmisión de la posesión del Área Arrendada será cuando la **Arrendadora** entregue a la **Arrendataria** el Permiso de Uso para la ocupación de las facilidades del Proyecto expedido por las entidades concernidas con jurisdicción.------------------

---**Sección Dos Punto Ocho (2.8)** - **Medidas de Seguridad**. A la fecha de la entrega a la **Arrendataria** del Permiso de Uso, la **Arrendataria** vendrá obligada a cumplir con las medidas de seguridad y salud pública que tenga a bien recomendar el Servicio de Bomberos de Puerto Rico, el Departamento de Salud y el Departamento del Trabajo, así como toda ley u ordenanza, requerimiento, orden o disposición aplicable al **Área Arrendada**. Con posterioridad a la expedición del Permiso de Uso, la **Arrendataria** asumirá la obligación de cumplimiento con dichos requerimientos, excepto aquellas disposiciones de ley que requieran realizar cambios estructurales y arquitectónicos o aquellos aspectos que tengan que ver con el mantenimiento u operación del **Área Arrendada**, los que serán responsabilidad de la **Arrendadora**.------------------------------------------------------------------

---**Sección Dos Punto Nueve (2.9)** - **Conclusión Final**. Para fines de este Contrato de Arrendamiento se define el término "Conclusión Final" como la fecha en que todas la obras dispuestas en el listado de cosas que faltan por hacer o corregir (*Punch List*) que la **Arrendataria** entregue según lo dispuesto en este Contrato de Arrendamiento hayan sido realizadas a entera satisfacción de la **Arrendataria**. -----

---**Sección Dos Punto Diez (2.10)** – **Plano de Mensura Final**. Una vez completada la construcción del Proyecto, la **Arrendadora** (de ser necesario por existir variaciones en cuanto a versiones anteriores del Plano de Mensura), preparará y someterá a la **Arrendataria** un nuevo plano de mensura actualizado y rectificado (en adelante el "Plano de Mensura Final"). La cabida de la Parcela Centro Judicial que surja del Plano de Mensura Final así como sus linderos deberán ser sustancialmente similares la cabida y linderos dispuestos en el Contrato de Desarrollo y este Contrato de Arrendamiento. No obstante, las partes reconocen que

la cabida y linderos de las parcelas de terreno mencionadas en el Contrato de Desarrollo y en este Contrato de Arrendamiento, incluyendo las de la Parcela Centro Judicial, pueden variar moderadamente y que dichas variaciones son típicas y aceptables en desarrollo de la magnitud del Proyecto, por lo cual las mismas no constituyen ni constituirán un incumplimiento con los términos y condiciones del RFP, del Contrato de Desarrollo ni el Contrato de Arrendamiento.---------------------



---**Sección Dos Punto Once (2.11)** - **Planos de Construcción** *As Built*. La **Arrendadora** preparará a su costo y entregará a la **Arrendataria** dos juegos de los Planos Finales del Proyecto según construído, uno de éstos en formato impreso (*hard copy*) y otro en formato digital (en adelante denominados como los "Planos *As Built*"). -------------------------------------------------------------------------



---**Sección Dos Punto Doce (2.12)** - **Garantías**. La Certificación de Aceptación del Proyecto dará paso para el inicio de todos los términos para las garantías, según lo dispuesto en el Código Civil de Puerto Rico y los reglamentos aplicables.-------------

---**Sección Dos Punto Trece (2.13)** - **Costos y Gastos de Desarrollo y Construcción**. La **Arrendadora** será la única responsable por el pago de todos los costos y gastos del desarrollo, diseño y construcción del Proyecto. --------------------

## SECCIÓN TRES (3)
## INSPECCIÓN

---**Sección Tres Punto Uno (3.1)** **Inspección Durante la Construcción del Proyecto**. Durante la fase de la construcción del Proyecto, la **Arrendadora** estará representada frente al contratista que esté a cargo de la construcción del Proyecto, por un ingeniero inspector, quien podrá tener bajo su responsabilidad a otros ingenieros y/o profesionales (en adelante denominada como la "Oficina de Inspección").------------------------------------------------------------------------------

---**Sección Tres Punto Dos (3.2)** - **Oficina de Inspección**. La Oficina de Inspección velará porque la construcción del Proyecto se realice según los Planos Finales y los términos y condiciones del Contrato de Desarrollo y este Contrato de

9

Arrendamiento. La **Arrendadora** seleccionará la Oficina de Inspección y notificará oportunamente sobre dicha selección a la **Arrendataria**. Dicha notificación será acompañada por documentos e información que acrediten la capacidad profesional y operacional de la entidad seleccionada para la inspección así como su experiencia en la inspección de proyectos similares al Proyecto, los recursos que destinará al mismo así como el equipo de trabajo a cargo de los trabajos de inspección. Una vez notificada la selección de la Oficina de Inspección a la **Arrendataria**, ésta tendrá un término de diez (10) días para presentar a la **Arrendadora** justificación suficiente sobre deficiencias en la capacidad, carácter y reputación de la Oficina de Inspección propuesta, que justifiquen que la misma no sea seleccionada como Oficina de Inspección para el Proyecto. De no haber objeción a la Oficina de Inspección propuesta, ésta podrá comenzar a ejecutar sus funciones transcurrido el término de diez días desde la notificación de su selección por parte de la **Arrendadora**. De haber alguna objeción fundamentada, la **Arrendadora** deberá seleccionar una nueva Oficina de Inspección. La **Arrendadora** pagará los servicios a ser prestados por la Oficina de Inspección. La Oficina de Inspección vendrá obligada a mantener a la **Arrendadora** y la **Arrendataria** al tanto del avance del Proyecto, a través de la emisión de informes de progreso y ejecución mensuales. ----------------------------

---**Sección Tres Punto Tres (3.3) - Representantes de las Partes Durante la Construcción del Proyecto**. Durante la construcción del Proyecto, la **Arrendadora** y la **Arrendataria** designarán cada una persona una persona la cual, a su nombre, estará a cargo tramitar, enviar y recibir todas las notificaciones, aprobaciones, comunicaciones, planos, especificaciones y otros materiales y documentos requeridos o permitidos para ser enviados y recibidos de conformidad con el Contrato de Desarrollo. En adelante se denominan al representante de la **Arrendadora** y el representante de la **Arrendataria** como el Representante de la Arrendadora y el Representante de la **Arrendataria**, respectivamente. Dicha

designación de los representantes se mantendrá vigente durante todo el desarrollo del Proyecto, salvo que la misma sea modificada, previa notificación escrita por la parte correspondiente. El contacto o enlace principal de la Oficina de Inspección con la **Arrendadora** será el Representante de la Arrendadora y el contacto o enlace principal de la Oficina de Inspección con la **Arrendataria** será el Representante de la Arrendataria. A solicitud de la **Arrendataria**, la **Arrendadora** proveerá espacio de oficina con aire acondicionado y teléfono así como acceso al salón de reuniones y baños, en las instalaciones de oficina de construcción del contratista a cargo de la construcción del Proyecto o de la Oficina de Inspección. ------------------------------

### SECCIÓN CUATRO (4)
### (ÓRDENES DE CAMBIO)

---**Sección Cuatro Punto Uno (4.1)** <u>Cambios y/o Modificaciones Solicitados por la Arrendataria</u>. Para efectos del Contrato de Desarrollo, así como este Contrato de Arrendamiento, se considerara una Orden de Cambio de la Arrendataria, cualquier requerimiento o solicitud de la **Arrendataria** que conlleve un cambio o modificaciones en los Planos Finales del Proyecto debidamente aprobados por la **Arrendataria**, y que a su vez conlleven un aumento en los costos de la construcción del Proyecto o un aumento en el tiempo de construcción (en adelante la "Orden de Cambio de la Arrendataria"). --------------------------------------------------------------

---Las Órdenes de Cambio de la Arrendataria se someterán por escrito, siguiendo las prácticas de la industria de la construcción en Puerto Rico.--------------------------

---Toda Orden de Cambio de la Arrendataria debe ser tramitada a través del Representante de la Arrendadora y el Representante de la Arrendataria, recomendadas por la Oficina de Inspección, y revisadas, autorizadas y firmadas en el caso de la **Arrendataria** por la Directora Administrativa de los Tribunales o la persona a quien ésta delegue y, en el caso de la **Arrendadora**, por el Sr. Carlos González Morales o la persona en quién éste delegue. ------------------------------------

---No serán considerados Órdenes de Cambio de la Arrendataria, los cambios o



modificaciones solicitadas, por cualquier motivo, por la **Arrendadora**. Se aclara que aunque dichos cambios o modificaciones solicitadas por la **Arrendadora**, deberán ser revisadas y aprobadas por la **Arrendataria**, las mismas constituirán órdenes de cambio entre la **Arrendadora** y su contratista a cargo de la construcción del Proyecto. ----------------------------------------------------------------------------

---**Sección cuatro Punto Dos (4.2)** - Tiempo Adicional de Construcción Debido a Órdenes de Cambio de la Arrendataria. La **Arrendadora** y la **Arrendataria** determinaran de común acuerdo el plazo de tiempo adicional de construcción, de ser éste necesario, para efectuar los cambios o modificaciones requeridos a través de una Orden de Cambio de la Arrendataria. La **Arrendataria** asumirá los costos adicionales que incurra la **Arrendadora** debido a las Órdenes de Cambio de la Arrendataria. ----------------------------------------------------------------------------

---**Sección Cuatro Punto Tres (4.3)** - Pago de las Órdenes de Cambio de la Arrendataria. La **Arrendataria** asumirá el aumento en costo que resulte de las Órdenes de Cambio de la Arrendataria, ejerciendo una de las siguientes opciones:--

-----(a) Pagando el costo de las Órdenes de Cambio de la Arrendataria contra certificaciones debidamente expedidas por el contratista y aprobadas por la Oficina de Inspección, o ----------------------------------------------------------------------------

-----(b) Para aquellas Órdenes de Cambio de la Arrendataria que por sí solas o conjuntamente sumen cien mil dólares ($100,000.00) o más, mediante un aumento en el Canon de Arrendamiento. ----------------------------------------------------------------------------

**SECCIÓN CINCO (5)**
**(ARRENDAMIENTO Y TÉRMINO DEL ARRENDAMIENTO)**

---**Sección Cinco Punto Uno (5.1)** - El Arrendamiento. La **Arrendadora** mediante el presente Contrato de Arrendamiento cede en arrendamiento a la **Arrendataria** el **Área Arrendada**.----------------------------------------------------------------------------

---**Sección Cinco Punto Dos (5.2)** - Término del Contrato de Arrendamiento. El término de vigencia del Contrato de Arrendamiento será de treinta (30) años,

contados a partir de la fecha de la entrega a la **Arrendataria** del Permiso de Uso (en adelante la "Fecha de Comienzo del Arrendamiento"). Se establece que el término "año de arrendamiento" comprenderá doce (12) meses calendario consecutivos.-----

## SECCIÓN SEIS (6)
### (CANON DE ARRENDAMIENTO)

---**Sección Seis Punto Uno (6.1)** - **Canon de Arrendamiento**. El canon de arrendamiento será de un millón cuatrocientos ochenta y ocho mil seiscientos diecisiete dólares con sesenta y un centavos ($1,488,617.61) mensuales (en adelante el "Canon de Arrendamiento"). El Canon de Arrendamiento incluye el arrendamiento del Edificio del Centro Judicial y del Edificio de Estacionamiento así como los gastos relativos a las siguientes partidas: (a) seguros del Edificio del Centro Judicial; (b) contribuciones sobre la propiedad a base del primer recibo que se emita a los efectos, contemporáneo con la expedición del permiso de uso (cualquier aumento en esta partida corresponde ser sufragado por la **Arrendataria**) y (c) el mantenimiento, reparación y operación de las Áreas Públicas del Edificio del Centro Judicial, según descrito más adelante en este Contrato de Arrendamiento.

