Estado Libre Asociado de Puerto Rico
**Tribunal General de Justicia**
Oficina de Administración de los Tribunales
San Juan, Puerto Rico

# CONTRATO DE DESARROLLO Y ACUERDO DE ARRENDAMIENTO CENTRO JUDICIAL DE CAGUAS

----------------------------------------**COMPARECEN**----------------------------------------



-----**DE LA PRIMERA PARTE:** La **Oficina de Administración de los Tribunales,** una dependencia del Tribunal General de Justicia del Estado Libre Asociado de Puerto Rico, creada en virtud de la Ley Núm. 201 de 22 de agosto de 2003, número de identificación patronal **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**, representada en este acto por la Hon. Sonia Ivette Vélez Colón, mayor de edad, casada, Jueza de Apelaciones con funciones administrativas por delegación y vecina de Guaynabo, Puerto Rico, en su carácter de Directora Administrativa de los Tribunales (en adelante **"OAT"**).----------

-----**DE LA SEGUNDA PARTE: Ramhil Developers, Inc.,** una corporación creada bajo las leyes del Estado Libre Asociado de Puerto Rico, con número de identificación patronal **35-2239827**, representada en este acto por su Presidenta, Hilda Rodríguez Forteza, mayor de edad, casada, ejecutiva y vecina de San Juan, Puerto Rico, cuya autorización para comparecer en este acto surge de la Certificación de Resolución Corporativa que se hace formar parte de este contrato como su **Anejo A** (en adelante **"Ramhil"**).-------------------------------------------------

-----**AMBAS PARTES** aseguran y representan tener la capacidad legal y representativa necesaria para otorgar este Contrato de Desarrollo y Acuerdo de Arrendamiento (en adelante "Contrato de Desarrollo"), así como para ejecutar lo aquí dispuesto, por lo que:-------------------------------------------------------------------

-------------------------------------------**EXPONEN**-------------------------------------------

-----**PRIMERO:** Mediante una Solicitud de Propuestas ("Request for Proposals" o "RFP", por sus siglas en inglés), publicada el 26 de diciembre de 2006, la **OAT** inició un proceso de selección y negociación para el desarrollo, diseño, financiamiento, construcción, arrendamiento con opción a compra, administración y operación del Nuevo Centro Judicial de la Región de Caguas (en adelante



Recomendado
6 /dic/10
cgc

1

"Proyecto").   Luego de recibidas y evaluadas las diferentes propuestas, la **OAT** seleccionó y estableció el orden de preferencia para la negociación con los distintos proponentes.  Este orden de preferencia para la negociación fue notificado a los proponentes el 28 de diciembre de 2007.----------------------------------------------------

----**SEGUNDO**: El 7 de abril de 2010, luego de varios trámites, la **OAT** notificó a **Ramhil** que, de acuerdo con el orden de preferencia notificado a los proponentes para la negociación, comenzaría a negociar con **Ramhil** el desarrollo del Proyecto.-

----**TERCERO**: De conformidad con los términos y condiciones negociados y convenidos, la **OAT** y **Ramhil** interesan y proceden a otorgar este Contrato de Desarrollo para establecer los términos y condiciones aplicables a la planificación, desarrollo, diseño, financiamiento y construcción del Proyecto, así como los términos y condiciones principales que se habrán de incorporar en el contrato de arrendamiento (en adelante "Contrato de Arrendamiento") que se otorgará posteriormente entre las partes comparecientes para el arrendamiento con opción de compra, administración, operación y mantenimiento del Nuevo Centro Judicial de la Región de Caguas.  El Contrato de Arrendamiento recogerá, en su contenido, todas las cláusulas y condiciones contenidas en este Contrato de Desarrollo, salvo aquellas que resulten superfluas.-----------------------------------------------------------

----**CUARTO**: En consideración a lo antes expuesto, la **OAT** y **Ramhil**, libre y voluntariamente,  llevan a efecto este Contrato de Desarrollo de conformidad con las siguientes:------------------------------------------------------------------------------

----------------------------**CLÁUSULAS Y CONDICIONES**----------------------------

## ARTÍCULO 1
## CONDICIONES PRECEDENTES

1.1  **Condiciones Precedentes para la firma del Contrato de Arrendamiento.** La ejecución del Contrato de Arrendamiento entre la **OAT** y **Ramhil** está expresamente sujeta y condicionada a la satisfacción previa por **Ramhil**, dentro de los términos de tiempo establecidos en este Contrato de Desarrollo, de las siguientes condiciones precedentes (en adelante "Condiciones Precedentes"):--------

1.1.1  **Plano de Mensura**.  En o antes de treinta (30) días laborables, contados a partir de la firma de este Contrato de Desarrollo, **Ramhil** someterá a la **OAT** un

Recomendado
6/dic/10
cfc

2

plano de mensura revisado que establezca los linderos y colindancias de los predios de terreno propuestos para el desarrollo del Proyecto. El Plano de Mensura ilustrará lo siguiente: (a) los linderos y colindancias (incluyendo el nombre de los dueños o titulares conocidos) de las parcelas de terreno bajo la titularidad de **Ramhil** que se habrán de destinar en todo o en parte al desarrollo del Proyecto; (b) los linderos y colindancias propuestos (incluyendo el nombre de los dueños o titulares conocidos) de la parcela de terreno que se propone segregar para el desarrollo del Proyecto (en adelante "Parcela Centro Judicial"); (c) los linderos y colindancias propuestos (incluyendo el nombre de los dueños o titulares conocidos) de la parcela de terreno considerada para la posible ubicación de ciertas instalaciones del Departamento de Justicia (en adelante "Parcela Departamento de Justicia") y (d) los accesos propuestos a la Parcela Centro Judicial. El Plano de Mensura deberá ser preparado y certificado por un profesional autorizado a ejercer la agrimensura en Puerto Rico, cumpliendo de forma sustancial y razonable con los requisitos establecidos por el "Manual de Práctica Profesional y Guías para la Compensación de Servicios Profesionales" del Colegio de Ingenieros y Agrimensores de Puerto Rico. El Plano de Mensura también incluirá las cabidas de las distintas parcelas indicadas y tabla de rumbos y distancias referenciadas al sistema de coordenadas NAD83. **Ramhil** también deberá colocar y marcar los monumentos que delimitan los linderos y colindancias de las parcelas de terreno bajo su titularidad que se habrán de destinar en todo o en parte al desarrollo del Proyecto.-------------------------------------------------------------------------------



1.1.2 **Propuesta Económica Final**. Durante reunión celebrada el 20 de octubre de 2010 en las oficinas de la **OAT**, la **OAT** requirió formalmente a **Ramhil** que presentara su mejor propuesta económica final para el desarrollo del Proyecto (en adelante "Propuesta Económica Final"). Mediante comunicación de 2 de diciembre de 2010, **Ramhil** presentó a la **OAT** su Propuesta Económica Final, la cual resultó ser similar a la propuesta económica presentada por **Ramhil** como parte de su *Propuesta para la Construcción del Centro Judicial de Caguas* de 26 de marzo de 2007 (en adelante "Propuesta de Ramhil"). La referida Propuesta Económica Final es incorporada por las partes en este Contrato de Desarrollo y se hace formar parte integral del mismo como el **Anejo B**.-------------------------------------------------

1.1.3 **Diseño, planos y documentos de construcción.** En o antes de un término de ciento cincuenta (150) días laborables, contados a partir de la firma de este Contrato

Recomendado

6/ dic/10

de Desarrollo, **Ramhil** deberá completar, sujeto los requisitos establecidos en el RFP y a los términos y condiciones y a los procesos de revisión y aprobación establecidos en el **Artículo 3 (Diseño y Construcción del Proyecto)** de este Contrato de Desarrollo, el diseño, los planos, especificaciones y demás documentos de construcción de la primera fase necesaria para el inicio de la construcción del Proyecto completados hasta un setenta y cinco por ciento (75%), entendiéndose que la primera fase necesaria para el inicio de la construcción del Proyecto es el movimiento de tierra.------------------------------------------------------------------

1.1.4 **Permisos, endosos y aprobaciones**. En o antes de un término de ciento cincuenta (150) días laborables, contados a partir de la firma de este Contrato de Desarrollo, **Ramhil** obtendrá todos los permisos, endosos, aprobaciones y autorizaciones gubernamentales necesarias para el desarrollo y construcción del Proyecto. No obstante lo anterior, se dispone que **Ramhil** podrá, a su discreción y riesgo, obtener los permisos de construcción del Proyecto por etapas ("fast track" o "design-build"). En el caso en que **Ramhil** decida obtener los permisos para la construcción del Proyecto por etapas, los permisos, endosos, aprobaciones y autorizaciones gubernamentales necesarias para la firma del Contrato de Arrendamiento serán los requeridos para el inicio o comienzo de la primera fase de la construcción, entendiéndose que la primera fase de la construcción del Proyecto es la fase de la construcción de las obras de movimiento de tierra.----------------------



1.1.5 **Financiamiento**. En o antes de un término de ciento cincuenta (150) días laborables, contados a partir de la firma de este Contrato de Desarrollo, **Ramhil** obtendrá, formalizará y evidenciará razonablemente a la **OAT** el financiamiento necesario y apropiado para el desarrollo y la construcción total del Proyecto (en adelante "Contrato de Financiamiento"). La **OAT** y **Ramhil** reconocen que, como requisito para que la institución financiera otorgue de forma final el Contrato de Financiamiento, es necesario que se le presente a dicha institución financiera el Contrato de Arrendamiento debidamente otorgado por la **OAT** y **Ramhil**. Por ende, la **OAT** y **Ramhil** acuerdan que **Ramhil** pautará el otorgamiento del Contrato de Arrendamiento y el Contrato de Financiamiento para el mismo día, de manera que inmediatamente se haya otorgado el Contrato de Arrendamiento se proceda al otorgamiento del Contrato de Financiamiento. Cumplido el mecanismo antes descrito en cuanto al otorgamiento del Contrato de Arrendamiento y el Contrato de

Recomendado
6/dic/10

Financiamiento, se dará por cumplida esta Condición Precedente relativa a la obtención del financiamiento para el Proyecto.------------------------------------------------

**1.1.6 Contrato de Construcción.** En o antes de un término de ciento cincuenta (150) días laborables, contados a partir de la firma de este Contrato de Desarrollo, **Ramhil** habrá otorgado y evidenciado razonablemente a la **OAT**, un contrato de construcción (en adelante "Contrato de Construcción") con una entidad debidamente capacitada para la construcción adecuada del Proyecto, según definido y descrito en el **Artículo 3, Diseño y Construcción del Proyecto**, de este Contrato de Desarrollo.----------------------------------------------------------------------

**1.1.7 Fianzas de pago y ejecución y seguros.** En un término de ciento cincuenta (150) días laborables, contados a partir de la firma de este Contrato de Desarrollo, **Ramhil** evidenciará razonablemente a la **OAT**, que el contratista seleccionado para la construcción del Proyecto obtuvo las fianzas de pago y ejecución apropiadas para garantizar la construcción del Proyecto así como los seguros necesarios para el inicio de las obras de construcción.-----------------------------------------------------

**1.2 <u>Términos para cumplir con las Condiciones Precedentes.</u>** Se reconoce expresamente por la **OAT** y **Ramhil** que no es la intención de las partes sujetar indefinidamente el desarrollo del Proyecto a la satisfacción de las Condiciones Precedentes y, por lo tanto, salvo como se dispone más adelante, se deberá cumplir con cada una de dichas Condiciones Precedentes dentro de los términos establecidos en el presente Contrato de Desarrollo.---------------------------------------

**1.2.1 Terminación del contrato de desarrollo.** Si **Ramhil** no satisface todas y cada una de las Condiciones Precedentes establecidas en este Contrato de Desarrollo dentro del período o término establecido para cada una de ellas, la **OAT** podrá dar por terminado este Contrato de Desarrollo.----------------------------------------

**1.2.2 Extensión de término para cumplir con las Condiciones Precedentes.** A solicitud de **Ramhil**, la **OAT** podrá, a su discreción, extender el término establecido para el cumplimiento de las Condiciones Precedentes. El término de cumplimiento con las Condiciones Precedentes se extenderá por el período de tiempo que la **OAT** estime justo y razonable, a tenor con lo establecido por **Ramhil** en su solicitud para que se extienda dicho término. Nada de lo dispuesto en este Contrato de Desarrollo



Recomendado
6/dic/10
cpc

5

impide que la **OAT**, a su entera discreción, dé por cumplida cualquier Condición Precedente, siempre que entienda que tal determinación es consistente con sus propósitos y objetivos bajo el Contrato de Desarrollo.------------------------------------

1.3  **Fianza sobre Condiciones Precedentes**.  Dentro de un término no mayor de treinta (30) días laborables, contados a partir de la firma de este Contrato de Desarrollo, **Ramhil** evidenciará a la **OAT** la obtención de una fianza por una suma de cincuenta mil dólares ($50,000.00), apropiada para garantizar el cumplimiento de **Ramhil** con las Condiciones Precedentes (en adelante "Fianza sobre Condiciones Precedentes").-------------------------------------------------------------

**ARTÍCULO 2**
**PREDIO O TERRENO**

2.1  **Descripción, Titularidad y Segregación del Predio**.  El Proyecto será desarrollado en una parcela denominada Parcela Centro Judicial, la cual será segregada de una parcela de terreno de mayor cabida, bajo la titularidad de **Ramhil**, ubicada en la Carretera Estatal PR #1, Esquina Carretera Estatal PR #189, en el Barrio Bairoa del Municipio de Caguas, Puerto Rico (en adelante "Parcela Ramhil-A"). **Ramhil** adquirió la Parcela Ramhil-A mediante la Escritura Número 27 de *Segregación Compraventa y Rectificación de Cabida* otorgada el 24 de mayo del 2006 ante la Notario Público Rebeca Caquías Mejías, la cual está pendiente de inscripción al Asiento 261 del Diario 980 del Registro de la Propiedad de Caguas, Sección Primera.-------------------------------------------------------------------------

De ser necesario para propósitos de la instalación de la Subestación Eléctrica de 38 KVA requerida para el desarrollo del Proyecto por la Autoridad de Energía Eléctrica (en adelante "AEE"), se utilizará una porción de aproximadamente ciento ochenta y cinco metros cuadrados (185 $m^2$) de otra parcela de terreno bajo la titularidad de **Ramhil**, también ubicada en la Carretera Estatal PR #1, Esquina Carretera Estatal PR #189, en el Barrio Bairoa del Municipio de Caguas, Puerto Rico (en adelante "Parcela Ramhil-B").  **Ramhil** adquirió la Parcela Ramhil-B mediante la Escritura Número 42 sobre *Agrupación, Segregación y Compraventa*, otorgada el 28 de junio de 2007 ante la Notaria Público Rebeca Caquías Mejías, la cual está pendiente de inscripción al Asiento 1,131 del Diario 1,134 del Registro de la Propiedad de Caguas, Sección Primera.  De utilizarse la referida porción de



Recomendado
6/dic/10

aproximadamente ciento ochenta y cinco metros cuadrados (185 m$^2$) de la parcela Ramhil-B para el desarrollo del Proyecto, la misma formará parte de la Parcela Centro Judicial.------------------------------------------------------------------------------

**2.1.1 Segregación de la Parcela Centro Judicial.** Ramhil segregará la Parcela Centro Judicial de los predios o terrenos descritos en el Artículo 2.1. Ésta tendrá una cabida aproximada de 29,301.2377 metros cuadrados. Las partes acuerdan y aclaran que, de resultar más conveniente instalar la Subestación Eléctrica de 38 KVA requerida por la AEE dentro de la Parcela Ramhil-A, no se utilizará ninguna porción de la Parcela Ramhil-B para propósitos del desarrollo del Proyecto, aún cuando la cabida de la Parcela Centro Judicial resulte menor que la cabida aproximada (29,301.2377 m$^2$) expresada anteriormente en esta Sección.--------------

**2.1.2 Parcela Departamento de Justicia.** Ramhil considera destinar el remanente de la Parcela Ramhil-A, luego de segregada la Parcela Centro Judicial, para el posible desarrollo de ciertas instalaciones del Departamento de Justicia.------

