## Exhibit A

**Preempted Statutes**

## I.   Commonwealth good faith and credit pledge statutes

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| **Act 2 approved October 10, 1985** 13 L.P.R.A. § 141–141m | Authorizes the issue of refinancing bonds to refinance all or any part of any public improvement bonds, provides for payment of principal and interest on such refinancing bonds, provides for the use of proceeds of such bonds, and exempts such bonds from the payment of taxes | <u>Section 1</u> – Authorizes issuance of refinancing bonds and payment of costs related to the sale and issuance of such refinancing bonds<br><br><u>Section 3(f)</u> – Provides refinancing bonds may be issued subject to certain conditions<br><br><u>Section 5</u> – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the refinancing bonds; authorizes and directs the Secretary of the Treasury to make such payments<br><br><u>Sections 6(a) and (c)</u> – Provides that proceeds of bond issuances shall be held in trust solely for the payment of principal and interest on bonds being refinanced | <u>Sections 1, 3(f)</u> – The Act does not authorize the issuance of specific bonds, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br><u>Section 5</u> – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314).<br><br><u>Sections 6(a) and (c)</u> – The Act requires certain proceeds to be used solely for bond payments, which are not provided for in the Fiscal Plan or the Plan, and which bonds will be restructured pursuant to the Plan. (PROMESA §§ 202, 314). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63.<br><br>Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231. | During the term of the Oversight Board |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 1 approved June 26, 1987, as amended 13 L.P.R.A. § 63–63h** | Authorizes the issuance of notes, in a principal amount that shall not exceed $800 million, in advance of taxes and revenues of the Commonwealth to be collected in cash during such fiscal year, and creates a Special Fund for the Redemption of Notes in Advance of Taxes and Revenues | **Section 1** – Authorizes the issuance of notes and payment of expenses related to the sale and issuance of such notes<br><br>**Section 4** – Provides that all specified taxes and revenues received after the close of the fiscal year in which the notes are issued be deposited in a special fund, and that the money in such fund shall be used to pay the principal, redemption premium, and interest on the notes and shall not be used for any other purpose | **Section 1** – The Act does not authorize the issuance of specific bonds, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>To the extent the statute is interpreted not to require approval pursuant to PROMESA section 207, the Act would be inconsistent with PROMESA and is therefore preempted.<br><br>**Section 4** – The Act requires certain taxes and revenues to be used solely for bond payments, which are not provided for in the Fiscal Plan or the Plan, and which bonds will be restructured pursuant to the Plan. (PROMESA §§ 202, 314). | PROMESA section 207 requires that, for so long as the Oversight Board remains in operation, "no territorial government may, without the prior approval of the Oversight Board, issue debt or guarantee exchange, modify, repurchase, redeem, or enter into similar transactions with respect to its debt." Additionally, the Plan provides, at paragraph 74.5, limitations on future debt which supports feasibility. *See* Plan § 74.5.<br><br>To the extent the Act is interpreted or applied to permit the Commonwealth to "issue debt or guarantee, exchange, modify, repurchase, redeem, or enter into similar transactions with respect to its debt" without the prior approval of the Oversight Board as required by PROMESA section 207, and/or without compliance with | During the term of the Oversight Board |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | paragraph 74.5 of the Plan, the Act is preempted.<br><br>Such an interpretation or application of the Act would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232. | |
| **Act 34 approved March 4, 2014** | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $3.5 billion to pay or refinance debt and other obligations of the Commonwealth or public corporations, pay rent to PBA, other uses authorized pursuant to previous legislation, establish reserves associated with the bond issuance, and provide for payment of principal and | <u>Sections 1, 1(i)–(iv), and 1(vii)</u> – Authorizes the issuance of bonds, the proceeds of which shall be used for the payment of bonds and other debt of the Commonwealth and its instrumentalities and to establish related reserves in connection with the issuance of the bonds, and authorizes the payment of costs incurred in connection with the issuance of the bonds. | <u>Sections 1, 1(i)–(iv), 1(vii), 5</u> – The Act authorizes the issuance of bonds in an amount not to exceed $3.5 billion, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan.  Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br><u>Sections 4, 5, 6</u> – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds and notes priority not otherwise provided | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---------|------------------------------|-------------------------------|----------------------|---------------------------------------|------------------------|
| | interest on the bonds, among other purposes | **Section 4** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 5** – Authorizes the borrowing of money and issuance of bond anticipation notes, payable from the proceeds of the bonds.<br><br>**Section 6** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of interest on the notes; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 7** – Authorizes the use of money appropriated under the Act for payment of other Commonwealth debt or obligations, or any other use approved by the Legislative Assembly, to the extent not needed for | for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314).<br><br>**Section 7** – The Act authorizes the use of funds for the payment of any debt of the Commonwealth or any unspecified "other use," which may not be provided for in the Fiscal Plan or the Plan, and may be restructured pursuant to the Plan. (PROMESA § 202, 314). | Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---------|------------------------------|-------------------------------|----------------------|---------------------------------------|------------------------|
| | | the purposes stated in the Act. | | | |
| **Act 79 approved June 1, 2011** | Authorizes the issuance of Commonwealth bonds in a principal amount that shall not exceed $304 million to cover the costs of public improvements | **Section 1** – Authorizes the issuance of bonds, and provides that $34 million of proceeds be reserved for payment of interest on bonds.<br><br>**Section 4** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 5** – Authorizes the borrowing of money and issuance of notes, payable from the proceeds of the bonds.<br><br>**Section 6** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of interest on the notes; authorizes and directs the Secretary of the Treasury to make such payments. | **Sections 1, 5** – The Act authorizes the issuance of bonds in an amount not to exceed $304 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Sections 4, 5, 6, 13** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314).<br><br>**Section 1** – The Act requires certain proceeds to be used solely for bond payments or related costs, which are not provided for in the Fiscal Plan or the Plan, and which bonds may be restructured pursuant to the Plan. (PROMESA §§ 202, 314). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63.<br><br>Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | **Section 13** – Appropriates $8.5 million of bond proceeds for payment of expenses incurred in connection with the bond issuance. | | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 231. | |
| **Act 243 approved August 9, 2008** | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $250 million to cover the costs of public improvements | **Section 1** – Authorizes the issuance of bonds.  **Section 4** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the Treasury to make such payments.  **Section 5** – Authorizes the borrowing of money and issuance of notes, payable from the proceeds of the bonds.  **Section 6** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of interest on the notes; authorizes and directs the | **Sections 1, 5** – The Act authorizes the issuance of bonds in an amount not to exceed $250 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).  **Sections 4, 5, 6, 13** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.  Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | Secretary of the Treasury to make such payments.<br><br>**Section 13** – Appropriates bond proceeds necessary for payment of expenses incurred in connection with the bond issuance. | | with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 43 approved August 1, 2005, as amended** | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $575 million to cover the costs of public improvements | **Section 1** – Authorizes the issuance of bonds.<br><br>**Section 4** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 5** – Authorizes the borrowing of money and issuance of notes, payable from the proceeds of the bonds.<br><br>**Section 6** – Provides the good faith, credit, and taxing power of the Commonwealth are | **Sections 1, 5** – The Act authorizes the issuance of bonds in an amount not to exceed $575 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Sections 4, 5, 6, 13** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | pledged for payment of interest on the notes; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 13** – Appropriates bond proceeds necessary for payment of expenses incurred in connection with the bond issuance. | | Decl. ¶ 63.  Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 216 approved August 19, 2004** | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $550 million to cover the costs of public improvements | **Section 1** – Authorizes the issuance of bonds.<br><br>**Section 4** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 5** – Authorizes the borrowing of money and issuance of notes, payable from the proceeds of the bonds. | **Sections 1, 5** – The Act authorizes the issuance of bonds in an amount not to exceed $550 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan.  Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Sections 4, 5, 6, 12** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | **Section 6** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of interest on the notes; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 12** – Appropriates bond proceeds necessary for payment of expenses incurred in connection with the bond issuance. | restructured pursuant to the Plan. (PROMESA §§ 202, 314). | by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 100 approved July 12, 2002, as amended** | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $500 million to cover the costs of public improvements | **Section 1** – Authorizes the issuance of bonds.<br><br>**Section 4** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 5** – Authorizes the borrowing of money and | **Sections 1, 5** – The Act authorizes the issuance of bonds in an amount not to exceed $500 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Sections 4, 5, 6, 12** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | issuance of notes, payable from the proceeds of the bonds.<br><br>**Section 6** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of interest on the notes; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 12** – Appropriates bond proceeds necessary for payment of expenses incurred in connection with the bond issuance. | for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 161 approved July 5, 2003** | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $540 million to cover the costs of public improvements | **Section 1** – Authorizes the issuance of bonds.<br><br>**Section 4** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the | **Sections 1, 5** – The Act authorizes the issuance of bonds in an amount not to exceed $540 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | Treasury to make such payments.<br><br>**Section 5** – Authorizes the borrowing of money and issuance of notes, payable from the proceeds of the bonds.<br><br>**Section 6** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of interest on the notes; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 12** – Appropriates bond proceeds necessary for payment of expenses incurred in connection with the bond issuance. | **Sections 4, 5, 6, 12** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 149 approved August 9, 2002, as amended** | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $110 million to cover the costs of public improvements | **Section 1** – Authorizes the issuance of bonds.<br><br>**Section 4** – Establishes a special fund to which an amount equal to or greater than $110 million must be deposited by the Secretary | **Section 1** – The Act authorizes the issuance of bonds in an amount not to exceed $110 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | of Treasury for the payment of principal, redemption premium, and interest on the bonds.<br><br>**Section 5** - Authorizes and directs the Secretary of the Treasury to make bond payments. | provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Sections 4, 5** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Joint Resolution No. 57** | Authorizes the Secretary of the Treasury to issue, from time to time, refinancing bonds of the | **Section 1** – Authorizes the issuance of bonds. | **Section 1** – The Act does not authorize the issuance of specific bonds, and could be used to issue additional debt in the future which is | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and | For so long as the Oversight Board |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| approved July 12, 1993 | Commonwealth with the purpose or refinancing, completely or partially, any expenses related to the sale and issue of said Refinancing Bonds | | not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314). | the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232. | remains in place |
| Act 54 approved July 6, 2001 | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $475 million to cover the costs of public improvements | Section 1 – Authorizes the issuance of bonds.<br><br>Section 4 – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>Section 5 – Authorizes the borrowing of money and issuance of notes, payable from the proceeds of the bonds.<br><br>Section 6 – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of interest on the notes; | Sections 1, 5 – The Act authorizes the issuance of bonds in an amount not to exceed $475 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>Sections 4, 5, 6, 12 – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 12** – Appropriates bond proceeds necessary for payment of expenses incurred in connection with the bond issuance. | | the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 118 approved July 13, 2000** | Authorizes the issue of bonds of the Commonwealth in a principal amount that shall not exceed $425 million to cover the costs of public improvements | **Section 1** – Authorizes the issuance of bonds.<br><br>**Section 4** – Provides the good faith, credit, and taxing power of the Commonwealth are pledged for payment of principal and interest on the bonds; authorizes and directs the Secretary of the Treasury to make such payments.<br><br>**Section 5** – Authorizes the borrowing of money and issuance of notes, payable from the proceeds of the bonds.<br><br>**Section 6** – Provides the good faith, credit, and | **Sections 1, 5** – The Act authorizes the issuance of bonds in an amount not to exceed $425 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Sections 4, 5, 6, 12** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | taxing power of the Commonwealth are pledged for payment of interest on the notes; authorizes and directs the Secretary of the Treasury to make such payments. **Section 12** – Appropriates $3.25 million of bond proceeds for payment of expenses incurred in connection with the bond issuance. | | $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231. <br><br> The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 153 approved July 19, 1999** | Act 153-1999, among other things, (i) authorizes the Secretary of Treasury to issue certain bonds and notes in an amount not to exceed $475,000,000; (ii) directs the Secretary of the Treasury to pay the principal and interest on any such bonds or notes through a continuing appropriation; and (iii) pledges the good faith, credit, and taxing power of the Commonwealth of Puerto Rico for payment of the bonds and notes. | **Section 1 (para. 1)** – Authorizes issuance of Commonwealth bonds. **Section 1 (para. 3)** – Authorizes payment of all costs incurred in connection with the issue of bonds and notes. **Section 3** – Authorizes Secretary of Treasury to negotiate and execute financing agreements in connection with issuance. **Section 4** – Directs payment of principal and | **Sections 1 (para. 1), 3, 5** – The Act authorizes the issuance of bonds in an amount not to exceed $475 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314). **Sections 1 (para. 3), 4, 6** – The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232. Statutes authorizing payment in full of debt service on existing | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | interest on bonds as they fall due and to commit good faith, credit, and taxing power.<br><br>**Section 5** – Authorizes borrowing money and issuing notes in advance of bond issuance.<br><br>**Section 6** – Pledges good faith, credit, and taxing power and directs payment of interest on notes as it comes due. Directs issuance of bonds to pay said notes.<br><br>**Section 7** – Proceeds shall be covered into "Public Improvements Fund of 2000" and disbursed according to unspecified statutory provisions<br><br>**Section 8** – Secretary of the Treasury shall reimburse any provisional advance made, out of the first moneys available in the Public Improvements Fund of 2000.<br><br>**Section 12** – Appropriates $3.25 million to expenses of issuing bonds. | Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314).<br><br>**Sections 7, 8, 12, 13** – The Act requires or prohibits the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget.  (PROMESA § 202).<br><br>**Section 12** – The Act requires certain proceeds to be used solely for bond payments or related costs, which are not provided for in the Fiscal Plan or the Plan, and which bonds may be restructured pursuant to the Proposed Plan.  (PROMESA §§ 202, 314). | general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone.  *See* Amended Malhotra Decl. ¶ 63.  Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | **Section 13** – Appropriates $23.75 million to the Aqueduct and Sewer Authority. | | | |
| **Act 219 approved August 9, 1998** | Act 219-1998, among other things, (i) authorizes the Secretary of Treasury to issue certain bonds and notes; (ii) directs the Secretary of the Treasury to pay the principal and interest on any such bonds or notes through a continuing appropriation; and (iii) pledges the good faith, credit, and taxing power of the Commonwealth of Puerto Rico for payment of the bonds and notes. | **Article 1 (para. 1)** – Authorizes issuance of Commonwealth bonds.

