## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY ("PREPA")<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: 17-BK-04780-LTS, ECF No. 2590** |

### JOINT STATUS REPORT PURSUANT TO AUGUST 10, 2021 ORDER
### DENYING COBRA ACQUISITIONS LLC'S MOTION TO LIFT THE STAY ORDER

To the Honorable United States District Judge Laura T. Swain:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with PREPA and the Oversight Board, the "Government Parties") and Cobra Acquisitions LLC ("Cobra" and, together with the Government Parties, the "Parties"), respectfully submit this joint Status Report pursuant to the Court's *Order Denying Cobra Acquisitions LLC's Motion to Lift the Stay Order*, dated August 10, 2021 [ECF No. 2590] ("August 2021 Stay Order"),[2] which directed the Parties to file a status report. The Parties respectfully state as follows:

## I. Background

1. On April 6, 2021, Cobra filed a motion to lift the stay [ECF No. 2428] (the "April 2021 Lift Stay Motion") applicable to Cobra's *Motion for Allowance and Payment of Administrative Expense Claims*, dated September 30, 2019 [Case No. 17-3283, ECF No. 8789] (the "Administrative Expense Motion"), which the Government Parties opposed [ECF No. 2507]. On June 14, 2021, the Court entered an order [ECF No. 2520] adjourning the hearing on the April 2021 Lift Stay Motion and directing the Parties to file a status report explaining: (i) the Parties' position on the tax gross up associated with the work/costs that the Determination Memorandum[3] indicates FEMA found ineligible; (ii) whether and when a second FEMA Cost Analysis and Determination Memorandum concerning the Second Contract is expected to be issued; (iii) the

---

[2] Docket numbers refer to Case No. 17-4780 unless otherwise noted.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Joint Status Report Pursuant to June 14, 2021 Order Adjourning Cobra Acquisitions LLC's Motion to Lift Stay Order* filed on July 20, 2021 [ECF No. 2563] (the "July 2021 Status Report").

status of the related criminal proceedings; and (iv) the Parties' positions concerning whether the liquidation of Cobra's administrative expense claim is necessary in advance of PREPA's plan confirmation process. On July 20, 2021, the Parties filed the July 2021 Status Report stating their positions on the designated topics.

2. On August 10, 2021, after hearing oral argument at the August 4, 2021 omnibus hearing, the Court entered the August 2021 Stay Order, denying Cobra's April 2021 Lift Stay Motion and directing the Parties to file this Status Report.

### II. Status Regarding the First Contract

3. On May 25, 2021, FEMA issued a Determination Memorandum with respect to the First Contract, finding:

　　a. Of the $945 million invoiced[4] by Cobra under the First Contract, $46.7 million was not payable under the contract in part because Cobra did not have an alleged minimum number of linemen in Puerto Rico at the outset of the contract ($22 million), because Cobra employed more than an alleged contract maximum of personnel working in Puerto Rico on 43 days in 2018 ($24 million), or because lodging costs incurred to house Cobra's management team and safety personnel were duplicative to field lodging costs ($133,800); and

　　b. Tax gross up costs under the First Contract are eligible for FEMA reimbursement, documentation supporting the tax gross up must be supplied at closeout of the First Contract grant, and FEMA will not reimburse the cost of

---

[4] The aggregate amount for which PREPA sought reimbursement under the First Contract ($944.7 million) was approximately $700,000 less than the $945.4 million FEMA initially obligated. Accordingly, FEMA also de-obligated this $700,000 difference in addition to the $46 million it determined is not payable under the First Contract, for a total de-obligation of $46.7 million.

3

tax gross up paid on amounts that FEMA disallows as not payable under the contract.

