UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1]  | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF Nos. 19525, 19869**<br><br>(Jointly Administered) |
| JUAN MANUEL CRUZADO-LAUREANO,<br><br>Movant,<br><br>-against-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Respondent. | |

**RESPONSE OF THE COMMONWEALTH OF
PUERTO RICO TO MOTION TITLED "*INQUIRE
ABOUT THE COMMONWEALTH OF PR AGENCIES COVERED BY
THE PROMESA 'STAY'*" FILED BY JUAN MANUEL CRUZADO-LAUREANO**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Last Four Digits of Federal Tax ID: 3801) (Last Four Digits of Federal Tax ID: 3801) (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

BACKGROUND ..................................................................................................................................1

       THE COMMONWEALTH'S RESPONSE......................................................................4

A. The First Circuit Has Already Determined the Title III Stay Applies to the Appeal ..........4

B. The Title III Stay Applies to the OCPR and the Appeal........................................................5

C. There is No Cause to Modify the Title III Stay .....................................................................7

## TABLE OF CONTENTS

Page

**CASES**

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
217 F. Supp. 3d 508 (D.P.R. 2016)...............................................................................8,9,11

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
369 B.R. 87 (D.P.R. 2007).....................................................................................................9

*Celotex Corp. v. Edwards*,
115 S. Ct. 1493 (1995)...........................................................................................................4

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders
(In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13 (1st Cir. 2018) .......................................9

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006)................................................12

*In re 234-6 West 22nd St. Corp.*,
214 B.R. 751 (Bankr. S.D.N.Y. 1997)..................................................................................7

*In re Breitburn Energy Partners LP*,
No. 16-10992, 2017 WL 1379363, (Bankr. S.D.N.Y. Apr. 14, 2017)............................9

*In re City of Stockton*,
484 B.R. 372 (Bankr. E.D. Cal. 2012)................................................................................13

*In re Motors Liquidation Co.*, No. 09- 50026,
2010 WL 4630327 (S.D.N.Y. 2010)...................................................................................13

*In re Plumberex Specialty Prod., Inc.*,
311 B.R. 551(Bankr. C.D. Cal. 2004)................................................................................13

*In re Residential Capital, LLC*, No. 12-12020,
2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) ............................................11, 12

*In re Unanue-Casal*,
159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994)....................................8,9

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
474 U.S. 494 (1986).............................................................................................................5

*Montana v. United States*,
440 U.S. 147 (1979).............................................................................................................5

*Peaje Invs. LLC v. Garcia-Padilla*,
2016 U.S. Dist. LEXIS 153711, (P.R. Nov. 2, 2016) .................................................................. 9

*Soares v. Brockton Credit Union (In re Soares)*
107 F. 3d 969 (1st Cir, 1997) ...................................................................................................... 5

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990) ................................................................................................ 8-14

*Southern Pac. R. Co. v. United States*,
168 U.S. 1 (1897) ........................................................................................................................ 5

*Unisys Corp. v. Dataware Prods.*, Inc.,
848 F.2d 311 (1st Cir. 1988) ....................................................................................................... 6

*Walker v. Birmingham*,
388 U.S. 307 (1967) .................................................................................................................... 4

**STATUTES**

28 U.S.C. § 1651(a) .................................................................................................................... 2

11 U.S.C. § 362 ..................................................................................................................... 3, 6-9

48 U.S.C. § 2161(a) .................................................................................................................... 6

11 U.S.C. § 922(a) ...................................................................................................................... 6

*P.R. Const. art III, § 22* ............................................................................................................... 7

11 U.S.C. § 362(d)(1) ............................................................................................................. 7-9

iii

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this response (the "Response") to the motion titled *Inquire About the Commonwealth of PR Agencies Covered by the PROMESA "Stay"* [ECF No. 19525] (the "Motion"), filed by Juan Manuel Cruzado-Laureano ("Movant"), plaintiff in the case captioned *Juan Manuel Cruzado-Laureano v. Office of the Comptroller*, Case No. 20-01360 (the "Dismissed Action"), which was dismissed, with prejudice, by the United States District Court for the District of Puerto Rico (the "District Court"), and appellant in the appeal of the Dismissed Action, Case No. 21-1472 (the "Appeal"), pending before the United States Court of Appeals for the First Circuit (the "First Circuit").[1] The Commonwealth respectfully requests that the Court (i) decline to revisit the question of whether the Title III Stay applies to the Appeal, the Dismissed Action, and the Office of the Comptroller of Puerto Rico (the "OCPR") because Movant is collaterally estopped from re-litigating such issue, and (ii) deny the Motion in all other respects.

