UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 19859**<br><br>(Jointly Administered) |

**JOINT INFORMATIVE MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, FEE EXAMINER, AND U.S. TRUSTEE IN COMPLIANCE WITH COURT ORDER REGARDING ENACTMENT OF THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employee Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and collectively with the Commonwealth,

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Building Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

COFINA, HTA, ERS, PREPA and PBA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] the Fee Examiner, and the Office of the United States Trustee (the "U.S. Trustee," and collectively with the Oversight Board and the Fee Examiner, the "Conferring Parties") respectfully submit this joint informative motion (the "Informative Motion") in compliance with the Court's *Order Directing Parties to Meet and Confer Regarding the Enactment of the Puerto Rico Recovery Accuracy in Disclosures Act* [ECF No. 19859] (the "Order") relating to the *Puerto Rico Recovery Accuracy in Disclosures Act*, Pub. L. No. 117-82 ("PRRADA"). In support of the foregoing, the Conferring Parties state as follows:

## BACKGROUND

On January 20, 2022 (the "Enactment Date"), President Joseph R. Biden Jr. signed PRRADA into law. As the Court stated in the Order, PRRADA sets forth disclosure requirements for professional persons seeking compensation pursuant to sections 316 and 317 of PROMESA.

On January 21, 2022, the Court directed the Conferring Parties to meet and confer regarding PRRADA's requirements. *See* Order ¶ 1. The Court also directed the Conferring Parties to file this Informative Motion to propose procedures and timelines relating to the following aspects of PRRADA:

    a. The Oversight Board's creation and presentation of the List of Material Interested Parties, as defined in PRRADA § 2(a)(1) (the "MIP List"), for approval by the Court, including threshold claim amounts through which persons may be excluded from the MIP List, and a process by which parties in interest can be heard in connection with approval of the MIP List, *see* Order ¶ 2;

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

  b. The Fee Examiner's proposal of amendments to the current fee submission and review procedures to ensure compliance with PRRADA, *see id.* ¶ 3; and

  c. The Conferring Parties' proposal for consideration of fee applications filed after PRRADA's enactment but before the Court's approval of the MIP List, *see id.* ¶ 4.

In accordance with paragraph 1 of the Order, the Conferring Parties, along with counsel for the Puerto Rico Fiscal Agency and Advisory Authority, met and conferred by video conference on January 26 and 28, 2022 to discuss PRRADA's requirements and this Informative Motion, as well as exchanged drafts and comments by email throughout the last week.

**THE CONFERRING PARTIES' PROPOSALS**

**I. PROPOSALS FOR PROCEDURES AND TIMELINES RELATED TO THE MIP LIST (ORDER ¶ 2)**

  **A. Conferring Parties' Proposal of Procedures and Timeline for Consideration of MIP List and Threshold Amounts:**

   a. Pursuant to PRRADA § 2(b)(1), on or before February 22, 2022, the Oversight Board shall propose an MIP List for each Debtor and a threshold claim amount for each Title III case by filing a motion for their approvals.

   b. On or before the fourteenth day after the Oversight Board files the MIP List motion (the "Motion"), the U.S. Trustee and parties in interest may file responses to the Motion specifying (i) additional parties in interest to be included, (ii) parties to be removed, and (iii) alternative threshold amounts.

   c. The Oversight Board may reply to the responses on or before the third day after the deadline for filing responses.

   d. In the Court's discretion, the Court may schedule a hearing on the Motion, or rule on the pleadings without a hearing.

