**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-----------------------------------------------------------------x

**STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD IN CONNECTION WITH FEBRUARY 2–3, 2022 OMNIBUS HEARING**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the February 2–3, 2022 omnibus hearing and in response to this Court's order, dated January 24, 2022 [Case No. 17-BK-03283, ECF No. 19865].

I. **General Status and Activities of the Oversight Board, Including Measures Taken in Response to the COVID-19 Pandemic, Preparations for PRRADA Compliance, and Anticipated Timetables for Implementation of the Recently–Confirmed Plans of Adjustment**

1. The Oversight Board and the Government of Puerto Rico (the "Government") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus and to utilize effectively federal funding related to the COVID-19 pandemic.

2. On January 18, 2022, the Court confirmed the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2022 [Case No. 17-BK-03283, ECF No. 19784] (the "Modified Eighth Amended Plan"). The effective date of the Modified Eighth Amended Plan is projected to occur on or before March 15, 2022. The Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), among other parties, are working collaboratively to finalize various documents and transactions necessary for the consummation of the Modified Eighth Amended Plan. To those ends, the Oversight Board (a) in consultation with the Governor and AAFAF, certified the 2022 Fiscal Plan for the Commonwealth, which, among other things, incorporates the terms of the Modified Eighth Amended Plan, at a public meeting on January 27, 2022; and (b) is preparing the *Third Amended Plan Supplement and Plan Related Documents of the Commonwealth of Puerto Rico, et al.* Now that the 2022 Fiscal Plan for the Commonwealth has been certified, the Oversight Board will begin the process of amending the 2022 Budget for the Commonwealth.

3. On January 20, 2022, the Court approved the Qualifying Modification for the Puerto Rico Convention Center District Authority [Case No. 21-01493, ECF No. 72] (the "CCDA QM") and the Qualifying Modification for the Puerto Rico Infrastructure Financing Authority

2

[Case No. 21-01492, ECF No. 82] (the "PRIFA QM"). The effective dates of the CCDA QM and PRIFA QM are projected to occur contemporaneously with the effective date of the Modified Eighth Amended Plan on or before March 15, 2022.

4. On January 20, 2022, President Biden signed Public Law No. 117-82, the Puerto Rico Recovery Accuracy in Disclosures Act ("PRRADA"). PRRADA mandates certain disclosures for professionals applying for compensation pursuant to sections 316 and 317 of PROMESA. On January 21, 2022, the Court entered the *Order Directing Parties to Meet and Confer Regarding the Enactment of the Puerto Rico Recovery Accuracy in Disclosures Act* [Case No. 17-BK-03283, ECF No. 19860] (the "PRRADA Order"), which directs the Oversight Board's counsel, the Fee Examiner, and the Office of the United States Trustee (the "Conferring Parties") to meet and confer to discuss PRRADA's requirements. In compliance with the PRRADA Order, the Conferring Parties and counsel for AAFAF met on January 26, 2022 and January 28, 2022. On January 31, 2022, pursuant to the PRRADA Order, the Conferring Parties filed for the Court's consideration an informative motion containing various proposals to ensure compliance with PRRADA [Case No. 17-BK-03283, ECF No. 19964]. While the conferees anticipate certain disputes relating to retroactivity and related issues in the implementation of PRRADA, they agreed (i) on a procedure for consideration of the Oversight Board's proposal of a material interested party list (the "MIP List") and ultimate approval of an MIP List, (ii) on a procedure designed to avoid any unnecessary delays by having professionals submit their interim fee applications to the Fee Examiner without delays, while awaiting the approval of the MIP List and their preparations of their disclosures of connections before filing their applications in accordance with PRRADA, (iii) the continuation of the professionals' monthly invoices and partial payments because they are not applications for interim or final fees, and (iv) on certain material issues about PRRADA's

3

implementation, especially insofar as it imposes requirements retroactively on professionals, which issues will require resolution if and to the extent a professional is not disinterested or represented an adverse interest to the Debtors prior to enactment of PRRADA.

II. **General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments**

5. The Oversight Board's relationship with the Government continues to be collaborative and the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority. Governor Pierluisi is serving as his own *ex officio* representative on the Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues.

