**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUBLIC BUILDINGS AUTHORITY<br><br>*Debtors*[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283 – LTS<br>(Jointly Administered) |

**CREDIT UNION'S JOINT MOTION FOR STAY PENDING APPEAL OF ORDER AND JUDGMENT CONFIRMING MODIFIED EIGHTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET. ALS.**

---

[1] The Debtors in these Title III Cases, along with each debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of federal Tax ID: 3481); (ii) Puerto Rico Sales tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**I.    JURISDICTION** .................................................................................................. 2
**II.    RELEVANT PROCEDURAL BACKGROUND** ............................................ 2
**III.   RELIEF REQUESTED** ...................................................................................... 3
**IV.   BASIS FOR RELIEF REQUESTED – APPLICABLE LAW** ........................ 3
**V.    LIKELIHOOD OF SUCCESS ON THE MERITS** ......................................... 4
**IV.   THE POTENTIAL FOR IRREPARABLE HARM IN THE ABSENCE OF A STAY**   7
**VII.   THE OTHER PARTIES WILL NOT BE SUBSTANTIALLY HARMED BY THE RELIEF SOUGHT** ................................................................................................................ 9
**VIII.   THE EFFECT ON THE PUBLIC INTEREST** ........................................... 10
**IX.   PREEMPTION** ................................................................................................ 11
**X.    CONCLUSION** ................................................................................................ 12
**CERTIFICATE OF SERVICE** ................................................................................ 13

1

# TABLE OF AUTHORITIES

Cases

Cooperativa de Ahorro y Crédito v. Oversight & Mgmt. Bd., 989 F. 3rd 123 (1st Cir., 2021) ..... 10
In re Adelphia Commc'n Corp., 361 B.R. 337, 347-48 (S.D.N.Y. 2007) .................................... 10
In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985) .................................................. 9
In re Eagle-Picher Indus., 963 F.2d 855, 858-69 (6th Cir. 1992) ...................................................... 4
In re Holstine, 458 B.R. 392, 394 (S.D. Michigan) ......................................................................... 4
In re MEDSCI Diagnostics, Inc., 2011 Bankr. LEXIS 283, 2011 WL 280866 (Bankr. D.P.R. 2011). ............................................................................................................................................ 4
In re Morgan, No. 10-40497-JNF, 2011 Bankr. LEXIS 5788, 2011 WL 1168297 (Bankr. D. Mass. 2011)....................................................................................................................................... 4
In re Smith, 501 B.R. 332, 335-36 (Bankr. E.D. Mich. 2013)......................................................... 8
Jones v. Caruso, 569 F.3d 258, 277 (6th Cir. 2009) ...................................................................... 9
Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir.1991) ......................................................................................................................................... 8
Service Employees Intern. Union Local 1 v. Husted, 698 F.3d 341, 343 (6th Cir. 2012).............. 8
Sindicato Puertorriqueño de Trabajadores v. Fortuno, 699, F.3d 1, 10 (1st Cir. 2012). ................ 3
United Steelworkers of Am. v. Textron, Inc., 836 F. 2d 6, 7 (1st Cir. 1987) ................................. 4
Weingarten Nostat, Inc. v. Service Merchandise Co., Inc., 396 F.3d 737, 741 (6th Cr. 2005).... 10

Statutes

48 U.S.C. § 2166................................................................................................................................. 2
48 U.S.C. § 2167................................................................................................................................. 2
Bankruptcy Rule 8007 ....................................................................................................................... 3
Fed. R. Bankr. P. 7004(b) ................................................................................................................ 14
Fed. R. Bankr. P. 8007 (a)(1)(A). ...................................................................................................... 3
Fed. R. Bankr. P. 9014(b) ................................................................................................................ 14
Rule 8 of the Federal Rules of Appellate Procedure......................................................................... 2
Rule 8007 of the Federal Rules of Bankruptcy Procedure ............................................................... 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUBLIC BUILDINGS AUTHORITY<br><br>*Debtors*[2] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283 – LTS<br>(Jointly Administered) |

