**Hearing Date: March 23, 2022, at 9:30AM (Atlantic Standard Time)**
**Response Deadline: March 7, 2022, at 4:00PM (Atlantic Standard Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and ERS.** |

### FOUR HUNDRED TWENTY-SIXTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE AND NO LIABILITY BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board

for Puerto Rico (the "Oversight Board"), as sole Title III representative pursuant to section 315(b)

of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this

four hundred twenty-sixth omnibus objection (the "Four Hundred Twenty-Sixth Omnibus

Objection") to disallow in their entirety the proofs of claim listed on **Exhibit A** hereto, each of

which is based, in part, on (*a*) bond claims that are duplicative of one or more master proofs of

claim filed against the Debtors on behalf of the holders of certain bonds or (*b*) an ownership interest

in bonds issued by the Government Development Bank ("GDB").  In support of the Four Hundred

Twenty-Sixth Omnibus Objection, the Debtors respectfully represent as follows:

### JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section

306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

### BACKGROUND

**A.    The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a),

commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21,

2017, the Oversight Board issued restructuring certifications pursuant to PROMESA sections

104(j) and 206 and filed voluntary petitions for relief for ERS pursuant to PROMESA section

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

304(a), commencing cases under Title III thereof (the "ERS Title III Case," and, together with the Commonwealth Title III Case, the "Title III Cases").  On October 9, 2019, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 8829.[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.      Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

As explained below, master proofs of claim have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA") and the Puerto Rico Aqueduct and Sewer Authority ("PRASA").

6.       ***PRIFA***—PRIFA is an affiliate of the GDB and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act"). PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A.  US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.

7.       ***PRASA***—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico.  PRASA issued certain revenue bonds (the "PRASA Bonds") under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, *Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto*

Rico, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular")
serves as trustee for the PRASA Bonds and filed a master proof of claim against the
Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk
as Proof of Claim No. 22620 (the "PRASA Master Claim," and together with the PRIFA Master
Claims, the "Commonwealth Master Claims").  The PRASA Master Claim asserts "a contingent
claim against the Commonwealth on account of the Bonds in an amount not less than
$284,755,000, together with all interest, and premium accruing on the Bonds from and after the
Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with
respect thereto."  Addendum to PRASA Master Claim ¶ 9.

**D.    Bond Debt Master Proofs of Claim – ERS Title III Case**

8.    ERS is a trust established by the Commonwealth in 1951 for the economic well-
being of public employees.  ERS is an agency of the government, separate and apart from the
Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.

9.    Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on
January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension
funding bonds (the "ERS Bonds") in the aggregate original principal amount of approximately
$2.9 billion.  BNYM serves as the fiscal agent with respect to the ERS Bonds.   On behalf of the
holders of the ERS Bonds, BNYM filed a master proof of claim in the ERS Title III Case with
respect to the ERS Bonds, asserting approximately $3.8 billion in liabilities plus unliquidated
amounts, which was logged by Prime Clerk as Proof of Claim No. 16777 (the "ERS Master Proof
of Claim," and together with the Commonwealth Master Claims, the "Master Claims").

**E.    The GDB Title VI Proceedings and Qualifying Modification**

10.    GDB  is  a  public  corporation  and  governmental  instrumentality  of  the
Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of

the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

11.    On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

12.    On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB.

*Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*,

Case No. 18-1561 (D.P.R. Aug. 10, 2018).

13.    On November 29, 2018, GDB announced the consummation of the Qualifying

Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of*

*the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at*

http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-

modification.pdf.

**F.    Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

14.    To date, approximately 177,786 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43 trillion in asserted

claims against the Debtors, in addition to unliquidated amounts asserted.

15.    Of the proofs of claim filed, approximately 117,251 have been filed in relation to,

or reclassified to be asserted against, the Commonwealth.  Approximately 53,335 proofs of claim

have been filed in relation to, or reclassified to be asserted against, ERS.  In accordance with the

terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from

some other flaw, such as being subsequently amended, not putting forth a claim for which the

Debtors are liable, being duplicative of other proofs of claim, or failing to provide information

necessary for the Debtors to determine whether the claim is valid.

16.    In order to efficiently resolve as many of the unnecessary proofs of claim as

possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order*

*(A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of*

*Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus

Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion

by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

17.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

18.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 20 hearings and entered orders on over 315 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), PBA, and/or ERS.  Based upon rulings and orders of the

Court to date, approximately 100,000 claims asserting $43 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, PBA, and ERS have been disallowed and expunged from the claims registry in the Title III proceedings.

