# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO
# TITLE III-PROMESA-COURT

| | |
|---|---|
| **In re:**<br>**The Financial Oversight and Management Board For Puerto Rico,**<br>as representative of<br>**The Commonwealth of Puerto Rico,** *et al.,*<br>**Debtors** | **Title III-PROMESA: # 17 BK 3283-LTS**<br>Re: ECF Nos. 19525, 19869<br><br><br>US District Court of PR-# **3:20 -cv-01360-FAB**<br>-Violation of Civil Rights -42 USC SECTION 1983<br>Civil action for Deprivation of Rights<br><br>**US COURT OF APPEAL-FIRST CIRCUIT #21-1472** |
| **JUAN MANUEL CRUZADO-LAUREANO**<br>**Movant**<br>*-against-*<br>**The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico**<br>**Respondent** | |

## REPLY TO THE RESPONSE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO MOTION FILED BY JUAN MANUEL CRUZADO-LAUREANO

**To the Honorable United States District Court Judge Laura Taylor Swain:**

Appears before this Honorable **TITLE III COURT OF PROMESA**, Juan Manuel Cruzado-Laureano- *the Movant*-    exercising his right to legal self-representation **(PRO-SE)**, Exhibits, Alleges and Request:

1

The Fabricated Criminal Case *01-690 (JAF)*: Basis of the Civil  Lawsuit *-20-cv-01360-FAB, under 42 USC Section 1983*

The Movant was elected Mayor of the Municipality of Vega Alta by the Popular Democratic Party (PPD) at the age of 54 and he and his wife were the first time they participated as candidates for an elective position. Movant's wife, Maribel Rodriguez *DMD*, mother of his 3 children, also won a legislative seat in the PR Senate for the PPD in the 2000 general elections. The Movant and his wife established a precedent in Puerto Rico politic, being the first wealthy married couple without previous participation in politic, to be elected by the same party in the same general election. Both Movant and his wife came from a successful business career where they amassed a large millionaire fortune.  With their swearing-in, the marriage of the Movant and Maribel Rodríguez became the new image of the PPD and its fight against corruption and the corrupt annexationist movement in hands of the New Progressive Party (PNP) that had ruled in PR in the late 90's.

The Movant assumed its elective position on January 7, 2001 and in the middle of July 2001, the PNP, having as spokesperson the person who defeated the Movant in the Mayor's Office, denounced before the regional newspaper and radio stations, the falsehood where it alleged that the Movant had waste more than a quarter of million dollars in municipal funds. This fraud alleged that in the mobilization that the Municipality sponsored to celebrated the foundation number # 225 of the Town of Vega Alta, in the Puerto Rican Parade of NY in June 2001, the Mayor Cruzado had wasted more than $250 thousand dollars.

On October 24, 2001 at  6:00 pm, the US District Attorney  of PR  Guillermo  Gil Bonar, personally  presented  in the Clerk's Office  of the Federal  District  Court  of PR an **Indictment** against  the "Popular" Mayor  of Vega Alta, Juan (Mane) Cruzado. The

2

**Indictment**, which only signed its **"True Bill"** by the US Attorney Guillermo Gil Bonar, was given the no. **01-690** and assigned to Judge Jay A. García-Gregory(JAG). Mayor Cruzado was arrested at his home at 6:20 pm by FBI agents from El Paso, Texas and they led him to the Guaynabo Federal Detention Center, where he was jailed. On October 25, 2001, Magistrate Judge Jesús Castellanos set bail for the only accused of **Indictment 01-690(JAG) on 10-24-01**, against the will of US Attorney Gil Bonar, who postulated that Mayor Cruzado was a risk of leakage. At the bail hearing, the only as an *"attorney for the government"* was the US Attorney, Guillermo Gil Bonar.

