IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of | PROMESA TITLE III<br>Case No. 17-3283 (LTS)<br>(JOINTLY ADMINISTERED) |
| THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEESN RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUBLIC BUILDING AUTHORITY | |
| DEBTORS | |

**OPPOSIITON TO TEACHERS ASSOCIATIONS' MOTION FOR STAY PENDING APPEAL**

**TO THE HONORABLE COURT:**

COME NOW Salud Integral de la Montaña, Inc. (SIM), through its  undersigned attorney and very respectfully states, alleges and prays:

1.Several teachers' groups filed a motion (Docket 19969) requesting a stay of the order approving the plan of adjustment. SIM supported the plan of adjustment and will be prejudiced, as well as the public in general, by such stay and hence opposes movants' request for the reasons expressed below. SIM has a strong interest in the quick implementation of the Plan of Adjustment. Not only will it receive a cash payment upon the effective date, but it also will be able to continue its litigation as to the future wraparound payments in Federal Court which have been stayed due to the automatic stay of PROMESA. Hence, it has an important interest that the plan of adjustment not be paid.

## I. THE STANDARD OF GRANTING A MOTION TO STAY

2. Rule 8007(a) of the Rules of Bankruptcy Procedure states that a party ordinarily must first request a stay of an order or judgment from the Bankruptcy Court (or in this case, the originating court). Moreover, the First Circuit, in *In Re Fin. Oversight & Mgmt. Bd. for P.R.*, 987 F.3d 173 (1st Cir. 2021) held that an appellant must seek a stay of the order approving the plan of adjustment or have its appeal denied due to equitable mootness. Movants, hence, quite correctly ask this Honorable Court for said stay.

3. Movants, however, have not quite articulated the correct standard for the granting of said stay. We must first start with the Supreme Court. In *Niken v. Holder*, 556 U.S. 416, 433-435 (2009), the Court established the standard upon which a stay of a judgment should be granted and said:

> "A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co.,* 272 U.S., at 672, 47 S.Ct. 222. It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.,* at 672–673, 47 S.Ct. 222; see *Hilton, supra,* at 777, 107 S.Ct. 2113 ("[T]he traditional stay factors contemplate individualized judgments in each case"). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.

> 4. It continued explaining:

> As noted earlier, those legal principles have been distilled into consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[1] There is substantial overlap between these and the

---

[1] *Quoting Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

factors governing preliminary injunctions . . . not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined. (citations omitted)

5. The factors considered by Courts in stay situations mirror, but are not the same, as those in a preliminary injunction. In a preliminary injunction, the record is incomplete but in a motion to stay pending appeals the district court has a much more complete record, especially here where the case has been pending for almost 5 years. See, *Michigan First Credit Union v. Smith*, 501 B.R. 332, 335 (Bankr. E. D. Mich 2013). In addition, the "strong showing" must be more than the mere possibility of success on the merits of the appeal. See, *Niken*, ante, and *Winter v. Natural Res. Def. Counsil*, 555 U.S. 7 (2008)(possibility standard is too lenient)[2].

## II. THE FOUR ELEMENTS OF NIKEN AND MOVANTS' CLAIMS

a. Likelihood of Success of the Appeal

6. The first element that movant must prove is a strong likelihood of success. Movants, however, have not made that showing. Their first two argument, at pages 12-15 of their motion, is that the retirement laws cannot be preempted and that PROMESA does not preempt them. These arguments are closely intertwined and SIM will discuss them jointly.

---

[2] In the Sixth Circuit, a showing of a "strong or substantial *likelihood* or *probability* of success on the merits." See, *Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 n.4 (6th Cir. 1977) and *In Re Delorean Motor, Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

3

7. Movants argue that preemption cannot lie in the absence of a federal statute that "supersedes, supplants, or conflicts with the local law." It also argues that the retirement law does not conflict with PROMESA. This misconstrues PROMESA.

