# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>                  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                  Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| FEDERACIÓN DE MAESTROS DE PUERTO RICO, INC., GRUPO MAGISTERIAL EDUCADORES(AS) POR LA DEMOCRACIA, UNIDAD, CAMBIO, MILITANCIA Y ORGANIZACIÓN SINDICAL, INC. AND UNIÓN NACIONAL DE EDUCADORES Y TRABAJADORES DE LA EDUCACIÓN, INC.,<br><br>                  Movants,<br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY<br><br>                  Respondents. | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**DECLARATION OF JUAN SANTAMBROGIO IN RESPECT OF OPPOSITION OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY TO MOTION DATED <u>FEBRUARY 1, 2022, FOR STAY PENDING APPEAL</u>**

I, Juan Santambrogio, hereby declare and state as follows:

1. I am a Managing Director in the Restructuring Advisory Services practice at Ernst & Young LLP ("EY"). I hold a Masters in Business Administration from the Darden Graduate School of Business Administration, University of Virginia, and bachelor degrees in accounting and business administration from the Catholic University of Argentina. I have over 20 years of experience in financial restructuring advising private and public sector clients. Prior to joining EY in 2011, I was a Managing Director in the restructuring practice of FTI Consulting and prior to that I was a Director in the restructuring division of Macquarie Capital (USA) Inc., a leading merchant bank.

2. I have experience advising private and public sector clients in complex financial restructuring situations including in-court and out-of-court transactions. I have also advised secured lender groups, unsecured creditor committees and other parties in interest in distressed transactions. I have experience in developing and/or evaluating long-term financial projections, short-term liquidity forecasts, collective bargaining agreements and retirement plans for entities in financial distress.

3. EY was first engaged by the Oversight Board on or around February 15, 2017. Since that time, EY's other professionals and I have, among other tasks: (i) advised the Oversight Board in relation to the collective bargaining agreements of the Government of Puerto Rico, its instrumentalities, and public corporations, (ii) advised the Oversight Board in negotiation/mediation with the unions to address key labor related issues, (iii) advised the Oversight Board in its analysis of the estimated impact of potential negotiated positions on the Fiscal Plan, the certified budget, and the Plan, and (iv) advised the Oversight Board in the development of long-term financial projections and in the Oversight Board's analysis of the funds available for creditors.

3

4. During EY's engagement, I have been involved in (i) advising the Oversight Board in assessing the financial impact of certain terms negotiated with labor unions and the Committee of Retirees, (ii) advising the Oversight Board in relation to the cash available at the Commonwealth, and (iii) advising the Oversight Board in the analysis of long-term financial projections. In this role, I have been and am in regular contact with the members of the Oversight Board, and its other advisors.

5. I submit this declaration (the "Declaration") in connection with the *Opposition of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority to Motion Dated February 1, 2022, for Stay Pending Appeal*. To the extent terms are capitalized but not defined in this Declaration, such terms have the meanings assigned to them in the Plan.

6. My statements set forth in this Declaration are based on my personal knowledge except where I reference specific documents or communications as the basis of my statements. In those instances where I reference a specific document or communication, either (a) I am not offering that document to prove the truth of the content in the document, or, (b) I am informed the document is otherwise admissible because, for instance, it is a self-authenticating public record or can be otherwise authenticated and shown to be admissible.

7. As described below, based upon my personal experience, the Movants' motion to stay the effectuation of the Plan (defined below) will impose significant costs to the Commonwealth. Specifically, and as described in more detail below, if the Plan does not go effective by June 30, 2022, based on the financial projections in the Commonwealth Certified 2022 Fiscal Plan, the funding of the Pension Reserve Trust is projected to be materially reduced, resulting in a projected reduction of the balance in the Pension Reserve Trust of approximately

$960 million, and thus fewer resources would be available for payment of pension benefits to retirees (including retired teachers) if currently projected future deficits are not avoided. Further, as also described below, if the Effective Date of the Plan is delayed, it will delay the distribution of approximately $10.8 billion in cash to various stakeholders as provided for in the Plan.

