# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                          Debtors.[1] | PROMESA Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| COOPERATIVA DE AHORRO Y CRÉDITO ABRAHAM ROSA, COOPERATIVA DE AHORRO Y CRÉDITO DE CIALES, COOPERATIVA DE AHORRO Y CRÉDITO DE RINCÓN, COOPERATIVA DE AHORRO Y CRÉDITO VEGA ALTA, COOPERATIVA DE AHORRO Y CRÉDITO DR. MANUEL ZENO GANDÍA, AND COOPERATIVA DE AHORRO Y CRÉDITO DE JUANA DÍAZ,<br><br>                          Movants,<br><br>                          v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                          Respondents. | Re: ECF No. 20035 |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**DECLARATION OF SHEVA R. LEVY IN RESPECT OF THE OPPOSITION OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY TO THE FEBRUARY 4, 2022 MOTION FOR STAY PENDING APPEAL**

I, Sheva R. Levy, hereby declare:

**I.     QUALIFICATIONS**

1. My name is Sheva R. Levy. I am a Principal at Ernst & Young LLP ("EY") in the People Advisory Services practice.

2. I received my bachelor's degree in mathematics from Cleveland State University in 1998.

3. In January 1999, I joined EY in a staff position. I have worked in various roles at EY for over 23 years.

4. In July 2014, I was promoted to Principal at EY, in which capacity I lead a team of actuarial consultants who focus on issues relating to defined-benefit pensions and other post-retirement programs. I am an Enrolled Actuary, an Associate of the Society of Actuaries, and a Member of the American Academy of Actuaries. I meet the American Academy of Actuaries' "Qualification Standards for Actuaries Issuing Statements of Actuarial Opinion in the United States" relating to pension plans, by virtue of attainment of the aforementioned credentials and satisfaction of certain continuing education requirements.

**II.     SCOPE OF ENGAGEMENT**

5. On or about February 15, 2017 (pursuant to an engagement agreement, as amended thereafter from time to time), EY was engaged by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), in its capacity as the Title III representative of the

2

Commonwealth of Puerto Rico (the "Commonwealth"), to, among other items, assist with estimates related to pension contributions and benefits under various scenarios and for various purposes including to support the evaluation of proposals in negotiations with unions and other stakeholders and for inclusion in fiscal plan projections.

6. During EY's engagement, I have been responsible for conducting actuarial analyses regarding the Commonwealth's three pension systems (defined below), including estimating the financial impact of pension reform measures proposed by the Oversight Board and assisting with actuarial analyses used by the Oversight Board in its negotiations with certain counterparties. In this role, I have been and am in regular contact with the members of the Oversight Board, its staff, its counsel, and other advisors.

7. At the request of the Oversight Board, I, along with several colleagues at EY who acted under my supervision and direction, conducted an analysis of estimated increased pension costs and estimated offsetting Social Security savings associated with a delay beyond March 15, 2022 of the Freeze Date for the JRS and TRS Pension plans (defined below) set to occur on the Effective Date of the Sixth Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employee Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority (the "Plan") [Dkt. No. 19784] as confirmed by the Court on January 18, 2022 [Dkt. No. 19812]. The models used in my analysis produced an estimated net increase in the Commonwealth's pension costs of approximately $65 million over the next 30 years (FY2022–FY2051) if the Effective Date is delayed three months (*i.e.*, until June 15, 2022). The models produced even greater estimated cost increases to the Commonwealth for longer periods of delay.

3

8. I submit this declaration (the "Declaration") in respect of the *Opposition of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority to the February 4, 2022 Motion for Stay Pending Appeal*. To the extent terms are capitalized but not defined in this Declaration, such terms have the meanings assigned to them in the Plan.

9. My statements set forth in this Declaration are based on my personal knowledge except where I reference specific documents or communications as the basis of my statements. In those instances where I reference a specific document or communication, I am not offering the document to prove the truth of the content in that document, unless the document is otherwise admissible because, for instance, it is a self-authenticating public record or can be otherwise authenticated and shown to be admissible.

### III. THE PENSION SYSTEM AND PLAN OF ADJUSTMENT

10. On October 25, 2021 and November 3, 2021, I submitted declarations in connection with the confirmation hearing,[2] which included testimony regarding the costs associated with the Commonwealth's three public retirement systems for its employees: (i) the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico ("ERS"), (ii) the Puerto Rico Teachers Retirement System ("TRS"), and (iii) the Retirement System for the Judiciary of the Commonwealth of Puerto Rico ("JRS," and together with the ERS and TRS, the "Pension Systems"). I also testified at the confirmation hearing.

---

[2] Declaration of Sheva R. Levy in Respect of Confirmation of Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, *et al.* [ECF No. 18737] (the "Initial Declaration") and Supplemental Declaration of Sheva R. Levy in Respect of Confirmation of Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, *et al.* [ECF No. 19059] (the "Supplemental Declaration," and together with the Initial Declaration, the "Confirmation Declarations").

