UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------------- x
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
    as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO, *et al.*, : (Jointly Administered)
:
Debtors.[1] :
---------------------------------------------------------------------------- x

**TENTH SUPPLEMENTAL DECLARATION OF LUC A. DESPINS REGARDING
RETENTION OF PAUL HASTINGS LLP AS COUNSEL TO OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

I, Luc A. Despins, hereby declare under penalty of perjury:

    1.    I am a partner in the law firm of Paul Hastings LLP ("Paul Hastings") with offices worldwide, including 200 Park Avenue, New York, New York 10166, and am admitted to practice in the State of New York. The facts set forth in this supplemental declaration (the "Tenth Supplemental Declaration") are based upon my personal knowledge, discussions with other Paul Hastings attorneys, and the firm's client/matter records that were reviewed by me or other Paul Hastings attorneys acting under my supervision and direction.

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

2. On July 10, 2017, I submitted a declaration (the "Initial Declaration") in support of the *Application for Order Pursuant to Bankruptcy Code Section 1103(a) and Local Bankruptcy Rule 2014-1(e) Authorizing the Employment and Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors, Effective as of June 26, 2017* [Docket No. 610] (the "Retention Application")[2] filed by the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico in the above-captioned cases.

3. By order of this Court entered August 10, 2017 [Docket No. 999] (the "Retention Order"), Paul Hastings' retention as counsel for the Committee was approved effective as of June 26, 2017. The Retention Order provided that "[t]he retention of Paul Hastings, as counsel to the Committee, shall be deemed to apply to the representation of the Committee if ever enlarged to include unsecured creditors of other debtors, without the need to obtain a modification of this Order." On August 25, 2017, the U.S. Trustee expanded the role of that Committee to be the official committee for HTA, ERS, and PREPA. Accordingly, Paul Hastings' retention extends to the representation of the Committee as the official committee for HTA, ERS, and PREPA.[3]

4. On September 22, 2017, I submitted the *First Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 1357] (the "First Supplemental Declaration").

5. On February 13, 2018, I submitted the *Second Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 2485] (the "Second Supplemental Declaration").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Retention Application.

[3] The "Committee" refers to the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

2

6. On July 27, 2018, I submitted the *Third Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 3712] (the "Third Supplemental Declaration").

7. On November 1, 2018, I submitted the *Fourth Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 4134] (the "Fourth Supplemental Declaration").

8. On March 18, 2019, I submitted the *Fifth Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 5823] (the "Fifth Supplemental Declaration").

9. On July 26, 2019, I submitted the *Sixth Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 8286] (the "Sixth Supplemental Declaration").

10. On November 1, 2019, I submitted the *Seventh Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 9089] (the "Seventh Supplemental Declaration").

11. On March 20, 2020, I submitted the *Eighth Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 12479] (the "Eighth Supplemental Declaration").

12. On October 16, 2020, I submitted the *Ninth Supplemental Declaration of Luc A. Despins Regarding Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors* [Docket No. 14598] (the "Ninth Supplemental Declaration" and, together with the Initial Declaration, the First Supplemental Declaration, the Second Supplemental Declaration, the Third Supplemental Declaration, the Fourth Supplemental Declaration, the Fifth Supplemental Declaration, the Sixth Supplemental Declaration, the Seventh Supplemental

Declaration, and the Eighth Supplemental Declaration, the "Prior Declarations"). I hereby incorporate by reference, in their entirety, the Prior Declarations as if fully set forth herein.

13. On January 19, 2022, the Court entered an order [Docket No. 19813] confirming the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (the "Plan"). As of the filing of this Tenth Supplemental Declaration, the effective date of the Plan has not yet occurred.

### Review and Disclosure of Additional Interested Parties

14. Since filing the Ninth Supplemental Declaration, Paul Hastings has become aware of additional Interested Parties (collectively, the "Additional Interested Parties") in the Title III cases of the Commonwealth, COFINA, ERS, HTA, and PREPA (collectively, the "Title III Cases"). The identities of the Additional Interested Parties are set forth on Exhibit A hereto and include parties that have been added to the Master Service List (as of January 4, 2022) in the jointly administered Title III Cases (*i.e.*, the Commonwealth, COFINA, ERS, HTA, and PREPA) since filing of the Ninth Supplemental Declaration.[4]

15. In preparing this Tenth Supplemental Declaration, Paul Hastings reviewed its conflicts check system for the names of the Additional Interested Parties. The results of our conflicts check were compiled and analyzed by Paul Hastings attorneys acting under my supervision. While certain individuals and entities may be Interested Parties in more than one capacity in the Title III Cases, *e.g.*, as a creditor in one or multiple Title III Cases and as a party that has filed a notice of appearance, Paul Hastings' updates do not cover changes in capacity

---

[4] To avoid duplication, entities that were included on Exhibit A to the Prior Declarations have not been included again on Exhibit A to this Tenth Supplemental Declaration.

