## **Exhibit 2**

**Proof of Claim**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL
DISTRITO DE PUERTO RICO

| Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación). | | |
|---|---|---|
| ☐ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☒ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

RECEIVED

MAY 2 4 2018

PRIME CLERK LLC

## Modified Official Form 410 / Formulario Oficial 410 Modificado
# Proof of Claim / Evidencia de reclamación
04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.**

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

**Fill in all the information about the claim as of the Petition Date.**

**Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

| | |
|---|---|
| 1. Who is the current creditor?<br><br>¿Quién es el acreedor actual? | Assured Guaranty Municipal Corp.<br>Name of the current creditor (the person or entity to be paid for this claim)<br>Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)<br><br>Other names the creditor used with the debtor    See attached Annex to Proof of Claim.<br>Otros nombres que el acreedor usó con el deudor |

| 2. | Has this claim been acquired from someone else?<br><br>¿Esta reclamación se ha adquirido de otra persona? | ☒ No / No<br>☐ Yes. From whom?<br>     Sí. ¿De quién? _____ |
|----|----|----|

**3.** Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

¿A dónde deberían enviarse las notificaciones al acreedor?

Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g

| Where should notices to the creditor be sent?<br>¿A dónde deberían enviarse las notificaciones al acreedor? | Where should payments to the creditor be sent? (if different)<br>¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente) |
|----|----|
| <u>See</u> Annex to Proof of Claim<br>Assured Guaranty Municipal Corp.<br>Attn:  Terence Workman<br>Name / Nombre | <u>See</u> Annex to Proof of Claim<br>Assured Guaranty Municipal Corp.<br>Attn:  Terence Workman<br>Name / Nombre |
| 1633 Broadway<br>Number / Número       Street / Calle | 1633 Broadway<br>Number / Número       Street / Calle |
| New York       NY       10019<br>City / Ciudad   State / Estado   ZIP Code / Código postal | New York       NY       10019<br>City / Ciudad   State / Estado   ZIP Code / Código postal |
| (212) 408-6053<br>Contact phone / Teléfono de contacto | (212) 408-6053<br>Contact phone / Teléfono de contacto |
| tworkman@agltd.com<br>Contact email / Correo electrónico de contacto | tworkman@agltd.com<br>Contact email / Correo electrónico de contacto |

| 4. | Does this claim amend one already filed?<br><br>¿Esta reclamación es una enmienda de otra presentada anteriormente? | ☒ No / No<br>☐ Yes.  Claim number on court claims registry (if known)<br>     Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>     Filed on / Presentada el _____ (MM /DD/YYYY) / (DD/MM/AAAA) |
|----|----|----|

| 5. | Do you know if anyone else has filed a proof of claim for this claim?<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ☒ No / No<br>☐ Yes. Who made the earlier filing?<br>     Sí.  ¿Quién hizo la reclamación anterior?_____ |
|----|----|----|

**Part 2 / Parte 2:**    **Give Information About the Claim as of the Petition Date**

**Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.**

| 6. | Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ☒ No / No<br>☐ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/.)<br><br>_____ |
|----|----|----|

| 7. | Do you supply goods and / or services to the government?<br><br>¿Proporciona bienes y / o servicios al gobierno? | ☒ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |
|----|----|----|

| | |
|---|---|
| **8. How much is the claim?**<br><br>**¿Cuál es el importe de la reclamación?** | $ <u>See Annex</u> . **Does this amount include interest or other charges?**<br>**¿Este importe incluye intereses u otros cargos?**<br>☐ No / No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |
| **9. What is the basis of the claim?**<br><br>**¿Cuál es el fundamento de la reclamación?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br><u>See attached Annex to Proof of Claim.</u> |
| **10. Is all or part of the claim secured?**<br><br>**¿La reclamación está garantizada de manera total o parcial?** | ☐ No / No<br>☒ Yes. The claim is secured by a lien on property.<br>Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>**Nature of property / Naturaleza del bien:**<br>☐ Motor vehicle / Vehículos<br><br>☒ Other. Describe:<br>Otro. Describir: <u>See Annex to Proof of Claim.</u><br><br>**Basis for perfection / Fundamento de la realización de pasos adicionales:** _____<br><u>See Annex to Proof of Claim.</u><br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest(for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.)<br><br>**Value of property / Valor del bien:** $<u>See Annex to Proof of Claim.</u><br><br>**Amount of the claim that is secured /**<br>**Importe de la reclamación que está garantizado:** $ <u>See Annex to Proof of Claim.</u><br><br>**Amount of the claim that is unsecured /**<br>**Importe de la reclamación que no está garantizado:** $ <u>See Annex to Proof of</u> Claim.<br>(The sum of the secured and unsecured amounts should match the amount in line 7.)<br>(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>**Amount necessary to cure any default as of the Petition Date /**<br>**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :** $_____<br><u>See Annex to Proof of Claim.</u><br><br>**Annual Interest Rate** (on the Petition Date) (See Annex to Proof of Claim)<br>**Tasa de interés anual** (cuando se presentó el caso) _____ %<br>☐ Fixed / Fija<br>☐ Variable / Variable |
| **11. Is this claim based on a lease?**<br><br>**¿Esta reclamación está basada en un arrendamiento?** | ☒ No / No<br><br>☐ Yes. Amount necessary to cure any default as of the Petition Date.<br>Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso $ _____ |

| 12. **Is this claim subject to a right of setoff?**<br><br>¿La reclamación está sujeta a un derecho de compensación? | ☐ No / No<br>☒ Yes. Identify the property /<br>Sí. Identifique el bien: _____ **See Annex** _____ |
|---|---|

| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.? | ☒ No / No<br>☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.    $_____<br><br>Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. |
|---|---|

## Part 3 / Parte 3:

### Sign Below / Firmar a continuación

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

Check the appropriate box / Marque la casilla correspondiente:

☐ I am the creditor. / Soy el acreedor.

