# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>   as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>   as representative of<br><br>The Puerto Rico Electric Power Authority,<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Court Filing Relates Only to PREPA and Shall Only be Filed in Case No. 17 BK 4780-LTS and Main Docket 17 BK 3283-LTS** |

## URGENT MOTION OF THE AD HOC GROUP OF PREPA BONDHOLDERS PURSUANT TO SECTION 312 OF PROMESA AND SECTION 105 OF THE BANKRUPTCY CODE TO COMPEL MEDIATION AND IMPOSE DEADLINES FOR A PREPA PLAN OF ADJUSTMENT

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801); and (vi) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ............................................................................................................. ii

Preliminary Statement ......................................................................................................... 1

Relief Requested .................................................................................................................. 4

Background .......................................................................................................................... 5

I.      Overview of PREPA Bonds and PREPA's Financial Distress ............................. 5

II.     PREPA's Negotiations with Creditors .................................................................. 6

III.    Current Status of the RSA .................................................................................... 9

IV.     Unexpected Departure of Executive Director Natalie Jaresko ......................... 11

V.      Lack of Engagement by the Oversight Board .................................................... 11

VI.     The RSA's Feasibility ....................................................................................... 12

Basis For Requested Relief ............................................................................................... 14

I.      The Court Should Exercise Its Authority to Appoint a Mediator and Set Deadlines
        by Which the Oversight Board Must File and Prosecute a PREPA Plan ......................... 14

        A. The Appointment of a Mediator Will Help Move PREPA's Case Forward................ 16

        B. The Proposed Deadlines Are Appropriate In These Circumstances........................... 18

Conclusion ........................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re City of Stockton*,
486 B.R. 194 (Bankr. E.D. Cal. 2013) .......................................................................................15

**Statutes**

11 U.S.C. § 105 ................................................................................................................1, 4, 15

11 U.S.C. § 941 .........................................................................................................................15

22 L.P.R.A. § 207 ........................................................................................................................6

22 L.P.R.A. § 208 ........................................................................................................................6

PROMESA § 301(a) ..................................................................................................................15

PROMESA § 312 ...............................................................................................................1, 4, 15

**Other Authorities**

Certified 2022 Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity (Jan.
27, 2022) .............................................................................................................................13

Certified New Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity (June
29, 2018) .............................................................................................................................13

Electricity Energy Consumption (Dec. 2021), Banco de Desarrollo Económico
Para Puerto Rico, https://www.bde.pr.gov/BDE/PRED.html ................................................13

General Fund Net Revenues – Fiscal Years 2009-2018, Gobierno de Puerto Rico,
hacienda.pr.gov/sites/default/files/ingresos_netos_fondo_general_2009-
2018_0.pdf ..........................................................................................................................13

Financial Oversight & Mgmt Board for Puerto Rico (@FOMBPR), Twitter (Feb.
3, 2022, 11:34 AM EST) ......................................................................................................11

Metro Puerto Rico, *Senate Commission Investigates the So-Called "Sun Tax"*,
Metro Puerto Rico (Jan. 19, 2022, 1:29 PM EST) ...............................................................12

Puerto Rico Electric Power Authority: Fiscal Plan (Aug. 1, 2018) ..............................................13

Puerto Rico Local Area Unemployment Statistics, U.S. Bureau of Labor
Statistics,
https://data.bls.gov/timeseries/LASST720000000000003?amp%253bdata_tool
=XGtable&output_view=data&include_graphs=true (as of July 2018)..................................13

Rafael Bernal, *Pierluisi: Puerto Rico no longer facing "any significant fiscal
challenges"*, The Hill (Feb. 3, 2022, 06:02 AM EST) ......................................................2, 14

Reorg, *AAFAF Chief Marrero Signals PREPA RSA 'Most Likely' Will Need
Renegotiation, Given Lack of Legislative Support*, Reorg - Intel (Feb. 7, 2022,
09:43 AM EST)..............................................................................................................3, 9, 15, 18

Reorg, *AAFAF's Marrero Voices Support for Current PREPA RSA, Says
Legislation Remains 'Biggest Concern' Based on Current Lack of Support in
Legislature*, Reorg - Intel (Jan. 20, 2022, 3:19 PM EST).....................................................10, 16

Reorg, *Board Member Peterson Suggests Reconfiguring PREPA RSA to Quicken
Bondholder Recovery, Says RSA Needs to Be Consensual and 'Fair' to
Bondholders Who Have Not Been Paid in 7 Years*, Reorg - Intel (Dec. 20,
2021, 5:22 PM EST) ...............................................................................................................10

Reorg, *Jaresko Says Remaining 2 Months as Executive Director Will Include
Commonwealth Plan Going Effective, Filing of HTA Plan; Aims for 'Serious
Progress' on PREPA Restructuring*, Reorg - Intel (Feb. 3, 2022, 5:14 PM
EST) ..........................................................................................................................................11

Reorg, *Judge Swain, Stakeholders Underline Importance of Title III Plan
Confirmation; AAFAF Chief Vows to Execute Plan by March 15 Deadline;
US House Natural Resources Committee to Hold Oversight Hearings*, Reorg -
Intel (Jan. 19, 2022, 5:19 PM EST) .......................................................................................11

Reorg, *Ortiz Says Governor Supports PREPA RSA, Says Bill to Execute
Restructuring Should Be Submitted to Legislature Before Jan. 14 Rule 9019
Motion Hearing*, Reorg – Intel (Nov. 15, 2019, 3:15 PM EST),.............................................9

Reorg, *Oversight Board Approves Resumption of Negotiations Around Proposed
Commonwealth Plan, Clears PRASA Refinancing, Aims for PREPA Title III
Exit 'on the Basis' of Current RSA* (Nov. 20, 2020, 5:49 PM EST)......................................19

