UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF No. 19980** |

**MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO REQUESTING ORDER APPROVING PROPOSED LIST OF
MATERIAL INTERESTED PARTIES PURSUANT TO THE PUERTO RICO
RECOVERY ACCURACY IN DISCLOSURES ACT**

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"),

the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and

Transportation Authority ("HTA"), the Employees Retirement System of the Government of the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"),

and the Puerto Rico Public Buildings Authority ("PBA," and collectively with the Commonwealth,

COFINA, HTA, ERS, and PREPA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico*

*Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this

motion (the "Motion") submitting as **Exhibit A** hereto the List of Material Interested Parties (the

"MIP List") pursuant to the Court's *Order Concerning Compliance with the Puerto Rico Recovery*

*Accuracy in Disclosures Act* [ECF No. 19980] (the "Order") and pursuant to the *Puerto Rico*

*Recovery Accuracy in Disclosures Act*, Pub. L. No. 117-82 ("PRRADA").  In support of the

Motion, the Oversight Board respectfully states as follows:

## BACKGROUND

1.       Under Title III of PROMESA, the Oversight Board is authorized to file debt-

restructuring cases on behalf of the Commonwealth and its covered instrumentalities.  PROMESA

§ 315.   On May 3, 2017, the Oversight Board commenced the first of these cases, for the

Commonwealth.  *See* Case No. 17-BK-03283-LTS.  Since then, it has initiated cases under Title

III of PROMESA for COFINA (Case No. 17-BK-3284-LTS on May 5, 2017), ERS (Case No. 17-

BK-3566-LTS on May 21, 2017) HTA (Case No. 17-BK-3567-LTS on May 21, 2017), PREPA

(Case No. 17-BK-4780-LTS on July 2, 2017), and PBA (Case No. 19-BK-5523-LTS on September

27, 2019).   Underscoring the historic nature of the restructuring of the Commonwealth and its

covered instrumentalities, the number of claims filed against the Debtors total over 180,000 and

represent over $43 trillion in asserted debt.  These are broken down by Debtor as follows:

| Debtor | Number of Claims |
|---|---|
| Commonwealth | 117,251 |

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

| | |
|---|---|
| ERS | 53,335 |
| PREPA | 4,524 |
| COFINA | 3,095 |
| HTA | 2,278 |
| PBA | 398 |

2.      On February 5, 2019, after significant negotiations between relevant creditors and other stakeholders under the auspices of judicial mediators, the Court entered an order confirming a plan of adjustment for COFINA.  *See Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation*, Case No. 17-BK-3284-LTS [ECF No. 561] (the "COFINA Confirmation Order").[3]  Recently, on January 18, 2022, the Court entered an order confirming a joint plan of adjustment for the Commonwealth, ERS, and PBA.  *See Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, Case No. 17-BK-03283-LTS [ECF No. 19813] (the "Confirmation Order").

3.      On January 20, 2022 (the "Enactment Date"), President Joseph R. Biden Jr. signed PRRADA into law.  PRRADA sets forth disclosure requirements for professional persons seeking compensation pursuant to sections 316 and 317 of PROMESA after PRRADA's enactment.

4.      In connection with such disclosures, PRRADA requires the Oversight Board to submit an MIP List.  The MIP List must include the following: "(A) the debtor; (B) any creditor;

---

[3] The COFINA Confirmation Order was subsequently affirmed on appeal.  *See Pinto-Lugo v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 987 F.3d 173 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 74 (2021); *Cooperativa de Ahorro y Credito Dr. Manuel Zeno Gandia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 989 F.3d 123 (1st Cir. 2021).  Accordingly, the plan of adjustment for COFINA is final.

3

(C) any other party in interest; (D) any attorney or accountant of—(i) the debtor; (ii) any creditor; or (iii) any other party in interest; (E) the [U.S. Trustee] and any person employed in the office of the [U.S. Trustee]; and (F) the Oversight Board, including the members, the Executive Director, and the employees of the Oversight Board." PRRADA § 2(c)(2). PRRADA also provides "any person with a claim . . . below a threshold dollar amount established by the court that is consistent with the purpose of this Act" may be excluded from the MIP List. *Id.* § 2(c)(3).

