UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------- X
                                                                    :
In re:                                                              :
                                                                    :
                                                                    :
THE FINANCIAL OVERSIGHT AND                                         :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                   :  Title III
                                                                    :
    as representative of                                            :  Case No. 17-BK-3283 (LTS)
                                                                    :
THE COMMONWEALTH OF PUERTO RICO et al.,                             :  (Jointly Administered)
                                                                    :
                                                                    :
    Debtors.¹                                                       :
------------------------------------------------------------------- X
                                                                    :
In re:                                                              :
                                                                    :
                                                                    :
THE FINANCIAL OVERSIGHT AND                                         :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                   :  Title III
                                                                    :
    as representative of                                            :  Case No. 17-BK-4780 (LTS)
                                                                    :
PUERTO RICO ELECTRIC POWER AUTHORITY                                :  This filing relates only to
                                                                    :  Case No. 17-BK-4780 (LTS)
                                                                    :
                                                                    :
    Debtor.                                                         :
------------------------------------------------------------------- X
```

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO AD HOC
GROUP OF PREPA BONDHOLDERS' MOTION PURSUANT TO SECTION 312 OF
PROMESA AND SECTION 105 OF THE BANKRUPTCY CODE TO COMPEL
MEDIATION AND IMPOSE DEADLINES FOR A PREPA PLAN OF ADJUSTMENT**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby submits this Objection (the "Objection") to the *Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Compel Mediation and Impose Deadlines for a PREPA Plan of Adjustment* [Docket No. 20176] (the "Motion") as well as the related joinder thereto [Docket No. 20185].[3] In support of this Objection, the Committee states as follows:

## PRELIMINARY STATEMENT

1. The Motion makes plain what the Committee has long known and has been asserting in its filings with this Court for nearly two years: despite the Oversight Board's repeated assertions that it remains committed to the settlement in the RSA it entered into with PREPA bondholders in May of 2019, no actionable settlement agreement exists any longer—and apparently has not for some time.[4] If an agreement did exist, the PREPA bondholders would not have filed the Motion asking the Court, apparently against the Oversight Board's wishes, to (i) appoint a mediator to facilitate a resolution of the outstanding disagreements between the Oversight Board and the PREPA bondholders and (ii) regardless of the outcome of that mediation, impose binding deadlines on the Oversight Board to file and prosecute a plan of adjustment for PREPA.

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[4] If any further proof of this were needed, it was supplied by AAFAF Executive Director Omar Marrero who earlier this month stated, with respect to the RSA, that "we will most likely have to go back to the bargaining table in the next 60 days." *AAFAF Chief Marrero Signals PREPA RSA 'Most Likely' Will Need Renegotiation, Given Lack of Legislative Support*, Reorg Research (Feb. 7, 2022, 09:43 AM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=168129.

2. As the Committee has argued previously, because no actionable settlement exists, it is inappropriate for the Oversight Board to let the 9019 Motion (which seeks approval of such nonexistent settlement) languish on the docket for the sole purpose of "occupying the field" and preventing the Committee—and any other party in interest—from objecting to the PREPA bondholders' claims. This, however, is precisely the position the Oversight Board continues to take. Just last month, the Oversight Board reiterated that the "continued adjournment" of the 9019 Motion—and therefore the continued stay of the Committee's claim objection—is necessary because a "consensual restructuring with bondholders remains possible."[5]

3. The PREPA bondholders now seek to accomplish this same objective by different means: they ask the Court to impose a plan and confirmation schedule and implement a mediation process that would not only continue to bar the Committee from pursuing its objection to the PREPA bond claims, ***but would apparently not even permit the Committee to participate in the mediation until after talks between the Oversight Board and the PREPA bondholders have concluded***—and only then if the mediator believes that such participation "may broaden support for a PREPA plan of adjustment to be filed by the Oversight Board."[6] This proposed process is unfair and unlikely to develop consensus, as it improperly treats PREPA's entire title III case as a two-party dispute, ignoring the hundreds of millions of dollars of claims of PREPA's unsecured creditors and the interests of its other stakeholders.

4. To be clear, the Committee is not opposed to mediation to try to reach a global resolution with all parties in interest, including the Committee, regarding a PREPA plan of adjustment. No global resolution will occur, however, if the PREPA bondholders and the

---

[5] Reply to Comm. Resp. to Jan. Status Rep. of the Gov't Parties Regarding Covid-19 Pandemic& 9019 Mot. ¶ 4 [Docket No. 19931].

