# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| JUAN PEREZ COLON, ET AL., JEANETTE ABRAMS DIAZ, ET AL.,<br><br>Movants,<br><br>-against-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*,<br><br>Respondents. | Re: ECF No. 18239, 18253, 18709, 19131, 19736, 19615, 20026, 20216 |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

**DEBTOR'S OBJECTION TO URGENT MOTION
REQUESTING ORDER FOR ALLOWANCE AND IMMEDIATE PAYMENT OF
ADMINISTRATIVE EXPENSE PRIORITY CLAIM FILED BY JUDGMENT
CLAIMANTS OF THE DEPARTMENT OF TRANSPORTATION AND PUBLIC
WORKS OF THE COMMONWEALTH OF PUERTO RICO**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as its Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Urgent Motion Requesting Order for Allowance and Immediate Payment of Administrative Expense Priority Claim Filed by Judgment Claimants of the Department of Transportation and Public Works of the Commonwealth of Puerto Rico* [ECF No. 18239] (the "Motion") filed by plaintiffs in the litigations captioned *Juan Perez Colón, et al. v. Puerto Rico Department of Transportation and Public Works*, Case No. KAC 1990-0487 (the "Juan Perez Plaintiffs") and *Jeannette Abrams Díaz, et al. v. Puerto Rico Department of Transportation and Public Works*, Case No. KAC-2005-5021 (the "Jeanette Abrams Plaintiffs," and together with the Juan Perez Plaintiffs, the "Movants"), solely with respect to Movants' request for allowance and immediate payment of pre-petition back pay and attorneys' fees as administrative expenses.[3] In support of the Objection, the Commonwealth respectfully represents:

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] On February 25, 2022, the Commonwealth filed, by email to the Court, an *Urgent Omnibus Motion for Extension of Deadlines*, subsequently filed at [ECF No. 20216], requesting the Court extend the deadline to respond to the Post-Petition Portions of the Motion to March 30, 2022. Prior to filing the Motion, the Commonwealth sought Movants' consent to the requested extension, but Movants did not consent. *Id.* at ¶ 6. As of the filing of this Objection, the extension motion was pending. Accordingly, this objection addresses only the pre-petition assertions. The parties continue to engage in discussions regarding Movants' request for payment of post-petition back

2

**PRELIMINARY STATEMENT**

1. Movants assert they are entitled to administrative expense priority for pre-petition back pay and attorneys' fees awards accrued entirely prior to commencement of the Title III cases. Movants' asserted claims arise from a 2003 Commonwealth court judgment in favor of the Juan Perez Plaintiffs (the "Juan Perez Judgment") and a 2011 Commonwealth court judgment in favor of the Jeanette Abrams Plaintiffs (the "Jeanette Abrams Judgment," and together with the Juan Perez Judgment, the "Judgments"). Mot. at 4, 6. Specifically, pursuant to the Judgments, the Commonwealth is allegedly liable for (1) correction of Movants' regular rate of pay for services provided to the Commonwealth by Movants and (2) payment of the accrued wage shortfall to each employee. *Id.* at 4-6. With respect to Movants' claim for payment of an accrued wage shortfall, Movants provided a breakdown of the amounts allegedly owed prior to and after the date of the Commonwealth's Title III petition. *Id.* at 6-7. Further, Movants seeks payment of attorneys' fees purportedly accrued in connection with the *Juan Perez Colón* litigation. This Objection addresses the portion of Movants' claims attributable to the pre-petition period, which should be denied based on the assertions contained in the Motion.

2. Movants are not entitled to administrative expense priority for claims arising pre-petition. The Court already denied a substantially similar request for priority status by sustaining the Oversight Board's objection that the wage creditors' proofs of claim should be classified as prepetition, general unsecured claims and not as allowable administrative expenses. *See* Aug. 4 Hr'g. Tr. at 113:18-24. In particular, the Court noted Bankruptcy Code section 503(b)(1)(A) permits priority only for "claims arising from events that occur after the commencement of a

---

pay. The Commonwealth reserves its right to object to Movants' request for payment of post-petition back pay if the parties do not reach a consensual resolution of those issues.

