## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| NILDA AGOSTO ET AL.,<br><br>Movants,<br><br>-against-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*,<br><br>Respondents. | Re: ECF No. 18277, 18286, 19131, 19160, 19376, 19615, 20026, 20216 |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

**DEBTOR'S OBJECTION TO URGENT MOTION FOR ALLOWANCE AND I[M]MEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE PURSUANT TO SECTION 503(B)(1)(A)(I) AND (II) OF THE BANKRUPTCY CODE FILED BY GROUP WAGE CREDITORS IN THE LITIGATION CAPTION NILDA AGOSTO MALDONADO ET ALS. CASE NO. KPE 2005-0608**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as its Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Urgent Motion for Allowance and I[m]mediate Payment of Administrative Expense Pursuant to Section 503(b)(1)(A)(i) and (ii) of the Bankruptcy Code Filed by Group Wage Creditors in the Litigation Caption Nilda Agosto Maldonado et als. Case No. KPE 2005-0608* [ECF No. 18277] (the "Motion"), filed by plaintiffs in the litigation captioned *Nilda Agosto Maldonado et als v. Department of the Family*, Case No. K PE 2005-0608 (collectively, the "Movants") solely with respect to Movants' request for allowance and immediate payment of pre-petition back pay and as administrative expenses.[3]  In support of the Objection, the Debtor respectfully represents:

---

[2]  PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] On February 25, 2022, the Commonwealth filed, by email to the Court, an *Urgent Omnibus Motion for Extension of Deadlines*, subsequently filed on PACER at [ECF No. 20216], requesting the Court extend the deadline to respond to the Post-Petition Portions of the Motion to March 30, 2022.  Prior to filing the Motion, the Commonwealth sought Movant's consent to the requested extension, but Movants did not consent.  *Id.* at ¶ 6.  As of the filing of this Objection, the extension motion was pending.  Accordingly, this objection addresses only the pre-petition assertions of the Motion.  The parties continue to engage in discussions regarding Movants' request for payment of post-petition back pay.  The Commonwealth reserves its right to object to Movants' request for payment of post-petition back pay if the parties do not reach a consensual resolution of those issues.

1

**PRELIMINARY STATEMENT**

1. Movants assert they are entitled to administrative expense priority for back pay accrued entirely prior to commencement of the Title III cases. Movants' asserted claims arise from a 2010 Commonwealth court judgment (the "CFI 2010 Judgment"). Mot. at 4-5. Specifically, Movants assert pursuant to the CFI 2010 Judgment, the Commonwealth is liable for (1) not properly adjusting Movants' wages for their tenure, job functions, responsibilities and requirements for services provided to the Commonwealth by Movants and (2) payment of the accrued wage shortfall to each employee. *Id.* at 5-6. With respect to Movants' claim for payment of an accrued wage shortfall, Movants provided a breakdown of the amounts allegedly owed prior to and after the date of the Commonwealth's Title III petition. Mot. at 6. This Objection addresses the asserted $34.1 million portion of Movants' claim attributable to the pre-petition period, which should be denied based on the assertions contained in the Motion.

2. Movants are not entitled to administrative expense priority for claims arising pre-petition. The Court already denied a substantially similar request for priority status by sustaining the Oversight Board's objection that the wage creditors' proofs of claim should be classified as prepetition, general unsecured claims and not as allowable administrative expenses. *See* Aug. 4 Hr'g. Tr. at 113:18-24. In particular, the Court noted Bankruptcy Code section 503(b)(1)(A) permits priority only for "claims arising from events that occur after the commencement of a bankruptcy case, and all of these claimants are asserting claims that long predate the debtors' Title III petitions." *Id.* Following that ruling, those claimants requested the Court's reconsideration [ECF No. 17892] (the "Reconsideration Motion"), which request is pending.

3. Here, Movants duplicate the arguments in the Reconsideration Motion and separately attempt to challenge the Court's ruling on this issue. The reasons for denying the Motion are the same as the Oversight Board articulated in its opposition to the Reconsideration

2

Motion [ECF No. 18013] and in its opposition [ECF No. 19091] to another motion filed by counsel for Movants with substantially identical arguments [ECF No. 18282]. In sum, (1) the plain text of Bankruptcy Code section 503(b)(1)(A)(ii) limits administrative priority under the section to claims "attributable to any period of time occurring after commencement of the case", and (2) *Reading Co. v. Brown*, 391 U.S. 471 (1968) is inapplicable to Movant's prepetition transactions.

