# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 17-BK-3283 (LTS) |
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO** | |
| As a representative of the **COMMONWEALTH OF PUERTO RICO**[1] | PETITION UNDER TITLE III OF THE PUERTO RICO OVERSIGHT, MANAGEMENT AND ECONOMIC STABILITY ACT |
| IN RE: | CASE NO. 17-BK-4780 (LTS) |
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO** | |
| As a representative of the **PUERTO RICO ELECTRIC POWER AUTHORITY** | PETITION UNDER TITLE III OF THE PUERTO RICO OVERSIGHT, MANAGEMENT AND ECONOMIC STABILITY ACT (JOINTLY ADMINISTERED) |

## OPPOSITION TO URGENT MOTION TO APPOINT A MEDIATOR AND IMPOSE DEADLINES FOR A PREPA PLAN OF ADJUSTMENT

**TO THE HONORABLE COURT:**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**COMES NOW** the Hon. Rafael Hernández-Montañez, in his official capacity as Speaker of the Puerto Rico House of Representatives, through the undersigned counsels and very respectfully **SETS FORTH** and **PRAYS:**

## I. INTRODUCTION

On January 2021, the Nineteenth Legislative Assembly[2] was inaugurated in the context of ongoing complex Title III proceedings and of the federally imposed reallocation of many of its constitutional powers over budgetary affairs to an unelected Financial Oversight and Management Board (hereinafter referred to as "FOMB"). Notwithstanding these challenges, the House has steadfastly exercised its authority in a decisive and organized fashion to contribute to the organized restructuring of Puerto Rico's defaulted debt. While we have not hesitated to defend our constitutional authority against overreach by the FOMB, the House has delivered every single time that it has agreed to undertake any measures required to make lawful and cogent debt restructuring agreements a reality. The most recent example of this was our pledge to approve legislation that would enable the issuance of new general obligations bonds within 24 hours of an emergency hearing set by this Honorable Court and our flawless execution of that pledge, which resulted in the enactment of Law 53-2021. Hence, the House comes before this Honorable Court bearing the precious commodity of credibility.

As of this date, this Honorable Court has undertaken the Herculean task of overseeing the restructuring the accrued debt of most of the entities that sought

---

[2] Dating back to 1900, the House of Representatives is the oldest democratic institution in Puerto Rico in continued existence, the members serving from 2021 to 2025 constitute the nineteenth legislature since the Commonwealth Constitution was ratified on July 25, 1952.

Title III relief in the above-captioned consolidated case. All that remains is the debt for the Puerto Rico Electrical Power Authority (hereinafter referred to as "PREPA"), a tall order for sure. This notwithstanding, in a surprising departure from what has worked for other Title III debtors (including the Commonwealth of Puerto Rico itself), on February 18, 2022, the *Ad Hoc* Group of PREPA bondholders filed an "urgent" motion seeking to have a mediator appointed so that the parties could attempt to craft a restructuring plan agreement that does not require enabling legislation and to force the imposition of certain deadlines for enacting said plan (docket number 20176). National Public Finance Guarantee Corporation joined the aforementioned request a few days thereafter (docket number 20185).

In sum, the aforementioned PREPA creditors seek to use mediation as a means to extricate the Legislature from exercising its role in enacting legislation to enable the creation of a confirmable plan. Furthermore, said parties want to force the FOMB to file a proposed plan of adjustment as early as **April 15, 2022**, which would thereafter be placed on a rocket docket[3]. While the need for expeditious proceedings is commendable, the mechanism that is being proposed in this case falls outside the scope of how Congress chose to design Title III reorganization.

For the foregoing reasons, the House opposes the creditors' urgent request for mediation and instead asks that all stakeholders be ordered to engage in meaningful discussions with the Puerto Rico Legislative Assembly so that all necessary legislation is passed in an expeditious fashion.

---

[3] While the Court most certainly has the power to establish deadlines for the filing of adjustment plans. 48 U.S.C. § 2172(b). However, nothing in the statute suggests that parties have any right to demand any specific date.

## II. DISCUSSION

The House understands why -after years of Title III proceedings (and the corresponding staying of collection actions)- PREPA creditors would be anxious to settle the matter of resolving said public corporation's debt once and for all. Having said this, the sudden urge to have the matter accelerate at breakneck pace is still surprising. The reasons provided by the PREPA creditors for the sudden demand for the utmost urgency do not justify the spontaneous sense of emergency nor do they justify the use of extraordinary equitable powers to deviate from the regular procedure.

