# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Puerto Rico Electric Power Authority,<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Court Filing Relates Only to PREPA and Shall Only be Filed in Case No. 17 BK 4780-LTS and Main Docket 17 BK 3283-LTS** |

**REPLY OF AD HOC GROUP OF PREPA BONDHOLDERS
IN SUPPORT OF URGENT MOTION OF THE AD HOC GROUP OF
PREPA BONDHOLDERS PURSUANT TO SECTION 312 OF PROMESA AND
SECTION 105 OF THE BANKRUPTCY CODE TO APPOINT A MEDIATOR AND
<u>IMPOSE DEADLINES FOR A PREPA PLAN OF ADJUSTMENT</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("**COFINA**") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("**HTA**") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Public Buildings Authority ("**PBA**") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801); and (vi) Puerto Rico Electric Power Authority ("**PREPA**") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

Response ....................................................................................................................................1

Argument ...................................................................................................................................3

I. The RSA Remains in Effect and Widely Supported. .........................................................3

II. The Parties Require Mediation to Develop a "Plan B" to Account for Failure by the Legislature to Pass Necessary PREPA Legislation. .....................................................4

III. The Court Should Appoint Ret. Judge Houser as Mediator Because Appointment of a Mediator Has Near-Universal Support. .......................................................................6

IV. Imposing Deadlines on a Plan Process Is Necessary to Move a Plan Forward. ................8

Conclusion ...............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

Puerto Rico Electric Power Authority Revitalization Act, Act No. 4-2016 ................................... 4

**Other Authorities**

Jim Wyss, *Puerto Rico Governor Asks to Renegotiate Power-Company Debt Plan*, Bloomberg (Feb. 25, 2022, 12:03 PM EST), https://www.bloomberg.com/news/articles/2022-02-25/puerto-rico-governor-asks-to-renegotiate-power-company-debt-plan ............................................................... 5

Press Release, Financial Oversight and Management Board for Puerto Rico, Oversight Board Met with PPD Caucus, Which Holds Majority in House of Representatives to Discuss PREPA Debt Restructuring Agreement (Feb. 23, 2022) https://drive.google.com/file/d/14vNRAMZEhCOXUG5kLNrznM5O8lLTOB8M/view, available at: https://oversightboard.pr.gov/press/ ........................................ 3

Reorg, *AAFAF Chief Marrero Signals PREPA RSA 'Most Likely' Will Need Renegotiation, Given Lack of Legislative Support,* Reorg – Intel (Feb. 7, 2022, 9:43 AM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=168129 ......................... 9

Reorg, *AAFAF's Marrero Voices Support for Current PREPA RSA, Says Legislation Remains 'Biggest Concern' Based on Current Lack of Support in Legislature,* Reorg – Intel (Jan. 20, 2022, 3:19 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=166455 .................................... 3

Reorg, *Gov. Pierluisi Says PREPA RSA Needs to Be Revisited to Address New Economic, Demand Forecasts, Modify Application of Transition Charge for Clients Who Produce Power; Governor Calls on Oversight Board to Explore Alternatives to Toll Hikes*, Reorg – Intel (Feb. 25, 2022, 3:56 PM EST) https://app.reorg.com/v3#/items/intel/1869?item_id=170325 .................................... 7

Reorg, *Opponents of PREPA Ad Hoc Group's Mediation Motion Argue Targeted Negotiations Would Exclude Key Stakeholders, Overlook Changed Economics in Absence of Legislation*, Reorg – Intel (Feb. 25, 2022, 6:13 PM EST) https://app.reorg.com/v3#/items/intel/1869?item_id=170345 .................................... 5

Reorg, *Ortiz Says Governor Supports PREPA RSA, Says Bill to Execute Restructuring Should Be Submitted to Legislature Before Jan. 14 Rule 9019 Motion Hearing*, Reorg – Intel (Nov. 15, 2019, 3:15 PM EST) https://app.reorg.com/v3#/items/intel/1869?item_id=88376 .................................... 4

To the Honorable United States District Court Judge Laura Taylor Swain:

The Ad Hoc Group of PREPA Bondholders (the "**Ad Hoc Group**") respectfully submits this reply ("**Reply**") to the responses received to the *Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* [Dkt. No. 2718] ("**Mediation & Plan Deadline Motion**"),[2] and in further support of the Mediation & Plan Deadline Motion.

