Hearing Date: **March 23, 2022 at 9:30 a.m. (Atlantic Standard Time)**
Objection Deadline: **March 8, 2022 at 4:00 p.m. (Atlantic Standard Time)**

# UNITED STATES DISTRICT COURT
# FOR THE COURT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Debtor-Movant. | No. 17 BK 4780-LTS<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

# NOTICE OF MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY PURSUANT TO BANKRUPTCY CODE SECTION 503(b), PROMESA SECTION 315(a)(3), AND BANKRUPTCY RULE 9019 FOR ORDER APPROVING SETTLEMENT AGREEMENT WITH WHITEFISH ENERGY HOLDINGS, LLC AND GRANTING RELATED RELIEF

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); ); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**PLEASE TAKE NOTICE** that, upon the accompanying *Motion of Puerto Rico Electric Power Authority Pursuant to Bankruptcy Code Section 503(b), PROMESA Section 315(a)(3), and Bankruptcy Rule 9019 for Order Approving Settlement Agreement with Whitefish Energy Holdings, LLC and Granting Related Relief* (the "Motion"),[2] the Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[3] moves this Court, before the Honorable Laura Taylor Swain, United States District Judge, United States District Court for the Southern District of New York, at the United States District Court for the District of Puerto Rico, 150 Carlos Chardón Street, Federal Building, San Juan, Puerto Rico, on **March 23, 2022 at 9:30 a.m. (Atlantic Standard Time)**, or as soon thereafter as counsel may be heard, for an order pursuant to 11 U.S.C. § 503(b), as made applicable to PREPA's Title III case through PROMESA § 301, PROMESA § 315(a)(3), and Bankruptcy Rule 9019, approving the Settlement Agreement entered into by and between PREPA, the Oversight Board, and Whitefish Energy Holdings, LLC, and for such other and further relief as this Court may deem just and proper.

Pursuant to the *Sixteenth Amended Notice, Case Management and Administrative Procedures* (ECF No. 20190-1; Case No. 17-03283-LTS) (the "Case Management Procedures"), any Objection to the Motion shall be filed and served by **March 8, 2020, at 4:00 p.m. (Atlantic Standard Time)**.  The relief requested may be granted without a hearing if no Objection is timely filed and served in accordance with the Court's Case Management Procedures.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Dated: March 1, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Paul V. Possinger*
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
      ppossinger@proskauer.com
      ebarak@proskauer.com

*Attorneys for the Financial
Oversight and Management Board
as representative for PREPA*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Co-Attorney for the Financial Oversight and
Management Board as representative for
PREPA*

**Hearing Date:  March 23, 2022 at 9:30 a.m. (Atlantic Standard Time)**
**Objection Deadline: March 8, 2022 at 4:00 p.m. (Atlantic Standard Time)**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer

# UNITED STATES DISTRICT COURT
# FOR THE COURT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>      Debtor.[4] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>      Debtor-Movant. | No. 17 BK 4780-LTS |

## MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY PURSUANT TO BANKRUPTCY CODE SECTION 503(b), PROMESA SECTION 315(a)(3), AND BANKRUPTCY RULE 9019 FOR ORDER APPROVING SETTLEMENT AGREEMENT WITH WHITEFISH ENERGY HOLDINGS, LLC AND GRANTING RELATED RELIEF

---

[4]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); ); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Jurisdiction and Venue ................................................................................................ 2

Background ................................................................................................................. 2

I.      Commencement of the Title III Cases ............................................................ 2

II.     Hurricanes Irma and Maria and Their Aftermath ........................................... 3

III.    The WEH Contract and its Subsequent Termination ...................................... 3

IV.     The Settlement Agreement .............................................................................. 6

Relief Requested ........................................................................................................ 11

I.      Approval of the Settlement Agreement .......................................................... 11

        A.      Probability of Success ......................................................................... 14

        B.      Complexity of Litigation Involved and Expense, Inconvenience and Delay
                Attending It .......................................................................................... 16

        C.      Interests of Creditors ........................................................................... 1717

Notice ........................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bos v. Jalbert (In re ServiSense.com, Inc.)*,
No. 02-cv-11987-PBS, 2003 U.S. Dist. LEXIS 17057 (D. Mass. Sept. 26,
2003) ....................................................................................................................16

*City of Sanitation, LLC v. Allied Waste Serves. of Mass., LLC* (*In re Am. Cartage,
Inc.*)
656 F.3d 82 (1st Cir. 2011) .............................................................................12, 13

*Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*,
136 F.3d 45 (1st Cir. 1998) .........................................................................12, 13, 14

*Hill v. Burdick (In re Moorhead Corp.)*,
208 B.R. 87 (B.A.P. 1st Cir. 1997) .....................................................................13

*In re C.P. del Caribe, Inc.*,
140 B.R. 320 (Bankr. D.P.R. 1992) .....................................................................14

*In re Hansen*,
No. 12-11907-JMD, 2017 Bankr. LEXIS 1120 (Bankr. D.N.H. Apr. 25, 2017)....................14

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*,
No. 04-cv-10585, 2009 Bankr. LEXIS 2846 (Bankr. D.P.R. Mar. 31, 2009) ........................14

*In re Receivership Estate of Indian Motorcycle Mfg., Inc.*,
299 B.R. 8 (D. Mass. 2003) .................................................................................15

*In re Servisense.com, Inc.*,
382 F.3d 68 (1st Cir. 2004).................................................................................17

*Jeffrey v. Desmond*,
70 F.3d (1st Cir. 1995).................................................................................15, 17

*Jeremiah v. Richardson*,
148 F.3d 17 (1st Cir. 1998)................................................................................13

*Official Comm. of Unsecured Creditors v. Moeller (In re Age Refining, Inc.)*,
801 F. 3d 530 (5th Cir. 2015) ............................................................................13

*United States v. Sterling Consulting Corp. (In re Indian Motorcycle Co.)*,
289 B.R. 269 (B.A.P. 1st Cir. 2003)...................................................................12, 14

*Yacovi v. Rubin & Rudman, L.L.P.* (*In re Yacovi*),
    411 F. App'x. 342 (1st Cir. 2011) ............................................................14

**STATUTES**

Bankruptcy Code § 363 ....................................................................12

Bankruptcy Code § 503 ............................................................... passim

Puerto Rico Oversight, Management, and Economic Stability Act § 315 ...........................1, 2, 11

**OTHER AUTHORITIES**

2 C.F.R., pt. 200 ...........................................................................8

Fed. R. Bankr. P. 7052 ......................................................................2

Fed. R. Bankr. P. 9019 ............................................................... 1, 3, 12-14

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") as PREPA's sole Title III representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submits this motion (the "Motion"), pursuant to section 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to this Title III case by PROMESA section 301, PROMESA section 315(a)(3), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable in this Title III case by section 310 of PROMESA, requesting an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), approving the Final Settlement and Release Agreement (the "Settlement Agreement")[5] by and among PREPA, the Oversight Board, and Whitefish Energy Holdings, LLC ("WEH"), a true and correct copy of which is attached hereto as **Exhibit B**. The Settlement Agreement fully and finally resolves the *Motion of Whitefish Energy Holdings, LLC for Allowance of Administrative Expense Claim* [Docket No. 2281][6] (the "Admin Claim Motion") and all disputes related thereto and provides for:

(i)     payment of $90,289,283.00 in two (2) installments with (a) the first installment in the amount of $63,800,717.17 to be paid to WEH by PREPA from funds already paid to PREPA from the Federal Emergency Management Agency ("FEMA") for the sole purpose of paying unpaid invoices approved for payment by FEMA and owed to WEH in this amount, on or before the fifteenth (15th) business day following the execution of the Settlement Agreement (prior to the date of the

---

[5]   Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in the Settlement Agreement.

