UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER
AUTHORITY,

    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

-----------------------------------------------------------x

ORDER DENYING URGENT MOTION OF THE AD HOC GROUP OF
PREPA BONDHOLDERS TO APPOINT A MEDIATOR AND IMPOSE DEADLINES
FOR A PREPA PLAN OF ADJUSTMENT AND DIRECTING ADDITIONAL CONSULTATION AND FILINGS

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is the *Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 20176 in Case No. 17-3283 and Docket Entry No. 2716 in Case No. 17-4780)[2] (the "Motion") filed by the Ad Hoc Group of PREPA Bondholders (the "Ad Hoc Group").[3] The Motion seeks entry of an order (i) appointing a mediator to facilitate confidential negotiations between the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and the Ad Hoc Group, which comprises certain bondholders who have entered into a restructuring support agreement ("RSA") with the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the Oversight Board,[4] "to forge a path forward if the RSA-required legislation is not passed," and (ii) imposing deadlines on the Oversight Board to file a proposed plan of adjustment in connection with PREPA's Title III case. (Mot. ¶ 7.)

The Motion is opposed by the Oversight Board, PREPA, AAFAF, the Speaker of the Commonwealth's House of Representatives (the "House Speaker"), the Unsecured Creditors Committee (the "UCC") and certain creditors. The Oversight Board and government entities object to (a) the focus of the mediation aspect of the Motion, which seeks the preservation of certain RSA benefits for bondholders in the event that the restructuring proceeds without

---

[2] All docket entries referenced herein are to entries in Case No. 17-3283, unless otherwise indicated.

[3] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

[4] As noted below, AAFAF announced today that it has exercised its right to terminate the RSA. (Docket Entry No. 20277.)

legislation eliminating certain financial obligations of PREPA that exist under the current legal framework of the outstanding PREPA bonds, and (b) the timetable within which the Ad Hoc Group has asked the Court to require the Oversight Board to proceed. Other creditors' objections focus on the Ad Hoc Group's initial proposal to restrict participation in the proposed mediation to the Ad Hoc Group and focus on issues particular to the adaptation of the RSA terms to the absence of enabling legislation. The House Speaker emphasizes the legislature's past collaborations in crafting legislation related to debt restructuring, pointing to Act 53, the legislation enacted in connection with the Commonwealth's recently-confirmed Plan of Adjustment, as the latest example of such collaboration.

The Court has jurisdiction of this matter pursuant to section 306(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").[5] 48 U.S.C. § 2166(a). The Court has considered carefully all of the arguments and submissions made in connection with the Motion.[6] For the reasons set forth below, the Motion is denied without prejudice and the

---

[5] PROMESA is codified at 48 U.S.C. § 2101 et seq. Unless otherwise indicated, all references to PROMESA are to the uncodified version of the legislation.

[6] In addition to the Motion, the Court has reviewed the following pleadings carefully: *Notice of Revised Proposed Order Regarding the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA And Section 105 of the Bankruptcy Code to Appoint A Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 20211) (the "Revised Proposed Order"), *Joinder of National Public Finance Guarantee Corporation to the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 20185); *Joinder and Response of U.S. Bank National Association as PREPA Bond Trustee to the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 20210); *Limited Joinder of Fuel Line Lenders to the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 20207); *Response and Reservation of Rights of Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

Court sets March 18, 2022 and May 2, 2022, as the deadlines by which the Oversight Board must take certain actions described in section 3 below.

## BACKGROUND

Readers' general familiarity with the debt restructuring proceedings pursuant to PROMESA and with the submissions in connection with this motion practice is assumed. The following brief summary of relevant events and issues is provided for context.

