# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO SALES TAX FINANCING CORPORATION, THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY , THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO ELECTRIC POWER AUTHORITY, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF Nos. 20274, 20276** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO SALES TAX FINANCING CORPORATION, THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY , THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO ELECTRIC | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

POWER AUTHORITY, AND THE PUERTO RICO
PUBLIC BUILDINGS AUTHORITY,

                Movant,

v.

UNITED STATES TRUSTEE FOR REGION 21,

                Respondent.

**REPLY OF THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO IN SUPPORT OF MOTION REQUESTING ORDER
APPROVING PROPOSED LIST OF MATERIAL INTERESTED PARTIES PURSUANT
TO THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT**

To the Honorable United States District Court Judge Laura Taylor Swain:

       The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and collectively with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this reply (i) in support of the *Motion of Financial Oversight and Management Board for Puerto Rico Requesting Order Approving Proposed List of Material Interested Parties Pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act* [ECF No. 20194] (the "Motion")[3] and (ii) in response to the *Limited Objection of United States Trustee to Motion of Financial Oversight and*

---

[2]   PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3]   Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

2

*Management Board for Puerto Rico Requesting Order Approving Proposed List of Material Interested Parties Pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act* [ECF No. 20274] ("UST Obj.") filed by the United States Trustee for Region 21 (the "U.S. Trustee").[4] In support of the foregoing, the Oversight Board respectfully states as follows:

## REPLY

1. While the Oversight Board appreciates the U.S. Trustee's agreement with the proposed materiality thresholds, it respectfully disagrees with its position that certain creditors not holding active claims must be on the MIP List. As a threshold matter, the Oversight Board included on the MIP List all signatories to the restructuring support agreements regardless of whether their claims were resolved pursuant to the confirmed plan of adjustment. Those were the creditors who professionals negotiated with and who shaped the plan. Separately from those creditors holding up to approximately $74 billion of debt, there were literally $43.6 trillion of claims filed, most of which were dealt with ministerially in countless omnibus claim objections or are claims in large, multi-plaintiff class actions whose claims fell into classes of general unsecured claims whose treatment was negotiated by the statutory creditors' committee, not by the plaintiffs. The U.S. Trustee would have the MIP List include all those creditors having claims above the materiality thresholds, which would lead to all the professionals chasing down all potential connections, even though virtually none of the professionals had any dealings with such creditors. Moreover, while the U.S. Trustee highlights the language in PRRADA Section 2(e)(2) referencing the professional's "employment in connection with the case," the meaning the U.S. Trustee

---

[4] The Oversight Board takes no position with respect to the *Official Committee of Unsecured Creditors' Limited Response and Reservation of Rights to Motion of Financial Oversight and Management Board for Puerto Rico Requesting Order Approving Proposed List of Material Interested Parties Pursuant to Puerto Rico Recovery Accuracy in Disclosures Act* [ECF No. 20276] (the "UCC Response") or the Official Committee of Unsecured Creditors' professionals' obligations pursuant to section 1103 of the Bankruptcy Code.

3

attributes to that language is contradicted by other provisions of the statute. First, PRRADA only applies to applications filed after PRRADA's enactment. PRRADA § 2(e). Second, subsections 2(e)(2)(A) and (B) refer to a professional who "is not a disinterested person," or who "represents or holds an adverse interest." They do not refer to professional persons who 'were' not disinterested persons or who 'held' adverse interests during their employment in connection with the case. Therefore, the more literal and plain meaning of the statute is that it refers to professionals who currently are interested or hold adverse interests, in connection with their employment if it is still during the case; not if the case ended or the employment terminated before enactment of PRRADA. Third, Section 2(e) provides the Court "may deny" compensation or reimbursement, not 'must deny.' Thus, the Court is granted discretion, and the MIP List was constructed on the assumption there is no basis to exercise discretion to deny fees to professionals who had connections to entities who had no negotiating roles or whose claims were resolved ministerially or by a statutory committee. (The professionals for the statutory committees are on the MIP List.) In each situation, the professionals could have no contact relevant to the Title III cases with the potential connections. The time and expense to chase down all these thousands of additional connections serves no valid purpose. Accordingly, the Oversight Board respectfully requests the Court adopt the MIP List as proposed in the Motion.

