# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>                               Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>                                Debtor. | PROMESA Title III<br><br>Case No. 17 BK 3567-LTS |
| PEAJE INVESTMENTS, LLC,<br><br>                               Plaintiff,<br><br>                   -v-<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, *et al.*,<br><br>                               Defendants. | Adv. Proc. No. 17-151-LTS in No. 17 BK 3567-LTS<br><br>Adv. Proc. No. 17-152-LTS in No. 17 BK 3283-LTS |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| ASSURED GUARANTY CORP, *et al.*,<br><br>Plaintiffs,<br><br>-v-<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Defendants. | Adv. Proc. No. 17-155-LTS in No. 17 BK 3283-LTS<br><br>Adv. Proc. No. 17-156-LTS No. 17 BK-3567-LTS |
| AMBAC ASSURANCE CORPORATION,<br><br>Plaintiff,<br><br>-v-<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Defendants. | Adv. Proc. No. 17-159-LTS No. 17 BK 3283-LTS |

**OBJECTION OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTY CORPORATION WITH RESPECT TO (I) URGENT MOTION FOR AN ORDER DIRECTING THE FISCAL AGENT TO DISBURSE THE DISPUTED FUNDS IN THE HTA BOND SERVICE ACCOUNTS, REDEMPTION ACCOUNTS, AND RESERVE ACCOUNTS (20297) AND (II) AMENDED AND RESTATED STIPULATION AND ORDER REGARDING THE DISPUTED FUNDS IN THE HTA BOND SERVICE ACCOUNTS, REDEMPTION <u>ACCOUNTS AND RESERVE ACCOUNTS (ECF NO. 20316)</u>**

Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guaranty Corporation (collectively, "Objectors") hereby submit this objection (the "Objection") to the *Urgent Motion for an Order Directing the Fiscal Agent to Disburse the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts, and Reserve Accounts* (ECF No. 20297)[2] (the "Urgent Motion") and the *Amended and Restated Stipulation and Agreed Order Regarding the Disputed Funds in the HTA Bonds Service Accounts, Redemption Accounts and Reserve Accounts* (ECF No. 20316) (the "Stipulation") and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Paragraph 52 of the Confirmation Order provides for interim payments of cash to certain HTA creditors, including Objectors, as an integral part of those creditors' settlement of their claims against the Commonwealth. Paragraph 52 is crystal clear on the issue of *who* is to receive those payments, specifying that "HTA shall make an interim distribution **to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims**". Paragraph 52 is similarly clear as to the exact dollar amount of the distributions to be made to these holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims, namely "**One Hundred Eighty-Four Million Eight Hundred Thousand Dollars ($184,800,000.00) and Seventy-Nine Million Two Hundred Thousand Dollars ($79,200,000.00), respectively.**" These exact dollar amounts are also set forth in the HTA/CCDA Plan Support Agreement (§§ 4.1, 4.3) and in the Plan (art. 86.1(b)(xv)). None of these documents provide for any reduction or adjustment of those amounts.

---

[2] Unless otherwise indicated, all ECF numbers in this Objection refer to the docket in Case Number 17 BK 3283-LTS. Capitalized terms used in this Objection and not defined herein shall have the meanings ascribed to them in the Urgent Motion and/or the Stipulation, as applicable.

2. In contrast to paragraph 52's clear language about *who* is supposed to receive interim cash distributions from HTA and in *what* amounts, paragraph 52 is indifferent to the *source* of those payments. On the eve of the Effective Date, the Oversight Board has now filed an Urgent Motion and proposed Stipulation apparently proposing to make the required "Effective Date Payments" from certain "Disputed Funds" held by the HTA Fiscal Agent, BNYM. This last-minute proposal appears to conflict with the Oversight Board's own certified HTA fiscal plan, which provides for these Effective Date Payments to instead be made from the proceeds of a loan (the "Commonwealth Loan") from the Commonwealth to HTA that is specifically sized to allow for payment of the Effective Date Payments. In any event, paragraph 52 certainly does not *require* the Effective Date Payments to be made from the Disputed Funds, and paragraph 52 also does not *permit* the Effective Date payments to be made from the Disputed Funds to the extent that source of payment would result in a deviation from paragraph 52.

