# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK-3283-LTS<br><br>(Jointly Administered)<br><br>**RE: ECF No. 20297** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK-3567-LTS<br><br>**RE: ECF No. 1138** |
| PEAJE INVESTMENTS, LLC,<br><br>Plaintiff,<br><br>-v-<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, *et al.*,<br><br>Defendants. | Adv. Proc. No. 17-151-LTS in No.17 BK 3567-LTS<br><br>**RE: ECF No. 327**<br><br>Adv. Proc. No. 17-152-LTS in No. 17 BK-3283-LTS<br><br>**RE: ECF No. 313** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

| | |
|---|---|
| ASSURED GUARANTY CORP, *et al.*,<br><br>            Plaintiffs,<br><br>-v-<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>            Defendants. | Adv. Proc. No. 17-155-LTS in No.17 BK 3283<br><br>**RE: ECF No. 136**<br><br>Adv. Proc. No. 17-156-LTS No. 17 BK-3567<br><br>**RE: ECF No. 132** |
| AMBAC ASSURANCE CORPORATION,<br><br>            Plaintiff,<br><br>-v-<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>            Defendants. | Adv. Proc. No. 17-159-LTS No.17 BK 3283-LTS<br><br>**RE: ECF No. 167** |

**REPLY OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO IN SUPPORT OF URGENT MOTION FOR AN ORDER DIRECTING THE FISCAL AGENT TO DISBURSE THE DISPUTED FUNDS IN THE HTA BOND SERVICE ACCOUNTS, REDEMPTION ACCOUNTS, AND RESERVE ACCOUNTS**

To the Honorable United States District Court Judge Laura Taylor Swain:

      The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA," and together with the Commonwealth, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this reply (the "Reply") (i) in support of the *Urgent Motion for an Order Directing the Fiscal Agent to Disburse the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts, and Reserve*

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

1

*Accounts* (the "Urgent Motion")[3] and (ii) in response to the *Objection of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guaranty Corporation with Respect to (i) Urgent Motion for an Order Directing the Fiscal Agent to Disburse the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts, and Reserve Accounts (ECF No. 20297) and (ii) Amended and Restated Stipulation and Order Regarding the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts and Reserve Accounts (ECF No. 20316)* (the "Objection")[4] filed by Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guaranty Corporation (collectively, the "Monolines"). In support of this Reply, the Oversight Board respectfully states as follows:

## BACKGROUND

1. On March 10, 2022, the Oversight Board filed the Urgent Motion, seeking approval of the liquidation and disbursement of the Disputed Funds pursuant to the terms and provisions of the *Stipulation and Agreed Order Regarding the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts and Reserve Accounts* (the "Stipulation"), attached thereto as Exhibit A.

2. On March 10, 2022, the Court entered the *Order Scheduling Briefing of Urgent Motion for an Order Directing the Fiscal Agent to Disburse the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts, and Reserve Accounts* [ECF No. 20300 in Case No. 17-

---

[3] Case No. 17-3283, ECF No. 20297; Case No. 17-3567, ECF No. 1138; Adv. Proc. No. 17-151, ECF No. 327; Adv. Proc. No. 17-152, ECF No. 313; Adv. Proc. No. 17-155, ECF No. 136; Adv. Proc. No. 17-156, ECF No. 132; Adv. Proc. No. 17-159, ECF No. 167. Capitalized terms used herein that are not otherwise defined shall have the meanings given to them in the Urgent Motion.

[4] Case No. 17-3283, ECF No. 20318; Case No. 17-3567, ECF No. 1142; Adv. Proc. No. 17-151, ECF No. 330; Adv. Proc. No. 17-152, ECF No. 316; Adv. Proc. No. 17-155, ECF No. 139; Adv. Proc. No. 17-156, ECF No. 135; Adv. Proc. No. 17-159, ECF No. 170.

2

3283], setting March 12, 2022 at 10:00 a.m. (Atlantic Standard Time) as the deadline to respond to the Urgent Motion, and March 12, 2022 at 5:00 p.m. (Atlantic Standard Time) as the deadline to file a reply.

3. The Oversight Board and the Fiscal Agent modified the Stipulation in an attempt to address concerns raised by Assured and National, and, on March 11, 2022, the Oversight Board filed the *Amended and Restated Stipulation and Agreed Order Regarding the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts and Reserve Accounts* (the "A&R Stipulation"),[5] a copy of which is attached hereto as **Exhibit A**, which incorporates such revisions.

