**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK-3283-LTS<br><br>(Jointly Administered)<br><br>**RE: ECF No. 20297** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>   Debtor. | PROMESA<br>Title III<br><br>No. 17 BK-3567-LTS<br><br>**RE: ECF No. 1138** |

**THE BANK OF NEW YORK MELLON'S REPLY TO THE OBJECTION OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTY CORPORATION WITH RESPECT TO (I) URGENT MOTION FOR AN ORDER DIRECTING THE FISCAL AGENT TO DISBURSE THE DISPUTED FUNDS IN THE HTA BOND SERVICE ACCOUNTS, REDEMPTION ACCOUNTS, AND RESERVE ACCOUNTS AND (II) AMENDED AND RESTATED STIPULATION AND ORDER REGARDING THE DISPUTED FUNDS IN THE HTA BOND SERVICE ACCOUNTS, REDEMPTION ACCOUNTS AND RESERVE ACCOUNTS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

To the Honorable United States District Court Judge Laura Taylor Swain:

On March 10, 2022, the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth and HTA pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA") submitted the *Urgent Motion for an Order Directing the Fiscal Agent to Disburse the Disputed Funds In The HTA Bond Service Accounts, Redemption Accounts, And Reserve Accounts* [Case No. 17-03283, ECF No. 20297] (the "Urgent Motion") for entry of an order authorizing and directing The Bank of New York Mellon, solely in its capacity as fiscal agent (the "Fiscal Agent" or "BNYM") for several series of bonds issued by HTA (the "HTA Bonds"), to distribute funds held by the Fiscal Agent pursuant to the terms of the Disputed Funds Stipulation. On March 11, 2022, the Oversight Board filed notice of the *Amended and Restated Stipulation and Agreed Order Regarding the Disputed Funds in the HTA Bond Service Accounts Redemption Accounts and Reserve Accounts* (the "Stipulation") [Case No. 17-03283, ECF No. 20316] .[2] In response to the Urgent Motion, Assured Guaranty Corp., Assured Guaranty Municipal Corp. (together, "Assured"), Financial Guaranty Insurance Company, and National Public Finance Guaranty Corporation (collectively, the "Objecting Parties") objected (the "Objection") [Case No. 17-03283, ECF No. 200318] to the Urgent Motion and the Stipulation and requested that the Court add language to the Stipulation to prevent the Fiscal Agent from asserting its contractual priority of payment for fees and expenses and, in the alternative, to deny the Urgent Motion. The Fiscal Agent hereby replies (the "Reply") to the Objection.

---

[2] Capitalized terms used but not defined in this Reply have the meanings given in the Amended and Restated Stipulation or the Plan, as applicable.

**PRELIMINARY STATEMENT**

1. The Oversight Board desires to use the Disputed Funds to make distributions to holders of the HTA Bonds under paragraph 52 of the Confirmation Order upon satisfaction of the HTA Distribution Conditions, which may occur as soon as March 15, 2022. See Urgent Motion ¶ 26. The Objecting Parties do not object to the Disputed Funds being used to pay a portion of these Effective Date Payments. See Objection ¶ 6. It appears that the sole reason there is any dispute concerning the proposed arrangement is that neither HTA nor the Objecting Parties are willing to bear the relatively small burden (when compared to an aggregate principal amount of approximately $4 billion of HTA Bonds) of $2.6 million of fees and expenses incurred or that are reasonably anticipated to be incurred by the Fiscal Agent over a period of more than 6 years before and throughout the Title III Cases. This is true even though HTA has a contractual obligation to pay such fees and expenses and, in the event of a default by HTA, the Fiscal Agent has a contractual right to payment of its fees and expenses from any monies coming into its hands *prior* to any payment on the HTA Bonds. While a debtor may adjust its debts in bankruptcy, intercreditor subordination agreements—such as the contractual priority of payment contained in the applicable resolutions—cannot be disturbed.

