# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 3567-LTS |
| PEAJE INVESTMENTS, LLC,<br><br>Plaintiff,<br><br>-v-<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, *et al.*,<br><br>Defendants. | Adv. Proc. No. 17-151-LTS in No. 17 BK 3567-LTS<br><br>Adv. Proc. No. 17-152-LTS in No. 17 BK 3283-LTS |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 17 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| ASSURED GUARANTY CORP, *et al.*,<br><br>Plaintiffs,<br><br>-v-<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Defendants. | Adv. Proc. No. 17-155-LTS in<br>No. 17 BK 3283-LTS<br><br>Adv. Proc. No. 17-156-LTS<br>No. 17 BK-3567-LTS |
| AMBAC ASSURANCE CORPORATION,<br><br>Plaintiff,<br><br>-v-<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Defendants. | Adv. Proc. No. 17-159-LTS<br>No. 17 BK 3283-LTS |

**RESPONSE OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTY CORPORATION WITH RESPECT TO SUPPLEMENTAL REPLY OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO IN SUPPORT OF URGENT MOTION FOR AN ORDER DIRECTING THE FISCAL AGENT TO DISBURSE THE DISPUTED FUNDS IN THE HTA BOND SERVICE ACCOUNTS, REDEMPTION ACCOUNTS, <u>AND RESERVE ACCOUNTS (ECF NO. 20331)</u>**

Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guaranty Corporation (collectively, "Objectors") hereby submit this response (the "Response") to the *Supplemental Reply of the Financial Oversight and Management Board for Puerto Rico in Support of Urgent Motion for an Order Directing the Fiscal Agent to Disburse the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts, and Reserve Accounts* (ECF No. 20331)[2] (the "Supplemental Reply" or "Supp.R") and related filings, and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Paragraph 52 of the Confirmation Order is clear that exactly $264 million in cash must be distributed "**to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims**"—not to HTA's Fiscal Agent, or to anyone else. Objectors objected to the proposed Stipulation between the Oversight Board and BNYM as Fiscal Agent because it contained a broad and ambiguous reservation of rights purporting to give the Fiscal Agent the ability "to be reimbursed for any and all of the Fiscal Agent's [HTA-related] fees and expenses **from the distributions to be made pursuant to the Plan**," potentially impairing Objectors' rights to receive the full amounts to which they are entitled under paragraph 52. Objectors proposed that a *single sentence* be added to the Stipulation to ensure that it complied with paragraph 52 by confirming that, "[f]or the avoidance of doubt, amounts applied on account of Fiscal Agent fees and expenses shall not be credited against, or result in any reduction of, the amounts required to

---

[2] Unless otherwise indicated, all ECF numbers in this Response refer to the docket in Case Number 17 BK 3283-LTS. Capitalized terms used in this Response and not defined herein shall have the meanings ascribed to them in the Supplemental Reply, the Urgent Motion (ECF No. 20297), Objectors' objection to the Urgent Motion (ECF No. 20318, "Obj."), the reply of the Official Committee of Unsecured Creditors in connection with the Urgent Motion (ECF No. 20319), the Oversight Board's reply in support of the Urgent Motion (ECF No. 20320, "OB Reply"), and BNYM's reply to the Objection (ECF No. 20321), as applicable.

-1-

be distributed to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims pursuant to decretal paragraph 52 of the Confirmation Order."

2. In subsequent filings, the Oversight Board and BNYM have not agreed to Objectors' proposed clarifying language, nor have they provided any other credible reassurance that the Stipulation complies with paragraph 52 of the Confirmation Order. Instead, the Oversight Board and BNYM have offered what appear to be wildly divergent interpretations of *their own Stipulation*, in the process proving Objectors' original point that the Stipulation is fundamentally ambiguous and should not be approved absent further clarification. And to add to the confusion, the Committee weighed in with yet a third interpretation of the Stipulation that differed from those of both the Oversight Board and BNYM.

3. In light of these conflicting viewpoints and the fundamental ambiguity of the Stipulation, the Court entered an order (ECF No. 20322) accurately highlighting some of the major inconsistencies between the Oversight Board's and BNYM's filings and requesting supplemental briefing to provide additional clarification. Unfortunately, the Oversight Board's Supplemental Reply not only failed to demonstrate that the Stipulation complies with paragraph 52 of the Confirmation Order, but (i) again provided a conflicting interpretation of the Stipulation contrary to BNYM's response and (ii) actually raised the possibility that the Oversight Board and/or BNYM intend to impair Objectors' rights under paragraph 52 by deducting BNYM's fees and expenses from Effective Date Payments made from sources *other* than the Disputed Funds.

