IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| IN RE: | CASE NO. 17 BK 03283-LTS |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | PROMESA TITLE III |
| As representative of THE COMMONWEALTH OF PUERTO RICO, et al., | Creditor CLAIMS 179673 |
| Debtors | |

MOTION URGENT OF OBJECTION TO "FOUR HUNDRED SEVENTEENTH ONMIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO EMPLOYEE CLAIMS ASSERTING LIABILITIES OWED BY ENTITIES THAT ARE NOT TITLE III DEBTORS"

To the Honorable United States District Judge Laura Taylor Swain:

Comes now, Jose Onofre Ortiz Quiñones (creditor) its undersigned counsel and very respectfully alleges and prays:

The Commonwealth of Puerto Rico say that treatment of this claim is disallowed because proof of claim and supporting documentation only show liability between claimant and the Puerto Rico Sugar Corporation which is not part of the Title III proceedings. Motion dated February 4, 2022. The Commonwealth of Puerto Rico have no reason.

The Law no. 90 of 1986, known as *Aumento de Sueldo para los Empleados Públicos,* dated July 9, 1986, says from the 1st. of October 1986, all public employees career, regular or probationary and transitory employees **without distinction of status or categories, who are part of the Personnel System created by virtue of the Public Service Personnel Law** and who did not receive any increase due to the application of the federal minimum wage as of April 15, 1986, will receive an increase of fifty-five dollars (55) effective on the 1st. October 1986; except the

employees of the municipalities, the teachers and police officers. The law purpose was give rise wage to all Commonwealth of Puerto Rico Public Employees. The employees of the municipalities, the teachers and police officers had another increase received by another special law. The purpose of the law 90 of 1986 is to grant a general salary increase for employees of the Commonwealth of Puerto Rico. The granting of the law increase is intended to offer, to the extent that economic resources allow, salary relief that, together with the remuneration impact caused by the implementation of the federal minimum wage in Puerto Rico, effective April 15, 1986, seeks to improve salary status of public employees.

The article 1 (1) (2) law number 90-1986 says specifically that:

*Artículo 1.-Aumentos de Sueldo General Para Empleados Públicos*

*A partir del 1ro. de octubre de 1986 todos los empleados públicos de la Rama Judicial y Rama Ejecutiva,* **sin distinción de status ni categorías**, **que formen parte del Sistema de Personal creado en virtud de la Ley de Personal del Servicio Público,** *excepto los empleados de los municipios, los maestros y policías, recibirán aumentos conforme a lo siguiente:*

*Los empleados de carrera, regular o probatorio y transitorios que no recibieron aumento alguno con motivo de la aplicación del salario mínimo federal al 15 de abril de 1986, recibirán un aumento de cincuenta y cinco dólares (55) efectivo al 1ro. de octubre de 1986.* Emphasis added.

The Explanatory notes of Law No. 5 of 1975, know as *Ley de Personal del Servicio Público,* said that an overall examination of the history of the Personnel Law of 1947, during the 27 years of its validity, the time has come to review the system, in the light of the experience accumulated during those 27 years, to reaffirm its basic principles and modernize the system, adjusting it to the most dynamic and effective concepts of personnel administration. In addition said, the most important aspect of the effort represented by this new Law No. 5 supra. consists of

the precision of a public policy that reaffirms the principle of merit and extends said principle to all sectors of public employment to which it has not been extended at present. This public policy decision is the firm foundation on which the established Personnel System is sustained. The Explanatory notes of Law number 5 of 1975, provides in pertinent that:

> *Un examen en conjunto de la historia del funcionamiento del sistema creado por la Ley de Personal de 1947 durante los 27 años de su vigencia; demostrará un balance a favor de sus logros. A pesar de ello, ha llegado el momento de revisar el sistema, a la luz de la experiencia acumulada durante esos 27 años, para reafirmar sus principios básicos y modernizar el sistema, ajustándolo a los conceptos más dinámicos y efectivos de administración de personal.*
>
> *El aspecto más importante del esfuerzo que representa esta nueva ley, consiste en la precisión de una política pública que reafirma el principio de mérito y extiende dicho principio **a todos los sectores del empleo público a los cuales no se ha extendido en la actualidad.** Esta decisión de política pública es la base firme en que se sostiene el Sistema de Personal establecido, y en la misma se destacan cuatro elementos fundamentales.* Emphasis added.
>
> The **meaning agency include public corporation** upon **Public Service Personnel Law**

Law 5 of 1975 supra., specifically say in the article 8 about meaning agency that:

> *Para todos los efectos, las palabras y frases que a continuación se indican tendrán el significado que a su lado se expresa:*
>
> *[…]*
>
> *(6) "Agencia" Significará el conjunto de funciones, cargos y puestos que constituyen toda la jurisdicción de una autoridad nominadora, independientemente de que se le denomine departamento, municipio, **corporación pública**, oficina, administración, comisión, junta, tribunal, o de cualquier otra forma.*
>
> […]Emphasis added.

When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit. Clear and convincing" means exactly what is suggested by the ordinary meaning of the terms making up the phrase. The burden of evidence is clear and convincing. In order to prove a claim

by clear and convincing evidence, a party's evidence should be unequivocal, intrinsically probable and credible, and free from frailties.

The Honorable federal Supreme Court in Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 131 S. Ct. 2238 (2011) say upon opinion of Honorable Court Soto Mayor that:

> *[…]the assumption that the ordinary meaning of [the] language" chosen by Congress "accurately expresses the legislative purpose." Engine Mfrs. Assn. v. South Coast Air Quality Management Dist., 541 U.S. 246, 252, 124 S. Ct. 1756, 158 L. Ed. 2d 529 (2004) (internal quotation marks omitted). But where Congress uses a common-law term in a statute, we assume the "term . . . comes with a common law meaning, absent anything pointing another way." Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 58, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) (citing Beck v. Prupis, 529 U.S. 494, 500-501, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000)). Here, by stating that a patent is "presumed valid," § 282, Congress used a term with a settled meaning in the common law.*

When interpreting a specific provision of a law, the courts must consider the purposes pursued by the legislator when approving the norm and the determination must attribute to it a meaning that ensures the result that was originally intended to be obtained. In this way, the obligation of the courts is to give effect to the intention of the legislator and thus guarantee that the purpose for which the measure was created is fulfilled. The judiciary must have as a goal that of all the rules of interpretation there is only one that is absolutely invariable and that is that in said process the true intention and desire of the legislative power must be discovered and enforced. In this way, it has been established as an essential principle of the statutory interpretation that the language of the law must be given that meaning that gives validity to the purpose that the legislator had when approving it.

The Honorable Supreme Court also ordered in Báez Rodríguez v. Luis Fortuño 2010 TSPR 87, 179 DPR 231 that:

> *Según dispone el Artículo 14 del Código Civil, 31 L.P.R.A. sec. 14, "cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". En virtud de dicha regla de hermenéutica, al interpretar un estatuto, como cuestión de umbral, debemos remitirnos al texto de la ley. Esto responde a que cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. Véase, Malavé v. Oriental, 167 D.P.R. 593 (2006); Ortiz v. Municipio de San Juan, 2006 TSPR 64, 167 D.P.R. 609, 2006 Juris P.R. 73 (2006). Conforme con lo anterior, cuando una ley es clara y no es ambigua "no hay necesidad de mirar más allá de la letra en búsqueda de la intención legislativa". Rosario v. Distribuidora Kikuet, Inc., 2000 TSPR 107, 151 D.P.R. 634, 643, 2000 Juris P.R. 118 (2000).*
>
> *Ahora bien, si la letra de la ley no es clara y una aplicación literal llevaría a un resultado absurdo o contrario a la verdadera intención o propósito del legislador, "la literalidad puede ser ignorada". Morell et al. v. Ojeda et al., supra; Clínica Juliá v. sec. De Hacienda, 76 P.R.R. 476, 76 D.P.R. 509, 520 (1954). En estas circunstancias podemos recurrir a las fuentes extrínsecas que existen para interpretar la ley, entre las que se encuentran el historial legislativo de la medida.*
>
> *El poder judicial debe tener como norte que de todas las reglas de interpretación hay sólo una que es absolutamente invariable y es que en dicho proceso debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo. De ese modo, se ha establecido como principio esencial de la interpretación estatutaria que al lenguaje de la ley se le tiene que brindar aquel significado que le imprima validez al propósito que tuvo el legislador al aprobarla.*