-----**Sección Seis Punto Dos (6.2)**. **Comienzo de la Obligación de Pagar el Canon de Arrendamiento**. La obligación de la **Arrendataria** de pagar el Canon de Arrendamiento mensual pactado en este Contrato de Arrendamiento comienza en la Fecha de Comienzo del Arrendamiento, es decir, en la fecha de la entrega a la **Arrendataria** del Permiso de Uso.----------------------------------------------------

-----**Sección Seis Punto Tres (6.3)** - **Ajuste al Canon de Arrendamiento por Variaciones en la Cabida del Edificio del Centro Judicial**. El Canon de Arrendamiento de un millón cuatrocientos ochenta y ocho mil seiscientos diecisiete dólares y sesenta y un centavos ($1,488,617.61) se ha pactado tomando en consideración, entre otras cosas, que a la fecha de la firma de este Contrato de Arrendamiento y, a tenor con los Planos Esquemáticos Finales que se hacen formar parte del mismo como su **Anejo B**, el Edificio del Centro Judicial constará de

13

trescientos cincuenta y tres mil ciento sesenta y cinco punto veintiún (353,165.21)

pies cuadrados. Sin embargo, de ser necesario, a la Fecha de Comienzo del

Arrendamiento el Canon de Arrendamiento se ajustará a razón de treinta y dos

dólares con ochenta y cinco centavos ($32.85) por pie cuadrado del Edificio del

Centro Judicial, dependiendo del área final de dicho edificio. Es decir, si el área del

Edificio del Centro Judicial resulta ser mayor de trescientos cincuenta y tres mil

ciento sesenta y cinco punto veintiún (353,165.21) pies cuadrados; se le añadirá al

Canon de Arrendamiento de un millón cuatrocientos ochenta y ocho mil seiscientos



diecisiete dólares y sesenta y un centavos ($1,488,617.61) una suma mensual

adicional equivalente a la duodécima parte del producto del aumento del área en

pies cuadrados y treinta y dos dólares con ochenta y cinco centavos ($32.85). Si por



el contrario, el área del Edificio del Centro Judicial resultara menor de trescientos

cincuenta y tres mil ciento sesenta y cinco punto veintiún (353,165.21) pies

cuadrados, se sustraerá del Canon de Arrendamiento de un millón cuatrocientos

ochenta y ocho mil seiscientos diecisiete dólares y sesenta y un centavos una suma

mensual equivalente a la duodécima parte del producto de la disminución del área

en pies cuadrados y treinta y dos dólares con ochenta y cinco centavos ($32.85).----

---Sección Seis Punto Cuatro (6.4) - **Incrementos al Canon de Arrendamiento**.

Luego de transcurrido un término de diez (10) años desde la Fecha de Comienzo del

Contrato de Arrendamiento, las partes renegociarán un incremento en el Canon de

Arrendamiento, el cual no excederá de un diez por ciento (10%). Luego de

transcurrido un término de veinte (20) años desde la Fecha de Comienzo del

Contrato de Arrendamiento, las partes renegociarán un segundo incremento en el

Canon de Arrendamiento, el cual no excederá de diez por ciento (10%) del Canon

de Arrendamiento vigente a dicha fecha. El Canon de Arrendamiento acordado

permanecerá inalterado por cada periodo de diez (10) años, salvo los ajustes en la

partida del componente operacional debido a aumentos en el salario mínimo federal

y/o cualquier legislación municipal, estatal o federal aplicable. ------------------------

---**Sección Seis Punto Cinco (6.5)** - **Modo de pago del Canon de Arrendamiento**. El Canon de Arrendamiento será pagadero por la **Arrendataria** a la **Arrendadora** en mensualidades vencidas por lo que los pagos mensuales se efectuarán el último día de cada mes calendario, comenzando al finalizar el mes en que la **Arrendataria** acepte el **Área Arrendada**. Si el término del Arrendamiento comienza un día que no sea el primer ($1^{er}$) día del mes en curso, el Canon de Arrendamiento habrá de ser prorrateado ese mes por el número de días contados desde la Fecha de Comienzo del Contrato de Arrendamiento hasta el primer ($1^{er}$) día del próximo mes. De estar disponible en algún momento durante la vigencia del presente Contrato de Arrendamiento el pago por medio de transferencia electrónica, las partes manifiestan que ésta será la manera preferida de efectuar los pagos del Canon de Arrendamiento, sujeto a la adopción de un procedimiento de seguridad o indemnizaciones que resulten necesarias para proteger a las partes contra pérdidas.-

---**Sección Seis Punto Seis (6.6)** – **Inclusión del Canon de Arrendamiento en Presupuesto de la Arrendataria**. La **Arrendataria** se obliga y se compromete a incluir en su presupuesto anual, durante cada año de vigencia del Contrato de Arrendamiento, una partida específica para cubrir las obligaciones incurridas bajo este Contrato de Arrendamiento y a solicitar anualmente fondos suficientes para ello. ---------------------------------------------------------------------------------------

---**Sección Seis Punto Siete (6.7)**. **Elementos de la Consideración del Canon de Arrendamiento.** Las partes comparecientes reconocen que el Canon de Arrendamiento se ha pactado en consideración de las obligaciones de la **Arrendadora** de planificar, desarrollar, diseñar, financiar, construir, operar y mantener el Proyecto de acuerdo con las disposiciones del Contrato de Desarrollo y este Contrato de Arrendamiento, según lo requerido por la **Arrendataria**, y listo para su uso (*Built to Suit*), incluyendo las mejoras de la **Arrendataria** al **Área**

15

**Arrendada,** así como en consideración al traspaso del Área Arrendada a favor de la **Arrendataria** por el precio convenido de un dólar ($1.00), luego del término de treinta (30) años de este Contrato de Arrendamiento.-------------------------------------

### SECCIÓN SIETE (7)
### (INSCRIPCIÓN DEL CONTRATO DE ARRENDAMIENTO)

---**Sección Siete Punto Uno (7.1) - Inscripción del Contrato de Arrendamiento.** La **Arrendataria** se reserva el derecho de inscribir en el Registro de la Propiedad el derecho de arrendamiento constituido bajo el Contrato de Arrendamiento, mediante la conversión del Contrato de Arrendamiento en escritura pública. Dicha escritura pública será otorgada y presentada en el Registro de la Propiedad a solicitud de la **Arrendataria.** De ser necesario otorgar un acta de edificación previo a la inscripción del Contrato de Arrendamiento en el Registro de la Propiedad, la **Arrendadora** consiente al otorgamiento de dicha escritura. La **Arrendataria** seleccionará el notario y pagará sus honorarios, al igual que los sellos y comprobantes a cancelarse para la inscripción de su derecho de arrendamiento así como de cualquier acta de edificación y/o cualquier otro instrumento que sea necesario o incidental para la inscripción de su derecho de arrendamiento. -----------

### SECCIÓN SIETE (8)
### REPARACIONES Y MANTENIMIENTO:

---**Sección Ocho Punto Uno (8.1) - Definición de Reparación, Mejora y Mantenimiento.** Para los fines de este contrato las partes acuerdan que los siguientes términos se definen como sigue: -------------------------------------------

-----Reparación: El acto de conservar y/o subsanar el desgaste y deterioro natural ocasionado por el uso normal del Área Arrendada a los fines de mantenerla en condiciones para el uso al cual ha sido destinada. Incluye la substitución de equipo que fuera instalado por la **Arrendadora** originalmente y/o materiales del **Área Arrendada** por otro de igual naturaleza, especificaciones y calidad. ------------------

-----Mejora: El acto de modificar el **Área Arrendada** aumentando el valor, el

espacio utilizable y/ o la capacidad de rendimiento de ésta. --------------------------

-----Mantenimiento: El acto de proveer adecuada limpieza, servicios de conserjes y cuidado diario de las áreas públicas del **Área Arrendada** de manera que estén en buenas condiciones para su uso. El mantenimiento incluirá además todos los arreglos y reparaciones a los que se hace referencia en la **Sección Ocho Punto Dos (8.2)** de este Contrato de Arrendamiento.--------------------------------------

--- **Sección Ocho Punto dos (8.2) - Reparaciones, Mantenimiento**. La **Arrendadora** se obliga durante la vigencia de este Contrato de Arrendamiento a efectuar las reparaciones del **Área Arrendada** para conservar ésta en condiciones utilizables. Adicional a esto, la **Arrendadora** se obliga a dar mantenimiento de las áreas públicas del **Área Arrendada** y a mantener en funcionamiento todos sus servicios, equipos y accesorios dentro de las normas de salud y seguridad aplicables, incluyendo:--------------------------------------------------------------------




--------(1) Las entradas o accesos, corredores, áreas de estacionamiento, de servicio, salones de sesiones, escaleras públicas, baños públicos y pasillos públicos del **Área Arrendada**.--------------------------------------------------------------------

--------(2) El exterior y la estructura del **Área Arrendada**. ------------------------------

--------(3) Las paredes interiores, techos, pisos, puertas, ventanas y pintura siempre que el mantenimiento o reparaciones sean motivadas por el deterioro físico natural o a causa del mal tiempo; por defectos en la construcción o de instalaciones defectuosas ocurridas durante el mantenimiento o reparación o posteriormente y siempre que las mismas hubiesen sido hechas por la **Arrendadora**. -------------------

--------(4) Los sistemas de plomería y cañería sanitarias, el sistema eléctrico y de iluminación, cisterna y de planta de electricidad de emergencia a ser provistas por la **Arrendadora**. --------------------------------------------------------------------

--------(5) El sistema de ascensores. --------------------------------------------------

--------(6) Los sistemas de aire acondicionado central. Dichos sistemas deberán

cumplir con las especificaciones descritas en los Planos Finales. -----------------------

--------(7) Detectores de Metales. La **Arrendadora** hace expreso reconocimiento que proveerá los detectores de metales con su respectivo servicio de mantenimiento y que los mismos estarán en funciones al momento en que el Centro Judicial comience a brindar servicio al público. -----------------------------------------------------

-----La reparación de cualquiera de los equipos o la prestación de los servicios de mantenimiento mencionados en esta Sección deberá ser contratada u ordenada por la **Arrendadora** en el término de tres (3) días laborables a partir de la notificación por parte de la **Arrendataria.** En cuanto al equipo relacionado con la seguridad del edificio, la **Arrendadora** proveerá especial atención en que éstos se encuentren en óptimas condiciones. En caso de desperfectos o problemas que impidan el uso del **Área Arrendada,** o que comprometan la seguridad del tribunal, las reparaciones deberán ser contratadas u ordenadas por la **Arrendadora** en o antes del siguiente día laborable. Transcurrido este período, la **Arrendataria** podrá gestionar y contratar tales reparaciones reduciendo del componente operacional o de mantenimiento del canon mensual de renta el costo de las mismas. --------------------

---**Sección Ocho Punto Tres (8.3) - Área Públicas**. Las Áreas **Públicas** comprenderán toda porción del **Área Arrendada** a la cual tenga acceso el público y en las cuales se le dé servicio al mismo, incluyendo los Salones de Sesiones. --------

-----**Áreas Privadas**. Las Áreas **Privadas** serán todas las demás áreas dentro del **Área Arrendada** que no puedan ser clasificadas como **Áreas Públicas** según la definición antes provista. --------------------------------------------------------------------

--- **Sección Ocho Punto Cuatro (8.4) - Pago de Servicios**. En el caso de que la **Arrendataria** advenga en la necesidad de enviar alguno de sus agentes o empleados(as) para resolver problemas o desperfectos que son de responsabilidad de la **Arrendadora,** la **Arrendadora** se obliga a pagar la cuantía que corresponda por la utilización de ese empleado, entiéndase las horas trabajadas, dieta, millaje y

cualesquiera otros gastos en los que la **Arrendataria** pueda incurrir. Esta cuantía se descontará de la partida del componente operacional o de mantenimiento del Canon de Arrendamiento y se hará la anotación correspondiente.------------------------------

---**Sección Ocho Punto Cinco (8.5)** - Interrupción de Servicios. La **Arrendadora,** durante la vigencia de este Contrato de Arrendamiento, y previa notificación a la **Arrendataria,** tendrá acceso a, y podrá interrumpir o suspender, por un término de tiempo razonable, el servicio de los sistemas mecánicos y eléctricos del edificio cuando sea requerido por razón de mantenimiento ordinario y reparaciones de emergencia. De ocurrir esta situación, no se entenderán afectadas o reducida ningunas de las obligaciones contraídas por la **Arrendataria** bajo este Contrato de Arrendamiento. Disponiéndose que tampoco se suspenderán las obligaciones de ninguna de las partes bajo este Contrato de Arrendamiento por razón de fallas esporádicas en el sistema de energía eléctrica que no obedezcan a defectos del sistema; reparaciones, cambios o mejoras necesarias o dificultades para realizar las mismas ocasionadas por escasez de materiales y/o de mano de obra que no sean producidas por el contratista o la **Arrendadora;** o cualquier otra causa fuera del control de la **Arrendadora.** Cualesquiera reparaciones o mejoras que efectúe la **Arrendadora** serán de primera calidad de tal suerte que garanticen la mejor utilización por la **Arrendataria** del **Área Arrendada.** La **Arrendadora** designará a una persona encargada que esté accesible en el **Área Arrendada** para recibir aquellas notificaciones o requerimientos de la **Arrendataria,** que pueda actuar con prontitud y hacerse cargo de las reparaciones a las que se obliga la **Arrendadora** mediante este Contrato de Arrendamiento. ------------------------------