**2.1.3 Planos de Mensura.** La Parcela Ramhil-A, Parcela Ramhil-B, Parcela Centro Judicial y Parcela Departamento de Justicia se incluyen de forma ilustrativa en el plano de mensura aproximado que se hace formar parte de este Contrato de Desarrollo como **Anejo C.** Dicho plano de mensura aproximado será sustituido por el Plano de Mensura que **Ramhil** someterá a la **OAT,** según lo establecido en el **Artículo 1 (Condiciones Precedentes)** de este Contrato de Desarrollo. Además, una vez completada la construcción del Proyecto, **Ramhil** someterá un nuevo plano de mensura actualizado y rectificado. Las partes reconocen que las cabidas de las parcelas de terreno mencionadas en el Contrato de Desarrollo pueden variar moderadamente en cada uno de los planos de mensura que se habrán de someter a la **OAT** y que dichas variaciones moderadas son típicas y aceptables en un desarrollo de la magnitud del Proyecto, por lo cual las mismas no constituyen ni constituirá un incumplimiento con los términos y condiciones del RFP, el Contrato de Desarrollo ni el Contrato de Arrendamiento.--------------------------------------------

**2.2 Acceso al Proyecto.** Ramhil se compromete a construir el acceso al Proyecto (en adelante "Acceso al Proyecto"), sustancialmente según ilustrado en el plano de mensura que forma parte de este Contrato de Desarrollo como **Anejo C,** para que el mismo sea dedicado a uso público mediante la correspondiente cesión al Municipio de Caguas.------------------------------------------------------------------------------------

Recomendado

6/dic/10



**2.2.1 Diseño de los accesos.** El Acceso al Proyecto deberá construirse de acuerdo a los parámetros y requerimientos que de tiempo en tiempo puedan imponer el Municipio Autónomo de Caguas, la Autoridad de Carreteras y Transportación y/o cualquier otra agencia con jurisdicción sobre las obras relativas a la construcción del Acceso al Proyecto. El diseño del Acceso al Proyecto propuesto será sometido a la **OAT** para su revisión y aprobación, en conjunto con el diseño del Proyecto, de acuerdo con las disposiciones del **Artículo 3 (Diseño y Construcción del Proyecto)**. Además, **Ramhil** se compromete a adquirir derechos sobre cualquier terreno adicional que sea necesario para la construcción del Acceso al Proyecto y/o para llevar a cabo cualquier mejora a las vías o carreteras existentes circundantes al mismo, según se lo requiera el Municipio Autónomo de Caguas, la Autoridad de Carreteras y Transportación y cualquier otra agencia con jurisdicción.-----------------

**2.2.2 Servidumbre de paso y dedicación a uso público del acceso. Ramhil** deberá obtener derechos mediante servidumbres de paso a perpetuidad y/o dedicar a uso público (mediante la correspondiente cesión al Municipio Autónomo de Caguas) en cuanto a todo predio de terreno que sea necesario para la construcción del Acceso al Proyecto.-------------------------------------------------------------------

**2.2.3 Acceso a la Parcela Departamento de Justicia.** El acceso a la Parcela Departamento de Justicia, que se considera segregar para el posible desarrollo de ciertas instalaciones del Departamento de Justicia estará localizado fuera de la Parcela Centro Judicial. Se aclara que, contrario a lo que se ilustra en el **Anejo B**, dicho acceso a la Parcela Departamento de Justicia no será mediante una servidumbre en la cual la Parcela Centro Judicial sea el predio sirviente.-------------

**2.3 Áreas Especiales de Riesgo de Inundaciones.** Las partes razonablemente entienden que, conforme con los reglamentos vigentes, el predio o terreno propuesto para el desarrollo del Proyecto está localizado en un área que no impide, con las mejoras y el diseño adecuado, el desarrollo y construcción del Proyecto.-----

**2.4 Mejoras a la Infraestructura.** Será responsabilidad de **Ramhil**, el diseño y construcción de todas las mejoras a la infraestructura existente que le sean requeridas por las agencias gubernamentales pertinentes para el desarrollo del Proyecto.-----------------------------------------------------------------------



Recomendado

6/dic/10

2.5 **Condición Restrictiva de Construcción**. El Proyecto descrito en el **Artículo 3 (Diseño y Construcción del Proyecto)** de este Contrato de Desarrollo, y conforme a los planos finales, será el único Proyecto o mejoras que se podrá construir en la Parcela Centro Judicial, salvo que la **OAT** expresamente y por escrito autorizase previamente alguna variación.------------------------------------------

2.6 **Substancias Tóxicas, Peligrosas o Contaminantes**. Durante la construcción y operación del Proyecto, **Ramhil** no incurrirá ni permitirá que se incurra en violación de las leyes relativas a condiciones ambientales en la Parcela Centro Judicial, incluyendo, pero sin limitarse a, la superficie, el suelo, el subsuelo, agua subterránea, almacenamiento o disposición de ninguna sustancia tóxica, peligrosa o contaminante, sobre, debajo o en las inmediaciones de la Parcela Centro Judicial, y tomará de inmediato todas aquellas acciones remediales que fueran necesarias en dichas eventualidades, según lo requiera la ley. **Ramhil** entregará a la **OAT** copia de cualquier informe, proyecto, estudio o evaluación ambiental que se realice en la Parcela Centro Judicial. **Ramhil** no entrará en ningún acuerdo, arreglo o compromiso relacionado con leyes relativas a condiciones ambientales que pudiera afectar los intereses de la **OAT** en la Parcela Centro Judicial, en el Proyecto o en este Contrato de Desarrollo y/o en el Contrato de Arrendamiento, sin el previo consentimiento escrito de la **OAT**, el cual no será denegado irrazonablemente.------

2.7 **Derecho de Entrada**. Durante la etapa de desarrollo y construcción del Proyecto los empleados, agentes o representantes autorizados por la **OAT** tendrán derecho de entrar a la Parcela Centro Judicial y/o al Proyecto, para examinar y/o inspeccionar la(el) misma(o). Dicha entrada al Proyecto se hará previa coordinación con representantes de **Ramhil**.------------------------------------------------

## ARTÍCULO 3
## DISEÑO Y CONSTRUCCIÓN DEL PROYECTO

3.1 **Descripción del Proyecto**. **Ramhil** se compromete a desarrollar, diseñar y construir el Proyecto, el cual consiste de un edificio de nueve (9) pisos para área de salas, oficinas y demás usos relacionados a albergar un Centro Judicial de aproximadamente trescientos cuarenta y dos mil ciento ochenta y siete punto cero tres (342,187.03) pies cuadrados (en adelante "Edificio del Centro Judicial") y un edificio de estacionamiento de cinco (5) niveles de aproximadamente trescientos veinticuatro mil cuatrocientos cincuenta y dos punto cincuenta y cinco (324,452.55)



Recomendado
6/dic/10

pies cuadrados (en adelante "Edificio de Estacionamiento").   El Proyecto será diseñado y construido de acuerdo con el diseño conceptual propuesto por **Ramhil** a la **OAT** (en adelante "Diseño Conceptual"), el cual se hace formar parte de este Contrato de Desarrollo como **Anejo D**, y sujeto a las revisiones y aprobaciones de diseño que realice la **OAT**, según el proceso de revisión de diseño que se establece más adelante en este **Artículo 3 (Diseño y Construcción del Proyecto).**-------------

3.2  **Itinerario de Desarrollo.**  **Ramhil** se compromete a diseñar y construir el Proyecto, de forma diligente, continua y razonable y de acuerdo con todas las leyes, reglamentos y cualquier otro requisito gubernamental aplicable y de acuerdo con los términos y condiciones de este Contrato de Desarrollo, hasta su aceptación final y entrega.  El Proyecto será diseñado y construido de acuerdo, sustancialmente, con el itinerario de desarrollo que se hace formar parte de este contrato como el **Anejo E** (en adelante "Itinerario de Desarrollo"), según éste sea modificado de tiempo en tiempo por consentimiento o acuerdo mutuo de las partes.   El Itinerario de Desarrollo deberá incluir todas las actividades principales necesarias para el desarrollo del Proyecto incluyendo la planificación, el diseño, el proceso de obtención de permisos, endosos y aprobaciones, el financiamiento, la construcción y la entrega del Proyecto.--------------------------------------------------------------------

3.3  **Diseño del Proyecto.**  La **OAT** tendrá el derecho de revisar y aprobar el diseño del Proyecto en cada una de sus etapas, incluyendo el diseño esquemático, en la forma y extensión establecida en este Contrato de Desarrollo. Esa aprobación o desaprobación será provista por escrito y no será denegada, retenida, condicionada o demorada de forma irrazonable.---------------------------------------------

3.3.1  **Proceso de revisión de diseño.** La **OAT** designará un representante o comité (en adelante "Representante de Diseño") a quien se le dará la oportunidad de proveer comentarios a **Ramhil** y a otros miembros del equipo de desarrollo de **Ramhil** en cada etapa del proceso de diseño.  El Representante de Diseño será invitado a participar en reuniones periódicas con **Ramhil** y su equipo de desarrollo en donde se discutan asuntos de planificación y diseño del Proyecto.  La revisión y aprobación del diseño y los planos del Proyecto, según establecido en este Artículo, así como la participación de la **OAT** en dicho proceso de diseño no constituirá revisión alguna del cumplimiento por **Ramhil** con los requerimientos técnicos y/o profesionales y/o legales necesarios o aplicables para el Proyecto, ni constituirá



Recomendado
6/dic/10
cfc

10

juicio alguno sobre la corrección de los mismos, todo lo cual es de la única y absoluta responsabilidad de **Ramhil**.------------------------------------------------------------

La **OAT** tendrá el derecho de revisar y aprobar cualquier y todos los cambios al diseño conceptual y de revisar y aprobar el diseño esquemático así como los planos finales, especificaciones y documentos de construcción finales del Proyecto (en adelante "Planos Finales"). Una vez completados, los Planos Finales serán incorporados por referencia y se harán formar parte integral del Contrato de Arrendamiento.------------------------------------------------------------

La revisión del diseño conceptual, esquemático y de los Planos Finales del Proyecto por parte de la **OAT** se enfocará en el cumplimiento de los mismos con la Propuesta de Ramhil, el diseño conceptual presentado por **Ramhil**, con los requisitos establecidos en el RFP y con los términos y condiciones establecidos en este Contrato de Desarrollo. Si la **OAT** no envía o notifica a **Ramhil** su aprobación u objeción por escrito en o antes de quince (15) días laborables a partir del recibo de la notificación escrita de **Ramhil**, acompañada por una copia completa, según sea el caso, del diseño conceptual, esquemático o Planos Finales, se entenderá que la **OAT** ha aprobado el diseño o los planos de la etapa correspondiente, incluyendo los Planos Finales. De notificar la **OAT** alguna objeción por escrito dentro del término de quince (15) días laborables prescrito, **Ramhil** considerará la misma y, de entenderlo necesario, realizará aquellas modificaciones que sean procedentes al diseño conceptual, esquemático o Planos Finales, según sea el caso. Oportunamente **Ramhil** deberá notificar a la **OAT** por escrito sobre las modificaciones realizadas, acompañando dicha notificación con copia solamente de aquellos documentos que hayan sido objeto de modificación (partes del diseño conceptual, esquemático o Planos Finales, según sea el caso). Luego de ello, la **OAT** tendrá un término de cinco (5) días laborables para notificar a **Ramhil** por escrito su aprobación u objeción a los documentos que fueron objeto de modificación a partir del recibo de la notificación escrita de **Ramhil**. De no presentar objeción por escrito dentro del término de cinco (5) días laborables prescrito, se entenderá que la **OAT** ha aprobado la modificación notificada por **Ramhil** al diseño o los planos de la etapa correspondiente. De presentarse objeción por parte de la **OAT**, las partes, de buena fe y teniendo en cuenta su interés común de que el Proyecto se complete dentro del Itinerario de Desarrollo, se reunirán y resolverán cualquier discrepancia que subsista sobre las modificaciones propuestas

Recomendado
6/dic/10
cfc

11

al diseño conceptual, esquemático o Planos Finales, según sea el caso, dentro un término que no excederá cinco (5) días laborables. Siempre que no constituyan una modificación material a los términos de la Propuesta de Ramhil, los cambios, comentarios, modificaciones u objeciones que presente la **OAT** durante este proceso de revisión de diseño no serán considerados como una orden de cambio. Asimismo los cambios, comentarios, modificaciones u objeciones de la **OAT** a los Planos Finales, no serán considerados automáticamente como una orden de cambio. En el caso de los Planos Finales, una vez **Ramhil** haya evaluado los cambios, comentarios, modificaciones u objeciones que presente la **OAT** a dichos Planos Finales, **Ramhil** tendrá un término de quince (15) días laborables, contados a partir del recibo de los mismos, para notificar a la **OAT** sobre su intención de considerar los mismos como una orden de cambio así como el costo propuesto en relación con dicha orden de cambio. Las partes, entonces, deberán utilizar el procedimiento provisto en el **Artículo 3.4.6 (Cambios Solicitados por la OAT)** de este Contrato de Desarrollo para negociar una orden de cambio, siguiendo las prácticas de la industria de la construcción de Puerto Rico, de concluirse que los cambios, comentarios, modificaciones u objeciones de la **OAT** constituyen una orden de cambio. Para propósitos de este Contrato de Desarrollo un día laborable significa un día que no sea sábado, domingo o día feriado legalmente establecido en el Estado Libre Asociado de Puerto Rico. Las partes también acuerdan que todo cambio, enmienda, revisión o actualización de los Planos Finales incluyendo, pero sin limitarse a, todas las órdenes de cambio al Contrato de Construcción o a los Planos Finales sometidos, originados o propuestos por **Ramhil**, será de acuerdo con los diseños conceptuales y esquemáticos sometidos y aprobados y que serán presentados a la **OAT** para su revisión y aprobación de acuerdo con los procedimientos establecidos en este Artículo.-----------------------------------------------

3.3.2 **Permisos, endosos y aprobaciones**. A partir de la firma de este Contrato de Desarrollo, **Ramhil** tramitará y obtendrá, de forma comercialmente razonable y a su propio costo y riesgo, todos los permisos, endosos, aprobaciones y demás autorizaciones gubernamentales (en adelante "Permiso Requerido" o "Permisos Requeridos") necesarios para el desarrollo, construcción y uso del Proyecto. Los Permisos Requeridos incluirán, pero sin limitarse a y de no haberse obtenido anteriormente, todos los permisos de ubicación, calificación del suelo o zonificación del predio, de urbanización y de desarrollo, de construcción y de uso y operación del Proyecto. También incluirá todos los endosos y aprobaciones



Recomendado
6/dic/10

12

necesarios para el desarrollo y construcción del Proyecto tales como aprobaciones o endosos ambientales, de accesos, entradas y salidas y carreteras, disponibilidad de todas las instalaciones de infraestructura de agua, drenajes pluviales y sanitarios, electricidad, gas, telecomunicaciones y cualquier otro servicio de infraestructura necesario para la construcción y operación del Proyecto. **Ramhil** representa a la **OAT** que no iniciará ninguna actividad de desarrollo, construcción u operación sin previamente obtener los Permisos Requeridos. Además, **Ramhil** certificará a la **OAT** que ha otorgado el Contrato de Construcción y/o cualquier otro contrato de construcción necesario para la construcción de todas las obras del Proyecto.----------



3.3.3 **Relevo de responsabilidad de la OAT. Ramhil** expresamente releva y salvaguarda a la **OAT**, sus agentes, oficiales, directores, empleados y/o consultores, de toda responsabilidad de cualquier naturaleza relacionada con el diseño y los Planos Finales del Proyecto, incluyendo por cualesquiera reclamación, acción o demanda que pudiera surgir con relación a los mismos, bien por defectos en ellos, o reclamando el costo de producirlos o su valor, en caso de que **Ramhil** desista del Proyecto o que no obtenga dentro del término aquí pactado las aprobaciones de agencias gubernamentales estatales o federales requeridas por ley o reglamentación vigente, o aún por causa de acción que surgiera con posterioridad a las aprobaciones, o por la implantación o la falta de implantación de cualquier requisito de mantenimiento del predio o requisitos similares impuestos a **Ramhil**, por cualesquiera daños, contractuales o extracontractuales, costos, gastos, honorarios, o penalidades que pudieran surgir relativos a dicho particular.----------------------------