**Article 1 (para. 3)** – Authorizes payment of all costs incurred in connection with the issue of bonds and notes.

**Article 3** – Authorizes Secretary of Treasury to negotiate and execute financing agreements in connection with issuance.

**Article 4** – Directs payment of principal and interest on bonds as they fall due and to commit good faith, credit, and taxing power.

**Article 5** – Authorizes borrowing money and issuing notes in advance of bond issuance.

**Article 6** – Provides for pledge of good faith, credit, and taxing power and directs payment of interest on notes as it | **Article 1 (para. 1), 3, 5** - The Act authorizes the issuance of bonds in an amount not to exceed $475 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).

**Articles 1 (para. 3), 4, 6** - The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314).

**Articles 7, 8, 12, 13** - The Act requires the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget. (PROMESA § 202).

**Article 12** - The Act requires certain proceeds to be used solely for bond | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.

Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | comes due. Directs issuance of bonds to pay said notes.<br><br>**Article 7** – Proceeds shall be covered into "1999 Public Improvement Fund" and disbursed pursuant to unspecified statutes.<br><br>**Article 8** – Secretary of the Treasury shall reimburse any provisional advance made, out of the first moneys available in the 1999 Public Improvement Fund.<br><br>**Article 12** – Appropriates $3.25 million to expenses of issuing bonds.<br><br>**Article 13** – Appropriates $23.75 million to the Infrastructure Financing Authority (AFI). | payments or related costs, which are not provided for in the Fiscal Plan or the Plan, and which bonds may be restructured pursuant to the Plan. (PROMESA §§ 202, 314). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 81 approved August 14, 1997** | Act 81-1997, among other things, (i) authorizes the Secretary of Treasury to issue certain bonds and notes; (ii) directs the Secretary of the Treasury to pay the principal and interest on any such bonds or notes through a continuing appropriation; | **Section 1 (para. 1)** – Authorizes issuance of Commonwealth bonds.<br><br>**Section 1 (para. 3)** – Authorizes payment of all costs incurred in connection with the issue of bonds and notes. | **Sections 1 (para. 1), 3, 5** - The Act authorizes the issuance of bonds in an amount not to exceed $500 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | and (iii) pledges the good faith, credit, and taxing power of the Commonwealth of Puerto Rico for payment of the bonds and notes. | **Section 3** – Authorizes Secretary of Treasury to negotiate and execute financing agreements in connection with issuance.<br><br>**Section 4** – Directs payment of principal and interest on bonds as they fall due and to commit good faith, credit, and taxing power.<br><br>**Section 5** – Authorizes borrowing money and issuing notes in advance of bond issuance.<br><br>**Section 6** – Provides for pledge of good faith, credit, and taxing power and directs payment of interest on notes as it comes due. Directs issuance of bonds to pay said notes.<br><br>**Section 7** – Proceeds shall be covered into "1998 Public Improvements Fund" and disbursed pursuant to unspecified statutes.<br><br>**Section 8** – Secretary of the Treasury shall reimburse any provisional | limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Sections 1 (para. 3), 4, 6** - The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314).<br><br>**Sections 7, 8, 12, 13** - The Act requires the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget. (PROMESA § 202).<br><br>**Section 12** - The Act requires certain proceeds to be used solely for bond payments or related costs, which are not provided for in the Fiscal Plan or the Plan, and which bonds may be restructured pursuant to the Plan. (PROMESA §§ 202, 314). | confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | advance made, out of the first moneys available in the 1998 Public Improvements Fund.<br><br>**Section 12** – Appropriates $3.25 million to expenses of issuing bonds.<br><br>**Section 13** – Appropriates $25 million to the Office of the Management and Budget until the Special Maintenance Proposals Inter Agency Evaluating and Approval Committee claims the deposit thereof in the Special Maintenance Fund. | | | |
| **Act 119 approved August 9, 1995** | Act 119-1995, among other things, (i) authorizes the Secretary of Treasury to issue certain bonds and notes; (ii) directs the Secretary of the Treasury to pay the principal and interest on any such bonds or notes through a continuing appropriation; and (iii) pledges the good faith, credit, and taxing power of the Commonwealth of Puerto Rico for payment of the bonds and notes. | **Article 1 (para. 1)** – Authorizes issuance of Commonwealth bonds.<br><br>**Article 1 (para. 3)** – Authorizes payment of all costs incurred in connection with the issue of bonds and notes.<br><br>**Article 3** – Authorizes Secretary of Treasury to negotiate and execute financing agreements in connection with issuance.<br><br>**Article 4** – Directs payment of principal and | **Articles 1 (para. 1), 3, 5** - The Act authorizes the issuance of bonds in an amount not to exceed $355 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan.  Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Articles 1 (para. 3), 4, 6** - The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | interest on bonds as they fall due and to commit good faith, credit, and taxing power.<br><br>**Article 5** – Authorizes borrowing money and issuing notes in advance of bond issuance.<br><br>**Article 6** – Provides for pledge of good faith, credit, and taxing power and directs payment of interest on notes as it comes due. Directs issuance of bonds to pay said notes.<br><br>**Article 7** – Proceeds shall be covered into "1996 Public Improvements Fund" and disbursed pursuant to unspecified statutes.<br><br>**Article 8** – Secretary of the Treasury shall reimburse any provisional advance made, out of the first moneys available in the 1996 Public Improvements Fund.<br><br>**Article 12** – Appropriates $3.5 million to expenses of issuing bonds. | Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314).<br><br>**Articles 7, 8, 12** - The Act requires the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget. (PROMESA § 202).<br><br>**Article 12** - The Act requires certain proceeds to be used solely for bond payments or related costs, which are not provided for in the Fiscal Plan or the Plan, and which bonds may be restructured pursuant to the Plan. (PROMESA §§ 202, 314). | general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | | |
| **Act 46 approved July 28, 1994** | Act 46-1994, among other things, (i) authorizes the Secretary of Treasury to issue certain bonds and notes; (ii) directs the Secretary of the Treasury to pay the principal and interest on any such bonds or notes through a continuing appropriation; and (iii) pledges the good faith, credit, and taxing power of the Commonwealth of Puerto Rico for payment of the bonds and notes. | **Article 1 (para. 1)** – Authorizes issuance of Commonwealth bonds.<br><br>**Article 1 (para. 3)** – Authorizes payment of all costs incurred in connection with the issue of bonds and notes.<br><br>**Article 3** – Authorizes Secretary of Treasury to negotiate and execute financing agreements in connection with issuance.<br><br>**Article 4** – Directs payment of principal and interest on bonds as they fall due and to commit good faith, credit, and taxing power.<br><br>**Article 5** – Authorizes borrowing money and issuing notes in advance of bond issuance.<br><br>**Article 6** – Pledge of good faith, credit, and taxing power and directs payment of interest on notes as it comes due. | **Articles 1 (para. 1), 3, 5** - The Act authorizes the issuance of bonds in an amount not to exceed \$325 million, and provides for the borrowing of money and issuance of notes, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Articles 1 (para. 3), 4, 6** - The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314).<br><br>**Articles 7, 8, 12, 13** - The Act requires the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget. (PROMESA § 202).<br><br>**Articles 12** - The Act requires certain proceeds to be used solely for bond | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over \$1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63.  Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | Directs issuance of bonds to pay said notes.<br><br>**Article 7** – Proceeds shall be covered into "1995 Public Improvements Fund" and disbursed pursuant to unspecified statutes.<br><br>**Article 8** – Secretary of the Treasury shall reimburse any provisional advance made, out of the first moneys available in the 1995 Public Improvements Fund.<br><br>**Article 12** – Appropriates $3.5 million to expenses of issuing bonds.<br><br>**Article 13** – Appropriates $16.25 million to the Budget and Management Office, until the Interagency Committee for Evaluation and Approval of Extraordinary Maintenance Proposals orders its allocation to the Extraordinary Maintenance Fund. | payments or related costs, which are not provided for in the Fiscal Plan or the Plan, and which bonds may be restructured pursuant to the Plan. (PROMESA §§ 202, 314). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 39 approved May 13, 1976, as** | Act 39-1976, among other things, provides for the continuing monthly transfer of certain funds | **Section 1** – Requires transfer of funds to a sinking fund for the payment of bonds on a | **Section 1 -** The Act requires or prohibits the transfer or disbursement of funds without Oversight Board authorization in conflict with the | If these statutes have to be complied with, they would undermine the restructuring of Commonwealth debt | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| amended | for the payment of certain bonds and promissory notes issued by the Commonwealth of Puerto Rico. The Act provides the funds so transferred are to be kept in trust for the purpose of paying bonds and notes. | specified schedule; requires transfer of interest on proceeds to the sinking fund.<br><br>**Section 2** – requires use of funds in sinking fund only for payment of bonds. | Board's sole power to approve a Fiscal Plan and Certified Budget. (PROMESA § 202).<br><br>**Section 2** - The Act requires certain proceeds to be used solely for bond payments, which are not provided for in the Fiscal Plan or the Plan, and which bonds will be restructured pursuant to the Plan. (PROMESA §§ 202, 314).<br><br>**Section 2** - The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | contemplated in the Plan. Amended Jaresko Decl. ¶ 233.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 83 approved August 30, 1991** | Act 83-1991, among other things, provides for certain tax proceeds and appropriations for payment of the Commonwealth's general obligation bonds or notes. | **Article 2.02** – Imposes special tax of 1.03% on the appraised value of all non-exempt personal and real property in Puerto Rico for the amortization and redemption of the general obligations of the Commonwealth. | **Articles 2.02, 2.04 and 2.05** – The act is preempted to the extent Articles 2.02 and 2.04 would impose payment obligations outside of any Oversight Board-certified budget or fiscal plan, or would require payment in full of prepetition obligations. (PROMESA §§ 202, 314). | If these statutes have to be complied with, they would undermine the restructuring of Commonwealth debt contemplated in the Plan. Amended Jaresko Decl. ¶ 233.<br><br>Statutes authorizing payment in full of debt service on existing | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | **Article 2.04** – Provides that proceeds from taxes imposed by Article 2.02 shall be applied for payment of the principal and interest on the general obligations of the Commonwealth of Puerto Rico, or the early redemption of such obligations.<br><br>**Article 2.05** – Provides that Articles 2.02 and 2.08 shall be considered a preferential obligation and authorization for distributions to be made pursuant to the Act. | For the avoidance of doubt, the statute's provisions regarding collection of the tax are not preempted. | general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over \$1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Joint Resolution No. 99-2013 approved December 12, 2013** | Joint Resolution No. 99-2013, among other things, (i) authorizes the General Services Administration to take money on loan; (ii) establishes the method of repayment for the loan; and (iii) pledges the good faith, credit, and taxing power of the Commonwealth of Puerto Rico for payment of the loan. | **Section 1** – Provides for a line of credit.<br><br>**Section 3** – Pledge of good faith, credit and taxing power and directs payment of principal and interest. | **Section 1 -** The Act authorizes the borrowing of money in an amount not to exceed \$34 million, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Section 3 -** The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---------|------------------------------|-------------------------------|----------------------|---------------------------------------|------------------------|
| | | | Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231. | |
| **Joint Resolution No. 104 approved December 13, 2013** | Joint Resolution No. 104-2013, among other things, authorizes the Office of the Superintendent of the Capitol to take money on loan and establishes the method of repayment for the loan to be through annual budgetary allocations from the General Fund. | **Section 1** – Authorizes line of credit.<br><br>**Section 2** – Requires honoring of payment and allocation of funds from the general fund for payment of line of credit. | **Section 1** - The Act authorizes the borrowing of money in an amount not to exceed $15 million, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>**Section 2** - The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>Statutes authorizing payment in full of debt service on existing | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | restructured pursuant to the Plan. (PROMESA §§ 202, 314). | general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63. Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231. | |
| **Joint Resolution No. 96 approved November 27, 2013** | Joint Resolution No. 96-2013, among other things, (i) allocates funds from the Public Improvements Fund; (ii) authorizes remaining funds to be distributed according to a Joint Resolution; and (iii) authorizes the Government Development Bank for Puerto Rico to advance the Secretary of the Treasury a loan to address work determined by the Governor. | **Section 1** – Allocates specific funds to agencies and municipalities for specified purposes.<br><br>**Section 2** – Allocates funds in a way to be determined.<br><br>**Section 3** – Arranges for a line of credit | **Sections 1, 2 -** The Act requires or prohibits the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget. (PROMESA § 202).<br><br>**Section 3 -** The Act authorizes the borrowing of money in an amount not to exceed $30 million, and could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | restructurings. Amended Jaresko Decl. ¶ 230. | |
| **Act 17 approved April 11, 1968** | Act 17-1968, among other things, (i) authorizes the Public Buildings Authority to issue certain bonds; (ii) directs the Secretary of the Treasury to pay the principal and interest on any such bonds through a continuing appropriation; and (iii) pledges the good faith and credit of the Commonwealth of Puerto Rico for payment of the bonds. | <u>Section 1</u> – Provides for guarantee of Public Buildings Authority Bonds; requires the allocation and payment of guaranteed bonds; pledges the good faith, credit and taxing power. | <u>Section 1</u> - The Act provides for a guarantee of indebtedness in an amount not to exceed \$27 million, which could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan.  Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314).<br><br>The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan.  (PROMESA §§ 202, 314).<br><br>The Act requires certain proceeds to be used solely for bond payments, which are not provided for in the Fiscal Plan or the Plan, and which bonds will be restructured pursuant to the Plan.  (PROMESA §§ 202, 314).<br><br>The Act requires or prohibits the transfer or disbursement of funds without Oversight Board authorization | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget. (PROMESA § 202). | | |
| **Act 409 approved September 22, 2004** | Act 409-2004, among other things, provides that the Commonwealth of Puerto Rico guarantees the payment of principal and interest on outstanding bonds that are issued by the Port of Americas Authority, and directs the Secretary of the Treasury to make payments of principal and interest on bonds issued by the Port of Americas Authority whenever the Port of Americas Authority lacks the funds to make such payments. | <u>**Section 1**</u> – Provides for guarantee of debt of Port of Americas Authority; requires the allocation and payment of guaranteed bonds; pledges the good faith, credit and taxing power. | <u>**Section 1**</u> - The Act provides for a guarantee of indebtedness in an amount not to exceed $250 million, which could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan.  Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314). <br><br> The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan.  (PROMESA §§ 202, 314). <br><br> The Act requires certain proceeds to be used solely for bond payments, which are not provided for in the Fiscal Plan or the Plan.  (PROMESA §§ 202, 314). <br><br> The Act requires or prohibits the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget.  (PROMESA § 202). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232. <br><br> The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| **Act 1 approved January 15, 2015** | Act 1-2015, among other things, (i) allows PRIFA to assume or repay certain debts of HTA; (ii) creates the Infrastructure Financing Authority Special Economic Assistance Fund; (iii) authorizes PRIFA to issue bonds to finance the assumed debts of HTA; (iv) provides guarantees for the payment of the bonds issued under the act; (v) authorizes the Secretary of the Treasury to pay outstanding obligations from the bonds as necessary; and (vi) pledges the full faith and credit and the taxing power of the Commonwealth of Puerto Rico to guarantee the repayment of the bonds or notes to be paid from the Infrastructure Financing Authority Special Economic Assistance Fund. | **Section 2.02 (Amended Section 34(h))** – Provides for Commonwealth guarantee of agency bonds; requires the allocation and payment of guaranteed bonds; pledges the good faith, credit and taxing power. | **Section 2.02 (Amended Section 34(h))** - The Act provides for a guarantee of indebtedness of an unspecified amount, which could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan. Section 74.5 of the Plan also provides limitations on future debt. (PROMESA §§ 202, 314). <br><br>The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). <br><br>The Act requires certain proceeds to be used solely for bond payments, which are not provided for in the Fiscal Plan or the Plan. (PROMESA §§ 202, 314). <br><br>The Act requires or prohibits the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget. (PROMESA § 202). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232 <br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| **Act 45** approved **July 28, 1994** | Act 45-1994, among other things, (i) guarantees the payment of principal and interest on outstanding and future bonds issued by the Aqueducts and Sewers Authority of Puerto Rico; (ii) directs the Secretary of the Treasury to cosign or advance funds to cover payments on bonds guaranteed under the Act; and (iii) pledges the good faith and credit of the Commonwealth of Puerto Rico for payment of the bonds. | **Section 1** – Provides for Commonwealth guarantee of Water and Sewage Authority of unspecified amount; requires the allocation and payment of guaranteed bonds; pledges the good faith, credit and taxing power. | **Section 1 -** The Act provides for a guarantee of indebtedness of an unspecified amount, which could be used to issue additional debt in the future which is not provided for in the Plan or Fiscal Plan.  Section 74.5 of the Plan also provides limitations on future debt.  (PROMESA §§ 202, 314).<br><br>The Act provides for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan.  (PROMESA §§ 202, 314).<br><br>The Act requires certain proceeds to be used solely for bond payments, which are not provided for in the Fiscal Plan or the Plan.  (PROMESA §§ 202, 314).<br><br>The Act requires or prohibits the transfer or disbursement of funds without Oversight Board authorization in conflict with the Board's sole power to approve a Fiscal Plan and Certified Budget.  (PROMESA § 202). | Continued operation of these provisions would significantly detract from PROMESA's requirement in section 207 and the Oversight Board's mission by allowing the Commonwealth to incur debt without Oversight Board approval, without regard to whether such debt would impair or interfere with a confirmed Plan, and potentially in an amount greater than is authorized by the certified fiscal plans or budgets. Amended Jaresko Decl. ¶ 232.<br><br>The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | Permanent |