4. On July 23, 2021, with aid from Cobra, PREPA timely filed an administrative appeal of the $46.7 million disallowance. The appeal requested FEMA to approve the full amount disallowed and to schedule meetings with PREPA necessary to complete FEMA's review in a timely manner. On January 5, 2022, PREPA received a request for information ("RFI") from FEMA in connection with the appeal. PREPA's response is due February 4, 2022 and PREPA's counsel has contacted Cobra's counsel to assemble information in response to this RFI and Cobra has provided the requested additional information. Upon PREPA's submission of its response, FEMA's 90-day period for determination of the appeal renews. If it does not receive a decision from FEMA within 180 days after the appeal was received by FEMA, PREPA can file a demand for arbitration, which period was not restarted by FEMA's RFI.[5]

5. In addition, PREPA retained the services of a tax advisor to evaluate the documentation supporting Cobra's tax gross-up invoices with respect to the First Contract,[6] and render an opinion on the amounts invoiced whereby Cobra's parent entity can obtain a foreign tax credit. After the parties entered into a non-disclosure agreement, Cobra agreed to provide certain

---

[5] The FEMA dispute resolution process allows an applicant for disaster assistance to appeal any adverse decision regarding eligibility or funding to the relevant FEMA Regional office. Upon issuance of a decision denying any part of the appeal, an applicant may submit a second appeal to FEMA Headquarters or, if the disputed amount is at least $500,000, a Request for Arbitration to the Civilian Board of Contract Appeals. The arbitration option is also available if the FEMA Regional office receives an appeal and fails to issue a decision for 180 days. The Cobra first contract appeal (filed with Central Office of Response, Recovery, and Resilience (COR3) on July 23, 2021) was forwarded by COR3 to FEMA on September 21, 2021 with the recommendation that FEMA reconsider its determination to de-obligate the $46.7 million and find that PREPA is eligible to receive the total amount of costs claimed. Accordingly, the 180 day period that allows PREPA to file for arbitration even in the absence of a first appeal decision from FEMA expires on Sunday, March 20, 2022. The first opportunity to file for arbitration is Monday, March 21, 2022.

[6] FEMA noted in the Determination Memorandum (DM) regarding the First Contract that Cobra had invoiced PREPA $76,717,644.43 for Cobra's payments of taxes on revenue earned from the First Contract pursuant to a "tax gross-up" provision, in which PREPA agreed to cover any tax payments by Cobra to any governmental authority of Puerto Rico in excess of 8.5% of the amounts invoiced by Cobra under the contract.

tax-related documents for the tax advisor's evaluation and did so in September 2021. On November 17, 2021, the tax advisor requested missing and additional information from Cobra so that the evaluation could be completed. Cobra's affiliate has recently acknowledged the request and Cobra's response is pending. PREPA's appeal also includes amounts invoiced under the tax gross-up provision that might be subject to FEMA de-obligation (approximately $3.1 million of the approximately $46.7 million) if FEMA does not reverse applicable findings in its Determination Memorandum.[7]

### III. Status Regarding the Second Contract

6. On July 15, 2021, PREPA was advised orally by FEMA that it commenced review of the Second Contract and that FEMA's intent was to complete work on this project and issue a Determination Memorandum before December 31, 2021. PREPA has not received any update from FEMA as to when it anticipates completion on this project to occur.

7. Cobra invoiced PREPA for a total of approximately $395.7 million under the Second Contract. FEMA initially obligated $250 million under Project Worksheet ("PW") 466 to reimburse costs under the Second Contract at 100% federal cost share. The cost share was later reduced to 90% for costs incurred after August 16, 2018 (with a 10% match requirement to be paid by PREPA). As a result, to avoid obligating costs at two different cost shares under one PW, FEMA advised it would reduce the obligation under PW 466 (as explained further below) to only those costs incurred subject to 100% federal cost share (costs incurred through August 16, 2018) and

---

[7] FEMA has specifically stated that "FEMA will at [closeout] time deduct the amount of the taxes included in the actual amount of taxes paid that are associated with the ineligible work/costs addressed in this DM." Determination Memorandum at 5.

5

create a new project, Project No. 49831, for the costs incurred subject to the 90% cost share (costs incurred after August 16, 2018).

8. As to PW 466 (costs incurred under the Second Contract through August 16, 2018 and subject to a 100% federal cost share), PREPA understands that, in accordance with the normal FEMA cost review process, cost validation review on the costs incurred under this PW are ongoing. PREPA's review of FEMA reporting indicates the project remains pending in FEMA's Consolidated Resources Center (CRC) review and has been determined to comply with Environmental and Historic Preservation laws, regulations, and executive orders. PREPA believes additional RFIs in connection with this PW may be possible.