## BACKGROUND

1. In 2002, Movant was convicted of multiple corruption-related charges while he was mayor of the Municipality of Vega Alta, for which he received a sentence of 63 months imprisonment and was ordered to provide restitution in the amount of $14,251.82, among other things. Dismissed Action, *Opinion and Order* at 1-2, Case No. 20-01360 (D.P.R. May 25, 2021) [ECF No. 15]. Following Movant's conviction, Movant commenced seven post-conviction civil actions to collaterally attack his conviction, all to no avail. *See id.* at 2.

---

[1] The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Puerto Rico Fiscal Agency and Financial Advisory Authority to file this Response on behalf of the Commonwealth.

**The Dismissed Action**

2.     On July 27, 2020, Movant commenced the Dismissed Action against OCPR in the District Court as another attempt to collaterally attack his conviction, and to seek monetary relief in the amount of $12 million.[2]  *Id.* at 4-5.

3.     On May 26, 2021, the District Court entered an *Opinion and Order* (the "Dismissal Order") [District Court Case No. 20-01360, ECF No. 15] dismissing the Dismissed Action as frivolous pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Noting Movant's concerted and persistent efforts to file frivolous litigation attempting to challenge and relitigate his prior conviction, the District Court ordered Movant to show cause as to "why the Court should not enjoin him from commencing any action of whatever type or description in the United States District Court for the District of Puerto Rico, in connection with his 2002 conviction for corruption without prior leave of the Court" pursuant to 28 U.S.C. § 1651(a).  In assessing the Dismissed Action, the District Court described Movant as a "vexatious litigant, bent on pursuing meritless claims against past and present federal and state officials."  *See* Dismissal Order at 10.

4.     On that same date, the District Court entered a judgment dismissing (the "Dismissal Judgment") [District Court Case No. 20-01360, ECF No. 17] the Dismissed Action in accordance with the Dismissal Order.

---

[2]  Upon review of the Debtors' claims register, it does not appear Movant filed a proof of claim in connection with his asserted $12 million claim.  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] and the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (collectively, the "Bar Order"), Movant was required to file a proof of claim on or before June 29, 2018.  Movant's asserted claim is based on actions that occurred in connection with his 2002 conviction and an OCPR audit report that was published on November 22, 2005.  Dismissed Action, *Opinion and Order* at 7-9, Case No. 20-01360 (D.P.R. May 25, 2021) [ECF No. 15] ("This action commenced on July 24, 2020, fourteen years after the statute of limitations expired.").

2

**The Appeal**

5. On June 2, 2021, Movant commenced the Appeal by filing a *Notice of Appeal* (the "Notice of Appeal") in the District Court as to the Dismissal Judgment.

6. On June 23, 2021, the First Circuit entered an order (the "Order to Show Cause") directing the parties "to show cause within twenty-one days of the date of this order whether the automatic stay applies to this appeal." Appeal, *Order of Court*, Case No. 21-1472 (1st Cir. June 23, 2021).

7. On July 14, 2021, the OCPR filed its response in accordance with the Order to Show Cause.

8. On August 12, 2021, Movant filed his *Motion Showing Cause on the Non-Application of the Automatic Stay of "PROMESA" to Appeal 21-1472*.

9. On September 20, 2021, the First Circuit entered an order (the "Stay Order") staying the Appeal. Appeal, *Order of Court*, Case No. 21-1472 (1st Cir. Sept. 20, 2021) ("We have received the parties' responses to this court's June 23, 2021, order to show cause. Having considered the responses, we stay this appeal.").

10. On October 15, 2021, Movant filed his *Informative Motion and Request for Reconsideration of Appeal "Stay" 21-1472* (the "Reconsideration Motion").