  **B. Oversight Board's Proposal of Threshold Amounts:**

   a. To ensure the number of parties included in each MIP List is reasonable in number so professionals can check for connections within a reasonable amount of time, the Oversight Board proposes a materiality threshold of $1 million in claims for the Commonwealth and COFINA, $500,000 in claims for HTA, and $500,000 in claims for PBA and ERS. The $1 million threshold at the Commonwealth and COFINA would limit the number of claims, bondholder claims and monoline insurers listed on the MIP List to approximately 573 active

3

claims or 2,270 active and non-active claims. Further, the $500,000 threshold for PBA and ERS would limit the number of claims listed on the MIP List to approximately 59 and 41, respectively; or 73 and 258 active and non-active claims, respectively. The rights of all parties in interest to argue whether connections with pre-Enactment Date creditors who are not post-Enactment Date creditors (*i.e.*, active versus non-active) have significance are preserved.

b. These thresholds respect Congressional intent, as reflected in amendments to the bill to ensure only "material" connections are disclosed. *See* Sen. Rpt. 117-48 ("Applied literally and inflexibly, the House-passed bill could unfairly result in the disqualification of, and denial of payment to, innocent professionals whose connections pose no serious threat to the integrity of the cases.").

c. For HTA, bond claims were subject to the HTA/CCDA PSA and the DRA Stipulation, which were approved by the Court in connection with the Commonwealth's Title III case. The Oversight Board submits the parties to the PSA should be on the MIP List which includes the monoline insurers. For remaining claims, the Oversight Board proposes a materiality threshold of $500,000. This threshold would require the Oversight Board to identify approximately 161 active claims or 210 active and non-active claims on the MIP List. To the extent any of these claims were filed on behalf of all plaintiffs in multi-plaintiff litigation, the Oversight Board proposes that only the lead counsel for the plaintiffs need be included on the MIP List.

d. For PREPA, the Oversight Board proposes a materiality threshold for all claims of $500,000. This threshold would require the Oversight Board to identify approximately 284 active claims or 364 active and non-active claims. The MIP List should also include all Bondholders and monoline insurers that signed the RSA and Bondholders who filed a proof of claim of $500,000 or more. Notably, the Oversight Board does not have access to information regarding the identities of all individual beneficial holders of PREPA bonds. The Oversight Board is aware of certain holders of PREPA bonds who have filed proofs of claim, filed Rule 2019 statements, or are signatories of the RSA.

C. **Issues to be resolved to render compliance with PRRADA and the fee application process more efficient:**

  a. Technical Compliance Issues

   i. Which attorneys, accountants, and other advisors to entities on the MIP List is the Oversight Board responsible to list?

    1. In each instance that the Oversight Board recommends a resolution of an issue, the Oversight Board intends that the U.S. Trustee be empowered to request more data than the presumptive amount when circumstances warrant.

4

    2. The Oversight Board recommends that it only be responsible for listing advisors it can identify from proofs of claim or other pleadings listing an entity's advisors (including, but not limited to, the Fee Examiner's list of professionals who have filed interim fee applications), because the Oversight Board has no database or other reliable source of knowledge of such advisors.

        a. Disclosures of Parties' Attorneys:

            i. Where litigations were filed on behalf of multiple plaintiffs, because each individual plaintiff's interest is likely to be comparatively small, the Oversight Board proposes that in such instance, only the lead counsel for the plaintiffs need be included on the MIP List.

    3. The Fee Examiner shall provide a list of all professionals who have requested or will request compensation pursuant to sections 316 and 317 of PROMESA.

  ii. Should the MIP List include former creditors (and their advisors) known not to be creditors during the period for which new fees are requested?

    1. The Oversight Board, in most instances, does not know which creditors transfer their claims and become former creditors and recommends that all known claimholders that meet the threshold be included on the MIP List unless and until shown not to be relevant and material to PRRADA determinations.

  b. Application of the MIP List to Disinterested Analysis and Disclosures

    i. To the extent the U.S. Trustee has issues with how a professional has complied with Rule 2014 disclosures, the U.S. Trustee and the professional should engage to resolve them as is customarily done in reorganizations under Title 11.

    ii. The Conferring Parties agree certain issues may need to be resolved by the Court regarding professionals' disclosures after their review of the MIP List.