6. In addition to working together to accomplish the items necessary for the implementation of the Modified Eighth Amended Plan, the CCDA QM, and the PRIFA QM, the Oversight Board and AAFAF are also working together to restructure bonds issued by the Puerto Rico Public Finance Corporation ("PFC") pursuant to Title VI of PROMESA. To those ends, on January 20, 2022, the Oversight Board, AFFAF, on behalf of the PFC, and certain holders of bonds issued by PFC (the "PFC Bonds") entered into a Restructuring Support Agreement, which provides for the restructuring of the PFC Bonds. The Oversight Board and AAFAF are preparing a draft of the qualifying modification and corresponding solicitation materials.

III. **General Status of Work Toward Plans of Adjustment for PREPA and HTA**

A. **PREPA Plan of Adjustment**

7. As noted in the January 19, 2022 Status Report,[2] to the extent practicable the Oversight Board determined to move forward with the settlement set forth in the May 2019 Restructuring Support Agreement ("PREPA RSA"), which would enable filing a plan of adjustment for PREPA. The PREPA RSA eliminates PREPA as the obligor on the bond debt and thereby eliminates PREPA's default risk and creditors' remedies. The Oversight Board is continuing its efforts to propose a plan by the end of March 2022, but is cognizant of the fact that the date may slip to the second quarter due to circumstances outside the Oversight Board's control. Implementation of the PREPA RSA remains dependent on the Puerto Rico Legislature passing certain legislation required by the terms of the RSA. The Oversight Board has prepared a draft of the necessary legislation and contacted certain legislative leaders to request its enactment.

8. The Oversight Board will assess the feasibility and implementation of the PREPA RSA based on the outcome of the legislative process. The Oversight Board continues to believe the PREPA RSA represents the best case scenario for all relevant parties, and is therefore focused on restructuring PREPA's debt in accordance with the RSA as opposed to alternative scenarios that may include less favorable terms for PREPA, bondholders, and customers.

B. **HTA Plan of Adjustment**

9. The Oversight Board has been working actively to prepare the plan of adjustment for HTA (the "HTA Plan") and has received comments from various parties in interest. As part of this process, on January 3, 2022, the Oversight Board requested proposals for an independent, third-party analysis on the socioeconomic effects of toll increases in Puerto Rico.

---

[2] *Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion*, [Case No. 17-BK-4780, ECF No. 2691] (the "January 19, 2022 Status Report"). Capitalized terms not otherwise defined herein shall have the meaning given to them in the January 19, 2022 Status Report.

10. The Oversight Board will continue to work collaboratively with the parties in interest to develop the HTA Plan and hopes to file the HTA Plan in the first quarter of 2022. The timing may be impacted by receipt from the Government of relevant information, including the generation of necessary financial and other information, and the certification of a fiscal plan for HTA.

IV. **General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters**

11. Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order"), the Debtors have filed twenty-two notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), see *First Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 13603] (the "First ACR Transfer Notice"), *Second Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14182] (the "Second ACR Transfer Notice"), *Third Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14785] (the "Third ACR Transfer Notice"), *Fourth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15027] (the "Fourth ACR Transfer Notice"), *Fifth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15086] (the "Fifth ACR Transfer Notice"), *Sixth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15116] (the "Sixth ACR Transfer Notice"), *Seventh Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15534] (the "Seventh ACR Transfer Notice"), *Eighth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15721] (the "Eighth ACR Transfer Notice"), *Ninth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15948] (the "Ninth ACR Transfer Notice"), *Tenth*

*Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16259] (the "Tenth ACR Transfer Notice"), *Eleventh Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16514] (the "Eleventh ACR Transfer Notice"), *Twelfth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16677] (the "Twelfth ACR Transfer Notice"), *Thirteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16926] (the "Thirteenth ACR Transfer Notice"), *Fourteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 17128] (the "Fourteenth ACR Transfer Notice"), *Fifteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 17212] (the "Fifteenth ACR Transfer Notice"), *Sixteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 17320] (the "Sixteenth ACR Transfer Notice"), *Seventeenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 17968] (the "Seventeenth ACR Transfer Notice"), *Eighteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 18364] (the "Eighteenth ACR Transfer Notice"), *Nineteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 18956] (the "Nineteenth ACR Transfer Notice"), *Twentieth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 19490] (the "Twentieth ACR Transfer Notice"), *Twenty-First Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 19626] (the "Twenty-First ACR Transfer Notice"), *Twenty-Second Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 19675] (the "Twenty-Second ACR Transfer Notice," and collectively, the "ACR Transfer Notices"), and have transferred approximately 44,701 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation. The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or

7

the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices.