**CREDIT UNION'S JOINT MOTION FOR STAY PENDING APPEAL OF ORDER AND JUDGMENT CONFIRMING MODIFIED EIGHTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET. ALS.**

**TO THE HONORABLE JUDGE LAURA TAYLOR SWAIN**:

COME NOW, Cooperativa de Ahorro y Crédito Abraham Rosa, Cooperativa de Ahorro y Crédito de Ciales, Cooperativa de Ahorro y Crédito de Rincón, Cooperativa de Ahorro y Crédito Vega Alta, Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandía, and Cooperativa de Ahorro y Crédito de Juana Díaz, through the undersigned attorneys, (hereinafter, "the Credit Unions" or "the Cooperatives") and hereby file this joint motion for stay pending appeal of the (i) "Order and

---

[2] The Debtors in these Title III Cases, along with each debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of federal Tax ID: 3481); (ii) Puerto Rico Sales tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority" (Dkt. No. 19813), and of the (ii) implementation of the "Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico et als.", dated January 14, 2022. (Dkt. No. 19813-1).

**I.      JURISDICTION**

The Credit Unions bring this motion pursuant to Rule 8 of the Federal Rules of Appellate Procedure and Rule 8007 of the Federal Rules of Bankruptcy Procedure. This Honorable Court has jurisdiction over this motion pursuant to 48 U.S.C. § 2166. Venue for this matter is proper in this district pursuant to 48 U.S.C. § 2167.

**II.     RELEVANT PROCEDURAL BACKGROUND**

1.      On January 14, 2022, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed the *Modified Eight Amended Title III Joint Plan of the Commonwealth of Puerto Rico et al.* (Dkt. No. 19784) (hereinafter, the "Plan of Adjustment").

2.      On January 18, 2022, this Honorable Court entered *the Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (Dkt. No. 19813) ("Order Confirming Plan") and the *Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (Dkt. No. 19812) ("Findings of Fact and Conclusions of Law").

2

3. On January 28, 2022 the Credit Unions filed a *Notice of Appeal* regarding the Order Confirming Plan and the Findings of Fact and Conclusions of Law. (Dkt. No. 19938) [USCA Case Number 22-01079].

### III. RELIEF REQUESTED

4. The Credit Unions seek entry of an order, staying the Order Confirming Plan, pending its appeal.

### IV. BASIS FOR RELIEF REQUESTED – APPLICABLE LAW

5. A motion for stay pending appeal is governed by Bankruptcy Rule 8007. The rule provides that "ordinarily a party must move first in the bankruptcy court for the following relief: (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007 (a)(1)(A). The allowance of a stay pending appeal is discretionary.

6. In the First Circuit, in a motion for a stay pending appeal, the movant bears the burden of demonstrating: (i) a likelihood of success on the merits; (2) the potential for irreparable harm in the absence of a stay; (3) whether issuing a stay will burden the opposing party less than denying a stay will burden the movant; and (4) the effect, if any, on the public interest. *See* Sindicato Puertorriqueño de Trabajadores v. Fortuno, 699, F.3d 1, 10 (1st Cir. 2012). *See also* In re Holstine, 458 B.R. 392, 394 (S.D. Michigan) and In re Eagle-Picher Indus., 963 F.2d 855, 858-69 (6th Cir. 1992).

7. In *Acevedo-Garcia*, the First Circuit added: "In essence, the issuance of a **stay** depends on 'whether the harm caused [movant] without the [stay], in light of the [movant's] likelihood of eventual success on the merits, outweighs the harm the [stay] will cause [the non-moving party]'" *Id.* at 16-17 (citing United Steelworkers of Am. v. Textron, Inc., 836 F. 2d 6, 7 (1st Cir.