19.    This Four Hundred Twenty-Sixth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

20.    Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

21.    The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

22.    The Four Hundred Twenty-Sixth Omnibus Objection seeks to disallow in their entirety, in accordance with the Amended Omnibus Objection Procedures, the proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed"), each of which is based, in part, on (*a*) bond claims that are duplicative of one or more master proofs of claim filed against

the Debtors on behalf of the holders of certain bonds or (*b*) an ownership interest in bonds issued by GDB.  **Exhibit A** hereto further specifies why each of the Claims to Be Disallowed should be disallowed in their entirety.

### A.  No Liability for GDB Bondholder Claims

23.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert, in part, claims based on the alleged ownership of bonds issued by GDB (collectively, the "Partial GDB Bondholder Claims").

24.     Each of the Partial GDB Bondholder Claims purports to be based, in part, on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims.  Accordingly, each of the Partial GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification.  As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB.  GDB is a public corporation and instrumentality of the Commonwealth.  The Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification.  Accordingly, the Partial GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018.

25.     Because the Partial GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed, because they seek recovery of amounts for which the Commonwealth is not liable.

### B.  No Liability for Duplicate Bond Claims

26.     As set forth in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert liability, in part, on the basis of bonds issued by ERS, PRASA, and PRIFA (collectively, the "Partial Duplicate Bond Claims").

27.     Each of the Partial Duplicate Bond Claims purport to assert, in whole or in part, liability against the Debtors associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by ERS, PRASA, and PRIFA.  Any failure to disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Debtors' Title III Cases. The holders of the Partial Duplicate Bond Claims will not be prejudiced by the disallowance of their claims because the liabilities associated with the Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

28.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Four Hundred Twenty-Sixth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Duplicate and No Liability Bond Claims*, dated February 4, 2022, attached hereto as **Exhibit B**.

### NOTICE

29.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Debtors have provided notice of this Four Hundred Twenty-Sixth Omnibus Objection to (a) the individual creditors subject to this Four Hundred Twenty-Sixth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fifteenth Amended Case Management Procedures* [ECF No. 17127-1]), which is available on the Debtors' case website at

https://cases.primeclerk.com/puertorico.  A copy of the notice for this Four Hundred Twenty-Sixth Omnibus Objection is attached hereto as Exhibit C.  Spanish translations of the Four Hundred Twenty-Sixth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

30.     No prior request for the relief sought in this Four Hundred Twenty-Sixth Omnibus Objection has been made to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

*[Remainder of Page Intentionally Left Blank]*

Dated:  February 4, 2022
        San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative for
the Commonwealth of Puerto Rico
and the Employees Retirement
System of the Government of the
Commonwealth of Puerto Rico*

**Fecha de la vista: 23 de marzo de 2022, a las 9:30  (AST)**
**Fecha límite para responder: 7 de marzo de 2022, a las 16:00  (AST)**

---

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*: <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br>     como representante del <br><br> ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., <br><br>                         Deudores.[1] | PROMESA <br> Título III <br><br> Núm. 17 BK 3283-LTS <br><br> (Administrado Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA y el SRE.** |

**CUADRINGENTÉSIMA VIGÉSIMA SEXTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y EL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR BONOS DUPLICADAS EN LAS QUE NO EXISTE RESPONSABILIDAD**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta cuadringentésima vigésima sexta objeción global (la "Cuadringentésima vigésima sexta objeción global") en la que se solicita que se rechacen en su totalidad las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales se basa parcialmente en *a*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, o *b*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento (el "BGF"). En apoyo de la Cuadringentésima vigésima sexta objeción global, los Deudores manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.     El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.     La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

A.       **Órdenes de Fecha Límite**

3.       El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017, la Junta de Supervisión emitió certificaciones de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó peticiones voluntarias de remedio para el SRE conforme a la sección 304(a) de PROMESA, iniciando los casos conforme al Título III de dicho cuerpo legal (el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 9 de octubre de 2019, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 8829.[3]

4.       El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Por la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de*

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

*reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 16:00  (AST).

**B.    Evidencias de reclamaciones principal relativas a la deuda de los bonos: Caso de Título III del ELA**

5.    Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, las evidencias de reclamaciones principales han sido radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos emitidos por la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI") y la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA").

6.    *AFI*: la AFI es una filial del BGF y constituye una instrumentalidad del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley núm. 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones públicas y a otras instrumentalidades encargadas del desarrollo y del funcionamiento de las infraestructuras. En nombre de los tenedores de varios bonos y pagarés emitidos por la AFI (conjuntamente, los "Bonos de la AFI"), se radicaron evidencias de reclamaciones principales contra el ELA (conjuntamente, las "Reclamaciones Principales de la AFI") por parte de BNYM,

4

US Bank y UMB Bank, N.A. US Bank radicó una evidencia de reclamación principal en relación con determinados Bonos de la AFI, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a impuestos sobre el ron (Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006B), alegando "reclamaciones por montos contingentes y no liquidados en relación con los intereses pagaderos a futuro, intereses acumulados y que se acumulen en el futuro en lo referente al principal adeudado en el pasado y las reclamaciones por intereses, tarifas, costos e indemnización del Fiduciario en los que se incurra en el futuro en virtud de los Documentos de bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en relación con las Obligaciones de bonos pendientes, monto mínimo de $249,099,446.17. . . ." Cláusula Adicional de la Evidencia de reclamación núm. 13386, ¶ 26.