<u>Copy of the True Bill of Indictment which Mayor Cruzado was arrested on 10-24-2001.</u>

```
            13
            Indictment
            U.S. v. Juan Manuel Cruzado Laureano
            a/k/a Manny
            acts of extortion by defendant Juan Manuel Cruzado Laureano a/k/a Manny,
            All in violation of Title 18 United States Code Section 1512(b)(1)(2) .

                                                TRUE BILL.
                                                Olga Rivera
                                                FOREPERSON
                                                Dated: 10/24/01

            GUILLERMO GIL
            United States Attorney
            Dated: 10/24/01


            Certified to be a true and exact copy
                    of the original.
            FRANCES RIOS DE MORAN, CLERK
            U.S. District Court for the
            District of Puerto Rico
            By:
                    Deputy Clerk
            Date: 10-24-01
```

In the mid-May 2002, the criminal trial against Movant began under the direction of Judge José A. Fusté and not under the direction of Judge Jay García-Gregory, to whom it was assigned on October 24, 2001   when the **Indictment 01-690** was    personally registered    by US Attorney Gil Bonar. García-Gregory

3

exchanged with Fusté the case against the Movant with Fusté, at his request. In the Trial against Movant, the Prosecutor's Office had two prosecutors in charge of presenting the 14 Counts to the Jury. The prosecution team was personally led by the US Attorney Guillermo Gil Bonar and his special assistant, AUSA Rebecca Kellogg De Jesús. Of the 14 Counts charged to Movant, 8 were based on an alleged theft from the VA Municipality. That alleged theft, according to the prosecution, had been perpetrated by Movant in the mobilization of the group of 200 citizens that participated in the 2001 NY Puerto Rican Parade.

On June 7, 2002, the Jury found Movant guilty in 12 of the 14 Counts, including those related to the alleged theft from the Municipality. That same day Movant was imprisoned by order of Judge Fusté, at the request of US Attorney Gil Bonar. He alleged before Fusté that Movant had violated a gag order preventing him from communicating with the press. On November 13, 2002 Judge Fusté at the request of prosecutors Guillermo Gil Bonar and Rebecca Kellogg De Jesús for the 12 conviction counts imposed on the Petitioner 63 months in prison, 3 years of supervised release, a fine of $10,000. The Defense had objections to the restitution requested by the Prosecutor's Office and Judge Fusté left the economic restitution of the Judgment for a future hearing. On November 24, 2003, one year after the Petitioner was "sentenced", Judge Fusté completed the sentencing process by assigning financial restitution to the victims.

The Federal Prosecutors in the *__Case 01-690(JAF)__*, Guillermo Gil Bonar and Rebecca Kellogg De Jesús had contracted a civil marriage on *12/30/2002* in a ceremony presided over by Federal Judge José A. Fusté. As the date that Judge Fusté officiated *(12/30/2002)* the civil marriage between Gil Bonar and Kellogg De Jesús, he had yet to completed the Sentence process, awarding financial restitution to the victims on the Counts that the Petitioner was convicted of.

4

## The Office of the Comptroller of PR, the key piece at the service of the New Progressive Party (PNP) so that Movant had to suffer 63 months in prison and three years on supervise release, for a "theft" to the Municipality of Vega Alta, which never happened.

The Movant knew about the investigation by the FBI against him since August 3, 2001 when he returned to his Office from vacations in China where he celebrated with his wife, Senator Maribel Rodríguez, the 25th anniversary of their marriage. From that date he received a series of calls from people who made payments to a real state corporation controlled by the Movant and his wife. Some of those who called told the Movant that the FBI agents had told them that the inquiries were due to an investigation by the Comptroller's Office against Mayor Cruzado. On August 9, 2001, the Movant wrote to Comptroller Manuel Díaz Saldaña inquiring about the investigation against him alleged by FBI agents, following his instructions, and Díaz Saldaña denied any connection with that FBI investigation against Movant. Díaz Saldaña made this denial in the letter in response to the Movant letter dated August 17, 2001.

At the beginning of November 2001, once Movant was arrested and indicted on October 24, 2001, Comptroller Díaz Saldaña announced to the country's press that the audit team of his Office that was in the VA Mayor's Office auditing the last two years into the past administration of the PNP, they were going to concentrate on special audit of the first 10 months of 2001 that Movant held the position of Mayor of VA. When Movant was arrested by the FBI, it self-withdrew from employment and salary since October 25, 2001. The communication of Movant self-withdrawal was sent to Governor Sila Calderón and the Comptroller's Office. Therefore, the special audit ordered by Díaz Saldaña had no reason to extend it beyond October 31, 2001. But it was not.