8. Section 4 of PROMESA, 48 U.S.C. § 2013 states that "[t]he provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act. Clearly, it was the Financial Oversight's Board opinion that the parts of the Retirement law that were preempted conflicted with PROMESA. Evidence was presented for the need to eliminate the provisions pertaining to future benefits and the Puerto Rico legislature agreed, passing law 53-2021. Moreover, preempted law does not have to be complied with as section 314(b)(5) of PROMESA requires[3].

9. In addition, a plan of reorganization preempts non-bankruptcy laws, see, *Pacific Gas & Elec. Co. v. California ex rel. Cal. Dep't of Toxic Substances Control*, 350 F.3d 932 (9th Cir. 2003), cert denied, 543 U.S. 956 (2004); *In Re Federal Mogul Glob.*, 684 F.3d 355 (3d Cir. 2012) and *Irving Tanning Co. v. Me. Superintendent of Ins.*, 496 B.R. 644 (B.A.P. 1st Cir. 2013). Hence, movants arguments do not present the "strong likelihood of success" required by the Supreme Court.

10. Movants push their interpretation of law 53-2021 at pages 20-23 of their motion. Their view is that the legislative history and the statute intend that no cuts be done to pensions but they do not explain in their motion which is the part of the pensions that have been cut that would trigger sections 603 and 605 of the law. However, if movants mean the freeze on future benefits and cost of living, these are not what is meant

---

[3] Further see, page 51, footnote 45 of Board Omnibus Reply to Objections to Disclosure Statement and Plan, docket 17187.

by pensions. Law 53-2021 does not define what pensions are and hence we have to use the general meaning of the word. That would not include the future but what is being provided right now. If the Legislature wanted to included future benefits or those mentioned by Movants in their objections (not here) to the plan, it would have done so. Hence, the plain meaning of the statute is that the pension is what recipients receive. If the language of the statute is clear, the Court's inquiry "ends there as well." See, *Hughes Aircraft Co.* v. *Jacobson*, 525 U.S. 432, 438 (1999) and *Rot- kiske* v. *Klemm*, 140 S. Ct. 355, 360 (2019) (citing *Con- necticut Nat'l Bank* v. *Germain*, 503 U.S. 249, 254 (1992)) ("If the words of a statute are unambiguous, this first step of the interpretive inquiry is our last.").

11. Movants also misconstrue the preemption established by the Court in its order. The retirement laws are only preempted to the extent that they are inconsistent with PROMESA and the plan of adjustment, i.e., that it provides for future benefits not consistent with it. Hence, their arguments are without merits as to this issue. Given that Movants' claims that preemption of the retirement laws is invalid, their claims that the plan of adjustment is not feasible also fail and the Court should disregard them.

12. Since Movants have not provided a strong showing of success of their appeal, their request for a stay must fail. Additionally, however, the other factors do not favor their request as explained *infra*.

b. Irreparable Harm

13. The second factor to consider is irreparable harm. In *Michigan Coalition v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991), the Sixth Circuit used three factors to evaluate the harm in a stay request. These factors were; (1) the substantiality of the injury

alleged; (2) the likelihood of its occurrence and (3) the adequacy of the proof provided by the movant. Unfortunately for movants, they have failed on two the three factors.

14. Movants claim that without the stay they seek, the Frist Circuit will dismiss their appeal due to equitable mootness. For equitable mootness to ensue, however,  the "challenged plan [must] proceed to a point well beyond any practical appellate annulment." *PPUC Pa. Pub. Util. Comm'n v. Gangi*, 874 F.3d 33, 37 (1st Cir. 2017) and *Pinto-Lugo v. Fin. Oversight & Mgmt. Board for Puerto Rico*, 987 F.3d 173, 184 (1st Cir. 2021). Movants, however, have not shown that that will inevitably occur if the stay is not granted, nor when is the effective date to occur[4], nor when will be the point of no return. In addition, as the Court in *Pinto-Lugo* intimated, an appellant may seek an expedited appeal, quickly file its brief and oppose any attempt to extend the usual deadlines.