## I. Prior Testimony Before this Court

8. On October 25, 2021, I submitted a *Declaration of Juan Santambrogio in Respect of Confirmation of Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico. et al.*, ECF No. 18736 (the "October Declaration"). In the October Declaration, I explained the Seventh Amended Plan included a Pension Reserve Trust, "which will be held in trust for the sole benefit of retirees." October Decl. at ¶ 24.

9. As I explained in the October Declaration, the Seventh Amended Plan [ECF No. 17627] mandated the Commonwealth "make annual contributions to the Pension Reserve Trust from the Commonwealth General Fund for eight (8) Fiscal Years beginning in the Fiscal Year in which the Effective Date occurs, in an amount no less than $175 million per year." *Id.* at ¶ 25. Should the projected fiscal plan surplus exceed $1.75 billion for any of the relevant fiscal years, the Commonwealth would contribute "an amount equal to 25% of the projected fiscal plan surplus that year," also known as the Base Contribution. *Id.* The Commonwealth was also bound to contribute additional funds contingent on the projected fiscal plan primary surplus and the Commonwealth's debt service obligation. *Id.* at ¶ 26.

10. Based on the 2021 Commonwealth Fiscal Plan projections, I estimated the Commonwealth's Pension Reserve Trust contributions would total "approximately $2.1 billion during the eight years of funding." *Id.* at ¶ 27.

5

**II. Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico**

11. On January 14, 2022, the Oversight Board submitted to the Title III Court the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 19784) (as modified, the "Plan").[2]

12. Like the earlier Seventh Amended Plan, the Plan mandates the Commonwealth create a Pension Reserve Trust which "shall be utilized for payment of the Commonwealth's pension obligations under Act 106[-2017] and which shall not be subject to taxation by the Commonwealth." Plan § 1.389.

13. The Plan also dictates the Pension Reserve Trust must be funded through payments from projected and actual surpluses of the Commonwealth. Plan § 83.2. However, the Plan requires the Commonwealth to make annual contributions for ten years instead of the eight year funding period under the Seventh Amended Plan. *Id*. Further, the Plan provides for the Commonwealth's Base Contribution to be increased to either $175 million or "an amount equal to fifty percent (50%) of the Projected Fiscal Plan Surplus" if the Projected Fiscal Plan Surplus is equal to or greater than $1.75 billion for the fiscal year in which the Plan becomes effective or any of the following nine fiscal years. Plan § 1.119. The Oversight Board increased the funding formula to enhance the ability of the Pension Reserve Trust to support pension payments if future deficits occur.

14. On January 18, 2022, the Court issued an *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,*

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Plan.

*the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* confirming the Plan. ECF No. 19813.

15. The Oversight Board intends for the Plan's Effective Date to occur on or about March 15, 2022.

### III. 2022 Commonwealth Fiscal Plan

16. On January 27, 2022, the Oversight Board certified the 2022 Fiscal Plan for the Commonwealth of Puerto Rico ("Fiscal Plan").

17. As described more fully below, under the financial projections set forth in the current Fiscal Plan, the Pension Reserve Trust is projected to have more than $13.1 billion on deposit at the end of the ten year period mandated by the Plan. This increased funding amount above the $2.1 billion estimate based on the Seventh Amended Plan is an important measure that likely will help the Commonwealth manage future deficits.

### IV. Impact on Pension Reserve Trust of Movants' Motion to Stay

18. On February 1, 2022, the Teachers' Associations submitted a motion to stay the Title III Court's order and judgment confirming the Plan pending an appeal of that ruling. ECF No. 19969. If the Effective Date of the Plan is delayed beyond June 30, 2022 and into Fiscal Year 2023, it will negatively impact the projected funding of the Pension Reserve Trust.

19. The Plan requires the Pension Reserve Trust to be funded based on surpluses achieved in the fiscal year in which the Effective Date occurs and in the subsequent nine fiscal years. Based on the intended Effective Date and the Projected Fiscal Plan Surpluses in the ten funding years from FY22 through FY31, the Pension Reserve Trust is projected to receive $10.32

7

billion in Commonwealth contributions.[3] When invested at an assumed annual rate of return of 4.5 percent, this figure is projected to grow to a total funding amount of $13.11 billion at the end of this ten year period (i.e., by October 2031, the date of the final deposit). *See* Exhibit 1.