11. As I described in the Confirmation Declarations, each of the Pension Systems has multiple benefit structures, depending on the date an employee was hired. The Pension Systems cover current employees of the Commonwealth ("Active Participants") and former employees currently receiving monthly payments ("Retired Participants" and together with Active Participants, "Participants"), as well as some individuals who have terminated employment but not yet begun receiving a monthly payment. *See* Initial Declaration ¶ 7.

12. Currently, TRS Active Participants hired prior to August 1, 2014 continue to accrue benefits under a defined benefit plan, where benefits are determined based on years of service and compensation levels prior to the date of an employee's retirement. *See* Initial Decl. ¶ 17–22. TRS Active Participants hired on or after August 1, 2014 participate in defined contribution accounts where their contributions may grow through tax-free investment options. *See* Initial Decl. ¶ 21.

13. Calculations of defined benefit pensions for TRS Active Participants are based on the participant's average salary over the participant's highest 36 months of gross cash compensation, excluding bonuses and overtime, received for employment. *See* PROMESA Section 211 Report on the Puerto Rico Retirement Systems at 36.

14. Currently, JRS Active Participants hired prior to July 1, 2014 continue to accrue benefits under a defined benefit plan, where benefits are based on years of service and compensation levels prior to the date of an employee's retirement. JRS Active Participants hired on or after July 1, 2014 receive a benefit that consists of a blend of a traditional defined benefit component with a hybrid plan structure. All judges therefore participate in some level of benefit under a traditional defined benefit plan. *See* Initial Decl. ¶ 23–28.

5

15. It is my understanding that the Plan, as confirmed by the Court, provides for the treatment of the Participants' claims in the Pension Systems, including the treatment of JRS and TRS Active Participants' claims to currently accruing benefits under defined benefit plans. *See* Initial Decl. ¶ 29–31.

16. As I explained in my Confirmation Declarations, it is my understanding that under Article LV of the Plan, retirement benefits of TRS Active Participants hired on or before August 1, 2014 and JRS Active Participants under TRS and JRS, as applicable, shall be frozen, such that future defined benefits shall cease to increase and accrue, as of the Effective Date of the Plan. It is also my understanding that, as described in Exhibits E and F-1 to the Plan, after the Effective Date, Participants who are subject to the pension freeze will: (i) receive payment in full on account of all defined benefits accrued through the Effective Date, and (ii) be enrolled into new defined contribution accounts under the Act 106 defined contribution plan, which will subsequently be funded with employee contributions in a minimum amount of 8.5% of compensation, reduced by the employee's contribution to Social Security, as applicable. *See* Initial Decl. ¶¶ 41 and 49.

## IV. COSTS OF DELAYING THE PENSION FREEZES

17. As explained in more detail in the Confirmation Declarations, the estimated net impact to the Commonwealth based on the certified 2021 Fiscal Plan for the Commonwealth [Dkt. No. 18785-10], completely eliminating the pension freezes, *i.e.* the increase in the aggregate PayGo costs, is approximately $4.7 billion during the period from FY 2022–FY 2051, based on the assumptions and inputs identified in Exhibit 1 of the Initial Declaration. *See* Initial Decl., Ex. 1; Supplemental Decl. ¶ 14.

18. Delaying implementation of the pension freezes will also increase long-term costs for the Commonwealth, as compared to the estimated pension costs under the Plan and the certified 2022 Fiscal Plan for the Commonwealth (the "Fiscal Plan"), because until the Plan's effective date, TRS and JRS Active Participants that continue to work beyond March 15, 2022 continue to accrue increased defined benefits payable upon retirement through the subject employee's death (and, based on survivorship benefits, potentially for certain lengths of time thereafter).

19. In addition to the incremental accruals due to additional periods of service earned under TRS and JRS, costs will increase to the extent that salary increases beyond the levels projected through the freeze date used for the Fiscal Plan. The Fiscal Plan includes an annual allocation of $187 million for salary increases for certain TRS Active Participants beginning in FY 2023. *See* Fiscal Plan at 167; 222–23. It is my understanding that the first phase of salary increases—a $235 monthly salary increase for teachers—will be effective on July 1, 2022 and subject to certain conditions, teachers would receive a further increase of $235 per month beginning on January 1, 2023. *Id*.

20. It is my understanding that the Plan provides that the accrued benefits of TRS Active Participants will be calculated based on salaries earned through the Effective Date, which is currently March 15, 2022. If the Effective Date is delayed beyond July 1, 2022 and the salary increases for the TRS Active Participants become effective, the average salary calculations used to calculate the benefits for the lifetime pensions these Active Participants will receive will increase for each additional month that includes a pay increase which gets factored into the average compensation calculation. This salary increase will result in a further increase in the

7

Commonwealth's pension liability for TRS Participants, in addition to the increase caused by the accrual of additional periods of service due to the passage of time until the freeze effective date.