4

during the course of a bankruptcy case. Given the prior disclosure of Paul Hastings' relationship, if any, to such entities, such disclosure is not repeated here.

16. To the extent the conflicts check searches indicated that Paul Hastings has performed services for any Additional Interested Party within the last five years, the identity of such entity and the nature of Paul Hastings' relationship with such entity are set forth in <u>Exhibit B</u> hereto. <u>Exhibit B</u> does not include relationships that Paul Hastings has with parents or affiliates of entities that were previously disclosed in the Prior Declarations.

17. To the best of my knowledge, based on the review procedures described above, Paul Hastings does not have any "connection" to the Additional Interested Parties, except as described in the Prior Declarations or in this Tenth Supplemental Declaration. Neither the term "connection," as used in Bankruptcy Rule 2014, nor the proper scope of a professional's search for "connection" has been defined; out of an abundance of caution, therefore, I am disclosing many representations that are not, to my understanding, disqualifying or problematic under PROMESA, the Bankruptcy Code, or applicable standards of professional ethics.

18. Neither I, nor any partner, of counsel, or associate of Paul Hastings, as far as I have been able to ascertain, has any connection with any Additional Interested Party, except as set forth below or otherwise in the Prior Declarations or this Tenth Supplemental Declaration (including the Exhibits hereto):

(a) Attached hereto as <u>Exhibit B</u> and incorporated herein by reference is a list of Additional Interested Parties and other Interest Parties[5] (or their affiliates) whom Paul Hastings represents, or has represented in the past, in matters ***unrelated*** to the matters on which the Committee has retained Paul Hastings. Although Paul Hastings has represented, currently represents, and may continue to represent certain entities and individuals listed on <u>Exhibit B</u> hereto, Paul Hastings will not represent any such entity or individual in the Title III Cases.

---

[5] <u>Exhibit B</u> also includes Interested Parties identified on <u>Exhibit A</u> to Prior Declarations with respect to which a new connection has arisen.

5

  (b) Each of the entities identified on <u>Exhibit B</u> hereto as a "current client" accounted for less than 1% of Paul Hastings' fees collected for the firm's fiscal year ending January 31, 2021. For the avoidance of doubt, the services performed for such entities were unrelated to the matters on which the Committee has retained Paul Hastings.

  19. Paul Hastings is also aware of the recent enactment of the Puerto Rico Recovery Accuracy in Disclosures Act (the "<u>PRRADA</u>") and that, in accordance with PRRADA and the Court's related orders [Docket No. 19859 and 19980], the Oversight Board is currently preparing the List of Material Interested Parties, as defined in the PRRADA (the "<u>MIP List</u>").[6] The rationale underlying the enactment of PRRADA is to make the Oversight Board subject to the disclosure requirements under Bankruptcy Rule 2014(a). As the Senate Report noted: "Although section 310 of PROMESA applies the Federal Rules of Bankruptcy Procedure to cases under title III, the disclosure requirements of 2014 do not apply to professionals hired by the Commonwealth, its instrumentalities, or the Oversight Board because those requirements are tied to section 327, which does not apply." S. Rep. No. 117-48 at 5. In addition, the Senate Report recognized that "PROMESA does not give the court the power to screen professionals for conflicts of interest before they are hired," because "[s]ection 316(a) [of PROMESA] gives the Commonwealth, its instrumentalities, and the Oversight Board the 'sole discretion' to employ professionals." *Id.*

  20. In contrast, section 1103 of the Bankrupty Code, which governs, among other things, the retention of Committee professionals, *is* incorporated into PROMESA. PROMESA § 301. In addition, section 316(a) of PROMESA does *not* contain language that the employment of Committee professionals is in the sole discretion of the Committee. Accordingly, the Committee professionals (including Paul Hastings) have filed retention applications with this Court (which this Court has approved) and, moreover, have complied with the disclosure