☒ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el ___05/24/2018___ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma _____Holly Horn_____

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

Name    **Holly Horn**
         First name / Primer nombre    Middle name / Segundo nombre    Last name / Apellido

Title / Cargo    **Chief Surveillance Officer – Public Finance**

Company / Compañía **Assured Guaranty Corp./Assured Guaranty Municipal Corp.**
         Identify the corporate servicer as the company if the authorized agent is a servicer.
         Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección **1633 Broadway**
         Number / Número    Street / Calle

         **New York**                                        **NY**          **10019**
         City / Ciudad                                      State / Estado    ZIP Code / Código postal

Contact phone / Teléfono de contacto __212.339-3526__    Email / Correo electrónico _hhorn@agltd.com_

## ANNEX TO PROOF OF CLAIM OF ASSURED GUARANTY MUNICIPAL CORP. FOR PREPA BOND CLAIMS

This is an Annex to the proof of claim (the "Proof of Claim") filed by Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance Inc. ("AGM" or "Claimant"). AGM is the holder of certain claims (collectively, the "Claims") against the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), as described on the prefixed Proof of Claim to which this Annex relates and as set forth in further detail herein.

Nothing herein shall constitute a waiver of any of AGM's rights or defenses against the Debtor, the Financial Oversight and Management Board for Puerto Rico ("FOMB"), the Commonwealth of Puerto Rico (the "Commonwealth"), PREPA, or any other party in any litigation arising from or relating to AGM's Claims.

THIS ANNEX CONSTITUTES A PART OF THE PROOF OF CLAIM AND IS INCORPORATED THEREIN BY REFERENCE.   Copies of certain supporting documents relating to the Claims are attached hereto and are incorporated by reference to the Proof of Claim.  Because the documents are voluminous, the Claimant has not attached documents that are in the possession of the Debtor or that are otherwise publicly available.  Claimant will furnish the Debtor with copies of any additional pertinent documentation upon request or as otherwise required by order of the United States District Court for the District of Puerto Rico (the "Title III Court").   The descriptions provided herein are summaries of the underlying Claims and documentation supporting such Claims, and the failure to reference any specific provision within such documentation shall not constitute a waiver by Claimant as to the contents therein.[1]

1.    Background and Basis for Claims:  On July 2, 2017 (the "Petition Date"), FOMB, as representative for the Debtor, filed a voluntary petition for relief under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), in the Title III Court. The Debtor's Title III case number is 17-04780.  The Debtor is obligated to Claimant for the Claims described herein, which arise, without limitation, under the transaction documents described herein, under other applicable law, or in equity.[2]

A.  The Trust Agreement

The Claims arise from or are related to transactions with the Debtor pursuant to that certain Trust Agreement, dated January 1, 1974 (as amended and supplemented, the "Trust Agreement"), by and among  the Debtor and U.S. Bank National Association, as successor trustee (the "Trustee").[3]   Under the Trust Agreement, the Debtor issued power revenue bonds

---

[1] The terms and language of each of the Policies, Insurance Agreements, and certain other documentation are virtually identical and thus reference to each individual document is unnecessary.

[2] Claimant hereby incorporates by reference proofs of claim that it or its affiliates have filed in the Commonwealth of Puerto Rico's Title III case.

[3] Unless otherwise noted, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Trust Agreement (as defined herein).

(the "Bonds"), of which, as of the Petition Date,  approximately $8.3 billion of Bonds remained outstanding.   AGM insures under primary and secondary market policies approximately $733,250,000 of aggregate principal amount on certain Bonds.  AGM also directly owns approximately $38,700,577 of the Bonds, separate from the Bonds that AGM has insured. Interest on the Bonds accrues at rates set forth within the form of Bond, as well as pursuant to certain bond purchase agreements.

Under the Trust Agreement, PREPA pledged the revenues of its system (the "Revenues") to secure the timely payment of principal and interest on the Bonds.[4] Specifically, the Trust Agreement provides:

> in order to secure the payment of all bonds at any time issued and outstanding hereunder...and in order to secure the performance and observance of all covenants, agreements, and conditions... [PREPA] has pledged and does hereby pledge to the Trustee the revenues of the System...and other moneys to the extent provided in this Agreement as security for the payment of the bonds and the interest and redemption premium, if any, thereon and as security for the satisfaction of any other obligation assumed by it in connection with such bonds[.]

Trust Agreement, at p. 11-12.  Section 701 of the Trust Agreement provides that the Bonds are "payable solely from the Revenues and said Revenues are hereby pledged to the payment thereof."  Id. § 701.  The Bonds are thus secured by a pledge of and lien on PREPA's revenues, as well as certain accounts, covenants, and other intangibles pledged therein to secure the Bonds. The Revenues, as well as monies held in accounts established under the Trust Agreement, are special revenues, as such term is defined in section 902(2) of the Bankruptcy Code.

The pledge of Revenues, intangibles, funds, and accounts is evidenced in various UCC financing statements, which provide that the collateral securing the Bonds consists of, among other things, the "Revenues of the System," as well as certain accounts pledged under the Trust Agreement.  Certain of these financing statements were signed by officers of PREPA.[5]  In addition, the Debtor has repeatedly listed its binding obligation to maintain rates as described hereinbelow as "Security" in official statements filed by the Debtor with the Municipal Securities Rulemaking Board.