Reorg, *Oversight Board Outlines Next Steps for Taking Commonwealth Plan
Effective by March 15 Deadline, Aims to Complete Restructuring of PREPA,
HTA in 2022*, Reorg – Intel (Jan. 18, 2022, 7:53 PM EST) ..................................................10

Reorg, *Pierluisi Urges Oversight Board to Expedite Debt Restructuring, Warns
Proposed Budget Will Not Fully Comply with Current Fiscal Plan; Jaresko
Reiterates Goal for Commonwealth, PREPAA to Exit Bankruptcy This Year*,
(Jan. 29, 2021, 5:05 PM EST)................................................................................................19

Reorg, *PROMESA Oversight Board Stands Behind PREPA RSA Terms, Focuses
on Securitization Legislation; Commonwealth Officials Outline Post-
Restructuring Economic Plans During 31st Public Meeting*, Reorg – Intel
(Dec. 17, 2021, 5:36 PM EST) ............................................................................................12

To the Honorable United States District Court Judge Laura Taylor Swain:

The Ad Hoc Group of PREPA Bondholders (the "**Ad Hoc Group**") respectfully submits this urgent motion ("**Motion**") pursuant to sections 312 of the Puerto Rico Oversight, Management, and Economic Stability Act ("**PROMESA**"), codified at 48 U.S.C. § 2170, et seq., and 105 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, (the "**Bankruptcy Code**") for two orders, each substantially in the form attached as **Exhibit A** and **Exhibit B** hereto, to (i) reappoint the Honorable Barbara J. Houser (Ret.) as mediator to facilitate negotiations between the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") and the Ad Hoc Group in connection with a path forward if the RSA (defined herein) legislation is not passed and, once that objective is achieved, a comprehensive resolution of issues and claims in PREPA's Title III case through a plan of adjustment with other creditors if necessary, and (ii) to impose deadlines with respect to a plan of adjustment for the Puerto Rico Electric Power Authority ("**PREPA**"), respectively.

## PRELIMINARY STATEMENT

1.     PREPA's restructuring has been ongoing for nearly *eight years*, and now is the time to conclude this saga.  Since 2014, PREPA's bondholders have agreed to forbear from exercising remedies granted to them under Commonwealth law and their trust agreement with PREPA, provided a loan to keep PREPA from defaulting on its debts, facilitated the privatization of PREPA's transmission and distribution system, and negotiated restructuring agreements with three different Puerto Rico administrations.  In 2018, years of negotiation and cooperation culminated in an agreement to restructure more than $8 billion of PREPA's bond debt entered into by the Oversight Board, PREPA, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**," collectively with the Oversight Board and PREPA, the "**Government Parties**"), and

the Ad Hoc Group, and subsequently joined in 2019 by Assured, National, Syncora (each as
defined in the RSA), and the vast majority of PREPA's bondholders.

2.       As the parties proceeded towards Court approval of the RSA, with a PREPA Title
III plan expected to follow, those efforts were stalled in February 2020 – first by opposition from
the Puerto Rico legislature to passing legislation necessary under the RSA, then by the global
pandemic, and finally by the Oversight Board's specific requests that the PREPA bondholders be
patient and wait – first until the LUMA transaction was consummated, and then for confirmation
of the Commonwealth plan of adjustment.

3.       During this time, the macroeconomic picture in Puerto Rico has improved
dramatically.  Since the terms of the RSA were agreed upon in 2018, unemployment has declined
precipitously, government revenue collections have soared, federal funding has increased by many
multiples, the Oversight Board's long-term population forecasts have increased significantly, and
electricity consumption has vastly exceeded the Oversight Board's projections.  Indeed, the
Commonwealth government itself has recognized that "Puerto Rico is no longer facing any
significant fiscal challenges."[2]  Still, PREPA's bondholders have remained committed to the
agreement reflected in the RSA.  Similarly, the Government Parties have made repeated assurances
and public statements that they too remain committed to the RSA.  Indeed, on January 19, 2022,
the Oversight Board stated to this Court that it "has determined at this point to move forward with
the settlement set forth in the RSA" and that it planned to file a Title III Plan premised upon the
RSA by the end of March 2022.[3]

---

[2] Rafael Bernal, *Pierluisi: Puerto Rico no longer facing "any significant fiscal challenges"*, The Hill (Feb. 3, 2022,
06:02 AM EST), https://thehill.com/latino/592584-pierluisi-puerto-rico-no-longer-facing-any-significant-fiscal-
challenges (statement of Governor Pierluisi).

[3] Status Report of Government Parties Regarding COVID-19 Pandemic and 9019 Motion ¶¶ 7, 8 [Dkt. No. 2691]
("**Jan. 19, 2022 Status Report**").  Unless otherwise noted, all docket entry references herein are to entries in Case
No. 17-BK-4780-LTS.

4.      The time has come to work out the final implementation mechanics for the RSA, and to develop an alternative that does not require legislation (a "**Plan B**"), given the legislature's failure to act over the past two years.  Despite the Ad Hoc Group's numerous requests for re-engagement on PREPA, and assurances provided to the Ad Hoc Group as well as the Court that the Oversight Board remained supportive of the RSA and the development of a non-legislated solution,[4] no such engagement has taken place.