5.      On January 31, 2022, at the Court's direction, the Oversight Board, along with the Office of the United States Trustee (the "U.S. Trustee") and the Fee Examiner, filed a joint informative motion responding to various questions and issues raised under PRRADA by the Court. *See Joint Informative Motion of Financial Oversight and Management Board for Puerto Rico, Fee Examiner, and U.S. Trustee in Compliance with Court Order Regarding Enactment of the Puerto Rico Recovery Accuracy in Disclosures Act* [ECF No. 19964] (the "Joint Informative Motion"). The Joint Informative Motion addressed a number of issues, as the Court directed, including the Oversight Board's proposal for the threshold amounts for each of the Debtors. *See Order Directing Parties to Meet and Confer Regarding the Enactment of the Puerto Rico Recovery Accuracy in Disclosures Act* [ECF No. 19859] ¶ 2.

6.      Due to the number and magnitude of claims and the late stages of these cases, the Oversight Board proposed a materiality threshold of $1 million for claims asserted against the Commonwealth and COFINA, and $500,000 for claims asserted against HTA, ERS, PBA, and PREPA. *See* Joint Informative Motion ¶ I.B. The Oversight Board also proposed certain additional limitations as to which persons or entities would be included on the MIP List. The Joint Informative Motion does not include any recommendations by the Oversight Board regarding MIP Lists for future Title III cases.

7.      Following submission of the Joint Informative Motion, the Court entered the Order, in which it directed the Oversight Board to file a motion seeking approval of a proposed MIP List for each Debtor and a threshold claim amount for each Title III case.  *See* Order ¶ 1.

## CREATION OF MIP LIST

8.      Pursuant to the Order and consistent with the proposals previously described, the Oversight Board submits a proposed MIP List as **Exhibit A** hereto.  Each person or entity on the MIP List is a "Party" and together they are the proposed Material Interested Parties.  In creating the MIP List, the Oversight Board endeavored to identify creditors and material parties in interest consistent with Congress's goals in enacting PRRADA, while avoiding imposing an impracticable and unwarranted time-consuming task on the Court and all parties seeking compensation under PROMESA sections 316 and 317.  The Oversight Board applied certain guiding principles to identify which creditors would be included on the MIP List.  The Oversight Board submits these principles will avoid overburdening the Court, the U.S. Trustee, the Fee Examiner, and the professionals required pursuant to PRRADA to file disclosures identifying connections with parties on the MIP List, including on-island professionals who do not have resources to evaluate potential connections with tens of thousands of entities holding minor claims against the Debtors.

9.      Accordingly, the Oversight Board applied the following guidelines in preparing the MIP List:

10.      *First*, to comply with PRRADA, the MIP List contains the following schedules:

- Schedule 1: Debtors

- Schedule 2: Current Oversight Board Executive Director, Members, and Staff

- Schedule 3: U.S. Trustee Personnel for the District of Puerto Rico

5

- Schedule 4: Retained Professionals (with individual sub-schedules listing retained professionals for the Commonwealth, ERS, PBA, PREPA, and HTA)

- Schedule 5: Other Parties in Interest (with individual sub-schedules listing other parties in interest for the Commonwealth, ERS, PBA, PREPA, and HTA)

- Schedule 6: Statutory Committee Members

- Schedule 7: Plan Support Agreement ("PSA") Parties (with individual sub-schedules listing PSA parties for the Commonwealth, ERS, PBA, PREPA, and HTA)

- Schedule 8: Material Creditors (with individual sub-schedules for creditors with Active Claims (as defined below) against the Commonwealth, ERS, PBA, PREPA, HTA, and COFINA)[4]

- Schedule 9: Inactive Bondholder Claims (with individual sub-schedules for bondholders with inactive claims against the Commonwealth, ERS, PBA, PREPA, HTA, and COFINA)

For Other Parties in Interest (Schedule 5), PSA Parties (Schedule 7) and Material Creditors (Schedule 8), each Party's associated counsel and accountants and/or financial advisors (to the extent such professionals are reasonably accessible by the Oversight Board as discussed below) are identified in the same row.  For ease of review, Parties listed on these three schedules are sorted alphabetically by counsel name, as many Parties are represented by the same counsel.