[6] Mot., Ex. A, Proposed Order ¶ 3.

Oversight Board are allowed to negotiate a deal among themselves first and then attempt to involve the Committee and other parties later. This approach has not succeeded in the past in these cases—including when the Oversight Board mediated unilaterally with the HTA bondholders in the HTA case, relegating the Committee to the sidelines until after the Oversight Board reached a deal with the HTA bondholders—and will inevitably fail again here. Any mediation process must involve all of PREPA's key stakeholders, including most notably the Committee.[7]

5. Nor does it make any sense to limit any mediation (to the extent ordered by the Court) to the "implementation" of the RSA, as the PREPA bondholders request. Mediation must instead reexamine the underlying economics and legal structure of the settlement embodied in the RSA because the legal landscape has fundamentally changed since the RSA's execution in May of 2019. Most significantly, this Court has since held in the lift-stay litigation in connection with the "clawback" dispute that HTA monolines and bondholders (who are in substantially the same position as PREPA bondholders as it relates to their legal entitlement to revenues collected by the applicable bond issuer) do not have even a "colorable claim to equitable or beneficial ownership" of revenues that have not been *deposited* with the applicable fiscal agent. Similarly, the Committee has argued in its objection to the PREPA bond claims that the collateral securing the PREPA bonds is limited to the cash held in certain specified accounts in the amount of approximately $8.8 million (as of the petition date), or approximately 0.1% of the $8.5 billion in

---

[7] A few hours before the filing deadline, the Committee learned that the PREPA bondholders have agreed that the fuel line lenders (who, like the Committee, have opposed the RSA and were excluded from the negotiations surrounding it) will be included in the mediation as "Initial Mediation Parties." While the Committee supports an inclusive mediation process, it is not the PREPA bondholders' prerogative to act as gatekeepers to the mediation. That decision belongs to the Court, not to parties to the proposed mediation. To the extent the proposed order is modified to reflect the agreement between the PREPA bondholders and the fuel line lenders, it is all the more important that the Committee not be excluded from the mediation and should have equal participation rights.

3

PREPA bond claims and that, because the PREPA bonds are non-recourse, the PREPA bondholders would have no "deficiency claim" for the difference between the face amount of their claim and the value of their collateral. Accordingly, whatever the reasonableness of the 9019 Motion prior to this Court's ruling in the lift-stay litigation, it would be illogical, not to mention a tremendous waste of time and resources, to continue to cling to a settlement that promises to provide PREPA bondholders with a recovery as high as 90%.

6. For all these reasons, and as further detailed below, to the extent the Court orders mediation, all key stakeholders, including the Committee, should have an equal opportunity to participate, and the mediation should not be geared toward simply upholding the existing RSA. Moreover, if the Oversight Board opposes mediation and the Court denies the request for mediation, or if the mediation process fails, it should be clear that a consensual path forward with PREPA's bondholders does not exist, and the 9019 Motion should therefore be terminated to permit the Committee to prosecute its objection to the PREPA bond claims.

7. Finally, the timeline the Motion proposes for plan confirmation and other events is also problematic. The proposed timeline only makes sense if a truly global consensual agreement has been reached, which requires, in the first instance, an inclusive mediation process. As the heavily contested and drawn-out Rule 9019 process demonstrated, it is virtually guaranteed that a plan based on a deal reached only by the PREPA bondholders and the Oversight Board but opposed by other major creditor constituencies cannot be confirmed on the requested timetable.

# OBJECTION

### I. Mediation Should Not Be Piecemeal and Should Include Committee Alongside the Oversight Board and PREPA Bondholders

8. Experience in these title III cases shows that a piecemeal approach to mediation—where the Oversight Board first negotiates a deal with bondholders and only after a deal has been reached (and all assets have been allocated) turns to other creditors—is not an effective method for reaching global consensus.

9. For example, in HTA's title III case, the Oversight Board negotiated a plan support agreement exclusively with certain HTA bondholders and did not include the Committee (or other, non-bondholder creditors). These negotiations unsurprisingly have resulted in a plan support agreement for HTA pursuant to which HTA has committed all its resources for the repayment of HTA bonds (and even requiring the Commonwealth to provide additional cash funding to HTA), leaving practically no HTA assets for the payment of HTA's general unsecured creditors that hold claims of hundreds of millions of dollars.