3

bankruptcy case, and all of these claimants are asserting claims that long predate the debtors' Title III petitions." *Id.* Following that ruling, those claimants requested the Court's reconsideration [ECF No. 17892] (the "Reconsideration Motion"), which request is pending.

3. Here, Movants duplicate the arguments in the Reconsideration Motion and separately attempt to challenge the Court's ruling on this issue. The reasons for denying the Motion are the same as the Oversight Board articulated in its opposition to the Reconsideration Motion [ECF No. 18013] and in its opposition [ECF No. 19091] to another motion filed by counsel for Movants with substantially identical arguments [ECF No. 18282]. In sum, (1) the plain text of Bankruptcy Code section 503(b)(1)(A)(ii) limits administrative priority under the section to claims "attributable to any period of time occurring after commencement of the case", and (2) *Reading Co. v. Brown*, 391 U.S. 471 (1968) is inapplicable to Movant's prepetition transactions.

4. The Motion also seeks immediate allowance and payment of a purported award of attorneys' fees in the Juan Perez Judgment, or in the alternative, an order declaring the attorneys' award nondischargeable. Mot. at 13-17. But, Movants cite no applicable authority that would justify treating a pre-petition attorneys' fees award entered in connection with employee wage claims as either an administrative expense or a nondischargeable debt. Movants also request the payment be made now because of the Commonwealth's reported cash positions. *Id.* at 11. Payment cannot be compelled without the Oversight Board's consent pursuant to PROMESA section 305.

5. Accordingly, for the reasons set forth herein, the Motion should be denied to the extent it asserts prepetition claims.

# ARGUMENT

I. **Movants' Prepetition Claims are Not Entitled to Administrative Expense Status**

6. Movants assert several theories why, notwithstanding the prepetition nature of their asserted claim, it is nonetheless entitled to administrative expense priority. Each of these theories fails.

   A. **Neither the Statutory Text nor Case Law Supports Movants' Request for Administrative Expense Priority**

7. Movants first assert Bankruptcy Code section 503(b)(1)(A)(ii) provides the legal basis for an administrative expense priority for Movants' wage claims, and that "a majority of courts have convincingly determined" the "plain language" of the statute provides prepetition claims may be treated as administrative expense claims. Mot. at 10-11. Movants are incorrect about both the plain language of the statute and the interpretation the majority of courts have applied to that language. Section 503(b)(1)(A)(ii) plainly states the opposite: only "wages and benefits awarded . . . as back pay ***attributable to any period of time occurring after commencement of the case*** . . . without regard to the time of the occurrence of unlawful conduct . . ." are eligible for treatment as an administrative expense. 11 U.S.C. § 503(b)(1)(A)(ii) (emphasis added). The remaining context of section 503(b) is of no avail; Movants identify no portion of section 503(b) that permits administrative expense status for prepetition periods.

8. Movants' assertion to the contrary notwithstanding, court have consistently held section 503(b) does not authorize administrative expense treatment for pre-petition wage claims. The authority Movants cite—*In re Truland Group, Inc.*, 520 B.R. 197 (Bankr. E.D. Va. 2014) and *In re Philadelphia Newspapers, LLC,* 433 B.R. 164 (Bankr. E.D. Pa. 2010)—is inapplicable. In each instance, the claims arose from either the WARN Act or a severance allegation, and the liabilities asserted were determined to be "attributable to" the postpetition period, even if the

5

violation occurred prepetition. The WARN Act requires payment of sixty days of wages if employees are terminated on less than sixty days' notice. Thus, if some of the sixty days occur postpetition, some courts rule the wages due during those days are postpetition claims. Here, Movants are requesting wages for prepetition work, not postpetition work. In *Philadelphia Newspapers*, for example, the court interpreted the phrase "attributable to any period of time occurring after commencement of the case under this title" to require the claim accrue post-petition to be compensable as an administrative expense. 433 B.R. at 174-77. Similarly, the claimant in *Philadelphia Newspapers* was a discharged employee whose claim was partially based on his post-petition payments of healthcare premiums for postpetition healthcare. The court held that, "if back pay is awarded for any period of time 'attributable to any time occurring after commencement of a case' *and* the back pay meets the other requirements listed in subsection (ii), then this Court holds that back pay constitutes an allowed, administrative expense[.]" *Id.* at 175.