4. Movants also request the payment be made now because of the Commonwealth's reported cash positions and because under Bankruptcy Code sections 507(a)(2) and (4) priority claims are already entitled to payment in full under a reorganization plan, and therefore payment to Movants would not materially affect the Debtor's estate. Mot. at 12-13. Payment cannot be compelled without the Oversight Board's consent pursuant to PROMESA section 305.[4]

5. Accordingly, for the reasons set forth herein, the Motion should be denied to the extent it asserts prepetition claims.

## ARGUMENT

I. **Movants' Prepetition Claims are Not Entitled to Administrative Expense Status**

6. Movants assert several theories why, notwithstanding the prepetition nature of their asserted claim, it is nonetheless entitled to administrative expense priority. Each of these theories fails.

    A. **Neither the Statutory Text nor Case Law Supports Movants' Request for Administrative Expense Priority**

7. Movants first assert Bankruptcy Code section 503(b)(1)(A)(ii) provides the legal basis for an administrative expense priority for Movants' wage claims, and that the "plain language" of the statute provides prepetition claims may be treated as administrative expense

---

[4] Furthermore, Bankruptcy Code section 507(a)(4) is not incorporated to PROMESA Title III. *See* PROMESA § 301.

3

claims. Mot. at 9. Section 503(b)(1)(A)(ii) plainly states the opposite: only "wages and benefits awarded . . . as back pay *attributable to any period of time occurring after commencement of the case* . . . without regard to the time of the occurrence of unlawful conduct . . ." are eligible for treatment as an administrative expense. 11 U.S.C. § 503(b)(1)(A)(ii) (emphasis added). Movants admit the pre-petition back pay asserted was attributable to the prepetition period. Mot. at 10 (stating that the Motion seeks "payment in full, as administrative expense for the wages owed for the services performed by claimants prior [to] the filing of the Title III petition . . . ."). The remaining context of section 503(b) is of no avail; Movants identify no portion of section 503(b) that permits administrative expense status for prepetition periods.

    8.  The additional authority Movants cite—*In re Truland Group., Inc.*, 520 B.R. 197 (Bankr. E.D. Va. 2014) and *In re Philadelphia Newspapers, LLC,* 433 B.R. 164 (Bankr. E.D. Pa. 2010)—is inapplicable. In each instance, the claims arose from either the WARN Act or a severance allegation, and the liabilities asserted were determined to be "attributable to" the postpetition period, even if the violation occurred prepetition. The WARN Act requires payment of sixty days of wages if employees are terminated on less than sixty days' notice. Thus, if some of the sixty days occur postpetition, some courts rule the wages due during those days are postpetition claims. Here, Movants are requesting wages for prepetition work, not postpetition work. In *Philadelphia Newspapers*, for example, the court interpreted the phrase "attributable to any period of time occurring after commencement of the case under this title" to require the claim accrue post-petition to be compensable as an administrative expense. 433 B.R. at 174-77. Similarly, the claimant in *Philadelphia Newspapers* was a discharged employee whose claim was partially based on his post-petition payments of healthcare premiums for postpetition healthcare. The court held that, "if back pay is awarded for any period of time 'attributable to any time

4

occurring after commencement of a case' *and* the back pay meets the other requirements listed in subsection (ii), then this Court holds that back pay constitutes an allowed, administrative expense[.]" *Id.* at 175.

9. Other courts have likewise interpreted the phrase "attributable to" to refer to wages and benefits that accrue post-petition. *See, e.g.*, *In re Calumet Photographic, Inc.*, No. 14-08893, 2016 WL 3035468, at *3 (Bankr. N.D. Ill. May 19, 2016) ("Basically, the plain meaning of [section 503(b)(1)(A)(ii)] requires a court to determine if a claim relates to a post-petition time period despite the fact that the violation timing is of no regard."); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 505 B.R. 163, 167 (Bankr. D.N.J. 2014) (granting administrative expense priority to portion of claims regarding lost wages for several post-petition days thus "attributable to" post-petition period).[5] Nor does the phrase "without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered" alter the result: rather, that phrase brings within the statute wages owed for services rendered *post*-petition, when the illegal conduct giving rise to such wages owed occurred *pre*-petition. *In re Trump Ent. Resorts,*