Paragraph 22 of the *Ad Hoc* bondholders motion points to the announced departure of current FOMB Executive Director, Ms. Natalie Jaresko, as a relevant factor supporting said parties' request for emergency extraordinary relief. The movants make no reasonable effort to establish any factual underpinnings that would allow this Honorable Court to infer that somehow the FOMB will not be able to diligently replace Ms. Jaresko with a similarly qualified individual or that the process of filling a vacancy in the Board's upper management would somehow adversely affect the rights of any PREPA creditor to seek maximum recovery. Quite to the contrary, recent history shows that the FOMB has been able to fill vacancies within its **voting members** (vis-à-vis replacing an executive director that merely executes the Board's will) without the new arrivals ever missing a beat with regard to the discharge of their duties.

At paragraphs 23-26 of its urgent motion, the *Ad Hoc* bondholders charge the

FOMB with a supposed "lack of engagement". We expect the Board to fully address this imputation as we certainly cannot speak on its behalf. However, we can say that during the period during which the PREPA creditors aver a lack of interest in the matter, the House was being reminded by Board members that the matter needed to be addressed and was working hard to get the Commonwealth's complex and historical restructuring plan across the finish line. That so much has been achieved since the first Title III petitions were filed in May 2017, notwithstanding catastrophic events such as major hurricanes, earthquakes and the COVID-19 pandemic contradict the movants' bold assertion.

The most salient point of the pending request, at least from the House's perspective is the incorrect portrayal of the Puerto Rico Legislature as an uncooperative entity or as a hinderance to the PREPA restructuring proceedings. At paragraph 2 of the Ad Hoc bondholders' urgent motion, it is averred that:

> As the parties proceeded towards Court approval of the RSA, with a PREPA Title III plan expected to follow, those efforts were stalled in February 2020 – first **by opposition from the Puerto Rico legislature to passing legislation necessary under the RSA**, then by the global pandemic, and finally by the Oversight Board's specific requests that the PREPA bondholders be patient and wait – first until the LUMA transaction was consummated, and then for confirmation of the Commonwealth plan of adjustment. (emphasis added)

Paragraph 4 of that same motion adds that:

> **The time has come to work out the final implementation mechanics for the RSA, and to develop an alternative that does not require legislation (a "Plan B"), given the legislature's failure to act over the past two years**. Despite the Ad Hoc Group's numerous requests for re-engagement on PREPA, and assurances

5

> provided to the Ad Hoc Group as well as the Court that the Oversight Board remained supportive of the RSA and **the development of a non-legislated solution**, no such engagement has taken place. (emphasis added)

The motion by which National Public Finance Guarantee Corporation joined the urgent request for mediation follows suit and, at paragraph 1 provides that:

> National, one of PREPA's largest creditors, is party to a Restructuring Support Agreement ("RSA") that provides for a comprehensive restructuring of PREPA. The RSA, a milestone achievement for PREPA, should enable it to exit Title III within months while successfully restructuring billions of dollars in debt. **Under the current RSA, however, legislative approval of a bond securitization package is necessary**. Although the Commonwealth Legislature enacted nearly identical legislation in 2016 to implement the RSA's predecessor (*i.e.*, a securitization structure with a dedicated transition charge for debt service), **it has not, at least to date, been willing to do so again**. In light of current political realities, the Oversight Board has stated, and National agrees, that an alternative option is necessary to implement the RSA. (emphasis added)

While we agree with the PREPA creditors that legislation will be required to make any eventual plan of adjustment viable, it is incredible how said parties seem so inclined to demonize the Legislature without putting into the record an iota of evidence to sustain such harsh accusations, beyond their say so of course. The hard fact is that it was not until the afternoon **February 23, 2022**, that legislative leadership first attended a formal meeting to discuss this matter, as **it had not been summoned to a similar gathering before that date**.