## RESPONSE

1. The Ad Hoc Group filed the Mediation & Plan Deadline Motion to move PREPA's Title III case towards its long-anticipated conclusion.[3] The Government Parties and PREPA's

---

[2] Responses include Official Committee of Unsecured Creditors' Objection to Ad Hoc Group of PREPA Bondholders' Motion Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Compel Mediation and Impose Deadlines for a PREPA Plan of Adjustment [Dkt. No. 2732] ("**UCC Obj.**"); Objection of Financial Oversight and Management Board for Puerto Rico to Urgent Motion of Ad Hoc Group of PREPA Bondholders to Compel Mediation and Impose Deadlines for PREPA Plan of Adjustment [Dkt. No. 2735] ("**FOMB Obj.**"); Joint Reservation of Rights and Request for Relief of Unión de Trabajadores de la Industria Eléctrica y Riego, Inc. (UTIER) and Sistema de Retiro de Los Empleados de la Autoridad de Energía Eléctrica (SREAEE) Regarding Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment Doc#:2718 [Dkt. No. 2724] ("**UTIER/SREAEE Reserv.**"); Opposition to Urgent Motion to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment [Case No. 17-03283-LTS, Dkt. No. 20223]; AAFAF and PREPA's Joinder to the Objection of the Financial Oversight and Management Board for Puerto Rico to Urgent Motion of the Ad Hoc Group of PREPA Bondholders to Compel Mediation and Impose Deadlines for PREPA Plan of Adjustment [Dkt. No. 2733] ("**AAFAF/PREPA Joinder**"); Limited Joinder of Fuel Line Lenders to Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment [Dkt. No. 2726] ("**FLL Joinder**"); National Public Finance Guarantee Corporation's Informative Motion Regarding the Ad Hoc Group of PREPA Bondholders' Notice of Revised Proposed Order [Dkt. No. 2734]; Joinder of National Public Finance Guarantee Corporation to the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment (ECF No. 2718) [Dkt. No. 2720] ("**National Joinder**"); Response and Reservation of Rights of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. to the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 315 of PROMESA and Section 105 of the Bankruptcy Code to Compel Mediation and Impose Deadlines for a PREPA Plan of Adjustment [Dkt. No. 2731] ("**Assured Resp.**"); and Joinder and Response of U.S. Bank National Association as PREPA Bond Trustee to Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment (ECF No. 2718) [Dkt. No. 2729] ("**PREPA Bond Trustee Joinder**").

[3] Capitalized terms not defined herein shall have the meaning given to such terms in the Mediation & Plan Deadline Motion.

stakeholders are nearly unanimous in supporting a timely mediation. Indeed, the thrust of most of the "objections" is simply to request that the mediation be broadened in scope and include the objectors as parties.

2. The Ad Hoc Group believes that the RSA – a preexisting consensual agreement negotiated over a number of years that resolves the overwhelming majority of PREPA's financial debt – is the most logical starting place for the mediation. But the Ad Hoc Group supports a broad and inclusive mediation process: The Ad Hoc Group filed a revised proposed mediation order Friday morning that addresses the objectors' concerns by leaving the sequencing, operation, and scope of the mediation up to Ret. Judge Houser as court-appointed mediator.

3. In addition to not opposing mediation, neither the Oversight Board nor AAFAF objects to the appointment of Ret. Judge Houser as mediator. And the idiosyncratic issues raised by other objectors only underscore the wisdom of immediately bringing all parties together before an experienced mediator familiar with these cases and each party's unique perspective. Appointing Ret. Judge Houser as mediator is simply the most efficient and cost-effective way to resolve the last of the Commonwealth's major restructurings.