[6]   Unless otherwise stated, docket references shall refer to the docket in Case No. 4780.

hearing on this Motion), and (b) the second installment in the amount of $26,488.565.83 to be paid to WEH by PREPA on or before the fifteenth (15th) business day following entry of an order approving the Settlement Agreement;

(ii)     an allowed administrative expense claim in favor of WEH in the amount of $6,023,695.00, payable on the effective date of PREPA's plan of adjustment in the PREPA Title III Case, but in no event later than December 31, 2023;

(iii)    the requirement that the Oversight Board, PREPA, and WEH collaboratively pursue the FEMA administrative appeal process for the reimbursement of certain amounts denied by FEMA; and

(iv)    reduction of accrued interest charges under the WEH Contract (as defined below) by $19,004,808.50, with no further interest accrual from and after date of the execution of the Settlement Agreement (unless no order is entered approving the Settlement Agreement on or before May 1, 2022), provided all payments by PREPA under the Settlement Agreement are timely and fully made.

## Jurisdiction and Venue

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief sought herein are section 503(b) of the Bankruptcy Code, PROMESA section 315(a)(3), and Bankruptcy Rule 9019..

## Background

## I.    Commencement of the Title III Cases

4.      On May 3, 2017, the Oversight Board filed a voluntary petition for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a).

5.      On July 2, 2017, the Oversight Board filed this Title III case for PREPA. Subsequently, between June 1, 2017 and October 9, 2019, the Court entered certain orders that collectively granted the joint administration of the Title III Cases for the Commonwealth and its instrumentalities, including PREPA [Case No. 17-3283, ECF Nos. 242, 537, 1417, and 8829].

## II.      Hurricanes Irma and Maria and Their Aftermath

6.      In September 2017, Puerto Rico was devastated by Hurricanes Irma and Maria within a two-week span.  Hurricane Maria was the strongest hurricane to hit Puerto Rico since 1932 and the fifth strongest ever to hit the United States.  The hurricanes destroyed much of the Island's infrastructure and upended the daily lives of all Puerto Ricans and the work of the Oversight Board.  As a result of the hurricanes, approximately 80% of PREPA's energy transmission infrastructure was damaged.

7.      An estimated 1.5 million customers lost access to power and electricity as PREPA confronted one of the largest blackouts in United States history.  PREPA immediately set out to restore power to the island's residents in the face of significant obstacles, including downed communication infrastructure that hampered efforts to distribute materials and coordinate repair efforts, and mountainous and demolished terrains that prevented PREPA and its contractors from easily accessing damaged infrastructure, including thousands of miles of transmission lines and utility poles.  Among the contractors engaged by PREPA in the hurricane recovery effort was WEH.

## III.      The WEH Contract and its Subsequent Termination

8.      On September 26, 2017, PREPA entered into a contract with WEH (as amended, the "WEH Contract") for the repair of the electrical system main structures (the back-bone of the system), consisting of approximately 200 miles of transmission lines and towers, many of which were located in the mountainous region of Puerto Rico's rugged interior.  The WEH Contract

3

required PREPA to pay WEH for work performed on Puerto Rico's electrical grid on a time-and-materials basis.  The WEH Contract was validated by the Office of the Comptroller General for the Commonwealth of Puerto Rico.

9.      On October 31, 2017, PREPA terminated the WEH Contract in accordance with its terms, effective November 30, 2017, which termination was unrelated to WEH's performance under the WEH Contract.

10.     Prior to the effective date of the WEH Contract's termination, WEH completed all of the work that had been requested by PREPA, including the repair of the five (5) transmission line segments assigned to WEH by PREPA.  The work completed under the WEH Contract by WEH included, among other projects: (1) clearing right-of-ways, access roads, and helicopter staging areas so repair equipment and manpower could be transported to repair sites and repair work could begin; (2) replacing over 50 electrical towers, dismantling a like number of towers, and completing corrective actions on over 200 other transmission structures; and (3) restoring electricity to major residential and industrial areas across Puerto Rico, including San Juan, Calguas, Manati, and Juntos customers by replacing and repairing several hundred poles and distribution lines.

11.     While the WEH Contract states PREPA is obligated for payment to WEH, the federal government authorized one-hundred percent (100%) federal cost share emergency protective measures, including direct federal assistance, for 180 days, starting on September 17, 2017 for the WEH Contract, subject to FEMA review and approval of WEH's charges.  All work completed by WEH was done within the designated 180 day period.

12.     With WEH's assistance, PREPA prepared the contract analysis, cost reasonableness analysis, and invoices for the work performed under the WEH Contract (the

"FEMA Documentation") to submit for FEMA approval and reimbursement. WEH submitted invoices to PREPA for (i) work performed ("Work Performed Invoices"); and (ii) mobilization and demobilization activities ("Mob/Demob Invoices," and together with Work Performed Invoices, the "WEH Invoices"), together totaling $144,249,543.00 during the term of the WEH Contract. Under the WEH Contract, WEH invoiced PREPA for certain advance payments for mobilization and demobilization, which PREPA paid in the amount of $17,722,267.00 ("Advance Payments").

13.  As of the date hereof, in addition to the Advance Payments, PREPA has made payments on account of the WEH Invoices, consisting of $6,275,699.00 for Mob/Demob Invoices and $13,058,139.00 for Work Performed Invoices, leaving $107,193,438.00 outstanding on account of the WEH Invoices (after application of the Advance Payments). Under the WEH Contract, finance charges have accrued through February 11, 2022, the date of execution of the Settlement Agreement, at a rate of 1% per month for all overdue WEH Invoices (the "Finance Charges") as to which WEH has submitted a series of invoices. As of February 11, 2022, WEH asserted the Finance Charges had accrued to $52,889,091.07.

14.  On June 29, 2018, PREPA submitted the FEMA Documentation to the Governor's Authorized Representative, the Central Office for Recovery, Reconstruction, and Resiliency ("COR3") for review. In August 2018, COR3 submitted the FEMA Documentation to FEMA, requesting reimbursement on account of the WEH Invoices and certain amounts previously paid to WEH.

15.  On August 19, 2021, FEMA issued a Determination Memorandum Number FEMA-4339-DR-PR, in which FEMA determined, of the $144,249,543.53 submitted by PREPA for reimbursement for the WEH Invoices, $111,352,417.00 was eligible for reimbursement

("FEMA Approved Amounts"), but that PREPA had not sufficiently demonstrated that the remaining $32,897,126.53 was eligible for reimbursement ("FEMA Denied Amounts"). The FEMA Denied Amounts consist of $28,040,356.17 in Mob/Demob Invoices, and $4,856,770.36 in Work Performed Invoices. The FEMA Approved Amounts and the FEMA Denied Amounts constitute the entirety of the WEH Invoices, thus FEMA's initial review of all WEH Invoices is complete.

16.    On October 18, 2021, PREPA submitted to COR3 an administrative appeal (the "FEMA Appeal") of FEMA's determination that the FEMA Denied Amounts were not eligible for reimbursement. On December 17, 2021, COR3 accepted the appeal and submitted it to FEMA.

**IV.    The Settlement Agreement**

17.    Since the filing of the Admin Claim Motion, the Parties have negotiated to resolve all matters in dispute arising under or in any way related to the WEH Contract, the WEH Invoices, the Finance Charges, and otherwise regarding any activities, acts, or omissions of WEH and PREPA. These efforts have culminated in the Settlement Agreement, which resolves all such disputes between the parties.

18.    The Settlement Agreement provides, among other things, for cash payments from PREPA to WEH in the amount of $90,289,283.00 (collectively, the "Cash Payment") on account of Work Performed Invoices that have been approved for reimbursement by FEMA, but not yet paid to WEH.

19.    The Cash Payment will be paid in two (2) installments with (i) the first installment in the amount of $63,800,717.17 to be paid to WEH by PREPA on or before the fifteenth (15th) business day following the execution of the Settlement Agreement and (ii) the second installment in the amount of $26,488,565.83 to be paid to WEH by PREPA on or before the fifteenth (15th) business day following court approval of the Settlement Agreement. The amount of the first

installment reflects the amount of WEH invoices that have not been paid by PREPA that FEMA

has approved and for which FEMA recently transferred funds to PREPA for payment to WEH (in

January 2022).

20.     Disaster assistance provided by FEMA takes the form of federal grants and is

subject to the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for

Federal Awards set forth in 2 C.F.R., Part 200.  Recipients (and subrecipients) of federal grants

are required to use grant funds for the purpose for which they are issued.  2 C.F.R. § 200.305.