In 2017, the Oversight Board as representative of the Commonwealth of Puerto Rico (the "Commonwealth") and certain Commonwealth instrumentalities, initiated proceedings pursuant to Title III of PROMESA to restructure the debts of the Commonwealth and certain of its instrumentalities, including PREPA. Since the filing of PREPA's Title III petition, the Oversight Board and creditor groups have sought to resolve certain disputes over PREPA's debt

---

*to the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 20212); *Objection of the Financial Oversight and Management Board of Puerto Rico to the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 2735 in Case No. 17-4780) (the "Oversight Board Objection"); *Official Committee of Unsecured Creditors' Objection to Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 20215); *AAFAF and PREPA's Joinder to the Objection of the Financial Oversight and Management Board of Puerto Rico to the Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* (Docket Entry No. 20219); *Opposition to Urgent Motion to Appoint a Mediator and Impose Deadlines of a PREPA Plan of Adjustment* (Docket Entry No. 20223); *Reply of Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of The Bankruptcy Code To Appoint A Mediator And Impose Deadlines for A PREPA Plan Of Adjustment* (Docket Entry No. 20226); and *Reply of Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of The Bankruptcy Code To Appoint A Mediator And Impose Deadlines for A PREPA Plan Of Adjustment* (Docket Entry No. 20227).

default through litigation and the negotiation of sequential versions of an RSA. During that time, Puerto Rico and its residents have faced hurricanes, earthquakes, and the COVID-19 pandemic. The debts of the Government Development Bank for Puerto Rico (the "GDB"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Commonwealth, and certain additional instrumentalities have been the subjects of debt modification plans or other approved restructurings. The Oversight Board moved pursuant to rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Rule 9019 Motion") for Court approval of the RSA on May 10, 2019. (Oversight Bd. Obj. ¶ 17.) The RSA contemplates a restructuring, which would require enabling legislation, that would replace the outstanding PREPA bonds with securities issued by a separate special-purpose entity and restrict bond repayment obligations to the proceeds of certain required charges to be imposed on PREPA customers and ratepayers. (Id. ¶¶ 15-16.) The legislation contemplated by the RSA would eliminate current statutory and contractual provisions subjecting PREPA to a covenant to keep its rates at a level sufficient to pay the debt, authorizing bondholders to seek the appointment of a receiver should PREPA default, and granting bondholders certain security interests.[7] (Id.) Prior to filing the Rule 9019 Motion, the Oversight Board opposed PREPA bondholders' efforts to obtain relief from the automatic stay to pursue the appointment of a receiver in aid of repayment of the outstanding bond debt. (Mot. ¶ 13.) The RSA provides for a stay of the Oversight Board's objection and the stay relief litigation pending resolution of the Rule 9019 Motion, which is opposed by certain non-bondholder creditor constituencies. (Id. ¶ 17.) The UCC also filed objections to the PREPA bondholders' secured claims, asserting that the bonds are effectively unsecured, non-recourse instruments; the Court

---

[7] The scope and practical impact of the current security interest provisions are hotly contested.

declined to permit the litigation of the UCC's objection (including issues relating to the UCC's standing to pursue such objections) pending resolution of the Rule 9019 Motion. (See generally UCC Obj.) The Rule 9019 Motion has itself been stayed, because of delays attributed to earthquakes, the COVID-19 pandemic, and the confirmation proceedings relating to the Commonwealth's plan of adjustment.

The Oversight Board filed periodic status reports in accordance with the orders of this Court, to inform the Court, parties-in-interest, and members of the public of progress made toward a resolution intended to allow the Commonwealth and its instrumentalities to exit these Title III cases. In the January 19, 2022 status report, the Oversight Board committed to "mov[ing] forward" with the settlements memorialized in the RSA and propose a plan of adjustment by the end of March 2022, with the caveat that this projected timeline "may slip to the second quarter." (Docket Entry No. 2691 in Case No. 17-4780 ¶¶ 7-8.) Nonetheless, the Oversight Board reiterated that "advancing PREPA's plan of adjustment is [] a primary focus." (Id.)