**I.       Connections with Holders of Inactive Claims are Irrelevant to Professionals' Disinterestedness**

        **A.       PRRADA Does Not Require Disclosure of Professionals' Connections with Holders of Inactive Claims**

        2.       The U.S. Trustee contends the MIP List must include holders of claims that were settled, expunged, or otherwise resolved prior to the enactment of PRRADA ("<u>Inactive Claims</u>"). This argument ignores the stage of the cases and the fact that they have been ongoing for almost 5 years, and applies Bankruptcy Code provisions not incorporated into PROMESA or PRRADA.

4

3. *First*, including holders of Inactive Claims on the MIP List is not required by PRRADA, and is unnecessary, provides no benefit, and will lead to a significant waste of the Debtors' resources due to the time and expense required for all professionals to find and disclose connections to these parties. The U.S. Trustee argues Section 2(e)(2) of PRRADA "explicitly" requires retroactive disclosure of connections during a professional's "entire" employment in connection with a case. *See* UST Obj. at 3, 9. It does not. Rather, as explained in the Motion (¶ 12 n.7), Section 2(e) is the only provision in PRRADA to impose consequences for failure to comply with its requirements, and it applies solely to fee applications filed after PRRADA's enactment. Contrary to the U.S. Trustee's suggestion that Section 2(e)(2) refers to a professional's "entire" employment, it is limited by the introductory paragraph of Section 2(e), which relates to "the review and approval of professional compensation . . . filed *after the date of enactment* of [PRRADA]." PRRADA § 2(e) (emphasis added). In addition, section 2(e) is written in the present tense, which does not suggest professionals must disclose past connections. *See, e.g.*, PRRADA § 2(e)(2)(A) (providing the Court may deny compensation if the professional "*is* not a disinterested person") (emphasis added). Accordingly, under the first step of the retroactivity analysis (Mot. ¶ 12 n.7), the statutory text does not support retroactive application of the statute.[5] *Landgraf v. USI Film Products*, 511 U.S. 255 (1994).

4. Even if PRRADA's text were ambiguous as to whether it should be applied retroactively, the second step of the retroactivity analysis demonstrates it should not, as doing so would result in "impermissibly retroactive effects" on professionals seeking compensation for

---

[5] The first step of the retroactivity analysis also considers whether legislative history supports a retroactive reading. *See Lattab v. Ashcroft*, 384 F.3d 8, 14 (1st Cir. 2004); *see also* Motion ¶ 12 n.7. PRRADA's legislative history's focus on the disclosure of only "relevant" connections, *see* Sen. Rpt. 117-48 at 8, supports finding that PRRADA does not require disclosure of connections with parties who are no longer creditors.

5

work they have already performed in connection with the Title III cases. *Lattab*, 384 F.3d at 14 (impermissible result of retroactive application "obtains if the specified application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"). Disqualifying or otherwise limiting a professional's past compensation based on a connection with a party who is no longer a creditor of one of the debtors would plainly be impermissible, as it would alter the professional's reasonable expectation pre-PRRADA that it would be paid notwithstanding that relationship. *See Martin v. Hadix*, 526 U.S. 343, 358 (1999) (application of statute to reduce fees incurred prior to its enactment would have impermissible effects on attorneys who incurred such fees); *see also Serv. Empls. Int'l Union Nat'l Ind. Pens. Fund v. Jersey City Healthcare Providers*, 358 F. Supp. 3d, 12, 22 (D.D.C. 2019) (statute increasing contribution rates to pension plan had no impermissible effect because increased rates were not applied to payments made before statute's enactment).