3. Objectors are monoline insurers who insure or hold bonds issued by HTA and who were parties to the original dispute regarding ownership of the Disputed Funds as well as parties to the Disputed Funds Stipulation currently governing those funds. Objectors do not necessarily object to the use of the Disputed Funds to make the Effective Date Payments, but request that language be added to the Stipulation to ensure that it complies with paragraph 52 by clarifying that the amounts required to be paid under paragraph 52 cannot be reduced, including as a result of any fees or expenses asserted by the Fiscal Agent. Objectors' proposed revisions to the Stipulation are set forth in the revised proposed Stipulation attached hereto as "Exhibit A" (the "Revised Proposed Stipulation").

4. In the alternative, in the event the Court is not inclined to revise the Stipulation to avoid any doubt that the amounts set forth in paragraph 52 must be paid in full to

the Objectors and other holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims, the Urgent Motion should be denied.

## ARGUMENT

### I. The Stipulation Should Be Revised To Comply With Paragraph 52 of the Confirmation Order.

5. While it should be clear to the Oversight Board and BNYM that they cannot deduct Fiscal Agent fees and expenses from the amounts to which creditors are entitled under paragraph 52, the Stipulation unfortunately creates significant ambiguity in this regard. Specifically, while paragraph 3 of the Stipulation provides for the Disputed Funds to "be deemed amounts to be applied by HTA in satisfaction of the Effective Date Payments," paragraph 4 of the Stipulation qualifies this use of the Disputed Funds with a broad Reservation of Rights with respect to the Fiscal Agent's right to seek payment of fees and expenses:

> Nothing in this Stipulation affects the Fiscal Agent's right to be reimbursed for any and all of the Fiscal Agent's fees and expenses from the distributions to be made pursuant to the Plan, in accordance with the applicable resolutions, decretal paragraph 36 of the Confirmation Order, Section 77.13 of the Plan, and a plan of adjustment for HTA.

6. Objectors do not necessarily object to the Disputed Funds being used to pay a portion of the Effective Date Payments to which Objectors are entitled under paragraph 52, nor do Objectors necessarily object to the payment of the Fiscal Agent fees and expenses from the Disputed Funds. However, any such payment of Fiscal Agent fees and expenses cannot be permitted to prejudice Objectors' entitlement to receive the full amount of the Effective Date Payments required under paragraph 52. To clarify that payment of any Fiscal Agent fees and expenses is without prejudice to Objectors' entitlements to receive their full distributions pursuant to paragraph 52, Objectors propose adding a sentence to the end of paragraph 4 of the Stipulation

providing that "For the avoidance of doubt, amounts applied on account of Fiscal Agent fees and expenses shall not be credited against, or result in any reduction of, the amounts required to be distributed to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims pursuant to decretal paragraph 52 of the Confirmation Order."

7. This clarifying "for the avoidance of doubt" language is necessary because paragraph 4 of the Stipulation inappropriately cites Section 77.13 of the Plan, which addresses "Trustee/Fiscal Agent fees and expenses which may allegedly be due and owing **by the Commonwealth, ERS and PBA**", but which has no application to Fiscal Agent fees and expenses allegedly owed by *HTA* or its creditors. Specifically, Section 77.13 provides:

> Payment of Trustee Fees and Expenses: The distributions to be made pursuant to the Plan are intended to be inclusive of any and all Trustee/Fiscal Agent fees and expenses which may be **allegedly due and owing by the Commonwealth, ERS and PBA** with respect to amounts discharged pursuant to the Plan. The Plan does not, nor shall it be construed to, limit the rights of each Trustee/Fiscal Agent to payment of such amounts [allegedly due and owing by the Commonwealth, ERS and PBA] from the distributions to be made hereunder, including, without limitation, the imposition of any Charging Lien.