4. Notwithstanding expressly addressing their stated concerns, on March 12, 2022, the Monolines filed the Objection.

## REPLY

### I. The Objection Improperly Seeks Declaratory Relief With Respect to the Confirmation Order

5. The Monolines are clear in the Objection that they **do not** object to the use of the Disputed Funds to make the Effective Date Payments. Objection ¶¶ 3 ("Objectors do not necessarily object to the use of the Disputed Funds to make the Effective Date Payments, but request language be added to the Stipulation to ensure that it complies with paragraph 52 [of the Confirmation Order] . . . ."); 6 (same). Rather, the Objection relates to the relationship among the Fiscal Agent, holders of HTA Bonds and the Monolines in connection with payment of the Fiscal Agent's fees and expenses, an issue which is irrelevant to the sole issue before this Court on the Urgent Motion—whether or not the Disputed Funds should be disbursed. Nothing more is before the Court.

---

[5] ECF No. 20316 in Case No. 17-3283; ECF No. 1141 in Case No. 17-3567; ECF No. 329 in Adv. Proc. No. 17-151; ECF No. 315 in Adv. Proc. No. 17-152; ECF No. 138 in Adv. Proc. No. 17-155; ECF No. 134 in Adv. Proc. No. 17-156; ECF No. 169 in Adv. Proc. No. 17-159.

6. Furthermore, after receiving comments from the Monolines with respect to the deduction of the Fiscal Agent's fees and expenses from the Disputed Funds proposed to be disbursed pursuant to the Stipulation, the Oversight Board filed, on March 11, 2022, the A&R Stipulation, which deleted provisions relating to such deduction. Accordingly, the full amount of the Disputed Funds will be used to satisfy the Effective Date Payments, subject to satisfaction of the HTA Distribution Conditions.[6]

7. The Monolines reference reservation of rights language in Paragraph 4 of the A&R Stipulation—which is intended only to preserve existing rights—as a pretext to seek affirmative declaratory relief through the Objection with respect to the interpretation of decretal paragraph 52 of the Confirmation Order. *See* Objection ¶ 6.[7] Such request is procedurally improper, as the sole issue before this Court with respect to the Urgent Motion is whether the Disputed Funds may be disbursed to make the Effective Date Payments.[8]

---

[6] Decretal paragraph 52 of the Confirmation Order and Section 4.1 of the HTA/CCDA PSA provide that, upon the satisfaction of the HTA Distribution Conditions, an interim distribution of $264,000,000 will be made, in cash, to reduce the principal of the HTA Bonds. Distribution of the Effective Date Payments to satisfy the Debtors' obligations pursuant to such provisions will be facilitated through the Fiscal Agent. However, at this time, the HTA Distribution Conditions have not been satisfied.

The Oversight Board takes no position as to any obligations the Monolines have to pay the Fiscal Agent's fees and expenses pursuant to the terms of the relevant documents governing the relationship between the Monolines and the Fiscal Agent.

[7] The Monolines propose the following language be added to Paragraph 4 of the A&R Stipulation: "For the avoidance of doubt, amounts applied on account of Fiscal Agent fees and expenses shall not be credited against, or result in any reduction of, the amounts required to be distributed to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims pursuant to decretal paragraph 52 of the Confirmation Order."

The Monolines cannot seek, and do not provide a legal basis for the Court's authority, to *amend* the A&R Stipulation, and, as discussed below, their arguments for denial of the Urgent Motion are undercut by the fact that they do not object to the use of the Disputed Funds.

[8] The Monolines reference decretal paragraph 52 of the Confirmation Order, arguing that paragraph 52 "does not *permit* the Effective Date payments to be made from the Disputed Funds." Objection ¶ 2 (emphasis included in original).

As noted above, interpretation of decretal paragraph 52 of the Confirmation Order is irrelevant to the Court's consideration of the Urgent Motion, and the Oversight Board does not waive any rights or arguments with respect thereto. Nonetheless, paragraph 52 does not preclude the Effective Date Payments be funded by the Disputed Funds.