2. The Fiscal Agent entered into the Stipulation at the Oversight Board's request to facilitate the prompt distribution of funds from HTA to holders of the HTA Bonds, subject to several principles that were important from the Fiscal Agent's perspective. *First*, the Fiscal Agent insisted that the Stipulation become effective only upon entry of a Court order approving the Stipulation after notice and an opportunity to be heard by, at a minimum, the parties to the Disputed Funds Stipulation, which would give those parties an opportunity to raise and be heard in relation to any ongoing disputes. See Stipulation ¶ 1. *Second*, the Fiscal Agent's agreement is expressly

contingent upon such order being a full and final resolution of all disputes relevant to the Disputed Funds that were raised as part of the Disputed Funds Stipulation. See id. ¶ 5. *Third*, the Fiscal Agent's agreement is contingent upon confirmation that nothing in the Stipulation or the order approving it affects the Fiscal Agent's right to be paid for its fees and expenses, whether through its contractual priority of payment against monies in its hands, including the Disputed Funds, or otherwise. See id. ¶ 4. Without these fundamental pillars of the Stipulation, there is no agreement.

3. The Objection and the revisions to the Stipulation that are proposed by the Objection seek to modify the Stipulation in a way that is unacceptable to the Fiscal Agent. Approving the Stipulation with the proposed revisions would have the practical effect of eliminating the Fiscal Agent's contractual right to payment from any monies coming into its hands, including the Disputed Funds, prior to payment of the HTA Bonds. Indeed, unless HTA agrees to pay the Fiscal Agent's fees and expenses in the context of the forthcoming HTA title III plan of adjustment (the "HTA Plan"), exercising the Fiscal Agent's priority of payment against the Disputed Funds may be the Fiscal Agent's only avenue to be compensated for its services and reimbursed for its expenses as there are no other cash distributions to holders of the HTA Bonds contemplated under the HTA/CCDA PSA. The Fiscal Agent's contractual payment priority vis-à-vis other non-debtors should not be sacrificed for the sake of expediency.

4. The Fiscal Agent requests that the Court consider the Urgent Motion and responsive briefing and determine whether it is appropriate to issue an order fully and finally resolving all disputes relevant to the Disputed Funds that were raised as part of the Disputed Funds Stipulation by authorizing such amounts to be applied by HTA in satisfaction of the Effective Date Payments and preserving the Fiscal Agent's contractual priority of payment against funds coming into its

hands, including the Disputed Funds. If the Court finds that a full and final resolution is appropriate upon the current record, it should overrule the Objection on the merits and approve the Stipulation as filed. If the Court does not find that a full and final resolution is appropriate upon the current record, the Court should deny the Urgent Motion without prejudice and the Fiscal Agent will continue to hold the Disputed Funds consistent with the Disputed Funds Stipulation until an appropriate order is entered by the Court governing their distribution.

**REPLY**

**A. The Effectiveness Of The Stipulation Is Conditioned Upon Entry Of An Order Fully And Finally Resolving All Disputes Raised In The Disputed Funds Stipulation.**

5.  HTA has an obligation under the HTA/CCDA PSA and the Confirmation Order to make an interim distribution of cash to HTA 68 Bond Claims and HTA 98 Senior Bond Claims in the amounts of One Hundred Eighty-Four Million Eight Hundred Thousand Dollars ($184,800,000.00) and Seventy-Nine Million Two Hundred Thousand Dollars ($79,200,000.00), respectively. These Effective Date Payments are the only distributions of cash to holders of the HTA Bonds contemplated by the Plan, the Confirmation Order, and the agreed economic terms of the HTA Plan as set forth in the HTA/CCDA PSA. See Confirmation Order ¶ 52; HTA/CCDA PSA § 4.1.

6.  The Oversight Board recently indicated to the Fiscal Agent that it desired to direct the Fiscal Agent to disburse the Disputed Funds in order to complete the Effective Date Payments.

7.  The Oversight Board also expressed that time was of the essence in gaining access to the Disputed Funds because the Effective Date Payments were scheduled to be made upon satisfaction of the HTA Distribution Conditions, which the Fiscal Agent understands is anticipated to occur on or shortly after March 15, 2022—the same date as the anticipated effective date of the

Plan. One of the HTA Distribution Conditions is that the Oversight Board, Assured, and National reach an agreement in principle on the form of the HTA Plan. See Plan § 1.302.

8. In 2017, the Disputed Funds were subject to dispute among AAFAF and certain plaintiffs in the Adversary Proceedings regarding ownership of the Disputed Funds. The Fiscal Agent declined to take a position on the matter, and, in light of the dispute regarding the Disputed Funds, indicated that it would not distribute the Disputed Funds until appropriate relief was obtained from the Court. See Disputed Funds Stipulation at pp. 3-4.