4. Given the Oversight Board's failure to demonstrate that the Stipulation complies with the Confirmation Order, the Court should either require the Oversight Board and BNYM to amend the Stipulation to add the clarifying language set forth in the Objectors' Revised Proposed Stipulation, or the Urgent Motion and Stipulation should be denied as inconsistent with

the Plan and Confirmation Order. If denied, the Disputed Funds should remain in their entirety in the existing accounts into which they had originally been deposited with the Fiscal Agent pending further order of the Court resolving the disputes raised in the Disputed Funds Stipulation.

5. Objectors note in this regard that the Urgent Motion is no longer quite as urgent. The Oversight Board and Commonwealth have taken the position that the HTA Distribution Conditions have not been satisfied at this time,[3] meaning that regardless of how the Court decides the Urgent Motion, the so-called "Effective Date Payments" will not be made on the projected Commonwealth Effective Date of March 15. As such, the relevant parties will have additional time to discuss the appropriate use of the Disputed Funds, and there is no urgent need for the Court to resolve that issue today.

**ARGUMENT**

I. **The Supplemental Reply fails to demonstrate that the Stipulation complies with paragraph 52.**

6. The Oversight Board's failure to demonstrate that the Stipulation complies with the Confirmation Order emerges from its carefully-worded response to the Court's Issue One, which asked:

> If the Motion is granted,
>
> 1) Would BNYM withhold the amount of its claim for fees and expenses from the Disputed Funds that would be transferred to holders of bond claims pursuant to paragraph 52 of the Confirmation Order; or
>
> 2) Would BNYM transfer the full amount of the Disputed Funds to the holders of bond claims?

---

[3] See "Voluntary Event Notice" dated March 14, 2022, attached hereto as "Exhibit A" ("The HTA Distribution Conditions will not be satisfied by March 15, 2022, when the Plan of Adjustment is expected to go effective."); see also OB Reply ¶ 6 n.6 ("[A]t this time, the HTA Distribution Conditions have not been satisfied").

-3-

7. Superficially, the Oversight Board's response to this question was reassuring, stating that "the entire amount of the Disputed Funds are to be made available and shall be paid to holders of HTA Bonds". Supp.R. ¶ 7. Examined more closely, however, the Oversight Board's response raises additional questions about the Stipulation's possible non-compliance with paragraph 52 of the Confirmation Order.

8. Specifically, the Oversight Board states, purportedly based on informal conversations with BNYM's counsel rather than the actual text of the Stipulation, that "[i]t is the Oversight Board's understanding that, pursuant to such revisions, and **upon payment of the balance of the Effective Date Payments,** the Fiscal Agent has agreed not to apply its fees and expenses **against the Disputed Funds**, but reserves rights with respect to **additional payments from other funds**. Accordingly, the entire amount of the Disputed Funds are to be made available and shall be paid to holders of HTA Bonds." Supp.R. ¶ 7 (emphasis added).

9. This response fails to demonstrate through plain words, like the simple sentence proposed by the Objectors,[4] that the Oversight Board will comply with paragraph 52. The Oversight Board effectively insinuates that, although the Fiscal Agent has informally "agreed not to apply its fees and expenses against the Disputed Funds," it has *not* agreed that it won't apply its fees and expenses against the "balance" of the Effective Date Payments. The Oversight Board's response fails to provide reassurance that HTA 68 Bond Claimholders and HTA 98 Senior Bond Claimholders will receive the full amounts to which they are entitled under paragraph 52. On the contrary, the Oversight Board confirms only that "the Fiscal Agent shall transfer the full amount of the *Disputed Funds* to holders of HTA Bond Claims," not that the holders of such HTA Bond

---

[4] The Oversight Board has not offered a principled reason for its failure to incorporate the Objectors' proposed sentence included in the Revised Proposed Stipulation attached as Exhibit A to the Objection. If the Oversight Board does not intend to alter or impair paragraph 52 through the Stipulation, it should adopt Objectors' proposal and end this dispute. Its failure to do so speaks loudly.

-4-

Claims will receive the full amount of the *Effective Date Payments* as required by paragraph 52. Supp.R. ¶ 8 (emphasis added).