The law 5-1975 was repealed by Act for the Administration of Human Resources in the Public Service of the Commonwealth of Puerto Rico Law No. 184 of August 3, 2004, as amended and this last law, also was repealed and replaced by Law 8-2017, know as "Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico".

The Law No. 5 of 1975 is the law in force at the time of Law 90 of 1986. By this reason, is the law that should be applicate to this claim. The applicable law of Puerto Rico Public Service Personnel Law is current law for July 9, 1986. The *Ley de Personal*, law 5 supra. is the law active for all public employment at moment to public Law 90-1986, dated July 9, 1986. That was the intention when the law was enacted by the Honorable Governor, Carlos Romero Barcelo.

Acquired-Rights Doctrine Law says that once a right has been vested, then it may not be altered or reduced by a subsequent legislation. The creditor has not received this salary increase. Neither, creditor receive not rise wage to the application of the federal minimum wage of April 15, 1986. Acquired-Rights Doctrine Law says that once a right has been vested, then it may not be altered or reduced by a subsequent legislation; are intangible. Therefore, neither the Legislature in enacting a new law, nor the Governor by order, can injure them or ignore them by executive. Our Supreme Court say in 177 D.P.R. 121, Hernández, Romero v. Pol. de P.R. that:

> *Los derechos adquiridos son intangibles. Por ello, ni la Legislatura al promulgar una nueva ley, ni el Gobernador mediante una orden ejecutiva, los puede lesionar o ignorar. […]Un derecho adquirido se incorpora dentro del patrimonio del titular del derecho y está protegido constitucionalmente frente a cualquier gestión gubernamental que pretenda intervenirlo.*
>
> *El Artículo 3 del Código Civil dispone que, "las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario y, en ningún caso, podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior". En Vázquez v. Morales, expresamos que el Artículo 3 del Código Civil está básicamente inspirado en la doctrina de los derechos adquiridos, sin descartar los hechos consumados.*
>
> *Es imperativo mencionar que los derechos adquiridos, sin importar su procedencia, ya sea mediante legislación, por contrato o por "derecho común" gozan de la misma protección que todo derecho constitucional. Recientemente expresamos que los derechos adquiridos protegidos pueden concebirse como "consecuencia de un hecho idóneo, al producirlos en virtud de una ley vigente en el tiempo en que el hecho ha sido realizado, y que se han incorporado a una persona". Expresamos, además, lo siguiente:*
>
> *En este sentido, el derecho adquirido no puede ser el conjunto de facultades que la ley anterior permitía que los ciudadanos ejerciesen, ya que esto sería el estado de derecho objetivo que la nueva ley intenta cambiar. El derecho adquirido, en cambio, es una situación consumada, en la que las partes afectadas descansaron en el estado de derecho que regía al amparo de la ley anterior. Así, los tratadistas distinguen entre la mera expectativa del derecho y los derechos adquiridos que ya entraron en el patrimonio de los sujetos involucrados.*

Even if the law provides for its retroactive effect or thus arises from legislative intent, it may not affect rights acquired by the parties under the previous legislation. **Szendrey et al. v. Consejo de Titulares** 2011 TSPR 206. The theory of acquired rights prohibits the retroactive application of a law when this affects existing legal relationships before the validity of the new law, which were born based on the previous legislation." However, not every legal situation arising under an earlier law represents an interest that gives way to the recognition of an acquired right. Thus, we have clarified, that acquired rights are "those that are definitely incorporated into a person's estate.