---**Sección Ocho Punto Seis (8.6)** - Responsabilidad de la Arrendataria por Ciertos Gastos: La **Arrendataria** responderá por el pago de las reparaciones que según este Contrato de Arrendamiento corresponden a la **Arrendadora,** si las mismas son ocasionadas debido a los actos u omisiones negligentes de los agentes o

empleados de la **Arrendataria**.--------------------------------------------------------

---**Sección Ocho Punto Siete (8.7)** - <u>Mejoras</u>. La **Arrendataria** podrá efectuar, a su costo, las mejoras al **Área Arrendada**, pudiendo contratar para ello a la **Arrendadora** o a cualquier otra persona o entidad debidamente cualificada y autorizada por la **Arrendadora**. En todo caso en que las mejoras no sean efectuadas por la **Arrendadora**, se requerirá la previa aprobación de éste de los planos de la mejora propuesta, cuya aprobación no podrá ser denegada razonablemente.----------

---**Sección Ocho Punto Ocho (8.8)** - <u>Utilidades</u>. La **Arrendadora** instalará las facilidades de los servicios públicos a ser usados por la **Arrendataria** tales como agua, alcantarillado, electricidad, combustible y las bandejas de los cables de teléfonos *(telephone cable trays)*, de acuerdo con los requisitos en los Planos Finales así como las reglas y reglamentos de la compañía privada o instrumentalizad pública que provea dichos servicios. Además, la **Arrendadora** se encargará de coordinar el suplido a la **Arrendataria** del combustible necesario para operar los equipos de emergencia (generadores, bombas incendio y etc.), con la debida coordinación del Director Ejecutivo Regional de la **Arrendataria**, quien a su vez certificará la prestación del servicio. Se aclara no obstante que la **Arrendataria** tendrá a su cargo el pago del combustible así como otros cargos aplicables relacionados con el suplido del mismo .-------------------------------------

---**Sección Ocho Punto Nueve (8.9)** - <u>Pago de Utilidades</u>. La **Arrendataria** tendrá a su cargo los pagos por los servicios de electricidad, agua, alcantarillado sanitario, gas, combustible, teléfono y otros servicios análogos incluyendo el pago de cualquier depósito requerido para ello. La **Arrendataria** también tendrá a su cargo los pagos por los servicios de recogido de basura así como la limpieza y fumigación de las Áreas Privadas, incluyendo el pago de cualquier depósito requerido para ello. La **Arrendataria** también tendrá a su cargo el pago por combustible necesario para operar los equipos de emergencia (generadores, bombas

incendio y etc.), siempre y cuando la falla en la electricidad no sea atribuible a la **Arrendadora**.-----------------------------------------------------------------------------------

--- **Sección Ocho Punto Diez (8.10)** - **Interrupción de Servicios de Utilidades.** La **Arrendadora** no será responsable ni se entenderá que ha incumplido el presente Contrato de Arrendamiento por razón de interrupción de cualquiera de los servicios aquí mencionados, siempre y cuando dicha interrupción no sea atribuible a actos de la **Arrendadora** o al incumplimiento de cualquiera otra de sus obligaciones bajo los términos del presente Contrato de Arrendamiento. ------------------------------------

## SECCIÓN NUEVE (9)
## (CONDICIONES ESPECIALES)

---**Sección Nueve Punto Uno (9.1)** - La **Arrendadora** y la **Arrendataria** acuerdan las siguientes condiciones especiales:----------------------------------------------------------

-----(1) En caso de que la **Arrendataria** o la persona en quien ésta delegue no se encuentre disponible para permitir el acceso al **Área Arrendada** a la **Arrendadora** ésta, por sí o a través de sus representantes autorizados podrá entrar a la misma para realizar reparaciones de emergencia o tomar cualquier medida que sea necesaria y que no conflija con lo dispuesto en el presente Contrato de Arrendamiento. La **Arrendadora** hará todo lo posible por notificar previamente a la **Arrendataria**, de la necesidad de entrar al **Área Arrendada** y de obtener su autorización a esos fines.

-----(2). La **Arrendataria** utilizará el sistema eléctrico según provisto por la **Arrendadora** para el **Área Arrendada** y su consumo de energía eléctrica no excederá la capacidad para la que ha sido diseñada el **Área Arrendada**. En caso de ser necesario el alterar el sistema eléctrico del **Área Arrendada** para utilizar el equipo que requiera mayor capacidad de electricidad, la **Arrendataria** deberá solicitar autorización de la **Arrendadora** y de las entidades gubernamentales correspondientes y luego de obtener tal autorización, efectuará a sus tales modificaciones. En caso de alteraciones y/o adiciones al sistema eléctrico realizadas por la **Arrendataria** sin autorización de la **Arrendadora**, además

del costo de las mismas, de surgir algún desperfecto al sistema eléctrico, la **Arrendataria** responderá por la reparación y por el uso indebido de dicho sistema.

-----(3) Cualquier daño resultante por el uso indebido por cualquiera de las partes, sus empleados y agentes, de los baños o equipo de éstos, será reparado y pagado por la parte que cause o permita el mismo. ----------------------------------------------------

-----(4) Ninguna de las partes podrá pintar, taladrar, o cambiar parte alguna del **Área Arrendada,** ni cortar la cablería de la misma, excepto mediante acuerdo entre éstas y a tenor con lo dispuesto en el presente Contrato de Arrendamiento, sin que se entienda que esta limitación restringe las facultades de la **Arrendadora** de cumplir con sus obligaciones de proveer mantenimiento bajo el presente Contrato de Arrendamiento.------

--------(5) La **Arrendadora** proveerá el equipo de aire acondicionado al **Área Arrendada** y la **Arrendataria** conviene en mantener debidamente cerradas las ventanas y realizar todos los actos que sean necesarios y requeridos por los reglamentos vigentes par el mejor funcionamiento y aprovechamiento de dicho sistema.----------------------

-------(6) A la fecha de aceptación del **Área Arrendada,** la **Arrendadora** proveerá ésta con equipo de extinción de incendios según sea requerido por la reglamentación aplicable. ------------------------------------------------------------------------------

--------(7) La **Arrendadora** será responsable de que el servicio de ascensores esté disponible todas las horas que este siendo utilizada el **Área Arrendada.**----------------------

-------(8) La **Arrendataria** tendrá a su cargo la administración del área de estacionamiento y determinaran la forma en que se distribuirá el uso de ésta entre la **Arrendataria** y los demás cesionarios y/o subarrendatarios mediante los contratos que eventualmente se otorguen, de otorgarse alguno. ------------------------------------

### SECCIÓN DIEZ (10)
### (SEGUROS)

---**Sección Diez Punto Uno (10.1)** - Seguros. La **Arrendadora** y/o los contratistas a los cuales se les adjudique la construcción de cualquier parte del Proyecto, bajo su

sola cuenta y cargo, obtendrán y mantendrán los seguros que se enumeran en este Artículo. ------------------------------------------------------------------------------------------

---**Sección Diez Punto Dos (10.2)** - **Seguro(s) de Propiedad**. Durante la etapa de construcción del Proyecto se tendrá una cubierta de "Builder's Risk" que cubra, sin limitación, el cien por ciento (100%) de las estructuras contra cualquier riesgo de pérdida, daño o destrucción por cualquier causa, incluyendo el costo de remoción de escombros. Una vez finalice la construcción, la póliza de "Builder's Risk" será reemplazada por una póliza de propiedad en "Special Form, All Risk Form", la cual cubrirá las estructuras contra cualquier riesgo de pérdida, daño o destrucción por cualquier causa en una cantidad no menor al cien por ciento (100%) del valor de reemplazo de la propiedad, incluyendo el Proyecto y/o propiedad personal o mueble en las mismas. La póliza de propiedad incluirá un endoso de protección contra la inflación de ocho por ciento (8%) ("Inflation Guard"), e incluirá a la **Arrendataria** como "Loss Payee". De requerir la compañía aseguradora una tasación del Área Arrendada como una condición para expedir el correspondiente seguro sobre la propiedad, la **Arrendadora** se compromete a obtener dicha tasación, a su costo y, proveerá a la **Arrendataria** copia de la misma. -----------------------------------------

---**Sección Diez Punto Tres (10.3)** - **Seguro de Responsabilidad Pública**. Póliza general y de responsabilidad pública contra reclamaciones por daños personales, muerte y/o daños a propiedad, que cubra el Proyecto, la parcela y demás componentes del **Área Arrendada**. Dicho seguro proveerá una póliza principal con límites de un millón de dólares ($1,000,000.00) por ocurrencia y dos millones de dólares ($2,000,000.00) agregado anual, y una póliza adicional "umbrella" con límite no menor de cinco millones de dólares ($5,000,000.00). Estas pólizas deberán incluir a la **Arrendataria** como asegurada adicional e incluir un endoso de "Hold Harmless Agreement" a favor de la **Arrendataria** y estarán vigentes durante la construcción y continuarán, una vez finalizada la misma, durante la operación del

Proyecto. ------------------------------------------------------------------------------

---**Sección Diez Punto Cuatro (10.4)** - <u>Seguro de Inundación</u>. Se obtendrá seguro de inundación en caso de que éste sea aplicable a la zona del **Área Arrendada**.-----

---**Sección Diez Punto Cinco (10.5)**- <u>Seguro de Responsabilidad Patronal</u>. La **Arrendadora** obtendrá seguro del Fondo del Seguro del Estado, según requerido por ley. Además, se obtendrá un seguro por una cubierta no menor de quinientos mil dólares ($500,000.00) por persona y por evento que cubre la responsabilidad no cubierta por el Fondo del Seguro del Estado en caso de negligencia crasa.------------

---**Sección Diez Punto Seis (10.6)** - <u>Otros Seguros</u>. Cualquier otro seguro requerido por ley o recomendado por los usos particulares del Proyecto.--------------

---**Sección Diez Punto Siete (10.7)** - <u>Certificados de Seguros</u>. A la Fecha de Comienzo de Construcción, la **Arrendadora** entregará a la **Arrendataria** los certificados de seguros correspondientes a la fase de la construcción del Proyecto así como una copia de cada póliza. A la Fecha de Comienzo del Arrendamiento la **Arrendadora** · entregará a la **Arrendataria** los certificados de seguros correspondientes a la fase de la operación del Proyecto así como una copia de cada póliza. De igual manera, la **Arrendadora** entregará anualmente a la **Arrendataria** los certificados de la renovación de dichas pólizas, antes de la fecha de expiración de las mismas. ---------------------------------------------------------------------------

---**Sección Diez Punto Ocho (10.8)** - <u>Los Aseguradores</u>. Las pólizas de seguro antes indicadas tendrán que ser expedidas por compañías autorizadas a hacer negocios en el Estado Libre Asociado de Puerto Rico, y que sean razonablemente aceptables a la **Arrendataria**.-------------------------------------------------------

---**Sección Diez Punto Nueve (10.9)** - <u>Asegurado Adicional</u>. Las pólizas antes indicadas incluirán a la **Arrendataria** como "asegurada adicional" ("additional named insured") y cubierta por todos los relevos y salvaguardas contra todos los riesgos asegurados por los mismos ("hold harmless agreement"). Dichas pólizas

proveerán para que no puedan sufrir ningún cambio sustancial o cancelación de las mismas, sin haberse notificado por la compañía aseguradora a la **Arrendataria** con no menos de treinta (30) días de antelación de dicho cambio o terminación.----------

---**Sección Diez Punto Diez (10.10)** - **Notificación en Caso de Emergencia**. La **Arrendataria** notificará en el más breve plazo posible a la **Arrendadora** en caso de fuego, daños o cualquier emergencia que ocurra en el **Área Arrendada**. ---------