3.4 <u>**Construcción del Proyecto**</u>. **Ramhil** construirá y manejará el Proyecto de una forma continua, diligente y razonable hasta su terminación y entrega, de conformidad con lo establecido y requerido por las agencias reguladoras en el proceso de obtención de los Permisos Requeridos y de acuerdo con los términos y condiciones establecidos en este Contrato de Desarrollo.--------------------------

3.4.1 **Costos y gastos de desarrollo y construcción. Ramhil** será el único responsable por el pago de todos los costos y gastos del desarrollo, diseño y construcción del Proyecto, sin limitación alguna, de cualquier naturaleza independientemente de que se mencionen o no expresamente en este Contrato de Desarrollo.------------------------------------------------------------------------

3.4.2 **Crédito por Construcción/Instalación de Sistemas Seguridad.** Si el costo



del Proyecto se reduce como resultado de la instalación y mantenimiento por parte de la **OAT** de alguno de los componentes del sistema de seguridad requerido como parte del RFP, **Ramhil** otorgará un crédito a favor de la **OAT** que equivalga a: (a) el total de la reducción en costo para **Ramhil** específicamente atribuible al costo del equipo de seguridad a ser pagado por la **OAT** (cámaras, monitores, controles de acceso, brazos mecánicos, transformadores directamente asociados al sistema de seguridad, grabadoras digitales, etc., según dispuesto en el RFP y la Propuesta de Ramhil) y (b) el total de la reducción en costo de mantenimiento para **Ramhil** específicamente atribuible al equipo de seguridad a ser mantenido por la **OAT** durante la vigencia del Contrato de Arrendamiento.  Las partes reconocen y aclaran que algunos de los componentes requeridos para la construcción y/o instalación del sistema de seguridad del Proyecto están tan intrínsecamente relacionados con la construcción de otras obras del Proyecto, que impide que los mismos sean construidos y/o instalados por la **OAT**.  Por ello, las partes se comprometen, dentro de un término no mayor de cuarenta y cinco (45) días laborables a partir de la firma del Contrato de Desarrollo, a establecer con precisión y detalle los componentes del sistema de seguridad que habrá de construir **Ramhil**.-------------------------------------



3.4.3  **Cumplimiento con las leyes**. **Ramhil** llevará a cabo la construcción del Proyecto en cumplimiento con todas las disposiciones de este Contrato de Desarrollo y con todas las leyes, ordenanzas, decretos, reglamentos, órdenes, endosos, permisos, autorizaciones, requisitos y cualesquiera otras disposiciones legales aplicables en el desarrollo y construcción del Proyecto de todas las agencias e instrumentalidades gubernamentales federales, estatales y municipales del Estado Libre Asociado de Puerto Rico y de los Estados Unidos de América y cualquier otra autoridad pública correspondiente y con jurisdicción incluyendo, pero sin limitarse a, el Código de Construcción de Puerto Rico.  Esta disposición será cumplida sin menoscabo de los derechos de **Ramhil** de cuestionar por los medios legales requeridos la aplicación de tales leyes, reglamentos, ordenanzas o decretos al Proyecto.-------------------------------------------------------------------------------------

3.4.4  **Certificación de garantía de ejecución y entrega de la obra**.  Dentro de los cinco (5) días laborables de la ejecución del Contrato de Financiamiento, **Ramhil** y sus accionistas principales certificarán a la **OAT** que los accionistas principales de **Ramhil**, junto con **Ramhil**, han ejecutado garantías de cumplimiento en cuanto al financiamiento del Proyecto a favor de la entidad que provee el financiamiento del



mismo y someterán copias de los documentos de financiamiento y/o garantías que así lo evidencien.--------------------------------------------------------------------------------

**3.4.5  Comienzo y término de construcción.  Ramhil** se compromete a completar la construcción sustancial del Proyecto en un término de treinta (30) meses, contados a partir de la fecha en que se otorgue el Contrato de Financiamiento, conforme a los Planos Finales revisados y aprobados por la **OAT**, salvo que ocurra un evento de fuerza mayor, según lo dispuesto en este Contrato de Desarrollo. **Ramhil** se compromete a comenzar la construcción del Proyecto dentro de los cinco (5) días laborables de la fecha de la ejecución del Contrato de Financiamiento o el 1 de mayo de 2011, lo que ocurra primero (en adelante "Fecha de Comienzo"). Para efectos de este Contrato de Desarrollo, el comienzo de construcción se define como el comienzo de las actividades físicas en la parcela relacionadas con el movimiento de terrenos.  Las partes acuerdan que aunque **Ramhil** comience la construcción de las obras sin que se haya ejecutado el Contrato de Financiamiento, la Fecha de Comienzo seguirá siendo considerada para efectos del término disponible para completar la construcción, la fecha en que se ejecute el Contrato de Financiamiento o el 1 de mayo de 2011, lo que ocurra primero.-------------------------



**3.4.6  Inspección de la construcción**. Tanto **Ramhil** como la **OAT** designarán cada uno un representante para la construcción y, después de la notificación de tal designación y hasta que ésta se cambie o revoque, esos representantes para la construcción tramitarán, enviaran y recibirán todas las notificaciones, aprobaciones, comunicaciones, planos, especificaciones y otros materiales y documentos requeridos o permitidos para ser enviados y recibidos de conformidad con este Contrato de Desarrollo.---------------------------------------------------------------------

La **OAT** estará representada en la construcción por la Oficina de Inspección, la cual estará a cargo de un ingeniero seleccionado por **Ramhil** y aprobado por la **OAT**, por medio de quien se mantendrá al tanto, a través de informes de progreso y ejecución de la misma. La Oficina de Inspección también fungirá como representante de **Ramhil** frente al contratista.  La Oficina de Inspección velará porque la construcción del Proyecto se realice según los Planos Finales y los términos y condiciones de este Contrato de Desarrollo.  El contacto o enlace principal de esta Oficina de Inspección con la **OAT** será el representante para la construcción designado. **Ramhil** pagará los servicios a ser prestados por la Oficina

Recomendado
o/dic/10
cfc

15

de Inspección.----------------------------------------------------------------------------

**3.4.7 Cambios solicitados por la OAT.** Si la **OAT** solicita cambios o modificaciones a los Planos Finales luego de que transcurran los términos y los procesos de revisión y aprobación del diseño y los planos finales del Proyecto, según provisto en el presente Contrato de Desarrollo, tales cambios o modificaciones se someterán por escrito como una "Orden de Cambio", siguiendo las prácticas de la industria de la construcción en Puerto Rico.------------------------

Para efectos de este Contrato de Desarrollo se considerará una orden de cambio cualquier requerimiento o solicitud de la **OAT** que conlleve un cambio en los Planos Finales del Proyecto debidamente aprobados por la **OAT**, según lo dispuesto en este Contrato de Desarrollo, y que a su vez conlleve un aumento en los costos de construcción del Proyecto (en adelante "Orden de Cambio").----------------------------

Toda Orden de Cambio será preparada y recomendada por la Oficina de Inspección y recomendada y tramitada por el representante para la construcción de la **OAT** y firmada y autorizada por la Directora Administrativa de los Tribunales o la persona a quien ésta delegue. No serán considerados órdenes de cambio los cambios o modificaciones solicitadas, por cualquier motivo, por **Ramhil**, los cuales deberán ser revisados y aprobados por la **OAT**, según lo establecido en este Contrato de Desarrollo.----------------------------------------------------------------------------

En el caso que la **OAT** solicite una Orden de Cambio conforme a lo establecido en este Contrato de Desarrollo, ambas partes determinarán de común acuerdo el plazo de tiempo adicional de construcción, de ser este necesario, para efectuar los cambios requeridos. La **OAT** asumirá los costos adicionales que incurra **Ramhil** debido a las órdenes de cambio solicitadas por la **OAT**, pagando el costo a base de las certificaciones debidamente expedidas por el contratista y aprobadas por la Oficina de Inspección.----------------------------------------------------------------------

**3.4.8 Sistema de Aire Acondicionado. Ramhil** se compromete a diseñar y construir y/o instalar un sistema de aire acondicionado que cumpla con los requisitos establecidos por la **OAT** en el RFP y que sea revisado y aprobado por la **OAT** como parte del proceso de revisión de diseño establecido en este Contrato de Desarrollo.----------------------------------------------------------------------------

<u>Recomendado</u>
6/dic/10
cfc

16

**3.4.9 Subestación Eléctrica.** **Ramhil** se compromete a diseñar, construir e instalar la subestación eléctrica de 38 KVA del Proyecto dentro de la Parcela Centro Judicial, en un lugar acordado mutuamente por las partes y en conformidad con los requerimientos de la AEE.----------------------------------------------------

**3.4.10 Fuerza mayor.** Un retraso o falta de cumplimiento de parte de **Ramhil** de las obligaciones de diseño y construcción del Proyecto establecidas en este Contrato de Desarrollo no constituirán un evento de incumplimiento ("default") bajo este contrato en la medida que ese retraso o falta de cumplimiento no pueda ser prevenido por el ejercicio de razonable diligencia por parte de **Ramhil**, resulte de "actos de Dios" o fuerza mayor, actos de terrorismo, bioterrorismo, actos de guerra (declarada o no declarada), revueltas o revoluciones, actos de un enemigo público, desobediencia civil e insurrecciones, fuego, desastres naturales, escases de materiales o mano de obra, huelgas u otros conflictos laborales no atribuibles al incumplimiento de **Ramhil** con cualquier contrato o convenio laboral o cualquier ley o reglamento aplicable y que afecte directamente a **Ramhil**, eventos de incumplimientos de la **OAT**, la interrupción de la construcción del Proyecto por orden o acción judicial o por orden de alguna entidad gubernamental que no haya sido causada por acción u omisión de **Ramhil** o sus afiliados, agentes, contratistas o cualquier otro individuo o entidad actuando a su nombre, lluvias cuya magnitud no permita avanzar el paso crítico de la construcción, o el plazo de treinta (30) meses se extienda a consecuencia de Órdenes de Cambio solicitados por la **OAT**, según lo establecido en este Contrato de Desarrollo.------------------------------------------------

En ningún caso, será considerado un evento de fuerza mayor la inhabilidad de obtener financiamiento, los Permisos Requeridos o retrasos por cierres gubernamentales, por condiciones del suelo o retrasos o cambios en la construcción de carreteras, infraestructura de transportación y mejoras relacionadas que no afecten directamente la construcción del Proyecto.---------------------------------------

**Ramhil** acuerda que realizará todos los esfuerzos necesarios de forma diligente para minimizar el retraso y cualquier otro efecto adverso que ocasione cualquier evento de fuerza mayor. El incumplimiento con este acuerdo se considerará un evento de incumplimiento.----------------------------------------------------------

**Ramhil** notificará por escrito a la **OAT** de cualquier evento de fuerza mayor o cualquier evento de incumplimiento alegado por la **OAT**, excusando su retraso o



incumplimiento. **Ramhil** mantendrá informada razonablemente a la **OAT** de cualquier desarrollo relacionado con el evento de fuerza mayor o con el alegado incumplimiento.--------------------------------------------------------------------

3.4.11 **Salarios Prevalecientes**. En la medida que sea aplicable a los negocios de **Ramhil** y a la construcción del Proyecto, todos los contratos de construcción de cualquier mejora y cualquier otro trabajo de desarrollo tendrá que requerir que los contratistas y subcontratistas de **Ramhil** paguen el nivel de salarios prevaleciente (el llamado salario mínimo federal) según establecido por el gobierno de los Estados Unidos de América. Esos contratos también contendrán disposiciones sobre seguros para la protección de la **OAT**, los trabajadores o empleados, suplidores, subcontratistas y el público.--------------------------------------------------

3.4.12 **No Consentimiento**. Nada de lo dispuesto en este Contrato de Desarrollo se interpretará o entenderá de ninguna forma como que constituye un consentimiento o un requerimiento de la **OAT**, expreso o implícito, por inferencia o de cualquier otra manera, a ningún contratista, subcontratista, trabajador o suplidor para la realización de ninguna labor o el suplido de ningún material para cualquier mejora, construcción, alteración o reparación del Proyecto.----------------------------

3.4.13 **Fianza de pago y ejecución ("Payment and Performance Bonds")**. Antes del comienzo del trabajo de desarrollo de cualquier componente del Proyecto, **Ramhil** se asegurará y certificará a la **OAT** que los contratistas y/o subcontratistas tramiten y obtengan las fianzas de pago y ejecución (en adelante "Payment and Performance Bonds", según se define el término en inglés), a favor de **Ramhil** y/o la entidad que provea el financiamiento para el Proyecto, con las cuantías y en la forma y la substancia y las garantías que sean satisfactorias a **Ramhil** y/o la entidad que provea el financiamiento para el Proyecto, respecto al trabajo del componente particular del Proyecto que será realizado por el contratista o los contratistas.--------------------------------------------------------------------

3.4.14 **Relevo de responsabilidad**. La **OAT** no será responsable en daños (ya sean directos, indirectos o de cualquier otra forma) a **Ramhil**, sus afiliadas, sucesores, cesionarios, agentes, empleados, contratistas, concesionarios y cualquier otro invitado o usuario del Proyecto a ninguna otra parte en conexión con la aprobación o rechazo de diseños o planos, la implantación o incumplimiento de implantar cualquier acto de mantenimiento de la parcela o cualquier requisito



Recomendado
6/dic/10

similar impuesto a **Ramhil** o defectos en los diseños y planos aprobados. Además, **Ramhil**, sus sucesores y cesionarios ofrecerán indemnización, defenderán y liberarán de toda responsabilidad ("Hold Harmless") a la **OAT** y a sus oficiales, directores, empleados y agentes de cualquier y toda responsabilidad, incluyendo honorarios de abogado y gastos legales incurridos, sin importar que la demanda o acción judicial o cualquier impugnación o apelación sea el resultado de cualquier aprobación o rechazo de la **OAT** a **Ramhil**, según lo establecido en este Contrato de Desarrollo o del incumplimiento de mantener la parcela según requerido. Esta limitación de responsabilidad aplica solamente a la responsabilidad que surja de los procesos de revisión y aprobación establecidos en este Artículo y no se extiende a otras acciones u omisiones de la **OAT** y de cualquier otro tercero.----------------------



**3.4.15   Terminación aceptación y entrega del Proyecto. El Proyecto será construido, terminado o completado y listo para la aceptación y entrega a la OAT en un término de treinta (30) meses a partir de la ejecución del Contrato de Financiamiento o el 15 de septiembre de 2013, lo que ocurra primero.--------**



**3.4.16   Daños Líquidos por retraso en la entrega**. Si habiendo **Ramhil** comenzado la construcción del Proyecto, no pudiese entregar el mismo para ser aceptado y entregado a la **OAT** dentro del término dispuesto en este Contrato de Desarrollo, sin que se justifique su retraso por alguna de las razones establecidas en el presente Contrato de Desarrollo y se someta evidencia y documentación a tales efectos, **Ramhil** pagará a la **OAT** por concepto de daños líquidos debido, única y exclusivamente, a dicho retraso en la entrega la cantidad estipulada de mil dólares ($1,000.00) diarios (en adelante "Daños Líquidos"). Los Daños Líquidos son en adición a cualquier otro remedio no monetario que la **OAT** tenga disponible en virtud de este Contrato de Desarrollo por concepto del retraso de **Ramhil** en la entrega del Proyecto.---------------------------------------------------------------

**3.4.17  Terminación de la Construcción**. El Proyecto estará completado cuando se evidencie que se ha completado sustancialmente ("substantial completion") y que está listo para ocupación por parte de la **OAT** mediante la correspondiente certificación por parte de los profesionales encargados de la obra y la expedición del permiso de uso por parte de las agencias reguladoras con jurisdicción. Con la expedición y entrega a la **OAT** del permiso de uso, comienza la obligación de la

Recomendado
6/dic/10


**OAT** de pagar el canon de arrendamiento mensual pactado en el Contrato de Arrendamiento.--------------------------------------------------------------------------------

**3.4.18 Inspección Final.** Luego que **Ramhil** solicite la aprobación del certificado de que la construcción del Proyecto se ha completado sustancialmente ("substantial completion"), la Oficina de Inspección efectuará la inspección final del Proyecto. La solicitud de aprobación del certificado de que la construcción del Proyecto se ha completado sustancialmente ("substantial completion") será notificada a la Oficina de Inspección por escrito y por correo certificado con acuse de recibo. La Oficina de Inspección tendrá quince (15) días laborables a partir del recibo de dicha notificación para rendir un informe escrito y enviarlo por correo certificado con acuse de recibo a la **OAT** y a **Ramhil** recomendando la aceptación o el rechazo de que la construcción del Proyecto se ha completado sustancialmente ("substantial completion").-----------------------------------------------------------------------------