## II.    Statutes appropriating Commonwealth revenues

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---------|------------------------------|-------------------------------|----------------------|----------------------------------------|------------------------|
| **Act 9 approved August 12, 1982; 9 L.P.R.A. § 2021** | Appropriates automobile license fees to HTA, which HTA may pledge to the repayment of principal and interest on bonds and other obligations of HTA. | **Section 2021 –** Appropriates increase in automobile license fees to HTA for its corporate purposes and for the repayment of HTA's bonds or other obligations | **Section 2021** – The appropriation provisions are preempted since they impose payment obligations outside of any Oversight Board-certified budget or fiscal plan or the Plan and require payment in full of prepetition obligations.  (PROMESA §§ 202, 314).

These appropriation provisions also conflict with the purpose of PROMESA; a restructuring of the Commonwealth's obligations will be impossible if all of these appropriations remain enforceable. (PROMESA § 108, 314).

Any obligations that the Act created are prepetition obligations that are being discharged pursuant to the Bankruptcy Code and PROMESA. *See* DRA Opinion[1] at 16, 19, PROMESA § 314.

The obligations under the Act were made so that HTA will have sufficient moneys to repay its debt obligations to Bondholders and continue operating.  Upon the effectiveness of HTA's plan of adjustment such debt obligations will no longer be in effect.  Continuing to send the moneys and appropriate despite the debts being discharged pursuant to Title III of | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.

The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified | Permanent |

---

[1]    "DRA Opinion" refers to the *Opinion and Order Denying the DRA Parties' Motion for Allowance of an Administrative Expense Claim*, ECF No. 18892, dated October 29, 2021.

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | PROMESA conflicts with the discharge provisions of the Bankruptcy Code as incorporated into PROMESA.  (PROMESA § 314). | budget, fiscal plan, and the Plan.  *Id.*  These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion.  Amended Malhotra Decl. ¶ 64. | |
| 13 L.P.R.A. § 31751(a)(1) | Appropriates certain revenues to HTA, which HTA may pledge to the repayment of principal and interest on bonds and other obligations of HTA. | <u>Section 31751(a)(1)</u> – Appropriates gasoline and oil taxes to HTA  <u>Section 31751(a)(1) (A, B)</u> – Such appropriated funds shall be covered into a special deposit in favor of HTA and paid on a monthly basis  <u>Section 31751(a)(1) (C, E)</u> – Such appropriated funds shall be pledged to the repayment of HTA's | <u>Section 31751(a)(1)</u> – The appropriation provisions are preempted since they impose payment obligations outside of any Oversight Board-certified budget or fiscal plan or the Plan and require payment in full of prepetition obligations.  (PROMESA §§ 202, 314).  These appropriation provisions also conflict with the purpose of PROMESA; a restructuring of the Commonwealth's obligations will be impossible if all of these appropriations remain enforceable.  (PROMESA §§ 108, 314). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | bonds and other obligations, subject to Section 8 Article VI of the Puerto Rico Constitution and the Commonwealth committed not to reduce the amount of funds appropriated | Any obligations that the Act created are prepetition obligations that are being discharged pursuant to the Bankruptcy Code and PROMESA. *See* DRA Opinion at 16, 19; PROMEA § 314.<br><br>The obligations under the Act were made so that HTA will have sufficient moneys to repay its debt obligations to Bondholders and continue operating. Upon the effectiveness of HTA's plan of adjustment such debt obligations will no longer be in effect. Continuing to send the moneys and appropriate despite the debts being discharged pursuant to Title III of PROMESA conflicts with the discharge provisions of the Bankruptcy Code as incorporated into PROMESA. (PROMESA § 314).<br><br>Further, this statute may be repealed by Act 53-2021 if and when it becomes effective in its current form, which is expected to take place on the effective date of the Plan. | Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.<br><br>The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion. Amended Malhotra Decl. ¶ 64. | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| 13 L.P.R.A. § 31751(a)(3) | Appropriates revenues derived from cigarette excise taxes to HTA, which HTA may pledge to the repayment of principal and interest on bonds and other obligations of HTA. | **Section 31751(a)(3)** – Appropriates up to $20 million in cigarette excise taxes to HTA for its corporate powers and purposes<br><br>**Section 31751(a)(3)(A)** – Provides that appropriated funds shall be covered into a special deposit account for HTA<br><br>**Section 31751(a)(3)(C)** – Provides that appropriated funds shall be used for repayment of HTA's bonds and other obligations, subject to the provisions of Section 8 of Article VI of the Puerto Rico Constitution | **Section 31751(a)(3)** – The appropriation provisions are preempted since they impose payment obligations outside of any Oversight Board-certified budget or fiscal plan or the Plan and require payment in full of prepetition obligations. (PROMESA §§ 202, 314).<br><br>These appropriation provisions also conflict with the purpose of PROMESA; a restructuring of the Commonwealth's obligations will be impossible if all of these appropriations remain enforceable. (PROMESA §§ 108, 314).<br><br>Any obligations that the Act created are prepetition obligations that are being discharged pursuant to the Bankruptcy Code and PROMESA. *See* DRA Opinion at 16, 19; PROMESA § 314.<br><br>The obligations under the Act were made so that HTA will have sufficient moneys to repay its debt obligations to Bondholders and continue operating. Upon the effectiveness of HTA's plan of adjustment such debt obligations will no longer be in effect. Continuing to send the moneys and appropriate despite the debts being discharged pursuant to Title III of PROMESA conflicts with the discharge provisions of the Bankruptcy Code as incorporated into PROMESA. (PROMESA § 314).<br><br>Further, this statute may be repealed by Act 53-2021 if and when it becomes effective in | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.<br><br>The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | its current form, which is expected to take place on the effective date of the Plan. | amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion.  Amended Malhotra Decl. ¶ 64. | |
| **Act 44 approved June 21, 1988, as amended; 3 L.P.R.A. § 1914** | Appropriates revenues derived from rum taxes to PRIFA, which PRIFA may pledge to the repayment of principal and interest on bonds and other obligations of PRIFA. | **Section 1914** – Appropriates $117 million annually of rum taxes to PRIFA for its corporate purposes, which PRIFA may pledge to the repayment of its bonds or other obligations subject to the provisions of Section 8 of Article VI of the Puerto Rico Constitution | **Section 1914** – The appropriation provisions to PRIFA are preempted since they impose payment obligations outside of any Oversight Board-certified budget or fiscal plan or the Plan and require payment in full of prepetition obligations. (PROMESA §§ 202, 314).<br><br>These appropriation provisions also conflict with the purpose of PROMESA; a restructuring of the Commonwealth's obligations will be impossible if all of these appropriations remain enforceable. (PROMESA §§ 108, 314).<br><br>Any obligations that the Act created are prepetition obligations that are being discharged pursuant to the Bankruptcy Code and PROMESA. *See* DRA Opinion at 16, 19; PROMESA § 314.<br><br>The obligations under the Act were made so that PRIFA will have sufficient moneys to | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230.<br><br>If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.<br><br>The continued enforcement of the appropriation statutes would also substantially | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | repay its debt obligations to Bondholders and continue operating. Upon the effectiveness of PRIFA's qualifying modification such debt obligations will no longer be in effect.  Continuing to send the moneys and appropriate despite the debts being discharged pursuant to the Plan and the qualifying modification under Title VI of PROMESA conflicts with the discharge provisions of the Bankruptcy Code as incorporated into PROMESA. (PROMESA § 314).<br><br>Further, this statute may be repealed by Act 53-2021 if and when it becomes effective in its current form, which is expected to take place on the effective date of the Plan. | hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan.  *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion.  Amended Malhotra Decl. ¶ 64. | |
| Act 1 approved January 1, 2015; 13 L.P.R.A. § 31751a(a) | Appropriates certain excise tax revenue to PRIFA and HTA for the purpose of repaying debts and obligations of HTA. | Section 31751a(a) – Appropriates funds to Infrastructure Financing Authority Special Economic Assistance Fund and such funds are to be used by PRIFA for | Section 31751a(a) – The appropriation provisions are preempted since they impose payment obligations outside of any Oversight Board-certified budget or fiscal plan or the Plan and require payment in full of prepetition obligations.  (PROMESA §§ 202, 314). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---------|------------------------------|-------------------------------|----------------------|----------------------------------------|------------------------|
| | | repayment of HTA debts and obligations | These appropriation provisions also conflict with the purpose of PROMESA; a restructuring of the Commonwealth's obligations will be impossible if all of these appropriations remain enforceable. (PROMESA §§ 108, 314).

Any obligations that the Act created are prepetition obligations that are being discharged pursuant to the Bankruptcy Code and PROMESA. *See* DRA Opinion at 16, 19; PROMESA § 314.

The obligations under the Act were made so that HTA or PRIFA have sufficient moneys to repay its debt obligations to Bondholders and continue operating. Upon the effectiveness of the relevant plan of adjustment or qualifying modification such debt obligations will no longer be in effect. Continuing to send the moneys and appropriate despite the debts being discharged pursuant to the Plan and the qualifying modification pursuant to Title VI of PROMESA conflicts with the discharge provisions of the Bankruptcy Code as incorporated into PROMESA. (PROMESA § 314).

Further, this statute may be repealed by Act 53-2021 if and when it becomes effective in its current form, which is expected to take place on the effective date of the Plan. | debt restructurings. Amended Jaresko Decl. ¶ 230. If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.