9. While FEMA initially obligated $250 million under PW 466 to cover costs incurred under the Second Contract, as noted above, to avoid the application of two different cost share formulas under one PW, FEMA advised it would limit funding under PW 466 to those costs subject to the 100% cost share and prepare a new project (Project No. 49831) for the costs incurred subject to the 90% cost share.

10. PREPA is advised that FEMA is in the process of de-obligating a portion of PW 466 so that it captures only those costs incurred through August 16, 2018—a total of $57,672,358. Of this amount, $51,620,296.43 has already been disbursed to PREPA and paid to Cobra, in addition to $398,638 that PREPA has paid out of pocket and for which it will seek federal reimbursement from the obligated amounts.

11. As to Project No. 49831 (costs incurred under the Second Contract after August 16, 2018 and subject to a 90% federal cost share), PREPA's review of FEMA reporting indicates the project has progressed to, and remains pending in, CRC review. PREPA has received eleven RFIs from FEMA for this project and responded to all except two—those two responses are in process.

FEMA recently reassigned its Program Delivery Manager ("PDMG") assigned to PREPA, and PREPA intends to meet with the new PDMG to discuss the status of all RFIs. FEMA has yet to obligate any funding under Project No. 49831. To date, PREPA has paid Cobra $149,992,249, and PREPA will seek federal reimbursement from the amounts eventually obligated under this project.

12. Following the August 10, 2021 hearing, PREPA and Cobra began a process of reconciling approximately $159.5 million in invoices issued pursuant to the Second Contract that had not yet been submitted to FEMA. Since then, representatives of PREPA and Cobra have consistently held bi-weekly meetings to review remaining discrepancies regarding Cobra's invoices (the "Review Process"). These meetings have generally focused on discussing categories of issues with respect to the invoices and RFIs issued by FEMA's CRC team.

13. Approximately $90 million of these invoices remained unpaid due to discrepancies in personnel headcounts on the invoices as compared to reports prepared by PREPA's inspection contractor. An analysis of the issue was performed and, as a result, PREPA has submitted these invoices to FEMA for reimbursement.

14. PREPA has not received any additional payments from FEMA on account of its obligation in connection with the Second Contract since the July 2021 Status Report.

15. To summarize, with respect to the First Contract, approximately $945 million was invoiced by Cobra and obligated by FEMA. Approximately $892 million has been paid to Cobra ($852 million funded by FEMA and $39.6 million paid by PREPA). Approximately $46.7 million was rejected by FEMA and is under appeal.

16. With respect to PW 466 (the Second Contract), $250 million was initially obligated, and is expected to be reduced to approximately $57 million to cover only the 100% cost share period. Approximately $51 million of this amount has been paid by FEMA and approximately

$400,000 has been paid by PREPA. With respect to PW 49831 (the Second Contract), no amounts have been obligated by FEMA yet. Approximately $150 million has been paid by PREPA. Accordingly, with respect to the Second Contract, approximately $201 million has been paid to Cobra. Of the approximately $159 million of invoices initially under review at PREPA, $90 million in invoices has been submitted to FEMA as a result of the Review Process. Invoices under the Second Contract totaling $69 million remain under the Parties' review. In total, approximately $155 million of invoices under the Second Contract remains unpaid.

### IV. Status of the Pending Criminal Proceedings

17. With respect to the proceedings in the Criminal Case,[8] on September 20, 2021, the two remaining defendants, Ahsha Tribble and Keith Ellison, requested the Honorable Francisco A. Besosa (U.S.D.J., D.P.R.) to set a hearing to determine a trial date and schedule. *See* Criminal Case [ECF No. 210]. On October 18, 2021, Judge Besosa ordered a jury trial to commence with jury selection on May 9, 2022 and approved a pre-trial schedule. *See id.* [ECF No. 211] (docket text). The pre-trial schedule has been set as follows:

  i. Designation of evidence to be filed by the Government 90 days before trial.
  ii. Dispositive and suppression motions to be filed 30 days thereafter.
  iii. Response(s) to dispositive or suppression motions to be filed 15 days thereafter.
  iv. Proposed preliminary jury instructions and *voir dire* questions to be submitted to the Court 15 days prior to trial.