11. On November 15, 2021, the First Circuit denied Movant's Reconsideration Motion in all respects and noted that "appellant may seek relief from the stay in the Title III court." Appeal, *Order of Court*, Case No. 21-1472 (1st Cir. Nov. 15, 2021) (the "Reconsideration Order").

**The Lift Stay Motion**

12. On December 10, 2021, Movant filed the Motion in which he requests that this Court "give its opinion" on whether the automatic stay under section 362(a) of Title 11 of the

3

United States Code (the "Bankruptcy Code"), made applicable to the Commonwealth's Title III case by PROMESA section 301(a) (the "Title III Stay"), applies to the OCPR. Movant fails to directly request relief from the Title III Stay, but requests, instead, that this Court issue an opinion on the applicability of the automatic stay by giving "its Opinion on whether the automatic stay of PROMESA applies to any economic responsibility of" the OCPR. *See* Motion at 8.

13. Following the filing of the Motion, the Commonwealth and Movant attempted to resolve the request in the Motion consensually, but were unable to do so.

## THE COMMONWEALTH'S RESPONSE

### A. The First Circuit Has Already Determined the Title III Stay Applies to the Appeal

14. On September 20, 2021, following a full opportunity for the parties to litigate the applicability of the Title III Stay to the Appeal,[3] the First Circuit entered the Stay Order staying the Appeal. Despite the Stay Order, Movant argues in the Motion that the Title III Stay is inapplicable to the Appeal because Title III is "only applicable to the obligations contracted or to be contracted by the Executive Power and its instrumentalities that availed themselves of Title III . . . ." Motion at 5. Under the long-standing principle of collateral estoppel, Movant cannot re-litigate whether the Title III Stay applies to the Appeal. Pursuant to the Reconsideration Order, Movant's only available relief is to request this Court to lift or modify the Title III Stay.[4]

---

[3] Movant also sought reconsideration of the First Circuit's determination pursuant to the Reconsideration Motion, which the First Circuit denied pursuant to the Reconsideration Order entered on October 15, 2021.

[4] Another option for the Court to address Movant's argument that the Title III Stay does not apply is that this Court does not have subject matter jurisdiction to review Movant's collateral attack on the First Circuit's Stay Order. *See, e.g.*, *Celotex Corp. v. Edwards*, 115 S. Ct. 1493, 1501 (1995) (holding that bankruptcy court's injunction under Bankruptcy Code section 105 cannot be collaterally attacked in a seprate proceeding, and noting "it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respect." (quoting *Walker v. Birmingham*, 388 U.S. 307, 314 (1967)).

4

15. Under the doctrine of collateral estoppel or issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). This doctrine ensures that a "'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties . . . ." *Id.* (quoting *Southern Pac. R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)). This "secure[s] the peace and repose of society by the settlement of matters capable of judicial determination." *Southern Pac. R. Co.*, 168 U.S. at 49. The First Circuit's prior ruling that the Title III Stay applies to the Appeal estops Movant from re-litigating this issue here. *See, e.g.*, *Memorandum Order Denying Alvin Marrero-Méndez's Motion for Relief from Stay (Docket Entry No. 952)* [ECF No. 1234] at 2-3 ("As a preliminary matter, the Court will not consider whether the automatic stay . . . applies to the Lawsuit. That issue has already been decided by Judge García-Gregory.").

**B.     The Title III Stay Applies to the OCPR and the Appeal**

16. Even if the Court were to determine that Movant is not collaterally estopped from relitigating the applicability of the Title III Stay, the Title III Stay applies to claims asserted against the OCPR in the Appeal, and the Dismissed Action. "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir, 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986)). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate.'" *Id*. The broad scope of the automatic stay serves the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the

5

debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods.*, Inc., 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)).

17. Under Bankruptcy Code section 362(a), made applicable to the Title III cases by PROMESA section 301(a), the commencement or continuation "of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement" of the Title III case or "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under" Title III is automatically stayed without further action. 11 U.S.C. § 362(a); 48 U.S.C. § 2161(a). "[I]n addition to the stay provided by [Bankruptcy Code section 362(a)]," Bankruptcy Code section 922(a) supplements the stay under section 362 and extends the stay to all actions against "an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922(a); 48 U.S.C. § 2161(a). *See Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543].