## II. PROPOSALS RELATED TO AMENDMENTS TO CURRENT FEE SUBMISSION AND REVIEW PROCEDURES (ORDER ¶ 3)

The Fee Examiner's role in these cases remains to assist the Court in carrying out its obligation to ensure that fees paid pursuant to PROMESA §§ 316 and 317 are reasonable and necessary as those terms are used in PROMESA and in the parallel provisions of the Bankruptcy

5

Code. While non-compliance with PRRADA raises the specter of denial of compensation, nothing in the text of the statute or the legislative history suggests that a deficiency in disclosure should impact the reasonableness and necessity inquiry. The Fee Examiner, therefore, does not propose to undertake an independent assessment of each professional's compliance with PRRADA. Similarly, the Fee Examiner does not intend to take a substantive position—at least initially— on what, if any, fees should be "denied" as a result of deficiencies others may identify in a party's disclosures.[3]

The Fee Examiner does, however, maintain an exhaustive repository of publicly-available fee applications and billing data, and stands ready to support the Court in quantifying fees based on virtually any parameters the Court may request. If, for example, the Court determines that fees related to a particular project or pleading should be denied, the Fee Examiner can generate exhibits quantifying and itemizing those fees. The Fee Examiner requests that only the Court be permitted to request such exhibits, based on parameters the Court identifies and deems necessary to resolve an issue before it. It would not be appropriate for the Fee Examiner to develop exhibits for use in support of any party in interest in a disclosure dispute—litigated or otherwise.

### A. Timing of the Fee Review Process

As noted in the *Fee Examiner's Report on Anticipated Final Fee Application Process and on Uncontested Professional Fee Matters for Consideration in Connection with the February 2, 2022 Omnibus Hearing* [Dkt. No. 19911], the Fee Examiner recommends that professionals complete the interim fee application, review, and approval process before submitting a final fee application. The initial rationale for this proposal was to avoid the need for complex "true-up"

---

[3] Similarly, opining on the contents of the MIP List or taking a legal position with respect to the retroactive application of PRRADA appears to be outside the scope of the Fee Examiner role, although whether the statute applies on its face to all interim fee requests incorporated within a final fee application certainly requires clarification before the post-PRRADA fee examination process can proceed. The Fee Examiner will provide perspective on such issues upon request.

6

calculations involving adjustments to final fee application requests to account for adjustments to interim compensation not yet reflected in the final fee application. This procedure also presents an opportunity, however, to continue apace with the interim fee application and approval process while deferring the final applications until the U.S. Trustee's review of PRRADA disclosures is complete.

PRRADA prohibits the submission of new fee applications until the professional has filed its PRRADA disclosure, but the statute neither prohibits the Court's determination of fee applications filed prior to January 20, 2022, nor the submission of interim applications to the Fee Examiner. The Conferring Parties agree, therefore, that the Fee Examiner may continue to review, report on, and recommend for Court approval interim fee applications filed prior to PRRADA's date of enactment. Professionals may and should submit interim fee applications prepared after the PRRADA enactment date directly to the Fee Examiner, without filing them. After a professional has filed its PRRADA disclosure, it may then publicly file the interim fee application, including a certification that the filed application is identical in all material respects to the version previously provided to the Fee Examiner or identifying any changes. Any deductions necessitated by PRRADA disclosure issues could then be addressed in connection with the final fee application. The Fee Examiner will develop a revised timeline for submission and review of final fee applications, as discussed in § III, below, once the Court has entered an order establishing deadlines for the filing of PRRADA disclosures.

An additional challenge presented by the new statute is its effect on monthly fee applications. The statute uses the phrase "request for compensation" with disclosure the prerequisite for any such request. Many, if not almost all, of the professionals here submit (but do not routinely file) monthly invoices. They are paid—provisionally— at 90 percent of the face amount (in some cases 80 percent)—subject always to the interim and final application process.

7

The use of provisional monthly payments is not uncommon in larger Chapter 11 proceedings, and many professionals rely on the stream of income provided by monthly payments. While any party in interest has the right to object to a monthly invoice, that has rarely occurred, and the Fee Examiner does not review monthly invoices. The Conferring Parties agree that based on PRRADA's language, Monthly Fee Statements submitted pursuant to the Court's *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1150], as subsequently amended [Dkt. No. 3269], may continue to be provisionally paid.