12. Subsequent thereto, the Debtors have filed notices, see *Notice of Filing of First Administrative Claims Resolution Status Notice* [ECF No. 14515] and accompanying *First Administrative Claims Resolution Status Notice* [ECF No. 14515-1] (the "First ACR Status Notice"), *Notice of Filing of Second Administrative Claims Resolution Status Notice* [ECF No. 15367] and accompanying *Second Administrative Claims Resolution Status Notice* [ECF No. 15367-1] (the "Second ACR Status Notice"), *Notice of Filing of Third Administrative Claims Resolution Status Notice* [ECF No. 15812] and accompanying *Third Administrative Claims Resolution Status Notice* [ECF No. 15812-1] (the "Third ACR Status Notice"), *Fourth Administrative Claims Reconciliation Notice* [ECF No. 16322] (the "Fourth ACR Status Notice"), *Fifth Administrative Claims Reconciliation Notice* [ECF No. 16888], *Sixth Administrative Claims Reconciliation Notice* [ECF No. 16888] (the "Sixth ACR Status Notice"), *Seventh Administrative Claims Reconciliation Notice* [ECF No. 18363] (the "Seventh ACR Status Notice"), *Eighth Administrative Claims Reconciliation Notice* [ECF No. 19380] (the "Eighth ACR Status Notice"), and *Ninth Administrative Claims Reconciliation Status Notice* [ECF No. 19945] (the "Ninth ACR Status Notice") wherein the Debtors reported the successful resolution of over 26,127 ACR Designated Claims. The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on March 29, 2022, and the Debtors anticipate reporting the successful resolution of hundreds of additional ACR Designated Claims.

13. With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their

8

claims. Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received and determining whether the information received is sufficient to complete the claimants' administrative file; where necessary, the Debtors will follow up with the claimants to ensure they have a complete administrative file for such claimants. The Debtors continue to await responses from additional claimants. In many instances, the Debtors have re-sent mailings to claimants who did not respond to the Debtors' initial letter, reiterating their request for information sufficient to complete the claimants' administrative file, and warning them that failure to respond may force the Debtors to object to their claims. The Debtors continue to await responses from such claimants, and may ultimately be forced to object to their claims. With respect to additional ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims.

14. As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR all outstanding claims which they understood, as of that date, were eligible for such transfer. The Debtors' analysis of outstanding claims remains ongoing, however. Accordingly, the Debtors identified additional claims suitable for transfer into ACR which were transferred pursuant to the Seventeenth ACR Transfer Notice, the Eighteenth ACR Transfer Notice, the Nineteenth ACR Transfer Notice, the Twentieth ACR Transfer Notice, the Twenty-First ACR Transfer Notice, and the Twenty-Second ACR Transfer Notice. To the extent the Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be transferred into the ACR Procedures. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on December 28, 2021. The Debtors may transfer additional claims into Administrative Claims Reconciliation on or before that date.

15. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order"), the Debtors have filed nineteen notices transferring claims into the ADR Procedures (as defined in the ADR Order), see *First Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 13609] (the "First ADR Notice"), *Second Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14090] (the "Second ADR Notice"), *Third Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14521] (the "Third ADR Notice"), *Fourth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14786] (the "Fourth ADR Notice"), *Fifth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15085] (the "Fifth ADR Notice"), *Sixth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15113] (the "Sixth ADR Notice"), *Seventh Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15217] (the "Seventh ADR Notice"), *Eighth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15533] (the "Eighth ADR Notice"), *Ninth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15720] (the "Ninth ADR Notice"), *Tenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15861] (the "Tenth ADR Notice"), *Amended Eleventh Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 16540] (the "Eleventh ADR Notice"), *Twelfth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 16517] (the "Twelfth ADR Notice"), *Thirteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 16767] (the "Thirteenth ADR Notice"), *Fourteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 17208] (the "Fourteenth ADR Notice"), *Fifteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 17832] (the "Fifteenth ADR Notice"), *Sixteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 18259] (the