3

1987)). *See also* In re Morgan, No. 10-40497-JNF, 2011 Bankr. LEXIS 5788, 2011 WL 1168297 (Bankr. D. Mass. 2011) (citing In re MEDSCI Diagnostics, Inc., 2011 Bankr. LEXIS 283, 2011 WL 280866 (Bankr. D.P.R. 2011).

## V.     LIKELIHOOD OF SUCCESS ON THE MERITS

8.     The Credit Unions submit that they have a high likelihood of success on the merits of their appeal due to the nature of their claims and because of the high public interest involved. The Credit Unions all filed Proofs of Claim in the Commonwealth's case relating to unconstitutional and fraudulent taking of their assets by the Commonwealth of Puerto Rico without just compensation. These claims are based on the U.S. Constitution, particularly on the Takings Clause of the Fifth Amendment. These fact intensive claims were included in detail in Adversary Proceeding No. 18-00028 filed before this Honorable Court.

9.     The gist of the takings claim of the Credit Unions (the challenged governmental action) is the governments' regulatory compulsion over the Credit Unions of value impaired investments that were knowingly issued by the Commonwealth while in insolvency. This is a per se or physical taking that cannot be erased or discharged in a bankruptcy proceeding because it would be in violation of the Constitution; not only the resulting of value due to the bankruptcy procedure, but the claim itself as the result of a previous consummated taking by the government that was not accompanied by just compensation.

10.     Accordingly, the Credit Unions' objections to the Plan of Adjustment and request for exception from discharge of their claims were based on the constitutional protection of their claims under the Fifth and Fourteenth Amendments of the Constitution of the United States that prohibit the taking of property without just compensation.

4

11. Notwithstanding these important constitutional claims, this Honorable Court overruled the Credit Unions' objections to the Plan when entering the Order Confirming Plan based on its dismissal of Adversary Proceeding No. 18-00028, entered a few days before the final stages of the confirmation of the Plan, which was based on an alleged insufficiency of the Credit Unions' allegations, including regarding issues of fact that should have been decided on the merits.

12. At the moment of overruling the Credit Unions' objections to the Plan-- based upon the dismissal of Adversary Proceeding No. 18-00028-- such dismissal was not a final and unappealable judgment. As a matter of fact, when the Order Confirming the Plan was entered the Credit Unions had indeed filed before this Honorable Court their Notice of Appeal regarding adversary proceeding 18-00028 on January 12, 2022. *See* Notice of Appeal filed at Docket No. 194 of Adv. Proc. 18-00028. [USCA Case Number 22-1048]. Therefore, the basis used by this Honorable Court to overrule the Credit Unions' objections to the Plan is legally contested, and subject to review. Some of the reasons for that review, which reinforce the Credit Unions' likelihood of success on appeal, are as follows:

    a. In issuing its opinion that the Credit Unions' allegations of fraudulent conduct by COSSEC and the Government were not "specific" enough, the Honorable Court ignored various well-pleaded averments about the misuse of regulatory power to seize resources from cooperatives. These allegations are more than plausible, especially considering that additional information regarding the Government's conduct is under the defendants' control and would be easily confirmed during ordinary discovery proceedings. Said discovery proceedings are being precluded and prevented by a premature conclusion of the judicial process in the early pleading stages, something that rewards, protects, and favors the entities and officials that defrauded the cooperatives. All of this is contrary to the transparency sought by PROMESA.