7.       _AAA_: la AAA es propietaria y se encarga de los sistemas de suministro público de agua y de aguas residuales en Puerto Rico. La AAA emitió determinados bonos de renta (los "Bonos de la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico núm. 1583, *por la que se garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico*, y algunas resoluciones complementarias. El Banco Popular de Puerto Rico ("Banco Popular") actúa como fiduciario en relación con los Bonos de la AAA, y radicó una evidencia de reclamación principal contra el ELA en nombre de los tenedores de los Bonos de la AAA, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 22620 (la "Reclamación Principal de la AAA", y junto con la Reclamación Principal de la AFI, las "Reclamaciones Principales del ELA"). La Reclamación principal de la AAA alega "una reclamación contingente contra el ELA en relación

con los Bonos por un importe de al menos $284,755,000, además de todos los intereses y primas

generados sobre los Bonos a partir de la Fecha de petición, así como la totalidad de las tasas, costos

y gastos u otros cargos acumulados que hayan devengado o sean cobrables en relación de tales

Bonos". Adenda de la Evidencia de Reclamación de la AAA, ¶ 9.

**D.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del SRE**

8.    El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar

económico de los empleados públicos. El SRE es una agencia gubernamental, aparte e

independiente del Gobierno del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A § 775.

9.    Supuestamente, conforme a la Resolución sobre bonos para el financiamiento de

pensiones, adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió

unos bonos preferentes y subordinados relativos al financiamiento de pensiones (los "Bonos del

SRE"), por un monto total del principal de aproximadamente $2900 millones. BNYM actúa como

agente fiscal con respecto a los Bonos del SRE.  Actuando en nombre de los tenedores de los

Bonos del SRE, BNYM presentó una evidencia de reclamación principal en el marco del Caso de

Título III del SRE en relación con los Bonos del SRE, reclamando aproximadamente $3800

millones en concepto de responsabilidades más montos no liquidados, que fue registrada por Prime

Clerk como Evidencia de reclamación núm. 16777 (la "Evidencia de Reclamación Principal del

SRE"), y junto con las Reclamaciones Principales del ELA, las "Reclamaciones Principales").

**E.    Procedimientos conforme al Título VI del BGF y modificación calificada**

10.    El BGF es una corporación pública e instrumentalidad gubernamental del ELA,

creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a

llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación

con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó

por unanimidad el Plan Fiscal del BGF de febrero de 2017, que contemplaba una terminación
ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable
a largo plazo dadas sus condiciones financieras vigentes en ese momento.

11.    El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se
autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de
PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una
modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación
Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

12.    El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada
conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en *Banco
Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La
Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la Autoridad
de Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio de la cancelación
(entre otras cosas) de determinados bonos de participación y reclamaciones de bonos garantizados
(conjuntamente, los "Bonos del BGF"). ii) la extinción de la garantía del ELA de los bonos
garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de
reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en relación con
(entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia de cualquier
título valor o participación del BGF, y cualquier acción u omisión con respecto a un endeudamiento
o préstamo al BGF (incluidos cualesquiera pagarés emitidos o mantenidos por el BGF) o del BGF.
*Declaración de Solicitación*, en 57-60, ECF núm. 1-15 en *Banco Gubernamental de Fomento para
Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de 2018).

13.    El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, Gobernador de Puerto Rico (29 de nov. de 2018), *disponible en* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

## F.    Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones

14.    Hasta la fecha, se han radicado aproximadamente 177,786 evidencias de reclamaciones contra los Deudores , que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

15.    De las evidencias de reclamaciones radicadas, aproximadamente 117,251 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 53,335 evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

16.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a*

*objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "<u>Moción de Procedimientos Globales</u>"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "<u>Procedimientos Iniciales relativos a Objeciones Globales</u>"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "<u>Orden de Notificación</u>").

17.     En aras del interés constante por resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)*

*exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas*
*de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

18.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la
fecha más de 20 vistas y ha dictado órdenes sobre más de 315 objeciones globales radicadas por
el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la
Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía
Eléctrica de Puerto Rico (la "AEE"), la AEP y/o el SRE. Sobre la base de las resoluciones y órdenes
del Tribunal dictadas hasta la fecha, aproximadamente 100,000 reclamaciones que reivindicaban
$43 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE, la AEP y el SRE fueron
rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos radicados
conforme al Título III.