5

The **Audit Report M-06-12 of November 21, 2005** carried out by the Office of the Comptroller of PR on the first 10 months of 2001 in which Movant was Mayor of Vega Alta, the best evidence of the conspiracy orchestrated by the PNP so that there would be a Popular leader imprisoned for public corruption for the 2004 General Elections.

*Cover page of the Audit Report M-06-12 of November 21, 2005.*

[CERTIFIED TRANSLATION]   I, Carlos Laó Dávila, a Federally certified Interpreter, number 03-052,hereby certify that the
attached document is a true and exact translation of the original, translated or certified by me.

**AUDIT REPORT M-06-12**
November 21, 2005
**MUNICIPALITY OF VEGA ALTA**
(Unit 4073- Audit 12392)

Audited Period: January 9, 2001 to December 31, 2003

The Constitution of the Commonwealth of PR establishes in its Section 22 of Article III- The Legislature-, what will be the functions of the Comptroller's Office and the frequency with which tax audits must be carried out. It says this in that Section:

> The Controller shall audit all the revenues, accounts and expenditures of the Commonwealth ... and its municipalities in order to determine whether they have been made in accordance with law. He shall render annual reports and any special reports that may be required...

According to the information provided on the cover page of the ***Audit Report
M-06-12* of November 21, 2005** the Comptroller Manuel Díaz Saldaña extended from
one year to three years the audited period on the administrative management of the
10 months that Movant was Mayor of VA. The Constitution of the Commonwealth
of PR orders the Comptroller that the audits have to cover periods of one year, not
three years as he did in the ***Audit Report M-06-12 of 11-21-2005.*** On the cover page of
said Report it says:    ***Audited Period: January 9, 2001 to December 31, 2003***.

In the preparation of ***Audit Report M-06-12***, the Comptroller Manuel Diaz
Saldaña blatantly violated the regulations that regulated the production of these
reports with respect to the notification to management of the audit findings that are
included in the draft of the Report and the inclusion of these in the final Report.
Diaz Saldaña himself, in his response letter to Movant dated August 17, 2001,
establishes the correct procedure for issuing a final audit report. It says so in
paragraph 2 of said letter:

> **The Puerto Rico Comptroller's Office has the legal constitutional obligation to
> conduct oversight on the disbursement of public funds. We do not conduct criminal
> investigations, rather audits to government entities, including all the municipalities.
> We keep management informed throughout all the process, specifically regarding
> findings. After sharing with management and consider your reaction to the Draft Audit
> Report, our Audit Report are made public. ...**

In the municipalities of PR, the first year of a new mayor, he has to continue
operating in his first semester with a budget designed by the previous mayor. In the
case of Movant, whose first year as Mayor lasted only the first 10 months of 2001,
his period to be exhaustively audited was limited to only 4 months, from July 2001
to October 2001. The Draft Audit Report of the 10-month audit ordered by Diaz
Saldaña in early November 2001 had to be ready by March or April 2002.

The criminal trial against Movant for alleged financial crimes against the Municipality of VA, where the US Attorney of PR Guillermo Gil Bonar was the lead prosecutor in presenting the charges before the Jury, began in mid-May 2002 and concluded on June 7, 2002 with a guilty verdict on all Counts of City theft. The *Audit Report M-06-12* of the Office of the Comptroller of PR on the months that Movant was Mayor of VA, *does not recognize of the alleged theft of public funds-whether municipal, state or federal-*, for which he was accused, prosecuted and imprisoned since June 7, 2002 to December 31, 2006.

If the Comptroller of PR Manuel Díaz Saldaña had respected the Law and the regulations of his Office, sharing with Movant the findings of the *"Draft" Audit Report M-06-12* that he had since March 2002 on the 10 months where he audited his performance as Mayor, US Attorney Gil Bonar would have to drop the charges of corruption against him. The Comptroller of PR Manuel Diaz Saldaña did not share with Movant and hid the findings of the Draft Audit Report M-06-12 that he had before the Criminal Trial was carried out against it. Diaz Saldaña was a key player in the plot orchestrated by the New Progressive Party (PNP) to have a leading member of the Popular Democratic Party (PPD) indicted before the 2004 General Elections.