15. Moreover, we must examine the circumstances that moved the First Circuit to determine in *Pinto-Lugo* that the appeal was equitably moot. The District Court's order on the COFINA plan of adjustment was issued on February 5, 2019 and the First Circuit's judgment in February 8, 2021, two years after. Clearly, at that point there was no practical way to undo what was done, see, *Pinto-Lugo*, ante, at page 184. Movants, however, have not explained at what point in time would the appeal, if they proceed as the First Circuit instructed in *Pinto-Lugo*, will their appeal be moot. Without a strong showing that without the stay the First Circuit will inevitably apply equitable mootness to their appeal, Movants cannot claim irreparable harm and hence their stay request must be denied. This factor does not favor movants.

---

[4] The Financial Oversight & Management Board has stated that it intends to have the Effective Date by March 15, 2022, but that is not certain. "The best laid schemes o' mice an' men. Gang aft a-gley" To a Mouse by  Robert Burns.

c. The Issuance of the Stay Will Injure SIM

16. As stated before, SIM is to receive payment upon the effective date. SIM is a community based non-profit corporation duly organized under the laws of the Commonwealth of Puerto Rico and duly designated under the Medicaid statute as a Federally Qualified Health Center ("FQHC"). It receives federal grant funds under Section 330 of the Public Health Service Act, 42 U.S.C. §254b. and provides primary health care and related services to Medicaid, Medicare and SCHIP eligible patients. SIM has budgeted the moneys it will receive to provide services to this indigent population since it is moneys based on claims of lack of payment by the Commonwealth for Medicaid Services.

17. In addition to the moneys mentioned above, SIM, as per the order for the approval of the plan[5], is to continue its litigation called Med DC Action for any default by the Commonwealth on the future payments. This litigation began 20 years ago and the it is likely to continue for 20 more years since the Commonwealth is wrought in making timely and correct payments on this obligation. A stay could mean[6] not being able to continue said litigation. Hence, it will be prejudiced by the stay.

d. The Public Interest Lies with the Continued Implementation of the Plan

18. This Title III case was commenced in May of 2017. The plan of adjustment was approved in January 18, 2022. The plan of adjustment provides payment to bondholders and many other parties who have not received a penny from the Commonwealth. Now, finally, payments will commence, and also the first balanced

---

[5] See page 11-12 of the Courts order, docket 19813.
[6] SIM reserves all rights to aver in the Med DC Action that any stay of the plan of adjustment would not impair or stay any claim against the Commonwealth in said cases for post order defaults.

budget of the 4 needed for the elimination of the Financial Oversight and Management Board will commence. A new horizon can be seen.

19. Movants want to stop all of this and if they had made a strong showing that their appeal would commence, one could sympathize, but they have not. It is in the public interest not to stay the implementation of the plan of adjustment, especially since the obvious interest of movants is to derail it, not to alter it. This factor, then, does not favor Movants.

**III. CONCLUSION**

20. As the above discussion shows, Movants have failed on the four elements needed for the granting of a stay. Moreover, even if the Court considers that Movants have shown three of the four elements, the request should still be denied. "Failure to meet even one of the criteria justifies denial." *In Re Power Recovery Sys. Inc.*, 950 F.2d 798, 804 n. 31 (1st Cir. 1991). Hence, Movants' motion for stay should be denied.

WHEREFORE, SIM respectfully requests that Movants request for stay be denied.

CERTIFICATE OF SERVICE: That on this same date, a copy of this motion has been sent to all parties through the CM/ECF system.

Respectfully submitted on this 9th of February, 2022.

/s *John E. Mudd*
John E. Mudd Bar Number: 201102
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787) 413-1673
E-Mail johnmuddlaw@gmail.com