20. Should the Effective Date be delayed into FY23, which begins on July 1, 2022, the Pension Reserve Trust would be funded based on projected and actual surpluses during FY23 through FY32 rather than during FY22 through FY31. The Projected Fiscal Plan Surplus is highest in FY22 (yielding a projected contribution of $1.421 billion), which would be lost as a result of this delay, and substantially lower in the "replacement" year of FY32 under this scenario (yielding a contribution of $691 million). If the Effective Date is delayed until FY23, and absent any other changes to the financial projections in the current Fiscal Plan, the Pension Reserve Trust would only receive projected contributions totaling $9.59 billion, which under the same investment rate of return assumption of 4.5 percent, would yield projected total funding amount of $12.15 billion. *See* Exhibit 1. This means that if the Effective Date is delayed any more than three months (from March to July 1, 2022 or later), and absent any other changes to the financial projections in the current Fiscal Plan, the Pension Reserve Trust is projected to have $960 million less on hand after ten years to protect Island pensioners. *Id*.

V. **Cash Payments Under the Plan**

21. The Plan currently provides for cash payments to be made by the Commonwealth on the Effective Date. Specifically, pursuant to the Plan, cash payments totaling $10,852,160,073 are to be made by the Commonwealth on the Effective Date, including, without limitation, (a) approximately $8.0 billion on account of various bonds issued by the Debtors and other

---

[3] This amount assumes only the Base Contribution, which is based on Projected Fiscal Plan Surpluses, but could be higher if actual performance exceeds projections. See Plan § 83.2.

8

Commonwealth instrumentalities, (b) $575 million to the Commonwealth GUC Reserve, (c) $229 million to the alternative claim resolution reserve, (d) $20 million on account of the AFSCME PSA, (e) $100 million to Active ERS Participants for their Act 106 accounts, and (f) approximately $1.375 billion to System 2000 Participants, most of which will also be deposited into Act 106 accounts. Any delay in the Effective Date will delay those cash payments to the intended recipients of those funds.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 9, 2022
Alpharetta, Georgia

Juan Santambrogio

# EXHIBIT 1

# Impact on pension trust of delaying effective date by 1 year

$ in millions

| Current | FY2022 | FY2023 | FY2024 | FY2025 | FY2026 | FY2027 | FY2028 | FY2029 | FY2030 | FY2031 | FY2032 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Contributions | 1,421 | 1,036 | 906 | 970 | 971 | 1,132 | 1,123 | 1,027 | 934 | 801 | | 10,320 |
| Interest | 32 | 89 | 136 | 185 | 237 | 295 | 359 | 423 | 486 | 547 | | 2,788 |
| Total Funding | 1,453 | 1,124 | 1,042 | 1,155 | 1,207 | 1,426 | 1,481 | 1,450 | 1,421 | 1,348 | | 13,108 |

| 1 year delay | FY2022 | FY2023 | FY2024 | FY2025 | FY2026 | FY2027 | FY2028 | FY2029 | FY2030 | FY2031 | FY2032 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Contributions | | 1,036 | 906 | 970 | 971 | 1,132 | 1,123 | 1,027 | 934 | 801 | 691 | 9,590 |
| Interest | | 23 | 68 | 113 | 162 | 217 | 277 | 338 | 397 | 454 | 508 | 2,558 |
| Total Funding | | 1,059 | 974 | 1,084 | 1,133 | 1,348 | 1,400 | 1,365 | 1,332 | 1,255 | 1,199 | 12,148 |
| | | | | | | | | | | | | |
| Difference in Contributions | (1,421) | - | - | - | - | - | - | - | - | - | 691 | (730) |
| Difference in Total Funding | (1,453) | (65) | (68) | (71) | (75) | (78) | (81) | (85) | (89) | (93) | 1,199 | (960) |

1