21. Additionally, it is my understanding that absent the provisions of the Plan, JRS Retirees are anticipated to receive a Cost of Living Adjustment ("COLA") effective January 1, 2023. The Plan eliminates the application of future COLAs from and after the Freeze Date. If the Effective Date of the Plan is delayed beyond January 1, 2023, a JRS COLA would go into effect, which would further increase the cost of benefits payable to JRS participants.

22. It is my understanding based on the Fiscal Plan that, until the pension freezes are implemented, TRS and JRS Active Participants would not be eligible to contribute towards Social Security. *See* Fiscal Plan at 283. In that case, during the delay of the Plan's implementation, the Commonwealth would not be making Social Security contributions on behalf of these Active Participants. The estimated Social Security contributions the Commonwealth would have otherwise incurred with a March 15, 2022 freeze date, based on the assumptions and inputs outlined in Exhibit 1, are: [3] $8 million over a three-month period, $18 million over a 6-month period, $28 million over a 9-month period; and $39 million over a 12-month period.

---

[3] Changes to those assumptions and inputs will change these estimates.

23. The estimated financial impacts of delaying implementation of the pension freeze, and the associated Social Security participation over a 30-year period from FY2022–FY2051, based on the assumptions and inputs outlined in Exhibit 1, are as follows (in millions of dollars):

|  | Estimated increase in pension costs due to freeze delay | Estimated offsetting savings from Social Security | Net estimated increase/(decrease) in pension costs |
|---|---|---|---|
| 3-month delay | $73 | ($8) | $65 |
| 6-month delay | $203 | ($18) | $185 |
| 9-month delay | $309 | ($28) | $281 |
| 12-month delay | $447 | ($39) | $408 |

24. Additionally, delaying implementation of the Plan, and the pension freeze provided therein, would increase the likelihood of the Commonwealth needing to rely on the Pension Reserve Trust for payment of the Commonwealth's PayGo obligations. The increased pension costs associated with the delay will increase the risk of exhausting the Pension Reserve Trust during the Fiscal Plan projection period and, accordingly, increase the risk that future deficits may be borne by the Commonwealth's retirees in the form of reduced pension payments.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 11, 2022
University Heights, Ohio.

Sheva R. Levy

# Exhibit 1

# EXHIBIT 1

## Source Materials for Actuarial Analysis

As directed by the Oversight Board, the sources relied upon in the development of the actuarial analyses reflected in the Fiscal Plan for the Commonwealth certified by the Oversight Board on January 27, 2022 (the "Fiscal Plan") are as follows:

- Census data as of July 1, 2017 for ERS, TRS and JRS as used by the actuary for the Pension Systems, adjusted:
    - Based on experience factors utilized by the Pension System actuary
    - To reflect the expected System 2000 settlement
    - To incorporate experience data identifying retirements and contribution refunds for the TRS system through the end of 2020 as provided by the administrator of the Pension Systems
- Actuarial assumptions related to demographic experience utilized by the actuary for the Pension Systems, as disclosed in the most recent publicly available actuarial valuation reports, adjusted based on industry updates for mortality experience
- Summary of the benefit provisions for each of the Pension Systems as described by the actuary for the Pension Systems in each respective publicly available actuarial valuation report
- The description of the proposed treatment of the pension classes in the Sixth Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico [Dkt. No. 19784] (the "Plan"), including:
    - The COLA elimination provisions contained in the Plan Support Agreement ("PSA") for the Committee of Retirees
    - The JRS freeze and Social Security provisions, as contained in Exhibit E of the Plan, including closing of plan to future entrants, and
    - The TRS freeze and Social Security provisions as contained in Exhibit F-1 of the Plan
- Various inputs utilized by the Oversight Board's advisors for the Fiscal Plan and the FY 2022 Budget for the Commonwealth certified by the Oversight Board related to payroll, Social Security cost for teacher raises, PayGo, JRS new entrants through the freeze date, and inflation projections

Detailed results of this analysis, including additional supporting documentation related to the assumption selection process and data sources, were previously provided to the Oversight Board as part of the Fiscal Plan preparation process. The accuracy of the estimates contained in the Fiscal Plan is dependent on the accuracy of the underlying data and the choice of assumptions. Data to further assess the reasonableness of certain demographic assumptions was not available, although I am unaware of any information indicating that the assumptions are not reasonable representations of long-term expectations. It is my understanding that the assumptions selected by the Oversight Board rely on the assessment of the reasonableness of assumptions performed by the actuary for the Pension Systems for reporting liabilities of the Pension Systems.