---

[6] The Committee reserves all its rights with respect to the MIP List.

requirements under Bankruptcy Rule 2014. In fact, to date, Paul Hastings has filed ten supplemental declarations disclosing Paul Hastings' connections with the Interested Parties.[7] To the extent that there are discrepancies between the list of Interested Parties that Paul Hastings has used for purposes of its conflicts checks and the MIP List, Paul Hastings will, of course, further supplement its disclosures in accordance with PRRADA and this Court's orders.

### New Hires

21. Since filing the Ninth Supplemental Declaration, a number of individuals, including attorneys, legal interns, paralegals, and other paraprofessionals (collectively, the "New Hires") have joined Paul Hastings. Except as detailed below per their input in the hiring process, these New Hires neither (i) worked on matters related to the Debtors or to Interested Parties in the Title III Cases nor (ii) were exposed to confidential information related to the Debtors or to Interested Parties in the Title III Cases in connection with their prior positions.

    i.    New Hires *Not* Exposed to Confidential Information in Prior Position and, Out of an Abundance of Caution, Subject to an Ethical Wall

22. Based on their input in the hiring process, the New Hires identified on Exhibit C did not represent, and were not exposed to confidential information related to the Debtors; however, out of an abundance of caution, Paul Hastings has imposed an ethical wall on these New Hires.

    ii.    New Hires *Not* Exposed to Confidential Information in Prior Position and *Not* Subject to an Ethical Wall

23. For the New Hires identified on Exhibit D, Paul Hastings has determined that it is not necessary to set up an ethical wall due to a variety of factors (in addition to the fact that these

---

[7] As detailed in these declarations, given that the Debtors included hundreds of thousands of creditors on their Lists of Creditors, Paul Hastings necessarily had to limit its conflicts review to certain material creditors. That said, the dollar thresholds applied by Paul Hastings to identify material creditors in the Title III Cases was equal to (and in some instance lower than) the dollar thresholds the Oversight Board will apply to the MIP List.

New Hires did not work on matters related to the Debtors and were not exposed to confidential information related to the Debtors). Among these factors are that these New Hires are not expected to work on the Puerto Rico matter, they generally had a low level of seniority at their prior employment, and/or their prior employment long predates these Title III Cases.

    iii.      Other New Hires

24. In October 2020, Avi Luft joined Paul Hastings as counsel in the New York office. From July 2004 to October 2020, Mr. Luft was counsel at Cleary Gottlieb Steen & Hamilton LLP ("Cleary"). Mr. Luft has informed Paul Hastings that he did not work on matters related to the Puerto Rico government, the P3 Authority, or the Debtors and was not exposed to confidential information related to such entities or the Debtors while he was at Cleary.

25. In November 2020, Scott C. Shelley joined Paul Hastings as of counsel in the New York office. From May 2008 to November 2020, Mr. Shelley was of counsel at Quinn Emanuel LLP. Mr. Shelley has informed Paul Hastings that, while at Quinn Emanuel, he worked on certain matters related to the Title III Cases for Tilden Park Capital Management, GoldenTree Asset Management LP, Whitebox Advisors LLP, and Monarch. Mr. Shelley has further informed Paul Hastings that he was not exposed to confidential information related to the Lawful Constitutional Debt Coalition, the COFINA Senior Bondholders' Coalition, or the Debtors while at Quinn Emanuel. Out of an abundance of caution, Paul Hastings imposed an ethical wall between Mr. Shelley and the firm's representation of the Committee in the Title III Cases. In addition, Paul Hastings has obtained the Lawful Constitutional Debt Coalition's and the COFINA Senior Bondholders' Coalition's written waiver regarding Mr. Shelley's employment at Paul Hastings. On September 17, 2021, Quinn Emanuel consented to lift certain restrictions in the ethical wall for the limited purpose of allowing Mr. Shelley to work on the

8

avoidance action trust agreement in connection with the proposed plan of adjustment in the Title III Cases. On September 18, 2021, Paul Hastings amended the ethical wall accordingly.