The Trust Agreement provides that PREPA shall "fix, charge and collect reasonable rates and charges" and  "adjust such rates and charges so that Revenues will at all times be sufficient" to pay the "Current Expenses of the System" and cover 120% of "the aggregate Principal and Interest Requirements for the next fiscal year" on account of the Bonds.  This portion of the collateral package is supported through power expressly granted to PREPA under section 6(*l*) of Act No. 83-1941 of the Legislative Assembly of Puerto Rico, P.R. Laws Ann. tit. 22 §§ 191, *et seq.* (the "Enabling Act"), which grants PREPA:

---

[4] The term "Revenues" is broadly defined in the Trust Agreement to include "all moneys received by the Authority in connection with or as a result of its ownership or operation of the System," including without limitation income derived from the sale of electricity, insurance proceeds, and investments.   Trust Agreement § 101.

[5] Copies of such UCC financing statements are publicly available with the Puerto Rico Department of State, and are incorporated by reference herein.

all rights and powers necessary and convenient to," among other things, "determine, fix, alter, charge, and collect reasonable and just rates, fees, rents, and other charges subject to the [Energy] Commission's approval . . . for electric power services . . . that are sufficient . . . for the payment of the principal of and interest on its bonds, and for fulfilling the terms and provisions of such agreements entered into with or for the benefit of purchasers or holders of any bonds of the Authority and other creditors.

22 L.P.R.A. § 196(*l*), *amended by* Act No. 4-2016 § 8. Puerto Rico law further provides that the regulatory authority governing PREPA, the Puerto Rico Energy Commission, shall approve a rate that "(i) is sufficient to guarantee the payment of principal, interest, reserves, and all other requirements of bonds . . . [and] (ii) complies with the terms and provisions of the agreements entered into with or in benefit of buyers or holders of any bonds[.]" Enabling Act § 6A(c), *amended by* Act No. 4-2016 § 9; Enabling Act § 6.25A(b), *amended by* Act No. 4-2016 § 18.

Consequently, pursuant to Puerto Rico law and the Trust Agreement, rates must be sufficient at all times for PREPA to pay its Bonds and to pay Current Expenses. AGM's Claims thus arise not only from the Trust Agreement, but also from Puerto Rico law. Any breaches or unlawful takings of those obligations in contravention of applicable law, and without limitation, Article I, Section 10, and the Fifth Amendment to the United States Constitution of the United States and Article II, sections 7 and 9 of the Puerto Rico Constitution further serve as the basis for Claims against the Debtor.

In addition to the pledge of Revenues, the Trust Agreement pledged and granted a lien on certain accounts created thereunder, including without limitation, the Sinking Fund and Construction Fund. Id. §§ 401, 507, 513 Monies in these accounts are subject to certain investment requirements, and consist of proceeds of the Bonds.

## B. The Insurance Agreements and Policies

The Claims also arise from or are related to transactions with the Debtor pursuant to certain primary market and secondary market policies by and among Claimant[6] and the Debtor (the "Policies"), pursuant to which Claimant guaranteed scheduled principal and interest payments on Bonds specifically identified therein. A schedule of the Bonds insured by Claimant (the "Insured Bonds") are attached hereto as Exhibit 1. The Policies provide that upon Claimant's payment of the Insured Bonds, Claimant "shall become the owner of the Bond, any appurtenant coupon to the Bonds and right to receipt of principal of or interest on the Bond and shall be fully subrogated to the rights" of the holders of the Insured Bonds. Upon payment, Claimant became fully subrogated to the rights of the holders of the Insured Bonds "to receive payments under the Bond." Payment by Claimant does not discharge the Debtor of its liability and obligations with respect to the Insured Bonds. Rather, upon payment, Claimant effectively became the owner of the Insured Bonds.[7]

---

[6] Certain insurance policies were issued by Financial Security Assurance Inc., which was the predecessor entity to AGM. AGM is now the insurer of the Bonds issued under those policies.

[7] As with the primary market policies, under the secondary market policies, AGM guaranteed Scheduled Payments (as defined in such agreements). See, e.g., Policy for Series TT Power Revenue Bonds, Policy

The Claims also arise from various insurance agreements by and among Claimant, the Trustee, and the Debtor (the "Insurance Agreements"), which govern the nature of the insurance provided by Claimant, the rights and remedies of Claimant, and the obligations of the Debtor. These Insurance Agreements were entered into concurrently with the execution of the respective Policies. Under the Insurance Agreements, the Debtor and the Trustee agreed that Claimant "shall be deemed to be the sole owner of the Insured Bonds." Insurance Agreement § 1(e). The Debtor and the Trustee also agreed that Claimant "shall be recognized as and have all rights available to it as a third party beneficiary under the Trust Agreement in connection with the Insured Bonds." Id. § 1(n). Finally, the Debtor agreed to "pay or reimburse AGM for any and all charges, fees, costs and expenses" which AGM may reasonably pay or incur. Id. § 1(r)(J),(K).