5.      It is now clear that, notwithstanding the existence of an agreement that has the public support of all of the significant parties, without the establishment of Court ordered deadlines and oversight by a Court appointed mediator, the filing of a consensual PREPA plan will be continually delayed.  As the *five-year* anniversary of PREPA's Title III filing approaches, this process cannot be delayed any further.  Time is truly of the essence here.  Less than two weeks ago, AAFAF's Omar Marrero stated that the restructuring of PREPA is the "most essential" pending restructuring to "achieve fiscal stability and economic growth" for Puerto Rico.[5]  Mr. Marrero noted that PREPA's ongoing bankruptcy is making "everything more expensive," including fuel and power procurement, and that PREPA's Title III case stands as the "prime obstacle" to achieving the government's renewable energy goals and its desired pivot to economic development initiatives following confirmation of the Commonwealth plan of adjustment.[6]  Put simply, the delay in getting PREPA out of bankruptcy is harming Puerto Rico and its residents. The importance of completing the PREPA restructuring *now* is exacerbated by the upcoming departure of the Oversight Board's Executive Director Natalie Jaresko, effective April 1, with no

---

[4] *See* Jan. 19, 2022 Status Report ¶ 8 ("In the event necessary legislation is not enacted to implement the RSA, the Government Parties will evaluate alternatives without new legislation").

[5] Reorg, *AAFAF Chief Marrero Signals PREPA RSA 'Most Likely' Will Need Renegotiation, Given Lack of Legislative Support*, Reorg – Intel (Feb. 7, 2022, 09:43 AM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=168129.

[6] *Id.*

clear successor to step in to oversee the PREPA restructuring.  Due to the significant loss of

institutional knowledge associated with Ms. Jaresko's departure, and the likelihood that it will take

time for a new Executive Director to be selected and get up to speed, failure to make real progress

over the coming month introduces the risk of a much lengthier delay.

6.     There will never be a politically "easy" time to restructure PREPA.  However,

PREPA's restructuring and emergence from bankruptcy is necessary and critical to Puerto Rico's

future prosperity.  The Court will recall that, in the COFINA case, the Court entered an order

implementing a protocol that provided a clear structure and timeline for resolution of that case.

Similarly, in the Commonwealth case, the Court entered an order requiring that the Oversight

Board file and prosecute a plan by certain specific deadlines.  As all parties recognized at the

Commonwealth confirmation hearing, the deadlines and structure imposed by the Court and the

mediators were essential components of resolving that case.  Here too, the parties require the

appointment of a mediator and the imposition of Court ordered deadlines, so that after nearly eight

years, the PREPA restructuring can finally be brought to a conclusion.

## RELIEF REQUESTED

7.     The Ad Hoc Group respectfully requests an order, pursuant to section 105(a) of the

Bankruptcy Code and section 312 of PROMESA, (i) appointing the Honorable Barbara J. Houser

(Ret.) as mediator in PREPA's Title III case to facilitate negotiations among the Oversight Board

and the Ad Hoc Group to forge a path forward if the RSA-required legislation is not passed, and,

once that objective is achieved, a comprehensive resolution of issues and claims in PREPA's Title

III case through a plan of adjustment with other creditors if necessary,[7] and (ii) imposing the

following deadlines for the Oversight Board to file and prosecute a plan of adjustment for PREPA:

   a.  By no later than **April 15, 2022**, the Oversight Board shall file a plan of adjustment
       for PREPA that the Oversight Board intends to prosecute towards confirmation,
       with an accompanying disclosure statement;

   b.  The Oversight Board shall provide parties with not less than approximately 60
       days' notice of the disclosure statement such that the Court may consider the
       adequacy of the disclosure statement for the plan by no later than **June 15, 2022**;

   c.  The Oversight Board shall distribute ballots for the plan providing not less than
       approximately 90 days for voting on the plan such that tabulation will be completed
       no later than **September 15, 2022**;

   d.  The Court will consider confirmation of the plan by no later than **October 15, 2022**;
       and

   e.  Plan consummation must occur by no later than **November 30, 2022**.

There must be real progress on proposing and confirming a PREPA plan of adjustment, and if

reasonable deadlines cannot be met, dismissal of the Title III case may be necessary.

## **BACKGROUND**

## I.    **Overview of PREPA Bonds and PREPA's Financial Distress**

   8.    Beginning almost fifty years ago, PREPA issued billions of dollars in bonds (the

"**Bonds**") pursuant to the Puerto Rico Electric Power Authority Act, Act. No. 83 of May 2, 1941,

P.R. Laws Ann. Tit. 22 §§ 191, *et seq.*, and a Trust Agreement between PREPA and U.S. Bank

National Association, as trustee (solely in that capacity, the "**Trustee**"), dated January 1, 1974 (the

"**Trust Agreement**").   The Bonds are secured by a pledge of all current and future revenues,

receipts, and other income derived by PREPA from the sale or distribution of electricity, as more

specifically described in the Trust Agreement (collectively, the "**Revenues**").   The billions of

---

[7] Counsel to the Ad Hoc Group has conferred with Judge Houser (Ret.) and understands that she is willing to serve as
mediator in this matter.

dollars raised through bond offerings over the years were used to finance the energy infrastructure and system used throughout Puerto Rico.  There are currently approximately $8.3 billion in principal amount of Bonds outstanding.

9.     PREPA generates money through operation of both electric power generation and transmission and distribution systems, charging customers a rate that must be sufficient to cover its costs, including debt service.  *See, e.g.*, Trust Agreement at § 502 (including a rate covenant requiring PREPA to adjust rates so that it will receive Revenues "sufficient" to pay Current Expenses (defined in the Trust Agreement), debt service on the bonds, and a 20% cushion on debt service).  As further security for the Bonds, the Trustee is empowered to cause PREPA to raise rates if PREPA fails to do so, and/or to have a receiver appointed who could cause PREPA to honor its obligations.  *See* 22 L.P.R.A. §§ 207-08 (Act 19-1942 §§ 17-18); Trust Agreement §§ 502, 804 and 808.

10.     Notwithstanding contractual, statutory, and constitutional obligations, PREPA historically has failed to increase its rates to recover its costs.  As a result, PREPA defaulted on the payment of principal and interest on its Bonds on July 3, 2017, and the Oversight Board filed this Title III case that same day.