11.    *Second*, as noted above, the MIP List only includes creditors with Active Claims (as defined below) greater than $1 million (for claims against the Commonwealth), and greater than $500,000 for claims against HTA, ERS, PBA, PREPA, or COFINA.[5]  These thresholds

---

[4] Where applicable, schedules have been broken into sub-schedules by Debtor to ease professionals' preparation of disclosures as required by PRRADA.  For example, if a professional has only provided services related to PREPA, he or she may check for connections among the parties listed on Schedules 4(D), 5(D), 7(D), and 8(D), as well as Schedules 1, 2, 3, and 6, which relate to all Debtors.

[5] The Joint Informative Motion proposed a $1 million threshold for COFINA, as substantially all claims against COFINA have already been resolved, and the plan of adjustment for COFINA has been confirmed and became effective.  However, even after lowering this threshold from $1 million to $500,000, only two Active Claims (as defined below) against COFINA remain.  In addition, COFINA is a reorganized debtor, which distinguishes it from

respect Congressional intent, as reflected in the Senate amendments to the bill, to ensure only material connections between creditors and professionals are disclosed. *See* Sen. Rpt. 117-48 at 8 ("Rather than requiring disclosure of a professional's connection with every retiree eligible to receive a government pension, for example, use of the material interested parties list will enable the court to focus its attention on connections that pose a more substantial risk of compromising a professional's impartiality, based upon a dollar threshold or other criteria established by the court."). The Oversight Board's proposed threshold of $1 million for the Commonwealth is based on its high volume of creditors and the aggregate amount of claims filed against the Commonwealth. Thus, setting a higher threshold for the Commonwealth will achieve Congress's stated goal of not denying payment to "innocent professionals whose connections pose no serious threat to the integrity of the cases," *see id*. at 14, while also preventing imposing a tremendous burden on professionals (and eventually, a financial burden on the Debtors) who would otherwise need to check for connections with tens of thousands, or even hundreds of thousands of claimants.

12. *Third*, Schedules 8(A) through 8(F) of the MIP List only include claims that have not been expunged, settled, withdrawn, or otherwise resolved ("Active Claims"). For example, claims that have been resolved in the Administrative Claims Reconciliation ("ACR") process,[6] claims that were resolved by the Confirmation Order, and claims that were settled pursuant to settlement agreements approved by the Confirmation Order are not included in the definition of Active Claims. Limiting claims in this way is warranted, given Congress's intent to provide for

---

the Commonwealth, ERS, PBA, HTA and PREPA, whose plans of adjustment have either not yet become effective or have not been proposed. PRRADA does not specifically address reorganized debtors. Thus, the Oversight Board submits the only relevant connections that can arise with respect to a professional representation in the COFINA case are with respect to its limited remaining claims and therefore there is no reason to include on the MIP List certain categories of parties in interest that relate to COFINA, including retained professionals, non-creditor parties in interest, or parties to the PSA in support of the confirmed plan of adjustment for COFINA.

[6] Claims to which objections have been filed but such objections have not yet been adjudicated are included in the MIP List (assuming such claims meet the materiality threshold and other criteria for inclusion outlined herein).

the disclosure of "*relevant* connections" between creditors and professionals. *See* Sen. Rpt. 117-48 at 11. Persons or entities whose claims have been settled, expunged, withdrawn, or otherwise resolved no longer pose any relevant threat to professionals' impartiality and ability to represent their clients' interests in a disinterested manner. In addition, application of the disclosure process to Active Claims is supported by PRRADA's clear intent to apply prospectively.[7] Notwithstanding the foregoing, due to the importance of the disclosure process and certain settlements to the resolution of the Debtors' Title III cases, the MIP List also includes material parties in interest and bondholders[8] (and, if known, their attorneys and accountants) (a) who signed the key plan support agreements, including the GO/PBA PSA Creditors,[9] the HTA/CCDA PSA Creditors,[10] the PRIFA