10. It would be one thing if the Oversight Board had attempted to justify this process—and its outcome—on the basis that the HTA bondholders are secured by all of HTA's assets. But this is plainly not the case, as the HTA bondholders' security interest is limited to a relatively small amounts in specified accounts held by the fiscal agent for the HTA bonds. Indeed, the Court has already ruled, in the lift-stay litigation, that HTA bondholders do not have even "a colorable claim to equitable or beneficial ownership of Revenues that have not been deposited with the Fiscal Agent as contemplated by the Bond Resolutions." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 618 B.R. 619, 630, 636, 640 (D.P.R. 2020) (subsequent history omitted).[8]

---

[8] As explained below, these rulings have other important consequences for the RSA with the PREPA bondholders and the relief requested in the Motion.

5

The Oversight Board's decision to negotiate solely with one group of creditors (the HTA bondholders) to the exclusion of all others was wrong from the beginning and will lead to an outcome that is fundamentally unfair.[9]

11. The Court should not allow history to repeat itself in PREPA's title III case. If the Court orders mediation, the Committee must be allowed to participate alongside the Oversight Board and the PREPA bondholders from the outset.

II. **Given Fundamental Change in Legal Landscape, Any Mediation Must Re-examine Settlement Embodied in RSA**

12. The Motion asserts that the proposed mediation should focus on "Plan B, an alternative path forward on the RSA if the required legislation is not passed,"[10] and asks the Court to appoint the mediator to help negotiate "a path forward if the RSA-required legislation is not passed."[11] In other words, and even though the Oversight Board has not engaged with the PREPA bondholders for over two years, the bondholders view the proposed mediation as designed to get to the predetermined result of the same outcome as under the prior settlement, with the only question being whether a "Plan B" is necessary to get there. It should be no secret as to why the PREPA bondholders would seek to limit the mediation in this manner—as the Committee has explained elsewhere, the settlement embodied in the RSA is a remarkably, and unreasonably, good deal for the bondholders. The Committee respectfully submits, however, that any mediation should not be constrained in this manner.

---

[9] At this time, no HTA plan of adjustment has been filed with the Court. The Committee reserves all its rights with respect to any HTA plan that does not provide for adequate treatment of HTA's general unsecured creditors.

[10] Mot. ¶ 40.

[11] Mot. ¶ 7.

13. As explained in the Committee's claim objection, the PREPA bond claims of approximately $8.5 billion are secured only by approximately $8.8 million actually deposited into accounts held by the PREPA bond trustee (as of the petition date). Furthermore, because the bonds are non-recourse, the PREPA bondholders have no claim against, and are not entitled to any distributions from, PREPA for any difference between the face amount of the bonds and the funds on deposit in the specified accounts. For that reason, the Committee has long asserted that the settlement reflected in the RSA, which would provide PREPA bondholders with a recovery that could be as high as 90%, is an awful deal for PREPA and for its non-bondholder creditors, and is plainly unreasonable under Bankruptcy Rule 9019.

14. Of course, this is not new to the Court, and the Committee is not seeking to re-litigate its objection to the 9019 Motion in the context of this Motion. It is, however, critical to understand that the legal landscape—specifically, this Court's rulings in the lift-stay litigation—has fundamentally changed since the 9019 Motion was first filed on May 10, 2019.

15. In January 2020, certain monoline insurers moved for relief from the automatic stay in HTA's title III case to permit them to apply certain revenues collected by the Commonwealth and by HTA. The Court explained that when a movant seeks stay relief to pursue remedies with respect to specific assets, the threshold question is whether the movant has established even a colorable claim in support of its assertion that it has rights in the specific property that is the subject of the lift stay motion. As the Court recognized, "[t]his is a low threshold" and is usually "not a difficult standard to meet." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 618 B.R. at 630. **Nonetheless, the Court held that the movants did not have even a colorable claim to any form of property right (whether direct ownership or a lien) in any of the**

7

***assets targeted by the HTA monolines other than revenues <u>actually</u> collected and <u>actually</u> deposited into certain designated accounts.*** *Id.* at 637-39.