9. Other courts have likewise interpreted the phrase "attributable to" to refer to wages and benefits that accrue post-petition. *See, e.g.*, *In re Calumet Photographic, Inc.*, No. 14-08893, 2016 WL 3035468, at *3 (Bankr. N.D. Ill. May 19, 2016) ("Basically, the plain meaning of [section 503(b)(1)(A)(ii)] requires a court to determine if a claim relates to a post-petition time period despite the fact that the violation timing is of no regard."); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 505 B.R. 163, 167 (Bankr. D.N.J. 2014) (granting administrative expense priority to portion of claims regarding lost wages for several post-petition days thus "attributable to" post-petition period).[4] Nor does the phrase "without regard to the time of the occurrence of unlawful

---

[4] At least one court has adopted an even stricter approach, concluding that only employee claims that *vest* after the petition date are entitled to administrative expense treatment. Thus, in *Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, a group of discharged employees asserted claims against the debtor in respect of wages and benefits owed pursuant to a federal law and sought administrative expense priority for any damages awarded in the suit. 394 B.R. 765

6

conduct on which such award is based or to whether any services were rendered" alter the result: rather, that phrase brings within the statute wages owed for services rendered *post*-petition, when the illegal conduct giving rise to such wages owed occurred *pre*-petition. *In re Trump Ent. Resorts, Inc.*, No. 14-12103, 2015 WL 1084294, at *4 (Bankr. D. Del. Mar. 9, 2015) ("Regardless of when the illegal conduct occurred, in order to qualify for administrative expense priority under section 503(b)(1)(A)(ii) the damages flowing therefrom must be attributable to sometime after the Petition Date[.]").

10. As the Court recently recognized,[5] the critical fact is the timing of the consideration supplied by the creditor. Here, Movants assert liabilities associated with unpaid wages for work actually performed prior to the filing of the Commonwealth's Title III case—in some instances, a decade or more prior. Unlike severance and WARN Act liability, which is a prospective right to payment when the employee is not allowed to work, the liability asserted here is underpayment for work actually performed prepetition. The claims' prepetition nature precludes administrative expense priority. *Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.)*, 330 F.3d 36, 48 (1st Cir. 2003) ("The consideration supporting the Retention Agreement—to forgo

---

(Bankr. D. Del. 2008). The court noted that section 503(b)(1)(A)(ii) "describes two different times: the period to which back pay is *attributable* and the time of the *occurrence* of the unlawful conduct and/or when the services were rendered." *Id.* at 774. The court then held that "the only relevant consideration is the former time, the time to which the back pay is attributable which is when the rights or claims *vest or accrue*, and how that time relates to the petition date." *Id.* at 774-75. "If a claim vests pre-petition, then the back pay is attributable to the time occurring prior to the commencement of the case and therefore it is not an administrative expense claim." *Id.* at 775. Applying these principles to the claim, the court concluded that because the employees were terminated pre-petition, and their rights vested under the federal statute pre-petition, any damages from their suit would be "back pay attributable to" the pre-petition period and thus not eligible for administrative expense priority. *Id.* at 776.

[5] *See Opinion and Order Denying the DRA Parties' Motion for Allowance of an Administrative Expense Claim* [ECF No. 18892] (the "DRA Opinion") at 17-18 (discussing the "clear lesson" of seminal cases analyzing administrative expense priority).

7

other employment opportunities—was supplied the moment she signed the agreement. Only the right to payment arose after the petition date."); *In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d 111, 126 (1st Cir. 2002) ("We therefore hold that the Division's claims are entitled to administrative expense priority so far as, but no further than, the claims are for reimbursement for unemployment compensation paid on the basis of work done by employees after the filing of the Center's petition."); *In re Old Carco LLC*, 424 B.R. 650, 657 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 09-50002 AJG, 2010 WL 4455648 (S.D.N.Y. Nov. 2, 2010) ("where . . . the consideration supporting the claim is supplied pre-petition, court[s] have determined that those claims are not entitled to administrative priority, even if the right to payment arises post-petition.").