---

[5] At least one court has adopted an even stricter approach, concluding that only employee claims that *vest* after the petition date are entitled to administrative expense treatment. Thus, in *Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, a group of discharged employees asserted claims against the debtor in respect of wages and benefits owed pursuant to a federal law and sought administrative expense priority for any damages awarded in the suit. 394 B.R. 765 (Bankr. D. Del. 2008). The court noted that section 503(b)(1)(A)(ii) "describes two different times: the period to which back pay is *attributable* and the time of the *occurrence* of the unlawful conduct and/or when the services were rendered." *Id.* at 774. The court then held that "the only relevant consideration is the former time, the time to which the back pay is attributable which is when the rights or claims *vest or accrue*, and how that time relates to the petition date." *Id.* at 774-75. "If a claim vests pre-petition, then the back pay is attributable to the time occurring prior to the commencement of the case and therefore it is not an administrative expense claim." *Id.* at 775. Applying these principles to the claim, the court concluded that because the employees were terminated pre-petition, and their rights vested under the federal statute pre-petition, any damages from their suit would be "back pay attributable to" the pre-petition period and thus not eligible for administrative expense priority. *Id.* at 776.

5

*Inc.*, No. 14-12103, 2015 WL 1084294, at *4 (Bankr. D. Del. Mar. 9, 2015) ("Regardless of when the illegal conduct occurred, in order to qualify for administrative expense priority under section 503(b)(1)(A)(ii) the damages flowing therefrom must be attributable to sometime after the Petition Date[.]").

10. As the Court recently recognized,[6] the critical fact is the timing of the consideration supplied by the creditor. Here, Movants assert liabilities associated with unpaid wages for work actually performed prior to the filing of the Commonwealth's Title III case—even years prior. Unlike severance and WARN Act liability, which is a prospective right to payment when the employee is not allowed to work, the liability asserted here is underpayment for work actually performed prepetition. The claims' prepetition nature precludes administrative expense priority. *Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.)*, 330 F.3d 36, 48 (1st Cir. 2003) ("The consideration supporting the Retention Agreement—to forgo other employment opportunities—was supplied the moment she signed the agreement. Only the right to payment arose after the petition date."); *In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d 111, 126 (1st Cir. 2002) ("We therefore hold that the Division's claims are entitled to administrative expense priority so far as, but no further than, the claims are for reimbursement for unemployment compensation paid on the basis of work done by employees after the filing of the Center's petition."); *In re Old Carco LLC*, 424 B.R. 650, 657 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 09-50002 AJG, 2010 WL 4455648 (S.D.N.Y. Nov. 2, 2010) ("where . . . the consideration supporting the claim is supplied pre-petition, court[s] have determined that those claims are not entitled to administrative priority, even if the right to payment arises post-petition.").

---

[6] *See Opinion and Order Denying the DRA Parties' Motion for Allowance of an Administrative Expense Claim* [ECF No. 18892] (the "DRA Opinion") at 17-18 (discussing the "clear lesson" of seminal cases analyzing administrative expense priority).

11. This Court's interpretation of section 503(b)(1)(A)(ii) as extending only to "events that occur after the commencement of a bankruptcy case," Aug. 4 Hr'g. Tr. at 113:19-24, is therefore entirely consistent with the plain language of the statute and the authority interpreting the phrase "attributable to." Neither the statutory language, the asserted facts, nor the case law Movants cite provides any basis for Movants' contrary reading.

### B. *Reading* is Inapplicable to Movants' Prepetition Transactions

12. Next, Movants contend the Supreme Court's *Reading* decision and the Bankruptcy Code's policies provide a basis, as a matter of fundamental fairness, to establish administrative expense treatment for their claims. Mot. at 14-16.

13. *Reading* is entirely inapplicable to Movants' pre-petition claims. In *Reading*, the Supreme Court granted administrative expense priority to a claim for tort damages resulting from the post-petition negligence of a receiver in a Chapter 11 case. 391 U.S. at 483-85. The exceptional component of *Reading's* holding is the victim's postpetition tort claim was allowed as an administrative claim even though the receiver's postpetition tort clearly did not benefit the bankrupt's estate. The Supreme Court recognized bankrupt estates must be administratively liable for their own negligence; otherwise no one can do business with them and it would be unfair for bankruptcy estates to escape liability. Movants contend *Reading* extends to pre-petition activities, citing *In re MEI Diversified Inc.*, 106 F.3d 829, 832 (8th Cir. 1997). Movants' reliance on *MEI*, however, is inexplicable. That case not only nowhere discusses *Reading* or fundamental fairness, but also explicitly affirms the opposite of what Movants suggest. *MEI*, 106 F.3d at 832 ("Of course, administrative priority is limited to transactions with the debtor in possession."). In fact, there is an absence of authority to support Movants' contention, as this Court recently recognized, "presumably because section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a)—one of the fundamental debtor protections provided by the bankruptcy laws—'automatically stays a broad

7

variety of creditor actions against the debtor or the debtor's property upon the debtor's filing of a bankruptcy petition.'" DRA Opinion at 22 (quoting *Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 931 F.3d 111, 112 (1st Cir. 2019)).