Nothing in the Puerto Rico Oversight, Management and Financial Oversight Act (hereinafter referred to as "PROMESA") allows or even suggests that the Puerto Rico Legislature may be tossed aside during Title III proceedings if a group of

6

stakeholders has the subjective belief that said elected body is not cooperating as it should. As this Honorable Court recently reiterated:

> This Court has previously addressed **the unique dynamic PROMESA created between the Oversight Board and the Commonwealth government**. While PROMESA grants the Oversight Board significant powers to achieve its purpose, the statute does not, subject to the provisions of Titles I and II, "impair the power" of Puerto Rico "to control, by legislation or otherwise . . . the exercise of the political or governmental powers." PROMESA § 303, 48 U.S.C. § 2163. Thus, PROMESA has created "**an awkward power-sharing arrangement,**" in which the Oversight Board has significant tools to shape Puerto Rico's financial operations, **but it has "not been given power to affirmatively legislate."** Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.) ("Rosselló Nevares"), 330 F. Supp. 3d 685, 701 (D.P.R. 2018). The provisions governing the formulation and confirmation of plans of adjustment under PROMESA further reflect this division of responsibilities between the Oversight Board and the Commonwealth government. "Only the Oversight Board" may file a plan of adjustment. PROMESA § 312(a), 48 U.S.C. § 2172(a). Yet, **the statute also provides that a plan of adjustment cannot be confirmed unless the Oversight Board obtains "legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan" or confirmation is "expressly conditioned on such approval." PROMESA § 314(b)(5), 48 U.S.C. § 2174(b)(5). This provision gives the Commonwealth government the ability to "obstruct implementation" or "complicate" the Oversight Board's efforts to produce a confirmable plan of adjustment**. Rosselló Nevares, 330 F. Supp. 3d at 701. The Oversight Board, on the other hand, has at its disposal its "budgetary tools," other statutory powers, and negotiations in seeking "to elicit any necessary buy-in from the elected officials and legislators." Id. (énfasis suplido)

FOMB v. Pierluisi-Urrutia, 634 B.R. 187, 194 (D.P.R. 2021) (emphasis added)

Legislative action is therefore baked into PROMESA proceedings. It was precisely because of this that a process ending in the enactment of Law 53-2021 was overseen by the Court in recent months, in the context of the Commonwealth's plan

7

of adjustment.

Notwithstanding the above, the movants seek to portray the matter as a great inequity that requires the exercise of equitable authority. However, the PREPA creditors' recourse to Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a), is misplaced. To be sure, Section 105 is one of the tenets of bankruptcy law that Section 301(a) of PROMESA, 48 U.S.C. § 2161(a), incorporated to Title III proceedings. In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 987 F.3d 173, 182 (1st Cir. 2021). This Honorable Court has clarified however that:

> The Court's authority under Section 105 is discretionary and **"should not be used contrary to the clear wording of the Bankruptcy Code, its legislative history, and the Rules of Bankruptcy Procedure**." Marrama v. Citizens Bank of Mass., 313 B.R. 525, 532 n.6 (B.A.P. 1st Cir. 2004).

In re FOMB, 582 B.R. 579, 596 (D.P.R. 2018) (emphasis added)

PREPA creditors clearly seek to use Section 105(a) as a "nuclear option" of sorts to sidestep the requirement in Section 314(b)(5) of PROMESA, 48 U.S.C. § 2174(b)(5), that "any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval". The equitable powers afforded to bankruptcy courts simply cannot be used to invalidate other statutory provisions applicable to a particular proceeding.

Having established the reasons why we are convinced that the relief sought by the PREPA creditors should not be allowed, we reiterate that the House has placed the pending restructuring as a top priority and is willing and able to take

swift action within any reasonable, if also expedited time frame established by the Court.

**WHEREFORE** it is very respectfully requested from this Honorable Court that the PREPA creditor's urgent request for mediation be hereby **DENIED**.

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record, to their registered e-mail addresses. Any non-registered attorneys and/or parties will be served via regular mail.

In San Juan, Puerto Rico this 25th day of February, 2022.

**RESPECTFULLY SUBMITTED,**

**M.L. & R.E. LAW FIRM**
Cobian's Plaza, Suite 404
1607 Ponce De León Ave.
San Juan, Puerto Rico 00909
Tel (787) 999-2972
Fax (787) 751-2221

*S/ Jorge Martínez-Luciano*
**JORGE MARTÍNEZ-LUCIANO**
USDC-PR Number 216312
e-mail: jorge@mlrelaw.com

*S/ Emil Rodríguez-Escudero*
**EMIL RODRÍGUEZ-ESCUDERO**
USDC-PR Number 224312
e-mail: emil@mlrelaw.com