4. Finally, the Court should couple mediation with Court-imposed deadlines to ensure that the parties engage in mediation with a true sense of urgency. The issues to be resolved in the Commonwealth restructuring were no less numerous or complex, and there can be no doubt that the parties benefited from the structure imposed by Court-ordered deadlines. PREPA cannot afford to continue lingering in Title III, to the detriment of PREPA itself, the Commonwealth, and all stakeholders. The deadlines proposed in the Mediation & Plan Deadline Motion (and included in its plan deadline order) are achievable and reasonable, and will ensure that the Oversight Board can confirm a PREPA plan by year-end – the Oversight Board's own stated goal.

**ARGUMENT**

**I.	The RSA Remains in Effect and Widely Supported.**

5.	The Oversight Board and AAFAF have reaffirmed their support for the RSA as the basis for a PREPA plan.[4] The RSA remains the right deal, with "gargantuan benefits" for PREPA and the people of Puerto Rico.[5] It reduces legacy debt by more than $2 billion and the present value of PREPA's debt service by at least 40%, while offering an "unprecedented" benefit to ratepayers: under the terms of the RSA, PREPA is not contractually obligated to increase rates to ratepayers above a pre-set, non-fluctuating charge to cover debt service.[6] The RSA also resolves significant pending litigation that, if left unabated, could mire PREPA in years of litigation, expose it to billions of dollars of additional debt payments, and risk delaying its emergence from Title III indefinitely.[7]

6.	The Official Committee of Unsecured Creditors (the "**Committee**") (with two PREPA creditors among its seven members) questions the business judgment of the Oversight Board and AAFAF in having reached the RSA, and makes clear that it prefers to engage in years of scorched earth litigation that would indefinitely delay PREPA's exit from Title III. This Court

---

[4] *See* FOMB Obj. ¶ 3 ("The Oversight Board continues to engage with the Puerto Rico Legislature to obtain the legislation necessary to implement the RSA."); AAFAF/PREPA Joinder ¶ 2 (stating that the process in the Legislature to enact legislation implementing the RSA should be allowed to continue); *see* Press Release, Financial Oversight and Management Board for Puerto Rico, *Oversight Board Met with PPD Caucus, Which Holds Majority in House of Representatives, to Discuss PREPA Debt Restructuring Agreement* at 1 (Feb. 23, 2022) https://drive.google.com/file/d/14vNRAMZEhCOXUG5kLNrznM5O8lLTOB8M/view, available at: https://oversightboard.pr.gov/press/ (stating the necessary RSA legislation "would enable [PREPA] to emerge from bankruptcy and continue the transformation of the energy sector to provide residents with more reliable, more affordable, and cleaner electricity"); Reorg, *AAFAF's Marrero Voices Support for Current PREPA RSA, Says Legislation Remains 'Biggest Concern' Based on Current Lack of Support in Legislature*, Reorg – Intel (Jan. 20, 2022, 3:19 PM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=166455 (quoting AAFAF Executive Director as saying, "We have a valid and existing RSA . . . .").

[5] FOMB Obj. ¶ 4.

[6] *See* Declaration of David Brownstein in Support of Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement ¶¶ 31, 43 [ Dkt. No. 1426].

[7] *See id*. ¶ 59.

has already decided, however, that it is not up to the Committee to make these determinations. So long as the Committee is given notice and opportunity to be heard on any compromise of claims, it does not have a right to force litigation of a claim objection.[8] In any event, the Ad Hoc Group's revised proposed mediation order moots any objections related to the scope of mediation.