Prior to approving and obligating funds for payment to PREPA, FEMA conducted a detailed,

multi-year review and approval process of specific invoices and documentation demonstrating,

among other things, that the work performed was eligible for reimbursement, the costs were

reasonable, and the costs were actually incurred.

21.     Funds paid to PREPA by FEMA for the specific purpose of paying unpaid invoices

to disaster relief contractors (as opposed to reimbursing PREPA for amounts it previously paid)

are required to be paid to the subject contractor under the invoices approved by FEMA for

payment.  *See* FEMA Public Assistance Program and Policy Guide, version 3.1, April 2018, at

pages 144-145.  Failure to do so would violate the terms of the grant, and cause FEMA to require

return of the funds improperly used at grant closeout.  2 C.F.R. §200.344.  PREPA is not entitled

to retain such funds for its own account.  200 C.F.R. § 200.400(g).  Thus, upon reconciliation by

PREPA of the invoices for which payment has been made to PREPA by FEMA, PREPA is

obligated to pay such amounts to WEH.  PREPA will therefore pay the first installment of the Cash

Payment to WEH under the Settlement Agreement prior to the hearing on this Motion.

22.     Pursuant to the Settlement Agreement, WEH will have an allowed administrative

expense claim for an initial total amount of $133,369,078.00 (the "Initial Admin Claim"),

7

consisting of (i) Work Performed Invoices for which FEMA has obligated funds in the amount of

$103,347,417.00; (ii) mobilization and demobilization payments for which FEMA has agreed to

reimburse PREPA in the amount of $8,005,000.00, which consists of Mob/Demob Invoices in the

amount of $6,275,699.00 and Advance Payments in the amount of $1,729,301.00; (iii) the

Advance Payments PREPA has already paid to WEH for mobilization and demobilization services

for which FEMA has not yet agreed to reimburse PREPA in the amount of $15,992,966.00; and

(iv) $6,023,695.00, which amount represents 50% of the remaining amounts due to WEH for

unpaid Mob/Demob Invoices (after full application of the Advance Payments) for which FEMA

has not yet agreed to reimburse PREPA (and that are the subject of the FEMA Appeal). For the

avoidance of doubt, $37,056,105.00 of the Initial Admin Claim has already been paid to WEH,

and the Cash Payment will be applied to reduce the Initial Admin Claim further on a dollar-for-

dollar basis.  Accordingly, following payment of the Cash Payment, WEH will hold an allowed,

unpaid Initial Admin claim in the amount of $6,023,695.00, payable on the effective date of a plan

of adjustment for PREPA in this Title III Case, but in no event later than December 31, 2023.

23.     The Settlement Agreement further provides for the cooperation of the Oversight

Board, PREPA, and WEH throughout the FEMA Appeal process (including, if necessary,

arbitration before the Civilian Board of Contract Appeals), in the pursuit of the reimbursement of

the FEMA Denied Amounts.  PREPA must obtain WEH's prior written consent before settling

any portion of the FEMA Appeal, unless WEH is paid in full for the Denied Work Performed

Invoices and the remaining $12,047,390.00 of the Denied Mob/Demob Invoices for which PREPA

has not paid WEH from its own assets.  If PREPA withdraws or abandons the FEMA Appeal prior

to WEH being paid in full for such aforementioned amounts, WEH's allowed administrative

expense claim will be increased by $10,880,460.00,[7] payable on the effective date of a plan of adjustment for PREPA in this Title III Case, but in no event later than December 31, 2023.  For the avoidance of doubt, such increase shall not occur if the FEMA Appeal is denied after due prosecution.

24.     If FEMA agrees to obligate funds for any portion of the $4,856,765.00 in Work Performed Invoices that FEMA has initially denied as part of the Denied Invoice Amounts ("Denied Work Performed Invoices"), WEH's allowed administrative expense claim will increase dollar for dollar over the amount of the Initial Admin Claim by the amount of such obligated funds. PREPA shall remit payment to WEH for the amounts of the Denied Work Performed Invoices for which FEMA agrees to obligate funds within thirty (30) calendar days of FEMA's obligation of funds.

25.     Further, if FEMA agrees to obligate funds for any portion of the $28,040,356.00 in Mob/Demob Invoices that FEMA has initially denied as part of the Denied Invoice Amounts ("Denied Mob/Demob Invoices"):

a. The first $6,023,695.00 in additional Denied Mob/Demob Invoices for which FEMA agrees to obligate funds shall increase WEH's allowed administrative expense claim dollar for dollar, over the amount of the Initial Admin Claim, regardless of which Mob/Demob Invoices are identified as reimbursable by FEMA or included in the obligation of funds;

b. The second $6,023,695.00 in additional Denied Mob/Demob Invoices for which FEMA agrees to obligate funds shall be applied to satisfy $6,023,695.00 of the Initial Admin Claim.  PREPA shall pay WEH for the Denied Mob/Demob Invoices reimbursable by FEMA within thirty (30) calendar days of FEMA's obligation of funds, up to $12,047,390.00; and

---

[7]   This amount is the sum of the $4,856,765.00 of Work Performed Invoices that is subject to the FEMA Appeal, and 50% of the Mob/Demob Invoices that have not been paid by PREPA that are subject to the FEMA Appeal (the other 50% is part of the Initial Admin Claim).

    c. Any amounts of the Denied Mob/Demob Invoices obligated by FEMA over $12,047,390.00 shall be retained by PREPA and applied to the Mob/Demob Invoices that were paid to WEH through the Advance Payments.

26. WEH waives the right to assert any further administrative expense claims against PREPA, other than the administrative expense claim provided for under the Settlement Agreement, for WEH Invoices not ultimately obligated for reimbursement to PREPA by FEMA. WEH is therefore accepting the risk that up to $10,880,460.00 of the amount subject to the FEMA Appeal is ultimately rejected by FEMA.

27. In addition, WEH has agreed to reduce the accrued Finance Charges as of the date of execution of the Settlement Agreement by $19,004,808.50. PREPA requests that the remaining $33,884,282.57 of such accrued finance charges be allowed as an administrative expense claim, payable in full on the effective date of PREPA's plan of adjustment, but in no event later than December 31, 2023. However, if an order is not entered approving the Settlement Agreement on or prior to May 1, 2022, then the parties have agreed that Finance Charges shall thereafter accrue at the rate provided under the WEH Contract on all amounts of the Initial Admin Claim that have not been paid as of such date, and such Finance Charges shall accrue as an allowed administrative expense claim (the "Contingent Interest Admin Claim").

28. Finally, under the Settlement Agreement, if the payments required thereunder are not timely or fully made as described therein, (i) such unpaid amounts shall thereafter accrue a finance charge in the amount of 1% per month, which finance charge shall accrue as an allowed administrative expense claim, and (ii) the $19,004,808.50 reduction in Finance Charges shall be reinstated as an allowed administrative expense claim, each of which shall be payable on the effective date of PREPA's plan of adjustment, but in no event later than December 31, 2023.

10

**Relief Requested**

29.    By this Motion, the Debtor seeks entry of an order, among other things:
(i) approving all provisions of the Settlement Agreement; (ii) authorizing the payment of the
remaining amount of the Cash Payment as of the date the Settlement Agreement is approved, as
described in the Settlement Agreement; (iii) allowing WEH's Initial Admin Claim, and all
components thereof, subject to the payment terms in the Settlement Agreement; (iv) granting WEH
an allowed administrative expense claim for the Finance Charges in the amount of $33,884,282.57,
subject to the terms of the Settlement Agreement (including the terms of potential reinstatement
of waived charges as an allowed administrative expense claim), (v) authorizing the payment and
administrative claim allowance provisions related to the outcome of the FEMA Appeal, and
(vi) providing for the full and complete satisfaction of PREPA's obligations under the WEH
Contract, the WEH Invoices, the Finance Charges and otherwise regarding any activities, acts or
omissions of WEH.