The Ad Hoc Group Motion raises concerns about the continuation of negotiations between the Oversight Board and the legislature in light of the April 1, 2022, departure of Ms. Natalie Jaresko and the subsequent period of vacancy in the role of the Executive Director of the Oversight Board. (Mot. ¶ 22.) Despite Ms. Jaresko's departure, the Oversight Board maintains that it is positioned to "continue apace" and engage the legislature in continued discussions around the passage of enabling legislation. (Oversight Bd. Obj. ¶¶ 2-3.) The Ad Hoc Group has also pointed to an existing contractual obligation that poses a financial penalty should the Oversight Board further delay in proposing a plan of adjustment. The Puerto Rico Transmission and Distribution System Supplemental Terms Agreement, appended to Puerto Rico Transmission

and Distribution System Operation and Maintenance Agreement (the "Agreement"), which was executed between PREPA and LUMA Energy LLC contains a termination fee provision should PREPA's debt fail to be restructured by December 1, 2022. (Ad Hoc Group Reply ¶ 22.) Specifically, the provision, if exercised, would entitle LUMA Energy to recover a $115 million termination fee. (Id.)

The timely proposal and subsequent confirmation of a PREPA Title III plan of adjustment is paramount to the Commonwealth's economic recovery and expeditious exit from these Title III bankruptcy proceedings.

On June 23, 2017, shortly after the initiation of the first Title III case, the Court appointed a unique mediation team, comprised entirely of sitting federal judges ("Mediation Team"), to facilitate the development and conclusion of plans of adjustment in these cases. (Docket Entry No. 430.) The Mediation Team played a crucial role in the parties' negotiations between 2017 and 2021, particularly in connection with the confirmed restructuring plans for COFINA and the Commonwealth. On January 18, 2022, the Mediation Team, led by retired Bankruptcy Judge Barbara Houser ("Mediator Houser"), filed an informative motion stating that, having completed its work successfully with respect to the Commonwealth plan of adjustment and understanding that PREPA's plan, with which the Mediation Team had not been involved, was on track for submission and confirmation proceedings, and the Mediation Team requested that the Court issue an order dissolving it. (Docket Entry No. 19809.) The Court granted the Mediation Team's request and its leader, Mediator Houser, retired from the bench, leaving the federal judiciary. (Docket Entry No. 19833.)

In its Motion, the Ad Hoc Group requests that the Court appoint Mediator Houser to mediate its disputes concerning PREPA, at an hourly rate of $1,665.00 (represented to be

discounted from her regular 2022 rate for mediation services), plus expenses, to structure and facilitate (i) confidential negotiations between the Ad Hoc Group and the Oversight Board aimed at producing new RSA provisions that would permit the implementation of substantially the same terms of the agreement without enabling legislation, and (ii) confidential negotiations of any other issues necessary to the speedy formulation of a plan of adjustment for PREPA.  Under the Ad Hoc Group's proposal, PREPA would pay all of the mediator's fees and expenses, and the Oversight Board, which opposes the proposal as currently structured, would be required to participate in the mediation.  (Revised Proposed Ord. ¶¶ 3, 6.)  In addition, should the Court decline to order the mediation or should the mediation fail, the Ad Hoc Group requests that the Court impose a schedule (i) requiring the Oversight Board to file a proposed plan of adjustment and disclosure statement by April 15, 2022, and (ii) setting dates and deadlines designed to enable the Court to hold a confirmation hearing on the proposed plan by the end of November 2022.  The Oversight Board and other objectors oppose both aspects of the Motion to various degrees.

This afternoon, the Governor of Puerto Rico and AAFAF's executive director announced that the government of Puerto Rico has exercised its rights to terminate the RSA. (Docket Entry No. 20277.)

## Discussion

The Ad Hoc Group's Motion invokes section 105 of the Bankruptcy Code, made applicable to these proceedings by section 301 of PROMESA, and section 312 of PROMESA. Section 105 empowers the Court to use its equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C.A. § 105(a) (Westlaw through P.L. 117-80).  Section 312 of PROMESA

confers exclusive authority on the Oversight Board to file a proposed plan of adjustment of the debts of a PROMESA Title III debtor.