5. *Second*, the U.S. Trustee points to Bankruptcy Code sections 327 and 328(c) to support its interpretation of PRRADA, arguing that because these provisions apply to a professional's employment for the duration of the case, PRRADA's disclosure requirements likewise apply to the duration of the Title III cases and holders of Inactive Claims must be included on the MIP List. *See* UST Obj. at 2, 4, 10. However, these sections are not incorporated into either PROMESA or PRRADA. Furthermore, section 327 applies to the *retention* of estate professionals. *See, e.g.*, 11 U.S.C. § 327(a) ("[T]he trustee . . . may *employ* one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title.") (emphasis added). PRRADA, meanwhile, contains no mention of the retention of professionals, nor should it—PRRADA must respect the authority of the Debtors to solely determine which professionals to retain, as is the case in chapter 9 municipal bankruptcies; a federal court's review of a territorial

6

entity's retention decision would therefore be inappropriate.  *See* 11 U.S.C. § 901(a) (excluding applicable provisions of the Bankruptcy Code from the provisions incorporated into chapter 9); *In re East Shoshone Hosp. Dist.*, 226 B.R. 430, 431–32 (Bankr. D. Idaho 1998) (holding a chapter 9 debtor's application to retain counsel was not required and would implicate chapter 9 policy prohibiting the court from exercising control over a debtor municipality's expenditures or interfering with governmental affairs).

6. Moreover, as PRRADA was enacted nearly five years after the Title III cases were filed, professionals have already been retained, and countless claims have already been resolved through confirmed plans of adjustment, the ACR process, and other settlements. While connections with all creditors at the outset of a case may be relevant to a professional's disinterestedness at the initial retention stage, they are no longer relevant here. If a claim was expunged, for example, for lack of liability or because it was filed against the wrong Debtor, why would it make sense to have more than sixty professionals spend the Debtors' money in identifying connections to a non-creditor?

7. Nor is section 328(c) relevant, as it provides a court may deny compensation to a professional "if, at any time during such professional person's employment *under section 327 or 1103* of [the Bankruptcy Code], such professional person is not a disinterested person . . ." 11 U.S.C. § 328(c) (emphasis added).  Section 328(c) therefore applies only to professionals employed under sections 327 or 1103 of the Bankruptcy Code.  Here, although committee professionals are retained under section 1103 and have filed disclosures for the duration of the Title III cases (*see* UCC Response at 2–3), no professionals are employed under section 327, and

7

section 328(c) does not apply to the non-1103 professionals.[6] And, unlike section 328(c), which provides compensation may be denied if a professional is not disinterested at any time, PRRADA's disclosure requirements expressly apply to "the review and approval of professional compensation . . . filed after the date of enactment of [PRRADA]." PRRADA § 2(e). If Congress had intended for PRRADA to apply to the "entirety" of a professional's employment (*see* UST Obj. at 3, 9) or to incorporate sections 327 and 328(c) into PRRADA, it would have said so.

8. *Third*, PRRADA's intent is to avoid conflicts of interests in connection with the Debtors' continued restructurings by disclosing "*relevant*" connections "that pose a more substantial risk of compromising a professional's impartiality." *See* Sen. Rpt. 117-48 at 8, 11 (emphasis added). In order to achieve that goal, the MIP List is a living, breathing document. As additional Debtors become reorganized and final fee applications are filed, those Debtors' parties in interest may be removed from the MIP List as they are no longer relevant to other professionals' ongoing work. Similarly, if additional parties holding material interests are identified, they may be added. But holders of Inactive Claims who may have been material parties in interest years ago[7] are no longer relevant to professionals' disinterestedness.

      **B.**      **The Court Should Use Its Discretion to Exclude Holders of Inactive Claims from the MIP List in Order to Avoid Waste and Delay**

9. The exclusion of Inactive Claims from the MIP List will avoid significant costs to the Debtors and limit the burden on professionals required to file disclosures pursuant to PRRADA, as well as the burden on the Court of reviewing such disclosures. The U.S. Trustee

---

[6] The Oversight Board takes no position as to the disclosure obligations of committee professionals retained under section 1103, which is incorporated into PROMESA. *See* UCC Response at 2–3.