8. Given that Section 77.13 only applies to fees and expenses related to "the Commonwealth, ERS, and PBA", that section has no relevance to the Stipulation, which deals only with HTA-related fees and expenses.[3] Nonetheless, the irrelevant citation to Section 77.13 in paragraph 4 creates some concern that the Oversight Board and BNYM may be attempting to

---

[3] Decretal paragraph 36 of the Confirmation Order, which is also referenced in paragraph 4 of the Stipulation, tracks Section 77.13 of the Plan and similarly provides that "The distributions to be made pursuant to the Plan are intended to be inclusive of any and all Trustee/Fiscal Agent fees and expenses allegedly **due and owing by the Commonwealth, ERS, and PBA** with respect to amounts discharged pursuant to the Plan. The Plan does not, nor shall it be construed to, limit the rights of each Trustee/Fiscal Agent to payment of such amounts [allegedly due and owing by the Commonwealth, ERS, and PBA]." Decretal paragraph 36 provides no basis for any reduction in the amounts required to be distributed to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims pursuant to paragraph 52.

erroneously suggest that they can deduct HTA-related fees and expenses from the distributions mandated by paragraph 52. The "for the avoidance of doubt" language proposed in paragraph 4 of the Revised Proposed Stipulation helps to clarify that the Oversight Board and BNYM cannot modify the Plan and Confirmation Order by deducting such fees and expenses from the amounts to which creditors are entitled under paragraph 52.

## II. Alternatively, the Urgent Motion Should Be Denied in Its Entirety.

9. In the event the Court is not inclined to revise the Stipulation as proposed in the Revised Proposed Stipulation, the Court should deny the Urgent Motion and not approve the Stipulation. Importantly, neither the Plan nor the Confirmation Order requires that the Disputed Funds be used to make the Effective Date Payments, and use of the Disputed Funds for this purpose actually appears to be *contrary* to HTA's own certified fiscal plan, which instead provides for the Effective Date Payments to be made from the proceeds of a loan from the Commonwealth to HTA. The Disputed Funds are therefore not needed in order for the Effective Date to go forward, and a determination as to the proper use of the Disputed Funds can await confirmation of an HTA plan.

10. Specifically, page 107 of HTA's current certified fiscal plan, attached as "Exhibit B" hereto, mandates that "the Commonwealth **will** . . . provide a one-time loan to HTA for FY2022 in the amount of $314 million to ensure HTA's liquidity upon confirmation of the Commonwealth Plan of Adjustment ("POA")." This Commonwealth Loan to provide HTA with the necessary liquidity to make the Effective Date Payments is a *requirement* of the certified fiscal plan, and renders any use of the Disputed Funds for this purpose unnecessary.

11. Similarly, a January 6, 2022 "notice of violation" from the Oversight Board to HTA requiring HTA's fiscal plan to incorporate the Commonwealth Loan makes clear that the amount of the Commonwealth Loan was calculated precisely to permit payment of the Effective

-5-

Date Payments. This "notice of violation", attached as "Exhibit C" hereto, states that "[i]n accordance with the Commonwealth January 2022 Revised Fiscal Plan, the Confirmation Order, and the HTA/Convention Center District Authority (CCDA) Plan Support Agreement, HTA must make cash payments in the aggregate amount of $314 million as follows: (a) $299M to be divided among (i) holders of HTA 68 Bond Claims, (ii) holders of HTA 98 Senior Bond Claims, and certain HTA/CCDA Plan Support Agreement Joinder Creditors, and (b) $15M to the DRA Parties in accordance with the Debt Recovery Authority (DRA) Stipulation. HTA should account for the $314 million transfer as a loan from the Commonwealth in the Proposed Plan. The transaction should be structured as a conventional loan with a term not to exceed the period covered by the Certified Fiscal Plan (30 years) and subordinated to HTA bonds. Loan repayment should begin no later than FY23. **This loan will be used to ensure liquidity in connection with the cash obligations of HTA upon confirmation of the Commonwealth POA**."

12. Notably, the portion of the Commonwealth Loan earmarked for "holders of HTA 68 Bond Claims [and] holders of HTA 98 Senior Bond Claims, and certain HTA/CCDA Plan Support Agreement Joinder Creditors" ($299 million) exceeds the total amount of the Effective Date Payments ($264 million), meaning that HTA's ability to make the Effective Date Payments appears to be "ensured" by the Commonwealth Loan required under HTA's certified fiscal plan, without any need to use the Disputed Funds. In reply, the Oversight Board may try to insist that, contrary to its own certified HTA fiscal plan, it now needs the Disputed Funds in order to make the Effective Date Payments, but the Oversight Board has no authority to challenge its own certified HTA fiscal plan, and the Oversight Board's position has always been that this Court has no jurisdiction to hear such a challenge. See 48 U.S.C. § 2126(e).