## II. The Monolines' Basis to Deny the Urgent Motion is Undercut by The Fact that They Do Not Object to the Use of the Disputed Funds

8. In the alternative, the Monolines argue the Urgent Motion should be denied because use of the Disputed Funds to satisfy the Effective Date Payments is not necessary pursuant to the certified fiscal plan for HTA. *See* Objection ¶ 9. However, the Monolines' argument is undercut by the fact that they state clearly that they do not object to the use of the Disputed Funds to make the Effective Date Payments. Objection ¶¶ 3, 6. Furthermore, the Monolines essentially seek to enforce the certified fiscal plan for HTA, arguing that HTA must use the proceeds of the Commonwealth's loan to HTA to satisfy the Effective Date Payments. *See id.* ¶ 12. The Monolines have no basis, nor standing, to enforce the certified fiscal plan for HTA or to seek a court determination over the use of HTA's or the Commonwealth's funds.[9] Denial of the Urgent Motion for the reasons the Monolines stated would be contrary to PROMESA Section 305, preserving the Commonwealth's and HTA's power to use their property and revenues. *See* PROMESA § 305 (". . . notwithstanding any power of the Court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with . . . any of the property or revenues of the debtor . . . ."); *see also* PROMESA § 301(a) (not incorporating Bankruptcy Code section 363).

9. Indeed, what the Monolines truly seek in requesting denial of the Urgent Motion is to have funds available to enhance the economic deal reached in the HTA/CCDA PSA with respect

---

[9] The Oversight Board does not waive any rights or arguments with respect to the Monolines' assertions relating to the certified fiscal plan for HTA. However, the Monolines' assertions contain certain inaccuracies. They assert the Commonwealth loan is required to be used to make the Effective Date Payments. Objection ¶ 10. To the contrary, the certified HTA fiscal plan simply provides that such loan is "to ensure HTA's liquidity upon confirmation of the Commonwealth Plan of Adjustment." HTA Fiscal Plan at 107.

Furthermore, the Monolines assert the January 6, 2022 "notice of violation" from the Oversight Board "makes clear that the amount of the Commonwealth Loan was calculated precisely to permit payment of the Effective Date Payments." Objection ¶ 11. However, such notice of violation and the terms the Monolines cite are not in the certified HTA fiscal plan.

5

to treatment of claims arising from the HTA Bonds, or to otherwise circumvent any obligations the Monolines have to pay the Fiscal Agent's fees and expenses pursuant to the terms of the relevant documents governing the relationship between the Monolines and the Fiscal Agent. As the Court is aware, the Plan provides for the compromise and settlement of claims against the Commonwealth arising from the HTA Bonds. Furthermore, the HTA/CCDA PSA, which the Monolines are a party to,[10] provides the terms for the treatment of claims arising from the HTA Bonds, which treatment will be incorporated into a plan of adjustment for HTA currently under discussion with the Monolines, among other parties. Critically, the HTA/CCDA PSA does not provide for holders of HTA Bonds to receive the Disputed Funds as part of their treatment. Accordingly, there is no reason for the Disputed Funds to be held until confirmation of a plan of adjustment for HTA, when no provision precludes their usage and they can be constructively used by HTA now for the benefit of HTA and its stakeholders in satisfaction of the Effective Date Payments.

[*Remainder of page intentionally left blank*]

---

[10] Pursuant to the HTA/CCDA PSA, the Monolines agreed to not "take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein, or impeded or preclude . . . the consummation, implementation and administration of the Plan and the HTA Plan . . . ." *See* HTA/CCDA PSA §§ 4.7(b), 4.8(b).

## **CONCLUSION**

**WHEREFORE** the Oversight Board respectfully requests the Court to so order the A&R Stipulation, a copy of which is attached hereto as **Exhibit A**, and grant such other and further relief as is just and proper.

Dated: March 12, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative of Debtors*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative of Debtors*

7

**Exhibit A**

**A&R Stipulation**

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK-3567-LTS |

**AMENDED AND RESTATED STIPULATION AND AGREED ORDER REGARDING THE DISPUTED FUNDS IN THE HTA BOND SERVICE ACCOUNTS, REDEMPTION ACCOUNTS AND RESERVE ACCOUNTS**

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

129154569v5

Commonwealth and HTA pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and The Bank of New York Mellon, solely in its capacity as fiscal agent ("BNYM" or the "Fiscal Agent") for several series of bonds issued by HTA (the "HTA Bonds"), hereby stipulate and agree as follows:

**RECITALS**

**Commencement of Title III Cases**

  A. On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to sections 104(j) and 206 of PROMESA and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

  B. On May 21, 2017, the Oversight Board issued a restructuring certification for HTA, commencing an additional case under Title III of PROMESA (the "HTA Title III Case" and together with the Commonwealth Title III Case, the "Title III Cases").

  C. By operation of PROMESA and pursuant to PROMESA section 315(b), the Oversight Board is the sole representative of the Commonwealth and HTA in their respective Title III Cases.

  D. The Court has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a), and venue is proper in this District pursuant to PROMESA section 307(a).