9. On July 31, 2017, the parties to the Adversary Proceedings entered into that certain *Stipulation and Proposed Order Governing the Disputed Funds in the HTA Bonds Accounts, Redemption Accounts and Reserve Accounts* (the "Disputed Funds Stipulation"), which provides that, among other things, the Fiscal Agent shall maintain the entirety of the Disputed Funds in the existing accounts into which they have been deposited pending further order of the Court resolving the disputes raised in the Disputed Funds Stipulation. See Disputed Funds Stipulation ¶ 1.

10. When the Oversight Board indicated to the Fiscal Agent that it wanted to utilize the Disputed Funds for purposes of making the Effective Date Payments, the Fiscal Agent responded that it was unwilling to distribute the Disputed Funds in the absence of a Court order fully and finally resolving all disputes relevant to the Disputed Funds that were raised as part of the Disputed Funds Stipulation after notice and an opportunity to be heard by, at a minimum, all parties to the Disputed Funds Stipulation.

11. Indeed, the Fiscal Agent's agreement to the terms of the Stipulation is expressly conditioned upon the entry of an order approving the Stipulation, see Stipulation ¶ 1, and such order being a full and final resolution of all disputes relevant to the Disputed Funds that were raised as part of the Disputed Funds Stipulation. See Stipulation ¶ 5.

12. The Fiscal Agent has not made any agreement to disburse the Disputed Funds in the absence of such an order and, as in 2017, declines to take a position on the matter of ownership of the Disputed Funds, beyond reserving its rights under the applicable resolutions to payment of its fees and expenses prior to the HTA Bonds. Resolution No. 98-06, adopted February 26, 1998 (the "98 Resolution"), at § 711; accord Resolution No. 68-18, adopted June 13, 1968 (the "68 Resolution" and, together with the 98 Resolution, the "HTA Resolutions"), at § 710. Relevant excerpts of the 98 Resolution and the 68 Resolution are attached as **Exhibit A** and **Exhibit B**, respectively.

13. From the Fiscal Agent's perspective, the Stipulation and the Oversight Board's Urgent Motion seeking an order directing the Fiscal Agent to disburse the Disputed Funds was intended to be an efficient procedural vehicle to determine whether and what disputes remain with respect to use of the Disputed Funds and for the Court to determine whether those disputes may be fully and finally resolved in accordance with the Disputed Funds Stipulation prior to the anticipated date that HTA desires to use the Disputed Funds to make the Effective Date Payments, thereby preventing any potentially material delay of the Effective Date Payments to holders of the HTA Bonds. If there cannot be a full and final resolution of all disputes relevant to the Disputed Funds that were raised as part of the Disputed Fund Stipulation through this procedural mechanism, the Court should deny the Urgent Motion without prejudice and the Fiscal Agent will continue to hold the Disputed Funds consistent with the Disputed Funds Stipulation until an appropriate order is entered by the Court governing their distribution.

**B. The Fiscal Agent Is Entitled To Payment Of Its Fees and Expenses From HTA And, Upon HTA's Default, From Any Monies Coming Into Its Hands Prior To Payment Of The HTA Bonds.**

14. The Objecting Parties do not object to the principle purpose of the Stipulation, that is, to make the Disputed Funds available to HTA to make the Effective Date Payments. See

Objection ¶ 3. Rather, they object to any reduction of the ultimate distributions received by holders of the HTA Bonds on account of the fees and expenses incurred by the Fiscal before and throughout the Title III Cases. See id. In effect, and as explained more fully below, the Objection seeks to nullify the intercreditor subordination agreement between the Fiscal Agent and the holders of the HTA Bonds regarding payment of the Fiscal Agent's fees and expenses from monies in the Fiscal Agent's possession (which include the Disputed Funds) *prior* to payment of the HTA Bonds. Such result would be improper. Although bankruptcy may be used to adjust a debtor's obligations, it cannot be used to adjust the intercreditor rights as between two non-debtors.