10. Notably, the Disputed Funds, which total only $90,710,855.43, are at most sufficient to cover only around 34% of the Effective Date Payments, which total $264 million. Therefore, at least $173,289,144.57 of the Effective Date Payments will need to be paid from a source other than the Disputed Funds, such as the Commonwealth Loan. The Oversight Board's reference to a purported agreement by BNYM[5] to release "the entire amount" of the Disputed Funds for payment of the Effective Date Payments only "upon payment of the balance of the Effective Date Payments" may suggest that some informal understanding exists—at least in the Oversight Board's mind—whereby the Oversight Board will attempt to channel the portion of the Effective Date Payments not paid from the Disputed Funds through BNYM's Fiscal Agent accounts, such that BNYM can extract its fees and expenses from that non-Disputed-Funds amount. Such an understanding would be in derogation of paragraph 52's requirement that the full amount of the Effective Date Payments be distributed "**to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims**" and not intercepted along the way. If such an intention exists, then it is inconsistent with paragraph 52, and any Stipulation that permits or serves to document such an arrangement should be rejected.

11. Objectors also note that, as a practical matter, there is no requirement in the Plan, Confirmation Order, or elsewhere that any portion of the Effective Date Payments flow through the Fiscal Agent's accounts, and Objectors do not consent to such distributions flowing through the Fiscal Agent's accounts if the result would be any reduction in the amounts to which Objectors are entitled under paragraph 52.

---

[5] Based upon conversations among Objectors' counsel and counsel to BNYM, it is Objectors' understanding that BNYM has not agreed to release the Disputed Funds without applying its fees and expenses.

12. In any event, because paragraph 52 requires that the Effective Date Payments be made "**to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims**", the full amounts specified in that paragraph must actually make their way "to" those holders. Therefore, even if funds were to flow through the Fiscal Agent's accounts, and even if fees and expenses were to be reimbursed to the Fiscal Agent along the way, that would merely mean that the total amount deposited with the Fiscal Agent would need to be increased to account for such fees and expenses, such that the exact amounts specified in paragraph 52 would ultimately be distributed "to" the HTA 68 Bond Claimholders and HTA 98 Senior Bond Claimholders.

13. Crucially, neither the Oversight Board nor BNYM identifies any provision of the Plan or the Confirmation Order that would permit any reduction in the amounts of the Effective Date Payments required to be paid to HTA 68 Bond Claimholders and HTA 98 Senior Bond Claimholders under paragraph 52. This is in direct contrast with the claims of Commonwealth, ERS, and PBA bondholders, with respect to which Section 77.13 of the Plan authorizes deductions for "Trustee/Fiscal Agent fees and expenses." See Obj. ¶¶ 7-8. Absent any similar provision permitting deduction of fees and expenses from the HTA-related distributions mandated in paragraph 52, a Stipulation that could allow for such deductions should not be approved.

## II. The Stipulation cannot bind Objectors without their consent.

14. The Oversight Board effectively eludes Issue Three, which asks:

> **Third**, the A&R Stipulation provides that it "shall be considered a full and final resolution of all disputes relevant to the Disputed Funds that were raised as part of the Disputed Funds Stipulation." (A&R Stipulation ¶ 5.)
>
> 1) What is the legal and factual basis for requesting the Court's endorsement of this provision?

    2) Does the Oversight Board intend that the A&R Stipulation resolve any issues involving the creditor parties to the Disputed Funds Stipulation that are not parties to the A&R Stipulation?

    3) If so, on what basis?

    15.    The short answer is that, without Objectors' consent, there is no basis to consider the Stipulation "a full and final resolution of all disputes relevant to the Disputed Funds that were raised as part of the Disputed Funds Stipulation," because the Stipulation is just a contract between the Oversight Board and BNYM, to which Objectors are not parties. See, e.g., E.E.O.C. v. Waffle House, Inc., 534 U.S. 279 (2002) ("It goes without saying that a contract cannot bind a nonparty."); Artist Medical Sciences University v. Triple-S Propiedad, Inc., 2021 WL 1937360 (D.P.R. May 13, 2021) (under Puerto Rico law, "contracts are generally only valid between the parties who execute them. . ."); QBE Insurance Corporation v. Anufrom, 2018 WL 3720056 (D. Mass. Aug. 3, 2018) ("It is axiomatic that, with rare exception, 'a contract cannot bind a nonparty.'") (internal citations omitted). The Oversight Board and BNYM should not be permitted to negotiate a stipulation behind the backs of the other parties to the Disputed Funds Stipulation and then present it to the Court on short notice as a "final resolution" of all disputes amongst the relevant parties.