In **Pérez López et al. v. Corporación del Fondo del Seguro del Estado**, 2015 TSPR 165, the Supreme Court indirectly says that granting legal salary increase is an acquired right. In this case, it was not granted because their respective management appointments (of petitioner) were null and void. Then of discussion of Doctrine of Acquired Rights said that:

> *[…]la única controversia que los hechos del presente caso nos brindan espacio para atender se limita a si un empleado unionado tiene derecho a retener aquellos aumentos por méritos que recibió mientras ocupaba un puesto gerencial que fue obtenido ilegalmente y, como consecuencia, fue declarado nulo.*
>
> *[…]*
>
> *A base de lo anterior es difícil concluir – como, en efecto, hizo el Tribunal de Apelaciones - que los empleados demandantes tengan un derecho adquirido sobre unos pasos por mérito que recibieron mientras ocupaban un puesto gerencial que fue declarado nulo. Conforme a la normativa reseñada en la sección anterior, los actos nulos son inexistentes, inoficiosos y no generan consecuencia jurídica alguna. Por lo tanto, una vez los puestos gerenciales fueron decretados nulos, tanto el puesto como los beneficios inherentemente atados al mismo, concluyeron y para todos los efectos prácticos nunca existieron.*
>
> *[…]*
>
> *Resolver lo contrario y, como consecuencia, avalar la posición del Tribunal de Apelaciones, implicaría reconocer derechos producto de actuaciones ilegales y nulas que para todos los efectos jurídicos nunca existieron. Ello, no tan solo sería contrario al principio de mérito imperante en nuestro sistema laboral público, sino que también promovería que las agencias ejecuten transacciones de personal en completa*

*inobservancia a los reglamentos y las leyes vigentes, con el único propósito de beneficiar a algún empleado en particular, el cual al final del día retendría los beneficios obtenidos como consecuencia de un nombramiento ilegal. Ciertamente, no podemos avalar, y mucho menos fomentar, semejante subterfugio jurídico.*

In the same way Pierre A. Lalive[1] in The Doctrine of Acquired Rights says:

*What is meant by acquired rights or by the protection of acquired rights? Let us note that the very term" acquired" or "vested" right implies and suggests the idea of protection. Under scrutiny here is not just any right but an acquired right-a kind of reinforced individual power and, according to some, a right acquired permanently and immutably. The expression at first appears somewhat pleonastic. There is an intention, more or less conscious, to strengthen the idea, as is shown even more clearly in the terms "protection" or "respect of acquired rights." When speaking of a right and a fortiori of an acquired right, is it not necessarily in order to oppose some (external) threat, at least potential, to affirm the value of an individual prerogative or legal power deemed worthy of protection or respect ~ In fact, the expression is an abbreviated way to describe a much more complex legal reality. It is not only a subjective right which must be protected or respected, it is a whole social relationship, organized and regulated by law. In practice, "This amounts to nothing more than a right, from the point of view of the person interested in its respect. This is why the doctrine under discussion neglects the whole of the legal relation and considers only one of its aspects-the right or the individual power conferred, or recognized, by law.*

---

[1] Professor, Faculty of Law, Geneva University, and Professor, Graduate Institute of International Studies, he is an attorney-at-Iow, Geneva, Switzerland. Dr. Lalive received the lie. jur. and lic. litt. from the University of Geneva and the Ph.D. from Cambridge University. He is president of the Geneva low Society; visiting professor of the Porker School of Foreign and Comparative Law at Columbia University, 1961-1964; and author of The Transfer of Chattels in the Conflict of Laws and various studies on private and public international law. Recovered on http://www.lalive.ch/data/publications/56_-_The_Doctrine_of_Acquired_Rights_The_rights_and_duties_of_private_investors.pdf