---**Sección Diez Punto Once (10.11)** - **Reparaciones Inmediatas**. En caso de ocasionarse daños parciales por fuego o cualquiera otra pérdida cubierta por las pólizas de seguro mantenidas por la **Arrendadora**, pero que requieran inmediata reparación, la **Arrendataria** podrá restituir el área afectada al mismo estado en que se encontraba antes de que se ocasionaran los daños o la destrucción, siempre que dicha acción se  notifique previamente a la **Arrendadora** y no afecte la reclamación por los daños cubiertos por pólizas de ésta. La **Arrendataria** recobrará de la **Arrendadora**, previa presentación de la factura correspondiente, los costos incurridos en dicha restitución. La **Arrendadora** efectuara tal reembolso a más tardar dentro de los sesenta (60) días del recibo de pago de la compensación resultante del seguro. Si transcurrido dichos sesenta (60) días no se ha reembolsado la cantidad recibida por la **Arrendadora** del seguro, entonces se descontara la misma del componente de mantenimiento de la renta mensual a pagarse. ——————————— ———————————

---**Sección Diez Punto Doce (10.12)** - **Reducción de Renta en Caso de Inutilidad Parcial**. Si el daño por razón de fuego por cualquier otra causa al **Área Arrendada** es parcial, la renta a pagar por la **Arrendataria** será reducida del componente operacional del Canon de Arrendamiento (mensual) en proporción a la porción del **Área Arrendada** que resulte inservible, según lo determine la compañía de seguro correspondiente. Dicha reducción al Canon de Arrendamiento permanecerá vigente hasta tanto la **Arrendataria** acepte el área afectada luego de reparada.——————————————

---**Sección Diez Punto Trece (10.13)** - **Restauración en Caso de Inutilidad**

**Sustancial.** En caso de que: (1) el costo de restaurar el área afectada sea el cincuenta (50%) por ciento o más de valor de dicha área, según lo determine la compañía de seguro correspondiente, y el daño ocasionado no permita el uso para lo que ha sido destinada el **Área Arrendada** ó (2) el daño ocurrido al **Área Arrendada** sea uno sustancial, según lo determine la compañía de seguro correspondiente, y no es de los riesgos cubiertos por la póliza mantenidas por la **Arrendadora**, la **Arrendadora** podrá reparar los daños según lo aquí estipulado o dar por terminado el Contrato de Arrendamiento. La **Arrendadora** notificará a la **Arrendataria** los fundamentos de su decisión de dar por terminado el Contrato de Arrendamiento dentro de un plazo de cuarenta y cinco (45) días de ocasionados los daños y, en su consecuencia, se dará por terminado el Contrato de Arrendamiento. Se aclara que de terminarse el Contrato de Arrendamiento bajo las circunstancias antes mencionadas en este inciso, la **Arrendataria** no tendrá derecho de adquirir por compraventa ni de otra forma el Área Arrendada ni ninguno de sus componentes individuales. ----------------

---**Sección Diez Punto Catorce (10.14) -** _Obligaciones en Caso de la Terminación del Arrendamiento._ En caso de que el Contrato de Arrendamiento termine por las razones expuestas en la sección que antecede, la obligación de la **Arrendataria** de pagar el Canon de Arrendamiento pactado cesará desde la fecha en que se hubiese notificado a la **Arrendadora** los daños o la destrucción de **Área Arrendada.**-------------------------------------------------------------------------------

---**Sección Diez Punto Quince (10.15) -** _Reclamaciones._ La **Arrendadora** asume toda responsabilidad legal proveniente de reclamaciones de daños y perjuicios por hechos o causas de acción surgidas en el **Área Arrendada** relativa a los servicios de mantenimiento que preste y efectúe bajo el presente Contrato de Arrendamiento respecto a las reparaciones y sustituciones necesarias en el **Área Arrendada.** La **Arrendataria** responderá de reclamaciones de daños y perjuicios por hechos o causas de acción que resulten de acciones u omisiones de ésta o de sus empleados

en las áreas del **Área Arrendada** que se encuentre bajo su control, excluyéndose las áreas que estén bajo el control de los subarrendatarios o cesionarios debidamente aprobados por la **Arrendadora**, disponiéndose que dichos subarrendatarios o cesionarios responderán de aquellas reclamaciones de daños y perjuicios por hechos o causas de acción que resulten de acciones u omisiones suyas o de sus empleados en las áreas que se encuentren bajo su control. La **Arrendataria** obtendrá una póliza de seguro que responda por los daños que le son imputables al amparo del presente Contrato de Arrendamiento, pero dicha póliza excluirá daños resultantes de defectos o desperfectos del **Área Arrendada** y daños de otra forma imputables a la **Arrendadora** o a los subarrendatarios o cesionarios aprobados por la **Arrendadora**. De igual forma, dichos subarrendatarios o cesionarios aprobados por la **Arrendadora** obtendrán una póliza de seguro que responda por los daños que le son imputables al amparo del presente Contrato de Arrendamiento y estarán obligados a incluir a la **Arrendadora** como asegurada adicional. ------------------------------------------------------------------------------------------



---**Sección Diez Punto Dieciséis (10.16) - Indemnización**. La **Arrendadora** indemnizará, relevará y salvaguardará a la **Arrendataria** de toda responsabilidad, pérdidas, daños, costos, penalidades, multas y/o honorarios y de cualesquiera acciones, reclamaciones o demandas sobre dichos particulares, que pudieran surgir relacionados con el cumplimiento de sus obligaciones con el desarrollo, construcción, uso, operación, conservación y mantenimiento de la Parcela Centro Judicial y/o el Proyecto y/o cualquier otra mejora que se lleve a cabo como parte del desarrollo del Proyecto, dentro y fuera de la parcela Centro Judicial y por cualquier reclamación resultante de defectos de construcción o estructurales en el **Área Arrendada**; con cualquier acto, omisión o negligencia de la **Arrendadora**, o de sus agentes, empleados, representantes, consultores, invitados, usuarios, ocupantes o inquilinos; con cualquier incumplimiento de la **Arrendadora**, incluyendo lo relativo

a las condiciones ambientales y acciones remediables; con cualquier uso, no uso, posesión, ocupación, operación, mantenimiento o administración del Área Arrendada y a fuera del Área Arrendada, pero bajo el control de la **Arrendadora**, por parte de la **Arrendadora** o de sus agentes, empleados, representantes, consultores, invitados, usuarios, ocupantes o inquilinos, a menos que resulte de la negligencia y los actos u omisiones de la **Arrendataria**, sus empleados, contratistas o agentes; y con cualquier accidente, lesión o daño a cualquier persona o propiedad que ocurra en y en los alrededores del Área Arrendada y afuera del Área Arrendada, pero bajo el control de la **Arrendadora**, a menos que ocurra solamente como resultado de la negligencia o de los actos u omisiones de la **Arrendataria**, sus empleados, subarrendatarios, contratistas o agentes.-------------------------------------



### SECCIÓN ONCE (11)
### (CONTRIBUCIONES)

---**Sección Once Punto Uno (11.1)** - **Contribuciones**. La **Arrendadora** pagará o logrará que se pague, antes que ninguna multa, penalidad o interés sea impuesta por el incumplimiento de pago, y será responsable de todas las contribuciones de cualquier naturaleza, cargos, aportaciones o cuotas que se impongan y correspondan al Proyecto y/o al **Área Arrendada** y/o a cualesquiera otros bienes, operaciones y/o servicios relacionados con el Proyecto y/o al **Área Arrendada**, a no ser que su imposición se deba a cambio en legislación, incluyendo el cambio en ordenanza y reglamento tanto del gobierno estatal, municipal y/o federal. ---------------------------

---**Sección Once Punto Dos (11.2)** - **Contribuciones sobre la Propiedad**. Durante la vigencia del Contrato de Arrendamiento, y de imponerse el pago de contribuciones sobre la propiedad al **Área Arrendada**, la **Arrendadora** será responsable del pago de las mismas y someterá a la **Arrendataria** y a su acreedor hipotecario una certificación de la autoridad gubernamental correspondiente o cualquier otra evidencia demostrativa de que ha satisfecho el pago de contribuciones

sobre el **Área Arrendada**, según le sea requerido. Se acuerda y aclara que la responsabilidad de la **Arrendadora** en cuanto al pago de las contribuciones sobre la propiedad se limita a contribuciones sobre la propiedad a base del primer recibo que se emita a los efectos, contemporáneo con la expedición del permiso de uso, por lo que cualquier aumento en dicha contribución será por cuenta de la **Arrendataria**.--

---**Sección Once Punto Tres (11.3) - Certificación**. La **Arrendadora** proveerá a la **Arrendataria** y a su acreedor hipotecario, una certificación de la autoridad gubernamental correspondiente o cualquier otra evidencia demostrativa de que ha satisfecho el pago de las contribuciones sobre el **Área Arrendada**, según le sea requerido. -----------------------------------------------------------------------



---**Sección Once Punto Cuatro (11.4) - <u>Contribuciones sobre Ingresos, Aportaciones al Seguro Social</u>**. La **Arrendadora** es responsable de pagar las aportaciones correspondientes al Seguro Social Federal y al Negociado de Contribución sobre Ingresos del Departamento de Hacienda por cualquier cantidad tributable como resultado de los ingresos devengados bajo este Contrato de Arrendamiento. La **Arrendataria** notificará al Negociado de Contribución sobre Ingresos los pagos y reembolsos que sean efectuados a la **Arrendadora**.-----------

## SECCIÓN DOCE (12)
## (EXPROPIACIÓN FORZOSA)

---**Sección Doce Punto Uno (12.1) - <u>Expropiación Forzosa</u>**. Si durante la vigencia de este contrato el **Área Arrendada** fuera objeto de un procedimiento de expropiación forzosa iniciado a la luz de la legislación vigente a estos fines, tal expropiación dará por terminado este Contrato de Arrendamiento y los derechos y obligaciones bajo él acordados. El Canon de Arrendamiento a ser pagado por la **Arrendataria** se ajustará a la fecha de tal terminación.---------------------------------

---**Sección Doce Punto Dos (12.2) - <u>Expropiación Parcial</u>**. Las partes acuerdan que de iniciarse una acción de expropiación forzosa de una parte del **Área Arrendada** que no impida el uso por la **Arrendataria** del resto de la misma, este

Contrato de Arrendamiento continuará en vigor. Disponiéndose, sin embargo, que efectivo a la fecha en que la **Arrendataria** pierda el uso efectivo del área objeto de expropiación se reducirá el Canon de Arrendamiento a ser pagado por la **Arrendataria** por una suma proporcional a la relación que guarde la porción del área expropiada respecto a la totalidad del **Área Arrendada** antes de iniciarse el procedimiento de expropiación forzosa. En dicho caso, la **Arrendadora** destinará aquella compensación que le corresponda por dicha expropiación para complementar el canon ajustado para fines de efectuar aquellos pagos relativos al financiamiento de **Área Arrendada**. Las partes reconocen y aclaran que el Cánon de Arrendamiento no se paga en proporción a los pies cuadrados de la Parcela Centro Judicial.------------------------------------------------------------------------------------

---**Sección Doce Punto Tres (12.3)** - <u>Notificación</u>. En cualesquiera de las dos situaciones mencionadas anteriormente, la **Arrendataria** tendrá derecho a ser notificada y a participar en los procedimientos de expropiación forzosa para que sus intereses sean protegidos y valorados correctamente al concederse la justa compensación requerida por la ley.----------------------------------------------------------------------------------------

### SECCIÓN TRECE (13)
### (DAÑOS Y DESTRUCCIÓN)

---**Sección Trece Punto Uno (13.1)** - <u>Notificación de Daños</u>. La Arrendataria, a la brevedad posible, notificará a la **Arrendadora**, en caso de daños, fuego o cualquier emergencia que ocurra en el **Área Arrendada**. -------------------------------------

---**Sección Trece Punto Dos (13.2)** - <u>Daños o Destrucción de Propiedad</u>. Ninguna pérdida, daño o destrucción al **Área Arrendada** por cualquier causa, tendrá el efecto de terminar este Contrato de Arrendamiento, salvo según se expone más adelante, o de relevar a la **Arrendataria** del pago del Canon de Arrendamiento.