Si la Oficina de Inspección recomienda la aceptación del Proyecto, la **OAT** podrá expedir la Certificación de Aceptación del Proyecto. De no recomendarse la aceptación del Proyecto y haberse expirado el plazo para completar o terminar la construcción, la Oficina de Inspección definirá un plazo razonable para la corrección de los defectos señalados por dicha oficina que impiden la aceptación del Proyecto por parte de la **OAT**. Una vez expirado el término establecido en este Contrato de Desarrollo para completar la construcción del Proyecto, sin que ésta se haya completado, se aplicará el pago a favor de la **OAT** de los Daños Líquidos establecidos por concepto de retraso en el presente Contrato de Desarrollo.-----------



Se dispone que aquellos defectos identificados en la lista de defectos o correcciones ("Punch List") que no impidan el uso del Proyecto y que sean debidamente identificados por la Oficina de Inspección en el certificado de terminación sustancial, no se considerarán como defectos que impidan la aceptación del Proyecto. La Oficina de Inspección definirá el término o términos razonables para la corrección de dichos defectos. En caso de que **Ramhil** no corrija los referidos defectos, la **OAT** procederá, a su discreción, a corregir las deficiencias y deducir, de forma razonable, del pago del canon de arrendamiento el costo de las correcciones.--------------------------------------------------------------------------------

**3.4.19 Planos o Documentos de Construcción "As built".** **Ramhil** preparará a su costo y entregará a la **OAT** un juego de los Planos Finales del Proyecto según



construido ("As Built") y del plano de mensura de la Parcela Centro Judicial, conforme con lo establecido en este Contrato de Desarrollo, en papel y en formato digital, dentro de un término de treinta (30) días laborables, contados a partir de la expedición del permiso de uso correspondiente.-------------------------------------------

## ARTÍCULO 4
## <u>TÉRMINOS DEL ARRENDAMIENTO</u>

4.1 <u>**Término del Arrendamiento**</u>. Luego de que **Ramhil** satisfaga en su totalidad las Condiciones Precedentes establecidas en este Contrato de Desarrollo, salvo que la **OAT** las dé por cumplidas si alguna no hubiera sido satisfecha, en conformidad con lo dispuesto en el Artículo 1.2.2, la **OAT** se obliga a otorgar un Contrato de Arrendamiento de acuerdo con los términos y condiciones que se establecen en este Artículo. El área a arrendarse y a venderse al terminar la vigencia del Contrato de Arrendamiento incluye la Parcela Centro Judicial, el Proyecto, cualquier servidumbre o derecho que beneficie a la **OAT** sobre fincas adyacentes por razón de titularidad del área arrendada y cualquier derecho, título e interés propietario que pueda tener **Ramhil** sobre equipo, mobiliario o accesiones que se utilicen para el uso y ocupación del área arrendada, así como cambios, adiciones y mejoras que se efectúen en el área arrendada, excluyendo únicamente el equipo telefónico y cualquier equipo, mobiliario o accesiones que sean propiedad de o instalados por la **OAT** (en adelante "Área a Arrendarse").-----------------------------------------------

**El término de vigencia del Contrato de Arrendamiento será de treinta (30) años a partir de la fecha de la expedición del permiso de uso, según lo establecido en este Contrato de Desarrollo.** Se establece que "año de arrendamiento" comprenderá doce (12) meses calendario consecutivos.---------------

4.2 <u>**Transferencia del Proyecto a la OAT**</u>. Al finalizar la vigencia del Contrato de Arrendamiento, **Ramhil** venderá y la **OAT** comprará el Área a Arrendarse por el precio nominal de un dólar ($1.00), conforme a la ley y a los procedimientos vigentes a la fecha en que se vaya a efectuar dicha transacción. El Contrato de Arrendamiento establecerá los términos, condiciones y procedimientos de esta transferencia y también incluirá los derechos de tanteo ("First Refusal") y los procesos para que la **OAT** adquiera el Área a Arrendarse antes del vencimiento de la vigencia del Contrato de Arrendamiento.-----------------------------------------------



Recomendado
6/dic/10

21

**4.2.1   Transferencia libre de gravámenes.** Al transferir a la **OAT** el Área a Arrendarse, **Ramhil** se obliga a que dicha propiedad se encuentre libre de cargas y gravámenes. El Área a Arrendarse deberá estar libre además de cualquier embargo o anotación registral o de cualquier reclamación judicial o extrajudicial que involucre la misma, incluyendo pero sin limitarse a la hipoteca o hipotecas constituidas para garantizar el o los préstamos de financiamiento para la construcción del Proyecto.-------------------------------------------------------------------

**4.3   <u>Canon de Arrendamiento</u>. El canon de arrendamiento del Área a ser Arrendada y utilizable será de treinta y dos dólares con ochenta y cinco centavos ($32.85) por pie cuadrado para el Edificio del Centro Judicial (con un área de 342,187.03 pies$^2$) y de diecinueve dólares con treinta centavos ($19.30) por pie cuadrado para el Edificio de Estacionamiento (con un área de 324,452.55 pies$^2$).** Este canon de arrendamiento se pagará según los términos y condiciones del Contrato de Arrendamiento a ser firmado por las partes. Este canon de arrendamiento incluirá además los costos de los seguros del Área a Arrendarse, la contribución sobre la propiedad y el mantenimiento del Área a Arrendarse. Luego de transcurrido un término de diez (10) años desde la fecha de comienzo del Contrato de Arrendamiento, las partes renegociaran un incremento en el canon de arrendamiento que no excederá de diez por ciento (10%). Luego de transcurrido un término de veinte (20) años desde la fecha de comienzo del Contrato de Arrendamiento, las partes renegociaran un segundo incremento en el canon de arrendamiento que no excederá de diez por ciento (10%). El canon de arrendamiento acordado permanecerá inalterado por cada período de diez (10) años, salvo los ajustes en la partida del componente operacional debido a aumentos en el salario mínimo federal y/o cualquier legislación municipal, estatal o federal. El canon de arrendamiento incluye los gastos relativos a las siguientes partidas: (a) seguros del Edificio Centro Judicial; (b) contribuciones sobre la propiedad a base del primer recibo que se emita a los efectos, contemporáneo con la expedición del permiso de uso (cualquier aumento en esta partida corresponde ser sufragado por la **OAT**) y (c) el mantenimiento de las áreas públicas y del Edificio Centro Judicial, según descrito en la Propuesta de Ramhil.----------------------------------------------------

**4.3.1   Obligación de pago del canon de arrendamiento.** La **OAT** se obliga y se compromete a incluir en su presupuesto anual una partida específica para cubrir las




Recomendado
6/dic/10

22

obligaciones bajo el Contrato de Arrendamiento y solicitar anualmente fondos suficientes para ello.------------------------------------------------------------------------

4.4   **Mantenimiento del Proyecto.   Ramhil** se obliga durante la vigencia del Contrato de Arrendamiento a proveer, instalar, mantener y reparar el Área a Arrendarse para conservarla en condiciones utilizables y mantener en funciones todos sus servicios, equipos y accesorios.   **Ramhil** cumplirá con todas las leyes, reglamentos, ordenanzas y/o disposiciones legales aplicables para la conservación, seguridad y mantenimiento del Área a Arrendarse.   Los términos y condiciones sobre el adecuado mantenimiento del Área a Arrendarse se establecerán más detalladamente en el Contrato de Arrendamiento.---------------------------------------



4.4.1   **Medidas de seguridad y salud pública.**   A la fecha de expedición del permiso de uso, **Ramhil** vendrá obligado a cumplir con las medidas de seguridad y salud pública que recomienden el Servicio de Bomberos de Puerto Rico, el Departamento de Salud y el Departamento del Trabajo, así como toda ley u ordenanza, requerimiento, orden o disposición aplicable al Área a Arrendarse.------



4.5   **Inscripción del Contrato de Arrendamiento**.   La **OAT** se reserva el derecho de inscribir en el Registro de la Propiedad el derecho de arrendamiento constituido bajo el Contrato de Arrendamiento, mediante la conversión del Contrato de Arrendamiento en escritura pública.   Dicha escritura pública será otorgada y presentada en el Registro de la Propiedad a solicitud la **OAT**.   La **OAT** seleccionará el notario y pagará sus honorarios, al igual que los sellos y comprobantes a cancelarse para la inscripción de su derecho de arrendamiento.------

## ARTÍCULO 5
### FINANCIAMIENTO Y DERECHOS DEL ACREEDOR HIPOTECARIO

5.1   **Financiamiento**.   **Ramhil** buscará y conseguirá el financiamiento adecuado para el desarrollo y construcción del Proyecto.---------------------------------------------

5.1.1   **Acuerdos de Financiamiento**.   Una vez obtenido el financiamiento, **Ramhil** certificará los términos principales del mismo a la **OAT**.   De verificarse cambios sustanciales en los términos principales del financiamiento debido a posteriores financiamientos, **Ramhil** vendrá obligada a certificar nuevamente los términos principales de dicho financiamiento posterior a la **OAT**.--------------------------------



**5.2  Pago de deudas hipotecarias**. La **OAT** no vendrá obligada a responder por el pago de deudas de **Ramhil** que estén garantizadas mediante hipotecas sobre el Área a Arrendarse, sin importar el concepto por el cual **Ramhil** adeude la suma así garantizada.  Se acuerda, además, que tales hipotecas o los documentos que le sirvan de colateral no contendrán acuerdo alguno que permita el cobro de la cantidad adeudada o parte de esta a la **OAT**.-------------------------------------------------

**5.3  Derechos de los Acreedores Hipotecarios. Notificación**. El o los acreedores hipotecarios serán notificados simultáneamente que a **Ramhil** de cualquier proceso o acción para terminar o de cualquier otra forma afectar este Contrato de Desarrollo y el Contrato de Arrendamiento, incluyendo cualquier aviso de evento de incumplimiento, algún asunto sobre un evento de incumplimiento, un aviso de terminación del Contrato de Desarrollo o una condición que pueda llevar a la terminación del Contrato de Desarrollo y/o del Contrato de Arrendamiento.  La notificación al o a los acreedores hipotecarios será por correo certificado con acuse de recibo y ninguna notificación o proceso a **Ramhil** será efectivo a menos que una copia de la notificación se envíe al o a los acreedores hipotecarios.--------------------





**5.3.1  Derecho a remediar**. El o los acreedores hipotecarios podrán, a su discreción remediar cualquier incumplimiento por parte de **Ramhil**.  Para remediar el incumplimiento tendrán el mismo tiempo, términos y condiciones que tendría **Ramhil** para cumplir o remediar un incumplimiento específico, según lo establecido en este Contrato de Desarrollo y en el Contrato de Arrendamiento.------

**5.3.2  Cesión de derechos de canon de arrendamiento.  Ramhil** podrá ceder sus derechos a los cánones de arrendamiento adeudados y por cobrar, según lo establecido en este Contrato de Desarrollo y en el Contrato de Arrendamiento, a favor del o de los acreedores hipotecarios que concedan el o los préstamos para el desarrollo y construcción del Proyecto.  Dicha cesión no constituirá una liberación de ninguna de las obligaciones de **Ramhil**, salvo pacto en contrario entre las partes.

**5.4  Obligaciones de los Acreedores Hipotecarios. Notificación**.  Durante el término del Contrato de Arrendamiento, **Ramhil** notificará a la **OAT** sobre cualquier incumplimiento con los términos los acuerdos suscritos por **Ramhil** para el financiamiento del Proyecto.  Además, las hipotecas proveerán para que el

acreedor, acreedor hipotecario y/o fiduciario actuando a beneficio de éstos, notifique a la **OAT** de cualquier incumplimiento por parte de **Ramhil** de los términos del financiamiento y/o hipoteca.------------------------------------------------

5.4.1 **Derecho a remediar.** La **OAT** tendrá treinta (30) días laborables, contados a partir del recibo de la notificación de la entidad financiera para, a su discreción, remediar el incumplimiento y proceder a descontarlo del canon de arrendamiento.--

5.5 **Acuerdo de no perturbación ("Non Disturbance Agreement").** **Ramhil** obtendrá de sus acreedores hipotecarios el acuerdo escrito a favor de la **OAT** mediante el cual se comprometen a respetar el arrendamiento del Área a Arrendarse en caso de ejecución o cualquier procedimiento dirigido a lograr el cumplimiento de cualquier hipoteca constituida vigente o futura. Mediante este acuerdo, cualquier acreedor hipotecario de **Ramhil** se comprometerá a garantizar que la posesión de la **OAT** no será perturbada, siempre y cuando ésta, al momento de la ejecución de la hipoteca de procedimiento legal que se trate, no haya incumplido con las obligaciones bajo este Contrato de Desarrollo y bajo el Contrato de Arrendamiento.------------------------------------------------------------------




## ARTÍCULO 6
## IMPUESTOS Y CONTRIBUCIONES

6.1 **Contribuciones.** **Ramhil** pagará o logrará que se pague, antes que ninguna multa, penalidad o interés sea impuesta por el incumplimiento de pago, y será responsable de todas las contribuciones de cualquier naturaleza, cargos, aportaciones o cuotas que se impongan y correspondan al Proyecto y/o al Área a Arrendarse y/o a cualesquiera otros bienes, operaciones y/o servicios relacionados con el Proyecto y/o al Área a Arrendarse.-----------------------------------------------

6.1.1 **Contribuciones sobre la propiedad.** Durante la vigencia del Contrato de Arrendamiento, y de imponerse el pago de contribuciones sobre la propiedad al Área a Arrendarse, **Ramhil** será responsable del pago de las mismas y someterá a la **OAT** y a su acreedor hipotecario una certificación de la autoridad gubernamental correspondiente o cualquier otra evidencia demostrativa de que ha satisfecho el pago de contribuciones sobre el Área a Arrendarse, según le sea requerido. Se acuerda y aclara que la responsabilidad de **Ramhil** en cuanto al pago de las contribuciones sobre la propiedad se limita a las leyes y tasas aplicables al

Recomendado

6/dic/10
CJC

momento de la expedición del permiso de uso, luego de ello, cualquier incremento en dichas contribuciones sobre la propiedad será responsabilidad de la **OAT**.--------

6.1.2 **Pago por servicios de infraestructura o utilidades.** La **OAT** tendrá a su cargo los pagos por los servicios de electricidad, agua, alcantarillado sanitario, gas, teléfono, recogido de desperdicios sólidos, limpieza, fumigación de las áreas privadas y otros servicios similares, incluyendo el pago de cualquier depósito requerido para ello. La **OAT** también tendrá a su cargo el pago por combustible para la operación de la planta de emergencia, siempre y cuando la falla en la electricidad no sea atribuible a **Ramhil**.-------------------------------------------------



6.1.3 **Contribuciones sobre ingresos, aportaciones al seguro social. Ramhil** es responsable de pagar las aportaciones correspondientes al Seguro Social Federal y al Negociado de Contribución sobre Ingresos del Departamento de Hacienda por cualquier cantidad tributable como resultado de los ingresos devengados bajo este Contrato de Desarrollo y bajo el Contrato de Arrendamiento. La **OAT** notificará al Negociado de Contribución sobre Ingresos los pagos y reembolsos que sean efectuados a **Ramhil**.--------------------------------------------------------



6.1.4 **Recibos. Ramhil**, a solicitud de la **OAT**, le proveerá dentro de treinta (30) días laborables de la fecha en que el pago de una contribución, según descrita en este Artículo, venza, copia de los recibos oficiales o cualquier otra evidencia razonablemente satisfactoria a la **OAT**, que demuestre el pago de dicha contribución.--------------------------------------------------------------------

## ARTÍCULO 7
## SEGUROS E INDEMNIZACIONES

7.1 <u>**Seguros**</u>. **Ramhil** y/o los contratistas a los cuales se le adjudique la construcción de cualquier parte del Proyecto, bajo su sola cuenta y cargo, obtendrán y mantendrán los seguros que se enumeran en este Artículo, los cuales cumplirán con lo establecido en este Contrato de Desarrollo y en el Contrato de Arrendamiento.--------------------------------------------------------------------