The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.*

These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---------|------------------------------|-------------------------------|----------------------|----------------------------------------|-------------------------|
| | | | | revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion.  Amended Malhotra Decl. ¶ 64. | |
| 13 L.P.R.A. § 31751(a)(4) | Appropriates revenues derived from cigarette excise taxes to the MBA, which the MBA may pledge to the repayment of principal and interest on bonds and other obligations of the MBA. | **Section 31751(a)(4)** – Appropriates up to $10 million in cigarette excise taxes to the MBA for its corporate powers and purposes<br><br>**Section 31751(a)(4)(A)** – Provides that appropriated funds shall be covered into a special deposit account for the MBA<br><br>**Section 31751(a)(4)(C)** – Provides that appropriated funds shall be used for repayment of the MBA's bonds and other obligations, subject to the provisions of Section 8 of Article VI of the Puerto Rico Constitution | **Section 31751(a)(4)** – The appropriation provisions are preempted since they impose payment obligations outside of any Oversight Board-certified budget or fiscal plan or the Plan and require payment in full of prepetition obligations.  (PROMESA §§ 202, 314).<br><br>These appropriation provisions also conflict with the purpose of PROMESA; a restructuring of the Commonwealth's obligations will be impossible if all of these appropriations remain enforceable. (PROMESA §§ 108, 314).<br><br>Any obligations that the Act created are prepetition obligations that are being discharged pursuant to the Bankruptcy Code and PROMESA. *See* DRA Opinion at 16, 19; PROMESA § 314.<br><br>The obligations under the Act were made so that MBA will have sufficient moneys to repay its debt obligations to Bondholders and continue operating. Continuing to send the moneys and appropriate despite the debts being discharged pursuant to Plan conflicts with the discharge provisions of PROMESA. The Plan provides for a clawback claim for MBA, once the debt is | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230.<br><br>If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.<br><br>The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | discharged pursuant to PROMESA the appropriation is preempted. (PROMESA § 314).<br><br>Further, this statute may be repealed by Act 53-2021 if and when it becomes effective in its current form, which is expected to take place on the effective date of the Plan. | budget, fiscal plan, and the Plan. *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion. Amended Malhotra Decl. ¶ 64. | |
| 13 L.P.R.A. § 31751(a)(5) | Appropriates revenues derived from cigarette excise taxes to PRITA, which PRITA may transfer to the Infrastructure Financing Authority for the debt or other obligation of the Infrastructure Financing Authority. | <u>Section 31751(a)(5)</u> – Appropriates up to $36 million in cigarette excise taxes to PRITA for its corporate powers and purposes<br><br><u>Section 31751(a)(5)(A, B)</u> – Provides that appropriated funds shall be covered into a special deposit account for PRITA and specifies amount appropriated | <u>Section 31751(a)(5)</u> – The appropriation provisions are preempted since they impose payment obligations outside of any Oversight Board-certified budget or fiscal plan or the Plan. (PROMESA §§ 202, 314).<br><br>These appropriation provisions also conflict with the purpose of PROMESA; a restructuring of the Commonwealth's obligations will be impossible if all of these appropriations remain enforceable. (PROMESA §§ 108, 314).<br><br>Further, this statute may be repealed by Act 53-2021 if and when it becomes effective in | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230.<br><br>If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims | <u>Section 31751(a)(5) (A, B)</u> – During the term of the Oversight Board.<br><br><u>Section 31751(a)(5) (C, D)</u> – Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | **Section 31751(a)(5)(C)** – Provides that appropriated funds are subject to the provisions of Section 8 of Article VI of the Puerto Rico Constitution<br><br>**Section 31751(a)(5)(D)** – Provides that PRITA shall transfer funds to PRIFA for repayment of PRIFA's debts or obligations when its funds are insufficient to cover such debts or obligations | its current form, which is expected to take place on the effective date of the Plan. | contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.<br><br>The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion. Amended Malhotra Decl. ¶ 64. | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---------|------------------------------|-------------------------------|----------------------|----------------------------------------|------------------------|
| 13 L.P.R.A. § 2271v(a) | Appropriates certain excise tax revenue to CCDA, which CCDA may pledge to the repayment of principal and interest on its bonds and other obligations. | **Section 2271v(a)** – Appropriates room occupancy taxes to CCDA, which CCDA may pledge to the repayment of bonds and other obligations of CCDA, subject to Section 8 Article VI of the Puerto Rico Constitution. | **Section 2271v(a)** –The appropriation provisions are preempted since they impose payment obligations outside of any Oversight Board-certified budget or fiscal plan or the Plan and require payment in full of prepetition obligations.  (PROMESA §§ 202, 314).<br><br>These appropriation provisions also conflict with the purpose of PROMESA; a restructuring of the Commonwealth's obligations will be impossible if all of these appropriations remain enforceable. (PROMESA §§ 108, 314).<br><br>Any obligations that the Act created are prepetition obligations that are being discharged pursuant to the Bankruptcy Code and PROMESA. *See* DRA Opinion at 16, 19; PROMESA § 314.<br><br>The obligations under the Act were made so that CCDA will have sufficient moneys to repay its debt obligations to Bondholders and continue operating. Upon the effectiveness of CCDA's Title VI qualifying modification such debt obligations will no longer be in effect. Continuing to send the moneys and appropriate despite the debts being discharged pursuant to the Qualified Modification pursuant to Title IV of PROMESA conflicts with the discharge provisions of the Bankruptcy Code as incorporated into PROMESA.  (PROMESA § 314). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230.<br><br>If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.<br><br>The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan.  *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 | During the term of the Oversight Board. |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | Further, this statute may be repealed by Act 53-2021 if and when it becomes effective in its current form, which is expected to take place on the effective date of the Plan. | Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion. Amended Malhotra Decl. ¶ 64. | |
| **Act 147 enacted June 18, 1980, 23 L.P.R.A. § 104** | Appropriates 4.0% of the annual General Fund revenue to the Judicial Branch. In addition, establishes the priorities of payment for "when the available funds for a specific fiscal year are not sufficient to cover the appropriations approved for that year." | **Section 104(a)(7)** – Appropriates funds from the General Fund of the Treasury to the Judicial Branch for operating expenses. <br><br> **Section 104(c)** – Sets priority guidelines for the disbursement of public funds. | **Section 104(a)(7)** – The act imposes payment obligations and appropriations outside of any Oversight Board-certified budget or fiscal plan. (PROMESA § 202). <br><br> **Section 104(c)** – The act requires payment of prepetition debt of the Commonwealth claims discharged upon effectiveness of the Plan of Adjustment and creates payment priorities that conflict with Section 314(b)(4) of PROMESA. (PROMESA § 202). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. <br><br> If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234. <br><br> The continued enforcement of the appropriation statutes | **Section 104(a)(7)**: During the term of the Oversight Board. Section. <br><br> **Section 104(c)**: Permanent. |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion. Amended Malhotra Decl. ¶ 64. | |
| 18 L.P.R.A. § 621-1 | Appropriates certain funds to the University of Puerto Rico. | **Section 621-1(a)** – Appropriates 9.60% of the annual General Fund budget to the University of Puerto Rico. | **Section 621-1(a)** – The act imposes payment obligations and appropriations outside of any Oversight Board-certified budget or fiscal plan. (PROMESA § 202). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and | Until the debt issued pursuant to the Plan is paid in full. |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | debt restructurings. Amended Jaresko Decl. ¶ 230. If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.<br><br>The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion.  Amended Malhotra Decl. ¶ 64. | |
| **Act 83 approved August 30, 1991, as amended, 21 L.P.R.A. §§ 5002, 5004, 5006, 5815.12** | Appropriates special tax revenue for the amortization and redemption of Commonwealth obligations, compensate municipalities for certain uncollected property taxes, and appropriates certain Commonwealth funds to municipalities. | **Section 5002 (para. 1)** – Authorizes revenues of a special tax of 1.03% per annum on the appraised value of all personal and real property not exempted from taxes for the amortization and redemption of the Commonwealth general obligations.<br><br>**Section 5004(a), (c)** – Directs the product and proceeds from the taxes levied under § 5002 to the payment of principal on existing and future general obligation bonds and notes.<br><br>**Section 5006 (para. 1–2)** – Authorizes the transfer of funds for compensation of municipalities for uncollected property taxes resulting from tax exemptions. | **Section 5002 (para. 1)** – This act is preempted to the extent it requires transfers of money independent of their inclusion in an Oversight Board-certified fiscal plan or budget. (The provisions authorizing municipalities to levy an additional surtax and empowering the Municipal Revenues Collection Center to collect such taxes are not preempted.)  (PROMESA § 202).<br><br>**Section 5004(a), (c)** – This act requires payment of prepetition debt of the Commonwealth  claims discharged upon effectiveness of the Plan of Adjustment, creates payment priorities that conflict with Section 314(b)(4) of PROMESA, and requires transfers of money independent of their inclusion in an Oversight Board–certified fiscal plan or budget. (PROMESA §§ 202, 314).<br><br>**Section 5006 (para. 1–2)** – This act requires transfers of monies independent of their inclusion in an Oversight Board-certified fiscal plan or budget. (PROMESA § 202).<br><br>**Section 5815(a)–(d)** – This act requires transfers of money independent of their | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230.<br><br>If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.<br><br>The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified | **Section 5002 (para. 1)** – Permanent<br><br>**Section 5004** – Permanent.<br><br>**Section 5006 (para. 1–2)** – Until the debt pursuant to the Plan has been paid in full.<br><br>**Section 5815(a)–(d)** – During the term of the Oversight Board. |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | **Section 5815(a)–(d)** – Authorizes the transfer of funds from taxes, the Additional Lottery System, the net internal revenues of the General Fund, and fines to municipalities. | inclusion in an Oversight Board-certified fiscal plan or budget. (PROMESA § 202).<br><br>For the avoidance of doubt, the statute's provisions regarding collection of the tax are not preempted. | budget, fiscal plan, and the Plan. *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion. Amended Malhotra Decl. ¶ 64. | |
| **Act 221 approved May 15, 1948, as amended, 15 L.P.R.A. § 74** | The statute provides for the calculation of the annual net income from slot machines and distributes those incomes to slot machine operators, the Gaming Commission, and government funds including the General Fund. | **Section 74** – Calculates slot machine license fees and taxes and authorizes the distribution of the annual net income from slot machines. The collection of the taxes are not preempted. | **Section 74** – This act is preempted to the extent it requires transfers of net slot machine income independent of their inclusion in an Oversight Board-certified fiscal plan or budget. (PROMESA § 202). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230.<br><br>If they remain intact, the appropriation statutes will undermine Puerto Rico's | During term of Oversight Board. |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234. | |
| | | | | The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.* | |
| | | | | These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | billion.  Amended Malhotra Decl. ¶ 64. | |
| Act 18 approved January 24, 2014, as amended, 21 L.P.R.A. § 6742 | The statute provides for varying percentages of the Sales and Use Tax ("IVU" by Spanish acronym) to be distributed to the Municipal Administration Fund which has a waterfall distribution to the Municipal Development Fund, the Municipal Redemption Fund, and the Municipal Improvement Fund. | Section 6742(a)(1)–(3) – Provides for the distribution of funds from the Municipal Administration Fund to municipalities. | Section 6742(a)(1)–(3) – This act requires transfers of money independent of their inclusion in an Oversight Board-certified fiscal plan or budget.  (PROMESA § 202). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230.