---

[8] *United States v. Tribble et al.*, Case No. 19-CR-541-FAB (D.P.R.).

      v. The Government to provide a list of witnesses intended to be called in its case-in-chief and their respective *Jencks* material 15 days prior to trial.

*See* Criminal Case [ECF No. 210] (proposing pre-trial schedule); *id.* [ECF No. 211] (approving proposed pre-trial schedule with modifications).

## V. Parties' Positions

### a. Government Parties' Position

18. The Court has already denied requests to lift the stay prior to conclusion of the criminal trial. The Government Parties respectfully submit the stay in this matter should remain in effect. There has been no material change warranting modification of the stay. *See* August 2021 Stay Order at 5. Allowance of Cobra's claim need not be determined in advance of PREPA's plan confirmation process, *id.*, and the continued stay will therefore not obstruct confirmation (for which no plan of adjustment is currently proposed). Contrary to Cobra's contention, determination of allowance at this time is not necessary to inform the feasibility of an eventual PREPA plan, as the Government Parties expect a substantial amount of any allowed claim would be covered by FEMA reimbursements. Cobra's stated intention to object to an eventual PREPA plan based on these issues shows they are properly addressed at confirmation, consistent with the Court's prior holding. *See id.* at 5 ("PREPA's ability to fund a reserve or resolve the claim, and issues regarding the appropriate magnitude of the claim, can be addressed in the context of confirmation . . . .").

19. Even if PREPA were to propose a plan now, it is highly unlikely the confirmation hearing would occur before June 2022. A status report concerning the COVID-19 pandemic and restructuring support agreement is being filed concurrently herewith addressing these issues.[9]

---

[9] *See Order Concerning Status Report of the Government Parties Regarding the Covid-19 Pandemic and the 9019 Motion* [ECF No. 2636].

20. In addition, among the reasons for continuing the stay discussed in detail in prior briefing,[10] FEMA's final conclusions on both contracts, subject to PREPA's appeal rights, will help to inform the parties as to the validity and reasonableness of Cobra's invoices without the need for costly discovery and litigation. To that end, material progress has been made since the August 2021 Stay Order.

21. With respect to the First Contract, PREPA has filed an administrative appeal of FEMA's Determination Memorandum. PREPA expects the outcome of the appeal will be delivered within the next few months. PREPA will need time to review the outcome of the appeal, if necessary, confer with Cobra and the Oversight Board, and determine, among other things, whether to file a Request for Arbitration with the Civilian Board of Contract Appeals.

22. With respect to the Second Contract, PREPA understands FEMA's review is ongoing and numerous RFIs have been issued. As noted above, the Parties are collaboratively holding bi-weekly meetings in the Review Process to reconcile remaining invoices. This process resulted in $90 million in additional invoices being submitted to FEMA. The Parties continue to conduct the Review Process to reconcile the remaining invoices.

23. Although Cobra again requests payment for certain portions it believes are not in dispute, the Government Parties respectfully submit the Review Process now taking place and pending requests for FEMA funding weigh in favor of paying remaining amounts duly owed to

---

[10] *See e.g.*, *Status Report Pursuant to December 9, 2020 Order Setting Deadline for Further Status Report Regarding Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [ECF No. 2509] at 5-6; *Opposition of the Oversight Board, AAFAF, and PREPA to Cobra Acquisitions LLC's Motion to Lift the Stay Order* [ECF No. 2507]; *Joint Informative Motion Pursuant to Order of October 17, 2019 regarding Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-3283, ECF No. 10307] at 9–11, 13–14; *Opposition of the Oversight Board, AAFAF, and PREPA to Cobra Acquisition LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* [ECF No. 1959]; July 2021 Status Report at Parts II.a., III.a., V.a. The Government Parties incorporate the foregoing by reference.

Cobra when those amounts are settled after the completion of the Review Process and FEMA obligation process, from all available funding provided by FEMA as opposed to PREPA's cash on hand.