18. Movant seeks in the Dismissed Action monetary relief against the OCPR that, if successful, would be paid with Commonwealth funds. Furthermore, the OCPR is among the list of governmental entities identified as comprising the Central Government of Puerto Rico (the "Central Government"), attached to the Puerto Rico Fiscal Agency and Financial Advisory

6

Authority's *Informative Motion Regarding Entities Constituting the Central Government of the Commonwealth* [ECF No. 2828] (the "Informative Motion").[5]

19. As stated in the Informative Motion, to determine whether an agency or entity was part of the "central government of the Commonwealth", several factors were taken into account—and not only each entities' enabling act—including, but not limited to, such entity's close nexus to the Central Government, and whether such entity receives general fund appropriations.

20. Notably, the Constitution of the Commonwealth of Puerto Rico describes the role of the OCPR as follows:

> [The Comptroller] shall audit all the revenues, accounts and expenditures of the Commonwealth, of its agencies and instrumentalities and of its municipalities, in order to determine whether they have been made in accordance with law. He shall render annual reports and any special reports that may be required of him by the Legislative Assembly or by the Governor.

*See P.R. Const. art III, § 22.*

21. Thus, given the OCPR's "close nexus" to the Central Government and that claims against the OCPR would be paid with Commonwealth funds, the OCPR is a governmental entity falling within the ambit of the Commonwealth, and is protected by the Title III Stay.

### C. There is No Cause to Modify the Title III Stay

22. To the extent Movant seeks relief from the Title III Stay pursuant to Bankruptcy Code section 362(d)(1), Movant has not, and cannot, demonstrated that cause exists to lift the Title III Stay. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic

---

[5] Furthermore, while Movant asserts Title III and the Title III Stay applies only to the Executive Branch, the list of Central Government entities includes the Legislative Branch and Judicial Branch.

7

stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

23. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E.*

8

*v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in Sonnax and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

24. No one factor is dispositive. Instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

25. Here, Movant seeks to continue the Appeal in the First Circuit, but has not attempted to demonstrate cause pursuant to Bankruptcy Code section 362(d)(1). As an initial matter, if a movant "fails to make an initial showing of cause" under Bankruptcy Code section 362(d)(1), "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.,* 907 F.2d at 1285. Nonetheless, under the circumstances at bar, the *Sonnax* factors point squarely toward maintaining the Title III Stay for the reasons below. Principally, because the Effective Date of the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2022 [ECF No. 19784] (the "Plan"),[6] is anticipated to occur on or before March 15, 2022, and

---

[6] Capitalized terms used below that are not otherwise defined shall have the meanings given to them in the Plan.

9

Movant has failed to timely file a proof of claim pursuant to the Bar Order, Movant's claims in connection with the Appeal and the Dismissed Action will be barred and discharged pursuant to the Plan and Confirmation Order. Accordingly, lifting the Title III Stay would only waste limited Commonwealth and judicial resources.

26. ***Sonnax* Factor 1:** The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against modifying the automatic stay. Here, no bankruptcy issue related to the Title III case would be resolved by allowing Movant to continue the prosecution of the Appeal, the Dismissed Action, or enforcement of any judgment in connection therewith. In the Dismissed Action, the District Court recognized that Movant's various civil actions, including the Dismissed Action, have been frivolous attempts to collaterally attack his criminal convictions. Dismissed Action, *Opinion and Order* at 1-2, Case No. 20-01360 (D.P.R. May 25, 2021) [ECF No. 15].

27. Furthermore, lifting the Title III Stay to allow the Appeal and the Dismissed Action to proceed would not advance the claims resolution process in the Title III cases because Movant did not file a proof of claim in any of the Title III cases as required by the Bar Order. Movant's asserted claim will be barred and discharged upon the occurrence of the Effective Date pursuant to Section 92.2 of the Plan, Paragraph 56 of the Confirmation Order, and section 944 of the Bankruptcy Code (made applicable to these Title III cases pursuant to PROMESA section 301(a)). Therefore, the first *Sonnax* factor supports denying the Motion.

28. ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay. If the Title III Stay

---

On January 18, 2022, the Court confirmed the Plan pursuant to the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "Confirmation Order").