### B. Reasonableness of Fees Incurred to Comply with PRRADA

An analysis of the reasonableness and necessity of the time required for professionals to comply with PRRADA is directly within the scope of the Fee Examiner's appointment. Billing for conflicts checks, the preparation of initial disclosures, continued monitoring of court and firm records to identify new connections, and the preparation and filing of repeated supplemental disclosures come at a significant expense to the debtors in any Chapter 11 case. Here, given the anticipated number of Material Interested Parties, the cost of compliance with PRRADA will be considerable.

The Fee Examiner proposes to develop presumptive standards—similar to those already in place for matters such as hearing attendance or rate increases—that will guide the Fee Examiner's evaluation of professional fees incurred to comply with PRRADA. A number of presumptively reasonable hours, keyed to the size of a firm or professional organization, could set expectations—subject to modification for unusual circumstances. Alternatively, the Fee Examiner could establish a sliding-scale "percentage of fees incurred" threshold below which fees will be presumed reasonable. Any presumption, as always, is rebuttable, and professionals may demonstrate that deviation from a presumption is reasonable in appropriate circumstances. The Fee Examiner

8

would reserve the right, in any case, to recommend treatment not strictly in compliance with this or any other presumptive standard.

### III. PROPOSALS RELATED TO DISCLOSURES PURSUANT TO PRRADA AND COURT'S CONSIDERATION OF FEE APPLICATIONS FILED AFTER PRRADA'S ENACTMENT BUT BEFORE COURT'S APPROVAL OF MIP LIST (ORDER ¶ 4)

The final question in the Court's Order asks the Conferring Parties to include "a proposal for the Court's consideration of fee applications filed after PRRADA's enactment but before the Court's approval of the List of Material Interested Parties."

Section 2(b)(1) of PRRADA requires professionals to file Rule 2014 disclosures before filing any further fee applications:

> In a case commenced under section 304 of PROMESA (48 U.S.C. 2164), no attorney, accountant, appraiser, auctioneer, agent, or other professional person may be compensated under section 316 or 317 of that Act (48 U.S.C. 2176, 2177) unless prior to making a request for compensation, the professional person has filed with the court a verified statement conforming to the disclosure requirements of rule 2014(a) of the Federal Rules of Bankruptcy Procedure setting forth the connection of the professional person with any entity or person on the List of Material Interested Parties.

Section 2(e) of PRRADA authorizes the Court to deny compensation if the professional does not make sufficient Rule 2014 disclosures or if the disclosures reveal conflicts of interest:

> In a case commenced under section 304 of PROMESA (48 U.S.C. 2164), in connection with the review and approval of professional compensation under section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) filed after the date of enactment of this Act, the court may deny allowance of compensation or reimbursement of expenses if—
>
> (1) the professional person has failed to file the verified disclosure statements required under subsection (b)(1) or has filed inadequate disclosure statements under that subsection; or
>
> (2) during the professional person's employment in connection with the case, the professional person—
>
> (A) is not a disinterested person (as defined in section 101 of title 11, United States Code) relative to any entity or person on the List of Material Interested Parties; or
>
> (B) represents or holds an adverse interest in connection with the case.

9

Thus, under PRRADA, no professional may be compensated under a fee application filed on or after January 20, 2022, until it has first filed the required disclosures. PRRADA provides no other deadline by which professionals must file these disclosures. Section 2(e) of PRRADA, which provides discretion to the Court to deny allowance of compensation and reimbursement of expenses, applies to all requests for compensation filed on or after January 20, 2022.[4]

Because PRRADA is clear that no fee applications filed after PRRADA's enactment can be filed, considered, or approved before the professional files its Rule 2014 disclosures, there is no process or proposal for considering these applications consistent with PRRADA. As the Court's question indicates, professionals cannot begin the process of preparing their disclosures until after the Oversight Board files the MIP list by February 22, 2022, which is thereafter subject to the parties' comments and the Court's approval.[5] Accordingly, the Conferring Parties propose that, to effectuate PRRADA, the Court should issue an order directing professionals in these cases not to file any further fee applications, regardless of which interim fee period such applications relate to, until after they have filed the disclosures required under PRRADA. The Conferring Parties also propose that professionals should withdraw any applications for compensation filed after PRRADA's enactment but before the Court's order approving the MIP List.[6] The Court, however, may consider any pending interim fee applications filed before January 20, 2022, subject later to the inter-play between PRRADA and traditional understandings of final fee applications