"Sixteenth ADR Notice"), *Seventeenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 19169] (the "Seventeenth ADR Notice"), *Eighteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 19594] (the "Eighteenth ADR Notice"), *Nineteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 19671] (the "Nineteenth ADR Notice," and collectively, the "ADR Notices"), and have transferred approximately 378 claims into the ADR Procedures.

16. Subsequent thereto, the Debtors have filed notices, see *First Alternative Dispute Resolution Status Notice* [ECF No. 14185] (the "First ADR Status Notice"), *Second Alternative Dispute Resolution Status Notice* [ECF No. 15028-1] (the "Second ADR Status Notice"), *Third Alternative Dispute Resolution Status Notice* [ECF No. 15551-1] (the "Third ADR Status Notice"), *Fourth Alternative Dispute Resolution Status Notice* [ECF No.15958-1] (the "Fourth ADR Status Notice"), *Fifth Alternative Dispute Resolution Status Notice* [ECF No. 16684] (the "Fifth ADR Status Notice"), *Amended Sixth Alternative Dispute Resolution Status Notice* [ECF No. 17267] (the "Sixth ADR Status Notice"), *Seventh Alternative Dispute Resolution Status Notice* [ECF No. 17997] (the "Seventh ADR Status Notice"), *Eighth Alternative Dispute Resolution Status Notice* [ECF No. 18981] (the "Eighth ADR Status Notice"), *Ninth Alternative Dispute Resolution Status Notice* [ECF No. 19624] (the "Ninth ADR Status Notice," and collectively, the "ADR Status Notices") indicating five (5) claims were settled in Evaluative Mediation (as defined in the ADR Order), sixteen (16) claims have been fully resolved, well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order), and approximately eleven (11) claimants have accepted the Debtors' offers. The Debtors are in the

process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

17. The Debtors are also evaluating all responses received to Information Requests and Offers, and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures. Certain claimants have not responded to Information Requests or Offers, and the Debtors have already or are in the process of re-sending mailings to claimants who did not respond. The Debtors continue to await responses from such claimants, and may ultimately be forced to object to their claims. In addition, the Debtors are in the process of preparing offers or making Information Requests to additional ADR Designated Claimants. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due February 4, 2021, and the Debtors anticipate transferring additional claims into the ADR Procedures on that date.

18. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 7,000, while the actual number transferred might be as low as 1,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

V. **Anticipated Timing and Volume of Objections to Claims**

19. The Debtors' claims reconciliation process remains ongoing. Accordingly, the Debtors anticipate that they will continue to schedule omnibus and/or individual claim objections for the next several omnibus hearings. However, the Debtors also anticipate that, going forward,

12

the number of claim objections scheduled for each omnibus hearing will be comparatively fewer in number, with fewer claims being included on each omnibus objection.

20. While the Commonwealth, ERS, PBA, and HTA have resolved a substantial number of their claims, the Debtors continue to identify claims filed at each entity that are best resolved via objection. For example, the Debtors anticipate continuing to file omnibus and/or individual objections to claims that have been subsequently amended, that are duplicative of master claims, that have been satisfied and released, that are late filed, or that assert liabilities owed by entities that are not Title III debtors, among other possible bases. Further, as noted above, the Debtors may also be forced to object to claims held by claimants who have not responded to mailings sent in the ADR and ACR processes. In addition, as the Debtors' focus shifts to PREPA's restructuring, the Debtors anticipate that, while the total number of omnibus objections may decrease, the number of omnibus and individual claim objections filed by PREPA may increase.

[*Remainder of page intentionally left blank*]

Dated: February 1, 2022
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Paul V. Possinger
Ehud Barak
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
      brosen@proskauer.com
      ppossinger@proskauer.com
      ebarak@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*