5

  b. The Honorable Court erroneously opined that the Credit Unions did not allege that the Government knowingly made misleading representations. Adversary Proceeding 18-00028 includes various factual averments to that effect. These include allegations that the Oversight Board itself made in its lawsuit against several investment banks (Adversary Proceeding Case No. 19-00280), allegations indicating that, as of 2008, the Government was aware of its insolvency.

  c. The Honorable Court erroneously opined that the Credit Unions' claims were time-barred. As clearly argued in the briefs before the Honorable Court, this is a premature conclusion counter to the plaintiffs' written communications tolling statutes of limitation. The Honorable Court's hasty opinion precluded the production of these communications during an ordinary discovery proceeding and their eventual presentation as evidence during the trial on its merits that these claims deserve.

  d. The Honorable Court erroneously adjudicated factual disputes without the parties having had the opportunity to conduct discovery and present evidence. This error includes the Court's adjudication that there was no government "coercion" in the placement of the bonds upon the Credit Unions. This is a factual matter that needs to be taken to trial.

  e. The Honorable Court's premature determination (which precluded discovery and the presentation of evidence) undermines the constitutional checks and balances that protect citizens from the abuse of power exerted by the executive branch. This situation allows governmental misconduct to escape the independent evaluation of the judicial branch. Even if the shocking governmental failures and misconduct averred in the Credit Unions' claims in Adversary Proceeding 18-00028 may seem "inconvenient truths", it does not justify denying the plaintiffs their constitutional right to ask the government to redress grievances. On the contrary, the need

6

for transparency, due process, and plain honesty in government, warrant a higher -- not lesser – judicial inquiry over governmental conduct in cases that involve the misuse of public authority. That is the nature of the claims presented by the Credit Unions before this Honorable Court.

13. The Credit Unions submit to this Honorable Court and will pursue before the Court of Appeals in USCA Cases 22-1048 and 22-1079 that their constitutional claims may not be reduced as part of a bankruptcy case. The Cooperatives are constitutionally entitled to just compensation for their claims in full, without impairment, reduction, or adjustment because of the Debtor's bankruptcy.

14. Moreover, the Credit Unions respectfully submit before this Honorable Court and will argue before the Court of Appeals that the Commonwealth should not be entitled to the discharge provisions in the Order Confirming Plan as to their claims due to its dishonesty, fraud and disregard of fiduciary duties. Discharge, its legal principles and factual surroundings are equitable in nature. The Order Confirming the Plan should not foster debtor's dishonesty and fraud. This Honorable Court's findings and conclusions should not be construed to be able to reward a dishonest debtor with a discharge of the Credit Union's claims and the release and exculpation of the Commonwealth from these claims. However, as these currently stand they give the impression that the Honorable Court and PROMESA condone dishonesty.

15. All of these arguments demonstrate a strong likelihood of success of the appeal.

**IV.     THE POTENTIAL FOR IRREPARABLE HARM IN THE ABSENCE OF A STAY**

16. In addition to the above, the Credit Unions' probability of success should also be evaluated under the sliding scale analysis adopted by various Circuits with respect to the factor previously discussed. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [movants] will suffer absent the stay. Simply stated, more of one

7

excuse less of the other." Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir.1991); *see also* Service Employees Intern. Union Local 1 v. Husted, 698 F.3d 341, 343 (6th Cir. 2012) (*quoting Griepentrog*); In re Smith, 501 B.R. 332, 335-36 (Bankr. E.D. Mich. 2013) (same). Consistent with this sliding scale approach, a stay is appropriate "where [the movant] fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the [non- moving party] if [a stay] is issued." In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985) (citations omitted); *see also* Jones v. Caruso, 569 F.3d 258, 277 (6th Cir. 2009) (affirming that an injunction may issue upon a showing of "serious questions going to the merits").

17. In the present case, the Order Confirming the Plan discharges the constitutional claims of the Credit Unions and exposes them and their members to the irreparable harm of financial and regulatory distress caused by the bankrupt government in contravention to the duties that same government has to safeguard the credit unions and their members.

18. As shown throughout all of their filings in the docket, and as further discussed herein, the claims filed by the Credit Unions are **affected with a high public interest**, as these claims pertain to the protection and restoration of the capital and resources of depository institutions, their members and depositors.

19. This irreparable harm and the public interest at stake certainly demonstrate serious questions that go to the merits of the Credit Unions arguments on appeal, that should favor the entry of a stay of the Order Confirming Plan pending appeal.