19.     Esta Cuadringentésima vigésima sexta objeción global se radica de conformidad
con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

### OBJECIONES A EVIDENCIAS DE RECLAMACIONES

20.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en
virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., §
502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye
una prueba *prima facie* de la validez de la reclamación, *véase* R. del Proc. de Quiebr. 3001(f),
aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar
dicha evidencia *prima facie* con pruebas que, de creerse, refutarían al menos una de las alegaciones
esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d

367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso *prima facie* del reclamante". (se omite cita)).

21.   Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

22.   La Cuadringentésima vigésima sexta objeción global pretende que se rechacen en su totalidad, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, las evidencias de reclamaciones mencionadas en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas"), cada una de las cuales se basa parcialmente *a*) en reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, o *b*) en una participación patrimonial en bonos emitidos por el BGF. El **Anexo A** especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser rechazada en su totalidad.

### A.  Ausencia de responsabilidad por las Reclamaciones de los Bonistas del BGF

23.   Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, en parte, en supuesta participación patrimonial en bonos emitidos por el BGF (conjuntamente, las "Reclamaciones Parciales de los Bonistas del BGF").

24.     La totalidad de las Reclamaciones Parciales de los Bonistas del BGF pretenden basarse, en parte, en la participación patrimonial en los Bonos del BGF objeto de la Modificación Calificada, que dispuso la emisión de nuevos títulos de valores a cambio de la cancelación de los Bonos del BGF y la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia, cada una de las Reclamaciones Parciales de los Bonistas del BGF ha sido liberada conforme a la aprobación y la consumación de la Modificación Calificada.  Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF. El BGF es una corporación e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado del BGF dentro del ámbito de la liberación conforme a la Modificación Calificada. Por tanto, las Reclamaciones Parciales de los Bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018.

25.     Puesto que las Reclamaciones Parciales de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no tiene responsabilidad.

**B.  Ausencia de responsabilidad por Reclamaciones Duplicadas por Bonos**

26.     Según se expone en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar responsabilidad, en parte, sobre la base

de bonos emitidos por el SRE, la AAA y la AFI (conjuntamente, las "<u>Reclamaciones Parcialmente</u>
<u>Duplicadas por Bonos</u>").

27.     Cada una de las Reclamaciones Parcialmente Duplicadas por Bonos pretende
alegar, total o parcialmente, responsabilidad contra los Deudores vinculada con uno o más bonos
que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó
anteriormente, que fueron radicadas en el marco de los Casos de Título III en nombre de los
tenedores de determinados bonos emitidos por el SRE, la AAA y la AFI. Si las Reclamaciones
Parcialmente Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en
cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores
en detrimento de otras partes interesadas en los Casos de Título III de los Deudores. Los titulares
de las Reclamaciones Parcialmente Duplicadas por Bonos no se verán perjudicados por el hecho
de que se rechacen sus reclamaciones, puesto que las responsabilidades relacionadas con las
Reclamaciones Parcialmente Duplicadas por Bonos figuran en una o más Reclamaciones
Principales.

28.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en*
*apoyo de la Cuadringentésima vigésima sexta objeción global (sustantiva) del Estado Libre*
*Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre*
*Asociado de Puerto Rico a Reclamaciones por bonos duplicadas en las que no existe*
*responsabilidad*, de fecha 4 de febrero de 2022, adjunta al presente como **Anexo B**.

## <u>NOTIFICACIÓN</u>

29.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden
de Notificación del Tribunal, los Deudores han notificado la presente Cuadringentésima vigésima
sexta objeción global a) a los acreedores individuales objeto de esta Cuadringentésima vigésima
sexta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define

en los *Procedimientos de administración de casos enmendados núm. 15* [ECF núm. 17127-1]),

disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico.

Una copia de la notificación de esta Cuadringentésima vigésima sexta objeción global se adjunta

al presente como Anexo C. Las traducciones al español de la Cuadringentésima vigésima sexta

objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la

presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del

remedio solicitado, no es necesario enviar ninguna otra notificación.

## **AUSENCIA DE SOLICITUDES PREVIAS**

30.    No se ha radicado ninguna solicitud de remedio previa a la presente

Cuadringentésima vigésima sexta objeción global ni ante este Tribunal ni ante ningún otro órgano

judicial.

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden,

esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que

conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores

cualesquiera otros remedios que se consideren justos.


*[El resto de la página se deja en blanco intencionadamente]*

14

Fecha: 4 de febrero de 2022
San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.*

15