The shameful illegal extension decreed by the Comptroller Diaz Saldaña of the audit period from January 9, 2001 to December 30, 2003, 36 months of the audit period when Movant only spent 10 months in the Mayor's Office, was an act of obstruction to federal justice. The main purpose that Diaz Saldaña had with this illegal and shameful extension was that the *Audit Report M-06-12* could not be published or disclosed before the 2004 General Elections. In his desire to help the PNP in the control that this Party achieved in the Legislature, this cheating and dishonest head of the Office of the Comptroller of PR, not only did not share the

8

Draft of the audit report with Movant before the Trial, but never sent him a copy of the Final *Audit Report M-06-12*.

Comptroller Diaz Saldaña cover-up and concealment of the *M-06-12 Audit Report* reached the point that never sent a copy of it to the VA Municipal Clerk's Office, where all  the Audits Report made by said Office to the Municipality are filed.  Diaz Saldaña knew and was very clear that the *Audit Report M-06-12* on the 10 months that Movant was in the Mayor's Office, was a solid exculpatory evidence of the alleged crimes for which he was imprisoned. The PNP militant turned Comptroller of Puerto Rico knew very well the political damage that *Audit Report M-06-12* could do to his Party and he used all his power to hide it. This dishonest and cheating public official was not concerned at that due to his concealment of the *Audit Report M-06-12*, Movant lost his family, his fortune of 30 hard years of forging and that he had to suffer 63 months in prison medium-maximum security and remain in 3 years of supervised release. All that sacrifice and human pain for *some crimes against the Municipality of Vega Alta, which never happened.*

---

### The abusive "Judgment" decreed by the District Court in *Civil Lawsuit 20-cv-01360-FAB*: One  of custom  that  has nothing  to do  with the automatic **"Stay"** of **PROMESA** to said  lawsuit

The civil lawsuit against the Office of the Comptroller of PR that originates the consultation before this Honorable Court of *Title III of PROMESA*, comes from the Federal District Court of PR under *#3:20-cv-01360* and the Judgment was decreed by Judge Francisco A. Besosa. Judge Besosa issued his Judgment dismissing the lawsuit in an *Opinion and Order* issued on May 26, 2021. The lawsuit was filed for the violation of Movant's civil rights under Section 1983, 42 USC.

9

The dismissal decreed by Judge Besosa against Movant was unfair, prejudiced and politically motivated. Judge Besosa in his evaluation of the claim for justice by Movant in his civil suit against the Office of the Comptroller, did not give any importance to the fact that the Comptroller Díaz Saldaña concealed the Audit Report M-06-12 and focused on the legal proceedings that followed the conviction of the Plaintiff before Judge Fusté on June 7, 2001. The dismissal decreed by Besosa was done ignoring the facts that motivated the civil lawsuit and ignoring the core fact that the Office of the Comptroller of PR never made public the *__Audit Report M-06-12 of November 21, 2005__*, where it is excused of any act of corruption to the Plaintiff during the period of 10 months that he was mayor of Municipality of Vega Alta.

In the "*__Judgment__*" against Movant issued by Judge Besosa in his *__Opinion and Order__*, he establishes a precedent in a judgment of a lawsuit for violation of civil rights under Section 1983, USC 42. Besosa in his Judgment threatened the Plaintiff with contempt, if he dares to file any recourse in the Federal District Court of PR related to the illegal conviction that he suffered in the __Criminal Case 01-690 JAF__ in 2002, without his authorization and prior censorship. Judge Besosa, in his __Opinion and Order of May 26, 2021__, orders the Plaintiff to show cause for which he should not be found in contempt if he files any recourse in the Federal District Court of PR related to his conviction in 2002, without the approval of the Court. It says like this on page 11, paragraph 1:

> "*Failure to show cause will result in the issuance of a permanent injunction. This injunction will require Cruzado to request leave of the court by filing a summary of putative claims (not to exceed one page per claim) together with an affidavit certifying that the claims are novel and have not been previously raised before this Court or any other federal court. Failure to certify or failure to certify truthfully may result in contempt of court and will be punished accordingly*".