26. In January 2021, Monica Molina joined Paul Hastings as an associate in the San Francisco office. From August 2018 to August 2020, Ms. Molina was a judicial law clerk for the Honorable Juan R. Torruella in the U.S. Court of Appeals for the First Circuit. Ms. Molina has informed Paul Hastings that Paul Hastings was not involved in the cases on which she worked but, per Chambers policy, she cannot confirm that she did not work on matters related to the Debtors or the Title III Cases or that she was not exposed to confidential information related to the Debtors or the Title III Cases, while serving as a judicial law clerk. Out of an abundance of caution, Paul Hastings has imposed (and will continue to impose) an ethical wall between Ms. Molina and the firm's representation of the Committee in the Title III Cases.

27. In February 2021, Will C. Farmer joined Paul Hastings as an associate in the Los Angeles office. In the summer of 2016, and from August 2017 to August 2019, Mr. Farmer was a summer associate and an associate, respectively, at Milbank, Tweed, Hadley & McCloy LLP ("Milbank"). From January 2016 to March 2016, Mr. Farmer was a student extern at the U.S. Securities and Exchange Commission (the "SEC") in Washington, D.C. Mr. Farmer has informed Paul Hastings that he did not work on matters related to Ambac, the Debtors, or the Title III Cases and was not exposed to confidential information related to Ambac, the Debtors, or the Title III Cases while he was at Milbank and the SEC.

28. As discussed in the Fifth Supplemental Declaration, Diana Felipe worked as a 2019 summer associate in Paul Hastings' New York office. From February 2015 to May 2017, Ms. Felipe worked as a legal assistant at Milbank in New York. Ms. Felipe has informed Paul Hastings that, while at Milbank, she represented Ambac in matters related to the Title III Cases. While at Milbank, Ms. Felipe also represented KPMG and Wilmington Trust on matters

unrelated to the Title III Cases. From February 2019 to April 2019, Ms. Felipe worked as an intern at the SEC in New York. Ms. Felipe has informed Paul Hastings that she did not work on matters related to the Debtors or the Title III Cases and was not exposed to confidential information related to the Debtors or the Title III Cases while she was at the SEC. During the summer of 2019, Paul Hastings established an ethical wall to screen Ms. Felipe from matters related to the Title III Cases. From February 2021 to December 2021, Ms. Felipe was employed by Paul Hastings as an associate in the New York office, and Paul Hastings similarly imposed an ethical wall between her and the firm's representation of the Committee in the Title III Cases.

29. In March 2021, Maximilian Kirchner joined Paul Hastings as a local partner in the London office. From September 2012 to November 2014 and from November 2014 to March 2021, Mr. Kirchner was a senior counsel and partner, respectively, at Proskauer Rose LLP ("Proskauer"). Mr. Kirchner has informed Paul Hastings that, while at Proskauer, he was not exposed to confidential information related to the Oversight Board or the Debtors in connection with the minimal services he provided to the Oversight Board. Out of an abundance of caution, Paul Hastings has imposed (and will continue to impose) an ethical wall between Mr. Kirchner and the firm's representation of the Committee in the Title III Cases.

30. In the summer of 2021, Alexandre Miranda joined Paul Hastings as a summer associate in the New York office. In the summer of 2020, Mr. Miranda was an intern at Wolf Popper LLP. Mr. Miranda has informed Paul Hastings that, while at Wolf Popper, he performed limited work (a total of 15.5 hours) for the PREPA Employees Retirement System, the Oklahoma Firefighters Pension and Retirement System, the Plymouth County Retirement Association, and the Electrical Workers Pension Fund, Local 103, I.B.E.W in connection with Case Number 2:19cv8237-SDW before the U.S. District Court for the District of New Jersey. Mr. Miranda has further informed Paul Hastings that he did not work on matters related to the

10

Debtors or the Title III Cases while he was at Wolf Popper. For the avoidance of doubt, Mr. Miranda has not represented the PREPA Employees Retirement System, the Oklahoma Firefighters Pension and Retirement System, the Plymouth County Retirement Association, or the Electrical Workers Pension Fund, Local 103, I.B.E.W since joining Paul Hastings. Out of an abundance of caution, Paul Hastings imposed an ethical wall between Mr. Miranda and the firm's representation of the Committee in the Title III Cases.