On or about July 3, 2017 and on each payment date thereafter, the Trustee delivered notices of claims (the "Notices"), pursuant to which the Trustee made claims under the Policies for principal and interest then due on the Bonds. Copies of the Notices are attached hereto as Exhibit 2. Notices were delivered to AGM for scheduled payments on the Bonds due on July 3, 2017, October 2, 2017, January 3, 2018, and April 2, 2018. Specifically, AGM has made the following payments under its Policies:

i.  On or about July 3, 2017, the Trustee delivered notices of claims under Policies for Insured Bonds due and payable on such date. AGM paid approximately $11,911,133.25 on account of such Insured Bonds.

ii.  On or about October 2, 2017, the Trustee delivered notices of claims under Policies for Insured Bonds due and payable on such date. AGM paid approximately $876,376.43 on account of such Insured Bonds.

iii.  On or about January 3, 2018, the Trustee delivered notices of claims under Policies for Insured Bonds due and payable on such date. AGM paid approximately $12,000,087.18 on such date on account of such Insured Bonds.

iv.  On April 2, 2018, the Trustee delivered notices of claims under Policies for Insured Bonds due and payable on such date. AGM paid approximately $1,032,196.92 in interest due on such Insured Bonds.

In addition, Assured insured the Bonds through certain secondary market policies and has made Scheduled Payments under such policies from July 3, 2017 through the date hereof. As of the date hereof, Assured has paid approximately $4,195,840.00 on account of the Bonds subject to such secondary market policies.

As a result of the payment of the Bonds, AGM is subrogated to the rights of the holders of the Insured Bonds.

---

No. 30287T-N. These policies generally cover uninsured bonds that are deposited with a custodian (U.S. Bank), and are paid either by the issuer or, when the issuer fails to pay, by a draw on the secondary market policy. Under such secondary market policies, upon disbursement of such Scheduled Payments by AGM, AGM shall be "subrogated to the rights of each Holder to receive payments under the Obligations." Id.

Any failure by the Debtor to comply with its obligations under the Insurance Agreements, such as its failure to place Time Deposits "insured by the Federal Deposit Insurance Corporation," constitutes a breach of the Insurance Agreements and give rise to Claims of AGM against the Debtor. Thus, any time deposit or any other deposit of PREPA's Revenues with the Government Development Bank—which is not insured by the Federal Deposit Insurance Corporation—is a breach of the Insurance Agreements. Any breach of the Insurance Agreements or the Trust Agreement, breaches of the Debtor's disclosure requirements under applicable securities regulations and laws, the violation of any law, and the making of any untrue statement in the Debtor's official gives further entitlement to AGM to receive reimbursement for "all charges, fees, costs, claims, losses, liabilities (including penalties), judgments, demands, damages, and expenses which [AGM]…may reasonably pay or incur," including for any professionals' fees.

### C.  The Restructuring Support Agreement

Under that certain Restructuring Support Agreement, dated March 14, 2016 (as amended and supplemented from time to time, the "RSA"), PREPA agreed to reimburse fees and expenses to AGM and other supporting creditors. See RSA § 9(l). Specifically, the RSA required each supporting party, including AGM, to submit a written certification to PREPA "of the aggregate amount of fees incurred by [AGM]…through the Supplement Effective Date relating to work performed in connection with PREPA's restructuring. . . . " Id. Upon receipt of such written certification, "PREPA shall pay, within five (5) business days of its receipt thereof, the amount of Reimbursable Fees and Expenses so certified."

AGM, together with its affiliate Assured Guaranty Corp., provided PREPA and its legal advisors with multiple written certifications for reimbursement of professional fees pursuant section 9(l) of the RSA. In the aggregate, the amount of such reimbursable fees and expenses totaled no less than $1,501,872.80. PREPA and its advisors acknowledged receipt of these written certifications and represented that such requests were being processed. However, PREPA did not reimburse these expenses despite its unambiguous obligation to do so within five business days of the receipt of the written certification. As such, AGM's Claims also include the right to reimbursement of fees and expenses under the RSA.

2.  __Total Amount of Claims__:  Claimant's secured Claims total no less than $801,966,210.78, including (i) Claims of no less than $733,250,000 on account of amounts outstanding on Insured Bonds as of the Petition Date, and $38,700,577 on account of Bonds Claimant owns directly, and (ii) Claims of no less than $30,015,633.78 on account of primary and secondary market claims paid by Claimant under its insurance policies insuring the Insured Bonds. Claimant's Claims also include interest accruing after the Petition Date and any contingent unliquidated claims not presently ascertainable. In addition, Claimant's Claims include all costs of enforcement, including, without limitation, professionals' fees arising under sections 1(r)(J) and (K) of the Insurance Agreements. Claimant's Claims also include rights to reimbursement of professional fees and expenses under the RSA, which total no less than $1,501,872.80.

The Bonds accrued and continues to accrue interest at the rates specified within the Bonds and, if applicable, certain bond purchase agreements. Claimant reserves all of its rights to assert claims for interest, fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement, or contribution, and other amounts, including,

without limitation, legal fees, and expenses (including, without limitation, those incurred in connection with the preparation, filing, and prosecution of the Proof of Claim), that exist or arise as of or after the date of the filing of the Proof of Claim, whether prior to, on, or subsequent to the Petition Date, in each case to the extent or as may be permitted, provided, or contemplated in the supporting documentation and under applicable law.

In addition, Claimant has unsecured Claims totaling no less than $801,966,210.78, including Claims (i) arising under the Takings Clauses and (ii) arising under Section 407 of PROMESA.

3.    <u>Secured Claim</u>:  The Claims of AGM are secured by first priority liens on and security interests in the Revenues of PREPA's System, certain intangibles, and certain accounts as set forth in the Trust Agreement.  Such Revenues are required by law and the Trust Agreement to be established at rates sufficient to cover Current Expenses and principal and interest requirements on the Bonds.