## II.     PREPA's Negotiations with Creditors

11.     PREPA and certain of its financial creditors entered into forbearance agreements in July and August of 2014 (as amended, the "**Forbearance Agreements**"), with the intent of facilitating a consensual resolution to PREPA's liquidity issues.  Creditors extended the Forbearance Agreements on multiple occasions, providing PREPA additional flexibility to address its finances and meet certain agreed-upon milestones.  Certain bondholders also provided more than $1.2 billion in liquidity by purchasing relending bonds, waiving debt-service-reserve fund and self-insurance fund requirements, waiving waterfall requirements to permit use of general fund

monies for capital improvements prior to payment of debt service, and allowing PREPA to use cash in the construction fund to finance operations. PREPA took this opportunity to pass along over $2 billion in fuel-cost savings to customers.

12.    In an effort to restore PREPA to financial stability, PREPA and these creditors negotiated a restructuring of PREPA's debt. In December 2015, under the administration of Governor García Padilla, PREPA and the vast majority of its financial creditors agreed to a restructuring support agreement (the "**2015 RSA**"). The 2015 RSA was supported by legislation passed by the Puerto Rico legislature, approved by the Puerto Rico Energy Bureau (formerly known as the Energy Commission) and validated by Puerto Rico's own courts. Before the 2015 RSA could be implemented, however, Governor Rosselló won the 2016 election and in April 2017 negotiated certain revisions to the RSA (the "**2017 RSA**") that would reduce the rate charged to PREPA's customers.

13.    The parties to the 2017 RSA expected the Oversight Board to approve the 2017 RSA and implement it through PROMESA's Title VI Qualifying Modification process. That did not occur. Despite creditors' years of forbearance from litigation in the hopes of a consensual resolution to PREPA's managerial and financial difficulties, the Oversight Board rejected the 2017 RSA and filed PREPA's Title III case on July 3, 2017. Complex litigation ensued, including a motion for stay relief to appoint a receiver to raise rates (denied by this Court in an order reversed and remanded by the First Circuit Court of Appeals).

14.    In May 2018, the Oversight Board (and later AAFAF and PREPA) resumed negotiations with bondholders, culminating in a term sheet that the parties agreed to in July 2018 (the "**Preliminary RSA**"). The parties continued discussions to transform that term sheet into a more detailed restructuring support agreement and incorporate additional parties into the

- 7 -

agreement. The most critical change in the Preliminary RSA that made it attractive to the Oversight Board was the bondholders' agreement to remove the full "automatic true up component" of the debt service charge on electricity bills.[8] The RSA, as redesigned by the Oversight Board, established a fixed schedule for a charge to repay debt service.

15. The RSA was signed on May 3, 2019 (as amended, the "**RSA**"). The motion to approve the RSA was filed on May 10, 2019 (the "**9019 Motion**").[9] The RSA was subsequently amended to add National and Syncora as Supporting Holders (as defined in the RSA).

16. The RSA provides that bondholders will exchange their current PREPA bonds into Tranche A bonds (at a 67.5% exchange ratio) and Tranche B bonds (at a 10% exchange ratio) issued by a newly formed special purpose vehicle. The new bonds will be payable out of a transition charge that is set in advance, shifting the risk of lower electricity demand away from consumers and onto bondholders, and without the full true-up mechanism that is standard in electric utility bonds to ensure that debt service is paid in full. To implement the securitization structure upon which the RSA rests, the Puerto Rico legislature must pass new legislation.

17. The RSA provides PREPA with unprecedented economic concessions, including a substantial reduction in principal and interest owed to bondholders, elimination of a rate covenant, and unlimited flexibility on timing. The RSA also brings an end to receivership litigation, preclusion of further motions for relief from the stay and of challenges to Puerto Rican efforts to

---

[8] *See* Declaration of David Brownstein in Support of Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 For Order Approving Settlements Embodied in the Restructuring Support Agreement ¶ 47 [Dkt. No. 1426] ("As noted, the omission of a security structure that ensures timely repayment (either with a coverage requirement and/or a true up mechanism) in municipal debt instruments is, to my knowledge, unprecedented. . . . Achieving the [bondholders'] agreement to this unique structure was one of the most significant components of the agreement reached in the RSA, and was critical in achieving the Government Parties' key objectives.").

[9] Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods [Dkt. No. 1235].

divert pledged revenues away from bondholders, and resolution of legal challenges and corresponding confirmation objections. In the words of AAFAF Executive Director Omar Marrero, "When you look at the history of these kinds of bonds in the municipal market, it is not typical to achieve such a substantial reduction. When you look at the precedents and compare them to PREPA, the proposed reduction is substantial and beneficial."[10]

## III.   Current Status of the RSA

18.    After the filing the 9019 Motion, implementation of the RSA was moving forward: the 9019 Motion was proceeding to hearing, discovery was complete, and depositions had been taken. In February 2020, the Government Parties asked for the upcoming hearing (and related briefing schedule) to be pushed out several months in light of recent natural disasters, as well as the political difficulty of enacting the necessary legislation, which was complicated by the early departure of Governor Rosselló.[11] The Oversight Board and AAFAF continued to work, with Governor Vásquez's support, towards passing the RSA legislation.[12]

19.    In March 2020, the global COVID-19 pandemic reached the United States. Due to the diversion of government resources to fight the pandemic and economic uncertainty, the Government Parties repeatedly requested that the Court adjourn the hearing on the 9019 Motion and related deadlines.

20.    After the confirmation hearing for the Commonwealth Title III plan concluded on November 23, 2021, the Oversight Board confirmed its commitment to the settlements in the RSA.

---

[10] Reorg, *supra* note 5.