---

[7] PRRADA § 2(e) is the only subsection of PRRADA imposing consequences, and by its terms, it applies to fee applications filed after the Enactment Date. A contrary interpretation would violate both the text and legislative history of PRRADA. Under the two-step process set forth in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), to determine retroactivity of a statute, a court must first look to whether Congress expressly described retroactivity in the statutory text, or if the relevant legislative history supports applying the statute retroactively. *See Lattab v. Ashcroft*, 384 F.3d 8, 14 (1st Cir. 2004). Here, PRRADA contains no language stating that it was intended to apply retroactively, and subsection § 2(e) in fact supports the opposite as it only imposes consequences of failing to comply with PRRADA's other sections on fees filed after the Enactment Date. *See* PRRADA §§ 2(e)(2)(A) (denying compensation if, during a professional's employment in connection with the case, the professional "*is* not a disinterested person) (emphasis added); PRRADA §§ 2(e)(2)(B) (denying compensation if a professional "*represents* or *holds* an adverse interest in connection with the case") (emphasis added). *Landgraf*'s second step is to evaluate whether retroactive application of the statute would have "impermissible effects." Here, requiring professionals to comply with PRRADA's disclosure requirements now for services already rendered would be impermissible. *See Martin v. Hadix*, 526 U.S. 343, 358 (1999) (application of statute to reduce fees incurred prior to its enactment would have impermissible effects on attorneys who incurred such fees). This is especially so as 11 U.S.C. § 327, which governs employment of professionals in chapter 11 cases, was not incorporated into PROMESA. *See* Sen. Rpt. 117-48 ("Section 301 of PROMESA incorporates by reference many of the provisions of the Bankruptcy Code governing private bankruptcy cases, but not section 327 or any of the other sections governing the employment of professionals.").

[8] Notably, with respect to bondholders, in most cases, the Oversight Board does not know who the beneficial owner is. Instead, the Oversight Board only knows the "street name" that is holding the bonds in trust for the beneficial holder, except for the bondholders who signed restructuring support agreements.

[9] As defined in § 1.272 of the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2022 [ECF No. 19784] (the "Plan").

[10] As defined in § 1.297 of the Plan.

PSA Creditors,[11] the DRA Parties,[12] parties who signed the ERS Stipulation,[13] and parties who signed the AFSCME Plan Support Agreement,[14] and, on a separate schedule for use if the Court desires, (b) bondholders who were petition date creditors who the Oversight Board has been able to identify by computer from its records.

13.     *Fourth*, many creditors are individual participants in large, multi-plaintiff lawsuits currently pending against one or more of the Debtors.  Although the total value of the claims asserted (in the aggregate) against the Debtors in such lawsuits may exceed the threshold amount, the individual plaintiffs' claims may not.  Furthermore, these lawsuits often involve hundreds or, in some cases, over one thousand individual claimants.  Rather than listing each individual creditor, the MIP List contains the name of lead counsel for the plaintiffs in such cases, as well as any named representative plaintiffs.  This, too, fulfills Congress's goal of ensuring only relevant connections between professionals and creditors are identified.  *See e.g.* Sen. Rpt. 117-48 at 8 (inefficient to disclose professional's connection "with every retiree eligible to receive a government pension").

14.     Applying the limitations in paragraphs 11 through 13 above, the total number of Active Claims (not including their lawyers and accountants, or parties in interest and their lawyers and accountants) for each Debtor is as follows:

| Debtor | Threshold | Active Claims With Threshold Applied | All Creditors With Threshold Applied |
|---|---|---|---|
| Commonwealth | $1 million | 695 | 1,225 |

---

[11] As defined in § 1.410 of the Plan.