16. In so holding, the Court rejected the HTA monolines' contention (among others) that they held a security interest (i) in revenues collected but not actually deposited into the specific accounts identified in the bond resolutions and (ii) in HTA's right to receive the revenues. This ruling—which was echoed in the Court's final (as opposed to preliminary) ruling denying the lift stay motion and was affirmed by the First Circuit—has important consequences on the settlement embodied in the RSA and on the scope of any mediation. The PREPA bondholders have made arguments that are essentially identical to those raised by the HTA monolines in the lift-stay litigation. Like the HTA monolines, they deny that their collateral is limited to the amounts actually deposited into the specific funds identified in the relevant bond documents. Like the HTA monolines, they assert that their security interest extends to moneys not yet collected at all.[12] Like the HTA monolines, they ask the Court to ignore the plain language of the granting language of the relevant bond documents.[13] Finally, like the HTA monolines, the PREPA bondholders hold non-recourse bonds, with remedies exercisable only

---

[12] The Committee notes that the PREPA bondholders continue to take this position, asserting that the bonds they hold "are secured by a pledge of all current and future revenues, receipts, and other income derived by PREPA from the sale or distribution of electricity . . . ." Mot. ¶ 8. This was never correct, and is directly contrary to the Court's lift-stay rulings.

[13] The relevant clauses of the respective documents are strikingly similar. The HTA resolutions that the Court held did not create the broad security interest asserted by the HTA monolines provide that such principal, interest and premiums are payable solely from Revenues and other moneys deposited to the credit of the Revenue Fund and from any funds received by the Authority for that purpose from the Commonwealth, which Revenues, moneys and funds are hereby pledged (with such priorities with respect to the use and disposition of Revenues as are in this Resolution specified) to the "payment thereof in the manner and to the extent hereinabove particularly specified." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 618 B.R. at 627. The trust agreement for the PREPA bonds, which similarly grants a security interest only in funds actually deposited in the relevant accounts, provides that: "The moneys ***in the Sinking Fund*** shall be held by the Trustee in trust, and the moneys ***in the [Subordinate Funds]*** shall be held by the Authority in trust, separate and apart from all other funds of the Authority, and . . . ***shall be subject to a lien and charge in favor of the holders of the bonds*** issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred, as herein provided." Trust Agreement § 507(h). A copy of the Trust Agreement was filed as Exhibit 6 to Docket Number 1707 in case number 17-4780.

8

against the specified collateral—which means that, pursuant to section 927 of the Bankruptcy Code, the bondholders likely have **no claim** (secured or unsecured) against PREPA for the difference between the face amount of their $8.5 billion claim and the $8.8 million that is the value of their collateral.

17. In light of these developments, the settlement between the Oversight Board and PREPA bondholders in the RSA must be reevaluated. Even if that settlement were reasonable at the time of its entry in 2019 (the Committee submits it was not), it is certainly not reasonable now given the Court's rulings with respect to the HTA bond claims. Accordingly, the mediation process should not focus merely on how to "implement" the RSA but must also re-examine the terms of the underlying settlement itself.

### III. If No Mediation Is Ordered, Committee Should Be Permitted to Pursue Its Objection to PREPA Bond Claims

18. In the event that the Oversight Board opposes mediation and the Court concurs that no mediation should be ordered to resolve the disagreements between the Oversight Board and the PREPA bondholders, or if mediation occurs but is not successful, then the inescapable conclusion is that the settlement in the RSA has failed and that there is no consensual path forward with the PREPA bondholders. The only way to finally make meaningful progress in these cases at that juncture would be to permit the Committee to renew its objection to the PREPA bond claims so the Court can finally establish the true value and extent of the bondholders' claims. Accordingly, the Committee respectfully requests that, absent mediation or if mediation fails, the 9019 Motion should be dismissed to permit the Committee's objection to proceed.

## **CONCLUSION**

19.  PREPA's unsecured creditors have been relegated to the sideline of PREPA's title III case for far too long. To the extent the Court orders mediation, all key stakeholders, including the Committee, should have an equal opportunity to participate, from the outset of mediation, and the mediation should not be constrained, with only one permissible, and pre-determined, result. However, if the mediation process fails or the Court denies mediation (with the support of the Oversight Board), then the 9019 Motion should be terminated and the Committee should be permitted to prosecute its objection to the PREPA bond claims.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that (i) the Motion be denied in its current form and (ii) the Court grant relief consistent with this Objection.

Dated: February 25, 2022 By: */s/ Luc. A. Despins*

**PAUL HASTINGS LLP**
Luc. A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: */s/ Juan J. Casillas Ayala*

**CASILLAS, SANTIAGO & TORRES LLC**
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

11