11. This Court's interpretation of section 503(b)(1)(A)(ii) as extending only to "events that occur after the commencement of a bankruptcy case," Aug. 4 Hr'g. Tr. at 113:19-24, is therefore entirely consistent with the plain language of the statute and the authority interpreting the phrase "attributable to." Neither the statutory language, the asserted facts, nor the case law Movants cite provides any basis for Movants' contrary reading.

### B. *Reading* is Inapplicable to Movants' Prepetition Transactions

12. Next, Movants contend the Supreme Court's *Reading* decision provides a basis, as a matter of fundamental fairness, to establish administrative expense treatment for their claims. Mot. at 13, 16.

13. *Reading* is entirely inapplicable to Movants' pre-petition claims. In *Reading*, the Supreme Court granted administrative expense priority to a claim for tort damages resulting from the post-petition negligence of a receiver in a Chapter 11 case. 391 U.S. at 483-85. The exceptional component of *Reading's* holding is the victim's postpetition tort claim was allowed as an administrative claim even though the receiver's postpetition tort clearly did not benefit the bankrupt's estate. The Supreme Court recognized bankrupt estates must be administratively liable

8

for their own negligence; otherwise no one can do business with them and it would be unfair for bankruptcy estates to escape liability. Without any logic or rationale, Movants contend *Reading* extends to pre-petition activities, citing *In re MEI Diversified Inc.*, 106 F.3d 829, 832 (8th Cir. 1997). Movants' reliance on *MEI*, however, is inexplicable. That case not only nowhere discusses *Reading* or fundamental fairness, but also explicitly affirms the opposite of what Movants suggest. *MEI*, 106 F.3d at 832 ("Of course, administrative priority is limited to transactions with the debtor in possession."). In fact, there is an absence of authority to support Movants' contention, as this Court recently recognized, "presumably because section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a)—one of the fundamental debtor protections provided by the bankruptcy laws—'automatically stays a broad variety of creditor actions against the debtor or the debtor's property upon the debtor's filing of a bankruptcy petition.'" DRA Opinion at 22 (quoting *Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 931 F.3d 111, 112 (1st Cir. 2019)).

14. More importantly—and indeed, dispositively—the First Circuit has already held *Reading* "is not applicable to prepetition claims[.]" *In re Fin. & Oversight Mgmt. Bd. for P.R.*, 481 F. Supp. 3d 60, 65-66 (D.P.R. 2020). In fact, "[t]he First Circuit has restricted the application of the 'fundamental fairness' exception to claims alleging *postpetition* harms that arise from *postpetition* events." *Id.* at 66 (citing *In re Hemingway Transp., Inc.*, 954 F.2d 1, 6-7 (1st Cir. 1992)) (emphasis added). As explained previously, Movants' claims are pre-petition claims. *Reading* is therefore inapposite as a matter of First Circuit law. To extend *Reading* to prepetition claims would be inconsistent with the structure of the Bankruptcy Code and with First Circuit case law. *See In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d at 126 ("If the [creditor] is arguing that today's result is so unfair or so inexpedient as to require us to develop a new rule that would look past the

9

distinction, basic to bankruptcy, between the debtor's prepetition expenses and the bankruptcy estate's postpetition expenses—a distinction preserved by *Reading Co.* and our subsequent cases—we disagree."); *FBI Distrib.*, 330 F.3d at 41-42; *see also Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 817 (6th Cir. 1997) ("[E]ven in *Reading* and cases following it, the debt at issue arose post-petition. . . . *Reading* does not eliminate the requirement that a debt arise post-petition in order to be accorded administrative expense priority.").