14. More importantly—and indeed, dispositively—the First Circuit has already held *Reading* "is not applicable to prepetition claims[.]" *In re Fin. & Oversight Mgmt. Bd. for P.R.*, 481 F. Supp. 3d 60, 65-66 (D.P.R. 2020). In fact, "[t]he First Circuit has restricted the application of the 'fundamental fairness' exception to claims alleging *postpetition* harms that arise from *postpetition* events." *Id.* at 66 (citing *In re Hemingway Transp., Inc.*, 954 F.2d 1, 6-7 (1st Cir. 1992)) (emphasis added). As explained previously, Movants' claims are pre-petition claims. *Reading* is therefore inapposite as a matter of First Circuit law. To extend *Reading* to prepetition claims would be inconsistent with the structure of the Bankruptcy Code and with First Circuit case law. *See In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d at 126 ("If the [creditor] is arguing that today's result is so unfair or so inexpedient as to require us to develop a new rule that would look past the distinction, basic to bankruptcy, between the debtor's prepetition expenses and the bankruptcy estate's postpetition expenses—a distinction preserved by *Reading Co.* and our subsequent cases—we disagree."); *FBI Distrib.*, 330 F.3d at 41-42; *see also Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 817 (6th Cir. 1997) ("[E]ven in *Reading* and cases following it, the debt at issue arose post-petition. . . . *Reading* does not eliminate the requirement that a debt arise post-petition in order to be accorded administrative expense priority.").

15. With respect to the policies underlying Bankruptcy Code section 503, the traditional rule—that post-petition claims should only be entitled to administrative expense priority in exchange for a "benefit" provided to the postpetition debtor—is intended to incentivize parties

8

to deal with bankrupt debtors. *In re Bos. Reg'l Med. Ctr., Inc.*, 291 F.3d at 124 ("The justification for this rule is that the administrative priority is necessary to induce potential contractors to do business with the debtor-in-possession[.]").[7] *Reading* and its progeny are an exception to the traditional "benefit" requirement. *Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 272 B.R. 510, 513 (B.A.P. 1st Cir. 2002), *aff'd and remanded sub nom. Brandt v. Lazard Freres & Co., LLC (In re Healthco Int'l, Inc.)*, 310 F.3d 9 (1st Cir. 2002) ("In a nutshell, the 'fundamental fairness' exception is recognized when the debtor's postpetition operations occasion tortious injuries to third parties (*Reading*), or when the claim arises from postpetition actions that deliberately violate applicable law and damage others (*Charlesbank*)."). They are <u>not</u>, however, an exception to the requirement there be a postpetition claim, which, for the reasons described above, is entirely absent here.

*[Remainder of Page Intentionally Left Blank]*

---

[7] Movants' enumeration of certain policies underlying Bankruptcy Code section 503 affirms that it is the actions of the postpetition, rather than prepetition, entity that are eligible for administrative expense priority. *See* Mot. at 14-15 (citing Nancy C. Dreher, Joan N. Feeny and Michael J. Stepan, Bankruptcy Law Manual, Volume 1, § 6.32 (5th ed. 2018-2)) (listing policies "to encourage activities that will benefit the **estate**; to advance reorganization efforts which would be hampered by the necessity of advance payments for supplies of the **estate**; to compensate those injured by the **estate**; and to prevent unjust enrichment of the **estate** at the expense of its creditors.") (emphasis added).

9

WHEREFORE the Commonwealth respectfully requests the Court deny the Motion to the extent that it asserts a prepetition claim and grant such other and further relief as is just.

| | |
|---|---|
| Dated: February 28, 2022<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Ehud Barak*<br>Martin J. Bienenstock (*pro hac vice*)<br>Ehud Barak (*pro hac vice*)<br>Laura Stafford (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*<br><br>*/s/ Gabriel A. Miranda*<br><br>Hermann D. Bauer<br>USDC No. 215205<br>Carla García-Benítez<br>USDC No. 203708<br>Gabriel A. Miranda<br>USDC No. 306704<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Co-Attorney for the Financial Oversight and Management Board as representative for the Debtors* |