**II.   The Parties Require Mediation to Develop a "Plan B" to Account for Failure by the Legislature to Pass Necessary PREPA Legislation.**

7. As currently drafted, the RSA requires legislation. While PREPA securitization legislation was actually passed by the Puerto Rico Legislature in 2016 in connection with the 2015 RSA,[9] new legislation is now required so that Puerto Rico can access the massive concessions reflected in the current RSA (including the removal of the automatic rate increase should rates be insufficient to pay the PREPA bond debt and the significant additional haircut applied to bond claims) and to implement certain elements of the deal that were critical to bondholders agreeing to provide these concessions (such as demand protections necessary to ensure customers pay their fair share of the transition charge).

8. Contrary to the assertions that meetings just commenced on legislation, those meetings actually started back in 2019/2020.[10] In March 2020, the Oversight Board even cited the

---

[8] *See* Memorandum Order Terminating Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18499 Filed By U.S. Bank National Association, in Its Capacity as Trustee for Non-Recourse PREPA Bonds at 5-6 [Dkt. No. 1855]. The Ad Hoc Group disagrees with the substantive arguments made in the Committee's objection (as well as assertions by other parties, such as the Fuel Line Lenders and SREAEE/UTIER, regarding the RSA and the relative priority of their interests) and will address them if necessary at the appropriate time. These disagreements underscore the importance of mediation.

[9] *See* Puerto Rico Electric Power Authority Revitalization Act, Act No. 4-2016.

[10] *See, e.g.*, Reorg, *Ortiz Says Governor Supports PREPA RSA, Says Bill to Execute Restructuring Should Be Submitted to Legislature Before Jan. 14 Rule 9019 Motion Hearing*, Reorg – Intel (Nov. 15, 2019, 3:15 PM EST) https://app.reorg.com/v3#/items/intel/1869?item_id=88376 (reporting that PREPA Executive Director Ortiz notes that discussions on RSA legislation with House and Senate have been ongoing); Reply of Government Parties in Support of Urgent Unopposed Motion of Government Parties for Eighth Revised Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235] ¶ 4 [Dkt. No. 1832] ("With respect

Legislature's opposition to passing legislation necessary under the RSA as a basis for postponing the hearing on the 9019 Motion.[11] Following meetings last week, key members of the Puerto Rico Legislature continue to state their opposition to the RSA legislation.[12] While the Ad Hoc Group welcomes the opportunity to continue to engage with the Puerto Rico Legislature, it is clear that simply continuing to wait for passage of the legislation is not a viable option.[13]

9. The two Title III plans of adjustment that have been confirmed to date, for the Commonwealth and COFINA debtors, demonstrate the merits of first reaching agreement on the terms of a restructuring with creditors before seeking to obtain legislation.[14] Here too, the best way to ensure that PREPA emerges from bankruptcy this year is to move forward on a dual-track process that includes a non-legislated solution, with the Legislature retaining the opportunity to pass the PREPA legislation prior to plan confirmation.

---

to legislation, the Government Parties are engaged in the Puerto Rico legislative process to support PREPA's exit from Title III and the transactions contemplated under the RSA.").

[11] *See* Financial Oversight and Management Board's Submission (A) in Further Support of Government Parties' Urgent Motion for an Eleventh Revised 9019 Scheduling Order; and (B) in Response to the Urgent Motion of the Fuel Line Lenders and Union Entities to Adjourn March 4, 2020 Hearing on Bondholders' and Government Parties' Motions to Dismiss in Adversary Proceedings ¶ 1 [Dkt. No. 1911] ("The Government Parties seek a revised schedule and hearing date for the 9019 Motion in light of . . . resistance by certain legislators to proposed legislation to facilitate the RSA.").

[12] The Speaker of the Puerto Rico House of Representatives, Hon. Rafael Hernández-Montañez, stated that the RSA, as drafted, "does not have the support of the House of Representatives." Reorg, *Opponents of PREPA Ad Hoc Group's Mediation Motion Argue Targeted Negotiations Would Exclude Key Stakeholders, Overlook Changed Economics in Absence of Legislation*, Reorg – Intel (Feb. 25, 2022, 6:13 PM EST) https://app.reorg.com/v3#/items/intel/1869?item_id=170345.