**I.     Approval of the Settlement Agreement**

30.    Section 363 of the Bankruptcy Code, governing the use of property, does not apply
to PREPA's Title III Case. However, section 503(b), governing the allowance of administrative
expense claims, is incorporated into PROMESA pursuant to section 301(a).  Because the WEH
Contract and asserted administrative expense claims were material and matters of concern to many
parties in interest and to the Government, the Oversight Board determined not to settle the
administrative claims asserted by WEH without Court approval on notice to parties in interest.
PREPA seeks entry of the Proposed Order pursuant to Bankruptcy Code section 503(b),
PROMESA section 315(a)(3), and Bankruptcy Rule 9019, to prosecute this Title III Case by
settling all matters in dispute arising under or in any way related to the WEH Contract, the WEH
Invoices, the Finance Charges, the Admin Claim Motion, and otherwise with regard to any

11

activities, acts or omissions of WEH.  To the extent, if any, required under PROMESA section

305, the Oversight Board has consented to the relief requested herein.

31.     Bankruptcy Code section 503(b) provides "[a]fter notice and a hearing, there shall

be allowed administrative expenses, other than claims allowed under section 502(f) of this title,

including …(A )the actual, necessary costs and expenses of preserving the estate…."  This Court

has held that, despite the lack of any estate in this Title III case, section 503(b) is nonetheless

applicable in Title III cases.  *See Memorandum Opinion Granting In Part And Denying In Part*

*PREPA's Motion For Entry Of An Order Allowing Administrative Expense Claim For*

*Compensation For Front-End Transition Services Under The Puerto Rico Transmission And*

*Distribution System Operation And Maintenance Agreement With LUMA Energy* (ECF No. 2258).

32.     Bankruptcy Rule 9019(a) provides a court may approve a debtor's compromise and

settlement, and the First Circuit has emphasized that "[s]tipulations of settlement are favored by

the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factor[.]"

*United States v. Sterling Consulting Corp. (In re Indian Motorcycle Co.)*, 289 B.R. 269, 282

(B.A.P. 1st Cir. 2003); *see also Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d

45, 50 n.5 (1st Cir. 1998).

33.     The standard courts apply for approval of settlements under Rule 9019 requires the

Court to ensure the settlement does not fall below the lowest point in the range of reasonableness

in terms of benefits to the Debtor.  *See City of Sanitation, LLC v. Allied Waste Serves. of Mass.,*

*LLC* (*In re Am. Cartage, Inc.*) 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy

court and any reviewing court is to canvass the issues and see whether the settlement falls below

the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent

12

sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some

deference.") (internal citations and quotations omitted).

34.    The approval of settlements is within the court's wide discretion.  *See Jeremiah v.*

*Richardson*, 148 F.3d 17, 22 (1st Cir. 1998).  However, while a court should apply its own

independent judgment to determine whether to approve a settlement, it should also afford

deference to the judgment of the trustee or debtor in possession, and in this case the Oversight

Board.[8]  *See In re Receivership Estate of Indian Motorcycle Mfg., Inc.*, 299 B.R. 8, 21 (D. Mass.

2003) (the court should give "substantial deference to the business judgment of a bankruptcy

trustee when deciding whether to approve a settlement"); *Hill v. Burdick (In re Moorhead Corp.)*,

208 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her

judgment for that of the trustee, and the trustee's judgment is to be accorded some deference."

(citation omitted)); *City Sanitation, LLC, supra v.*; *In re Healthco Int'l, Inc.*, 136 F.3d at 50 n.5.

("the bankruptcy judge . . . is not to substitute her judgment for that of the trustee, and the trustee's

judgment is to be accorded some deference.  Compromises are favored in bankruptcy.") (internal

citations and quotations omitted).  Moreover, "[i]n evaluating a Rule 9019 settlement, a bankruptcy

court need not 'conduct a mini-trial to determine the probable outcome of any claims waived in

the settlement.' Rather, the bankruptcy court must 'apprise [itself] of the relevant facts and law so

that [it] can make an informed and intelligent decision.'" *Official Comm. of Unsecured Creditors*

*v. Moeller (In re Age Refining, Inc.)*, 801 F. 3d 530, 541 (5th Cir. 2015) (citations omitted).

35.    In determining the reasonableness of a settlement, courts in the First Circuit

consider the following four factors: (*i*) the probability of success in the litigation being

---

[8]    The term "trustee" when used in a Bankruptcy Code section incorporated under Title III of PROMESA means the
Oversight Board in a case under Title III.  PROMESA § 301(c)(7).

compromised; (*ii*) the difficulties, if any, to be encountered in the matter of collection; (*iii*) the

complexity of the litigation involved, and the expense, inconvenience and delay attending it; and

(*iv*) the paramount interest of the creditors and a proper deference to their reasonable views in the

premise. *Jeffrey v. Desmond*, 70 F.3d at 183, 185 (1st Cir. 1995); *see also In re Indian Motorcycle

Co.*, 289 B.R. at 283; *In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, No. 04-cv-10585,

2009 Bankr. LEXIS 2846, at *9 (Bankr. D.P.R. Mar. 31, 2009); *In re C.P. del Caribe, Inc.*, 140

B.R. 320, 325 (Bankr. D.P.R. 1992).

### A.   Probability of Success

36.     In examining the probability of success in the litigation being compromised, courts

look to the legal and evidentiary obstacles to litigating the claim.  *In re Healthco Int'l, Inc.*, 136

F.3d at 50; *In re Hansen*, No. 12-11907-JMD, 2017 Bankr. LEXIS 1120, at *12 (Bankr. D.N.H.

Apr. 25, 2017).  In addition, the probability of success is measured against the "definitive, concrete

and immediate benefit" that a settlement provides against the uncertainty and delay of litigation.

See *Yacovi v. Rubin & Rudman, L.L.P.* (*In re Yacovi*), 411 F. App'x. 342, 346-47 (1st Cir. 2011)

(citing *In re Healthco Int'l, Inc.*, 136 F.3d at 50. And, "th[e] responsibility of the bankruptcy judge

. . . is not to decide the numerous questions of law and fact raised by appellants but rather to

canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of

reasonableness.'"  *Id.* at 51.

37.     Here, the Settlement Agreement will provide WEH with: (i) the Cash Payment to

be paid in two (2) installments, as described in the Settlement Agreement, totaling $90,289,283.00;

(ii) an allowed Initial Admin Claim in the amount of $6,023,695.00 (following satisfaction of the

Cash Payment); (iii) an agreement between the Oversight Board, PREPA, and WEH to

collaboratively pursue the FEMA administrative appeal process for the reimbursement of the

FEMA Denied Amounts, and the distribution of funds potentially resulting therefrom; and (iv) an

allowed administrative expense claim for the accrued Finance Charges in the amount of $33,884,282.57, a reduction of the amount accrued as of the date of the execution of the Settlement Agreement, by $19,004,808.50, with no further accrual upon the execution of the Settlement Agreement (unless no order is entered approving the Settlement Agreement on or before May 1, 2022), provided all payments by PREPA are timely and fully made.

38.     The Settlement Agreement resolves the Admin Claim Motion and any additional claims related to the WEH Contract, the WEH Invoices, and/or the Finance Charges, which are complex and fact intensive.  The outcome of any litigation relating thereto is uncertain and would likely cause PREPA to incur significant litigation costs.  Here, FEMA has approved a substantial majority of the invoices for which WEH has not been paid, and the remaining invoices are part of an appeal on which WEH has agreed to accept a significant risk of denial without cost to PREPA. While PREPA may have defenses against certain of the WEH Invoices and its entitlement to administrative priority pursuant to section 503 of the Bankruptcy Code and PROMESA, WEH would certainly argue (i) its services were essential to restoring PREPA's operational ability post-petition, (ii) WEH completed all work assigned to it by PREPA prior to termination of the WEH Contract, (iii) PREPA and the Oversight Board have not identified any dispute that WEH performed the work underlying the WEH Invoices, (iv) the WEH Contract was validated by the Office of the Comptroller General for the Commonwealth of Puerto Rico, and (v) PREPA has no discretion regarding the use of FEMA reimbursement funds, which must be paid to WEH on account of the specific WEH Invoices authorized, obligated, and reimbursed by FEMA.