### 1. Request for Appointment of a Mediator and Approval of Scope of Mediation

The Ad Hoc Group asks the Court to exercise its discretion under section 105 of the Bankruptcy Code to appoint a nonjudicial mediator, approve the scope and rules of mediation, and compel the Oversight Board to participate in mediation with select parties to the RSA. (See Mot. ¶¶ 7, 36-37. (See also Revised Proposed Ord. ¶¶ 2-4).) The Oversight Board advances several arguments in opposition to the Motion. First, the Oversight Board argues that the proposal to appoint a mediator to focus on retooling the current RSA to function without legislative approval while preserving its economic provisions would be "counterproductive" because, inter alia, it ignores the efforts that have been made and have been ongoing to bring the RSA to fruition despite natural disasters and other obstacles, and ignores the effects that a lack of enabling legislation would have on the value of the RSA to PREPA. (Oversight Bd. Obj. at 11.) Second, the Oversight Board posits that the proposed set of participants in the mediation is inappropriately narrow because a non-legislative approach may require the elicitation of support from constituencies outside of the confines of the creditors selected by the Ad Hoc Group, and might require the revival of litigation regarding the bondholders' alleged secured status. (Id. ¶¶ 29, 33.) Lastly, although the Oversight Board states that it does not object to the proposed appointment of Mediator Houser as a nonjudicial mediator, it takes the position that all material stakeholders should be afforded an opportunity to recommend private mediators and explore the scope of mediation should the Court consider appointment of a nonjudicial mediator. (Id.) As noted above, other parties-in-interest also object to the proposed focus and scope of the mediation and roster of participants, AAFAF and PREPA urged the Court not to compel mediation which

would disrupt ongoing efforts to negotiate enabling legislation required by the RSA with the relevant political actors, and AAFAF has now announced a notice of termination of the RSA. In a press release announcing the notice of termination, the Governor characterized the Commonwealth's objective as "conversations with all stakeholders to achieve a restructuring agreement that can be implemented." (Docket Entry No. 20277-2 at 1.)

The Court denies the Ad Hoc Group's Motion insofar as it seeks an order requiring the Oversight Board to participate in, and PREPA to provide unlimited financing for, mediation focused on the interests of a particular subset of creditors under the provision of an RSA that AAFAF has purportedly terminated. Nevertheless, the Court expects and recognizes the need for prompt and effective engagement in any actions necessary to bring PREPA's Title III case to a speedy, appropriate conclusion that is consistent with the law and that can provide for a better future for Puerto Rico. Until recently, the Oversight Board and the government entities' words and actions gave the Court reason to expect that a plan of adjustment would be forthcoming promptly and that no interruption of the Oversight Board's engagement or efforts would hinder the process. Ms. Jaresko's resignation timetable is disturbing in that respect. The RSA termination announcement presents the risk of a major setback in progress toward readjustment of PREPA's liabilities. The Court encourages the relevant parties to continue discussions and pursue a consensual resolution of the outstanding issues. To that end, the Court is willing to entertain a prompt consensual revival of a private mediation proposal, accompanied by a delineation of scope, a timetable, and evidence of the proposal's commercial reasonableness,

susceptibility to cost controls, and consistency with any relevant requirements of the Puerto Rico Recovery Accuracy in Disclosures Act ("PRRADA").[8]

### 2. Request for Approval of Deadlines for Confirmation of a PREPA Plan

The Ad Hoc Group also seeks an order imposing various deadlines for the filing, prosecution, and confirmation of a plan of adjustment in the PREPA Title III case. (See Mot. ¶¶ 7, 48.) The Oversight Board objects to the timeline proposed by the Ad Hoc Group as unduly and unreasonably accelerated.