[7] As noted in the Motion, parties to the key plan support agreements are included, even though their claims are technically inactive, due to the importance of these settlements, including the procedures by which they were negotiated and approved, to confirmation of the Plan. *See* Motion ¶ 12.

attempts to minimize the burden of adding well over a thousand additional parties to the MIP List by asserting "it appears that the Oversight Board is already aware of and readily able to identify all such creditors." UST Obj. at 11. This misses the point. The true burden is not the Oversight Board's efforts in adding holders of Inactive Claims to the MIP List. Rather, it is the time and expense required for the more than sixty professionals who have been retained in the Title III cases (many of whom are small, on-island practitioners) to review an unnecessarily lengthy MIP List and identify irrelevant connections at the Debtors' expense.[8]

10. A professional's disclosure of connections pursuant to Bankruptcy Rule 2014(a) does not simply involve running a list of interested parties through a conflicts system. Rather, it requires conflicts reports to be reviewed, inquiries to be sent to a professional's entire staff, the professional's entire staff to review the list of interested parties and respond to the inquiries, the nature of each reported connection to be identified, and (often complex and nuanced) disclosures to be prepared.[9] Many of the professionals in these Title III cases are large firms with hundreds, if not thousands, of employees. The process of preparing disclosures required by PRRADA will be extraordinarily time-consuming and costly, requiring all employees of each professional to spend time (and, for many employees, incur fees) reviewing the MIP List and identifying their connections. Thus, professionals will incur significant fees, which the Debtors must pay, from each employee's review of the already lengthy MIP List. Expanding the MIP List to include

---

[8] The U.S. Trustee's table comparing the number of active and inactive claims (UST Obj. at 11) also minimizes the true burden of incorporating holders of Inactive Claims into the MIP List, as doing so would require including both the holder of the Inactive Claim plus any attorneys or accountants retained by that creditor. Thus, the actual increase in the number of names that would have to be reviewed as part of the disclosure process is significantly higher than the U.S. Trustee suggests.

[9] *See In re Alpha Natural Resources, Inc.*, 556 B.R. 249, 224 (Bankr. E.D. Va. 2016) (in connection with retention application, professional sent email to all employees to determine whether any employee had relationship to any party in interest); *KLG Gates LLP v. Brown*, 506 B.R. 177, 193 (E.D.N.Y. 2014) ("the broad reach of Rule 2014 suggests that the word [connections] encompasses individual attorneys, as well as their law firms").

9

holders of Inactive Claims would increase this burden exponentially with no material benefit, as those parties are no longer relevant and any connection to them would not threaten a professional's disinterestedness. Because such holders are not required to be included under PRRADA's clear terms, the Court should use its discretion to exclude them from the MIP List.

### II. Including Individual Litigation Plaintiffs on the MIP List is Inconsistent with PRRADA and Would Also Impose a Significant Burden on the Court and Professionals

11. The Oversight Board's proposed exclusion of individual plaintiffs in large multi-plaintiff litigations is also reasonable and justified in light of the practical considerations noted above. While the Oversight Board recognizes the U.S. Trustee requests only individual plaintiffs whose claims exceed the materiality threshold be included on the MIP List, the Oversight Board cannot identify those plaintiffs at this time because the master claims filed on behalf of all plaintiffs in these litigations have not yet been fully reconciled. Even so, the Oversight Board anticipates that few, if any, of the claims held by individual plaintiffs are above the proposed dollar amount threshold; the majority of these plaintiffs are either individual wage claimants seeking salary adjustments, which are unlikely to exceed the $1 million or $500,000 thresholds, or multi-plaintiff tort claims against the Commonwealth, which are likely subject to a statutory cap of $75,000 or $150,000. 32 L.P.R.A. § 3077.

12. Further, including all individual plaintiffs in large multi-plaintiff litigations would dramatically increase the number of parties identified on the MIP List—indeed, including individual plaintiffs for only 14 of the largest multi-plaintiff litigations would add approximately 22,900 names. In light of this significant additional burden, as well as the low likelihood that any individual plaintiff in these litigations holds a claim exceeding the proposed thresholds, the Oversight Board submits that excluding these individual plaintiffs is consistent with Congress's goals in enacting PRRADA. In the event the Oversight Board determines any individual plaintiff's

10

claim will exceed the applicable threshold, the Oversight Board will add such plaintiff to the MIP List.

[*Remainder of page intentionally left blank*]

## **CONCLUSION**

WHEREFORE the Oversight Board respectfully requests the Motion be granted, the Court approve the proposed MIP List attached to the Motion as **Exhibit A**, and the Court grant the Oversight Board such other and further relief as is just.

Dated: March 11, 2022
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
205 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-1813
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com


*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian. S. Rosen
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       brosen@proskauer.com
       ebarak@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*