13. Accordingly, liquidating the Disputed Funds does not appear necessary in order for HTA to make the Effective Date Payments, and, therefore, the Court should deny the

-6-

Urgent Motion if the Court is not inclined to revise the Stipulation to clarify that the payments required under paragraph 52 cannot be reduced.

## RESERVATION OF RIGHTS

14. Objectors otherwise reserve all of their rights with respect to the Urgent Motion, the Stipulation, and the Disputed Funds, including, without limitation, the right to assert claims for damages against BNYM for its role in the negotiation and filing of the Stipulation.

## CONCLUSION

15. For the reasons set forth herein, the Stipulation should be revised in accordance with the Revised Proposed Stipulation attached as Exhibit A hereto, or, alternatively, the Urgent Motion should be denied.

Dated: March 12, 2022
       New York, New York

| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
|---|---|
| /s/ *Heriberto Burgos Pérez* | /s/ *Howard R. Hawkins, Jr.* |
| Heriberto Burgos Pérez | Howard R. Hawkins, Jr.* |
| USDC-PR No. 204,809 | Mark C. Ellenberg* |
| Ricardo F. Casellas-Sánchez | Casey J. Servais* |
| USDC-PR No. 203,114 | William J. Natbony* |
| Diana Pérez-Seda | Thomas J. Curtin* |
| USDC–PR No. 232,014 | 200 Liberty Street |
| E-mail: hburgos@cabprlaw.com | New York, New York 10281 |
|       rcasellas@cabprlaw.com | Tel.: (212) 504-6000 |
|       dperez@cabprlaw.com | Fax: (212) 406-6666 |
|  | Email: howard.hawkins@cwt.com |
| P.O. Box 364924 |       mark.ellenberg@cwt.com |
| San Juan, PR 00936-4924 |       casey.servais@cwt.com |
| Tel.: (787) 756-1400 |       bill.natbony@cwt.com |
| Fax: (787) 756-1401 |       thomas.curtin@cwt.com |
| *Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | * admitted pro hac vice<br>*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

      */s/ María E. Picó*
María E. Picó
Rexach & Picó, CSP
802 Ave. Fernández Juncos
San Juan PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
mpico@rexachpico.com

  */s/ Martin A. Sosland*
Martin A. Sosland*
Candice M. Carson*
Butler & Snow LLP
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
martin.sosland@butlersnow.com
candice.carson@butlersnow.com

James E. Bailey III*
Adam M. Langley*
Butler & Snow LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

*Admitted Pro Hac Vice

*Counsel for Financial Guaranty Insurance Company*

| | |
|---|---|
| ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC | WEIL, GOTSHAL & MANGES LLP |
| By: */s/ Eric Perez-Ochoa* <br> Eric Perez-Ochoa <br> (USDC-PR No. 206314) <br> Luis A. Oliver-Fraticelli <br> (USDC-PR No. 209204) <br> 208 Ponce de León Ave., Suite 1600 <br> San Juan, PR 00936 <br> Telephone: (787) 756-9000 <br> Facsimile: (787) 756-9010 <br> Email: epo@amgprlaw.com <br>         loliver@amgprlaw.com | By: */s/ Kelly DiBlasi* <br> Jonathan Polkes* <br> Gregory Silbert* <br> Robert Berezin* <br> Kelly DiBlasi* <br> Gabriel A. Morgan* <br> 767 Fifth Avenue <br> New York, NY 10153 <br> Telephone: (212) 310-8000 <br> Facsimile: (212) 310-8007 <br> Email: jonathan.polkes@weil.com <br>         gregory.silbert@weil.com <br>         robert.berezin@weil.com <br>         kelly.diblasi@weil.com <br>         gabriel.morgan@weil.com |
| | *Admitted *pro hac vice* |
| *Attorneys for National Public Finance Guarantee Corporation* | *Attorneys for National Public Finance Guarantee Corporation* |

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, 12th day of March, 2022.

By: /s/ *Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr.*
* admitted pro hac vice