**The Disputed Funds**

  E. After the filing of the Title III Cases, certain monoline insurers and bondholders commenced the following adversary proceedings regarding, among other issues, asserted liens on certain revenues, payments on the HTA Bonds, and monies allegedly pledged to secure the

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

2

repayment of HTA Bonds (collectively, the "Adversary Proceedings"): *Ambac Assurance Corp. v. Commonwealth of Puerto Rico, et al.,* Adv. Proc. No. 17-159-LTS; *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.,* Adv. Proc. Nos. 17-155-LTS, 17-156-LTS; and *Peaje Investments, LLC v. Puerto Rico Highways and Transportation Authority, et al.,* Adv. Proc. Nos. 17-151 LTS, 17-152-LTS.

F. Pursuant to applicable documents, BNYM, as Fiscal Agent, was scheduled to make a payment of principal and interest on several series of bonds issued by HTA to the bondholders in the aggregate amount of approximately $224,277,263.11 on July 3, 2017.

G. On or around June 20, 2017, Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") instructed BNYM not to distribute the Disputed Funds to the bondholders, asserting that the Disputed Funds, as defined below, are property of HTA and are subject to the automatic stay pursuant to section 362(a) of the Bankruptcy Code, as incorporated by section 301(a) of PROMESA.

H. By letter, dated June 23, 2017, certain plaintiffs in the Adversary Proceedings stated their disagreement with the AAFAF position and asserted that BNYM must distribute the Disputed Funds on July 3, 2017 in accordance with the terms of the governing documents because the Disputed Funds (i) are not property of HTA, (ii) are held in trust for the benefit of the bondholders, (iii) are "pledged special revenues," pursuant to sections 902, 922(d) and 928 of the Bankruptcy Code as incorporated by section 301(a) of PROMESA, and (iv) are not subject to the automatic stay.

I. As of July 3, 2017, BNYM, as Fiscal Agent, held cash and various investments with an estimated value of $76,149,000.00 (the "Disputed Funds").

J. BNYM declined to take a position on the matter, and, in light of the dispute regarding the Disputed Funds, indicated that it would not distribute the Disputed Funds until appropriate relief was obtained from the Court.

K. On July 31, 2017, the parties to the Adversary Proceedings entered into that certain *Stipulation and Proposed Order Governing the Disputed Funds in the HTA Bonds Accounts, Redemption Accounts and Reserve Accounts* (the "Disputed Funds Stipulation"), which provides that, among other things, pending further order of the Court, BNYM shall maintain the entirety of the Disputed Funds in the existing accounts into which they have been deposited.

L. On August 3, 2017, the Court approved the Disputed Funds Stipulation [Case No. 17-00152, ECF No. 179].

M. As of the date hereof, the Disputed Funds held by BNYM in cash and various investments total $90,710,855.43.

**Confirmation of the Plan of Adjustment**

N. On May 5, 2021, the Oversight Board, as representative of the Commonwealth and HTA in their Title III Cases, entered into that certain HTA/CCDA Related Plan Support Agreement (the "HTA/CCDA PSA") with certain holders of bonds issued by HTA, certain holders of bonds issued by the Puerto Rico Convention Center District Authority, Assured Guaranty Corp. and Assured Municipal Corp., and National Public Finance Guarantee Corporation, which provided for, among other things, the terms of the resolution of litigation among the parties regarding the bonds issued by HTA, and the terms of securities to be issued pursuant to plans of adjustment for the Commonwealth and HTA.

O. On July 15, 2021, Ambac Assurance Corp. and Financial Guaranty Insurance Company each executed joinders to the HTA/CCDA PSA.

4

P. On January 18, 2022, the Court entered the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [Case No. 17-03283, ECF No. 19813] (the "Confirmation Order"), confirming the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2021 [Case No. 17-03283, ECF No. 19784] (the "Plan")[3], which incorporates the terms of the HTA/CCDA PSA.

Q. Section 4.1 of the HTA/CCDA PSA and decretal paragraph 52 of the Confirmation Order provide, in pertinent part, that ". . . within ten (10) Business Days following satisfaction of the HTA Distribution Conditions, HTA shall make an interim distribution to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims in the amounts of One Hundred Eighty-Four Million Eight Hundred Thousand Dollars ($184,800,000.00) and Seventy-Nine Million Two Hundred Thousand Dollars ($79,200,000.00), respectively, in Cash, which distributions shall reduce the principal amount of such HTA 68 Bonds and HTA 98 Senior Bonds, respectively, and the corresponding HTA Bond Claims . . . ." (the "Effective Date Payments"). Confirmation Order ¶ 52.

R. Sections 2.1 and 63.1 of the Plan provides for the treatment and global compromise and settlement of, among other things, claims against the Commonwealth relating to the HTA Bonds.