15. The Fiscal Agent has incurred fees and expenses in connection with the Title III Cases and related adversary proceedings. Among other things, the Fiscal Agent filed master debt proofs of claim on behalf of itself and bondholders in response to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [Case No. 17-03283, ECF No. 2521], and was named as a defendant in the following adversary proceedings: (a) *The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Ambac Assurance Corporation, et al.*, Adv. Proc. No. 19-00363, (b) *The Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corporation, et al.*, Adv. Pro. No. 20-00005-LTS, (c) *The Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corporation, et al.*, Adv. Pro. No. 20-00007-LTS, and (d) *AmeriNational Community Services, LLC, et al. v Ambac Assurance Corporation, et al.*, Adv. Pro. No. 21-00068-LTS. The Fiscal Agent also monitored the title III proceedings, participated in mediation, responded to bondholder

and issuer inquiries, processed insurance claims and distributions on account of insured HTA Bonds, and performed other administrative tasks.

16. The Fiscal Agent has a contractual claim against HTA under the HTA Resolutions for prepetition and postpetition compensation and reimbursement of expenses that HTA, as issuer of the HTA Bonds, agreed to pay the Fiscal Agent under the HTA Resolutions. See 98 Resolution at § 711; 68 Resolution at § 710; see also In re Worldwide Direct, Inc., 334 B.R. 112, 129 (Bankr. D. Del. 2005) ("If the indenture trustee fulfills its duties, it is entitled to reimbursement of its expenses, including attorneys' fees, in accordance with the terms of the indenture."); In re Flight Transp. Corp., 874 F.2d 576, 583 (8th Cir. 1989) (holding that the indenture trustee has a separate contractual claim for its fees and expenses).

17. As is customary, the Fiscal Agent's claim is entitled to payment priority under the HTA Resolutions. In the event of a default by HTA (*i.e.*, HTA's failure to pay the Fiscal Agent's fees and expenses), the Fiscal Agent has the right to "deduct" its "reasonable compensation for all services rendered by it" under the resolutions and also "all of its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in or about the administration and execution of the trusts" created by the resolutions, "and the performance of its powers and duties" under the resolutions, and "any liabilities which [the Fiscal Agent] may incur in the exercise and performance of its powers and duties" under the resolutions (collectively, the "Fiscal Agent's Fees and Expenses"), "from any moneys coming into its hands and shall be entitled to a preference in payment over any of the [HTA Bonds] outstanding" under such resolutions. 98 Resolution at § 711; accord 68 Resolution at § 710.

18. HTA has been in default in the payment of the Fiscal Agent's Fees and Expenses since prior to commencement of the HTA Title III Case, and the Objecting Parties do not argue to the contrary.

19. The Fiscal Agent's priority of payment entitles it to payment from all monies coming into its hands prior to payment of the HTA Bonds. Because the Disputed Funds are monies that have come into the Fiscal Agent's hands and HTA has defaulted in payment of the Fiscal Agent's Fees and Expenses, the Fiscal Agent has a present contractual right vis-à-vis non-debtor holders of the HTA Bonds to a preference in payment from the Disputed Funds prior to any payment of any HTA Bonds outstanding. 98 Resolution at § 711 ("In default of . . . payment by [HTA], the Fiscal Agent . . . may deduct the [Fiscal Agent's Fees and Expenses] from any moneys coming into its hands and shall be entitled to a preference in payment over any of the bonds and coupons outstanding hereunder."); accord 68 Resolution at § 710. Stated differently, the holders of the HTA Bonds contractually subordinated their claims to payment of the Fiscal Agent's Fees and Expenses. Such an intercreditor agreement as between two non-debtors cannot be modified or abrogated in bankruptcy. See 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."), which was made applicable to this proceeding pursuant to section 301 of PROMESA.

20. "The intent of [the Bankruptcy Code] is to allow the consensual and contractual priority of payment to be maintained between creditors among themselves in bankruptcy proceedings." In re Hart Ski Mfg. Co., 5 B.R. 734, 736 (Bankr. D. Minn. 1980). The First Circuit has enforced subordination provisions in an indenture as "subordination clauses, pure and simple" for purposes of section 510(a) of the Bankruptcy Code. See HSBC Bank USA v. Branch (In re