    16.    The Oversight Board's response to Issue Three is basically to just *assume* that the Stipulation will be approved and the Disputed Funds distributed, and then to argue that this *de facto* resolves any remaining disputes as to the use of the Disputed Funds. The issue before the Court, however, is whether the Stipulation *should* be approved given that not all of the parties to the original Disputed Claims Stipulation have consented to it. The answer is clearly no, and the Court should not permit either the Oversight Board or BNYM to take any actions with respect to the Disputed Funds based on an agreement between only two of the relevant parties.

17. The Oversight Board also misleadingly states that it "is only seeking relief with respect to distribution of the Disputed Funds, to which the Monolines do not object." Supp.R ¶ 11. But the Objectors, who are Monolines, clearly *do* object to any distribution of the Disputed Funds absent further clarification that their rights under paragraph 52 will not be impaired.

18. Accordingly, Objectors expressly emphasize that they do *not* agree to be bound by the Stipulation. Rather, Objectors expressly reserve all of their rights with respect to the Urgent Motion, the Stipulation, the Supplemental Reply, and the Disputed Funds, including as against the Oversight Board, HTA, and BNYM.

## **CONCLUSION**

19. For the reasons set forth herein and in the Objection, the Stipulation should be revised in accordance with the Revised Proposed Stipulation attached as Exhibit A to the Objection, or, alternatively, the Urgent Motion should be denied.

Dated: March 15, 2022
       New York, New York

| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
|---|---|
| /s/ *Heriberto Burgos Pérez* | /s/ *Howard R. Hawkins, Jr.* |
| Heriberto Burgos Pérez | Howard R. Hawkins, Jr.* |
| USDC-PR No. 204,809 | Mark C. Ellenberg* |
| Ricardo F. Casellas-Sánchez | Casey J. Servais* |
| USDC-PR No. 203,114 | William J. Natbony* |
| Diana Pérez-Seda | Thomas J. Curtin* |
| USDC–PR No. 232,014 | 200 Liberty Street |
| E-mail: hburgos@cabprlaw.com | New York, New York 10281 |
|       rcasellas@cabprlaw.com | Tel.: (212) 504-6000 |
|       dperez@cabprlaw.com | Fax: (212) 406-6666 |
| | Email: howard.hawkins@cwt.com |
| P.O. Box 364924 |       mark.ellenberg@cwt.com |
| San Juan, PR 00936-4924 |       casey.servais@cwt.com |
| Tel.: (787) 756-1400 |       bill.natbony@cwt.com |
| Fax: (787) 756-1401 |       thomas.curtin@cwt.com |
| *Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | * admitted pro hac vice<br>*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

      */s/ María E. Picó*
María E. Picó
Rexach & Picó, CSP
802 Ave. Fernández Juncos
San Juan PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
mpico@rexachpico.com

  */s/ Martin A. Sosland*
Martin A. Sosland*
Candice M. Carson*
Butler & Snow LLP
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
martin.sosland@butlersnow.com
candice.carson@butlersnow.com

James E. Bailey III*
Adam M. Langley*
Butler & Snow LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

*Admitted Pro Hac Vice

*Counsel for Financial Guaranty Insurance Company*

| | |
|---|---|
| ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC | WEIL, GOTSHAL & MANGES LLP |
| By: */s/ Eric Perez-Ochoa* <br> Eric Perez-Ochoa <br> (USDC-PR No. 206314) <br> Luis A. Oliver-Fraticelli <br> (USDC-PR No. 209204) <br> 208 Ponce de León Ave., Suite 1600 <br> San Juan, PR 00936 <br> Telephone: (787) 756-9000 <br> Facsimile: (787) 756-9010 <br> Email: epo@amgprlaw.com <br> loliver@amgprlaw.com | By: */s/ Kelly DiBlasi* <br> Jonathan Polkes* <br> Gregory Silbert* <br> Robert Berezin* <br> Kelly DiBlasi* <br> Gabriel A. Morgan* <br> 767 Fifth Avenue <br> New York, NY 10153 <br> Telephone: (212) 310-8000 <br> Facsimile: (212) 310-8007 <br> Email: jonathan.polkes@weil.com <br> gregory.silbert@weil.com <br> robert.berezin@weil.com <br> kelly.diblasi@weil.com <br> gabriel.morgan@weil.com |
| | *Admitted *pro hac vice* |
| *Attorneys for National Public Finance Guarantee Corporation* | *Attorneys for National Public Finance Guarantee Corporation* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, 15th day of March, 2022.

                                      By: /s/ *Howard R. Hawkins, Jr.*
                                              Howard R. Hawkins, Jr.*
                                            * admitted pro hac vice