The origin of the principle of acquired rights is found in legal individualism. It is far from surprising, therefore, that it should have been used in most cases as a defense against state interferences with the interests and rights of individuals and as a plea in favor of social status quo. Also, Federal law recognizes Acquired-Rights Doctrine Law. For example, in 18 USCS § 3056, Federal law provides, in part, as follows:

> *(a) Under the direction of the Secretary of Homeland Security, the United States Secret Service is authorized to protect the following persons:*
>
> *(1) The President, the Vice-President (or other officer next in the order of successions to the Office of President), the President-elect, and the Vice President-elect.*
>
> *(2) The immediate families of those individuals listed in paragraph (1).*
>
> *(3) Former Presidents and their spouses for their lifetimes, except that protection of a spouse shall terminate in the event of remarriage unless the former President did not serve as President prior to January 1, 1997, in which case, former Presidents and their spouses for a period of not more than ten years from the date a former President leaves office...*

The supreme court of Puerto Rico said in Hernández Colón v. Policía de P.R., 2009 TSPR 154, 177 DPR 121, about 18 USCS § 3056 that As can be seen in the federal jurisdiction, the right to protection and security through escorts for life was recognized for former presidents who ceased functions before January 1, 1997. The outgoing presidents, elected after the aforementioned date, will only obtain the right of protection for a term not exceeding ten (10) years. The United States Congress recognized that the legislation enacted by them had to be prospective in nature because the former presidents, at the date of approval of the aforementioned statute, held an unlimited acquired right to protection by means of escorts provided by the United States Secret Service. Specifically, Hernández Colón v. Policía de P.R. supra. said:

> *Como puede apreciarse en la jurisdicción federal se les reconoció un derecho de protección y seguridad mediante escoltas de manera **vitalicia a los ex-presidentes** que cesaron funciones antes del 1 de enero de 1997. Los salientes presidentes, electos luego*

*de la referida fecha, sólo obtendrán el derecho de protección durante un término no mayor de diez (10) años. El Congreso de los Estados Unidos reconoció que la legislación promulgada por estos tenía que tener carácter prospectivo debido a que los ex-presidentes para la fecha de aprobación del referido estatuto ostentaban **un derecho adquirido ilimitado** sobre protección mediante escoltas provistas por el Servicio Secreto de los Estados Unidos.* Emphasis added.

Is important say that creditor have letter of Sugar Corporation of Puerto Rico have in first line of the epigraph *Estado Libre Asociado de Puerto Rico*, specifically says:

> Commonwealth of Puerto Rico
> SUGAR CORPORATION OF PUERTO RICO
> SNOW WHITE SUGAR REFINERY & CENTRAL MERCEDITA
> Box 116
> Mercedita, Puerto Rico 00715

CERTIFIED TRANSLATION by Carlos Laó Dávila, a Federally certified interpreter, number 03-052, hereby certify that the attached document is a true and exact translation of the original, translated or certified by me. Please see the letters attached.

In addition, debtor have also original withholding statement, the taxes reports, the original certified mail receipt and customer's receipt of United States Postal Service for years of yours reclamation. Please see the letter of unemployment. The documents was in a manila file folders, this folder was inside a shoe box and the shoe box was inside a steel storage cabinet and the steel storage cabinet was inside a small room which is located next to the bathroom of the creditor's residential property was inside a small room of the creditor's residential property: Parcelas Sabanetas Street Progreso 70, Ponce, Puerto Rico 00716-4519.

No person has access to these documents, only the creditor. The originals document have a yellowish appearance and the texture of the paper a little weak from the passage of time. The documents are not torn nor damaged. They were never altered in any way, they never got wet; they

were kept as was received of Internal Revenue Administration, Department of the Treasury of Commonwealth of Puerto Rico for years 1981 to 2000.