---**Sección Trece Punto Tres (13.3)** - <u>Prueba de Pérdida</u>. En la eventualidad de que todo o parte del Área Arrendada sufran daños o pérdida, la **Arrendadora** notificará prontamente a la compañía aseguradora y a la **Arrendataria**, y

proseguirá con la(s) reclamación(es) correspondiente(s) de conformidad con los términos de las pólizas vigentes. --------------------------------------------------------

---Sección Trece Punto Cuatro (13.4) - **Destrucción Parcial, Reparación del Área Arrendada**. Si el costo de reparar el **Área Arrendada** afectada por cualquier daño o destrucción, por fuego por cualquier otro riesgo, de los cubiertos por la póliza de la **Arrendadora** es menor del cincuenta por ciento (50%) del valor de la misma, según lo determine la compañía de seguros correspondiente, la **Arrendadora** procederá a reparar el **Área Arrendada**. La reparación deberá restituir el área afectada y sus accesiones al mismo estado en que se encontraban antes de que se ocasionaran los daños o la destrucción, de forma que se pueda seguir utilizando la totalidad del **Área Arrendada**. --------------------------------------------------

---Sección Trece Punto Cinco (13.5) - **Comienzo de la Reparación**. El comienzo de la reparación no tardará más de noventa (90) días a partir de la fecha en que la **Arrendadora** tenga conocimiento del daño o reciba notificación del daño, lo que ocurra primero, salvo que la **Arrendadora** justifique por escrito prorrogar el término. Dicha prórroga nunca excederá de treinta (30) días a partir de la aprobación de parte de la **Arrendataria** de la misma, disponiéndose que dichos términos quedarán en suspenso mientras estén vigentes órdenes o restricciones impuestas por agencias gubernamentales con autoridad para ello o por la compañía de seguros, que impidan el comienzo de las reparaciones. ------------------------------

---Sección Trece Punto Seis (13.6) – **Ajuste al Canon de Arrendamiento**. Si el daño o destrucción del **Área Arrendada** es parcial, el Canon de Arrendamiento a pagar por la **Arrendataria** será reducido en proporción a la parte arrendada que resulte inservible, según lo determine la compañía de seguros correspondiente. Dicha reducción permanecerá vigente hasta tanto la **Arrendataria** acepte el área afectada después de reparada. --------------------------------------------------------

## SECCIÓN CATORCE (14)
## CESIÓN Y TRASFERENCIAS

---**Sección Catorce Punto Uno (14.1)** - <u>Cesión o Subarriendo por la Arrendataria</u>: Sin perjuicio de las obligaciones contraídas en el presente Contrato de Arrendamiento, la **Arrendataria** podrá ceder o subarrendar parte del **Área Arrendada**, siempre y cuando obtenga el consentimiento previo y escrito de la **Arrendadora,** el cual no podrá ser denegado irrazonablemente. La **Arrendadora** podrá objetar el subarriendo si el uso o actividad propuesta por la **Arrendataria** puede afectar la integridad del **Área Arrendada** o si puede provocar un incremento material en el costo de mantenimiento del **Área Arrendada**, según razonablemente evidencie la **Arrendadora** a la **Arrendataria** en cada caso. En aquellos casos en que la **Arrendadora** evidencia que la actividad propuesta pueda provocar un incremento material en el costo del mantenimiento del **Área Arrendada**, el subarrendamiento podría permitirse sujeto a que la **Arrendadora** y la **Arrendataria** negocien un aumento en el componente de mantenimiento del Canon de Arrendamiento. No obstante lo anterior, cualquier subarriendo que la **Arrendadora** autorice no relevará a la **Arrendataria** de sus obligaciones al amparo del presente Contrato de Arrendamiento. ----------------------------------------------------------------

---**Sección Catorce Punto Dos (14.2)** - <u>Transferencias o Cesiones por la Arrendadora Durante el Término del Contrato de Arrendamiento</u>. La **Arrendadora** no podrá vender y/o ceder el **Área Arrendada** antes de vencido el término del presente Contrato de Arrendamiento, sin antes ofrecerla con carácter preferencial a la **Arrendataria**.----------------------------------------------------------------

---**Sección Catorce Punto Tres (14.3)** - <u>Compra por la Arrendataria.</u> De la **Arrendadora** decidir vender y/o ceder el Área Arrendada y, luego de haber notificado a la **Arrendataria**, se entenderá que la **Arrendataria** ha ejercido su derecho preferencial a adquirir el **Área Arrendada** con la mera notificación de su intención de adquirir el **Área Arrendada** por escrito dentro del periodo

de noventa (90) días antes descrito, sin necesidad de que la compra del Área Arrendada se perfeccione dentro de dicho término. ------------------------------------

-----La **Arrendataria** deberá perfeccionar la compraventa del **Área Arrendada** en un plazo de no más de noventa (90) días luego de notificar su intención de adquirir el **Área Arrendada**. En dicho caso, los gastos de sellos del original de la escritura de compraventa y los honorarios del notario serán sufragados por la **Arrendadora**. El Notario será seleccionado por la **Arrendadora**. Los demás sellos y aranceles, si algunos, serán de cuenta y cargo de la **Arrendataria**.------------------------------------

-----En caso de que la **Arrendataria** no ejerza dentro de un término de noventa (90) días su derecho a adquirir preferencialmente el **Área Arrendada**, la **Arrendadora** podrá cederla o venderla a un tercero, quien la adquirirá sujeto a los términos y condiciones del presente Contrato de Arrendamiento. ------------------------------------

-----En caso de que la **Arrendataria** no ejerza su derecho a adquirir el **Área Arrendada**, toda información sobre cualquier comprador de la misma será suministrada a la **Arrendataria** antes de perfeccionarse el contrato de compraventa entre la **Arrendadora** y el potencial comprador.------------------------------------

---**Sección Catorce Punto Cuatro (14.4)** - <u>Transferencias o Cesiones a la Arrendataria</u>. Salvo por lo dispuesto en la **Sección Dieciséis (16)** de este Contrato de Arrendamiento, la **Arrendataria** no podrá adquirir por compraventa o de otra forma el Área Arrendada, a menos que la **Arrendadora**, a su entera discreción, ofrezca a la **Arrendataria** la oportunidad de adquirir el Área Arrendada.--------------

---**Sección Catorce Punto Cinco (14.5)** - <u>Transferencias o Cesiones a Terceros</u>. La **Arrendadora** no podrá transferir o ceder, directa o indirectamente, o de cualquier otra forma enajenar, parcial o totalmente, el **Área Arrendada** y los derechos e intereses conferidos mediante este Contrato de Arrendamiento sin el consentimiento previo escrito de la **Arrendataria**. No obstante, la **Arrendadora** podrá transferir, ceder o, de cualquier otra forma enajenar, el **Área Arrendada** y

sus derechos e interés bajo este Contrato de Arrendamiento con el consentimiento previo escrito de la **Arrendataria**, el cual no podrá ser atrasado, condicionado o rechazado de forma irrazonable, si los accionistas principales actuales de la **Arrendadora** continúan manteniendo por lo menos una mayoría del interés propietario sobre la **Arrendadora** y/o de la entidad a la cual serían transferidos o cedidos o enajenados los derechos y el **Área Arrendada**, de manera tal que permita que los accionistas actuales de la **Arrendadora** mantengan el control efectivo de la administración de la entidad cesionaria y que dicha entidad cesionaria tenga igual o mejor capacidad financiera y operacional que la **Arrendadora** y cumpla con todos lo requisitos establecidos en el Contrato de Desarrollo y este Contrato de Arrendamiento. En conjunto con la solicitud de aprobación de la transferencia o cesión, la **Arrendadora** proveerá a la **Arrendataria** la información bancaria y financiera necesaria para que la **Arrendataria** pueda evaluar a la entidad cesionaria propuesta y cualquier otra información que la **Arrendataria** entienda razonablemente necesaria para evaluar la solicitud de aprobación de transferencia o cesión. -----------------------------------------------------------------------------------



---**Sección Catorce Punto Seis (14.6)** - <u>**Razones para Denegar la Aprobación**</u>. Será considerado como razonable, pero sin limitarse a ello, que la **Arrendataria** deniegue o no otorgue su consentimiento a la cesión del **Área Arrendada** y/o los derechos e intereses conferidos mediante este Contrato de Arrendamiento a favor de un tercero, el que el cesionario propuesto no tenga la capacidad financiera y/u operacional y/o la experiencia necesaria para cumplir con las obligaciones de Contrato de Arrendamiento o si la **Arrendataria**, como entidad pública, presenta justificación suficiente sobre deficiencias en el carácter y reputación del cesionario propuesto. -----------------------------------------------------------------------------------

---**Sección Catorce Punto Siete (14.7)** - <u>**Copia de los Acuerdos de Cesión o Transferencia**</u>. Una vez se realice la transferencia o cesión de acuerdo con lo

dispuesto en la Sección 9, la **Arrendadora** proveerá a la **Arrendataria** copia de los acuerdos o documentos otorgados para llevar a cabo dicha transferencia o cesión, en los cuales el cesionario asumirá y acordará observar y cumplir con todos los acuerdos, condiciones, representaciones y disposiciones, de parte de la **Arrendadora**, establecidos en el Contrato de Desarrollo y en este Contrato de Arrendamiento.---------------------------------------------------------------------------------

---**Sección Catorce Punto Ocho (14.8)** - <u>Transferencias Prohibidas</u>. La **Arrendadora** no podrá transferir o ceder, directa o indirectamente, parcial o totalmente el **Área Arrendada** ni los derechos establecidos a una persona o entidad a la que la **Arrendadora** tenga conocimiento de que ha sido convicta o se haya declarado culpable en un proceso criminal por un delito o que sea el objeto de una investigación de un gran jurado antes de la fecha de la transferencia o cesión propuesta; a una persona o entidad de un país cuyas actividades estén reglamentadas o controladas por las siguientes leyes y reglamentos y órdenes promulgados en virtud de éstas, de los Estados Unidos de América, según enmendadas: "The Trading and Enemy Act of 1917", "The International Emergency Economic Powers Act of 1976" y "The Anti-Terrorism and Arms Export Amendments Act of 1989"; ni a una persona designada como "Special Designated National or Blocked Person" por el Departamento del Tesoro de los Estados Unidos de América. -------------------

## SECCIÓN QUINCE (15)
## ACREEDOR HIPOTECARIO

---**Sección Quince Punto Uno (15.1)** - <u>Acuerdo de No Perturbación ("Non Disturbance Agreement")</u>. La **Arrendadora** obtendrá de sus acreedores hipotecarios el acuerdo escrito mediante el cual se comprometen a honrar este Contrato de Arrendamiento en caso de ejecución o cualquier procedimiento dirigido a lograr el cumplimiento de lo convenido en la hipoteca vigente al otorgarse este Contrato de Arrendamiento, así como en cuanto a cualquier otro acreedor hipotecario de una hipoteca constituida en el futuro. Mediante dicho acuerdo,

cualquier acreedor hipotecario de la **Arrendadora** se comprometerá a garantizar que la posesión de la **Arrendataria** no será perturbada siempre y cuando ésta, al momento de la ejecución de la hipoteca o procedimiento legal de que se trate, no haya incumplido sus obligaciones bajo este Contrato de Arrendamiento.--------------

---**Sección Quince Punto Dos (15.2)** - <u>Derechos de los Acreedores Hipotecarios.</u> <u>Notificación</u>. El o los acreedores hipotecarios serán notificados simultáneamente que la **Arrendadora** de cualquier proceso o acción para terminar o de cualquier otra forma afectar el Contrato de Arrendamiento, incluyendo cualquier aviso de evento de incumplimiento, algún asunto en que un evento de incumplimiento, un aviso de terminación o una condición que pueda llevar a la terminación del Contrato de Arrendamiento. La notificación al o a los acreedores hipotecarios será por correo certificado con acuse de recibo y ninguna notificación o proceso a la **Arrendadora** será efectivo a menos que una copia de la notificación se envíe al o a los acreedores hipotecarios. --------------------------------------------------------------------------------

---**Sección Quince Punto Tres (15.3)** - <u>Derecho a Remediar</u>. El o los acreedores hipotecarios podrán, a su discreción remediar cualquier incumplimiento por parte de la **Arrendadora**. Para remediar el incumplimiento tendrán el mismo tiempo, términos y condiciones que tendría la **Arrendadora** para cumplir o remediar un incumplimiento específico, según lo establecido en este Contrato de Arrendamiento.