7.1.1 **Seguro(s) de propiedad.** Durante la etapa de construcción del Proyecto se tendrá una cubierta de "Builder's Risk" que cubra, sin limitación, el cien por ciento (100%) de las estructuras contra cualquier riesgo de pérdida, daño o destrucción por

<u>Recomendado</u>
6/dic/10
cfc

cualquier causa, incluyendo el costo de remoción de escombros. Una vez finalice la construcción, la póliza de "Builder's Risk" será reemplazada por una póliza de propiedad en "Special Form, All Risk Form", la cual cubrirá las estructuras contra cualquier riesgo de pérdida, daño o destrucción por cualquier causa en una cantidad no menor al cien por ciento (100%) del valor de reemplazo de la propiedad, incluyendo el Proyecto y/o propiedad personal o mueble en las mismas. La póliza de propiedad incluirá un endoso de protección contra la inflación de ocho por ciento (8%) ("Inflation Guard") e incluirá a la **OAT** como "Loss Payee". **Ramhil** aumentará la cubierta del valor de la propiedad asegurada anualmente por un porcentaje no menor del dos por ciento (2%), disponiéndose que cada cuatro (4) años después del comienzo del término del Contrato de Arrendamiento, **Ramhil** tasará el Área a Arrendarse, a su costo, para determinar el valor de reemplazo correspondiente en ese momento y ajustará la cubierta para que sea igual a dicho valor en ese momento. En el año en que se tase el Área a Arrendarse no se aumentará la cubierta por el dos por ciento (2%), siendo el ajuste que se haga como resultado de la tasación antes mencionada el único ajuste que se hará en ese año. **Ramhil** hará entrega a la **OAT** de una copia de la tasación del Área a Arrendarse cada cuatro (4) años.------------------------------------------------------------------------





7.1.2 **Seguro de responsabilidad pública.** Se obtendrá una póliza general y de responsabilidad pública contra reclamaciones por daños personales, muerte y/o daños a propiedad que cubra el Proyecto, la parcela y demás componentes del Área a Arrendarse. Dicho seguro proveerá una póliza principal con límites de un millón de dólares ($1,000,000.00) por ocurrencia y dos millones de dólares ($2,000,000.00) agregado anual, y una póliza adicional "umbrella" con límite no menor de cinco millones de dólares ($5,000,000.00). Estas pólizas deberán incluir a la **OAT** como asegurada adicional e incluir un endoso de "Hold Harmless Agreement" a favor de la **OAT** y estarán vigentes durante la construcción y continuarán, una vez finalizada la misma, durante la operación del Proyecto.---------

7.1.3 **Seguro de inundación.** Se obtendrá un seguro de inundación en caso de que éste sea aplicable a la zona del Área a Arrendarse.----------------------------------------

7.1.4 **Seguro de responsabilidad patronal.** Se obtendrá un seguro del Fondo del Seguro del Estado, según requerido por ley. Además, se obtendrá un seguro por una cubierta no menor de quinientos mil dólares ($500,000.00) por persona y por

Recomendado


6/ dic/10

evento que cubre la responsabilidad no cubierta por el Fondo del Seguro del Estado en caso de negligencia crasa.------------------------------------------------------------

7.1.5 **Otros seguros**. Se obtendrá cualquier otro seguro requerido por ley o recomendado por los usos particulares del Proyecto.------------------------------------

7.2 **Certificados de Seguro**. A la fecha del inicio de la construcción del Proyecto, **Ramhil** entregará a la **OAT** los certificados de seguros correspondientes y una copia de cada póliza. De igual manera, **Ramhil** entregará anualmente los certificados de la renovación de dichas pólizas, antes de la fecha de expiración de las mismas.------------------------------------------------------------------------



7.3 **Los Aseguradores**. Las pólizas de seguro antes indicadas tendrán que ser expedidas por compañías autorizadas a hacer negocios en el Estado Libre Asociado de Puerto Rico, y que sean razonablemente aceptables a la **OAT** y para cualquier otra entidad gubernamental con jurisdicción para autorizar y aprobar seguros.-------



7.4 **Asegurado Adicional**. Las pólizas antes indicadas incluirán a la **OAT** como "asegurada adicional" ("additional named insured") y cubierta por todos los relevos y salvaguardas contra todos los riesgos asegurados por los mismos ("hold harmless agreement"). Dichas pólizas proveerán para que no puedan sufrir ningún cambio sustancial o cancelación de las mismas, sin haberse notificado por la compañía aseguradora a la **OAT** con no menos de treinta (30) días laborables de antelación de dicho cambio o terminación.------------------------------------------------------------

7.5 **Uso del Producto**. Sujeto a los derechos del acreedor hipotecario, el producto de las pólizas será pagado y utilizado de conformidad con lo dispuesto en este Contrato de Desarrollo y el Contrato de Arrendamiento.--------------------------------

7.6 **Obligaciones de Ramhil**. Las obligaciones de **Ramhil** bajo este Contrato de Desarrollo y bajo el Contrato de Arrendamiento no se entenderán disminuidas ni relevadas de forma o manera alguna, salvo que de otra manera se disponga en este Contrato de Desarrollo o en el Contrato de Arrendamiento, independientemente del pago o de la suficiencia del monto del producto de la(s) póliza(s).--------------------

7.7 **Indemnización**. **Ramhil** indemnizará, relevará y salvaguardará a la **OAT** de toda responsabilidad, pérdidas, daños, costos, penalidades, multas y/o honorarios y de cualesquiera acciones, reclamaciones o demandas sobre dichos particulares, que

pudieran surgir relacionados con el cumplimiento de sus obligaciones bajo este Contrato de Desarrollo; con el desarrollo, construcción, uso, operación, conservación y mantenimiento de la Parcela Centro Judicial y/o el Proyecto y/o cualquier otra mejora que se lleve a cabo como parte del desarrollo del Proyecto, dentro y fuera de la Parcela Centro Judicial y por cualquier reclamación resultante de defectos de construcción o estructurales en el Área a Arrendarse; con cualquier acto, omisión o negligencia de **Ramhil**, o de sus agentes, empleados, representantes, consultores, invitados, usuarios, ocupantes o inquilinos; con cualquier incumplimiento de **Ramhil**, incluyendo lo relativo a las condiciones ambientales y acciones remediables; con cualquier uso, no uso, posesión, ocupación, operación, mantenimiento o administración del Área Arrendada y a fuera del Área Arrendada, pero bajo el control de **Ramhil**, por parte de **Ramhil** o de sus agentes, empleados, representantes, consultores, invitados, usuarios, ocupantes o inquilinos, a menos que resulte de la negligencia y los actos u omisiones de la **OAT**, sus empleados, contratistas o agentes; y con cualquier accidente, lesión o daño a cualquier persona o propiedad que ocurra en y en los alrededores del área arrendada y a fuera del área arrendada, pero bajo el control de **Ramhil**, a menos que ocurra solamente como resultado de la negligencia o de los actos u omisiones de la **OAT**, sus empleados, contratistas o agentes.--------------------



7.7.1 **Costos, gastos y honorarios de acciones**. En la eventualidad de que la **OAT** sea incluida como parte en cualquier controversia relacionada con lo antes expuesto en este Artículo, **Ramhil** salvaguardará a la **OAT** y cubrirá todos los costos, gastos y honorarios razonables para la defensa de la **OAT**.-------------------------------------

7.7.2 **No limitación de la indemnización**. La obligación de indemnización dispuesta en este Artículo no será interpretada o considerada como que niega, reduce o modifica ninguna otra obligación de indemnización a la **OAT** que exista en el ordenamiento jurídico vigente y en cualquier otra disposición de este Contrato de Desarrollo y la extensión de esta obligación de indemnización no será limitada por ninguna disposición de este Contrato de Desarrollo relacionada con seguros. Las disposiciones de este Artículo sobrevivirán la terminación o expiración de este Contrato de Desarrollo.-----------------------------------------------------------------

### ARTÍCULO 8
### EXPROPIACIÓN FORZOSA

Recomendado
6/dic/10

29

8.1 **Expropiación Total de Área a Arrendarse**. Si durante el término y vigencia del contrato de arrendamiento, la totalidad del Área a Arrendarse fuera objeto de un procedimiento de expropiación forzosa iniciado por una entidad pública en virtud de la legislación vigente a eso fines, tal expropiación dará por terminado el Contrato de Arrendamiento y los derechos y obligaciones establecidos en el mismo. El canon de arrendamiento a ser pagado por la **OAT** se ajustará a la fecha de tal terminación.-------------------------------------------------------------------------



8.2 **Expropiación Parcial del Área a Arrendarse**.  Las partes acuerdan que de iniciarse una acción de expropiación forzosa de una parte del Área a Arrendarse que no impida el uso por la **OAT** del resto de la misma, el Contrato de Arrendamiento continuará en vigor.  Disponiéndose, sin embargo, que, efectivo a la fecha en que la **OAT** pierda el uso efectivo del área objeto de la expropiación, se reducirá el canon de arrendamiento a ser pagado a **Ramhil** por una suma proporcional a la relación que guarde la porción del área expropiada respecto a la totalidad del Área a Arrendarse antes de iniciarse el procedimiento de expropiación.-----------------------

**Ramhil** destinará aquella compensación que le corresponda por la expropiación parcial para complementar el canon ajustado para fines de efectuar aquellos pagos relativos al financiamiento del Área a Arrendarse.---------------------------------------

8.3 **Notificación a la OAT**.  En el caso de iniciarse cualquiera de los dos procedimientos contemplados en este Artículo, expropiación total  y expropiación parcial de área arrendada, la **OAT** será notificada y tendrá derecho de participar en los procedimientos para que sus intereses sean protegidos y valorados correctamente al concederse la justa compensación requerida por la Ley.-------------

## ARTÍCULO 9
## DAÑOS Y DESTRUCCIÓN

9.1 **Notificación de daños**.  La **OAT**, a la brevedad posible, notificará a **Ramhil** en caso de daños, fuego o cualquier emergencia que ocurra en el Área a Arrendarse.-------------------------------------------------------------------------------

9.2 **Daños o Destrucción de Propiedad**. Ninguna pérdida, daño o destrucción al Área a Arrendarse por cualquier causa tendrá el efecto de terminar este Contrato de



Desarrollo y/o el Contrato de Arrendamiento, salvo según se expone más adelante, o de relevar a la **OAT** del pago del canon de arrendamiento.----------------------------

9.3 **Prueba de Pérdida**.   En la eventualidad de que todo o parte del Área a Arrendarse sufran daños o pérdida, **Ramhil** notificará prontamente a la compañía aseguradora y a la **OAT**, y proseguirá con la(s) reclamación(es) correspondiente(s) de conformidad con los términos de las pólizas vigentes.--------------------------------

9.4 **Destrucción Parcial, Reparación del Área Arrendada**.   Si el costo de reparar el Área a Arrendarse afectada por cualquier daño o destrucción, por fuego o por cualquier otro riesgo de los cubiertos por la póliza de **Ramhil** es menor del cincuenta por ciento (50%) del valor de la misma, según lo determine la compañía de seguro correspondiente, **Ramhil** procederá a reparar el Área a Arrendarse.   La reparación deberá restituir el área afectada y sus accesiones al mismo estado en que se encontraban antes de que se ocasionaran los daños o la destrucción, de forma que se pueda seguir utilizando la totalidad del Área a Arrendarse.---------------------------



9.4.1 **Comienzo de la reparación**.   El comienzo de la reparación no tardará más de noventa (90) días laborables a partir de la fecha en **Ramhil** tenga conocimiento del daño o reciba notificación del daño, lo que ocurra primero, salvo que **Ramhil** justifique por escrito prorrogar el término.   Dicha prórroga nunca excederá de treinta (30) días laborables a partir de la aprobación de parte de la **OAT** de la misma.   Disponiéndose que dichos términos quedaran en suspenso mientras estén vigentes órdenes o restricciones impuestas por agencias gubernamentales con autoridad para ello o por la compañía de seguros, que impidan el comienzo de las reparaciones.------------------------------------------------------------------------

9.4.2 **Reparación por la OAT**.   El Contrato de Arrendamiento incluirá los términos y condiciones bajo los cuales se llevaran a cabo las reparaciones, incluyendo la reparación de daños que requieran reparación inmediata y la facultad de la **OAT** a llevar a cabo tales reparaciones.---------------------------------------------

9.4.3 **Canon de Arrendamiento**.   Si el daño o destrucción del Área a Arrendarse es parcial, el canon de arrendamiento a pagar por la **OAT** será reducido en proporción a la parte arrendada que resulte inservible, según lo determine la compañía de seguros correspondiente.   Dicha reducción permanecerá vigente hasta tanto la **OAT** acepte el área afectada después de reparada.------------------------------

Recomendado
6/dic/10
cfc

**9.5  Daño o Destrucción Sustancial o Total.**  En caso de que el costo de restaurar el área afectada sea el cincuenta por ciento (50%) o más del valor de la misma, según lo determine la compañía de seguro correspondiente, y el daño ocasionado no permita el uso para lo que ha sido destinado el Área a Arrendarse o el daño ocurrido sea uno sustancial, según lo determine la compañía de seguro correspondiente, y no sea de los riesgos cubiertos por la póliza mantenidas por **Ramhil**, éste podrá reparar los daños según lo establecido en este Artículo o dar por terminado el Contrato de Arrendamiento.------------------------------------------------------------------------------



**9.5.1  Notificación.  Ramhil** notificará a la OAT los fundamentos de su decisión de dar por terminado el Contrato de Arrendamiento dentro de un plazo de cuarenta y cinco (45) días laborables de ocasionados los daños.------------------------------------

**9.5.2  Canon de Arrendamiento.**  En caso de que el Contrato de Arrendamiento termine según lo establecido en este Artículo, la obligación de la **OAT** de pagar el canon de arrendamiento pactado cesará a partir de la fecha en que hubiese notificado a **Ramhil** o éste tuviera conocimiento de los daños o destrucción del Área a Arrendarse.------------------------------------------------------------------------

**9.6  Relevo de Responsabilidad a la OAT.**  **Ramhil** por la presente releva y salvaguarda a la **OAT** de toda responsabilidad y/o reclamación, causa de acción o acción contra la **OAT**, sus agentes, oficiales, directores, empleados y/o consultores por cualquier muerte, daño a personas o propiedad que puedan ocurrir en el Área a Arrendarse por cualquier causa, a menos que ocurra solamente como resultado de la negligencia o de los actos u omisiones de la **OAT**, sus empleados, contratistas o agentes.----------------------------------------------------------------------------------

**ARTÍCULO 10**

**TRANSFERENCIA O CESIÓN DE DERECHOS O INTERESES DEL DESARROLLADOR**

**10.1  Transferencias o Cesiones. Ramhil** no podrá transferir o ceder, directa o indirectamente, o de cualquier otra forma enajenar, parcial o totalmente, el Área a Arrendarse y los derechos e intereses conferidos mediante este Contrato de Desarrollo y el Contrato de Arrendamiento sin el consentimiento previo escrito de la **OAT**, el cual podrá ser otorgado o rechazado por la **OAT** a su sola y absoluta




discreción. No obstante, **Ramhil** podrá transferir, ceder o, de cualquier otra forma, enajenar el Área a Arrendarse y sus derechos e interés bajo este Contrato de Desarrollo y el Contrato de Arrendamiento con el consentimiento previo escrito de la **OAT**, el cual no podrá ser atrasado, condicionado o rechazado de forma no razonable, si los socios principales actuales de **Ramhil** continúan manteniendo por lo menos una mayoría del interés propietario de **Ramhil** y de la entidad a la cual serían transferidos o cedidos o enajenados los derechos y el Área a Arrendarse, que permita que **Ramhil** mantenga el control efectivo de la administración de **Ramhil** y de la entidad cesionaria y que dicha entidad cesionaria propuesta tenga igual o mejor capacidad financiera y operacional que **Ramhil** y cumpla con todos los requisitos establecidos en este Contrato de Desarrollo y en el Contrato de Arrendamiento.-------------------------------------------------------------------