If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234.

The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.*

These statutes contain formulas explaining the | During term of Oversight Board. |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion. Amended Malhotra Decl. ¶ 64. | |
| **Act 41 approved July 22, 2011, as amended, 12 L.P.R.A. §8105** | The statute establishes a fund to collect fees on all new tires (imported or manufactured locally) to facilitate the disposal of unusable tires from the island and provides that resources of the fund shall be allocated through regulations. | Section 8105(g) and (h) – Appropriates funds gathered from the Scrap Tire Management and Disposal Fee as provided for in regulations. | Section 8105(g) and (h) – This act authorizes transfers of money independent of their inclusion in an Oversight Board-certified fiscal plan or budget. (PROMESA § 202). | The preempted statutes require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230.<br><br>If they remain intact, the appropriation statutes will undermine Puerto Rico's restructuring and limit allowance of claims contemplated by the Oversight Board's proposed Plan. Amended Jaresko Decl. ¶ 234. | During the term of the Oversight Board. |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration of Preemption |
|---|---|---|---|---|---|
| | | | | The continued enforcement of the appropriation statutes would also substantially hamper the Oversight Board's ability to provide a method for Puerto Rico to achieve fiscal responsibility and access to capital markets, as they provide spending inconsistent with the certified budget, fiscal plan, and the Plan. *Id.*<br><br>These statutes contain formulas explaining the amount of revenues to be transferred. I used the 2021 Fiscal Plan to identify the amount of revenues to be transferred and in certain cases applied formulas in accordance with the statutes using estimates from the 2021 Fiscal Plan. The amount of Commonwealth revenues that would need to be transferred in FY 2022, if permitted by a certified budget of the Oversight Board, is more than $3.0 billion.  Amended Malhotra Decl. ¶ 64. | |