24. In addition to narrowing the issues and saving the Parties time and effort in discovery, FEMA's independent review of the Second Contract remains critical for determining whether Cobra's costs complied with regulatory cost principles. To the extent they did not, such costs are not owed under the Second Contract. *See* Second Contract Art. 53.H. ("All costs incurred by [Cobra] in performance of this Contract must be in accord with the cost principles of 2 C.F.R. pt. 200, Subpart [E.] PREPA shall not be required to make payments to the Contractor for costs which are found to be contrary to the cost principles 2 C.F.R. pt. 200, Subpart E.").

25. Finally, the material developments in the Criminal Case weigh in favor of maintaining the stay. Trial is now set to commence in early May. Furthermore, evidence will begin to be designated by February 8, a mere three weeks from the filing of this status report. In short, the Criminal Case appears to be moving forward.

26. The updates described in this report, reflecting material progress with respect to FEMA, the Criminal Case, and the Parties' collaborative efforts to reconcile remaining invoices all warrant continuation of the stay in this matter. Accordingly, the stay should remain in place.

  **b. Cobra's Position**

27. Despite Cobra's best efforts, the fact remains that Cobra remains unpaid for approximately $227 million (excluding $111 million of interest on the unpaid balance as of December 31, 2021) for legitimate, necessary and life-saving work that Cobra performed for the benefit of PREPA and Puerto Rico and which was successfully completed as of March 2019. As highlighted to the Court in prior pleadings, Cobra's compliance with its contracts with PREPA and

the reasonableness of the costs invoiced to PREPA have been affirmed repeatedly by numerous disinterested parties. Even with respect to the exception to this otherwise general support—FEMA's de-obligation of the approximately $46 million under the First Contract—Cobra believes that FEMA will reconsider its decision on appeal and re-obligate the funds.[11] Nonetheless, for almost three years, Cobra has been subjected to a byzantine process of reviews and document requests (often duplicative of prior document requests that Cobra already had responded to), all of which Cobra has worked diligently and in good faith at its own expense to resolve.

28. In that respect, it is worth examining the context in which, as detailed above, an additional $90 million in invoices under the Second Contract were recently submitted by PREPA to FEMA for reimbursement. As noted, PREPA had failed to submit these invoices due to inaccurate information being provided to PREPA by its inspection contractor. Cobra had been attempting to correct PREPA's error since at least the summer of 2019 and even noted that PREPA had provided no substantiation for its refusal to certify invoices based on headcount issues in the Administrative Expense Motion filed in October 2019. *See* Administrative Expense Motion ¶¶ 45-48. But no attention was paid to these pleas by Cobra. Indeed, it was not until after the August 4, 2021 omnibus hearing—during which counsel for Cobra informed the Court, contrary to a suggestion by counsel to the Government Parties, that "there has been absolutely no substantive engagement by PREPA with respect to those outstanding invoices" (Aug. 4, 2021 Hr'g Tr. 64:6-7) and the Court thereby instructed the parties that it "expect[ed] genuine engagement" between the

---

[11] FEMA's decision to de-obligate the approximately $46 million appears based largely on a misunderstanding of certain provisions of the First Contract or the circumstances under which certain services were performed. As Cobra has maintained throughout, Cobra's contracts are with PREPA, and FEMA reimbursement is not determinative of whether services performed by Cobra were actual and necessary costs of administration under PROMESA. Even if FEMA determines not to reconsider its prior determination, Cobra reserves all rights to nonetheless seek reimbursement of these costs from PREPA.

12

parties to move the process along (*id.* at 71:3-4)—that PREPA's advisors began engaging in the Review Process.

29. Cobra, moreover, continues to question the relevance of the pending criminal trial to the contracts. As the Court is aware, Cobra has cooperated and is continuing to cooperate with the Department of Justice, is not a defendant in the criminal proceedings and Mr. Ellison has not been affiliated with Cobra for well over two years. Tellingly, since 2017, Cobra's affiliates have responded to no fewer than 15 subsequent storm restoration projects funded by FEMA for natural disaster recovery and has been paid for every single project. Only with respect to PREPA has Cobra not been paid.