10

were lifted, the Commonwealth would be required to expend resources in connection with briefing in the Appeal, and, in the unlikely event that Movant prevails in the Appeal and the case is remanded to the District Court, the Commonwealth would be required to devote further resources to respond to Movant's claims in an action which several courts have already determined and declared to be frivolous.

29. Critically, because Movant failed to file a timely proof of claim pursuant to the Bar Order, Movant's claim would be discharged and barred upon the occurrence of the Effective Date pursuant to the Plan and Confirmation Order. Accordingly, lifting the Title III Stay to allow Movant to litigate the Appeal and Dismissed Action would only divert critical funds from the Commonwealth's recovery efforts and would not further any claims resolution in the Commonwealth's Title III case. Should every plaintiff with an asserted prepetition claim be given *carte blanche* to litigate and/or execute their claims in multiple fora, the combined result would have a substantial and negative impact on the Plan and budget. This would impede the restructuring process, and thus, should be avoided. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."). Thus, *Sonnax* factor 2 weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause).

30. ***Sonnax* Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal was established to hear the Appeal or the Dismissed Action, which was

11

originally filed in the District Court and appealed to the First Circuit. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

31. ***Sonnax* Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility in connection with the Dismissed Action or the Appeal. Thus, *Sonnax* factor 5 does not support granting the Motion.

32. ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)). As discussed above, the OCPR is a governmental unit of the Commonwealth, and is the sole defendant in the Dismissed Action, *i.e.*, not a "third party." Therefore, *Sonnax* factor 6 squarely weighs towards the denial of the Motion.

33. ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R.

12

551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"). *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury").

34. Here, the Commonwealth would have to expend time and resources in connection with any briefing in the Appeal, and, if Movant is successful on appeal, in connection with litigating the Dismissed Action. However, because Movant has failed to file a timely proof of claim, lifting the Title III Stay will not advance the claims resolution process in the Title III Cases. As noted above, Movant's asserted claims will be barred and discharged upon the occurrence of the Effective Date of the Plan, which is anticipated to occur on or before March 15, 2022. Accordingly, litigating the issues in the Appeal and the Dismissed Action will only divert the Commonwealth's attention from proceeding expeditiously through its Title III case, and inure to the detriment of the Commonwealth's creditors. Accordingly, *Sonnax* factor 7 does not support granting the Motion.

35. ***Sonnax* Factors 10 and 11:** The interest of judicial economy and the status of the Appeal and the Dismissed Action also weigh against stay relief. Judicial resources at the First Circuit and the District Court would be wasted in addressing Movant's asserted claims that will ultimately be barred and discharged on the Effective Date, as noted above. Even if Movant were permitted to file a late proof of claim, resolution of Movant's asserted claim should be

13

accomplished through the claims resolution process in these Title III cases to preserve judicial economy because no briefing had been scheduled before the Appeal was stayed, and litigation in the Dismissed Action was only in its initial stage, and discovery had not commenced, before it was dismissed. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion.

36. ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the Title III Stay remains in place. The diversion of the Commonwealth's resources to litigate Movant's asserted claim for which he failed to file a timely proof of claim, and which will ultimately be barred and discharged upon the occurrence of the Effective Date of the Plan, weighs in favor of continuing the automatic stay.

37. On the other hand, Movant will not suffer hardship from the Title III Stay. As the District Court noted, the Dismissed Action is one in a string of frivolous actions to collaterally attack his prior conviction. *See* Dismissed Action, *Opinion and Order* at 1-2, Case No. 20-01360 (D.P.R. May 25, 2021) [ECF No. 15]. Furthermore, even if Movant were able to litigate his asserted claim, it would be barred and discharged upon the occurrence of the Effective Date because he failed to file a timely proof of claim in the Title III cases pursuant to the Bar Order.

[*Remainder of Page Left Intentionally Blank*]

**WHEREFORE**, the Commonwealth respectfully requests that the Court (i) decline to revisit the question of whether the Title III Stay applies to the Appeal, the Dismissed Action, and the OCPR, and (ii) deny the Motion in all other respects.

Dated: January 31, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

*/s/ Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494
*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*