---

[4] Moreover, PRRADA refers only to the filing of requests for compensation after the enactment of PRRADA; it is silent as to whether fees for services before January 20, 2022, are subject to denial, but the parties' views on how to construe the statute on this issue likely differ significantly.

[5] While the Court specifically asked about parties who file applications after PRRADA's enactment but before the approval of the MIP List, the Conferring Parties agree that professionals will likely not have sufficient time even after approval of the MIP List to file disclosures before the current deadlines relating to the Fourteenth Interim Period (which contemplate filing as of March 15, 2022).

[6] The Conferring Parties are aware of one such application at this time.

under the Bankruptcy Code, a legal issue on which the Conferring Parties may also disagree, as raised in Part IV.

Moreover, in its order approving the MIP List, the Conferring Parties propose that the Court also establish a deadline for professionals to file their disclosures, which would effectuate PRRADA, provide the Fee Examiner with necessary information to submit a revised fee application schedule, and allow the U.S. Trustee time to review the Rule 2014 disclosures. The Conferring Parties would suggest that the Court set this disclosure deadline for 45 days after its order approving the MIP List. Once the professionals have filed such disclosures, the professionals may then begin filing applications for compensation based on the Fee Examiner's revised schedule,[7] which should incorporate a reasonable time period for the U.S. Trustee's office to review the disclosures, as required by Section 2(d) of PRRADA, and, if necessary, to comment on the disclosures or to object to an application prior to a hearing on the professional's request for compensation. The Conferring Parties propose 45 days for the U.S. Trustee to review and comment or object after a professional files its disclosures, with the U.S. Trustee reserving its rights to seek extensions if necessary.

### IV. ADDITIONAL QUESTIONS RAISED BY PRRADA'S ENACTMENT

Although outside the direct scope of the Court's Order, the Conferring Parties also agree that PRRADA's enactment raises additional, substantive issues, as to which the Conferring Parties anticipate having differing positions and on which the Court may desire further briefing. The Conferring Parties raise several of these issues below, while acknowledging that others may arise as implementation and enforcement of PRRADA continues.

---

[7] On the same day that the President signed PRRADA into law (unbeknownst to many until the next day or later), the Fee Examiner established a schedule for professionals to file interim and final fee applications in these cases. In light of PRRADA and question 2 of this Court's order, that schedule will require adjustment.

1. **Court Authority to Limit PRRADA's Application to Certain Professionals**

Congress adopted PRRADA and only Congress can change it. That said, imposing the PRRADA disclosure obligation on all professionals, without exception, may present difficulty for some. Similarly, for certain categories of professionals, the corresponding benefit to the Debtors could be disproportionate to the burdens of compliance with PRRADA. For example, many professionals provide services only in Puerto Rico. Often, these are small firms or individual practitioners for whom a new and robust disclosure process could present a substantial burden. Similarly, individual practitioners or those practicing in organizations with a small number of employees or members may be less likely to have undiscovered disqualifying conflicts or disclosure issues.

Whether the Court has the authority (statutory, constitutional, or otherwise) to exempt *any* professional from full compliance with PRRADA may well be an issue on which the Conferring Parties differ, and the Court may wish to order briefing on the issue prior to addressing any detailed proposal in this regard. If, after briefing, the Court concludes that it has such authority, the Conferring Parties could then further confer to propose appropriate parameters. These considerations could include firm location and size, amount of total billings to the Debtors, or other appropriate metrics as determined by the Court.