20. Finally, this Honorable Court must consider in its analysis that the risk of statutory and/or equitable mootness with respect to the issues subject to appeal strongly supports a stay. *See, e.g.*,

8

In re Adelphia Commc'n Corp., 361 B.R. 337, 347-48 (S.D.N.Y. 2007). ("[W]here the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied") (emphasis in original); *see also* Weingarten Nostat, Inc. v. Service Merchandise Co., Inc., 396 F.3d 737, 741 (6th Cr. 2005) (noting that the district court below determined that potential mootness of appeal likely established irreparable harm even though the district court denied the stay on other grounds).

21. The risk of equitable mootness in the instant case is real and supported by the dismissal of various appeals pursuant to said doctrine with regards to COFINA's Plan of Adjustment. Cooperativa de Ahorro y Crédito v. Oversight & Mgmt. Bd., 989 F. 3rd 123 (1st Cir., 2021) Considering the equitable mootness doctrine, the Credit Unions rights to appeal this Honorable Court decisions would be affected if a stay of the order confirming the plan is not implemented. If this situation is allowed, it would constitute another violation to the Credit Unions' rights.

**VII. THE OTHER PARTIES WILL NOT BE SUBSTANTIALLY HARMED BY THE RELIEF SOUGHT**

22. The stay requested by the Credit Unions will not affect the Debtors nor other Creditors, especially considering that preservation of the rights and claims of the Credit Unions under Adversary Proceeding 18-00028, their proof of claims, and any financial contingency required for that preservation, entails a minimal amount (not even reaching seven tenths of one percent) when compared to the scope of the Plan of Adjustment.

23. This is reinforced by the Oversight Board's acknowledgment that making takings claims non-dischargeable would not render the plan unfeasible and that such amounts could be paid by the Commonwealth under its current fiscal plan.[3]

24. With regards to the Debtors, their financial and operational condition will remain unaffected by a stay pending the appeal, as that would be the same condition under which the government has operated since 2017. With regards to creditors, there is no risk that, while the appeal is pending, Debtors will deplete or loose the sources from which payment will be made pursuant to the plan. The payments to be paid in cash are segregated from the Debtors' operational accounts and the remaining payments are to be made through the issuance of already authorized new bonds. None of these matters are affected nor precluded by a stay protecting the Credit Unions' claims during appeal.

**VIII. THE EFFECT ON THE PUBLIC INTEREST**

25. Preservation of the Credit Unions' claims is also required pursuant to the public interest, as it pertains to the protection of the capital and resources of depository institutions. In this sense, the protection of the Credit Unions and of their members and depositors is aligned with the policy objectives of a Plan of Adjustment of a municipality, which is the higher aim of ensuring the governmental function of protecting and serving the municipality's citizens. Failure to protect the

---

[3] In its demonstrative presentation filed on November 22, 2021 at Docket No.19328, the Oversight Board submitted that on the effective date of the plan of adjustment there would be $532 million in remaining cash after making the plan's disbursements. See page 2 of Exhibit A, *Response to Court's Inquiries*, page 2 of the Debtors' Demonstrative Presentations in Connection with Closing Arguments. Docket No. 19328. This was also backed and supported by the representations of the Oversight Board's counsel in open court at closing argument stating that, from a feasibility point of view, the debtors would be able to handle the takings claims if these were to be determined non-dischargeable. These representations and presentations made by the Oversight Board bind the debtor before this Honorable Court and should be part of the Facts and/or Conclusions entered in Connection with the Confirmation of the Commonwealth's Plan of Adjustment. The evidence submitted and argued by the Oversight Board showed that there is a remaining cash of $532 million on the effective date of the plan, which would enable the Commonwealth to sustain feasibility in the event of a non-dischargeability determination by any appellate court of the taking claimants' claims.