The Plaintiff, responding to the Order to show cause, filed an **Informative Motion** to that effect before the Court. The Judge Besosa answered, but did not retract his position to impose sanctions on the Plaintiff and the threat of sanctions conditioned it on the outcome of this case in the decision of the Appellate Court. Besosa's answer reads like this:

> **ORDER re [23] informative Motion: NOTED. The Court will wait for the court of appeals to issue its opinion on this case, and will then consider whether to impose sanctions on plaintiff. Signed by Judge Francisco A. Besosa on 06/23/2021. (brc)**

The absurd and abusive position of Judge Francisco Besosa to continue considering sanctions against the Plaintiff subject to the outcome of the appeal of the case, even though in the Informative Motion presented by the latter showing cause, he managed to demonstrate that all the arguments elaborated by Besosa to impose the sanctions were refuted, is an act of judicial arrogance. With his threats, Besosa demonstrates his great political prejudice against the Plaintiff, which prevents him from recognizing that the Office of the Comptroller of PR under the direction of Manuel Díaz Saldaña keep hidden and without ever publishing it, the **Audit Report M-06-12 of 11-21-2005** over the 10 months that Plaintiff was mayor of VA, to help politically the New Progressive Party (PNP) in the 2004 General Election.

Given Judge Besosa's arrogant and abusive act of continuing to consider sanctions against the Plaintiff, even though all his arguments were defeated in the Motion presented by Plaintiff showing cause, I filed an ethic complaint before the First Circuit of Appeals so that it could be resolved before final Judgment issued on *Appeal #21-1472* filed. The affidavit filed by the Movant was received by the *Office of the First Circuit* on December 17, 2021 and assigned *No. 01-21-90018.*

**The application of the *PROMESA's* Automatic Stay to *Lawsuit 3:20-cv-02360* against the Office of the Comptroller, was never discussed in the District Court and therefore it is not mentioned in the Judgment issued dismissing said lawsuit.**

In no document submitted to the District Court by the attorney for the Comptroller of PR or issued by Judge Besosa, does it indicate or mention that Lawsuit *#3:20-cv-01360* filed by Movant against the Comptroller, is under the jurisdiction of the automatic stay of *PROMESA* for allegedly said Office is part of the Government of the Commonwealth of PR. That allegation is made in the "***RESPONSE OF THE COMMONWEALTH OF PR TO THE MOTION FILED BY JUAN MANUEL CRUZADO-LAUREANO***", by the lawyers of the Commonwealth of PR on behalf of *THE BOARD.* The attorneys for the PNP Government, by classifying the Comptroller's Office as part of the central government, intend to assure that the economic obligations of said Office are under the jurisdiction of Title III *stay.* They said this on page 7, item 21 of their Response:

21. Thus, given the OCPR's *"close nexus"* to the Central Government and that claims against the OCPR would be paid with Commonwealth funds, the OCPR is a governmental entity falling within the ambit of the Commonwealth, and is protected by the Title III Stay.

Nowhere in the *PROMESA* Law is it establishes that a government entity becomes a Debtor by osmosis or close association with a government agency that is covered by the *Stay* of said Law. That assertion that the Office of Comptroller is covered by the *Stay* of *PROMESA* due to its *"nexus"* with the central government, is not based on Law and was never contemplated by the Federal Congress when enacting said Law.

The *PROMESA* Law is clear and establishes that only *Debtors* will be covered under the *Stay* of said Law. According to the division of powers established in the Constitution of the Commonwealth of PR, the Comptroller's Office is part of the

Legislative Power.   The bankruptcy   filed   by the   Government   of   the Commonwealth of PR (Primary Government)   under   Title III of the   Federal **_PROMESA_** Act, was filed through the Financial   Oversight   and Management Board   of PR (The **_BOARD_**). The **_BOARD_** at its   meeting of September   30, 2016, determined   to submit   under   the bankrupcy of the Primary Government   to 63 entities (Executive Power) and any subsidiary of these. In the 63 entities   covered by **_PROMESA_**'s   automatic **_Stay_**, **the Office of the PR Comptroller is not included**.