31. In July 2021, Gary J. Kavarsky joined Paul Hastings as an associate in the New York office. From September 2017 to July 2021, Mr. Kavarsky was an associate with Kirkland & Ellis LLP ("K&E"). Mr. Kavarsky has informed Paul Hastings that, while at K&E, he attended a hearing in the Title III Cases and took notes for a potential bondholder client. Mr. Kavarsky has further informed Paul Hastings that he was not exposed to confidential information related to the Debtors or the Title III Cases while at K&E. Out of an abundance of caution, Paul Hastings has imposed (and will continue to impose) an ethical wall between Mr. Kavarsky and the firm's representation of the Committee in the Title III Cases.

32. As discussed in the Eighth Supplemental Declaration, in the summer of 2020, Henry Finkelstein worked as a summer associate in Paul Hastings' New York office. From July 2016 to July 2018, Mr. Finkelstein was a paralegal in Washington, D.C. at Proskauer, which represents the Oversight Board in the Title III Cases. Mr. Finkelstein has informed Paul Hastings that he was involved, as a paralegal, in the very early stages of the Title III Cases for approximately one month, during which time he was responsible for creating an internal organizational system to track the cases on PACER, creating and updating network folders for each case docket, and printing documents for a Proskauer attorney before a deposition or witness meeting, which task did not involve researching or collecting the documents. Mr. Finkelstein has further informed Paul Hastings that at no time was he privy to discussions on case strategy.

11

From May 2019 to August 2019, Mr. Finkelstein was a student intern at the SEC in Washington, D.C. Mr. Finkelstein has informed Paul Hastings that he did not work on matters related to the Debtors or the Title III Cases and was not exposed to confidential information related to the Debtors or the Title III Cases while he was at the SEC. During the summer of 2020, Paul Hastings established an ethical wall to screen Mr. Finkelstein from matters related to the Title III Cases. In October 2021, Mr. Finkelstein joined Paul Hastings as an associate in the New York office, and Paul Hastings similarly imposed an ethical wall between him and the firm's representation of the Committee in the Title III Cases.

33. In November 2021, Ariel Vita Giumarelli joined Paul Hastings as an associate in the Washington, D.C. office. From November 2018 to May 2021, Ms. Giumarelli was an associate at Cleary in New York. Ms. Giumarelli has informed Paul Hastings that she did not work on matters related to the Puerto Rico government, the P3 Authority, or the Debtors but may have been exposed to confidential information related to such entities and/or the Debtors while she was at Cleary. Out of an abundance of caution, Paul Hastings has imposed (and will continue to impose) an ethical wall between Ms. Giumarelli and the firm's representation of the Committee in the Title III Cases.

34. In February 2022, Laurel Loomis Rimon joined Paul Hastings as a partner in the Washington, D.C. office. From January 2018 to January 2022, Ms. Rimon was a partner with O'Melveny & Myers LLP ("O'Melveny") in Washington, D.C. Ms. Rimon has informed Paul Hastings that, while at O'Melveny, she represented the AAFAF with regard to administrative law counseling. Ms. Rimon has further informed Paul Hastings that, other than to the limited extent of her involvement with regard to administrative law counseling, she did not work on matters related to the Debtors or the Title III Cases and was not exposed to confidential information related to the Debtors or the Title III Cases while at O'Melveny. Out of an

12

abundance of caution, Paul Hastings has imposed (and will continue to impose) an ethical wall between Ms. Rimon and the firm's representation of the Committee in the Title III Cases.

\* \* \*

35. Based on the foregoing and the Prior Declarations, and except as provided herein and in the Prior Declarations, to the best of my knowledge, information, and belief formed after reasonable inquiry, Paul Hastings does not represent or hold any interest adverse to the Committee with respect to the matters on which the Committee has employed Paul Hastings, and Paul Hastings is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code (made applicable by PROMESA section 301(a)) in that Paul Hastings:

(a) is not a creditor, equity security holder, or insider of the Debtors;

(b) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtors; and

(c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

36. Despite the efforts described above to identify and disclose Paul Hastings' connections with parties in interest in the Title III Cases, Paul Hastings is unable to state with certainty that every client representation or other connection has been disclosed. In this regard, if Paul Hastings discovers additional information that requires disclosure, Paul Hastings will file a supplemental disclosure with the Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of February 2022

                                                   */s/ Luc A. Despins*
                                                   Luc A. Despins