The Claims of AGM for amounts due and owing as of the Petition Date are unsecured Claims only to the extent of any deficiency, if any, following any exercise by Claimant of any rights of setoff that they may have against the Debtors.  Claimant hereby asserts any and all rights of setoff it may have in respect of the Claims, including, without limitation, the right to setoff its Claims against any claims that the Debtor (or any successor, assignee, purchaser, or person claiming through the Debtor) may assert against it.

4.    <u>Credits</u>:  The amount of all payments on the Claims, if any, has been credited and deducted for purposes of making the Proof of Claim.

5.    <u>Reservation of Rights</u>:  In filing this Proof of Claim, Claimant expressly reserves all rights and causes of action, including, without limitation, contingent or unliquidated rights that it may have against the Debtor.  This description and classification of Claims by Claimant is not a concession or admission as to the correct characterization, valuation, or treatment of any such Claims or a waiver of any rights of Claimant.

In addition to any and all other rights expressly reserved herein, Claimant also expressly reserves all rights to amend, modify, or supplement this Proof of Claim in any respect, including, without limitation, with respect to the filing of an amended proof of claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein, or to file additional proofs of claim for additional claims, including, without limitation, claims for interest, fees, and related expenses (including, without limitation, attorneys' fees) that it has not ascertained at this time.

This Proof of Claim is filed without prejudice to any and all of the rights of Claimant to assert that any and all Claims asserted in this Proof of Claim, including any portions thereof, are (i) entitled to administrative priority or (ii) not subject to treatment or discharge under a plan of adjustment, including (a) on the grounds that such Claims constitute postpetition claims and (b) on the grounds that treatment or discharge of such Claims under a plan of adjustment would be contrary to PROMESA and/or unconstitutional.  Further, this Proof of Claim is filed by Claimant without prejudice to its right to request payment of any additional administrative expense claims that it may have against the Debtor, including, without limitation, administrative expenses not

described in this Proof of Claim, and Claimant reserves the right to request payment of such administrative expenses at a later date or when required by the Title III Court.

This Proof of Claim is filed without prejudice to the filing by Claimant or its affiliates of additional proofs of claim or requests for payment with respect to any other indebtedness, liability or obligation of the Debtor. Claimant does not, by this Claim or any amendment or other action, waive any rights with respect to any scheduled claim.

By filing this Proof of Claim, Claimant does not waive any rights under Title III of PROMESA, or chapter 5 or any other provision of the Bankruptcy Code made applicable by virtue of section 301(a) of PROMESA, or under any other law or constitution of the United States or the Commonwealth of Puerto Rico.

In executing and filing this claim, Claimant does not submit to the jurisdiction of the Title III Court for any purpose other than with respect to this claim against the Debtor and does not waive or release: (a) any rights or remedies against any other person or entity that may be liable for all or part of the Claims set forth herein, whether an affiliate or subsidiary of the Debtor, an assignee, successor, purchaser, guarantor or otherwise, (b) any obligation owed to them, or any right to any security that may be determined to be held by one of them or for their benefit, (c) any past, present or future defaults (or events of default) by the Debtor or others, or (d) any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor. The filing of this Proof of Claim is not, and shall not be construed as, an election of remedies or limitation of rights or remedies.

Nothing contained in this Proof of Claim nor any subsequent appearance, pleading, claim or suit is intended to be a waiver or release of: (i) the right of Claimant to have final orders in non-core matters entered only after de novo review by a court of competent jurisdiction (other than the Title III Court); (ii) the right of Claimant to a jury trial in any proceeding so triable herein or, in any case, any controversy or proceeding related hereto; (iii) the right of Claimant to have any unliquidated portions of its Claim determined by applicable state or Commonwealth courts; or (iv) any other rights, claims, actions, defenses, setoffs or recoupments to which Claimant is or may be entitled under agreements, documents or instruments, in law or equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved.

7.    Notices:  All notices with respect to the Claims should be sent to:

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn:   Kevin Lyons, Esq.
          Terence Workman, Esq.
          Daniel Weinberg
Email:  klyons@agltd.com
          tworkman@agltd.com
          dweinberg@agltd.com
Phone: 212.339.3546 (Kevin Lyons)
          212.408.6053 (Terence Workman)

212.893.2763    (Daniel Weinberg)

with copies to:

Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Attn:   Ivan Loncar, Esq.
        Thomas J. Curtin, Esq.
        Casey Servais, Esq.
Phone: 212-504-6000
Fax:    212-504-6666
Email: ivan.loncar@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

Dated:  May 24, 2018

## EXHIBIT 1

**Description of Insured Bonds Through Primary Market Policies**

| Bond Series | CUSIP | Maturity Date | Policy Number | Principal Amount of Bonds Outstanding |
|---|---|---|---|---|
| Series DDD | 74526QZC9 | 07/01/23 | 212681-N | $25,840,000 |
| Series DDD | 74526QZP0 | 07/01/23 | 212681-N | $7,725,000 |
| Series DDD | 74526QZJ4 | 07/01/24 | 212681-N | $25,470,000 |
| Series RR | 74526QCZ3 | 07/01/20 | 204520-N | $21,310,000 |
| Series SS | 74526QEK4 | 07/01/19 | 204520-N | $23,040,000 |
| Series SS | 74526QEW8 | 07/01/30 | 204520-N | $32,900,000 |
| Series UU | 74526QLN0 | 07/01/20 | 208491-N | $25,870,000 |
| Series UU | 74526QLQ3 | 07/01/21 | 208491-N | $27,170,000 |
| Series UU | 74526QLR1 | 07/01/22 | 208491-N | $28,525,000 |
| Series UU | 74526QLS9 | 07/01/23 | 208491-N | $52,820,000 |
| Series UU | 74526QLT7 | 07/01/23 | 208491-N | $10,000,000 |
| Series UU | 74526QLU4 | 07/01/24 | 208491-N | $65,865,000 |
| Series UU | 74526QLY6 | 07/01/29 | 208491-N | $252,875,000 |
| Series VV | 74526QPL0 | 07/01/27 | 208593-N | $31,785,000 |
| Series VV | 74526QPP1 | 07/01/31 | 208593-N | $76,205,000 |
| TOTAL | | | | $707,400,000 |