[11] Financial Oversight and Management Board's Submission (a) in Further Support of Government Parties' Urgent Motion for an Eleventh Revised 9019 Scheduling Order; and (b) in Response to the Urgent Motion of the Fuel Line Lenders and Union Entities to Adjourn March 4, 2020 Hearing on Bondholders' and Government Parties' Motions to Dismiss in Adversary Proceedings ¶ 1 [Dkt. No. 1911].

[12] Reorg, *Ortiz Says Governor Supports PREPA RSA, Says Bill to Execute Restructuring Should Be Submitted to Legislature Before Jan. 14 Rule 9019 Motion Hearing*, Reorg – Intel (Nov. 15, 2019, 3:15 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=88376.

During a December 17 press conference, Executive Director Natalie Jaresko reaffirmed the Oversight Board's commitment to the terms of the RSA.[13]   Again on January 18, Ms. Jaresko reiterated the Board's commitment and stated that "not proceeding" with the settlements in the RSA carries "risk and uncertainties."[14]   In the January 19, 2022 status report, the Oversight Board stated: "The Oversight Board has determined at this point to move forward with the settlement set forth in the RSA."[15]   AAFAF has also continued to affirm its commitment to the RSA.[16]

21.   Despite these recent commitments, the timeline for completion of PREPA's plan of adjustment continues to slip.  The Government Parties stated their intent to file a PREPA plan by the end of 2021 or early 2022 (*see* July 11, 2021 Status Report[17]; Oct. 4, 2021 Status Report[18]), then by the end of March 2022 (*see* Dec. 14, 2021 Status Report[19]), and then said that the filing of a PREPA plan might be pushed "into the second quarter of 2022" (Jan. 19, 2022 Status Report)[20].

---

[13] Reorg, *Board Member Peterson Suggests Reconfiguring PREPA RSA to Quicken Bondholder Recovery, Says RSA Needs to Be Consensual and 'Fair' to Bondholders Who Have Not Been Paid in 7 Years*, Reorg – Intel (Dec. 20, 2021, 5:22 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=164141.

[14] Reorg, *Oversight Board Outlines Next Steps for Taking Commonwealth Plan Effective by March 15 Deadline, Aims to Complete Restructuring of PREPA, HTA in 2022*, Reorg – Intel (Jan. 18, 2022, 7:53 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=166198.

[15] *See* Jan. 19, 2022 Status Report ¶ 7; *see also* Reply to Committee Response to January Status Report of the Government Parties Regarding COVID-19 Pandemic and 9019 Motion ¶ 3 [Dkt. No. 2697] ("The Oversight Board is focused on the RSA rather than alternative scenarios that may result in less favorable terms to PREPA, Bondholders and customers.").

[16] Reorg, *AAFAF's Marrero Voices Support for Current PREPA RSA, Says Legislation Remains 'Biggest Concern' Based on Current Lack of Support in Legislature*, Reorg - Intel (Jan. 20, 2022, 3:19 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=166455.

[17] Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion ¶ 11 [Dkt. No. 2544].

[18] Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 ¶ 6 [Dkt. No. 2627].

[19] Status Report of Financial Oversight and Management Board in Connection with December 15-16, 2021 Omnibus Hearing ¶ 8 [Case No. 17-03283, Dkt. No. 19514].

[20] Jan. 19, 2022 Status Report ¶ 8.

The Government Parties now say they hope to bring PREPA out of bankruptcy before the end of 2022.[21]

## IV.    Unexpected Departure of Executive Director Natalie Jaresko

22.    On February 3, 2022, the Oversight Board announced that its Executive Director, Natalie Jaresko, would be leaving effective April 1, 2022.  The Oversight Board spent months conducting the search process that led to Ms. Jaresko's appointment; the Oversight Board was formed on June 30, 2016, but Ms. Jaresko was appointed only on March 20, 2017.  The Oversight Board "is beginning the public search for a new executive director," but has not given any detail on how long the search might take, or whether it expects a new director to seamlessly step in on PREPA.[22]

## V.    Lack of Engagement by the Oversight Board

23.    Over the past two years, the Ad Hoc Group has repeatedly tried to engage the Oversight Board in discussions regarding moving the RSA forward.  Other than attending a single meeting with the Ad Hoc Group in September 2021, the Oversight Board has exhibited no engagement on moving PREPA forward.  Upon confirmation of the Commonwealth plan, on January 26, 2022, the Ad Hoc Group sent a letter to the Oversight Board asking the Oversight Board to work with the Ad Hoc Group regarding a Plan B alternative to the legislation required under the RSA so that the Oversight Board could proceed to file a plan on the schedule outlined

---

[21] Reorg, *Judge Swain, Stakeholders Underline Importance of Title III Plan Confirmation; AAFAF Chief Vows to Execute Plan by March 15 Deadline; US House Natural Resources Committee to Hold Oversight Hearings*, Reorg - Intel (Jan. 19, 2022, 5:19 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=166319 (citing statements by Board Member Justin Peterson that the Oversight Board is "aiming to bring . . . PREPA out of bankruptcy this year").

[22] Financial Oversight & Mgmt Board for Puerto Rico (@FOMBPR), Twitter (Feb. 3, 2022, 11:34 AM EST), https://twitter.com/FOMBPR/status/1489276022608793606?ref_src=twsrc%5Etfw; Reorg, *Jaresko Says Remaining 2 Months as Executive Director Will Include Commonwealth Plan Going Effective, Filing of HTA Plan; Aims for 'Serious Progress' on PREPA Restructuring*, Reorg - Intel (Feb. 3, 2022, 5:14 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=167887.

for the Court.  The Ad Hoc Group did not receive any response to this letter.  Instead, the Ad Hoc Group has received only vague assurances that engagement would be forthcoming.  No such engagement has taken place.

24.     The time for such delay is over.  The six weeks remaining before Ms. Jaresko's departure (which likely will have become four weeks by the time this motion is determined) provide a very short window for the Oversight Board and the Ad Hoc Group to work towards finalizing the terms of the RSA, including the implementation mechanics of a non-legislated Plan B, before Ms. Jaresko's departure.