[12] Collectively, the GDB Debt Recovery Authority (the "DRA"), AmeriNational Community Services LLC as servicer for the DRA, and Cantor-Katz Collateral Monitor LLC, as collateral monitor for Wilmington Trust N.A.

[13] As defined in § 1.231 of the Plan.

[14] As defined in § 1.60 of the Plan.

9

| | | | |
|---|---|---|---|
| PREPA | $500,000 | 324 | 389 |
| HTA | $500,000 | 137 | 227 |
| PBA | $500,000 | 61 | 76 |
| ERS | $500,000 | 57 | 277 |
| COFINA | $500,000 | 2 | 314 |

15.     *Fifth*, PRRADA provides the MIP List shall include "any other party in interest" (*see* § 2(c)(2)(C)), but does not define that term. In determining which entities and individuals qualify as "parties in interest" and should therefore be included in the MIP List, the Oversight Board looked to Rule 2014 of the Federal Rules of Bankruptcy Procedure, which similarly requires professionals to identify connections with "the debtor, creditors, [and] any other party in interest," and section 1109 of the Bankruptcy Code, which grants standing to "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity holders' committee, a creditor, an equity security holder, or any indenture trustee." Fed. R. Bankr. P. 2014(a); 11 U.S.C. § 1109(b). The Bankruptcy Code does not define "party in interest." Accordingly, the Oversight Board used the categories set forth in the bankruptcy provisions referencing parties in interest, and supplemented these categories with additional types of parties in interest required by PRRADA. Notwithstanding the foregoing, Schedule 5 of the MIP List includes other entities that have played a pivotal role in the Debtors' Title III cases but do not fall within these categories of parties in interest either because they are not creditors or they do not have Active Claims. Accordingly, along with creditors of the Debtors, the MIP List includes the following categories of parties in interest:

- The Debtors (Schedule 1);

- The Oversight Board's current Executive Director, members, and staff (Schedule 2);

10

- The current personnel at the United States Trustee for the District of Puerto Rico (Schedule 3);

- Relevant professionals retained by parties in interest (Schedule 4);

- Other parties that have played a key role in the Title III cases (Schedule 5); and

- Statutory Committee Members, including the Official Committee of Unsecured Creditors (Schedule 6).

16. *Sixth*, as proposed in the Joint Informative Motion (¶ I.C.a.i.2), the proposed MIP List includes creditors' and parties in interests' attorneys to the extent such attorneys were identified from proofs of claim filed in the respective Title III cases, or, if no attorneys were listed on a proof of claim, from any notices of appearances filed on behalf of such creditor or party in interest on the Debtors' Title III dockets. The Oversight Board also included attorneys and accountants or financial advisors who are on the Fee Examiner's list of professionals who have filed interim fee applications.[15] Similarly, the Oversight Board listed financial advisors to creditors or other parties in interest on the MIP List if it became aware of such advisors' identity in the course of its work in the Title III cases (*e.g.*, if a financial advisor attended or worked on behalf of a creditor in a mediation session and a computerized record of same was created and located). Although the Oversight Board is not aware whether such financial advisors are "accountants" of the respective creditors or parties in interest, in an abundance of caution, the Oversight Board has included such firms.

WHEREFORE the Oversight Board respectfully requests the Court to approve the MIP List as submitted hereto as **Exhibit A**, and grant it such other relief that is just.

*[Remainder of Page Intentionally Left Blank]*

---

[15] In the Joint Informative Motion, the Oversight Board recommended that it list advisors "it can identify from proofs of claim or *other pleadings listing an entity's advisors*." Joint Informative Motion ¶ I.C.a.i.2 (emphasis added). In line with that, the Oversight Board has added to the MIP List the names of attorneys who filed a notice of appearance and/or a fee application.

11

Dated: February 22, 2022
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
205 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-1813
Fax: (787) 753-8944
Email: Hermann.bauer@oneillborges.com

/s/ *Martin J. Bienenstock*

Martin J. Bienenstock
Brian. S. Rosen
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
      brosen@proskauer.com
      ebarak@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

**Exhibit A**

**Proposed MIP List**