15. With respect to the policies underlying Bankruptcy Code section 503, the traditional rule—that post-petition claims should only be entitled to administrative expense priority in exchange for a "benefit" provided to the postpetition debtor—is intended to incentivize parties to deal with bankrupt debtors. *In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d at 124 ("The justification for this rule is that the administrative priority is necessary to induce potential contractors to do business with the debtor-in-possession[.]"). *Reading* and its progeny are an exception to the traditional "benefit" requirement. *Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 272 B.R. 510, 513 (B.A.P. 1st Cir. 2002), *aff'd and remanded sub nom. Brandt v. Lazard Freres & Co., LLC (In re Healthco Int'l, Inc.)*, 310 F.3d 9 (1st Cir. 2002) ("In a nutshell, the 'fundamental fairness' exception is recognized when the debtor's postpetition operations occasion tortious injuries to third parties (*Reading*), or when the claim arises from postpetition actions that deliberately violate applicable law and damage others (*Charlesbank*)."). They are <u>not</u>, however, an exception to the requirement there be a postpetition claim, which, for the reasons described above, is entirely absent here.

## II. Movants' Prepetition Claim for Attorneys' Fees Is Also Not Entitled to Administrative Expense Treatment

16. Movants also request "allowance and priority treatment of the attorneys' fees award" allegedly incorporated into the Juan Perez Judgment, Mot. at 13, or in the alternative, a determination their attorneys' fees claim is not dischargeable, *id.* at 16. Both requests should be rejected.

17. As support for their request for administrative priority treatment of the attorneys' fee award, Movants rely again on *Reading* and *Charlesbank*. For the reasons described above, however, neither *Reading* nor *Charlesbank* authorize administrative priority treatment for a pre-petition claim. The additional authority Movants cite—*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 242 B.R. 130 (S.D.N.Y. 1999), *In re Cumberland Farms v. Florida Department of Environmental Protection*, 116 F.3d 16 (1st Cir. 1997), *In re Healthco International, Inc.*, 272 B.R. 510 (1st Cir. B.A.P. 2002), and *In re American Preferred Prescription, Inc.*, 218 B.R. 680 (Bankr. E.D.N.Y. 1998)[6]—likewise does not support their request. In each of the cases Movants cite, administrative priority status was granted to fees or penalties that accrued ***post-petition***. *See, e.g.*, *Jamesway*, 242 B.R. at 136 (granting administrative priority status to attorneys' fees "incurred and awarded ***post-petition***") (emphasis added); *Cumberland*, 116 F.3d at 18 (affirming order

---

[6] In addition to the case law identified here, Movants summarily assert that the attorneys' fees award should be entitled to administrative expense treatment because such treatment would "fit[] the historic remedy for unlawful labor practices," and because Article II, section 16 of the Puerto Rico Constitution "provides protection against the payment of lower salary rates as establish[ed] by law." Mot. at 15. But, Movants do not identify any "historic remedy for unlawful labor practices," nor do they explain why any such remedy should justify administrative expense treatment for the pre-petition attorneys' fees award at issue here. Movants also provide no basis for why Article II, section 16 of the Puerto Rico Constitution—which provides, among other things, that "every employee" has a right "to equal pay for equal work [and] to a reasonable minimum salary"—should justify administrative expense treatment for a pre-petition attorneys' fees award. *Id.* at 15 n.15.

11

granting administrative expense status for penalty imposed "for the bankruptcy period of May 2 to August 7, 1993"); *Healthco*, 272 B.R. at 513-514 (authorizing administrative expense priority for costs assessed in litigating a fraudulent transfer action post-petition); *American Preferred*, 218 B.R. at 688 (authorizing administrative expense priority for costs incurred by accountants in a post-petition lawsuit brought by the Debtors against the accountants). The attorneys' fees award at issue here unquestionably accrued **_pre-petition_** in connection with the prepetition Judgments. Logically, given Movants' wage claim is a prepetition claim for the reasons provided above, the attorneys' fees for the wage claim can be no different.