[13] In the words of Oversight Board member Justin Peterson, "We need the legislature to rise above the demagoguery and pass the RSA. . . . If they don't do it, it's not going to prevent the board from finishing the restructuring of PREPA. We are going to do it, it's just going to cost more." Jim Wyss, *Puerto Rico Governor Asks to Renegotiate Power-Company Debt Plan*, Bloomberg (Feb. 25, 2022, 12:03 PM EST), https://www.bloomberg.com/news/articles/2022-02-25/puerto-rico-governor-asks-to-renegotiate-power-company-debt-plan.

[14] *See, e.g.*, Oct. 25, 2021 Hr'g Tr. 8:22-10:24 [Case No. 17-03283-LTS, Dkt. No. 18747] (Judge Laura Taylor Swain stating, "This proposal [the Commonwealth's Plan of Adjustment] required extraordinary work over several years from the unique mediation team of judges to assist a multitude of parties in reaching the compromises that are incorporated into the current Plan proposal" and expressing concern that the legislation necessary to effectuate the Plan had not yet been passed subsequent to that significant negotiation and mediation); Disclosure Statement for the Amended Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax Financing Corporation § 1 [Case No. 17-03284-LTS, Dkt. No. 353] (discussing timeline for COFINA plan and legislation).

10. A Plan B solution that preserves the benefits of the RSA is achievable. The Ad Hoc Group believes that a mediator can assist the parties in reaching a non-legislative solution to the RSA. The framework of the RSA already exists, and it provides enormous benefits for both sides. What the parties need is a neutral third party that is empowered to establish a structured process for engagement and negotiation.

11. The Ad Hoc Group is confident that once regularly scheduled meetings between principals commence, the parties can structure a non-legislative mechanism that largely maintains the core components of the RSA for the mutual benefit of all parties: PREPA, the people of Puerto Rico, and the investors who have worked as partners with PREPA for years.

### III. The Court Should Appoint Ret. Judge Houser as Mediator Because Appointment of a Mediator Has Near-Universal Support.

12. As the responses to the Mediation & Plan Deadline Motion show, the appointment of a mediator has nearly universal support. The Oversight Board, AAFAF, PREPA, National, the Fuel Line Lenders, Assured, and the PREPA Bond Trustee have all signaled support for a mediation process in their responses to the Mediation & Plan Deadline Motion.[15]

13. The Ad Hoc Group believes the objectors' primary concern with the mediation process – inclusion – has been addressed in the Revised Proposed Mediation Order that the Ad

---

[15] *See e.g.,* FOMB Obj. ¶ 1 ("Oversight Board welcomes either the Court ordering mediation with a judicial or non-judicial mediator, or simply directing that negotiations take place"); AAFAF/PREPA Joinder ¶ 3 (stating "mediation can play an important role in bringing PREPA's Title III Case to an appropriate conclusion"); PREPA Bond Trustee Joinder ¶ 2 (PREPA Bond Trustee "supports and joins the requests in the Motion"); FLL Joinder ¶ 6 (Fuel Line Lenders "believe that the request for a mediation under Judge Houser's capable direction is a constructive one"); National Joinder ¶ 5 (National "requests that the Court enter orders appointing Judge Houser as mediator" and setting deadlines for PREPA plan of adjustment); Assured Resp. ¶ 5 ("Assured also agrees with the Ad Hoc Group that any mediation should be 'short and targeted.'"). The UCC says it "is not opposed to mediation." UCC Obj. ¶ 4. UTIER and SREAEE "take no position regarding the appointment of a mediator." UTIER/SREAEE Reserv. ¶ 15.

Hoc Group filed on Friday, which makes clear that all parties are welcome to participate and allows the mediator to determine the order in which to meet with parties.[16]

14. No party objects to the appointment of Ret. Judge Houser as the mediator for PREPA. Governor Pierluisi even publicly voiced his support for Ret. Judge Houser at the Oversight Board's public meeting last Friday, stating that she has proven effective at "finding common ground" between parties.[17] While the Oversight Board, AAFAF, and PREPA posit that they also may want to suggest a mediator to the Court, there is simply no other mediator that can step in as quickly and seamlessly as Ret. Judge Houser.