39.     The Settlement Agreement represents a reasonable negotiated compromise of the Admin Claim Motion, the WEH Contract, the WEH Invoices, and the Finance Charges.  As a result of the Settlement Agreement, PREPA will establish a schedule for payment of certain funds

received from FEMA to WEH and (i) capture upside benefit in the event that the FEMA Appeal is successful, retaining any amounts of the Denied Mob/Demob Invoices obligated by FEMA over $12,047,390.00 authorized by FEMA for reimbursement, (ii) cease the accrual of further Finance Charges, saving potentially tens of millions of dollars that would have otherwise accrued while the issues were litigated, (iii) reduce the already accrued Finance Charges by $19,004,808.50, and (iv) save significant legal costs related to the litigation of the parties' rights and obligations under the WEH Contract and WEH's entitlement to an administrative expense claim as requested in the Admin Claim Motion.

### B.   Complexity of Litigation Involved and Expense, Inconvenience and Delay Attending It

40.   As set forth above, the Admin Claim Motion and the additional claims related to the WEH Contract, the WEH Invoices, and/or the Finance Charges are complex and fact intensive, and the results of litigation attendant thereto are uncertain.  Proceeding with litigation would be expensive and would divert PREPA's and the Oversight Board's attention from other important matters at a critical juncture in this Title III Case.  Moreover, any litigation would be lengthy and would involve substantial discovery regarding work WEH performed over four years ago, including work performed through subcontractors under the WEH Contract.  As such, the Debtor's decision to avoid the costs, inconvenience, uncertainty and delay should be given substantial deference.

> [C]oupled with the bankruptcy court's inquiries and findings regarding the inconvenience and expense to the estate in attending the state court action, and the fact that the compromise would provide creditors with an immediate and certain payment of a large percentage of the outstanding debt, illustrates that the bankruptcy court did not abuse its discretion in approving the compromise.

See *Jeffrey*, 70 F.3d at 187 (1st Cir. 1995); *Bos v. Jalbert (In re ServiSense.com, Inc.)*, No. 02-cv-11987-PBS, 2003 U.S. Dist. LEXIS 17057, at *16 (D. Mass. Sept. 26, 2003) ("When augmentation

of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously - and an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle.") (quoting *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632 (1st Cir. 2000)).

### C.   Interests of Creditors

41.   The Settlement Agreement eliminates the risks and uncertainty associated with litigation and results in significant savings under the WEH Contract for the Debtor without the attendant delay of litigation.  *See In re Servisense.com, Inc.*, 382 F.3d 68 (1st Cir. 2004) (even a settlement agreement providing for payment in full of legally cognizable claim amount could be approved because it would save the debtor costly litigation).  Specifically, under the Settlement, PREPA will be initially obligated to pay WEH only from funds reimbursed to it by FEMA.  The balance of the unpaid invoices will either be paid at Title III exit, or only as a result of a favorable outcome of the FEMA Appeal.  Most importantly, PREPA will receive a discount of accrued Finance Charges of over $19 million, and no further interest will accrue so long as PREPA honors its obligations under the Settlement Agreement.  This settlement is therefore highly favorable to PREPA and should be approved.

### Notice

42.   PREPA has provided notice of this Motion to (collectively, the "Notice Parties"): (i) the Office of the United States Trustee for the District of Puerto Rico; (ii) the indenture trustees and/or agents, as applicable, for PREPA's Bonds; (iii) the administrative agent(s) for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and the lenders party thereto, as amended, and that certain Trade Finance Facility Agreement, dated as of July 20, 2012; (iv) the statutory unsecured claimholders' committee appointed in this Title III Case; (v) the Office of the United States Attorney for the District of Puerto Rico;

(vi) counsel to AAFAF; (vii) the Puerto Rico Department of Justice; and (viii) all parties who have

requested service in the Title III Cases of PREPA and the Commonwealth.

WHEREFORE PREPA and the Oversight Board respectfully request that the Court enter

the Proposed Order granting the relief requested in the Motion and such other and further relief as

is just and proper.

Dated: March 1, 2022                                         Respectfully submitted,
       San Juan, Puerto Rico

                                                            /s/ Paul V. Possinger
                                                            Martin J. Bienenstock
                                                            Paul V. Possinger
                                                            Ehud Barak
                                                            (Admitted *Pro Hac Vice*)
                                                            **PROSKAUER ROSE LLP**
                                                            Eleven Times Square
                                                            New York, NY 10036
                                                            Tel: (212) 969-3000
                                                            Fax: (212) 969-2900
                                                            Email: mbienenstock@proskauer.com
                                                                    ppossinger@proskauer.com
                                                                    ebarak@proskauer.com

                                                            *Attorneys for the Financial*
                                                            *Oversight and Management Board*
                                                            *as representative for PREPA*


                                                            /s/ Hermann D. Bauer
                                                            Hermann D. Bauer
                                                            USDC No. 215205
                                                            **O'NEILL & BORGES LLC**
                                                            250 Muñoz Rivera Ave., Suite 800
                                                            San Juan, PR 00918-1813
                                                            Tel:  (787) 764-8181
                                                            Fax:  (787) 753-8944
                                                            Email: hermann.bauer@oneillborges.com

                                                            *Co-Attorney for the Financial Oversight and*
                                                            *Management Board as representative for*
                                                            *PREPA*

18

## **EXHIBIT A**

**Proposed Order**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　　　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>　　　　　Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　　　　as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>　　　　　Debtor. | No. 17 BK 4780-LTS<br><br>**Re. Docket Nos. 2281 & ____** |

## [PROPOSED] ORDER GRANTING MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY PURSUANT TO BANKRUPTCY CODE SECTION 503(b), PROMESA SECTION 315(a), AND BANKRUPTCY RULE 9019 FOR ORDER APPROVING SETTLEMENT AGREEMENT WITH WHITEFISH ENERGY HOLDINGS, LLC AND GRANTING RELATED RELIEF

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); ); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Upon consideration of: (i) the *Motion of Puerto Rico Electric Power Authority Pursuant to Bankruptcy Code Section 503(b), PROMESA section 315(a), and Bankruptcy Rule 9019 For Order Approving Settlement Agreement With Whitefish Energy Holdings, LLC* (the "Motion"),[2] filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Puerto Rico Electric Power Authority ("PREPA") in this Title III case pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241; (ii) all pleadings filed in respect of the Motion, and upon the hearing on the Motion on due notice; and after due deliberation thereon; and good and sufficient cause appearing therefor, it hereby is:

FOUND AND DETERMINED THAT:[3]

A.      This Court has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA.

B.      Venue in this district is proper pursuant to section 307(a) of PROMESA.

C.      The relief requested in the Motion, including (i) approval of all provisions of the Settlement Agreement; (ii) allowing WEH's Initial Admin Claim, and all components thereof, subject to the payment terms in the Settlement Agreement; (iii) allowing WEH an allowed administrative expense claim for the Finance Charges in the amount of $33,884,282.57, subject to the terms of the Settlement Agreement, (iv) authorizing the payment provisions related to the outcome of the FEMA Appeal, and (v) determining the payments by PREPA under the Settlement Agreement shall constitute the full and complete satisfaction of PREPA's obligations under the

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

WEH Contract, the WEH Invoices, the Finance Charges and otherwise relating to WEH, is in the best interests of the Debtor, its stakeholders, and other parties in interest.

D.      Based upon the Certificates of Service filed in connection with the Motion, the Debtor provided adequate and appropriate notice of the Motion under the circumstances to (i) the Office of the United States Trustee for the District of Puerto Rico; (ii) the indenture trustees and/or agents, as applicable, for PREPA's Bonds; (iii) the administrative agent(s) for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and the lenders party thereto, as amended, and that certain Trade Finance Facility Agreement, dated as of July 20, 2012; (iv) the statutory unsecured claimholders' committee appointed in this Title III Case; (v) the Office of the United States Attorney for the District of Puerto Rico; (vi) counsel to AAFAF; (vii) the Puerto Rico Department of Justice; and (viii) all parties who have requested service in the Title III Cases of PREPA and the Commonwealth.  No other or further notice of the Settlement Agreement or Motion is required.  Such parties served with notice of the Motion have been provided adequate and appropriate notice of the Settlement Agreement and Motion and afforded an opportunity to be heard with respect to the Motion and all other relief otherwise requested therein.