Section 312(a) of PROMESA provides that "[o]nly the Oversight Board, after the issuance of a certificate pursuant to section [104(j)] of this title, may file a plan of adjustment of the debts of the debtor." 48 U.S.C.A. § 2172(a) (Westlaw through P.L. 117-80). The Oversight Board thus has the exclusive statutory authority, in its sole discretion, to file a proposed plan of adjustment. Creditors cannot devise plans and propose them for confirmation, nor can government entities do so directly. 48 U.S.C. § 2172(b). The Court does, however, have the power to set a deadline for the filing of a plan of adjustment. The Court has not yet done so and, for substantially the reasons set forth in the objection of the Oversight Board and joinder of AAFAF, and in light of AAFAF's notice of RSA termination announcement, denies the Ad Hoc Group's request for a timetable that requires, among other deadlines culminating in plan confirmation proceedings to be completed by the end of November 2022, the submission of a plan of adjustment and disclosure statement by April 15, 2022.

---

[8] On January 20, 2022, President Joseph R. Biden signed PRRADA into law, at Public Law No. 117-82. PRRADA sets forth new disclosure requirements for professional persons seeking compensation pursuant to sections 316 and 317 of PROMESA. Thus, any professional who seeks compensation from a Title III debtor for services rendered in connection with a Title III case must comply with the disclosure requirements set forth in PRRADA.

Accordingly, the portion of the Motion that seeks to impose specific deadlines for the filing, prosecution, and confirmation of a PREPA Title III plan of adjustment is denied, but in light of the length of time that has passed since the filing of these cases and the Oversight Board's indefinitely delayed prosecution of the Rule 9019 Motion, AAFAF's notice of RSA termination announcement, and the seemingly diminishing prospect of proposing promptly a plan of adjustment, the Court hereby directs that the Oversight Board shall take action as set forth below in section 3.

3. <u>Actions Required of the Oversight Board by March 18, 2022 and May 2, 2022</u>

The Oversight Board must engage in good faith, in a focused manner, in efforts to negotiate and/or determine the parameters of an appropriate plan of adjustment for PREPA. To ensure meaningful progress towards the development of a consensual proposed plan of adjustment and the ultimate confirmation of a PREPA Title III plan, the Court hereby orders that:

a. The Oversight Board shall promptly meet and confer with AAFAF, the Ad Hoc Group, and all other major stakeholders and interested parties whose collaboration it believes is necessary to construct a viable basis for a plan of adjustment, to consider whether a consensual mediation arrangement can be entered into promptly to resolve key plan-related issues. If the parties wish to submit a mediation proposal for Court approval, it must comply with the criteria set forth in section 1 above. The Oversight Board and AAFAF shall file a joint status report regarding its progress by **March 18, 2022**, at **12:00 p.m. (Atlantic Standard Time)**.

b. The Oversight Board shall file, by **May 2, 2022**, at **12:00 p.m. (Atlantic Standard Time)**:

   i. A proposed plan of adjustment, disclosure statement, and proposed deadlines in connection with consideration of the disclosure statement, plan-related discovery, solicitation and tabulation of votes, objection period in connection with the confirmation hearing, and proposed confirmation hearing schedule for the PREPA Title III case; **or**

    ii.    A detailed term sheet for a plan of adjustment, with a proposed timetable for the filing of the plan, consideration and approval of a disclosure statement, voting and confirmation of the plan; **or**

    iii.    A proposed schedule for the litigation of significant disputed issues in PREPA's Title III case, including, without limitation, the motion for stay relief to seek appointment of a receiver, the UCC's claim objection (including, if appropriate, litigation of antecedent questions of standing), and the issues raised in Adv. Proc. Nos. 19-396 and 19-405; **or**

    iv.    A declaration and memorandum of law showing cause as to why the court should not consider dismissal of PREPA's Title III case for failure to demonstrate that a confirmable plan of adjustment can be formulated and filed within a time period consistent with the best interests of PREPA, the parties-in-interest and the people of Puerto Rico.

## CONCLUSION

The Motion is denied for the reasons and on the terms set forth above. The Oversight Board shall take actions as delineated above in section 3 of this Order. This Order resolves Docket Entry No. 20176 in Case No. 17-3283 and Docket Entry No. 2716 in Case No. 17-4780.

SO ORDERED.

Dated: March 8, 2022

                                                                  /s/ Laura Taylor Swain
                                                                 LAURA TAYLOR SWAIN
                                                                 United States District Judge