S. The Oversight Board projects that the Effective Date of the Plan shall occur on or before March 15, 2022.

---

[3] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed thereto in the Plan.

5

**NOW, THEREFORE,** in consideration of the foregoing, the parties hereby agree as follows:

**AGREEMENT**

1. This stipulation (the "Stipulation") shall become effective upon entry of an order of the Court approving the terms and provisions hereof (the "Stipulation Date").

2. Within two (2) business days of the date of execution of this Stipulation, the Oversight Board shall provide BNYM instructions for the liquidation of Disputed Funds that BNYM currently holds in investments other than cash.

3. Upon (a) satisfaction of the Distribution Conditions, and (b) liquidation of the Disputed Funds that BNYM currently holds in investment other than cash, (1) the aggregate amount of cash on account in the Disputed Funds shall be deemed amounts to be applied by HTA in satisfaction of the Effective Date Payments, and (2) the Fiscal Agent shall provide the Oversight Board and HTA a written statement setting forth the amount of the Disputed Funds as of such date.

4. Nothing in this Stipulation affects the Fiscal Agent's right to be reimbursed for any and all of the Fiscal Agent's fees and expenses from the distributions to be made pursuant to the Plan, in accordance with the applicable resolutions, decretal paragraph 36 of the Confirmation Order, Section 77.13 of the Plan, and a plan of adjustment for HTA.

5. This Stipulation shall be considered a full and final resolution of all disputes relevant to the Disputed Funds that were raised as part of the Disputed Funds Stipulation.

6. The parties represent and warrant that they are duly authorized to enter into and be bound by this Stipulation. Nothing herein shall impair any right, power, or obligation or be considered a waiver of any such right, power or obligation the parties hereto have with respect to

6

any valid and existing agreements between the parties hereto, which agreements remain in full force and effect and are not modified hereby.

7. Each party hereto agrees that it has fully participated in the drafting of this Stipulation. The rule of law that provides that ambiguities will be construed against the drafting party in interpreting written instruments shall be inapplicable to resolve any disputes over the meaning or intent of this Stipulation or any of its provisions.

8. This Stipulation is the full and complete agreement of the parties with respect to the matters set forth herein, and each party has entered into this Stipulation voluntarily and without duress.

9. This Stipulation shall be binding on the parties' successors and assigns.

10. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Stipulation.

11. This Stipulation may be executed in multiple counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which will be deemed an original, but all of which together will constitute one instrument.

Dated: March 11, 2022

[*Remainder of page intentionally left blank*]

**STIPULATED AND AGREED TO BY:**

| | |
|---|---|
| **PROSKAUER ROSE LLP** | **SEPULVADO, MALDONADO & COURET** |
| /s/ *Martin J. Bienenstock* | /s/ *Albéniz Couret-Fuentes* |
| Martin J. Bienenstock (pro hac vice) | Albéniz Couret-Fuentes |
| Brian S. Rosen (pro hac vice) | USDC-PR Bar No. 222207 |
| | |
| Eleven Times Square | 304 Ponce de León Ave. – Suite 990 |
| New York, NY 10036 | San Juan, PR 00918 |
| Tel: (212) 969-3000 | Telephone: (787) 765-5656 |
| Fax: (212) 969-2900 | Facsimile: (787) 294-0073 |
| | Email: acouret@smclawpr.com |
| **O'NEILL & BORGES LLC** | **REED SMITH LLP** |
| /s/ *Hermann D. Bauer* | /s/ *Jared S. Roach* |
| Hermann D. Bauer | Luke A. Sizemore (Pro Hac Vice) |
| USDC No. 215205 | Jared S. Roach (Pro Hac Vice) |
| Carla García-Benítez | 225 Fifth Avenue, Suite 1200 |
| USDC No. 203708 | Pittsburgh, PA 15222 |
| Gabriel A. Miranda | Telephone: (412) 288-3131 |
| USDC No. 306704 | Facsimile: (412) 288-3063 |
| 250 Muñoz Rivera Ave., Suite 800 | Email: lsizemore@reedsmith.com |
| San Juan, PR 00918-1813 | Email: jroach@reedsmith.com |
| Tel: (787) 764-8181 | |
| Fax: (787) 753-8944 | *Counsel to The Bank of New York Mellon, in its capacity as Fiscal Agent* |
| *Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth* | |

SO ORDERED on March \_\_\_\_\_, 2022

_____
HON. LAURA TAYLOR SWAIN
UNITED STATES DISTRICT COURT JUDGE