- 10 -

Bank of New England Corp.), 364 F.3d 355, 366 (1st Cir. 2004). In that context, the Court of Appeals noted that "section 510(a) means that the enforcement of subordination provisions is no longer a matter committed to the bankruptcy courts' notions of what may (or may not) be equitable." Id. at 362-63. The Fiscal Agent is entitled to enforce its priority of payment such that holders of the HTA Bonds do not receive any distribution until the Fiscal Agent's Fees and Expenses have been paid in full (or fully provided for) under the HTA Resolutions. See id. at 361 ("subordination alters the normal priority of the junior creditor's claim so that it becomes eligible to receive a distribution only after the claims of the senior creditor have been satisfied"). The Court cannot interpret the HTA Resolutions in such a way that re-drafts or re-negotiates the non-debtor parties' bargained-for rights.[3]

21.   Nothing in the Plan or the Confirmation Order deprives the Fiscal Agent of its contractual priority of payment against monies coming into its hands vis-à-vis non-debtor holders of the HTA Bonds, nor could it for the reasons set forth above. The Objecting Parties rely principally upon paragraph 52 of the Confirmation Order as alleged authority that the Fiscal Agent is prohibited from exercising its priority of payment against distributions flowing through the Fiscal Agent's hands, but paragraph 52 of the Confirmation Order says nothing of the sort. Paragraph 52 of the Confirmation Order addresses only HTA's payment obligations to holders and does not adjust any intercreditor agreements related to those payments. The Fiscal Agent is not seeking to "modify the Plan and Confirmation Order," as the Objecting Parties suggest, but rather

---

[3] This Court has had prior occasion to analyze priority of payment provisions in the context of a bond resolution. In the *Memorandum Opinion and Order Related to Section 19.5 of the Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [No. 17-3283-LTS, ECF No. 5074], the Court confirmed the trustee's right to payment of its fees and expenses prior to payment of bondholders and other beneficiaries under the applicable resolution and authorized the trustee to create a holdback from distributions. See id. pp 12, 19.

Case:17-03283-LTS Doc#:20321 Filed:03/12/22 Entered:03/12/22 16:56:22 Desc: Main
Document Page 12 of 13

to preserve its right under the HTA Resolutions to payment of its fees from monies in its hands prior to payment of the HTA Bonds.

22. The Objecting Parties ask the Court to revise the Stipulation without the Fiscal Agent's consent to prevent the Fiscal Agent from exercising its priority of payment as against the Disputed Funds to the extent they are applied by HTA as Effective Date Payments. Such revision would have the effect of nullifying the Fiscal Agent's priority of payment and the holders' contractual subordination of their claims to payment of the Fiscal Agent's Fees and Expenses and, at a practical level, would deprive the Fiscal Agent of compensation and reimbursement to which it is entitled for more than 6 years of work in connection with these Title III Cases. The Objecting Parties' proposed revision would fundamentally change the nature of the Stipulation, and the Fiscal Agent does not agree to the Stipulation as it is proposed to be revised by the Objecting Parties.

23. The Stipulation was drafted so that the Fiscal Agent's contractual priority of payment vis-à-vis non-debtor holders of the HTA Bonds is preserved. The Disputed Funds remain in the Fiscal Agent's hands prior to distribution to holders of the HTA Bonds as Effective Date Payments, and nothing in the Stipulation affects the Fiscal Agent's rights to payment under the HTA Resolutions, which includes its contractual payment priority. Accordingly, if the Court is not inclined to enter the Stipulation as filed, the Urgent Motion should be denied without prejudice.

**C.     The Objecting Parties' Reservation Of Rights Is Improper.**

24. The Objecting Parties' reservation of rights with respect to the Urgent Motion, the Stipulation, and the Disputed Funds is inconsistent with the intent and purpose of the Urgent Motion and the Stipulation. As stated more fully above, the Stipulation is contingent upon the entry of an order approving the Stipulation that fully and finally resolves the disputes relevant to

the Disputed Funds. The Court should not authorize distribution of the Disputed Funds without that finality.

Dated: March 12, 2022                  Respectfully submitted,

**SEPULVADO, MALDONADO & COURET**

/s/ Albéniz Couret-Fuentes
Albéniz Couret-Fuentes
USDC-PR Bar No. 222207
304 Ponce de León Ave. – Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile: (787) 294-0073
Email: acouret@smclawpr.com

**REED SMITH LLP**

/s/ Jared S. Roach
Luke A. Sizemore (Pro Hac Vice)
Jared S. Roach (Pro Hac Vice)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: lsizemore@reedsmith.com
Email: jroach@reedsmith.com

*Counsel to The Bank of New York Mellon, in its capacity as Fiscal Agent*