The creditor have good memory and creditor is available to testify in Spanish because he does not know the English language. In addition, the creditor Jose Onofre Ortiz Quiñones also known as Jose O. Ortiz Quiñones through its undersigned counsel is available for an inspection of such original documents, if required or ordered. Now, the documents are at office of attorney.

The Rule 304 of Puerto Rico Rules of Evidence is the rule that governs presumptions by state law and judicial opinion of Supreme Court of Puerto Rico. Presumptions governed by this rule are given the effect of placing upon the opposing party the burden of establishing the nonexistence of the presumed fact, once the party invoking the presumption establishes the basic facts giving rise to it. The same considerations of fairness, policy, and probability which dictate the allocation of the burden of the various elements of a case as between the prima facie case of a plaintiff and affirmative defenses also underlie the creation of presumptions. These considerations are not satisfied by giving a lesser effect to presumptions. Morgan and Maguire, Looking Backward and Forward at Evidence, 50 Harv.L.Rev. 909, 913 (1937); Morgan, Instructing the Jury upon Presumptions and Burdon of Proof, 47 Harv.L.Rev. 59, 82 1933); Cleary, Presuming and Pleading: An Essay on Juristic Immaturity, 12 Stan.L.Rev. 5 (1959). The Rule 304 of Puerto Rico Rules of Evidence specifically says:

> *Presunciones específicas Las presunciones son aquéllas establecidas por ley o por decisiones judiciales. Entre las presunciones controvertibles se reconocen las siguientes:*
>
> *[…]*

There are a lot specific presumptions; the federal law only have 39. Notwithstanding, the creditor has interest in invoking the subsection 32. The Evidence Rule 304 (32) of Puerto Rico says:

> *Un documento o escrito de más de veinte años, es auténtico cuando ha sido generalmente acatado como tal por personas interesadas en la cuestión y se ha explicado satisfactoriamente su custodia.*

A document or document of more than twenty years (20) is authentic when it has been generally accepted as such by people interested in the matter and its custody has been satisfactorily explained. Evidence Rule 304 (32) of Puerto Rico. At common law, 30 years was the accepted age requirement for considering a document "ancient." Federal Rule of Evidence 803(16) shortened that time to 20 years. This one-third reduction in the age requirement occasioned little fanfare and had no discernible effect on the jurisprudence.

In General, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. The United State Federal Rules of Evidence Rule 901 has examples of evidence that satisfies the requirement. Specifically Rule 901 (8) says:

> *Evidence About Ancient Documents or Data Compilations. For a document or data compilation, evidence that it:*
>
> *(A) is in a condition that creates no suspicion about its authenticity;*
> *(B) was in a place where, if authentic, it would likely be; and*
> *(C) is at least 20 years old when offered.*

Moreover, Rule 803. Exceptions to the Rule Against Hearsay— Regardless of Whether the Declarant Is Available as a Witness, Rule 803 Federal Evidence Rules (16) says:

> *Statements in Ancient Documents. A statement in a document that was prepared before January 1, 1998, and whose authenticity is established.*

An ancient document, within the rule which excepts ancient documents from the requirement of authentication by the testimony of subscribing witnesses or otherwise, applies to documents purporting to be 30 years or more old, which are produced from proper custody and are, on their face, free from suspicion. BALLENTINE'S LAW DICTIONARY. In Applegate v. Lexington & Carter Cnty. Mining Co., 117 U.S. 255, 6 S. Ct. 742 (1886), the Supreme Court of United States of America states that:

> *We think this evidence, supported by an inspection of the deeds, was sufficient to justify their admission as ancient deeds without direct proof of their execution. The rule is that an ancient deed may be admitted in evidence, without direct proof of its execution, if it appears to be of the age of at least thirty years, when it is found in proper custody, and either possession under it is shown, or some other corroborative evidence of its authenticity, freeing it from all just grounds of suspicion.*