---**Sección Quince Punto Cuatro (15.4)** - <u>Cesión de Derechos de Canon de</u> <u>Arrendamiento</u>. La **Arrendadora** podrá ceder sus derechos a los cánones de arrendamiento adeudados y por cobrar, según lo establecido en Contrato de Arrendamiento, a favor del o de los acreedores hipotecarios que concedan el o los préstamos para el desarrollo y construcción del Proyecto. Dicha cesión no constituirá una liberación de ninguna de las obligaciones de la **Arrendadora**, salvo pacto en contrario entre las partes.-----------------------------------------------------------

---**Sección Quince Punto Cinco (15.5)** - <u>Obligaciones de los Acreedores</u>

**Hipotecarios, Notificación**. Durante el término del Contrato de Arrendamiento, la **Arrendadora** notificará a la **Arrendataria** sobre cualquier incumplimiento con los términos los acuerdos suscritos por la **Arrendadora** para el financiamiento del Proyecto. Además, las hipotecas proveerán para que el acreedor, acreedor hipotecario y/o fiduciario actuando a beneficio de éstos, notifique a la **Arrendataria** de cualquier incumplimiento por parte de la **Arrendadora** de los términos del financiamiento y/o hipoteca.---------------------------------------------------------------

---**Sección Quince Punto Seis (15.6) - Derecho a Remediar**. La **Arrendataria** tendrá treinta (30) días, contados a partir del recibo de la notificación al acreedor hipotecario para, a su discreción, remediar el incumplimiento y proceder a descontarlo del canon de arrendamiento. -------------------------------------------------

---**Sección Quince Punto Siete (15.7) - Término de las Hipotecas**. El financiamiento obtenido por la **Arrendadora** y garantizado mediante hipoteca para construir las facilidades objeto de este Contrato de Arrendamiento, incluso el financiamiento de los gastos de construcción correspondientes a los "Change Orders" no podrá exceder el término del presente Contrato de Arrendamiento. Dicho financiamiento e hipoteca(s), incluso lo correspondiente a los antes mencionados "Change Orders", no permitirán que se extienda el término de dicho préstamo más allá del término de duración del presente Contrato de Arrendamiento.

---**Sección Quince Punto Ocho (15.8) - Definición Hipoteca**. El término "hipoteca" comprenderá a los fines de este Contrato de Arrendamiento: hipotecas del tipo autos liquidables, consolidaciones, extensiones o prórrogas a las mismas, renovaciones, reemplazos y sustituciones de éstas; así como cualquier otra forma de financiamiento reconocido para obtener cantidades y adelantos de cantidades de dinero que graven o puedan en el futuro gravar **Área Arrendada**.--------------------------------

---**Sección Quince Punto Nueve (15.9) - Venta o Cesión de Derechos, Ejecución**. La **Arrendataria** conviene que, en caso de venta o cesión por parte de la

37

Arrendadora de su interés en este Contrato de Arrendamiento, o de instarse cualquier procedimiento para la ejecución y/o venta en pública subasta por razón del incumplimiento por la **Arrendadora** con las condiciones de una hipoteca constituida gravando el **Área Arrendada**, habrá de reconocer como arrendador bajo este Contrato de Arrendamiento al nuevo titular de la misma, ello sujeto a lo dispuesto en la **Sección Octava**.--------------------------------------------------------------------------------

### SECCIÓN DIECISÉIS (16)
### SUBARRENDAMIENTO DEL EDIFICIO DE ESTACIONAMIENTO

---Sección Dieciséis Punto Uno (16.1) - <u>Derecho de Subarrendar el Edificio del Estacionamiento</u>. La **Arrendadora** y la **Arrendataria** reconocen que como parte del derecho de arrendamiento concedido mediante el presente Contrato de Arrendamiento, la **Arrendataria** tendrá el derecho de subarrendar y/o operar directamente y/o a través de terceros el Edificio del Estacionamiento para uso de estacionamiento únicamente. Se reconoce expresamente que como parte del referido derecho de subarrendar y/o operar directamente y/o a través de terceros el Edificio del Estacionamiento, la **Arrendataria** podrá devengar ingresos u otros beneficios económicos.--------------------------------------------------------------------------------

---Sección Dieciséis Punto Dos (16.2) - <u>Permisos y Autorizaciones para Operar el Edificio del Estacionamiento</u>. De la **Arrendataria** ejercer su derecho a subarrendar y/u operar directamente y/o través de terceros el Edificio del Estacionamiento, la **Arrendataria** y/o sus agentes y/o sus subarrendatarios deberán obtener, a su costo, todos los permisos, endosos, concesiones y/o autorizaciones requeridos por las agencias gubernamentales concernidas para la operación del Edificio del Estacionamiento.--------------------------------------------------------------------------------

---Sección Dieciséis Punto Tres (16.3) - <u>Seguros Relacionados con la Operación del Edificio del Estacionamiento</u>. De la **Arrendataria** ejercer su derecho a subarrendar y/u operar directamente y/o través de terceros el Edificio del Estacionamiento, la **Arrendataria** y/o sus agentes y/o sus subarrendatarios

deberán cumplir, a su costo, con los siguientes requerimientos:------------------------

-----(a) Deberán obtener una póliza de seguro general y de responsabilidad pública para cubrir reclamaciones por daños personales, muerte y/o daños a propiedad, que cubra el Edificio del Estacionamiento y los componentes necesarios para su operación. Dicho seguro proveerá una póliza principal con límites de un millón de dólares ($1,000,000.00) por ocurrencia y dos millones de dólares ($2,000,000.00) agregado anual, y una póliza adicional "umbrella" con límite no menor de cinco millones de dólares ($5,000,000.00). Estas pólizas deberán incluir a la **Arrendadora** como asegurada adicional e incluir un endoso de "Hold Harmless Agreement" a favor de la **Arrendadora** y estarán vigentes durante todo el término en cual la **Arrendadora** y/o sus agentes y/o sus subarrendatarios operen el Edificio del Estacionamiento.------------------------------------------------------------------



-----(b) Deberán obtener una póliza de seguro del Fondo del Seguro del Estado, según requerido por ley. Además, se obtendrá un seguro por una cubierta no menor de quinientos mil dólares ($500,000.00) por persona y por evento que cubre la responsabilidad no cubierta por el Fondo del Seguro del Estado en caso de negligencia crasa. ------------------------------------------------------------------

-----(c) Deberán obtener cualquier otro seguro requerido por ley o recomendado en relación con la operación del Edificio del Estacionamiento.---------------------------

-----(d) A la fecha de comienzo de la operación del Edificio del Estacionamiento deberán entregar a la **Arrendadora** los certificados de seguros que se le requieren así como una copia de cada póliza. De igual manera, deberán entregar anualmente a la **Arrendadora** los certificados de la renovación de dichas pólizas, antes de la fecha de expiración de las mismas. ------------------------------------------------------

-----(e) Las pólizas de seguro antes indicadas tendrán que ser expedidas por compañías autorizadas a hacer negocios en el Estado Libre Asociado de Puerto Rico, y que sean razonablemente aceptables a la **Arrendadora**.------------------------

-----(f) Las pólizas antes indicadas incluirán a la **Arrendadora** como "asegurada adicional" ("additional named insured") y cubierta por todos los relevos y salvaguardas contra todos los riesgos asegurados por los mismos ("hold harmless agreement"). Dichas pólizas proveerán para que no puedan sufrir ningún cambio sustancial o cancelación de las mismas, sin haberse notificado por la compañía aseguradora a la **Arrendadora** con no menos de treinta (30) días de antelación de dicho cambio o terminación. ----------------------------------------------------------------

---Sección **Dieciséis Punto Cuatro (16.4)** - <u>No Costos Adicionales para la Arrendadora</u>. De la **Arrendataria** ejercer su derecho a subarrendar y/u operar directamente y/o través de terceros el Edificio del Estacionamiento, la **Arrendadora** no será responsable del pago ninguna aportación, cuota, arancel, interés, contribución o cargo de cualquier naturaleza que pudieran imponerle directa o indirectamente las agencias gubernamentales con jurisdicción en relación con la operación del Edifico del Estacionamiento por la **Arrendataria** y/o sus agentes y/o sus subarrendatarios. La **Arrendataria** por la presente libera y releva a la **Arrendadora** del pago de cualquier aportación, cuota, arancel, interés, contribución o cargo de cualquier naturaleza que le pudieran imponer a la **Arrendadora** directa o indirectamente por concepto de la operación del Edificio del Estacionamiento por la **Arrendataria** y/o sus agentes y/o sus subarrendatarios y, además, se compromete a reembolsar a la **Arrendadora**, dentro de un término razonable, todo pago por concepto de aportación, cuota, arancel, interés, contribución o cargo de cualquier naturaleza que la **Arrendadora** esta se vea obligada a satisfacer por concepto de la operación del Edificio del Estacionamiento por parte de la **Arrendataria** y/o sus agentes y/o sus subarrendatarios.---------------------------------------------------------

---Sección **Dieciséis Punto Cinco (16.5)** - <u>Equipo y Mantenimiento del Edificio del Estacionamiento</u>. De la **Arrendataria** ejercer su derecho a subarrendar y/u operar directamente y/o través de terceros el Edificio del Estacionamiento, ésta y/o

sus agentes y/o sus subarrendatarios serán los únicos responsables de todo costo y/o gasto asociado con la instalación y mantenimiento de cualquier equipo necesario o incidental a la operación del Edificio del Estacionamiento.-----------------------------

### SECCIÓN DIECISIETE (17)
### COMPRAVENTA

---**Sección Diecisiete Punto Uno (17.1)** - **Compraventa**. Transcurrido el término de arrendamiento de treinta (30) años, la **Arrendadora** se obliga a vender y la **Arrendataria** se obliga a comprar el **Área Arrendada** por el precio convenido de UN DOLAR ($1.00), conforme a las leyes y procedimientos vigentes a la fecha en que se efectúe dicha compraventa.------------------------------------------------------

---**Sección Diecisiete Punto Dos (17.2)** - **Cargas y Gravámenes**. La Arrendadora se obliga a traspasar el dominio del **Área Arrendada**, libre de cargas y gravámenes, embargos o anotaciones registrales, reclamaciones judiciales o extrajudiciales que involucre cualquier interés en el **Área Arrendada**, incluyendo y sin limitarse a la hipoteca o hipotecas constituidas para garantizar el o los préstamos de financiamiento para la compra de los terrenos y la construcción de las edificaciones o cualesquiera otros que pudiesen afectar la transmisión del dominio libre de cargas y gravámenes. --------------------------------------------------------------------------

---**Sección Diecisiete Punto Tres (17.3)** - **Objeto de la Compraventa**. Mediante la compraventa, la **Arrendataria** adquirirá el **Área Arrendada**.--------------------------

### SECCIÓN DIECIOCHO (18)
### INCUMPLIMIENTO

---**Sección Dieciocho Punto Uno (18.1)** - **Incumplimiento de la Arrendadora**. Ambas partes acuerdan que los siguientes eventos serán considerados como incumplimiento de parte de la **Arrendadora**: ----------------------------------------------

--------(1) Falta de cumplimiento con las obligaciones contraídas según se desprende de la **Sección Diez (10)** (relacionada con los seguros del **Área Arrendada**), transcurridos treinta (30) días luego de la notificación por escrito a la **Arrendataria**.