10.1.1 **Razones para denegar la aprobación**. Será considerado como razonable, pero sin limitarse a ello, que la **OAT** deniegue o no otorgue su consentimiento si el cesionario propuesto no tiene la capacidad financiera y operacional y la experiencia necesaria para cumplir con las obligaciones de este Contrato de Desarrollo y del Contrato de Arrendamiento o si la **OAT**, como entidad pública, tiene preocupaciones sobre el carácter y la reputación en la comunidad del cesionario propuesto, sin importar que esas preocupaciones sean o no importantes en una empresa comercial. En conjunto con la solicitud de aprobación de la transferencia o cesión, **Ramhil** proveerá a la **OAT** con la información bancaria y financiera necesaria para que la **OAT** pueda evaluar a la entidad propuesta y cualquier otra información que la **OAT** entienda razonablemente necesaria para evaluar la solicitud de aprobación de transferencia o cesión.---------------------------------------



10.1.2 **Copia de los acuerdos de cesión o transferencia**. Una vez se realice la transferencia o cesión de acuerdo con lo dispuesto en este Artículo, **Ramhil** proveerá a la **OAT** copia de los acuerdos o documentos otorgados para llevar a cabo dicha transferencia o cesión, en los cuales el cesionario asumirá y acordará observar y cumplir con todos los acuerdos, condiciones, representaciones y disposiciones, de parte de **Ramhil**, establecidos en este Contrato de Desarrollo y en el Contrato de Arrendamiento.-------------------------------------------------------

10.2 **Derecho de Tanteo ("Right of First")**. **Ramhil** no podrá vender el Área a Arrendarse sin cumplir con las disposiciones de este Artículo y sin antes ofrecerla



en venta con carácter preferencial a la **OAT**. Los términos y condiciones de este derecho de tanteo o preferencial ("first refusal") y la forma y manera que la **OAT** adquiriría el Área Arrendada, de ejercitar su derecho preferencial, serán establecidos en el Contrato de Arrendamiento.----------------------------------------------

10.3 **Transferencias Prohibidas**. **Ramhil** no podrá transferir o ceder, directa o indirectamente, parcial o totalmente el Área Arrendada ni los derechos establecidos en este Contrato de Desarrollo y en el Contrato de Arrendamiento a una persona o entidad a la que **Ramhil** tenga conocimiento de que ha sido convicta o se haya declarado culpable en un proceso criminal por un delito o que sea el objeto de una investigación de un gran jurado sobre crimen organizado antes de la fecha de la transferencia o cesión propuesta; a una persona o entidad de un país cuyas actividades estén reglamentadas o controladas por las siguientes leyes y reglamentos y órdenes promulgados en virtud de éstas, de los Estados Unidos de América, según enmendadas: "The Trading and Enemy Act of 1917", "The International Emergency Economic Powers Act of 1976" y "The Anti-Terrorism and Arms Export Amendments Act of 1989; ni a una persona designada como "Special Designated National or Blocked Person" por el Departamento del Tesoro de los Estados Unidos de América.--------------------------------------------------------





## ARTÍCULO 11
## EVENTOS DE INCUMPLIMIENTO Y TERMINACIÓN DEL CONTRATO

11.1 **Eventos de Incumplimiento de Ramhil**. Los siguientes constituirán eventos de incumplimiento de **Ramhil**:-----------------------------------------------------------

11.1.1 **Condiciones Precedentes y firma del Contrato de Arrendamiento**. Falta de cumplimiento con las Condiciones Precedentes establecidas en este Contrato de Desarrollo para la firma del Contrato de Arrendamiento.--------------------------------

11.1.2 **Seguros**. Falta de cumplimiento con las obligaciones contraídas relacionadas con la obtención de los seguros necesarios, según los establecido en este Contrato de Desarrollo, transcurridos treinta (30) días laborales luego de la notificación por escrito de la **OAT**.------------------------------------------------------------------------

11.1.3 **Obligaciones del Contrato de Desarrollo y del Contrato de Arrendamiento**. Falta de cumplimiento con cualquiera de las obligaciones

Recomend-- '


34

dispuestas en este Contrato de Desarrollo y en el Contrato de Arrendamiento, incluyendo su obligación de mantener el Área a Arrendarse de forma adecuada, segura para el uso provisto, exceptuando aquellas instancias causadas por eventos de fuerza mayor, según definidos en este Contrato de Desarrollo y cuyas reparaciones se hagan en el tiempo y forma estipulados en el presente contrato. No se considerará falta de cumplimiento de **Ramhil** si, luego de recibida la notificación escrita de la **OAT** requiriendo cumplir con las obligaciones dispuestas en este Contrato de Desarrollo o en el Contrato de Arrendamiento, **Ramhil** comienza a cumplir con sus obligaciones diligentemente, procurando las reparaciones o actividades necesarias dentro de los próximos treinta (30) días laborables de recibida dicha notificación. En el caso de incumplimiento relacionado con el mantenimiento, conservación, reparación del Área a Arrendarse, el término para comenzar a cumplir con las obligaciones será de tres (3) días laborables. Disponiéndose, no obstante, que si dicho incumplimiento es de tal naturaleza que razonablemente no puede ser subsanado dentro de dichos treinta (30) días laborables, y **Ramhil** dentro de dicho periodo ha comenzado y continúa diligentemente efectuando las gestiones correspondientes para subsanarlo, entonces, mientras exista esa situación, dicho evento no constituirá un incumplimiento; disponiéndose que ningún incumplimiento de una obligación monetaria será considerado como uno que no pueda subsanarse dentro de los treinta (30) días laborables.------------------------------------------------------------------------------------



**11.1.4 Obligaciones con acreedores hipotecarios.** Cualquier evento de incumplimiento con los términos de cualquier acuerdo de financiamiento o préstamo hipotecario para el desarrollo y construcción y/o que grave el Área a Arrendarse.------------------------------------------------------------------------------------

**11.1.5 Comienzo de construcción, itinerario de desarrollo, fecha de terminación y entrega.** Falta de cumplimiento en comenzar la construcción del Proyecto en el tiempo establecido en este contrato, en seguir el itinerario de desarrollo y en terminar la construcción y entregar el Proyecto en el término establecido en este Contrato de Desarrollo.------------------------------------------------

**11.1.6 Interrupción de la construcción.** Falta de cumplimiento al abandonar el Proyecto durante la construcción del mismo por más de treinta (30) días laborables

**Recomendado**
6/dic/10
cfc

consecutivos, salvo por eventos de fuerza mayor, según lo establecido en este Contrato de Desarrollo y en el Contrato de Arrendamiento.----------------------------

**11.1.7 Transferencia o cesión**. Falta de cumplimiento al transferir, ceder o de cualquier otra forma enajenar el Área a Arrendarse y/o los derechos bajo este Contrato de Desarrollo y el Contrato de Arrendamiento sin cumplir con las disposiciones establecidas en los mismos.----------------------------------------------------

**11.2 Eventos de Incumplimiento de la OAT**. Los siguientes constituirán eventos de incumplimiento de la **OAT**:-----------------------------------------------------------------

**11.2.1 Pago del canon de arrendamiento**. El incumplimiento con el pago del canon de arrendamiento o cualquier otro pago que sea responsabilidad de la **OAT**, en virtud de este Contrato de Desarrollo y del Contrato de Arrendamiento, luego de transcurridos treinta (30) días laborables a partir del recibo por la **OAT** de la notificación escrita. Se exceptúa de este incumplimiento las retenciones o deducciones del canon de arrendamiento, según autorizado y dispuesto en este Contrato de Desarrollo y en el Contrato de Arrendamiento.----------------------------

**11.2.2 Obligaciones contractuales**. El incumplimiento de la **OAT** con cualquier acuerdo, obligación, término o condición conforme a este Contrato de Desarrollo y/o al Contrato de Arrendamiento y la continuación de dicho incumplimiento durante treinta (30) días laborables luego de ser notificada de dicho incumplimiento por **Ramhil**. Disponiéndose, no obstante, que si dicho incumplimiento es uno de tal naturaleza que razonablemente no puede ser subsanado dentro de dichos treinta (30) días laborables, y la **OAT** dentro de dicho período ha comenzado y continúa, diligentemente, efectuando las gestiones correspondientes para subsanarlo, entonces mientras exista esa situación dicho evento no constituirá un incumplimiento.---------

**11.3 Remedios por Incumplimiento**. En la eventualidad de cualquier incumplimiento, según lo dispuesto en este Contrato de Desarrollo y/o en el Contrato de Arrendamiento, las partes podrán en la mayor extensión posible ejercer todas y cualesquiera acciones disponibles y/o provistas por ley (sujeto a los derechos del Acreedor Hipotecario bajo este Contrato de Desarrollo y bajo el Contrato de Arrendamiento), incluyendo sin limitación, el derecho a cualesquiera y/o todas las siguientes: -------------------------------------------------------------------------

Recomendado
6 / dic / 10
cjc

**11.3.1 Retención del pago de canon de arrendamiento.** En el caso de incumplimiento de **Ramhil**, la **OAT** podrá retener el pago del canon de arrendamiento, de acuerdo con lo dispuesto en este Artículo. La **OAT** notificará por correo certificado con acuse de recibo o a la mano a **Ramhil** su falta de cumplimiento, estableciendo la naturaleza de este. **Ramhil** tendrá la oportunidad de subsanar su incumplimiento dentro de un período de treinta (30) días laborables, salvo en aquellos casos que se estableció un término distinto, a partir del recibo de la notificación. Expirado el término provisto sin que **Ramhil** haya subsanado el incumplimiento, la **OAT** le notificará por escrito, mediante correo certificado con acuse de recibo, su intención de ejercitar su derecho a retener el canon de arrendamiento. Luego de transcurridos quince (15) días laborables del recibo de dicha notificación sin que **Ramhil** haya subsanado el incumplimiento, la **OAT** retendrá los pagos del canon de arrendamiento hasta que el incumplimiento sea subsanado, salvo que algún evento de fuerza mayor impida subsanar el incumplimiento.------------------------------------------------------------------------




**11.3.2 Demanda por daños.** Demandar para la compensación por los daños ocasionados por el incumplimiento de la parte correspondiente.------------------------

**11.3.3 Terminación de Contrato.** Dar por terminado el presente contrato y/o el Contrato de Arrendamiento.-----------------------------------------------------------------------

**11.3.4 Remedio por Incumplimiento con las Condiciones Precedentes.** Si **Ramhil** no satisface todas y cada una de las Condiciones Precedentes establecidas en el Contrato de Desarrollo dentro del período o término establecido para cada una de ellas, la **OAT** podrá dar por terminado el mismo y solicitar la ejecución de la Fianza sobre Condiciones Precedentes.------------------------------------------------------------

**11.3.5 Cumplimiento específico.** Solicitar el cumplimiento específico de cualquier obligación de las partes y/o la detención de cualquier acto de las partes en contravención a este Contrato de Desarrollo y/o al Contrato de Arrendamiento.------

**11.3.6 Otros remedios.** Cualquier otro remedio disponible en ley o equidad.--------

**11.4 <u>Reembolso de Gastos y Honorarios de Abogado</u>.** En caso de que alguna de las partes incumpla con sus obligaciones y la parte afectada incurra en el pago de abogados y/o gastos razonables para el cobro de dinero o el cumplimiento de



ejecución o sujeción a las obligaciones y convenios aquí contenidos, la parte incumplidora pagará a requerimiento de la parte afectada o sus agentes designados, los honorarios de abogado y los gastos razonables incurridos por ésta para efectuar dicha gestión.------------------------------------------------------------------------------------

11.5 **Remedios Acumulativos**. Los remedios de las partes serán acumulativos, es decir, el ejercicio de cualquiera de dichos remedios no impedirá el ejercicio de cualquier otro, o del mismo remedio en cualquier otro momento o evento de incumplimiento. Ninguna renuncia o relevo de cualquiera de las partes ante cualquier incumplimiento constituirá una renuncia o relevo de las partes ante las demás obligaciones o condiciones estipuladas, o de las mismas obligaciones de las partes en cualquier otro momento durante la vigencia del Contrato de Arrendamiento.------------------------------------------------------------------------------------



11.6 **Relevo de Incumplimiento**. La inacción de cualquiera de las partes en notificar un incumplimiento no se entenderá como un relevo o renuncia de la parte concernida a así notificarlo, a menos que expresamente así lo dispongan por escrito.------------------------------------------------------------------------------------



## ARTÍCULO 12
## PROCESO DE RESOLUCIÓN DE DISPUTAS

12.1 **Mediación y Arbitraje**. Las partes acuerdan someter cualquier disputa que surja de, en conexión o en relación con este Contrato de Desarrollo, en primer lugar a mediación y, en el caso que las partes no puedan resolver su disputa mediante mediación, a arbitraje a llevarse a cabo en la ciudad de San Juan de Puerto Rico, de acuerdo con las reglas procesales de la "American Arbitration Association" y en cumplimiento con las disposiciones aplicables de la Ley de Arbitraje de Puerto Rico, según enmendada y con las disposiciones que se detallan a continuación:------

12.1.1 **Solicitud de arbitraje**. Cualquier parte podrá solicitar por escrito a la parte adversa que una controversia respecto a la cual no se ha podido llegar a un acuerdo sea sometida a arbitraje. Deberá identificar de forma precisa cuál es la controversia a someterse al arbitraje en cuestión.-------------------------------------------------------------

12.1.2 **Panel de arbitraje**. El panel de arbitraje estará compuesto por tres árbitros. Cada parte nombrará un árbitro que formará parte del panel de arbitraje y dichos

Recomenda~~·~~

6/dic/10
cfc

árbitros a su vez nombrarán a un tercer árbitro por acuerdo. Si las partes no nombran un árbitro dentro de los primeros treinta (30) días laborables de la solicitud para arbitraje o si los árbitros nombrados por dichas partes no se ponen de acuerdo respecto al tercer árbitro dentro de los primeros treinta (30) días laborables de nombrados los primeros dos árbitros, cualquiera de las partes podrá solicitar al Tribunal de Primera Instancia, Sala Superior de San Juan, que nombre los árbitros necesarios para completar el panel de arbitraje.------------------------------------------

**12.1.3   Procedimiento de arbitraje.** El panel de arbitraje establecerá los procedimientos para atender la controversia sometida por las partes y podrá utilizar como guía las Reglas de Procedimiento Civil aplicables.-------------------------------



El panel de arbitraje deberá llevar un récord de los procedimientos de arbitraje que pueda utilizarse para revisión judicial de ser la misma solicitada por cualquiera de las partes.--------------------------------------------------------------------------



Las decisiones interlocutorias del panel de arbitraje no estarán sujetas a revisión judicial interlocutoriamente, pero podrán ser invocadas para cuestionar la decisión final del panel, si dicha decisión interlocutoria es errónea y perjudicial a cualquiera de las partes.-----------------------------------------------------------------------

La vista en su fondo ante el panel de arbitraje se conducirá de manera informal. El panel de arbitraje podrá usar, a su discreción, como guía los principios fundamentales de las Reglas de Evidencia en la medida en que lo considere necesario.--------------------------------------------------------------------------------

El panel de arbitraje emitirá una decisión fundamentada en los hechos y el derecho aplicable y notificará la misma a los representantes de las partes.----------------------

**12.2   <u>Revisión Judicial</u>.** Cualquier parte adversamente afectada por el laudo de arbitraje podrá solicitar la revisión judicial mediante la presentación de una acción civil ante el Tribunal de Primera Instancia, Sala Superior San Juan, en un plazo de treinta (30) días a partir de la notificación del laudo. El plazo para recurrir en revisión judicial será de caducidad y, por lo tanto, no podrá ser interrumpido mediante mociones posteriores a la notificación del laudo.------------------------------

Recomendado

6 / dic / 10

El Tribunal revisará el laudo a base del expediente ante el panel de arbitraje para determinar si el mismo es conforme a derecho en sus determinaciones de hechos, conclusiones de derecho y remedio concedido.----------------------------------------------

El tribunal dictará sentencia confirmando o revocando total o parcialmente el laudo, podrá, asimismo, modificar el laudo o devolver el asunto al panel de arbitraje para procedimientos ulteriores.-------------------------------------------------------------

La decisión del tribunal estará sujeta a revisión judicial al igual que otras sentencias del Tribunal de Primera Instancia.------------------------------------------------------

12.3 **Costas y Honorarios**. El panel de arbitraje impondrá las costas a la parte perdidosa y podrá imponer honorarios de abogados razonables a la parte que haya incurrido en temeridad.------------------------------------------------------------------