## III.    TRS and JRS Statutes

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| **Act 106** approved **August 23, 2017** | Act 106-2017 ("Act 106") provides for the liquidation of the then-remaining assets of the three public retirement systems (ERS, TRS, and JRS), the transfer of their assets (with specified exceptions) to the Commonwealth, and the Commonwealth's assumption of payment of all pensions to retired participants in the three systems, subject to reimbursement by other employers who participated in these systems of pensions paid to their respective retirees.<br><br>Act 106 also provides for the establishment of a new defined contribution plan, pursuant to which employees will contribute 8.5% of | **Section 2.3** – Provides for the continued accrual of defined benefit pension obligations under TRS and JRS<br><br>**Section 2.4(a)** – Provides for the continued accrual of defined benefit pension obligations under TRS and JRS<br><br>**Section 2.4(b)** – Provides for the continued accrual of defined benefit pension obligations<br><br>**Section 2.6** – Provides for the continued accrual of defined benefit pension obligations under TRS and JRS<br><br>**Section 3.1(b)(1)** – Excepts judges and certain teachers from participation in the defined contribution accounts and provides for continued participation for | **Section 2.3** – The Act provides for the continued accrual and payment of defined benefit pension obligations in violation of the TRS freeze in the Plan (Plan Art. LV) and Fiscal Plan (Fiscal Plan at 284).  (PROMESA §§ 202, 314).<br><br>**Section 2.4(a)** - The Act provides for the continued accrual and payment of defined benefit pension obligations in violation of the TRS freeze in the Plan (Plan Art. LV) and Fiscal Plan (Fiscal Plan at 284).  (PROMESA §§ 202, 314).<br><br>**Section 2.4(b)** - The Act provides for the continued accrual and payment of defined benefit pension obligations in violation of the TRS freeze in the Plan (Plan Art. LV) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 2.6** - The Act provides for the continued accrual and payment of defined benefit pension obligations in violation of the TRS freeze in the Plan (Plan Art. LV) and Fiscal Plan (Fiscal Plan at 284).  (PROMESA §§ 202, 314).<br><br>**Section 3.1(b)(1)** – The Act requires minimum mandatory individual contributions to the defined contribution accounts in | The Oversight Board has determined the freeze of the TRS and JRS pension plans is essential to achieving the goals of PROMESA, as it will result in net savings of $4.7 billion over the next 30 years. Supplemental Levy Decl. [ECF No. 19059], ¶ 14.<br><br>Each of the cited sections, other than Section 3.6(a)(2), is inconsistent either with the freeze of JRS and TRS, or with the treatment the Plan proposes to provide affected participants on account of the freeze.<br><br>With respect to Section 3.6(a)(2), AFSCME has requested, and the Oversight Board has agreed, a default investment for Commonwealth contributions under Sections 55.7 and 55.10 of the Plan that will provide an opportunity for investment return is better for participants than an investment that merely preserves the principal contributions.  This will further the Oversight Board's goal, consistent with PROMESA, of enhancing retirement funding for current government employees. | The preemption of Section 3.6(a)(2) only applies to the one-time contributions to be made to active ERS and System 2000 participants under Sections 55.7 and 55.10.<br><br>Because the Oversight Board requires the permanent freeze of TRS and JRS and conversion of the retirement plans of participants to the Act 106 defined contribution plan, the preemption of the remaining implicated sections of Act 106 must be permanent. |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | their salaries to individual retirement accounts.  All ERS participants, and all TRS participants hired after July 31, 2014 are required to participate in this new defined contribution plan, and teachers hired before August 1, 2014, plus all JRS participants, may participate but are not required.<br><br>Act 106 further provides that the default investment option for deposits into the defined contribution plan shall include a guarantee of the principal amount of contributions, which implicitly means there will be little or no return on investment.<br><br>Act 106 further provides that TRS and JRS shall remain unfrozen, and participants in these systems shall | these participants in the defined benefit plans<br><br>**Section 3.4** – Requires participants to contribute a minimum of 8.5% of such participants' monthly salary to their defined contribution accounts each month.<br><br>**Section 3.6(a)(2)** – Establishes as a default investment for Act 106 contributions an instrument that guarantees the return of principal. | the amount of 8.5% of the subject participant's monthly salary in violation of the Plan.  This minimum contribution shall continue to apply to all Act 106 plan participants except for TRS and JRS pension plan participants who will be enrolled in social security under the Plan, whose minimum contribution is reduced to 2.3% under the Plan, as they will be making payments to social security of 6.2% (for a total of the 8.5% Act 106 requires to be paid to the defined contribution plan).  Plan § 55.9.  (PROMESA § 314).<br><br>**Section 3.4** – The Act requires minimum mandatory individual contributions to the defined contribution accounts in the amount of 8.5% of the subject participant's monthly salary in violation of the Plan which provides for certain participants to be able to reduce their contribution to 2.3% as they will be making payments to social security of 6.2% (for a total of the 8.5% Act 106 requires to be paid to the defined contribution plan).  Plan § 55.9.  (PROMESA § 314).<br><br>**Section 3.6(a)(2)** – Establishes s a default investment for Act 106 contributions an instrument that guarantees the return of principal. This section is inconsistent with | | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---------|------------------------------|-------------------------------|----------------------|---------------------------------------|----------|
| | continue to make contributions to and accrue benefits under these systems in accordance with their enabling acts. | | the Plan, and is therefore preempted, only with respect to the contributions to be made by the Commonwealth to the Act 106 accounts for active ERS participants in Classes 51G and 51J under the Plan (sections 55.7 and 55.10 of the Plan), which will be subject to a default investment in target retirement date funds unless the participants chooses otherwise. (PROMESA § 314). All other contributions by employees to the Act 106 accounts shall be subject to the default investment set forth in Section 3.6(a)(2).<br><br>The Plan provides for the freeze of the defined benefit plans of TRS and JRS.  In consideration for the freeze of these plans, affected participants will be required to enroll in the Act 106 defined contribution plan, such that enrollment in this plan will no longer be voluntary for any participants in the TRS and JRS systems.  In addition, any TRS or JRS participant to be enrolled in social security under the Plan will be subject to a reduced contribution requirement of 2.3% of salary, as they will be making payments to social security of 6.2% (for a total of the 8.5% Act 106 requires to be paid to the defined contribution plan). | | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | | | Finally, the treatment of active ERS participants in Classes G and J of the Plan require certain contributions into the Act 106 accounts by the Commonwealth, with a default investment of these funds in target retirement date funds closest to the year in which each participant will reach age 65 applicable to each participant. (PROMESA § 314). | | |
| **Act 160 approved December 24, 2013**<br><br>**18 L.P.R.A. § 393-399d** | Act 160-2013 creates a new teachers' retirement system ("TRS"), and repeals Act 91-2004. Among other things, the act provides a framework to determine payments into and from the retirement system. The act indicates that the retirement system will receive additional Commonwealth funds to make up a deficit in the system. | **Section 3.11** – Provides for a minimum pension benefit for certain participants<br><br>**Section 4.1** - Establishes the Commonwealth's responsibility to appropriate funds to finance pensions<br><br>**Section 4.3(b)** – Establishes employer contributions of up to 20.25% of monthly salary obligations to participants<br><br>**Section 4.4** – Establishes defined benefit pension obligations | **Section 3.11** – The Act requires the payment of minimum pension benefits for certain participants in violation of the Fiscal Plan (Fiscal Plan at 275) and the treatment of pensions under the Plan (Plan Art. LV). (PROMESA §§ 202, 314).<br><br>**Section 4.1** – The Act provides for the appropriation of funds to TRS that are not provided for in the budget or Fiscal Plan, and which conflict with the Plan's provisions freezing TRS pension benefit accruals and transferring all participants to the defined contribution plans established under Act 106. Plan § 55.9. (PROMESA §§ 202, 314).<br><br>**Section 4.3(b)** – The Act requires employers, including covered instrumentalities, to make payments not accounted for in the Fiscal Plan and budget. (PROMESA § 202). | Absent the freeze of the TRS defined benefit pension system, "the Plan would not be consistent with the Fiscal Plan which provides for the Pension Freeze . . . and, in my view, the Plan would be at risk of not being feasible or capable of being implemented." Supplemental Jaresko Decl. [ECF No. 19058], ¶ 13.<br><br>"According to the Plan, the Pension Freeze . . . will be implemented on the Plan Effective Date, and pursuant to the Fiscal Plan, will produce significant savings over time (growing to over $300 million per year by FY2046), and these savings play a major role in restoring long-term adequate funding of pensions." Supplemental Jaresko Decl. [ECF No. 19058], ¶ 13. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | | **Section 4.5(b)** – Establishes disability pension benefits for certain participants, calculated using a defined benefit formula<br><br>**Section 4.6** – Sets forth the method of calculating the disability pensions provided in § 4.5 using a defined benefit formula<br><br>**Section 4.9(b)** – Requires the Commonwealth to make an annual contribution to TRS in the amount of $1,675 per participant<br><br>**Section 5.6** – Requires employer contributions to be paid in accordance with § 4.3(b).<br><br>**Section 7.1** – Establishes appropriations from the Commonwealth to TRS to fund pension obligations | **Section 4.4** – The Act creates defined benefit pension obligations in violation of the TRS freeze in the Plan (Plan § 55.9) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 4.5(b)** – The Act creates defined benefit pension obligations for certain disabled participants in violation of the TRS freeze in the Plan (Plan § 55.9) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 4.6** – The Act creates defined benefit pension obligations for certain disabled participants in violation of the TRS freeze in the Plan (Plan § 55.9) and Fiscal Plan (Fiscal Plan at 284).<br><br>**Section 4.9(b)** – The Act requires the Commonwealth to make contributions to TRS without Oversight Board approval and which contributions are not provided in the budget, and conflict with the Fiscal Plan, and the freeze of TRS under the Plan. Post-Effective Date, all teachers' pensions will be administered on a "PayGo" basis as established under Act 106. Plan § 55.9. (PROMESA §§ 202, 314).