30. Cobra estimates that at least approximately $6 million is indisputably payable to it now, but which PREPA has refused to pay. This comprises the amounts under the First Contract (*i.e.*, the difference between the approximately $945 million invoiced and the approximately $892 million has been paid, less the de-obligated $46 million). This amount should be paid to Cobra immediately. Furthermore, as the Government Parties state above, with respect to PREPA's contractual obligation to reimburse Cobra under the "tax gross-up" provision, PREPA retained a tax advisor in advance of filing the July 2021 Status Report to render an opinion on the amounts invoiced and stated, in that report, that it anticipated that analysis to be complete "before the end of September [2021]." July Status Report at 4. Despite these assurances and the full cooperation of PREPA and its tax advisors, that analysis remains incomplete and Cobra remains owed in excess of approximately $61.7 million that Cobra paid in taxes to Puerto Rico, but which PREPA has failed to reimburse as required under the First Contract. At most, in relation to the unpaid tax gross-up amounts, the FEMA appeal implicates only approximately $3 million of the approximately $46 million that FEMA de-obligated.

13

31. While Cobra believes it will be vindicated on all counts and that all costs invoiced under the contracts will be found to be "actual [and] necessary," Cobra has significant concerns that PREPA may be unable to pay Cobra what is owed. The Oversight Board has indicated in correspondence that it does not believe PREPA currently has the funds or discretion to allocate payment to Cobra. Any plan of adjustment filed by PREPA must be found by this Court to be feasible, 48 U.S.C. § 2174(b)(6), and Cobra disagrees that the allowance of its claim can or should be put aside for another day (a refrain Cobra has heard now for nearly three years), given that the large amount of the claim could call into question the feasibility of any plan of adjustment, no matter when proposed. As PREPA's negotiations with its creditors progress, it is surely indisputable that PREPA and its stakeholders would be well served by the allowance of Cobra's claim in advance of confirmation. In the event Cobra's claim remains unpaid, Cobra intends to object to any plan of adjustment to the extent that it does not provide a reserve for the full amount of Cobra's claim (*i.e.*, in excess of $300 million).

32. Accordingly, Cobra respectfully submits that the Stay Order should be lifted in light of the substantial prejudice to Cobra.

[*Remainder of page intentionally left blank*]

New York, New York
January 19, 2022

Respectfully submitted,

<table>
<tr><td>

**O'NEILL & BORGES LLC**

By: /s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com


**PROSKAUER ROSE LLP**

By: /s/ *Paul V. Possinger*
Martin J. Bienenstock*
Paul V. Possinger*
Ehud Barak*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
ppossinger@proskauer.com
ebarak@proskauer.com
\* admitted *pro hac vice*

*Attorneys for the Financial Oversight and Management Board as representative of the Puerto Rico Electric Power Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C.**

By: /s/ *Katiuska Bolaños*
Katiuska Bolaños
kbolanos@diazvaz.com
USDC-PR 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 803
San Juan, PR 00918
Tel. (787) 395-7133

</td><td>

**REICHARD & ESCALERA, LLC**

By: /s/ *Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

By: /s/ *Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714

By: /s/ *Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: /s/ *Thomas P. McLish*
Thomas P. McLish (pro hac vice)
tmclish@akingump.com
Scott M. Heimberg (pro hac vice)
sheimberg@akingump.com
Allison S. Thornton (pro hac vice)
athornton@akingump.com
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288

and

Ira S. Dizengoff (pro hac vice)
Philip C. Dublin (pro hac vice)

</td></tr>
</table>

15

Fax. (787) 497-9664

*Co-Attorneys for Puerto Rico Electric Power Authority*

**O'MELVENY & MYERS LLP**

By: /s/ *Maria J. DiConza*
John J. Rapisardi*
Maria J. DiConza*
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
mdiconza@omm.com
-and-
Peter Friedman*
1625 Eye Street, NW
Washington, D.C. 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
pfriedman@omm.com
-and-
Elizabeth L. McKeen*
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
emckeen@omm.com

* admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*

Abid Qureshi (pro hac vice)
idizengoff@akingump.com
pdublin@akingump.com
aqureshi@akingump.com
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Attorneys for Cobra Acquisitions LLC*