2. **Are fees for services rendered and expenses incurred before PRRADA's enactment subject to denial under PRRADA?**

    a. **If the answer is yes, is the answer different for fees and expenses previously approved by the Court on an interim basis?**

On its face, section 2(e) of PRRADA applies to all applications for compensation that are filed after the date of its enactment, or January 20, 2022. After January 20, 2022, professionals may file a variety of applications for compensation falling into different categories, including the following:

  (i) applications relating to the Fourteenth Interim Fee Period, which began October 1, 2021, and thus implicating fees for services rendered and expenses incurred prior to PRRADA's enactment;

  (ii) applications relating to prior interim fee periods if the professional has not yet requested such fees in an interim application, which would also implicate fees for services rendered and expenses incurred prior to PRRADA's enactment; and

  (iii) final fee applications, which implicate fees for services rendered and expenses incurred since the beginning of a case or a professional's employment, at least some of which may have been previously approved by the Court on an interim basis.

Accordingly, as a result of the normal fee process in these Title III cases, the applications for compensation that professionals will file after PRRADA's enactment will necessarily cover fees for services rendered and expenses incurred prior to its enactment.

  Thus, one question raised by PRRADA's enactment is whether the Court, using its authority under section 2(e), may deny a professional compensation for services rendered or expenses incurred before the date on which PRRADA was enacted? This raises the related legal questions of whether such an interpretation is a retroactive application of PRRADA and, if so, what arguments exist for and against a retroactive application of PRRADA. It also raises the related legal question of the proper scope of review and appropriate remedies on final fee applications after approval on an interim basis. The parties will likely have differing arguments and analysis on these points.

  **3. Does PRRADA apply to professional conflicts or non-disinterestedness that occurred prior to PRRADA's enactment?**

  As discussed above, Section 2(e) provides the Court discretion to deny compensation for fees and reimbursement of expenses, among other reasons, if "(2) during the professional person's

13

employment in connection with the case, the professional person—(A) is not a disinterested person (as defined in section 101 of title 11, United States Code) relative to any entity or person on the List of Material Interested Parties; or (B) represents or holds an adverse interest in connection with the case." The temporal limitation in the statute's text for either disinterestedness or conflict is "during the professional person's employment in connection with the case." Thus, this raises the question of whether the Court, using its authority under section 2(e), may deny a professional compensation for fees or reimbursement of expenses related to a professional's lack of disinterestedness or conflict arising prior to PRRADA's enactment. This again raises the related legal questions of whether such an interpretation would lead to a retroactive application of PRRADA and, if so, what arguments exist for and against a retroactive application of PRRADA. The Conferring Parties will likely have differing arguments and analysis on these points including arguments as to whether PRRADA's language in the present tense in section 2(e) prevents PRRADA from applying to services rendered prior to January 20, 2022.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 31, 2022
San Juan, Puerto Rico

Respectfully submitted,

**EDGE LEGAL STRATEGIES, PSC**

By: /s/ *Eyck O. Lugo*
Eyck O. Lugo
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone: (787) 522-2000
Facsimile: (787) 522-2010

*Puerto Rico Counsel for Fee Examiner*

**O'NEILL & BORGES LLC**

By: /s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

**GODFREY & KAHN, S.C.**

One East Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 257-3911
Facsimile: (608) 257-0609

Brady C. Williamson (*Pro Hac Vice*)
*Fee Examiner*

Katherine Stadler (*Pro Hac Vice*)
*Counsel for the Fee Examiner*

**PROSKAUER ROSE LLP**

By: /s/ *Martin J. Bienenstock*
Martin J. Bienenstock*
Brian S. Rosen*
Ehud Barak
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
brosen@proskauer.com
ebarak@proskauer.com

MARY IDA TOWNSON
United States Trustee for Region 21

U.S. DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, Puerto Rico 00901-1922
Tel.: (787) 729-7444
Fax: (787) 729-7449

(Electronically Filed)

By: s/ *Monsita Lecaroz-Arribas*
Monsita Lecaroz-Arribas
Assistant U.S. Trustee
USDC-PR No. 207707

* admitted *pro hac vice*

*Attorneys for the Financial Oversight and Management Board as Representative of the Debtors*

16