10

credit unions and their members and depositors defeats that purpose by affecting that same constituency. Based on data published by COSSEC as of September 2021, the Plaintiffs in Adversary Proceeding 18-00028 had around 180,000 members and depositors. (Members and depositors in the whole system exceed 1.3 million.)

26. Preservation of Credit Unions' rights and claims does not impede the formulation and confirmation of a feasible Plan of Adjustment and any financial contingency resulting from that preservation does not adversely affect third parties, as the Credit Unions' claims are not material amounts as compared to the Adjusted debts under the Plan, not even reaching seven tenths of one percent (0.658%) of the restructured debt.

## IX. PREEMPTION

27. The Order confirming the Plan seeks to collaterally and surreptitiously obtain a summary adjudication of the Claims of the Credit Unions by broadly swiping away Commonwealth laws through an excessively broad and premature finding of preemption. The all-encompassing and anticipatory preemption confirmed by the Court is in error for the following reasons:

    a. It is inconsistent with well-established doctrine that balances federal mandates with the due respect to state laws. We hereby restate the Credit Unions' arguments against preemption of valid Commonwealth laws, raised in Adv. Proc. 19-00389. See docket # 66 in Adv. Proc. 19-00389.

    b. It is contrary to PROMESA's acknowledgement of the Commonwealth's power to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality, including expenditures for such exercise. Under the Court's interpretation of preemption of the

11

Plan of Adjustment [Docket 19812 at 96], the Oversight Board shall be vested with power to repeal valid laws, which is a legislative power that it lacks under PROMESA.

    c.    It is unripe and non-justiciable as it pertains to preemption controversies that are not presently before this Court.

    d.    It is not supported by any judicial determinations of fact and findings of law directly pertaining to the factual and legal controversies specifically raised by the Credit Unions. Let us remember that these claims are not mere actions for the collection of money, but which specifically assert the non-dischargeability of claims for violations of constitutional rights, claims for intentional fraud and willful misconduct, as well as for compliance and implementation of valid non preempted Commonwealth laws that are necessary for the protection of the 1.3 million residents of Puerto Rico that are members and depositors insured by the government.

29. We hereby restate the Credit Union's arguments against preemption of valid Commonwealth laws raised in Adversary Proceeding 19-00389, and in the Objection to the Revised Eighth Amended Title III Joint Plan of Adjustment and to the Revised Proposed Order and Judgment filed at Docket No. 19395 and 19221.

## X. CONCLUSION

30. In view of the above, the Credit Unions respectfully request from this Honorable Court to grant the instant motion and enter an order of Stay of the Order Confirming Modified Eighth Amended Plan of Adjustment of the Commonwealth of Puerto Rico et. al. entered on January 18, 2022 and its implementation, while the Credit Unions' appeal to the First Circuit Court of Appeals is pending.

**WHEREFORE,** the appearing Credit Unions respectfully request from this Honorable Court to enter an order of Stay of the Order Confirming Modified Eighth Amended Plan of Adjustment of the Commonwealth of Puerto Rico entered on January 18, 2022 at docket 19813, while the Appeal of this Order is entertained by the United States Court of Appeals for the First Circuit.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, in accordance with Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004(b), and the Court's Fifteenth Amended Notice, Case Management and Administrative Procedures Order [ECF#17127 ] (the "CMP Order"), that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the parties appearing in said system including the US Trustee and to all those parties registered to receive notice within the electronic notification service.

**[SPACE INTENTIONALLY LEFT IN BLANK]**

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico this 4th day of February, 2022.



*Attorneys for Credit Unions*
*PO Box 191757*
*San Juan, PR 00919-1757*
*Tel. (787) 722-2500*
*Fax (787) 777-1376*

*/s/ Enrique M. Almeida, Esq.*
***Enrique M. Almeida, Esq.***
*USDC-PR 217701*
*enrique.almeida@almeidadavila.com*