The   best   evidence   to   demonstrate   that   the   figure   of   the   Puerto   Rico Comptroller, being part of the Legislative Power of the Territorial Constitution of the   Commonwealth   of   PR,   is   not   a   **_"debtor"_**   under   **PROMESA**   Law,   is   the recognition   by   the   Federal   District   Court   and   the   attorney   of   the   defendant   of   the validity of the sole summons made to the Comptroller's Office when the claim is filed. Neither the   defendant's   lawyer   nor   the   Court   claimed   in   their   dismissal remedies the grounds for the defective service because the Secretary of Justice of the   Commonwealth   of   PR   had   not   been   summoned   as   representative   of   the Executive.

The   "far-fetched"   discussion   by   the   attorneys   of   the   New   Progressive   Party (PNP) Government frivolously alleging that the **_Stay_** of Title III of **_PROMESA_** is applicable   to   a   government   agency   that   was   not   included   by   The **_BOARD_** at   the time of submitting the bankruptcy of the Government of PR in the 2017, nor in any subsequent amendment to said filing, is part of a political plan of the PNP.   With this plan, the PNP seeks to defeat in this Court the demand for justice in the face of the vile and criminal acts perpetrated against Movant by the former Comptroller of PR, Manuel Díaz Saldaña, who unconditionally put at the service of the political strategies   of   the   PNP   for   the   General   Elections   of   2004,   the   Office   of   the Comptroller of PR.

IT IS CORRECT TO SAY THAT: "<u>The First Circuit Has Already Determined the Title III Stay Applies to the Appeal</u>" ?   NO. It is not correct

On page 4 of their ***Response***, the attorneys for the PNP Government begin the elaboration of ***The Commonwealth's Response***, stating that the First Circuit of Appeals has already determined that the Title III **Stay** applies to ***Appeal #21-1472*** filed by Movant for the dismissal of ***Civil Lawsuit 3: 20-cv-01360 FAB***, against the Office of the Comptroller of PR.  They argue in their argument  that:

*"On September 20, 2021, following a full opportunity for the parties to litigate the applicability of Title III Stay to the Appeal, the First Circuit entered the Stay Order staying the Appeal".*  With the foregoing assertion, the Respondent's Attorneys want to give the impression that in the litigation of the ***PROMESA Stay*** matter at the Appellate level, the attorney for the Comptroller's Office participated and that after September 20, 2021 there were no more decisions by the Court of Appeal on the alleged application of the ***PROMESA Stay*** to ***Appeal #21-1472***. To demonstrate to the Honorable Court what happened, I will make a brief account of what happening regarding the unfair and not based on law, application of the *Stay* of the ***PROMESA*** Law to a government agency that is not a ***Debtor*** under Title III of said Law:

1- In the First Circuit Order of Appeals of November 15, 2021, the Movant is advised to: **"may seek relief from the stay in Title III court"**.  This suggestion responds to the refusal of the Court of Appeals to take away the "***Stay***" that was assigned to ***Appeal #21-1472***, from the same day that said case was filed in the First Circuit. The first action of the Appellate Court regarding ***Appeal #21-1472***, was to request the parties to show cause why the claim contained in ***Appeal*** should not put the "***Stay***" of payments under Title III of the ***PROMESA*** Law. The

14

attorney for the Comptroller's Office, <u>USERA LAW OFFICE</u>, did not file any document with the Court at the request of the First Circuit to show cause on the application or not of the *"Stay"* of ***PROMESA*** to ***Appeal #21-1472.***

2- The Movant on August 11, 2021 presents before the Court a Motion, the reasons that the **Stay** of ***PROMESA*** does not apply to ***Appeal #21-1472*** and therefore to the lawsuit contained in said Appeal. In September 20,2021, the Court issued and Order reiterating the **Stay** of ***Appeal #21-1472*** and orders that the parties submit *a "status report"* every 90 days.

3- On October 12, 2021, the Movant submits an Informative Motion and Request for Reconsideration of the Order of September 20, 2021, where the Court inexplicably, without any legal basis, reiterates in the "Stay" for Appeal #21-1472. The Motion informs the Court that the attorney who represented the Defendant in District Court, Gregory T. Usera, has not submitted any document in ***Appeal #21-1472***, nor has he responded to the Court's Order to show cause on the ***Stay*** of ***PROMESA*** for the Appeal. On November 15, 2021, the Court issues an Order that says: *"Appellant's motion for reconsideration of this court's order of September 20, 2021, is denied in all respect. **If he wishes, appellant may seek relief from the stay in the Title III court."***

4- On December 15, 2021, the Movant files a Motion before the Court of Title III of ***PROMESA*** of the Federal District Court of PR. In said Motion, the Chapter III Court is requested to clarify wyhether the Comptroller's Office of PR is covered by PROMESA's *"Automatic Stay"*. The Court on December 15, 2021 responds to the Movant Motion, issuing an Order against the Financial Oversight and Management Board for PR (The ***BOARD***). In the Order, the ***BOARD*** is requested to Brief on the Motion presented by the Movant.