### Description of Insured Bonds Through Secondary Market Policies

| Bond Series | CUSIP | Maturity Date | Policy Number | Principal Amount of Bonds Outstanding |
|---|---|---|---|---|
| Series TT | 74526QKK7 / 74526QNE8 | 07/01/17 | 30287T1 | $1,000,000 |
| Series TT | 74526QKK7 / 74526QNE8 | 07/01/17 | 30287T2 | $1,000,000 |
| Series TT | 74526QKK7 / 74526QNE8 | 07/01/17 | 30287T3 | $1,000,000 |
| Series TT | 74526QKM3 / 74526QNF5 | 07/01/19 | 30287U1 | $2,250,000 |
| Series TT | 74526QKM3 / 74526QNF5 | 07/01/19 | 30287U2 | $1,450,000 |
| Series TT | 74526QKM3 / 74526QNF5 | 07/01/19 | 30287U3 | $1,195,000 |
| Series TT | 74526QKL5 / 74526QNR9 | 07/01/18 | 30287W1 | $2,000,000 |
| Series TT | 74526QKL5 / 74526QNR9 | 07/01/18 | 30287W2 | $1,725,000 |
| Series TT | 74526QNS7 | 07/01/26 | 30287X1 | $2,430,000 |
| Series TT | 74526QNT5 | 07/01/27 | 30287Y1 | $5,000,000 |
| Series TT | 74526QNT5 | 07/01/27 | 30287Y2 | $3,300,000 |
| Series VV | 74526QPU0 | 07/01/20 | 30287Z1 | $2,500,000 |
| Series VV | 74526QPU0 | 07/01/20 | 30287Z2 | $1,000,000 |
| TOTAL | | | | $25,850,000 |

**Description of Bonds Where AGM is Beneficial Holder**

| Bond Series | CUSIP | Maturity Date | Principal Amount of Bonds Outstanding |
|---|---|---|---|
| Series 2016A | 74526QB76 | 07/01/19 | $6,432,789 |
| Series 2016B | 74526QC34 | 07/01/19 | $6,432,788 |
| Series 2016D-1 | 74526QD25 | 01/01/20 | $12,917,500 |
| Series 2016D-3 | 74526QD41 | 07/01/20 | $12,917,500 |
| TOTAL | | | $38,700,577 |

**EXHIBIT 2**

## NOTICE OF CLAIM AND CERTIFICATE

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley                          Attention: Daniel Weinberg
E-Mail: bjbradley@agltd.com                      E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), formerly known as Financial Security Assurance Inc., with reference to (1) Municipal Bond Insurance Policy No. 204520-N dated April 4, 2005 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of April 4, 2005, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)      The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $1,931,250.00 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on July 3, 2017 (the "**Payment Date**").

(iii)    The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to

the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due July 3, 2017, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy.  For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)     The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.  For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)     AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
U.S. BANK N.A.

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 29th day of June, 2017.

U.S. Bank National Association, as Trustee
By _____
Name Julie J. Becker
Title  Vice President

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____.
Confirmation Number _____

<u>Appendix I</u>

Puerto Rico Electric Power Authority Power Revenue Bonds, Series RR, maturing on July 1, 2020 (CUSIP No.: 74526QCZ3)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series SS, maturing on July 1, 2019 (CUSIP No.: 74526QEK4)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series SS, maturing on July 1, 2030 (CUSIP No.: 74526QEW8)

<u>NOTICE OF CLAIM AND CERTIFICATE</u>

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley
E-Mail: bjbradley@agltd.com

Attention: Daniel Weinberg
E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), formerly known as Financial Security Assurance Inc., with reference to (1) Municipal Bond Insurance Policy No. 208491-N dated May 3, 2007 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of May 3, 2007, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)     The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $6,018,843.25 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on July 3, 2017 (the "**Payment Date**").

(iii)     The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to

the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due July 3, 2017, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy.  For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds.  The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.  For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)   AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
U.S. BANK N.A.

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 29th day of June, 2017.

U.S. Bank National Association, as Trustee
By
Name  Julie L. Becker
Title  Vice President

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

## Appendix I

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2020 (CUSIP No.: 74526QLN0)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2021 (CUSIP No.: 74526QLQ3)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2022 (CUSIP No.: 74526QLR1)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2023 (CUSIP No.: 74526QLS9)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2024 (CUSIP No.: 74526QLU4)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2029 (CUSIP No.: 74526QLY6)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2023 (CUSIP No.: 74526QLT7)

<u>**NOTICE OF CLAIM AND CERTIFICATE**</u>

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley                                 Attention: Daniel Weinberg
E-Mail: bjbradley@agltd.com                  E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

    The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on <u>Appendix I</u> hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), formerly known as Financial Security Assurance Inc., with reference to (1) Municipal Bond Insurance Policy No. 208593-N dated May 30, 2007 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of May 30, 2007, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

    (i)    The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

    (ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $2,834,737.50 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on July 3, 2017 (the "**Payment Date**").