25.     To be clear, the parties continue to share the common goal of implementing the RSA through a confirmed plan of adjustment for PREPA.  This Motion only seeks Court (and mediation) assistance in pushing that forward on a set timeline.

26.     The Ad Hoc Group has reached out to the Honorable Barbara Houser (Ret.), who led a team of mediators in the Commonwealth's case and who continues to work as a mediator. Judge Houser (Ret.) has indicated that she is willing to serve as mediator for PREPA in the short and targeted mediation that is called for here to reach agreement on an alternative path forward on the RSA if legislation cannot be achieved and, once that objective is achieved, a comprehensive resolution of issues and claims in PREPA's Title III case through a plan of adjustment with other creditors if necessary.  She has also agreed to a 10 percent reduction off of her regular 2022 rates. At the Ad Hoc Group's request, Judge Houser (Ret.) provided a form of order and mediation rules on which she is willing to serve, and those are incorporated into **Exhibit A** hereto.

## VI.     **The RSA's Feasibility**

27.     The Oversight Board's latest fiscal plan shows that the RSA remains a feasible path forward for PREPA.

- 12 -

28.     Since the economic terms of the RSA were first agreed to in 2018, the Puerto Rico economy has significantly strengthened – indeed, it has outperformed key Commonwealth economic projections assumed at the time the deal was reached.  Unemployment is lower, tax collections are higher, committed levels of federal funding have risen, population forecasts have grown, and electricity consumption has outperformed projections.

| Metric | 2018 Conditions | Current Conditions | Change |
|---|---|---|---|
| Unemployment Level | 9%[23] | 7.5%[24] | 17% decrease |
| General Fund Revenues | $9.313 billion[25] | $12.509 billion[26] | 34% growth |
| Medicaid Funding Cap | $406 million (expected level 10/1/2021)[27] | $2.943 billion[28] | 625% increase |
| FY 2050 / 2051 Population Forecast | 2.077 million[29] (FY 2050) | 2.499 million[30] (FY 2051) | 20% growth |
| FY 2021 Electricity Consumption | 13,996 GWh[31] | 16,280 GWh[32] | 16% outperformance |

---

[23] Puerto Rico Local Area Unemployment Statistics, U.S. Bureau of Labor Statistics, https://data.bls.gov/timeseries/LASST720000000000003?amp%253bdata_tool=XGtable&output_view=data&include_graphs=true (as of July 2018).

[24] *Id.* (as of December 2021).

[25] General Fund Net Revenues – Fiscal Years 2009-2018, Gobierno de Puerto RicO, hacienda.pr.gov/sites/default/files/ingresos_netos_fondo_general_2009-2018_0.pdf.

[26] Certified 2022 Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity at 41, 348 (Jan. 27, 2022) ("**CW Certified 2022 Fiscal Plan**") (calculated by taking the Total General Fund Revenues less Earned Income Tax Credit).

[27] *Id.* at 50.

[28] *Id.*

[29] Certified New Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity at 27 (June 29, 2018), https://drive.google.com/file/d/1c9LACF1yzSi1sUElNVaZHklo93TJR55M/view.

[30] CW Certified 2022 Fiscal Plan at 68.

[31] Puerto Rico Electric Power Authority: Fiscal Plan – August 1, 2018 at 32, https://drive.google.com/file/d/1p__TX3B_mGt-a8vS5JgOKHD01rRDhaLo/view.

[32] Electricity Energy Consumption (Dec. 2021), Banco de Desarrollo Económico Para Puerto Rico, https://www.bde.pr.gov/BDE/PRED.html.

29.     As the Commonwealth government itself has recognized, Puerto Rico is no longer "facing any significant fiscal challenges."[33]   Puerto Rico's revenues are exceeding estimates, supported by an influx in federal funding and "a growing economy that's inflating tax revenue."[34]

30.     The parties have the opportunity to press forward with a short mediation on the RSA non-legislated solution, which can be incorporated into a Title III plan that can be expeditiously filed with the Court.  The Oversight Board then can turn to negotiations with other PREPA creditor constituencies, following the model of sequential negotiations that resulted in a confirmed Commonwealth Title III plan, and finally bring this Title III case to conclusion.

## BASIS FOR REQUESTED RELIEF

### I.     The Court Should Exercise Its Authority to Appoint a Mediator and Set Deadlines by Which the Oversight Board Must File and Prosecute a PREPA Plan

31.     To advance these cases, the Ad Hoc Group requests that the Court exercise its authority to appoint a mediator and set deadlines for the Oversight Board to file and prosecute a plan of adjustment.  The facts outlined above show that the RSA remains a viable path forward, embodying extraordinary concessions from bondholders, but that political and bureaucratic inertia are likely to stall the process indefinitely without this Court's intervention.

32.     In a municipal bankruptcy case, creditors do not have the option to seek to terminate exclusivity to file their own plan, convert the case, or appoint a trustee or examiner.  Nor is liquidation of the municipality an option.  Under PROMESA, Congress gave only the Oversight Board the right to file and prosecute a plan of adjustment for Puerto Rico and its instrumentalities, such as PREPA.  This exclusive right carries with it the potential for abuse: creditors have limited

---

[33] Bernal, *supra* note 2.

[34] *Id.*

ability to advance the restructuring while the debtor can avoid paying creditors for extended periods of time until they succumb to pressure.