18. In addition, granting administrative expense status for Movants' alleged attorneys' fees would not be in tune with the rationale for granting such fees. The *Jamesway* court observed, for example, that administrative expense treatment for attorneys' fees in fee-shifting statutes is meant in part to incentivize attorneys to conduct efforts to pursue, during the bankruptcy case, clients' underlying claims (where "the prevailing party has no right to attorneys' fees under a fee shifting statute before he or she prevails in the underlying action"). *See Jamesway*, 242 B.R. at 134. Here, however, any asserted entitlement to fees was in connection with the prepetition Judgments; therefore it could not have served the incentivizing purpose identified above. For these reasons, the cases Movants cite in fact support denial—rather than approval—of Movants' request.

19. In the alternative, Movants request a determination that the attorneys' fees claim is not dischargeable because "the debt arise[s] out of a labor law litigation statutory 'fee shifting' provision, and Debtors' violations of state and federal wages laws." Mot. at 16. Movants ignore that Bankruptcy Code section 944(b), made applicable by PROMESA section 301(a), discharges all claims other than claims excepted from discharge by the plan or confirmation order and claims held by claimants having neither notice nor actual knowledge of the bankruptcy case. None of

12

those exceptions apply here. Movants, however, cite authority for nondischargeability, which authority only applies to individual debtors when Bankruptcy Code section 523 is applicable. The Commonwealth is not an individual debtor and PROMESA section 301(a) does not incorporate section 523 into Title III. The only authority Movants cite in their favor establishes that attorneys' fees awards are nondischargeable only if they were incurred in connection with a nondischargeable debt under section 523. For example, in *Cohen v. de la Cruz*, the Supreme Court considered whether attorneys' fees awarded in connection with a judgment of "'actual fraud' within the meaning of 11 U.S.C. § 523(a)(2)(A)" was nondischargeable. *Cohen*, 523 U.S. 213, 215-16 (1998). Since damages awarded for "actual fraud" were nondischargeable pursuant to 11 U.S.C. § 523, the court concluded that an attorneys' fees award associated with the same litigation must also be nondischargeable. Movants' additional authority reaches the same conclusion.[7] *Schwertner Backhoe Servs. v. Kirk (In re Kirk)*, 525 B.R. 325, 330 (Bankr. W.D. Tex. 2015) (concluding that attorneys' fees awarded in connection with a litigation are nondischaregable only if they "arise from or are on account of the conduct that resulted in a nondischargeable debt.").

*[Remainder of Page Intentionally Left Blank]*

---

[7] Movants cite three other authorities, but each are even further from the mark. *Light v. Whittington (In re Whittington)*, 530 B.R. 360 (Bankr. W.D. Tex. 2014) expressly does not address whether attorneys' fees should be awarded, and if so, whether they would be non-dischargeable. *Id.* at 411 ("Plaintiffs have also requested an award of attorneys' fees . . . The Court will set a hearing to consider all these remaining matters . . . ."). *Trentadue v. Gay*, Case No. 15-3142, Document 19 (7th Cir. Sept. 14, 2016), is likewise inapplicable because it addresses whether an "overtrial" award issued in Wisconsin state court may be classified as a nondischargeable domestic support obligation, an issue of no relevance here. Further, the Motion includes an unintelligible citation to what appears to be an unreported decision from the Northern District of New York in a case titled *In re Muhasen*. The Commonwealth is unable to locate this authority, and accordingly, is unable to address it.

13

WHEREFORE the Debtor respectfully requests the Court deny the Motion to the extent that it asserts a prepetition claim and grant the Debtor such other and further relief as is just.

Dated: February 28, 2022  
San Juan, Puerto Rico

Respectfully submitted,

/s/ Ehud Barak  
Martin J. Bienenstock (*pro hac vice*)  
Ehud Barak (*pro hac vice*)  
Laura Stafford (*pro hac vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, NY 10036  
Tel: (212) 969-3000  
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

/s/ Gabriel A. Miranda

Hermann D. Bauer  
USDC No. 215205  
Carla García-Benítez  
USDC No. 203708  
Gabriel A. Miranda  
USDC No. 306704  
**O'NEILL & BORGES LLC**  
250 Muñoz Rivera Ave., Suite 800  
San Juan, PR 00918-1813  
Tel: (787) 764-8181  
Fax: (787) 753-8944

*Co-Attorney for the Financial Oversight and Management Board as representative for the Debtors*