15. Ret. Judge Houser is the natural choice for mediator here. She has years of experience as a judicial mediator, and direct and prolonged experience with many of the parties in the Puerto Rico and PREPA bankruptcies based on her work as a mediator in various Title III cases from June 2017 onward. Indeed, her success as the leader of the team that mediated the COFINA, Commonwealth, and HTA cases is self-evident.

16. Appointing Ret. Judge Houser would also result in massive cost savings for the parties. She is already familiar with the requirements of PROMESA, many of the issues involving Puerto Rico debt and revenue bonds, and other Puerto Rico specific obligations. The parties (particularly including the Government Parties and the Committee, whose advisors' costs are paid directly by Puerto Rico) will spend far less time and money bringing Ret. Judge Houser up to

---

[16] *See* Notice of Revised Proposed Order Regarding the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment [Dkt. No. 2730] ("**Revised Proposed Mediation Order**"). The Ad Hoc Group welcomes the presence of Assured and the other RSA parties to mediation, but does not believe that additional language is necessary to achieve this result.

[17] Reorg, *Gov. Pierluisi Says PREPA RSA Needs to Be Revisited to Address New Economic, Demand Forecasts, Modify Application of Transition Charge for Clients Who Produce Power; Governor Calls on Oversight Board to Explore Alternatives to Toll Hikes*, Reorg – Intel (Feb. 25, 2022, 3:56 PM EST) https://app.reorg.com/v3#/items/intel/1869?item_id=170325.

speed than they would any other possible mediator, resulting in enormous savings for Puerto Rico. The suggested appointment process for another potential mediator would itself result in substantial professional expenses and potentially weeks or months of delays in substantive engagement.

17. Ret. Judge Houser has already expressed her willingness to mediate in this case on the terms provided in the Revised Proposed Mediation Order; she is ready to begin, and given her experience with Puerto Rico's restructurings, she is the right choice to mediate the remaining Title III restructuring.

### IV. Imposing Deadlines on a Plan Process Is Necessary to Move a Plan Forward.

18. PREPA's Title III case cannot be allowed to linger indefinitely. The Ad Hoc Group urges the Court to adopt deadlines that will help move this case forward.

19. These Title III cases demonstrate that deadlines work. The Court's imposition of plan deadlines helped move the Commonwealth's Title III case to plan confirmation just last month. The Oversight Board suggests that imposing a deadline in PREPA's case would be meaningfully different from imposing a deadline in the Commonwealth case because there is still so much work to be done in PREPA. That is not the case. This Court imposed a deadline for the Commonwealth case even though numerous complex issues still needed to be resolved, including a deal with the general obligation and PBA creditors, clawback issues, and the treatment of PRIFA, unsecured creditors, and appropriation bonds. As of the date of the Court-imposed deadline in the Commonwealth bankruptcy, the Oversight Board had reached agreement only with the general obligation/PBA creditors. That initial agreement, however, served as an anchor and a catalyst for each of the subsequent agreements achieved before confirmation.

20. Ms. Jaresko's upcoming departure from the Oversight Board also weighs in favor of imposing near-term deadlines. Almost a month has elapsed since her departure was announced,

Case:17-03283-LTS Doc#:20226 Filed:02/28/22 Entered:02/28/22 18:58:52 Desc: Main
Document Page 12 of 14

and important questions regarding the process and timing for appointment of a successor remain unanswered.