E.      The Settlement Agreement resolves all matters in dispute arising under or in any way related to the WEH Contract, the WEH Invoices, the Finance Charges, the Admin Claim Motion, and otherwise with regard to any activities, acts or omissions of WEH.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, in the form attached to the Motion as **Exhibit B**, is approved in its entirety.  The failure to specifically describe or include in this Order any particular

3

provision of the Settlement Agreement shall not diminish or impair the effectiveness of any such provision.

3.       PREPA is hereby authorized (i) to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers provided for by the Settlement Agreement, and (ii) to take any and all actions reasonably necessary or appropriate to consummate, complete, execute and implement the Settlement Agreement.

4.       This Order and the Settlement Agreement constitute and evidence the valid and binding obligations of the Parties thereto.

5.       WEH shall be granted an allowed administrative expense claim in the amount of $133,369,078.00 (the "Initial Admin Claim") consisting of (i) Work Performed Invoices for which FEMA has obligated funds in the amount of $103,347,417.00; (ii) mobilization and demobilization payments for which FEMA has agreed to reimburse PREPA in the amount of $8,005,000.00, which consists of Mob/Demob Invoices in the amount of $6,275,699.00 and Advance Payments in the amount of $1,729,301.00; (iii) the Advance Payments made to WEH for mobilization and demobilization services for which FEMA has not yet agreed to reimburse PREPA in the amount of $15,992,966.00; and (iv) $6,023,695.00; provided, however, that (x) the Court hereby finds $100,856,822.17 of such Initial Admin Claim has been paid and satisfied in full, (y) the second installment of the Cash Payment, when paid in accordance with the Settlement Agreement, shall be applied to reduce the Initial Admin Claim on a dollar-for-dollar basis, and (z) the remainder of the Initial Admin Claim shall be payable on the effective date of any plan of adjustment for PREPA in this Title III Case, but in no event later than December 31, 2023.

6.       WEH shall be granted an allowed administrative expense claim on account of the Finance Charges in the amount of $33,884,282.57.  WEH's Finance Charges in the remaining

amount of $19,004,808.50 are not allowed, with no further interest accrual as of the execution of
the Settlement Agreement, subject in all respects to satisfaction of PREPA's obligations under the
Settlement Agreement.

7.    If PREPA does not timely and fully make the payments authorized by this Order,
(i) the $19,004,808.50 in accrued interest released in accordance with the preceding paragraph
shall be deemed reinstated and allowed in full, and (ii) interest shall accrue on all unpaid amounts
at a rate of 1% per month in accordance with the terms of the WEH Contract, each of which shall
be deemed allowed and payable as an administrative expense claim on the effective date of any
plan of adjustment for PREPA in this Title III Case.

8.    Except as expressly stated herein, this Order shall not be interpreted to limit any
party's rights and, for the avoidance of doubt, shall not be interpreted to prejudice the rights and
interests of holders and/or insurers of PREPA's power revenue bonds.  All rights of such parties
to take any actions necessary to protect their rights with respect to any action outside the scope of
this Order or with respect to any agreement with creditors shall be preserved.

9.    Immediately upon entry by the Court of this Order, the Oversight Board, PREPA,
and WEH are authorized to take all actions, and to execute all documents, necessary or appropriate,
to effectuate the relief granted herein, to the full extent, if any, such authorization is required.

10.   The Admin Claim Motion is hereby resolved in its entirety.

11.   The Court shall retain jurisdiction to hear and determine all matters arising from or
related to this Order or the Settlement Agreement.

Dated:  _____

                                              _____
                                              HON. LAURA TAYLOR SWAIN
                                              United States District Judge

5

## **EXHIBIT B**

**Settlement Agreement**

## RELEASE AND SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Agreement**") is between Whitefish Energy Holdings, LLC ("**WEH**"), on one hand, and the Puerto Rico Electric Power Authority ("**PREPA**") and the Financial Oversight and Management Board for Puerto Rico, in its capacity as Title III representative for PREPA ("**FOMB**"), on the other hand. WEH, PREPA, and FOMB will be referred to collectively as the "Parties" and each individually as a "Party."

### RECITALS

**WHEREAS**, on May 3, 2017, the FOMB filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "**Commonwealth**") pursuant to PROMESA section 304(a). Following this, the Oversight Board filed Title III cases for various instrumentalities of the Commonwealth, including PREPA on July 2, 2017 (the "**PREPA Title III Case**");

**WHEREAS**, on September 26, 2017, after Puerto Rico was struck by two hurricanes, which severely damaged its electric grid, PREPA entered into a contract with WEH, as amended, for the repair of the electrical system main structures (the backbone of the system) composed of approximately 200 miles of transmission lines and towers, many of which were located in the mountainous region of Puerto Rico's rugged interior (the "**WEH Contract**");

**WHEREAS**, on October 31, 2017, PREPA terminated the WEH Contract in accordance with its terms, effective November 30, 2017, which termination was unrelated to WEH's performance under the WEH Contract;

**WHEREAS**, prior to the November 30, 2017 termination date, WEH completed all of the work that had been requested by PREPA including, *inter alia*, the repair of the five (5) transmission line segments assigned by PREPA to WEH, which constitute part of the backbone of the transmission system in the area;

1

**WHEREAS**, WEH submitted invoices to PREPA for: (i) work performed ("**Work Performed Invoices**"); and (ii) mobilization and demobilization activities ("**Mob/Demob Invoices**"), together totaling $144,249,543.00 (the Work Performed Invoices and Mob/Demob Invoices are collectively referred to herein as the "**WEH Invoices**");

**WHEREAS**, in addition to the WEH Invoices, WEH invoiced PREPA for advance payments for mobilization and demobilization, which PREPA paid in the amount of $17,722,267.00 ("**Advance Payments**"), which Advance Payments shall be applied to the Mob/Demob Invoices as provided herein;

**WHEREAS**, as of the date of this Agreement, in addition to the Advance Payments, PREPA has made payments on account of the WEH Invoices, consisting of $6,275,699.00 for Mob/Demob Invoices and $13,058,139.00 for Work Performed Invoices;

**WHEREAS**, as of the date of this Settlement Agreement, PREPA has not paid WEH for the remaining amounts of the WEH Invoices ("**Remaining Invoice Amounts**");

**WHEREAS**, under the WEH Contract, finance charges have accrued and continue to accrue at a rate of 1% per month for all overdue WEH Invoices (the "**Finance Charges**") as to which WEH has submitted a series of invoices; on January 14, 2022, WEH submitted to PREPA an updated invoice for all Finance Charges accrued through that date in the amount of $51,887,962.60;

**WHEREAS**, on August 19, 2021, the Federal Emergency Management Agency ("**FEMA**") issued a Determination Memorandum Number FEMA-4339-DR-PR, in which FEMA determined that of the $144,249,543.53 submitted by PREPA for reimbursement for the WEH Invoices, $111,352,417.00 was eligible for reimbursement ("**FEMA Approved**

2

**Amounts**"), but that PREPA had not sufficiently demonstrated that the remaining $32,897,126.53 was eligible for reimbursement ("**FEMA Denied Amounts**");

**WHEREAS**, on October 18, 2021, PREPA filed a first appeal in which PREPA appealed FEMA's determination that the FEMA Denied Amounts were not eligible for reimbursement;

**WHEREAS**, on December 17, 2021, Puerto Rico's Government Authorized Representative, the Central Office for Recovery, Reconstruction, and Resiliency ("**COR3**"), submitted the first appeal to FEMA;

**WHEREAS**, on October 30, 2020, WEH filed its Motion of Allowance of Administrative Claim (the "**Administrative Claim Motion**") [Dkt. No. 2281], seeking an allowed administrative expense priority claim pursuant to section 503 of title 11 of the United States Code, as incorporated into Title III of PROMESA and applicable in the PREPA Title III Case, for the Remaining Invoice Amounts and the Finance Charges incurred through the date of payment of the claim;

**WHEREAS**, since WEH filed its Administrative Claim Motion, PREPA and WEH have stipulated to extensions of time for PREPA to respond to the Administrative Claim Motion; and

**WHEREAS**, the Parties have determined that it is in their best interests to settle all matters in dispute under the WEH Contract and Administrative Claim Motion.