In addition, the Supreme Court of United States of America states in McGuire v. Blount, 199 U.S. 142, 26 S. Ct. 1 (1905) that:

> *Relying on this right, the defendants sought to show, by the production of* certain ancient documents, bound together, styled a protocol, that Gabriel Rivas' will had been established *by proceedings had during the Spanish control of Florida, which showed that Rivas, who had received the lands in controversy by grant of November 10, 1806, from Morales, intendant, etc., of Spain, had died on April 28, 1808, his will being probated by certain proceedings approved by the governor of Florida on May 2, 1808. In this protocol proceedings are shown for the sale of the three hundred (300) arpents of lands, which belonged to Rivas, resulting in a sale to one Gregario Caro, which sale purports to have been approved by the civil and military governor of West Florida. These original documents, evidencing the probate of the will of Rivas and the sale of the lands, including those in controversy, were presented to this court, having been admitted in testimony at the trial against*

> *the objections of plaintiffs under the stipulation that they came from the custody of the surveyor general of the United States, keeper of the archives. Many objections are urged to the authenticity and admissibility of these documents as well as to the regularity of the proceedings under the Spanish law. The production of the originals of these documents has given the court an opportunity to inspect them. They bear upon their face every evidence of age and authenticity. There is nothing about them to suggest that they have been forged or tampered with. They present an honest as well as ancient appearance and come from official custody. To such public and proprietary records the courts have applied the rules of admissibility governing ancient documents. Wigmore Evid. sec. 2145, and notes. With reference to such documents and records it is only necessary to show that they are of the age of thirty years and come from a natural and reasonable custody; from a place where they might reasonably be expected to be found. Wigmore, secs. 2138 and 2139. While the testimony tends to show that* these documents *were subjected to various changes of possession during the transition of the government of Florida from Spain to the United States and upon the evacuation of Pensacola during the civil war, there is nothing to establish that they were ever out of the hands of a proper custodian. Nor is there proof to show that the originals were lost, or any evidence of a fraudulent substitution of a made-up record in the interest of parties to be benefited thereby.*

With reference to ancient documents and records it is only necessary to show that they are of the age of 30 years and come from a natural and reasonable custody; from a place where they might reasonably be expected to be found. Then, the document is found to be prima facie authenticated and therefore admissible. A grant itself is prima facie evidence of its own validity, and it will be presumed to be regularly issued until the contrary appears, or such reasons are offered for doubting its authenticity as are sufficient in law to rebut the legal presumption. Crespin v. United States, 168 U.S. 208, 18 S. Ct. 53 (1897).

Furthermore, the creditor has interest in invoking another subsection of Rule 304 Rules of Evidence supra. it says:

[…]

(4) *Toda persona cuida de sus propios asuntos con celo ordinario.*

*[…]*

(10) Las cosas que obran en poder de una persona son de su pertenencia.

*(11) Una persona es dueña de una cosa, por ejercer actos de dominio sobre ella, o ser fama general que le pertenece.*

*(22) Un escrito lleva fecha exacta.*

*(23) Una carta dirigida y cursada por correo debidamente, fue recibida en su oportunidad.*

*(26) Las cosas han ocurrido de acuerdo con el proceso ordinario de la naturaleza y los hábitos regulares de la vida.*

*(30) Una vez probada la existencia de una cosa continúa ésta todo el tiempo que ordinariamente duran las cosas de igual naturaleza.*

*(33) Un libro impreso y publicado, que se dice haberlo sido por autoridad pública, fue impreso o publicado por tal autoridad.*

The Rule 304 (4) says that every person takes care of his own affairs with ordinary zeal. The subsection (10) says that the things that are in the possession of a person belong to him. The subsection (11) says that a person is the owner of a thing, by exercising acts of dominion over it, or being a general fame that belongs to him. Additionally, the following: (22) a letter bears an exact date; (23) a letter, duly addressed and mailed, was received in due course; (26) things have happened according to the ordinary process of nature and the regular habits of life; (30) once the existence of a thing has been proven, it continues as long as things of the same nature ordinarily last; and (33) a printed and published book, said to have been published by public authority, was printed or published by such authority.