--------(2) Falta de cumplimiento con cualesquiera de sus obligaciones contraídas en este Contrato de Arrendamiento, incluso su obligación de mantener el **Área Arrendada** de forma adecuada, segura para el uso provisto y exceptuando aquellas instancias causadas por eventos de fuerza mayor, según definidos por la jurisprudencia puertorriqueña y cuyas reparaciones se hagan en el tiempo y la forma estipulada en el presente Contrato de Arrendamiento. --------------------------------------

-----No se considerará falta de cumplimiento de la **Arrendadora**, si luego de recibida una notificación escrita de la **Arrendataria** requiriendo cumplir con las obligaciones dispuestas en este Contrato de Arrendamiento, la **Arrendadora** comienza a cumplir con sus obligaciones diligentemente, procurando las reparaciones o actividades necesarias, dentro de los próximos tres (3) días de recibida dicha notificación o dentro del siguiente día laborable de haberse hecho la notificación en los casos que se impida el uso del Área Arrendada o se comprometa la seguridad del Tribunal. ---

--------(3) Cualquier evento de incumplimiento con los términos de cualquier préstamo hipotecario que constituya un gravamen sobre el **Área Arrendada**. -------

---**Sección Dieciocho Punto Dos (18.2) - Incumplimiento de la Arrendataria**. Los siguientes eventos serán considerados como incumplimiento por la **Arrendataria** bajo este Contrato de Arrendamiento: ------------------------------------------------------

--------(1) El incumplimiento con el pago del Canon de Arrendamiento, o cualesquiera otra rembolso o pago a favor de la **Arrendadora** apliquen bajo este Contrato de Arrendamiento, luego de haber transcurridos treinta (30) días contados desde el recibo por la **Arrendataria** de la notificación escrita reclamando el pago. --

--------(2) Inobservancia de parte de la **Arrendataria** en el cumplimiento de las garantías, acuerdos, condiciones y estipulaciones contenidas en este Contrato de Arrendamiento por un periodo de sesenta (60) días luego de recibir comunicación escrita notificando su inobservancia y falta de cumplimiento por la **Arrendadora**. No obstante, en caso de que la falta no se pueda corregir en el periodo provisto, la

**Arrendadora** no podrá negar irrazonablemente a una extensión de tiempo si las acciones correctivas han comenzado diligentemente dentro del periodo provisto para su corrección. ------------------------------------------------------------------------

---**Sección Dieciocho Punto Tres (18.3)** - Remedios. Si la **Arrendadora** incumple con lo provisto en este Contrato de Arrendamiento, la **Arrendataria** tendrá derecho a: --

-------(1) Notificar por correo certificado o por cualquier medio fehaciente a la **Arrendadora** su falta de cumplimiento, estableciendo la naturaleza de éste. La **Arrendadora** tendrá la oportunidad de subsanar su incumplimiento dentro de un periodo de treinta (30) días a partir del recibo de la notificación, exceptuando aquellas disposiciones específicas dictadas en el presente Contrato de Arrendamiento que obligan a la **Arrendadora** a actuar en un periodo de tres días laborables o al siguiente día laborable según dispone el Contrato de Arrendamiento. --------------------------------

-------(2) Expirado el término provisto sin que la **Arrendadora** haya subsanado la causa de su incumplimiento o no proveyendo una explicación razonable y aceptable a la **Arrendataria** para el retraso de su cumplimiento, la **Arrendataria** le notificará a la **Arrendadora** mediante correo certificado de su intención de ejercitar su derecho de retener el Canon de Arrendamiento, excepto la porción del Canon de Arrendamiento correspondiente al pago del financiamiento del Proyecto (en adelante denominado como el "Pago del Financiamiento"). Dentro de un término de cinco días de haber recibido la notificación a la **Arrendadora** de su intención de ejercitar su derecho de retener el Canon de Arrendamiento, la **Arrendadora** deberá certificar a la **Arrendataria**, el monto del Pago del Financiamiento de manera que, de ser necesario retener el Canon de Arrendamiento, se deduzca de dicha retención la porción correspondiente el Pago del Financiamiento.-------------------------------------

-------Luego de transcurridos quince (15) días del recibo de la **Arrendataria** de la notificación de la intención de retener el pago del Canon de Arrendamiento sin que la **Arrendadora** haya subsanado su incumplimiento, la **Arrendataria** retendrá los

pagos subsiguientes de los Cánones de Arrendamiento (exceptuando la porción correspondiente al Pago del Financiamiento) o una porción de éstos, según sea el caso, hasta que el incumplimiento sea subsanado, provisto que ninguna Fuerza Mayor inhiba dicho incumplimiento.---------------------------------------------------------

--------(3) Las partes contratantes convienen en que los pagos del Canon de Arrendamiento estarán sujetos a la excepción de Fuerza Mayor y que el procedimiento de retención cumplirá con lo antes dispuesto.---------------------------

---**Sección Dieciocho Punto Cuatro (18.4) - Responsabilidad en Caso de Daños.** No obstante lo anteriormente dispuesto en cuanto a la oportunidad de la **Arrendadora** a subsanar su incumplimiento, la **Arrendadora** será responsable por cualquier y todos los daños que le ocasione a la **Arrendataria** como resultado de su incumplimiento con las obligaciones establecidas en el presente contrato, exceptuando aquellas que sean causadas por Fuerza Mayor. ----------------------------

---**Sección Dieciocho Punto Cinco (18.5) - Pago de Honorarios de Abogado y Otros Gastos.** En caso de que alguna de las partes comparecientes incumpla con sus obligaciones y la parte afectada incurra en el pago de abogados y/o otros gastos razonables para el cobro de dinero o el cumplimiento de ejecución o sujeción a las obligaciones o convenios aquí contenidos, la parte incumplidora convine en pagar a su requerimiento a la parte afectada o sus agentes designados, honorarios de abogados razonables (independientemente de que haya o no mediano temeridad) y los gastos razonables incurridos por ésta para efectuar dicha gestión. ------------------------------

---**Sección Dieciocho Punto Seis (18.6) - Remedios Disponibles.** Ningún remedio conferido en el presente contrato o reservado a las partes aquí dispuestas se entiende exclusivo. Éstos podrán ser acumulativos y podrán ser adicionales a cualesquiera otros remedios provistos por ley o equidad, incluyendo procedimiento de desahucio estatutariamente conferidos en la jurisdicción del Estado Libre Asociado de Puerto Rico. Ningún retraso u omisión por alguna de las partes para ejercitar algún

derecho adquirido por el incumplimiento de la otra parte con las obligaciones aquí dispuestas se entenderá como una concesión a no ejercitar sus derechos. Estos derechos podrán ser ejercidos con la frecuencia que sea necesaria para despachar los procesos. -----------------------------------------------------------------------------------------

## SECCIÓN DIECINUEVE (19)
## REPRESENTACIONES Y GARANTÍAS DE LA ARRENDADORA

---Sección Diecinueve Punto Uno (19.1) - Representaciones de la Arrendadora. La Arrendadora efectúa las siguientes representaciones y garantías, las cuales permanecerán vigentes en todo momento durante el término de Contrato de Arrendamiento:------------------------------------------------------------------------------------

---Sección Diecinueve Punto Dos (19.2) - Existencia y Capacidad. La Arrendadora es una corporación íntima con fines de lucro debidamente creada bajo las leyes de Puerto Rico, y tiene plenos poderes y capacidad para realizar este Contrato de Arrendamiento, y para llevar a cabo sus negocios. ------------------------

---Sección Diecinueve Punto Tres (19.3) - Obligación Válida. Este Contrato de Arrendamiento constituye una obligación válida para la Arrendadora y, en su caso, para sus sucesores autorizados, sujeto en cuanto a su cumplimiento en su caso a las leyes de quiebra y derechos de acreedores.------------------------------------------------

---Sección Diecinueve Punto Cuatro (19.4) - Litigación/Arbitraje. Salvo por los caso: STZ Development Corp v. Junta de Planificación de Puerto Rico, pendiente ante el Tribunal de Apelaciones de Puerto Rico, Caso Núm. KPE2011-00015 y (b) In Re Ramhil, Developers, Inc., Caso Número: 2002-46-00905-JPU, pendiente ante la Junta de Planificación (Sobre Solicitud de Revocación de Consulta de Ubicación), cuyas particularidades han sido divulgadas ampliamente a la Arrendataria, no existen (a) acciones, demandas o procedimientos pendientes ante los tribunales u organismos administrativos, cuasi judiciales, o gubernamentales, (b) arbitrajes, o (c) mediación o procesos de dilucidación de controversias contra la Arrendadora que

afecten su habilidad de cumplir con sus obligaciones bajo este Contrato de Arrendamiento.--------------------------------------------------------------------------------

## SECCIÓN VEINTE (20)
## REPRESENTACIONES Y GARANTÍAS DE LA ARRENDATARIA

---Sección Veinte Punto Uno (20.1) - Representaciones de la Arrendataria. La Arrendataria efectúa las siguientes representaciones y garantías a la Arrendadora, las cuales permanecerán vigentes en todo momento durante el término o vigencia del Contrato de Arrendamiento:--------------------------------------------------------------

---Sección Veinte Punto Dos (20.2) - Autorización y No Contravención. El otorgamiento y cumplimiento por la Arrendataria de lo contemplado en este Contrato de Arrendamiento le ha sido debidamente autorizado, y no tiene conflictos con o violenta ningún acuerdo u obligación de la Arrendataria.-----------------------

---Sección Veinte Punto Tres (20.3) - Cumplimiento. La Arrendataria se mantendrá en todo momento en pleno cumplimiento con sus obligaciones y los acuerdos, términos y condiciones del Contrato de Arrendamiento, así como con las leyes, reglamentos, ordenanzas y cualesquiera disposiciones legales aplicables. La Arrendataria tendrá el derecho de cuestionar mediante los procedimientos administrativos o judiciales correspondientes, cualquier acción, requerimiento, multa, orden o investigación iniciada, emitida o impuesta por las agencias gubernamentales correspondientes.--------------------------------------------------------

---Sección Veinte Punto Cuatro (20.4) - Obligación Válida. Este Contrato de Arrendamiento constituye una obligación válida de la Arrendataria y, en su caso, para sus sucesores autorizados. --------------------------------------------------------------

## SECCIÓN VEINTIUNO (21)
## NOTIFICACIONES

---Sección Veintiuno Punto Uno (21.1) - Notificaciones. Cualquier comunicación o notificación bajo este Contrato de Arrendamiento deberá ser dada como sigue: (a) a la mano, o (b) por correo certificado con acuse de recibo. ----------------------------

-----Las notificaciones a la **Arrendataria** se enviaran a la siguiente dirección: ------

Hon. Sonia Ivette Vélez Colon
Directora Administrativa
Oficina de Administración de los Tribunales
PO Box 190917
San Juan, Puerto Rico, 00919-0917

-----Las notificaciones a la **Arrendadora** se enviaran a la siguiente dirección:-------

Lcda. Hilda Rodríguez Forteza
Presidenta
Ramhil Developers, Inc.
PO Box 190573
San Juan, Puerto Rico 00919-0573

-----Cualquiera de las partes otorgantes, previa notificación escrita, podrá designar otras personas y direcciones a las cuales habrán de dirigirse subsiguientes notificaciones o pagos bajo este Contrato de Arrendamiento. Las partes se obligan, además, a notificarse mutua y oportunamente cualquier cambio en sus direcciones para fines de notificaciones bajo el presente Contrato de Arrendamiento. -------------

-----Siempre que en este Contrato de Arrendamiento se disponga expresamente que una de las partes deba requerir el consentimiento o aprobación escrita de la otra para algún fin, se entenderá que dicho consentimiento o aprobación escrita no podrá ser negado o retrasado irrazonablemente por la parte a la cual se le solicita su consentimiento o aprobación escrita.------------------------------------------------

## SECCIÓN VEINTIDÓS (22)
## PROCESO DE RESOLUCIÓN DE DISPUTAS

---Sección Veintidós Punto Uno (22.1) - **Mediación y Arbitraje**. Las partes acuerdan someter cualquier disputa que surja de, en conexión o en relación con este Contrato de Arrendamiento, en primer lugar a mediación y, en el caso que las partes no puedan resolver su disputa mediante mediación, a arbitraje a llevarse a cabo en la ciudad de San Juan de Puerto Rico, de acuerdo con las reglas procesales de la American Arbitration Association y en cumplimiento con las disposiciones aplicables de la Ley de Arbitraje de Puerto Rico, según enmendada y con las disposiciones que se detallan. a continuación:--------------------------------

---Sección Veintidós Punto Dos (22.2) - <u>Solicitud de Arbitraje</u>. Cualquier parte podrá solicitar por escrito a la parte adversa que una controversia respecto a la cual no ha podido. llegar a un acuerdo sea sometida a arbitraje. Deberá identificar de forma precisa cuál es la controversia a someterse al arbitraje en cuestión. ------------

---Sección Veintidós Punto Tres (22.3) - <u>Panel de Arbitraje</u>. El panel de arbitraje estará compuesto por tres (3) árbitros. Cada parte nombrará un árbitro que formará parte del panel de arbitraje y dichos árbitros a su vez nombrarán a un tercer árbitro por acuerdo. Si las partes no nombran un árbitro dentro de los primeros treinta (30) días de la solicitud para arbitraje o si los árbitros nombrados por dichas partes no se ponen de acuerdo respecto al tercer árbitro dentro de los primeros treinta (30) días de nombrados los primeros dos árbitros, cualquiera de las partes podrá solicitar al Tribunal de Primera Instancia, Sala Superior de San Juan, que nombre los árbitros necesarios para completar el panel de arbitraje. ------------------------------------------