## ARTÍCULO 13
## ACUERDOS DE NO DISCRIMINACIÓN E IGUALDAD DE OPORTUNIDADES

13.1 **Prohibición de Discrimen**. Con relación al ejercicio de todos los derechos, privilegios y obligaciones establecidos en este Contrato de Desarrollo y en cualquier acuerdo o contrato que se efectúe bajos las disposiciones de este contrato, **Ramhil** se compromete a que **Ramhil**, sus sucesores, contratistas, agentes, operadores y cesionarios no discriminarán en contra de ninguna persona, empleado o solicitante de empleo por su raza, color, religión, origen nacional, sexo, género, orientación sexual, incapacidad o status como veterano. **Ramhil** y cualquier otra persona autorizada conforme este contrato, cumplirá con todas las leyes del Estado Libre Asociado de Puerto Rico y de los Estados Unidos de América sobre derechos civiles e igualdad de oportunidades.--------------------------------------------------

13.2 **Publicación de Leyes Laborales**. Tendrá, además, que colocar notificaciones a los empleados y posibles empleados las disposiciones de las leyes de empleo justo aplicables.---------------------------------------------------------------------------

13.3 **Evento de Incumplimiento**. El incumplimiento con lo establecido en este Artículo será considerado un evento de incumplimiento de este Contrato de Desarrollo. **Ramhil** ofrecerá indemnización y relevará a la **OAT** de toda y



Recomendad
6/dic/10

cualquier responsabilidad en cualquier reclamación o demandas de terceras personas relacionada con las disposiciones de este Artículo.----------------------------

# ARTÍCULO 14
## REPRESENTACIONES Y GARANTÍAS

14.1 **Representaciones de Ramhil**. Para inducir a la **OAT** a otorgar este Contrato de Desarrollo, **Ramhil** efectúa las siguientes representaciones y garantías, las cuales permanecerán vigentes en todo momento durante el término del Contrato de Arrendamiento y subsistirán la expiración del mismo:----------------------------------



14.1.1 **Existencia y Capacidad. Ramhil** es una corporación íntima con fines de lucro debidamente creada bajo las leyes de Puerto Rico y tiene plenos poderes y capacidad para otorgar y ejecutar este Contrato de Desarrollo y el Contrato de Arrendamiento, así como para llevar a cabo sus negocios.------------------------------



14.1.2 **Autorización y No Contravención**. El otorgamiento y cumplimiento por **Ramhil** de lo contemplado en este Contrato de Desarrollo le ha sido debidamente autorizado, y no tiene conflictos con o violenta ningún acuerdo u obligación de **Ramhil**.----------------------------------------------------

14.1.3 **Cumplimiento. Ramhil** se mantendrá en todo momento en pleno cumplimiento con sus obligaciones y los acuerdos, términos y condiciones de este Contrato de Desarrollo y de Contrato de Arrendamiento, así como con las leyes, reglamentos, ordenanzas y cualesquiera disposiciones legales aplicables. **Ramhil** tendrá el derecho de cuestionar mediante los procedimientos administrativos o judiciales correspondientes, cualquier acción, requerimiento, multa, orden o investigación iniciada, emitida o impuesta por las agencias gubernamentales correspondientes.----------------------------------------------------

14.1.4 **Obligación Válida**. Este Contrato de Desarrollo constituye una obligación válida para **Ramhil** y, en su caso, para sus sucesores autorizados, sujeto en cuanto a su cumplimiento en su caso a las leyes de quiebra y derechos de acreedores.---------

14.1.5 **Litigación/Arbitraje**. Excepto según pueda haber sido informado a la **OAT** previamente por escrito, no existen: (a) acciones, demandas o procedimientos pendientes ante los tribunales u organismos administrativos, cuasi judiciales, o gubernamentales; (b) arbitrajes; o (c) mediación o procesos de dilucidación de

Recomendad(
6 / dic / 10

41

controversias contra **Ramhil** que afecten su habilidad de cumplir con sus obligaciones bajo este Contrato de Desarrollo o el Contrato de Arrendamiento.------

**14.2  Representaciones de la OAT**. La **OAT** efectúa las siguientes representaciones y garantías a **Ramhil**, las cuales permanecerán vigentes en todo momento durante el término o vigencia del Contrato de Arrendamiento y subsistirán la expiración del mismo.-------------------------------------------------------------

**14.2.1  Autorización y No Contravención**. El otorgamiento y cumplimiento por la **OAT** de lo contemplado en este Contrato de Desarrollo, le ha sido debidamente autorizado, y no tiene conflictos con o violenta ningún acuerdo u obligación de la **OAT**.---------------------------------------------------------------------------------





**14.2.2  Cumplimiento.** La **OAT** se mantendrá en todo momento en pleno cumplimiento con sus obligaciones y los acuerdos, términos y condiciones de este Contrato de Desarrollo y del Contrato de Arrendamiento, así como con las leyes, reglamentos, ordenanzas y cualesquiera disposiciones legales aplicables. La **OAT** tendrá el derecho de cuestionar mediante los procedimientos administrativos o judiciales correspondientes, cualquier acción, requerimiento, multa, orden o investigación iniciada, emitida o impuesta por las agencias gubernamentales correspondientes.-----------------------------------------------------------------------

**14.2.3  Obligación Válida.** Este Contrato de Desarrollo constituye una obligación válida de la **OAT** y, en su caso, para sus sucesores autorizados.------------------------

## ARTÍCULO 15
### DISPOSICIONES GENERALES

**15.1  Inexistencia de Sociedad o Empresa Conjunta ("Joint Venture")**. Nada de lo contenido en este Contrato de Desarrollo constituirá o se interpretará como que establece una sociedad o empresa conjunta entre la **OAT** y **Ramhil**, ni como que convierte a cada parte respectivamente en agente o representante del otro.-------

**15.2  Aplicabilidad de las Leyes de Puerto Rico, Separabilidad**. Este Contrato de Desarrollo y/o sus disposiciones se regirán e interpretarán conforme a las leyes del Estado Libre Asociado de Puerto Rico. Si cualquier término, cláusula, acuerdo o condición, o su aplicación, fuera declarada ilegal o ineficaz por la autoridad competente, entonces todos los demás términos, cláusulas, acuerdos o condiciones

Recomendado
6/dic/10


de este contrato, o su aplicación, de otra manera no serán afectadas y permanecerán con plena validez, vigencia y vigor. A esos efectos, se estipula que las cláusulas y condiciones de este contrato son independientes y que la nulidad de una o más cláusulas no afectará la validez de las demás.------------------------------------------

15.3 **Conflicto de Intereses**. Ningún miembro, representante, empleado o consultor de la **OAT** tendrá interés personal, directo o indirecto en este Contrato de Desarrollo, ni participará en decisión alguna concerniente a este contrato que tenga relación con sus intereses personales o con el interés de alguna entidad en la cual dichas personas tengan intereses ya sea directa o indirectamente.----------------------

15.4 **Sucesores y/o Cesionarios**. Todos los acuerdos, términos, obligaciones y/o condiciones en este contrato serán obligatorios y/o beneficiarán a los sucesores o cesionarios en su caso, de la **OAT**, y a los sucesores autorizados de **Ramhil**.---------

15.5 **Notificaciones**. Cualquier comunicación o notificación bajo este Contrato de Desarrollo deberá ser dada como sigue: (a) a la mano, o (b) por correo certificado con acuse de recibo.---------------------------------------------------------------
Las notificaciones se entenderán como recibidas, si a la mano, cuando actualmente se entreguen; si por correo certificado con acuse de recibo, no más tarde del quinto (5to) día luego de su envío.-------------------------------------------------------------

Las notificaciones a la **OAT** se enviarán a la siguiente dirección:----------------------
**Sonia Ivette Vélez Colón**
Directora Administrativa
Oficina de Administración de los Tribunales
PO Box 190917
San Juan, Puerto Rico, 00919-0917

Las notificaciones a **Ramhil** se enviarán a la siguiente dirección:----------------------
**Hilda Rodríguez Forteza**
Presidenta
Ramhil Developers, Inc.
PO Box 190573
San Juan, Puerto Rico 00919-0573

15.6 **Vigencia**. **Este Contrato de Desarrollo estará vigente a partir del 6 de diciembre de 2010 hasta el 5 de diciembre de 2015**. No obstante, dicha vigencia no alterará en forma alguna los términos establecidos para el cumplimiento de las distintas obligaciones contraídas por las partes en virtud de este Contrato de



Recomend

6/dic/10

Desarrollo. Si a la fecha del vencimiento de este contrato ninguna de las partes ha notificado por escrito a la otra su intención de enmendar o resolver el mismo, o si el Contrato de Desarrollo no ha expirado de conformidad con sus propios términos y condiciones, el Contrato de Desarrollo quedará renovado automáticamente sin necesidad de notificación previa. La renovación será por períodos subsiguientes de mes a mes bajo las mismas cláusulas y condiciones que se establecen en el presente Contrato de Desarrollo.------------------------------------------------------------------------

15.7 **Requerimientos Gubernamentales Especiales**.----------------------------------

15.7.1 **Litigación con el Estado Libre Asociado**. **Ramhil** certifica que, al momento del otorgamiento de este Contrato de Desarrollo, no tiene litigación alguna con la **OAT**, el Estado Libre Asociado, sus agencias o instrumentalidades.---



15.7.2 **Intereses económicos de empleados gubernamentales**. **Ramhil** certifica que, al momento del otorgamiento de este Contrato de Desarrollo, no tiene interés particular alguno en ningún caso o asunto que envuelva conflicto de intereses o de política pública, y no aceptará ningún acuerdo de índole alguna que pueda ocasionar un conflicto de intereses o de política pública con la **OAT**.-----------------

**Ramhil** certifica que, al momento del otorgamiento de este Contrato, ningún oficial o empleado público con facultad para evaluar, considerar, aprobar, autorizar o ejecutar este contrato a nombre de la **OAT**, ni ningún miembro de su unidad familiar, tiene o ha tenido durante los pasados cuatro (4) años antes de tomar posesión de su puesto, interés pecuniario directo o indirecto con **Ramhil** o en ninguna de sus subsidiarias, entidad matriz o sus oficiales.-----------------------------

**Ramhil** certifica por si, sus socios, agentes o empleados, o cualquier miembro de su unidad familiar, según esta se define en la Ley Núm. 12 de 24 de julio de 1985, según enmendada, que al momento del otorgamiento de este Contrato, ellos no ocuparon ningún puesto como empleados de la **OAT** durante los dos (2) años anteriores a la firma de este Contrato de Desarrollo.--------------------------------------

**Ramhil** certifica por si, sus socios, agentes o empleados, que al momento del otorgamiento de este Contrato de Desarrollo, ningún oficial o empleado público de la Administración, o ningún miembro de su unidad familiar, según esta se define en la Ley Núm. 12 de 24 de julio de 1985, según enmendada, tiene o ha tenido durante

Recomenda·

6/dic/10

los últimos cuatro (4) años antes de ocupar el puesto, interés pecuniario directo o indirecto con **Ramhil** y que no conoce de ningún empleado del Estado Libre Asociado que sea parte o tenga interés alguno en las ganancias o beneficios de este Contrato de Desarrollo.-------------------------------------------------------------------------

**15.7.3 Convicciones criminales. Ramhil** certifica y garantiza que, al otorgamiento de este Contrato de Desarrollo, ni **Ramhil**, ni ninguno de sus socios, directores, oficiales o empleados gerenciales, han sido convictos, y **Ramhil** no tiene conocimiento de ello o de que ninguna de dichas personas hayan sido investigadas, acusadas o convictas en un proceso criminal en una corte estatal o federal por cargos criminales relacionados al erario público, la confianza pública, una función pública, o una falta que envuelva el real uso de fondos o propiedad pública, o por cualquiera de los delitos graves o menos graves mencionados en la Ley Núm. 428 de 22 de septiembre de 2004. Se reconoce expresamente que esta certificación es una condición esencial de este contrato. Si la certificación fuera falsa, ello constituirá causa suficiente para facultar a la **OAT** a terminar este contrato inmediatamente, y, si dicha convicción estuviera relacionada a esta transacción en particular, la **OAT** tendrá derecho a requerirle a **Ramhil** que le reembolse cualquier cantidad de dinero que hubiera recibido de la **OAT** bajo este contrato.-----------------

Si la condición de **Ramhil** o sus socios, directores, oficiales o empleados gerenciales con relación a las convicciones criminales antes mencionadas en esta cláusula cambiaran en cualquier momento durante el término de este contrato, la **OAT** será notificada inmediatamente. El incumplimiento con dicha obligación de notificar constituirá una violación de esta cláusula y resultará en la terminación de este contrato.-------------------------------------------------------------------------

**15.7.4   Planilla de contribución sobre ingresos. Ramhil** certifica que, al otorgamiento de este Contrato de Desarrollo, ha sometido todas las planillas de contribución sobre ingresos requeridas en Puerto Rico durante los pasados cinco (5) años y que ni **Ramhil** ni sus principales tienen Deuda Contributiva alguna (según aquí definido) con el Estado Libre Asociado, o, si existiera dicha deuda, la misma está sujeta a un plan de pago aprobado por la agencia gubernamental correspondiente y que **Ramhil** o sus principales, según sea el caso, está al día bajo los términos de dicho plan de pago. Para propósitos de este Contrato de Desarrollo, una Deuda Contributiva significa cualquier deuda por ingresos, arbitrio,



Recomendad
6/dic/10
CFC

contribuciones sobre la propiedad (mueble o inmueble), tasaciones especiales, tarifas por licencias, y contribución retenida según requerida por ley, desempleo, incapacidad y seguro choferil (si aplica).--------------------------------------------------

15.7.5 **Sumisión de certificados. Ramhil** acuerda, respecto a sí mismo y a sus principales, someter a la **OAT** simultáneamente con el otorgamiento de este Contrato, la Certificación de Radicación de Planilla por los últimos cinco (5) años, una Certificación de Deuda, y las correspondientes certificaciones de deudas expedidas por el Centro de Recaudación de Ingresos Municipales (CRIM), con respecto al Desarrollador del Departamento del Trabajo y Recursos Humanos concernientes a desempleo, incapacidad y seguro choferil, Fondo del Seguro del Estado, Administración para el Sustento de Menores (ASUME), y por la Municipalidad correspondiente, según sea el caso.--------------------------------------

15.7.6 **Deuda contributiva bajo revisión o sujeta a ajuste. Ramhil** certifica que ni la corporación ni sus principales tienen actualmente ninguna Deuda Contributiva que se esté revisando o sujeta a ajuste por el Departamento de Hacienda del Estado Libre Asociado.   En la eventualidad de que en cualquier momento durante el término de este Contrato de Desarrollo, **Ramhil** o cualquiera de sus principales tuviera una Deuda Contributiva que esté siendo revisada o sujeta a ajuste por el Departamento de Hacienda, **Ramhil** someterá informes trimestrales certificados por dicho Departamento describiendo el estado del procedimiento; disponiéndose además que **Ramhil** acuerda que si, dentro de treinta (30) días laborables de una determinación administrativa final, **Ramhil** no hubiese pagado ninguna Deuda Contributiva determinada administrativamente como adeudada, la **OAT** podrá terminar este Contrato de Desarrollo.-----------------------------------------------------

15.8 **<u>Documentos de la Entidad</u>. Ramhil** someterá los artículos de incorporación y los estatutos ("By-Laws") de la corporación, así como un certificado de "Good Standing" expedido por el Departamento de Estado del Estado Libre Asociado de Puerto Rico.----------------------------------------------------------------------

15.9 **<u>Acuerdo Total</u>.** Este Contrato de Desarrollo y aquellos documentos en él mencionados contienen la totalidad de los acuerdos entre las partes, los cuales son los únicos acuerdos vigentes y válidos.  Los acuerdos, términos o condiciones de

<u>Recomendado</u>
6/ dic /10
Cfc

46

este Contrato sólo podrán ser enmendados o modificados mediante el consentimiento expreso y escrito de las partes.-----------------------------------------

15.10 **Registro en la Oficina del Contralor.** Ninguna prestación o contraprestación objeto de este contrato podrá exigirse hasta tanto el mismo se haya presentado para Registro en la Oficina del Contralor, a tenor con la Ley Núm. 18 de 30 de octubre de 1975, según enmendada. La **OAT** se compromete a presentar este Contrato para Registro en la Oficina del Contralor dentro de los quince (15) días luego de ser otorgado.-----------------------------------------------------------------

--------------------------------ACEPTACIÓN Y FIRMA--------------------------------

**AMBAS PARTES** manifiestan que han leído y entendido todo el contenido del presente Contrato de Desarrollo y así lo aceptan por encontrar que está redactado a su entera satisfacción y que establece fielmente lo pactado.----------------------------

**PARA QUE ASÍ CONSTE,** las partes suscriben el presente contrato, con su firma e iniciales en el margen izquierdo de cada una de sus páginas.--------------------------

En San Juan, Puerto Rico, a 6 de diciembre de 2010.-----------------------------------

**Sonia Ivette Vélez Colón**
Directora Administrativa
Oficina de Administración
de los Tribunales
Por la **OAT**

**Hilda Rodríguez Forteza**
Presidenta
Ramhil Developers, Inc.
Por **Ramhil**

ANEJO A: Certificado de Resolución Corporativa de Ramhil

ANEJO B: Propuesta Económica Final

ANEJO C: Plano de Mensura

ANEJO D: Diseño Conceptual

ANEJO E: Itinerario de Desarrollo

Certifico que el contrato cumple
con los requisitos de forma legal y
recomendamos la firma del mismo.