<br><br>**Section 5.6** – The Act requires employers, including covered | "[I]t is my understanding that the statutes listed in Section III of Exhibit K require the Commonwealth to provide pension and other benefits or payments to various retirees at specified rates without regard to whether such pensions and other benefits are provided for in a certified budget or fiscal plan or Title III plan of adjustment. If these statutes were to continue to operate or otherwise had to be complied with in full, they would undermine the restructuring contemplated by the present Plan, which [among other things] eliminate[s] future accruals of pension benefits altogether." Jaresko Decl. [ECF No. 18729], ¶ 235.<br><br>"Based on the estimated savings identified in [the Levy Decl. [ECF No. 18737]], the aggregate cost to the Fiscal Plan of eliminating the pension freezes, which includes the Pension Freeze and elimination of COLAs, is approximately $5.6 billion." Supplemental Levy Decl. [ECF No. 19059], ¶ 13.<br><br>"By 2047, the incremental cost associated with not implementing the Pension | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | | | instrumentalities, to make payments not accounted for in the Fiscal Plan and budget. (PROMESA § 202).<br><br>**Section 7.1** – The Act requires hundreds of millions of dollars to be appropriated to TRS annually without Oversight Board approval and in violation of the budget, Fiscal Plan, and the Plan's freeze of TRS.  Plan § 55.9.  (PROMESA §§ 202, 314). | Freeze and maintaining COLAs is estimated to increase the annual PayGo costs in the Fiscal Plan projections by 25%".  Supplemental Levy Decl. [ECF No. 19059], ¶ 15.<br><br>"The 2021 Fiscal Plan reflects freeze provisions that are comparable to the ERS freeze that was implemented in 2013, with the following key aspects: . . . Minimum benefits and bonuses will be eliminated for future retirements . . . and future terminations due to disability will be entitled to the same benefits as regular terminations."  Fiscal Plan at 275.<br><br>The Fiscal Plan requires the freeze of JRS and TRS and the transition of all judges and pre-2014 teachers to the segregated defined contribution accounts. Fiscal Plan at 284. | |
| **Act 91 of March 29, 2004**<br><br>**18 L.P.R.A. § 391-392w**<br><br>**Repealed by Act 160** | Act 91-2004, the prior act governing the TRS, required (among other things) the Commonwealth to contribute funds to the retirement system for each teacher employed by the Commonwealth. | **Section 14** – Establishes the Commonwealth's responsibility to appropriate funds to finance pensions<br><br>**Section 20** – Authorizes certain government employees to | **Section 14** – The Act provides for the appropriation of funds to TRS that are not provided for in the budget or Fiscal Plan, and which conflict with the Plan's provisions freezing TRS pension benefit accruals and transferring all participants to the defined contribution plans established under Act 106.  Plan § 55.9. (PROMESA §§ 202, 314). | Absent the freeze of the TRS defined benefit pension system, "the Plan would not be consistent with the Fiscal Plan which provides for the Pension Freeze . . . and, in my view, the Plan would be at risk of not being feasible or capable of being implemented." Supplemental Jaresko Decl. [ECF No. 19058], ¶ 13. | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | | participate in TRS, subject to withholding 9% of their salary<br><br>**Section 25** – Establishes a minimum pension benefit<br><br>**Section 29** – Establishes disability pension benefits for certain participants, calculated using a defined benefit formula<br><br>**Section 35** – Establishes certain death benefits for pensioners' beneficiaries and heirs, including benefits for school-age children<br><br>**Section 40** – Establishes defined benefit pension obligations<br><br>**Section 47** – Establishes appropriations from the Commonwealth | **Section 20** – The Act provides certain education-related government employees to participate in the TRS defined benefit pension plans in violation of the TRS freeze in the Plan (Plan § 55.9) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 25** – The Act requires the payment of minimum pension benefits for certain participants in violation of the Fiscal Plan (Fiscal Plan at 275) and the treatment of pensions under the Plan (Plan Art. LV). (PROMESA §§ 202, 314).<br><br>**Section 29** – The Act creates defined benefit pension obligations for certain disabled participants in violation of the TRS freeze in the Plan (Plan § 55.9) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 35** – The Act creates death benefits for pensioners' beneficiaries, including providing children enrolled in school with shares of their deceased parent's defined benefit pensions in violation of the TRS freeze in the Plan (Plan § 55.9) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314). | "According to the Plan, the Pension Freeze . . . will be implemented on the Plan Effective Date, and pursuant to the Fiscal Plan, will produce significant savings over time (growing to over $300 million per year by FY2046), and these savings play a major role in restoring long-term adequate funding of pensions." Supplemental Jaresko Decl. [ECF No. 19058], ¶ 13.<br><br>"[I]t is my understanding that the statutes listed in Section III of Exhibit K require the Commonwealth to provide pension and other benefits or payments to various retirees at specified rates without regard to whether such pensions and other benefits are provided for in a certified budget or fiscal plan or Title III plan of adjustment.  If these statutes were to continue to operate or otherwise had to be complied with in full, they would undermine the restructuring contemplated by the present Plan, which [among other things] eliminate[s] future accruals of pension benefits altogether."  Jaresko Decl. [ECF No. 18729], ¶ 235. | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | | to TRS to fund pension obligations<br><br>**Section 48** – Establishes appropriations from the Commonwealth to TRS to fund pension obligations<br><br>**Section 49** – Requires the Secretary of Treasury to apply Commonwealth revenues to fund pension obligations | **Section 40** – The Act creates defined benefit pension obligations in violation of the TRS freeze in the Plan (Plan § 55.9) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 47** – The Act requires hundreds of millions of dollars to be appropriated to TRS annually without Oversight Board approval and in violation of the budget, Fiscal Plan, and the Plan's freeze of TRS. Plan § 55.9. (PROMESA §§ 202, 314).<br><br>**Section 48** – The Act requires hundreds of millions of dollars to be appropriated to TRS annually without Oversight Board approval and in violation of the budget, Fiscal Plan, and the Plan's freeze of TRS. Plan § 55.9. (PROMESA §§ 202, 314).<br><br>**Section 49** – The Act requires the Secretary of Treasury to transfer certain surplus funds to TRS in violation of the budget, Fiscal Plan, and Plan provisions which allocate surplus funds to, among other things, the Pension Reserve Trust. (PROMESA §§ 202, 314). | "Based on the estimated savings identified in [the Levy Decl. [ECF No. 18737]], the aggregate cost to the Fiscal Plan of eliminating the pension freezes, which includes the Pension Freeze and elimination of COLAs, is approximately $5.6 billion." Supplemental Levy Decl. [ECF No. 19059], ¶ 13.<br><br>"By 2047, the incremental cost associated with not implementing the Pension Freeze and maintaining COLAs is estimated to increase the annual PayGo costs in the Fiscal Plan projections by 25%". Supplemental Levy Decl. [ECF No. 19059], ¶ 15.<br><br>"The 2021 Fiscal Plan reflects freeze provisions that are comparable to the ERS freeze that was implemented in 2013, with the following key aspects: . . . Minimum benefits and bonuses will be eliminated for future retirements . . . and future terminations due to disability will be entitled to the same benefits as regular terminations." Fiscal Plan at 275.<br><br>The Fiscal Plan requires the freeze of JRS and TRS and the | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | | | | transition of all judges and pre-2014 teachers to the segregated defined contribution accounts. Fiscal Plan at 284. | |
| **Act 12 approved October 19, 1954**<br><br>**4 L.P.R.A. § 233-246** | Act 12-1954 creates JRS. The act, in relevant part, provides the structure of the retirement system and the amount of funds the Commonwealth is required to contribute as well as the purpose for those Commonwealth contributions. | **Article 4** – Establishes defined benefit pension for judges<br><br>**Article 6** – Establishes disability pension benefits for certain participants, calculated using a defined benefit formula<br><br>**Article 8** – Establishes certain death benefits for pensioners' beneficiaries and heirs | **Article 4** – The Act creates defined benefit pension obligations in violation of the JRS freeze in the Plan (Plan § 55.8) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Article 6** – The Act creates defined benefit pension obligations for certain disabled participants in violation of the JRS freeze in the Plan (Plan § 55.8) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Article 8** – The Act creates additional death benefits in violation of the JRS freeze in the Plan (Plan § 55.8, Exhibit E) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314). | Absent the freeze of the JRS defined benefit pension system, "the Plan would not be consistent with the Fiscal Plan which provides for the Pension Freeze . . . and, in my view, the Plan would be at risk of not being feasible or capable of being implemented." Supplemental Jaresko Decl. [ECF No. 19058], ¶ 13.<br><br>"According to the Plan, the Pension Freeze . . . will be implemented on the Plan Effective Date, and pursuant to the Fiscal Plan, will produce significant savings over time (growing to over $300 million per year by FY2046), and these savings play a major role in restoring long-term adequate funding of pensions." Supplemental Jaresko Decl. [ECF No. 19058], ¶ 13.<br><br>"[I]t is my understanding that the statutes listed in Section III of Exhibit K require the Commonwealth to provide pension and other benefits or payments to various retirees at specified rates without regard to whether such pensions and | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---------|------------------------------|-------------------------------|----------------------|----------------------------------------|----------|
| | | | | other benefits are provided for in a certified budget or fiscal plan or Title III plan of adjustment.  If these statutes were to continue to operate or otherwise had to be complied with in full, they would undermine the restructuring contemplated by the present Plan, which [among other things] eliminate[s] future accruals of pension benefits altogether."  Jaresko Decl. [ECF No. 18729], ¶ 235.<br><br>"Based on the estimated savings identified in [the Levy Decl. [ECF No. 18737]], the aggregate cost to the Fiscal Plan of eliminating the pension freezes, which includes the Pension Freeze and elimination of COLAs, is approximately $5.6 billion."  Supplemental Levy Decl. [ECF No. 19059], ¶ 13.<br><br>"By 2047, the incremental cost associated with not implementing the Pension Freeze and maintaining COLAs is estimated to increase the annual PayGo costs in the Fiscal Plan projections by 25%".  Supplemental Levy Decl. [ECF No. 19059], ¶ 15. | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | | | | "The 2021 Fiscal Plan reflects freeze provisions that are comparable to the ERS freeze that was implemented in 2013, with the following key aspects: . . . Minimum benefits and bonuses will be eliminated for future retirements . . . and future terminations due to disability will be entitled to the same benefits as regular terminations."  Fiscal Plan at 275.