The November 15, 2021 *Order* of the First Circuit Panel led by Howard, Chief Judge, denying the request for reconsideration of the September 20, 2021 Order which arbitrarily imposes the **Stay** of Title III of ***PROMESA*** on ***Appeal #21-1472***, is abusive and responds to reasons that have nothing to do with the interpretation of the ***PROMESA*** Law. In the Order of September 20, 2021 there is a provision that does not make any sense regarding the application or not of the Title III to ***Appeal #21-1472*** that reads as follows: ***"The parties shall file status report every ninety days"***. The Movant does not understand the reason why the matter of the *"automatic stay"* of ***PROMESA*** is brought up and considered by the Panel of the First Circuit for the ***Appeal #21-1472***, when that issue was not part of the Respondent's response before the District Court or in the ***Judgment*** issued that originates the ***Appeal #21-1472***.

In the bankruptcy assumed by the Government of PR, under Title III of ***PROMESA***, there is only the Executive Power of the Government of the Commonwealth of PR. The Office of the Comptroller of PR belongs to the Legislative Branch of the Government of PR, as provided in Article III, Section 22 of the Constitution of the Commonwealth of PR. When Movant requested the ***Reconsideration*** of the Panel led by Howard, Chief Judge, of the ***Order*** of September 20, 2021 where they upheld the ***Stay*** of Title III to ***Appeal 21-1472***, it made the following legal statement as to whether the ***Stay*** imposed in that ***Order*** did or did not constitute a ***"Judgment"*** of that Court: (Conclusion, page 3, paragraph 2, Request for Reconsideration)

> "The only practical effect of the provision that the "*parties shall file status report every ninety days"*, is to make it impossible for *Appeal #21-1472* to be analyzed on its merit by this Honorable Court of Appeals. Since the Appellant did not have a "*Judgment"* of the Appellate Court where it is established that the *Appeal #21-1472* is covered by the "*automatic stay"* of PROMESA, its right to appeal to the Supreme Court is canceled by this Court."

16

The Panel under the direction of Howard, Chief Judge, answers the request for **_Reconsideration_** of the **_Order_** of September 20, 2021 in the **_Order_** issued on November 15, 2021 where it leaves everything the same with respect to the **_"status"_** of **_Appeal 21-1472_**, but they tell the Movant **_"to seek relief from the Stay in the Title III Court"_**.

The **ORDER OF COURT** of November 15, 2021, reads like this:

**Before Howard, <u>Chief Judge</u>, Lynch and Barron, <u>Circuit Judges</u>:**

------------------------------------------------

**ORDER OF COURT**

**Entered:     November 15, 2021**

**Appellant's motion for reconsideration of this court's order of September 20, 2021, is denied in all respect. If he wishes, appellant may seek relief from the stay in the Title III court. The parties shall file status report every 90 days beginning from the September 20, 2021 order.**

----------------------------------------------------------------

The main argument of the Respondent's lawyers, where they state that the First Circuit has already determined, as "judgment", that "<u>The First Circuit Has Already Determined the Title III Stay Applies to the Appeal</u>", it is not based on what was decided by the Panel led by Howard, Chief Judge, in his **_Order_** of November 15, 2021. In said **_Order_**, **_Appeal #21-1472_** is left under the same status of **_"thing not judged"_**, except that Movant is authorized to seek the opinion of the Court under Title III on the applicability of the **_PROMESA_** **_Stay_** to **_Lawsuit 20-01360 FAB_** against the Comptroller's Office. The First Circuit is evidently not issuing a Judgment in **_Appeal #21-1472_**, when on the one hand it upholds the **_Stay_** to the **_Appeal_** and on other hand sends Movant to a lower court to consult on the applicability of the **_Stay_** of Title III of **_PROMESA_** the lawsuit against the Office of the Comptroller of Puerto Rico. Undoubtedly, the **_Stay_** imposed by the First Circuit on **_Appeal #21-1472_** does not constitute **_"res judicata"_**.