    (iii)    The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

    (iv)    The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to

the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due July 3, 2017, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy.  For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an **"Insolvency Proceeding"**), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a **"Preference Claim"**), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.  For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)   AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
**U.S. BANK N.A.**

████████████████████████

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 29th day of June, 2017.

U.S. Bank National Association, as Trustee
By _____
Name  Julie J. Becker
Title  Vice President

----

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____  By _____
Confirmation Number _____

3

<u>Appendix I</u>

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series VV, maturing on July 1, 2027 (CUSIP No.: 74526QPL0)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series VV, maturing on July 1, 2031 (CUSIP No.: 74526QPP1)

## NOTICE OF CLAIM AND CERTIFICATE

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley
E-Mail: bjbradley@agltd.com

Attention: Daniel Weinberg
E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), with reference to (1) Municipal Bond Insurance Policy No. 212681-N dated October 14, 2010 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of October 14, 2010, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)     The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $1,126,302.50 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on July 3, 2017 (the "**Payment Date**").

(iii)     The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to

the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)      Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due July 3, 2017, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy.  For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments.  Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds.  The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)     The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.  For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)    AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
U.S. BANK N.A.

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 29th day of June, 2017.

U.S. Bank National Association, as Trustee
By _____
Name Julie J. Becker
Title  Vice President

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

<u>Appendix I</u>

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series DDD, maturing on July 1, 2023 (CUSIP No.: 74526QZP0)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series DDD, maturing on July 1, 2023 (CUSIP No.: 74526QZC9)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series DDD, maturing on July 1, 2024 (CUSIP No.: 74526QZJ4)

<u>**NOTICE OF CLAIM AND CERTIFICATE**</u>

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley
E-Mail: bjbradley@agltd.com

Attention: Daniel Weinberg
E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on <u>Appendix I</u> hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), formerly known as Financial Security Assurance Inc., with reference to (1) Municipal Bond Insurance Policy No. 208491-N dated May 3, 2007 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of May 3, 2007, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)     The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $<u>876,376.43</u> (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payment**") Due for Payment on the Bonds on <u>October 2, 2017</u> (the "**Payment Date**").

(iii)   The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payment.

(iv)    The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to

the payment of Scheduled Payment on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payment due October 2, 2017, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payment but only to the extent of the payment made by AGM under the Policy. For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payment. Payment to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive the Scheduled Payment in respect of the Bonds. The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding. For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)   AGM shall, to the extent it makes any Scheduled Payment on the Bonds under the Policy, become subrogated to the rights of the recipients of such payment in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
**U.S. BANK N.A.**

Ref: PREPA (phone: 651-466-6089; 651-466-5869)

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 28th day of September, 2017.

U.S. Bank National Association, as Trustee

By _____

Name: Julie J. Becker

Title    Vice President

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

<u>Appendix I</u>

**Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2029 (CUSIP No.: 74526QLY6)**

<u>NOTICE OF CLAIM AND CERTIFICATE</u>

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley
E-Mail: bjbradley@agltd.com

Attention: Daniel Weinberg
E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on <u>Appendix I</u> hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), with reference to (1) Municipal Bond Insurance Policy No. 212681-N dated October 14, 2010 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of October 14, 2010, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)      The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $1,126,302.50 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on January 2, 2018 (the "**Payment Date**").

(iii)    The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such

funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due January 2, 2018, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy. For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding. For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)   AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
**U.S. BANK N.A.**

██████████████

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

U.S. Bank National Association, as Trustee

By _____
Name: Julie J. Becker
Title:  Vice President

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____   By _____
Confirmation Number _____

3

<u>Appendix I</u>

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series DDD, maturing on July 1, 2023 (CUSIP No.: 74526QZP0)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series DDD, maturing on July 1, 2023 (CUSIP No.: 74526QZC9)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series DDD, maturing on July 1, 2024 (CUSIP No.: 74526QZJ4)

## NOTICE OF CLAIM AND CERTIFICATE

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley
E-Mail: bjbradley@agltd.com

Attention: Daniel Weinberg
E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), formerly known as Financial Security Assurance Inc., with reference to (1) Municipal Bond Insurance Policy No. 204520-N dated April 4, 2005 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of April 4, 2005, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)    The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $1,931,250.00 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on January 2, 2018 (the "**Payment Date**").

(iii)    The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)    The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held

by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due January 2, 2018, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy.  For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds.  The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)     The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.  For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)     AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

2

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
**U.S. BANK N.A.**

███████████████████████

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

U.S. Bank National Association, as Trustee

By _____
Name: Julie J. Becker
Title: Vice President

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

Appendix I

Puerto Rico Electric Power Authority Power Revenue Bonds, Series RR, maturing on July 1, 2020 (CUSIP No.: 74526QCZ3)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series SS, maturing on July 1, 2019 (CUSIP No.: 74526QEK4)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series SS, maturing on July 1, 2030 (CUSIP No.: 74526QEW8)

## NOTICE OF CLAIM AND CERTIFICATE

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley
E-Mail: bjbradley@agltd.com

Attention: Daniel Weinberg
E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), formerly known as Financial Security Assurance Inc., with reference to (1) Municipal Bond Insurance Policy No. 208491-N dated May 3, 2007 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of May 3, 2007, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)     The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $6,107,797.18 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on January 2, 2018 (the "**Payment Date**").