33.     The plan of adjustment process is one of the few tools available to protect creditors' rights in municipal bankruptcies.[35]  In Chapter 9, federal courts have the power to impose deadlines on the debtor to file a plan.[36]  PROMESA, similarly, authorizes the Court to impose a deadline on the Oversight Board to file a plan.[37]  Section 105(a) of the Bankruptcy Code supplements these powers, recognizing the Court's authority to manage its docket efficiently by authorizing it to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code.[38]

34.     Since the RSA's execution nearly two years ago, the Oversight Board has repeatedly stated its commitment to the RSA and continued support for the settlements it embodies, but progress has stalled.  That delay hurts all parties, including PREPA.  Omar Marrero, the Executive Director of AAFAF, recently confirmed that PREPA's continuing bankruptcy and "bad credit make everything more expensive," including the necessary purchase of fuel and power, and that PREPA remaining mired in Title III is the major obstacle thwarting the government's renewable energy goals and economic development initiatives.[39]  PREPA is the "most essential" remaining restructuring in order to meet the government's goals of "achiev[ing] fiscal stability and economic growth."[40]

---

[35] *See In re City of Stockton*, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013) (noting that debtor's "day of reckoning comes at the plan confirmation hearing").

[36] *See* 11 U.S.C. § 941.

[37] PROMESA § 312(b).

[38] 11 U.S.C. § 105(a); *see also* PROMESA § 301(a) (incorporating 11 U.S.C. § 105(a) into PROMESA).

[39] Reorg, *supra* note 5.

[40] *Id.*

35.     The RSA was and remains a good deal for PREPA.  As Mr. Marrero has recently pointed out, the haircut that bondholders agreed to under the RSA is "deeper than in most debt restructurings."[41]   While both AAFAF and the Oversight Board have recently espoused the benefits of the RSA, AAFAF's Executive Director recently said, "The RSA legislation is our biggest concern.  We don't see the current Legislature providing that, but I could be wrong."[42]

### A.     The Appointment of a Mediator Will Help Move PREPA's Case Forward

36.     To break the stasis that has been going on for nearly two years, a mediator should be appointed to jumpstart the Plan B negotiations using simple tools: setting meeting dates, engaging Oversight Board members, requiring the parties to communicate with each other, and serving as an intermediary when necessary.

37.     This Court recognized the importance of mediation when it appointed a mediation team on June 23, 2017, consisting of five sitting federal judges (the "**Mediation Team**").  The Mediation Team was instrumental in reaching agreements in the debt restructurings for COFINA, the Commonwealth, PBA, HTA, ERS, the Puerto Rico Infrastructure Financing Authority, and the Puerto Rico Convention Center District Authority.  At the recent Commonwealth plan confirmation hearing, multiple parties remarked how essential the mediation process and the Mediation Team were to reaching a largely consensual resolution.[43]

38.     Last month, in light of the Court's impending confirmation of the Commonwealth, PBA, and ERS plans, the Mediation Team filed a final report requesting the Court dissolve it,

---

[41] *Id.*

[42] Reorg, *supra* note 16.

[43] *See e.g.*, November 8, 2021 Hr'g Tr. 67:7-13, 74:8-75:8, 86:19-25 [Case No. 17-03283, Dkt. No. 19146].

which the Court granted.[44]  In the Final Report, the Mediation Team expressed its belief that its task had been completed because the PREPA RSA was already in place and similar agreements were in place for all the other Title III debtors that have yet to consummate their restructurings.[45]

39.    But progress in PREPA's Title III case has stalled at a critical point.  Given the impending departure of Executive Director Jaresko and the Oversight Board's own stated goal of completing the bankruptcy by year end, forward momentum is of the utmost necessity.

40.    Further, the primary issue to be mediated is discrete – Plan B, an alternative path forward on the RSA if the required legislation is not passed, an issue that has been in the Oversight Board's hands for months.  It should be possible for the limited number of mediation parties to work through the details of a Plan B proposal in a matter of weeks with appropriate oversight and direction from a skilled mediator who, once that objective is achieved, can then turn to a comprehensive resolution of issues and claims in PREPA's Title III case through a plan of adjustment with other creditors if necessary.

41.    As noted, Judge Houser (Ret.) has expressed willingness to resume her role as mediator to help close the issues remaining on the RSA if legislation cannot be achieved, and move towards confirmation.  Judge Houser (Ret.) is the logical and best choice for such a role.  She has deep experience with Puerto Rico (including first-hand experience with many of the parties involved), she understands municipal restructuring issues, and she has the ability to take on this assignment.

---

[44] *See* Final Report of the Mediation Team [Case No. 17-03283, Dkt. No. 19809] (the "**Final Report**"); Order Terminating Appointment of Mediation Team [Case No. 17-03283, Dkt. No. 19833].

[45] *See* Final Report ¶ 4.

### B.     The Proposed Deadlines Are Appropriate In These Circumstances

42.     The Ad Hoc Group is not seeking to renegotiate the RSA to account for Puerto Rico's improved economic circumstances.  Rather, it remains committed to the deal it struck nearly four years ago.  But this delay cannot continue indefinitely.  By allowing PREPA to languish in Title III – despite having already negotiated a deal that forms the basis for a PREPA plan – the people of Puerto Rico are forced to pay more for fuel, PREPA must pay higher fees to LUMA, and PREPA suffers from lack of access to capital markets.[46]

43.     The parties have seen time and again in these cases that Court-imposed deadlines yield results.  This Court previously granted a similar motion filed by creditors holding general obligation bonds (the "**PSA Creditors**") to impose deadlines on the Oversight Board to file a Commonwealth and PBA plan of adjustment.  The same reasons that the Court granted the PSA Creditors' motion apply with even more force here.  Here also, a "near-term deadline for definitive action with respect to the contours of . . . [a] plan proposal is necessary and should help focus the . . . Board, . . . [and] political leaders . . . on the need to work with each other and with creditors to find a realistic path to an exit from Title III."[47]

44.     The PSA Creditors requested deadlines of, *inter alia*, November 30, 2020, to file a plan of adjustment for the Commonwealth and PBA, with accompanying disclosure statement, and plan consummation by June 30, 2021.[48]  This Court found the proposed deadlines too harsh given the pandemic restrictions, recent changes in Oversight Board membership, Puerto Rico's elections,

---

[46] Reorg, *supra* note 5.