21. The Oversight Board suggests that institutional knowledge will not be lost when Ms. Jaresko departs. The Ad Hoc Group appreciates the hard work and effort demonstrated by the members of the Oversight Board, but they have full-time jobs and obligations beyond their part-time, unpaid roles as Oversight Board members. Ms. Jaresko is a full-time employee of the Oversight Board. In addition to her direct involvement in the structuring of the RSA, Ms. Jaresko has been instrumental in explaining the terms of the RSA to other relevant constituencies. Indeed, the Oversight Board stated in its objection that last week's legislation meeting was conducted between Ms. Jaresko herself and legislative leaders.[18] Mediation should commence immediately, before Ms. Jaresko leaves, and near-term deadlines are required to incentivize real progress prior to her departure. Of course, if the parties are making progress in mediation and additional time is required, the mediator can always recommend to the Court that the deadlines be extended.

22. Continuing to wait, however, cannot be an option. As AAFAF's executive director pointed out, PREPA's continuing bankruptcy and "bad credit make everything more expensive," including the necessary purchase of fuel and power, and PREPA's Title III proceeding is the major obstacle thwarting the government's renewable energy goals and economic development initiatives.[19] The ongoing bankruptcy also jeopardizes PREPA's privatization. If PREPA does

---

[18] FOMB Obj. ¶ 3.

[19] Reorg, *AAFAF Chief Marrero Signals PREPA RSA 'Most Likely' Will Need Renegotiation, Given Lack of Legislative Support*, Reorg – Intel (Feb. 7, 2022, 09:43 AM EST), https://app.reorg.com/v3#/items/intel/1869?item_id=168129.

not emerge from bankruptcy by December 1, 2022, LUMA is entitled to terminate its agreement and receive a $115 million termination fee.[20]

23. There will never be a perfect time to complete a PREPA plan of adjustment. But operating without deadlines has removed all sense of urgency from this case, and restoring momentum is critical. The success of the Commonwealth and COFINA cases highlights the importance of structure and deadlines. The Ad Hoc Group therefore urges the Court to require the parties to attend mediation and adopt the deadlines in the proposed plan deadline order (the "**Proposed Plan Deadline Order**").

## CONCLUSION

The Ad Hoc Group respectfully requests that the Court enter two orders, each substantially in the form reattached hereto as **Exhibit A** (the Revised Proposed Mediation Order) and **Exhibit B** (the Proposed Plan Deadline Order), granting the relief requested in this Reply and such other and further relief as the Court deems just and proper.

---

[20] *See* Puerto Rico Transmission and Distribution System Supplemental Terms Agreement, appended to Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement, dated as of June 22, 2020, by and among PREPA, the P3 Authority, and LUMA §§ 3.3, 4.2, 6.1, 7.1, 7.2 [Dkt. No. 2053-4].

We hereby certify that, on this same date, we electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

Dated: San Juan, Puerto Rico
February 28, 2022

| | |
|---|---|
| **TORO COLÓN MULLET P.S.C.**<br>P.O. Box 195383<br>San Juan, PR 00919-5383<br>Tel.: (787) 751-8999<br>Fax: (787) 763-7760<br><br>/s/ Manuel Fernández-Bared<br>MANUEL FERNÁNDEZ-BARED<br>USDC-PR No. 204204<br>E-mail: mfb@tcm.law<br><br>/s/ Linette Figueroa-Torres<br>LINETTE FIGUEROA-TORRES<br>USDC-PR No. 227104<br>E-mail: lft@tcm.law<br><br>/s/ Nayda Perez-Roman<br>NAYDA PEREZ-ROMAN<br>USDC–PR No. 300208<br>E-mail: nperez@tcm.law<br><br>*Counsel for the Ad Hoc Group of PREPA Bondholders* | **KRAMER LEVIN NAFTALIS & FRANKEL LLP**<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Tel.: (212) 715-9100<br>Fax: (212) 715-8000<br><br>/s/ Amy Caton<br>AMY CATON*<br>THOMAS MOERS MAYER*<br>ALICE J. BYOWITZ*<br>Email: acaton@kramerlevin.com<br>tmayer@kramerlevin.com<br>abyowitz@kramerlevin.com<br><br>*Admitted Pro Hac Vice<br><br>*Counsel for the Ad Hoc Group of PREPA Bondholders* |