**NOW, THEREFORE**, in consideration of the promises set forth herein and for good and valuable consideration, the receipt and adequacy of which the Parties hereto affirm and acknowledge, the Parties mutually agree as follows:

## TERMS

1.   **Settlement Terms.**

a.   PREPA shall pay WEH $90,289,283.00 for payment of Work Performed Invoices that have been approved for reimbursement by FEMA but not yet paid (the **"Cash Payment"**). The Cash Payment shall be made in two (2) installments, with (i) the first installment in the amount of $63,800,717.17 (the **"First Payment"**) on account of specific unpaid Work Performed Invoices to be paid on or before the fifteenth (15th) business day following the execution of this Agreement, and (ii) the second installment in the amount of $26,488,565.83 (the **"Second Payment"**) to be paid on or before the fifteenth (15th) business day following court approval of this Agreement. For each installment of the Cash Payment, at the same time of remittance of payment, PREPA shall provide WEH with written documentation identifying the invoice number and amount of invoice for each Work Performed Invoice paid in connection with each Cash Payment.



b.   PREPA and FOMB hereby agree and stipulate that WEH has and shall have an allowed administrative expense claim for an initial total amount of $133,369,078.00 (the **"Initial Admin Claim"**) consisting of: (i) Work Performed Invoices for which FEMA has obligated funds in the amount of $103,347,417.00; (ii) mobilization and demobilization payments for which FEMA has agreed to reimburse PREPA in the amount of $8,005,000.00, which consists of Mob/Demob Invoices in the amount of

4

$6,275,699.00 and Advance Payments in the amount of $1,729,301.00; (iii) the Advance Payments made to WEH for mobilization and demobilization services for which FEMA has not yet agreed to reimburse PREPA in the amount of $15,992,966.00; and (iv) $6,023,695.00, which amount represents 50% of the remaining amounts due to WEH for unpaid Mob/Demob Invoices (after full application of the Advance Payments) for which FEMA has not yet agreed to reimburse PREPA. The Parties acknowledge and agree that $37,056,105.00 of the Initial Admin Claim has already been paid to WEH (consisting of payments for Mob/Demob Invoices in the amount of $6,275,699.00, Advance Payments in the amount of $17,722,267.00, and Work Performed Invoices in the amount of $13,058,139.00). The Parties acknowledge and agree that $90,289,283.00 of the Initial Admin Claim will be paid to WEH through PREPA's payment of the Cash Payment to WEH in accordance with Paragraph 1(a) of this Agreement. The Parties further acknowledge and agree that the remaining, unpaid balance of the Initial Admin Claim ($6,023,690.00) shall be allowed and paid in full as an administrative expense claim, payable on the effective date of PREPA's plan of adjustment in the PREPA Title III Case, but in no event later than December 31, 2023, even if a plan of adjustment has not become effective by such date, unless paid earlier in accordance with Paragraph 1(e) of this Agreement.



5

c.  The Parties agree to cooperate with one another to pursue, through the FEMA administrative appeal process, including, if necessary, arbitration before the Civilian Board of Contract Appeals, reimbursement of the FEMA Denied Amounts (the "**FEMA Appeal**"). WEH agrees not to publish (through public posts on the internet or otherwise), or provide to third parties for political or media purposes, any documents filed by PREPA in the FEMA Appeal without the prior written consent of PREPA and FOMB. PREPA must provide WEH with written updates on the status of the FEMA Appeal, no less frequently than bi-weekly, starting within two (2) weeks after the execution of this Agreement. PREPA must receive WEH's prior written consent before settling any part of the FEMA Appeal; provided, however, after WEH is paid in full for the Denied Work Performed Invoices and the remaining $12,047,390.00 of the Denied Mob/Demob Invoices, PREPA is no longer obligated to seek WEH's consent before settling the FEMA Appeal. If PREPA withdraws or abandons the FEMA Appeal prior to WEH being paid in full for the Denied Work Performed Invoices and the remaining $12,047,390.00 of the Denied Mob/Demob Invoices, WEH's allowed administrative expense claim will be increased by $10,880,460.00 over the amount of the Initial Admin Claim and such increased allowed administrative expense claim amount shall be payable on the effective date of PREPA's plan of adjustment, but in no event later than December 31, 2023, even if a plan of adjustment has not become effective by such date. For the



avoidance of doubt, such increase shall not occur if the FEMA Appeal is denied after due prosecution.

d. If FEMA agrees to obligate funds for any portion of the $4,856,765.00 in Work Performed Invoices that FEMA has initially denied as part of the Denied Invoice Amounts (**"Denied Work Performed Invoices"**), WEH's allowed administrative expense claim will increase dollar for dollar over the amount of the Initial Admin Claim by the amount of such obligated funds. PREPA shall remit payment to WEH for the amounts of the Denied Work Performed Invoices for which FEMA agrees to obligate funds within thirty (30) calendar days of FEMA's obligation of funds.



e. If FEMA agrees to obligate funds for any portion of the $28,040,356.00 in Mob/Demob Invoices that FEMA has initially denied as part of the Denied Invoice Amounts (**"Denied Mob/Demob Invoices"**), the first $6,023,695.00 in additional Denied Mob/Demob Invoices for which FEMA agrees to obligate funds shall increase WEH's allowed administrative expense claim dollar for dollar, over the amount of the Initial Admin Claim, regardless of which Mob/Demob Invoices are identified as reimbursable by FEMA or included in the obligation of funds. The second $6,023,695.00 in additional Denied Mob/Demob Invoices for which FEMA agrees to obligate funds shall be applied to satisfy $6,023,695.00 of the Initial Admin Claim. PREPA shall pay WEH for the Denied Mob/Demob Invoices reimbursable by FEMA

within thirty (30) calendar days of FEMA's obligation of funds, up to $12,047,390.00. Any amounts of the Denied Mob/Demob Invoices obligated by FEMA over $12,047,390.00 shall be retained by PREPA and applied to the Mob/Demob Invoices that were paid to WEH through the Advance Payments.

f. The Parties agree that the Parties will not apply the Advance Payments to specific Mob/Demob Invoices until after the FEMA administrative appeal process has been fully and finally resolved, including the exhaustion of all available appeals. After PREPA has exhausted the administrative appeal process with FEMA, if the Denied Mob/Demob Amounts have not been approved for reimbursement by FEMA in full, PREPA and WEH shall work together to allocate the Advance Payments to the unpaid Mob/Demob Invoices.



g. Other than as set forth in this Agreement, WEH waives the right to assert further administrative expense claims against PREPA for WEH Invoices not ultimately obligated for reimbursement to PREPA by FEMA. No amounts payable or paid to WEH from PREPA under this Agreement or ratified hereby shall be subject to any withholding or set-off or any disgorgement, and the amounts of the Cash Payment (both the aggregate and the respective payments thereof) shall not be reduced for any reason, even if later invoice reconciliations identify errors or discrepancies in either Party's favor.

h. WEH hereby agrees to reduce the accrued Finance Charges that shall have accrued as of the date this Agreement is executed, by $19,004,808.50. PREPA and FOMB agree and stipulate that the resulting $33,884,282.57 of such accrued finance charges (the "**Interest Admin Claim**") shall be allowed and paid in full as an administrative expense claim, in addition to the Initial Admin Claim and any increases thereto as provided in sections 1.c., 1.d., and 1.e. of this Agreement, payable on the effective date of PREPA's plan of adjustment, but in no event later than December 31, 2023, even if a plan of adjustment has not become effective by such date.