The creditor takes care of his own affairs with ordinary zeal. In addition, the creditor had possession of document, these documents belong to him, and the creditor is the owner of this document by exercising acts of dominion over it. Also, the creditor has general fame that belongs to him.

The Puerto Rico Sugar Corporation is a public corporation. In addition, the member of this corporation are public employee upon Law 5 of 1975 supra. and Law 90 of 1986. By this reason, apply the Public Service Personnel Law, Law No. 5 of 1975 supra. and consequently the Law 90 of 1986, that give increase of salary to public employee. The creditor Jose Onofre Ortiz Quiñones have the original of tax report, original of certification of Sugar Corporation of Puerto Rico. Acquired-Rights Doctrine Law serves a vital role in the preservation of the essential values of a constitutional government that is based upon separation of powers. The Public Service Personnel Law define the agency as meaning *Agencia Significará el conjunto de funciones, cargos y puestos que constituyen toda la jurisdicción de una autoridad nominadora, independientemente de que se le denomine departamento, municipio,* **corporación pública**, *oficina, administración, comisión, junta, tribunal, o de cualquier otra forma.* By this reason, is clear that the Sugar Corporation of Puerto Rico is an agency upon Law no. 5 of Public Service Personnel supra. In addition, is clear that the Law 90 of 1986, applies to all member of agency, except employees excluded from Law 90 of 1986 itself, municipal employees, teachers and police officers. The Law 90 supra. applies to all public employees without distinction of status or categories, who are part of the Personnel System created by virtue of the Public Service Personnel Law. The creditor also, was career employees, regular and did not receive any increase due to the application of the federal minimum wage as of April 15, 1986.

By these reasons, the creditor Jose Onofre Ortiz Quiñones has an Acquired-Rights upon your salary increase acquired by Law 90-1986 and has an asserted claim and the creditor Jose O. Ortiz Quiñones, has Claim under the law no. 90 of July 9, 1986. of principal $16,832.08; interest of $42,386.40 and asserted claim total-amount of: $59,218.48

WHEREFORE the creditor Jose Onofre Ortiz Quiñones respectfully prays that this motion be granted for the reason was filed, this Court takes notice of the above stated; granting the relief requested herein; granting the asserted claims 179671 for Jose Onofre Ortiz Quiñones and further relief as is just.

**NOTICE**

The Debtor has provided notice of this motion in accordance with the Case Management Procedures to the following parties: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on the list of creditors holding the 20 largest unsecured claims against COFINA; (d) counsel to the statutory committees appointed in these Title III cases; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) counsel to the Oversight Board; (g) the Puerto Rico Department of Justice; (h) the Other Interested Parties;3 (i) all parties filing a notice of appearance in these Title III cases; and (j) Movant. A copy of the motion is also available on the Debtors' case website at https://cases.primeclerk.com/puertorico/.

CERTIFICATE OF SERVICE I hereby certify that same date, filed with the clerk of the Court using CM/ECF system and notice by electronic transmission -true and exact copy- was sent to the following persons/entities by the Bankruptcy Noticing Center to the Office of the United States Trustee. I certificate also that claimant does not is a service member as required by § 201(b)(1) of the Service Members Civil Relief Act of 2003 ("SCRA").

RESPECTFULLY SUBMITTED.

In Ponce for San Juan, Puerto Rico this February 28, 2022.

/s/Vanessa Hernández Rodríguez, Esq.
Attorney for Debtor
USDC-PR 306703
RUA 19485
Aurora Street 4140, Suite 1
Ponce, Puerto Rico 00717-1203
Telephone number: (787) 840-0804
Cell phone: (787) 548-6208
Fax number: (787) 840-0804
E-mail: abogadaenpr@gmail.com