---Sección Veintidós Punto Cuatro (22.4) - <u>Procedimiento de Arbitraje</u>. El panel de arbitraje establecerá los procedimientos para atender la controversia sometida por las partes y podrá utilizar como guía las Reglas de Procedimiento Civil aplicables. ----------------------------------------------------------------------------

-----El panel de arbitraje deberá llevar un récord de los procedimientos de arbitraje que pueda utilizarse para revisión judicial de ser la misma solicitada por cualquiera de las partes. ----------------------------------------------------------------------------

-----Las decisiones interlocutorias del panel de arbitraje no estarán sujetas a revisión judicial interlocutoriamente, pero podrán ser invocadas para cuestionar la decisión final del panel, si dicha decisión interlocutoria es errónea y perjudicial a cualquiera de las partes. ----------------------------------------------------------------------------

-----La vista en su fondo ante el panel de arbitraje se conducirá de manera informal. El panel de arbitraje podrá usar, a su discreción, como guía los principios fundamentales de las Reglas de Evidencia en la medida en que lo considere

necesario.----------------------------------------------------------------------------------------

-----El panel de arbitraje emitirá una decisión fundamentada en los hechos y el derecho aplicable y notificará la misma a los representantes de las partes. ------------

---**Sección Veintidós Punto Cinco (22.5) - Revisión Judicial**.  Cualquier parte adversamente afectada por el laudo de arbitraje podrá solicitar la revisión judicial mediante la presentación de una acción civil ante el Tribunal de Primera Instancia, Sala Superior San Juan, en un plazo de treinta (30) días a partir de la notificación del laudo.  El plazo para recurrir en revisión judicial será de caducidad y, por lo tanto, no podrá ser interrumpido mediante mociones posteriores a la notificación del laudo. ------------------------------------------------------------------------------------

-----El Tribunal revisará el laudo a base del expediente ante el panel de arbitraje para determinar si el mismo es conforme a derecho en sus determinaciones de hechos, conclusiones de derecho y remedio concedido. ----------------------------------

-----El tribunal dictará sentencia confirmando o revocando total o parcialmente el laudo, podrá asimismo, modificar el laudo o devolver el asunto al panel de arbitraje para procedimientos ulteriores.-------------------------------------------------------------

-----La decisión del tribunal estará sujeta a revisión judicial al igual que otras sentencias del Tribunal de Primera Instancia.--------------------------------------------

-----**Sección Veintidós Punto Seis (22.6) - Costas y Honorarios**.  El panel de arbitraje impondrá las costas a la parte perdidosa y podrá imponer honorarios de abogados razonables a la parte que haya incurrido en temeridad. ----------------------

### SECCIÓN VEINTITRÉS (23)
### DISPOSICIONES GENERALES

---**Sección Veintitrés Punto Uno (23.1) - Inexistencia de Sociedad o Empresa Conjunta ("Joint Venture")**.  Nada de lo contenido en este Contrato de Arrendamiento constituirá o se interpretará como que establece una sociedad o empresa conjunta entre la **Arrendataria** y la **Arrendadora**, ni como que convierte a cada parte respectivamente en agente  o representante del otro.----------------------

---Sección Veintitrés Punto Dos (23.2) - <u>Aplicabilidad de las Leyes de Puerto Rico, Separabilidad.</u> Este Contrato de Arrendamiento y/o sus disposiciones se regirán por las leyes del Estado Libre Asociado de Puerto Rico. Si cualquier término, cláusula, acuerdo o condición, o su aplicación, fuera declarada ilegal o ineficaz por autoridad competente, entonces todos los demás términos, cláusulas, acuerdos o condiciones de este Contrato de Arrendamiento, o su aplicación de otra manera, no serán afectadas y permanecerán con plena validez, vigencia y vigor. ----

---Sección Veintitrés Punto Tres (23.3) - <u>Conflicto de Intereses.</u> Ningún miembro, representante, empleado o consultor de la **Arrendataria** tendrá interés personal, directo o indirecto en este Contrato de Arrendamiento, ni participará en decisión alguna concerniente a este Contrato de Arrendamiento que tenga relación con sus intereses personales o con el interés de alguna entidad en la cual dichas personas tengan intereses ya sea directa o indirectamente.----------------------------

---Sección Veintitrés Punto Cuatro (23.4) - <u>Sucesores y/o Cesionarios.</u> Todos los acuerdos, términos, obligaciones y/o condiciones en este Contrato de Arrendamiento serán obligatorios y/o beneficiarán a los sucesores o cesionarios en su caso, de la **Arrendataria**, y a los sucesores autorizados de la **Arrendadora.**-----

---Sección Veintitrés Punto Cinco (23.5) - <u>Litigación con el Estado Libre Asociado.</u> La **Arrendadora** certifica que, al momento de la ejecución de este Contrato de Arrendamiento, no tiene litigación alguna contra la **Arrendataria**, el Estado Libre Asociado, sus agencias o instrumentalidades.-----------------------

---Sección Veintitrés Punto Seis (23.6) - <u>Intereses Económicos de Empleados Gubernamentales.</u> La **Arrendadora** certifica que, al momento del otorgamiento de este Contrato de Arrendamiento, no tiene interés particular alguno en ningún caso o asunto que envuelva conflicto de intereses o de política pública, y no aceptará ningún acuerdo de índole alguna que pueda ocasionar un conflicto de intereses o de política pública con la **Arrendataria.**-------------------------------------

--------La **Arrendadora** certifica que, al momento del otorgamiento de este Contrato de Arrendamiento, ningún oficial o empleado público con facultad para evaluar, considerar, aprobar autorizar o ejecutar este Contrato de Arrendamiento a nombre de la **Arrendataria**, ni ningún miembro de su unidad familiar, tiene o ha tenido durante los pasados cuatro (4) años antes de tomar posesión de su puesto, interés pecuniario directo o indirecto con la **Arrendadora** o en ninguna de sus subsidiarias, entidad matriz o sus oficiales. ------------------------------------------------

--------La **Arrendadora** certifica por sí, sus socios, agentes o empleados, o cualquier miembro de su unidad familiar, según ésta se define en la Ley Núm. 12 de 24 de julio de 1985, según enmendada, que al momento del otorgamiento de este Contrato de Arrendamiento, ellos no ocuparon ningún puesto como empleados de la **Arrendataria** durante los dos (2) años anteriores a la firma de este Contrato de Arrendamiento.------------------------------------------------------------------------------

--------La **Arrendadora** certifica por sí, sus socios, agentes o empleados, que al momento del otorgamiento de este Contrato de Arrendamiento, ningún oficial o empleado público de la Administración, o ningún miembro de su unidad familiar, según esta se define en la Ley Núm. 12 de 24 de julio de 1985, según enmendada, tiene o ha tenido durante los últimos cuatro (4) años antes de ocupar el puesto, interés pecuniario directo o indirecto con la **Arrendadora** y que no conoce de ningún empleado del Estado Libre Asociado que sea parte o tenga interés alguno en las ganancias o beneficios de este Contrato de Arrendamiento. ------------------------

---**Sección Veintitrés Punto Siete (23.7) -** <u>Convicciones Criminales</u>. La **Arrendadora** certifica y garantiza que, al otorgamiento de este Contrato de Arrendamiento, ni la **Arrendadora**, ni ninguno de sus socios, directores, oficiales o empleados gerenciales, han sido convictos, y la **Arrendadora** no tiene conocimiento de ello o de que ninguna de dichas personas hayan sido investigadas, acusadas o convictas en un proceso criminal en una corte estatal o federal por cargos

51

criminales relacionados al erario público, la confianza pública, una función pública, o una falta que envuelva el real uso de fondos o propiedad pública, o por cualquiera de los delitos graves o menos graves mencionados en la Ley Núm. 428 de 22 de septiembre de 2004. Se reconoce expresamente que esta certificación es una condición esencial de este Contrato de Arrendamiento. Si la certificación fuera falsa, ello constituirá causa suficiente para facultar a la **Arrendataria** a terminar este Contrato de Arrendamiento inmediatamente, y, si dicha convicción estuviera relacionada a esta transacción en particular, la **Arrendataria** tendrá derecho a requerirle a la **Arrendadora** que le reembolse cualquiera cantidad de dinero que hubiera recibido de la **Arrendataria** bajo este Contrato de Arrendamiento. ---------

-------Si la condición de la **Arrendadora** o sus socios, directores, oficiales o empleados gerenciales con relación a las convicciones criminales antes mencionadas en esta cláusula, cambiaran en cualquier momento durante el término de este Contrato de Arrendamiento, la **Arrendataria** será notificada inmediatamente. El incumplimiento con dicha obligación de notificar constituirá una violación de esta cláusula, y resultará en la terminación de este Contrato de Arrendamiento. -------------------------------------------------------------------------

---**Sección Veintitrés Punto Ocho (23.8)** - **Planilla de Contribución sobre Ingresos**. La **Arrendadora** certifica que al otorgamiento de este Contrato de Arrendamiento, ha sometido todas las planillas de contribución sobre ingresos requeridas en Puerto Rico durante los pasados cinco (5) años y que ni la **Arrendadora** ni sus principales tienen Deuda Contributiva alguna (según aquí definido) con el Estado Libre Asociado, o, si existiera dicha deuda, la misma está sujeta a un plan de pago aprobado por la agencia gubernamental correspondiente y que la **Arrendadora** o sus principales, según sea el caso, está al día bajo los términos de dicho plan de pago. Para propósitos de este Contrato de Arrendamiento, una Deuda Contributiva significa cualquier deuda por ingresos, arbitrio,



contribuciones sobre la propiedad (mueble o inmueble), tasaciones especiales, tarifas por licencias, y contribución retenida según requerida por ley, desempleo, incapacidad y seguro choferil (si aplica). ------------------------------------------------

---**Sección Veintitrés Punto Nueve (23.9) - Sumisión de Certificados**. La **Arrendadora** sometió a la **Arrendataria**, previo a la firma de este Contrato de Arrendamiento, la Certificación de Radicación de Planilla por los últimos cinco (5) años, una Certificación de Deuda, expedida por el Departamento de Hacienda, y las correspondientes certificaciones de deudas expedidas por el Centro de Recaudación de Ingresos Municipales (CRIM), con respecto al Desarrollador del Departamento del Trabajo y Recursos Humanos concernientes a desempleo, incapacidad y seguro choferil, Fondo del Seguro del Estado, Administración para el sustento de Menores (ASUME), y por la Municipalidad correspondiente.---------------------------------------

---**Sección Veintitrés Punto Diez (23.10) - Deuda Contributiva bajo Revisión o Sujeta a Ajuste**. La **Arrendadora** certifica que ni ella ni sus principales tienen actualmente ninguna Deuda Contributiva que esté siendo revisada o sujeta a ajuste por el Departamento de Hacienda del Estado Libre Asociado. --------------------------

---**Sección Veintitrés Punto Once (23.11) - Documentos de la Entidad**. La **Arrendadora** ha sometido los artículos de incorporación y los estatutos ("By-Laws") de la corporación, así como un certificado de buena pro ("Good Standing") expedido por del Departamento de Estado del Estado Libre Asociado de Puerto Rico. ----------------------------------------------------------------------------------------

---**Sección Veintitrés Punto Doce (23.12) - Acuerdo Total**. Este Contrato de Arrendamiento y aquellos documentos en él mencionados, contienen la totalidad de los acuerdos entre las partes, los cuales son los únicos acuerdos vigentes y válidos entre las partes. Los acuerdos, términos o condiciones de este Contrato de Arrendamiento sólo podrán ser enmendados o modificados mediante el consentimiento expreso y escrito de las partes. Se incorporan por referencia y se

hacen formar parte de este contrato todos los Anejos y Exhibits que se mencionan en este

Contrato de Arrendamiento. ----------------------------------------------- --------------------

---**Ambas Partes** manifiestan que han leído y entendido todo el contenido del

presente Contrato de Arrendamiento y así lo aceptan por encontrar que está

redactado a su entera satisfacción y que éste establece fielmente lo pactado. ---------

---**PARA QUE ASÍ CONSTE**, las partes suscriben el presente contrato, con su

firma e iniciales en el margen izquierdo de cada una de sus páginas.------------------

---En San Juan, Puerto Rico a 27 de mayo de 2011. -------------------------------------

Sonia Ivete Vélez Colón
Directora Administrativa
Oficina de Administración
De los Tribunales

Hilda Rodríguez Forteza
Presidenta
Ramhil Developers, Inc.