_____
**Firma**
6 de diciembre de 2010
**Fecha**

47

# CERTIFICADO DE RESOLUCIÓN CORPORATIVA
# DE
# RAMHIL DEVELOPERS, INC.

Yo, **CARLOS RAMÓN GONZÁLEZ MORALES**, en mi carácter de Secretario de Ramhil Developers Inc., una corporación organizada bajo las Leyes del Estado Libre Asociado de Puerto Rico, CERTIFICO:

Que en reunión extraordinaria de la Junta de Directores de Ramhil Developers, Inc., debidamente convocada y celebrada el día 3 de diciembre de 2010, en la oficina principal de la Corporación, en la que hubo el quórum reglamentario, se aprobó por unanimidad la siguiente Resolución.

**RESUÉLVASE** autorizar a, **HILDA RODRÍGUEZ FORTEZA**, en su carácter de Presidenta de Ramhil Developers, Inc., quien es mayor de edad, casada, abogada y vecina de San Juan, Puerto Rico, a firmar el Contrato de Desarrollo y Acuerdo de Arrendamiento del Centro Judicial de Caguas, bajo los términos y condiciones que crea razonables y convenientes.

En mi carácter de Secretario certifico, además, que la Resolución arriba transcrita no ha sido revocada, anulada, alterada o enmendada en forma alguna y que se mantiene vigente con toda su fuerza y vigor y que la misma fue adoptada en conformidad con las disposiciones estatuarias de la Corporación, del Certificado de Incorporación y de la Ley.

**Y PARA QUE ASÍ CONSTE**, firmo la presente y estampo el sello de la Corporación, en San Juan, Puerto Rico, a      de diciembre de 2010.

_____
**CARLOS RAMÓN GONZÁLEZ MORALES**

**AFFIDÁVIT NÚM.:** 431 (copia original)

Jurado y suscrito ante mí por, **CARLOS RAMÓN GONZÁLEZ MORALES**, en su carácter de Secretario de Ramhil Developers, Inc., quien es mayor de edad, casado, desarrollador y vecino de San Juan, Puerto Rico, a quien conozco personalmente. En San Juan, Puerto Rico, a 6 de diciembre de 2010.

_____
**NOTARIO PÚBLICO**

Anejo B

*Ramhil Developers, Inc.*
*PO Box 190573*
*San Juan, P.R. 00919-0573*
*Tel. 787-277-2854*

2 de diciembre de 2010

**ENTREGA A LA MANO**
Hon. Sonia Ivette Vélez Colón
Directora Administración de Tribunales
Calle César González #677
San Juan, PR 00918-3920

**RE: Negociación entre Ramhil Developers, Inc. y la Oficina para la Administración de los Tribunales en relación con la Construcción del Nuevo Centro Judicial de Caguas**

Hon. Sonia Ivette Vélez Colón:

Le escribo en representación de Ramhil Developers, Inc. (en adelante "Ramhil") en relación con el asunto de referencia. Durante reunión celebrada el 20 de octubre de 2010 en la sede de la Oficina de la Administración de Tribunales (en adelante la "OAT"), la OAT requirió formalmente a Ramhil que presentará su mejor propuesta económica final (en adelante la "Propuesta Económica Final") para el desarrollo, construcción, arrendamiento operación y trapaso del Nuevo Centro Judicial de Caguas (en adelante el "Proyecto").

Luego de llevar el análisis de rigor, hemos concluido que nuestra Propuesta Económica Final es similar a la propuesta económica presentada por Ramhil como parte de su *Propuesta para la Construcción del Centro Judicial de Caguas* de 26 de marzo de 2007. Por ende reiteramos e incorporamos por referencia dicha propuesta aquí como nuestra Propesta Económica Final. Nuestra determinación se basa principalmente en los aspectos que se discuten a continuación.

La determinación de los costos de construcción que se hizo al presentar la Propuesta de Ramhil en el 2007 se hizo tomando en cuenta los costos prevalecientes en el año 2006 y 2007. Dichos costos de construcción, particularmente el acero, han aumentado sustancialmente desde el 2007. Asimismo, el aumento en el salario mínimo también tendrá un impacto en el costo de la construcción, pues habiendo transcurrido casi tres años desde la

*Hon. Sonia Ivette Vélez Colón*
*Directora Administración de Tribunales*
*2 de diciembre de 2010*
*Página 2*

propuesta incicial, los incrementos más recientes en dicho renglón aplicarán a la totalidad de la construcción del Proyecto.

Por otro lado, actualmente el financimiento del Proyecto es más costoso de lo esperado. Esto en parte porque actualmente los requerimientos de las entidades financieras en Puerto Rico son mucho más rigurosos que los requerimientos que prevalecían en el 2007. El cumplimiento con dichos requerimientos tiene el efecto de encarecer aún más el costo del fianciamiento para el Proyecto. Además, por haber cesado operaciones tres instuciones financieras principales en Puerto Rico durante el 2009, existen menos alternativas de financiamiento, lo que hasta cierto punto no permite obtener una oferta de financiamiento más atractiva.

Por otro lado, debido al tiempo que ha transcurrido en el comienzo de las negociaciones con Ramhil, ésta ha inccurrido en costos adicionales por concepto del finacimiento de los terrenos que se han de destinar al desarrollo del Proyecto. Esto también ha encarecido el costo total del desarrollo del Proyecto.

Tomando en cuenta lo anterior, entendemos que mantener la oferta que presentó Ramhil en 26 de marzo de 2007, de por sí constituye una mejor oferta para la OAT, pues los efectos del aumento en los costos del Proyecto antes mencionados los asume Ramhil en su totalidad. Por ello, Ramhil reitera por la presente su propuesta económica de 26 de marzo de 2007, la cual incorpora por referencia mediante este escrito como la Propesta Económica Final de Ramhil.

Nuevamente agradecemos a la OAT la oportunidad que ofrece a Ramhil de ser partícipe del desarrollo del Proyecto y nos ponemos a su disposición para aclarar cualquier duda que pudiera surgir en relación con el Proyecto.

Cordialmente,

Hilda Rodríguez Forteza





LOCATION PLAN

PARCEL FOR 38 Kv ELECTRIC SUB STATION - RAMHILL DEVELOPERS INC.

AREA = 185.0821 SQUARE METERS = 0.0471 CUERDAS

PARCEL RAMHIL - A    PARCEL TO BE SEGREGATED    DEPARTAMENTO DE JUSTICIA

AREA = 3960.2621 SQUARE METERS = 1.0076 CUERDAS

PARCEL RAMHIL - A    "REMANT"    CENTRO JUDICIAL

AREA = 29301.2377 SQUARE METERS = 7.4550 CUERDAS

PARCEL RAMHIL-A
REMNANT
TRIBUNAL DE CAGUAS LOT
RAMHILL DEVELOPERS, INC.
PARCELA CENTRO JUDICIAL

PARCEL
DEPARTAMENTO DE JUSTICIA
PARCEL TO BE SEGREGATED
FUTURE DEPT. DE JUSTICIA

PREDIO DE ACCESO - A

PREDIO DE ACCESO - B

SEGREGATION PLAN
OF A PARCEL OF LAND LOCATED
BAIROA WARD, CAGUAS, P.R.

DRAWING TITLE
SEGREGATION PLAN

SHEET 1 of 1

Anejo D



LOCATION MAP



ZONING MAP



FLOOD MAP



CATASTRO MAP



ADMINISTRACION  DE  LOS  TRIBUNALES
ESTADO LIBRE ASOCIADO DE PUERTO RICO

# CENTRO JUDICIAL DE  CAGUAS

CARRETERA ESTATAL PR#1 , ESQUINA PR#189, CAGUAS , PR



architek
A PROFESSIONAL SERVICES CORPORATION
JORGE L. BECERRIL, AIA - ARCHITECT

RAMHIL
DEVELOPERS CORP.

TRIBUNAL DE CAGUAS
CORNER STATE ROAD #189 & P.R.#1
CAGUAS, PUERTO RICO

ADMINISTRACION  DE LOS  TRIBUNALES
ESTADO LIBRE ASOCIADO DE PUERTO RICO



AREA VEHICULAR
(CONFINADOS)

(45) ESTACIONAMIENTOS
DE JUECES

CUARTO DE
CONTROL /
COMUNIC.

ELECTRICAL
BUS STATION &
GENERATOR ROOM

ALGUACILES
(9.790 P.C.)

SECRETARIA
(17,070 P.C.)

ARCHIVO DE
EXPEDIENTES
INACTIVOS
(6,500 P.C.)

ALMACEN DE
SUMINISTRO
GENERAL
(5,000 P.C.)

ARCHIVO DE
EXPEDIENTES
ACTIVOS
(5,900 P.C.)

PASILLO

RESTRICTED CORRIDOR

VESTIBULO
DE ASCENSORES

AREA DE
ESPERA
(1,800 P.C.)

PUBLIC CORRIDOR

POOL
SECRETARIAL
(1,000 P.C.)

PLAZA Y
ESCALINATAS
DE ENTRADA

SALA DE
INVESTIGACIONES
(12,400 P.C.)

**COURTHOUSE BUILDING
GROUND LEVEL - FLOOR PLAN**
SC. 1/16"=1'-0"

N

architek
A PROFESSIONAL SERVICES CORPORATION
JORGE L. BEZARES, ARCHITECT

CENTRO JUDICIAL DE CAGUAS

RAMSELL DEVELOPMENT CORP.
SAN JUAN, P.R.

DRAWING TITLE:
GENERAL
GROUND LEVEL
FLOOR PLAN

DATE: FEB-2007          SCALE:
                       1/16"=1'-0"
DESIGNED BY:   PROJECT #

DRAWN BY:      FILENAME:
                          .dwg
SHEET #        DRAWING:
               A-101

REVISIONS
DESCRIPTION   BY   DATE



EXAMINADORES
DE
PENSIONES

MENORES &
RELACIONES
DE FAMILIA

S A L A S   M E N O R E S   &   F A M I L I A

**2** COURTHOUSE BUILDING
SECOND  LEVEL - FLOOR PLAN
SC. 1/16"=1'-0"



architek
A PROFESSIONAL SERVICES CORPORATION
JORGE L. BECERRA ARCHITECT

CENTRO  JUDICIAL  DE  CAGUAS

GENERAL
SECOND LEVEL
FLOOR PLAN

DATE
FEB−2000

SCALE
1/16"=1'-0"

A-102

CHILLED
WATER
PLANT

TRABAJO
SOCIAL

RESTRICTED CORRIDOR

PUBLIC CORRIDOR

OPEN TO BELOW

ROOF
BELOW

OPEN TO
BELOW

S A L A S   M E N O R E S   &   F A M I L I A

**3** COURTHOUSE BUILDING
THIRD LEVEL - FLOOR PLAN
SC. 1/16"=1'-0"

architek
A PROFESSIONAL SERVICES CORPORATION
JORGE L. BEZERRA, ARCHITECT

CENTRO JUDICIAL DE CAGUAS

DRAWING TITLE:
GENERAL
THIRD LEVEL
FLOOR PLAN

SCALE:
1/16"=1'-0"
DATE:
FEB-2007

SHEET:      DRAWING:
A-103



SALAS CRIMINALES

COURTHOUSE BUILDING
FOURTH LEVEL - FLOOR PLAN
SC. 1/16"=1'-0"

A-104



BIBLIOTECA
JURÍDICA

ROOF BELOW

ROOF BELOW

ROOF BELOW

ROOF BELOW

DRUG COURT

OPEN TO BELOW

RESTRICTED CORRIDOR

PUBLIC CORRIDOR

S A L A S   C R I M I N A L E S

# 5  COURTHOUSE BUILDING
FIFTH  LEVEL - FLOOR PLAN
SC. 1/16"=1'-0"



CENTRO JUDICIAL DE CAGUAS

architek
A PROFESSIONAL SERVICES CORPORATION

GENERAL
FIFTH LEVEL
FLOOR PLAN

DATE: FEB-2007   SCALE: 1/16"=1'-0"

A-105



GIMNASIO
(1,000 P.C.)

PRO SE
(600 P.C.)

ROOF
BELOW

RESTRICTED CORRIDOR

PUBLIC CORRIDOR

S A L A S   C I V I L E S



# 6 COURTHOUSE BUILDING
## SIXTH LEVEL - FLOOR PLAN
SC. 1/16"=1'-0"

archiтек
A PROFESSIONAL SERVICES CORPORATION
JORGE L. BECERRA ARCHITECT

CENTRO JUDICIAL DE CAGUAS

GENERAL
SIXTH LEVEL
FLOOR PLAN

DATE: FEB-2007
SCALE: 1/16"=1'-0"

A-106

ROOF
BELOW

CENTRO
MEDIACION
DE
CONFLICTOS
(2,210 P.C.)

ROOF
BELOW

RESTRICTED CORRIDOR

PUBLIC CORRIDOR

SALAS CIVILES

**7** COURTHOUSE BUILDING
SEVENTH   LEVEL - FLOOR PLAN
SC. 1/16"=1'-0"

architek
A PROFESSIONAL SERVICES CORPORATION
JORGE I. MEDERIA ARCHITECT

SIXTH LEVEL
FLOOR PLAN

A-107



VISTAS PRELIMINARES

# 8 COURTHOUSE BUILDING
## EIGTH LEVEL - FLOOR PLAN
SC. 1/16"=1'-0"



OFICINAS ADMINISTRATIVAS

**9** **COURTHOUSE BUILDING**
**NINTH   LEVEL - FLOOR PLAN**
SC. 1/16"=1'-0"



GENERAL
NINTH LEVEL
FLOOR PLAN

A-109



## PARKING BUILDING
## GROUND LEVEL - FLOOR PLAN
SC. 1:300

## PARKING ANALYSIS :

RFP REQUIREMENT: 1130 PARKING SPACES
      45 JUDGE'S PARKING SPACES
      25 OFFICIAL VEHICLES PARKING SPACES

PROPOSED PARKING FACILITIES:
      1,266 PARKING SPACES
      (INCLUDING 40 P.S. HANDICAPPED)
      45 JUDGE'S PARKING SPACES
      25 OFFICIAL VEHICLES PARKING SPACES

**architek**
A PROFESSIONAL SERVICES CORPORATION

PROJECT:
CENTRO JUDICIAL DE CAGUAS

DRAWING TITLE:
PARKING BUILDING
GROUND LEVEL FLOOR PLAN

DATE: OCT.-2007

SCALE: 1:300

**PB-01**



PARKING BUILDING
TYPICAL LEVEL - FLOOR PLAN
SC. 1:300


N

PARKING BUILDING
GROUND LEVEL FLOOR PLAN

PB-02



## PARKING BUILDING
## SECTION VIEW
SC. 1/16"=1'-0"



## PARKING BUILDING
## SECTION VIEW
SC. 1/16"=1'-0"

Case:17-03283-LTS   Doc#:19807-2   Filed:01/18/22   Entered:01/18/22 13:06:57   Desc:
Exhibit Exhibit 2 Development Agreement   Page 67 of 67

Anejo E



**CENTRO JUDICIAL DE CAGUAS**

**Anejo E: Itinerario de Desarrollo**