The Fiscal Plan requires the freeze of JRS and TRS and the transition of all judges and pre-2014 teachers to the segregated defined contribution accounts. Fiscal Plan at 284. | |
| **Act 162 approved on December 24, 2013** | Act 162-2013 amends the retirement system for the Commonwealth's judiciary ("JRS") and creates a new defined benefit and defined contribution Hybrid Program applicable to future Commonwealth judges.  The act, among other things, amends pension calculations, amends the contribution amount of system | **Section 2** – Establishes defined benefit pension for judges

**Section 3** – Establishes certain increased defined benefit pensions for certain judges

**Section 5** – Establishes the defined benefit portion of the hybrid system pension obligations for | **Section 2** – The Act creates defined benefit pension obligations in violation of the JRS freeze in the Plan (Plan § 55.8) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).

**Section 3** – The Act creates defined benefit pension obligations in violation of the JRS freeze in the Plan (Plan § 55.8) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).

**Section 5** – The Act creates defined benefit pension obligations in violation of the JRS freeze in the Plan (Plan § 55.8) and Fiscal | Absent the freeze of the JRS defined benefit pension system, "the Plan would not be consistent with the Fiscal Plan which provides for the Pension Freeze . . . and, in my view, the Plan would be at risk of not being feasible or capable of being implemented." Supplemental Jaresko Decl. [ECF No. 19058], ¶ 13.

"According to the Plan, the Pension Freeze . . . will be implemented on the Plan Effective Date, and pursuant to the Fiscal Plan, will produce significant savings over time | Permanent |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | participants, establishes contribution accounts for the Hybrid Program of the Commonwealth's new JRS, and amends summer and Christmas bonus provisions. | judges hired after July 1, 2014<br><br>**Section 6** – Establishes certain disability pension benefits for participants hired after July 1, 2014, calculated using a defined benefit formula<br><br>**Section 11** – Establishes the defined contribution portion of the hybrid pension system for judges hired after July 1, 2014, including a guaranteed return on investment and employer contributions<br><br>**Section 12** – Provides for defined benefit pension obligations for certain participants<br><br>**Section 13** – Establishes a Christmas bonus for participants | Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 6** – The Act creates defined benefit pension obligations for certain disabled participants in violation of the JRS freeze in the Plan (Plan § 55.8) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 11** – The Act creates a hybrid system, whereby certain judges are entitled to defined benefits in the form of lifetime annuities and defined contributions. The rights created under the Act, including the guaranteed return on investment, conflict with the treatment of pension obligations under the Plan whereby participants will be enrolled in the Act 106 defined contribution accounts that do not include such rights. (PROMESA § 314).<br><br>**Section 12** – The Act creates defined benefit pension obligations in violation of the JRS freeze in the Plan (Plan § 55.8) and Fiscal Plan (Fiscal Plan at 284). (PROMESA §§ 202, 314).<br><br>**Section 13** – The Act entitles participants to receive a Christmas bonus in the annual amount of up to $600 per participant in violation | (growing to over $300 million per year by FY2046), and these savings play a major role in restoring long-term adequate funding of pensions." Supplemental Jaresko Decl. [ECF No. 19058], ¶ 13.<br><br>"[I]t is my understanding that the statutes listed in Section III of Exhibit K require the Commonwealth to provide pension and other benefits or payments to various retirees at specified rates without regard to whether such pensions and other benefits are provided for in a certified budget or fiscal plan or Title III plan of adjustment. If these statutes were to continue to operate or otherwise had to be complied with in full, they would undermine the restructuring contemplated by the present Plan, which [among other things] eliminate[s] future accruals of pension benefits altogether." Jaresko Decl. [ECF No. 18729], ¶ 235.<br><br>"Based on the estimated savings identified in [the Levy Decl. [ECF No. 18737]], the aggregate cost to the Fiscal Plan of eliminating the pension freezes, which includes the Pension Freeze and elimination | |

| Statute | Brief Description of Statute | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| | | **Section 14** – Establishes a Summer bonus for participants | of the Plan, which eliminates such benefit (Plan, Exhibit E). (PROMESA § 314).<br><br>**Section 14** – The Act entitles participants to receive a Summer bonus in the annual amount of up to $100 per participant in violation of the Plan, which eliminates such benefit (Plan, Exhibit E). (PROMESA § 314). | of COLAs, is approximately $5.6 billion." Supplemental Levy Decl. [ECF No. 19059], ¶ 13.<br><br>"By 2047, the incremental cost associated with not implementing the Pension Freeze and maintaining COLAs is estimated to increase the annual PayGo costs in the Fiscal Plan projections by 25%". Supplemental Levy Decl. [ECF No. 19059], ¶ 15.<br><br>"The 2021 Fiscal Plan reflects freeze provisions that are comparable to the ERS freeze that was implemented in 2013, with the following key aspects: . . . Minimum benefits and bonuses will be eliminated for future retirements . . . and future terminations due to disability will be entitled to the same benefits as regular terminations." Fiscal Plan at 275.<br><br>The Fiscal Plan requires the freeze of JRS and TRS and the transition of all judges and pre-2014 teachers to the segregated defined contribution accounts. Fiscal Plan at 284. | |

## IV.    Article VI of the Puerto Rico Constitution

| Article | Brief Description of Article | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---|---|---|---|---|---|
| **Article VI, Sections 6 and 8** | These provisions of the Puerto Rico Constitution require the Commonwealth to appropriate any pay certain operating expenses and payments on "public debt," and provide the order in which disbursements are to be made if available revenues for any fiscal year are insufficient to meet the appropriations for that year. | **Article VI, Section 6** – States that, if at the end of any fiscal year, the appropriations necessary for the ordinary operating expenses of the Government and for the payment of debt service on public debt for the ensuing fiscal year shall not have been made, the amounts appropriated in the last appropriation acts for such operating expenses and debt service shall continue in effect, and the Governor shall authorize payments necessary for such purpose until further appropriations are made.

**Article VI, Section 8** – Provides that, if available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, debt service on the public debt shall be paid first, and other disbursements shall | Whether the rights provided by Article VI, Sections 6 and 8 of the Puerto Rico Constitution to General Obligation bonds and Commonwealth-guaranteed bonds or indebtedness restructured pursuant to the Plan are preempted by PROMESA is settled by the treatment of such bonds and indebtedness pursuant to the provisions of the Plan. Nothing in the Plan affects or determines whether Article VI, Sections 6 and 8 of the Puerto Rico Constitutions is preempted for any future purpose.

These sections provide for payment of debt service that is not provided for in the Fiscal Plan or the Plan, and may give certain bonds priority not otherwise provided for in PROMESA, the Plan, or the Fiscal Plan that may require payment in full of prepetition obligations being restructured pursuant to the Plan. (PROMESA §§ 202, 314). | Statutes or other laws authorizing payment in full of debt service on existing general obligation bonds and guaranteed loans, if permitted by a certified budget of the Oversight Board, would be over $1.7 billion for fiscal year 2022 alone. *See* Amended Malhotra Decl. ¶ 63.

Any Puerto Rico statute or other law requiring the Commonwealth to pay claims in full is inconsistent with Title III of PROMESA as manifested by the restructuring contained in the Plan. Amended Jaresko Decl. ¶ 231.

The preempted statutes and laws require appropriations, transfers, or debt payments inconsistent with the Oversight Board's powers under PROMESA to control fiscal plans, budgets, and debt restructurings. Amended Jaresko Decl. ¶ 230. | To the extent it authorizes payment in full of pre-petition obligations, permanent. |

| Article | Brief Description of Article | Specific Provisions Preempted | Basis for Preemption | Record Evidence Supporting Preemption | Duration |
|---------|-----------------------------|-------------------------------|----------------------|---------------------------------------|----------|
|  |  | thereafter be made in accordance with the order of priorities established by law. |  |  |  |