17

## CONCLUSION

At the time of filling the request for consultation with this Honorable Court on the applicability of the *Stay* of Title III of *PROMESA* to Civil Lawsuit *20-01360 FAB* against the Office of the Comptroller of PR, filed under *Section 1983, 42 USC*, I did not think that I would have to write very long motions, due to the simplicity of the matter involved on the Territorial Constitution of the Commonwealth of PR. Here we have a case about a civil lawsuit against an agency that is part of the Legislative Power according to the Constitution of the Commonwealth of PR, to which is intended to apply a rule of the Bankruptcy Law *(automatic stay)* that is only applicable to *Debtors* and their subsidiaries that were included in the bankruptcy petition filed by the Executive Power of the *PROMESA* Law.

That claim to apply the *Stay* of Title III of *PROMESA* to *Lawsuit 20-01360 FAB* does not come from the District Court, where the matter was not raised by the Defendant's attorney nor in the Judgment issued. The dismissal of *Lawsuit 20-01360* was made for purely partisan political reasons, by a judge at the service of the New Progressive Party (PNP). The Title III *Stay* issue on *Lawsuit 20-01360* is brought in the first *Order* of the First Circuit at the time *Appeal # 21-1472* on dismissed *Lawsuit 20-01360 FAB* was filed. The Movant since the first *Order* of the First Circuit was issued decreeing that *Lawsuit 20-01360 FAB* was covered by he *Stay* of Title III, has been attacking it. At no time has Movant received any document from the Comptroller's Office attorney stating its position in favor or against the alleged jurisdiction of the *Stay* of Title III to *Lawsuit 20-01360 FAB*.

The reasons that the Panel of the First Circuit directed by Howard, Chief Judge, had to impose the Stay to the *Appeal 21-1472* do not correspond to an interpretation of the *PROMESA* Law, but to its animosity against Movant due to ethical complaints filed in against 2 district judges in criminal case *01-690 JAF*.

The sad Sentence issued by District Judge Francisco A.  Besosa *20-01360* is being included as an Addendum to this ***Reply***, because lawyers of the PNP Government who made the allegation in response to my petition to this Honorable Court, resorted extensively to citing this Disastrous and shameful sentence. The use of the lawyers of the defendant in the Besosa Judgment, who nowhere mentions the *Stay* of ***PROMESA,*** to create an unrealistic picture of the false accusations in which Movant was convicted, force him to refute issues that have nothing to do with request made to this Court to clarify whether a lawsuit against an agency that belongs to the Legislature falls under the jurisdiction of the *Stay* of Title III of ***PROMESA***.

The position expressed so far by the First Circuit Panel on the alleged jurisdiction of the *Stay* of Title III of ***PROMESA*** to ***Lawsuit 20-01360***, forces this Honorable Court to decide whether or not it agrees with said position of the First Circuit. The Movant asks this Honorable Court to grant an Argumentative Hearing, face-face, where the issue implicit in that position of the First Circuit can be discussed, that the ***PROMESA*** Law abolished the division of Powers established in the Constitution of the Commonwealth of PR.   If the Argumentative Hearing is granted, Movant requests that the Court provide the services of a translator for his speech.

**VERY RESPECTFULLY SUBMITTED,** today February 7, 2022, in Vega Alta, PR:


JUAN MANUEL CRUZADO-LAUREANO (PRO-SE)
P O Box 405, Vega Alta, PR  00692
Tel- (787) 371-4373

We hereby certified that on the same day that the motion "**REPLY TO THE RESPONSE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO MOTION FILED BY JUAN MANUEL CRUZADO-LAUREANO"** was filed on the Clerk's Office of the Federal District Court of PR, it was mailed to BUFETE MARINI PIETRANTONI MUÑIZ LLC, whose address on record in the documents is : Carolina Velaz-Rivero, 250 Ponce de Leon Ave., Suite 900 San Juan PR 00918.