(iii)   The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)    The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such

funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)      Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due January 2, 2018, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy. For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)     The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an **"Insolvency Proceeding"**), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a **"Preference Claim"**), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding. For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)    AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
**U.S. BANK N.A.**

██████████████████████

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

U.S. Bank National Association, as Trustee

By _____
Name: Julie J. Becker
Title:  Vice President

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

## Appendix I

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2020 (CUSIP No.: 74526QLN0)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2021 (CUSIP No.: 74526QLQ3)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2022 (CUSIP No.: 74526QLR1)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2023 (CUSIP No.: 74526QLS9)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2023 (CUSIP No.: 74526QLT7)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2024 (CUSIP No.: 74526QLU4)

Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2029 (CUSIP No.: 74526QLY6)

## NOTICE OF CLAIM AND CERTIFICATE

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley
E-Mail: bjbradley@agltd.com

Attention: Daniel Weinberg
E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for the bonds listed on Appendix I hereto (collectively, the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), formerly known as Financial Security Assurance Inc., with reference to (1) Municipal Bond Insurance Policy No. 208593-N dated May 30, 2007 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of May 30, 2007, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)  The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)  The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $2,834,737.50 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on January 2, 2018 (the "**Payment Date**").

(iii)  The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)  The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such

funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due January 2, 2018, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy. For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)     The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "**Insolvency Proceeding**"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "**Preference Claim**"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding. For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)     AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii) Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
**U.S. BANK N.A.**

███████████████████████

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

U.S. Bank National Association, as Trustee

By _____
Name: Julie L. Becker
Title:  Vice President

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3

<u>Appendix I</u>

**Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series VV, maturing on July 1, 2027 (CUSIP No.: 74526QPL0)**

**Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series VV, maturing on July 1, 2031 (CUSIP No.: 74526QPP1)**

## <u>NOTICE OF CLAIM AND CERTIFICATE</u>

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, NY 10019
Attention: Jon Bradley
E-Mail: bjbradley@agltd.com

Attention: Daniel Weinberg
E-Mail: Dweinberg@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway, 23rd Floor
New York, New York 10019
Attention: Chief Surveillance Officer- Public Finance
Re: Puerto Rico Electric Power Authority
Email: munidisclosure@agltd.com

**Assured Guaranty Municipal Corp.**
1633 Broadway
New York, New York 10019
Attention: General Counsel
Email: generalcounsel@agltd.com

The undersigned, a duly authorized officer of U.S. Bank National Association, in its capacity as successor trustee (in such capacity, the "**Trustee**") for Puerto Rico Electric Power Authority Power Revenue Refunding Bonds, Series UU, maturing on July 1, 2029 (CUSIP No.: 74526QLY6) (the "**Bonds**"), hereby certifies to Assured Guaranty Municipal Corp. ("**AGM**"), formerly known as Financial Security Assurance Inc., with reference to (1) Municipal Bond Insurance Policy No. 208491-N dated May 3, 2007 (the "**Policy**"), issued in respect of the Bonds, and (2) Agreement Regarding Bond Insurance dated as of May 3, 2007, between the Trustee and the Puerto Rico Electric Power Authority (the "**Agreement**"), that:

(i)      The Trustee is the successor Trustee under the Trust Agreement dated as of January 1, 1974, as amended and supplemented from time to time (the "**Trust Agreement**"), pursuant to which the above-referenced Bonds were issued by the Puerto Rico Electric Power Authority (the "**Issuer**").

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) in the Sinking Fund and available for distribution to the registered holders of the Bonds (the "**Holders**") pursuant to the Trust Agreement will be $1,032,196.92 (such amount, the "**Shortfall**") less than the interest (the "**Scheduled Payments**") Due for Payment on the Bonds on April 2, 2018 (the "**Payment Date**").

(iii)    The Trustee is hereby making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Trustee agrees that, following its receipt from AGM of funds equal to the Shortfall, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not

apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee, and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof.

(v)     Subject to and conditioned upon payment by AGM to the Trustee of sufficient funds to cover the Shortfall in the Scheduled Payments due April 2, 2018, the Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, hereby assigns to AGM the rights of the Holders with respect to the Scheduled Payments but only to the extent of the payments made by AGM under the Policy.  For the avoidance of doubt, the foregoing assignment shall not affect, limit or impair the rights of the Holders under the Policy.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds.  The Trustee shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)     The Trustee, on behalf of the Holders, to the full extent of its authority under the Agreement, including Section 2(r)(F) thereof, hereby acknowledges and agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code (if applicable) or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding"), direct all matters with respect to the Bonds relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM, and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, and without limiting the foregoing, the Trustee hereby agrees that AGM shall be subrogated to the rights of each Holder in any Insolvency Proceeding to the extent  it is subrogated pursuant to section (vii) below, including, without limitation, all rights of any party to an adversary proceeding action with respect to any court order issued in connection with any such Insolvency Proceeding.  For the avoidance of doubt, nothing herein shall affect, limit or impair any of the rights of AGM under the Policy or the Agreement.

(vii)     AGM shall, to the extent it makes any Scheduled Payments on the Bonds under the Policy, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy and the Agreement.

(viii)     Payment should be made by wire transfer directed to

**U.S. Bank**
**800 Nicollet Mall**
**Minneapolis, MN 55402**
U.S. BANK N.A.

**Ref: PREPA (phone: 651-466-6089; 651-466-5869)**

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy or in the Agreement.

This Notice of Claim and Certificate may be revoked at any time by written notice of such revocation by the Trustee to AGM.

IN WITNESS WHEREOF, the Trustee has executed and delivered this Notice of Claim and Certificate as of the 28th day of March, 2018.

U.S. Bank National Association, as Trustee

By _____
Name: Julie J. Becker
Title: Vice President

For AGM or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

3