[47] *See* Order on Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment at 3 [Case No. 17-03283, Dkt. No. 14987] (the "**October Order Imposing Deadlines**").

[48] Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment ¶ 60 [Case No. 17-03283, Dkt. No. 14478].

and upcoming political transitions.  Instead, the Court gave the Oversight Board three and a half
months to file a plan or term sheet with proposed timeline for a plan.[49]

45.     The concerns that motivated the Court to set this timeline are not present here.  The
new Oversight Board members have been in place for months; the elections occurred, and the
newly elected officials have been in place for months; and the work of transition is over.  Instead,
existing circumstances support imposition of a tight timetable.  In fewer than 60 days, Ms. Jaresko
will be leaving the Oversight Board, and her departure may delay the Oversight Board's efforts to
restructure PREPA's debts further as the new executive director gets up to speed on the years of
negotiation with which Ms. Jaresko is intimately familiar.  Further, the Oversight Board's own
target for filing a PREPA plan of adjustment is fast approaching.

46.     Moreover, formulating a PREPA plan will be a far easier process than what the
Oversight Board faced in connection with the Commonwealth and COFINA plans.  The Ad Hoc
Group has had extensive discussions with the Oversight Board for years, and the contours of a
consensual deal, as reflected in the RSA, are well understood on all sides.[50]  Indeed, both
bondholders and the Oversight Board have stated their support for the RSA as the basis for a
PREPA plan, with the parties needing only to reach agreement on what a non-legislated solution
entails.[51]

---

[49] October Order Imposing Deadlines at 3-4.  The October Order Imposing Deadlines is not the only example of court-imposed deadlines leading to positive results.  In COFINA, this Court entered an order implementing a protocol that provided a clear structure and timeline for resolution of the COFINA Title III case.  *See* Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute [Case No. 17-03283, Dkt. No. 996].

[50] *See, e.g.,* Reorg, *Pierluisi Urges Oversight Board to Expedite Debt Restructuring, Warns Proposed Budget Will Not Fully Comply with Current Fiscal Plan; Jaresko Reiterates Goal for Commonwealth, PREPAA to Exit Bankruptcy This Year*, (Jan. 29, 2021, 5:05 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=130939 (Natalie Jaresko quoted as stating "As it is today, we haven't renegotiated [the RSA] yet; we are still trying to figure out how to implement the RSA if it is possible.").

[51] Reorg, *Oversight Board Approves Resumption of Negotiations Around Proposed Commonwealth Plan, Clears PRASA Refinancing, Aims for PREPA Title III Exit 'on the Basis' of Current RSA* (Nov. 20, 2020, 5:49 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=124792 (Natalie Jaresko quoted as stating at a public hearing that

---

- 19 -

47.     As this Court has acknowledged, "there probably will never be a time when the unexpected cannot be expected to occur."[52]   A confirmable plan is necessary for PREPA and Puerto Rico to be able to move forward as contemplated by PROMESA.  But the parties have waited for five years for a plan process to start.

48.     The requested April 15, 2022 date to file a proposed PREPA plan is reasonable in these circumstances where: (i) the PREPA plan will be less complex than a Commonwealth plan that dealt with multiple debtors, (ii)  there are fewer creditor constituency groups to deal with than in connection with the Commonwealth plan, (iii) the Oversight Board and government officials whose participation and consent are required have been in place for months, and the composition of the Oversight Board will not change imminently, (iv) there is no upcoming holiday season, and (v) the contours of a deal are known to the parties.  Further, the proposed schedule contemplates PREPA's emergence from Title III before the end of this year, which is in line with the Government Parties' previously stated expectations and, again, is reasonable in light of the circumstances of this case.

## CONCLUSION

49.     The Ad Hoc Group respectfully requests that the Court enter two orders, each substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested in this Motion and such other and further relief as the Court deems just and proper.

---

the goal of the Oversight Board is to end PREPA's bankruptcy "as soon as reasonably possible, and we are looking for every way to do that on the basis of the RSA that has been filed in the Title III court.").

[52] *See* October Order Imposing Deadlines at 3.

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 9013-1 AND THE CASE MANAGEMENT PROCEDURES ORDER</u>

Pursuant to Local Rule 9013-1 and ¶ I.H of the Fifteenth Amended Case Management Procedures Order, the Ad Hoc Group hereby certifies that it has (a) carefully examined the matter and concluded that there is a true need for an urgent hearing; (b) not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.  **<u>The Oversight Board has advised the Ad Hoc Group that it will not consent to the relief requested in this Motion</u>**.

We hereby certify that, on this same date, we electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

Dated: San Juan, Puerto Rico
        February 18, 2022

**TORO COLÓN MULLET P.S.C.**
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

/s/ Manuel Fernández-Bared
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204204
E-mail: mfb@tcm.law

/s/ Linette Figueroa-Torres
LINETTE FIGUEROA-TORRES
USDC-PR No. 227104
E-mail: lft@tcm.law

/s/ Nayda Perez-Roman
NAYDA PEREZ-ROMAN
USDC–PR No. 300208
E-mail: nperez@tcm.law

*Counsel for the Ad Hoc Group of PREPA Bondholders*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000

/s/ Amy Caton
AMY CATON*
THOMAS MOERS MAYER*
ALICE J. BYOWITZ*
Email:  acaton@kramerlevin.com
        tmayer@kramerlevin.com
        abyowitz@kramerlevin.com

*Admitted Pro Hac Vice

*Counsel for the Ad Hoc Group of PREPA Bondholders*

- 22 -