i. Subject to approval of this Agreement by the Title III Court, if payments due under this Agreement are timely and fully made as specified in this Agreement, no additional finance charges shall accrue or be claimed by WEH after the execution of this Agreement; provided, however, that if Court approval is not obtained on or prior to May 1, 2022, then finance charges shall thereafter accrue at the rate provided under the WEH Contract on all amounts of the Initial Admin Claim that have not been paid as of such date, and such finance charge shall accrue as an allowed administrative expense claim (the "**Contingent Interest Admin Claim**"). Furthermore, if payments are not timely or fully made as required by this Agreement, there will be a finance charge of 1% accruing on such unpaid amounts, which finance charge shall accrue as an allowed administrative expense claim, and in addition, the $19,004,808.50



reduction in the Finance Charges accrued as of the date of this Agreement shall be re-instated, also as an allowed administrative expense claim (**"Re-Instated Interest Admin Claim"**), which Interest Admin Claim, Contingent Interest Admin Claim, and Re-Instated Interest Admin Claim shall be payable on the effective date of PREPA's plan of adjustment, but in no event later than December 31, 2023, even if a plan of adjustment has not become effective by such date.

j.  PREPA shall, with reasonable diligence, seek reimbursement from FEMA for any municipal taxes for which WEH is liable for its work for PREPA under the WEH Contract. PREPA shall remit to WEH any and all payments PREPA receives from FEMA for such municipal taxes within thirty (30) calendar days of PREPA's receipt of payment from COR3 or FEMA, as the case may be.

k.  WEH hereby waives its right under the WEH Contract to submit a termination settlement proposal, which would otherwise include legal, consultant, and other costs WEH has incurred to pursue payment from PREPA and FEMA reimbursement.

l.  PREPA shall file a motion (the "**Approval Motion**") with the Title III Court on or before March 1, 2022, seeking approval of this Agreement, and shall seek to have such Approval Motion heard at the next regularly scheduled omnibus hearing. PREPA further agrees that, if the Approval Motion is denied by the Title III Court, it shall nonetheless make the Second Payment upon receipt of such funds from COR3 on account of

10

the Work Performed Invoices, and PREPA shall not seek to recoup any portion of the Cash Payment from WEH or exact any set-off or withholding of future payments based on payment of the Cash Payment to WEH.

m. Upon Title III Court approval of the Approval Motion, the Administrative Claim Motion shall be deemed satisfied. Should the Title III Court instead deny the Approval Motion, WEH shall be entitled to prosecute the Admin Claim Motion; provided, however, that the amount of any Cash Payment to WEH shall be credited against any administrative claim granted to WEH on account of any order approving the Admin Claim Motion.

2. **Authority and No Inconsistencies in Plan**. FOMB and PREPA have obtained and provided the requisite approvals for such Parties to enter into this Agreement. FOMB and PREPA acknowledge and agree that any plan of adjustment filed and/or confirmed in the PREPA Title III Case shall not contain any provisions contrary to or reducing, limiting, or delaying PREPA's fulfillment of its obligations under this Agreement or contrary to or inconsistent with the other terms and conditions of this Agreement.

3. **PREPA and FOMB Release of WEH.** Effective upon the complete execution and Title III Court approval of this Agreement, this Agreement shall constitute a full release and accord and satisfaction of WEH, its affiliates, successors, and predecessors, and their respective officers, agents, and employees of and from any and all civil liabilities, obligations, claims, appeals, demands, and causes of action, which PREPA or FOMB had, now has or

11

hereafter may have, whether known or unknown, administrative, judicial, legal or equitable, arising under or in any way related to the WEH Contract, the WEH Invoices, the Finance Charges, the Administrative Claim Motion, and otherwise with regard to any activities, acts or omissions of WEH.

4. **WEH Release of PREPA and FOMB.** Effective upon the complete execution and Title III Court approval of this Agreement, this Agreement shall constitute a full release and accord and satisfaction of PREPA and FOMB, and their affiliates, successors and predecessors, and their respective officers, agents, and employees of and from any and all civil liabilities, obligations, claims, appeals, demands, and causes of action, which WEH had, now has or hereafter may have, whether known or unknown, administrative, judicial, legal or equitable, arising under or in any way related to the WEH Contract, the WEH Invoices, the Finance Charges, the Administrative Claim Motion, and otherwise with regard to any activities, acts or omissions of PREPA or FOMB.

5. **No Admission.** This Agreement is not and does not imply an admission of liability or fault by WEH, PREPA, or FOMB. Rather, this Agreement is a negotiated settlement between the Parties.

6. **Attorneys' Fees and Costs**. The Parties shall bear their respective attorneys' fees, expenses, and costs.

7. **Further Action.** Each Party agrees to take any and all further action reasonably necessary or appropriate to fully effectuate and enforce the provisions of this Agreement, including but not limited to executing any additional documents necessary to effectuate the provisions of this Agreement.

8.     **Enforceability.** If any provision of this Agreement or the application thereof is held invalid or unenforceable, that invalidity shall not affect other provisions of this Agreement that can be given effect without the invalid provisions or application, and to this end, the provisions of this Agreement are declared to be severable. This Agreement may be executed in separate counterparts all of which, when taken together, shall constitute the entire agreement.

9.     **Binding Nature.** This Agreement, upon complete execution, is binding upon, and shall inure to the benefit of, the Parties hereto and their respective agents, employees, representatives, officers, directors, subsidiaries, assigns, heirs, predecessors and successors in interest.

10.     **Copies and Counterparts.** This Agreement may be signed in counterparts by any and all Parties and each said counterpart shall be deemed an original. The Parties agree that electronic facsimile or PDF signatures shall have full force and effect of original signatures.

11.     **Representations and Warranties.** Each Party represents and warrants as follows:

a.     It does not rely and has not relied on any statement, representation, omission, or promise of the other Party (or any officer, agent, employee, representative, or attorney for the other Party) in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement; it has, however, relied on this Agreement and all of its terms and provisions;

13

b.      It has investigated the facts pertaining to this settlement and this Agreement, and all matters pertaining thereto, to the full extent it deems necessary;

c.      It has carefully read and knows and understands the full contents of this Agreement and is voluntarily entering into this Agreement; and

d.      It expressly understands that this Agreement represents the final agreement between the Parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements or understandings between the Parties.

12.     **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties concerning the subject matter hereof, and supersedes and replaces all prior negotiations, proposed agreements and agreements, written and oral, relating thereto and the obligations set forth hereunder may not be altered, amended or modified in any respect unless in writing, and duly executed by the Parties.  There are no collateral agreements, reservations, or understandings between the Parties, express or implied, oral or written, except as specifically set forth herein.  No modification to this Agreement shall be binding unless it is reduced to writing and signed by the Parties to this Agreement.

13.     **Co-Authorship.** The terms of this Agreement are contractual and not a mere recital.  This Agreement exists independently of the WEH Contract and survives it.  This Agreement is the joint product of the Parties, and it shall not be construed against either Party to the Agreement on the ground of sole authorship.

14.     **Jurisdiction.** The Parties agree that the executed Agreement may be enforced by either Party before a Court of competent jurisdiction.  The Parties hereby consent to the

jurisdiction of such tribunal for the purposes of enforcing and interpreting the executed Agreement.

15. **Authorization**. The Parties do hereby declare that this Agreement has been duly authorized by each of the Parties after consultation with counsel and that the undersigned do fully understand the terms of this Agreement and have the express authority to enter into this Agreement.

-------------------------------------------------- The rest of the page is intentionally left blank--------------------------------------------------

15

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, effective as of

the latest date set forth below.

**FOR WHITEFISH ENERGY HOLDINGS, LLC:**

**Name:** ▮▮▮▮▮▮▮▮▮

**Title:  Chief Executive Officer**

**DATED:** _____

**FOR PUERTO RICO ELECTRIC POWER AUTHORITY:**

**Name:  Josué A. Colón Ortiz**

**Title:   Executive Director**

**DATED:** _____February 11, 2022_____

**FOR FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO:**

_____

**Name:**

**Title:**

**DATED:** _____

16

*Execution Copy*

      **IN WITNESS WHEREOF**, the Parties have executed this Agreement, effective as of

the latest date set forth below.

**FOR WHITEFISH ENERGY HOLDINGS, LLC:**

_____

**Name:** ███████████████
**Title:  Chief Executive Officer**

**DATED:** _____

**FOR PUERTO RICO ELECTRIC POWER AUTHORITY:**

_____

**Name:**
**Title:**

**DATED:** _____

**FOR FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO:**

_____

**Name:  Natalie A. Jaresko**
**Title:  Executive Director**

**DATED:**   **2/11/22**_____

16